**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION | Adv. Pr. No. 08-01789 (BRL) |
| Plaintiff-Applicant, | SIPA LIQUIDATION |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | Adv. Pro. No. 10-04450 (SMB) |
| Plaintiff, | |
| v. | |
| JEFFREY HINTE, | |
| Defendant. | |

**Defendant and Counterclaimant Jeffrey Kusama-Hinte's**
**Memorandum of Law in Opposition to the Trustee's Motion to Dismiss**
**Counterclaims and Strike Affirmative Defenses**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................ 1

FACTS .................................................................................................................... 5

    Hinte's $53 Million Investment With BLMIS.................................................... 5

    The BLMIS Bankruptcy And The Trustee's Actions ........................................ 7

        The BLMIS Bankruptcy ................................................................................ 7

        The Net Equity Decision ............................................................................... 7

        This Proceeding ............................................................................................ 8

        The Levy Settlement ..................................................................................... 9

        The Antecedent Debt Decision ................................................................... 10

        Hinte's Answer and Counterclaims ............................................................ 12

ARGUMENT ....................................................................................................... 13

I. The Trustee's Motion To Dismiss Hinte's Counterclaims Should Be Denied.............. 13

    A.   Legal Standard ........................................................................................ 13

    B.   Hinte Was Not Required To File A Proof Of Claim In Order To Plead  His
    Counterclaims. ............................................................................................... 14

    C.   The Antecedent Debt Decision Does Not Bar Hinte's Counterclaims  For Return
    Of Principal..................................................................................................... 16

    D.   Hinte's Counterclaims Seek To Recover No More Than The Amount Of His
    Initial Customer Investment With BLMIS And Cannot Be Dismissed As Claims
    Against The General Estate. ............................................................................ 20

II. The Trustee's Motion To Strike Hinte's Fifteenth, Sixteenth, Twenty-First,  Twenty-
Fourth, And Thirty-Second Through Thirty-Fourth Affirmative  Defenses Should Be
Denied. ................................................................................................................. 24

    A.   Legal Standard ........................................................................................ 24

    B.   The Trustee Has Failed To Show That There Is No Question Of Fact Which
    Might Allow The Defenses To Succeed. .................................................... 25

    C.   The Trustee Has Failed To Show That There is No Question of Law Which Might
    Allow The Defenses to Succeed. ................................................................ 29

        i.   This Court Has Discretion To Consider Hinte's Defenses Because the
        Antecedent Debt Decision—Which Is Interlocutory And Not "Law Of The Case"—
        Was Decided On A Motion To Dismiss And Subject To A Different Standard Of
        Review Than The Defenses Would Be In A Motion For Summary Judgment. ....... 31

        ii.   Due To Subsequent Contrary Precedent, The  Rulings In The Antecedent
        Debt Decision Must  Be Reconsidered. ................................................... 34

iii.     The Failure To File A Claim Does Not Bar Hinte's Assertion Of An
Entitlement To Set-Off Or Recoupment In Hinte's Sixteenth Or Twenty-First
Affirmative Defenses. ............................................................................................ 36

D.    The Trustee Will Not Be Prejudiced By The Inclusion Of The Defenses. ........... 36

CONCLUSION ............................................................................................................. 40

# TABLE OF AUTHORITIES

## CASES

*Arizona v. California*, 460 U.S. 605 (1983).........................................................................32

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .......................................................................13, 33

*Avent v. Solfaro*, 210 F.R.D. 91 (S.D.N.Y. 2002).......................................................27, 37

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .................................................................13

*Bennett v. Spoor Behrins Campbell & Young, Inc.*, 124 F.R.D. 562 (S.D.N.Y. 1989) ...................................................................................................................*passim*

*Bloor v. Shapiro*, 32 B.R. 993 (S.D.N.Y. 1983) ...................................................................15

*Bordeau Bros., Inc. v. Montagne (In re Montagne)*, Bankr. No. 08-10916, Adv. Proc. No. 08-1024, 2010 WL 396252 (Bankr. D. Vt. Jan. 25, 2010) ............................................32

*Cargo Partner AG v. Albatrans, Inc.*, 352 F.3d 41 (2d Cir. 2003).....................................13

*City of N.Y. v. N.Y. Pizzeria Delicatessen, Inc.*, No. 05 CV2754, 2006 WL 2850237 (S.D.N.Y. Sept. 29, 2006) .............................................................................................13, 17

*Cohen v. Elephant Wireless, Inc.*, No. 03-Civ-4058, 2004 WL 1872421 (S.D.N.Y. Aug. 19, 2004) ...............................................................................................26, 29, 30, 38

*Deangelis v. Corzine (In re MF Global Holdings Ltd. Inv. Litig.)*, 998 F. Supp. 2d 157 (S.D.N.Y. 2014).........................................................................................................13, 33

*Durham Indus., Inc. v. N. River Ins. Co.*, 482 F. Supp. 910 (S.D.N.Y. 1979).................26

*Fisher v. Outlet Co. (In re Denby Stores, Inc.)*, 86 B.R. 768 (Bankr. S.D.N.Y. 1988) .... 14

*Global Crossing Bandwidth Inc. v. Locus Telecomm., Inc.*, 632 F. Supp. 2d 224 (W.D.N.Y. 2009) .................................................................................................................14

*Greenwald v. City of N.Y.*, No. 06-CV-2864 (RJD)(JMA), 2012 WL 6962297 (E.D.N.Y. July 19, 2012)......................................................................................................................38

*In re 105 East Second Street Assocs.*, 207 B.R. 64 (Bankr. S.D.N.Y. 1997) ...................23

*In re Adler, Coleman Clearing Corp.*, 204 B.R. 99 (Bankr. S.D.N.Y. 1997) .................15

*In re AMR Corp.*, 506 B.R. 368 (Bankr. S.D.N.Y 2014)...................................................13

*In re Bernard L. Madoff Inv. Sec. LLC*, 424 B.R. 122 (Bankr. S.D.N.Y. 2010) .......*passim*

*In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d 229 (2d Cir. 2011) ..........................7, 21

*In re J.P. Jeanneret Assocs., Inc.*, 769 F. Supp. 2d 340 (S.D.N.Y. 2011).......................13

*In re Lehman Bros., Inc.*, 493 B.R. 437 (Bankr. S.D.N.Y. 2013)....................................15

*In re M. Silverman Laces, Inc.*, 404 B.R. 345  (Bankr. S.D.N.Y. 2009) .............. 14, 15, 36

*In re MF Global Inc.*, No 11-2790, 2014 WL 1320094 (Bankr. S.D.N.Y. Apr. 1, 2014) ....................................................................................15

*In re MF Global Inc.*, No 11-2790, 2014 WL 657321 (Bankr. S.D.N.Y. Feb. 20, 2014) ..................................................................................15

*In re Shoppers Paradise, Inc.*, 8 B.R. 271 (Bankr. S.D.N.Y. 1980)................................23

*Jeanne Levy-Hinte v. Jeffrey Levy-Hinte*, Index No. 315190/03 (Sup. Ct., N.Y. Cnty. 2004) ..........................................................................................................................6, 7

*Law v. Siegel* 124 S.Ct. 1188, 188 L.Ed.2d 146 (2014)…………….....................20, 35

*Maraschiello v. City of Buffalo Police Dep't*, 709 F.3d 87 (2d Cir. 2013) ........... 18, 19, 30

*Matter of Holford*, 896 F.2d 176 (5th Cir. 1990).............................................................23

*McAnaney v. Astoria Fin. Corp.*, 665 F. Supp. 2d 132 (E.D.N.Y. 2009) ........................32

*N.J. Steel Corp, v. Bank of N.Y.*, No. 95 Civ. 3071, 1997 WL 716911 (S.D.N.Y. Nov. 17, 1997) .................................................................................................................... 14

*Nobel Ins. Co. v. City of N.Y.*, No. 00-CV-1328, 2006 WL 2848121 (S.D.N.Y. Sept. 29, 2006) ................................................................................................................... 33

*Oneida Indian Nation of N.Y. v. State of N.Y.*, 194 F. Supp. 2d 104 (N.D.N.Y. 2002) ....................................................... 29, 38

*Picard v. Fairfield Greenwich Ltd.*, Nos. 13-1289, 13-1392, 13-1785, 2014 WL 3882481 (2d Cir. Aug. 8, 2014) ................................................................... 20, 22, 35

*Picard v. Greiff*, 476 B.R. 715 (S.D.N.Y. 2012) ............................................... 9, 11, 21, 22

*Redington v. Borghi (In re Weis Sec., Inc.)*, 411 F. Supp. 194 (S.D.N.Y. 1975) ............. 15

*Resolution Trust Corp. v. Gregor*, No. 94 CV 2578, 1995 WL 931093 (E.D.N.Y. Sept. 29, 1995) ................................................................................................................... 37

*SEC v. Toomey*, 866 F. Supp. 719 (S.D.N.Y. 1992) ................................. 24, 25, 26, 27, 29

*SIPC v. Bernard L. Madoff Inv. Secs.*, 499 B.R. 416 (S.D.N.Y. 2013) .................... *passim*

*SIPC v. Bernard L. Madoff lnv. Secs. LLC (In re Madoff Secs)*, No. 12-cv-01 15 (S.D.N.Y. Apr. 30 & May 15, 2012)…………………………………………………….. 9

*SIPC v. Stellatos (In re Blinder, Robinson & Co., Inc.)* 124 F.3d 1238 (10th Cir. 1997) ............................................................................ 15

*Stern v. Marshall*, 564 U.S. ---, 131 S.Ct. 2594, 180 L.Ed.2d 475 (2011) ...................... 38

*Sussman v. Crawford*, 548 F.3d 195 (2d Cir. 2008) ........................................................ 32

*Taylor v. Vt. Dep't of Educ.*, 313 F.3d 768 (2d Cir. 2002) .............................................. 17

*Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.,* 956 F.2d 1245 (2d Cir. 1992)…........... 19

*William Z. Salcer, Panfeld, Edelman v. Envicon Equities Corp.*, 744 F.2d 935 (2d Cir. 1984), *vacated on other grounds*, 478 U.S. 1015 (1986) ...................................... 24, 26

*World Wide Commc'ns., Inc. v. Rozar*, No 96 Civ. 1056, 1997 WL 795750 (S.D.N.Y. Dec. 30, 1997) .............................................................................................................. 14

*Zorwizt v. Okin*, 121 F. Supp. 56 (E.D.N.Y. 1954) ......................................................... 15

## STATUTES

11 U.S.C. § 553(a) .......................................................................................................... 23

11 U.S.C. §  548 ......................................................................................................... *passim*

11 U.S.C. §  550 ............................................................................................................... 26

15 U.S.C. § 78fff-2(c)(3) ............................................................................................... 8, 22

## RULES

Fed. R. Civ. P. 12(b)(6) .................................................................................... 2, 18, 26, 30

Fed. R. Civ. P. 12(f) ......................................................................................... 24, 25, 38

## OTHER AUTHORITIES

5–553 COLLIER ON BANKRUPTCY at ¶ 553.07[1] (Alan N. Resnick & Henry J. Sommer, eds., 16th ed.) ............................................................................................................ 14

5A Wright & Miller, FEDERAL PRACTICE AND PROCEDURE § 1382 (1995): *available at* Westlaw FPP § 1382 ............................................................................................. 37, 45

Defendant and Counterclaimant Jeffrey Kusama-Hinte ("Hinte") respectfully submits this memorandum of law in opposition to the motion of Irving H. Picard, as Trustee (the "Trustee") for the liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") to dismiss Hinte's counterclaims and strike certain of his affirmative defenses (the "Motion").[1]

## PRELIMINARY STATEMENT

In his Motion, the Trustee concedes that Hinte, "like other defrauded investors, was the victim of a Ponzi scheme." The Trustee's Motion seeks to compound that fraud and victimization by denying Hinte the opportunity to present his counterclaims and defenses, which will show that the funds Hinte withdrew from his BLMIS account are investment principal not subject to avoidance or clawback. Nothing in the Securities Investor Protection Act ("SIPA"), the Bankruptcy Code or the rules of civil procedure permits a bankruptcy trustee to claw back funds from a customer of the debtor without consideration of the customer's offsetting claims and defenses. The Motion should be denied.

