| | |
|---|---|
| Windels Marx Lane & Mittendorf, LLP<br>156 West 56th Street<br>New York, New York 10019<br>Tel: (212) 237-1000<br>Howard L. Simon (hsimon@windelsmarx.com)<br>Kim M. Longo (klongo@windelsmarx.com)<br>Antonio J. Casas (acasas@windelsmarx.com) | Hearing Date: November 18, 2014 at 10 a.m.<br>Objection Deadline: November 11, 2014 at 5 p.m. |

*Special Counsel to Irving H. Picard, Trustee for the
Substantively Consolidated SIPA Liquidation of
Bernard L. Madoff Investment Securities LLC and the estate of
Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>　　　　　　　Plaintiff-Applicant,<br><br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>　　　　　　　Defendant. | Adv. Pro. No. 08-01789 (SMB)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>　　　　　　　Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>　　　　　　　Plaintiff,<br><br>v.<br><br>EDWARD BLUMENFELD, individually, and as Trustee for SUSAN BLUMENFELD GST TRUST, TRUST F/B/O SUSAN BLUMENFELD, TRUST F/B/O DAVID BLUMENFELD, and TRUST F/B/O BRAD BLUMENFELD; | Adv. Pro. No. 10-04730 (SMB) |

{80092534:7}

SUSAN BLUMENFELD, individually, and as Trustee for TRUST F/B/O SUSAN BLUMENFELD, TRUST F/B/O DAVID BLUMENFELD, TRUST F/B/O BRAD BLUMENFELD, DAVID BLUMENFELD FARMINGDALE TRUST, BRAD BLUMENFELD FARMINGDALE TRUST, BOXWOOD REALTY GROUP, and DOGWOOD REALTY GROUP;

DAVID BLUMENFELD, individually, and as Trustee for SUSAN BLUMENFELD GST TRUST, THE DAVID BLUMENFELD FAMILY TRUST, TRUST F/B/O DAVID BLUMENFELD,  BOXWOOD REALTY GROUP, and DOGWOOD REALTY GROUP;

BRAD BLUMENFELD, individually, and as Trustee for SUSAN BLUMENFELD GST TRUST, THE DAVID BLUMENFELD FAMILY TRUST, TRUST F/B/O BRAD BLUMENFELD, BOXWOOD REALTY GROUP, and DOGWOOD REALTY GROUP;

HARVEY COHEN, individually, and as Trustee for EDWARD BLUMENFELD AND SUSAN BLUMENFELD CHARITABLE LEAD TRUST, EDWARD AND SUSAN BLUMENFELD 2007 CHARITABLE LEAD TRUST, and BRAD BLUMENFELD CHARITABLE LEAD TRUST;

BLUMENFELD DEVELOPMENT GROUP, LTD.; EDWARD AND SUSAN BLUMENFELD CHARITABLE LEAD TRUST; EDWARD BLUMENFELD & SUSAN BLUMENFELD 2007 CHARITABLE LEAD TRUST; TRUST F/B/O SUSAN BLUMENFELD; SUSAN BLUMENFELD GST TRUST; TRUST F/B/O DAVID BLUMENFELD; EDWARD BLUMENFELD & SUSAN BLUMENFELD, GUARDIANS FOR DAVID BLUMENFELD NY UGMA; BRAD BLUMENFELD CHARITABLE LEAD TRUST; TRUST F/B/O BRAD BLUMENFELD; EDWARD BLUMENFELD & SUSAN BLUMENFELD, GUARDIANS FOR BRAD BLUMENFELD NY UGMA; THE BRAD BLUMENFELD FAMILY

