

**Jordan W. Siev**
Direct Phone: +1 212 205 6085
Email: jsiev@reedsmith.com

Reed Smith LLP
599 Lexington Avenue
New York, NY 10022-7650
Tel +1 212 521 5400
Fax +1 212 521 5450
reedsmith.com

October 17, 2014

**Via ECF**

Honorable Stuart M. Bernstein
United States Bankruptcy Judge
United States Bankruptcy Court
One Bowling Green
New York, New York 10004-1408

    Re:    **In re Bernard L. Madoff Investment Securities LLC, No. 08-1789 (SMB),**
           **Picard v. J. Ezra Merkin, et al., Adv. Pro. No. 09-1182 (SMB)**

Dear Judge Bernstein:

We represent Bart M. Schwartz, the Receiver for Defendants Ariel Fund Limited and Gabriel Capital, L.P., in the above-referenced adversary proceeding, and write on behalf of all defendants. In connection with the Trustee's pending motion for certification under Rule 54(b) of the Federal Rules of Civil Procedure (Docket No. 227), we write to inform the Court of a recent decision by the U.S. Court of Appeals for the Second Circuit that was issued subsequent to the oral argument on the Trustee's motion, *Acumen re Mgmt. Corp. v. Gen. Sec. Nat'l Ins. Co.*, Index No. 12-cv-5081 (2d Cir. Oct. 3, 2014) – a copy of which is attached hereto. This decision is relevant to the issues before the Court, specifically with respect to whether legal theories arising from the same set of operative facts can satisfy the separate claim requirement of Rule 54(b).

We thank the Court for its attention to this matter.

Respectfully,

*Jordan W. Siev*

Jordan W. Siev

Enclosure

cc:    All Counsel of Record (*via ECF*)

12-5081-cv
*Acumen Re Management Corp. v. General Security National Ins. Co.*

# United States Court of Appeals

## FOR THE SECOND CIRCUIT

————————

August Term, 2013

(Argued:  October 7, 2013          Decided:  October 3, 2014)

No. 12-5081-cv

————————

ACUMEN RE MANAGEMENT CORPORATION,
*Plaintiff-Appellant,*

*v.*

GENERAL SECURITY NATIONAL INSURANCE COMPANY,
*Defendant-Appellee.*

————————

B e f o r e :

LYNCH, CHIN, AND CARNEY, *Circuit Judges.*

————————

Acumen Re Management Corporation ("Acumen") sued General Security
National Insurance Company ("General Security"), seeking damages related to
General Security's alleged breach of a reinsurance underwriting agreement.  The
United States District Court for the Southern District of New York (George B.
Daniels, *Judge*) entered partial summary judgment for General Security, ruling
that four of Acumen's five breach-of-contract theories were baseless and that,
under all five theories, no more than nominal damages were available to
Acumen.  The District Court certified the judgment under Federal Rule of Civil
Procedure 54(b) and closed the case.  Acumen appealed, invoking Rule 54(b)

1  certification as the basis for our Court's jurisdiction.  Because the District Court's
2  certification was improper in that its partial judgment did not address separate
3  "claim[s] for relief," we conclude that we lack jurisdiction to reach the merits of
4  this appeal.  Accordingly, the appeal is DISMISSED.
5
6                                    MATHIEU J. SHAPIRO (Paul H. Aloe, Kudman Trachten Aloe
7                                    LLP, *on the brief*), Obermayer, Rebmann, Maxwell & Hippel
8                                    LLP, Philadelphia, Pennsylvania, *for Acumen Re Management*
9                                    *Corporation*.
10
11                                   CHRISTOPHER BURGESS KENDE (Elliott Kroll, Arent Fox LLP;
12                                   Edward Hayum, Cozen O'Connor, *on the brief*), Cozen
13                                   O'Connor, New York, New York, *for General Security National*
14                                   *Insurance Company*.
15                                   _____
16

17  SUSAN L. CARNEY, *Circuit Judge*:

18          This case arises from a reinsurer's contractual undertakings to compensate

19  a specialized underwriter.  The underwriter, Acumen Re Management

20  Corporation ("Acumen"), sued the reinsurer, General Security National

21  Insurance Company ("General Security"), for breach of contract, seeking

22  contingent commissions alleged to be due.  The United States District Court for

23  the Southern District of New York (George B. Daniels, *Judge*) entered partial

24  summary judgment for General Security, ruling that four of Acumen's five

25  breach-of-contract theories were baseless and that, under all five theories, no

26  more than nominal damages were available.  The District Court then certified the

2

1   judgment under Federal Rule of Civil Procedure 54(b), and, notwithstanding the

2   remaining disputed theory, closed the case.

