**MILBERG LLP**
Matthew Gluck
Matthew A. Kupillas
Jennifer L. Young
Joshua E. Keller
One Pennsylvania Plaza
New York, NY 10119
Tel: (212) 594-5300
Fax: (212) 868-1229

*Attorneys for Mitchell Ross, individually, in his capacity as
personal representative of the estate of Leon Ross and in his
capacity as personal representative of the estate of Miriam Ross*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (SMB) |
| Plaintiff-Applicant, | SIPA LIQUIDATION |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | Adv. Pro. No. 10-04723 (SMB) |
| Plaintiff, | |
| v. | |
| MITCHELL ROSS, in his capacity as personal representative and primary beneficiary of the estate of Leon Ross and in his capacity as personal representative and primary beneficiary of the estate of Miriam Ross, | |

Defendant.

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT MITCHELL ROSS'
MOTION TO DISMISS THE AMENDED COMPLAINT**

# <u>TABLE OF CONTENTS</u>

**Page**

I.    PRELIMI NARY STATEMENT ...................................................................................... 1

II.    FACTS ........................................................................................................................... 2

    A.    Madoff's Fraud and Decedents' Losses................................................................ 2

    B.    Procedural Posture ............................................................................................... 4

III.    ARGUMENT.................................................................................................................. 6

    A.    Under Section 548(c), Defendant May Retain the Transfers From BLMIS
        Because They Were Received "For Value" and in "Good Faith" ......................... 7

        1.    Decedents Held Rescission and Damages Claims Against BLMIS ........... 9

        2.    The Antecedent Debt Constitutes "Value," and the Transfers Cannot
            Be Avoided ............................................................................................. 12

    B.    The Trustee's Subsequent Transfer Claim Should Be Dismissed ....................... 14

    C.    Joinder in the Other Motions to Dismiss Filed in Similar Cases......................... 17

IV.    CONCLUSION.............................................................................................................. 17

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Am. Gen. Ins. Co. v. Equitable Gen. Co.*,
    493 F. Supp. 721 (E.D. Va. 1980) ......................................................................................11

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)............................................................................................................6

*Balaber-Strauss v. Lawrence (In re Churchill Mortg. Inv. Corp.)*,
    264 B.R. 303 (S.D.N.Y. 2001)......................................................................................7, 12

*Balaber-Strauss v. Sixty-Five Brokers (In re Churchill Mortg. Inv. Corp.)*,
    256 B.R. 664 (Bankr. S.D.N.Y. 2000)..............................................................................3

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)............................................................................................................6

*BFP v. Resolution Trust Corp.*,
    511 U.S. 531 (1994)............................................................................................................9

*Big Apple Car, Inc. v. City of New York*,
    204 A.D.2d 109 (1st Dep't 1994) ....................................................................................11

*Boguslavsky v. Kaplan*,
    159 F.3d 715 (2d Cir. N.Y. 1998)....................................................................................11

*Breeden v. Thomas (In re Bennett Funding Group, Inc.)*,
    No. 98-40892, 1999 Bankr. LEXIS 1843 (Bankr. N.D.N.Y. Apr. 29, 1999) ............8, 9, 12, 14

*Brown v. Brandenburg (In re McGee)*,
    No. 99-5037, 2000 Bankr. LEXIS 1865 (Bankr. E.D. Ky. Nov. 22, 2000)............................13

*Butner v. United States*,
    440 U.S. 48 (1979)............................................................................................................13

*Daly v. Deptula (In re Carrozzella & Richardson)*,
    286 B.R. 480 (D. Conn. 2002) .........................................................................................14

*Daly v. Fusco (In re All-Type Printing, Inc.)*,
    274 B.R. 316 (Bankr. D. Conn. 2002) .............................................................................13

*DeLong Corp. v. Morrison-Knudsen Co., Inc.*,
    20 A.D.2d 104 (1st Dep't 1963), *aff'd*, 14 N.Y.2d 346 (1964) ...............................12

*Donell v. Kowell*,
    533 F.3d 762 (9th Cir. 2008) ...............................................................13

*Ferris, Baker Watts, Inc. v. Stephenson (In re MJK Clearing, Inc.)*,
    371 F.3d 397 (8th Cir. 2004) ...............................................................9

*Gowan v. Amaranth LLC (In re Dreier LLP)*,
    452 B.R. 451 (Bankr. S.D.N.Y. 2011)...............................................16

*Grippo v. Perazzo*,
    357 F.3d 1218 (11th Cir. 2004) ...........................................................10

*In re Hannover Corp.*,
    310 F.3d 796 (5th Cir. 2002) ...............................................................8

*In re Lucar Enter., Inc.*,
    49 B.R. 717 (Bankr. S.D. Fla. 1985)....................................................14

*Mazzeo v. United States (In re Mazzeo)*,
    131 F.3d 295 (2d Cir. 1997)..................................................................8

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*,
    547 U.S. 71 (2006).................................................................................9

*Official Committee v. Hancock Park Capital II, L.P. (In re Fitness Holdings)*,
    714 F.3d 1141 (9th Cir. 2013) ........................................................12, 13

*Pani v. Empire Blue Cross Blue Shield*,
    152 F.3d 67 (2d Cir. 1998)................................................................7, 8

*Picard v. Flinn Invs., Inc.*,
    463 B.R. 280 (S.D.N.Y. 2011)..............................................................4

*Picard v. Madoff (In re Bernard L. Madoff Inv. Sec. LLC)*,
    458 B.R. 87 (Bankr. S.D.N.Y. 2011)...............................................6, 15

