# EXHIBIT "B"

**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, NY 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Nicholas J. Cremona

*Attorneys for Irving H. Picard, Trustee for the*
*Substantively Consolidated SIPA Liquidation of*
*Bernard L. Madoff Investment Securities LLC and*
*the Estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (SMB) |
| Plaintiff-Applicant, | SIPA LIQUIDATION |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | Adv. Pro. No. 10-04723 (SMB) |
| Plaintiff, | |
| v. | |
| MITCHELL ROSS, in his capacity as personal representative and primary beneficiary of the estate of Leon Ross and in his capacity as personal representative and primary beneficiary of the estate of Miriam Ross, | |
| Defendant. | |

## TRUSTEE'S FIRST AMENDED COMPLAINT

Plaintiff Irving H. Picard (the "Trustee"), as trustee for the liquidation of the business of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa, *et seq.* ("SIPA"),[1] and the substantively consolidated estate of Bernard L. Madoff ("Madoff," and with BLMIS, "Debtors"), by the Trustee's undersigned counsel, for his Amended Complaint ("Amended Complaint") states:

## NATURE OF PROCEEDING

1.    This adversary proceeding arises from the massive Ponzi scheme perpetrated by Madoff.  Over the course of the scheme, there were more than 8,000 client accounts at BLMIS.   In early December 2008, BLMIS generated client account statements for its approximately 4,900 open client accounts.  When added together, these statements purport that clients of BLMIS had approximately $65 billion invested with BLMIS.  In reality, BLMIS had assets on hand worth a small fraction of that amount.  On March 12, 2009, Madoff admitted to the fraudulent scheme and pled guilty to 11 felony counts, and was sentenced on June 29, 2009 to 150 years in prison.

2.    Decedents Leon Ross and Miriam Ross ("Decedents"), and their son Mitchell Ross, in his capacity as personal representative of the estates of Leon Ross and Miriam Ross (collectively, "Defendants"), received avoidable transfers from BLMIS.  Upon information and belief, Mitchell Ross ("Subsequent Transferee Defendant") also received subsequent transfers of the avoidable transfers in his individual capacity as the primary beneficiary of the estates of Leon Ross and Miriam Ross.

3.    Defendants were beneficiaries of this Ponzi scheme.  Since December 11, 2002, Defendants received the amount of $1,793,000 from BLMIS.  The Trustee's investigation has revealed that this entire amount represented fictitious profits from the Ponzi scheme, in that

Defendants withdrew more than Defendants invested in Defendants' BLMIS accounts. Accordingly, Defendants have received $1,793,000 of other people's money. This action is brought to avoid and recover the fictitious profits so that this customer property can be equitably distributed among all of the victims of BLMIS in accordance with SIPA, the Bankruptcy Code and applicable law.

## JURISDICTION AND VENUE

4.      This is an adversary proceeding commenced in this Court, in which the main underlying SIPA proceeding, No. 08-01789 (SMB) (the "SIPA Proceeding"), is pending. The SIPA Proceeding was originally brought in the United States District Court for the Southern District of New York as *Securities Exchange Commission v. Bernard L. Madoff Investment Securities LLC et al.*, No. 08 CV 10791 (the "District Court Proceeding") and has been referred to this Court. This Court has jurisdiction over this adversary proceeding under 28 U.S.C. § 1334(b) and (e)(1), and 15 U.S.C. § 78eee(b)(2)(A) and (b)(4).

5.      This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A), (B), (H) and (O). Pursuant to Local Bankruptcy Rule 7008-1, the Trustee consents to the entry of final orders or judgment by this Court if it is determined that consent of the parties is required for this Court to enter final orders or judgment consistent with Article III of the U.S. Constitution.

6.      Venue in this judicial district is proper under 28 U.S.C. § 1409.

7.      This adversary proceeding is brought under 15 U.S.C. §§ 78fff(b) and 78fff-2(c)(3), 11 U.S.C. §§ 105(a), 502(a), (b), and (d), 544(b), 548(a), 550(a) and 551, the New York Fraudulent Conveyance Act (N.Y. Debt & Cred. § 270 *et seq.* (McKinney 2001)), and other applicable law.

---

[1] Hereinafter, applicable sections of SIPA shall be cited as SIPA § ____, and omit reference to title 15, United States Code.

## BACKGROUND, THE TRUSTEE AND STANDING

8.      On December 11, 2008 (the "Filing Date"), Madoff was arrested by federal agents for criminal violations of federal securities laws, including securities fraud, investment adviser fraud, and mail and wire fraud.  Contemporaneously, the Securities and Exchange Commission ("SEC") commenced the District Court Proceeding.

9.      On December 15, 2008, under SIPA § 78eee(a)(4)(A), the SEC consented to combining its action with an application by the Securities Investor Protection Corporation ("SIPC").  Thereafter, under SIPA § 78eee(a)(4)(B), SIPC filed an application in the District Court alleging, among other things, that BLMIS could not meet its obligations to securities customers as they came due and its customers needed the protections afforded by SIPA.

10.     By orders dated December 23, 2008 and February 4, 2009, respectively, this Court approved the Trustee's bond and found that the Trustee was a disinterested person.

11.     On April 13, 2009, an involuntary bankruptcy petition was filed against Madoff, and on June 9, 2009, this Court substantively consolidated the chapter 7 estate of Madoff into the SIPA Proceeding.

12.     At a plea hearing on March 12, 2009, in the case captioned *United States v. Madoff*, Case No. 09-CR-213(DC), Madoff pleaded guilty to an 11-count criminal information filed against him by the United States Attorney for the Southern District of New York.  At the plea hearing, Madoff admitted he "operated a Ponzi scheme through the investment advisory side of [BLMIS]."

13.     At a plea hearing on August 11, 2009, in the case captioned *United States v. DiPascali*, Case No. 09-CR-764 (RJS), Frank DiPascali, a former BLMIS employee, pleaded guilty to a ten-count criminal information charging him with participating in and conspiring to perpetuate the Ponzi scheme.  DiPascali admitted that no purchases or sales of securities took

place in connection with BLMIS customer accounts and that the Ponzi scheme had been ongoing at BLMIS since at least the 1980s.

14.     At a plea hearing on November 21, 2011, in the case captioned *United States v. Kugel*, Case No. 10-CR-228 (LTS), David Kugel, a former BLMIS trader and manager, pleaded guilty to a six-count criminal information charging him with securities fraud, falsifying the records of BLMIS, conspiracy, and bank fraud.   Kugel admitted to helping create false, backdated trades in BLMIS customer accounts beginning in the early 1970s.

15.     On March 24, 2014, Daniel Bonventre, Annette Bongiorno, Jo Ann Crupi, George Perez, and Jerome O'Hara were convicted of fraud and other crimes in connection with their participation in the Ponzi scheme as employees of BLMIS's investment advisory business ("IA Business").

### THE PONZI SCHEME

16.     Madoff founded BLMIS in or about 1960 as a sole proprietorship, and on January 1, 2001, he formed it as a limited liability company under the laws of the State of New York. For most of its existence, BLMIS operated from its principal place of business at 885 Third Avenue, New York, New York.   Madoff, as founder, sole owner, chairman, and chief executive officer, operated BLMIS with several family members and other employees, including DiPascali and David Kugel, who pleaded guilty to helping Madoff carry out the fraudulent scheme.

17.     Beginning in the 1990s, Madoff outwardly ascribed the consistent investment success of BLMIS's IA Business to the "split-strike conversion" ("SSC") investment strategy. Madoff claimed his strategy would produce steady returns without the volatility in the stock market or other high return investment strategies. Madoff generally indicated that investors' funds would be invested in a basket of common stocks within the Standard & Poor's 100 Index ("S&P 100 Index"), which is a collection of the 100 largest publicly traded companies, as

determined by Standard & Poor's Index Committee. The basket of stocks was designed to correlate to the movement of the S&P 100 Index. The second part of the SSC strategy involved purporting to sell call options and buy put options on the S&P 100 Index; this is commonly referred to as a "collar." Madoff purported to purchase and sell option contracts to control the downside risk of price changes in the basket of stocks correlated to the performance of the S&P 100 Index. All options relating to the companies within the S&P 100 Index, including options based upon the S&P 100 Index itself, clear through the Options Clearing Corporation ("OCC"). The OCC has no records showing that BLMIS's IA Business cleared any trades in any exchange-listed options.

18.    BLMIS commingled all of the funds received from IA Business investors in a single BLMIS account maintained at JPMorgan Chase Bank.

19.    Because Madoff claimed that he would carefully time purchases and sales to maximize value, customer funds would intermittently be out of the market. During those times, Madoff claimed that the funds were invested in U.S. Treasury securities ("Treasury Bills") or mutual funds invested in Treasury Bills. There is no record of BLMIS clearing a single purchase or sale of securities in connection with the SSC strategy at the Depository Trust & Clearing Corporation, the clearing house for such transactions, or any other trading platform on which BLMIS could have traded securities. There are no other BLMIS records that demonstrate that BLMIS traded securities using the SSC strategy.

20.    At their plea hearings, Madoff and DiPascali admitted that BLMIS purchased none of the securities listed on the IA Business customers' fraudulent statements.

21.    Madoff operated the IA Business as a Ponzi scheme. The money received from IA Business customers was used primarily to make distributions to, or payments for, other customers. The falsified trades reflected in monthly account statements made it appear that the

IA Business accounts included substantial gains on customers' principal investments. The Ponzi scheme collapsed in December 2008, when the requests for redemptions overwhelmed the flow of new investments with BLMIS's IA Business.

22.     Since at least the 1970s, BLMIS fraudulently claimed to engage in securities trades for IA Business customers that did not occur. Basic market data reveals that those purported trades did not, and could not, have taken place as reported on BLMIS customer statements. For example, there are many instances where the total number of securities purportedly traded by BLMIS significantly exceeded the entire reported market volume for that particular security on that particular day. Even where BLMIS purportedly traded securities within normal market volumes, there are many instances where the prices of those trades were outside the daily market price range for that security. In many other examples, BLMIS account statements reported trades of a particular security when actual market reports show that particular security simply did not change hands in the market on that reported date.

