GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166
Telephone: (212) 351-4000
Facsimile: (212) 351-4035

*Attorneys for UBS AG, UBS (Luxembourg) SA,*
*UBS Fund Services (Luxembourg) SA, and*
*UBS Third Party Management Company SA*

Presentment Date: November 10, 2014 at
12:00 p.m.
Objection Deadline: November 3, 2014 at
11:30 a.m.

This filing relates to:
ECF Docket No. 8249 in Adv. Pro. No.
08-01789 (SMB)
ECF Docket No. 176 in Adv. Pro. No. 10-
04285 (SMB)
ECF Docket No. 179 in Adv. Pro. No. 10-
05311 (SMB)

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, <br><br> Plaintiff, <br><br> v. <br><br> BERNARD L. MADOFF INVESTMENT SECURITIES LLC, <br><br> Defendant. | Adv. Pro. No. 08-01789 (SMB) <br><br> SIPA Liquidation <br><br> (Substantively Consolidated) |
| In re: <br><br> BERNARD L. MADOFF, <br><br> Debtors. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, <br><br> Plaintiff, <br><br> v. <br><br> UBS AG, *et al.*, <br><br> Defendants. | Adv. Pro. No. 10-04285 (SMB) |

| | |
|---|---|
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>        Plaintiff,<br><br>    v.<br><br>UBS AG, *et al.*,<br><br>        Defendants. | Adv. Pro. No. 10-05311 (SMB) |

### LIMITED OBJECTION OF UBS DEFENDANTS TO THE TRUSTEE'S PRESENTMENT OF ORDER CONCERNING FURTHER PROCEEDINGS ON EXTRATERRITORIALITY MOTION AND TRUSTEE'S OMNIBUS MOTION FOR LEAVE TO REPLEAD AND FOR LIMITED DISCOVERY

UBS AG, UBS (Luxembourg) SA, UBS Fund Services (Luxembourg) SA, and UBS Third Party Management Company SA (collectively, "UBS") respectfully submit this limited objection to the proposed order (the "Proposed Order") submitted by Irving H. Picard (the "Trustee"), as trustee for the liquidation of the business of Bernard L. Madoff Investment Securities LLC and the estate of Bernard L. Madoff, as Exhibit A to the Notice of Presentment of Order Concerning Further Proceedings on Extraterritoriality Motion and Trustee's Omnibus Motion for Leave to Replead and for Limited Discovery (Docket No. 8249). In support of this Limited Objection, UBS respectfully states as follows:

### PRELIMINARY STATEMENT

1.      In large measure, the Trustee's Proposed Order offers a fair, logical, and efficient procedure for briefing and resolving the pending Extraterritoriality Motion (as defined below) and the Trustee's motion for permission to amend his complaints and pursue discovery in various adversary proceedings. UBS has no objection to the briefing schedule and related procedures, which offer a relatively swift and efficient path toward a resolution of issues that could (and

should) result in the dismissal of the Trustee's claims against UBS and hundreds of other defendants.

2.      Buried within the unobjectionable procedural provisions of the Proposed Order, however, is a provision that would grant the Trustee significant *substantive* relief from prior orders of this Court and from commitments and promises made by the Trustee.  This relief would prejudice UBS and potentially others who relied on the Court's orders and the Trustee's promises.

3.      Specifically, the Trustee seeks permission to publicly disclose "Confidential Material" that was produced to him pursuant to protective orders imposing confidentiality obligations that significantly restrict the universe of people to whom the Trustee may disclose such information.  Not surprisingly, none of those provisions permit the public filing and disclosure of "Confidential Material."  UBS relied on those protections when it agreed to produce documents to the Trustee, enabling the Trustee to obtain access to information more quickly and potentially broader in scope than he otherwise would have been able to obtain, including (but not limited to) information maintained overseas by foreign entities subject to stringent confidentiality obligations as a matter of foreign law.  Having induced the disclosing parties to rely on his promises of confidentiality – promises backed by Court orders and sanctions in the event of any violations – and having benefitted significantly therefrom, the Trustee is not entitled to escape his obligations under those confidentiality agreements and to disclose Confidential Material to the entire world.

4.      The Second Circuit requires that a movant demonstrate "extraordinary circumstances" or "compelling need" to overcome the presumptive unfairness of modifying a protective order that was relied upon by third parties in producing documents.  Here, of course,

the Trustee offers no justification or explanation whatsoever for his requested exemption from the terms of the Court's protective orders and his earlier promises.

5.        Nor is any modification of the protective orders required to enable a prompt resolution of the Extraterritoriality Motion or the Trustee's motion for leave to amend.  The existing orders permit the Trustee to use "Confidential Material" in court filings and in proposed amended complaints, but simply require that the Trustee file that material under seal and redact it from the publicly available version of his filings – precisely the restrictions that have governed the Trustee for more than four years.  And to the extent that the Trustee believes that any particular "Confidential Material" has been improperly designated, or that it should be publicly disclosed notwithstanding its confidential nature, the existing protective orders provide procedures for the parties to meet and confer regarding such issues, and for presenting any disputes to the Court that the parties are unable to resolve.  UBS and the Trustee have, in fact, successfully navigated such issues in the past, and there is no reason to assume that they could not continue to do so going forward.

6.        The Trustee's current proposal is not the first time that the Trustee has attempted to avoid the obligations that he willingly assumed and agreed to in exchange for obtaining UBS's documents.  At least twice before, he moved to amend the protective orders applicable in this case to diminish the promised protections and allow greater use and dissemination of confidential information.  UBS objected to those motions, and on each occasion, UBS and the Trustee reached a resolution that preserved the important rights for which UBS had negotiated at the time it agreed to produce documents.  The Trustee is no more entitled to relief from his obligations now than he was on the earlier occasions.

7.      It is, at a minimum, premature to address the Trustee's request for an exemption from the protective orders until he identifies specific information that he seeks to use in his proposed amended complaints, which would enable the parties to address the issue of confidentiality in the context of concrete documents and information.  Certainly, the Trustee does not require – and has not come close to justifying – the *carte blanche* permission to disclose any and all "Confidential Material" that he seeks in the Proposed Order.

8.      For these reasons, explained further below, the Court should not sign the Trustee's Proposed Order unless the offending paragraph is deleted therefrom.

## **BACKGROUND**

### A.      **The Existing Protective Order Regime**

9.      On December 18, 2009, the Trustee submitted to the Court a Motion for Entry of Protective Order (Docket No. 1093).  At the time the Trustee filed his motion, he had already commenced fourteen adversary proceedings, and he "expect[ed] to commence additional adversary proceedings in the future."  Trustee's Motion for Entry of Protective Order ¶ 6.

10.      On February 3, 2010, following his "negotiations with various constituents," the Trustee submitted an amended proposed protective order.  Notice of Filing of Amended Proposed Protective Order (Docket No. 1848) at 2.

11.      On February 16, 2010, this Court entered a protective order (Docket No. 1951, the "Initial Protective Order"), which adopted, nearly *verbatim*, the amended proposed protective order proffered by the Trustee.  A copy of the Initial Protective Order – which, as explained below, continues to govern the documents produced to date by UBS and its subsidiaries – is attached as Exhibit A.

12.     Under the terms of the Initial Protective Order, parties were permitted to

designate documents and information as **CONFIDENTIAL** if, *inter alia*:

> (a) in the good faith judgment of the party designating the material as
> **CONFIDENTIAL** such material contains proprietary business information,
> personal financial information, personal identifying information, or other
> information the disclosure of which would breach a legal or contractual obligation
> or (b) otherwise is subject to protection under section 107(b) or (c) of the United
> States Bankruptcy Code, Bankruptcy Rule 9018 and/or other applicable law.

Initial Protective Order ¶ 2.

13.     Once designated as **CONFIDENTIAL**, the Trustee was precluded from

disclosing the documents or information to persons other than those who were specifically

described in the Initial Protective Order.  Initial Protective Order ¶ 5.  Among those to whom the

Trustee was permitted to communicate **CONFIDENTIAL** Material is "[t]he Court" (*id.* ¶ 5(a)),

but the Initial Protective Order provided that "[n]o **CONFIDENTIAL** Material will be filed with

the Court unless it is filed under seal." *Id.* ¶ 13.

14.     If the Trustee believed that **CONFIDENTIAL** designations were not justified,

the Initial Protective Order provided a mechanism for raising and resolving such objections. *See*

Initial Protective Order ¶ 8.

15.     The Initial Protective Order provided that it would "remain in full force and effect

until further order of this Court *at the close of* Adv. Proc. No. 08-01789," at which time the

Trustee would seek an order allowing the Trustee to destroy, return, or otherwise secure the

**CONFIDENTIAL** information.  Initial Protective Order ¶ 28 (emphasis added).

16.     On several occasions subsequent to the entry of the Initial Protective Order, UBS

and certain of its affiliates produced documents and information to the Trustee, designating

certain documents and information as **CONFIDENTIAL** under the terms of the Initial

Protective Order.  UBS relied on the terms of the Initial Protective Order in producing the

documents and information. Indeed, UBS's willingness to produce such documents, and its agreement to compromise regarding the scope of the productions, was expressly conditioned on the Trustee's agreement that the documents would be treated as **CONFIDENTIAL** under the Initial Protective Order. *See, e.g.*, Letter from M. King to D. Renner & B. Pergament, dated November 8, 2010 (attached hereto as Exhibit B). The Trustee accepted UBS's documents subject to those conditions.

17.     On November 23, 2010 and December 7, 2010, the Trustee commenced two adversary proceedings against UBS and others, designated as Adv. Pro. Nos. 10-04285 (SMB) and 10-05311 (SMB). Those proceedings remain pending and are among the adversary proceedings that will be subject to the Trustee's Proposed Order.

