Page 1

1    UNITED STATES BANKRUPTCY COURT

2    SOUTHERN DISTRICT OF NEW YORK

3    - - - - - - - - - - - - - - - - - - - - - - - - - - - x

4    In the Matter of:

5

6    SECURITIES INVESTMENTS,        Case No. 08-1789(SMB)

7

8            Debtor.

9    - - - - - - - - - - - - - - - - - - - - - - - - - - - x

10   IRVING H. PICARD, TRUSTEE

11   FOR THE LIQUIDATION OF B,

12                   Plaintiff,

13           v.                    Adv. Case No. 10-04932(SMB)

14   JPMORGAN CHASE & CO.,

15   ET AL.,

16                   Defendants.

17   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

18

19                   U.S. Bankruptcy Court

20                   One Bowling Green

21                   New York, New York

22

23                   February 4, 2014

24                   10:04 AM

25

Page 2

1    B E F O R E :

2    HON STUART M. BERNSTEIN

3    U.S. BANKRUPTCY JUDGE

4

5

6    Hearing re:   Trustee's 90109 Motion to Approve Settlement of

7    Common Law Claims with JPMorgan

8

9    Hearing re:   Trustee's 9019 Motion to Approve Settlement of

10   Avoidance Claims with JPMorgan

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25     Transcribed by:  Dawn South

Page 3

1   A P P E A R A N C E S :

2   BAKER HOSTETLER

3         Attorneys for the Trustee

4         45 Rockefeller Plaza

5         New York, NY 10111

6

7   BY:   DAVID J. SHEEHAN, ESQ.

8         SEANNA R. BROWN, ESQ.

9

10   WACHTELL, LIPTON, ROSEN & KATZ

11         Attorneys for JPMorgan Chase

12         51 West 52nd Street

13         New York, NY 10019-6150

14

15   BY:   JOHN F. SAVARESE, ESQ.

16         EMIL A. KLEINHAUS, ESQ.

17

18   ENTWISTLE & CAPPUCCI LLP

19         Attorney for the Investor Class Plaintiffs

20         280 Park Avenue

21         26th Floor West

22         New York, NY 10017

23

24   BY:   ANDREW J. ENTWISTLE, ESQ.

25

Page 4

1    CRAVATH, SWAINE & MOORE LLP

2         Attorney for SPV Optimal SUS Ltd.

3         825 Eighth Avenue

4         New York, NY 10019-7475

5

6    BY:  RICHARD LEVIN, ESQ.

7

8    BROWN RUDNICK

9         Attorney for the Foreign Liquidator of the Fairfield

10        Fund

11        Seven Times square

12        New York, NY 10036

13

14   BY:  DAVID J. MOLTON, ESQ.

15

16   BECKER & POLIAKOFF, LLP

17        Attorney for the Customers

18        45 Broadway

19        8th Floor

20        New York, NY 10006

21

22   BY:  VALERIE SIROTA, ESQ.

23

24

25

Page 5

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                    P R O C E E D I N G S

 2              THE COURT:  Please be seat.  Madoff.

 3              MR. SHEEHAN:  Good morning, Your Honor, David

 4    Sheehan from Baker & Hostetler for the trustee.  And with me

 5    is Seanna Brown from my office.

 6              THE COURT:  Good morning.

 7              MR. SAVARESE:  John Savarese from Wachtell, Lipton

 8    representing JPMorgan Chase, et al.

 9              THE COURT:  Good morning.

10              MR. SAVARESE:  With me is my partner Emil

11    Kleinhaus.

12              THE COURT:  How do you do?

13              MR. KLEINHAUS:  Good morning.

14              MR. ENTWISTLE:  Your Honor, Andrew Entwistle from

15    Entwistle & Cappucci, we're wholly counsel in the class

16    action in the District Court.

