1  UNITED STATES BANKRUPTCY COURT

2  SOUTHERN DISTRICT OF NEW YORK

3  - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

4  In the Matter of:

5  SECURITIES INVESTOR PROTECTION

6  COMPANY,

7                    Plaintiff,

8          v.                    Case No. 08-01789(SMB)

9  BERNARD L. MADOFF INVESTMENT

10 SECURITIES, LLC, ET AL.,

11                 Defendants.

12 - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

13

14                 U.S. Bankruptcy Court

15                 One Bowling Green

16                 New York, New York

17

18                 February 14, 2014

19                 11:01 AM

20

21

22

23 B E F O R E :

24 HON STUART M. BERNSTEIN

25 U.S. BANKRUPTCY JUDGE

1    Hearing re:  Conference Re:  Request for Consolidated

2    Briefing in Madoff (08-1789) in connection with Dkt. Nos.

3    5641, 5644, and 5648.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Dawn South

Page 3

1    A P P E A R A N C E S :

2    DENTONS US LLP

3         Attorney for Defendants

4         1221 Avenue of the Americas

5         New York, NY 10020-1089

6

7    BY:  CAROLE NEVILLE, ESQ.

8

9    K&L GATES LLP

10        Attorney for Defendants

11        1601 K Street NW

12        Washington, D.C. 20006-1600

13

14   BY:  RICHARD A. KIRBY, ESQ.

15

16   LOEB & LOEB LLP

17        Attorneys for Defendants

18        345 Park Avenue

19        New York, NY 10154

20

21   BY:  P. GREGORY SCHWED, ESQ.

22        DANIEL B. BESIKOF, ESQ.

23

24

25

Page 4

1   BECKER & POLIAKOFF, LLP

2        Attorney for Defendants

3        45 Broadway

4        8th Floor

5        New York, NY 10006

6

7   BY:  JULIE GORCHKOVA, ESQ.

8

9   PRYOR CASHMAN LLP

10        Attorney for Defendants

11        7 Times Square

12        New York, NY 10036-6569

13

14   BY:  RICHARD LEVY, JR., ESQ.

15

16   BAKER HOSTETLER

17        Attorneys for the Trustee

18        45 Rockefeller Plaza

19        New York, NY 10111

20

21   BY:  DAVID J. SHEEHAN, ESQ.

22        NICHOLAS J. CREMONA, ESQ.

23        EDWARD J. JACOBS, ESQ.

24

25

1    SECURITIES INVESTOR PROTECTION CORPORATION

2         Attorney for SIPC

3         805 15th St., N.W.

4         Suite 800

5         Washington, D.C. 20005-2215

6

7    BY:  KEVIN H. BELL, ESQ.

8

9    WINDELS MARX LANE & MITTENDORF, LLP

10        Counsel of Record for the Trustee

11        156 West 56th Street

12        New York, NY 10019

13

14   BY:  ALAN NISSELSON, ESQ.

15        KIM M. LONGO, ESQ.

16

17   MILBERG LLP

18        Attorney for Defendants

19        One Pennsylvania Plaza

20        New York, NY 10119

21

22   BY:  JOSHUA E. KELLER, ESQ.

23

24

25

Page 6

1   KRAMER LEVIN NAFTALIS & FRANEKEL LLP

2       Attorneys for Defendants

3       1177 Avenue of the Americas

4       New York, NY 10036

5

6   BY:  ELISE S. FREJKA, ESQ.

7       PHILIP BENTLEY, ESQ.

8

9   SCHULTE ROTH & ZABEL LLP

10      Attorney for Defendants

11      919 Third Avenue

12      New York, NY 10022

13

14  BY:  JENNIFER M. OPHEIM, ESQ.

15

16  BRYAN CAVE LLP

17      Attorney for Defendants

18      1290 Avenue of the Americas

19      New York, NY 10104-3300

20

21  BY:  THOMAS J. SCHELL, ESQ.

22

23

24

25

Page 7

```
 1                     P R O C E E D I N G S

 2              THE CLERK:  All rise.

 3              THE COURT:  Please be seated.  Good morning.

 4      Madoff.

 5              I scheduled this conference because I had received

 6      a letter, I guess by K&L, which implied that I shouldn't

 7      decide a pending motion to dismiss, so --

 8              MS. NEVILLE:  Not from K&L, Your Honor.

 9              THE COURT:  All right.  Well, I'll hear you any

10      way, Ms. Neville.

11              MS. NEVILLE:  But Carole Neville from Dentons.

12              I am a member of the defense group that sent that

13      letter to you, and I think that my colleagues at some point

14      would like to put their appearances on the record, but the

15      firms are K&L Gates and Dentons and Kleinberg, Kaplan,

16      Kramer Levin, Loeb & Loeb, Milberg, Pryor Cashman, Schulte,

17      and Seeger Weiss.

18              And the request we have, Your Honor, is for a case

19      management order that includes a consolidated docket, a

20      briefing schedule on common issues, and coordinated

21      discovery.

22              And I think if I have two minutes to tell you a

23      little bit about the history of the case --

24              THE COURT:  Go ahead.

25              MS. NEVILLE:  -- it will explain why we're asking
```

Page 8

1   for this.

2           The trustee filed about 1,000 actions -- avoidance

3   actions, 800 of them or so -- and I'm sure Mr. Sheehan can

4   give me the correct number -- are against the so-called good

5   faith defendants, my clients, and the clients of this

6   defense group.

7           The trustee is seeking only recovery of profits,

8   there's no argument that they all acted in good faith

9   without knowledge of the fraud.

10          Right from the beginning of the case we

11  coordinated the briefing on major issues, and I think it was

12  contemplated that we would remain before Judge Lifland and

13  continue that consolidated briefing.

14          What happened is that we actually moved to

15  withdraw the reference and Judge Rakoff withdrew the

16  reference of certain issues, four or five discreet issues,

17  one of which is very important for this consideration of

18  this case management.  It's whether or not 546(e) provides a

19  safe harbor for the transactions of our clients.

20          Judge Rakoff ruled in our favor, the issue is now

21  before the Second Circuit on the trustee's appeal, and that

22  case -- or that decision of Judge Rakoff divided the cases

23  that were pending, the 800 or so, into different buckets.

24          There are those cases that are completely disposed

25  of by the two-year limitation or by the elimination of

Page 9

1    preference claims.  There are those cases that are

2    substantially disposed of by the 546(e).  The trustee had

3    some formula which determined what was substantial effect.

4    And so those cases are before Your Honor but they are on

5    extensions of our time to answer or otherwise move to either

6    April or July.

7             I don't know how many cases fall into that bucket

8    but probably hundreds.

9             THE COURT:  Isn't the 546(e) issue on appeal to

10   the Second Circuit?

11            MS. NEVILLE:  Yes, it's before the Second Circuit,

12   it's scheduled to be heard on March 5th, and it does dispose

13   not only of those cases which are fully disposed of or

14   substantially disposed of but it affects even those cases

15   which are now pending before Your Honor.

