**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, NY 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Oren J. Warshavsky
Geoffrey A. North
Tatiana Markel
Dominic Gentile

*Attorneys for Irving H. Picard, Trustee for the*
*Substantively Consolidated SIPA Liquidation of*
*Bernard L. Madoff Investment Securities LLC and*
*the estate of Bernard L. Madoff*

**Hearing Date:  December 17, 2014 at 10 a.m.**
**Objection Deadline:  December 10, 2014**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, <br><br>     Plaintiff-Applicant, <br><br> v. <br><br> BERNARD L. MADOFF INVESTMENT SECURITIES LLC, <br><br>     Defendant. | Adv. Pro. No. 08-01789 (SMB) <br><br> SIPA LIQUIDATION <br><br> (Substantively Consolidated) |
| In re: <br><br> BERNARD L. MADOFF, <br><br>     Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, <br><br>     Plaintiff, <br><br> v. <br><br> HSBC BANK PLC, et al., <br><br>     Defendants. | Adv. Pro. No. 09-01364 (SMB) |

**MOTION FOR ENTRY OF ORDER PURSUANT TO SECTION 105(a)
OF THE BANKRUPTCY CODE AND RULES 2002 AND 9019 OF THE
FEDERAL RULES OF BANKRUPTCY PROCEDURE APPROVING
A SETTLEMENT AGREEMENT BY AND BETWEEN
THE TRUSTEE, ON THE ONE HAND, AND PRIMEO FUND
AND HERALD FUND SPC, ON THE OTHER HAND**

TO:   THE HONORABLE STUART M. BERNSTEIN
      UNITED STATES BANKRUPTCY JUDGE:

Irving H. Picard (the "Trustee"), as trustee for the liquidation of Bernard L. Madoff

Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15

U.S.C. §§ 78aaa–*lll* ("SIPA") and the substantively consolidated estate of Bernard L.

Madoff ("Madoff," and together with BLMIS, collectively, the "Debtors"), by and through

his undersigned counsel, submits this motion (the "Motion") seeking entry of an order (the

"Approval Order"), pursuant to section 105(a) of the United States Bankruptcy Code, 11

U.S.C. § 101 *et seq.* (the "Bankruptcy Code"), and Rules 2002 and 9019 of the Federal Rules

of Bankruptcy Procedure (the "Bankruptcy Rules"), approving a settlement, the terms and

conditions of which are set forth in an agreement (the "Agreement")[1] by and between the

Trustee, on the one hand, and Primeo Fund (In Official Liquidation) acting by its joint

official liquidators, Gordon MacRae and Eleanor Fisher ("Primeo") and Herald Fund SPC

(In Official Liquidation) acting by its principal joint official liquidators, Russell Smith and

Niall Goodsir-Cullen ("Herald," and together with Primeo, the "Funds"), on the other hand.

In support of the Motion, the Trustee respectfully represents as follows:

**PRELIMINARY STATEMENT**

1.      The Agreement represents a good faith, complete settlement of all disputes

---

[1] The form of Agreement is attached hereto as Exhibit "A."

raised in this adversary proceeding between the Trustee and the Funds and the customer

claim Herald submitted in respect of BLMIS Account 1FR109.  The settlement will benefit

the customer property fund by approximately $497 million and, even accounting for a claim

under Bankruptcy Code section 502(h), will increase by 1.32% the distribution to BLMIS

customers with allowed claims.  The Trustee therefore respectfully requests that the Court

approve this settlement.

## BACKGROUND

### *The Commencement of the BLMIS Liquidation Proceeding*

2.      On December 11, 2008 (the "Filing Date"),[2] the Securities and Exchange

Commission ("SEC") filed a complaint in the United States District Court for the Southern

District of New York (the "District Court") against the Debtors (Case No. 08 CV 10791).  In

the complaint, the SEC alleged that the Debtors engaged in fraud through the investment

advisor activities of BLMIS.

