| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**SOUTHERN DISTRICT OF NEW YORK** | Hearing Date: April 29, 2015<br>Hearing Time: 10:00 a.m. |

------------------------------------ x
SECURITIES INVESTOR PROTECTION      :
CORPORATION,                        :
                                    :
        Plaintiff-Applicant,    : Adv. Pro. No. 08-01789 (SMB)
                                    :
    - against -                  : SIPA LIQUIDATION
                                    :
BERNARD L. MADOFF INVESTMENT        : (Substantively Consolidated)
SECURITIES LLC,                     :
                                    :
        Defendant.              :
                                    :
------------------------------------ x
In re:                              :
BERNARD L. MADOFF,                  :
                                    :
        Debtor.                 :
                                    :
------------------------------------ x
IRVING H. PICARD, Trustee for the   :
Liquidation of Bernard L. Madoff Investment :
Securities LLC,                     :
                                    :
        Plaintiff,              : Adv. Pro. No. 10-4339 (SMB)
                                    :
    - against –                  :
                                    : ECF Case
ELINS FAMILY TRUST, *et al.,*       :
                                    :
        Defendants.             :
------------------------------------ x

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION TO DISMISS

Kleinberg, Kaplan, Wolff & Cohen, P.C.
551 Fifth Avenue, 18th Floor
New York, New York 10176
Telephone:  212-986-6000
Facsimile:  212-986-8866

David Parker
Matthew J. Gold
*Attorneys for Defendants*

MGOLD\261662.5 - 11/17/14

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................1

BACKGROUND ............................................................................................................................1

ARGUMENT ..................................................................................................................................2

      I.      THE COURT MUST CONSIDER ANTECEDENT DEBT DEFENSES UNDER BANKRUPTCY CODE SECTION 548(c) ......................................2

      II.     A COURT MAY DISREGARD FOR PURPOSES OF SECTION 548(c) ONLY DEBTS THAT ARE AVOIDABLE AND THAT HAVE BEEN AVOIDED ..........................................................................................................10

      III.    PICARD CANNOT RELY UPON THE PONZI SCHEME PRESUMPTION TO PROVE FRAUDULENT INTENT ......................................................13

CONCLUSION .............................................................................................................................15

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Armstrong v. Collins,*
  No. 01 Civ. 2437 (PAC), 2010 Westlaw 1141158, 2010 U.S. Dist. Lexis 28075 (S.D.N.Y. Mar. 24, 2010) .................................................................................................................. 11

*Balaber-Strauss v. Lawrence,*
  264 B.R. 303 (S.D.N.Y. 2001) ................................................................................................ 13

*Burrage v. U.S.,*
  __ U.S. __, 134 S. Ct. 881 (2014) ............................................................................................. 3

*Cunningham v. Brown,*
  265 U.S. 1 (1924) ................................................................................................................... 13

*Daly v. Deptula (In re Carrozzella & Richardson),*
  286 B.R. 480 (D. Conn. 2002) ............................................................................................... 13

*Development Specialists, Inc. v. Akin Gump Strauss Hauer & Feld LLP (In re Coudert Brothers LLP),*
  462 B.R. 457 (S.D.N.Y. 2011) ................................................................................................. 2

*FDIC v. Hirsch (In re Colonial Realty Co.),*
  980 F.2d 125 (2d Cir. 1992) ................................................................................................... 12

*Frangos v. Doering Equipment Corp.,*
  860 F.2d 70 (3d Cir. 1988) ....................................................................................................... 3

*In re Orion Pictures Corp.*, 4 F.3d 1095, 1101 (2d Cir. 1993) ...................................................... 2

*Jimmy Swaggert Ministries v. Hayes (In re Hannover Corp.),*
  310 F.3d 796 (5th Cir. 2002) .................................................................................................. 11

*Krys v. Farnum Place, LLC,*
  768 F.3d 239, 2014 U.S. App. Lexis 18427 (2d Cir. 2014) ............................................ *passim*

