## BERNARD L. MADOFF INVESTMENT SECURITIES LLC

In Liquidation

### DECEMBER 11, 2008[1]

## NOTICE OF TRUSTEE'S DETERMINATION OF CLAIM

July 2, 2010

PAMELA B. GOLDMAN

██████████

Dear PAMELA B. GOLDMAN:

### PLEASE READ THIS NOTICE CAREFULLY.

The liquidation of the business of BERNARD L. MADOFF INVESTMENT SECURITIES LLC ("BLMIS") is being conducted by Irving H. Picard, Trustee under the Securities Investor Protection Act, 15 U.S.C. § 78aaa et seq. ("SIPA"), pursuant to an order entered on December 15, 2008 by the United States District Court for the Southern District of New York.

The Trustee has made the following determination regarding your claim on BLMIS Account No. 1G0233 designated as Claim Number 5535:

Your claim for a credit balance of $2,615.00 and for securities is **DENIED**. No securities were ever purchased for your account.

Your claim is **ALLOWED** for $523,500.00, which was the balance in your BLMIS Account on the Filing Date based on the amount of money you deposited with BLMIS for the purchase of securities, less subsequent withdrawals, as outlined in Table 1, plus the preferential $100,000.00 as discussed below.

As reflected in Table 1, certain of the transfers into or out of your account have been adjusted. As part of the Trustee's analysis of accounts, the Trustee has assessed accounts based on a money in/money out analysis (i.e., has the investor deposited more or less than he or she withdrew

---

1 Section 78lll(7)(B) of SIPA states that the filing date is "the date on which an application for a protective decree is filed under 78eee(a)(3)," except where the debtor is the subject of a proceeding pending before a United States court "in which a receiver, trustee, or liquidator for such debtor has been appointed and such proceeding was commenced before the date on which such application was filed, the term 'filing date' means the date on which such proceeding was commenced." Section 78lll(7)(B). Thus, even though the Application for a protective decree was filed on December 15, 2008, the Filing Date in this action is on December 11, 2008.

300094178 1

MWPTAP01006023

from BLMIS). This analysis allows the Trustee to determine which part of an account's balance is originally invested principal and which part is fictitious gains that were fabricated by BLMIS. A customer's allowed claim is based on the amount of principal in the customer's account.

Whenever a customer requested a transfer from one account to another, the Trustee analyzed whether the transferor account had principal in the account at the time of the transfer. The available principal in the account was transferred to and credited in the transferee account. Thus, the reason that the adjusted amount of transferred deposits or withdrawals in Table 1 is less than the purported transfer amount is that the transferor account did not have sufficient principal available to effectuate the full transfer. The difference between the purported transfer amount and the adjusted transfer amount is the amount of fictitious gain that was transferred to or from your account. Under the money in/money out analysis, the Trustee does not give credit for fictitious gains in setting your allowed claim.

| - Table 1 - | | | |
|---|---|---|---|
| DEPOSITS | | | |
| DATE | TRANSACTION DESCRIPTION | AMOUNT | ADJUSTED AMOUNT |
| 4/14/1997 | TRANS FROM 1G004510 | $211,435.45 | $90,000.00 |
| 10/6/1998 | CHECK | $100,000.00 | $100,000.00 |
| 3/28/2002 | CHECK | $300,000.00 | $300,000.00 |
| 2/20/2003 | CHECK | $300,000.00 | $300,000.00 |
| 1/5/2004 | CHECK | $500,000.00 | $500,000.00 |
| 2/7/2005 | CHECK | $300,000.00 | $300,000.00 |
| 12/15/2005 | CHECK | $400,000.00 | $400,000.00 |
| 2/12/2007 | TRANS FROM 1B010530 | $1,189,157.63 | $163,500.00 |
| **Total Deposits:** | | $3,300,593.08 | $2,153,500.00 |

