# ATTACHMENT A

# PAUL
# HASTINGS

1(212) 318-6751
jodikleinick@paulhastings.com

May 5, 2014                                                                            90271.10007

**BY EMAIL**

Gonzalo Zeballos, Esq.
Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111

Re:    *Picard v. Ceretti, et al.* (United States Bankruptcy Court, Southern District of New York
       Adversary Proceeding No. 09-1161 (SMB))

Dear Mr. Zeballos:

As you know, we represent FIM Advisers LLP and FIM Limited (together, the "FIM Entities"), and Messrs. Carlo Grosso and Federico Ceretti (together with the FIM Entities, "FIM") in the above-referenced proceeding.

The purpose of this letter is to put you on notice that the Fourth Amended Complaint (the "Complaint") contains several factual allegations that we believe are objectively false and that the Trustee had no basis upon which to make. These allegations are (a) designed to create the misimpression that the relationship between FIM and BLMIS was closer than it, in fact, was, (b) designed to create the misimpression that there was something improper concerning the structure of the Kingate Funds and its management, or (c) designed to create the misimpression that FIM Limited received transfers of funds from Kingate Management Ltd. in the United States, or that Messrs. Grosso and Ceretti authorized the transfer of funds to and from New York bank accounts and that the "Ceretti and Grosso Companies" routinely received funds originating from New York. Like many of the statements made by the Trustee in other proceedings relating to our clients, these allegations are deliberately misleading.

First, the Trustee makes a series of allegations regarding supposed phone calls with BLMIS or other entities affiliated with BLMIS that did not occur. In paragraph 99 of the Complaint, the Trustee refers to supposed "frequent telephone conversions" between Mr. Grosso and Mr. Madoff. To support this reference, the Trustee alleges at paragraph 101 of the Complaint that "Messrs. Ceretti, Grosso, and/or FIM employees participated in no fewer than 286 telephone calls to BLMIS from 2004 to 2008." We believe that there were less than 50 telephone calls from FIM to BLMIS during this five-year period. To the extent that you have records demonstrating an additional almost-250 calls, we demand that you provide them to us.

The Trustee also alleges at paragraph 103 that Mr. Grosso "exchanged 225 phone calls with Jonathan Greenberg of Cohmad Securities Corp." Mr. Grosso does not know Jonathan Greenberg and has not had any phone calls with him. Mr. Ceretti also does not know Jonathan Greenberg and has not had any phone calls with him. Again, to the extent that you have records demonstrating these 225 calls between Mr. Greenberg and Mr. Grosso, we demand that you provide them to us. We believe that the almost-500 calls referred to in paragraphs 101 and 103 are pure fabrication.

Next, the Trustee makes a series of factual allegations designed to demonstrate that the Kingate Global Fund was set up originally as part of a supposed enterprise to invest with BLMIS (*see* ¶ 42), but these

# PAUL
# HASTINGS

Gonzalo Zeballos, Esq.
May 5, 2014
Page 2

allegations are also false. First, the Trustee alleges at paragraph 2 of the Complaint that Messrs. Ceretti and Grosso established Kingate Global in 1994 and first sold shares in Kingate Global in 1995. That is wrong. In fact, the first shares in Kingate Global were sold in March 1994 when Kingate Global was established as a fund of funds. Kingate DM Fund (subsequently re-named Kingate Euro Fund) was established in December 1995 for the purpose of investing in BLMIS. The Trustee also alleges at paragraph 104 that FIM Limited already owned and managed "several well established investment funds" when the Kingate Funds were established and that one of those "existing investment funds" could have been used to invest with BLMIS, insinuating that this structure was somehow improper. The Trustee's factual assertions are again false. As a preliminary matter, an investment fund is owned by its shareholders- not by the individuals who participate in the formation of the fund. More importantly, at the time that Kingate Global was established in 1994, FIM Limited did not manage any other investment fund. FIM Limited only managed self-directed accounts. To date, FIM Limited has managed/advised numerous investment funds, but all of these were launched years after the launch of Kingate Global. Again, we believe such allegations are objectively false.

Finally, the Trustee alleges at paragraph 89 that FIM Limited maintained an account with Brown Brothers Harriman & Co. in New York. This too is false. FIM Limited never maintained any bank account in the United States. FIM Limited did maintain an account with the bank MeesPierson (Guernsey) Limited in the Channel Islands, and we understand that MeesPierson used Brown Brothers Harriman as its U.S. correspondent bank for dollar payments. No payments were ever made by Kingate Management to or from FIM Limited using an account held by FIM Limited in the United States. The Trustee also alleges at paragraph 86 that Messrs. Ceretti and Grosso authorized the transfer of funds to and from New York bank accounts, citing as an example a supposed transfer that Mr. Grosso authorized for Ashby Holdings to a bank account in New York. The Trustee further alleges that the "Ceretti and Grosso Companies routinely received funds originating from New York." Neither Messrs. Ceretti nor Grosso, nor any of the "Ceretti and Grosso Companies" ever maintained any bank accounts in New York and none received funds originating from New York. Any payments made to or from accounts in New York were simply made to or from the U.S. correspondent bank of non-U.S. Banks for dollar payments.

If, as we believe, you have no support for any of these allegations, we demand that you withdraw them immediately in accordance with Rule 11.

This is not to suggest that we agree with or accept any of the other allegations in your Complaint. We reserve all of our clients' rights in that regard.

Sincerely,

*Jodi Kleinich*

Jodi A. Kleinick
for PAUL HASTINGS LLP

# BakerHostetler

Baker&Hostetler LLP

Washington Square, Suite 1100
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5304

T 202.861.1500
F 202.861.1783
www.bakerlaw.com
John J. Burke
direct dial: 202.861.1625
JBurke@bakerlaw.com

May 6, 2014

**VIA E-MAIL**

Jodi Kleinick
Paul Hastings LLP
75 East 55th Street
New York, NY 10022

Re:   *Picard v. Ceretti et al., (United States Bankruptcy Court, Southern District of New York, Adversary Proceeding No. 09-1161 (SMB)*

Dear Jodi:

We received your May 5, 2014 letter, and have reviewed carefully the serious but unfounded accusations you make in that letter. The Trustee has a well-supported, good-faith basis for each of the allegations in the Fourth Amended Complaint, including those allegations you called to our attention. We look forward to engaging in discovery with the defendants, and will provide discovery at that time. We reserve all rights in this matter.

Sincerely,

John J. Burke

John J. Burke

cc:   David J. Sheehan
      Geraldine E. Ponto
      Gonzalo S. Zeballos

# PAUL
# HASTINGS

1(212) 318-6751
jodikleinick@paulhastings.com

August 21, 2014

75342.00003

**BY OVERNIGHT DELIVERY**

The Honorable Stuart M. Bernstein
One Bowling Green
New York, NY 10004-1408
Courtroom: 723

Re:   *Picard v. Ceretti, et al.* (United States Bankruptcy Court, Southern District of New York
      Adversary Proceedings No. 09-1161 (SMB))

Dear Judge Bernstein:

We represent FIM Advisers LLP and FIM Limited (together, the "FIM Entities"), and Messrs. Carlo
Grosso and Federico Ceretti (together with the FIM Entities, "FIM Defendants") in the above-referenced
proceeding.

On August 21, 2014, we served on Plaintiff Irving H. Picard, Trustee for the Liquidation of Bernard
L. Madoff Investment Securities LLC a motion for sanctions, pursuant to Rule 7004 of the Federal Rules
of Bankruptcy Procedure.  The FIM Defendants intend to file this motion with the Court if the Trustee does
not withdraw the factual allegations in the Fourth Amended Complaint referenced in the motion within 21
days from the date of this letter, pursuant to Rule 9011 of the Federal Rules of Bankruptcy Procedure.

We contacted Chambers prior to serving this motion, as required by Rule 5070-1, and scheduled
November 19, 2014 at 10:00am for a hearing on the motion.

As requested by the Court, and pursuant to the Court's rules requiring a courtesy copy at time of
service, enclosed with this letter is a courtesy copy of the motion that was served on Plaintiff.  We note
that the motion has not been filed, and that if the matter is resolved within the 21 days, we will contact
chambers to cancel the scheduled hearing.

Sincerely,

Jodi Kleinick (EG)

Jodi A. Kleinick
of PAUL HASTINGS LLP

JAK

CC:  All counsel of record (via electronic mail w/o enclosures)

Paul Hastings LLP | 75 East 55th Street | New York, NY 10022
t: +1.212.318.6000 | www.paulhastings.com

# BakerHostetler

Baker&Hostetler LLP

45 Rockefeller Plaza
New York, NY 10111

T  212.589.4200
F  212.589.4201
www.bakerlaw.com

Gonzalo S. Zeballos
direct dial: 212.589.4656
gzeballos@bakerlaw.com

August 25, 2014

**VIA ELECTRONIC MAIL**

Jodi A. Kleinick, Esq.
Paul Hastings LLP
75 East 55th Street
New York, NY 10022

Re:    *Picard v. Ceretti, et al.* (United States Bankruptcy Court, Southern District of New York
       Adversary Proceedings No. 09-1161

Dear Ms. Kleinick:

This letter responds to your draft motion for sanctions, which is largely grounded on your
contention that the Trustee is engaged in an improper effort "to make an end-run around the
Extraterritoriality Decision,[1] or to try to keep the case alive against the FIM Defendants in an
effort to force the FIM Defendants into unwarranted discovery." That position is baseless. The
factual allegation of which you complain predates the Extraterritoriality Decision by more than
three years. It could not have been alleged by the Trustee in an effort to circumvent a non-
existent judgment.

In your May 5, 2014 letter, you further contend the Fourth Amended Complaint "contains several
factual allegations that are objectively false." Our timely response rejecting your allegations was
sent the next day. Your assertion that our prompt response "that counsel did not
even bother to investigate the veracity of the allegations in his pleading in light of the
unequivocal statements made by the FIM defendants" is as unsubstantiated as it is incorrect.
Our response followed our immediate review of not only the very serious allegations contained
in your letter, but also another thorough review of the support for each and every allegation in
the Fourth Amended Complaint.

You now cling to but one fact—despite the totality of the allegations in the complaint—as
support for sanctions, specifically, that your clients made "unequivocal statements" that our
client's allegation is false. If such an assertion could form a solid foundation for a sanctions
motion, every denial of an asserted fact in a complaint would give rise to a sanctions hearing.
Your May 5th letter demanded a withdrawal of the Trustee's allegation if, as you asserted, the

---

[1] Capitalized terms are used herein as defined in the draft motion attached to your August 21, 2014 letter
unless otherwise indicated.

Atlanta    Chicago    Cincinnati    Cleveland    Columbus    Costa Mesa    Denver
Houston    Los Angeles    New York    Orlando    Philadelphia    Seattle    Washington, DC

Jodi A. Kleinick, Esq.
August 25, 2014
Page 2

Trustee had no support for it.  The Trustee's allegation regarding the Brown Brothers Harriman
& Co. ("BBH") account was made in good faith, on the basis of documentary evidence referring
to the transfer of assets from Kingate Management Limited to BBH "in favour of FIM Limited."
We could not accept your client's *ipse dixit* as evidence that FIM Limited held no such account.

Your reference to a wholly unrelated judgment by Mr. Justice Popplewell, made in a foreign
proceeding involving different parties and causes of action, does not lend support to your
meritless contentions.  Tellingly, you do not cite to the English courts' findings about your
clients.  Mr. Justice Kitchin, adjudicating a disclosure request brought by the Trustee against
your clients in the United Kingdom, concluded as follows:

> Mr. Ceretti and Mr. Grosso were also closely involved with the activities of BLMIS
> and Mr. Madoff from the outset, having first met Mrs. Manzke in 1993 or 1994
> and through her, Mr. Madoff, and subsequently they had communications with
> Mr. Madoff by telephone and face-to-face to a degree that the trustee considers
> unusual.  These matters, the consultancy and distribution agreements and the
> payments of fees to Kingate Management, FIM Limited and FIM Advisers, <u>all
> suggest that Kingate Management, FIM Limited and FIM Advisers played an
> important role in the recruitment of new investment and the management of their
> funds and so ensured a flow of funds to the Kingate Funds and on to BLMIS
> which helped to support and promote the fraud until December 2008.  In light of
> all these matters it comes as no surprise to me that the trustee considers the
> Kingate Funds must either have known that the business of BLMIS was
> inherently fraudulent or that they should have known that to be the case and
> further that payments made to the Kingate Funds' investors, as well as the
> management and consulting fees paid to Kingate Management and indirectly to
> FIM Limited and FIM Advisers, as very likely to have been derived from
> preferential payments or fraudulent transfers received from BLMIS.</u>

*Picard v. FIM Advisers LLP & Ors.* [2010] EWHC 1299 at ¶ 39 (emphasis added) (attached
hereto as Exhibit A).

