**Baker & Hostetler LLP**                Hearing Date: December 17, 2014 at 10 a.m.
45 Rockefeller Plaza                    Objection Deadline: December 10, 2014
New York, New York  10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Oren J. Warshavsky
Geoffrey A. North
Carrie Longstaff
Tatiana Markel
Dominic Gentile

*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of the estate of Bernard L. Madoff Investment Securities LLC and the estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>     Plaintiff-Applicant,<br><br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>     Defendant. | Adv. Pro. No. 08-01789 (SMB)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>     Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>     Plaintiff,<br><br>v.<br><br>HSBC BANK PLC, et al.,<br><br>     Defendants. | Adv. Pro. No. 09-01364 (SMB) |

**MOTION FOR ENTRY OF ORDER PURSUANT TO SECTION 105(a)
OF THE BANKRUPTCY CODE AND RULES 2002 AND 9019 OF THE
FEDERAL RULES OF BANKRUPTCY PROCEDURE APPROVING
A SETTLEMENT AGREEMENT BY AND BETWEEN
THE TRUSTEE AND SENATOR FUND SPC**

TO:   THE HONORABLE STUART M. BERNSTEIN
      UNITED STATES BANKRUPTCY JUDGE:

Irving H. Picard (the "Trustee"), as trustee for the liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa-*lll* ("SIPA")[1] and the substantively consolidated estate of Bernard L. Madoff ("Madoff," and together with BLMIS, the "Debtors"), by and through his undersigned counsel, submits this motion (the "Motion") seeking entry of an order (the "Approval Order"), pursuant to section 105(a) of the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq*. (the "Bankruptcy Code"), and Rules 2002 and 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), approving a settlement, the terms and conditions of which are set forth in an agreement (the "Agreement")[2] by and between the Trustee and Senator Fund SPC ("Senator"). In support of the Motion, the Trustee respectfully represents as follows:

**PRELIMINARY STATEMENT**

The Agreement represents a good faith, complete settlement of all disputes between the Trustee and Senator and the customer claim Senator submitted in connection with BLMIS Account No. 1FR128. The settlement will benefit the customer property fund by

---

[1] Further citations to SIPA will omit "15 U.S.C." and refer only to the relevant sections of SIPA.

[2] The form of Agreement is attached hereto as Exhibit "A."

2

approximately $95,000,000, and even accounting for a claim under Bankruptcy Code section 502(h) will increase the distribution to BLMIS customers with allowed claims by 0.295%. The Trustee therefore respectfully requests that the Court approve this settlement.

## BACKGROUND

1. On December 11, 2008 (the "Filing Date"),[3] the Securities and Exchange Commission (the "Commission") filed a complaint in the United States District Court for the Southern District of New York (the "District Court") against the Debtors (Case No. 08 CV 10791). In the complaint, the Commission alleged that the Debtors engaged in fraud through the investment advisor activities of BLMIS.

2. On December 15, 2008, pursuant to section 78eee(a)(4)(A) of SIPA, the Commission consented to a combination of its own action with an application of the Securities Investor Protection Corporation ("SIPC"). Thereafter, pursuant to section 78eee(a)(3) of SIPA, SIPC filed an application in the District Court alleging, *inter alia*, that BLMIS was not able to meet its obligations to securities customers as they came due and, accordingly, its customers needed the protection afforded by SIPA.

3. On that date, the District Court entered the Protective Decree, to which BLMIS consented, which, in pertinent part:

    (i)    appointed the Trustee for the liquidation of the business of BLMIS pursuant to section 78eee(b)(3) of SIPA;

    (ii)    appointed Baker & Hostetler LLP as counsel to the Trustee pursuant to section 78eee(b)(3) of SIPA; and

    (iii)    removed the case to this Court pursuant to section 78eee(b)(4) of SIPA.

---

[3] In this case, the Filing Date is the date on which the Commission commenced its suit against BLMIS, December 11, 2008, and a receiver was appointed for BLMIS. *See* section 78*lll*(7)(B) of SIPA.

4.  On April 13, 2009, an involuntary bankruptcy petition was filed against Madoff. On June 9, 2009, this Court entered an order substantively consolidating Madoff's Chapter 7 estate with the BLMIS SIPA proceeding.

