Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
Irving H. Picard
Email: ipicard@bakerlaw.com
David J. Sheehan
Email: dsheehan@bakerlaw.com
Seanna R. Brown
Email: sbrown@bakerlaw.com
Heather R. Wlodek
Email: hwlodek@bakerlaw.com

Hearing Date: December 18, 2014
Hearing Time: 10:00 a.m. (EST)
Objection Deadline: December 11, 2014
Time: 4:00 p.m. (EST)

*Attorneys for Irving H. Picard, Trustee for the
Substantively Consolidated SIPA Liquidation of
Bernard L. Madoff Investment Securities LLC
and Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. No. 08-01789 (SMB) |
| Plaintiff, | SIPA Liquidation |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |

**SIXTEENTH APPLICATION OF TRUSTEE AND BAKER & HOSTETLER LLP FOR
ALLOWANCE OF INTERIM COMPENSATION FOR SERVICES RENDERED AND
REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES INCURRED FROM
APRIL 1, 2014 THROUGH JULY 31, 2014**

# TABLE OF CONTENTS

**Page**

I.    PRELIMINARY STATEMENT ....................................................................1

II.    BACKGROUND .........................................................................................6

    A.    THE SIPA LIQUIDATION..........................................................6

    B.    THE TRUSTEE, COUNSEL AND CONSULTANTS .............................6

    C.    PRIOR COMPENSATION ORDERS........................................7

III.    SUMMARY OF SERVICES ........................................................................8

    A.    HARDSHIP PROGRAM ..............................................................8

    B.    THE RECOVERY AND RETURN OF CUSTOMER PROPERTY ..........9

        i.    Recoveries Accomplished During The Compensation Period....................9

IV.    DETAILED DESCRIPTION OF SERVICES................................................9

    A.    MATTER 01 .................................................................10

        i.    Task Code 01: Trustee Investigation ........................................10

        ii.    Task Code 02: Bankruptcy Court Litigation...............................11

        iii.    Task Code 03: Feeder Funds.....................................................12

        iv.    Task Code 04: Asset Research and Sale ....................................12

        v.    Task Code 05: Internal Meetings with Staff ..............................13

        vi.    Task Code 07: Billing and Trustee Reports...............................13

        vii.    Task Code 08: Case Administration ..........................................14

        viii.    Task Code 09: Banks ................................................................14

        ix.    Task Code 10: Court Appearances ............................................15

        x.    Task Code 11: Press Inquiries and Responses...........................15

        xi.    Task Code 12: Document Review ............................................15

        xii.    Task Code 13: Depositions and Document Productions by the Trustee....15

        xiii.    Task Code 14: International........................................................16

# TABLE OF CONTENTS
(continued)

**Page**

    xiv.    Task Code 15: Charities ................................................................16

    xv.    Task Code 19: Non-Bankruptcy Litigation ...............................17

    xvi.    Task Code 20: Governmental Agencies ....................................17

    xvii.    Task Code 21: Allocation ...........................................................17

B.    MATTER 03 – CHAIS ...............................................................20

C.    MATTER 04 – MERKIN ...........................................................20

D.    MATTER 05 – CUSTOMER CLAIMS .....................................22

    i.    Customer Claims .......................................................................22

    ii.    General Creditor Claims ...........................................................22

    iii.    The Trustee Has Kept Customers Informed Of The Status Of The Claims Process ...................................................................23

E.    MATTER 06 – VIZCAYA .........................................................24

F.    MATTER 07 – MADOFF FAMILY ..........................................25

G.    MATTER 09 – FAIRFIELD GREENWICH ..............................29

H.    MATTER 11 – COHMAD SECURITIES CORPORATION ..................33

I.    MATTER 13 – KINGATE .........................................................33

J.    MATTER 18 – THYBO .............................................................36

K.    MATTER 21 – AVOIDANCE ACTION LITIGATION .........................36

L.    MATTER 27 – JP MORGAN CHASE .......................................41

M.    MATTER 28 – WESTPORT ......................................................43

N.    MATTER 29 – RYE/TREMONT ...............................................43

O.    MATTER 30 – HSBC .................................................................45

P.    MATTER 32 – UBS/LIF ............................................................46

Q.    MATTER 33 – NOMURA INTERNATIONAL PLC .............................48

# TABLE OF CONTENTS
(continued)

**Page**

R.          MATTER 34 – CITIBANK ....................................................................49

S.          MATTER 35 – NATIXIS ......................................................................51

T.          MATTER 36 – MERRILL LYNCH ......................................................52

U.          MATTER 37 – ABN AMRO ................................................................52

V.          MATTER 38 – BANCO BILBAO .........................................................53

W.         MATTER 39 – FORTIS ........................................................................54

X.          MATTER 40 – MEDICI .......................................................................55

Y.          MATTER 42 – EQUITY TRADING ....................................................56

Z.          MATTER 43 – DEFENDER .................................................................57

AA.        MATTER 45 – LEVEY ........................................................................58

BB.        MATTER 46 – GLANTZ ......................................................................59

CC.        MATTER 47 – BONVENTRE ..............................................................60

DD.        MATTER 49 – GREENBERGER .........................................................60

EE.        MATTER 52 – DONALD FRIEDMAN ...............................................61

FF.         MATTER 53 – MAGNIFY ...................................................................62

GG.        MATTER 54 – MENDELOW ...............................................................64

HH.        MATTER 58 – PJ ADMINISTRATORS ..............................................65

II.          MATTER 59 – STANLEY SHAPIRO ..................................................65

JJ.          MATTER 60 – AVELLINO & BIENES ...............................................66

KK.        MATTER 62 – SUBSEQUENT TRANSFERS .....................................67

LL.         MATTER 63 – CITRUS INVESTMENT HOLDINGS, LTD. .................68

MM.       MATTER 65 – LEGACY ......................................................................68

NN.        MATTER 66 – LIEBERBAUM .............................................................69

OO.        MATTER 71 – SQUARE ONE ..............................................................69

**TABLE OF CONTENTS**
(continued)

**Page**

PP.        MATTER 72 – PLAZA ...............................................................................70

QQ.        MATTER 73 – BNP PARIBAS ..................................................................71

V.    COMPENSATION REQUESTED.....................................................................72

VI.    RELEASE OF THE HOLDBACK......................................................................75

VII.    THE REQUEST FOR INTERIM COMPENSATION SHOULD BE GRANTED...........76

VIII.    CONCLUSION................................................................................................78

TO THE HONORABLE STUART M. BERNSTEIN,
UNITED STATES BANKRUPTCY JUDGE:

Baker & Hostetler LLP ("B&H"), as counsel to Irving H. Picard, Esq., trustee (the

"Trustee") for the substantively consolidated liquidation proceeding of Bernard L. Madoff

Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act ("SIPA"), 15

U.S.C. § 78aaa *et seq.*,[1] and Bernard L. Madoff ("Madoff"), individually (collectively, the

"Debtor"), respectfully submits this sixteenth application (the "Application") on behalf of the

Trustee and itself for an order pursuant to § 78eee(b)(5) of SIPA, §§ 330 and 331 of title 11 of

the United States Code (the "Bankruptcy Code"), Rule 2016(a) of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules"), and the Order Pursuant to § 78eee(b)(5) of

SIPA, sections 105, 330 and 331 of the Bankruptcy Code, Bankruptcy Rule 2016(a), and Local

Bankruptcy Rule 2016-1 Establishing Procedures Governing Interim Monthly Compensation of

Trustee and Baker & Hostetler LLP, dated February 25, 2009 (ECF No. 126), as amended on

December 17, 2009 and June 1, 2011 (ECF Nos. 1078, 4125) (collectively, the "Second

Amended Compensation Order"), allowing and awarding (i) interim compensation for services

performed by the Trustee and B&H for the period commencing April 1, 2014 through and

including July 31, 2014 (the "Compensation Period"), (ii) reimbursement of the Trustee's and

B&H's actual and necessary expenses incurred during the Compensation Period, and (iii) release

of $12,899,430.66, a portion of the amount which has not been paid in connection with prior

applications, and in support thereof, respectfully represents as follows:

## I.    **PRELIMINARY STATEMENT**

1.    The work completed by the Trustee and B&H, as counsel to the Trustee, during

the Compensation Period yielded significant results for BLMIS customers and the liquidation.

---

[1] References hereinafter to provisions of SIPA shall omit "15 U.S.C."

Through pre-litigation and other settlements, which were approved by the Bankruptcy Court and/or the District Court, the Trustee has successfully recovered, or reached agreements to recover, approximately $9.838 billion as of July 31, 2014—more than 56% of the $17.548 billion of principal lost in the Ponzi scheme by those who filed claims—for the benefit of all customers of BLMIS with an allowed claim.

2.      On October 5, 2011, the Trustee, with this Court's approval, distributed $311.854 million, or 4.602% of each BLMIS customer's allowed claim, unless the claim had been fully satisfied (the "First Interim Distribution").  Subsequent to October 5, 2011 and through the end of the Compensation Period, an additional $205.145 million was distributed as catch-up payments, bringing the total First Interim Distribution amount to $516.998 million through the end of the Compensation Period.

3.      On September 19, 2012, the Trustee, with this Court's approval, distributed $2.479 billion, or 33.556% of each BLMIS customer's allowed claim, unless the claim had been fully satisfied (the "Second Interim Distribution").  Subsequent to September 19, 2012 and through the end of the Compensation Period, an additional $1.272 billion was distributed as catch-up payments, bringing the total Second Interim Distribution amount to $3.752 billion through the end of the Compensation Period.

4.      On March 29, 2013, the Trustee, with this Court's approval, distributed approximately $506.227 million, or 4.721% of each BLMIS customer's allowed claim, unless the claim had been fully satisfied (the "Third Interim Distribution").  Subsequent to March 29, 2013 and through the end of the Compensation Period, an additional $17.626 million was distributed as catch-up payments, bringing the total Third Interim Distribution amount to $523.853 million through the end of the Compensation Period.

5.      On May 5, 2014, the Trustee, with this Court's approval, distributed approximately $351.632 million, or 3.180% of each BLMIS customer's allowed claim, unless the claim had been fully satisfied (the "Fourth Interim Distribution").  Subsequent to May 5, 2014 and through the end of the Compensation Period, an additional $465,243.54 was distributed as catch-up payments, bringing the total Fourth Interim Distribution amount to $352.097 million through the end of the Compensation Period.  When combined with the approximately $516.998 million First Interim Distribution, the $3.752 billion Second Interim Distribution, the $523.853 million Third Interim Distribution and the approximately $813.747 million of advances committed by the Securities Investor Protection Corporation ("SIPC"), the Trustee had distributed approximately $5.958 billion to BLMIS customers through the end of the Compensation Period, or 46.059% of each BLMIS customer's allowed claim.  This represents a significant milestone in this litigation, with 1,129 BLMIS accounts fully satisfied through the end of the Compensation Period.  The 1,129 fully satisfied accounts represent more than 51% of accounts with allowed claims.[2]

6.      No administration costs, including the compensation of the Trustee and his counsel, will be paid out of any recoveries obtained by the Trustee for the benefit of BLMIS customers.  Because the percentage commission schedule for trustees found in § 326(a) of the Bankruptcy Code is not applicable in a SIPA liquidation, see § 78eee(b)(5)(C) of SIPA, no applications filed by the Trustee have or will ever include a fee request based on recoveries made by the Trustee for the benefit of BLMIS customers.  Rather, all fees, expenses, and administrative costs incurred by the Trustee and his counsel including, but not limited to, B&H; various international special counsel retained by the Trustee (collectively referred to herein as

---

[2] The Trustee expects to be in a position shortly to move for a fifth allocation and interim distribution.

"International Counsel"), including Taylor Wessing LLP ("Taylor Wessing"), Browne Jacobson

LLP ("Brown Jacobson"), Triay Stagnetto Neish Barristers & Solicitors ("Triay Stagnetto"),

Williams Barristers & Attorneys ("Williams Barristers"); various special counsel to the Trustee

(collectively referred to herein as "Counsel"), including Windels Marx Lane & Mittendorf, LLP

("Windels Marx"), Young Conaway Stargatt & Taylor, LLP ("Young Conaway"), Kelley,

Wolter & Scott, P.A. ("Kelley Wolter"); and consultants, are paid out of administrative advances

made by SIPC.  As Judge Lifland affirmed: "Again, the emphasis is that these fees . . . are not

coming from any of the victims, and they're not coming from the estate."  Fifth Appl. Hr'g Tr.

32:15-17, Dec. 14, 2010.

7.      As the Trustee's and his counsels' fees and expenses are chargeable to the general

estate and not to the fund of customer property (the "Customer Fund"), the payment of the same

has absolutely no impact on the Trustee's current and future recoveries that have been and will

be allocated to the Customer Fund for pro rata distribution to BLMIS customers whose claims

have been allowed by the Trustee.

8.      In a liquidation proceeding such as this, where the general estate is insufficient to

pay trustee and counsel compensation, SIPC plays a specific role with compensation and is

required to advance funds to pay the costs of administration.  See SIPA §§ 78eee(b)(5)(c) and

78fff-3(b)(2).  SIPC has carefully reviewed this Application, as it has all other compensation

applications, and has closely analyzed the time records and services rendered.  Each month,

SIPC, the Trustee, and B&H engage in extensive discussions regarding billings, and the Trustee

and B&H make reductions where appropriate and finalize the amounts that appear herein.  Thus,

the requested fees and expenses in this Application include (i) fees at the Trustee's and B&H's

hourly billable rates to which a public interest discount of 10% has been applied, and (ii) actual, necessary, and reasonable expenses incurred within the Compensation Period.

9.      During the hearing on the Eighth Interim Fee Application, Judge Lifland acknowledged the worldwide efforts of the Trustee and his counsel and approved the application:

> Well, having heard the description and being well aware of the worldwide activities started off by Bernie Madoff and the sequelae is left for everybody else to follow all the trails and the trails do lead almost everywhere in the world. It is clear under the circumstances that a Herculean effort to follow those trails has been involved both with counsel here in the United States and counsel overseas.

Eighth Appl. Hr'g Tr. 16, Mar. 15, 2012, ECF No. 4736.

10.     No single document can capture all of the tasks engaged in by the Trustee and B&H since their appointment on December 15, 2008. Hundreds of thousands of hours have been expended in support of the Trustee's efforts to liquidate the estate, determine customer claims, and advance the interests of all claimants by litigating and settling cases for the return of customer property ("Customer Property"). Moreover, the Trustee has vigorously defended the estate with respect to a number of litigations filed against it and against his protection of Customer Property. The following discussion and materials attached to this Application cover the major categories of services for which allowance of compensation is sought.

11.     As Judge Lifland recognized, "[w]ith respect to the kinds of services that have been rendered here, the amounts requested, this is by any stretch of the imagination one of the largest, most complex sets of litigation that have come down the pike. It's measured both in quality and quantity in the thousands with deadlines that have come . . . and it is a big stretch for any law firm or any organization to deal with." Sixth Fee Appl. Hr'g Tr. 45:23-46:6, June 1, 2011.

## II.    BACKGROUND

### A.    THE SIPA LIQUIDATION

12.    The Trustee and B&H's prior interim fee applications, each of which is fully incorporated herein,[3] have detailed the circumstances surrounding the filing of this case and the events that have taken place during prior phases of this proceeding.

### B.    THE TRUSTEE, COUNSEL AND CONSULTANTS

13.    The Trustee and B&H's prior interim fee applications have detailed the description of the Trustee's background and experience.

14.    In rendering professional services to the Trustee, B&H has utilized a legal team comprised of professionals with extensive experience in areas such as bankruptcy, securities, tax, corporate, and litigation, permitting the Trustee to conduct this liquidation efficiently.

15.    The Ponzi scheme perpetrated by Madoff through BLMIS was vast in scope, long in duration, and broad in its geographical reach.  The Trustee, with the assistance of his counsel, has undertaken a comprehensive investigation of BLMIS, Madoff, and hundreds of related individuals and entities.  To this end, the Trustee has engaged not only the services of counsel, but also those of forensic accountants and legal experts, including, but not limited to, AlixPartners LLP ("AlixPartners"), the Trustee's consultant and claims agent; FTI Consulting

---

[3] Prior fee applications cover the periods from December 11, 2008 to May 31, 2009 (the "First Interim Fee Application") (ECF No. 320, 321); June 1, 2009 to September 30, 2009 (the "Second Interim Fee Application") (ECF No. 998, 1010); October 1, 2009 to January 31, 2010 (the "Third Interim Fee Application") (ECF No. 2188, 2189); February 1, 2010 to May 31, 2010 (the "Fourth Interim Fee Application") (ECF No. 2883); June 1, 2010 to September 30, 2010 (the "Fifth Interim Fee Application") (ECF No. 3207); October 1, 2010 to January 31, 2011 (the "Sixth Interim Fee Application") (ECF No. 4022); February 1, 2011 to May 31, 2011 (the "Seventh Interim Fee Application") (ECF No. 4376); June 1, 2011 to September 30, 2011 (the "Eighth Interim Fee Application") (ECF No. 4676); October 1, 2012 to January 31, 2012 (the "Ninth Interim Fee Application") ("ECF No. 4936); February 1, 2012 to June 30, 2012 (the "Tenth Interim Fee Application") (ECF No. 5097); July 1, 2012 to November 30, 2012 (the "Eleventh Interim Fee Application") (ECF No. 5333); December 1, 2012 to April 30, 2013 (the "Twelfth Interim Fee Application") (ECF No. 5490); and May 1, 2013 through July 31, 2013 (the "Thirteenth Interim Fee Application") (ECF No. 5566); August 1, 2013 through November 30, 2013 (the "Fourteenth Interim Fee Application") (ECF No. 5980); and December 1, 2013 through March 31, 2014 (the "Fifteenth Interim Fee Application") (ECF No. 7470).

