# EXHIBIT A

## SETTLEMENT AGREEMENT AND RELEASE

**THIS SETTLEMENT AGREEMENT AND RELEASE** (this "Agreement") is made and entered into as of October 29, 2014, by and between Irving H. Picard, in his capacity as the Trustee ("Trustee") for the liquidation proceedings under the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa, *et seq*. ("SIPA") of Bernard L. Madoff Investment Securities LLC ("BLMIS") and the substantively consolidated Chapter 7 case of Bernard L. Madoff ("Madoff") pending before the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), on the one hand, and Westport National Bank, a division of Connecticut Community Bank, N.A. ("Westport"), on the other hand.  Trustee and Westport shall be hereinafter referred to individually as a "Party" and collectively as the "Parties."

### RECITALS

**WHEREAS**, BLMIS and its predecessor were registered broker-dealers with the United States Securities and Exchange Commission (the "Commission") and members of the Securities Investor Protection Corporation ("SIPC");

**WHEREAS**, on December 11, 2008 (the "Filing Date"), the Commission filed a complaint in the United States District Court for the Southern District of New York (the "District Court") against BLMIS and Madoff.   On December 12, 2008, the District Court entered an order which, among other things, appointed Lee S. Richards, Esq. as receiver (the "Receiver") for the assets of BLMIS (No. 08-CV-10791(LSS));

**WHEREAS**, on December 15, 2008, pursuant to section 5(a)(4)(A) of SIPA, the Commission consented to a combination of its own action with the application of SIPC. Thereafter, SIPC filed an application in the District Court under section 5(a)(3) of SIPA alleging,

*inter alia*, that BLMIS was not able to meet its obligations to securities customers as they came due and, accordingly, its customers needed the protections afforded by SIPA. On December 15, 2008, the District Court granted the SIPC application and entered an order under SIPA, which, in pertinent part, appointed Trustee as the trustee for the liquidation of the business of BLMIS under section 5(b)(3) of SIPA, removed the Receiver as the receiver for BLMIS, and removed the case to the Bankruptcy Court under section 5(b)(4) of SIPA, where it is currently pending as Case No. 08-01789 (SMB). By Order dated June 9, 2009, the estate of Madoff (the "Madoff Estate") was substantively consolidated with the estate of BLMIS;

**WHEREAS**, pursuant to section 78fff-1(a) of SIPA, Trustee has the general powers of a bankruptcy trustee in a case under Chapter 7 of the United States Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code"), as well as the powers granted pursuant to SIPA. Chapters 1, 3, 5 and subchapters I and II of Chapter 7 of the Bankruptcy Code apply to this SIPA proceeding to the extent consistent with SIPA;

**WHEREAS**, under SIPA, Trustee is charged with the responsibility to marshal and liquidate the assets of BLMIS for distribution to BLMIS customers and others in accordance with SIPA in satisfaction of allowed claims, including through the recovery of avoidable transfers such as preference payments and fraudulent transfers made by BLMIS;

**WHEREAS,** Trustee's claims against transferees who received avoidable transfers from BLMIS arise under SIPA, including sections 78fff(b), 78fff-1(a) and 78fff-2(c)(3), sections 105(a), 541, 544, 547, 548, 550(a) and 551 of the Bankruptcy Code, the New York Debtor and Creditor Law § 270 *et seq*. (McKinney 2001) and other applicable laws;

**WHEREAS**, on December 10, 2010, Trustee commenced an adversary proceeding in the Bankruptcy Court against, among others, Westport, in an action captioned *Irving H. Picard,*

*Trustee for the Liquidation of Bernard L. Madoff Inv. Sec. LLC v. Robert L. Silverman, Westport National Bank, a division of Connecticut Community Bank, N.A., and PSCC Services, Inc.*, Adv. Pro. No. 10-05418 (SMB) (the "Adversary Proceeding");

**WHEREAS**, in the Adversary Proceeding, the Trustee alleged that in connection with BLMIS Account No. 1W0106 (the "Westport Account"), Westport is liable to the BLMIS estate under various provisions of SIPA, the Bankruptcy Code, and the New York Debtor and Creditor Law for avoidable transfers, including fees, totaling $28.2 million in the six year period prior to the Filing Date, and $9.9 million in the two year period prior to the Filing Date. Westport received fees totaling approximately $2.1 million in the six year period, and $660,000 in the two year period prior to the Filing Date (the "Avoidable Transfers");

