1   UNITED STATES BANKRUPTCY COURT

2   SOUTHERN DISTRICT OF NEW YORK

3   Case No. 08-01789-smb

4   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

5   In the Matter of:

6   SECURITIES INVESTOR PROTECTION CORPORATION,

7            Plaintiff,

8   v.

9

10  BERNARD L. MADOFF INVESTMENT SECURITIES,

11           Defendant,

12  - - - - - - - - - - - - - - - - - - - - - - - - - - - x

13

14               United States Bankruptcy Court

15               One Bowling Green

16               New York, New York

17

18               August 19, 2014

19               10:13 a.m.

20

21

22  B E F O R E :

23  HON STUART M. BERNSTEIN

24  U.S. BANKRUPTCY JUDGE

25

Page 2

1    Application for Interim Professional Compensation /

2    Fifteenth Application of Trustee and Baker & Hostetler, LLP

3    for Allowance of Interim Compensation for Services Rendered

4    and Reimbursement of Actual and Necessary Expenses Incurred

5    from December 1,2013 through March 31, 2014 for Baker &

6    Hostetler, LLP, Trustee's Attorney, period: 12/1/2013 to

7    3/31/2014, fee: $37,263,719.70, expenses: $483,802.57.

8

9    Application for Interim Professional Compensation /

10   Application of Schiltz & Schiltz as Special Counsel to the

11   Trustee for Allowance of Interim Compensation for Services

12   Rendered and Reimbursement of Actual and Necessary Expenses

13   Incurred from December 1,2013 through March 31, 2014 for

14   Schiltz & Schiltz, Special Counsel, period: 12/1/2013 to

15   3/31/2014, fee: $19,227.07, expenses: $1,249.77.

16

17   Application for Interim Professional Compensation /

18   Application of Higgs & Johnson (formerly Higgs, Johnson,

19   Truman, Bodden & Co.) as Special Counsel to the Trustee for

20   Allowance of Interim Compensation for Services Rendered and

21   Reimbursement of Actual and Necessary Expenses Incurred from

22   December 1,2013 through March 31, 2014 for Higgs & Johnson,

23   Special Counsel, period: 12/1/2013 to 3/31/2014, fee:

24   $20,660.40, expenses: $947.28.

25

1    Application for Interim Professional Compensation /

2    Application of Soroker - Agmon as Special Counsel to the

3    Trustee for Allowance of Interim Compensation for Services

4    Rendered and Reimbursement of Actual and Necessary Expenses

5    Incurred from December 1,2013 through March 31, 2014 for

6    Soroker - Agmon, Special Counsel, period: 12/1/2013 to

7    3/31/2014, fee: $74,590.31, expenses: $198.24.

8

9    Application for Interim Professional Compensation /

10   Application of Graf & Pitkowitz Rechtsanwalte GmbH as

11   Special Counsel to the Trustee for Allowance of Interim

12   Compensation for Services Rendered and Reimbursement of

13   Actual and Necessary Expenses Incurred from December 1,2013

14   through March 31, 2014 for Graf & Pitkowitz Rechtsanwalte

15   GmbH, Special Counsel, period: 12/1/2013 to 3/31/2014, fee:

16   $247,918.78, expenses: $2,354.59.

17

18   Application for Interim Professional Compensation /

19   Application of SCA Creque as Special Counsel to the Trustee

20   for Allowance of Interim Compensation for Services Rendered

21   and Reimbursement of Actual and Necessary Expenses Incurred

22   from December 1,2013 through March 31, 2014 for SCA Creque,

23   Special Counsel, period: 12/1/2013 to 3/31/2014, fee:

24   $55,421.68, expenses: $305.00

25

Page 4

1   Application for Interim Professional Compensation /

2   Fourteenth Application of Windels Marx Lane & Mittendorf,

3   LLP for Allowance of Interim Compensation for Services

4   Rendered and Reimbursement of Actual and Necessary Expenses

5   Incurred from December 1,2013 through March 31, 2014 for

6   Windels Marx Lane & Mittendorf, LLP, Special Counsel,

7   period: 12/1/2013 to 3/31/2014, fee: $2,466,299.50,

8   expenses: $11,208.71.

