

# PRYOR CASHMAN LLP

New York | Los Angeles

7 Times Square, New York, NY 10036   Tel: 212-421-4100   Fax: 212-326-0806                    www.pryorcashman.com

**Richard Levy, Jr.**
Partner

Direct Tel: 212-326-0886
Direct Fax: 212-798-6393
rlevy@pryorcashman.com

December 10, 2014

**By ECF, and Chambers' Email**

Hon. Stuart M. Bernstein, U.S.B.J.
United States Bankruptcy Court for the
  Southern District of New York
One Bowling Green
New York, New York 10004

      Re:   *Securities Investor Protection Corporation v. Bernard L.
                Madoff Investment Securities LLC*, Adv. No. 08-1789 (SMB)

Dear Judge Bernstein:

      As counsel for various defendants whose motions to dismiss numerous avoidance actions brought by the Trustee (the "Motions") were heard by your Honor on September 17, 2014, we write to submit a recent Second Circuit decision, *Picard v. Ida Fishman Revocable Trust (In re Bernard L. Madoff Inv. Secs. LLP)*, No. 12-2557, 2014 U.S. App. Lexis 23032 (2d Cir. Dec. 8, 2014) (the "Opinion" (copy enclosed as Exh. A)), that bears directly upon the Motions. Critical portions of the Second Circuit's reasoning undercut the foundation of the District Court's prior Antecedent Debt Decisions and directly support defendants' position that Section 548(c) of the Bankruptcy Code provides a valid value defense to the Trustee's avoidance claims. Indeed, under the Second Circuit's reasoning, the satisfaction of antecedent debts and obligations of the transferor under the circumstances of the parties' broker-customer relationship may operate as a complete defense in many avoidance actions.

      Because of the significance of the Second Circuit's rationale as it relates to this defense, we quote at length from the relevant parts of the Opinion, in which the Second Circuit affirmed the District Court's earlier determination that Section 546(e) of the Bankruptcy Code applies to Madoff Securities' transfers to its customers.

      *First*, the Second Circuit held that customer withdrawals from Madoff Securities accounts were settlement payments within the meaning of Section 546(e), and that those payments satisfied contractual obligations of Madoff Securities to its customers. The inescapable corollary is that each time an innocent customer withdrew funds from a Madoff Securities account, value was exchanged between the parties for purposes of the Section 548(c)

**PRYOR CASHMAN LLP**

Hon. Stuart M. Bernstein, U.S.B.J.
December 10, 2014
Page 2

defense, because the payment could not be a settlement payment without the existence of a broker/customer relationship and its associated contractual and legal obligations:

> Each time a customer requested a withdrawal from BLMIS, he or she intended that BLMIS dispose of securities and remit payment to the customer.  *See* N.Y.U.C.C. § 8-501(b)(1) & cmt. 2 (broker's written crediting of securities to a customer's account creates an enforceable securities entitlement).  The statutory definition and *Enron* [651 F.3d at 334] compel the conclusion that, for example, if I instruct my broker to sell my shares of ABC Corporation and remit the cash, that payment is a "settlement" even if the broker may have failed to execute the trade and sent me cash stolen from another client.  As the district court correctly concluded, because the customer granted BLMIS discretion to liquidate securities in their accounts to the extent necessary to implement their sell orders or withdrawal requests, each transfer in respect of a [*sic*] such an order or request constituted a settlement payment.

Opinion, at 23-24.

The Court's citation to Article 8 of the New York Uniform Commercial Code demonstrates its recognition that the securities entitlements arising in favor of a broker's customer are valid obligations under New York law.  Thus, in the context of a defense to a fraudulent transfer claim, the broker's payments to the customers (*i.e.*, the transfers at issue) in satisfaction of these legal obligations constitute value, as detailed in the Motions.  Indeed, as the Opinion also notes, "the Account Documents obligate BLMIS to reimburse its customers upon a request for withdrawal."  Opinion, at 16.  The Second Circuit's Opinion clearly supports defendants' position that the District Court's prior rulings denying the customers a value defense to the Trustee's claims based on their state law rights and entitlements are no longer good law, and can no longer be relied upon.

