Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Email: dsheehan@bakerlaw.com
Jorian Rose
Email: jrose@bakerlaw.com
Nicholas J. Cremona
Email: ncremona@bakerlaw.com
Seanna R. Brown
Email:sbrown@bakerlaw.com
Bik Cheema
Email:bcheema@bakerlaw.com

Hearing Date: February 25, 2015
Hearing Time:  10:00 AM (EST)
Objection Deadline: January 23, 2015

*Attorneys for Irving H. Picard, Trustee*
*for the Substantively Consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities LLC*
*and Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (SMB) |
| Plaintiff-Applicant, | SIPA Liquidation |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |

**TRUSTEE'S MOTION AND MEMORANDUM TO AFFIRM
HIS DETERMINATIONS DENYING CLAIMS OF
CLAIMANTS HOLDING INTERESTS IN
S & P OR P & S ASSOCIATES, GENERAL PARTNERSHIPS**

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................. 1

FACTUAL SUMMARY ......................................................................................................... 2

PROCEDURAL HISTORY AND PRIOR CUSTOMER PROCEEDINGS ................................. 3

    A.    The Commencement of The SIPA Proceeding ..................................................... 3

    B.    The Customer Opinions ....................................................................................... 4

S&P AND P&S BACKGROUND ......................................................................................... 8

    A.    S&P and P&S Structure ....................................................................................... 8

    B.    The BLMIS Accounts ......................................................................................... 12

    C.    The Claims ........................................................................................................... 13

RELIEF REQUESTED ........................................................................................................... 14

ARGUMENT ......................................................................................................................... 14

CONCLUSION ....................................................................................................................... 19

# TABLE OF AUTHORITIES

**Cases**

*In re Adler, Coleman Clearing Corp.*,
216 B.R. 719 (Bankr. S.D.N.Y. 1998)......................................................................15

*Aozora Bank Ltd. v. Sec. Investor Prot. Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*,
480 B.R. 117 (S.D.N.Y. 2012)............................................................................4, 5

*Appleton v. First Nat'l Bank of Ohio*,
62 F.3d 791 (6th Cir. 1995) ...................................................................................15

*In re Beacon Assocs. Litig.*,
745 F. Supp. 2d 386 (S.D.N.Y. 2010)......................................................................3

*In re Bernard L. Madoff Inv. Sec. LLC*,
654 F.3d 229 (2d Cir. 2011), *reh'g and reh'g en banc denied,* (2d Cir. Nov. 08, 2011)
.................................................................................................................3, 5, 15, 16

*In re Klein, Maus & Shire, Inc.*,
301 B.R. 408 (Bankr. S.D.N.Y. 2003).....................................................................18

*Kruse v. Sec. Investor Prot. Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*,
708 F.3d 422 (2d Cir. 2013)............................................................................. *passim*

*In re Lehman Bros. Inc.*,
462 B.R. 53 (Bankr. S.D.N.Y. 2011)......................................................................15

*Mishkin v. Siclari (In re Adler, Coleman Clearing Corp.)*,
277 B.R. 520 (Bankr. S.D.N.Y. 2002).....................................................................18

*Ryan v. Picard*,
133 S. Ct. 24 (2012).................................................................................................3

*Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff)*,
515 B.R. 161 (Bankr. S.D.N.Y. 2014).......................................................8, 16, 18

*Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff Inv. Sec. LLC)*,
454 B.R. 285 (Bankr. S.D.N.Y. 2011)........................................................... *passim*

*Sec. Investor Prot. Corp. v. Jacqueline Green Rollover Account*,
Nos. 12 Civ. 1039(DLC), 12 Civ. 1139(DLC), 2012 WL 3042986 (S.D.N.Y. July 25, 2012)..............................................................................................6, 7

# TABLE OF AUTHORITIES

*Sec. Investor Prot. Corp. v. Morgan, Kennedy & Co.*
    533 F.2d 1314 (2d Cir. 1976), *cert. denied.* 426 U.S. 936 (1976) ....................................15, 16

*SEC v. Madoff,*
    No. 1:08-cv-10791-LLS, 2008 WL 5197070 (S.D.N.Y. filed Dec. 11, 2008) .........................3

*Stafford v. Giddens (In re New Times Sec. Servs., Inc.),*
    463 F.3d 125 (2d Cir. 2006)................................................................................5, 15, 18

*Sterling Equities Assocs. v. Picard,*
    132 S. Ct. 2712 (2012)................................................................................................3

*Velvel v. Picard,*
    133 S. Ct. 25 (2012)...................................................................................................3

**Statutes**

15 U.S.C.A. § 78*lll*(2) ....................................................................................... *passim*

15 U.S.C. § 78aaa *et seq.* ............................................................................................1

15 U.S.C. § 78eee(a)(4) ..............................................................................................3

15 U.S.C. § 78eee(b)(3) ..............................................................................................3

15 U.S.C. § 78fff-1(a) .................................................................................................3

15 U.S.C. § 78fff-2(b) ...............................................................................................15

15 U.S.C. § 78fff-3(a) .................................................................................................4

15 U.S.C. § 78*lll*(4)....................................................................................................4

15 U.S.C. § 78*lll*(11)..............................................................................................4, 10

15 U.S.C. § 78*lll*(14)................................................................................................10

1995 Fla. Laws 2190, § 25 ...........................................................................................9

Dodd-Frank Wall Street Reform and Consumer Protection Act. Pub. L. No. 111-
    203, § 983(b), 124 Stat. 1931 (2010) .....................................................................15

