# BakerHostetler

Baker&Hostetler LLP

45 Rockefeller Plaza
New York, NY 10111

T 212.589.4200
F 212.589.4201
www.bakerlaw.com

Nicholas J. Cremona
Direct dial: 212.589.4682
ncremona@bakerlaw.com

December 18, 2014

**VIA ECF AND ELECTRONIC MAIL TO**
**bernstein.chambers@nysb.uscourts.gov**

Honorable Stuart M. Bernstein
United States Bankruptcy Court
Southern District of New York
One Bowling Green, Room 723
New York, New York 10004-1408

Re:   *Securities Investor Corporation v. Bernard L. Madoff Investment Securities LLC,*
       Ad. Pro. No. 08-01789 (SMB) – Omnibus Motions to Dismiss Heard on
       September 17, 2014

Dear Judge Bernstein:

We are counsel to Irving H. Picard, trustee (the "Trustee") for the substantively consolidated liquidation proceedings of Bernard L. Madoff Investment Securities LLC and the estate of Bernard L. Madoff (collectively "BLMIS") under the Securities Investor Protection Act, 15 U.S.C. § 78aaa *et seq.* ("SIPA").  We write in response to a letter dated December 10, 2014 submitted to your Honor by Pryor Cashman LLP, Dentons US LLP and Milberg LLP on behalf of certain defendants in adversary proceedings whose motions to dismiss were heard on September 17, 2014 (the "Defendants' Letter").  The Defendants' Letter is the latest salvo in their ongoing attempts to retain fictitious profits.  However, as discussed below, the supplemental authority relied upon in the Defendants' Letter has no bearing on the matters at issue on their motions to dismiss and does not assist the defendants in their attempts to assert a value defense under section 548(c) of the Bankruptcy Code.

The Second Circuit's decision in *Picard v. Ida Fishman Revocable Trust (In re Bernard L. Madoff Inv. Secs. LLP),* No. 12-2557, 2014 U.S. App. Lexis 23032 (2d Cir. Dec. 8, 2014) (the "546(e) Decision"), considers whether section 546(e) of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), bars certain

Hon. Stuart M. Bernstein
December 18, 2014
Page 2

avoidance claims asserted by the Trustee.[1] The 546(e) Decision does not address what constitutes value under section 548(c), much less address the District Court's determination in its Antecedent Debt decision that only a net equity claim can constitute "value" with respect to the SIPA customer property estate.[2]

In the Antecedent Debt Decision, the District Court considered arguments made by certain defendants that, because satisfaction of an antecedent debt allegedly constituted value, the defendants were entitled to retain transfers in excess of their initial investments to the extent those transfers compensated them for state and federal claims against BLMIS. *Antecedent Debt Decision* at 422. The District Court, after describing the priority scheme created by SIPA pursuant to which the customer property estate takes preference over the debtor's general estate, held that the customer property estate is intended only to compensate customers for their net-equity claims. *Id.* at 424. To the extent the defendants could assert claims against BLMIS that were not net equity claims, those claims could be made only against the general estate. *Id.* The District Court stated:

> Because their damages claims are not net equity claims (or any other payments that are permitted to be made in SIPA's priority scheme), allowing such claims to be drawn out of the customer property estate would violate SIPA. It is for this reason that only a defendant's investment of principal may count as "value" with respect to the customer property estate for purposes of section 548(c).

*Id.* at 424.

Notably, the District Court entered its Antecedent Debt Decision only after determining in the 546(e) Decision that defendants were entitled to the protection of section 546(e). The District Court similarly applied the section 546(e) limitation while simultaneously recognizing SIPA's priority scheme in its earlier *Greiff* decision. There, in response to another iteration of the defendants' antecedent debt argument, the District Court stated that transfers that exceeded principal could not be for value, because "[u]nlike the situation under § 546(e), Congress has here created no "safe harbor" to shelter receipts

---

[1] Notably, the signatories to the Defendants' Letter each specifically agreed to the scope of the section 546(e) appeal. The District Court's Consent Order Granting Certification Pursuant to Fed. R. Civ. P. 54(b) (Case No. 12-MC-0115, ECF No. 109), to facilitate a coordinated appeal of the section 546(e) issues, withdrew the reference "for the limited purpose of deciding whether Section 546(e) of the Bankruptcy Code applies, limiting the Trustee's ability to avoid transfers" and then certified the claims for appeal. Consent Order at 4-5. Having agreed to that limited scope, these defendants cannot now assert that the Second Circuit's decision has much broader implications.

