**Baker & Hostetler LLP**

45 Rockefeller Plaza
New York, NY 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Marc E. Hirschfield
Tracy Cole
M. Elizabeth Howe

*Attorneys for Irving H. Picard, Trustee for the*
*Substantively Consolidated SIPA Liquidation of*
*Bernard L. Madoff Investment Securities LLC*
*and the Estate of Bernard L. Madoff*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (SMB) |
| Plaintiff-Applicant, | |
| v. | SIPA LIQUIDATION |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | (Substantively Consolidated) |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | |
| Plaintiff, | Adv. Pro. No. 10-04450 (SMB) |
| v. | |
| JEFFREY HINTE, | |
| Defendant. | |

## REPLY IN SUPPORT OF TRUSTEE'S MOTION
## TO DISMISS COUNTERCLAIMS AND STRIKE AFFIRMATIVE DEFENSES

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................................1

ARGUMENT .............................................................................................................................2

    A.    Defendant's Counterclaims Should Be Dismissed ...............................................2

        1.    Defendant Misapprehends the Applicable Pleading
            Standard ...........................................................................................2

        2.    Defendant's Failure to File a Customer Claim in
            Accordance with SIPA Bars his Counterclaims Against the
            Estate of Customer Property, and He Has No Rights for
            Setoff or Recoupment ......................................................................4

            a.    Even if Defendant Had a Customer Claim, There is
                No Right of Setoff to a Fraudulent Transfer Action,
                and Defendant's Failure to File a Claim Would be a
                Waiver to Such Right Even if it Existed.........................4

            b.    The Doctrine of Recoupment is Similarly Irrelevant.......................6

        3.    The Inter-Account Transfer Decision and Antecedent Debt
            Decision Dispose of Defendant's Counterclaims ........................8

            a.    Defendant May Not Pursue his Counterclaims
                Against the Customer Property Estate .........................10

            b.    As this Court Recognized, the Antecedent Debt and
                Net Equity Decisions Have Not Been Called Into
                Question ......................................................................12

    B.    The Trustee's Motion to Strike .........................................................13

        1.    Sufficient Facts Have been Pleaded that No Determinative
            Questions of Fact Remain as to the Viability of the Specific
             Affirmative Defenses ....................................................................14

         2.    No Questions of Law Underlying the Affirmative Defenses
            Will Remain Following Determination of the Trustee's
            Motion to Dismiss .........................................................................17

        3.    Re-litigating These Issues Will Prejudice the Trustee ..............19

CONCLUSION.........................................................................................................................20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Acequia, Inc.*,
  34 F.3d 800 (9th Cir. 1994) ........................................................................5

*Achtman v. Kirby, McInerney & Squire LLP*,
  464 F.3d 328 (2d Cir. 2008)........................................................................3

*In re Adler, Coleman Clearing Corp.*,
  204 B.R. 99 (Bankr. S.D.N.Y. 1997)...........................................................6

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).............................................................................3, 4, 14

*In re Bell & Beckwith*,
  937 F.2d 1104 (6th Cir. 1991) ...................................................................12

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007)......................................................................................4

*In re Bernard L. Madoff Inv. Sec. LLC*,
  654 F.3d 229 (2d Cir. 2011).............................................................. *passim*

*In re Bernard L. Madoff Inv. Sec. LLC*,
  424 B.R. 122 (Bankr. S.D.N.Y. 2010)............................................. *passim*

*Bustamante v. Johnson (In re McConnell)*,
  934 F.2d 662 (5th Cir. 1991) .......................................................................5

*Car Carriers, Inc. v. Ford Motor Co.*,
  745 F.2d 1101 (7th Cir.1984) ....................................................................16

*E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*,
  637 F.3d 435, 449 (4th Cir. 2011) .............................................................16

*Fisher v. Outlet Co. (In re Denby Stores, Inc.)*,
  86 B.R. 768 (Bankr. S.D.N.Y. 1988)........................................................5, 6

*Geron v. Schulman (In re Manshul Constr. Corp.)*,
  2000 WL 1228866 (S.D.N.Y. Aug. 30, 2000)..............................................5

*Global Cable, Inc. v. Adelphia Commc'ns Corp. (In re Adelphia Commc'ns
  Corp.)*,
  2006 WL 1559437 (S.D.N.Y. 2006)..............................................................7

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Global Crossing Bandwidth, Inc. v. Locus Telecomm., Inc.*,
   632 F. Supp. 2d 224 (W.D.N.Y. 2009) ...................................................................6

*In re June S. Jones Co.*,
   52 B.R. 810 (Bankr. D.Or. 1985)..........................................................................8

*Kosadner v. Metro Life Ins. Co. (In re Kosadnar)*,
   157 F.3d 1011 (5th Cir.1998) ...............................................................................7

*Kramer v. Sooklall (In re Singh)*,
   434 B.R. 298 (Bankr. E.D.N.Y. 2010)...................................................................4

*Law v. Siegel*,
   134 S.Ct. 1118 (2014).........................................................................................12

*In re Lehman Bros.*,
   493 B.R. 437 (Bankr. S.D.N.Y. 2013)...................................................................6

*Louis Vuitton Malletier v. Dooney & Bourke, Inc.*,
   No. 04 CV 5316, 2006 WL 2807213 (S.D.N.Y. Sept. 28, 2006) ...........................2

*In re M. Silverman Laces, Inc.*,
   404 B.R. 345 (Bankr. S.D.N.Y. 2009)...................................................................6

*In re MF Global Inc.*,
   No. 11-2790 (MG), 2014 WL 1320094 (Bankr. S.D.N.Y. Apr. 1, 2014) ................4

*New York State Elec. & Gas Corp. v. McMahon (In re McMahon)*,
   129 F.3d 93 (2d Cir. 1997)....................................................................................7

*In re O.P.M. Leasing Services, Inc.*,
   40 B.R. 380 (Bankr. S.D.N.Y. 1984).....................................................................5

*Official Comm. of Unsecured Creditors of Enron Corp. v. Martin (In re Enron
   Creditors Recovery Corp.)*,
   376 B.R. 442 (Bankr. S.D.N.Y. 2007)............................................................5, 6, 7

*Picard v. Fairfield Greenwich Ltd.*,
   762 F.3d 199 (2d Cir. 2014)................................................................................13

