LAW OFFICE OF
RICHARD E. SIGNORELLI
799 Broadway, Suite 539
New York, NY 10003
Telephone:    212 254 4218
Facsimile:    212 254 1396
rsignorelli@nycLITIGATOR.com℠
www.nycLITIGATOR.com℠
*Attorneys for Defendant David Ivan Lustig*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------x

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | : |
| | : Adv. Pro. No. 08-01789 (SMB) |
| Plaintiff-Applicant, | : |
| | : SIPA LIQUIDATION |
| v. | : |
| | : (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | : |
| | : |
| Defendant. | : |

---------------------------------------------------------------------x

| | |
|---|---|
| In re: | : |
| | : |
| BERNARD L. MADOFF, | : |
| | : |
| Debtor. | : |

---------------------------------------------------------------------x

| | |
|---|---|
| IRVING PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | : |
| | : Adv. Pro. No. 10-4554 (SMB) |
| Plaintiff, | : **MEMORANDUM OF LAW IN** |
| | : **SUPPORT OF DEFENDANT'S** |
| v. | : **MOTION TO DISMISS OR,** |
| | : **ALTERNATIVELY, FOR A** |
| NTC & CO. LLP, as former custodian of an Individual Retirement Account for the benefit of David Ivan Lustig; and DAVID IVAN LUSTIG, | : **STAY** |
| | : |
| | : |
| Defendants. | : |

---------------------------------------------------------------------x

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES...........................................................................................................iii

PRELIMINARY STATEMENT ..........................…..........................................................................1

BACKGROUND...........................…….....................................................................................2

ARGUMENT...........................................…….….......................................................................5

POINT I

THE TRUSTEE LACKS STANDING
AND IS NOT AUTHORIZED TO
MAINTAIN THIS ACTION UNDER SIPA...........................…........................................6

POINT II

THE TRUSTEE FAILS TO PLEAD FRAUD
WITH THE REQUISITE PARTICULARITY...........…….......…....................................9

POINT III

THE TRUSTEE INCORRECTLY CALCULATED
THE "VALUE" GIVEN TO THE DEBTOR
AND THE AMOUNT OF "FICTITIOUS
PROFITS" THAT MAY BE AVOIDED...........................……….......................................12

POINT IV

THE TRUSTEE FAILS TO ADEQUATELY
PLEAD A CLAIM FOR RECOVERY
OF SUBSEQUENT TRANSFERS...........…….......................................................14

POINT V

THE IRA ACCOUNT IS STATUTORILY-
PROTECTED FROM THE TRUSTEE'S CLAIMS.........…….............................................15

i

POINT VI

THIS ACTION SHOULD BE DISMISSED
BECAUSE LUSTIG INTENDS TO DEMAND
A JURY TRIAL AND WILL NOT CONSENT
TO THIS COURT CONDUCTING SUCH A TRIAL..........…………......................................17

POINT VII

ALTERNATIVELY, THE COURT
SHOULD STAY THIS ACTION ..........…………....................................................….................18

POINT VIII

JOINDER IN OTHER MOTIONS TO
DISMISS FILED IN SIMILAR CASES ..........…………..........................................................19

CONCLUSION.................…………......................................................................................................20

# TABLE OF AUTHORITIES

## Cases

American Tissue, Inc. v. Arthur Andersen, LLP, 275 F.Supp.2d 398 (S.D.N.Y. 2003).................5

Andrew Velez Constr., Inc. V. Consolidated Edison Co. of N.Y., Inc.,
    373 B.R. 262 (Bankr. S.D.N.Y. 2007)......................………....................................6, 9

Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009).................................................………...................5

Balaber-Strauss v. Lawrence, 264 B.R. 303 (S.D.N.Y. 2001)..............………...........................10

Cunningham v. Brown, 265 U.S. 1 (1924).................................………................10

Daly v. Deptula (In re Carrozzella & Richardson), 286 B.R. 480 (D. Conn. 2002).....................10

Erickson v. Pardus, 551 U.S. 89 (2007)........................................………...................2 n.3

Gowan v. Amaranth LLC (In re Dreier LLP), 452 B.R. 451 (Bankr. S.D.N.Y. 2011).................14

Gowan v. Novator Credit Mgmt., 452 B.R. 467 (Bankr. S.D.N.Y. 2011).....................................14

In re Ford, 415 B.R. 51 (Bankr. N.D.N.Y. 2009)...................................................17 n.10

In re Glenn, 430 B.R. 56 (Bankr. N.D.N.Y. 2010)........................................................15

In re Jamesway Corp., 235 B.R. 329 (Bankr. S.D.N.Y. 1999)..............................................17 n.10

In re Keil, 88 F.2d 7 (2nd Cir. 1937)........................................................................15

In re Madoff Sec., 499 B.R. 416 (S.D.N.Y. 2013).......................................................6-7

In re Madoff Sec., 490 B.R. 46 (S.D.N.Y. 2013).......................................................1, 5

IRR Supply Ctrs., Inc. v. Phipps, 217 B.R. 427 (Bankr. W.D.N.Y. 1998)...........................17 n.10

J.K.C. v. T.W.C., 39 Misc.3d 899 (N.Y. Sup. Ct. Monroe Co. 2013)...........................................16

Marshall v. Picard, 2014 U.S. App. LEXIS 600 (2nd Cir. Jan. 13, 2014)................................8 n.6

