# **EXHIBIT A**

Document2

## SETTLEMENT AGREEMENT

This **Settlement Agreement** (the "**Agreement**") is entered into between:

(1) **Irving H. Picard**, in his capacity as Trustee (the "**Trustee**") for the liquidation proceedings of Bernard L. Madoff Investment Securities LLC ("**BLMIS**") under the Securities Investor Protection Act of 1970, as amended, 15 U.S.C. § 78aaa *et seq.* ("**SIPA**")[1] and the substantively consolidated bankruptcy estate of Bernard L. Madoff, individually ("**Madoff**"), pending before the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**"),

(2) **Herald (Lux) SICAV**, ("**Herald (Lux)**" or the "**Fund**"), a *société d'investissement à capital variable*, established under Luxembourg law with registered office at 6, Place de Nancy, L-2212 Luxembourg, Grand-Duchy of Luxembourg, registered with the Trade and Companies Register under the number B 136.680, put into liquidation by a judgment given on April 2, 2009 (*Jugement commercial* VI No 506/2009) by the District Court of Luxembourg sitting in commercial matters (*Tribunal d'Arrondissement de et à Luxembourg*) (the "**Luxembourg District Court**"), represented by its liquidators Me Ferdinand Burg, attorney-at-law, with business address at 24, Place Guillaume II, L-1648 Luxembourg, Grand-Duchy of Luxembourg, and Mr Carlo Reding, certified auditor, with business address at 7, rue Thomas Edison, L-1445 Luxembourg-Strassen, Grand-Duchy of Luxembourg,

(3) **Me Ferdinand Burg**, ("**Liquidator**"), attorney-at-law, with business address at 24, Place Guillaume II, L-1648 Luxembourg, acting in his capacity as liquidator (*liquidateur judiciaire*) over the estate of Herald (Lux), and

(4) **Mr Carlo Reding**, ("**Liquidator**"), certified auditor (réviseur d'entreprises), with business address at 7, rue Thomas Edison, L-1445 Luxembourg-Strassen, acting in his capacity as liquidator (*liquidateur judiciaire*) over the estate of Herald (Lux);

each of (1) to (4) called individually a "**Party**" and collectively the "**Parties**", (3) and (4) called collectively the "**Liquidators.**"

## BACKGROUND

A. BLMIS was a registered broker-dealer and a member of the Securities Investor Protection Corporation ("**SIPC**").

B. On December 11, 2008 (the "**Filing Date**"), the Securities and Exchange filed a complaint in the United States District Court for the Southern District of New York (the "**District Court**") against BLMIS and Madoff.

C. On December 15, 2008, the District Court entered an order under SIPA, which, in pertinent part, appointed the Trustee for the liquidation of the business of BLMIS under section 5(b)(3) of SIPA and removed the case to the Bankruptcy Court under section 5(b)(4) of SIPA, where it is pending as Case No. 08-01789 (SMB) (the "**SIPA Proceeding**"). The Trustee is duly qualified to serve

---

[1] Subsequent references to SIPA shall omit "15 U.S.C."

and act on behalf of the BLMIS estate (the "**BLMIS Estate**"). By Order dated June 9, 2009, the estate of Madoff was substantively consolidated with the BLMIS Estate.

D. On or about March 17, 2008, an account was opened on behalf of the Fund with BLMIS named HSBC Securities Services (Luxembourg) SA Spec Cust Acct FBO Herald (Lux) US Absolute Return Fund (SICAV), assigned account number 1FR135 (the "**Account**"). According to BLMIS books and records, between March 17, 2008 and December 11, 2008 (the "**Filing Date**"), $255,600,000.00 (two hundred fifty five million six hundred thousand US dollars) of the Fund's assets were deposited into the Account (the "**Herald (Lux) Assets**").

E. On or about March 9, 2009, Mr. Richard Goddard, a Director of Herald (Lux), filed a customer claim in the SIPA Proceeding on behalf of Herald (Lux). The Herald (Lux) Customer Claim was assigned claim number 007377 (the "**Herald (Lux) Customer Claim**"). A copy of the Herald (Lux) Customer Claim is attached to the Agreement as **Exhibit A** and asserts that Herald (Lux) is entitled to the allowance of a customer claim in an amount reflected on the Account's November 30, 2008 BLMIS statement.

