**Baker & Hostetler LLP**

45 Rockefeller Plaza
New York, NY  10111
Telephone: (212) 589-4200
Facsimile:  (212) 589-4201
David J. Sheehan

*Attorneys for Irving H. Picard, Trustee*
*for the Substantively Consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities LLC*
*and the Estate of Bernard L. Madoff*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>           Plaintiff,<br><br>      v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>           Defendant. | Adv. Pro. No. 08-01789 (SMB)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>           Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>           Plaintiff,<br><br>      v.<br><br>A & G GOLDMAN PARTNERSHIP and PAMELA GOLDMAN,<br><br>           Defendants. | Adv. Pro. No. 14-02407 (SMB)<br>**(Lead)** |
| CAPITAL GROWTH COMPANY; DECISIONS, INC.; FAVORITE FUNDS; JA PRIMARY LIMITED PARTNERSHIP; JA SPECIAL LIMITED PARTNERSHIP; JAB PARTNERSHIP; JEMW PARTNERSHIP; JF PARTNERSHIP; JFM INVESTMENT COMPANIES; JLN PARTNERSHIP; JMP LIMITED PARTNERSHIP; JEFFRY M. PICOWER SPECIAL COMPANY; JEFFRY M. PICOWER, P.C.; THE PICOWER FOUNDATION; | Adv. Pro. No. 14-02408 (SMB)<br><br>**TRUSTEE'S REPLY MEMORANDUM IN SUPPORT OF ENFORCEMENT OF PERMANENT INJUNCTION AND AUTOMATIC STAY** |

THE PICOWER INSTITUTE OF MEDICAL
RESEARCH; THE TRUST F/B/O GABRIELLE H.
PICOWER; BARBARA PICOWER, individually and
as Executor of the Estate of Jeffry M. Picower, and as
Trustee for the Picower Foundation and for the Trust
f/b/o Gabrielle H. Picower,

                Plaintiffs,

     v.

PAMELA GOLDMAN and A & G GOLDMAN
PARTNERSHIP,

                Defendants.

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ........................................................................................1

ARGUMENT ..................................................................................................................4

THE GOLDMAN PLAINTIFFS' CLAIMS ARE BARRED .........................................4

I. THE GOLDMAN PLAINTIFFS' EFFORTS TO BLOCK THE COURT'S
   REVIEW OF THE SUBSTANCE OF THEIR ALLEGATIONS MUST BE
   REJECTED ..............................................................................................................4

   A. Roadblock One: The Trustee Lacks Standing .........................................4

   B. Roadblock Two: The Trustee Is Barred by the *In Pari Delicto*
      Doctrine........................................................................................................6

   C. Roadblock Three: The Trustee Does Not Own the Goldman
      Plaintiffs' Claims .......................................................................................7

   D. Roadblock Four: The Trustee Cannot Rely on the Testimony
      Relied on by the Goldman Plaintiffs........................................................9

II. THE GOLDMAN III CLAIMS ARE DUPLICATIVE AND DERIVATIVE OF
    THE TRUSTEE'S CLAIMS....................................................................................11

   A. The Goldman III Allegations Are Based on Purported Trading
      Activity in the Picower Parties' Own BLMIS Accounts. .....................11

   B. The Goldman Plaintiffs Fail to Understand the Relevant Inquiry
      this Court Will Undertake........................................................................14

   C. *Medsker* Remains Inapposite as it Was in Goldman II..........................15

III. THE GOLDMAN III CLAIMS VIOLATE THE AUTOMATIC STAY AND
     ARE VOID *AB INITIO* .........................................................................................16

CONCLUSION................................................................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A&G Goldman P'ship v. Picard (In re Bernard L. Madoff Inv. Sec. LLC)*,
No. 12 Civ. 6109, 2013 WL 5511027 (S.D.N.Y. Sept. 30, 2013) ............................................5

*Armstrong v. Collins*,
No. 01-cv-2437, 2010 WL 1141158 (S.D.N.Y. Mar. 24, 2010) ...........................................12

*Brass v. American Film Techs. Inc.*,
987 F.2d 142 (2d Cir. 1993) ................................................................................................10

*Chambers v. Time Warner Inc.*,
282 F.3d 147 (2d Cir. 2002) ................................................................................................10

*Fox v. Picard (In re Bernard L. Madoff)*,
848 F. Supp. 2d 469 (S.D.N.Y. 2012) .......................................................................... *passim*

*Global Network Comm'cns v. City of New York*,
458 F.3d 150 (2d Cir. 2006) ................................................................................................10

*Goldin v. Primavera Familienstiftung, Tag Assocs. Ltd. (In re Granite Partners)*,
194 B.R. 318 (Bankr. S.D.N.Y. 1996) ....................................................................................6

*Kalb, Voorhis & Co. v. Am. Fin. Corp.*,
8 F.3d 130 (2d Cir. 1993) ......................................................................................................6

