Page 1

1   UNITED STATES BANKRUPTCY COURT

2   SOUTHERN DISTRICT OF NEW YORK

3   CASE NO. 08-01789-smb

4   - - - - - - - - - - - - - - - x

5   SECURITIES INVESTOR PROTECTION

6   CORPORATION

7   v.

8   BERNARD L. MADOFF INVESTMENT

9   SECURITIES, LLC, et al,

10            Debtors.

11  - - - - - - - - - - - - - - - x

12                    U.S. Bankruptcy Court

13                    One Bowling Green

14                    New York, New York

15

16                    December 18, 2014

17                    10:16 AM

18

19

20

21  B E F O R E :

22  HON. STUART M. BERNSTEIN

23  U.S. BANKRUPTCY JUDGE

24

25  ECRO:  T. BROWN

1   HEARING Matter:   Interim Fee Applications

2

3   HEARING Matter:   Application for Interim Professional

4   Compensation for Baker & Hostetler, LLP, Trustee's Attorney

5

6   HEARING Matter:   Application for Interim Professional

7   compensation for Schlitz & Schlitz, Special Counsel

8

9   HEARING Matter:   Application for Interim Professional

10   Compensation for Higgs & Johnson, Special Counsel

11

12   HEARING Matter:   Application for Interim Professional

13   Compensation for Sorokor - Agmon, Special Counsel

14

15   HEARING Matter:   Application for Interim Professional

16   Compensation for Graf & Pitkowitz Rechtsanwalte GmbH,

17   Special Counsel

18

19   HEARING Matter:   Application for Interim Professional

20   Compensation for SCA Creque, Special Counsel

21

22   HEARING Matter:   Application for Interim Professional

23   Compensation for Werder Vigano, Special Counsel

24

25

Page 3

1    HEARING Matter:  Application for Interim Professional

2    compensation for La Tanzi, Spaulding & Landreth, P.C.,

3    Special Counsel

4

5    HEARING Matter:  Application for Interim Professional

6    Compensation for Browne Jacobson, LLP, Special Counsel

7

8    HEARING Matter:  Application for Interim Professional

9    Compensation for Eugene F. Collins, Special Counsel

10

11   HEARING Matter:  Application for Interim Professional

12   Compensation for Ritter & Ritter Advokatur, Special Counsel

13

14   HEARING Matter:  Application for Interim Professional

15   Compensation for Munari Giudici Maniglio Panfili E

16   Associati, Special Counsel

17

18   HEARING Matter:  Application for Interim Professional

19   Compensation for Kelley, Wolter & Scott, P.A., Special

20   Counsel

21

22   HEARING Matter:  Application for Interim Professional

23   Compensation for Cochran Allan, Special Counsel

24

25

1    HEARING Matter:  Fifteenth Application for Interim

2    Professional Compensation and Request for Partial Release of

3    Holdback for Windels Marx Lane & Mittendorf, LLP, Special

4    Counsel

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Sherri L. Breach

Page 5

1    A P P E A R A N C E S :

2    BAKER HOSTETLER

3          Attorneys for BLMIS, Trustee

4          45 Rockefeller Plaza

5          New York, NY   10111

6

7    BY:   IRVING H. PICARD, ESQ.

8          DAVID J. SHEEHAN, ESQ.

9

10   WINDELS, MARX, LANE & MITTENDORF, LLP

11          Attorney for Windels Marx

12          156 W. 56th Street

13          New York, NY   10019

14

15   BY:   ALAN NISSELSON, ESQ.

16

17   SECURITIES INVESTOR PROTECTION CORPORATION

18          For SIPC

19          805 15th Street, N.W.

20          Suite 800

21          Washington, DC   20005

22

23   BY:   KEVIN H. BELL, ESQ.

24

25

Page 6

1                    P R O C E E D I N G S

2            THE COURT:  Madoff.

3        (Pause)

4            MR. SHEEHAN:  Good morning, Your Honor.

5            THE COURT:  Good morning.

6            MR. SHEEHAN:  David Sheehan for the trustee and

7    for Baker Hostetler.

8            Your Honor, this is the return date of the

9    sixteenth interim fee application of the trustee and the

10   special counsel.  I've been retained by him to assist him in

11   the recovery efforts led by the trustee for the last six

12   years.

13       The -- in the past I've gone through in some great

14   detail.  I would like to just do a couple of highlights, if

15   I may this morning, Your Honor, because as Your Honor knows

16   this application is fully supported by the Securities

17   Investment Protection Corporation and, in addition, no

18   objections were filed to any of the applications of the

19   trustee, his foreign counsel or the conflict counsel who

20   have assisted him in all of these efforts.

21           The two highlights I would just like to talk about

22   very briefly are these because Your Honor actually approved

23   the settlements just yesterday.  But in Herald and in

24   Primeo, which are two combined as it were for approximately

25   a half a billion dollars in settlement value yesterday,

Page 7

1    instrumental in achieving those results were the law firms

2    in Luxenburg who are here, Schiller and Schiller (ph) and

3    the firm that we have in Austria, you know, also assisted us

4    at some -- Nicholas -- I can't think of his last name.  But

5    in any event, the bottom line is it's here in the

6    application.

7              The point is, is that we had to do a lot of

8    investigative work and assemble a good many witness

9    statements, et cetera, all of who were of assistance to us

10   in what was a long drawn out mediation with Mr. Borowitz.

11   And, quite frankly, in depth detail was achieved as a result

12   of all their efforts assisting us.  We were there.  We were

13   involved in all of it.  But without their fine work we would

14   have never been able to do that.

15             In addition, to tee up the Primeo matter we

16   litigated that fairly heavily in the Caymans, not because we

17   wanted to.  To be frank, we filed a protective action there

18   in light of the fact that there are eventually going to be

19   before Your Honor personal jurisdiction motions that six

20   years into the case have still not been brought because of

21   the posture of it over those years.

22             And so as a result that case took off.  The judge

23   there was -- it was his want to go forward.  We were

24   actively litigating that case.  That guy -- case was in high

25   court in England with regard to whether or not we could

Page 8

1    advance our causes of action.  Those causes of action were

2    sustained by the prime -- the Cayman Court and were on

3    appeal to the privy council in England at the time.

4            So all of those things, as Your Honor well knows

5    from your practice and experience, are the things that

6    actually ultimately lead to a settlement.  And it's that

7    kind of work that's been done throughout the course of this

8    case by all of our foreign counsel that have assisted in a

9    variety of different ways.  And, again, they've done it this

10   time around which have resulted, as Your Honor knows, in

11   what has been a very significant recovery by the trustee.

12           In addition, because of the orders Your Honor

13   entered yesterday, there will be filed this Monday an

14   allocation motion where we will distribute approximately

15   $322 million which will bring up to the allowed claimants

16   that we have almost 50 percent, 48.5 percent of the monies

17   will be distributed to them once Your Honor enters the order

18   based on that motion sometime next year.

19           THE COURT:  How many disputed claims are left?

20           MR. SHEEHAN:  Approximately a thousand.

21           THE COURT:  There are a thousand disputed claims.

22           MR. SHEEHAN:  Yes.

23           THE COURT:  And how many of those disputed claims

24   don't involve fraudulent transfers or 502(b)?

