UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---

SECURITIES INVESTOR PROTECTION
CORPORATION,

                    Plaintiff,

    v.

BERNARD L. MADOFF INVESTMENT
SECURITIES LLC,

                    Defendant.

Adv. Pro. No. 08-01789 (SMB)

SIPA Liquidation

(Substantively Consolidated)

---

In re:

BERNARD L. MADOFF,

                    Debtor.

---

IRVING H. PICARD, Trustee for the Substantively
Consolidated SIPA Liquidation of Bernard L. Madoff
Investment Securities LLC and Bernard L. Madoff,

                    Plaintiff,

    v.

NTC & Co. LLP, as former custodian of an
Individual Retirement Account for the benefit of
Susan Helfman; and SUSAN HELFMAN,
                    Defendants.

Adv. Pro. No. 10-4509 (SMB)

---

IRVING H. PICARD, Trustee for the Substantively
Consolidated SIPA Liquidation of Bernard L. Madoff
Investment Securities LLC and Bernard L. Madoff,

                    Plaintiff,

    v.

RICHARD J. HELFMAN LIFE INSURANCE
TRUST DTD 12/30/89; SUSAN HELFMAN,
individually and in her capacity as Trustee of the
Richard J. Helfman Life Insurance Trust dtd

Adv. Pro. No. 10-4636 (SMB)

12/30/89; and STEPHEN HELFMAN, individually
and in his capacity as Trustee of the Richard J.
Helfman Life Insurance Trust dtd 12/30/89,

                            Defendants.

IRVING H. PICARD, Trustee for the Substantively
Consolidated SIPA Liquidation of Bernard L. Madoff
Investment Securities LLC and Bernard L. Madoff,

                            Plaintiff,

          v.

ADELINE SHERMAN REVOCABLE TRUST, AS
AMENDED; STEPHEN HELFMAN, in his capacity
as Trustee of the Adeline Sherman Revocable Trust, as
Amended; and SUSAN HELFMAN, in her capacity as
Trustee of the Adeline Sherman Revocable Trust, as
Amended,

                            Defendants.

Adv. Pro. No. 10-4816 (SMB)

## DEFENDANTS' MEMORANDUM OF LAW
## IN SUPPORT OF MOTION TO DISMISS

**KLESTADT WINTERS JURELLER
SOUTHARD & STEVENS, LLP**
570 Seventh Avenue, 17th Floor
New York, NY 10018-6314
Telephone:  (212) 972-3000
Facsimile:  (212) 972-2245
Tracy L. Klestadt
Brendan M. Scott

*Attorneys for Defendant*

<u>**TABLES OF CONTENTS**</u>

TABLE OF AUTHORITIES ...................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................1

I.   FACTUAL BACKGROUND..............................................................................................2

II.  PROCEDURAL BACKGROUND......................................................................................3

III. ARGUMENT .......................................................................................................................4

    A. ALL COUNTS OTHER THAN § 548(a)(1)(A) SHOULD BE DISMISSED
       PURSUANT TO § 546(e)..............................................................................................5

        i.    Defendants' Account Documents Constituted Securities Contracts....................5

        ii.   The Transfers Constituted Settlement Payments .................................................7

    B. THE TRANSFERS WERE RECEIVED "FOR VALUE"
       AND IN "GOOD FAITH".............................................................................................7

        i.  Defendants Held Valid Claims Against BLMIS....................................................8

        ii.  The Antecedent Debt Constitutes "Value", and the Transfers
           Cannot be Avoided ..........................................................................................11

    C. THE TRUSTEE DID NOT ADEQUATELY PLEAD FRAUD..................................13

    D. THE TRUSTEE'S CALCULATION OF DEFENDANTS' "FICTITIOUS PROFITS"
       CONSTITUTES AN END RUN AROUND THE TWO YEAR REACH-BACK
       PERIOD SET FORTH IN 11 U.S.C. § 548 ................................................................15

    E. THE CLAIMS AGAINST SUBSEQUENT TRANSFEREES LACK SUFFICIENT
       DETAIL .......................................................................................................................16

    F. THE IRA ACCOUNT AT ISSUE IN THE SUSAN HELFMAN ADVERSARY
       PROCEEDING IS EXEMPT FROM THE TRUSTEE'S CLAIMS ...........................17

    G. THE TRUSTEE HAS NOT ADEQUATELY PLEADED FACTS SUFFICIENT TO
       ESTABLISH THAT HE HAS SATISFIED 15 U.S.C. § 78fff-2(C)(3).....................19

    H. JOINDER IN THE OTHER MOTIONS TO DISMISS FILED IN
       SIMILAR CASES........................................................................................................19

i

# TABLE OF AUTHORITIES

**Cases:**

*Am. Gen. Ins. Co. v. Equitable Gen.*,
   Co., 493 F. Supp. 721 (E.D. Va. 1980) ........................................................................... 10

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ......................................................................................................... 4

*Atlanta Shipping Corp., Inc. v. Chem. Bank*,
   818 F.2d 240 (2d Cir. 1987) ............................................................................................ 13

*Baker v. David A. Dorfman, P.L.L.C.*,,
   2000 U.S. Dist. LEXIS 10142 (S.D.N.Y. 2000) ............................................................ 19

*Balaber-Strauss v. Lawrence (In re Churchill Mortg. Inv. Corp.)*,,
   264 B.R. 303 (S.D.N.Y. 2001) .............................................................................. 5, 11, 14

*Bayerische Hypo-und Vereinsbank AG v DeGiorgio*,
   902 N.Y.S.2d 85 (2010) .................................................................................................. 18

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ......................................................................................................... 4

*BFP v. Resolution Trust Corp.*,
   511 U.S. 531 (1994) ......................................................................................................... 9

*Big Apple Car, Inc. v. City of New York*,
   204 A.D.2d 109 (1st Dep't 1994) .................................................................................... 11

*Boguslavsky v. Kaplan*,
   159 F.3d 715 (2d Cir. N.Y. 1998) ................................................................................... 10

*Breeden v. Thomas (In re Bennett Funding Group, Inc.)*,
   No. 98-40892,1999 Bankr. LEXIS 1843 (Bankr. N.D.N.Y. Apr. 29, 1999) .............. 8, 9, 11, 13

*Brown v. Brandenburg (In re McGee), No. 99-5037*,,
   2000 Bankr. LEXIS 1865 (Bankr. E.D. Ky. Nov. 22, 2000) .......................................... 12

*Daly v. Deptula (In re Carrozzella & Richardson)*,,
   286 B.R. 480 (D. Conn. 2002) .................................................................................. 13, 14

*Daly v. Fusco (In re All-Type Printing, Inc.)*,,
   274 B.R. 316 (Bankr. D. Conn. 2002) ............................................................................ 12

*DeLong Corp. v. Morrison-Knudsen Co., Inc.*,
 20 A.D.2d 104, 107 (1st Dep't 1963), *aff'd*, 14 N.Y.2d 346 (1964) ...................................... 11

*Ellison v. American Image Motor Co., Inc.*,
 36 F. Supp. 2d 628 (S.D.N.Y. 1999) ....................................................................................... 16

