Baker & Hostetler LLP                         Hearing Date: February 25, 2015
45 Rockefeller Plaza                          Hearing Time:  10:00 AM (EST)
New York, New York 10111                      Objection Deadline: January 23, 2015
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Email: dsheehan@bakerlaw.com
Jorian Rose
Email: jrose@bakerlaw.com
Nicholas J. Cremona
Email: ncremona@bakerlaw.com
Seanna R. Brown
Email:sbrown@bakerlaw.com

*Attorneys for Irving H. Picard, Trustee*
*for the Substantively Consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities LLC*
*and the Estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (SMB) |
| Plaintiff-Applicant, | SIPA Liquidation |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |

**TRUSTEE'S REPLY BRIEF IN SUPPORT OF TRUSTEE'S MOTION AND
MEMORANDUM TO AFFIRM HIS DETERMINATIONS DENYING CLAIMS OF
CLAIMANTS HOLDING INTERESTS IN
S & P OR P & S ASSOCIATES, GENERAL PARTNERSHIPS**

## TABLE OF CONTENTS

**Page**

ARGUMENT ................................................................................................................... 1

    A.    Only The Partnerships, Not Objecting Claimants, Owned The Money
Invested With BLMIS In The S&P And P&S Accounts, And Therefore
Only The Partnerships "Entrusted Cash" To BLMIS Within The Meaning
Of SIPA ................................................................................................................ 1

    B.    Objecting Claimants Cannot Demonstrate Meaningful Control Over
Investments ........................................................................................................ 5

    C.    The Legislative History And Broker / Dealer / Bank Arguments Are  No
Different Than Those That Have Been Raised And Rejected In  Every
Prior Customer Decision In This Proceeding ......................................................... 7

    D.    Objecting Claimants Offer Up No New Evidence And Have Failed  To
Carry The Burden of Proving They Are Customers ............................................... 8

CONCLUSION ................................................................................................................ 8

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Aozora Bank Ltd. v. Sec. Investor Prot. Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*,
  480 B.R. 117 (S.D.N.Y. 2012)................................................................................7

*In re Bernard L. Madoff Inv. Sec. LLC*,
  654 F.3d 229 (2d Cir. 2011), *reh'g and reh'g en banc denied* (2d Cir. Nov. 8, 2011) ..........................................................................................................2

*Dreyfuss v. Dreyfuss*,
  701 So. 2d. 437 (Fla. Dist. Ct. App. 1997) ..............................................................4

*Kruse v. Sec. Investor Prot. Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*,
  708 F.3d 422 (2d Cir. 2013)..................................................................2, 5, 6, 7

*Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff)*,
  515 B.R. 161 (Bankr. S.D.N.Y. 2014) ............................................................6, 7, 8

*Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff Inv. Sec. LLC)*,
  454 B.R. 285 (Bankr. S.D.N.Y. 2011) ................................................................7, 8

*Sec. Investor Prot. Corp. v. Jacqueline Green Rollover Account*,
  Nos. 12 Civ. 1039 (DLC), 12 Civ. 1139 (DLC), 2012 WL 3042986 (S.D.N.Y. July 25, 2012)................................................................................................6, 7

*Sec. Investor Prot. Corp. v. Morgan, Kennedy & Co.*,
  533 F.2d 1314 (2d Cir. 1976)..............................................................................6

*Williams v. Obstfeld*,
  314 F.3d 1270 (11th Cir. 2002) ............................................................................4

## Statutes

15 U.S.C. § 78aaa *et seq.* ..............................................................................1

1995 Fla. Laws 2190, § 25.................................................................................3

Fla. Stat. § 620.8501 ........................................................................................2, 5

Fla. Stat. § 620.9901 ........................................................................................3

## Rules

Fed R. Civ. P. 33..............................................................................................8

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

Fed R. Civ. P. 34 ................................................................................................................8

**Other Authorities**

8 Fla. Juris. Forms  Legal & Bus. (Thomson Reuters 2014) ...........................................4

Charles Alan Wright, Federal Practice and Procedures § 2264 (3d ed. 2010) ...............8

John W. Larson, *Florida's New Partnership Law: The Revised Uniform Partnership Act and Limited Liability Partnerships*, 23 Fla. St. U. Law Rev. 201 (1995) ......................................................................................................3, 4

