Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Email: dsheehan@bakerlaw.com
Jorian L. Rose
Email: jrose@bakerlaw.com
Nicholas J. Cremona
Email: ncremona@bakerlaw.com
Seanna R. Brown
Email: sbrown@bakerlaw.com
Amy E. Vanderwal
Email: avanderwal@bakerlaw.com
*Attorneys for Irving H. Picard, Trustee*
*for the Substantively Consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities LLC*
*and Bernard L. Madoff*

Hearing Date: April 29, 2015
Hearing Time:  10:00 AM (EST)
Objection Deadline:  April 1, 2015

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (SMB) |
| Plaintiff-Applicant, | SIPA Liquidation |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |

**NOTICE OF TRUSTEE'S MOTION AND MEMORANDUM TO AFFIRM HIS
DETERMINATIONS DENYING CLAIMS OF CLAIMANTS HOLDING INTERESTS IN
PEERSTATE EQUITY FUND, L.P.**

**PLEASE TAKE NOTICE** that Irving H. Picard, as trustee ("Trustee") for the substantively consolidated liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15 U.S.C. § 78aaa *et seq.* *("SIPA")*, and for the estate of Bernard L. Madoff ("Madoff") (collectively, "Debtor"), by and through his undersigned counsel, respectfully moves pursuant to Trustee's Motion And Memorandum To Affirm His Determinations Denying Claims Of Claimants Holding Interests In Peerstate Equity Fund, L.P. (the "Motion"), the declarations of Stephanie Ackerman and Vineet Sehgal, and the exhibits attached thereto, for an order affirming the Trustee's denial of the claims of Objecting Claimants who asserted claims based upon their investments in Peerstate Equity Fund, L.P. ("Peerstate"), expunging such claims, and overruling certain objections to the Trustee's determinations of claims related to those accounts, on the grounds that the Objecting Claimants are not "customers" as such term is used at SIPA § 78*lll*(2).   No other basis for claim denial other than the "customer" issue will be dealt with in the current Motion.

**PLEASE TAKE FURTHER NOTICE** that written objections to the Motion and any opposing affidavits must be filed with the Clerk of the United States Bankruptcy Court, the Alexander Hamilton Customs House, One Bowling Green, New York, New York 10004 by no later than **4:00 p.m., on April 1, 2015** (with a courtesy copy delivered to the Chambers of the Honorable Stuart M. Bernstein) and must be served upon (a) Baker & Hostetler, LLP, counsel for the Trustee, 45 Rockefeller Plaza, New York, New York 10111, Attn: David J. Sheehan, Esq. and (b) the Securities Investor Protection Corporation, 805 Fifteenth Street, NW, Suite 800, Washington, DC 20005, Attn: Kevin H. Bell, Esq. and Christopher H. LaRosa, Esq. so as to be received on or before April 1, 2015.   Any objection must specifically state the interest that the objecting party has in these proceedings and the basis of the objection to the Motion.

**PLEASE TAKE FURTHER NOTICE** that the Court shall hold a hearing on this Motion on April 29, 2015, at 10:00 a.m. before the Honorable Stuart M. Bernstein, United States Bankruptcy Judge, at the United States Bankruptcy Court, the Alexander Hamilton Customs House, One Bowling Green, New York, New York 10004 or such other time as the Court determines.

**PLEASE TAKE FURTHER NOTICE** that Notice of the Motion will be provided by U.S. Mail, postage prepaid or email to (i) claimants listed in Exhibit 2 annexed to the supporting Declaration of Vineet Sehgal; (ii) all parties included in the Master Service List as defined in the Order Establishing Notice Procedures (ECF No. 4560); (iii) all parties that have filed a notice of appearance in this case; (iv) the SEC; (v) the IRS; (vi) the United States Attorney for the Southern District of New York; and (vii) SIPC, pursuant to the Order Establishing Notice Procedures (ECF No. 4560). The Trustee submits that no other or further notice is required. In addition, the Trustee's pleadings filed in accordance with the schedule outlined above will be posted to the Trustee's website www.madofftrustee.com and are accessible, without charge, from that site. Exhibits 4 - 12 to the supporting Declaration of Vineet Sehgal, and Exhibits 1 through 29 to the supporting Declaration of Stephanie Ackerman, will be available for review upon written or telephonic request to Baker & Hostetler LLP, 45 Rockefeller Plaza, New York, NY 10111, Attn: Stephanie Ackerman., Tel: (212) 847-5851, Email: sackerman@bakerlaw.com.

Dated: New York, New York
March 11, 2015

/s/ David J. Sheehan

David J. Sheehan
Email: dsheehan@bakerlaw.com
Jorian L. Rose
jrose@bakerlaw.com
Nicholas J. Cremona
Email: ncremona@bakerlaw.com
Seanna R. Brown
Email: sbrown@bakerlaw.com
Amy E. Vanderwal
Email: avanderwal@bakerlaw.com
**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, New York  10111
Tel: (212) 589-4200
Fax: (212) 589-4201

Brian A. Bash
Email: bbash@bakerlaw.com
Wendy J. Gibson
Email: wgibson@bakerlaw.com
**Baker & Hostetler LLP**
1900 E. 9th St Suite 3200
Cleveland, Ohio  44114
Tel: (216) 621-0200
Fax: (216) 696-0740

*Attorneys for Irving H. Picard, Trustee*
*for the Substantively Consolidated SIPA*
*Liquidation of Bernard L. Madoff Investment*
*Securities LLC and Bernard L. Madoff*

Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Email: dsheehan@bakerlaw.com
Jorian L. Rose
Email: jrose@bakerlaw.com
Nicholas J. Cremona
Email: ncremona@bakerlaw.com
Seanna R. Brown
Email:sbrown@bakerlaw.com
Amy E. Vanderwal
Email: avanderwal@bakerlaw.com

*Attorneys for Irving H. Picard, Trustee
for the Substantively Consolidated SIPA Liquidation
of Bernard L. Madoff Investment Securities LLC
and the Estate of Bernard L. Madoff*

Hearing Date:  April 29, 2015
Hearing Time:  10:00 AM (EST)
Objection Deadline:   April 1, 2015

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (SMB) |
| Plaintiff-Applicant, | SIPA Liquidation |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |

**TRUSTEE'S MOTION AND MEMORANDUM**
**TO AFFIRM HIS DETERMINATIONS**
**DENYING CLAIMS OF CLAIMANTS HOLDING**
**<u>INTERESTS IN PEERSTATE EQUITY FUND, L.P.</u>**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................. 1

RELIEF REQUESTED............................................................................................... 2

BACKGROUND ........................................................................................................ 2

    A.    The Commencement of The SIPA Proceeding ....................................... 2

    B.    Peerstate History and Structure........................................................... 3

    C.    The BLMIS Account Records ............................................................ 7

    D.    The Claims .......................................................................................... 8

    E.    The Customer Decisions ..................................................................... 9

ARGUMENT ............................................................................................................ 15

CONCLUSION.......................................................................................................... 22

# TABLE OF AUTHORITIES

**Page(s)**

### Cases

*In re Adler, Coleman Clearing Corp.*,
216 B.R. 719 (Bankr. S.D.N.Y. 1998) ....................................................................16

