JOSEPHINE WANG
General Counsel
KEVIN H. BELL
Senior Associate General Counsel
  For Dispute Resolution
NATHANAEL S. KELLEY
Assistant General Counsel
SECURITIES INVESTOR
 PROTECTION CORPORATION
805 Fifteenth Street, N.W., Suite 800
Washington, D.C.  20005
Telephone:  (202) 371-8300
E-mail: jwang@sipc.org
        kbell@sipc.org
        nkelley@sipc.org

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>　　　　　　　　Plaintiff,<br><br>　　v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>　　　　　　　　Defendant. | Adv. Pro. No. 08-01789 (SMB)<br><br>SIPA Liquidation<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>　　　　　　　　Debtor. | |

**MEMORANDUM OF THE SECURITIES INVESTOR PROTECTION CORPORATION IN SUPPORT OF TRUSTEE'S MOTION TO AFFIRM HIS DETERMINATIONS DENYING CLAIMS OF CLAIMANTS HOLDING INTERESTS IN <u>PEERSTATE EQUITY FUND, L.P.</u>**

# **TABLE OF CONTENTS**

**PAGE**

TABLE OF CONTENTS ................................................................................................................ i

TABLE OF AUTHORITIES ......................................................................................................... ii

BACKGROUND ............................................................................................................................1

ARGUMENT ..................................................................................................................................2

CONCLUSION ...............................................................................................................................8

# **TABLE OF AUTHORITIES**

**CASES:** **PAGE**

*Aozora Bank Ltd. v. Sec. Investor Prot.. Corp.*, 480 B.R. 117 (S.D.N.Y. 2012), *aff'd sub nom.*,
  *Kruse v. Sec. Investor Protec. Corp* (*In re Bernard L. Madoff Inv. Sec. LLC*),
  708 F.3d 422 (2d Cir. 2013) ................................................................................... 5–6

*Appleton v. First Nat'l Bank of Ohio*,
  62 F.3d 791 (6th Cir. 1995) ........................................................................................ 3

*In re Bernard L. Madoff Inv. Sec. LLC*,
  654 F.3d 229 (2d Cir. 2011),
  *cert. dismissed*, __ U.S. __, 132 S. Ct. 2712 (2012), and
  *cert. den.*, __ U.S. __, 133 S. Ct. 24 (2012) and 133 S. Ct. 25 (2012) ........................ 2, 3

*In re Investors Center, Inc.*,
  129 B.R. 339 (Bankr. E.D.N.Y. 1991) ........................................................................ 4

*Kruse v. Sec. Investor Protec. Corp* (*In re Bernard L. Madoff Inv. Sec. LLC*),
  708 F.3d 422 (2d Cir. 2013) ................................................................................... 6, 7

*Mishkin v. Ensminger (In re Adler, Coleman Clearing Corp.)*,
  218 B.R. 689 (Bankr. S.D.N.Y. 1998) ........................................................................ 4

*Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
  454 B.R. 285 (Bankr. S.D.N.Y. 2011), *aff'd sub nom., Aozora Bank Ltd. v. Sec.
  Investor Prot.. Corp.*, 480 B.R. 117 (S.D.N.Y. 2012), *aff'd sub nom.*,
  *Kruse v. Sec. Investor Protec. Corp* (*In re Bernard L. Madoff Inv. Sec. LLC*),
  708 F.3d 422 (2d Cir. 2013) ................................................................................ 3, 4, 5

*Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
  515 B.R. 161 (Bankr. S.D.N.Y. 2014) ........................................................................ 6

*Sec. Investor Prot. Corp. v. Jacqueline Green Rollover Account*,
  2012 WL 3042986 (S.D.N.Y. July 25, 2012) ........................................................ 3, 4, 6

*Sec. Investor Prot. Corp. v. Morgan, Kennedy & Co.*, 533 F.2d 1314 (2d Cir.),
  *cert. den. sub nom.*, *Trs. of the Reading Body Works v. Sec. Investor Prot. Corp.*,
  426 U.S. 936 (1976) ............................................................................................. 3, 4, 5

*Sec. Investor Prot. Corp. v. Wise (In re Stalvey & Assocs.)*,
  750 F.2d 464 (5th Cir. 1985) ...................................................................................... 2

ii

# TABLE OF AUTHORITIES

**(cont.)**

**CASES:**                                                                                                       **PAGE**

*Stafford v. Giddens (In re New Times Sec. Servs., Inc.)*,
    463 F.3d 125 (2d Cir. 2006)..................................................................................................2, 3


**STATUTES AND RULES:**                                                                                          **PAGE**

Securities Investor Protection Act, as amended, 15 U.S.C. §

78ccc(e)..........................................................................................................................................4
78fff-2(b)........................................................................................................................................2
78*lll*(2).......................................................................................................................................2, 3

