Page 1

1    UNITED STATES BANKRUPTCY COURT

2    SOUTHERN DISTRICT OF NEW YORK

3    Adv. Proc. No. 08-01789-smb (SIPA LIQUIDATION)

4    - - - - - - - - - - - - - - - - - - - - - -x

5    In the Matters of:

6    SECURITIES INVESTOR PROTECTION CORPORATION,

7                    Plaintiff,

8    v.

9    BERNARD L. MADOFF INVESTMENT SECURITIES LLC,

10                   Defendant.

11   - - - - - - - - - - - - - - - - - - - - - -x

12   BERNARD L. MADOFF,

13                   Debtor.

14   - - - - - - - - - - - - - - - - - - - - - -x

15                   United States Bankruptcy Court

16                   One Bowling Green

17                   New York, New York

18

19                   February 25, 2015

20                   10:03 AM

21

22

23   B E F O R E:

24   HON. STUART M. BERNSTEIN

25   U.S. BANKRUPTCY JUDGE

1

2    08-01789-smb Securities Investor Protection Corporation v.

3    Bernard L. Madoff Investment Securities

4

5    HEARING re Trustee's Motion to Affirm Trustee's Determinations

6    Denying Claims of Claimants Holding Interests in S&P and P&S

7    Associates Partnerships

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Lisa Beck

Page 3

```
 1   A P P E A R A N C E S :

 2   BAKER & HOSTETLER LLP

 3        Attorneys for Irving H. Picard, Trustee for the

 4         Substantively Consolidated SIPA Liquidation of

 5         Bernard L. Madoff Investment Securities LLC and

 6         the Estate of Bernard L. Madoff

 7        45 Rockefeller Plaza

 8        New York, NY 10111

 9

10   BY:   AMY E. VANDERWAL, ESQ.

11         JORIAN L. ROSE, ESQ.

12

13

14   BECKER & POLIAKOFF LLP

15        Attorneys for Claimants, P&S Associates General

16         Partnership

17        45 Broadway

18        8th Floor

19        New York, NY 10006

20

21   BY:   JULIE GORCHKOVA, ESQ.

22

23

24

25
```

1

2    SECURITIES INVESTOR PROTECTION CORPORATION

3         805 15th Street, N.W.

4         Suite 800

5         Washington, DC 20005

6

7    BY:   NATHANAEL S. KELLEY, ESQ.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 5

1              P R O C E E D I N G S

2          THE COURT:  Please be seated.  Madoff?

3      (Pause)

4          MS. VANDERWAL:  Good morning, Your Honor.

5          THE COURT:  Good morning.

6          MS. VANDERWAL:  Amy Vanderwal, Baker Hostetler, on

7   behalf of the trustee.

8          THE COURT:  Go ahead.

9          MS. VANDERWAL:  We're here this morning on the

10  trustee's motion to affirm his determination of approximately

11  158 claims that relate to 36 objections.  One objection was

12  received to the trustee's motion.

13          The claimants invested directly or indirectly with two

14  Florida partnerships, S&P Associates and P&S Associates.  Both

15  partnerships had accounts with BLMIS in their names and they

16  were customers at BLMIS.  The partnerships filed claims in

17  these proceedings; those claims were allowed.  They had

18  received distributions and will continue to receive

19  distributions on the estate.

20          The trustee's denial over the objecting claimants'

21  claims because they are not customers under SIPA is consistent

22  with several prior decisions of this Court, the district court,

23  the Second Circuit in these proceedings as well as the Second

24  Circuit's decision in Morgan-Kennedy.

25          Several principles can be distilled from these

1    decisions that are applicable here today.  First, SIPA should

2    be narrowly interpreted on the issue of who is a customer

3    because of the priority treatment granted to customers

4    thereunder.  Second, purported customers have the burden of

5    demonstrating that they are deserving of the status thereunder.

6    Third, the critical aspect of the customer definition is the

7    entrusting of their cash or securities to the broker for the

8    purpose of trading securities.  And finally and specifically,

9    claimants who did not hold accounts in their name with BLMIS,

10   who did not entrust their funds to BLMIS, who are not known to

11   BLMIS, who did not receive account statements and who are not

12   shown in the books and records of BLMIS are not customers.

13          Claimants here have failed to carry their burden to

14   demonstrate that they're customers and have provided no

15   evidence that gets around this well settled authority.  Indeed,

16   in their responses that were provided to the discovery

17   propounded by the trustee, the claimants have conceded, among

18   other things, that they did not have accounts in their names at

19   BLMIS, they did not directly invest with or make withdrawals

20   from BLMIS and they did not interact with BLMIS.

21   Notwithstanding this, they make two principal arguments in

22   seeking their customer status.  The first is that they owned

23   the funds that were invested at BLMIS and second is that they

24   exerted control over investment decisions made by the

25   partnerships.  But both of these arguments fail.

Page 7

1              First, the assertion that they had any ownership in

2    the funds that were invested with BLMIS is completely untrue.

3    The plain language of both the partnership agreement and

4    Florida partnership law provides that the funds that were

5    invested by the partnerships were owned by the partnerships.

6              THE COURT:  But under prior law, they held the

7    partnership property as tenants in partnership, didn't they?

8    What does that mean?

9              MS. VANDERWAL:  Well, that law was changed as of 1996.

10   And as of 1998, the current partnership law applies to all

11   partnerships (indiscernible).

12             THE COURT:  So you think that if they had a property

13   right in those funds, a change in the law could deny them --

14   could it be they don't have property rights?

15             MS. VANDERWAL:  First, I would --

16             THE COURT:  Isn't that a violation of due process?

17             MS. VANDERWAL:  I would first argue that even under

18   the prior law, it's questionable whether the level of rights in

19   the property rose to the level of ownership.  But even if it

20   did, the due process that was built into the law was that there

21   was a two-year period before the law applied --

22             THE COURT:  Yeah.

23             MS. VANDERWAL:  -- to all partnerships --

24             THE COURT:  But you know --

25             MS. VANDERWAL:  -- that existed over --

Page 8

1          THE COURT:  -- if you look at the revised act, there's

2     a provision in the revised act which says this law applies to

3     partnerships and any repeal or amendment of this law applies to

4     partnerships.  That's provision -- and that's to overcome, I

5     think (indiscernible) or some old Supreme Court case.  The

6     Uniform Partnership Act didn't have the same provision.

7          MS. VANDERWAL:  Well, our position that both the

8     partnership agreement and the law that is directly applicable

9     to the partnerships here clearly set out who owns the property.

10    For example, Section 602 -- or 601 -- sorry -- of the

11    partnership agreement clearly provides that the property is

12    owned by the partnership not the partners themselves.

13          So instead of actually owning the funds that are at

14    BLMIS, the claimants merely made contributions to the

15    partnership.  They had an interest in the partnership.  They

16    received profits from the partnership.  And if they were to

17    withdraw from the partnership, they would receive the value of

18    their partnership interest.  They didn't receive any particular

19    property back.

20          THE COURT:  I thought some of the claimants were one

21    or more generations removed also.  Were they --

22          MS. VANDERWAL:  Some were indirect.  Some were

23    indirect.  They directed in the -- they invested in the trust

24    that invested in the partnership.  So they were even farther

25    removed from a claim to this property that was invested with

Page 9

1    BLMIS.

2             THE COURT:  Do you know how much has been distributed

3    or what the net equity claim is of the two partnerships?

4             MS. VANDERWAL:  I can tell you approximately that one

5    has an alleged claim of approximately two million and the other

6    was approximately 10 million.  And so they have received the

7    distributions that all other customers have received to date.

8             THE COURT:  Okay.

9             MS. VANDERWAL:  So, in short, with respect to

10   ownership, the investors in feeder fund in the Second -- the

11   investors here are like the investors in the feeder fund in the

12   Second Circuit decision.  They invested in an entity that

13   invested in Madoff.  They themselves did not invest in Madoff.

14            With respect to the second argument that was put forth

15   by the claimants, they cannot demonstrate that they exerted

16   meaningful control over investment decisions.  The provision of

17   the partnership agreement that they rely on merely provides

18   that majority consent is required to invest with the broker or

19   withdraw from a broker or grant that broker discretionary

20   investment power.  So the control is limited, it's subject to

21   majority rule and it relates only to funds owned by the

22   partnership.  Both this Court in the feeder fund decision and

23   the Second Circuit in Kruse have held that demonstrating some

24   level of control over investments or steering those investments

25   to BLMIS is not sufficient to establish customer status where

Page 10

1   there are no direct dealings with BLMIS and not that they're

2   not directly invested with BLMIS.

3                    THE COURT:  Is there any evidence in the case

4   that you're aware of that the relationship between the

5   partnerships and BLMIS or Madoff is disclosed to the partners

6   prior to Madoff's arrest?  I saw the letter after Madoff's

7   arrest.

8                    MS. VANDERWAL:  Right.  The papers submitted by the

9   claimants suggest that BLMIS was aware that the investors

10  were --

11                   THE COURT:  I'm asking if you're aware, for instance,

12  of offering memoranda or anything like that that said you're

13  investing -- the partnership is investing its fund with BLMIS.

14                   MS. VANDERWAL:  No.  We haven't -- we requested

15  through discovery any information that would suggest that.  We

16  haven't received that.

17                   THE COURT:  Okay.  And Madoff isn't -- or BLMIS isn't

18  mentioned in the partnership agreement, is it?

19                   MS. VANDERWAL:  No.

20                   THE COURT:  Okay.

21                   MS. VANDERWAL:  In sum, we would just submit that the

22  claimants have failed to meet their burden to demonstrate that

23  these funds were entrusted -- these funds that were entrusted

24  to BLMIS were theirs and that they invested them for the

25  purpose of trading securities.  So we would request that the

Page 11

1    trustee's motion be granted.

2              THE COURT:  Thank you.

3              MS. GORCHKOVA:  Good morning, Your Honor.

4              THE COURT:  Good morning.

5              MS. GORCHKOVA:  Julie Gorchkova of Becker & Poliakoff

6    on behalf of the objecting claimants that were identified on

7    Exhibit A to Ms. Cheema's declaration in opposition to the

8    trustee's motion.

9              THE COURT:  That's that 78 claimants, I believe?

10             MS. GORCHKOVA:  Yes.

11             THE COURT:  Okay.  So are the other hundred -- and I'm

12   really asking is are the other half pro se in this?  In other

13   words, they filed objections but they didn't respond to the

14   motion?

