BECKER & POLIAKOFF LLP
Helen Davis Chaitman (4266)
45 Broadway
New York, NY 10006
(212) 599-3322
hchaitman@bplegal.com

*Attorneys for customers set forth
On Exhibit A to the Chaitman Declaration*

Hearing Date: April 29, 2015
Hearing Time: 10 AM (EST)
Objection Deadline: March 18, 2015

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br>SECURITIES INVESTOR PROTECTION CORPORATION,<br>　　　　Plaintiff-Applicant,<br>　　　　v.<br>BERNARD L. MADOFF INVESTMENT SE-CURITIES LLC,<br>　　　　Defendant. | Adv. Pro. No. 08-01789 (BRL)<br>SIPA Liquidation<br>(Substantively Consolidated) |
| In re:<br>BERNARD L. MADOFF,<br>　　　　Debtor. | |

**OBJECTION TO THE TRUSTEE'S MOTION FOR ORDER ESTABLISHING
SCHEDULE FOR LIMITED DISCOVERY AND
<u>BRIEFING ON PROFIT WITHDRAWAL ISSUE</u>**

{N0072203 }

The BLMIS customers listed on Exhibit A to the accompanying Declaration of Helen Davis Chaitman, Esq. ("Chaitman Decl.") (the "Objectors"), by and through their undersigned counsel, submit this objection to the Trustee's motion for an Order (a) establishing a schedule for limited discovery and briefing on the profit withdrawal issue (the "Profit Withdrawal Issue") and (b) setting a hearing date to adjudicate the Trustee's treatment of profit withdrawal transactions.

## PRELIMINARY STATEMENT

1.   More than six years after his appointment, the Trustee has finally admitted that he probably mis-calculated net equity for almost all Madoff customers whose accounts were traced back to accounts that existed earlier than 1998.  During the 1990's, but ending (so far as we can see) in 1997, Madoff account statements had entries such as "CHECK BELLSOUTH" and then a debit notation "PW," purportedly standing for profit withdrawal.  In calculating net equity, in order to reduce the amount that SIPC would have to pay to customers, Picard treated every "PW" as a check sent to the customer.  However, he had no evidence that checks through 1997 went sent to customers.

2.   As demonstrated by the declaration of Aaron Blecker, Blecker never requested a single withdrawal from Madoff and he never received a single withdrawal from Madoff.  *See In re BLMIS*, Case No. 08-01789 (SMB) (Bankr. S.D.N.Y. March 20, 2014), ECF No. 6761, Blecker Decl. ¶ 4.  Yet, Picard denied Blecker SIPC insurance based upon his contention -- with no basis in fact -- that Blecker's deposits had to be reduced by the total of the "PW" entries in his statements.  Picard has no documentary evidence to support his contention that Blecker received checks from Madoff in the amount of each "PW" entry.  We asked for, and he failed to produce, a single cancelled check showing that Blecker deposited a "PW" check into his bank account.  Similarly,

{N0072203 }                                    2

Picard failed to produce a single document indicating that Blecker ever requested a single withdrawal from Madoff. Thus, the Court should order Picard to pay Blecker SIPC insurance based upon his investments in Madoff because he never took a single withdrawal. Yet, Picard continues to deny this 104-year-old Madoff victim of the SIPC insurance to which he is absolutely entitled.

3. Now, while continuing to wrongfully deny Blecker any SIPC insurance, Picard is seeking an order from this Court that in every claw back action he is entitled to prove the customer received the "PW" amounts, not based on evidence, but rather based upon an "expert's" opinion that his review of Madoff's records from 1998 on -- that is, from the year when there were no more "PW" entries on Madoff customer statements -- demonstrated that, whenever a statement indicated a check was sent to the customer, Madoff's records confirm that a check was sent to a customer.

4. Picard's proposal is outrageous and should be denied by this Court for the following reasons: First, it is black letter law that you cannot prove a fact through expert testimony. In every claw back case, Picard has the burden of proving that every transfer he claims reduced the customer's net equity was actually a transfer to that customer or to the customer's transferor account. If he fails in that proof, he fails to recover from that defendant. He cannot buttress his lack of evidence with the testimony of an "expert" and, moreover, an "expert" who is opining about a period subsequent to the "PW" entries on customer account statements.

