# EXHIBIT B

BECKER & POLIAKOFF LLP
Helen Davis Chaitman (4266)
45 Broadway
New York, NY 10006
(212) 599-3322
hchaitman@beckerny.com

*Attorneys for Aaron Blecker*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>Plaintiff-Applicant,<br><br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>Defendant. | Adv. Pro. No. 08-1789 (BRL)<br><br>SIPA Liquidation<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>Debtor. | |

**AARON BLECKER'S SECOND SET OF REQUESTS
FOR DOCUMENTS TO THE TRUSTEE**

**PLEASE TAKE NOTICE** that Claimant, Aaron Blecker, through his counsel and pursuant to Fed. R. Civ. P. 34 and Fed. R. Bankr. P. 7034, requests that the Trustee produce documents responsive to the document requests (the "Requests") set forth herein to the offices of

{N0065646 2 }

Becker & Poliakoff LLP, 45 Broadway, 8th Floor, New York, NY 10006 within 35 days of the date set forth below.

## DEFINITIONS AND INSTRUCTIONS

1. The rules of construction and definitions in Local Rule 26.3, as adopted by Rule 7026-1 of the Local Bankruptcy Rules, are hereby incorporated by reference. All defined terms, including those defined in Local Rule 26.3 are capitalized herein.

2. "Accounts" shall mean the following accounts held at BLMIS by Aaron Blecker: 1B0156, 1B0157, 1B0022, 1B0023.

3. "BLMIS" means Bernard L. Madoff Investment Securities LLC and any and all related entities, including all representatives, agents, employees, attorneys and/or persons acting or purporting to act on their behalf.

4. "Claimant" shall mean Aaron Blecker and all affiliates, representatives, agents, employees, attorneys and/or persons acting or purporting to act on his behalf.

5. "Trustee" or "You" shall mean Irving H. Picard, trustee for the liquidation of the business of Bernard L. Madoff Investment Securities LLC under the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa *et seq.* ("SIPA"), as well as any of the Trustee's agents, accountants, attorneys, employees, servants, assigns, or any individual or entity acting or purporting to act on the Trustee's behalf.

6. In producing documents, indicate the paragraph and subparagraph (where applicable) of the Document Request(s) to which a produced document is responsive.

7. In the event You object to the production of any document responsive to this request, as privileged or confidential, please state:

    a. the name of each author, writer, sender or initiator of the document, if any;

  b. the name of each recipient, addressee, or party for whom the document was intended or received, if any;

  c. the date of the document, if any, or an estimate thereof and so indicated as an estimate if no date appears on the document;

  d. a description of the general nature of the document and a description of the general subject matter as described in the document, or if no description appears, then sufficient other description to identify the document for a subpoena *duces tecum*, including the number of pages and attachments;

  e. the specific privilege or objection that you contend applies to the document (e.g., attorney-client privilege).

## DOCUMENT REQUESTS

1. All documents evidencing requests by Blecker to withdraw funds from the Accounts and all documents evidencing such withdrawals, including cancelled checks (front and back)..

2. All cancelled checks and other documents evidencing purported withdrawals by other BLMIS customers of dividends from their accounts.

3. All tax information provided to Blecker for each year he maintained the Accounts at BLMIS.

4. All Documents, excluding monthly BLMIS account statements, evidencing purported withdrawals set forth on Table 1 to the October 19, 2009 Notice of Trustee's determination of claim for BLMIS Account No. 1B0022, which is attached hereto as **Exhibit A**.

5. All Documents, excluding monthly BLMIS account statements, evidencing purported withdrawals set forth on the itemization of deposits and withdrawal for Account No. 1B0023 in the Trustee's November 11, 2010 correspondence, which is attached hereto as **Exhibit B**.

6. All Documents on which the Trustee based his statement on page 6 of his Reply Memorandum of Law in Support of Trustee's Motion Affirming Application of Net Investment

Method to Determination of Customer Transfers Between BLMIS Accounts (Adv. Pro. 08-01789, Doc. No. 6926) (the "Reply Brief") that "he has confirmed that when 'PW' appears on the customer statement and lists a company name following 'CHECK' in the detail field, the checks were in fact made out to and cashed by customers."

7. All Documents, other than BLMIS account statements, and Communications supporting the Trustee's contention reflected on page 6 of the Reply Brief that Madoff represented that he was paying dividends to customers, which were reflected as "profit withdrawals" on BLMIS account statements.

8. All Documents and Communications supporting the Trustee's position that transactions listed on BLMIS account statements as various company names after the word "CHECK," for example "CHECK VIACOM" represent dividend payments to customers.

