Page 1

1    UNITED STATES BANKRUPTCY COURT

2    SOUTHERN DISTRICT OF NEW YORK

3    Case No. 08-99000-smb

4    Adversary No. 08-01789-smb

5    Adversary No. 09-01161-smb

6    - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

7    In the Matter of:

8    SECURITIES INVESTOR PROTECTION CORPORATION,

9                        Plaintiff

10                  v.

11   BERNARD L. MADOFF INVESTMENT SECUR.,

12                        Defendant

13   - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

14   In the Matter of:

15   PICARD,

16                        Plaintiff

17                  v.

18   KINGATE GLOBAL FUND, LTD. ET AL,

19                        Defendants

20   - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

21                  U.S. Bankruptcy Court

22                  One Bowling Green

23                  New York, New York

24                  November 19, 2014

25                  9:59 AM

```
 1   B E F O R E :

 2   HON STUART M. BERNSTEIN

 3   U.S. BANKRUPTCY JUDGE

 4

 5   ECR OPERATOR:  W. RODRIGUEZ

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Page 3

1    Hearing re:  Administrative case no. 08-01789: Hearing on

2    presentment of order concerning further proceedings on

3    extraterritorality motion and trustee's omnibus motion for

4    leave to replead and for limited discovery.

5

6    Hearing re:  Administrative case no. 09-01161: Conference re

7    FIM Defendants' Nov. 14 Letter

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25   Transcribed by:  Jamie Gallagher

```
 1   A P P E A R A N C E S :

 2   BAKER HOSTETLER

 3        Attorneys for Irving Picard, Trustee

 4        45 Rockefeller Plaza

 5        New York, NY 10111

 6

 7   BY:  THOMAS L. LONG, ESQ.

 8        REGINA L. GRIFFIN, ESQ.

 9        GERALDINE PONTO, ESQ.

10

11   FOLKENFLIK & MCGERITY, LLP

12        Attorney for the Defendants

13        1500 Broadway

14        New York, NY 10036

15

16   BY:  MAX FOLKENFLIK, ESQ.

17

18   SECURITIES INVESTOR PROTECTION CORPORATION

19        Counsel for Dispute Resolution

20        805 15th Street, NW

21        Suite 800

22        Washington, DC 20005

23

24   BY:  KEVIN BELL, ESQ.

25
```

Page 5

```
 1   GIBSON DUNN & CRUTCHER, LLP

 2         Attorney for UBS Defendants

 3         200 Park Avenue

 4         New York, NY 10166

 5

 6   BY:  MARSHALL KING, ESQ.

 7

 8   DICKSTEIN SHAPIRO, LLP

 9         Attorney for Defendants

10         1633 Broadway

11         New York, NY 10019

12

13   BY:  ERIC FISHER, ESQ.

14

15   LOWENSTEIN SANDLER, LLP

16         Attorneys for Bureau Labor Insurance

17         1251 Avenue of the Americas

18         New York, NY 10020

19

20   BY:  AMIAD KUSHNER, ESQ.

21         JAMIE GOTTLIEB, ESQ.

22

23

24

25
```

Page 6

1  PAUL HASTINGS, LLP

2       Attorneys for Defendants

3       75 East 55th Street

4       New York, NY 10022

5

6  BY:  MOR WETZLER, ESQ.

7       JODI AILEEN KLEINICK, ESQ.

8

9  ARNOLD & PORTER, LLP

10       Attorney for Merrill Lynch International

11       399 Park Avenue

12       New York, NY 10022

13

14  BY:  PAMELA MILLER, ESQ.

15

16  SULLIVAN & WORCESTER, LLP

17       1633 Broadway

18       New York, NY 10019

19

20  BY:  FRANKLIN VELIE, ESQ.

21

22

23

24

25

```
 1                    P R O C E E D I N G S

 2              THE COURT:  Madoff.

 3              MS. GRIFFIN:  Good morning, Your Honor.  Regina

 4     Griffin, Baker Hostetler, counsel for the trustee.

 5              THE COURT:  Thank you.

 6              MR. LONG:  Good morning, Your Honor.  Thomas Long

 7     on behalf of the trustee.

 8              MR. KING:  Good morning, Your Honor.  Marshall

 9     King from Gibson Dunn & Crutcher on behalf of the UBS

10     defendants.

11              THE COURT:  Okay, go ahead.

12              MS. GRIFFIN:  Thank you, Your Honor.  We had

13     forwarded to Your Honor and filed last evening an amended

14     notice of agenda for matters.  And if you would like to go

15     in a different order, but what we had listed first was the

16     notice of hearing on an order concerning further proceedings

17     on the extraterritoriality motion.

18              THE COURT:  Go ahead.

19              MS. GRIFFIN:  Your Honor, I don't know if you

20     would want counsel for the objecting parties to go first,

21     but I'm happy to speak first.

