Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
Irving H. Picard
Email: ipicard@bakerlaw.com
David J. Sheehan
Email: dsheehan@bakerlaw.com
Seanna R. Brown
Email: sbrown@bakerlaw.com
Heather R. Wlodek
Email: hwlodek@bakerlaw.com

Hearing Date: April 16, 2015
Hearing Time: 10:00 a.m. (EST)
Objection Deadline: April 9, 2015
Time: 4:00 p.m. (EST)

*Attorneys for Irving H. Picard, Trustee for the
Substantively Consolidated SIPA Liquidation of
Bernard L. Madoff Investment Securities LLC
and Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, <br><br>                  Plaintiff, <br><br>     v. <br><br> BERNARD L. MADOFF INVESTMENT SECURITIES LLC, <br><br>                Defendant. | Adv. No. 08-01789 (SMB) <br><br> SIPA Liquidation <br><br> (Substantively Consolidated) |
| In re: <br><br> BERNARD L. MADOFF, <br><br>                Debtor. | |

**SEVENTEENTH APPLICATION OF TRUSTEE AND BAKER & HOSTETLER LLP
FOR ALLOWANCE OF INTERIM COMPENSATION FOR SERVICES RENDERED
AND REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES INCURRED
<u>FROM AUGUST 1, 2014 THROUGH NOVEMBER 30, 2014</u>**

# TABLE OF CONTENTS

**Page**

I.    PRELIMINARY STATEMENT ............................................................1

II.    BACKGROUND ..............................................................................4

    A.    THE SIPA LIQUIDATION ....................................................4

    B.    THE TRUSTEE, COUNSEL AND CONSULTANTS ............5

    C.    PRIOR COMPENSATION ORDERS.....................................5

III.    SUMMARY OF SERVICES ...........................................................6

    A.    HARDSHIP PROGRAM ........................................................7

    B.    THE RECOVERY AND RETURN OF CUSTOMER PROPERTY .....................8

        a.    Recoveries Accomplished During The Compensation Period ..............8

IV.    DETAILED DESCRIPTION OF SERVICES ....................................8

    A.    MATTER 01 ..........................................................................9

        a.    Task Code 01: Trustee Investigation ..........................9

        b.    Task Code 02: Bankruptcy Court Litigation..............10

        c.    Task Code 03: Feeder Funds......................................11

        d.    Task Code 04: Asset Research and Sale .....................11

        e.    Task Code 05: Internal Meetings with Staff ..............12

        f.    Task Code 07: Billing and Trustee Reports................12

        g.    Task Code 08: Case Administration ...........................12

        h.    Task Code 09: Banks ..................................................13

        i.    Task Code 10: Court Appearances .............................14

        j.    Task Code 11: Press Inquiries and Responses ...........14

        k.    Task Code 12: Document Review ...............................14

        l.    Task Code 13: Depositions and Document Productions by the Trustee....................................14

# TABLE OF CONTENTS
### (continued)

**Page**

| | | | |
|---|---|---|---|
| | m. | Task Code 14: International | 14 |
| | n. | Task Code 15: Charities | 15 |
| | o. | Task Code 19: Non-Bankruptcy Litigation | 15 |
| | p. | Task Code 20: Governmental Agencies | 15 |
| | q. | Task Code 21: Allocation | 16 |
| B. | | MATTER 03 – CHAIS | 19 |
| C. | | MATTER 04 – MERKIN | 20 |
| D. | | MATTER 05 – CUSTOMER CLAIMS | 22 |
| | a. | Customer Claims | 22 |
| | b. | General Creditor Claims | 23 |
| | c. | The Trustee Has Kept Customers Informed Of The Status Of The Claims Process | 23 |
| E. | | MATTER 06 – VIZCAYA | 25 |
| F. | | MATTER 07 – MADOFF FAMILY | 26 |
| G. | | MATTER 09 – FAIRFIELD GREENWICH | 30 |
| H. | | MATTER 10 – HARLEY | 34 |
| I. | | MATTER 11 – COHMAD SECURITIES CORPORATION | 34 |
| J. | | MATTER 13 – KINGATE | 35 |
| K. | | MATTER 21 – AVOIDANCE ACTION LITIGATION | 37 |
| | a. | District Court Proceedings | 38 |
| | b. | Bankruptcy Court Proceedings | 39 |
| L. | | MATTER 29 – RYE/TREMONT | 41 |
| M. | | MATTER 30 – HSBC | 43 |
| N. | | MATTER 32 – UBS/LIF | 43 |
| O. | | MATTER 33 – NOMURA INTERNATIONAL PLC | 45 |

# TABLE OF CONTENTS
(continued)

| | | Page |
|---|---|---|
| P. | MATTER 34 – CITIBANK | 46 |
| Q. | MATTER 35 – NATIXIS | 47 |
| R. | MATTER 36 – MERRILL LYNCH | 49 |
| S. | MATTER 37 – ABN AMRO | 50 |
| T. | MATTER 38 – BANCO BILBAO | 51 |
| U. | MATTER 39 – FORTIS | 52 |
| V. | MATTER 40 – MEDICI | 53 |
| W. | MATTER 42 – EQUITY TRADING | 54 |
| X. | MATTER 43 – DEFENDER | 55 |
| Y. | MATTER 44 - MACCABEE | 56 |
| Z. | MATTER 45 – LEVEY | 57 |
| AA. | MATTER 46 – GLANTZ | 58 |
| BB. | MATTER 49 – GREENBERGER | 59 |
| CC. | MATTER 52 – DONALD FRIEDMAN | 59 |
| DD. | MATTER 53 – MAGNIFY | 60 |
| EE. | MATTER 54 – MENDELOW | 63 |
| FF. | MATTER 58 – PJ ADMINISTRATORS | 64 |
| GG. | MATTER 59 – STANLEY SHAPIRO | 64 |
| HH. | MATTER 60 – AVELLINO & BIENES | 65 |
| II. | MATTER 62 – SUBSEQUENT TRANSFERS | 66 |
| JJ. | MATTER 65 – LEGACY | 67 |
| KK. | MATTER 66 – LIEBERBAUM | 68 |
| LL. | MATTER 72 – PLAZA | 69 |
| MM. | MATTER 73 – BNP PARIBAS | 70 |

# TABLE OF CONTENTS

(continued)

**Page**

V.      COMPENSATION REQUESTED .......................................................................................71

VI.     REQUEST FOR INTERIM COMPENSATION SHOULD BE GRANTED ...................74

VII.    CONCLUSION.............................................................................................................77

TO THE HONORABLE STUART M. BERNSTEIN,
UNITED STATES BANKRUPTCY JUDGE:

Baker & Hostetler LLP ("B&H"), as counsel to Irving H. Picard, Esq., trustee (the

"Trustee") for the substantively consolidated liquidation proceeding of Bernard L. Madoff

Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act ("SIPA"), 15

U.S.C. § 78aaa *et seq.*,[1] and Bernard L. Madoff ("Madoff"), individually (collectively, the

"Debtor"), respectfully submits this seventeenth application (the "Application") on behalf of the

Trustee and itself for an order pursuant to § 78eee(b)(5) of SIPA, §§ 330 and 331 of title 11 of

the United States Code (the "Bankruptcy Code"), Rule 2016(a) of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules"), and the Order Pursuant to § 78eee(b)(5) of

SIPA, sections 105, 330 and 331 of the Bankruptcy Code, Bankruptcy Rule 2016(a), and Local

Bankruptcy Rule 2016-1 Establishing Procedures Governing Interim Monthly Compensation of

Trustee and Baker & Hostetler LLP, dated February 25, 2009 (ECF No. 126), as amended on

December 17, 2009 and June 1, 2011 (ECF Nos. 1078, 4125) (collectively, the "Second

Amended Compensation Order"), allowing and awarding (i) interim compensation for services

performed by the Trustee and B&H for the period commencing August 1, 2014 through and

including November 30, 2014 (the "Compensation Period") and (ii) reimbursement of the

Trustee's and B&H's actual and necessary expenses incurred during the Compensation Period,

and in support thereof, respectfully represents as follows:

## I.    PRELIMINARY STATEMENT

1.    The work completed by the Trustee and B&H, as counsel to the Trustee, during

the Compensation Period yielded significant results for BLMIS customers and the liquidation.

Through pre-litigation and other settlements, which were approved by the Bankruptcy Court

---

[1] References hereinafter to provisions of SIPA shall omit "15 U.S.C."

and/or the District Court, the Trustee has successfully recovered, or reached agreements to recover, approximately $9.857 billion as of November 30, 2014—more than 56% of the $17,550 billion of principal lost in the Ponzi scheme by those who filed claims—for the benefit of all customers of BLMIS with an allowed claim.

2.      The Trustee has made five interim distributions of customer property to date. *See* discussion *infra* Section IV(A)(q). The Trustee has distributed approximately $7.207 billion to BLMIS customers through March 19, 2015, inclusive of catch-up distributions and SIPC advances in the amount of $887.462 million. *See* discussion *infra* Section IV(A)(q).

3.      No administration costs, including the compensation of the Trustee and his counsel, will be paid out of any recoveries obtained by the Trustee for the benefit of BLMIS customers. Because the percentage commission schedule for trustees found in § 326(a) of the Bankruptcy Code is not applicable in a SIPA liquidation, see § 78eee(b)(5)(C) of SIPA, no applications filed by the Trustee have or will ever include a fee request based on recoveries made by the Trustee for the benefit of BLMIS customers. Rather, all fees, expenses, and administrative costs incurred by the Trustee and his counsel including, but not limited to, B&H; various international special counsel retained by the Trustee (collectively referred to herein as "International Counsel"), including Taylor Wessing LLP ("Taylor Wessing"), Browne Jacobson LLP ("Brown Jacobson"), Triay Stagnetto Neish Barristers & Solicitors ("Triay Stagnetto"), Williams Barristers & Attorneys ("Williams Barristers"); various special counsel to the Trustee (collectively referred to herein as "Counsel"), including Windels Marx Lane & Mittendorf, LLP ("Windels Marx"), Young Conaway Stargatt & Taylor, LLP ("Young Conaway"), Kelley, Wolter & Scott, P.A. ("Kelley Wolter"); and consultants, are paid out of administrative advances made by SIPC. As Judge Lifland affirmed: "Again, the emphasis is that these fees . . . are not

2

coming from any of the victims, and they're not coming from the estate."  Fifth Appl. Hr'g Tr. 32:15-17, Dec. 14, 2010.

4.      As the Trustee's and his counsels' fees and expenses are chargeable to the general estate and not to the fund of customer property (the "Customer Fund"), the payment of the same has absolutely no impact on the Trustee's current and future recoveries that have been and will be allocated to the Customer Fund for pro rata distribution to BLMIS customers whose claims have been allowed by the Trustee.

5.      In a liquidation proceeding such as this, where the general estate is insufficient to pay trustee and counsel compensation, SIPC plays a specific role with compensation and is required to advance funds to pay the costs of administration.  See SIPA §§ 78eee(b)(5)(c) and 78fff-3(b)(2).  SIPC has carefully reviewed this Application, as it has all other compensation applications, and has closely analyzed the time records and services rendered.  Each month, SIPC, the Trustee, and B&H engage in extensive discussions regarding billings, and the Trustee and B&H make reductions where appropriate and finalize the amounts that appear herein.  Thus, the requested fees and expenses in this Application include (i) fees at the Trustee's and B&H's hourly billable rates to which a public interest discount of 10% has been applied, and (ii) actual, necessary, and reasonable expenses incurred within the Compensation Period.

6.      During the hearing on the Eighth Interim Fee Application, Judge Lifland acknowledged the worldwide efforts of the Trustee and his counsel and approved the application:

> Well, having heard the description and being well aware of the worldwide activities started off by Bernie Madoff and the sequelae is left for everybody else to follow all the trails and the trails do lead almost everywhere in the world.  It is clear under the circumstances that a Herculean effort to follow those trails has been involved both with counsel here in the United States and counsel overseas.

Eighth Appl. Hr'g Tr. 16, Mar. 15, 2012, ECF No. 4736.

7.      No single document can capture all of the tasks engaged in by the Trustee and B&H since their appointment on December 15, 2008.  Hundreds of thousands of hours have been expended in support of the Trustee's efforts to liquidate the estate, determine customer claims, and advance the interests of all claimants by litigating and settling cases for the return of customer property ("Customer Property").  Moreover, the Trustee has vigorously defended the estate with respect to a number of litigations filed against it and against his protection of Customer Property.  The following discussion and materials attached to this Application cover the major categories of services for which allowance of compensation is sought.

8.      As Judge Lifland recognized, "[w]ith respect to the kinds of services that have been rendered here, the amounts requested, this is by any stretch of the imagination one of the largest, most complex sets of litigation that have come down the pike.  It's measured both in quality and quantity in the thousands with deadlines that have come . . . and it is a big stretch for any law firm or any organization to deal with."  Sixth Fee Appl. Hr'g Tr. 45:23-46:6, June 1, 2011.

## II.    BACKGROUND

### A.    THE SIPA LIQUIDATION

9.      The Trustee and B&H's prior interim fee applications, each of which is fully incorporated herein,[2] have detailed the circumstances surrounding the filing of this case and the events that have taken place during prior phases of this proceeding.

---

[2] Prior fee applications cover the periods from December 11, 2008 to May 31, 2009 (the "First Interim Fee Application") (ECF No. 320, 321); June 1, 2009 to September 30, 2009 (the "Second Interim Fee Application") (ECF No. 998, 1010); October 1, 2009 to January 31, 2010 (the "Third Interim Fee Application") (ECF No. 2188, 2189); February 1, 2010 to May 31, 2010 (the "Fourth Interim Fee Application") (ECF No. 2883); June 1, 2010 to September 30, 2010 (the "Fifth Interim Fee Application") (ECF No. 3207); October 1, 2010 to January 31, 2011 (the "Sixth Interim Fee Application") (ECF No. 4022); February 1, 2011 to May 31, 2011 (the "Seventh Interim Fee Application") (ECF No. 4376); June 1, 2011 to September 30, 2011 (the "Eighth Interim Fee Application") (ECF No. 4676); October 1, 2012 to January 31, 2012 (the "Ninth Interim Fee Application") ("ECF No. 4936); February 1, 2012 to June 30, 2012 (the "Tenth Interim Fee Application") (ECF No. 5097); July 1, 2012 to November 30, 2012

4

### B.    THE TRUSTEE, COUNSEL AND CONSULTANTS

10.    The Trustee and B&H's prior interim fee applications have detailed the description of the Trustee's background and experience.

11.    In rendering professional services to the Trustee, B&H has utilized a legal team comprised of professionals with extensive experience in areas such as bankruptcy, securities, tax, corporate, and litigation, permitting the Trustee to conduct this liquidation efficiently.

12.    The Ponzi scheme perpetrated by Madoff through BLMIS was vast in scope, long in duration, and broad in its geographical reach.  The Trustee, with the assistance of his counsel, has undertaken a comprehensive investigation of BLMIS, Madoff, and hundreds of related individuals and entities.  To this end, the Trustee has engaged not only the services of counsel, but also those of forensic accountants and legal experts, including, but not limited to, AlixPartners LLP ("AlixPartners"), the Trustee's consultant and claims agent; FTI Consulting ("FTI"); and several investigative and industry consultants (collectively referred to herein as the "Consultants").

### C.    PRIOR COMPENSATION ORDERS

13.    The Trustee and B&H filed applications for allowance of interim compensation for professional services rendered and reimbursement of actual and necessary expenses incurred in prior periods, and this Court approved those applications:

---

(the "Eleventh Interim Fee Application") (ECF No. 5333); December 1, 2012 to April 30, 2013 (the "Twelfth Interim Fee Application") (ECF No. 5490); and May 1, 2013 through July 31, 2013 (the "Thirteenth Interim Fee Application") (ECF No. 5566); August 1, 2013 through November 30, 2013 (the "Fourteenth Interim Fee Application") (ECF No. 5980); December 1, 2013 through March 31, 2014 (the "Fifteenth Interim Fee Application") (ECF No. 7470); and April 1, 2014 through July 31, 2014 (the "Sixteenth Interim Fee Application") (ECF No. 8549).

| Applications | Orders Entered[3] |
|---|---|
| First Application (ECF Nos. 320, 321) | August 6, 2009 (ECF No. 363); March 7, 2013 (ECF No. 5258) |
| Second Application (ECF Nos. 998, 1010) | December 17, 2009 (ECF No. 1078) |
| Third Application (ECF Nos. 2188, 2189) | May 6, 2010 (ECF No. 2251) |
| Fourth Application (ECF No. 2883) | September 14, 2010 (ECF No. 2981) |
| Fifth Application (ECF No. 3207) | December 14, 2010 (ECF No. 3474); March 7, 2013 (ECF No. 5258) |
| Sixth Application (ECF No. 4022) | June 1, 2011 (ECF No. 4125); March 7, 2013 (ECF No. 5258) |
| Seventh Application (ECF No. 4376) | October 19, 2011 (ECF No. 4471); March 7, 2013 (ECF No. 5258) |
| Eighth Application (ECF No. 4676) | January 2, 2013 (ECF No. 5181);[4] March 7, 2013 (ECF No. 5258) |
| Ninth Application (ECF No. 4936) | August 30, 2012 (ECF No. 5012); March 7, 2013 (ECF No. 5258) |
| Tenth Application (ECF No. 5097) | December 19, 2012 (ECF No. 5161); March 7, 2013 (ECF No. 5258) |
| Eleventh Application (ECF No. 5333) | June 5, 2013 (ECF No. 5383) |
| Twelfth Application (ECF No. 5490) | October 17, 2013 (ECF No. 5547) |
| Thirteenth Application (ECF No. 5566) | December 17, 2013 (ECF No. 5605) |
| Fourteenth Application (ECF No. 5980) | April 18, 2014 (ECF No. 6343) |
| Fifteenth Application (ECF No. 7470) | August 28, 2014 (ECF No. 7825) |
| Sixteenth Application (ECF No. 8549) | December 22, 2014 (ECF No. 8867) |

## III.   SUMMARY OF SERVICES

14.   A SIPA proceeding contemplates, *inter alia*, the processing of customer claims, the orderly liquidation of the business of a broker-dealer, and the return of Customer Property to the failed brokerage's customers.   Accordingly, the Trustee's and B&H's services, which are summarized in greater detail below, are comprised of specific tasks that are critical to accomplishing those objectives.

