# EXHIBIT "A"

# AGREEMENT

## AGREEMENT

This Agreement, dated as of March 23, 2015 ("Agreement"), is made by and between Irving H. Picard, in his capacity as the trustee ("Trustee") for the liquidation proceedings under the Securities Investor Protection Act of 1970, as amended, 15 U.S.C. § 78aaa *et seq.* ("SIPA"), of Bernard L. Madoff Investment Securities LLC ("BLMIS") and the substantively consolidated Chapter 7 case pending before the United States Bankruptcy Court for the Southern District Court of New York (the "Bankruptcy Court") of Bernard L. Madoff ("Madoff"), on the one hand, and defendants Defender Limited ("Defender"), Reliance Management (BVI) Limited ("Reliance BVI"), Reliance International Research LLC ("RIR"), and dismissed defendants Reliance Management (Gibraltar) Limited ("Reliance Gibraltar"), Tim Brockmann ("Brockmann") and Justin Lowe ("Lowe" along with Defender, Reliance BVI, RIR, Reliance Gibraltar and Brockmann, the "Defendants"), on the other hand. The Trustee and the Defendants shall be referred to herein as the "Parties," and each a "Party."

## BACKGROUND

A.  BLMIS and its predecessors were registered broker-dealers and members of the Securities Investor Protection Corporation ("SIPC").

B.  On December 11, 2008 (the "Filing Date"), the Securities and Exchange Commission (the "SEC") filed a complaint in the United States District Court for the Southern District of New York (the "District Court") against BLMIS and Madoff.

C.  On December 15, 2008, the District Court entered an order under SIPA, which, in pertinent part, appointed the Trustee for the liquidation of the business of BLMIS under section 5(b)(3) of SIPA and removed the case to the Bankruptcy Court under section 5(b)(4) of SIPA, where it is pending as Case No. 08-01789 (SMB) (the "SIPA Proceeding"). The Trustee is duly qualified to serve and act on behalf of the BLMIS estate (the "BLMIS Estate"). By Order dated June 9, 2009, the estate of Madoff was substantively consolidated with the BLMIS Estate.

D.  Defender opened an account with BLMIS in or around May 2007, which was designated account no. 1FR132. Defender's account remained open until the Filing Date.

E.  In the two years prior to the Filing Date, Defender withdrew from its BLMIS account Ninety-Three Million United States Dollars ($93,000,000.00) (the "Transfers").

F.  On or about May 3, 2009, Defender filed a customer claim with the Trustee, which the Trustee has designated as Claim No. 005117 (the "Defender Customer Claim"). The Defender Customer Claim is included as Attachment A to this Agreement. The Defender Customer Claim did not identify a specific amount for its claim. The Parties agree that Defender's net equity equals $441,000,000.00 ("Net Equity").

G.  On December 5, 2010, the Trustee filed a Complaint commencing an adversary proceeding captioned *Picard v. Defender Limited, et al.*, Adv. Pro. No. 10-05229

(SMB) (the "Adversary Proceeding"). In the Complaint, the Trustee asserted claims to avoid and recover the Transfers under 11 U.S.C. §§ 544, 547, 548, 550, and 551, SIPA § 78fff-(2)(c)(3), and the New York Debtor and Creditor Law §§ 270–281 ("Avoiding Power Claims"). Included in the Avoiding Power Claims were claims against Reliance BVI, RIR, Reliance Gibraltar, Brockmann and Lowe as subsequent transferees of certain of the Transfers from Defender (the "Subsequent Transfer Claims"). The Trustee also asserted claims to disallow the Defender Customer Claim, pursuant to 11 U.S.C. § 502(d), and to equitably subordinate the Defender Customer Claim, pursuant to 11 U.S.C. §§ 510(c) and 105(a) ("Disallowance and Subordination Claims").

H.   On November 29, 2012, the Trustee voluntarily dismissed Lowe without prejudice pursuant to the Agreement to Dismiss Justin Lowe from the Adversary Proceeding, dated November 21, 2012.

I.   On December 18, 2013, the Trustee voluntarily dismissed Reliance Gibraltar and Brockmann without prejudice pursuant to the Agreement to Dismiss Tim Brockmann and Reliance (Gibraltar) Limited from the Adversary Proceeding, dated December 16, 2013.

