Baker&Hostetler LLP

45 Rockefeller Plaza
New York, NY 10111

T 212.589.4200
F 212.589.4201
www.bakerlaw.com

Karin Scholz Jenson
direct dial: 212.589.4266
kjenson@bakerlaw.com

March 24, 2015

Honorable Stuart M. Bernstein
United States Bankruptcy Court
Southern District of New York
One Bowling Green
New York, NY 10004-1408

   Re: *Picard v. Cohmad Securities Corporation, et al.*
     *Adv. Pro. No. 09-01305 (SMB)*

Dear Judge Bernstein:

   We are counsel to Irving H. Picard, Esq., the Trustee for the substantively consolidated SIPA liquidation proceedings of Bernard L. Madoff Investment Securities LLC and estate of Bernard L. Madoff (collectively, "BLMIS"). We write in response to the March 20, 2015 letter to the Court (the "March 20 Letter") from defendants Richard Spring, the Spring Family Trust, and the Jeanne T. Spring Trust (the "Spring Defendants"). We also respectfully seek the Court's intervention compelling the Spring Defendants' compliance with their discovery obligations, and hope that the Court conference, scheduled for 2 p.m. on March 31, 2014, will resolve all issues.

   The Trustee has complied with his discovery obligations and is ready to produce documents responsive to the Spring Defendants' Request for Production of Documents and Things to the Trustee (the "Spring Defendants' Requests") served on June 10, 2014. The Spring Defendants, however: (i) refuse to produce documents; (ii) refuse to sign required, court-sanctioned agreements that would allow the Trustee to produce documents; and (iii) seek to pose unreasonable burdens on the Trustee and otherwise refuse to cooperate in discovery. The Trustee's counsel has made multiple good faith attempts to resolve these disputes. During the parties' most recent discussion on March 13, 2015, the Trustee's counsel agreed to the Spring Defendants' request for an additional week to consider the Trustee's proposed solution to move discovery forward. Instead of responding to the Trustee, however, the Spring Defendants' counsel submitted the March 20 Letter. As explained herein, the Trustee continually has tried to efficiently proceed with discovery, while the Spring Defendants have been unreasonably intransigent.

*Chicago  Cincinnati  Cleveland  Columbus  Costa Mesa*
*Denver  Houston  Los Angeles  New York  Orlando  Washington, DC*

Honorable Stuart M. Bernstein
March 23, 2015
Page 2

### *The Spring Defendants' Refusal to Produce Documents*

The Trustee served his First Set of Requests for the Production of Documents on the Spring Defendants (the "Trustee's Requests") on December 22, 2011.[1]  The Spring Defendants served their responses and objections on June 11, 2012.[2]  As the Court is aware, at that time, the reference to the Bankruptcy Court was withdrawn on various threshold issues in the BLMIS liquidation, including those that affect this case.  After the Trustee overcame the *Cohmad* defendants' motions to dismiss and this case was returned to this Court, the Trustee asked the Spring Defendants, among others, to produce documents responsive to the Trustee's Requests.

In June 2014, the Spring Defendants' counsel identified two types of documents responsive to the Trustee's Requests: electronic files on computer hard drives and ten to twelve boxes of paper documents.  The Spring Defendants' counsel advised that a vendor was being engaged to image the hard drives and that counsel would work with the Trustee on search terms to run across the electronic files.

In June and July 2014, the parties discussed the status of the production by telephone and through multiple emails.  During a July 7, 2014 telephone discussion, the Spring Defendants' counsel indicated that the production of the hard-copy and electronic documents would begin in 20 to 50 days.   In an August 4, 2014 email, counsel stated that the Spring Defendants were "working on [their] production."   Yet since that time, the Spring Defendants have refused to produce documents.  The Trustee pressed for the production on multiple occasions, most recently, on March 13, 2015.

