# EXHIBIT C

# BakerHostetler

**Baker&Hostetler** LLP

45 Rockefeller Plaza
New York, NY 10111

T 212.589.4200
F 212.589.4201
www.bakerlaw.com

Oren J. Warshavsky
direct dial: 212.589.4624
owarshavsky@bakerlaw.com

November 18, 2014

**VIA E-MAIL AND FIRST CLASS MAIL TO ALL COPIED BELOW**

   *Re:  Picard v. Cohmad Securities Corp., et al., Adv. Pro. No. 09-01305 (SMB)*

Dear Counsel and Ms. Delaire:

   Thank you for attending the Trustee's meet-and-confer on November 12, 2014 at BakerHostetler, or sending representatives to attend on your behalf. Our goal was to provide you with a better understanding of the Trustee's various collections of documents that may be relevant and set the stage for future individual meet-and-confers. This letter memorializes that meeting.

   We are also attaching: (1) the slides presented by Karin Jenson, the discovery coordinator for the Trustee in all cases; (2) copies of the Non-Disclosure Agreements for the Trustee's electronic data rooms; and (3) a chart summarizing the sources and method of production of each of the Trustee's collections.

   Following the November 12 meeting, certain counsel asked if the Trustee would be amenable to dispensing with written requests for production under Federal Rule of Civil Procedure 34 and instead begin negotiating search terms. The Trustee is amenable to that approach, with all parties reserving rights and objections.

## I. **BLMIS DOCUMENTS**

### A. **Generally**

   The Trustee produces relevant BLMIS documents from a database that contains nearly twenty-nine million documents (the "BLMIS Collection"). These documents were in BLMIS's possession as of December 11, 2008. The BLMIS Collection includes:

- Core Account Documents ("CADs") for all BLMIS IA customers, which comprise account opening documents, correspondence to and from BLMIS, requests for transfers and/or redemptions, and other documents that were specific to each account;

November 18, 2014
Page 2

- Other documents that do not appear in the CADs that may relate to a defendant or account, such as reports, lists, notes, correspondence, and other types of documents;

- Emails and other electronic documents from key custodians at BLMIS;

- Documents about the business of BLMIS in general;

- Documents that also appear in the Trustee's E-Data Room 1, which contains the documents supporting that BLMIS was a fraudulent enterprise and insolvent; and

- Hard-copy documents.

## B.  **Production of BLMIS Documents**

The Trustee will segregate and directly produce all CADs for: (1) the BLMIS accounts held by the Cohmad Defendants; (2) the "related" accounts (i.e. those BLMIS accounts that transferred funds into the BLMIS accounts held by the Cohmad Defendants); and (3) the referred accounts (i.e. those BLMIS accounts that were referred to BLMIS by the Cohmad Representatives).

The Trustee has made available documents supporting that BLMIS was a fraudulent enterprise and insolvent by placing them in E-Data Room 1, as discussed more fully below.

For the remaining documents contained in the BLMIS Collection, the Trustee will meet-and-confer with the Cohmad Defendants to negotiate search terms and other potential ways to focus his production, such as removing voluminous customer lists. As discussed during our meeting, the hit count for the term "Cohmad" alone is 55,148 in the BLMIS Collection, before excluding the CADs and documents contained in E-Data Room 1.

## C.  **E-Data Room 1**

### 1.  **Generally**

E-Data Room 1 contains approximately four million BLMIS and third-party documents that relate to the fraud and insolvency of BLMIS. The Trustee's expert considered certain of these documents in connection with his expert report on fraud and insolvency. Examples of documents contained in E-Data Room 1 include:

- Documents related to the financial condition of BLMIS;

- Documents related to the operations of BLMIS, including the Ponzi scheme;

- BLMIS customer monthly account statements;

- Other internal records of BLMIS;

November 18, 2014
Page 3

- Transfers of money to, from and within BLMIS; and

- Regulatory disclosures made by BLMIS.

