Page 1

1   UNITED STATES BANKRUPTCY COURT

2   SOUTHERN DISTRICT OF NEW YORK

3   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

4   SECURITIES INVESTOR PROTECTION

5   CORPORATION,

6                   Plaintiff,

7           v.                    Adv. Case No. 08-01789(SMB)

8   BERNARD L. MADOFF INVESTMENT

9   SECURITIES, LLC,

10                  Defendant.

11  - - - - - - - - - - - - - - - - - - - - - - - - - - - x

12                  U.S. Bankruptcy Court

13                  One Bowling Green

14                  New York, New York

15

16                  March 18, 2015

17                  2:05 PM

18

19

20

21  B E F O R E :

22  HON STUART M. BERNSTEIN

23  U.S. BANKRUPTCY JUDGE

24

25

1    **Hearing re:    Conference re Confidentiality Issues Related to**

2    **Extraterritoriality Submission**

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    **Transcribed by:    Dawn South**

Page 3

1    A P P E A R A N C E S :

2    BAKER HOSTETLER

3         Attorneys for the Trustee

4         45 Rockefeller Plaza

5         New York, NY 10111

6

7    BY:   KARIN SCHOLZ JENSON, ESQ.

8         THOMAS L. LONG, ESQ.

9

10   SULLIVAN & WORCESTER LLP

11        Attorneys for UniCredit Bank Austria

12        1633 Broadway

13        New York, NY 10019

14

15   BY:   FRANKLIN B. VELIE, ESQ.

16        JONATHAN G. KORTMANSKY, ESQ.

17

18   DECHERT LLP

19        1095 Avenue of the Americas

20        New York, NY 10036-6797

21

22   BY:   MARIEL BRONEN, ESQ.

23

24

25

```
 1   K&L GATES

 2        Attorney for Albourne America LLC

 3        599 Lexington Avenue

 4        New York, NY 10022-6030

 5

 6   BY:  ROBERT T. HONEYWELL, ESQ.

 7

 8   ARNOLD & PORTER LLP

 9        Attorney for Merrill Lynch International

10        399 Park Avenue

11        New York, NY 10022-4690

12

13   BY:  MARY E. SYLVESTER, ESQ.

14

15   SIMPSON THACHER & BARTLETT LLP

16        425 Lexington Avenue

17        New York, NY 10017-3954

18

19   BY:  NICHOLAS S. DAVIS, ESQ.

20

21

22

23

24

25
```

Page 5

1    GIBSON, DUNN, CRUTCHER LLP

2         Attorney for UBS

3         200 Park Avenue

4         New York, NY 10166-0193

5

6    BY:  GABRIEL HERMANN, ESQ.

7

8    PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

9         Attorney for The Citco Entities

10        1285 Avenue of the Americas

11        New York, NY 10019-0064

12

13   BY:  MARC FALCONE, ESQ.

14

15   WOLLMUTH MAHER & DEUTSCH LLP

16        Attorney for Liquidating Trustee for Greenwich Security

17        LP and Greenwich Security Partners L.P.

18        500 Fifth Avenue

19        New York, NY 10110

20

21   BY:  FREDERICK R. KESSLER, ESQ.

22

23

24

25

Page 6

```
 1   CLEARY GOTTLIEB STEEN & HAMILTON LLP

 2        Attorney for HSBC Defendants

 3        One Liberty Plaza

 4        New York, NY 10006-1470

 5

 6   BY:  JOAQUIN P. TERCENO III, ESQ.

 7

 8   SHEARMAN & STERLING LLP

 9        Attorney for BBVA

10        801 Pennsylvania Avenue, NW

11        Washington, DC 20004-2634

12

13   BY:  ANDREW HUANG, ESQ.

14

15

16

17

18

19

20

21

22

23

24

25
```

Page 7

1                  P R O C E E D I N G S

2           THE COURT:  Please be seated.  Madoff?

3           MS. JENSON:  Karin Jenson for the trustee.

4           THE COURT:  Go ahead.

5           MR. LONG:  Tom Long for the trustee, Your Honor.

6           THE COURT:  Go ahead.

7           MS. JENSON:  Thank you.  Good afternoon, Your

8   Honor.  Thank you for the opportunity to have this informal

9   conference.

10          We -- under paragraph 10 of the litigation

11  protective order the informal conference is required before

12  we can make any motion with regard to confidentiality

13  issues, any disputes, and we are here today because we have

14  been unable to resolve certain confidentiality issues with

15  regard to producing parties whose documents relates to the

16  trustee's extraterritoriality submission.

17          So as we stated in the March 4th letter we have

18  made tremendous progress in working through the

19  dedesignation issues.  We've gotten about 5,000 documents

20  from 40 producing parties dedesignated.  Since we sent the

21  letter to the Court on March 6th we've had an additional ten

22  parties agree to dedesignate, so we came into the proceeding

23  yesterday on our update to you with ten parties, we've since

24  resolved another two.  Parties are cooperatively working

25  through these issues with us, and this is probably the only

Page 8

1    moment where I don't have to be concerned that documents are

2    being dedesignated as we speak since everyone is here.

3            So we're trying to work through how to deal with

4    the remaining confidentiality issues with regard to these

5    remaining party, these eight remaining parties, and there's

6    been a lot of different solutions that have been discussed,

7    including with defendants in the proceedings and the

8    producing parties themselves.

9            Some of them involve filing under seal, some of

10   them involve redacting within the submission itself,

11   including the company that's being served on the defendants

12   themselves, and some of it involves actually proceeding

13   through the process that the protective order contemplates,

14   which is having those dedesignation discussions be informal

15   conference and them making a motion with the Court for an in

16   camera inspection.

17           So right now the solution to this problem has a

18   lot of different options and there are a lot of different

19   people that have an interest in the outcome, not just the

20   defendants themselves, but the producing parties who are not

21   defendants and then customers or other people with an

22   interest in the document, even though they're not the

23   producing parties themselves or the defendants themselves.

24           So, I want to walk through what are the kind of --

25   the categories of cases that we're facing here.

Page 9

```
 1              So we have 93 cases total that are currently part

 2     of the extraterritoriality proceedings, and as of this

 3     moment we have 78 that have confidentiality issues out of

 4     the 93.

 5              So we're not attaching documents themselves to our

 6     extraterritoriality submission, but paragraph 10 of the

 7     protective order talks about our ability to communicate

 8     information from documents that have been designated

 9     confidential.  And so these are almost exclusively Rule 2004

10     documents that were produced to the trustee during the Rule

11     2004 investigation, in fact they are exclusively now that we

12     got a few more dedesignated this morning.

13              But the litigation protective order is really not

14     a beacon of clarity on how the trustee deals with Rule 2004

15     documents, and I've had this discussion with many attorneys

16     and their colleagues in the room today about the fact that

17     it is difficult to find clear guidance in the protective

18     order on how to proceed on these particular issues.

19              So we have opted for the most conservative

20     approach, or at least we thought that it was the most

21     conservative approach, but I have now learned over the past

22     couple of days that defendants in this room and producing

23     parties have a different interpretation that is even more

24     narrower than I was expecting.

25              And so that first bucket is the completely clean
```

1   cases as we're calling them.  The cases without any

2   confidentiality issues whatsoever, and that is approximately

3   15 cases right now -- 12 cases.

