Page 1

1    UNITED STATES BANKRUPTCY COURT

2    SOUTHERN DISTRICT OF NEW YORK

3    Case No. 09-01161-smb

4    - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

5    In the Matter of:

6

7    PICARD,

8    v.

9    KINGATE GLOBAL FUND, LTD. et al

10

11   - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

12

13                    U.S. Bankruptcy Court

14                    One Bowling Green

15                    New York, New York

16

17                    March 26, 2015

18                    10:48 AM

19

20   B E F O R E :

21   HON STUART M. BERNSTEIN

22   U.S. BANKRUPTCY JUDGE

23

24

25

1   Hearing re:   FIM Motion for Sanctions

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25   Transcribed by:   Melissa Looney

1   A P P E A R A N C E S :

2   PAUL HASTINGS

3        Attorney for FIM Limited, et al

4        75 East 55th Street

5        New York, NY 10022

6

7   BY:  JODI AILEEN KLEINICK, ESQ.

8        MOR WETZLER, ESQ.

9

10   BAKER HOSTETLER

11        Attorney for SIPA Trustee

12        45 Rockefeller Plaza

13        New York, NY 10111-0100

14

15   BY:  GERALDINE E. PONTO, ESQ.

16        DAVID J. SHEEHAN, ESQ.

17

18

19

20

21

22

23

24

25

Page 4

```
1                   P R O C E E D I N G S

2              THE COURT:  Dreier.

3              MR. SHEEHAN:  Good morning, Your Honor.  David

4     Sheehan on behalf of the trustee with my partner, Gerri

5     Ponto.

6              THE COURT:  Good morning.

7              MS. KLEINICK:  Good morning, Your Honor.  Jodi

8     Kleinick from Paul Hastings.  My colleague, Mor Wetzler on

9     behalf of the FIM defendants.

10             THE COURT:  Go ahead.

11             MS. KLEINICK:  Your Honor, I'm going to try and

12    keep that brief and not repeat all of the arguments in our

13    papers.

14             THE COURT:  I've read all the papers.

15             MS. KLEINICK:  Okay.  Your Honor, the reason we're

16    here is that the trustee and his counsel are clearly acting

17    in bad faith.  They've known for almost a year that the

18    allegation of the bank account belonging to FIM at Brown

19    Brothers Harriman is false.  We not only told them that the

20    allegation was false, we provided them to date with four

21    sworn declarations, including one from Brown Brothers

22    Harriman where the account is supposedly maintained,

23    attesting to the fact the account does not belong to my

24    client.

25                  BBH is an unaffiliated third party with no skin in
```

Page 5

1    this game.  FIM Ltd -- and the same is true of MeesPierson.

2    We've repeatedly requested that the trustee withdraw the

3    allegation or agree not to use it and without any legitimate

4    justification they've refused and the reason for this is

5    clear.

6            They know that the case against FIM Ltd. is

7    certainly over without the allegation --

8            THE COURT:  So why don't you just move for summary

9    judgment?  That's what people usually do.

10           MS. KLEINICK:  Your Honor, we -- at this

11   procedural stage, given where we are in this case, in order

12   to move for summary judgment -- we have a pending motion to

13   dismiss based on extraterritoriality.  That hasn't been

14   decided.

15           At this point, what the trustee and his counsel

16   are trying to do is to bootstrap what they claim is a

17   mistake in misreading an invoice, which led to concluding

18   the allegation complaint in the first place into an

19   opportunity to keep us in the case through discovery and

20   potentially through trial.

21           If we were forced, at this point, to keep the

22   allegation in the complaint it could be that we find

23   ourselves with that allegation through the

24   extraterritoriality briefing and at that point --

25           THE COURT:  Has the trustee relied on that

Page 6

1    allegation in its extraterritoriality briefing?

