Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Email: dsheehan@bakerlaw.com
Jorian L. Rose
Email: jrose@bakerlaw.com
Nicholas J. Cremona
Email: ncremona@bakerlaw.com
Seanna R. Brown
Email:sbrown@bakerlaw.com
Amy E. Vanderwal
Email: avanderwal@bakerlaw.com

Hearing Date:  May 20, 2015
Hearing Time:  10:00 AM (EST)
Objection Deadline:  April 27, 2015

*Attorneys for Irving H. Picard, Trustee*
*for the Substantively Consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities LLC*
*and the Estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (SMB) |
| Plaintiff-Applicant, | SIPA Liquidation |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |

**TRUSTEE'S MOTION AND MEMORANDUM TO AFFIRM HIS DETERMINATIONS**
**DENYING CLAIMS OF CLAIMANTS HOLDING INTERESTS IN**
**THE LAZARUS-SCHY FAMILY PARTNERSHIP, THE SCHY FAMILY**
**PARTNERSHIP, OR THE LAZARUS INVESTMENT GROUP**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................. 1

BACKGROUND ...................................................................................................................... 2

    A.    THE COMMENCEMENT OF THE SIPA PROCEEDING ................................. 2

    B.    THE PARTNERSHIPS' STRUCTURE, BLMIS ACCOUNTS, AND
           CLAIMS .......................................................................................................... 4

    C.    THE BLMIS ACCOUNT RECORDS .................................................................. 7

    D.    THE CLAIMS .................................................................................................... 8

    E.    THE CUSTOMER DECISIONS ......................................................................... 9

ARGUMENT ........................................................................................................................ 13

CONCLUSION ...................................................................................................................... 19

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*In re Adler, Coleman Clearing Corp.*,
   216 B.R. 719 (Bankr. S.D.N.Y. 1998) .................................................................................... 14

*Aozora Bank Ltd. v. Sec. Investor Prot. Corp. (In re Bernard L. Madoff Inv. Sec.
   LLC)*,
   480 B.R. 117 (S.D.N.Y. 2012) ......................................................................................... 2, 10

*Appleton v. First Nat'l Bank of Ohio*,
   62 F.3d 791 (6th Cir. 1995) ................................................................................................. 14

*In re Beacon Assocs. Litig.*,
   745 F. Supp. 2d 386 (S.D.N.Y. 2010) ................................................................................... 2

*In re Bernard L. Madoff Inv. Sec. LLC*,
   654 F.3d 229, 231 (2d Cir. 2011), *reh'g and reh'g en banc denied,* (2d Cir.
   Nov. 08, 2011) ..................................................................................................... 2, 10, 14, 16

*In re Klein, Maus & Shire, Inc.*,
   301 B.R. 408 (Bankr. S.D.N.Y. 2003) ................................................................................. 19

*Kruse v. Sec. Investor Prot. Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*,
   708 F.3d 422 (2d Cir. 2013) ........................................................................................ *passim*

*In re Lehman Bros. Inc.*,
   462 B.R. 53 (Bankr. S.D.N.Y. 2011) ................................................................................... 14

*Mishkin v. Siclari (In re Adler, Coleman Clearing Corp.)*,
   277 B.R. 520 (Bankr. S.D.N.Y. 2002) ................................................................................. 19

*Ryan v. Picard*,
   133 S. Ct. 24 (2012) ............................................................................................................... 2

*Sec. Investor Prot. Corp. v. 2427 Parent Corp. (In re Bernard L. Madoff Inv. Sec.
   LLC)*
   No. 14-97-bk(L), 2015 WL 727965 (2d Cir. Feb. 20, 2015) ......................................... 17, 18

*Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L.
   Madoff)*,
   515 B.R. 161 (Bankr. S.D.N.Y. 2014) ......................................................................... *passim*

*Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L.
   Madoff Inv. Sec. LLC)*,
   454 B.R. 285 (Bankr. S.D.N.Y. 2011) ......................................................................... *passim*

**TABLE OF AUTHORITIES**

*(continued)*

*Sec. Investor Prot. Corp. v. Jacqueline Green Rollover Account,*
    Nos. 12 Civ. 1039(DLC), 12 Civ. 1139 (DLC), 2012 WL 3042986 (S.D.N.Y.
    July 25, 2012).................................................................................................................2, 11

*Sec. Investor Prot. Corp. v. Morgan, Kennedy & Co.,*
    533 F.2d 1314 ............................................................................................................15, 16, 18

*SEC v. Madoff,*
    No. 1:08-cv-10791-LLS, 2008 WL 5197070 (S.D.N.Y. filed Dec. 11, 2008) .........................3

*Stafford v. Giddens (In re New Times Sec. Servs., Inc.),*
    463 F.3d 125 (2d Cir. 2006)......................................................................................10, 14, 19

*Sterling Equities Assocs. v. Picard,*
    132 S. Ct. 2712 (2012)................................................................................................................2

*Velvel v. Picard,*
    133 S. Ct. 25 (2012)....................................................................................................................2

**Statutes**

15 U.S.C.A. § 78*lll*(2)..................................................................................................2, 3, 11, 14

15 U.S.C. § 78aaa *et seq.* ..............................................................................................................1

15 U.S.C. § 78eee(a)(4) ................................................................................................................3

15 U.S.C. § 78eee(b)(3) ................................................................................................................3

15 U.S.C. § 78eee(b)(4) ................................................................................................................3

15 U.S.C. § 78fff-1(a) ...................................................................................................................3

15 U.S.C. § 78fff-2(b) .................................................................................................................15

15 U.S.C. § 78fff-3(a) ...................................................................................................................3

15 U.S.C. § 78*lll*(4)......................................................................................................................3

