UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>Plaintiff-Applicant,<br><br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES, LLC,<br><br>Defendant. | Adv. Pro. No. 08-1789 (SMB)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| In re<br><br>BERNARD L. MADOFF<br><br>Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>Plaintiff,<br><br>- against -<br><br>HSBC BANK PLC, *et al.*,<br><br>Defendants. | Adv. Pro. No. 09-01364 (SMB) |

**DECLARATION OF PETER FISCHER IN SUPPORT OF RESPONSE AND OPPOSITION OF ALPHA PRIME FUND LIMITED AND SENATOR FUND SPC TO THE HSBC DEFENDANTS' MOTION TO DISMISS THE AMENDED CROSS-CLAIMS**

**PETER FISCHER**, pursuant to 28 U.S.C. § 1746, declares as follows:

1. I am a director and Chairman of Alpha Prime Fund Limited (Alpha Prime) and a director of Senator Fund SPC (Senator)(collectively, the Funds), Defendants and Cross-Claim Plaintiffs in the above-captioned adversary case. In this capacity, I have detailed knowledge of and experience with the business and financial affairs of the Funds. All of the facts set forth in my

declaration are based upon my personal knowledge of the Funds' operations and information gathered from a review of relevant documents, or provided to me by individuals or professionals associated with the Funds. I am authorized to submit this Declaration on behalf of the Funds. If called upon to testify, I could and would testify competently to the facts set forth herein.

2. Alpha Prime was set up in 2003 upon the request of a large German institutional investor who wanted to invest into a Fund having Bernard L. Madoff Investment Securities LLC ("BLMIS" or "Madoff") as a broker, but not sponsored by a large bank. After several meetings with Bank of Bermuda (Luxembourg) ("Bob Lux") to discuss the structure of the proposed fund, BoB Lux proposed that Alpha Prime be incorporated in Bermuda with an option to redomicile in Luxemburg at a later stage with BoB Lux as sponsor and that BoB Lux serve as the new fund's administrator and custodian, based upon its experience with Primeo and its existing cooperative relationship with the famously selective BLMIS and its gatekeeper, Madoff.

3. BoB Lux's proposals were accepted, along with its advice that Bermuda be selected as the fund's domicile. In fact, BoB Lux took the lead in having all the relevant documentation for the formation drawn up through its Bermuda counsel. On March 12, 2003, Alpha Prime was formed and Nigel Fielding, head of BoB Global Fund Services, Luxemburg, became one of four founding directors of Alpha Prime.

4. Alpha Prime and Bank of Bermuda Ltd. ("BoB") entered into two contracts of relevance in March 12, 2003. The first, a custodian agreement (the "Alpha Prime Custodian Agreement"), under which BoB would provide Alpha Prime with a full range of custodial services relating to the safeguarding and segregation of money and securities relating to BLMIS. The second, an administration and registrar agreement (the "Alpha Prime Administration Agreement"), was entered into with BoB's nominee, Management International (Bermuda) Ltd. ("Management

International") and involved a varied and miscellaneous range of services that Alpha Prime, which lacked any employees, could not do for itself.

5. Simultaneously with the entering into of the Alpha Prime Custodian Agreement, BoB (with Alpha Prime's knowledge) entered into a Sub-Custodian Agreement appointing BoB Lux as sub-custodian to undertake the contractual tasks of BoB.

6. Simultaneously with the entering into of the Alpha Prime Administration Agreement, BoB (with Alpha Prime's knowledge) entered into a Sub-Administrator and Registrar Agreement appointing BOB Lux as sub-administrator to undertake the contractual tasks of Management International.

7. In or about February 2004, HSBC acquired BoB. HSBC undertook all the contractual duties of BoB, though HSBC did not enter into a formal novation agreement until January 2007 (the "Alpha Prime Custodian Novation Agreement") which expressly novated BoB's duties as custodian to Alpha Prime to HSBC Institutional Trust Services (Bermuda) Ltd ("HITSB"). A copy of the Alpha Prime Custodian Novation Agreement is annexed hereto as **Exhibit A**.

