# EXHIBIT A

DATED 02 January 2007

(1)     THE BANK OF BERMUDA LIMITED

(2)     HSBC INSTITUTIONAL TRUST SERVICES (BERMUDA) LIMITED

(3)     ALPHA PRIME FUND LIMITED

---

### NOVATION AGREEMENT

---

acknowledge and deliver all such further acts, assurances, assignments, transfers, conveyances, powers of attorney and other instruments or papers as may be reasonably required or appropriate to carry out the transactions contemplated hereby.

## 11.    NOTICE

11.1    Any notice or demand to be given or served hereunder shall be in writing and shall be duly expressed to be a notice or demand hereunder and shall be given or served by registered or recorded delivery post or by hand or courier delivery and shall be deemed to be duly given or served, if posted upon actual receipt by the intended recipient or if delivered by hand or courier at the time of delivery to the intended recipient if such day is a Business Day, or if such day is not a Business Day, on the next following Business Day at its postal address hereunder set out or such postal address as such party shall have previously communicated for such purposes by notice to the party giving such first mentioned notice or demand.  The postal address for the service of notices and demands on each party is as follows:

| The Old Custodian: | Address:<br>Attention: | 6 Front Street, Hamilton HM 11, Bermuda<br>Manager, Alternative Fund Services |
| The New Custodian: | Address:<br>Attention: | 6 Front Street, Hamilton HM 11, Bermuda<br>Manager, Alternative Fund Services |
| The Company: | Address:<br>Attention: | [6 Front Street, Hamilton HM 11, Bermuda]<br>Company Secretary |

11.2    Any party giving or serving a notice or demand hereunder by facsimile or other electronic means shall, but without prejudice to the validity of the notice or demand given, send a copy of the notice or demand by pre-paid registered post to the other party to that party's address hereinbefore set out or to such other address as such other party shall have previously communicated by notice in writing to the party giving such first mentioned notice or demand.

11.3    Any notice served hereunder shall be deemed to have been received by the party so receiving such notice on the Business Day of such receipt only if the notice as been received during usual business hours on such Business Day, and if the notice is received outside usual business hours, it shall be deemed to have been received on the next following Business Day.

## 12.    GOVERNING LAW

This Novation Agreement shall be governed and construed in accordance with the laws of Bermuda.

IN WITNESS whereof the parties have executed this Novation Agreement the day and year first before written.

Signed by
duly authorised signatory of
**THE BANK OF BERMUDA LIMITED**
in the presence of:

Name:            _____

Position:        _____


Signature:       _____

**THIS NOVATION AGREEMENT** is made on the _day of  *january 2001*

**BETWEEN**:

(1)    **THE BANK OF BERMUDA LIMITED** a company incorporated under the laws of Bermuda having its registered office at 6 Front Street, Hamilton HM 11, Bermuda (the "**Old Custodian**");

(2)    **HSBC INSTITUTIONAL TRUST SERVICES (BERMUDA) LIMITED** a company incorporated under the laws of Bermuda having its registered office at 6 Front Street, Hamilton HM 11, Bermuda (the "**New Custodian**");

(3)    Alpha Prime Fund Limited a company incorporated under the laws of Bermuda having its registered office at [6 Front Street, Hamilton HM11, Bermuda] (the "**Company**").

**WHEREAS**:

A.    The Company has been incorporated as an open-ended investment company registered with limited liability in Bermuda under the Companies Act 1981, as amended.

B.    Pursuant to an Original Agreement (as defined below), the Old Custodian was appointed to act as custodian to the Company.

C.    The Company, the Old Custodian and the New Custodian have agreed to the replacement of the Old Custodian as custodian to the Company by the New Custodian subject to the terms and conditions of this Novation Agreement.

**NOW IT IS HEREBY AGREED** as follows:

**1.    DEFINITIONS**

1.1    In this Novation Agreement except where the context otherwise requires the following terms shall have the meaning assigned to them hereunder:

"**Assets**" means all of the cash and securities of the Company held by or under the control of the Old Custodian;

"**Business Day**" means any day on which banks are normally open for business other than a Saturday, Sunday or a bank or public holiday in Bermuda;

"**Effective Date**" means the 2nd day of January 2007; and

"**Original Agreement**" means the Custodian Agreement dated the 12th day of March 2003 and made between the Company and the Old Custodian.

1.2    In this Novation Agreement:

1.2.1    any expression not defined herein shall bear the meaning (if any) ascribed to it in the Original Agreement;

1.2.2    the headings are inserted for convenience of reference only and shall not in any way form part of or affect or be taken into account in the construction or interpretation of any provision of this Novation Agreement;

1.2.3    any reference to the singular includes reference to the plural and vice versa and reference to the masculine gender includes reference to the feminine and neuter genders and vice versa.

