# EXHIBIT B

DATED 02 January 2007

(1)   THE BANK OF BERMUDA LIMITED

(2)   HSBC SECURITIES SERVICES (BERMUDA) LIMITED

(3)   ALPHA PRIME FUND LIMITED

---

**NOVATION AGREEMENT**

---

Holdings plc.

## 9. FURTHER ASSURANCES

From and after the date hereof, upon request of any party hereto, each other party shall do, execute, acknowledge and deliver all such further acts, assurances, assignments, transfers, conveyances, powers of attorney and other instruments or papers as may be reasonably required or appropriate to carry out the transactions contemplated hereby.

## 10. NOTICE

10.1 Any notice or demand to be given or served hereunder shall be in writing and shall be duly expressed to be a notice or demand hereunder and shall be given or served by registered or recorded delivery post or by hand or courier delivery and shall be deemed to be duly given or served, if posted upon actual receipt by the intended recipient or if delivered by hand or courier at the time of delivery to the intended recipient if such day is a Business Day, or if such day is not a Business Day, on the next following Business Day at its postal address hereunder set out or such postal address as such party shall have previously communicated for such purposes by notice to the party giving such first mentioned notice or demand. The postal address for the service of notices and demands on each party is as follows:

| | | |
|---|---|---|
| The Old Administrator: | Address: | 6 Front Street, Hamilton HM 11, Bermuda |
| | Attention: | Manager, Alternative Fund Services |
| The New Administrator: | Address: | 6 Front Street, Hamilton HM 11, Bermuda |
| | Attention: | Manager, Alternative Fund Services |
| The Company: | Address: | 6 Front Street, Hamilton HM 11, Bermuda |
| | Attention: | Company Secretary |

10.2 Any party giving or serving a notice or demand hereunder by facsimile or other electronic means shall, but without prejudice to the validity of the notice or demand given, send a copy of the notice or demand by pre-paid registered post to the other party to that party's address hereinbefore set out or to such other address as such other party shall have previously communicated by notice in writing to the party giving such first mentioned notice or demand.

10.3 Any notice served hereunder shall be deemed to have been received by the party so receiving such notice on the Business Day of such receipt only if the notice as been received during usual business hours on such Business Day, and if the notice is received outside usual business hours, it shall be deemed to have been received on the next following Business Day.

## 11. GOVERNING LAW

This Novation Agreement shall be governed and construed in accordance with the laws of Bermuda.

THIS NOVATION AGREEMENT is made on the 2 day of January 2007

BETWEEN:

(1) **THE BANK OF BERMUDA LIMITED** a company incorporated under the laws of Bermuda having its registered office at 6 Front Street, Hamilton HM 11, Bermuda (the "**Old Administrator**");

(2) **HSBC SECURTIES SERVICES (BERMUDA) LIMITED** a company incorporated under the laws of Bermuda having its registered office at 6 Front Street, Hamilton HM 11, Bermuda (the "**New Administrator**");

(3) Alpha Prime Fund Limited a company incorporated under the laws of Bermuda having its registered office at 6 Front Street, Hamilton HM 11, Bermuda (the "**Company**").

**WHEREAS:**

A. The Company has been incorporated as an open-ended investment company registered with limited liability in Bermuda under the Companies Act 1981, as amended.

B. Pursuant to an Original Agreement (as defined below), the Old Administrator was appointed to act as administrator to the Company.

C. The Company, the Old Administrator and the New Administrator have agreed to the replacement of the Old Administrator as administrator to the Company by the New Administrator subject to the terms and conditions of this Novation Agreement.

**NOW IT IS HEREBY AGREED** as follows:

**1. DEFINITIONS**

1.1 In this Novation Agreement except where the context otherwise requires the following terms shall have the meaning assigned to them hereunder:

"**Business Day**" means any day on which banks are normally open for business other than a Saturday, Sunday or a bank or public holiday in Bermuda;

"**Effective Date**" means the 2 day of January 2007; and

"**Original Agreement**" means the Administration Agreement dated the 12th day of March 2003 and made between the Company and the Old Administrator.

