UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>Plaintiff-Applicant,<br><br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>Defendant.<br>In re:<br><br>BERNARD L. MADOFF,<br><br>Debtor. | Adv. Pro. No. 08-01789 (SMB)<br><br>SIPA Liquidation<br><br>(Substantively Consolidated) |

**AFFIDAVIT OF VINEET SEHGAL IN SUPPORT OF THE TRUSTEE'S MOTION FOR AN ORDER APPROVING THE SIXTH ALLOCATION OF PROPERTY TO THE FUND OF CUSTOMER PROPERTY AND AUTHORIZING SIXTH INTERIM DISTRIBUTION TO CUSTOMERS**

CITY OF WASHINGTON            )
                              )  ss:
DISTRICT OF COLUMBIA          )

Vineet Sehgal, being duly sworn, deposes and says:

1.    I am a Managing Director at AlixPartners LLP ("AlixPartners"). I make this affidavit to transmit to the Court information relevant to the motion by Irving H. Picard, trustee (the "Trustee") for the liquidation of the business of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa *et seq.* ("SIPA"),[1] and the substantively consolidated estate of Bernard L. Madoff ("Madoff") (collectively, "Debtor"), for an Order Approving the Trustee's Sixth Allocation of Property to

---

[1] For convenience, subsequent references to sections of the Act shall follow the form: "SIPA § __."

1

the Fund of Customer Property and Authorizing Sixth Interim Distribution to Customers (the "Motion").

2.    AlixPartners has served as the Trustee's Claims Agent and as the accountant for the BLMIS estate since December of 2008 pursuant to SIPA § 78fff-1(a)(1).  As the Claims Agent, AlixPartners was responsible for both mailing the notice of the liquidation and claim forms to potential claimants and causing the notice of the liquidation to be published. AlixPartners has also been responsible for processing all claims submitted to the Trustee and assisting the Trustee in reviewing each customer claim filed to determine whether the asserted claim amount agrees with the "net equity" for that account.  In addition, as the accountants for the BLMIS estate, AlixPartners has assisted and continues to assist the Trustee in accounting for the assets of the BLMIS estate, including the cash and cash equivalents available to the Trustee.

3.    I have been actively involved in the liquidation of BLMIS and the claims process since December 2008 and have personal knowledge of the matters set forth herein.

**The Claims Process**

4.    To date, the Trustee has received 16,519 customer claims.  To date, the Trustee has determined 16,397 of those claims.  The Trustee allowed 2,552 claims and committed to pay approximately $824.3 million in funds advanced to him by SIPC.  To date, the allowed claims total approximately $13.568 billion.  The Trustee denied 12,965 claims that were purported to be customer claims.  Twelve other claims were filed that asserted no claim.  Another 868 claims have been withdrawn.

5.    One hundred twenty-two claims are currently categorized as "deemed determined," meaning that the Trustee has instituted litigation against those claimants.

6.    To date, the Trustee has received 427 timely and 22 untimely filed secured priority and unsecured non-priority general creditor claims totaling approximately $1.743 billion.

2

The claimants include vendors, taxing authorities, employees, and customers filing claims on non-customer proof of claim forms. Of these 449 claims, 94 are general creditor claims and 49 are broker-dealer claims, which together total approximately $264.975 million of the $1.743 billion.

7. 2,192 docketed objections have been filed to the Trustee's claims determinations relating to 3,817 claims, which will be noticed for hearing as necessary. These 2,192 objections relate to 1,104 BLMIS accounts.

### Recoveries by the Trustee

8. The Trustee previously filed five motions seeking entry of an order approving allocations of property to the fund of customer property (the "Customer Fund") and authorizing pro rata interim distributions of Customer Property, and this Court entered orders approving those motions:

| No. of Distribution | Date of Distribution | Amount Allocated | Amount Distributed | Percentage Distributed | ECF No. for Motion | ECF No. for Order |
|---|---|---|---|---|---|---|
| 1 | 10/05/2011 | $2.618 billion | $615.813 million | 4.602% | 4048 | 4217 |
| 2 | 09/19/2012 | $5.501 billion | $4.472 billion | 33.556% | 4930 | 4997 |
| 3 | 03/29/2013 | $1.198 billion | $625.120 million | 4.721% | 5230 | 5271 |
| 4 | 05/05/2014 | $477.504 million | $420.300 million | 3.180% | 6024 | 6340 |
| 5 | 02/06/2015 | $704.396 million | $362.071 million | 2.743% | 8860 | 9014 |

9. The amounts previously distributed as outlined in each of the First through Fifth Allocation Motions change as additional accounts are determined. Below is a summary of the amounts allocated and distributed, as of April 15, 2015:

