| | |
|---|---|
| **Baker & Hostetler LLP** | **Hearing Date: May 20, 2015 at 10:00 a.m.** |
| 45 Rockefeller Plaza | **Objection Deadline: May 13, 2015 at 5:00 p.m.** |
| New York, NY 10111 | |
| Telephone: (212) 589-4200 | |
| Facsimile: (212) 589-4201 | |
| David J. Sheehan | |
| Keith R. Murphy | |
| Nicholas J. Cremona | |

*Attorneys for Irving H. Picard, Trustee for the
Substantively Consolidated SIPA Liquidation of
Bernard L. Madoff Investment Securities LLC and
the estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (SMB) |
| Plaintiff-Applicant, | SIPA LIQUIDATION |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | |
| Plaintiff, | Adv. Pro. No. 10-04459 (SMB) |
| v. | |
| DAWN PASCUCCI BARNARD, | |
| TRUST FBO MICHAEL A. PASCUCCI UA DTD 12/31/94 MICHAEL C PASCUCCI CHRISTOPHER S PASCUCCI, | |
| MICHAEL A. PASCUCCI, | |

| | |
|---|---|
| MICHAEL C. PASCUCCI,<br><br>CHRISTOPHER S. PASCUCCI,<br><br>RALPH P. PASCUCCI,<br><br>PASCUCCI FAMILY FOUNDATION,<br><br>JOCELYN A. PASCUCCI,<br><br>CHRISTOPHER S. PASCUCCI 1995 CHARITABLE REMAINDER TRUST UAD 11/7/95,<br><br>THE DAWN A. PASCUCCI BARNARD 1995 CHARITABLE REMAINDER TST UAD 11/7/95,<br><br>FUND FOR THE POOR, INC.,<br><br>CSP INVESTMENT ASSOCIATES LLC,<br><br>RPP INVESTMENT ASSOCIATES LLC, and<br><br>MCP INVESTMENT ASSOCIATES LLC,<br><br>          Defendants. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>Plaintiff,<br><br>v.<br><br>JD PARTNERS LLC, JOHN A. DANZI, DEBORAH DANZI, and JANICE DANZI SENNELLO,<br><br>          Defendants. | Adv. Pro. No. 10-04461 (SMB) |

|  |  |
|---|---|
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>Plaintiff,<br><br>v.<br><br>MAF ASSOCIATES, LLC,<br>MARK A. FREEMAN, and<br>FRANCINE FREEMAN,<br><br>           Defendants. | Adv. Pro. No. 10-05235 (SMB) |

**MOTION FOR ENTRY OF AN ORDER PURSUANT TO SECTION 105(a) OF THE BANKRUPTCY CODE AND RULES 2002 AND 9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE APPROVING A SETTLEMENT BY AND AMONG THE TRUSTEE AND DAWN PASCUCCI BARNARD, TRUST FBO MICHAEL A. PASCUCCI UA DTD 12/31/94, MICHAEL A. PASCUCCI, MICHAEL C. PASCUCCI, CHRISTOPHER S. PASCUCCI, RALPH P. PASCUCCI, PASCUCCI FAMILY FOUNDATION, JOCELYN A. PASCUCCI, CHRISTOPHER S. PASCUCCI 1995 CHARITABLE REMAINDER TRUST UAD 11/7/95, THE DAWN A. PASCUCCI BARNARD 1995 CHARITABLE REMAINDER TST UAD 11/7/95, FUND FOR THE POOR, INC., CSP INVESTMENT ASSOCIATES LLC, RPP INVESTMENT ASSOCIATES LLC, MCP INVESTMENT ASSOCIATES LLC, JD PARTNERS LLC, JOHN A. DANZI, DEBORAH DANZI, JANICE DANZI SENNELLO, <u>MAF ASSOCIATES, LLC, MARK A. FREEMAN AND FRANCINE FREEMAN</u>**

