## SETTLEMENT AGREEMENT AND RELEASE

**THIS SETTLEMENT AGREEMENT AND RELEASE** (this "Agreement") is made
and entered into as of April 23, 2015, by and between, on the one hand, Irving H. Picard, in his
capacity as the Trustee ("Trustee") for the liquidation proceedings under the Securities Investor
Protection Act, 15 U.S.C. §§ 78aaa, *et seq.* ("SIPA") of Bernard L. Madoff Investment Securities
LLC ("BLMIS") and the substantively consolidated Chapter 7 case of Bernard L. Madoff
("Madoff") pending before the United States Bankruptcy Court for the Southern District of New
York (the "Bankruptcy Court"), and, on the other hand:

(i)    Dawn Pascucci Barnard; Trust FBO Michael A. Pascucci UA DTD 12/31/94;
Michael A. Pascucci, Michael C. Pascucci, Christopher S. Pascucci, Ralph P.
Pascucci, Pascucci Family Foundation; Jocelyn A. Pascucci; Fund for the Poor,
Inc.; CSP Investment Associates LLC; RPP Investment Associates LLC; and
MCP Investment Associates LLC, along with the Christopher S. Pascucci 1995
Charitable Remainder Trust UAD 11/7/95 and The Dawn A. Pascucci Barnard
1995 Charitable Remainder TST UAD 11/7/95 (collectively, the "Pascucci
Transferees");

(ii)    JD Partners LLC; John A. Danzi; Deborah Danzi; and Janice Danzi Sennello
(collectively, the "JD Partners Transferees"); and

(iii)    MAF Associates, LLC; Mark A. Freeman; and Francine Freeman (collectively,
the "MAF Associates Transferees", and together with the Pascucci Transferees
and the JD Partners Transferees, the "Transferees").

Trustee and Transferees shall be hereinafter referred to individually as a "Party" and collectively
as the "Parties."

## RECITALS

**WHEREAS**, BLMIS and its predecessor were registered broker-dealers with the United
States Securities and Exchange Commission (the "Commission") and members of the Securities
Investor Protection Corporation ("SIPC");

**WHEREAS**, on December 11, 2008, the Commission filed a complaint in the United States District Court for the Southern District of New York (the "District Court") against BLMIS and Madoff.  On December 12, 2008, the District Court entered an order which, among other things, appointed Lee S. Richards, Esq. as receiver (the "Receiver") for the assets of BLMIS (No. 08-CV-10791(LSS));

**WHEREAS**, on December 15, 2008, pursuant to section 5(a)(4)(A) of SIPA, the Commission consented to a combination of its own action with the application of SIPC. Thereafter, SIPC filed an application in the District Court under section 5(a)(3) of SIPA alleging, *inter alia*, that BLMIS was not able to meet its obligations to securities customers as they came due and, accordingly, its customers needed the protections afforded by SIPA.  On December 15, 2008, the District Court granted the SIPC application and entered an order under SIPA, which, in pertinent part, appointed Trustee as the trustee for the liquidation of the business of BLMIS under section 5(b)(3) of SIPA, removed the Receiver as the receiver for BLMIS, and removed the case to the Bankruptcy Court under section 5(b)(4) of SIPA, where it is currently pending as Case No. 08-01789 (SMB) ("SIPA Proceeding").  By Order dated June 9, 2009, the estate of Madoff (the "Madoff Estate") was substantively consolidated with the estate of BLMIS;

**WHEREAS**, pursuant to section 78fff-1(a) of SIPA, Trustee has the general powers of a bankruptcy trustee in a case under Chapter 7 of the United States Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code"), as well as the powers granted pursuant to SIPA.  Chapters 1, 3, 5 and subchapters I and II of Chapter 7 of the Bankruptcy Code apply to this SIPA Proceeding to the extent consistent with SIPA;

**WHEREAS**, under SIPA, Trustee is charged with the responsibility to marshal and liquidate the assets of BLMIS for distribution to BLMIS customers and others in accordance

2

with SIPA in satisfaction of allowed claims, including through the recovery of avoidable transfers made by BLMIS;

**WHEREAS,** Trustee has brought claims against transferees who received allegedly avoidable transfers from BLMIS under SIPA, including sections 78fff(b), 78fff-1(a) and 78fff-2(c)(3), sections 105(a), 541, 544, 547, 548, 550(a) and 551 of the Bankruptcy Code, the New York Debtor and Creditor Law § 270 *et seq.* (McKinney 2001) and other applicable laws;

**WHEREAS,** pursuant to an order of the Bankruptcy Court, dated December 23, 2008 (the "Claims Procedures Order", Case No. 08-01789 (SMB),[1] ECF No. 12), Trustee is authorized to enter into settlements with claimants in connection with any claims upon which there is a disagreement, provided that Trustee obtains the approval of SIPC. Pursuant to the Claims Procedures Order, no further order of the Bankruptcy Court is necessary as long as any obligations incurred by the BLMIS estate under the settlements are ascertainable from the books and records of BLMIS or are otherwise established to the satisfaction of Trustee;

**WHEREAS,** pursuant to an order of the Bankruptcy Court, dated November 12, 2010 (the "Settlement Order", ECF No. 3181), Trustee is authorized to enter into settlement agreements with transferees in settlement of avoidable transfers without Bankruptcy Court approval, subject to the limitations and procedures set forth therein. Pursuant to the Settlement Order, provided that the proposed settlement meets the settlement standards established by the Bankruptcy Court, including, without limitation, the approval of the proposed settlement by SIPC, no further order of the Bankruptcy Court is necessary for the settlement of any and all avoidable transfers in an amount up to and including Twenty Million United States Dollars ($20,000,000.00);

---

[1] All ECF numbers referenced herein are applicable to Case No. 08-01789 (SMB), unless otherwise stated.