The Trustee's Motion to Dismiss is based on a misreading of the counterclaims and a misapplication of the relevant legal standards. The Trustee argues that Hinte's counterclaims are barred because he did not file a proof of claim in the bankruptcy, but the counterclaims do not seek affirmative damages against the BLMIS estate. Hinte asserts these claims to set off the amounts the Trustee seeks to claw back from him in this

---

[1] The portion of the Trustee's Motion that seeks the dismissal of counterclaims shall be referred to herein as the "Motion to Dismiss." The portion of the Trustee's Motion that seeks to strike certain affirmative defenses shall be referred to herein as the "Motion to Strike."

action.  Bankruptcy courts routinely allow creditors to assert claims for purposes of setoff even after the bar date for filing a proof of claim has passed.

The Trustee's Motion also attempts to turn the Rule 12(b)(6) standard on its head by arguing that prior rulings in this bankruptcy (the "Antecedent Debt Decision" and the "Net Equity Decision") mandate dismissal of Hinte's counterclaims and certain of his defenses (the "Defenses"), when neither ruling made any determination about the nature of the funds in Hinte's account.  The Trustee's first argument boils down to the assertion that Hinte cannot state a claim for return of principal, because the Trustee says Hinte had no principal at BLMIS.   But that is a factual question, and the Antecedent Debt Decision made no factual findings about the nature of Hinte's funds at BLMIS.  On a motion to dismiss Hinte's counterclaims the allegations must be read in the light most favorable to Hinte.  The Antecedent Debt Decision involved a motion to dismiss the Trustee's complaints against various BLMIS customers and, applying the legal standard for a motion to dismiss, simply assumed the facts asserted in those complaints to be true.  The Antecedent Debt Decision did not make an affirmative, particularized factual finding that Hinte held no principal in his account.  Absent that, Rule 12(b)(6) affords Hinte the same correlative assumption in his favor enjoyed by the Trustee in the Antecedent Debt Decision, i.e., that the facts alleged in Hinte's pleading are true.[2]

The Trustee's contention that Hinte's counterclaims are "irrelevant" claims against the general BLMIS estate fails for the same reason.  Under the Trustee's theory, Hinte's counterclaims are general creditor claims rather than customer claims, because the Trustee characterizes Hinte as a "Net Winner" of the BLMIS fraud.  *See* Motion at

---

[2] In addition, to the extent the Antecedent Debt Decision limited the right of BLMIS customers to assert defenses under the Bankruptcy Code, its validity has been called into question by subsequent decisions by the Second Circuit and the U.S. Supreme Court.  *See* Section II.C.ii, *infra*.

17.  Again, this is no more than a bald, unproven assertion.  Hinte's counterclaims allege that he invested $52.9 million in principal at BLMIS, and only withdrew a portion of that amount.  Accepting the allegations in the counterclaims as true, Hinte is a "Net Loser" of the BLMIS estate under the Net Equity Decision and the Antecedent Debt Decision, and his counterclaims are priority customer claims, not general creditor claims.

The Trustee's Motion to Strike should also be denied.  In conclusory fashion, the Trustee states that:

> [t]here are no remaining questions of fact or law necessary to determine the validity of these Defenses.  Each Defense turns on uncontested facts regarding the operation of the BLMIS Ponzi scheme, the uncontested withdrawal and deposit activity in Defendant's Account, or Defendant's failure to file a claim with the Trustee.

Motion at 20.  This statement is incorrect.  The success of the Defenses that the Trustee seeks to strike depends, in large part, upon facts not yet presented to this (or any other) Court and not yet developed through discovery, and upon substantive issues of law that have not yet been briefed or heard by this Court.

First and foremost, it is simply not an "uncontested fact" that the moneys in Hinte's account were fictitious profits rather than principal.  Merely because a transfer was made between accounts at BLMIS does not mean that transferred funds were fictitious profits.  There were customers of Madoff who were "Net Losers" and by definition had principal, not fictitious profits in their accounts.  The inter-account transfer of that principal did not change its character, and the Antecedent Debt Decision does not hold to the contrary.  At this stage in the proceedings, there is no proof that what Hinte received in transfers to his account was fictitious profit rather than principal.  Hinte

alleges that what was transferred to him was at origin principal and for purposes of this

Motion that allegation must be accepted as true.

Moreover, Hinte's case is unique because of the facts and circumstances

surrounding Madoff's close connection to the Levy family and BLMIS/Madoff's

personal intervention in how payments were made by Jeanne Levy ("Levy") to Hinte.

Defenses Fifteen, Sixteen, Twenty-Four and Thirty-Two each involve questions of fact as

to whether Hinte had principal in his account at the time of his withdrawals. This in turn

raises at least two separate but related sets of factual questions: (1) did Hinte receive

principal from Levy when she made court-ordered payments of cash to Hinte that were

diverted into the inter-account transfers through the intervention of Madoff; and (2) was

the accounting the Trustee used to denominate the funds transferred by Levy to Hinte

orchestrated or manipulated to improperly allocate fictitious profits (rather than principal)

to Hinte? The Twenty-First Defense addresses, among other things, whether Hinte is, or

should be treated as, a subsequent transferee from Levy. This Defense is highly fact-

intensive. The Court need only read the Twenty-First Defense to see that none of the fact

questions or legal issues that permeate this Defense were addressed in the Antecedent

Debt Decision. Likewise, the Thirty-Third and Thirty-Fourth Defenses both involve

questions of fact. The funds in Hinte's account arrived through inter-account transfers

that originated from Levy's account and were made to satisfy a judgment of divorce. The

funds that the Trustee seeks to recover from Hinte originated with Levy – and possibly

elsewhere before those funds were deposited into her account. The Trustee never filed an

avoiding action against Levy or the other members of the Levy family. As a

consequence, unlike other cases where the Trustee's accountings of "cash in" and "cash

out" were appended to the complaint, there has never been public disclosure of the accountings that were done by the Trustee in determining the liability of Levy or the Levy family. Until the Trustee provides discovery disclosing the netting or other reconstruction done with respect to the Levy family accounts, permitting Hinte to analyze the work supposedly done by the Trustee, Hinte need not, and this Court should not, accept the Trustee's untested assertions as true. Yet, the Trustee seeks to strike all of the foregoing Defenses without affording Hinte any discovery.

These, and other, open issues of fact and law are central to each of the Defenses that the Trustee seeks to strike.[3] They cannot, however, be resolved at the pleading stage. As a result, the Trustee's Motion to Strike should be denied.

## FACTS

### Hinte's $53 Million Investment With BLMIS.

The following facts are set forth in Hinte's counterclaim. In November 2002, Hinte and his then-wife Levy entered into a Separation Agreement (the "Separation Agreement") detailing the terms of the dissolution of their marriage. Counterclaim ¶ 120. The Separation Agreement obligated Levy to pay Hinte a total of $50 million in cash. *Id.* ¶ 121. The Separation Agreement required Levy to make the payment in two installments "by check or wire transfer to [Hinte's] banking account." *Id.*

Levy had substantial assets at BLMIS, and intended to satisfy her obligation to Hinte by withdrawing funds from her BLMIS account. As Levy prepared to make the first payment to Hinte's bank account, Madoff intervened with an alternate plan. Rather

---

[3] Many of the open issues, such as Hinte's setoff rights and the nature of his claim for damages, are mixed questions of law and fact. To the extent there are mixed questions of law and fact, the development of the material facts through discovery will inform the eventual briefing on the issues of law.

than transferring millions of dollars in cash out of BLMIS by wire or check, Madoff proposed that Hinte open a BLMIS account to receive Levy's cash payments. Having no reason to suspect that Madoff and BLMIS were engaged in a fraud, Hinte agreed to open an account at BLMIS to receive the cash payments owed him under the Separation Agreement. *Id.* ¶¶ 122-127. Hinte opened his account on July 1, 2003 and received a payment of $27.3 million from Levy that same day. *Id.* ¶¶ 128-29.

Six months after Hinte received his first payment under the Separation Agreement, it became an order of the court through a judgment of divorce, which was entered on January 6, 2004 in the Supreme Court of the State of New York in the proceeding captioned *Jeanne Levy-Hinte v. Jeffrey Levy-Hinte*, Index No. 315190/03 (Sup. Ct. N.Y. Cnty. 2004) (the "Judgment"). Levy made a second payment of $25.6 million to Hinte's account on January 14, 2004, to satisfy her obligations under the Separation Agreement and Judgment, bringing Hinte's total cash investment in BLMIS to $52.9 million. *Id.* ¶ 132.[4] Both the July 2003 and January 2004 payments to Hinte's BLMIS account were, and should be treated as, principal. *Id*. ¶ 133. Had Levy paid Hinte by check or wire transfer, Hinte would have had full use and enjoyment of the $52.9 million and, as a subsequent transferee, would have a clear and absolute defense to the claims the Trustee now asserts against him. *Id*. ¶ 149.