{80092534:7}   2

FOUNDATION; THE EDWARD AND SUSAN BLUMENFELD FOUNDATION; BULL MARKET FUND; EDWARD BLUMENFELD ET AL II; DWD ASSOCIATES, LLC; BDG DWD ASSOCIATES, LLC; EDB CAPITAL, LLC; DOUBLE B SQUARED LLC; EDWARD BLUMENFELD GERALD Y MORDFIN ET AL; DOGWOOD REALTY GROUP; EDWARD BLUMENFELD ET AL; LAGUARDIA CORPORATE CENTER ASSOCIATES, L.P.; LAGUARDIA CORPORATE CENTER ASSOCIATES, LLC; BOXWOOD REALTY GROUP; SOUTH SEA HOLDINGS L.P.; BDG PISCATAWAY, LLC; BDG KINGSBRIDGE, LLC; BWI; SUSAN BLUMENFELD INTERIORS, LTD.; BDG CONSTRUCTION CORP.; DAVID BLUMENFELD FARMINGDALE TRUST; THE DAVID BLUMENFELD FAMILY TRUST; BRAD BLUMENFELD FARMINGDALE TRUST; 45 SOUTH SERVICE ROAD, LLC; BCC II, LLC; BDG COMMACK, LLC; BDG DEER PARK ASSOCIATES, LLC; BDG LAKE GROVE I, LLC; BDG LARKFIELD ASSOCIATES, LLC; CHARLESTON ENTERPRISES, LLC; DANIEL LAND CO. LLC; BDG DANIEL STREET, LLC; GOTHAM PLAZA ASSOCIATES, LLC; BDG 125TH STREET, LLC; 10 MICHAEL DRIVE ASSOCIATES, L.P.; 500 BI-COUNTY ASSOCIATES, L.P.; ARC-BDG SETAUKET ENTERPRISE; BLUMCO SETAUKET, LLC; COBLUM SETAUKET, LLC; BDG 115 BROADHOLLOW, L.P.; MAXROB, L.P.; B-4 PARTNERSHIP; 125 BETHPAGE ASSOCIATES; and BDG YAPHANK, LLC;

                Defendants.

**MOTION FOR ENTRY OF AN ORDER PURSUANT TO SECTION 105(A) OF THE BANKRUPTCY CODE AND RULES 2002 AND 9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE APPROVING A SETTLEMENT AGREEMENT BY AND BETWEEN THE TRUSTEE AND THE DEFENDANTS**

TO:    THE HONORABLE STUART M. BERNSTEIN
         UNITED STATES BANKRUPTCY JUDGE

{80092534:7}                         3

Irving H. Picard (the "Trustee"), as trustee for the substantively consolidated liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") and the estate of Bernard L. Madoff ("Madoff," and together with BLMIS, collectively, the "Debtors"), by and through his undersigned counsel, submits this motion (the "Motion") seeking entry of an order, pursuant to section 105(a) of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), and Rules 2002 and 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), approving a settlement, the terms and conditions of which are set forth in the settlement agreement (the "Agreement")[1] by and among the Trustee on the one hand, and the Defendants, on the other hand, and in support thereof, the Trustee respectfully represents as follows:

## PRELIMINARY STATEMENT

The Trustee's settlement with the Defendants results in, immediately upon Closing (as defined in the Agreement), a payment to the Trustee by Defendants of $32,750,000.00 million in cash (the "Settlement Payment"). In addition, those Defendants with BLMIS net losing Defendant Customer Claims (defined in the Agreement as the "Customer Claimholder Defendants") shall assign such claims, totaling $29,348,309.09 dollars, to the Trustee (the "Assignment"). At Closing, the settlement will have a current value to the BLMIS Estate of approximately $50 million taking into account all catch-up distributions on the Defendant Customer Claims as of that date and related SIPC advances. Depending on the percentage ultimately paid by the Trustee on BLMIS customer claims, the settlement has a potential value to the BLMIS Estate of up to $62,098,309.09, assuming a 100% recovery by the Trustee. The Settlement Payment and the Assignment add substantially to

---

[1] The form of Agreement is attached hereto as <u>Exhibit A</u>. Capitalized terms used but not defined herein have the meaning ascribed to such terms in the Agreement.

{80092534:7}                                    4

the funds available for distribution to customers who lost money as a result of Madoff's Ponzi scheme.