3        General Security asserts that we lack jurisdiction to entertain Acumen's

4   appeal, arguing that the District Court's certification under Rule 54(b) was

5   improper in that its partial judgment did not address separate "claim[s] for

6   relief."  We agree, and conclude that we must dismiss the appeal.

7                           **BACKGROUND**[1]

8        We begin with some details of the dispute.  In 1994, Acumen, an

9   underwriter, entered into the "Acumen Re Reinsurance Underwriting Agency

10   Agreement" (the "Underwriting Agreement") with Sorema North America

11   Reinsurance Company ("Sorema").  Pursuant to the Underwriting Agreement,

12   Sorema engaged Acumen to underwrite reinsurance of certain workers'

13   compensation insurance, subject to detailed guidelines.  The undertaking

14   concerned "facultative reinsurance," in which Sorema, as a reinsurer, would

---

[1] We state the facts as set forth in the parties' Rule 56.1 statements, noting any material allegations subject to dispute.

1    assume on a policy-by-policy basis certain portions of risks insured as an initial

2    matter by other companies (the "ceding companies").[2]

3        Acumen's role for Sorema was primarily to underwrite—that is, to

4    identify, investigate, evaluate, and price—risks of a type and range that were

5    well defined by the Underwriting Agreement.  For each qualifying risk identified

6    by Acumen and accepted by Sorema, Acumen would produce a "certificate"

7    documenting the risk and related undertakings.

8        The Underwriting Agreement provided that Acumen would receive, as

9    compensation, an eight percent commission on "net written premium received

10   by [Sorema] on . . . certificates bound or written under [the] Agreement."  The

11   Underwriting Agreement was supplemented at its inception by a "Contingency

12   Commission Addendum" ("Addendum") providing that Acumen would "be

13   allowed a thirty percent (30%) contingent commission on [Sorema's] share of

14   annual net profits, if any . . . arising from [certificates] bound or written under

15   the [parties' agreement]," subject to further specified terms.  The Addendum set

16   out a detailed schedule and method for calculating the contingent commissions,

17   using as factors both the profitability of the underwritten policies and the size of

---

[2] "Facultative reinsurance is reinsurance that is purchased for a specific risk insured by the cedent."  Barry R. Ostrager & Mary Kay Vyskocil, MODERN REINSURANCE LAW & PRACTICE 2-5 (2d ed. 2000) ("Modern Reinsurance Law").

4

1 certain of Sorema's reserves.  Together, these documents (the "Initial

2 Agreement") established the terms on which Sorema would compensate Acumen

3 for its underwriting services

4      Seven years later, in 2001, Sorema was acquired and became General

5 Security.  The following year, General Security and Acumen agreed to end their

6 relationship, in the "Agreement Terminating Acumen Re Reinsurance

7 Underwriting Agency Agreement" ("Termination Agreement").  The

8 Termination Agreement called for General Security to make an immediate

9 payment of $1 million to Acumen in 2001, and, in early 2008, to calculate and pay

10 any contingent commissions due under the Addendum for the prior

11 underwriting years—from the start of 1997 through April 30, 2002.[3]  The

12 Termination Agreement also specified certain provisions of the Initial Agreement

13 that would survive the termination.  These included General Security's

14 obligation to provide to Acumen quarterly reports on any losses General Security

15 incurred on claims then outstanding.  (Collectively, the Initial Agreement and the

16 Termination Agreement will be referred to as the "Agreements.")

---

[3] General Security offered testimony suggesting that the gap in time was necessary to permit the relevant claims to "mature" and become fairly calculable.  *See* App'x at 901-02.

5

1       After the termination in 2002 and before the final commission payment

2 became due in 2008, General Security commuted certain of its reinsurance

3 certificates, some of which had been underwritten by Acumen.[4]  The

4 commutations—which Acumen alleged General Security made without

5 consulting Acumen (thereby breaching the Underwriting Agreement, according

6 to Acumen)—were entered into General Security's accounting system as "paid

7 losses."  Acumen alleges that General Security accounted for those losses in its

8 financial statements without distinguishing among losses associated with

9 commuted certificates underwritten by Acumen and those underwritten by other

10 companies.  General Security also stopped providing quarterly reports to

11 Acumen after December 2004.

12       In 2008, when the time came for General Security to calculate the

13 contingent commissions owed to Acumen, it concluded that none were due.