*Picard v. Merkin (In re Bernard L. Madoff Inv. Sec. LLC)*,
    440 B.R. 243 (Bankr. S.D.N.Y. 2010)...................................................3

*Picard v. Merkin (In re Bernard L. Madoff Inv. Sec. LLC)*,
    Adv. Pro. No. 09-01182, 2014 Bank. LEXIS 3425 (Bankr. S.D.N.Y. Aug. 12, 2014)...........16

*Rolf v. Blyth, Eastman Dillon & Co., Inc.*,
    637 F.2d 77 (2d Cir. 1980)....................................................................10

*Scalp & Blade v. Advest, Inc.*,
    765 N.Y.S.2d 92 (4th Dep't 2003)........................................................11

*Schnorr v. Schubert*,
    No. 05-0303, 2005 WL 2019878 (W.D. Okla. Aug. 18, 2005) ............................................10

*SEC v. Zandford*, 535 U.S. 813 (2002) ...................................................................................10

*Sharp Int'l Corp. v. State St. Bank & Trust Co. (In re Sharp Int'l Corp.)*,
    403 F.3d 43 (2d Cir. 2005)...................................................................................................12

*SIPC v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*,
    No. 12-0115 (S.D.N.Y. entered May 16, 2012) .....................................................................2

*SIPC v. Bernard L. Madoff Inv. Sec. LLC (Picard v. Greiff)*,
    476 B.R. 715 (S.D.N.Y. 2012), *appeal pending*, *In re Madoff Sec.*, No. 12-2557
    (2d Cir.)............................................................................................................... *passim*

*SIPC v. Bernard L. Madoff Inv. Sec. LLP (In re Madoff Sec.)*,
    499 B.R. 416 (S.D.N.Y. 2013)................................................................................................7

*Stevens v. Abbot, Proctor & Paine*,
    288 F. Supp. 836 (E.D. Va. 1968) .........................................................................................10

*Travelers Cas. & Sur. Co. of Am. v. Pacific Gas & Elec. Co*,
    549 U.S. 443 (2007)...............................................................................................................13

*In re UBS Auction Rate Sec. Litig.*,
    No. 08-2967, 2009 U.S. Dist. LEXIS 26385 (S.D.N.Y. Mar. 30, 2009) ................................10

*USPS v. Phelps Dodge Ref. Corp.*,
    950 F. Supp. 504 (E.D.N.Y. 1996) ........................................................................................11

*Zaresky v. E.F. Hutton & Co.*,
    509 F. Supp. 68 (S.D.N.Y. 1981) ...........................................................................................10

### STATUTES

11 U.S.C. § 101 ..........................................................................................................................8

11 U.S.C. § 544(b) .....................................................................................................................4

11 U.S.C. § 546(e) ........................................................................................................... *passim*

11 U.S.C. § 548(a)(1)........................................................................................................ *passim*

11 U.S.C. § 548(c) ........................................................................................................... *passim*

11 U.S.C. § 548(d)(2)(A)........................................................................................................8, 13

11 U.S.C. § 550(a) ....................................................................................................................14

15 U.S.C. § 78bb(a)(2)..................................................................................................9

15 U.S.C. § 78bbb........................................................................................................9

15 U.S.C. § 78cc(b).....................................................................................................11

15 U.S.C. § 78fff(b).......................................................................................................7

28 U.S.C. § 158(d).........................................................................................................4

CPLR § 5001(a)...........................................................................................................11

CPLR § 5004................................................................................................................11

**RULES**

Fed. R. Bankr. P. 7009.................................................................................................6

Fed. R. Bankr. P. 7012.................................................................................................1

Fed. R. Civ. P. 9(b)......................................................................................................6

Fed. R. Civ. P. 12(b)(6)................................................................................................1

**OTHER AUTHORITIES**

16 N.Y. Jur. 2d § 2.....................................................................................................12

I.      **PRELIMINARY STATEMENT**

Defendant Mitchell Ross, individually, in his capacity as personal representative of the estate of Leon Ross, and in his capacity as personal representative of the estate of Miriam Ross ("Defendant"), submits this memorandum of law in support of his Motion to Dismiss the Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (made applicable by Rule 7012 of the Federal Rules of Bankruptcy Procedure).  This lawsuit is one of more than approximately 1,000 actions commenced in late 2010 by Irving H. Picard, as Trustee for the liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act ("SIPA").  In this case, the Trustee seeks to recover certain amounts that Defendant's late parents Miriam Ross and Leon Ross ("Decedents"), who were customers of BLMIS and innocent victims of the fraud, withdrew from their BLMIS accounts. The Trustee also asserts claims against Defendant, in his individual capacity, as a purported subsequent transferee of withdrawals from his parents' BLMIS accounts.

The Trustee's Amended Complaint ("Complaint") [1] asserts avoidance claims under various provisions of the Bankruptcy Code and New York's Debtor & Creditor Law.  However, as a result of proceedings in the District Court, the Trustee's only remaining avoidance claims against Defendant are those under Bankruptcy Code Section 548(a)(1)(a) for avoidance of actual fraudulent transfers during the federal two-year "reach back" period.  *See SIPC v. Bernard L. Madoff Inv. Sec. LLC (Picard v. Greiff)*, 476 B.R. 715, 722 (S.D.N.Y. 2012) ("The Court concludes . . . that § 546(e) bars the Trustee from pursuing the claims here made under § 548(a)(1)(B) and § 544."), *appeal pending, In re Madoff Sec.*, No. 12-2557 (2d Cir.).  The District Court dismissed the Trustee's constructive fraudulent transfer claims asserted under

---

[1] A copy of the Complaint is attached hereto as Exhibit 1.  All citations herein to "¶ ___" refer to the Complaint.