23.     Since at least 1983, BLMIS financial reports filed with the SEC fraudulently omitted the existence of the billions of dollars of customer funds held by BLMIS.

24.     BLMIS did not register as an investment adviser with the SEC until August 2006. At that time, BLMIS filed with the SEC a Form ADV (Uniform Application for Investment Adviser Registration) representing, among other things, that BLMIS had 23 customer accounts and assets under management of $11.7 billion. Thereafter, BLMIS filed a Form ADV annually with the SEC, the latest of which was filed in January 2008. It represented that BLMIS had 23 customer accounts with assets under management of $17.1 billion. In fact, at that time BLMIS had over 4,900 active customer accounts with a purported value of approximately $68 billion under management.

25.     Contrary to standard practice in the investment advisory industry, BLMIS did not charge the IA Business customers a fee for investment advisory services.  Madoff knew others that solicited investors for BLMIS, or, directly or indirectly, funded customer accounts, charged hundreds of millions of dollars for investment advisory services attributed to BLMIS.  Instead of investment advisory fees, BLMIS purported to accept commissions for the purported trades, as reflected in the fraudulent IA Business customer statements.

26.     BLMIS's auditor was Friehling & Horowitz, CPA, P.C. ("Friehling & Horowitz"), a three-person accounting firm in Rockland County, New York.  Of the three employees at the firm, one employee was an administrative assistant and one was a semi-retired accountant living in Florida.  On or about November 3, 2009, David Friehling, the sole proprietor of Friehling & Horowitz, pleaded guilty to filing false audit reports for BLMIS and filing false tax returns for Madoff and others.

27.     At all relevant times, BLMIS was insolvent because (i) its assets were worth less than the value of its liabilities; (ii) it could not meet its obligations as they came due; and (iii) at the time of the transfers alleged herein, BLMIS was left with insufficient capital.

**DEFENDANT**

28.     Upon information and belief, Defendant Mitchell Ross maintains his residence in Pennsylvania. Mitchell Ross is the sole child of Decedents Leon Ross and Miriam Ross. Decedent Leon Ross maintained Account No. 1EM168 and Decedent Miriam Ross maintained Account No. 1EM170 at BLMIS.  Upon information and belief, Miriam Ross died on May 24, 2011, and Mitchell Ross was appointed the personal representative of her estate.  During the small estate administration of Miriam Ross' assets, all estate assets passed to Leon Ross. Subsequently, Leon Ross died on June 14, 2012, and all of his assets passed to their son,

Mitchell Ross. Upon information and belief, Mitchell Ross is the primary beneficiary of the estates of Leon and Miriam Ross.

## THE ACCOUNT AGREEMENTS

29.     At all times relevant hereto, Decedents were clients of the IA Business.  According to BLMIS' records, Decedent Leon Ross maintained an account (No. 1EM168) and Decedent Miriam Ross maintained an account (No. 1EM170) with BLMIS set forth on Exhibits A and B (the "Accounts").  Upon information and belief, for the Accounts, Decedents executed Customer Agreements,  Option Agreements, and/or a Trading Authorization Limited to Purchases and Sales of Securities and Options (collectively, the "Account Agreements"), and delivered such documents to BLMIS at BLMIS' headquarters at 885 Third Avenue, New York, New York.

30.     The Account Agreements were to be performed in New York, New York through securities trading activities that would take place in New York, New York.  The Account was held in New York, New York, and Decedents sent funds to BLMIS and/or to BLMIS' account at JPMorgan Chase & Co., Account #xxxxxxxxxxx1703 (the "BLMIS Bank Account") in New York, New York for application to the Account and the purported conducting of trading activities.  Between the date the Account was opened and the Filing Date, Decedents made deposits to BLMIS through checks and/or wire transfers into the BLMIS Bank Account and/or received inter-account transfers from other BLMIS accounts.

## THE TRANSFERS

31.     During the six years prior to the Filing Date, BLMIS made transfers (collectively, the "Transfers") to Decedents totaling at least $855,000 and $938,000 in fictitious profits from the Ponzi scheme for Accounts No. 1EM168 and No. 1EM170 respectively.  The Transfers received by Defendants constitute non-existent profits supposedly earned in the Account, but, in

reality, they were other people's money. The Transfers were made to or for the benefit of Defendants and are set forth in Columns 10 and 11 on Exhibits C and D annexed hereto.

32.     The Transfers that are avoidable and recoverable under sections 548(a), 550(a)(1) and 551 of the Bankruptcy Code and applicable provisions of SIPA, particularly SIPA section 78fff-2(c)(3) total at least $340,000 and $391,000 for Accounts No. 1EM168 and No. 1EM170 respectively and are referred to hereafter as the "Two Year Transfers." *See* Exhibits C and D, Column 10. The Transfers that are avoidable and recoverable under sections 544(b), 550(a)(1) and 551 of the Bankruptcy Code, applicable provisions of SIPA, particularly SIPA section 78fff-2(c)(3), and applicable provisions of N.Y. CPLR 203(g) (McKinney 2001) and DCL sections 273–279 (McKinney 2001) total at least $855,000 and $938,000 for Accounts No. 1EM168 and No. 1EM170 respectively and are referred to hereafter as the "Six Year Transfers." *See* Exhibits C and D, Column 11.

33.     The Trustee's investigation is ongoing and the Trustee reserves the right to (i) supplement the information regarding the Transfers and any additional transfers and (ii) seek avoidance and/or recovery of such additional transfers.

34.     To the extent that any of the avoidance and/or recovery counts may be inconsistent with each other, they are to be treated as being pled in the alternative.

## CUSTOMER CLAIMS

35.     On or about June 10, 2009, Decedents filed customer claims with the Trustee which the Trustee has designated as Claim #009488 and Claim #009489 for Accounts No. 1EM168 and No. 1EM170 respectively (the "Customer Claims").

36.     On or about May 12, 2010, the Trustee issued a Notice of Trustee's Determination of Claim to Decedents (the "Determinations") with respect to the Customer Claims. Copies of the Determinations are attached hereto as Exhibits E and F.

37.     Neither Miriam Ross nor Leon Ross, nor anyone on their behalf, filed an objection to the Determinations with the Court.

38.     On December 23, 2008, this Court entered an Order on Application for Entry of an Order Approving Form and Manner of Publication and Mailing of Notices, Specifying Procedures for Filing, Determination and Adjudication of Claims, and Providing Other Relief ("Claims Procedures Order"; Docket No. 12).  The Claims Procedures Order includes a process for determination and allowance of claims under which the Trustee has been operating.  Both Customer Claims are deemed fully determined pursuant to the Claims Procedures Order.

## COUNT ONE
## FRAUDULENT TRANSFER – 11 U.S.C. §§ 548(a)(1)(A), 550(a) AND 551

39.     The Trustee incorporates by reference the allegations contained in the previous paragraphs of this Amended Complaint as if fully rewritten herein.

40.     Each of the Two Year Transfers was made on or within two years before the Filing Date.

41.     Each of the Two Year Transfers constituted a transfer of an interest of BLMIS in property within the meaning of section 101(54) of the Bankruptcy Code and pursuant to section 78fff-2(c)(3) of SIPA.

42.     Each of the Two Year Transfers was made by BLMIS with the actual intent to hinder, delay or defraud some or all of BLMIS's then existing and/or future creditors.

43.     Each of the Two Year Transfers constitutes a fraudulent transfer avoidable by the Trustee pursuant to section 548(a)(1)(A) of the Bankruptcy Code and recoverable from Defendants pursuant to section 550(a) of the Bankruptcy Code and section 78fff-2(c)(3) of SIPA.

44.     As a result of the foregoing, pursuant to sections 548(a)(1)(A), 550(a), and 551 of the Bankruptcy Code and section 78fff-2(c)(3) of SIPA, the Trustee is entitled to a judgment against Defendants: (a) avoiding and preserving the Two Year Transfers, (b) directing that the

Two Year Transfers be set aside, and (c) recovering the Two Year Transfers, or the value thereof, from Defendants for the benefit of the estate of BLMIS.

### COUNT TWO
### FRAUDULENT TRANSFER – 11 U.S.C. §§ 548(a)(1)(B), 550(a) AND 551

45.     The Trustee incorporates by reference the allegations contained in the previous paragraphs of this Amended Complaint as if fully rewritten herein.

46.     Each of the Two Year Transfers was made on or within two years before the Filing Date.

47.     Each of the Two Year Transfers constituted a transfer of an interest of BLMIS in property within the meaning of section 101(54) of the Bankruptcy Code and pursuant to section 78fff-2(c)(3) of SIPA.

48.     BLMIS received less than reasonably equivalent value in exchange for each of the Two Year Transfers.

49.     At the time of each of the Two Year Transfers, BLMIS was insolvent, or became insolvent as a result of the Two Year Transfers.

50.     At the time of each of the Two Year Transfers, BLMIS was engaged in a business or a transaction, or was about to engage in a business or transaction, for which any property remaining with BLMIS was an unreasonably small capital.

51.     At the time BLMIS made each of the Two Year Transfers, BLMIS had incurred, was intending to incur, or believed that it would incur debts beyond its ability to pay them as the debts matured.

52.     Each of the Two Year Transfers constitutes a fraudulent transfer avoidable by the Trustee pursuant to section 548(a)(1)(B) of the Bankruptcy Code and recoverable from the Defendants pursuant to section 550(a) of the Bankruptcy Code and section 78fff-2(c)(3) of SIPA.

53.     As a result of the foregoing, pursuant to sections 548(a)(1)(B), 550(a), and 551 of the Bankruptcy Code and section 78fff-2(c)(3) of SIPA, the Trustee is entitled to a judgment against Defendants: (a) avoiding and preserving the Two Year Transfers, (b) directing that the Two Year Transfers be set aside, and (c) recovering the Two Year Transfers, or the value thereof, from Defendants for the benefit of the estate of BLMIS.