18.     On February 1, 2011, after contending that the Initial Protective Order was no longer workable despite having been drafted by the Trustee and approved by the Court, the Trustee moved to amend the Initial Protective Order, and sought to abrogate all prior confidentiality agreements made with third parties. Trustee's Motion for Entry of Litigation Protective Order (the "February 2011 Motion") (Docket No. 3819), Ex. B ¶ 20.

19.     On May 26, 2011, following numerous objections by parties – including UBS – whose individual confidentiality agreements and rights under the Initial Protective Order were at risk of being invalidated, the Trustee agreed that the prior confidentiality agreements would remain unimpaired. The Trustee proudly proclaimed that, after months of negotiation, he had resolved nearly all objections by agreeing to modify the proposed Litigation Protective Order so that it "no longer abrogates prior confidentiality agreements that the Trustee entered into with various parties." Trustee's Response to Objection to Motion for Entry of Litigation Protective Order (Docket No. 4097) at 2.

20.    UBS would not have agreed to the other provisions of the Litigation Protective

Order were it not for the Trustee's agreement to maintain the existence and validity of prior

confidentiality agreements and the other concessions made by the Trustee.  UBS specifically

obtained the Trustee's written agreement that UBS would be governed by its prior confidentiality

agreement, which incorporated the terms of the Initial Protective Order.  *See* Letter from M.

King to, and counter-signed by, J. Selby, dated May 17, 2011 (the "UBS-Trustee Agreement,"

attached hereto as Exhibit C).  In the UBS-Trustee Agreement, the Trustee expressly agreed that

"the confidentiality of the documents previously produced by UBS will continue to be governed

by the terms of the February 16, 2010 Protective Order."  *Id.* at 2.

21.    On June 6, 2011, this Court entered the Litigation Protective Order (Docket No.

4137) (attached hereto as Exhibit D).

22.    The Litigation Protective Order explicitly protects the confidentiality designations

made pursuant to the individual confidentiality agreements entered into between producing

parties and the Trustee.  The Litigation Protective Order provides:

> All designations of material as **CONFIDENTIAL** made after the date of the entry
> of this Order shall be controlled by this Order.  *To the extent that a producing
> party and a receiving party have entered into an agreement regarding the
> confidentiality or non-disclosure of documents or discovery materials, such
> agreements shall only apply to documents or materials produced prior to the
> entry of this Order.*

Litigation Protective Order ¶ 19 (emphasis added).  As noted, the Trustee agreed to this

provision after months of negotiation with the objecting parties, and after UBS and the other

objecting parties made significant concessions on other aspects of the Litigation Protective

Order.

23.    Even under the Litigation Protective Order, **CONFIDENTIAL MATERIAL**

may not be "given, shown, made available or communicated in any way to any person or entity"

other than those specifically set forth in the order, and if the Trustee wishes to file any such

material with the Court, it must be filed under seal.  Litigation Protective Order ¶¶ 10, 15.  Like

the Initial Protective Order, the Litigation Protective Order includes provisions for resolving

disputes over the designation of material as confidential, requiring the parties to confer and,

failing agreement, present the dispute to the Court – first in an informal conference and, if still

unresolved, by motion.  *Id.* ¶ 9.

24.     Like the Initial Protective Order, the Litigation Protective Order further provided

that it would "remain in full force and effect until further order of this Court *at the close of* Adv.

Proc. No. 08-01789," when the Trustee would seek an order allowing the Trustee to destroy,

return, or otherwise secure the **CONFIDENTIAL** information.  Litigation Protective Order ¶ 20

(emphasis added).

25.     Just two months after entry of the Litigation Protective Order, on August 5, 2011,

the Trustee filed another motion with the Court, again seeking to supersede existing

confidentiality agreements, including those that had expressly been preserved by paragraph 19 of

the Litigation Protective Order.   Trustee's Motion for (I) a Report and Recommendation to the

District Court for the Appointment of Special Discovery Masters, (II) an Order Establishing

Procedures for Electronic Data Rooms, and (III) an Order Modifying the June 6, 2011 Litigation

Protective Order (the "August 2011 Motion") (Docket No. 4290) ¶ 36.  The Trustee also sought

permission to disclose **CONFIDENTIAL** Material to counsel for each of the 5,000 parties with

whom the Trustee is litigating.  *See id.* ¶¶ 36, 38-40.

26.     In response to the August 2011 Motion, UBS again objected to the Trustee's

attempt to abrogate his confidentiality obligations.  The Court adjourned a ruling on the

Trustee's motion, and the Trustee ultimately negotiated with UBS and others, filed an amended

motion, and obtained an order that was acceptable to UBS and that preserved the confidentiality

provisions that UBS had relied on in producing documents to the Trustee.  *See* Order Modifying

the June 6, 2011 Litigation Protective Order (Docket No. 5474) ¶ H ("To the extent that a

Producing Party and the Trustee have entered into an agreement regarding the confidentiality or

non-disclosure of documents or discovery materials, such agreements . . . shall continue to apply

to documents produced to the Trustee prior to the date of the Litigation Protective Order . . . .").

**B.**     **The Extraterritoriality Motion and the Trustee's Motion to Amend**

27.     The procedural background leading to the Trustee's Proposed Order is set forth in

the recitals to the Proposed Order.  Briefly, pending before the Court are (a) a consolidated

motion by various defendants in adversary proceedings to dismiss claims by the Trustee seeking

the recovery of "subsequent transfers" on the ground that section 550(a) of the Bankruptcy Code

does not apply extraterritorially (the "Extraterritoriality Motion"), and (b) a motion by the

Trustee for, *inter alia*, leave to amend the complaints in various adversary proceedings

(including those in which UBS is named) to add allegations relevant to the extraterritoriality

issue and other issues (the "Motion to Amend").

28.     On September 17, 2014, this Court held a conference to discuss further

proceedings relating to the Extraterritoriality Motion and the Motion to Amend, and directed the

parties to confer on a coordinated procedure and briefing schedule.

29.     The parties have conferred and agreed on a briefing schedule and procedure that

is reflected in the Proposed Order.  The agreed procedures provide that, insofar as the Trustee

seeks leave to amend the complaint in any particular adversary proceeding, he must provide

either a proposed amended complaint or a proffer of proposed allegations relevant to the

extraterritoriality issue.  Proposed Order ¶¶ 4, 5.  As discussed with the Court at the September

17 conference, this is necessary to enable the Court to assess whether the proposed amendment

would be futile, such that dismissal of the subsequent transfer claims is required even if the

Trustee were permitted to amend.

## THE OBJECTIONABLE PROVISION OF THE PROPOSED ORDER

30.     In addition to the unobjectionable scheduling and procedural matters set forth in

the Proposed Order, the Trustee has insisted on the inclusion of a provision that, for at least the

third time, improperly seeks to abrogate his confidentiality obligations under the governing

protective orders.

31.     In Paragraph 7 of the Proposed Order, the Trustee requests the following:

> The Trustee's use of information contained in Confidential Material
> produced by the Transferee Defendants or their affiliates subject to the Litigation
> Protective Order (D.I. 4137) or any other applicable Protective Order or other
> confidentiality agreement to prepare the proffered amended complaints or the
> proffered allegations as to the Extraterritoriality Issue, as set forth in paragraphs
> 4-5 above, without publicly identifying the source of such information, shall not
> constitute a violation of the Litigation Protective Order, *provided*, that this
> paragraph does not affect the Trustee's obligations with respect to documents
> provided pursuant to an agreement that they would be used for settlement
> purposes only, and not in litigation.

32.     This paragraph would allow the Trustee to disclose in his proposed amended

complaints – *and to file those documents publicly* – literally all of the confidential information he

has received from parties such as UBS – which is precisely what the existing protective orders

prohibit, and is one of the key protections relied upon by UBS in agreeing to produce

confidential information in the first place.

33.     The only fig leaf of protection that the Proposed Order offers in exchange is that

the Trustee will not identify the "source" of the confidential information that he discloses.  That,

of course, is no protection at all.  If the Trustee were revealing the secret formula for Coke, it

would provide no comfort to Coca-Cola that the Trustee agreed not to reveal that the formula

came from documents produced by Coca-Cola.  It likewise provides no comfort to UBS that the

Trustee may reveal UBS's confidential and proprietary information without identifying UBS as

the source of that information.  The net result is the same:  Information that is designated as

confidential will become public, to the detriment of UBS and other parties who were counting on

the Trustee's promises and the Court's orders requiring the Trustee to maintain the information

as confidential and to file it under seal if submitting it to the Court.

34.    The Trustee offers absolutely no justification for his request to sweep away the

protections promised to UBS and others.[1]  In conferring about the terms of the Proposed Order,

the only explanation offered by the Trustee's counsel was that certain unidentified parties had

allegedly abused the confidentiality provisions.  That possibility, of course, was anticipated by

the Initial Protective Order and the Litigation Protective Order, each of which sets forth

procedures for resolving disputes over the designation of material as confidential.  *See* Initial

Protective Order ¶ 8; Litigation Protective Order ¶ 9.  In any event, even if the Trustee's gripes

about over-designation were credited, they do not justify the sweeping request for permission to

disclose any and all Confidential Material from any and all producing parties.

---

[1] In part, this is due to the Trustee's decision to proceed by Notice of Presentment, rather than by noticed motion.  That procedure was improper insofar as the Trustee seeks substantive modification of the governing protective orders, and because the Trustee's counsel knew that UBS would be objecting to the terms of Paragraph 7.  *See* Litigation Protective Order ¶ 20 (permitting any party "to seek modification of this Order" "*by motion* or stipulation") (emphasis added); Local Rule 9074-1(c) (allowing notice of presentment only where specified motions are anticipated to be uncontested).  When the Trustee has, in the past, sought to modify the governing protective orders, he at least properly proceeded by noticed motion.  UBS reserves its right to object to or respond to any evidence that the Trustee may seek to submit in response to this Limited Objection, insofar as it could have been submitted by the Trustee along with a notice of motion.