17              THE COURT:  Okay.

18              MR. LEVIN:  Good morning, Your Honor, Richard

19    Levin, Cravath, Swaine & Moore for SPV Optimal SUS Ltd.

20              THE COURT:  Good morning.

21              MR. LEVIN:  Good morning.

22              MR. MOLTON:  Good morning, Your Honor, David

23    Molton of Brown Rudnick for the foreign liquidator of

24    Fairfield -- of the Fairfield Funds.

25              THE COURT:  Good morning.
```

1        MS. SIROTA:  Good morning, Your Honor, Valerie

2    Sirota from Becker & Poliakoff on behalf of B customers that

3    filed opt-out notices.

4        THE COURT:  Okay, good morning.

5        MS. SIROTA:  Good morning.

6        MR. SHIFRON:  Good morning, Your Honor,

7    (indiscernible - 00:01:05) on behalf of Solis Recovery Fund

8    LP.

9        THE COURT:  Thank you.  Go ahead.  You all right?

10        UNIDENTIFIED SPEAKER:  Thank you, Your Honor.

11        MR. SHEEHAN:  Your Honor, this is the return date

12    of two applications under Rule 9019 seeking the approval of

13    a settlement between the trustee and JPMorgan Chase with

14    regard to two separate items.  One is the avoidance actions

15    we brought in the initial compliant, as well as the common

16    law causes of action.

17        We've split those into two applications, which

18    I'll explain in a moment, but I'd like to talk about both of

19    them a little bit to begin with.

20        The -- we believe and submit that is a very

21    significant settlement, it's one that the Court should rule

22    in favor of for all the reasons that we set forth in our

23    papers, and I would only add to it the following.

24        At the beginning of the case, and I think there's

25    been a good deal of notoriety about this, that the case was

Page 8

1    thought of as a case that was on the outer limits, that the

2    trustee in fact got criticized for, yet at the end of the

3    day what we have here today is a very significant result

4    across the board not only on the avoidance action but on the

5    common law causes of action and also what has happened with

6    the Department of Justice.  And the trustee, for a very

7    large extent, I believe triggered all of those activities by

8    virtue of the complaint that was filed.

9         The first half of those are the avoidance actions,

10   and those were broken down into several components.  One was

11   a bank loan from 2006, which had some stiff resistance I

12   must say.  There was a motion to dismiss filed at the time

13   of the motion to withdraw the reference in connection with

14   that I should say, and that was never heard because the

15   standing issue was reached by Judge McMann (ph) initially

16   and there was no need to reach that.  But it was hotly

17   contested and there was going to have to be a good deal of

18   discovery and a lot of fighting over that, and that was

19   under 544 we had to reach back through the DCL to get to

20   that bank loan.

21        The other parts of it were subsequent transferee

22   transactions in which structured products had been offered

23   by JPMorgan Chase and then invested into the funds.

24   Fairfield and another fund that is eluding me at the moment

25   -- but in any event it will come to me -- in any event those

Page 9

1    would have required us to avoid the initial transfers and

2    then of course the subsequent transfers as well.

3              I don't see those as difficult but they would of

4    course have involved a good deal of litigation and would

5    have been stiffly resisted by JP Morgan Chase.

6              Then we had of course the common law causes of

7    action, which are a part of our separate 9019.

8              Those common law causes of action all sounded in

9    unjust enrichment and causes of action of that quality.

10   What they were predicated upon was the unique situation of

11   JP Morgan Chase.  That is that it was the banker for BLMIS

12   and Mr. Madoff, that the 703 account, which was the

13   principal focus of our activities, was in fact the accounts

14   through all of which the money that came in and out of BLMIS

15   flowed.

16             So as a result of that we believe that there was,

17   and we allege this, a variety of causes of action that we

18   could raise.

19             Now as Your Honor well knows this was challenged,

20   very -- you know, by our adversaries, Judge McMann ruled in

21   their favor, we took it to the circuit we didn't do well

22   there either, and now -- and now we're in the Supreme Court,

23   and the Supreme Court has recently asked the solicitor

24   general to comment upon our application, which we take as a

25   very good sign.

Page 10

1              But we also have the wisdom of years behind us

2       here and know that there is no certain guarantee that the

3       Court will take this or that ultimately we will be

4       victorious.

5              The fact that we had the sur-petition did give

6       rise though to very good discussions with JP Morgan, which

7       then resulted in a settlement of $218 million for those