16            I have an example.  I have a case where there are

17   three accounts in one cause -- in one complaint.  Two of

18   those accounts were closed before 2007.  So if we prevail on

19   the 546(e) two of the accounts -- defendants are out of the

20   action.

21            While the 546(e) was working its way up to the

22   Second Circuit and it's consolidated and we worked very hard

23   to coordinate 6- or 800 cases before the Second Circuit on

24   this issue, Judge Rakoff ruled on other issues as well, but

25   he sent the cases back from Dentons, Pryor Cashman, and

Page 10

1    Milberg to Judge Lifland.  We -- we were out of sync with

2    the other defendants in that regard and we all moved to

3    dismiss the cases on other grounds last March.

4             Those motions to dismiss are pending, they've

5    never been docketed, the trustee has never replied.  I think

6    there might be 80 of them.  So that's another bucket.

7             And finally there's the group that has come back

8    to Your Honor because the defendants had answered, and so

9    they are now in the trial discovery schedule.

10            So we have cases that are completely suspended on

11   motions to extend the time to answer or move, pending

12   motions, and answers that are moving towards discovery and

13   trial.

14            Now these complaints are all cookie cutter,

15   there's virtually no difference in the allegations in any of

16   the complaints, and the issues that are raised by the

17   complaints, there are a lot of common issues that have never

18   been briefed anywhere, and -- or never been decided.

19            Now I'll give you an example.  The 80 complaints

20   that came back in our -- in pending motions to dismiss have

21   a cause of action to avoid obligations.

22            THE COURT:  Uh-huh.

23            MS. NEVILLE:  That has never been decided.

24   Defenses of subsequent transferees have never been decided.

25   And there are a number of other issues that probably fall

Page 11

1    into that category which we would like to brief on a common

2    briefing schedule.

3           Now I know that Ms. Chaitman (ph) has a number --

4    128 motions to dismiss pending before Your Honor, and those

5    raise a number of the same issues as our motions to dismiss,

6    so we think it makes some sense to coordinate the 200 or so

7    briefs on virtually the same issues.

8           I think that pretty much describes what our

9    thinking is.  Coordination really has been the benchmark of

10   this case right from the get go.

11          The defense group -- our defense group has really

12   not only coordinated amongst ourselves but tried to

13   coordinate with all the other outside counsel to -- to make

14   sure that everybody had a chance to be heard on the -- on

15   the most important issues, and we think that that practice

16   should continue.

17          What we were thinking is that if there was a

18   consolidated docket like Judge Rakoff had you could see

19   where a motion came on or something came on in discovery so

20   that if people knew that that issue affected them they could

21   intervene or notify the Court that they wanted to

22   participate in the briefing on that.

23          So there are some issues I think we could identify

24   right off the top of our heads which we think could be

25   jointly briefed and others which may come up as the briefing

Page 12

1    progresses.

2            And then I think I would defer to some of those

3    people who are actually in the discovery process to talk

4    about what kind of coordination they would like to see in

5    those cases that are proceeding to trial and discovery.

6            But what is really out there, everybody is going

7    to be in the same place eventually, and if a group moves way

8    ahead issues may be decided that affect those who are still

9    on the extension -- in the extension period and they may not

10   have an opportunity to participate in the -- in the decision

11   on that.

12           So that's what we're trying to figure out a way to

13   avoid.

14           THE COURT:  Well, I have a motion before me which

15   raises 14 points or 14 arguments.

16           MS. NEVILLE:  Oh, I'm sorry.

17           THE COURT:  Shut off your phone, please.

18           MS. NEVILLE:  It's probably my daughter.

19           THE COURT:  All right.  Well, shut it off, please.

20           MS. NEVILLE:  I apologize, Your Honor.  I'm sorry.

21           THE COURT:  I was saying I had a motion before me

22   that raises 14 points.  Which issues do you want to -- which

23   issues do you want to brief?

24           MS. NEVILLE:  There are a number of issues that I

25   think Ms. Chaitman actually came into and briefed along

Page 13

1   without us.  I think, for example, any subsequent transferee

2   defenses, any defenses --

3            THE COURT:  Well she doesn't really raise

4   subsequent transferee defenses, she says that their -- the

5   pleading is inadequate with respect to some of the --

6            MS. NEVILLE:  Well, I --

7            THE COURT:  -- with respect to some of the

8   allegations of subsequent transfer liability.

9            MS. NEVILLE:  That is clearly the case in our

10  motions to dismiss as well, because all that the complaint

11  would say is they got some money, it was for their benefit,

12  that's the end of the story, and I think what we would want

13  to go a step further on that, it's not adequately pled but

14  there are defenses that could be raised that somewhere down

15  the road we would want to raise.

16            THE COURT:  Well why would I decide that on a

17  motion to dismiss?

18            MS. NEVILLE:  You don't need to decide it on a

19  motion to dismiss, I think you'll dismiss all the subsequent

20  transferees on the basis of inadequate pleading frankly.

21            THE COURT:  Uh-huh.  So what's wrong with the way

22  it's --

23            MS. NEVILLE:  Okay.  Here's one -- here's another

24  one.

25            THE COURT:  -- what's wrong with the way it's

1    raised in the briefs?

2            MS. NEVILLE:  What about the application --

3            THE COURT:  Ms. Neville, what's wrong with the way

4    it's raised in the current briefs?

5            MS. NEVILLE:  I -- you know, Your Honor, I'm

6    sorry, I don't know what the trustee responded to in that

7    particular -- on that particular case, I only know --

8            THE COURT:  But my recollection is -- my

9    recollection is he responded that Judge Lifland I think had

10   decided this issue already in the context of another case.

11           MS. NEVILLE:  Well, Judge Lifland never heard that

12   issue, so I --

13           THE COURT:  I don't know.

14           MS. NEVILLE:  Your Honor, there also are IRAs that

15   are protected under state law by the CPLR, and I'm not sure

16   whether Ms. Chaitman raised that issue.

17           THE COURT:  She raised that issue.

18           MS. NEVILLE:  And that issue -- that issue needs

19   to be further briefed.

20           THE COURT:  What's wrong with the way it's briefed

21   now?  In other words if you had made a motion to intervene

22   you would have to convince me that the current -- would

23   people please shut off their phones or we're just going to

24   take phones at the door.

25           If you were going to intervene you would have to

Page 15

1    explain to me why whoever was pushing this issue now was not

2    adequately representing your interests.  So, you know, my

3    question is the same for every one of these issues.

4              MS. NEVILLE:  I can't answer specifically which

5    issue is inadequate, but I don't -- I don't want to see and

6    none of us want to see issues that affect a large number of

7    people get decided on a single brief.