3.      On December 15, 2008, pursuant to section 78eee(a)(4)(A) of SIPA, the SEC

consented to a combination of its own action with an application of the Securities Investor

Protection Corporation ("SIPC").  Thereafter, pursuant to section 78eee(a)(3) of SIPA, SIPC

filed an application in the District Court alleging, *inter alia*, that BLMIS was not able to

meet its obligations to securities customers as they came due and, accordingly, its customers

needed the protection afforded by SIPA.

4.      On that date, the District Court entered the Protective Decree, to which

BLMIS consented, which, in pertinent part:

---

[2]  In this case, the Filing Date is the date on which the SEC commenced its suit against BLMIS, December 11, 2008, and a receiver was appointed for BLMIS.  *See* section 78*lll*(7)(B) of SIPA.

(i)     appointed the Trustee for the liquidation of the business of BLMIS pursuant to section 78eee(b)(3) of SIPA;

(ii)    appointed Baker & Hostetler LLP as counsel to the Trustee pursuant to section 78eee(b)(3) of SIPA; and

(iii)   removed the case to this Court pursuant to section 78eee(b)(4) of SIPA.

5.     On April 13, 2009, an involuntary bankruptcy petition was filed against Madoff.  On June 9, 2009, this Court entered an order substantively consolidating Madoff's Chapter 7 estate with the BLMIS SIPA proceeding.

## THE TRUSTEE'S CLAIMS AGAINST THE FUNDS

6.     The Funds are Cayman Islands funds that were primarily invested with BLMIS (with Herald's investments being held at all material times via its Luxembourg-based custodian, HSBC Securities Services (Luxembourg), S.A. ("HSSL")).  The Funds are currently in liquidation in the Cayman Islands.

7.     Between 1993 and 2007 Primeo maintained two accounts with BLMIS, 1FR060 and 1FR092.  Between 2004 and the Filing Date, Primeo was also an indirect investor with BLMIS through other funds, including Herald.  In the two years prior to the Filing Date, Primeo withdrew from its BLMIS accounts approximately $15,400,000.  In the six years prior to the Filing Date, Primeo withdrew approximately $139,350,000.00 ("Primeo Six-Year Transfers").  The Primeo Six-Year Transfers are solely withdrawals of principal.

8.     Between 2004 and the Filing Date, Herald, through HSSL, maintained one account with BLMIS, 1FR109.  In the six years prior to the Filing Date, Herald, through HSSL, withdrew from that BLMIS account approximately $567,800,000.00 ("Herald Six-Year Transfers," and together with the Primeo Six-Year Transfers, the "Transfers").  The Herald Six-Year Transfers are solely withdrawals of principal.

9.      On December 5, 2010, the Trustee filed an amended complaint in this adversary proceeding (the "Amended Complaint") against the Funds, among others, seeking to (a) avoid, preserve, and recover the Transfers under sections 547, 548, 550 and 551 of the Bankruptcy Code and SIPA § 78fff-2(c)(3); (b) recover subsequent transfers under Bankruptcy Code section 550(a) and SIPA section 78fff-2(c)(3); (c) disallow Herald's customer claim against the BLMIS estate under  section 502(d) of the Bankruptcy Code; and (d) equitably subordinate Herald's customer claim against the BLMIS estate under section 510(c) of the Bankruptcy Code (collectively, the "Trustee's U.S. Claims").  The Adversary Proceeding is pending in this Court.[3]

10.      On December 9, 2010, the Trustee and BLMIS also filed a proceeding against Primeo in the Cayman Court, Cause No. FSD 0275 of 2010-AJJ ("Cayman Proceeding"), as a protective action advancing avoidance and constructive trust claims under U.S. and Cayman law ("Trustee's Cayman Claims," and together with the Trustee's U.S. Claims, the "Trustee's Claims").  Primeo filed a Defence and Counterclaim in the Cayman Proceeding, denying the Trustee's Cayman Claims and asserting counterclaims against BLMIS for breach of contract and fraudulent misrepresentation ("Primeo's Cayman Claims").  In January 2011, various preliminary issues were tried in the Cayman Court, including whether the Trustee may assert avoidance claims under U.S. law and/or Cayman law in the Cayman Islands, and whether Primeo could offset the Trustee's avoidance claims with its counterclaims against BLMIS. In January 2013, the Cayman Court ruled on those preliminary issues and both the Trustee and Primeo appealed certain of those issues to the

---

[3] Terms not otherwise defined shall have the meaning ascribed to them in the Agreement.