*Law v. Siegel,*
  __U.S.__, 134 S. Ct. 1188 (2014) ................................................................................... 2, 3, 7, 9

*Lustig v. Weisz & Assocs. (In re Unified Commercial Capital, Inc.),*
  260 B.R. 343 (Bankr. W.D.N.Y. 2001) .................................................................................. 12

*Marshall v. Picard (In re Bernard L. Madoff Inv. Secs. LLC),*
  740 F.3d 81 (2d Cir. 2014) .................................................................................................. 6, 8

*Notinger v. Miglaccio (In re Fin. Res. Mortg., Inc.)*,
    454 B.R. 6 (D.N.H. 2011) ................................................................................................12

*Orlick v. Kozyak (In re Fin. Federated Title & Trust, Inc.)*,
    309 F.3d 1325 (11th Cir. 2002) ......................................................................................13

*Picard v. Fairfield Greenwich Ltd.*,
    762 F.3d 199 (2d Cir. 2014) ..................................................................................... *passim*

*Picard v. Greiff*,
    476 B.R. 715 (S.D.N.Y. 2012) .....................................................................................1, 2

*Picard v. JPMorgan Chase & Co. (In re Bernard L. Madoff Inv. Secs. LLP)*,
    721 F.3d 54 (2d Cir. 2013), *cert. denied, sub nom. Picard v. HSBC Bank PLC*,__U.S.__,
    134 S. Ct. 2895 (2014) .....................................................................................................4

*Raleigh v. Ill. Dep't of Revenue*,
    530 U.S. 15 (2000) .........................................................................................................12

*Savage & Assocs., P.C. v. Mandl (In re Teligent, Inc.)*,
    325 B.R. 134 (S.D.N.Y. 2005) .......................................................................................12

*Security Investor Protection Corp. v. Bernard L. Madoff Investment Securities LLC (In re Madoff
    Securities)*,
    499 B.R. 416 (S.D.N.Y. 2013) ................................................................................ *passim*

*Stern v. Marshall*, 564 U.S. 2 (2011) ............................................................................................2

*In re Wiggins*,
    341 B.R. 506 (M.D. Pa. 2006) .........................................................................................3

**Statutes**

11 U.S.C. § 363 ...............................................................................................................................5

11 U.S.C. § 548 ..................................................................................................................... *passim*

11 U.S.C. § 548(c) ..........................................................................................................................2

11 U.S.C. § 548(c), (d)(1) ...............................................................................................................6

15 U.S.C. §§ 78aaa, *et seq.* ................................................................................................... *passim*

15 U.S.C. § 78fff-l(a) .....................................................................................................................8

15 U.S.C. § 78fff-2(c)(3), SIPA § 8(c)(3), ........................................................................... *passim*

15 U.S.C. § 78fff(b), SIPA § 6(b) ...................................................................................................8

### PRELIMINARY STATEMENT

Defendants Lawrence Elins, Linda Elins, Elins Family Trust (the "Family Trust"), Elins Daughters Trust for the Benefit of Jamie Ann Elins, Elins Daughters Trust for the Benefit of Julie Lynn Elins, Jamie Elins Sabet and Julie Elins Banks respectfully submit this memorandum of law in support of their motion to dismiss the complaint of Irving Picard ("Picard"), as trustee for the liquidation of Bernard L. Madoff Investment Securities LLC ("Madoff Securities") under the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa, *et seq.* ("SIPA").

The grounds for this motion are primarily those asserted in the antecedent debt briefing before the District Court. Subsequent decisions of higher courts have removed the underpinnings of the District Court decision denying the antecedent debt motion, so the issues must be determined anew by this Court.

### BACKGROUND

Picard filed the complaint against the Defendants on or about November 12, 2010.[1] The complaint seeks recovery of amounts paid over the six years before the Madoff Securities SIPA filing. Following the District Court's decision regarding section 546(e) in *Picard v. Greiff*, 476 B.R. 715 (S.D.N.Y. 2012), pursuant to a stipulated judgment, all counts of the complaint were dismissed other than Count 1, which alleges actual fraudulent intent under section 548(a)(1)(A). All of the challenged payments were for amounts owed to the Family Trust pursuant to statements issued by Madoff Securities.