| WITHDRAWALS | | | |
|---|---|---|---|
| DATE | TRANSACTION DESCRIPTION | AMOUNT | ADJUSTED AMOUNT |
| 10/12/2001 | CHECK | ($30,000.00) | ($30,000.00) |
| 12/15/2004 | CHECK | ($300,000.00) | ($300,000.00) |
| 4/13/2005 | CHECK | ($500,000.00) | ($500,000.00) |
| 10/28/2005 | CHECK WIRE | ($500,000.00) | ($500,000.00) |
| 1/30/2008 | CHECK | ($100,000.00) | ($100,000.00) |
| 6/5/2008 | CHECK | ($100,000.00) | ($100,000.00) |
| 9/22/2008 | CHECK | ($200,000.00) | ($200,000.00) |
| **Total Withdrawals:** | | ($1,730,000.00) | ($1,730,000.00) |
| **Total deposits less withdrawals:** | | $1,570,593.08 | $423,500.00 |

2

300010059
300094178.1

MWPTAP01006024

As discussed with my legal counsel, Courtni Thorpe, on June 30, 2010, the last withdrawal from your BLMIS Account was made within 90 days of the Filing Date and is therefore a preferential transfer which is recoverable by the Trustee under 11 U.S.C. §§547(b) and 550(a). You agreed with Courtni Thorpe that to facilitate the prompt partial satisfaction of your allowed claim, the Trustee was authorized to deduct the preferential payment of $100,000.00 from his initial payment to you.

Accordingly, your **ALLOWED CLAIM** of $523,000.00 will be satisfied in the following manner:

The enclosed **PARTIAL RELEASE AND ASSIGNMENT** must be executed, notarized and returned in the envelope provided herewith. Upon receipt of the executed and notarized **PARTIAL RELEASE AND ASSIGNMENT**, the Trustee will make a partial satisfaction of your **ALLOWED CLAIM** by sending you a check in the amount of $400,000.00 – the $500,000.00 advanced by the Securities Investor Protection Corporation pursuant to section 78fff-3(a)(1) of SIPA, less the repayment of the preferential $100,000.00. In addition, you will be entitled to receive an additional distribution based upon your **ALLOWED CLAIM** from the fund of customer property, if any.

The manner of this allowance and partial satisfaction of your **ALLOWED CLAIM** shall be in final settlement of any preference action the Trustee may have otherwise brought against you.

It is the Trustee's intent, pursuant to SIPA, to submit a Motion for an order of the Bankruptcy Court to allocate assets he has collected and will collect between the fund of customer property and the general estate and to distribute customer property *pro rata* among allowed claimants, such as you. In a decision in this case, Rosenman Family, LLC v. Picard, 401 B.R. 629, 634 (Bankr. S.D.N.Y. 2009), the Bankruptcy Court stated:

> The customer estate is a fund consisting of customer property and is limited exclusively to satisfying customer claims. In re Adler Coleman Clearing Corp. (Adler Coleman II), 216 B.R. 719, 722 (Bankr. S.D.N.Y. 1998) ("A SIPA trustee, distributes 'customer property' exclusively among the debtor's customers...."); see also 15 U.S.C. § 78lll(4). Accordingly, Customers, as defined by SIPA § 78lll(2), enjoy a preferred status and are afforded special protections under SIPA. See New Times Securities, 463 F.3d at 127; Adler Coleman, 195 B.R. at 269."

Id. at 634.

It is not known at this time when the Trustee will be filing such allocation and distribution motion.

**On March 1, 2010, the United States Bankruptcy Court for the Southern District of New York (Lifland, J.) issued a decision which affirmed the Trustee's Net Investment Method for determining customer claims. The final resolution of this issue is expected to be determined on appeal.**

3

300010059
300094178.1

MWPTAP01006025

Should a final and unappealable court order determine that the Trustee is incorrect in his interpretation of "net equity" and its corresponding application to the determination of customer claims, the Trustee will be bound by that order and will apply it retroactively to all previously determined customer claims in accordance with the Court's order. Nothing in this Notice of Trustee's Determination of Claim shall be construed as a waiver of any rights or claims held by you in having your customer claim re-determined in accordance with any such Court order.