In stark contrast to your citation to Mr. Justice Popplewell, Mr. Justice Kitchin's statements
relate directly to your clients and their relationship to Madoff and BLMIS.  Further, Mr. Justice
Kitchin's statements go to the heart of the Trustee's claims against your clients.

The draft motion also lacks a basis in law.  Not one case cited in your motion supports it.  Each
of the cases you cite involves egregious conduct relating to elements central to the relevant
allegations in those cases.  The Trustee's complaint against your clients is based on causes of
action arising under the U.S. Bankruptcy Code.  The validity of the Trustee's claims against your
clients does not turn solely on the existence of a bank account held in New York by one of them.

The fact that you first complained that FIM Limited had no New York-based bank account three
years after that allegation was made in court strongly suggests its purely tactical motivation now
that the litigation against your clients is proceeding.  The proper course of action would be to
deny any allegation your clients contend is false or await the resolution of your promised motion
to dismiss the Trustee's complaint.  As you are no doubt aware, frivolous sanctions motions are
themselves subject to sanction.  Your draft motion is baseless and improper.  In light of Mr.
Justice Kitchin's findings regarding your clients' conduct, if you considered that attempting to

Jodi A. Kleinick, Esq.
August 25, 2014
Page 3

cast the Trustee in a negative light in advance of a motion to dismiss would distract attention
from your clients' alleged bona fides, it was unprofessional and misguided.  The Trustee
reserves all rights in that regard.

Sincerely,

Gonzalo S. Zeballos

Enclosures

# EXHIBIT A



# England and Wales High Court (Chancery Division) Decisions

---

---

---

**Neutral Citation Number: [2010] EWHC 1299 (Ch)**

Case No: 11283 OF 2009

IN THE HIGH COURT OF JUSTICE
CHANCERY DIVISION
COMPANIES COURT
IN THE MATTER OF BERNARD L. MADOFF INVESTMENT SECURITIES LLC
AND IN THE MATTER OF THE CROSS-BORDER INSOLVENCY REGULATIONS 2006

Royal Courts of Justice
Strand, London, WC2A 2LL

27 May 2010

B e f o r e :

THE HONOURABLE MR. JUSTICE KITCHIN

---

Between:

**IRVING H PICARD
(THE FOREIGN REPRESENTATIVE OF
BERNARD L. MADOFF INVESTMENT
SECURITIES LLC)**                    **Applicant**

**- and -**

**(1) FIM ADVISERS LLP**                    **Respondent**

---

**(Transcript of
WordWave International Limited
A Merrill Communications Company
190 Fleet Street, London EC4A 2AG
Tel No: 020 7404 1400, Fax No: 020 7831 8838
Official Shorthand Writers to the Court)**

Mr Robin Dicker QC & Mr Steven Robins (instructed by Hogan Lovells International LLP) for the Applicant
Mr Antony Zacaroli QC & Miss Georgina Peters (instructed by Simmons & Simmons) for the Respondent

---

### HTML VERSION OF JUDGMENT

---

Crown Copyright ©

**MR JUSTICE KITCHIN:**

**Introduction**

1. I have before me an application by Mr Picard ("the Trustee"), the trustee for the liquidation of the business of Bernard L Madoff Investment Securities LLC ("BLMIS"), for an order under Article 21 of Schedule 1 to the Cross-Border Insolvency Regulations 2006 ("CBIR") requiring the respondent, FIM Advisers LLP ("FIM Advisers"), to produce documents concerning the assets, affairs, rights, obligations and liabilities of BLMIS.

2. BLMIS is a New York limited liability company wholly owned by Mr Madoff who was its founder, chairman and chief executive officer. It operated an investment advisory business with approximately 8,000 customers. Many of these were so-called feeder funds or other intermediaries investing money on behalf of their own clients. In many cases Mr Madoff was able to attract these feeder funds through the help of colleagues, one being Ms Sandra Manzke who founded two groups of companies known as the Tremont and Maxam groups which were themselves major feeder funds to BLMIS.

3. The business of BLMIS appeared to be extraordinarily successful. It purported to generate consistent annual returns of around 12% regardless of the underlying performance of the stock market and, unusually, it charged no fees beyond the transaction cost incurred in respect of individual trades. Mr Madoff and BLMIS represented this success as being attributable to a trading strategy which involved investing in securities but at the same time selling call options and purchasing put options.

4. The apparent success of BLMIS and its minimal charges made it very attractive to feeder funds and their associates because it left them with considerable scope to charge sizeable annual fees for very little effort while still providing clients with a substantial return on their investments.

5. In truth, the investment business of BLMIS was, at least from the early 1990s, a fraud or, in popular terminology, a Ponzi scheme. The trades reported to customers were a complete fabrication and never took place and the profits said to have been generated were entirely fictitious. New investments received from investors were used to fund distributions to, or payments on behalf of, other investors. Meanwhile Mr Madoff and others enriched themselves by receiving payments out of BLMIS.

6. In order for the fraud to continue, BLMIS required an ever increasing supply of new money from investors, but eventually, in December 2008, BLMIS received requests from customers for redemptions totalling some US $7 billion that it was unable to meet. Mr Madoff was arrested for fraud and the scheme collapsed. At a hearing on 29 June 2009, Mr Madoff was sentenced to 150 years imprisonment and ordered to forfeit US $170 billion in assets.

7. On 15 December 2008, the Securities and Investor Protection Corporation ("SIPC") filed an application in the US District Court for the Southern District of New York seeking a decree that the customers of BLMIS were in need of protection under the Securities Investor Protection Act 1970 ("SIPA") and the Trustee was appointed as trustee for the liquidation of the business of BLMIS with all the duties and powers of a trustee as prescribed in SIPA. At the same time the proceedings were removed to the United States Bankruptcy Court of the Southern District of New York ("the Bankruptcy Court") where they are now pending.

8. Under SIPA the Trustee has a statutory duty, among other things, to (1) investigate the conduct, property,

liabilities and financial condition of BLMIS, the operation of its business and any other matter to the extent relevant to the SIPA liquidation and report thereon to the Bankruptcy Court; and (2) report to the Bankruptcy Court any facts ascertained by him with respect to fraud, misconduct, mismanagement and irregularities, and to any causes of action available to the estate.

9. In his first affidavit made in support of this application dated 26 January 2010, the Trustee explains that the documents he is now seeking from FIM Advisers are essential for the purposes of his investigations into BLMIS' assets, affairs, rights and obligations and, therefore, the discharge of his responsibilities as trustee. Those responsibilities include recovering customer property for equitable distribution to BLMIS' customers, assessing claims, liquidating any other BLMIS assets (primarily for the benefit of its customers and creditors) and reporting to the Bankruptcy Court on what he has learnt through the course of his investigations.

**The relationship between BLMIS, FIM Advisers and the Kingate companies**

10. I must now explain a little more about the relationship between BLMIS and FIM Advisers. FIM Advisers has two principals: Mr Grosso and Mr Ceretti, both of whom are Italian citizens living in London. In late 1993 or early 1994 FIM Limited, the predecessor of FIM Advisers, and the shares in which were registered in the names of Mr Grosso and Mr Ceretti, contacted Tremont Advisers, a company in the Tremont group, to assist it in establishing a fund of hedge funds to offer to its clients. For this purpose Mr Grosso and Mr Ceretti dealt with Ms Manzke. In a deposition dated 7 July 2009 Ms Manzke says that she introduced Mr Grosso and Mr Ceretti to Mr Madoff at about this time.

11. Mr Grosso has explained in an affidavit dated 23 April 2010 that, on 11 February 1994, an open-ended investment company called Kingate Global Fund Limited ("Kingate Global") was incorporated under the laws of the British Virgin Islands. Shares in Kingate Global were sold to investors and the vast majority of the monies so derived were invested with BLMIS. By 1996, Kingate Global had collected about US $100 million.

12. On 19 April 2000 another open-ended investment company called Kingate Euro Fund Limited ("Kingate Euro") was incorporated under the laws of the British Virgin Islands and this engaged in a similar investment strategy. In this judgment I shall refer to Kingate Global and Kingate Euro collectively as the Kingate Funds.

13. The Kingate Funds paid 1.5% of the net value of their funds annually to Kingate Management Limited ("Kingate Management"), a company incorporated in Bermuda, purportedly for management services. The net value was calculated upon the basis of the false statements of accounts prepared by BLMIS. Over the years this practice enabled Kingate Management to reap tens of millions of US dollars in fees. Kingate Management in turn paid fees to FIM Limited and subsequently FIM Advisers, pursuant to one or more consulting services and distribution agreements.

14. The Trustee has strong grounds for believing that Mr Grosso and Mr Ceretti are the owners of and control Kingate Management and were responsible for the establishment and investment strategy of the Kingate Funds. Specifically Ms Manzke suggested in her deposition that Mr Grosso and Mr Ceretti founded the Kingate Funds for the purpose of investing in BLMIS. This accords with the perception of investment professionals at the time, as reflected in a report by Reuters dated 9 April 2009.

15. More substantively, the consultancy agreements between Kingate Management and FIM Limited, recently disclosed by Mr Grosso, reveal FIM Limited was responsible for, inter alia, (a) "reviewing the [Kingate Funds'] structure and operating procedure"; (b) "preparing ... such analyses and reports as may be required for use by [Kingate Management]"; (c) providing [Kingate Management] with assistance and support ... relating to investors' relations"; (d) "liaising directly with [Kingate Management] in respect of the investment program"; and (e) "in general, providing advice to and assisting [Kingate Management] on such aspects of the [Kingate Funds'] operational, administrative, accounting and legal matters as may be required by [Kingate Management] and the [Kingate Funds]".

16. Similarly, distribution agreements between Kingate Management and FIM Limited reveal FIM Limited was appointed as a distributor for the sale of shares (defined as "the Shares")in the Kingate Funds and that the

distributor services provided by FIM Limited included: (a) "the identification and solicitation of prospective investors to purchase the Shares"; (b) "the introduction of such prospective investors to [Kingate Management]"; (c) "the maintenance of regular contact with investors introduced to [Kingate Management] to keep them informed of investment results and other information with regard to the [Kingate Funds]"; (d) "the preparation of marketing and other material"; (e) "the supervision of distribution lists used by Kingate Management to keep prospective and existing investors informed of developments with regard to the [Kingate Funds]"; and (f) "generally, the provision of such services as may be required by [Kingate Management] to enable it to fulfil its duties with regard to the placement of the Shares".

17.  The Trustee has explained in his second affidavit in support of this application that it is apparent to him that the responsibilities and functions of FIM Advisers, as successors to the business of FIM Limited, listed in the consultancy agreements and distribution agreements were very wide ranging indeed. The responsibilities of FIM Advisers ranged from reviewing the funds' structure and operating procedure; providing advice regarding the funds' investment programme; providing assistance and support on investor relations; providing advice regarding hedging activities; providing assistance on operational, administrative, accounting and legal matters; and identifying and soliciting investors, preparing marketing material and maintaining investor distribution lists.

18.  He concludes, not unreasonably in my judgment, that it is hard to imagine what, if any, services remained for Kingate Management to provide. It seems to him that FIM Advisers and its predecessor FIM Limited had a role of fundamental importance and he therefore requires the underlying documents to form a view as to the precise nature and extent of the involvement of FIM Advisers and FIM Limited in these matters and to assist with his investigations more generally into the affairs of BLMIS and the inner workings of the fraud.