## THE TRUSTEE'S CLAIMS AGAINST SENATOR

5.  Senator was a Cayman Islands investment fund invested exclusively with BLMIS.

6.  On or about September 6, 2006, BLMIS Account No. 1FR128 was opened in the name "HSBC Securities Services (Luxembourg) SA Spec Cust Acct For Senator Fund SPC (the "Account") on behalf of Senator. Over the life of the Account, Senator withdrew approximately $95,000,000 from the Account (the "Life-to-Date Transfers"). The Life-to-Date Transfers are solely withdrawals of principal.

7.  On December 5, 2010, the Trustee filed an amended complaint in this adversary proceeding (the "Amended Complaint") against Senator, among others, seeking to (a) avoid, preserve, and recover the Transfers under sections 547, 548, 550 and 551 of the Bankruptcy Code and section 78fff-2(c)(3) of SIPA; (b) recover subsequent transfers under section 550(a) of the Bankruptcy Code and section 78fff-2(c)(3) of SIPA; (c) disallow Senator's customer claim against the BLMIS estate under section 502(d) of the Bankruptcy Code; and (d) equitably subordinate Senator's Customer Claim against the BLMIS estate under section 510(c) of the Bankruptcy Code (collectively, the "Avoidance Claims").

8.  On May 27, 2011, Senator filed an Answer to the Amended Complaint, and asserted cross-claims against various HSBC entities, including HSBC Securities Services (Luxembourg), S.A. ("HSSL"), which served as the custodian and administrator for Senator, alleging (a) fraud; (b) fraudulent concealment; (c) negligent misrepresentation; (d) breach of fiduciary duty; (e) breach of contract; (f) gross negligence; (g) negligence; (h) unjust

4

enrichment; and (i) various breaches of Luxembourg statutory law, including violations of the Undertaking for Collective Investments in Transferable Securities ("UCITS") (collectively, the "Cross-claims"). The Adversary Proceeding is pending in this Court.[4]

9.  Senator will be filing additional claims against HSSL in Luxembourg for, among other things, HSSL's liability arising out of, or relating to, its role as Senator's custodian and administrator ("Senator's Luxembourg Claims").

## SENATOR'S CUSTOMER CLAIM

10. On February 2, 2009, Senator timely filed customer claim number 001504 (the "Customer Claim") with the Trustee, asserting losses based on account number 1FR128, as reflected on Senator's November 30, 2008 BLMIS customer account statement. On March 16, 2009, Senator supplemented its claim with a chart containing a calculation of Senator's net equity.

## SETTLEMENT DISCUSSIONS AND MEDIATION

11. Since 2011, the Parties have, on multiple occasions, engaged in good faith discussions aimed at resolving the Trustee's Avoidance Claims and the amount of Senator's Customer Claim. These discussions proved unsuccessful, in part, because the Trustee's investigation of Senator's principals and shareholders was ongoing, and because the District Court issued opinions that affected the pleading standards for the Trustee's Avoidance Claims.

12. On April 14, 2014, on Senator's motion, the Court directed the Parties to engage in mediation. Once the Parties had agreed upon mediation protocols and selected a

---

[4] Terms not otherwise defined shall have the meaning ascribed to them in the Agreement.

5

mediator (the "Mediator"), the Parties actively engaged in mediation, including exchanging mediation statements and supplemental materials, and participating in approximately seven formal in-person mediation sessions, and many more informal discussions with the Parties and/or the Mediator.  Through the mediation process, the Parties reached a compromise, and in light of the delay, expense, and uncertainties associated with litigation, have decided to settle the Adversary Proceeding.

## OVERVIEW OF THE AGREEMENT

13.     The principal terms and conditions of the Agreement are generally as follows (as stated above, the Agreement is attached as Exhibit "A" and should be reviewed for a complete account of its terms):[5]

- Senator shall pay the Trustee 100% of the Life-to-Date Transfers.

- Senator shall have an allowed customer claim in the SIPA Proceeding in the amount of $238,753,482 and shall be entitled to the full benefit of a SIPC customer advance under section 78fff-3(a) of SIPA.  The Allowed Claim is equal to 88.6% of Senator's net equity of $162,249,980 ($143,753,482), plus an increase of $95,000,000 under section 502(h) of the Bankruptcy Code.