("FTI"); and several investigative and industry consultants (collectively referred to herein as the "Consultants").

### C.    PRIOR COMPENSATION ORDERS

16.    The Trustee and B&H filed applications for allowance of interim compensation for professional services rendered and reimbursement of actual and necessary expenses incurred in prior periods, and this Court approved those applications:

| Applications | Orders Entered[4] |
|---|---|
| First Application (ECF Nos. 320, 321) | August 6, 2009 (ECF No. 363); March 7, 2013 (ECF No. 5258) |
| Second Application (ECF Nos. 998, 1010) | December 17, 2009 (ECF No. 1078) |
| Third Application (ECF Nos. 2188, 2189) | May 6, 2010 (ECF No. 2251) |
| Fourth Application (ECF No. 2883) | September 14, 2010 (ECF No. 2981) |
| Fifth Application (ECF No. 3207) | December 14, 2010 (ECF No. 3474); March 7, 2013 (ECF No. 5258) |
| Sixth Application (ECF No. 4022) | June 1, 2011 (ECF No. 4125); March 7, 2013 (ECF No. 5258) |
| Seventh Application (ECF No. 4376) | October 19, 2011 (ECF No. 4471); March 7, 2013 (ECF No. 5258) |
| Eighth Application (ECF No. 4676) | January 2, 2013 (ECF No. 5181);[5] March 7, 2013 (ECF No. 5258) |
| Ninth Application (ECF No. 4936) | August 30, 2012 (ECF No. 5012); March 7, 2013 (ECF No. 5258) |
| Tenth Application (ECF No. 5097) | December 19, 2012 (ECF No. 5161); March 7, 2013 (ECF No. 5258) |
| Eleventh Application (ECF No. 5333) | June 5, 2013 (ECF No. 5383) |
| Twelfth Application (ECF No. 5490) | October 17, 2013 (ECF No. 5547) |
| Thirteenth Application (ECF No. 5566) | December 17, 2013 (ECF No. 5605) |
| Fourteenth Application (ECF No. 5980) | April 18, 2014 (ECF No. 6343) |
| Fifteenth Application (ECF No. 7470) | August 28, 2014 (ECF No. 7825) |

---

[4] On March 7, 2013, this Court entered an Errata Order (ECF No. 5258) to correct errors in the First, Fifth, Sixth, Seventh, Eighth, Ninth, and Tenth orders approving prior applications for allowance of interim compensation that were filed by the Trustee, B&H, and certain of the Counsel and International Counsel retained by the Trustee. The Errata Order did not affect the amount of compensation payable to the Trustee, B&H, or any of the Trustee's Counsel and International Counsel other than, with respect to SCA Creque, an additional $0.60 became due and owing to that firm.

[5] This order amends and supersedes this Court's March 19, 2012 order (ECF No. 4735), approving the Eighth Interim Fee Application.

### III.    SUMMARY OF SERVICES

17.    A SIPA proceeding contemplates, *inter alia*, the processing of customer claims, the orderly liquidation of the business of a broker-dealer, and the return of Customer Property to the failed brokerage's customers.   Accordingly, the Trustee's and B&H's services, which are summarized in greater detail below, are comprised of specific tasks that are critical to accomplishing those objectives.

### A.    HARDSHIP PROGRAM

18.    The Trustee and B&H implemented a Hardship Program in an effort to accelerate SIPA protection for BLMIS victims suffering hardship.  The first phase of this program is more fully described in prior interim fee applications.  Based on the information received, the Trustee did not sue approximately 250 individuals.

19.    The Trustee expanded the Hardship Program into a second phase at the time he commenced avoidance actions to recover Customer Property.  The Trustee has not pursued, or has terminated, avoidance actions against BLMIS account holders suffering proven hardship.  In November 2010, the Trustee announced that, to forego an avoidance action, the account holder must submit financial and other pertinent information.  Through this program, the Trustee has worked with a substantial number of applicants to confirm their hardship status and dismissed defendants in avoidance actions.

20.    As of July 31, 2014, the Trustee had received 512 applications from avoidance action defendants relating to 326 adversary proceedings.   After reviewing the facts and circumstances presented in each application and, in many cases, requesting additional verifying information, the Trustee dismissed 203 Hardship Program applicants-defendants from avoidance actions.  As of July 31, 2014, there were 74 applications still under review and 235 that were resolved because they were either withdrawn by the applicant, deemed withdrawn for failure of

the applicant to pursue the application, denied for lack of hardship or referred for consideration of settlement. The Trustee has also extended the time for applicants to answer or otherwise respond to avoidance action complaints while their Hardship Program applications are pending.

21. The Trustee established a Hardship Program Hotline with a telephone number and electronic mail address. A large number of potential applicants have been assisted by the Trustee through the use of this hotline.

### B.    THE RECOVERY AND RETURN OF CUSTOMER PROPERTY

#### i.    Recoveries Accomplished During The Compensation Period

22. Without the need for protracted litigation, during the Compensation Period, the Trustee settled twenty-four cases for $33,885,267.33. As of July 31, 2014, the Trustee had successfully recovered approximately $9.838 billion.

23. The Trustee entered into settlements subsequent to the Compensation Period that will bring an additional $665.995 million into the Customer Fund.

24. The Trustee is also engaged in ongoing settlement negotiations with a number of parties that when completed, could result in additional recoveries for the benefit of customers without the delay and expense of protracted litigation.

25. Through the end of the Compensation Period, the Trustee recovered $552,633,587.16 as a result of preferences and other settlements that were made pursuant to agreements subject to the net equity dispute. The United States Supreme Court (the "Supreme Court") declined to review the net equity dispute.

### IV.    DETAILED DESCRIPTION OF SERVICES

26. Given the unprecedented fraud perpetrated by Madoff, the issues presented by this liquidation are complex, discovery is wide-ranging, and the litigation that has ensued is hotly contested. All of this requires an enormous effort by the Trustee and his counsel for the benefit

of the victims.  The following is a more detailed synopsis of the significant services rendered by the Trustee and B&H during the Compensation Period, organized according to internal B&H matter numbers and task codes.

27.   Matter Number 01 is the general matter number used for tasks by the Trustee and B&H.  Task numbers for Matter Number 01 have been assigned for specific categories of work to permit a more detailed analysis of the fees incurred.

28.   Matter Numbers 03-73 (with the exception of Matter Number 05, which relates to customer claims) relate to litigation brought by the Trustee and B&H against various individuals, feeder funds, and entities.[6]  In each of these matters, the Trustee and B&H attorneys perform several functions, including the following tasks: conduct legal research, draft internal memoranda, engage in internal meetings regarding investigation and litigation strategy, and engage in discussions with counsel for defendant(s).  Rather than repeat these tasks, the description of each matter will be limited to matter-specific tasks and case activity that occurred during the Compensation Period.

A.   **MATTER 01**

29.   This matter categorizes time spent by the Trustee and B&H and encompasses the below enumerated tasks.

i.   **Task Code 01: Trustee Investigation**

30.   This category relates to time spent with respect to the investigation into BLMIS, Madoff, and various assets.

31.   The Trustee is seeking the return of billions of dollars to the estate of BLMIS for distribution to customers in accordance with SIPA.  In carrying out his investigation into the

---

[6] Reserved and closed matter numbers will not be listed in this Application.  Matter numbers reserved or closed during prior compensation periods can be found in the respective interim fee applications.

many layers of complex financial transactions engaged in by Madoff and those who worked for him, the Trustee has issued hundreds of subpoenas, analyzed the myriad documentation received, and conducted numerous follow-up activities to enforce the Trustee's rights to the return of Customer Property.

32.     During the Compensation Period, the Trustee and B&H attorneys initiated, participated in, and monitored international proceedings involving BLMIS.  B&H attorneys continued the investigation of banks, feeder funds, auditors, insiders, Madoff's friends and family members, former BLMIS employees, and other Madoff-related parties.

33.     B&H attorneys discussed and conferenced with SIPC, Windels Marx, and International Counsel regarding investigation and litigation strategy, prepared requests for discovery, negotiated other discovery-related issues with adversaries, and organized and reviewed documents received in response to third-party inquiries and subpoenas.

### ii.        Task Code 02: Bankruptcy Court Litigation

34.     This category relates to time spent conducting legal research, drafting, and filing various pleadings and motions in the main bankruptcy proceeding that affect the hundreds of adversary proceedings filed by the Trustee.

35.     During the Compensation Period, B&H attorneys focused on various administrative tasks relating to the pending litigations.  They continued to develop overall case strategies applicable to the pending litigations and researched various legal issues related to those litigations including developments in Ponzi law, fraudulent transfer law, bankruptcy matters, privilege, evidence, and rules regarding experts and expert testimony.  B&H attorneys also researched issues relating to injunctions and filed a reply brief in the *Goldman* matter.  *Picard v. Marshall*, Adv. Pro. No. 14-1840 (Bankr. S.D.N.Y.), ECF No. 32 (May 1, 2014).

11

36.     In particular, the Trustee and B&H attorneys analyzed several opinions issued by the District Court relating to extraterritoriality and the good faith standard under section 548(c) of the Bankruptcy Code.  On April 27, 2014, the District Court issued the Good Faith Standard Opinion and Order.  *See* discussion *infra* Section IV(K).  The Trustee prepared and filed a motion for interlocutory appeal of the Good Faith Standard Opinion and Order, which was denied by the District Court on July 21, 2014.  *In re Madoff Securities*, 12-115 (JSR) (ECF No. 555).  Furthermore, on July 6, 2014, Judge Rakoff issued the Extraterritoriality Opinion and Order.  *See* discussion *infra* Section IV(K).

37.     Following the entry of the Good Faith Standard Opinion and Order and the Extraterritoriality Opinion and Order, the Trustee prepared an omnibus motion for expedited discovery related to the good faith issue and for leave to replead regarding the issues of good faith and extraterritoriality, which affected over 86 adversary proceedings (the "Omnibus Motion").  (ECF No. 7827).

### iii.     Task Code 03: Feeder Funds

38.     This matter categorizes time spent by the Trustee and his counsel pursuing avoidance and recovery actions against entities which maintained accounts at BLMIS and had their own investors.  The Trustee and his counsel continue to identify, investigate, and monitor feeder funds in the United States and abroad and bring actions against such feeder funds for the recovery of Customer Property.  Separate matter numbers have been assigned to individual feeder funds sued by the Trustee.

### iv.     Task Code 04: Asset Research and Sale

39.     This category relates to time spent with respect to the discovery, recovery, and liquidation of various assets for the benefit of the estate.

40.    During the Compensation Period, the Trustee and B&H attorneys conducted due diligence in connection with the liquidation of assets held by Madoff Family, LLC; conducted due diligence in connection with certain interests of Madoff Energy LLC and its affiliates; and continued to value the intellectual property interest in Primex, evaluated corporate governance issues and strategized as to its sale.

41.    In addition, during the Compensation Period, the Trustee completed the sales of certain assets through auctions at Sotheby's and Litchfield County Auctions.

42.    During the Compensation Period, the Trustee continued to recover funds from securities that BLMIS purchased and sold prior to December 11, 2008 in connection with its proprietary trading operations.

### v.    Task Code 05: Internal Meetings with Staff

43.    This category relates to time spent by the Trustee and B&H attorneys in internal meetings regarding the liquidation proceeding, investigation and litigation strategy, as well as training sessions for attorneys and paraprofessionals.  Internal meetings and discussions have ensured the effective use of time spent on this matter and avoided duplicative efforts.

### vi.    Task Code 07: Billing and Trustee Reports

44.    This category relates to time spent by the Trustee, B&H attorneys, and paraprofessionals reviewing the monthly B&H billing statements prior to submitting the statements to SIPC to ensure that time was properly billed, correcting any errors in time entries, writing off certain time and expenses as agreed to by B&H, preparing fee applications, responding to motions for leave to appeal fee orders, preparing Trustee reports, and other related tasks.

### vii.     Task Code 08: Case Administration

45.     This category relates to time spent assisting the efficient administration of the case.

46.     The Trustee filed several motions before this Court that will govern the treatment of and procedures related to the efficient litigation of these actions.  These procedures will ensure compliance with the Bankruptcy Code and SIPA, as well as consistency and transparency.

47.     On October 20, 2011, the Trustee and B&H moved for an Order Establishing Noticing Procedures in order to streamline the procedural aspects of service in the main proceeding and all related adversary proceedings.  (ECF No. 4469).  This Court entered the Order on December 5, 2011.  (ECF No. 4560).

48.     On October 28, 2011, this Court entered an Order Granting Supplemental Authority To Stipulate To Extensions Of Time To Respond And Adjourn Pre-Trial Conferences to March 16, 2012.  (ECF No. 4483).  Thereafter, on January 30, 2012, a supplemental Order was entered granting authority to extend time to respond to the complaint and adjourn the pre-trial conferences through September 14, 2012.  (ECF No. 4483).  Subsequently, on December 11, 2013, a supplemental Order was entered granting authority to extend time to respond to the complaint and adjourn the pre-trial conferences through July 18, 2014.  (ECF No. 5358).

49.     During the Compensation Period, the Trustee identified all bank accounts that received transfers of customer assets and prepared and sent approximately 240 omnibus preservation letters to the relevant banks.  Since mailing out these letters, the Trustee has been in active negotiations with banks regarding the scope of these requests.

### viii.     Task Code 09: Banks

50.     Primarily as a result of international and domestic feeder fund investigations, the Trustee commenced investigations of numerous banks and other financial institutions involved

14

with BLMIS.  Time categorized under this task code relates to the investigation of target banks and the roles played by the banks in the Ponzi scheme, the preparation of letters of inquiry and subpoenas, the review of responses to letters and subpoenas received from such banks and other third parties, and the preparation of pleadings relating to claims that will be brought against such banks.  Separate matter numbers have been assigned to banks sued by the Trustee.

### ix.    Task Code 10: Court Appearances[7]

51.    This category relates to time spent by the Trustee and B&H attorneys making court appearances in this Court, other federal courts within the Second Circuit, and various courts abroad.

### x.    Task Code 11: Press Inquiries and Responses

52.    This category relates to time spent by the Trustee, B&H attorneys, and paraprofessionals in responding to press inquiries, preparing and issuing press releases, and preparing for and holding press conferences relating to BLMIS, Madoff, customer claims, and the recovery of funds.

### xi.    Task Code 12: Document Review

53.    This category relates to time spent by the Trustee and B&H attorneys reviewing documents received from parties and third parties in response to the hundreds of letters and subpoenas issued by the Trustee.

### xii.    Task Code 13: Depositions and Document Productions by the Trustee

54.    This category generally relates to time spent by the Trustee and B&H attorneys conducting discovery that touches upon more than one matter and responding to discovery propounded to the Trustee by various third parties.

---

[7] Many attorneys making court appearances bill their time for appearances to either Task Code 02–Bankruptcy Court Litigation or to the matter number that relates to that specific litigation, rather than to Task Code 10.

### xiii.    Task Code 14: International

55.    The fraud Madoff perpetrated through BLMIS has many international implications involving foreign individuals, feeder funds, and international banking institutions. The Trustee is actively investigating and seeking to recover assets for the BLMIS estate in many different jurisdictions, including Austria, the Bahamas, Bermuda, the British Virgin Islands ("BVI"), Canada, the Cayman Islands, England, France, Gibraltar, Guernsey, Ireland, Israel, Liechtenstein, Luxembourg, Spain, and Switzerland. These investigations utilize a combination of voluntary requests for information and the use of the Trustee's subpoena power.

56.    This category relates to the ongoing investigation, the preparation and service of subpoenas against entities in many jurisdictions, service of process, and communication with International Counsel regarding the utilization of local laws to obtain necessary discovery and pursue recovery of customer property in foreign jurisdictions. The investigation is made challenging by the broad array of bank secrecy statutes and other foreign legislation designed to limit discovery.

57.    In addition, time categorized by this task code relates to the participation in and monitoring of various BLMIS-related third-party actions brought in Europe and the Caribbean, as well as discussions with International Counsel on strategic and jurisprudential matters that involve multiple actions against more than one defendant.

### xiv.    Task Code 15: Charities

58.    This category relates to reviewing financial documents and conducting due diligence of charitable accounts held at BLMIS, corresponding and meeting with the representatives of these charities to obtain further information concerning transfers from their BLMIS accounts and discussing settlement and resolution of issues.

### xv.    Task Code 19: Non-Bankruptcy Litigation

59.    This matter categorizes time spent by the Trustee and B&H attorneys on non-bankruptcy litigation.

### xvi.    Task Code 20: Governmental Agencies

60.    This matter categorizes time spent by the Trustee and B&H attorneys responding to requests for information by the United States Attorney's Office for the Southern District of New York, the Internal Revenue Service, various congressional representatives, and other government agencies.

### xvii.    Task Code 21: Allocation

61.    This matter categorizes time spent by the Trustee and B&H attorneys coordinating the distribution of Customer Property.

62.    The ultimate purpose of marshaling the Customer Fund is to distribute those monies, as SIPA directs, to BLMIS customers with allowed claims.