**WHEREAS**, Westport has disputed any wrongdoing or liability to the BLMIS estate for the Avoidable Transfers;

**WHEREAS**, Westport filed Claim No. 5309 (the "Westport Claim") in connection with the Westport Account, which claim has not been previously determined by Trustee;

**WHEREAS**, the Trustee, to avoid further expense and protracted litigation, desires to settle all claims asserted in the Adversary Proceeding and all claims that could have been asserted by the Trustee against Westport;

**WHEREAS**, Westport, to avoid further expense and protracted litigation, desires to settle all claims asserted in the Adversary Proceeding, and all claims that could have been asserted by the Trustee against Westport, without any admission of liability or wrongdoing on the part of Westport;

3

**NOW, THEREFORE,** in consideration of the foregoing, of the mutual covenants, promises and undertakings set forth herein, and for good and valuable consideration, the mutual receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

### DEFINITION

The following definition shall apply to and constitute part of this Agreement and all schedules, exhibits and annexes hereto:

"Unknown Claims" shall mean any Released Claims (as defined in Section 4(a) herein), that the Parties do not know or suspect to exist in their favor at the time of giving the release in this Agreement that if known by either Party, might have affected its settlement and release in this Agreement.   With respect to any and all Released Claims, the Parties shall expressly waive or be deemed to have waived, the provisions, rights and benefits of California Civil Code section 1542 (to the extent it applies herein), which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

The Parties expressly waive, and shall be deemed to have waived, any and all provisions, rights and benefits conferred by any law of any state or territory of the United States, or principle of common law or foreign law, that is similar, comparable or equivalent in effect to California Civil Code section 1542.   The Parties may hereafter discover facts in addition to or different from those that they now know or believe to be true with respect to the subject matter of the Released Claims, but the Parties shall expressly have and shall be deemed to have fully, finally and forever settled and released any and all Released Claims, known or unknown, suspected or unsuspected,

4

contingent or noncontingent, whether or not concealed or hidden, that now exist or heretofore have existed, upon any theory of law or equity now existing or coming into existence in the future, including conduct that is negligent, reckless, intentional, with or without malice, or a breach of any duty, law or rule, without regard to the subsequent discovery or existence or such different or additional facts. The Parties acknowledge and shall be deemed to have acknowledged that the foregoing waiver was separately bargained for and a key element of the settlement of which this release is a part.

**NOW THEREFORE**, for the good and valuable consideration set forth herein, the adequacy and sufficiency of which is recognized for all purposes, the Parties agree as follows:

1.    Settlement Payment.   Within fifteen days following the Bankruptcy Court's entry of an order approving this Agreement in the SIPA proceeding, Westport shall pay to Trustee the amount of $1,300,000 (the "Settlement Payment") by: (i) wire transfer of immediately available funds to the account specified on Schedule 1 attached hereto, or (ii) bank or cashier's check made payable to Trustee, provided that satisfaction of Trustee's obligations hereunder shall be conditioned on the collection of such funds by Trustee.

2.    Withdrawal of the Westport Claim.   As part of the consideration to the Trustee, Westport will deliver to the Trustee simultaneously with the execution of this Agreement an executed Notice of Withdrawal of the Westport Claim with prejudice, in the form attached hereto as Exhibit 1.

3.    Release by Trustee.

(a)      In consideration for the covenants and agreements set forth in this Agreement and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, except with respect to any rights arising under this Agreement, Trustee hereby releases, remises and forever discharges Westport and any of its predecessors, successors, parents, subsidiaries, affiliates, general partners, limited partners, agents, and assigns, together with all of

5

the foregoing entities' respective past and present officers, directors, employees, shareholders, controlling persons, general partners, limited partners, investors, advisors, consultants, members, managers, subsidiaries, affiliates, and parents, including without limitation their respective heirs, executors, attorneys, administrators, successors, and assigns (collectively, the "Defendant Releasees") from any and all past, present or future claims or causes of action (including any suit, petition, demand, or other claim in law, equity or arbitration) and from any and all allegations of liability or damages (including any allegation of duties, debts, reckonings, contracts, controversies, agreements, promises, damages, responsibilities, covenants, or accounts) of whatever kind, nature or description, direct or indirect, in law, equity or arbitration, absolute or contingent, in tort, contract, statutory liability or otherwise, based on strict liability, negligence, gross negligence, fraud, breach of fiduciary duty or otherwise (including attorneys' fees, costs or disbursements) known or unknown, that are, have been, could have been, or might in the future be, exclusively asserted by Trustee against the Defendant Releasees based on, arising out of, or relating in any way to the Madoff Estate, BLMIS, the Westport Account or the Avoidable Transfers.