9

10  Application for Interim Professional Compensation /

11  Application of Young, Conaway, Stargatt & Taylor, LLP as

12  Special Counsel to the Trustee for Allowance of Interim

13  Compensation for Services Rendered and Reimbursement of

14  Actual and Necessary Expenses Incurred from December 1,2013

15  through March 31, 2014 for Young, Conaway, Stargatt &

16  Taylor, LLP, Special Counsel, period: 12/1/2013 to

17  3/31/2014, fee: $16,626.15, expenses: $148.95.

18

19  Application for Interim Professional Compensation /

20  Application of Williams, Barristers & Attorneys as Special

21  Counsel to the Trustee for Allowance of Interim Compensation

22  for Services Rendered and Reimbursement of Actual and

23  Necessary Expenses Incurred from December 1,2013 through

24  March 31, 2014 for Williams, Barristers & Attorneys, Special

25  Counsel, period: 12/1/2013 to 3/31/2014, fee: $274,485.91.

Page 5

1    Application for Interim Professional Compensation /

2    Application of Taylor Wessing as Special Counsel to the

3    Trustee for Allowance of Interim Compensation for Services

4    Rendered and Reimbursement of Actual and Necessary Expenses

5    Incurred from December 1,2013 through March 31, 2014 for

6    Taylor Wessing, Special Counsel, period: 12/1/2013 to

7    3/31/2014, fee: $129,484.15, expenses: $338,251.44.

8

9    Application for Interim Professional Compensation /

10   Application of UGGC & Associes as Special Counsel to the

11   Trustee for Allowance of Interim Compensation for Services

12   Rendered and Reimbursement of Actual and Necessary Expenses

13   Incurred from December 1,2013 through March 31, 2014 for

14   UGGC & Associes, Special Counsel, period: 12/1/2013 to

15   3/31/2014, fee: $131,203.09, expenses: $2,501.27.

16

17   Application for Interim Professional Compensation /

18   Application of Triay Stagnetto Neish as Special Counsel to

19   the Trustee for Allowance of Interim Compensation for

20   Services Rendered and Reimbursement of Actual and Necessary

21   Expenses Incurred from December 1,2013 through March 31,

22   2014 for Triay Stagnetto Neish, Special Counsel, period:

23   12/1/2013 to 3/31/2014, fee: $206,277.03, expenses:

24   $6,616.02.

25

Page 6

1    Application for Interim Professional Compensation /

2    Application of Werder Vigano as Special Counsel to the

3    Trustee for Allowance of Interim Compensation for Services

4    Rendered and Reimbursement of Actual and Necessary Expenses

5    Incurred from December 1,2013 through March 31, 2014 for

6    Werder Vigano, Special Counsel, period: 12/1/2013 to

7    3/31/2014, fee: $4,850.46, expenses: $0.

8

9    Application for Final Professional Compensation /

10   Application of Greenfield Stein & Senior, LLP as Special

11   Counsel to the Trustee for Allowance of Interim Compensation

12   for Services Rendered and Reimbursement of Actual and

13   Necessary Expenses Incurred from December 1,2013 through

14   June 10, 2014 as well as Reimbursement of Fees Previously

15   Held Back by SIPC for Greenfield Stein & Senior, LLP,

16   Special Counsel, period: 12/1/2013 to 6/10/2014, fee:

17   $4,927.05, expenses: $0.

18

19   Application for Interim Professional Compensation /

20   Application of Browne Jacobson, LLP as Special Counsel to

21   the Trustee for Allowance of Interim Compensation for

22   Services Rendered and Reimbursement of Actual and Necessary

23   Expenses Incurred December 1,2013 through March 31, 2014 for

24   Browne Jacobson, LLP, Special Counsel, period: 12/1/2013 to

25   3/31/2014, fee: $294,523.70, expenses: $544,410.59.