*Second*, and equally important, the Second Circuit reinforced the clear distinction between the treatment of the Trustee's avoidance claims under the Bankruptcy Code and proper standards for determination of net equity claims under SIPA under the Court's earlier "Net Equity Decision" (*In re Bernard L. Madoff Inv. Secs. LLC*, 654 F.3d 229 (2d Cir. 2011)).  In so doing, the Opinion confirms that the Section 548(c) value defense should apply to these avoidance actions just as in any other bankruptcy avoidance proceedings, rather than be disregarded under color of SIPA, and that the *Net Equity* decision does not control this issue:

> In our earlier decision, we interpreted "net equity" in a manner that would harmonize it with the SIPA statutory framework as a whole.  *See In re BLMIS*, 654 F.3d at 237.  Section 546(e), however, is part of the Bankruptcy Code, not SIPA, and was not in issue in *In re BLMIS*.  This is important because, in

**PRYOR CASHMAN LLP**

Hon. Stuart M. Bernstein, U.S.B.J.
December 10, 2014
Page 3

>enacting the Bankruptcy Code, Congress struck careful balances between the need for an equitable result for the debtor and its creditors, and the need for finality…. For example, a bankruptcy trustee can recover fraudulent transfers under § 548(a)(1) only when the transfers took place within two years of the petition date. And avoidance claims must be brought "two years after the entry of the order for relief" at the latest. 11 U.S.C. § 546(a). These statutes of limitations reflect that, at a certain point, the need for finality is paramount even in light of countervailing equity considerations. Similarly, by enacting § 546(e), Congress provided that, for a very broad range of securities-related transfers, the interest in finality is sufficiently important that they cannot be avoided by a bankruptcy trustee at all, except as actual fraudulent transfers under § 548(a)(1)(A). We are obliged to respect the balance Congress struck among these complex competing considerations.

Opinion, at 24 (citation omitted).

The Second Circuit's express recognition of the statutory distinction between the operation of SIPA provisions addressing customer net equity claims and Bankruptcy Code provisions addressing the avoidance of transfers means that the District Court's rejection of the statutory value defense, based on its view of the SIPA priority for customer claims, is no longer tenable. Accordingly, SIPA does not provide any basis to limit the value defense in Section 548(c) of the Bankruptcy Code.

The Opinion emphasizes that "[t]he clawback defendants, having every reason to believe that BLMIS was actually engaged in the business of effecting securities transactions, have every right to avail themselves of all the protections afforded to the clients of stockbrokers, *including* the protection offered by § 546(e)." Opinion, at 18-19 (emphasis added). The Antecedent Debt Decisions, which purport to limit the customer's statutory defense in derogation of the rights and entitlements conferred by non-bankruptcy statutory and common law, are no longer good law in this Circuit.

For the reasons set forth above, and in the motion papers, oral arguments and letters submitted to the Court, the Motions should be granted.

Respectfully,

PRYOR CASHMAN LLP

By: ___*/s/ Richard Levy, Jr.*___
Richard Levy, Jr.
Counsel for the Defendant-Movants
Represented by Pryor Cashman LLP

**PRYOR CASHMAN LLP**

Hon. Stuart M. Bernstein, U.S.B.J.
December 10, 2014
Page 4

                        DENTONS US LLP

                        By:    */s/ Carole Neville*
                               Carole Neville
                        Counsel for the Defendant-Movants
                        Represented by Dentons US LLP

                        MILBERG LLP

                        By:    */s/ Matthew A. Kupillas*
                               Matthew A. Kupillas
                        Counsel for the Defendant-Movants
                        Represented by Milberg LLP

Encl.
cc:   Nicholas Cremona, Esq., Baker & Hostetler LLP
       (by ECF and email)
     Kevin Bell, Esq., SIPC (by ECF and email)
     Counsel for All Other Parties to the Motions to
       Dismiss Heard on Sept. 17, 2014 (by ECF)