Fla. Stat. § 620.8201(1)................................................................................................9

Fla. Stat. § 620.8203 ...................................................................................................9

Fla. Stat. § 620.8501 ...............................................................................................9, 10

Fla. Stat. § 620.9901 ...................................................................................................9

## TABLE OF AUTHORITIES

**Rules**

Fed. R. Civ. P. 36(a)(3)...................................................................................................................18

**Other Authorities**

John W. Larson, *Florida's New Partnership Law: The Revised Uniform
Partnership Act and Limited Liability Partnerships*, 23 Fla. St. U. Law Rev.
201 (1995).........................................................................................................................................16

Irving H. Picard, as trustee ("Trustee") for the substantively consolidated liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15 U.S.C. § 78aaa *et seq.* ("SIPA"),[1] and the estate of Bernard L. Madoff ("Madoff") (collectively, "Debtor"), respectfully submits this combined motion and memorandum of law (the "Motion") to affirm the denial of the claims filed by claimants  (the "Objecting Claimants") who objected to the Trustee's determinations denying their claims that had direct or indirect partnership interests in one of two Florida general partnerships, S & P Associates, General Partnership ("S&P"), and P & S Associates, General Partnership ("P&S") and which are specifically identified in Exhibit 2 to the Declaration of Vineet Sehgal filed herewith.  This memorandum is based upon the law set forth below as well as the facts set forth in the accompanying declarations of Bik Cheema ("Cheema Decl.") and Vineet Sehgal ("Sehgal Decl.").

## PRELIMINARY STATEMENT

The Objecting Claimants seek customer status in this SIPA proceeding, despite the fact that they had no accounts in their respective names or any other direct relationship with BLMIS. Instead, they invested in one or both of two Florida partnerships, P&S or S&P.  P&S and S&P each had a BLMIS account and invested its own partnership assets with BLMIS.  P&S and S&P hold allowed customer claims in the BLMIS SIPA proceeding on which they have received and will continue to receive distributions from the Customer Fund.[2]

In this SIPA proceeding, courts have issued six decisions (collectively, the "Customer Decisions") resolving the issue of whether claimants who invested in entities that in turn invested

---

[1] *See* 15 U.S.C.A. § 78aaa et seq. (West 2009).  For convenience, subsequent references to sections of the Securities Investor Protection Act shall be denoted simply as "SIPA § __."

[2] *See* Sehgal Decl. ¶ 6.

with and had accounts at BLMIS are "customers" under SIPA.   In each of the Customer Decisions, the courts, including the Second Circuit and including this Court's most recent decision involving investors in four ERISA plans, determined that the claimants were not customers under SIPA under facts indistinguishable from those presented here.   The current Motion seeks to apply the Customer Decisions to the Objecting Claimants through entry of an order affirming the Trustee's denial of their claims, expunging their claims, and overruling the related claims objections.

## FACTUAL SUMMARY

The following summarizes facts relating to the claims at issue in the Motion; additional details are provided elsewhere in the Motion.  The Objecting Claimants, the 158 claims filed by them, and the objections to determination of those claims, are specifically identified in Exhibits 2 and 3 to the Sehgal Decl.[3]  The Objecting Claimants were either partners in P&S or S&P, or were investors in entities that were such partners, and none of the Objecting Claimants had a BLMIS account in his or her name.  The Trustee denied the claims of each of the Objecting Claimants on the grounds that they lacked accounts with BLMIS and, accordingly, were not customers of BLMIS.

In contrast, S&P did have an account in its name.  S&P's customer claim was allowed based upon the net equity value of its BLMIS account (number 1ZA874) and S&P has been

---

[3]Apart from the Objecting Claimants, whose customer claims arising from their interests in S&P and P&S are set out in Sehgal Decl. Exs. 2 and 3, there are 65 other S&P and P&S investors that have had their objections overruled. Their counsel included them as parties to the objections despite the fact that those parties never filed claims.  The Trustee brought two motions, Trustee's First Omnibus Motion Seeking to Expunge Objections by Parties That Did Not File Claims (ECF No. 4711) and Trustee's Second Omnibus Motion Seeking to Expunge Objections by Parties That Did Not File Claims (ECF No. 4712), to resolve their claims objections.  This Court granted the requested relief, and its orders were not appealed.  (ECF Nos. 4778, 4780).  Those parties are not included in the instant Motion.  Also, nine S&P or P&S related claimants have not been included who either did not file objections to determination or who subsequently withdrew them. This Motion seeks to resolve all remaining objections related to S&P and P&S.

receiving interim distributions on its allowed claim. P&S also had an account in its name. P&S's customer claim was allowed based upon the net equity value of its BLMIS account (number 1ZA873) and P&S has been receiving interim distributions on its claim.