[2] *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC* (In re Madoff Sec.), 499 B.R. 416 (S.D.N.Y. 2013) (the "*Antecedent Debt Decision*"). The District Court's decision in *Picard v. Greiff*, 476 B.R. 715 (S.D.N.Y. 2012), expresses a similar view regarding value for purposes of section 548(c) of the Bankruptcy Code.

that might otherwise be subject to avoidance. Accordingly, in this context, the transfers must be assessed on the basis of what they really were; and they really were artificial transfers designed to further the fraud…." *Picard v. Greiff*, 476 B.R. at 725.

Nothing in the 546(e) Decision affects these determinations.[3] The Trustee does not agree that the Second Circuit's holding that transfers are settlement payments for purposes of the safe harbor creates separate "contractual and legal obligations," including under the New York Uniform Commercial Code. But even if the 546(e) Decision did, any such obligations are not net equity claims that could form the basis for a value defense. *See Antecedent Debt Decision*, 499 B.R. at 424. The Second Circuit already rejected the defendants' argument that their net equity includes "securities entitlements" under the New York Uniform Commercial Code or any basis other than a customer's net investment with BLMIS. *In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d 229 (2d Cir. 2011), *cert. denied*, 133 S. Ct. 24, 133 S. Ct. 25 (2012).

The Antecedent Debt Decision holds that even if customers have valid damage claims, only a net equity claim can constitute "value" for purposes of distribution from the customer property estate under SIPA. *Antecedent Debt Decision*, 499 B.R. at 424. Contrary to the defendants' argument, the Second Circuit's statement that it must balance the Bankruptcy Code's safe harbor with the provisions of SIPA does not disturb that conclusion. The need to balance the provisions of the Bankruptcy Code with the goals of SIPA has been recognized by all courts to consider both statutes, including the District Court in the Antecedent Debt Decision. *Antecedent Debt Decision*, 499 B.R. at 428 (applying the net investment method to calculations of avoidance liability "harmonizes the avoidance and recovery scheme with the Second Circuit's decision upholding the Trustee's net-equity calculation, even if the scope of the Trustee's avoidance power was not explicitly before the Second Circuit").

Finally, the defendants continue to disregard the long line of decisional authority in both SIPA and non-SIPA cases holding that, in a Ponzi scheme, investors simply cannot provide value in excess of their principal investment. *Antecedent Debt Decision*, 499 B.R. at 428-29; *Picard v. Katz*, No. 11 Civ. 3605, 2012 WL 691551 (S.D.N.Y. Mar. 5, 2012) (granting the Trustee partial summary judgment finding that fictitious profits cannot be taken for "value"); *Bayou Superfund, LLC v. WAM Long/Short Fund II, LLP (In re Bayou Group, LLC)*, 362 B.R. 624, 636 (Bankr. S.D.N.Y. 2007); *Donell v. Kowell*, 533 F.3d 762, 773 (9th Cir. 2008), *cert. denied*, 129 S. Ct. 640 (2008); *Janvey v. Brown,* 767 F.3d 430, 441 (5th Cir. Sept. 11, 2014) ("Allowing Net Winners to keep their fraudulent above-market returns in addition to their principal would simply further victimize the true Stanford victims, whose money paid the fraudulent interest.")

---

[3] As this Court observed at oral argument on the defendants' motions to dismiss, it is unclear whether the Court even has jurisdiction to consider the antecedent debt argument put forth by the defendants who were parties to the *Antecedent Debt Decision* and the *Greiff* decision decided by the District Court. *See* Hearing Transcript, Sept. 17, 2014, 35:3 – 38:4.

Hon. Stuart M. Bernstein
December 18, 2014
Page 4

In deciding that the Trustee had utilized the correct methodology to calculate inter-account transfers, this Court noted that transferees cannot receive credit for fictitious profits because "a customer cannot transfer what he does not have." *SIPC v. BLMIS*, No. 08-01789 (SMB), 2014 WL 6879248 at *6 (Bankr. S.D.N.Y. Dec. 5, 2014). The same is true here. Defendants cannot create value for fictitious profits where there is none.

We are available to discuss any questions regarding the foregoing.

The Securities Investor Protection Corporation has informed us that it joins in this letter.

Respectfully submitted,

/s/ Nicholas J. Cremona

Nicholas J. Cremona


cc (via email):
    David J. Sheehan
    Kevin H. Bell
    Richard Levy, Jr.
    Carole Neville
    Matthew A. Kupillas