*Picard v. Greiff*,
   476 B.R. 715 (S.D.N.Y. 2012).............................................................................19

*Reddington v. Borghi (In re Weis Secs. Inc.)*,
   411 F. Supp. 194 (S.D.N.Y. 1975)........................................................................6

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Sec. Exch. Comm'n v. McCaskey*,
    56 F. Supp. 2d 323 (S.D.N.Y. 1999)....................................................................20

*Sec. Exch. Comm'n v. Toomey*,
    866 F. Supp. 719 (S.D.N.Y. 1992)..........................................................14, 19, 20

*Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
    499 B.R. 416 (S.D.N.Y. 2013).................................................................. passim

Slip Op., *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, Adv. Pro.
    No. 08-01789 (SMB) (Bankr. S.D.N.Y.  Dec. 8, 2014) .................................. passim

*Wausau Bus. Ins. Co. v. Horizon Admin Svcs., LLC*,
    803 F. Supp. 2d 209 (E.D.N.Y. 2011) ....................................................................19

**Statutes**

11 U.S.C. § 101, *et seq.*...........................................................................................1

11 U.S.C. § 548(a)(1)..............................................................................................13

11 U.S.C. § 548(c) ..................................................................................1, 8, 13, 18

15 U.S.C. § 78aaa *et seq.* ........................................................................................1

15 U.S.C. § 78fff-2(a)..............................................................................................11

15 U.S.C. § 78fff-2(a)(3) ......................................................................................4, 10

15 U.S.C. § 78fff-2(b).........................................................................................10, 11

15 U.S.C. § 78*lll*(11).........................................................................................10, 11

**Rules**

Fed. R. Bankr. P. 7012................................................................................................1

Fed R. Civ. P. 12(b)(6)..........................................................................................1, 16

Fed R. Civ. P. 12(f)....................................................................................................1

Irving H. Picard, as trustee ("Trustee") for the substantively consolidated liquidation of

Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor

Protection Act, 15 U.S.C. § 78aaa *et seq.* ("SIPA"),[1] and the estate of Bernard L. Madoff

("Madoff") (collectively, "Debtors"), respectfully submits this Reply in further support of the

Trustee's motion (the "Motion") and its accompanying memorandum of law ("Memorandum" or

"Mem.") (Pl.'s Mot. and Mem. Supp. Mot. Dismiss, ECF No. 37) to (i) dismiss defendant Jeffrey

Kusama-Hinte's ("Defendant") counterclaims against the Trustee; and (ii) strike certain

affirmative defenses raised by Defendant in his answer to the Trustee's complaint pursuant to

Rules 12(b)(6) and 12(f)(2) of the Federal Rules of Civil Procedure, made applicable to this

proceeding by Federal Rule of Bankruptcy Procedure 7012.

## PRELIMINARY STATEMENT

Defendant's counterclaims (*see* Def.'s Answer and Countercl., ECF No. 31, "Answer")

are nothing more than a request that this Court reconsider legal issues and arguments already

adjudicated in the Trustee's favor. *First*, Defendant's failure to file a timely customer claim, or

*any* claim against the Debtors' estates, forecloses any relief sought here. *Second,* the case law on

which Defendant relies in his Memorandum of Law in Opposition to the Trustee's Motion

(Def.'s Mem. Opp. Mot. Dismiss, ECF No. 42, "Opposition" or "Opp.") provides no basis for

the affirmative relief he seeks or for any kind of offset against the Trustee's avoidance claims in

this action.  To the extent any of Defendant's counterclaims would ever be viable, these claims

are those of a general creditor of the Debtors' estates and may not be enforced to recover or

retain customer property. *Third*, Defendant's attempt to repackage legal arguments as to the

calculation of principal and the "value" defense of section 548(c) of the United States

Bankruptcy Code , 11 U.S.C. § 101, *et seq.* (the "Bankruptcy Code"), in the guise of

---

[1] For convenience, future reference to SIPA will not include "15 U.S.C."

counterclaims against the Trustee must fail, and the counterclaims and related affirmative defenses should be dismissed and/or struck, respectively, based on decisions of this Court and the District Court in these very proceedings. *See Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 499 B.R. 416, 427-28 (S.D.N.Y. 2013) ("Antecedent Debt Decision"); *In re Bernard L. Madoff Inv. Sec. LLC*, 424 B.R. 122, 124-25 (Bankr. S.D.N.Y. 2010) ("Net Equity Decision"), *aff'd*, 654 F.3d 229 (2d Cir. 2011), *cert denied*, 133 S.Ct. 24, 25 (2012).

As this Court recently held in affirming the Trustee's method for valuing inter-account transfers for purposes of calculating net equity ("Trustee's Inter-Account Transfer Method"), "[a] customer can't transfer what he doesn't have." *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, Adv. Pro. No. 08-01789 (SMB), Slip Op. at 13 (Bankr. S.D.N.Y. Dec. 8, 2014), ECF No. 8680 ("Inter-Account Transfer Decision"). Defendant therefore has no claim based on his receipt of transfers of fictitious profits. Although Defendant remains free to defend himself against the Trustee's avoidance action by challenging "the Trustee's calculations of the alleged principal and fictitious profits" in the transferor account, (*see* Opp. at 10), Defendant should not be permitted to re-litigate the legal consequences of accurate calculations, much less seek affirmative relief from which he is statutorily time-barred.

## ARGUMENT

### A.   Defendant's Counterclaims Should Be Dismissed

#### 1.   Defendant Misapprehends the Applicable Pleading Standard

Although Defendant is correct that "a motion to dismiss a counterclaim is evaluated under the same standard as a motion to dismiss a complaint," *see Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, No. 04 CV 5316, 2006 WL 2807213, at *2 (S.D.N.Y. Sept. 28, 2006), Defendant mistakenly contends that this standard requires this Court to accept his legal conclusions as true rather than just his *factual allegations*. There is no such obligation. *See*

*Achtman v. Kirby, McInerney & Squire LLP*, 464 F.3d 328, 337 (2d Cir. 2008) ("conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to defeat a motion to dismiss") (citation and quotations omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Defendant's claim that "his investment in BLMIS consisted of principal" is not a specific factual allegation, (Opp. at 17-18), but a legal conclusion based on arguments that already have been rejected by this and other courts.   Put simply, Defendant's counterclaims do not plead any facts contradicting those detailed in the Trustee's complaint regarding the opening of, source of funding for, and withdrawals made from his BLMIS account.  (*Compare* Compl. ¶¶ 33-35, *with* Answer ¶¶ 124-29, 132-34, 136).  Nor does Defendant plead the existence of any deposits of actual funds to his account.  (Answer ¶¶ 112-138.)    To the contrary, the factual narrative contained in Defendant's Answer admits the precise account history presented by the Trustee's complaint; the only difference between them is that based on the same facts alleged by the Trustee, Defendant would characterize the funds transferred to his account from his former wife's BLMIS account as "principal."  (*Id*. ¶¶ 33, 112-138.)