Morgan v. Gordon, 450 B.R. 402 (W.D.N.Y. 2011).......................................................15

Musselman v. Home Ins. Co. of Indiana,
    1990 U.S. Dist. LEXIS 10235 (S.D.N.Y. Aug. 7, 1990)....................................18

Nisselson v. Softbank AM Corp., 361 B.R. 369 (Bankr. S.D.N.Y. 2007).......................................9

Orlick v. Kozyak (In re Fin. Fed. Title & Trust, Inc.), 309 F.3d 1325 (11th Cir. 2002).................10

Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67 (2nd Cir. 1998).............................................5

Picard v. Greiff, 476 B.R. 715 (S.D.N.Y. 2012)............................................................12, 17 n.10

Picard v. Madoff, 458 B.R. 87 (Bankr. S.D.N.Y. 2011)...............................................................14

Silverman v. K.E.R.U. Realty Corp. (In re Allou Distribs., Inc.),
    379 B.R. 5 (Bankr. E.D.N.Y. 2007)................................................................................14

Stern v. Marshall, 131 S.Ct. 2594 (2011)....................................................................................5

U.S. Bank Nat. Assoc. v. Perlmutter, 470 B.R. 659 (E.D.N.Y. Mar. 16, 2012)..........................18

**Statutes**

11 U.S.C. § 105.......................................................…….......................................................1, 18

11 U.S.C. § 105(a)...........................................……….......................................................18 n.12

11 U.S.C. § 502(d).............................................……….............................................................5

11 U.S.C. § 507............................................................................................................................19

11 U.S.C. § 544(b).....................................................................................................................3-4

11 U.S.C. § 546(e)...........................................……….......................................4, 16, 17 n.10

11 U.S.C. § 548(a)(1)(A)............................................1, 3, 4, 6, 9, 10, 12, 13, 13 n.9

11 U.S.C. § 548(a)(1)(B)....................................……….......…......…..............................3, 4

11 U.S.C. § 548(c).....................................................................................................................12

11 U.S.C. § 550(a)..........................................………..............................................4, 9, 12

15 U.S.C. § 78fff(e).....................................................................................................................19

15 U.S.C. § 78fff-2(c)(3)................................................................................................6, 7, 8

15 U.S.C. § 78fff-2(c)(1)(A)-(D)..........................................................................6, 6-7 n.5, 7

28 U.S.C. § 157(e)...............................................................................................................17

**<u>Rules</u>**

Fed. R. Bankr. P. 7009.......................................………........................................1, 5

Fed. R. Bankr. P. 7012(b)................................…….............................................1, 5

Fed. R. Civ. P. 9(b)....................................…….................................................1, 5, 9

Fed. R. Civ. P. 12(b)(1)................................…….................................................1, 5

Fed. R. Civ. P. 12(b)(6)................................…….................................................1, 5

N.Y. C.P.L.R. § 5205.......................................................................................16

N.Y. C.P.L.R. § 5205(c)...................................................................................16

N.Y. C.P.L.R. § 5205(c)(2)..............................................................................16

N.Y. C.P.L.R. § 5205(c)(5).................................................................16, 17 n.10

Defendant David Ivan Lustig ("Lustig" or, as he is referred to in the Complaint, "FBO Defendant")[1] respectfully submits this memorandum of law in support of his motion to dismiss the Complaint pursuant to Rules 9(b) and 12(b)(1) and (6) of the Federal Rules of Civil Procedure and Rules 7009 and 7012(b) of the Federal Rules of Bankruptcy Procedure or, alternatively, for a stay of this action pursuant to 11 U.S.C. § 105.[2]

## PRELIMINARY STATEMENT

As an initial matter, this Court does not have the power to "finally decide" this action. At most, this Court may "recommend proposed findings of fact and conclusions of law, which the district court would then review de novo." In re Madoff Sec., 490 B.R. 46, 55 (S.D.N.Y. 2013). As discussed below, the Complaint in this action should be dismissed in its entirety because:

(1) the Trustee lacks standing and is not authorized to maintain this action under the Securities Investor Protection Act ("SIPA");

(2) the Trustee failed to adequately plead that the transfer at issue was made "with actual intent to hinder, delay, or defraud" as required under 11 U.S.C. § 548(a)(1)(A);

(3) the Trustee incorrectly calculated the "value" represented by the principal investments in Lustig's IRA account and the amount of "fictitious profits", if any, that may be avoided under § 548(a)(1)(A);

---

[1] The other originally-named defendant, NTC & Co. LLP, was dismissed from this action without prejudice pursuant to a so-ordered stipulation entered on May 11, 2011.

[2] Lustig originally filed this motion to dismiss on February 28, 2014. The motion was subsequently withdrawn without prejudice to allow the parties to engage in mediation. The mediation took place on October 22, 2014, and was unsuccessful. As a result, Lustig is re-filing this motion to dismiss.

(4) the Trustee fails to adequately plead a claim for recovery of subsequent

transfers;

(5) the IRA account is exempt from the Trustee's claims under New York

state law; and

(6) insofar as Lustig has a right to a trial by jury, he at the present time

respectfully intends to demand such a trial and does not consent to this Court

conducting such a trial.

Alternatively, to the extent the Court finds that any part of this action should not

be dismissed because it cannot be determined whether the assets recovered by the Trustee and the

United States Department of Justice Department ("Justice Department") are sufficient to pay all

claims against the estate, this action should be stayed until such time as such a determination can

be made.