F. On April 2, 2009, by decision of the Luxembourg District Court (*Jugement commercial* VI No 506/2009), Herald (Lux) was put into liquidation (the "**Herald (Lux) Liquidation**") and Me Ferdinand Burg and Mr. Carlo Reding were appointed judicial liquidators over the estate of Herald (Lux) (the "**Herald (Lux) Estate**").

G. On December 5, 2010, the Trustee filed an Amended Complaint in an adversary proceeding captioned *Picard v. HSBC Bank PLC, et al.*, Adv. Pro. No. 09-1364 (SMB) (the "**Adversary Proceeding**"). The Amended Complaint alleges that Herald (Lux) is liable to the BLMIS Estate under various provisions of SIPA, the Bankruptcy Code, and the New York Debtor and Creditor Law for avoidable transfers (the "**Transfers**") that BLMIS made for the benefit of Herald (Lux). The aggregate value of the Transfers was $133,962.00. BLMIS's books and records show that the Transfers were payments BLMIS and/or Madoff made to the Internal Revenue Service (the "**IRS**") for the benefit of Herald (Lux). On December 21, 2011, the Bankruptcy Court approved a settlement between the Trustee and the United States of America on behalf of the IRS, in which the IRS agreed to return to the Trustee payments received from BLMIS and/or Madoff on behalf of certain BLMIS accountholders, including, without limitation, the $133,962.00 paid to the IRS for the benefit of Herald (Lux).

H. In the Amended Complaint, the Trustee also asserts claims seeking to: (i) disallow the Herald (Lux) Customer Claim, pursuant to 11 U.S.C. § 502(d); and (ii) equitably subordinate the Herald (Lux) Customer Claim, pursuant to 11 U.S.C. §§ 510(c) and 105(a).

I. The Liquidators, on behalf of Herald (Lux), dispute: (i) liability to the BLMIS Estate for the Transfers; (ii) that the Herald (Lux) Customer Claim should be disallowed; and (iii) that the Herald (Lux) Customer Claim should be equitably subordinated.

J. In order for the Trustee to consider allowing some or all of the Herald (Lux) Customer Claim and dismissing Herald (Lux) from the Adversary Proceeding, the Trustee asked to perform certain due diligence with respect to those parties who would potentially receive the proceeds of any distribution from the BLMIS Estate on the Herald (Lux) Customer Claim. Accordingly, on January 17, 2012, the Parties executed the Herald Lux (SICAV) Term Sheet Regarding Discovery and Claim Allowance (the "**Term Sheet**") agreeing to, among other things, a voluntary diligence process (the "**Diligence Process**").

K.  The Diligence Process included (i) the review of documents voluntarily provided to the Trustee and the Liquidators by Fund shareholders, as well as individuals and entities for whose benefit shareholders owned Fund shares (the "**Beneficial Owners**"), and other individuals and entities associated with Fund shareholders and Beneficial Owners; and (ii) interviews of certain Fund shareholders, Beneficial Owners, and other individuals and entities associated with Fund shareholders and Beneficial Owners who chose to participate in the Diligence Process. Through the Diligence Process, the Trustee examined information concerning various matters that could bear on the issue of good faith and claim allowance.

L.  The Diligence Process started in March 2012 and formally ended on December 21, 2012. However, thereafter the Parties continued to meet with Herald (Lux) shareholders and Beneficial Owners who signed into the Diligence Process, and other parties, in an attempt to resolve the Trustee's inquiries with respect to Herald (Lux).

M.  Most Fund shareholders and Beneficial Owners participated in the Diligence Process to the extent requested. Those parties comprise 79.38% of Herald (Lux)'s net equity. Certain Fund shareholders and Beneficial Owners (i) did not participate in the Diligence Process; (ii) did not participate in the Diligence Process to the extent necessary to satisfy all of the Trustee's inquiries regarding Herald (Lux); or (iii) are parties that the Trustee asserts lack good faith in their investment in Herald (Lux). Categories (i)-(iii) comprise 20.62% of the Fund.

N.  The Liquidators do not agree on the Trustee's conclusions regarding paragraph M of this Agreement, and assert that 100% of the Herald (Lux) Customer Claim should be recognized and allowed by the Trustee.