*Marshall v. Picard (In re Bernard L. Madoff Inv. Sec. LLC)*,
740 F.3d 81 (2d Cir. 2014) ................................................................................................6, 8

*Medsker v. Feingold*,
307 F. App'x 262 (11th Cir. 2008) ......................................................................................15

*Picard v. Fairfield Greenwich Ltd.*,
762 F.3d 199 (2d Cir. 2014) ..................................................................................................9

*Picard v. Fox (In re Bernard L. Madoff)*,
429 B.R. 423 (Bankr. S.D.N.Y. 2010) ....................................................................................6

*Picard v. JPMorgan Chase & Co.*,
460 B.R. 84 (Bankr. S.D.N.Y. 2011) ......................................................................................7

*Picard v. JPMorgan Chase & Co. (In re Bernard L. Madoff Inv. Sec. LLC)*,
721 F.3d 54 (2d Cir. 2013) .......................................................................................... *passim*

*Picard v. Marshall (In re Bernard L. Madoff),*
    511 B.R. 375 (Bankr. S.D.N.Y. 2014) ................................................................3, 12, 14, 15

*Picard v. Stahl (In re Bernard L. Madoff),*
    443 B.R. 295 (Bankr. S.D.N.Y. 2011), *aff'd sub nom. In re Bernard L. Madoff*
    *Inv. Sec. LLC*, No. 11-cv-2392 (AKH), 2011 WL 7975167 (S.D.N.Y. Dec. 15,
    2011), *aff'd sub nom. The Lautenberg Found. v. Picard*, 512 F. App'x 18 (2d
    Cir. 2013) ..............................................................................................................................14

*In re Saint Vincents Catholic Med. Ctrs. of N.Y.,*
    449 B.R. 209 (S.D.N.Y. 2011) ...............................................................................................10

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L.*
    *Madoff),*
    477 B.R. 351 (Bankr. S.D.N.Y. 2012) ..............................................................................14, 15

*Sira v. Morton,*
    380 F.3d 57 (2d Cir. 2004) .....................................................................................................10

*St. Paul Fire & Marine Ins. Co. v. PepsiCo, Inc.,*
    884 F.2d 668 (2d Cir. 1989) .....................................................................................................8

*In re Third Eighty-Ninth Assocs.,*
    138 B.R. 144 (S.D.N.Y. 1992) ...............................................................................................10

**Statutes**

Securities Investor Protection Act, 15 U.S.C. §§ 78aaa *et seq.* ......................................................1

Irving H. Picard, as trustee (the "Trustee") for the substantively consolidated liquidation of the business of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa *et seq.,* and the estate of Bernard L. Madoff ("Madoff"), by his undersigned counsel, respectfully submits this reply memorandum of law in support of his application to enforce the Permanent Injunction[1] and the automatic stay in these consolidated proceedings against the Goldman Plaintiffs,[2] and anyone acting on their behalf, to prevent them from proceeding with the Goldman Class Action.

## PRELIMINARY STATEMENT

This is the third time that the Goldman Plaintiffs have sought to sue the Picower Parties for their alleged role in Madoff's Ponzi scheme. All three times, the Goldman Plaintiffs have attempted to allege a § 20 control person claim under the Securities Exchange Act, arguing that such claims fall outside the scope of the Permanent Injunction. In their two previous attempts, this Court held that their pleading did not allege anything but claims derived from the Trustee's fraudulent transfer claims and thus violated the Permanent Injunction. In the one appeal the Goldman Plaintiffs fully pursued, the district court held likewise. Nothing has changed with the Goldman Plaintiffs' third attempt to escape the reach of the Permanent Injunction, and the Permanent Injunction should yet again be enforced against them.

The reason the Goldman Plaintiffs have not been able to bring an independent claim against the Picower Parties is because Jeffry Picower was a BLMIS customer, and as such, is alleged not to have engaged in independent conduct directed toward the Goldman Plaintiffs or

---

[1] Unless otherwise defined, all initially capitalized terms have the meaning given to them in the Trustee's opening Memorandum of Law ("Trustee's Br."), Adv. Pro. No. 14-02407, ECF No. 3.

[2] By order dated December 23, 2014, Adv. Pro. No. 14-02407, ECF No. 15, this Court consolidated this action with the action commenced by the Picower Parties to enforce the Permanent Injunction, *Capital Growth Co. v. Goldman*, Adv. Pro. No. 14-02408 (Bankr. S.D.N.Y. filed Nov. 17, 2014).

the putative class that would allow for such a claim to be made.  Picower was not, for example, someone who managed money and is alleged to have made misrepresentations to other investors to convince them to invest with him.

The Goldman Plaintiffs have been faced with the following conundrum—how can a BLMIS customer who had no contact with the Goldman Plaintiffs or the putative class be transformed into something more in order to obtain a recovery from the Picower Parties' perceived deep pockets?  In other words, how can the Goldman Plaintiffs obtain a recovery from the Picower Parties above their net equity for the "shadow estate" they seek to represent through a class action?