25           MR. SHEEHAN:  Probably around 800.

Page 9

```
 1              THE COURT:  Is there a way to start to move those
 2    along --
 3              MR. SHEEHAN:  We've --
 4              THE COURT:  -- if --
 5              MR. SHEEHAN:  We've done --
 6              THE COURT:  -- if they're just based on
 7    calculations of the books and records --
 8              MR. SHEEHAN:  We've -- actually, that's an
 9    excellent question because we've tried that many, many
10    times.  What we found is -- and I'm going to speculate here,
11    but I would -- notwithstanding the effort or trying to point
12    out financially as yesterday Herald and Primeo, those people
13    have very significant allowed net equity claims.  We --
14    we've been talking to them for years just on the economics
15    of why they should go forward and do this, forget the fact
16    that we thought we had a very good case.
17              THE COURT:  But they're fraudulent transfer
18    claims?
19              MR. SHEEHAN:  They're fraudulent transfer claims.
20              THE COURT:  I'm saying -- I'm talking about the
21    claims where you don't have to get into that and --
22              MR. SHEEHAN:  Right.  Exactly.
23              THE COURT:  -- it's just --
24              MR. SHEEHAN:  In the fictitious profits world the
25    big hold up was the secure decision which now has been
```

Page 10

1    resolved by the Second Circuit last week, although we're

2    considering our options there as well.  But the bottom line

3    is with that out there we still have been settling many,

4    many of those cases.  Your Honor doesn't see them in this

5    sense.  Under the order that was entered by Judge Lifland

6    some time ago, we could actually settle those cases with

7    SiPC's consent for under $20 million without seeking to

8    bother an order.

9             THE COURT:  But I've been hearing this thousand

10   number for so long.  It doesn't --

11            MR. SHEEHAN:  I know.

12            THE COURT:  -- seem like a lot are being settled

13   and --

14            MR. SHEEHAN:  Well --

15            THE COURT:  -- I'm just wondering whether we

16   should just start trying them.

17            MR. SHEEHAN:  Well, we're happy to do so, Your

18   Honor, as you well know.  We've -- every time we would set

19   one up for trial -- remember the case that we had, I think

20   it was almost a year ago when we first started to appear

21   before Your Honor and we had the case and as soon as it got

22   to trial it settled.  And then we had another one --

23            THE COURT:  Trials have a way of doing that.

24            MR. SHEEHAN:  -- and then we had another one.  And

25   we will continue to do that.  We have several right now that

Page 11

1    we're going to try to bring to trial --

2              THE COURT:  All right.

3              MR. SHEEHAN:  -- and we will do that.

4              We're as anxious as Your Honor is to get rid of

5    those cases because, quite frankly, it -- the assets are

6    diminishing.  People are passing away.  We have more estate

7    actions now than we ever had before.  So we very much would

8    like to resolve all of those cases.  We work hard on that

9    all the time.  Since -- over the course of this summer we've

10   had approximately 60 mediations in good faith cases and

11   many, many of those are resolved.

12             THE COURT:  But those are still --

13             MR. SHEEHAN:  But --

14             THE COURT:  -- asking people to write you a check,

15   in essence.

16             MR. SHEEHAN:  Yes.

17             THE COURT:  Whereas in pure claims objections I

18   assume people want to get paid.

19             MR. SHEEHAN:  Correct.

20             THE COURT:  And they're interested in resolving

21   those objections and having you write them a check.

22             MR. SHEEHAN:  That's correct, Your Honor.  One

23   would think so.  But it doesn't always quite work out that

24   way and --

25             THE COURT:  Well, I know other parties aren't here

Page 12

1    and sometimes we use these fee application hearings as

2    status conference.

3              MR. SHEEHAN:  Right.

4              THE COURT:  Maybe it's time to start to move some

5    of these claims objections along where they're not dependent

6    on fraudulent transfers or -- or final --

7              MR. SHEEHAN:  Your Honor, we'll be seeing those

8    omnibus motions shortly.

9              THE COURT:  And, you know, I have the same view

10   with these fraudulent transfer cases where they're just

11   fictitious profits cases and two years is enough.

12             MR. SHEEHAN:  Yes.  As a matter of fact there's

13   very few of those left, though.  There's a handful, less

14   than five.

15             THE COURT:  Oh.

16             MR. SHEEHAN:  The balance of those are not unlike

17   the case Your Honor heard yesterday where our claim is

18   approximately 800 -- $926 million and their claim is $825

19   million.  It's very -- once Mr. Breident (ph), since now we

20   are -- but once he announced what he was going to do and

21   none the funds were going to participate in that, that

22   cratered all settlement negotiations.

23             THE COURT:  The funds are not participating in the

24   --

25             MR. SHEEHAN:  Well, the -- Mr. Breident has

Page 13

1    announced that the funds are not proper claimants.  They're

2    not victims.  It's the indirect investors who are victims.

3    So as a result, not to get into that in any great detail,

4    but that cratered all of the good work that we were all

5    doing trying to settle those cases because that was part and

6    parcel of what the funds thought they bought.

7         There's over $4 billion worth of those claims that

8    are in the hands of claims traders at this point and we've

9    been dealing with them quite extensively trying to work out

10   claims, and we've worked out a number of them starting, as

11   Your Honor remembers, with Optimal many, many years ago.

12        But the bottom line is is that once that dropped

13   out of the equation, I literally said to them, you know --

14   not that I'm giving up any 408 here -- that we're the only

15   game in town at this point.  We've got $10 billion.  Why

16   don't you come down and sit and talk to us?  This is a rare

17   case and, as a matter of fact, when you settle with us we'll

18   add to the fund and make a distribution.  As long as we're

19   adding to the fund, which we do an alga rhythm on every time

20   we do a settlement, we will go forward with the settlement.

21        We've tried to do that, but there's many, many

22   people out there that now put everything on hold.  ET

23   created that issue, too, once extraterritoriality was

24   decided by Judge Rakoff in the fashion that he has, now we

25   have many, many motions obviously before Your Honor that

Page 14

1   will be culminating hopefully in February.  But at that --

2   that also created -- we've had several slow downs.  546(e),

3   extraterritoriality and other issues that --

4           THE COURT:  I --

5           MR. SHEEHAN:  -- just slowed it down.

6           THE COURT:  I know that.

7           MR. SHEEHAN:  Yeah.  I know Your Honor knows that.

8           THE COURT:  I know the history, but those issues

9   have now been resolved for better or worse --

10          MR. SHEEHAN:  And they're --

11          THE COURT:  -- for the time being and there are no

12  pending legal issues in the District Court.

13          MR. SHEEHAN:  Right.

14          THE COURT:  And I know you got the --

15          MR. SHEEHAN:  If --

16          THE COURT:  -- time value of money issue in --

17          MR. SHEEHAN:  Time -- TBD --

18          THE COURT:  And the Court -- well, whatever that

19  is that is and the Court will decide it.  And there's

20  nothing to be done with that.

21          MR. SHEEHAN:  This -- this case is like a law

22  school exam wrapped in a social opera.  I don't know how to

23  resolve all those issues.