*Ferris, Baker Watts, Inc. v. Stephenson (In re MJK Clearing, Inc.*),
 371 F.3d 397 (8th Cir. 2004) .................................................................................................... 9

*Gard Entertainment Inc. v. Block*,
 960 N.Y.S.2d 50 (2012) ........................................................................................................... 19

*Gowan v. Amaranth LLC (In re Dreier LLP),*,
 452 B.R. 451 (Bankr. S.D.N.Y. 2011) ..................................................................................... 17

*Picard v. Greiff*,
 476 B.R. 729 (S.D.N.Y. 2012) ................................................................................................. 17

*Grippo v. Perazzo*,
 357 F.3d 1218 (11th Cir. 2004) ................................................................................................. 9

*In re Glenn*,
 430 B.R. 56 (Bankr. N.D.N.Y. 2010) ....................................................................................... 17

*In re Hannover Corp.*,
 310 F.3d 796 (5th Cir. 2002) ..................................................................................................... 8

*In re Keil*,
 88 F.2d 7 (2nd Cir. 1937) .......................................................................................................... 17

*In re Lucar Enter., Inc.*,
 49 B.R. 717 (Bankr. S.D. Fla. 1985) ........................................................................................ 13

*In re UBS Auction Rate Sec. Litig.*,
 No. 08-2967, 2009 U.S. Dist. LEXIS 26385 (S.D.N.Y. Mar. 30, 2009) .................................. 10

*Mazzeo v. United States (In re Mazzeo),*,
 131 F.3d 295 (2d Cir. 1997) ....................................................................................................... 8

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*,
 547 U.S. 71 (2006) ...................................................................................................................... 9

*Morgan v. Gordon*,
 450 B.R. 402 (W.D.N.Y. 2011) ................................................................................................ 17

*Nisselson v. Softbank AM Corp. (In re MarketXT Holdings Corp.),*,
 361 B.R. 369 (Bankr. S.D.N.Y. 2007) ..................................................................................... 14

*Official Committee v. Hancock Park Capital II, L.P. (In re Fitness Holdings),*,
    714 F.3d 1141 (9th Cir. 2013) ........................................................................ 12

*Orlick v. Kozyak (In re Fin. Federated Title & Trust, Inc.),*,
    309 F.3d 1325 (11th Cir. 2002) ...................................................................... 14

*Pani v. Empire Blue Cross Blue Shield,*
    152 F.3d 67 (2d Cir. 1998) ............................................................................... 4

*Picard v. Cohmad Sec. Corp,*
    454 B.R. 317 (Bankr. S.D.N.Y. 2011) ........................................................... 17

*Picard v. Ida Fishman Revocable Trust, et al.*, 773 F.3d 411, (2nd Cir.2014)......................2,7

*Picard v. Madoff (In re Bernard L. Madoff, Inv. Sec. LLC),*
    458 B.R. 87 (Bankr. S.D.N.Y. 2011) .......................................................... 4, 16

*Picard v. Taylor (In re Park S. Sec., LLC),*,
    326 B.R. 505 (S.D.N.Y. 2005) ...................................................................... 14

*Rolf v. Blyth, Eastman Dillon & Co., Inc.*,
    637 F.2d 77 (2d Cir. 1980) ............................................................................ 10

*Scalp & Blade v. Advest, Inc.*,
    765 N.Y.S.2d 92 (4th Dep't 2003) ................................................................ 11

*Schnorr v. Schubert,*
    No. 05-0303, 2005 WL 2019878 (W.D. Okla. Aug. 18, 2005) ...................... 9

*SEC v. Zandford,*
    535 U.S. 813 (2002) ......................................................................................... 9

*Securities Investor Protection Corp. v. Stratton Oakmont, Inc.*,
    234 B.R. 293 (Bankr. S.D.N.Y. 1999) ..................................................... 14, 16

*SIPC v. Bernard L. Madoff Inv. Sec. LLC (Picard v. Greiff),*,
    476 B.R. 715 (S.D.N.Y. 2012) ..................................................................... 5, 8

*Sharp Int'l Corp. v. State St. Bank & Trust Co. (In re Sharp Int'l Corp.),*,
    403 F.3d 43 (2d Cir. 2005) ............................................................................ 11

*Shaw v. Delta Air Lines, Inc.*,
    463 U.S. 85 (1983) ........................................................................................... 6

*Tese-Milner v. Edidin Assoc.*,
    490 B.R. 84 (Bankr. S.D.N.Y. 2013) ............................................................ 19

iv

*USPS v. Phelps Dodge Ref. Corp.*,
  950 F. Supp. 504 (E.D.N.Y. 1996) ................................................................................ 10


**Other Authorities:**

11 U.S.C. § 101(5)(A) ........................................................................................................ 8

11 U.S.C. § 101(12) ........................................................................................................... 8

11 U.S.C. § 544 ............................................................................................................ 1, 5

11 U.S.C. § 546(e) .................................................................................... 1, 5, 6, 7, 17, 18

11 U.S.C. § 547 ................................................................................................................. 1

11 U.S.C. § 548 ............................................................................... i, 1, 8, 11, 12, 15

11 U.S.C. § 548(a)(1)(A) ......................................................................... 1, 2, 5, 7, 11, 19

11 U.S.C. § 548(a)(1)(B) .................................................................................................. 5

11 U.S.C. § 548(c) ............................................................................................. 5, 7, 8, 12

11 U.S.C. § 548(d)(1) ..................................................................................................... 13

11 U.S.C. § 548(d)(2)(A) .................................................................................................. 8

11 U.S.C. § 550 ................................................................................................................. 1

11 U.S.C. § 551 ................................................................................................................. 1

15 U.S.C. § 78bb(a)(2) ...................................................................................................... 9

15 U.S.C. § 78bbb ............................................................................................................. 9

15 U.S.C. § 78cc(b) ......................................................................................................... 10

15 U.S.C. § 78fff(b) .......................................................................................................... 8

15 U.S.C. § 78fff-2(C)(3) ............................................................................................ i, 19

15 U.S.C. § 78fff-2(C)(1)(A)-(D) .................................................................................. 19

Securities Exchange Act of 1934 § 10(b) ........................................................................ 9

Securities Exchange Act of 1934 § 29(b) ...................................................................... 10

N.Y. C.P.L.R. § 5001 ..................................................................................................... 13

N.Y. C.P.L.R. § 5001(a) ................................................................................................ 10

N.Y. C.P.L.R. § 5004 ..................................................................................................... 13

N.Y. C.P.L.R. § 5205 ..................................................................................................... 17

N.Y. C.P.L.R. § 5205(c) ................................................................................................ 17

N.Y. C.P.L.R. § 5205(c)(2) ............................................................................................ 17

N.Y. C.P.L.R. 5205(c)(5) ................................................................................... 17, 18, 19

N.Y.U.C.C. § 8-501(b)(1) ................................................................................................ 7

New York Practice § 490 (5th ed. 2011) ....................................................................... 17