Prefatory Note, 6 U.L.A. 6...............................................................................................4

Official Comments § 201, 6 U.L.A. 91............................................................................4

Official Comments § 203, 6 U.L.A. 96............................................................................4

Irving H. Picard, as trustee ("Trustee") for the substantively consolidated liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15 U.S.C. § 78aaa *et seq.* ("SIPA"),[1] and the estate of Bernard L. Madoff ("Madoff") (collectively, "Debtor"), respectfully submits this reply brief in support of the combined motion and memorandum of law (the "Motion", ECF No. 8734) to affirm the denial of the claims filed by claimants (the "Objecting Claimants") who objected to the Trustee's determinations denying their claims and who had direct or indirect partnership interests in one of two BLMIS account-holding Florida general partnerships (collectively, the "Partnerships"), S & P Associates, General Partnership ("S&P"), and P & S Associates, General Partnership ("P&S") and which claimants are specifically identified in Exhibit 2 to the Declaration of Vineet Sehgal ("Sehgal Decl.", ECF No. 8736) filed therewith.

## ARGUMENT

### A.    Only The Partnerships, Not Objecting Claimants, Owned The Money Invested With BLMIS In The S&P And P&S Accounts, And Therefore Only The Partnerships "Entrusted Cash" To BLMIS Within The Meaning Of SIPA

The Objecting Claimants ignore black letter law and the considerable precedent created in this SIPA proceeding by continuing to argue that they are customers of BLMIS primarily because (1) their respective partnership agreements (the "Partnership Agreements")[2] gave them the (conditional) ability to withdraw funds from the partnership or to vote on limited issues relating to how the partnership as a whole would make investments and (2) they claim that they intended their money to go to BLMIS and that BLMIS knew that people were investing in the partnership for that purpose. Even if the latter argument is assumed to be true despite the fact

---

[1] *See* 15 U.S.C.A. § 78aaa et seq. (West 2009).  For convenience, subsequent references to sections of the Securities Investor Protection Act shall be denoted simply as "SIPA § __."

[2] Sehgal Decl. Exs. 12 & 7; Cheema Decl. (ECF No. 8737) Exs. 9 & 10. Capitalized terms used in this Reply and not otherwise defined shall have the same meaning as in the Motion.

that no valid evidence was submitted in support, neither of these arguments address the main issue: the Objecting Claimants were not customers of BLMIS because they neither had accounts with BLMIS, nor did they own the money that was invested into BLMIS by S&P and P&S. Those funds were owned by S&P and P&S, as explicitly provided by both Florida statutory law and by the S&P and P&S Partnership Agreements. Under those facts, the Objecting Claimants cannot prevail because it was the Partnerships, not the Objecting Claimants, who owned the money that was entrusted to BLMIS.

In denying similar claims by investors having interests in a BLMIS feeder fund, the Second Circuit held that "the critical aspect of the 'customer' definition" was "the entrustment of cash or securities to the broker-dealer for the purposes of trading securities." *Kruse v. Sec. Investor Prot. Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*, 708 F.3d 422, 426 (2d Cir. 2013) (citing *In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d 229, 236 (2d Cir. 2011), *reh'g and reh'g en banc denied* (2d Cir. Nov. 8, 2011)). Thus, where money was owned by the accountholder fund, the investors in that fund could not show that they—rather than the accountholder fund— had entrusted cash or securities to BLMIS. *Kruse*, 708 F.3d at 427. This was true regardless of the intent of the investors. *Id.*

The Objecting Claimants try to get around this threshold requirement by claiming a property interest in the money deposited by S&P and P&S with BLMIS despite explicit contrary Florida statutory law, and explicit contrary Partnership Agreement provisions. They cite to two cases for the proposition that the plain language of a statute controls. *See* "Memorandum of Law in Opposition To the Trustee's Motion to Affirm His Determinations Denying Claims of Claimants Holding Interests In S&P or P&S Associates, General Partnerships" at 13, ECF No. 9185 (hereinafter, "Opposition"). Yet they fail to even mention Fla. Stat. § 620.8501, titled

"Partner not coowner of partnership property," which provides, "Partnership property is owned by the partnership as an entity, not by the partners as coowners. A partner has no interest that can be transferred . . . in specific partnership property." They also fail to discuss the provision in the Partnership Agreements that similarly states: "All property acquired by the Partnership shall be owned by and in the name of the Partnership . . . . The Partners shall execute any documents that may be necessary to reflect the Partnership's ownership of its assets . . . ." Partnership Agreements, § 6.01. Both of these exceptionally plain provisions (quoted in the Motion and ignored in the Opposition) mean that the Objecting Claimants did not own the money invested with BLMIS by P&S and S&P.