*Aozora Bank Ltd. v. Sec. Investor Prot. Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*,
480 B.R. 117 (S.D.N.Y. 2012) .......................................................................10, 11

*Appleton v. First Nat'l Bank of Ohio*,
62 F.3d 791 (6th Cir. 1995) ...................................................................................16

*Arford v. Miller*,
210 F.3d 420 (2d Cir. 2000) ...................................................................................21

*In re Beacon Assocs. Litig.*,
745 F. Supp. 2d 386 (S.D.N.Y. 2010) ......................................................................2

*In re Bernard L. Madoff Inv. Sec. LLC*,
654 F.3d 229, 231 (2d Cir. 2011), *reh'g and reh'g en banc denied,* (2d Cir. Nov. 08, 2011) ................................................................................................. *passim*

*In re Klein, Maus & Shire, Inc.*,
301 B.R. 408 (Bankr. S.D.N.Y. 2003) ...................................................................22

*Kruse v. Sec. Investor Prot. Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*,
708 F.3d 422 (2d Cir. 2013) ...................................................................... *passim*

*In re Lehman Bros. Inc.*,
462 B.R. 53 (Bankr. S.D.N.Y. 2011) .....................................................................16

*In re Marriott Hotel Props. II Ltd. P'ship*,
No. CIV–A–14961, 2000 WL 128875 (Del.Ch. Jan. 24, 2000) .............................11

*Mishkin v. Siclari (In re Adler, Coleman Clearing Corp.)*,
277 B.R. 520 (Bankr. S.D.N.Y. 2002) ...................................................................22

*Ryan v. Picard*,
133 S. Ct. 24 (2012) ................................................................................................2

*Sec. Investor Prot. Corp. v. 2427 Parent Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*
Nos. 14-97-bk(L), 14-509-bk(con), 14-510-bk(con), 14-511-bk(con), 14-512-bk(con), 2015 WL 727965 (2d Cir. Feb. 20, 2015) ..............................................19

# TABLE OF AUTHORITIES

*(continued)*

**Page(s)**

*Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff)*,
    515 B.R. 161 (Bankr. S.D.N.Y. 2014) ............................................................................ *passim*

*Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff Inv. Sec. LLC)*,
    454 B.R. 285 (Bankr. S.D.N.Y. 2011) ........................................................................10, 13, 22

*Sec. Investor Prot. Corp. v. Jacqueline Green Rollover Account*,
    Nos. 12 Civ. 1039(DLC), 12 Civ. 1139(DLC), 2012 WL 3042986 (S.D.N.Y. July 25, 2012) ....................................................................................................................12, 13

*Sec. Investor Prot. Corp. v. Morgan, Kennedy & Co.*,
    533 F.2d 1314 (2d Cir. 1976), *cert. denied*, 426 U.S. 936 (1976) .....................................12, 17

*Sec. Investor Prot. Corp. v. Stratton Oakmont, Inc.*,
    229 B.R. 273, 277 (Bankr. S.D.N.Y. 1999) ..........................................................................21

*Sec. Investor Prot. Corp. v. Wise (In re Stalvey & Assocs., Inc.)*,
    750 F.2d 464 (5th Cir. 1985) ................................................................................................21

*SEC v. F.O. Baroff Co.*,
    497 F.2d 280 (2d Cir. 1974)..................................................................................................21

*SEC v. Madoff*,
    No. 1:08-cv-10791-LLS, 2008 WL 5197070 (S.D.N.Y. filed Dec. 11, 2008) .........................2

*Stafford v. Giddens (In re New Times Sec. Servs., Inc.)*,
    463 F.3d 125 (2d Cir. 2006)...........................................................................................11, 16, 22

*Sterling Equities Assocs. v. Picard*,
    132 S. Ct. 2712 (2012)............................................................................................................2

*Velvel v. Picard*,
    133 S. Ct. 25 (2012)...............................................................................................................2

**Statutes**

6 Del. C. § 17–701 ...................................................................................................................11

15 U.S.C.A. § 78*lll*(2) ....................................................................................................... *passim*

15 U.S.C. § 78aaa *et seq.* ...........................................................................................................1

15 U.S.C. § 78eee(a)(4) ............................................................................................................3

# TABLE OF AUTHORITIES
*(continued)*

**Page(s)**

15 U.S.C. § 78eee(b)(3) ...................................................................................................3

15 U.S.C. § 78eee(b)(4) ...................................................................................................3

15 U.S.C. § 78fff-1(a) ......................................................................................................3

15 U.S.C. § 78fff-2(b) .....................................................................................................16

15 U.S.C. § 78fff-3(a) ......................................................................................................3

15 U.S.C. § 78*lll*(4) ..........................................................................................................3

15 U.S.C. § 78*lll*(11) ........................................................................................................3

DEL. CODE ANN. tit. 6, §17 ..............................................................................................4

DEL. CODE ANN. tit. 6, §17-201(b) ................................................................................18

DEL. CODE ANN. tit. 6, §17-303 .....................................................................................18

DEL. CODE ANN. tit. 6, §17-701 ...............................................................................11, 18

Dodd-Frank Wall Street Reform and Consumer Protection Act. Pub. L. No. 111-
    203, § 983(b), 124 Stat. 1931 (2010) .........................................................................16

**Rules**

Fed. R. Civ. P. 36(a)(3) ....................................................................................................21

**Other Authorities**

1–12 *Collier on Bankruptcy* ¶ 12.12 ............................................................................12

Irving H. Picard, as trustee ("Trustee") for the substantively consolidated liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15 U.S.C. § 78aaa *et seq.* ("SIPA"),[1] and the estate of Bernard L. Madoff ("Madoff") (collectively, "Debtor"), respectfully submits this combined motion and memorandum of law (the "Motion") to affirm the denial of the claims filed by claimants  (the "Objecting Claimants") who objected to the Trustee's determinations denying their claims that had direct or indirect partnership interests in a Delaware limited partnership, Peerstate Equity Fund, L.P. ("Peerstate"), and which are specifically identified in Exhibit 2 to the Declaration of Vineet Sehgal filed herewith.  This memorandum is based upon the law set forth below as well as the facts set forth in the accompanying declarations of Stephanie Ackerman ("Ackerman Decl.") and Vineet Sehgal ("Sehgal Decl.").

## PRELIMINARY STATEMENT

The Objecting Claimants seek customer status in this SIPA proceeding, despite their acknowledgement that they had no accounts in their respective names or any other direct relationship with BLMIS.  Instead, they invested in Peerstate, a Delaware limited partnership which had a BLMIS account and invested its own partnership assets with BLMIS, and which filed its own claim regarding the account.  The case is indistinguishable from the seven prior decisions in this SIPA proceeding involving the question of who is the "customer" under SIPA. In particular, this case is no different from that of the Delaware limited partnerships dealt with in the Second Circuit decision *Kruse v. Sec. Investor Prot. Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*, 708 F.3d 422 (2d Cir. 2013).  In that case, the Second Circuit held that only the Delaware limited partnerships that had accounts at BLMIS, and not the investors in those limited

---

[1] *See* 15 U.S.C.A. § 78aaa et seq. (West 2009).  For convenience, subsequent references to sections of the Securities Investor Protection Act shall be denoted simply as "SIPA § __."

partnerships, were customers of BLMIS.   The current Motion seeks to apply *Kruse* and the six

additional similar decisions to the Objecting Claimants through entry of an order affirming the

Trustee's denial of their claims, expunging their claims, and overruling the related claims

objections.