Employee Retirement Income Security Act of 1974

Del. Code Ann. tit. 6, § 17-701..................................................................................................7


Rules of the Securities Investor Protection Corporation 17 C.F.R. §§ 300

100–105.....................................................................................................................................4–5

103...............................................................................................................................................5

The Securities Investor Protection Corporation ("SIPC") submits this memorandum in support of the motion ("Motion") of Irving H. Picard, as trustee ("Trustee") for the substantively consolidated liquidation under the Securities Investor Protection Act ("SIPA"), 15 U.S.C. §§ 78aaa–78*lll*, of Bernard L. Madoff Investment Securities LLC ("BLMIS") and Bernard L. Madoff, to affirm the Trustee's determinations denying the claims of claimants ("Claimants") holding interests in Peerstate Equity Fund, L.P. ("Peerstate"). Under SIPA and this Court's prior decisions, these claimants are not "customers" of BLMIS and thus have no claim to the fund of customer property in this liquidation and, in addition, cannot have their claims satisfied with funds advanced by SIPC.

## BACKGROUND

Through the Motion, the Trustee seeks entry of an order upholding his denial of 82 claims for "customer" relief under SIPA. Each of the Claimants holds an interest in Peerstate, a Delaware Limited Partnership. Claimants have alleged no credible relationship with BLMIS independent of Peerstate.

Peerstate, through its general partner or under its own name, completed an account agreement and opened an account with BLMIS, and it made deposits into, and withdrawals from, that account.[1] In contrast with Peerstate's direct relationship with BLMIS, the Claimants never completed account agreements and never opened accounts with BLMIS. The books and records of BLMIS do not reflect that Claimants were ever BLMIS account holders or that they ever entrusted cash or securities to BLMIS. Indeed, the Claimants did not have any financial

---

[1] Based upon this account, Peerstate filed a claim in this liquidation. Because Peerstate had withdrawn more money than it deposited, and thus was a net winner, the Trustee denied Peerstate's claim.

1

transactions or communications with BLMIS. Instead, Claimants' claims addressed by the Motion are entirely derived from their status as interest holders in Peerstate.

## ARGUMENT

SIPA's provisions for customer protection are narrowly tailored to provide relief only to those claimants who entrusted cash or securities to the liquidating broker-dealer for the purpose of trading in the securities markets. *See In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d 229, 236 (2d Cir. 2011) (the "*Net Equity Decision*"), *cert. dismissed*, __ U.S. __, 132 S. Ct. 2712 (2012), and *cert. den.*, __ U.S. __, 133 S.Ct. 24 (2012) and 133 S. Ct. 25 (2012); *Stafford v. Giddens (In re New Times Sec. Servs., Inc.)*, 463 F.3d 125, 127–28 (2d Cir. 2006) ("*New Times*") ("Judicial interpretations of 'customer' status support a narrow interpretation of the SIPA's provisions." (quoting *Sec. Investor Prot. Corp. v. Wise (In re Stalvey & Assocs., Inc.)*, 750 F.2d 464, 472 (5th Cir. 1985)). In defining who qualifies as a customer, SIPA requires that the viable claim of a customer must relate to the custodial relationship between broker and customer: cash or securities held by the broker for the customer in an account at the broker in which the customer holds a cognizable interest. Specifically, under SIPA,

> *[t]he term "customer"* of a debtor *means any person* (including any person with whom the debtor deals as principal or agent) *who has a claim on account of securities received, acquired or held* by the debtor in the ordinary course of its business as a broker or dealer *from or for the securities accounts of such person* for safekeeping, with a view to sale, to cover consummated sales, pursuant to purchases, as collateral security, or for purposes of effecting transfer. The term "customer" includes any person who has a claim against the debtor arising out of sales or conversions of such securities, and any person who has deposited cash with the debtor for the purpose of purchasing securities . . .

*See* SIPA § 78*lll*(2) (2008) (emphasis added). Furthermore, the obligations of a liquidating broker-dealer to a claimant for "customer" relief must be ascertainable from the broker-dealer's books and records, or must be established "to the satisfaction of the trustee." *See* SIPA § 78fff-2(b).