15             MS. GORCHKOVA:  No.  There was only one response

16   received to the motion.

17             THE COURT:  Okay.  But there are 158 --

18             MS. GORCHKOVA:  Claims.

19             THE COURT:  -- pro ses --

20             MS. GORCHKOVA:  Some are pro se --

21             THE COURT:  Okay.

22             MS. GORCHKOVA:  Some are represented by other firms.

23   We didn't receive any other --

24             THE COURT:  Okay.  Go ahead.

25             MS. GORCHKOVA:  Okay  Our arguments are set forth in

1   our opposition papers so I'm not going to rehash them here.

2   I'd like to instead focus primarily on addressing how the

3   customer opinions in the prior -- how the customer opinions in

4   this case are different from the facts that we have here.  And

5   when I state the "customer opinions", what I'm referring to are

6   the earlier decisions involving the trustee's determination of

7   claims that are identified on pages 4 through 8 of the

8   trustee's motion papers and dealt with feeder fund investors

9   and pension plan participants both of which are very different

10  from the relationship that the partners had with BLMIS through

11  the partnerships in this case.

12        The partners in this case are readily distinguishable

13  from the claimants in the customer opinions in a very material

14  way.  When examining the Morgan-Kennedy factors, unlike the

15  claimants in the customer opinions, the partners here have a

16  great deal of control over the actual money that was invested

17  through the partnerships.  Indeed, the trustee admits at page 1

18  of his reply that although he categorizes conditional ability,

19  he nonetheless admits that the partners had an ability to --

20  had an ability to vote on limited issues relating to how the

21  partnership as a whole would make investments.  The partners --

22        THE COURT:  Is there any evidence that that occurred

23  in this case with S&P or P&S?  In other words, we know about

24  the 51 percent majority provision.  Was there any evidence that

25  the partners acting as a majority, they were selected or fired

Page 13

1    a broker or armed the broker with discretionary trading powers?

2              MS. GORCHKOVA:  No.  BLMIS -- to my knowledge, BLMIS

3    was the only entity into which the partnerships invested from

4    the --

5              THE COURT:  Well, there was --

6              MS. GORCHKOVA:  -- start of the partnerships.

7              THE COURT:  They signed -- I know they signed the

8    trading agreements about two weeks after the partnership

9    agreements were signed.

10             MS. GORCHKOVA:  I'm sorry?

11             THE COURT:  The trading agreements were signed about

12   two weeks after the partnership agreement was signed.

13             MS. GORCHKOVA:  Correct.  And at all times, the

14   partnerships were invested with BLMIS.

15             THE COURT:  But supposedly, at quarterly meetings, the

16   partners were supposed to review the partnerships'

17   relationships with brokers.  Is there any evidence in minutes

18   or anything like that that they ever reviewed a relationship

19   with BLMIS?

20             MS. GORCHKOVA:  I have not seen any minutes submitted

21   from our clients.  But I know that under the partnership

22   agreement and based on knowledge that I obtained while having

23   discussions with the partners --

24             THE COURT:  That sounds like hearsay.

25             MS. GORCHKOVA:  Right.  Nonetheless, I think the

Page 14

1   important thing is that it was the ability -- they had the

2   ability to do that irrespective of whether it was done or not.

3              THE COURT:  A majority of the partners had that legal

4   ability, I would agree.

5              MS. GORCHKOVA:  And while the trustee characterizes

6   this as a very limited level of control, we disagree.  And we

7   think that in a situation where you have a collective

8   investment, that may perhaps be the greatest level of control

9   that an investor can have --

10             THE COURT:  What do you mean by a collective

11  investment?

12             MS. GORCHKOVA:  Well, for example, under the

13  partnership agreement, only 51 percent of the partnership -- of

14  the interest were required to either change the investments or

15  maintain the investments.  For instance, if the partnership

16  agreements require that a 95 percent approval or a 75 percent

17  approval be required, that would be less control than --

18             THE COURT:  What about 60 percent?

19             MS. GORCHKOVA:  Sixty percent would be less control

20  than 51 percent.

21             THE COURT:  What if it said 40 percent?

22             MS. GORCHKOVA:  Forty percent would be greater but it

23  would not be the majority.

24             THE COURT:  But 51 is much more in control, right?

25             MS. GORCHKOVA:  Fifty-one is greater control when you

1   look -- yes.  Fifty-one is the greatest amount of control that

2   you can have when looking at the majority of the partners.

3           THE COURT:  Okay.

4           MS. GORCHKOVA:  Section 804 of the partnership

5   agreement provided for quarterly meetings --

6           THE COURT:  Right.

7           MS. GORCHKOVA:  -- as Your Honor acknowledged.  And at

8   the quarterly meetings, the partners were given an opportunity

9   to evaluate whether investment would be maintained with BLMIS

10  or if it would be transferred somewhere else.

11          THE COURT:  Is there any evidence that they even knew

12  that BLMIS was the partnerships' broker?

13          MS. GORCHKOVA:  Yes.

14          THE COURT:  What's the evidence?

15          MS. GORCHKOVA:  Our answers to requests for

16  admissions.

17          THE COURT:  But that's not evidence.  Ms. Chaitman

18  signed that.  Is she going to testify as to what the general

19  partners told the managing partners or the managing partners

20  told BLMIS?  She can't testify to that.  That's not evidence.

21          MS. GORCHKOVA:  Ms. Chaitman cannot testify to that.

22  And although you are right that the requests for admissions

23  were signed by Ms. Chaitman only, under the Federal Rules of

24  Civil Procedure, they only need to be signed by -- they can be

25  signed by either Ms. Chaitman or --

1           THE COURT:  I understand that but that avoids the

2    effect of a deemed admission.  But the answers are not

3    evidence, are they?

4           MS. GORCHKOVA:  Umm --

5           THE COURT:  How can Ms. Chaitman --

6           MS. GORCHKOVA:  They're not.  But --

7           THE COURT:  It would be like her giving an affidavit

8    as to the --

9           MS. GORCHKOVA:  But if it's --

10          THE COURT:  You are not deemed to admit whatever it is

11   the response was.  But the response itself is not evidence, is

12   it?

13          MS. GORCHKOVA:  Perhaps not but then the trustee -- if

14   that's -- if Your Honor recognizes that that's a factual issue

15   then the trustee can go forward and take discovery.

16          THE COURT:  How can there be a factual issue without

17   any evidence to raise a factual (indiscernible)?

18          MS. GORCHKOVA:  We think that there is -- that the

19   answers themselves would be sufficient.

20          THE COURT:  Okay.  Go ahead.

21          MS. GORCHKOVA:  Furthermore, if it turned out that one

22   of the partners wanted to conduct a vote as to whether the

23   investment would be invested somewhere else or maintained with

24   BLMIS and he was not happy with the result, he also had -- he

25   or she had an opportunity to withdraw from the partnership

1   within 30 days notice.

2           THE COURT:  That's true about the feeder fund case,

3   though.

4           MS. GORCHKOVA:  Yes.  But the feeder fund cases are

5   very distinguishable from the situation that we have here.

6           THE COURT:  But not on the right to withdraw that you

7   just mentioned.  Sure, they had a right to withdraw their money

8   from the partnership, right?

9           MS. GORCHKOVA:  Perhaps in that aspect alone.  But

10  here, we don't just have the right to withdraw.  We have the

11  right to withdraw if they're not satisfied with the vote that

12  happened every three months.

13          THE COURT:  Well, they can withdraw for any reason or

14  no reason, right?

15          MS. GORCHKOVA:  And -- yes.

16          THE COURT:  Okay.

17          MS. GORCHKOVA:  The level of control that the partners

18  had here is very different and more direct than the level of

19  control that was present in the feeder fund decisions.  In the

20  first feeder fund decision, the Second Circuit looked at

21  investors who invested into two entities that then invested

22  into hedge funds which then invested with BLMIS.  And there, in

23  determining whether the claimants or investors satisfied

24  customer status, one of the things that the Court emphasized

25  was the level of control that the investors had over the feeder

Page 18

1    funds' decisions to invest.  And there, the Court concluded

2    that based on its review of various feeder fund materials, such

3    as the private placement memoranda, that the investors yielded

4    all of their control to the feeder funds.  That is very

5    different from the situation that we have here.  And if we look

6    at the private placement memorandum that the Second Circuit

7    actually cited -- that quoted in the decision there, the

8    private placement memorandum stated that the general partner,

9    not the investors, had the sole right to hire and terminate

10   investment advisors.  That's precisely the opposite of the

11   situation that we have here in the partnerships agreement.

12          Now the trustee, in his reply, takes the position that

13   whether the partners retained complete control over the

14   decision regarding the investment as immaterial in light of

15   some of the language in the Second Circuit decision.  And he

16   cites -- in his reply papers, he stated "The Second Circuit

17   held in Kruse -- which is the feeder fund decision that I was

18   talking about -- that 'even if appellants could demonstrate

19   that they exercised some level of control over the Feeder

20   Funds' investments, that fact, standing alone, would be

21   insufficient.'"

22          THE COURT:  What else did they say?  There's more to

23   that --

24          MS. GORCHKOVA:  He cites --

25          THE COURT:  There's more to that.  No.

Page 19

```
 1              MS. GORCHKOVA:  Yes.

 2              THE COURT:  There's more to that quote.

 3              MS. GORCHKOVA:  -- "would be insufficient to confer

 4     'customer' status on appellants given that, individually, they

 5     'made no purchases, transacted no business, and had no dealings

 6     whatsoever' with BLMIS."

 7              THE COURT:  Isn't that what occurred here?

 8              MS. GORCHKOVA:  No.  First, we would submit that that

 9     portion of the Second Circuit decision is not a holding

10     contrary to what the trustee asserted but it's --

11              THE COURT:  But the Second Circuit was quoting more

12     than Kennedy.  Wasn't that the holding of Morgan-Kennedy.

13              MS. GORCHKOVA:  No, not to my knowledge.

14              THE COURT:  That's a quote from Morgan-Kennedy that

15     the Second Circuit is quoting in Kruse.

16              MS. GORCHKOVA:  Yes, starting from "'made no

17     purchases, transacted no business, and had no dealings

18     whatsoever' with BLMIS" is a quote from Morgan-Kennedy.  But

19     when the Second Circuit made that statement, it was made in the

20     context of -- it actually says the appellants.  And the

21     appellants in that case were feeder fund investors which our

22     position is that there are significant -- materially different

23     in a different position than our clients are.  And in addition

24     to the fact that we think that that portion is dicta, there's

25     nothing in that decision -- in the Second Circuit decision that
```

1    would suggest that that would apply to here, that the same

2    statement would be applied in a different context outside of

3    feeder funds.