5. With respect to almost all of Becker & Poliakoff's clients, there has not yet been any discovery because the defendants have not yet answered the complaints. Nevertheless, by his motion, Picard is admitting that he has no documentary evidence to prove that the "PW" entries represent checks received by the customers. Thus, the

{N0072203 }                                                  3

Court should allow the claw back defendants to cross-move to dismiss these claims on this basis.

6.    This is an issue of such fundamental importance to this proceeding that the Court should appoint a special investigator to determine whether Picard has breached his fiduciary duty to customers by wrongfully denying them SIPC insurance. Picard, who represented to the Second Circuit that Madoff's account statements were totally incredible, is now relying solely upon an unexplained entry on the statements to deny SIPC insurance to Blecker -- a 104-year-old victim of Madoff's fraud and of Picard's total breach of his fiduciary duty.

7.    In any event, the motion should be denied because the Trustee is contradicting the precise position he took on his inter-account transfer motion -- which the Court accepted -- that factual issues specific to particular BLMIS accounts must be resolved individually. *See In re BLMIS*, Case No. 08-01789 (SMB) (Bankr. S.D.N.Y. March 20, 2014), ECF No. 5947, Tr. Reply. Br. ¶ 3.

## FACTUAL BACKGROUND

8.    After the Court denied any relief to Aaron Blecker in resolving the inter-account transfer issue, Blecker served discovery demands on the Trustee to determine precisely what evidence the Trustee had to support his contention that, despite the fact that, in over 20 years, Blecker never asked for a withdrawal from his Madoff account, Blecker received checks for each "PW" entry on his statements. See Chaitman Decl. Ex. B (Document Demands); Ex. C (Interrogatories). The Trustee served totally evasive responses demonstrating that he has no evidence whatsoever. *Id*. Ex. D (Trustee's Re-

{N0072203 }    4

sponses to Document Demands); Ex. E (Trustee's Responses to Interrogatories).[1] This motion followed.

## ARGUMENT

**A.  The Trustee Cannot Prove a Fundamental Element of His Claim Through Expert Testimony**

9.  Whether a particular Madoff customer received payments for each "PW" entry on his pre-1998 account statements is a factual issue that must be determined in each individual case.  Undoubtedly, there are some customers who sent letters to Madoff asking to receive such payments.  Undoubtedly, other customers told Madoff they did not want any withdrawals and those customers did not receive such checks.

10.  The Trustee cannot meet his burden of proof on this issue through expert testimony.  To be admissible, expert testimony must involve "scientific, technical, or other specialized knowledge" to assist the trier of fact to understand the evidence or determine a fact in issue.  *See* Fed. R. Evid. 702.  Expert testimony is inadmissible to establish a simple fact which requires "no special knowledge or skill." *Justin R. ex rel. O'Toole v. Niang*, 2010 WL 7891579, *2 (S.D.N.Y. July 20, 2010) (internal citation omitted); *see also U.S. v. Castillo*, 924 F.2d 1227, 1232 (2d Cir. 1991) ("If the testimony is instead directed solely to 'lay matters which a jury is capable of understanding and deciding without the expert's help,' . . . the testimony is properly excludable.") (quoting *Andrews v. Metro-North Commuter R.R. Co.*, 882 F.2d 705, 708 (2d Cir. 1989) (holding that district court erred in denying motion to strike expert testimony where "jury was entirely capable of understanding the evidence before it and determining the facts in issue without [ex-

---

[1] We made a good-faith attempt to resolve the discovery disputes, which has not been successful.  It is expected that the discovery disputes will have to be resolved by the Court.

{N0072203 }                                5

pert's] assistance."); *U.S. v. Collins*, 581 Fed. App'x 59, 60 (2d Cir. 2014) (summary order).

11. Determining whether a customer received a payment for a PW Transaction is certainly within a juror's capabilities. It is a simple factual issue: Did Madoff send checks to customers in each instance where the statement indicates a "PW." At trial, or on summary judgment, the court will determine that issue based on the evidence. No "scientific, technical, or other specialized knowledge" is necessary.