9. All Documents used, identified, or reviewed by You in Your responses to Claimant's First Set of Interrogatories to the Trustee.

Dated: New York, New York
January 7, 2015

Respectfully submitted,

BECKER & POLIAKOFF LLP

By /s/ Helen Davis Chaitman

45 Broadway
New York, NY 10006
(212) 599-3322
HChaitman@bplegal.com

*Attorneys for Aaron Blecker*

{N0065646 2}                                         4

# EXHIBIT A

BERNARD L. MADOFF INVESTMENT SECURITIES LLC

In Liquidation

DECEMBER 11, 2008[1]

NOTICE OF TRUSTEE'S DETERMINATION OF CLAIM

October 19, 2009

Aaron Blecker
50 Grist Mill Lane
Great Neck, New York 11023

Dear Mr. Blecker:

**PLEASE READ THIS NOTICE CAREFULLY.**

The liquidation of the business of BERNARD L. MADOFF INVESTMENT SECURITIES LLC ("BLMIS") is being conducted by Irving H. Picard, Trustee under the Securities Investor Protection Act, 15 U.S.C. § 78aaa et seq. ("SIPA"), pursuant to an order entered on December 15, 2008 by the United States District Court for the Southern District of New York.

The Trustee has made the following determination regarding your claim on BLMIS Account No. 1B0022 designated as Claim Number 003907:

Your claim for securities is **DENIED**. No securities were ever purchased for your account.

Further, based on the Trustee's analysis, the amount of money you withdrew from your account at BLMIS (total of $261,633.94), as more fully set forth in Table 1 annexed hereto and made a part hereof, is greater than the amount that was deposited with BLMIS for the purchase of securities (total of $200,000.00). As noted, no securities were ever purchased by BLMIS for your account. Any and all profits reported to you by BLMIS on account statements were fictitious.

---

[1] Section 78lll(7)(B) of SIPA states that the filing date is "the date on which an application for a protective decree is filed under 78eee(a)(3)," except where the debtor is the subject of a proceeding pending before a United States court "in which a receiver, trustee, or liquidator for such debtor has been appointed and such proceeding was commenced before the date on which such application was filed, the term 'filing date' means the date on which such proceeding was commenced." Section 78lll(7)(B). Thus, even though the Application for a protective decree was filed on December 15, 2008, the Filing Date in this action is on December 11, 2008.

As reflected in Table 1, certain of the transfers into or out of your account have been adjusted. As part of the Trustee's analysis of accounts, the Trustee has assessed accounts based on a money in/money out analysis (i.e., has the investor deposited more or less than he or she withdrew from BLMIS). This analysis allows the Trustee to determine which part of an account's balance is originally invested principal and which part is fictitious gains that were fabricated by BLMIS. A customer's allowed claim is based on the amount of principal in the customer's account.

Whenever a customer requested a transfer from one account to another, the Trustee analyzed whether the transferor account had principal in the account at the time of the transfer. The available principal in the account was transferred to and credited in the transferee account. Thus, the reason that the adjusted amount of transferred deposits or withdrawals in Table 1 is less than the purported transfer amount is that the transferor account did not have sufficient principal available to effectuate the full transfer. The difference between the purported transfer amount and the adjusted transfer amount is the amount of fictitious gain that was transferred to or from your account. Under the money in/money out analysis, the Trustee does not give credit for fictitious gains in settling your allowed claim.

Since there were no profits to use either to purchase securities or to pay you any money beyond the amount that was deposited into your BLMIS account, the amount of money you received in excess of the deposits in your account ($61,633.94) was taken from other customers and given to you. Accordingly, because you have withdrawn more than was deposited into your account, you do not have a positive "net equity" in your account and you are not entitled to an allowed claim in the BLMIS liquidation proceeding. Therefore, your claim is **DENIED** in its entirety.

Should a final and unappealable court order determine that the Trustee is incorrect in his interpretation of "net equity" and its corresponding application to the determination of customer claims, the Trustee will be bound by that order and will apply it retroactively to all previously determined customer claims in accordance with the Court's order. Nothing in this Notice of Trustee's Determination of Claim shall be construed as a waiver of any rights or claims held by you in having your customer claim re-determined in accordance with any such Court order.

Nothing in this Notice of Trustee's Determination of Claim shall be construed as a waiver of any rights or claims held by the Trustee against you.

**PLEASE TAKE NOTICE:** If you disagree with this determination and desire a hearing before Bankruptcy Judge Burton R. Lifland, you **MUST** file your written opposition, setting forth the grounds for your disagreement, referencing Bankruptcy Case No. 08-1789 (BRL) and attaching copies of any documents in support of your position, with the United States Bankruptcy Court and the Trustee within **THIRTY DAYS** after October 19, 2009, the date on which the Trustee mailed this notice.