22              THE COURT:  Would you like to go first?

23              MR. KING:  I'm happy to go first, Your Honor.

24              THE COURT:  Go ahead.

25              MR. KING:  Thank you, Your Honor.  Marshall King
```

Page 8

1    from Gibson Dunn & Crutcher on behalf of the UBS defendants.

2            If Your Honor has read the papers, the dispute

3    is --

4            THE COURT:  I have.

5            MR. KING:  -- very focused on one paragraph of the

6    proposed procedures and it would provide an exemption to the

7    trustee to do things with confidential material that the

8    trustee is not currently entitled to do under the governing

9    orders that are in place in this case that govern when UBS

10   and others produce documents and on which they relied when

11   producing documents.  The trustee doesn't really dispute

12   that it's seeking a modification in some way to do things

13   that it isn't otherwise permitted to do.  The Second Circuit

14   case law is clear.  In order to do what they want to do,

15   they need to show extraordinary circumstances or a

16   compelling need.  The trustee doesn't contest the legal

17   standard, doesn't suggest they've satisfied the legal

18   standard, doesn't try to distinguish the cases.  All they

19   say is, well, it's reasonable under the circumstances, in

20   party because you know, we're the only ones or one of two

21   parties who have raised an objection here.

22            Respectfully, reasonableness is not the test.  And

23   abrogating the rights that UBS and others have under the

24   governing orders is not open to majority vote.  It's a

25   question of have they satisfied the Second Circuit standard.

Page 9

1    The trustee's justification is somewhat sympathetic when

2    viewed narrowly.  They have a lot of parties they have sued.

3    They have a lot of parties whose complaints they wish to

4    amend, I sympathize with the poor associates at Baker

5    Hostetler who have the job to assemble the amended

6    complaints that they wish to put forward but these are

7    problems of their own making.  They agreed to these

8    restrictions in the protective orders at -- originally.

9    They agreed again when they came back to the Court saying,

10   you know, these procedures are somewhat burdensome.  We'd

11   like a litigation protective order.  There was a battle

12   about that, compromises on both sides.  Everyone agreed.

13   And they got a litigation protective order that governs the

14   procedures that one has to follow when using information

15   that's been designated as confidential.  They knew that

16   there were all these multiple litigations at that time.

17   They knew it was a bit of a pain to deal with all this

18   confidential stuff that, you know, having gotten thousands

19   of parties to produce millions of documents and benefit the

20   trustee, they realize, okay, well we gave up a lot to get

21   that.  We gave up some to get that, namely, we agreed these

22   restrictions and they should be held to those restrictions.

23         You can't just abandon them when they become

24   somewhat inconvenient to you.  No one required them to sue

25   thousands of defendants.  No one required them to seek leave

Page 10

1    to amend complaints that they now admit are deficient and

2    need amendment in order to survive.  That's a problem of

3    their own making.  So that initial sympathy that I have for

4    the poor associates at Baker Hostetler is really greatly

5    overcome by -- they've gotten a great benefit here.  These

6    are problems of their own making.  They agreed to these

7    things and it is not fair to UBS or to others that these

8    restrictions be limited.

9         The idea that this is necessary because of this

10   expedited schedule that is a bit of a fallacy.  They filed a

11   motion to amend in August.  If Your Honor signs an order

12   today, their amended complaints -- the proposed amended

13   complaints will be due in February, nearly six months later.

14   And even then, the motions will not be fully submitted to

15   Your Honor until April if Your Honor signs an order today.

16   That would be eight months from the day that they raise

17   their hand and said hey, Judge, we want to amend these

18   complaints.  That's a lot of time.

19        So I recognize that the trustee has a lot of work

20   to.  The solutions are live up to their obligations that

21   they agreed to and that were in place under the protective

22   orders, either invoke the procedures to designate documents

23   that they think were improperly designated and let that run

24   its course or file under seal and essentially put the burden

25   on us to justify to Your Honor why it should remain under

Page 11

1    seal.  We don't have to solve this problem today.  We have

2    time to figure out what do they want to use and what is the

3    fight that we are going, if any, we're going to have over

4    that.  We may have no fight.  We have in the past resolved

5    issues.  On one occasion it did come to the Court and the

6    Court made a ruling, this is before Your Honor had the case,

7    but those procedures, you know, are what everybody agreed to

8    and what are reasonable.

9              Another solution, I think, is if everyone else

10   really does think this is a reasonable approach for them,

11   let's carve UBS and Merrill Lynch out, and they've only got

12   a deal with this confidentiality issue with respect to two

13   parties.  And I will bet you, Your Honor, that the day UBS

14   stood up and objected to this procedure, they began

15   immediately cracking down on figuring out what they want to

16   use as to UBS, and have been diligently been working on

17   that.  There's plenty of time for us to resolve any issues

18   that we have on that issue.

19             The last solution, of course, is nobody's making

20   them amend.  Nobody's forcing them to amend.  Judge Rakoff

21   effectively has said there's really on one thing that

22   matters.  Where was the transferor and where is the

23   subsequent transferee.  And if they're both located

24   overseas, it's an extraterritorial transfer beyond the scope

25   of Section 550(a).  So, you know, truthfully, in our view,

1     all of these amendments are a waste of time.  They are

2     entitled to argue otherwise, but their desire to argue

3     otherwise doesn't justify overwhelming the rights that we

4     negotiated for that have been in place for the last four

5     years.

6               THE COURT:  Thank you.

7               MR. KING:  Thank you, Your Honor.

8               MS. GRIFFIN:  Your honor, essentially, what we

9     negotiated with the defendants was, and I know you've read

10    the papers, so I'm not going to repeat it, it's not seeking

11    to modify.  It was basically an advanced dialogue with the

12    defendants about understanding what the parameters are that

13    the parties have with respect to the protective order.  And

14    almost all of the defendants basically agree that they would

15    not interpret the protective order to prohibit the trustee

16    from making general allegations.

17              To be crystal clear, we do -- the trustee intends

18    to abide by the terms of the protective order to the extent

19    we intend to quote, to paraphrase, or to otherwise reveal

20    the contents of documents in there.  But what this was, was

21    an attempt to get the defendants what they wanted, which was

22    expedited briefing on the extraterritoriality issue, get the

23    trustee what he wanted in terms of an orderly process, and

24    in terms of when the discovery motion is heard, when the

25    full complaints are filed versus when the allegations are

```
 1    filed.  And we have -- you know, through extensive efforts

 2    with coordinating counsel, we think we've come to a good

 3    place of agreement with the defendants and that was really

 4    what we were trying to accomplish.  81 days doesn't sound

 5    like much, but when you have the history of knowing that so

 6    many parties have come in and challenged things, have

 7    blanket designated as Merrill Lynch and the UBS defendants

 8    did, their entire document production, I can't make even a

 9    general allegation under their interpretation that they

10    received transfers at a New York bank account.  That's

11    totally hypothetical, not basing it on any documents in

12    Merrill Lynch or UBS's arsenal that they produced.  But the

13    problem therein, Your Honor, is we wanted to make sure that

14    in 100 different lawsuits, you weren't dealing with

15    confidentiality de-designation issues.