---

[3] On March 7, 2013, this Court entered an Errata Order (ECF No. 5258) to correct errors in the First, Fifth, Sixth, Seventh, Eighth, Ninth, and Tenth orders approving prior applications for allowance of interim compensation that were filed by the Trustee, B&H, and certain of the Counsel and International Counsel retained by the Trustee.   The Errata Order did not affect the amount of compensation payable to the Trustee, B&H, or any of the Trustee's Counsel and International Counsel other than, with respect to SCA Creque, an additional $0.60 became due and owing to that firm.

[4] This order amends and supersedes this Court's March 19, 2012 order (ECF No. 4735), approving the Eighth Interim Fee Application.

## A.    **HARDSHIP PROGRAM**

15.    The Trustee and B&H implemented a Hardship Program in an effort to accelerate SIPA protection for BLMIS victims suffering hardship.  The first phase of this program is more fully described in prior interim fee applications.  Based on the information received, the Trustee did not sue approximately 250 individuals.

16.    The Trustee expanded the Hardship Program into a second phase at the time he commenced avoidance actions to recover Customer Property.  The Trustee has not pursued, or has terminated, avoidance actions against BLMIS account holders suffering proven hardship.  In November 2010, the Trustee announced that, to forego an avoidance action, the account holder must submit financial and other pertinent information.  Through this program, the Trustee has worked with a substantial number of applicants to confirm their hardship status and dismissed defendants in avoidance actions.

17.    As of November 31, 2014, the Trustee had received 521 applications from avoidance action defendants relating to 334 adversary proceedings.  After reviewing the facts and circumstances presented in each application and, in many cases, requesting additional verifying information, the Trustee dismissed 209 Hardship Program applicants-defendants from avoidance actions.  As of November 31, 2014, there were 70 applications still under review and 242 that were resolved because they were either withdrawn by the applicant, deemed withdrawn for failure of the applicant to pursue the application, denied for lack of hardship or referred for consideration of settlement.  The Trustee has also extended the time for applicants to answer or otherwise respond to avoidance action complaints while their Hardship Program applications are pending.

18.    The Trustee established a Hardship Program Hotline with a telephone number and electronic mail address.  A large number of potential applicants have been assisted by the Trustee through the use of this hotline.

### B.    THE RECOVERY AND RETURN OF CUSTOMER PROPERTY

#### a.    Recoveries Accomplished During The Compensation Period

19.    Without the need for protracted litigation, during the Compensation Period, the Trustee settled twenty-five cases for $24,935,744.95.  As of November 30, 2014, the Trustee had successfully recovered approximately $9.857 billion.

20.    The Trustee entered into settlements subsequent to the Compensation Period that brought an additional $741.928 million into the Customer Fund.

21.    The Trustee is also engaged in ongoing settlement negotiations with a number of parties that when completed, will result in additional recoveries for the benefit of customers without the delay and expense of protracted litigation.

22.    Through the end of the Compensation Period, the Trustee recovered $552,633,587.16 as a result of preferences and other settlements that were made pursuant to agreements subject to the net equity dispute.  The United States Supreme Court (the "Supreme Court") declined to review the net equity dispute.

### IV.    DETAILED DESCRIPTION OF SERVICES

23.    Given the unprecedented fraud perpetrated by Madoff, the issues presented by this liquidation are complex, discovery is wide-ranging, and the litigation that has ensued is hotly contested.  All of this requires an enormous effort by the Trustee and his counsel for the benefit of the victims.  The following is a more detailed synopsis of the significant services rendered by the Trustee and B&H during the Compensation Period, organized according to internal B&H matter numbers and task codes.

24.     Matter Number 01 is the general matter number used for tasks by the Trustee and B&H.  Task numbers for Matter Number 01 have been assigned for specific categories of work to permit a more detailed analysis of the fees incurred.

25.     Matter Numbers 03-73 (with the exception of Matter Number 05, which relates to customer claims) relate to litigation brought by the Trustee and B&H against various individuals, feeder funds, and entities.   In each of these matters, the Trustee and B&H attorneys perform several functions, including the following tasks:  conduct legal research, draft internal memoranda, engage in internal meetings regarding investigation and litigation strategy, and engage in discussions with counsel for defendant(s).   Rather than repeat these tasks, the description of each matter will be limited to matter-specific tasks and case activity that occurred during the Compensation Period.

A.     **MATTER 01**

26.     This matter categorizes time spent by the Trustee and B&H and encompasses the below enumerated tasks.

a.     **Task Code 01: Trustee Investigation**

27.     This category relates to time spent with respect to the investigation into BLMIS, Madoff, and various assets.

28.     The Trustee is seeking the return of billions of dollars to the estate of BLMIS for distribution to customers in accordance with SIPA.  In carrying out his investigation into the many layers of complex financial transactions engaged in by Madoff and those who worked for him, the Trustee has issued hundreds of subpoenas, analyzed the myriad documentation received, and conducted numerous follow-up activities to enforce the Trustee's rights to the return of Customer Property.

29.    During the Compensation Period, the Trustee and B&H attorneys initiated, participated in, and monitored international proceedings involving BLMIS.  B&H attorneys continued the investigation of banks, feeder funds, auditors, insiders, Madoff's friends and family members, former BLMIS employees, and other Madoff-related parties.

30.    B&H attorneys discussed and conferenced with SIPC, Windels Marx, and International Counsel regarding investigation and litigation strategy, prepared requests for discovery, negotiated other discovery-related issues with adversaries, and organized and reviewed documents received in response to third-party inquiries and subpoenas.

        b.    **Task Code 02: Bankruptcy Court Litigation**

31.    This category relates to time spent conducting legal research, drafting, and filing various pleadings and motions in the main bankruptcy proceeding that affect the hundreds of adversary proceedings filed by the Trustee.

32.    During the Compensation Period, B&H attorneys focused on various administrative tasks relating to the pending litigations.  They continued to develop overall case strategies applicable to the pending litigations and researched various legal issues related to those litigations including developments in Ponzi law, fraudulent transfer law, bankruptcy matters, privilege, evidence, and rules regarding experts and expert testimony.  B&H attorneys also researched issues relating to injunctions and filed a reply brief in the *Goldman* matter.  *Picard v. Marshall*, Adv. Pro. No. 14-1840 (Bankr. S.D.N.Y.), ECF No. 32 (May 1, 2014).

33.    In particular, the Trustee and B&H attorneys analyzed several opinions issued by the District Court relating to extraterritoriality and the good faith standard under section 548(c) of the Bankruptcy Code.  On April 27, 2014, the District Court issued an opinion and order relating to the good faith standard issue (the "Good Faith Standard Opinion and Order").  See discussion *infra* Section IV(K).  The Trustee prepared and filed a motion for interlocutory appeal

of the Good Faith Standard Opinion and Order, which was denied by the District Court on July 21, 2014. *In re Madoff Securities*, 12-115 (JSR) (ECF No. 555). Furthermore, on July 6, 2014, Judge Rakoff issued an opinion and order relating to the extraterritoriality issue (the "Extraterritoriality Opinion and Order"). See discussion *infra* Section IV(K).

34.     Following the entry of the Good Faith Standard Opinion and Order and the Extraterritoriality Opinion and Order, the Trustee prepared an omnibus motion for expedited discovery related to the good faith issue and for leave to replead regarding the issues of good faith and extraterritoriality, which affected over 86 adversary proceedings (the "Omnibus Motion"). (ECF No. 7827).

c.     **Task Code 03: Feeder Funds**

35.     This matter categorizes time spent by the Trustee and his counsel pursuing avoidance and recovery actions against entities which maintained accounts at BLMIS and had their own investors. The Trustee and his counsel continue to identify, investigate, and monitor feeder funds in the United States and abroad and bring actions against such feeder funds for the recovery of Customer Property. Separate matter numbers have been assigned to individual feeder funds sued by the Trustee.

d.     **Task Code 04: Asset Research and Sale**

36.     This category relates to time spent with respect to the discovery, recovery, and liquidation of various assets for the benefit of the estate.

37.     During the Compensation Period, the Trustee and B&H attorneys conducted due diligence in connection with the liquidation of assets held by Madoff Family, LLC; conducted due diligence in connection with certain interests of Madoff Energy LLC and its affiliates; and continued to value the intellectual property interest in Primex, evaluated corporate governance

11

issues, strategized as to its sale and engaged consultants to assist in the valuation and marketing of certain intellectual property of Primex.

38.     In addition, during the Compensation Period, the Trustee completed the sales of certain assets through auctions at Sotheby's and Litchfield County Auctions.

39.     During the Compensation Period, the Trustee continued to recover funds from securities that BLMIS purchased and sold prior to December 11, 2008 in connection with its proprietary trading operations.

e.       **Task Code 05: Internal Meetings with Staff**

40.     This category relates to time spent by the Trustee and B&H attorneys in internal meetings regarding the liquidation proceeding, investigation and litigation strategy, as well as training sessions for attorneys and paraprofessionals.  Internal meetings and discussions have ensured the effective use of time spent on this matter and avoided duplicative efforts.

f.       **Task Code 07: Billing and Trustee Reports**

41.     This category relates to time spent by the Trustee, B&H attorneys, and paraprofessionals reviewing the monthly B&H billing statements prior to submitting the statements to SIPC to ensure that time was properly billed, correcting any errors in time entries, writing off certain time and expenses as agreed to by B&H, preparing fee applications, responding to motions for leave to appeal fee orders, preparing Trustee reports, and other related tasks.

g.       **Task Code 08: Case Administration**

42.     This category relates to time spent assisting the efficient administration of the case.

43.     The Trustee filed several motions before this Court that govern the treatment of and procedures related to the efficient litigation of these actions.  These procedures ensure compliance with the Bankruptcy Code and SIPA, as well as consistency and transparency.

44.     On October 20, 2011, the Trustee and B&H moved for an Order Establishing Noticing Procedures in order to streamline the procedural aspects of service in the main proceeding and all related adversary proceedings.  (ECF No. 4469).  This Court entered the Order on December 5, 2011.  (ECF No. 4560).

45.     On October 28, 2011, this Court entered an Order Granting Supplemental Authority To Stipulate To Extensions Of Time To Respond And Adjourn Pre-Trial Conferences to March 16, 2012.  (ECF No. 4483).  Thereafter, on January 30, 2012, a supplemental Order was entered granting authority to extend time to respond to the complaint and adjourn the pre-trial conferences through September 14, 2012.  (ECF No. 4483).  Subsequently, on December 11, 2013, a supplemental Order was entered granting authority to extend time to respond to the complaint and adjourn the pre-trial conferences through July 18, 2014.  (ECF No. 5358).

h.      **Task Code 09: Banks**

46.     Primarily as a result of international and domestic feeder fund investigations, the Trustee commenced investigations of numerous banks and other financial institutions involved with BLMIS.  Time categorized under this task code relates to the investigation of target banks and the roles played by the banks in the Ponzi scheme, the preparation of letters of inquiry and subpoenas, the review of responses to letters and subpoenas received from such banks and other third parties, and the preparation of pleadings relating to claims that will be brought against such banks.  Separate matter numbers have been assigned to banks sued by the Trustee.

i.      **Task Code 10: Court Appearances**[5]

47.    This category relates to time spent by the Trustee and B&H attorneys making court appearances in this Court, other federal courts within the Second Circuit, and various courts abroad.

j.      **Task Code 11: Press Inquiries and Responses**

48.    This category relates to time spent by the Trustee, B&H attorneys, and paraprofessionals in responding to press inquiries, preparing and issuing press releases, and preparing for and holding press conferences relating to BLMIS, Madoff, customer claims, and the recovery of funds.

k.      **Task Code 12: Document Review**

49.    This category relates to time spent by the Trustee and B&H attorneys reviewing documents received from parties and third parties in response to the hundreds of letters and subpoenas issued by the Trustee.

l.      **Task Code 13: Depositions and Document Productions by the Trustee**

50.    This category generally relates to time spent by the Trustee and B&H attorneys conducting discovery that touches upon more than one matter and responding to discovery propounded to the Trustee by various third parties.

m.      **Task Code 14: International**

51.    The fraud Madoff perpetrated through BLMIS has many international implications involving foreign individuals, feeder funds, and international banking institutions. The Trustee is actively investigating and seeking to recover assets for the BLMIS estate in many different jurisdictions, including Austria, the Bahamas, Bermuda, the British Virgin Islands

---

[5]Many attorneys making court appearances bill their time for appearances to either Task Code 02–Bankruptcy Court Litigation or to the matter number that relates to that specific litigation, rather than to Task Code 10.

14

("BVI"), Canada, the Cayman Islands, England, France, Gibraltar, Guernsey, Ireland, Israel, Liechtenstein, Luxembourg, Spain, and Switzerland. These investigations utilize a combination of voluntary requests for information and the use of the Trustee's subpoena power.

52.     This category relates to the ongoing investigation, the preparation and service of subpoenas against entities in many jurisdictions, service of process, and communication with International Counsel regarding the utilization of local laws to obtain necessary discovery and pursue recovery of customer property in foreign jurisdictions. The investigation is made challenging by the broad array of bank secrecy statutes and other foreign legislation designed to limit discovery.

53.     In addition, time categorized by this task code relates to the participation in and monitoring of various BLMIS-related third-party actions brought in Europe and the Caribbean, as well as discussions with International Counsel on strategic and jurisprudential matters that involve multiple actions against more than one defendant.

n.       **Task Code 15: Charities**

54.     This category relates to reviewing financial documents and conducting due diligence of charitable accounts held at BLMIS, corresponding and meeting with the representatives of these charities to obtain further information concerning transfers from their BLMIS accounts and discussing settlement and resolution of issues.

o.       **Task Code 19: Non-Bankruptcy Litigation**

55.     This matter categorizes time spent by the Trustee and B&H attorneys on non-bankruptcy litigation.

p.       **Task Code 20: Governmental Agencies**

56.     This matter categorizes time spent by the Trustee and B&H attorneys responding to requests for information by the United States Attorney's Office for the Southern District of

New York, the Internal Revenue Service, various congressional representatives, and other government agencies.

q.    **Task Code 21: Allocation**

57.    This matter categorizes time spent by the Trustee and B&H attorneys coordinating the distribution of Customer Property.

58.    The ultimate purpose of marshaling the Customer Fund is to distribute those monies, as SIPA directs, to BLMIS customers with allowed claims.

59.    On May 4, 2011, the Trustee sought entry of an order approving an initial allocation of property to the Customer Fund, and authorizing an interim distribution to customers whose claims have not been fully satisfied because their net equity claims as of the Filing Date exceeded the statutory SIPA protection limit of $500,000 (the "First Allocation Motion").  The First Allocation Motion was unopposed, and on July 12, 2011, this Court entered the Order Approving the Trustee's Initial Allocation of Property to the Fund of Customer Property and Authorizing An Interim Distribution to Customers.  (ECF No. 4217).

60.    From October 5, 2011 through the end of the Compensation Period, the Trustee distributed to BLMIS customers approximately $517.254 million,[6] or 4.602% of each BLMIS customer's allowed claim, unless the claim had been fully satisfied (the "First Interim Distribution").  The First Interim Distribution was made to 1,318 BLMIS account holders, and 39 payments went to claimants who qualified for hardship status under the Trustee's Hardship Program whose claims had not been previously satisfied.

---

[6]Subsequent to the Compensation Period ending on November 30, 2014, an additional $87.994 million was distributed as catch-up payments, bringing the total First Interim Distribution amount to $605.248 million through March 19, 2015.

61.    On July 26, 2012, the Trustee filed a motion for a second allocation and second interim distribution to customers. (ECF No. 4930).  On August 22, 2012, this Court held a hearing and entered an Order Approving the Trustee's Second Allocation of Property to the Fund of Customer Property and Authorizing a Second Interim Distribution to Customers, with a 3% reserve.  (ECF No. 4997).