## AGREEMENT

1.    Payment to Trustee. At the Closing (as defined in paragraph 8) Defender shall pay or cause to be paid to the Trustee, pursuant to the means set forth in paragraph 8, the sum of Ninety-Three Million United States Dollars ($93,000,000.00) (the "Settlement Payment") in full and final settlement and satisfaction of all Avoiding Power Claims, Disallowance and Subordination Claims, and Subsequent Transfer Claims that the Trustee or the BLMIS Estate has against the Defendants.

2.    Allowance of Defender Customer Claim.  Upon the Closing (as defined in paragraph 8), Defender's Customer Claim shall be deemed conclusively allowed pursuant to section 502 of the Bankruptcy Code and 15 U.S.C. § 78*lll*(11), equal in priority to other allowed customer claims against the BLMIS Estate, in the amount of Four Hundred Forty One Million Dollars ($441,000,000.00), plus eighty-eight percent (88%) of the Settlement Payment, for an aggregate allowed claim amount of Five Hundred Twenty-Two Million Eight Hundred Forty Thousand Dollars ($522,840,000.00) (the "Allowed Claim"). As of the date of this Agreement, the initial amount to be paid by the Trustee to Defender allocable to the Allowed Claim in respect of a catch-up distribution is $254,317,906.40 (48.546% of the Allowed Claim plus a SIPC advance of $500,000.00) (the "Catch-Up Distribution"). Defender shall be entitled to the SIPC customer advance provided for under section 78fff-3(a) of SIPA applicable to its Allowed Claim in the amount of $500,000.00, which is included in the Catch-Up Distribution. Thereafter, Defender shall be entitled to ratable distributions owing on the Allowed Claim in due course as distributed by the Trustee and approved by the Bankruptcy Court from time to time on the same basis and timetable as the holders of admitted claims in the SIPA liquidation of the BLMIS Estate.

2

3.      Release by the Trustee. In consideration for the covenants and agreements in this Agreement and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, except with respect to the obligations, rights, and considerations arising under this Agreement, upon the Closing (as defined in paragraph 8), the Trustee on behalf of himself, BLMIS, and its consolidated estates, shall release, acquit, and forever discharge the Defendants, including their successors and/or assigns, from any and all past, present, or future claims or causes of action (including any suit, petition, demand, or other claim in law, equity, or arbitration) and from any and all allegations of liability or damages (including any allegation of duties, debts, reckonings, contracts, controversies, agreements, promises, damages, responsibilities, covenants, or accounts), of whatever kind, nature, or description, direct or indirect, in law, equity or arbitration, absolute or contingent, in tort, contract, statutory liability, or otherwise, based on strict liability, negligence, gross negligence, fraud, breach of fiduciary duty, or otherwise (including attorneys' fees, costs, or disbursements), known or unknown, existing as of the date of the Closing that are, have been, could have been, or might in the future be asserted by the Trustee based on, arising out of, or in any way related to the Defendants' respective direct or indirect relationship with BLMIS, except for the following: (a) certain of the Defendants are defendants in other adversary proceedings commenced by the Trustee, and this Agreement does not and shall not in any way limit or release the Trustee's claims in other adversary proceedings against such Parties; (b) the provisions of paragraphs 1 and 2 of the Agreements to Dismiss certain Parties from the Adversary Proceeding, dated November 21, 2012 and December 16, 2013, pursuant to which certain of the Parties agreed to respond to reasonable discovery and make themselves available for deposition, shall continue in effect with respect to the litigation captioned *Picard v. UBS AG et al.*, Adversary Proceeding No. 10-05311 (SMB); and (c) the Trustee retains the right to enforce the terms and conditions of this Agreement.