The only reason that the Spring Defendants offer for changing course on their agreement to produce is that they perceive a deficiency in the Trustee's responses to the Spring Defendants' Requests, to which the Trustee responded on August 19, 2014.  Setting aside the fact that the Trustee stands ready to produce responsive documents (as addressed below), there is no priority to discovery under Federal Rule of Civil Procedure 26, which prohibits a party from delaying discovery on account of another party's response to discovery.  Fed. R. Civ. P. 26(d)(2)(B).  Even in their March 20 Letter, the Spring Defendants acknowledge that they are essentially withholding their documents pending a resolution of the dispute with regard to the Trustee's production.  This position is not defensible.

### *The Trustee's Document Production*

The Spring Defendants' Requests, served on June 5, 2014, are a sweeping set of 82 broadly drafted requests, the vast majority of which seek "all documents concerning" a specified topic, and could be read to implicate most, if not all, of the millions of documents in the Trustee's collections from which he produces.[3]

Following the Trustee's response to the Spring Defendants' Requests, the parties engaged

---

[1] Trustee's Requests to Richard Spring are attached as Ex. A.
[2] Richard Spring's responses and objections are attached as Ex. B.
[3] *See, e.g.*, Request No. 80:  All documents concerning BLMIS' client list.

300354600.1

in several meet and confers in which the Trustee further explained why the Requests, if read literally, would result in a "data dump."   On November 12, 2014, the Trustee's counsel held a lengthy in-person meet and confer with all counsel in *Cohmad* to describe the Trustee's document collections, including those that are unique to *Cohmad*.  The express purpose of the meet and confer, as described in the invitation as well as the subsequent memorialization thereof, was to provide transparency into the Trustee's document collections so that defendants could be better informed about the importance of cooperation in discovery in order to narrow the scope of the Trustee's production.  The Trustee explained that cooperation was especially important in *Cohmad,* given that the defendants—unlike the Trustee—have first-hand knowledge of many of the documents in the Trustee's collections, as they were documents previously in Cohmad's possession.

At this meeting, counsel for the Trustee described the following:

- The categories of the nearly 29 million BLMIS records in the database from which the Trustee produces in his cases, including the core account documents for customers referred to BLMIS by the *Cohmad* defendants.

- The sources of information in the Trustee's court-sanctioned data room that supports that BLMIS was a fraud and insolvent.  Counsel for the Trustee offered to carve out from his production any documents that also appear in this data room.

- The collections of third-party documents in the court-sanctioned third-party data rooms containing Rule 2004 document productions and examinations, and documents received in the Trustee's litigations.

- The data sources unique to *Cohmad*, including the Access database referred to in the Amended Complaint that Cohmad used to track BLMIS customers referred by Cohmad registered representatives and the commissions those representatives received for the referrals (the "Cohmad Cash Database"), as well as the approximately 400,000 documents that Cohmad created and/or maintained that were abandoned at the Lipstick Building, where Cohmad shared office space with BLMIS (the "Cohmad Documents"). The Trustee offered to produce to the defendants the Cohmad Cash Database in its entirety and the Cohmad Documents either in their entirety or only those that hit on the parties' negotiated search terms, depending on the defendant's preference.

Also at this meeting, the Trustee's counsel provided approximate document "hit" counts across the BLMIS collection and Cohmad Documents for each of the defendants' names.  The term "Spring" hit on 136,088 and 14,219 documents, respectively.

Given the volume of potentially responsive documents in the Trustee's collections, counsel for the Trustee stressed the need for a cooperative approach in developing and selecting search terms and other limiters specific to each defendant.  The Trustee's counsel also stated, unequivocally, that the Trustee will produce documents of which counsel is specifically aware that are responsive to a request, to the extent that they are not uncovered by the parties' search terms.  On November 18, 2014, the Trustee provided a detailed memorialization of the meet and

Honorable Stuart M. Bernstein
March 23, 2015
Page 4

confer and provided copies of the court-sanctioned acknowledgment and agreements that
defendants were required to execute in order to receive documents.[4]

In December 2014, the Trustee began producing BLMIS account files and documents
reflecting the transfers from BLMIS to the *Cohmad* defendants who had returned the executed
acknowledgement and agreements.  The Spring Defendants, however, have not returned the
signed acknowledgment and non-disclosure agreements, and thus the Trustee has not begun his
production of these documents to them.  This entire production, plus the Cohmad Cash Database,
is responsive to the Spring Defendants' Requests, a point the Trustee has explained to the Spring
Defendants on multiple occasions.