The documents and data in E-Data Room 1 are organized generally by source, then document type.  Some included categories are:

- BLMIS customer monthly account statements and ledgers;

- Data and reports from various electronic sources;

- BLMIS documents and work papers;

- Operational documents;

- FINRA documents;

- Certain documents received from the SEC;

- Some public documents like relevant plea allocations; and

- Certain hard-copy documents collected from the three floors in the Lipstick Building and BLMIS's off-site storage locations.

**2.  Production of documents from E-Data Room 1**

In accordance with the orders on E-Data Room 1, any Cohmad Defendant *represented by counsel* may access E-data Room 1.  Counsel must first execute a Non-Disclosure Agreement ("NDA"), which we distributed to you on November 12 and are also enclosing with this letter.  Upon receipt of the signed NDA, the Trustee will provide a user login and password to enable access to the Data Room Information Portal.  The portal contains a manual and other information explaining how to use E-Data Room 1.  Further details are contained in the portal, but generally:

- There is a mechanism in E-Data Room 1 that allows attorneys to tag documents of interest.  No other users can access or view documents that an attorney has tagged.

- The manual explains how to request specific documents for physical production from E-Data Room 1.  E-Data Room 1 users do not have the ability to print or download files from E-Data Room 1.  To obtain a production of tagged documents, the user selects a "to produce" tab, then logs on to the Data Room Information Portal and submits a production request.

November 18, 2014
Page 4

- Neither the Trustee nor his counsel monitors defense counsel's activities within E-Data Room 1. The Trustee's counsel receives a copy of whatever documents defense counsel selects for production.

With respect to *pro se* defendants, the Trustee will meet-and-confer separately with such defendants if they request documents concerning BLMIS's fraud and insolvency.

### 3. The SQL Database

Information contained in certain sources of information in E-Data Room 1 were processed and input into multiple Microsoft SQL Server tables and databases ("SQL Databases"). The SQL Databases can be produced upon request. The sources of data loaded into the SQL Databases include, without limitation:

- StorQM Optical Storage Device: BLMIS used the StorQM application to store historical customer records from December 1995 through November 2008, which include, but are not limited to, Customer Statements and Portfolio Management Reports ("PMRs").

- Microfilm reels: BLMIS used this storage medium for historical customer records, which include, but are not limited to Customer Ledgers and PMRs as well as Portfolio Management Transaction Reports.

- Spiral notebooks: BLMIS personnel recorded cash deposits and withdrawals in handwritten stenographic (spiral-bound) notebooks relating to certain customer accounts. Spiral notebooks were identified for the periods from April 1985 through September 1990, and August 1991 through November 1994.

- BLMIS's bank records, from various banks, including monthly bank statements, check images, wire transfer records, and deposit slips.

- House 17 AS/400 System: This is the computer system that the BLMIS's Investment Advisory Business used to manage customer accounts and generate Customer Statements.

- House 5 AS/400 System: This is the computer system that the BLMIS Market Making and Proprietary Trading businesses used to track and report trading and position information.

- House 17 Backup Tapes: These tapes were created in the normal course of business at BLMIS and contain historical and contemporaneous purported customer activity and customer records from the House 17 AS/400 System.

November 18, 2014
Page 5

- House 5 Backup Tapes: These tapes were created in the normal course of business at BLMIS and contain historical and contemporaneous backups of the trading and position records from the House 5 AS/400 System.

- Madoff Securities International Ltd. historical trading and position records

- Electronic files recovered from BLMIS employee computers and network folders

- Electronic files recovered from BLMIS's Network Accessed Shares

- Cohmad Cash Database

- Bloomberg Instant Messaging: Instant messages passed between House 5 traders

- BLMIS phone logs from Avaya and BlackBerry

- Security swipe data of employees and visitors from the Lipstick Building

- Reporting data from the Depository Trust & Clearing Corporation

- Reporting data from the Options Clearing Corporation

- Bloomberg Market Data

- Data from the Center for Research in Security Prices

- Data from the Chicago Board Options Exchange

## II. **THIRD-PARTY DOCUMENTS**

### A. **Generally**

The Trustee is in possession of millions of documents from hundreds of producing parties from his Bankruptcy Rule 2004 investigation and from the various litigations. Pursuant to the Court's October 17, 2013 Orders, the Trustee makes certain of these third-party documents available in Third-Party Data Rooms. Copies of the October 17, 2013 Orders were distributed at the November 12 meeting. As set forth in the Orders, the documents included in the Third-Party Data Rooms are:

- Documents produced to the Trustee in response to Rule 2004 subpoenas

November 18, 2014
Page 6

- Documents produced to the Trustee voluntarily, including documents concerning Cohmad produced to the Trustee by the U.S. Securities & Exchange Commission and the Massachusetts Division of Securities;

- Documents produced to the Trustee in actions where discovery has commenced, including any documents produced pursuant to a Rule 45 subpoena in this *Cohmad* action;

- Transcripts of parties examined pursuant to Bankruptcy Rule 2004; and

- Transcripts of parties and non-parties deposed in litigation, including transcripts of any depositions taken in this *Cohmad* action.

As further set forth in the Orders, the documents excluded from the Third-Party Data Rooms are:

- Documents provided to the Trustee in connection with hardship applications;

- Documents provided to the Trustee with restrictions on use and/or disclosure for possible settlement and/or mediation;

- Documents subject to or controlled by a domestic or foreign court order;

- Those documents that, due to contractual obligations, are no longer under the care, custody or control of the Trustee;

- Documents produced to the Trustee in discovery in the Avoidance Actions as defined in the Orders, which are the "good faith" or "innocent investor" cases;

- Exhibits to Rule 2004 examinations and litigation depositions, which will be in the Third-Party Data Rooms as they were originally produced to the Trustee in accordance with the Order Establishing Procedures for Third-Party Data Rooms; and

- Documents or data identified as being a record of Cohmad and/or where the original custodian identified was a Cohmad employee. This category excludes documents or data that remained at the offices of BLMIS in 2009 and were identified as being a record of Cohmad and/or where the original custodian identified was a Cohmad employee. It also excludes from the Third-Party Data Rooms any document production by any Cohmad Defendant to the Trustee in this action.[1]

---

[1] For information on how this category of documents will be produced to requesting non-Cohmad defendants, please see Oren Warshavksy's letter dated October 9, 2014, which was also discussed at the November 12 meeting.

November 18, 2014
Page 7

### B. Production of Third-Party Documents

#### 1. Documents included in the Third-Party Data Rooms

The Court's October 17, 2013 Orders describe how the Third-Party Data Rooms operate. In general, if a defendant serves a Rule 34 request for production of documents that implicates documents contained in the Third-Party Data Rooms, the Trustee and defendant will meet-and-confer on "appropriate access" to the Third-Party Data Rooms. Defense counsel must also sign an NDA similar to that for E-Data Room 1. Once access is granted, counsel will receive a manual describing the contents of and exclusions from the Third-Party Data Rooms and explaining how to search the data rooms.

The documents in the Third-Party Data Rooms are segregated into two separate spaces: one data room contains confidential third-party documents and the other contains non-confidential third-party documents. The basic difference is that, in the Non-Confidential Third-Party Data Room, counsel can run searches and view documents immediately that hit on those searches. In the Confidential Third-Party Data Room, counsel can run searches but cannot view the documents hitting on those terms until the producing party releases them for viewing. The data rooms contain a mechanism that allows the producing party to authorize the viewing of confidential documents and the production of both non-confidential and confidential documents.

#### 2. Documents excluded from the Third-Party Data Rooms

When documents excluded from the Third-Party Data Rooms are responsive to a defendant's non-objectionable request for production, the Trustee will produce such documents in accordance with the Trustee's search-term protocol (i.e. developing search terms, document type or producing party limitations, or other parameters that may be helpful during individual meet-and-confers).

## III. COHMAD CASH DATABASE

### A. Generally

The Cohmad Cash Database monitored the actual cash value of each referred account and could generate reports, one of which we believe is the document attached to the Amended Complaint as Exhibit 4. The Cohmad Cash Database consists of two pieces: (1) the Access "front end," which is the functionality piece that contains the formulas; and (2) the "back end" data that flowed into it. The two pieces must be "married" together for the Cohmad Cash Database to be queried and/or analyzed. The "back end" data, when not married with the "front end," appears as it does on the final slide in the enclosed presentation.