4           And then we have the cases in which a -- the

5   producing party -- the party who produced documents to the

6   trustee during the Rule 2004 investigation now happens to be

7   a defendant in the adversary proceeding -- in an adversary

8   proceeding that has been filed.  So we were of the view that

9   if those documents produced by those parties were

10  confidential they could be communicated -- information from

11  them could be communicated in the filing and served on all

12  of the defendants in that particular adversary proceeding.

13          We have had a number of discussions with parties

14  who are in that situation who would be in that scenario who

15  disagree with that, and they believe that to the extent I'm

16  the producing party and Mr. Long is my co-defendant in the

17  case, if I produce the documents the trustee can only make

18  allegations as to me, that I can see but Mr. Long can't see

19  those allegations within an individual adversary proceeding.

20          The second --

21          THE COURT:  In that example does the same attorney

22  represent both defendants?

23          MS. JENSON:  Not necessarily.

24          In the second category -- or I should say the

25  third category, because we do have some clean cases, the

Page 11

1    third category are those cases in which the producing party

2    of the Rule 2004 material is not a defendant in the

3    particular action.  So it's a -- that producing party is a

4    stranger to the action entirely.  And the issue there is

5    that if we don't get that material dedesignated then we

6    can't use it at all or have permission from the producing

7    party we can't use it at all within that individual

8    adversary.

9              THE COURT:  Can I ask what's the nature of this

10   information?

11             MS. JENSON:  It is varied, and sometimes it is

12   intertwined.  There are certain documents that are

13   redemptions and withdrawals from the LMIS or from a peter

14   fund, there are certain documents that relate to actual

15   knowledge, but they also tie in with the facts that are

16   necessary for an extraterritoriality submission because they

17   are about due diligence happening in New York, for example,

18   or -- I'm sorry -- money being transferred to New York.

19             THE COURT:  But what's the nature of the

20   information that's confidential?

21             MS. JENSON:  Well that's the open question and

22   that's what we've been discussing with the producing parties

23   for many months.

24             Some of it -- many producing parties take the view

25   that it is sensitive commercial proprietary information that

Page 12

1   they don't want to share with their competitors, for example

2   and recollects our view of that is that the information is

3   largely stale.  All of these documents at issue are at least

4   seven years old, some of them are much older.

5            There's also some view that the association with

6   Madoff that's reflected in the documents is the reason for

7   maintaining the confidentiality, and that the Court has

8   already determined is an insufficient reason to keep a

9   document private in the unsealing order that happened in

10  2000 11.

11           And we also have some complicated issues with

12  regard to who has a say in whether the documents are

13  disclosed.  It's -- some producing parties have cited

14  contractual obligations with their customers, and so barring

15  permission from their customers they are unable to

16  dedesignate the documents.

17           And so because of these -- the varying

18  interpretations of the protective order and the fact that

19  the protective order doesn't give clear guidance on how to

20  deal with these particular Rule 2004 issues we have

21  undertaken this dedesignation process because that's the

22  simplest and fairest way to resolve everyone's concerns.  We

23  -- if a document is not confidential then clearly we can

24  communicate about it in any of the trustee's proceedings in

25  the main action.

1           And so we have been going through these documents

2      over the past many months in order to resolve them, but it

3      is just not clear, it's a moving target as to how we're able

4      to make these allegations in a way that the defendants in

5      any particular adversary proceeding can see them and how

6      we're going proceed through, you know, working through all

7      of the details with all of the interested parties and all of

8      the non-parties that are interested in these documents.

9           So with regard to these three categories of

10     documents again they're sort of a moving target because

11     documents are constantly being dedesignated.

12          We have talked about a number of options with

13     counsel for the various producing parties over the past

14     couple of weeks on how to resolve these problems, and

15     there's been a lot of solutions that having proposed, like I

16     said, with redaction, filing under seal, that sort of thing.

17     The interpretation issues bear on how we're going to do the

18     redactions, and that's a challenge for us that's unresolved

19     at this point.  We need to figure out what to redact before

20     we can actually redact it.  We need to figure out what

21     everybody collectively agrees should be filed under seal

22     before we can start doing that process.

23          And so this has been a significant distraction

24     over the couple of weeks -- over the past couple of weeks as

25     we try to get consensus on everyone's views, and you know,

1    as I mentioned it really has been a moving target on the

2    viewing.

3            So there has been this proposal for an attorneys'

4    eyes only designation to the allegations that are derived

5    from confidential documents, and we are certainly open to

6    that idea.

7            THE COURT:  And what does that mean?

8            MS. JENSON:  And that would be that allegations

9    that are made by a -- let's start with a non-party to the

10   case -- non-party entirely -- those allegations would be

11   redacted on the publicly filed version of the document, they

12   would be disclosed in the individual adversary proceeding in

13   the filing under seal, but that would be marked attorneys'

14   eyes only, so that the defendant's counsel can see what

15   we're alleging against them.

16           THE COURT:  But can't discuss it with the client?

17           MS. JENSON:  That has been the proposal that's

18   been put forward to us.  I'm not sure how defense counsel,

19   you know, intends to work through those issues, but it's

20   something that has been proposed to to us.

21           It also would resolve -- the attorneys' eyes only

22   provision is something we've been discussing because it

23   would resolve this complicated problem of how is

24   coordinating counsel going to coordinate a response if

25   coordinating counsel can't see all of the allegations in the

Page 15

1    entire submission.  What becomes --

2              THE COURT:  How did you think this was all going

3    to be resolved when the order was drafted?

4              MS. JENSON:  When the order was drafted, the

5    dedesignation discussions, and it has been tremendously

6    successful.  We have had, you know, thousands of documents,

7    we have spent hours discussing the dedesignation issues,

8    we've had whole parties understand that giving the age of

9    these document, the fact that they're seven years old, the

10   -- or at least, the fact that they relate to defunct

11   entities, these feeder funds, these entities don't exist

12   anymore and the documents are about them and their

13   interaction with Madoff, which doesn't exist anymore, it

14   doesn't seem to be a protectable confidential interest at

15   play there, and there are very -- many producing parties who

16   acknowledge that and have wholesale dedesignated their

17   productions to us.

18             And I think that with the attorneys' eyes only

19   provision we also have this wrinkle of how to deal with the

20   -- who is the defendant in the case.  So, I'm going give an

21   actual real life example of how tricky this is.  We have one

22   producing party who produced documents to us relating to

23   several different entities of that company.  The way it's

24   being viewed currently is that we can use those documents in

25   the adversary proceeding where that actual entity that

Page 16

1    produced the documents to us, can be -- we can make

2    allegations against that entity, but it may be that we have

3    to discuss whether we can make allegations in a different

4    adversary proceeding against a different entity, even though

5    that entity's information is in the producing party's

6    documents that were produced.

7           Very complicated to work through, how we parse

8    that out, how we deal with related allegations among the

9    filings to insure that we have consistency across the board,

10   that we're following the rules, that everyone is reading

11   into the protective order.

12          So we are happy to make a motion to resolve the

13   global issues --

14          THE COURT:  How will that affect the timing of the

15   motion?

16          MS. JENSON:  We -- I think that the first step

17   would be to get --

18          THE COURT:  I meant the timing of the

19   extraterritoriality submission.