2            MS. KLEINICK:  They have not, but Your Honor,

3    they're playing games.  They haven't come out and said one

4    way or the other what their intent is --

5            THE COURT:  Where is the legal obligation to do

6    that?  As long as they're not taking a position in which

7    they know to be frivolous, why do they have to submit to

8    your demands?

9            MS. KLEINICK:  Well, Your Honor, as an officer of

10   the Court, they have an ongoing continuing obligation to

11   correct pleadings that they know to be false.

12           THE COURT:  Why didn't you object when they sought

13   to amend the complaint?  This allegation has been in there

14   since 2011 and the complaint's already been amended once.

15   Why didn't you object then?  Didn't you have an obligation

16   as an officer of the Court to object?

17           MS. KLEINICK:  Your Honor, we did not object at

18   the time the complaint was filed -- the complaint against

19   FIM wasn't filed -- FIM was not a defendant initially in the

20   --

21           THE COURT:  It was by 2011, though.  That's when

22   the allegation first --

23           MS. KLEINICK:  In 2011 it was and as soon as it

24   came to our attention that this was potentially an issue and

25   the trustee threatened to continue to rely on it and use it,

Page 7

1    we requested that they withdraw it.  We told them

2    immediately that their assertion was incorrect.  We provided

3    them with evidence of the fact that it's not correct.  And

4    we bent over backwards trying to (indiscernible) this short

5    of motion practice as Your Honor is aware and even requested

6    a conference to try and resolve this.

7            THE COURT:  In short of motion practice, you must

8    have written ten letters on this issue.  You could have made

9    a simple motion.

10           MS. KLEINICK:  Your Honor, procedurally, a summary

11   judgment motion is premature and would require us, at this

12   point, to answer the complaint.  We would first be required

13   to make motions to dismiss under 12(b)(6) under all of our

14   other basis.  We'd have to answer a complaint that has 300

15   some odd allegations in it and then make a motion.

16           THE COURT:  You can't make a motion for summary

17   judgment before you answer?  Is that so?

18           MR. SHEEHAN:  No, Your Honor.  You can make a

19   motion for judgment on the pleadings.

20           THE COURT:  That's what I thought.  All right.

21   Well, not on the pleadings, but all right.  I got it.  Let

22   me hear from them.

23           MR. SHEEHAN:  Your Honor, first of all we don't

24   act I bad faith.  Haven't done it in seven years, don't plan

25   to start doing it now.

1           THE COURT:  That's a conclusory statement.

2           MR. SHEEHAN:  I understand, Your Honor.  We never

3    threatened anybody.  That's not our job either.

4           THE COURT:  Well, the question though, is you know

5    you've got three affidavits or declarations that say this is

6    not FIM Ltd.'s account, what are you going to do?

7           MR. SHEEHAN:  Yeah, well the point is that Your

8    Honor went right to it.  That is, if you really think that,

9    it gives you judgment on the pleadings, go for it.

10          THE COURT:  Okay.  But you don't intend to amend

11   this particular complaint --

12          MR. SHEEHAN:  No.

13          THE COURT:  -- which implies that you're going to

14   rely on that allegation?

15          MR. SHEEHAN:  Indeed.  And we -- I think it all

16   emanates from the beginning.  I know we went back there last

17   time, but when we filed this we have a document here they

18   supplied it.

19          THE COURT:  I know and --

20          MR. SHEEHAN:  And you've seen the document.

21          THE COURT:  I've seen the document --

22          MR. SHEEHAN:  And to say that we acted in bad

23   faith is, like, absurd.