15 U.S.C. § 78*lll*(11)....................................................................................................................3

Dodd-Frank Wall Street Reform and Consumer Protection Act. Pub. L. No. 111-
    203, § 983(b), 124 Stat. 1931 (2010) ......................................................................................14

Fla. Stat. § 620.8106 .....................................................................................................................4

Fla. Stat. § 620.8201(1).................................................................................................................16

## TABLE OF AUTHORITIES

*(continued)*

**Page(s)**

Fla. Stat. § 620.8203 ...........................................................................................................16

Fla. Stat. § 620.8501 ...........................................................................................................16

**Rules**

Fed. R. Civ. P. 36(a)(3)........................................................................................................18

**Other Authorities**

John W. Larson, *Florida's New Partnership Law: The Revised Uniform Partnership Act and Limited Liability Partnerships*, 23 FLA. ST. U. LAW REV. 201, 247 (1995).................................................................................................................4, 16

Irving H. Picard, as trustee ("Trustee") for the substantively consolidated liquidation of

Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor

Protection Act, 15 U.S.C. § 78aaa *et seq.* ("SIPA"),[1] and the estate of Bernard L. Madoff

("Madoff"), respectfully submits this combined motion and memorandum of law (the "Motion")

to affirm the denial of the claims filed by claimants (the "Objecting Claimants") who objected to

the Trustee's determinations denying their claims and who had partnership interests in three

related general partnerships, The Lazarus-Schy Family Partnership (hereafter "Lazarus Schy"),

The Schy Family Partnership (hereafter "Schy Family"), or The Lazarus Investment Group

(hereafter "Lazarus Investment", and collectively with Lazarus Schy and Schy Family, the

"Partnerships").   The Objecting Claimants are specifically identified in Exhibit 2 to the

Declaration of Vineet Sehgal filed herewith.  This memorandum is based upon the law set forth

below as well as the facts set forth in the accompanying declarations of Stephanie Ackerman

("Ackerman Decl.") and Vineet Sehgal ("Sehgal Decl.").

## PRELIMINARY STATEMENT

The Objecting Claimants seek customer status in this SIPA proceeding, despite their

acknowledgement that they lacked accounts in their name and had no individual relationship

with BLMIS as to the money at issue in the instant claims and objections.   Instead, they invested

in the Partnerships, each of which had a BLMIS account and invested partnership assets with

BLMIS, and each of which filed its own claim regarding the account.   The case is

indistinguishable from the seven prior decisions in this SIPA proceeding involving the question

---

[1] *See* 15 U.S.C.A. § 78aaa et seq. (West 2009).  For convenience, subsequent references to sections of the Securities Investor Protection Act shall be denoted simply as "SIPA § __."

of who is the "customer" under SIPA.[2]  In particular, this case is no different from that of the S&P and P&S Florida general partnerships dealt with in this Court's most recent customer decision.[3]  In the *S&P Decision*, this Court held that only the Florida partnerships that had accounts at BLMIS, and not the investors in those partnerships, were customers of BLMIS.  The current Motion seeks to apply the *S&P Decision* and the six additional similar decisions to the Objecting Claimants through entry of an order affirming the Trustee's denial of their claims as listed on Exhibit 2 to the supporting Declaration of Vineet Sehgal, expunging their claims, and overruling the related claims objections on the grounds that Claimants are not "customers" as such term is used at SIPA § 78*lll*(2).[4]

## BACKGROUND

### A.    THE COMMENCEMENT OF THE SIPA PROCEEDING

The basic facts of the BLMIS fraud are widely known and have been recounted in numerous decisions.  *See, e.g.*, *In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d 229, 231 (2d Cir. 2011), *reh'g and reh'g en banc denied,* (2d Cir. Nov. 08, 2011), *cert. dismissed sub nom. Sterling Equities Assocs. v. Picard*, 132 S. Ct. 2712 (2012), *and cert. denied sub nom. Ryan v. Picard*, 133 S. Ct. 24 (2012), *Velvel v. Picard*, 133 S. Ct. 25 (2012); *In re Beacon Assocs. Litig.*,

---

[2] *See Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff Inv. Sec. LLC),* 454 B.R. 285 (Bankr. S.D.N.Y. 2011) ("*SIPC v. BLMIS*"), *aff'd sub nom. Aozora Bank Ltd. v. Sec. Investor Prot. Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*, 480 B.R. 117 (S.D.N.Y. 2012) ("*Aozora Bank Ltd.*"), *aff'd sub nom. Kruse v. Sec. Investor Prot. Corp. (In re Bernard L. Madoff Inv. Sec. LLC),* 708 F.3d 422 (2d Cir. 2013) ("*Kruse*"); *Sec. Investor Prot. Corp. v. Jacqueline Green Rollover Account,* Nos. 12 Civ. 1039(DLC), 12 Civ. 1139 (DLC), 2012 WL 3042986 (S.D.N.Y. July 25, 2012) ("*Jaqueline Green*"); Bench Memorandum Granting Trustee's Second Motion to Affirm Trustee's Determinations Denying Claims of Claimants Who Invested in Certain Feeder Funds and Did Not Have BLMIS Accounts in Their Names (ECF No. 5450) (the "*Second Feeder Fund Decision*"); *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff)*, 515 B.R. 161 (Bankr. S.D.N.Y. 2014) (the "*ERISA Claimant Decision*"); *S&P Decision* (defined *infra* at n.3.)

[3] On February 25, 2015, this Court read into the record a decision granting Trustee's Motion And Memorandum To Affirm His Determinations Denying Claims Of Claimants Holding Interests In S & P Or P & S Associates, General Partnerships (ECF No. 8734) (the "*S&P Decision*,"); *see* Hr'g. Transcript, ECF No. 9506, (Ackerman Decl. Ex. 7). An order granting the Trustee's motion was entered March 10, 2015. (ECF No. 9450.)