8. Upon the same date, a virtually identical novation agreement was executed relating to the Alpha Prime Administrative Agreement (the "Alpha Prime Administrative Novation Agreement"). A copy of the Alpha Prime Administrative Novation Agreement is annexed hereto as **Exhibit B**.

9. HSBC continuously reassured people involved with Alpha Prime (and other BLMIS invested funds) about their outstanding competence in handling BLMIS invested funds and in mid of 2006 even fortified it by eagerly agreeing to assist in the creation and structure of

Senator, with Cayman Island as the domicile and an investment fund with a strong US shareholder base as seed investor/promoter of Senator Fund.

10. On or about August 4, 2006, Senator Fund and HSSL entered into a custody agreement (the "Senator Custody Agreement") under which HSSL agreed to provide Senator Fund with the same full range of custodial services HSSL provided to Senator Fund relating to the safeguarding and segregation of Senator Fund's money and securities invested with BLMIS.

11. On the same date, Senator Fund and HSSL entered into an administration agreement (the "Senator Administration Agreement") under which HSSL agreed to provide Senator Fund involved a varied and miscellaneous range of services that Senator Fund, which lacked any employees, could not do for itself.

12. HSBC plc sought to be an investor in Senator Fund, and arranged for leverage facilities to be made available for Senator Fund investors through its Structured Products division in New York.

13. As with Alpha Prime, the investors in Senator Fund were largely an international mix of institutional clients, including HSBC, Austrian institutional investors, an international Japanese bank, an international French bank and American investors. Senator Fund had no Luxembourg investors, and Alpha Prime had only one, the Luxembourg subsidiary of a non-Luxembourg bank.

14. From the inception of each of the Funds, investment activity for investors in the Funds, be it investments or redemptions, were transactions to be administered as part of the services to be performed by BoB, and later, HSBC.

15. Attached as **Exhibit C** hereto is the BoB Fee Schedule that controlled fees related to services, BoB, and later HSBC, performed for Alpha Prime.

16. After HSBC's acquisition of BoB 2004, fund financial transactions were run by HSSL through a HSBC plc New York account maintained at HSBC USA. Attached as **Exhibit D** is a representative specimen of these transactions.

17. In the course of their relationship, the Funds and HSBC entered in a number of agreements relating to banking services, including a foreign exchange facility with HSBC plc and HSSL, an overdraft facility with HSBC plc and HSSL, a currency swap agreement with HSBC plc, various amendments to those agreements, and a security agreement with HSBC plc, pledging the securities on account at BLMIS in New York to HSBC plc. *See*, attached, **Composite Exhibit E**.

18. Throughout HSBC's relationship with the Funds, the HSBC Web-Portal was a primary means by which HSBC communicated with the Funds.

19. The head of HSBC Structured Fund Products, Brian Nash, provided a range of financial services to the Funds, which included currency hedging, along with HSBC Vice Presidents, Julie Y. Mei and Jennifer Skokan, all of them resident in New York.

20. The Funds also received regular e-mail communications from HSSL administrative employees in Luxembourg, generally concerning tasks like calculating NAV, which was calculated utilizing BLMIS-supplied numbers, or coordinating with New York counterparts documenting transaction activity, including subscriptions and redemptions, also involving US clients.

21. The e-mail attached as **Exhibit F** hereto is a typical example of the e-mail communication Senator Fund received reflecting the coordination between HSBC personnel in Luxembourg and New York on transaction activity.

22.     Attached hereto as **Exhibit G** is an e-mail dated October 3, 2007, copied to Senator Fund, from Brian Nash of HSBC that instructed his HSSL counterpart to add HSBC New York personnel to "all future correspondence."

23.     The financing and currency hedging transactions with HSBC, which exceeded $100 million, all occurred in New York.

24.     Both Alpha Prime and Senator Fund have significant American investors.

I declare under penalty of perjury under the laws of the United States of America that the foregoing statements are true and correct to the best of my knowledge, information and belief.

Dated: April 8, 2015                                             s/ Peter Fischer
       Vienna, Austria                                             Peter Fischer