**2.    NOVATION AND CHANGE OF CUSTODIAN**

2.1    As and with effect from the Effective Date with the approval of the Company the appointment of the Old Custodian as custodian shall be terminated and the New Custodian shall be appointed in its stead and accordingly:

(b)     debit the Company on the contractual settlement date with the purchase price of
Securities purchased or acquired for the Company and may credit the Company on or
before the contractual settlement date with the relevant Securities pending receipt of
such Securities.

The Company hereby acknowledges that these procedures are of a strictly administrative nature
and do not amount to an agreement by the Custodian to make loans and/or Securities available
to the Company. The Custodian is authorised to reverse any such credit or debit referred to in
this sub-clause.

5.4     In respect of any transaction for which the Custodian determines not to credit the Company on
the contractual settlement date, the proceeds from the sale or exchange of Securities will be
credited to the Company as soon as practical after such proceeds are received and Securities
acquired will be credited on the date of receipt of such Securities by the Custodian."

7.3     Upon the Effective Date, the Original Agreement shall be amended by the addition of the following
clause as Clause 5X:

"5X     **Client Money Regulations**

5X(1)   Subject to Clause 5.1, the Custodian hereby advises the Company in accordance with regulation
6(1) of The Investment Business (Client Money) Regulations 2004 (the "Regulations") that:

(a)     cash received from the Company or for the Company's account shall neither be treated
by the Custodian as, nor deemed to be, client money and therefore will not be subject to
the protections conferred by the Regulations;

(b)     as a consequence, the Company's cash will not be segregated from that of the
Custodian, and may be used by the Custodian in the course of its business;

(c)     by agreeing to this Clause 5X, the Company has hereby given its written consent to the
treatment of its cash by the Custodian outside the Regulations; and

(d)     the Bermuda Monetary Authority has consented to cash held by the Custodian on behalf
of Sophisticated Investors (as defined under the Regulations) being so treated.

5X(2)   The Company shall notify the Custodian in writing (i) it wishes the Custodian to treat its money
as client money or (ii) it ceases to be a Sophisticated Investor under the terms of the
Regulations.

5X(3)   If the Custodian receives a written notification from the Company under Clause 5X(2), the
Custodian may terminate this Agreement forthwith by notice taking immediate effect and shall
transfer the cash it holds for the Company to an account established with a replacement
Custodian nominated by the Company, or to a bank account in the name of the Company with
another bank."

7.4     Upon the Effective Date, the Original Agreement shall be amended by the addition of the following
clause as Clause 20X:

"20X.   **DISCLOSURE OF INFORMATION**

The parties will each pay their own costs and expenses (including legal fees) incurred in connection with this Novation Agreement and as a result of the negotiation, preparation and execution of this Novation Agreement. The New Custodian will bear all the costs, charges and expenses associated or incurred in connection with the transfer of the Assets to the New Custodian.

**6.      INFORMATION ON DOCUMENTS**

6.1      The Old Custodian and the Company shall provide the New Custodian with such information and copies of such documents as the New Custodian may require relating to the custody of the Assets up to and including the Effective Date and in relation to any of the Assets that may be received by the Old Custodian after the Effective Date pursuant to Clause 3.2.

6.2      The Old Custodian shall deliver to the New Custodian (or as it may direct) at the Effective Date or as soon as possible thereafter all deeds, books, documents, circulars, correspondence and papers of the Company or relating to the Assets in its possession or under its control at the Effective Date or as may be received by the Old Custodian or its agents after the Effective Date relating to the performance of its functions as custodian under the Original Agreement. The Old Custodian shall not have a claim or lien in respect of such deeds, books, documents, circulars, correspondence and papers.

6.3      The New Custodian acknowledges the right of the Old Custodian to the production of copies of any of the documents and other items referred in Clause 6.2 above as the Old Custodian may at any time after the Effective Date reasonably require the New Custodian to produce for the protection of the Old Custodian's legitimate business interests and for no other purposes.

6.4      If the Old Custodian or any of its nominees shall, after the Effective Date, receive any notices, reports, circulars, proxies, solicitations or other documents of a like nature relating to the Company, the Old Custodian shall forthwith send the same to the New Custodian and at the expense of the New Custodian do such things in relation thereto as the New Custodian may require in the performance of its duties as custodian of the Assets of the Company.