1.2 In this Novation Agreement:

1.2.1 any expression not defined herein shall bear the meaning (if any) ascribed to it in the Original Agreement;

1.2.2 the headings are inserted for convenience of reference only and shall not in any way form part of or affect or be taken into account in the construction or interpretation of any provision of this Novation Agreement;

1.2.3 any reference to the singular includes reference to the plural and vice versa and reference to the masculine gender includes reference to the feminine and neuter genders and vice versa.

**2. NOVATION AND CHANGE OF ADMINISTRATOR**

2.1 As and with effect from the Effective Date with the approval of the Company the appointment of the Old Administrator as administrator shall be terminated and the New Administrator shall be appointed in its stead and accordingly:

2.1.1 the Company releases the Old Administrator from its covenants, undertakings, obligations, duties and liabilities to the Company and the Company agrees that it has no further rights against the Old Administrator under the Original Agreement;

    2.1.2    the Old Administrator releases the Company from the Company's covenants, undertakings, obligations, duties and liabilities to the Old Administrator and the Old Administrator agrees that it has no further rights against the Company under the Original Agreement;

    2.1.3    the New Administrator agrees with the Company to perform the covenants, undertakings, obligations, duties and liabilities of the Old Administrator to the Company under the Original Agreement;

    2.1.4    the Company agrees with the New Administrator to perform the covenants, undertakings, obligations, duties and liabilities of the Company under the Original Agreement.

2.2    For the avoidance of doubt it is hereby agreed that:

2.2.1    the rights, obligations and liabilities assumed by the New Administrator shall include any rights, obligations and liabilities arising as a result of the acts, omissions or default of the Old Administrator prior to the Effective Date;

2.2.2    the New Administrator is substituted for the Old Administrator under the Original Agreement as if the New Administrator had originally been a party to the Original Agreement instead of the Old Administrator and all references in the Original Agreement to the Old Administrator shall be read and construed as if they were references to the New Administrator; and

2.2.3    the Original Agreement, save as novated or expressly amended by this Agreement, shall continue in full force and effect.

## 3. REMUNERATION

3.1    The Old Administrator shall be entitled to be remunerated by the Company for acting as administrator for the period up to and including the Effective Date at the rate payable immediately prior to the execution of this Novation Agreement but apportioned on a day-to-day basis in respect of such period and shall in respect of such period be entitled to reimbursement by the Company for the reasonable expenses properly incurred by it in the performance of its duties as administrator pursuant to the Original Agreement.

3.2    The New Administrator, unless otherwise agreed between the New Administrator and the Company, shall be entitled to be remunerated by the Company for acting as administrator after the Effective Date at the existing rate payable to the Old Administrator immediately prior to the execution of this Novation Agreement and thereafter shall be entitled to reimbursement by the Company for the reasonable expenses properly incurred by it in the performance of its duties as New Administrator.

## 4. COSTS AND EXPENSES

The parties will each pay their own costs and expenses (including legal fees) incurred in connection with this Novation Agreement and as a result of the negotiation, preparation and execution of this Novation Agreement.

## 5. INFORMATION ON DOCUMENTS

5.1    The Old Administrator and the Company shall provide the New Administrator with such information and copies of such documents as the New Administrator may require relating to the administration of the Company up to and including the Effective Date.

5.2    The Old Administrator shall deliver to the New Administrator (or as it may direct) at the Effective Date or as soon as possible thereafter all deeds, books, documents, circulars, correspondence and papers of the Company in its possession or under its control at the Effective Date or as may be received by the Old Administrator or its agents after the Effective Date relating to the performance of its functions as administrator under the Original Agreement. The Old Administrator shall not have a claim or lien in respect of such deeds, books, documents, circulars, correspondence and papers.

5.3    The New Administrator acknowledges the right of the Old Administrator to the production of copies of any of the documents and other items referred in Clause 5.2 above as the Old Administrator may at any time after the Effective Date reasonably require the New Administrator to produce for the protection of

the Old Administrator's legitimate business interests and for no other purposes.

5.4 If the Old Administrator shall, after the Effective Date, receive any subscription documents, transfer forms, redemption notices, reports, circulars, or other documents of a like nature relating to the Company, the Old Administrator shall forthwith send the same to the New Administrator.