3

| No. | Amount Allocated | Reserve From Previous[2] | Amount Available for Distribution | Allocation for Allowed Claims[3] | Allocation for Deemed Determined Claims[4] | SIPC Subrogation | Other Reserves[5] |
|---|---|---|---|---|---|---|---|
| 1 | $2.618 billion | N/A | $2.618 billion | $615.813 million | $210.488 million | $8.591 million | $1.783 billion |
| 2 | $5.501 billion | $1.783 billion | $7.284 billion | $4.472 billion | $1.535 billion | $80.863 million | $1.197 billion |
| 3 | $1.198 billion | $1.197 billion | $2.395 billion | $625.120 million | $215.931 million | $15.430 million | $1.538 billion |
| 4 | $477.504 million | $1.538 billion | $2.016 billion | $420.300 million | $145.448 million | $11.166 million | $1.439 billion |
| 5 | $756.538 million[6] | $1.439 billion | $2.195 billion | $362.071 million | $125.460 million | $10.102 million | $1.698 billion |

10. The Trustee seeks approval to release the bulk of the Time-Based Damages reserve and distribute such funds under the terms set forth in the Sixth Allocation Motion and as further described below.

11. For purposes of determining each customer's "net equity," the Trustee credited the amount of cash deposited by the customer into his BLMIS account, less any amounts already withdrawn from that BLMIS customer account (the "cash in, cash out method" or the "Trustee's Net Investment Method"). Some claimants argued that the Trustee was required to allow customer claims in the amounts shown on the November 30, 2008 customer statements (the "Last Statement Method," creating the "Net Equity Dispute"). Litigation over the Net Equity Dispute proceeded through this Court, the Second Circuit, and the Supreme Court of the United States (the "Supreme Court"). The Trustee's Net Investment Method was upheld.

---

[2] Reserve from Previous represents amounts that were reserved in the prior allocation.
[3] Allocation for Allowed Claims represents the amount allocated for claims that have been allowed.
[4] Allocation for Deemed Determined Claims represents amounts allocated and reserved for claims that are currently in litigation with the Trustee.
[5] Other Reserves represents all funds that are reserved for various issues, including the 3% Reserve for the Time-Based Damages litigation.
[6] The total amount allocated in the Fifth Allocation Motion was $704,395,951.58. Between the filing of that motion and the Fifth Interim Distribution date, an additional $52,142,279.87 was recovered and included in the numerator.

4

12. On June 25, 2012, the Supreme Court denied two petitions for a writ of certiorari to the Second Circuit; a third petition was withdrawn. Thus, a final nonappealable order has been entered on the Net Equity Dispute, upholding the Trustee's Net Investment Method and making those funds that had previously been held in reserve for this issue available for distribution, contingent upon other reserves.

13. At the time of the Second Allocation and Second Interim Distribution, a final, nonappealable order had been entered on the Net Equity Dispute, upholding the Trustee's Net Investment Method. As a result of that ruling, a separate but related question of whether claimants are entitled to an increase of their claims based on the time that elapsed while their monies were deposited with BLMIS ("Time-Based Damages") was relevant to the Second Allocation Motion (the "Time-Based Damages Dispute"). In its order approving the Second Allocation Motion, the Court required the Trustee to maintain a reserve for the Time-Based Damages Dispute at not less than 3% ("the 3% Reserve").

14. On September 10, 2013, Judge Lifland held a hearing on the Time-Based Damages Dispute and granted the Trustee's motion, finding that claimants were not entitled to Time-Based Damages as part of their net equity claims against the fund of customer property (the "Time-Based Damages Decision"). On September 24, 2013, the Court certified the Time-Based Damages Decision for a direct appeal to the Second Circuit, which was accepted on January 22, 2014. The Second Circuit affirmed the Time-Based Decision on February 20, 2015. No petitions for a writ of certiorari to the Supreme Court have been filed to date.

15. Under the terms of Judge Lifland's order requiring the 3% Reserve, the Trustee set a Time-Based Damages reserve and allocated such reserve to the Customer Fund as part of the total amount allocated to the Customer Fund in the Second through Fifth Allocations and

5

Interim Distributions. Of the total amount allocated to the Customer Fund in the Second through the Fifth Allocations, the Trustee reserved $1,444,937,833.62 for Time-Based Damages. Since the Fifth Allocation, an additional $3,779,791.64 has been added to the Time-Based Damages reserve, bringing the total reserve amount to $1,448,717,625.26.