TO:    THE HONORABLE STUART M. BERNSTEIN
          UNITED STATES BANKRUPTCY JUDGE

Irving H. Picard (the "Trustee"), as trustee for the substantively consolidated liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protections Act ("SIPA"), 15 U.S.C. § 78aaa *et seq*., and the estate of Bernard L. Madoff ("Madoff," and together with BLMIS, the "Debtors"), by and through the Trustee's undersigned counsel, submits this motion (the "Motion") seeking entry of an order ("Approval Order") pursuant to section 105(a) of title 11, United States Code, 11 U.S.C. § 101 *et seq.* (the "Bankruptcy Code"), and Rules 2002 and 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), approving a settlement, the terms and conditions of which are set forth

in the Settlement Agreement (the "Agreement")[1] by and among the Trustee and Dawn Pascucci Barnard, Trust FBO Michael A. Pascucci UA DTD 12/31/94, Michael A. Pascucci, Michael C. Pascucci, Christopher S. Pascucci, Ralph P. Pascucci, Pascucci Family Foundation, Jocelyn A. Pascucci, Christopher S. Pascucci 1995 Charitable Remainder Trust UAD 11/7/95, The Dawn A. Pascucci Barnard 1995 Charitable Remainder Tst UAD 11/7/95, Fund for the Poor, Inc., CSP Investment Associates LLC, RPP Investment Associates LLC, MCP Investment Associates LLC (collectively, the "Pascucci Transferees"), JD Partners LLC, John A. Danzi, Deborah Danzi, Janice Danzi Sennello (collectively, the "JD Partners Transferees"), MAF Associates, LLC, Mark A. Freeman and Francine Freeman (the "MAF Associates Transferees", together with the Pascucci Transferees and the JD Partners Transferees, the "Transferees"; each of the Trustee and Transferees a "Party" and collectively, the "Parties"). In support of the Motion, the Trustee respectfully represents as follows:

## PRELIMINARY STATEMENT

The Trustee commenced an action against the Pascucci Transferees in Adversary Proceeding No. 10-04459 to recover allegedly avoidable transfers made by BLMIS to the Pascucci Transferees regarding BLMIS Account Nos. 1CM258, 1CM348, 1CM349, 1CM350, 1CM351, 1CM427, 1CM436, 1CM536, 1CM537 and 1CM574 (the "Pascucci Accounts").

The Trustee commenced an action against the JD Partners Transferees in Adversary Proceeding No. 10-04461 to recover allegedly avoidable transfers made by BLMIS to the JD Partners Transferees regarding BLMIS Account No. 1CM347 (the "JD Partners Account").

The Trustee commenced an action against the MAF Associates Transferees in Adversary Proceeding No. 10-05235 to recover allegedly avoidable transfers made by BLMIS to the MAF

---

[1] The form of Agreement is annexed hereto as Exhibit "A."

2

Associates Transferees regarding BLMIS Account No. 1F0084 (the "MAF Associates Account," together with the Pascucci Accounts and JD Partners Account, the "BLMIS Accounts").

After extensive settlement negotiations among the Parties commencing in December 2014 through April 2015, the Trustee and the Transferees negotiated in good faith a complete settlement as to all disputes raised in the Adversary Proceedings against the Transferees. Under the Agreement, the Transferees will pay the Trustee a total of $11,100,000 (the "Settlement Payment"). The Agreement will benefit the fund of customer property, as the Settlement Payment will increase the funds available for distribution to BLMIS customers with allowed claims.

The Trustee respectfully requests that the Court approve this settlement.

## BACKGROUND AND RELEVANT PROCEDURAL HISTORY

*The Commencement of the BLMIS Liquidation Proceeding*

1. On December 11, 2008 (the "Filing Date"), the Securities and Exchange Commission ("SEC") filed a complaint in the United States District Court for the Southern District of New York (the "District Court") against the Debtors (Case No. 08 CV 10791). In the complaint, the SEC alleged that the Debtors engaged in fraud through the investment advisor activities of BLMIS.

2. On December 15, 2008, pursuant to section 78eee(a)(4)(A) of SIPA, the SEC consented to a combination of its own action with an application of the Securities Investor Protection Corporation ("SIPC"). Thereafter, pursuant to section 78eee(a)(3) of SIPA, SIPC filed an application in the District Court alleging, *inter alia*, that BLMIS was not able to meet its obligations to securities customers as they came due and, accordingly, its customers needed the protection afforded by SIPA.

3

3. On that date, the District Court entered the Protective Decree, to which BLMIS consented, which, in pertinent part:

(i) appointed the Trustee for the liquidation of the business of BLMIS pursuant to section 78eee(b)(3) of SIPA;

(ii) appointed Baker & Hostetler LLP as counsel to the Trustee pursuant to section 78eee(b)(3) of SIPA; and

(iii) removed the case to this Court pursuant to section 78eee(b)(4) of SIPA.

4. On April 13, 2009, an involuntary bankruptcy petition was filed against Madoff. On June 9, 2009, this Court entered an order substantively consolidating the chapter 7 estate of Madoff in the BLMIS SIPA liquidation proceeding.