**WHEREAS**, on November 12, 2010, Trustee commenced an adversary proceeding in the Bankruptcy Court against the Pascucci Transferees in an action captioned *Irving H. Picard, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC v. Dawn Pascucci Barnard, et al.*, Adv. Pro. No. 10-04459 (SMB) (the "Pascucci Adversary Proceeding");

**WHEREAS**, Trustee alleges that the Pascucci Transferees received avoidable transfers in the aggregate amount of Forty-Eight Million Eight Hundred Sixty Thousand One Hundred Sixty-Eight United States Dollars ($48,860,168.00) in connection with BLMIS Account Nos. 1CM258, 1CM348, 1CM349, 1CM350, 1CM351, 1CM427, 1CM436, 1CM536, 1CM537 and 1CM574 (the "Alleged Pascucci Avoidable Transfers");

**WHEREAS**, the Pascucci Transferees have disputed that the Alleged Pascucci Avoidable Transfers are avoidable;

**WHEREAS**, with respect to the Alleged Pascucci Avoidable Transfers, approximately $42.5 million of such transfers were made more than two years before the commencement of the SIPA Proceeding, and, of that amount, approximately $26.3 million of such transfers were made beyond six years before the commencement of the SIPA Proceeding;

**WHEREAS**, on November 12, 2010, Trustee commenced an adversary proceeding in the Bankruptcy Court against the JD Partners Transferees in an action captioned *Irving H. Picard, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC v. JD Partners LLC, et al.*, Adv. Pro. No. 10-04461 (SMB) (the "JD Partners Adversary Proceeding");

**WHEREAS**, Trustee alleges that the JD Partners Transferees received avoidable transfers in the aggregate amount of Six Million Eight Hundred Forty-Seven Thousand Four Hundred Forty-One United States Dollars ($6,847,441.00) in connection with BLMIS Account No. 1CM347 (the "Alleged JD Partners Avoidable Transfers");

4

**WHEREAS**, the JD Partners Transferees have disputed that the Alleged JD Partners Avoidable Transfers are avoidable;

**WHEREAS**, with respect to the Alleged JD Partners Avoidable Transfers, approximately $6.65 million of such transfers were made more than two years but less than six years before the commencement of the SIPA Proceeding;

**WHEREAS**, on November 12, 2010, Trustee commenced an adversary proceeding in the Bankruptcy Court against the MAF Associates Transferees in an action captioned *Irving H. Picard, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC v. MAF Associates, LLC, et al.*, Adv. Pro. No. 10-05235 (SMB) (the "MAF Associates Adversary Proceeding", together with the Pascucci Adversary Proceeding and the JD Partners Adversary Proceeding, the "Adversary Proceedings");

**WHEREAS**, Trustee alleges that the MAF Associates Transferees received avoidable transfers in the aggregate amount of Two Million Seven Hundred Seventeen Thousand Six Hundred Twelve United States Dollars ($2,717,612.00) in connection with BLMIS Account No. 1F0084 (the "Alleged MAF Associates Avoidable Transfers", together with the Alleged Pascucci Avoidable Transfers and the Alleged JD Partners Avoidable Transfers, the "Alleged Avoidable Transfers");

**WHEREAS**, the MAF Associates Transferees have disputed that the Alleged MAF Associates Avoidable Transfers are avoidable;

**WHEREAS**, all of the Alleged MAF Associates Avoidable Transfers in the amount of $2,717,612.00 were made more than two years but less than six years before the commencement of the SIPA Proceeding;

5

**WHEREAS**, Transferees did not file any customer claims in connection with BLMIS Account Nos. 1CM258, 1CM348, 1CM349, 1CM350, 1CM351, 1CM427, 1CM436, 1CM536, 1CM537, 1CM574, 1CM347 and 1F0084 (collectively, the "BLMIS Accounts");

**WHEREAS**, the Parties desire that the BLMIS Accounts be viewed together for purposes of a global settlement of any and all claims and disputes the Trustee may have against the Transferees with respect to BLMIS, the BLMIS Accounts and the Alleged Avoidable Transfers; and

**WHEREAS**, the Parties desire to settle this matter without the expense, delay and uncertainty of litigation.

## DEFINITIONS

The following definition shall apply to and constitute part of this Agreement and all schedules, exhibits and annexes hereto:

"Unknown Claims" shall mean any Trustee Released Claims (as defined in Section 3 herein) or any Transferee Released Claims (as defined in Section 4 herein), that the Trustee or the Transferees, as the case may be, do not know or suspect to exist in their favor at the time of giving the release in this Agreement that if known by them, might have affected their settlement and release in this Agreement. With respect to any and all Trustee Released Claims and Transferee Released Claims (collectively, the "Released Claims"), Trustee and Transferees expressly waive or are deemed to have waived, the provisions, rights and benefits of California Civil Code section 1542 (to the extent it applies herein), which provides:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE

TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST

HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

The Parties expressly waive, and shall be deemed to have waived, any and all provisions,

rights and benefits conferred by any law of any state or territory of the United States, or principle

of common law or foreign law, that is similar, comparable or equivalent in effect to California

Civil Code section 1542. The Parties may hereafter discover facts in addition to or different

from those that they now know or believe to be true with respect to the subject matter of the

Released Claims, but the Parties shall expressly have and shall be deemed to have fully, finally

and forever settled and released any and all Released Claims, known or unknown, suspected or

unsuspected, contingent or noncontingent, whether or not concealed or hidden, that now exist or

heretofore have existed, upon any theory of law or equity now existing or coming into existence

in the future, including conduct that is negligent, reckless, intentional, with or without malice, or

a breach of any duty, law or rule, without regard to the subsequent discovery or existence or such

different or additional facts.    The Parties acknowledge and shall be deemed to have

acknowledged that the foregoing waiver was separately bargained for and a key element of the

settlement of which this release is a part.

**NOW THEREFORE**, for the good and valuable consideration set forth herein, the

adequacy and sufficiency of which is recognized for all purposes, the Parties agree as follows:

1.    Bankruptcy Court Approval. This Agreement is subject to, and shall become effective

and binding on the Parties (i) fourteen (14) days following the Bankruptcy Court's entry of an

order approving this Agreement in the SIPA Proceeding that is not subject to a timely appeal or

stay by any court of competent jurisdiction ("Approval Order") and (ii) receipt of the Initial

Settlement Payment[2] by the Trustee ("Effective Date").  If the Approval Order is subject to a timely appeal or stay, the Effective Date shall not occur until the Approval Order becomes final and no longer subject to any appeal or stay, *provided, however*, the Transferees, in their sole and absolute discretion, may waive the requirement for a final and non-appealable Approval Order. The Trustee shall use reasonable efforts to obtain approval of this Agreement in the SIPA Proceeding as promptly as practicable after execution of this Agreement.