From the beginning of his investment relationship with BLMIS, Hinte received monthly account statements reflecting his initial invested cash and reported profits earned on that investment. *Id.* ¶ 135. Hinte also made withdrawals from the account. By November 30, 2008, Hinte had withdrawn $36.15 million of the $52.9 million originally

---

[4] Because the payments from Levy to Hinte were delayed from the dates set by the Separation Agreement, Levy made payments greater than the amount originally set forth in the agreement. *Id.*

deposited, leaving approximately $16.7 million of his original cash investment in the account. *Id.* ¶ 136. On its face, this makes Hinte a "Net Loser."

**The BLMIS Bankruptcy And The Trustee's Actions**

### *The BLMIS Bankruptcy*

On December 11, 2008, Madoff was arrested for criminal violations of the securities laws and the assets of BLMIS were placed in receivership. The Trustee was appointed to liquidate the BLMIS estate and distribute customer property in accordance with the terms of SIPA and the Bankruptcy Code. *See* Compl. ¶¶ 8-11.

### *The Net Equity Decision*

On March 10, 2010, Judge Lifland of this Court ruled that in calculating a BLMIS customer's net equity claim against the estate for the purposes of SIPA, the Trustee could use the so-called Net Investment Method. This method looks to the customer's total investment with BLMIS less any withdrawals. *See In re Bernard L. Madoff Inv. Sec. LLC,* 424 B.R. 122, 125 (Bankr. S.D.N.Y. 2010) (the "Net Equity Decision"). Judge Lifland rejected arguments that customers should be entitled to return of the account balance stated on their last BLMIS statement (the "Last Statement Method"), reasoning that the account statements "are entirely fictitious, do not reflect actual securities positions that could be liquidated, and therefore cannot be relied upon" to determine the amount of the customer's claim. *Id.* at 135. The Second Circuit upheld the decision on appeal, holding it was not error for the Trustee to use the Net Investment Method in the particular context of the BLMIS bankruptcy. *In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d 229, 235 (2d Cir. 2011). In endorsing the Net Investment Method, neither court

held that the stated principal amount in a BLMIS account was *per se* false, nor that the

Trustee could simply assert what he believed the account value to be.

For purposes of payments from the fund of customer property, under the Net

Investment Method adopted in the Net Equity Decision, BLMIS customers are divided

into "Net Losers" and "Net Winners" based on their investments and withdrawals. "Net

Losers" are those investors who withdrew less from their BLMIS accounts than they

invested. *See* Net Equity Decision, 424 B.R. at 122. These customers are entitled to

assert a customer claim against the BLMIS estate for the amount of their "net equity" –

the difference between what they invested and what they withdrew. "Net Winners," by

contrast, are those investors who withdrew more than they invested. *See id.* They have

no net equity claim against the estate, and the Trustee may seek to avoid transfers from

their BLMIS accounts "if and to the extent that such transfer is voidable or void" under

the Bankruptcy Code. *See* 15 U.S.C. § 78fff-2(c)(3).

### *This Proceeding*

On November 12, 2010, the Trustee commenced the instant adversary proceeding

against Hinte, "on behalf of . . . those defrauded customers of BLMIS who invested more

money in BLMIS than they withdrew." Compl. ¶ 18(g). In essence, the Trustee alleges

that even though Hinte withdrew only $36.15 million of his $52.9 million cash

investment in BLMIS (which would make him a "Net Loser" with a net-equity claim of

$16.7 million), he is in fact, a "Net Winner" with *no* net equity because Levy's payments

to him under the Separation Agreement and Judgment consisted entirely of fictitious

profits from Madoff's scheme. *See id.* ¶ 2. The Trustee further claims he is entitled to

claw back the amounts Hinte withdrew from his account, because these withdrawals

8

(even though less than the stated amount of Hinte's principal) "constitute non-existent profits supposedly earned in the Account." *Id.* ¶¶ 34-35.[5]  The Trustee has submitted no evidence in support of his claims, other than a chart purporting to show transfers in and out of Hinte's account.  *See id.* Ex. B.  On its face, the chart shows more deposits than withdrawals, making Hinte a Net Loser, but the Trustee, through *ipse dixit*, has declared that all of the deposits are fictitious profits.  *See id.*

*The Levy Settlement*

The Trustee also threatened claims against Levy and her family, but did not file an adversary proceeding against her, or against other Levy family members who had close connections with Madoff.  Members of the Levy family had multiple accounts at BLMIS, and Madoff was the executor of the estate of Jeanne Levy's father Norman Levy.  On information and belief, Madoff used his position as executor to steal more than $250 million of cash from the Levy estate – a substantial portion of which Jeanne Levy would have inherited – and divert those funds into BLMIS.  *See* Counterclaim ¶ 108; Motion for Entry of Order at 4, No. 08-01789 (Bankr. S.D.N.Y. Jan. 27, 2010), ECF No. 1833 ("Levy Settlement Motion") ("After Mr. Levy's death, Madoff, acting as executor, transferred more than $250 million to BLMIS from Mr. Levy's estate, essentially "stealing" this amount from Mr. Levy's heirs and beneficiaries.").  In 2010, the Trustee

---

[5] Counts One and Two of the Complaint seek to claw back the $10.9 million Hinte withdrew in the two years before BLMIS' bankruptcy filing pursuant to Sections 548(a), 550(a)(1) and 551 of the Bankruptcy Code.  Counts Three through Six of the Complaint seek to claw back the entirety of Hinte's $36.15 million in withdrawals pursuant to Sections 544(b), 550(a)(1) and 551 of the Bankruptcy Code and applicable provisions of New York state law.  Counts Three through Six have been dismissed pursuant to the order and supplemental opinion and order entered in *SIPC v. Bernard L. Madoff Inv. Secs. LLC (In re Madoff Secs)*, No. 12-cv-01 15 (S.D.N.Y. Apr. 30 & May 15, 2012) (ECF Nos. 57 & 101), currently under appeal to the Second Circuit.  *See also Greiff*, 476 B.R. at 729 ("net profits in excess of the amount transferred during the two- year period are protected from recovery by the Bankruptcy Code's statute of limitations"); Antecedent Debt Decision, 499 B.R. at 421 ("These avoidance actions are limited by the two-year "reach-back period" specified in [Bankruptcy Code] Section 548(a)(1) for fraudulent-transfer actions.")

announced he had reached a $220 million settlement (the "Levy Settlement") resolving all claims against members of the Levy family – but not Hinte. *See id.* ¶ 102.  In the Levy Settlement Motion, the Trustee stated that the amount being paid by the Levys pursuant to the settlement "represent[ed] nearly one-hundred percent of the amount that the Levy BLMIS Account Holders withdrew from BLMIS during the six-year period before the filing." Levy Settlement Motion at 10-11.

Hinte was not privy to the Levy Settlement or any of the negotiations underlying the settlement.  Nor has Hinte had access to the Trustee's calculations of the alleged principal and fictitious profits in Levy's or her family's accounts or any documentation supporting those calculations.  Because the Trustee never filed a complaint against Levy or the other members of her family, Hinte has not seen the "cash in / cash out" calculations for Levy or her family that would be analogous to the calculations that the Trustee has appended to the complaints against Hinte and all other BLMIS customers the Trustee has sued.  Accordingly, Hinte does not know how, in determining the Levys' "net investment," the Trustee accounted for the $52.9 million in transfers to Hinte or BLMIS's alleged conversion of more than $250 million from the estate of Norman Levy.  *See* Counterclaim ¶ 108.

### The Antecedent Debt Decision

In June 2012, a number of defendants against whom the Trustee had filed avoidance actions, including Hinte, moved to dismiss the complaints against them.  *See SIPC v. Bernard L. Madoff Inv. Sec.,* 499 B.R. 416 (S.D.N.Y. 2013) (the "Antecedent Debt Decision").[6]  The moving defendants argued that, even assuming the Trustee's

---

[6] The district court heard the motion because defendants had previously moved to withdraw the reference to the Bankruptcy Court.  *See* Order at 4, No. 12-MC-115 (S.D.N.Y. May 16, 2012), ECF No. 107.

allegations that they withdrew more than they invested in BLMIS were true, their

withdrawals were protected under Section 548(c) of the Bankruptcy Code because the

withdrawals satisfied antecedent debts BLMIS owed defendants in the form of federal

and state law damage claims.  *Id.* at 419.

The District Court denied defendants' motion, citing its prior ruling in *Picard v.

Greiff*, 476 B.R. 715, 718 (S.D.N.Y. 2012) that BLMIS's payment of fictitious profits

reflected on customer account statements did not satisfy an antecedent debt, and

withdrawals "'that exceeded the return of defendants' principal'" were therefore not "for

value" within the meaning of Section 548(c).  *Id.* at 421 (citing *Greiff*, 476 B.R.at 718).

The District Court held that the same reasoning applied to Rule 10b-5 securities law

damage claims against the BLMIS estate to the extent these claims would allow

defendants "to withhold funds beyond their net-equity share of customer property." *Id.* at

423-24.  In other words, to "effectuate SIPA's mandate, a customer may only seek the

protections of Section 548(c) to the extent of investments of principal, and federal and

state law claims cannot be used to increase the amount to which a customer is entitled

from the customer property estate."  *Id.* at 426.

The District Court also rejected defendants' motion to dismiss based on the theory

that all inter-account transfers occurring between BLMIS customers before the two-year

reach-back period should be treated as principal, because the sender could have

withdrawn the funds and given them directly to the recipient.  *Id.* at 428.  The District

Court reasoned that because "no new value was created by moving . . . funds between

different accounts," transfers in excess of the principal deposited in the sender's account

should be treated as fictitious profits in the account of the recipient.  *Id.* at 429.  In

denying defendants' motion to dismiss, the District Court made no factual findings

regarding whether any particular BLMIS customer account contained principal or profits

and no findings or determinations regarding whether Madoff's active interference with a

customer's intended withdrawal would change the legal analysis.[7]  Nor did the

Antecedent Debt Decision address whether inter-account transfers in satisfaction of a

court-ordered judgment requiring a cash payment between the transferor and transferee

conferred value on the estate.  Most significantly for the present Motion, the essence of

the District Court's holding was that an inter-account transfer did not transmute the

nature of the transfer – fictitious profits did not become principal merely through transfer

– and the corollary is equally true: a transfer of principal did not convert it to fictitious

profits merely by virtue of having been transferred.

<em>Hinte's Answer and Counterclaims</em>

On April 17, 2014, Hinte filed his Answer and Counterclaims in this action.

Hinte's Answer denies that he received any fraudulent transfers from his BLMIS account

and denies that the Trustee is entitled to any relief against him.  *See* Answer at ¶¶ 39-77.

Hinte's Counterclaims assert seven causes of action against the Trustee for:  return of

principal (Counterclaim ¶¶ 139-14); fraud (*id.* ¶¶ 143-156); tortious interference (*id.* ¶¶

159-164); recoupment (*id.* ¶¶ 165-168) and estoppel (*id.* ¶¶ 169-174).  None of Hinte's

counterclaims seeks damages in excess of Hinte's principal investment in BLMIS.