The Defendants in this proceeding had 38 accounts with BLMIS from which they received transfers. The Trustee's complaint against the Defendants seeks (i) the avoidance and recovery of initial transfers from those accounts to certain of the Defendants, (ii) the avoidance and recovery of a certain, non-account-related $11 million fraudulent conveyance in December 2008 by BLMIS to a Defendant, and (iii) the recovery of subsequent transfers to certain other Defendants. The complaint also seeks the disallowance and equitable subordination of the Defendant Customer Claims.

This Settlement represents a good faith, complete, and total settlement between the Trustee and the Defendants as to any and all disputes between them raised in this Adversary Proceeding (including, without limitation, the Trustee's claims for the avoidance and/or recovery of transfers during the two-year period prior to the Filing Date (defined below), the six-year period prior to the Filing Date, and all times prior to such six-year period) and as to any and all claims filed with the Trustee by the Defendants.

This Settlement will benefit the customers of BLMIS with allowed claims, and the Trustee respectfully requests that the Court approve it.

## BACKGROUND

1. On December 11, 2008 (the "Filing Date"),[2] the Securities and Exchange Commission ("SEC") filed a complaint in the United States District Court for the Southern

---

[2] In this case, the Filing Date is the date on which the Securities and Exchange Commission commenced its suit against BLMIS, December 11, 2008, which resulted in the appointment of a receiver for the firm. *See* Section 78*lll*(7)(B) of SIPA.

{80092534:7}  5

District of New York (the "District Court") against the Debtors (Case No. 08 CV 10791). The complaint alleged that the Debtors engaged in fraud through the investment advisor activities of BLMIS.

2. On December 15, 2008, pursuant to section 78eee(a)(4)(A) of SIPA, the SEC consented to a combination of its own action with an application of SIPC. Thereafter, pursuant to section 78eee(a)(3) of SIPA, SIPC filed an application in the District Court alleging, *inter alia*, that BLMIS was not able to meet its obligations to securities customers as they came due and, accordingly, its customers needed the protection afforded by SIPA.

3. Also on December 15, 2008, the District Court entered an order pursuant to SIPA (the "Protective Decree"), to which BLMIS consented, that, in pertinent part:

    (i)    removed the receiver and appointed the Trustee for the liquidation of the business of BLMIS pursuant to section 78eee(b)(3) of SIPA;

    (ii)    appointed Baker & Hostetler LLP as counsel to the Trustee pursuant to section 78eee(b)(3) of SIPA; and

    (iii)    removed the case to this Court pursuant to section 78eee(b)(4) of SIPA.

4. At a plea hearing on March 12, 2009 (the "Plea Hearing") in the criminal action filed against him by the United States Attorney's Office for the Southern District of New York, Madoff pled guilty to an 11-count criminal information which included securities fraud, money laundering, theft and embezzlement counts. At the Plea Hearing, Madoff admitted that he "operated a Ponzi scheme through the investment advisory side of [BLMIS]." (Plea Hr'g Tr. at 23:14-17.) On June 29, 2009, Madoff was sentenced to a term of imprisonment of 150 years.

5. On April 13, 2009, an involuntary bankruptcy petition was filed against Madoff. On June 9, 2009, this Court entered an order substantively consolidating the Chapter 7 estate of Madoff into the BLMIS SIPA proceeding.

## THE DEFENDANTS

6. The Defendants are: (i) Edward Blumenfeld, his wife, and their two sons; (ii) Blumenfeld Development Group, Ltd. ("BDG") -- the flagship of the real estate development business run by Edward and his sons -- and a number of BDG-affiliated companies, including DWD Associates LLC ("DWD"), discussed further below; (iii) a number of Blumenfeld family trusts; and (iv) the controller for BDG.