14 Rather, it determined that, in the end, the certificates Acumen underwrote

15 generated losses for General Security in excess of $56.7 million.

---

[4] "Commutation" is "a method of terminating a reinsurer's obligations for past, present, and future claims under specifically en[]umerated reinsurance contracts" and is "usually achieved by the payment of a lump sum by the reinsurer to the cedent in exchange for a complete buy-back of all (or specified) reinsurance contracts."  Modern Reinsurance Law, *supra* n.2, at 1-13.

6

1       Acumen disputed that conclusion, maintaining that it was owed

2 contingent commissions by General Security, and, later in 2008, it sued.

3 Acumen's complaint framed the claims in two counts, one for breach of contract

4 and a second for breach of the implied covenant of good faith and fair dealing.

5 As relief, it sought principally compensatory and punitive damages.  Not long

6 after Acumen filed an amended complaint, General Security moved for partial

7 summary judgment on the issues of liability and punitive damages, as well as on

8 Acumen's claim for attorney's fees.  In an order dated February 25, 2010, the

9 District Court dismissed, as duplicative of its breach of contract claim, Acumen's

10 claim for breach of the implied covenant of good faith and fair dealing, but

11 denied as premature General Security's motion on the breach of contract claim

12 itself.[5]  The case then proceeded on that breach claim.

13       In that claim, framed in the complaint simply as "COUNT I - Breach of

14 Contract," Acumen alleged that General Security committed "multiple breaches"

15 of the Agreements by:  (1) failing to provide Acumen with quarterly financial

16 reports; (2) unilaterally commuting certificates underwritten by Acumen; (3)

17 failing to consult with Acumen before determining the profit (if any) it realized

---

[5] The court's order also explained that Acumen had voluntarily withdrawn its claims for
punitive damages and attorney's fees.

1   on any of Acumen's certificates; and (4) failing (through poor data management,

2   *inter alia*) to perform a valid calculation of and to pay Acumen's contingent

3   commissions.  It did not specify damages attributable to each individual alleged

4   breach.  Nor did it specify a particular quantum of damages for the Count as a

5   whole, instead asserting generally that it should receive the contingent

6   commissions allegedly owed under the Agreements.[6]

7         After the close of discovery, General Security moved again for summary

8   judgment on liability and damages, and Acumen filed its own motion for

9   summary judgment on liability.  The District Court granted partial summary

10  judgment in General Security's favor.  *Acumen Re Mgmt. Corp. v. Gen. Sec. Nat'l*

11  *Ins. Co.*, No. 09 CV 01796 (GBD), 2012 WL 3890128 (S.D.N.Y. Sept. 7, 2012).

12  Treating the complaint's Count I as alleging five separate "claims" for breach, the

13  court concluded as a matter of law that Acumen failed to produce evidence

14  sufficient for a trier of fact to conclude that General Security had breached the

---

[6] Although Acumen asserted that, "at a bare minimum," it was entitled to thirty percent of the approximately $10 million in profits that it alleged General Security made as of December 31, 2004 on the Acumen-generated certificates, it also acknowledged that it did not have access to adequate information to calculate the total amount due as of 2008.

8

1    contract in four of the five ways that Acumen alleged.[7]  *Id.* at *5-9, *12.  As to one

2    theory, however—the argument that General Security relied on inaccurate data

3    in calculating the contingent commissions—the court determined that a genuine

4    dispute of material fact precluded an award of summary judgment.  *Id.* at *10-12.

5    Finally, with respect to damages, the court observed that Acumen failed "to go

6    beyond its conclusory, speculative assertions to set forth with reasonable

7    certainty evidence of some demonstrable harm" with respect to *any* of the breach

8    theories.  *Id.* at *11.  Thus, the court held that, even if Acumen established at trial

9    that General Security relied on inaccurate data and thereby breached its

---

[7] In particular, the court concluded:

    1.  <u>Quarterly Reports</u>: Acumen waived its right to receive quarterly reports by never inquiring after them or informing General Security that it wished to receive them. *Acumen*, 2012 WL 3890128, at *6.