Section 548(a)(1)(B) and state law avoidance claims, which sought to avoid transfers made during a six-year "reach back" period. *Id.*; *see also* Consent Order Granting Rule 54(b) Certification and Final Judgment ("Final Judgment"), *SIPC v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*, No. 12-0115 (S.D.N.Y. entered May 16, 2012) (ECF No.109). Defendant now moves to dismiss the Trustee's remaining claims for the following reasons.

First, Section 548(c) of the Bankruptcy Code provides a defense against avoidance of an alleged fraudulent transfer to the extent it was received "for value" and in "good faith." Decedents held claims against BLMIS for, among other things, violation of the federal securities laws, fraud, and breach of fiduciary duty, entitling Decedents to a rescission remedy or damages. BLMIS's payments to Decedents satisfied those antecedent debts, such that the amounts were received "for value". Decedents' good faith is established on the face of the Complaint.

Second, the Trustee's subsequent transfer claims against Defendant must be dismissed as insufficiently pled because the Complaint fails to specify any subsequent transfers to be avoided and recovered.

## II.   FACTS

### A.   Madoff's Fraud and Decedents' Losses

The Complaint alleges that Decedents were former customers of BLMIS. ¶ 28. BLMIS was a securities broker-dealer registered with the Securities and Exchange Commission ("SEC") and regulated under the Securities Exchange Act of 1934, and it was a member of the Securities Investor Protection Corporation ("SIPC"). ¶ 24. BLMIS operated an investment advisory operation, as well as other lines of business.[2] *Id.*

---

[2] Although the Trustee alleges that BLMIS operated as a Ponzi scheme, ¶ 21, the Complaint alleges that only the investment advisory operation was a fraud. ¶ 21-27. Moreover, the Trustee previously confirmed that BLMIS's other business lines were "largely involved in legitimate
(footnote continued)

2

The Complaint alleges that Decedent Leon Ross' BLMIS account at issue here (1EM168), and Decedent Miriam Ross' BLMIS account at issue here (1EM170), were opened in 1993.  *See* Exhibits C and D to Complaint.  Thereafter, Defendants received monthly BLMIS account statements and trade confirmations reflecting purported trades in listed securities.  ¶ 21. Although Decedents were unaware that BLMIS was a fraud, money was periodically withdrawn from Decedents' BLMIS accounts.  *See* Exhibits C and D to Complaint.

In December 2008, Madoff's fraud was exposed, and it was revealed that the brokerage account statements and trade confirmations that BLMIS sent its customers were fraudulent.  ¶¶ 8, 21.  Instead of investing customer deposits, BLMIS used this money to "prop up" its "legitimate" business lines and pay amounts owed to other customers.  ¶ 21.  The Trustee acknowledges that Decedents were innocent victims of BLMIS's fraud.  ¶¶ 16-27 (describing Madoff's "intentional misrepresentations" and efforts to conceal his fraud).[3]

BLMIS's fraud resulted in significant losses for the accounts at issue here.  Nonetheless, the Trustee seeks to recover from Defendant $731,000 in alleged fraudulent transfers during the two-year reach back period.  ¶ 32.

---

trading with institutional counterparties."  Decl. of Joseph Looby ¶ 28, *SIPC v. Bernard L. Madoff Inv. Sec. LLC*., Adv. Pro. No. 08-01789 (Bankr. S.D.N.Y. July 9, 2009) (ECF No. 451). In particular, the Trustee's forensic accountant acknowledged that "neither of these business units would have been viable without the fraudulent IA Business, the proceeds of which were used to sustain those business operations from at least 2007 forward."  *Id.* ¶ 27.  At this stage in the case, there has been no discovery regarding whether and to what extent BLMIS was operating as a Ponzi scheme or when the fraudulent activities began.

[3] *Balaber-Strauss v. Sixty-Five Brokers (In re Churchill Mortg. Inv. Corp.)*, 256 B.R. 664, 673 (Bankr. S.D.N.Y. 2000) ("It is important here to note what the Trustee does not allege. There is no allegation in the complaints and no claim by the Trustee that the Brokers had any knowledge of the Ponzi scheme."); *Compare Picard v. Merkin (In re Bernard L. Madoff Inv. Sec. LLC)*, 440 B.R. 243, 256 (Bankr. S.D.N.Y. 2010) (noting that complaint was "replete" with allegations that transfers were received in bad faith with knowledge of the alleged fraud).

### B.    Procedural Posture

On December 11, 2008, BLMIS was placed into liquidation pursuant to SIPA.  ¶ 8.  The Trustee was thereafter appointed to administer the liquidation of BLMIS under SIPA.  ¶ 10.  The Trustee commenced two separate actions against Decedents in the Bankruptcy Court:  *Picard v. Leon Ross* (Adv. Pro. No. 10-04723) and *Picard v. Miriam Ross* (Adv. Pro. No. 10-05020).  The two actions filed against Decedents were among hundreds of similar actions against innocent transferee defendants, to recover certain alleged fictitious profits BLMIS paid, asserting claims for two-year constructive and actual fraudulent transfers under Section 548(a)(1)(A)-(B) of the Bankruptcy Code and six-year actual and constructive fraudulent conveyances under New York's Debtor & Creditor Law, made applicable under Section 544(b) of the Bankruptcy Code.