## COUNT THREE
## FRAUDULENT TRANSFER – NEW YORK DEBTOR AND CREDITOR LAW §§ 276, 278 AND/OR 279, AND 11 U.S.C. §§ 544(b), 550(a) AND 551

54.     The Trustee incorporates by reference the allegations contained in the previous paragraphs of this Amended Complaint as if fully rewritten herein.

55.     At all times relevant to the Six Year Transfers, there have been and are one or more creditors who have held and still hold matured or unmatured unsecured claims against BLMIS that were and are allowable under section 502 of the Bankruptcy Code or that were and are not allowable only under section 502(e) of the Bankruptcy Code.

56.     Each of the Six Year Transfers constituted a conveyance by BLMIS as defined under DCL section 270.

57.     Each of the Six Year Transfers was made by BLMIS with the actual intent to hinder, delay or defraud the creditors of BLMIS.  BLMIS made each of the Six Year Transfers to or for the benefit of Defendants in furtherance of a fraudulent investment scheme.

58.     As a result of the foregoing, pursuant to DCL sections 276, 278 and/or 279, sections 544(b), 550(a), and 551 of the Bankruptcy Code, and section 78fff-2(c)(3) of SIPA, the Trustee is entitled to a judgment against Defendants: (a) avoiding and preserving the Six Year Transfers, (b) directing that the Six Year Transfers be set aside, and (c) recovering the Six Year Transfers, or the value thereof, from Defendants for the benefit of the estate of BLMIS.

## COUNT FOUR
## FRAUDULENT TRANSFER – NEW YORK DEBTOR AND CREDITOR LAW §§ 273 AND 278 AND/OR 279, AND 11 U.S.C. §§ 544(b), 550(a) AND 551

59.     The Trustee incorporates by reference the allegations contained in the previous paragraphs of this Amended Complaint as if fully rewritten herein.

60.     At all times relevant to the Six Year Transfers, there have been and are one or more creditors who have held and still hold matured or unmatured unsecured claims against BLMIS that were and are allowable under section 502 of the Bankruptcy Code or that were and are not allowable only under section 502(e) of the Bankruptcy Code.

61.     Each of the Six Year Transfers constituted a conveyance by BLMIS as defined under DCL section 270.

62.     BLMIS did not receive fair consideration for any of the Six Year Transfers.

63.     BLMIS was insolvent, or became insolvent as a result of the Six Year Transfers.

64.     As a result of the foregoing, pursuant to DCL sections 273, 278 and/or 279, sections 544(b), 550(a), and 551 of the Bankruptcy Code, and section 78fff-2(c)(3) of SIPA, the Trustee is entitled to a judgment against Defendants: (a) avoiding and preserving the Six Year Transfers, (b) directing that the Six Year Transfers be set aside, and (c) recovering the Six Year Transfers, or the value thereof, from Defendants for the benefit of the estate of BLMIS.

## COUNT FIVE
## FRAUDULENT TRANSFER – NEW YORK DEBTOR AND CREDITOR LAW §§ 274, 278 AND/OR 279, AND 11 U.S.C. §§ 544(b), 550(a), AND 551

65.     The Trustee incorporates by reference the allegations contained in the previous paragraphs of this Amended Complaint as if fully rewritten herein.

66.     At all times relevant to the Six Year Transfers, there have been and are one or more creditors who have held and still hold matured or unmatured unsecured claims against

BLMIS that were and are allowable under section 502 of the Bankruptcy Code or that were and are not allowable only under section 502(e) of the Bankruptcy Code.

67.     Each of the Six Year Transfers constituted a conveyance by BLMIS as defined under DCL section 270.

68.     BLMIS did not receive fair consideration for any of the Six Year Transfers.

69.     At the time BLMIS made each of the Six Year Transfers, BLMIS was engaged or was about to engage in a business or transaction for which the property remaining in its hands after each of the Six Year Transfers was an unreasonably small capital.

70.     As a result of the foregoing, pursuant to DCL sections 274, 278 and/or 279, sections 544(b), 550(a) and 551 of the Bankruptcy Code, and section 78fff-2(c)(3) of SIPA, the Trustee is entitled to a judgment against Defendants: (a) avoiding and preserving the Six Year Transfers, (b) directing that the Six Year Transfers be set aside, and (c) recovering the Six Year Transfers, or the value thereof, from Defendants for the benefit of the estate of BLMIS.

## COUNT SIX
## FRAUDULENT TRANSFER – NEW YORK DEBTOR AND CREDITOR LAW §§ 275, 278 AND/OR 279, AND 11 U.S.C. §§ 544(b), 550(a), AND 551

71.     The Trustee incorporates by reference the allegations contained in the previous paragraphs of this Amended Complaint as if fully rewritten herein.

72.     At all times relevant to the Six Year Transfers, there have been and are one or more creditors who have held and still hold matured or unmatured unsecured claims against BLMIS that were and are allowable under section 502 of the Bankruptcy Code or that were and are not allowable only under section 502(e) of the Bankruptcy Code.

73.     Each of the Six Year Transfers constituted a conveyance by BLMIS as defined under DCL section 270.

74.     BLMIS did not receive fair consideration for any of the Six Year Transfers.

75.     At the time BLMIS made each of the Six Year Transfers, BLMIS had incurred,

was intending to incur, or believed that it would incur debts beyond its ability to pay them as the

debts matured.

76.     As a result of the foregoing, pursuant to DCL sections 275, 278 and/or 279 and

sections 544(b), 550(a) and 551 of the Bankruptcy Code, and section 78fff-2(c)(3) of SIPA, the

Trustee is entitled to a judgment against Defendants: (a) avoiding and preserving the Six Year

Transfers, (b) directing that the Six Year Transfers be set aside, and (c) recovering the Six Year

Transfers, or the value thereof, from Defendants for the benefit of the estate of BLMIS.

**COUNT SEVEN**
**RECOVERY OF SUBSEQUENT TRANSFERS – NEW YORK DEBTOR AND**
**CREDITOR LAW §§ 278 AND/OR 279 AND 11 U.S.C. §§ 544, 548, 550(a) AND 551**

77.     The Trustee incorporates by reference the allegations contained in the previous

paragraphs of this Amended Complaint as if fully rewritten herein.

78.     Each of the Transfers is avoidable under sections 544 and 548 of the Bankruptcy

Code, DCL sections 273, 274, 275 and/or 276 and section 78fff-2(c)(3) of SIPA.

79.     On information and belief, the subsequent transfers were transferred by Decedents

to Subsequent Transferee Defendant.

80.     Each of the subsequent transfers was made directly or indirectly to Subsequent

Transferee Defendant.

81.     Subsequent Transferee Defendant is an immediate or mediate transferee of the

subsequent transfers from Defendants.

82.     As a result of the foregoing and the avoidance of the within Transfers, pursuant to

DCL sections 278 and/or 279, sections 544(b), 548(a), 550(a) and 551 of the Bankruptcy Code,

and section 78fff-2(c)(3) of SIPA, the Trustee is entitled to a judgment against Subsequent

Transferee Defendant: (a) avoiding and preserving the subsequent transfers, (b) directing that the

subsequent transfers be set aside, and (c) recovering the subsequent transfers, or the value thereof, from the Subsequent Transferee Defendant for the benefit of the estate of BLMIS.

**WHEREFORE**, the Trustee respectfully requests that this Court enter judgment in favor of the Trustee and against Defendants as follows:

i.       On the First Claim for Relief, pursuant to sections 548(a)(1)(A), 550(a) and 551 of the Bankruptcy Code, and section 78fff-2(c)(3) of SIPA: (a) avoiding and preserving the Two Year Transfers, (b) directing that the Two Year Transfers be set aside, and (c) recovering the Two Year Transfers, or the value thereof, from Defendants for the benefit of the estate of BLMIS;

ii.      On the Second Claim for Relief, pursuant to sections 548(a)(1)(B), 550(a) and 551 of the Bankruptcy Code, and section 78fff-2(c)(3) of SIPA: (a) avoiding and preserving the Two Year Transfers, (b) directing that the Two Year Transfers be set aside, and (c) recovering the Two Year Transfers, or the value thereof, from Defendants for the benefit of the estate of BLMIS;

iii.     On the Third Claim for Relief, pursuant to DCL sections 276, 278 and/or 279, sections 544(b), 550(a) and 551 of the Bankruptcy Code, and section 78fff-2(c)(3) of SIPA: (a) avoiding and preserving the Six Year Transfers, (b) directing that the Six Year Transfers be set aside, and (c) recovering the Six Year Transfers, or the value thereof, from Defendants for the benefit of the estate of BLMIS;

iv.      On the Fourth Claim for Relief, pursuant to DCL sections 273, 278 and/or 279, sections 544(b), 550(a) and 551 of the Bankruptcy Code, and section 78fff-2(c)(3) of SIPA: (a) avoiding and preserving the Six Year Transfers, (b) directing that the Six Year Transfers be set aside, and (c) recovering the Six Year Transfers, or the value thereof, from Defendants for the benefit of the estate of BLMIS;

08-01789-smb   Doc 8257-2   Filed 10/24/14   Entered 10/24/14 10:34:28   Exhibit
Exhibit 1 to Memorandum   Pg 18 of 35

v.     On the Fifth Claim for Relief, pursuant to DCL sections 274, 278 and/or 279, sections 544(b), 550(a), and 551 of the Bankruptcy Code, and section 78fff-2(c)(3) of SIPA: (a) avoiding and preserving the Six Year Transfers, (b) directing the Six Year Transfers be set aside, and (c) recovering the Six Year Transfers, or the value thereof, from Defendants for the benefit of the estate of BLMIS;

vi.     On the Sixth Claim for Relief, pursuant to DCL sections 275, 278 and/or 279, sections 544(b), 550(a) and 551 of the Bankruptcy Code, and section 78fff-2(c)(3) of SIPA: (a) avoiding and preserving the Six Year Transfers, (b) directing that the Six Year Transfers be set aside, and (c) recovering the Six Year Transfers, or the value thereof, from Defendants for the benefit of the estate of BLMIS;

vii.     On the Seventh Claim for Relief, as a result of the avoidance of the within Transfers, pursuant to DCL section 278 and/or 279, sections 544(b), 548, 550(a), and 551 of the Bankruptcy Code, and section 78fff-2(c)(3) of SIPA recovering the subsequent transfers, or the value thereof, from Subsequent Transferee Defendant for the benefit of the estate of BLMIS;

viii.     On all Claims for Relief, pursuant to federal common law and N.Y. CPLR 5001 and 5004 awarding the Trustee prejudgment interest from the date on which the Transfers were received;

ix.     On all Claims for Relief, establishment of a constructive trust over the proceeds of the transfers in favor of the Trustee for the benefit of BLMIS' estate;

x.     On all Claims for Relief, assignment of Defendant's income tax refunds from the United States, state and local governments paid on fictitious profits during the course of the scheme;

xi.     On all Claims for Relief, awarding the Trustee all applicable interest, costs, and disbursements of this action; and

xii.    On all Claims for Relief, granting Plaintiff such other, further, and different relief

as the Court deems just, proper, and equitable.