**THE TRUSTEE HAS NOT MET, AND CANNOT MEET,
THE LEGAL STANDARD FOR MODIFYING
THE EXISTING PROTECTIVE ORDERS**

35.     "In the Second Circuit, a party seeking to modify a protective order must make a

showing of 'some extraordinary circumstance or compelling need.'" *In re Almatis B.V.*, No. 10-

12308 (MG), 2010 WL 4877868, at *6 (Bankr. S.D.N.Y. Nov. 24, 2010) (quoting *Med.*

*Diagnostic Imaging, PLLC v. Carecore Nat'l, LLC*, Nos. 06 Civ. 7764 (CS)(THK), 06 Civ.

13516 (VM) (THK), 2009 WL 2135294, at *1 (S.D.N.Y. July 16, 2009)).  "[I]f previously-

entered protective orders have no presumptive entitlement to remain in force, parties would

resort less often to the judicial system for fear that such orders would be readily set aside in the

future." *SEC v. TheStreet.com*, 273 F.3d 222, 229-30 (2d Cir. 2001) (citing *Seattle Times Co. v.*

*Rhinehart*, 467 U.S. 20, 35-36 (1984)).

36.     It is, moreover, "presumptively unfair for courts to modify protective orders

which assure confidentiality and upon which the parties have reasonably relied." *AT&T Corp. v.*

*Sprint Corp.*, 407 F.3d 560, 562 (2d Cir. 2005) (internal quotation omitted).  In cases such as

this, "the mere fact th[at] information was disclosed pursuant to a protective order suggests that

reliance can be presumed." *In re Ionosphere Clubs, Inc.*, 156 B.R. 414, 434 (S.D.N.Y. 1993).

37.     Here, the Trustee's request for modification of the protective orders presents just

such a circumstance.  UBS and many other parties have produced information to the Trustee

subject to, and in reliance on, the terms of the Initial Protective Order, the Litigation Protective

Order and/or the individual confidentiality agreements, which the Trustee and this Court

expressly provided would remain valid and in effect until the end of this proceeding (at which

point the information produced would be returned, destroyed, or otherwise secured against

further dissemination).  UBS reasonably and justifiably expected that the Trustee would honor

his explicit agreement to those confidentiality protections, which limited disclosure of

confidential information and required that any filing with the Court disclosing such information

be made under seal.  In agreeing to strictly protect confidentiality, the Trustee was able to obtain

documents and information that he would otherwise have been unable to obtain, or that he might

have obtained only after extensive litigation and passage of time.

38.     Having greatly benefitted from his promises of confidentiality that were

memorialized in Court orders, the Trustee now – for at least the third time – seeks retroactively

to negate the protections that UBS and others counted on, without making any showing of

"compelling need" or "extraordinary circumstance" as to why the protections of the existing

protective orders should be modified.

39.     It is surely not enough that the Trustee may find it cumbersome to redact any

confidential information contained in his public filings or that it might be easier to file

documents without the need for sealing.  Similar reasoning has been rejected as insufficient to

overcome the existing terms of a protective order.  *See, e.g.*, *Med. Diagnostic Imaging*, 2009 WL

2135294, at *2 ("the need for efficiency . . . is hardly an extraordinary or compelling

circumstance"); *Maryland Cas. Co. v. W.R. Grace & Co.*, 1994 WL 419787, at *3 (S.D.N.Y.

Aug. 10, 1994) ("Although fostering judicial economy and avoiding duplicative discovery are

laudable goals[,] . . . they hardly amount to extraordinary circumstances or compelling need.");

*cf. Martindell v. Int'l Tel. & Tel. Corp.*, 594 F.2d 291, 296 (2d Cir. 1979) (a protective order

should not be modified "merely to accommodate the Government's desire to inspect protected

testimony for possible use in a criminal investigation").  Judge Rakoff, in fact, has rejected this

Trustee's complaints of administrative burdens resulting from protective orders in similar

circumstances.  *See Picard v. Katz*, No. 11 Civ. 3605 (JSR), 2011 WL 5022923, at *2 (S.D.N.Y.

Oct. 19, 2011) ("To be sure, when you have multiple litigations, problems of the sort the Trustee

hypothesizes may occasionally arise, but experience shows that, in practice, they are easily dealt with.").

40.     An effort to make litigation more efficient, moreover, was precisely the reason offered by the Trustee in his prior efforts to modify the governing confidentiality provisions. *See* February 2011 Motion ¶ 9 ("In broad terms, the Litigation Protective Order seeks to facilitate discovery and litigation, and ease the burden of the litigation on the Court and the parties…"); August 2011 Motion ¶ 16 (complaining that the provisions of the Litigation Protective Order created a "burdensome and time-consuming process" with "enormous costs and administrative burdens"). The Trustee's prior efforts resulted in the agreed-upon Litigation Protective Order and limited modifications thereof, which expressly *preserved* the existing confidentiality agreements among the parties and continued to require the Trustee to file any Confidential Material under seal. Having reached those compromises, the Trustee should not be permitted to retrade his prior deals after the fact by making yet another application to the Court seeking to renege on his promises.

41.     Similarly, the possibility that some parties have over-designated documents as confidential is not sufficient justification for discarding all of the protections promised to UBS and other producing parties over all confidential information. If the Trustee wishes to use information in his proposed amended complaints that he believes was improperly designated as confidential, the Litigation Protective Order provides procedures for resolving such disputes. *See, e.g.*, *In re Methyl Tertiary Butyl Ether Prods. Liability Litig.*, MDL No. 1358 (SAS), 2014 WL 4363832, at *3 (S.D.N.Y. Sept. 3, 2014) (declining to order "blanket declassification" of confidential documents where "Plaintiffs have refused to comply with the relevant declassification provisions" of the governing protective order). UBS remains willing to

negotiate with the Trustee in the context of any particular information designated as confidential, and it is fairer and more efficient to address any dispute in the context of concrete information that can, if necessary, be reviewed by the Court *in camera*.

42.    The fact that the Trustee himself sponsored the terms of the Initial Protective Order and the Litigation Protective Order is ample enough reason to deny the Trustee's request for modifications. *See Ionosphere*, 156 B.R. at 431 ("As a party to the stipulations which became the basis of the Protective Orders, ALPA cannot now object to the Protective Orders."). Given that the Litigation Protective Order and the Initial Protective Order facilitated the Trustee's investigation by giving him access to information that otherwise would not have been produced, the Trustee simply should not be able to change the rules that he himself set.

43.    Even if there were any reason for this Court to find a basis for relieving this Trustee of his own agreements, the precedent of such a move would negatively impact future production negotiations with similarly situated trustees. Protective orders serve an important purpose. *See Martindell*, 594 F.2d at 295 (noting that a "vital function of a protective order . . . is to secure the just, speedy, and inexpensive determination of civil disputes by encouraging full disclosure of all evidence that might be conceivably relevant" (citation and internal quotation omitted)); *Med. Diagnostic Imaging*, 2009 WL 2135294, at *1 ("Protective orders facilitate the disclosure of all relevant evidence, encourage the provision of testimony that might otherwise be withheld, and facilitate the settlement of litigation."). Third parties need assurance that agreements entered by SIPA or bankruptcy trustees can *actually* be relied upon. Otherwise, parties with information sought by such trustees will simply refuse production in the first place, thereby preventing trustees from getting evidence they seek or, at a minimum, greatly slowing down the speed of production and increasing the cost of obtaining compliance with subpoenas

and other requests for information.  This Court should not accommodate this Trustee's short-term convenience – relieving him from obligations that he specifically agreed to – at the expense of long-term effectiveness for future trustees.  This Trustee has now twice consented to this Court entering protective orders promising that "[t]his Order shall remain in full force and effect until further order of this Court *at the close of* Adv. Proc. No. 08-01789," with further protections to be addressed at that time.  Initial Protective Order ¶ 28 (emphasis added); Litigation Protective Order ¶ 20 (emphasis added).  This Court should deny the Trustee's latest attempt to upset the reasonable expectations of third parties such as UBS.

## CONCLUSION

For the foregoing reasons, this Court should decline to sign the Proposed Order unless Paragraph 7 thereof is stricken.

Dated: New York, New York
        November 3, 2014

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

/s/ Marshall R. King
Marshall R. King
mking@gibsondunn.com
Gabriel Herrmann
gherrmann@gibsondunn.com

200 Park Avenue
New York, New York 10166
Telephone:  (212) 351-4000
Facsimile:  (212) 351-4035

*Attorneys for UBS AG, UBS (Luxembourg) SA, UBS Fund Services (Luxembourg) SA, and UBS Third Party Management Company SA*

# EXHIBIT A

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>        Plaintiff-Applicant,<br><br>        v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>        Defendant. | Adv. Pro. No. 08-01789 (BRL)<br><br>SIPA Liquidation<br><br>(Substantively Consolidated)<br><br>**PROTECTIVE ORDER** |
| In re:<br><br>BERNARD L. MADOFF,<br><br>        Debtor. | |

**IT HEREBY IS ORDERED THAT,** the following Protective Order shall govern the disclosure of confidential information in this action and related adversary proceedings (the "Action"):

1.    This Protective Order (hereinafter, the "Order") shall govern all materials produced in this Action whether furnished by a party or third party regardless of whether produced informally or pursuant to a formal discovery request (a) which have been or subsequent hereto shall be designated by the producing party as comprising or containing **CONFIDENTIAL** Material, as defined below, which the producing party does not wish to become known to the public generally or otherwise disseminated, or (b) which are deemed hereby to be **CONFIDENTIAL** Material.  Control and dissemination of all discovery materials covered by the Order shall be the responsibility of the attorneys of record.