8       causes of action, which we believe again is a very

9       significant amount of money that recognizes that the trustee

10      had very solid causes of action, not that they're admitted

11      to or in any way agreed to by JPMorgan, and would have been

12      stiffly resisted, but those -- that amount of money

13      indicated that there was a value to those claims and that

14      the compromise made a good deal of sense in light of the

15      current posture in front of the Supreme Court, and the

16      difficulties that we still would have confronted if in fact

17      we had been successful on the issue of standing, there was

18      still substantive issues that hadn't even been addressed at

19      that point.

20             So, Your Honor, this morning what we have brought

21      before you is two applications, and the reason we brought

22      two is that historically in this case we've run into some

23      difficulty with objections to different settlements that

24      we've had, they've resulted in significant expenditure of

25      time waiting to get distributions out to the customers and

Page 11

1    allowed claimants in our case, so we thought the best to do

2    was the split them.  It -- they obviously made sense to do

3    so, the avoidance action is being clearly distinct from the

4    common law causes of action.

5         The hope would be that there would be no

6    objections, and it turns out today there are none, and

7    that's the good thing, but we didn't know that when we filed

8    it, and that if there were an objection, and they may indeed

9    be other objections that will be heard in the class action

10   case before Judge McMann, we wanted to have the ability,

11   particularly with the avoidance recovery, to put that into

12   the next distribution which you hope in the next several

13   months we'll be able to make and there will be a significant

14   contribution to that next and fourth distribution by the

15   trustee.

16        So we split them for that purpose, as a result we

17   have two applications before Your Honor.  It is one overall

18   omnibus settlement of course, but we felt as though that was

19   the appropriate course of action to take.

20        There's two other aspects of this I'd like to

21   address very briefly, Your Honor.

22        One is, is that is there the SPV Optimal question.

23   When Mr. Levin called and indicated that his clients took

24   the position that they saw this as falling within the most

25   favored nation clause of that settlement several years ago

1    we talked about whether it should be done now or later, and

2    in all candor, Your Honor, I thought it best to bring it

3    now.  I realize it potentially isn't ripe because Your Honor

4    hasn't approved the settlement, but on the other hand I

5    didn't want two weeks from now to come in here after you had

6    approved the settlement and say, oh, by the way, that we had

7    this dispute going on with Mr. Levin and I'm now bringing it

8    to your attention.  I thought the best thing to do was to

9    bring it to your attention now.

10          THE COURT:  Does the resolution of that dispute

11   have any affect on your advocating a settlement?

12          MR. SHEEHAN:  No, Your Honor.

13          THE COURT:  It's immaterial.

14          MR. SHEEHAN:  Immaterial.

15          THE COURT:  The amount.

16          MR. SHEEHAN:  Absolutely.  But I did think it was

17   important that Your Honor not hear about it after the fact,

18   I thought you should hear about it up front.

19          And then last, but not least, of course is the opt

20   out, and we've commented on that in your papers.  We don't

21   believe it has any bearing whatsoever on the settlement.

22   There is really no objection to the settlement.  And as

23   we've said in our papers, the -- whether you can opt out of

24   something which you're not included is question, but even so

25   that issue is not before Your Honor, that would be again

1    before Judge McMann who has already certified the class for

2    purposes of a notice to everyone with regard to that

3    settlement.

4            So for all those reasons Your Honor and those

5    which we of course have laid out in our paper I would

6    respectfully request that both 9019's be approved.

7            THE COURT:  Thank you.

8            MR. SHEEHAN:  Thank you Judge.

9            THE COURT:  Does anyone else want to be heard?

10           MR. SAVARESE:  Your Honor, we have nothing to add,

11   we --

12           THE COURT:  You obviously support settlement.

13           MR. SAVARESE:  -- wholly agree with Mr. Sheehan.

14   Yes.

15       (Laughter)

16           THE COURT:  Well said.

17           MR. ENTWISTLE:  And, Your Honor, we obviously also

18   support the --

19           THE COURT:  Okay.

20           MR. ENTWISTLE:  -- settlement of joinder.

21           THE COURT:  I appreciate that.  Thanks.

22           MR. LEVIN:  Good morning, Your Honor, Richard

23   Levin for SPV Optimal.

24           We support the settlement too.

25           THE COURT:  Thank you.