8              THE COURT:  Let me ask you a question.

9              MS. NEVILLE:  Now, if you --

10             THE COURT:  I have a trial scheduled, one of the

11   first trials is scheduled at the end of March which may

12   dispose of some of the issues you raise.  Not the pleading

13   issues but some of the issues that are raised.  Should I not

14   have that trial are you saying?

15             MS. NEVILLE:  Yes, you should not have that trial.

16             THE COURT:  And when -- do I start to try the

17   cases only when everybody is ready?

18             MS. NEVILLE:  Your Honor, I think we have to

19   figure out what a procedure is, but why would we go ahead

20   and decide issues that are going affect thousands of

21   defendants?  Because in each of these 800 cases there are

22   multiple defendants.  So would you want to go ahead and

23   decide an issue that's been briefed by one person or that's

24   been advanced by one person that's going to affect thousands

25   of defendants?

1            THE COURT:  Well I have to decide it any way.

2     Your concern --

3            MS. NEVILLE:  But not without the input of the

4     people -- other people out there who have -- who have that

5     issue in their case who may brief it is a completely

6     different way and raise different issues before you.

7            THE COURT:  Well but, you know, that's true in any

8     litigation, and even if I were to decide -- let me finish.

9            MS. NEVILLE:  Okay.

10           THE COURT:  Even if I were to decide an issue one

11    way on a current motion if you come forward with other

12    arguments that haven't been considered then they'll be

13    considered.  If you make the same argument on the same facts

14    the result is going to be the same.

15           MS. NEVILLE:  I know, Your Honor, but this is --

16           THE COURT:  That's definition of insanity.

17           MS. NEVILLE:  -- for -- this is a unique case

18    because -- well it's not unique in fraud cases but there are

19    so many cases pending there that it really does call out for

20    some kind of coordination.

21           If there's one case that's proceeding to trial I

22    don't understand why it makes a difference in the great

23    scheme of things when thousands of defendants are affected

24    to continue that trial at least for a period of time so that

25    people can assess whether there's a reason to intervene, a

Page 17

1    basis for intervention, and to help the Court hear all of

2    the arguments.

3              I mean we've been immersed in this case for five

4    years.  We're not trying to delay things, we just want to

5    have them decided properly.

6              THE COURT:  Okay.  Yes, sir.

7              MR. KIRBY:  Richard Kirby from K&L Gates, I was

8    the principal author of that letter.  I would like to just

9    speak to two things.

10             One I'm part of the group that is looking at a

11   discovery schedule, and one of the points that we raised was

12   that we wanted to have some kind of orderly coordinated

13   discovery.

14             What I think the practical and what should happen

15   here is that the parties should sit down with the trustee

16   and try to work out something that would be workable.  We've

17   had two meetings with the trustee, we've not been able to

18   reach a consensus schedule.  We think that if the Court

19   directs the trustee to work on a consensus schedule we can

20   probably work through the issues and present you with some

21   kind of consensus schedule on that.  So that's one issue.

22             On the issue of the -- that -- and further comment

23   to Ms. Neville's consideration of common issues, what we're

24   asking for is an -- we don't get under the current system

25   unless somebody goes and search the docket for 1,000 cases

Page 18

1   we do not get notice of motions and hearings, okay?  That's

2   the key point.  If we had appropriate notice and if we

3   thought there was an issue that had not been adequately

4   briefed we would at least have the opportunity to be heard

5   at that point.  But our problem is, is with all these cases

6   it's hard to keep track.  We just don't have the capacity.

7   Where the trustee sits with one as the one plaintiff on all

8   these they have the ability to understand that.

9           They're -- and so what we're asking for is a

10  system that would provide for a regular notice of issues

11  that we would have an opportunity to be heard.

12          For example, one of the issues that's raised, as I

13  understand it in the pending motion, is a question of the

14  trustee's standing, and that's a threshold issue that

15  affects all of the cases.  We definitely would want to be

16  heard on that issue.  And as long as we have a reasonable

17  time to be heard I don't think it would interfere even with

18  -- I understand the current schedule is that the Court's had

19  a full hearing on that, but that's the kind of thing we

20  would have.

21          We would also like relief from the obligation to

22  file a formal motion for intervene in the case, because one

23  of the points that we raise is Rule 42 allows the Court

24  discretion to consolidate issues of -- issues of law and

25  fact, and as we go forward in the case there may well be

Page 19

1    common issues of fact.

2              For example, let's suppose that some of the people

3    wish to contest the issue of a Ponzi scheme, whether there

4    was a Ponzi scheme, whether there was insolvency, I would

5    hope the Court would not want to have 1,000 trials on that

6    issue.

7              THE COURT:  I know in the Dreier case I'm having

8    consolidated trials on these two issues.

9              MR. KIRBY:  Right.

10             So my thought is, is that there's got to be a way

11   that the parties can work out to the -- and present

12   something appropriate to the Court that would permit us to

13   come to a system where, okay, this is a common issue, we

14   reach agreement on that and then we can schedule an

15   appropriate trial on that kind of issue.  It's the same

16   thing on there's something as important as trustee standing.

17   Whether it's ripe at this point is an issue, but we think

18   that there are important issues as to trustee standing that

19   need to be heard and ought to be -- the Court ought to have

20   the benefit of our views before it decides.

21             Look, we understand each case and under the system

22   it's a separate adversary proceeding and a different party

23   might look at it a little differently, they're always free

24   to do that, that's their right, but we think the Court ought

25   to have the benefit of our views before it decides that

Page 20

1  issue so that it will be simpler in the administration of

2  these cases.

3          Those are our two -- those are our points.

4          THE COURT:  Okay.

5          MR. KIRBY:  Thank you.

6          THE COURT:  Why don't you wait, Mr. Sheehan.

7          MR. SHEEHAN:  Oh, I'm sorry.

8          THE COURT: Let's just --

9          MR. SHEEHAN:  All right, thank you, Your Honor.

10         THE COURT:  Okay, go ahead.

11         MR. SCHWED:  Greg Schwed of Loeb & Loeb

12  representing various defendants.

13         Just following up on Mr. Kirby and Ms. Neville's

14  point, the mechanics of such a notice I think could be

15  handled --

16         THE COURT:  That seems to be the easiest --

17         MR. SCHWED:  I think it is.  We did it in the --

18  with Judge Rakoff, he didn't want a formal intervention

19  motion in a case that we wanted to be heard on and he simply

20  ordered a five-page amicus brief, which was perfectly

21  adequate for the purpose of not burdening the Court with

22  excessive motions but allowing that kind of input.

23         Thank you, Your Honor.

24         THE COURT:  All right.

25         MS. GORCHKOVA:  Good morning, Julie Gorchkova of

Page 21

1    Becker & Poliakoff.  We represent the defendants in the 128

2    avoidance actions in which a motion to dismiss have been

3    filed.  In addition to that we also have two other cases

4    that are currently on a separate track.