Cayman Islands Court of Appeal.  On April 16, 2014, the Cayman Islands Court of Appeal

ruled on certain issues and adjourned one issue for further argument.

11.     In December 2010, the Trustee commenced an adversary proceeding against

JPMorgan Chase ("JPM") alleging that JPM received approximately $425 million in direct

and indirect transfers from BLMIS, including $154 million that JPM redeemed from Herald.

In December 2013, the Trustee and JPM reached a settlement whereby JPM paid the Trustee

$325 million.  Herald has asserted to the Trustee in their negotiations that it is entitled to a

$154 million credit based on the settlement amounts paid by JPM, which the Trustee

disputes.

## HERALD'S CUSTOMER CLAIM

12.     On June 23, 2009, Herald timely filed a customer claim with the Trustee,

which the Trustee has designated as Claim No. 10817 (the "Herald Customer Claim").  The

Herald Customer Claim asserts that Herald is entitled to the securities reflected on its

BLMIS Account statement for the period ending November 30, 2008, or in the alternative,

its net equity.

## SETTLEMENT DISCUSSIONS AND MEDIATION

13.     During the past several years, the Parties, through their respective counsel,

have engaged in multiple good faith discussions aimed at resolving the Trustee's Claims and

the amount of the Herald Customer Claim.  Settlement discussions were complicated by the

unsettled nature of cross-border insolvency law both in the United States and abroad.  In

particular, the determination of the law applicable to the Cayman Proceedings was the

subject of much litigation between the parties, with several issues left to be determined by

the Privy Council in London.  Many more years of litigation would have been required

simply to resolve the law applicable to the underlying dispute between the parties in the Cayman Islands.

14.     Given the nature of Primeo's substantive investment in Herald, it was almost impossible to resolve separately the Trustee's Claims against Herald and Primeo.  After Primeo filed a petition to wind up Herald with the Cayman Court, the Cayman Court placed Herald into official liquidation on July 16, 2013, with Herald's board of directors replaced by independent Court-appointed official liquidators, thereby creating a new opportunity for a global resolution of the Trustee's Claims.

15.     In March 2014, the Parties voluntarily entered mediation.  On June 11, 2014, the Parties agreed to mediation protocols and selected a mediator (the "Mediator").  Since then, the Parties have actively engaged in mediation, including filing initial and reply mediation statements, conducting numerous in-person and telephonic meetings with the Mediator, and submitting various supplemental materials to the Mediator.  Through the mediation process, the Parties were able to reach a compromise.  While the Funds dispute their liability for the Trustee's Claims, and the Trustee disputes his liability for Primeo's Cayman Claims, the Parties recognize the cost and risk associated with the Adversary Proceeding and the Cayman Proceeding, and have decided to settle to avoid the delay, expense and uncertainties of litigation in the United States and the Cayman Islands.

## OVERVIEW OF THE AGREEMENT

16.     The principal terms and conditions of the Agreement are generally as follows (as stated above, the Agreement is attached as Exhibit "A" and should be reviewed for a complete account of its terms):

- Herald will receive credit for $100,098,057 of the amount paid by JPM to the Trustee, reducing the Herald Six-Tear Transfers from

$567,800,000 to $467,701,943 ("Herald Adjusted Six-Year

Transfers").  Herald shall pay the Trustee 100% of the Herald Adjusted

Six-Year Transfers.

- Herald shall have an allowed customer claim in the SIPA Proceeding

  in the amount of $1,639,896,943.  The allowed claim is comprised of

  Herald's net equity of $1,172,195,000, plus an increase of

  $467,701,943 under section 502(h) of the Bankruptcy Code.  (Primeo

  did not file a customer claim.)