---

[1] The procedural history of this adversary proceeding is recited in greater detail in the accompanying motion.

1

Picard has indicated an intention to proceed with regard to Count 1, notwithstanding the pendency of his appeal of *Greiff*. The time for the Defendants to respond to the complaint has been extended by stipulation.

## ARGUMENT

**I.  THE COURT MUST CONSIDER ANTECEDENT DEBT DEFENSES UNDER BANKRUPTCY CODE SECTION 548(c)**

The Complaint should be dismissed under the antecedent debt defense of Bankruptcy Code 548(c).

The Defendants understand that the Court does not address this issue in a vacuum, as the District Court rejected the antecedent defense in *Security Investor Protection Corp. v. Bernard L. Madoff Investment Securities LLC* (*In re Madoff Securities*), 499 B.R. 416 (S.D.N.Y. 2013) (the "*Antecedent Debt Decision*"). However, the *Antecedent Debt Decision* is no longer viable due to the subsequent decisions by higher courts in *Law v. Siegel*, __U.S. __, 134 S. Ct. 1188 (2014), *Picard v. Fairfield Greenwich Ltd.*, 762 F.3d 199 (2d Cir. 2014) and *Krys v. Farnum Place, LLC*, 768 F.3d 239, 2014 U.S. App. Lexis 18427 (2d Cir. 2014).

These cases undermine the analysis upon which the District Court relied, so this Court must address the issue anew, in a manner consonant with the recent governing authority. *See, e.g., Development Specialists, Inc. v. Akin Gump Strauss Hauer & Feld LLP (In re Coudert Brothers LLP)*, 462 B.R. 457, 464 (S.D.N.Y. 2011) (Second Circuit standard for reference withdrawal under *In re Orion Pictures Corp.*, 4 F.3d 1095, 1101 (2d Cir. 1993) must be reinterpreted based on Supreme Court decision (not involving reference withdrawal) in *Stern v. Marshall*, 564 U.S. 2 (2011)); *In re Wiggins*, 341 B.R.

2

MGOLD\261662.5 - 11/17/14

506, 512 (M.D. Pa. 2006) (when a court of appeals decision "has been 'undermined' by a later decision of the Supreme Court, we are obligated to recognize that the circuit case has been overruled. An implicit overruling is sufficient. So is an inconsistency in the holdings.") (citation omitted); *Frangos v. Doering Equipment Corp.*, 860 F.2d 70, 72 (3d Cir. 1988) ("Although a cogent argument could have previously been waged based on past precedent within this circuit, the Supreme Court has recently rendered a decision making the Appellees' position untenable.").

As described below, *Law v. Siegel*, *Fairfield* and *Krys* stand for the propositions that (1) courts are not free to modify the statutory scheme that governs bankruptcies and liquidations, including the Bankruptcy Code and SIPA, in order to achieve a policy result or to satisfy equitable concerns, (2) the fraudulent conveyance avoidance powers of a SIPA trustee are, in all relevant respects, the same as those of a bankruptcy trustee, and (3) when Bankruptcy Code provisions are exported they are exported according to their terms. However the *Antecedent Debt Decision* ran afoul of these points.

In *Law v. Siegel, supra*, the Supreme Court recently – and unanimously – ruled that a bankruptcy court may not override the express language of the Bankruptcy Code based on notions of equity. *See id.*, 134 S. Ct. at 1194 ("whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code") (internal quotations omitted); *see also Burrage v. U.S.*, __U.S.___, 134 S. Ct. 881, 892 (2014) ("[t]he role of this Court is to apply the statute as written—even if we think some other approach might accor[d] with good policy.") (internal quotation marks and citation omitted) (alteration in original); a*ccord, Picard v. JPMorgan Chase & Co. (In re Bernard L. Madoff Inv. Secs. LLP),* 721

3

MGOLD\261662.5 - 11/17/14

F.3d 54, 76 (2d Cir. 2013) ("equity has its limits; it may fill certain gaps in a statute, but it should not be used to enlarge substantive rights and powers"), *cert. denied, sub nom. Picard v. HSBC Bank PLC*, __U.S.__, 134 S. Ct. 2895 (2014).