**PLEASE TAKE NOTICE:** If you disagree with this determination and desire a hearing before Bankruptcy Judge Burton R. Lifland, you **MUST** file your written opposition, setting forth the grounds for your disagreement, referencing Bankruptcy Case No. 08-1789 (BRL) and attaching copies of any documents in support of your position, with the United States Bankruptcy Court **and** the Trustee within **THIRTY DAYS** after July 2, 2010, the date on which the Trustee mailed this notice.

**PLEASE TAKE FURTHER NOTICE:** If you do not properly and timely file a written opposition, the Trustee's determination with respect to your claim will be deemed confirmed by the Court and binding on you.

**PLEASE TAKE FURTHER NOTICE:** If you properly and timely file a written opposition, a hearing date for this controversy will be obtained by the Trustee and you will be notified of that hearing date. Your failure to appear personally or through counsel at such hearing will result in the Trustee's determination with respect to your claim being confirmed by the Court and binding on you.

4

MWPTAP01006026

**PLEASE TAKE FURTHER NOTICE:** You must mail your opposition, if any, in accordance with the above procedure, to each of the following addresses:

Clerk of the United States Bankruptcy Court for
the Southern District of New York
One Bowling Green
New York, New York 10004

and

Irving H. Picard, Trustee
c/o Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10011

_____
Irving H. Picard

Trustee for the Liquidation of the Business of
Bernard L. Madoff Investment Securities LLC

cc:     John Oleske, Esq.
        Herrick, Feinstein LLP
        2 Park Avenue
        New York, NY 10016

5

300010059
300094178 1

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

SECURITIES INVESTOR PROTECTION
CORPORATION,

          Plaintiff-Applicant,

             v.

BERNARD L. MADOFF INVESTMENT
SECURITIES LLC,

          Defendant.

Adv. Pro. No. 08-01789-BRL

SIPA Liquidation

## PARTIAL ASSIGNMENT AND RELEASE

**KNOW ALL MEN BY THESE PRESENTS,** that Pamela B. Goldman, with an address

of ███████████████████████ (hereinafter referred to as the "Assignor"), in consideration of

the payment of $400,000.00 to satisfy in part her claims for customer protection (the "Customer

Claim", having been designated Claim #5535) filed in the liquidation proceeding of Bernard L.

Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15

U.S.C. §78aaa et seq. ("SIPA") (see §§78fff-2(b), 78fff-2(d), and §78fff-3(a)(1) of SIPA), does

for herself hereby assign, transfer and set over to Irving H. Picard as SIPA Trustee (the "SIPA

Trustee") for the liquidation of BLMIS (see §78fff-2(b) of SIPA), and the Securities Investor

Protection Corporation ("SIPC"), as subrogee to the extent of its cash advances to the SIPA

Trustee for the satisfaction of the aforementioned Customer Claim (see §78fff-3(a)(1) of SIPA),

any and all rights, including causes of action or claims, that Assignor now may have against

BLMIS and/or any third party arising out of or relating to any fraudulent or illegal activity with

respect to Assignor's BLMIS account (Account No. 1G0233, the "BLMIS Account"), which

gave rise to the allowed Customer Claim for securities filed by Assignor against BLMIS. Such

300094131.1

MWPTAP01006028

assignment is only to the extent that Assignor has received satisfaction of the Customer Claim as set forth above.

Further, Assignor has not previously compromised or assigned any claim, cause of action or other right against BLMIS, its principals or agents or any third party arising out of or related to any fraudulent or illegal activity giving rise to the Customer Claim.