19.  The close relationship between Kingate Management and FIM Advisers is further supported by the fact that the directors of Kingate Management included a Mrs Shazieh Salahuddin who is described in documents issued by the Kingate Funds as "a senior employee of the FIM group of companies for whom she has worked since 1996 in a variety of roles including fund administration operations, client relations and marketing". The Trustee has asked Mr Grosso how and why a senior employee of the FIM group of companies came to be employed as a director of Kingate Management but no substantive answer has been forthcoming. Moreover, over the years, FIM Advisers and its predecessor FIM Limited had frequent contact with Mr Madoff, and Mr Grosso had a number of face-to-face meetings and regular telephone calls with Mr Madoff each year. This degree of personal contact was, in the opinion of the Trustee, unusual because Mr Madoff tended to limit contact with investors as much as possible.

20.  It is clear that the activities of the Kingate group of companies, FIM Limited and subsequently FIM Advisers in recruiting investors were very successful. The Kingate Funds transferred a total sum in excess of US $1.6 billion to BLMIS.

**The jurisdiction under Article 21 of Schedule 1 to the CBIR**

21.  Article 21 of schedule 1 to the CBIR reads:

"(1) Upon recognition of a foreign proceeding, whether main or non-main, where necessary to protect the assets of the debtor or the interests of the creditors, the Court may, at the request of the foreign representative, grant any appropriate relief including-

....

(d) providing for the examination of witnesses, the taking of evidence or the delivery of information concerning the debtor's assets, affairs, rights, obligations or liabilities."

22.  In addition I must have regard to Article 22 which provides that in granting or denying relief the court must be satisfied that the interests of interested persons are adequately protected. Interested persons include the person against whom an order for delivery of information is sought.

23.  It is apparent that Article 21(1)(d) has both a jurisdictional and a discretionary component. The court must

be satisfied that the information sought concerns the debtor's assets, affairs, rights, obligations or liabilities. If it is so satisfied then it has a discretion to order the delivery of that information. In exercising that discretion it must have regard to all relevant circumstances and ensure that the interests of the person against whom the order is sought are adequately protected.

24.   Both parties before me were also agreed that it is appropriate for the court to have regard to the principles upon which the court will exercise its powers under section 236 and section 366 of the Insolvency Act 1986. The relevant principles for present purposes are, I think, these.

25.   First, the power is conferred to enable the office holder to discover the true facts concerning the affairs of the company so that he may be able as quickly, effectively and with as little expense as possible to complete his duties.

26.   Second, even an honest person who finds himself to have been involved in a major fraud which has had a catastrophic effect for thousands of investors must be expected to cooperate with the office holder.

27.   Third, nevertheless, the court must avoid making any order which is unnecessary or unreasonable or which is oppressive to the respondent.

28.   Fourth, one of the factors which weighs against making an order or limiting its scope in some way is the disruption, stress and expense likely to be caused to the respondent.

29.   Fifth, in assessing what order to make the court will attach considerable weight to the views of the office holder.

**A measure of agreement**

30.   The application was issued at the end of January 2010. It originally sought disclosure of 25 categories of documents, most identified by reference to a topic. Since that time the solicitors acting for the parties have sought to narrow the issues in dispute and have done so with some success. In particular, no order is now sought against Mr Grosso and Mr Ceretti (who were originally joined as respondents to the application) on the basis of (1) witness statements stating that they held no documents personally and that all relevant documents were held by FIM Advisers; (2) an undertaking by FIM Advisers that all documents in its possession relating to Mr Grosso or Mr Ceretti personally, and which fall within the scope of any order this court may make, will be disclosed by FIM Advisers.

31.   Further, FIM Advisers has confirmed it has custody of all the records and books of FIM Limited. Moreover, and subject to certain limited categories which I must address in due course, FIM Advisers has accepted that the categories of documents sought by the Trustee do concern the assets, affairs, rights, obligations or liabilities of BLMIS.

32.   For his part, the Trustee recognises that many, if not most, of FIM Advisers' documents are held electronically because it operates what it is described as a paperless office. For such documents the parties have therefore agreed that FIM Advisers should conduct searches of its electronic records by using key words and have agreed a list of key words for that purpose. Documents recovered on such searches will then be reviewed by FIM Advisers to determine if they do indeed fall within one of the categories of documents which it is required to disclose.

33.   The parties do, however, continue to disagree on a number of issues. The principal disagreements concern the date range for the search and the locations to be searched. As I have indicated, there is also a disagreement in relation to a limited number of categories of documents and, specifically, documents relating to the ownership and organisation of Kingate Management, the Kingate Funds and FIM Advisers.

**The date range**

34.   FIM Advisers has proposed that the search for electronic and hard copy documents be undertaken for the period 1 August 2005 until 11 December 2008. These, it says, are not arbitrary cut-off dates. 1 August

2005 is the date FIM Advisers took over the business of FIM Limited, and 11 December 2008 is the date on which Mr Madoff was arrested and BLMIS ceased carrying on business. This range is not, however, acceptable to the Trustee who seeks an order requiring FIM Advisers to search for and disclose documents generated at any time after the commencement of the fraud and prior to 31 January 2009.

**Start date**

35.   FIM Advisers accepts that the court has jurisdiction to make the orders sought by the Trustee but contends it should not do so in the exercise of its discretion, or at least not at this stage. In short, it is FIM Advisers' belief that there is unlikely to be any material in its databases of electronic documents and emails that will significantly assist the Trustee, and accordingly the scale of the task required by the order sought is not proportionate to the likely benefit. In this regard it points out that FIM Advisers' business is and always has been managing and advising funds of funds and that the Kingate Funds were merely an investment option for that wider business. Accordingly, while there may be a great many documents stored on FIM Advisers' electronic databases which will be caught by, for example, the word "Kingate", the vast majority of these documents will simply refer to the Kingate Funds within the fund of funds business.

36.   FIM Advisers says its concern is supported by the experience of the disclosure exercise conducted by its associated company, FIM USA. This resulted in the production of some 880,000 pages of documents which have proved to be of very limited value. In all these circumstances FIM Advisers says its proposal for searching its electronic databases for 3½ years prior to the collapse of BLMIS is a sensible and proportionate solution at this stage. If the documents recovered by that search are of limited assistance to the Trustee then this is likely to show that the burden of searching for an additional 12 years prior to 1 August 2005 or for documents post-dating the discovery of the fraud outweighs the possibility of the Trustee deriving substantial benefit from the task. If, on the other hand, the search produces material of substantial assistance to the Trustee then it is likely that the nature and extent of the documents disclosed will enable a more focused approach to be taken in extending its scope.

37.   In assessing these arguments I think the starting point is to have in mind the scale of the fraud perpetrated by BLMIS and Mr Madoff and the public interest in providing the Trustee with all necessary documents to enable him to ascertain the true facts and carry out his duties as quickly and effectively as possible.

38.   I also consider it highly relevant that the matters to which I have referred in the course of this judgment suggest that Kingate Global, and subsequently Kingate Europe, fed a very substantial body of funds to BLMIS and did so in the case of Kingate Global from as early as 1994 with the result that over US$ 100 million had been paid to BLMIS by 1996 and ultimately over US$ 1.7 billion in total.

39.   Mr Grosso and Mr Ceretti were also closely involved with the activities of BLMIS and Mr Madoff from the outset, having first met Mrs Manzke in 1993 or 1994 and through her, Mr Madoff, and subsequently they had communications with Mr Madoff by telephone and face-to-face to a degree that the Trustee considers unusual. These matters, the consultancy and distribution agreements and the payments of fees to Kingate Management and FIM Limited and FIM Advisers, all suggest that Kingate Management, FIM Limited and FIM Advisers played an important role in the recruitment of new investors and the management of their funds and so ensured a flow of funds to the Kingate Funds and on to BLMIS which helped to support and promote the fraud until December 2008. In the light of all these matters it comes as no surprise to me that the Trustee considers the Kingate Funds must have known that the business of BLMIS was inherently fraudulent or that they should have known that to be the case and further, that payments made to the Kingate Funds' investors, as well as the management and consulting fees paid to Kingate Management and indirectly to FIM Limited and FIM Advisers, are very likely to have been derived from preferential payments or fraudulent transfers received from BLMIS.

40.   Against this background I am wholly unable to accept that the selection of 1 August 2005 as a start date is objectively justifiable on any basis and that is so both in relation to electronic and hard copy documents. It would, in my judgment, inevitably exclude many relevant documents. The transition from FIM Limited to FIM Advisers was apparently seamless and FIM Advisers holds all the documents of both entities. I return to the issue of the locations to be searched later in this judgment and will consider in that context the scale of the task and the suggestion that it is not proportionate and how it should be conducted.

41.   In conclusion I reject the imposition of 1 August 2005 as a start date and accept the Trustee's submission

that FIM Advisers should search for documents generated at any time after the commencement of the fraud and which fall within one of the relevant categories.

**The end date**

42.  FIM Advisers submits that 11 December 2008 is a natural cut-off date for production of documents to which the Trustee is likely to be entitled because FIM Advisers was not, and is not suggested to have been, involved in any way in BLMIS's affairs. Its only role of direct relevance to the Trustee was via the services it provided to the manager (Kingate Management) of the Kingate Funds, which were themselves clients of BLMIS. Any relevant documentation which FIM Advisers is likely to have, therefore, will be limited to documents relating to the dealings between the Kingate Funds and BLMIS, and those dealings came to an end on 11 December 2008 with the arrest of Mr Madoff.

43.  I am unable to accept these submissions. For the reasons I have given I am satisfied the Trustee is properly concerned to ascertain the degree of involvement of FIM Advisers and FIM Limited in the affairs of Kingate Management, the Kingate Funds and BLMIS, and what has happened to the investors' funds and to the fees paid to Kingate Management, FIM Limited and FIM Advisers.

44.  I also accept the Trustee's submission that the ways in which individuals responded to the discovery of the fraud in the period immediately after 11 December 2008 may be highly relevant to the Trustee's investigations. Such documents dating from the immediate aftermath of the fraud's discovery may shed considerable light on the knowledge and states of mind of the individuals in question. In my judgment the Trustee is right that the end date should be 31 January 2009.

**Locations to be searched**

45.  FIM Advisers has electronically stored documents in three principal locations: (1) live mailboxes for all FIM Advisers' personnel. These comprise a total of some 750,000 emails and are not inherently date limited; (2) "personal storage table" archived emails stored on local or network drives. These comprise some 380,000 emails and again are not inherently date limited; (3) FIM shared drives storing FIM's electronic documents, comprising approximately 675,000 files. Mr Grosso says there has never been a policy of deleting documents from these shared drives.

46.  In addition, FIM Advisers has archived electronically stored documents in two further locations: (1) an on-line back-up system for emails and documents in FIM Advisers' shared drives which has been in operation since January 2008 and of which the emails have already been restored. This system apparently contains approximately 2.4 million emails; and (2) off-site backup tapes in operation from the late 1990s until 2007, which have not been restored. It is not known how many documents are contained on these tapes but it is thought they are likely to run into many millions based upon the number of emails contained in online back-up storage since January 2008.

47.  Currently FIM Advisers is undertaking searches of the live mailboxes, personal storage table archived emails and the FIM shared drives. It does not, however, propose to review or disclose documents outside the window 1 August 2005 to 11 December 2008. For the reasons I have given, I do not believe the disclosure exercise should be so limited and that it should extend from 1 January 1993 to 31 January 2009.

48.  Insofar as FIM Advisers may experience difficulties in retrieval of archive material the Trustee has offered to make a team of external IT consultants available to assist. Thereafter the documents recovered must be reviewed but it was explained to me by counsel for FIM Advisers during the course of the hearing that it is anticipated that 1,000 documents could be reviewed per day. I see no reason why disclosure should not be given on a rolling basis following such review.

49.  The position in relation to the archived materials in the back-up systems is, in my view, rather different. The on-line backup system for emails and documents in FIM Advisers' shared drives has only been in operation since 2008. It contains a considerable body of documents of which, as I have said, only the emails have been restored. I am satisfied that there is likely to be a significant degree of overlap between the documents contained on this system and those which will be disclosed pursuant to the exercise to be conducted in relation to the live mailboxes, the personal storage table archived emails and the FIM shared

drives.

50.    I am not, therefore, prepared to make an order for disclosure of the documents on this on-line back-up system at this stage. I would, however, emphasise that if the ongoing disclosure exercise does prove fruitful and produces documents which the Trustee considers important then I would be sympathetic to a further application or for the restoration of this application for an order for disclosure in relation to them. I would expect FIM Advisers to be in a position to embark on any such disclosure exercise without delay. It should, therefore, proceed with the process of restoring all the documents on this back-up system.