- At Closing, Senator shall pay or cause to be paid to the Trustee, for the benefit of the customer property fund, $95,000,000 in full and final satisfaction of the Trustee's Avoidance Claims, as follows: (i)

---

[5]  Terms not otherwise defined shall have the meaning ascribed in the Agreement.  In the event of any inconsistency between the summary of terms provided in this section and the terms of the Agreement, the Agreement shall prevail.

6

$500,000 from the SIPC advance; and (ii) $94,500,000 from the catch-up distribution owed to Senator based on its Allowed Claim.[6]

- As part of Senator's consideration for this settlement, Senator agrees to share with the Trustee 50% of the proceeds from any judgment it obtains through (i) Senator's Cross-claims; (ii) Senator's Luxembourg Claims; and (iii) any other claims that Senator brings against HSSL, HSBC Bank plc, or a related entity which relate to, or arise from, the same facts and circumstances that give rise to Senator's Cross-claims and Senator's Luxembourg Claims.

- At Closing, the Trustee shall pay Senator $15,467,466, consisting of the balance of the catch-up distribution owed to Senator under its Allowed Claim.

- The Trustee will release, acquit, and absolutely discharge Senator, on the specific terms set forth in the Agreement.

- Senator will release, acquit, and absolutely discharge the Trustee and all his agents and BLMIS and its consolidated estate, on the specific terms set forth in the Agreement.

---

[6] As of the date of the Agreement, the Bankruptcy Court has approved four *pro rata* interim distributions to BLMIS customers with allowed customer claims of 4.602%, 33.556%, 4.721%, and 3.180%, respectively (46.059% in total). Accordingly, in order to catch-up Senator's distribution to that of other customers with allowed claims, at the Closing, the Trustee will pay Senator 46.059% of its allowed claim, or $109,967,466. The amount that Senator owes the Trustee on account of the Life-to-Date Transfers ($95,000,000) will be deducted from the catch-up payment and the SIPC Advance.

7

- The Parties shall submit to the Bankruptcy Court a stipulation requesting dismissal of the Adversary Proceeding as against Senator, on the specific terms set forth in the Agreement.

### RELIEF REQUESTED

14. By this Motion, the Trustee respectfully requests that the Court enter an order substantially in the form of the proposed Order attached as Exhibit "B" approving the Agreement.

### LEGAL BASIS

15. Bankruptcy Rule 9019(a) provides, in pertinent part, that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Courts have held that in order to approve a settlement or compromise under Bankruptcy Rule 9019(a), a bankruptcy court should find that the compromise proposed is fair and equitable, reasonable, and in the best interests of a debtor's estate. *In re Ionosphere Clubs, Inc.*, 156 BR 414, 426 (S.D.N.Y. 1993), aff'd, 17 F.3d 600 (2d Cir. 1994) (citing *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968)).

16. The Second Circuit has stated that a bankruptcy court, in determining whether to approve a compromise, should not decide the numerous questions of law and fact raised by the compromise, but rather should "canvass the issues and see whether the settlement 'fall[s] below the lowest point in the range of reasonableness.'" *Liu v. Silverman (In re Liu)*, 1998 U.S. App. LEXIS 31698, at *3 (2d Cir. Dec. 18, 1998) (quoting *In re W.T. Grant Co.*, 699 F.2d 599, 608 (2d Cir. 1983)); *see also Masonic Hall & Asylum Fund v. Official Comm. of Unsecured Creditors (In re Refco, Inc.)*, 2006 U.S. Dist. LEXIS 85691, at *2122 (S.D.N.Y. Nov. 16, 2006); *In re Ionosphere Clubs*, 156 B.R. at 426. "[T]he court

need not conduct a 'mini-trial' to determine the merits of the underlying litigation." *In re Purified Down Prods. Corp.*, 150 B.R. 519, 522 (S.D.N.Y. 1993).

17. In deciding whether a particular compromise falls within the "range of reasonableness," courts consider the following factors:

    (i)    the probability of success in the litigation;

    (ii)    the difficulties associated with collection;

    (iii)    the complexity of the litigation, and the attendant expense, inconvenience, and delay; and

    (iv)    the paramount interests of the creditors (or in this case, customers).