63.    On May 4, 2011, the Trustee sought entry of an order approving an initial allocation of property to the Customer Fund, and authorizing an interim distribution to customers whose claims have not been fully satisfied because their net equity claims as of the Filing Date exceeded the statutory SIPA protection limit of $500,000 (the "First Allocation Motion"). The First Allocation Motion was unopposed, and on July 12, 2011, this Court entered the Order Approving the Trustee's Initial Allocation of Property to the Fund of Customer Property and Authorizing An Interim Distribution to Customers.  (ECF No. 4217).

64.     From October 5, 2011 through the end of the Compensation Period, the Trustee distributed to BLMIS customers approximately $516.998 million,[8] or 4.602% of each BLMIS customer's allowed claim, unless the claim had been fully satisfied.   The First Interim Distribution was made to 1,312 BLMIS account holders, and 39 payments went to claimants who qualified for hardship status under the Trustee's Hardship Program whose claims had not been previously satisfied.

65.     On July 26, 2012, the Trustee filed a motion for a second allocation and second interim distribution to customers. (ECF No. 4930).   On August 22, 2012, this Court held a hearing and entered an Order Approving the Trustee's Second Allocation of Property to the Fund of Customer Property and Authorizing a Second Interim Distribution to Customers, with a 3% reserve.  (ECF No. 4997).

66.     From September 19, 2012 through the end of the Compensation Period, the Trustee distributed to BLMIS customers approximately $3.752 billion,[9] or 33.556% of each BLMIS customer's allowed claim, unless the claim had been fully satisfied.  The Second Interim Distribution was made to 1,298 BLMIS account holders, and 39 payments went to claimants who qualified for hardship status under the Trustee's Hardship Program whose claims had not been fully satisfied previously.

67.     On February 13, 2013, the Trustee filed a motion for a third allocation and third interim distribution to customers.  (ECF No. 5230).   On March 13, 2013, this Court held a hearing and entered an Order Approving the Trustee's Third Allocation of Property to the Fund

---

[8]Subsequent to the Compensation Period ending on July 31, 2014, an additional $223,057.19 was distributed as catch-up payments, bringing the total First Interim Distribution amount to $517.221 million through November 17, 2014.

[9]Subsequent to the Compensation Period ending on July 31, 2014, an additional $1,500,515.22 was distributed as catch-up payments, bringing the total Second Interim Distribution amount to $3.753 billion through November 17, 2014.

of Customer Property and Authorizing a Third Interim Distribution to Customers, with a 3% reserve. (ECF No. 5271).

68.      From March 29, 2013 through the end of the Compensation Period, the Trustee distributed approximately $523.853 million,[10] or 4.721% of each BLMIS customer's allowed claim, unless the claim had been fully satisfied. The Third Interim Distribution was made to 1,116 BLMIS account holders, and 26 payments went to claimants who qualified for hardship status under the Trustee's Hardship Program whose claims had not been fully satisfied previously.

69.      On March 25, 2014, the Trustee filed a motion for a fourth allocation and fourth interim distribution to customers. (ECF No. 6024). On April 17, 2014, this Court held a hearing and entered an Order Approving the Trustee's Fourth Allocation of Property to the Fund of Customer Property and Authorizing a Fourth Interim Distribution to Customers, with a 3% reserve. (ECF No. 6340).

70.      From May 5, 2014 through the end of the Compensation Period, the Trustee distributed approximately $352.097 million,[11] or 3.180% of each BLMIS customer's allowed claim, unless the claim had been fully satisfied. The Fourth Interim Distribution was made to 1,084 BLMIS account holders, and 25 payments went to claimants who qualified for hardship status under the Trustee's Hardship Program whose claims had not been fully satisfied previously. As a result of the Fourth Interim Distribution, over 51% of the accounts with allowed customer claims have been satisfied.

---

[10]Subsequent to the Compensation Period ending on July 31, 2014, an additional $162,098.93 was distributed as catch-up payments, bringing the total Third Interim Distribution amount to $524.015 million through November 17, 2014.

[11]Subsequent to the Compensation Period ending on July 31, 2014, an additional $109,187.59 was distributed as catch-up payments, bringing the total Fourth Interim Distribution amount to $352.207 million through November 17, 2014.

### B.    MATTER 03 – CHAIS

71.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against the Estate of Stanley Chais, Pamela Chais, and a number of related individuals and entities (collectively, the "Chais Defendants") seeking the return of more than $1.1 billion under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable laws, for preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Chais Defendants.  *Picard v. Estate of Chais, et. al.*, Adv. No. 09-01172 (SMB) (Bankr. S.D.N.Y.).

72.    During the Compensation Period, B&H attorneys continued to participate in mediation discussions pursuant to the mediation ordered by this Court on July 18, 2012 in *Picard v. Chais* and the related action to enforce the automatic stay and enjoin certain state court third party actions brought by investors of Stanley Chais and the California Attorney General.  B&H attorneys also continued their investigation of the Chais Defendants and likely recipients of subsequent transfers from the Chais Defendants' BLMIS accounts.

73.    Certain of the Chais Defendants also filed two motions to withdraw the reference to the District Court on April 2, 2012 (docketed as Nos. 12 Civ. 02371 (JSR) and 12 Civ. 02658 (JSR) (S.D.N.Y.)).  B&H attorneys previously drafted various motions and pleadings related to these motions to withdraw the reference and continue to pursue legal remedies related to certain orders entered by the District Court.

### C.    MATTER 04 – MERKIN

74.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against sophisticated money manager and Madoff associate J. Ezra Merkin ("Merkin"), Gabriel Capital Corporation ("GCC"), and Merkin's funds: Gabriel Capital, L.P. ("Gabriel Capital"), Ariel Fund, Ltd. ("Ariel Fund"), Ascot Partners, L.P. ("Ascot Partners"), and

Ascot Fund Limited ("Ascot Fund", collectively, the "Merkin Defendants"). The Trustee alleges that Merkin knew or was willfully blind to the fact that Madoff's investment advisory business was predicated on fraud and is seeking the return of nearly $560 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences and fraudulent conveyances in connection with certain transfers of property by BLMIS to or for the benefit of the Merkin Defendants. *Picard v. J. Ezra Merkin*, *et al.,* Adv. No. 09-01182 (SMB) (Bankr. S.D.N.Y.).

75.     During the Compensation Period, B&H attorneys continued to advance the litigation of the *Merkin* case. B&H attorneys prepared for oral argument before the Bankruptcy Court in connection with the Merkin Defendants' motions to dismiss the Trustee's third amended complaint. The Bankruptcy Court heard oral argument on the motions to dismiss on April 30, 2014.

76.     Additionally, B&H attorneys analyzed and evaluated documents that were produced by the Merkin Defendants, both in response to the Trustee's document requests and pursuant to the Binding Discovery Arbitrator's March 2013 Order. B&H attorneys drafted and served document requests and interrogatories on Ascot Fund, which led to a meet and confer with Ascot Fund's counsel regarding their document productions.

77.     B&H attorneys also continued their efforts to gather discovery from third parties, including serving Rule 45 subpoenas and receiving and reviewing various document productions in response to Rule 45 subpoenas. B&H attorneys participated in the depositions of two Reichmuth & Co. employees by a court in Switzerland under the Hague Evidence Convention and also identified and prepared for the potential depositions of third party fact witnesses.

Additionally, B&H attorneys continued to analyze the flow of funds from BLMIS to the Merkin Defendants.

### D.    MATTER 05 – CUSTOMER CLAIMS

#### i.    Customer Claims

78.    During the Compensation Period, the Trustee allowed $17,561,800.00 in customer claims, bringing the total amount of allowed claims as of July 31, 2014 to $11,419,425,297.75.    As of July 31, 2014, the Trustee has paid or committed to pay $813,747,373.65 in cash advances from SIPC.  This is the largest commitment of SIPC funds of any SIPA liquidation proceeding and greatly exceeds the total aggregate payments made in all SIPA liquidations to date.

79.    As of July 31, 2014, 151 claims relating to 108 accounts were "deemed determined," meaning that the Trustee has instituted litigation against those account holders and related parties.  The complaints filed by the Trustee in those litigations set forth the express grounds for disallowance of customer claims under § 502(d) of the Bankruptcy Code. Accordingly, such claims will not be allowed until the avoidance actions are resolved by settlement or otherwise and the judgments rendered against the claimants in the avoidance actions are satisfied.

#### ii.    General Creditor Claims

80.    As of July 31, 2014, the Trustee had received 427 timely and 22 untimely filed secured and unsecured priority and non-priority general creditor claims totaling approximately $1.7 billion.  The claimants include vendors, taxing authorities, employees, and customers filing claims on non-customer proof of claim forms.  Of these 449 claims and $1.7 billion, the Trustee has received 94 general creditor claims and 49 broker-dealer claims totaling approximately

$265.0 million.   At this time, the BLMIS general estate has no funds from which to make distributions to priority/non-priority general creditors and/or broker dealers.

### iii.    The Trustee Has Kept Customers Informed Of The Status Of The Claims Process

81.    Throughout the liquidation proceeding, the Trustee has kept customers, interested parties, and the public informed of his efforts by maintaining the Trustee Website (www.madofftrustee.com), a toll-free customer hotline, conducting a Bankruptcy Code § 341(a) meeting of creditors on February 20, 2009, and responding to the multitude of phone calls, e-mails, and letters received on a daily basis, both from claimants and their representatives.

82.    The Trustee Website includes features that allow the Trustee to share information with claimants, their representatives, and the general public with regard to the ongoing recovery efforts and the overall liquidation. In addition to containing the Trustee's court filings, media statements, and weekly information on claims determinations, the Trustee Website includes up-to-date information on the status of Customer Fund recoveries, an "Ask the Trustee" page where questions of interest are answered and updated, a letter from the Chief Counsel to the SIPA Trustee on litigation matters, a detailed distribution page, an FAQs page, and a timeline of important events.  The Trustee Website is monitored and updated on a daily basis.

83.    In addition, the Trustee Website allows claimants to e-mail their questions directly to the Trustee's professionals, who follow up with a return e-mail or telephone call to the claimants.  As of July 31, 2014, the Trustee and his professionals had received and responded to more than 7,100 e-mails from BLMIS customers and their representatives via the Trustee Website.

84.     The toll-free customer hotline provides status updates on claims and responses to claimants' questions and concerns.  As of July 31, 2014, the Trustee, B&H, and the Trustee's professionals had fielded more than 8,100 hotline calls from claimants and their representatives.

85.     The Trustee and his team have endeavored to respond in a timely manner to every customer inquiry and ensure that the customers are as informed as possible about various aspects of the BLMIS proceeding.

86.     The Trustee and B&H attorneys continued the Trustee's Hardship Program, reviewed hardship applications, and communicated regularly with SIPC and AlixPartners regarding the review and determination of hardship applicants, the customer claims review process, the customer claims database, reconciliation of investment advisory accounts (the "BLMIS IA Accounts"), and other matters of interest in determining claims.

87.     The Trustee and B&H attorneys reviewed customer accounts and communicated with customers or their representatives regarding possible settlements related to those accounts.

### E.     MATTER 06 – VIZCAYA

88.     This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Vizcaya Partners Ltd. ("Vizcaya") and Banque Jacob Safra (Gibraltar) Ltd. ("Bank Safra") (collectively, the "Vizcaya Defendants") seeking the return of $150 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Vizcaya Defendants.  *Picard v. Vizcaya Partners Ltd.*, Adv. No. 09-01154 (SMB) (Bankr. S.D.N.Y.).  The Trustee amended the complaint to add as additional defendants Asphalia Fund Ltd. ("Asphalia"), Zeus Partners Ltd. ("Zeus"), and Siam Capital Management ("Siam") seeking the return of an additional $30 million in fraudulent transfers.  Siam has been dismissed from the action.

89.     During the Compensation Period, B&H attorneys continued to analyze all documents in the Trustee's custody for relevance and production in response to the Vizcaya Defendants' document requests.  B&H attorneys proceeded with discovery under the amended case management plan, including the preparation and exchange of interrogatories.  B&H attorneys investigated persons of interest and analyzed data supporting the Trustee's complaint allegations and points of law.

90.     B&H attorneys also collaborated with foreign counsel regarding the Trustee's foreign proceedings in Gibraltar, including applications to the Judicial Committee of the Privy Council for permission to appeal the February 7, 2014 Order of the Court of Appeal of Gibraltar.

## F.      MATTER 07 – MADOFF FAMILY

91.     This matter categorizes time spent by the Trustee and B&H attorneys pursuing numerous avoidance actions against members of the Madoff family.

92.     On October 2, 2009, the Trustee filed a complaint against Peter Madoff, the late Andrew Madoff, the late Mark Madoff, and Shana Madoff (collectively, the "Family Defendants") asserting claims for preferences, fraudulent transfers, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Family Defendants.  *Picard v. Peter B. Madoff*, Adv. No. 09-01503 (SMB) (Bankr. S.D.N.Y.), ECF No. 1.  On March 15, 2010, each of the Family Defendants separately moved this Court to dismiss the Trustee's complaint.  (ECF Nos. 13–19).  On September 22, 2011, this Court denied in part and granted in part the motions to dismiss.  (ECF No. 55).  Defendant Andrew Madoff, individually, and as Executor of the Estate of Mark D. Madoff, filed a motion for leave to seek interlocutory review of this Court's September 22, 2011 decision.  (ECF No. 56).  Following briefing and oral argument, the District Court denied that motion on December 22, 2011.  (ECF No. 74).

93.     In accordance with this Court's September 22, 2011 decision, on November 7, 2011, the Trustee filed an amended complaint against the Family Defendants, identifying additional transfers and seeking the return of over $225 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent transfers, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Family Defendants. *Picard v. Peter B. Madoff*, Adv. No. 09-01503 (SMB) (Bankr. S.D.N.Y.), (ECF No. 64).  Shana Madoff, Peter Madoff, and Andrew Madoff, both on his own behalf and as Executor of the Estate of Mark D. Madoff, each answered the amended complaint on January 17, 2012.  (ECF Nos. 78, 79, 80).

94.     On December 23, 2011, the Trustee filed a motion seeking leave to file a second amended complaint, adding additional claims and defendants to the action against the Family Defendants.  (ECF No. 71).  On April 4, 2012, following briefing and oral argument, this Court issued a written opinion denying in part and granting in part the Trustee's motion. (ECF No. 106).  On May 4, 2012, the Trustee filed a second amended complaint against the Family Defendants and named as additional defendants Mark Madoff's widow, Stephanie Mack, and Andrew Madoff's wife, Deborah Madoff. (ECF No. 113).  The Trustee also named Mark Madoff's ex-wife, Susan Elkin, as a subsequent transferee defendant.  Defendants Andrew Madoff, the Estate of Mark D. Madoff, Shana Madoff, and Susan Elkin answered the second amended complaint on July 2, 2012.  (ECF Nos. 124–126).  Susan Elkin was voluntarily dismissed with prejudice pursuant to stipulation by the parties on March 26, 2014.  (ECF No. 177).

95.     On April 2, 2012, Stephanie Mack and Deborah Madoff moved to withdraw the reference from this Court.  (ECF Nos. 101, 104).  The Trustee subsequently adjourned the time

for Stephanie Mack and Deborah Madoff to respond to the second amended complaint.  (ECF

Nos. 128, 134, 139, 141, 149, 152, 154, 157, 159, 165, 167).  On December 6, 2013, the District

Court ruled that the Trustee was barred from pursuing common law claims against Stephanie

Mack and Deborah Madoff because they do not fall within the insider exception to the *in pari*

*delicto* doctrine, and returned the cases to the Bankruptcy Court.   Deborah Madoff was

voluntarily dismissed with prejudice pursuant to stipulation by the parties on June 27, 2014.

(ECF No. 183).

96.     On June 29, 2012, Peter Madoff pleaded guilty to a two-count indictment and

consented to the entry of a forfeiture order for $143.1 billion.  Under the Preliminary Forfeiture

Order, Peter Madoff and his wife, Marion Madoff, forfeited substantially all of their assets to the

United States of America.  Subsequently, on February 6, 2013, Peter Madoff was dismissed from

this action in connection with the entry of a consent judgment in the amount of $90,390,500.00.

(ECF No. 145).  On February 7, 2013, the Trustee dismissed a separate adversary proceeding

against Marion Madoff through a notice of voluntary dismissal with prejudice.  *Picard v. Marion*

*Madoff*, Adv. No. 10-04310 (SMB) (Bankr. S.D.N.Y.), (ECF No. 17).

97.     In connection with Peter Madoff's plea agreement, his daughter, defendant Shana

Madoff, also forfeited to the United States of America substantially all of her assets that were the

subject of the Trustee's claims against her.  Subsequently, on March 18, 2013, the Trustee

dismissed the case against Shana Madoff with prejudice.  (ECF No. 148).

98.     On July 15, 2014, the Trustee filed a motion seeking leave to file a third amended

complaint, adding additional support for existing claims and eliminating allegations against

defendants that had been dismissed.  (ECF No. 184).   Andrew Madoff, both on his own behalf

and as Executor of the Estate of Mark D. Madoff, opposed the Trustee's motion on August 12,

2014 (the "Opposition").  (ECF No. 191).  By stipulation of the parties and order of this Court, the Trustee has until January 16, 2015 to file a reply to the Opposition, and a hearing on the motion is scheduled before this Court on February 25, 2015.  (ECF No. 196).