(b)     Trustee releases only the Defendant Releasees pursuant to the terms of this Agreement and does not release any others.

4.     Release by Westport.

(a)     Westport, on behalf of itself and the Defendant Releasees hereby releases, remises, and forever discharges: (a) Trustee, (b) all of Trustee's attorneys, professionals, agents and consultants, (c) BLMIS and its consolidated estate, and (d) SIPC and its attorneys, professionals, agents and consultants, from any and all claims or causes of action (including any suit, petition, demand, or other claim in law, equity or arbitration) and from any and all allegations of liability or

6

damages (including any allegation of duties, debts, reckonings, contracts, controversies, agreements, promises, damages, responsibilities, covenants, or accounts) of whatever kind, nature or description, direct or indirect, in law, equity or arbitration, absolute or contingent, in tort, contract, statutory liability or otherwise, based on strict liability, negligence, gross negligence, fraud, breach of fiduciary duty or otherwise (including attorneys' fees, costs or disbursements) known or unknown (including Unknown Claims), now existing or arising in the future, arising out of or in any way related to BLMIS, the Madoff Estate, the Westport Account or the Avoidable Transfers (the "Released Claims").

5.      Representations and Warranties; Survival.

        (a)     Subject to the approval of this Agreement by the Bankruptcy Court as set forth in paragraph 19 herein, the Trustee hereby represents and warrants to Westport that (i) he has the full power, authority and legal right to execute and deliver this Agreement and to perform his obligations hereunder; (ii) the execution and delivery of this Agreement and the performance by the Trustee of his obligations hereunder have been duly and validly authorized by all necessary action on the part of the Trustee; (iii) this Agreement has been duly executed and delivered by the Trustee and constitutes the valid and binding agreement of the Trustee, enforceable against the Trustee in accordance with its terms; and (iv) in executing this Agreement, the Trustee has done so with the full knowledge of any and all rights that the Trustee may have with respect to the controversies herein compromised, and the Trustee has received or has had the opportunity to obtain independent legal advice from its attorneys with regard to the facts relating to said controversies and with respect to the rights arising out of said facts.

        (b)     Westport hereby represents and warrants to Trustee that: (i) it has the full power, authority and legal right to execute and deliver this Agreement and to perform its obligations

7

hereunder; (ii) the execution and delivery of this Agreement and the performance by Westport of its obligations hereunder have been duly and validly authorized by all necessary action on the part of Westport; (iii) this Agreement has been duly executed and delivered by Westport and constitutes the valid and binding agreement of Westport, enforceable against Westport in accordance with its terms; (iv) in executing this Agreement, Westport has done so with the full knowledge of any and all rights that Westport may have with respect to the controversies herein compromised, and Westport has received or has had the opportunity to obtain independent legal advice from its attorneys with regard to the facts relating to said controversies and with respect to the rights arising out of said facts; and (v) Westport has not assigned or transferred or purported to assign or transfer to any third person or party all or any portion of the matters that Westport releases herein.

6.      Additional Representations and Warranties by Westport.   To induce Trustee to enter into this Agreement, Westport represents and warrants, to the best of its knowledge, information and belief, that: (i) other than the Avoidable Transfers as referenced on Exhibit B of the Complaint filed in the Adversary Proceeding, Westport has not received any money, funds, loans, transfers, assets, financial assistance or financial accommodation from Madoff, BLMIS or any other company or entity owned or controlled by Madoff or BLMIS; (ii) Westport is not an immediate, mediate or subsequent transferee of any funds or property originating from Madoff or BLMIS to an initial transferee, other than as set forth in Exhibit B of the Complaint filed in the Adversary Proceeding; and (iii) Westport is not aware of any potential claims other than those set forth in the Complaint against it by Madoff, BLMIS or any other company or entity owned or controlled by Madoff or BLMIS.