Page 7

1    Application for Interim Professional Compensation /

2    Application of Eugene F. Collins as Special Counsel to the

3    Trustee for Allowance of Interim Compensation for Services

4    Rendered and Reimbursement of Actual and Necessary Expenses

5    Incurred from December 1,2013 through March 31, 2014 for

6    Eugene F. Collins, Special Counsel, period: 12/1/2013 to

7    3/31/2014, fee: $3,858.22, expenses: $0.

8

9    Application for Interim Professional Compensation /

10   Application of Ritter & Ritter Advokatur as Special Counsel

11   to the Trustee for Allowance of Interim Compensation for

12   Services Rendered and Reimbursement of Actual and Necessary

13   Expenses Incurred from December 1,2013 through March 31,

14   2014 for Ritter & Ritter Advokatur, Special Counsel, period:

15   12/1/2013 to 3/31/2014, fee: $7,715.86, expenses: $1,087.20.

16

17   Application for Interim Professional Compensation /

18   Application of Munari Giudici Maniglio Panfili E Associati

19   as Special Counsel to the Trustee for Allowance of Interim

20   Compensation for Services Rendered and Reimbursement of

21   Actual and Necessary Expenses Incurred from December 1,2013

22   through March 31, 2014 for Munari Giudici Maniglio Panfili E

23   Associati, Special Counsel, period: 12/1/2013 to 3/31/2014,

24   fee: $4,292.59, expenses: $0.

25

1    Application for Interim Professional Compensation /

2    Application of Kelley, Wolter & Scott, P.A. as Special

3    Counsel to the Trustee for Allowance of Interim Compensation

4    for Services Rendered and Reimbursement of Actual and

5    Necessary Expenses Incurred from December 1,2013 through

6    March 31, 2014 for Kelley, Wolter & Scott, P.A., Special

7    Counsel, period: 12/1/2013 to 3/31/2014, fee: $7,841.24,

8    expenses: $126.00.

9

10   Application for Interim Professional Compensation /

11   Application of Bedell Cristin Guernsey Partnership as

12   Special Counsel to the Trustee for Allowance of Interim

13   Compensation for Services Rendered and Reimbursement of

14   Actual and Necessary Expenses Incurred from December 1,2013

15   through March 31, 2014 for Bedell Cristin Guernsey

16   Partnership, Special Counsel, period: 12/1/2013 to

17   3/31/2014, fee: $27,771.00, expenses: $0.

18

19

20

21

22

23

24

25   Transcribed by:  Sherri L. Breach, CERT*D-397

1   A P P E A R A N C E S :

2   BAKER HOSTETLER

3        Attorneys for Trustee, Irving Picard

4        45 Rockefeller Plaza

5        New York, New York 10111

6

7   BY:   IRVING H. PICARD, ESQ.

8        DAVID J. SHEEHAN, ESQ.

9

10  SECURITIES INVESTOR PROTECTION CORPORATION

11        Attorneys for SIPC

12        805 15th Street NW, Suite 800

13        Washington, D.C. 20005

14

15  BY:   KEVIN H. BELL, ESQ.

16

17  WINDELS MARX LANE & MITTENDORF, LLP

18        Special Counsel

19        156 West 56th Street

20        New York, New York 10019

21

22  BY:   ALAN NISSELSON, ESQ.

23

24

25

Page 10

1    UNITED STATES DEPARTMENT OF JUSTICE

2         Attorney for the U.S. Trustee

3         201 Varick Street, Room 1006

4         New York, NY 10014

5

6    BY:   ANDREA B. SCHWARTZ, ESQ.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                   P R O C E E D I N G S

2          THE COURT:  Madoff.

3       (Pause)

4          MR. SHEEHAN:  Good morning, Your Honor.

5          THE COURT:  Good morning.

6          MR. SHEEHAN:  David Sheehan from Baker Hostetler

7    for the Trustee, Irving Picard.