## PROCEDURAL HISTORY AND PRIOR CUSTOMER PROCEEDINGS

### A.   The Commencement of The SIPA Proceeding

The basic facts of the Madoff fraud are widely known and have been recounted in numerous decisions. *See, e.g., In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d 229, 231 (2d Cir. 2011), *reh'g and reh'g en banc denied,* (2d Cir. Nov. 08, 2011), *cert. dismissed sub nom. Sterling Equities Assocs. v. Picard*, 132 S. Ct. 2712 (2012), *and cert. denied sub nom. Ryan v. Picard*, 133 S. Ct. 24 (2012), *Velvel v. Picard*, 133 S. Ct. 25 (2012); *In re Beacon Assocs. Litig.*, 745 F. Supp. 2d 386, 393–94 (S.D.N.Y. 2010). On December 11, 2008, the Securities and Exchange Commission ("SEC") filed a complaint in the District Court against Madoff and BLMIS, captioned *SEC v. Madoff*, No. 1:08-cv-10791-LLS, 2008 WL 5197070 (S.D.N.Y. filed Dec. 11, 2008), alleging fraud through the investment advisor activities of BLMIS. The SEC consented to the consolidation of its case with an application of the Securities Investor Protection Corporation ("SIPC"). Thereafter, SIPC filed an application under SIPA § 78eee(a)(4) alleging that because of its insolvency, BLMIS needed SIPA protection. The District Court appointed the Trustee under SIPA § 78eee(b)(3) and removed the proceeding to this Court under SIPA § 78eee(b)(4).

Under SIPA, the Trustee is responsible, among other things, for recovering and distributing customer property to a broker's customers, assessing claims, and liquidating other assets of the firm for the benefit of the estate and its creditors. A SIPA trustee has the general powers of a bankruptcy trustee, in addition to the powers granted by SIPA. SIPA § 78fff-1(a).

The statutory framework for the satisfaction of customer claims in a SIPA liquidation proceeding provides that "customers," as defined in SIPA § 78*lll*(2), share pro rata in "customer property," defined in SIPA § 78*lll*(4), to the extent of their "net equity," defined in SIPA § 78*lll*(11). For each customer with a valid net equity claim, if the customer's share of customer property does not make her whole, SIPC advances funds to the SIPA trustee up to the amount of the customer's net equity, not to exceed $500,000 (the amount applicable to this case). SIPA § 78fff-3(a).

On December 23, 2008, this Court entered a Claims Procedures Order. (ECF No. 12.) Pursuant to that order, the Trustee determines claims eligible for customer protection under SIPA, claimants may object to the Trustee's determination of a claim by filing an objection in this Court, and the Trustee requests a hearing date for the objection and notifies the objecting claimant thereof. *Id.*

**B.   The Customer Opinions**

The Trustee's first motion regarding the definition of "customer" under SIPA was the Trustee's Motion To Affirm Trustee's Determinations Denying Claims of Claimants Without BLMIS Accounts In Their Names, Namely, Investors in Feeder Funds, filed on June 11, 2010 (ECF No. 2416) (the "Initial Feeder Fund Motion"). The Initial Feeder Fund Motion addressed the objections to claims determinations of claimants who invested in 16 specified feeder funds that, in turn, had accounts with BLMIS. Prior to the hearing, the Court removed from the scope of the Initial Feeder Fund Motion the question of whether ERISA affects "customer" status under SIPA. On June 28, 2011, this Court issued its memorandum decision and order affirming the Trustee's denial of the claims. *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff Inv. Sec. LLC),* 454 B.R. 285 (Bankr. S.D.N.Y. 2011), *aff'd sub nom. Aozora Bank Ltd. v. Sec. Investor Prot. Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*, 480 B.R.

4

117 (S.D.N.Y. 2012), *aff'd sub nom. Kruse v. Sec. Investor Prot. Corp. (In re Bernard L. Madoff Inv. Sec. LLC),* 708 F.3d 422 (2d Cir. 2013).

The Court found that, in light of the plain language of SIPA and relevant case law, the claimants in the Initial Feeder Fund Motion did not qualify as "customers" under SIPA. *Id*. at 290. The Court found that the claimants invested in, not through, those feeder funds, and had no individual accounts at BLMIS. *Id.* at 297. It was the feeder funds that entrusted their monies with BLMIS for the purpose of trading or investing in securities—the touchstone of "customer" status—whereas the claimants purchased interests in the feeder funds. *Id*. at 299. The Court held that absent a direct relationship with BLMIS, the claimants sought a definition of "customer" that stretched the term beyond its limits. *Id.* at 302.

Certain claimants appealed this decision to the District Court. The District Court affirmed, extensively analyzing the statutory definition and holding that the claimants did not qualify as customers under the plain language of SIPA. *Aozora Bank Ltd.*, 480 B.R. 117 (S.D.N.Y. 2012).

On further appeal, the Second Circuit also affirmed, confirming that "[j]udicial interpretations of 'customer' status support a narrow interpretation of the SIPA's provisions." *Kruse*, 708 F.3d at 426 (citing *Stafford v. Giddens (In re New Times Sec. Servs., Inc.)*, 463 F.3d 125, 127 (2d Cir. 2006)). The Second Circuit held that "the critical aspect of the 'customer' definition" was "the entrustment of cash or securities to the broker-dealer for the purposes of trading securities." *Id.* at 426 (citing *In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d at 236.). The Second Circuit found that the claimants failed to meet this fundamental requirement because the money sent to BLMIS belonged to the feeder funds, not to the individual claimants, and the individual claimants therefore failed to establish that they had entrusted cash or securities to

BLMIS. *Kruse*, 708 F.3d at 427. The Second Circuit also found that the individual claimants did not exhibit other indicia of customer status in their dealings (or lack of dealings) with BLMIS, including that they did not exert any control over the accounts at issue and that they were not reflected in BLMIS records. *Id.* at 426-27.