Defendant's claim is not that the Trustee overlooked a deposit of cash into his account or some other challenge to the Trustee's math; rather, Defendant seeks to re-litigate the already rejected claim that his acceptance of fictitious profits from the transferor account provided some "value" to BLMIS.  (*Id*. ¶ 133) (asserting that value was created "[b]y virtue of acceding to the alternative payment mechanism and not demanding immediate payments by check or wire of $52,876,712.33").   This legal argument is entitled to no presumption of truth.[2]

---

[2] To the extent that Defendant seeks to argue that his counterclaims are based on the existence of actual deposits to his BLMIS account not reflected in the Trustee's Complaint, as is indicated for the first time in his Opposition, (*see, e.g.,* Opp. at 18), he may put forth evidence of such deposits and dispute the accuracy of the Trustee's calculations as part of continued proceedings in this matter.  However, in the absence of pleading the existence of such actual deposits, Defendant's conclusory statements that his balance must be treated as "principal" cannot be entertained to sustain counterclaims against the Trustee.  *Iqbal*, 556 U.S. at 678 ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do'" and "'naked assertions' devoid of 'further

    **2.**      **Defendant's Failure to File a Customer Claim in Accordance with SIPA Bars his Counterclaims Against the Estate of Customer Property, and He Has No Rights for Setoff or Recoupment**

Defendant admits he did not file a customer claim with the Trustee.  (Opp.  at 14.)  This admission dooms Defendant's counterclaims as a matter of law.  (*See* Mem. at 10-12) (citing, *inter alia*, SIPA Section § 78fff-2(a)(3)) ("No claim of a customer or other creditor of the debtor which is received by the trustee after the expiration of the six-month period beginning on the date of publication of notice . . . *shall be allowed*. . .") (emphasis added);  *In re MF Global Inc.*, No. 11-2790 (MG), 2014 WL 1320094, at *3 (Bankr. S.D.N.Y. Apr. 1, 2014).  Even if Defendant were a "net loser" of Madoff's fraud, as he erroneously claims, (*see* Opp. at 8, 20), Defendant may not seek affirmative relief from the Trustee where he has not preserved his right to recover from the estate of customer property.

              a.    <u>Even if Defendant Had a Customer Claim, There is No Right of Setoff to a Fraudulent Transfer Action, and Defendant's Failure to File a Claim Would be a Waiver to Such Right Even if it Existed</u>

Defendant seeks to escape the consequences of his failure to file a proof of claim by invoking the concept of setoff.  As a threshold matter, a pre-petition debt cannot serve as a defense against a fraudulent transfer action:

> It is well established that a party will be unable to assert a setoff where the party is being sued for fraudulent transfers.  This is because where the party seeking to set off is being sued for fraudulent transfer, there is no mutuality of obligations, which is required under [Bankruptcy] Code Section 553(a).

*Kramer v. Sooklall (In re Singh)*, 434 B.R. 298, 308 (Bankr. E.D.N.Y. 2010) (citation and quotations omitted); *see also Fisher v. Outlet Co. (In re Denby Stores, Inc.)*, 86 B.R. 768, 777 (Bankr. S.D.N.Y. 1988)  (setoff requires mutuality of obligations, requiring "that both

---

factual enhancement'" are insufficient to survive a motion to dismiss) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)).

obligations be held by the same parties, in the same right or capacity, and arise from pre-petition obligations."); *In re O.P.M. Leasing Services, Inc.*, 40 B.R. 380 (Bankr. S.D.N.Y. 1984) (refusing to allow setoff of defendant's claims against post-petition avoidable transfer liability); *Geron v. Schulman (In re Manshul Constr. Corp.)*, 2000 WL 1228866, at *56–57 (S.D.N.Y. Aug. 30, 2000) ("[W]hen a party is being sued for fraudulent transfers there is no mutuality of obligations and thus no right to any set-off."). Circuit courts outside of the Second Circuit (which has not considered the issue) hold likewise. *See In re Acequia, Inc.*, 34 F.3d 800, 817 (9th Cir. 1994) (denying a defendant's setoff claims in a fraudulent transfer action brought by the trustee); *Bustamante v. Johnson (In re McConnell)*, 934 F.2d 662, 667 (5th Cir. 1991) (holding that "[s]ection 553(a) setoffs . . . do not apply to actions by the Trustee to recover fraudulent transfers: 'It would defeat the purpose of the Bankruptcy Act's provisions relating to fraudulent transfers to allow [creditors] to offset the value of the property thus transferred to them by the amount of their unsecured claim against [the debtor].'") (citations omitted).

In any event, even if setoff were relevant here, and even if Defendant ever held a valid customer claim in the first place, courts in the Southern District of New York can and do preclude the assertion of setoff rights for defendants who fail to file proofs of claim. Indeed, applicable case law generally holds that the failure to file a proof of claim constitutes a waiver of any right to setoff that claim against a prepetition claim asserted by the estate. *See, e.g., Official Comm. of Unsecured Creditors of Enron Corp. v. Martin (In re Enron Creditors Recovery Corp.)*, 376 B.R. 442, 465 (Bankr. S.D.N.Y. 2007). In *In re Enron*, a preference defendant argued the right to set off an alleged obligation of Enron arising under a prepetition employment separation agreement. *Id.* at 466. The court rejected the defendant's setoff claim on the ground that her failure to file a proof of claim was fatal to any right of setoff, reasoning that she "cannot

improve her position by manipulating the process and failing to file a proof of claim." *Id.* And this result is particularly compelled here, where SIPA provides a statutorily mandated deadline that cannot be disregarded, even for good cause. *See In re Lehman Bros*., 493 B.R. 437, 446 (Bankr. S.D.N.Y. 2013); *In re Adler, Coleman Clearing Corp*., 204 B.R. 99, 103 (Bankr. S.D.N.Y. 1997); *Reddington v. Borghi (In re Weis Secs. Inc.)*, 411 F. Supp. 194 (S.D.N.Y. 1975), *aff'd*, 538 F.2d 317 (2d Cir. 1976).