## BACKGROUND[3]

Bernard L. Madoff Investment Securities LLC ("BLMIS") was a securities broker-

dealer registered with the Securities and Exchange Commission ("SEC") and regulated under the

Securities Exchange Act of 1934. (Compl. ¶ 21). It operated three lines of business: investment

advisory, market-making and proprietary trading. (Id.). In its investment advisory business

BLMIS managed various types of accounts in which it agreed to trade in publicly-issued

securities for its customers and issued periodic statements to its customers showing the securities

---

[3]The facts set forth in this section are derived from the allegations in the Complaint,
which may be accepted as true for purposes of this motion only. See Erickson v. Pardus, 551
U.S. 89, 93-94 (2007). A copy of the Complaint is attached as Exhibit A to the Declaration of
Bryan Ha submitted herewith. Unless otherwise stated, all the exhibits referenced herein are
attached to that declaration.

held in or traded through their accounts and the values of their accounts.  (Id. ¶¶ 22-24).

Lustig held an individual retirement account ("IRA account") with BLMIS,

Account No. IZR297, in the name "NTC & Co. FBO David Ivan Lustig [redacted]".  (Compl. ¶

9; Exh. B to Compl.).  NTC & Co. LLP ("NTC") was the custodian of the account for the benefit

of Lustig.  (Compl. ¶ 2).  A Customer Agreement, an Option Agreement, and/or a Trading

Authorization Limited to Purchases and Sales of Securities and Options were executed and

delivered to BLMIS in connection with the account.  (Id. ¶ 36).

On July 25, 2007, a withdrawal of $2,000,000 was made from the IRA account.

(Exh. B to Compl.).  This was the only withdrawal ever made from the account.  (Id.).  There is

no allegation that the withdrawal was not made in good faith.  The Trustee does not allege that

Lustig knew or should have known of Madoff's fraud.  He is, indisputably, an innocent party.

According to the Trustee, $1,863,225 of that $2,000,000 withdrawal "represented fictitious

profits from the Ponzi scheme."[4]  (Compl. ¶ 3; Exh. B to Compl.).

The Complaint contains seven causes of action.   In Count One, the Trustee seeks

avoidance of the withdrawal of "fictitious profits" from the IRA account as an actual fraudulent

transfer under 11 U.S.C. § 548(a)(1)(A).  (Compl. ¶¶ 48-53).  In Count Two, the Trustee seeks

avoidance of the withdrawal as a constructive fraudulent transfer under 11 U.S.C. § 548(a)(1)(B).

---

[4]However, as set forth in the Declaration of David I. Lustig dated April 28, 2011, that was
submitted to the Trustee in connection with Lustig's request that the Trustee discontinue this
action against him, the entire sum of $2,000,000 that was withdrawn from the IRA account was
immediately reinvested back into BLMIS through a feeder fund called Lakeview Investment, LP,
which in turn invested the money with other BLMIS feeder funds.  That entire amount was lost
as a result of Madoff's fraud.  Taking that loss into account, less a relatively small payment that
Lustig subsequently received from a settlement with one of the underlying feeder funds, it is
plain that he did not actually receive any "fictitious profits" as the Trustee alleges.

(Id. ¶¶ 54-62).  In Counts Three through Six, the Trustee seeks avoidance of the withdrawal as an

actual and constructive fraudulent transfer under the New York Debtor and Creditor Law

("NYDCL") pursuant to 11 U.S.C. § 544(b).  (Id. ¶¶ 63-85).  In Count Seven, the Trustee seeks

recovery of subsequent transfers from Mr. Lustig on the theory that he was a subsequent

transferee of the initial transfer alleged to be avoidable in Counts One through Six.  (Id. ¶¶ 86-91,

2).  However, while alleging that subsequent transfers were made to Lustig, the Complaint does

not identify any of the alleged subsequent transfers.  (Compl. ¶¶ 40-41).

On March 30, 2012, Lustig filed a motion to withdraw the reference as to various

issues, including the issue of whether 11 U.S.C. § 546(e)'s safe harbor applies in the context of

Madoff's fraud and bars the avoidance claims brought by the Trustee under § 548(a)(1)(B) and

under § 544(b) and the NYDCL.  The motion was granted and the reference was withdrawn as to

those issues.  On May 23, 2012, the District Court (Rakoff, J.) entered a final judgment

dismissing the Trustee's avoidance claims under § 548(a)(1)(B) and under § 544(b) and the

NYDCL in this and other adversary proceedings pursuant to § 546(e).  This judgment was

affirmed by the Second Circuit Court of Appeals on December 8, 2014.  See In re Madoff Sec.,

No. 12-2557-bk-L (2d Cir.).

Accordingly, the only claims remaining in this action are: (1) Count One, in which

the Trustee seeks to avoid the withdrawal of "fictitious profits" as an actual fraudulent transfer

under § 548(a)(1)(A); and (2) Count Seven, insofar as it seeks recovery of subsequent transfers

from Lustig on the theory that he was a subsequent transferee of the initial transfer alleged to be

avoidable in Count One.  See 11 U.S.C. § 550(a) (trustee may only recover a transfer from a

subsequent transferee "to the extent that [the] transfer is avoided").