O.  However, in order to avoid the expense, delay and uncertainty of litigating the claims set forth against Herald (Lux) in the Adversary Proceeding, including, but not limited to, issues associated with the allowance of the Herald (Lux) Claim, the Trustee, on one hand, and the Liquidators, on behalf of the Fund, on the other hand, desire to settle their disputes about the matters described above on the terms set forth in this Agreement.

NOW, THEREFORE, in consideration of the foregoing, of the mutual covenants, promises and undertakings set forth herein, and for good and valuable consideration, the mutual receipt and sufficiency of which are hereby acknowledged, the Parties agree:

**1. Customer Claim Resolution**

Subject to the terms of this Agreement, and upon the Closing (as defined in Paragraph 9 of this Agreement), the Herald (Lux) Customer Claim shall be deemed conclusively allowed pursuant to SIPA section 78*lll* (11), equal in priority to other allowed customer claims against the BLMIS Estate in the amount of $230,040,000 (the "**Allowed Claim**"), which constitutes 90% of Herald (Lux)'s net equity.

**2. Distributions on the Allowed Claim**

(i)  Equal priority of the Allowed Claim to all other allowed and unsubordinated customer   claims

The Allowed Claim shall have equal priority to all other allowed and unsubordinated customer claims against the BLMIS Estate.

3

(ii)   Calculation methodology

Distributions on the Allowed Claim ("**Allowed Claim Distributions**") shall be calculated using the same methodology that the Trustee uses to calculate distributions for other allowed and unsubordinated customer claims against the BLMIS Estate. To the extent a final and nonappealable court order is entered determining that customer claims filed in the SIPA Proceeding must be adjusted for time-based damages, the Herald (Lux) Customer Claim will get the benefit of that adjustment. In the event of such an order, nothing in this Agreement, shall be construed as a waiver of any rights or claims held by the Fund as a customer (as defined in section 78fff-2(e)(4) of SIPA) of BLMIS in having the Allowed Claim re-determined in accordance with such court order. In the event of such a re-determination, any additional payments due to the Fund shall be made using the same methodology that the Trustee would use for other allowed and unsubordinated customer claims against the BLMIS Estate and in accordance with any court orders concerning distributions. Additionally, and as envisioned in section V of the Term Sheet, in lieu of any escrow arrangement, the Parties have instead agreed to proceed with this final determination of the Herald (Lux) Customer Claim, and also agree that there are no restrictions on the Liquidators' ability to distribute the proceeds of Allowed Claim Distributions in the Herald (Lux) Liquidation.

Furthermore, and excluding the Releases set forth in Paragraph 6 of this Agreement, for the avoidance of doubt, nothing set forth in this Agreement, and no distributions made in accordance with this Agreement, are intended to bar or otherwise impair the Liquidators, the Fund or the Herald (Lux) Estate's rights, claims and interests, or the rights, claims and interests of its shareholders and Beneficial Owners, and the Liquidators, the Fund and the Herald (Lux) Estate expressly retain all of their respective rights, claims and interests, to assert any causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, damages, judgments, and claims of whatever kind, nature or description, direct or indirect, in law, equity or arbitration, absolute or contingent, in tort, contract, statutory liability or otherwise, based on strict liability, negligence, gross negligence, fraud, breach of fiduciary duty or otherwise (including attorneys' fees, costs or disbursements), asserted or unasserted, known or unknown, suspected or unsuspected, that are, have been, or could have been, or might in the future be, asserted by the Liquidators on behalf of Herald (Lux) based on, arising out of or in any way related to Madoff, BLMIS, or the Account in any other past, present or future proceeding, including, but not limited to: (i) any litigation(s) that the Liquidators, the Fund or the Herald (Lux) Estate have commenced or may commence against any party (for example, and without limitation, nothing in this Agreement shall waive, impair or otherwise adversely impact the claims in principal or amount, damages and/or recoveries sought by the Liquidators on behalf of the Fund and the Herald (Lux) Estate in the litigation currently pending in Luxembourg against, amongst other parties, HSBC Securities Services (Luxembourg) S.A., Bank Medici AG, and Ernst & Young, S.A.), (ii) any asset forfeiture distribution program established to address remission claims arising from the Madoff fraud such as the Madoff Victim Fund established by the United States Department of Justice, or, without further limitation, (iii) any class action settlement proceeding to which the Liquidators, the Herald (Lux) Estate, the Fund or its shareholders or Beneficial Owners may be eligible to participate. Additionally, any recovery by the Liquidators, the Herald (Lux) Estate, the Fund or its shareholders or Beneficial Owners in any other proceeding shall not reduce or otherwise impair any distributions to be made by the Trustee on the Herald (Lux) Customer Claim.