The answer, the Goldman Plaintiffs contend, is that federal securities claims are necessarily claims that the Trustee cannot bring and which, therefore, are beyond the scope of the Permanent Injunction.  But that argument depends on whether the Goldman Plaintiffs' claims are securities claims or just claims derived from, or duplicative of, the Trustee's claims against the Picower Parties.  And that is where this Court's review comes into play.

The Goldman Plaintiffs try to set up roadblocks in the way of this Court's review of their latest complaint, arguing that the Trustee lacks standing to bring a securities claim, is barred by *in pari delicto* from bringing similar claims, and cannot "own" the securities claims alleged.  Those arguments have been rejected before as having no bearing on the application of the Permanent Injunction and the automatic stay.  Giving credence to the Goldman Plaintiffs' standing argument "would perversely require ruling on a hypothetical controversy over the Trustee's standing to bring an action that the Trustee never brought."  *Fox v. Picard (In re Bernard L. Madoff)*, 848 F. Supp. 2d 469, 484 (S.D.N.Y. 2012).  And Judge Koeltl also already addressed the Goldman Plaintiffs' *in pari delicto* argument, and with it, the Goldman Plaintiffs'

argument about the Trustee's ownership of claims, holding that the plaintiffs in an analogous case "cite[d] no case that holds that the mere possibility that a claim might be barred or subjected to a meritorious defense if it were asserted by the trustee renders the claim independent and not the property of the estate for the purposes of an action by the trustee . . . ." *Id.* The only relevant question is whether the Goldman Plaintiffs have brought independent or derivative claims.

That leaves the complaint itself. And here the Goldman Plaintiffs try to set up another roadblock: advising the Court that it cannot consider the very testimony that the Goldman Plaintiffs rely on in their complaint. That testimony shows that the Goldman Plaintiffs' new allegations are unsupported. Just as the Court should not credit conclusory allegations in determining whether a complaint falls within the ambit of the Permanent Injunction, so, too, should it not credit allegations belied by the very same evidence relied upon by the Goldman Plaintiffs.

Less than seven months ago, the vast majority of the claims and allegations now reappearing in the Goldman III Complaint were ruled by this Court in Goldman II to be derivative of the Trustee's claims. *Picard v. Marshall (In re Bernard L. Madoff)*, 511 B.R. 375 (Bankr. S.D.N.Y. 2014). But here we are again. Perhaps most alarming about the Goldman Plaintiffs' many attempts to circumvent the Permanent Injunction is that neither the Goldman Plaintiffs nor their putative class were shareholders of a "BLMIS security" as they appear to argue—an argument previously rejected by the bankruptcy court—so the notion that their action is a securities action at all is just plain wrong.

Attenuated and concocted allegations notwithstanding, there is nothing new here. Yet again, the Goldman Plaintiffs should be enjoined from proceeding and Goldman III should be declared void *ab initio*.

## ARGUMENT

## THE GOLDMAN PLAINTIFFS' CLAIMS ARE BARRED

**I.     THE GOLDMAN PLAINTIFFS' EFFORTS TO BLOCK THE COURT'S REVIEW OF THE SUBSTANCE OF THEIR ALLEGATIONS MUST BE REJECTED**

The Goldman Plaintiffs make four main arguments in an attempt to avoid the Court's analysis of their pleading: (1) the Trustee has no standing to assert the Goldman Plaintiffs' claims; (2) the Trustee is barred by *in pari delicto* from asserting the Goldman Plaintiffs' claims; (3) the Trustee does not own non-bankruptcy claims against the Picower Parties; and (4) the Trustee cannot rely on the same testimony on which the Goldman Plaintiffs explicitly rely as the basis for their "new" allegations in analyzing the applicability of the Permanent Injunction and automatic stay.  As to the first three alleged roadblocks to this Court's review of the substance of their allegations, none of these arguments is relevant to the Trustee's ability to enforce the Permanent Injunction.  Indeed, as discussed below, each of these arguments previously has been rejected.  With respect to their final argument, the Goldman Plaintiffs should not be permitted to make conclusory allegations that are contradicted or unsupported by the very testimony they rely on to try to escape the reach of the Permanent Injunction and automatic stay.

### A.     Roadblock One: The Trustee Lacks Standing

The Goldman Plaintiffs insist that this Court cannot apply the Permanent Injunction and automatic stay to their Complaint because the Trustee lacks standing to raise their specific claims against the Picower Parties.  (*See* Defendants' Objection to Application for Enforcement of Permanent Injunction and Automatic Stay ("Objection") at 24–27.)  Their reasoning is wrong and has been consistently rejected.  There is no dispute that the Trustee has standing to bring fraudulent transfer claims against the Picower Parties and that he has standing to enforce the Permanent Injunction and automatic stay.  His hypothetical standing to bring a hypothetical suit

against the Picower Parties for securities law violations is not pertinent to the enforcement of the

Permanent Injunction or application of the automatic stay. *See A&G Goldman P'ship v. Picard*

*(In re Bernard L. Madoff Inv. Sec. LLC)*, No. 12 Civ. 6109 (RJS), 2013 WL 5511027, at *10

(S.D.N.Y. Sept. 30, 2013); *Fox*, 848 F. Supp. 2d at 485.