24          Well, last week the 546(e) gets decided.  Your

25  Honor's already got a submission in front of you with regard

Page 15

1    to the motions to dismiss.  There's also an op -- an inquiry

2    from the Second Circuit panel on third -- time based damages

3    saying, does that decision effect anything we're considering

4    now.  So it's not like -- we -- we get questions like that

5    almost on a daily basis and we have to respond to them.

6           So -- and they don't make things move faster.  If

7    they -- it just slows everything down.

8           So in any event, Your Honor, I do want to of

9    course note before I -- I move the application that we have

10   a, obviously, the unbelievable assistance -- and I think

11   Your Honor has seen evidence of it recently -- with regard

12   to Bloomenfeld (ph), which was a very difficult case that

13   did get resolved.  We had the assistance, of course, of our

14   colleagues at Windels Marx as well as a number of other

15   counsel to assist us because we do have conflicts in a case

16   of this magnitude.

17          So at the end of the day we obviously support

18   their application and move that all of these applications be

19   approved today, Your Honor.

20          THE COURT:  Thank you.

21          MR. BELL:  Good morning, Your Honor.  Kevin Bell

22   for the Securities Investment Protection Corporation.

23          Your Honor, on that last discussion with Mr.

24   Sheehan I would note that recently this week, I think, there

25   was a motion filed by the trustee regarding the first of

Page 16

1    many multi-claim objections, PNSS&P.  SiPC will be

2    submitting its memorandum in support in the next day or so

3    of the trustee's motion.  And that will move a lot of the

4    objections along that front which is really a continuation

5    of the indirect claims which Your Honor has already decided.

6            THE COURT:  Are each of those objections going to

7    require a trial?  I know I had seen stipulations where

8    certain claimants had stipulated to the numbers and charts

9    that the trustee's provided.

10           MR. BELL:  We hope that after a few of the motions

11   are made that the message will become clearer to the parties

12   represented mainly by one counsel that Your Honor's patience

13   is being tried when it's the same issue repeatedly.

14           THE COURT:  Everybody has a right, I guess --

15           MR. BELL:  Exactly, Your Honor.

16           THE COURT:  -- to contest the facts.

17           MR. BELL:  And we're -- SiPC and I know the

18   trustee are prepared to show up every time we need to with

19   regard to that.  But the -- it's ineluctable with regard to

20   people who didn't have a direct account with the

21   broker/dealer.  The Circuit has ruled.

22           THE COURT:  Well, that's a different issue.  I'm

23   talking --

24           MR. BELL:  Well, no.  That's --

25           THE COURT:  -- I'm --

Page 17

1          MR. BELL:  -- and that implicates a lot of the --

2     still of the same objections, Your Honor.  You'll see them

3     as they're coming out because --

4          THE COURT:  The investors in funds and investors

5     in customers.

6          MR. BELL:  Partnerships and other things like that

7     where it was a partnership that had the account and were

8     saying, oh, but we were involved in the partnership.  It's

9     similar to the decision you issued in August.

10          So you'll see them coming out and they have --

11     everybody has to have their day.  Most of them are handled

12     by one counsel who has been before this Court before, and we

13     will deal with that.

14          As to claim objections, the decision by the

15     Circuit on time based damages will cause a flood of those to

16     be resolved because almost every one of those claims

17     objections implicates that decision by the Circuit.  So --

18     and they implicated also your recent decision on inter-

19     account transfers.  So when those two come -- we come to

20     that vortex with both of them, the number of objections that

21     remain will be handled on a very quick basis.

22          It's SiPC's hope and the trustee agrees that we

23     can get these all resolved.  The determination has been out

24     there, but we've had these issues in other courts that have

25     delayed the process.  And you can be assured that we all

Page 18

1    want to make it as clear as -- to the Court as possible to

2    get this resolved.

3            As to the matter at hand, and as you know last

4    time I blew the anniversary date.  It was the sixth

5    anniversary last week.  We are in the seventh year and

6    second week of this case, or we're at day 2,199.  This

7    application involves days 1937 through 2059, 122-day period.

8    SiPC has reviewed the fee applications and underlying

9    invoices, each entry in each invoice.

10           SiPC has discussed its comments and suggestions

11   with each counsel who has submitted an application to this

12   Court, and those suggestions, for the most part, have been

13   accepted by those counsels and those reductions have been

14   made.

15           I would like to note to the Court two examples.

16   One was in the fifteenth application of Windels and SiPC's

17   recommendation in the third paragraph.  We note the

18   reductions that were made after discussions between Windels

19   and SiPC's counsel, which happens to be myself and the

20   general counsel.  And there were reductions, including the

21   ten percent reduction that was an aggregate of 14.41

22   percent, and the expense was reduced by an amount over

23   $8,000.

24           In Baker -- in our recommendation on Baker

25   Hostetler in paragraph 5 it talks about the reduction there,

Page 19

1    13.71 percent including the ten percent reduction in fees

2    across the board that was agreed in the beginning of the

3    case, and expenses were reduced by $374,000.

4            Section -- there are two other ingredients in

5    Windels and Baker from the beginning of the case.  And you

6    asked me last time and I think I misspoke.  The holdback for

7    Windels is 20 percent.  The holdback for Baker is 10 percent

8    and that's pursuant to orders issued by your predecessor,

9    Judge Lifland.  And that holdback amount gets to a critical

10   mass that it becomes burdensome for the counsel, Windels

11   being smaller than Baker Hostetler.

12           And so discussions are had between SiPC and the

13   various -- and those two counsel, and there is a strong

14   recommendation by SiPC that the holdback for Windels be

15   reduced by $2 million and that the holdback for Baker

16   Hostetler be reduced by almost $12.9 million.  It's a few

17   pennies below that number.  It's twelve-million-eight-

18   ninety-nine and change.

19           THE COURT:  What remains of the holdback for the

20   two firms?

21           MR. BELL:  The holdback is significant.  If I

22   recall the holdback for Baker Hostetler will be 25 million,

23   but that's as of July.  So we are now into soon -- I've been

24   through October with regard to Baker's invoices and I am in

25   the process of reading on my way back to Washington tonight

Page 20

1    the Windels' invoice.

2            So, you know, Windels' number is somewhere around

3    five -- about two-and-a-half-million-dollars.  Am I correct,

4    Alan?

5            THE COURT:  That's after the two million --

6            MR. BELL:  After the $2 million are out, which

7    SiPC feels is a sufficient buffer, particularly with the

8    notation I made earlier that Windels is very accommodating

9    to the comments and suggestions of SiPC in reducing certain

10   expenditure of time and expenses.  We've never had a no.

11           But the critical fact is here is that both of them

12   are performing at a very high level.  Mr. Sheehan has noted

13   Bloomenfeld settlement which was a very heated situation.  I

14   was before the Court and explained it.  Mediation ended, but

15   the parties still kept on going and we were able to bring

16   that to resolution and those funds will be available for the

17   trustee and we'll -- the Court will see it on the allocation

18   motion that is filed on Monday.