Fed R. Civ. P. Rule 9(b) .................................................................................. 4, 13, 16, 19

Fed R. Civ. P. Rule 12(b)(6) ....................................................................................... 1, 4

Fed. R. Bankr. P. 7009 .................................................................................................... 4

Fed. R. Bankr. P. 7012 .................................................................................................... 1

Defendants listed on the annexed Schedule "A" (collectively, the "Defendants")

respectfully submit this memorandum of law in support of the accompanying Motion to Dismiss

pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 12(b)(6);

Fed. R. Bankr. P. 7012. As discussed below, the Trustee's Complaints ("Complaints") filed in

the following matters:  (i) Picard v. NTC & Co., LLP, as former custodian of an Individual

Retirement Account for the benefit of Susan Helfman, et al., Adv. Proc. No.: 10-04509-smb

("Susan Helfman Adversary Proceeding"), (ii) Picard v. Richard J. Helfman Life Insurance Trust

dtd 12/30/89, et al., Adv. Proc. No.: 10-04636-smb ("Richard Helfman Adversary Proceeding")

and (iii) Picard v. Adeline Sherman Revocable Trust, as Amended, et al., Adv. Proc. No.: 10-

04816-smb ("Sherman Adversary Proceeding", and collectively the "Adversary Proceedings"),

must be dismissed because he fails to state a claim upon which relief can be granted.

## PRELIMINARY STATEMENT

In December 2010, the Trustee initiated approximately 1,000 avoidance actions against

former Bernard L. Madoff Investment Securities LLC ("BLMIS") customers, including this

matter, seeking return of the monies they innocently withdrew from their BLMIS accounts.

Numerous defendants in various of the 1,000 avoidance actions have already filed a motion to

dismiss the Trustee's complaint.  The arguments set forth herein are not new and have been laid

out in numerous pleadings filed with this Court and/or the District Court in matters where the

alleged facts are nearly identical.

In the Adversary Proceedings, the Trustee is seeking to recover withdrawals that initial

transferee defendants made from their respective BLMIS accounts and unidentified subsequent

transfers allegedly received by the subsequent transferee defendants.  In the Complaints, the

Trustee asserts claims under the preferential transfer provision (11 U.S.C. § 547) and multiple

fraudulent conveyance provisions, including 11 U.S.C. §§ 544, 547, 548, 550, and 551, alleging

1

a right to recover transfers under the Bankruptcy Code and New York Debtor and Creditor Law. However, based on the applicability of 11 U.S.C. § 546(e), all causes of action in the Trustee's Complaints should be dismissed except those seeking the avoidance and recovery of alleged actual fraudulent transfers under Section 548(a)(1)(A).

With regard to the Trustee's claims asserted under 11 U.S.C. § 548(a)(1)(A), even if all allegations in the Trustee's Complaints are accepted as true, the Trustee's claims must also fail, because Defendants' withdrawals satisfied an antecedent debt that was owed by BLMIS to Defendants based upon BLMIS' violation of the federal securities laws, fraud, and breach of fiduciary duty, entitling Defendants to a rescission remedy or damages. Consequently, Defendants received the subject transfers "for value," and the Trustee has not challenged Defendants' good faith.

Additionally, the Trustee's claims should be dismissed because he has failed to adequately plead fraud, he has not adequately alleged that BLMIS' customer property is insufficient to pay allowed customer claims, and the IRA account at issue in the Susan Helfman Adversary Proceeding is protected by New York law. Finally, the Trustee's claims against subsequent transferees should also be dismissed because they are not pled with the requisite specificity and are therefore legally deficient.

## I.    FACTUAL BACKGROUND

The allegations contained in the Complaints, excepting the specific allegations with regard to the alleged Transfers, are not materially different from the allegations considered by the District Court and subsequently considered by the Second Circuit on appeal in *Picard v. Ida Fishman Revocable Trust,* et al., 773 F.3d 411 (2nd Cir. 2014). The Complaints allege that the initial transferee defendants were former customers of BLMIS. *See* Complaint in Sherman Adversary Proceeding [Docket Entry No. 1] ("Sherman Complaint"), ¶ 7. BLMIS was a

2

securities broker-dealer registered with the Securities and Exchange Commission ("SEC") and regulated under the Securities Exchange Act of 1934, and it was a member of the Securities Investor Protection Corporation ("SIPC"). *See* Sherman Complaint, ¶22. BLMIS operated three lines of business – an investment advisory operation, a market making operation, and a proprietary trading operation. *See* Sherman Complaint, ¶22.

The Complaints also allege that when Defendants' accounts were opened at BLMIS, they executed a Customer Agreement, an Option Agreement, and/or a Trading Authorization.  See Sherman Complaint, ¶ 37. The Complaints further allege that after the Defendants' BLMIS accounts were opened, Defendants received monthly BLMIS account statements and trade confirmations, which indicated that certain securities transactions had been conducted on behalf of Defendants. *See* Sherman Complaint, ¶25.  Defendants were unaware of any fraud at BLMIS when they withdrew funds from their respective BLMIS account. *See* Exhibit B to Sherman Complaint. The Trustee acknowledges that Defendants are innocent victims of BLMIS's fraud and does not challenge their "good faith." *See* Sherman Complaint, ¶¶ 28-35.

BLMIS's fraud resulted in huge losses for many investors, including Defendants. Nonetheless, the Trustee seeks to recover alleged fraudulent transfers received by Defendants during the two-year reach back period and beyond.

## II.    PROCEDURAL BACKGROUND

The Trustee filed his Complaints in the Adversary Proceedings in November and December 2010.  In June 2011, the Trustee filed a Notice of Intent to Participate in Mediation in each of the Adversary Proceedings, then, nearly three years later, the Trustee unilaterally filed a Withdrawal of Notice of Parties' Intent to Participate in Mediation in each of the Adversary Proceedings.  In response, Defendants each filed a Motion to Dismiss and Memorandum of Law in Support of Defendants' Motion to Dismiss Adversary Complaint in June 2014.  In accordance

3

with the terms of the Court's procedures order, the each of the Adversary Proceedings was

automatically scheduled for mediation.  Defendants and the Trustee were unable to resolve the

Adversary Proceedings.  As a result, the Trustee filed a Notice of Extended Response Due Date,

which set January 30, 2015 as the date on or before which Defendants must respond to the

Complaints in the Adversary Proceedings.

## III.    ARGUMENT

"To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). "Threadbare recitals

of the elements of a cause of action, supported by mere conclusory statements, do not suffice."

*Id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("Factual allegations must be

enough to raise a right to relief above the speculative level.").

While a court must accept as true all of the factual allegations in the complaint, this

"tenet . . . is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. Thus, a "pleading that

offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will

not do.'" *Id.* (*quoting Twombly*, 550 U.S. at 555).