The Objecting Claimants argue that older Florida law was previously different as to ownership, allowing a form of joint ownership referred to as ownership by tenancy in partnership. Even that prior form of ownership for general partnerships defined the tenancy in partnership in a manner that denied individual partners the usual incidents of ownership. *See John W. Larson, Florida's New Partnership Law: The Revised Uniform Partnership Act and Limited Liability Partnerships*, 23 Fla. St. U. Law Rev. 201, 211 n.51 (1995).

However, the law providing for that prior form of ownership (the Uniform Partnership Act, or UPA) was expressly repealed. *See* FLA STAT. § 620.9901 (2010); 1995 Fla. Laws 2190, § 25.[3] Moreover, a major purpose of the change in the law was to eliminate the provisions cited

---

[3] The phase-in of the new law (the Florida Revised Uniform Partnership Law, or "FRUPA") is described in the Larson law review article as follows:

> Until January 1, 1998, FRUPA will govern only those partnerships formed after January 1, 1996, the Act's effective date, unless the partnership elects to be governed by the Revised Act. Partnerships formed under present law before January 1, 1996, will continue to be governed by the Florida UPA until January 1, 1998. At any time after January 1, 1996, an existing partnership may, in the manner provided in its partnership agreement or under the UPA procedure for amending the partnership agreement, voluntarily elect to be governed by FRUPA. *After January 1, 1998, FRUPA governs all Florida partnerships.*

by Objecting Claimants, and to ensure that general partnerships be treated as entities that have title to the partnership assets. *See* Larson, *supra* p 3, at 207, 210-211; *see also* Unif. Partnership Act Prefatory Note, 6 U.L.A. 6 (2001) ("The Revised Act enhances the entity treatment of partnerships to achieve simplicity for state law purposes, particularly in matters concerning title to partnership property"); Unif. Partnership Act Official Comments § 201, 6 U.L.A. 91 (2001); Unif. Partnership Act Official Comments § 203, 6 U.L.A. 96 (2001). It is thus indisputable that under the law as it has existed in Florida for more than 17 years, S&P and P&S each owned the money contributed to it by its partners and invested by it in BLMIS.

In a misplaced effort to bolster their property arguments, the Objecting Claimants quote from a form ostensibly at § 30:175 (but actually found at § 30:176) of 8 Fla. Juris. Forms Legal & Bus. (Thomson Reuters 2014). *See* Opposition at 8. This form book offers an optional provision for inclusion in partnership agreements (whether general or limited is not specified), and the quotation cited at page 8 of the Opposition is taken from that form provision. If adopted by a partnership, the provision would require the partnership to assign, to a withdrawing partner, a proportional interest in any real property previously acquired by the partnership. Neither S&P nor P&S had such a provision in their Partnership Agreements, and real property is not at issue here. Moreover, the form does not indicate that partners, rather than the partnership, own real property; in fact, the logical conclusion is that the form provision is intended to create, by

---

Larson, *supra* p. 3, at 247 (emphasis added).

The case of *Dreyfuss v. Dreyfuss*, 701 So. 2d. 437, 439 (Fla. Dist. Ct. App. 1997), cited in the Opposition, predates the point when FRUPA became effective as to preexisting partnerships, and held that a 1982 conversation did not create a partnership. In addition, the language quoted about agreeing to share in the assets and liabilities of the business is *dicta* (as to the assets portion) and does not purport to set out how title in the assets themselves would be held. *Id.* Similarly, *Williams v. Obstfeld,* 314 F.3d 1270, 1275 (11th Cir. 2002), simply determined that for purposes of the Racketeer Influenced and Corrupt Organizations Act (RICO), a defendant lacked sufficient shared control of an enterprise, or exposure to its losses, to be treated as being in a joint venture as to that enterprise in 1993 (before FRUPA became effective).

assignment, an individual ownership interest that would not otherwise exist. That logical conclusion becomes complete legal certainty when Florida statutory provisions such as Fla. Stat. § 620.8501 are taken into account.