### RELIEF REQUESTED

The Motion seeks the entry of an order substantially in the form of attached Exhibit A,

affirming the Trustee's denial of the claims listed on Exhibit 2 to the supporting Declaration of

Vineet Sehgal, expunging such claims, and overruling, on the grounds that Claimants are not

"customers" as such term is used at SIPA § 78*lll*(2), all objections filed by the Claimants as to

the claims.[2]

### BACKGROUND

### A.    THE COMMENCEMENT OF THE SIPA PROCEEDING

The basic facts of the BLMIS fraud are widely known and have been recounted in

numerous decisions.   *See, e.g., In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d 229, 231 (2d

Cir. 2011), *reh'g and reh'g en banc denied,* (2d Cir. Nov. 08, 2011), *cert. dismissed sub nom.*

*Sterling Equities Assocs. v. Picard*, 132 S. Ct. 2712 (2012), *and cert. denied sub nom. Ryan v.*

*Picard*, 133 S. Ct. 24 (2012), *Velvel v. Picard*, 133 S. Ct. 25 (2012); *In re Beacon Assocs. Litig.*,

745 F. Supp. 2d 386, 393–94 (S.D.N.Y. 2010).   On December 11, 2008, the Securities and

Exchange Commission ("SEC") filed a complaint in the District Court against Madoff and

BLMIS, captioned *SEC v. Madoff*, No. 1:08-cv-10791-LLS, 2008 WL 5197070 (S.D.N.Y. filed

Dec. 11, 2008), alleging fraud through the investment advisor activities of BLMIS.   The SEC

consented to the consolidation of its case with an application of the Securities Investor Protection

---

[2] The Trustee reserves all other bases for objections to the claims that are the subject of the Motion.

Corporation ("SIPC"). Thereafter, SIPC filed an application under SIPA § 78eee(a)(4) alleging that because of its insolvency, BLMIS needed SIPA protection. The District Court appointed the Trustee under SIPA § 78eee(b)(3) and removed the proceeding to this Court under SIPA § 78eee(b)(4).

Under SIPA, the Trustee is responsible, among other things, for recovering and distributing customer property to a broker's customers, assessing claims, and liquidating other assets of the firm for the benefit of the estate and its creditors. A SIPA trustee has the general powers of a bankruptcy trustee, in addition to the powers granted by SIPA. SIPA § 78fff-1(a). The statutory framework for the satisfaction of customer claims in a SIPA liquidation proceeding provides that "customers," as defined in SIPA § 78*lll*(2), share pro rata in "customer property," defined in SIPA § 78*lll*(4), to the extent of their "net equity," defined in SIPA § 78*lll*(11). For each customer with a valid net equity claim, if the customer's share of customer property does not make her whole, SIPC advances funds to the SIPA trustee up to the amount of the customer's net equity, not to exceed $500,000 (the amount applicable to this case). SIPA § 78fff-3(a).

On December 23, 2008, this Court entered a Claims Procedures Order. (ECF No. 12.) Pursuant to that order, the Trustee determines claims eligible for customer protection under SIPA, claimants may object to the Trustee's determination of a claim by filing an objection in this Court, and the Trustee requests a hearing date for the objection and notifies the objecting claimant thereof. *Id.*

## B.   PEERSTATE HISTORY AND STRUCTURE

The Objecting Claimants in this case invested in Peerstate. The 82 claims of the Objecting Claimants were filed by limited partners of Peerstate, as well as by its General Partner in an individual capacity. *See* Sehgal Decl. Ex. 3.

Peerstate was organized as a Delaware Limited Partnership in 1996.[3]  Its certificate of limited partnership was filed with the State of Delaware on August 27, 1996.  *See* Ackerman Decl. Ex. 29.  Its BLMIS account, number 1ZB295, was opened on October 29, 1996. Sehgal Decl. Ex. 8; *see also* ECF 3801 at 1.  Peerstate is legally governed by both the Delaware Revised Uniform Limited Partnership Act ("DRULPA"),[4] and by its own partnership agreement.

Peerstate's BLMIS investments have been in a BLMIS account in Peerstate's name, and under Peerstate's own tax identification number, since 2004. Sehgal Decl. Ex. 6 at 8-10, Ex. 8 at 50, Ex. 10 at 6.  Prior to that time, Robert N. Getz (then a General Partner of Peerstate, and since 2004, the Managing Member of the General Partner of Peerstate) maintained that same BLMIS account in his individual name and under his personal social security number.[5]  According to Mr. Getz, he established the BLMIS account exclusively as a nominee account for Peerstate, to get around a restriction by BLMIS against accounts held by privately offered investment partnerships.  Sehgal Decl. Ex. 9 at 3.

In 2004, Peerstate adopted an Amended and Restated Limited Partnership Agreement (the "Partnership Agreement") which substituted Robert N. Getz LLC as the sole General Partner.  Ackerman Decl. Ex. 24; Sehgal Decl. Ex. 7 at recitals.  Thereafter, Robert N. Getz continued operation of Peerstate in his capacity as Managing Member of Robert N. Getz LLC. Documents received in production indicate that his son, Steven S. Getz, joined Robert N. Getz LLC as Associate Managing Member in 2002, *see* Ackerman Decl. Ex. 26 at

---

[3] *See* Ackerman Decl. Ex. 24; Sehgal Decl. Ex. 7 at 1 ("Amended and Restated Limited Partnership Agreement of Peerstate Equity Fund, L.P.").

[4] DEL. CODE ANN. tit. 6, §17 (2011).

[5] Robert N. Getz LLC is an Objecting Claimant.  Robert N. Getz, individually, is not.  Sehgal Decl. Ex. 2.

4

MCMDP_00000861, but his father continued to be the primary or exclusive BLMIS contact. *See* Sehgal Decl. Ex. 8.

After the BLMIS SIPA case was filed, on January 27, 2009, Peerstate sent a letter to its investors acknowledging that "SIPC's coverage is . . . currently limited to only the specific account holder—in this case—Peerstate." Peerstate urged its limited partners to write to Congress seeking a change in the law to allow for payments to investors in account-holding companies like Peerstate. Sehgal Decl. Ex. 11 at 1.

Peerstate filed a claim in this BLMIS proceeding which was denied by the Trustee on the grounds that Peerstate had withdrawn more money than it deposited, rendering it a net winner with no net equity. Sehgal Decl. ¶ 6. No recovery action was filed against it because the amount of fictitious profits transfers that Peerstate received was deemed insufficient to justify the filing of recovery litigation.