2

Customer status under SIPA is thus not a shorthand designation for anyone who can claim a remote relationship, if any, to a broker-dealer. *Sec. Investor Prot. Corp. v. Morgan, Kennedy & Co.*, 533 F.2d 1314, 1316 (2d Cir.) ("*Morgan Kennedy*"), *cert. den. sub nom.*, *Trs. of the Reading Body Works v. Sec. Investor Prot. Corp.*, 426 U.S. 936 (1976). On the contrary, in order to qualify for such status, a claimant must be able to demonstrate that the claimant: (1) entrusted cash or securities to the broker-dealer; (2) did so pursuant to a direct account or other direct relationship with the broker-dealer; (3) retained the power to direct the disposition of the assets entrusted to the broker-dealer; and (4) intended to use the cash or securities entrusted to the broker-dealer for the purpose of investing or trading in the securities markets. *See* SIPA § 78*lll*(2); *New Times*, 463 F.3d at 128–29; *Morgan Kennedy*, 533 F.2d at 1317; *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC,* 454 B.R. 285, 295–302 (Bankr. S.D.N.Y. 2011) ("*BLMIS*"), *aff'd sub nom., Aozora Bank Ltd. v. Sec. Investor Prot. Corp.*, 480 B.R. 117, 124 (S.D.N.Y. 2012) ("*Aozora*"), *aff'd sub nom.*, *Kruse v. Sec. Investor Prot. Corp. (In re Bernard L. Madoff Inv. Secs. LLC)*, 708 F.3d 422 (2d Cir. 2013) ("*Kruse*"); *see also Appleton v. First Nat'l Bank of Ohio*, 62 F.3d 791, 801 (6th Cir. 1995).

As the Second Circuit has explained, of the above-listed factors, "the critical aspect of the 'customer' definition [in SIPA] is the entrustment of cash or securities to the broker-dealer for the purposes of trading securities." *Net Equity Decision*, 654 F.3d at 236; *see also New Times*, 463 F.3d at 128; *Sec. Investor Prot. Corp. v. Jacqueline Green Rollover Account*, 2012 WL 3042986, at *4 (S.D.N.Y. July 25, 2012) ("*Jacqueline Green*"). An investor, however, cannot legally entrust to a broker-dealer cash or securities that the investor does not own and in which it has no other cognizable property right. As this Court and others have recognized, legal ownership of cash or securities held, or purportedly held, by a broker-dealer is a "foundational

3

element" of "customer" status under SIPA—an indispensable prerequisite which a claimant must satisfy in order to have a colorable "customer" claim under SIPA. *See Jacqueline Green*, 2012 WL 3042986 at *5; *BLMIS*, 454 B.R. at 295, 299; *see also Morgan Kennedy*, 533 F.2d at 1318.

The Second Circuit applied these principles to employee benefit plan beneficiaries in *Morgan Kennedy*, holding that the employee-beneficiaries of a trust created pursuant to an employer's profit sharing plan were not SIPA customers on the grounds that: (1) the employer sponsoring the profit-sharing plan and related trust, not the employee-beneficiaries, contributed the funds in the trust account; (2) the trustees of the trust, not the employee-beneficiaries, had the power to decide whether to entrust those funds to the debtor, and, in fact, made that decision; (3) the account was in the name of the trust, not the employee-beneficiaries, and the debtor had no relationship with the employee-beneficiaries; (4) the trustees had the exclusive authority to make all decisions concerning the disposition of assets in the trust account at the debtor; (5) unlimited additions of employee-beneficiaries to, and subtractions from, the profit-sharing plan could be made; (5) the employee-beneficiaries were eligible for benefits only upon termination of employment; and (6) none of the property held in the trust account was allocable to any particular employee-beneficiary. *See Morgan Kennedy*, 533 F.2d at 1318.

SIPC's Series 100 Rules, which set forth the circumstances under which multiple accounts held by the same person with a SIPC member broker-dealer are deemed to be separate accounts eligible for individual protection for purposes of SIPA, heed and reinforce this distinction between entities and their owners or interest holders.[2] *See* 17 C.F.R. §§ 300.100– 300.105; *Morgan Kennedy*, 533 F.2d at 1319–20. Under Rule 103, an account held in the name

---

[2] The SIPC Series 100 Rules were submitted to the Securities and Exchange Commission for approval under SIPA section 78ccc(e) and have the force of law. *See Mishkin v. Ensminger (In re Adler, Coleman Clearing Corp.)*, 218 B.R. 689, 699 (Bankr. S.D.N.Y. 1998); *In re Investors Center, Inc.*, 129 B.R. 339, 348 (Bankr. E.D.N.Y. 1991).

4

of a corporation, partnership, or unincorporated association "shall be deemed to be a separate customer distinct from the person or persons owning such corporation or comprising such partnership or unincorporated association," unless the purpose of the entity in question was to obtain or increase protection under SIPA. 17 C.F.R. § 300.103. While the Series 100 Rules determine when accounts held by the same person will each be treated as a separate "customer" of a liquidating broker-dealer and do not confer "customer" status, the fact that the rules distinguish between a partnership and its partners reinforces the *Morgan Kennedy* holding that the same distinction must be respected when evaluating eligibility for "customer" status. *See Morgan Kennedy*, 533 F.2d at 1319 ("Only those accounts which are held by valid customers of the debtor can qualify for separate coverage. Customer status under SIPA is therefore a prerequisite to the application of the [Series 100] Rules, and not a substitute therefor.") As explained in *Morgan Kennedy*, the Series 100 Rules "illustrate that, under SIPA, separate coverage for accounts held in different capacities is not to be confused with individual coverage for each individual owning some portion of, or interest in, the particular account." *Id.* at 1320.