4         Moreover, I don't think it's appropriate to speculate

5    at this point what some level of control the Second Circuit

6    would be referring to.

7         THE COURT:  All right.  But can I ask you a slightly

8    different question?  Assuming that they had some control but

9    they never exercised it or there's no evidence that they ever

10   exercised it, would that be relevant?

11        MS. GORCHKOVA:  I don't believe so.  I think that the

12   Court needs to look at the governing documents just like the

13   Second Circuit looked at the private placement memorandum in

14   the feeder fund case.  And if the partners had the authority to

15   exercise a control then that's what the Court should look at as

16   opposed to looking at whether there was an actual exercise of

17   control.

18        The trustee also cites to the -- relies heavily on the

19   district court's decision in SIPC v. Jacqueline Green Rollover

20   Account which, as Your Honor probably -- is the ERISA

21   account -- is the ERISA decision and this Court's recent

22   decision in connection with the trustee's motion relating to

23   his denial of claims of other plan participants including the

24   Daprex claimants.  And he cites those two decisions to argue

25   that the claimants in those cases had a greater deal of control

Page 21

1   than the customers -- than the partners have here.  And I would

2   submit two things.  First, the ERISA decision was limited

3   solely to the issue of how ERISA affects, if at all, the

4   determination of customer status of ERISA plan participants.

5   And although the Court did look at the Morgan-Kennedy factors,

6   it evaluated those factors in the context of -- in numerous

7   contexts in terms of whether a certain argument that was made

8   based on ERISA would somehow impact how one or more factors

9   would be decided.  And in fact, in the ERISA decision, the

10  Court specifically said that individual factual issues such as,

11  for instance, some claimants submitted additional evidence

12  showing that they actually had contact with BLMIS or that they

13  made payments directly to BLMIS, the Court declined to consider

14  that.  The Court said that those issues that are not related to

15  ERISA specifically is not before the Court and that the

16  bankruptcy court at a later time can determine those individual

17  issues.  So the level of control there was not before the

18  Court.

19          Similarly, with respect to the Daprex decision, I

20  believe that the control that the partners have here is

21  significantly more than the claimants had in the Daprex

22  decision.  There, you had participants in pension -- in

23  employee pension plans and, yes, although the participants had

24  the ability to withdraw or invest or rollover their money, they

25  did not have the authority as a whole to control how the money

Page 22

1   of the actual plan was invested whereas here, the partners did.

2   Although it was a collective effort, nonetheless that control

3   was there.

4           And just in terms of some of the other factors that

5   Morgan-Kennedy looks at, as stated in our answers to requests

6   for admissions, the partners that the partnership itself was

7   investing with BLMIS and the partnerships' managing partner,

8   Mr. Sullivan, in fact, told BLMIS that this money was being

9   invested on behalf of partnerships.

10          THE COURT:  So what?  So what if they knew that --

11  I'll grant you that BLMIS knew that these were general

12  partnerships and therefore would know that the investments

13  probably came from the capital contributions of the partners.

14  But what does that mean?

15          MS. GORCHKOVA:  Well, I think it --

16          THE COURT:  Why is that legally significant?

17          MS. GORCHKOVA:  I think it's just another factor that

18  supports a finding of customer status in this particular case.

19  Perhaps not alone, but in Morgan-Kennedy, the Court looked at

20  whether the plan participants were anonymous and not --

21          THE COURT:  Well, weren't they anonymous here?  Is

22  there any -- are there any BLMIS records that identify any of

23  these partners?

24          MS. GORCHKOVA:  Not to my knowledge.

25          THE COURT:  So they were anonymous to BLMIS even if

1    BLMIS knew that they were partners who were investing in the

2    two Florida partnerships that in turn were investing in BLMIS.

3            MS. GORCHKOVA:  Perhaps the identity, the actual

4    identities of the partners, yes.  But I think that given that

5    this is a partnership that collectively invested funds, there's

6    also a different level of expectations that the partners have

7    in being deemed customers given --

8            THE COURT:  But can I -- you know, all of these feeder

9    fund -- or most of the feeder fund cases involve limited

10   partnership feeder funds.  Isn't the same true with those

11   cases, that BLMIS should have known that they're partnerships

12   and therefore the funds are coming from the contributions of

13   partners?

14           MS. GORCHKOVA:  Perhaps but my point is that in this

15   particular situation where you have partners that retain the

16   control to make the investment decisions that there's a greater

17   expectation for them, that they would be recognized as

18   customers given the fact that they had this control which is

19   distinguishable from the feeder fund cases.

20           THE COURT:  Okay.  I got it.

21           MS. GORCHKOVA:  And one other fact that I would just

22   like to address.  Although the Florida Partnership Act was

23   amended in 1998 and it no longer provides that the co-ownership

24   of property -- that the partnership properties co-owned by the

25   partners, the reason why we cited it is because I think it's

Page 24

1   important because it demonstrates the expectation of the

2   partners when the partnership was formed.

3           THE COURT:  Do you take the position that the new law

4   repealed whatever rights were -- property rights were granted

5   to the partners under the old law?  In other words, the trustee

6   is arguing that the old law was repealed and whatever it gave

7   you, you no longer have.

8           MS. GORCHKOVA:  Not necessarily.  I think that the

9   partners would be able to opt out of it.  I don't know --

10          THE COURT:  Opt out of the new law?

11          MS. GORCHKOVA:  I think they -- because partnership

12  law is generally governed by contract law.

13          THE COURT:  Okay.  So you're saying that they could

14  opt out of it through the partnership agreement.

15          MS. GORCHKOVA:  I believe so.

16          THE COURT:  And what does the partnership agreement

17  say in this case?

18          MS. GORCHKOVA:  To my knowledge, it was not amended in

19  light of the change in the law.

20          THE COURT:  But what does the partnership agreement

21  say about the ownership of the property or the individual

22  partner's rights in the property?

23          MS. GORCHKOVA:  The partnership agreement does not

24  talk about the co-ownership of the property, whether --

25          THE COURT:  Sure.  Doesn't it say that the partners

Page 25

1    can't seek to partake in the property?

2            MS. GORCHKOVA:  Yes.

3            THE COURT:  Okay.

4            MS. GORCHKOVA:  But the partnership agreement also

5    says that upon termination that the partnership assets will be

6    distributed in accordance with the partnership shares.  And our

7    position would be --

8            THE COURT:  But every partnership agreement says that.

9    What do you think is going to happen on dissolution or

10   termination?  The debts are paid and then the equity is paid

11   out.

12           MS. GORCHKOVA:  One other point that I'd just like to

13   address is the issue raised by the trustee with respect to our

14   answers to the requests for admissions and that they should not

15   be considered by the Court.  The trustee cites Rule 33 in

16   response saying that requests for admissions under Rule 33 have

17   to be sworn.

18           THE COURT:  Under Rule 36.

19           MS. GORCHKOVA:  Right.  It's Rule 36 -- right.  That

20   applies.  But under Rule 36, they don't have to be sworn.

21           THE COURT:  I understand.  I don't have a problem with

22   how the responses -- with the responses.  The fact that they

23   were signed by Ms. Chaitman and that isn't a deemed admission

24   of whatever that particular request was.  But that's a

25   different issue from saying that the responder can use the

Page 26

1     admissions -- really the denials -- as evidence.

2               MS. GORCHKOVA:  Thank you.

3               THE COURT:  Okay.  Anything else?  SIPC.  I think we

4     should have (indiscernible) for the opposition but go ahead.

5               MR. KELLEY:  Your Honor, Nathanael Kelley for SIPC.

6               I believe the trustee's counsel has stated the case

7     very clearly and I don't want to repeat what has been said

8     there.  And I'll give her the opportunity to respond but I just

9     wanted to offer SIPC --

10              THE COURT:  Your support?

11              MR. KELLEY:  -- support and see if you had any

12    questions.

13              THE COURT:  I have no questions.  Thank you.

14              MR. KELLEY:  Thank you, Your Honor.

15              MS. VANDERWAL:  Your Honor, just very briefly.  As I

16    mentioned earlier, the six (indiscernible) decisions on four of

17    the trustee's motions as well as Morgan-Kennedy are directly

18    relevant here.  In each case, there were separate legal

19    entities in which people invested that, in turn, invested in

20    BLMIS.

21              In terms of control, as Your Honor recognized, no

22    evidence has been submitted to this Court in terms of exercise

23    of control, in terms of conversations between managing partners

24    and BLMIS.  None of that -- there is no evidence of that before

25    the Court at this time.  And the other thing --

Page 27

1          THE COURT:  Suppose there was that evidence in this

2     case, would it then be the trustee's position that they're

3     customers?

4          MS. VANDERWAL:  If they -- just because BLMIS or there

5     were other people who had invested?

6          THE COURT:  Let's say we got an affidavit from

7     somebody who said, you know, I told -- the managing partner

8     told me that this money was going to be invested through the

9     partnership with BLMIS and that's why I did it.

10          MS. VANDERWAL:  And our position is that that would

11     not be sufficient --

12          THE COURT:  Why not?

13          MS. VANDERWAL:  -- because it doesn't satisfy the most

14     essential factor that has been identified from this body of

15     case law which is that the purported customer owned the funds

16     that are invested with BLMIS.

17          THE COURT:  All right.  Thank you.

18          MS. VANDERWAL:  Thank you.

19          THE COURT:  S&P Associates and P&S Associates,

20     collectively "the Partnerships", are Florida general

21     partnerships that had accounts with BLMIS and essentially acted

22     as feeder funds investing all of their partnership funds with

23     BLMIS.  This motion concerns the customer status of the general

24     partners of the partnerships.  They never invested directly

25     with BLMIS.  Instead, they invested directly with the

Page 28

1  partnerships or indirectly with entities that became general

2  partners of the partnerships and invested their own funds

3  through the partnerships.