12. Moreover, Picard's purported expert will simply be giving an opinion that Picard wants him to give, unsupported by concrete evidence. Even in his motion papers, Picard indicates he is relying on an analysis of entries on statements from **1998** on to establish what a "PW" entry meant on statements that predated 1998. (Tr. Motion ¶ 20). Such expert testimony could not possibly be admissible. *See In re Agent Orange Prod. Liab. Litig.*, 611 F. Supp. 1267, 1281-82 (E.D.N.Y. 1985), *aff'd sub nom. In re Agent Orange Prod. Liab. Litig. MDL No. 381*, 818 F.2d 187 (2d Cir. 1987) (collecting cases); *Brooks v. Outboard Marine Corp.*, 234 F.3d 89, 92 (2d Cir. 2000); *Townsend v. Pierre*, 2015 WL 1058036, *1 (N.J. Sup. March 12, 2015). Most recently, the New Jersey Supreme Court affirmed the lower court's exclusion of an expert's opinion on causation because the opinion was "was not only unsupported by the factual evidence, but directly contradicted that evidence[.]" 2015 WL 1058036 at *1.

13. The Trustee's discovery responses to Blecker prove he has no evidence to support his position. The Trustee's productions contained no cancelled checks for the PW transactions, no correspondence between Madoff and Blecker requesting that those payments be sent to him, nor are there any other documents evidencing that Madoff actually sent payments to Blecker for the PW transactions.

14. The Trustee admits this in his Motion when he states that he "reconciled the[] cash deposit and withdrawal transactions reflected on BLMIS customer statements during the time period of December 1998 to December 2008 to the available BLMIS bank records for the same time period" and "[t]hat reconciliation process showed that 99% of the cash deposit and withdrawal transactions reflected on BLMIS customer statements tied out to available BLMIS bank records." Obviously, this is not evidential of the fundamental contention that "PW" entries which appear to have ended in 1997 represent actual checks sent to each account holder. It is particularly outrageous that Picard would sue innocent victims in claw back cases, based upon his interpretation of the "PW" entries, when he has no evidence that the customers received the funds and he is forced to rely on the statements of Madoff which, he told the Second Circuit, are totally unreliable.

15. Accordingly, an omnibus proceeding to brief the Profit Withdrawal Issue is inappropriate.

**B.    The Scheduling Motion Is an Improper Attempt to Obtain Premature Discovery From the Customers**

16. One form of relief that the Trustee seeks in the proposed form of order is for premature, overbroad, unduly burdensome fact discovery from the customers participating in the briefing of the Profit Withdrawal Issue. (Proposed Form of Order ¶¶ 2(a), (c).) At least with respect to the Objectors, discovery has not begun in their cases because they have not yet answered the complaints.

17. Yet, the Trustee seeks to over-ride the Federal Rules of Civil Procedure so that he can try to prove a fact that he knows to be untrue. Moreover, the Trustee's request that all participants "produce any documentation relating to their accounts" (*id.* ¶

{N0072203 }                                                    7

2(a)) is wholly inappropriate, and unduly burdensome and duplicative, particularly given his unfettered access to BLMIS' books and records.

## CONCLUSION

For the reasons set forth above, we respectfully ask the Court to deny the Scheduling Motion in its entirety. If the Court grants the Trustee's motion, we ask that the Court simultaneously set a briefing schedule on the claw back defendants' motions to dismiss the complaints to the extent they rely on "PW" transactions. Finally, we ask the Court to enter an order compelling the Trustee to pay Aaron Blecker SIPC insurance based upon his investment through Madoff and in recognition of the fact that he never took any money out of his account.

Dated: New York, New York
March 18, 2015

Respectfully submitted,

*/s/ Helen Davis Chaitman*
BECKER & POLIAKOFF LLP
45 Broadway
New York, New York 10006
(212) 599-3322
hchaitman@bplegal.com

*Attorneys for customers set forth on Exhibit A to the Chaitman Declaration*