**PLEASE TAKE FURTHER NOTICE:** If you do not properly and timely file a written opposition, the Trustee's determination with respect to your claim will be deemed confirmed by the Court and binding on you.

2

**PLEASE TAKE FURTHER NOTICE:** If you properly and timely file a written opposition, a hearing date for this controversy will be obtained by the Trustee and you will be notified of that hearing date. Your failure to appear personally or through counsel at such hearing will result in the Trustee's determination with respect to your claim being confirmed by the Court and binding on you.

**PLEASE TAKE FURTHER NOTICE:** You must mail your opposition, if any, in accordance with the above procedure, to each of the following addresses:

> Clerk of the United States Bankruptcy Court for
> the Southern District of New York
> One Bowling Green
> New York, New York 10004

> and

> Irving H. Picard, Trustee
> c/o Baker & Hostetler LLP
> 45 Rockefeller Plaza
> New York, New York 10111

*/s/ Irving H. Picard*
_____
Irving H. Picard

Trustee for the Liquidation of the Business of
Bernard L. Madoff Investment Securities LLC

*/s/ James May*

3

| DATE | TRANSACTION DESCRIPTION | AMOUNT | ADJUSTED AMOUNT |
|---|---|---|---|
| 9/22/1986 | CHECK | $50,000.00 | $50,000.00 |
| 9/24/1986 | CHECK | $50,000.00 | $50,000.00 |
| 12/16/1992 | CHECK | $100,000.00 | $100,000.00 |
| Total Deposits: | | $200,000.00 | $200,000.00 |

| DATE | TRANSACTION DESCRIPTION | AMOUNT | ADJUSTED AMOUNT |
|---|---|---|---|
| 11/24/1986 | CHECK TRW | ($2,806.51) | ($2,806.51) |
| 2/5/1987 | CHECK HOLIDAY CORP | ($4,002.50) | ($4,002.50) |
| 4/7/1987 | CHECK ANHEUSER BUSCH | ($4,248.04) | ($4,248.04) |
| 6/10/1987 | CHECK TRANSCO CO | ($3,744.78) | ($3,744.78) |
| 8/21/1987 | CHECK AGS COMPUTERS | ($3,976.71) | ($3,976.71) |
| 10/26/1987 | CHECK GROLIER | ($4,197.55) | ($4,197.55) |
| 1/26/1988 | CHECK BRISTOL MYERS | ($3,737.56) | ($3,737.56) |
| 3/30/1988 | CHECK ADVANCED SYSTEMS | ($3,998.88) | ($3,998.88) |
| 5/25/1988 | CHECK INTERCO | ($4,244.88) | ($4,244.88) |
| 8/8/1988 | CHECK AMFAC | ($3,751.97) | ($3,751.97) |
| 10/12/1988 | CHECK COMPAQ COMPUTERS | ($3,967.83) | ($3,967.83) |
| 12/5/1988 | CHECK PNC FINL | ($3,166.93) | ($3,166.93) |
| 2/3/1989 | CHECK GENERAL CINEMA | ($3,686.89) | ($3,686.89) |
| 4/11/1989 | CHECK PHELPS | ($3,993.35) | ($3,993.35) |
| 6/20/1989 | CHECK DURR FILLAUER MED | ($4,205.41) | ($4,205.41) |
| 8/18/1989 | CHECK INLAND | ($3,753.39) | ($3,753.39) |
| 10/20/1989 | CHECK AMERICAN MAIZE | ($3,990.11) | ($3,990.11) |
| 12/13/1989 | CHECK FOR ?? | ($5,187.29) | ($5,187.29) |
| 2/16/1990 | CHECK WESTINGHOUSE | ($3,682.26) | ($3,682.26) |
| 4/20/1990 | CHECK SEAGULL | ($4,001.00) | ($4,001.00) |
| 6/25/1990 | CHECK SUN MICROSYSTEMS | ($4,228.00) | ($4,228.00) |
| 8/28/1990 | CHECK IMMUNEX | ($3,728.16) | ($3,728.16) |
| 11/5/1990 | CHECK AMERICAN FILM | ($4,003.50) | ($4,003.50) |
| 12/27/1990 | CHECK PFIZER | ($3,168.16) | ($3,168.16) |
| 3/7/1991 | CHECK MEDCO | ($3,742.71) | ($3,742.71) |
| 5/13/1991 | CHECK XOMA | ($3,495.60) | ($3,495.60) |
| 7/11/1991 | CHECK HEALTH SOUTH | ($3,230.02) | ($3,230.02) |
| 7/17/1991 | CXL CHECK 07/11/91 | $3,230.02 | $3,230.02 |
| 7/17/1991 | CHECK HEALTH SOUTH | ($3,230.02) | ($3,230.02) |
| 7/22/1991 | CHECK LIBERTY NATL | ($360.82) | ($360.82) |
| 9/5/1991 | CHECK THERMO | ($2,992.58) | ($2,992.58) |
| 11/13/1991 | CHECK CHAMBERS | ($3,474.14) | ($3,474.14) |