16              THE COURT:  But you only have two now.  You only

17    have --

18              MS. GRIFFIN:  Well --

19              THE COURT:  -- two objectors.

20              MS. GRIFFIN:  That's where we are, Your Honor.

21    And I guess where we're sitting with them is we wanted to

22    make sure that we could get to you and file on the 81st day

23    our papers under seal.  In the past, the courts have been

24    very reluctant to having us, you know, file things under

25    seal but that's currently where we are.  We hope, and by the
```

Page 14

1    way, we've been working on this, and unfortunately Your

2    Honor is going to start to see requests under the de-

3    designation process where if the parties can't work it out,

4    and we are definitely trying -- going to try and work it out

5    with everybody.  This advanced negotiation with defendants

6    is a step in that direction, that we're all working towards

7    that common goal.  But essentially, Your Honor, we -- I

8    guess this is a way of letting the Court know that you may

9    have to decide before you at least get to the

10   extraterritoriality decision on their cases some

11   confidentiality issues, some under seal issues, and all of

12   that.  And so they may not be able to stop to the same

13   schedule, and that's where we are.

14              THE COURT:  Okay.  Anyone else want to be heard?

15              MS. MILLER:  Your Honor.  Your Honor, I'm Pam

16   Miller from Arnold & Porter for Merrill Lynch International.

17              As you know, we filed a (indiscernible) filing and

18   I endorse all the statements made by Mr. King from Gibson

19   Dunn on behalf of UBS.  The only thing I wanted to add is he

20   talked about the high standard for modifying a protective

21   order and that is certainly the case.  The Second Circuit

22   talks about an additional element to that, which is

23   presumptively unfair to modify a protective order when the

24   parties have acted in reliance on that protective order.

25   And I wanted to rise just briefly to tell you the history.

1          THE COURT:  See, the impression I'm getting from

2     Ms. Griffin's argument is they're not violating the

3     protective order.  They want to clarify what might be a

4     dispute under the protective order, is that what you're

5     saying?

6          MS. GRIFFIN:  Yes, Your Honor.

7          THE COURT:  All right.  So they tell me they're

8     not violating the protective order.

9          MS. MILLER:  No, but the problem is that

10    paragraph --

11         THE COURT:  So you say, go ahead, do what you

12    think is right at your peril, right?

13         MS. MILLER:  Well, right, paragraph 7 is vague

14    enough --

15         THE COURT:  Right.

16         MS. MILLER:  -- but I don't think that we can

17    allow them to proceed.  Once the toothpaste is out of the

18    tube, it's too late to put it back in.

19         THE COURT:  That's true.

20         MS. MILLER:  As Mr. King says, if they are only

21    dealing with two objectors, they certainly can come to us.

22    They have come to us in the past to de-designate, and we'd

23    be happy to have that dialogue with them.  I did just want

24    Your Honor to know that the documents at issue here, MLI is

25    a UK-based entity.  When the first subpoena was served over

Page 16

```
 1    five years ago in September of 2009, we told the trustee

 2    that in order to get documents from the UK, it would need to

 3    start a disclosure proceeding in the UK under UK law.  In

 4    order to absolve them of that burden and to cooperate, we

 5    voluntarily produced documents, but only after we entered

 6    into a confidentiality order with them.  And that

 7    confidentiality order, which is before the Court, it's

 8    docket number 15 in our adversary proceeding, which is 05-

 9    346, has two key provisions that have been carried through

10    through every protective order that has subsequently been

11    entered.

12             The first one, which I just want to ring to Your

13    Honor's attention is that it expressly said that, and this

14    is a quote, "MLI may designate any or all of the documents

15    that MLI is voluntarily producing as confidential."  That

16    was a bargain that we negotiated with the trustee.  So the

17    over-designation that they're not complaining about is of

18    their own making.  And as I've said, we've been willing to

19    undesignated when necessary.