62.    From September 19, 2012 through the end of the Compensation Period, the Trustee distributed to BLMIS customers approximately $3.753 billion,[7] or 33.556% of each BLMIS customer's allowed claim, unless the claim had been fully satisfied (the "Second Interim Distribution").  The Second Interim Distribution was made to 1,304 BLMIS account holders, and 39 payments went to claimants who qualified for hardship status under the Trustee's Hardship Program whose claims had not been fully satisfied previously.

63.    On February 13, 2013, the Trustee filed a motion for a third allocation and third interim distribution to customers.  (ECF No. 5230).  On March 13, 2013, this Court held a hearing and entered an Order Approving the Trustee's Third Allocation of Property to the Fund of Customer Property and Authorizing a Third Interim Distribution to Customers, with a 3% reserve.  (ECF No. 5271).

64.    From March 29, 2013 through the end of the Compensation Period, the Trustee distributed approximately $524.015 million,[8] or 4.721% of each BLMIS customer's allowed claim, unless the claim had been fully satisfied (the "Third Interim Distribution").  The Third Interim Distribution was made to 1,119 BLMIS account holders, and 26 payments went to

---

[7]Subsequent to the Compensation Period ending on November 30, 2014, an additional $641.444 million was distributed as catch-up payments, bringing the total Second Interim Distribution amount to $4.395 billion through March 19, 2015.

[8]Subsequent to the Compensation Period ending on November 30, 2014, an additional $90.244 million was distributed as catch-up payments, bringing the total Third Interim Distribution amount to $614.259 million through March 19, 2015.

17

claimants who qualified for hardship status under the Trustee's Hardship Program whose claims had not been fully satisfied previously.

65.     On March 25, 2014, the Trustee filed a motion for a fourth allocation and fourth interim distribution to customers. (ECF No. 6024). On April 17, 2014, this Court held a hearing and entered an Order Approving the Trustee's Fourth Allocation of Property to the Fund of Customer Property and Authorizing a Fourth Interim Distribution to Customers, with a 3% reserve. (ECF No. 6340).

66.     From May 5, 2014 through the end of the Compensation Period, the Trustee distributed approximately $352.207 million,[9] or 3.180% of each BLMIS customer's allowed claim, unless the claim had been fully satisfied (the "Fourth Interim Distribution"). The Fourth Interim Distribution was made to 1,087 BLMIS account holders, and 25 payments went to claimants who qualified for hardship status under the Trustee's Hardship Program whose claims had not been fully satisfied previously. When combined with the approximately $517.254 million First Interim Distribution, the $3.753 billion Second Interim Distribution, the $524.015 million Third Interim Distribution, and the approximately $816.747 million of advances committed by the Securities Investor Protection Corporation ("SIPC"), the Trustee had distributed approximately $5.964 billion to BLMIS customers through the end of the Compensation Period, or 46.059% of each BLMIS customer's allowed claim. This represents a significant milestone in this litigation, with 1,132 BLMIS accounts fully satisfied through the end of the Compensation Period. The 1,132 fully satisfied accounts represent more than 51% of accounts with allowed claims.

---

[9]Subsequent to the Compensation Period ending on November 30, 2014, an additional $60.778 million was distributed as catch-up payments, bringing the total Fourth Interim Distribution amount to $412.985 million through March 19, 2015.

67.     After the Compensation Period, on December 22, 2014, the Trustee filed a motion for a fifth allocation and fifth interim distribution to customers.  (ECF No. 8860).  On January 15, 2015, this Court held a hearing and entered an Order Approving the Trustee's Fifth Allocation of Property to the Fund of Customer Property and Authorizing a Fifth Interim Distribution to Customers, with a 3% reserve.  (ECF No. 9014).

68.     On February 6, 2015, the Trustee distributed approximately $355.761 million, or 2.743% of each BLMIS customer's allowed claim, unless the claim had been fully satisfied (the "Fifth Interim Distribution").  The Fifth Interim Distribution was made to 1,077 BLMIS account holders, and 23 payments went to claimants who qualified for hardship status under the Trustee's Hardship Program whose claims had not been fully satisfied previously.  As a result of the Fifth Interim Distribution, over 52% of the accounts with allowed customer claims have been satisfied.  When combined with the $5.964 billion distributed through the end of the Compensation Period, and catch-up distributions and SIPC advances in the amount of $887.462 million,[10] the Trustee had distributed approximately $7.207 billion to BLMIS customers through March 19, 2015, or 48.802% of each BLMIS customer's allowed claim.

## B.    MATTER 03 – CHAIS

69.     This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against the Estate of Stanley Chais, Pamela Chais, and a number of related individuals and entities (collectively, the "Chais Defendants") seeking the return of more than $1.1 billion under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable laws, for preferences, fraudulent conveyances, and damages in connection with

---

[10] After the Compensation Period and through March 19, 2015, the total additional amount distributed was $887.462 million.  Such amount is comprised of catch-up distributions of: (i) $87.994 million for the First Interim Distribution, (ii) $641.444 million for the Second Interim Distribution, (iii) $90.244 million for the Third Interim Distribution, and (iv) $60.778 million for the Fourth Interim Distribution, together with SIPC advances committed in the amount of $7.003 million.

certain transfers of property by BLMIS to or for the benefit of the Chais Defendants. *Picard v. Estate of Chais, et. al.*, Adv. No. 09-01172 (SMB) (Bankr. S.D.N.Y.).

70.     During the Compensation Period, B&H attorneys continued to participate in mediation discussions pursuant to the mediation ordered by this Court on July 18, 2012 in *Picard v. Chais* and the related action to enforce the automatic stay and enjoin certain state court third party actions brought by investors of Stanley Chais and the California Attorney General. B&H attorneys also continued their investigation of the Chais Defendants and likely recipients of subsequent transfers from the Chais Defendants' BLMIS accounts.

71.     Certain of the Chais Defendants also filed two motions to withdraw the reference to the District Court on April 2, 2012 (docketed as Nos. 12 Civ. 02371 (JSR) and 12 Civ. 02658 (JSR) (S.D.N.Y.)). B&H attorneys previously drafted various motions and pleadings related to these motions to withdraw the reference and continue to pursue legal remedies related to certain orders entered by the District Court.

### C.     MATTER 04 – MERKIN

72.     This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against sophisticated money manager and Madoff associate J. Ezra Merkin ("Merkin"), Gabriel Capital Corporation ("GCC"), and Merkin's funds: Gabriel Capital, L.P. ("Gabriel Capital"), Ariel Fund, Ltd. ("Ariel Fund"), Ascot Partners, L.P. ("Ascot Partners"), and Ascot Fund Limited ("Ascot Fund", collectively, the "Merkin Defendants"). The Trustee alleges that Merkin knew or was willfully blind to the fact that Madoff's investment advisory business was predicated on fraud and as filed seeks the return of nearly $560 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences and fraudulent conveyances in connection with certain transfers of property by

BLMIS to or for the benefit of the Merkin Defendants.  *Picard v. J. Ezra Merkin*, *et al.,* Adv. No. 09-01182 (SMB) (Bankr. S.D.N.Y.).

73.    During the Compensation Period, B&H attorneys continued to advance the litigation of the *Merkin* case.  On August 12, 2014, Judge Bernstein issued his decision on the Merkin Defendants' motion to dismiss, granting the motion in part and denying it in part.  Judge Bernstein's decision held that the Trustee adequately pleaded that Merkin was willfully blind to the fact that Madoff's investment advisory business was predicated on fraud, which allows the Trustee to continue to pursue the avoidance and recovery of intentional fraudulent transfers that were made within two years of the Filing Date under Bankruptcy Code § 548(a)(1)(A).  The Trustee's claim for equitable subordination of Merkin's funds' customer claims was also allowed to proceed.  The decision also held that the Trustee did not adequately allege that Merkin had "actual knowledge" that Madoff's investment advisory business was predicated on fraud, which led to the dismissal of the Trustee's claims for preferential and constructively fraudulent transfers under the Bankruptcy Code and any transfers under New York state law, including those seeking the recovery of transfers that occurred more than two years before the Filing Date. The Bankruptcy Court also dismissed the Trustee's claims for equitable disallowance of the customer claims of Gabriel Capital, Ariel Fund, Ascot Partners and Ascot Fund.

74.    In response to Judge Bernstein's decision, on September 5, 2014, the Trustee filed a motion to direct entry of final judgment pursuant to Federal Rule of Civil Procedure 54(b) in order to bring an appeal to the Second Circuit.  The motion was limited to the actual knowledge standard.  The Merkin Defendants filed their opposition on September 12, 2014.  On October 2, 2014, the Bankruptcy Court heard oral argument on the Trustee's motion.  On December 4, 2014, the Bankruptcy Court denied the Trustee's motion.

75.     During the Compensation Period, the Trustee and the Merkin Defendants extended fact discovery until January 30, 2015.  B&H attorneys continued to analyze and evaluate documents that were produced by the Merkin Defendants, both in response to the Trustee's document requests and pursuant to the Binding Discovery Arbitrator's March 2013 Order.  B&H attorneys propounded additional discovery requests on behalf of the Trustee and responded to discovery requests by the Merkin Defendants that were served on the Trustee. Additionally, B&H attorneys participated in additional proceedings before the court-appointed Discovery Arbitrator.

76.     During the Compensation Period, B&H attorneys prepared for and conducted the deposition of the corporate witness of GCC, Gabriel Capital, Ariel Fund, Ascot Partners and Ascot Fund on the books and records, accounting, and book keeping associated with the financials of the entities.   B&H attorneys also performed research and prepared for the depositions of members of the board of directors of Ascot Fund and Ariel Fund.

77.     During the Compensation Period, B&H attorneys continued efforts to gather discovery from third parties in connection with the anticipated trial of this matter in 2015.  The team reviewed various document productions from third parties in response to Rule 45 subpoenas.   B&H attorneys identified potential witnesses, and prepared for and completed interviews and depositions of potential third party fact witnesses.  Additionally, B&H attorneys continued to analyze the flow of funds from BLMIS to the Merkin Defendants.

D.     **MATTER 05 – CUSTOMER CLAIMS**

a.     **Customer Claims**

78.     During the Compensation Period, the Trustee allowed $5,554,132.16 in customer claims, bringing the total amount of allowed claims as of November 30, 2014 to $11,424,979,429.91.  As of November 30, 2014, the Trustee has paid or committed to pay

$816,747,373.62 in cash advances from SIPC. This is the largest commitment of SIPC funds of any SIPA liquidation proceeding and greatly exceeds the total aggregate payments made in all SIPA liquidations to date.

79.    As of November 30, 2014, 144 claims relating to 103 accounts were "deemed determined," meaning that the Trustee has instituted litigation against those account holders and related parties. The complaints filed by the Trustee in those litigations set forth the express grounds for disallowance of customer claims under § 502(d) of the Bankruptcy Code. Accordingly, such claims will not be allowed until the avoidance actions are resolved by settlement or otherwise and the judgments rendered against the claimants in the avoidance actions are satisfied.

### b.    General Creditor Claims

80.    As of November 30, 2014, the Trustee had received 427 timely and 22 untimely filed secured and unsecured priority and non-priority general creditor claims totaling approximately $1.7 billion. The claimants include vendors, taxing authorities, employees, and customers filing claims on non-customer proof of claim forms. Of these 449 claims and $1.7 billion, the Trustee has received 94 general creditor claims and 49 broker-dealer claims totaling approximately $265.0 million. At this time, the BLMIS general estate has no funds from which to make distributions to priority/non-priority general creditors and/or broker dealers.

### c.    The Trustee Has Kept Customers Informed Of The Status Of The Claims Process

81.    Throughout the liquidation proceeding, the Trustee has kept customers, interested parties, and the public informed of his efforts by maintaining the Trustee Website (www.madofftrustee.com), a toll-free customer hotline, conducting a Bankruptcy Code § 341(a)

meeting of creditors on February 20, 2009, and responding to the multitude of phone calls, e-mails, and letters received on a daily basis, both from claimants and their representatives.

82.     The Trustee Website includes features that allow the Trustee to share information with claimants, their representatives, and the general public with regard to the ongoing recovery efforts and the overall liquidation. In addition to containing the Trustee's court filings, media statements, and weekly information on claims determinations, the Trustee Website includes up-to-date information on the status of Customer Fund recoveries, an "Ask the Trustee" page where questions of interest are answered and updated, a letter from the Chief Counsel to the SIPA Trustee on litigation matters, a detailed distribution page, an FAQs page, and a timeline of important events.  The Trustee Website is monitored and updated on a daily basis.

83.     In addition, the Trustee Website allows claimants to e-mail their questions directly to the Trustee's professionals, who follow up with a return e-mail or telephone call to the claimants.  As of November 30, 2014, the Trustee and his professionals had received and responded to more than 7,100 e-mails from BLMIS customers and their representatives via the Trustee Website.

84.     The toll-free customer hotline provides status updates on claims and responses to claimants' questions and concerns.  As of November 30, 2014, the Trustee, B&H, and the Trustee's professionals had fielded more than 8,200 hotline calls from claimants and their representatives.

85.     The Trustee and his team have endeavored to respond in a timely manner to every customer inquiry and ensure that the customers are as informed as possible about various aspects of the BLMIS proceeding.

86.    The Trustee and B&H attorneys continued the Trustee's Hardship Program, reviewed hardship applications, and communicated regularly with SIPC and AlixPartners regarding the review and determination of hardship applicants, the customer claims review process, the customer claims database, reconciliation of investment advisory accounts (the "BLMIS IA Accounts"), and other matters of interest in determining claims.

87.    The Trustee and B&H attorneys reviewed customer accounts and communicated with customers or their representatives regarding possible settlements related to those accounts.

### E.    MATTER 06 – VIZCAYA

88.    This This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Vizcaya Partners Ltd. ("Vizcaya"), Asphalia Fund Ltd. ("Asphalia"), Zeus Partners Ltd. ("Zeus") and Banque Jacob Safra (Gibraltar) Ltd. ("Bank Safra") (collectively, the "Vizcaya Defendants") seeking the return of $180 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Vizcaya Defendants. *Picard v. Vizcaya Partners Ltd.*, Adv. No. 09-01154 (SMB) (Bankr. S.D.N.Y.).

89.    During the Compensation Period, B&H attorneys analyzed the documents and materials collected pursuant to the Trustee's investigation to date and utilized this information to prepare for continued litigation in this action.

90.    B&H attorneys also collaborated with foreign counsel regarding the Trustee's foreign proceedings in Gibraltar and particular issues of Gibraltar law as applicable to this action.

F.      **MATTER 07 – MADOFF FAMILY**

91.      This matter categorizes time spent by the Trustee and B&H attorneys pursuing numerous avoidance actions against members of the Madoff family.

92.      On October 2, 2009, the Trustee filed a complaint against Peter Madoff, the late Andrew Madoff, the late Mark Madoff, and Shana Madoff (collectively, the "Family Defendants") asserting claims for preferences, fraudulent transfers, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Family Defendants. *Picard v. Peter B. Madoff*, Adv. No. 09-01503 (SMB) (Bankr. S.D.N.Y.), ECF No. 1. On March 15, 2010, each of the Family Defendants separately moved this Court to dismiss the Trustee's complaint. (ECF Nos. 13–19). On September 22, 2011, this Court denied in part and granted in part the motions to dismiss. (ECF No. 55). Defendant Andrew Madoff, individually, and as Executor of the Estate of Mark D. Madoff, filed a motion for leave to seek interlocutory review of this Court's September 22, 2011 decision. (ECF No. 56). Following briefing and oral argument, the District Court denied that motion on December 22, 2011. (ECF No. 74).

93.      In accordance with this Court's September 22, 2011 decision, on November 7, 2011, the Trustee filed an amended complaint against the Family Defendants, identifying additional transfers and seeking the return of over $225 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent transfers, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Family Defendants. *Picard v. Peter B. Madoff*, Adv. No. 09-01503 (SMB) (Bankr. S.D.N.Y.), (ECF No. 64). Shana Madoff, Peter Madoff, and Andrew Madoff, both on his own behalf and as Executor of the Estate of Mark D. Madoff, each answered the amended complaint on January 17, 2012. (ECF Nos. 78, 79, 80).

26

94.    On December 23, 2011, the Trustee filed a motion seeking leave to file a second amended complaint, adding additional claims and defendants to the action against the Family Defendants.  (ECF No. 71).  On April 4, 2012, following briefing and oral argument, this Court issued a written opinion denying in part and granting in part the Trustee's motion. (ECF No. 106).  On May 4, 2012, the Trustee filed a second amended complaint against the Family Defendants and named as additional defendants Mark Madoff's widow, Stephanie Mack, and Andrew Madoff's wife, Deborah Madoff. (ECF No. 113).  The Trustee also named Mark Madoff's ex-wife, Susan Elkin, as a subsequent transferee defendant.  Defendants Andrew Madoff, the Estate of Mark D. Madoff, Shana Madoff, and Susan Elkin answered the second amended complaint on July 2, 2012.  (ECF Nos. 124–126).  Susan Elkin was voluntarily dismissed with prejudice pursuant to stipulation by the parties on March 26, 2014.  (ECF No. 177).