4.      Release by the Defendants. In consideration for the covenants and agreements in this Agreement and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, except with respect to the obligations, rights, and considerations arising under this Agreement, upon the Closing (as defined in paragraph 8), the Defendants shall release, acquit, and forever discharge the Trustee and all his agents, representatives, attorneys, employees, and professionals, and BLMIS and its consolidated estate, from any and all past, present, or future claims or causes of action (including any suit, petition, demand, or other claim in law, equity, or arbitration) and from any and all allegations of liability or damages (including any allegation of duties, debts, reckonings, contracts, controversies, agreements, promises, damages, responsibilities, covenants, or accounts), of whatever kind, nature, or description, direct or indirect, in law, equity or arbitration, absolute or contingent, in tort, contract, statutory liability, or otherwise, based on strict liability, negligence, gross negligence, fraud, breach of fiduciary duty, or otherwise (including attorneys' fees, costs, or disbursements), known or unknown, existing as of the date of the Closing that are, have been, could have been, or might in the future be asserted by the Defendants based on, arising out of, or in any way related to BLMIS or Madoff, except that the Defendants retain the right to enforce the terms and conditions of this Agreement.

5.      Unknown Claims. Unknown Claims shall mean any released claims pursuant to paragraphs 3 and 4 of the Agreement ("Released Claims") that the Parties do not know or suspect to exist in their favor at the time of giving the release in this Agreement that if known by them, might have affected their settlement and release in this Agreement. With respect to any

3

and all released claims in paragraphs 3 and 4 of this Agreement, the Parties shall expressly waive or be deemed to have waived, the provisions, rights and benefits of California Civil Code section 1542 (to the extent it applies herein), which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR.

The Parties expressly waive, and shall be deemed to have waived, any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, or principle of common law or foreign law, that is similar, comparable, or equivalent in effect to California Civil Code section 1542. The Trustee and/or the Defendants may hereafter discover facts in addition to or different from those that they now know or believe to be true with respect to the subject matter of the Released Claims, but the Parties shall expressly have and be deemed to have fully, finally, and forever settled and released any and all Released Claims, known or unknown, suspected or unsuspected, contingent or noncontingent, whether or not concealed or hidden, that now exist or heretofore have existed, upon any theory of law or equity now existing or coming into existence in the future, including conduct that is negligent, reckless, intentional, with or without malice, or a breach of any duty, law, or rule, without regard to the subsequent discovery or existence of such different or additional facts. The Parties acknowledge and shall be deemed to have acknowledged that the foregoing waiver was separately bargained for and a key element of the settlement of which this release is a part.

6.    Dismissal of Adversary Proceedings.  Within five days of the Closing (as defined in paragraph 8), the Parties shall submit to the Bankruptcy Court, a stipulation requesting the dismissal of the Adversary Proceeding, with prejudice, as against the Defendants, with each Party bearing its own costs, attorneys' fees, and expenses.

7.    Court Approval; Effective Date; Termination.  This Agreement is subject to, and shall become effective and binding on the Parties upon, the Bankruptcy Court's approval of this Agreement in the SIPA Proceeding by an order that is no longer subject to appeal, review, or rehearing ("Effective Date").  The Trustee shall use his reasonable efforts to obtain approval of the Agreement in the SIPA Proceeding as promptly as practicable after the date of this Agreement.  If this Agreement has not become effective as provided in this paragraph within 360 days after the date of this Agreement (or within such additional time as mutually agreed upon by the Parties), then (a) this Agreement (other than this paragraph) shall terminate and be void; (b) all of the statements, concessions, consents, and agreements contained in the Agreement (other than this paragraph) shall be void; and (c) neither the Trustee nor the Defendants may use or rely on any such statement, concession, consent, or agreement in any public statement or litigation involving the SIPA Proceeding, or any case or proceeding relating to BLMIS, or Madoff.

8.    Closing.  There shall be a closing ("Closing") within five business days after the Effective Date of this Agreement in settlement of the Trustee's Avoiding Power Claims, Disallowance and Subordination Claims and Subsequent Transfer Claims.  At the Closing,

4

Defender shall satisfy the Settlement Payment of $93,000,000.00 it agrees pay to the Trustee pursuant to paragraph 1 through a deduction of said amount from the Catch-Up Distribution. Accordingly, the Trustee shall pay Defender One Hundred Sixty-One Million Three Hundred Seventeen Thousand Nine Hundred Six Dollars and Forty Cents ($161,317,906.40), consisting of the balance of:

> a.  The Catch-Up Distribution under the Allowed Claim owed to Defender pursuant to paragraph 2, minus
>
> b.  The Settlement Payment totaling $93,000,000.00.