The Trustee has also advised the Spring Defendants on multiple occasions that the
universe of other documents responsive to their Requests is—without question—voluminous and
requires their cooperation to narrow its scope through the use of search terms and other
limiters.  For example, Request No. 82 seeks "all documents that the Trustee *reviewed*, *consulted*
or relied upon in drafting the Complaint against the Spring Defendants." (Emphasis added.)  This
Request implicates tens, if not hundreds, of thousands of documents, which the Trustee, as a
stranger to these documents, necessarily had to review to draft the Complaint.   The Complaint
against the Spring Defendants grew out of an investigation of hundreds of potential defendants,
many of whom were interrelated, even if they were not ultimately grouped together in a single
complaint. As the Trustee's counsel has repeatedly stated to the Spring Defendants, the Trustee
will not withhold any documents relevant to his claims—regardless of whether those documents
support or refute those claims. The Spring Defendants suggest that, in lieu of negotiated search
terms over this voluminous universe, the Trustee instead must segregate and identify documents
used to formulate particular complaint allegations.  This is not an appropriate approach to
discovery.  Assuming this were possible, the request essentially seeks the Trustee's mental
processes at an earlier stage of an ongoing case—regardless of whether the Trustee still would
rely on such documents or has the same understanding of the evidence.  The purpose of
discovery is to determine whether the evidence supports or refutes the Trustee's claims.

Although the Trustee endeavors with all defendants to achieve proportionality and work
cooperatively in discovery, nothing in the rules requires the Trustee to undertake the burden of
aligning the documents he is producing with a particular request.   Federal Rule of Civil
Procedure 34 permits a party to produce documents *either* organized by Request *or* as they were
kept in the ordinary course of business.  Fed. R. Civ. P. 34(b)(2)(E)(i).  And nothing requires the
Trustee at this stage to identify all evidence that the Trustee contends establishes the Spring
Defendants' liability.  Discovery is in its infancy, and the Spring Defendants have not produced
any of their documents on which the Trustee may also ultimately rely to establish liability.[5]

Finally, the March 20 Letter reflects a misunderstanding about whether the Trustee is

---

[4] Attached as Ex. C.

[5] Local Rule of Civil Procedure 33.3(c) "anticipates that in the normal course, responses to
contention interrogatories will be due at the very end of the fact discovery period." *See e.g.*,
*Erchonia Corp. v. Bissoon*, No. 07 Civ. 8696, 2011 WL 3904600, at *8 (S.D.N.Y. Aug. 26,
2011), *aff'd*, 458 Fed. App'x 58 (2d Cir. 2012).

300354600.1

Honorable Stuart M. Bernstein
March 23, 2015
Page 5

withholding responsive documents concerning third-party interviews.  When explaining the breadth of the Trustee's investigation at the October 1 meet and confer, the Trustee's counsel explained, as memorialized by the October 17 Letter, that "the Trustee did not necessarily rely on a document for each allegation in the complaint; for example, it is not unusual for allegations to come from other sources of information obtained during the Trustee's investigation, including interviews, public information, expert analysis, etc."  The Trustee's counsel was merely explaining the process of the investigation, not providing the source for particular allegations.  While the Trustee will not provide work product or identify his non-testifying consultants, the Trustee does not claim any privilege or protection on documents in his possession, custody, and control created on or before the date of Madoff's arrest, December 11, 2008, and has and will continue to identify all individuals that have information that relate to the Trustee's claims and defenses.

Despite the Trustee's willingness to work with the Spring Defendants to produce responsive documents, the Spring Defendants refuse to cooperate.  The Trustee therefore welcomes this Court's assistance in this matter.

Respectfully,

*s/ Karin Scholz Jenson*
BAKER & HOSTETLER LLP

300354600.1