November 18, 2014
Page 8

B. **Production of the Cohmad Cash Database**

There are three options for producing the Cohmad Cash Database:

- The Trustee can produce the "front end" and "back end" separately and the requesting Cohmad Defendant can marry the pieces themselves;

- The Trustee can produce the "married" version of the Cohmad Cash Database upon acknowledgement of the authenticity of the married version; or

- The Trustee can produce the "married version" upon acknowledgement of the authenticity of the married version and each of the two pieces.

IV. **COHMAD DOCUMENTS**

The Cohmad documents generally fall into three categories:

- Cohmad documents that were commingled with BLMIS documents on the BLMIS servers or the BLMIS side of the Lipstick Building;

- Hard-copy and electronic documents that were abandoned at the Lipstick Building in 2009; and

- Potentially relevant documents in eight unprocessed desktops and hard drives that Cohmad's counsel has claimed belong to Cohmad.

There are approximately 475,000 documents in the first two categories. There are two options for producing these documents: (1) the Trustee can produce the entire collection of 475,000 processed documents; or (2) the Trustee can produce documents that hit on search terms or other parameters to be developed in an individual meet-and-confer. As discussed during the November 12 meeting, the hit count for the term "Cohmad" in this collection is 240,011.

With regard to the last category of Cohmad documents, we are processing these desktops and hard drives and will further meet-and-confer with Cohmad's counsel regarding how documents on these sources will be reviewed and produced.

V. **OTHER GENERAL DISCOVERY POINTS**

A. **What the Trustee Will Produce Without Search Terms**

The Trustee will produce the following documents regardless of a specific request for production and without using negotiated search terms:

- The CADs, as previously described; and

November 18, 2014
Page 9

- Bank transfer documents, which include account statements and cancelled checks that establish proof of the transfers from BLMIS to the Cohmad Defendants.

With respect to requests for production, the Trustee will produce any non-objectionable documents that he knows specifically respond to a request and are not otherwise produced pursuant to search terms, produced by other defendants, or made available through the one of the electronic data rooms.

## B.  The Need for Cooperation and Search Terms

The parties' cooperative approach to developing narrowly tailored search terms is critical to the Trustee's cases for the following reasons:

- Many of the Cohmad Defendants were employees of Cohmad and have first-hand knowledge of Cohmad's documents whereas the Trustee does not;

- To avoid a "data dump" of documents if a defendant demands "all" documents relating to an account, defendant, or subject, given the sheer volume of documents that are in the Trustee's collections;

- The fact that many of these "responsive" documents may be redundant, cumulative, duplicative, or marginally relevant; and

- To reduce the costs in discovery both on the Trustee, in having to conduct a responsiveness review, and on defendants, in having to review a large production from the Trustee.

We generally agree to provide hit-count reports on agreed upon search terms so that defendants may further limit the Trustee's production by narrowing the terms, requesting only certain document types, or other parameters.

## C.  Productions within the *Cohmad* Action

As Mr. Warshavsky's October 9 letter indicated, any Cohmad Defendant who produces documents to the Trustee in response to the Trustee's requests for production must provide a duplicate copy to every other Cohmad Defendant.  The Trustee will provide a courtesy copy of any documents that he produces to one Cohmad Defendant to all of the other Cohmad Defendants, except for any productions that a Defendant takes out of either E-Data Room 1 or the Third-Party Data Rooms.  The party who issues a Rule 45 subpoena is responsible for producing to all other parties a copy of productions received in response to said subpoena.

## D.  Initial Disclosures

The Trustee will be amending his Rule 26 initial disclosures to reflect events that have occurred since they were made on October 4, 2011, including the various orders discussed

November 18, 2014
Page 10

above. The Trustee's amended initial disclosures will identify the sources of data identified in this letter and discussed during the November 12 meeting.