20          MS. JENSON:  Of the submission -- of the trustee's

21   submission.  I think that we could -- if we were able to

22   come to an agreement on the attorneys' eyes only provision,

23   which I think that everyone recognizes that we need to come

24   up with something, because the trustee's allegations against

25   a particular defendant have to be obvious, and so I think an

Page 17

1    additional three weeks or so we'd be able to work through

2    and then that would give the trustee enough time to actually

3    figure out what we have to redact or what has to be

4    marked attorneys' eyes only.

5              THE COURT:  So you're talking about the

6    possibility of having to make a motion.

7              MS. JENSON:  That's what the protective order

8    contemplates, and I think that a motion would be appropriate

9    because of the different entities that have an interest in

10   these documents.  We want to make sure that we have

11   appropriate notice across the board.  We did notice this

12   conference in the main case, we noticed it to all

13   extraterritoriality defendants and we noticed it to all open

14   producing parties.

15             THE COURT:  But the consideration of the main

16   motion would have to be delayed until this was resolved I

17   assume.

18             MS. JENSON:  I think that -- I think that's right.

19             THE COURT:  Okay.  I mean I guess you could also

20   file an unredacted copy under seal just as a placeholder.

21             MS. JENSON:  Yes.

22             THE COURT:  All right.

23             MS. JENSON:  Yes.  And --

24             THE COURT:  You also mentioned arbitration in your

25   letters.

Page 18

1          MS. JENSON:  Yes, and that's another point that I

2     want to make is that it's very important to the trustee that

3     we don't put a Band-Aid on this problem.  There are many

4     documents that are still at issue today that we first

5     requested dedesignation and we've been having ongoing

6     discussions with producing parties' counsel years ago

7     because they were relevant in a personal jurisdiction

8     proceeding, for example.

9          And even if -- even assuming that all of the

10    extraterritoriality defendants were dismissed at the end of

11    this process, just assuming, their documents are still

12    relevant to the initial transfer and are also relevant to

13    the commercial subsequent transferees.  And so their

14    document issues aren't going to go away even if they go away

15    as defendants themselves.  We still have to confront these

16    issues.

17         And the other potential problem that we have, and

18    we have this with regard to the initial round of complaints

19    that were submitted in 2010 and 2011, is that if the

20    allegations become public and the underlying documents

21    remain confidential then we have the issue of we are now in

22    a position today of having to put our documents in a third-

23    party data room.

24         The Court entered an order in fall of 2013 where

25    all of the confidential documents go into a confidential

Page 19

1    data room, all of the non-confidential documents go into a

2    non-confidential data room, and a defendant who propounds a

3    request for production of documents on the trustee can get

4    access and do their own searching and they become -- the

5    producing parties are the arbitrator of their own

6    confidentiality.  So if the defendant wants a third party's

7    documents they log on the data room, do some searching, find

8    out that their documents were hit upon, so they don't

9    actually see them, an alert goes to the producing party and

10   the producing party then clears the documents for production

11   to the defendant.  And so we need to have our documents in

12   the right place.  We can't have allegations public but the

13   documents not.  We have to have them in the right place.

14           We are prepared to answer any questions.  I

15   understand that other counsel are interested in speaking

16   today.

17           THE COURT:  Let me hear from the other counsel.

18           MS. JENSON:  Thank you.

19           MR. VELIE:  Good morning, Your Honor.  Franklin

20   Velie, Sullivan & Worcester representing UniCredit Bank

21   Austria, and I am one of a few liaison counsel.  I have a

22   very limited point and I believe it'll help the Court cut

23   through at least some of this.

24           As I understand the trustee's position the trustee

25   is agreeable to letting liaison counsel see whatever it is

Page 20

1   that the Court gets to see.  It's obviously terribly

2   important to us because we are charged with the

3   responsibility of preparing papers on behalf of all of these

4   defendants and feel it would be unfair to them and of course

5   to us to have us prepare papers if we haven't seen all of

6   the allegations.

7           We are prepared, and I understand the trustee is

8   okay with this, to have this on an attorneys' eyes only

9   basis.  I was able to speak with many of the defendants

10  yesterday and we believe that many, if not all of them, will

11  agree to this.  Of course if somebody disagrees this would

12  be a good time to speak up, or if they're not all here in

13  response to any motion that's made.  But I wanted the Court

14  to be aware of our particular concern.

15          Thank you.

16          THE COURT:  Thank you.

17          Anyone else?

18          MR. LONG:  Your Honor, Thomas Long on behalf of

19  the trustee, if I could just clarify one point.

20          We're very much -- appreciated the various

21  solutions that have been offered up by the defendants,

22  they've been working with us.

23          The attorney eyes only issue works well when we're

24  dealing with people who are parties here.  The issue is when

25  we end up in a situation where we have producing parties or

Page 21

1    people who had agreements with producing parties who the

2    producing party is concerned about running into contractual

3    liability with those particular entities.

4           I'll give you an example.  I think in the letters

5    we note the number of documents that involve Citco, which is

6    the largest hedge fund administrator in the world.  They're

7    concerned because they had contractual obligations, for

8    example, with Fairfield Century, they had some with

9    Greenwich Century.  I've spoken with counsel for Fairfield

10   Century about the attorneys' eyes only issue.  That really

11   doesn't give them total relief unless we go through the

12   motion or order process, because they become concerned about

13   their clients suing them.

14          So by having a situation where we would go through

15   a motion and order process gives them some comfort going

16   forward in the future.

17          And what I would point out to the Court when

18   Ms. Jenson refers to a short change in the schedule on the

19   ET filings we would get that motion on as quickly as

20   possible so we don't have a problem and that they feel

21   comfortable.

22          I'm very cognizant of the concerns by the

23   liquidator, because under the law that he operates he is

24   personally liable if something is disclosed that wasn't

25   supposed to be disclosed.

Page 22

1              THE COURT:  Well, I understand that, but I think

2       if there's going to be a motion don't I need a privilege log

3       and some narrative which explains to me why the document

4       should be confidential?  I'm not confident by just looking

5       at them.  I can tell, oh, yeah, these should be

6       confidential.

7              MR. LONG:  Well, I think if we're doing this on an

8       attorney's eyes only we can get people an order that says

9       that we're going to do it that way and perhaps that gives

10      enough comfort that they would then consent.

11             THE COURT:  Are you proposing that that be served

12      on all producing parties and not just parties to these

13      extraterritoriality proceedings?

14             MR. LONG:  I would, Your Honor, because quite

15      frankly sometimes you have producing parties who aren't even

16      involved in the extraterritoriality proceedings who their

17      documents come in.  That's the concern about making the net

18      wide enough that they have safety.

19             THE COURT:  Well, I suppose you could make a

20      motion to modify the stipulation to produce it on an eyes

21      only basis in this particular case.  I don't know how that

22      helps you in other situations where you still have the

23      documents though and they may be relevant to other issues.

24             MR. LONG:  Well, that --

25             THE COURT:  Are we going to do this every time we

Page 23

1      have a motion?

2              MR. LONG:  Well that's part of the reason why I

3      think we would be also as part of this procedure today is

4      talked about the potential of having an arbitrator that

5      would help solve these problems going forward.

6              THE COURT:  Well, I can appoint an arbitrator with

7      the consent of the parties, I couldn't force an arbitrator

8      to appoint somebody.

9              MR. LONG:  Right.

10             THE COURT:  So to the extent, and we'll use Citco

11     as an example, if you want to submit those issues to an

12     arbitrator that's fine, presumably under a remediation order

13     and under the relevant statutes.