24          THE COURT:  Right now the issue is not that you've

25   acted in bad faith --

```
 1              MR. SHEEHAN:  Well --

 2              THE COURT:  Let me finish -- in making the

 3     allegation initially.  The alleged bad faith is that you're

 4     going to continue to rely on this particular document to

 5     allege that FIM Ltd. had an account in New York as a hook to

 6     -- circumvent isn't the right word -- but to circumvent the

 7     extraterritoriality decision and maybe for personal

 8     jurisdiction purposes, I don't know.  And that they've given

 9     you enough evidence to show you that FIM Ltd. didn't have an

10     account there and that's what they're saying and you should

11     not rely on it at this point.

12              MR. SHEEHAN:  And respectfully I disagree and I

13     think that's exactly what (indiscernible) this is what

14     trials are for.  Trials are for -- unless Your Honor wants

15     to have a hearing on every sentence in every complaint on

16     whether or not you're going to decide that and we get

17     discovery of these three people and I get an expert involved

18     and find out all about the wire instructions all on one

19     sentence.  That's what 12(f) is all about.

20              If they want to strike something, that's why 12

21     was written that way, because this sentence, based on this

22     document doesn't come close to a 12(f) standard, so they

23     couldn't strike it if they wanted to.

24              This was by design.  They know they can't have a

25     judgment on the pleadings.  They know they can't get the
```

Page 10

1    pleading stricken.  They know we didn't act in bad faith.

2    So what do they do?  They come up with some cockamamie 1753

3    application that we're somehow vexatious when they're firing

4    off letters calling us all kinds of names and asserting all

5    kinds of other stuff that's baseless and they know it?  So

6    they what?

7             They want to avoid this sentence in the

8    extraterritoriality opinion which is fascinating.  It's

9    fascinating for this reason.  We alleged this in 2011.  I

10   can guarantee you in 2011 I had no clue -- no clue what

11   Judge Rakoff was going to rule on July 6, 2014 with regard

12   to extraterritoriality.  To suggest that we put it in there

13   and lied so we can sneak our way around that is absurd.

14            THE COURT:  They're not suggesting --

15            MR. SHEEHAN:  They are -- (indiscernible)

16   extraterritoriality breach.

17            THE COURT:  Mr. Sheehan.

18            MR. SHEEHAN:  I'm sorry.

19            THE COURT:  They're not suggesting on this motion

20   that you made the allegation in bad faith.  What they're

21   saying is you know it's not -- they say that you know it's

22   not correct and therefore you should not rely on that

23   allegation and moreover you should withdraw it.

24            MR. SHEEHAN:  So let's have a trial.

25            THE COURT:  All right.

Page 11

1          MR. SHEEHAN:  You want a trial?  You want to give

2     me discovery on this.  We'll try that sentence.

3          THE COURT:  Okay.

4          MR. SHEEHAN:  All right.  And you know what that's

5     going to accomplish?  Nothing.  So we lose the sentence and

6     then we try the entire case.  Or I'm more than willing to

7     try it sentence by sentence if that's what they want to do.

8     Your Honor, there are rules and the rules make sense.

9     They're not just suggestions, all right.

10         The rules are, under 12(f), you move to strike.

11    They couldn't even come close.  The rules don't even come

12    close to what's going on here.  They knew they couldn't

13    strike it.  They didn't respond to any of our legal

14    arguments.  1753 does not, unless Your Honor --

15         THE COURT:  1753.

16         MR. SHEEHAN:  1920-- well, I always get those

17    mixed up.  I'm never good on those ever since I stopped

18    looking at them.  Anyway, but seriously at the end of the

19    day -- I shouldn't admit that, I know -- but in any event --

20         THE COURT:  I was going to ask you if you wanted

21    that (indiscernible).

22         MR. SHEEHAN:  No, no.  19 -- well I always

23    withdraw a few things when I'm here in argument.

24         THE COURT:  Well it's in there anyway, so --

25         MR. SHEEHAN:  But the bottom line is this, is that

Page 12

1   that rule does not provide for you to strike this.  They

2   know that too.  It provides for some kind of sanctions if we

3   engaged in some kind of vexatious conduct.  You call this

4   vexatious?  That's vexatious?  This is good faith.  Without

5   (indiscernible) this is good faith.

6            So at the end of the day what they're trying to do

7   is pervert the rules and asking Your Honor to assist in that

8   effort.  You shouldn't be doing that, quite frankly.