[4] The Trustee reserves all other bases for objections to the claims that are the subject of the Motion.

745 F. Supp. 2d 386, 393–94 (S.D.N.Y. 2010). On December 11, 2008, the Securities and

Exchange Commission ("SEC") filed a complaint in the District Court against Madoff and

BLMIS, captioned *SEC v. Madoff*, No. 1:08-cv-10791-LLS, 2008 WL 5197070 (S.D.N.Y. filed

Dec. 11, 2008), alleging fraud through the investment advisor activities of BLMIS. The SEC

consented to the consolidation of its case with an application of the Securities Investor Protection

Corporation ("SIPC"). Thereafter, SIPC filed an application under SIPA § 78eee(a)(4) alleging

that because of its insolvency, BLMIS needed SIPA protection. The District Court appointed the

Trustee under SIPA § 78eee(b)(3) and removed the proceeding to this Court under SIPA

§ 78eee(b)(4).

Under SIPA, the Trustee is responsible, among other things, for recovering and

distributing customer property to a broker's customers, assessing claims, and liquidating other

assets of the firm for the benefit of the estate and its creditors. A SIPA trustee has the general

powers of a bankruptcy trustee, in addition to the powers granted by SIPA. SIPA § 78fff-1(a).

The statutory framework for the satisfaction of customer claims in a SIPA liquidation proceeding

provides that "customers," as defined in SIPA § 78*lll*(2), share pro rata in "customer property,"

defined in SIPA § 78*lll*(4), to the extent of their "net equity," defined in SIPA § 78*lll*(11). For

each customer with a valid net equity claim, if the customer's share of customer property does

not make her whole, SIPC advances funds to the SIPA trustee up to the amount of the customer's

net equity, not to exceed $500,000 (the amount applicable to this case). SIPA § 78fff-3(a).

On December 23, 2008, this Court entered a Claims Procedures Order. (ECF No. 12.)

Pursuant to that order, the Trustee determines claims eligible for customer protection under

SIPA, claimants may object to the Trustee's determination of a claim by filing an objection in

this Court, and the Trustee requests a hearing date for the objection and notifies the objecting claimant thereof. *Id.*

### B.    THE PARTNERSHIPS' STRUCTURE, BLMIS ACCOUNTS, AND CLAIMS

The Objecting Claimants in this case invested in one or more of the Partnerships. Six claims of the Objecting Claimants were filed in their capacities as partners of Lazarus Schy, twelve claims of the Objecting Claimants were filed in their capacities as partners of Lazarus Investment, and the remaining twenty-two claims of the Objecting Claimants were filed in their capacities as partners of Schy Family. *See* Sehgal Decl. Ex. 3. The claims of the Partnerships themselves are not at issue in this Motion.

Each of the Partnerships were related to each other, by virtue of inter-account transfers, by persons who at various times were part of more than one of the Partnerships, and apparently, by family ties among the various partners. All were governed by their respective partnership agreements (collectively, the "Partnership Agreements," Sehgal Decl. Exs. 9, 16, and 22) and by the Florida Revised Uniform Partnership Act ("FRUPA"). Lazarus Schy was formed November 26, 1996 under Florida law (after the enactment of FRUPA).[5] *See* The Lazarus-Schy Family Partnership Agreement (the "LS Partnership Agreement"), Sehgal Decl. Ex 9, at recitals, §18.5. Lazarus Investment was formed September 1, 1999 under New Jersey law,[6] but its partnership agreement nonetheless provided that the partnership agreement was to be construed under the

---

[5] *See* John W. Larson, *Florida's New Partnership Law: The Revised Uniform Partnership Act and Limited Liability Partnerships*, 23 FLA. ST. U. LAW REV. 201, 247 (1995) ("Until January 1, 1998, FRUPA will govern only those partnerships formed after January 1, 1996, the Act's effective date, unless the partnership elects to be governed by the Revised Act. . . . After January 1, 1998, FRUPA governs all Florida partnerships.").

[6] After Lazarus Investment's formation, its managing partner Ronald Lazarus moved to Florida and changed Lazarus Investment's BLMIS address to Florida. *See* Sehgal Decl. Ex. 17 at AMF00061263-66. All but one of the Objecting Claimants associated with Lazarus Investment also have Florida addresses. *See* Ackerman Decl. Ex. 2. It therefore would likely be governed by Florida law by default, *see* FLA. STAT. § 620.8106 (looking to the law of the jurisdiction in which a partnership has its chief executive office), even without the choice of law provision. The partnership laws of New Jersey and Florida, both of which states adopted the revised Uniform Partnership Act, appear to have no relevant differences in any event.

4

laws of Florida. *See* The Lazarus Investment Group partnership agreement (the "LI Partnership Agreement"), Sehgal Decl. Ex 16, at recitals, §18.5.  Schy Family was formed September 15, 2003 under Florida law.  *See* The Schy Family Partnership Agreement (the "SF Partnership Agreement"), Sehgal Decl. Ex 22, at recitals, §18.5.

Lazarus Schy opened BLMIS account number 1ZB300, on January 2, 1997 with transfers from five different individual BLMIS accounts.[7]  *See* Sehgal Decl. ¶¶ 19, 21, Ex. 8, Ex. 10 at AMF00057549.    Additional deposits and withdrawals were made over the years.    The withdrawals included transfers into BLMIS accounts opened for Lazarus Investment (October 4, 1999) and Schy Family (September 22, 2003).  Sehgal Decl. ¶¶ 19, 21, Exs. 8, 10.  Lazarus Schy filed two claims (010501 and 100200) as to its BLMIS account.  Sehgal Decl. ¶¶ 17, 18, Exs. 6, 7.  Because it withdrew more funds than it deposited, the Trustee determined that Lazarus Schy had negative net equity and its customer claims were denied.  Sehgal Decl. ¶¶ 14, 19, Ex. 8.