**7.      AMENDMENTS**

7.1      Upon the Effective Date, the Original Agreement shall be amended in Clause 5.1 by the deletion of the words:

"The Custodian shall open and maintain a separate bank account or bank accounts in its books in the name of the Company and, if requested by the Company and subject to applicable laws, a separate bank account or accounts in the name of the Custodian for the benefit of the Company with such bank or banks and in such place or places as may from time to time be agreed between it and the Company."

and their replacement by the words:

"The Custodian shall open and maintain a separate bank account or bank accounts in the name of the Custodian for the benefit of the Company with a member of the HSBC group and such other bank or banks and in such place or places as the Custodian may from time to time deem appropriate. The Company acknowledges and agrees that, notwithstanding that a bank account may be maintained in the name of the Custodian, any debit balance or other liability arising on or in relation to a bank account shall be the primary obligation of the Company as principal debtor and not as surety, such debit balance or other liability having been incurred pursuant to this Agreement on the Company's behalf as principal by the Custodian acting as its duly authorised agent.

7.2      Upon the Effective Date, the Original Agreement shall be amended by the addition of the following at the end of Clause 5:

"5.3      In connection with any transaction involving Securities held by or to be acquired for the Company, the Custodian may in its discretion (by automatic process or otherwise):-

(a)      credit the Company on the contractual settlement date with the proceeds of any sale or exchange of Securities and may on or before the contractual settlement date transfer the relevant Securities to a separate custody account awaiting delivery; and

2.1.1    the Company releases the Old Custodian from its covenants, undertakings, obligations, duties and liabilities to the Company and the Company agrees that it has no further rights against the Old Custodian under the Original Agreement;

2.1.2    the Old Custodian releases the Company from the Company's covenants, undertakings, obligations, duties and liabilities to the Old Custodian and the Old Custodian agrees that it has no further rights against the Company under the Original Agreement;

2.1.3    the New Custodian agrees to perform the covenants, undertakings, obligations, duties and liabilities of the Old Custodian to the Company under the Original Agreement; and

2.1.4    the Company agrees to perform the covenants, undertakings, obligations, duties and liabilities of the Company under the Original Agreement in favour of the New Custodian.

2.2    For the avoidance of doubt it is hereby agreed that:

2.2.1    the rights, obligations and liabilities assumed by the New Custodian shall include any rights, obligations and liabilities arising as a result of the acts, omissions or default of the Old Custodian prior to the Effective Date;

2.2.2    the New Custodian is substituted for the Old Custodian under the Original Agreement as if the New Custodian had originally been a party to the Original Agreement instead of the Old Custodian and all references in the Original Agreement to the Old Custodian shall be read and construed as if they were references to the New Custodian; and

2.2.3    the Original Agreement, save as novated or expressly amended by this Agreement, shall continue in full force and effect.

## 3.    TRANSFER OF ASSETS

3.1    At the Effective Date (or as soon thereafter as is reasonably practicable) the Old Custodian shall execute any documents or do any acts or things (or direct its nominees so to act) to effect the transfer into the name of the New Custodian (or as it may direct) of the Assets which the New Custodian shall thereafter hold (whether in its own name or in the name or names of its nominee or nominees) as custodian of the Company and subject to the provisions of the Articles of Association of the Company and the terms of the Original Agreement as novated provided that pending any transfer after the Effective Date the Old Custodian shall hold the Assets on behalf of and to the order of and as agent for the New Custodian.

3.2    Should the Old Custodian receive any Assets after the Effective Date, the Old Custodian shall notify the New Custodian immediately of such receipt of Assets and it shall act as agent of the New Custodian and hold such Assets for and on behalf of the New Custodian (on behalf of the Company) pending the transfer to, or vesting of, such Assets in the New Custodian. Any such Assets which are received by the Old Custodian shall be transferred by the Old Custodian to the New Custodian as soon as possible after the date of their receipt by the Old Custodian and such Assets shall thereafter be held by the New Custodian on the terms and conditions of the Original Agreement as novated.

## 4.    REMUNERATION

4.1    The Old Custodian shall be entitled to be remunerated out of the Assets for acting as custodian for the period up to and including the Effective Date at the rate payable immediately prior to the execution of this Novation Agreement but apportioned on a day-to-day basis in respect of such period and shall in respect of such period be entitled to reimbursement out of the Assets for the reasonable expenses properly incurred by it in the performance of its duties as custodian pursuant to the Original Agreement.

4.2    The New Custodian, unless otherwise agreed between the New Custodian and the Company, shall be entitled to be remunerated out of the Assets for acting as custodian after the Effective Date at the existing rate payable to the Old Custodian immediately prior to the execution of this Novation Agreement and thereafter shall be entitled to reimbursement out of the Assets for the reasonable expenses properly incurred by it in the performance of its duties as New Custodian.