## 6. AMENDMENTS

6.1 Upon the Effective Date, the Original Agreement shall be amended by the addition of the following clause as Clause 12X:

### "12X. DISCLOSURE OF INFORMATION

12X(1) The Administrator will treat information about the Company, the Securities or any of the services provided by the Administrator to the Company ("**Confidential Information**") as secret and confidential and will not, without the Company's prior written consent or authority, disclose to any third party the Confidential Information except in the following circumstances (in which case the Confidential Information may be disclosed to third parties, including members of the HSBC Group):

   (a) where necessary to perform the Administrator's obligations under this Agreement; or

   (b) where the Administrator is under a legal or regulatory obligation to do so, or where the law permits it in certain limited circumstances to do so, or the Administrator has been requested to do so by any legal, regulatory, governmental or fiscal body in any jurisdiction.

12X(2) The Administrator may collect, use and disclose personal data about individuals associated with the Company, so that the Administrator can carry out its obligations to the Company and for other related purposes, including monitoring and analysis of its business, fraud and crime prevention, money laundering, legal and regulatory compliance, and the marketing by the Administrator or members of the HSBC Group of other services. The Administrator will keep the personal data up to date. The Administrator may also transfer the personal data to any country to process information on the Administrator's behalf. Wherever it is processed, the personal data will be protected by a strict code of secrecy and security to which all members of the HSBC Group, their staff and any third parties are subject to and will only be used in accordance with the Administrator's instructions."

6.2 Upon the Effective Date, the Original Agreement shall be amended by the deletion of the existing wording on Assignment and the substitution of the following wording:

"This Agreement may not be assigned by any party hereto without the written consent (such consent not to be unreasonably withheld or delayed) of the other party save that the Administrator may with notice, assign, without the consent of the other party hereto, all of its rights and obligations under this Agreement upon a merger, sale or other transfer by way of operation of law between the Administrator and HSBC Holdings plc or any affiliate of HSBC Holdings plc."

## 7. COUNTERPARTS

This Novation Agreement may be executed in any number of counterparts and by the different parties hereto on separate counterparts each of which when executed and delivered shall constitute an original and all such counterparts together constituting but one and the same instrument.

## 8. ASSIGNMENT

Neither the rights nor the obligations of any party under or arising out of this Novation Agreement may be assigned, novated, transferred or otherwise disposed of in whole or in part by any party hereto without the written consent (such consent not to be unreasonably withheld or delayed) of the other parties save that the New Administrator may with notice, assign, without the consent of the other parties hereto, all of its rights and obligations under this Agreement upon a merger, sale or other transfer by way of operation of law between the New Administrator and HSBC Holdings plc or any affiliate of HSBC

## TABLE OF CONTENTS

1. DEFINITIONS .................................................................................................................. 3
2. NOVATION AND CHANGE OF ADMINISTRATOR ....................................................... 3
3. REMUNERATION ............................................................................................................ 4
4. COSTS AND EXPENSES ............................................................................................... 4
5. INFORMATION ON DOCUMENTS ................................................................................. 4
6. AMENDMENTS ............................................................................................................... 5
7. COUNTERPARTS ........................................................................................................... 5
8. ASSIGNMENT ................................................................................................................. 5
9. FURTHER ASSURANCES .............................................................................................. 6
10. NOTICE ........................................................................................................................... 6
11. GOVERNING LAW .......................................................................................................... 6

IN WITNESS whereof the parties have executed this Novation Agreement the day and year first before written.

Signed by _____
duly authorised signatory of
**THE BANK OF BERMUDA LIMITED**
in the presence of:

Name:       CAROL-ANN SPENCER

Position:   SENIOR SECRETARY

Signature:  CASpencer


Signed by _____
duly authorised signatory of
**HSBC SECURITIES SERVICES (BERMUDA) LIMITED**
in the presence of:

Name:       CAROL-ANN SPENCER

Position:   SENIOR SECRETARY

Signature:  CASpencer


Signed by _____
duly authorised signatory of
**ALPHA PRIME FUND**
in the presence of:

Name:       P. FISCHER   RABEL

Position:   DIRECTOR

Signature:  _____


Alpha Prime
Signature verified by: Conla Portillo
on: 21/02/07