16. The Trustee seeks this Court's approval to: (i) re-allocate $1,444,937,833.62 to the Customer Fund, plus an additional $3,779,791.64, for a total of $1,448,717,625.26, and (ii) release $1,248,717,625.26 for distribution, as further described below and in the Sixth Allocation Motion. These funds were derived from the Time-Based Damages reserve. Therefore, the total amount available for the Sixth Interim Distribution will be $1,448,717,625.26. Of this amount, $200,000,000.00 must be held in the general reserve, resulting in the numerator of $1,248,717,625.26, which is the amount available for distribution.

17. Of the $1,248,717,625.26 numerator, $903,979,820.12 will be distributed as part of the Sixth Allocation to allowed accounts, and SIPC subrogation for allowed accounts in the amount of $29,798,353.43[7] will be released to SIPC. For deemed determined accounts, $314,817,377.56 will be reserved.

18. The table below summarizes this calculation.

---

[7] An additional $113,920.14 of SIPC subrogation associated with the Sixth Interim Distribution for accounts that have not returned the necessary paperwork required to receive their SIPC advance will be held in reserve.

6

| Category | Amount |
|---|---|
| **Time-Based Damages Reserve Through Fifth Allocation** | **$1,444,937,833.62** |
| Addition to Time-Based Damages Reserve After Fifth Allocation | $3,779,791.64 |
| **Amount Available for Sixth Interim Distribution** | **$1,448,717,625.26** |
| General Reserve | $200,000,000.00 |
| **Amount Available for Sixth Interim Distribution After General Reserve** | **$1,248,717,625.26** |

### The Net Investment Method Denominator

19.    The Trustee's Net Investment Method Denominator is the allowed amount of all accounts that have an allowed claim plus the net cash balance for all accounts into which more funds were deposited than withdrawn for which a claim has been filed, but not yet allowed. As of April 15, 2015, the Trustee's Net Investment Method denominator is $18,141,936,238.30. This number is subject to change as additional accounts are determined.

### Interim Calculation of *Pro Rata* Share
### Distribution of Customer Fund

20.    As set forth above, the total amount available for the Sixth Interim Distribution will be $1,448,717,625.26. Of that amount, $903,979,820.12 is available for distribution (the "Net Customer Fund"). The difference between those amounts—$544,737,805.14—represents the general reserve, reserves for deemed determined accounts, and reserves related to the net equity clause, as well as certain other settlements.

21.    The Denominator is $18,141,936,238.30. To determine the percentage of each allowed customer net equity claim that can be satisfied from the Customer Fund, the Net Customer Fund is divided by the Denominator, resulting in the following percentage:

7

$$\frac{\$1{,}248{,}717{,}625.26 \text{ (Net Customer Fund)}}{\$18{,}141{,}936{,}238.30 \text{ (Denominator)}} = 6.883\%$$

22.  A total of 1,057 accounts will receive a distribution of approximately 6.883% of their net equity claims, unless the account becomes fully satisfied. Of these 1,057 accounts, 93 will become fully satisfied, bringing the total of fully satisfied account holders to 1,252 (964 accounts will remain partially satisfied and will be entitled to participate in future distributions).

23.  An additional 82 accounts that are currently "deemed determined" could receive a distribution if and when the status of their claims moves from "deemed determined" to allowed. Thirty-five of the 82 accounts would be fully satisfied by the SIPC advance. The remaining 47 accounts would receive both a SIPC advance and a distribution in accordance with the Trustee's Motion and his earlier distribution motions. Ten of the remaining 47 accounts would be fully satisfied by the First through Sixth Interim Distributions.

24.     Upon approval of the Motion, each customer's ratable share of the Net Customer Fund should be no less than 55.685% of the customer's net equity claim, which includes the 4.602% customers received subject to the First Allocation and First Interim Distribution, the 33.556% customers received subject to the Second Allocation and Second Interim Distribution, the 4.721% customers received subject to the Third Allocation and Third Interim Distribution, the 3.180% customers received subject to the Fourth Allocation and Fourth Interim Distribution, and the 2.743% customers received subject to the Fifth Allocation and Fifth Interim Distribution.[8]

By: */s/ Vineet Sehgal*
Vineet Sehgal

City of Washington
District of Columbia

Subscribed and sworn to me (or affirmed) before me, Tiphanie Hill, Notary Public, on this 15th day of April, 2015 by Vineet Sehgal, proved to me on the basis of satisfactory evidence to be the person who appeared before me.

WITNESS my hand and official seal.

*/s/ Tiphanie Hill*
Tiphanie Hill, Notary Public
Qualified in District of Columbia
*Commission Expires: July 31, 2018*

---

[8] Each customer's ratable share may be less than 55.685% for those BLMIS accounts that are fully satisfied.

9