*The Trustee's Claims Against the Pascucci Transferees*

5. On November 12, 2010, the Trustee commenced an adversary proceeding in the Bankruptcy Court against the Pascucci Transferees in an action captioned *Irving H. Picard, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC v. Dawn Pascucci Barnard, et al.*, Adv. Pro. No. 10-04459 (SMB) ("Pascucci Adversary Proceeding").

6. In the Pascucci Adversary Proceeding, the Trustee sought to avoid and recover avoidable transfers from BLMIS to the Pascucci Accounts under sections 105(a), 544, 548(a), 550(a) and 551 of the Bankruptcy Code, SIPA § 78fff-2(c)(3), the New York Fraudulent Conveyance Act (New York Debtor and Creditor Law ("NY DCL") §§ 273–279), N.Y. C.P.L.R. 203(g) and 213(8), and other applicable laws. The Pascucci Adversary Proceeding also included claims against Michael A. Pascucci, Michael C. Pascucci, Christopher S. Pascucci and Ralph P. Pascucci as subsequent transferees of certain of the transfers from the Pascucci Accounts.

7. The Trustee has alleged that the Pascucci Transferees received avoidable transfers in the aggregate amount of Forty-Eight Million Eight Hundred Sixty Thousand One Hundred Sixty-Eight United States Dollars ($48,860,168.00), in connection with BLMIS Account Nos.

4

1CM258, 1CM348, 1CM349, 1CM350, 1CM351, 1CM427, 1CM436, 1CM536, 1CM537 and 1CM574 (the "Alleged Pascucci Avoidable Transfers"). The Pascucci Transferees have disputed that the Alleged Pascucci Avoidable Transfers are avoidable. With respect to the Alleged Pascucci Avoidable Transfers, approximately $42.5 million of such transfers were made more than two years before the commencement of the SIPA Proceeding, and, of that amount, approximately $26.3 million of such transfers were made beyond six years before the commencement of the SIPA Proceeding. There were no allegations that the Pascucci Transferees acted in bad faith in connection with their transactions with BLMIS or Madoff.

*The Trustee's Claims Against the JD Partners Transferees*

8. On November 12, 2010, the Trustee commenced an adversary proceeding in the Bankruptcy Court against the JD Partners Transferees in an action captioned *Irving H. Picard, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC v. JD Partners LLC, et al.*, Adv. Pro. No. 10-04461 (SMB) (the "JD Partners Adversary Proceeding").

9. In the JD Partners Adversary Proceeding, the Trustee sought to avoid and recover avoidable transfers from BLMIS to the JD Partners Account under sections 105(a), 544, 548(a), 550(a) and 551 of the Bankruptcy Code, SIPA § 78fff-2(c)(3), NY DCL §§ 273–279) and other applicable laws. The JD Partners Adversary Proceeding also included claims against John Danzi, Deborah Danzi, and/or Janice Danzi Sennello as subsequent transferees of certain of the transfers from the JD Partners Account.

5

10. The Trustee has alleged that the JD Partners Transferees received avoidable transfers in the aggregate amount of Six Million Eight Hundred Forty-Seven Thousand Four Hundred Forty-One United States Dollars ($6,847,441.00) in connection with BLMIS Account No. 1CM347 (the "Alleged JD Partners Avoidable Transfers"). The JD Partners Transferees have disputed that the Alleged JD Partners Avoidable Transfers are avoidable. With respect to the Alleged JD Partners Avoidable Transfers, approximately $6.65 million of such transfers were made more than two years before the commencement of the SIPA Proceeding. There were no allegations that the JD Partners Transferees acted in bad faith in connection with their transactions with BLMIS or Madoff.

*The Trustee Claims Against the MAF Associates Transferees*

11. On November 12, 2010, the Trustee commenced an adversary proceeding in the Bankruptcy Court against the MAF Associates Transferees in an action captioned *Irving H. Picard, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC v. MAF Associates, LLC, et al.*, Adv. Pro. No. 10-05235 (SMB) ("MAF Associates Adversary Proceeding," together with the Pascucci Adversary Proceeding and the JD Partners Adversary Proceeding, the "Adversary Proceedings")..

12. In the MAF Associates Adversary Proceeding, the Trustee sought to avoid and recover avoidable transfers from BLMIS to the MAF Associates Account under sections 105(a), 544, 550(a) and 551 of the Bankruptcy Code, SIPA § 78fff-2(c)(3), NY DCL §§ 273–279) and other applicable law. The MAF Associates Adversary Proceeding also included claims against Mark A. Freeman and Francine Freeman as subsequent transferees of certain of the transfers from the MAF Associates Account.