2.     Settlement Payment Obligation; Stipulated Judgment in the Event of Default.

(a)     In consideration for the covenants and agreements set forth in this Agreement and for other good and valuable consideration (including, without limitation, the release set forth in Section 3), the receipt and sufficiency of which are hereby acknowledged for purposes of this settlement, Transferees, collectively, shall pay to Trustee the aggregate total amount of Eleven Million One Hundred Thousand United States Dollars ($11,100,000.00) (the "Settlement Amount") as follows: (i) an initial payment of Three Million Seven Hundred Thousand United States Dollars ($3,700,000) (the "Initial Settlement Payment") within ten (10) days following the Approval Order that is not subject to a timely appeal or stay by any court of competent jurisdiction (the "Initial Payment Date"), (ii) a second payment of Three Million Seven Hundred Thousand United States Dollars ($3,700,000) within twelve (12) months of the Initial Payment Date, and (iii) a third payment of Three Million Seven Hundred Thousand United States Dollars ($3,700,000.00) within twenty-four (24) months of the Initial Payment Date.  All payments shall be made by: (i) wire transfer of immediately available funds to the account specified on Schedule 1 attached hereto, or (ii) bank or cashier's check made payable to Trustee, provided that

---

[2] This term is defined in Section 2(a).

satisfaction of Trustee's obligations hereunder shall be conditioned on the collection of such

funds by Trustee.

(b)    The obligation to pay the Settlement Amount shall be evidenced by a Stipulation

for Entry of Judgment in the full amount of the Settlement Amount, which is Eleven Million One

Hundred Thousand United States Dollars ($11,100,000.00), less payments previously made and

credits against the Settlement Amount, pursuant to which a Judgment Pursuant to Stipulation

may be entered against the Transferees jointly and severally in the event any installment is not

timely made.  The Trustee agrees that the Stipulation for Entry of Judgment and the Judgment

Pursuant to Stipulation shall each be held in escrow by Trustee's counsel and neither shall be

entered as long as payments are timely made.  Prior to entering the Judgment Pursuant to

Stipulation, the Trustee shall provide Transferees and their counsel with ten (10) business days'

written notice of default, via e-mail transmission or overnight delivery to the addresses listed on

the signature pages hereto, and Transferees shall have the opportunity to cure any such default

within such ten (10) business day period.  If the Judgment Pursuant to Stipulation is entered, it

shall be in the full amount set forth in this Section 2(b), less any and all credits and payments

previously made pursuant to this Agreement.  The Settlement Amount shall not bear interest as

long as payments are timely made.  If the Judgment Pursuant to Stipulation is entered, the

judgment shall bear interest at the applicable rate per annum from the Effective Date.  The forms

of the Stipulation for Entry of Judgment and the Judgment Pursuant to Stipulation to be executed

by Trustee and Transferees are attached hereto as Exhibit A.

3.    Release by Trustee.

(a)    (i)    In consideration for the covenants and agreements set forth in this

Agreement and for other good and valuable consideration, the receipt and sufficiency of which

9

are hereby acknowledged, except with respect to any rights arising under this Agreement and as provided under Section 3(b) of this Agreement, Trustee, on behalf of himself and on behalf of BLMIS, the Madoff Estate, and the consolidated BLMIS/Madoff estate (collectively, the "Trustee Releasors") hereby releases, remises and forever discharges each of the Transferees ("Individual Transferee Releasees") from any and all past, present or future claims or causes of action (including any suit, petition, demand, or other claim in law, equity or arbitration) and from any and all allegations of liability or damages (including any allegation of duties, debts, reckonings, contracts, controversies, agreements, promises, damages, responsibilities, covenants, or accounts) of whatever kind, nature or description, direct or indirect, in law, equity or arbitration, absolute or contingent, in tort, contract, statutory liability or otherwise, based on strict liability, negligence, gross negligence, fraud, breach of fiduciary duty or otherwise (including attorneys' fees, costs or disbursements) known or unknown (including Unknown Claims), that are, have been, could have been, or might in the future be, asserted by the Trustee Releasors against the Individual Transferee Releasees based on, arising out of, or relating to or in connection with BLMIS, the Madoff Estate, the BLMIS Accounts, the Alleged Avoidable Transfers, or the Adversary Proceedings ("Trustee/Transferee Released Claims").

(ii)    In consideration for the covenants and agreements set forth in this Agreement and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, except with respect to any rights arising under this Agreement and as provided under Section 3(b) of this Agreement, the Trustee Releasors hereby release, remise and forever discharge each of the Transferees' beneficiaries, shareholders, members, partners, officers, directors, managers, subsidiaries, affiliates, trustees, executors, administrators, assigns, attorneys and accountants (collectively, the "Additional Transferee Releasees," and with the

Individual Transferee Releasees, the "Transferee Releasees") from any and all past, present or future claims or causes of action (including any suit, petition, demand, or other claim in law, equity or arbitration) and from any and all allegations of liability or damages (including any allegation of duties, debts, reckonings, contracts, controversies, agreements, promises, damages, responsibilities, covenants, or accounts) of whatever kind, nature or description, direct or indirect, in law, equity or arbitration, absolute or contingent, in tort, contract, statutory liability or otherwise, based on strict liability, negligence, gross negligence, fraud, breach of fiduciary duty or otherwise (including attorneys' fees, costs or disbursements) known or unknown (including Unknown Claims), that are, have been, could have been, or might in the future be, asserted by the Trustee Releasors against the Additional Transferee Releasees based on, arising out of, or relating in any way to the BLMIS Accounts, the Alleged Avoidable Transfers, or the Adversary Proceedings ("Trustee/Additional Transferee Released Claims," and with the Trustee/Transferee Released Claims, the "Trustee Released Claims").