---

[7] In the Antecedent Debt Decision, Judge Rakoff refused to treat inter-account transfers of fictitious profits that occurred outside the reach-back period the same as if cash was actually withdrawn by the sender and later deposited by the recipient because that was "a hypothetical withdrawal and investments that never occurred." Antecedent Debt Decision, 499 B.R. at 429.  Instead, Judge Rakoff treated the inter-account transfer as "a transfer of funds that never belonged to the sender or [the] recipient" because "that most reflects the reality of [those] transfers . . . ." *Id.*  However, there is nothing hypothetical about Madoff's interference with the impending cash payment by Levy to Hinte.  The facts relating to the inter-account transfers between Levy and Hinte are unique, and the reality of those transfers is that, but for Madoff's fraudulent interference, cash withdrawals would have occurred outside the reach-back period that would not be subject to claw back.

Rather, the counterclaims set forth Hinte's right to the benefit of his $52.9 million investment in BLMIS as setoff against the claims the Trustee asserts against him.  The Answer and Counterclaims also assert 39 affirmative defenses against the Trustee's claims, including the seven Defenses the Trustee seeks to strike in the instant Motion.

## ARGUMENT

### I.    The Trustee's Motion To Dismiss Hinte's Counterclaims Should Be Denied.

#### A.    Legal Standard

In evaluating a motion to dismiss, courts in the Second Circuit have repeatedly recognized that "the standard is lenient and a plaintiff's burden is not onerous." *Deangelis v. Corzine (In re MF Global Holdings Ltd. Inv. Litig.)*, 998 F. Supp. 2d 157, 167 (S.D.N.Y. 2014).  To survive a motion to dismiss, a complaint need only "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).  The court "must liberally construe all claims, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff." *In re J.P. Jeanneret Assocs., Inc.,* 769 F. Supp. 2d 340, 353 (S.D.N.Y. 2011) (*citing Cargo Partner AG v. Albatrans, Inc*., 352 F.3d 41, 44 (2d Cir. 2003)).  *See also In re AMR Corp.,* 506 B.R. 368, 384  (Bankr. S.D.N.Y 2014) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (in deciding a motion to dismiss, a court must proceed "on the assumption that all the allegations in the complaint are true").

On a motion to dismiss counterclaims, allegations in the answer and counterclaim – not the complaint – are accepted as true.  *City of N.Y. v. N.Y. Pizzeria Delicatessen,*

13

*Inc.,* No. 05 CV2754, 2006 WL 2850237, at *3 (S.D.N.Y. Sept. 29, 2006).  *See also*

*World Wide Commc'ns., Inc. v. Rozar*, No. 96 Civ. 1056, 1997 WL 795750, at *13

(S.D.N.Y. Dec. 30, 1997) (assuming truth of counterclaimant's pleadings for purpose of

motion to dismiss counterclaim); *N.J. Steel Corp. v. Bank of N.Y.*, No. 95 Civ. 3071, 1997

WL 716911, at *1 (S.D.N.Y. Nov. 17, 1997) (on motion to dismiss counterclaim, court

must accept all facts as alleged by defendant as true).

> **B.    Hinte Was Not Required To File A Proof Of Claim In Order To Plead His Counterclaims.**

There is no merit to the Trustee's contention that Hinte's counterclaims are barred

because he did not file a proof of claim in the bankruptcy.  Under well-established

principles of bankruptcy law, Hinte is entitled to assert his claims as a setoff against the

amounts the Trustee seeks to recover in this action.

Courts have repeatedly held that "filing a proof of claim is not a prerequisite to

asserting an otherwise valid setoff." *In re M. Silverman Laces, Inc.*, 404 B.R. 345, 365

(Bankr. S.D.N.Y. 2009).  *See also Fisher v. Outlet Co.* (*In re Denby Stores, Inc.*), 86 B.R.

768, 777 (Bankr. S.D.N.Y. 1988) (setoff under Bankruptcy Act allowable on provable

claim even if no proof made and bar date passed); 5–553 COLLIER ON BANKRUPTCY at ¶

553.07[1] (Alan N. Resnick & Henry J. Sommer, eds., 16th ed.)  ("[t]he prevailing view

is that the failure to file a proof of claim does not prevent the creditor from asserting the

right [to setoff] as a defensive matter"); *Global Crossing Bandwidth, Inc. v. Locus

Telecomm., Inc.,* 632 F. Supp. 2d 224, 230, 247-48 (W.D.N.Y. 2009) (bankruptcy

defendant may assert otherwise time-barred claims for purposes of setoff).  For this

reason, "counterclaims and set-offs may be asserted" in an adversary proceeding "in spite

of the fact that no claims therefore were filed in the Bankruptcy proceeding, and the time

do so has expired." *Bloor v. Shapiro*, 32 B.R. 993, 1002 (S.D.N.Y. 1983) (citing *Zorwizt

v. Okin*, 121 F. Supp. 56, 57 (E.D.N.Y. 1954)).

In *Silverman Laces*, the defendant in an adversary proceeding did not file a proof

of claim, but sought to set off its claim against the debtor against the lesser amount the

bankruptcy trustee sought to recover.  The court ruled that the trustee's claim was subject

to a complete setoff.  404 B.R. at 366.  *See also Bloor*, 32 B.R. at 1002 (holding that

defendant could raise time-barred counterclaims as a setoff to claims asserted by

bankruptcy trustee).  The same principles apply here.  Each of Hinte's counterclaims

expressly seeks to set off Hinte's claims against the Trustee's claims, *see* CC ¶¶ 146, 151,

157, 168, 174, and may appropriately be raised in this action.

None of the cases the Trustee cites concern a counterclaim asserted as a setoff to

an avoidance proceeding.  The cases involve creditors who filed affirmative claims after

the bar date and sought to excuse their late filing on grounds of lack of notice, excusable

neglect or incompetency, and are not relevant here.  *See In re Lehman Bros. Inc.,* 493

B.R. 437, 441 (Bankr. S.D.N.Y. 2013) (claims filed after the bar date expunged, even

though creditors alleged no actual notice of filing deadline); *Redington v. Borghi (In re

Weis Sec., Inc.),* 411 F. Supp. 194, 195 (S.D.N.Y. 1975) (same); *In re MF Global Inc.,*

No. 11-2790, 2014 WL 1320094, at *3 (Bankr. S.D.N.Y. Apr. 1, 2014) (rejecting

claimants' arguments that they filed late claims due to excusable neglect); *In re MF

Global Inc.,* No. 11-2790, 2014 WL 657321, at *2 (Bankr. S.D.N.Y. Feb. 20, 2014)

(barring late filed claim); *In re Adler, Coleman Clearing Corp.,* 204 B.R. 99, 103 (Bankr.

S.D.N.Y. 1997) (same); *SIPC v. Stellatos (In re Blinder, Robinson & Co., Inc.)* 124 F.3d

15

1238, 1243-44 (10th Cir. 1997) (incompetent person exception to filing deadline did not

apply).

Because Hinte's counterclaims assert a right of setoff against the Trustee's claims

in this action, he was not required to file a proof of claim, and the Motion to Dismiss

should be denied.

### C.    The Antecedent Debt Decision Does Not Bar Hinte's Counterclaims For Return Of Principal.

The Trustee claims that "under the Antecedent Debt Decision" Hinte's first, sixth

and seventh counterclaims "should be dismissed to the extent that they rely on the

transfer or existence of principal in his account."  Motion at 15.  But the Antecedent Debt

Decision made no findings about the nature of the funds in Hinte's BLMIS account, and

cannot be the basis for the Motion to Dismiss.

In the Antecedent Debt motion, a group of defendants submitted a consolidated

motion to dismiss the Trustee's avoidance actions in so far as they related to, among

other things, inter-account transfers of allegedly fictitious profits that occurred outside the

statutory reach-back period.  Defendants argued that if the transfer occurred before the

reach-back period, it constituted the transfer of an unavoidable right to payment and

should be treated as principal in the transferee's account.  The District Court determined

that inter-account transfers "in excess of principal deposited in the sender's account"

should be "treated as fictitious profits . . .  in the [transferee's] account" and therefore did

not constitute value for the purposes of the Section 548(c) defense to fraudulent

conveyance actions.  Antecedent Debt Decision, 499 B.R. at 428.  The District Court

therefore denied the motion to dismiss and allowed the Trustee's claims to proceed.

The District Court did not, and could not, make any findings regarding the funds

16

in Hinte's BLMIS account.  The facts surrounding Levy's obligation to Hinte,

BLMIS/Madoff's active interference in that obligation, and Levy's transfers to Hinte

were not before the District Court.  Because the Antecedent Debt Decision involved a

motion to dismiss, the District Court was limited to the allegations set forth in the

Trustee's complaints.  *See Taylor v. Vt. Dep't of Educ.*, 313 F.3d 768, 776 (2d Cir. 2002)

(in the context of a motion to dismiss, a court is not permitted to consider facts outside

the four corners of the complaint).[8]  Moreover, the District Court was required to take as

true the allegations in the Trustee's complaints that all the moving defendants had

"received [more] in transfers . . . than they had invested."  Antecedent Debt Decision, 499

B.R. at 419.

On the instant motion, the opposite presumption applies, and this Court must take

the facts pleaded in Hinte's counterclaims as true.  *See City of N.Y.,* 2006 WL 2850237,

at *3 (on motion to dismiss counterclaim, allegations of counterclaim presumed true).

Hinte alleges he made investments totaling $52.9 million in BLMIS, of which $16.7

million remained in his account at the time of the bankruptcy.  *See* Counterclaim ¶ 136.

Contrary to the Trustee's assertions, nowhere in Hinte's counterclaims does he allege that

his account contained fictitious profits that were "transformed into principal."  Motion at

13. Hinte specifically alleges his investment in BLMIS consisted of principal.  *See*

Counterclaim ¶ 133 ("Hinte contributed and bestowed value in the principal amount of

$52,876,712.33 on BLMIS").  To the extent Hinte's first, sixth, and seventh

counterclaims assert his right to return of principal, *see* ¶¶ 139-142, 166-67, 170-74, they

---

[8] The Trustee cites statements made by Hinte's counsel at oral argument relating to Hinte's BLMIS account, but the full factual context of Hinte's account as pleaded in the counterclaims was not available to the District Court at the time of its decision on October 15, 2013.  Hinte's Answer and Counterclaim was not filed until six months later, on April 17, 2014.

indisputably state a claim under common law and the Trustee's own net equity framework.