7. A number of the Defendants invested directly with BLMIS through 38 separate accounts, as listed in Exhibit A to the Complaint (Dkt. No. 1-1). Many of these accounts were net winners (redemptions exceeded deposits, resulting in fictitious profits), and twelve were net losers (deposits exceeded redemptions, resulting in a customer claim). The numbers are summarized and detailed in Exhibits A and B to the Complaint (Dkt. Nos. 1-1 and 1-2), respectively.

## THE CLAIMS AGAINST THE DEFENDANTS

8. The Trustee filed this Adversary Proceeding against the Defendants on December 1, 2010 in order to, *inter alia*, avoid and recover transfers made from their BLMIS accounts and the aforementioned December 2008 $11 million fraudulent conveyance. The Complaint asserts claims seeking (i) the avoidance and recovery of such transfers and conveyance, totaling approximately $88 million during the six-year statutory period prior to the Filing Date,[3] of which approximately $27 million represents fictitious

---

[3] The Complaint also asserts certain claims for the avoidance and recovery of transfers beyond the statutory six-year period.

{80092534:7}    7

profits, (ii) the recovery of subsequent transfers related thereto, and (iii) the disallowance and equitable subordination of the Defendant Customer Claims (and the disallowance of certain claims by net winning Defendants that were previously denied by the Trustee). The Trustee's claims against the Defendants include, but are not limited to, claims under Sections 502(d), 544(b), 547, 548, 550 and 551 of the Bankruptcy Code, SIPA § 78fff-2(c)(3), and Sections 270 to 281 of the New York Debtor and Creditor Law for initial and subsequent transfers (the "Transfers") within the applicable statutory period (collectively, the "Avoiding Power Claims").

9. The Defendants have disputed any liability to the BLMIS estate under the Complaint and deny that they received any of the fraudulent transfers asserted in the Complaint with actual knowledge of fraud at BLMIS, with willful blindness to circumstances suggesting fraud at BLMIS, or otherwise in bad faith.

## THE CUSTOMER CLAIMS AGAINST THE BLMIS ESTATE

10. Prior to July 2, 2009, the bar date for filing claims, the Customer Claimholder Defendants filed the Defendant Customer Claims asserting losses in certain accounts, as reflected on their respective BLMIS account statements as of November 30, 2008. The table attached as Exhibit B-1 to the Agreement breaks down the Defendant Customer Claims by Defendant name, claim number and net equity value.[4] Based on this Court's decision upholding the Trustee's calculation of Net Equity on a Cash In-Cash Out basis (and the Second Circuit Court of Appeals' affirmance, and United States Supreme

---

[4] Due to their voluminous nature, the Defendant Customer Claims have not been filed herewith but are available at the Court's request.

{80092534:7}    8

Court's denial of *certiorari*, as to same),[5] the Trustee has calculated the aggregate amount of the Defendant Customer Claims to be $29,348,309.09 (the "Net Equity Claim").

## MEDIATION AND THE TRUSTEE'S INVESTIGATION

11. Pursuant to a Stipulation and Order "so ordered" by this Court on August 27, 2012 (Dkt. No. 26), the Trustee and the Defendants (together, the "Parties") agreed to exchange limited discovery and mediate the issues presented in the Action. On December 3, 2012, this Court approved a mediator (Dkt. No. 29).

12. The Parties thereafter exchanged a substantial number of documents, and participated in multiple mediation sessions and extensive negotiations until March 17, 2014, when the mediation ended without a settlement.

13. Subsequent to March 17, 2014, the Parties continued to negotiate, ultimately reaching a settlement and executing the Agreement on October 16, 2014.

14. Before agreeing to settle, the Trustee and/or his counsel acting on his behalf conducted a comprehensive investigation of the Defendants' investments with BLMIS and their overall dealings and transactions with BLMIS and Madoff. The Trustee's investigation included, without limitation: (i) reviewing and analyzing the histories of the Defendants' investments and transactions with BLMIS, as reflected in their BLMIS account statements, correspondence, and other records available to the Trustee; (ii) reviewing and analyzing the voluminous records and documents, and other information, the Defendants provided to the Trustee pursuant to Bankruptcy Rule 2004 and in connection

---

[5] *In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d 229 (2d Cir. 2011), *reh'g and reh'g en banc den.* (2d Cir. Nov. 08, 2011), *cert. dismissed*, 132 S. Ct. 2712 (2012), *cert. denied*, 133 S. Ct. 24 (2012), 133 S. Ct. 25 (2012).