    2.  <u>Reserves Consultation</u>: General Security had no obligation to consult with Acumen before establishing certain aspects of policies' take-back value when it commuted certificates.  *Id.* at *7.  In addition, Acumen did not demonstrate that General Security failed to consult with Acumen regarding its reserves related to calculating the contingent commissions, or that its method of calculation was inadequate or a sham. *Id.*

    3.  <u>Commutation Loss Allocation</u>: General Security's method of calculating contingent commissions, in which it included commutation losses, did not violate the Agreements.  *Id.* at *8.

    4.  <u>Contingent Commission Calculation Using Carry Forward Deficit</u>: Under the plain terms of the Agreements, General Security could apply a carry-forward deficit when it calculated contingent commissions due.  *Id.* at *9.

9

1   contractual obligations, it would be entitled to recover only nominal damages.[8]

2   *Id.*

3       Acumen moved for reconsideration or, alternatively, for entry of a partial

4   judgment under Rule 54(b) as to the dismissed "claims."  Because the bulk of its

5   case had been dismissed, Acumen explained as follows in support of its request:

6           If Acumen loses on the appeal of the remainder of its claims,
7           it is unlikely to ask for a trial limited to nominal damages.  If
8           Acumen prevails, a far larger trial will be necessary.  Either
9           way, the limited trial on one sliver of the claim, for nominal
10          damages, would have been a waste of time for the Court and
11          all parties.
12
13   Mot. for Recons. or Rule 54(b) Jgmt. at 23.
14
15       The District Court denied Acumen's motion for reconsideration, but

16   certified its partial summary judgment order as a "final judgment for appeal"

17   under Rule 54(b) and then, without further explanation, directed the Clerk of

18   Court to close the case.  *Acumen Re Mgmt. Corp. v. Gen. Sec. Nat'l Ins. Co.*, No. 09-

19   CV-01796 (GBD), 2012 WL 6053936, at *3 (S.D.N.Y. Dec. 4, 2012).  In its order, the

20   court explained its view that the prerequisites of Rule 54(b) were satisfied

21   because the order resolved "four of the five grounds in support of [Acumen's]

---

[8] Under New York law, nominal damages may be awarded to a party who has shown breach of
contract, even in the absence of evidence of a related loss.  *See, e.g., Hirsch Elec. Co. v. Cmty.
Servs., Inc.*, 145 A.D.2d 603, 605 (N.Y. App. Div. 1988).

10

1    claims" and "determined liability on all of Acumen's claims for compensatory

2    damages." *Id.* at *2.  Finally, the court concluded that there was no just reason for

3    delay, because "resolving the issues finally decided in the [summary judgment

4    order] will likely avoid a costly, duplicative trial (or the need for any trial at all)."

5    *Id.*  Judgment was entered and the Clerk of Court closed the case,

6    notwithstanding the still-unresolved theory of breach related to poor data

7    quality.

## DISCUSSION

9        Our jurisdiction over this appeal is "bounded by 28 U.S.C. § 1291, which

10   empowers us to hear only 'appeals from . . . final decisions' of the federal district

11   courts." *United States ex rel. Polansky v. Pfizer, Inc.*, -- F.3d --, 2014 WL 3844149, at

12   *2 (2d Cir. Aug. 6, 2014) (internal citation omitted).  General Security argues that

13   we lack jurisdiction because the order appealed from is not final as to any single

14   "claim."  Acumen responds that the District Court appropriately certified its

15   rejection of four of Acumen's five theories of breach under Rule 54(b), thus

16   rendering that ruling a "final judgment" for jurisdictional purposes.  Acumen

17   maintains that the theories of breach currently on appeal implicate factual and

18   legal issues that are independent of the unresolved data-quality breach theory,

11

1    and the different theories are therefore distinct "claims" as required for

2    certification under Rule 54(b).[9]  *See, e.g., Schwartz v. Eaton*, 264 F.2d 195, 196 (2d

3    Cir. 1959) (noting that Rule 54(b) "is applicable by its terms only to separate and

4    distinct claims.").[10]

5         General Security's challenge to our jurisdiction is well founded.  For the

6    reasons described below, we conclude that Acumen's five theories of breach are

7    not separate and distinct but are based on a single aggregate of operative facts

8    and thus form a single claim.  Accordingly, the District Court's ruling was not

---

[9] Rule 54(b) provides in full:

> Judgment on Multiple Claims or Involving Multiple Parties.  When an action presents more than one claim for relief—whether as a claim, counterclaim, crossclaim, or third-party claim—or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay.  Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

[10] Acumen also argues that the District Court's 2010 order, dismissing as duplicative Acumen's claim for breach of the duty of good faith and fair dealing, has merged with the Rule 54(b) judgment and is properly on appeal before this Court.  The District Court did not certify the 2010 order for immediate appeal, however, and, because certification under Rule 54(b) was improper in any event (for the reasons discussed *infra*), the merger issue is now moot.