On June 28, 2011, Defendants filed Motions for Mandatory Withdrawal of the Reference pursuant to 28 U.S.C. §158(d), urging that certain arguments to be raised on a motion to dismiss implicated significant issues of federal non-bankruptcy law.  On November 28, 2011, the District Court withdrew the reference on several issues.  *See Picard v. Flinn Invs., Inc.*, 463 B.R. 280, 288 (S.D.N.Y. 2011) (Rakoff, J.).  Thereafter, Defendants filed Motions to Dismiss in the District Court, raising arguments within the scope of the reference withdrawal, including arguments that Section 546(e) barred certain of the Trustee's claims and that Section 548(c) was a defense to avoidance because BLMIS's account statements, which constituted enforceable securities entitlements under Article 8 of the Uniform Commercial Code, created an antecedent debt BLMIS's satisfaction of which could not be avoided.

The motion to dismiss proceeded before the District Court, which ultimately ruled that Section 546(e) limits the Trustee's claims to the avoidance of actual fraudulent transfers during the two-year reach back period under Section 548(a)(1)(A).  *SIPC v. Bernard L. Madoff Inv. Sec. LLP (Picard v. Greiff)*, 476 B.R. 715, 722 (S.D.N.Y. 2012), *appeal pending*, *In re Madoff Sec.*,

4

No. 12-2557-L (2d Cir.).   Accordingly, the Trustee's constructive fraudulent transfer claims under Section 548(a)(1)(B) and state law avoidance claims were dismissed.  *Id.*; *see also* Final Judgment, No. 12-0115 (S.D.N.Y. entered May 16, 2012) (ECF No.109).   However, the District Court rejected the argument that BLMIS' account statements created an antecedent debt the satisfaction of which could not be avoided under Section 548(c).[4]  *Greiff*, 476 B.R. at 723-28.   The District Court stated that this ruling applied "*very narrowly*, reaching only this unusual kind of 'creditor' whose claims to profits depend upon enforcing fraudulent representations."  *Id.* at 727 (emphasis added).   The District Court left open whether Defendant could establish a Section 548(c) defense based on other theories.   *Id.* at 727 n.10 ("The defendants might well establish, for example, that under a 'constant dollar' approach, Madoff Securities owed them a reasonable return of interest on their investment.).

Decedent Miriam Ross died in May 2011.   On October 15, 2011, the Trustee amended the initial complaint against Decedent Miriam Ross to substitute Leon Ross, in his capacity as the personal representative of the estate of Miriam Ross, in place of Miriam Ross.   Decedent Leon Ross died in June 2012.   On August 21, 2014, the parties stipulated to the consolidation of the two separate actions against Decedents into the present action, and stipulated to the filing of the Complaint which (a) reflects the consolidation of the two actions filed against Decedents, (b) substitutes Mitchell Ross, in his capacity as the personal representative of the estate of Miriam Ross and in his capacity as the personal representative of the estate of Leon Ross, in place of Leon Ross, and (c) asserts subsequent transfer claims against Defendant in his individual capacity.   Dkt. No. 31.

---

[4] If this ruling is appealed and reversed, it will dispose of the Trustee's claims in their entirety.

As a result of the District Court's ruling concerning Section 546(e), the only claims against Defendant currently remaining in this action are the Trustee's actual fraudulent conveyance claims asserted pursuant to Section 548(a)(1)(A), and the Trustee's subsequent transfer claim against Defendant in his individual capacity. *Id*. at 722 ("The Court concludes . . . that § 546(e) bars the Trustee from pursuing the claims here made under § 548(a)(1)(B) and § 544."). Defendant now seeks dismissal of those claims for the reasons described herein.

## III.    ARGUMENT

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level.").

While a court must accept as true all of the factual allegations in the complaint, this "tenet . . . is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. Thus, a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id*. (quoting *Twombly*, 550 U.S. at 555).

Rule 9(b) (made applicable through Fed. R. Bankr. P. 7009) applies to claims for actual fraudulent transfer. *Picard v. Madoff (In re Bernard L. Madoff Inv. Sec. LLC)*, 458 B.R. 87, 106 (Bankr. S.D.N.Y. 2011). To satisfy the Rule 9(b) pleading standard, a bankruptcy trustee must plead facts sufficient "to provide detailed notice of fraud claims to defending parties." *Id*. "Such is not the case here where opacity, rather than particularity, best describes the allegations." *Id*.

Defenses that appear on the face of the complaint are properly before the court on a motion to dismiss. *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74 (2d Cir. 1998) ("An affirmative defense may be raised by a pre-answer motion to dismiss under Rule 12(b)(6), without resort to summary judgment procedure, if the defense appears on the face of the Complaint."); *Balaber-Strauss v. Lawrence (In re Churchill Mortg. Inv. Corp.)*, 264 B.R. 303, 306 (S.D.N.Y. 2001) (affirming bankruptcy court's dismissal on the pleadings based on application of Section 548(c) in Ponzi scheme case).