Date:  August 21, 2014
       New York, New York

Of Counsel:                          By: */s/ Nicholas J. Cremona*

**BAKER & HOSTETLER LLP**             **BAKER & HOSTETLER LLP**
811 Main, Suite 1100                  45 Rockefeller Plaza
Houston, Texas 77002-5018            New York, New York 10111
Telephone: (713)751-1600             Telephone: (212) 589-4200
Facsimile: (713)751-1717             Facsimile: (212) 589-4201
Dean D. Hunt                         David J. Sheehan
Email: dhunt@bakerlaw.com            Email:  dsheehan@bakerlaw.com
Farrell A. Hochmuth                  Nicholas J. Cremona
Email: fhochmuth@bakerlaw.com        Email: ncremona@bakerlaw.com

                                     *Attorneys for Irving H. Picard, Trustee for the*
                                     *Substantively Consolidated SIPA Liquidation*
                                     *of Bernard L. Madoff Investment Securities*
                                     *LLC and the Estate of Bernard L. Madoff*

| BLMIS Account Name | BLMIS Account Number |
|---|---|
| LEON ROSS | 1EM168 |

MADC0544_00000009

| BLMIS Account Name | BLMIS Account Number |
|---|---|
| MIRIAM ROSS | 1EM170 |

10-04733-smb    Doc 3257    Filed 08/22/14    Entered 08/22/14 14:10:34    Exhibit
Exhibit 1 to Memorandum    Pg 22 of 35
BLMIS ACCOUNT NO. 1EM168 - ERNEST LEON ROSS

Exhibit C

| Column 1 | Column 2 | Column 3 | Column 4 | Column 5 | Column 6 | Column 7 | Column 8 | Column 9 | Column 10 | Column 11 |
|---|---|---|---|---|---|---|---|---|---|---|
| Date | Transaction Description | Transaction Amount Reported in Customer Statement | Cash Deposits | Cash Withdrawals | Transfers of Principal In | Transfers of Principal Out | Balance of Principal | 90-Day Preferential Transfers | 2-Year Fraudulent Transfers | 6-Year Fraudulent Conveyances |
| 1/4/1993 | TRANS FROM E&M2 | 740,284 [1] | - | - | 320,000 | | 320,000 | - | - | - |
| 2/2/1993 | CHECK | 75,000 | 75,000 | - | - | - | 395,000 | - | - | - |
| 2/2/1993 | CHECK | 75,000 | 75,000 | - | - | - | 470,000 | - | - | - |
| 3/22/1993 | CHECK | (25,000) | - | (25,000) | - | - | 445,000 | - | - | - |
| 4/1/1993 | CHECK | (25,000) | - | (25,000) | - | - | 420,000 | - | - | - |
| 7/1/1993 | CHECK | (25,000) | - | (25,000) | - | - | 395,000 | - | - | - |
| 10/1/1993 | CHECK | (25,000) | - | (25,000) | - | - | 370,000 | - | - | - |
| 1/3/1994 | CHECK | (25,000) | - | (25,000) | - | - | 345,000 | - | - | - |
| 1/4/1994 | CHECK | (40,000) | - | (40,000) | - | - | 305,000 | - | - | - |
| 4/4/1994 | CHECK | (25,000) | - | (25,000) | - | - | 280,000 | - | - | - |
| 7/1/1994 | CHECK | (25,000) | - | (25,000) | - | - | 255,000 | - | - | - |
| 10/3/1994 | CHECK | (25,000) | - | (25,000) | - | - | 230,000 | - | - | - |
| 1/3/1995 | CHECK | (25,000) | - | (25,000) | - | - | 205,000 | - | - | - |
| 1/3/1995 | CHECK | (35,000) | - | (35,000) | - | - | 170,000 | - | - | - |
| 4/3/1995 | CHECK | (25,000) | - | (25,000) | - | - | 145,000 | - | - | - |
| 7/3/1995 | CHECK | (25,000) | - | (25,000) | - | - | 120,000 | - | - | - |
| 10/2/1995 | CHECK | (25,000) | - | (25,000) | - | - | 95,000 | - | - | - |
| 1/2/1996 | CHECK | (25,000) | - | (25,000) | - | - | 70,000 | - | - | - |
| 1/3/1996 | CHECK | (40,000) | - | (40,000) | - | - | 30,000 | - | - | - |
| 4/1/1996 | CHECK | (25,000) | - | (25,000) | - | - | 5,000 | - | - | - |
| 7/1/1996 | CHECK | (25,000) | - | (25,000) | - | - | (20,000) | - | - | - |
| 10/1/1996 | CHECK | (25,000) | - | (25,000) | - | - | (45,000) | - | - | - |
| 1/2/1997 | CHECK | (25,000) | - | (25,000) | - | - | (70,000) | - | - | - |
| 1/2/1997 | CHECK | (40,000) | - | (40,000) | - | - | (110,000) | - | - | - |
| 4/1/1997 | CHECK | (25,000) | - | (25,000) | - | - | (135,000) | - | - | - |
| 7/1/1997 | CHECK | (25,000) | - | (25,000) | - | - | (160,000) | - | - | - |
| 10/1/1997 | CHECK | (25,000) | - | (25,000) | - | - | (185,000) | - | - | - |
| 1/2/1998 | CHECK | (45,000) | - | (45,000) | - | - | (230,000) | - | - | - |
| 1/2/1998 | CHECK | (25,000) | - | (25,000) | - | - | (255,000) | - | - | - |
| 4/1/1998 | CHECK | (25,000) | - | (25,000) | - | - | (280,000) | - | - | - |
| 7/1/1998 | CHECK | (25,000) | - | (25,000) | - | - | (305,000) | - | - | - |
| 10/1/1998 | CHECK | (25,000) | - | (25,000) | - | - | (330,000) | - | - | - |
| 1/4/1999 | CHECK | (25,000) | - | (25,000) | - | - | (355,000) | - | - | - |
| 4/1/1999 | CHECK | (25,000) | - | (25,000) | - | - | (380,000) | - | - | - |
| 7/1/1999 | CHECK | (25,000) | - | (25,000) | - | - | (405,000) | - | - | - |
| 10/1/1999 | CHECK | (25,000) | - | (25,000) | - | - | (430,000) | - | - | - |
| 1/3/2000 | CHECK | (25,000) | - | (25,000) | - | - | (455,000) | - | - | - |
| 4/3/2000 | CHECK | (40,000) | - | (40,000) | - | - | (495,000) | - | - | - |
| 4/3/2000 | CHECK | (25,000) | - | (25,000) | - | - | (520,000) | - | - | - |
| 7/3/2000 | CHECK | (25,000) | - | (25,000) | - | - | (545,000) | - | - | - |
| 10/2/2000 | CHECK | (25,000) | - | (25,000) | - | - | (570,000) | - | - | - |
| 1/2/2001 | CHECK | (65,000) | - | (65,000) | - | - | (635,000) | - | - | - |
| 4/2/2001 | CHECK | (65,000) | - | (65,000) | - | - | (700,000) | - | - | - |
| 4/6/2001 | RETURNED CHECK | 65,000 | - | 65,000 | - | - | (635,000) | - | - | - |
| 4/6/2001 | CHECK | (25,000) | - | (25,000) | - | - | (660,000) | - | - | - |
| 7/2/2001 | CHECK | (25,000) | - | (25,000) | - | - | (685,000) | - | - | - |