2.      As used herein, "**CONFIDENTIAL** Material" shall mean all material designated as **CONFIDENTIAL** if (a) in the good faith judgment of the party designating the material as **CONFIDENTIAL** such material contains proprietary business information, personal financial information, personal identifying information, or other information the disclosure of which would breach a legal or contractual obligation or (b) otherwise is subject to protection under section 107(b) or (c) of the United States Bankruptcy Code, Bankruptcy Rule 9018 and/or other applicable law.   **CONFIDENTIAL** Material may include any type or classification of information which is so designated by the producing party in accordance with the provisions of this Order, or is otherwise deemed **CONFIDENTIAL** Material hereby, whether it be a document, information contained in a document, information revealed during a deposition or Bankruptcy Rule 2004 examination, information revealed in an interrogatory answer or any Documents (as defined by Local Bankruptcy Rule 7026-1) or portions of any of them, to the extent that they reveal information designated by the party producing such information as **CONFIDENTIAL** under the terms of this Order.   A party may designate any documents, testimony, and other information furnished or disclosed to another party or its counsel during discovery or trial as **CONFIDENTIAL** in accordance with this Order.

3.      All designations of material as **CONFIDENTIAL** Material shall be made in good faith and not for the purpose of delaying or obstructing the ability of any other party to investigate the facts of this controversy or to prepare for a hearing.   Excessive and unreasonable designations of **CONFIDENTIAL** Material may be considered by the Court as equivalent to a motion for a protective order and subject to possible sanctions, including attorney's fees to the receiving party who successfully obtained removal of the designations.   Notwithstanding the prior sentence or anything else in this Order, in order to protect BLMIS investors' rights to

financial privacy and shield their personally identifiable information from disclosure (a) all documents and other information in the Trustee's productions will be marked **CONFIDENTIAL** and (b) all documents and other material produced by a bank or other financial institution which contains **CONFIDENTIAL** Account Material (as defined below) shall be deemed **CONFIDENTIAL**.    If any receiving party seeks to remove a **CONFIDENTIAL** designation from any material, that party shall follow the procedures set forth in paragraph 8 below.

4.    If any **CONFIDENTIAL** Material is filed with the Office of the Clerk of the Court, it shall not be disclosed except as provided by this Order.

5.    **CONFIDENTIAL** Material shall not be given, shown, made available or communicated in any way to any person or entity other than the following:

a.    The Court, Court personnel assisting the Court, and stenographers or other persons involved in taking or transcribing testimony in this Action;

b.    The parties, officers and employees of a party with responsibility for the party's participation in an Action, counsel representing the parties, and their litigation assistants, paralegals, secretarial or other clerical personnel and Agents, as defined below;

c.    As used herein, "Agents" include consultants, experts, litigation support services and other people or entities retained by a party or a party's counsel for the purpose of assisting that party or counsel in this Action, and the principals, employees and contractors with which such Agents are associated;

d.      Authors or recipients of the designated **CONFIDENTIAL** Material;

e.      The Securities Investor Protection Corporation;

f.      A witness at any deposition or Bankruptcy Rule 2004 examination in the Action (including preparation for such deposition or Bankruptcy Rule 2004 examination), and such witness's counsel, provided that before providing any **CONFIDENTIAL** Material to any person or entity pursuant to this sub-paragraph, such person shall be provided with a copy of this Order, and shall thereafter be bound by this Order; to the extent the witness is covered by any other subsection to this paragraph, the provisions of this subsection shall not apply; and

g.      Such other persons or entities as the Court may order, or as may be agreed to by the parties.

6.      Third party discovery in this Action may involve disclosure of **CONFIDENTIAL** Material, which if designated in conformity with the provisions of this Order, shall be subject to the provisions herein and shall provide the non-party with all of the rights and obligations set forth herein.

7.      In the event that a producing party inadvertently fails to designate **CONFIDENTIAL** Material as **CONFIDENTIAL** or incorrectly so designates **CONFIDENTIAL** Material, that party may make a late designation or change the designation by so notifying in writing all parties to whom the **CONFIDENTIAL** Material has been disclosed.  A party must serve such written notification at least thirty (30) days before the close of discovery in a particular adversary proceeding.  In such event, the receiving parties shall take

reasonable steps to ensure that the **CONFIDENTIAL** Material is thereafter treated in accordance with the designation.  Late designation shall not be deemed a waiver of the confidential status of the late designated **CONFIDENTIAL** Material.  No person or party shall incur any liability hereunder with respect to disclosure that occurred prior to the receipt of written notice of belated designation, provided, however, that such person or party, upon receipt of such written notice of belated designation, must make all reasonable efforts to obtain the return of and/or limit the dissemination of any belatedly-designated **CONFIDENTIAL** Material.

8.      If a receiving party claims that **CONFIDENTIAL** Material should be disclosed notwithstanding the terms of the Order, or that any of the restrictions on disclosure or use should be reduced, modified or eliminated or that the designation was improperly applied, it shall attempt to reach agreement with the party that designated the **CONFIDENTIAL** Material.  If agreement cannot be reached promptly, the receiving party may, consistent with the Local Bankruptcy Rules of this Court, request an informal conference with the Court for relief within five (5) business days after said written notice of its disagreement.  In the event that the dispute has not been resolved in the informal conference and a motion is made, the receiving party may file the **CONFIDENTIAL** Material in question under seal for the Court's *in camera* inspection. In connection with any such motion, however, the party that produced the **CONFIDENTIAL** Material shall have the burden of demonstrating that **CONFIDENTIAL** Material is confidential and should continue to be protected as designated.

9.      The attorneys of record shall maintain a file of all undertakings (in substantially the form attached as Exhibit "A") signed by a representative of each law firm on behalf of the attorneys at such firm who have received access to **CONFIDENTIAL** Material.  Additionally, the attorneys of record shall maintain a file of undertakings signed by an authorized

representative of Agents retained by any party.  Said file shall be made available upon request for inspection and copying by any attorney of record, except as to non-testifying experts and consultants, absent good cause shown.  The failure of any person or entity to execute an undertaking shall not relieve any recipient of **CONFIDENTIAL** Material from compliance with the provisions of this Order.

10.    Counsel shall not disclose **CONFIDENTIAL** Material to a witness testifying at a deposition or Bankruptcy Rule 2004 examination or during the process of preparing that witness for a deposition or Bankruptcy Rule 2004 examination except in strict conformity with the provisions of this Order.  If, during the course of any deposition or Bankruptcy Rule 2004 examination, (a) an attorney of record for any party desires to make inquiry into **CONFIDENTIAL** Material, or (b) an attorney of record for a party asserts that an answer to a specific inquiry is subject to the foregoing designations, the attorney shall make such inquiry only in the presence of those persons authorized to have access to such **CONFIDENTIAL** Material.  Such testimony shall be considered **CONFIDENTIAL** Material, and the parties hereto shall treat it as subject to the provision for disclosure set forth herein.

11.    All testimony elicited during depositions or Bankruptcy Rule 2004 examinations shall be deemed **CONFIDENTIAL** and shall be treated in accordance with the provisions of this Order including, without limitation, paragraph 8.

12.    Any court reporter who transcribes testimony in this Action at a deposition or a Bankruptcy Rule 2004 examination shall be provided a copy of this Order and shall thereafter ensure that all **CONFIDENTIAL** Material is and shall remain confidential and shall not be disclosed except as provided under this Order and that copies of any transcript, reporter's notes or any other transcription records of any such testimony shall be retained in absolute

confidentiality and safekeeping by such court reporter or shall be delivered to an attorney of record or filed with the Court.

13.    No **CONFIDENTIAL** Material will be filed with the Court unless it is filed under seal.  The party desiring to file materials under seal may move for an order to file under seal or obtain a stipulation from the receiving party to file the material under seal.  Unless otherwise agreed to by counsel for the parties, to comply with this requirement, **CONFIDENTIAL** Material must be filed in sealed containers labeled with:  (1) the title to this action; (2) the general nature of the contents; (3) the words **CONFIDENTIAL**; and (4) a statement substantially in the following form (or such other form or manner as the Clerk of the Court shall require):

> The contents hereof include confidential information filed in this case by [name of party] in accordance with a Protective Order entered in this case on [date]. This envelope or container is not to be opened nor are the contents hereof to be displayed or revealed except by or at the direction of the Court, and shall be returned to [name of filing party] upon termination of all proceedings in this case. Counsel for the parties may open service copies of this envelope or container subject to the provisions of the Protective Order.

The materials so filed shall be impounded until thirty (30) days after the entry of final decree in Adv. Proc. No. 08-01789, including any applicable appeal period, at which time the parties shall jointly communicate with the Clerk's Office about retrieving such materials from the Court.

14.    The designation by counsel for the producing party of **CONFIDENTIAL** Material is intended solely to facilitate the preparation and trial of this case, and such designation shall not be construed in any way as an admission or agreement by the non-designating party that the designated disclosure constitutes or contains any **CONFIDENTIAL** Material.  Neither the taking of nor the failure to take any action to enforce the provisions of this Order shall constitute a waiver of any claim or defense in the trial of this Action or any other action, including, but not

limited to, the claim or defense that any such information is or is not confidential, secret or proprietary. The procedures set forth herein shall not affect the rights of the parties or any other person to object to discovery on any permissible grounds, nor shall they relieve a party or other person of the necessity of proper response to discovery devices.