1          MR. LEVIN:  So it's unanimous on that.

2          As you know our point is the equal treatment

3   clause in the settlement agreement.  Let me -- maybe you're

4   familiar with this from the papers --

5          THE COURT:  Well, I read the papers.

6          MR. LEVIN:  So you know who we are.

7          THE COURT:  But that's the extent of my --

8          MR. LEVIN:  I was going to --

9          THE COURT:  -- familiarity with it.

10          MR. LEVIN:  Okay.  Well, our predecessor in

11   interest was the first feeder fund, the first any potential

12   defendant in the case to come forward and offer a settlement

13   to the trustee.

14          We -- between the two funds, I'm here only

15   representing the successor of one fund, not the other, but

16   between the two funds there was a payment of about

17   $250 million to the trustee in the middle of '09, six months

18   is into the case, which was I think we believed and the

19   trustee believed was a good kick start to the avoiding power

20   actions that the trustee was going to be bringing, and for

21   going out front and agreeing to settle without any

22   litigation coming forward ourselves to resolve this one of

23   the things we requested was this equal treatment clause.

24          We argued to the trustee that it was good for the

25   trustee as well because it gave the trustee a benchmark, and

1    the settlement agreement uses that word benchmark, for

2    future settlements, that that would be the minimum that he

3    should settle avoiding power claims for, and we would be

4    protected in the event that there was a settlement for less

5    than that amount.  The trustee agreed with that reasoning

6    and agreed to the equal treatment clause.

7              I will tell you, and I'm sure Mr. Sheehan will

8    confirm, that it was one of the more difficult clauses to

9    negotiate in the agreement, but we did reach agreement, and

10   it sets out the standards for when we're entitled to a

11   partial refund of the avoiding power payment that we made,

12   and those standards are that if the -- if the settlement of

13   an avoiding power claim was more than $40 million --

14              THE COURT:  Can I interrupt you for a minute?

15              MR. LEVIN:  Yeah, sure.

16              THE COURT:  I'm not going to decide this today,

17   and what I'd like you to do -- I have a short calendar -- is

18   just wait around with Mr. Sheehan or whatever to schedule

19   some sort of proceeding, because I don't think this is ripe

20   to be decided.

21              MR. LEVIN:  Fine.  We --

22              THE COURT:  I don't think the record is ripe, I

23   think that the underlying settlement agreement is ambiguous,

24   at least the way I read it, a couple of those criteria.

25              MR. LEVIN:  Uh-huh.

1           THE COURT:  Obviously there was an effort to

2     distinguish among different types of avoidance actions.

3           MR. LEVIN:  Uh-huh.

4           THE COURT:  I don't know what was going through

5     your head.

6           You know, when I read it 85 percent to me sounds

7     like the trustee has got a slam dunk and he's giving you a

8     tip to write him a check.  It just doesn't sound like some

9     of the other cases he's brought.

10          On the other hand you are obviously trying to

11    accomplish something and I want to understand what that is,

12    and I'm not sure that I understand it just from what I've

13    read.

14          MR. LEVIN:  You're suggesting perhaps extrinsic

15    evidence on this thing.

16          THE COURT:  Yeah, and if you tell me there is no

17    extrinsic evidence then -- but --

18          MR. LEVIN:  I think you're going to have a lot of

19    lawyers testifying.

20          THE COURT:  Well that may be, but you know, if the

21    agreement is ambiguous in terms of what, for example, that

22    c-emptor (ph) factor.

23          MR. LEVIN:  Uh-huh.

24          THE COURT:  You seem to think that or as I read

25    your papers it suggests that there was some sort of moral

Page 17

1   component there that if somebody committed an act which

2   required wrongful intent they should settle above the 85

3   percent or the trustee shouldn't take less than 85 percent.

4          The trustee seems to take the position, well

5   that's a harder case to prove so I should set it below 85

6   percent, and these are a couple of questions, I agree with

7   you the jurisdictional question is not an issue, the

8   collectibility question is not an issue, but it's primarily

9   the two clauses I mentioned.

10          So what I was going suggest is --

11          MR. LEVIN:  The two clauses the --

12          THE COURT:  The --

13          MR. LEVIN:  -- complicity knowledge clause?

14          THE COURT:  What I've called the c-emptor?

15          MR. LEVIN:  Yeah, c-emptor.

16          THE COURT:  C-emptor clause and the clause which

17   tries to distinguish between avoidance actions.

18          MR. LEVIN:  Okay.

19          THE COURT:  It uses an example of a preference on

20   the one hand or profits on the other.