5              First I want to say that we join in in the

6    intervenors' request for consolidated briefing of various

7    common issues as well as consolidated discovery process.

8              THE COURT:  Did you consult with them before you

9    made your motions to dismiss?

10             MS. GORCHKOVA:  I'm not sure whether we consulted

11   with intervenors when we filed the motions, but I think that

12   raises an important point that I actually wanted to address,

13   which is sort of a background context in which this motion

14   to dismiss was filed.

15             Since December of 2010 the trustee has been

16   extending the deadlines to file answers and/or motions to

17   dismiss to the complaints.

18             At the time right before our motion to dismiss was

19   filed the deadline to file a responsive pleading to any

20   complaints was November 1st.  In mid October we reached out

21   to the trustee's office inquiring whether additional

22   extensions would be granted.  The trustee's office responded

23   that they are -- they intend to extend the deadlines through

24   January but that there will be a modification to the

25   stipulation order.

1          Going back and forth the parties were unable to

2     agree to a clause in the order, because as the order was

3     drafted it required us to notify the trustee's office within

4     30 days of the death of one of our clients.  We couldn't

5     agree to that because sometimes we don't learn about the

6     death of our clients until we're informed so we respectfully

7     requested that the order be modified to put in a language

8     that we would be required to notify the trustee within 30

9     days of learning of a death of a client.

10          Unfortunately the parties couldn't reach an

11     agreement on that so we were forced to file motions to

12     dismiss in 128 cases under approximately a 5-day deadline.

13          So we filed the motions to dismiss after the

14     trustee and SIPC had filed their briefs and response, my

15     understanding is that various counsel for the intervenors

16     have reached out to my colleague, Helen Chaitman, advising

17     her that they would like to be heard on various issues

18     because these -- our motions to dismiss raises issues that I

19     believe are common to pretty much all avoidance action

20     defendants.

21          We think it's fair that parties should not be

22     bound be potential decisions -- determinations based on our

23     motion without --

24          THE COURT:  Well they won't be bound by potential

25     decisions.

1          MS. GORCHKOVA:  Bound by determinations made on

2     common issues that we briefed.

3          So after we -- after we spoke to the intervenors

4     we reached out to the trustee's counsel to see if they would

5     agree to stay the submission and the final briefing of our

6     motion to dismiss in anticipation that there will be some

7     sort of a case management conference, and if Your Honor

8     decides that consolidated briefing on common issues is

9     appropriate that our motion, as well as any consolidated

10    briefing, should be put on the same -- on the same track.

11         And sort of a unique issue as to our clients, to

12    the extent that the Court does order consolidated briefing

13    we would like our reply brief to be put on the same briefing

14    schedule as the consolidated briefing, because the trustee,

15    there's a possibility that new issues will be raised or the

16    trustee and the SIPC will provide responses that were not --

17    that were not addressed in our initial briefing and we would

18    like to have an opportunity to be able to respond to any new

19    arguments that are made or any new issues that arise.  But

20    if our reply brief schedule, which is currently due next

21    Friday with the consent of the trustee's office, if -- if

22    we're -- if we have to submit a reply brief by next Friday

23    and Your Honor orders consolidated briefing our clients will

24    be precluded from briefing potential new issues and would be

25    bound by determinations that they did not have an

Page 24

1    opportunity to brief.

2            THE COURT:  Would you explain to me again why you

3    had to make a motion to dismiss but nobody else did?

4            MS. GORCHKOVA:  Because we could not agree on a

5    clause and the stipulation extending time to respond that

6    required us to notify the trustee's office within 30 days of

7    a death of a client.

8            THE COURT:  But wouldn't everybody else have the

9    same problem?

10           MS. GORCHKOVA:  I -- my understanding is that that

11   was an issue for other attorneys but --

12           THE COURT:  Okay.

13           MS. GORCHKOVA:  -- I'm not sure how, but I know

14   that our position was we did not want to be bound by that

15   clause, because given the amount of -- the number of

16   (indiscernible - 00:23:54) defendants we have in 128 actions

17   it has -- it has been our experience that we're not

18   immediately in some instances notified --

19           THE COURT:  I understand that.

20           MS. GORCHKOVA:  -- about the death of a client.

21           THE COURT:  I understand that, but I'm just

22   wondering why everybody else didn't have the same problem.

23           MS. NEVILLE:  We did, Your Honor, we did have to

24   file motions to dismiss in 80 of our cases because the

25   trustee did not extend the time to answer or otherwise --

1              THE COURT:  Okay.

2              MS. NEVILLE:  So those -- those are defendants

3     whose transactions fell more within the two-year period than

4     the six-year period.

5              THE COURT:  All right.

6              MS. GORCHKOVA:  And just one other point on the

7     consolidated briefing.  We believe that that process has

8     been successful before Judge Rakoff, it simplified the

9     process.  Similarly here we think that it would simplify the

10    process for the Court.  It would enable the Court to issue

11    one decision on common issues as opposed to having to render

12    multiple decisions, and it would also streamline that --

13             THE COURT:  Let me ask you a question.  If I

14    approve a procedure for consolidated briefing and someone

15    chooses not to submit a brief am I still bound by the

16    determination?

17             MS. GORCHKOVA:  If they're given an opportunity to

18    brief the issue and they're not -- if they did not agree --

19    and they do not brief that issue I believe that they would

20    be bound.

21             THE COURT:  What if it's an issue regarding

22    subject matter jurisdiction?

23             MS. GORCHKOVA:  I would think that if it's an

24    issue of subject matter jurisdiction and it was briefed and

25    that person had an opportunity to brief it then yes.

```
 1              THE COURT:  All right.

 2              MS. GORCHKOVA:  One other point -- one other point

 3    that's unique.

 4              We have -- as I mentioned earlier -- we have two

 5    cases that are on a different sort of procedural track.

 6    They were not part of our 128 motions to dismiss.  One of

 7    the -- in one of those cases we retained -- we were retained

 8    subsequent to the filing of the motion.

 9              The answers have been filed in those cases, it's

10    Misinbaum (ph) adversary proceeding 104878 and Cotlekoff

11    (ph) adversary proceeding 105130, the answers were filed but

12    there were no motions ever filed.  My understanding is

13    (indiscernible - 99L25L95) discovery is complete.

14              To the extent that the Court does order -- does

15    decide to proceed with some sort of consolidated briefing

16    and consolidated discovery we would like those cases to be

17    included in this group.

18              THE COURT:  All right, thank you.

19              MS. GORCHKOVA:  Thank you.

20              MR. LEVY:  Your Honor?

21              THE COURT:  Yes, Mr. Levy.

22              MR. LEVY:  Can I just amplify in response to --

23    Richard Levy of Pryor Cashman.

24              The question that you asked Ms. Gorchkova a moment

25    ago about whether a party would be bound by a consolidated
```

Page 27

1   proceeding I think the answer is as follows, and it's the

2   way it seemed to work in front of Judge Rakoff.  He

3   consolidated a whole series of cases involving all of the

4   parties who were before him on the withdrawn cases,

5   established a master docket, established consolidated

6   proceedings for particular issues, and allowed parties to

7   brief on those.  So I think it bound everybody who had

8   notice and an opportunity to be heard in this umbrella

9   proceeding.