- At Closing, the Funds shall pay or cause to be paid to the Trustee for

  the benefit of the customer property fund $496,844,288 in full and

  final satisfaction of the Trustee's Claims, as follows: (i) $500,000 from

  SIPC advance; and (ii) $496,344,288 from the catch-up distribution

  owed to Herald based on its Allowed Claim.[4]  This amount represents

  Primeo's Settlement Payment of $29,142,345 and Herald's Settlement

  Payment of $467,701,943.

- At Closing, the Trustee shall pay Herald $258,975,845, consisting of

  the balance of the catch-up distribution owed to Herald under its

  allowed claim.

---

[4] As of the date of the Agreement, the Bankruptcy Court has approved four *pro rata* interim distributions to BLMIS customers with allowed customer claims of 4.602%, 33.556%, 4.721%, and 3.180%, respectively (46.059% total).  Accordingly, in order to catch up Herald's distribution to that of other customers with allowed claims, at the Closing, the Trustee will pay Herald 46.059% of its allowed claim, or $755,320,133.  The amount that the Funds owe the Trustee on account of the six-year transfers ($496,844,288) will be deducted from SIPC advance and the catch-up payment.

- The Trustee will release, acquit, and absolutely discharge the Funds and their Liquidators on the specific terms set forth in the Agreement.

- The Funds and the Liquidators will release, acquit, and absolutely discharge the Trustee and all his agents and BLMIS and its consolidated estate on the specific terms set forth in the Agreement.

- The Parties shall submit (i) to the Bankruptcy Court, a stipulation requesting the dismissal of the Adversary Proceeding as against the Funds, and (ii) to the Cayman Court, documents seeking the dismissal of the Cayman Proceeding.

## RELIEF REQUESTED

17.     By this Motion, the Trustee respectfully requests that the Court enter an order substantially in the form of the proposed Order attached as Exhibit "B" approving the Agreement.

## LEGAL BASIS

18.     Bankruptcy Rule 9019(a) states, in pertinent part, that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Courts have held that in order to approve a settlement or compromise under Bankruptcy Rule 9019(a), a bankruptcy court should find that the compromise proposed is fair and equitable, reasonable, and in the best interests of a debtor's estate.  *In re Ionosphere Clubs, Inc.*, 156 BR 414, 426 (S.D.N.Y. 1993), *aff'd*, 17 F.3d 600 (2d Cir. 1994) (citing *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968)).

19.    The Second Circuit has stated that a bankruptcy court, in determining whether to approve a compromise, should not decide the numerous questions of law and fact raised by the compromise, but rather should "canvass the issues and see whether the settlement 'fall[s] below the lowest point in the range of reasonableness.'" *Liu v. Silverman (In re Liu)*, 1998 U.S. App. LEXIS 31698, at *3 (2d Cir. Dec. 18, 1998) (quoting *In re W.T. Grant Co.*, 699 F.2d 599, 608 (2d Cir. 1983)); *see also Masonic Hall & Asylum Fund v. Official Comm. of Unsecured Creditors (In re Refco, Inc.)*, 2006 U.S. Dist. LEXIS 85691, at *21-22 (S.D.N.Y. Nov. 16, 2006); *In re Ionosphere Clubs*, 156 B.R. at 426.  "[T]he court need not conduct a 'mini-trial' to determine the merits of the underlying litigation." *In re Purified Down Prods. Corp.*, 150 B.R. 519, 522 (S.D.N.Y. 1993).

20.    In deciding whether a particular compromise falls within the "range of reasonableness," courts consider the following factors:

(i)    the probability of success in the litigation;

(ii)    the difficulties associated with collection;

(iii)    the complexity of the litigation, and the attendant expense, inconvenience, and delay; and

(iv)    the paramount interests of the creditors (or in this case, customers).

*In re Refco, Inc.*, 2006 U.S. Dist. LEXIS 85691 at *22; *Nellis v. Shugrue*, 165 B.R. 115, 122 (S.D.N.Y. 1994) (citing *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 292 (2d Cir. 1992), *cert. denied*, 506 U.S. 1088 (1993)).