In *Fairfield,* the Court of Appeals ruled that the bankruptcy avoidance powers that are incorporated into SIPA are no broader when wielded by a SIPA trustee than they would be if exercised by a bankruptcy trustee. The decision specifically rejected Picard's argument that the inclusion in SIPA of a fictional interest in customer property[2] (SIPA § 8(c)(3), 15 U.S.C. § 78fff-2(c)(3)) does not generally expand a SIPA trustee's avoidance powers, as it is designed only to give a SIPA trustee the same standing as an ordinary bankruptcy trustee to pursue avoidance claims. Specifically, the Court of Appeals ruled that (1) rather than granting extraordinary avoidance powers to a SIPA trustee, SIPA "merely engrafts special features onto the familiar framework of a liquidation proceeding under Chapter 7 of the Bankruptcy Code … to address the concerns peculiar to the orderly liquidation of a brokerage" (*Fairfield,* 762 F.3d at 212 (citations omitted)); and (2) SIPA's statutory fiction does not expand the SIPA trustee's powers to avoid transfers beyond the avoidance powers of a trustee in an ordinary bankruptcy case. Rather,

> [j]ust as in an ordinary, non-SIPA bankruptcy, a SIPA trustee stands in the shoes of a liquidating firm. But because money held by a broker on behalf of its customers is not the broker's property under state law, it would not be recoverable by a trustee in an ordinary bankruptcy. SIPA circumvents this problem through a statutorily created legal fiction that confers standing on a SIPA trustee by treating customer property as though it were "property of the debtor" in an ordinary liquidation.

---

[2] SIPA § 8(c)(3) allows a SIPA trustee to avoid transfers of customer property in which the estate otherwise would have no legal interest. This statutory fiction, which provides the sole basis for Picard's standing to avoid the transfers at issue in the avoidance actions before the Court, is not germane to the application of the antecedent debt defense described below.

4

MGOLD\261662.5 - 11/17/14

*Id.*, at 212-213 (citations omitted). Furthermore, the Court of Appeals cited with approval prior case law confirming that "the 'limited purpose' of SIPA § 78fff-2(c)(3) 'is to create this legal fiction.'" *Id*. at 213 (citations omitted).

Likewise, in *Krys*, the Court of Appeals re-emphasized that when Bankruptcy Code provisions are imported into other proceedings the imported provisions operate to the same extent they would in a bankruptcy case. In a chapter 15 foreign recognition proceeding, concerning a dispute over the disposition of an estate asset by the foreign liquidator, the Court of Appeals ruled that the dispute must be resolved under Bankruptcy Code section 363 because section 363 applies in chapter 15 proceedings. The statutory command in section 1520(a)(2), that the requirements of section 363 "apply [in a chapter 15 proceeding] ... *to the same extent* that [it] would apply to property of [a chapter 7 or 11] estate" (emphasis added), renders considerations of equity inapplicable as a basis to displace the express inclusion of the bankruptcy statutes:

> "[W]hen a statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms." *Sebelius v. Cloer*, 133 S. Ct. 1886, 1896 (2013) (*quoting Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000)) (alteration omitted). The language of section 1520(a)(2) is plain; the bankruptcy court is required to conduct a section 363 review when the debtor seeks a transfer of an interest in property within the territorial jurisdiction of the United States.

*Krys*, 2014 U.S. App. Lexis 18427 at *14-15.

Just as section 1520 uses the phrase "to the same extent" to establish the parameters of bankruptcy provisions included in a chapter 15 proceeding, so the similar phrase "to the extent" in SIPA § 8(c)(3) imports the limits on Bankruptcy Code avoidance powers into a SIPA liquidation proceeding. For this reason, there is no basis

5

to limit the antecedent debt defense in section 548(c) of the Bankruptcy Code in the Madoff Securities avoidance actions through a construction that turns on distinctions of priority not found in section 548.