Upon reasonable request of the SIPA Trustee or SIPC, Assignor agrees to cooperate with the SIPA Trustee or SIPC in connection with any efforts of either to recover from the principals or agents of BLMIS or anyone else for amounts advanced by SIPC or paid by the SIPA Trustee to satisfy in part Assignor's Customer Claim in this SIPA liquidation proceeding. Such efforts to recover by the SIPA Trustee or SIPC, either to demand or pursue or to prosecute or settle any collection effort, action or proceeding therefore, shall be at the sole cost of the SIPA Trustee or SIPC.

Effective immediately and without further action, contingent only upon Assignor's receipt from the SIPA Trustee or his agent of a check in the amount of $400,000.00 as set forth in the SIPA Trustee's Notice of Determination of the Customer Claim dated July 2, 2010, (the "Trustee's Determination"), and upon receipt by the SIPA Trustee of this executed and notarized Partial Assignment and Release, the Assignor does for herself and for her executors, administrators, heirs and assigns hereby remise, release and forever discharge the SIPA Trustee and SIPC, as subrogee to the extent of its cash advances for the satisfaction of the Customer Claim, and, as the case may be, their officers, directors, professionals, employees, agents, successors and assigns, of and from any and all claims arising out of or relating to the Assignor's BLMIS Account, the Customer Claim filed with the SIPA Trustee as protected by the provisions of SIPA, and any and all circumstances giving rise to said Customer Claim which the Assignor

MWPTAP01006029

now has, or hereafter may have, for or by any reason, cause, matter or thing whatsoever from the beginning of the world to the date of the execution of this Partial Assignment and Release, only to the extent that the SIPA Trustee and/or SIPC has paid monies to the Assignor to satisfy Assignor's Customer Claim.

Assignor acknowledges that, as discussed with Courtni Thorpe, legal counsel for the Trustee, on June 30, 2010, the last withdrawal from Assignor's BLMIS Account was made within 90 days of the Filing Date and is therefore a preferential transfer which is recoverable by the Trustee under 11 U.S.C. §§547(b) and 550(a). Assignor agrees that to facilitate the prompt partial satisfaction of the Customer Claim, the Trustee is authorized to deduct the preferential payment of $100,000.00 from the initial payment to Assignor.

Upon receipt of this Partial Assignment and Release, Trustee will make a partial satisfaction of the Customer Claim by sending Assignor a check in the amount of $400,000.00 - the $500,000.00 advanced by the Securities Investor Protection Corporation pursuant to section 78fff-3(a)(1) of SIPA, less the repayment of the preferential $100,000.00. In addition, Assignor will be entitled to receive an additional distribution based upon Assignor's Allowed Claim from the fund of customer property, if any.

Should a final and unappealable Court order determine that the Trustee is incorrect in his interpretation of "net equity" and its corresponding application to the determination of customer claims, the Trustee will be bound by that order and will apply it retroactively to all previously determined customer claims in accordance with the Court's order. Nothing in this Partial Assignment and Release shall be construed as a waiver of any rights or claims held by Assignor in having its customer claim re-determined in accordance with any such Court order. The payment of the undisputed amount of the Assignor's Customer Claim (up to the limits of SIPA

300094182.1                                        3

MWPTAP01006030

protection) will be without prejudice to the Trustee's and the Assignor's rights, claims, and defenses with respect to the disputed portion(s) of the Assignor's Customer Claim.

Assignor acknowledges the sufficiency of the consideration to be received in accordance with the SIPA Trustee's Determination and under this Partial Assignment and Release. Assignor further acknowledges that the consideration to be received is in final settlement of any preference action the Trustee may have otherwise brought against Assignor.

**IN WITNESS WHEREOF,** the undersigned has on this day set forth below duly executed this Partial Assignment of Assignor's Customer Claim and Release, intending to be legally bound hereby.

By: _____
Pamela B. Goldman

Sworn and subscribed before me this
_____ day of _____, 2010.

_____
Notary Public

MWPTAP01006031