51.    The same considerations apply to the offsite back-up tapes. Once again I believe there is likely to be a considerable overlap between the documents recorded on these back-up tapes and those to be disclosed pursuant to the exercise of disclosure and review to be conducted on the live mailboxes, the personal storage table archived emails and the FIM shared drives. Accordingly I am not prepared to make an order for disclosure in relation to them at this stage but I would, again, be sympathetic to an application or the restoration of this application in relation to them depending upon the results of the current search. In the meantime I consider the process of restoration of the documents on these off-site back-up tapes should be completed so that any further order for disclosure can be addressed without delay.

**Specific disclosure - disputed categories**

52.    The Trustee has requested but FIM Advisers has refused to disclose two specific categories of documents. I will address them in turn.

53.    The first category relates to documents generated on or after 11 December 2008 concerning: (1) any complaints received by Kingate or FIM Advisers concerning any investments in BLMIS; (2) any inquiry or request for documents, subpoena, investigation or litigation by a US or foreign regulatory authority or a law enforcement authority concerning BLMIS or any investment in BLMIS and/or (3) litigation or arbitration by any private party for any reason concerning BLMIS or any investment in BLMIS.

54.    FIM Advisers resist the disclosure sought on the basis that it is difficult to see how such documents can be properly said to relate to the affairs of BLMIS. Complaints from investors or inquiries from regulators addressed to FIM Advisers or Kingate Management after BLMIS' fraud was discovered, would, it says, be of marginal assistance at best in revealing details of BLMIS' operations. Further, the burden of reviewing any documents in these categories for the purpose of redacting legally privileged material is likely to be significantly greater than in relation to the other documents of which disclosure is sought.

55.    I am unable to accept these submissions. The Trustee has said that such documents, particularly if they refer to events predating 11 December 2008, are likely to be highly relevant to his investigations. I agree; they may well disclose or refer to aspects of the business of BLMIS, its assets, obligations and liabilities of which the Trustee is not yet aware. As for the concern as to privilege, this could be addressed easily, as the Trustee has suggested, by the instruction of independent junior counsel to review the documents and to ensure privileged material is not disclosed.

56.    The second category concerns documents showing the organisation of FIM Advisers, the Kingate Funds and Kingate Management including constitutional documents of these entities and documents showing any ownership interest, direct or indirect, in FIM Advisers, Kingate Funds or Kingate Management by Mr Ceretti or Mr Grosso.

57.    FIM Advisers again objects to this category on the basis that documents related to the ownership of any of these entities or documents related to their organisation do not concern the assets, affairs, rights, obligations or liabilities of BLMIS.

58.    In my judgment, FIM Advisors' objection to this category is not well founded. The Trustee has explained, and I accept, that the issue of ownership and organisation of Kingate Management and FIM Advisers is highly relevant to his investigation into the affairs of BLMIS, as is the role of Kingate Management and the extent of the involvement of FIM Advisers, Mr Ceretti and Mr Grosso in the fraud. The documents sought may shed light on all these matters and also on the whereabouts of the assets of BLMIS and whether it has claims and, if so, against whom. As I have mentioned, the Trustee believes that the Kingate Funds must

have known or should have known that the business of BLMIS was inherently fraudulent and believes the payments made to Kingate Funds' investors and the fees paid to Kingate Management and FIM Advisers are very likely to have been preferential payments or fraudulent transfers. In order properly to investigate these claims, I consider the Trustee reasonably requires a complete understanding of the organisation and ownership of these various entities.

59.    I will hear counsel as to the precise terms of the order I should make in the light of this judgment.

---

BAILII: Copyright Policy | Disclaimers | Privacy Policy | Feedback | Donate to BAILII
URL: http://www.bailii.org/ew/cases/EWHC/Ch/2010/1299.html

# PAUL
# HASTINGS

1(212) 318-6751
jodikleinick@paulhastings.com

September 2, 2014                                                                    75342.00003

**VIA ELECTRONIC MAIL**

Gonzalo Zeballos, Esq.
Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111

Re:    *Picard v. Ceretti, et al.* (United States Bankruptcy Court, Southern District of New York
       Adversary Proceedings No. 09-1161 (SMB))

Dear Mr. Zeballos:

I write in response to your August 25, 2014 letter, which responds to my cover letter to you dated August 21 for our anticipated Rule 11 motion.

We attempted to work this out short of motion practice by sending our initial letter to you on May 5, 2014. We told you in that letter, under no uncertain terms, that the allegation made in the Trustee's Complaint that FIM Limited maintained a bank account in New York at Brown Brothers Harriman is false and explained to you that, in fact, the account was a correspondent bank belonging to MeesPierson bank. Your assertion that you "immediately reviewed" what you acknowledge are "very serious allegations" in that letter and gave a "thorough review of the support for each and every allegation in the Complaint" in less than a 16-hour period is simply not credible.

We have since provided you with a declaration from our client and a declaration from MeesPierson Bank attesting to the fact that your allegation is false, and that you have mischaracterized a correspondent bank account belonging to MeesPierson as an account belonging to FIM Limited. We have also provided you with a document that, on its face, demonstrates that the account is an account held by MeesPierson. Our client has attested to the fact that your allegation is false, MeesPierson has attested to the fact that your allegation is false, and the very document you supposedly relied on in the first place as a basis for the allegation demonstrates that your allegation is false. You acknowledge as much in your letter, claiming that this document somehow provided a good faith basis to make the allegation in the first place. To maintain your position in the face of this evidence is sanctionable. As an officer of the court, you have ethical obligations, as does the Trustee. If you do not withdraw the allegations of this supposed New York bank account belonging to FIM Limited and the supposed payments made to and from that account, which you know you have mischaracterized, we will file our motion in accordance with the rules as soon as the 21-day period passes.

With respect to the remainder of your letter, you should note that we maintain the statements in our May 5 letter that there are other allegations in your Complaint that are false, and that we believe were deliberately included for an improper purpose. We have determined not to address those at this time in the context of our Rule 11 motion, since the implementation of the Extraterritoriality Decision will result in the complete dismissal of the Complaint as against our clients. Also note that we disagree with your assertion that the "proper course of action" for the FIM Defendants faced with your false allegations is to either incur the expense of answering the Complaint and denying these allegations or "await the resolution of [our] promised motion to dismiss." The FIM Defendants already moved to dismiss the

Paul Hastings LLP | 75 East 55th Street | New York, NY 10022
t: +1.212.318.6000 | www.paulhastings.com

# PAUL
# HASTINGS

Gonzalo Zeballos, Esq.
September 2, 2014
Page 2

Complaint on extraterritoriality grounds before Judge Rakoff and, as you know, prevailed on that motion. The case is now before Judge Bernstein to simply implement that decision in accordance with the holdings of the District Court.  There is no need for any of the FIM Defendants to answer or move to dismiss again.

Sincerely,

Jodi A. Kleinick
of PAUL HASTINGS LLP

JAK

# BakerHostetler

Baker & Hostetler LLP

45 Rockefeller Plaza
New York, NY 10111

T  212.589.4200
F  212.589.4201
www.bakerlaw.com

Gonzalo S. Zeballos
direct dial: 212.589.4656
gzeballos@bakerlaw.com

September 9, 2014

**VIA ELECTRONIC MAIL**

Jodi A. Kleinick, Esq.
Paul Hastings LLP
75 East 55th Street
New York, NY 10022

Dear Ms. Kleinick:

This responds to your most recent letter dated September 2, 2014. As our letter of August 25th unequivocally explained, your allegations are false, your motion is clearly being filed in bad faith and for an improper purpose, and it will fail.

Your request for Rule 11 sanctions is substantively groundless and procedurally flawed. Rule 11 imposes an affirmative duty to conduct an objectively reasonable inquiry into the facts and law to make sure a complaint is well founded. As your motion acknowledges, any alleged misconduct under Rule 11 must be judged *at the time the relevant pleading was signed. See* Motion at 5. *See also In re Spa Chakra, Inc.*, Case No. 09-17629, 2013 WL 3286241, at *8 (Bankr. S.D.N.Y. June 27, 2013) (Bernstein, J.).

The invoices upon which our allegation was based show an instruction to transfer money from Kingate Management Limited ("KML") to FIM Limited. The wire instructions state the name of the Bank to which the transfer is directed as Brown Brothers Harriman ("BBH") in New York. Several account numbers are provided, including an account number for MeesPierson, and an account number for FIM Limited, as well as the statement "In favour of FIM Limited." Notwithstanding your "unequivocal statements" and the affidavits submitted for the first time with your August 21st letter, there is nothing on the face of the invoice that makes clear that the BBH account is only an account for MeesPierson, or that the FIM Limited account referenced on the invoice is located in an offshore jurisdiction. There is no reason for the Trustee to believe, much less know, that this transfer, which on its face is a transfer from KML to FIM Limited and directs that the money be wired to New York, did not take place in New York. Under these circumstances the Trustee was, and we believe still is, entitled to make the pleading and seek discovery. We are confident that the Court will agree.

Moreover, your application for Rule 11 sanctions itself violates Rule 11 and Bankruptcy Rule 9011. Under the plain language of Bankruptcy Rule 9011, "a party seeking sanctions must follow certain procedural requirements. In particular, Bankruptcy Rule 9011 prohibits the filing

Atlanta    Chicago    Cincinnati    Cleveland    Columbus    Costa Mesa    Denver
Houston    Los Angeles    New York    Orlando    Philadelphia    Seattle    Washington, DC

September 9, 2014
Page 2

or presentation [to the Court] of a motion for sanctions if the offending party withdraws or
corrects the challenged paper within 21 days after service of the motion on the offending party."
*In re Spa Chakra*, 2013 WL 3286241 at *5 (dismissing sanctions motion for violation of safe
harbor provision). "Presenting" a claim to the Court includes "signing, filing, submitting or later
advocating . . . a petition, pleading, written motion, or other paper." *See in re Intercorp Int'l Ltd.*,
309 B.R. 686, 693 ( Bankr. S.D.N.Y. 2004) (Bernstein, J.). Your submission of a copy of your
sanctions motion on the same day it was served on our client, is a prima facie violation of this
rule.

Judge Bernstein has acknowledged that the Second Circuit imposes a "strict procedural
requirement" on a party seeking sanctions to comply with Rule 11's safe harbor provision. *In re
Spa Chakra*, 2013 WL 328641 at *7. Failure to comply with the Rule 11 safe harbor provision
<u>requires</u> dismissal of the Rule 11 sanctions motion. *See Fierro v. Galucci*, Nos. 10–1560–cv,
10–1593–cv, 423 Fed. Appx. 17, 18-19, 2011 WL 1957674, at **1 (2d Cir. May 23, 2011); *see
also Castro v. Mitchell*, 727 F. Supp. 2d 302, 306 (S.D.N.Y. 2010) ("A motion that fails to comply
with the safe harbor provision of Rule 11 must be denied.")

Accordingly, your Rule 11 motion is doomed, both substantively and procedurally.

Your prayer for relief under 28 U.S.C. § 1927 ("Section 1927") fares no better. As the cases
cited in your own motion point out, sanctions under Section 1927 apply only to attorneys, not
clients. *See, e.g., Prospect Capital Corp. v. Enmon*, Case No. 08 CIV 3721, 2010 WL 907956
at *5, (S.D.N.Y. Mar. 9, 2010). Since your motion, on its face, seeks sanctions only against the
Trustee, Section 1927 cannot form the basis for the relief you seek.

Even if the court were to deem your motion to be against counsel as well as the Trustee, it
nevertheless still falls far short of the requisite standard for relief under Section 1927. To state a
claim for relief under that provision, your client would need to show that the Trustee's claims
against your clients are "entirely without color" and that those claims were brought in bad faith,
"motivated by improper purpose such as harassment or delay." *Reichmann v. Neuman*, 553 F.
Supp. 2d 307, 319 (S.D.N.Y. 2008) (citing *Eisenmann v. Green*, 204 F.3d 393, 396 (2d Cir.
2000)). As we have already pointed out to you, the Trustee's claims against the FIM
Defendants are not materially affected by the allegation at issue. Indeed, the only client of
yours impacted at all by the relevant allegation is FIM Limited. It is clear from the substance of
the Trustee's Third and Fourth Amended Complaints, which state claims for ordinary relief
available to a bankruptcy trustee, that the fact at issue was pleaded because it is relevant
jurisdictional evidence. The Trustee would nevertheless still be able to prove that the FIM
Defendants are subject to the jurisdiction of the Bankruptcy Court even if the allegation were to
be withdrawn.