*In re Refco, Inc.*, 2006 U.S. Dist. LEXIS 85691 at *22; *Nellis v. Shugrue*, 165 B.R. 115, 122 (S.D.N.Y. 1994) (citing *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 292 (2d Cir. 1992), *cert. denied*, 506 U.S. 1088 (1993)).

18. The bankruptcy court may credit and consider the opinions of the trustee or debtor and their counsel in determining whether a settlement is fair and equitable. *See In re Purified Down Prods.*, 150 B.R. at 522; *In re Drexel Burnham Lambert Grp.*, 134 B.R. at 505. Even though the Court has discretion to approve settlements and must independently evaluate the reasonableness of the settlement, *In re Rosenberg*, 419 B.R. 532, 536 (Bankr. E.D.N.Y. 2009), the business judgment of the trustee and his counsel should be considered in determining whether a settlement is fair and equitable. *In re Chemtura Corp.*, 439 B.R. at 594. The competency and experience of counsel supporting the settlement may also be considered. *Nellis*, 165 B.R. at 122. Finally, the court should be mindful of the principle that "the law favors compromise." *In re Drexel Burnham Lambert Grp.*, 134 B.R. at 505 (quoting *In re Blair*, 538 F.2d 849, 851 (9th Cir. 1976)).

19. The Agreement furthers the interest of BLMIS customers by (a) adding

$95,000,000 to the fund of customer property, thereby increasing it by 0.295%; (b) recovering 100% of the transfers from BLMIS to Senator during the life of the Account; (c) reducing the amount of the Allowed Claim to 88.6% of Senator's net equity, resulting in a benefit to the BLMIS estate of $18,496,498.  Furthermore, the Agreement resolves all claims among the parties and avoids the cost and delay of what could otherwise be lengthy and contentious litigation. (Affidavit of the Trustee in Support of the Motion (the "Picard Affidavit"). (A true and accurate copy of the Picard Affidavit is attached as Exhibit "C".).

## CONCLUSION

20. In sum, the Trustee submits that the Agreement should be approved to avoid lengthy, burdensome, and expensive litigation and because it represents a fair and reasonable compromise of the Avoidance Claims and the Customer Claim.  Since the Agreement is well within the "range of reasonableness" and confers a benefit on the estate, the Trustee respectfully requests that the Court enter an Order approving the Agreement.

## NOTICE

21. In accordance with Bankruptcy Rules 2002 and 9019, notice of this Motion has been given to (i) SIPC; (ii) the Commission; (iii) the Internal Revenue Service; (iv) the United States Attorney for the Southern District of New York; and (v) Todd E. Duffy, DuffyAmedeo LLP, 275 Seventh Avenue, 7th Floor, New York, New York 10001.  Notice of this motion will also be provided via email and/or U.S. Mail to all persons who have filed notices of appearance in the BLMIS proceeding and to all defendants in this adversary proceeding pursuant to the Order Establishing Notice Procedures and Limiting Notice, ECF No. 4560.  The Trustee submits that no other or further notice is required.

WHEREFORE, the Trustee respectfully requests entry of an Order substantially in the form of Exhibit "B" granting the relief requested in the Motion.

| | |
|---|---|
| Dated: New York, New York<br>November 18, 2014 | Respectfully submitted,<br><br>BAKER & HOSTETLER LLP<br><br>By:    *s/ Oren J. Warshavsky*<br>        David J. Sheehan<br>        Email: dsheehan@bakerlaw.com<br>        Oren J. Warshavsky<br>        Email: owarshavsky@bakerlaw.com<br>        Geoffrey A. North<br>        Email: gnorth@bakerlaw.com<br>        Carrie Longstaff<br>        Email: clongstaff@bakerlaw.com<br>        Tatiana Markel<br>        Email:  tmarkel@bakerlaw.com<br>        Dominic Gentile<br>        Email: dgentile@bakerlaw.com<br><br>45 Rockefeller Plaza<br>New York, New York 10111<br>Telephone: (212) 589-4200<br>Facsimile: (212) 589-4201<br><br>*Attorneys for Irving H. Picard,*<br>*Trustee for the Substantively Consolidated*<br>*SIPA Liquidation of the estate of Bernard L.*<br>*Madoff Investment Securities LLC and the*<br>*estate of Bernard L. Madoff* |