99.     The Trustee commenced two adversary proceedings against members of the late Andrew Madoff and the late Mark Madoff's families to recover fraudulent conveyances made by Bernard and Ruth Madoff.  *Picard v. Stephanie S. Mack*, Adv. No. 10-05328 (SMB) (Bankr. S.D.N.Y.); *Picard v. Deborah Madoff*, Adv. No. 10-05332 (SMB) (Bankr. S.D.N.Y.).  Amended complaints were filed in these actions on February 7, 2012.  *Picard v. Mack*, Adv. No. 10-05328, (ECF No. 23); *Picard v. Deborah Madoff*, Adv. No. 10-05332, (ECF No. 13).  All defendants in both actions answered on March 23, 2012.  *Picard v. Mack*, Adv. No. 10-05328, (ECF No. 30); *Picard v. Deborah Madoff*, Adv. No. 10-05332, (ECF No. 20).  On March 26, 2014, the parties filed a stipulation for voluntary dismissal of Susan Elkin, Daniel G. Madoff and K.D.M. with prejudice.  *Picard v. Mack*, Adv. No. 10-05328, (ECF No. 56).  The pre-trial conference for this action in this Court is currently scheduled for November 19, 2014.  *Picard v. Mack*, Adv. No. 10-05328, (ECF No. 61).

100.     Deborah Madoff moved to withdraw the reference from this Court on April 2, 2012.  *Picard v. Deborah Madoff*, Adv. No. 10-05332, (ECF No. 22).  On October 28, 2013, the District Court ordered that the proceeding be returned to the District Court.  *Picard v. Deborah Madoff*, Adv. No. 12-02751, (ECF No. 8).  On June 27, 2014, the parties filed a stipulation for voluntary dismissal of the action with prejudice.  (ECF No. 54).

101.     The Trustee commenced two adversary proceedings against foundations created by and named for Andrew and the late Mark Madoff and their spouses: *Picard v. Mark & Stephanie Madoff Found.*, Adv. No. 10-05325 (SMB) (Bankr. S.D.N.Y.) and *Picard v. Deborah*

28

& *Andrew Madoff Found.*, Adv. No. 10-05330 (SMB) (Bankr. S.D.N.Y.).  The defendants in these cases answered on January 17, 2012, and March 23, 2012, respectively.  *Picard v. Mark & Stephanie Madoff Found.*, Adv. No. 10-05325, (ECF No. 10); *Picard v. Deborah & Andrew Madoff Found.*, Adv. No. 10-05330, (ECF No. 10).  These proceedings were voluntarily dismissed without prejudice by stipulation of the parties and order of this Court on February 4, 2014.  *Picard v. Mark & Stephanie Madoff Found.*, Adv. No. 10-05325, (ECF No. 38); *Picard v. Deborah & Andrew Madoff Found.*, Adv. No. 10-05330, (ECF No. 42).

102.    The Trustee commenced various adversary proceedings against Madoff's relatives beyond his immediate family to recover preferences and fraudulent conveyances.  Currently, the Trustee's cases styled *Picard v. Wiener Family Ltd. P'ship*, Adv. No. 10-04323 (Bankr. S.D.N.Y.), *Picard v. NTC & Co. LLP*, Adv. No. 10-04293 (Bankr. S.D.N.Y.), and *Picard v. Schaum & Wiener Profit Sharing Plan & Trust FBO Martin Schaum*, Adv. No. 10-04329 (Bankr. S.D.N.Y.) remain pending.

## G.    MATTER 09 – FAIRFIELD GREENWICH

103.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance and recovery actions against Fairfield Sentry Ltd. ("Sentry"), Fairfield Sigma Ltd. ("Sigma), Fairfield Lambda Ltd. ("Lambda") (collectively, the "Fairfield Funds"), Greenwich Sentry, L.P. ("Greenwich Sentry"), Greenwich Sentry Partners, L.P. ("Greenwich Sentry Partners", and together with Greenwich Sentry, the "Greenwich Funds"), and other defendants seeking the return of approximately $3.5 billion under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Fairfield Funds and the Greenwich Funds.  *Picard v. Fairfield Sentry Ltd. (In Liquidation)*, Adv. No. 09-01239 (SMB) (Bankr. S.D.N.Y. May 18, 2009).  This matter also

categorizes time spent by the Trustee and B&H attorneys pursuing avoidance and recovery actions, as well as damages claims against other Fairfield Greenwich Group related entities and individuals, including the founding partners and other management officials.

104.    On June 7, 2011, this Court conditionally approved a settlement agreement between the Trustee and the Joint Liquidators for the Fairfield Funds (the "Joint Liquidators"), (ECF No. 95).  On July 13, 2011, this Court entered consent judgments between the Trustee and Lambda in the amount of $52.9 million (ECF No. 108), Sentry in the amount of $3.054 billion (ECF No. 109), and Sigma in the amount of $752.3 million (ECF No. 110).

105.    As part of the Fairfield Funds settlement, Sentry agreed to permanently reduce its net equity claim from approximately $960 million to $230 million.  Additionally, the Joint Liquidators agreed to make a $70 million payment to the Customer Fund.  The Joint Liquidators also agreed to assign to the Trustee all of the Fairfield Funds' claims against the Fairfield Greenwich Group management companies, officers, and partners, and the Trustee retained his own claims against the management defendants.  Further, the Trustee and the Joint Liquidators agreed to share future recoveries in varying amounts, depending on the nature of the claims.

106.    On July 7, 2011, this Court approved a settlement between the Trustee and the Greenwich Funds, wherein this Court entered judgment against Greenwich Sentry in an amount over $206 million and against Greenwich Sentry Partners in an amount over $5.9 million.  *Picard v. Fairfield Sentry*, Adv. No. 09-01239 (SMB) (Bankr. S.D.N.Y.), (ECF No. 107).  In the settlement, the Greenwich Funds agreed to permanently reduce their net equity claim from approximately $143 million to approximately $37 million, for a combined reduction of over $105.9 million.  Additionally, the Greenwich Funds assigned to the Trustee all of their claims

against Fairfield Greenwich Group management and agreed to share with the Trustee any recoveries they receive against service providers.

107.   On April 2, 2012, the remaining defendants in the *Fairfield Sentry* action filed motions to withdraw the reference on a number of issues that later became subject to Common Briefing and hearings before Judge Rakoff of the District Court.  *See* discussion *infra* Section IV(K).  The Trustee briefed and presented argument at the hearings on these issues before the District Court.  As of July 31, 2014, the District Court has issued all of its decisions on issues subject to Common Briefing and remanded the cases to this Court for further findings based on the legal standards set forth in the District Court's decisions.  *See* discussion *infra* Section IV(K).

108.   On June 6, 2012, the Trustee filed additional recovery actions against entities or persons related to Fairfield Greenwich Group employees or partners entitled *Picard v. RD Trust*, Adv. No. 12-01701 (SMB) (Bankr. S.D.N.Y.), *Picard v. Barrenche Inc.*, Adv. No. 12-01702 (SMB) (Bankr. S.D.N.Y.), and *Picard v. Alix Toub*, Adv. No. 12-01703 (SMB) (Bankr. S.D.N.Y.).  The parties in the *Toub* action have entered into a stipulated stay as permitted by this Court. None of the defendants in the three actions have yet responded to the Trustee's complaints.

109.   On November 6, 2012 in the District Court, in a putative class action filed by former Fairfield Funds investors against several Fairfield Greenwich Group partners and management officials, the plaintiffs and the Fairfield Greenwich Group related defendants filed a motion seeking preliminary approval of a settlement.  *Anwar v. Fairfield Greenwich Ltd.*, No. 09 Civ. 118 (VM)(FM) (S.D.N.Y.), ECF No. 997.  On November 29, 2012, the Trustee filed an application seeking an injunction against the implementation of the settlement. *See Picard v. Fairfield Greenwich Ltd.*, Adv. No. 12-02047 (SMB) (Bankr. S.D.N.Y.), ECF No. 2.   On

December 21, 2012, the defendants filed a motion to withdraw the reference to the Bankruptcy

Court. (ECF No. 11). On February 6, 2013, the District Court granted the defendants' motion to

withdraw the reference to the Bankruptcy Court, *Picard v. Fairfield Greenwich Ltd.,* 12 Civ.

9408(VM) (S.D.N.Y.), (ECF No. 30). On March 20, 2013, the District Court denied the

Trustee's application seeking an injunction against the implementation of the *Anwar* settlement.

(ECF No. 59). On April 8, 2013, the Trustee filed a notice of appeal from the District Court's

denial of the Trustee's application for an injunction against the implementation of the *Anwar*

settlement. (ECF No. 61).

110. On February 26, 2013, the Trustee filed a letter requesting a pre-motion

conference on a motion to intervene in the *Anwar* action. (ECF No. 1054). On March 8, 2013,

the District Court deemed the pre-motion conference letter to be a motion to intervene and

denied the Trustee's request. (ECF No. 1071). On April 8, 2013, the Trustee filed a notice of

appeal from the order denying his request to intervene in the *Anwar* action. (ECF. No. 1106).

111. Briefing on both appeals of the *Anwar* decisions was completed on June 7, 2013.

Oral argument on the appeals occurred on October 10, 2013. The parties are awaiting a decision.

112. On January 8, 2014, in the case entitled *In re: Fairfield Sentry Limited*, No. 11

Civ. 5905 (AT) (S.D.N.Y.), the Court granted a motion to withdraw the reference in an appeal in

the Fairfield Sentry Chapter 15 proceedings regarding the Fairfield Sentry Liquidator's ability to

assign claims to the Trustee. On January 28, 2014, the Trustee requested a pre-motion

conference for a motion to intervene in the matter. On January 30, 2014, the District Court

denied the Trustee's request for a pre-motion conference and instead set a briefing schedule for

the filing of the motion to intervene. The Trustee submitted his motion to intervene on February

28, 2014. Morning Mist Holdings and Migual Lomeli filed opposition papers on March 14,

2014. The Trustee filed a reply in support of the motion to intervene on March 21, 2014. On July 31, 2014, the District Court granted the Trustee's motion to intervene and set a briefing schedule on the issue regarding the Fairfield Sentry Liquidator's ability to assign claims to the Trustee.

113.    As of July 31, 2014, the Trustee and the remaining defendants have entered into stipulations extending the response date to the Trustee's complaints.

## H.    MATTER 11 – COHMAD SECURITIES CORPORATION

114.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Cohmad Securities Corporation, its principals, certain employees of Cohmad, and their family members who held BLMIS IA Accounts (collectively, the "Cohmad Defendants") seeking the return of over $245 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent conveyances, disallowance of any claims filed against the estate by the Cohmad Defendants, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Cohmad Defendants. *Picard v. Cohmad Sec. Corp.*, Adv. No. 09-01305 (SMB) (Bankr. S.D.N.Y.). This matter also includes time spent by the Trustee and B&H attorneys pursuing avoidance actions against BLMIS customers who were referred to BLMIS by the Cohmad Defendants and are net winners.

115.    During the Compensation Period, B&H attorneys continued to move forward with discovery and developing the cases at issue.

## I.    MATTER 13 – KINGATE

116.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing avoidance and recovery under SIPA, the Bankruptcy Code, New York Debtor and Creditor Law and other applicable law of approximately $926 million in initial transfers BLMIS made to

Kingate Global Fund, Ltd. ("Kingate Global") and Kingate Euro Fund, Ltd. ("Kingate Euro," together with Kingate Global, the "Kingate Funds") under the proceeding captioned as *Picard v. Federico Ceretti*, Adv. No. 09-01161 (BRL) (Bankr. S.D.N.Y.) (the "Kingate Avoidance Action"). In the Kingate Avoidance Action, the Trustee also seeks the recovery of more than $370 million in purported management fees the Kingate Funds subsequently transferred to Kingate Management Limited ("Kingate Management"), as manager of the Kingate Funds in the proceeding. Those transfers also include more than $297 million that Kingate Management paid out of its management fees as purported dividends to its shareholders.

117. The Kingate Funds are in liquidation proceedings in the BVI and Bermuda under the auspices of court-appointed joint liquidators. There is no public access to or information available regarding the status of the Kingate Funds' liquidation proceedings.

118. Kingate Global and Kingate Euro each filed customer claims. Applying the net equity calculation, the Kingate Funds' aggregate claims seek approximately $800 million from the customer property estate. Those claims are presently disallowed under section 502(d) of the Bankruptcy Code. The final resolution of the Kingate Funds' claim is integral to, and awaits the resolution of, the Kingate Avoidance Action.

119. Kingate Management is also in a liquidation proceeding in Bermuda, which is being administered by the Official Receiver of Bermuda. That proceeding is also closed to public access.

120. On April 22, 2014, with leave of the Bankruptcy Court, the Trustee filed an amended complaint for injunctive relief in the proceeding captioned as *Picard v. Kingate Global Fund, Ltd.*, Adv. No. 12-1920 (SMB) (ECF No. 36), followed by a motion for a preliminary injunction (ECF No. 37) to enjoin the joint liquidators from disposing of any proceeds they

should recover in their action in the Supreme Court of Bermuda (the "Bermuda Action") against defendants common to the Kingate Avoidance Action. The Joint Liquidators then moved to dismiss that complaint under Rule 12(b)(6), made applicable under Federal Rule of Bankruptcy Procedure 7012(b), and opposed the Trustee's motion (ECF Nos. 46-50). Before the Trustee answered that motion, on August 8, 2014, the Second Circuit rendered its opinion in *Picard v. Fairfield Greenwich, et al*, No. 13-1289-bk (L), 13-1392-cv (CON), 13-1785 (2d Cir. Aug. 8, 2014). In light of the Second Circuit's opinion, on August 14, 2014, the Trustee voluntarily dismissed without prejudice the Kingate Injunction Action (ECF No. 56).

121.    B&H attorneys analyzed opinions issued by the District Court relating to the good faith standard under section 548(c) and 550(b)(2) of the Bankruptcy Code and extraterritoriality. On April 27, 2014, the District Court issued the Good Faith Standard Opinion and Order. *See* discussion *infra* Section IV(K). Furthermore, on July 6, 2014, Judge Rakoff issued the Extraterritoriality Opinion and Order. *See* discussion *infra* Section IV(K).

122.    The Trustee's legal team and consultants continued to devote substantial attention to trial preparation in the Kingate Avoidance Action, including all aspects of the discovery phase, such as expert needs, key witnesses, and written discovery requests. The Trustee's legal team includes the advice and counsel of the Trustee's foreign solicitors and barristers in the United Kingdom, Bermuda and the BVI, through their participation telephonically during routine team meetings and, on occasion, face-to-face meetings.

123.    On July 6, 2014, the District Court decided, as a matter of law, section 550(a)(2) of the Bankruptcy Code does not apply extraterritorially to permit the recovery of subsequent transfers made by a foreign transferor to a foreign transferee. Since that decision, the Trustee's legal team has devoted significant time to analyzing all of the factors relied upon by the

decisional authorities the District Court cited in the July 6, 2014 opinion and other authorities addressing extraterritoriality issues.

### J.      MATTER 18 – THYBO

124.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Thybo Asset Management Ltd., Thybo Global Fund Ltd., Thybo Return Fund Ltd., and Thybo Stable Fund Ltd. (collectively, the "Thybo Defendants") seeking the return of approximately $62 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences and fraudulent transfers  in connection with certain transfers of property by BLMIS to or for the benefit of the Thybo Defendants.  On February 10, 2011, the Trustee filed an amended complaint that also objected to Thybo Stable Fund Ltd.'s $217 million customer claim.  *Picard v. Thybo Asset Mgmt. Ltd.*, Adv. No. 09-01365 (SMB) (Bankr. S.D.N.Y. Feb. 10, 2011), (ECF No. 20).

125.    On July 5, 2012, Judge Rakoff issued an order as to the Thybo Defendants' fully briefed motion to withdraw the reference, stating that the Thybo Defendants raised the same issues that the District Court previously arranged for Common Briefing and directing the Thybo Defendants to continue to proceed according to the procedures arranged for Common Briefing. *See* Order*, Picard v. Thybo Asset Mgmt. Ltd.*, No. 11 Civ. 07576 (JSR) (S.D.N.Y. July 5, 2012), (ECF No. 17).  *See* discussion *supra* Section IV(K).

126.    In July 2014, Judge Rakoff issued opinions deciding all issues previously arranged for Common Briefing and, on July 30, 2014, the Thybo Defendants' motion to withdraw the reference was returned to the Bankruptcy Court for further proceedings.

### K.      MATTER 21 – AVOIDANCE ACTION LITIGATION

127.    This matter categorizes time spent litigating the hundreds of avoidance actions filed by the Trustee, coordinating service of process, preparing preservation letters and discovery

requests and reviewing produced documents, communicating formally and informally with counsel for various defendants, reviewing Hardship Program applications, drafting extensions of time to respond to various complaints and adjournments of pre-trial conferences, conducting settlement negotiations and settling with various defendants, engaging in mediation with certain defendants, developing legal strategies and witnesses that will be relevant to all actions, implementing internal processes to track and manage the avoidance actions, and researching various issues relating to and raised in such avoidance actions.

(a)    District Court Proceedings

128.    In April 2012, the District Court instituted a new briefing protocol for pending motions to withdraw the reference, facilitating consolidated briefing on common issues raised in the motions to withdraw ("Common Briefing").    Accordingly, the Trustee, SIPC, and the relevant defendants negotiated agreed orders providing for the partial withdrawal of the reference to address the following discrete legal issues raised in the relevant motions to withdraw.