8

7.      Dismissal of Adversary Proceeding.  Within six (6) business days after receipt of the
Settlement Payment described in paragraph 1, the Trustee will file a Notice of Dismissal
dismissing the Adversary Proceeding with prejudice and without costs to either Trustee or
Westport.  Other than seeking Court approval and matters attendant thereto, from the date of this
Agreement through the filing of a Notice of Dismissal pursuant to this paragraph, the Adversary
Proceeding shall be stayed and no further actions need be taken by any of the Parties hereto.

8.      Termination of Agreements with BLMIS.  Any and all prior agreements between
Westport and BLMIS are hereby terminated as of the date of this Agreement.

9.      Further Assurances.  Each Party shall execute and deliver any document or instrument
reasonably requested by the other Party after the date of this Agreement to effectuate the intent of
this Agreement.

10.     Entire Agreement.  This Agreement constitutes the entire agreement and understanding
between the Parties pertaining to the subject matter hereof and supersedes any and all prior or
contemporaneous agreements, representations and understandings of the Parties concerning the
subject matter hereof.

11.     Amendment; Waiver.  This Agreement may not be terminated, amended or modified in
any way except by written instrument signed by all Parties.  No waiver of any provision of this
Agreement shall be deemed to constitute a waiver of any other provision hereof, whether or not
similar, nor shall such waiver constitute a continuing waiver.

12.     Assignment.  This Agreement may not be assigned by either Party without the prior
written consent of the other Party.

13.     Successors.  This Agreement shall be binding upon and inure to the benefit of each Party
and its respective successors and permitted assigns.

14.     Negotiated Agreement.  This Agreement has been fully negotiated by the Parties.  Each Party acknowledges and agrees that this Agreement has been drafted jointly, and the rule that ambiguities in an agreement or contract may be construed against the drafter shall not apply in the construction or interpretation of this Agreement.

15.     Severability.  In the event that any term or provision of this Agreement or any application thereof is deemed to be invalid or unenforceable, the remainder of this Agreement and any other application of such term or provision shall not be affected thereby.

16.     Counterparts; Electronic Copy of Signatures.  This Agreement may be executed and delivered in any number of counterparts, each of which so executed and delivered shall be deemed to be an original and all of which shall constitute one and the same document.  Each Party may evidence its execution of this Agreement by delivery to the other Party of scanned or faxed copies of its signature, with the same effect as the delivery of an original signature.

17.     Governing Law.  This Agreement and any claim related directly or indirectly to this Agreement shall be governed by and construed in accordance with the laws of the State of New York (without regard to the principles of conflicts of law thereof), the Bankruptcy Code and SIPA. Each Party hereby waives on behalf of itself and its successors and assigns any and all right to argue that the choice of New York law provision is or has become unreasonable in any legal proceeding.

18.     JURISDICTION; WAIVER OF JURY TRIAL.

        (a)     THE BANKRUPTCY COURT SHALL HAVE EXCLUSIVE JURISDICTION OVER ANY AND ALL DISPUTES BETWEEN OR AMONG THE PARTIES, WHETHER IN LAW OR EQUITY, ARISING OUT OF OR RELATING TO THIS AGREEMENT.  IN THE EVENT THE BLMIS PROCEEDING IS CLOSED BY A FINAL DECREE AND NOT

10

REOPENED, THE PARTIES AGREE THAT ANY DISPUTE ARISING OUT OF THIS AGREEMENT MAY BE BROUGHT IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK OR THE SUPREME COURT OF THE STATE OF NEW YORK IN NEW YORK COUNTY.

(b)    EACH PARTY HEREBY IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY AND ALL RIGHT TO TRIAL BY JURY IN ANY LEGAL PROCEEDING ARISING OUT OF OR RELATED TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY.

19.    Bankruptcy Court Approval.  This Agreement is subject to, and shall become effective and binding on the Parties fourteen days following, the Bankruptcy Court's entry of an order approving this Agreement in the SIPA proceeding that is not subject to a timely appeal or stay by any court of competent jurisdiction and receipt of the Settlement Payment by the Trustee ("Effective Date").  The Trustee shall use reasonable efforts to obtain approval of this Agreement in the SIPA proceeding as promptly as practicable after the execution of the Agreement.