8             As Your Honor knows this is the fifteenth interim

9    fee application of the trustee, his counsel, the conflicts

10   counsel retained by the trustee, and an assorted array of

11   foreign counsel also retained by the trustee in this matter.

12            There have been no objections filed to any of

13   these applications, Your Honor, and I -- as I have in the

14   past I was going to just quickly summarize some events that

15   have transpired during the reporting period, just inform the

16   Court as to why these counsel were retained and in what

17   capacity they've performed their services.

18            THE COURT:  Just a minute.

19            Hold it down back there.

20            Go ahead.  I'm sorry.

21            MR. SHEEHAN:  Yes, Your Honor.

22            The -- I'm not going to go through all of them as

23   I did the last time because many of them have ten hours or

24   less, very little activity, but some had more than that.

25   And if I could I'll start with Schiltz & Schiltz, which is

Page 12

1    located in Luxembourg.

2             Your Honor may recall that's the case that was

3    started by investors in Luxembourg where they've actually

4    named Mr. Picard as a party.  We have -- had some motion

5    practice there, some of it successful, some of it not,

6    working with Schiltz & Schiltz.  But Mr. Picard is still a

7    party to that action.  We think we've worked out a result

8    there that no matter what happens, at best what they will

9    obtain is a general creditor claim which in this particular

10   instance -- against the estate and not against, obviously,

11   Mr. Picard because he is sued in his capacity as trustee.

12             That result, we think, is a good one.  It's

13   actually, I think, been approved already at some time in the

14   past.  But in any event, that's what we -- they've been

15   working on in that particular case.

16             Higgs & Johnson is located in Bermuda.  Bermuda is

17   the Kingate case.  That's what principally occupies his

18   time.  I should comment on one thing in particular here.

19   There was a recent decision that, you know, shows that

20   there's some -- there will be some difficulty, you know,

21   proving the actual intent with regard to this.

22             I wanted the Court to know that with regard to the

23   two-year number, in almost all of these cases there's a

24   significant amount of money involving all of the funds in

25   which the -- you know, Your Honor did sustain the two-year

1    pleadings of the trustee.  They aggregate over $4 billion

2    and, in particular, in this case, for example, they're over

3    $400 million.

4            So each of those cases -- and I want Your Honor

5    just to be aware of that -- the fact that we're spending the

6    time and money on them is because they really have value

7    well beyond the -- you know, even including the two to six-

8    year period.  The two to six-year period is about $6

9    billion, but there's still 4 billion left that we will be

10   suing them for.

11           The firm in Higgs & Johnson works in Bermuda on

12   the Kingate Management Limited matter.  That was a creation

13   of Ceretti & Grosso, the founders of the Kingate empire as

14   we call it.  And that was the administrator, supposedly, of

15   the funds.  They are engaged in litigation with all

16   liquidators of the funds themselves, global and Euro, which

17   are actually BVI, and I'll talk about them in a minute.

18           So we have two contending litigations which we're

19   going to bring to Your Honor in the form of an injunction.

20   But, again, because of some recent actions by the Second

21   Circuit we've withdrawn that application as Your Honor is

22   aware.

23           In any event, that action was preceding.  They

24   were actively monitoring it and engaged in that action.

25   That's why Higgs & Johnson has the bills it has for the

Page 14

1    reporting period.

2         Soroker - Agmon, again, Your Honor has some

3    familiarity with this somewhat tangentially through the

4    recent Apfelbaum application.  But this involves Magnify,

5    Inc., the investment of $130 million of fictitious profits

6    in Israel through the instrument of Magnify, Inc. created by

7    Albert Igoin who was related to Mr. Apfelbaum as Your Honor

8    knows.

9         We are investigating that and have started an

10   action through the Israeli receivership of the Te Yeshaya

11   Horowitz Foundation, which was an instrumentality created by

12   Magnified to funnel money to various entities throughout

13   Israel.  That investigation is ongoing.  Israeli law isn't

14   U.S. law.  We've found that in many of our jurisdiction that

15   we -- and we're learning more and more about them in light

16   of the recent Morrison decision by Judge Rakoff.