While the appeals of the First Feeder Fund Decision were proceeding, the Trustee also filed a motion (the "ERISA Motion") to address arguments that were raised by claimants without BLMIS accounts who were benefit plans or benefit plan participants (collectively, the "ERISA Claimants") and who sought to use ERISA as a basis for determining their customer status. (ECF No. 4521.) The District Court withdrew the reference from the Bankruptcy Court and granted the ERISA Motion. *Sec. Investor Prot. Corp. v. Jacqueline Green Rollover Account*, Nos. 12 Civ. 1039(DLC), 12 Civ. 1139(DLC), 2012 WL 3042986 *3 (S.D.N.Y. July 25, 2012).

The District Court held that ERISA does not provide a basis for the allowance of claims of ERISA Claimants who lacked BLMIS accounts. It noted that the first two of the three ways to qualify as a "customer" under SIPA § 78*lll*(2), "presume that a customer must have a securities account with the debtor," and that the ERISA Claimants also did not qualify under the third method of having "deposited cash with the debtor for the purpose of purchasing securities." *Id.* at *4. That was so because "[n]one of the ERISA Plan Claimants owned any cash deposited with BLMIS. Rather, . . . in each case this cash was owned by the third-party entity in which the claimant invested, and which had a BLMIS account in its name." *Id.* at *5. Similarly, the individual ERISA Claimants "did not own any cash deposited with BLMIS because the assets of an ERISA-regulated plan are held and owned by the plan's trustees, not by its participants." *Id.* The District Court also rejected arguments that ERISA fiduciary responsibilities could suffice to create a "customer" relationship: "Without an account in his or her name with BLMIS or title to

6

any assets with BLMIS, a claimant cannot achieve customer status merely by virtue of having a fiduciary relationship with the debtor." *Id*. at *12. No appeal was taken of this decision.

On June 27, 2013, the Trustee filed the Trustee's Second Motion to Affirm Trustee's Determinations Denying Claims of Claimants Who Invested in Certain Feeder Funds and Did Not Have BLMIS Accounts in Their Names (together with supporting documents, ECF Nos. 5396, 5397, 5398, 5399, 5438, 5439; collectively, the "Second Feeder Fund Motion"). On August 21, 2013, the Court issued its Bench Memorandum Granting Trustee's Second Motion to Affirm Trustee's Determinations Denying Claims of Claimants Who Invested in Certain Feeder Funds and Did Not Have BLMIS Accounts in Their Names (ECF No. 5450) ("the Second Feeder Fund Decision"). That decision reaffirmed that "the burden is on the claimant to establish he is a 'customer' entitled to SIPA protection, and such a showing is not easily met." Second Feeder Fund Decision at 4 (quoting *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 454 B.R. at 294). Also, the Court determined that the claimants "fail[ed] to [meet their burden] because they lack any of the indicia of a 'customer' relationship with BLMIS." *Id.* In particular, "they had no securities accounts at BLMIS, were not known to BLMIS, lacked privity and any financial relationship with BLMIS, lacked property interest in any feeder fund account assets at BLMIS, entrusted no cash or securities to BLMIS, had no investment discretion over feeder fund assets invested with BLMIS, received no accounts statements or other communications from BLMIS and had no transactions reflected on the books and records at BLMIS." *Id.* The Second Feeder Fund Decision was not appealed.

On April 30, 2014, the Trustee filed Trustee's Motion And Memorandum To Affirm Trustee's Determination Denying Claims Of Claimants (the "Claimants") Who Invested In The Daprex, Felsen, Sterling, Or Orthopaedic ERISA Plans (ECF No. 6489). On August 22, 2014,

this Court issued its Memorandum Decision Granting Motion To Affirm Trustee's

Determinations Denying Claims Of Claimants Who Invested In Certain ERISA Plans. *Sec.*

*Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff)*, 515 B.R. 161

(Bankr. S.D.N.Y. 2014) [hereinafter, "*ERISA Claimant Decision*"].  In affirming the Trustee's

determinations, this Court concluded that "[t]he claimant has the burden to establish his status as

a 'customer'" and "not every victim of a broker-dealer's fraud is a 'customer.'" *Id.* at 166.  The

Court found that "to qualify as a 'person who has deposited cash with the debtor for the purpose

of purchasing securities,' . . . the party asserting that she was a BLMIS customer must show that

she entrusted her own assets directly through an account maintained in her own name rather than

indirectly through a fund that then entrusted the fund's assets through an account maintained in

the fund's name." *Id.* at 168 (internal citations omitted).  Moreover, even the fact that a claimant

exercised some control over her own investments in the fund or the fund's investments in

BLMIS is not sufficient to meet "the narrow definition of customer under SIPA." *Id.*

## S&P AND P&S BACKGROUND

A.    **S&P and P&S Structure**

The Objecting Claimants in this case invested in one or both of two related Florida

general partnerships, S&P and P&S.[4]  S&P was organized as a Florida General Partnership

pursuant to a Partnership Agreement dated December 11, 1992.[5]  It is legally governed by both

---

[4] Philip von Kahle has been appointed as a conservator over both S&P and P&S in Florida. *See* S&P GENERAL
PARTNERSHIP AND P&S PARTNERSHIP CONSERVATORSHIP IN THE CIRCUIT COURT OF THE SEVENTEENTH JUDICIAL
CIRCUIT, IN AND FOR BROWARD COUNTY, FLORIDA CASE NO. 12-24051 (07), www.floridaconservator.com (last
visited Dec. 9, 2014);  Conservator's Motion for Summary Judgment to: (i) Approve Determination of Claims, (ii)
Approve Plan of Distribution, and (iii) Establish Objection Procedure, Case No. 12-028324 (07) (Fla. Cir. Ct. filed
May 21, 2013), *available at* http://www.floridaconservator.com/wp-content/uploads/2013/03/05.21.13-
Conservators-Motion-to-Approve-Plan-of-Distribution-and-Establish-Objection-Procedure.pdf.