Defendant's cases do not overcome this bar. *In re Denby Stores, Inc.* involved a defendant who had filed valid proofs of claim, but did not assert a right of setoff in those proofs of claim. 86 B.R. at 777. The court held that the creditor had filed its proof of claim within the statutory period and had arguably[3] made a good faith mistake in failing to reflect a claim for setoff. *Id.* The defendant in that case was not sued for receiving an avoidable transfer. The claim that formed the basis for the set off of prepetition debt in *In re M. Silverman Laces, Inc*. was "undisputed" and there was no discussion of the circumstances surrounding the assertion of the claim. 404 B.R. 345 (Bankr. S.D.N.Y. 2009). Finally, *Global Crossing Bandwidth, Inc. v. Locus Telecomm., Inc.* stands for the elementary proposition that claims for setoff (and recoupment) are not time-barred as counterclaims to the extent the claimant can allege that the setoff claim arises out of the same transaction as the counterparty's claims. 632 F. Supp. 2d 224, 247-48 (W.D.N.Y. 2009).

### b.    The Doctrine of Recoupment is Similarly Irrelevant

Finally, Defendant's counterclaim for recoupment similarly fails. Recoupment permits a "defendant to reduce the amount of a plaintiff's claim by asserting a claim against the plaintiff which arose *out of the same transaction* to arrive at a just and proper liability on the plaintiff's claim." *Kosadner v. Metro Life Ins. Co. (In re Kosadnar)*, 157 F.3d 1011, 1013 (5th Cir.1998)

---

[3] The good faith issue was reserved for trial.

(citation and quotations omitted, emphasis added).  Recoupment is an equitable doctrine

applicable on a limited basis in bankruptcy cases when both debts at issue arise out of a single

integrated transaction.  *See Global Cable, Inc. v. Adelphia Commc'ns Corp. (In re Adelphia

Commc'ns Corp.)*, 2006 WL 1559437 (S.D.N.Y. 2006); *New York State Elec. & Gas Corp. v.

McMahon (In re McMahon)*, 129 F.3d 93, 97 (2d Cir. 1997) (explaining that the doctrine of

recoupment "is a limited one and should be narrowly construed.").  Defendant's counterclaims

for fraud, tortious interference, and estoppel all stem from pre-filing conduct between Defendant

and BLMIS, while the avoidance action at issue is one brought by, and exclusive to, the Trustee.

The debts at issue therefore do not arise from a single integrated transaction, but rather two

different circumstances and occurrences.

Even if Defendant had alleged a single integrated transaction, recoupment here would be

inappropriate.  In *In re Enron,* the court rejected the claimant's argument that she was entitled to

recoupment in the face of the debtor's preference action, even if the claimant's obligation to

return the preferential transfer could be considered to arise under a single integrated transaction

with Enron's obligation under the separation agreement.  376 B.R. at 442.  The court concluded

that applying the equitable remedy of recoupment would not have been equitable because it

would allowed her to receive more than she would receive had she timely filed a proof of claim.

*Id*. at 466 n.20.  Here, Defendant did not timely file any claim.  And Defendant's counterclaims

for "fraud, tortious interference, and estoppel" are not customer claims; they are, at best, general

estate claims.  To give Defendant "customer credit" for counterclaims that are lower in priority,

where no claim of any kind was ever filed, would lead to an inequitable result.  *See* Antecedent

Debt Decision at 424; Net Equity Decision at 141.

At bottom, Defendant's counterclaims boil down to his affirmative defenses under section 548(c)[4] and nothing precludes Defendant from arguing that the funds the Trustee alleges are fictitious profits are, as he believes, principal.   To cast his defenses to the Trustee's claims as independent counterclaims misapprehends relevant case law, relies on defective and rejected reasoning, and is wholly duplicative of the issues already joined in the adversary proceeding. Accordingly, his recoupment (and setoff) counterclaim(s) require dismissal.

> ### 3.    The Inter-Account Transfer Decision and Antecedent Debt Decision Dispose of Defendant's Counterclaims

Defendant devotes much of his Opposition to attempts to undercut and diminish any preclusive effect that the District Court's and the Second Circuit's prior holdings might have on his counterclaims.  (*See, e.g.,* Opp. at 18-19.)   These arguments have since been mooted by this Court's Inter-Account Transfer Decision, in which this Court approved the Trustee's Inter-Account Transfer Method, "to wit, calculating the net equity in a transferor account at the time of an inter-account transfer under the Net Investment Method and crediting the inter-account transfer up to the amount of the transferor's recalculated net equity."  Inter-Account Transfer Decision at 29.   In so holding, this Court expressly recognized that the result of this method would be that some defendants, like Defendant here, would not receive any benefit from an attempted transfer from another customer, because that customer had "$0 balance in his account under the Net Investment Method at the time of the transfer."  *Id.* at 5.

---

[4] Although not identified in his counterclaims, Defendant appears to be arguing for rescission of his BLMIS account agreement and return of his initial "investment" from his divorce settlement from his former wife.  (*See, e.g.*, Opp. at 6) (noting that, but for the creation of the BLMIS account, Defendant "would have had full use and enjoyment of the $52.9 million").  As with his remaining counterclaims, any claim for rescission by Defendant is likewise barred by his failure to file a customer claim and, even if Defendant had filed such a customer claim, as a non-net equity claim would proceed only against BLMIS's general estate once the BLMIS customer net equity claims had been fully satisfied.  (*See* Mem. at 16-17; *see also In re June S. Jones Co.*, 52 B.R. 810, 816 (Bankr. D.Or. 1985) (right to rescission under state law "not the equivalent of a net equity claim for cash under SIPA").)