4

## ARGUMENT

As an initial matter, pursuant to <u>Stern v. Marshall</u>, 131 S.Ct. 2594 (2011) and other Supreme Court precedent, this Court "may not finally decide avoidance actions except conceivably in the process of resolving identical claims under § 502(d)[.]" <u>See</u> <u>In re Madoff Sec.</u>, 490 B.R. at 55. The Trustee has not asserted a claim under 11 U.S.C. § 502(d) in this action. Lustig does not consent to the adjudication of this action by this Court. Accordingly, this Court does not have the power to "finally decide" this action. At most, the Court may "recommend proposed findings of fact and conclusions of law, which the district court would then review de novo." <u>In re Madoff Securities</u>, 490 B.R. at 55.

Fed. R. Civ. P. 12(b)(1) and (6), made applicable in this adversary proceeding by Fed. R. Bankr. P. 7012(b), permit dismissal of a complaint for lack of subject matter jurisdiction and for failure to state a claim upon which relief may be granted, respectively. A challenge to a plaintiff's standing to bring suit "amounts to an objection to the court's subject matter jurisdiction." <u>American Tissue, Inc. v. Arthur Andersen, LLP</u>, 275 F.Supp.2d 398, 403 (S.D.N.Y. 2003). "To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009) (citation omitted). "An affirmative defense may be raised by a pre-answer motion to dismiss under Rule12(b)(6), without resort to summary judgment procedure, if the defense appears on the face of the complaint." <u>Pani v. Empire Blue Cross Blue Shield</u>, 152 F.3d 67, 74 (2d Cir. 1998).

Fed. R. Civ. P. 9(b) requires that, in alleging fraud, "a party must state with particularity the circumstances constituting [the] fraud[.]" <u>See</u> Fed. R. Bankr. P. 7009. This

5

heightened pleading standard applies to actual fraudulent transfer claims under § 548(a)(1)(A).

See Andrew Velez Constr., Inc. v. Consolidated Edison Co. of N.Y., Inc., 373 B.R. 262, 269

(Bankr. S.D.N.Y. 2007).

## POINT I

### THE TRUSTEE LACKS STANDING
### AND IS NOT AUTHORIZED TO
### MAINTAIN THIS ACTION UNDER SIPA

   The Complaint in this action should be dismissed in its entirety because the

Trustee lacks standing and is not authorized to maintain this action under SIPA.  Under SIPA §

78fff-2(c)(3), a trustee is only authorized to bring an avoidance action under the Bankruptcy

Code to recover property transferred by the debtor when there are insufficient funds in the estate

to pay allowed customer claims and certain other specified claims. Section 78fff-2(c)(3)

provides:

> Whenever customer property is not sufficient to pay in full the
> claims set forth in subparagraphs (A) through (D) of [§ 78fff-
> 2(c)(1)], the trustee may recover any property transferred by the
> debtor which, except for such transfer, would have been customer
> property if and to the extent that such transfer is voidable or void
> under the provisions of Title 11.

15 U.S.C. § 78fff-2(c)(3).  If the fund of customer property is sufficient to satisfy the claims

specified in § 78fff-2(c)(1)(A)-(D), then the trustee has no power to bring an avoidance action to

recover any property transferred by the debtor.[5]  See In re Madoff Sec., 499 B.R. 416, 420

---

[5]SIPA § 78fff-2(c)(1) specifies that the fund of customer property must be used to pay
claims as follows:

> (A) first, to SIPC in repayment of advances made by SIPC pursuant
> to section 78fff-3(c)(1) of this title, to the extent such advances
> recovered securities which were apportioned to customer property

(S.D.N.Y. 2013) ("to the extent that existing 'customer property is not sufficient to pay in full' those statutorily identified claims, the trustee is empowered by SIPA to [bring an avoidance action to] 'recover any property transferred by the debtor which, except for such transfer, would have been customer property").

Here, the Trustee alleges in the Complaint that "SIPC has not reimbursed, and statutorily cannot fully reimburse, all customers for all of their losses" and that "the Trustee will not be able to fully satisfy all claims[.]" (Compl. ¶ 20(d), (e)). Accordingly, as alleged in the Complaint, the Trustee purports to exercise his authority to bring this avoidance action under § 78fff-2(c)(3): "the Trustee must use his authority under SIPA and the Bankruptcy Code to pursue recovery from customers who received preferences and/or payouts of fictitious profits to the detriment of other defrauded customers whose money was consumed by the Ponzi scheme." (Compl. ¶ 17). The Trustee alleges that, "[a]bsent this or other recovery actions, the Trustee will be unable to satisfy the claims described in subparagraphs (A) through (D) of SIPA section 78fff-2(c)(1)." (Id.).

However, the fund of customer property is sufficient to pay all claims in this case.

---

pursuant to section 78fff(d) of this title;

(B) second, to customers of such debtor, who shall share ratably in such customer property on the basis and to the extent of their respective net equities;

(C) third, to SIPC as subrogee for the claims of customers;

(D) fourth, to SIPC in repayment of advances made by SIPC pursuant to section 78fff-3(c)(2) of this title.

15 U.S.C. § 78fff-2(c)(1).

7

To date, the Trustee has allowed customer claims totaling $11.424 billion. (Exh. B). As of November 20, 2014, the Trustee has recovered (and will be recovering pursuant to settlement agreements that he has entered into) approximately $10.493 billion for the customer property fund. (Exh. C). In addition to that sum, there is approximately $4.443 billion available from the Justice Department to compensate customers with allowed claims: (1) $2.2 billion that the Justice Department received in connection with the Jeffrey Picower settlement that will be "distributed to victims of the fraud"[6]; and (2) approximately $2.243 billion that "will flow to 'net loser' victims of Madoff's fraud" pursuant to the Justice Department's and the Trustee's settlements with JPMorgan Chase Bank. (Exh. D, p. 3). The Justice Department has established a "Madoff Victim Fund" to distribute this money to victims of Madoff's fraud who have "'allowed' claims in the Madoff bankruptcy proceedings." (Exh. E).