(iii)   Initial Distribution on the Allowed Claim

On the date of the Closing, as defined in Paragraph 9 of this Agreement, the Trustee shall pay the $500,000 SIPC advance under SIPA section 78fff-3(a) and a *pro rata* distribution on the Allowed Claim (the "**Allowed Claim Initial Distribution**") into an account identified by the Liquidators (the "Herald (Lux) Account"). The Allowed Claim Initial Distribution will be an amount equal to the total of all prior

4

*pro rata* interim distributions of customer property that would have been made to Herald (Lux) had the Allowed Claim been allowed at the time that those interim distributions were made.

(iv) <u>Subsequent Distributions on the Allowed Claim</u>

In the event that the Trustee makes subsequent distributions after the Closing on the Allowed Claim, the Trustee shall pay such distributions into the Herald (Lux) Account on the date such distribution is made to holders of other allowed and unsubordinated customer claims.

As of the date of this Agreement, the amount to be paid by the Trustee to Herald (Lux) allocable to the Allowed Claim is US $105,954,124 (46.059% of the Allowed Claim).

### 3. Bankruptcy Court Order and Luxembourg District Court Order approving the Agreement

**3.1**

The Parties shall seek an order in both the Bankruptcy Court (the "**US Proceedings**") and the competent Luxembourg Court ("the "**Luxembourg Proceedings**") approving this Agreement (the "**Approvals**"), as set forth below.

**3.2**

Both Approvals are cumulative conditions precedent for the Agreement to have binding effect. The Agreement shall become effective and binding (the "**Effective Date**") on the later of: (a) the date on which the Bankruptcy Court enters an order approving the Agreement that is no longer subject to appeal, review or rehearing by any court of competent jurisdiction; or (b) the date on which the competent Luxembourg Court gives a decision approving/homologating the Agreement that is no longer subject to appeal ("*Acte d'Appel*" or *Recours en Cassation*") by any court of competent jurisdiction ("*Cour d'Appel*" or "*Cour de Cassation*").

**3.3**

If this Agreement is not approved by either the Bankruptcy Court or the competent Luxembourg Court as set forth in Paragraph 3.2, then: (a) this Agreement (other than this Paragraph 3) shall terminate and be null and void, (b) all of the statements, concessions, consents and agreements contained in this Agreement (other than this Paragraph 3) shall be null and void; and (c) neither the Trustee nor the Liquidators may use or rely on any such statements, concessions, consents and agreements contained in this Agreement in any public statement, case or proceeding relating to Herald (Lux), BLMIS or Madoff.

(i) <u>The US Proceedings</u>

The Trustee shall file a motion seeking an order of the Bankruptcy Court approving this Agreement under Fed. R. Bankr. P. 9019 within fifteen (15) days after the signing of the Agreement. The form of the approval order in the SIPA Proceeding shall be subject to the Parties' approval; the Parties shall not unreasonably withhold their approval of the proposed form of order. The Trustee shall provide the Liquidators with a draft of any motion to be filed with the Bankruptcy Court seeking approval of this Agreement, which shall be subject to the Liquidators' reasonable approval.

The approval order in the SIPA Proceeding shall provide for the allowance of the Allowed Claim. The Liquidators waive the thirty (30) day objection period in connection with the Trustee's determination of

5

the Allowed Claim and agree that, subject to the terms of this Agreement, the Trustee's determination of the Allowed Claim shall be deemed final as of the Effective Date.

(ii) The Luxembourg Proceedings

The Liquidators will apply no later than fifteen (15) business days after the signing of the Agreement to the competent Luxembourg Court in order to seek to obtain the approval/homologation of the Agreement. The form of the approval order in the Luxembourg Proceeding shall be subject to the Parties' approval; the Parties shall not unreasonably withhold their approval of the proposed form of order. The Liquidators shall provide the Trustee with a draft of any motion to be filed with the Luxembourg Court seeking approval of this Agreement, which shall be subject to the Trustees' reasonable approval.