As Judge Sullivan of the district court held when the Goldman Plaintiffs previously

raised this argument, "the mere fact that the Trustee would lack standing to bring a securities

fraud claim (and such a claim would therefore be non-derivative) does not help [the Goldman

Plaintiffs], since the Court finds that [the Goldman Plaintiffs] have in fact pleaded fraudulent

conveyance claims, however labeled." *A&G Goldman P'ship*, 2013 WL 5511027, at *10. And

as Judge Koeltl held in enforcing the Permanent Injunction and automatic stay against the Fox

Plaintiffs: "Even if the Trustee might be barred from asserting the claims against the Picower

[Parties] in the Florida Actions in the exact form in which the Appellants have pleaded them, that

fact cannot be dispositive of the question of whether the Florida Actions are covered by the

automatic stay." *Fox*, 848 F. Supp. 2d at 485–86. Judge Koeltl went on to reason that to

consider the Trustee's standing to bring the Plaintiff's claims "where the Trustee did not bring

the Florida Actions, would perversely require ruling on a hypothetical controversy over the

Trustee's standing to bring an action that the Trustee never brought when the Trustee had the

right and the standing to bring the New York Action alleging fraudulent conveyances and when

the Florida Actions are an end run around the New York Action." *Id.*

The Goldman Plaintiffs rely on the Second Circuit's decision in *Picard v. JPMorgan

Chase & Co. (In re Bernard L. Madoff Inv. Sec. LLC)*, 721 F.3d 54 (2d Cir. 2013)

("*JPMorgan*"). (Objection at 9–10.) But in that case, the Trustee affirmatively sought to bring

common law claims against various banks—not hypothetically, but actually. The Second Circuit

held that the Trustee lacked standing to do so.  Here, the Trustee seeks to enforce the Permanent

Injunction and automatic stay, which he clearly has standing to do.  *See Marshall v. Picard (In re*

*Bernard L. Madoff Inv. Sec. LLC)*, 740 F.3d 81, 84 (2d Cir. 2014).  *JPMorgan* had nothing to do

with an injunction application alleging duplicative and derivative claims.  Indeed, as discussed

below, the Second Circuit specifically distinguished its *JPMorgan* decision from the district

court's *Fox* decision enforcing the Permanent Injunction and automatic stay.  *JPMorgan*, 721

F.3d at 71 n.20.  And, of course, the Second Circuit then, itself, affirmed the *Fox* decision.

*Marshall*, 740 F.3d 81.

### B.    Roadblock Two: The Trustee Is Barred by the *In Pari Delicto* Doctrine

Similarly, the Goldman Plaintiffs contend that the Trustee would be barred by the

doctrine of *in pari delicto* from suing the Picower Parties for securities claims, and therefore the

Trustee somehow is barred from enforcing the Permanent Injunction and automatic stay.  This

argument fails for the same reasons as their standing argument, as it would require the Court to

rule hypothetically.  This argument was also previously rejected by the bankruptcy court as well

as the district court on appeal.  *See Picard v. Fox (In re Bernard L. Madoff)*, 429 B.R. 423

(Bankr. S.D.N.Y. 2010); *Fox*, 848 F. Supp. 2d at 485–86.  And as the district court in *Fox* held,

"[n]or does the doctrine of *in pari delicto* prevent the claims asserted in the Florida Actions from

being property of the estate."  *Fox*, 848 F. Supp. 2d at 485.

Moreover, the *in pari delicto* doctrine would be inapplicable in any event if, as the

Goldman Plaintiffs attempt to plead, the Picower Parties were BLMIS insiders.  In the Second

Circuit, "*[i]n pari delicto* bars claims against third parties, but does not apply to corporate

insiders or partners."  *Goldin v. Primavera Familienstiftung, Tag Assocs. Ltd. (In re Granite*

*Partners)*, 194 B.R. 318, 332 (Bankr. S.D.N.Y. 1996); *see Kalb, Voorhis & Co. v. Am. Fin.*

*Corp.*, 8 F.3d 130, 133 (2d Cir. 1993).  Because Goldman III alleges, at its core, that the Picower

Parties were BLMIS insiders, *in pari delicto* would not apply to any hypothetical claims the Trustee could bring against the Picower Parties. (*See* Goldman III Complaint ¶¶ 7–11, 63–66, 91–96.)