19           So the standard -- and the Court has heard me say

20   this before.  It's set forth in Section 5(b)(5)(C) of the

21   statute and the trustee has noted in -- at page 77,

22   paragraph 279 that there is "no reasonable expectation that

23   the general estate will be sufficient to make any

24   distribution to general creditors or pay administrative

25   expenses."  SiPC is always concerned with the administrative

Page 21

1    expenses because we've advanced over a billion dollars to

2    the trustee as noted in the trustee's last report filed in

3    October.

4            So there is a concern because we would like to

5    replenish the SiPC fund which is there to protect customers

6    in the case that the broker holding their cash and

7    securities fail.  So we are very vigilant with look -- with

8    regard to looking at this.  But this is a situation where we

9    agree with the trustee at this moment in time.  We've had

10   some adverse decisions.  Some of those are under

11   consideration for further action in a higher court.

12           So we see at this moment in time for this

13   application through July 31st of this year through day 2,059

14   that we recommend strongly to the Court that these -- all

15   these applications be approved.

16           THE COURT:  Okay.  Well, just a couple of

17   questions.

18           MR. BELL:  Yes, sir.

19           THE COURT:  I read in your recommendations that

20   Baker Hostetler and I think Windels and maybe some of the

21   others reduced their fee request by a percentage.

22           MR. BELL:  Yes, sir.

23           THE COURT:  Does that have anything to do with the

24   holdback or is that separate?

25           MR. BELL:  No.  No.  There's a -- it's -- there's

Page 22

```
1    a -- no.  The -- there -- it's two stages.  One, we look at

2    the invoices straight up.  The rates that they charged are

3    ten percent less than they were charging regular client.

4    That was something negotiated at the beginning of each

5    engagement and was put before the Court in the beginning,

6    and whenever we go to -- there's a need for another special

7    counsel.

8            And then there is the discussions that we had

9    after each invoice is received by SiPC and I review it and

10   the general counsel has reviewed it and we come to a

11   consensus.  We have a discussion.  There is a reduction.

12   And when we come to that agreed amount, there is a holdback

13   -- for Baker ten percent, for everybody else 20 percent --

14   that is put aside and that's what I was addressing by asking

15   for or recommending that SiPC supports the reduction of

16   holdback by those two entities.

17           THE COURT:  Is that holdback embodied in the order

18   that -- the single order that Judge Lifland entered?

19           MR. BELL:  There is -- I think there were two, if

20   not three orders and I think it's recorded -- it's --

21           THE COURT:  They would have to be modified is my

22   --

23           MR. BELL:  They were modified.  There was an

24   original order.  I think it was modified once if not twice.

25   I don't know, but I think it's set forth in the application
```

Page 23

1   of Baker Hostetler.

2           THE COURT:  Well, I can award holdbacks, but

3   wouldn't you have to give notice to parties in interest to

4   modify that order?

5           MR. BELL:  Well, I think the order provides for a

6   reduction in the holdback.  It's a -- the holdback was --

7           THE COURT:  I can award holdbacks.  That's not my

8   question.  If you're trying to -- you're proposing to modify

9   --

10          MR. BELL:  No.  There is no modification -- there

11  is --

12          THE COURT:  -- an order so that on a going forward

13  basis Windels Marx's holdback will only be ten percent

14  rather than the 20 percent embodied in an order, you would

15  have to modify the order.

16          MR. BELL:  I -- I know I've had those discussions

17  with Ms. Misselson (ph) and others at Windels --

18          THE COURT:  Yes.

19          MR. BELL:  I don't think -- I don't think there is

20  any intent by SiPC to support any change in the holdback

21  reductions or modify that particular order Your Honor was

22  referring to.

23          THE COURT:  All right.  Let me ask if there's

24  anybody in court who wants to be heard in connection with

25  any of the fee applications?

Page 24

1              Well, in light of SiPC's recommendation and the

2       representation which I accept that it has no reasonable

3       expectation of recoupment of its expenses in this case and

4       under the statute cited I'll award the compensation

5       requested.

6              In terms of the -- including the holdback.  The

7       holdback I guess is going to have to be allocated to prior

8       periods so that you can put in the appropriate charts fee

9       order because regardless of what I sign the clerk won't

10      enter the order unless it's correct.

11             All right.  Thank you.

12             MR. BELL:  Thank you, Your Honor.

13             MR. SHEEHAN:  Thank you, Your Honor.

14         (Proceedings concluded at 10:41 AM)

15                          *  *  *  *  *

16

17

18

19

20

21

22

23

24

25

1                          I N D E X

2

3                        R U L I N G S

4    IDENTIFICATION                                      PAGE

5    Application for Interim Professional Compensation

6      for Baker & Hostetler, LLP, Trustee's Attorney        24

7

8    Application for Interim Professional compensation

9      for Schlitz & Schlitz, Special Counsel                24

10

11   Application for Interim Professional Compensation

12     for Higgs & Johnson, Special Counsel                  24

13

14   Application for Interim Professional Compensation

15     for Sorokor - Agmon, Special Counsel                  24

16

17   Application for Interim Professional Compensation

18     for Graf & Pitkowitz Rechtsanwalte GmbH, Special

19     Counsel                                               24

20

21   Application for Interim Professional Compensation

22     for SCA Creque, Special Counsel                       24

23

24   Application for Interim Professional Compensation

25     for Werder Vigano, Special Counsel                    24

1                              I N D E X

2

3                            R U L I N G S

4      IDENTIFICATION                                        PAGE

5      Application for Interim Professional compensation

6      for La Tanzi, Spaulding & Landreth, P.C., Special

7      Counsel                                               24

8

9      Application for Interim Professional Compensation

10     for Browne Jacobson, LLP, Special Counsel             24

11

12     Application for Interim Professional Compensation

13     for Eugene F. Collins, Special Counsel                24

14

15     Application for Interim Professional Compensation

16     for Ritter & Ritter Advokatur, Special Counsel        24

17

18     Application for Interim Professional Compensation

19     for Munari Giudici Maniglio Panfili E Associati,

20     Special Counsel                                       24

21

22     Application for Interim Professional Compensation

23     for Kelley, Wolter & Scott, P.A., Special Counsel     24

24

25

1                        I N D E X

2

3                      R U L I N G S

4    IDENTIFICATION                                    PAGE

5    Application for Interim Professional Compensation

6    for Cochran Allan, Special Counsel                24

7

8    Fifteenth Application for Interim Professional

9    Compensation and Request for Partial Release of

10   Holdback for Windels Marx Lane & Mittendorf, LLP,

11   Special Counsel                                   24

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 28

1                         CERTIFICATE

2    I, Sherri L. Breach, certify that the foregoing is a true

3    and accurate transcript from the official electronic sound

4    recording.