Fed. R. Civ. P. Rule 9(b) (made applicable through Fed. R. Bankr. P. 7009) applies to

claims for actual fraudulent transfer. *Picard v. Madoff* (*In re Bernard L. Madoff Inv. Sec. LLC*),

458 B.R. 87, 106 (Bankr. S.D.N.Y. 2011). To satisfy the Rule 9(b) pleading standard, a

bankruptcy trustee must plead facts sufficient "to provide detailed notice of fraud claims to

defending parties." *Id.* "Such is not the case here where opacity, rather than particularity, best

describes the allegations." *Id.* Defenses that appear on the face of the complaint are properly

4

before the court on a motion to dismiss. *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74

(2d Cir. 1998) ("An affirmative defense may be raised by a pre-answer motion to dismiss under

Rule 12(b)(6), without resort to summary judgment procedure, if the defense appears on the face

of the Complaint."); *Balaber-Strauss v. Lawrence (In re Churchill Mortg. Inv. Corp.*), 264 B.R.

303, 306 (S.D.N.Y. 2001) (affirming bankruptcy court's dismissal on the pleadings based on

application of Section 548(c) in Ponzi scheme case).

### A.  ALL COUNTS OTHER THAN § 548(a)(1)(A) SHOULD BE DISMISSED PURSUANT TO § 546(e).

As a result of proceedings in the District Court, which were affirmed by the Second

Circuit, the Trustee is prohibited from pursuing claims other than those asserted under

Bankruptcy Code Section 548(a)(1)(A) for avoidance of actual intent fraudulent transfers during

the federal two-year "reach back" period. *See SIPC v. Bernard L. Madoff Inv. Sec. LLC (Picard

v. Greiff)*, 476 B.R. 715, 722 (S.D.N.Y. 2012) ("The Court concludes . . . that § 546(e) bars the

Trustee from pursuing the claims here made under § 548(a)(1)(B) and § 544."), *affirmed, In re

Madoff Sec.*, 773 F.3d 411 (2nd Cir. 2014).

i.    Defendants' Account Documents Constituted Securities Contracts.

Similar to the facts in *Picard v. Greiff*, when Defendants' accounts were opened with

BLMIS, a "securities contract" was created by execution of the three documents that Defendants

were required to execute to open their respective account, including (i) a Customer Agreement,

wherein each customer authorized BLMIS to open or maintain one or more accounts for its

benefit, (ii) a Trading Authorization, wherein each customer appointed BLMIS to be the

customer's agent and attorney in fact to buy, sell and trade in stocks, bonds, and any other

securities in accordance with BLMIS's terms and conditions for the customer's account, and (iii)

an Option Agreement, wherein each customer authorized BLMIS to engage in options trading for

the customer's account.  These three account opening documents (together, the "Account

Documents") authorized BLMIS to engage in securities transactions on behalf of its customers,

and consequently established a "securities contract."  The Second Circuit affirmed Judge

Rakoff's conclusion that the Account Documents constitute Securities Contracts and stated as

follows:

> On their face, the Account Documents are agreements by which
> BLMIS will "acquire or dispose of securities" on behalf of its
> customers. The Customer Agreement established the
> broker-customer relationship, and the Trading Authorization
> authorized BLMIS to trade in securities for the customer's account.
> These documents also specify the terms by which BLMIS will
> acquire and dispose of securities for the customer.  Were it not for
> the Account Documents, there would be no basis for a customer to
> make deposits or request withdrawals. Thus, the transfers at issue
> originated with, and could not have been possible but for, the
> relationship created by the Account Documents. Accordingly, we
> conclude that they fall within the statute's broad definition of
> "securities contract." See § 741(7)(A)(i).
>
> The function contemplated for the Account Documents also
> satisfies the definition of "securities contract" in § 741(7)(A)(x),
> which includes "a master agreement that provides for an agreement
> or transaction referred to in clause (i) [i.e., 'a contract for the
> purchase, sale, or loan of a security'])."
>
> *                    *                    *
>
> We similarly have little difficulty concluding that the payments
> BLMIS made to its customers were made "in connection with" the
> securities contracts identified above. In the context of § 546(e), a
> transfer is "in connection with" a securities contract if it is "related
> to" or "associated with" the securities contract. See Webster's 3d
> New Int'l Dictionary 481 (1993) (defining "connection" as
> "relationship or association in thought"); cf. Shaw v. Delta Air
> Lines, Inc., 463 U.S. 85, 97 (1983) (interpreting "relates to" to
> mean "a connection with or reference to"). Here, BLMIS promised
> its customers that it would transact securities, and BLMIS's
> customers deposited money relying on that promise. This
> agreement constitutes a securities contract as defined in the statute
> and the customers' subsequent withdrawals from their accounts
> were therefore related to, and associated with, this securities
> contract.

6

*Picard v. Ida Fishman Revocable Trust, et al.*, 773 F.3d 411, 418-419, 421-422 (2nd Cir. 2014).

    ii.    <u>The Transfers Constituted Settlement Payments</u>.

As stated by the Second Circuit:

> Each time a customer requested a withdrawal from BLMIS, he or she intended that BLMIS dispose of securities and remit payment to the customer. *See* N.Y.U.C.C. § 8-501(b)(1) & cmt. 2 (broker's written crediting of securities to a customer's account creates an enforceable securities entitlement). The statutory definition and *Enron* compel the conclusion that, for example, if I instruct my broker to sell my shares of ABC Corporation and remit the cash, that payment is a "settlement" even if the broker may have failed to execute the trade and sent me cash stolen from another client. As the district court correctly concluded, because the customer granted BLMIS discretion to liquidate securities in their accounts to the extent necessary to implement their sell orders or withdrawal requests, each transfer in respect of a such an order or request constituted a settlement payment.

*Id.* at 422-423.

The facts as alleged in the Complaints in the Adversary Proceedings are no different than those alleged in *Picard v. Ida Fishman Revocable Trust, et al.* As a result, there is no basis to reach a finding that is inconsistent with the rule of law established by the Second Circuit.

For all the reasons considered by the District Court and the Second Circuit, 11 U.S.C. § 546(e) is applicable in these adversary proceedings and all of the Trustee's claims, except those asserted under 11 U.S.C. § 548(a)(1)(A), should be dismissed.

**B.  THE TRANSFERS WERE RECEIVED "FOR VALUE" AND IN "GOOD FAITH"[1]**

The Trustee's avoidance powers are set forth in SIPA, which incorporates the Bankruptcy Code's avoidance provisions. 15 U.S.C. § 78fff(b). The Bankruptcy Code includes a "value" defense to avoidance, providing that "a transferee . . . that takes for value and in good faith . . . may retain any interest transferred . . . to the extent that such transferee . . . gave value to the debtor in exchange for such  transfer . . . ." 11 U.S.C. § 548(c); *see also Greiff*, 476 B.R. at 723 ("[T]he defendants can prevail on their motion to dismiss these claims if they prove that, on the face of the complaint[s], they can invoke the affirmative defense provided by § 548(c)."). The Bankruptcy Code defines "value" to include the "satisfaction . . . of a present or antecedent debt of the debtor." 11 U.S.C. § 548(d)(2)(A). Value is determined at the time of the transfer. *In re Hannover Corp.*, 310 F.3d 796, 802 (5th Cir. 2002) ("[T]he fact that an option has become worthless in no way proves that it was worthless at an earlier date. [C]onsistent with economic reality, this and other circuits unequivocally hold that for purposes of § 548 the value of an investment, even a risky one, . . . is to be determined at the time of purchase."); *Breeden v. Thomas (In re Bennett Funding Group, Inc.)*, No. 98-40892, 1999 Bankr. LEXIS 1843, at *33 (Bankr. N.D.N.Y. Apr. 29, 1999) ("[V]alue must be determined as of the date of the transfer, and not in light of subsequent events."). The term "debt" is broadly defined as "liability on a claim," 11 U.S.C. § 101(12), and a "claim" includes a "right to payment" whether or not that right has been liquidated or reduced to a judgment. *See* 11 U.S.C. §§ 101(5)(A), (12).  "[T]he terms 'debt' and 'claim' are coextensive: a creditor has a 'claim' against the debtor; the debtor owes a 'debt'