In short, the Partnerships owned the money the Objecting Claimants had contributed to S&P and P&S. Consequently, the Objecting Claimants, like the Feeder Fund investors in *Kruse*, are not customers within the meaning of SIPC.

**B.    Objecting Claimants Cannot Demonstrate Meaningful Control Over Investments**

The Objecting Claimants claim that "The Partnership Agreements explicitly stated that the Partners retained complete control over the decisions regarding the investment of their own assets." Objection at p. 2. That statement is false, and would be immaterial even if true. The only Partnership Agreement section cited for this proposition—section 2.02, quoted by the Trustee on page 11 of the Motion and in the Opposition at page 9—simply gives the Partnership the right to allow or terminate any particular broker or brokers "as selected by fifty-one (51) percent in interest, not in numbers, of the Partners," and to permit an allowed broker, or brokers, to have discretionary investment powers "with the investment funds of the Partnership." Partnership Agreements, § 2.02. In other words, the "control" trumpeted by Objecting Claimants is very limited, subject to majority rule, and affects only Partnership funds. It is no different than the power that virtually any part owner of an enterprise has, to exercise control by persuading a sufficient number of his or her fellow owners to vote with him or her on a matter of enterprise concern.

The only other "control" cited by the Objection was the ability of partners to cease being part of the partnership—an ability that itself was circumscribed by the Partnership Agreements and is also a normal part of enterprise ownership. *See* Partnership Agreements §§ 9.03 (requiring 30 days' notice of withdrawal) and 11.01 (setting out how payment for a withdrawing

interest is to be calculated and requiring that the calculation allow adequate provision for any existing contingent liabilities of the Partnership.)  A withdrawing partner is not entitled to any particular partnership assets but instead receives an amount of money calculated as provided by the Partnership Agreements, *id.* at § 11.02; the same is true if the partnership dissolves, *id.* at § 12.02.

The Second Circuit held in *Kruse* that "even if appellants could demonstrate that they exercised some level of control over the Feeder Funds' investments, that fact, standing alone, would be insufficient to confer 'customer' status on appellants given that, individually, they 'made no purchases, transacted no business, and had no dealings whatsoever' with BLMIS." *Kruse*, 708 F.3d at 427 (citing *Sec. Investor Prot. Corp. v. Morgan, Kennedy & Co.*, 533 F.2d 1314, 1318 (2d Cir. 1976)).  These factors are equally true of the Objecting Claimants.

Similarly, in two other decisions in this proceeding, investors in self-directed pension plans who allegedly had much greater ability to direct funds to BLMIS investments and who allegedly had far greater contacts with BLMIS, were held not to be customers because the money was still actually owned by the pension plans and not them, and the types of contacts asserted did not amount to a customer relationship.  *See Sec. Investor Prot. Corp. v. Jacqueline Green Rollover Account*, Nos. 12 Civ. 1039 (DLC), 12 Civ. 1139 (DLC), 2012 WL 3042986 **5, 13 (S.D.N.Y. July 25, 2012) (hereinafter, "*ERISA Decision*"); *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff)*, 515 B.R. 161, 168-170 (Bankr. S.D.N.Y. 2014) (hereinafter, "*ERISA Claimant Decision*").  In the latter case, this Court held that the exercise of "some control" over the investments "is not sufficient to meet the narrow definition of customer under SIPA" and business dealings "as an agent for another customer" also will not suffice, *ERISA Claimant Decision* at 168.  Moreover, to qualify as a person who has deposited

6

cash with the debtor within the meaning of the SIPA customer definition, the party must have deposited her assets through an account in her own name "rather than indirectly through a fund that then entrusted the fund's assets through an account maintained in the fund's name." *Id.*

Accordingly, the fact that S&P or P&S partners could collectively vote to bestow or remove discretionary investment authority, or individually choose to withdraw as partners, cannot convert them into "customers" under SIPA.