Peerstate limited partners signed subscription agreements in which they warranted (i) that the limited partner was entering into the Agreement relying solely on the facts and terms set forth in the Subscription Agreement, the Confidential Private Offering Memorandum of the Partnership and the Limited Partnership Agreement; (ii) that the limited partner had received copies of those documents and had reviewed the terms of the Limited Partnership Agreement to the extent necessary to be fully informed; and (iii) that the limited partner had such knowledge and experience in financial and business matters as to allow him or her to evaluate the merits and risks of the investment, and was able to bear the economic risk of a complete loss of his or her investment. *See* Ackerman Decl. Ex. 26; Sehgal Decl. Ex. 12 at 4.

The limited partners sent their money to Peerstate as capital contributions to Peerstate. *See* Partnership Agreement, Article VI. The capital accounts, and the capital account of the

General Partner, represented their proportional interest in the partnership and were calculated
pursuant to a formula set out in the Partnership Agreement that included the contributions, any
withdrawals, and allowance for the fees and expenses of the partnership, *id*., including
indemnification obligations and management fees.  *Id.* at § 3.03, Article IX.  If at any time a
limited partner should choose to withdraw from Peerstate (on 30 days written notice, limited to
the end of a calendar quarter), or request a partial withdrawal of its interest, the General Partner
would determine whether the distribution would be wholly in cash or, if not, which securities
would form part of it.  *See* Partnership Agreement, Article VII.  The Partnership Agreement also
provided for retaining a reserve for liabilities.  *See* Partnership Agreement, Article XII.
Assignment of interests in the partnership was restricted.  *See* Partnership Agreement, § 1.07.

Only the General Partner, Robert N. Getz, LLC, had the right to manage the partnership,
and on its behalf, enter into contracts, open accounts, and invest the partnership's assets, or to
delegate certain investment functions.  Partnership Agreement, Article III.  The General Partner
was compensated for the special functions that it performed on behalf of the partnership.
Partnership Agreement, Article IX.

Thus, like the feeder funds that were the subject of the Initial Feeder Fund Motion and
the Second Feeder Fund Motion (as subsequently defined), Peerstate meets the following
criteria:  (1) it is a legal entity (*i.e.*, capable of owning property, suing, and being sued) that was
created as an investment vehicle; (2) it owned the funds that it used for investment, which funds
were obtained from the legal entity's owners, including, among others, the Objecting Claimants;
(3) the management and direction of fund investments by the partnerships were committed to
entity management, specifically the sole General Partner; (4) Peerstate had a BLMIS account in

its name, according to the books and records of the Debtor; and (5) Peerstate is not a bank, broker, or dealer.

## C.    THE BLMIS ACCOUNT RECORDS

Peerstate maintained an account in its own name (the "Account") with BLMIS. The Objecting Claimants did not. Sehgal Decl. ¶¶ 6, 22, 13, 18, Exs. 4, 9. The General Partner in its capacity as such had authority over the Account. The limited partner Objecting Claimants did not. Sehgal Decl. ¶¶ 16, 17, 18, 22, Exs. 7, 8, 9.

The records of BLMIS reflect money deposited or withdrawn by Peerstate, acting through Robert N. Getz, and not by the Objecting Claimants. Once the Account became titled in Peerstate's name in 2004, the BLMIS records show that enclosure letters transmitting money to the Account were largely on Peerstate letterhead (signed by Robert N. Getz) and usually requested withdrawals to be wired to Peerstate bank accounts. *See* Sehgal Decl. ¶¶ 17, 8. BLMIS sent Account statements and related communications to Peerstate, not the Objecting Claimants.[6] The account maintenance files of BLMIS for this Account do not reference the limited partners of Peerstate. Sehgal Decl. Ex. 8 ¶ 17.

Because Peerstate maintained an Account at BLMIS, and made deposits into and withdrawals from the Account, the books and records of BLMIS reflect the amounts owing and owed by the BLMIS estate for the Account. The books and records of BLMIS do not, in contrast, reflect deposits or withdrawals directly to or from BLMIS by the Objecting Claimants with regard to the Account. They also do not show what amounts individual Objecting Claimants invested in, or withdrew from, Peerstate. Sehgal Decl. ¶ 22.

---

[6] *See* Ackerman Decl. ¶¶ 12, 13, 19-26, 29, 30, Exs. 4, 5, 11-18, 21, 22 at the responses to Requests for Admission numbers 3, 8 (hereafter "A__"), and at the responses to Interrogatories numbers 4, 6, 8 (hereafter "I__")); Sehgal Decl. ¶¶ 14, 17, Exs. 5, 8.

### D.    THE CLAIMS

Peerstate filed a customer claim with the Trustee for the supposed value of its Account. Sehgal Decl. ¶¶ 6, 15, Ex. 6.  Its claim was denied because it had already withdrawn more than it had deposited; therefore, it was a "net winner" and had no net equity.   Sehgal Decl. ¶ 6. Peerstate's claim is not before the Court on this Motion.

The claims at issue in this Motion involve investments into Peerstate.  Sehgal Decl. ¶¶ 7-12, Exs. 1-3.  The Objecting Claimants, the 82 claims filed by them, and the objections to determination of those claims, are specifically identified in Exhibits 2 and 3 to the Sehgal Decl. The Objecting Claimants were the limited partners in Peerstate and the general partner, all of whom invested in Peerstate directly or through their retirement accounts.    The Objecting Claimants filed a total of 82 unique claims based solely upon their investments in Peerstate. Sehgal Decl. ¶¶ 11, 12, Ex. 2-3.  The Trustee denied their claims, citing the fact that they lacked BLMIS accounts and were not customers of BLMIS.   Sehgal Decl. ¶ 11.   The Objecting Claimants, collectively, filed 11 unique docketed objections to the Trustee's determination of their claims.  Sehgal Decl. ¶¶ 10-12, Exs.1-3.  This Motion addresses all remaining objections regarding the specified claims by Objecting Claimants who are identified on Exhibit 2 of the Sehgal Decl.[7]

Apart from the Objecting Claimants, whose customer claims arising from their interests in Peerstate are set out in Sehgal Decl. Exhibits 2 and 3, there are three other Peerstate investors that have had their objections overruled.  Their counsel included them as parties to the objections

---

[7] At least two Objecting Claimants indicated in discovery that they were also involved with different account holders at BLMIS other than Peerstate.  Ackerman Decl. ¶¶ 15, 16, Exs.7 and 8.  Specifically, Glen Ross of the Glen Ross MD PC Profit Sharing Plan, claim number 3416, claimed a subaccount in the account of his father Gerald Ross (I5); and Ronald J. Hurwitz, claim numbers 1485 and 6824, stated that he acted as a manager for the L & I account discussed *infra*.  (A3-4, A11-12; I6, I Ex. 2 attachment.) Their filed claims as listed in Sehgal Decl. Exhibit 2, relate solely to the Peerstate Account.  Any claims that may exist as to other accounts are not the subject of this Motion.

despite the fact that those parties never filed claims. The Trustee brought two motions, Trustee's First Omnibus Motion Seeking to Expunge Objections by Parties That Did Not File Claims (ECF No. 4711) and Trustee's Second Omnibus Motion Seeking to Expunge Objections by Parties That Did Not File Claims (ECF No. 4712), to resolve their claims objections. This Court granted the requested relief, and its orders were not appealed. (ECF Nos. 4778, 4780). Those persons (David Sternberg, Fetkowitz, F & E, and Janet Weiss) are accordingly not included in the instant Motion. This Motion seeks to resolve all remaining objections related to Peerstate except that it excludes any objection to determination of Peerstate's own customer claim.