Applying *Morgan Kennedy*, this Court and the District Court rejected earlier in this liquidation the customer claims of claimants who purchased ownership interests in BLMIS feeder funds—which, like Peerstate, were formed as limited partnerships—or who invested in plans regulated under the Employee Retirement Income Security Act of 1974 ("ERISA") which then invested in BLMIS. In the case of the feeder funds, for instance, Judge Lifland reasoned, *inter alia*, that, after purchases of fund interests were made, the cash used by the claimants to make them "*became the sole property of the Feeder Funds*," and that the claimants therefore could not have entrusted property to BLMIS and had no legally cognizable claim to any of the assets purportedly held by BLMIS. *See BLMIS*, 454 B.R. at 295 (emphasis in original); *Aozora*,

5

480 B.R. at 125 ("[A]t the moment each appellant used assets to purchase an ownership interest in a Feeder Fund, those assets became property not of the appellants but of the Feeder Fund").

Similarly, in rejecting the claims of ERISA plan participants, this Court noted that the claimants' "financial transactions were with the [ERISA] Plan. Thus, they failed to satisfy the 'critical requirement' that they entrusted cash to BLMIS, as opposed to the [ERISA] Plan, for the purchase of securities." *See Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 515 B.R. 161, 169 (Bankr. S.D.N.Y. 2014) (quoting *Kruse*, 708 F.3d at 426); *see also Jacqueline Green*, 2012 WL 3042986, at *5 ("One cannot deposit cash with the debtor if this cash belongs to another.").

Most recently, on February 25, 2015, this Court issued a bench ruling granting the Trustee's motion to uphold his determination denying the claims of general partners who held interests in two partnerships which had invested in BLMIS. (Motion Hr'g Tr. Feb. 25, 2015, Declaration of Stephanie Ackerman, dated Mar. 11, 2015 [ECF No. 9465], Ex. 30). The Court held that the partners had failed to carry their burden of proving they are SIPA customers entitled to protection (*Id.* at 35.). Importantly, even if the partners invested in the partnerships in order to invest indirectly in BLMIS, "the fact remains that the partners did not entrust anything to BLMIS," and they had no interest in the partnerships' property so entrusted. (*Id.* at 31.)

The same reasoning bars the Claimants claims here. As investors *in*, not *through*, Peerstate, Claimants have no legally cognizable relationship with Peerstate's account at BLMIS, and therefore cannot claim "customer" status through those accounts. As described in more detail in the Trustee's brief and accompanying declarations, the Claimants purchased interests in Peerstate and transferred money to Peerstate, not BLMIS. The Partnership Agreement makes perfectly clear that the General Partner—not the Claimants as limited partners—managed

6

Peerstate's investments. Furthermore, Delaware law specifies that property acquired by a limited partnership such as Peerstate belongs to the partnership as a distinct legal entity and not to the partners, such as the Claimants. *See* Del. Code Ann. tit. 6, § 17-701; *see also Kruse*, 708 F.3d at 427 ("[T]he limited partnership interests sold by the Feeder Funds to investors . . . did not confer an ownership interest in money that the Feeder Funds ultimately invested in BLMIS."). As a consequence, when Peerstate invested its property with BLMIS, the Claimants had no cognizable legal relationship with BLMIS and therefore are indistinguishable from the trust beneficiaries denied "customer" status in the Second Circuit's decision in *Morgan Kennedy* and the feeder fund investors and ERISA participants whose claims this Court previously denied.

## **CONCLUSION**

Claimants are not SIPA "customers" for the basic reason that they had no cognizable property interest in any of the assets entrusted by Peerstate to BLMIS. Accordingly, the Court should grant the Trustee's Motion.

Date:   March 13, 2015
        Washington, D.C.

                                        Respectfully submitted,

JOSEPHINE WANG
General Counsel

KEVIN H. BELL
Senior Associate General Counsel
 For Dispute Resolution


 s/ *Nathanael S. Kelley*
NATHANAEL S. KELLEY
Assistant General Counsel

SECURITIES INVESTOR PROTECTION
 CORPORATION
805 15th Street, N.W., Suite 800
Washington, D.C. 20005
Telephone: (202) 371-8300
E-mail: jwang@sipc.org
        kbell@sipc.org
        nkelley@sipc.org

8