4        For the sake of convenience, I will refer to anyone on

5  invested directly or indirectly with the partnerships as

6  partners.

7        Except as noted, the facts are not in dispute and are

8  derived from the declarations of Bik, BIK, Cheema, C-H-E-E-M-A,

9  and Vineet, V-I-N-E-E-T, Sehgal, SEHGAL, submitted on this

10  motion and the documents attached to those declarations.  The

11  partnerships were formed in 1992 and were governed by nearly

12  identical partnership agreements.  Their purpose was to invest

13  in all types of market-placed securities, Partnership

14  Agreements, Section 2.02, and were funded with initial capital

15  contributions by the partners.  Partnership Agreements, Section

16  4.01.  Michael D. Sullivan and Greg Powell served as the

17  managing general partners and had the exclusive authority to

18  manage and control the day-to-day operations of the partnership

19  and maintain the partnership property.  Partnership Agreements,

20  Section 8.01.  Nevertheless, the general partners could have a

21  say in the selection of brokers.  For example, a majority of

22  the partners in interest could cause the partnership to

23  terminate or allow a specific broker selected by the majority

24  and grant their selected broker discretionary investment powers

25  with the partnerships' investment funds.  Partnership

Page 29

1    Agreement, Section 2.02.

2           In addition, the partnership agreements at Section

3    8.04 stated that the partners would review any broker's

4    engagement with the partnership at the regular quarterly

5    meetings.

6           As noted, the partnerships maintained accounts with

7    BLMIS and following the commencement of the SIPA liquidation,

8    filed customer claims with the trustee based on their alleged

9    account statements dated November 30, 2008.  According to the

10   trustee, the partnerships' claims have been allowed in an

11   amended amount.  Each has received either payment of or the

12   benefit of a 500,000 dollar SIPC advance and interim

13   distributions have been made to each of them from the customer

14   fund maintained by the trustee.

15          Numerous partners also filed their own customer

16   claims.  The trustee disallowed those claims on the basis that

17   the partners were not customers of BLMIS within the meaning of

18   SIPA.  One hundred fifty-eight partners objected to his claim

19   determinations and this motion seeks to affirm his disallowance

20   of the partners' claims.  The motion elicited the response from

21   78 partners represented by the law firm, Becker and Poliakoff

22   LLP.  Although approximately 50 percent of the objecting

23   partners did not respond to the motion, I will refer to the

24   entire group as the objecting partners.

25          In SIPC v. BLMIS, 515 B.R. 161 (Bankr. S.D.N.Y. 2014),

Page 30

1    the Court reviewed the decisions by this Court, the district

2    court and the Second Circuit relating to the customer status of

3    persons who did not have accounts with BLMIS and instead

4    invested with entities that, in turn, invested directly with

5    BLMIS.  To summarize briefly, customer status under SIPA is

6    narrowly interpreted.  The "critical aspect" of the customer

7    definition is "the entrustment of cash or securities to the

8    broker-dealer for the purposes of trading securities".  The

9    indicia of customer status include a direct financial

10   relationship with BLMIS, a property interest in the funds

11   invested directly with BLMIS, securities accounts with BLMIS,

12   control over the account holders' investments with BLMIS and

13   identification of the alleged customer in BLMIS' books and

14   records.  Finally, the claimant has the burden of showing that

15   he or she is a customer, id. at page 165-68.

16         The objecting partners have failed to sustain their

17   burden of proof.  They did not entrust any cash or securities

18   with BLMIS.  They invested with the partnerships who, in turn,

19   invested with BLMIS.  They have no direct financial

20   relationship with BLMIS.  They did not deposit money with or

21   withdraw money from BLMIS or receive investment statements or

22   tax statements in their own names from BLMIS.  The documents

23   produced by the trustee show that all communications with or by

24   the partnerships went through Sullivan or Powell and all

25   deposits and withdrawals were made by them in the names of the

Page 31

1    partnerships.  Thus, even if BLMIS knew or surmised that the

2    partnerships' BLMIS accounts were funded with partners'

3    contributions, there is no evidence that BLMIS maintained

4    records identifying the partners or even knew who they were,

5    and the fact remains that the partners did not entrust anything

6    to BLMIS.

7         The objecting partners nevertheless contend that the

8    controlling decisions including Kruse v. Bricklayers and

9    Bricklayers and Allied Craftsman Local 2 Annuity Fund, (In re

10   BLMIS), 708 F.3d 422 (2nd Cir. 2013), and SIPC v. Morgan,

11   Kennedy and Co., 533 F.2d 1314 (2nd Cir.), cert. denied. 426

12   U.S. 936 (1976), are distinguishable for three reasons.  First,

13   the partners had a specific interest under Florida law in all

14   partnership property invested with BLMIS.  Second, BLMIS knew

15   that each partner had made a decision to entrust his or her

16   funds with BLMIS.  Third, the partners had the ability to

17   control the investment decisions because they had the authority

18   to allow or terminate a specific broker and allow a broker to

19   have discretionary investment powers with the partnerships'

20   funds.

21        The partners had no interest in the property at the

22   partnerships under current Florida law.  Florida Revised

23   Uniform Partnership Act ("Florida revised UPA") declares that a

24   partnership is a legal entity distinct from its partners.

25   Florida statute Section 620.8201(1).  "Property acquired by a

1    partnership is property of the partnership and not of the

2    partners individually," id. Section 620.8203, and "Partnership

3    property is owned by the partnership as an entity not by the

4    partners as co-owners", id. Section 620.8501.

5           In addition, the partnership agreements provide that

6    all property acquired by the partnerships would be owned by and

7    in the name of the partnership and each partner expressly

8    waived his right to require the partition of any partnership

9    property.  Partnership Agreement, Section 6.01.

10          The objecting partners did not dispute the current

11   state of the law or the text of the partnership agreements.

12   Instead, they argue that the partnerships were organized in

13   1992 under the former Florida Uniform Partnership Act ("Florida

14   UPA") and Section 620.675 of that law provided, among other

15   things, that "at the inception of an incident to the

16   partnership relationship, each partner acquires certain

17   property rights [including] his rights in specific partnership

18   property."

19          The Florida UPA was repealed by the Florida Revised

20   UPA, effective January 1, 1998, see 6 - Part 1 U.L.A. 24

21   (2001), but the objecting partners imply that the repeal did

22   not affect the rights granted under the repealed law.  Assuming

23   the former law governed the partners' rights, they still had no

24   right to the funds in the partnerships' BLMIS accounts.  Former

25   Florida statute Section 620.68 provided that subject to the

Page 33

1    Florida UPA and the partnership agreement, a partner could not

2    possess specific partnership property for non-partnership

3    purposes absent the consent of all partners.  There is no

4    evidence of such consent here.  But even if there was, it would

5    be irrelevant.  The partnership agreements provided, as noted,

6    that the partners had no right to the partnership property and

7    waived their right to partition.  Accordingly, the partner had

8    no right to possess the partnerships' BLMIS investments under

9    the prior law and certainly has no right in the specific

10   partnership property under the current law.

11         Next, the objecting partners offered no admissible

12   evidence to support their contention that BLMIS knew that they

13   had invested with the partnerships because they wanted to

14   invest with BLMIS.  Instead, the objecting partners cite to

15   their responses to the trustee's request for admissions.  The

16   responses were signed by Helen Chaitman, Esquire, the attorney

17   for the objecting partners.  And the relevant response consists

18   of multiple hearsay.  It is offered to prove that the objecting

19   partners told the managing partners who told BLMIS that the

20   objecting partners were investing in the partnerships in order

21   to invest in BLMIS.  It is noteworthy that no objecting partner

22   offered an affidavit to that effect that he told the managing

23   general partners that he was investing in the partnerships in

24   order to invest in BLMIS.  Nor did the objecting partners

25   submit an affidavit from either of the managing general

1    partners attesting to what they told representatives of BLMIS.

2         Furthermore, the partnership agreements did not

3    mention Madoff, a significant omission given that the

4    partnership agreements were dated December 11, 1992 and that

5    BLMIS trading agreements were dated December 28, 1992.  Thus,

6    the partnerships with BLMIS investors from the onset.  Nor is

7    there any documentary evidence in the form of offering

8    memoranda or partnership meeting minutes indicating that the

9    partnerships solicited partners with a promise to invest in

10   BLMIS, reviewed and/or approved BLMIS as a broker, invested

11   BLMIS with discretionary trading authority or that the

12   partnership ever informed the partners of its relationship with

13   Madoff or BLMIS until Madoff's arrest.  In fact, when Sullivan

14   informed the P&S partners that Madoff had been arrested and all

15   of the partnerships' funds had been invested with BLMIS, his

16   letter did not suggest that the partners already knew that the

17   partnership was invested with BLMIS.

18        But even if the objecting partners or some of them

19   sought to invest in the partnerships in order to invest

20   indirectly with BLMIS, they still would not be customers.  They

21   entrusted their money to the partnerships not BLMIS and they

22   dealt with the partnerships not BLMIS.  However, the

23   partnerships hold allowed customer claims and received

24   distributions.  The partners have the right under Florida's

25   partnership laws and the partnership agreements to look to the

Page 35

1   partnerships to recover at least some of their losses.

2           Lastly, although the partnership agreements authorized

3   the majority of the partners to direct the partnerships to

4   select or terminate a particular broker or arm a broker with

5   the discretionary trading authority, there is no evidence that

6   this ever occurred.  Moreover, the right belonged to 51 percent

7   of the partners acting as a majority and did not empower any

8   individual to dictate an investment, select the broker or

9   withdraw money from BLMIS.  As an individual, the partner could

10  only withdraw his investment from the partnership.  He had no

11  right or ability to control his "share" of the partnerships'

12  investments with BLMIS.

13          But even if the partners had some level of control

14  over the partnerships' investments, "that fact, standing alone,

15  would be insufficient to confer 'customer' status on appellants

16  [the partners] given that, individually, they 'made no

17  purchases, transacted no business, and had no dealings

18  whatsoever' with BLMIS."  Kruse, 708 F.3d at 427 (quoting

19  Morgan, Kennedy, 533 F.2d at 1318).

20          Accordingly, the objecting partners have failed to

21  sustain their burden of proving that they are SIPA customers of

22  BLMIS.  The Court has considered the objecting partners

23  remaining arguments and concludes that they lack merit.  Settle

24  order on notice to counsel to the objecting partners and to the

25  objecting partners that appeared pro se.