| Date | Description | Amount | Amount |
|---|---|---|---|
| 12/27/1991 | CHECK PHL CORP | ($2,451.50) | ($2,451.50) |
| 3/5/1992 | CHECK LIEBERT | ($3,969.02) | ($3,969.02) |
| 4/28/1992 | CHECK FLEET NORSTAR | ($2,606.03) | ($2,606.03) |
| 6/16/1992 | CHECK PEP BOYS | ($2,627.74) | ($2,627.74) |
| 8/21/1992 | CHECK HOME DEPOT | ($3,929.33) | ($3,929.33) |
| 10/6/1992 | CHECK TIME WARNER | ($2,629.25) | ($2,629.25) |
| 11/12/1992 | CHECK AL LABS | ($1,097.03) | ($1,097.03) |
| 1/6/1993 | CHECK STATE STREET | ($2,678.07) | ($2,678.07) |
| 2/18/1993 | CHECK AMERICAN BRANDS | ($4,378.59) | ($4,378.59) |
| 3/17/1993 | CHECK MBNA | ($3,753.00) | ($3,753.00) |
| 5/20/1993 | CHECK DSC COMM | ($7,999.38) | ($7,999.38) |
| 6/28/1993 | CHECK SOUTHWESTERN BELL | ($3,511.00) | ($3,511.00) |
| 8/23/1993 | CHECK ANADARKO | ($6,554.68) | ($6,554.68) |
| 9/28/1993 | CHECK ENRON | ($3,251.37) | ($3,251.37) |
| 11/4/1993 | CHECK SNAPPLE | ($3,505.00) | ($3,505.00) |
| 12/14/1993 | CHECK HUFFY | ($5,634.06) | ($5,634.06) |
| 2/8/1994 | CHECK AMERITECH | ($2,504.50) | ($2,504.50) |
| 4/15/1994 | CHECK COMCAST | ($7,019.53) | ($7,019.53) |
| 5/19/1994 | CHECK AUTOZONE | ($1,250.12) | ($1,250.12) |
| 6/22/1994 | CHECK GEN ELECTRIC | ($2,256.12) | ($2,256.12) |
| 8/11/1994 | CHECK GEN MOTORS | ($4,904.17) | ($4,904.17) |
| 9/19/1994 | CHECK CATERPILLAR | ($2,012.50) | ($2,012.50) |
| 11/14/1994 | CHECK HUDSON FOODS | ($4,134.50) | ($4,134.50) |
| 12/14/1994 | CHECK AUTO DESK | ($2,264.00) | ($2,264.00) |
| 2/7/1995 | CHECK PACIFIC | ($2,517.75) | ($2,517.75) |
| 3/14/1995 | CHECK ALUMINUM | ($2,784.00) | ($2,784.00) |
| 5/15/1995 | CHECK HOME DEPOT | ($7,062.51) | ($7,062.51) |
| 6/16/1995 | CHECK MICRON | ($1,265.00) | ($1,265.00) |
| 7/27/1995 | CHECK KULICKE & SOFFA | ($5,678.84) | ($5,678.84) |
| 9/13/1995 | CHECK TEXAS INSTRUMENT | ($1,768.75) | ($1,768.75) |
| 10/18/1995 | CHECK SAFEGUARD | ($2,280.63) | ($2,280.63) |
| 11/15/1995 | CHECK APPLIED MATERIALS | ($2,535.00) | ($2,535.00) |
| 1/4/1996 | CHECK DEERE & CO | ($1,018.62) | ($1,018.62) |
| 2/14/1996 | CHECK FED NAT'L MORTGAGE | ($2,794.50) | ($2,794.50) |
| 4/4/1996 | CHECK GEN MOTORS CORP | ($4,585.67) | ($4,585.67) |
| 5/23/1996 | CHECK CENTOCOR | ($3,808.16) | ($3,808.16) |
| 6/26/1996 | CHECK COCA COLA | ($3,822.75) | ($3,822.75) |
| 7/30/1996 | CHECK CHRYSLER CORP | ($1,788.00) | ($1,788.00) |
| 9/5/1996 | CHECK SAFEGUARD | ($3,838.25) | ($3,838.25) |
| 10/7/1996 | CHECK HERSHEY FOODS | ($257.87) | ($257.87) |
| 10/16/1996 | CHECK JONES APPAREL | ($2,293.75) | ($2,293.75) |
| 11/12/1996 | CHECK NEWBRIDGE NETWORKS | ($2,818.62) | ($2,818.62) |
| 12/17/1996 | CHECK FIRST USA | ($2,301.25) | ($2,301.25) |
| 2/19/1997 | CHECK DEAN WITTER | ($4,092.50) | ($4,092.50) |
| 3/26/1997 | CHECK NATIONS BANK | ($2,310.50) | ($2,310.50) |
| 4/24/1997 | TRANS TO 1B015630 | ($206,528.75) | $0.00 |
| 4/29/1997 | CHECK PHILIP MORRIS | ($2,323.00) | ($2,323.00) |