20             And the second provision, which was much more

21    important, is that any of those documents, to the extent

22    they wanted to refer to them in public filings, the filings

23    either needed to be made under seal or they needed to come

24    to us to de-designate.  We have insisted that that

25    protection is carried forward in every protective order and
```

Page 17

1      it is fair to say that when MLI made the decision to

2      disclose those documents, which contain material that would

3      be confidential under EU data privacy laws, contained

4      information about customers, contained information about

5      MLI's strategy.  It did so on express reliance of those two

6      provisions.  And for that additional reason, I would ask

7      that Your Honor -- respectfully ask that Your Honor strike

8      paragraph 7.  Thank you.

9              THE COURT:  Yes.

10             MS. GRIFFIN:  Your Honor, I -- just for the

11     record, I think there's a dispute with Merrill Lynch that we

12     don't have to resolve here about which confidentiality

13     agreement governs the situation.  I think what we're really

14     coming down to is if we're dealing -- if you're looking at

15     this from the context of we're only dealing with two parties

16     essentially at this point, maybe -- I guess, just getting

17     them to -- directing them to use their best efforts to

18     cooperate with us through the de-designation process so we

19     can avoid having to burden the Court.  We've accomplished

20     much already if that's where you're intending to go.

21             THE COURT:  But doesn't the confidentiality order

22     implicitly require cooperation, if not expressly?

23             MS. GRIFFIN:  It certainly requires the parties to

24     work in good faith.  But in terms of meeting this expedited

25     schedule, Your Honor, it's almost like we're asking --

Page 18

1    they're asking to participate in something that's going to

2    require significant diverted resources from the Court as

3    well as --

4            THE COURT:  Well, why don't you just show them

5    what you intend to use and see what their response is?

6            MS. GRIFFIN:  We absolutely intend to, Your Honor.

7    It really is just --

8            THE COURT:  You're asking me to decide this in a

9    vacuum, which is part of the problem.

10           MS. GRIFFIN:  I understand that, Your Honor, and

11   the provision was never meant to litigate issues --

12           THE COURT:  Right.

13           MS. GRIFFIN:  -- under the protective order.

14           THE COURT:  Look, as far as I'm concerned,

15   documents were produced under a confidentiality -- under a

16   promise of confidentiality and the order provides for a

17   resolution of any dispute.  You tell me that your intended

18   use doesn't violate the order, but since I don't know really

19   what your intended use is, it's very hard to make that

20   determination.  You're down to two objectors, UBS and

21   Merrill Lynch will be carved out of paragraph 7.  Otherwise,

22   nobody else has a problem with paragraph 7, that's fine.

23   And that's the way we'll do it, all right?

24           MS. GRIFFIN:  Thank you, Your Honor.

25           THE COURT:  All right, so you can submit a revised

Page 19

1    order which carves them out and I'll sign the order.

2         MS. GRIFFIN:  We'll do so, Your Honor.

3         THE COURT:  All right.

4         MR. KING:  Thank you, Your Honor.

5         THE COURT:  I had some other issues regarding

6    inclusion or exclusion from this order?  Yes?

7         MS. GRIFFIN:  I guess we'll --

8         THE COURT:  Mr. Fisher?

9         MR. FISHER:  Good morning, Your Honor.  Eric

10   Fisher from Dickstein Shapiro and I'm appearing on behalf of

11   certain defendants in the Picard v. Legacy adversary

12   proceeding, which is 10-05286.

13         We are not objecting to the omnibus process.  We

14   simply filed a statement that we hoped would be non-

15   controversial to indicate that we did not plan to

16   participate in the omnibus process.  And the reason simply

17   is that we do not think that the interest of resolving our

18   case is well-served by the omnibus process because there are

19   so many different issues that are threshold issues to the

20   question of whether or not the plaintiff should be permitted

21   to file an amended pleading.  That's segregating out the

22   extraterritoriality issue and deciding that issue.  While it

23   will answer some questions relevant to the issue of whether

24   or not an amended pleading should be permitted, it's not

25   going to come close to answering all of the questions.  And

Page 20

1    so we simply wanted to insist on our rights under Rule 15

2    and require the plaintiff here to file a motion for an

3    amended complaint in our case and have the Court consider

4    that complaint -- that proposed amended complaint in its

5    entirety.

6              THE COURT:  As I understand it, this order only

7    relates to the extraterritoriality issue with some discovery

8    issues involved in it also.  So his concern is that if you

9    want to move to dismiss his complaint on some other ground,

10   or if he wants to move to dismiss your complaint on some

11   other ground, that somehow this order doesn't affect that

12   right.

13             MS. GRIFFIN:  Your Honor, that's not exactly

14   correct.  The entire purpose of this was to give order in

15   respect to the two significant decisions that came down: one

16   with the extraterritoriality issue, which is of course, the

17   defendants want to get that decided right away, but the

18   trustee also wanted to have his opportunity, either to take

19   discovery and then re-plead, or in cases where he hasn't

20   sought discovery, leave to re-plead given the change in

21   intervening law.  And, you know, that issue is a common

22   procedural setting for every single one of these cases.

23             THE COURT:  But the order really relates to your

24   right to re-plead.  Basically, any extraterritoriality issue

25   of dismissal of the complaints?

Page 21

```
 1              MS. GRIFFIN:  Your Honor, the way --

 2              THE COURT:  He's talking about a motion to dismiss

 3    your complaint as it is on other grounds.  How does the

 4    order affect that?

 5              MS. GRIFFIN:  How it does is it's considering the

 6    fact that we would be given -- well, first of all, I can't

 7    even say for specific purposes in your case whether or not

 8    the trustee would dispute the issue of whether or not he has

 9    a right to re-plead as of right, but the more -- the bigger

10    issue is, now that the law has changed, in all of these

11    cases, the trustee wants the opportunity to put forward his

12    best complaint, the deal with the good faith issue, and the

13    whole point of structuring it this way was so that Your

14    Honor didn't get seriatim amendments to the complaints.

15              THE COURT:  Right.

16              MS. GRIFFIN:  The defendants are all going to --

17    we thought that this was a nice way of avoiding having them

18    file a motion to dismiss at an older complaint then we

19    respond to it, conform with allegations, you decide the

20    whole issue and then we -- we then deal with a second motion

21    on that proposed allegations.  That's why we structured it.