95.    On April 2, 2012, Stephanie Mack and Deborah Madoff moved to withdraw the reference from this Court.  (ECF Nos. 101, 104).  The Trustee subsequently adjourned the time for Stephanie Mack and Deborah Madoff to respond to the second amended complaint.  (ECF Nos. 128, 134, 139, 141, 149, 152, 154, 157, 159, 165, 167).  On December 6, 2013, the District Court ruled that the Trustee was barred from pursuing common law claims against Stephanie Mack and Deborah Madoff because they do not fall within the insider exception to the *in pari delicto* doctrine, and returned the cases to the Bankruptcy Court.  Deborah Madoff was voluntarily dismissed with prejudice pursuant to stipulation by the parties on June 27, 2014. (ECF No. 183).

96.    On June 29, 2012, Peter Madoff pleaded guilty to a two-count indictment and consented to the entry of a forfeiture order for $143.1 billion.  Under the Preliminary Forfeiture

Order, Peter Madoff and his wife, Marion Madoff, forfeited substantially all of their assets to the United States of America.  Subsequently, on February 6, 2013, Peter Madoff was dismissed from this action in connection with the entry of a consent judgment in the amount of $90,390,500.00. (ECF No. 145).  On February 7, 2013, the Trustee dismissed a separate adversary proceeding against Marion Madoff through a notice of voluntary dismissal with prejudice.  *Picard v. Marion Madoff*, Adv. No. 10-04310 (SMB) (Bankr. S.D.N.Y.), (ECF No. 17).

97.    In connection with Peter Madoff's plea agreement, his daughter, defendant Shana Madoff, also forfeited to the United States of America substantially all of her assets that were the subject of the Trustee's claims against her.  Subsequently, on March 18, 2013, the Trustee dismissed the case against Shana Madoff with prejudice.  (ECF No. 148).

98.    On July 15, 2014, the Trustee filed a motion seeking leave to file a third amended complaint, adding additional support for existing claims and eliminating allegations against defendants that had been dismissed.  (ECF No. 184).  Andrew Madoff, both on his own behalf and as Executor of the Estate of Mark D. Madoff, opposed the Trustee's motion on August 12, 2014 (the "Opposition").  (ECF No. 191).  By stipulation of the parties and order of this Court, the Trustee has until March 13, 2015 to file a reply to the Opposition, and a hearing on the motion is scheduled before this Court on April 29, 2015.  (ECF No. 202).

99.    The Trustee commenced two adversary proceedings against members of the late Andrew Madoff and the late Mark Madoff's families to recover fraudulent conveyances made by Bernard and Ruth Madoff.  *Picard v. Stephanie S. Mack*, Adv. No. 10-05328 (SMB) (Bankr. S.D.N.Y.); *Picard v. Deborah Madoff*, Adv. No. 10-05332 (SMB) (Bankr. S.D.N.Y.).  Amended complaints were filed in these actions on February 7, 2012.  *Picard v. Mack*, Adv. No. 10-05328, (ECF No. 23); *Picard v. Deborah Madoff*, Adv. No. 10-05332, (ECF No. 13).  All defendants in

both actions answered on March 23, 2012. *Picard v. Mack*, Adv. No. 10-05328, (ECF No. 30); *Picard v. Deborah Madoff*, Adv. No. 10-05332, (ECF No. 20). On March 26, 2014, the parties filed a stipulation for voluntary dismissal of Susan Elkin, Daniel G. Madoff and K.D.M. with prejudice. *Picard v. Mack*, Adv. No. 10-05328, (ECF No. 56). The pre-trial conference for this action in this Court is currently scheduled for December 16, 2015. *Picard v. Mack*, Adv. No. 10-05328, (ECF No. 67).

100.    Deborah Madoff moved to withdraw the reference from this Court on April 2, 2012. *Picard v. Deborah Madoff*, Adv. No. 10-05332, (ECF No. 22). On October 28, 2013, the District Court ordered that the proceeding be returned to the District Court. *Picard v. Deborah Madoff*, Adv. No. 12-02751, (ECF No. 8). On June 27, 2014, the parties filed a stipulation for voluntary dismissal of the action with prejudice. (ECF No. 54).

101.    The Trustee commenced two adversary proceedings against foundations created by and named for Andrew and the late Mark Madoff and their spouses: *Picard v. Mark & Stephanie Madoff Found.*, Adv. No. 10-05325 (SMB) (Bankr. S.D.N.Y.) and *Picard v. Deborah & Andrew Madoff Found.*, Adv. No. 10-05330 (SMB) (Bankr. S.D.N.Y.). The defendants in these cases answered on January 17, 2012, and March 23, 2012, respectively. *Picard v. Mark & Stephanie Madoff Found.*, Adv. No. 10-05325, (ECF No. 10); *Picard v. Deborah & Andrew Madoff Found.*, Adv. No. 10-05330, (ECF No. 10). These proceedings were voluntarily dismissed without prejudice by stipulation of the parties and order of this Court on February 4, 2014. *Picard v. Mark & Stephanie Madoff Found.*, Adv. No. 10-05325, (ECF No. 38); *Picard v. Deborah & Andrew Madoff Found.*, Adv. No. 10-05330, (ECF No. 42).

102.    The Trustee commenced various adversary proceedings against Madoff's relatives beyond his immediate family to recover preferences and fraudulent conveyances. Currently, the

Trustee's cases styled *Picard v. Wiener Family Ltd. P'ship*, Adv. No. 10-04323 (Bankr. S.D.N.Y.) and *Picard v. NTC & Co. LLP*, Adv. No. 10-04293 (Bankr. S.D.N.Y.) remain pending.

### G.    <u>MATTER 09 – FAIRFIELD GREENWICH</u>

103.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance and recovery actions against Fairfield Sentry Ltd. ("Sentry"), Fairfield Sigma Ltd. ("Sigma"), Fairfield Lambda Ltd. ("Lambda") (collectively, the "Fairfield Funds"), Greenwich Sentry, L.P. ("Greenwich Sentry"), Greenwich Sentry Partners, L.P. ("Greenwich Sentry Partners", and together with Greenwich Sentry, the "Greenwich Funds"), and other defendants seeking the return of approximately $3.5 billion under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Fairfield Funds and the Greenwich Funds. *Picard v. Fairfield Sentry Ltd. (In Liquidation)*, Adv. No. 09-01239 (SMB) (Bankr. S.D.N.Y. May 18, 2009).  This matter also categorizes time spent by the Trustee and B&H attorneys pursuing avoidance and recovery actions, as well as damages claims against other Fairfield Greenwich Group related entities and individuals, including the founding partners and other management officials.

104.    On June 7, 2011, this Court conditionally approved a settlement agreement between the Trustee and the Joint Liquidators for the Fairfield Funds (the "Joint Liquidators"), (ECF No. 95).  On July 13, 2011, this Court entered consent judgments between the Trustee and Lambda in the amount of $52.9 million (ECF No. 108), Sentry in the amount of $3.054 billion (ECF No. 109), and Sigma in the amount of $752.3 million (ECF No. 110).

105.    As part of the Fairfield Funds settlement, Sentry agreed to permanently reduce its net equity claim from approximately $960 million to $230 million.  Additionally, the Joint

Liquidators agreed to make a $70 million payment to the Customer Fund.  The Joint Liquidators also agreed to assign to the Trustee all of the Fairfield Funds' claims against the Fairfield Greenwich Group management companies, officers, and partners, and the Trustee retained his own claims against the management defendants.  Further, the Trustee and the Joint Liquidators agreed to share future recoveries in varying amounts, depending on the nature of the claims.

106.    On July 7, 2011, this Court approved a settlement between the Trustee and the Greenwich Funds, wherein this Court entered judgment against Greenwich Sentry in an amount over $206 million and against Greenwich Sentry Partners in an amount over $5.9 million. *Picard v. Fairfield Sentry*, Adv. No. 09-01239 (SMB) (Bankr. S.D.N.Y.), (ECF No. 107).  In the settlement, the Greenwich Funds agreed to permanently reduce their net equity claim from approximately $143 million to approximately $37 million, for a combined reduction of over $105.9 million.  Additionally, the Greenwich Funds assigned to the Trustee all of their claims against Fairfield Greenwich Group management and agreed to share with the Trustee any recoveries they receive against service providers.

107.    On April 2, 2012, the remaining defendants in the *Fairfield Sentry* action filed motions to withdraw the reference on a number of issues that later became subject to Common Briefing and hearings before Judge Rakoff of the District Court.  *See* discussion *infra* Section IV(K).  The Trustee briefed and presented argument at the hearings on these issues before the District Court.  As of July 31, 2014, the District Court had issued decisions on all issues subject to Common Briefing and remanded the cases to this Court for further findings based on the legal standards set forth in the District Court's decisions.  *See* discussion *infra* Section IV(II).

108.    On June 6, 2012, the Trustee filed additional recovery actions against entities or persons related to Fairfield Greenwich Group employees or partners entitled *Picard v. RD Trust*,

Adv. No. 12-01701 (SMB) (Bankr. S.D.N.Y.), *Picard v. Barrenche Inc.*, Adv. No. 12-01702 (SMB) (Bankr. S.D.N.Y.), and *Picard v. Alix Toub*, Adv. No. 12-01703 (SMB) (Bankr. S.D.N.Y.).  The parties in the *Toub* action have entered into a stipulated stay as permitted by this Court.  None of the defendants in the three actions have yet responded to the Trustee's complaints.

109.    On November 6, 2012 in the District Court, in a putative class action filed by former Fairfield Funds investors against several Fairfield Greenwich Group partners and management officials, the plaintiffs and the Fairfield Greenwich Group related defendants filed a motion seeking preliminary approval of a settlement.  *Anwar v. Fairfield Greenwich Ltd.*, No. 09 Civ. 118 (VM)(FM) (S.D.N.Y.), ECF No. 997.  On November 29, 2012, the Trustee filed an application seeking an injunction against the implementation of the settlement. *See Picard v. Fairfield Greenwich Ltd.*, Adv. No. 12-02047 (SMB) (Bankr. S.D.N.Y.), ECF No. 2.   On December 21, 2012, the defendants filed a motion to withdraw the reference to the Bankruptcy Court.  (ECF No. 11).  On February 6, 2013, the District Court granted the defendants' motion to withdraw the reference to the Bankruptcy Court, *Picard v. Fairfield Greenwich Ltd.,* 12 Civ. 9408(VM) (S.D.N.Y.), (ECF No. 30).   On March 20, 2013, the District Court denied the Trustee's application seeking an injunction against the implementation of the *Anwar* settlement.  (ECF No. 59).  On April 8, 2013, the Trustee filed a notice of appeal from the District Court's denial of the Trustee's application for an injunction against the implementation of the *Anwar* settlement.  (ECF No. 61).

110.    On February 26, 2013, the Trustee filed a letter requesting a pre-motion conference on a motion to intervene in the *Anwar* action.  (ECF No. 1054).  On March 8, 2013, the District Court deemed the pre-motion conference letter to be a motion to intervene and

denied the Trustee's request.  (ECF No. 1071).  On April 8, 2013, the Trustee filed a notice of

appeal from the order denying his request to intervene in the *Anwar* action.  (ECF. No. 1106).

111.    Briefing on both appeals of the *Anwar* decisions was completed on June 7, 2013.

Oral argument on the appeals occurred on October 10, 2013.  On August 8, 2014, the Court of

Appeals issued its decision affirming the District Court's decisions.

112.    On January 8, 2014, in the case entitled *In re: Fairfield Sentry Limited*, No. 11

Civ. 5905 (AT) (S.D.N.Y.), the Court granted a motion to withdraw the reference in an appeal in

the Fairfield Sentry Chapter 15 proceedings regarding the Fairfield Sentry Liquidator's ability to

assign claims to the Trustee.  On January 28, 2014, the Trustee requested a pre-motion

conference for a motion to intervene in the matter.  On January 30, 2014, the District Court

denied the Trustee's request for a pre-motion conference and instead set a briefing schedule for

the filing of the motion to intervene.  The Trustee submitted his motion to intervene on February

28, 2014.  Morning Mist Holdings and Miic Lomeli filed opposition papers on March 14,

2014.  The Trustee filed a reply in support of the motion to intervene on March 21, 2014.  On

July 31, 2014, the District Court granted the Trustee's motion to intervene and set a briefing

schedule on the issue regarding the Fairfield Sentry Liquidator's ability to assign claims to the

Trustee.  Following the filing of the Trustee's brief, on September 30, 2014, the District Court

dismissed the Complaint.  The time for filing an appeal of the District Court's decision has

expired without any appeal being filed.

113.    A number of defendants in other proceedings, along with some of the Fairfield

management defendants, filed motions to dismiss which were subject to Common Briefing in the

District Court following motions to withdraw the reference to this Court.  All of the Common

Briefing decisions have been issued by the District Court.  The District Court remanded to this

Court several of the proceedings which had been subject to the Common Briefing, including the *Fairfield* action.

114.    As of November 30, 2014, the Trustee and the remaining defendants have entered into stipulations extending the response date to the Trustee's complaints.

## H.    MATTER 10 – HARLEY

115.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Harley International (Cayman) Limited ("Harley") seeking the return of approximately $1.1 billion under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of Harley. *Picard v. Harley International (Cayman) Limited*, Adv. Pro. No. 09-01187 (Bankr. S.D.N.Y.) (SMB). Harley is in liquidation in the Cayman Islands. Harley failed to appear or answer, and a default judgment was entered against Harley in the New York adversary proceeding.

116.    During this Compensation Period, the Trustee and B&H attorneys continued to prepare for continued litigation in this action.

## I.    MATTER 11 – COHMAD SECURITIES CORPORATION

117.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Cohmad Securities Corporation, its principals, certain employees of Cohmad, and their family members who held BLMIS IA Accounts (collectively, the "Cohmad Defendants") seeking the return of over $245 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent conveyances, disallowance of any claims filed against the estate by the Cohmad Defendants, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Cohmad Defendants. *Picard v. Cohmad Sec. Corp.*, Adv. No. 09-01305 (SMB) (Bankr. S.D.N.Y.). This

matter also includes time spent by the Trustee and B&H attorneys pursuing avoidance actions against BLMIS customers who were referred to BLMIS by the Cohmad Defendants and are net winners.

118.    During the Compensation Period, B&H attorneys continued to move forward with discovery and developing the cases at issue.

**J.    MATTER 13 – KINGATE**

119.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing avoidance and recovery under SIPA, the Bankruptcy Code, New York Debtor and Creditor Law and other applicable law of approximately $926 million in initial transfers BLMIS made to Kingate Global Fund, Ltd. ("Kingate Global") and Kingate Euro Fund, Ltd. ("Kingate Euro," together with Kingate Global, the "Kingate Funds") under the proceeding captioned as *Picard v. Federico Ceretti*, Adv. No. 09-01161 (BRL) (Bankr. S.D.N.Y.) (the "Kingate Avoidance Action"). In the Kingate Avoidance Action, the Trustee also seeks the recovery of more than $370 million in purported management fees the Kingate Funds subsequently transferred to Kingate Management Limited ("Kingate Management"), as manager of the Kingate Funds in the proceeding. Those transfers also include more than $297 million that Kingate Management paid out of its management fees as purported dividends to its shareholders.

120.    The Kingate Funds are in liquidation proceedings in the BVI and Bermuda under the auspices of court-appointed joint liquidators. There is no public access to or information available regarding the status of the Kingate Funds' liquidation proceedings.

121.    Kingate Global and Kingate Euro each filed a customer claim. Applying the net equity calculation, the Kingate Funds' aggregate claims seek approximately $800 million from the customer property estate. Those claims are presently disallowed under section 502(d) of the

Bankruptcy Code.  The final resolution of the Kingate Funds' claims is integral to, and awaits the resolution of, the Kingate Avoidance Action.

122.    B&H attorneys carefully reviewed and considered the precedential effect on the Kingate Avoidance Action of this Court's Memorandum Decision Granting in Part and Denying in Part the defendants' motion to dismiss filed on August 12, 2014 ("August 12 Decision") in *Picard v. Merkin, et al.*, Adv. Pro. 09-01182 (SMB) (Bankr. S.D.NY.Y).  B&H attorneys also analyzed and researched alternative legal arguments in light of the Court's August 12 Decision.

123.    In light of the District Court's Extraterritoriality Opinion and Order, B&H attorneys analyzed the Trustee's motion for leave to replead under Federal Rule of Civil Procedure 15(a) and for omnibus discovery filed on August 28, 2014, in particular, as it would affect the Kingate Avoidance Action.  During the Compensation Period, B&H attorneys devoted significant time analyzing the decisional authorities cited in the Extraterritoriality Opinion and Order and the transactions involving the foreign subsequent transferees in the Kingate Avoidance Action.