9.    <u>Defendants' and Trustee's Authority</u>.  The Defendants represent and warrant to the Trustee that, as of the date hereof, each of them has the full power, authority, and legal right to execute and deliver, and to perform their respective obligations under this Agreement and have taken all necessary action to authorize the execution, delivery, and performance of their respective obligations under this Agreement.  The Trustee represents and warrants to the Defendants that, as of the date hereof, and subject to the approval of the Bankruptcy Court as set forth in paragraph 7 above, he has the full power, authority, and legal right to execute and deliver, and to perform his obligations under this Agreement and has taken all necessary action to authorize the execution, delivery, and performance of his respective obligations under this Agreement.

10.    <u>Further Assurances</u>.  The Parties shall execute and deliver any document or instrument reasonably requested by any of them after the date of this Agreement to effectuate the intent of this Agreement.

11.    <u>Entire Agreement</u>.  This Agreement constitutes the entire agreement and understanding between and among the Parties and supersedes all prior agreements, representations, and understandings concerning the subject matter hereof, subject to the exceptions contained in paragraph 3 above.

12.    <u>No Admission</u>.  This Agreement and all negotiations, statements, and proceedings in connection therewith are not, will not be argued to be, and will not be deemed to be a presumption, concession, or admission by any Party of any fault, liability, or wrongdoing whatsoever.  This Agreement may not be offered or received in evidence or otherwise referred to in any civil, criminal, or administrative action or proceeding as evidence of any fault, liability, or wrongdoing whatsoever.

13.    <u>Amendments, Waiver</u>.  This Agreement may not be terminated, amended, or modified in any way except in a writing signed by all of the Parties.  No waiver of any provision of this Agreement shall be deemed to constitute a waiver of any other provision hereof, whether or not similar, nor shall such waiver constitute a continuing waiver.

14.    <u>Assignability</u>.  No Party hereto may assign its rights under this Agreement without the prior written consent of each of the other Parties hereto, except that nothing in this Agreement shall prevent Defender's ability to assign all or part of the Defender Allowed Claim pursuant to the Bankruptcy Court's November 10, 2010 Order Establishing Procedures for the Assignment of Allowed Claims.

15.     Successors Bound.  This Agreement shall be binding upon and inure to the benefit of each of the Parties and their successors and permitted assigns.

16.     No Third Party Beneficiary.  The Parties do not intend to confer any benefit by or under this Agreement upon any person or entity other than the Parties hereto and their respective successors and permitted assigns.

17.     Applicable Law.  This Agreement shall be construed and enforced in accordance with the laws of the State of New York, without regard to its conflict of laws provisions.

18.     Exclusive Jurisdiction.  The Parties agree that the Bankruptcy Court shall have exclusive jurisdiction over any and all disputes between or among the Parties, whether in law or equity, arising out of or relating to this Agreement, or any provision thereof, and the Parties hereby consent to and submit to the jurisdiction of the Bankruptcy Court for any such action.  In the event the BLMIS proceeding is closed by a final decree and not reopened, the Parties agree that any dispute arising out of this Agreement, or any provision thereof, may be brought in the District Court or the Supreme Court of New York in New York County.

19.     Captions and Rules of Construction.  The captions in this Agreement are inserted only as a matter of convenience and for reference and do not define, limit, or describe the scope of this Agreement or the scope or content of any of its provisions.  Any reference in this Agreement to a paragraph is to a paragraph of this Agreement.  "Includes" and "including" are not limiting.

20.     Counterparts, Electronic Copy of Signatures.  This Agreement may be executed and delivered in any number of counterparts, each of which so executed and delivered shall be deemed to be an original and all of which shall constitute one and the same document.  The Parties may evidence their execution of this Agreement by delivery to the other Parties of scanned or faxed copies of their signatures with the same effect as the delivery of an original signature.

21.     Negotiated Agreement.  This Agreement has been fully negotiated by the Parties.  Each Party acknowledges and agrees that this Agreement has been drafted jointly, and the rule that ambiguities in an agreement or contract may be construed against the drafter shall not apply in the construction or interpretation of this Agreement.

22.     Severability.  In the event that any term or provision of this Agreement or any application thereof is deemed to be invalid or unenforceable, the remainder of this Agreement and any other application of such term or provision shall not be affected thereby.