Sincerely,

Oren J. Warshavsky

cc:    Robert A. Abrams, Esq.
       Mark Blount, Esq.
       Ernest E. Badway, Esq.
       Jane M. Delaire (*pro se*)
       Vivian R. Drohan, Esq.
       Richard J. Gabriele, Esq.
       Fran Hoffinger, Esq.
       Joseph F. Keenan, Esq.
       Bruce A. Langer, Esq.
       Steven R. Paradise, Esq.
       Steven R. Schlesinger, Esq.

BakerHostetler

# *Picard v. Cohmad Securities Corp. et al*

## Group Meet and Confer

## Nov. 12, 2014

BakerHostetler

# Topics for Discussion

– Documents obtained from BLMIS;

– Documents obtained from third parties either in the Trustee's investigation or in the various cases;

– Our court-sanctioned data rooms, E-Data Room 1 and the Third-Party Data Rooms;

– Cohmad-created electronic and hard-copy documents that were on BLMIS servers and/or abandoned at the Lipstick Building; and

– The Trustee's approach to discovery generally.

BakerHostetler

# Hits on "Cohmad" in BLMS Collection

- *Total collection: 55,148 hits*

- *Excluding account documents and documents in E-Data Room 1: 28,356 hits*

BakerHostetler

# E-Data Room 1

- Documents relating to BLMIS' fraud and insolvency

- Accessible to counsel after execution of a non-disclosure agreement

- Manual explains contents and organization

BakerHostetler

# Third-Party Data Rooms

- Accessible to counsel after execution of a non-disclosure agreement
- Manual explains contents and organization
  - Confidential
  - Non-confidential

BakerHostetler

# Third-Party Data Rooms: Inclusions

- Documents produced to the Trustee in response to Bankruptcy Rule 2004 subpoenas;

- Documents produced to the Trustee voluntarily;

- Documents produced to the Trustee in certain actions where discovery has commenced;

- Transcripts of parties examined pursuant to Bankruptcy Rule 2004; and

- Transcripts of parties and non-parties deposed in litigation.

BakerHostetler

# Third-Party Data Rooms: Exclusions

- Documents provided to the Trustee in connection with hardship applications;

- Documents provided to the Trustee with restrictions on use and/or disclosure in connection with possible settlement and/or mediation;

- Documents subject to or controlled by a domestic or foreign court order;

- Those documents that, due to contractual obligations, are no longer under the care, custody or control of the Trustee;

- Documents produced to the Trustee in discovery in the Avoidance Actions;

- Exhibits to Rule 2004 Examinations and Litigation Depositions, which will be provided in the Third-Party Data Rooms as they were originally produced to the Trustee in accordance with the Order Establishing Procedures for Third-Party Data Rooms; and

- Documents or data identified as being a record of Cohmad Securities Corporation ("Cohmad"), a company that shared office space with BLMIS, and/or where the original custodian identified was a Cohmad employee.

BakerHostetler

Ex. 4 to Cohmad Amended Complaint





**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, <br><br> Plaintiff, <br><br> v. <br><br> BERNARD L. MADOFF INVESTMENT SECURITIES LLC, <br><br> Defendant. | No. 08-01789 (BRL) <br><br> SIPA Liquidation <br><br> (Substantively Consolidated) |
| In re: <br><br> BERNARD L. MADOFF, <br><br> Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, <br><br> Plaintiff, <br><br> v. <br><br> _____, <br><br> Defendant(s). | Adv. Pro. No. 10-_____ (BRL) |

## NON-DISCLOSURE AGREEMENT FOR THIRD-PARTY DATA ROOMS

WHEREAS this non-disclosure agreement (the "Agreement") supplements the Litigation Protective Order entered on June 6, 2011 [ECF No. 4137] (the "Litigation Protective Order") entered in *Securities Investor Protection Corporation v. Bernard L. Madoff Investment Securities, LLC, et al.*, Adv. Pro. No. 08-01789 (BRL), and any subsequent amendments or modifications thereto; and

WHEREAS, on September 17, 2013, the Bankruptcy Court entered an Order Establishing Procedures for Third-Party Data Rooms [ECF No. 5475] (the "Third-Party Data Rooms Order"). All capitalized terms not otherwise defined herein shall have the meanings given such terms in the Litigation Protective Order and the Third-Party Data Rooms Order; and

WHEREAS, in addition to the requirements set forth in the Litigation Protective Order, and any subsequent amendments or modifications thereto, this Agreement shall govern all materials provided in the Third-Party Data Rooms (as defined in the Third-Party Data Rooms Order) and produced in connection with the above-captioned adversary proceeding; and

WHEREAS, the Third-Party Data Rooms have been designated "OUTSIDE LITIGATION COUNSELS' EYES ONLY."