14             MR. LONG:  We could possibly do that, Your Honor.

15     It's -- there's almost 7,000 documents involved with Citco,

16     and they sort of cut through the swath of the cases involved

17     here.

18             THE COURT:  And who represents Citco?

19             MR. FALCONE:  I do, Your Honor.  Marc Falcone from

20     Paul, Weiss.

21             THE COURT:  Why don't you come up.  Let me hear

22     what your views are since it sounds like you have the

23     biggest rooting interest in this particular aspect.  You get

24     a front seat.

25             MR. FALCONE:  Good afternoon.

Page 24

1           THE COURT:  Good afternoon.

2           MR. FALCONE:  I don't think we have a problem with

3   an arbitration process.

4           THE COURT:  But it seems that'll it'll cut through

5   a lot of the documents.

6           MR. FALCONE:  Presumably for exactly the reasons

7   that were said, that that process would result in actual

8   court orders.  That's the issue that I think we and the

9   liquidator and the trustee are in that -- we're going to --

10  we want to be able to say that we were there and we did it

11  pursuant to an order.  So perhaps the arbitrator could make

12  recommendations to Your Honor.

13          THE COURT:  I forget what the rule says the extent

14  to which the court is involved in reviewing the arbitrator's

15  decision or whether you make a motion to confirm the

16  arbitrator's decision like you normally do.  I looked at the

17  mediation (indiscernible) I don't remember what it says.

18  Although I suppose you could submit an order submitting it

19  to arbitration, including an arbitration agreement which

20  then has a provision that says that anybody can seek to

21  confirm or object to the arbitrator's award, not

22  withstanding what the mediation order says.

23          MR. FALCONE:  I think something like that.

24          THE COURT:  All right.

25          MR. LONG:  Your Honor, I'd like to make one point

Page 25

```
 1    clear, especially with Mr. Falcone here.

 2              Citco, who has been very cooperative to try to

 3    deal with this and so has the liquidator --

 4              THE COURT:  I read the letters --

 5              MR. LONG:  Yeah.

 6              THE COURT:  -- I get what the problem is it.

 7              MR. LONG:  Yeah.

 8              THE COURT:  And if the parties are willing to

 9    agree to all the tradition that's otherwise permissible

10    under the order I see no reason why we can't agree to the

11    arbitrator and providing whether that -- either party can

12    seek to vacate, if that's the right word will confirm

13    whatever the arbitrator's decision is.

14              MS. JENSON:  Have a moment?

15         (Pause)

16              MS. JENSON:  So I'm clear, Your Honor, the motion

17    would be to modify the extraterritoriality order in order to

18    accommodate the attorneys' eyes only proposal on the table

19    and also appoint a discovery arbitrator to deal with the

20    confidentiality issues not just with to Citco but also the

21    other producing parties whose documents are at issue.

22              THE COURT:  And not just for this motion but I

23    guess for all purposes.

24              MS. JENSON:  Thank you.  Yes.

25              THE COURT:  All right.  And to the extent you can
```

                                                                  Page 26

1   work out similar arbitration provisions with the other

2   parties who feel they would, you know, consent to

3   arbitration that's fine,  There may be no motion left at the

4   end of the day.

5            MS. JENSON:  Thank you, Your Honor.

6            THE COURT:  All right.  So you're going to make

7   two motions, if necessary.

8            All right, anything else?

9            MS. JENSON:  That's it, Your Honor.  Thank you

10  very much.  Appreciate your time.

11           THE COURT:  Thank you.

12           MR. LONG:  Your Honor, there are --

13           THE COURT:  You always pop up.

14           MR. LONG:  I know.  I know.

15       (Laughter)

16           MR. LONG:  I think the last time I got up and said

17  thank you and you said, well said.

18           Your Honor, should we submit something regarding

19  the filing while we're trying to get this done on the ET

20  file?

21           THE COURT:  I mean the best you can do at this

22  point is file it under seal and nobody can see it.  To the

23  extent parties are insisting on a deadline I guess, you

24  know, you could always file it under seal so you can say you

25  filed it by a deadline.

1          MR. LONG:  Well, Your Honor, we had some

2     discussion with the defendants, I know that one of the

3     issues is that the coordinating counsel when we set up and

4     we moved deadlines they ran into some conflicts.  We're more

5     that be willing to work with them.

6          THE COURT:  Well who represents the coordinating

7     counsel here?

8          MR. VELIE:  I speak for them today.

9          THE COURT:  All right.  I guess the proposal is to

10    delay any submission until all of these issues are resolved.

11    Is that what you're proposing?

12         MR. LONG:  We would file the order -- or the

13    motions that we discussed, the first filing, Mr. Velie,

14    still has to get total sign off on his parties if I recall

15    on attorneys' eyes only.  Let's assume that works --

16         THE COURT:  Well you can serve it on every party.

17         MR. LONG:  Right.

18         THE COURT:  And let the parties come in and object

19    to that, you know, if they don't like that.

20         MR. LONG:  That is our --

21         THE COURT:  Every producing party.

22         MR. LONG:  Right, exactly.

23         THE COURT:  And that's sort of on the

24    administrators of the Fairfield clients.

25         MR. LONG:  Right.

1           MR. VELIE:  I'm just trying to get a fix on how

2     this affects the schedule.

3           THE COURT:  Well that's what I'm asking.  There

4     are two possibilities.  They simply file their brief under

5     seal, but that doesn't help you in terms of responding, or

6     they don't file their brief until these issues are resolved.

7     What's your pleasure?

8         (Pause)

9           MR. VELIE:  Whatever is best for the Court.

10          THE COURT:  Why don't the two sides talk about

11    this.  First of all I'm kind of in a quandary, I don't know

12    if I'm writing a decision what I can say and can't say in

13    the decision because I don't know what's confidential.

14          MR. LONG:  Right.

15          THE COURT:  So that's got to be clarified.

16          MR. LONG:  Right.

17          THE COURT:  And I'm not going look at it as a

18    practical matter until this issue is resolved, because I

19    don't know what I'm supposed to be looking at.

20          MR. LONG:  Your Honor, we'll work with the

21    defendants and see if we can't get a schedule and get these

22    other motions put together.

23          THE COURT:  Okay.

24          MR. LONG:  Thank you.

25          THE COURT:  All right, thanks very much.

Page 29

1              MS. JENSON:  Thank you.

2              THE COURT:  Anything else?  Thank you.

3              UNIDENTIFIED SPEAKER:  Thank you, Your Honor.

4              UNIDENTIFIED SPEAKER:  Thanks.

5         (Whereupon these proceedings were concluded at 2:34 PM)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 30

1                    C E R T I F I C A T I O N

2

3    I, Dawn South, certify that the foregoing transcript is a

4    true and accurate record of the proceedings.