9   They're not suggestions.  They're rules.  If they can't

10  comply with the rule, throw their motion out, let's move on.

11  If anybody deserves counsel fees here it's us.  Thank you,

12  Your Honor.

13           THE COURT:  Okay.  I'll give you the last word.

14  Yes.

15           MS. KLEINICK:  Your Honor, this is not about what

16  the trustee believed at the time the complaint was filed.  I

17  know Your Honor realizes it, although Mr. Sheehan keeps

18  harping on it, that is not what this is about.

19           THE COURT:  Can I ask you a question though?  If

20  you made a motion for summary judgment, do you think that

21  the trustee would have the right to say, you know what, I

22  haven't had the opportunity for discovery, I want to take

23  discovery with these three affiants?

24           MS. KLEINICK:  No, Your Honor, I don't.

25           THE COURT:  Why not?

1           MS. KLEINICK:  And here's why.  This allegation is

2     very narrow.  The allegation is that FIM Ltd. had a bank

3     account at Brown Brothers Harriman.

4           THE COURT:  I understand and you provided three

5     declarations that say they didn't.

6           MS. KLEINICK:  In order to get discovery, you have

7     to show a scintilla, at least, of evidence that you have a

8     good faith basis today for believing that FIM Ltd.

9     maintained an account at Brown Brothers Harriman in New

10    York.  Sitting here today, knowing that this invoice, on

11    which they relied does not anywhere say that FIM Ltd. had an

12    account at Brown Brothers Harriman.

13          THE COURT:  Well, it's got their name and an

14    account number.

15          MS. KLEINICK:  But if you look at the invoice --

16    and I can walk you through this, Your Honor.

17          THE COURT:  I'm not going to (indiscernible) the

18    invoice.  I looked at it and you know what, I'd probably

19    draw the same conclusion the trustee drew that maybe they

20    had an account at Brown Brothers Harriman.

21          MS. KLEINICK:  And at the time, Your Honor, we'll

22    give them that, but now with three sworn declarations that

23    all say there is no such account, it never existed, you

24    can't continue to maintain that belief in good faith.

25          THE COURT:  Okay.

Page 14

1          MS. KLEINICK:  And under 1927 or the Court's

2     inherent powers sanctions are appropriate here.  And

3     particularly under the Court's inherent powers, the Court

4     can fashion an appropriate remedy including the striking of

5     this allegation or a direction that the trustee not continue

6     to use a knowingly false allegation to prolong these

7     proceedings.

8          THE COURT:  Thank you.  Through the fourth amended

9     complaint the trustee seeks to avoid and recover initial

10    transfers made by BLMIS to Kingate Funds that served as

11    BLMIS feeder funds.  And count 9 seeks to recover the

12    avoided transfers from subsequent transferees, including the

13    defendant's Carlo Grasso, Frederico Teretti, FIM Ltd. and

14    FIM Advisors, LLP, collectively the FIM defendants.

15          Paragraph 89 of the fourth amended complaint

16    alleges that Kingate Management paid fees to FIM Ltd.'s

17    account with Brown Brothers Harriman hereinafter BBH in New

18    York.

19          The allegation first appeared in paragraph 69 of

20    the third amended complaint in June, 2011 and when the

21    trustee moved for leave to amend and file his fourth amended

22    complaint of February 2014 the motion was granted without

23    opposition.

24          The allegation was based on an FIM Ltd. invoice

25    requesting that a payment be made by Kingate Management and

Page 15

1    subsequent transferee to an account at BBH "for the benefit

2    of FIM."   The invoice included an account number that

3    appeared to refer to an FIM Ltd. account.

4            In 2014, however, counsel for the FIM defendants

5    began writing letters to the Plaintiff's counsel insisting

6    that certain allegations in the fourth amended complaint

7    were objectably unreasonable and without basis.