Lazarus Investment opened BLMIS account number 1ZB375 on October 4, 1999 with a transfer from the Lazarus Schy BLMIS account.  Lazarus Investment filed two claims (010409 and 100201) as to its BLMIS account; the customer claim was allowed in the amount of $26,000 and has been paid in full.  Sehgal Decl. ¶¶ 14, 21, 24, 25, 26, 28 Exs. 10 at AMF00057541, 13, 14, 15, 17.

Schy Family opened BLMIS account number 1ZB481 on September 22, 2003 with a transfer from the Lazarus Schy BLMIS account.  Schy Family filed claim numbers 010280 and 100184 as to its BLMIS account.  Because it withdrew more funds than it deposited, the Trustee determined that Schy Family had negative net equity and its customer claims were denied. Sehgal Decl. ¶¶  14, 21, 30, 31, 32, 34,  Exs. 10 at AMF00057536, 19, 20, 21, 23.

---

[7] Some of the "transfers" were of fictitious profits.  *See* Sehgal Decl. ¶19, Ex. 8 at Table 1.

Each of the Partnerships had the stated purpose of "investments." Partnership Agreements, § 3.[8] There were no provisions for individual ownership of any particular partnership property.

Each of the Partnerships had a managing partner responsible for conducting the partnership's business on a day-to-day basis and supervising its daily operations. The managing partner could be replaced by partnership vote. Partnership Agreements, § 7.3. Terry Lazarus was the "initial managing partner" for Lazarus Schy according to LS Partnership Agreement at § 7.3, and was the person who dealt with BLMIS and received statements on behalf of Lazarus Schy. *See* Sehgal Decl. Exs. 5, 10, Ronald Lazarus was the "designated managing partner" according to LI Partnership Agreement at § 7.3, and was the person who dealt with BLMIS and received statements on behalf of Lazarus Investment. *See* Sehgal Decl. Exs. 12, 17. Ira Schy was the "initial managing partner" for Schy Family according to SF Partnership Agreement at § 7.3, and was the person designated to receive statements, but later correspondence with BLMIS was primarily by Zipora Lazarus, who identified herself as the managing partner for Schy Family. *See* Sehgal Decl. Exs. 18, 23.

In each Partnership, the partners could exercise powers "on behalf of the partnership, in its name," Partnership Agreements, § 7.1, but all decisions made by the partners were to be made by a majority vote of the partnership interests. Partnership Agreements, § 7.2. The Partnership would reimburse all reasonable expenses incurred by the partners in managing or conducting the partnership business, Partnership Agreements, § 8, and compensate them for personal services to the partnership. Partnership Agreements, § 9.

---

[8] *See* Partnership Agreements definition, *supra* p. 4.

Assignment of interests in each Partnership was restricted to transfers by gift, devise or bequest. Transfers for consideration could only be made to family members or existing partners who agreed to assume all obligations and undertakings of the transferor under the Partnership Agreement. *See* Partnership Agreements, § 13. New partners could be admitted by unanimous vote of all the partners with certain restrictions. Partnership Agreements, §15.

The Partnership Agreements contemplated the deposit of the partnership funds into partnership bank accounts as designated by the managing partner. While the managing partner could authorize others to draw checks on the account, the authority would have to be granted in writing and a bonding requirement could be imposed. Partnership Agreements, § 11.

As discussed *infra*, by applicable law, the Partnerships were entities that owned their own property and could sue and be sued in their own names. Each had a BLMIS account in its name, according to the books and records of BLMIS. None of the Partnerships was a bank, broker, or dealer.

## C.    THE BLMIS ACCOUNT RECORDS

The Partnerships each maintained an account in its own name (the "Accounts", and each, an "Account") with BLMIS. The Objecting Claimants did not. Sehgal Decl. ¶¶ 6, 9, 11, 12, 35, Exs. 1-3. The records of BLMIS reflect money deposited or withdrawn by the Partnerships, acting through their managing partners, and not by the Objecting Claimants individually. BLMIS sent Account statements and related communications to the Partnerships, not the Objecting Claimants.[9] The account maintenance files of BLMIS for these Accounts do not reference the particular interests held by Objecting Claimants in the Partnerships. Sehgal Decl. ¶¶ 21, 28, 34, Exs 10, 17, 23. Even the two Partnership Agreements found in the BLMIS

---

[9] *See* Ackerman Decl. ¶ 12, Exs. 3, 4, 5 at Requests for Admission numbers 1-13 (hereafter "RFA__"); Sehgal Decl. ¶¶ 16, 23, 29 Exs. 5, 12, 18.

account maintenance files only contain the names of the initial partners for each Partnership, not the names of all of the Objecting Claimants, and do not set out the proportional interests even of the initial partners.  Sehgal Decl. ¶¶ 20, 33 Exs. 9, 22.

Because the Partnerships each maintained an Account at BLMIS, and made deposits into and withdrawals from that Account, the books and records of BLMIS reflect the amounts owing and owed by the BLMIS estate for that Account.  The books and records of BLMIS do not, in contrast, reflect deposits or withdrawals directly to or from BLMIS by the Objecting Claimants with regard to any Partnership's BLMIS Account.  They also do not show what amounts individual Objecting Claimants invested in, or withdrew from, the Partnerships, except for one letter in which the managing partner of Lazarus Investment simply referenced the person who provided the money for the Partnership deposit that was enclosed.  Sehgal Decl. ¶¶ 21, 28, 34, 35 Exs 10, 17 at AMF00061267, 23.