## 5.    COSTS AND EXPENSES

20X(1)  The Custodian will treat information about the Company, the Securities or any of the services provided by the Custodian to the Company (**"Confidential Information"**) as secret and confidential and will not, without the Company's prior written consent or authority, disclose to any third party the Confidential Information except in the following circumstances (in which case the Confidential Information may be disclosed to third parties, including members of the HSBC Group):

(a)  where necessary to perform the Custodian's obligations under this Agreement; or

(b)  where the Custodian is under a legal or regulatory obligation to do so, or where the law permits it in certain limited circumstances to do so, or the Custodian has been requested to do so by any legal, regulatory, governmental or fiscal body in any jurisdiction.

20X(2)  The Custodian may collect, use and disclose personal data about individuals associated with the Company, so that the Custodian can carry out its obligations to the Company and for other related purposes, including monitoring and analysis of its business, fraud and crime prevention, money laundering, legal and regulatory compliance, and the marketing by the Custodian or members of the HSBC Group of other services. The Custodian will keep the personal data up to date. The Custodian may also transfer the personal data to any country to process information on the Custodian's behalf. Wherever it is processed, the personal data will be protected by a strict code of secrecy and security to which all members of the HSBC Group, their staff and any third parties are subject to and will only be used in accordance with the Custodian's instructions."

7.5  Upon the Effective Date, the Original Agreement shall be amended by the addition of the following clause at the end of the Termination Clause:

"In the event that Securities remain in the safekeeping of the Custodian or its agents when notice taking immediate effect is given or following the final day of any notice period (the "Termination Date"), the Custodian and the Company hereby agree that the Custodian shall be paid the fees as set out in this Agreement on any assets remaining in its safekeeping up to the date of their transfer. The Company acknowledges that following the Termination Date, the Custodian will not provide any trade settlement, corporate action or other custody-related services in relation to such Securities, other than safekeeping and/or the re-registration of such Securities in the name of the Company or the replacement custodian."

7.6  Upon the Effective Date, the Original Agreement shall be amended by the deletion of the existing wording on Assignment and the substitution of the following wording:

"This Agreement may not be assigned by any party hereto without the written consent (such consent not to be unreasonably withheld or delayed) of the other party save that the Custodian may with notice, assign, without the consent of the other party hereto, all of its rights and obligations under this Agreement upon a merger, sale or other transfer by way of operation of law between the Custodian and HSBC Holdings plc or any affiliate of HSBC Holdings plc."

**8.  COUNTERPARTS**

This Novation Agreement may be executed in any number of counterparts and by the different parties hereto on separate counterparts each of which when executed and delivered shall constitute an original and all such counterparts together constituting but one and the same instrument.

**9.  ASSIGNMENT**

Neither the rights nor the obligations of any party under or arising out of this Novation Agreement may be assigned, novated, transferred or otherwise disposed of in whole or in part by any party hereto without the written consent (such consent not to be unreasonably withheld or delayed) of the other parties save that the New Custodian may with notice, assign, without the consent of the other parties hereto, all of its rights and obligations under this Agreement upon a merger, sale or other transfer by way of operation of law between the New Custodian and HSBC Holdings plc or any affiliate of HSBC Holdings plc.

**10.  FURTHER ASSURANCES**

From and after the date hereof, upon request of any party hereto, each other party shall do, execute,

## TABLE OF CONTENTS

1.  DEFINITIONS ................................................................................................................................3

2.  NOVATION AND CHANGE OF CUSTODIAN ........................................................................3

3.  TRANSFER OF ASSETS ...........................................................................................................4

4.  REMUNERATION .......................................................................................................................4

5.  COSTS AND EXPENSES ...........................................................................................................4

6.  INFORMATION ON DOCUMENTS ..........................................................................................5

7.  AMENDMENTS ...........................................................................................................................5

8.  COUNTERPARTS .......................................................................................................................7

9.  ASSIGNMENT .............................................................................................................................7

10. FURTHER ASSURANCES .........................................................................................................7

11. NOTICE .........................................................................................................................................8

12. GOVERNING LAW ......................................................................................................................8

Signed by _____
duly authorised signatory of
**HSBC INSTITUTIONAL TRUST SERVICES (BERMUDA) LIMITED**
in the presence of:

Name:    _____

Position:    _____


Signature:    _____


Signed by _____
duly authorised signatory of
**ALPHA PRIME FUND LIMITED**
in the presence of:

Name:    P. FISCHER    RADEL

Position:    DIRECTOR


Signature:    _____


*Alpha Prime*
**Signature verified by:** Carla Portillo
**on:** 21/02/07