13. The Trustee has alleged that the MAF Associates Transferees received avoidable transfers in the aggregate amount of Two Million Seven Hundred Seventeen Thousand Six Hundred Twelve United States Dollars ($2,717,612.00) in connection with BLMIS Account No. 1F0084 (the "Alleged MAF Associates Avoidable Transfers", together with the Alleged Pascucci Avoidable Transfers and the Alleged JD Partners Avoidable Transfers, the "Alleged Avoidable Transfers"). The MAF Associates Transferees have disputed that the Alleged MAF Associates Avoidable Transfers are avoidable. All of the Alleged MAF Associates Avoidable Transfers were made more than two years before the commencement of the SIPA Proceeding. There were no allegations that the MAF Associates Transferees acted in bad faith in connection with their transactions with BLMIS or Madoff.

## SETTLEMENT DISCUSSIONS AND TRUSTEE'S INVESTIGATION

14. Since December 2014, the Transferees and the Trustee engaged in extensive settlement discussions. In connection with his litigation against the Transferees, the Trustee's investigation, conducted by his counsel and other advisors and consultants, included the examination of BLMIS records, review and analysis of the Transferees' transactional histories as reflected in the BLMIS account statements, correspondence, and other records and documents available to the Trustee.

15. As a result of the Trustee's investigation and the Parties' successful negotiations, on April 23, 2015, the Trustee and the Transferees executed the Agreement wherein they agreed to settle the matters at issue as to all Defendants in the Adversary Proceedings on the terms summarized below.

## OVERVIEW OF THE AGREEMENT

16. The principal terms and conditions of the Agreement are generally as follows (as stated above, the Agreement is attached as Exhibit "A" hereto and may be reviewed for a complete account of its terms):

- The Transferees shall pay the aggregate Settlement Payment of $11,100,000 to the Trustee as set forth in the Agreement, which includes repayment of 100% of the transfers made within two years of the Filing Date (<u>i.e.</u>, $6,500,000) plus an additional $4,600,000 for the transfers made more than two years before the Filing Date.

- The Transferees shall release, acquit, and discharge the Trustee, and the Trustee shall release, acquit, and discharge the Transferees, subject to certain exceptions.

- Upon receipt of the Initial Settlement Payment, counsel for Trustee and Transferees shall respectively execute, and Trustee shall subsequently file, a Stipulation of and Order for Voluntary Dismissal of the Adversary Proceedings Without Prejudice and without costs to either Trustee or Transferees, subject to the right to re-open the Adversary Proceedings to seek entry of Judgment pursuant to the Stipulation for Entry of Judgment in the event of an uncured default under the Agreement. Upon receipt of the full Settlement Amount, the dismissal of the Adversary Proceedings shall be deemed with prejudice.

- The Trustee shall seek approval of the Agreement from the Court.

8

**RELIEF REQUESTED**

17.     By this Motion, the Trustee respectfully requests that the Court enter an order, substantially in the form of the proposed order annexed hereto as Exhibit "B" approving the Settlement.

**LEGAL DISCUSSION**

18.     Bankruptcy Rule 9019(a) states, in pertinent part, that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Courts have held that in order to approve a settlement or compromise under Bankruptcy Rule 9019(a), a bankruptcy court should find that the compromise proposed is fair and equitable, reasonable, and in the best interests of a debtor's estate. *In re Ionosphere Clubs, Inc.,* 156 BR 414, 426 (S.D.N.Y. 1993), *aff'd*, 17 F. 3d 600 (2d Cir. 1994) (citing *Protective Comm. for Index. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968)).

19.     The Second Circuit has stated that a bankruptcy court, in determining whether to approve a compromise, should not decide the numerous questions of law and fact raised by the compromise, but rather should "canvass the issues and see whether the settlement 'fall[ s] below the lowest point in the range of reasonableness.'" *In re W T. Grant Co.*, 699 F.2d 599, 68 (2d Cir.), *cert. denied sub nom. Cosoff v. Romon*, 464 U.S. 822 (1983) (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir.), *cert. denied sub nom. Benson v. Newman*, 409 U.S. 1039 (1972)); *accord Nellis v. Shugrue*, 165 B.R. 115, 121–22 (S.D.N.Y. 1994); *In re Ionosphere Clubs*, 156 B.R. at 426; *In re Purified Down Prods. Corp.*, 150 B.R. 519, 522 (S.D.N.Y. 1993) ("[T]he court need not conduct a 'mini-trial' to determine the merits of the underlying litigation"); *In re Drexel Burnham Lambert Grp., Inc.*, 134 B.R. 499, 505 (Bankr. S.D.N.Y. 1991).