(b)    Notwithstanding the foregoing release contained in Section 3(a)(i) and (ii), and other than any funds obtained through sources of recovery identified in Section 4, Transferee Releasees are not released from liability for any transfers that they may have received in connection with any account not specified herein or referenced on Exhibit B of the Complaints filed in the Adversary Proceedings, or may receive after the date of this Agreement which constitute subsequent transfers of transfers made by BLMIS which are avoidable and recoverable under SIPA, the Bankruptcy Code and other applicable laws.

(c)    Dismissal of Adversary Proceedings.  As soon as practicable after the Effective Date, counsel for Trustee and Transferees shall respectively execute, and Trustee shall subsequently file, a Stipulation of and Order for Voluntary Dismissal of the Adversary

Proceedings Without Prejudice (in each of the three Adversary Proceedings) and without costs to either Trustee or Transferees, subject to the right to re-open the Adversary Proceedings to seek entry of Judgment pursuant to the Stipulation for Entry of Judgment. Other than seeking Court approval and matters attendant thereto, from the date of this Agreement through the filing of a Stipulation of Dismissal pursuant to this Section 3(c), the Adversary Proceedings shall be stayed and no further actions need be taken by any of the Parties hereto. Upon all payments being made by the Transferees as set forth in Section 2 herein, the Adversary Proceedings shall be deemed dismissed with prejudice without any further action being required to be taken by the Trustee and the Transferees.

4.   Release by Transferees.

(a)      Each Transferee ("Individual Transferee Releasors") releases, remises, and forever discharges: (i) Trustee, (ii) all of Trustee's attorneys, professionals, agents and consultants, and (iii) BLMIS and its consolidated estate (collectively, the "Trustee Releasees") from any and all claims or causes of action (including any suit, petition, demand, or other claim in law, equity or arbitration) and from any and all allegations of liability or damages (including any allegation of duties, debts, reckonings, contracts, controversies, agreements, promises, damages, responsibilities, covenants, or accounts) of whatever kind, nature or description, direct or indirect, in law, equity or arbitration, absolute or contingent, in tort, contract, statutory liability or otherwise, based on strict liability, negligence, gross negligence, fraud, breach of fiduciary duty or otherwise (including attorneys' fees, costs or disbursements) known or unknown (including Unknown Claims), now existing or arising in the future, arising out of or relating to or in connection with BLMIS, the Madoff Estate, the BLMIS Accounts, the Alleged Avoidable Transfers or the Adversary Proceedings (the "Individual Transferee Released Claims"), *provided*

12

*however*, (1) the foregoing release shall not operate to release any claims, causes of action, suits, demands or the like that the Individual Transferee Releasors have, for their benefit, against any person or entity (other than the Trustee Releasees), including without limitation (x) any claims, causes of action, suits, demands or the like that arise out of or in any way relate to or concern BLMIS, Madoff, the BLMIS Accounts, (y) the United States Department of Justice's Madoff Victim Fund being administered by Richard C. Breeden, and/or (z) Tremont Group Holdings Inc., Meridian Horizon Fund II, L.P. and Sage Capital L.P., and their respective affiliates and subsidiaries (collectively, the "DOJ/Fund Claims"), and (2) the foregoing release shall not operate to release any non-customer claims the Individual Transferee Releasors may have, if any, for their benefit, in the consolidated BLMIS/Madoff general estate (the "General Estate Claims").

(b)    Each of the Transferees' beneficiaries, shareholders, members, partners, officers, directors, managers, subsidiaries, affiliates, trustees, executors, administrators, assigns, attorneys and accountants (collectively, the "Additional Transferee Releasors") releases, remises, and forever discharges the Trustee Releasees from any and all claims or causes of action (including any suit, petition, demand, or other claim in law, equity or arbitration) and from any and all allegations of liability or damages (including any allegation of duties, debts, reckonings, contracts, controversies, agreements, promises, damages, responsibilities, covenants, or accounts) of whatever kind, nature or description, direct or indirect, in law, equity or arbitration, absolute or contingent, in tort, contract, statutory liability or otherwise, based on strict liability, negligence, gross negligence, fraud, breach of fiduciary duty or otherwise (including attorneys' fees, costs or disbursements) known or unknown (including Unknown Claims), now existing or arising in the future, arising out of or relating to or in connection with the BLMIS Accounts, the

Alleged Avoidable Transfers or the Adversary Proceedings (the "Additional Transferee Released

Claims," and with the Individual Transferee Released Claims, the "Transferee Released

Claims"), *provided however*, the foregoing release shall not operate to release (i) any claims,

causes of action, suits, demands or the like that the Additional Transferee Releasors have, for

their benefit, against any person or entity (other than the Trustee Releasees), including without

limitation any claims, causes of action, suits, demands or the like that arise out of or in any way

relate to or concern BLMIS, Madoff, the BLMIS Accounts, and/or the DOJ/Fund Claims, and

(ii) any General Estate Claims.

5.    Representations and Warranties.

(a)    Trustee hereby represents and warrants to Transferees that, subject to Bankruptcy

Court approval, he has the full power, authority and legal right to execute and deliver this

Agreement and to perform his obligations hereunder and has taken all necessary action to

authorize the execution, delivery and performance of his obligations under this Agreement.

(b)    Trust FBO Michael A. Pascucci UA DTD 12/31/94, Pascucci Family Foundation,

Fund for the Poor, Inc., CSP Investment Associates LLC, RPP Investment Associates LLC, MCP

Investment Associates LLC, JD Partners LLC, and MAF Associates, LLC ("Entity

Transferees"), through their authorized representatives who are signatories to this Agreement,

hereby represent and warrant to Trustee that:    (i) Entity Transferees have the full power,

authority and legal right to execute and deliver this Agreement and to perform their obligations

hereunder and authorized its signatory to execute this Agreement; including but not limited to

binding the Additional Transferee Releasors to this Agreement; (ii) the execution and delivery of

this Agreement and the performance by Entity Transferees of their obligations hereunder have

been duly and validly authorized by all necessary action on the part of Entity Transferees; (iii)

this Agreement has been duly executed and delivered by Entity Transferees and constitutes the

valid and binding agreement of Entity Transferees, enforceable against Entity Transferees in

accordance with its terms; (iv) in executing this Agreement, Entity Transferees have done so

with the full knowledge of any and all rights that Entity Transferees may have with respect to the

controversies herein compromised, and Entity Transferees have received or have had the

opportunity to obtain independent legal advice from their attorneys with regard to the facts

relating to said controversies and with respect to the rights arising out of said facts; and (v) no

other person or entity, other than those specifically identified herein, has any interest in the

matters that Entity Transferees release herein, and Entity Transferees have not assigned or

transferred or purported to assign or transfer to any such third person or party all or any portion

of the matters that Transferees release herein.