The Trustee devotes pages of his brief to detailing how the District Court rejected arguments made in Antecedent Debt briefing concerning the "for value" defense under Section 548(c) of the Bankruptcy, but this does not warrant dismissal of Hinte's counterclaims. Courts routinely reconsider – and adopt – legal arguments rejected on a 12(b)(6) motion at a later stage of litigation. *See, e.g.*, *Maraschiello v. City of Buffalo Police Dep't*, 709 F.3d 87, 97 (2d Cir. 2013) (upholding district court's decision to "revisit a conclusion based on factual allegations taken as true at the motion to dismiss stage" and grant summary judgment to the defendant). *See also* Section II.C.i, infra.

In this case, Hinte believes that facts developed in discovery will show that Levy's transfers to him consisted of principal. Hinte has yet to have the opportunity to propound any discovery into the Trustee's calculations of principal and fictitious profits in his account, in Levy's account or in the Levy family accounts. The origin of the funds in Levy's accounts, including any transfer to her by other family members, is an appropriate matter for discovery. In addition to the Trustee's "cash in / cash out" calculations, Hinte intends to take discovery into whether the Trustee improperly used accounting techniques to orchestrate the allocation of "principal" to the Levys and "fictitious profits" to Hinte when negotiating a settlement with the Levys, and whether BLMIS' theft of funds from the estate of Norman Levy altered the principal balance of the Levy account.

Hinte also intends to show that he conferred value on BLMIS by accepting an inter-account transfer from Levy rather than payment by check or wire transfer. Unlike a

typical inter-account transfer moving funds between BLMIS accounts, Levy's transfers to

Hinte were mandated by the Separation Agreement and Judgment and would have

resulted in a court-ordered withdrawal of cash directly from BLMIS had BLMIS/Madoff

not intervened.  Hinte's receipt of those payments forestalled that withdrawal and

conferred value on BLMIS.  In the alternative, Levy's transfers to Hinte should be

deemed to be principal because BLMIS/Madoff actively interfered with an impending

cash withdrawal that, but for Madoff, would have been made outside the reach-back

period.  For this reason, the Trustee should be estopped from treating the funds

transferred to Hinte as fictitious profits.

The District Court did not consider any of these issues in deciding the Antecedent

Debt motion.  Defendants' consolidated brief in the Antecedent Debt proceedings

expressly reserved individual defendants' rights to "address any particular facts and

circumstances in their respective adversary proceedings," including whether the inter-

account transfer they received was used to settle a debt with the transferor.  *See*

Consolidated Reply to Trustee's and SIPC's Oppositions to Motion to Dismiss Regarding

Antecedent Debt Issues on Behalf of Withdrawal Defendants, as Ordered by the Court on

May 12, 2012 at 24 n.21, No. 12-MC-0115 (S.D.N.Y. Aug. 8, 2012), ECF No. 273.

Even if the District Court had ruled on the particular facts of Hinte's case – which

it did not – the Antecedent Debt Decision is not a final judgment.  At most, the District

Court's ruling on inter-account transfers falls within the law of the case doctrine, which is

"discretionary and does not limit a court's power to reconsider its own decisions prior to

final judgment." *Maraschiello*, 709 F.3d at 97 (citing *Virgin Atl. Airways, Ltd. v. Nat'l

Mediation Bd.,* 956 F.2d 1245, 1255 (2d Cir. 1992)).  Judge Rakoff himself noted at oral

argument on the Antecedent Debt motion that "law of the case can be changed by a judge if he, after receiving new briefing, is persuaded he was in error." Hearing Tr., Antecedent Debt Oral Argument at 61:24-62:02.  This is especially true here, where the Second Circuit's recent decision in *Picard v. Fairfield Greenwich Ltd.*, Nos. 13-1289, 13-1392, 13-1785, 2014 WL 3882481 (2d Cir. Aug. 8, 2014) and the Supreme Court's decision in *Law v. Siegel* 124 S.Ct. 1188, 188 L.Ed.2d 146 (2014) have already called into question Judge Rakoff's conclusions.  *See* Section II.C.ii, *infra*.

Because the Antecedent Debt Decision did not, and could not, resolve the question of "the existence or transfer of principal" in Hinte's BLMIS account, the Trustee's Motion to Dismiss on this ground must be denied.

### D.    Hinte's Counterclaims Seek To Recover No More Than The Amount Of His Initial Customer Investment With BLMIS And Cannot Be Dismissed As Claims Against The General Estate.

The Trustee's contention that Hinte's fraud, tortious interference and estoppel counterclaims should be dismissed as claims against the "general SIPA estate" is unfounded, since Hinte is not a general creditor of the BLMIS estate but a BLMIS customer with a net equity claim.  Once again, the Trustee's arguments rest on a contested issue of fact that at this stage of the litigation must be resolved in Hinte's favor: whether and to what extent his BLMIS account contained (or should be deemed to contain) principal or fictitious profits.  According to the facts pleaded in Hinte's counterclaim, he was a "Net Loser" of the BLMIS fraud, and under the framework adopted by the Trustee, his claims are not general creditor claims but run against the customer estate.

The Trustee relies on the district court's ruling that damage claims against the

BLMIS estate violate SIPA's priority system "[t]o the extent [these] claims allow [customers] to withhold funds beyond their net-equity share of customer property." Antecedent Debt Decision, 499 B.R. at 424.   But Hinte's counterclaims for fraud, tortious interference, and estoppel seek damages only as a set-off of the claims against him, which amount to *less* than the amount of his $52.9 million investment in BLMIS. These claims, which are integrally tied to the calculation of Hinte's net equity and his status as a BLMIS customer, are not claims against the general BLMIS estate.

According to the Trustee's method of calculating net equity, BLMIS customers such as Hinte have a claim against the estate for the amount of their principal investment in Madoff Securities.  *See* Antecedent Debt Decision, 499 B.R. at 420-21 ("A customer who withdrew less than she deposited over the course of her investment with Madoff Securities has a net-equity claim and may be entitled to disbursements from the customer property estate for the amount of that net equity."); Net Equity Decision, 424 B.R. at 142 ("To the extent possible, principal will rightly be returned to Net Losers rather than unjustly rewarded to Net Winners under the guise of profits."); *Greiff*, 476 B.R. at 724-25 (principal invested with Madoff Securities constitutes "value" for purposes of Section 548(c) defense to fraudulent conveyance action).

The Trustee argues that under the Net Equity Decision, Hinte has no claim against the BLMIS customer property estate because he was a "Net Winner" from the fraud. Motion at 17.  But neither this Court nor the Second Circuit has made any determination of Hinte's net equity.  The Net Equity Decision merely held that it was not error for the Trustee to use the Net Investment Method (the customer's total investment less any withdrawals) rather than the Last Statement Method (the amount stated in customers' last

account statement) in determining the amount of customer claims, *see In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d at 235. Hinte's counterclaims, whose allegations must be taken as true for the purposes of this Motion, state that he made a $52.9 million investment in BLMIS, of which $16.7 million remained in his account at the time of the bankruptcy. *See* Counterclaim ¶ 136. This makes Hinte a "Net Loser" under the Trustee's methodology.

Moreover, adoption of the Net Investment Method does not authorize the Trustee to claw back funds from Hinte, or any other investor, without following the procedures set forth in the Bankruptcy Code. Like any plaintiff in an avoiding action, the Trustee must prove that he is entitled to the funds he seeks to recover. SIPA authorizes the Trustee to recover transfers of customer property "if and to the extent that such transfer is voidable or void under the provisions" of the Bankruptcy Code. 15 U.S.C. § 78fff-2(c)(3). Nothing in SIPA authorizes the Trustee to claw back funds based on an unproven allegation that the funds are the proceeds of a fraudulent transfer. The Second Circuit recently recognized that "[a] SIPA [T]rustee has no greater legal interest in unadjudicated fraudulent transfers than does a trustee in bankruptcy. . . . Just as in an ordinary, non-SIPA bankruptcy, a SIPA trustee stands in the shoes of a liquidating firm." *Fairfield Greenwich*, 2014 WL 3882481 at *10. No other decision in this bankruptcy case has held, or could hold, to the contrary.[9] In the Net Equity Decision, the Bankruptcy Court observed that "the Trustee may be unable to avoid a transfer in particular circumstances." Net Equity Decision, 424 B.R. at 136. In *Greiff,* the District Court stated that the Trustee may avoid fraudulent transfers of customer property, but only

---

[9] To the extent the Antecedent Debt Decision held that SIPA limited BLMIS customers' ability to assert value defenses under the Bankruptcy Code to the amount of their investment principal, the decision is inconsistent with *Fairfield Greenwich* and no longer good law. *See* Section II.C.ii, *infra*.

"*upon appropriate proof.*" *Greiff,* 476 B.R. at 728 (emphasis added).  No proof has been

adduced here, as the Trustee has submitted no evidence to prove his assertion that Hinte

was a "Net Winner."

Even if the Trustee could prove that the funds Levy transferred to Hinte consisted

entirely of fictitious profits, the unique nature of the fraud perpetrated against Hinte gives

rise to claims for equitable and monetary relief against the estate.  Had BLMIS/Madoff

not interfered with Levy's pending withdrawal of funds to satisfy her obligation to Hinte,

Hinte indisputably would have been a subsequent transferee of those funds.  By

fraudulently manipulating Hinte into a position where the Trustee could attempt to assert

that Hinte is not a subsequent transferee, BLMIS has sought to deprive Hinte of his

defenses under the Bankruptcy Code.  Consequently, the Trustee should be estopped

from treating the funds transferred to Hinte as fictitious profits.  Alternately, Hinte has

been damaged in an amount equal to any judgment the Trustee may obtain in this action

and may recover this amount through setoff or recoupment.[10]  Likewise, the Trustee has

not yet shown that BLMIS/Madoff's active interference with impending cash

---

[10] The Trustee argues that Hinte's claims for setoff and recoupment are invalid because "Madoff's fraud liability purportedly giving rise to this counterclaim arose pre-liquidation while Defendant's avoidance liability to the Trustee arose post-liquidation," Motion at 9 n.6; 14 n.6, but this is factually and legally incorrect.  The Trustee's fraudulent transfer claims against Hinte arose prepetition at the time that his withdrawals were made.  *See* Compl. ¶¶ 35-36.  Alternatively, Hinte believes he has post-petition claims against the Trustee for his continuation of BLMIS/Madoff's wrongdoing, arising from the Trustee's negotiation of the Levy Settlement and the carve-out of Hinte therefrom.  Such claims can be used to setoff any post-petition liability he may have.  *See In re Shoppers Paradise, Inc.,* 8 B.R. 271, 277 (Bankr. S.D.N.Y. 1980) ("postpetition obligations may be setoff against one another").  Setoff is therefore appropriate under 11 U.S.C. § 553(a).  Alternately, Hinte is entitled to recoupment, because his alleged liability to the Trustee arises out of the same transaction as his counterclaims.  Recoupment is permitted on post-petition liabilities to a debtor arising out of the same transaction as the creditor's claim, including where, as here, the creditor alleges fraud in the inducement of that transaction.  *See Matter of Holford*, 896 F.2d 176, 178 (5th Cir. 1990) (allowing defendant to use post-petition "rental payment due under the lease to recoup losses caused by fraud in the inducement of that same lease"); *In re 105 East Second Street Assocs.,* 207 B.R. 64, 69 (Bankr. S.D.N.Y. 1997) (permitting recoupment of prepetition claim against post-petition liability to debtor).