{80092534:7}                                           9

with the mediation; and (iii) participating in multiple meetings and discussions with counsel for the Defendants.

15. After a detailed review of the relevant records and a thorough and deliberate consideration of the uncertainty and risks inherent in all litigation, the Trustee, in the exercise of his business judgment, has determined that it is appropriate to resolve this matter rather than proceed with litigation.

## OVERVIEW OF THE AGREEMENT

16. The principal terms and conditions of the Agreement are generally as follows:[6]

- The terms and conditions of the Agreement shall become effective and enforceable on the first business day after the date that the Bankruptcy Court order approving the Agreement becomes a Final Order, as defined in the Agreement (the "Effective Date"). The Closing shall be on a business day no later than seven (7) business days after the Trustee provides notice to the Defendants that the Effective Date has occurred.

- At the Closing Date, the Trustee shall be paid a lump sum amount of $32,750,000.

- At the Closing Date, the Defendants shall absolutely, unconditionally and irrevocably assign and transfer the Defendant Customer Claims totaling $29,348,309.09 in full to the Trustee.

- As of the Closing Date, those non-net losing Defendants whose filed claims were denied by the Trustee shall withdraw their objections to such determinations.

- The Trustee will release, remise, and forever discharge the Defendants and certain related persons and entities on the specific terms set forth in the Agreement.

- The Defendants will release, remise, and forever discharge the Trustee and all his agents and BLMIS and its consolidated estate on the specific terms set forth in the Agreement.

---

[6] Terms not otherwise defined in this section shall have the meaning ascribed in the Agreement. In the event of any inconsistency between the summary of terms provided in this section and the terms of the Agreement, the Agreement shall prevail.

{80092534:7}    10

- With respect to an interest Ruth Madoff purported to acquire in DWD by virtue of the $11 million fraudulent conveyance noted above, the Trustee will acknowledge that, to the best of his knowledge, information and belief, no such interest was properly acquired or owned by Ruth Madoff, Bernard Madoff, or BLMIS, and will provide a written statement to that effect addressed to the DOJ and in the form provided by the Agreement.

- As soon as practicable after the Closing, the Trustee shall file a Notice of Dismissal dismissing this Adversary Proceeding, with prejudice and without costs to either the Trustee or the Defendants.

## RELIEF REQUESTED

17.    By this Motion, the Trustee respectfully requests that the Court enter an order substantially in the form of the proposed Order attached hereto as Exhibit B approving the Agreement.

## LEGAL BASIS

18.    Bankruptcy Rule 9019(a) states, in pertinent part, that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Courts have held that in order to approve a settlement or compromise under Bankruptcy Rule 9019(a), a court should find that the compromise proposed is fair and equitable, reasonable, and in the best interests of a debtor's estate. *Air Line Pilots Assoc., Int'l v. Am. Nat'l Bank & Trust Co. of Chicago (In re Ionosphere Clubs, Inc.)*, 156 BR 414, 426 (S.D.N.Y. 1993), *aff'd*, 17 F.3d 600 (2d Cir. 1994) (citing *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968)).

19.    The Second Circuit has stated that in determining whether to approve a compromise, the court should not decide the numerous questions of law and fact raised by the compromise, but rather should "canvass the issues and see whether the settlement 'fall[s] below the lowest point in the range of reasonableness.'" *Cosoff v. Rodman (In re W.T. Grant Co.),* 699 F.2d 599, 608 (2d Cir.), *cert. denied*, *Cosoff v. Rodman,* 464 U.S. 822

(1983) (quoting *Newman v. Stein,* 464 F.2d 689, 693 (2d Cir.), *cert. denied*, 409 U.S. 1039 (1972)); *see also In re Chemtura Corp.,* 439 B.R. 561, 594 (Bankr. S.D.N.Y. 2010). "[T]he court need not conduct a 'mini-trial' to determine the merits of the underlying litigation." *In re Purified Down Prods. Corp.,* 150 B.R. 519, 522 (S.D.N.Y. 1993).