1    amenable to certification under Rule 54(b), and we lack jurisdiction over this

2    appeal.[11]

3         The parties do not dispute that the District Court's judgment was partial—

4    that is, that the data-quality issue survived its entry.[12]  We therefore have

5    jurisdiction over this appeal, if at all, only by operation of a proper Rule 54(b)

6    certification.  That Rule, "in conception, is an application of, not an exception to,

7    the statutory instruction that . . . appeals generally must abide final decision."

8    *Tolson v. United States*, 732 F.2d 998, 1000 (D.C. Cir. 1984).  Rule 54(b) authorizes

9    entry of a partial final judgment "as to one or more, but fewer than all, claims or

10   parties" only when three requirements have been satisfied:  (1) there are multiple

11   claims or parties; (2) at least one claim or the rights and liabilities of at least one

12   party has been finally determined; and (3) the court makes an "express[]

---

[11] As an initial matter, we briefly observe that our jurisdiction on appeal is sufficient at least to support this opinion, which is designed to clarify our jurisdiction.  *See Kuhali v. Reno*, 266 F.3d 93, 100 (2d Cir. 2001); *Oneida Indian Nation v. New York*, 732 F.2d 259, 261 (2d Cir. 1984).

[12] That is an appropriate concession.  Although the District Court directed the Clerk of Court to close the case, and proceedings below have ceased, neither the District Court's direction that the case be closed nor the case's subsequent closure transformed the judgment from interlocutory to final or from partial to complete.  This is because a district court's direction to the clerk to enter judgment dismissing the complaint "cannot cloak what is in practice a partial judgment."  *Polansky*, -- F.3d --, 2014 WL 3844149, at *4.  Indeed, "the label used to describe the judicial demand is not controlling, meaning we analyze the substance of the district court's decision, not its label or form."  *Id.* (internal quotation marks omitted).  Because the District Court expressly held that the data-quality theory survived, we cannot comfortably conclude that the District Court resolved all the issues before it.

13

1    determin[ation] that there is no just reason for delay."  Fed. R. Civ. P. 54(b); *see*

2    *Grand River Enters. Six Nations Ltd. v. Pryor*, 425 F.3d 158, 164-65 (2d Cir. 2005).

3         In this case, the third requirement for Rule 54(b) certification appears to be

4    satisfied, since the District Court expressly determined that there was "no just

5    reason for delay."[13]  *See Acumen*, 2012 WL 6053936, at *3.  The parties dispute,

6    however, whether the District Court's judgment satisfied the first two criteria for

7    certification.  That is to say, they disagree as to whether the data-quality issue

8    that survived the judgment amounts to a "claim" under Rule 54(b) that is

9    adequately distinct from the issues before us on appeal, or rather is part of a

10   single "claim" that the District Court disposed of only in part.  If Acumen's five

11   theories of breach constitute a single claim, then neither the first nor the second

12   of Rule 54(b)'s requirements has been satisfied here:  The action would involve

13   only one claim and one party (rather than "more than one claim for relief" or

14   "multiple parties"), and no single claim will have been finally determined.

15   Accordingly, only if the District Court adjudicated a claim distinct from the data-

---

[13] This determination that there is no just reason for delay is left to the sound discretion of the district court.  *See Info. Res., Inc. v. Dun & Bradstreet Corp.*, 294 F.3d 447, 451 (2d Cir. 2002).  Because we conclude that the first two requirements of Rule 54(b) have not been met, we need not consider whether the District Court's express determination on this score was made in error.

14

1    quality theory remaining below do we have jurisdiction over this appeal.  *See*

2    *Info. Res., Inc. v. Dun & Bradstreet Corp.*, 294 F.3d 447, 452 (2d Cir. 2002) ("[A]n

3    order dismissing only a portion of a claim" is a "non-final ruling" and "[s]uch a

4    ruling may not be certified.").

5         We therefore turn to the task of determining whether the different theories

6    of recovery presented by Acumen are distinct claims for the purposes of Rule

7    54(b),[14] a task as to which "our scope of review is broad."  *Hudson River Sloop*

8    *Clearwater, Inc. v. Dep't of Navy*, 891 F.2d 414, 417 (2d Cir. 1989).  As one

9    prominent treatise observes, however, "The line between deciding one of several

10   claims and deciding only part of a single claim is sometimes very obscure."  10

11   Wright, Miller & Kane, FEDERAL PRACTICE & PROCEDURE § 2657, at 68 (3d ed.

12   1998).