### A.    Under Section 548(c), Defendant May Retain the Transfers From BLMIS Because They Were Received "For Value" and in "Good Faith"[5]

As noted above, the Trustee's avoidance powers are delineated by SIPA, which incorporates the Bankruptcy Code's avoidance provisions.    15 U.S.C. § 78fff(b).    The Bankruptcy Code in turn includes a "value" defense to avoidance, providing that "a transferee . . . that takes for value and in good faith . . . may retain any interest transferred . . . to the extent that such transferee . . . gave value to the debtor in exchange for such transfer . . . ." 11 U.S.C. § 548(c); *see also Greiff*, 476 B.R. at 723 ("[T]he defendants can prevail on their motion to dismiss these claims if they prove that, on the face of the complaint[s], they can invoke the affirmative

---

[5] On October 15, 2013, District Judge Rakoff ruled on these issues in connection with motions to dismiss involving 299 actions that named hundreds of other similarly situated innocent transferee defendants.  Specifically, Judge Rakoff ruled on "whether and how th[e] 'value' limitation [under 11 U.S.C. § 548(c)] applies in the context of [the Trustee's] avoidance and recovery actions." *SIPC v. Bernard L. Madoff Inv. Sec. LLP (In re Madoff Sec.)*, 499 B.R. 416, 418 (S.D.N.Y. 2013).  Defendant was not a party to those proceedings.  Judge Rakoff's October 15th Order specifically rejected the notion that state and federal claims for rescission or damages that BLMIS customers may have had against BLMIS constitutes "value" under 548(c) "as against the Madoff Securities customer property estate under SIPA." *See id*. at 422, 430.  To the extent this ruling binds Defendant here, Defendant is asserting the arguments herein to preserve any rights to participate in any challenge to the rulings from Judge Rakoff's October 15, 2013 Order.

defense provided by § 548(c)."). [6]    The Bankruptcy Code defines "value" to include the

"satisfaction . . . of a present or antecedent debt of the debtor." 11 U.S.C. § 548(d)(2)(A).  Value

is determined at the time of the transfer.  *In re Hannover Corp.*, 310 F.3d 796, 802 (5th Cir.

2002) ("[T]he fact that an option has become worthless in no way proves that it was worthless at

an earlier date.  [C]onsistent with economic reality, this and other circuits unequivocally hold

that for purposes of § 548 the value of an investment, even a risky one, . . . is to be determined at

the time of purchase."); *Breeden v. Thomas (In re Bennett Funding Group, Inc.)*, No. 98-40892,

1999 Bankr. LEXIS 1843, at *33 (Bankr. N.D.N.Y. Apr. 29, 1999) ("[V]alue must be

determined as of the date of the transfer, and not in light of subsequent events.").

Although antecedent debt is not defined, the term "debt" is broadly defined as "liability

on a claim," 11 U.S.C. § 101(12), and a "claim" includes a "right to payment" whether or not

that right has been liquidated or reduced to a judgment.  *See* 11 U.S.C. §§ 101(5)(A), (12).

"[T]he terms 'debt' and 'claim' are coextensive: a creditor has a 'claim' against the debtor; the

debtor owes a 'debt' to the creditor."  *Mazzeo v. United States (In re Mazzeo)*, 131 F.3d 295, 302

(2d Cir. 1997).  "[T]he term 'debt' is sufficiently broad to cover any possible obligation to make

payment."  *Id.*

---

[6] No extrinsic evidence is required to show that Defendant meets the "good faith" requirement of
Section 548(c), because that defense appears of the face of the Complaint. *Pani*, 152 F.3d at 74.
The Trustee does not allege that Decedents acted in bad faith in receiving payments from BLMIS,
or knew or recklessly disregarded the existence of the Madoff Ponzi scheme.  To the contrary,
the Complaint's allegations demonstrate that BLMIS went to extraordinary lengths to hide the
truth from its customers, and that Decedents were innocent victims of the fraud.   ¶¶ 25-39
(describing Madoff's "intentional misrepresentations" and efforts to conceal his fraud). Although
the Trustee previously argued that Madoff's fraud should be imputed to Defendant, the District
Court rejected this argument.  *Greiff*, 476 B.R. at 724 n.9 ("[T]he Trustee cannot impute Madoff
Securities' bad faith to them.").

1.    **Decedents Held Rescission and Damages Claims Against BLMIS**

Under various substantive non-bankruptcy laws, at the time they withdrew the amounts at issue in this lawsuit, Decedents held claims against BLMIS for rescission or damages arising from BLMIS' conduct.  Those rights arose at the time of the fraud.  *See BFP v. Resolution Trust Corp.*, 511 U.S. 531, 544-45 (1994) ("[T]he Bankruptcy Code will be construed to adopt, rather than to displace, pre-existing state law."); *Breeden*, 1999 Bankr. LEXIS 1843, at *34 ("Because [the debtors] had not yet filed for bankruptcy on January 1, 1996, Defendant's rights against them would have been governed by state law, not the Bankruptcy Code, and the benefit which the Debtors obtained by the release of these rights must be valued accordingly.").

SIPA expressly incorporates the provisions of the Securities Exchange Act of 1934 (the "1934 Act"), of which SIPA is a part.  15 U.S.C. § 78bbb ("Except as otherwise provided in this Act, the provisions of the Securities Exchange Act of 1934 apply as if this Act constituted an amendment to, and was included as a section of, such Act.").  Section 28(a)(2) of the 1934 Act contains a "Rule of Construction" that expressly preserves state law rights and remedies.  *See* 15 U.S.C. § 78bb(a)(2) ("[T]he rights and remedies provided by this title shall be in addition to any and all other rights and remedies that may exist at law or in equity."); *see also Ferris, Baker Watts, Inc. v. Stephenson (In re MJK Clearing, Inc.)*, 371 F.3d 397, 401 (8th Cir. 2004) (noting in SIPA case that "[s]tate law governs the resolution of property rights within a bankruptcy proceeding").