Page 1 of 2 - 1EM168

MADC0544_00000011

BLMIS ACCOUNT NO. 1EM168 - LEON ROSS

| Column 1 | Column 2 | Column 3 | Column 4 | Column 5 | Column 6 | Column 7 | Column 8 | Column 9 | Column 10 | Column 11 |
|---|---|---|---|---|---|---|---|---|---|---|
| Date | Transaction Description | Transaction Amount Reported in Customer Statement | Cash Deposits | Cash Withdrawals | Transfers of Principal In | Transfers of Principal Out | Balance of Principal | 90-Day Preferential Transfers | 2-Year Fraudulent Transfers | 6-Year Fraudulent Conveyances |
| 10/1/2001 | CHECK | (25,000) | - | (25,000) | - | - | (710,000) | - | - | - |
| 1/2/2002 | CHECK | (25,000) | - | (25,000) | - | - | (735,000) | - | - | - |
| 4/1/2002 | CHECK | (25,000) | - | (25,000) | - | - | (760,000) | - | - | - |
| 7/1/2002 | CHECK | (25,000) | - | (25,000) | - | - | (785,000) | - | - | - |
| 10/1/2002 | CHECK | (25,000) | - | (25,000) | - | - | (810,000) | - | - | - |
| 1/2/2003 | CHECK | (70,000) | - | (70,000) | - | - | (880,000) | - | - | (70,000) |
| 4/1/2003 | CHECK | (70,000) | - | (70,000) | - | - | (950,000) | - | - | - |
| 4/8/2003 | RETURNED CHECK | 70,000 | - | 70,000 | - | - | (880,000) | - | - | - |
| 4/8/2003 | CHECK | (25,000) | - | (25,000) | - | - | (905,000) | - | - | (25,000) |
| 7/1/2003 | CHECK | (25,000) | - | (25,000) | - | - | (930,000) | - | - | (25,000) |
| 10/1/2003 | CHECK | (25,000) | - | (25,000) | - | - | (955,000) | - | - | (25,000) |
| 1/2/2004 | CHECK | (65,000) | - | (65,000) | - | - | (1,020,000) | - | - | (65,000) |
| 4/1/2004 | CHECK | (25,000) | - | (25,000) | - | - | (1,045,000) | - | - | (25,000) |
| 7/1/2004 | CHECK | (25,000) | - | (25,000) | - | - | (1,070,000) | - | - | (25,000) |
| 10/1/2004 | CHECK | (25,000) | - | (25,000) | - | - | (1,095,000) | - | - | (25,000) |
| 1/3/2005 | CHECK | (25,000) | - | (25,000) | - | - | (1,120,000) | - | - | (25,000) |
| 4/1/2005 | CHECK | (25,000) | - | (25,000) | - | - | (1,145,000) | - | - | (25,000) |
| 7/1/2005 | CHECK | (25,000) | - | (25,000) | - | - | (1,170,000) | - | - | (25,000) |
| 10/3/2005 | CHECK | (25,000) | - | (25,000) | - | - | (1,195,000) | - | - | (25,000) |
| 1/3/2006 | CHECK | (25,000) | - | (25,000) | - | - | (1,220,000) | - | - | (25,000) |
| 1/3/2006 | CHECK | (30,000) | - | (30,000) | - | - | (1,250,000) | - | - | (30,000) |
| 4/3/2006 | CHECK | (25,000) | - | (25,000) | - | - | (1,275,000) | - | - | (25,000) |
| 7/3/2006 | CHECK | (25,000) | - | (25,000) | - | - | (1,300,000) | - | - | (25,000) |
| 10/2/2006 | CHECK | (25,000) | - | (25,000) | - | - | (1,325,000) | - | - | (25,000) |
| 1/2/2007 | CHECK | (60,000) | - | (60,000) | - | - | (1,385,000) | - | (60,000) | (60,000) |
| 4/2/2007 | CHECK | (25,000) | - | (25,000) | - | - | (1,410,000) | - | (25,000) | (25,000) |
| 7/2/2007 | CHECK | (25,000) | - | (25,000) | - | - | (1,435,000) | - | (25,000) | (25,000) |
| 10/1/2007 | CHECK | (25,000) | - | (25,000) | - | - | (1,460,000) | - | (25,000) | (25,000) |
| 1/2/2008 | CHECK | (60,000) | - | (60,000) | - | - | (1,520,000) | - | (60,000) | (60,000) |
| 4/1/2008 | CHECK | (60,000) | - | (60,000) | - | - | (1,580,000) | - | (60,000) | (60,000) |
| 4/7/2008 | CHECK | 35,000 | 35,000 | - | - | - | (1,545,000) | - | - | - |
| 7/1/2008 | CHECK | (60,000) | - | (60,000) | - | - | (1,605,000) | - | (60,000) | (60,000) |
| 10/1/2008 | CHECK | (25,000) | - | (25,000) | - | - | (1,630,000) | - | (25,000) | (25,000) |
| | Total: | | $ 185,000 | $ (2,135,000) | $ 320,000 | $ - | $ (1,630,000) | $ - | $ (340,000) | $ (855,000) |

[1] Although BLMIS statements reflect that a larger transfer was made into the account on this date, a portion of the "transferred" funds consisted of fictitious profits which were never achieved and thus could not have been transferred. Accordingly, only the principal remaining in the originating account was transferred into this account on this date.

MADC0544_00000012

10-04733-smb Doc 13257-2 Filed 08/22/24 Entered 08/22/24 14:10:34 Exhibit g
Exhibit 1 to Memorandum Pg 24 of 35
Exhibit D
BEMIS ACCOUNT NO. 1EM170 MIRIAM ROSS

| Column 1 Date | Column 2 Transaction Description | Column 3 Transaction Amount Reported in Customer Statement | Column 4 Cash Deposits | Column 5 Cash Withdrawals | Column 6 Transfers of Principal In | Column 7 Transfers of Principal Out | Column 8 Balance of Principal | Column 9 90-Day Preferential Transfers | Column 10 2-Year Fraudulent Transfers | Column 11 6-Year Fraudulent Conveyances |
|---|---|---|---|---|---|---|---|---|---|---|
| 1/4/1993 | TRANS FROM E&M3 | 948,621 [1] | - | - | 580,000 | | 580,000 | - | - | - |
| 4/1/1993 | CHECK | (27,000) | - | (27,000) | - | - | 553,000 | - | - | - |
| 7/1/1993 | CHECK | (27,000) | - | (27,000) | - | - | 526,000 | - | - | - |
| 10/1/1993 | CHECK | (27,000) | - | (27,000) | - | - | 499,000 | - | - | - |
| 1/3/1994 | CHECK | (27,000) | - | (27,000) | - | - | 472,000 | - | - | - |
| 1/4/1994 | CHECK | (40,000) | - | (40,000) | - | - | 432,000 | - | - | - |
| 4/4/1994 | CHECK | (27,000) | - | (27,000) | - | - | 405,000 | - | - | - |
| 7/1/1994 | CHECK | (27,000) | - | (27,000) | - | - | 378,000 | - | - | - |
| 10/3/1994 | CHECK | (27,000) | - | (27,000) | - | - | 351,000 | - | - | - |
| 1/3/1995 | CHECK | (27,000) | - | (27,000) | - | - | 324,000 | - | - | - |
| 1/3/1995 | CHECK | (35,000) | - | (35,000) | - | - | 289,000 | - | - | - |
| 4/3/1995 | CHECK | (27,000) | - | (27,000) | - | - | 262,000 | - | - | - |
| 7/3/1995 | CHECK | (27,000) | - | (27,000) | - | - | 235,000 | - | - | - |
| 10/2/1995 | CHECK | (27,000) | - | (27,000) | - | - | 208,000 | - | - | - |
| 1/2/1996 | CHECK | (27,000) | - | (27,000) | - | - | 181,000 | - | - | - |
| 1/3/1996 | CHECK | (40,000) | - | (40,000) | - | - | 141,000 | - | - | - |
| 4/1/1996 | CHECK | (27,000) | - | (27,000) | - | - | 114,000 | - | - | - |
| 7/1/1996 | CHECK | (27,000) | - | (27,000) | - | - | 87,000 | - | - | - |
| 10/1/1996 | CHECK | (27,000) | - | (27,000) | - | - | 60,000 | - | - | - |
| 1/2/1997 | CHECK | (40,000) | - | (40,000) | - | - | 20,000 | - | - | - |
| 1/2/1997 | CHECK | (27,000) | - | (27,000) | - | - | (7,000) | - | - | - |
| 4/1/1997 | CHECK | (27,000) | - | (27,000) | - | - | (34,000) | - | - | - |
| 7/1/1997 | CHECK | (27,000) | - | (27,000) | - | - | (61,000) | - | - | - |
| 10/1/1997 | CHECK | (27,000) | - | (27,000) | - | - | (88,000) | - | - | - |
| 1/2/1998 | CHECK | (45,000) | - | (45,000) | - | - | (133,000) | - | - | - |
| 1/2/1998 | CHECK | (27,000) | - | (27,000) | - | - | (160,000) | - | - | - |
| 4/1/1998 | CHECK | (27,000) | - | (27,000) | - | - | (187,000) | - | - | - |
| 7/1/1998 | CHECK | (27,000) | - | (27,000) | - | - | (214,000) | - | - | - |
| 10/1/1998 | CHECK | (27,000) | - | (27,000) | - | - | (241,000) | - | - | - |
| 1/4/1999 | CHECK | (27,000) | - | (27,000) | - | - | (268,000) | - | - | - |
| 4/1/1999 | CHECK | (27,000) | - | (27,000) | - | - | (295,000) | - | - | - |
| 7/1/1999 | CHECK | (27,000) | - | (27,000) | - | - | (322,000) | - | - | - |
| 10/1/1999 | CHECK | (27,000) | - | (27,000) | - | - | (349,000) | - | - | - |
| 1/3/2000 | CHECK | (27,000) | - | (27,000) | - | - | (376,000) | - | - | - |
| 4/3/2000 | CHECK | (40,000) | - | (40,000) | - | - | (416,000) | - | - | - |
| 4/3/2000 | CHECK | (27,000) | - | (27,000) | - | - | (443,000) | - | - | - |
| 7/3/2000 | CHECK | (27,000) | - | (27,000) | - | - | (470,000) | - | - | - |
| 10/2/2000 | CHECK | (27,000) | - | (27,000) | - | - | (497,000) | - | - | - |
| 1/2/2001 | CHECK | (67,000) | - | (67,000) | - | - | (564,000) | - | - | - |
| 4/2/2001 | CHECK | (67,000) | - | (67,000) | - | - | (631,000) | - | - | - |
| 4/6/2001 | RETURNED CHECK | 67,000 | - | 67,000 | - | - | (564,000) | - | - | - |
| 4/6/2001 | CHECK | (27,000) | - | (27,000) | - | - | (591,000) | - | - | - |
| 7/2/2001 | CHECK | (27,000) | - | (27,000) | - | - | (618,000) | - | - | - |
| 10/1/2001 | CHECK | (27,000) | - | (27,000) | - | - | (645,000) | - | - | - |
| 1/2/2002 | CHECK | (27,000) | - | (27,000) | - | - | (672,000) | - | - | - |
| 4/1/2002 | CHECK | (27,000) | - | (27,000) | - | - | (699,000) | - | - | - |