15. In the event anyone shall inadvertently disclose **CONFIDENTIAL** Material to another party or third party not otherwise permitted to receive such **CONFIDENTIAL** Material, the party making the inadvertent disclosure shall, upon learning of the disclosure:

  a. Promptly notify the person or entity to whom the disclosure was made that the disclosure contains **CONFIDENTIAL** Material protected by this Order;

  b. Promptly make all reasonable and necessary efforts to obtain the return of and preclude dissemination or use of the **CONFIDENTIAL** Material by the person or entity to whom disclosure was inadvertently made; and

  c. Promptly notify the producing party of the identity of the person or entity to whom the disclosure was made, the circumstances surrounding the disclosure, and the steps that have been taken and will be taken to ensure against further dissemination or use of the **CONFIDENTIAL** Material.

16. Nothing contained in this Order shall preclude, or be deemed to preclude, any party from asserting the attorney-client or other privilege and/or work product protection as to any document or other material.

17. The inadvertent production or disclosure of any document or other material (the "Inadvertent Production") otherwise protected by the attorney-client privilege, work product

protection or a joint defense/common interest privilege shall not constitute or be deemed as a waiver or forfeiture of any such privilege or immunity. If, after learning of the Inadvertent Production, the producing party wishes to assert its privilege or protection, it shall promptly send to the receiving party a written request for return of the Inadvertent Production. Notwithstanding the procedures outlined in (a) – (d) below, within five (5) business days of receiving such a request, the receiving party shall return the Inadvertent Production to the producing party, shall destroy all copies that it may have made of the Inadvertent Production, and shall not utilize the information contained in the Inadvertent Production for any purpose. If the receiving party produced the Inadvertent Production to any other party, person or entity, it shall give notice to such party, person or entity of the Inadvertent Production and such party or person shall be subject to the provisions of this Order.

a.      If the receiving party wishes to contest that the Inadvertent Production is protected by the attorney-client privilege, work product protection or a joint defense/common interest privilege, the receiving party shall so notify the producing party in writing;

b.      Within five (5) business days after receiving such notification, the producing party shall provide to the receiving party, a description of the basis for the claim of privilege or immunity for the Inadvertent Production;

c.      Within ten (10) business days after receiving such description, the receiving party may file under seal a motion to compel production of the Inadvertent Production, the protection of which is still disputed. If such a motion is filed, the producing party shall have the burden of proving that

the Inadvertent Production in dispute is protected by attorney-client privilege, work product immunity or a joint defense/common interest privilege. Pending the ruling on such motion, the receiving party may not utilize the Inadvertent Production for any purpose;

d.      With respect to documents and other work product subsequently generated by the receiving party, which derivative documents contain information derived from such Inadvertent Production (the "Derivative Documents"), if the receiving party does not notify the producing party that the receiving party disputes the claims of attorney-client privilege or work-product immunity with respect to the Inadvertent Production, the receiving party shall either destroy such Derivative Documents or redact from them all such derivative privilege or work-product information in a manner such that the derivative information cannot in any way be retrieved or reproduced.

18.      The party that made the **CONFIDENTIAL** Material designation may agree at any time that some or all of the restrictions applicable to said **CONFIDENTIAL** Material may be reduced, modified or eliminated; provided, however, that to the extent that any party seeks to reduce, modify or eliminate the restrictions on **CONFIDENTIAL** Account Material (as defined below), it may only do so upon further Court Order or with the written consent of the customer to whom such **CONFIDENTIAL** Account Material relates. "**CONFIDENTIAL** Account Material" shall mean **CONFIDENTIAL** Material that relates to a customer's particular investments with and accounts at BLMIS including account statements to the extent that it

contains identifying information about the customer (other than a customer's BLMIS account number).

19.     If the Trustee receives a discovery request or subpoena requiring him to produce **CONFIDENTIAL** Account Material to anyone other than the customer to whom such **CONFIDENTIAL** Account Material relates, the Trustee shall not produce such **CONFIDENTIAL** Account Material absent the consent of the customer(s) to whom such **CONFIDENTIAL** Account Material relates or upon further order of the Court; <u>provided, however</u>, that nothing in this paragraph or paragraph 18 shall prevent the Trustee from disclosing **CONFIDENTIAL** Account Material of one customer to another in connection with (a) the determination of claims and (b) the investigation of account transfers between customer accounts to enable the Trustee to make claims determinations.

20.     Nothing in this Order (but subject to the requirements of paragraph 25 hereof to the extent that **CONFIDENTIAL** Material produced in one adversary proceeding is to be used in another adversary proceeding or other proceeding) shall preclude any party from using **CONFIDENTIAL** Material at any hearing in this Action.  If any party believes that any such **CONFIDENTIAL** Material to be used at a hearing requires any kind of protective treatment under the provisions of this Order, it shall apply to the Court for such treatment, and the Court will consider and determine each such request except **CONFIDENTIAL** Material which has already been sealed.

21.     The furnishing of any particular document or other material, whether or not it is designated as **CONFIDENTIAL** Material, shall not constitute, or be deemed to constitute, a waiver of any attorney-client or other privilege or any work product protection as to any other document or other material.

22.     This Order is without prejudice to the rights of any party to seek modification of this Order from the Court with respect to any specific **CONFIDENTIAL** Material.  Designation of **CONFIDENTIAL** Material by a party conveys no *prima facie* or presumptive effect of entitlement to protection in case of dispute before the Court on a Motion by the opposing party to remove or modify such designation.

23.     The restrictions in this Order on the disclosure, use, or handling of **CONFIDENTIAL** Material shall not apply if (a) the document or other material is available to the public through means other than production by the producing party; (b) the document or other material was lawfully known to or independently developed by the receiving party; (c) the document or other material was received by the receiving party without restriction from a third party having the right to make such a disclosure (an "Unrestricted Disclosure"); or (d) the document or other material is required to be produced to the receiving party by a court of competent jurisdiction (to the extent such court permits).   The foregoing provision is not intended to undermine or eliminate the protections afforded to **CONFIDENTIAL** Material and **CONFIDENTIAL** Account Material contained in paragraph 3 hereof.

24.     In the event that:

   a.     A person or entity receives a notice of deposition, interrogatory, request for documents, subpoena (including, without limitation, a Bankruptcy Rule 2004 subpoena), civil investigative demand, or similar request to disclose any of the **CONFIDENTIAL** Material, and the person or entity reasonably believes, after consultation with counsel, that it is legally required to disclose any of the **CONFIDENTIAL** Material to a third

party, including a governmental, or other regulatory body or agency or self-regulatory organization; or

b.    The Trustee receives a request with which he wishes to comply from a regulatory or enforcement authority investigating matters relating directly or indirectly to Bernard L. Madoff Investment Securities LLC and/or Bernard L. Madoff;

the person or entity shall provide to the person or entity that produced the **CONFIDENTIAL** Material, the Trustee and the customer to whom the **CONFIDENTIAL** Material relates, at least ten (10) business days' notice before providing or producing **CONFIDENTIAL** Material pursuant to any such request or requirement so that any of those parties may seek a protective order or other appropriate remedy.  In such a case, the parties shall reasonably cooperate in any action to obtain a protective order or other appropriate remedy or to obtain reliable assurance that confidential treatment consistent with this Order shall be accorded to any disclosed **CONFIDENTIAL** Material.  In the event that any party does not file a motion for a protective order within ten (10) business days of receiving notice of a request or requirement as set forth above, or it fails to obtain a protective order or other appropriate remedy after being given notice of a request or requirement as set forth above, the party receiving the request or subject to the requirement may comply with the request or requirement to disclose and produce **CONFIDENTIAL** Material.   Any party receiving **CONFIDENTIAL** Material under this paragraph shall be bound by the provisions of this Order including signing an undertaking as described in paragraph 9 of this Order.

25.    In the event that

a.    A party intends to disclose **CONFIDENTIAL** Material produced during the course of discovery in one adversary proceeding in this Action in another adversary proceeding to which the producing party is not a party or in another proceeding in the Action; or

b.    A party intends to disclose **CONFIDENTIAL** Material in a lawsuit separate and apart from this Action;

the party shall provide to the person or entity that produced the **CONFIDENTIAL** Material, the Trustee and the customer to whom the **CONFIDENTIAL** Material relates at least ten (10) business days' notice before disclosing **CONFIDENTIAL** Material.  If an objection is received within such ten (10) business day period, there shall be no disclosure of such **CONFIDENTIAL** Material absent further order of the Court on notice to the party intending to disclose **CONFIDENTIAL** Material, to the person or entity that produced the **CONFIDENTIAL** Material, the Trustee and the customer to whom the **CONFIDENTIAL** Material relates.

26.    Regardless of whether a document or other material is designated **CONFIDENTIAL** Material, and in addition to the restrictions on use of **CONFIDENTIAL** Material contained in this Order, all parties shall comply with all applicable laws and regulations related to the protection of Social Security numbers, financial institution account numbers and records, and any other "personally identifiable information," as defined by applicable laws or regulations.

27.    Nothing in this Order shall be interpreted to terminate, supersede, limit, enhance or otherwise modify the terms and conditions of any other agreement previously entered into between the Trustee and any other party regarding the confidentiality or non-disclosure of documents or discovery materials.  To the extent a producing party has previously entered into a

confidentiality agreement with the Trustee governing the production of that producing party's documents or other material in this Action, the Trustee and the producing party may agree that this Order shall supersede any such prior agreement.