21          So let me just deal with the settlement.  I have a

22   short calendar, let's get everybody else out of the

23   courtroom --

24          MR. LEVIN:  Sure.

25          THE COURT:  -- since it's an expensive crew here,

1    and --

2              MR. LEVIN:  Very good, Your Honor.

3              THE COURT:  -- then we'll deal with that if that's

4    okay with you.  But --

5              MR. LEVIN:  Yes.

6              THE COURT:  -- I understand and I'll just tell you

7    I'm not going decide that one today.

8              MR. LEVIN:  Very good.  Thank you, Your Honor.

9              THE COURT:  All right, next, step up.

10             MS. SIROTA:  Good morning, Your Honor.

11             THE COURT:  Good morning.

12             MS. SIROTA:  Valerie Sirota on behalf of the

13   customers who are filing opt-out notices in the Southern

14   District.

15             We filed our opt-out notice in the Bankruptcy

16   Court as well because we just wanted to give Your Honor

17   notice that we are planning on objecting to the definitions

18   set forth in the agreement.

19             THE COURT:  Are you objecting to the trustee's

20   9019 motion in this case?

21             MS. SIROTA:  We're not.

22             THE COURT:  Okay.

23             MS. SIROTA:  We're not, so.

24             THE COURT:  All right.  I just want to understand

25   that, because it sounded like you were when I read the

Page 19

1    papers, but --

2              MS. SIROTA:  We're just objecting to the --

3              THE COURT:  You're opting out of a class that

4    you're not a member of.

5              MS. SIROTA:  We're opting out of a class that we

6    hope to be a member of.

7              THE COURT:  It sounds like a Groucho Marx joke,

8    you know?

9         (Laughter)

10             THE COURT:  Okay, got it.  As long as you're not

11   -- as long as you're not objecting.

12             Anybody else?

13             MR. MOLTON:  Your Honor, David Molton for the

14   foreign representative Fairfield.  Just a few words.

15             We're supporting the settlement, and as our papers

16   noted we have an interest in it in two regards.

17             Number one as having an allowed claim in the BLMIS

18   (sic) estate as well as having a right to participate as a

19   result of our settlement agreement with Mr. Picard.

20             We commend all the parties for reaching this

21   settlement and wanted to convey to Your Honor our

22   wholehearted support for it.

23             THE COURT:  Thank you very much.

24             MR. SHIFRON:  (Indiscernible - 00:14:30) Shifron

25   for Solis Recovery Fund Limited.

Page 20

1            I just wanted to confirm that we support approval

2    of the JPMorgan settlement, and we were going to present

3    arguments relating to the ripeness of the equal treatment

4    issue, but it seams that we've all agreed --

5            THE COURT:  What your papers didn't say is what do

6    you contend you're titled to if the settlement is approved?

7            MR. SHIFRON:  I'm sorry?

8            THE COURT:  What do you contend you're entitled

9    to?  I thought that SPV said it was net 7 million or 7.4,

10   something like that.  What do you contend you're entitled

11   to.

12           MR. SHIFRON:  Well our numbers are -- again, I

13   need to review this with my clients -- but we think it's

14   somewhere in the neighborhood of six and a half million

15   dollars.

16           THE COURT:  Okay.

17           MR. SHIFRON:  Thank you.

18           THE COURT:  Anyone else?  All right.

19           Before the Court are two separate but related

20   motions brought by Irving H. Picard as trustee for the

21   substantively consolidated liquidation of Bernard L. Madoff

22   Investment Securities LLC and the estate of Bernard L.

23   Madoff, collectively Madoff.

24           The trustee seeks Court approval of two

25   settlements with JPMorgan Chase & Co., JPMorgan Chase Bank,

Page 21

1    N.A., JPMorgan Securities LLC, and JPMorgan Securities Ltd.,

2    collectively Morgan -- JPMorgan pursuant to Rule 9019 of the

3    Federal Rules of Bankruptcy Procedure.

4            Under the first settlement JPMorgan would pay the

5    trustee $325 million in satisfaction of its avoidance

6    claims.

7            Under the second settlement among the trustee,

8    JPMorgan, and the class representatives Paul Shapiro and

9    Stephan and Lala (ph) Hills, in a pending District Court

10   action, JPMorgan would pay $218 million for the benefit of

11   the settlement class which is defined later.

12           These settlements, when combined with JPMorgan's

13   agreement to forfeit $1.7 billion to the U.S. government,

14   will result in a recovery of $2.243 billion for the victims

15   of Madoff's fraud.

16           For the reasons that follow the Court finds that

17   the settlements are fair, reasonable, and in the best

18   interest of the Madoff estate and fall well above the lowest

19   point in the range of reasonableness.  Accordingly, the

20   trustee's 9019 motions are granted.