10          So I think in that respect a determination by Your

11   Honor on a particular issue probably, I'm fairly certain it

12   would bind all of the parties who were parties to the

13   consolidated proceeding.

14          With respect to the subject matter issue if it's

15   an issue Your Honor decides on the consolidated proceeding

16   same conclusion.  If it's a subject matter jurisdiction

17   issue that has not been raised well we all know that subject

18   matter jurisdiction is not waived.

19          THE COURT:  All right.  Mr. Sheehan?

20          MR. SHEEHAN:  Your Honor, I'm going break this

21   down into two things.  One is the motion and the other is

22   cooperation with regard to discovery.  I think they're two

23   separate issues and I want to clarify something with regard

24   to what was just said about my colleague, Ms. Chaitman.

25          Everyone agreed -- everyone agreed last November

Page 28

1    that to the modification to the procedures order that they

2    would let us know within 30 days if their client passed

3    away.  There's a reason for that.  If we don't file a claim

4    things moves very rapidly and we're not in a position

5    necessarily to keep track of everyone.  There's over 825

6    parties here.  So we thought it was a reasonable request.

7    Everyone agreed to it, including, you know, the Denton (sic)

8    firm.  The only one who didn't agree was Mrs. Chaitman

9    because she said she couldn't figure it out so she made a

10   motion.  So that's the state of that fare.

11          Your Honor obviously has familiarly with the

12   motion, I don't intend to argue it here this morning, but

13   what's very, very clear is that all of my colleagues who are

14   now suggesting they need another bite at the apple, all in

15   some way or another participated in a vast majority of these

16   issues either before Judge Lifland or before Judge Rakoff,

17   and indeed in many instances they're asking you to

18   reconsider what Judge Rakoff has already decided.

19          Now as I said, I don't want to argue that motion

20   here this morning, but I make that point for this reason,

21   they're suggesting wait a minute, you can't allow this brief

22   by Ms. Chaitman to go forward, you know, we need an

23   opportunity to be heard, we're getting shut out.  That's

24   just not so.  That's just not so.

25          So what we have before Your Honor is, is a motion

1   that's fully briefed, absent a reply brief.  We responded to

2   that.  They should reply to it and we should be heard on

3   March 12th as scheduled.  Your Honor will decide those

4   issues, and I believe that those issues, except for the

5   extraneous that are out there, and there is a standing issue

6   whether Mr. Nisselson should be the plaintiff or whether

7   Mr. Becard (ph) should be the plaintiff.  I agree, that

8   unique issue has not been briefed before, and if somebody

9   wants to brief that we're more than willing to engage in

10  that again if they think they need a second bite at that

11  apple, but I think it's been fully briefed and it's before

12  Your Honor and it's ripe for resolution.

13          And quite frankly what does it represent?  Just to

14  go back historically as Ms. -- you know, as was done here

15  before by Ms. Neville.  What are we looking at?  This is a

16  Ponzi scheme.  These are fictitious profit cases.  There is

17  $3.2 billion at stake in those 825 cases.  That's

18  $3.2 billion that the net losers don't have and haven't had

19  for five years while we're waiting for this to get resolved.

20  All of these complaints have been outstanding for over three

21  years.

22          We did have an excursion, so to speak, into the

23  District Court where many issues were debated before Judge

24  Rakoff and he did issue decisions with regard to those and

25  it did take two and a half years to resolve, and that's

Page 30

1   fine, but enough is enough.

2          Now before Your Honor we have a fully briefed

3   omnibus motion with all those issues ripe for decision, we

4   believe now in fairness -- in fairness to all of those

5   folks, all of those losers, all those people to whom we can

6   make a distribution once these are all resolved, because one

7   thing that I agree with Mrs. Neville on, these are

8   straightforward cases.  This is a fictitious profits case.

9   We proved the amount, we proved the Ponzi scheme, even Judge

10  Rakoff agreed with that in Picard (ph) versus Katz (ph).  We

11  were granted it was an $83 million judgment on that very

12  topic.

13         So what we're talking about here is getting those

14  cases to move and move rapidly.  Which is a segway into the

15  other issue, and that is how do we work together?

16         Well working together doesn't mean all 825 cases

17  work in lock step, that would be quite frankly unmanageable

18  and unworkable.  So what we suggested, and which my

19  colleagues know about and I believe Your Honor is familiar

20  with this concept was, yes, we're aware of 546(e) and the

21  argument on March 5, so what we did is we break those cases

22  down into three traunches.

23         The first traunch being those cases that are only

24  two-year cases, which would not be affected by Judge Rakoff,

25  and have more than 50 percent of the amount is in the two-

1    year period.  All right?

2            So we have a -- then we have another group of

3    cases and those cases had to answer on January 17, and

4    that's why you have before Your Honor a number of cases

5    where we've actually had answers.  One hundred cases where

6    there are answers and recollects in 70 of those cases we've

7    already had initial case management conferences.  Those

8    cases are moving forward.  We're on path to get those cases

9    ready before Your Honor for an eventual trial if they don't

10   settle in the interim.

11           Then the second traunch is those cases where the

12   two-year number plus the six-year number is, you know, makes

13   it -- it's more than 50 percent of the numbers in the six-

14   year period.  Those cases we have for April.

15           And then the last is in July, and those cases were

16   all the numbers in the six-year period.

17           THE COURT:  What is the April date?

18           MR. SHEEHAN:  April --

19           THE COURT:  No, no --

20           MR. SHEEHAN:  -- 17th.

21           THE COURT:  -- no, what is the significance for

22   that?

23           MR. SHEEHAN:  It is -- well we broke them out,

24   Your Honor, is, is that group has more than 50 percent of

25   the number in the six-year period.  So we pushed them out

Page 32

1    and hope --

2            THE COURT:  But what's supposed to happen in

3    April?

4            MR. SHEEHAN:  Pardon?

5            THE COURT:  What is supposed to happen in April?

6            MR. SHEEHAN:  They're supposed to either answer or

7    otherwise move --

8            THE COURT:  Okay.

9            MR. SHEEHAN:  -- or we will at that time extend it

10   again because of the 546(e) overhang from the circuit.  And

11   then in July they're all the six-year number.

12           To us it makes little sense for all those cases to

13   be moving at the same time or that the cases that are

14   already before Your Honor by way of answer or motion by

15   virtue of the January 17 date should somehow be stayed and

16   somehow put to the side while we're waiting for the others

17   to catch up.

18           As I -- as we've already demonstrated in 100 of

19   those cases they're moving forward.  We have answers, we've

20   had initial case management conferences, just what we

21   thought would happen has happened.