21.    The bankruptcy court may credit and consider the opinions of the trustee or debtor and their counsel in determining whether a settlement is fair and equitable.  *See In re Purified Down Prods.*, 150 B.R. at 522; *In re Drexel Burnham Lambert Grp.*, 134 B.R. at 505.  Even though the court has discretion to approve settlements and must independently evaluate the reasonableness of the settlement, *In re Rosenberg*, 419 B.R. 532, 536 (Bankr.

E.D.N.Y. 2009), the business judgment of the trustee and his counsel should be considered in determining whether a settlement is fair and equitable. *In re Chemtura Corp.*, 439 B.R. at 594. The competency and experience of counsel supporting the settlement may also be considered. *Nellis*, 165 B.R. at 122. Finally, the court should be mindful of the principle that "the law favors compromise." *In re Drexel Burnham Lambert Grp.*, 134 B.R. at 505 (quoting *In re Blair*, 538 F.2d 849, 851 (9th Cir. 1976)).

22.     The Agreement greatly furthers the interests of BLMIS customers by (a) adding approximately $497 million to the customer property fund, thereby increasing it by 1.32% (b) recovering 100% of the withdrawals made by Herald from BLMIS within *six years* prior to the Filing Date; (c) recovering approximately $29 million from Primeo without granting Primeo a claim under Bankruptcy Code section 502(h); and (d) crediting to Herald only $100 million of the $154 million JPM redeemed from Herald that the Trustee already recovered through its settlement with JPM and not providing Herald with any credit under Bankruptcy Code section 502(h) for the amounts paid by JPM. Furthermore, the Agreement resolves all claims among the parties and avoids the cost and delay of what could otherwise be lengthy and contentious litigation. (Affidavit of the Trustee in Support of the Motion (the "Picard Affidavit"). A true and accurate copy of the Picard Affidavit is attached as Exhibit "C").

## CONCLUSION

23.     In sum, the Trustee submits that the Agreement should be approved to avoid lengthy, burdensome, and expensive litigation and because it represents a fair and reasonable compromise of the Trustee's Claims and the Herald Customer Claim. Because the Agreement is well within the "range of reasonableness" and confers a benefit on the

estate, the Trustee respectfully requests that the Court enter an Order approving the Agreement.

## **NOTICE**

24.    In accordance with Bankruptcy Rules 2002 and 9019, notice of this Motion has been given to (a) SIPC; (b) the SEC; (c) the Internal Revenue Service; (d) the United States Attorney for the Southern District of New York; (e) Gary S. Lee, Morrison & Foerster LLP, 250 West 55th Street, New York, NY 10019; and (f) David S. Flugman, Kirkland & Ellis LLP, 601 Lexington Avenue, New York, NY 10022.  Notice of this Motion will also be provided via email and/or U.S. Mail to all persons who have filed notices of appearance in the BLMIS proceeding and to all defendants in this adversary proceeding pursuant to the Order Establishing Notice Procedures and Limiting Notice, ECF No. 4560.  The Trustee submits that no other or further notice is required.

WHEREFORE, the Trustee respectfully requests entry of an Order substantially in

the form of Exhibit "B" granting the relief requested in the Motion.


Dated:  New York, New York
        November 17, 2014

Respectfully submitted,

BAKER & HOSTETLER LLP

By:     *s/ Oren J. Warshavsky*
        David J. Sheehan
        Email: dsheehan@bakerlaw.com
        Oren J. Warshavsky
        Email: owarshavsky@bakerlaw.com
        Geoffrey A. North
        Email: gnorth@bakerlaw.com
        Tatiana Markel
        Email:  tmarkel@bakerlaw.com
        Dominic Gentile
        Email:  dgentile@bakerlaw.com

45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201


*Attorneys for Irving H. Picard,*
*Trustee for the Substantively Consolidated*
*SIPA Liquidation of the estate of Bernard L.*
*Madoff Investment Securities LLC and the*
*estate of Bernard L. Madoff*