This motion is based primarily upon the antecedent debt defense of section 548(c), which provides an affirmative defense to any fraudulent transfer action where the defendant took the transfer for "value and in good faith"[3] in satisfaction of a present or antecedent debt of the debtor.  11 U.S.C. § 548(c), (d)(1).[4]  The statutory defense has no express equitable or SIPA-related exception.  *See Marshall v. Picard (In re Bernard L. Madoff Inv. Secs. LLC)*, 740 F.3d 81, 90 n.11 (2d Cir. 2014) ("a recipient of a transfer *is entitled to a 'good faith' defense* upon a showing that it took the transfer 'for value' and 'in good faith.'" (emphasis added)).

The *Antecedent Debt Decision* denied Defendants' antecedent debt defense not because of the statutory language but instead based on policy concerns.  It relied on the unsupported conclusion that "although [Picard] has the same authority to avoid transfers as a bankruptcy trustee, *those powers must be interpreted through the lens of SIPA's statutory scheme*…." (emphasis added).  499 B.R. at 423.  It then held – notwithstanding that section 548(c) and SIPA provide an antecedent debt defense without any such

---

[3] Picard has not challenged Defendants' good faith; the only disputed issue with regard to this defense is value.

[4] Defendants' arguments regarding the antecedent debt defense were set forth at length in the briefing for the *Antecedent Debt Decision,* see Consolidated Memorandum Of Law In Support Of Motion To Dismiss Regarding Antecedent Debt Issues On Behalf Of Withdrawal Defendants, As Ordered By The Court On May 12, 2012, filed June 25, 2012 [dkt. 199] and Consolidated Reply To Trustee's And SIPC's Oppositions To Motion To Dismiss Regarding Antecedent Debt Issues On Behalf Of Withdrawal Defendants, As Ordered By The Court On May 12, 2012, filed August 8, 2012 [dkt. 273] which are incorporated herein by reference.

6

MGOLD\261662.5 - 11/17/14

limitation – that SIPA § 8(c)(3) sharply limits the universe of antecedent debts, the satisfaction of which would be eligible for the antecedent debt defense. Specifically, the decision divided the pre-petition antecedent debts of Madoff Securities into two groups: those debts that, had they not been satisfied, would be considered customer claims in the Madoff SIPA proceeding (which was years in the future when the payments were made), and others. Only payments that satisfied the former type of debt are considered to be for value under the *Antecedent Debt Decision. See* 499 B.R. at 423.

The District Court highlighted the extent to which its rulings departed from the plain text of the statute when it improperly reasoned that to achieve a result favorable to Picard it is permissible to import Bankruptcy Code avoidance provisions selectively such that the affirmative recovery provisions would be imported but not defenses:

> to the extent that SIPA limits [Picard]'s avoidance powers to those transfers that are "void or voidable" under the Bankruptcy Code, that provision [SIPA § 8(c)(3)] merely gives [Picard] the authority to rely on section 548(a)(1)(A). It does not necessarily imply that section 548(c)'s affirmative defense must apply in the same way to the customer property estate as it would to the general estate.

499 B.R. at 423-24.

Under *Law v. Siegel*, *Fairfield* and *Krys* and similar jurisprudence requiring courts to apply statutes as written, SIPA may not be read to rewrite the scope of a SIPA trustee's avoidance powers as they are borrowed from the Bankruptcy Code, nor may a court imply limitations on statutory defenses if those limitations are not specified in the statute. To the contrary, *Fairfield* directs that courts must apply the express language of SIPA § 8(c)(3), which identifies one and only one aspect in which SIPA avoidance actions differ from those under the Bankruptcy Code: the customer property fiction, which makes no reference to section 548(c) or the antecedent debt defense.