As is the case with your Rule 11 petition, your petition for relief under Section 1927 is both
procedurally and substantively hopeless.

The relevant standard for relief under the Court's inherent power to manage its own affairs is
identical to the standard for relief under Section 1927, except that it may be even more
restrictive. *See, e.g., Chambers v. NASCO Inc.*, 501 U.S. 32, 44 (1991) (noting that the
application of sanctions under the court's inherent power must be exercised with "restraint and
discretion"). Therefore, for the reasons set forth above, your prayer for relief under the Court's
inherent power is fatally flawed.

September 9, 2014
Page 3

It is self-evident that your papers are a bad faith attempt to improve your client's litigation position with respect to the Extraterritoriality Decision, to which about one-third of your motion is dedicated.  The allegation at issue has been in place for more than three years.  Yet your papers falsely claim that the allegation was made to "make an end run around the Extraterritoriality Decision, or to try to keep the case alive against the FIM Defendants in an effort to force the FIM Defendants into unwarranted discovery."  Motion at 9.  You know that this cannot be true, yet you persist in making this allegation in your correspondence with us and in your pleadings to the Court.  Your papers also improperly introduce an unrelated foreign legal proceeding in an attempt to paint the Trustee in a bad light, while ignoring, in violation of your duty of candor to the Court, to inform the Court of a UK judgment in favor of the Trustee against your clients.

Your frivolous attempt to fabricate a sanctions motion out of a three-year-old factual allegation has already wasted enough of our respective clients' time and resources.  Should you persist in these efforts, the only thing you will accomplish is to help us recover our client's wasted costs.

Sincerely,

Gonzalo S. Zeballos

# PAUL
# HASTINGS

1(212) 318-6751
jodikleinick@paulhastings.com

October 29, 2014                                                    75342.00003

**BY EMAIL**

David Sheehan, Esq.
Gonzalo Zeballos, Esq.
John Burke, Esq.
Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111

Re:     *Picard v. Ceretti, et al.* (United States Bankruptcy Court, Southern District of New York
        Adversary Proceeding No. 09-1161 (SMB))

Gentlemen:

As you know, we represent FIM Advisers LLP, FIM Limited and Messrs. Carlo Grosso and
Federico Ceretti (collectively, the "FIM Defendants") in the above-referenced proceeding.

As you also know, we have advised you in writing several times since May 2014 that the
allegation in paragraph 89 of Fourth Amended Complaint (the "Complaint") that "Kingate
Management paid fees to FIM Limited at its account with Brown Brothers Harriman & Co. in
New York, New York" is objectively false. FIM Limited never maintained any bank account at
BBH in New York or otherwise. FIM Limited maintained an account with the bank MeesPierson
(Guernsey) Limited in the Channel Islands ("MeesPierson (CI)"). MeesPierson (CI) used BBH in
New York as <u>its</u> U.S. correspondent bank for dollar payments.

On August 21, 2014, in accordance with Rule 11 and 28 U.S.C. § 1927, we served you with a
motion seeking sanctions based on your refusal to withdraw this false allegation from the
Complaint. As part of that motion, we attached the sworn Declaration of Carlo Grosso (the
"Grosso Declaration") and the sworn declaration of two representatives of MeesPierson (CI) (the
"MeesPierson Declaration"). The Grosso Declaration attested that FIM Limited never
maintained any bank account at BBH in New York or any other bank account in the United
States. Giving you the benefit of the doubt, we made the assumption that your decision to
include this allegation in the Complaint was based on your and/or the Trustee's incorrect
reading of a form of invoice prepared on FIM Limited letterhead to Kingate Management Limited
("KML"). The Grosso Declaration attached that form of invoice to demonstrate that your reading
was wrong. The invoice, on its face, includes wire transfer instructions that clearly provide that
the payment should be made to an account at BBH as follows: "A/C: MeesPierson (C.I.) Ltd.
A/C No.: 6682652, Swift: MEESGGSP." The A/C references the account to which the payment
should be made. As both the Grosso and MeesPierson (CI) declarations make clear, this is
merely a correspondent bank account maintained by MeesPierson (CI) at BBH. The reference
in the transfer instructions to "In Favour of FIM Limited, A/C 10501529" is merely intended to
enable MeesPierson (CI) to properly credit the funds to the intended recipient, which is FIM
Limited's account at MeesPierson (CI) in the Channel Islands.

# PAUL
# HASTINGS

David Sheehan, Esq.
Gonzalo Zeballos, Esq.
John Burke, Esq.
October 29, 2014
Page 2

While both your August 25 and September 9 letters devote significant effort to contesting our ability to obtain sanctions based on your refusal to withdraw this demonstrably false allegation, which we believe are clearly warranted at this juncture, one thing could not be clearer.  You do not even attempt to claim that your false allegation is true.  At best, you attempt to justify your and/or the Trustee's misreading of the invoice at the time that the Complaint was filed and then disingenuously claim that you still have no reason to believe that this transfer did not take place in New York.  You miss the point.  Your allegation is not even that the transfer took place in New York – your allegation is that KML made transfers into a supposed account belonging to FIM Limited at BBH in New York.  Since your Complaint was filed, you have received my letters and two sworn declarations -- one from a non-party bank which is the actual holder of the BBH account at issue -- that demonstrate (a) that the BBH account referred to on the invoice and into which payment was made through, in fact, does not belong to FIM Limited but rather belongs to MeesPierson (CI) and is merely used as a correspondent bank; and (b) the FIM Limited account referred to on the invoice is an account held at MeesPierson (CI) in Guernsey.  Your refusal to withdraw this false allegation, and claim to entitlement to discovery, particularly in light of Judge Rakoff's Extraterritoriality Decision and the procedure contemplated in the proposed order attached to the Notice of Presentment filed with Judge Bernstein, is at this point indefensible.

Since receiving your August 25 and September 9 responses and in anticipation of the upcoming motion practice with respect to the Extraterritoriality Decision, we obtained the enclosed declaration from BBH (the "BBH Declaration") itself, which makes crystal clear that "None of FIM Limited, FIM Advisers LLP, Carlo Grosso or Federico Ceretti maintained an account with BBH" in New York or otherwise.  Moreover, the BBH Declaration confirms that BBH account number 6682652 belongs to ABN AMRO (Guernsey) Limited (formerly known as MeesPierson (Guernsey) Channel Islands) and not to FIM Limited as you allege.

We have provided you and the Trustee with every opportunity to withdraw this false allegation without having to resort to motion practice.  If you do not withdraw the allegation by 5:00 p.m. on October 31, we will seek appropriate sanctions and you can attempt to justify your refusal to the Court.  We trust that Judge Bernstein and/or Judge Rakoff will see through your actions and proceed accordingly.

This is not to suggest that we agree with or accept any of the other allegations in your Complaint.  We reserve all of our clients' rights in that regard.

Sincerely,

Jodi Kleinick

Jodi A. Kleinick
of PAUL HASTINGS LLP

JAK:bf

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (SMB) |
| Plaintiff-Applicant, | SIPA LIQUIDATION |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |

In re:

BERNARD L. MADOFF,

        Debtor.

| | |
|---|---|
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | Adv. Pro. No. 09-1161 (SMB) |
| Plaintiff, | |
| v. | |
| FEDERICO CERETTI, CARLO GROSSO, KINGATE GLOBAL FUND, LTD., KINGATE EURO FUND, LTD., KINGATE MANAGEMENT, LIMITED, FIM ADVISERS LLP, FIM LIMITED, CITI HEDGE FUND SERVICES LIMITED, FIRST PENINSULA INDIVIDUALLY AND AS TRUSTEES OF THE ASHBY TRUST, THE ASHBY TRUST, ASHBY INVESTMENT SERVICES LIMITED INDIVIDUALLY AND AS TRUSTEES OF THE ASHBY TRUST, ALPINE TRUSTEES LIMITED INDIVIDUALLY AND AS TRUSTEES OF THE EL PRELA TRUST, PORT OF HERCULES LTD. INDIVIDUALLY AND AS TRUSTEE OF THE EL PRELA TRUST, EL PRELA TRUST, EL PRELA GROUP HOLDING SERVICES, ASHBY HOLDING SERVICES LIMITED, AND EL | |

PRELA TRADING INVESTMENTS LIMITED
AND HSBC BANK BERMUDA LIMITED,

Defendants.

### DECLARATION OF JOHNNY MEJIA

I, Johnny Mejia, hereby declare pursuant to 28 U.S.C. §1746 under penalty of perjury as follows:

1.    I am an Associate of Brown Brothers Harriman & Co. ("BBH") and have been an employee of BBH since May 1996.  BBH is a New York State chartered private bank.

2.    I have reviewed BBH's records dating back to October 1, 1999 to the present date.  None of FIM Limited, FIM Advisers LLP, Carlo Grosso or Federico Ceretti maintained an account with BBH during that time period.

3.    From at least July 2001 to March 2006, the bank ABN AMRO (Guernsey) Limited (formerly known as MeesPierson (Guernsey) Channel Islands) maintained an account at BBH in New York; its account number at BBH was 6682652.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on October 27, 2014
New York, New York

_____
Johnny Mejia

-2-

# BakerHostetler

Baker&Hostetler LLP

45 Rockefeller Plaza
New York, NY 10111

T 212.589.4200
F 212.589.4201
www.bakerlaw.com

Gonzalo S. Zeballos
direct dial: 212.589.4656
gzeballos@bakerlaw.com

October 29, 2014

**VIA ELECTRONIC MAIL**

Jodi A. Kleinick, Esq.
Paul Hastings LLP
75 East 55th Street
New York, NY 10022

Dear Ms. Kleinick:

This letter responds to your latest letter, dated October 29, 2014, threatening sanctions should the Trustee not accede to your demands by 5:00 pm on October 31st.   As our letters of August 25th and September 9th unequivocally explained, your allegations are false and the sanctions motion you are threatening to file would be frivolous, in bad faith and for an improper purpose. Nothing in your latest letter alters the situation and we stand by those earlier letters.

Should you file your threatened motion, we will move for sanctions for your violation of the Rule 11 procedures in submitting a copy to Judge Bernstein of your sanctions motion on the same day it was served on our client.  That action was a *prima facie* violation of the plain language of Bankruptcy Rule 9011, which "prohibits the filing or presentation [to the Court] of a motion for sanctions if the offending party withdraws or corrects the challenged paper within 21 days after service of the motion on the offending party."  *In re Spa Chakra*, 2013 WL 3286241 at *5 (dismissing sanctions motion for violation of safe harbor provision).  "Presenting" a claim to the Court includes "signing, filing, submitting or later advocating . . . a petition, pleading, written motion, or other paper."  *See in re Intercorp Int'l Ltd.*, 309 B.R. 686, 693 (Bankr. S.D.N.Y. 2004) (Bernstein, J.).

Should you persist in your efforts to fabricate the basis for a sanctions motion out of a three-year-old factual allegation made in good faith, we will seek counsel fees.

Sincerely,

Gonzalo S. Zeballos

Atlanta     Chicago     Cincinnati     Cleveland     Columbus     Costa Mesa     Denver
Houston     Los Angeles     New York     Orlando     Philadelphia     Seattle     Washington, DC

# PAUL
# HASTINGS

1(212) 318-6751
jodikleinick@paulhastings.com

October 30, 2014

**BY EMAIL**

David Sheehan, Esq.
Gonzalo Zeballos, Esq.
John Burke, Esq.
Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111

Re:   *Picard v. Ceretti, et al.* (United States Bankruptcy Court, Southern District of New York
Adversary Proceeding No. 09-1161 (SMB))

Gentlemen:

I write in response to Mr. Zeballo's letter to me from yesterday, which again refuses to withdraw from the
Complaint an allegation that each of you – and therefore your Firm -- know is false.