129.    Upon the completion of consolidated briefing on the selected legal issues, the District Court issued various Common Briefing rulings.  The District Court has issued rulings on all of the Common Briefing issues as follows:

- *Stern v. Marshall Issue*.  See Order, No. 12 MC 115 (JSR) (S.D.N.Y. April 13, 2012), (ECF No. 4); Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.), 490 B.R. 46 (S.D.N.Y. 2013);

- *Antecedent Debt Issue.  See* Order, No. 12 MC 115 (JSR) (S.D.N.Y. May 15, 2012), (ECF No. 107); *In re Madoff Sec.,* 499 B.R. 416 (S.D.N.Y. 2013); *In re Madoff Sec.,* No. 499 B.R. 416 (S.D.N.Y. 2013);

- *Section 546(e) Issue.  See* Order, No. 12 MC 115 (JSR) (S.D.N.Y. May 16, 2012), (ECF No. 119); Order, No. 12 MC 115 (JSR) (S.D.N.Y. Feb. 12, 2013), (ECF No. 439); *In re Madoff Sec.*, No. 12 MC 115 (JSR), 2013 WL 1609154 (S.D.N.Y. April 15, 2013);

- *Section 550(a) Issue.  See* Order, No. 12 MC 115 (JSR) (S.D.N.Y. Aug. 22, 2012), (ECF No. 314); Order, No. 12 MC 115 (JSR) (S.D.N.Y. Dec. 12,

2012); *In re Madoff Sec.,* No. 12 MC 115 (JSR), 501 B.R. 26 (S.D.N.Y. 2013); *In re Madoff Sec.,* No. 12-MC-0115 (JSR), 2014 WL 465360 (S.D.N.Y. Jan. 14, 2014);

- *Standing and SLUSA Issue. See* Order, No. 12 MC 115 (JSR) (S.D.N.Y. May 16, 2012), (ECF No. 114); *In re Madoff Sec.,* 987 F.Supp.2d 311 (S.D.N.Y. 2013);

- *Good Faith Standard Under Either 11 U.S.C. § 548(c) or 11 U.S.C. § 550(b) Issue. See* Order, No. 12 MC 115 (JSR) (S.D.N.Y. June 25, 2012), (ECF No. 197); *In re Madoff Sec.,* No. 12-MC-0115 (JSR), 2014 WL 1651952 (S.D.N.Y. April 27, 2014);

- *Section 502(d) Issue. See* Order, No. 12 MC 115 (JSR) (S.D.N.Y. June 1, 2012), ECF No. 155; Order, No. 12 MC 115 (JSR) (S.D.N.Y. Feb. 12, 2013), (ECF No. 435); *In re Madoff Sec.,* 513 B.R. 437 (S.D.N.Y. 2013); and

- *Extraterritoriality Issue. See* Order, No. 12 MC 115 (JSR) (S.D.N.Y. June 6, 2012), (ECF No. 167); *In re Madoff Sec.,* 513 B.R. 222 (S.D.N.Y. 2014).

130.     During the Compensation Period, B&H attorneys analyzed opinions issued by the District Court relating to extraterritoriality and the good faith standard under section 548(c) of the Bankruptcy Code.

131.     On April 27, 2014, the District Court issued the "Good Faith Standard Opinion and Order," ruling that "in the context of this litigation and with respect to both section 548(c) and section 550(b)(1), "good faith" means that the transferee neither had actual knowledge of the Madoff Securities fraud nor willfully blinded himself to circumstances indicating a high probability of such fraud." With respect to the issue of which party bears the burden of pleading a defendant's good faith or lack thereof, Judge Rakoff further ruled that "a defendant may succeed on a motion to dismiss by showing that the complaint does not plausibly allege that that defendant did not act in good faith." Opinion and Order (ECF No. 524).

132.     On July 6, 2014, Judge Rakoff issued the "Extraterritoriality Opinion and Order," indicating that certain of the Trustee's claims were barred under *Morrison*. It stated that "section 550(a) does not apply extraterritorially to allow for the recovery of subsequent transfers received

abroad by a foreign transferee from a foreign transferor," and directed further proceedings related thereto be returned to the Bankruptcy Court.  Opinion and Order (ECF No. 551), 513 B.R. 222 (S.D.N.Y. 2014).

133.    On July 10, 2014, the District Court issued an order directing counsel to parties with individual issues not addressed by the Court's decisions in the consolidated withdrawals to inform the Court by letter by July 18, 2014.  *See In re Madoff Sec.,* No. 12 MC 00115 (JSR) (S.D.N.Y. July 10, 2014), ECF No. 552. The District Court received several such letters and addressed the issues they raised in separate orders.  On August 4, 2014, the District Court deemed any remaining motions to withdraw the reference to be denied, referred all the adversary proceedings to be returned to the Bankruptcy Court, and directed the closure of all civil cases seeking to withdraw the reference related to the Madoff matter.  *See In re Madoff Sec.,* No. 12 MC 00115 (JSR) (S.D.N.Y. Aug. 4, 2014), ECF No. 557.

(b)    Bankruptcy Court Proceedings

134.    On October 31, 2013, Becker & Poliakoff, LLP filed an omnibus motion to dismiss in 128 avoidance actions.  On January 17, 2014, the Trustee filed his opposition brief, and Becker & Poliakoff, LLP filed a reply brief on February 21, 2014.  Oral arguments were scheduled for March 12, 2014, but were subsequently adjourned.  *See* Order Adjourning Hearing On Becker & Poliakoff LLP Motions to Dismiss *Sine Die, In re Madoff,* Adv. Pro No. 08-01789 (SMB) (Bankr. S.D.N.Y. March 5, 2014), (ECF No. 5771).

135.    In March 2014, the Bankruptcy Court established a briefing schedule for all pending motions to dismiss (the "Motions to Dismiss"), and directed the Trustee to file one omnibus opposition to all pending Motions to Dismiss filed by defendants on or before March 10, 2014.  The Bankruptcy Court further directed all participating defendants to reply on or before March 17, 2014.  *See* Case Management Order Regarding Certain Pending Motions to

Dismiss, *In re Madoff,* Adv. Pro. No. 08-01789 (SMB) (Bankr. S.D.N.Y. Feb. 24, 2014), (ECF No. 5695) ("February 24 Order"). The Bankruptcy Court further provided all defendants with pending Motions to Dismiss with the opportunity to "opt out" of the briefing process referenced in the February 24 Order in the event that defendants did not wish to file a reply or otherwise participate in the briefing on the Motions to Dismiss.

136. Oral arguments were held on September 17, 2014. *See* Order Scheduling Hearing on Becker & Poliakoff LLP Motions to Dismiss and Motions to Dismiss Listed on Appendix A to the Trustee's February 20 Letter to the Court as Amended, *In re Madoff,* Adv. Pro. No. 08-01789 (SMB) (Bankr. S.D.N.Y. July 24, 2014), ECF No. 7513 ("Scheduling Order").

137. Approximately 30 actions opted out of the omnibus briefing process by withdrawing their motion to dismiss, without prejudice, in order to proceed to mediation as permitted under the Order (1) Establishing Litigation Case Management Procedures for Avoidance Actions and (2) Amending the February 16, 2010 Protective Order, *In re Madoff*, Adv. Pro. No. 08-01789 (BRL) (Bankr. S.D.N.Y. Nov. 10, 2010), ECF No. 3141 ("Litigation Procedures Order"), governing the prosecution of BLMIS avoidance actions.

138. Additionally, the Trustee considered hardship applications and where appropriate, agreed to dismiss certain defendants from the actions. In other cases, the parties engaged in settlement negotiations which led to the resolution of certain actions or a narrowing of the open issues. Certain defendants requested mediation of their cases. When the Trustee concurred in that request, the parties engaged in mediations, some of which resulted in a settlement of the actions. In certain cases, the parties engaged in fact and expert discovery during the Compensation Period.

L.    **MATTER 27 – JP MORGAN CHASE**

139.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the action against JPMorgan Chase & Co., JPMorgan Chase Bank, N.A., J.P. Morgan Securities LLC, and J.P. Morgan Securities Ltd. (collectively, "JPMorgan") seeking the return of approximately $19 billion under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent transfers, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of JPMorgan Chase. *Picard v. JPMorgan Chase & Co.*, Adv. No. 10-04932 (SMB) (Bankr. S.D.N.Y. Dec. 2, 2010).

140.    The appeal of the District Court's decision dismissing the Trustee's common law claims against JPMorgan, *Picard v. JPMorgan Chase & Co.*, 460 B.R. 84 (S.D.N.Y. 2011), was decided on June 20, 2013.  *Picard v. JPMorgan Chase & Co.*, 721 F.3d 54 (2d Cir. 2013).  The parties had stipulated to a stay of discovery pending the appeal, which was lifted in accord with that stipulation on or about July 11, 2013.

141.    During the Compensation Period, B&H attorneys completed briefing of the Trustee's petition for writ of certiorari to the Supreme Court seeking reversal of the Second Circuit's decision on the Trustee's standing to pursue common law claims.  The Trustee filed his opening brief in October 2013 and his reply brief in December 2013.   Meanwhile, B&H attorneys negotiated a settlement with JPMorgan on the Trustee's avoidance and common law claims.  The latter settlement was negotiated in tandem with plaintiffs in a related class action pending in the District Court.  The Trustee's settlements were announced on the same day that the Government announced its settlement with JPMorgan relating to the Madoff fraud.  The settlement papers were finalized and presented to the Bankruptcy and District Courts in January 2014.  *Picard v. JPMorgan Chase & Co., et al.*, Adv. No. 10-04932 (SMB) (Bankr. S.D.N.Y.

Jan. 7, 2014), (ECF Nos. 29-32).   The Bankruptcy Court approved the settlement in February

2014, and the District Court approved the class action settlement in March 2014.

142.    At the time that the Trustee sought approval of his settlement, SPV Optimal SUS

Ltd. ("SPV"), as successor in interest to Optimal Strategic U.S. Equity Limited ("SUS"), and

Solus Recovery Fund, LP ("Solus"), as successor in interest to Optimal Arbitrage Limited

("Arbitrage," and together with SUS, "Optimal"), filed a limited objection ("SPV Limited

Objection") (ECF No. 42), arguing that Optimal is entitled to a net refund of $7,439,482.40 from

the BLMIS estate under the "most favored nation" ("MFN") provision set forth in paragraph 13

of the settlement agreement between Trustee and Optimal dated May 22, 2009 (the "Optimal

Settlement" or "Optimal Settlement Agreement").   After the Trustee filed his reply to the SPV

Limited Objection (ECF No. 45), Solus filed a joinder (ECF No. 48).

143.    At the February 4, 2014 hearing, this Court determined that at least two factors in

the MFN provision were "ambiguous:"

- (ii) the nature of the Avoiding Power Claims (such as whether they are for recovery of a preference or for recovery of principal or fictitious profits) . . .

- (iv) the knowledge of the defendant (or group of defendants, taken as a whole) or its or their complicity in the fraud that BLMIS perpetrated on its customers.

144.    The Court suggested that extrinsic evidence on these terms may be necessary.

The parties thereafter exchanged documents, deposed the two principal negotiators for the

Trustee and Optimal during the settlement, and filed briefs with the Court.   On July 30, 2014, the

Court held an evidentiary hearing and heard oral argument on these issues.

145.    On October 10, 2014, the Court entered Post-Trial Findings of Fact and

Conclusions of Law Denying Application for Partial Refund of Prior Settlement Payments (the

"Decision"), ECF No. 77, finding that the JPMorgan Settlement did not trigger the right to refunds from the Optimal Settlement payment.

### M.    MATTER 28 – WESTPORT

146.    This matter summarizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Robert L. Silverman ("Silverman"), Westport National Bank, a division of Connecticut Community Bank, N.A. ("WNB"), and PSCC Services, Inc. ("PSCC") (collectively, the "Westport Defendants") seeking the return of approximately $28 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Westport Defendants. *Picard v. Robert L. Silverman*, Adv. No. 10-05418 (BRL) (Bankr. S.D.N.Y.).

147.    During the Compensation Period, B&H attorneys undertook various tasks, including engaging in mediation concerning the Trustee's claims against WNB and drafting responses to WNB's position statements that articulated WNB's liability for its receipt of the fraudulent transfers.

### N.    MATTER 29 – RYE/TREMONT

148.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action filed on December 7, 2010 against Tremont Group Holdings, Inc., Tremont Partners, Inc., Tremont (Bermuda) Ltd., Rye Select Broad Market Fund, and numerous other entities and individuals (collectively, the "Tremont Funds") in which the Trustee sought the return of approximately $2.1 billion under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences and fraudulent conveyances in connection with certain transfers of property by BLMIS to or for the benefit of

43

the Tremont Funds (the "Tremont Litigation").  *Picard v. Tremont Group Holdings, Inc.*, Adv.

No. 10-05310 (SMB) (Bankr. S.D.N.Y. Dec. 7, 2010).

149.    After the court filing, the parties entered into substantive settlement negotiations.

On September 22, 2011, this Court approved a settlement between the Trustee and more than a

dozen domestic and foreign investment funds, their affiliates, and a former chief executive

associated with Tremont Group Holdings, Inc. (collectively, "Tremont") in the amount of $1.025

billion.  *Picard v. Tremont Group Holdings, Inc.*, Adv. No. 10-05310 (SMB) (Bankr. S.D.N.Y.

Dec. 7, 2010), (ECF No. 38).   There were two non-settling defendants at the time, Sandra

Manzke ("Manzke") and Rye Select Broad Market XL Portfolio Limited ("XL Portfolio").

150.    Pursuant to the settlement, Tremont delivered $1.025 billion into an escrow

account, which was placed into the Customer Fund, and the Trustee allowed certain customer

claims related to Tremont in the approximate amount of $2.9 billion.   Two objections to the

settlement agreement were filed by non-BLMIS customers, both of which were overruled by this

Court.  This Court entered an Order Granting Trustee's Motion for Entry of Order Approving

Agreement.  (ECF No. 38).

151.    Certain objectors filed an appeal of the Tremont settlement on October 18, 2011.

*See Picard v. Tremont Group Holdings, Inc.*, No. 11-7330 (GBD) (Bankr. S.D.N.Y. Oct. 18,

2011).  On June 27, 2012, United States District Judge George B. Daniels granted the Trustee's

motion to dismiss the appeal, and judgment was entered on June 28, 2012.  (ECF Nos. 35, 36).

152.    On July 27, 2012, an appeal of the judgment was filed with the Second Circuit.

(ECF No. 37).  Prior to submitting any briefing, however, the parties submitted a joint stipulation

of dismissal, and the appeal was dismissed on October 25, 2012.  (ECF No. 39).  The terms of

the settlement, therefore, have been implemented.  Pursuant to the Tremont settlement, Tremont

delivered $1.025 billion into an escrow account on November 6, 2012.  The settlement payment was released from the escrow account to the Trustee on February 8, 2013.  Accordingly, the Trustee allowed certain customer claims related to Tremont.

153.    On February 10, 2012, defendant XL Portfolio settled with the Trustee in connection with the Tremont Litigation, as well as two other actions commenced on December 8, 2010 by the Trustee against XL Portfolio and other defendants.  These other actions are captioned *Picard v. ABN AMRO Bank, N.V. et al.,* Adv. No. 10-05354 (SMB) (Bankr. S.D.N.Y. Dec. 8, 2010) and *Picard v. ABN AMRO (Ireland) Ltd., et al,* Adv. No. 10-05355 (SMB) (Bankr. S.D.N.Y. Dec. 8, 2010).

154.    On September 17, 2013, the remaining defendant in the Tremont Litigation, Manzke, who was also a defendant in the captioned action, *Picard v. Maxam Absolute Return Fund Ltd., et al.,* Adv. No. 10-05342 (Bankr. S.D.N.Y. Dec. 8, 2010), settled both actions against her.  After the Maxam settlement, Manzke was dismissed from the Tremont Litigation, and that case closed.

155.    During the Compensation Period, further strategy and investigation for additional evidentiary support for proposed actions and amended pleadings against subsequent transferees has continued.

O.    **MATTER 30 – HSBC**

156.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing claims against HSBC Bank plc, HSBC Securities Services (Luxembourg) S.A., eleven other HSBC entities (collectively, the "HSBC Defendants"), UniCredit S.p.A., and Pioneer Alternative Investment Management Ltd. (together, "UCG/PIA"), as well as affiliated feeder funds including Thema International Ltd., Thema Wise Investments Ltd., Lagoon Investment, Geo Currencies Ltd., Herald Fund SpC, Herald (Lux) SICAV, Primeo Fund, Alpha Prime Fund, and Senator

Fund, as well as individuals affiliated with those funds.  The Trustee's complaint seeks $8.8 billion under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent conveyances, and common law causes of action. *Picard v. HSBC Bank plc*, Adv. No. 09-01364 (SMB) (Bankr. S.D.N.Y. Nov. 30, 2012).

157.    During the Compensation Period, B&H attorneys extended the time for certain HSBC Defendants to respond to the amended complaint and coordinated service of process on numerous international defendants.  B&H attorneys prepared an opposition to the motions to dismiss filed by the thirteen HSBC-related defendants and, separately, by UCG/PIA on May 3, 2011 in the District Court*. Picard v. HSBC Bank plc*, No. 11 Civ. 763 (JSR) (S.D.N.Y. 2011), ECF. No. 35*; Picard v. HSBC Bank plc*, No. 11 Civ. 836 (JSR) (S.D.N.Y. 2011), (ECF. No. 34). The District Court granted the motions on July 28, 2011, dismissing the Trustee's common law claims.  *Picard v. HSBC Bank plc*, 454 B.R. 25, 37–38 (S.D.N.Y. 2011).  B&H attorneys briefed the appeal, filing both their principal and reply briefs.  Oral argument before the Second Circuit took place on November 21, 2012, and a decision denying the appeal was issued in June 2013. The Trustee filed a petition for writ of certiorari to the Supreme Court, which was denied on June 30, 2014.