20.    Expenses.  Each Party shall bear its respective expenses relating to or arising out of this Agreement, including, but not limited to, fees for attorneys, accountants and other advisors.

21.    Notices.  All notices, requests, demands, consents and communications necessary or required under this Agreement shall be in writing and shall be delivered by hand or sent by registered or certified mail, return receipt requested, by overnight mail with confirmation, by facsimile (receipt confirmed) or by electronic means (receipt confirmed), in each case addressed and copied as set forth on the applicable signature page hereto.  A Party may change its address for receiving notice by giving notice of a new address in the manner provided herein.  All such notices, requests, demands, consents and other communications shall be deemed to have been duly

11

given or sent two (2) days following the date on which mailed, or on the date on which delivered by courier or by hand or by facsimile or electronic transmission (receipt confirmed), as the case may be, and addressed as aforesaid.

22.     No Third Party Beneficiaries.   Except as expressly provided in Sections 1, 2 3 or 4, the Parties do not intend to confer any benefit by or under this Agreement upon any person or entity other than the Parties hereto and their respective successors and permitted assigns.

23.     Captions and Rules of Construction.   The captions in this Agreement are inserted only as a matter of convenience and for reference and do not define, limit or describe the scope of this Agreement or the scope or content of any of its provisions.   Any reference in this Agreement to a section is to a section of this Agreement.   "Including" is not intended to be a limiting term.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK;
SIGNATURE PAGES TO FOLLOW]

**IN WITNESS WHEREOF**, each Party has caused this Agreement to be duly executed

and delivered as of the date set forth above.

**TRUSTEE**

THE TRUSTEE FOR THE LIQUIDATION
PROCEEDINGS OF BERNARD L. MADOFF
INVESTMENT SECURITIES LLC AND
THE SUBSTANTIVELY CONSOLIDATED
BANKRUPTCY CASE OF BERNARD L. MADOFF

Address:
Irving H. Picard                                By: _____
c/o Baker & Hostetler LLP                           Irving H. Picard, Trustee
45 Rockefeller Plaza
New York, New York 10111
Facsimile: (212) 589-4201

With copies to:
Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111
Attention:   Keith R. Murphy, Esq.
Facsimile: (212) 589-4201

Sworn and subscribed before me this
3rd day of   November   , 2014.

_____
Notary Public

[TRUSTEE SIGNATURE PAGE TO SETTLEMENT AGREEMENT]

SONYA M. GRAHAM
Notary Public, State of New York
No. 01GR6133214
Qualified in Westchester County
Commission Expires: 9/12/20.17

13

**TRANSFEREE**

**WESTPORT NATIONAL BANK, a division of
CONNECTICUT COMMUNITY BANK, N.A.,**

Address:

Westport National Bank, a division of
Connecticut Community Bank, N.A.,
1495 Post Road East
Westport, CT 06880

By: _____
Name: DAVID TRALKA
Title: PRESIDENT

With copies to:

Todd G. Cosenza, Esq.
Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, NY 10019-6099

Sworn and subscribed before me this
4th day of _November_, 2014.

_Linda Appelbaum_
Notary Public

LINDA APPELBAUM
Notary Public
**State of Connecticut**
My Commission Expires January 31, 2018

[TRANSFEREE SIGNATURE PAGE TO SETTLEMENT AGREEMENT]

14

**Exhibit 1**

<u>**FORM OF NOTICE OF WITHDRAWAL OF WESTPORT'S CLAIM**</u>

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| In re:<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>          Debtor. | SIPA LIQUIDATION<br><br>Case No.  08-01789 (SMB)<br><br>(Substantively Consolidated) |
| SECURITIES INVESTOR PROTECTION CORPORATION<br><br>          Plaintiff,<br><br>          v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>          Defendant. |  |

## <u>NOTICE OF WITHDRAWAL OF CUSTOMER CLAIM</u>

The Claimant, **Westport National Bank, a division of Connecticut Community Bank, N.A.**, hereby withdraws its Customer Claim No. **005309** for Account No. **1-W0106-3-0**, filed with Irving H. Picard, the Trustee for the liquidation of Bernard L. Madoff Investment Securities LLC.

Dated: November ___, 2014

                                       _____
                                       Westport National Bank, a division of
                                       Connecticut Community Bank
                                       1495 Post Road East
                                       Westport, CT 06880