17        And that's another thing that all these firms are

18   now doing is because of the instruction by Judge Rakoff

19   we're looking at the foreign law of each of these

20   jurisdiction where we have filed protective actions many,

21   many years ago.  The thought was always that they would be

22   tried here and hopefully they all will be at some point when

23   that all gets resolved.

24        But in the interim, Judge Rakoff has instructed us

25   to look at foreign law and the commodity issues that may be

Page 15

1    associated with that, and whether there is a conflict or a

2    false conflict.  If so, and there is a conflict, where

3    should it be tried and whether that case should be tried in

4    the United Kingdom, Israel or elsewhere.

5           Again, Magnify $130 million, certainly worth the

6    effort to try to return those monies to the estate,

7    particularly when we're talking about fictitious profits.

8           Then we have Graf & Pitkowitz.  They're our firm

9    in Austria.  We've had a long-standing relationship with

10   them.  The most fruitful effort there has been through the

11   obtaining of documents.  As I've explained before, we can

12   actually participate.  We are to a claimant.  We are a

13   participant in the proceedings.  Mr. Picard, in his capacity

14   as trustee is a victim under Austrian law.  He can,

15   therefore, get access to all the documents and transcripts

16   that are -- that the prosecutor has been assembling over

17   there, and we have access to those and continue to do that

18   on a regular basis.

19          Williams Barristers is also located in Bermuda and

20   assists us with regard to the Kingate matter, and I think I

21   have one or two more.

22          Yes.  Taylor Wessing is wrapping up, as Your Honor

23   is also aware from a recent application, we had a trial take

24   place in London.  You may not have looked at that particular

25   application --

Page 16

1            THE COURT:  I did.

2            MR. SHEEHAN:  -- yet.  I'm -- knowing who you are

3    I thought you did.

4            But in any event, I -- I meant that as a

5    compliment.

6            THE COURT:  Thank you.

7            MR. SHEEHAN:  In any event, the bottom line is, is

8    that we had an action there.  Obviously, when you lose in

9    the United Kingdom you pay costs.  We've been litigating

10   those costs.  That's the work that Taylor Wessing has been

11   doing for us.

12           Then we have Gibraltar.  Gibraltar is Triay

13   Stagnetto & Neish, and what they're involved in is this.

14   This is a case that started very, very early and I talked

15   about it with Your Honor before.  And that is in connection

16   with a transaction of $150 million of fictitious profits

17   that traveled over to Gibraltar.

18           This will certainly involve 550 and the subsequent

19   transferee issue just recently addressed by Judge Rakoff.

20   It would also involve the fact that there's $61 million that

21   originally was in Gibraltar and which we froze and then is

22   now here and which we believe will then be the subject of an

23   action to return to Gibraltar based on the recent 550

24   decision.

25           So needless to say, the active -- activities of

Page 17

1    our foreign counsel there have been focused on the recent

2    decision by Judge Rakoff and the activities that we've been

3    engaging in is to protect our access to those funds.

4            Browne and Jacobson, probably the largest

5    application that we have here this morning.  Browne and

6    Jacobson is our United Kingdom counsel in connection with

7    the Kingate matter.  As Your Honor knows, or as I just

8    reported, we did file a bill of particulars which is what a

9    complaint is called in the United Kingdom back in 2010.

10           In light of the recent decisions by this Court as

11   well as by the Second Circuit and Judge Rakoff we are in the

12   midst of refining that bill of particulars and amending it

13   to try to comport with the requirements enunciated in those

14   decisions.  They're working very closely with us on that as

15   well as reviewing all of the other actions in which there is

16   relationship, too.

17           As Your Honor knows there is relationship among

18   most of these entities.  They don't just stand alone.  So

19   we're working in terms of trying to bring together the

20   various parts of that through Browne and Jacobson to bring

21   that complaint.  It will probably be filed in the next

22   couple of months, or a bill of particulars as they call it

23   there.