[5] *See* the S&P Amended and Restated Partnership Agreement, Cheema Decl. Ex.9, Sehgal Decl. Ex. 12, at the
recitals.

the Florida Revised Uniform Partnership Act of 1995 ("FRUPA"),[6] and by its own Amended and

Restated Partnership Agreement dated December 21, 1994 (the "S&P Partnership Agreement",

Cheema Decl. Ex.9, Sehgal Decl. Ex. 12).  P&S is a counterpart entity organized and amended

on the same dates as S&P.[7]  It, too, is governed by both FRUPA and its own virtually identical

Amended and Restated Partnership Agreement dated December 21, 1994 (the "P&S Partnership

Agreement", Cheema Decl. Ex.10, Sehgal Decl Ex.7) (together with the S&P Partnership

Agreement, the "Partnership Agreements").  S&P and P&S were both run by the same managing

general partners.  Partnership Agreements, § 8.01

        Both Florida law and the Partnership Agreements clearly and explicitly recognize S&P

and P&S as distinct legal entities that own their own property.  Florida Stat. § 620.8201(1) states:

"A partnership is an entity distinct from its partners" and § 620.8203 says "Property acquired by

a partnership is property of the partnership and not of the partners individually."  Similarly, Fla.

Stat. § 620.8501, titled "Partner not coowner of partnership property" provides, "Partnership

property is owned by the partnership as an entity, not by the partners as co-owners.  A partner

has no interest that can be transferred . . . in specific partnership property."  The Partnership

Agreements each state: "All property acquired by the Partnership shall be owned by and in the

name of the Partnership . . . .  The Partners shall execute any documents that may be necessary to

reflect the Partnership's ownership of its assets . . . ."  Partnership Agreements, § 6.01.

        The purpose of each of the two partnerships, as set out in Article Two of their respective

Partnership Agreements, is "to invest . . . in all types of marketplace securities . . . and . . .

---

[6] FRUPA provides "Effective January 1, 1998, the Revised Uniform Partnership Act of 1995 governs all
partnerships."  FLA STAT. § 620.9901 (2010). The prior partnership law, the Uniform Partnership Act, was repealed
effective January 1, 1998. 1995 Fla. Laws 2190, § 25.

[7] *See* the P&S Amended and Restated Partnership Agreement, Cheema Decl. Ex.10, Sehgal Decl Ex.7, at the
recitals, Articles 6, 8, 10 and § 9.03.

commodities and provisions usually dealt in on exchanges, on the over-the-counter market or otherwise . . . ." Partnership Agreements, § 2.02. Future contracts, options and "other investment vehicles of whatever nature" are authorized. *Id.* The partnerships were permitted to invest in many things that are not "securities" as such term is used in SIPA. *See* SIPA §§ 78*lll*(2), (11), and (14).

The partners sent money to each partnership as capital contributions to the partnership. "The Partners acknowledge that each partner shall be obligated to contribute, and will, on demand, contribute to the Partnership the amount of cash set out opposite the name of each Partner on exhibit A as an initial capital contribution." Partnership Agreements, § 4.01. Partnership profits were either paid periodically to partners or could be rolled over to increase the capital account of the partners in question. Partners were entitled to regular payouts of profits of the partnership in proportion to the size of their partnership capital accounts, less the fees paid to the Managing Partners. Partnership Agreements, § 5.02. If at any time a Partner should choose to withdraw from the Partnership (on 30 days written notice), the Partner was entitled solely to the payment in cash of the value of his or her Partnership interest as calculated pursuant to a formula set out in the Partnership Agreements. Partnership Agreements, §§ 9.03, 11.01. The same was true if the Partner had his or her interest terminated as a result of a default. Partnership Agreements, §§ 10.02, 11.01.

Of the partners, only the Managing General Partners, Michael D. Sullivan and Greg Powell, had the right to invest the partnerships' assets. "Except as expressly provided in the Agreement, the management and control of the day-to-day operations of the Partnership and the maintenance of the Partnership property shall rest exclusively with the Managing General Partners, Michael D. Sullivan and Greg Powell." Partnership Agreements, § 8.01. The powers

of the Managing General Partners included opening, maintaining and closing investment accounts, borrowing money, encumbering partnership property, entering into contracts, making tax elections, hiring professionals, and admitting additional partners into the partnership. Partnership Agreements § 8.02.

The Partnership Agreements allowed the Managing General Partners to invest the assets through a discretionary broker subject to majority consent: "The Partnership shall have the right to allow OR TERMINATE a specific broker, or brokers, as selected by fifty-one (51) Percent in interest . . . of the Partners . . . and allow such broker, or brokers . . . to have discretionary investment powers with the investment funds of the Partnership." Partnership Agreements, § 2.02. At the regular quarterly meetings of the Partners, the "Partners WILL REVIEW THE ENGAGEMENT WITH THE PARTNERSHIP" of any broker or brokers. Partnership Agreements § 8.04. Neither BLMIS nor Madoff were named; however, at the time that the BLMIS case was filed, according to a letter sent by P&S to investors, all of the partnership assets of P&S were held in P&S's account with BLMIS (1ZA873). Sehgal Decl. Ex. 13. Likewise, S&P's partnership assets were held in S&P's account with BLMIS (1ZA874). *See, e.g.*, Sehgal Decl. Exs. 13, 15, ¶¶ 22, 24.