As this Court concluded, this result is consistent with both the Net Equity Decision and the Antecedent Debt Decision, the latter of which expressly addressed the treatment of inter-account transfers.  The Antecedent Debt Decision explicitly rejected Defendant's argument that his withdrawals gave value to the BLMIS estate by "satisfy[ing] creditor claims under state law," Antecedent Debt Decision at 423.  And, contrary to Defendant's argument that the Antecedent Debt decision was not rendered in light of his "unique facts," (Opp. at 9, 29), Defendant's counsel expressly presented his particular situation to the District Court as part of argument on the Antecedent Debt Decision.  (*See* Mem. at 6) (quoting Transcript of Oral Argument at 7:12-8:1, *Sec. Inv. Pro. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Securities)*, No. 12-mc-00115 (JSR) (S.D.N.Y. Aug. 20, 2012).[5]

Moreover, Defendant's facts are not "unique."  This Court considered numerous objections by customers who claimed that the Trustee's treatment of inter-account transfers is "arbitrary and unfair because it treats economically identical transactions differently":  if a customer making an inter-account transfer of fictitious profit had instead withdrawn an equal amount of cash and paid it to the transferee, the transferee would have received credit for the deposit.  Inter-Account Transfer Decision at 14.  As this Court concluded, "[t]hat the transferor might have selected a different method to transfer fictitious profits that would have escaped the reach of the Trustee's avoiding powers is hardly a compelling argument for giving legal effect to a Madoff fraud that the Trustee has the means to rectify."  *Id*. at 15.  Because Defendant's first, sixth, and seventh counterclaims are repetitive of his rejected claims in the context of the Antecedent Debt Decision and are further based on a challenge to the Trustee's Inter-Account

---

[5] Defendant's counsel argued that payments to Defendant's account were "decreed by the judgment of divorce" and that the "inter-account transfer" as part of Defendant's divorce settlement "satisf[ied] an antecedent debt that [BLMIS] had to him because that transfer should be treated as principal."

Transfer Method, which has now been approved by this Court as well as the District Court, they should be dismissed.

   a.    Defendant May Not Pursue his Counterclaims Against the Customer Property Estate

Defendant contends that his counterclaims are viable as claims against the customer property estate because he "is not a general creditor of the BLMIS estate but a BLMIS customer with a net equity claim." (Opp. at 20.) This contention fails for several reasons,[6] not the least of which is that Defendant's counterclaims are separate claims from the determination of his net equity under SIPA. *See* Net Equity Decision at 135 (holding that Trustee's Net Investment Method of netting deposits and withdrawals as recorded in BLMIS's books and records is satisfactory methodology for calculating BLMIS customer "net equity.")

As the Second Circuit has held, SIPA section 78*lll*(11), defining net equity, must be read in tandem with Section 78fff-2(b); neither of these provisions require "net equity" to have any relationship to state or federal legal claims by a customer against the debtor other than claims for amounts held in the customer's account. *In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d at 238; *see also* Net Equity Decision at 135.[7] Thus, Defendant's contention that his general estate

---

[6] Defendant bases his alleged status as a general creditor on the assumption that he is a "net loser" "[a]ccording to the facts pleaded in [Defendant's] counterclaim," including that his BLMIS account "should be deemed" to contain principal. (Opp. at 20.) As discussed above in Section A.1., Defendant's legal conclusion that his account balances in a Ponzi scheme should be considered principal may not be presumed true. In addition, Defendant's failure to file a SIPA claim with the Trustee bars any net equity claim he might have had against the customer property estate, just as it would bar any "net loser" who failed to file a claim with the Trustee prior to the claims bar date in this case from recovering actual deposits made to BLMIS in excess of his or her withdrawals. *See* SIPA § 78fff-2(a)(3).

[7] Section 78*lll*(11) provides that:
   The term "net equity" means the dollar amount of the account or accounts of a customer, to be determined by—
    (A) calculating the sum which would have been owed by the debtor to such customer if the debtor had liquidated, by sale or purchase on the filing date—
    (i) all securities positions of such customer (other than customer name securities reclaimed by such customer); and
    (ii) all positions in futures contracts and options on futures contracts held in a portfolio margining account carried as a securities account pursuant to a portfolio margining program approved by the Commission,

counterclaims may not be dismissed because they are "integrally tied to the calculation of [his]

net equity" is erroneous and, for the purposes of his counterclaims, Defendant is a general

creditor of BLMIS's yet-unfunded general estate. (Opp. at 21.)

This would be true even if the Trustee's net equity calculations with respect to Defendant

someday prove incorrect and Defendant were found to be a "net loser" of the fraud:  As the

Second Circuit held for customer claims in this liquidation, Defendant's net loser customer claim

would be calculated using the Trustee's Net Investment Method, and this calculation would be to

the exclusion of any state or federal law claims for restitution or damages Defendant might have

against BLMIS or Madoff.  *See In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d at 238; *see also*

Net Equity Decision at 142 ("Equality is achieved in this case by employing the Trustee's

method, which looks *solely* at deposits and withdrawals that in reality occurred") (emphasis

added).

Moreover, if customers were permitted to pursue counterclaims as part of net equity

claims against the customer property estate, ratable distribution of the customer property to

BLMIS's other customers would be impossible, as any counterclaiming defendant could recover

damages from the customer property estate before other customers were even paid in full on their

respective net equity claims.  *See In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d at 238 (noting

that claimants should not be able to "derive additional benefit at the expense of those customers

who had not withdrawn funds before the fraud was exposed"); *In re Bell & Beckwith*, 937 F.2d

including all property collateralizing such positions, to the extent that such property is not otherwise
included herein; minus
 (B) any indebtedness of such customer to the debtor on the filing date; plus
 (C) any payment by such customer of such indebtedness to the debtor which is made with the approval of
the trustee and within such period as the trustee may determine (but in no event more than sixty days after
the publication of notice under section 78fff–2(a) of this title).
Section 78fff-2(b) governs the determination of "claims relating to, or net equities based upon, securities of a class
and series of an issuer which are ascertainable from the books and records of the debtor or are otherwise established
to the satisfaction of the trustee."

1104, 1106 (6th Cir. 1991) ("Certain property as defined by SIPA is pooled into a customer property fund in which customers share ratably"); *see also* Net Equity Decision at 142 ("[T]he Net Investment Method brings the greatest number of investors closest to their positions prior to Madoff's scheme in an effort to make them whole.").