In sum, there is approximately $14.936 billion available to pay the customer claims in this case. This sum exceeds the total amount of all allowed claims by approximately $3.512 billion ($14.936 billion minus $11.424 billion). Notably, this $3.512 billion surplus is sufficient to satisfy all the general creditor claims that have been filed against BLMIS. The total amount of all the general creditor claims is approximately $1.7 billion. (Exh. F, p. 6, ¶ 15).

Accordingly, because § 78fff-2(c)(3) only authorizes the Trustee to seek avoidance under the Bankruptcy Code when the fund of customer property is insufficient to pay all claims, the Trustee lacks standing and is not authorized to bring this avoidance action under SIPA. The Complaint should therefore be dismissed.

---

[6]Marshall v. Picard, 2014 U.S. App. LEXIS 600, at *10 and n.6 (2d Cir. Jan. 13, 2014).

**POINT II**

**THE TRUSTEE FAILS TO PLEAD FRAUD
WITH THE REQUISITE PARTICULARITY**

As noted above, the only claims remaining in this action are (1) Count One, in

which the Trustee seeks to avoid the withdrawal of "fictitious profits" as an actual fraudulent

transfer under § 548(a)(1)(A); and (2) Count Seven, insofar as it seeks recovery of subsequent

transfers from Lustig on the theory that he was a subsequent transferee of the initial transfer

alleged to be avoidable in Count One.  As discussed below, Count One must be dismissed

because the Trustee fails  to adequately plead that the transfer at issue was made "with actual

intent to hinder, delay, or defraud" as required under § 548(a)(1)(A).  Because the transfer at

issue in Count One is thus not avoidable, Count Seven must also be dismissed.  See § 550(a)

(trustee may only recover a transfer from a subsequent transferee "to the extent that [the] transfer

is avoided").

Actual fraudulent transfer claims under § 548(a)(1)(A) must meet the heightened

pleading requirements of Fed. R. Civ. P. 9(b).  See Andrew Velez Constr., 373 B.R. at 269.  Rule

9(b) requires a party alleging fraud to "state with particularity the circumstances constituting

fraud or mistake."  See Nisselson v. Softbank AM Corp., 361 B.R. 369, 395 (Bankr. S.D.N.Y.

2007) ("courts take a more liberal view when examining allegations of actual fraud . . . in the

context of a fraudulent conveyance, since a trustee is an outsider to the transaction who must

plead fraud from second-hand knowledge") (internal quotation marks and citation omitted).

Here, the Trustee makes no effort to describe the particular facts and

circumstances concerning the withdrawal at issue to show that it was made with fraudulent intent

9

as required under § 548(a)(1)(A).  Instead, the Trustee relies solely on the Ponzi scheme

presumptions – which essentially excuse him from having to establish that the transaction was

made with fraudulent intent – by simply affixing the Ponzi scheme label to BLMIS's operations.

However, the facts as shown in documents filed in the case do not support application of the

Ponzi scheme label or reliance on the Ponzi scheme presumptions here.

   The essential features of a Ponzi scheme as established in the caselaw are: (1)

little or no legitimate underlying business; (2) the promise of exorbitant returns over a short finite

period of time; (3) early scheduled payment of such returns to early (or "top") investors; (4) the

need to attract new money in order to pay the exiting top investors; and (5) the scheme's

inevitable failure.  See Cunningham v. Brown, 265 U.S. 1, 7-8 (1924); Orlick v. Kozyak (In re

Fin. Fed. Title & Trust, Inc.), 309 F.3d 1325, 1327 n.2 (11th Cir. 2002); Daly v. Deptula (In re

Carrozzella & Richardson), 286 B.R. 480, 482-84 nn. 2 and 7 (D. Conn. 2002); Balaber-Strauss

v. Lawrence, 264 B.R. 303, 305-306 (S.D.N.Y. 2001).

   None of those features are present here, other than the failure of Madoff's scheme

and his arrest.  First, BLMIS operated legitimate trading businesses.  It was "largely involved in

legitimate trading with institutional counterparties."  (Declaration of Joseph Looby ("Looby

Decl.") ¶ 28).[7]  Documents referenced in the Trustee's complaints and the records of the

_____

  [7]See Securities Inv. Prot. Corp. v. Bernard L. Madoff Invest. Sec., Inc., Adv. Pro. No. 08-
01789 (SMB), Declaration Of Joseph Looby In Support Of Trustee's Motion For Order
Upholding Trustee's Determination Denying "Customer" Claims For Amount Listed On Last
Customer Statement, Affirming Trustee's Determination Of Net Equity, And Expunging Those
Objections Relating To The Determination Of Net Equity filed on October 16, 2009 [Dkt. No.
524-1].

Bankruptcy Court case, including the Trustee's First Interim Report[8] and the Looby Decl., show

that BLMIS was once one of the largest traders of securities. It employed 200 people, 94% of

whom conducted trades equal to 10% of the daily volume on the New York Stock Exchange.