The Parties consider the Luxembourg Court approval/homologation of the Agreement to be the decision given by the competent Luxembourg Court approving/homologating the Agreement as set forth in Paragraph 3.2(b).

4. **Dismissal of Adversary Proceeding as to Herald (Lux)**

As soon as practicable after the Effective Date, as defined above in Paragraph 3, the Trustee will file a notice of dismissal dismissing Herald (Lux) from the Adversary Proceeding with prejudice and without costs.

5. **Release by the Trustee**

Except with respect to any rights arising under this Agreement, as of the date of the Closing, as defined in Paragraph 9 of this Agreement, and in consideration for the covenants and agreements in this Agreement and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, and without the need for any further documentation, the Trustee, on behalf of himself, BLMIS, and its consolidated estate releases, acquits, and forever discharges the Liquidators and their professionals and agents, and Herald (Lux), from any past, present or future actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, damages, judgments, and claims of whatever kind, nature or description, direct or indirect, in law, equity or arbitration, absolute or contingent, in tort, contract, statutory liability or otherwise, based on strict liability, negligence, gross negligence, fraud, breach of fiduciary duty or otherwise (including attorneys' fees, costs or disbursements), asserted or unasserted, known or unknown (including "Unknown Claims" as defined below), suspected or unsuspected, that are, have been, or could have been, or might in the future be, asserted by the Trustee, based on, arising out of or in any way related to Madoff, BLMIS, or the Account, including, without limitation, any causes of action asserted in the Amended Complaint. For avoidance of doubt, this release shall not affect any claims against any person or entity except as set forth in this Paragraph.

6. **Releases by the Liquidators and Herald (Lux)**

Except with respect to any rights arising under this Agreement, as of the date of the Closing as defined in Paragraph 9 of this Agreement, and in consideration for the covenants and agreements in this Agreement and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, and without the need for any further documentation, each of the Liquidators, on behalf of themselves in their capacities as Liquidators, and Herald (Lux), release, acquit and forever discharge the Trustee and his professionals, agents and consultants, BLMIS and its consolidated estate from any past,

6

present or future actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, damages, judgments, and claims of whatever kind, nature or description, direct or indirect, in law, equity or arbitration, absolute or contingent, in tort, contract, statutory liability or otherwise, based on strict liability, negligence, gross negligence, fraud, breach of fiduciary duty or otherwise (including attorneys' fees, costs or disbursements), asserted or unasserted, known or unknown (including "Unknown Claims" as defined below), suspected or unsuspected, that are, have been, or could have been, or might in the future be, asserted by the Liquidators on behalf of Herald (Lux) based on, arising out of or in any way related to Madoff, BLMIS, or the Account. For avoidance of doubt, and as set forth in Paragraph 2(ii) of this Agreement, this release shall not affect any claims against any person or entity except as set forth in this Paragraph.

### 7. Unknown Claims

"Unknown Claims" shall mean any Released Claim, as defined herein, that the Trustee and/or the Liquidators do not know or suspect to exist in their favor as the time of giving the release in this Agreement that if known by them, might have affected their settlement and release in this Agreement. With respect to any and all Released Claims in Paragraphs 5 and 6 of this Agreement, the Trustee and the Liquidators shall expressly waive or be deemed to have waived, the provisions, rights and benefits of California Civil Code section 1542 (to the extent it applies herein), which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR.

The Trustee and the Liquidators expressly waive, and shall be deemed to have waived, any and all provisions, rights and benefits conferred by any law of any state or territory of the United States, or principle of common law or foreign law, that is similar, comparable or equivalent in effect to California Civil Code section 1542. The Trustee and/or the Liquidators may hereafter discover facts in addition to or different from those that they now know or believe to be true with respect to the subject matter of the Released Claims, but the Trustee and the Liquidators shall expressly have and be deemed to have fully, finally and forever settled and released any and all Released Claims, known or unknown, suspected or unsuspected, contingent or noncontingent, whether or not concealed or hidden, that now exist or heretofore have existed, upon any theory of law or equity now existing or coming into existence in the future, including conduct that is negligent, reckless, intentional, with or without malice, or a breach of any duty, law or rule, without regard to the subsequent discovery or existence of such different or additional facts. Each of the Trustee and the Liquidators acknowledge and shall be deemed to have acknowledged that the foregoing waiver was separately bargained for and a key element of the settlement of which this release is a part. "Released Claims" means the claims released and waived by the Trustee, the Liquidators and Herald (Lux) pursuant to Paragraphs 5 and 6 of this Agreement.