### C. Roadblock Three: The Trustee Does Not Own the Goldman Plaintiffs' Claims

The Goldman Plaintiffs argue that the Second Circuit has "expressly rejected" the Trustee's argument that claims such as theirs are generalized and thus belong to the estate. (Objection at 21.) They base their argument on *JPMorgan*. The Goldman Plaintiffs argue that the Goldman III allegations are not derivative because they are common only to BLMIS customers but not to all creditors. (Objection at 24.) They cite the district court's decision in *Picard v. JPMorgan Chase & Co.*, 460 B.R. 84 (Bankr. S.D.N.Y. 2011) as holding that claims are not derivative of the Trustee's claims if they "will not necessarily accrue to the benefit of all creditors harmed by the fraud, at least not in the same way," and contend that the Goldman III claims are independent because they are based on "the varying patterns of investment and the various times when Picower engaged in fraudulent acts or violations of the control person duties . . . ." (Objection at 24–26 (citing *JPMorgan Chase & Co.*, 460 B.R. at 96).) But this argument was squarely rejected by the Second Circuit in *JPMorgan*—in which the court recognized that the Fox Plaintiffs' claims were derivative:

> In *Fox v. Picard (In re Madoff)*, 848 F. Supp. 2d 469 (S.D.N.Y. 2012), the district court relied on *St. Paul* in holding that certain Madoff customers could not pursue fraudulent transfer claims "that were the property of the BLMIS estate." *Id.* at 478. The customer claims were "duplicative and derivative of the Trustee's fraudulent transfer claim." *Id.* at 479 n.2. Accordingly, the court found the claims to be "general" in the sense articulated in *St. Paul*, in that they arose from "a single set of actions that harmed BLMIS and all BLMIS customers in the same way." *Id.* at 480. Here, however, the customers' claims are not derivative of claims held by the BLMIS estate.

*JPMorgan*, 721 F.3d at 71 n.20. The Second Circuit thus recognized that *St. Paul Fire & Marine Ins. Co. v. PepsiCo, Inc.*, 884 F.2d 668 (2d Cir. 1989) supports the Trustee in his efforts to *enjoin* third-party claims that are derivative of the Trustee's claims, which the Court acknowledged was much different from the situation in *JPMorgan* where the Trustee was seeking to *bring* common-law claims. As the *JPMorgan* court stated, "only a trustee, not creditors, may assert claims that belong to the bankrupt estate," including, as the Second Circuit has held, claims that are derivative and duplicative of such claims. *JPMorgan*, 721 F.3d at 70.

As Judge Koeltl stated in rejecting the same argument by the Fox Plaintiffs, claims that in essence assert that Picower was able to withdraw "billions of dollars in customer funds from BLMIS and thus substantially diminish[] the assets available to BLMIS to pay its customers and creditors, and to continue to function" are generalized claims, belonging to the estate. *Fox*, 848 F. Supp. 2d at 480. Such claims "seek to recover for an injury that was inflicted not by specific acts of the Picower [Parties] directed toward the [Fox Plaintiffs] themselves." *Id.* (citing *St. Paul Fire & Marine Ins. Co.*, 884 F.2d at 701).

Significantly, the Second Circuit held the Fox Plaintiffs' claims—which, despite relying on a different legal theory, are substantially the same as the Goldman Plaintiffs' claims—to be derivative, as the "purported conspiracy-based claims against the Picower [Parties] are 'derivative' of those asserted by the Trustee in his fraudulent conveyance action . . . ." *Marshall*, 740 F.3d at 93. Because the Fox Plaintiffs did not allege that that the Picower Parties "took any . . . 'particularized' actions aimed at BLMIS customers," *id.*, the court did not allow the Fox Plaintiffs to "circumvent the Net Equity Decision by 'pleading around' the automatic stay and Permanent Injunction." *Id.* at 91–92.

It is no surprise that the Goldman Plaintiffs contend that *Fox* was incorrectly decided. (Objection at 24.)  As in *Fox*, the Goldman III claims are based on harm to the BLMIS estate—the depletion of estate assets by the Picower Parties through their withdrawals from their BLMIS accounts and related conduct.  The additional conclusory allegations that Picower loaned BLMIS funds and agreed to serve as a counterparty to purported options trades does not change this fundamental fact.  Likewise, whether Picower's alleged conduct was similar to the defendants in *JPMorgan*, as the Goldman Plaintiffs contend, has no bearing on the application of the Permanent Injunction or the automatic stay.  That case was about standing, not the Trustee's ability to enforce contractual obligations and statutory powers.

Finally, in light of the Second Circuit's opinion on essentially the same facts as in *Fox*, the Goldman Plaintiffs' efforts to analogize their complaint to cases in which there was independent conduct, *e.g., Picard v. Fairfield Greenwich Ltd.*, 762 F.3d 199 (2d Cir. 2014), are not persuasive.  (Objection at 8–10; 20.)  Unlike the Goldman III Complaint, the complaints at issue in *Fairfield Greenwich Ltd.* alleged specific instances of independent conduct by the defendants to feeder fund investors, for example.  *See Fairfield Greenwich Ltd.*, 762 F.3d at 209–10.