5    Sherri L          Digitally signed by Sherri L Breach
                        DN: cn=Sherri L Breach, o, ou,
6    Breach            email=digital1@veritext.com, c=US
     _____Date: 2014.12.19 16:25:17 -05'00'_____

7    SHERRI L. BREACH, CERT*D-397

8

9    DATED:  December 19, 2014

10

11

12

13

14

15

16

17

18

19

20

21

22    Veritext

23    330 Old Country Road

24    Suite 300

25    Mineola, NY 11501

**&**

**&** 2:4,7,10,16 3:2
3:12,19 4:3 5:10
25:6,9,12,18 26:6
26:16,23 27:10

**0**

**08-01789** 1:3

**1**

**10** 13:15 19:7
**10019** 5:13
**10111** 5:5
**10:16** 1:17
**10:41** 24:14
**11501** 28:25
**12.9** 19:16
**122** 18:7
**13.71** 19:1
**14.41** 18:21
**156** 5:12
**15th** 5:19
**18** 1:16
**19** 28:9
**1937** 18:7

**2**

**2** 19:15 20:6
**2,059** 21:13
**2,199** 18:6
**20** 10:7 19:7 22:13
23:14
**20005** 5:21
**2014** 1:16 28:9
**2059** 18:7
**24** 25:6,9,12,15,19
25:22,25 26:7,10,13
26:16,20,23 27:6,11
**25** 19:22
**279** 20:22

**3**

**300** 28:24
**31st** 21:13
**322** 8:15
**330** 28:23
**374,000** 19:3
**397** 28:7

**4**

**4** 13:7
**408** 13:14
**45** 5:4
**48.5** 8:16

**5**

**5** 18:25 20:20,20
**50** 8:16
**502** 8:24
**546** 14:2,24
**56th** 5:12

**6**

**60** 11:10

**7**

**77** 20:21

**8**

**8,000** 18:23
**800** 5:20 8:25 12:18
**805** 5:19
**825** 12:18

**9**

**926** 12:18

**a**

**able** 7:14 20:15
**accept** 24:2
**accepted** 18:13
**accommodating**
20:8
**account** 16:20 17:7
17:19
**accurate** 28:3
**achieved** 7:11
**achieving** 7:1
**action** 7:17 8:1,1
21:11
**actions** 11:7
**actively** 7:24
**add** 13:18
**adding** 13:19
**addition** 6:17 7:15
8:12
**addressing** 22:14
**administrative**
20:24,25

**advance** 8:1
**advanced** 21:1
**adverse** 21:10
**advokatur** 3:12
26:16
**aggregate** 18:21
**agmon** 2:13 25:15
**ago** 10:6,20 13:11
**agree** 21:9
**agreed** 19:2 22:12
**agrees** 17:22
**al** 1:9
**alan** 5:15 20:4
**alga** 13:19
**allan** 3:23 27:6
**allocated** 24:7
**allocation** 8:14
20:17
**allowed** 8:15 9:13
**amount** 18:22 19:9
22:12
**anniversary** 18:4,5
**announced** 12:20
13:1
**anxious** 11:4
**anybody** 23:24
**appeal** 8:3
**appear** 10:20
**application** 2:3,6,9
2:12,15,19,22 3:1,5
3:8,11,14,18,22 4:1
6:9,16 7:6 12:1
15:9,18 18:7,11,16
21:13 22:25 25:5,8
25:11,14,17,21,24
26:5,9,12,15,18,22
27:5,8
**applications** 2:1
6:18 15:18 18:8
21:15 23:25
**appropriate** 24:8
**approved** 6:22
15:19 21:15
**approximately** 6:24
8:14,20 11:10 12:18
**aside** 22:14

**asked** 19:6
**asking** 11:14 22:14
**assemble** 7:8
**assets** 11:5
**assist** 6:10 15:15
**assistance** 7:9 15:10
15:13
**assisted** 6:20 7:3
8:8
**assisting** 7:12
**associati** 3:16 26:19
**assume** 11:18
**assured** 17:25
**attorney** 2:4 5:11
25:6
**attorneys** 5:3
**august** 17:9
**austria** 7:3
**available** 20:16
**award** 23:2,7 24:4

**b**

**b** 1:21 8:24 20:20
**back** 19:25
**baker** 2:4 5:2 6:7
18:24,24 19:5,7,11
19:15,22 21:20
22:13 23:1 25:6
**baker's** 19:24
**balance** 12:16
**bankruptcy** 1:1,12
1:23
**based** 8:18 9:6 15:2
17:15
**basis** 15:5 17:21
23:13
**beginning** 19:2,5
22:4,5
**bell** 5:23 15:21,21
16:10,15,17,24 17:1
17:6 19:21 20:6
21:18,22,25 22:19
22:23 23:5,10,16,19
24:12
**bernard** 1:8
**bernstein** 1:22
**better** 14:9

[big - distribution]    Page 2

**big** 9:25
**billion** 6:25 13:7,15
  21:1
**blew** 18:4
**blmis** 5:3
**bloomenfeld** 15:12
  20:13
**board** 19:2
**books** 9:7
**borowitz** 7:10
**bother** 10:8
**bottom** 7:5 10:2
  13:12
**bought** 13:6
**bowling** 1:13
**breach** 4:25 28:2,7
**breident** 12:19,25
**briefly** 6:22
**bring** 8:15 11:1
  20:15
**broker** 16:21 21:6
**brought** 7:20
**brown** 1:25
**browne** 3:6 26:10
**buffer** 20:7
**burdensome** 19:10

**c**

**c** 5:1 6:1 20:20
**calculations** 9:7
**case** 1:3 7:20,22,24
  7:24 8:8 9:16 10:19
  10:21 12:17 13:17
  14:21 15:12,15 18:6
  19:3,5 21:6 24:3
**cases** 10:4,6 11:5,8
  11:10 12:10,11 13:5
**cash** 21:6
**cause** 17:15
**causes** 8:1,1
**cayman** 8:2
**caymans** 7:16
**cert** 28:7
**certain** 16:8 20:9
**certificate** 28:1
**certify** 28:2
**cetera** 7:9

**change** 19:18 23:20
**charged** 22:2
**charging** 22:3
**charts** 16:8 24:8
**check** 11:14,21
**circuit** 10:1 15:2
  16:21 17:15,17
**cited** 24:4
**claim** 12:17,18 16:1
  17:14
**claimants** 8:15 13:1
  16:8
**claims** 8:19,21,23
  9:13,18,19,21 11:17
  12:5 13:7,8,10 16:5
  17:16
**clear** 18:1
**clearer** 16:11
**clerk** 24:9
**client** 22:3
**cochran** 3:23 27:6
**colleagues** 15:14
**collins** 3:9 26:13
**combined** 6:24
**come** 13:16 17:19
  17:19 22:10,12
**coming** 17:3,10
**comments** 18:10
  20:9
**compensation** 2:4,7
  2:10,13,16,20,23
  3:2,6,9,12,15,19,23
  4:2 24:4 25:5,8,11
  25:14,17,21,24 26:5
  26:9,12,15,18,22
  27:5,9
**concern** 21:4
**concerned** 20:25
**concluded** 24:14
**conference** 12:2
**conflict** 6:19
**conflicts** 15:15
**connection** 23:24
**consensus** 22:11
**consent** 10:7
**consideration** 21:11