---

[1] On October 15, 2013, District Judge Rakoff ruled on antecedent debt issues in connection with similarly situated innocent transferee defendants. Judge Rakoff rejected the notion that state and federal claims for rescission or damages that BLMIS customers may have had against BLMIS constitutes "value" under 548(c) "as against the Madoff Securities customer property estate under SIPA." *See SIPC v. Bernard L. Madoff Inv. Sec. LLP (In re Madoff Sec.)*, 499 B.R. 422, 430 (S.D.N.Y. 2013). Defendants were not parties to those proceedings. To the extent this ruling is binding on Defendants, Defendants are asserting these arguments to preserve any rights to participate in any appeal from Judge Rakoff's October 15, 2013 Order.

8

to the creditor." *Mazzeo v. United States (In re Mazzeo)*, 131 F.3d 295, 302 (2d Cir. 1997).

"[T]he term 'debt' is sufficiently broad to cover any possible obligation to make payment." *Id.*

    i.   <u>Defendants Held Valid Claims Against BLMIS.</u>

At the time they received the alleged Transfers, Defendants held claims against BLMIS for rescission or damages arising from BLMIS' fraudulent and otherwise wrongful conduct. Those rights arose at the time of the fraud. *See BFP v. Resolution Trust Corp.*, 511 U.S. 531, 544-45 (1994) ("[T]he Bankruptcy Code will be construed to adopt, rather than to displace, pre-existing state law."); *Breeden*, 1999 Bankr. LEXIS 1843, at *34 ("Because [the debtors] had not yet filed for bankruptcy on January 1, 1996, Defendant's rights against them would have been governed by state law, not the Bankruptcy Code, and the benefit which the Debtors obtained by the release of these rights must be valued accordingly.").

SIPA expressly incorporates the provisions of the Securities Exchange Act of 1934 (the "1934 Act"), of which SIPA is a part. 15 U.S.C. § 78bbb ("Except as otherwise provided in this Act, the provisions of the Securities Exchange Act of 1934 apply as if this Act constituted an amendment to, and was included as a section of, such Act."). Section 28(a)(2) of the 1934 Act preserves state law rights and remedies. *See* 15 U.S.C. § 78bb(a)(2) ("[T]he rights and remedies provided by this title shall be in addition to any and all other rights and remedies that may exist at law or in equity."); *see also Ferris, Baker Watts, Inc. v. Stephenson (In re MJK Clearing, Inc.)*, 371 F.3d 397, 401 (8th Cir. 2004) (noting in SIPA case that "[s]tate law governs the resolution of property rights within a bankruptcy proceeding").

Based upon the allegations contained in the Complaint, it is indisputable that at the time they received the Transfers, Defendants held claims against BLMIS for violation of Section 10(b) of the 1934 Act and Rule 10b-5. *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 85 n.10 (2006) ("[A] broker who accepts payment for securities that he never intends to

deliver, or who sells customer securities with the intent to misappropriate the proceeds, violates §
10(b) and Rule 10b-5."); *SEC v. Zandford*, 535 U.S. 813, 819 (2002) (same); *see also Grippo v.
Perazzo*, 357 F.3d 1218, 1220-24 (11th Cir. 2004) ("A plaintiff does not need to identify a
specific security, or demonstrate that his money was actually invested in securities" to be
afforded the protections of Section 10(b) and Rule 10b-5); *Schnorr v. Schubert*, No. 05-0303,
2005 WL 2019878, at *5 (W.D. Okla. Aug. 18, 2005) ("[U]nfulfilled promises to purchase
securities qualify as actual purchases" for purposes of Rule 10b-5.).

The remedies for Section 10(b) and Rule 10-b-5 violations include, among other things,
rescission and recovery of principal and interest. *See In re UBS Auction Rate Sec. Litig.*, No. 08-
2967, 2009 U.S. Dist. LEXIS 26385, at *13 (S.D.N.Y. Mar. 30, 2009) (noting that in a Section
10b-5 case "plaintiffs [must] choose between rescinding a transaction and being paid restitution
on the one hand and holding the defrauder to the bargain and recovering out-of-pocket losses
resulting from the fraudulent transaction on the other hand"); *see also Rolf v. Blyth, Eastman
Dillon & Co., Inc.,* 637 F.2d 77, 87 (2d Cir. 1980) ("In view of the high inflation rates that beset
this period [during the fraud], a damage award without prejudgment interest . . . would not give
[Plaintiff] full compensation for the losses he suffered at the hands of his fiduciary.")

Section 29(b) of the 1934 Act also entitled Defendants to void their investment contracts
and obtain prejudgment interest. 15 U.S.C. § 78cc(b) (providing that "[e]very contract made in
violation of any provision of this title . . .shall be void"); *see, e.g., Boguslavsky v. Kaplan*, 159
F.3d 715, 722 (2d Cir. N.Y. 1998) ("Section 29(b) provides for the rescission of a contract if the
contract violates any provision of the Act or its regulations."); *Am. Gen. Ins. Co. v. Equitable
Gen. Co.*, 493 F. Supp. 721, 767-68 (E.D. Va. 1980) (holding that plaintiffs were entitled to
rescission and prejudgment interest from the date of the initial fraudulent transfer under Section
29(b)).

10

Defendants also hold state law claims for common law fraud and breach of fiduciary duty, which allow for rescission and restitution or damages, including the right to interest. *See* CPLR § 5001(a) ("Interest shall be recovered upon a sum awarded . . . because of an act or omission depriving or otherwise interfering with title to, or possession or enjoyment of, property"); *USPS v. Phelps Dodge Ref. Corp.*, 950 F. Supp. 504, 518 (E.D.N.Y. 1996) (noting that an award of pre-judgment interest on a rescission claim ensures "that the plaintiff [will] be compensated for being deprived of the use of its money"); *Scalp & Blade v. Advest, Inc.*, 765 N.Y.S.2d 92, 102 (4th Dep't 2003) ("Plaintiff [brokerage customers] are not necessarily limited to recovering the value of their lost capital, and might well recover compensatory damages calculated in part on the basis of general market performance. . . . Indeed, plaintiffs have alleged deliberate and flagrant self-dealing and dishonesty on the part of defendant [brokers]."); *Big Apple Car, Inc. v. City of New York*, 204 A.D.2d 109, 110-11 (1st Dep't 1994) ("[A] defrauded party to a contract may elect to either disaffirm the contract by a prompt rescission or stand on the contract and thereafter maintain an action at law for damages attributable to the fraud."); *DeLong Corp. v. Morrison-Knudsen Co., Inc.*, 20 A.D.2d 104, 107 (1st Dep't 1963) ("It has been the settled rule that interest must be allowed as a matter of right on recoveries for intentional tort with respect to property and property rights."), *aff'd*, 14 N.Y.2d 346 (1964); *see also* 16 N.Y. Jur. 2d § 2 ("Where damages have been sustained, . . . they may be recovered as an incident to an action in equity for a rescission.").

ii.   The Antecedent Debt Constitutes "Value," and the Transfers Cannot Be Avoided.