**C.    The Legislative History And Broker / Dealer / Bank Arguments Are No Different Than Those That Have Been Raised And Rejected In Every Prior Customer Decision In This Proceeding**

The Objecting Claimants, undaunted by prior case law, continue to trot out arguments about equity, legislative history, the intent of Congress, and the provisions of SIPA that provide for customer status for certain customers of banks, brokers or dealers which themselves have accounts at the broker that is the subject of the SIPA proceeding. But each of these arguments has been raised at length and rejected in every prior Customer decision in this SIPA proceeding, and the Objecting Claimants offer nothing new or different here. The arguments are foreclosed by binding precedent and law of the case. *See, e.g.*, *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff Inv. Sec. LLC),* 454 B.R. 285, 290, 294, 296-99, 302-306, (Bankr. S.D.N.Y. 2011), *aff'd sub nom. Aozora Bank Ltd. v. Sec. Investor Prot. Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*, 480 B.R. 117, 121-126, (S.D.N.Y. 2012), *aff'd sub nom. Kruse v. Sec. Investor Prot. Corp. (In re Bernard L. Madoff Inv. Sec. LLC),* 708 F.3d 422, 426 (2d Cir. 2013); Bench Memorandum Granting Trustee's Second Motion to Affirm Trustee's Determinations Denying Claims of Claimants Who Invested in Certain Feeder Funds and Did Not Have BLMIS Accounts in Their Names at 3 (ECF No. 5450) ("*Second Feeder Fund Decision*"); *ERISA Decision* at \*\*13-15; *ERISA Claimant Decision* at 168 n.5.

**D.**      **Objecting Claimants Offer Up No New Evidence And Have Failed
To Carry The Burden of Proving They Are Customers**

he Objecting Claimants point to no evidence supporting their assertion of "customer" status. As noted by this Court in the *ERISA Claimant Decision*, "[t]he claimant has the burden to establish his status as a 'customer'" and "not every victim of a broker-dealer's fraud is a 'customer.'" *Id*. at 166.   Similarly, this Court found: "the burden is on the claimant to establish he is a 'customer' entitled to SIPA protection, and such a showing is not easily met." *Second Feeder Fund Decision* at 4 (quoting *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 454 B.R. at 294).   Here, the only "evidence" offered up by Objecting Claimants is: (1) their own responses to the Requests for Admission, which are unsworn statements created by counsel and not admissible in favor of the responding party, *see* Charles Alan Wright, Federal Practice and Procedures § 2264 (3d ed. 2010); Fed R. Civ. P. 33; and (2) the written responses to document production requests (as opposed to actual documents on which they seek to rely) which have no evidentiary value at all, being nothing more than unsworn counsel-created assertions, *see* Fed R. Civ. P. 34.   Both are also argumentative rather than factually illuminating. Beyond that, the Objecting Claimants have pointed to the Partnership Agreements, which avail them nothing at all, and to a completely irrelevant SIPC news release about how SIPC is assessing brokers for SIPC fees.   Accordingly, the Objecting Claimants have failed to carry their burden of proof that they are entitled to be treated as "customers" under SIPA.

## CONCLUSION

For all of the reasons set forth in the Motion and in this Reply, the Trustee respectfully requests that the Court issue an order granting the Motion, denying the claims of the Claimants, overruling their objections, expunging the claims, and grant such other and further relief as the Court deems just and proper.

Dated:  New York, New York
February 17, 2015

Respectfully submitted,

*/s/ David J. Sheehan*
David J. Sheehan
Email: dsheehan@bakerlaw.com
Jorian L. Rose
Email: jrose@bakerlaw.com
Nicholas J. Cremona
Email: ncremona@bakerlaw.com
Seanna R. Brown
Email: sbrown@bakerlaw.com
**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, New York  10111
Tel: (212) 589-4200
Fax: (212) 589-4201

Brian A. Bash
Email: bbash@bakerlaw.com
Wendy J. Gibson
Email: wgibson@bakerlaw.com
**Baker & Hostetler LLP**
1900 E. 9th St Suite 3200
Cleveland, Ohio  44114
Tel: (216) 621-0200
Fax: (216) 696-0740

*Attorneys for Irving H. Picard, Trustee
for the Substantively Consolidated SIPA
Liquidation of Bernard L. Madoff Investment
Securities LLC and the Estate of Bernard L.
Madoff*