Since receiving the 11 objections to the claims determinations, the Trustee served discovery on each of the Objecting Claimants seeking to determine their basis for claiming customer status, and inquiring into deposits, payments, communications, account openings, and their relationship with the account holder.[8] Many Objecting Claimants failed to respond. The ones that did respond provided no persuasive evidence of their entitlement to customer status under SIPA. Ackerman Decl. Exs. 4-23.

### E.    THE CUSTOMER DECISIONS

There have been seven prior decisions in this proceeding dealing with whether investors in BLMIS accountholder entities could be treated as "customers" under SIPA; all of the decisions said they could not. The Trustee's first motion regarding the definition of "customer" under SIPA was the Trustee's Motion To Affirm Trustee's Determinations Denying Claims of Claimants Without BLMIS Accounts In Their Names, Namely, Investors in Feeder Funds, filed

---

[8] Discovery was initially served upon Becker and Poliakoff, LLP which had filed objections to determination on behalf of all of the Objecting Claimants. In some cases, a second counsel had also filed an objection to determination for an Objecting Claimant; in such cases, the second counsel was also served with discovery. Sometimes an Objecting Claimant had also filed his or her own objection to determination *pro se*, and was also served with discovery directly. Becker and Poliakoff, LLP ultimately confirmed to the Trustee that it was not representing any of the Objecting Claimants as to discovery. Thereafter, discovery was also served directly upon other Objecting Claimants *pro se*. Ackerman Decl. ¶¶ 7-11.

on June 11, 2010 (ECF No. 2416) (the "Initial Feeder Fund Motion"). Seven of the 16 feeder

funds addressed by the motion were, like Peerstate, limited partnerships organized in Delaware.[9]

The Initial Feeder Fund Motion addressed the objections to claim determinations of claimants

who invested in those feeder funds. Each of the feeder funds, in contrast to the claimants, had

accounts with BLMIS. On June 28, 2011, this Court issued its memorandum decision and order

affirming the Trustee's denial of the claims. *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv.*

*Sec. LLC (In re Bernard L. Madoff Inv. Sec. LLC),* 454 B.R. 285 (Bankr. S.D.N.Y. 2011), *aff'd*

*sub nom. Aozora Bank Ltd. v. Sec. Investor Prot. Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*,

480 B.R. 117 (S.D.N.Y. 2012), *aff'd sub nom. Kruse v. Sec. Investor Prot. Corp. (In re Bernard*

*L. Madoff Inv. Sec. LLC),* 708 F.3d 422 (2d Cir. 2013).

The Court found that, in light of the plain language of SIPA and relevant case law, the

claimants in the Initial Feeder Fund Motion did not qualify as "customers" under SIPA. *Id.* at

290. The Court found that the claimants invested in, not through, those feeder funds, and had no

individual accounts at BLMIS. *Id.* at 297. It was the feeder funds that entrusted their monies

with BLMIS for the purpose of trading or investing in securities—the touchstone of "customer"

status—whereas the claimants purchased interests in the feeder funds. *Id.* at 299. The Court

held that absent a direct relationship with BLMIS, the claimants sought a definition of

"customer" that stretched the term beyond its limits. *Id.* at 302.

Certain claimants, including some who invested in feeder funds organized as Delaware

limited partnerships, appealed this decision to the District Court. The District Court affirmed,

---

[9] *See* Mem. of Law in Support of Trustee's Motion To Affirm Trustee's Determinations Denying Claims Of
Claimants Without BLMIS Accounts In Their Names, Namely, Investors In Feeder Funds at 4 n.8, ECF 2411; *see
also Aozora Bank Ltd. v. Sec. Investor Prot. Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*, 480 B.R. 117,
(S.D.N.Y. 2012), *aff'd sub nom. Kruse v. Sec. Investor Prot. Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*, 708
F.3d 422 (2d Cir. 2013).

extensively analyzing the statutory definition and holding that the claimants did not qualify as customers under the plain language of SIPA. *Aozora Bank Ltd.*, 480 B.R. 117 (S.D.N.Y. 2012).

On further appeal to the Second Circuit, the only remaining appellants were those who invested through two BLMIS account-holding hedge funds that, like Peerstate, were organized as Delaware limited partnerships. *Kruse*, 708 F.3d at 425. The Second Circuit also affirmed, confirming that "[j]udicial interpretations of 'customer' status support a narrow interpretation of the SIPA's provisions." *Id.* at 426 (citing *Stafford v. Giddens (In re New Times Sec. Servs., Inc.)*, 463 F.3d 125, 127 (2d Cir. 2006)). The Second Circuit held that "the critical aspect of the 'customer' definition" was "the entrustment of cash or securities to the broker-dealer for the purposes of trading securities." *Kruse*, 708 F.3d at 426 (citing *In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d at 236.). The Second Circuit found that the claimants failed to meet this fundamental requirement because the money sent to BLMIS belonged to the limited partnerships, not to the individual claimants, and the individual claimants therefore failed to establish that they had entrusted cash or securities to BLMIS. *Kruse*, 708 F.3d at 427. The Second Circuit also found that the individual claimants did not exhibit other indicia of customer status in their dealings (or lack of dealings) with BLMIS, including that they did not exert any control over the accounts at issue and that they were not reflected in BLMIS records. *Id.* at 426-27.

Citing Delaware limited partnership law, the Second Circuit held: "[T]he limited partnership interests sold by the Feeder Funds to investors, such as the Spectrum Funds, did not confer an ownership interest in money that the Feeder Funds ultimately invested in BLMIS. *See* 6 Del. C. § 17–701; *see also In re Marriott Hotel Props. II Ltd. P'ship*, No. CIV–A–14961, 2000 WL 128875, at *15 (Del.Ch. Jan. 24, 2000) ('Section 17–701 of the Delaware Revised Uniform

Limited Partnership Act . . . has been interpreted to preclude the attempt to equate ownership interests in a partnership with ownership of partnership property.').".

Thus, the Second Circuit concluded, "regardless of their intent, appellants never entrusted their cash or securities to BLMIS and, thus, fail to satisfy this 'critical aspect of the "customer" definition.' *In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d at 236 (internal quotation marks omitted); *see SIP v. Morgan, Kennedy & Co.*, 533 F.2d at 1318;[10] *see also* 1–12 *Collier on Bankruptcy* ¶ 12.12 (16th ed. 2012) ('[A] claimant will not be entitled to customer protection under SIPA unless the debtor actually receives the claimant's cash or securities; the debtor must actually have come into possession or control.')." *Kruse,* 708 F.3d at 427-28.