Page 36

1          Thank you.

2          MS. VANDERWAL:   Thank you, Your Honor.

3      (Whereupon these proceedings were concluded at 10:47 a.m.)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2                          I N D E X

3

4                        R U L I N G S

5    DESCRIPTION                              PAGE      LINE

6    Trustee's motion to affirm his            35        23

7    determination denying claims of claimants

8    holding interests in S&P and P&S Associates

9    Partnerships granted

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 38

C E R T I F I C A T I O N

I, Lisa Beck, certify that the foregoing transcript is a true and accurate record of the proceedings.

Lisa Beck

Digitally signed by Lisa Beck
DN: cn=Lisa Beck, o, ou,
email=digital1@veritext.com,
c=US
Date: 2015.02.26 15:10:21 -05'00'

_____

Lisa Beck (CET**D 486)

AAERT Certified Electronic Transcriber

Date: February 26, 2015

Veritext Legal Solutions

330 Old Country Rd

Suite 300

Mineola, NY 11501

[& - approval]                                                                                    Page 1

**&**

**&**   3:2,14 11:5

**0**

**08-01789**   1:3 2:2

**1**

**1**   12:17 31:25 32:20
  32:20
**10**   9:6
**10006**   3:19
**10111**   3:8
**10:03**   1:20
**10:47**   36:3
**11**   34:4
**11501**   38:24
**1314**   31:11
**1318**   35:19
**158**   5:11 11:17
**15th**   4:3
**161**   29:25
**165-68**   30:15
**1976**   31:12
**1992**   28:11 32:13
  34:4,5
**1996**   7:9
**1998**   7:10 23:23
  32:20

**2**

**2**   31:9
**2.02**   28:14
**2.02.**   29:1
**20005**   4:5
**2001**   32:21
**2008**   29:9
**2013**   31:10
**2014**   29:25
**2015**   1:19 38:12
**23**   37:6
**24**   32:20
**25**   1:19
**26**   38:12
**28**   34:5
**2nd**   31:10,11

**3**

**30**   17:1 29:9
**300**   38:23
**33**   25:15,16
**330**   38:22
**35**   37:6
**36**   5:11 25:18,19,20

**4**

**4**   12:7
**4.01.**   28:16
**40**   14:21
**422**   31:10
**426**   31:11
**427**   35:18
**45**   3:7,17
**486**   38:8

**5**

**50**   29:22
**500,000**   29:12
**51**   12:24 14:13,20
  14:24 35:6
**515**   29:25
**533**   31:11 35:19

**6**

**6**   32:20
**6.01.**   32:9
**60**   14:18
**601**   8:10
**602**   8:10
**620.675**   32:14
**620.68**   32:25
**620.8201**   31:25
**620.8203**   32:2
**620.8501.**   32:4

**7**

**708**   31:10 35:18
**75**   14:16
**78**   11:9 29:21

**8**

**8**   12:7
**8.01.**   28:20
**8.04**   29:3
**800**   4:4

**804**   15:4
**805**   4:3
**8th**   3:18

**9**

**936**   31:12
**95**   14:16

**a**

**a.m.**   36:3
**aaert**   38:9
**ability**   12:18,19,20
  14:1,2,4 21:24
  31:16 35:11
**able**   24:9
**absent**   33:3
**account**   6:11 20:20
  20:21 29:9 30:12
**accounts**   5:15 6:9
  6:18 27:21 29:6
  30:3,11 31:2 32:24
**accurate**   38:5
**acknowledged**   15:7
**acquired**   31:25 32:6
**acquires**   32:16
**act**   8:1,2,6 23:22
  31:23 32:13
**acted**   27:21
**acting**   12:25 35:7
**actual**   12:16 20:16
  22:1 23:3
**addition**   19:23 29:2
  32:5
**additional**   21:11
**address**   23:22 25:13
**addressing**   12:2
**admissible**   33:11
**admission**   16:2
  25:23
**admissions**   15:16
  15:22 22:6 25:14,16
  26:1 33:15
**admit**   16:10
**admits**   12:17,19
**adv**   1:3
**advance**   29:12
**advisors**   18:10

**affect**   32:22
**affidavit**   16:7 27:6
  33:22,25
**affirm**   2:5 5:10
  29:19 37:6
**agree**   14:4
**agreement**   7:3 8:8
  8:11 9:17 10:18
  13:12,22 14:13 15:5
  18:11 24:14,16,20
  24:23 25:4,8 29:1
  32:9 33:1
**agreements**   13:8,9
  13:11 14:16 28:12
  28:14,15,19 29:2
  32:5,11 33:5 34:2,4
  34:5,25 35:2
**ahead**   5:8 11:24
  16:20 26:4
**alleged**   9:5 29:8
  30:13
**allied**   31:9
**allow**   28:23 31:18
  31:18
**allowed**   5:17 29:10
  34:23
**amended**   23:23
  24:18 29:11
**amendment**   8:3
**amount**   15:1 29:11
**amy**   3:10 5:6
**annuity**   31:9
**anonymous**   22:20
  22:21,25
**answers**   15:15 16:2
  16:19 22:5 25:14
**appeared**   35:25
**appellants**   18:18
  19:4,20,21 35:15
**applicable**   6:1 8:8
**applied**   7:21 20:2
**applies**   7:10 8:2,3
  25:20
**apply**   20:1
**appropriate**   20:4
**approval**   14:16,17

**approved** 34:10
**approximately** 5:10
  9:4,5,6 29:22
**argue** 7:17 20:24
  32:12
**arguing** 24:6
**argument** 9:14 21:7
**arguments** 6:21,25
  11:25 35:23
**arm** 35:4
**armed** 13:1
**arrest** 10:6,7 34:13
**arrested** 34:14
**asking** 10:11 11:12
**aspect** 6:6 17:9 30:6
**asserted** 19:10
**assertion** 7:1
**assets** 25:5
**associates** 2:7 3:15
  5:14,14 27:19,19
  37:8
**assuming** 20:8
  32:22
**attached** 28:10
**attesting** 34:1
**attorney** 33:16
**attorneys** 3:3,15
**authority** 6:15
  20:14 21:25 28:17
  31:17 34:11 35:5
**authorized** 35:2
**avoids** 16:1
**aware** 10:4,9,11

        **b**

**b** 1:23
**b.r.** 29:25
**back** 8:19
**baker** 3:2 5:6
**bankr** 29:25
**bankruptcy** 1:1,15
  1:25 21:16
**based** 13:22 18:2
  21:8 29:8
**basis** 29:16
**beck** 2:25 38:4,8
**becker** 3:14 11:5
  29:21

**behalf** 5:7 11:6 22:9
**believe** 11:9 20:11
  21:20 24:15 26:6
**belonged** 35:6
**benefit** 29:12
**bernard** 1:9,12 2:3
  3:5,6
**bernstein** 1:24
**bik** 28:8,8
**blmis** 5:15,16 6:9
  6:10,11,12,19,20,20
  6:23 7:2 8:14 9:1
  9:25 10:1,2,5,9,13
  10:17,24 12:10 13:2
  13:2,14,19 15:9,12
  15:20 16:24 17:22
  19:6,18 21:12,13
  22:7,8,11,22,25
  23:1,2,11 26:20,24
  27:4,9,16,21,23,25
  29:7,17,25 30:3,5
  30:10,11,11,12,13
  30:18,19,20,21,22
  31:1,2,3,6,10,14,14
  31:16 32:24 33:8,12
  33:14,19,21,24 34:1
  34:5,6,10,10,11,13
  34:15,17,20,21,22
  35:9,12,18,22
**body** 27:14
**books** 6:12 30:13
**bowling** 1:16
**bricklayers** 31:8,9
**briefly** 26:15 30:5
**broadway** 3:17
**broker** 6:7 9:18,19
  9:19 13:1,1 15:12
  28:23,24 30:8 31:18
  31:18 34:10 35:4,4
  35:8
**broker's** 29:3
**brokers** 13:17
  28:21
**built** 7:20
**burden** 6:4,13
  10:22 30:14,17
  35:21

**business** 19:5,17
  35:17

        **c**

**c** 3:1 5:1 28:8 38:2,2
**capital** 22:13 28:14
**carry** 6:13
**case** 8:5 10:3 12:4
  12:11,12,23 17:2
  19:21 20:14 22:18
  24:17 26:6,18 27:2
  27:15
**cases** 17:4 20:25
  23:9,11,19
**cash** 6:7 30:7,17
**categorizes** 12:18
**cause** 28:22
**cert** 31:11
**certain** 21:7 32:16
**certainly** 33:9
**certified** 38:9
**certify** 38:4
**cet** 38:8
**chaitman** 15:17,21
  15:23,25 16:5 25:23
  33:16
**change** 7:13 14:14
  24:19
**changed** 7:9
**characterizes** 14:5
**cheema** 28:8
**cheema's** 11:7
**cir** 31:10,11
**circuit** 5:23 9:12,23
  17:20 18:6,15,16
  19:9,11,15,19,25
  20:5,13 30:2
**circuit's** 5:24
**cite** 33:14
**cited** 18:7 23:25
**cites** 18:16,24 20:18
  20:24 25:15
**civil** 15:24
**claim** 8:25 9:3,5
  29:18
**claimant** 30:14
**claimants** 2:6 3:15
  5:13,20 6:9,13,17

8:14,20 9:15 10:9
  10:22 11:6,9 12:13
  12:15 17:23 20:24
  20:25 21:11,21 37:7
**claims** 2:6 5:11,16
  5:17,21 11:18 12:7
  20:23 29:8,10,16,16
  29:20 34:23 37:7
**clearly** 8:9,11 26:7
**clients** 13:21 19:23
**collective** 14:7,10
  22:2
**collectively** 23:5
  27:20
**coming** 23:12
**commencement**
  29:7
**communications**
  30:23
**complete** 18:13
**completely** 7:2
**conceded** 6:17
**concerns** 27:23
**concluded** 18:1
  36:3
**concludes** 35:23
**conditional** 12:18
**conduct** 16:22
**confer** 19:3 35:15
**connection** 20:22
**consent** 9:18 33:3,4
**consider** 21:13
**considered** 25:15
  35:22
**consistent** 5:21
**consists** 33:17
**consolidated** 3:4
**contact** 21:12
**contend** 31:7
**contention** 33:12
**context** 19:20 20:2
  21:6
**contexts** 21:7
**continue** 5:18
**contract** 24:12
**contrary** 19:10