|  |  |  |  |
|---|---|---|---|
| **Total Withdrawals:** |  | ($468,162.69) | ($261,633.94) |
| **Total deposits less withdrawals:** |  | ($268,162.69) | ($61,633.94) |

# EXHIBIT B

08-01789-cgm    Doc 9508-2    Filed 03/18/15    Entered 03/18/15 13:24:58    Exhibit B
Pg 13 of 19

# Baker Hostetler

Baker&Hostetler LLP

45 Rockefeller Plaza
New York, NY 10111

T 212.589.4200
F 212.589.4201
www.bakerlaw.com

November 11, 2010

Daniel Evan Clarkson
direct dial: 212.847.2835
dclarkson@bakerlaw.com

Aaron Blecker
50 Gristmill Lane
Great Neck, NY 11023-1813

Re:   Bernard L. Madoff Investment Securities LLC (BLMIS)
      Bankr.S.D.N.Y., No. 08-1789 (BRL)
      Account Names: Arthur Blecker and Sofie Blecker JT/WROS; Aaron
            Blecker Rev. Trust U/A/D 3/15/07; Aaron Blecker
      Account Numbers: 1B0157; 1B0156; 1B0022
      Claim Numbers: 003906; 003900; 003907

Dear Mr. Blecker:

We are in receipt of your most recent objection dated October 19, 2010, which you filed in response to Notice of Trustee's Determination for Account No. 1B0157 dated September 29, 2010. We have also received your objections to the Notices of Trustee's Determination for Account No. 1B0156 dated May 10, 2010 and 1B0022 (the "1B0022 Determination") dated October 19, 2009 (together, the "Objections").

Each of the claims you filed with the Trustee was denied because the money you withdrew from each of your accounts equaled or exceeded the amount of money deposited into the account. In the Objections, you claim that you never withdrew any funds from any of your accounts with BLMIS. However, according to the books and records of BLMIS, numerous withdrawals were made from Account No. 1B0022, which led to that account being overdrawn by $61,633.94. These withdrawals are reflected in the itemization of deposits and withdrawals included in the 1B0022 Determination. More importantly, these withdrawals are confirmed by the monthly BLMIS statements sent to you for this account, which we have enclosed as Exhibit A. We have found nothing in BLMIS' books and records indicating that you questioned any of the statements in writing at or close to the time you received them.

In accordance with the money in/money out methodology, the Trustee will only give credit for an inter-account transfer where the transferor account had sufficient principal to effectuate the transfer. Since there was no remaining principal in Account No. 1B0022, the transfer from that account to Account No. 1B0156 on April 24, 1997

Aaron Blecker
November 11, 2010
Page 2

was adjusted to zero.

We have also enclosed as Exhibit B an itemization of deposits and withdrawals for Account No. 1B0023, entitled Arthur and Sofie Blecker JT/WROS, the predecessor account which was used to fund Account No. 1B0157. As you can see, withdrawals were made from the former account as well. Similar to Account No. 1B0022 discussed above, this account was overdrawn due to the numerous withdrawals. Since the account had no remaining principal, the transfer from this account to Account No. 1B0157 on April 24, 1997 was adjusted to zero.

Since Account Nos. 1B0156 and 1B0157 were funded solely with transfer deposits from accounts which had no remaining principal, neither of these accounts ever had any principal. Therefore, the Trustee denied your claims for these accounts.

In regard to your request for a hearing, to date, no hearings have been scheduled on specific objections to the Trustee's claims determinations other than a hearing to determine the meaning of "net equity" under the Securities Investor Protection Act (SIPA) that was held on February 2, 2010 and a hearing on the Customer issue held on October 19, 2010 for those claimants that invested in feeder funds. After this Court's Order of March 8, 2010, in which it upheld the Trustee's methodology for determining net equity, and taking into account appeals of that decision as authorized by the Second Circuit on June 16, 2010, as well as any decision regarding the Customer issue, we will consider how to proceed with the many objections that we have received. That will occur in due course with respect to your objections to the above-referenced claims, which will be handled under the same procedures as other objections filed in this case.