22    So the way that this is working, and the way the parties

23    negotiated the proposed order was that we would deal with

24    the extraterritoriality issue first and then we'd have two

25    buckets of cases.  In those in which the trustee is seeking
```

Page 22

1    discovery so that we didn't have to put forward a full

2    amended complaint, we were going to have the Court -- come

3    back to the Court and ask you to revisit the issue of

4    discovery and need to re-plead at that time, depending on

5    whether we -- if we did seek discovery, we'd ask you to

6    decide the discovery motion first.  In those cases where we

7    only sought leave to re-plead and we were not seeking

8    discovery because we had what we think we need, then we were

9    going to ask Your Honor to deal with those cases, but it's

10   structured that way.

11            THE COURT:  I thought the discovery was related to

12   the good faith issue, or is it discovery for all issues?

13            MS. GRIFFIN:  It's good faith issue.

14            THE COURT:  Okay, so if you remove the good faith

15   issue and the extraterritoriality issue, his -- he's arguing

16   that -- if you want to amend the complaint in any other way,

17   you have to make a motion to leave to amend is what he's

18   basically saying, or one of the things I understand you to

19   be saying?

20            MR. FISHER:  Correct, Your Honor.

21            MS. GRIFFIN:  I think a lot of defendants will

22   probably take the same position.  And the whole point is,

23   Your Honor, we think that that may be raised in a lot of

24   cases but we're trying to save time.

25            THE COURT:  I don't understand, though.  How does

1    the order -- how is the order supposed to affect your right

2    to re-plead on issues other than good faith and

3    extraterritoriality?

4              MS. GRIFFIN:  I guess, Your Honor, it's -- it was

5    meant to address the change in intervening law that gives us

6    a reason to address those two issues, in particular, but it

7    also --

8              THE COURT:  If you want to move to re-plead for

9    some other reason, another decision comes down, or the

10   Second Circuit makes some ruling in one of these appeals --

11             MS. GRIFFIN:  Right.

12             THE COURT:  -- what happens then?  Is this -- is

13   there a schedule in here that controls that or do you have

14   to make another motion for leave to re-plead, or enter into

15   a similar stipulation on that issue?

16             MS. GRIFFIN:  Your Honor, I mean it depends if

17   there's an intervening changing of law, but there are also

18   other issues at play.  There's then new discovery that we

19   obtained from third parties that may be relevant.  If we're

20   going to do this once, the whole point of this is to amend

21   once.  We don't anticipate any other decisions coming down

22   except hopefully, you know, ones that we're going to seek to

23   appeal changing the law.  But that's not where we are.

24             THE COURT:  I guess I don't understand.  I'm not

25   sure I got an answer to my question.

Page 24

1           MS. GRIFFIN:  All right, so I -- let me try to be

2    clearer.  We are seeking leaving to amend for good faith

3    issues.  But, for instance, what if we got more specific

4    information about banking transactions that leads us to

5    specificity about subsequent transfers that took place that

6    we didn't have when these complaints were first filed.  And

7    in many of these cases, the trustee's position is, we still

8    have the right for (indiscernible) as of right across the

9    board.  So we weren't looking -- we were looking to have the

10   Court decide the issue with regard to the intervening change

11   in law, but also we were working with the defendants to deal

12   with everything all at once so that we amend as once,

13   instead of asking permission for each issue.

14           THE COURT:  What is the effect of this order on

15   your right to re-plead for any reason?

16           MS. GRIFFIN:  I thought we had worked with the

17   defendants to come to a point where we could amend the

18   complaints once.

19           THE COURT:  So this order grants you an absolutely

20   right to re-plead on any issue?

21           MS. GRIFFIN:  No.  Okay, we are seeking to proffer

22   amended allegations regarding the extraterritoriality issue

23   at this point only.

24           THE COURT:  Okay.

25           MS. GRIFFIN:  That's so that we don't have to put

1    forward a full amended complaint at this time until Your

2    Honor decides a discovery motion.

3                THE COURT:  I'm hearing two different things.

4    Mr. Fisher is saying -- I understand his concern to be that

5    it gives you a right to amend for any reason and that if you

6    want to amend for any reason other than the

7    extraterritoriality issue or maybe the good faith issue

8    after discovery because it's dealt with, you should have to

9    come back and seek leave to re-plead.  Is that what your

10   argument is, Mr. Fisher?

11               MR. FISHER:  Yes, Your Honor, and just to --

12   again, it's just really how does this omnibus process apply,

13   for example, to this particular case because if the

14   pleadings -- if there are proposed amended pleadings as to

15   the extraterritoriality issue, and then this Court decides

16   certain defendants are foreign defendants and therefore not

17   subject to jurisdiction, certain defendants are not foreign

18   defendants within the meaning of Judge Rakoff's decision,

19   it's perhaps resolved in the extraterritoriality question,

20   but to get to the question of whether --

21               THE COURT:  Unless they want to then re-plead

22   those complaints but --

23               MR. FISHER:  That's true, but it doesn't resolve

24   the question of what if I also have arguments that the

25   subsequent transfers are not specified adequately to meet

Page 26

1    the pleading requirements.

2              THE COURT:  But that's a motion to dismiss and

3    this doesn't deal with a motion to dismiss, this deals with

4    a trustee's right to amend.

5              MR. FISHER:  Your Honor, I --

6              THE COURT:  I guess you can make a motion to

7    dismiss on any ground if you haven't done it already.

8              MR. FISHER:  We -- I believe that that's right and

9    that we could, but I think even before you get to that

10   stage, we do have the right to oppose amendment of the

11   complaint --

12             THE COURT:  Yes.

13             MR. FISHER:  -- on the ground that it's futile.

14             THE COURT:  Right.

15             MR. FISHER:  So it could be that it enters into

16   the process at this stage and we shouldn't have to wait for

17   a motion to dismiss.  We just want to know, ultimately, when