124.    During the Compensation Period, certain defendants in the Kingate Avoidance Action questioned in correspondence transmitted to B&H attorneys the propriety of a single allegation in the Trustee's Fourth Amended Complaint ("Complaint") relating to Kingate Management and FIM Limited.  On November 11, 2014, counsel for FIM Limited, FIM Advisers LLP, Federico Ceretti, and Carlo Grosso, all defendants in the Kingate Avoidance Action, requested a court conference regarding the matter.  The Trustee's counsel conducted legal and factual research in connection with the issue, prepared and filed a letter to the Court in advance of the court conference, and appeared and argued at the court conference, which the Court held on November 19, 2014.

125.    During the Compensation Period, B&H attorneys researched the facts and law relied upon by the Kingate Funds in support of their motion to dismiss the Complaint, and prepared a brief in opposition.  On October 14, 2014, the Trustee filed his memorandum in opposition to the Kingate Funds' motion.  Upon receipt of the Kingate Funds' reply memorandum that was filed on November 25, 2014, B&H attorneys reviewed and analyzed the Kingate Funds' additional arguments made in support of the motion and began preparing for oral argument before this Court.

126.    The Trustee's legal team includes the advice and counsel of the Trustee's foreign solicitors and barristers in the United Kingdom, Bermuda and the BVI, through their participation telephonically during routine team meetings and, on occasion, face-to-face meetings.  During the Compensation Period, B&H attorneys continued to assist the Trustee in calling upon the Trustee's foreign solicitors and barristers as the needs of the case required.

## K.    MATTER 21 – AVOIDANCE ACTION LITIGATION

127.    This matter categorizes time spent litigating the hundreds of avoidance actions filed by the Trustee, coordinating service of process, preparing preservation letters and discovery requests and reviewing produced documents, communicating formally and informally with counsel for various defendants, reviewing Hardship Program applications, drafting extensions of time to respond to various complaints and adjournments of pre-trial conferences, conducting settlement negotiations and settling with various defendants, engaging in mediation with certain defendants, developing legal strategies and witnesses that will be relevant to all actions, implementing internal processes to track and manage the avoidance actions, and researching various issues relating to and raised in such avoidance actions.

a.    **District Court Proceedings**

128.    In April 2012, the District Court instituted a new briefing protocol for pending motions to withdraw the reference, facilitating consolidated briefing on common issues raised in the motions to withdraw ("Common Briefing").  The District Court has issued rulings on all of the Common Briefing issues as follows:

- *Stern v. Marshall Issue.*  See Order, No. 12 MC 115 (JSR) (S.D.N.Y. April 13, 2012), (ECF No. 4); Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.), 490 B.R. 46 (S.D.N.Y. 2013);

- *Antecedent Debt Issue.  See* Order, No. 12 MC 115 (JSR) (S.D.N.Y. May 15, 2012), (ECF No. 107); *In re Madoff Sec.,* 499 B.R. 416 (S.D.N.Y. 2013); *In re Madoff Sec.,* No. 499 B.R. 416 (S.D.N.Y. 2013);

- *Section 546(e) Issue.  See* Order, No. 12 MC 115 (JSR) (S.D.N.Y. May 16, 2012), (ECF No. 119); Order, No. 12 MC 115 (JSR) (S.D.N.Y. Feb. 12, 2013), (ECF No. 439); *In re Madoff Sec.*, No. 12 MC 115 (JSR), 2013 WL 1609154 (S.D.N.Y. April 15, 2013);

- *Section 550(a) Issue.  See* Order, No. 12 MC 115 (JSR) (S.D.N.Y. Aug. 22, 2012), (ECF No. 314); Order, No. 12 MC 115 (JSR) (S.D.N.Y. Dec. 12, 2012); *In re Madoff Sec.,* No. 12 MC 115 (JSR), 501 B.R. 26 (S.D.N.Y. 2013); *In re Madoff Sec.,* No. 12-MC-0115 (JSR), 2014 WL 465360 (S.D.N.Y. Jan. 14, 2014);

- *Standing and SLUSA Issue.  See* Order, No. 12 MC 115 (JSR) (S.D.N.Y. May 16, 2012), (ECF No. 114); *In re Madoff Sec.,* 987 F.Supp.2d 311 (S.D.N.Y. 2013);

- *Good Faith Standard Under Either 11 U.S.C. § 548(c) or 11 U.S.C. § 550(b) Issue.  See* Order, No. 12 MC 115 (JSR) (S.D.N.Y. June 25, 2012), (ECF No. 197); *In re Madoff Sec.,* No. 12-MC-0115 (JSR), 2014 WL 1651952 (S.D.N.Y. April 27, 2014);

- *Section 502(d) Issue.  See* Order, No. 12 MC 115 (JSR) (S.D.N.Y. June 1, 2012), ECF No. 155; Order, No. 12 MC 115 (JSR) (S.D.N.Y. Feb. 12, 2013), (ECF No. 435); *In re Madoff Sec.,* 513 B.R. 437 (S.D.N.Y. 2013); and

- *Extraterritoriality Issue. See* Order, No. 12 MC 115 (JSR) (S.D.N.Y. June 6, 2012), (ECF No. 167); *In re Madoff Sec.,* 513 B.R. 222 (S.D.N.Y. 2014).

129.    On April 27, 2014, the District Court issued the "Good Faith Standard Opinion and Order," ruling that "in the context of this litigation and with respect to both section 548(c) and section 550(b)(1), "good faith" means that the transferee neither had actual knowledge of the Madoff Securities fraud nor willfully blinded himself to circumstances indicating a high probability of such fraud."  With respect to the issue of which party bears the burden of pleading a defendant's good faith or lack thereof, Judge Rakoff further ruled that "a defendant may succeed on a motion to dismiss by showing that the complaint does not plausibly allege that that defendant did not act in good faith."  Good Faith Standard Opinion and Order (ECF No. 524).

130.    On July 6, 2014, Judge Rakoff issued the "Extraterritoriality Opinion and Order," indicating that certain of the Trustee's claims were barred under Morrison.  It stated that "section 550(a) does not apply extraterritorially to allow for the recovery of subsequent transfers received abroad by a foreign transferee from a foreign transferor," and directed further proceedings related thereto be returned to the Bankruptcy Court.  Extraterritoriality Opinion and Order (ECF No. 551), 513 B.R. 222 (S.D.N.Y. 2014).

b.    **Bankruptcy Court Proceedings**

131.    In March 2014, the Bankruptcy Court established a briefing schedule for all pending motions to dismiss (the "Motions to Dismiss"), and directed the Trustee to file one omnibus opposition to all pending Motions to Dismiss filed by defendants on or before March 10, 2014.  The Bankruptcy Court further directed all participating defendants to reply on or before March 17, 2014.  *See* Case Management Order Regarding Certain Pending Motions to Dismiss, *In re Madoff,* Adv. Pro. No. 08-01789 (SMB) (Bankr. S.D.N.Y. Feb. 24, 2014), (ECF No. 5695) ("February 24 Order").  Defendants who filed motions to dismiss filed on or after April 17, 2014 did not participate in the omnibus briefing.  The Bankruptcy Court further provided all participating defendants with the opportunity to "opt out" of the omnibus briefing

39

process referenced in the February 24 Order in the event that defendants did not wish to file a reply or otherwise participate in the omnibus briefing.

132.    Oral arguments were held on September 17, 2014. *See* Order Scheduling Hearing on Becker & Poliakoff LLP Motions to Dismiss and Motions to Dismiss Listed on Appendix A to the Trustee's February 20 Letter to the Court as Amended, *In re Madoff,* Adv. Pro. No. 08-01789 (SMB) (Bankr. S.D.N.Y. July 24, 2014), ECF No. 7513 ("Scheduling Order").

133.    Approximately 30 actions opted out of the omnibus briefing process by withdrawing their motion to dismiss, without prejudice, in order to proceed to mediation as permitted under the Order (1) Establishing Litigation Case Management Procedures for Avoidance Actions and (2) Amending the February 16, 2010 Protective Order, *In re Madoff*, Adv. Pro. No. 08-01789 (BRL) (Bankr. S.D.N.Y. Nov. 10, 2010), ECF No. 3141 ("Litigation Procedures Order"), governing the prosecution of BLMIS avoidance actions.

134.    There were approximately sixty motions to dismiss filed on or after April 17, 2014, with a total of ten during the Compensation Period. These motions to dismiss raised nearly all the identical issues already addressed by the Motions to Dismiss. Pursuant to the LPO, the vast majority of these motions were automatically referred to mediation. Certain other defendants requested mediation of their cases. A total of forty-four mediations were held during the Compensation Period.

135.    Additionally, the Trustee considered hardship applications and where appropriate, agreed to dismiss certain defendants from the actions. In some cases, the parties engaged in fact and expert discovery, but in other cases, Trustee's professionals engaged in settlement negotiations which led to several documented settlements during the Compensation Period.

### L.    MATTER 29 – RYE/TREMONT

136.    This matter categorizes time spent by the Trustee and B&H attorneys following the settled avoidance action filed on December 7, 2010, against Tremont Group Holdings, Inc., Tremont Partners, Inc., Tremont (Bermuda) Ltd., Rye Select Broad Market Fund, and numerous related investment funds, entities and individuals (collectively, the "Tremont Funds") in which the Trustee sought the return of approximately $2.1 billion under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences and fraudulent conveyances in connection with certain transfers of property by BLMIS (the "Tremont Litigation").  *Picard v. Tremont Group Holdings, Inc.*, Adv. No. 10-05310 (SMB) (Bankr. S.D.N.Y. Dec. 7, 2010).

137.    After the court filing, the parties entered into substantive settlement negotiations which resulted in a significant settlement approved by the Court on September 22, 2011.  The settlement between the Trustee, the Tremont Funds and the former chief executive of Tremont Group Holdings, Inc. resulted in the cash payment amount of $1.025 billion.  *Picard v. Tremont Group Holdings, Inc.*, Adv. No. 10-05310 (SMB) (Bankr. S.D.N.Y. Dec. 7, 2010), (ECF No. 38).  This is the largest cash settlement to date in any case brought by the Trustee against any feeder or investment fund.

138.    Two objections to the settlement agreement were filed by non-BLMIS customers, both of which were overruled by this Court.  There were two non-settling defendants at the time, Sandra Manzke ("Manzke") and Rye Select Broad Market XL Portfolio Limited ("XL Portfolio").    As more fully discussed below, pursuant to the settlement, Tremont delivered $1.025 billion into an escrow account, which was placed into the Customer Fund, and the Trustee allowed certain customer claims related to Tremont in the approximate amount of $2.9 billion.

41

139.    Certain objectors filed an appeal of the Tremont settlement on October 18, 2011. *See Picard v. Tremont Group Holdings, Inc.*, No. 11-7330 (GBD) (Bankr. S.D.N.Y. Oct. 18, 2011). On June 27, 2012, United States District Judge George B. Daniels granted the Trustee's motion to dismiss the appeal, and judgment was entered on June 28, 2012. (ECF Nos. 35, 36).

140.    On July 27, 2012, an appeal of the judgment was filed with the Second Circuit. (ECF No. 37). Prior to submitting any briefing, however, the parties submitted a joint stipulation of dismissal, and the appeal was dismissed on October 25, 2012. (ECF No. 39). Accordingly, Tremont delivered $1.025 billion into an escrow account on November 6, 2012, and the settlement payment was released from escrow to the Trustee on February 8, 2013. Thereupon, the Trustee allowed certain customer claims related to Tremont.

141.    On February 10, 2012, defendant XL Portfolio settled with the Trustee in connection with the Tremont Litigation, as well as two other actions commenced on December 8, 2010, by the Trustee against XL Portfolio and other defendants. These other actions are captioned *Picard v. ABN AMRO Bank, N.V. et al.,* Adv. No. 10-05354 (SMB) (Bankr. S.D.N.Y. Dec. 8, 2010) and *Picard v. ABN AMRO (Ireland) Ltd., et al,* Adv. No. 10-05355 (SMB) (Bankr. S.D.N.Y. Dec. 8, 2010).

142.    On September 17, 2013, the remaining defendant in the Tremont Litigation, Manzke, who was also a defendant in the captioned action, *Picard v. Maxam Absolute Return Fund Ltd., et al.,* Adv. No. 10-05342 (Bankr. S.D.N.Y. Dec. 8, 2010), settled both actions against her. After the Maxam settlement, Manzke was dismissed from the Tremont Litigation, and that case closed.

143.    During the Compensation Period, B&H attorneys continued to prepare for litigation in this action, including analyzing extraterritoriality considerations against subsequent transferees.

M.    **MATTER 30 – HSBC**

144.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing claims against HSBC Bank plc, HSBC Securities Services (Luxembourg) S.A., eleven other HSBC entities (collectively, the "HSBC Defendants"), as well as affiliated feeder funds including Thema International Ltd., Thema Wise Investments Ltd., Lagoon Investment, Geo Currencies Ltd., and Alpha Prime Fund, as well as management companies affiliated with those funds, seeking the return of approximately $1.6 billion under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences and fraudulent conveyances. *Picard v. HSBC Bank plc*, Adv. No. 09-01364 (SMB) (Bankr. S.D.N.Y. Nov. 30, 2012).

145.    The Trustee has settled his claims against Herald Fund SpC, Herald (Lux) SICAV, Primeo Fund and Senator Fund, which resulted in over $600 million in consideration to the Estate.

N.    **MATTER 32 – UBS/LIF**

146.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing bankruptcy and common law claims against UBS AG, UBS (Luxembourg) SA, UBS Fund Services (Luxembourg) SA, and numerous other entities and individuals (collectively, the "Luxalpha Defendants") seeking the return of approximately $1.1 billion under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent conveyances, and damages in connection with certain transfers of

property by BLMIS to or for the benefit of the Luxalpha Defendants (the "Luxalpha Action"). *Picard v. UBS AG*, Adv. No. 10-04285 (SMB) (Bankr. S.D.N.Y. Oct. 22, 2012).

147.    This matter also incorporates time spent by the Trustee and B&H attorneys pursuing the avoidance action against Luxembourg Investment Fund, UBS entities, and other defendants (the "LIF Defendants") seeking the return of approximately $555 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent conveyances and damages in connection with certain transfers of property by BLMIS (the "LIF Action"). *Picard v. UBS AG*, Adv. No. 10-05311 (SMB) (Bankr. S.D.N.Y. Oct. 22, 2012).

148.    On December 19, 2012, the Trustee participated in a hearing in this Court regarding the motions to dismiss the amended complaint filed by a number of the Luxalpha Defendants and the LIF Defendants for lack of personal jurisdiction and *forum non conveniens*. At the hearing, the Court directed the parties to meet and confer on the issues in dispute with the goal of narrowing the issues before the Court.    The Trustee has narrowed the number of defendants and parties in dispute.    The meet-and-confer process in the Luxalpha Action and the LIF Action is now complete, with certain motions to dismiss for lack of personal jurisdiction and/or *forum non conveniens* remaining pending before the Court.

149.    On July 6, 2014, the District Court issued the Extraterritoriality Opinion and Order regarding the effect of the Supreme Court's decision in *Morrison v. Nat'l Australia Bank Ltd.*, 130 S. Ct. 2869 (2010) on subsequent transfers received by certain defendants.    *See* discussion *supra* Section IV(K).    The Trustee has spent time analyzing the decision and its implications, in anticipation of additional motions to dismiss to be filed by certain defendants in the Luxalpha Action and the LIF Action.

## O.    MATTER 33 – NOMURA INTERNATIONAL PLC

150.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Nomura International plc ("Nomura") seeking the return of approximately $35 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of Nomura.  *Picard v. Nomura Int'l plc*, Adv. No. 10-05348 (SMB) (Bankr. S.D.N.Y. Dec. 8, 2010).

151.    By orders issued by the District Court during the Spring and Summer of 2012, the District Court included Nomura's motion to withdraw the reference in Common Briefing and oral argument.

152.    Prior to the Compensation Period, the District Court issued the Extraterritoriality Opinion and Order and the Good Faith Standard Opinion and Order, and remanded the Nomura proceeding back to the Bankruptcy Court for further proceedings consistent with its opinions. (ECF No. 57).  *See* discussion *supra* Section IV(K) and *infra* Section IV(II).

153.    Prior to and during the Compensation Period, B&H attorneys, on behalf of the Trustee, reached agreements with Nomura to extend Nomura's time to respond to the amended complaint while awaiting determinations from the District Court with respect to Common Briefing.  *Picard v. Nomura Int'l plc*, Adv. No. 10-05348 (SMB) (Bankr. S.D.N.Y.), (ECF Nos. 55, 56, 58, 65, 74).

154.    During the Compensation Period, B&H attorneys reviewed and analyzed the District Court's opinions as they relate to the Nomura proceeding and continued to prepare for litigation in light of the District Court's opinions.  Also during the Compensation Period, B&H attorneys, on behalf of the Trustee,  drafted, filed, served and argued an omnibus motion seeking

the Court's leave to replead and authorization for limited discovery pursuant to the District Court's Extraterritoriality Opinion and Order and the Good Faith Standard Opinion and Order. (ECF No. 59, 60, 61, 62).