23.     Notices.  Any notices under this Agreement shall be in writing, shall be effective when received and may be delivered only by hand, by overnight delivery service, by fax, or by electronic transmission to:

6

If to the Trustee:

Irving H. Picard
Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111
E-mail:  ipicard@bakerlaw.com

If to Brockman, Defender, Reliance
BVI or Reliance Gibraltar, c/o:

Gary S. Lee
E-mail: glee@mofo.com
John A. Pintarelli
E-mail: jpintarelli@mofo.com
Morrison & Foerster LLP
250 West 55th Street
New York, NY 10019
T: (212) 468-8000
F: (212) 468-7900

with copies to:

Oren J. Warshavsky
E-mail: owarshavsky@bakerlaw.com
Keith R. Murphy
E-mail:  kmurphy@bakerlaw.com
Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111
F:  (212) 589-4201

If to Lowe or RIR, c/o :

Mark Hyland
E-mail: hyland@sewkis.com
Mandy DeRoche
E-mail: deroche@sewkis.com
Seward & Kissel LLP
One Battery Park Plaza
New York, NY 10004
T: (212) 574-1200
F: (212) 480-8421

*[Signature pages follow]*

7

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be executed as of the date first above written.

_____
IRVING H. PICARD


Sworn to and subscribed before me
this 23rd day of March, 2015

_____
Notary Public

SONYA M. GRAHAM
Notary Public, State of New York
No. 01GR6133214
Qualified in Westchester County
Commission Expires: 9/12/20__

8

**DEFENDER LIMITED**

By :

Name: Nigel Neale    Raymond Connell
Title: As authorized signatories for and
on behalf of Fiman Limited - Director

Subscribed before me
this 25ᵗʰ day of March, 2015

Notary Public

PETER M. TRIAY
NOTARY PUBLIC
GIBRALTAR

9

300351222

**RELIANCE MANAGEMENT (BVI)
LIMITED**

By: _____

Name: Nigel Neale    Raymond Connell
Title: As authorized signatories for and
on behalf of Fiman Limited - Director

Subscribed before me
this 23rd day of March, 2015

_____
Notary Public

PETER M. TRIAY
NOTARY PUBLIC
GIBRALTAR

10

300351222

**RELIANCE INTERNATIONAL
RESEARCH**

By : _____
      Name: Justin Lowe
      Title:  Managing Member

Subscribed before me
this 23 day of March, 2015

_____
Notary Public

DIANE BUOU
Notary Public, State of New York
No. 01BI6078594
Qualified in New York County
Commission Expires December 25, 2018

11

300351222.9

RELIANCE DORMANT LIMITED
(FORMERLY        RELIANCE
MANAGEMENT    (GIBRALTAR)
LIMITED)


By: _____
Name: Nigel Neale    Raymond Connell
Title: As authorized signatories for and
on behalf of Fiman Limited - Director


Subscribed before me
this 23rd day of March, 2015

_____
Notary Public

12

300351222

**TIM BROCKMANN**

Subscribed before me
this 26th day of March, 2015

Pierre-Philippe RICAUD
Notary Public



300351222

**JUSTIN LOWE**

By : _____

Subscribed before me
this 23rd day of March, 2015

_Diane Byou_
Notary Public

DIANE BIJOU
Notary Public, State of New York
No. 01BI6076504
Qualified in New York County
Commission Expires December 27, 2018

14

## ATTACHMENT A

## <u>DEFENDER CUSTOMER CLAIM</u>

300351222.10



Irving H Picard, Esq.
Trustee for Bernard L Madoff Investment Securities LLC
Claims Processing Centre
2100 McKinney Ave.
Suite 800
Dallas
TX 75201

2 March 2009

**Your ref.:**    **1FR132 – HSBC Ireland Attn: Jane OReilly**
**Our ref.:**    **Defender Limited (the "Fund")**

Dear Mr Picard

In your capacity as Trustee to Bernard L Madoff Investment Securities LLC ("BLMIS"), please accept this letter as confirmation of submission of a customer claim, as attached, by the Fund pursuant to the Securities Investor Protection Act of 1970, as amended (the "Claim").