_____ (the "Recipient") hereby represents to each of the following:

A.    My office address is

_____,

and the name of my present employer is _____.

My firm has been retained by _____

in the Adversary Proceeding: _____

(hereinafter, the "Adversary Proceeding").

B.    I have received a copy of the Litigation Protective Order and executed the

attached Undertaking and Consent To Be Bound (a copy of which has been or will be,

concurrent with a copy of this executed NDA, sent to Baker & Hostetler LLP, counsel for the

Trustee, at MadoffDataRooms@bakerlaw.com).

C.    I have carefully read and understand the provisions of the Litigation Protective

Order. Based on the foregoing representations, Recipient hereby agrees to each of the following:

1.    Recipient will abide by the terms of the Litigation Protective Order and any

subsequent amendments or modifications thereto as well as the additional requirements set forth

herein. Any such agreement to abide by the terms of the Litigation Protective Order and any

2

subsequent amendments or modifications, however, does not prejudice defendants' ability to object to any proposed amendment to the Litigation Protective Order.

2.      Prior to production of any material out of the Third-Party Data Rooms, Recipient will not, and shall ensure that his or her employees, agents, and staff will not, disclose any material placed in the Third-Party Data Rooms nor the information contained therein to any person, including, without limitation, his or her clients, other than (a) Recipient's employees, agents and staff who need to know such information in connection with its representation of defendant in the Adversary Proceeding, provided that such individuals have executed this NDA. All original executed NDAs shall be retained by Recipient, with a copy sent to Baker & Hostetler LLP, counsel for the Trustee, at MadoffDataRooms@bakerlaw.com.  The Litigation Protective Order shall govern the treatment of documents produced out of the Third-Party Data Rooms.

3.      Recipient will not use any material placed in the Third-Party Data Rooms, directly or indirectly, for any purpose whatsoever other than in connection with the Adversary Proceeding.  Violations of this provision may result in Recipient, its employees, agents or staff being held in contempt of the Court.

4.      Recipient understands that this agreement does not preclude Recipient from using documents obtained from sources other than the Third-Party Data Rooms or limit the manner in which such documents may be used, irrespective of whether those documents are also in the Third-Party Data Rooms.

5.      If Recipient seeks to file any pleading or other document with the Bankruptcy Court that contains **CONFIDENTIAL MATERIAL,** as defined in the Litigation Protective Order and accordingly designated by the Producing Party, it will file such pleading or other

3

document under seal.  If Recipient seeks to file any pleading or other document with the Bankruptcy Court that contains personally identifiable information or HIPAA-protected information, it will redact such information in accordance with Bankruptcy Rule 9037.

6.      Recipient will take all appropriate measures to ensure that any **CONFIDENTIAL MATERIAL** that it may obtain is safeguarded consistent with the confidentiality protections set forth herein including, without limitation, that its employees, agents and staff will keep all such material and any copies thereof in a locked container, cabinet, drawer, room or other safe place.

7.      Recipient understands that pursuant to Paragraph 12 of the Litigation Protective Order, as modified by the Order Establishing Procedures for Third-Party Data Rooms, and any subsequent amendments or modifications thereto, requires that notice be given to the Producing Party whose material has been requested before any material produced to the Trustee is produced physically to a third party.

8.      Recipient understands that the materials produced out of Third-Party Confidential Data Room retain their designations as **CONFIDENTIAL** in accordance with the Litigation Protective Order.  A resolution from the Court that the Trustee shall produce **CONFIDENTIAL MATERIAL** from the Third-Party Confidential Data Room does not disturb the **CONFIDENTIAL** designation of the materials, unless the Recipient has been granted such relief by Court Order, or the Producing Party has agreed to remove the confidential designation.