5    Dawn South    Digitally signed by Dawn South
                   DN: cn=Dawn South, o=Veritext, ou,
                   email=digital@veritext.com, c=US
6    _____    Date: 2015.03.19 09:54:20 -04'00'

7    Dawn South

8    AAERT Certified Electronic Transcriber CET**D-408

9

10

11

12   Date:  March 19, 2015

13

14

15

16

17

18

19

20

21

22   Veritext Legal Solutions

23   330 Old Country Road

24   Suite 300

25   Mineola, NY 11501

**&**

**&**  3:10 4:8,15 5:8
5:15 6:1,8 19:20

**0**

**08-01789**  1:7

**1**

**10**  7:10 9:6
**10006-1470**  6:4
**10017-3954**  4:17
**10019**  3:13
**10019-0064**  5:11
**10022-4690**  4:11
**10022-6030**  4:4
**10036-6797**  3:20
**10110**  5:19
**10111**  3:5
**10166-0193**  5:4
**1095**  3:19
**11**  12:10
**11501**  30:25
**12**  10:3
**1285**  5:10
**15**  10:3
**1633**  3:12
**18**  1:16
**19**  30:12

**2**

**200**  5:3
**2000**  12:10
**20004-2634**  6:11
**2004**  9:9,11,14 10:6
11:2 12:20
**2010**  18:19
**2011**  18:19
**2013**  18:24
**2015**  1:16 30:12
**2:05**  1:17
**2:34**  29:5

**3**

**300**  30:24
**330**  30:23
**399**  4:10

**4**

**40**  7:20
**408**  30:8
**425**  4:16
**45**  3:4
**4th**  7:17

**5**

**5,000**  7:19
**500**  5:18
**599**  4:3

**6**

**6th**  7:21

**7**

**7,000**  23:15
**78**  9:3

**8**

**801**  6:10

**9**

**93**  9:1,4

**a**

**aaert**  30:8
**ability**  9:7
**able**  13:3 16:21
17:1 20:9 24:10
**access**  19:4
**accommodate**
25:18
**accurate**  30:4
**acknowledge**  15:16
**action**  11:3,4 12:25
**actual**  11:14 15:21
15:25 24:7
**additional**  7:21
17:1
**administrator**  21:6
**administrators**
27:24
**adv**  1:7
**adversary**  10:7,7,12
10:19 11:8 13:5
14:12 15:25 16:4
**affect**  16:14
**afternoon**  7:7 23:25
24:1

**age**  15:8
**ago**  18:6
**agree**  7:22 20:11
25:9,10
**agreeable**  19:25
**agreement**  16:22
24:19
**agreements**  21:1
**agrees**  13:21
**ahead**  7:4,6
**aid**  18:3
**albourne**  4:2
**alert**  19:9
**allegations**  10:18,19
13:4 14:4,8,10,25
16:2,3,8,24 18:20
19:12 20:6
**alleging**  14:15
**america**  4:2
**americas**  3:19 5:10
**andrew**  6:13
**answer**  19:14
**anybody**  24:20
**anymore**  15:12,13
**appoint**  23:6,8
25:19
**appreciate**  26:10
**appreciated**  20:20
**approach**  9:20,21
**appropriate**  17:8
17:11
**approximately**  10:2
**arbitration**  17:24
24:3,19,19 26:1,3
**arbitrator**  19:5
23:4,6,7,12 24:11
25:11,19
**arbitrator's**  24:14
24:16,21 25:13
**arnold**  4:8
**asking**  28:3
**aspect**  23:23
**association**  12:5
**assume**  17:17 27:15
**assuming**  18:9,11
**attaching**  9:5

**attorney**  4:2,9 5:2,9
5:16 6:2,9 10:21
20:23
**attorney's**  22:8
**attorneys**  3:3,11
9:15 14:3,13,21
15:18 16:22 17:4
20:8 21:10 25:18
27:15
**austria**  3:11 19:21
**avenue**  3:19 4:3,10
4:16 5:3,10,18 6:10
**award**  24:21
**aware**  20:14

**b**

**b**  1:21 3:15
**baker**  3:2
**band**  18:3
**bank**  3:11 19:20
**bankruptcy**  1:1,12
1:23
**barring**  12:14
**bartlett**  4:15
**basis**  20:9 22:21
**bbva**  6:9
**beacon**  9:14
**bear**  13:17
**behalf**  20:3,18
**believe**  10:15 19:22
20:10
**bernard**  1:8
**bernstein**  1:22
**best**  26:21 28:9
**biggest**  23:23
**board**  16:9 17:11
**bowling**  1:13
**brief**  28:4,6
**broadway**  3:12
**bronen**  3:22
**bucket**  9:25

**c**

**c**  3:1 7:1 30:1,1
**calling**  10:1
**camera**  8:16
**case**  1:7 10:17
14:10 15:20 17:12

22:21
cases 8:25 9:1 10:1
    10:1,3,3,4,25 11:1
    23:16
categories 8:25 13:9
category 10:24,25
    11:1
century 21:8,9,10
certain 7:14 11:12
    11:14
certainly 14:5
certified 30:8
certify 30:3
cet 30:8
challenge 13:18
change 21:18
charged 20:2
citco 5:9 21:5 23:10
    23:15,18 25:2,20
cited 12:13
clarified 28:15
clarify 20:19
clarity 9:14
clean 9:25 10:25
clear 9:17 12:19
    13:3 25:1,16
clearly 12:23
clears 19:10
cleary 6:1
client 14:16
clients 21:13 27:24
cognizant 21:22
colleagues 9:16
collectively 13:21
come 16:22,23
    22:17 23:21 27:18
comfort 21:15
    22:10
comfortable 21:21
commercial 11:25
    18:13
communicate 9:7
    12:24
communicated
    10:10,11
company 8:11
    15:23

competitors 12:1
complaints 18:18
completely 9:25
complicated 12:11
    14:23 16:7
concern 20:14
    22:17
concerned 8:1 21:2
    21:7,12
concerns 12:22
    21:22
concluded 29:5
conference 2:1 7:9
    7:11 8:15 17:12
confident 22:4
confidential 9:9
    10:10 11:20 12:23
    14:5 15:14 18:21,25
    18:25 19:1,2 22:4,6
    28:13
confidentiality 2:1
    7:12,14 8:4 9:3
    10:2 12:7 19:6
    25:20
confirm 24:15,21
    25:12
conflicts 27:4
confront 18:15
consensus 13:25
consent 22:10 23:7
    26:2
conservative 9:19
    9:21
consideration 17:15
consistency 16:9
constantly 13:11
contemplates 8:13
    17:8
contractual 12:14
    21:2,7
cooperative 25:2
cooperatively 7:24
coordinate 14:24
coordinating 14:24
    14:25 27:3,6
copy 17:20

corporation 1:5
counsel 13:13 14:14
    14:18,24,25 18:6
    19:15,17,21,25 21:9
    27:3,7
country 30:23
couple 9:22 13:14
    13:24,24
course 20:4,11
court 1:1,12 7:2,4,6
    7:21 8:15 10:21
    11:9,19 12:7 14:7
    14:16 15:2 16:14,18
    17:5,15,19,22,24
    18:24 19:17,22 20:1
    20:13,16 21:17 22:1
    22:11,19,25 23:6,10
    23:18,21 24:1,4,8
    24:13,14,24 25:4,6
    25:8,22,25 26:6,11
    26:13,21 27:6,9,16
    27:18,21,23 28:3,9
    28:10,15,17,23,25
    29:2
crutcher 5:1
currently 9:1 15:24
customers 8:21
    12:14,15
cut 19:22 23:16
    24:4