8            The letter identified paragraph 89 among others

9    and eventually the FIM defendants challenged only paragraph

10   89.  The May 2014 letter began an exchange of letters and e-

11   mails between counsel in which FIM Ltd.'s lawyer accused the

12   trustee and his lawyers of making the allegation in bad

13   faith and demanding that the trustee withdraw or agree not

14   to rely on it and the trustee's lawyers responding that it

15   was made in good faith.

16           In support, FIM Ltd. produced three ostensibly

17   credible affidavits attesting to the fact that the BBH

18   account did not belong to FIM Ltd, but instead was a

19   correspondent account belonging to MeesPierson, M-E-E-S

20   capital P-I-E-R-S-O-N, one word.  FIM Ltd.'s channel islands

21   bank.

22           In the mean time in July 2014 district Judge

23   Rakoff ruled that the bankruptcy code's avoidance and

24   recovery provisions could not be applied extraterritorially.

25   SIPC versus BLMIS 523 B.R. 222 (S.D.N.Y 2014) broadly stated

1   the decision stands for the proposition that the trustee

2   cannot recover a subsequent transfer under the bankruptcy

3   laws made by a foreign transfer or to a foreign transferee.

4          On August 28th, the trustee filed an omnibus

5   motion to amend numerous complaints to add allegations

6   intended to circumvent the extraterritoriality decision, but

7   did not list the fourth amended complaint as a pleading he

8   intended to amend.

9          The trustee and the parties affected by the

10   extraterritoriality decision, including the FIM defendants

11   thereafter worked out a stipulated procedure pursuant to

12   which the defendants would seek the dismissal of certain

13   subsequent transfer counts in their respective litigations,

14   here count 9, and the trustee would seek to amend his

15   complaints.

16          The trustee must proffer any additional

17   allegations he intends to assert.  Assuming the trustee does

18   not seek to amend the fourth amended complaint FIM Ltd.

19   anticipates that he will rely on the allegation in paragraph

20   89 to withstand the dismissal of the subsequent transfer as

21   against FIM Ltd.

22          As a result of the trustee's refusal to withdraw

23   the allegation regarding FIM Ltd.'s New York bank account or

24   agree not to rely on it, all of the FIM defendants made the

25   instant motion for sanctions under the Court's inherent

Page 17

1   authority in 28 U.S.C. Section 1927.

2           For the reasons that follow the motion is denied.

3   Title 28, Section 1927 authorizes the Court to award

4   attorneys' fees and other excess costs and expenses against

5   an attorney who "multiplies the proceedings in any case

6   unreasonably and vexatiously."

7           The Court may also impose sanctions pursuant to

8   its inherent power.  "To impose sanctions under either

9   authority the Court must fine clear evidence that (1) the

10  offending party's claims were entirely without color and (2)

11  the claims were brought in bad faith, that is 'motivated by

12  improper purposes such as harassment or delay.'"  Eisenmann

13  versus Green 204 F.3d 393, 396 (Second Circuit 2000).  "The

14  test in conjunctive and neither meritlessness alone nor

15  improper purpose alone will suffice."  Sierra Club versus

16  U.S. Army Corp of Engineers, 766 F.2d 383 at page 393

17  (Second Circuit 1985) Section 1927 must be construed

18  "narrowly and with great caution so as not to stifle the

19  enthusiasm or chill the creativity that is the very life

20  blood of the law."  Likewise, the supreme court has

21  admonished that because of their very potency, inherent

22  powers must be exercised with great caution, restraint and

23  discretion."  Chambers versus Nasco Inc. 501 U.S. 32 at

24  pages 43 and 44, 1991.  "Claim is entirely without color

25  when it lacks any legal or factual basis."  Schlaifer Nance

Page 18

1    and Company versus the State of Warhol, 194 F.3rd, 323, 337

2    (Second Circuit 1999).  "Conversely a claim is colorable

3    'when it has some legal and factual support considered in

4    light of the reasonable beliefs of the individual making the

5    claim.'"  ("Nemoroff versus Abelson 620 F.2d, 339 at page

6    348 (Second Circuit 1980) (indiscernible).  "The question is

7    whether a reasonable attorney - and for our immediate

8    purposes, a reasonable plaintiff as well - could have

9    concluded that fact supporting the claim might be

10   established not whether such facts actually had been

11   established."  Finally the decision whether to award

12   sanctions is committed to the Court's discretion.