### D.    THE CLAIMS

The claims at issue in this Motion involve investments into the Partnerships.  Sehgal Decl. ¶¶ 9-12, Exs. 1-3.  The Objecting Claimants, the 40 claims filed by them, and the objections to determination of those claims, are specifically identified in Exhibits 2 and 3 to the Sehgal Decl.  The Trustee denied their claims because they lacked BLMIS accounts and were not customers of BLMIS.  Sehgal Decl. ¶ 11.  The Objecting Claimants, collectively, filed three unique docketed objections to the Trustee's determination of their claims.  Sehgal Decl. ¶¶ 10-12, Exs.1-3.  This Motion addresses all objections regarding the specified claims by Objecting Claimants who are identified on Exhibit 2 of the Sehgal Decl.

Since receiving the three unique docketed objections to the claims determinations, the Trustee served discovery on each of the Objecting Claimants seeking to determine their basis for claiming customer status, and inquiring into deposits, payments, communications, account

openings, and their relationship with the account holder.[10]    None of the Objecting Claimants

responded.  They have provided no persuasive evidence of their entitlement to customer status

under SIPA.  *See* Ackerman Decl. ¶¶ 5, 7-14, Exs. 1-6.

### E.    THE CUSTOMER DECISIONS

There have been seven prior decisions in this proceeding dealing with whether investors

in BLMIS accountholder entities could be treated as "customers" under SIPA; all of the

decisions said they could not.  The Trustee's first motion regarding the definition of "customer"

under SIPA was the Trustee's Motion To Affirm Trustee's Determinations Denying Claims of

Claimants Without BLMIS Accounts In Their Names, Namely, Investors in Feeder Funds, filed

on June 11, 2010 (ECF No. 2416) (the "Initial Feeder Fund Motion"). The Initial Feeder Fund

Motion addressed the objections to claim determinations of claimants who invested in those

feeder funds.  Each of the feeder funds, in contrast to the claimants, had accounts with BLMIS.

On June 28, 2011, this Court issued its memorandum decision and order affirming the Trustee's

denial of the claims.  *SIPC v. BLMIS,* 454 B.R. 285 (Bankr. S.D.N.Y. 2011).

The Court found that, in light of the plain language of SIPA and relevant case law, the

claimants in the Initial Feeder Fund Motion did not qualify as "customers" under SIPA.  *Id.* at

290.  The Court found that the claimants invested in, not through, those feeder funds, and had no

individual accounts at BLMIS.  *Id.* at 297.  It was the feeder funds that entrusted their monies

with BLMIS for the purpose of trading or investing in securities—the touchstone of "customer"

status—whereas the claimants purchased interests in the feeder funds.  *Id.* at 299.  The Court

---

[10] Becker and Poliakoff, LLP had filed objections to determination on behalf of all of the Objecting Claimants, and was initially served with discovery for Lazarus Investment.  Becker and Poliakoff, LLP ultimately confirmed to the Trustee that it was not representing any of the Objecting Claimants as to discovery.  Discovery was also served directly upon each of the Objecting Claimants *pro se*.  Ackerman Decl. ¶¶ 7-11.

held that absent a direct relationship with BLMIS, the claimants sought a definition of "customer" that stretched the term beyond its limits. *Id.* at 302.

Certain claimants appealed this decision to the District Court. The District Court affirmed, extensively analyzing the statutory definition and holding that the claimants did not qualify as customers under the plain language of SIPA. *Aozora Bank Ltd.*, 480 B.R. 117 (S.D.N.Y. 2012).

On further appeal, the Second Circuit also affirmed, confirming that "[j]udicial interpretations of 'customer' status support a narrow interpretation of the SIPA's provisions." *Kruse*, 708 F.3d at 426 (citing *Stafford v. Giddens (In re New Times Sec. Servs., Inc.)*, 463 F.3d 125, 127 (2d Cir. 2006)). The Second Circuit held that "the critical aspect of the 'customer' definition" was "the entrustment of cash or securities to the broker-dealer for the purposes of trading securities." *Kruse*, 708 F.3d at 426 (citing *In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d at 236.). The Second Circuit found that the claimants failed to meet this fundamental requirement because the money sent to BLMIS belonged to the feeder funds, not to the individual claimants, and the individual claimants therefore failed to establish that they had entrusted cash or securities to BLMIS. *Kruse*, 708 F.3d at 427. The Second Circuit also found that the individual claimants did not exhibit other indicia of customer status in their dealings (or lack of dealings) with BLMIS, including that they did not exert any control over the accounts at issue and that they were not reflected in BLMIS records. *Id.* at 426-27.

The Second Circuit held that the ownership interests in the funds "did not confer an ownership interest in money that the Feeder Funds ultimately invested in BLMIS." Thus, the Second Circuit concluded, "regardless of their intent, appellants never entrusted *their* cash or

securities to BLMIS and, thus, fail to satisfy this 'critical aspect of the "customer" definition.'"
*Kruse,* 708 F.3d at 427-28.

While the appeals of the First Feeder Fund Decision were proceeding, the Trustee also
filed a motion (the "ERISA Motion") to eliminate arguments that were raised by claimants
without BLMIS accounts who were benefit plans or benefit plan participants and who sought to
use the Employee Retirement Income Security Act ("ERISA") as a basis for determining their
customer status.[11]  (ECF No. 4521.)   The District Court withdrew the reference from the
Bankruptcy Court and granted the ERISA Motion. *Jacqueline Green*, 2012 WL 3042986 *3
(S.D.N.Y. July 25, 2012).