20.     In deciding whether a particular compromise falls within the "range of reasonableness," courts consider the following factors:

9

  (i)  the probability of success in the litigation;

  (ii)  the difficulties associated with collection;

  (iii)  the complexity of the litigation, and the attendant expense, inconvenience, and delay; and

  (iv)  the paramount interests of the creditors (or in this case, customers).

*In re Refco, Inc.,* 2006 U.S. Dist. LEXIS 85691 at *22; *Nellis v. Shugrue*, 165 B.R. 115, 122 (S.D.N.Y. 1994) (citing *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 292 (2d Cir. 1992), *cert. denied*, 506 U.S. 1088 (1993)).

  21. The bankruptcy court may credit and consider the opinions of the trustee or debtor and their counsel in determining whether a settlement is fair and equitable. *See In re Purified Down Prods.*, 150 B.R. at 522; *In re Drexel Burnham Lambert Grp.*, 134 B.R. at 505. Even though the Court has discretion to approve settlements and must independently evaluate the reasonableness of the settlement, *In re Rosenberg*, 419 B.R. 532, 536 (Bankr. E.D.N.Y. 2009), the business judgment of the trustee and his counsel should be considered in determining whether a settlement is fair and equitable. *In re Chemtura Corp.*, 439 B.R. at 594. The competency and experience of counsel supporting the settlement may also be considered. *Nellis v. Shugrue*, 165 B.R. at 122. Finally, the court should be mindful of the principle that "the law favors compromise." *In re Drexel Burnham Lambert Group, Inc.*, 134 B.R at 505 (quoting *In re Blair,* 538 F.2d 849, 851 (9th Cir. 1976)).

  22. The Trustee believes that the terms of the Agreement further the interest of BLMIS customers as it will bring in significant funds that will benefit the customer property estate. The Agreement also resolves all claims raised by the Trustee against the Transferees and avoids the cost and delay of what could otherwise be lengthy and contentious litigation regarding the Trustee's avoidance claims. (Affidavit of the Trustee in Support of the Motion (the "Picard Affidavit"), a true and accurate copy of which is attached as Exhibit C).

23. Among other considerations, under the terms of the Agreement, the Transferees are paying 100% of the Trustee's claims for transfers made within two years of the Filing Date and $4,600,000 toward the transfers made more than two years before the Filing Date. Thus, the Trustee is recovering a significant portion of the transfers beyond the two-year period in these cases, and there are collectability issues relating to certain of the Transferees. Under the circumstances, the Trustee requests that the Court approve his business judgment in settling this matter pursuant to the Agreement.

## CONCLUSION

24. The Trustee believes that the terms of the Agreement fall well above the lowest point in the range of reasonableness. The Agreement resolves the claims raised by the Trustee against the Transferees as to the Adversary Proceedings, and it avoids likely lengthy, burdensome, and expensive litigation regarding the claims and defenses in these matters. The Trustee also believes that the Agreement represents a fair and reasonable compromise of the claims against the Transferees. Because the Agreement is well within the "range of reasonableness" and confers a significant monetary benefit on the estate, the Trustee respectfully requests that the Court enter an Order approving the Agreement.

## NOTICE

25. In accordance with Bankruptcy Rules 2002 and 9019, notice of this Motion has been given to (i) SIPC; (ii) the SEC; (iii) the Internal Revenue Service; (iv) the United States Attorney for the Southern District of New York; and (v) Arthur J. Steinberg, Esq., King & Spalding, 1185 Avenue of the Americas, New York, NY 10036. Notice of this Motion will also be provided via email and/or U.S. Mail to all persons who have filed notices of appearance in the BLMIS proceeding and to all defendants in the adversary proceedings pursuant to the Order

Establishing Notice Procedures and Limiting Notice, ECF No. 4560. The Trustee submits that no other or further notice is required.

**WHEREFORE,** the Trustee respectfully requests entry of the Approval Order substantially in the form of Exhibit "B" granting the relief requested in the Motion.

Dated: April 24, 2015  
      New York, NY

*s/Nicholas J. Cremona*  
Baker & Hostetler LLP  
45 Rockefeller Plaza  
New York, New York 10111  
Telephone: (212) 589-4200  
Facsimile: (212) 589-4201  
David J. Sheehan  
Keith R. Murphy  
Nicholas J. Cremona

*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the estate of Bernard L. Madoff*