(c)      Each of the Entity Transferees that is not a natural person, by and through its

signatory to this Agreement,  represents and warrants to the Trustee that, as of the date hereof,

each of them is duly organized, validly existing, and in good standing under the laws of its

jurisdiction of formation; that each of them has the full power, authority and legal right and has

obtained any necessary consents, to execute and deliver, and to perform its respective obligations

under, this Agreement; and has taken all necessary action to authorize the execution and delivery

of, and the performance of its respective obligations under, this Agreement.

(d)      Dawn Pascucci Barnard, Michael A. Pascucci, Michael C. Pascucci, Christopher

S. Pascucci, Ralph P. Pascucci, Jocelyn A. Pascucci, John A. Danzi, Deborah Danzi, Janice

Danzi Sennello, Mark A. Freeman, and Francine Freeman ("Individual Transferees") hereby

represent and warrant to Trustee that: (i) they have the full power, authority, legal right and

capacity to execute and deliver this Agreement and to perform their obligations hereunder; (ii)

15

this Agreement has been duly executed and delivered by Individual Transferees and constitutes

the valid and binding agreement of Individual Transferees, enforceable against Individual

Transferees in accordance with its terms; (iii) in executing this Agreement, Individual

Transferees have done so with the full knowledge of any and all rights that Individual

Transferees may have with respect to the controversies herein compromised, and Individual

Transferees have received or have had the opportunity to obtain independent legal advice from

their attorneys with regard to the facts relating to said controversies and with respect to the rights

arising out of said facts; and (iv) no other person or entity, other than those specifically identified

herein, has any interest in the matters that Individual Transferees release herein, and Individual

Transferees have not assigned or transferred or purported to assign or transfer to any such third

person or party all or any portion of the matters that Individual Transferees release herein.

6.      Additional Representations and Warranties by Transferees.   To induce the Trustee to

enter into this Agreement, Transferees represent and warrant, to the best of their knowledge,

information and belief, that: (1) other than the Avoidable Transfers as referenced on Exhibit B of

the Complaints filed in the Adversary Proceedings, Transferees have not received any money,

funds, loans, transfers, assets, financial assistance or financial accommodation from Madoff, or

BLMIS; (2) except as set forth in Section 4 of this Agreement, and Exhibit B of the Complaints

filed in the Adversary Proceedings, Transferees are not an immediate, mediate or subsequent

transferee of any funds or property originating from Madoff or BLMIS to an initial transferee;

and (3) Transferees are not aware of any potential claims against Transferees by Madoff or

BLMIS.

7.      Termination of Agreements with BLMIS.   Any and all prior agreements between

Transferees and BLMIS are hereby terminated as of the date of this Agreement, provided

however, such termination shall have no effect on any claims, rights, defenses or causes of action

the Transferees may have against entities or individuals other than the Trustee Releasees.

8.    Further Assurances.  Each Party shall execute and deliver any document or instrument

reasonably requested by the other Party after the date of this Agreement to effectuate the intent

of this Agreement.

9.    Entire Agreement.  This Agreement constitutes the entire agreement and understanding

between the Parties pertaining to the subject matter hereof and supersedes any and all prior or

contemporaneous agreements, representations and understandings of the Parties concerning the

subject matter hereof.

10.    Amendment; Waiver.  This Agreement may not be terminated, amended or modified in

any way except by written instrument signed by all Parties.  No waiver of any provision of this

Agreement shall be deemed to constitute a waiver of any other provision hereof, whether or not

similar, nor shall such waiver constitute a continuing waiver.

11.    Assignment.  This Agreement may not be assigned by either Party without the prior

written consent of the other Party.

12.    Successors.  This Agreement shall be binding upon and inure to the benefit of each Party

and its respective successors and permitted assigns.

13.    Negotiated Agreement.  This Agreement has been fully negotiated by the Parties.  Each

Party acknowledges and agrees that this Agreement has been drafted jointly, and the rule that

ambiguities in an agreement or contract may be construed against the drafter shall not apply in

the construction or interpretation of this Agreement.

14.    <u>Severability</u>. In the event that any term or provision of this Agreement or any application thereof is deemed to be invalid or unenforceable, the remainder of this Agreement and any other application of such term or provision shall not be affected thereby.

15.    <u>Counterparts; Electronic Copy of Signatures</u>.  This Agreement may be executed and delivered in any number of counterparts, each of which so executed and delivered shall be deemed to be an original and all of which shall constitute one and the same document.  Each Party may evidence its execution of this Agreement by delivery to the other Party of scanned or faxed copies of its signature, with the same effect as the delivery of an original signature.

16.    <u>Governing Law</u>.  This Agreement and any claim related directly or indirectly to this Agreement shall be governed by and construed in accordance with the laws of the State of New York (without regard to the principles of conflicts of law thereof), the Bankruptcy Code and SIPA.  Each Party hereby waives on behalf of itself and its successors and assigns any and all right to argue that the choice of New York law provision is or has become unreasonable in any legal proceeding.

17.    <u>JURISDICTION; WAIVER OF JURY TRIAL</u>.

(a)    THE BANKRUPTCY COURT SHALL HAVE EXCLUSIVE JURISDICTION OVER ANY AND ALL DISPUTES BETWEEN OR AMONG THE PARTIES, WHETHER IN LAW OR EQUITY, ARISING OUT OF OR RELATING TO THIS AGREEMENT.  IN THE EVENT THE BLMIS PROCEEDING IS CLOSED BY A FINAL DECREE AND NOT REOPENED, THE PARTIES AGREE THAT ANY DISPUTE ARISING OUT OF THIS AGREEMENT MAY BE BROUGHT IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK OR THE SUPREME COURT OF THE STATE OF NEW YORK IN NEW YORK COUNTY.