23

withdrawals by Levy outside the reach-back period to pay her obligation to Hinte does

not warrant treatment of her inter-account transfers to him as if those transfers were

principal.  The Antecedent Debt Decision did not address the unique facts and, hence, the

specific effects, of BLMIS/Madoff's particular fraud on Hinte on this legal issue.

Like any defendant in an avoiding action, Hinte is entitled to assert counterclaims

and defenses to defeat or set off the Trustee's claims. Because the Trustee has not proven

his allegation that Hinte was a "Net Winner," his argument that Hinte is therefore a

general creditor is premature at best and cannot be the basis for the Motion to Dismiss.

## II.    The Trustee's Motion To Strike Hinte's Fifteenth, Sixteenth, Twenty-First, Twenty-Fourth, And Thirty-Second Through Thirty-Fourth Affirmative Defenses Should Be Denied.

### A.    Legal Standard

Motions to strike defenses under Rule 12(f) of the Federal Rules of Civil

Procedure are disfavored and "will be denied unless it is clear that under no

circumstances could the defenses succeed."  *SEC v. Toomey*, 866 F. Supp. 719, 722

(S.D.N.Y. 1992) (citing *William Z. Salcer, Panfeld, Edelman v. Envicon Equities Corp.*,

744 F.2d 935, 939 (2d Cir. 1984), *vacated on other grounds*, 478 U.S. 1015 (1986)).  In

the context of motions to strike defenses under Rule 12(f), courts are generally guided by

the principle that "pleadings should be treated liberally, and that a party should have the

opportunity to support his contentions at trial." *Bennett v. Spoor Behrins Campbell &*

*Young, Inc.*, 124 F.R.D. 562, 563 (S.D.N.Y. 1989).

Courts in the Second Circuit have routinely held that "[t]hree prerequisites must

be satisfied before the Court grants any motion to strike defenses[:]"  (i) there may be <u>no</u>

question of fact that could allow the defense to succeed; (ii) there may be <u>no</u> "substantial

question of law, a resolution of which could allow the defense to succeed;" and (iii) the

"plaintiff must show that it is prejudiced by the inclusion of the defense." *Toomey*, 866

F. Supp. at 722 (citations omitted).  The plaintiff—here, the Trustee—bears the burden

under Rule 12(f) to demonstrate that all three of the prerequisites have been met.  *Id.*

**B.    The Trustee Has Failed To Show That There Is No Question Of Fact Which Might Allow The Defenses To Succeed.**

The Trustee seeks to strike Hinte's Fifteenth,[11] Sixteenth,[12] Twenty-First,[13]

Twenty-Fourth,[14] Thirty-Second,[15] Thirty-Third[16] and Thirty-Fourth[17] affirmative

---

[11] The Fifteenth Affirmative Defense provides, in pertinent part, that withdrawals made by Hinte from his account are not subject to avoidance or recovery because "such withdrawals were or should be treated as or deemed to be return of principal…."  This defense involves open issues of fact as to whether Hinte had principal in his account and whether principles of estoppel based upon BLMIS's particular fraud against Hinte and the Trustee's handling of the Levy Settlement require his account balance to be treated as principal.

[12] The Sixteenth Affirmative Defense provides that "Plaintiff's claims are barred, in whole or in part, because Hinte is entitled to setoff or recoupment."  This defense also depends upon whether Hinte had any principal in his account or has a claim for damages that can be used as a setoff, and is tied, in part, to his counterclaims.  *See also* n.11, *supra*.

[13] The Twenty-First Affirmative Defense provides, in pertinent part, that BLMIS sought to deprive Hinte of his defenses as a subsequent transferee and that, as a result, Hinte has damages which can be recovered through setoff or recoupment.  This defense depends, in part, upon whether Hinte had (or is entitled to be treated as having) principal in his account and/or is, or should be, entitled to a "customer property" claim.  In addition, whether Hinte is a subsequent transferee, or whether actions by BLMIS or the Trustee (in connection with the negotiation of the Levy Settlement) damaged Hinte by depriving him of his subsequent transferee rights, are open issues of fact (and law) that have not yet been decided by this or any other court and for which Hinte has not yet had an opportunity to propound discovery.

[14] The Twenty-Fourth Affirmative Defense provides, in pertinent part, that "Hinte is entitled to his customer account balance as a matter of law."  This defense depends in large part upon whether Hinte had any principal in his account.  The Trustee has merely alleged Hinte's account contained fictitious profits without providing any proof thereof.

[15] The Thirty-Second Affirmative Defense provides that "Plaintiff's claims are barred to the extent the Trustee's calculation of liability for avoidable "fictitious profits" under his "Net Investment Method" fails to give Hinte credit for the account balance listed on the last BLMIS customer statement issued to Hinte prior to the commencement of the applicable reach-back period."   This defense depends upon, among other things, whether Hinte had any principal in his account and/or whether the Trustee's failure to seek to avoid obligations owing to Levy or Hinte prevents him from pursuing this claw back action.

[16] The Thirty-Third Affirmative Defense provides that "Plaintiff's claims are barred to the extent the Trustee's use of the "Net Investment Method" improperly enables Plaintiff to avoid transfers that were outside any applicable reach-back period."  For this defense, Hinte will need to engage in discovery

defenses. The success of Hinte's Defenses depends upon open issues of fact that have

not yet been resolved, including whether Hinte received any principal via inter-account

transfers.[18]

A motion to strike must be denied "unless it appears to a certainty that plaintiffs

would succeed despite any state of the facts which could be proved in support of the

defense . . . ." *Salcer, Panfeld, Edelman*, 744 F.2d at 939 (quoting *Durham Indus., Inc. v.*

*N. River Ins. Co.*, 482 F. Supp. 910, 913 (S.D.N.Y. 1979)); *Bennett,* 124 F.R.D. at 563.

*See also Cohen v. Elephant Wireless, Inc.*, No. 03-Civ-4058, 2004 WL 1872421, at *4

(S.D.N.Y. Aug. 19, 2004) (denying motion to strike certain affirmative defenses where

questions of fact necessitated discovery). While in the context of a motion to dismiss by

a defendant under Rule 12(b)(6), a plaintiff's factual claims would be accepted as true, in

the context of a motion by the plaintiff to strike a defense, a court "must ascertain

whether there is any possibility that additional evidence could allow the defense to

succeed." *Toomey*, 866 F. Supp. at 726. Put another way, the Motion to Strike is akin to

a motion to dismiss a complaint and therefore the defendant's assertions should be taken

---

regarding the accounting methods utilized by the Trustee in calculating Levy's and her family's purported "net equity" and in reaching the Levy Settlement.

[17] The Thirty-Fourth Affirmative Defense provides that "[a]ny funds withdrawn by Hinte are not subject to avoidance and/or recovery because such funds are customer balances that originated before or predate any applicable reach-back period and therefore represent or should be deemed to be principal or an unavoidable return on investment." This defense depends upon the open issue of law of whether the Trustee's failure to seek to avoid obligations owing to Levy or Hinte precludes him from now seeking to avoid and recover Hinte's withdrawals.

[18] As described in further detail in the Answer and Counterclaims, there are numerous other "issues of fact" that also render the Motion to Strike premature, including, *inter alia*: whether Hinte is, or should be treated as, a subsequent transferee with subsequent transferee defenses under Bankruptcy Code Section 550(b); whether, by reason of the Levy Settlement, the Trustee has already received his "single satisfaction" with respect to the withdrawals made by Hinte under Bankruptcy Code Section 550(d); whether the Trustee perpetuated BLMIS/Madoff's particular fraud on Hinte in connection with the Levy Settlement; and whether the Trustee's failure to seek to avoid obligations he had to Levy or Hinte insulates Hinte from liability. None of these issues was before Judge Rakoff in connection with the consolidated motion to dismiss and none of these issues has been decided by this or any other court.

as true.  Even if success by the defendant seems "extremely unlikely," a court cannot

sustain a motion to strike unless it is "completely certain . . . that the defense could not

succeed."  *Id.*; *Bennett*, 124 F.R.D. at 564 ("[e]ven if it is unlikely that defendant could

provide a sufficient set of facts to prevail on its defense, when the possibility of a

meritorious defense exists, the Court must . . . deny the motion to strike the affirmative

defense.").  As one court has stated, "[f]actual disputes are best resolved once the parties

have conducted discovery and once the Court can better determine the case on its merits .

. . ."  *Avent v. Solfaro*, 210 F.R.D. 91, 94 (S.D.N.Y. 2002).

As stated in the counterclaims and as described in Section I.C, *supra*, Hinte

believes that the transfers from Levy's account to his account were, or should be treated

as, principal.  Despite conclusory statements to the contrary in the Trustee's Motion, the

Trustee has not produced any evidence to support his assertion that the funds transferred

from Levy to Hinte were anything other than principal.  The Complaint did not include

any accounting or other evidence that would indicate that Levy's account lacked

sufficient principal at the time of either of the transfers to Hinte to fund those transfers,

and for the purpose of the Motion to Strike, Hinte is entitled to a presumption that the

amounts in this account were principal, not fictitious profits.

Hinte has not yet had an opportunity to propound any discovery upon the Trustee

in an effort to determine, among other things, whether Levy had sufficient principal in

her account at the time of the transfers, how Levy's account was funded, how the Trustee

calculated the "net equity" in Levy's account, how those calculations impacted the Levy

Settlement, how the Trustee applied that calculation to transfers to Hinte, whether the

Trustee manipulated the Levy Settlement to allocate profits to Hinte, and what effect the

27

$250 million that Madoff diverted to BLMIS from the Levy estate had or should have had on the Levy family accounts and, therefore, had or should have had on the monies transferred by Levy into Hinte's account.  Without evidence that Levy had insufficient principal in her account to make the transfers to Hinte (or even any allegations in the Complaint that would support the Trustee's contention that Hinte received no principal), the Trustee has simply not met his burden of proving that there are no issues of fact that could allow the Defenses to succeed.