20. The factors that courts in the Second Circuit consider when approving bankruptcy settlements are well established. These interrelated factors are:

> (1) the balance between the litigation's possibility of success and the settlement's future benefits; (2) the likelihood of complex and protracted litigation, with its attendant expense, inconvenience, and delay, including the difficulty in collecting on the judgment; (3) the paramount interests of the creditors, including each affected class's relative benefits and the degree to which creditors either do not object to or affirmatively support the proposed settlement; (4) whether other parties in interest support the settlement; (5) the competency and experience of counsel supporting, and [t]he experience and knowledge of the bankruptcy court judge reviewing, the settlement; (6) the nature and breadth of releases to be obtained by officers and directors; and (7) the extent to which the settlement is the product of arm's length bargaining.

*Fox v. Picard (In re Madoff)*, 848 F.Supp.2d. 469, 487-488 (S.D.N.Y. 2012), *aff'd*, 740 F.3d 81 (2d. Cir. 2014) (quoting *Motorola, Inc. v. Official Comm. of Unsecured Creditors* (*In re Iridium Operating LLC*), 478 F.3d 452, 462 (2d Cir. 2007) (internal quotation marks and citations omitted)).

21. Even though the Court has discretion to approve settlements and must independently evaluate the reasonableness of the settlement, *In re Rosenberg*, 419 B.R. 532, 536 (Bankr. E.D.N.Y. 2009), the business judgment of the trustee and his counsel should be considered in determining whether a settlement is fair and equitable. *In re Chemtura Corp.*, 439 B.R. at 594. The competency and experience of counsel supporting

{80092534:7}                                    12

the settlement may also be considered. *Nellis v. Shugrue*, 165 B.R. 115, 122 (Bankr. S.D.N.Y. 1994). Finally, the Court should be mindful of the principle that "the law favors compromise." *Vaughn v. Drexel Burnham Lambert Group, Inc. (In re Drexel Burnham Lambert Group, Inc.),* 134 B.R 499, 505 (quoting *In re Blair*, 538 F.2d 849, 851 (9th Cir. 1976)).

22. The Trustee's settlement with the Defendants is fair and equitable and in the best interests of the estate and the customers of BLMIS. *See* Affidavit of the Trustee in Support of the Motion (the "Picard Affidavit"). A true and accurate copy of the Picard Affidavit is attached hereto as <u>Exhibit C</u>. The following considerations influenced the Trustee's decision to settle:

   a) <u>Benefit to BLMIS Customers</u>. The Agreement greatly furthers the interests of the customers of BLMIS by adding $32,750,000 to the fund of BLMIS customer property and providing for a full assignment to the Trustee of the Defendant Customer Claims totaling approximately $29.3 million, including without limitation any and all rights to distributions on such claims. At Closing, the settlement has a value to the BLMIS Estate of approximately $50 million, taking into account all catch-up distributions on the Defendant Customer Claims as of that date and related SIPC advances. Depending on the percentage ultimately paid by the Trustee on BLMIS customer claims, the settlement has a potential value to the BLMIS Estate of up to $62,098,309.09, assuming a 100% recovery on customer claims by the Trustee.

   b) <u>Nature of the Trustee's Claims</u>. As noted, the Complaint seeks recovery of six-year as well as two-year transfers, and transfers constituting principal as well as those constituting fictitious profits. The Agreement eliminates the uncertainty of

{80092534:7}   13

litigating these claims, including the highly contentious issues as to Defendants' good/bad faith. The Trustee cannot be certain that he would prevail in such a litigation, or that any litigation recovery would be greater than the substantial sums he is recovering through the settlement.