13        Over the years, our Court has articulated several standards to aid in

14   determining whether claims are separate for Rule 54(b) purposes.  We have

15   defined a claim as "the aggregate of operative facts which give rise to a right

16   enforceable in the courts."  *Gottesman v. Gen. Motors Corp.*, 401 F.2d 510, 512 (2d

17   Cir. 1968) (quoting *Original Ballet Russe v. Ballet Theatre*, 133 F.2d 187, 189 (2d Cir.

---

[14] We examine *de novo* whether the first two requirements of Rule 54(b)—whether multiple claims or multiple parties are present and whether at least one claim has been finally decided—have been satisfied. *See Info. Res,* 294 F.3d at 451.

1    1943)).  In other circumstances, we have explained that for Rule 54(b) purposes

2    whether multiple claims are present turns on whether the issues are "separate

3    and distinct." *Hudson River Sloop*, 891 F.2d at 418.  Only "[w]hen the certified

4    claims are based upon factual and legal questions that are distinct from those

5    questions remaining before the trial court" may the certified claims "be

6    considered separate claims under Rule 54(b)."  *Id.*  We examine the relationships

7    among a plaintiff's theories of recovery to determine whether they "lend

8    themselves to review as single units, or whether they are so interrelated and

9    dependent upon each other as to be one indivisible whole."  *Id.*

10    We have also suggested that the existence of multiple claims turns on

11    "whether the underlying factual bases for recovery state a number of different

12    claims which could have been separately enforced."  *Rieser v. Baltimore & Ohio*

13    *R.R. Co.*, 224 F.2d 198, 199 (2d Cir. 1955).  Commentators have interpreted this

14    test to mean that "when a claimant presents a number of legal theories, but will

15    be permitted to recover only on one of them," there exists only a single claim for

16    relief.  Wright, Miller & Kane, *supra*, § 2657.

17    Our past decisions provide guidance in applying these standards.  In

18    *Gottesman*, we held that allegations of malfeasance involving the purchase of

16

1    different products presented distinct claims.  401 F.2d at 512.  There, the plaintiff

2    shareholders of General Motors alleged (in a derivative action) that a defendant

3    had unlawfully dominated and controlled General Motors in the purchase of

4    various products ranging from automotive fabrics to Freon refrigerant.  Each

5    asserted cause of action concerned unlawful domination and control with respect

6    to a particular product.  *Id.* at 511.  Observing that "[e]ach product involves

7    separate markets and commercial considerations," and "[d]ifferent exhibits,

8    proof and witnesses will be necessary; different sets of operative facts will

9    determine the results," we concluded that the allegations of misconduct

10   regarding different products presented distinct claims.  *Id.* at 512.

11          In *Hudson River Sloop*, this Court similarly concluded that a suit aimed at

12   preventing the United States Navy from stationing ships at Staten Island

13   presented multiple claims.  891 F.2d at 418.  The plaintiffs there alleged that the

14   Navy had violated two federal statutes by, among other things, (1) failing

15   adequately to consider the environmental impact of the construction necessary to

16   station the ships, as well as the environmental impact of conventional weapons

17   on board the ships; and (2) failing adequately to disclose or consider the impact

18   of nuclear weapons that might have been on board the ships.  The district court

17

1    granted partial summary judgment on the claims involving nuclear weapons and

2    certified those claims under Rule 54(b), holding that any inquiry into the

3    presence of nuclear weapons on the ships (which the Navy refused to confirm)

4    was barred by the national security doctrine.  *Id.* at 416-17.  Our Court upheld the

5    Rule 54(b) certification, emphasizing that none of the claims remaining before the

6    district court involved the deployment of nuclear weapons or classified

7    information.  Thus, although "the claims on appeal stem[med] from the same

8    general objection," those claims involved "a unique factual scenario—

9    deployment of nuclear weapons—and raise[d] legal issues wholly distinct from

10   those that remain for trial."  *Id*. at 418.  Accordingly, the claims on appeal were

11   "separate and distinct" from those remaining before the district court.  *Id.*

12        By contrast, *Backus Plywood Corp. v. Commercial Decal, Inc.*, 317 F.2d 339 (2d

13   Cir. 1963), held that a plaintiff asserting three theories of recovery—all arising

14   from a defendant's alleged breach of a single oral agreement—did not present