The allegations in the Complaint establish that, at the time they made their withdrawals, Decedents held claims against BLMIS for violation of Section 10(b) of the 1934 Act and Rule 10b-5.  *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 85 n.10 (2006) ("[A] broker who accepts payment for securities that he never intends to deliver, or who sells customer

securities with the intent to misappropriate the proceeds, violates § 10(b) and Rule 10b-5.");

*SEC v. Zandford*, 535 U.S. 813, 819 (2002) (same); *see also Grippo v. Perazzo*, 357 F.3d 1218,

1220-24 (11th Cir. 2004) ("A plaintiff does not need to identify a specific security, or

demonstrate that his money was actually invested in securities" to be afforded the protections of

Section 10(b) and Rule 10b-5); *Schnorr v. Schubert*, No. 05-0303, 2005 WL 2019878, at *5

(W.D. Okla. Aug. 18, 2005) ("[U]nfulfilled promises to purchase securities qualify as actual

purchases" for purposes of Rule 10b-5.).

The remedies for Section 10(b) and Rule 10-b-5 violations may include rescission of the

transaction, and recovery of principal and interest. *See In re UBS Auction Rate Sec. Litig.*, No.

08-2967, 2009 U.S. Dist. LEXIS 26385, at *13 (S.D.N.Y. Mar. 30, 2009) (noting that in a

Section 10b-5 case "plaintiffs [must] choose between rescinding a transaction and being paid

restitution on the one hand and holding the defrauder to the bargain and recovering out-of-pocket

losses resulting from the fraudulent transaction on the other hand"); *see also Rolf v. Blyth,*

*Eastman Dillon & Co., Inc.,* 637 F.2d 77, 87 (2d Cir. 1980) ("In view of the high inflation rates

that beset this period [during the fraud], a damage award without prejudgment interest . . . would

not give [Plaintiff] full compensation for the losses he suffered at the hands of his fiduciary.").[7]

---

[7] Courts have also held that consequential damages for federal securities fraud may include taxes
paid by the injured party. *See, e.g., Zaresky v. E.F. Hutton & Co.*, 509 F. Supp. 68, 73 (S.D.N.Y.
1981) ("[T]he proper measure of damages . . . for churning is not the change in market value of a
portfolio but the amount of commissions, fees, interest and taxes paid to defendant because of
illegal activity. The restitution measure of damages is utilized in churning cases where it is
impossible to know what securities would have been in the account but for defendant's fraud.");
*Stevens v. Abbot, Proctor & Paine*, 288 F. Supp. 836, 850-51 (E.D. Va. 1968) (finding that a
percentage of capital gains taxes due to defendant's fraudulent conduct was recoverable as actual
damages). To the extent BLMIS's false reports of earnings caused Decedents to incur and pay
taxes on fictitious gains, Decedents' damages claims against BLMIS included the taxes BLMIS
caused Decedents to pay and constitute "value" under Section 548(c).

Complementing the Rule 10b-5 claims, Section 29(b) of the 1934 Act also entitled Decedents to void their investment contracts and obtain prejudgment interest. 15 U.S.C. § 78cc(b) (providing that "[e]very contract made in violation of any provision of this title . . . shall be void"); *see, e.g.*, *Boguslavsky v. Kaplan*, 159 F.3d 715, 722 (2d Cir. N.Y. 1998) ("Section 29(b) provides for the rescission of a contract if the contract violates any provision of the Act or its regulations."); *Am. Gen. Ins. Co. v. Equitable Gen. Co.*, 493 F. Supp. 721, 767-68 (E.D. Va. 1980) (holding that plaintiffs were entitled to rescission and prejudgment interest from the date of the initial fraudulent transfer under Section 29(b)).

Defrauded BLMIS customers also hold state law claims for common law fraud and breach of fiduciary duty, which allow for rescission and restitution or damages, including the right to interest. *See* CPLR § 5001(a) ("Interest shall be recovered upon a sum awarded . . . because of an act or omission depriving or otherwise interfering with title to, or possession or enjoyment of, property");[8] *USPS v. Phelps Dodge Ref. Corp.*, 950 F. Supp. 504, 518 (E.D.N.Y. 1996) (noting that an award of pre-judgment interest on a rescission claim ensures "that the plaintiff [will] be compensated for being deprived of the use of its money"); *Scalp & Blade v. Advest, Inc.*, 765 N.Y.S.2d 92, 102 (4th Dep't 2003) ("Plaintiff [brokerage customers] are not necessarily limited to recovering the value of their lost capital, and might well recover compensatory damages calculated in part on the basis of general market performance. . . . Indeed, plaintiffs have alleged deliberate and flagrant self-dealing and dishonesty on the part of defendant[] [brokers]."); *Big Apple Car, Inc. v. City of New York*, 204 A.D.2d 109, 110-11 (1st Dep't 1994) ("[A] defrauded party to a contract may elect to either disaffirm the contract by a prompt rescission or stand on the contract and thereafter maintain an action at law for damages

---

[8] The New York statutory interest rate is 9%. CPLR § 5004.

11

attributable to the fraud."); *DeLong Corp. v. Morrison-Knudsen Co., Inc.*, 20 A.D.2d 104, 107

(1st Dep't 1963) ("It has been the settled rule that interest must be allowed as a matter of right on

recoveries for intentional tort with respect to property and property rights."), *aff'd*, 14 N.Y.2d

346 (1964); *see also* 16 N.Y. Jur. 2d § 2 ("Where damages have been sustained, . . . they may be

recovered as an incident to an action in equity for a rescission.").