MADC0544_00000013

BLMIS ACCOUNT NO. 1EM170 MIRIAM ROSS

Exhibit D

| Column 1 | Column 2 | Column 3 | Column 4 | Column 5 | Column 6 | Column 7 | Column 8 | Column 9 | Column 10 | Column 11 |
|---|---|---|---|---|---|---|---|---|---|---|
| Date | Transaction Description | Transaction Amount Reported in Customer Statement | Cash Deposits | Cash Withdrawals | Transfers of Principal In | Transfers of Principal Out | Balance of Principal | 90-Day Preferential Transfers | 2-Year Fraudulent Transfers | 6-Year Fraudulent Conveyances |
| 7/1/2002 | CHECK | (27,000) | - | (27,000) | - | - | (726,000) | - | - | - |
| 10/1/2002 | CHECK | (27,000) | - | (27,000) | - | - | (753,000) | - | - | - |
| 1/2/2003 | CHECK | (72,000) | - | (72,000) | - | - | (825,000) | - | - | (72,000) |
| 4/1/2003 | CHECK | (72,000) | - | (72,000) | - | - | (897,000) | - | - | - |
| 4/8/2003 | RETURNED CHECK | 72,000 | - | 72,000 | - | - | (825,000) | - | - | - |
| 4/8/2003 | CHECK | (27,000) | - | (27,000) | - | - | (852,000) | - | - | (27,000) |
| 7/1/2003 | CHECK | (27,000) | - | (27,000) | - | - | (879,000) | - | - | (27,000) |
| 10/1/2003 | CHECK | (27,000) | - | (27,000) | - | - | (906,000) | - | - | (27,000) |
| 1/2/2004 | CHECK | (67,000) | - | (67,000) | - | - | (973,000) | - | - | (67,000) |
| 4/1/2004 | CHECK | (27,000) | - | (27,000) | - | - | (1,000,000) | - | - | (27,000) |
| 7/1/2004 | CHECK | (27,000) | - | (27,000) | - | - | (1,027,000) | - | - | (27,000) |
| 10/1/2004 | CHECK | (27,000) | - | (27,000) | - | - | (1,054,000) | - | - | (27,000) |
| 1/3/2005 | CHECK | (27,000) | - | (27,000) | - | - | (1,081,000) | - | - | (27,000) |
| 4/1/2005 | CHECK | (27,000) | - | (27,000) | - | - | (1,108,000) | - | - | (27,000) |
| 7/1/2005 | CHECK | (27,000) | - | (27,000) | - | - | (1,135,000) | - | - | (27,000) |
| 10/3/2005 | CHECK | (27,000) | - | (27,000) | - | - | (1,162,000) | - | - | (27,000) |
| 1/3/2006 | CHECK | (27,000) | - | (27,000) | - | - | (1,189,000) | - | - | (27,000) |
| 1/3/2006 | CHECK | (30,000) | - | (30,000) | - | - | (1,219,000) | - | - | (30,000) |
| 4/3/2006 | CHECK | (27,000) | - | (27,000) | - | - | (1,246,000) | - | - | (27,000) |
| 7/3/2006 | CHECK | (27,000) | - | (27,000) | - | - | (1,273,000) | - | - | (27,000) |
| 10/2/2006 | CHECK | (27,000) | - | (27,000) | - | - | (1,300,000) | - | - | (27,000) |
| 1/2/2007 | CHECK | (67,000) | - | (67,000) | - | - | (1,367,000) | - | (67,000) | (67,000) |
| 4/2/2007 | CHECK | (27,000) | - | (27,000) | - | - | (1,394,000) | - | (27,000) | (27,000) |
| 7/2/2007 | CHECK | (27,000) | - | (27,000) | - | - | (1,421,000) | - | (27,000) | (27,000) |
| 10/1/2007 | CHECK | (27,000) | - | (27,000) | - | - | (1,448,000) | - | (27,000) | (27,000) |
| 1/2/2008 | CHECK | (72,000) | - | (72,000) | - | - | (1,520,000) | - | (72,000) | (72,000) |
| 4/1/2008 | CHECK | (72,000) | - | (72,000) | - | - | (1,592,000) | - | (72,000) | (72,000) |
| 4/7/2008 | CHECK | 45,000 | 45,000 | - | - | - | (1,547,000) | - | - | - |
| 7/1/2008 | CHECK | (72,000) | - | (72,000) | - | - | (1,619,000) | - | (72,000) | (72,000) |
| 10/1/2008 | CHECK | (27,000) | - | (27,000) | - | - | (1,646,000) | - | (27,000) | (27,000) |
| | Total: | | $ 45,000 | $ (2,271,000) | $ 580,000 | $ - | $ (1,646,000) | $ - | $ (391,000) | $ (938,000) |

[1] Although BLMIS statements reflect that a larger transfer was made into the account on this date, a portion of the "transferred" funds consisted of fictitious profits which were never achieved and thus could not have been transferred. Accordingly, only the principal remaining in the originating account was transferred into this account on this date.

MADC0544_00000014

# BERNARD L. MADOFF INVESTMENT SECURITIES LLC

In Liquidation

## DECEMBER 11, 2008[1]

## NOTICE OF TRUSTEE'S DETERMINATION OF CLAIM

May 12, 2010

Leon Ross
REDACTED
Maplewood NJ  07040

Dear Leon Ross:

### PLEASE READ THIS NOTICE CAREFULLY.

The liquidation of the business of BERNARD L. MADOFF INVESTMENT SECURITIES LLC ("BLMIS") is being conducted by Irving H. Picard, Trustee under the Securities Investor Protection Act, 15 U.S.C. § 78aaa et seq. ("SIPA"), pursuant to an order entered on December 15, 2008 by the United States District Court for the Southern District of New York.

The Trustee has made the following determination regarding your claim on BLMIS Account No. 1EM168 designated as Claim Number 009488:

Your claim for securities is **DENIED**. No securities were ever purchased for your account.

Further, based on the Trustee's analysis, the amount of money you withdrew from your account at BLMIS (total of $2,135,000.00), as more fully set forth in Table 1 annexed hereto and made a part hereof, is greater than the amount that was deposited with BLMIS for the purchase of

---

[1] Section 78*lll*(7)(B) of SIPA states that the filing date is "the date on which an application for a protective decree is filed under 78eee(a)(3)," except where the debtor is the subject of a proceeding pending before a United States court "in which a receiver, trustee, or liquidator for such debtor has been appointed and such proceeding was commenced before the date on which such application was filed, the term 'filing date' means the date on which such proceeding was commenced." Section 78*lll*(7)(B). Thus, even though the Application for a protective decree was filed on December 15, 2008, the Filing Date in this action is on December 11, 2008.

300084437.1

securities (total of $505,000.00). As noted, no securities were ever purchased by BLMIS for your account. Any and all profits reported to you by BLMIS on account statements were fictitious.

As reflected in Table 1, certain of the transfers into or out of your account have been adjusted. As part of the Trustee's analysis of accounts, the Trustee has assessed accounts based on a money in/money out analysis (i.e., has the investor deposited more or less than he or she withdrew from BLMIS). This analysis allows the Trustee to determine which part of an account's balance is originally invested principal and which part is fictitious gains that were fabricated by BLMIS. A customer's allowed claim is based on the amount of principal in the customer's account.

Whenever a customer requested a transfer from one account to another, the Trustee analyzed whether the transferor account had principal in the account at the time of the transfer. The available principal in the account was transferred to and credited in the transferee account. Thus, the reason that the adjusted amount of transferred deposits or withdrawals in Table 1 is less than the purported transfer amount is that the transferor account did not have sufficient principal available to effectuate the full transfer. The difference between the purported transfer amount and the adjusted transfer amount is the amount of fictitious gain that was transferred to or from your account. Under the money in/money out analysis, the Trustee does not give credit for fictitious gains in settling your allowed claim.

Since there were no profits to use either to purchase securities or to pay you any money beyond the amount that was deposited into your BLMIS account, the amount of money you received in excess of the deposits in your account ($1,630,000.00) was taken from other customers and given to you. Accordingly, because you have withdrawn more than was deposited into your account, you do not have a positive "net equity" in your account and you are not entitled to an allowed claim in the BLMIS liquidation proceeding. Therefore, your claim is **DENIED** in its entirety.

**On March 1, 2010, the United States Bankruptcy Court for the Southern District of New York (Lifland, J.) issued a decision which affirmed the Trustee's Net Investment Method for determining customer claims. The final resolution of this issue is expected to be determined on appeal.**

**Should a final and unappealable court order determine that the Trustee is incorrect in his interpretation of "net equity" and its corresponding application to the determination of customer claims, the Trustee will be bound by that order and will apply it retroactively to all previously determined customer claims in accordance with the Court's order. Nothing in this Notice of Trustee's Determination of Claim shall be construed as a waiver of any rights or claims held by you in having your customer claim re-determined in accordance with any such Court order.**

Nothing in this Notice of Trustee's Determination of Claim shall be construed as a waiver of any rights or claims held by the Trustee against you.

**PLEASE TAKE NOTICE:** If you disagree with this determination and desire a hearing before Bankruptcy Judge Burton R. Lifland, you **MUST** file your written opposition, setting forth the grounds for your disagreement, referencing Bankruptcy Case No. 08-1789 (BRL) and attaching

MADC0544_00000016

copies of any documents in support of your position, with the United States Bankruptcy Court **and** the Trustee within **THIRTY DAYS** after May 12, 2010, the date on which the Trustee mailed this notice.

**PLEASE TAKE FURTHER NOTICE:** If you do not properly and timely file a written opposition, the Trustee's determination with respect to your claim will be deemed confirmed by the Court and binding on you.

**PLEASE TAKE FURTHER NOTICE:** If you properly and timely file a written opposition, a hearing date for this controversy will be obtained by the Trustee and you will be notified of that hearing date. Your failure to appear personally or through counsel at such hearing will result in the Trustee's determination with respect to your claim being confirmed by the Court and binding on you.