28.     This Order shall remain in full force and effect until further order of this Court at the close of Adv. Proc. No. 08-01789.  In conjunction with the Trustee filing a motion under section 350 of the Bankruptcy Code to close Adv. Proc. No. 08-01789, the Trustee shall file a motion which will set forth the treatment of **CONFIDENTIAL** Material in the Trustee's possession which treatment shall include the Trustee's good faith effort to (a) destroy it, (b) return it to the person or entity who provided it, and/or (c) appropriately secure it in accordance with industry standards at the time.

29.     In the event anyone shall violate, or threaten to violate, any terms of this Order, any party having standing may apply to this Court, consistent with the Local Bankruptcy Rules of this Court, to obtain injunctive relief against any such person or entity.

**SO ORDERED:**

DATED:  New York, New York
        February 16, 2010

/s/Burton R. Lifland_____
HON. BURTON R. LIFLAND
UNITED STATES BANKRUPTCY JUDGE

- 15 -

**EXHIBIT "A"**

An Equivalent Declaration May be Substituted for this Undertaking

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (BRL) |
| Plaintiff-Applicant, | SIPA Liquidation |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | **UNDERTAKING AND CONSENT TO BE BOUND** |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |

I declare that:

1.    My address is  _____

_____, and the name and address of my present employer is_____

_____ .

2.    My present occupation and job description is _____

_____ .

3.    I have received a copy of the Protective Order (the "Protective Order") in this

action.

4.    I have carefully read and understand the provisions of the Protective Order, am

authorized to bind _____, which agrees to be bound by the Protective Order.

Specifically _____ agrees that its employees, agents or staff will not use or

disclose to anyone any of the contents of any **CONFIDENTIAL** Material received under the protection of the Protective Order in violation thereof. _____ will never use any **CONFIDENTIAL** Material, directly or indirectly, for any purpose other than for purposes of this litigation, except as otherwise permitted by the Protective Order.

5.      _____ understands that its employees, agents and staff are to retain all copies of any of the materials that they receive which have been so designated as **CONFIDENTIAL** in a container, cabinet, drawer, room or other safe place in a manner consistent with the Protective Order and that all copies are to remain in my custody until they have completed their assigned or legal duties.

6.      _____ consents to the exercise of personal jurisdiction by this Court in connection with this Declaration and its obligations under the Protective Order.

7.      I declare under penalty of perjury under the laws of the State of New York that the foregoing is true and correct.


_____
Name

_____
Date

## **EXHIBIT B**

# GIBSON DUNN

Gibson, Dunn & Crutcher LLP

200 Park Avenue
New York, NY 10166-0193
Tel 212.351.4000
www.gibsondunn.com

Marshall R. King
Direct: 212.351.3905
Fax: 212.351.5243
MKing@gibsondunn.com

Client: T 93292-00083

November 8, 2010

<u>BY HAND</u>

Deborah H. Renner, Esq.
Benjamin D. Pergament, Esq.
Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111

Re:  *Securities Investor Protection Corp. v. Bernard L. Madoff Investment Securities LLC*,
     Adv. Pro. No. 08-10789 BRL

Dear Deborah and Ben:

I am enclosing a voluntary production of documents by UBS AG, pursuant to paragraphs 4 and 5 of my October 14, 2010 letter.  The documents bear bates numbers UBS 000352 through UBS 000449.  This production is being made subject to the following conditions:

1.  This production is without waiver of any objections that UBS AG or other UBS entities may have to the subpoenas dated June 12, 2009 and December 15, 2009, and the fact of this production shall not be used by the Trustee against UBS AG or any other UBS entity in connection with any efforts to obtain additional documents.

2.  If any document or information subject to a claim of attorney-client privilege, attorney work product, privacy rights, banking secrecy, or any other ground upon which production of such document or information should not be made is nevertheless inadvertently produced, such production shall in no way prejudice or otherwise constitute a waiver of, or estoppel as to, any claim of privilege, work product, privacy rights, banking secrecy, or other ground for withholding production to which UBS AG would otherwise be entitled.  If a claim of inadvertent production is made with respect to any document or information then in the custody of the Trustee, the Trustee shall promptly return to UBS AG such document, and such document and information contained therein shall not be used for any purpose until further order of a court of appropriate jurisdiction, or further agreement of the parties.

3.  The documents contained in this production are designated as CONFIDENTIAL pursuant to the Protective Order dated February 16, 2010.

If any of these conditions are not acceptable to you, do not access the documents contained on the enclosed disk, and promptly return it to us.

# GIBSON DUNN

Deborah H. Renner, Esq.
Benjamin D. Pergament, Esq.
November 8, 2010
Page 2

Please call me with any questions.

Very truly yours,

Marshall R. King

# **EXHIBIT C**

# GIBSON DUNN

Gibson, Dunn & Crutcher LLP

200 Park Avenue
New York, NY 10166-0193
Tel 212.351.4000
www.gibsondunn.com

Direct: +1 212.351.3905
Fax: +1 212.351.5243
MKing@gibsondunn.com

May 17, 2011

VIA ELECTRONIC MAIL

Judy A. Selby, Esq.
Baker & Hostetler LLP
45 Rockefeller Plaza
11th Floor
New York, NY 10111

Re:    Securities Investor Protection Corporation v. Bernard L. Madoff Investment
Securities LLC, Adv. Pro. No. 08-10789 BRL

Dear Judy:

I write to confirm our agreement concerning the terms that will govern prior productions by
UBS AG, UBS (Luxembourg) SA, UBS Fund Services (Luxembourg) SA, and UBS Third
Party Management Company SA (together, "UBS").

By signing below, you agree, on behalf of the Trustee, that:

1.    The productions made by UBS were made pursuant to the terms of the
Protective Order dated February 16, 2010.

2.    As a result, UBS's past productions fall within the terms of what will be
Paragraph 19 of Trustee's proposed Litigation Protective Order[1] and, should

---

[1]For the avoidance of doubt, that paragraph provides:

All designations of material as **CONFIDENTIAL** made after the date
of the entry of this Order shall be controlled by this Order.  To the extent that
a producing party and a receiving party have entered into an agreement
regarding the confidentiality or non-disclosure of documents or discovery
materials, such agreements shall only apply to documents or materials
produced prior to entry of this Order.  To the extent a producing party has
previously entered into a confidentiality agreement with the Trustee
governing the production of that producing party's documents or other
materials, the Trustee and the producing party may agree that this Order shall
supersede any such prior agreement.

Brussels · Century City · Dallas · Denver · Dubai · Hong Kong · London · Los Angeles · Munich · New York
Orange County · Palo Alto · Paris · San Francisco · São Paulo · Singapore · Washington, D.C.

# GIBSON DUNN

Judy A. Selby, Esq.
May 17, 2011
Page 2

Judge Lifland enter the Trustee's proposed order, the confidentiality of the documents previously produced by UBS will continue to be governed by the terms of the February 16, 2010 Protective Order.

Please indicate your agreement by signing below and returning a copy to me.

Very truly yours,

Marshall R. King

AGREED:

_____
Judy A. Selby
Counsel for the Trustee

101079027.1

# **EXHIBIT D**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (BRL) |
| Plaintiff-Applicant, | SIPA Liquidation |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | **LITIGATION PROTECTIVE ORDER** |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |

**IT HEREBY IS ORDERED THAT,** this Litigation Protective Order shall govern the disclosure of confidential information in Adversary Proceeding No. 08-01789 (the "Main Action") and adversary proceedings related thereto (each of which is defined as an "Individual Adversary Proceeding," which defined term shall not include Adversary Proceeding No. 08-01789), (together with the Main Action, the "Actions").

**DEFINITIONS:**

1.      This Litigation Protective Order (hereinafter, the "Order") shall govern only those materials produced in the Actions which have been or are deemed to comprise or contain **CONFIDENTIAL MATERIAL**, as defined below, whether furnished by a party named as a defendant in an adversary proceeding or a third party, regardless of whether produced voluntarily or pursuant to a formal discovery request.  Nothing in this Order shall preclude a producing party

from objecting to the production of information, and this Order has no bearing on the merits of any such objection.

2.    Such material produced in the Actions may only be designated as **CONFIDENTIAL** if:  (a) in the good faith judgment of the party designating the material as **CONFIDENTIAL** such material contains trade secret or other confidential research, development, or commercial information; personal identifying information; or other information the disclosure of which would breach a legal or contractual obligation or (b) otherwise is subject to protection under section 107(b) or (c) of the United States Bankruptcy Code, Bankruptcy Rules 9018 and 9037, and/or other applicable law.

3.    **CONFIDENTIAL MATERIAL** may include any type or classification of information which is so designated by the producing party in accordance with the provisions of this Order, or is otherwise deemed **CONFIDENTIAL MATERIAL** hereby, whether it be a document, information contained in a document, information revealed during a deposition or Bankruptcy Rule 2004 examination, information revealed in an interrogatory answer or any Documents (as defined by Local Bankruptcy Rule 7026-1) or portions of any of them, to the extent that they reveal information designated by the party producing such information as **CONFIDENTIAL** under the terms of this Order.

4.    The following will not be considered **CONFIDENTIAL MATERIAL:** (a) documents or other material available to the public through means other than production by the producing party; (b) documents or other material known to, or independently developed by, the receiving party; (c) documents or other material received by the receiving party without restriction from a third party; (d) documents or other material required to be produced to the receiving party by a court of competent jurisdiction (to the extent such court permits); and

(e) information sufficient to identify an individual or entity as a BLMIS customer or initial transferee of BLMIS, or as an immediate or mediate transferee of a BLMIS customer or initial transferee of BLMIS, information sufficient to identify BLMIS account numbers, amounts of withdrawals, redemptions, or transfers from and between BLMIS accounts, and immediate or mediate transfers from a BLMIS customer or initial transferee of BLMIS. The items listed in this paragraph shall not be treated as **CONFIDENTIAL MATERIAL** under the authority granted by this Order. However, nothing in this paragraph is intended as a ruling on the extent to which any party may claim that any particular information is **CONFIDENTIAL**, to object to the production of such information or to seek an additional protective order with respect to specific information.