21           On December 2, 2010 the trustee commenced an

22   adversary proceeding against JPMorgan asserting two types of

23   claims.

24           First he sought to avoid and recover approximately

25   $425 million of transfers under Chapter 5 of the Bankruptcy

Page 22

1    Code, herein after the avoidance claims.

2            Second he asserted claims for aiding and abetting

3    fraud, aiding and abetting breach of fiduciary duty,

4    conversion, unjust enrichment, and contribution,

5    collectively referred to as the common law claims.

6            Following withdrawal of the reference the District

7    Court granted JPMorgan's motion to dismiss the common law

8    claim ands return the avoidance claims to this court for

9    further proceedings.

10            The Second Circuit affirmed the dismissal of the

11    common law claims, see 721 Fed. 3d. 54, 2013, the trustee

12    filed a petition for writ of certiorari in the United States

13    Supreme Court and the petition is pending.

14            Shortly after the District Court dismissed the

15    common law claims the class representatives filed two class

16    action complaints in the District Court against JPMorgan

17    entitled Hill versus JPMorgan Chase and Shapiro versus

18    JPMorgan Chase, both actions were signed to District Judge

19    McMann.

20            The complaints asserted various claims on behalf

21    of defrauded Madoff customers against JPMorgan similar to

22    the trustee's common law claims.

23            The two actions were consolidated by the District

24    Court and the class representatives filed a consolidated

25    class action complaint against JPMorgan on behalf of the

Page 23

1  class consisting of "all persons or entities who directly

2  had capital invested with BMIS as of December 12, 2008."

3  See consolidated complaint paragraph 289.

4          On March 9, 2012 JPMorgan moved to dismiss the

5  consolidated class action complaint.  The District Court

6  granted the trustee's motion for limited intervention and

7  placed the consolidated class action on the suspense

8  calendar pending a decision by the United States Supreme

9  Court in another case relating to preemption under the

10  Securities Litigation Uniform Standards Act.

11          The Supreme Court has not decided that case.

12          Against this backdrop and following extensive

13  negotiations the trustee and JPMorgan agreed to settle the

14  trustee's avoidance claims for $325 million.  Approximately

15  $275 million will be paid to the Madoff customer property

16  fund, and the approximate $50 million balance will be paid

17  to the foreign representatives of the Fairfield Funds

18  pursuant to a separate settlement previously approved by the

19  Court.

20          In addition the trustee, JPMorgan, and the class

21  representatives reached a settlement under which JPMorgan

22  agreed to pay $218 million for the benefit of the settlement

23  class in the District Court action.  No party of this

24  settlement will be paid to the trustee.

25          The settlement agreement includes an right to opt

1    out.  JPMorgan will pay the class representative's counsel

2    fees and an award of fees will not diminish the settlement

3    fund.

4         The District Court preliminarily approved the

5    common law claims settlement by order dated January 10,

6    2014, hereinafter the preliminary approval order, and has

7    scheduled a settlement hearing for March 7, 2014.

8         Consistent with the settlement agreement the

9    preliminary approval order certified for settlement purposes

10   only a settlement class consisting of all Madoff customers,

11   including their successors, transferees, or assignees who

12   had capital directly invested with Madoff as of the filing

13   date, and where therefore net losers under the Second

14   Circuit's net investment decision regardless of whether they

15   had filed a customer claim in the SIPA proceeding.

16        Bankruptcy Rule 9019 authorizes the Bankruptcy

17   Court to approve compromises.  In reaching its determination

18   a Bankruptcy Court must make an informed independent

19   judgment.  Protective Committee for Independent Stockholders

20   of TMT Trailer Ferry, Inc. versus Anderson, 39 U.S. 414, 424

21   (1968), that the settlement does not fall "below the lowest

22   point in the range of reasonableness."  In re: WT Grant 699

23   Fed. 2d. 599 Thomas 608, (Second Circuit 1983).

24        The determination is based on a number of factors,

25   including the costs and the benefit of continuing

1   litigation, the possibility of delay, the competency of

2   counsel who support the settlements, the extent to which the

3   settlements reflect arms length negotiations, and whether

4   other parties in interest support the settlements.  In re:

5   (indiscernible - 00:21:25) Operating LLC, 478 Fed. 3d. 452

6   at 462, (Second Circuit 2007).

7           The proponent of the settlement has the burden of

8   proof.  In re: Plan Protective Services, Inc., 130 B.R. 94,

9   96 (Bankruptcy Court Central District of California 1991).