22           The hiccup here is this attempt to latch onto

23   Mrs. Chaitman's motion and suggest Your Honor let's call

24   everything to a halt, let's just wait until that gets

25   resolved and all the cases, you know, the litigation

1    procedures order somehow gets stayed while that happens.

2    Why should that happen?  We have 100 cases that are moving.

3    Your Honor can handle the motion.

4              With regard to working together there are three

5    things we agree we should work on, and working with the

6    clerk of the court here I think we could put together a

7    common docket.  I think Your Honor -- you know, we can work

8    that out with our adversaries and with the clerk of the

9    court and if the clerk of the court is amenable to that I

10   see no reason why that couldn't happen.

11             I also agree that probably it would work, as we

12   have in cases that Your Honor is already familiar with in

13   both Merkin (ph) and Leaf (ph), we have, you know, Judge

14   Cyganowski working as a discovery master or as a mediator in

15   the alternative.  We could do that too, we could have a

16   discovery master here so we didn't burden Your Honor with a

17   lot of discovery applications.

18             And then the last thing we could do is we could

19   coordinate depositions.  So, for example, we have Ms. -- you

20   know, Mr. Davinsky (ph) who I think Your Honor is familiar

21   with from the Muse (ph) case which you eluded to is going to

22   be tried at the end of March, he's going to testify with

23   regard to insolvency.  There's no reason to have 100

24   depositions, we could coordinate that, make him available so

25   that everyone would have the opportunity to depose

Page 34

1    Mr. Davinsky who wished to do so and we'd make his report

2    available to everyone.  We can make that effort.

3         In other words, the trustee is not suggesting that

4    he will not cooperate here and that he will not move on a

5    consolidated basis where it makes sense and we can work with

6    the Court to make that happen, but that doesn't mean

7    everything stops, we don't move forward, this motion doesn't

8    get heard, and that cases that are already answered

9    shouldn't be moving forward together.

10        That's our position.

11        THE COURT:  Okay, thank you.

12        Does anyone else want to be heard?

13        MR. BELL:  Your Honor, Kevin Bell from the

14   Securities Investor Protection Corporation.

15        Today is 1,791 in the Madoff liquidations since

16   the filing date.  During those --

17        THE COURT:  You've got a way to go before it's

18   jaundice and jaundice, but go ahead.

19        MR. BELL:  During those days, Your Honor, over

20   1,100 people who have allowed claims have not gotten the

21   money.  We are in the good faith actions going against net

22   winners who have fictitious profits that belong to those net

23   losers.  Any delay in moving that forward is very difficult

24   for me as the attorney on the case to talk to those net

25   losers who call up and say, why am I not getting my money?

1          We had the excursion to Judge Rakoff where he

2     decided a lot of the issues, I'm not going to repeat what

3     SIPC filed in its response to the motion, we believe that

4     the hearing should go forward on March 12th with regard to

5     those issues.

6          We also believe that what Mr. Sheehan has posed on

7     the -- on handling the litigation is something that SIPC

8     supports.  SIPC oversees the case, recommends to the Court

9     on fees, we want to make it as efficient and as effective as

10    possible, but we don't want to wind up in a quagmire where a

11    year from now or God forbid another 365 days where we'll be

12    over 2,000 days, we haven't gotten to resolution.

13         It's $3.2 billion of other peoples' money these

14    defendants have as SIPC and the trustee allege and we would

15    ask the Court to keep the litigation procedures orders in

16    place, to continue with the hearing that's scheduled on

17    March 12th, to have the defendants reply.  They've gotten

18    extensions, they should reply, we should have the hearing,

19    it's ripe to be decided on the issues that Mr. Sheehan

20    pointed out, we can have further briefing on the standing

21    issue which was an issue that hadn't been addressed before.

22         Thank you, Your Honor.

23         THE COURT:  Okay, thank you.

24         MS. NEVILLE:  Your Honor, may I just respond to --

25         THE COURT:  Wait a minute, wait a minute.

1            MS. NEVILLE:  Oh, I'm sorry.

2            THE COURT:  We have someone who hasn't had a

3   chance yet.

4            MR. NISSELSON:  This will be short, Your Honor.

5   Alan Nisselson, Windels Marx Lane & Mittendorf.

6            THE COURT:  Speak into the microphone.  Thanks.

7            MR. NISSELSON:  Your Honor, my firm is counsel of

8   record for the trustee on several of the proceedings before

9   Your Honor and we'd just like to say we support what

10  Mr. Sheehan has said.

11           THE COURT:  Okay.  Thank you.

12           MS. NEVILLE:  Just briefly.

13           First of all the case management order provides

14  for mediation before a hearing on any of these motions, so

15  there really isn't -- there is a real reason why the hearing

16  on Ms. Chaitman's motion should not go forward.

17           THE COURT:  Well are her clients mediating?

18           MS. NEVILLE:  I don't think so, Your Honor.

19           THE COURT:  So aren't they ready to go forward

20  then?

21           MS. NEVILLE:  They were supposed to mediate, I

22  don't know whether the trustee ever --

23           THE COURT:  Are they --

24           MS. NEVILLE:  -- offered that.

25           THE COURT:  Mr. Sheehan, are those -- are those

1    cases in mediation?

2             MR. SHEEHAN:  No they're not, but Judge Lifland

3    had decided to bypass the mediation and --

4             THE COURT:  Okay.

5             MR. SHEEHAN:  -- address the motion.

6             MS. NEVILLE:  The -- well they -- our cases are

7    still pending -- our motions to dismiss, and I can assure

8    Your Honor that we did not brief issues that were decided by

9    Judge Rakoff, so everything in our motions -- the antecedent

10   debt was briefed again because we were not part of the

11   briefing before Judge Rakoff.  Other than that all of the --

12            THE COURT:  Did you -- did you have the

13   opportunity participate in that briefing?

14            MS. NEVILLE:  Not really, we got cut out by -- by

15   some administrative accident.

16            THE COURT:  That I don't understand.  Couldn't you

17   seek to intervene or put in a brief?  See that's part of the

18   concern I expressed.  To the extend you're going to be

19   bound --

20            MS. NEVILLE:  We filed a --

21            THE COURT:  -- if you don't --

22            MS. NEVILLE:  We filed a motion to -- to appear in

23   that and it did not get transferred in time, so we never got

24   heard in that motion.