7

Thus, under *Fairfield*, a court may not (as the District Court did in the *Antecedent Debt Decision*) invoke the fictional interest in customer property of SIPA § 8(c)(3) as the basis to find an implied power to override other express, statutory defenses to avoidance actions. SIPA's borrowing of the Bankruptcy Code's avoidance provisions is expressly subject to the Bankruptcy Code's statutory limitations on their exercise, and is not subservient to any provisions of SIPA: "The [SIPA] trustee may recover any property transferred by the debtor which, except for such transfer, would have been customer property *if and to the extent that such transfer is voidable or void under the provisions of* [the Bankruptcy Code]." SIPA § 8(c)(3) (italics added).[5] *See also Marshall v. Picard (In re Bernard L. Madoff Inv. Secs. LLC)*, 740 F.3d 81, 88 n.8 (2d Cir. 2014) ("Although a SIPA liquidation is not a traditional bankruptcy, a SIPA trustee's authority to bring claims in administering a SIPA liquidation is coextensive with the powers of a Title 11 bankruptcy trustee. *See* 15 U.S.C. § 78fff-l(a) (SIPA trustee 'vested with the same powers and title with respect to the debtor and the property of the debtor, including the same rights to avoid preferences, as a trustee in a case under Title 11'); *id*. § 78fff(b) (SIPA liquidation proceedings 'shall be conducted in accordance with, and as though it were being conducted under ... Title 11'). Accordingly, we rely on statutes and case law relating to Title 11 bankruptcy actions.")

---

[5] This specific grant of avoiding powers as limited by the statutory text is not modified by the phrase "to the extent consistent" with SIPA found in other provisions of the statute relating to the general borrowing of Bankruptcy Code provisions for the administration of SIPA liquidation cases. *Compare, e.g.,* SIPA § 6(b) (15 U.S.C. § 78fff(b)).

8

There is simply no provision, either in SIPA or the Bankruptcy Code, that limits or changes a transferee's defenses to an avoidance claim based on the priority that the debt satisfied by the transfer would have received as a claim in the broker-transferee's SIPA liquidation case as if that challenged transfer had not occurred.[6] If Picard's theory were correct – that only the satisfaction of *priority* claims would suffice for purposes of section 548(c) – it necessarily would follow that when applied to fraudulent conveyance suits brought by a chapter 7 trustee, defendants would be precluded from using the antecedent debt defense with regard to the satisfaction of general unsecured non-priority claims. However, the statute makes no such distinction, nor has Picard ever cited a bankruptcy case in which such a result obtained. The Court must follow the terms of the statute, which refer to all antecedent debt, regardless of priority.

In sum, the *Antecedent Debt Decision* has been superseded by the higher authority of *Law v. Siegel*, *Fairfield* and *Krys*. The *Antecedent Debt Decision* may not be applied to limit the availability and scope of the antecedent debt defense against the Defendants, and, as a matter of law, section 548(c) provides the Defendants an antecedent debt defense against the avoidance claims asserted on the face of Picard's complaint. In view of *Law v. Siegel, Fairfield* and *Krys*, and the other authorities addressed herein, Defendants respectfully request that this Court grant Defendants' motion to dismiss the complaint.

---

[6]    As set forth in Section II, below, there is a method of determining which debts are eligible for the satisfaction thereof to be considered for the antecedent debt defense that is actually based upon the specific provisions of section 548.

9

## II. A COURT MAY DISREGARD FOR PURPOSES OF SECTION 548(c) ONLY DEBTS THAT ARE AVOIDABLE AND THAT HAVE BEEN AVOIDED

In contrast to the rule propounded in the *Antecedent Debt Decision*, which, as discussed above, is unmoored to any specified statutory provisions, there is in section 548 of the Bankruptcy Code a specific provision that determines which debts can be ignored for the purposes of the antecedent debt defense. Specifically, section 548 grants a trustee express powers to avoid obligations (in addition to transfers) provided the statutory prerequisites are satisfied. The *Antecedent Debt Decision* strayed from the bounds of the statute when it permitted Picard to disregard, for the purposes of section 548(c), debts of Madoff Securities that had not and could not have been avoided.