Your threat to seek sanctions based on our supposed violation of the Rule 11 procedures by submitting a
courtesy copy to Judge Bernstein's chambers would be frivolous.  Be advised that when we contacted the
Court to obtain a return date in accordance with Judge Bernstein's rules, we were advised by Chambers
that the Court requires that we deliver a courtesy copy to Chambers of that motion at the time of service.
We specifically advised Chambers that it was a motion pursuant to (among other things) Rule 11, which
provides for a 21-day safe harbor, and were advised that a courtesy copy was still required to be
simultaneously delivered to Chambers at the time of service—not filing.  We confirmed this with
Chambers on two separate occasions.  As you know, we did not file the motion with the Clerk of the
Court, nor did we send the motion to any other party.  Our cover letter to the Court clearly reflected this.
Moreover, the case you cite is inapposite.  In *Spa Chakra*, the issue was whether the moving party could
obtain Rule 11 sanctions where it merely served its adversary with a warning letter unaccompanied by a
motion.  In *Intercorp*, Judge Bernstein determined to grant Rule 11 sanctions against both the debtor and
its counsel based on a finding that the plaintiff's petition was filed for an improper purpose.

Rule 11 aside, and even if we give credence to your assertion that including this allegation at the time it
was first made was an honest mistake on your part, it is plain that continued use of and reliance on this
false allegation constitutes a violation of 28 U.S.C. §1927 and that sanctions are appropriate under that
statute and pursuant to the Court's inherent power.  Your letters make it crystal clear that you refuse to
withdraw the allegation despite its falsity, suggesting that you intend to continue to rely on this false
allegation to try to keep my clients in the case and even claim entitlement to discovery based on it.  If we
are somehow misinterpreting your intentions, please let me know immediately.

Sincerely,

*Jodi Kleinick*

Jodi A. Kleinick
of PAUL HASTINGS LLP

LEGAL_US_E # 112564122.2

## Usitalo, Michelle R.

| | |
|---|---|
| **From:** | Zeballos, Gonzalo S. |
| **Sent:** | Friday, October 31, 2014 12:20 PM |
| **To:** | Kleinick, Jodi; Burke, John; Sheehan, David J. |
| **Cc:** | Sher, Barry; Wetzler, Mor |
| **Subject:** | RE: Picard v. Ceretti, et al. |

Jodi,

As we have stated in our earlier letters, the allegation you are complaining about is three years old. It is a jurisdictional allegation and on any reasonable interpretation was made in good faith. It could not have been made, as you suggest, to address a court decision that did not exist at the time the allegation was made, or to "keep [your] clients in the case" on the basis of legal arguments arising from that decision. Your position is just not credible. You are clearly trying to improve your client's position on extraterritoriality. The case law is crystal clear that this is an inappropriate use of Rule 11 that is itself sanctionable. As far as the extraterritoriality briefing is concerned, we are complying with a procedure requested by all defendants affected by the extraterritoriality decision, including your clients, and on the timetable for advancing arguments on both sides of the extraterritoriality issue as agreed upon by all parties. We have not yet presented our extraterritoriality argument--therefore, presently there is no position of the Trustee to contest. On that ground as well, your position is baseless. The appropriate time to assert any extraterritoriality arguments is under the court-ordered procedure.

Regards,

Gonzalo

-----Original Message-----
From: Kleinick, Jodi [mailto:JodiKleinick@paulhastings.com]
Sent: Thursday, October 30, 2014 4:34 PM
To: Zeballos, Gonzalo S.; Burke, John; Sheehan, David J.
Cc: Sher, Barry; Wetzler, Mor
Subject: Picard v. Ceretti, et al.

Gentlemen:  Please see the attached.  Jodi

_____

Jodi Kleinick | Partner
Paul Hastings LLP | 75 East 55th Street, New York, NY 10022 | Direct: +1.212.318.6751 | Main: +1.212.318.6000 | Fax: +1.212.230.7691 | jodikleinick@paulhastings.com | www.paulhastings.com

*************************************************************************************
This message is sent by a law firm and may contain information that is privileged or confidential. If you received

this transmission in error, please notify the sender by reply e-mail and delete the message and any attachments.

For additional information, please visit our website at www.paulhastings.com

## Usitalo, Michelle R.

| | |
|---|---|
| **From:** | Kleinick, Jodi <JodiKleinick@paulhastings.com> |
| **Sent:** | Friday, October 31, 2014 1:23 PM |
| **To:** | Zeballos, Gonzalo S.; Burke, John; Sheehan, David J. |
| **Cc:** | Sher, Barry; Wetzler, Mor |
| **Subject:** | RE: Picard v. Ceretti, et al. |

Gonzalo:  As Barry explained to David before your email, we will not be moving under Rule 11 based on your
representation that you made an interpretation of the records at the time of the complaint that was done in good faith,
albeit incorrectly and erroneously.   Our motion will be based on 1927 and the Court's inherent power based on your
firm's refusal to withdraw or correct, and your continued reliance on, an allegation that is known to be false.  We are at
a loss as to how this course of action can be squared with the applicable ethical and other rules of attorney conduct.


Best, Jodi




_____


Jodi Kleinick | Partner
Paul Hastings LLP | 75 East 55th Street, New York, NY 10022 | Direct: +1.212.318.6751 | Main: +1.212.318.6000 | Fax:
+1.212.230.7691 | jodikleinick@paulhastings.com | www.paulhastings.com




-----Original Message-----
From: Zeballos, Gonzalo S. [mailto:gzeballos@bakerlaw.com]
Sent: Friday, October 31, 2014 12:20 PM
To: Kleinick, Jodi; Burke, John; Sheehan, David J.
Cc: Sher, Barry; Wetzler, Mor
Subject: RE: Picard v. Ceretti, et al.

Jodi,

As we have stated in our earlier letters, the allegation you are complaining about is three years old.  It is a jurisdictional
allegation and on any reasonable interpretation was made in good faith.  It could not have been made, as you suggest,
to address a court decision that did not exist at the time the allegation was made, or to "keep [your] clients in the case"
on the basis of legal arguments arising from that decision.  Your position is just not credible.  You are clearly trying to
improve your client's position on extraterritoriality.  The case law is crystal clear that this is an inappropriate use of Rule
11 that is itself sanctionable.  As far as the extraterritoriality briefing is concerned, we are complying with a procedure
requested by all defendants affected by the extraterritoriality decision, including your clients, and on the timetable for
advancing arguments on both sides of the extraterritoriality issue as agreed upon by all parties.  We have not yet
presented our extraterritoriality argument--therefore, presently there is no position of the Trustee to contest.  On that

ground as well, your position is baseless.  The appropriate time to assert any extraterritoriality arguments is under the court-ordered procedure.

Regards,

Gonzalo

-----Original Message-----
From: Kleinick, Jodi [mailto:JodiKleinick@paulhastings.com]
Sent: Thursday, October 30, 2014 4:34 PM
To: Zeballos, Gonzalo S.; Burke, John; Sheehan, David J.
Cc: Sher, Barry; Wetzler, Mor
Subject: Picard v. Ceretti, et al.

Gentlemen:  Please see the attached.  Jodi

Jodi Kleinick | Partner
Paul Hastings LLP | 75 East 55th Street, New York, NY 10022 | Direct: +1.212.318.6751 | Main: +1.212.318.6000 | Fax: +1.212.230.7691 | jodikleinick@paulhastings.com | www.paulhastings.com

*******************************************************************************************
This message is sent by a law firm and may contain information that is privileged or confidential. If you received this transmission in error, please notify the sender by reply e-mail and delete the message and any attachments.

For additional information, please visit our website at www.paulhastings.com

This email is intended only for the use of the party to which it is addressed and may contain information that is privileged, confidential, or protected by law. If you are not the intended recipient you are hereby notified that any dissemination, copying or distribution of this email or its contents is strictly prohibited.
If you have received this message in error, please notify us immediately by replying to the message and deleting it from your computer.

Internet communications are not assured to be secure or clear of inaccuracies as information could be intercepted, corrupted, lost, destroyed, arrive late or incomplete, or contain viruses. Therefore, we do not accept responsibility for any errors or omissions that are present in this email, or any attachment, that have arisen as a result of e-mail transmission.

*************************************************************************************

This message is sent by a law firm and may contain information that is privileged or confidential. If you received
this transmission in error, please notify the sender by reply e-mail and delete the message and any attachments.

For additional information, please visit our website at www.paulhastings.com

## Usitalo, Michelle R.

| | |
|---|---|
| **From:** | Zeballos, Gonzalo S. |
| **Sent:** | Friday, October 31, 2014 5:13 PM |
| **To:** | Kleinick, Jodi; Burke, John; Sheehan, David J.; Ponto, Geraldine |
| **Cc:** | Sher, Barry; Wetzler, Mor |
| **Subject:** | RE: Picard v. Ceretti, et al. |

Jodi,

One thing in this whole process is clear. If anyone is guilty of a Section 1927 violation it is your firm. We have, for several months now, engaged in lengthy correspondence on this issue. You unilaterally scheduled a sanctions hearing before the court. You drafted a Rule 11 motion and improperly submitted your motion papers--which you now have no intention of filing--before that court. As a result, we have spent many hours of wasted costs analyzing your claims, conducting legal research, and preparing a response to your frivolous allegations. And for what? On the basis that a single three year old jurisdictional allegation has somehow vexatiously multiplied proceedings and costs? An allegation about which at best you have only speculated as to our potential use? Your filing of a Section 1927 motion will be Exhibit A in our cross motion under the same section.

Regards,

Gonzalo

-----Original Message-----
From: Kleinick, Jodi [mailto:JodiKleinick@paulhastings.com]
Sent: Friday, October 31, 2014 1:23 PM
To: Zeballos, Gonzalo S.; Burke, John; Sheehan, David J.
Cc: Sher, Barry; Wetzler, Mor
Subject: RE: Picard v. Ceretti, et al.

Gonzalo: As Barry explained to David before your email, we will not be moving under Rule 11 based on your representation that you made an interpretation of the records at the time of the complaint that was done in good faith, albeit incorrectly and erroneously. Our motion will be based on 1927 and the Court's inherent power based on your firm's refusal to withdraw or correct, and your continued reliance on, an allegation that is known to be false. We are at a loss as to how this course of action can be squared with the applicable ethical and other rules of attorney conduct.

Best, Jodi

Jodi Kleinick | Partner
Paul Hastings LLP | 75 East 55th Street, New York, NY 10022 | Direct: +1.212.318.6751 | Main: +1.212.318.6000 | Fax: +1.212.230.7691 | jodikleinick@paulhastings.com | www.paulhastings.com

-----Original Message-----
From: Zeballos, Gonzalo S. [mailto:gzeballos@bakerlaw.com]
Sent: Friday, October 31, 2014 12:20 PM
To: Kleinick, Jodi; Burke, John; Sheehan, David J.
Cc: Sher, Barry; Wetzler, Mor
Subject: RE: Picard v. Ceretti, et al.

Jodi,

As we have stated in our earlier letters, the allegation you are complaining about is three years old.  It is a jurisdictional allegation and on any reasonable interpretation was made in good faith.  It could not have been made, as you suggest, to address a court decision that did not exist at the time the allegation was made, or to "keep [your] clients in the case" on the basis of legal arguments arising from that decision.  Your position is just not credible.  You are clearly trying to improve your client's position on extraterritoriality.  The case law is crystal clear that this is an inappropriate use of Rule 11 that is itself sanctionable.  As far as the extraterritoriality briefing is concerned, we are complying with a procedure requested by all defendants affected by the extraterritoriality decision, including your clients, and on the timetable for advancing arguments on both sides of the extraterritoriality issue as agreed upon by all parties.  We have not yet presented our extraterritoriality argument--therefore, presently there is no position of the Trustee to contest.  On that ground as well, your position is baseless.  The appropriate time to assert any extraterritoriality arguments is under the court-ordered procedure.

Regards,

Gonzalo

-----Original Message-----
From: Kleinick, Jodi [mailto:JodiKleinick@paulhastings.com]
Sent: Thursday, October 30, 2014 4:34 PM
To: Zeballos, Gonzalo S.; Burke, John; Sheehan, David J.
Cc: Sher, Barry; Wetzler, Mor
Subject: Picard v. Ceretti, et al.