158.    During the Compensation Period, the Trustee took part in proceedings pending in the Cayman Islands involving the Primeo Fund and Herald Fund.  The Trustee also continued to develop his cases against the defendants in these actions.

### P.    MATTER 32 – UBS/LIF

159.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing bankruptcy and common law claims against UBS AG, UBS (Luxembourg) SA, UBS Fund Services (Luxembourg) SA, and numerous other entities and individuals (collectively, the "Luxalpha Defendants") seeking the return of approximately $2 billion under SIPA, the

Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Luxalpha Defendants (the "Luxalpha Action"). *Picard v. UBS AG*, Adv. No. 10-04285 (SMB) (Bankr. S.D.N.Y. Oct. 22, 2012).

160.    This matter also incorporates time spent by the Trustee and B&H attorneys pursuing the avoidance action against Luxembourg Investment Fund, UBS entities, and other defendants (the "LIF Defendants") seeking the return of approximately $555 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent conveyances and damages in connection with certain transfers of property by BLMIS (the "LIF Action").   *Picard v. UBS AG*, Adv. No. 10-05311 (SMB) (Bankr. S.D.N.Y. Oct. 22, 2012).

161.    On December 19, 2012, the Trustee participated in a hearing in this Court regarding the motions to dismiss the amended complaint filed by a number of the Luxalpha Defendants and the LIF Defendants for lack of personal jurisdiction and *forum non conveniens.* At the hearing, the Court directed the parties to meet and confer on the issues in dispute with the goal of narrowing the issues before the Court.  The Trustee has made progress toward narrowing the number of defendants and parties in dispute.  For example, on May 20, 2014, the Trustee filed a notice in the Luxalpha Action whereby Defendants Access International Advisors Europe Limited and Access Partners (Suisse) S.A. were dismissed without prejudice.  (ECF No. 164.) The meet-and-confer process in the Luxalpha Action and the LIF Action is now complete, with certain motions to dismiss for lack of personal jurisdiction and/or *forum non conveniens* remaining pending before the Court.

162.    In addition, this matter incorporates work on an action commenced by the Trustee on June 6, 2012, against Banque Degroof SA/NV, other Banque Degroof entities, Access International Advisors LLC, other Access entities, Aforge Finance Holding, other Aforge entities, and the Elite Stability SICAV Stablerock Compartment Fund (the "Banque Degroof Action").  *Picard v. Banque Degroof SA/NV*, Adv. No. 12-01691 (SMB) (Bankr. S.D.N.Y. June 6, 2012).  The complaint seeks recovery of subsequent transfers from these defendants.

163.    On July 6, 2014, the District Court issued the Extraterritoriality Opinion and Order regarding the effect of the Supreme Court's decision in *Morrison v. Nat'l Australia Bank Ltd.*, 130 S. Ct. 2869 (2010) on subsequent transfers received by certain defendants.  *See* discussion *supra* Section IV(K).  The Trustee has spent time analyzing the decision and its implications, in anticipation of additional motions to dismiss to be filed by certain defendants in the Luxalpha Action, the LIF Action, and the Banque Degroof Action.

## Q.    MATTER 33 – NOMURA INTERNATIONAL PLC

164.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Nomura International plc ("Nomura") seeking the return of approximately $35 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of Nomura.  *Picard v. Nomura Int'l plc*, Adv. No. 10-05348 (SMB) (Bankr. S.D.N.Y. Dec. 8, 2010).

165.    By orders issued by the District Court during the Spring and Summer of 2012, the District Court included Nomura's motion to withdraw the reference in Common Briefing and oral argument.

166.    During the Compensation Period, B&H attorneys, on behalf of the Trustee, reached agreements with Nomura to extend Nomura's time to respond to the amended complaint while awaiting determinations from the District Court with respect to Common Briefing.  *Picard v. Nomura Int'l plc*, Adv. No. 10-05348 (SMB) (Bankr. S.D.N.Y. Dec. 8, 2010), (ECF Nos. 55, 56).

167.    During the Compensation Period, the District Court issued the Extraterritoriality Opinion and Order and the Good Faith Standard Opinion and Order, and remanded the Nomura proceeding back to the Bankruptcy Court for further proceedings consistent with its opinions. (ECF No. 57).  *See* discussion *supra* Section IV(K).  B&H attorneys reviewed and analyzed the District Court's opinions as they relate to the Nomura proceeding and continued to prepare for litigation in light of the District Court's opinions.

### R.    MATTER 34 – CITIBANK

168.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Citibank, N.A., Citibank North America, Inc., and Citigroup Global Markets Ltd. (collectively, "Citibank") seeking the return of approximately $425 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences and fraudulent transfers in connection with certain transfers of property by BLMIS to or for the benefit of Citibank (the "Citibank Action").  *Picard v. Citibank*, Adv. No. 10-05345 (SMB) (Bankr. S.D.N.Y. Dec. 8, 2010).

169.    By orders issued by the District Court during the Spring and Summer of 2012, the District Court included Citibank's motion to withdraw the reference in Common Briefing and oral argument.

170.    Prior to the Compensation Period, the District Court issued an opinion denying the motion to dismiss of multiple defendants, including Citibank, made in connection with

Common Briefing with respect to Section 550(a) of the Bankruptcy Code. *Picard v. Citibank*, Case No. 11-cv-07825 (JSR) (S.D.N.Y. Oct. 30, 2013), (ECF No. 36). The District Court also issued an opinion granting Citigroup's motion to dismiss in part, holding that section 546(g)'s safe harbor protects certain redemption payments but not collateral payments from recovery to the extent they cannot be avoided under section 548(a)(1)(A). *Picard v. Citibank*, Case No. 11-cv-07825 (JSR) (S.D.N.Y. Dec. 26, 2013), (ECF No. 37). In addition, B&H attorneys, on behalf of the Trustee, extended the Trustee's time to respond to Citibank's motion to dismiss the complaint filed in this Court, while awaiting determinations from the District Court with respect to Common Briefing. *Picard v. Citibank*, Adv. No. 10-05345 (SMB) (Bankr. S.D.N.Y. Jan. 15, 2014), (ECF No. 65).

171. During the Compensation Period, on April 27, 2014, the District Court issued the Good Faith Standard Opinion and Order. *See* discussion *supra* Section IV(K). Through this decision, the Citibank Action was remanded back to the Bankruptcy Court. In addition, during the Compensation Period, on July 6, 2014, the District Court issued a decision and order regarding the extraterritoriality issue, the final legal issue on which the Court had granted motions to withdraw the reference. *Securities Inv. Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC*, 513 B.R. 222 (S.D.N.Y. 2014).

172. During the Compensation Period, B&H attorneys, on behalf of the Trustee, further extended the Trustee's time to respond to Citibank's motion to dismiss the complaint filed in this Court. *Picard v. Citibank*, Adv. No. 10-05345 (SMB) (Bankr. S.D.N.Y. Apr. 14, 2014 and June 10, 2014), (ECF Nos. 67, 68).

173. In addition, during the Compensation Period, B&H attorneys prepared for continued litigation in the Citibank Action.

S.    **MATTER 35 – NATIXIS**

174.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Natixis, Natixis Corporate & Investment Bank (f/k/a Ixis Corporate & Investment Bank), Natixis Financial Products, Inc., Bloom Asset Holdings Fund, and Tensyr Ltd. (collectively, the "Natixis Defendants") seeking the return of approximately $430 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent transfers and fraudulent conveyances in connection with certain transfers of property by BLMIS to or for the benefit of the Natixis Defendants. *Picard v. Natixis*, Adv. No. 10-05353 (SMB) (Bankr. S.D.N.Y. Dec. 8, 2010).

175.    By orders issued by the District Court during the Spring and Summer of 2012, the District Court included the Natixis Defendants' motion to withdraw the reference in Common Briefing and oral argument.

176.    During the Compensation Period, B&H attorneys, on behalf of the Trustee, reached agreements with the Natixis Defendants to extend the Trustee's time to respond to motions to dismiss the complaint while awaiting determinations from the District Court with respect to Common Briefing.  *Picard v. Natixis*, Adv. No. 10-05353 (SMB) (Bankr. S.D.N.Y. Dec. 8, 2010), (ECF No. 63, 64).

177.    During the Compensation Period, the District Court issued the Extraterritoriality Opinion and Order and the Good Faith Standard Opinion and Order, and remanded the Natixis proceeding back to the Bankruptcy Court for further proceedings consistent with its opinions. (ECF No. 65).  *See* discussion *supra* Section IV(K).  B&H attorneys reviewed and analyzed the District Court's opinions as they relate to the Natixis proceeding and continued to prepare for litigation in light of the District Court's opinions.

### T.    MATTER 36 – MERRILL LYNCH

178.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Merrill Lynch International ("MLI") seeking the return of at least $16 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences and fraudulent transfers in connection with certain transfers of property by BLMIS to or for the benefit of MLI.  *Picard v. Merrill Lynch Int'l*, Adv. No. 10-05346 (SMB) (Bankr. S.D.N.Y. Dec. 8, 2010).

179.    Prior to the Compensation Period, MLI filed a motion to withdraw the reference, which was granted by Judge Rakoff and resulted in Common Briefing pending in the District Court.

180.    During the Compensation Period, the District Court issued the Extraterritoriality Opinion and Order and the Good Faith Standard Opinion and Order, and remanded the MLI proceeding to the Bankruptcy Court for further proceedings consistent with its opinions.  *See* discussion *supra* Section IV(K).   B&H attorneys reviewed and analyzed the District Court's opinions as they relate to the MLI proceeding and continued to prepare for litigation in light of the District Court's opinions.

181.    In addition, the Trustee and B&H attorneys entered into stipulations with counsel for MLI extending MLI's time to answer or otherwise respond to the complaint, while awaiting determinations from the District Court with respect to Common Briefing.

### U.    MATTER 37 – ABN AMRO

182.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against ABN AMRO Bank N.V. (presently known as The Royal Bank of Scotland, N.V.) ("RBS") seeking the return of approximately $237 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for

preferences and fraudulent transfers in connection with certain transfers of property by BLMIS to or for the benefit of RBS. *Picard v. ABN AMRO Bank, N.A. (presently known as The Royal Bank of Scotland, N.V.)*, Adv. No. 10-05354 (SMB) (Bankr. S.D.N.Y. Dec. 8, 2010).

183.    Prior to the Compensation Period, RBS filed a motion to withdraw the reference, which was granted by Judge Rakoff and resulted in Common Briefing before the District Court.

184.    In addition, prior to the Compensation Period, on February 27, 2013, the Trustee voluntarily dismissed Rye Select Broad Market XL Fund, L.P. with prejudice. *Picard v. ABN AMRO Bank N.A.*, Adv. No. 10-05354 (SMB) (Bankr. S.D.N.Y. Dec. 8, 2010), (ECF No. 56).

185.    During the Compensation Period, B&H attorneys prepared for continued litigation in this action by, *inter alia*, reviewing and analyzing relevant documents and correspondence. Additionally, during the Compensation Period, the District Court issued the Extraterritoriality Opinion and Order and the Good Faith Standard Opinion and Order, and remanded the action against RBS back to the Bankruptcy Court for further proceedings consistent with these decisions. *See* discussion *supra* Section IV(K).  B&H attorneys reviewed and analyzed the District Court's decisions as they relate to the RBS proceeding and continued to prepare for further litigation in light thereof.

186.    While awaiting determinations from the District Court with respect to certain Common Briefing issues, the Trustee and B&H attorneys entered into stipulations with counsel for RBS extending RBS's time to respond to the Trustee's amended complaint.

## V.    MATTER 38 – BANCO BILBAO

187.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Banco Bilbao Vizcaya Argentaria, S.A. ("BBVA") seeking the return of at least $45 million under SIPA, the Bankruptcy Code, and the New York Fraudulent Conveyance Act in connection with certain transfers of property by BLMIS to or for the benefit

of BBVA. *Picard v. Banco Bilbao Vizcaya Argentaria, S.A.*, Adv. Pro. No. 10-05351 (SMB) (Bankr. S.D.N.Y. Dec. 8, 2010).

188.    Prior to the Compensation Period, BBVA filed a motion to withdraw the reference which was granted by Judge Rakoff and resulted in Common Briefing pending in the District Court.

189.    During the Compensation Period, the District Court issued the Extraterritoriality Opinion and Order and the Good Faith Standard Opinion and Order, and remanded the BBVA proceeding back to the Bankruptcy Court for further proceedings consistent with its opinions. *See* discussion *supra* Section IV(K).   B&H attorneys reviewed and analyzed the District Court's opinions as they relate to the BBVA proceeding and continued to prepare for litigation in light of the District Court's opinions.

190.    In addition, the Trustee and B&H attorneys entered into stipulations with counsel for BBVA extending BBVA's time to supplement or alternatively withdraw its pending motion to dismiss and adjourning the hearing on the then pending motion to dismiss while awaiting determinations from the District Court with respect to Common Briefing.

## W.    MATTER 39 – FORTIS

191.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against ABN AMRO Bank (Ireland) Ltd. (f/k/a Fortis Prime Fund Solutions Bank (Ireland) Ltd.), ABN AMRO Custodial Services (Ireland) Ltd. (f/k/a Fortis Prime Fund Solutions Custodial Services (Ireland) Ltd.) (collectively, the "Fortis Defendants"), Rye Select Broad Market XL Fund, LP, and Rye Select Broad Market XL Portfolio Ltd. seeking the return of approximately $747 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences and fraudulent conveyances in connection with certain transfers of property by BLMIS to or for the benefit of the Fortis

Defendants (the "Fortis Action").  *Picard v. ABN AMRO Retained Custodial Services (Ireland) Ltd.*, Adv. No. 10-05355 (SMB) (Bankr. S.D.N.Y. Dec. 8, 2010).

192.    On February 27, 2013, the Trustee voluntarily dismissed Rye Select Broad Market XL Fund, L.P. with prejudice.  *Picard v. ABN AMRO Retained Custodial Services (Ireland) Ltd.*, Adv. No. 10-05355 (SMB) (Bankr. S.D.N.Y. Dec. 8, 2010), (ECF No. 50).

193.    By orders issued by the District Court during the Spring and Summer of 2012, the District Court included the Fortis Defendants' motion to withdraw the reference in Common Briefing and oral argument.  While the parties waited for the District Court's remaining rulings on the motions to withdraw the reference, B&H attorneys extended the response date in this action.  *Picard v. ABN AMRO Retained Custodial Services (Ireland) Ltd.*, Adv. No. 10-05355 (SMB) (Bankr. S.D.N.Y. Dec. 8, 2010), (ECF No. 62).

194.    During the Compensation Period, the District Court issued the Extraterritoriality Opinion and Order and the Good Faith Standard Opinion and Order, and remanded the Fortis Action back to the Bankruptcy Court for further proceedings consistent with its opinions.  *See* discussion *supra* Section IV(K).  B&H attorneys reviewed and analyzed the District Court's opinions as they relate to the Fortis Action and continued to prepare for litigation in light of the District Court's opinions.

## X.    MATTER 40 – MEDICI

195.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance and civil action against Sonja Kohn, UniCredit Bank Austria AG ("Bank Austria"), Bank Medici AG ("Bank Medici"), and numerous other financial institutions, entities, and individuals (collectively, the "Kohn Defendants") seeking the return of approximately $19.6 billion under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961, *et seq.*, and other

applicable law for preferences, fraudulent transfers, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Kohn Defendants. *Picard v. Kohn*, Adv. No. 10-05411 (SMB) (Bankr. S.D.N.Y. Dec. 10, 2010).

196.    This matter also covers work performed by B&H attorneys relating to *Madoff Securities International Limited v. Raven & Ors*, [2011] EWHC (Civ) 3102 (Eng.).  Trial in this matter commenced in London in June 2013 and concluded on July 18, 2013.  On October 18, 2013, the English court ruled against MSIL's joint liquidators.  Currently, the Trustee's English counsel is negotiating with defendants regarding costs.

Y.    **MATTER 42 – EQUITY TRADING**

197.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Equity Trading Portfolio Limited, Equity Trading Fund Ltd., and BNP Paribas Arbitrage, SNC (collectively, the "Equity Trading Defendants") seeking the return of approximately $16 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent transfers, fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Equity Trading Defendants. *Picard v. Equity Trading Portfolio Limited*, Adv. No. 10-04457 (SMB) (Bankr. S.D.N.Y. Dec. 1, 2010), (ECF No. 2).

198.    The Equity Trading Defendants filed motions, or joinders to the motions, in the District Court to withdraw the reference from this Court.  (ECF Nos. 16, 21).  The District Court included the motions in its orders for Common Briefing and oral argument.

199.    During the Compensation Period, B&H attorneys and the Equity Trading Defendants renegotiated the right to file an amended complaint and revised the briefing schedule for any motions in response to the amended complaint.  (ECF Nos. 51, 55).  B&H attorneys also

prepared for continued litigation in this action. The pre-trial conference is scheduled for December 17, 2014. (ECF No. 52).

### Z.    MATTER 43 – DEFENDER

200.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Defender Limited, Reliance Management (BVI) Limited, and Reliance International Research LLC (collectively, the "Defender Defendants") seeking the return of over $93 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent transfers, fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Defender Defendants. *Picard v. Defender Limited*, Adv. No. 10-05229 (SMB) (Bankr. S.D.N.Y. Dec. 5, 2010).