24           And that may be it for the foreigners.  Yes.

25           There are many others, as Your Honor knows.

Page 18

1  There's over 20 foreign law firms that are engaged here.

2  The trustee actually participates in about 30 foreign

3  jurisdictions, not all of which we're represented in, but

4  which we monitor.

5       In addition to that, of course, we have our

6  conflict counsel.  The first and foremost of them is Windels

7  Marx who has been with us almost from the outset beginning

8  when they were -- when Mr. Nisselson was appointed as the

9  Chapter 7 trustee for Bernard Madoff, and we then

10  consolidated those matters and he continued in that role and

11  we retained Windels Marx to handle matters which we had

12  conflicts with which were several at the time.

13       And because of this period of work done by

14  Windels, they've actually taken on matters in which there

15  was no conflict, but because of the volume of the work

16  they've taken those over.

17       Windels, being the major firm that it is, also has

18  had conflicts so Young, Conaway has been brought in as a

19  second conflicts counsel that works for us.

20       And then on top of that we have -- unfortunately

21  in this case we have many people passing away.  And so what

22  we have is estate counsel.  There we had Greenfield and

23  Stein.  The needs of that case grew beyond their capacity.

24  This will be their final fee application and recently, with

25  this Court's permission, we hired Coie & Walford (ph) who is

1    now our estate counsel in the case.

2          All of those counsel that I've outlined here

3    today, including, obviously, the trustee and Baker, have

4    filed applications here before Your Honor.  Your Honor, I

5    know, is familiar with them.  I'm not going to go through

6    those in any more detail.

7          And since there are no objections I would ask that

8    an order be entered approving those applications.

9          THE COURT:  Let me hear from SIPC.

10         MR. BELL:  Good morning, Your Honor.  Kevin Bell

11    on behalf of the Securities Investor Protection Corporation.

12         The statutory provision is at 15 United States

13    Code 78eee(b)(5)(C).  At paragraph 248 of the trustee's

14    application he states he's determined there's no reasonable

15    expectation that the general estate will be sufficient to

16    make a distribution to general creditors or pay

17    administrative expenses.

18         SIPC Has reviewed thoroughly that statement and

19    concurs at this time in that determination by the trustee.

20    We are always hopeful that this estate will pay out 100

21    percent and pay SIPC back all its administrative expenses.

22    And that possibility still exists even in light of all of

23    the recent decisions.

24         SIPC's review of the 15 foreign counsel

25    applications, trustee and Baker Hostetler, Windels Marx,

1    Young Conaway, Kelley and Greenfield has been thorough.  We

2    review each and every invoice item.  We make comments, get

3    reactions, and make further comments before we put before

4    the Court our recommendation.

5              I would call the Court's attention to three of our

6    recommendations.  One would be Greenfield where the

7    recommendation is about the compensation period, which for

8    Greenfield extends to June 10th of this year, and it is the

9    eighth and final so it is not -- it is -- there is no

10   holdback for the compensation period at issue.  And there is

11   a recommendation by SIPC that the 20 percent held back

12   previously in an amount of $9,000 plus be granted to

13   Greenfield and their services are at an end.

14             As to Windels Marx, if the Court would look at

15   paragraph 3 of SIPC's recommendation, you will see the

16   reductions that have occurred after the dialogue with

17   Windels Marx.  Something in the range of all counsel have a

18   ten percent reduction in their regular rates which is what

19   SIPC requested strongly in the beginning of the engagement

20   and there is -- have been additional reductions that

21   aggregate about 15.41 percent of Windels Marx's asserted

22   value.

23             Baker, at paragraph 5 of SIPC's recommendation has

24   reductions aggregating in the millions, which is about a

25   reduction, including the 10 percent of 14.7.