Thus, like the feeder funds that were the subject of the Original Feeder Fund Motion and the Second Feeder Fund Motion, S&P and P&S meet the following criteria: (1) they are legal entities (*i.e.*, capable of owning property, suing, and being sued) that were created as investment vehicles; (2) they owned the funds that they used for investment, which funds were obtained from the legal entities' owners, including, among others, the Objecting Claimants; (3) the management and direction of fund investments by the partnerships were committed to specific persons of authority and not the Objecting Claimants (pursuant to their Partnership Agreements,

the Managing Partners had that responsibility); (4) S&P and P&S had BLMIS accounts in their own names, according to the books and records of the Debtor; and (5) S&P and P&S are not banks, brokers, or dealers.

**B.      The BLMIS Accounts**

S&P and P&S each maintained an account in its own name (collectively, the "Accounts") with BLMIS.  The Objecting Claimants did not. Sehgal Decl. ¶ 25.  S&P and P&S executed each of the standard BLMIS account-opening agreements, namely, a Customer Agreement, an Option Agreement, and/or a Trading Authorization Limited to Purchases and Sales of Securities and Options (collectively, "Account Agreements").  The Objecting Claimants did not. Sehgal Decl. ¶¶ 13, 18, Exs. 4, 9.  The Managing Partners in their capacity as such had authority over the accounts.  The Objecting Claimants did not. Sehgal Decl. ¶¶ 25, 13, 18, 17, 23, Exs. 4, 9, 8, 14.

The records of BLMIS reflect money deposited or withdrawn by S&P and P&S and not by the Objecting Claimants.  The BLMIS records show that the standard enclosure letters transmitting money to the Accounts averred that the enclosed check was from S&P or P&S, and were signed by Michael Sullivan or Greg Powell, the Managing Partners.  Michael Sullivan or Greg Powell also made standard requests for withdrawals from the Accounts of what they referred to as "partnership funds."   Both types of correspondence were on S&P or P&S letterhead or at least expressly named the S&P or P&S partnership in the reference line. *See* Sehgal Decl. ¶¶ 17, 23, Exs. 8, 14.  BLMIS sent account statements and related communications to S&P and P&S, not the Objecting Claimants. *See* Cheema Decl. Exs. 4, 5, 6, 7, 8, 11, 12, 13, 15, 16, 17 at Requests 3, 8; Cheema Decl. ¶¶ 22, 24, 25, and Ex. 14, 18; Sehgal Decl. Exs. 5, 10, ¶¶ 14, 19.

Because S&P and P&S opened and maintained accounts at BLMIS, and made deposits into and withdrawals from those accounts, the books and records of BLMIS reflect the amounts owing and owed by the BLMIS estate for each of the two accounts. The books and records of BLMIS do not, in contrast, reflect deposits or withdrawals directly to or from BLMIS by the Objecting Claimants with regard to the Accounts. They also do not show what amounts individual Objecting Claimants invested in, or withdrew from, S&P or P&S. Sehgal Decl. ¶ 25.

## C.     The Claims

S&P and P&S each filed customer claims with the Trustee for their accounts. Sehgal Decl. ¶¶ 6, 15, 20, Exs. 6, 11.  Their claims have been allowed in an amended amount, they each received either payment of or the benefit of a $500,000 SIPC advance, and interim distributions have been made to each of them from the Customer Fund. Sehgal Decl. ¶ 6.

The claims at issue in this motion involve direct or indirect investments into S&P and P&S. Sehgal Decl. ¶¶ 7-12, Ex.1-3. The Objecting Claimants filed a total of 158 claims based upon their investments in S&P or P&S. Sehgal Decl. ¶¶ 11 Exs. 2-3.  The Trustee denied their claims, citing the fact that they lacked BLMIS accounts and were not customers of BLMIS. Sehgal Decl. ¶ 11.  The Objecting Claimants, collectively, filed 36 docketed objections to the Trustee's determination of their claims.[8] Sehgal Decl. ¶¶ 10-12, Exs.1-3.  This Motion addresses all remaining objections regarding the claims by the Objecting Claimants who are identified (with the relevant Account Holder partnership specified) on Exhibit 2 of the Sehgal Decl.

Since receiving the 36 objections to the claims determinations, the Trustee served discovery on each of the Objecting Claimants seeking to determine their basis for claiming

---

[8] Some of the objections filed by Ms. Chaitman purported to be on behalf of individuals who were investors in entities that were in turn partners in S&P (Guardian Angel Trust LLC and SPI Investments, Limited Partnership.) Such persons are even further removed from having "customer" status under SIPA.  Other of the objections filed by Ms. Chaitman purported to include as objectors, individuals who had never filed claims. *See* footnote 2 *supra.*

customer status, and inquiring into deposits, payments, communications, account openings, and their relationship with the account holder. Many Objecting Claimants failed to respond. The ones that did respond provided no persuasive evidence of their entitlement to customer status under SIPA. Cheema Decl. Exs. 4, 5, 6, 7, 8, 11, 12, 13.

## RELIEF REQUESTED

The Motion seeks the entry of an order substantially in the form of attached Exhibit A, affirming the Trustee's denial of the claims listed on Exhibit 2 to the supporting Declaration of Vineet Sehgal, expunging such claims, and overruling, on the grounds that Claimants are not "customers" as such term is used at SIPA § 78*lll*(2), all objections filed by the Claimants as to the claims.[9]

## ARGUMENT

To be a "customer" under SIPA, an investor must have "a claim on account of securities received, acquired, or held by the debtor in the ordinary course of its business as a broker or dealer from or for the securities accounts of such person," including "any person who has deposited cash with the debtor for the purpose of purchasing securities." SIPA § 78*lll*(2).[10]

---

[9] The Trustee reserves all other bases for objections to the claims that are the subject of the Motion.