Under the precedents set by the Net Equity Decision, as affirmed by the Second Circuit, and Judge Rakoff's Antecedent Debt Decision, Defendant's second, third, fourth and fifth counterclaims are, at best, claims against a hypothetical BLMIS general estate. Therefore, these claims fail to state a claim for which relief can be granted.

> b.    As this Court Recognized, the Antecedent Debt and Net Equity Decisions Have Not Been Called Into Question

Defendant argues that "subsequent contrary precedent" requires that the Antecedent Debt Decision be reconsidered. (Opp. at 20, 34-35.) However, Defendant's so-called "contrary precedent" is not contrary at all, and in no way undermines the well-reasoned findings in the Antecedent Debt Decision and, now, the Inter-Account Transfer Decision.

Although *Law v. Siegel*, 134 S.Ct. 1118, 1194 (2014), does hold that "a bankruptcy court may not contravene specific statutory provisions," Defendant does not establish that the Antecedent Debt Decision in any way does so. The Antecedent Debt Decision does not "strip" clawback defendants of statutory defenses under 11 U.S.C. § 548(c), as Defendant contends. (Opp. at 35.) This Court considered and rejected a similar argument by customers who claimed that the Inter-Account Transfer Method violates the two year statutory reach-back period set forth in Section 548(a)(1). "The Inter-Account Method does not disturb or avoid the transfer; it merely determines the value of what was transferred based on the net investment in the transferor's account." Inter-Account Transfer Decision at 13.

- 12 -

Nor does the Second Circuit's recent ruling in *Picard v. Fairfield Greenwich Ltd.*, 762
F.3d 199, 212 (2d Cir. 2014), undermine this Court's holding or the Antecedent Debt Decision.
The *Fairfield* case concerns entirely different issues related to the automatic stay and has no
bearing on the issue of value provided by an avoidance defendant to a debtor. *Id.* Nothing in the
*Fairfield* decision implies that the Antecedent Debt Decision has granted the Trustee
impermissible avoidance powers. In fact, as the Trustee outlined in his September 12, 2014
response to the letter of Pryor Cashman LLP and Dentons US LLP on behalf of certain
avoidance action defendants, the Antecedent Debt Decision is in line with a long line of
decisional authority in the both SIPA and non-SIPA contexts that Ponzi scheme investors cannot
provide value to the debtor in excess of their principal investment. *See* Letter of Nicholas J.
Cremona at 2-3, *Securities Investor Prot. Corp. v. Bernard L. Madoff Investment Securities LLC*,
Adv. Pro. No. 08-01789 (SMB) (Bankr. S.D.N.Y. Sept. 12, 2014), ECF No. 7936 (summarizing
authority).

**B.      The Trustee's Motion to Strike**

Defendant contends that the Trustee's Motion to strike may not proceed because
lingering questions of fact and law exist with respect to the relevant affirmative defenses[8] after
determination of the Motion to dismiss his counterclaims, and that no prejudice will result if the
Trustee is compelled to address these defenses. (Opp. 24-38) (citing *Sec. Exch. Comm'n v.
Toomey*, 866 F. Supp. 719, 722 (S.D.N.Y. 1992). To the contrary, as set forth above and in the
Trustee's Memorandum, adequate facts have been pleaded to determine the validity of
Defendant's counterclaims and the corresponding Affirmative Defenses. No further discovery as
to the facts or further proceedings on any substantial questions of law are necessary to determine

---

[8] As is more fully set forth in Trustee's Motion, the Trustee has moved to strike Defendant's fifteenth, sixteenth,
twenty-first, twenty-fourth, and thirty-second through thirty-fourth defenses, in whole or in part (the "Affirmative
Defenses"). (*See* Mem. at 20-23.)

the viability of these Affirmative Defenses; therefore, Trustee's Motion to strike may be determined at the current stage of litigation before he his prejudiced by added discovery and pleadings on meritless defenses.[9]

**1.    Sufficient Facts Have Been Pleaded that No Determinative Questions of Fact Remain as to the Viability of the Specific Affirmative Defenses**

Defendant's Opposition characterizes his fifteenth, sixteenth, twenty-first, twenty-fourth, and thirty-second defenses as centering on the question of fact of the amount of principal on deposit in his account.  (Opp. at 25 n.11-15.)  However, for each of these Affirmative Defenses, Defendant either misstates the evidence necessary to determine the merits of his arguments, attempts to amend his Affirmative Defenses constructively to require additional fact-finding to determine their validity, or attempts to expand the Trustee's request to strike a defense in part to a request to strike the defense in full.  In each instance, no further factual determinations are required or relevant for this Court to grant the Trustee's limited Motion to strike.

With respect to the fifteenth defense, the Trustee expressly limited his Motion to strike this Defense to arguments that "Defendant's withdrawals should be *deemed* to be return of principal or payment of an antecedent debt."  (Mem. at 20 n.7) (emphasis added).   The Trustee has not sought to strike any aspect of this defense related to actual cash deposits in the account, and thus his partial Motion to strike this defense does not invoke the question of the account's

---

[9] Because the Court's role in deciding a motion to strike is to "ascertain whether there is any possibility that additional evidence could allow the defense to succeed," Defendant requests that this Court should adopt a similar standard to that governing a motion to dismiss and that his "assertions should be taken as true" for the purposes of consideration of the Trustee's Motion to strike. (Opp. at 26-27) (quoting *Toomey*, 866 F. Supp. at 726.)  However, even under such a standard, Defendant has no entitlement to have his legal conclusions presumed true.  *See Iqbal*, 556 U.S. at 678.  For the first time in his Opposition, Defendant characterizes many of his Affirmative Defenses as turning on the accuracy of the Trustee's accounting of actual funds deposited or transferred to his BLMIS account. (*See, e.g.,* Opp. at 25, 27.)   To the extent that Defendant seeks to base his Affirmative Defenses on his ability to provide evidence of actual funds deposited to his account, the Trustee does not seek to prevent him from doing so.  However, to the extent Defendant bases the specified Affirmative Defenses on the legal conclusions underlying his Counterclaims and requests that this Court automatically consider his BLMIS balances to necessarily consist of principal, these Affirmative Defenses are likewise meritless and should be given no presumption of truth.

actual principal balance.  Any factual determination as to the actual principal balance is irrelevant to the determination of Defendant's legal basis to *deem* the entire balance to be principal regardless of its actual content, and this Court may evaluate the Motion to strike this defense in part without further fact-finding.  (*See* Mem. at 20-21.)