See Randall Smith, *Wall Street Mystery Features a Big Board Rival*, Wall Street Journal, Dec.

16, 1992. The Looby Decl. makes it clear that customers' money was used to purchase securities

in BLMIS's legitimate trading operation. Money was deposited "directly and indirectly" into the

BLMIS trading account. (Looby Decl. ¶¶ 9, 17, 18, 19, 26, 27). As of the date of the

commencement of the SIPC liquidation proceedings, BLMIS had legitimate trades and securities

positions outstanding that ultimately yielded proceeds of more than $334 million. (Trustee's

First Interim Report ¶¶ 30-34). In addition, the Trustee successfully sold BLMIS's market-

making operation for approximately $25.5 million. (Id. ¶¶ 24-28).

      Second, BLMIS investors used their accounts just like investors in any brokerage

firm would use their accounts. They deposited and withdrew money from their accounts as

needed and to the extent there were funds available in their accounts. There was no pattern of

early investors being paid with later investors' money and then exiting. Many early investors in

fact stayed invested with BLMIS until the fraud was discovered, while there were new customers

who opened accounts and then withdrew all their money within the same year. Further, there

was no finite period of investment. There was no deadline for investments. The BLMIS

operations continued for decades. Customers were free to deposit and withdraw from their

accounts at any time. Finally, when Madoff was arrested, there were securities and cash worth

---

     [8]See Securities Inv. Prot. Corp. v. Bernard L. Madoff Invest. Sec., Inc., Adv. Pro. No. 08-01789 (SMB), Trustee's First Interim Report For The Period December 11, 2008 through June 30, 2009 [Dkt. No. 314].

hundreds of millions of dollars in the BLMIS accounts.

In short, the facts do not support application of the Ponzi scheme label or reliance on the Ponzi scheme presumptions in this case. Accordingly, Count One must be dismissed because the Trustee fails to adequately plead that the transfer at issue was made "with actual intent to hinder, delay, or defraud" as required under § 548(a)(1)(A). Because the transfer is thus not avoidable, Count Seven must also be dismissed. See § 550(a).

## POINT III

### THE TRUSTEE INCORRECTLY CALCULATED THE "VALUE" GIVEN TO THE DEBTOR AND THE AMOUNT OF "FICTITIOUS PROFITS" THAT MAY BE AVOIDED

Section 548(c) provides for an affirmative defense to actual fraudulent transfer claims under 548(a)(1)(A). Pursuant to § 548(c), transfers are not avoidable to the extent they were taken "for value and in good faith[.]" 11 U.S.C. § 548(c). "[D]efendants can prevail on their motion to dismiss [] claims [under § 548(a)(1)(A)] if they prove that, 'on the face of the complaint[s],' they can invoke the affirmative defense provided by § 548(c)." Picard v. Greiff, 476 B.R. 715, 723-24 (S.D.N.Y. 2012).

Here, there is no question as to Lustig's good faith. There is no allegation that the withdrawal at issue was not made in good faith or that Lustig knew or should have known of Madoff's fraud. He is, indisputably, an innocent party. Thus the only question is whether (and to what extent) the withdrawal was made "for value."

It is not disputed that the principal sums deposited into the IRA account constitute "value" given to the debtor. To the extent the withdrawal at issue consisted of such principal, it

12

was clearly made for "value" and thus is not avoidable. The Trustee concedes all that. The problem here though is that in calculating the amount of the deposits made into the account (and thus the "value" given to the debtor), the Trustee failed to take into consideration the effects of inflation. The SEC has generally supported an inflation adjustment on both legal and equitable grounds. (See Memorandum of Law of the Securities and Exchange Commission Supporting a Constant Dollar Approach to Valuing Customers' Net Equity Claims for Fictitious Securities Positions, Dec. 10, 2012 ("SEC Mem.") (ECF Dkt. No. 5142)). According to the SEC, "an inflation adjustment should provide a more accurate calculation of the real-dollar value of the customer's net investment[.]" (SEC Mem. p. 1). The SEC noted that "[b]ecause of the unusually long duration of Madoff's Ponzi scheme, the effects of inflation may be more pronounced than in a case of a scheme of shorter duration, so the benefits of an adjustment here may be significant." (Id. at 16).

By not adjusting for inflation the Trustee incorrectly calculated the "value" to the debtor represented by the principal investments, and thus also incorrectly calculated the amount of "fictitious profits", if any, that may be avoided under § 548(a)(1)(A).[9] Accordingly, Count One and Count Seven must be dismissed.

---

[9]On September 10, 2013, Judge Lifland issued a decision denying an inflation-based adjustment to net equity claims for the purposes of claims allowance and distribution of estate property. The decision did not address an inflation-based adjustment for purposes of determining "value" in connection with an avoidance claim under § 548(a)(1)(A).