### 8. Use of Complaint

The Parties agree and acknowledge that the Liquidators, on behalf of themselves and Herald (Lux), deny any liability to the BLMIS Estate, do not admit to any of the allegations in the Amended Complaint, and none of the allegations in the Amended Complaint shall be binding on or admissible against the Liquidators, Herald (Lux), or the Herald (Lux) Estate in any proceeding.

### 9. Closing

There shall be a closing ("**Closing**") within a reasonable period of time, not to exceed fifteen (15) business days, after the Effective Date. On the date of the Closing, the Trustee shall pay into the Herald (Lux) Account: (a) the $500,000 SIPC advance under SIPA § 78fff-3(a); and (b) the amount of the Allowed Claim Initial Distribution as provided in Paragraph 2.

### 10. Additional Representations and Warranties

(i) <u>By Herald Lux and the Liquidators</u>.

(a) The Liquidators, on behalf of Herald (Lux), represent and warrant, to the best of their knowledge, information, and belief, that: (1) Herald (Lux) has not received any money, funds, loans, transfers, assets, financial assistance or financial accommodation from Madoff, BLMIS or any other company or entity owned or controlled by Madoff or BLMIS; (2) the Account represents Herald (Lux)'s only account at BLMIS; and (3) they are not aware of any potential claims against Herald (Lux) by Madoff, BLMIS or any other company or entity owned or controlled by Madoff or BLMIS.

b) The Liquidators represent and warrant that, subject to the approval of the Agreement by the competent Luxembourg Court, as set forth in Paragraph 3, they have the full power, authority and legal right to execute and deliver this Agreement, and to perform their obligations under it. The Liquidators represent that they have taken all necessary action to authorize the execution, delivery, and performance of their respective obligations under this Agreement.

(ii) <u>By the Trustee</u>

The Trustee represents and warrants that, subject to the approval of the Agreement by the Bankruptcy Court, as set forth in Paragraph 3, he has the full power, authority and legal right to execute and deliver this Agreement, and to perform his obligations under it. The Trustee represents that he has taken all necessary action to authorize the execution, delivery, and performance of his obligations under this Agreement.

### 11. Further Assurances

The Parties shall execute and deliver any document or instrument reasonably requested by the other Party after the date of this Agreement to effectuate the intent of this Agreement.

### 12. Entire Agreement

This Agreement, including its exhibits and all documents incorporated by reference, constitutes the entire agreement and understanding between and among the Parties and supersedes all prior agreements, representations and understandings including, but not limited to, the Term Sheet, concerning the subject matter hereof. This Agreement shall not grant any rights to, and is not intended to operate for, the benefit of third parties, unless otherwise explicitly provided herein.

### 13. No Admission

This Agreement and all negotiations, statements, and proceedings in connection with this Agreement are not, will not be argued to be, and will not be deemed to be a presumption, concession or admission by any Party of any fault, liability or wrongdoing whatsoever.

### 14. Amendments, Waiver

This Agreement may not be terminated, waived, amended or modified in any way except in a writing signed by the Parties. No waiver of any provision of this Agreement shall be deemed to constitute a waiver of any other provision hereof, whether or not similar, nor shall such waiver constitute a continuing waiver.

### 15. Assignability

Nothing in this Agreement shall prevent the Liquidators from assigning the Allowed Claim, without the prior written consent of the Trustee, pursuant to the Bankruptcy Court's November 10, 2010 Order Establishing Procedures for the Assignment of Allowed Claims.

### 16. Successors Bound

Notwithstanding anything to the contrary, this Agreement shall be binding upon and inure to the benefit of each of the Parties and their successors and permitted assigns.

### 17. Applicable Law

This Agreement shall be construed and enforced in accordance with the laws of the State of New York (without regard to its conflict of laws provisions); provided, however, that the competent Luxembourg Court's approval of this Agreement pursuant to Paragraph 3 shall be in accordance with Luxembourg law.