### D. Roadblock Four: The Trustee Cannot Rely on the Testimony Relied on by the Goldman Plaintiffs

The Goldman Plaintiffs explicitly invoke and rely on testimony from the criminal trials of various Madoff co-conspirators in their complaint.  (*See* Goldman III at 1–2 ("Plaintiffs . . . allege the following based upon . . . the sworn testimony of Enrica Cotellessa-Pitz, Frank DiPascali, Jr., and Annette Bongiorno in the criminal action, *United States v. Bonventre, et al.*, 10-cr-228 (LTS) (S.D.N.Y.)"); Objection at 6 ¶ 14.)  Yet they chide the Trustee for using that same testimony to show why the Goldman Plaintiffs' allegations cannot be accepted as true for

purposes of evaluating the application of the Permanent Injunction and automatic stay. (Objection at 31–32.)

The Goldman Plaintiffs' argument is unsupported by case law and is logically unsound. The Goldman Plaintiffs cannot prevent and should not dissuade this Court from reviewing the very documents on which they expressly rely in Goldman III.  Indeed, even in the context of a motion to dismiss (which the Trustee's application is not), documents referred to in a complaint become part of that complaint and can be relied upon by a defendant.  *See, e.g., Brass v. American Film Techs. Inc.*, 987 F.2d 142, 150 (2d Cir. 1993) ("[C]onsideration is limited to . . . documents attached to the complaint as an exhibit or incorporated in it by reference . . .  or to documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit.").  And of course, courts may look outside the record in the context of enforcing a § 105 injunction.  *See, e.g.*, *In re Saint Vincents Catholic Med. Ctrs. of N.Y.*, 449 B.R. 209, 215–16 (S.D.N.Y. 2011) (approving of bankruptcy court's review of documents explicitly relied upon by challenger to automatic stay); *In re Third Eighty-Ninth Assocs.*, 138 B.R. 144, 146 (S.D.N.Y. 1992) (court heard evidence in connection with request for § 105 injunction).[3]

The very quotation the Goldman Plaintiffs cite to show that the transcript supports the allegations in Goldman III in fact shows that Picower's conduct was in connection with his own

---

[3] Each case cited by the Goldman Plaintiffs in support of this argument is distinguishable or supports the Trustee's position.  In *Global Network Communications v. City of New York*, 458 F.3d 150 (2d Cir. 2006), the extrinsic materials at issue were not even "mentioned in plaintiff's complaint," *id.* at 153, and were not "integral to [plaintiff's] complaint." *Id.* at 156.  In *Sira v. Morton*, 380 F.3d 57 (2d Cir. 2004), the court found that the documents that the plaintiff's complaint "explicitly refers to and relies upon" were incorporated by reference into the complaint. *Id.* at 67.  And in *Chambers v. Time Warner Inc.*, 282 F.3d 147 (2d Cir. 2002), the court held that because the "harm to the plaintiff when a court considers material extraneous to a complaint is the lack of notice that the material may be considered," *id.* at 153, the documents upon which the plaintiff relied on in bringing their suit were properly considered at the motion to dismiss phase. *Id.*

accounts only, in direct contradiction to the Goldman III allegations.  (*See* Objection at 32 (citing

*United States v. Bonventre*, No. 10-cr-228 (S.D.N.Y. Apr. 3, 2014), ECF No. 856 ("Transcript")

at 4708:1–7 ("Mr. Picower provided securities to Madoff *which appeared on his statements* as if

they were just being custodied at Madoff Securities . . . .") (emphasis added)).)  The testimony

relied upon simply does not support the Goldman Plaintiffs' allegations.  (*See* Trustee's Br. at

28, 31; Memorandum of Law in Support of Plaintiffs' Application for Enforcement of the

Permanent Injunction ("Picower Parties' Br."), *Capital Growth Co. v. Goldman*, Adv. Pro. No.

14-02408 (SMB) (Bankr. S.D.N.Y. Nov. 17, 2014), ECF No. 3 at 25, 31–33.)

## II.    THE GOLDMAN III CLAIMS ARE DUPLICATIVE AND DERIVATIVE OF THE TRUSTEE'S CLAIMS

### A.    The Goldman III Allegations Are Based on Purported Trading Activity in the Picower Parties' Own BLMIS Accounts.

Less than seven months ago, this Court held that the Goldman II complaint was

duplicative and derivative of the Trustee's action.[4]  The Goldman Plaintiffs contend that the

Goldman III Complaint remedies the defects this Court found with Goldman II.  Yet almost all

of the allegations in the Goldman III Complaint are identical to the allegations in Goldman II.

(*See* Trustee's Br. at 20–21.)  The remaining allegations are conclusory and inconsistent with the

testimony on which they are based, and therefore ought to be disregarded by this Court.