**considering** 10:2
  15:3
**contest** 16:16
**continuation** 16:4
**continue** 10:25
**corporation** 1:6
  5:17 6:17 15:22
**correct** 11:19,22
  20:3 24:10
**council** 8:3
**counsel** 2:7,10,13
  2:17,20,23 3:3,6,9
  3:12,16,20,23 4:4
  6:10,19,19 8:8
  15:15 16:12 17:12
  18:11,19,20 19:10
  19:13 22:7,10 25:9
  25:12,15,19,22,25
  26:7,10,13,16,20,23
  27:6,11
**counsels** 18:13
**country** 28:23
**couple** 6:14 21:16
**course** 8:7 11:9
  15:9,13
**court** 1:1,12 6:2,5
  7:25 8:2,19,21,23
  9:1,4,6,17,20,23
  10:9,12,15,23 11:2
  11:12,14,17,20,25
  12:4,9,15,23 14:4,6
  14:8,11,12,14,16,18
  14:18,19 15:20 16:6
  16:14,16,22,25 17:4
  17:12 18:1,12,15
  19:19 20:5,14,17,19
  21:11,14,16,19,23
  22:5,17,21 23:2,7
  23:12,18,23,24
**courts** 17:24
**cratered** 12:22 13:4
**created** 13:23 14:2
**creditors** 20:24
**creque** 2:20 25:22
**critical** 19:9 20:11
**culminating** 14:1

**customers** 17:5
  21:5

**d**

**d** 6:1 25:1 26:1 27:1
  28:7
**daily** 15:5
**damages** 15:2 17:15
**date** 6:8 18:4
**dated** 28:9
**david** 5:8 6:6
**day** 15:17 16:2
  17:11 18:6,7 21:13
**days** 18:7
**dc** 5:21
**deal** 17:13
**dealer** 16:21
**dealing** 13:9
**debtors** 1:10
**december** 1:16 28:9
**decide** 14:19
**decided** 13:24 14:24
  16:5
**decision** 9:25 15:3
  17:9,14,17,18
**decisions** 21:10
**delayed** 17:25
**dependent** 12:5
**depth** 7:11
**detail** 6:14 7:11
  13:3
**determination**
  17:23
**different** 8:9 16:22
**difficult** 15:12
**diminishing** 11:6
**direct** 16:20
**discussed** 18:10
**discussion** 15:23
  22:11
**discussions** 18:18
  19:12 22:8 23:16
**dismiss** 15:1
**disputed** 8:19,21,23
**distribute** 8:14
**distributed** 8:17
**distribution** 13:18
  20:24

**district** 1:2 14:12
**doing** 10:23 13:5
**dollars** 6:25 20:3 21:1
**downs** 14:2
**drawn** 7:10
**dropped** 13:12

**e**

**e** 1:21,21 3:15 5:1,1 6:1,1 14:2,24 25:1 26:1,19 27:1
**earlier** 20:8
**economics** 9:14
**ecro** 1:25
**effect** 15:3
**effort** 9:11
**efforts** 6:11,20 7:12
**eight** 19:17
**electronic** 28:3
**embodied** 22:17 23:14
**ended** 20:14
**engagement** 22:5
**england** 7:25 8:3
**enter** 24:10
**entered** 8:13 10:5 22:18
**enters** 8:17
**entities** 22:16
**entry** 18:9
**equation** 13:13
**equity** 9:13
**esq** 5:7,8,15,23
**essence** 11:15
**estate** 11:6 20:23
**et** 1:9 7:9 13:22
**eugene** 3:9 26:13
**event** 7:5 15:8
**eventually** 7:18
**everybody** 16:14 17:11 22:13
**evidence** 15:11
**exactly** 9:22 16:15
**exam** 14:22
**examples** 18:15
**excellent** 9:9

**expectation** 20:22 24:3
**expenditure** 20:10
**expense** 18:22
**expenses** 19:3 20:10 20:25 21:1 24:3
**experience** 8:5
**explained** 20:14
**extensively** 13:9
**extraterritoriality** 13:23 14:3

**f**

**f** 1:21 3:9 26:13
**fact** 7:18 9:15 12:12 13:17 20:11
**facts** 16:16
**fail** 21:7
**fairly** 7:16
**faith** 11:10
**fashion** 13:24
**faster** 15:6
**february** 14:1
**fee** 2:1 6:9 12:1 18:8 21:21 23:25 24:8
**feels** 20:7
**fees** 19:1
**fictitious** 9:24 12:11
**fifteenth** 4:1 18:16 27:8
**filed** 6:18 7:17 8:13 15:25 20:18 21:2
**final** 12:6
**financially** 9:12
**fine** 7:13
**firm** 7:3
**firms** 7:1 19:20
**first** 10:20 15:25
**five** 12:14 20:3
**flood** 17:15
**foregoing** 28:2
**foreign** 6:19 8:8
**forget** 9:15
**forth** 20:20 22:25
**forward** 7:23 9:15 13:20 23:12
**found** 9:10

**frank** 7:17
**frankly** 7:11 11:5
**fraudulent** 8:24 9:17,19 12:6,10
**front** 14:25 16:4
**fully** 6:16
**fund** 13:18,19 21:5
**funds** 12:21,23 13:1 13:6 17:4 20:16
**further** 21:11

**g**

**g** 6:1 25:3 26:3 27:3
**game** 13:15
**general** 18:20 20:23 20:24 22:10
**giudici** 3:15 26:19
**give** 23:3
**giving** 13:14
**gmbh** 2:16 25:18
**go** 7:23 9:15 13:20 22:6
**going** 7:18 9:10 11:1 12:20,21 16:6 20:15 23:12 24:7
**good** 6:4,5 7:8 9:16 11:10 13:4 15:21
**graf** 2:16 25:18
**great** 6:13 13:3
**green** 1:13
**guess** 16:14 24:7
**guy** 7:24

**h**

**h** 5:7,23
**half** 6:25 20:3
**hand** 18:3
**handful** 12:13
**handled** 17:11,21
**hands** 13:8
**happens** 18:19
**happy** 10:17
**hard** 11:8
**heard** 12:17 20:19 23:24
**hearing** 2:1,3,6,9,12 2:15,19,22 3:1,5,8 3:11,14,18,22 4:1

10:9
**hearings** 12:1
**heated** 20:13
**heavily** 7:16
**herald** 6:23 9:12
**higgs** 2:10 25:12
**high** 7:24 20:12
**higher** 21:11
**highlights** 6:14,21
**history** 14:8
**hold** 9:25 13:22
**holdback** 4:3 19:6,7 19:9,14,15,19,21,22 21:24 22:12,16,17 23:6,6,13,20 24:6,7 27:10
**holdbacks** 23:2,7
**holding** 21:6
**hon** 1:22
**honor** 6:4,8,15,15 6:22 7:19 8:4,10,12 8:17 10:4,18,21 11:4,22 12:7,17 13:11,25 14:7 15:8 15:11,19,21,23 16:5 16:15 17:2 23:21 24:12,13
**honor's** 14:25 16:12
**hope** 16:10 17:22
**hopefully** 14:1
**hostetler** 2:4 5:2 6:7 18:25 19:11,16,22 21:20 23:1 25:6

**i**

**identification** 25:4 26:4 27:4
**implicated** 17:18
**implicates** 17:1,17
**including** 18:20 19:1 24:6
**indirect** 13:2 16:5
**ineluctable** 16:19
**ingredients** 19:4
**inquiry** 15:1
**instrumental** 7:1
**intent** 23:20