Transfers that satisfy an antecedent debt are generally not avoidable. *See, e.g.*, *Sharp Int'l Corp. v. State St. Bank & Trust Co. (In re Sharp Int'l Corp.)*, 403 F.3d 43, 54 (2d Cir. 2005) ("[A] conveyance which satisfies an antecedent debt made while the debtor is insolvent is neither fraudulent nor otherwise improper, even if its effect is to prefer one creditor over another.");

11

*Balaber-Strauss v. Lawrence (In re Churchill Mortg. Inv. Corp.)*, 264 B.R. at 308 (holding that

Ponzi schemer's payments to brokers satisfied an antecedent debt thus precluding avoidance

under 548(a)(1)(A)-(B)); *Breeden*, 1999 Bankr. LEXIS 1843, at *25-26 (holding that debtor's

fraud liability "falls within the Code's broad definition of a 'debt,' and as such, the Debtors'

payments to Defendant -- which incidentally served to satisfy Defendant's unasserted,

undiscovered, and possibly unimagined tort rights -- operated as the satisfaction of an antecedent

debt, and hence as an exchange for value under Code § 548(c)").

It does not appear as though the Second Circuit has ruled on the issue of whether federal

securities claims may form the basis of a value defense under Section 548(c). However, in

*Official Committee v. Hancock Park Capital II, L.P. (In re Fitness Holdings)*, 714 F.3d 1141 (9th

Cir. 2013), the Ninth Circuit indicated that "antecedent debt" is determined for purposes of

"value" in Section 548 by reference to the applicable non-bankruptcy law that establishes the

transferee's entitlement. Recognizing that "[t]he Code ... broadly defines 'debt' as liability on

virtually any type of 'right to payment'," and in reliance on the Supreme Court decisions in

*Travelers* and *Butner*, the Ninth Circuit held that where a transfer is alleged to have been made in

repayment of an antecedent debt, "the court must determine whether the purported 'debt'

constituted a right to payment under state law." *Id.* at 1147. *Fitness Holdings* confirms that

"value" and "debt" for purposes of Section 548 are questions determined by state law, and that

the term "state law" is viewed "expansively" to include "claims that have their source in federal

law." *Id.* at 1146 n.6 (citations omitted).

As Defendants held claims against BLMIS, BLMIS' payments to Defendants satisfied

those antecedent debts, and provided "value" pursuant to Section 548(c). *See Daly v. Fusco (In

re All-Type Printing, Inc.)*, 274 B.R. 316, 324 (Bankr. D. Conn. 2002) ("[Debtor's ]payment

[p]romise created a 'debt' owing to [creditor] -- *i.e.* the Retirement Debt. . . . Satisfaction of an

12

antecedent debt is explicitly acknowledged . . . to be 'value' for purposes of fraudulent transfer analysis."); *Brown v. Brandenburg (In re McGee)*, No. 99-5037, 2000 Bankr. LEXIS 1865, at *27 (Bankr. E.D. Ky. Nov. 22, 2000) ("If a defrauded purchaser of a security were required to forfeit to a common fund (the bankruptcy estate) all income received on the security in order to share in the distribution of that fund pro rata with other defrauded purchasers of the security, some of whom are not being sued for contribution to the fund because the amount of income they received on the security is too small to warrant action against them, the measure of damages provisions of the [securities fraud] statute would be frustrated in an inequitable manner."); *Breeden*, 1999 Bankr. LEXIS 1843, at *31-32 ("[If] the contract was found to be unenforceable because of the Debtors' fraud, CPLR §§ 5001 and 5004 would have entitled Defendant to damages . . . . It thus follows that those payments that were in excess of Defendant's original investment amount, but less than the equivalent of nine percent interest, served to reduce the antecedent liability of the Debtors and thus constituted 'value' by the plain language of Code § 548(d)(1)."); *In re Lucar Enter., Inc.*, 49 B.R. 717, 718 (Bankr. S.D. Fla. 1985) (holding that debtor's payment to bank satisfied an antecedent debt, which could not be avoided); *accord Daly v. Deptula (In re Carrozzella & Richardson)*, 286 B.R. 480, 491 (D. Conn. 2002) ("In exchange for the interest [the Ponzi scheme] paid to the Defendants, the Debtor received a dollar-for-dollar forgiveness of a contractual debt. [If] these Defendants had not been paid the interest owed, they would have been creditors of the Debtor's bankruptcy estate, asserting claims for unpaid interest.").

Accordingly, the Trustee's claims must be dismissed in their entirety.

## C. THE TRUSTEE DID NOT ADEQUATELY PLEAD FRAUD

It is clear that when fraud is pleaded, Rule 9(b) requires the plaintiff to plead fraud with particularity. *See Atlanta Shipping Corp., Inc. v. Chem. Bank*, 818 F.2d 240, 251 (2d Cir. 1987).

13

Pursuant to Rule 9(b) "in alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." FED R. CIV. P. 9(b).  It is also well settled that in cases brought by a bankruptcy trustee, "courts take a more liberal view when examining allegations of actual fraud . . . in the context of a fraudulent conveyance, since a trustee is an outsider to the transaction who must plead fraud from second-hand knowledge." *Nisselson v. Softbank AM Corp. (In re MarketXT Holdings Corp.)*, 361 B.R. 369, 395 (Bankr. S.D.N.Y. 2007) (internal quotation marks omitted) (quoting *Picard v. Taylor (In re Park S. Sec., LLC),* 326 B.R. 505, 517-18 (S.D.N.Y. 2005)); *Secs. Investor Prot. Corp. v. Stratton Oakmont, Inc.*, 234 B.R. 293, 310 (Bankr. S.D.N.Y. 1999) (citation omitted). However, this should not relieve the trustee of his obligation to describe the "what, when and who" of the transactions.

In the Complaints, the Trustee has not described the facts and circumstances of the particular transactions at issue sufficiently to establish BLMIS' alleged effort to hinder, delay or defraud creditors. Instead, the Trustee relies solely on the Ponzi scheme presumptions, but the facts as alleged in the Complaints do not support application of the Ponzi scheme presumptions.