While the appeals of the First Feeder Fund Decision were proceeding, the Trustee also filed a motion (the "ERISA Motion") to eliminate arguments that were raised by claimants without BLMIS accounts who were benefit plans or benefit plan participants (collectively, the "ERISA Claimants") and who sought to use the Employee Retirement Income Security Act ("ERISA") as a basis for determining their customer status.[11] (ECF No. 4521.)  The District Court withdrew the reference from the Bankruptcy Court and granted the ERISA Motion. *Sec. Investor Prot. Corp. v. Jacqueline Green Rollover Account*, Nos. 12 Civ. 1039(DLC), 12 Civ. 1139(DLC), 2012 WL 3042986 *3 (S.D.N.Y. July 25, 2012).

The District Court noted that the first two of the three ways to qualify as a "customer" under SIPA § 78*lll*(2), "presume that a customer must have a securities account with the debtor," and that the claimants also did not qualify under the third method of having "deposited cash with

---

[10] *Sec. Investor Prot. Corp. v. Morgan, Kennedy & Co.*, 533 F.2d 1314, 1318 (2d Cir. 1976), *cert. denied*, 426 U.S. 936 (1976) ("*Morgan Kennedy*")

[11] Prior to the hearing on the Initial Feeder Fund Motion, the Court had removed from the scope of the motion the question of whether ERISA affects "customer" status under SIPA.

the debtor for the purpose of purchasing securities." *Id.* at *4. That was so because none of the claimants "owned any cash deposited with BLMIS. Rather, . . . in each case this cash was owned by the third-party entity in which the claimant invested, and which had a BLMIS account in its name." *Id.* at *5. The District Court also rejected arguments that fiduciary responsibilities could suffice to create a "customer" relationship: "Without an account in his or her name with BLMIS or title to any assets with BLMIS, a claimant cannot achieve customer status merely by virtue of having a fiduciary relationship with the debtor." *Id.* at *12. No appeal was taken of this decision.

On June 27, 2013, the Trustee filed the Trustee's Second Motion to Affirm Trustee's Determinations Denying Claims of Claimants Who Invested in Certain Feeder Funds and Did Not Have BLMIS Accounts in Their Names (together with supporting documents, ECF Nos. 5396 – 5399, 5438 – 5439; collectively, the "Second Feeder Fund Motion"). On August 21, 2013, the Court issued its Bench Memorandum Granting Trustee's Second Motion to Affirm Trustee's Determinations Denying Claims of Claimants Who Invested in Certain Feeder Funds and Did Not Have BLMIS Accounts in Their Names (ECF No. 5450) ("the Second Feeder Fund Decision"). That decision reaffirmed that "the burden is on the claimant to establish he is a 'customer' entitled to SIPA protection, and such a showing is not easily met." Second Feeder Fund Decision at 4 (quoting *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 454 B.R. at 294). Also, the Court determined that the claimants "fail[ed] to [meet their burden] because they lack any of the indicia of a 'customer' relationship with BLMIS." *Id.* In particular, "they had no securities accounts at BLMIS, were not known to BLMIS, lacked privity and any financial relationship with BLMIS, lacked property interest in any feeder fund account assets at BLMIS, entrusted no cash or securities to BLMIS, had no investment discretion over feeder fund

assets invested with BLMIS, received no accounts statements or other communications from BLMIS and had no transactions reflected on the books and records at BLMIS." *Id.* The Second Feeder Fund Decision was not appealed.

On April 30, 2014, the Trustee filed Trustee's Motion And Memorandum To Affirm Trustee's Determination Denying Claims Of Claimants (the "Claimants") Who Invested In The Daprex, Felsen, Sterling, Or Orthopaedic ERISA Plans (ECF No. 6489). On August 22, 2014, this Court issued its Memorandum Decision Granting Motion To Affirm Trustee's Determinations Denying Claims Of Claimants Who Invested In Certain ERISA Plans. *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff)*, 515 B.R. 161 (Bankr. S.D.N.Y. 2014) (hereinafter, "*ERISA Claimant Decision*"). In affirming the Trustee's determinations, this Court concluded that "[t]he claimant has the burden to establish his status as a 'customer'" and "not every victim of a broker-dealer's fraud is a 'customer.'" *Id*. at 166. The Court found that "to qualify as a 'person who has deposited cash with the debtor for the purpose of purchasing securities,' . . . the party asserting that she was a BLMIS customer must show that she entrusted her own assets directly through an account maintained in her own name rather than indirectly through a fund that then entrusted the fund's assets through an account maintained in the fund's name." *Id.* at 168 (internal citations omitted). Moreover, even the fact that a claimant exercised some control over her own investments in the fund or the fund's investments in BLMIS is not sufficient to meet "the narrow definition of customer under SIPA." *Id.* This decision has not been appealed.

On December 12, 2014, the Trustee filed Trustee's Motion And Memorandum To Affirm His Determinations Denying Claims Of Claimants Holding Interests In S & P Or P & S Associates, General Partnerships. (ECF No. 8734.) On February 25, 2015, this Court read into

the record a decision granting the motion (the "S&P P&S Decision").  This Court summarized

the state of the law, as expressed in its prior decision[12] as follows: First, it said, "customer status

under SIPA is narrowly interpreted."  Further, "[t]he 'critical aspect' of the customer definition is

'the entrustment of cash or securities to the broker-dealer for the purposes of trading securities.'"

In addition, "[t]he indicia of customer status include a direct financial relationship with BLMIS,

a property interest in the funds invested directly with BLMIS, securities accounts with BLMIS,

control over the account holders' investments with BLMIS and identification of the alleged

customer in BLMIS' books and records."  The Court concluded, "[f]inally, the claimant has the

burden of showing that he or she is a customer."  Hr'g. Transcript, *S&P P&S Decision*, at p. 30

(Ackerman Decl. Ex. 30). The Court held that the objecting partners failed to sustain their burden

of proving that they are SIPA customers of BLMIS.  *Id.* at 36.  An order granting the Trustee's

motion was entered March 10, 2015. (ECF No. 9450.)

## ARGUMENT

To be a "customer" under SIPA, an investor must have "a claim on account of securities

received, acquired, or held by the debtor in the ordinary course of its business as a broker or

dealer from or for the securities accounts of such person," including "any person who has

deposited cash with the debtor for the purpose of purchasing securities." SIPA § 78lll(2).[13]  Thus,

---

[12] *ERISA Claimant Decision* 515 B.R. at 165-68.