**contributions** 8:14
22:13 23:12 28:15
31:3
**control** 6:24 9:16
9:20,24 12:16 14:6
14:8,17,19,24,25
15:1 17:17,19,25
18:4,13,19 20:5,8
20:15,17,25 21:17
21:20,25 22:2 23:16
23:18 26:21,23
28:18 30:12 31:17
35:11,13
**controlling** 31:8
**convenience** 28:4
**conversations**
26:23
**corporation** 1:6 2:2
4:2
**correct** 13:13
**counsel** 26:6 35:24
**country** 38:22
**court** 1:1,15 5:2,5,8
5:22,22 7:6,12,16
7:22,24 8:1,5,20 9:2
9:8,22 10:3,11,17
10:20 11:2,4,9,11
11:17,19,21,24
12:22 13:5,7,11,15
13:24 14:3,10,18,21
14:24 15:3,6,11,14
15:17 16:1,5,7,10
16:16,20 17:2,6,13
17:16,24 18:1,22,25
19:2,7,11,14 20:7
20:12,15 21:5,10,13
21:14,15,16,18
22:10,16,19,21,25
23:8,20 24:3,10,13
24:16,20,25 25:3,8
25:15,18,21 26:3,10
26:13,22,25 27:1,6
27:12,17,19 30:1,1
30:2 35:22
**court's** 20:19,21
**craftsman** 31:9

**critical** 6:6 30:6
**current** 7:10 31:22
32:10 33:10
**customer** 6:2,6,22
9:25 12:3,3,5,13,15
17:24 19:4 21:4
22:18 27:15,23 29:8
29:13,15 30:2,5,6,9
30:13,15 34:23
35:15
**customers** 5:16,21
6:3,4,12,14 9:7 21:1
23:7,18 27:3 29:17
34:20 35:21

**d**

**d** 5:1 28:16 37:2
38:8
**daprex** 20:24 21:19
21:21
**date** 9:7 38:12
**dated** 29:9 34:4,5
**day** 28:18,18
**days** 17:1
**dc** 4:5
**deal** 12:16 20:25
**dealer** 30:8
**dealings** 10:1 19:5
19:17 35:17
**dealt** 12:8 34:22
**debtor** 1:13
**debts** 25:10
**december** 34:4,5
**decided** 21:9
**decision** 5:24 9:12
9:22 17:20 18:7,14
18:15,17 19:9,25,25
20:19,21,22 21:2,9
21:19,22 31:15
**decisions** 5:22 6:1
6:24 9:16 12:6
17:19 18:1 20:24
23:16 26:16 30:1
31:8,17
**declaration** 11:7
**declarations** 28:8
28:10

**declares** 31:23
**declined** 21:13
**deemed** 16:2,10
23:7 25:23
**defendant** 1:10
**definition** 6:6 30:7
**demonstrate** 6:14
9:15 10:22 18:18
**demonstrates** 24:1
**demonstrating** 6:5
9:23
**denial** 5:20 20:23
**denials** 26:1
**denied** 31:11
**deny** 7:13
**denying** 2:6 37:7
**deposit** 30:20
**deposits** 30:25
**derived** 28:8
**description** 37:5
**deserving** 6:5
**determination** 5:10
12:6 21:4 37:7
**determinations** 2:5
29:19
**determine** 21:16
**determining** 17:23
**dicta** 19:24
**dictate** 35:8
**different** 12:4,9
17:18 18:5 19:22,23
20:2,8 23:6 25:25
**direct** 10:1 17:18
30:9,19 35:3
**directed** 8:23
**directly** 5:13 6:19
8:8 10:2 21:13
26:17 27:24,25 28:5
30:4,11
**disagree** 14:6
**disallowance** 29:19
**disallowed** 29:16
**disclosed** 10:5
**discovery** 6:16
10:15 16:15
**discretionary** 9:19
13:1 28:24 31:19

34:11 35:5
**discussions** 13:23
**dispute** 28:7 32:10
**dissolution** 25:9
**distilled** 5:25
**distinct** 31:24
**distinguishable**
12:12 17:5 23:19
31:12
**distributed** 9:2 25:6
**distributions** 5:18
5:19 9:7 29:13
34:24
**district** 1:2 5:22
20:19 30:1
**documentary** 34:7
**documents** 20:12
28:10 30:22
**dollar** 29:12
**due** 7:16,20

**e**

**e** 1:23,23 3:1,1,10
5:1,1 28:8,8,9,9
37:2 38:2
**earlier** 12:6 26:16
**effect** 16:2 33:22
**effective** 32:20
**effort** 22:2
**eight** 29:18
**either** 14:14 15:25
29:11 33:25
**electronic** 38:9
**elicited** 29:20
**emphasized** 17:24
**employee** 21:23
**empower** 35:7
**engagement** 29:4
**entire** 29:24
**entities** 17:21 26:19
28:1 30:4
**entity** 9:12 13:3
31:24 32:3
**entrust** 6:10 30:17
31:5,15
**entrusted** 10:23,23
34:21

**entrusting** 6:7
**entrustment** 30:7
**equity** 9:3 25:10
**erisa** 20:20,21 21:2
   21:3,4,8,9,15
**esq** 3:10,11,21 4:7
**esquire** 33:16
**essential** 27:14
**essentially** 27:21
**establish** 9:25
**estate** 3:6 5:19
**evaluate** 15:9
**evaluated** 21:6
**evidence** 6:15 10:3
   12:22,24 13:17
   15:11,14,17,20 16:3
   16:11,17 20:9 21:11
   26:1,22,24 27:1
   31:3 33:4,12 34:7
   35:5
**examining** 12:14
**example** 8:10 14:12
   28:21
**exclusive** 28:17
**exercise** 20:15,16
   26:22
**exercised** 18:19
   20:9,10
**exerted** 6:24 9:15
**exhibit** 11:7
**existed** 7:25
**expectation** 23:17
   24:1
**expectations** 23:6
**expressly** 32:7

**f**

**f** 1:23 38:2
**f.2d** 31:11 35:19
**f.3d** 31:10 35:18
**fact** 18:20 19:24
   21:9 22:8 23:18,21
   25:22 31:5 34:13
   35:14
**factor** 22:17 27:14
**factors** 12:14 21:5,6
   21:8 22:4

**facts** 12:4 28:7
**factual** 16:14,16,17
   21:10
**fail** 6:25
**failed** 6:13 10:22
   30:16 35:20
**farther** 8:24
**february** 1:19 38:12
**federal** 15:23
**feeder** 9:10,11,22
   12:8 17:2,4,19,20
   17:25 18:2,4,17,19
   19:21 20:3,14 23:8
   23:9,10,19 27:22
**fifty** 14:25 15:1
   29:18
**filed** 5:16 11:13
   29:8,15
**finally** 6:8 30:14
**financial** 30:9,19
**finding** 22:18
**fired** 12:25
**firm** 29:21
**firms** 11:22
**first** 6:1,22 7:1,15
   7:17 17:20 19:8
   21:2 31:12
**floor** 3:18
**florida** 5:14 7:4
   23:2,22 27:20 31:13
   31:22,22,23,25
   32:13,13,19,19,25
   33:1
**florida's** 34:24
**focus** 12:2
**following** 29:7
**foregoing** 38:4
**form** 34:7
**formed** 24:2 28:11
**former** 32:13,23,24
**forth** 9:14 11:25
**forty** 14:22
**forward** 16:15
**four** 26:16
**fund** 9:10,11,22
   10:13 12:8 17:2,4
   17:19,20 18:2,17

   19:21 20:14 23:9,9
   23:19 29:14 31:9
**funded** 28:14 31:2
**funds** 6:10,23 7:2,4
   7:13 8:13 9:21
   10:23,23 17:22 18:1
   18:4,20 20:3 23:5
   23:10,12 27:15,22
   27:22 28:2,25 30:10
   31:16,20 32:24
   34:15
**furthermore** 16:21
   34:2

**g**

**g** 5:1 37:4
**general** 3:15 15:18
   18:8 22:11 27:20,23
   28:1,17,20 33:23,25
**generally** 24:12
**generations** 8:21
**give** 26:8
**given** 15:8 19:4
   23:4,7,18 34:3
   35:16
**giving** 16:7
**go** 5:8 11:24 16:15
   16:20 26:4
**going** 12:1 15:18
   25:9 27:8
**good** 5:4,5 11:3,4
**gorchkova** 3:21
   11:3,5,5,10,15,18
   11:20,22,25 13:2,6
   13:10,13,20,25 14:5
   14:12,19,22,25 15:4
   15:7,13,15,21 16:4
   16:6,9,13,18,21
   17:4,9,15,17 18:24
   19:1,3,8,13,16
   20:11 22:15,17,24
   23:3,14,21 24:8,11
   24:15,18,23 25:2,4
   25:12,19 26:2
**governed** 24:12
   28:11 32:23
**governing** 20:12

**grant** 9:19 22:11
   28:24
**granted** 6:3 11:1
   24:4 32:22 37:9
**great** 12:16
**greater** 14:22,25
   20:25 23:16
**greatest** 14:8 15:1
**green** 1:16 20:19
**greg** 28:16
**group** 29:24

**h**

**h** 3:3 28:8
**half** 11:12
**happen** 25:9
**happened** 17:12
**happy** 16:24
**hearing** 2:5
**hearsay** 13:24
   33:18
**heavily** 20:18
**hedge** 17:22
**held** 7:6 9:23 18:17
**helen** 33:16
**hire** 18:9
**hold** 6:9 34:23
**holders** 30:12
**holding** 2:6 19:9,12
   37:8
**hon** 1:24
**honor** 5:4 11:3 15:7
   16:14 20:20 26:5,14
   26:15,21 36:2
**hostetler** 3:2 5:6
**hundred** 11:11
   29:18

**i**

**identical** 28:12
**identification** 30:13
**identified** 11:6 12:7
   27:14
**identify** 22:22
**identifying** 31:4
**identities** 23:4
**identity** 23:3