Should you have further questions, please feel free to contact me.

Sincerely,

Daniel Evan Clarkson

Enclosures

### Account Information

Account Number: **1B0023**    Name: **ARTHUR BLECKER & SOFIE BLECKER J/T WROS**

#### DEPOSITS

| DATE | TRANSACTION DESCRIPTION | AMOUNT | ADJUSTED AMOUNT |
|---|---|---|---|
| 3/31/1981 | ALIX: 3/31/1981 Equity | $42,350.33 | $42,350.33 |
| 2/18/1983 | TRANS FROM A & A | $35,000.00 | $35,000.00 |
| 9/16/1983 | CHECK PFD SER D CONV $7.75 | $70,000.00 | $70,000.00 |
| 9/16/1983 | CHECK PFD SER D CONV $7.75 | $30,000.00 | $30,000.00 |
| 10/12/1984 | CHECK | $100,000.00 | $100,000.00 |
| 10/9/1990 | CHECK | $100,000.00 | $100,000.00 |
| Total Deposits: | | $377,350.33 | $377,350.33 |

#### WITHDRAWALS

| DATE | TRANSACTION DESCRIPTION | AMOUNT | ADJUSTED AMOUNT |
|---|---|---|---|
| 4/16/1981 | CHECK | ($1,574.11) | ($1,574.11) |
| 6/19/1981 | CHECK | ($1,693.58) | ($1,693.58) |
| 8/6/1981 | CHECK | ($1,189.49) | ($1,189.49) |
| 10/6/1981 | CHECK | ($1,798.73) | ($1,798.73) |
| 11/24/1981 | CHECK | ($1,249.39) | ($1,249.39) |
| 1/6/1982 | CHECK | ($1,190.63) | ($1,190.63) |
| 3/2/1982 | CHECK | ($1,573.63) | ($1,573.63) |
| 5/3/1982 | CHECK | ($1,675.90) | ($1,675.90) |
| 6/18/1982 | CHECK | ($1,349.22) | ($1,349.22) |
| 8/24/1982 | CHECK | ($1,585.01) | ($1,585.01) |
| 10/19/1982 | CHECK | ($1,691.63) | ($1,691.63) |
| 12/16/1982 | CHECK | ($1,797.01) | ($1,797.01) |
| 2/15/1983 | CHECK | ($1,567.10) | ($1,567.10) |
| 4/14/1983 | CHECK | ($1,486.25) | ($1,486.25) |
| 4/22/1983 | CHECK | ($1,693.25) | ($1,693.25) |
| 6/7/1983 | CHECK | ($2,170.94) | ($2,170.94) |
| 7/21/1983 | CHECK | ($2,319.25) | ($2,319.25) |
| 9/23/1983 | CHECK | ($3,287.75) | ($3,287.75) |
| 11/16/1983 | CHECK | ($4,984.72) | ($4,984.72) |
| 1/5/1984 | CHECK | ($5,319.99) | ($5,319.99) |
| 3/8/1984 | CHECK | ($7,531.23) | ($7,531.23) |
| 5/9/1984 | CHECK BRISTOL MYERS | ($6,651.28) | ($6,651.28) |
| 7/17/1984 | CHECK CSX CORP | ($7,089.00) | ($7,089.00) |