18   they -- this is a four year old case, like many of these

19   cases.  We've been hearing for years that they plan to amend

20   the complaint in our case.  When will we get our proposed

21   amended complaint?  What claims are they planning to go

22   forward with?  What's the basis for those allegations?  And

23   we want the opportunity to say it's futile.

24             THE COURT:  Okay.

25             MS. GRIFFIN:  Your Honor, I guess what it comes

Page 27

1    down to is some of the defendants are willing to proceed in

2    a certain fashion and I guess Mr. Fisher is not.  I'm

3    assuming that you would not consent to allow us under Rule

4    15 leave to amend first.  You want to make a motion and then

5    have us come forward with whatever our defense and

6    allegations would be to show that we can re-plead and have

7    that decided in that context instead of us, you know,

8    tendering a fully amended complaint first, and then you

9    target your motion to dismiss at that.

10            THE COURT:  He's saying that he should make -- he

11   should have the right to test the allegations of your

12   proposed amended complaint before you get the right to re-

13   plead, which is what he's saying, which is the way it

14   usually works.  And again, when I read this order, I thought

15   it was limited to the extraterritoriality and good faith

16   issues and that you could amend in accordance with the

17   order, you know, as to those issues.  But again, I don't

18   know what other issues you might want to amend your

19   complaint to address.  It might depend on what the law --

20   what law comes out of the Second Circuit, or this Court, or

21   the District Court on appeal.  And I just can't give you

22   that kind of blanket right to amend.  You tell me you think

23   you have the right to amend now, you don't need his

24   permission.

25            MS. GRIFFIN:  In certain cases.

1          THE COURT:  Okay, but beyond the specific two

2    issues that are covered by the order, I guess if you want to

3    seek leave to amend to some other reason, then you'll have

4    to do it -- you know, follow the usual route for it.  Now, I

5    thought that's what the order provided, and I don't know

6    what the order would have to say in order to clarify that,

7    but have you given any thought to that having seen the

8    objection?

9          MS. GRIFFIN:  No, Your Honor.  Frankly, we were

10   confused by the objection.

11         THE COURT:  All right, what we'll do at the end of

12   this process --

13         MS. GRIFFIN:  Sure.

14         THE COURT:  -- is I'll ask you to file a proposed

15   amended order online, redlined, which capsulate the changes

16   with UBS and Merrill, and one that you think will satisfy

17   Mr. Fisher.  And then if there are no objection, you know,

18   give it -- provide three days' notice or -- of presentment,

19   and if there's an objection, someone can file an objection

20   to the language and we'll hear it further -- you'll have a

21   further hearing on it.  Because there's just so many parties

22   involved, there's no other practical way to deal with it.

23         MS. GRIFFIN:  Your Honor --

24         THE COURT:  And I'll authorize ECF service for

25   this limited purpose.

1           MS. GRIFFIN:  Thank you, Your Honor.

2           THE COURT:  So you don't have to mail it out to

3    everybody, okay?

4           MR. FISHER:  Thank you, Your Honor.

5           MS. GRIFFIN:  Thank you.

6           THE COURT:  Anybody else on the context of the

7    order?

8           MS. GRIFFIN:  I think, Your Honor -- just to call

9    Your Honor's attention, it's in the agenda.  There were a

10   couple of additional parties who sought to participate.  We

11   conferred with counsel for coordinating counsel.  They were

12   submitted last night and none of us got an objection to

13   that.

14          THE COURT:  Okay, next.

15          MR. LONG:  Your Honor, there was one other

16   submission on behalf of another proceeding Bureau of Labor

17   Insurance.

18          THE COURT:  Yes, yes, yes.  Is anyone here from

19   the Bureau of Labor Insurance?  Step up.

20          MR. KUSHNER:  Good morning, Your Honor.

21          THE COURT:  Good morning.

22          MR. KUSHNER:  My name is Amiad Kushner from

23   Lowenstein Sandler on behalf of Bureau of Labor Insurance.

24          THE COURT:  Okay.

25          MR. KUSHNER:  I'll call Bureau of Labor Insurance,

1    BLI.

2              THE COURT:  Okay.

3              MR. KUSHNER:  So, Your Honor, we had been in

4    discussions with the trustee on this issue.  We couldn't

5    agree, which is why we had to file that letter.  We're just

6    seeking to have BLI join in the extraterritoriality motion.

7              THE COURT:  But the trustee's not looking to amend

8    its complaint as to you.  He's already won that right,

9    right?

10             MR. KUSHNER:  And we would --

11             MR. LONG:  That's right, Your Honor.  This case

12   was fully briefed --

13             THE COURT:  He's saying it's law of the case.

14             MR. KUSHNER:  He -- but he's also conceded that

15   the law has changed.  We think Judge Rakoff's decision

16   applies to --

17             THE COURT:  I think the -- look, just to cut you

18   short, I read the letters and he's arguing that you're bound

19   by law of the case.  If you don't like a decision, you have

20   to go and appeal.  I suppose you can make another argument

21   -- you can make an argument that law of the case shouldn't

22   apply and that you should have an opportunity because of an

23   intervening change in the law to make a motion to dismiss,

24   which I guess you're free to make, but -- and I know you

25   have an interest in the issues and the issues may ultimately

1    determine the outcome of the motion I just mentioned, but

2    he's not seeking to amend his complaint as to you.

3              MR. KUSHNER:  Yeah, and we're -- we think as a

4    matter of judicial efficiency, of course that is what's

5    going to happen.  We're going to have to file a motion to

6    dismiss in our adversary proceeding.  Instead of having

7    duplicative briefing on the exact same issue, why can't we

8    just say, you know, I can join in the exact same motion as

9    pending in front of the Court?

10             THE COURT:  Because you are not a party to this

11   proceeding even though the issue that you're going to raise

12   is really the same issue, but you're in a different

13   situation from everybody else.  You litigated the

14   extraterritoriality decision and you lost it, right, before

15   Judge Lifland.

16             MR. KUSHNER:  Yes, but --

17             THE COURT:  I read the decision yesterday.  So

18   he's not looking to amend this complaint as against you, and

19   it comes down to that.  This is a procedure designed to