P.      **MATTER 34 – CITIBANK**

155.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Citibank, N.A., Citibank North America, Inc., and Citigroup Global Markets Ltd. (collectively, "Citibank") seeking the return of approximately $425 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences and fraudulent transfers in connection with certain transfers of property by BLMIS to or for the benefit of Citibank (the "Citibank Action"). *Picard v. Citibank*, Adv. No. 10-05345 (SMB) (Bankr. S.D.N.Y. Dec. 8, 2010).

156.    By orders issued by the District Court during the Spring and Summer of 2012, the District Court included Citibank's motion to withdraw the reference in Common Briefing and oral argument.

157.    Prior to the Compensation Period, the District Court issued an opinion denying the motion to dismiss of multiple defendants, including Citibank, made in connection with Common Briefing with respect to Section 550(a) of the Bankruptcy Code. *Picard v. Citibank*, Case No. 11-cv-07825 (JSR) (S.D.N.Y. Oct. 30, 2013), (ECF No. 36). The District Court also issued an opinion granting Citigroup's motion to dismiss in part, holding that the section 546(g) safe harbor protects certain redemption payments but not collateral payments from recovery to the extent they cannot be avoided under section 548(a)(1)(A). *Picard v. Citibank*, Case No. 11-cv-07825 (JSR) (S.D.N.Y. Dec. 26, 2013), (ECF No. 37). In addition, B&H attorneys, on behalf of the Trustee, extended the Trustee's time to respond to Citibank's motion to dismiss the complaint filed in this Court, while awaiting determinations from the District Court with respect

46

to Common Briefing.  *Picard v. Citibank*, Adv. No. 10-05345 (SMB) (Bankr. S.D.N.Y. Jan. 15, 2014), (ECF No. 65).

158.     Prior to the Compensation Period, on April 27, 2014, the District Court issued the Good Faith Standard Opinion and Order.  *See* discussion *supra* Section IV(K).  Through this decision, the Citibank Action was remanded back to the Bankruptcy Court.  In addition, on July 6, 2014, the District Court issued the Extraterritoriality Opinion and Order, the final legal issue on which the Court had granted motions to withdraw the reference.  *Securities Inv. Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC*, 513 B.R. 222 (S.D.N.Y. 2014).

159.     Prior to and during the Compensation Period, B&H attorneys, on behalf of the Trustee, further extended the Trustee's time to respond to Citibank's motion to dismiss the complaint filed in this Court.  *Picard v. Citibank*, Adv. No. 10-05345 (SMB) (Bankr. S.D.N.Y. Apr. 14, 2014 and June 10, 2014), (ECF Nos. 67, 68, 70, 86).

160.     During the Compensation Period, B&H attorneys reviewed and analyzed the District Court's opinions as they relate to the Citibank Action and continued to prepare for litigation in light of the District Court's opinions.  In addition, B&H attorneys, on behalf of the Trustee, drafted, filed, served and argued an omnibus motion seeking the Court's leave to replead and authorization for limited discovery pursuant to the District Court's Extraterritoriality Opinion and Order and the Good Faith Standard Opinion and Order.  (ECF No. 71, 72, 73, 74).

## Q.     MATTER 35 – NATIXIS

161.     This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Natixis, Natixis Corporate & Investment Bank (f/k/a Ixis Corporate & Investment Bank), Natixis Financial Products, Inc., Bloom Asset Holdings Fund, and Tensyr Ltd. (collectively, the "Natixis Defendants") seeking the return of approximately $430 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other

47

applicable law for preferences, fraudulent transfers and fraudulent conveyances in connection

with certain transfers of property by BLMIS to or for the benefit of the Natixis Defendants (the

"Natixis Action").    *Picard v. Natixis*, Adv. No. 10-05353 (SMB) (Bankr. S.D.N.Y. Dec. 8,

2010).

162.    By orders issued by the District Court during the Spring and Summer of 2012, the

District Court included the Natixis Defendants' motion to withdraw the reference in Common

Briefing and oral argument.

163.    Prior to and during the Compensation Period, B&H attorneys, on behalf of the

Trustee, reached agreements with the Natixis Defendants to extend the Trustee's time to respond

to motions to dismiss the complaint while awaiting determinations from the District Court with

respect to Common Briefing.    *Picard v. Natixis*, Adv. No. 10-05353 (SMB) (Bankr. S.D.N.Y.

Dec. 8, 2010), (ECF No. 63, 64, 66).

164.    Prior to the Compensation Period, the District Court issued the Extraterritoriality

Opinion and Order and the Good Faith Standard Opinion and Order, and remanded the Natixis

Action back to the Bankruptcy Court for further proceedings consistent with its opinions. (ECF

No. 65).    *See* discussion *supra* Section IV(K) and *infra* Section IV(II).

165.    During the Compensation Period, B&H attorneys reviewed and analyzed the

District Court's opinions as they relate to the Natixis Action and continued to prepare for

litigation in light of the District Court's opinions.  In addition, B&H attorneys, on behalf of the

Trustee, drafted, filed, served and argued an omnibus motion seeking the Court's leave to

replead and authorization for limited discovery pursuant to the Extraterritoriality Opinion and

Order and the Good Faith Standard Opinion and Order.  (ECF No. 67, 68, 69, 70).

### R.    MATTER 36 – MERRILL LYNCH

166.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Merrill Lynch International ("MLI") seeking the return of at least $16 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences and fraudulent transfers in connection with certain transfers of property by BLMIS to or for the benefit of MLI (the "MLI Action").  *Picard v. Merrill Lynch Int'l*, Adv. No. 10-05346 (SMB) (Bankr. S.D.N.Y. Dec. 8, 2010).

167.    Prior to the Compensation Period, MLI filed a motion to withdraw the reference, which was granted by Judge Rakoff and resulted in Common Briefing pending in the District Court.

168.    Prior to the Compensation Period, the District Court issued the Extraterritoriality Opinion and Order and the Good Faith Standard Opinion and Order, and remanded the MLI Action to the Bankruptcy Court for further proceedings consistent with its opinions.  *See* discussion *supra* Section IV(K) and *infra* Section IV(II).

169.    Prior to and during the Compensation Period, the Trustee and B&H attorneys entered into stipulations with counsel for MLI extending MLI's time to answer or otherwise respond to the complaint, while awaiting determinations from the District Court with respect to Common Briefing.

170.    Prior to and during the Compensation Period, B&H attorneys reviewed and analyzed the District Court's opinions as they relate to the MLI Action and continued to prepare for litigation in light of the District Court's opinions.  In addition, B&H attorneys, on behalf of the Trustee,  drafted, filed, served and argued an omnibus motion seeking the Court's leave to replead and authorization for limited discovery pursuant to the Extraterritoriality Opinion and Order and the Good Faith Standard Opinion and Order.  (ECF Nos. 53, 54, 55, 56).

171.    During the Compensation Period, B&H attorneys, on behalf of the Trustee, prepared a Notice of Presentment of Order with coordinating defendants' counsel for the Bankruptcy Court to hear issues concerning additional Common Briefing on the extraterritoriality issue in response to the Extraterritoriality Opinion and Order, and responded to objections to that proposed Order from several parties, including MLI.  (ECF Nos. 60, 64, 67, 71).

## S.    MATTER 37 – ABN AMRO

172.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against ABN AMRO Bank N.V. (presently known as The Royal Bank of Scotland, N.V.) ("RBS") seeking the return of approximately $237 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences and fraudulent transfers in connection with certain transfers of property by BLMIS to or for the benefit of RBS (the "RBS Action").  *Picard v. ABN AMRO Bank, N.A.* (presently known as The Royal Bank of Scotland, N.V.), Adv. No. 10-05354 (SMB) (Bankr. S.D.N.Y. Dec. 8, 2010).

173.    Prior to the Compensation Period, RBS filed a motion to withdraw the reference, which was granted by Judge Rakoff and resulted in Common Briefing before the District Court.

174.    In addition, prior to the Compensation Period, on February 27, 2013, the Trustee voluntarily dismissed Rye Select Broad Market XL Fund, L.P. with prejudice.  *Picard v. ABN AMRO Bank N.A.*, Adv. No. 10-05354 (SMB) (Bankr. S.D.N.Y.), (ECF No. 56).

175.    Prior to the Compensation Period, the District Court issued the Extraterritoriality Opinion and Order and the Good Faith Standard Opinion and Order, and remanded the RBS Action back to the Bankruptcy Court for further proceedings consistent with these decisions.  *See* discussion *supra* Section IV(K) and *infra* Section IV(II).

176.    Prior to and during the Compensation Period, the Trustee and B&H attorneys entered into stipulations with counsel for RBS extending RBS's time to respond to the Trustee's amended complaint.

177.    During the Compensation Period, B&H attorneys prepared for continued litigation in this action by, *inter alia*, reviewing and analyzing relevant documents and correspondence. B&H attorneys reviewed and analyzed the District Court's decisions as they relate to the RBS Action and continued to prepare for further litigation in light thereof.   In addition, B&H attorneys, on behalf of the Trustee, drafted, filed, served and argued an omnibus motion seeking the Court's leave to replead and authorization for limited discovery pursuant to the Extraterritoriality Opinion and Order and the Good Faith Standard Opinion and Order.  (ECF No. 69, 70, 71, 72).

### T.    MATTER 38 – BANCO BILBAO

178.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Banco Bilbao Vizcaya Argentaria, S.A. ("BBVA") seeking the return of at least $45 million under SIPA, the Bankruptcy Code, and the New York Fraudulent Conveyance Act in connection with a transfer of property by BLMIS to or for the benefit of BBVA (the "BBVA Action").  *Picard v. Banco Bilbao Vizcaya Argentaria, S.A.*, Adv. Pro. No. 10-05351 (SMB) (Bankr. S.D.N.Y. Dec. 8, 2010).

179.    Prior to the Compensation Period, BBVA filed a motion to withdraw the reference, which was granted by Judge Rakoff and resulted in Common Briefing pending in the District Court.   BBVA's motion to withdraw the reference included arguments about extraterritoriality and the good faith standard.

180.    Prior to the Compensation Period, the District Court issued the Extraterritoriality Opinion and Order and the Good Faith Standard Opinion and Order, and remanded the BBVA

Action back to the Bankruptcy Court for further proceedings consistent with its opinions. *See* discussion *supra* Section IV(K) and *infra* Section IV(II).

181.    During the Compensation Period, B&H attorneys reviewed and analyzed the District Court's opinions as they relate to the BBVA Action and continued to prepare for litigation in light of the District Court's opinions. In addition, B&H attorneys, on behalf of the Trustee, drafted, filed, served and argued an omnibus motion seeking the Court's leave to replead and authorization for limited discovery pursuant to the Extraterritoriality Opinion and Order and the Good Faith Standard Opinion and Order. (ECF No. 77, 78, 79, 80).

## U.    **MATTER 39 – FORTIS**

182.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against ABN AMRO Bank (Ireland) Ltd. (f/k/a Fortis Prime Fund Solutions Bank (Ireland) Ltd.), ABN AMRO Custodial Services (Ireland) Ltd. (f/k/a Fortis Prime Fund Solutions Custodial Services (Ireland) Ltd.) (collectively, the "Fortis Defendants"), Rye Select Broad Market XL Fund, LP, and Rye Select Broad Market XL Portfolio Ltd. seeking the return of approximately $747 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences and fraudulent conveyances in connection with certain transfers of property by BLMIS to or for the benefit of the Fortis Defendants (the "Fortis Action"). *Picard v. ABN AMRO Retained Custodial Services (Ireland) Ltd.*, Adv. No. 10-05355 (SMB) (Bankr. S.D.N.Y. Dec. 8, 2010).

183.    On February 27, 2013, the Trustee voluntarily dismissed Rye Select Broad Market XL Fund, L.P. with prejudice. *Picard v. ABN AMRO Retained Custodial Services (Ireland) Ltd.*, Adv. No. 10-05355 (SMB) (Bankr. S.D.N.Y. Dec. 8, 2010), (ECF No. 50).

184.    By orders issued by the District Court during the Spring and Summer of 2012, the District Court included the Fortis Defendants' motion to withdraw the reference in Common

Briefing and oral argument. Prior to and during the Compensation Period, B&H attorneys, on behalf of the Trustee, reached agreements with the Fortis Defendants to extend the Trustee's time to respond to motions to dismiss the complaint while awaiting determinations from the District Court with respect to Common Briefing. *Picard v. ABN AMRO Retained Custodial Services (Ireland) Ltd.*, Adv. No. 10-05355 (SMB) (Bankr. S.D.N.Y.), (ECF No. 62, 64. 71, 82).

185.    Prior to the Compensation Period, the District Court issued the Extraterritoriality Opinion and Order and the Good Faith Standard Opinion and Order, and remanded the Fortis Action back to the Bankruptcy Court for further proceedings consistent with its opinions. *See* discussion *supra* Section IV(K) and *infra* Section IV(II).

186.    During the Compensation Period, B&H attorneys reviewed and analyzed the District Court's opinions as they relate to the Fortis Action and continued to prepare for litigation in light of the District Court's opinions. In addition, B&H attorneys, on behalf of the Trustee, drafted, filed, served and argued an omnibus motion seeking the Court's leave to replead and authorization for limited discovery pursuant to the Extraterritoriality Opinion and Order and the Good Faith Standard Opinion and Order. (ECF No. 65, 66, 67, 68).

## V.    **MATTER 40 – MEDICI**

187.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance and civil action against Sonja Kohn, UniCredit Bank Austria AG ("Bank Austria"), Bank Medici AG ("Bank Medici"), and numerous other financial institutions, entities, and individuals (collectively, the "Kohn Defendants") seeking the return of approximately $19.6 billion under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961, *et seq.*, and other applicable law for preferences, fraudulent transfers, fraudulent conveyances, and damages in

connection with certain transfers of property by BLMIS to or for the benefit of the Kohn Defendants. *Picard v. Kohn*, Adv. No. 10-05411 (SMB) (Bankr. S.D.N.Y. Dec. 10, 2010).

188.    This matter also covers work performed by B&H attorneys relating to *Madoff Securities International Limited v. Raven & Ors*, [2011] EWHC (Civ) 3102 (Eng.).  Trial in this matter commenced in London in June 2013 and concluded on July 18, 2013.  On October 18, 2013, the English court ruled against MSIL's joint liquidators.  During the Compensation Period, the Trustee's English counsel negotiated with defendants regarding costs.

189.    In addition, during the Compensation Period, the Trustee prepared and filed the proposed Third Amended Complaint and related motion seeking the Court's leave to amend the Second Amended Complaint. (ECF Nos. 282, 283).   B&H attorneys also filed a notice of voluntary dismissal without prejudice with respect to seventy-three subsequent transferee defendants in conjunction with the proposed Third Amended Complaint, reducing the number of active defendants in this matter to a total of three parties.

## W.    <u>MATTER 42 – EQUITY TRADING</u>

190.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Equity Trading Portfolio Limited, Equity Trading Fund Ltd., and BNP Paribas Arbitrage, SNC (collectively, the "Equity Trading Defendants") seeking the return of approximately $16 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent transfers, fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Equity Trading Defendants. *Picard v. Equity Trading Portfolio Limited*, Adv. No. 10-04457 (SMB) (Bankr. S.D.N.Y. Dec. 1, 2010), (ECF No. 2).

191.    The Equity Trading Defendants filed motions, or joinders to the motions, in the District Court to withdraw the reference from this Court. (ECF Nos. 16, 21). The District Court included the motions in its orders for Common Briefing and oral argument.

192.    During the Compensation Period, B&H attorneys and the Equity Trading Defendants renegotiated the right to file an amended complaint and revised the briefing schedule for any motions in response to the amended complaint. (ECF Nos. 58, 66 and 67). B&H attorneys also prepared for continued litigation in this action. The pre-trial conference is scheduled for June 24, 2015. (ECF No. 68).

## X.    **MATTER 43 – DEFENDER**

193.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Defender Limited, Reliance Management (BVI) Limited, and Reliance International Research LLC (collectively, the "Defender Defendants") seeking the return of over $93 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent transfers, fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Defender Defendants. *Picard v. Defender Limited*, Adv. No. 10-05229 (SMB) (Bankr. S.D.N.Y. Dec. 5, 2010).

194.    On April 2, 2012, the Defender Defendants filed motions in the District Court to withdraw the reference from this Court. (ECF Nos. 24, 28). The District Court partially granted these motions and included these motions in its orders for Common Briefing and oral argument.

195.    On April 27, 2012, defendants Reliance Management (BVI) Limited, Reliance Management (Gibraltar) Limited, and Tim Brockmann filed a motion in this Court to dismiss for lack of personal jurisdiction. (ECF No. 36). The Trustee opposed the motion. (ECF No. 49). The moving defendants filed their reply brief on October 26, 2012. (ECF No. 55). This Court

converted the hearing on this motion, scheduled for December 19, 2012, into a Rule 16 conference and directed the parties to meet and confer with respect to the motion. This motion to dismiss remains pending.