In addition to this cover letter, which provides an explanation as to the basis of this Claim, we also enclose the Claim form and a binder containing supporting documentation for individual items on the Claim form. For ease of reference the individual documentation contained within this binder has been provided with unique reference numbers.

**Submitting party of the Claim**

The Fund has directed HSBC Institutional Trust Services (Ireland) Limited ("HTIE") to submit the Claim on its behalf. Appendix I of the documentation binder provides supporting information as to the instruction provided by the Fund, including formal instructions from the Fund to HTIE and a Power of Attorney. HTIE was appointed Custodian to the Fund, under the Custodian Agreement with the Fund dated 3 May 2007.

**Overview summary of supporting documentation enclosed**

The enclosed BLMIS statements cover the period to 30 November 2008, coinciding with the latest net asset value calculated. As detailed further below, enclosed supporting documentation that covers the period from 28 November 2008 to the date of this letter, is sourced from the Administrator of the Fund, HSBC Securities Services (Ireland) Limited (the "Administrator").

---

**HSBC Institutional Trust Services (Ireland) Limited**
1 Grand Canal Square, Grand Canal Harbour, Dublin 2, Ireland
Tel: 00353 1 635 6000 Fax: 00353 1 649 7542

*Directors: Ronnie Griffin, Gerry Bradley, John Cargill (UK)*
*Registered in Dublin, Ireland. Reg No. 181767 V.A.T. 6581765H*
*HSBC Institutional Trust Services (Ireland) Limited is authorised by the Financial Regulator under the Investment Intermediaries Act, 1995.*

MWPTAP00031691

**MWPTAP00324006**



**Explanation as to the supporting documentation provided**

The specific information provided below corresponds to item numbers listed on the Claim form.

> **Item 1**

Please refer to the supporting documentation binder. Enclosed are the most recent statements received from BLMIS, detailing transaction activity for the period to 30 November 2008 and the reported holdings with BLMIS at that date (Document Index Number ("DIN") 1.1).

The cash balance provided per the BLMIS statements as at 30 November 2008 is USD 36.00 as detailed on page 17.

DIN 1.2 provides documentation demonstrating that as per the Administrator's records up to 11 December 2008, cash dividend payments were due to the Fund resulting from the securities held in its portfolio (see item 2). So to further evidence the validity of the additional aggregated sum (USD 1,135,088.81) please also find enclosed supporting screen prints from Bloomberg, a pricing vendor utilised by the Administrator (DIN 1.3), which supports the information contained in the "price" column in DIN 1.2.

The amount of cash owed to the Fund as of December 11, 2008 was USD 1,135,124.81. USD 4,161,511.95 is the amount of cash owed to the Fund as of 2 March 2009. This amount includes dividend entitlements related to securities held by the Fund that were due to the Fund since 11 December 2008. Additional dividend amounts continue to accrue, as noted in DIN 3.3.

> **Item 2**

A summary of the securities held by the BLMIS on behalf of the Fund is provided in DIN 2.1. In specific relation to Item 2 b., the short positions maintained by the Fund are American Style S&P 100 Index Call Options. This information is supported by and corresponds to the holdings, in DIN 1.1 as noted above, identified in the BLMIS statements dated 30 November 2008 (pages 15 – 17).

We also include individual trade confirmations from BLMIS to HSBC for the November 2008 trading (DIN 2.2). These trade confirmations correspond to the details uploaded to the Administrator's records, per DIN 2.3.

The Fund is not aware of any trading activity since 30 November 2008.

> **Item 3**

As noted in the explanation to Item 1 above, the Administrator's record confirm that since 11 December 2008, additional cash dividends entitlements were due to the Fund, associated with securities held in the Fund's portfolio. This information is enclosed (DIN 3.1). We enclose copies of Bloomberg screen prints (DIN 3.2) supporting the information contained in the "price" column in DIN 3.1.

MWPTAP00031692



> Item 7

This Claim is being submitted on behalf of the Fund by HTIE.

> Item 8

The Fund entered into a trading authorization and option agreement with BLMIS, dated 4 May 2007.

If you require any additional information to support the Claim or should there be any queries the please do not hesitate to contact me.