9.      Recipient understands that any work product protection is not waived as to any work product inadvertently placed in the Third-Party Data Rooms, subject to the provisions of paragraph 14 of the Litigation Protective Order, and any subsequent amendments or modifications thereto.

4

10.     Recipient understands and agrees that violation of this Agreement is the equivalent of violation of a Bankruptcy Court order.

11.     Recipient consents to the exercise of personal jurisdiction by the Bankruptcy Court in connection with this Agreement and its obligations hereunder and the Litigation Protective Order and any subsequent amendments or modifications thereto.  For the avoidance of doubt, nothing in this Agreement shall be deemed or construed as a submission or consent by any defendant to the exercise of personal jurisdiction by the Bankruptcy Court in the underlying adversary proceeding.

12.     Recipient declares under penalty of perjury under the laws of the State of New York that the foregoing is true and correct.

_____
Signature of Recipient

_____
Address

_____
Date

Sworn before me on this
_____ day of _____, 201____

_____
Notary Public

5

300304362

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>                              Plaintiff,<br><br>          v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>                              Defendant. | Adv. Pro. No. 08-01789 (SMB)<br><br>SIPA Liquidation<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>                              Debtor. | |

## <u>NON-DISCLOSURE AGREEMENT FOR E-DATA ROOM 1</u>

WHEREAS this non-disclosure agreement (the "Agreement") supplements the *Securities Investor Protection Corporation v. Bernard L. Madoff Investment Securities, LLC, et al.,* Adv. Pro. No. 08-01789 (BRL) Litigation Protective Order entered on June 6, 2011 [Dkt. 4137] (the "Litigation Protective Order"), and any subsequent amendments or modifications thereto;

WHEREAS, on November 10, 2010, the Bankruptcy Court entered an Order (1) Establishing Litigation Case Management Procedures for Avoidance Actions and (2) Amending the February 16, 2010 Protective Order [Docket No. 3141] (the "Litigation Case Management Order"), pursuant to which the Trustee created an electronic data room containing documents relating to BLMIS's fraud and BLMIS's insolvency ("E-Data Room 1");

WHEREAS, on January 12, 2012, the Bankruptcy Court entered an Order Expanding Access to Electronic Data Room 1, granting access to E-Data Room 1 to the attorneys of record for all defendants in this and related adversary proceedings; and

WHEREAS, in addition to the requirements set forth in the Litigation Protective Order, and any subsequent amendments or modifications thereto, this Agreement shall govern all materials contained in E-Data Room 1;

_____ (the "Recipient") hereby represents to each of the following:

A. My address is _____,

and the name of my present employer is _____.

My firm has been retained by _____

in the Adversary Proceeding: _____

(hereinafter, the "Adversary Proceeding").

B. I have received a copy of the Litigation Protective Order and executed the Undertaking

and Consent To Be Bound (a copy of which has been or will be, concurrent with a copy of this

executed NDA, sent to Baker & Hostetler LLP, counsel for the Trustee, 45 Rockefeller Plaza,

New York, New York 10111, Attn: Nicole Schnarre (nschnarre@bakerlaw.com).

C. I have carefully read and understand the provisions of the Litigation Protective Order.

Based on the foregoing representations, Recipient hereby agrees to each of the following:

1.       Recipient will abide by the terms of the Litigation Protective Order and any

subsequent amendments or modifications thereto as well as the additional requirements set forth

herein.

2.       Recipient will not and shall ensure that its employees, agents, or staff will not

disclose any material placed in E-Data Room 1 nor the information contained therein to any

person, including, without limitation, its clients, other than (a) Recipient's employees, agents,

and staff who need to know such information in connection with its representation of defendant

in the Adversary Proceeding and (b) other professionals retained by defendant in the Adversary

Proceeding who need to know such information in connection with such engagement provided

that such other professional(s) have executed a copy of this Agreement and returned it to counsel

for the Trustee.  Material produced out of E-Data Room 1 may be shared with Recipient's client

as described in Paragraph 4 below.