**d**

d 7:1 30:8
data 18:23 19:1,2,7
date 30:12
davis 4:19
dawn 2:25 30:3,7
day 26:4
days 9:22
dc 6:11
deadline 26:23,25
deadlines 27:4
deal 8:3 12:20
    15:19 16:8 25:3,19
dealing 20:24
deals 9:14
dechert 3:18

decision 24:15,16
    25:13 28:12,13
dedesignate 7:22
    12:16
dedesignated 7:20
    8:2 9:12 11:5 13:11
    15:16
dedesignation 7:19
    8:14 12:21 15:5,7
    18:5
defendant 1:10 10:7
    10:16 11:2 15:20
    16:25 19:2,6,11
defendant's 14:14
defendants 6:2 8:7
    8:11,20,21,23 9:22
    10:12,22 13:4 17:13
    18:10,15 20:4,9,21
    27:2 28:21
defense 14:18
defunct 15:10
delay 27:10
delayed 17:16
derived 14:4
designated 9:8
designation 14:4
details 13:7
determined 12:8
deutsch 5:15
different 8:6,18,18
    9:23 15:23 16:3,4
    17:9
difficult 9:17
diligence 11:17
disagree 10:15
disagrees 20:11
disclosed 12:13
    14:12 21:24,25
discovery 25:19
discuss 14:16 16:3
discussed 8:6 27:13
discussing 11:22
    14:22 15:7
discussion 9:15
    27:2
discussions 8:14
    10:13 15:5 18:6

**dismissed**  18:10
**disputes**  7:13
**distraction**  13:23
**district**  1:2
**document**  8:22 12:9
  12:23 14:11 15:9
  18:14 22:3
**documents**  7:15,19
  8:1 9:5,8,10,15 10:5
  10:9,17 11:12,14
  12:3,6,12,16 13:1,8
  13:10,11 14:5 15:6
  15:12,22,24 16:1,6
  17:10 18:4,11,20,22
  18:25 19:1,3,7,8,10
  19:11,13 21:5 22:17
  22:23 23:15 24:5
  25:21
**doing**  13:22 22:7
**drafted**  15:3,4
**due**  11:17
**dunn**  5:1

**e**

**e**  1:21,21 3:1,1 4:13
  7:1,1 30:1
**eight**  8:5
**either**  25:11
**electronic**  30:8
**entered**  18:24
**entire**  15:1
**entirely**  11:4 14:10
**entities**  5:9 15:11
  15:11,23 17:9 21:3
**entity**  15:25 16:2,4
**entity's**  16:5
**especially**  25:1
**esq**  3:7,8,15,16,22
  4:6,13,19 5:6,13,21
  6:6,13
**et**  21:19 26:19
**everybody**  13:21
**everyone's**  12:22
  13:25
**exactly**  24:6 27:22
**example**  10:21
  11:17 12:1 15:21
  18:8 21:4,8 23:11

**exclusively**  9:9,11
**exist**  15:11,13
**expecting**  9:24
**explains**  22:3
**extent**  10:15 23:10
  24:13 25:25 26:23
**extraterritoriality**
  2:2 7:16 9:2,6
  11:16 16:19 17:13
  18:10 22:13,16
  25:17
**eyes**  14:4,14,21
  15:18 16:22 17:4
  20:8,23 21:10 22:8
  22:20 25:18 27:15

**f**

**f**  1:21 30:1
**facing**  8:25
**fact**  9:11,16 12:18
  15:9,10
**facts**  11:15
**fairest**  12:22
**fairfield**  21:8,9
  27:24
**falcone**  5:13 23:19
  23:19,25 24:2,6,23
  25:1
**fall**  18:24
**feeder**  15:11
**feel**  20:4 21:20 26:2
**fifth**  5:18
**figure**  13:19,20
  17:3
**file**  17:20 26:20,22
  26:24 27:12 28:4,6
**filed**  10:8 13:21
  14:11 26:25
**filing**  8:9 10:11
  13:16 14:13 26:19
  27:13
**filings**  16:9 21:19
**find**  9:17 19:7
**fine**  23:12 26:3
**first**  9:25 16:16
  18:4 27:13 28:11
**fix**  28:1

**following**  16:10
**force**  23:7
**foregoing**  30:3
**forget**  24:13
**forward**  14:18
  21:16 23:5
**franklin**  3:15 19:19
**frankly**  22:15
**frederick**  5:21
**front**  23:24
**fund**  11:14 21:6
**funds**  15:11
**future**  21:16

**g**

**g**  3:16 7:1
**gabriel**  5:6
**garrison**  5:8
**gates**  4:1
**gibson**  5:1
**give**  12:19 15:20
  17:2 21:4,11
**gives**  21:15 22:9
**giving**  15:8
**global**  16:13
**go**  7:4,6 18:14,14,25
  19:1 21:11,14
**goes**  19:9
**going**  13:1,6,17
  14:24 15:2,20 18:14
  21:15 22:2,9,25
  23:5 24:9 26:6
  28:17
**good**  7:7 19:19
  20:12 23:25 24:1
**gotten**  7:19
**gottlieb**  6:1
**green**  1:13
**greenwich**  5:16,17
  21:9
**guess**  17:19 25:23
  26:23 27:9
**guidance**  9:17
  12:19

**h**

**hamilton**  6:1

**happened**  12:9
**happening**  11:17
**happens**  10:6
**happy**  16:12
**hear**  19:17 23:21
**hearing**  2:1
**hedge**  21:6
**help**  19:22 23:5
  28:5
**helps**  22:22
**hermann**  5:6
**hit**  19:8
**hon**  1:22
**honeywell**  4:6
**honor**  7:5,8 19:19
  20:18 22:14 23:14
  23:19 24:12,25
  25:16 26:5,9,12,18
  27:1 28:20 29:3
**hostetler**  3:2
**hours**  15:7
**hsbc**  6:2
**huang**  6:13

**i**

**idea**  14:6
**iii**  6:6
**important**  18:2
  20:2
**including**  8:7,11
  24:19
**indiscernible**  24:17
**individual**  10:19
  11:7 14:12
**informal**  7:8,11
  8:14
**information**  9:8
  10:10 11:10,20,25
  12:2 16:5
**initial**  18:12,18
**insisting**  26:23
**inspection**  8:16
**insufficient**  12:8
**insure**  16:9
**intends**  14:19
**interaction**  15:13
**interest**  8:19,22
  15:14 17:9 23:23

**interested** 13:7,8
  19:15
**international** 4:9
**interpretation** 9:23
  13:17
**interpretations**
  12:18
**intertwined** 11:12
**investigation** 9:11
  10:6
**investment** 1:8
**investor** 1:4
**involve** 8:9,10 21:5
**involved** 22:16
  23:15,16 24:14
**involves** 8:12
**issue** 11:4 12:3 18:4
  18:21 20:23,24
  21:10 24:8 25:21
  28:18
**issues** 2:1 7:13,14
  7:19,25 8:4 9:3,18
  10:2 12:11,20 13:17
  14:19 15:7 16:13
  18:14,16 22:23
  23:11 25:20 27:3,10
  28:6
**it'll** 19:22 24:4

**j**

**jenson** 3:7 7:3,3,7
  10:23 11:11,21 14:8
  14:17 15:4 16:16,20
  17:7,18,21,23 18:1
  19:18 21:18 25:14
  25:16,24 26:5,9
  29:1
**joaquin** 6:6
**jonathan** 3:16
**judge** 1:23
**jurisdiction** 18:7

**k**

**k&l** 4:1
**karin** 3:7 7:3
**keep** 12:8
**kessler** 5:21

**kind** 8:24 28:11
**know** 13:6,25 14:19
  15:6 22:21 26:2,14
  26:14,24 27:2,19
  28:11,13,19
**knowledge** 11:15
**kortmansky** 3:16