13   Grochocinski G-R-O-C-H-O-C-I-N-S-K-Y (sic) versus Mayor

14   Brown Rowe and Maw, LLP 719 F.3d 785, 799 (Seventh Circuit

15   2013).  (Concluding that the district court's decision not

16   to award sanctions under 28 U.S.C. Section 1928 was not an

17   abuse of her discretion) (indiscernible) 134 supreme court

18   1026 (2014).

19          FIM Ltd. does not contend on this motion that the

20   allegation in paragraph 89 was made in bad faith and did not

21   object to the allegation when the trustee sought to include

22   it in his proposed fourth amended complaint.  Instead, FIM

23   Ltd. points to the testimonial affidavits that show that it

24   is not incontrovertible that the BBH account did not belong

25   to FIM Ltd. and moreover that it has never had an account in

Page 19

1    New York.

2            The reasons that the trustee's refusal to withdraw

3    the allegation or (indiscernible) or he has even indicated

4    that he intends to do so is vexatious and he has his -- he

5    and his firm deserve to be sanctioned.

6            The trustee's refusal to withdraw the allegation

7    or agree not to rely on it has not vexatiously or

8    unreasonably prolonged this litigation.  The simple fact is

9    that the trustee has not done anything other than refuse to

10   (indiscernible) to the FIM defendant's threats and demands

11   which are motivated by a fear of what the trustee might do

12   in the future, not what he has done in the past.

13           Unlike the cases cited by the FIM defendants, the

14   trustee did not assert the subsequent transfer claim or the

15   BBH allegation against FIM Ltd. in bad faith or persist in

16   making unfounded arguments long after it was obvious that

17   his position had no basis in fact or law.

18           This is not to say that future reliance on the

19   allegation would not lead to that conclusion, but the Court

20   will not use the potent power to sanction the trustee or his

21   counsel based on the facts set forth in the motion.

22           The Court is also wary of substituting a sanctions

23   motion for the typical procedures best employed to test the

24   trustee's allegations and his adherence to it.  FIM Ltd. can

25   make a motion for summary judgment and offer its affidavits

Page 20

1    in support.  The trustee may still be entitled to take

2    discovery, but at the end of the day, the Court will

3    determine based on the motion papers whether there is a

4    disputed issue of fact regarding FIM Ltd's ownership of the

5    BBH account.

6            The FIM defendant's motion for sanctions supplants

7    a summary judgment motion and would, if accepted, result in

8    the type of extensive correspondence and collateral

9    litigation we see here regarding what may be a disputed

10   issue of fact.  Accordingly the sanctions motion is denied.

11   Submit order.

12           MR. SHEEHAN:  Thank you, Your Honor.

13           THE COURT:  Thank you.

14       (Proceedings concluded at 11:10 a.m.)

15

16

17

18

19

20

21

22

23

24

25

Page 21

1                                    INDEX

2                                  RULINGS

3                                                                    PAGE

4    FIM Motion for Sanctions                                        17

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 22

         C E R T I F I C A T I O N

I, Melissa Looney certify that the foregoing transcript is a

true and accurate record of the proceedings.

Melissa Looney   Digitally signed by Melissa Looney
                 DN: cn=Melissa Looney, o=Veritext,
                 ou, email=digital@veritext.com, c=US
                 Date: 2015.03.27 15:29:52 -04'00'
_____

Melissa Looney

AAERT Certified Electronic Transcriber CET-607

Date:  March 27, 2015

Veritext Legal Solutions

330 Old Country Road

Suite 300

Mineola, NY 11501