The District Court noted that the first two of the three ways to qualify as a "customer"
under SIPA § 78*lll*(2), "presume that a customer must have a securities account with the debtor,"
and that the claimants also did not qualify under the third method of having "deposited cash with
the debtor for the purpose of purchasing securities." *Id.* at *4.  That was so because none of the
claimants "owned any cash deposited with BLMIS.  Rather, . . . in each case this cash was
owned by the third-party entity in which the claimant invested, and which had a BLMIS account
in its name." *Id.* at *5.  The District Court also rejected arguments that fiduciary responsibilities
could suffice to create a "customer" relationship: "Without an account in his or her name with
BLMIS or title to any assets with BLMIS, a claimant cannot achieve customer status merely by
virtue of having a fiduciary relationship with the debtor." *Id*. at *12.  No appeal was taken of this
decision.

On June 27, 2013, the Trustee filed the Trustee's Second Motion to Affirm Trustee's
Determinations Denying Claims of Claimants Who Invested in Certain Feeder Funds and Did

---

[11] Prior to the hearing on the Initial Feeder Fund Motion, the Court had removed from the scope of the motion the
question of whether ERISA affects "customer" status under SIPA.

Not Have BLMIS Accounts in Their Names (together with supporting documents, ECF Nos. 5396-5399, 5438-5439).    On August 21, 2013, the Court issued the *Second Feeder Fund Decision* (ECF No. 5450).    That decision reaffirmed that "the burden is on the claimant to establish he is a 'customer' entitled to SIPA protection, and such a showing is not easily met." *Second Feeder Fund Decision* at 4 (quoting *SIPC v. BLMIS*, 454 B.R. at 294).    Also, the Court determined that the claimants "fail[ed] to [meet their burden] because they lack any of the indicia of a 'customer' relationship with BLMIS." *Second Feeder Fund Decision* at 4.    In particular, "they had no securities accounts at BLMIS, were not known to BLMIS, lacked privity and any financial relationship with BLMIS, lacked property interest in any feeder fund account assets at BLMIS, entrusted no cash or securities to BLMIS, had no investment discretion over feeder fund assets invested with BLMIS, received no accounts statements or other communications from BLMIS and had no transactions reflected on the books and records at BLMIS." *Id.*  The *Second Feeder Fund Decision* was not appealed.

On April 30, 2014, the Trustee filed Trustee's Motion And Memorandum To Affirm Trustee's Determination Denying Claims Of Claimants (the "Claimants") Who Invested In The Daprex, Felsen, Sterling, Or Orthopaedic ERISA Plans (ECF No. 6489).    On August 22, 2014, this Court issued the *ERISA Claimant Decision*, 515 B.R. 161 (Bankr. S.D.N.Y. 2014).    In affirming the Trustee's determinations, this Court concluded that "[t]he claimant has the burden to establish his status as a 'customer'" and "not every victim of a broker-dealer's fraud is a 'customer.'" *Id.* at 166.  The Court found that "to qualify as a 'person who has deposited cash with the debtor for the purpose of purchasing securities,' . . . the party asserting that she was a BLMIS customer must show that she entrusted her own assets directly through an account maintained in her own name rather than indirectly through a fund that then entrusted the fund's

12

assets through an account maintained in the fund's name." *Id.* at 168 (internal citations omitted). Moreover, even the fact that a claimant exercised some control over her own investments in the fund or the fund's investments in BLMIS is not sufficient to meet "the narrow definition of customer under SIPA." *Id.* This decision has not been appealed.

On December 12, 2014, the Trustee filed Trustee's Motion And Memorandum To Affirm His Determinations Denying Claims Of Claimants Holding Interests In S & P Or P & S Associates, General Partnerships. (ECF No. 8734.)  On February 25, 2015, this Court read the *S&P Decision* into the record.  This Court summarized the state of the law, as expressed in its prior decision[12] as follows: First, it said, "customer status under SIPA is narrowly interpreted." Hr'g. Transcript, *S&P Decision*, at p. 30, ECF No. 9506 (Ackerman Decl. Ex. 30).  Further, "[t]he 'critical aspect' of the customer definition is 'the entrustment of cash or securities to the broker-dealer for the purposes of trading securities.'" *Id.*  In addition, "[t]he indicia of customer status include a direct financial relationship with BLMIS, a property interest in the funds invested directly with BLMIS, securities accounts with BLMIS, control over the account holders' investments with BLMIS and identification of the alleged customer in BLMIS' books and records." *Id.*  The Court concluded, "[f]inally, the claimant has the burden of showing that he or she is a customer." *Id.*  The Court held that the objecting partners failed to sustain their burden of proving that they are SIPA customers of BLMIS. *Id.* at 36.  An order granting the Trustee's motion was entered March 10, 2015. (ECF No. 9450.)

## ARGUMENT

To be a "customer" under SIPA, an investor must have "a claim on account of securities received, acquired, or held by the debtor in the ordinary course of its business as a broker or

---

[12] *ERISA Claimant Decision*, 515 B.R. at 165-68.

dealer from or for the securities accounts of such person," including "any person who has deposited cash with the debtor for the purpose of purchasing securities." SIPA § 78*lll*(2).[13]  Thus, to be a "customer" an investor must have entrusted cash or securities with the debtor for the purpose of trading or investing in securities.  In *Kruse*, the Second Circuit found that investors who bought limited partnership interests in an entity that invested partnership funds via the partnership's own BLMIS account "never entrusted *their* cash or securities to BLMIS and, thus, fail to satisfy this 'critical aspect of the "customer" definition'" regardless of their intent.  708 F.3d at 427 (citing *In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d at 236).  Similarly, the Second Circuit in *In re New Times Sec. Servs., Inc.*  held that "the critical aspect of the 'customer' definition is the entrustment of cash or securities to the broker-dealer for the purposes of trading securities."  463 F.3d at 128 (quoting *Appleton v. First Nat'l Bank of Ohio*, 62 F.3d 791, 801 (6th Cir. 1995)).  *See also In re Adler, Coleman Clearing Corp.*, 216 B.R. 719, 724–25