(b)    EACH PARTY HEREBY IRREVOCABLY WAIVES, TO THE FULLEST
EXTENT PERMITTED BY APPLICABLE LAW, ANY AND ALL RIGHT TO TRIAL BY
JURY IN ANY LEGAL PROCEEDING ARISING OUT OF OR RELATED TO THIS
AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY.

18.    Expenses.  Each Party shall bear its respective expenses relating to or arising out of the
Adversary Proceedings and this Agreement, including, but not limited to, fees for attorneys,
experts, consultants, accountants and other advisors.

19.    Notices.  All notices, requests, demands, consents and communications necessary or
required under this Agreement shall be in writing and shall be delivered by hand or sent by
registered or certified mail, return receipt requested, by overnight mail with confirmation, by
facsimile (receipt confirmed) or by electronic means (receipt confirmed), in each case addressed
and copied as set forth on the applicable signature page hereto.  A Party may change its address
for receiving notice by giving notice of a new address in the manner provided herein.  All such
notices, requests, demands, consents and other communications shall be deemed to have been
duly given or sent two (2) days following the date on which mailed, or on the date on which
delivered by courier or by hand or by facsimile or electronic transmission (receipt confirmed), as
the case may be, and addressed as aforesaid.

20.    No Third Party Beneficiaries.  Except as expressly provided in Section 3 or Section 4, the
Parties do not intend to confer any benefit by or under this Agreement upon any person or entity
other than the Parties hereto and their respective successors and permitted assigns.

21.    Captions and Rules of Construction.  The captions in this Agreement are inserted only as
a matter of convenience and for reference and do not define, limit or describe the scope of this

Agreement or the scope or content of any of its provisions. Any reference in this Agreement to a

section is to a section of this Agreement. "Including" is not intended to be a limiting term.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK;
SIGNATURE PAGES TO FOLLOW]**

**IN WITNESS WHEREOF**, each Party has caused this Agreement to be duly executed and delivered as of the date set forth above.

**TRUSTEE**

**IRVING H. PICARD, THE TRUSTEE FOR THE LIQUIDATION PROCEEDINGS OF BERNARD L. MADOFF INVESTMENT SECURITIES LLC AND THE SUBSTANTIVELY CONSOLIDATED BANKRUPTCY CASE OF BERNARD L. MADOFF**

By: _____
     Irving H. Picard

Address:
Irving H. Picard
c/o Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111
Facsimile: (212) 589-4201

With copies to:
Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111
Attention: Keith R. Murphy
Facsimile: (212) 589-4201

Sworn and subscribed before me this
23rd day of April , 2015.

_____
Notary Public

[TRUSTEE SIGNATURE PAGE TO SETTLEMENT AGREEMENT]

SONYA M. GRAHAM
Notary Public, State of New York
No. 01GR6133214
Qualified in Westchester County
Commission Expires: 9/12/2017

**TRANSFEREE**

**Dawn Pascucci Barnard**

Address:
Dawn Pascucci Barnard
c/o Duck Pond Corp.
Attn.: Peter I. Cavallaro, Esq.
270 South Service Road, Suite 45
Melville, NY 11747
Facsimile (631) 777-8440

With copies to:
King & Spalding
1185 Avenue of the Americas
New York, New York 10036
Attention: Arthur J. Steinberg
Facsimile No.: 212.556.2222

Sworn and subscribed before me this
22nd day of April , 2015.

Notary Public

PETER I. CAVALLARO
Notary Public, State of New York
No. 02CA4912316
Qualified in Nassau County
Commission Expires October 19, 20_16_

[TRANSFEREE SIGNATURE PAGE TO SETTLEMENT AGREEMENT]

22

**TRANSFEREE**

TRUST FBO MICHAEL A. PASCUCCI UA DTD
12/31/94

By: _____
Name: Timothy F. Butler, Esq.
Title: Trustee

Address:
Trust FBO Michael A. Pascucci
UA DTD 12/31/94
Tibbets, Keating & Butler, LLC
Nine East 45th Street, 9th Floor
New York, New York 10017
Facsimile: (203) 656-2573

With copies to:
King & Spalding
1185 Avenue of the Americas
New York, New York 10036
Attention: Arthur J. Steinberg
Facsimile No.: 212.556.2222

Sworn and subscribed before me this
22nd day of _____April_____, 2015.

_____
Notary Public

PETER I. CAVALLARO
Notary Public, State of New York
No. 02CA4912316
Qualified in Nassau County
Commission Expires October 19, 2016

[TRANSFEREE SIGNATURE PAGE TO SETTLEMENT AGREEMENT]

23

**TRANSFEREE**

_____
Michael A. Pascucci

Address:
Michael A. Pascucci
c/o Duck Pond Corp.
Attn.: Peter I. Cavallaro, Esq.
270 South Service Road, Suite 45
Melville, NY 11747
Facsimile (631) 777-8440

With copies to:
King & Spalding
1185 Avenue of the Americas
New York, New York 10036
Attention: Arthur J. Steinberg
Facsimile No.: 212.556.2222

Sworn and subscribed before me this
21 st day of April , 2015.

_____
Notary Public

TIMOTHY F BUTLER
Notary Public, State of New York
No. 02BU6023540
Qualified in New York County
Commission Expires November 17, 2015

[TRANSFEREE SIGNATURE PAGE TO SETTLEMENT AGREEMENT]

24

**TRANSFEREE**

_____
Michael C. Pascucci

Address:
Michael C. Pascucci
c/o Duck Pond Corp.
Attn.: Peter I. Cavallaro, Esq.
270 South Service Road, Suite 45
Melville, NY  11747
Facsimile (631) 777-8440

With copies to:
King & Spalding
1185 Avenue of the Americas
New York, New York 10036
Attention: Arthur J. Steinberg
Facsimile No.: 212.556.2222

Sworn and subscribed before me this
22nd day of April , 2015.