Moreover, the facts and circumstances that surround the negotiation of the Levy Settlement may raise estoppel and other equitable issues that would require the funds transferred to Hinte to be treated as principal.  In connection with the Levy Settlement, the Trustee conceded that the Levy family was paying back substantially all of the "profits" transferred from their accounts.  Hinte should be given an opportunity to take discovery regarding the Levy Settlement to ascertain whether the so-called "fictitious profits" that the Trustee seeks to recover from Hinte were already recovered by the Trustee under the Levy Settlement.  To the extent that the Levy Settlement satisfied the same avoidance claims that relate to all or some portion of the funds transferred from Levy to Hinte, the Defenses the Trustee is seeking to have stricken could succeed.  Until such time as Hinte has had an opportunity to look into this matter further, the Motion to Strike is premature, at best.

Nor does the Antecedent Debt Decision mandate that the Defenses be stricken. Judge Rakoff did not address the effects of BLMIS/Madoff's particularized fraud on Hinte or the arguments that Hinte in fact would have received cash outside the reach-back period but for Madoff's interference with Levy's impending cash withdrawals, or that,

but for BLMIS/Madoff's interference, Hinte would be (or should be treated as) a subsequent transferee.  Under these circumstances, treatment of Hinte's customer balance as principal no matter its origin is an open, fact-driven question.

Hinte respectfully submits that these, and other, open issues of fact necessitate a finding that the Motion to Strike is inappropriate and should be denied.  With discovery and an opportunity to present facts specific to his case, Hinte can prove, *inter alia*, that he received (or should have received) principal from Levy in the amount of $52.9 million and that any subsequent withdrawals of that principal were for value and not subject to avoidance.[19]

**C.     The Trustee Has Failed To Show That There is No Question of Law Which Might Allow The Defenses to Succeed.**

In resolving a motion to strike, "courts are very reluctant to determine disputed, substantial questions of law" and will generally not do so until "after adequate discovery and, if necessary, a complete hearing on the merits."  *Bennett*, 124 F.R.D. at 563-64; *Toomey*, 866 F. Supp. at 722 (stressing that "[i]t is particularly important to refrain from considering disputed questions of law when . . . there has been no significant discovery."); *Oneida Indian Nation of N.Y. v. State of N.Y.*, 194 F. Supp. 2d 104, 117 (N.D.N.Y. 2002) ("it is not appropriate to decide substantial issues of law on a motion to strike . . . [especially] where there has been little or no discovery").  To that end, courts "will not strike a defense in any case where, though the defense might be certain to fail, the Court should hear evidence on that point" or "discovery will shed additional light on the strength of the [defense]."  *Toomey*, 866 F. Supp. at 726; *Cohen*, 2004 WL 1872421

---

[19] As stated in n.18, *supra*, there are other open issues that, if resolved, would also support Hinte's Defenses.

at *2 ("when there has been no significant discovery, courts are even more reluctant to grant a motion to strike an affirmative defense.").

The Trustee's Motion to Strike is based in large part upon his assertion that the Defenses "rely on propositions of law expressly rejected by the District Court in the Antecedent Debt Decision or previously addressed by the Second Circuit's affirmance of the Net Equity Decision." Motion at 21. As such, he argues, "[t]here are no remaining questions of . . . law necessary to determine the validity of these Defenses." *Id.* at 20. The Trustee's argument fails for at least three reasons.[20]

<u>First</u>, the Antecedent Debt Decision—entered in the context of a denial of a motion to dismiss—is interlocutory and did not decide Hinte's factually-specific issues on the merits. As stated above, courts in this Circuit routinely reconsider – and adopt – legal arguments rejected on a 12(b)(6) motion at a later stage of litigation. *See, e.g.*, *Maraschiello*, 709 F.3d at 97. This is especially true where, as here, there was no discovery preceding the ruling on the motion to dismiss, there were no facts presented to the District Court specific to the instant case, and the comparatively low threshold to survive a motion to dismiss under the plaintiff-friendly 12(b)(6) standard was balanced heavily in favor of the Trustee. As stated above, in the instant Motion, the standard applicable to the Motion to Strike is weighted heavily in Hinte's favor, and this Court must take the facts pleaded in Hinte's Answer and Counterclaims as true. Hinte should not now be foreclosed from gathering evidence, presenting facts specific to his case and the Defenses, and developing his legal theory before the Court. Unless and until the

---

[20] The open legal issues in this proceeding are highly fact intensive and cannot be properly adjudicated at this stage in the proceeding before discovery and briefing has occurred. If this Court would like these issues addressed at this time, Hinte respectfully requests that the Court set a separate discovery and briefing schedule with respect to same.

Trustee files a motion for summary judgment and each party addresses head-on whether there are disputed facts that are material to the Defenses, the Trustee's Motion to Strike is nothing more than an impermissible end-run around the procedural step of filing a motion for summary judgment and meeting the burdens it imposes.

Second, recent controlling case law has called the continued validity of the Antecedent Debt Decision into question because that decision was wrongly premised on the Trustee having greater avoiding powers than an ordinary bankruptcy trustee. In particular, the Antecedent Debt Decision incorrectly assumed that claims brought by the Trustee were not subject to valid defenses available to defendants in cases under Title 11.

Finally, the Trustee has made several conclusory assertions in the Motion regarding supposedly settled "law," including that Hinte's failure to file a proof of claim precludes him from asserting any setoff or recoupment defense. But, to date, Hinte has not yet had an opportunity to brief, and this Court has not decided, those substantive legal issues.[21]

> ### i.    This Court Has Discretion To Consider Hinte's Defenses Because the Antecedent Debt Decision— Which Is Interlocutory And Not "Law Of The Case"— Was Decided On A Motion To Dismiss And Subject To A Different Standard Of Review Than The Defenses Would Be In A Motion For Summary Judgment.

---

[21] Unresolved issues of law include: (i) whether inter-account transfers in satisfaction of a court-ordered judgment between the transferor and transferee conferred value on the estate, and (ii) whether BLMIS/Madoff's specific and targeted interference with Levy's impending cash withdrawal outside the reach-back period to pay her obligation to Hinte and Hinte's assent to BLMIS/Madoff's request that he keep his funds at BLMIS conferred a benefit on BLMIS or should result in Hinte's customer balance being treated as principal regardless of its origin. These issues were not decided by Judge Rakoff in connection with the consolidated motion to dismiss. Another unresolved issue of law is whether the Trustee's failure to seek to avoid obligations owing to Levy or Hinte prevents him from avoiding and/or recovering the amounts withdrawn from Hinte's account. While the Antecedent Debt Decision touches on the issue of avoidance of obligations, Judge Rakoff cites to no legal authority (with the sole exception of his own prior decision) for the proposition that obligations were not merely avoidable but invalid. Hinte submits that legal obligations cannot just be declared void by fiat absent a legal proceeding and a cause of action to obtain relief, and requests an opportunity to brief this issue and present it to this Court for consideration.

No facts were developed for the consolidated motion to dismiss that was the underpinning for the Antecedent Debt Decision, even though the facts of each complaint differed.  This context is highly relevant to whether the Antecedent Debt Decision can now be used offensively to short circuit normal procedures.

In addition, the Antecedent Debt Decision is interlocutory and, as a result, is subject to only minimal deference as "law of the case."  As a general proposition, under the law of the case doctrine, "[w]hen a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Bordeau Bros., Inc. v. Montagne (In re Montagne)*, Bankr. No. 08-10916, Adv.. No. 08-1024, 2010 WL 396252, at *5 (Bankr. D. Vt. Jan. 25, 2010) (quoting *Arizona v. California*, 460 U.S. 605, 618 (1983)).  However, it is equally true that "[a]pplication of the 'law of the case' doctrine is 'discretionary and does not limit a courts [sic] power to reconsider its own decisions prior to final judgment.'" *McAnaney v. Astoria Fin. Corp.*, 665 F. Supp. 2d 132, 142 (E.D.N.Y. 2009) (quotations omitted).  To that end, the Second Circuit has held that "the law of the case doctrine . . . is at its <u>least binding</u> in the context of interlocutory orders." *Montagne*, 2010 WL 396252, at *5 (emphasis added) (quoting *Sussman v. Crawford*, 548 F.3d 195, 198 (2d Cir. 2008)).

Significantly, courts in the Second Circuit have routinely held that, "[i]f a court first resolves a motion to dismiss and is then presented with the same issues on summary judgment, the law of the case doctrine would not apply 'because of the divergent standard of review applicable to motions to dismiss and motions for summary judgment.'" *Id.* at *6 (citations omitted); *McAnaney*, 665 F. Supp. 2d at 142 ("because of the divergent standard of review applicable to motions to dismiss and motions for summary judgment,

the law of the case doctrine is inapposite to the Court's analysis of whether, after the close of discovery, genuine issues of fact have been raised which survive summary judgment"); *Nobel Ins. Co. v. City of N.Y.*, No. 00-CV-1328, 2006 WL 2848121, at *4 (S.D.N.Y. Sept. 29, 2006) (holding that the law of the case doctrine "does not preclude this Court from reconsidering issues on summary judgment that have initially been raised in the context of a motion to dismiss").

To survive the consolidated motion to dismiss filed before Judge Rakoff, the Trustee's complaint merely had to "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *Deangelis v. Corzine (In re MF Global Holdings Ltd. Inv. Litig.)*, 998 F.Supp.2d 157, 167 (S.D.N.Y. 2014) ("To survive a motion to dismiss, Plaintiffs need only show that, assuming the truth of the facts they plead, it is plausible that Defendants are liable for the alleged misconduct.").

Thus, the procedural context of Judge Rakoff's Antecedent Debt Decision is of critical importance to the assessment of the Trustee's Motion to Strike. In the Antecedent Debt Decision, Judge Rakoff merely refused to grant the motion to dismiss brought by the consolidated group of defendants. This means that all Judge Rakoff did in the Antecedent Debt Decision was decline to dismiss the Complaint brought against defendants, including Hinte, after assuming the Trustee's factual assertions to be true and drawing all inferences in favor of the Trustee. Judge Rakoff permitted the lawsuit to proceed-nothing more. Judge Rakoff did not decide whether Hinte had principal in his account or determine the validity or invalidity of Hinte's specific, fact-driven defenses; nor did Judge Rakoff grant summary judgment to the Trustee on any of the Defenses.

Yet, if this Court strikes the Defenses it would be doing exactly what Judge Rakoff did

not do-this Court would be granting the Trustee the equivalent of summary judgment.