      c)    <u>Avoidance of the Cost and Delay of Further Litigation</u>. The Agreement eliminates the expense and delay of litigation, which would likely require extensive and costly discovery, and a prolonged trial. The Agreement also eliminates the inevitable delay caused by future likely appeals in this proceeding, which benefits the estate and the customers of BLMIS. Even if successful in whole or in part, litigation with the Defendants would delay distributions for years.

      d)    <u>Difficulties with Collection</u>. In light of the substantial amount of the Trustee's claims against Defendants and that Defendants consist of dozens of separate individuals, trusts, and business entities, if the Trustee were to prevail through litigation, there could be significant difficulties and delays associated with judgment enforcement efforts.

      e)    <u>Finality</u>. The Agreement resolves all claims among the Parties as to the Adversary Proceeding.

      f)    <u>Experienced Counsel</u>. The Parties are represented by sophisticated and experienced professionals. The Parties and their professionals understand the difficulties of a SIPA liquidation of this size and complexity and are aware of the harm to customers and creditor if the Agreement is not consummated.

g) <u>Product of Arms-Length Negotiations</u>.  The settlement is the product of arm's length and good faith negotiations between the Trustee and the Defendants, which included several months of mediation before a court-approved mediator.

23. For all of these reasons, the Agreement is well within the "range of reasonableness," *In re W.T. Grant Co.*, 699 F.2d at 608 (quoting *Newman v. Stein*, 464 F.2d at 693), and confers a substantial benefit on the estate and the customers of BLMIS.  The Trustee respectfully requests that the Court approve the Agreement.

## CONCLUSION

24. In sum, the Trustee submits that the Agreement should be approved: (a) to avoid lengthy, burdensome, and expensive litigation as well as litigation risks and (b) because it represents a fair and reasonable compromise of the Avoiding Power Claims that greatly benefits the estate and the customers of BLMIS.  Because the Agreement is well within the "range of reasonableness" and confers a substantial benefit on the estate, the Trustee respectfully requests that the Court enter an Order approving the Agreement.

## NOTICE

25. In accordance with Bankruptcy Rules 2002 and 9019 and that certain Order Establishing Notice Procedures and Limiting Notice entered on December 5, 2011 (BLMIS Main Proceeding, Adv. Pro. No. 08-1789, Dkt. No. 4560) (the "Order Limiting Notice"), notice of this Motion is being given to (i) SIPC; (ii) the SEC; (iii) the Internal Revenue Service; (iv) the United States Attorney for the Southern District of New York; and (v) counsel for all Defendants and anyone else who has filed notices of appearance in this Adversary Proceeding.  Also in accordance with the Order Limiting Notice, the Trustee has provided notice by e-mail to interested parties in the SIPA liquidation proceeding of the following: the Motion; the date and time scheduled for the hearing at which this Court will

consider the Motion; the date by which objections, if any, must be filed with this Court, and the name and address of the persons to be served with a copy of any objections. The Trustee submits that no other or further notice is required.

WHEREFORE, the Trustee respectfully requests entry of an Order substantially in the form of <u>Exhibit B</u> granting the relief requested in the Motion.

Dated:  New York, New York
        October 17, 2014

Respectfully submitted,

/s/ Howard L. Simon
Windels Marx Lane & Mittendorf, LLP
156 West 56th Street
New York, New York 10019
Telephone: (212) 237-1000
Facsimile: (212) 262-1215
Howard L. Simon
Email: hsimon@windelsmarx.com
Kim M. Longo
Email: klongo@windelsmarx.com
Antonio J. Casas
Email: acasas@windelsmarx.com
*Attorneys for Irving H. Picard,*
*Trustee for the Substantively Consolidated*
*SIPA Liquidation of Bernard L. Madoff*
*Investment Securities LLC and the estate of*
*Bernard L. Madoff*

{80092534:7}                            16