15   multiple claims.  *Id.* at 341.  In *Backus*, the plaintiff presented three "causes of

16   action" against the president of a corporation: breach of an oral agreement;

17   breach of a promise by the president to secure the consent of his corporation's

18   stockholders and directors to the oral agreement; and misrepresentation by the

18

1    president of his ability to obtain that consent. The district court granted

2    summary judgment on the first two causes of action, and certified the judgment

3    under Rule 54(b). *Id.* at 340. Our Court held that the plaintiff's three "causes of

4    action" were not distinct claims. Instead, "[a]ll of the facts on which plaintiff

5    relies constitute[d] but a single transaction composed of a closely related series of

6    occurrences," *id.* at 341 (quoting *Schwartz*, 264 F.2d at 196), and "the complaint

7    presented merely three different theories of recovery against [the defendant] for

8    his failure to carry out the alleged agreement," *id.*

9        Similarly, in *Seaboard Machinery Corp. v. Seaboard Machinery Corp.*, 267 F.2d

10    178 (2d Cir. 1959), we declined to uphold a district court's Rule 54(b) certification

11    when all the certified "claims" derived from a single contract and involved the

12    same factual underpinnings. *Id.* at 179. We explained that "[a]ll the counts—and

13    the counterclaim as well—arise out of a single contract . . . . The plaintiffs claim

14    fraud and breach of warranty in their purchase, and each count sets forth some

15    aspect of this over-all claim." *Id.* Although the plaintiff set out a separate

16    quantum of damages for each count of the complaint, that was not enough to

17    transform the various theories of recovery into distinct claims. *Id.* at 180.

19

1       In this case, what remains before the District Court is whether General

2    Security breached the Agreements by using flawed data to determine whether it

3    owed Acumen any contingent commissions.  Resolution of that issue is tied up

4    with the merits issues currently on appeal, all of which ultimately bear on the

5    question whether General Security's calculations were correct.  For example,

6    whether General Security was entitled to use carry-forward deficits in its

7    calculation (an issue certified for appeal) dovetails with whether it used

8    fundamentally flawed data (the issue that remains below).  Similarly, the

9    soundness of General Security's method for calculating contingent

10    commissions—in which General Security included commutation losses—

11    depends in part upon the quality of the data used in calculating those

12    commissions.  Contrary to the District Court's view, Acumen's various theories

13    of breach are not discrete and segregable; rather, they are only parts of a closely

14    interwoven whole.

15       Nor do Acumen's "underlying factual bases for recovery state a number of

16    different claims which could have been separately enforced." *Rieser*, 224 F.2d at

17    199.  Acumen presented its five theories as a single count (for breach of contract)

18    and offered one measure of damages (contingent commissions due under the

20

1    Agreements).  Acumen alleges five ways in which General Security breached the

2    Agreements, but, combined, those failures are alleged to have caused only a

3    single harm: depriving Acumen of contingent commissions that might have been

4    due under the Addendum.  If Acumen wins on any of its theories, it is entitled to

5    the same quantum of damages, and it does not matter whether it succeeds on one

6    theory or five.

7         Here, Acumen's five theories of breach do not qualify as separate claims

8    under any of the tests enunciated by our Circuit.  Acumen's theories merely

9    allege various ways in which General Security breached the Agreements—

10   agreements that are themselves so united and mutually referential as not to

11   admit of separate "claims."  Far from being "separate and distinct," Acumen's

12   theories are rather "so interrelated and dependent upon each other as to be one

13   indivisible whole."  *Hudson River Sloop*, 891 F.2d at 418.  They arise out of "a

14   single transaction composed of a closely related series of occurrences," *Backus*,

15   317 F.2d at 341, and are not likely to be proved by different witnesses and

16   exhibits, *see Gottesman*, 401 F.2d at 512.  Moreover, accepting certification would

17   disserve the "purposes and policies" behind Rule 54(b), namely the desire to

21

1   "avoid redundant review of multiple appeals based on the same underlying facts

2   and similar issues of law." *Hudson River Sloop*, 891 F.2d at 418.[15]

3                                   **CONCLUSION**

4            For the foregoing reasons, we hold that the District Court's entry of the

5   Rule 54(b) order and judgment was in error, and, in the absence of a final

6   judgment on a claim or an otherwise reviewable order, we lack jurisdiction over

7   this appeal.  The appeal is DISMISSED.