### 2.    The Antecedent Debt Constitutes "Value," and the Transfers Cannot Be Avoided

Payments that satisfy an antecedent debt are generally not avoidable.  *See, e.g.*, *Sharp*

*Int'l Corp. v. State St. Bank & Trust Co. (In re Sharp Int'l Corp.)*, 403 F.3d 43, 54 (2d Cir. 2005)

("[A] conveyance which satisfies an antecedent debt made while the debtor is insolvent is neither

fraudulent nor otherwise improper, even if its effect is to prefer one creditor over another.");

*Balaber-Strauss v. Lawrence  (In re Churchill Mortg. Inv. Corp.)*, 264 B.R. at 308 (holding that

Ponzi schemer's payments to brokers satisfied an antecedent debt thus precluding avoidance

under 548(a)(1)(A)-(B)); *Breeden*, 1999 Bankr. LEXIS 1843, at *25-26 (holding that debtor's

fraud liability "falls within the Code's broad definition of a 'debt,' and as such, the Debtors'

payments to Defendant -- which incidentally served to satisfy Defendant's unasserted,

undiscovered, and possibly unimagined tort rights -- operated as the satisfaction of an antecedent

debt, and hence as an exchange for value under Code § 548(c)").

Defendant is unaware of a Second Circuit case ruling on whether federal securities claims

existing from the time of a broker's fraudulent inducement may form the basis of valid

antecedent debts whose satisfaction constitutes value under Section 548(c). However, a recent

Ninth Circuit decision, *Official Committee v. Hancock Park Capital II, L.P. (In re Fitness*

*Holdings)*, 714 F.3d 1141 (9th Cir. 2013), makes clear that "antecedent debt" is determined for

purposes of "value" in Section 548 by reference to the applicable non-bankruptcy law that

establishes the transferee's entitlement. Noting that "[t]he Code ... broadly defines 'debt' as liability on virtually any type of 'right to payment'," and relying on the Supreme Court decisions in *Travelers* and *Butner*,[9] the Ninth Circuit held that where a transfer is alleged to have been made in repayment of an antecedent debt, "the court must determine whether the purported 'debt' constituted *a right to payment under state law*." *Id.* at 1147 (italics added). In this respect, *Fitness Holdings* confirms that "value" and "debt" for purposes of Section 548 are questions determined by state law, and that the term "state law" is viewed "expansively" to include "claims that have their source in federal law." *Id.* at 1146 n.6 (citations omitted).[10]

As Decedents held the foregoing claims against BLMIS, BLMIS' payments to Decedents satisfied those antecedent debts, thus constituting "value" pursuant to Section 548(c). *See Daly v. Fusco (In re All-Type Printing, Inc.)*, 274 B.R. 316, 324 (Bankr. D. Conn. 2002) ("[Debtor's ]payment [p]romise created a 'debt' owing to [creditor] -- *i.e.* the Retirement Debt. . . . Satisfaction of an antecedent debt is explicitly acknowledged . . . to be 'value' for purposes of fraudulent transfer analysis."); *Brown v. Brandenburg (In re McGee)*, No. 99-5037, 2000 Bankr. LEXIS 1865, at *27 (Bankr. E.D. Ky. Nov. 22, 2000) ("If a defrauded purchaser of a security

---

[9] *Travelers Cas. & Sur. Co. of Am. v. Pacific Gas & Elec. Co*, 549 U.S. 443 (2007), and *Butner v. United States*, 440 U.S. 48 (1979).

[10] Judge Rakoff's October 15, 2013 antecedent debt ruling does not even mention the *Fitness Holdings* decision. Moreover, Judge Rakoff relied on a prior Ninth Circuit decision for the conclusion that the only cognizable value that could be conferred upon an investor in a Ponzi case is the person's invested principal. *See Donell v. Kowell*, 533 F.3d 762 (9th Cir. 2008). But *Fitness Holdings* is significant as the most recent decision from the Ninth Circuit on the meaning of the statutory terms "debt" and "value" in Section 548, and thereby calls into question the viability of *Donell* as persuasive authority – even in the Ninth Circuit – for limiting the scope of "value" to the retention of a brokerage customer's principal in a Ponzi clawback case, notwithstanding clear substantive non-bankruptcy law rights to payment for more than principal under both state and federal law. *Fitness Holdings* recognizes that such rights to payment under substantive non-bankruptcy law are "antecedent debts" within the meaning of Section 548(d)(2)(A).

were required to forfeit to a common fund (the bankruptcy estate) all income received on the
security in order to share in the distribution of that fund pro rata with other defrauded purchasers
of the security, some of whom are not being sued for contribution to the fund because the amount
of income they received on the security is too small to warrant action against them, *the measure
of damages provisions of the [securities fraud] statute would be frustrated in an inequitable
manner*.") (emphasis added); *Breeden*, 1999 Bankr. LEXIS 1843, at *31-32 ("[If] the contract
was found to be unenforceable because of the Debtors' fraud, CPLR §§ 5001 and 5004 would
have entitled Defendant to damages . . . . *It thus follows that those payments that were in excess
of Defendant's original investment amount, but less than the equivalent of nine percent interest,
served to reduce the antecedent liability of the Debtors and thus constituted 'value'* by the plain
language of Code § 548(d)(1).") (emphasis added); *In re Lucar Enter., Inc.*, 49 B.R. 717, 718
(Bankr. S.D. Fla. 1985) (holding that debtor's payment to bank satisfied an antecedent debt,
which could not be avoided); *accord Daly v. Deptula (In re Carrozzella & Richardson)*, 286
B.R. 480, 491 (D. Conn. 2002) ("In exchange for the interest [the Ponzi scheme] paid to the
Defendants, the Debtor received a dollar-for-dollar forgiveness of a contractual debt.  [If] these
Defendants had not been paid the interest owed, they would have been creditors of the Debtor's
bankruptcy estate, asserting claims for unpaid interest.").

Accordingly, the Trustee's claims must be dismissed in their entirety.