**PLEASE TAKE FURTHER NOTICE:** You must mail your opposition, if any, in accordance with the above procedure, to each of the following addresses:

Clerk of the United States Bankruptcy Court for
the Southern District of New York
One Bowling Green
New York, New York 10004

and

Irving H. Picard, Trustee
c/o Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111

Irving H. Picard

Trustee for the Liquidation of the Business of
Bernard L. Madoff Investment Securities LLC

cc: Kristi Stahnke McGregor
Lori Feldman
Milberg LLP
REDACTED
New York, NY 10119

MADC0544_00000017

| DATE | TRANSACTION DESCRIPTION | AMOUNT | ADJUSTED AMOUNT |
|---|---|---|---|
| 1/4/1993 | TRANS FROM E&M2 | $740,284.45 | $320,000.00 |
| 2/2/1993 | CHECK | $75,000.00 | $75,000.00 |
| 2/2/1993 | CHECK | $75,000.00 | $75,000.00 |
| 4/7/2008 | CHECK | $35,000.00 | $35,000.00 |
| **Total Deposits:** | | $925,284.45 | $505,000.00 |

| DATE | TRANSACTION DESCRIPTION | AMOUNT | ADJUSTED AMOUNT |
|---|---|---|---|
| 3/22/1993 | CHECK | ($25,000.00) | ($25,000.00) |
| 4/1/1993 | CHECK | ($25,000.00) | ($25,000.00) |
| 7/1/1993 | CHECK | ($25,000.00) | ($25,000.00) |
| 10/1/1993 | CHECK | ($25,000.00) | ($25,000.00) |
| 1/3/1994 | CHECK | ($25,000.00) | ($25,000.00) |
| 1/4/1994 | CHECK | ($40,000.00) | ($40,000.00) |
| 4/4/1994 | CHECK | ($25,000.00) | ($25,000.00) |
| 7/1/1994 | CHECK | ($25,000.00) | ($25,000.00) |
| 10/3/1994 | CHECK | ($25,000.00) | ($25,000.00) |
| 1/3/1995 | CHECK | ($25,000.00) | ($25,000.00) |
| 1/3/1995 | CHECK | ($35,000.00) | ($35,000.00) |
| 4/3/1995 | CHECK | ($25,000.00) | ($25,000.00) |
| 7/3/1995 | CHECK | ($25,000.00) | ($25,000.00) |
| 10/2/1995 | CHECK | ($25,000.00) | ($25,000.00) |
| 1/2/1996 | CHECK | ($25,000.00) | ($25,000.00) |
| 1/3/1996 | CHECK | ($40,000.00) | ($40,000.00) |
| 4/1/1996 | CHECK | ($25,000.00) | ($25,000.00) |
| 7/1/1996 | CHECK | ($25,000.00) | ($25,000.00) |
| 10/1/1996 | CHECK | ($25,000.00) | ($25,000.00) |
| 1/2/1997 | CHECK | ($25,000.00) | ($25,000.00) |
| 1/2/1997 | CHECK | ($40,000.00) | ($40,000.00) |
| 4/1/1997 | CHECK | ($25,000.00) | ($25,000.00) |
| 7/1/1997 | CHECK | ($25,000.00) | ($25,000.00) |
| 10/1/1997 | CHECK | ($25,000.00) | ($25,000.00) |
| 1/2/1998 | CHECK | ($25,000.00) | ($25,000.00) |
| 1/2/1998 | CHECK | ($45,000.00) | ($45,000.00) |
| 4/1/1998 | CHECK | ($25,000.00) | ($25,000.00) |
| 7/1/1998 | CHECK | ($25,000.00) | ($25,000.00) |
| 10/1/1998 | CHECK | ($25,000.00) | ($25,000.00) |
| 1/4/1999 | CHECK | ($25,000.00) | ($25,000.00) |
| 4/1/1999 | CHECK | ($25,000.00) | ($25,000.00) |
| 7/1/1999 | CHECK | ($25,000.00) | ($25,000.00) |
| 10/1/1999 | CHECK | ($25,000.00) | ($25,000.00) |
| 1/3/2000 | CHECK | ($25,000.00) | ($25,000.00) |

MADC0544_00000018

| | | | |
|---|---|---|---|
| 4/3/2000 | CHECK | ($25,000.00) | ($25,000.00) |
| 4/3/2000 | CHECK | ($40,000.00) | ($40,000.00) |
| 7/3/2000 | CHECK | ($25,000.00) | ($25,000.00) |
| 10/2/2000 | CHECK | ($25,000.00) | ($25,000.00) |
| 1/2/2001 | CHECK | ($65,000.00) | ($65,000.00) |
| 4/2/2001 | CHECK | ($65,000.00) | ($65,000.00) |
| 4/6/2001 | RETURNED CHECK | $65,000.00 | $65,000.00 |
| 4/6/2001 | CHECK | ($25,000.00) | ($25,000.00) |
| 7/2/2001 | CHECK | ($25,000.00) | ($25,000.00) |
| 10/1/2001 | CHECK | ($25,000.00) | ($25,000.00) |
| 1/2/2002 | CHECK | ($25,000.00) | ($25,000.00) |
| 4/1/2002 | CHECK | ($25,000.00) | ($25,000.00) |
| 7/1/2002 | CHECK | ($25,000.00) | ($25,000.00) |
| 10/1/2002 | CHECK | ($25,000.00) | ($25,000.00) |
| 1/2/2003 | CHECK | ($70,000.00) | ($70,000.00) |
| 4/1/2003 | CHECK | ($70,000.00) | ($70,000.00) |
| 4/8/2003 | RETURNED CHECK | $70,000.00 | $70,000.00 |
| 4/8/2003 | CHECK | ($25,000.00) | ($25,000.00) |
| 7/1/2003 | CHECK | ($25,000.00) | ($25,000.00) |
| 10/1/2003 | CHECK | ($25,000.00) | ($25,000.00) |
| 1/2/2004 | CHECK | ($65,000.00) | ($65,000.00) |
| 4/1/2004 | CHECK | ($25,000.00) | ($25,000.00) |
| 7/1/2004 | CHECK | ($25,000.00) | ($25,000.00) |
| 10/1/2004 | CHECK | ($25,000.00) | ($25,000.00) |
| 1/3/2005 | CHECK | ($25,000.00) | ($25,000.00) |
| 4/1/2005 | CHECK | ($25,000.00) | ($25,000.00) |
| 7/1/2005 | CHECK | ($25,000.00) | ($25,000.00) |
| 10/3/2005 | CHECK | ($25,000.00) | ($25,000.00) |
| 1/3/2006 | CHECK | ($25,000.00) | ($25,000.00) |
| 1/3/2006 | CHECK | ($30,000.00) | ($30,000.00) |
| 4/3/2006 | CHECK | ($25,000.00) | ($25,000.00) |
| 7/3/2006 | CHECK | ($25,000.00) | ($25,000.00) |
| 10/2/2006 | CHECK | ($25,000.00) | ($25,000.00) |
| 1/2/2007 | CHECK | ($60,000.00) | ($60,000.00) |
| 4/2/2007 | CHECK | ($25,000.00) | ($25,000.00) |
| 7/2/2007 | CHECK | ($25,000.00) | ($25,000.00) |
| 10/1/2007 | CHECK | ($25,000.00) | ($25,000.00) |
| 1/2/2008 | CHECK | ($60,000.00) | ($60,000.00) |
| 4/1/2008 | CHECK | ($60,000.00) | ($60,000.00) |
| 7/1/2008 | CHECK | ($60,000.00) | ($60,000.00) |
| 10/1/2008 | CHECK | ($25,000.00) | ($25,000.00) |
| **Total Withdrawals:** | | ($2,135,000.00) | ($2,135,000.00) |
| | | | |
| **Total deposits less withdrawals:** | | ($1,209,715.55) | ($1,630,000.00) |

MADC0544_00000019

## BERNARD L. MADOFF INVESTMENT SECURITIES LLC

In Liquidation

### DECEMBER 11, 2008[1]

### NOTICE OF TRUSTEE'S DETERMINATION OF CLAIM

May 12, 2010

Miriam Ross
REDACTED
Maplewood NJ 07040

Dear Miriam Ross:

### PLEASE READ THIS NOTICE CAREFULLY.

The liquidation of the business of BERNARD L. MADOFF INVESTMENT SECURITIES LLC ("BLMIS") is being conducted by Irving H. Picard, Trustee under the Securities Investor Protection Act, 15 U.S.C. § 78aaa et seq. ("SIPA"), pursuant to an order entered on December 15, 2008 by the United States District Court for the Southern District of New York.

The Trustee has made the following determination regarding your claim on BLMIS Account No. 1EM170 designated as Claim Number 009489:

Your claim for securities is **DENIED**. No securities were ever purchased for your account.

Further, based on the Trustee's analysis, the amount of money you withdrew from your account at BLMIS (total of $2,271,000.00), as more fully set forth in Table 1 annexed hereto and made a part hereof, is greater than the amount that was deposited with BLMIS for the purchase of

---

[1] Section 78*lll*(7)(B) of SIPA states that the filing date is "the date on which an application for a protective decree is filed under 78eee(a)(3)," except where the debtor is the subject of a proceeding pending before a United States court "in which a receiver, trustee, or liquidator for such debtor has been appointed and such proceeding was commenced before the date on which such application was filed, the term 'filing date' means the date on which such proceeding was commenced." Section 78*lll*(7)(B). Thus, even though the Application for a protective decree was filed on December 15, 2008, the Filing Date in this action is on December 11, 2008.

300084442.1

securities (total of $625,000.00). As noted, no securities were ever purchased by BLMIS for your account. Any and all profits reported to you by BLMIS on account statements were fictitious.

As reflected in Table 1, certain of the transfers into or out of your account have been adjusted. As part of the Trustee's analysis of accounts, the Trustee has assessed accounts based on a money in/money out analysis (i.e., has the investor deposited more or less than he or she withdrew from BLMIS). This analysis allows the Trustee to determine which part of an account's balance is originally invested principal and which part is fictitious gains that were fabricated by BLMIS. A customer's allowed claim is based on the amount of principal in the customer's account.

Whenever a customer requested a transfer from one account to another, the Trustee analyzed whether the transferor account had principal in the account at the time of the transfer. The available principal in the account was transferred to and credited in the transferee account. Thus, the reason that the adjusted amount of transferred deposits or withdrawals in Table 1 is less than the purported transfer amount is that the transferor account did not have sufficient principal available to effectuate the full transfer. The difference between the purported transfer amount and the adjusted transfer amount is the amount of fictitious gain that was transferred to or from your account. Under the money in/money out analysis, the Trustee does not give credit for fictitious gains in settling your allowed claim.