### DESIGNATIONS OF CONFIDENTIAL MATERIAL:

5.       All designations of **CONFIDENTIAL MATERIAL** shall be made in good faith and not for the purpose of delaying or obstructing the ability of any other party to investigate the facts of this controversy or prepare for litigation. Excessive, overly broad and unreasonable designations of **CONFIDENTIAL MATERIAL** may be considered by the Court as equivalent to a motion for a protective order and subject to sanctions, including attorneys' fees.

6.       Counsel for the parties may designate portions of the transcript of a deposition or the transcript of an examination conducted pursuant to Bankruptcy Rule 2004 as **CONFIDENTIAL MATERIAL** on the record during the deposition or examination, or may make additional designations within ten (10) days after the mailing or delivery of a copy of the transcript of the testimony by the court reporter to counsel who requested a copy of the transcript. Within the ten-day period following such mailing or delivery of the transcript, any party present at the deposition may, by written notice served on the Trustee and other interested parties, designate all or any portion of the testimony as **CONFIDENTIAL MATERIAL**. The

right to make such designation shall be waived unless made before the end of the ten-day period.

Upon being informed that certain portions of a transcript are designated as **CONFIDENTIAL**

**MATERIAL**, each party must cause each copy in its custody, possession, or control to be so

marked immediately.  All designations of testimony as **CONFIDENTIAL MATERIAL** must

conform to the standards of paragraph 2 above, defining **CONFIDENTIAL MATERIAL,** and

are also subject to the limitations of paragraph 5, requiring, among other things, that designations

be made in good faith.

7.    In the event that a producing party inadvertently fails to designate

**CONFIDENTIAL MATERIAL** as **CONFIDENTIAL** or incorrectly designates

**CONFIDENTIAL MATERIAL**, that party may make a late designation or change the

designation by notifying in writing all parties to whom the **CONFIDENTIAL MATERIAL** has

been disclosed.  A party must serve such written notification at least thirty (30) days before the

close of discovery in a particular adversary proceeding.  In such event, the receiving parties shall

take reasonable steps to ensure that the **CONFIDENTIAL MATERIAL** is thereafter treated in

accordance with the designation.  Late designation in and of itself shall not be deemed a per se

waiver of the confidential status of the late-designated **CONFIDENTIAL MATERIAL.**

However, if a producing party has not adequately preserved the confidentiality of its documents

or testimony, the Court may find that a waiver has occurred.  No party shall incur any liability

hereunder with respect to disclosure that occurred prior to the receipt of written notice of belated

designation, provided, however, that such party, upon receipt of such written notice of belated

designation, makes all reasonable efforts to obtain the return of and/or limit the dissemination of

any belatedly-designated **CONFIDENTIAL MATERIAL**.

8.    The party that made the **CONFIDENTIAL MATERIAL** designation may determine at any time that some or all of the restrictions applicable to said **CONFIDENTIAL MATERIAL** may be reduced or eliminated and will notify the receiving party of any such determination as soon as practicable.

9.    If a receiving party claims that **CONFIDENTIAL MATERIAL** should be disclosed (including, without limitation, in an Individual Adversary Proceeding to which the producing party is not a party or separate and apart from the Actions) notwithstanding the terms of the Order, or that any of the restrictions on disclosure or use should be reduced, modified or eliminated or that the designation was improperly applied, it shall serve a notice requesting re-designation on the producing party.  Failure by the producing party to object to the notice within seven (7) business days will be deemed to be acquiescence to the request.  If the producing party objects to the re-designation, the receiving party or any party in interest in an Individual Adversary Proceeding may, consistent with the Local Bankruptcy Rules of this Court, request an informal conference with the Court for relief after receiving said written notice of its disagreement.  In the event that the dispute has not been resolved in the informal conference and a motion is made by the receiving party, the receiving party may file the **CONFIDENTIAL MATERIAL** in question under seal for the Court's *in camera* inspection.  In connection with any such motion, however, the party that produced the **CONFIDENTIAL MATERIAL** shall have the burden of demonstrating that it is confidential under the terms of this Order and should continue to be protected as designated.  Absent the entry of an order granting the motion, there shall be no disclosure of the **CONFIDENTIAL MATERIAL** at issue.

## **DISCLOSURES AND USE OF CONFIDENTIAL MATERIAL:**

10.    **CONFIDENTIAL MATERIAL** shall not be given, shown, made available or communicated in any way to any person or entity other than the following:

a.    The Court, Court personnel assisting the Court, and stenographers or other persons involved in taking or transcribing testimony in the Actions;

b.    The producing or receiving parties in the Individual Adversary Proceeding in which the **CONFIDENTIAL MATERIAL** was produced, officers and employees of the producing or receiving parties in the Individual Adversary Proceeding in which the **CONFIDENTIAL MATERIAL** was produced with responsibility for the parties' participation in that Individual Adversary Proceeding, counsel representing the producing or receiving parties in the Individual Adversary Proceeding in which the **CONFIDENTIAL MATERIAL** was produced and their litigation assistants, paralegals, secretarial or other clerical personnel and Agents, as defined below;

c.    As used herein, "Agents" include consultants, experts, litigation support services and other people or entities retained in an Individual Adversary Proceeding or designated by a producing or receiving party or a producing or receiving party's counsel in an Individual Adversary Proceeding for the purpose of assisting that party or counsel in the Actions, and the principals, employees and contractors with which such Agents are associated;

d.    Authors or recipients of the designated **CONFIDENTIAL MATERIAL**;

e.    The Securities Investor Protection Corporation;

f.    A witness at any deposition in the Actions or Rule 2004 examination, and such witness's counsel, provided that before providing any

**CONFIDENTIAL MATERIAL** to any witness or counsel pursuant to this sub-paragraph, (i) the party intending to disclose the **CONFIDENTIAL MATERIAL** (the "Noticing Party") shall make a good faith effort to provide notice of its intent to use the **CONFIDENTIAL MATERIAL** to the producing party and any party to whom the **CONFIDENTIAL MATERIAL** relates at least four (4) business days prior to the deposition, and in all instances shall provide such notice at least two (2) business days prior to the deposition; (ii) such notice shall include the name of the deponent to whom the Noticing Party intends to disclose the **CONFIDENTIAL MATERIAL**, the date and time of the deposition, and the bates range for all **CONFIDENTIAL MATERIAL** to be disclosed; (iii) if the producing party objects to the disclosure of the **CONFIDENTIAL MATERIAL**, the producing party must notify the Noticing Party in writing prior to the deposition and simultaneously request an informal conference with the Court, and the Noticing Party shall not be permitted to disclose the **CONFIDENTIAL MATERIAL** to any witness absent a court order or consent of the producing party; and (iv) all witnesses and their counsel shall be provided with a copy of this Order, and shall thereafter be bound by this Order.

Counsel taking the deposition or Rule 2004 examination shall designate all portions of the transcript relating to the **CONFIDENTIAL MATERIAL** as **CONFIDENTIAL**;

g.      Such other persons or entities as the Court may order, as may be agreed to by the producing or receiving parties, and

h.      As provided in paragraph 15(a).

11.    Nothing in this Order shall preclude any party from using **CONFIDENTIAL MATERIAL** in court proceedings or chambers conferences in the Actions.  If any producing or receiving party believes that any such **CONFIDENTIAL MATERIAL** to be used in court proceedings or chambers conferences requires any kind of protective treatment under the provisions of this Order, it shall apply to the Court for such treatment, and the Court will consider and determine each such request, except **CONFIDENTIAL MATERIAL** which has already been sealed shall continue to be treated as **CONFIDENTIAL** pending motion practice as described in paragraph 9 of this Order.

12.    In the event that:

a.      The Trustee or any other receiving party receives a notice of deposition, interrogatory, request for documents, subpoena (including, without limitation, a Bankruptcy Rule 2004 subpoena), civil investigative demand, or similar request to disclose any of the **CONFIDENTIAL MATERIAL**, or as necessary to comply with the applicable laws of foreign jurisdictions when the Trustee is litigating claims outside of the United States and the Trustee or receiving party reasonably believes that it is legally required to disclose any of the **CONFIDENTIAL MATERIAL** to a third party, including a governmental, or other regulatory body or agency or self-regulatory organization; or

b.    The Trustee receives a request with which he wishes to comply from a regulatory or enforcement authority investigating matters relating directly or indirectly to Bernard L. Madoff Investment Securities LLC and/or Bernard L. Madoff;

notice shall be provided to the producing party, the Trustee (where the Trustee is not making the production), and the customer to whom the **CONFIDENTIAL MATERIAL** relates, ten (10) business days' notice before providing or producing **CONFIDENTIAL MATERIAL** pursuant to any such request or requirement, so that any of those parties may seek a protective order or other appropriate remedy.  In such a case, the parties shall reasonably cooperate in any action to obtain a protective order or other appropriate remedy or to obtain reliable assurance that confidential treatment consistent with this Order shall be accorded to any disclosed **CONFIDENTIAL MATERIAL**.  In the event that any party does not file a motion for a protective order or other appropriate remedy within ten (10) business days of receiving notice of a request or requirement as set forth above, or it fails to obtain a protective order or other appropriate remedy after being given notice of a request or requirement as set forth above, the party receiving the request or subject to the requirement may comply with the request or requirement to disclose and produce **CONFIDENTIAL MATERIAL**.  Any party receiving **CONFIDENTIAL MATERIAL** under this paragraph shall be provided with a copy of this Order and shall be bound by it.