10          Here the trustee has sustained its burden.  The

11  net losers in Madoff's Ponzi scheme would derive a

12  substantial benefit under both settlements.  The trustee in

13  the avoidance claims for $325 million and more than 75

14  percent of the amount sought in connection with those

15  claims.

16          The trustee will not receive anything under the

17  settlement of the common law claims but the value of those

18  claims in the SIPA liquidation is questionable.

19          The Supreme Court must grant a writ of certiorari,

20  reserve the lower courts, and the trustee must ultimately

21  prevail against JPMorgan on its common law claims.

22          Nevertheless the trustee's willingness to dismiss

23  its common law claims and release JPMorgan has value as part

24  of a global settlement that will facilitate the payment of

25  $218 million to the settlement class.

1          The settlement class consists of the same victims

2   as the customers who are net losers in the SIPA liquidation.

3   From their viewpoint it does not matter whether the money

4   flows to them through the SIPA estate or the settlement fund

5   generated in the class action.

6          The settlements also remove the risks, costs, and

7   delays associated with continued litigation.  The prospects

8   of any litigation are uncertain and no one has suggested,

9   not even the trustee, that he will inevitably prevail in

10  this fact intensive complex dispute.

11         These settlements resolve all of the issues

12  between the trustee and JPMorgan and provide finality to

13  their litigation.

14         In addition the lawyers for the settling parties

15  are sophisticated, experienced, and competent and the

16  settlements have been negotiated at arms length.

17         Finally other parties in interest support the

18  settlements, the class representatives, the foreign

19  representative, the Fairfield Funds, and SPV Optimal SUS

20  Ltd. have filed responses stating their support.

21         SPV contends, and the trustee disputes, that SPV

22  is entitled to an additional consideration in the amount of

23  approximately $7.4 million under the terms of this

24  settlement agreement its assignor reached with the trustee

25  in 2009.

Page 27

1           Solis Recovery Fund LP also says that it is

2    entitled to a refund of the portion of the settlement that

3    its predecessor made to the trustee under the SPV settlement

4    and echoes SPV's argument.

5           The aggregate amount of these two claims is

6    approximately $14 million, which is immaterial to whether

7    the Court approves this settlement and is also immaterial to

8    the amount of the settlement themselves, and the Court will

9    resolve these disputes in a separate proceeding.

10          The Court also received a pleading on behalf of

11   the net winners stating an objection to the settlement of

12   the common law claims and their intention to opt out, but

13   counsel confirmed in court today that this is not intended

14   to be an objection to the trustee's application under Rule

15   9019 in this court to object to the settlement.

16          Accordingly the settlement is approved -- or the

17   settlements are approved and you can submit an order to that

18   effect.

19          Thank you very much.

20      (A chorus of thank you)

21          THE COURT:  If you'll just wait around on the SPV

22   and the Solis matter and then I'll -- we'll talk about

23   further proceedings.  It won't be long.

24      (Recess)

25          THE COURT:  All right, we're back to Madoff now.

Page 28

1          All right, as I indicated during the argument of

2    the motion to approve the settlement it just struck me that,

3    I mean first of all I don't know anything about your

4    client's claim, and I'll -- this goes for both of the

5    parties, it just sounds like it was a very straightforward

6    preference claim, and in the context of the settlement the

7    parties were trying to make a distinction between different

8    types of avoidance actions as a factor in determining

9    whether or not the settlement was a qualifying settlement.

10          So I really don't understand what it is the

11    parties -- what was driving the parties and what kind of

12    distinctions they were making.

13          Obviously the actions that the trustee brought are

14    not the same as preference actions, and as I indicated, you

15    know, an 85 percent settlement in a preference action sounds

16    like the trustee is giving you a tip to write a check so he

17    doesn't have to sue you.

18          And I had the other issue regarding what is the

19    relevance of complicity or c-emptor, is it some sort of mole

20    factor or is it just -- that's harder to prove and therefore

21    it would justify a lower settlement.

22          The bottom line is I find the agreement ambiguous

23    at least in those two respects.  It's certainly -- the

24    issues regarding jurisdiction and collectibility are not a

25    problem in this case and I'm not sure that the stage in the

1    proceeding I can understand what that means, I don't know