25            But, Your Honor, I did participate with the

```
 1   defense group as we briefed it so I didn't really feel like
 2   I was cut out of things.  All of the other issues are new.
 3            And we've heard this speech about other people's
 4   money for a very long time.  The trustee is sitting on a
 5   huge fund and there's $4 billion in the visits' fund that
 6   Richard Greedon (ph) is now seeking to dispense.  We believe
 7   that the customers who actually lost money could be fully
 8   compensated by the money the trustee is holding --
 9            THE COURT:  That's an argument that's --
10            MS. NEVILLE:  -- and the $4 billion --
11            THE COURT:  -- that's currently before me.
12            MS. NEVILLE:  Yes.
13            THE COURT:  Although it doesn't sound appropriate
14   for a motion to dismiss.  Wouldn't I have to go outside the
15   record to figure that out?
16            MS. NEVILLE:  On the -- on the standing issue?
17   Well there is --
18            THE COURT:  If the argument is that there's
19   already enough money out there --
20            MS. NEVILLE:  Your Honor could rely on the public
21   record because the trustee published very detailed reports
22   on the claims that have been allowed and the money that is
23   being held by him, and --
24            THE COURT:  But there are also claims subject to
25   objection, right?
```

1              MS. NEVILLE:  There are only 263 claims that have

2      not been decided.

3              THE COURT:  How much do they aggregate?

4              MS. NEVILLE:  I'm not exactly sure.

5              THE COURT:  I would have to go outside the record

6      and look at that wouldn't I?

7              MS. NEVILLE:  I think we have that in the record

8      as well.  Rick, do we have that in the record?

9              THE COURT:  And what's the interest -- what's the

10     interest rate that's accrued on all those claims in five

11     years?  What's the interest that's accrued?

12             MS. NEVILLE:  Your Honor, we don't believe that

13     any interest should accrue.  That's another issue we'd like

14     to brief is the prejudgment interest, but at the --

15             THE COURT:  Isn't that up on appeal also?

16             MS. NEVILLE:  -- treasury rate --

17             UNIDENTIFIED SPEAKER:  Yes, Your Honor.

18             MS. NEVILLE:  -- it's --

19             THE COURT:  I'm not going decide any issues that

20     are before the Second Circuit anymore than I'm going to

21     decide issues that are currently before the Supreme Court.

22             MS. NEVILLE:  Your Honor, that issue is not before

23     the Second Circuit.

24             THE COURT:  I thought --

25             THE COURT:  There are two issues before the Second

Page 40

1   Circuit right now.  546(e) and the inflation adjustment.

2   Those with the two issues.

3           THE COURT:  All right.  Yes.

4           MR. SCHWED:  If I might just the mechanical

5   question it seemed as if there is one question which both

6   sides agree upon and that's the master docket which we have

7   discussed in the past and I think there was general

8   agreement but it's not happened.  I don't know if it

9   requires a perfunctory order from the Court or how it should

10  be done to make it happen so there are dual entries

11  essentially --

12          THE COURT:  Uh-huh.

13          MR. SCHWED:  -- individual adversary proceedings,

14  and a master calendar, but that would go a long way toward I

15  think addressing some of the problems we've raised here.

16          I defer to Your Honor obviously in terms of the

17  best way to handle that.

18          THE COURT:  Well it seems to me that's the easiest

19  thing to deal with, because even if you can't have a

20  consolidated docket the trustee could send out an email

21  blast to everybody saying these motions were filed in these

22  cases go look at the docket sheets.

23          MR. SCHWED:  That would be fine as well, Your

24  Honor.

25          THE COURT:  That's an easy one, but the problem I

1    have with -- yes, sir.

2            MR. KIRBY:  Just one quick point.

3            On the issue of discovery we think it is a much

4    broader issue that we need to coordinate on than the issue

5    identified by Mr. Sheehan.

6            THE COURT:  All right.  Let me deal with the

7    motions and the consolidated motions.

8            I mean in principal I don't disagree with you,

9    Ms. Neville, but the problem is I have 1,000 cases that have

10   to be tried and maybe another 1,000 claims objections, or

11   whatever the number is, that have to be resolved, and what

12   you're really suggesting and what caught my ear is when you

13   said don't try the case, it's scheduled for trial, is then

14   all these proceedings can't move any faster than the slowest

15   case.  So if somebody calls up and they say, oh, I can't be

16   in town I need an extension, I have to -- I'm going away on

17   a vacation with my kids that slows everything up.

18           If you can come up with a proposal which makes

19   sense I'll certainly hear it, but right now I have a pending

20   motion to dismiss, it's been out there for a while,

21   apparently you found out about it because I suspect that

22   what was contributed to writing the letter that I got and my

23   intention is to decide that motion.  It doesn't stop people

24   from making other motions and raising arguments that I

25   haven't considered.

Page 42

1          If I decide it one way based on a certain argument

2    and you make the same argument it's probably going to be

3    decided the same way, but I don't know of any better way to

4    deal with and start to try these 1,000 cases.

5          MS. NEVILLE:  Well, Your Honor, I think there are

6    two different things --

7          THE COURT:  I mean the bottom line is I'm not

8    going stay anything.

9          MS. NEVILLE:  There are two different things here.

10   One is the consolidated briefing and the other is the things

11   -- the cases moving to trial.

12          In the consolidated briefing if you gave us two

13   more weeks we would intervene and Ms. Chaitman --

14          THE COURT:  You haven't even told me what issues

15   you want to brief.

16          MS. NEVILLE:  -- or put our motions on the

17   calendar, because we've got -- our motions have been pending

18   since last March.  So that we at least can move in lock stop

19   with Ms. Chaitman.  That isn't stopping the trial, that is

20   just moving 10 or more issues together with almost 200

21   cases.

22          THE COURT:  Uh-huh.

23          MS. NEVILLE:  So that's one thing I would ask Your

24   Honor.

25          I can't really speak to the trial issues since

Page 43

1    none of my cases I haven't answered in any of my cases.

2              THE COURT:  All right.  So the proposal is to put

3    the pending motions to dismiss on a track.

4              MR. SHEEHAN:  Well I haven't looked down recently

5    but they're the same as what they just filed, you know, I

6    don't know if that helps or not.

7              THE COURT:  Well why don't you just file an answer

8    and I'll just read all the papers at the same time?  I'm not

9    going to decide Ms. Chaitman's motions from the bench.

10             MR. SHEEHAN:  No, I understand that, Your Honor.

11             THE COURT:  Yeah.

12             MR. SHEEHAN:  Fine.

13             THE COURT:  When can you file -- what is it 180

14   separate motions or --

15             MR. SHEEHAN:  I think there's -- I think it boils

16   down to 35 actually.

17             MS. NEVILLE:  Is it only --

18             MR. SHEEHAN:  It may represent -- you know,

19   there's always a distinction here the parties versus claims,

20   et cetera, so I think there's actually 35 motions, may

21   represent as in, you know, many more people.

22             MS. NEVILLE:  Yes.

23             MR. SHEEHAN:  I'd have to look, Your Honor, but

24   we'd want to file again one brief in response to all of

25   those arguments.

1             I don't know, after saying all I said this morning

2    I don't want to take a lot of time here, so I'd say three

3    weeks we'll have an answer.

4             THE COURT:  So you'll file your response to their

5    motions in three weeks?