In particular, Picard's power to avoid obligations is subject to the applicable reach-back period. Picard simply has no authority to avoid obligations that existed decades before the petition date. Those antique obligations are as immune from avoidance as are antique transfers to defendants that occurred long before the applicable reach-back period. Picard's position simply reads out of the Bankruptcy Code the avoidance-of-obligations provisions of section 548 and the reach-back periods for such actions found in that statute. There would be no reason for any trustee to voluntarily go through the time, expense and risk of filing a complaint to avoid fraudulent obligations if he could achieve the same result by simply *ignoring* the obligation.

However the *Antecedent Debt Decision* permitted Picard to simply ignore obligations when it rejected the use of certain obligations of Madoff Securities (*i.e.*, obligations of Madoff Securities to customers for amounts in excess of deposited principal) for the purposes of the antecedent debt defense on the theory that those

10

obligations "were in fact invalid and thus entirely unenforceable." 499 B.R. at __ n. 4. In effect, the District Court avoided those obligations as fraudulent, albeit without making any findings under, or applying the provisions of, section 548. This ruling is invalid under *Fairfield* and *Krys*, as it implies a trustee power found nowhere in the statute, and would give Picard the ability to ignore obligations without satisfying the requirements of section 548.

The obligations of Madoff Securities that were satisfied by the challenged payments were valid as between Madoff Securities and its customers at the time of the payments. The existence and effect of an antecedent debt based on a transferee's legal claims against the debtor are determined as of the time of the transfer. *See Jimmy Swaggert Ministries v. Hayes (In re Hannover Corp.)*, 310 F.3d 796, 801-02 (5th Cir. 2002) (value under section 548(c) is determined at the time of the transfer, even if the property thereafter becomes worthless); *cf. Armstrong v. Collins,* No. 01 Civ. 2437 (PAC), 2010 Westlaw 1141158, 2010 U.S. Dist. Lexis 28075 at *60 (S.D.N.Y. Mar. 24, 2010) ("The critical time to determine whether a debtor received reasonably equivalent value is the time of the transfer."). No one – not even Picard – has argued that pre-petition Madoff Securities could have validly refused to pay to customers amounts owed on statements by arguing that those statements were fraudulent. Instead, the argument is that in the subsequent Madoff Securities liquidation Picard may ignore obligations that were valid as against the debtor. But this position is simply a restatement of the doctrine of avoidance of fraudulently incurred obligations.

There is no question that section 548(a)(1) allows a trustee to avoid not just a fraudulent transfer but also any fraudulent "obligation ... incurred," and the account

11

statements, as obligations of Madoff Securities under state law,[7] may be potentially avoidable obligations. But until and unless those obligations are avoided, they are valid obligations – just as transfers are valid until determined by judgment to be avoidable. *See FDIC v. Hirsch (In re Colonial Realty Co.)*, 980 F.2d 125, 131 (2d Cir. 1992) (fraudulently transferred property is not part of the bankruptcy estate until it is recovered); *Savage & Assocs., P.C. v. Mandl (In re Teligent, Inc.)*, 325 B.R. 134, 137 (S.D.N.Y. 2005) ("[P]roperty that has been fraudulently or preferentially transferred does not become property of the estate until it has been recovered"); *Notinger v. Miglaccio (In re Fin. Res. Mortg., Inc.),* 454 B.R. 6, 15 (D.N.H. 2011) (property transferred prior to petition date is not part of bankruptcy estate until the transfers are successfully avoided).

Picard can assert no principled reason why his power to avoid obligations – unlike his power to avoid transfers – would be temporally unrestrained. Neither the statute nor the case law allows such an inference. *See, e.g., Raleigh v. Ill. Dep't of Revenue*, 530 U.S. 15, 24-25 (2000) ("Bankruptcy courts are not authorized in the name of equity to make wholesale substitution of underlying law controlling the validity of creditors' entitlements, but are limited to what the Bankruptcy Code itself provides."); *Lustig v. Weisz & Assocs. (In re Unified Commercial Capital, Inc.),* 260 B.R. 343, 350 (Bankr. W.D.N.Y. 2001) ("[T]he fraudulent conveyance statutes cannot and should not be utilized by courts as a super preference statute to effect a further reallocation and redistribution that should be specifically provided for in a statute enacted by Congress.").