Gentlemen:  Please see the attached.  Jodi

_____

Jodi Kleinick | Partner
Paul Hastings LLP | 75 East 55th Street, New York, NY 10022 | Direct: +1.212.318.6751 | Main: +1.212.318.6000 | Fax: +1.212.230.7691 | jodikleinick@paulhastings.com | www.paulhastings.com


********************************************************************************

This message is sent by a law firm and may contain information that is privileged or confidential. If you received this transmission in error, please notify the sender by reply e-mail and delete the message and any attachments.

For additional information, please visit our website at www.paulhastings.com

_____

This email is intended only for the use of the party to which it is addressed and may contain information that is privileged, confidential, or protected by law. If you are not the intended recipient you are hereby notified that any dissemination, copying or distribution of this email or its contents is strictly prohibited.
If you have received this message in error, please notify us immediately by replying to the message and deleting it from your computer.

Internet communications are not assured to be secure or clear of inaccuracies as information could be intercepted, corrupted, lost, destroyed, arrive late or incomplete, or contain viruses. Therefore, we do not accept responsibility for any errors or omissions that are present in this email, or any attachment, that have arisen as a result of e-mail transmission.

*********************************************************************************************
This message is sent by a law firm and may contain information that is privileged or confidential. If you received this transmission in error, please notify the sender by reply e-mail and delete the message and any attachments.

For additional information, please visit our website at www.paulhastings.com

## Usitalo, Michelle R.

| | |
|---|---|
| **From:** | Kleinick, Jodi <JodiKleinick@paulhastings.com> |
| **Sent:** | Friday, October 31, 2014 6:06 PM |
| **To:** | Zeballos, Gonzalo S.; Burke, John; Sheehan, David J.; Ponto, Geraldine |
| **Cc:** | Sher, Barry; Wetzler, Mor |
| **Subject:** | RE: Picard v. Ceretti, et al. |

Gonzalo - We do not intend to engage in further debate with you. Your email itself demonstrates the need to file our motion.

We were advised by the court that the 19th is an available return date for the hearing on the motion we plan to file pursuant to Section 1927 and the Court's inherent powers. Please confirm your consent to that return date for our motion. If we cannot agree, we will request that the court provide a date.

Jodi

-----Original Message-----
From: Zeballos, Gonzalo S. [mailto:gzeballos@bakerlaw.com]
Sent: Friday, October 31, 2014 5:13 PM
To: Kleinick, Jodi; Burke, John; Sheehan, David J.; Ponto, Geraldine
Cc: Sher, Barry; Wetzler, Mor
Subject: RE: Picard v. Ceretti, et al.

Jodi,

One thing in this whole process is clear. If anyone is guilty of a Section 1927 violation it is your firm. We have, for several months now, engaged in lengthy correspondence on this issue. You unilaterally scheduled a sanctions hearing before the court. You drafted a Rule 11 motion and improperly submitted your motion papers--which you now have no intention of filing--before that court. As a result, we have spent many hours of wasted costs analyzing your claims, conducting legal research, and preparing a response to your frivolous allegations. And for what? On the basis that a single three year old jurisdictional allegation has somehow vexatiously multiplied proceedings and costs? An allegation about which at best you have only speculated as to our potential use? Your filing of a Section 1927 motion will be Exhibit A in our cross motion under the same section.

Regards,

Gonzalo

-----Original Message-----
From: Kleinick, Jodi [mailto:JodiKleinick@paulhastings.com]
Sent: Friday, October 31, 2014 1:23 PM
To: Zeballos, Gonzalo S.; Burke, John; Sheehan, David J.
Cc: Sher, Barry; Wetzler, Mor
Subject: RE: Picard v. Ceretti, et al.

Gonzalo: As Barry explained to David before your email, we will not be moving under Rule 11 based on your representation that you made an interpretation of the records at the time of the complaint that was done in good faith, albeit incorrectly and erroneously. Our motion will be based on 1927 and the Court's inherent power based on your

1

firm's refusal to withdraw or correct, and your continued reliance on, an allegation that is known to be false.  We are at a loss as to how this course of action can be squared with the applicable ethical and other rules of attorney conduct.

Best, Jodi

_____

Jodi Kleinick | Partner
Paul Hastings LLP | 75 East 55th Street, New York, NY 10022 | Direct: +1.212.318.6751 | Main: +1.212.318.6000 | Fax: +1.212.230.7691 | jodikleinick@paulhastings.com | www.paulhastings.com

-----Original Message-----
From: Zeballos, Gonzalo S. [mailto:gzeballos@bakerlaw.com]
Sent: Friday, October 31, 2014 12:20 PM
To: Kleinick, Jodi; Burke, John; Sheehan, David J.
Cc: Sher, Barry; Wetzler, Mor
Subject: RE: Picard v. Ceretti, et al.

Jodi,

As we have stated in our earlier letters, the allegation you are complaining about is three years old.  It is a jurisdictional allegation and on any reasonable interpretation was made in good faith.  It could not have been made, as you suggest, to address a court decision that did not exist at the time the allegation was made, or to "keep [your] clients in the case" on the basis of legal arguments arising from that decision.  Your position is just not credible.  You are clearly trying to improve your client's position on extraterritoriality.  The case law is crystal clear that this is an inappropriate use of Rule 11 that is itself sanctionable.  As far as the extraterritoriality briefing is concerned, we are complying with a procedure requested by all defendants affected by the extraterritoriality decision, including your clients, and on the timetable for advancing arguments on both sides of the extraterritoriality issue as agreed upon by all parties.  We have not yet presented our extraterritoriality argument--therefore, presently there is no position of the Trustee to contest.  On that ground as well, your position is baseless.  The appropriate time to assert any extraterritoriality arguments is under the court-ordered procedure.

Regards,

Gonzalo

-----Original Message-----
From: Kleinick, Jodi [mailto:JodiKleinick@paulhastings.com]
Sent: Thursday, October 30, 2014 4:34 PM
To: Zeballos, Gonzalo S.; Burke, John; Sheehan, David J.
Cc: Sher, Barry; Wetzler, Mor
Subject: Picard v. Ceretti, et al.

Gentlemen: Please see the attached. Jodi

---

Jodi Kleinick | Partner
Paul Hastings LLP | 75 East 55th Street, New York, NY 10022 | Direct: +1.212.318.6751 | Main: +1.212.318.6000 | Fax: +1.212.230.7691 | jodikleinick@paulhastings.com | www.paulhastings.com

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
This message is sent by a law firm and may contain information that is privileged or confidential. If you received this transmission in error, please notify the sender by reply e-mail and delete the message and any attachments.

For additional information, please visit our website at www.paulhastings.com

---

This email is intended only for the use of the party to which it is addressed and may contain information that is privileged, confidential, or protected by law. If you are not the intended recipient you are hereby notified that any dissemination, copying or distribution of this email or its contents is strictly prohibited.
If you have received this message in error, please notify us immediately by replying to the message and deleting it from your computer.

Internet communications are not assured to be secure or clear of inaccuracies as information could be intercepted, corrupted, lost, destroyed, arrive late or incomplete, or contain viruses. Therefore, we do not accept responsibility for any errors or omissions that are present in this email, or any attachment, that have arisen as a result of e-mail transmission.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
This message is sent by a law firm and may contain information that is privileged or confidential. If you received this transmission in error, please notify the sender by reply e-mail and delete the message and any attachments.

For additional information, please visit our website at www.paulhastings.com

---

This email is intended only for the use of the party to which it is addressed and may contain information that is privileged, confidential, or protected by law. If you are not the intended recipient you are hereby notified that any dissemination, copying or distribution of this email or its contents is strictly prohibited.

If you have received this message in error, please notify us immediately by replying to the message and deleting it from your computer.

Internet communications are not assured to be secure or clear of inaccuracies as information could be intercepted, corrupted, lost, destroyed, arrive late or incomplete, or contain viruses. Therefore, we do not accept responsibility for any errors or omissions that are present in this email, or any attachment, that have arisen as a result of e-mail transmission.


*********************************************************************************

This message is sent by a law firm and may contain information that is privileged or confidential. If you received this transmission in error, please notify the sender by reply e-mail and delete the message and any attachments.


For additional information, please visit our website at www.paulhastings.com

## Usitalo, Michelle R.

| | |
|---|---|
| **From:** | Kleinick, Jodi <JodiKleinick@paulhastings.com> |
| **Sent:** | Monday, November 03, 2014 1:13 PM |
| **To:** | Zeballos, Gonzalo S.; Burke, John; Sheehan, David J.; Ponto, Geraldine |
| **Cc:** | Sher, Barry; Wetzler, Mor |
| **Subject:** | RE: Picard v. Ceretti, et al. |

Gonzalo:  Please advise us by 3:00 if you agree to November 19 as the return date for our motion for sanctions.  As we indicated, we intend to file the motion today.  Jodi

-----Original Message-----
From: Kleinick, Jodi
Sent: Friday, October 31, 2014 6:06 PM
To: 'Zeballos, Gonzalo S.'; Burke, John; Sheehan, David J.; Ponto, Geraldine
Cc: Sher, Barry; Wetzler, Mor
Subject: RE: Picard v. Ceretti, et al.

Gonzalo -  We do not intend to engage in further debate with you.  Your email itself demonstrates the need to file our motion.

We were advised by the court that the 19th is an available return date for the hearing on the motion we plan to file pursuant to Section 1927 and the Court's inherent powers.   Please confirm your consent to that return date for our motion.  If we cannot agree, we will request that the court provide a date.

Jodi

-----Original Message-----
From: Zeballos, Gonzalo S. [mailto:gzeballos@bakerlaw.com]
Sent: Friday, October 31, 2014 5:13 PM
To: Kleinick, Jodi; Burke, John; Sheehan, David J.; Ponto, Geraldine
Cc: Sher, Barry; Wetzler, Mor
Subject: RE: Picard v. Ceretti, et al.

Jodi,

One thing in this whole process is clear.  If anyone is guilty of a Section 1927 violation it is your firm.  We have, for several months now, engaged in lengthy correspondence on this issue.  You unilaterally scheduled a sanctions hearing before the court.  You drafted a Rule 11 motion and improperly submitted your motion papers--which you now have no intention of filing--before that court.  As a result, we have spent many hours of wasted costs analyzing your claims, conducting  legal research, and preparing a response to your frivolous allegations.  And for what?  On the basis that a single three year old jurisdictional allegation has somehow vexatiously multiplied proceedings and costs?  An allegation about which at best you have only speculated as to our potential use?  Your filing of a Section 1927 motion will be Exhibit A in our cross motion under the same section.

Regards,

Gonzalo

1

-----Original Message-----
From: Kleinick, Jodi [mailto:JodiKleinick@paulhastings.com]
Sent: Friday, October 31, 2014 1:23 PM
To: Zeballos, Gonzalo S.; Burke, John; Sheehan, David J.
Cc: Sher, Barry; Wetzler, Mor
Subject: RE: Picard v. Ceretti, et al.

Gonzalo: As Barry explained to David before your email, we will not be moving under Rule 11 based on your
representation that you made an interpretation of the records at the time of the complaint that was done in good faith,
albeit incorrectly and erroneously.   Our motion will be based on 1927 and the Court's inherent power based on your
firm's refusal to withdraw or correct, and your continued reliance on, an allegation that is known to be false.  We are at
a loss as to how this course of action can be squared with the applicable ethical and other rules of attorney conduct.

Best, Jodi



Jodi Kleinick | Partner
Paul Hastings LLP | 75 East 55th Street, New York, NY 10022 | Direct: +1.212.318.6751 | Main: +1.212.318.6000 | Fax:
+1.212.230.7691 | jodikleinick@paulhastings.com | www.paulhastings.com



-----Original Message-----
From: Zeballos, Gonzalo S. [mailto:gzeballos@bakerlaw.com]
Sent: Friday, October 31, 2014 12:20 PM
To: Kleinick, Jodi; Burke, John; Sheehan, David J.
Cc: Sher, Barry; Wetzler, Mor
Subject: RE: Picard v. Ceretti, et al.