201.    On April 2, 2012, the Defender Defendants filed motions in the District Court to withdraw the reference from this Court. (ECF Nos. 24, 28). The District Court partially granted these motions and included these motions in its orders for Common Briefing and oral argument.

202.    On April 27, 2012, defendants Reliance Management (BVI) Limited, Reliance Management (Gibraltar) Limited, and Tim Brockmann filed a motion in this Court to dismiss for lack of personal jurisdiction. (ECF No. 36). The Trustee opposed the motion. (ECF No. 49). The moving defendants filed their reply brief on October 26, 2012. (ECF No. 55). This Court converted the hearing on this motion, scheduled for December 19, 2012, into a Rule 16 conference and directed the parties to meet and confer with respect to the motion. This motion to dismiss remains pending.

203.    B&H attorneys conferred with counsel, pursuant to this Court's instructions at the Rule 16 conference, with respect to the motion to dismiss and to attempt to narrow the issues to be determined by this Court. B&H attorneys negotiated with counsel for defendants Reliance

Management (Gibraltar) Limited and Tim Brockmann on an agreement to dismiss those defendants without prejudice in return for, among other things, their agreement to continue participating in discovery in the Bankruptcy Court. The parties signed that agreement on December 16, 2013, and the Court so ordered the stipulation of voluntary dismissal without prejudice on December 18, 2013. (ECF No. 72).

204. During the Compensation Period, B&H attorneys continued to consult with counsel to attempt to further narrow the issues before this Court and also prepared for continued litigation in this action. On May 21, 2014, July 16, 2014, August 5, 2014 and September 19, 2014, the remaining parties filed stipulations extending the Defender Defendants' time to respond to the complaint to December 1, 2014 and adjourning the pre-trial conference to December 17, 2014. (ECF Nos. 76, 77, 79 and 86).

## AA.    MATTER 45 – LEVEY

205. This matter categorizes time spent by the Trustee and B&H attorneys pursuing four avoidance actions in which Joel Levey is a named defendant (collectively, the "Levey Actions"). The Levey Actions are as follows: *Picard v. Joel Levey*, Adv. No. 10-04282 (SMB) (Bankr. S.D.N.Y. Nov. 23, 2010); *Picard v. Aaron Levey Revocable Living Trust*, Adv. No. 10-04894 (SMB) (Bankr. S.D.N.Y. Dec. 2, 2010); *Picard v. Aaron Levey Revocable Living Trust*, Adv. No. 10-05441 (SMB) (Bankr. S.D.N.Y. Dec. 2, 2010); and *Picard v. Frances Levey Revocable Living Trust*, Adv. No. 10-05430 (SMB) (Bankr. S.D.N.Y. Dec. 2, 2010). The action against *Joel Levey*, Adv. No. 10-04282 (SMB) (Bankr. S.D.N.Y. Nov. 23, 2010), is a bad faith action and seeks the recovery of fictitious profits and principal.

206. Together with Joel Levey, the other named defendants in the Levey Actions are Aaron Levey Revocable Living Trust, Frances Levey Revocable Living Trust, Wendy Kapner Revocable Trust, Wendy Kapner, Sandra Moore, and James Kapner (collectively, the "Levey

Defendants"). The individual Levey Defendants were named in their various capacities, including as grantor, trustee, and/or beneficiary. The Levey Actions seek an aggregate recovery of approximately $6.8 million under SIPA, the Bankruptcy Code, the New York Debtor and Creditor Law, and other applicable law for the recovery of avoidable transfers and damages related to transfers made by BLMIS to or for the benefit of the Levey Defendants.

207. During the Compensation Period, B&H attorneys engaged in discovery, including the review of and production of relevant documents. B&H attorneys also addressed discovery issues with Mr. Levey and third parties, including financial institutions.

### BB. MATTER 46 – GLANTZ

208. This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Richard M. Glantz and numerous other individuals, trusts and entities (collectively, the "Glantz Defendants"), seeking the return of more than $113 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent transfers and fraudulent conveyances in connection with certain transfers of property by BLMIS to or for the benefit of the Glantz Defendants. *Picard v. Richard M. Glantz*, Adv. No. 10-05394 (SMB) (Bankr. S.D.N.Y. Dec. 9, 2010).

209. Following the filing of the complaint in this action, certain defendants were dismissed based on hardship, settlement or other reasons. On February 1, 2012, the remaining defendants filed a motion to dismiss. (ECF Nos. 26–30). The parties subsequently entered into stipulations extending the Trustee's time to amend the complaint in response to the motion to dismiss. On March 31, 2012, the defendants filed a motion to withdraw the reference in the District Court. *Picard v. Glantz*, No. 12 Civ. 02778 (JSR) (S.D.N.Y. July 12, 2012), (ECF Nos. 1–3). Judge Rakoff partially granted the motion to withdraw the reference to address certain issues related to the majority of the avoidance actions brought by the Trustee in this SIPA

proceeding.  (ECF Nos. 10–12).  Some of those issues remain under consideration by the District Court.

210.    During the Compensation Period, B&H attorneys engaged in work related to these motions, including entering into an agreement regarding the timing of filing an amended complaint in response to the motion to dismiss.  In addition, B&H attorneys continued to work on resolving claims against certain defendants.

### CC.    MATTER 47 – BONVENTRE

211.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Daniel Bonventre and Barbara Bonventre (together, the "Bonventre Defendants") seeking the return of approximately $12.6 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent transfers, fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Bonventre Defendants.  *Picard v. Daniel Bonventre*, Adv. No. 10-04214 (SMB) (Bankr. S.D.N.Y. Nov. 12, 2010).

212.    During the Compensation Period, B&H attorneys granted the Bonventre Defendants several extensions of time to respond to the complaint up to and including July 30, 2014, as the action was stayed pending the criminal case against Daniel Bonventre.  *Id.* (ECF No. 14); *see United States v. O'Hara*, 10 Cr. 228 (LTS) (S.D.N.Y. Oct. 1, 2012).

### DD.    MATTER 49 – GREENBERGER

213.    This matter characterizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Robert Greenberger and Phyllis Greenberger (together, the "Greenberger Defendants") seeking the return of approximately $524,225 under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent transfers, fraudulent conveyances and damages in connection with certain transfers of

property by BLMIS to or for the benefit of the Greenberger Defendants. *Picard v. Robert Greenberger, et. al.*, Adv. No. 10-05408 (SMB) (Bankr. S.D.N.Y. Dec. 10, 2010).

214.    During the Compensation Period, B&H attorneys worked to resolve claims against the Greenberger Defendants.  To that end, the Trustee prepared and provided to the Greenberger Defendants certain documents and information regarding his claims against them.

### EE.    MATTER 52 – DONALD FRIEDMAN

215.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against S. Donald Friedman, individually and in his capacity as a beneficiary of an individual retirement account, Saundra Friedman, Broadway-Elmhurst Co. LLC, and Ari Friedman (collectively, the "Friedman Defendants"), seeking the return of more than $19 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent transfers, fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Friedman Defendants. *Picard v. Friedman*, Adv. Pro. No. 10-05395 (SMB) (Bankr. S.D.N.Y. Dec. 9, 2010).

216.    During the Compensation Period, B&H attorneys prepared to take depositions, including a former bookkeeper who performed services for the Friedman Defendants (the deposition occurred on August 7, 2014) and Donald Friedman (the deposition currently is scheduled for November 25, 2014).

217.    During the Compensation Period, B&H attorneys prepared and submitted an amended case management plan.  B&H attorneys also conducted meet and confers with counsel for Donald Friedman's former accountant.

218.    Furthermore, during the Compensation Period, B&H attorneys conducted several document reviews and reviewed documents produced by the Friedman Defendants' former

accounting firm.    B&H attorneys also issued a subpoena to the Friedman Defendants' bookkeeper demanding production of the Friedman Defendants' accounting files.

### FF.    MATTER 53 – MAGNIFY

219.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Magnify Inc., Premero Investments Ltd., Strand International Investments Ltd., The Yeshaya Horowitz Association, Yair Green, Kurt Brunner, Special Situations Cayman Fund LP, Express Enterprises Inc., R.H. Book LLC, and Robert H. Book (collectively, the "Magnify Defendants") seeking the return of over $154 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent transfers, fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Magnify Defendants.    *Picard v. Magnify Inc., et.al*, Adv. No. 10-05279 (SMB) (Bankr. S.D.N.Y. Dec. 6, 2010).

220.    During the Compensation Period, B&H attorneys continued their investigation of the Magnify Defendants located outside of the United States.    B&H attorneys continued their review of document productions received from Magnify Inc., Premero Investments Ltd., Strand International Investments Ltd., The Yeshaya Horowitz Association, Yair Green, and Express Enterprises Inc. as part of ongoing discovery between the parties.    B&H attorneys also continued to produce documents in response to discovery requests by Magnify Inc., Premero Investments Ltd., Strand International Investments Ltd., The Yeshaya Horowitz Association, Yair Green, and Express Enterprises Inc.

221.    In addition, B&H attorneys prepared and filed an amended case management notice in the case.    B&H attorneys had previously prepared, and served subpoenas, under Rule 45 of the Federal Rules of Civil Procedure and assisted in the preparation of requests for the issuance of letters of request under The Hague Evidence Convention for production of

documents from third party foreign banks with relevant information regarding the Magnify Defendants.  On March 31, 2014, Bank Hapoalim, B.M. filed a Motion for Protective Order in response to the Trustee's subpoena.  B&H attorneys began preparing the Trustee's opposition to this motion but reached an agreement with counsel for Bank Hapoalim, B.M. to withdraw its Motion.  Bank Hapoalim, B.M. withdrew its Motion for Protective Order on April 29, 2014.

222.    On June 6, 2014, the Trustee dismissed defendants Robert H. Book and R.H. Book LLC from the adversary proceeding.

223.    In addition to the *Picard v. Magnify* action, this matter also encompasses time spent by the Trustee and B&H attorneys pursuing the avoidance action against the Estate (Succession) of Doris Igoin, Laurence Apfelbaum, and Emilie Apfelbaum (collectively, the "Apfelbaum Defendants"), who have ties to the late founder of several of the Magnify Defendants, seeking the return of over $152 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent transfers, fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Apfelbaum Defendants.  *Picard v. Estate (Succession) of Doris Igoin*, Adv. No. 10-04336 (SMB) (Bankr. S.D.N.Y. Nov. 30, 2010).

224.    During the Compensation Period, B&H attorneys continued their investigation of the Apfelbaum Defendants, who are located outside of the United States.  B&H attorneys participated in ongoing court-ordered jurisdictional discovery over the Apfelbaum Defendants. Following the deposition of Laurence Apfelbaum in Paris, France, pursuant to a commission issued by the Court on September 11, 2014 under Article 17 of the Hague Evidence Convention, B&H attorneys participated in renewed briefing of the Apfelbaum Defendants' motion to dismiss the Trustee's complaint for lack of personal jurisdiction and *forum non conveniens*.  On June 20,

2014, B&H attorneys submitted a Supplemental Memorandum of Law in Opposition to Defendants' Motion to Dismiss for Lack of Personal Jurisdiction and Forum Non Conveniens. On July 18, 2014, B&H attorneys filed a Supplemental Reply in Further Opposition to Defendants' Motion to Dismiss for Lack of Personal Jurisdiction and Forum Non Conveniens. The Apfelbaum Defendants' motion to dismiss is awaiting decision by the Court.

225.    The Apfelbaum Defendants filed a motion to withdraw the reference on April 2, 2012. *Picard v. Estate (Succession) of Doris Igoin*, No. 12-02872 (JSR) (S.D.N.Y. Apr. 12, 2012). B&H attorneys previously drafted various motions and pleadings related to this motion to withdraw the reference and continue to pursue legal remedies related to certain orders entered by the District Court.

### GG.    MATTER 54 – MENDELOW

226.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Steven B. Mendelow, Nancy Mendelow, Cara Mendelow, Pamela (Mendelow) Christian, C&P Associates, Ltd., and C&P Associates, Inc. (collectively, the "Mendelow Defendants") seeking the return of over $20 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent transfers, fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Mendelow Defendants. *Picard v. Steven B. Mendelow*, Adv. No. 10-04283 (SMB) (Bankr. S.D.N.Y. Nov. 23, 2010).

227.    The Mendelow Defendants moved to withdraw the reference, which was granted in part. *Picard v. Mendelow*, No. 11 Civ. 07680 (JSR) (S.D.N.Y. Oct. 28, 2011), (ECF No. 14). The matter was returned to the Bankruptcy Court on August 1, 2014. *Picard v. Mendelow,* No. 11-cv-07680 (JSR)(S.D.N.Y. August 4, 2014), (Dkt. No. 19). B&H attorneys granted the Mendelow Defendants several extensions of time to respond to the complaint. Their answer

currently is due on November 14, 2014. B&H attorneys continued to prepare for litigation in light of decisions impacting the pleading standards.

### HH.    MATTER 58 – PJ ADMINISTRATORS

228.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against American Securities Management, L.P., PJ Associates Group, L.P., and numerous other individuals and entities (collectively, the "PJ Defendants") seeking the return of approximately $91 million, including approximately $10 million in fictitious profits under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent transfers, fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the PJ Defendants. *Picard v. American Sec. Mgmt., L.P.*, Adv. No. 10-05415 (BRL) (Bankr. S.D.N.Y. Dec. 10, 2010).

229.    During the Compensation Period, B&H attorneys spent time preparing for continued litigation in this action, including reviewing documents produced by defendants, preparing for an anticipated motion to dismiss, identifying possible sources of additional evidence, and considering alternative case theories. B&H attorneys also granted the PJ Defendants extensions of time to respond to the amended complaint.

### II.    MATTER 59 – STANLEY SHAPIRO

230.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Stanley Shapiro, Renee Shapiro, S&R Investment Co., David Shapiro, Rachel Shapiro, Leslie Shapiro Citron, Kenneth Citron, and numerous trusts (collectively, the "Shapiro Defendants") seeking the return of over $54 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of

the Shapiro Defendants.  *Picard v. Shapiro*, Adv. No. 10-05383 (SMB) (Bankr. S.D.N.Y. Dec. 9, 2010).

231.    Prior to the Compensation Period, the Shapiro Defendants withdrew the reference to the Bankruptcy Court and participated in Common Briefing in the District Court.  Among the issues affecting the Shapiro Defendants are the applicability of the safe harbor under Bankruptcy Code section 546(e) and the standards of good faith and value under Bankruptcy Code section 548.  During the Compensation Period, Judge Rakoff ruled on the remaining issues raised by the Shapiro Defendants in their motion to withdraw the reference.

232.    During the Compensation Period, B&H attorneys prepared and filed a second amended complaint against the Shapiro Defendants, and agreed to a briefing schedule for the motion to dismiss.

### JJ.    MATTER 60 – AVELLINO & BIENES

233.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Avellino & Bienes, Frank J. Avellino, Michael S. Bienes, Nancy C. Avellino, Dianne K. Bienes, Thomas G. Avellino, and numerous other trusts and entities (collectively, the "A&B Defendants") seeking the return of over $904 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent transfers, fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the A&B Defendants.  *Picard v. Avellino*, Adv. No. 10-05421 (SMB) (Bankr. S.D.N.Y. Dec. 10, 2010).

234.    On June 6, 2011, certain of the A&B Defendants moved to dismiss the complaint in this Court.  (ECF No. 23).  That same day, certain A&B Defendants moved to withdraw the reference.  *Picard v. Avellino*, No. 11-03882 (JSR) (S.D.N.Y. June 7, 2011), (ECF Nos. 1–3).  The motion to withdraw the reference was fully briefed in the District Court, and oral argument

was held on October 18, 2011. The reference to this Court was withdrawn on several issues on

February 29, 2012. (ECF No. 20). The Trustee and the A&B Defendants participated in

Common Briefing before the District Court on the issues withdrawn. In July 2014, after all

withdrawn issues had been decided, the parties negotiated a schedule for the briefing of pending

or renewed motions to dismiss.

235.    While the above-referenced motions and schedules have been pending, B&H

attorneys continued performing legal research and engaging in discovery preparation, document

review, and case assessment and strategy.

## KK.    MATTER 62 – SUBSEQUENT TRANSFERS

236.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing

recovery actions against entities that received subsequent transfers of Customer Property from

BLMIS.

237.    Prior to the Compensation Period, the Trustee briefed and presented argument at

hearings before the District Court on issues raised by subsequent transfer defendants, as well as

other defendants, that were subject to Common Briefing and hearings. As of July 31, 2014, the

District Court has issued all of its decisions on the issues subject to Common Briefing and

remanded the cases to this Court for further findings based on the legal standards set forth in the

District Court's decisions. *See* discussion *supra* Section IV(K).

238.    As of July 31, 2014, the Trustee and the subsequent transfer defendants had

entered into stipulations extending the response date to the Trustee's complaints.

239.    The Trustee's investigation is ongoing, and additional recovery actions against

other subsequent transferees likely will be filed in the future.

## LL.    MATTER 63 – CITRUS INVESTMENT HOLDINGS, LTD.

240.    This matter characterizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Citrus Investment Holdings Ltd. ("Citrus"), seeking the return of approximately $17 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent transfers, fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of Citrus or other potential defendants.  *Picard v. Citrus Investment Holdings Ltd.*, Adv. No. 10-04471 (SMB) (Bankr. S.D.N.Y. Nov. 30, 2010).

241.    During the Compensation Period, B&H attorneys reviewed documents and analyzed legal issues in light of recent decisions from the District Court.  The Trustee and B&H attorneys also analyzed discovery issues and inclusion of this matter in omnibus briefing regarding further discovery and amended pleadings.