Page 21

```
 1              I note this to the Court because there is

 2    responsibility placed on the Securities Investor Protection

 3    Corporation because of that statutory provision and SIPC

 4    wants to assure the Court that we have extremely, thoroughly

 5    and comprehensively reviewed these applications.  And our

 6    recommendations are that as the applications sit before the

 7    Court that we would ask the Court to approve them, and SIPC

 8    will make the appropriate advances to the trustee to pay

 9    these compensation requests if the Court so orders.

10              HE COURT:  What have been the prior holdbacks for

11    the interim applications?

12              MR. BELL:  For the?

13              THE COURT:  Interim applications.

14              MR. BELL:  For the interim?

15              THE COURT:  What have the holdbacks been in the

16    past?

17              MR. BELL:  The holdbacks are at 20 percent.

18              THE COURT:  Twenty percent.

19              MR. BELL:  So Baker is -- and Windels are at ten

20    percent, and that's been the standard for Windels and Baker

21    because the dollars are in ten hundreds of millions for --

22    tens of millions for Windels and hundreds of millions of

23    dollars for Baker.  And we -- we came before Judge Lifland

24    at prior points and he granted the reduction from 20 to ten

25    percent holdback.  Everybody else is at 20 percent.
```

1            THE COURT:  All right.  And Greenfield is the only

2    final --

3            MR. BELL:  Greenfield --

4            THE COURT:  -- application.

5            MR. BELL:  -- is the only final one at this time.

6            THE COURT:  All right.  Thank you.

7            Does anyone else want to be heard in connection

8    with the fee applications?

9            The record should reflect there's no response.

10            In light of the representation that -- with which

11    SIPC agrees that the estate is insolvent and in light of

12    SIPC's recommendation I'll approve the fee applications in

13    the amounts recommended by SIPC as to the final -- subject

14    to the holdbacks that we've been traditionally using.

15            And in Greenfield's application, it's a final

16    application so there will be no holdback and I'll award the

17    prior holdbacks.

18            You can submit an appropriate order.

19            MR. SHEEHAN:  Thank you very much, Your Honor.

20        (Whereupon these proceedings concluded at 10:28 AM)

21

22

23

24

25

Page 23

1                          I N D E X

2                            RULINGS

3                                        Page        Line

4    Interim Fee Application of

5    Baker & Hostetler, LLP                22          10

6

7    Interim Fee Application of

8    Schiltz & Schiltz, LLP                22          10

9

10   Interim Fee Application of

11   Higgs & Johnson                       22          10

12

13   Interim Fee Application of

14   Soroker - Agmon                       22          10

15

16   Interim Fee Application of

17   Graf & Pitkowitz                      22          10

18

19   Interim Fee Application of

20   Williams, Barristers & Attorneys      22          10

21

22   Interim Fee Application of

23   Taylor Wessing                        22          10

24

25

```
 1                    I N D E X

 2                     RULINGS

 3                                     Page      Line

 4   Interim Fee Application of

 5   Triay Stagnetto Neish              22         10

 6

 7   Interim Fee Application of

 8   Browne Jacobson, LLP               22         10

 9

10   Interim Fee Application of

11   Windels Marx Lane & Mittendorf, LLP  22       10

12

13   Interim Fee Application of

14   Young, Conaway, Stargatt & Taylor, LLP  22    10

15

16   Final Fee Application of

17   Greenfield Stein & Senior          22         10

18

19

20

21

22

23

24

25
```

Page 25

1                    C E R T I F I C A T I O N

2

3    I, Sherri L. Breach, CERT*D-397, certified that the

4    foregoing transcript is a true and accurate record of the

5    proceedings.

6

7    Sherri L        Digitally signed by Sherri L Breach
                     DN: cn=Sherri L Breach, o, ou,
                     email=digital1@veritext.com,
     Breach          c=US
8                    Date: 2014.11.11 17:21:58 -05'00'

9    SHERRI L. BREACH

10   AAERT Certified Electronic Reporter & Transcriber

11   CERT*D-397

12

13   Veritext

14   330 Old Country Road

15   Suite 300

16   Mineola, New York 11501

17

18   DATE:  August 21, 2014

19

20

21

22

23

24

25