[10] The definition applicable to this SIPA proceeding is:

(2) CUSTOMER

The term "customer" of a debtor means any person (including any person with whom the debtor deals as principal or agent) who has a claim on account of securities received, acquired, or held by the debtor in the ordinary course of its business as a broker or dealer from or for the securities accounts of such person for safekeeping, with a view to sale, to cover consummated sales, pursuant to purchases, as collateral security, or for purposes of effecting transfer. The term "customer" includes any person who has a claim against the debtor arising out of sales or conversions of such securities, and any person who has deposited cash with the debtor for the purpose of purchasing securities, but does not include—

(A) any person to the extent that the claim of such person arises out of transactions with a foreign subsidiary of a member of SIPC; or

Thus, to be a "customer" an investor must have entrusted cash or securities with the debtor for the purpose of trading or investing in securities. *See Kruse*, 708 F.3d at 427 (holding investors who bought limited partnership interests in an entity that ultimately invested funds via its own BLMIS account "never entrusted *their* cash or securities to BLMIS and, thus, fail to satisfy this 'critical aspect of the "customer" definition'" regardless of their intent) (citing *In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d at 236); *Stafford v. Giddens,* 463 F.3d at 128 ("[T]he critical aspect of the 'customer' definition is the entrustment of cash or securities to the broker-dealer for the purposes of trading securities.") (quoting *Appleton v. First Nat'l Bank of Ohio,* 62 F.3d 791, 801 (6th Cir. 1995)); *In re Adler, Coleman Clearing Corp.*, 216 B.R. 719, 724–25 (Bankr. S.D.N.Y. 1998) ("The term [customer] refers to those who entrust cash or securities to broker-dealers for the purpose of trading and investing in the securities market."). The Trustee is responsible for discharging obligations of the Debtor to customers with such claims "insofar as such obligations are ascertainable from the books and records of the debtor or are otherwise established to the satisfaction of the trustee." SIPA § 78fff-2(b).

The Objecting Claimants' investment in S&P and P&S do not meet the requirements for "customer" status outlined in the seminal Second Circuit decision *Securities Investor Protection Corporation v. Morgan, Kennedy & Co.* 533 F.2d 1314 (2d Cir. 1976) ("*Morgan Kennedy*"), *cert. denied.* 426 U.S. 936 (1976); *Kruse,* 708 F.3d at 427. In *Morgan Kennedy*, the Second Circuit rejected the argument that the beneficial owners of the account holder were the

---

(B) any person to the extent that such person has a claim for cash or securities which by contract, agreement, or understanding, or by operation of law, is part of the capital of the debtor, or is subordinated to the claims of any or all creditors of the debtor, notwithstanding that some ground exists for declaring such contract, agreement, or understanding void or voidable in a suit between the claimant and the debtor.

SIPA § 78*lll*(2), see 15 U.S.C.A. § 78*lll*(2) (West 2009). After the start of this case, the "customer" definition was slightly reorganized and amended in a manner irrelevant to the present issues by the Dodd-Frank Wall Street Reform and Consumer Protection Act. Pub. L. No. 111-203, § 983(b), 124 Stat. 1931 (2010); *see In re Lehman Bros. Inc.*, 462 B.R. 53, n.9 (Bankr. S.D.N.Y. 2011).

"customers" under SIPA, citing the facts that: (1) the securities account with the debtor was in the name of the account holder, not the beneficiaries; (2) title to the trust assets was held by the account holder, not the beneficiaries; (3) the account holder had the exclusive power to entrust the assets to the debtor; (4) the beneficiaries were unknown to the broker; and (5) the beneficiaries had no legal capacity in which they could deal with the debtor. 533 F.2d at 1318.

The Objecting Claimants' circumstances are no different. The BLMIS accounts at issue were in the names of S&P and P&S, not in the individual names of Objecting Claimants. Objecting Claimants entrusted their money to S&P and P&S,[11] not BLMIS. The money entrusted to BLMIS was the property of S&P and P&S, not the Objecting Claimants. Accordingly, like the appellants in *Kruse*, the Objecting Claimants never entrusted *their* cash or securities to BLMIS and, thus, fail to satisfy this "critical aspect of the 'customer' definition." 708 F.3d at 426-27 (citing *In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d at 236); *accord ERISA Claimant Decision,* 515 B.R. at 169. Whether they intended or expected that S&P and P&S would ultimately invest with BLMIS is irrelevant under SIPA. *See Kruse*, 708 F.3d at 426-27; *ERISA Claimant Decision*, 515 B.R. at 169-170.