Similarly, Defendant's sixteenth and twenty-first defenses center on Defendant's entitlement to setoff or recoupment, either generally or specifically with respect to Madoff convincing Defendant to become a direct accountholder.  (Answer ¶¶ 93, 98; Opp. 25 n.12.) Defendant's actual principal balance in the account would be relevant only to determining the impact of a setoff or recoupment if such setoff or recoupment were viable in the first instance. Where the Trustee's Motion argues that these defenses are not viable as a matter of law, this Court does not need to determine the principal balance of Defendant's account to determine whether these defenses may be struck.  (*See* Mem. at 20-21.)

Additionally, with respect to the twenty-first defense, Defendant's Opposition for the first time attempts to link this claimed defense to the Trustee's actions in entering into a settlement with Defendant's former wife (the "Levy Settlement").  (*Compare* Opp. at 25 n.13, *with* Answer ¶ 98.)  Defendant's Answer in no way bases its pleading of the twenty-first defense on the entry of the Levy Settlement,[10] and expressly roots this defense in the specifically-pleaded facts of BLMIS and Madoff's conduct in persuading Defendant to open an account rather than to receive payments outside of BLMIS.  (Answer ¶ 98.)  Defendant may not use his opposition to amend his claims to rely on additional – and unrelated – questions of fact.  *Cf. Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir.1984) ("[I]t is axiomatic that the complaint may

---

[10] To the extent that Defendant is attempting to base his arguments regarding the factual questions at issue on his assertion of an "unclean hands" defense, the Trustee specifically exempted any arguments regarding unclean hands from his Motion to strike (*see* Mem. at 20 n.7), and thus any questions of fact with respect to this aspect of the Twenty-First Affirmative Defense are wholly irrelevant to the instant Motion.

not be amended by the briefs in opposition to a motion to dismiss."); *see also E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 449 (4th Cir. 2011) ( "[S]tatements by counsel that raise new facts constitute matters beyond the pleadings and cannot be considered on a Rule 12(b)(6) motion").

Finally, with respect to his twenty-fourth defense, Defendant's Opposition mischaracterizes his own pleadings to invoke a factual dispute wholly irrelevant to the defense. Defendant attempts to frame the statement in his twenty-fourth defense that he is "entitled to a customer account balance as a matter of law" as a mere argument over the evidence of the amounts on deposit in his BLMIS account.  (Opp. at 25 n.14) ("This defense depends in large part upon whether [Defendant] had any principal in his account").  However, in reality, his twenty-fourth defense as pleaded expressly relies on his "customer statements as conclusive evidence of what was lawfully owed to him by BLMIS," rather than the existence of any real principal on deposit in the account.  (Answer ¶ 101.)  No factual determinations are necessary to determine the merits of this defense where Defendant seeks a ruling "as a matter of law," especially where predicated on an argument previously rejected in the Net Equity Decision.  *See Net Equity Decision at 142, aff'd in relevant part in In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d at 240.

Defendant also attempts to make generalized arguments that the facts relevant to the calculation of his ending principal balance must be further developed for the court to review the legal validity of the Affirmative Defenses.  (Opp. at 27-28.)  However, Defendant has amply pleaded the relevant circumstances of his investment history, (Answer ¶¶ 122-132, 136), and the Trustee has not moved to strike any defenses requiring proof of the extent of Defendant's avoidance liability in view of transfers received from his former wife.  Defendant identifies no

other facts requiring further discovery in order to determine if these defenses may proceed.

(Opp. at 27-29.)

### 2.    No Questions of Law Underlying the Affirmative Defenses Will Remain Following Determination of the Trustee's Motion to Dismiss

The particular Affirmative Defenses the Trustee seeks to strike, in whole or in part, may

be determined as a matter of law without further fact-finding.  These Affirmative Defenses take

two forms:  the fifteenth, sixteenth, and twenty-first defenses, which parrot Defendant's

counterclaims, may be struck on the same bases as the dismissal of those counterclaims, (Mem.

at 20-21), and the twenty-fourth, thirty-second, thirty-third, and thirty-fourth defenses, which

center on legal arguments already raised and rejected in the context of the BLMIS liquidation,

may be struck as insufficient without delving into further specifics of Defendant's relationship

with BLMIS.  (Mem. at 21-22; *see also* Antecedent Debt Decision at 427; Net Equity Decision at

142; *In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d at 240; Inter-Account Transfer Decision at

8-15.)

In attempting to portray these Affirmative Defenses as open issues of law not properly

subject to a motion to strike, Defendant once again argues that his failure to file a timely SIPA

claim does not bar his counterclaims or any corresponding Affirmative Defenses, and that prior

Second Circuit and District Court holdings rejecting his Affirmative Defenses are not

preclusive.[11]  However, just as each of these counterclaims are barred by Defendant's failure to

---

[11] Defendant's Opposition even makes plain that the supposedly "open" questions of law for many of his Affirmative Defenses are the same as those addressed by the Trustee's Motion to dismiss his counterclaims: for the fifteenth defense, the question of law is whether Defendant's balances may be deemed principal based on the reliance and estoppel arguments in support of his first and seventh counterclaims, (Answer ¶¶ 142, 173-74; Opp. at 25 n.11); for his sixteenth defense, the legal question is whether Defendant is entitled to setoff or recoupment as correspondingly alleged in Defendant's sixth counterclaim (Answer ¶¶ 165-68; Opp. at 25 n.12); and for the twenty-first defense, the legal question is likewise whether Defendant is entitled to a setoff or recoupment, as well as whether he was deprived of his subsequent transferee defense as part of tortious interference by BLMIS in his potential rights as a subsequent transferee, as alleged in his fifth and sixth counterclaims (Answer ¶¶ 161-62; Opp. at 24 n.13.)

file a timely SIPA claim, Defendant likewise has no entitlement to setoff, recoupment, or "principal" credit for payment of an antecedent debt as Affirmative Defenses where he failed to file a claim to preserve such an entitlement.  *See* section A.2, above.