POINT IV

### THE TRUSTEE FAILS TO ADEQUATELY
### PLEAD A CLAIM FOR RECOVERY
### OF SUBSEQUENT TRANSFERS

Count Seven must also be dismissed because the Trustee fails to adequately plead a claim for recovery of subsequent transfers.  "To establish an entity as a subsequent transferee, courts have required that the complaint contain the 'necessary vital statistics – the who, when, and how much' of the purported transfers[.]" Gowan v. Novator Credit Mgmt., 452 B.R. 467, 478 (Bankr. S.D.N.Y. 2011) (quoting Silverman v. K.E.R.U. Realty Corp. (In re Allou Distribs., Inc.), 379 B.R. 5, 32 (Bankr. E.D.N.Y. 2007)).  The complaint must at a minimum provide some "specificity with respect to the [s]ubsequent [t]ransfers so as to put the Defendants on notice as to which ones the Trustee seeks to recover[.]" Picard v. Madoff, 458 B.R. 87, 120 (Bankr. S.D.N.Y. 2011).  A complaint that alleges that subsequent transfers were made to subsequent transferees "without providing any sort of estimate of the amount of the purported [s]ubsequent [t]ransfer, or when or how such [t]ransfer occurred",  is insufficient to state a claim for recovery from subsequent transferees.  Id. at 119-20; see Gowan v. Amaranth LLC (In re Dreier LLP), 452 B.R. 451, 465 (Bankr. S.D.N.Y. 2011) (allegation that the defendant received subsequent transfers, with "no specific facts to back up the allegation", insufficient to state claim for recovery from subsequent transferees); Novator, 452 B.R. at 480 ("conclusory and speculative allegations" insufficient to support claim "that the transfers were subsequently transferred to the [defendants]").

Here, the Complaint fails to adequately plead a claim for recovery of subsequent transfers.  In connection with Count Seven, the Trustee alleges "[o]n information and belief" that

14

"the Subsequent Transfers were transferred by Defendant NTC to FBO Defendant [i.e., Lustig]."

(Compl. ¶ 88). The term "Subsequent Transfers" is defined, circularly, as "the Transfers [that]

were subsequently transferred by Defendant NTC to FBO Defendant[.]" (Id. ¶ 40). No specific

facts are alleged in the Complaint to back up these vague and conclusory allegations. The

Complaint does not identify any of the alleged subsequent transfers. It is devoid of any specific

information as to any of the alleged subsequent transfers. No information is provided as to the

amount of any of the alleged subsequent transfers, or when or how they were made. Notably, the

table attached as Exhibit B to the Complaint only identifies the initial transfer made from BLMIS

to its customer. It does not identify any of the alleged subsequent transfers. (Exh. B to Compl.).

As it stands, the Complaint provides no notice whatsoever as to which subsequent transfers the

Trustee is seeking to recover.

In short, the Complaint fails to adequately state a claim for recovery of subsequent

transfers. Accordingly, Count Seven must be dismissed in its entirety.

## POINT V

### THE IRA ACCOUNT IS STATUTORILY-
### PROTECTED FROM THE TRUSTEE'S CLAIMS

The account at issue in this case is an IRA account. (Compl. ¶ 9; Exh. B to

Compl.). As such, it is exempt from the claims of judgment creditors such as the Trustee.

"[I]t is well-settled that exemption provisions are to be construed liberally."

Morgan v. Gordon, 450 B.R. 402, 405 (W.D.N.Y. 2011); In re Keil, 88 F.2d 7, 8 (2nd Cir. 1937)

("Exemption statutes are to be liberally construed[.]"). The Trustee "bears the burden of proof

to establish that the exemption is improper." In re Glenn, 430 B.R. 56, 58 (Bankr. N.D.N.Y.

2010).

The IRA account is protected from the Trustee's avoidance claims under N.Y. C.P.L.R. § 5205(c). CPLR § 5205 exempts certain categories of personal property from judgment creditors' claims. "In general they are what the legislature deems to be the necessities of life, which not even a person's judgment creditors should be allowed to reach." David D. Siegel, New York Practice § 490 (5th ed. 2011). Under CPLR § 5205(c), "all property while held in trust for a judgment debtor, where the trust has been created by, or the fund so held in trust has proceeded from, a person other than the judgment debtor, is exempt from application to the satisfaction of a money judgment." CPLR § 5205(c)(2) provides, in pertinent part, that all "monies, assets or interests established as part of, and all payments from, either any trust or plan, which is qualified as an individual retirement account under [the United States Internal Revenue Code]" – such as the IRA account here – "shall be considered a trust which has been created by or which has proceeded from a person other than the judgment debtor, even though such judgment debtor is [] in the case of an individual retirement account plan, an individual who is the settlor of and depositor to such account plan[.]"

Individual retirement accounts are thus exempt from the claims of creditors under CPLR § 5205(c). See J.K.C. v. T.W.C., 39 Misc.3d 899, 905 (N.Y. Sup. Ct. Monroe Co. 2013) ("In 1989 and 1994, the New York State Legislature, through amendments to CPLR § 5205, clarified that IRAs were exempt from claims of creditors."). This exemption is subject to the exception that transfers to a trust are not exempt if "deemed to be fraudulent conveyances under article ten of the debtor and creditor law [i.e., the NYDCL]." CPLR § 5205(c)(5). This exception is not applicable here, however, in light of the District Court's determination that the Trustee's avoidance claims under the NYDCL are barred by § 546(e).