### 18. Exclusive Jurisdiction

The Bankruptcy Court shall have exclusive jurisdiction over any action to enforce this Agreement, or any provision thereof. The Parties consent and submit to the jurisdiction of the Bankruptcy Court for any such action and waive all objections based on venue, including but not limited to objections made on the grounds of *forum non conveniens*. No Party shall bring, institute, prosecute or maintain any action to enforce this Agreement, or any provision thereof, in any court other than the Bankruptcy Court. The Liquidators and Herald Lux's submission to the jurisdiction of the Bankruptcy Court under this paragraph does not constitute an agreement, admission or denial that the Liquidators or Herald Lux are subject to the Bankruptcy's Court's jurisdiction for any other purpose.

### 19. Captions and Rules of Construction

The captions in this Agreement are inserted only as a matter of convenience and for reference, and do not define, limit or describe the scope of this Agreement or the scope or content of any of its provisions. Any reference in this Agreement to a Paragraph is to a Paragraph of this Agreement. The terms "includes" and "including" shall not be construed as limiting.

### 20. Nullity of a provision of the Agreement

Should a provision of this Agreement be or become null and void as a whole or in part, or should a gap in this Agreement become evident, this does not affect the validity of the remaining provisions. Instead of the null and void provision, or in order to fill the gap, such valid and practicable regulation is deemed to be agreed with effect *ex tunc* that in legal and economic terms comes closest to what the Parties intended

9

or would have intended in accordance with the purpose of this Agreement if they had considered the point at the time of conclusion of this Agreement. If the nullity of a provision is due to a degree of performance or time (period or deadline) laid down in this provision, then the provision is deemed to be agreed with a legally permissible degree that comes closest to the original degree.

### 21. Costs and expenses

All costs and expenses that a Party has incurred with respect to this Agreement and its negotiation shall be borne by such Party without recourse to any other Party.

### 22. Counterparts: Electronic Copy of Signatures

This Agreement may be executed and delivered in any number of counterparts, each of which so executed and delivered shall be deemed to be an original and all of which shall constitute one and the same document.

### 23. Notices

Any notices under this Agreement shall be in writing, shall be effective when received and may be delivered only by hand, by overnight delivery service, by fax or by electronic transmission to:

If to the Trustee:

Irving H. Picard
Baker & Hostetler LLP
45 Rockefeller Center, Suite 1400
New York, NY 10111
F: (212) 589-2401
T: (212) 589-4688
E: ipicard@bakerlaw.com

With copies to:

Oren J. Warshavsky, Esq.
Baker & Hostetler LLP
45 Rockefeller Center, Suite 1400
New York, NY 10111
F: (212) 589-2401
T: (212) 589-4624
E: owarshavsky@bakerlaw.com

-and-

Geoffrey A. North, Esq.
Baker & Hostetler LLP
45 Rockefeller Center, Suite 1400
New York, NY 10111
F: (212) 589-2401
T: (212) 589-4642
E: gnorth@bakerlaw.com

If to the Liquidators:

Carlo Reding
Liquidator for Herald (Lux) SICAV
7, rue Thomas Edison
L-1445 Luxembourg-Strassen
F: +352 45 38 29
T: +352 45 38 78 1
E: c.reding@gt-abax.eu

-and-

Ferdinand Burg
Liquidator for Herald (Lux) SICAV
24, Place Guillaume II
B.P. 142
L-2011 Luxembourg
F: [+352 26 26 98 98]
T: [+352 26 26 98 1]
E: fburg@etudebctv.lu

With copies to:

Brett S. Moore, Esq.
Porzio, Bromberg & Newman, P.C.
100 Southgate Parkway, P.O. Box 1997
Morristown, New Jersey 07962-1997
T: (973) 889-4231
F: (212) 938-2822
E: bsmoore@pbnlaw.com

*[Signature page follows]*

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be executed as of __11__ December, 2014.

_____
Irving H. Picard, Trustee

_____
Carlo Reding, as Liquidator for and on behalf of Herald (Lux) SICAV

_____
Ferdinand Burg, as Liquidator for and on behalf of Herald (Lux) SICAV

12