Even if this Court were to consider the Goldman Plaintiffs' loan and counterparty

allegations (which it should not), these allegations do not change the derivative nature of the

Goldman III Complaint.  The Goldman Plaintiffs contend that their new allegations take

Goldman III outside the ambit of the Permanent Injunction and automatic stay.  They argue that

they allege that Picower *loaned* BLMIS funds, which they contend is "the exact opposite of

---

[4] The Goldman Plaintiffs abandoned their appeal of Goldman II.  Stipulation of Dismissal of Appeal, *A&G Goldman P'ship v. Picard*, No. 14-cv-07058 (JGK) (S.D.N.Y. filed Oct. 6, 2014), ECF No. 19.

fraudulent transfers; they made BLMIS more solvent, not less," and that Picower "failed to make required disclosures to FINRA with respect to the supposed 'loans' that he made . . . ." (Objection at 17 (emphasis removed).)  They further argue that their allegations that Picower served as a counterparty to purported options trades is separate from Picower's fraudulent transfers.  (*Id.* at 18.)  But these allegations are derivative of the Trustee's because they concern purported activity *in the Picower Parties' own BLMIS accounts*, including deposits into and out of their accounts and purported trading of fictitious treasury bills in those accounts.  (*See* Trustee's Br. at 30–31 (citing Transcript at 5341–46).)  These allegations aver nothing more than that the Picower Parties propped up the BLMIS Ponzi scheme for Picower's own benefit, which mirrors the allegations in the Trustee's action against the Picower Parties.  (*See* Murphy Decl. Ex. B at 26–32.)  And the Goldman Plaintiffs' new FINRA non-disclosure allegations are nothing more than a new angle on previously attempted claims in Goldman II, where the Court rejected as derivative allegations based on "falsification of BLMIS's financial statements provided to regulators."  (Goldman II Compl. ¶ 71); *See Marshall* 511 B.R at 392 (rejecting argument that allegation in Goldman II Complaint ¶ 71 was sufficient to plead a *bona fide* § 20(a) claim).

In any case, any alleged harm by Picower to BLMIS was an infusion of funds that helped sustain and prolong the Ponzi scheme, so that it could continue to deplete the assets of the estate. The Goldman Plaintiffs fail to acknowledge that propping up the Ponzi scheme harms the estate—they seem to argue that it was in fact a benefit.  (Objection at 10 ("the BLMIS estate itself suffered no damages as a result of Picower's propping up the scheme.").)  But in actuality, it has long been recognized that in a Ponzi scheme, depositing principal does not provide value to the estate but serves to "perpetuate[] the debtor's fraudulent scheme." *Armstrong v. Collins*,

No. 01-cv-2437 (PAC), 2010 WL 1141158, at *22 (S.D.N.Y. Mar. 24, 2010). Therefore, these allegations, like the Trustee's allegations, ultimately amount to allegations of harm to the BLMIS estate through depletion of estate assets. *See Fox*, 848 F. Supp. 2d at 480 ("The alleged wrongful acts harmed every BLMIS investor (and BLMIS itself) in the same way: by withdrawing billions of dollars in customer funds from BLMIS and thus substantially diminishing the assets available to BLMIS to pay its customers and creditors, and to continue to function.").

The Goldman Plaintiffs also argue that the Trustee expressly concedes that he was not bringing "a claim seeking damages from Picower as a co-conspirator of BLMIS" in his opposition to the motion to dismiss in the Trustee's Picower litigation. (*See* Objection at 26; citing Murphy Decl. Ex. B at 28.) But again, the issue is not the label of the claim but whether it is a claim that is based on harm to the *estate* and thus is derivative of claims that belong to the Trustee. The fact that the Goldman Plaintiffs allege that Picower had a nefarious motive and that he deposited securities and not cash into BLMIS does not alter the fact that Goldman III only pleads harm to the estate, and thus remains derivative of the Trustee's claims.

Furthermore, Goldman III, like its predecessors, fails to allege any direct relationship between Picower and the Goldman Plaintiffs or other members of the putative class. The Goldman Plaintiffs maintain that, to state a § 20(a) control person claim, they need not plead that Picower made misrepresentations to any BLMIS customer and, in any case, they have adequately alleged that Picower made omissions of material fact and indirectly caused false financial documentation to be disseminated to BLMIS customers. (Objection at 27–31.) This Court, however, rejected this same argument in Goldman II: "[B]eyond conclusory statements that the Picower [Parties'] fraudulent transactions relating to their own accounts caused BLMIS to send false statements to other customers, the [Goldman II Complaint] does not allege that the Picower

[Parties] directed or were at all involved in the creation or dissemination of these statements to other BLMIS customers.'" *Marshall* 511 B.R. at 393. The Goldman III allegations remain duplicative and derivative of the Trustee's claims.

### B. The Goldman Plaintiffs Fail to Understand the Relevant Inquiry this Court Will Undertake

The Goldman Plaintiffs spill much ink arguing that they have adequately pleaded all of the elements of their § 20(a) control person claim. (*See* Objection at 11-20.) They misunderstand the nature of the inquiry—the Court must look to whether the plaintiffs have alleged independent claims. And whether the claims assert an independent duty allegedly owed by the Picower Parties to the putative class is of no moment if the Goldman Plaintiffs have failed to state *bona fide* securities claims in the first instance. *See Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff)*, 477 B.R. 351, 356 (Bankr. S.D.N.Y. 2012).