**inter** 17:18
**interest** 23:3
**interested** 11:20
**interim** 2:1,3,6,9,12
  2:15,19,22 3:1,5,8
  3:11,14,18,22 4:1
  6:9 25:5,8,11,14,17
  25:21,24 26:5,9,12
  26:15,18,22 27:5,8
**investigative** 7:8
**investment** 1:8 6:17
  15:22
**investor** 1:5 5:17
**investors** 13:2 17:4
  17:4
**invoice** 18:9 20:1
  22:9
**invoices** 18:9 19:24
  22:2
**involve** 8:24
**involved** 7:13 17:8
**involves** 18:7
**irving** 5:7
**issue** 13:23 14:16
  16:13,22
**issued** 17:9 19:8
**issues** 14:3,8,12,23
  17:24

**j**

**j** 5:8
**jacobson** 3:6 26:10
**johnson** 2:10 25:12
**judge** 1:23 7:22
  10:5 13:24 19:9
  22:18
**july** 19:23 21:13
**jurisdiction** 7:19

**k**

**kelley** 3:19 26:23
**kept** 20:15
**kevin** 5:23 15:21
**kind** 8:7
**know** 7:3 10:11,18
  11:25 12:9 13:13
  14:6,7,8,14,22 16:7
  16:17 18:3 20:2

  22:25 23:16
**knows** 6:15 8:4,10
  14:7

**l**

**l** 1:8 4:25 25:3 26:3
  27:3 28:2,7
**la** 3:2 26:6
**landreth** 3:2 26:6
**lane** 4:3 5:10 27:10
**law** 7:1 14:21
**lead** 8:6
**led** 6:11
**left** 8:19 12:13
**legal** 14:12
**level** 20:12
**lifland** 10:5 19:9
  22:18
**light** 7:18 24:1
**line** 7:5 10:2 13:12
**literally** 13:13
**litigated** 7:16
**litigating** 7:24
**llc** 1:9
**llp** 2:4 3:6 4:3 5:10
  25:6 26:10 27:10
**long** 7:10 10:10
  13:18
**look** 21:7 22:1
**looking** 21:8
**lot** 7:7 10:12 16:3
  17:1
**luxenburg** 7:2

**m**

**m** 1:22
**madoff** 1:8 6:2
**magnitude** 15:16
**maniglio** 3:15 26:19
**marx** 4:3 5:10,11
  15:14 27:10
**marx's** 23:13
**mass** 19:10
**matter** 2:1,3,6,9,12
  2:15,19,22 3:1,5,8
  3:11,14,18,22 4:1
  7:15 12:12 13:17
  18:3

**mediation** 7:10
  20:14
**mediations** 11:10
**memorandum** 16:2
**message** 16:11
**million** 8:15 10:7
  12:18,19 19:15,16
  19:17,22 20:3,5,6
**mineola** 28:25
**misselson** 23:17
**misspoke** 19:6
**mittendorf** 4:3 5:10
  27:10
**modification** 23:10
**modified** 22:21,23
  22:24
**modify** 23:4,8,15,21
**moment** 21:9,12
**monday** 8:13 20:18
**money** 14:16
**monies** 8:16
**morning** 6:4,5,15
  15:21
**motion** 8:14,18
  15:25 16:3 20:18
**motions** 7:19 12:8
  13:25 15:1 16:10
**move** 9:1 12:4 15:6
  15:9,18 16:3
**multi** 16:1
**munari** 3:15 26:19

**n**

**n** 5:1 6:1 25:1,3
  26:1,3 27:1,3
**n.w.** 5:19
**name** 7:4
**need** 16:18 22:6
**negotiated** 22:4
**negotiations** 12:22
**net** 9:13
**never** 7:14 20:10
**new** 1:2,14,14 5:5
  5:13
**nicholas** 7:4
**nine** 19:18
**ninety** 19:18

**nisselson** 5:15
**notation** 20:8
**note** 15:9,24 18:15
  18:17
**noted** 20:12,21 21:2
**notice** 23:3
**notwithstanding**
  9:11
**number** 10:10
  13:10 15:14 17:17
  19:17 20:2
**numbers** 16:8
**ny** 5:5,13 28:25

**o**

**o** 1:21 6:1
**objections** 6:18
  11:17,21 12:5 16:1
  16:4,6 17:2,14,17
  17:20
**obviously** 13:25
  15:10,17
**october** 19:24 21:3
**official** 28:3
**oh** 12:15 17:8
**okay** 21:16
**old** 28:23
**omnibus** 12:8
**once** 8:17 12:19,20
  13:12,23 22:24
**op** 15:1
**opera** 14:22
**optimal** 13:11
**options** 10:2
**order** 8:17 10:5,8
  22:17,18,24 23:4,5
  23:12,14,15,21 24:9
  24:10
**orders** 8:12 19:8
  22:20
**original** 22:24

**p**

**p** 5:1,1 6:1
**p.a.** 3:19 26:23
**p.c.** 3:2 26:6
**page** 20:21 25:4
  26:4 27:4

paid  11:18
panel  15:2
panfili  3:15 26:19
paragraph  18:17,25
    20:22
parcel  13:6
part  13:5 18:12
partial  4:2 27:9
participate  12:21
participating  12:23
particular  23:21
particularly  20:7
parties  11:25 16:11
    20:15 23:3
partnership  17:7,8
partnerships  17:6
passing  11:6
patience  16:12
pause  6:3
pay  20:24
pending  14:12
pennies  19:17
people  9:12 11:6,14
    11:18 13:22 16:20
percent  8:16,16
    18:21,22 19:1,1,7,7
    22:3,13,13 23:13,14
percentage  21:21
performing  20:12
period  18:7
periods  24:8
personal  7:19
ph  7:2 12:19 15:12
    23:17
picard  5:7
pitkowitz  2:16
    25:18
plaza  5:4
pnss&p  16:1
point  7:7 9:11 13:8
    13:15
possible  18:1
posture  7:21
practice  8:5
predecessor  19:8
prepared  16:18

prime  8:2
primeo  6:24 7:15
    9:12
prior  24:7
privy  8:3
probably  8:25
proceedings  24:14
process  17:25 19:25
professional  2:3,6,9
    2:12,15,19,22 3:1,5
    3:8,11,14,18,22 4:2
    25:5,8,11,14,17,21
    25:24 26:5,9,12,15
    26:18,22 27:5,8
profits  9:24 12:11
proper  13:1
proposing  23:8
protect  21:5
protection  1:5 5:17
    6:17 15:22
protective  7:17
provided  16:9
provides  23:5
pure  11:17
pursuant  19:8
put  13:22 22:5,14
    24:8

q
question  9:9 23:8
questions  15:4
    21:17
quick  17:21
quite  7:11 11:5,23
    13:9

r
r  1:21 5:1 6:1 25:3
    26:3 27:3
rakoff  13:24
rare  13:16
rates  22:2
read  21:19
reading  19:25
really  16:4
reasonable  20:22
    24:2

recall  19:22
received  22:9
rechtsanwalte  2:16
    25:18
recommend  21:14
recommendation
    18:17,24 19:14 24:1
recommendations
    21:19
recommending
    22:15
recorded  22:20
recording  28:4
records  9:7
recoupment  24:3
recovery  6:11 8:11
reduced  18:22 19:3
    19:15,16 21:21
reducing  20:9
reduction  18:21,25
    19:1 22:11,15 23:6
reductions  18:13,18
    18:20 23:21
referring  23:22
regard  7:25 14:25
    15:11 16:19,19
    19:24 21:8
regarding  15:25
regardless  24:9
regular  22:3
release  4:2 27:9
remain  17:21
remains  19:19
remember  10:19
remembers  13:11
repeatedly  16:13
replenish  21:5
report  21:2
representation  24:2
represented  16:12
request  4:2 21:21
    27:9
requested  24:5
require  16:7
resolution  20:16
resolve  11:8 14:23