The features of a Ponzi scheme are: (1) little or no legitimate underlying business; (2) the promise of exorbitant returns; (3) early scheduled payment of such returns to early (or "top") investors; (4) the need to attract new money in order to pay the exiting top investors; and (5) the scheme's inevitable failure. *See Orlick v. Kozyak (In re Fin. Federated Title & Trust, Inc.)*, 309 F.3d 1325, 1327 n. 2 (11th Cir. 2002). *Daly v. Deptula (In re Carrozzella & Richardson)*, 286 B.R. 480, 482-84 nn. 2 and 7 (D. Conn. 2002), *Balaber-Strauss v. Lawrence*, 264 B.R. 303, 305-06 (S.D.N.Y. 2001).  The Trustee does not allege any of the critical features, except Madoff's arrest.

14

BLMIS operated legitimate trading businesses. The documents referenced in the complaints, the records of the Bankruptcy Court case, including the Trustee's First Interim Report and the Declaration of Joseph Looby (the "Looby Dec."), show that BLMIS was once of the largest traders of securities. BLMIS employed 200 people, 94% of whom conducted trades equal to 10% of the daily volume on the New York Stock Exchange. *See* Randall Smith, *Wall Street Mystery Features a Big Board Rival*, Wall Street Journal, Dec. 16, 1992. The Looby Declaration makes it clear that customer's money was used to purchase securities in BLMIS's legitimate trading operation and that money was deposited "directly and indirectly' into the BLMIS trading account. *See* Looby Dec. paragraphs 9, 17, 18, 19, 26, 27.  Investors used their accounts like investors in any brokerage firm use their accounts. Defendants deposited and withdrew money from their accounts as available and as needed. The key Ponzi scheme feature of early redeeming investors being paid out with later investor's money is not present. When Madoff's scheme was uncovered, BLMIS accounts had securities and cash worth hundreds of millions of dollars. Given these facts, the Trustee cannot rely on the Ponzi scheme presumption, and has therefore failed to adequately fraudulent intent with regard to each of the Transfers.

### D. THE TRUSTEE'S CALCULATION OF DEFENDANTS' "FICTITIOUS PROFITS" CONSTITUTES AN END RUN AROUND THE TWO YEAR REACH-BACK PERIOD SET FORTH IN 11 U.S.C. § 548.

As set forth above, the Second Circuit has held that the Trustee cannot recover transfers that occurred more than two years prior to the commencement of this bankruptcy case. Nonetheless, in calculating Defendants alleged liability, the Trustee's ignores the limit of the two year look back window by netting against Defendants principal investment all of the withdrawals that Defendants made prior to the two year look back window.  In calculating Defendants' alleged liability in this manner, the Trustee is doing exactly what the Second Circuit has told him he cannot do – clawback the transfers made outside of the two year look back period. As a result of

15

the Trustee's improper calculation, the Trustee's claims are overstated and the Trustee's claim

should be dismissed to the extent they seek to recover from Defendants based upon this faulty

calculation.

### E.  THE CLAIMS AGAINST SUBSEQUENT TRANSFEREES LACK SUFFICIENT DETAIL.

The Bankruptcy Court has acknowledged that vague, unspecific allegations of subsequent

transferee liability are insufficient to state a claim. In *Picard v. Madoff (In re Bernard L. Madoff*

*Inv. Sec. LLC),* 458 B.R. 87 (Bankr. S.D.N.Y. 2011), the Court held that subsequent transfer claims

lacking "even a modicum of specificity" must be dismissed. *Id.* at 120. The court stated:

> While the Complaint's failure to indicate specific amounts does not in
> and of itself warrant dismissal of the Subsequent Transfer claims, its
> failure to provide even a modicum of specificity with respect to the
> Subsequent Transfers so as to put the Defendants on notice as to
> which ones the Trustee seeks to recover does so warrant.

*Id.* (internal citations omitted). As in *Madoff,* the Trustee's complaints are completely lacking in

factual detail.  The Trustee merely alleges that "[u]pon information and belief some or all of the

Transfers were subsequently transferred to the Subsequent Tranferee Defendant."  The Trustee does

not identify any dates or amounts of the alleged subsequent transfers.  Moreover, aside from general

identification of Defendants, the Complaints do not link any specific defendant to any specific

alleged initial or subsequent transfer(s) -in other words, the Trustee merely (and improperly) lumps

all of the Defendants together for the purposes of alleging both initial and subsequent transfers, and

speculates as to whether a subsequent transfer even occurred. In cases where fraud is asserted, the

failure to distinguish among defendants is fatal to a plaintiff's complaint. *Securities Investor*

*Protection Corp. v. Stratton Oakmont, Inc.,* 234 B.R. 293, 310 (Bankr. S.D.N.Y. 1999) ("[W]here a

case involves multiple defendants, F.R.C.P. 9(b) requires that the complaint allege facts specifying

each defendant's contribution to the fraud, identifying which defendant is responsible for which act")

(citing *Ellison v. American Image Motor Co., Inc.,* 36 F. Supp. 2d 628 (S.D.N.Y. 1999)).

16

The allegations pertaining to the subsequent transferees are conclusory assertions without "any sort of estimate of the amount of the purported [s]ubsequent [t]ransfer, or when or how such [t]ransfer occurred." *Madoff,* 458 B.R. at 119. Without sufficient details, the Trustee's subsequent transferee claims should be dismissed. *See Gowan v. Amaranth LLC (In re Dreier LLP),* 452 B.R. 451, 464 (Bankr. S.D.N.Y. 2011) ("[T]he complaint [must] contain the necessary vital statistics-- the who, when, and how much of the purported transfers to establish an entity as a subsequent transferee of the funds."). The details missing here are critical because a subsequent transferee will only be liable for the property of the estate that it wrongfully received. *Picard v. Cohmad Sec. Corp,* 454 B.R. 317,340 (Bankr. S.D.N.Y. 2011).

## F.  THE IRA ACCOUNT AT ISSUE IN THE SUSAN HELFMAN ADVERSARY PROCEEDING IS EXEMPT FROM THE TRUSTEE'S CLAIMS.

The account at issue in the Susan Helfman Adversary Proceeding is an IRA account. As such, it is exempt from the claims of judgment creditors such as the Trustee. "[I]t is well-settled that exemption provisions are to be construed liberally." *Morgan v. Gordon*, 450 B.R. 402, 405 (W.D.N.Y. 2011); *In re Keil*, 88 F.2d 7, 8 (2ⁿᵈ Cir. 1937) ("Exemption statutes are to be liberally construed[.]"). The Trustee "bears the burden of proof to establish that the exemption is improper." *In re Glenn*, 430 B.R. 56, 58 (Bankr. N.D.N.Y. 2010).