[13] The definition applicable to this SIPA proceeding is:

(2) CUSTOMER

The term "customer" of a debtor means any person (including any person with whom the debtor deals as principal or agent) who has a claim on account of securities received, acquired, or held by the debtor in the ordinary course of its business as a broker or dealer from or for the securities accounts of such person for safekeeping, with a view to sale, to cover consummated sales, pursuant to purchases, as collateral security, or for purposes of effecting transfer. The term "customer" includes any person who has a claim against the debtor arising out of sales or conversions of such securities, and any person who has deposited cash with the debtor for the  purpose of purchasing securities, but does not include—

to be a "customer" an investor must have entrusted cash or securities with the debtor for the purpose of trading or investing in securities. The Second Circuit, as well as this Court, has held in this very SIPA proceeding that investors in entities, including specifically investors in Delaware limited partnerships, do not constitute "customers" under SIPA where only that entity rather than the investor had an account in the brokerage being liquidated under SIPA. *See Kruse*, 708 F.3d at 427 (holding investors who bought interests in a Delaware limited partnership entity that invested partnership funds via the partnership's own BLMIS account "never entrusted *their* cash or securities to BLMIS and, thus, fail to satisfy this 'critical aspect of the "customer" definition'" regardless of their intent) (citing *In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d at 236); *In re New Times Sec. Servs., Inc.,* 463 F.3d at 128 ("[T]he critical aspect of the 'customer' definition is the entrustment of cash or securities to the broker-dealer for the purposes of trading securities.") (quoting *Appleton v. First Nat'l Bank of Ohio,* 62 F.3d 791, 801 (6th Cir. 1995)); *In re Adler, Coleman Clearing Corp.*, 216 B.R. 719, 724–25 (Bankr. S.D.N.Y. 1998) ("The term [customer] refers to those who entrust cash or securities to broker-dealers for the purpose of trading and investing in the securities market."). The Trustee is responsible for discharging obligations of the Debtor to customers with such claims "insofar as such obligations are ascertainable from the books and records of the debtor or are otherwise established to the satisfaction of the trustee." SIPA § 78fff-2(b).

---

(A) any person to the extent that the claim of such person arises out of transactions with a foreign subsidiary of a member of SIPC; or

(B) any person to the extent that such person has a claim for cash or securities which by contract, agreement, or understanding, or by operation of law, is part of the capital of the debtor, or is subordinated to the claims of any or all creditors of the debtor, notwithstanding that some ground exists for declaring such contract, agreement, or understanding void or voidable in a suit between the claimant and the debtor.

SIPA § 78*lll*(2), *see* 15 U.S.C.A. § 78*lll*(2)  (West 2009). After the start of this case, the "customer" definition was slightly reorganized and amended in a manner irrelevant to the present issues by the Dodd-Frank Wall Street Reform and Consumer Protection Act. Pub. L. No. 111-203, § 983(b), 124 Stat. 1931 (2010); *see In re Lehman Bros. Inc.*, 462 B.R. 53, n.9 (Bankr. S.D.N.Y. 2011).

The Objecting Claimants' investment in Peerstate does not meet the requirements for "customer" status outlined in the seminal Second Circuit decision *Morgan Kennedy*. *Kruse*, 708 F.3d at 427.  In *Morgan Kennedy*, the Second Circuit rejected the argument that the beneficial owners of the account holder were the "customers" under SIPA, citing the facts that: (1) title to the trust assets was held by the account holder, not the beneficiaries; (2) the securities account with the debtor was in the name of the account holder, not the beneficiaries; (3) the account holder had the exclusive power to entrust the assets to the debtor; (4) the beneficiaries were unknown to the broker; and (5) the beneficiaries had no legal capacity in which they could deal with the debtor.  533 F.2d at 1318.

The Objecting Claimants' circumstances are no different than the claimants in *Morgan Kennedy*, and do not show the hallmarks of customer status discussed in this Court's most recent decision.  Hr'g. Transcript, *S&P P&S Decision*, at p. 30 (Ackerman Decl. Ex. 30).  The limited partners entrusted their money to Peerstate, not BLMIS.  The limited partners lacked a direct financial relationship with BLMIS as to the account money.  The money entrusted to BLMIS was the property of Peerstate, not the Objecting Claimants.  The BLMIS Account was in the name of Peerstate, not in the individual names of Objecting Claimants.  The limited partners lacked control over Peerstate's investments with BLMIS and were not identified in BLMIS' books and records.  The general partner who dealt with BLMIS did so as an agent for the Account holder, like the trustees who acted for the trust account in *Morgan Kennedy* and sought status as customers, and was no more a customer in his individual capacity than were they. *Morgan Kennedy,* 533 F.2d at 1321.

Accordingly, like the appellants in *Kruse*, the Objecting Claimants in their capacity as Peerstate partners never entrusted *their* cash or securities to BLMIS and, thus, fail to satisfy this

"critical aspect of the 'customer' definition." 708 F.3d at 426-27 (citing *In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d at 236); *accord ERISA Claimant Decision,* 515 B.R. at 169.  Whether they intended or expected that Peerstate would ultimately invest with BLMIS is irrelevant under SIPA. *See Kruse*, 708 F.3d at 426-27; *ERISA Claimant Decision*, 515 B.R. at 169-170.

The Objecting Claimants, as investors in Peerstate, do not have property rights in the money they contributed to Peerstate, or in anything that Peerstate purchased with it.  Those assets belong to Peerstate.  Like the account holders dealt with by prior Customer Opinions, Peerstate is a legal entity under the laws of its home jurisdiction, with all that that entails, including ownership of the assets that it invested with BLMIS.  Delaware law explicitly recognizes limited partnerships such as Peerstate as distinct legal entities that own their own property.  *See, e.g*., DRULPA § 17-201(b) ("A limited partnership formed under this chapter shall be a separate legal entity . . . .");  DRULPA § 17-701 ("A partner has no interest in specific limited partnership property."); *see also Kruse,* 708 F.3d at 427-28.

Peerstate's general partner was required to carry out the investments and various internal functions of the partnerships and exclusively controlled the assets.  Indeed, a limited partner who participated in the control of a Delaware limited partnership would generally lose his or her limited liability status as to third parties under Delaware law.  *See* DRULPA § 17-303.

It was Peerstate, not the Objecting Claimants, that entrusted assets to BLMIS for the purpose of purchasing securities.  Peerstate alone had the right to direct the investment of those assets, and to withdraw property from the Peerstate Account.   It was Peerstate, not the Objecting Claimants, that was the customer for its Account under SIPA.

Because BLMIS never exercised a custodial function on behalf of the individual Objecting Claimants, who made no deposits or withdrawals at BLMIS, the Objecting Claimants

have neither "customer" claims nor individual net equity. The purpose of SIPA, a statute intended to deal with broker insolvency, is "to expedite the return of customer property" by "protecting the *custody* function of brokers," according to a recent Second Circuit decision that declined to permit interest or time-based damages for customer claims under SIPA. *Sec. Investor Prot. Corp. v. 2427 Parent Corp. (In re Bernard L. Madoff Inv. Sec. LLC)* Nos. 14-97-bk(L), 14-509-bk(con), 14-510-bk(con), 14-511-bk(con), 14-512-bk(con), 2015 WL 727965 at *4 (2d Cir. Feb. 20, 2015). Customers share in the fund of customer property ratably, according to each customer's "net equity." *Id*. at **2, 6. The definition of net equity is limited by the fundamental SIPA design "to return customer property to customers," *id.* at *2, whether in cash or in actual securities. *Id*. at *5. The Second Circuit stated, "[w]e . . . previously concluded that in [the BLMIS] case net equity . . . should be determined based on customers' actual deposits and withdrawals. These deposits, net withdrawals, constitute customer property here." *Id.* at *6 (citations omitted). The books and records of BLMIS show that Objecting Claimants made no BLMIS deposits nor any BLMIS withdrawals, except for the General Partner acting solely on Peerstate's behalf. Sehgal Decl. ¶ 22. The Objecting Claimants accordingly have no individual net equity and are not "customers" within the meaning of SIPA. *See Sec. Investor Prot. Corp. v. 2427 Parent Corp.*, 2015 WL 727965 at *6.