**immaterial** 18:14
**impact** 21:8
**imply** 32:21
**important** 14:1
  24:1
**inception** 32:15
**incident** 32:15
**include** 30:9
**including** 20:23
  31:8 32:17
**indicating** 34:8
**indicia** 30:9
**indirect** 8:22,23
**indirectly** 5:13 28:1
  28:5 34:20
**indiscernible** 7:11
  8:5 16:17 26:4,16
**individual** 21:10,16
  24:21 35:8,9
**individually** 19:4
  32:2 35:16
**information** 10:15
**informed** 34:12,14
**initial** 28:14
**instance** 10:11
  14:15 21:11
**insufficient** 18:21
  19:3 35:15
**interact** 6:20
**interest** 8:15,18
  14:14 28:22 30:10
  31:13,21
**interests** 2:6 37:8
**interim** 29:12
**interpreted** 6:2
  30:6
**invest** 6:19 9:13,18
  18:1 21:24 28:12
  33:14,21,24 34:9,19
  34:19
**invested** 5:13 6:23
  7:2,5 8:23,24,25
  9:12,13 10:2,24
  12:16 13:3,14 16:23
  17:21,21,22 22:1,9
  23:5 26:19,19 27:5
  27:8,16,24,25 28:2

28:5 30:4,4,11,18
  30:19 31:14 33:13
  34:10,15,17
**investing** 10:13,13
  22:7 23:1,2 27:22
  33:20,23
**investment** 1:9 2:3
  3:5 6:24 9:16,20
  14:8,11 15:9 16:23
  18:10,14 23:16
  28:24,25 30:21
  31:17,19 35:8,10
**investments** 9:24,24
  12:21 14:14,15
  18:20 22:12 30:12
  33:8 35:12,14
**investor** 1:6 2:2 4:2
  14:9
**investors** 9:10,11
  9:11 10:9 12:8
  17:21,23,25 18:3,9
  19:21 34:6
**involve** 23:9
**involving** 12:6
**irrelevant** 33:5
**irrespective** 14:2
**irving** 3:3
**issue** 6:2 16:14,16
  21:3 25:13,25
**issues** 12:20 21:10
  21:14,17

**j**

**jacqueline** 20:19
**january** 32:20
**jorian** 3:11
**judge** 1:25
**julie** 3:21 11:5

**k**

**kelley** 4:7 26:5,5,11
  26:14
**kennedy** 5:24 12:14
  19:12,12,14,18 21:5
  22:5,19 26:17 31:11
  35:19
**knew** 15:11 22:10
  22:11 23:1 31:1,4

31:14 33:12 34:16
**know** 7:24 9:2
  12:23 13:7,21 22:12
  23:8 24:9 27:7
**knowledge** 13:2,22
  19:13 22:24 24:18
**known** 6:10 23:11
**kruse** 9:23 18:17
  19:15 31:8 35:18

**l**

**l** 1:9,12 2:3 3:5,6,11
  37:4
**lack** 35:23
**language** 7:3 18:15
**lastly** 35:2
**law** 7:4,6,9,10,13,18
  7:20,21 8:2,3,8 24:3
  24:5,6,10,12,12,19
  27:15 29:21 31:13
  31:22 32:11,14,22
  32:23 33:9,10
**laws** 34:25
**legal** 14:3 26:18
  31:24 38:21
**legally** 22:16
**letter** 10:6 34:16
**level** 7:18,19 9:24
  14:6,8 17:17,18,25
  18:19 20:5 21:17
  23:6 35:13
**light** 18:14 24:19
**limited** 9:20 12:20
  14:6 21:2 23:9
**line** 37:5
**liquidation** 1:3 3:4
  29:7
**lisa** 2:25 38:4,8
**llc** 1:9 3:5
**llp** 3:2,14 29:22
**local** 31:9
**longer** 23:23 24:7
**look** 8:1 15:1 18:5
  20:12,15 21:5 34:25
**looked** 17:20 20:13
  22:19
**looking** 15:2 20:16

**looks** 22:5
**losses** 35:1

**m**

**m** 1:24 28:8
**madoff** 1:9,12 2:3
  3:5,6 5:2 9:13,13
  10:5,17 34:3,13,14
**madoff's** 10:6,6
  34:13
**maintain** 14:15
  28:19
**maintained** 15:9
  16:23 29:6,14 31:3
**majority** 9:18,21
  12:24,25 14:3,23
  15:2 28:21,23 35:3
  35:7
**manage** 28:18
**managing** 15:19,19
  22:7 26:23 27:7
  28:17 33:19,22,25
**market** 28:13
**material** 12:13
**materially** 19:22
**materials** 18:2
**matters** 1:5
**mean** 7:8 14:10
  22:14
**meaning** 29:17
**meaningful** 9:16
**meet** 10:22
**meeting** 34:8
**meetings** 13:15 15:5
  15:8 29:5
**memoranda** 10:12
  18:3 34:8
**memorandum** 18:6
  18:8 20:13
**mention** 34:3
**mentioned** 10:18
  17:7 26:16
**merely** 8:14 9:17
**merit** 35:23
**michael** 28:16
**million** 9:5,6
**mineola** 38:24

**minutes** 13:17,20
34:8
**money** 12:16 17:7
21:24,25 22:8 27:8
30:20,21 34:21 35:9
**months** 17:12
**morgan** 5:24 12:14
19:12,14,18 21:5
22:5,19 26:17 31:10
35:19
**morning** 5:4,5,9
11:3,4
**motion** 2:5 5:10,12
11:1,8,14,16 12:8
20:22 27:23 28:10
29:19,20,23 37:6
**motions** 26:17
**multiple** 33:18

**n**

**n** 3:1 5:1 28:9 37:2
37:4 38:2
**n.w.** 4:3
**name** 6:9 32:7
**names** 5:15 6:18
30:22,25
**narrowly** 6:2 30:6
**nathanael** 4:7 26:5
**nearly** 28:11
**necessarily** 24:8
**need** 15:24
**needs** 20:12
**net** 9:3
**never** 20:9 27:24
**nevertheless** 28:20
31:7
**new** 1:2,17,17 3:8
3:19 24:3,10
**non** 33:2
**noted** 28:7 29:6
33:5
**noteworthy** 33:21
**notice** 17:1 35:24
**notwithstanding**
6:21
**november** 29:9
**numerous** 21:6
29:15

**ny** 3:8,19 38:24

**o**

**o** 1:23 5:1 38:2
**objected** 29:18
**objecting** 5:20 11:6
29:22,24 30:16 31:7
32:10,21 33:11,14
33:17,18,20,21,24
34:18 35:20,22,24
35:25
**objection** 5:11
**objections** 5:11
11:13
**obtained** 13:22
**occurred** 12:22
19:7 35:6
**offer** 26:9
**offered** 33:11,18,22
**offering** 10:12 34:7
**okay** 9:8 10:17,20
11:11,17,21,24,25
15:3 16:20 17:16
23:20 24:13 25:3
26:3
**old** 8:5 24:5,6 38:22
**omission** 34:3
**onset** 34:6
**operations** 28:18
**opinions** 12:3,3,5
12:13,15
**opportunity** 15:8
16:25 26:8
**opposed** 20:16
**opposite** 18:10
**opposition** 11:7
12:1 26:4
**opt** 24:9,10,14
**order** 33:20,24
34:19 35:24
**organized** 32:12
**outside** 20:2
**overcome** 8:4
**owned** 6:22 7:5
8:12 9:21 23:24
27:15 32:3,6
**owners** 32:4

**ownership** 7:1,19
9:10 23:23 24:21,24
**owning** 8:13
**owns** 8:9

**p**

**p** 3:1,1 5:1
**p&s** 2:6 3:15 5:14
12:23 27:19 34:14
37:8
**page** 12:17 30:15
37:5
**pages** 12:7
**paid** 25:10,10
**papers** 10:8 12:1,8
18:16
**part** 32:20
**partake** 25:1
**participants** 12:9
20:23 21:4,22,23
22:20
**particular** 8:18
22:18 23:15 25:24
35:4
**partition** 32:8 33:7
**partner** 18:8 22:7
27:7 31:15 32:7,16
33:1,7,21 35:9
**partner's** 24:22
**partners** 8:12 10:5
12:10,12,15,19,21
12:25 13:16,23 14:3
15:2,8,19,19,19
16:22 17:17 18:13
20:14 21:1,20 22:1
22:6,13,23 23:1,4,6
23:13,15,25 24:2,5
24:9,25 26:23 27:24
28:2,6,15,17,20,22
29:3,15,17,18,20,21
29:23,24 30:16 31:2
31:4,5,7,13,16,21
31:24 32:2,4,10,21
32:23 33:3,6,11,14
33:17,19,19,20,23
33:24 34:1,9,12,14
34:16,18,24 35:3,7
35:13,16,20,22,24

35:25
**partnership** 3:16
7:3,4,7,7,10 8:6,8
8:11,12,15,15,16,17
8:18,24 9:17,22
10:13,18 12:21 13:8
13:12,21 14:13,13
14:15 15:4 16:25
17:8 22:6 23:5,10
23:22,24 24:2,11,14
24:16,20,23 25:4,5
25:6,8 27:9,22
28:12,13,15,18,19
28:19,22,25 29:2,4
31:14,23,24 32:1,1
32:2,3,5,7,8,9,11,13
32:16,17 33:1,2,2,5
33:6,10 34:2,4,8,12
34:17,25,25 35:2,10
**partnerships** 2:7
5:14,15,16 6:25 7:5
7:5,11,23 8:3,4,9
9:3 10:5 12:11,17
13:3,6,14,16 15:12
18:11 22:7,9,12
23:2,11 27:20,21,24
28:1,2,3,5,11,25
29:6,10 30:18,24
31:1,2,19,22 32:6
32:12,24 33:8,13,20
33:23 34:6,9,15,19
34:21,22,23 35:1,3
35:11,14 37:9
**pause** 5:3
**payment** 29:11
**payments** 21:13
**pension** 12:9 21:22
21:23
**people** 26:19 27:5
**percent** 12:24 14:13
14:16,16,18,19,20
14:21,22 29:22 35:6
**period** 7:21
**persons** 30:3
**picard** 3:3
**placed** 28:13