CONFIDENTIAL                                                                 MWPTAP00000349

| Date | Description | Amount | Amount |
|---|---|---|---|
| 9/13/1984 | CHECK HOUSEHOLD INTL | ($5,654.50) | ($5,654.50) |
| 10/31/1984 | CHECK KATY INDUSTRIES | ($5,818.54) | ($5,818.54) |
| 1/8/1985 | CHECK ETHYL | ($11,085.00) | ($11,085.00) |
| 2/22/1985 | CHECK ATLANTIC RICHFIELD | ($8,839.87) | ($8,839.87) |
| 4/25/1985 | CHECK AMR CORP | ($10,403.43) | ($10,403.43) |
| 6/11/1985 | CHECK INTERCO | ($7,371.58) | ($7,371.58) |
| 8/8/1985 | CHECK ASSOC DRY GOODS | ($11,095.17) | ($11,095.17) |
| 9/26/1985 | CHECK TEXTRON | ($6,484.27) | ($6,484.27) |
| 11/12/1985 | CHECK VIACOM | ($8,829.20) | ($8,829.20) |
| 1/15/1986 | CHECK WOOLWORTH | ($11,096.11) | ($11,096.11) |
| 3/17/1986 | CHECK WETTERAU | ($10,392.02) | ($10,392.02) |
| 5/27/1986 | CHECK FMC | ($10,313.75) | ($10,313.75) |
| 7/14/1986 | CHECK GTE CORP | ($7,773.88) | ($7,773.88) |
| 8/21/1986 | CHECK INTERCO | ($6,929.43) | ($6,929.43) |
| 10/15/1986 | CHECK SUN | ($8,842.64) | ($8,842.64) |
| 11/24/1986 | CHECK TRW | ($7,805.00) | ($7,805.00) |
| 2/5/1987 | CHECK HOLIDAY CORP | ($11,090.00) | ($11,090.00) |
| 4/7/1987 | CHECK ANHEUSER BUSCH | ($11,786.82) | ($11,786.82) |
| 6/10/1987 | CHECK TRANSCO CO | ($10,393.61) | ($10,393.61) |
| 8/21/1987 | CHECK AGS COMPUTERS | ($11,037.61) | ($11,037.61) |
| 10/26/1987 | CHECK GROLIER | ($11,717.22) | ($11,717.22) |
| 1/26/1988 | CHECK | ($10,396.92) | ($10,396.92) |
| 3/24/1988 | CHECK ADVANCED SYSTEMS | ($11,087.09) | ($11,087.09) |
| 5/25/1988 | CHECK INTERCO | ($11,778.76) | ($11,778.76) |
| 8/8/1988 | CHECK AMFAC | ($10,400.46) | ($10,400.46) |
| 10/12/1988 | CHECK COMPAQ COMPUTERS | ($11,048.11) | ($11,048.11) |
| 12/5/1988 | CHECK PNC FINL | ($8,832.87) | ($8,832.87) |
| 2/3/1989 | CHECK GENERAL CINEMA | ($10,400.48) | ($10,400.48) |
| 4/11/1989 | CHECK | ($11,090.99) | ($11,090.99) |
| 6/20/1989 | CHECK DURR FILLAUER MED | ($11,739.06) | ($11,739.06) |
| 8/15/1989 | CHECK INLAND | ($10,398.73) | ($10,398.73) |
| 10/20/1989 | CHECK AMERICAN MAIZE | ($11,062.73) | ($11,062.73) |
| 12/11/1989 | CHECK COLUMBIA PICTURES | ($8,840.00) | ($8,840.00) |
| 2/16/1990 | CHECK WESTINGHOUSE | ($10,347.18) | ($10,347.18) |
| 4/20/1990 | CHECK SEAGULL | ($11,089.81) | ($11,089.81) |
| 6/25/1990 | CHECK SUN MICROSYSTEMS | ($11,759.92) | ($11,759.92) |
| 8/28/1990 | CHECK IMMUNEX | ($10,393.02) | ($10,393.02) |
| 11/5/1990 | CHECK AMERICAN FILM | ($11,094.75) | ($11,094.75) |
| 12/27/1990 | CHECK PFIZER | ($11,960.08) | ($11,960.08) |
| 3/7/1991 | CHECK MEDCO | ($14,130.22) | ($14,130.22) |
| 5/13/1991 | CHECK XOMA | ($13,172.52) | ($13,172.52) |
| 7/11/1991 | CHECK HEALTH SOUTH | ($12,364.06) | ($12,364.06) |