20   facilitate the amendment of complaints to comply with the

21   extraterritoriality decision.

22             MR. KUSHNER:  Your Honor, my understanding is

23   that, and the trustee can correct me if I'm wrong, is if we

24   did in fact file a motion for judgment on the pleadings and

25   then sought joinder of that motion with this pending

1   extraterritoriality motion, the trustee would decline to

2   grant his consent.  Is that --

3           THE COURT:  I don't know.

4           MR. KUSHNER:  I just want to confirm on the record

5   that that is correct.

6           THE COURT:  You can talk to him.  I don't know

7   what he plans to do when as -- I don't even know what your

8   complaint says.  Your complaint may be legally sufficient

9   even under Judge Rakoff's decision for all I know.  I

10  haven't looked at it.  I don't know what it alleges.

11          MR. KUSHNER:  It alleges -- it's exactly the same.

12          THE COURT:  Look, I'm not going to -- I told you

13  why I don't think you're entitled as a matter of right to

14  participate in this process.  You're in a different

15  situation.  In the end, you may be in the same situation,

16  but he is not seeking to amend his complaint as to you, and

17  that's what this procedure is designed to effectuate.

18          MR. KUSHNER:  Okay.

19          THE COURT:  All right.

20          MR. LONG:  Thank you, Your Honor.

21          THE COURT:  Well spoken.  All right, next.  Wait,

22  there's one more.  I have this FIM.

23          MS. GRIFFIN:  We're changing counsel.

24          THE COURT:  All right.  Like the Met bullpen.

25  Please hold it down.  I have another matter.  If you want to

1   speak, speak outside.  What respect.  Please, I have another

2   matter.  If you want to speak, speak outside.  Go ahead.

3           MS. PONTO:  Geraldine Ponto, Baker Hostetler

4   representing the trustee.

5           MS. KLEINICK:  Jodi Kleinick from Paul Hastings

6   representing FIM Limited, FIM Advisors, Frederico Ceretti,

7   and Carlo Grosso.

8           THE COURT:  Okay, go ahead.

9           MS. KLEINICK:  Your Honor, this is my request for

10  a conference so --

11          THE COURT:  All right, I'll hear you.

12          MS. KLEINICK:  -- you want us to go first.  Your

13  Honor, all of my clients are foreign defendants who are

14  alleged to have received subsequent transfers from other

15  foreign entities.  There's one cause of action asserted in

16  the complaint against them under sections 550 and 551 to

17  avoid and recover these subsequent transfers.  We requested

18  this conference because we have been attempting to resolve a

19  dispute with the trustee's counsel for the past six months

20  over an objectively false allegation in the complaint that

21  my client supposedly have a New York bank account at Brown

22  Brothers Harriman.  I can go through the history --

23          THE COURT:  I read the papers -- I read online

24  what you filed with all the exhibits.  I don't have a copy

25  of that, but I read it.

Page 34

 1              MS. KLEINICK:  Okay.  The allegation in the

 2     complaint is a very clear one.  It says "Kingate Management

 3     pays -- paid fees to FIM Limited at its account with Brown

 4     Brothers Harriman & Co. in New York, New York."  The

 5     allegation is absolutely false.  FIM Limited never had any

 6     account at BBH.  It has always maintained its accounts at

 7     MeesPierson Guernsey in the Channel Islands, and it has

 8     never held any U.S. account.

 9              In May, I wrote to the trustee's counsel and

10     advised the trustee's counsel that this allegation was

11     false.  I explained that the BBH account that the trustee

12     was referring to in the complaint was actually an account

13     that belonged to MeesPierson Guernsey and that MeesPierson

14     used that account as a correspondent bank account.

15              Now the trustee rejected our letter, told us that

16     they had a good faith basis for the allegation and that they

17     looked forward to engaging with -- in discovery with us.

18     Now my clients have previously moved to withdraw the

19     reference on extraterritoriality grounds and then as Your

20     Honor knows, Judge Rakoff issued his decision on

21     extraterritoriality.  And there are two significant things

22     to note about that decision in this context, and we're not

23     trying to argue the merits of the decision, but --

24              THE COURT:  My question is what is the relief

25     you're seeking by letter today?

1              MS. KLEINICK:  What we're trying to do, Your

2     Honor, and we've been trying on -- I'd say we've been going

3     above and beyond the call, is trying to resolve this without

4     filing a formal sanctions motion.

5              THE COURT:  Okay.

6              MS. KLEINICK:  We have provided the trustee to

7     date with three separate declarations and I'd like to just

8     walk you through them very quickly because I can't even

9     imagine, given where we are, that the trustee is taking the

10    position --

11             THE COURT:  I understand your position.  My

12    question is you've written a letter to me, what is the

13    relief that you think you're entitled to today by virtue of

14    that letter, that's all.  It's a procedural question.

15             MS. KLEINICK:  Well, procedurally what we would --

16    we need to address the allegation, okay?  If the trustee --

17             THE COURT:  So normally you make a motion for

18    summary judgment and, you know, you attach the exhibits.

19    And if they say -- if there's no response to it, then I

20    guess you've established that there's no New York account

21    and whatever flows from that is the result.  But --

22             MS. KLEINICK:  Well, Your Honor, Judge --

23             THE COURT:  -- I'm just asking you what is --

24             MS. KLEINICK:  Yeah, so --

25             THE COURT:  You write a letter to the Court.

Page 36

1          MS. KLEINICK:  We write a letter to the --

2          THE COURT:  It's not a motion.  It's not a motion

3     for summary judgment.  Do you expect me to tell him to stop?

4     I just I don't understand what it is you're looking for.

5     And I understand your frustration, but you know, we have

6     procedures for resolving disputes.  I haven't heard from the

7     trustee.  If the trustee doesn't have a good faith basis, I

8     suppose you can seek sanctions under 28 USC 1927, maybe the

9     inherent power.  I don't know if you sent a safe harbor

10    motion.  I don't know what you've done, but --

11         MS. KLEINICK:  Well --

12         THE COURT:  -- this is not the way you resolve

13    these kind of issues.

14         MS. KLEINICK:  Your Honor, we have tried to

15    resolve this with the trustee and the reason that we're here

16    is because we need to address the allegation, okay?