196. B&H attorneys conferred with counsel, pursuant to this Court's instructions at the Rule 16 conference, with respect to the motion to dismiss and to attempt to narrow the issues to be determined by this Court. B&H attorneys negotiated with counsel for defendants Reliance Management (Gibraltar) Limited and Tim Brockmann on an agreement to dismiss those defendants without prejudice in return for, among other things, their agreement to continue participating in discovery in the Bankruptcy Court. The parties signed that agreement on December 16, 2013, and the Court so ordered the stipulation of voluntary dismissal without prejudice on December 18, 2013. (ECF No. 72).

197. During the Compensation Period, B&H attorneys continued to consult with counsel to attempt to further narrow the issues before this Court and also prepared for continued litigation in this action. On August 5, 2014, September 19, 2014 and November 24, 2014 the remaining parties filed stipulations extending the Defender Defendants' time to respond to the complaint to January 16, 2015 and adjourning the pre-trial conference to February 25, 2015. (ECF Nos. 79, 86 and 101).

## Y.    **MATTER 44 - MACCABEE**

198. On December 10, 2010, On December 10, 2010, the Trustee commenced an action against the John Greenberger Maccabee and Sherry Morse Maccabee Living Trust (the "Trust"), John Greenberger Maccabee, individually and as trustee of the Trust, and Sherry Morse Maccabee, individually and as trustee of the Trust (collectively, the "Maccabee Defendants") seeking the return of approximately $1.5 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent transfers and

fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Maccabee Defendants. *Picard v. John Greenberger Maccabee & Sherry Morse Maccabee Living Trust*, Adv. No. 10-05407 (SMB) (Bankr. S.D.N.Y.).

199.    On April 17, 2014, the Maccabee Defendants filed a motion to dismiss the adversary proceeding.  (ECF No. 21).  The parties thereafter agreed to participate in voluntary mediation and filed a notice of mediation referral on May 16, 2014 (ECF No. 23) and a notice of mediator selection on June 6, 2014 (ECF No. 24.).  After participating in an in-person mediation session on October 3, 2014 and in subsequent in-person and telephonic meetings thereafter, the parties reached an agreement to resolve the matter.

200.    During the Report Period, the Trustee prepared for mediation, including coordinating with opposing counsel and the mediator, reviewing relevant documents, and analyzing and preparing arguments.  The Trustee also participated in the mediation.

### Z.    <u>MATTER 45 – LEVEY</u>

201.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing four avoidance actions in which Joel Levey is a named defendant (collectively, the "Levey Actions").  The Levey Actions are as follows:  *Picard v. Joel Levey*, Adv. No. 10-04282 (SMB) (Bankr. S.D.N.Y. Nov. 23, 2010); *Picard v. Aaron Levey Revocable Living Trust*, Adv. No. 10-04894 (SMB) (Bankr. S.D.N.Y. Dec. 2, 2010); *Picard v. Aaron Levey Revocable Living Trust*, Adv. No. 10-05441 (SMB) (Bankr. S.D.N.Y. Dec. 2, 2010); and *Picard v. Frances Levey Revocable Living Trust*, Adv. No. 10-05430 (SMB) (Bankr. S.D.N.Y. Dec. 2, 2010).  The action against *Joel Levey*, Adv. No. 10-04282 (SMB) (Bankr. S.D.N.Y. Nov. 23, 2010), is a bad faith action and seeks the recovery of fictitious profits and principal.

202.    Together with Joel Levey, the other named defendants in the Levey Actions are Aaron Levey Revocable Living Trust, Frances Levey Revocable Living Trust, Wendy Kapner

Revocable Trust, Wendy Kapner, Sandra Moore, and James Kapner (collectively, the "Levey Defendants"). The individual Levey Defendants were named in their various capacities, including as grantor, trustee, and/or beneficiary. The Levey Actions seek an aggregate recovery of approximately $6.8 million under SIPA, the Bankruptcy Code, the New York Debtor and Creditor Law, and other applicable law for the recovery of avoidable transfers and damages related to transfers made by BLMIS to or for the benefit of the Levey Defendants.

203.    During the Compensation Period, B&H attorneys engaged in expert discovery, including the service of expert reports and the production of relevant documents relied upon by the experts.

### AA.    MATTER 46 – GLANTZ

204.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Richard M. Glantz and numerous other individuals, trusts and entities (collectively, the "Glantz Defendants"), seeking the return of more than $113 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent transfers and fraudulent conveyances in connection with certain transfers of property by BLMIS to or for the benefit of the Glantz Defendants. *Picard v. Richard M. Glantz*, Adv. No. 10-05394 (SMB) (Bankr. S.D.N.Y. Dec. 9, 2010).

205.    Following the filing of the complaint in this action, certain defendants were dismissed based on hardship, settlement or other reasons. On February 1, 2012, the remaining defendants filed a motion to dismiss. (ECF Nos. 26–30). The parties subsequently entered into stipulations extending the Trustee's time to amend the complaint in response to the motion to dismiss. On March 31, 2012, the defendants filed a motion to withdraw the reference in the District Court. *Picard v. Glantz*, No. 12 Civ. 02778 (JSR) (S.D.N.Y. July 12, 2012), (ECF Nos. 1–3). Judge Rakoff partially granted the motion to withdraw the reference to address certain

issues related to the majority of the avoidance actions brought by the Trustee in this SIPA proceeding. (ECF Nos. 10–12).

206.    During the Compensation Period, B&H attorneys engaged in work related to these motions, including entering into an agreement regarding the timing of filing an amended complaint in response to the motion to dismiss.

### BB.    <u>MATTER 49 – GREENBERGER</u>

207.    This matter characterizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Robert Greenberger and Phyllis Greenberger (together, the "Greenberger Defendants") seeking the return of approximately $524,225 under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent transfers, fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Greenberger Defendants. *Picard v. Robert Greenberger, et. al.*, Adv. No. 10-05408 (SMB) (Bankr. S.D.N.Y. Dec. 10, 2010).

208.    During the Compensation Period, the Trustee worked to resolve claims against the Greenberger Defendants.

### CC.    <u>MATTER 52 – DONALD FRIEDMAN</u>

209.    This matter This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against S. Donald Friedman, individually and in his capacity as a beneficiary of an individual retirement account, Saundra Friedman, Broadway-Elmhurst Co. LLC, and Ari Friedman (collectively, the "Friedman Defendants"), seeking the return of more than $19 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent transfers, fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Friedman

Defendants.  *Picard v. Friedman*, Adv. Pro. No. 10-05395 (SMB) (Bankr. S.D.N.Y. Dec. 9, 2010).

210.    During the Compensation Period, on August 7, 2014, B&H attorneys took the deposition of a former bookkeeper who performed services for the Friedman Defendants.  In addition, on November 25, 2014, B&H attorneys took the deposition of Donald Friedman.

211.    During the Compensation Period, B&H attorneys prepared a draft amended case management plan.  B&H attorneys also prepared a memorandum concerning discovery issues and a draft motion for partial summary judgment.

212.    Furthermore, during the Compensation Period, B&H attorneys conducted several document reviews and supervised a review of accounting files produced by the Friedman Defendants' former accountant.

**DD.    MATTER 53 – MAGNIFY**

213.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Magnify Inc., Premero Investments Ltd., Strand International Investments Ltd., The Yeshaya Horowitz Association, Yair Green, Kurt Brunner, Special Situations Cayman Fund LP, Express Enterprises Inc., R.H. Book LLC, and Robert H. Book (collectively, the "Magnify Defendants") seeking the return of over $154 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent transfers, fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Magnify Defendants.  *Picard v. Magnify Inc., et.al*, Adv. No. 10-05279 (SMB) (Bankr. S.D.N.Y. Dec. 6, 2010).

214.    During the Compensation Period, B&H attorneys continued their investigation of the Magnify Defendants located outside of the United States.  B&H attorneys continued their review of document productions received from Magnify Inc., Premero Investments Ltd., Strand

International Investments Ltd., The Yeshaya Horowitz Association, Yair Green, and Express Enterprises Inc. as part of ongoing discovery between the parties. B&H attorneys also continued to produce documents in response to discovery requests by Magnify Inc., Premero Investments Ltd., Strand International Investments Ltd., The Yeshaya Horowitz Association, Yair Green, and Express Enterprises Inc.

215. In addition, B&H attorneys prepared and filed an amended case management notice in the case. Previously, B&H attorneys had prepared, and served subpoenas, under Rule 45 of the Federal Rules of Civil Procedure and assisted in the preparation of requests for the issuance of letters of request under The Hague Evidence Convention for production of documents from third party foreign banks with relevant information regarding the Magnify Defendants. During the Compensation Period, B&H attorneys corresponded and conferred with counsel for the Magnify Defendants regarding outstanding discovery issues and received additional productions of documents.

216. In addition to the *Picard v. Magnify* action, this matter also encompasses time spent by the Trustee and B&H attorneys pursuing the avoidance action against the Estate (Succession) of Doris Igoin, Laurence Apfelbaum, and Emilie Apfelbaum (collectively, the "Apfelbaum Defendants"), who have ties to the late founder of several of the Magnify Defendants, seeking the return of over $152 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent transfers, fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Apfelbaum Defendants. *Picard v. Estate (Succession) of Doris Igoin*, Adv. No. 10-04336 (SMB) (Bankr. S.D.N.Y. Nov. 30, 2010).

217.    During the Compensation Period, B&H attorneys continued their investigation of the Apfelbaum Defendants, who are located outside of the United States.  Following court-ordered jurisdictional discovery over the Apfelbaum Defendants, including the deposition of Laurence Apfelbaum in Paris, France, pursuant to a commission issued by the Court on September 11, 2013 under Article 17 of the Hague Evidence Convention, B&H attorneys participated in a hearing on August 6, 2014 concerning the Apfelbaum Defendants' motion to dismiss the Trustee's complaint for lack of personal jurisdiction and *forum non conveniens*.  On August 20, 2014, B&H attorneys submitted a Statement of Material Jurisdictional Facts at the direction of the Court.  On September 12, 2014, B&H attorneys submitted a letter response to the Apfelbaum Defendants' Statement of Material Jurisdictional Facts, submitted on September 5th by the Apfelbaum Defendants.  The Apfelbaum Defendants' motion to dismiss was denied on February 13, 2015.

218.    The Apfelbaum Defendants filed a motion to withdraw the reference on April 2, 2012.  *Picard v. Estate (Succession) of Doris Igoin*, No. 12-02872 (JSR) (S.D.N.Y. Apr. 12, 2012).  B&H attorneys previously drafted various motions and pleadings related to this motion to withdraw the reference and continue to pursue legal remedies related to certain orders entered by the District Court.

219.    On October 23, 2014, B&H attorneys submitted a Notice of Presentment of Order Concerning Further Proceedings on Extraterritoriality Motion and Trustee's Omnibus Motion for Leave to Replead and for Limited Discovery and Opportunity for Hearing related to certain avoidance actions, including the *Picard v. Igoin* matter.  Such motion concerned certain avoidance actions in which the reference was withdrawn concerning whether SIPA and/or the Bankruptcy Code as incorporated by SIPA apply extraterritorially, permitting the Trustee to

avoid initial transfers that were received abroad or to recover from initial, immediate or mediate foreign transferees.  *See* discussion *infra* Section IV(II).

220.    On November 12, 2014, B&H attorneys filed a Response to Limited Objections to Proposed Order Concerning Further Proceedings on Extraterritoriality Motion and Trustees Omnibus Motion for Leave to Replead and for Limited Discovery with respect to cases withdrawn based on extraterritoriality.   On November 18, 2014, B&H attorneys then filed the Trustee's Statement Regarding Amendments to Exhibits to Proposed Order Concerning Further Proceedings on Extraterritoriality Motion and Trustee's Omnibus Motion for Leave to Replead and for Limited Discovery.  *See* discussion *infra* Section (IV)(II).

### EE.    **MATTER 54 – MENDELOW**

221.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Steven B. Mendelow, Nancy Mendelow, Cara Mendelow, Pamela (Mendelow) Christian, C&P Associates, Ltd., and C&P Associates, Inc. (collectively, the "Mendelow Defendants") seeking the return of over $20 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent transfers, fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Mendelow Defendants.  *Picard v. Steven B. Mendelow*, Adv. No. 10-04283 (SMB) (Bankr. S.D.N.Y. Nov. 23, 2010).

222.    The Mendelow Defendants moved to withdraw the reference, which was granted in part.  *Picard v. Mendelow*, No. 11 Civ. 07680 (JSR) (S.D.N.Y. Oct. 28, 2011), (ECF No. 14). The matter was returned to the Bankruptcy Court on August 1, 2014.  *Picard v. Mendelow,* No. 11-cv-07680 (JSR)(S.D.N.Y. August 4, 2014), (Dkt. No. 19).

223.    B&H attorneys granted the Mendelow Defendants several extensions of time to respond to the complaint.  The Mendelow Defendants answered the complaint on November 14, 2014.

224.    A case management notice was filed, and fact discovery is set to end on January 29, 2016.  B&H attorneys began the discovery phase of the litigation.

### FF.    <u>MATTER 58 – PJ ADMINISTRATORS</u>

225.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against American Securities Management, L.P., PJ Associates Group, L.P., and numerous other individuals and entities (collectively, the "PJ Defendants") seeking the return of approximately $91 million, including approximately $10 million in fictitious profits under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent transfers, fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the PJ Defendants.  *Picard v. American Sec. Mgmt., L.P.*, Adv. No. 10-05415 (BRL) (Bankr. S.D.N.Y. Dec. 10, 2010).

226.    During the Compensation Period, B&H attorneys prepared for continued litigation in this action, including reviewing documents produced by the PJ Defendants, preparing for an anticipated motion to dismiss, identifying possible sources of additional evidence, addressing various discovery items, and considering alternative case theories.  B&H attorneys also granted the PJ Defendants' extensions of time to respond to the amended complaint.

### GG.    <u>MATTER 59 – STANLEY SHAPIRO</u>

227.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Stanley Shapiro, Renee Shapiro, S&R Investment Co., David Shapiro, Rachel Shapiro, Leslie Shapiro Citron, Kenneth Citron, and numerous trusts (collectively, the "Shapiro Defendants") seeking the return of over $54 million under SIPA, the Bankruptcy Code,

the New York Fraudulent Conveyance Act, and other applicable law for fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Shapiro Defendants. *Picard v. Shapiro*, Adv. No. 10-05383 (SMB) (Bankr. S.D.N.Y. Dec. 9, 2010).

228.    Prior to the Compensation Period, B&H attorneys prepared and filed the Second Amended Complaint against the Shapiro Defendants, and the parties agreed to a briefing schedule for the motion to dismiss that counsel for the Shapiro Defendants advised they intended to file with the Bankruptcy Court.

229.    During the Compensation Period, the Shapiro Defendants filed their motion to dismiss, wherein they seek dismissal of all claims asserted by the Trustee in the Second Amended Complaint.  B&H attorneys prepared and filed a brief in opposition to the motion to dismiss.

230.    During the Compensation Period, B&H attorneys also continued to further develop the Trustee's case against the Shapiro Defendants.

### HH.    MATTER 60 – AVELLINO & BIENES

231.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Avellino & Bienes, Frank J. Avellino, Michael S. Bienes, Nancy C. Avellino, Dianne K. Bienes, Thomas G. Avellino, and numerous other trusts and entities (collectively, the "A&B Defendants") seeking the return of over $904 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent transfers, fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the A&B Defendants.  *Picard v. Avellino*, Adv. No. 10-05421 (SMB) (Bankr. S.D.N.Y. Dec. 10, 2010).

232.    On June 6, 2011, certain of the A&B Defendants moved to dismiss the complaint in this Court.  (ECF No. 23).  That same day, certain A&B Defendants moved to withdraw the reference.  *Picard v. Avellino*, No. 11-03882 (JSR) (S.D.N.Y. June 7, 2011), (ECF Nos. 1–3).  The motion to withdraw the reference was fully briefed in the District Court, and oral argument was held on October 18, 2011.  The reference to this Court was withdrawn on several issues on February 29, 2012.  (ECF No. 20).  The Trustee and the A&B Defendants participated in Common Briefing before the District Court on the issues withdrawn.

233.    In July 2014, after all withdrawn issues had been decided, the parties negotiated a schedule for the briefing of pending or renewed motions to dismiss. On September 24, 2014, the A&B Defendants filed a supplemental motion to dismiss, renewing their arguments from their 2011 motion. (ECF Nos. 82-85). The Trustee responded by filing an amended complaint on November 24, 2014. (ECF No. 86).

234.    While the above-referenced motions and schedules have been pending, B&H attorneys continued performing legal research and engaging in discovery preparation, document review, and case assessment and strategy.

## II.    **MATTER 62 – SUBSEQUENT TRANSFERS**

235.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing recovery actions against entities that received subsequent transfers of Customer Property from BLMIS.

236.    Prior to the Compensation Period, the Trustee briefed and presented argument at hearings before the District Court on issues raised by subsequent transfer defendants, as well as other defendants, that were subject to Common Briefing and hearings.  As of July 31, 2014, the District Court issued all of its decisions on the issues subject to Common Briefing and remanded

the cases to this Court for further findings based on the legal standards set forth in the District Court's decisions.  *See* discussion *supra* Section IV(K).