Yours sincerely,

By:

Ronnie Griffin
Managing Director
HSBC Institutional Trust Services (Ireland) Limited
In our capacity as Custodian to Defender Limited

MWPTAP00031693

**MWPTAP00324008**

**CUSTOMER CLAIM**

Bernard L. Madoff Investment Securities LLC
Case No 08-01789-BRL
U.S. Bankruptcy Court for the Southern District of New York
Claim Number:    **005117**

Date Received_____

**BERNARD L. MADOFF INVESTMENT SECURITIES LLC**

In Liquidation

**RECEIVED**

MAR 0 3 2009

**DECEMBER 11, 2008**

Irving H. Picard, Esq.
Trustee for Bernard L. Madoff Investment Securities LLC
Claims Processing Center
2100 McKinney Ave., Suite 800
Dallas, TX 75201

Provide your office and home telephone no.

OFFICE: + 353  1  635  6000

HOME:_____

Taxpayer I.D. Number (Social Security No.)

_____

1FR132

HSBC IRELAND
ATTN: JANE OREILLY
1 GRAND CANAL SQUARE
GRAND CANAL HARBOUR
DUBLIN 2 IRELAND

DEFENDER LIMITED
c/o HSBC INSTITUTIONAL TRUST
SERVICES (IRELAND) LIMITED
1 GRAND CANAL SQUARE
GRAND CANAL HARBOUR
DUBLIN 2
IRELAND    A/C  1FR132

(If incorrect, please change) - PLEASE SEE ABOVE

**NOTE:    BEFORE COMPLETING THIS CLAIM FORM, BE SURE TO READ CAREFULLY THE ACCOMPANYING INSTRUCTION SHEET.  A SEPARATE CLAIM FORM SHOULD BE FILED FOR EACH ACCOUNT AND, TO RECEIVE THE FULL PROTECTION AFFORDED UNDER SIPA, ALL CUSTOMER CLAIMS MUST BE RECEIVED BY THE TRUSTEE ON OR BEFORE March 4, 2009.  CLAIMS RECEIVED AFTER THAT DATE, BUT ON OR BEFORE July 2, 2009, WILL BE SUBJECT TO DELAYED PROCESSING AND TO BEING SATISFIED ON TERMS LESS FAVORABLE TO THE CLAIMANT.  PLEASE SEND YOUR CLAIM FORM BY CERTIFIED MAIL - RETURN RECEIPT REQUESTED.**

*************************************************************************

1.    Claim for money balances as of **December 11, 2008** :    ①
    a.    The Broker owes me a Credit (Cr.) Balance of    $ 4,161,511.95
    b.    I owe the Broker a Debit (Dr.) Balance of    $  0.00

502180406    ① PLEASE SEE EXPLANATION IN COVER LETTER

MWPTAP00031687

**MWPTAP00324002**

    c.   If you wish to repay the Debit Balance,
please insert the amount you wish to repay and
attach a check payable to "Irving H. Picard, Esq.,
Trustee for Bernard L. Madoff Investment Securities LLC."
If you wish to make a payment, **it must be enclosed**
with this claim form.    $ _____N/A_____

    d.   If balance is zero, insert "None."    _____N/A_____

2.    Claim for securities as of **December 11, 2008**:

**PLEASE DO NOT CLAIM ANY SECURITIES YOU HAVE IN YOUR POSSESSION.**

|  | YES | NO |
|---|---|---|
| a. The Broker owes me securities | ✓ | |
| b. I owe the Broker securities | ✓ ② | |

    c.   If yes to either, please list below:

| Date of Transaction (trade date) | Name of Security | Number of Shares or Face Amount of Bonds | |
|---|---|---|---|
| | | The Broker Owes Me (Long) | I Owe the Broker (Short) |
| _____ | | _____ | _____ |
| _____ | PLEASE REFER TO | _____ | _____ |
| _____ | ACCOMPANYING BINDER | _____ | _____ |
| _____ | (DIV 2.1 & 1.1) | _____ | _____ |
| _____ | | _____ | _____ |

**Proper documentation can speed the review, allowance and satisfaction of your claim and shorten the time required to deliver your securities and cash to you. Please enclose, if possible, copies of your last account statement and purchase or sale confirmations and checks which relate to the securities or cash you claim, and any other documentation, such as correspondence, which you believe will be of assistance in processing your claim. In particular, you should provide all documentation (such as cancelled checks, receipts from the Debtor, proof of wire transfers, etc.) of your deposits of cash or securities with the Debtor from as far back as you have documentation. You should also provide all documentation or**

502180406                2

② PLEASE SEE EXPLANATION IN COVER
LETTER

MWPTAP00031688

MWPTAP00324003

information regarding any withdrawals you have ever made or payments received from the Debtor.