2

3.      Recipient will not use any material placed in E-Data Room 1, directly or indirectly, for any purpose other than in connection with the Adversary Proceeding.

4.      Recipient understands that while reviewing documents in E-Data Room 1, Recipient shall not print, download, duplicate or save or retain any information from E-Data Room 1. Recipient may request documents for production out of E-Data Room 1. Use and disclosure of documents produced out of E-Data Room 1 shall be governed by the terms of the Litigation Protective Order and any subsequent amendments or modifications thereto as well as the additional requirements set forth herein.

5.      Recipient understands that Paragraph 12 of the Litigation Protective Order, and any subsequent amendments or modifications thereto, requires that notice be given to a producing party whose **CONFIDENTIAL MATERIAL** has been requested before any **CONFIDENTIAL MATERIAL** produced to the Trustee is provided to a third party.

6.      Recipient will take all appropriate measures to ensure that any **CONFIDENTIAL MATERIAL** that it may obtain is safeguarded consistent with the confidentiality protections set forth herein including, without limitation, that its employees, agents, and staff will keep all such material and any copies thereof in a locked container, cabinet, drawer, room or other safe place.

7.      If Recipient seeks to file any pleading or other document with the Bankruptcy Court that contains **CONFIDENTIAL MATERIAL,** as defined in the Litigation Protective Order and accordingly designated by the producing party, it will file such pleading or other document under seal.

8.      Recipient understands that the disclosure of any summaries, data compilations, data extractions, document coding, and foldering structures are provided for Recipient's convenience. The summaries, data compilations, data extractions, document coding, and

3

foldering structures may constitute work product as that term is defined by Fed. R. Civ. P. 26(b)(3) and case law. By making available in E-Data Room 1 the foregoing, the Trustee does not intend to waive work product protection with respect to any other similar materials not placed in E-Data Room 1 or related in any way to those materials which are being made available in E-Data Room 1 for ease of reference and convenience of the Recipient in the Adversary Proceeding.

9.    Recipient understands that any work product protection is not waived as to any work product inadvertently placed in the E-Data Room 1, subject to the provisions of paragraph 14 of the Litigation Protective Order, and any subsequent amendments or modifications thereto.

10.    Recipient understands and agrees that violation of this Agreement is the equivalent of violation of a Bankruptcy Court order.

11.    Recipient consents to the exercise of personal jurisdiction by the Bankruptcy Court in connection with this Agreement and its obligations hereunder and the Protective Order.

12.    Recipient declares under penalty of perjury under the laws of the State of New York that the foregoing is true and correct.

_____
Print Name

_____
Signature

_____
Date

Sworn before me on this

_____ day of _____, 20____

_____
Notary Public

300245124

5

*Picard v. Cohmad Securities Corp.*, Adv. Pro. No. 09-1305 (SMB)
November 18, 2014

| Collection | How Produced | Negotiated Search Terms | Format |
|---|---|---|---|
| BLMIS | 1. The Trustee will directly produce Core Account Documents and bank transfer documents; AND | No | Trustee's standard production format |
| | 2. Documents relating to BLMIS's fraud and insolvency are available in E-Data Room 1; AND | No | Defendants select documents for production from the data room |
| | 3. Remaining documents are available for production. | Yes | Trustee's standard production format |
| Cohmad | 1. Defendants can request the entire available collection of approximately 475,000 processed documents; OR | No | Trustee's standard production format |
| | 2. The Trustee will produce documents that hit on negotiated search terms. | Yes | Trustee's standard production format |
| Cohmad Cash Database | 1. The Trustee will produce the "front end" and "back end" of the database separately, to be "married" by Defendants; OR | N/A | In native format |
| | 2. The Trustee will produce the "married" version upon acknowledgement of the authenticity of the two separate ends; OR | N/A | In native format |
| | 3. The Trustee will produce the "married" version upon acknowledgement of the authenticity of the married version. | N/A | In native format |
| Third-Party Documents | 1. Documents listed in the Court's October 17, 2013 Orders are available in the Third-Party Data Rooms; AND | No | Defendants select documents for production from the data rooms |
| | 2. Remaining documents are available for production. | Yes | Trustee's standard production format |