**l**

**l** 1:8 3:8
**l.p.** 5:17
**largely** 12:3
**largest** 21:6
**laughter** 26:15
**law** 21:23
**learned** 9:21
**left** 26:3
**legal** 30:22
**letter** 7:17,21
**letters** 17:25 21:4
  25:4
**letting** 19:25
**lexington** 4:3,16
**liability** 21:3
**liable** 21:24
**liaison** 19:21,25
**liberty** 6:3
**life** 15:21
**limited** 19:22
**liquidating** 5:16
**liquidator** 21:23
  24:9 25:3
**litigation** 7:10 9:13
**llc** 1:9 4:2
**llp** 3:10,18 4:8,15
  5:1,8,15 6:1,8
**lmis** 11:13
**log** 19:7 22:2
**long** 3:8 7:5,5 10:16
  10:18 20:18,18 22:7
  22:14,24 23:2,9,14
  24:25 25:5,7 26:12
  26:14,16 27:1,12,17
  27:20,22,25 28:14
  28:16,20,24
**look** 28:17
**looked** 24:16

**looking** 22:4 28:19
**lot** 8:6,18,18 13:15
  24:5
**lp** 5:17
**lynch** 4:9

**m**

**m** 1:22
**madoff** 1:8 7:2 12:6
  15:13
**maher** 5:15
**main** 12:25 17:12
  17:15
**maintaining** 12:7
**making** 8:15 22:17
**marc** 5:13 23:19
**march** 1:16 7:17,21
  30:12
**mariel** 3:22
**marked** 14:13 17:4
**mary** 4:13
**material** 11:2,5
**matter** 28:18
**mean** 14:7 17:19
  26:21
**meant** 16:18
**mediation** 24:17,22
**mentioned** 14:1
  17:24
**merrill** 4:9
**mineola** 30:25
**modify** 22:20 25:17
**moment** 8:1 9:3
  25:14
**money** 11:18
**months** 11:23 13:2
**morning** 9:12 19:19
**motion** 7:12 8:15
  16:12,15 17:6,8,16
  20:13 21:12,15,19
  22:2,20 23:1 24:15
  25:16,22 26:3
**motions** 26:7 27:13
  28:22
**moved** 27:4
**moving** 13:3,10
  14:1

**n**

**n** 3:1 7:1 30:1
**narrative** 22:3
**narrower** 9:24
**nature** 11:9,19
**necessarily** 10:23
**necessary** 11:16
  26:7
**need** 13:19,20 16:23
  19:11 22:2
**net** 22:17
**new** 1:2,14,14 3:5
  3:13,20 4:4,11,17
  5:4,11,19 6:4 11:17
  11:18
**nicholas** 4:19
**non** 13:8 14:9,10
  19:1,2
**normally** 24:16
**note** 21:5
**notice** 17:11,11
**noticed** 17:12,13
**number** 10:13
  13:12 21:5
**nw** 6:10
**ny** 3:5,13,20 4:4,11
  4:17 5:4,11,19 6:4
  30:25

**o**

**o** 1:21 7:1 30:1
**object** 24:21 27:18
**obligations** 12:14
  21:7
**obvious** 16:25
**obviously** 20:1
**offered** 20:21
**oh** 22:5
**okay** 17:19 20:8
  28:23
**old** 12:4 15:9 30:23
**older** 12:4
**ongoing** 18:5
**open** 11:21 14:5
  17:13
**operates** 21:23

**opportunity** 7:8
**opted** 9:19
**options** 8:18 13:12
**order** 7:11 8:13 9:7
  9:13,18 12:9,18,19
  13:2 15:3,4 16:11
  17:7 18:24 21:12,15
  22:8 23:12 24:11,18
  24:22 25:10,17,17
  27:12
**orders** 24:8
**outcome** 8:19

**p**

**p** 3:1,1 6:6 7:1
**papers** 20:3,5
**paragraph** 7:10 9:6
**park** 4:10 5:3
**parse** 16:7
**part** 9:1 23:2,3
**particular** 9:18
  10:12 11:3 12:20
  13:5 16:25 20:14
  21:3 22:21 23:23
**parties** 7:15,20,22
  7:23,24 8:5,8,20,23
  9:23 10:9,13 11:22
  11:24 12:13 13:7,8
  13:13 15:8,15 17:14
  18:6 19:5 20:24,25
  21:1 22:12,12,15
  23:7 25:8,21 26:2
  26:23 27:14,18
**partners** 5:17
**party** 8:5 10:5,5,16
  11:1,3,7 14:9,10
  15:22 18:23 19:9,10
  21:2 25:11 27:16,21
**party's** 16:5 19:6
**paul** 5:8 23:20
**pause** 25:15 28:8
**pennsylvania** 6:10
**people** 8:19,21
  20:24 21:1 22:8
**permissible** 25:9
**permission** 11:6
  12:15

**personal** 18:7
**personally** 21:24
**peter** 11:13
**place** 19:12,13
**placeholder** 17:20
**plaintiff** 1:6
**play** 15:15
**plaza** 3:4 6:3
**please** 7:2
**pleasure** 28:7
**pm** 1:17 29:5
**point** 13:19 18:1
  19:22 20:19 21:17
  24:25 26:22
**pop** 26:13
**porter** 4:8
**position** 18:22
  19:24
**possibilities** 28:4
**possibility** 17:6
**possible** 21:20
**possibly** 23:14
**potential** 18:17 23:4
**practical** 28:18
**prepare** 20:5
**prepared** 19:14
  20:7
**preparing** 20:3
**presumably** 23:12
  24:6
**private** 12:9
**privilege** 22:2
**probably** 7:25
**problem** 8:17 14:23
  18:3,17 21:20 24:2
  25:6
**problems** 13:14
  23:5
**procedure** 23:3
**proceed** 9:18 13:6
**proceeding** 7:22
  8:12 10:7,8,12,19
  13:5 14:12 15:25
  16:4 18:8
**proceedings** 8:7 9:2
  12:24 22:13,16 29:5
  30:4

**process** 8:13 12:21
  13:22 18:11 21:12
  21:15 24:3,7
**produce** 10:17
  22:20
**produced** 9:10 10:5
  10:9 15:22 16:1,6
**producing** 7:15,20
  8:8,20,23 9:22 10:5
  10:16 11:1,3,6,22
  11:24 12:13 13:13
  15:15,22 16:5 17:14
  18:6 19:5,9,10
  20:25 21:1,2 22:12
  22:15 25:21 27:21
**production** 19:3,10
**productions** 15:17
**progress** 7:18
**proposal** 14:3,17
  25:18 27:9
**proposed** 13:15
  14:20
**proposing** 22:11
  27:11
**propounds** 19:2
**proprietary** 11:25
**protectable** 15:14
**protection** 1:4
**protective** 7:11 8:13
  9:7,13,17 12:18,19
  16:11 17:7
**providing** 25:11
**provision** 14:22
  15:19 16:22 24:20
**provisions** 26:1
**public** 18:20 19:12
**publicly** 14:11
**purposes** 25:23
**pursuant** 24:11
**put** 14:18 18:3,22
  28:22