---

[13] The definition applicable to this SIPA proceeding is:

(2) CUSTOMER

The term "customer" of a debtor means any person (including any person with whom the debtor deals as principal or agent) who has a claim on account of securities received, acquired, or held by the debtor in the ordinary course of its business as a broker or dealer from or for the securities accounts of such person for safekeeping, with a view to sale, to cover consummated sales, pursuant to purchases, as collateral security, or for purposes of effecting transfer. The term "customer" includes any person who has a claim against the debtor arising out of sales or conversions of such securities, and any person who has deposited cash with the debtor for the  purpose of purchasing securities, but does not include—

(A) any person to the extent that the claim of such  person arises out of transactions with a foreign subsidiary of a member of SIPC; or

(B) any person to the extent that such person has a claim for cash or securities which by contract, agreement, or understanding, or by operation of law, is part of the capital of the debtor, or is subordinated to the claims of any or all creditors of the debtor, notwithstanding that some ground exists for declaring such contract, agreement, or understanding void or voidable in a suit between the claimant and the debtor.

SIPA § 78*lll*(2), *see* 15 U.S.C.A. § 78*lll*(2)  (West 2009). After the start of this case, the "customer" definition was slightly reorganized and amended in a manner irrelevant to the present issues by the Dodd-Frank Wall Street Reform and Consumer Protection Act. Pub. L. No. 111-203, § 983(b), 124 Stat. 1931 (2010); *see In re Lehman Bros. Inc.*, 462 B.R. 53, n.9 (Bankr. S.D.N.Y. 2011).

(Bankr. S.D.N.Y. 1998) ("The term [customer] refers to those who entrust cash or securities to broker-dealers for the purpose of trading and investing in the securities market.").  The Trustee is responsible for discharging obligations of the debtor to customers with such claims "insofar as such obligations are ascertainable from the books and records of the debtor or are otherwise established to the satisfaction of the trustee."  SIPA § 78fff-2(b).

The Objecting Claimants' investments in the Partnerships do not meet the requirements for "customer" status outlined in the seminal Second Circuit decision *Sec. Investor Prot. Corp. v. Morgan, Kennedy & Co.,* 533 F.2d 1314 (2d Cir. 1976, and reaffirmed in *Kruse*, 708 F.3d at 427. In *Morgan Kennedy*, the Second Circuit rejected the argument that the beneficial owners of the account holder were the "customers" under SIPA, citing the facts that: (1) title to the trust assets was held by the account holder, not the beneficiaries; (2) the securities account with the debtor was in the name of the account holder, not the beneficiaries; (3) the account holder had the exclusive power to entrust the assets to the debtor; (4) the beneficiaries were unknown to the broker; and (5) the beneficiaries had no legal capacity in which they could deal with the debtor. 533 F.2d at 1318.

The Objecting Claimants' circumstances are no different than the claimants in *Morgan Kennedy*, and do not show the hallmarks of customer status discussed in this Court's most recent decision.  Hr'g. Transcript, *S&P Decision*, at p. 30 (Ackerman Decl. Ex. 30).  The Objecting Claimants entrusted their money to the Partnerships, not BLMIS.  The Objecting Claimants lacked a direct financial relationship with BLMIS as to the Account money.  The money entrusted to BLMIS was the property of the Partnerships, not the Objecting Claimants.  The BLMIS Accounts were in the names of the Partnerships, not in the individual names of Objecting Claimants.  Only those Objecting Claimants acting as agent on behalf of the Partnerships could

control the Partnerships' investments with BLMIS, and then only to the extent provided by the Partnership Agreements and applicable law.  The interests of Objecting Claimants were not identified in BLMIS' books and records, and the names of partners other than the managing partner generally only appeared in the BLMIS records if they were one of the original partners listed on a copy of a Partnership Agreement found in the Account Maintenance files.  The partners who dealt with BLMIS did so as an agent for the Account holder, like the trustees who acted for the trust account in *Morgan Kennedy*, and were no more customers in their individual capacity than were they.  *Morgan Kennedy,* 533 F.2d at 1321.

Accordingly, only the Partnerships, not the Objecting Claimants, entrusted their cash or securities to BLMIS, and the Objecting Claimants thus fail to satisfy this "critical aspect of the 'customer' definition." 708 F.3d at 426-27 (citing *In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d at 236); *accord ERISA Claimant Decision,* 515 B.R. at 169.  Whether the Objecting Claimants intended the Partnerships to invest with BLMIS is irrelevant under SIPA. *See Kruse*, 708 F.3d at 426-27; *ERISA Claimant Decision*, 515 B.R. at 169-170.

The money the Objecting Claimants contributed to the Partnerships, and anything that the Partnerships purchased with that money, belongs to the relevant Partnership and not to the Objecting Claimants.  Like the account holders dealt with by prior Customer Opinions, the Partnerships are legal entities with all that that entails, including ownership of the assets that they invested with BLMIS. *See generally* John W. Larson, *Florida's New Partnership Law*, *supra* note 5.  Florida Stat. § 620.8201(1) states: "A partnership is an entity distinct from its partners" and § 620.8203 says "Property acquired by a partnership is property of the partnership and not of the partners individually." Similarly, Fla. Stat. § 620.8501, titled "Partner not coowner of partnership property" provides, "Partnership property is owned by the partnership as an entity,

not by the partners as co-owners. A partner has no interest that can be transferred . . . in specific partnership property."