_____
Notary Public

PETER I. CAVALLARO
Notary Public, State of New York
No. 02CA4912316
Qualified in Nassau County
Commission Expires October 19, 20 16

[TRANSFEREE SIGNATURE PAGE TO SETTLEMENT AGREEMENT]

**TRANSFEREE**

**Christopher S. Pascucci**

Address:
Christopher S. Pascucci
c/o Duck Pond Corp.
Attn.: Peter I. Cavallaro, Esq.
270 South Service Road, Suite 45
Melville, NY  11747
Facsimile (631) 777-8440

With copies to:
King & Spalding
1185 Avenue of the Americas
New York, New York 10036
Attention: Arthur J. Steinberg
Facsimile No.: 212.556.2222

Sworn and subscribed before me this
2nd day of _____April_____, 2015.

Notary Public

PETER I. CAVALLARO
Notary Public, State of New York
No. 02CA4912316
Qualified in Nassau County
Commission Expires October 19, 20 16

[TRANSFEREE SIGNATURE PAGE TO SETTLEMENT AGREEMENT]

26

**TRANSFEREE**

**Ralph P. Pascucci**

Address:
Ralph P. Pascucci
c/o Duck Pond Corp.
Attn.: Peter I. Cavallaro, Esq.
270 South Service Road, Suite 45
Melville, NY  11747
Facsimile (631) 777-8440

With copies to:
King & Spalding
1185 Avenue of the Americas
New York, New York 10036
Attention: Arthur J. Steinberg
Facsimile No.: 212.556.2222

Sworn and subscribed before me this
22nd day of _____April_____, 2015.

_____
Notary Public

PETER I. CAVALLARO
Notary Public, State of New York
No. 02CA4912316
Qualified in Nassau County
Commission Expires October 19, 20__16

[TRANSFEREE SIGNATURE PAGE TO SETTLEMENT AGREEMENT]

27

**TRANSFEREE**

**PASCUCCI FAMILY FOUNDATION**

By: _____
     Name: Charles E. Becker
     Title: Treasurer

Address:
Pascucci Family Foundation
c/o Duck Pond Corp.
Attn.:  Peter I. Cavallaro, Esq.
270 South Service Road, Suite 45
Melville, NY  11747
Facsimile (631) 777-8440

With copies to:
King & Spalding
1185 Avenue of the Americas
New York, New York 10036
Attention: Arthur J. Steinberg
Facsimile No.: 212.556.2222

Sworn and subscribed before me this
_____ day of _____, 2015.

_____
Notary Public

PETER I. CAVALLARO
Notary Public, State of New York
No. 02CA4912316
Qualified in Nassau County
Commission Expires October 19, 20___

[TRANSFEREE SIGNATURE PAGE TO SETTLEMENT AGREEMENT]

28

**TRANSFEREE**

Jocelyn A. Pascucci

Address:
Jocelyn A. Pascucci
c/o Duck Pond Corp.
Attn.: Peter I. Cavallaro, Esq.
270 South Service Road, Suite 45
Melville, NY 11747
Facsimile (631) 777-8440

With copies to:
King & Spalding
1185 Avenue of the Americas
New York, New York 10036
Attention: Arthur J. Steinberg
Facsimile No.: 212.556.2222

Sworn and subscribed before me this
22nd day of _April_____, 2015.

_____
Notary Public

PETER I. CAVALLARO
Notary Public, State of New York
No. 02CA4912316
Qualified in Nassau County
Commission Expires October 19, 20_16

[TRANSFEREE SIGNATURE PAGE TO SETTLEMENT AGREEMENT]

29

**TRANSFEREE**

**FUND FOR THE POOR, INC.**

By: _____

Name: Charles E. Becker
Title: Treasurer

Address:
Fund for the Poor, Inc.
c/o Duck Pond Corp.
Attn.: Peter I. Cavallaro, Esq.
270 South Service Road, Suite 45
Melville, NY  11747
Facsimile (631) 777-8440

With copies to:
King & Spalding
1185 Avenue of the Americas
New York, New York 10036
Attention: Arthur J. Steinberg
Facsimile No.: 212.556.2222

Sworn and subscribed before me this
_____ day of _____, 2015.

_____
Notary Public

PETER I. CAVALLARO
Notary Public, State of New York
No. 02CA4912316
Qualified in Nassau County
Commission Expires October 19, 20__

[TRANSFEREE SIGNATURE PAGE TO SETTLEMENT AGREEMENT]

**TRANSFEREE**

**CSP INVESTMENT ASSOCIATES LLC**

By: _____

Name: Christopher S. Pascucci
Title: Managing Member

Address:
CSP Investment Associates LLC
c/o Duck Pond Corp.
Attn.:  Peter I. Cavallaro, Esq.
270 South Service Road, Suite 45
Melville, NY  11747
Facsimile (631) 777-8440

With copies to:
King & Spalding
1185 Avenue of the Americas
New York, New York 10036
Attention: Arthur J. Steinberg
Facsimile No.: 212.556.2222

Sworn and subscribed before me this
22nd day of _____April_____, 2015.

_____
Notary Public

PETER I. CAVALLARO
Notary Public, State of New York
No. 02CA4912316
Qualified in Nassau County
Commission Expires October 19, 20__16

[TRANSFEREE SIGNATURE PAGE TO SETTLEMENT AGREEMENT]

31

**TRANSFEREE**

**RPP INVESTMENT ASSOCIATES LLC**

By: _____
Name: Ralph P. Pascucci
Title:  Managing Member

Address:
RPP Investment Associates LLC
c/o Duck Pond Corp.
Attn.:  Peter I. Cavallaro, Esq.
270 South Service Road, Suite 45
Melville, NY  11747
Facsimile (631) 777-8440

With copies to:
King & Spalding
1185 Avenue of the Americas
New York, New York 10036
Attention: Arthur J. Steinberg
Facsimile No.: 212.556.2222

Sworn and subscribed before me this
22nd day of _____April_____, 2015.