However, the Trustee has not brought a motion for summary judgment. He has

not, because he cannot do so, especially at this early stage in the litigation where there

has been no opportunity for discovery, no presentation of facts specific to Hinte's case,

the case against Hinte might rise or fall based upon those yet to be developed facts,[22] the

Antecedent Debt Decision is still not law of the case, and the law is the subject of

substantial dispute. It is well established in the Second Circuit that, under these

circumstances, the Bankruptcy Court has the discretion to consider the issues that were

before Judge Rakoff in connection with a proper motion for summary judgment. Hinte

respectfully submits that, until the Bankruptcy Court has had the opportunity to consider

these issues in a proper procedural context, the Motion to Strike is nothing more than an

ill-conceived attempt to end-run the rules of civil procedure.

>    **ii.    Due To Subsequent Contrary Precedent, The
>         Rulings In The Antecedent Debt Decision Must
>         Be Reconsidered.**

Two rulings issued by higher courts subsequent to the Antecedent Debt Decision,

including rulings by the Supreme Court of the United States and the Second Circuit, have

called the continuing validity of the Antecedent Debt Decision into question.[23] First,

---

[22] These facts include whether Hinte received principal from Levy, whether due to Madoff's active
interference, Hinte should be deemed to have principal in his account, whether Hinte was, or should be
treated as, a subsequent transferee, whether the accounting and netting done by the Trustee for the Levy
family accounts were appropriate, the effects of Madoff's alleged $250 million misappropriation of monies
from the Levy family accounts to BLMIS and the characterization of whether principal or fictitious profits
were transferred by Levy to Hinte, the circumstances surrounding the Levy Settlement and the carve-out of
Hinte from that settlement, and the Trustee's conduct in negotiating and documenting the Levy Settlement.
See also n.18, *supra*.

[23] These two rulings and their import were recently brought to this Court's attention by a group of
defendants (the "Gang of Four") in connection with such defendants' motions to dismiss. *See* Reply
Memorandum Of Law In Support Of Motion To Dismiss at 17-19, No. 08-01789 (Bankr. S.D.N.Y. Mar.

under the Supreme Court's decision in *Law v. Siegel*, it is clear that equitable

considerations cannot trump express language of the Bankruptcy Code.  134 S. Ct. at

1194 ("in exercising [its] statutory and inherent powers, a bankruptcy court may not

contravene specific statutory provisions.")   The Antecedent Debt Decision effectively

strips a clawback defendant of many valid value defenses that it would have under

Chapter 11, even though there is no basis in the statute for doing so.  Such a result-which

cannot be reconciled with the clear, statutory language of Section 548(c) and is clearly

based on equitable or other policy considerations not founded in the Bankruptcy Code (or

in the SIPA statute itself)-is impermissible under the Supreme Court's decision in *Law v.*

*Siegel*.

Second, and similarly, the Second Circuit has recently ruled, in *Picard v. Fairfield*

*Greenwich, Ltd.*, that a SIPA Trustee has no greater powers than does a trustee in

bankruptcy.  2014 WL 3882481 at *10 ("a SIPA Trustee has no greater legal interest in

unadjudicated fraudulent transfers than does a trustee in bankruptcy.  The Act merely

engrafts special features onto the familiar framework of a liquidation proceeding under

Chapter 7 of the Bankruptcy Code . . . .").  By holding that "[S]ection 548(c)'s

affirmative defense[s] [need not be] appl[ied] in the same way to the customer property

estate as it would to the general estate[,]" the Antecedent Debt Decision effectively

provides the Trustee with greater avoidance powers than it would be entitled to in a

---

17, 2014), ECF No. 5867; Omnibus Reply Memorandum Of The Pryor Cashman Plaintiffs In Further
Support Of Their Motions To Dismiss The Amended Complaints, No. 08-01789 (Bankr. S.D.N.Y. March
17, 2014), ECF No. 5875; Letter Submitting Supplemental Authority In Connection With Motions To
Dismiss Scheduled To Be Heard On September 17, 2014, No. 08-01789 (Bankr. S.D.N.Y. Sept. 2014),
ECF No. 7862; Hearing Tr., Oral Argument on Gang of Four MTDs, No. 08-01789 (Bankr. S.D.N.Y. Sept.
17, 2014).  For the purpose of this response, Hinte assumes this Court's familiarity with the arguments
made by the Gang of Four defendants and incorporates them herein by reference.

Chapter 11 case.  Antecedent Debt Decision, 499 B.R. at 423-24.  In *Fairfield Greenwich*, the Second Circuit has held that such a result is impermissible.

As a result of these rulings, the Antecedent Debt Decision should no longer be considered "settled law" by the Bankruptcy Court, and it can properly be reconsidered. Until such time as these issues have been briefed, and Hinte has had an opportunity to be heard, the Motion to Strike should be denied.

<blockquote>
<b>iii.    The Failure To File A Claim Does Not Bar Hinte's Assertion Of An Entitlement To Set-Off Or Recoupment In Hinte's Sixteenth Or Twenty-First Affirmative Defenses.</b>
</blockquote>

As described in further detail in Section I.B, *supra*, the fact that Hinte did not file a proof of claim does not affect whether or not his set-off or recoupment defenses are valid.  Bankruptcy courts have repeatedly recognized that "filing a proof of claim is not a prerequisite to asserting an otherwise valid setoff." *In re M. Silverman Laces, Inc.*, 404 B.R. 345, 365  (Bankr. S.D.N.Y. 2009).  To the extent that the Trustee challenges whether Hinte has valid setoff or recoupment defenses (as opposed to whether the failure to file a proof of claim forecloses Hinte from asserting those setoff or recoupment defenses), that is a substantive issue of law that is better presented to this Court after discovery and briefing, and as such, is not properly before this Court on a motion to strike.

<b>D.    The Trustee Will Not Be Prejudiced By The Inclusion Of The Defenses.</b>

Finally, the Trustee has failed to present any evidence that he will be prejudiced by the inclusion of the Defenses.  Courts have repeatedly held that a plaintiff's

conclusory statements concerning prejudice, without more, are not enough to rise to the level of prejudice necessary to sustain a motion to strike defenses.

The Trustee asserts that he will be prejudiced "in the discovery obligations he will face if compelled to address meritless Defenses in this action." Motion at 22. But there is no evidence that the Trustee would be subject to additional discovery obligations if he is "compelled to address" the Defenses[24] and, as Hinte has demonstrated above, discovery is necessary to resolve many of the open issues of fact and law present in Hinte's specific case. Indeed, discovery could show, among other things, that Hinte received principal from Levy or that the Trustee has already received a "single satisfaction" in respect to the funds sought to be clawed back from Hinte.

In light of the facts specific to Hinte's case, the Trustee's conclusory statement that engaging in such discovery would be prejudicial to him cannot be enough to rise to the level necessary for a motion to strike. *See Avent*, 210 F.R.D. at 94 (holding that "[t]he fact that [the movant] will have to further litigate his claims, which involve factual and legal disputes, is not sufficient to show that he will be prejudiced."). This is especially true where, as here, no "additional" discovery will be necessary to prove the Defenses that the Trustee is seeking to strike. *See Resolution Trust Corp. v. Gregor*, No. 94 CV 2578, 1995 WL 931093, at *5 (E.D.N.Y. Sept. 29, 1995) (holding that plaintiff could not argue that it will be prejudiced by an affirmative defense where the defense would "cover information that will be subject to discovery whether or not [it was] stricken"). The Trustee's failure to prove prejudice is fatal to his Motion to Strike. ("Absent a showing of prejudice, an affirmative defense need not be stricken.") *Id*. *See*

---

[24] The Trustee seeks to strike seven of the 39 affirmative defenses Hinte asserted in his Answer. Hinte submits that even if the Motion to Strike were granted, the Trustee would be subject to many of the same discovery requests and obligations in responding to the remaining defenses.

*also* 5A Wright & Miller, FEDERAL PRACTICE AND PROCEDURE § 1382 at 690-92 (1995):

*available at* Westlaw FPP § 1382 ("a motion to strike frequently has been denied when . .

. no prejudice could result from the challenged allegations, even though the [ ] matter

literally is within . . . the categories set forth in Rule 12(f)").

Even if the Trustee was able to show prejudice, where, as here, there are open

issues of fact and law, the court should deny the motion to strike until such time as the

parties have been able to engage in discovery and be heard on the open issues. *See, e.g.*,

*Cohen*, 2004 WL 1872421, at *4 (denying motion to strike certain affirmative defenses

where questions of fact necessitated discovery); *Oneida Indian Nation*, 194 F. Supp. 2d at

117 ("it is not appropriate to decide substantial issues of law on a motion to strike . . .

[especially] where there has been little or no discovery"); *Bennett*, 124 F.R.D. at 563-64

(denying motion to strike where affirmative defense was dependent upon disputed

questions of law and fact and further discovery was necessary to resolve open issues).

*See also Greenwald v. City of N.Y.*, No. 06-CV-2864, 2012 WL 6962297, at *9

(E.D.N.Y. July 19, 2012) (even though prejudice existed, where the court had "already

found that substantial questions of law or fact remain that could allow the City's

affirmative defenses to succeed, [the court held that] the second-prong prejudice inquiry

of plaintiff's motion to strike [was] moot").

Finally, Hinte submits that it is simply more efficient for this Court to permit

Hinte to develop his case through discovery and present his Defenses to this Court than to

stifle them prematurely without discovery.  Under *Stern v. Marshall*, 564 U.S. ---, 131 S.

Ct. 2594, 180 L. Ed. 2d 475 (2011), the Bankruptcy Court cannot dispose of fraudulent

transfer claims against Hinte via final order because Hinte did not file a proof of claim in

these cases.  Striking the Defenses at this time would be tantamount to granting a dispositive motion for summary judgment, and any such determination could only be done by report and recommendation that would be subject to *de novo* review.

In the absence of any evidence of prejudice, and considering the fact that Hinte has not yet had the opportunity to seek discovery on the many open issues of fact and law or present any facts specific to his case to this Court, the Motion to Strike should be denied.

## CONCLUSION

For the reasons set forth above, the Trustee's Motion should be denied.

Respectfully submitted,

Dated:  October 8, 2014
       New York, New York

By: s/Martin J. Auerbach_____
MARTIN J. AUERBACH, ESQ.
1185 Avenue of the Americas
31st Floor
New York, NY 10036
T: (212) 704-4347
F: (646) 304-0175
auerbach@mjaesq.com

William P. Weintraub
Kizzy L. Jarashow
GOODWIN PROCTER LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
T: (212) 813.8800
F: (212) 355.3333
wweintraub@goodwinprocter.com
kjarashow@goodwinprocter.com

Laura E. Neish
LAW OFFICES OF LAURA E. NEISH
1221 Avenue of the Americas
 Suite 4200
New York, NY 10020
T:  (908) 652-1139
lneish@lneishlaw.com