---

[15] Rule 54(b) certifications of judgments as to fewer than all claims resemble, but are distinct from, review of interlocutory decisions made possible under 28 U.S.C. § 1292(b), and the "[t]wo procedural mechanisms . . . are sometimes confused." *Tolson*, 732 F.2d at 1000.  In contrast to Rule 54(b)'s focus on final orders as to one of several parties or whole claims, Section 1292(b) permits our Court to exercise appellate jurisdiction over certain appeals from *non-final* orders when the district court advises, and the court of appeals agrees, that the district court's decision involves "a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal . . . may materially advance the ultimate termination of the litigation."  28 U.S.C. § 1292(b).  Acumen did not move for certification under Section 1292(b), however, and the District Court did not certify its summary judgment order under that statute.

**United States Court of Appeals for the Second Circuit**
**Thurgood Marshall U.S. Courthouse**
**40 Foley Square**
**New York, NY 10007**

ROBERT A. KATZMANN                                          CATHERINE O'HAGAN WOLFE
CHIEF JUDGE                                                        CLERK OF COURT

Date: October 03, 2014                          DC Docket #: 09-cv-1796
Docket #: 12-5081cv                             DC Court: SDNY (NEW YORK CITY)
Short Title: Acumen Re Management Corporati v.   DC Judge: Daniels
General Security National Insu                  DC Judge: Maas

**NOTICE OF DECISION**

The court has issued a decision in the above-entitled case. It is available on the Court's website
http://www.ca2.uscourts.gov.

Judgment was entered on October 3, 2014; and a mandate will later issue in accordance with
FRAP 41.

If pursuant to FRAP Rule 39 (c) you are required to file an itemized and verified bill of costs you
must do so, with proof of service, within 14 days after entry of judgment. The form, with
instructions, is also available on Court's website.

Inquiries regarding this case may be directed to 212-857-8560.

**United States Court of Appeals for the Second Circuit**
**Thurgood Marshall U.S. Courthouse**
**40 Foley Square**
**New York, NY 10007**

ROBERT A. KATZMANN                              CATHERINE O'HAGAN WOLFE
CHIEF JUDGE                                     CLERK OF COURT

Date: October 03, 2014                 DC Docket #: 09-cv-1796
Docket #: 12-5081cv                    DC Court: SDNY (NEW YORK CITY)
Short Title: Acumen Re Management Corporati v.   DC Judge: Daniels
General Security National Insu         DC Judge: Maas

### BILL OF COSTS INSTRUCTIONS

The requirements for filing a bill of costs are set forth in FRAP 39. A form for filing a bill of costs is on the Court's website.

The bill of costs must:
*   be filed within 14 days after the entry of judgment;
*   be verified;
*   be served on all adversaries;
*   not include charges for postage, delivery, service, overtime and the filers edits;
*   identify the number of copies which comprise the printer's unit;
*   include the printer's bills, which must state the minimum charge per printer's unit for a page, a cover, foot lines by the line, and an index and table of cases by the page;
*   state only the number of necessary copies inserted in enclosed form;
*   state actual costs at rates not higher than those generally charged for printing services in New York, New York; excessive charges are subject to reduction;
*   be filed via CM/ECF or if counsel is exempted with the original and two copies.

**United States Court of Appeals for the Second Circuit**
**Thurgood Marshall U.S. Courthouse**
**40 Foley Square**
**New York, NY 10007**

**ROBERT A. KATZMANN**                                    **CATHERINE O'HAGAN WOLFE**
**CHIEF JUDGE**                                                    **CLERK OF COURT**

Date: October 03, 2014                           DC Docket #: 09-cv-1796
Docket #: 12-5081cv                              DC Court: SDNY (NEW YORK CITY)
Short Title: Acumen Re Management Corporati v.   DC Judge: Daniels
General Security National Insu                   DC Judge: Maas

### VERIFIED ITEMIZED BILL OF COSTS

Counsel for

_____

respectfully submits, pursuant to FRAP 39 (c) the within bill of costs and requests the Clerk to
prepare an itemized statement of costs taxed against the

_____

and in favor of

_____

for insertion in the mandate.

Docketing Fee            _____

Costs of printing appendix (necessary copies _____ ) _____

Costs of printing brief (necessary copies _____ _____) _____

Costs of printing reply brief (necessary copies _____ ) _____

**(VERIFICATION HERE)**

                                                        _____
                                                        Signature