### B.    The Trustee's Subsequent Transfer Claim Should Be Dismissed

As discussed above, the Trustee's avoidance claims must be dismissed.  Accordingly, the
Trustee's subsequent transfer claim against Defendant (in his individual capacity) must also be
dismissed.  *See* 11 U.S.C. § 550(a) (providing that the Trustee may only recover against a
subsequent transferee if the transfer is avoidable against the initial transferee).  In addition, the
Trustee's subsequent transfer claim must be dismissed because it is insufficiently pled.

This Court has already recognized in the context of the BLMIS proceeding that threadbare allegations of subsequent transferee liability are insufficient to state a claim. In *Picard v. Madoff (In re Bernard L. Madoff Inv. Sec. LLC)*, 458 B.R. 87 (Bankr. S.D.N.Y. 2011), the Court held that subsequent transfer claims lacking "even a modicum of specificity" must be dismissed. *Id.* at 120. In language equally applicable here, the Court held that:

> [w]hile the Complaint's failure to indicate specific amounts does not in and of itself warrant dismissal of the Subsequent Transfer claims, . . . its *failure to provide even a modicum of specificity with respect to the Subsequent Transfers so as to put the Defendants on notice as to which ones the Trustee seeks to recover* does so warrant.

*Id.* (internal citations omitted; emphasis added).

The Trustee's subsequent transfer allegations here are just as deficient as those that were dismissed in *Picard v. Madoff*. There, the Trustee's complaint "merely allege[d] that '[o]n information and belief, some or all of the transfers were subsequently transferred by one or more [of the Defendants] to another Family Defendant, either directly or indirectly' without providing any sort of estimate of the amount of the purported Subsequent Transfer, or when or how such Transfer occurred." *Id.* at 119. Here, the Trustee's subsequent transfer claim is similarly speculative and completely lacking in factual detail. *See* ¶ 2 ("Upon information and belief, Mitchell Ross . . . received subsequent transfers of the avoidable transfers in his individual capacity and as the primary beneficiary of the estates of Leon and Miriam Ross."), ¶ 79 ("Upon information and belief, the subsequent transfers were transferred by Decedents to Subsequent Transferee Defendant."). That is all. The Complaint does not identify *any* dates or amounts of *any* alleged subsequent transfers, and does not specify *which* of the purported initial transfers to Decedents were allegedly transferred to Defendant in his individual capacity.

These are conclusory, bald assertions that lack "any sort of estimate of the amount of the purported Subsequent Transfer, or when or how such Transfer occurred." *Picard v. Madoff*, 458

B.R. at 119-20.  Absent the necessary specific details, the Trustee's subsequent transfer claim is legally insufficient and must be dismissed.  *See Gowan v. Amaranth LLC (In re Dreier LLP)*, 452 B.R. 451, 464 (Bankr. S.D.N.Y. 2011) ("[T]he complaint [must] contain the 'necessary vital statistics -- the who, when, and how much' of the purported transfers to establish an entity as a subsequent transferee of the funds.").

As a result of the Trustee's deficient pleading, Defendant is unable to determine whether he is being sued for one dollar in subsequent transfers, for one thousand dollars, or for one *million* dollars.  Defendant has no idea if the Trustee is suing to recover subsequent transfers that took place in 2002 or in 2008.  Defendant has no way to defend against these deficient claims.

The Trustee's failure to plead the facts underlying his claims is highly prejudicial to Defendant.  As a result of the Trustee's failure to identify the specific initial transfers that were (purportedly) subsequently transferred to Defendant, Defendant is unable to determine whether the underlying initial transfers that were allegedly subsequently transferred to him are even actionable.  If the initial transfers took place more than 2 years prior to the liquidation date of BLMIS, those initial transfers are unavoidable under the "safe harbor" of Section 546(e), and there can be *no* liability for subsequent transferees.[11]  But the Complaint does not identify the initial transfers that Defendant allegedly received as subsequent transfers, so Defendant has no way of knowing if there are any currently actionable claims asserted against him, or whether the Trustee's deficient pleading has left him "stuck" in a case from which he should have already been dismissed.  This deficient claim should not be allowed to go forward.

---

[11] See *Picard v. Merkin*, Adv. Pro. No. 09-01182, 2014 Bankr. LEXIS 3425, at *72 ("[T]he Trustee obviously cannot recover subsequent transfers that occurred more than two years prior to the filing date because they could not have originated from avoidable transfers during the two-year reach back period.").

C.      **Joinder in the Other Motions to Dismiss Filed in Similar Cases**

To the extent that defendants to other actions brought by the Trustee are similarly situated to Defendant, Defendant joins in any motions to dismiss filed by those defendants, specifically those motions argued before the Court on September 17, 2014, to the extent that such motions include grounds for dismissal not addressed herein.

IV.    **CONCLUSION**

For the foregoing reasons, the Court should grant Defendant's motion to dismiss.

Dated:    October 24, 2014

Respectfully submitted,

<u>s / Matthew A. Kupillas</u>
Matthew Gluck
Matthew A. Kupillas
Jennifer L. Young
Joshua E. Keller
MILBERG LLP
One Pennsylvania Plaza
New York, NY 10119
Telephone: (212) 594-5300
Facsimile: (212) 868-1229

SEEGER WEISS LLP
Stephen A. Weiss
Parvin K. Aminolroaya
77 Water Street, 26th Floor
New York, NY 10005
Telephone: (212) 584-0700
Facsimile:  (212) 584-0799

*Attorneys for Mitchell Ross, individually, in
his capacity as personal representative of
the estate of Leon Ross and in his capacity
as personal representative of the estate of
Miriam Ross*

694094v1

17