Since there were no profits to use either to purchase securities or to pay you any money beyond the amount that was deposited into your BLMIS account, the amount of money you received in excess of the deposits in your account ($1,646,000.00) was taken from other customers and given to you. Accordingly, because you have withdrawn more than was deposited into your account, you do not have a positive "net equity" in your account and you are not entitled to an allowed claim in the BLMIS liquidation proceeding. Therefore, your claim is **DENIED** in its entirety.

**On March 1, 2010, the United States Bankruptcy Court for the Southern District of New York (Lifland, J.) issued a decision which affirmed the Trustee's Net Investment Method for determining customer claims. The final resolution of this issue is expected to be determined on appeal.**

**Should a final and unappealable court order determine that the Trustee is incorrect in his interpretation of "net equity" and its corresponding application to the determination of customer claims, the Trustee will be bound by that order and will apply it retroactively to all previously determined customer claims in accordance with the Court's order. Nothing in this Notice of Trustee's Determination of Claim shall be construed as a waiver of any rights or claims held by you in having your customer claim re-determined in accordance with any such Court order.**

Nothing in this Notice of Trustee's Determination of Claim shall be construed as a waiver of any rights or claims held by the Trustee against you.

**PLEASE TAKE NOTICE:** If you disagree with this determination and desire a hearing before Bankruptcy Judge Burton R. Lifland, you **MUST** file your written opposition, setting forth the grounds for your disagreement, referencing Bankruptcy Case No. 08-1789 (BRL) and attaching

2

MADC0544_00000021

copies of any documents in support of your position, with the United States Bankruptcy Court **and** the Trustee within **THIRTY DAYS** after May 12, 2010, the date on which the Trustee mailed this notice.

**PLEASE TAKE FURTHER NOTICE:** If you do not properly and timely file a written opposition, the Trustee's determination with respect to your claim will be deemed confirmed by the Court and binding on you.

**PLEASE TAKE FURTHER NOTICE:** If you properly and timely file a written opposition, a hearing date for this controversy will be obtained by the Trustee and you will be notified of that hearing date. Your failure to appear personally or through counsel at such hearing will result in the Trustee's determination with respect to your claim being confirmed by the Court and binding on you.

**PLEASE TAKE FURTHER NOTICE:** You must mail your opposition, if any, in accordance with the above procedure, to each of the following addresses:

Clerk of the United States Bankruptcy Court for
the Southern District of New York
One Bowling Green
New York, New York  10004

and

Irving H. Picard, Trustee
c/o Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York  10111

*Irving H. Picard*
Irving H. Picard

Trustee for the Liquidation of the Business of
Bernard L. Madoff Investment Securities LLC

cc:  Kristi Stahnke McGregor
     Lori Feldman
     Milberg LLP
        **REDACTED**
     New York, NY 10119

300084442.1                                3

| DATE | TRANSACTION DESCRIPTION | AMOUNT | ADJUSTED AMOUNT |
|---|---|---|---|
| 1/4/1993 | TRANS FROM E&M3 | $948,621.21 | $580,000.00 |
| 4/7/2008 | CHECK | $45,000.00 | $45,000.00 |
| **Total Deposits:** | | $993,621.21 | $625,000.00 |

| DATE | TRANSACTION DESCRIPTION | AMOUNT | ADJUSTED AMOUNT |
|---|---|---|---|
| 4/1/1993 | CHECK | ($27,000.00) | ($27,000.00) |
| 7/1/1993 | CHECK | ($27,000.00) | ($27,000.00) |
| 10/1/1993 | CHECK | ($27,000.00) | ($27,000.00) |
| 1/3/1994 | CHECK | ($27,000.00) | ($27,000.00) |
| 1/4/1994 | CHECK | ($40,000.00) | ($40,000.00) |
| 4/4/1994 | CHECK | ($27,000.00) | ($27,000.00) |
| 7/1/1994 | CHECK | ($27,000.00) | ($27,000.00) |
| 10/3/1994 | CHECK | ($27,000.00) | ($27,000.00) |
| 1/3/1995 | CHECK | ($27,000.00) | ($27,000.00) |
| 1/3/1995 | CHECK | ($35,000.00) | ($35,000.00) |
| 4/3/1995 | CHECK | ($27,000.00) | ($27,000.00) |
| 7/3/1995 | CHECK | ($27,000.00) | ($27,000.00) |
| 10/2/1995 | CHECK | ($27,000.00) | ($27,000.00) |
| 1/2/1996 | CHECK | ($27,000.00) | ($27,000.00) |
| 1/3/1996 | CHECK | ($40,000.00) | ($40,000.00) |
| 4/1/1996 | CHECK | ($27,000.00) | ($27,000.00) |
| 7/1/1996 | CHECK | ($27,000.00) | ($27,000.00) |
| 10/1/1996 | CHECK | ($27,000.00) | ($27,000.00) |
| 1/2/1997 | CHECK | ($27,000.00) | ($27,000.00) |
| 1/2/1997 | CHECK | ($40,000.00) | ($40,000.00) |
| 4/1/1997 | CHECK | ($27,000.00) | ($27,000.00) |
| 7/1/1997 | CHECK | ($27,000.00) | ($27,000.00) |
| 10/1/1997 | CHECK | ($27,000.00) | ($27,000.00) |
| 1/2/1998 | CHECK | ($27,000.00) | ($27,000.00) |
| 1/2/1998 | CHECK | ($45,000.00) | ($45,000.00) |
| 4/1/1998 | CHECK | ($27,000.00) | ($27,000.00) |
| 7/1/1998 | CHECK | ($27,000.00) | ($27,000.00) |
| 10/1/1998 | CHECK | ($27,000.00) | ($27,000.00) |
| 1/4/1999 | CHECK | ($27,000.00) | ($27,000.00) |
| 4/1/1999 | CHECK | ($27,000.00) | ($27,000.00) |
| 7/1/1999 | CHECK | ($27,000.00) | ($27,000.00) |
| 10/1/1999 | CHECK | ($27,000.00) | ($27,000.00) |
| 1/3/2000 | CHECK | ($27,000.00) | ($27,000.00) |
| 4/3/2000 | CHECK | ($27,000.00) | ($27,000.00) |
| 4/3/2000 | CHECK | ($40,000.00) | ($40,000.00) |
| 7/3/2000 | CHECK | ($27,000.00) | ($27,000.00) |

MADC0544_00000023

| 10/2/2000 | CHECK | ($27,000.00) | ($27,000.00) |
|---|---|---|---|
| 1/2/2001 | CHECK | ($67,000.00) | ($67,000.00) |
| 4/2/2001 | CHECK | ($67,000.00) | ($67,000.00) |
| 4/6/2001 | RETURNED CHECK | $67,000.00 | $67,000.00 |
| 4/6/2001 | CHECK | ($27,000.00) | ($27,000.00) |
| 7/2/2001 | CHECK | ($27,000.00) | ($27,000.00) |
| 10/1/2001 | CHECK | ($27,000.00) | ($27,000.00) |
| 1/2/2002 | CHECK | ($27,000.00) | ($27,000.00) |
| 4/1/2002 | CHECK | ($27,000.00) | ($27,000.00) |
| 7/1/2002 | CHECK | ($27,000.00) | ($27,000.00) |
| 10/1/2002 | CHECK | ($27,000.00) | ($27,000.00) |
| 1/2/2003 | CHECK | ($72,000.00) | ($72,000.00) |
| 4/1/2003 | CHECK | ($72,000.00) | ($72,000.00) |
| 4/8/2003 | RETURNED CHECK | $72,000.00 | $72,000.00 |
| 4/8/2003 | CHECK | ($27,000.00) | ($27,000.00) |
| 7/1/2003 | CHECK | ($27,000.00) | ($27,000.00) |
| 10/1/2003 | CHECK | ($27,000.00) | ($27,000.00) |
| 1/2/2004 | CHECK | ($67,000.00) | ($67,000.00) |
| 4/1/2004 | CHECK | ($27,000.00) | ($27,000.00) |
| 7/1/2004 | CHECK | ($27,000.00) | ($27,000.00) |
| 10/1/2004 | CHECK | ($27,000.00) | ($27,000.00) |
| 1/3/2005 | CHECK | ($27,000.00) | ($27,000.00) |
| 4/1/2005 | CHECK | ($27,000.00) | ($27,000.00) |
| 7/1/2005 | CHECK | ($27,000.00) | ($27,000.00) |
| 10/3/2005 | CHECK | ($27,000.00) | ($27,000.00) |
| 1/3/2006 | CHECK | ($27,000.00) | ($27,000.00) |
| 1/3/2006 | CHECK | ($30,000.00) | ($30,000.00) |
| 4/3/2006 | CHECK | ($27,000.00) | ($27,000.00) |
| 7/3/2006 | CHECK | ($27,000.00) | ($27,000.00) |
| 10/2/2006 | CHECK | ($27,000.00) | ($27,000.00) |
| 1/2/2007 | CHECK | ($67,000.00) | ($67,000.00) |
| 4/2/2007 | CHECK | ($27,000.00) | ($27,000.00) |
| 7/2/2007 | CHECK | ($27,000.00) | ($27,000.00) |
| 10/1/2007 | CHECK | ($27,000.00) | ($27,000.00) |
| 1/2/2008 | CHECK | ($72,000.00) | ($72,000.00) |
| 4/1/2008 | CHECK | ($72,000.00) | ($72,000.00) |
| 7/1/2008 | CHECK | ($72,000.00) | ($72,000.00) |
| 10/1/2008 | CHECK | ($27,000.00) | ($27,000.00) |
| **Total Withdrawals:** | | ($2,271,000.00) | ($2,271,000.00) |
| | | | |
| **Total deposits less withdrawals:** | | ($1,277,378.79) | ($1,646,000.00) |

MADC0544_00000024