**INADVERTENT DISCLOSURES:**

13.     In the event anyone shall inadvertently disclose **CONFIDENTIAL MATERIAL** to another party or third party not otherwise permitted to receive such **CONFIDENTIAL MATERIAL**, the party making the inadvertent disclosure shall, upon learning of the disclosure:

      a.    Promptly notify the person or entity to whom the disclosure was made that the disclosure contains **CONFIDENTIAL MATERIAL** protected by this Order;

      b.    Promptly make all reasonable and necessary efforts to obtain the return of and preclude dissemination or use of the **CONFIDENTIAL MATERIAL** by the person or entity to whom disclosure was inadvertently made; and

      c.    Promptly notify the producing party of the identity of the person or entity to whom the disclosure was made, the circumstances surrounding the disclosure, and the steps that have been taken and will be taken to ensure against further dissemination or use of the **CONFIDENTIAL MATERIAL**.

14.     The inadvertent production or disclosure of any document or other material (the "Inadvertent Production") otherwise protected by the attorney-client privilege, work product protection or a joint defense/common interest privilege shall not constitute or be deemed as a waiver or forfeiture of any such privilege or immunity.  If, after learning of the Inadvertent Production, the producing party wishes to assert its privilege or protection, it shall promptly send to the receiving party a written request for return of the Inadvertent Production.  Notwithstanding the procedures outlined in (a) – (d) below, within five (5) business days of receiving such a request, the receiving party shall return the Inadvertent Production to the producing party, shall destroy all copies that it may have made of the Inadvertent Production, and shall not utilize the

information contained in the Inadvertent Production for any purpose. If the receiving party produced the Inadvertent Production to any other party, person or entity, it shall give notice to such party, person or entity of the Inadvertent Production and such party or person shall be subject to the provisions of this Order.

a.   If the receiving party wishes to contest that the Inadvertent Production is protected by the attorney-client privilege, work product protection or a joint defense/common interest privilege, the receiving party shall so notify the producing party in writing;

b.   Within five (5) business days after receiving such notification, the producing party shall provide to the receiving party, a description of the basis for the claim of privilege or immunity for the Inadvertent Production;

c.   Within ten (10) business days after receiving such description, the receiving party may file under seal a motion to compel production of the Inadvertent Production, the protection of which is still disputed. If such a motion is filed, the producing party shall have the burden of proving that the Inadvertent Production in dispute is protected by attorney-client privilege, work product immunity or a joint defense/common interest privilege. Pending the ruling on such motion, the receiving party may not utilize the Inadvertent Production for any purpose;

d.   With respect to documents and other work product subsequently generated by the receiving party, which derivative documents contain information derived from such Inadvertent Production (the "Derivative Documents"),

if the receiving party does not notify the producing party that the receiving party disputes the claims of attorney-client privilege or work-product immunity with respect to the Inadvertent Production, the receiving party shall either destroy such Derivative Documents or redact from them all such derivative privilege or work-product information in a manner such that the derivative information cannot in any way be retrieved or reproduced.

**FILING UNDER SEAL:**

15.    If any **CONFIDENTIAL MATERIAL** is filed with the Office of the Clerk of the Court:

a.    It shall not be disclosed except as provided by this Order and the Order Establishing Litigation Case Management Procedures for Avoidance Actions entered on November 10, 2010 ("Litigation Procedures Order").

b.    Except as provided in the Litigation Procedures Order, no **CONFIDENTIAL MATERIAL** will be filed with the Court unless it is filed under seal.  In such circumstance, the party desiring to file materials under seal may move for an order to file under seal or obtain a stipulation from the producing party to file the material under seal.  Unless otherwise agreed to by counsel for the parties, to comply with this requirement, **CONFIDENTIAL MATERIAL** must be filed in sealed containers labeled with:  (1) the title to the action; (2) the general nature of the contents; (3) the words **CONFIDENTIAL**; and (4) a statement substantially in the following form (or such other form or manner as the Clerk of the Court shall require):

The contents hereof include confidential information filed in this case by [name of party] in accordance with a Litigation Protective Order entered in this case on [date]. This envelope or container is not to be opened nor are the contents hereof to be displayed or revealed except by or at the direction of the Court, and shall be returned to [name of filing party] upon termination of all proceedings in this case. Counsel for the parties may open service copies of this envelope or container subject to the provisions of the Protective Order.

c.   The materials so filed shall be impounded until thirty (30) days after the entry of final decree in Adv. Proc. No. 08-01789, including any applicable appeal period, at which time the parties shall jointly communicate with the Clerk's Office about retrieving such materials from the Court.

## MISCELLANEOUS PROVISIONS:

16.   Regardless of whether a document or other material is designated **CONFIDENTIAL MATERIAL**, and in addition to the restrictions on use of **CONFIDENTIAL MATERIAL** contained in this Order, all parties shall comply with all applicable laws and regulations related to the protection of Social Security numbers, financial institution account numbers and records, and any other "personally identifiable information," as defined by applicable laws or regulations.

17.   Any court reporter who transcribes testimony in the Actions at a deposition or a Bankruptcy Rule 2004 examination shall be provided a copy of this Order and shall thereafter ensure that all **CONFIDENTIAL MATERIAL** is and shall remain confidential and shall not be disclosed except as provided under this Order and that copies of any transcript, reporter's notes or any other transcription records of any such testimony shall be retained in absolute confidentiality and safekeeping by such court reporter or shall be delivered to an attorney of record or filed with the Court.

18.    Each law firm representing a party shall maintain an undertaking (in substantially the form attached as Exhibit "1") signed by a representative of said law firm on behalf of the attorneys at such firm who have received access to **CONFIDENTIAL MATERIAL**. Additionally, the attorneys for a party shall maintain a file of undertakings signed by an authorized representative of Agents retained by any party.  Said file shall be made available upon request for inspection and copying by any attorney of record, except as to non-testifying experts and consultants, absent good cause shown.  The failure of any person or entity to execute an undertaking shall not relieve any recipient of **CONFIDENTIAL MATERIAL** from compliance with the provisions of this Order.

19.    All designations of material as **CONFIDENTIAL** made after the date of the entry of this Order shall be controlled by this Order.  To the extent that a producing party and a receiving party have entered into an agreement regarding the confidentiality or non-disclosure of documents or discovery materials, such agreements shall only apply to documents or materials produced prior to the entry of this Order.  To the extent a producing party has previously entered into a confidentiality agreement with the Trustee governing the production of that producing party's documents or other materials, the Trustee and the producing party may agree that this Order shall supersede any such prior agreement.

20.    This Order supersedes the Protective Order entered by this Court on February 16, 2010, and incorporates the modifications to that Order made by the Litigation Procedures Order. All productions and designations made under the superseded Protective Order are retained subject to the requirements and provisions of this Order regarding appropriateness of the designation, restrictions on over-designation and process for removing designations.  This Order shall remain in full force and effect until further order of this Court at the close of Adv. Proc. No.

08-01789.  This Order is without prejudice to the rights of any party by motion or stipulation with the Trustee to seek modification of this Order from the Court with respect to any specific **CONFIDENTIAL MATERIAL**.  In conjunction with the Trustee filing a motion under section 350 of the Bankruptcy Code to close Adv. Proc. No. 08-01789, the Trustee shall file a motion which will set forth the treatment of **CONFIDENTIAL MATERIAL** in the Trustee's possession which treatment shall include the Trustee's good faith effort to (a) destroy it, (b) return it to the person or entity who provided it, and/or (c) appropriately secure it in accordance with industry standards at the time.

21.    In the event anyone shall violate, or threaten to violate, any terms of this Order, any party having standing may apply to this Court, consistent with the Local Bankruptcy Rules of this Court, to obtain injunctive relief against any such person or entity.

DATED:  June 6, 2011                                                  **SO ORDERED:**
              New York, New York


                                                                                 /s/Burton R. Lifland_____
                                                                                 HON. BURTON R. LIFLAND
                                                                                 UNITED STATES BANKRUPTCY JUDGE

**EXHIBIT "1"**

An Equivalent Declaration May be Substituted for this Undertaking

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>      Plaintiff-Applicant,<br><br>      v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>      Defendant.<br>In re:<br><br>BERNARD L. MADOFF,<br><br>      Debtor. | Adv. Pro. No. 08-01789 (BRL)<br><br>SIPA Liquidation<br><br>(Substantively Consolidated)<br><br>**UNDERTAKING AND CONSENT TO BE BOUND** |

I declare that:

1.     My address is  _____

_____, and the name and address of my present employer is_____

_____ .

2.     My present occupation and job description is _____

_____ .

3.     I have received a copy of the Litigation Protective Order in this action.

4.     I have carefully read and understand the provisions of the Litigation Protective

Order, am authorized to bind _____, which agrees to be bound by the Litigation

Protective Order. Specifically _____ agrees that its employees, agents or

staff will not use or disclose to anyone any of the contents of any **CONFIDENTIAL**

**MATERIAL** received under the protection of the Litigation Protective Order in violation thereof. _____ will never use any **CONFIDENTIAL MATERIAL**, directly or indirectly, for any purpose other than for purposes of this litigation, except as otherwise permitted by the Litigation Protective Order.

5.    _____ understands that its employees, agents and staff are to retain all copies of any of the materials that they receive which have been so designated as **CONFIDENTIAL** in a container, cabinet, drawer, room or other safe place in a manner consistent with the Litigation Protective Order and that all copies are to remain in my custody until they have completed their assigned or legal duties.

6.    _____ consents to the exercise of personal jurisdiction by this Court in connection with this Declaration and its obligations under the Litigation Protective Order.

7.    I declare under penalty of perjury under the laws of the State of New York that the foregoing is true and correct.


_____
Name

_____
Date