2    anything more about the stage for the avoidance claims other

3    than what I see on the docket.  And was there ever a motion

4    to dismiss the avoidance claims?

5              MR. SHEEHAN:  Yes, there was, Your Honor.

6              THE COURT:  Oh, there was?  I didn't -- was in

7    this District Court?

8              MR. SHEEHAN:  I'll take that back, I'm too much

9    into the other case.

10             THE COURT:  Yeah.

11             MR. SHEEHAN:  I think they just made them as to

12   the common law causes of action.

13             THE COURT:  All right.  So, you know, really the

14   proceedings are not far advanced in terms of -- with

15   JPMorgan in terms of the avoidance claims.

16             You filed a complain, it may have been the subject

17   of a -- it may have been the subject of the motion to

18   withdraw the reference, I don't know, but they've been

19   returned.

20             MR. SHEEHAN:  I do remember, in fact I mentioned

21   it this morning, there was a motion with regard to the loan,

22   the $149 million loan, I remember that because they brought

23   up Stage Street which --

24             THE COURT:  Yeah.

25             MR. SHEEHAN:  -- suggests (indiscernible -

1      00:49:18) in that context.

2                  THE COURT:  I know, yeah, it sounded like that

3      kind of situation --

4                  MR. SHEEHAN:  Right.

5                  THE COURT:  -- but I didn't see a motion to

6      dismiss on the docket.

7                  MR. SHEEHAN:  I think -- I think it was, but

8      obviously what I'd like to do is maybe in light of what Your

9      Honor is suggesting here is supplement the record so --

10                 THE COURT:  Well I do, I want to -- you know, I

11     want to know more about --

12                 MR. SHEEHAN:  Right.

13                 THE COURT:  -- what the claim is against them,

14     although I can imagine what it is if it's a preference

15     claim.  There was never a complaint filed so there's no

16     question of an answer.  I don't know if you raised -- had

17     any 547(c) defenses.  It just didn't sound like it, but I

18     don't know.

19                 So those are kind of the issues, and I guess the

20     only thing to do is have an evidentiary hearing or take

21     extrinsic evidence to resolve the ambiguity.

22                 MR. SHEEHAN:  That's fine, Your Honor.

23                 THE COURT:  So -- and also to supplement the

24     record, which I don't need an evidentiary hearing just to

25     have an idea of what transpired in the adversary hearing,

Page 31

1    although it sounds like not a lot did with respect to the

2    avoidance claims and what the claims were against SPV and

3    arbitrage I guess.

4          Parties want to take any discovery?  I've never

5    seen a lawyer turn down discovery, but --

6          MR. LEVIN:  Your Honor, I think we ought to

7    discuss that among counsel.

8          THE COURT:  That's fine, if you want to submit a

9    discovery order, you want to have another conference on

10   this, whatever works is fine.  You tell me.

11         MR. SHEEHAN:  I think it would be good if

12   Mr. Levin and I could discuss this and then get back to Your

13   Honor in a day or two as to --

14         THE COURT:  If --

15         MR. SHEEHAN:  -- what we've agreed to.

16         THE COURT:  That's fine.  Why don't you write me a

17   letter or write me a letter that you just can't agree and

18   then we'll have another conference.

19         MR. SHEEHAN:  Right.

20         THE COURT:  All right?

21         MR. LEVIN:  Okay.

22         THE COURT:  All right, thanks for waiting around.

23         MR. SHEEHAN:  That sounds fine.

24         MR. LEVIN:  No, thank you, Your Honor.

25         MR. SHEEHAN:  Thank you.

1            THE COURT:  Okay.

2            MR. SHEEHAN:  And then we'll set it for a hearing

3    after that.

4            THE COURT:  Right.

5            MR. SHEEHAN:  If necessary.

6            Thank you, Your Honor.

7            THE COURT:  Thank you.

8        (Whereupon these proceedings were concluded at 10:55

9    AM)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                         I N D E X

2

3                         RULINGS

4                                        Page      Line

5   Trustee's 90109 Motion to Approve Settlement

6    of Common Law Claims with JPMorgan        20        19

7

8   Trustee's 9019 Motion to Approve Settlement

9   of Avoidance Claims with JPMorgan          20        19

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1           C E R T I F I C A T I O N

2

3    I, Dawn South, certify that the foregoing transcript is a

4    true and accurate record of the proceedings.

5

6    Dawn South

Digitally signed by Dawn South
DN: cn=Dawn South, o=Veritext,
ou, email=digital@veritext.com,
c=US
Date: 2014.02.05 12:00:22 -05'00'

7

8    AAERT Certified Electronic Transcriber CET**D-408

9

10   Veritext

11   330 Old Country Road

12   Suite 300

13   Mineola, NY 11501

14   Date:  February 5, 2014

15

16

17

18

19

20

21

22

23

24

25