6             MR. SHEEHAN:  Yes.

7             MR. BELL:  And SIPC will also, Your Honor.

8             THE COURT:  Okay.

9             MS. NEVILLE:  And then can we -- may we put our

10   responses on the same track with Ms. Chaitman's?

11            THE COURT:  I will -- I mean my -- Ms. Chaitman's

12   motion is scheduled for what the 12th, I'll hear it then.

13            UNIDENTIFIED SPEAKER:  It's scheduled for the

14   16th.

15            THE COURT:  Whatever the date is.

16            MS. GORCHKOVA:  I'm sorry, Your Honor.

17            UNIDENTIFIED SPEAKER:  12th.

18            MS. NEVILLE:  Even though the issues overlap?

19            THE COURT:  I don't know what the issues are in

20   their motion, but then we're getting back into the same --

21            MS. NEVILLE:  I know.

22            THE COURT:  -- concern that I expressed, then

23   somebody else is going to want to join in and file a motion

24   to dismiss, and you know, it'll be 2017 before I start to

25   consider these things.

1          MS. NEVILLE:  Well, Your Honor, those people who

2    have not moved to dismiss have either moved to answer or

3    they have lengthy extensions to answer.

4          THE COURT:  But you have a filed motion -- you

5    have filed motions and you're telling me they've been

6    pending for a year now.

7          MS. NEVILLE:  Yes.

8          THE COURT:  So I have less concern with you

9    because you've teed up your issues.  Some of those issues

10   may have already been resolved by Judge Rakoff, I don't

11   know, but --

12         MS. NEVILLE:  Only one, the antecedent debt.

13         MR. SHEEHAN:  I have a suggestion, Your Honor,

14   we'll respond to all their motions.

15         THE COURT:  All right.

16         MR. SHEEHAN:  The ones they just filed and the

17   ones they filed a year ago.  They're the same motions as far

18   as I'm concerned.  We will respond to the 57 that were just

19   filed and the 35 they filed last year, we'll file a response

20   -- an omnibus response to all of their outstanding motions

21   so we get rid of all of them.

22         THE COURT:  Okay.

23         MR. SHEEHAN:  One way or another.

24         THE COURT:  Three weeks?  Three weeks from today

25   is -- what's the last Friday in first week of March?

1              MR. SHEEHAN:  March 7th.

2              THE COURT:  March 7th, that's three weeks, right?

3              MR. SHEEHAN:  Can we get Monday?  They'll have the

4    weekend.  (Indiscernible - 00:47:48).

5              THE COURT:  March 10th.  All right.

6              MR. SHEEHAN:  All right.

7              THE COURT:  Omnibus response.

8              MR. SHEEHAN:  Thanks, Your Honor.

9              THE COURT:  I would appreciate it if you would

10   write a letter just identifying those adversary proceedings

11   that are --

12             MR. SHEEHAN:  Absolutely, Your Honor.

13             MS. NEVILLE:  So, Your Honor, I guess what -- all

14   I'm asking then --

15             THE COURT:  And I'll give you a week to file the

16   reply?

17             MS. NEVILLE:  Fine.

18             So that actually puts us very close to being on

19   the same calendar as Ms. Chaitman's motions.

20             THE COURT:  Well you can certainly tell me why.

21             MS. NEVILLE:  It would be very nice to have them

22   all heard at the same time, Your Honor.

23             THE COURT:  I said I'll consider it, all right?

24             MS. NEVILLE:  Thank you.  Thank you.

25             THE COURT:  But I'm not changing the argument date

Page 47

1    for the Chaitman motions.

2              Now with respect to discovery that's a separate

3    problem.  You don't want your guy appearing in 1,000

4    separate depositions.

5              MR. SHEEHAN:  Absolutely not, Your Honor, and I

6    think there are common witnesses that we could offer for

7    deposition, such as Mr. Davinsky, and there may be others.

8              Difficulty is, is that, for example, in earlier

9    cases we've proffered witnesses from FTI, which assisted us

10   throughout this process in connection with the transfers

11   themselves, and each of the transfers obviously is different

12   in each of the cases.

13             THE COURT:  Yes.

14             MR. SHEEHAN:  So I don't know that we could

15   consolidate that, and --

16             THE COURT:  Well --

17             MR. SHEEHAN:  -- other than those -- and these

18   cases I don't know that we have any other witnesses, because

19   as I said earlier, it's the transfers and the Ponzi, and

20   once -- that's our case.

21             THE COURT:  You know there's a common question I

22   guess on whether there's a Ponzi scheme.  Some people --

23             MR. SHEEHAN:  No question about that.

24             THE COURT:  -- have raised that, there's a common

25   question whether the debtor was insolvent, there's different

Page 48

1    periods of time I suppose, but --

2            MR. SHEEHAN:  And Mr. Davinsky addresses both of

3    those issues in his report and we would offer him.  You

4    know, it doesn't have to be --

5            THE COURT:  Look, it makes sense it seems to me in

6    the first instance to negotiate or try and work something

7    out with the opposing -- with the opposing group, if that's

8    an appropriate phrase, and I'll schedule another conference

9    and make the appointment of a discovery mediator if

10   something like that makes sense.

11           MR. SHEEHAN:  That makes -- we agree.  We don't

12   disagree.

13           THE COURT:  All right.  Let me schedule another

14   hearing in this matter, let's say March 18th.

15           MR. SHEEHAN:  Fine, Your Honor.

16           THE COURT:  That's four weeks from now.  And that

17   hearing will deal with discovery, whether or not there's a

18   protocol to discovery.

19       (Pause)

20           THE COURT:  Anything else?

21           MR. SHEEHAN:  Your Honor, one last item.

22           You know, the -- it hasn't really been directly

23   addressed -- the LPO, we feel as though it should be --

24   remain in place, it should remain active, we should still

25   move forward with our cases, that the stay that our

Page 49

1    adversaries have asked for here should not be imposed, that

2    we should be moving forward on each of these --

3            THE COURT:  I haven't -- I'm issuing any stays.

4            MR. SHEEHAN:  Thank you, Your Honor.

5            THE COURT:  All right.  Thank you.

6            MR. SHEEHAN:  Thank you, Judge.

7            THE COURT:  Thank you.

8        (Whereupon these proceedings were concluded at 11:53

9    AM)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1        C E R T I F I C A T I O N

2

3    I, Dawn South, certify that the foregoing transcript is a

4    true and accurate record of the proceedings.

5       Dawn
6       South                Digitally signed by Dawn South
                             DN: cn=Dawn South, o, ou,
7                            email=digital1@veritext.com,
                             c=US
                             Date: 2014.03.07 15:44:09 -05'00'

8    AAERT Certified Electronic Transcriber CET**D-408

9

10   Veritext

11   330 Old Country Road

12   Suite 300

13   Mineola, NY 11501

14

15   Date:  February 19, 2014

16

17

18

19

20

21

22

23

24

25