---

[7] Alternatively, the payments in question satisfied not only the state law obligations of Madoff Securities under customer statements but also the federal and state law causes of action Defendants could have brought against Madoff Securities, including for fraud.

12

MGOLD\261662.5 - 11/17/14

Picard should not be permitted to undermine the plain statutory command that only obligations incurred within the applicable statutory reach-back period are subject to avoidance, and should not be permitted to treat obligations as effectively avoided without going through the substantive and procedural steps of actually avoiding them. Accordingly, all obligations of Madoff Securities should be considered eligible for purposes of a defense under section 548(c) unless they are avoided.

### III.    PICARD CANNOT RELY UPON THE PONZI SCHEME PRESUMPTION TO PROVE FRAUDULENT INTENT

Picard's reliance upon the Ponzi scheme presumption to establish fraudulent intent with respect to every transfer, to as well as to serve as an excuse for the failure to meet basic pleading requirements, is ill-founded. Although Picard labels the Madoff Securities operation a "Ponzi scheme" in the first paragraphs of the complaint and again in paragraph 23 et seq. he fails to allege sufficient facts in the complaint to establish that Madoff Securities was, in fact, a Ponzi scheme. Picard ignores the fact that the Madoff Securities operations do not conform to the essential features of the traditional Ponzi scheme, which include:  (1) little or no legitimate underlying business; (2) the promise of exorbitant returns; (3) early scheduled payment of such returns to early (or "top") investors; (4) the need to attract new money in order to pay the exiting top investors; and (5) the scheme's inevitable failure. *See Cunningham v. Brown*, 265 U.S. 1 (1924) *Orlick v. Kozyak (In re Fin. Federated Title & Trust, Inc.),* 309 F.3d 1325, 1327 n. 2 (11th Cir. 2002); *Daly v. Deptula (In re Carrozzella & Richardson)*, 286 B.R. 480, 482-84 nn. 2 and 7 (D. Conn. 2002); *Balaber-Strauss v. Lawrence*, 264 B.R. 303, 305-06 (S.D.N.Y. 2001). The complaint fails to allege facts establishing the existence of

13

most of the factors listed above and/or the facts of this case that the court may consider, contradict the allegations of a Ponzi scheme.

At its most basic, the term "Ponzi scheme" applies to a scheme where earlier redeeming investors are paid from the investments of more recent investors. The customers of Madoff Securities were customers of a broker-dealer, not investors in an enterprise. Further, as evidenced by Picard's many complaints and the claims filed in the case, customers were free to withdraw or deposit funds into their accounts as they wished. Customers who withdrew all or part of their funds or only made deposits in their accounts, were both long term and recent customers. In sum, Madoff Securities was not operated as a pyramid scheme where early redeeming investors were paid with later investors' money. Picard has not sufficiently alleged that Madoff Securities was repaying old customers with new customer money.

## CONCLUSION

For the foregoing reasons, the Defendants respectfully request that this Court grant Defendants' motion to dismiss.

Dated: November 17, 2014

        KLEINBERG, KAPLAN, WOLFF & COHEN, P.C.


        By:      /s/ Matthew J. Gold
              David Parker
              Matthew J. Gold

        551 Fifth Avenue, 18th Floor
        New York, New York 10176
        Telephone: 212-986-6000
        Facsimile: 212-986-8866

        *Attorneys for Defendants Lawrence Elins, Linda Elins,*
        *Elins Family Trust, Elins Daughters Trust for the Benefit of*
        *Jamie Ann Elins, Elins Daughters Trust for the Benefit of*
        *Julie Lynn Elins, Jamie Elins Sabet and Julie Elins Banks*