Jodi,

As we have stated in our earlier letters, the allegation you are complaining about is three years old.  It is a jurisdictional
allegation and on any reasonable interpretation was made in good faith.  It could not have been made, as you suggest,
to address a court decision that did not exist at the time the allegation was made, or to "keep [your] clients in the case"
on the basis of legal arguments arising from that decision.  Your position is just not credible.  You are clearly trying to
improve your client's position on extraterritoriality.  The case law is crystal clear that this is an inappropriate use of Rule
11 that is itself sanctionable.  As far as the extraterritoriality briefing is concerned, we are complying with a procedure
requested by all defendants affected by the extraterritoriality decision, including your clients, and on the timetable for
advancing arguments on both sides of the extraterritoriality issue as agreed upon by all parties.  We have not yet
presented our extraterritoriality argument--therefore, presently there is no position of the Trustee to contest.  On that
ground as well, your position is baseless.  The appropriate time to assert any extraterritoriality arguments is under the
court-ordered procedure.

Regards,

Gonzalo

-----Original Message-----
From: Kleinick, Jodi [mailto:JodiKleinick@paulhastings.com]
Sent: Thursday, October 30, 2014 4:34 PM
To: Zeballos, Gonzalo S.; Burke, John; Sheehan, David J.
Cc: Sher, Barry; Wetzler, Mor
Subject: Picard v. Ceretti, et al.

Gentlemen:  Please see the attached.  Jodi

---

Jodi Kleinick | Partner
Paul Hastings LLP | 75 East 55th Street, New York, NY 10022 | Direct: +1.212.318.6751 | Main: +1.212.318.6000 | Fax:
+1.212.230.7691 | jodikleinick@paulhastings.com | www.paulhastings.com

********************************************************************************
This message is sent by a law firm and may contain information that is privileged or confidential. If you received this
transmission in error, please notify the sender by reply e-mail and delete the message and any attachments.


For additional information, please visit our website at www.paulhastings.com

---

This email is intended only for the use of the party to which it is addressed and may contain information that is
privileged, confidential, or protected by law. If you are not the intended recipient you are hereby notified that any
dissemination, copying or distribution of this email or its contents is strictly prohibited.
If you have received this message in error, please notify us immediately by replying to the message and deleting it from
your computer.

Internet communications are not assured to be secure or clear of inaccuracies as information could be intercepted,
corrupted, lost, destroyed, arrive late or incomplete, or contain viruses. Therefore, we do not accept responsibility for
any errors or omissions that are present in this email, or any attachment, that have arisen as a result of e-mail
transmission.


********************************************************************************
This message is sent by a law firm and may contain information that is privileged or confidential. If you received this
transmission in error, please notify the sender by reply e-mail and delete the message and any attachments.

For additional information, please visit our website at www.paulhastings.com

This email is intended only for the use of the party to which it is addressed and may contain information that is privileged, confidential, or protected by law. If you are not the intended recipient you are hereby notified that any dissemination, copying or distribution of this email or its contents is strictly prohibited.
If you have received this message in error, please notify us immediately by replying to the message and deleting it from your computer.

Internet communications are not assured to be secure or clear of inaccuracies as information could be intercepted, corrupted, lost, destroyed, arrive late or incomplete, or contain viruses. Therefore, we do not accept responsibility for any errors or omissions that are present in this email, or any attachment, that have arisen as a result of e-mail transmission.

*********************************************************************************
This message is sent by a law firm and may contain information that is privileged or confidential. If you received this transmission in error, please notify the sender by reply e-mail and delete the message and any attachments.

For additional information, please visit our website at www.paulhastings.com

## Usitalo, Michelle R.

| | |
|---|---|
| **From:** | Kleinick, Jodi <JodiKleinick@paulhastings.com> |
| **Sent:** | Monday, November 03, 2014 8:55 PM |
| **To:** | Zeballos, Gonzalo S.; Burke, John; Sheehan, David J.; Ponto, Geraldine |
| **Cc:** | Sher, Barry; Wetzler, Mor |
| **Subject:** | Re: Picard v. Ceretti, et al. |

Gonzalo: we will not be filing today and will reconfirm the return date with you before we file. Jodi

Original Message
From: Zeballos, Gonzalo S.
Sent: Monday, November 3, 2014 2:28 PM
To: Kleinick, Jodi; Burke, John; Sheehan, David J.; Ponto, Geraldine
Cc: Sher, Barry; Wetzler, Mor
Subject: RE: Picard v. Ceretti, et al.


Jodi,

November 19 is fine with us.

-Gonzalo

-----Original Message-----
From: Kleinick, Jodi [mailto:JodiKleinick@paulhastings.com]
Sent: Monday, November 03, 2014 1:13 PM
To: Zeballos, Gonzalo S.; Burke, John; Sheehan, David J.; Ponto, Geraldine
Cc: Sher, Barry; Wetzler, Mor
Subject: RE: Picard v. Ceretti, et al.

Gonzalo:  Please advise us by 3:00 if you agree to November 19 as the return date for our motion for sanctions.  As we indicated, we intend to file the motion today.  Jodi

-----Original Message-----
From: Kleinick, Jodi
Sent: Friday, October 31, 2014 6:06 PM
To: 'Zeballos, Gonzalo S.'; Burke, John; Sheehan, David J.; Ponto, Geraldine
Cc: Sher, Barry; Wetzler, Mor
Subject: RE: Picard v. Ceretti, et al.

Gonzalo - We do not intend to engage in further debate with you.  Your email itself demonstrates the need to file our motion.

We were advised by the court that the 19th is an available return date for the hearing on the motion we plan to file pursuant to Section 1927 and the Court's inherent powers.  Please confirm your consent to that return date for our motion.  If we cannot agree, we will request that the court provide a date.

Jodi

-----Original Message-----
From: Zeballos, Gonzalo S. [mailto:gzeballos@bakerlaw.com]
Sent: Friday, October 31, 2014 5:13 PM
To: Kleinick, Jodi; Burke, John; Sheehan, David J.; Ponto, Geraldine
Cc: Sher, Barry; Wetzler, Mor
Subject: RE: Picard v. Ceretti, et al.

Jodi,

One thing in this whole process is clear.  If anyone is guilty of a Section 1927 violation it is your firm.  We have, for
several months now, engaged in lengthy correspondence on this issue.  You unilaterally scheduled a sanctions hearing
before the court.  You drafted a Rule 11 motion and improperly submitted your motion papers--which you now have no
intention of filing--before that court.  As a result, we have spent many hours of wasted costs analyzing your claims,
conducting legal research, and preparing a response to your frivolous allegations.  And for what?  On the basis that a
single three year old jurisdictional allegation has somehow vexatiously multiplied proceedings and costs?  An allegation
about which at best you have only speculated as to our potential use?  Your filing of a Section 1927 motion will be
Exhibit A in our cross motion under the same section.

Regards,

Gonzalo

-----Original Message-----
From: Kleinick, Jodi [mailto:JodiKleinick@paulhastings.com]
Sent: Friday, October 31, 2014 1:23 PM
To: Zeballos, Gonzalo S.; Burke, John; Sheehan, David J.
Cc: Sher, Barry; Wetzler, Mor
Subject: RE: Picard v. Ceretti, et al.

Gonzalo:  As Barry explained to David before your email, we will not be moving under Rule 11 based on your
representation that you made an interpretation of the records at the time of the complaint that was done in good faith,
albeit incorrectly and erroneously.  Our motion will be based on 1927 and the Court's inherent power based on your
firm's refusal to withdraw or correct, and your continued reliance on, an allegation that is known to be false.  We are at
a loss as to how this course of action can be squared with the applicable ethical and other rules of attorney conduct.

Best, Jodi


Jodi Kleinick | Partner
Paul Hastings LLP | 75 East 55th Street, New York, NY 10022 | Direct: +1.212.318.6751 | Main: +1.212.318.6000 | Fax:
+1.212.230.7691 | jodikleinick@paulhastings.com | www.paulhastings.com

-----Original Message-----
From: Zeballos, Gonzalo S. [mailto:gzeballos@bakerlaw.com]
Sent: Friday, October 31, 2014 12:20 PM
To: Kleinick, Jodi; Burke, John; Sheehan, David J.
Cc: Sher, Barry; Wetzler, Mor
Subject: RE: Picard v. Ceretti, et al.

Jodi,

As we have stated in our earlier letters, the allegation you are complaining about is three years old.  It is a jurisdictional allegation and on any reasonable interpretation was made in good faith.  It could not have been made, as you suggest, to address a court decision that did not exist at the time the allegation was made, or to "keep [your] clients in the case" on the basis of legal arguments arising from that decision.  Your position is just not credible.  You are clearly trying to improve your client's position on extraterritoriality.  The case law is crystal clear that this is an inappropriate use of Rule 11 that is itself sanctionable.  As far as the extraterritoriality briefing is concerned, we are complying with a procedure requested by all defendants affected by the extraterritoriality decision, including your clients, and on the timetable for advancing arguments on both sides of the extraterritoriality issue as agreed upon by all parties.  We have not yet presented our extraterritoriality argument--therefore, presently there is no position of the Trustee to contest.  On that ground as well, your position is baseless.  The appropriate time to assert any extraterritoriality arguments is under the court-ordered procedure.

Regards,

Gonzalo

-----Original Message-----
From: Kleinick, Jodi [mailto:JodiKleinick@paulhastings.com]
Sent: Thursday, October 30, 2014 4:34 PM
To: Zeballos, Gonzalo S.; Burke, John; Sheehan, David J.
Cc: Sher, Barry; Wetzler, Mor
Subject: Picard v. Ceretti, et al.

Gentlemen:  Please see the attached.  Jodi

---

Jodi Kleinick | Partner
Paul Hastings LLP | 75 East 55th Street, New York, NY 10022 | Direct: +1.212.318.6751 | Main: +1.212.318.6000 | Fax: +1.212.230.7691 | jodikleinick@paulhastings.com | www.paulhastings.com

**********************************************************************************
This message is sent by a law firm and may contain information that is privileged or confidential. If you received this transmission in error, please notify the sender by reply e-mail and delete the message and any attachments.

For additional information, please visit our website at www.paulhastings.com

_____

This email is intended only for the use of the party to which it is addressed and may contain information that is privileged, confidential, or protected by law. If you are not the intended recipient you are hereby notified that any dissemination, copying or distribution of this email or its contents is strictly prohibited.
If you have received this message in error, please notify us immediately by replying to the message and deleting it from your computer.

Internet communications are not assured to be secure or clear of inaccuracies as information could be intercepted, corrupted, lost, destroyed, arrive late or incomplete, or contain viruses. Therefore, we do not accept responsibility for any errors or omissions that are present in this email, or any attachment, that have arisen as a result of e-mail transmission.

*************************************************************************************
This message is sent by a law firm and may contain information that is privileged or confidential. If you received this transmission in error, please notify the sender by reply e-mail and delete the message and any attachments.

For additional information, please visit our website at www.paulhastings.com

_____

This email is intended only for the use of the party to which it is addressed and may contain information that is privileged, confidential, or protected by law. If you are not the intended recipient you are hereby notified that any dissemination, copying or distribution of this email or its contents is strictly prohibited.
If you have received this message in error, please notify us immediately by replying to the message and deleting it from your computer.

Internet communications are not assured to be secure or clear of inaccuracies as information could be intercepted, corrupted, lost, destroyed, arrive late or incomplete, or contain viruses. Therefore, we do not accept responsibility for any errors or omissions that are present in this email, or any attachment, that have arisen as a result of e-mail transmission.

*************************************************************************************
This message is sent by a law firm and may contain information that is privileged or confidential. If you received this transmission in error, please notify the sender by reply e-mail and delete the message and any attachments.

For additional information, please visit our website at www.paulhastings.com

_____

This email is intended only for the use of the party to which it is addressed and may contain information that is privileged, confidential, or protected by law. If you are not the intended recipient you are hereby notified that any dissemination, copying or distribution of this email or its contents is strictly prohibited. If you have received this message in error, please notify us immediately by replying to the message and deleting it from your computer.

Internet communications are not assured to be secure or clear of inaccuracies as information could be intercepted, corrupted, lost, destroyed, arrive late or incomplete, or contain viruses. Therefore, we do not accept responsibility for any errors or omissions that are present in this email, or any attachment, that have arisen as a result of e-mail transmission.

*************************************************************************************
This message is sent by a law firm and may contain information that is privileged or confidential. If you received this transmission in error, please notify the sender by reply e-mail and delete the message and any attachments.


For additional information, please visit our website at www.paulhastings.com