## MM.   MATTER 65 – LEGACY

242.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Legacy Capital Ltd., Isaac Jimmy Mayer, Rafael Mayer, Khronos LLC, Khronos Capital Research LLC, HCH Management Co., Montpellier Resources Ltd., BNP Paribas Securities Corp., Inversiones Coque S.A., Aurora Resources Ltd., and Olympus Assets LDC (collectively, the "Legacy Capital Defendants") seeking the return of over $218 million under SIPA, the Bankruptcy Code, the New  York Fraudulent Conveyance Act, and other applicable law for fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Legacy Capital Defendants.  *Picard v. Legacy Capital Ltd.*, Adv. No. 10-05286 (SMB) (Bankr. S.D.N.Y. Dec. 6, 2010).

243.    During the Compensation Period, B&H attorneys prepared for continued litigation in this action.  In support of this effort, B&H attorneys continued their investigation of the

Legacy Capital Defendants and the respective fraudulent transfers to each defendant. B&H attorneys also continued to identify relevant witnesses and procure information regarding the Legacy Capital Defendants and relevant third party witnesses.

### NN.    MATTER 66 – LIEBERBAUM

244.    This matter characterizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Michael Lieberbaum and Cynthia Lieberbaum (together, the "Lieberbaum Defendants") seeking the return of approximately $2.36 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent transfers, fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Lieberbaum Defendants. *Picard v. Michael Lieberbaum*, Adv. No. 10-05406 (SMB) (Bankr. S.D.N.Y. Dec. 10, 2010).

245.    During the Compensation Period, B&H attorneys worked to resolve claims against the Lieberbaum Defendants.

### OO.    MATTER 71 – SQUARE ONE

246.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Square One Fund Ltd., Luc D. Estenne, Square Asset Management Ltd., Partners Advisers S.A., Circle Partners, and Kathryn R. Siggins (collectively, the "Square One Defendants") seeking the return of approximately $26.2 million under SIPA, the Bankruptcy Code, and the New York Fraudulent Conveyance Act in connection with certain transfers of property by BLMIS to or for the benefit of the Square One Defendants. *Picard v. Square One Fund, Ltd., et al.*, Adv. Pro. No. 10-04330 (SMB) (Bankr. S.D.N.Y. Nov. 29, 2010).

247.    Prior to the Compensation Period, the Square One Defendants filed a motion to withdraw the reference which was granted by Judge Rakoff and resulted in Common Briefing pending in the District Court.

248.     During the Compensation Period, the District Court issued the Good Faith Standard Opinion and Order, and remanded the Square One proceeding back to the Bankruptcy Court for further proceedings consistent with its opinions.  *See* discussion *supra* Section IV(K). B&H attorneys reviewed and analyzed the District Court's opinion as they relate to the Square One proceeding and continued to prepare for litigation in light of the District Court's opinions.

249.     In addition, the Trustee and B&H attorneys entered into stipulations with counsel for the Square One Defendants extending the Square One Defendants' time to answer, move, or otherwise respond to the Trustee's complaint while awaiting determinations from the District Court with respect to Common Briefing.

## PP.    MATTER 72 – PLAZA

250.     This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Plaza Investments International Limited and Notz, Stucki Management (Bermuda) Limited (collectively, the "Plaza Defendants") seeking the return of approximately $235 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Plaza Defendants.  *Picard v. Plaza Invs. Int'l Ltd.*, Adv. No. 10-04284 (SMB) (Bankr. S.D.N.Y. Nov. 23, 2010).

251.     On July 12, 2012, Judge Rakoff issued an order as to the Plaza Defendants' fully briefed motion to withdraw the reference, stating that the Plaza Defendants raised the same issues that the District Court previously arranged for Common Briefing and directing the Plaza Defendants to continue to proceed according to the procedures arranged for Common Briefing. *See* Order, *Picard v. Plaza Invs. Int'l Ltd.*, No. 12 Civ. 02646 (JSR) (S.D.N.Y. July 12, 2012), (ECF No. 15).

252.    In July 2014, Judge Rakoff issued opinions deciding all issues previously arranged for Common Briefing and, as of July 31, 2014, the Plaza Defendants' motion to withdraw the reference was returned to the Bankruptcy Court for further proceedings. *See* discussion *supra* Section IV(K).

### QQ.    MATTER 73 – BNP PARIBAS

253.    This matter categorizes time spent by the Trustee and B&H attorneys in five adversary proceedings seeking the return of approximately $1 billion under SIPA, the Bankruptcy Code, and the New York Fraudulent Conveyance Act from BNP Paribas S.A. and its subsidiaries—BNP Paribas (Suisse) S.A., BNP Paribas Arbitrage SNC, BNP Paribas (Canada), BNP Paribas Bank & Trust Cayman Limited, BGL BNP Paribas Luxembourg S.A., BNP Paribas Investment Partners Luxembourg S.A., BNP Paribas Securities Services—Succursale de Luxembourg, BNP Paribas Securities Services S.A., and BNP Paribas Securities Corp. (collectively, the "BNP Paribas Defendants")—who redeemed money from feeder funds that invested with BLMIS. *Picard v. BNP Paribas Arbitrage, SNC*, Adv. No. 11-02796 (SMB) (Bankr. S.D.N.Y. Nov. 3, 2011); *Picard v. BNP Paribas S.A.,* Adv. No. 12-01576 (SMB) (Bankr. S.D.N.Y. May 4, 2012); *Picard v. Legacy Capital Ltd.,* Adv. No. 10-05286 (SMB) (Bankr. S.D.N.Y. Dec. 6, 2010); *Picard v. Oreades SICAV,* Adv. No. 10-05120 (SMB) (Bank. S.D.N.Y. Dec. 2, 2010); and *Picard v. Equity Trading Portfolio Ltd.,* Adv. No. 10-04457 (SMB) (Bank. S.D.N.Y. Dec. 1, 2010) (collectively, the "BNP Paribas Proceedings").

254.    Prior to the Compensation Period, the BNP Paribas Defendants filed motions to withdraw the reference which were granted by Judge Rakoff and resulted in Common Briefing pending in the District Court.

255.    During the Compensation Period, the District Court issued the Extraterritoriality Opinion and Order and the Good Faith Standard Opinion and Order, and remanded the BNP

Paribas Proceedings back to the Bankruptcy Court for further proceedings consistent with its opinions. *See* discussion *supra* Section IV(K). B&H attorneys reviewed and analyzed the District Court's opinions as they relate to the BNP Paribas Proceedings and continued to prepare for litigation in light of the District Court's opinions.

256.    B&H attorneys, on behalf of the Trustee, also reached agreements with the BNP Paribas Defendants to extend the time to respond to the Trustee's complaints in the BNP Paribas Proceedings while the parties prepare for litigation in the Bankruptcy Court.

## V.    <u>COMPENSATION REQUESTED</u>

257.    This Application has been prepared in accordance with the Amended Guidelines for Fees and Disbursements of Professionals in Southern District of New York Bankruptcy Cases adopted by the Court on April 19, 1995 (the "Local Guidelines") and the Second Amended Compensation Order. Pursuant to the Local Guidelines, the declaration of David J. Sheehan, Esq., regarding compliance with the same is attached hereto as Exhibit A.

258.    The Trustee, and B&H, as counsel to the Trustee, expended 99,206.50 hours in the rendition of professional and paraprofessional services during the Compensation Period, resulting in an average hourly discounted rate of $401.75 for fees incurred.[12]    The blended attorney rate is $480.48.

259.    Prior to filing this Application, in accordance with the Second Amended Compensation Order, the Trustee, and B&H, as counsel to the Trustee, provided to SIPC: (i) monthly fee statements setting forth the Trustee's and B&H's fees for services rendered and expenses incurred during the Compensation Period, and (ii) a draft of this Application. In connection with the four monthly statements, the Trustee and B&H voluntarily adjusted their

---

[12]In order to streamline the invoices and related fee applications, as of June 1, 2011, the invoice amounts reflect combined amounts for the Trustee and B&H.

fees by writing off $1,920,351.80 (not including the 10% public interest discount, as discussed below), and wrote off expenses customarily charged to other clients in the amount of $374,800.29.

260.    At SIPC's request, the Trustee's and B&H's fees in this case reflect a 10% public interest discount from their standard rates.  This discount has resulted in an additional voluntary reduction during the Compensation Period of $4,428,426.35.  The requested fees are reasonable based on the customary compensation charged by comparably skilled practitioners in comparable bankruptcy and non-bankruptcy cases in a competitive national legal market.

261.    Pursuant to the Second Amended Compensation Order, on May 20, 2014, the Trustee, and B&H, as counsel to the Trustee, provided SIPC with their statements of fees and expenses incurred in connection with this case regarding the period from April 1, 2014 through April 30, 2014 (the "April Fee Statement").   The April Fee Statement reflected fees of $10,000,872.00 and expenses of $236,204.60.  SIPC's staff requested certain adjustments and made suggestions, which were adopted by the Trustee and B&H.  After such adjustments, the April Fee Statement reflected fees of $9,822,070.62.  After subtracting the Court-ordered 10% holdback, SIPC advanced $8,839,863.56 for services rendered and $189,231.95 for expenses incurred by the Trustee and B&H.

262.    Pursuant to the Second Amended Compensation Order, on June 20, 2014, the Trustee, and B&H, as counsel to the Trustee, provided SIPC with their statements of fees and expenses incurred in connection with this case regarding the period from May 1, 2014 through May 31, 2014 (the "May Fee Statement").   The May Fee Statement reflected fees of $9,763,643.25 and expenses of $122,036.48.  SIPC's staff requested certain adjustments and made suggestions, which were adopted by the Trustee and B&H.  After such adjustments, the

May Fee Statement reflected fees of $9,453,140.28.  After subtracting the Court-ordered 10% holdback, SIPC advanced $8,507,826.25 for services rendered and $121,144.49 for expenses incurred by the Trustee and B&H.

263.    Pursuant to the Second Amended Compensation Order, on July 21, 2014, the Trustee, and B&H, as counsel to the Trustee, provided SIPC with their statements of fees and expenses incurred in connection with this case regarding the period from June 1, 2014 through June 30, 2014 (the "June Fee Statement").   The June Fee Statement reflected fees of $10,371,170.16 and expenses of $83,420.40.  SIPC's staff requested certain adjustments and made suggestions, which were adopted by the Trustee and B&H.  After such adjustments, the June Fee Statement reflected fees of $10,079,293.50.  After subtracting the Court-ordered 10% holdback, SIPC advanced $9,071,364.15 for services rendered and $82,056.41 for expenses incurred by the Trustee and B&H.

264.    Pursuant to the Second Amended Compensation Order, on August 27, 2014, the Trustee, and B&H, as counsel to the Trustee, provided SIPC with their statements of fees and expenses incurred in connection with this case regarding the period from July 1, 2014 through July 31, 2014 (the "July Fee Statement").   The July Fee Statement reflected fees of $10,906,014.87 and expenses of $80,113.12.  SIPC's staff requested certain adjustments and made suggestions, which were adopted by the Trustee and B&H.  After such adjustments, the July Fee Statement reflected fees of $10,501,332.75.  After subtracting the Court-ordered 10% holdback, SIPC advanced $9,451,199.48 for services rendered and $78,626.46 for expenses incurred by the Trustee and B&H.

265.    Exhibit B annexed hereto is a schedule of the B&H professionals, including the Trustee, and B&H paraprofessionals who have provided services for the Trustee during the

Compensation Period, the capacity in which each individual is employed by B&H, the year in which each attorney was licensed to practice law, the hourly billing rate charged by B&H for services provided by each individual, the aggregate number of hours billed by each individual, and the total compensation requested for each individual, prior to the 10% discount.

266.    Exhibit C annexed hereto is a summary of compensation by work task code and matter number for total number of hours expended and total fees for services rendered by B&H professionals and paraprofessionals.  The 10% discount is taken off the total cumulative amount billed, as reflected on Exhibit C.

267.    Exhibit D annexed hereto provides a schedule of the expenses for which reimbursement is requested by B&H.

268.    Exhibit E annexed hereto is a calculation of the Holdback amounts and the release sought, as explained below in Section VI.

269.    There is no agreement or understanding among the Trustee, B&H, and any other person, other than members of B&H, for sharing of compensation to be received for services rendered in this case.  No agreement or understanding prohibited by 18 U.S.C. § 155 has been made or will be made by the Trustee or B&H.

270.    To the extent that time or disbursement charges for services rendered or disbursements incurred relate to the Compensation Period, but were not classified or processed prior to the preparation of this Application, the Trustee and B&H reserve the right to request additional compensation for such services and reimbursement of such expenses in a future application.

## VI.    **<u>RELEASE OF THE HOLDBACK</u>**

271.    The Compensation Order established an orderly, regular process for the allowance and payment of interim monthly compensation and reimbursement to the Trustee and payment of

interim monthly compensation and reimbursement to the Trustee and B&H. (ECF Nos. 126, 1078, 4125). Pursuant to the Compensation Order, payment of a percentage of the approved compensation – initially twenty percent (20%), subsequently reduced to fifteen percent (15%), and thereafter reduced to ten percent (10%) – is deferred through the conclusion of the liquidation period or until further order of the Court (the "Holdback").

272.    For this and prior Compensation Periods, the amount of the Holdback for the Trustee's and B&H's fees is $37,899,430.66, which includes $3,985,583.71 held back in connection with this Application. The Trustee and B&H seek a release of the Holdback in the amount of $12,899,430.66, upon the consent and approval of SIPC.

273.    SIPC has advised that it will file a recommendation in support of the fees and expenses requested in this Application and will also the release the Holdback in the amount of $12,899,430.66 for the Applicants.

274.    The Applicants respectfully request that this Court authorize the release of Holdback payment to the Applicants in the amount of $12,899,430.66.

## VII.    THE REQUEST FOR INTERIM COMPENSATION SHOULD BE GRANTED

275.    Section 78eee(b)(5)(A) of SIPA provides in pertinent part that, upon appropriate application and after a hearing, "[t]he court shall grant reasonable compensation for services rendered and reimbursement for proper costs and expenses incurred . . . by a trustee, and by the attorney for such a trustee . . . ." Section 78eee(b)(5)(C) of SIPA specifically establishes SIPC's role in connection with applications for compensation and the consideration the Court should give to SIPC's recommendation concerning fees. That section provides as follows:

> In any case in which such allowances are to be paid by SIPC without reasonable expectation of recoupment thereof as provided in this chapter and there is no difference between the amounts requested and the amounts recommended by SIPC, the court shall award the amounts recommended by SIPC. In determining the amount of allowances in all other cases, the court shall give due consideration

76

to the nature, extent, and value of the services rendered, and shall place considerable reliance on the recommendation of SIPC.

SIPA § 78eee(b)(5)(C).

276.    To the extent the general estate is insufficient to pay such allowances as an expense of administration, § 78eee(b)(5)(E) of SIPA requires SIPC to advance the funds necessary to pay the compensation of the Trustee and B&H.  *See* SIPA § 78fff-3(b)(2).

277.    While the Trustee has recovered or entered into agreements to recover approximately $9.838 billion as of July 31, 2014, a significant portion of these funds must be held in reserve pending final resolution of several appeals and disputes.

278.    Accordingly, the Trustee has determined that, at this time, he has no reasonable expectation that the general estate will be sufficient to make a distribution to general creditors or pay administrative expenses.  The Trustee has been advised by SIPC that it concurs in this belief.  Any fees and expenses allowed by this Court will be paid from advances by SIPC without any reasonable expectation by SIPC of recoupment thereof.

279.    Therefore, with respect to this Application, the Trustee, and B&H, as counsel to the Trustee, request that consistent with § 78eee(b)(5)(C) of SIPA, the Court "shall award the amounts recommended by SIPC."  *See In re Bell & Beckwith*, 112 B.R. 876 (Bankr. N.D. Ohio 1990).  SIPC will file its recommendation to the Court with respect to this Application prior to the hearing scheduled to be held on August 19, 2014.

280.    The Trustee, and B&H, as counsel to the Trustee, submit that the request for interim allowance of compensation and expenses made by this Application is reasonable and complies with the provisions of the Bankruptcy Code governing applications for compensation and reimbursement of expenses, pursuant to § 78eee(b)(5) of SIPA.

## VIII.    <u>CONCLUSION</u>

281.    The Trustee, and B&H, as counsel to the Trustee, respectfully submit that the services rendered during the Compensation Period and accomplishments to date merit the approval of the fees and disbursements requested herein, and respectfully requests that the Court enter Orders as follows: (i) allowing and awarding $39,855,837.15 (of which $35,870,253.44 is to be paid currently and $3,985,583.71 is to be held back through the conclusion of the liquidation period or until further order of the Court) as an interim payment for professional services rendered by the Trustee and B&H during the Compensation Period, and $471,059.31 as reimbursement of the actual and necessary costs and expenses incurred by the Trustee and B&H in connection with the rendition of such services; (ii) releasing $12,899,430.66 to the Trustee and B&H from the Holdback; and (iii) granting such other and further relief as the Court may deem just and proper.

Dated: New York, New York
       November 21, 2014

Respectfully submitted,

**BAKER & HOSTETLER LLP**

By:  *s/ David J. Sheehan*
Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
Irving H. Picard
Email: ipicard@bakerlaw.com
David J. Sheehan
Email: dsheehan@bakerlaw.com
Seanna R. Brown
Email: sbrown@bakerlaw.com
Heather R. Wlodek
Email: hwlodek@bakerlaw.com

*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC And Bernard L. Madoff*