The Objecting Claimants, as investors in S&P and P&S, do not have property rights in the assets of those entities. Those assets belong to S&P and P&S. Like the account holders dealt with by prior Customer Opinions, S&P and P&S are legal entities under the laws of their home jurisdiction, with all that that entails, including ownership of the assets that they invested with BLMIS. *See generally* John W. Larson, *Florida's New Partnership Law: The Revised Uniform Partnership Act and Limited Liability Partnerships*, 23 Fla. St. U. Law Rev. 201 (1995). Their managing partners were required to carry out the investments and various internal functions of

---

[11] In certain cases, the Objecting Claimants entrusted their money to another entity, which in turn entrusted its money to S&P or P&S. *See* footnote 9, *supra*.

the partnerships. As discussed *supra*, the Partnership Agreements make it plain that each investor would become a general partner upon contributing the investor's money to an entity which would own the money invested and anything purchased with it.  Once the investment was made in S&P and P&S, the managing partners exclusively controlled the assets.  It was S&P and P&S, not the Objecting Claimants, who entrusted assets to BLMIS for the purpose of purchasing securities.  S&P and P&S alone had the right to direct the investment of those assets.  It was S&P and P&S, not the Objecting Claimants, who were the customers for their respective accounts under SIPA.

The discovery received from Objecting Claimants not only fails to support their claims of "customer" status, it affirmatively shows them to be baseless.   The Objecting Claimants represented by Becker & Poliakoff LLP[12] admitted in their discovery that the account was not titled in their name (Response To Requests For Admission, Cheema Decl. Exs. 4, 5, at Request 1 (hereinafter "A_")), that they never received correspondence directly from BLMIS (A3), that they did not have direct communications with BLMIS employees (Response to Interrogatories, Cheema Decl. Exs. 4, 5, at Interrogatory 14 (hereinafter "I_")), and that they never received investment statements (A8) or tax statements (A9) in their names from BLMIS.  They failed to identify any documents they ever received from BLMIS (I16).

The Objecting Claimants represented by Becker & Poliakoff LLP admitted that they did not enter into customer agreements with BLMIS in their own name (A10).  They admitted that they never paid cash directly to BLMIS for credit to an account in their names (A4), nor ever deposited securities directly to BLMIS (A5).  They admitted that they never directly withdrew

---

[12] Becker & Poliakoff disclaimed representation of other Objecting Claimants, even those for whom Ms. Chaitman had previously filed an objection to determination when with her prior firm, Phillips Nizer LLP.  No formal withdrawal or substitution of counsel has been filed as to the other Objecting Claimants.

(A6) or received (A7) funds from BLMIS, that all funds were transmitted to them from the accountholder, P&S or S&P (A7), and that all payments from BLMIS in connection with the account were remitted to the Accountholder (I20). They agreed that the only persons reflected in BLMIS's books and records were the accountholder (P&S or S&P) and its managing partners (I7), and that only those managing partners, Michael Sullivan and Greg Powell, had communications with BLMIS on behalf of the accountholder (I18).

Other Objecting Claimants either failed to respond at all to counterpart requests for admission, thereby admitting them, Fed. R. Civ. P. 36(a)(3), or their responses to discovery likewise showed nothing that remotely resembled a customer-broker relationship with BLMIS. *See* Cheema Decl. Exs. 6, 7, 8, 11, 12, 13, 14, 15, 16, 17, 18, ¶¶ 12-18, 21-25.

As the Second Circuit has explained, "[j]udicial interpretations of 'customer' status support a narrow interpretation of the SIPA's provisions." *Kruse*, 708 F.3d at 426 (citing *Stafford v. Giddens,* 463 F.3d at 127.) Customer status under SIPA is narrowly construed and is the burden of the claimant to establish. See *ERISA Claimant Decision,* 515 B.R. at 166. "The burden is on the claimant to establish he is a 'customer' entitled to SIPA protection, and such a showing 'is not easily met.'" *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 454 B.R. at 294 (citing *In re Klein, Maus & Shire, Inc.*, 301 B.R. 408, 418 (Bankr. S.D.N.Y. 2003)); *see also Mishkin v. Siclari (In re Adler, Coleman Clearing Corp.)*, 277 B.R. 520, 557 (Bankr. S.D.N.Y. 2002) ("[I]it is well-established in the Second Circuit that a claimant bears the burden of proving that he or she is a 'customer' under SIPA."). The Objecting Claimants have not met this burden. Thus, under Second Circuit precedent, the Objecting Claimants are not SIPA customers.

## CONCLUSION

For all of the foregoing reasons, the Court should affirm the Trustee's determination denying the claims of the Objecting Claimants, overrule their objections, expunge the claims, and grant such other and further relief as the Court deems just and proper.

Dated:  New York, New York                 Respectfully submitted,
December 12, 2014


                                            */s/ David J. Sheehan*
                                            David J. Sheehan
                                            Email: dsheehan@bakerlaw.com
                                            Jorian L. Rose
                                            Email: jrose@bakerlaw.com
                                            Nicholas J. Cremona
                                            Email: ncremona@bakerlaw.com
                                            Seanna R. Brown
                                            Email: sbrown@bakerlaw.com
                                            Bik Cheema
                                            Email: bcheema@bakerlaw.com
                                            **Baker & Hostetler LLP**
                                            45 Rockefeller Plaza
                                            New York, New York  10111
                                            Tel: (212) 589-4200
                                            Fax: (212) 589-4201

                                            Brian A. Bash
                                            Email: bbash@bakerlaw.com
                                            Wendy J. Gibson
                                            Email: wgibson@bakerlaw.com
                                            **Baker & Hostetler LLP**
                                            1900 E. 9th St Suite 3200
                                            Cleveland, Ohio  44114
                                            Tel: (216) 621-0200
                                            Fax: (216) 696-0740

                                            *Attorneys for Irving H. Picard, Trustee*
                                            *for the Substantively Consolidated SIPA*
                                            *Liquidation of Bernard L. Madoff Investment*
                                            *Securities LLC and Bernard L. Madoff*