Similarly, the Inter-Account Transfer Decision, Antecedent Debt Decision, and the Net Equity Decision, as upheld by the Second Circuit, must govern the legal arguments underlying Defendant's Affirmative Defenses just as they must govern his attempted counterclaims.  *See* section A.3, above.  All of the supposed questions of law invoked by the Affirmative Defenses, (*see* Opp. at 25 n.11-16, 26 n.17), have previously been addressed and resolved specifically with respect to BLMIS claimants who invested with BLMIS:

- BLMIS customers are not entitled to "principal credit" as a defense to return of avoidable transfers where transfers were allegedly made in satisfaction of an antecedent debt in the form of payment of state or federal claims (fifteenth, sixteenth, and twenty-first defenses), *see* Antecedent Debt Decision at 424 ("to the extent that payment of defendants' state and federal law claims would discharge an antecedent debt, that debt runs against [BLMIS's] general estate, not the customer property estate, and therefore cannot be the basis of the retention of customer property under Section 548(c));

- BLMIS customers are not entitled as a matter of law to the balances on their last customer statement (twenty-fourth defense), *see In re Bernard L. Madoff Inv. Sec. LLC* 654 F.3d at 240 ("Last Statement Method" was "properly rejected"); *see also* Net Equity Decision at 142; Inter-Account Transfer Decision at 15;

- BLMIS customers are not entitled as a matter of law to principal credit for account activity occurring prior to the applicable "reach back" period for the Trustee's avoidance claims (thirty-second, thirty-third, and thirty-fourth defenses), *see* Antecedent Debt Decision at 427 ("withdrawals before the reach-back period [must] be considered to determine whether a given transfer in fact compensated a defendant for a claim it would otherwise have had."); *see also* Inter-Account Transfer Decision at 14 (inter-account transfer recipients' "net equity claims must be reduced by any withdrawals the transferor took no matter when he took them").[12]

---

[12] With respect to the thirty-second and thirty-fourth defenses, Defendant contends that the "open issue[s] of law" include whether the Trustee's decision not to seek to avoid any obligations owed by BLMIS to Defendant or his former wife impacts the balance that must be considered principal in Defendant's account prior to the applicable "reach back" period of the Trustee's avoidance claims.  (Opp. at 25 n.15, 26 n. 17.)  However, the District Court has already considered and determined that the Trustee is not obligated to provide principal credit prior to the applicable "reach back" period, *see* Antecedent Debt Decision at 427, and has likewise found that any pre-"reach back" period obligations under BLMIS's account agreements are not binding.  *Id.* at 421 n.4 ("[T]he Court rejects defendants'

This is not a case where "discovery will shed additional light on the strength of the [defense]." *Toomey*, 866 F. Supp. at 726. The bases to strike these Affirmative Defenses are fully ascertainable at this time under the precedents set by this Court, the District Court, and the Second Circuit Court of Appeals. Thus, no lingering questions of law prevent this Court from striking these Affirmative Defenses as pleaded.

### 3.    Re-litigating These Issues Will Prejudice the Trustee

Defendant's Opposition is dismissive of the costs the Trustee will bear in re-litigating legal issues that have previously been decided in the Trustee's favor. (Opp. at 37-39.) Defendant primarily relies on the contention that discovery with respect to these Affirmative Defenses will be co-extensive with discovery as to proof of the Trustee's claims. (*Id.*) This is simply not true: the Trustee's avoidance claims will require discovery only as to proof of the Ponzi scheme, BLMIS's insolvency, the net investment calculation pertinent to Defendant's account, and Defendant's receipt of the avoidable transfers.[13] Defendant's fraud-based Affirmative Defenses, however, would entail substantial other discovery if permitted to proceed, including probable depositions and written discovery regarding "BLMIS/Madoff's *particular* fraud on" Defendant. (Opp. at 24) (emphasis added). The Trustee did not participate in this alleged fraud and has no personal knowledge as to these facts; he would be required to engage in considerable investigation. Compelling the Trustee to participate in such discovery, as well as

---

contention that [BLMIS's] pre-reach-back-period account statements constitute binding obligations of [BLMIS] to its customers that the Trustee must avoid" as the "account statements were not merely avoidable but were in fact invalid and thus entirely unenforceable."); *see also Picard v. Greiff*, 476 B.R. 715, 724-26 (S.D.N.Y. 2012). The District Court has determined these issues of law and ruled that BLMIS customers may not rely on these obligations to generate "principal" in their customer accounts. When and affirmative defense is "unavailable as a matter of law," this necessarily means that "there are no substantial questions of law or fact that might allow the defense to succeed." *Wausau Bus. Ins. Co. v. Horizon Admin Svcs., LLC*, 803 F. Supp. 2d 209, 213 (E.D.N.Y. 2011).

[13] *See, e.g.,* Order (1) Establishing Litigation Case Management Procedures for Avoidance Actions and (2) Amending the February 16, 2010 Protective Order, Ex. A, Sec. G., *Sec. Investor Prot. Corp. v Bernard L. Madoff Inv. Sec. LLC*, Adv. Pro. No. 08-01789 (BRL) (Bankr. S.D.N.Y. Nov. 10, 2010), ECF No. 3141.

the "increase in time, expense, and complexity" of responding to these meritless Affirmative

Defenses, will greatly prejudice the Trustee in this case. *Sec. Exch. Comm'n v. McCaskey*, 56 F.

Supp. 2d 323, 326 (S.D.N.Y. 1999).  Where, at the current stage of proceedings, this Court may

be "completely certain" that the Affirmative Defenses "could not succeed," the prejudice caused

by forcing the Trustee to respond to these Defenses cannot be disregarded. *Toomey,* 866 F.Supp.

at 726.

## **CONCLUSION**

For the foregoing reasons, and those set forth in the Trustee's Memorandum, the Trustee

respectfully requests that this Court dismiss Defendant's counterclaims and strike Defendant's

fifteenth, sixteenth, twenty-first, twenty-fourth, and thirty-second through thirty-fourth

Affirmative Defenses, in whole or in part.

Date:   December 22, 2014
        New York, New York

By: *<u>/s/ Marc E. Hirschfield</u>*
**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Email:  dsheehan@bakerlaw.com
Marc E. Hirschfield
Email:  mhirschfield@bakerlaw.com
Tracy Cole
Email: tcole@bakerlaw.com
M. Elizabeth Howe
Email: bhowe@bakerlaw.com

*Attorneys for Irving H. Picard, Trustee for the*
*Substantively Consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities*
*LLC and Bernard L. Madoff*