16

Accordingly, the Trustee's claims to avoid the withdrawal from the IRA account must be dismissed.[10]

## POINT VI

### THIS ACTION SHOULD BE DISMISSED
### BECAUSE LUSTIG INTENDS TO DEMAND
### A JURY TRIAL AND WILL NOT CONSENT
### TO THIS COURT CONDUCTING SUCH A TRIAL

Insofar as Lustig has a right to a trial by jury in this case, he presently intends to exercise this right and demand a trial by jury.  However, this Court may conduct a jury trial only "if specially designated to exercise such jurisdiction by the district court and with the express consent of all parties." 28 U.S.C. § 157(e) (emphasis added).  Lustig does not presently consent to this Court conducting the jury trial in this action.  Accordingly, this action should be dismissed in the absence of such consent.[11]

---

[10] The District Court had rejected a similar argument in Grieff.  See Grieff, 476 B.R. at 729 n.13.  Notably, in Grieff, the District Court did not address the fact that the exception under CPLR § 5205(c)(5) applies only to fraudulent conveyances under the NYDCL and that the Trustee's claims under the NYDCL are barred by § 546(e).  See id.  In any event, this Court is not bound by the District Court's decision in that action.  See In re Jamesway Corp., 235 B.R. 329, 337 n.1 (Bankr. S.D.N.Y. 1999) ("We find that where the bankruptcy court sits in a multi-judge district, it is not bound by principles of stare decisis by the decision of a district court in that district.") (citing cases); In re Ford, 415 B.R. 51, 61 (Bankr. N.D.N.Y. 2009) ("In carefully considering this issue, this court respectfully concludes that principles of *stare decisis* do not control the outcome of the resolution of the matter before it and finds that it is not bound by the district court's [decision].") ; but see IRR Supply Ctrs., Inc. v. Phipps, 217 B.R. 427, 430 (Bankr. W.D.N.Y. 1998) (bankruptcy court bound by district court decision in multi-judge district).

[11] As previously noted, Lustig respectfully reserves his right to reconsider his position on this issue at a later stage of this case.

## POINT VII

## ALTERNATIVELY, THE COURT
## SHOULD STAY THIS ACTION

Alternatively, to the extent that any part of this action is not dismissed because it cannot be determined whether the assets recovered by the Trustee and the Justice Department are sufficient to pay all claims in this case, Lustig respectfully submits that this action should be stayed until such time as such a determination can be made.

A bankruptcy court "has the authority to enter a complete stay of an adversary proceeding" pursuant to 11 U.S.C. § 105.[12] Musselman v. Home Ins. Co. of Indiana, 1990 U.S. Dist. LEXIS 10235, at *5 (S.D.N.Y. Aug. 7, 1990). "The determination whether to issue a stay is committed to the court's sound discretion." U.S. Bank Nat. Assoc. v. Perlmutter, 470 B.R. 659, 684 (E.D.N.Y. Mar. 16, 2012). The factors that courts consider in determining whether to grant a stay include the following: (1) the private interests of the plaintiffs in proceeding expeditiously versus any prejudice caused to the plaintiffs by the delay; (2) the private interests and burdens on the defendants; (3) the interests of the court; and (4) the interests of persons not parties to the proceeding. See id. at 685 (citations omitted). "In balancing these factors, the basic goal is to avoid prejudice." Id. (quotation marks and citations omitted).

These factors weigh in favor of a stay in this case. First, the Trustee will not suffer any prejudice from a stay as the Trustee and the Justice Department have already recovered more than enough assets to pay all allowed customer claims and general creditor claims. Permitting this action to go forward at this point would only prejudice the general estate, as the

---

[12]Title 11 U.S.C. § 105(a) authorizes a bankruptcy court to issue "any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code.]"

18

Trustee will incur substantial fees and costs in litigating this proceeding which SIPC – which has been advancing funds to the Trustee to cover such fees and costs – may ultimately seek to recover from the estate pursuant to SIPA § 78fff(e).  SIPC's claim to recover such fees and costs would have priority over other general unsecured claims.  See SIPA § 78fff(e); 11 U.S.C. § 507.

Second, Lustig would be substantially burdened by having to devote resources to litigating this action which may be moot once all the funds recovered by the Trustee and the Justice Department are disbursed and all allowed customer claims and general creditor claims against the estate are satisfied.  No purpose is served by imposing this burden on an innocent party like Lustig when the funds recovered are sufficient to satisfy all claims.

Third, a stay will promote judicial economy and allow the Court to avoid expending judicial resources overseeing litigation – against innocent victims of Madoff's fraud – that may ultimately be moot.  Fourth, a stay would benefit non-parties who would otherwise be burdened with non-party discovery in this case.  It is anticipated that discovery in this action will include depositions and document discovery from various non-party witnesses who participated in or have knowledge of Madoff's fraud.

In sum, Lustig respectfully submits that the relevant factors weigh in favor of granting a stay of this action.

## POINT VIII

## JOINDER IN OTHER MOTIONS TO DISMISS FILED IN SIMILAR CASES

Lustig adopts by reference any arguments made in other motions to dismiss filed by similarly-situated defendants in other BLMIS adversary proceedings to the extent such arguments are applicable and beneficial to him.

19

## CONCLUSION

For the foregoing reasons, the Complaint should be dismissed in its entirety.

Dated: New York, New York
December 22, 2014

Respectfully submitted,

LAW OFFICE OF
RICHARD E. SIGNORELLI

By:     /s/ Richard E. Signorelli
_____
Richard E. Signorelli
Bryan Ha
799 Broadway, Suite 539
New York, NY 10003
Telephone:     212 254 4218
Facsimile:      212 254 1396
rsignorelli@nycLITIGATOR.com<sup>SM</sup>
www.nycLITIGATOR.com<sup>SM</sup>
Attorneys for Defendant David Ivan Lustig

FILING AND SERVICE VIA ELECTRONIC FILING