Furthermore, this Court, as affirmed by the district court and the Second Circuit, has previously enjoined third-party federal securities law claims, including a § 20(a) claim. *See Picard v. Stahl (In re Bernard L. Madoff)*, 443 B.R. 295 (Bankr. S.D.N.Y. 2011), *aff'd sub nom. In re Bernard L. Madoff Inv. Sec. LLC*, No. 11-cv-2392 (AKH), 2011 WL 7975167 (S.D.N.Y. Dec. 15, 2011), *aff'd sub nom. The Lautenberg Found. v. Picard*, 512 F. App'x 18 (2d Cir. 2013). Thus, the mere allegation that the Picower Parties owe a fiduciary duty to the Goldman Plaintiffs or the putative class members, absent any non-conclusory allegations rendering the claim a *bona fide* securities claim, is insufficient to escape the reach of the Permanent Injunction and automatic stay. Nor could there be any independent conduct here, as Picower was a BLMIS customer—not, for example, someone who has been alleged to have made direct misrepresentations to investors to induce them to invest in BLMIS feeder funds.

14

And although the merits of the Goldman III Complaint are not at issue in the present action, the Goldman Plaintiffs' allegation that BLMIS issued *its own securities*, separate and apart from the investment accounts it managed, has no factual basis and has been rejected by this Court. *See In re Bernard L. Madoff*, 477 B.R. at 356, 357 n.13 ("Plaintiffs' counsel unconvincingly attempts to plead a particularized injury by re-classifying actions relevant to all defendants under a different body of law and manufacturing a duty thereunder. Specifically, the Plaintiffs attempt to distinguish the actions of the Picower [Parties] as against the Plaintiffs by creating a security and concocting that Picower was a control person at BLMIS who, therefore, owed a duty to the Plaintiffs under relevant securities law to prevent their purchasing fraudulent securities."). The Goldman Plaintiffs are not in fact "purchasers of securities" with standing to assert § 20(a) claims as required by the cases they cite. (*See* Objection at 24–25.)

## C.    *Medsker* Remains Inapposite as it Was in Goldman II

In Goldman II, this Court held that the complaint in *Medsker v. Feingold*, 307 F. App'x 262 (11th Cir. 2008) was distinguishable from the Goldman II Complaint. *See Marshall*, 511 B.R. at 393. This Court found that, in contrast to the *Medsker* complaint, "the *New Goldman Complaint* does not allege that Picower [Parties] . . . did anything besides fraudulently withdraw money from BLMIS and cause BLMIS to make phony entries in the records of their accounts." *Id.*

The Goldman Plaintiffs attempt to resurrect *Medsker*, arguing that this time, Goldman III "sufficiently alleges Picower's 'participation in the preparation of false information' separate and apart from his fraudulent withdrawal of money from BLMIS." (Objection at 28–29 n.2.) Yet again, the Goldman Plaintiffs have sorely missed the point. In *Medsker*, the complaint contained specific, particularized allegations that the defendants made intentional, false representations to and took specific actions directly addressed *to the plaintiffs*. *Medkser*, 307 F. App'x at 265.

15

Goldman III contains none of these types of allegations: the majority of the complaint is nothing more than a rehash of complaints previously found to be duplicative and derivative.  The Goldman Plaintiffs' attempt to rely on *Medsker* remains unsupportable.

### III.   THE GOLDMAN III CLAIMS VIOLATE THE AUTOMATIC STAY AND ARE VOID *AB INITIO*

For the same reasons, and for the reasons set out in the Trustee's opening brief, the Goldman III action also violates the automatic stay and is void *ab initio*.  (*See* Trustee's Br. at 34–37.)  The Goldman Plaintiffs do not contest the applicability of the automatic stay if the Permanent Injunction applies.

## CONCLUSION

For the foregoing reasons and for those set forth in the Trustee's and Picower Parties'

opening papers, the Trustee respectfully requests that his Application be granted.

Dated: January 12, 2015                              Respectfully submitted,
     New York, New York

    /s/ David J. Sheehan
    David J. Sheehan
    Email: dsheehan@bakerlaw.com
    Deborah H. Renner
    Email: drenner@bakerlaw.com
    Tracy L. Cole
    Email: tcole@bakerlaw.com
    Keith R. Murphy
    Email: kmurphy@bakerlaw.com
    Amy E. Vanderwal
    Email: avanderwal@bakerlaw.com
    Ferve E. Ozturk
    Email: fozturk@bakerlaw.com

    Baker & Hostetler LLP
    45 Rockefeller Plaza
    New York, New York 10111
    Telephone: (212) 589-4200
    Facsimile: (212) 589-4201

    *Attorneys for Irving H. Picard, Trustee for the*
    *Substantively Consolidated SIPA Liquidation*
    *of Bernard L. Madoff Investment Securities*
    *LLC and the Estate of Bernard L. Madoff*