resolved  10:1 11:11
    14:9 15:13 17:16,23
    18:2
resolving  11:20
respond  15:5
result  7:11,22 13:3
resulted  8:10
results  7:1
retained  6:10
return  6:8
review  22:9
reviewed  18:8
    22:10
rhythm  13:19
rid  11:4
right  9:22 10:25
    11:2 12:3 14:13
    16:14 23:23 24:11
ritter  3:12,12 26:16
    26:16
road  28:23
rockefeller  5:4
ruled  16:21

s
s  5:1 6:1 25:3 26:3
    27:3
saying  9:20 15:3
    17:8
sca  2:20 25:22
schiller  7:2,2
schlitz  2:7,7 25:9,9
school  14:22
scott  3:19 26:23
second  10:1 15:2
    18:6
section  19:4 20:20
secure  9:25
securities  1:5,9 5:17
    6:16 15:22 21:7
see  10:4 17:2,10
    20:17 21:12
seeing  12:7
seeking  10:7
seen  15:11 16:7
sense  10:5
separate  21:24

**set** 10:18 20:20 22:25
**settle** 10:6 13:5,17
**settled** 10:12,22
**settlement** 6:25 8:6 12:22 13:20,20 20:13
**settlements** 6:23
**settling** 10:3
**seventh** 18:5
**sheehan** 5:8 6:4,6,6 8:20,22,25 9:3,5,8 9:19,22,24 10:11,14 10:17,24 11:3,13,16 11:19,22 12:3,7,12 12:16,25 14:5,7,10 14:13,15,17,21 15:24 20:12 24:13
**sherri** 4:25 28:2,7
**shortly** 12:8
**show** 16:18
**sign** 24:9
**significant** 8:11 9:13 19:21
**similar** 17:9
**single** 22:18
**sipc** 5:18 16:1,17 18:8,10 19:12,14 20:7,9,25 21:5 22:9 22:15 23:20
**sipc's** 10:7 17:22 18:16,19 24:1
**sir** 21:18,22
**sit** 13:16
**situation** 20:13 21:8
**six** 6:11 7:19
**sixteenth** 6:9
**sixth** 18:4
**slow** 14:2
**slowed** 14:5
**slows** 15:7
**smaller** 19:11
**smb** 1:3
**social** 14:22
**soon** 10:21 19:23
**sorokor** 2:13 25:15

**sound** 28:3
**southern** 1:2
**spaulding** 3:2 26:6
**special** 2:7,10,13,17 2:20,23 3:3,6,9,12 3:16,19,23 4:3 6:10 22:6 25:9,12,15,18 25:22,25 26:6,10,13 26:16,20,23 27:6,11
**speculate** 9:10
**stages** 22:1
**standard** 20:19
**start** 9:1 10:16 12:4
**started** 10:20
**starting** 13:10
**statements** 7:9
**states** 1:1
**status** 12:2
**statute** 20:21 24:4
**stipulated** 16:8
**stipulations** 16:7
**straight** 22:2
**street** 5:12,19
**strong** 19:13
**strongly** 21:14
**stuart** 1:22
**submission** 14:25
**submitted** 18:11
**submitting** 16:2
**sufficient** 20:7,23
**suggestions** 18:10 18:12 20:9
**suite** 5:20 28:24
**summer** 11:9
**support** 15:17 16:2 23:20
**supported** 6:16
**supports** 22:15
**sustained** 8:2

**t**

**t** 1:25
**talk** 6:21 13:16
**talking** 9:14,20 16:23
**talks** 18:25
**tanzi** 3:2 26:6

**tbd** 14:17
**tee** 7:15
**ten** 18:21 19:1 22:3 22:13 23:13
**terms** 24:6
**thank** 15:20 24:11 24:12,13
**things** 8:4,5 15:6 17:6
**think** 7:4 10:19 11:23 15:10,24 19:6 21:20 22:19,20,24 22:25 23:5,19,19
**third** 15:2 18:17
**thought** 9:16 13:6
**thousand** 8:20,21 10:9
**three** 22:20
**time** 8:3,10 10:6,18 11:9 12:4 13:19 14:11,16,17 15:2 16:18 17:15 18:4 19:6 20:10 21:9,12
**times** 9:10
**today** 15:19
**tonight** 19:25
**town** 13:15
**traders** 13:8
**transcribed** 4:25
**transcript** 28:3
**transfer** 9:17,19 12:10
**transfers** 8:24 12:6 17:19
**trial** 10:19,22 11:1 16:7
**trials** 10:23
**tried** 9:9 13:21 16:13
**true** 28:2
**trustee** 5:3 6:6,9,11 6:19 8:11 15:25 16:18 17:22 20:17 20:21 21:2,9
**trustee's** 16:3,9 21:2

**trustee's** 2:4 25:6
**try** 11:1
**trying** 9:11 10:16 13:5,9 23:8
**twelve** 19:17
**twice** 22:24
**two** 6:21,24 12:11 17:19 18:15 19:4,13 19:20 20:3,5 22:1 22:16,19

**u**

**u** 25:3 26:3 27:3
**u.s.** 1:12,23
**ultimately** 8:6
**unbelievable** 15:10
**underlying** 18:8
**united** 1:1
**use** 12:1

**v**

**v** 1:7
**value** 6:25 14:16
**variety** 8:9
**various** 19:13
**veritext** 28:22
**victims** 13:2,2
**view** 12:9
**vigano** 2:23 25:25
**vigilant** 21:7
**vortex** 17:20

**w**

**w** 5:12
**want** 7:23 11:18 15:8 18:1
**wanted** 7:17
**wants** 23:24
**washington** 5:21 19:25
**way** 9:1 10:23 11:24 19:25
**ways** 8:9
**we've** 9:3,5,8,9,14 10:18 11:9 13:8,10 13:15,21 14:2 17:24 20:10 21:1,9
**week** 10:1 14:24 15:24 18:5,6

**werder**  2:23 25:25
**windels**  4:3 5:10,11
  15:14 18:16,18 19:5
  19:7,10,14 20:1,2,8
  21:20 23:13,17
  27:10
**witness**  7:8
**wolter**  3:19 26:23
**wondering**  10:15
**work**  7:8,13 8:7
  11:8,23 13:4,9
**worked**  13:10
**world**  9:24
**worse**  14:9
**worth**  13:7
**wouldn't**  23:3
**wrapped**  14:22
**write**  11:14,21

**x**

**x**  1:4,11 25:1 26:1
  27:1

**y**

**yeah**  14:7
**year**  8:18 10:20
  18:5 21:13
**years**  6:12 7:20,21
  9:14 12:11 13:11
**yesterday**  6:23,25
  8:13 9:12 12:17
**york**  1:2,14,14 5:5
  5:13