The IRA account is protected from the Trustee's avoidance claims under N.Y. C.P.L.R. § 5205(c).[2] CPLR § 5205 exempts certain categories of personal property from judgment creditors' claims. "In general they are what the legislature deems to be the necessities of life, which not even a person's judgment creditors should be allowed to reach." David D. Siegel, New York Practice § 490 (5th ed. 2011). Under CPLR § 5205(c), "all property while held in trust for a judgment debtor, where the trust has been created by, or the fund so held in trust has proceeded

---

[2] The District Court had rejected a similar argument in *Greiff. See Greiff*, 476 B.R. at 729 n.13. However, in *Greiff*, the District Court did not address the fact that the exception under CPLR § 5205(c)(5) applies only to fraudulent conveyances under the NYDCL and that the Trustee's claims under the NYDCL are barred by § 546(e). *See id.*

from, a person other than the judgment debtor, is exempt from application to the satisfaction of a money judgment." CPLR § 5205(c)(2) provides, in relevant part, that all "monies, assets or interests established as part of, and all payments from, either any trust or plan, which is qualified as an individual retirement account under [the United States Internal Revenue Code]" – such as the IRA account here – "shall be considered a trust which has been created by or which has proceeded from a person other than the judgment debtor, even though such judgment debtor is in the case of an individual retirement account plan, an individual who is the settlor of and depositor to such account plan[.]"

The exemption is subject to the exception that additions to a trust are not exempt if "deemed to be fraudulent conveyances under article ten of the [New York Debtor Creditor Law]." CPLR § 5205(c)(5). However, the exception is not applicable here, because the Trustee's claims under the New York Debtor Creditor Law must be dismissed pursuant to 11 U.S.C. § 546(e). The exception is also inapplicable because it relates specifically to additions to a trust. *See* CPLR § 5205(c)(5). The transactions at issue in the Susan Helfman Adversary Proceeding were withdrawals of amounts from her IRA account. The Trustee does not seek to avoid any additions of property to Ms. Helfman's IRA account.

It is clear from a review of the cases which apply this provision that the exception is intended to allow a judgment creditor to reach assets held in an otherwise protected account when non-exempt assets have been deposited into the account by the account for the purpose of hindering, delaying or defrauding creditors. *See e.g. Bayerische Hypo-und Vereinsbank AG v DeGiorgio*, 902 N.Y.S.2d 85, 86 (2010)("Defendant's rollover of an exempt employee retirement account maintained in his name with plaintiffs to a new IRA account maintained in his name with a nonparty custodian, although made within 90 days of the interposition of plaintiffs' conversion claims, did not constitute a nonexempt "addition" to the new IRA account within the meaning of

18

C.P.L.R. 5205(c)(5)…. Here, there being no evidence that any additions were made to defendant's employee retirement from any sources whatsoever within 90 days of the interposition of plaintiffs' claims, the assets that defendant rolled over into his new IRA account could not have included monies from nonexempt sources, e.g., salary, deposited into the employee retirement account within such 90-day period"); *Matter of Gard Entertainment Inc. v. Block*, 960 N.Y.S.2d 50 (2012)(transfer of a condominium to a trust after a creditor demand subject to exclusion under section 5205(c)(5) as fraudulent conveyance under New York Debtor Creditor law) *Baker v. David A. Dorfman, P.L.L.C.*, 2000 U.S. Dist. LEXIS 10142,*25-26 (S.D.N.Y. 2000) ("C.P.L.R. 5205 (c)(5) exempts IRAs from application to the satisfaction of a judgment except where additions to such accounts are "'made after the date that is ninety days before the interposition of the claim on which such judgment was entered.' Plaintiff has restrained Dorfman's IRA in the amount of $ 4,107.94. Plaintiff has shown that all deposits to the IRA were made after the complaint in the underlying case was filed.")

Accordingly, the Trustee's claims to avoid the withdrawals from Susan Helfman's IRA account in the Susan Helfman Adversary Proceeding must be dismissed.

## G. THE TRUSTEE HAS NOT ADEQUATELY PLEADED FACTS SUFFICIENT TO ESTABLISH THAT HE HAS SATISFIED 15 U.S.C. § 78fff-2(C)(3).

Under SIPA, the Trustee can only pursue fraudulent transfer actions if the customer property in his possession is insufficient to pay customer and SIPC claims. *See* 15 U.S.C. §§ 78fff-2(C)(3) and 78fff-2(C)(1 )(A)-(D). In this regard, the Trustee alleges only that "absent this or other recovery actions, the Trustee will be unable to satisfy the claims described in paragraphs (A) through (D) of§ 78fff-2(C)(l)." Sherman Complaint, ¶ 18.  This conclusory allegation is insufficient to satisfy the Trustee's burden to plead his § 548(a)(1)(A) claim with particularity as

required by Rule 9(b ). *See Tese-Milner v. Edidin Assoc.,* 490 B.R. 84, 92 (Bankr. S.D.N.Y.

2013) (holding that Rule 9(b) applies to§ 548(a)(l)(A) claims).

## H.  JOINDER IN THE OTHER MOTIONS TO DISMISS FILED IN SIMILAR CASES

To the extent that defendants to other actions brought by the Trustee are similarly situated to

Defendants on whose behalf this Motion is filed, Defendants join in any motions to dismiss filed

by those defendants to the extent that such motions include applicable grounds for dismissal not

addressed herein.

WHEREFORE, Defendants respectfully request that this Court enter an order granting their

Motions thereby dismissing the Trustee's Complaints in their entirety and granting such other

relief as the Court deems just and proper.

Dated:  New York, NY
         January 30, 2015

                                        **KLESTADT WINTERS JURELLER
                                        SOUTHARD & STEVENS, LLP**

                                        By:  */s/ Brendan M. Scott*
                                        570 Seventh Avenue, 17th Floor
                                        New York, NY 10018-6314
                                        Telephone:  (212) 972-3000
                                        Facsimile:  (212) 972-2245
                                        Tracy L. Klestadt
                                        E-Mail:  tklestadt@klestadt.com
                                        Brendan M. Scott
                                        E-Mail:  bscott@klestadt.com

                                        *Attorneys for Defendants*

## SCHEDULE A

| Adversary Proceeding | Defendants |
|---|---|
| 1) Picard v. NTC & Co., LLP, as former custodian of an Individual Retirement Account for the benefit of Susan Helfman, et al., **Adv. Proc. No.: 10-04509-smb** | 1) Susan Helfman |
| 2) Picard v. Richard J. Helfman Life Insurance Trust dtd 12/30/89, et al., **Adv. Proc. No.: 10-04636-smb** | 1) Richard J. Helfman Life Insurance Trust Dtd 12/30/89;<br><br>2) Susan Helfman, individually and in her capacity as Trustee of the Richard J. Helfman Life Insurance Trust dtd 12/30/89; and<br><br>3) Stephen Helfman, individually and in his capacity as Trustee of the Richard J. Helfman Life Insurance Trust dtd 12/30/89 |
| 3) Picard v. Adeline Sherman Revocable Trust, as Amended, et al., **Adv. Proc. No.: 10-04816-smb** | 1) Adeline Sherman Revocable Trust, as Amended;<br><br>2) Stephen Helfman, in his capacity as trustee of the Adeline Sherman Revocable Trust, as Amended; and<br><br>3) Susan Helfman, in her capacity as trustee of the Adeline Sherman Revocable Trust, as Amended |