The discovery received from Objecting Claimants not only fails to support their claims of "customer" status, it affirmatively shows them to be baseless. The responding Objecting Claimants generally admitted in their discovery that the Account was not titled in their name (A1),[14] that they never received correspondence directly from BLMIS (A3), that they did not

---

[14] "A1" means response to Requests For Admission, Request 1. *See supra* note 6.

have direct communications with BLMIS employees (I6),[15] and that they never received investment statements (A8) or tax statements (A9) in their names from BLMIS. *See* Ackerman Decl. Exs. 4, 5, 11-18, 21, 22, ¶¶ 12, 13, 19-26, 29, 30.

Most of the Objecting Claimants that responded admitted that they never paid cash directly to BLMIS for credit to an account in their names (A5), nor ever deposited securities directly to BLMIS (A4). They admitted that they never directly withdrew (A6) or received (A7) (I8) funds from BLMIS, that any funds withdrawn were transmitted to them from the Account holder, Peerstate (A7), and that any payments from BLMIS in connection with the Account were remitted to Peerstate (I8). The limited partners agreed that they did not have control over Peerstate and/or authority to exercise discretion with respect to Peerstate's assets or investments (I7), that they had no direct understanding or agreement with BLMIS with respect to the assets or investments of Peerstate (I9), and that they did not have communications with BLMIS on behalf of Peerstate. (I6, I10). *See* Ackerman Decl. Exs. 4, 5, 11-18, 21, 22, ¶¶ 12, 13, 19-26, 29, 30. So far as the discovery responses reveal, all of the limited partners dealt solely with Peerstate (as opposed to BLMIS) as to their Peerstate investments.

In addition, a number of the Objecting Claimants attached to their claims or produced in discovery portions of the confidential offering memorandum that they received prior to investment, or the subscription agreements that they signed. The Subscription Agreements required them to confirm their status as experienced in financial and business matters and that they had received and reviewed the Limited Partnership Agreement and received the confidential offering memorandum. *See*, *e.g.*, Ackerman Decl. ¶ 34, Ex. 26; Sehgal Decl. ¶ 21, Ex. 12 at 4.

---

[15] "I6" means response to Interrogatories at Interrogatory Number 6. *Id.*

The evidence indicates that they were well aware of the form of the investment they were making.

Other Objecting Claimants either failed to respond at all to counterpart requests for admission, thereby admitting them, Fed. R. Civ. P. 36(a)(3), *see* Ackerman Decl. ¶¶ 10-11, 35-38, Exs. 1-3, 27, 28, or their responses to discovery likewise showed nothing that remotely resembled a customer-broker relationship with BLMIS as to the Account. *See* Ackerman Decl. Exs. 6-10, 19, 20, 23, ¶¶ 14-18, 27, 28, 31.

Ronald J. Hurwitz, the only limited partner who claimed extensive contacts with BLMIS, described contacts relating to a different account not included in the claims at issue. That account was also not in his own name, but rather in the name of L & I Investments, LLC ("L & I"), and Mr. Hurwitz apparently acted as L & I's representative in dealings with BLMIS about the L & I account. Ackerman Decl. ¶16, Ex. 8. However, even if the L & I account had been in his own name, it would not have availed him. "Customer" status under SIPA is on a transaction by transaction basis. *SEC v. F.O. Baroff Co.*, 497 F.2d 280, 282 n.2 (2d Cir. 1974) (under SIPA, "a person may be a 'customer' with respect to some of his claims for cash or shares, but not with respect to others"); *Sec. Investor Prot. Corp. v. Wise (In re Stalvey & Assocs., Inc.)*, 750 F.2d 464, 471 n.4 (5th Cir. 1985) ("Customer status 'in the air' is insufficient to confer the SIPA's protection on a given transaction"); *Sec. Investor Prot. Corp. v. Stratton Oakmont, Inc.*, 229 B.R. 273, 277 (Bankr. S.D.N.Y. 1999), *aff'd sub nom. Arford v. Miller*, 210 F.3d 420 (2d Cir. 2000) ("an investor can be a customer vis-a-vis certain transactions but not others"). Contacts arising in relation to a different account would not aid him as to his Peerstate Account claim.

Robert L. Getz LLC, as the general partner of Peerstate, also interacted with BLMIS through its Managing Member Robert L Getz, but did so on behalf of Peerstate as a whole. This

renders Robert L. Getz LLC similar to those whose objections to determination were overruled in the ERISA Claimant Decision, where "the contacts with BLMIS identified by the Objectors occurred in their capacities" as officials of the accountholder "and not in their individual capacities concerning individual accounts." *ERISA Claimant Decision,* 515 B.R. at 170.

As the Second Circuit has explained, "[j]udicial interpretations of 'customer' status support a narrow interpretation of the SIPA's provisions." *Kruse*, 708 F.3d at 426 (citing *In re New Times Sec. Servs., Inc.,* 463 F.3d at 127). Customer status under SIPA is narrowly construed and is the burden of the claimant to establish. *See ERISA Claimant Decision,* 515 B.R. at 166 ("The burden is on the claimant to establish he is a 'customer' entitled to SIPA protection, and such a showing 'is not easily met.'") *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 454 B.R. at 294 (citing *In re Klein, Maus & Shire, Inc.*, 301 B.R. 408, 418 (Bankr. S.D.N.Y. 2003)); *see also Mishkin v. Siclari (In re Adler, Coleman Clearing Corp.)*, 277 B.R. 520, 557 (Bankr. S.D.N.Y. 2002) ("[I]it is well-established in the Second Circuit that a claimant bears the burden of proving that he or she is a 'customer' under SIPA.") The Objecting Claimants have not met this burden. Thus, under Second Circuit precedent, the Objecting Claimants are not SIPA customers.

## **CONCLUSION**

For all of the foregoing reasons, the Court should affirm the Trustee's determination denying the claims of the Objecting Claimants, overrule their objections, expunge the claims, and grant such other and further relief as the Court deems just and proper.

Dated: New York, New York
     March 11, 2015

Respectfully submitted,

*/s/ David J. Sheehan*
_____
David J. Sheehan
Email: dsheehan@bakerlaw.com
Jorian L. Rose
Email: jrose@bakerlaw.com
Nicholas J. Cremona
Email: ncremona@bakerlaw.com
Seanna R. Brown
Email: sbrown@bakerlaw.com
Amy E. Vanderwal
Email : avanderwal@bakerlaw.com
**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, New York  10111
Tel: (212) 589-4200
Fax: (212) 589-4201

Brian A. Bash
Email: bbash@bakerlaw.com
Wendy J. Gibson
Email: wgibson@bakerlaw.com
**Baker & Hostetler LLP**
1900 E. 9th St Suite 3200
Cleveland, Ohio  44114
Tel: (216) 621-0200
Fax: (216) 696-0740

*Attorneys for Irving H. Picard, Trustee
for the Substantively Consolidated SIPA
Liquidation of Bernard L. Madoff Investment
Securities LLC and the Estate of Bernard L.
Madoff*