**placement**  18:3,6,8
  20:13
**plain**  7:3
**plaintiff**  1:7
**plan**  12:9 20:23
  21:4 22:1,20
**plans**  21:23
**plaza**  3:7
**please**  5:2
**point**  20:5 23:14
  25:12
**poliakoff**  3:14 11:5
  29:21
**portion**  19:9,24
**position**  8:7 18:12
  19:22,23 24:3 25:7
  27:2,10
**possess**  33:2,8
**powell**  28:16 30:24
**power**  9:20
**powers**  13:1 28:24
  31:19
**precisely**  18:10
**present**  17:19
**primarily**  12:2
**principal**  6:21
**principles**  5:25
**prior**  5:22 7:6,18
  10:6 12:3 33:9
**priority**  6:3
**private**  18:3,6,8
  20:13
**pro**  11:12,19,20
  35:25
**probably**  20:20
  22:13
**problem**  25:21
**proc**  1:3
**procedure**  15:24
**proceedings**  5:17
  5:23 36:3 38:5
**process**  7:16,20
**produced**  30:23
**profits**  8:16
**promise**  34:9
**proof**  30:17

**properties**  23:24
**property**  7:7,12,14
  7:19 8:9,11,19,25
  23:24 24:4,21,22,24
  25:1 28:19 30:10
  31:14,21,25 32:1,3
  32:6,9,17,18 33:2,6
  33:10
**propounded**  6:17
**protection**  1:6 2:2
  4:2
**prove**  33:18
**provide**  32:5
**provided**  6:14,16
  15:5 32:14,25 33:5
**provides**  7:4 8:11
  9:17 23:23
**proving**  35:21
**provision**  8:2,4,6
  9:16 12:24
**purchases**  19:5,17
  35:17
**purported**  6:4
  27:15
**purpose**  6:8 10:25
  28:12
**purposes**  30:8 33:3
**put**  9:14

**q**

**quarterly**  13:15
  15:5,8 29:4
**question**  20:8
**questionable**  7:18
**questions**  26:12,13
**quote**  19:2,14,18
**quoted**  18:7
**quoting**  19:11,15
  35:18

**r**

**r**  1:23 3:1 5:1 37:4
  38:2
**raise**  16:17
**raised**  25:13
**rd**  38:22
**readily**  12:12

**really**  11:12 26:1
**reason**  17:13,14
  23:25
**reasons**  31:12
**receive**  5:18 6:11
  8:17,18 11:23 30:21
**received**  5:12,18
  8:16 9:6,7 10:16
  11:16 29:11 34:23
**recognized**  23:17
  26:21
**recognizes**  16:14
**record**  38:5
**records**  6:12 22:22
  30:14 31:4
**recover**  35:1
**refer**  28:4 29:23
**referring**  12:5 20:6
**regarding**  18:14
**regular**  29:4
**rehash**  12:1
**relate**  5:11
**related**  21:14
**relates**  9:21
**relating**  12:20
  20:22 30:2
**relationship**  10:4
  12:10 13:18 30:10
  30:20 32:16 34:12
**relationships**  13:17
**relevant**  20:10
  26:18 33:17
**relies**  20:18
**rely**  9:17
**remaining**  35:23
**remains**  31:5
**removed**  8:21,25
**repeal**  8:3 32:21
**repealed**  24:4,6
  32:19,22
**repeat**  26:7
**reply**  12:18 18:12
  18:16
**representatives**
  34:1
**represented**  11:22
  29:21

**request**  10:25 25:24
  33:15
**requested**  10:14
**requests**  15:15,22
  22:5 25:14,16
**require**  14:16 32:8
**required**  9:18 14:14
  14:17
**respect**  9:9,14 21:19
  25:13
**respond**  11:13 26:8
  29:23
**responder**  25:25
**response**  11:15
  16:11,11 25:16
  29:20 33:17
**responses**  6:16
  25:22,22 33:15,16
**result**  16:24
**retain**  23:15
**retained**  18:13
**review**  13:16 18:2
  29:3
**reviewed**  13:18
  30:1 34:10
**revised**  8:1,2 31:22
  31:23 32:19
**right**  7:13 10:8
  13:25 14:24 15:6,22
  17:6,7,8,10,11,14
  18:9 20:7 25:19,19
  27:17 32:8,24 33:6
  33:7,8,9 34:24 35:6
  35:11
**rights**  7:14,18 24:4
  24:4,22 32:17,17,22
  32:23
**rockefeller**  3:7
**rollover**  20:19
  21:24
**rose**  3:11 7:19
**rule**  9:21 25:15,16
  25:18,19,20
**rules**  15:23

**s**

s  3:1 4:7 5:1 37:4
s&p  2:6 5:14 12:23
    27:19 37:8
s.d.n.y.  29:25
sake  28:4
satisfied  17:11,23
satisfy  27:13
saw  10:6
saying  24:13 25:16
    25:25
says  8:2 19:20 25:5
    25:8
se  11:12,20 35:25
seated  5:2
second  5:23,23 6:4
    6:23 9:10,12,14,23
    17:20 18:6,15,16
    19:9,11,15,19,25
    20:5,13 30:2 31:14
section  8:10 15:4
    28:14,15,20 29:1,2
    31:25 32:2,4,9,14
    32:25
securities  1:6,9 2:2
    2:3 3:5 4:2 6:7,8
    10:25 28:13 30:7,8
    30:11,17
see  26:11 32:20
seek  25:1
seeking  6:22
seeks  29:19
seen  13:20
sehgal  28:9,9
select  35:4,8
selected  12:25
    28:23,24
selection  28:21
separate  26:18
served  28:16
ses  11:19
set  8:9 11:25
settle  35:23
settled  6:15
share  35:11
shares  25:6

short  9:9
show  30:23
showing  21:12
    30:14
shown  6:12
signed  13:7,7,9,11
    13:12 15:18,23,24
    15:25 25:23 33:16
significant  19:22
    22:16 34:3
significantly  21:21
similarly  21:19
sipa  1:3 3:4 5:21 6:1
    29:7,18 30:5 35:21
sipc  20:19 26:3,5,9
    29:12,25 31:10
situation  14:7 17:5
    18:5,11 23:15
six  26:16
sixty  14:19
slightly  20:7
smb  1:3 2:2
sole  18:9
solely  21:3
solicited  34:9
solutions  38:21
somebody  27:7
sorry  8:10 13:10
sought  34:19
sounds  13:24
southern  1:2
specific  28:23 31:13
    31:18 32:17 33:2,9
specifically  6:8
    21:10,15
speculate  20:4
standing  18:20
    35:14
start  13:6
starting  19:16
state  12:5 32:11
stated  18:8,16 22:5
    26:6 29:3
statement  19:19
    20:2
statements  6:11
    29:9 30:21,22

states  1:1,15
status  6:5,22 9:25
    17:24 19:4 21:4
    22:18 27:23 30:2,5
    30:9 35:15
statute  31:25 32:25
steering  9:24
street  4:3
stuart  1:24
subject  9:20 32:25
submit  10:21 19:8
    21:2 33:25
submitted  10:8
    13:20 21:11 26:22
    28:9
substantively  3:4
sufficient  9:25
    16:19 27:11
suggest  10:9,15
    20:1 34:16
suite  4:4 38:23
sullivan  22:8 28:16
    30:24 34:13
sum  10:21
summarize  30:5
support  26:10,11
    33:12
supports  22:18
suppose  27:1
supposed  13:16
supposedly  13:15
supreme  8:5
sure  17:7 24:25
surmised  31:1
sustain  30:16 35:21
sworn  25:17,20

**t**

t  28:9 38:2,2
take  16:15 24:3
takes  18:12
talk  24:24
talking  18:18
tax  30:22
tell  9:4
tenants  7:7
terminate  18:9
    28:23 31:18 35:4

termination  25:5,10
terms  21:7 22:4
    26:21,22,23
testify  15:18,20,21
text  32:11
thank  11:2 26:2,13
    26:14 27:17,18 36:1
    36:2
theirs  10:24
thereunder  6:4,5
thing  14:1 26:25
things  6:18 17:24
    21:2 32:15
think  7:12 8:5
    13:25 14:7 16:18
    19:24 20:4,11 22:15
    22:17 23:4,25 24:8
    24:11 25:9 26:3
third  6:6 31:16
thought  8:20
three  17:12 31:12
time  21:16 26:25
times  13:13
today  6:1
told  15:19,20 22:8
    27:7,8 33:19,19,22
    34:1
trading  6:8 10:25
    13:1,8,11 30:8 34:5
    34:11 35:5
transacted  19:5,17
    35:17
transcribed  2:25
transcriber  38:9
transcript  38:4
transferred  15:10
treatment  6:3
true  17:2 23:10
    38:4
trust  8:23
trustee  3:3 5:7 6:17
    12:17 14:5 16:13,15
    18:12 19:10 20:18
    24:5 25:13,15 29:8
    29:10,14,16 30:23
trustee's  2:5,5 5:10
    5:12,20 11:1,8 12:6

12:8 20:22 26:6,17
27:2 33:15 37:6
**turn**  23:2 26:19
30:4,18
**turned**  16:21
**two**  5:13 6:21 7:21
9:3,5 13:8,12 17:21
20:24 21:2 23:2
**types**  28:13

**u**

**u**  37:4
**u.l.a.**  32:20
**u.s.**  1:25 31:12
**umm**  16:4
**understand**  16:1
25:21
**uniform**  8:6 31:23
32:13
**united**  1:1,15
**untrue**  7:2
**upa**  31:23 32:14,19
32:20 33:1
**use**  25:25

**v**

**v**  1:8 2:2 20:19 28:9
29:25 31:8,10
**value**  8:17
**vanderwal**  3:10 5:4
5:6,6,9 7:9,15,17,23
7:25 8:7,22 9:4,9
10:8,14,19,21 26:15
27:4,10,13,18 36:2
**various**  18:2
**veritext**  38:21
**vineet**  28:9
**violation**  7:16
**vote**  12:20 16:22
17:11

**w**

**waived**  32:8 33:7
**want**  26:7
**wanted**  16:22 26:9
33:13
**washington**  4:5
**way**  12:14

**weeks**  13:8,12
**went**  30:24
**whatsoever**  19:6,18
35:18
**withdraw**  8:17 9:19
16:25 17:6,7,10,11
17:13 21:24 30:21
35:9,10
**withdrawals**  6:19
30:25
**words**  11:13 12:23
24:5

**x**

**x**  1:4,11,14 37:2

**y**

**yeah**  7:22
**year**  7:21
**yielded**  18:3
**york**  1:2,17,17 3:8
3:19