CONFIDENTIAL                                                                MWPTAP00000350

| Date | Description | Amount | Amount |
|---|---|---|---|
| 7/17/1991 | CXL CHECK 07/11/91 | $12,364.06 | $12,364.06 |
| 7/17/1991 | CHECK HEALTH SOUTH | ($12,364.06) | ($12,364.06) |
| 7/22/1991 | CHECK LIBERTY NATL | ($1,375.28) | ($1,375.28) |
| 9/5/1991 | CHECK THERMO | ($11,312.11) | ($11,312.11) |
| 11/13/1991 | CHECK CHAMBERS | ($13,180.47) | ($13,180.47) |
| 12/27/1991 | CHECK PHL CORP | ($9,241.95) | ($9,241.95) |
| 3/5/1992 | CHECK LIEBERT | ($15,053.00) | ($15,053.00) |
| 4/28/1992 | CHECK FLEET NORSTAR | ($9,877.30) | ($9,877.30) |
| 6/16/1992 | CHECK PEP BOYS | ($10,000.40) | ($10,000.40) |
| 8/21/1992 | CHECK HOME DEPOT | ($15,049.19) | ($15,049.19) |
| 10/6/1992 | CHECK TIME WARNER | ($9,918.75) | ($9,918.75) |
| 11/12/1992 | CHECK AL LABS | ($4,124.69) | ($4,124.69) |
| 1/6/1993 | CHECK STATE STREET | ($10,542.89) | ($10,542.89) |
| 2/18/1993 | CHECK AMERICAN BRANDS | ($8,275.59) | ($8,275.59) |
| 3/17/1993 | CHECK MBNA | ($7,090.00) | ($7,090.00) |
| 5/20/1993 | CHECK DSC COMM | ($15,115.80) | ($15,115.80) |
| 6/28/1993 | CHECK SOUTHWESTERN BELL | ($6,617.37) | ($6,617.37) |
| 8/23/1993 | CHECK ANADARKO | ($12,389.99) | ($12,389.99) |
| 9/28/1993 | CHECK ENRON | ($6,152.37) | ($6,152.37) |
| 11/4/1993 | CHECK SNAPPLE | ($6,623.50) | ($6,623.50) |
| 12/14/1993 | CHECK HUFFY | ($10,627.77) | ($10,627.77) |
| 2/8/1994 | CHECK AMERITECH | ($4,737.75) | ($4,737.75) |
| 4/15/1994 | CHECK COMCAST | ($13,284.52) | ($13,284.52) |
| 5/19/1994 | CHECK AUTOZONE | ($2,372.50) | ($2,372.50) |
| 6/22/1994 | CHECK GEN ELECTRIC | ($4,270.00) | ($4,270.00) |
| 8/11/1994 | CHECK GEN MOTORS | ($9,264.56) | ($9,264.56) |
| 9/19/1994 | CHECK CATERPILLAR | ($3,808.00) | ($3,808.00) |
| 11/14/1994 | CHECK HUDSON FOODS | ($7,840.79) | ($7,840.79) |
| 12/14/1994 | CHECK AUTO DESK | ($4,284.50) | ($4,284.50) |
| 2/7/1995 | CHECK PACIFIC | ($4,759.62) | ($4,759.62) |
| 3/14/1995 | CHECK ALUMINUM | ($5,252.50) | ($5,252.50) |
| 5/15/1995 | CHECK HOME DEPOT | ($13,358.99) | ($13,358.99) |
| 6/16/1995 | CHECK MICRON | ($2,393.00) | ($2,393.00) |
| 7/27/1995 | CHECK KULICKE & SOFFA | ($10,757.27) | ($10,757.27) |
| 9/13/1995 | CHECK TEXAS INSTRUMENT | ($3,343.75) | ($3,343.75) |
| 10/18/1995 | CHECK SAFEGUARD | ($4,305.00) | ($4,305.00) |
| 11/15/1995 | CHECK APPLIED MATERIALS | ($4,786.25) | ($4,786.25) |
| 1/4/1996 | CHECK DEERE & CO | ($1,916.62) | ($1,916.62) |
| 2/14/1996 | CHECK FED NAT'L MORTGAGE | ($5,278.62) | ($5,278.62) |
| 4/4/1996 | CHECK GEN MOTORS CORP | ($8,655.86) | ($8,655.86) |
| 5/23/1996 | CHECK CENTOCOR | ($7,224.80) | ($7,224.80) |
| 6/26/1996 | CHECK COCA COLA | ($7,227.25) | ($7,227.25) |
| 7/30/1996 | CHECK CHRYSLER CORP | ($3,370.00) | ($3,370.00) |

| Date | Description | | |
|---|---|---|---|
| 9/5/1996 | CHECK SAFEGUARD | ($7,231.50) | ($7,231.50) |
| 10/7/1996 | CHECK HERSHEY FOODS | ($487.00) | ($487.00) |
| 10/16/1996 | CHECK JONES APPAREL | ($4,341.25) | ($4,341.25) |
| 11/12/1996 | CHECK NEWBRIDGE NETWORKS | ($5,306.87) | ($5,306.87) |
| 12/17/1996 | CHECK FIRST USA | ($4,346.87) | ($4,346.87) |
| 2/19/1997 | CHECK DEAN WITTER | ($7,735.00) | ($7,735.00) |
| 3/26/1997 | CHECK NATIONS BANK | ($4,371.00) | ($4,371.00) |
| 4/24/1997 | TRANS TO 1B015730 | ($389,846.73) | $0.00 |
| 4/29/1997 | CHECK PHILIP MORRIS | ($4,380.50) | ($4,380.50) |
| Total Withdrawals: | | ($1,233,723.79) | ($843,877.06) |
| | | | |
| Total deposits less withdrawals: | | ($856,373.46) | ($466,526.73) |

CONFIDENTIAL                                                                                           MWPTAP00000352