17    Obviously, with - it's within the Court's inherent powers --

18         THE COURT:  Okay, I agree with you --

19         MS. KLEINICK:  -- to strike the allegation.

20         THE COURT:  What is it that you -- what is it --

21    I'm not going to strike it pursuant to a letter.

22         MS. KLEINICK:  Okay.  Alternatively, we can move

23    for sanctions.

24         THE COURT:  You can do that, you can move for

25    summary judgment.

1            MS. KLEINICK:  Which we were trying to avoid.

2            THE COURT:  I understand.

3            MS. KLEINICK:  But the fact is, is that as of

4    today, we've given the trustee three separate declarations:

5    one from my client saying it's never had an account at BBH

6    and the account is actually a MeesPierson account; a sworn

7    declaration from MeesPierson telling the trustee that the

8    account is its account at BBH; and a third declaration from

9    BBH itself, the bank, saying my client has never had an

10   account at BBH.  A this point, it is unethical for the

11   trustee's counsel to take the position that they can use

12   that allegation in the context of the upcoming

13   extraterritoriality briefing in order to try to force us

14   into discovery to trial and as an arrow in their quiver.  It

15   is unfathomable that we have to be here now in an attempt to

16   try and resolve this in a judicially efficient way without

17   wasting the Court's resources or my client's resources.

18           THE COURT:  What would you -- when you walk out of

19   here today, what relief is it that you would like?

20           MS. KLEINICK:  Well, either -- if Your Honor is

21   not willing to strike the allegation under its inherent --

22           THE COURT:  I don't have a motion before me.  How

23   can I strike anything?

24           MS. KLEINICK:  Well, you have the declarations.

25           THE COURT:  I don't have a motion for them and --

1          MS. KLEINICK:  Sua sponte -- the law is sua

2    sponte, Your Honor can strike the allegation under the

3    Court's inherent powers.  You don't need a motion to do

4    that.

5          THE COURT:  I got it.  Let me hear from the

6    trustee.

7          MS. KLEINICK:  But if Your Honor is not willing to

8    do that, what we'd like is a briefing schedule for our

9    sanctions motion.

10          MS. PONTO:  Your Honor, I was interested to hear

11    what the status conference sought to achieve today.  There

12    has been six months of correspondence back and forth.  At

13    the time we filed this complaint in March of this year, that

14    allegation was made.  That allegation also was made three

15    years ago in the third amended complaint.

16          THE COURT:  Okay, but now she says she's given you

17    proof that shows it's not correct.  Forget about what you

18    knew or didn't know --

19          MS. PONTO:  Your Honor, on the face of the --

20    again, this dispute is focused on one allegation in our very

21    fulsome complaint against one particular defendant, FIM

22    Limited.  While Paul Hastings may represent several

23    defendants, it is only as against FIM Limited.  The premise

24    of this status conference through the correspondence that we

25    submitted is the extraterritoriality issue, which -- and

Page 39

 1    they've speculated as to -- when she talked about a quiver,

 2    that they speculated as to the trustee's use of that

 3    allegation in connection with extraterritoriality.  We

 4    haven't taken any extraterritoriality position yet.

 5              With respect to those particular declarations, we

 6    have not had an opportunity to confront those -- that

 7    testimony, if you will.  We'd like that opportunity.  This -

 8    - if they made a summary judgment motion, we'd be entitled

 9    to discovery on that.  If they believe it's sanctionable,

10    Your Honor, as far as 1927 goes, the basis for relief under

11    Section 1927 is multiplication of the proceedings.  And if

12    any party has multiplied the proceedings, it has been the

13    Paul Hastings firm.  We have engaged, we have demonstrated

14    that we have in good faith made the allegation.  If you look

15    at the face of the invoice, it's on FIM Limited letterhead.

16    It's addressed to Kingate Management Limited, the management

17    company.  It's an invoice for fees.  It -- at the bottom it

18    has a couple of account numbers, MeesPierson being one.  It

19    has an account number for FIM Limited.  And it says in -- in

20    Brown Brothers Harriman, excuse me -- and it says in favor

21    of FIM Limited.  I do not know, standing here today, whether

22    FIM Limited has any interest in that account or what, under

23    foreign banking terminology, in favor of means.  And we

24    would like to explore that.

25              THE COURT:  All right, look, as I indicated, I

Page 40

1    can't grant any relief.  This is more like a venting session

2    than an application for relief.  I guess you can make a

3    motion for summary judgment.  They'll ask for discovery

4    because I assume, they're saying they haven't had the

5    opportunity to take discovery of the affiants.  They will

6    show me a document and I'll decide whether or not there's a

7    question of fact.  In terms of sanctions, you can -- I mean,

8    I guess you can make the sanctions motion.

9            MS. KLEINICK:  Your Honor, Judge Rakoff made very

10   clear in his decision --

11           THE COURT:  Please don't argue the merits of this

12   to me.  You have proceeded improperly.  If you want relief,

13   make a motion and they'll respond, and then there are rules

14   on how the motion is decided.  It is entirely improper to

15   write a letter and request relief by letter of the type of

16   relief you're seeking, okay?

17           MS. KLEINICK:  Okay.  Your Honor, can we have a

18   return date for the sanctions motion then?

19           THE COURT:  My courtroom deputy is out today.  You

20   can call her tomorrow and get a return date.  Okay.

21           MS. KLEINICK:  Thank you.

22           MS. PONTO:  Thank you, Your Honor.

23           THE COURT:  Thank you.

24       (Proceedings concluded at 10:42 a.m.)

25

Page 41

1                    C E R T I F I C A T I O N

2

3    I, Jamie Gallagher, certify that the foregoing transcript is

4    a true and accurate record of the proceedings.

5

6
      Jamie Gallagher
7                                   Digitally signed by Jamie Gallagher
                                    DN: cn=Jamie Gallagher, o=Veritext,
8                                   ou, email=digital@veritext.com, c=US
                                    Date: 2014.11.20 16:53:34 -05'00'

     Veritext

9

     330 Old Country Road

10

     Suite 300

11

     Mineola, NY 11501

12

13

     Date:  November 20, 2014

14

15

16

17

18

19

20

21

22

23

24

25