237.    As part of its Common Briefing decisions, the District Court remanded the cases in which subsequent transfer defendants filed an extraterritoriality motion to dismiss.  On August 22, 2014, the subsequent transfer defendants wrote this Court asking for a conference to discuss further proceedings on the extraterritoriality motion to dismiss.  On August 28, 2014, the Trustee filed a motion to replead and requested limited discovery based on the common briefing decisions issued by the District Court.  On October 17, 2014, this Court held a conference with the parties regarding the defendants' request as to further proceedings on the extraterritoriality motion to dismiss and the Trustee's motion to replead and for limited discovery.  During the conference, this Court requested the parties to submit a proposed order governing the requests.

238.    On October 23, 2014, the parties filed a proposed scheduling order to govern the further proceedings on the defendants' extraterritoriality motion to dismiss and the Trustee's request for leave to replead and for limited discovery.  Two defendants filed objections to the proposed order.  On November 12, 2014, the Trustee filed a response to the objections to the proposed scheduling order.  On November 19, 2014, this Court held a hearing on the two objections, as well as a request for clarification by a third defendant.  Following the hearing, this Court requested the parties to file a revised scheduling order.  As of November 30, 2014, the revised order had not been filed.

239.    The Trustee's investigation is ongoing, and additional recovery actions against other subsequent transferees likely will be filed in the future.

**JJ.    MATTER 65 – LEGACY**

240.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Legacy Capital Ltd., Isaac Jimmy Mayer, Rafael Mayer, Khronos LLC,

Khronos Capital Research LLC, HCH Management Co., Montpellier Resources Ltd., BNP Paribas Securities Corp., Inversiones Coque S.A., Aurora Resources Ltd., and Olympus Assets LDC (collectively, the "Legacy Capital Defendants") seeking the return of over $218 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Legacy Capital Defendants.  *Picard v. Legacy Capital Ltd.*, Adv. No. 10-05286 (SMB) (Bankr. S.D.N.Y. Dec. 6, 2010).

241.    During the Compensation Period, B&H attorneys prepared for continued litigation in this action.  In support of this effort, B&H attorneys continued their investigation of the Legacy Capital Defendants and the respective fraudulent transfers to each defendant.  B&H attorneys also continued to identify relevant witnesses in the United States and abroad and procured information regarding the Legacy Capital Defendants and relevant third party witnesses.  B&H attorneys, on behalf of the Trustee, also reached agreements with the Legacy Capital Defendants to extend the time to respond to the Trustee's complaint in the action, as well as to de-designate the confidentiality level of documents previously produced by the Legacy Capital Defendants.  The Trustee also continued to develop his case against the Legacy Capital Defendants.

KK.    **MATTER 66 – LIEBERBAUM**

242.    This matter characterizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Michael Lieberbaum and Cynthia Lieberbaum (together, the "Lieberbaum Defendants") seeking the return of approximately $2.36 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent transfers, fraudulent conveyances and damages in connection with certain transfers of

property by BLMIS to or for the benefit of the Lieberbaum Defendants. *Picard v. Michael Lieberbaum*, Adv. No. 10-05406 (SMB) (Bankr. S.D.N.Y. Dec. 10, 2010).

243.    During the Compensation Period, B&H attorneys resolved claims against the Lieberbaum Defendants.

### LL.    **MATTER 72 – PLAZA**

244.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Plaza Investments International Limited and Notz, Stucki Management (Bermuda) Limited (collectively, the "Plaza Defendants") seeking the return of approximately $235 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Plaza Defendants. *Picard v. Plaza Invs. Int'l Ltd.*, Adv. No. 10-04284 (SMB) (Bankr. S.D.N.Y. Nov. 23, 2010).

245.    On July 12, 2012, Judge Rakoff issued an order as to the Plaza Defendants' fully briefed motion to withdraw the reference, stating that the Plaza Defendants raised the same issues that the District Court previously arranged for Common Briefing and directing the Plaza Defendants to continue to proceed according to the procedures arranged for Common Briefing. *See* Order, *Picard v. Plaza Invs. Int'l Ltd.*, No. 12 Civ. 02646 (JSR) (S.D.N.Y. July 12, 2012), (ECF No. 15).

246.    In July 2014, Judge Rakoff issued opinions deciding all issues previously arranged for Common Briefing and, as of July 31, 2014, the Plaza Defendants' motion to withdraw the reference was returned to the Bankruptcy Court for further proceedings. *See* discussion *supra* Section IV(K) and Section IV(II).  Thereafter, the Trustee filed an omnibus motion for leave to replead and for limited discovery, which included the Trustee's claims against the Plaza Defendants.  On September 17, 2014, the Bankruptcy Court held a conference

to address further proceedings to be conducted concerning the Trustee's motion, as well as the defendants' consolidated motion to dismiss based on extraterritoriality, which was joined by Notz, Stucki Management (Bermuda) Limited.

247.    During the Compensation Period, B&H attorneys analyzed opinions issued by the District Court relating to extraterritoriality and prepared arguments in opposition to the defendants' consolidated motion to dismiss based on extraterritoriality, which was joined by Notz, Stucki Management (Bermuda) Limited.

**MM.    MATTER 73 – BNP PARIBAS**

248.    This matter categorizes time spent by the Trustee and B&H attorneys in five adversary proceedings seeking the return of approximately $1 billion under SIPA, the Bankruptcy Code, and the New York Fraudulent Conveyance Act from BNP Paribas S.A. and its subsidiaries—BNP Paribas (Suisse) S.A., BNP Paribas Arbitrage SNC, BNP Paribas (Canada), BNP Paribas Bank & Trust Cayman Limited, BGL BNP Paribas Luxembourg S.A., BNP Paribas Investment Partners Luxembourg S.A., BNP Paribas Securities Services—Succursale de Luxembourg, BNP Paribas Securities Services S.A., and BNP Paribas Securities Corp. (collectively, the "BNP Paribas Defendants")—who redeemed money from feeder funds that invested with BLMIS. *Picard v. BNP Paribas Arbitrage, SNC*, Adv. No. 11-02796 (SMB) (Bankr. S.D.N.Y. Nov. 3, 2011); *Picard v. BNP Paribas S.A.,* Adv. No. 12-01576 (SMB) (Bankr. S.D.N.Y. May 4, 2012); *Picard v. Legacy Capital Ltd.,* Adv. No. 10-05286 (SMB) (Bankr. S.D.N.Y. Dec. 6, 2010); *Picard v. Oreades SICAV,* Adv. No. 10-05120 (SMB) (Bank. S.D.N.Y. Dec. 2, 2010); and *Picard v. Equity Trading Portfolio Ltd.,* Adv. No. 10-04457 (SMB) (Bank. S.D.N.Y. Dec. 1, 2010) (collectively, the "BNP Paribas Proceedings").

249.    Prior to the Compensation Period, and as part of Common Briefing, the District Court issued the Extraterritoriality Opinion and Order and the Good Faith Standard Opinion and

Order, and remanded the BNP Paribas Proceedings back to the Bankruptcy Court for further proceedings consistent with its opinions. *See* discussion *supra* Section IV(K) and Section IV(II).

250.    During this Compensation Period, B&H attorneys reviewed and analyzed the District Court's opinions as they relate to the BNP Paribas Proceedings and continued to prepare for litigation in light of the District Court's opinions.

251.    B&H attorneys, on behalf of the Trustee, also reached agreements with the BNP Paribas Defendants to extend the time to respond to the Trustee's complaints in the BNP Paribas Proceedings while the parties prepare for litigation in the Bankruptcy Court.

## V.    COMPENSATION REQUESTED

252.    This Application has been prepared in accordance with the Amended Guidelines for Fees and Disbursements of Professionals in Southern District of New York Bankruptcy Cases adopted by the Court on April 19, 1995 (the "Local Guidelines") and the Second Amended Compensation Order.  Pursuant to the Local Guidelines, the declaration of David J. Sheehan, Esq., regarding compliance with the same is attached hereto as Exhibit A.

253.    The Trustee, and B&H, as counsel to the Trustee, expended 102,097.50 hours in the rendition of professional and paraprofessional services during the Compensation Period, resulting in an average hourly discounted rate of $394.88 for fees incurred.[11]   The blended attorney rate is $470.55.

254.    Prior to filing this Application, in accordance with the Second Amended Compensation Order, the Trustee, and B&H, as counsel to the Trustee, provided to SIPC: (i) monthly fee statements setting forth the Trustee's and B&H's fees for services rendered and expenses incurred during the Compensation Period, and (ii) a draft of this Application.  In

---

[11]In order to streamline the invoices and related fee applications, as of June 1, 2011, the invoice amounts reflect combined amounts for the Trustee and B&H.

connection with the four monthly statements, the Trustee and B&H voluntarily adjusted their fees by writing off $2,156,994.30 (not including the 10% public interest discount, as discussed below), and wrote off expenses customarily charged to other clients in the amount of $346,603.43.

255.    At SIPC's request, the Trustee's and B&H's fees in this case reflect a 10% public interest discount from their standard rates. This discount has resulted in an additional voluntary reduction during the Compensation Period of $4,479,527.98. The requested fees are reasonable based on the customary compensation charged by comparably skilled practitioners in comparable bankruptcy and non-bankruptcy cases in a competitive national legal market.

256.    Pursuant to the Second Amended Compensation Order, on September 24, 2014, the Trustee, and B&H, as counsel to the Trustee, provided SIPC with their statements of fees and expenses incurred in connection with this case regarding the period from August 1, 2014 through August 31, 2014 (the "August Fee Statement"). The August Fee Statement reflected fees of $10,401,778.80 and expenses of $96,933.43. SIPC's staff requested certain adjustments and made suggestions, which were adopted by the Trustee and B&H. After such adjustments, the August Fee Statement reflected fees of $9,967,094.37. After subtracting the Court-ordered 10% holdback, SIPC advanced $8,970,384.93 for services rendered and $47,137.12 for expenses incurred by the Trustee and B&H.

257.    Pursuant to the Second Amended Compensation Order, on October 23, 2014, the Trustee, and B&H, as counsel to the Trustee, provided SIPC with their statements of fees and expenses incurred in connection with this case regarding the period from September 1, 2014 through September 30, 2014 (the "September Fee Statement"). The September Fee Statement reflected fees of $11,629,730.88 and expenses of $78,774.10. SIPC's staff requested certain

adjustments and made suggestions, which were adopted by the Trustee and B&H. After such adjustments, the September Fee Statement reflected fees of $11,273,898.69. After subtracting the Court-ordered 10% holdback, SIPC advanced $10,146,508.82 for services rendered and $74,985.86 for expenses incurred by the Trustee and B&H.

258.    Pursuant to the Second Amended Compensation Order, on November 20, 2014, the Trustee, and B&H, as counsel to the Trustee, provided SIPC with their statements of fees and expenses incurred in connection with this case regarding the period from October 1, 2014 through October 31, 2014 (the "October Fee Statement"). The October Fee Statement reflected fees of $10,673,453.34 and expenses of $124,620.06. SIPC's staff requested certain adjustments and made suggestions, which were adopted by the Trustee and B&H. After such adjustments, the October Fee Statement reflected fees of $10,354,167.00. After subtracting the Court-ordered 10% holdback, SIPC advanced $9,318,750.30 for services rendered and $119,989.73 for expenses incurred by the Trustee and B&H.

259.    Pursuant to the Second Amended Compensation Order, on December 19, 2014, the Trustee, and B&H, as counsel to the Trustee, provided SIPC with their statements of fees and expenses incurred in connection with this case regarding the period from November 1, 2014 through November 30, 2014 (the "November Fee Statement"). The November Fee Statement reflected fees of $9,030,573.54 and expenses of $77,476.77. SIPC's staff requested certain adjustments and made suggestions, which were adopted by the Trustee and B&H. After such adjustments, the November Fee Statement reflected fees of $8,720,591.76. After subtracting the Court-ordered 10% holdback, SIPC advanced $7,848,532.58 for services rendered and $74,758.84 for expenses incurred by the Trustee and B&H.

260.    Exhibit B annexed hereto is a schedule of the B&H professionals, including the Trustee, and B&H paraprofessionals who have provided services for the Trustee during the Compensation Period, the capacity in which each individual is employed by B&H, the year in which each attorney was licensed to practice law, the hourly billing rate charged by B&H for services provided by each individual, the aggregate number of hours billed by each individual, and the total compensation requested for each individual, prior to the 10% discount.

261.    Exhibit C annexed hereto is a summary of compensation by work task code and matter number for total number of hours expended and total fees for services rendered by B&H professionals and paraprofessionals.  The 10% discount is taken off the total cumulative amount billed, as reflected on Exhibit C.

262.    Exhibit D annexed hereto provides a schedule of the expenses for which reimbursement is requested by B&H.

263.    There is no agreement or understanding among the Trustee, B&H, and any other person, other than members of B&H, for sharing of compensation to be received for services rendered in this case.  No agreement or understanding prohibited by 18 U.S.C. § 155 has been made or will be made by the Trustee or B&H.

264.    To the extent that time or disbursement charges for services rendered or disbursements incurred relate to the Compensation Period, but were not classified or processed prior to the preparation of this Application, the Trustee and B&H reserve the right to request additional compensation for such services and reimbursement of such expenses in a future application.

## VI.    REQUEST FOR INTERIM COMPENSATION SHOULD BE GRANTED

265.    Section 78eee(b)(5)(A) of SIPA provides in pertinent part that, upon appropriate application and after a hearing, "[t]he court shall grant reasonable compensation for services

rendered and reimbursement for proper costs and expenses incurred . . . by a trustee, and by the attorney for such a trustee . . . ."  Section 78eee(b)(5)(C) of SIPA specifically establishes SIPC's role in connection with applications for compensation and the consideration the Court should give to SIPC's recommendation concerning fees.  That section provides as follows:

> In any case in which such allowances are to be paid by SIPC without reasonable expectation of recoupment thereof as provided in this chapter and there is no difference between the amounts requested and the amounts recommended by SIPC, the court shall award the amounts recommended by SIPC.  In determining the amount of allowances in all other cases, the court shall give due consideration to the nature, extent, and value of the services rendered, and shall place considerable reliance on the recommendation of SIPC.

SIPA § 78eee(b)(5)(C).

266.    To the extent the general estate is insufficient to pay such allowances as an expense of administration, § 78eee(b)(5)(E) of SIPA requires SIPC to advance the funds necessary to pay the compensation of the Trustee and B&H.  *See* SIPA § 78fff-3(b)(2).

267.    While the Trustee has recovered, or entered into agreements to recover, approximately $9.857 billion as of November 30, 2014, a significant portion of these funds must be held in reserve pending final resolution of several appeals and disputes.

268.    Accordingly, the Trustee has determined that, at this time, he has no reasonable expectation that the general estate will be sufficient to make a distribution to general creditors or pay administrative expenses.  The Trustee has been advised by SIPC that it concurs in this belief.  Any fees and expenses allowed by this Court will be paid from advances by SIPC without any reasonable expectation by SIPC of recoupment thereof.

269.    Therefore, with respect to this Application, the Trustee, and B&H, as counsel to the Trustee, request that consistent with § 78eee(b)(5)(C) of SIPA, the Court "shall award the amounts recommended by SIPC."  *See In re Bell & Beckwith*, 112 B.R. 876 (Bankr. N.D. Ohio

1990).  SIPC will file its recommendation to the Court with respect to this Application prior to the hearing scheduled to be held on April 16, 2015.

270.   The Trustee, and B&H, as counsel to the Trustee, submit that the request for interim allowance of compensation and expenses made by this Application is reasonable and complies with the provisions of the Bankruptcy Code governing applications for compensation and reimbursement of expenses, pursuant to § 78eee(b)(5) of SIPA.

## VII.    <u>CONCLUSION</u>

271.    The Trustee, and B&H, as counsel to the Trustee, respectfully submit that the services rendered during the Compensation Period and accomplishments to date merit the approval of the fees and disbursements requested herein, and respectfully requests that the Court enter Orders as follows: (i) allowing and awarding $40,315,751.82 (of which $36,284,176.63 is to be paid currently and $4,031,575.19 is to be held back through the conclusion of the liquidation period or until further order of the Court) as an interim payment for professional services rendered by the Trustee and B&H during the Compensation Period, and $316,871.55 as reimbursement of the actual and necessary costs and expenses incurred by the Trustee and B&H in connection with the rendition of such services; and (ii) granting such other and further relief as the Court may deem just and proper.

Dated: New York, New York
      March 23, 2015

Respectfully submitted,

**BAKER & HOSTETLER LLP**

By:  <u>*s/ David J. Sheehan*</u>
     Baker & Hostetler LLP
     45 Rockefeller Plaza
     New York, New York 10111
     Telephone: (212) 589-4200
     Facsimile: (212) 589-4201
     Irving H. Picard
     Email: ipicard@bakerlaw.com
     David J. Sheehan
     Email: dsheehan@bakerlaw.com
     Seanna R. Brown
     Email: sbrown@bakerlaw.com
     Heather R. Wlodek
     Email: hwlodek@bakerlaw.com

*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC And Bernard L. Madoff*