Please explain any differences between the securities or cash claimed and the cash balance and securities positions on your last account statement.  If, at any time, you complained in writing about the handling of your account to any person or entity or regulatory authority, and the complaint relates to the cash and/or securities that you are now seeking, please be sure to provide with your claim copies of the complaint and all related correspondence, as well as copies of any replies that you received.
**PLEASE CHECK THE APPROPRIATE ANSWER FOR ITEMS 3 THROUGH 9.**

NOTE:    IF "YES" IS MARKED ON ANY ITEM, PROVIDE A DETAILED EXPLANATION ON A SIGNED ATTACHMENT.  IF SUFFICIENT DETAILS ARE NOT PROVIDED, THIS CLAIM FORM WILL BE RETURNED FOR YOUR COMPLETION.

|  |  | YES | NO |
|---|---|---|---|
| 3. | Has there been any change in your account since December 11, 2008?  If so, please explain. | ✓ ③ | |
| 4. | Are you or were you a director, officer, partner, shareholder, lender to or capital contributor of the broker? | | ✓ |
| 5. | Are or were you a person who, directly or indirectly and through agreement or otherwise, exercised or had the power to exercise a controlling influence over the management or policies of the broker? | | ✓ |
| 6. | Are you related to, or do you have any business venture with, any of the persons specified in "4" above, or any employee or other person associated in any way with the broker?  If so, give name(s) | | ✓ |
| 7. | Is this claim being filed by or on behalf of a broker or dealer or a bank?  If so, provide documentation with respect to each public customer on whose behalf you are claiming. | | ✓ ⑦ |
| 8. | Have you ever given any discretionary authority to any person to execute securities transactions with or through the broker on your behalf?  Give names, addresses and phone numbers. | ✓ ⑧ | |

502180406

③, ⑦, ⑧ - PLEASE REFER TO EXPLANATION IN COVER LETTER

MWPTAP00031689

MWPTAP00324004

9.  Have you or any member of your family
    ever filed a claim under the Securities
    Investor Protection Act of 1970?  if
    so, give name of that broker.                    _____  ✓_____

    Please list the full name and address of anyone assisting you in the
    preparation of this claim form: HSBC INSTITUTIONAL TRUST SERVICES (IRELAND) LIMITED

If you cannot compute the amount of your claim, you may file an estimated claim.  In that
case, please indicate your claim is an estimated claim.

**IT IS A VIOLATION OF FEDERAL LAW TO FILE A FRAUDULENT CLAIM.
CONVICTION CAN RESULT IN A FINE OF NOT MORE THAN $50,000 OR
IMPRISONMENT FOR NOT MORE THAN FIVE YEARS OR BOTH.**

**THE FOREGOING CLAIM IS TRUE AND ACCURATE TO THE BEST OF MY
INFORMATION AND BELIEF.**

Date _____    Signature _____
                                    DEFENDER LIMITED, BY HSBC
Date  2 March 2009    Signature INSTITUTIONAL TRUST SERVICES (IRELAND) LT
                                    IN ITS CAPACITY AS CUSTODIAN.

(If ownership of the account is shared, all must sign above.  Give each owner's name,
address, phone number, and extent of ownership on a signed separate sheet.  If other
than a personal account, *e.g.*, corporate, trustee, custodian, etc., also state your capacity
and authority.  Please supply the trust agreement or other proof of authority.)

**This customer claim form must be completed and mailed promptly,
together with supporting documentation, etc. to:**

Irving H. Picard, Esq.,
Trustee for Bernard L. Madoff Investment Securities LLC
Claims Processing Center
2100 McKinney Ave., Suite 800
Dallas, TX 75201

502180406

MWPTAP00031690

**MWPTAP00324005**