**q**

**quandary** 28:11
**question** 11:21
**questions** 19:14
**quickly** 21:19

**quite** 22:14

**r**

**r** 1:21 3:1 5:21 7:1
  30:1
**ran** 27:4
**read** 25:4
**reading** 16:10
**real** 15:21
**really** 9:13 14:1
  21:10
**reason** 12:6,8 23:2
  25:10
**reasons** 24:6
**recall** 27:14
**recognizes** 16:23
**recollects** 12:2
**recommendations**
  24:12
**record** 30:4
**redact** 13:19,20
  17:3
**redacted** 14:11
**redacting** 8:10
**redaction** 13:16
**redactions** 13:18
**redemptions** 11:13
**refers** 21:18
**reflected** 12:6
**regard** 7:12,15 8:4
  12:12 13:9 18:18
**regarding** 26:18
**relate** 11:14 15:10
**related** 2:1 16:8
**relates** 7:15
**relating** 15:22
**relevant** 18:7,12,12
  22:23 23:13
**relief** 21:11
**remain** 18:21
**remaining** 8:4,5,5
**remediation** 23:12
**remember** 24:17
**represent** 10:22
**representing** 19:20
**represents** 23:18
  27:6

request  19:3
requested  18:5
required  7:11
resolve  7:14 12:22
  13:2,14 14:21,23
  16:12
resolved  7:24 15:3
  17:16 27:10 28:6,18
responding  28:5
response  14:24
  20:13
responsibility  20:3
result  24:7
reviewing  24:14
rifkind  5:8
right  8:17 10:3
  17:18,22 19:12,13
  23:9 24:24 25:12,25
  26:6,8 27:9,17,22
  27:25 28:14,16,25
road  30:23
robert  4:6
rockefeller  3:4
room  9:16,22 18:23
  19:1,2,7
rooting  23:23
round  18:18
rule  9:9,10,14 10:6
  11:2 12:20 24:13
rules  16:10
running  21:2

**s**

s  3:1 4:19 7:1
safety  22:18
says  22:8 24:13,17
  24:20,22
scenario  10:14
schedule  21:18 28:2
  28:21
scholz  3:7
seal  8:9 13:16,21
  14:13 17:20 26:22
  26:24 28:5
searching  19:4,7
seat  23:24
seated  7:2

second  10:20,24
securities  1:4,9
security  5:16,17
see  10:18,18 13:5
  14:14,25 19:9,25
  20:1 25:10 26:22
  28:21
seek  24:20 25:12
seen  20:5
sensitive  11:25
sent  7:20
serve  27:16
served  8:11 10:11
  22:11
set  27:3
seven  12:4 15:9
share  12:1
shearman  6:8
short  21:18
sides  28:10
sign  27:14
significant  13:23
similar  26:1
simplest  12:22
simply  28:4
simpson  4:15
situation  10:14
  20:25 21:14
situations  22:22
smb  1:7
solution  8:17
solutions  8:6 13:15
  20:21 30:22
solve  23:5
somebody  20:11
  23:8
sorry  11:18
sort  13:10,16 23:16
  27:23
sounds  23:22
south  2:25 30:3,7
southern  1:2
speak  8:2 20:9,12
  27:8
speaker  29:3,4
speaking  19:15

spent  15:7
spoken  21:9
stale  12:3
start  13:22 14:9
stated  7:17
states  1:1
statutes  23:13
steen  6:1
step  16:16
sterling  6:8
stipulation  22:20
stranger  11:4
stuart  1:22
submission  2:2 7:16
  8:10 9:6 11:16 15:1
  16:19,20,21 27:10
submit  23:11 24:18
  26:18
submitted  18:19
submitting  24:18
subsequent  18:13
successful  15:6
suing  21:13
suite  30:24
sullivan  3:10 19:20
suppose  22:19
  24:18
supposed  21:25
  28:19
sure  14:18 17:10
swath  23:16
sylvester  4:13

**t**

t  4:6 30:1,1
table  25:18
take  11:24
talk  28:10
talked  13:12 23:4
talking  17:5
talks  9:7
target  13:3,10 14:1
tell  22:5
ten  7:21,23
terceno  6:6
terms  28:5
terribly  20:1

thacher  4:15
thank  7:7,8 19:18
  20:15,16 25:24 26:5
  26:9,11,17 28:24
  29:1,2,3
thanks  28:25 29:4
thing  13:16
think  15:2,18 16:16
  16:21,23,25 17:8,18
  17:18 21:4 22:1,7
  23:3 24:2,8,23
  26:16
third  10:25 11:1
  18:22 19:6
thomas  3:8 20:18
thought  9:20
thousands  15:6
three  13:9 17:1
tie  11:15
time  17:2 20:12
  22:25 26:10,16
timing  16:14,18
today  7:13 9:16
  18:4,22 19:16 23:3
  27:8
tom  7:5
total  9:1 21:11
  27:14
tradition  25:9
transcribed  2:25
transcriber  30:8
transcript  30:3
transfer  18:12
transferees  18:13
transferred  11:18
tremendous  7:18
tremendously  15:5
tricky  15:21
true  30:4
trustee  3:3 5:16 7:3
  7:5 9:10,14 10:6,17
  17:2 18:2 19:3,24
  20:7,19 24:9
trustee's  7:16 12:24
  16:20,24 19:24
try  13:25 25:2

**[trying - york]**                                                                 Page 7

**trying**  8:3 26:19
  28:1
**two**  7:24 26:7 28:4
  28:10

### u

**u.s.**  1:12,23
**ubs**  5:2
**unable**  7:14 12:15
**underlying**  18:20
**understand**  15:8
  19:15,24 20:7 22:1
**undertaken**  12:21
**unfair**  20:4
**unicredit**  3:11
  19:20
**unidentified**  29:3,4
**united**  1:1
**unredacted**  17:20
**unresolved**  13:18
**unsealing**  12:9
**update**  7:23
**use**  11:6,7 15:24
  23:10

### v

**v**  1:7
**vacate**  25:12
**varied**  11:11
**various**  13:13 20:20
**varying**  12:17
**velie**  3:15 19:19,20
  27:8,13 28:1,9
**veritext**  30:22
**version**  14:11
**view**  10:8 11:24
  12:2,5
**viewed**  15:24
**viewing**  14:2
**views**  13:25 23:22

### w

**walk**  8:24
**want**  8:24 12:1
  17:10 18:2 23:11
  24:10
**wanted**  20:13
**wants**  19:6

**washington**  6:11
**way**  12:22 13:4
  15:23 22:9
**we've**  7:19,21,23
  11:22 14:22 15:8
  18:5
**weeks**  13:14,24,24
  17:1
**weiss**  5:8 23:20
**wharton**  5:8
**whatsoever**  10:2
**wholesale**  15:16
**wide**  22:18
**willing**  25:8 27:5
**withdrawals**  11:13
**withstanding**  24:22
**wollmuth**  5:15
**worcester**  3:10
  19:20
**word**  25:12
**work**  8:3 14:19 16:7
  17:1 26:1 27:5
  28:20
**working**  7:18,24
  13:6 20:22
**works**  20:23 27:15
**world**  21:6
**wrinkle**  15:19
**writing**  28:12

### x

**x**  1:3,11

### y

**yeah**  22:5 25:5,7
**years**  12:4 15:9
  18:6
**yesterday**  7:23
  20:10
**york**  1:2,14,14 3:5
  3:13,20 4:4,11,17
  5:4,11,19 6:4 11:17
  11:18