It was the Partnerships, not the Objecting Claimants, that entrusted assets to BLMIS for the purpose of purchasing securities.  Each Partnership alone had the right to direct the investment of those assets on behalf of the Partnership, and to withdraw property from its Account on behalf of the Partnership.  Each Partnership, not the Objecting Claimants, was the customer for its respective Account under SIPA.

Because BLMIS never exercised a custodial function as to the Accounts on behalf of the individual Objecting Claimants, who made no deposits or withdrawals at BLMIS, the Objecting Claimants have neither "customer" claims nor individual net equity. The purpose of SIPA, a statute intended to deal with broker insolvency, is "to expedite the return of customer property" by "protecting the *custody* function of brokers," according to a recent Second Circuit decision that declined to permit interest or time-based damages for customer claims under SIPA.  *Sec. Investor Prot. Corp. v. 2427 Parent Corp. (In re Bernard L. Madoff Inv. Sec. LLC)* No. 14-97-bk(L), 2015 WL 727965, at *4 (2d Cir. Feb. 20, 2015) ("*2427 Parent Corp.*")  Customers share in the fund of customer property ratably, according to each customer's "net equity." *Id.* at **2, 6. The definition of net equity is limited by the fundamental SIPA design "to return customer property to customers," *id.* at *2, whether in cash or in actual securities.  *Id.* at *5.

It was each Partnership that had the right to demand, on behalf of the Partnership, return of the property entrusted to its Account, and each Partnership that is accordingly entitled to a customer claim to the extent of its net equity.  Moreover, in this instance, two of the Partnerships had no net equity at all, and the net equity of the other was paid in full as it was well within the

maximum limits of the allowed SIPC advance. Consequently, the net equity of each Partnership has already been fully repaid.

The Second Circuit stated in *2427 Parent Corp.*, "[w]e . . . previously concluded that in [the BLMIS] case net equity . . . should be determined based on customers' actual deposits and withdrawals. These deposits, net withdrawals, constitute customer property here." *Id.* at *6 (citations omitted). The books and records of BLMIS show that Objecting Claimants made no deposits in or withdrawals from BLMIS, except for the managing partners acting solely on the Partnerships' behalf. Sehgal Decl. ¶¶ 21, 28, 34, 35, Exs 10, 17, 23. The Objecting Claimants accordingly have no individual net equity and are not "customers" within the meaning of SIPA.

Each of the Objecting Claimants was served with requests for admission, interrogatories, and requests for production. None of them responded. By failing to respond to the requests for admission, all of the Objecting Claimants admitted them. Fed. R. Civ. P. 36(a)(3). These admissions show that Objecting Claimants lack any relationship with BLMIS that fits the *Morgan Kennedy* criteria and that their claims of "customer" status are baseless. They admitted that the relevant Account was not titled in their name (RFA 1), that they never received correspondence directly from BLMIS (RFA 3), that they never received investment statements (RFA 8) or tax statements (RFA 9) in their names from BLMIS, that they never paid cash directly to BLMIS for credit to an account in their names (RFA 5), and never deposited securities directly to BLMIS (RFA 4), that they never directly withdrew (RFA 6) or received (RFA 7) funds from BLMIS, and that any funds withdrawn were transmitted to them from the Account holder (RFA 7), and that their only relationship to BLMIS existed by way of their relationship to the Account holder. (RFA 11). *See* Ackerman Decl. ¶¶ 5, 7-14, Exs. 1-6.

As the Second Circuit has explained, "[j]udicial interpretations of 'customer' status support a narrow interpretation of the SIPA's provisions." *Kruse*, 708 F.3d at 426 (citing *In re New Times Sec. Servs., Inc.,* 463 F.3d at 127).   Customer status under SIPA is narrowly construed and is the burden of the claimant to establish.   *See ERISA Claimant Decision,* 515 B.R. at 166 ("The burden is on the claimant to establish he is a 'customer' entitled to SIPA protection, and such a showing 'is not easily met.'")   *SIPC v. BLMIS*, 454 B.R. at 294 (citing *In re Klein, Maus & Shire, Inc.*, 301 B.R. 408, 418 (Bankr. S.D.N.Y. 2003)); *see also Mishkin v. Siclari (In re Adler, Coleman Clearing Corp.)*, 277 B.R. 520, 557 (Bankr. S.D.N.Y. 2002) ("[I]it is well-established in the Second Circuit that a claimant bears the burden of proving that he or she is a 'customer' under SIPA.")   The Objecting Claimants have not met this burden. Thus, under Second Circuit precedent, the Objecting Claimants are not SIPA customers.

## CONCLUSION

For all of the foregoing reasons, the Court should affirm the Trustee's determination denying the claims of the Objecting Claimants, overrule their objections, expunge the claims, and grant such other and further relief as the Court deems just and proper.

Dated: New York, New York
      April 7, 2015

Respectfully submitted,

*/s/ David J. Sheehan*
David J. Sheehan
Email: dsheehan@bakerlaw.com
Jorian L. Rose
Email: jrose@bakerlaw.com
Nicholas J. Cremona
Email: ncremona@bakerlaw.com
Seanna R. Brown
Email: sbrown@bakerlaw.com
Amy E. Vanderwal
Email : avanderwal@bakerlaw.com
**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, New York  10111
Tel: (212) 589-4200
Fax: (212) 589-4201

Brian A. Bash
Email: bbash@bakerlaw.com
Wendy J. Gibson
Email: wgibson@bakerlaw.com
**Baker & Hostetler LLP**
1900 E. 9th St Suite 3200
Cleveland, Ohio  44114
Tel: (216) 621-0200
Fax: (216) 696-0740

*Attorneys for Irving H. Picard, Trustee*
*for the Substantively Consolidated SIPA*
*Liquidation of Bernard L. Madoff Investment*
*Securities LLC and the Estate of Bernard L. Madoff*