_____
Notary Public

PETER I. CAVALLARO
Notary Public, State of New York
No. 02CA4912316
Qualified in Nassau County
Commission Expires October 19, 20__

[TRANSFEREE SIGNATURE PAGE TO SETTLEMENT AGREEMENT]

**TRANSFEREE**

MCP INVESTMENT ASSOCIATES LLC

By: _____
　　Name:  Michael C. Pascucci
　　Title: Managing Member

Address:
MCP Investment Associates LLC
c/o Duck Pond Corp.
Attn.:  Peter I. Cavallaro, Esq.
270 South Service Road, Suite 45
Melville, NY  11747
Facsimile (631) 777-8440

With copies to:
King & Spalding
1185 Avenue of the Americas
New York, New York 10036
Attention: Arthur J. Steinberg
Facsimile No.: 212.556.2222

Sworn and subscribed before me this
____ day of _____, 2015.

_____
Notary Public

PETER I. CAVALLARO
Notary Public, State of New York
No. 02CA4912316
Qualified in Nassau County
Commission Expires October 19, 20__

[TRANSFEREE SIGNATURE PAGE TO SETTLEMENT AGREEMENT]

**TRANSFEREE**

JD PARTNERS LLC

By: _____
    Name: John A. Danzi
    Title: Managing Director

Address:
JD Partners LLC
c/o Long Island Hotels
John A. Danzi, LLC
1757 Veterans Hwy  Suite 36
Islandia, NY  11749

With copies to:
King & Spalding
1185 Avenue of the Americas
New York, New York 10036
Attention: Arthur J. Steinberg
Facsimile No.: 212.556.2222

MARY SUSAN DANIELS
NOTARY PUBLIC-STATE OF NEW YORK
No. 01DA6115736
Qualified in Suffolk County
My Commission Expires September 13, 2016

Sworn and subscribed before me this
20th day of ___April_____, 2015.

_____
Notary Public

[TRANSFEREE SIGNATURE PAGE TO SETTLEMENT AGREEMENT]

**TRANSFEREE**

John A. Danzi

Address:
John A. Danzi
c/o Long Island Hotels
John A. Danzi, LLC
1757 Veterans Hwy  Suite 36
Islandia, NY  11749

With copies to:
King & Spalding
1185 Avenue of the Americas
New York, New York 10036
Attention: Arthur J. Steinberg
Facsimile No.: 212.556.2222

MARY SUSAN DANIELS
NOTARY PUBLIC-STATE OF NEW YORK
No. 01DA6115736
Qualified in Suffolk County
My Commission Expires September 13, 2016

Sworn and subscribed before me this
20th day of _April_____, 2015.

Notary Public

[TRANSFEREE SIGNATURE PAGE TO SETTLEMENT AGREEMENT]

**TRANSFEREE**

_____
**Deborah Danzi**

Address:
Deborah Danzi
c/o Long Island Hotels
John A. Danzi, LLC
1757 Veterans Hwy  Suite 36
Islandia, NY  11749

With copies to:
King & Spalding
1185 Avenue of the Americas
New York, New York 10036
Attention: Arthur J. Steinberg
Facsimile No.: 212.556.2222

MARY SUSAN DANIELS
NOTARY PUBLIC-STATE OF NEW YORK
No. 01DA6115736
Qualified in Suffolk County
My Commission Expires September 13, 2016

Sworn and subscribed before me this
21ˢᵗ day of _____April_____, 2015.

_____
Notary Public

[TRANSFEREE SIGNATURE PAGE TO SETTLEMENT AGREEMENT]

**TRANSFEREE**

Janice Danzi Sennello

Address:
Janice Danzi Sennello
c/o Long Island Hotels
John A. Danzi, LLC
1757 Veterans Hwy  Suite 36
Islandia, NY  11749

With copies to:
King & Spalding
1185 Avenue of the Americas
New York, New York 10036
Attention: Arthur J. Steinberg
Facsimile No.: 212.556.2222

Sworn and subscribed before me this
18ᵗʰ day of NPRL_____, 2015.

_____
Notary Public

MICHAEL B. RICKARD
Notary Public - State of Florida
Commission # EE 169026
My Commission Expires
March 30, 2016

[TRANSFEREE SIGNATURE PAGE TO SETTLEMENT AGREEMENT]

**TRANSFEREE**

MAF ASSOCIATES, LLC

By: _____
Name: Mark A. Freeman
Title: Managing Partner

Address:
MAF Associates, LLC
116 St. Edward Place
Palm Beach Gardens, Florida 33148
[_____]
[_____]
[_____]

With copies to:
King & Spalding
1185 Avenue of the Americas
New York, New York 10036
Attention: Arthur J. Steinberg
Facsimile No.: 212.556.2222

Sworn and subscribed before me this
16ᵗʰ day of _April_____, 2015.

_____
Notary Public

[TRANSFEREE SIGNATURE PAGE TO SETTLEMENT AGREEMENT]



PAMELA N. LAWLER
MY COMMISSION # EE223808
EXPIRES: August 09, 2016

**TRANSFEREE**

_____
Mark A. Freeman

Address:
Mark A. Freeman
116 St. Edward Place
Palm Beach Gardens, Florida 33148

With copies to:
King & Spalding
1185 Avenue of the Americas
New York, New York 10036
Attention: Arthur J. Steinberg
Facsimile No.: 212.556.2222

Sworn and subscribed before me this
_16_ day of _April_____, 2015.

_____
Notary Public

[TRANSFEREE SIGNATURE PAGE TO SETTLEMENT AGREEMENT]



PAMELA N. LAWLER
MY COMMISSION # EE223808
EXPIRES: August 09, 2016

**TRANSFEREE**

_Francine Freeman_
Francine Freeman

Address:
Francine Freeman
116 St. Edward Place
Palm Beach Gardens, Florida 33148

With copies to:
King & Spalding
1185 Avenue of the Americas
New York, New York 10036
Attention: Arthur J. Steinberg
Facsimile No.: 212.556.2222

Sworn and subscribed before me this
16th day of _April_____, 2015.

_____
Notary Public

[TRANSFEREE SIGNATURE PAGE TO SETTLEMENT AGREEMENT]



PAMELA N. LAWLER
MY COMMISSION # EE223808
EXPIRES: August 09, 2016