**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
Irving H. Picard
Email: ipicard@bakerlaw.com
David J. Sheehan
Email: dsheehan@bakerlaw.com
Seanna R. Brown
Email: sbrown@bakerlaw.com
Heather R. Wlodek
Email: hwlodek@bakerlaw.com

*Attorneys for Irving H. Picard, Trustee for the
Substantively Consolidated SIPA Liquidation of
Bernard L. Madoff Investment Securities LLC
and Bernard L. Madoff*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, <br><br> Plaintiff-Applicant, <br><br> v. <br><br> BERNARD L. MADOFF INVESTMENT SECURITIES LLC, <br><br> Defendant. | Adv. Pro. No. 08-01789 (SMB) <br><br> SIPA Liquidation <br><br> (Substantively Consolidated) |
| In re: <br><br> BERNARD L. MADOFF, <br><br> Debtor. | |

## TRUSTEE'S THIRTEENTH INTERIM REPORT
## FOR THE PERIOD OCTOBER 1, 2014 THROUGH MARCH 31, 2015

# TABLE OF CONTENTS

**Page**

I.    EXECUTIVE SUMMARY ...................................................................1

II.    BACKGROUND ...................................................................3

III.    FINANCIAL CONDITION OF THE ESTATE ...................................4

IV.    ADMINISTRATION OF THE ESTATE ...........................................5

    A.    Marshaling And Liquidating The Estate Assets ...................5

V.    CLAIMS ADMINISTRATION ..........................................................6

    A.    Claims Processing ...........................................................6

        i.    Customer Claims ...............................................6

        ii.    General Creditor Claims ....................................6

        iii.    The Trustee Has Kept Customers Informed Of The Status Of The Claims Process.....................7

        iv.    The Hardship Program .......................................8

    B.    Objections To Claims Determinations............................9

    C.    Settlements Of Customer Claims Disputes......................10

VI.    PROCEEDINGS RELATED TO THE INTERPRETATION OF SIPA ..........11

    A.    Net Equity Dispute............................................................11

    B.    Time-Based Damages .......................................................14

    C.    "Customer" Definition .....................................................15

    D.    Fact-Based Objections ......................................................21

    E.    Inter-Account Transfers ....................................................21

    F.    Profit-Withdrawal Issue ...................................................23

VII.    RECOVERIES AND CONTINGENCIES .........................................24

    A.    Recoveries Accomplished During Prior Report Periods ......24

    B.    Recoveries Accomplished During This Report Period...........24

    C.    Earlier Settlements............................................................25

VIII.    THE TRUSTEE'S ALLOCATION OF FUNDS AND  DISTRIBUTIONS TO CUSTOMERS ...................................................................26

    A.    The Customer Fund............................................................26

    B.    The Trustee's Initial Allocation of Property to the Fund of Customer Property and Authorizing the First Interim Distribution to Customers .................27

    C.    The Trustee's Second Allocation of Property to the Fund of Customer Property and Authorizing the Second Interim Distribution to Customers.............28

# TABLE OF CONTENTS
(continued)

|  |  |  | Page |
|---|---|---|---|

D.    The Trustee's Third Allocation of Property to the Fund of Customer Property and Authorizing the Third Interim Distribution to Customers ...............29

E.    The Trustee's Fourth Allocation of Property to the Fund of Customer Property and Authorizing the Fourth Interim Distribution to Customers .............30

F.    The Trustee's Fifth Allocation of Property to the Fund of Customer Property and Authorizing the Fifth Interim Distribution to Customers ................32

G.    The Trustee's Sixth Allocation of Property to the Fund of Customer Property and Authorizing the Sixth Interim Distribution to Customers ...............33

H.    The General Estate ........................................................................................34

IX.    LITIGATION ..............................................................................................................34

A.    The District Court—Motions to Withdraw the Reference, Motions to Dismiss and Related Appeals...............................................................................34

    i.    Proceedings Relating to Motions to Withdraw ..........................................34

        (a)    The Administrative Order ..............................................................34

        (b)    Consolidated Briefing Orders .......................................................35

        (c)    The 546(e) Appeal ........................................................................39

B.    Litigation in the Bankruptcy Court and Related Appeals ....................................40

    i.    Avoidance Actions ....................................................................................40

        (a)    District Court Proceedings ............................................................40

        (b)    Bankruptcy Court Proceedings .....................................................41

    ii.    Subsequent Transferee Actions ...............................................................43

    iii.    *Picard v. ABN AMRO Bank N.A.* ............................................................45

    iv.    *Picard v. ABN AMRO (Ireland) Ltd.* ......................................................48

    v.    *Picard v. HSBC Bank plc* ........................................................................51

    vi.    *The Luxalpha Action* ...............................................................................54

    vii.    *The Kohn Action* .....................................................................................56

    viii.    *Picard v. Nomura Int'l plc* .......................................................................60

    ix.    *Picard v. Equity Trading* ..........................................................................64

    x.    *Picard v. Avellino* ....................................................................................65

    xi.    *Picard v. BNP Paribas* .............................................................................66

    xii.    *Picard v. Cohmad Sec. Corp.* ...................................................................68

    xiii.    *Picard v. Defender* ...................................................................................70

# TABLE OF CONTENTS
### (continued)

|  |  | | **Page** |
|---|---|---|---|
| xiv. | *Picard v. Friedman* | | 72 |
| xv. | *Picard v. J. Ezra Merkin* | | 73 |
| xvi. | *Picard v. Kingate* | | 78 |
| xvii. | *Picard v. Legacy Capital Limited* | | 80 |
| xviii. | *Picard v. Magnify Inc.* | | 81 |
| xix. | *Picard v. Merrill Lynch* | | 82 |
| xx. | *Picard v. Natixis* | | 85 |
| xxi. | *Picard v. Andrew H. Madoff* | | 88 |
| xxii. | *Picard v. Richard M. Glantz* | | 94 |
| xxiii. | *Picard v. Stanley Chais* | | 96 |
| xxiv. | *Picard v. Stanley Shapiro* | | 97 |
| xxv. | *Picard v. Fairfield Greenwich* | | 98 |
| xxvi. | *Picard v Vizcaya* | | 101 |
| xxvii. | *Picard v Rye/Tremont* | | 103 |
| C. | Injunction Proceedings | | 105 |
| i. | *Picard v. Marshall* | | 106 |
| ii. | *Picard v. A&G Goldman Partnership* | | 108 |
| X. | INTERNATIONAL INVESTIGATION AND LITIGATION | | 109 |
| A. | Austria and Italy | | 109 |
| B. | Bermuda | | 109 |
| C. | BVI and the Cayman Islands | | 110 |
| D. | England | | 111 |
| E. | Gibraltar | | 111 |
| F. | Ireland | | 113 |
| G. | Switzerland and Luxembourg | | 113 |
| XI. | FEE APPLICATIONS AND RELATED APPEALS | | 113 |
| A. | Objections to Prior Fee Applications | | 113 |
| B. | Sixteenth Fee Application | | 114 |
| C. | Seventeenth Fee Application | | 114 |
| XII. | CONCLUSION | | 115 |

TO THE HONORABLE STUART M. BERNSTEIN,
UNITED STATES BANKRUPTCY JUDGE:

Irving H. Picard, Esq. (the "Trustee"), as Trustee for the substantively consolidated liquidation proceeding of Bernard L. Madoff Investment Securities LLC ("BLMIS"), under the Securities Investor Protection Act ("SIPA"),[1] 15 U.S.C. §§ 78aaa *et seq.*, and the estate of Bernard L. Madoff ("Madoff," and together with BLMIS, each a "Debtor" and collectively, the "Debtors"), respectfully submits his Thirteenth Interim Report (this "Report") pursuant to SIPA § 78fff-1(c) and this Court's Order on Application for an Entry of an Order Approving Form and Manner of Publication and Mailing of Notices, Specifying Procedures For Filing, Determination, and Adjudication of Claims; and Providing Other Relief entered on December 23, 2008 (the "Claims Procedures Order") (ECF No. 12).[2]  Pursuant to the Claims Procedures Order, the Trustee shall file additional interim reports every six (6) months.  This Report covers the period between October 1, 2014 and March 31, 2015 (the "Report Period").

## I.    EXECUTIVE SUMMARY

1.    The Trustee has worked relentlessly for over six years to recover customer property and distribute it to BLMIS customers.  Through pre-litigation and other settlements, the Trustee has successfully recovered or reached agreements to recover, approximately $10.6 billion—more than 60% of the currently estimated principal lost in the Ponzi scheme by those who filed claims—for the benefit of all BLMIS customers with allowed claims. [3]

---

[1] For convenience, subsequent references to SIPA will omit "15 U.S.C."

[2] All ECF references refer to pleadings filed in the main adversary proceeding pending before this Court, *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, Adv. No. 08-01789 (BRL) (Bankr. S.D.N.Y.), unless otherwise noted.

[3] Almost $20 billion of principal was lost in the Ponzi scheme in total.  Of the $20 billion, approximately $17.5 billion of principal was lost by those who filed claims.

2.      On December 22, 2014, the Trustee moved for a fifth allocation and pro rata interim distribution of the Customer Fund.  On January 15, 2015, this Court entered an Order Approving the Trustee's Fifth Allocation of Property to the Fund of Customer Property and Authorizing a Fifth Interim Distribution to Customers, in which the Trustee allocated approximately $704.4 million to the Customer Fund.  On February 6, 2015, the Trustee distributed approximately $355.761 million on allowed claims relating to 1,077 accounts, or 2.743% of each customer's allowed claim, unless the claim was fully satisfied.  When combined with the approximately $605.248 million first interim distribution, the $4.395 billion second interim distribution, the $614.259 million third interim distribution, the $412.985 fourth interim distribution and $824.250 million in advances paid or committed to be paid by the Securities Investor Protection Corporation ("SIPC"),[4] the Trustee has distributed approximately $7.207 billion to BLMIS customers, with 1,160 BLMIS accounts fully satisfied.  The 1,160 fully satisfied accounts represent over 52% of accounts with allowed claims, demonstrating that the Trustee has made significant progress in returning customer property to BLMIS customers.

3.      On April 15, 2015, the Trustee moved for a sixth allocation and pro rata interim distribution of the Customer Fund.  Pursuant to the Sixth Allocation and Sixth Interim Distribution Motion, the Trustee seeks approval to release the bulk of the Time-Based Damages reserve and distribute such funds.  The Sixth Allocation and Sixth Interim Distribution Motion currently is set for hearing on May 28, 2015.

4.      The Trustee and his counsel (including, but not limited to, Baker & Hostetler LLP ("B&H"), Windels Marx Lane & Mittendorf, LLP ("Windels Marx"), and various special

---

[4] SIPC has advanced over $821 million to date to the Trustee to pay allowed claims.  The difference between the amount committed to pay by SIPC and the amount actually advanced to customers depends on whether the Trustee has received an executed assignment and release from the customer. Thus, the amount of SIPC advances requested by the Trustee and paid for allowed customer claims is less than the amount of SIPC advances committed by the Trustee.

counsel retained by the Trustee ("Special Counsel") (collectively, "Counsel"), continued to litigate hundreds of individual cases before this Court, the United States District Court for the Southern District of New York (the "District Court"), the United States Court of Appeals for the Second Circuit (the "Second Circuit"), the United States Supreme Court (the "Supreme Court"), and dozens of international courts.

5.      This Report is meant to provide an overview of the efforts of the Trustee and his team of professionals in unwinding the largest Ponzi scheme in history. Billions of dollars and thousands of people and entities located across the world were involved in this fraud. The Trustee continues to work diligently to coordinate the administration, investigation, and litigation to maximize efficiencies and reduce costs.

6.      All Interim Reports, along with a complete docket and substantial information about this liquidation proceeding, are located on the Trustee's website, www.madofftrustee.com (the "Trustee Website").

## II.    BACKGROUND

7.      The Trustee's prior interim reports, each of which is fully incorporated herein,[5] have detailed the circumstances surrounding the filing of this case and the events that have taken place during prior phases of this proceeding.

---

[5] Prior reports cover the periods from December 11, 2008 to June 30, 2009 (the "First Interim Report") (ECF No. 314); July 1, 2009 to October 31, 2009 (the "Second Interim Report") (ECF No. 1011); November 1, 2009 to March 31, 2010 (the "Amended Third Interim Report") (ECF No. 2207); April 1, 2010 to September 30, 2010 (the "Fourth Interim Report") (ECF No. 3038); October 1, 2010 to March 31, 2011 (the "Fifth Interim Report") (ECF No. 4072); April 1, 2011 to September 30, 2011 (the "Sixth Interim Report") (ECF No. 4529); October 1, 2011 to March 31, 2012 (the "Seventh Interim Report") (ECF No. 4793); April 1, 2012 to September 30, 2012 (the "Eighth Interim Report") (ECF No. 5066); October 1, 2012 to March 31, 2013 (the "Ninth Interim Report") (ECF No. 5351); April 1, 2013 to September 30, 2013 (the "Tenth Interim Report") (ECF No. 5554); October 1, 2013 to March 31, 2014 (the "Eleventh Interim Report") (ECF No. 6466); and April 1, 2014 to September 30, 2014 (the "Twelfth Interim Report") (ECF No. 8276).

### III.    FINANCIAL CONDITION OF THE ESTATE

8.    No administration costs, including the compensation of the Trustee and his counsel, are being paid out of recoveries obtained by the Trustee for the benefit of BLMIS customers.  Rather, the fees and expenses of the Trustee, his counsel and consultants, and administrative costs incurred by the Trustee are paid from administrative advances from SIPC. These costs are chargeable to the general estate and have no impact on recoveries that the Trustee has obtained or will obtain.  Thus, recoveries from litigation, settlements, and other means will be available in their entirety for the satisfaction of customer claims.

9.    A summary of the financial condition of the estate as of March 31, 2015 is provided in Exhibit A attached hereto.

10.    This summary reflects cash of $144,815,298.27, short term investments, money market deposit accounts, certificates of deposit and other minor investments of $812,730,739 and short-term United States Treasuries in the amount of $3,119,572,393.  *See* Exhibit A, page 3, note (3) and page 5, notes (5) and (6).

11.    As detailed in Exhibit A, as of March 31, 2015, the Trustee requested and SIPC advanced $1,969,718,389.25, of which $821,595,185.51 was used to pay allowed customer claims up to the maximum SIPA statutory limit of $500,000 per account,[6] and $1,148,123,203.74 was used for administrative expenses.  *See* Exhibit A, page 1.

---

[6] The Trustee must receive an executed assignment and release from each customer before releasing an advance of funds from SIPC.  Thus, the amount of SIPC advances requested by the Trustee and paid for allowed customer claims that have been determined is less than the amount of SIPC advances committed by the Trustee.  *See supra* note 4.

## IV. ADMINISTRATION OF THE ESTATE

### A. Marshaling And Liquidating The Estate Assets

12.     The Trustee and his Counsel have worked diligently to investigate, examine, and evaluate the Debtor's activities, assets, rights, liabilities, customers, and other creditors. Thus far, the Trustee has been successful in recovering or entering into agreements to recover a significant amount of assets for the benefit of customers, totaling nearly $10.6 billion through March 31, 2015. For a more detailed discussion of prior recoveries, see Section V.B. of the First Interim Report; Section IV of the Second, Amended Third, and Fourth Interim Reports; Section VII of the Fifth Interim Report; Section IV of the Sixth Interim Report; and Section VII of the Seventh through Twelfth Interim Reports.

13.     The Trustee has identified claims in at least eight shareholder class action suits that BLMIS filed before the Trustee's appointment arising out of its proprietary and market making desk's ownership of securities. As of the Thirteenth Interim Report, the Trustee had received distributions from seven of these class action settlements totaling over $91,000. The Trustee has not and will not receive any distributions from the eighth class action settlement. In addition, the Trustee has identified claims that BLMIS may have in 180 other class action suits also arising out of its proprietary and market making activities. The Trustee has filed proofs of claim in 121 of these cases and, based on a review of relevant records, has declined to pursue claims in 46 additional cases. Subject to the completion of a review of relevant records, the Trustee intends to file claims in the remaining 13 cases. As of March 31, 2015, the Trustee has recovered $1,623,857.65 from settlements relating to 57 of the 121 claims filed directly by the Trustee, of which $335,048.89 was recovered during the Report Period.

## V.    CLAIMS ADMINISTRATION

### A.    Claims Processing

#### i.    Customer Claims

14.    During the Report Period, the Trustee allowed $2,147,656,519.18 in customer claims.    This brings the total amount of allowed claims as of March 31, 2015 to $13,568,096,668.92.    The Trustee has paid or committed to pay $824,250,279.82 in cash advances from SIPC.    This is the largest commitment of SIPC funds of any SIPA liquidation proceeding and greatly exceeds the total aggregate payments made in all SIPA liquidations to date.

15.    As of March 31, 2015, there were 122 claims relating to 85 accounts that were "deemed determined," meaning the Trustee has instituted litigation against those accountholders and related parties.    The complaints filed by the Trustee in those litigations set forth the express grounds for disallowance of customer claims under § 502(d) of the Bankruptcy Code. Accordingly, such claims will not be allowed until the avoidance actions are resolved by settlement or otherwise and the judgments rendered against the claimants in the avoidance actions are satisfied.

#### ii.    General Creditor Claims

16.    As of March 31, 2015, the Trustee had received 427 timely and 22 untimely filed secured and unsecured priority and non-priority general creditor claims totaling approximately $1.7 billion.    The claimants include vendors, taxing authorities, employees, and customers filing claims on non-customer proof of claim forms.    Of these 427 claims and $1.7 billion, the Trustee has received 94 general creditor claims and 49 broker-dealer claims totaling approximately $264.9 million.    At this time, the BLMIS estate has no funds from which to make distributions to priority/non-priority general creditors and/or broker dealers.

6

### iii.    The Trustee Has Kept Customers Informed Of The Status Of The Claims Process

17.    Throughout the liquidation proceeding, the Trustee has kept customers, interested parties, and the public informed of his efforts by maintaining the Trustee Website, a toll-free customer hotline, conducting a Bankruptcy Code § 341(a) meeting of creditors on February 20, 2009, and responding to the multitude of phone calls, e-mails, and letters received on a daily basis, from both claimants and their representatives.

18.    The Trustee Website allows the Trustee to share information with claimants, their representatives, and the general public regarding the ongoing recovery efforts and the overall liquidation.  In addition to court filings, media statements, and weekly information on claims determinations, the Trustee Website includes up-to-date information on the status of Customer Fund recoveries, an "Ask the Trustee" page where questions of interest are answered and updated, a letter from the Chief Counsel to the Trustee on litigation matters, a detailed distribution page, an FAQs page, and a timeline of important events.  The Trustee Website is monitored and updated on a daily basis.

19.    In addition, the Trustee Website allows claimants to e-mail their questions directly to the Trustee's professionals, who follow up with a return e-mail or telephone call to the claimants.  As of March 31, 2015, the Trustee and his professionals had received and responded to more than 7,100 e-mails via the Trustee Website from BLMIS customers and their representatives.

20.    The toll-free customer hotline provides status updates on claims and responses to claimants' questions and concerns.  As of March 31, 2015, the Trustee, B&H, and the Trustee's professionals had fielded more than 8,200 calls from claimants and their representatives.

21.     In sum, the Trustee and his team have endeavored to respond in a timely manner to every customer inquiry and ensure that customers are as informed as possible about various aspects of the BLMIS proceeding.

### iv.      The Hardship Program

22.     At the commencement of claims administration, the Trustee established the Hardship Program to accelerate the determination of claims and the receipt of SIPC protection up to $500,000 for individual account holders who were dealing with hardship.  An individual could qualify for the Hardship Program if he or she filed a claim and was unable to pay for necessary living or medical expenses, over 65 years old and forced to reenter the work force after retirement, declaring personal bankruptcy, unable to pay for the care of dependents, or suffering from extreme financial hardship beyond the identified circumstances.

23.     As of December 11, 2010, the Trustee had received 394 Hardship Program applications.  The Trustee obtained advances from SIPC and issued 122 checks to hardship applicants with allowed claims.  The Trustee also worked in good faith with approved applicants to reconcile any disputed portions of their claims.  Of the 394 Hardship Program applications received prior to December 11, 2010, the Trustee assessed the information provided and, in the exercise of his discretion, decided not to commence avoidance actions against 249 hardship applicants.

24.     The Trustee expanded the Hardship Program into a second phase as he instituted avoidance actions.  While the law requires the Trustee to pursue avoidance actions to recover customer property, the Trustee has stated that he will not pursue avoidance actions against BLMIS accountholders suffering proven hardship.  In order to forego an avoidance action, the Trustee needed financial information about the accountholder.  Thus, the Trustee announced in November 2010 that the Hardship Program would focus on avoidance action defendants and

8

requested that accountholders come forward to share information regarding their hardships. Through this program, the Trustee has worked with a substantial number of hardship applicants who were subject to avoidance actions to confirm their hardship status and forego the pursuit of an avoidance action.

25.    As of March 31, 2015, the Trustee had received 521 applications from avoidance action defendants relating to 332 adversary proceedings.    After reviewing the facts and circumstances presented in each application and, in many cases, requesting additional verifying information, the Trustee dismissed 210 Hardship Program applicants-defendants from avoidance actions.  As of March 31, 2015, there were 66 applications still under review and 245 that were resolved because they were either withdrawn by the applicant, deemed withdrawn for failure of the applicant to pursue the application, denied for lack of hardship or referred for consideration of settlement.  The Trustee has also extended the time for applicants to answer or otherwise respond to avoidance action complaints while their Hardship Program applications are pending.

26.    The Trustee established a Hardship Program Hotline with a telephone number and electronic mail address.  A large number of potential applicants have been assisted by the Trustee through the use of the Hotline, and the Trustee urges customers to continue using this resource and the Hardship Program if they believe they qualify.  Further information and applications are available on the Trustee Website.

**B.    Objections To Claims Determinations**

27.    As required by the Claims Procedures Order and described in each determination letter sent by the Trustee ("Determination Letter"), BLMIS claimants have thirty days from the date of a Determination Letter to object to the Trustee's determination of their claim.  Claimants who disagree with the Trustee's determination of their claim must file with the Court a written opposition setting forth the grounds of disagreement and provide the Trustee with the same.  A

hearing date will be obtained by the Trustee, and claimants will be notified of that date. As of March 31, 2015, 2,192 objections (which include duplicates, amendments, and supplements) have been filed with the Court. These objections relate to 3,817 unique claims and 1,104 accounts.

28.    The following objections, among others, have been asserted: Congress intended a broad interpretation of the term "customer" and the statute does not limit the definition to those who had a direct account with BLMIS, the Trustee should determine claims based upon the BLMIS November 30, 2008 statement as opposed to the court-approved cash in-cash out or "Net Investment Method," claimants should receive interest on deposited amounts, the Trustee must commence an adversary proceeding against each claimant in order to avoid paying gains on claimants' investments, claimants paid income taxes on distributions and their claims should be adjusted by adding all amounts they paid as income taxes on fictitious profits, each person with an interest in an account should be entitled to the SIPC advance despite sharing a single BLMIS account, and there is no legal basis for requiring the execution of a Assignment and Release prior to prompt payment of a SIPC advance.

29.    The Trustee has departed from past practice in SIPA proceedings and paid or committed to pay the undisputed portion of any disputed claim in order to expedite payment of SIPC protection to customers, while preserving their right to dispute the total amount of their claim.

C.    **Settlements Of Customer Claims Disputes**

30.    The Trustee has continued settlement negotiations with customers who withdrew funds from their BLMIS accounts within ninety days of the Filing Date.[7]  Such withdrawals are

---

[7] In this case, the Filing Date is the date on which the SEC commenced its suit against BLMIS, December 11, 2008, which resulted in the appointment of a receiver for the firm. *See* § 78*lll*(7)(B) of SIPA, 15 U.S.C. § 78*lll*(7)(B).

preferential transfers recoverable by the Trustee under Bankruptcy Code §§ 547(b) and 550(a), which are applicable in this proceeding pursuant to SIPA §§ 78fff(b) and 78fff-2(c)(3).  To settle potential preference actions against these customers, the Trustee has proposed that the customers agree to authorize the Trustee to deduct the preferential amount from the initial payment advanced by SIPC pursuant to § 78fff-3(a)(1) of SIPA.  The allowed claim is thus calculated based on the amount of money the customer deposited with BLMIS for the purchase of securities, less subsequent withdrawals, plus the preferential amount.  The customer will be entitled to receive an additional distribution from the Customer Fund based on the total amount of the allowed claim.

31.    As of March 31, 2015, the Trustee had reached agreements relating to 679 accounts and with the IRS (which did not have a BLMIS account), recovering $9,593,401,868.27 in litigation, pre-litigation, and avoidance action settlements.  These litigation, pre-litigation, and avoidance action settlements allowed the Trustee to avoid the litigation costs that would have been necessary to obtain and collect judgments from these customers.

## VI.    PROCEEDINGS RELATED TO THE INTERPRETATION OF SIPA

### A.    Net Equity Dispute

32.    For purposes of determining each customer's Net Equity, as that term is defined under SIPA, the Trustee credited the amount of cash deposited by the customer into his BLMIS account, less any amounts already withdrawn from that BLMIS customer account, also known as the Net Investment Method.  Some claimants argued that the Trustee was required to allow customer claims in the amounts shown on the November 30, 2008 customer statements (the "Net Equity Dispute").

33.    This Court issued a decision on March 1, 2010 upholding the Trustee's Net Investment Method as the only interpretation consistent with the plain meaning and legislative

history of the statute, controlling Second Circuit precedent, and considerations of equity and practicality. (ECF No. 2020); *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 424 B.R. 122 (Bankr. S.D.N.Y. 2010). This Court certified an immediate appeal to the Second Circuit (ECF No. 2467), which heard oral argument on March 3, 2011.

34.    On August 16, 2011, the Second Circuit affirmed this Court's decision and the Trustee's Net Investment Method, holding that it would have been "legal error" for the Trustee to discharge claims for securities under SIPA "upon the false premise that customers' securities positions are what the account statements purport them to be." *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d 229, 241 (2d Cir. 2011). Any calculation other than the Net Investment Method would "aggravate the injuries caused by Madoff's fraud." *Id*. at 235. Instead, the Net Investment Method prevents the "whim of the defrauder" from controlling the process of unwinding the fraud. *Id*.

35.    Under the Second Circuit's decision, the relative position of each BLMIS customer account must be calculated based on "unmanipulated withdrawals and deposits" from its opening date through December 2008. *Id*. at 238. If an account has a positive cash balance, that accountholder is owed money from the estate. As a corollary, if an account has a negative cash balance, the accountholder owes money to the estate. Both the recovery and distribution of customer property in this case are centered on the principle that the Trustee cannot credit "impossible transactions." *Id*. at 241. If he did, then "those who had already withdrawn cash deriving from imaginary profits in excess of their initial investment would derive additional benefit at the expense of those customers who had not withdrawn funds before the fraud was exposed." *Id*. at 238.

12

36.     First, the Second Circuit found, "in the context of this Ponzi scheme—the Net Investment Method is . . . more harmonious with provisions of the Bankruptcy Code that allow a trustee to avoid transfers made with the intent to defraud . . . and 'avoid[s] placing some claims unfairly ahead of others.'"  *Id.* at 242 n.10 (quoting *Jackson v. Mishkin (In re Adler, Coleman Clearing Corp.*), 263 B.R. 406, 463 (S.D.N.Y. 2001)).  Thus, the Trustee is obligated to use the avoidance powers granted by SIPA and the Bankruptcy Code to prevent one class of customers—the "net winners" or those with avoidance liability—from having the benefit of Madoff's fictitious trades at the expense of the other class of customers—the "net losers," or those who have yet to recover their initial investment.

37.     Next, the Second Circuit explained that "notwithstanding the BLMIS customer statements, there were no securities purchased and there were no proceeds from the money entrusted to Madoff for the purpose of making investments."  *Id.* at 240.  Therefore any "[c]alculations based on made-up values of fictional securities would be 'unworkable' and would create 'potential absurdities.'"  *Id.* at 241 (quoting *In re New Times Sec. Serv., Inc.*, 371 F.3d 68, 88 (2d Cir. 2004)).  Thus, the Second Circuit rejected reliance upon the BLMIS account statements, finding that, to do otherwise, "would have the absurd effect of treating fictitious and arbitrarily assigned paper profits as real and would give legal effect to Madoff's machinations."  *Id.* at 235.

38.     On September 6, 2011, certain claimants filed a petition for panel rehearing, or, in the alternative, for rehearing en banc.  *Sterling Equities Assoc. v. Picard*, Adv. No. 10-2378 (2d Cir.) (ECF Nos. 505, 537).  The panel that determined the appeal considered the request for panel rehearing, the active members of the Court considered the request for rehearing en banc, and on November 8, 2011, both denied the petition.  (ECF No. 551).

39.    Three petitions for certiorari were filed with the Supreme Court.  On June 25, 2012, the Supreme Court denied certiorari in two of the petitions.  *Ryan v. Picard*, 133 S. Ct. 24 (2012); *Velvel v. Picard*, 133 S. Ct. 25 (2012).  Certiorari was also dismissed with respect to one appeal.  *Sterling Equities Assoc. v. Picard*, 132 S. Ct. 2712 (2012).

**B.    Time-Based Damages**

40.    Following the Supreme Court decision denying certiorari regarding the Net Investment Method, the Trustee filed a motion seeking the affirmance of his calculations of net equity, and denying certain claimants' request for "time-based damages."  (ECF Nos. 5038, 5039).  The Trustee took the position that customers were not entitled to an inflation-based adjustment to their allowed customer claims.

41.    Over the objections of hundreds of parties, the Court granted the Trustee's motion, finding that claimants were not entitled to time-based damages as part of their net equity claims against the fund of customer property (the "Time-Based Damages Decision").  (ECF No. 5463).

42.    Thereafter, the parties submitted a letter requesting that the Court certify a direct appeal of the Time-Based Damages Decision to the Second Circuit under 28 U.S.C. § 158(d)(2).  (ECF No. 5488).  On September 24, 2013, the Court certified the Time-Based Damages Decision for a direct appeal to the Second Circuit, (ECF No. 5514), which was accepted on January 22, 2014.  *In re Bernard L. Madoff Inv. Sec. LLC*, No. 14-97(L) (2d Cir. Jan. 22, 2014).  Oral argument took place on October 14, 2014.

43.    On February 20, 2015, the Second Circuit affirmed the Bankruptcy Court's decision, holding that "SIPA's scheme disallows an inflation adjustment as a matter of law" and that the SEC was not owed *Skidmore* or *Chevron* deference.  *See In re Bernard L. Madoff Inv.*

*Sec. LLC*, 779 F.3d 74, 80, 82 (2d Cir. 2015). The Court also held that "an interest adjustment to customer net equity claims is impermissible under SIPA's scheme." *Id.* at 83.

44.    Under the Second Circuit's decision, a customer's net equity claim, calculated in accordance with the Net Equity Decision, will not be adjusted for inflation or interest. The Second Circuit explained that "an inflation adjustment goes beyond the scope of SIPA's intended protections and is inconsistent with SIPA's statutory framework." *Id.* at 79. Nor does SIPA provide for compensation related to any opportunity cost of the use of such money during the pendency of the liquidation proceedings. *Id.* at 80. While SIPA operates to "facilitate the proportional distribution of customer property actually held by the broker," *Id*. at 81, "the Act . . . restores investors to what their position would have been in the absence of liquidation." *Id.* at 79. For similar reasons, the Second Circuit rejected the request of one claimant who sought an adjustment for interest, in addition to inflation. *Id.* at 83.

45.    Certain claimants urged the Court to apply deference to the SEC's view, which supported their position that customer claims were deserving of an inflation-based adjustment. While the SEC clarified that it did not seek deference at all, but if it were, it would have been *Skidmore*, a more fluid level of deference than the kind sought by the claimants. Nevertheless, the Second Circuit held that no deference was owed to the SEC's views in this case. *Id.* at 82.

46.    The claimants did not file a petition for rehearing in the Second Circuit. As of the date of this report, no petition for a writ of certiorari in the Supreme Court has been filed. The time within which the claimants must file such petition expires on May 21, 2015.

## C.    "Customer" Definition

47.    The Trustee's position consistently has been that only those claimants who maintained an account at BLMIS constitute "customers" of BLMIS, as defined in § 78lll(2) of SIPA. Where it appeared that claimants did not have an account in their names at BLMIS

("Claimants Without An Account"), the Trustee denied their claims for securities and/or a credit

balance on the ground that they were not customers of BLMIS under SIPA.

48.    On June 11, 2010, the Trustee filed a Motion For An Order To Affirm Trustee's

Determinations Denying Claims of Claimants Without BLMIS Accounts in Their Names,

Namely, Investors in Feeder Funds.  (ECF Nos. 2410–2413, 2416).  The motion addressed only

those claimants whose claims emanated from their direct or indirect investments in sixteen so-

called feeder funds that, in turn, had accounts with and invested directly with BLMIS.

49.    This Court held a hearing on October 19, 2010.  On June 28, 2011, this Court

issued a Memorandum Decision and Order affirming the Trustee's denial of these claims.  (ECF

Nos. 3018, 4193, 4209); *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 454 B.R.

285 (Bankr. S.D.N.Y. 2011).

50.    This Court found that, in light of the plain language of SIPA and relevant case

law, the investor-claimants did not qualify as "customers" under SIPA.  This Court found that

the objecting claimants invested in, not through, the feeder funds, and had no individual accounts

at BLMIS.  It was the feeder funds who entrusted their monies with BLMIS for the purpose of

trading or investing in securities—the touchstone of "customer" status—whereas the objecting

claimants purchased ownership interests in the feeder funds.  This Court held that, absent a direct

broker-dealer relationship with BLMIS, the objecting claimants sought a definition of

"customer" that stretched the term beyond its limits.

51.    Judge Lifland put it succinctly: the objecting-claimants who invested in sixteen

feeder funds did not qualify as "customers" because they "had no securities accounts at BLMIS,

were not known to BLMIS, lacked privity and any financial relationship with BLMIS, lacked

property interests in any Feeder Fund account assets at BLMIS, entrusted no cash or securities to

BLMIS, had no investment discretion over Feeder Fund assets invested with BLMIS, received no account statements or other communications from BLMIS and had no transactions reflected on the books and records of BLMIS . . . ." *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 454 B.R. at 290.

52.     Twenty-seven notices of appeal were filed and assigned to United States District Judge Denise L. Cote.  *See Aozora Bank Ltd. v. Sec. Investor Prot. Corp.*, No. 11-cv-05683 (DLC) (S.D.N.Y.).  On January 4, 2012, Judge Cote affirmed the June 28, 2011 order of this Court.  *See Aozora Bank Ltd. v. Sec. Investor Prot. Corp.*, 480 B.R. 117 (S.D.N.Y. 2012).  In that decision, Judge Cote determined in light of SIPA, the "most natural reading of the 'customer' definition excludes persons like the appellants who invest in separate third-party corporate entities like their feeder funds that in turn invest their assets with the debtor." *Id*. at 123.  Thus, the District Court held that the feeder funds were the BLMIS customers and the appellants were precluded from seeking separate recoveries as additional SIPA claimants. *Id*. at 129–30.

53.     On January 6, 2012, four appeals were taken from Judge Cote's order to the Second Circuit.  *See Bricklayers and Allied Craftsman Local 2 Annuity Fund v. Sec. Investor Prot. Corp., Irving H. Picard*, No. 12-410 (2d Cir. Jan. 31, 2012); *Rosamilia v. Sec. Investor Prot. Corp., Irving H. Picard*, No. 12-437 (2d Cir. Feb. 2, 2012); *Kruse v. Sec. Investor Prot. Corp., Irving H. Picard*, No. 12-483 (2d Cir. Feb. 6, 2012); *Upstate N.Y. Bakery Drivers and Indus. Pension Fund v. Sec. Investor Prot. Corp., Irving H. Picard*, No. 12-529 (2d Cir. Feb. 3, 2012).  On February 22, 2013, the Second Circuit affirmed the decisions of the District Court and the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").  *See Kruse v. Sec. Investor Prot. Corp., Irving H. Picard,* 708 F.3d 422 (2d Cir. 2013).

54.    On another matter involving the interpretation of the "customer" definition, on October 5, 2011, the Trustee moved before this Court for an order establishing a briefing schedule and hearing to affirm his determination that ERISA did not alter his denial of "customer" status to certain claimants.  (ECF No. 4432).  This Court entered a scheduling order on November 8, 2011.  (ECF No. 4507).

55.    On November 14, 2011, the Trustee filed his Motion For An Order Affirming Trustee's Determinations Denying Claims Over ERISA-Related Objections.  (ECF No. 4521) (the "ERISA Motion").  On or around January 17, 2012, approximately eighteen opposition briefs to the ERISA Motion were filed on behalf of various ERISA claimants.  (ECF Nos. 4625–4628, 4631–4633, 4635, 4637–4643, 4652–4654).  On March 2, 2012, the Trustee filed his Memorandum in Support of the Trustee's Motion For An Order Affirming Trustee's Determinations Denying Claims Over ERISA-Related Objections.  (ECF No. 4703).  On April 2, 2012, five replies to the ERISA Motion were filed on behalf of various ERISA claimants.  (ECF Nos. 4746, 4748, 4750, 4755, 4756).  The Trustee's sur-reply was filed on April 20, 2012.  (ECF No. 4781).

56.    During the pendency of the above briefing, certain ERISA claimants also filed motions to withdraw the reference on the ERISA Motion from this Court to the District Court. *See Sec. Investor Prot. Corp. v. Jacqueline Green Rollover Account*, No. 12-cv-01039-DLC (S.D.N.Y. Aug. 6, 2012) (filed on behalf of J. X. Reynolds & Co. Deferred Profit Sharing Plan, Jacqueline Green Rollover Account and Wayne D. Green Rollover Account); *Sec. Investor Prot. Corp. v. I.B.E.W. Local 241 Pension Fund*, No. 12-cv-01139-DLC (S.D.N.Y. Aug. 6, 2012) (filed on behalf of thirty-seven ERISA plan claimants).  On February 28, 2012 and March 1, 2012, these motions were accepted as related to the appeals decided by Judge Cote in *Aozora*

18

*Bank*, 480 B.R. 117 (S.D.N.Y. 2012), discussed above, and were re-assigned to Her Honor. Judge Cote withdrew the reference on April 20, 2012. Jacqueline Green Rollover Account, No. 12-cv-01039-DLC (S.D.N.Y.), ECF No. 7.

57.    On July 25, 2012, the District Court granted the Trustee's ERISA Motion. See *Id*. (ECF No. 29). The District Court found that the ERISA claimants were not "customers" under SIPA because they did not deposit money with BLMIS for the purchase of securities and did not own the assets of the ERISA plans that were deposited with BLMIS. *Id*. No appeal was taken from this opinion and order.

58.    On June 27, 2013, the Trustee filed the Trustee's Second Motion to Affirm Trustee's Determinations Denying Claims of Claimants Who Invested in Certain Feeder Funds and Did Not Have BLMIS Accounts in Their Names. (ECF Nos. 5396, 5397, 5398, 5399, 5438, 5439) (collectively, the "Second Feeder Fund Motion".) On August 21, 2013, the Court issued the Second Feeder Fund Decision. (ECF No. 5450). That decision reaffirmed that "the burden is on the claimant to establish he is a 'customer' entitled to SIPA protection, and such a showing is not easily met." *Id*. at 4 (quoting 454 BR at 294). Also, the Court determined that the claimants "failed to [meet their burden] because they lack any indicia of a 'customer' relationship with BLMIS." In particular, "they had no securities accounts at BLMIS, were not known to BLMIS, lacked privity and any financial relationship with BLMIS, lacked property interest in any feeder fund account assets at BLMIS, entrusted no cash or securities to BLMIS, had no investment discretion over feeder fund assets invested with BLMIS, received no account statements or other communications from BLMIS and had no transactions reflected on the books and records at BLMIS." *Id*. at p. 4. The Second Feeder Fund Decision was not appealed.

59.     On April 30, 2014, the Trustee filed a motion to affirm his determinations denying claims of claimants who invested in certain ERISA plans. (ECF Nos. 6489, 6491, 6492). In an opinion rendered on August 22, 2014, the Court determined that the claimants were not "customers" of BLMIS within the meaning of SIPA. (ECF No. 7761).

60.     On December 12, 2014, the Trustee filed his Motion and Memorandum To Affirm His Determinations Denying Claims of Claimants Holding Interests in S&P or P&S Associates, General Partnerships (the "S&P Motion"). (ECF No. 8734). The S&P Motion was filed to resolve objections to the Trustee's denial of 158 claims that were filed by parties who were either partners in, or investors in those partners in, P&S or S&P Associates[8]. The Trustee allowed the claims of S&P and P&S to the extent of their respective net equity, because each held a BLMIS account in its name. S&P and P&S have been receiving interim distributions on their claims.

61.     The P&S/S&P Claimants objected to the Trustee's S&P Motion on January 26, 2015 (ECF No. 9185). They argued that SIPA should be construed broadly to include the S&P and P&S partners/investors. *Id.* at 3-4. The Claimants also argued that under Florida partnership law, "a partner is an owner of the partnership. . . . [and] a partner owns a specific interest in all partnership assets." *Id.* at 6.

62.     On February 25, 2015, the Bankruptcy Court issued an oral ruling granting the Trustee's S&P Motion. *See* Hr'g Tr. 27:19 – 35:25 (ECF No. 9506). The Court explained that "the objecting partners have failed to sustain their burden of proof. They did not entrust any cash or securities with BLMIS. They invested with partnerships who, in turn, invested with BLMIS. . . . Thus, even if BLMIS knew or surmised that the partnerships' BLMIS accounts were funded with partners' contributions, there is no evidence that BLMIS maintained records identifying the

---

[8] *See* S&P Motion at 2, n. 3 (citing Declaration of Vineet Sehgal, ECF No. 8734), identifying and describing the objections to the Trustee's determinations of claims at issue in the S&P / P&S Proceeding).

partners or even knew who they were, and the fact remains that the partners did not entrust anything to BLMIS. . . ." *Id.* at 30:16-31:6. On March 10, 2015 the Bankruptcy Court entered an Order Approving Trustee's Motion to Affirm His Determinations Denying Claims of Claimants Holding Interests in S & P or P & S Associates, General Partnerships. (ECF No. 9450). As of the date of this Report, no appeal has been taken from the order.

**D.    Fact-Based Objections**

63.    During the period covered by the Trustee's Thirteenth Interim Report, counsel for the Trustee has been investigating and analyzing objections of claimants to the Trustee's determination of their claims. During this extensive review of the facts unique to each claimant, the Trustee has identified circumstances that may require resolution by the Bankruptcy Court. As the Trustee works through these issues with the claimants, individual disputes will be scheduled for hearing and resolution by the Bankruptcy Court in due course.

**E.    Inter-Account Transfers**

64.    The Trustee has maintained, and the Second Circuit affirmed, that the "cash-in, cash-out" methodology is appropriate for calculating a customer's net equity in this case. The Net Equity Decision, however, did not expressly address the treatment of transfers between BLMIS accounts, which the Trustee refers to as "Inter-Account Transfers." Many customers maintained more than one BLMIS account, and transferred funds between such accounts. Other customers transferred funds to the accounts of other BLMIS customers.

65.    On March 27, 2014, the Bankruptcy Court entered an order setting a schedule to file briefs and argue the merits of the Trustee's Motion For An Order To Affirm the Trustee's Determination of Customer Claims Regarding Transfers between BLMIS Accounts (the "IAT Motion"). *See* ECF No. 6049. On March 31, 2014, the Trustee filed the IAT Motion, which explained that, for Inter-Account Transfers, in which no new funds entered BLMIS, the Trustee

reduced the balance of the transferor account to the extent actual principal was available, and then credited the transferee account in the corresponding amount of actual principal transferred. (ECF No. 6084). If the transferor account did not have any principal available at the time of the transfer, then $0 was credited to the transferee account. *Id.* at 3. SIPC filed a brief in support of the Trustee's motion on March 31, 2014. (ECF No. 6079).

66.    Fifteen objections were filed in response to the IAT Motion. These objecting parties argued that the inter-account method violates the statute of limitations for pursuing fraudulent transfers under section 548(a)(1)(A) of the Bankruptcy Code; generates arbitrary results; improperly combines accounts and violates federal securities laws; violates public policy; and violates ERISA. They also argued that the Bankruptcy Court lacks constitutional authority to render final judgments and that a transferee's net equity claim should not be affected by withdrawals made by other beneficiaries in a shared account.

67.    On December 8, 2014, the Bankruptcy Court entered its Memorandum Decision Affirming Application of the Trustee's Inter-Account Method to the Determination of Transfers Between BLMIS Accounts. ECF No. 8680; *see Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff)*, 522 B.R. 41 (Bankr. S.D.N.Y. 2014). The Bankruptcy Court affirmed the Trustee's method for calculating a customer's net equity when inter-account transfers were made to or from that account. Judge Bernstein explained that if he adopted the objecting parties' arguments, "computing the balance in the transferor's account bloated by fictitious profits increases the transferee's claim to the customer property pool allocable to all Madoff victims by artificially increasing the transferee's net equity. This result aggravates the injury to those net losers who did not receive transfers of fictitious profits by diminishing the amount available for distribution from the limited pool of customer property." *Id.* at 53. The

order memorializing Judge Bernstein's written decision was entered on December 22, 2014. (ECF No. 8857).

68.     Five notices of appeal were filed by: (i) Diana Melton Trust, Dated 12/05/05 (ECF No. 8843); (ii) Edward Zraick Jr., Nancy Zraick, Patricia DeLuca and Karen M. Rich (ECF No. 8911); (iii) Michael Most (ECF No. 8913); (iv) claimants represented by Becker & Poliakoff (ECF No. 8916); and (v) Elliot G. Sagor (ECF No. 8917).   These appeals are currently pending in the District Court before Judge Paul A. Engelmayer.  (Case Nos. 15-cv-1151; 15-cv-1195; 15-cv-1223; 15-cv-1236; 15-cv-1263).   The appellants filed two briefs on April 27, 2015.   The Trustee's opposition is due on May 27, 2015.  Replies will be filed by June 11, and a hearing date has not yet been scheduled.

## F.     Profit-Withdrawal Issue

69.     In a declaration related to the Inter-Account Transfer matter, one customer raised an issue with respect to certain withdrawals that were reflected on his BLMIS customer account statements.  *See* Declaration of Aaron Blecker, In Opposition to the Trustee's Motion to Affirm The Application of The Net Investment Method to the Determination of Customer Transfers Between BLMIS Accounts (ECF No. 6761).  Several other customers objected to the Trustee's denial of their net equity claims for similar reasons.   These customers dispute whether they actually received funds that appear to be identified on BLMIS customer account statements as "PW", which the Trustee understands to indicate "Profit Withdrawals."

70.     Upon further review and analysis, the Trustee discovered that several hundred accounts contained the notation "PW."   In light of the large number of impacted accounts, the Trustee sought to institute an omnibus proceeding to resolve the question of whether the Trustee's treatment of "PW" transactions as cash withdrawals for the purposes of a customer's net equity calculation is proper.   *See* Motion for Order Establishing Schedule For Limited

Discovery & Briefing On Profit Withdrawal Issue (ECF No. 9357). The Bankruptcy Court is currently scheduled to conduct a hearing on the Motion on May 20, 2015.

## VII.    RECOVERIES AND CONTINGENCIES

### A.    <u>Recoveries Accomplished During Prior Report Periods</u>

71.    In the Sixth through Twelfth Interim Reports, the Trustee reviewed the significant settlements entered into during those periods and prior report periods. Prior to this Report Period, the Trustee had recovered or reached agreements to recover approximately $9.8 billion for the benefit of BLMIS customers. *See* Trustee's Sixth Interim Report ¶¶ 52–63 (ECF No. 4529); Trustee's Seventh Interim Report ¶¶ 56–62 (ECF No. 4793); Trustee's Eighth Interim Report ¶¶ 57–61 (ECF No. 5066); Trustee's Ninth Interim Report ¶¶ 59 – 61 (ECF No. 5351); Trustee's Tenth Interim Report ¶¶ 61-62 (ECF No. 5554); Trustee's Eleventh Interim Report ¶¶ 61-62 (ECF No. 6466); and Trustee's Twelfth Interim Report ¶¶ 63-64 (ECF No. 8276).

### B.    <u>Recoveries Accomplished During This Report Period</u>

72.    During this Report Period, the Trustee settled 75 cases for a total recovery of $744,522,233.03. Currently, the Trustee has successfully recovered or reached agreements to recover over $10.6 billion.

73.    On November 19, 2014, this Court approved a $62 million settlement between the Trustee and the Blumenfeld Defendants. *Picard v. Edward Blumenfeld, et al.,* Adv. Pro. No. 10-04730 (Bankr. S.D.N.Y.) (SMB) (ECF No. 45). Under the settlement, the Blumenfeld Defendants paid $32.75 million to the Trustee and assigned the Blumenfeld Defendants' allowed customer claims in the aggregate amount of $29,348,309.09 to the Trustee in settlement of the Trustee's avoidance claims against the Blumenfeld Defendants.

74.    On December 17, 2014, this Court approved a $467,701,943 settlement between the Trustee and Herald Fund SPC (In Official Liquidation) ("Herald"), and a $29,142,345

settlement between the Trustee and Primeo Fund (In Official Liquidation) ("Primeo").  *Picard v. HSBC Bank PLC, et al.*, Adv. Pro. No. 09-01364 (Bankr. S.D.N.Y.) (SMB) (ECF No. 349).  Under the settlement, Herald received an allowed claim in the amount of $1,639,896,943 and a catch-up distribution in the amount of $800,302,506.13.  Herald satisfied both the Herald and Primeo settlements by assigning to the Trustee: (i) the funds to be advanced by SIPC in the amount of $500,000 under Herald's allowed customer claim, and (ii) $496,344,288 of the $755,320,132.98 catch-up distribution owed to Herald under its allowed customer claim.

75.    On December 17, 2014, this Court approved a $95 million settlement between the Trustee and Senator Fund SPC ("Senator Fund").  *Picard v. HSBC Bank PLC, et al.*, Adv. Pro. No. 09-01364 (Bankr. S.D.N.Y.) (SMB) (ECF No. 350).  Under the settlement, Senator Fund received an allowed claim in the amount of $238,753,482 and a catch-up distribution in the amount of $116,516,474.29.  Senator Fund paid $95 million by assigning to the Trustee: (i) the funds to be advanced by SIPC in the amount of $500,000 under Senator Fund's allowed customer claim, and (ii) $94.5 million of the $116,516,474.29 catch-up distribution owed to Senator Fund under its allowed customer claim.

76.    On January 23, 2015, this Court approved a settlement between the Trustee and Herald (Lux) SICAV ("Herald Lux"), *Picard v. HSBC Bank PLC, et al.*, Adv. Pro. No. 09-01364 (Bankr. S.D.N.Y.) (SMB) (ECF No. 363).  Under the settlement, Herald Lux agreed to a ten percent reduction in its claim against the Customer Fund, benefitting the Customer Fund by $25,560,000.

## C.    Earlier Settlements

77.    In the Eleventh Interim Report, the Trustee reported on the following settlements: JPMorgan Chase, Estate of Norman F. Levy, Fairfield, Tremont, Maxam and Picower.  *See* Trustee's Eleventh Interim Report ¶¶ 62-74, 112-123 (ECF No. 6466).  In the Twelfth Interim

Report, the Trustee reported on the following settlements: Fairfield, JPMorgan Chase and Tremont. *See* Trustee's Twelfth Interim Report ¶¶ 173-182, 202-214, 311-319 (ECF No. 8276).

78.     Through the end of the Report Period, the Trustee recovered $552,633,587.16 as a result of preference and other settlements that were made pursuant to agreements subject to the Net Equity Dispute.

## VIII.   THE TRUSTEE'S ALLOCATION OF FUNDS AND DISTRIBUTIONS TO CUSTOMERS

### A.     The Customer Fund

79.     In order to protect customers of an insolvent broker-dealer such as BLMIS, Congress established a statutory framework pursuant to which customers of a debtor in a SIPA liquidation are entitled to preferential treatment in the distribution of assets from the debtor's estate. The mechanism by which customers receive preferred treatment is through the creation of a Customer Fund, as defined in SIPA § 78*lll*(4), which is distinct from a debtor's general estate. Customers holding allowable claims are entitled to share in the Customer Fund based on each customer's net equity as of the filing date, to the exclusion of general creditors. SIPA § 78fff-2(c).

80.     In order to make interim distributions from the Customer Fund, the Trustee must determine or be able to sufficiently estimate: (a) the total value of customer property available for distribution (including reserves for disputed recoveries), and (b) the total net equity of all allowed claims (including reserves for disputed claims). Each element of the equation—the customer property numerator and the net equity claims denominator—is inherently complex in a liquidation of this magnitude.

81.     There are many unresolved issues in this liquidation proceeding that require the maintenance of substantial reserves. Nonetheless, the liquidation proceeding progressed to a

stage at which it was possible for the Trustee, on an interim basis, to determine: (a) the allocation of property to the Customer Fund, or the "numerator" (taking reserves into account), (b) the amount of allowable net equity claims, or the "denominator" (also taking reserves into account), and (c) the calculation of each customer's minimum ratable share of the Customer Fund.

**B.**     **The Trustee's Initial Allocation of Property to the Fund of Customer Property and Authorizing the First Interim Distribution to Customers**

82.     On May 4, 2011, the Trustee moved for an initial allocation and pro rata interim distribution of the Customer Fund to customers whose claims had not been fully satisfied because their net equity claims as of the Filing Date exceeded the statutory SIPA protection limit of $500,000 (respectively, the "First Allocation" and "First Interim Distribution"). (ECF No. 4048). This motion was unopposed, and the Court entered the Order Approving the Trustee's Initial Allocation of Property to the Fund of Customer Property and Authorizing An Interim Distribution to Customers on July 12, 2011. (ECF No. 4217).

83.     On October 5, 2011, the Trustee distributed $311.854 million, or 4.602% of each BLMIS customer's allowed claim, unless the claim had been fully satisfied. Subsequent to October 5, 2011, an additional $293.394 million was distributed as catch-up payments, bringing the total First Interim Distribution amount to $605.248 million through the end of the Report Period.[9] The First Interim Distribution was made to 1,330 BLMIS accounts,[10] and 39 payments went to claimants who qualified for hardship status under the Trustee's Hardship Program whose claims had not been fully satisfied previously.

---

[9] Subsequent to the Report Period ending on March 31, 2015, an additional $10.586 million was distributed as catch-up payments, bringing the total First Interim Distribution amount to $615.834 million through April 20, 2015.

[10] Subsequent to the Report Period ending on March 31, 2015, one additional BLMIS accounts was given distributions from the First Interim Distribution, bringing the total number of BLMIS accounts to 1,331.

84.    The First Allocation and First Interim Distribution were initial and interim in nature because the Trustee anticipated recovering additional assets through litigation and settlements, and resolving the issues on appeal that require reserves.

**C.    The Trustee's Second Allocation of Property to the Fund of Customer Property and Authorizing the Second Interim Distribution to Customers**

85.    During the year after the Trustee made the First Interim Distribution, the Trustee recovered significant additional assets through litigation and settlements, as well as the resolution of issues on appeal that required reserves.

86.    In particular, the Supreme Court resolved the Net Equity Dispute on June 25, 2012, and the Trustee received the Picower settlement funds after the final order of forfeiture became final and non-appealable on July 16, 2012.

87.    Thus, the Trustee was prepared to make a second significant distribution to BLMIS customers in an amount as great as $3.019 billion, or 41.826% of each customer's allowed claim, unless the claim had been fully satisfied.  However, in order to maintain adequate reserves for the Time-Based Damages Issue, the Trustee was unable to distribute the entire $3.019 billion.

88.    On July 26, 2012, the Trustee filed a motion seeking entry of an order approving the second allocation of property to the Customer Fund and authorizing the second interim distribution to customers whose claims have not been fully satisfied because their net equity claims as of the Filing Date exceeded the statutory SIPA protection limit of $500,000 (respectively, the "Second Allocation" and "Second Interim Distribution").  (ECF No. 4930).

89.    In connection with the Second Interim Distribution, the Trustee proposed holding in reserve an amount sufficient for the Trustee to pay Time-Based Damages assuming an interest rate of three percent (the "3% Reserve") or, in the alternative, nine percent (the "9% Reserve").

Four objections were made to the Trustee's motion, seeking the imposition of the 9% Reserve. (ECF Nos. 4965, 4966, 4971, 4976).

90.    On August 22, 2012, this Court held a hearing and entered an Order Approving the Trustee's Second Allocation of Property to the Fund of Customer Property and Authorizing a Second Interim Distribution to Customers, with a 3% Reserve.  (ECF No. 4997).

91.    Thus, on September 19, 2012, the Trustee distributed $2.479 billion, or 33.556% of each BLMIS customer's allowed claim, unless the claim had been fully satisfied.  Subsequent to September 19, 2012, an additional $1.915 billion was distributed as catch-up payments, bringing the total Second Interim Distribution amount to $4.395 billion through the end of the Report Period.[11]  The Second Interim Distribution was made to 1,316 BLMIS accounts,[12] and 39 payments went to claimants who qualified for hardship status under the Trustee's Hardship Program whose claims had not been fully satisfied previously.

**D.    The Trustee's Third Allocation of Property to the Fund of Customer Property and Authorizing the Third Interim Distribution to Customers**

92.    During the months after the Second Interim Distribution, the Trustee recovered significant additional assets thorough litigation and settlements, particularly the Tremont settlement.  See discussion *infra* Section IX(B)(xxvii).

93.    On February 13, 2013, the Trustee filed a motion seeking entry of an order approving the third allocation of property to the Customer Fund and authorizing the third interim distribution to customers whose claims have not been fully satisfied because their net equity

---

[11] Subsequent to the Report Period ending on March 31, 2015, an additional $77.192 million was distributed as catch-up payments, bringing the total Second Interim Distribution amount to $4.472 billion through April 20, 2015.

[12] Subsequent to the Report Period ending on March 31, 2015, one additional BLMIS account was given distributions from the Second Interim Distribution, bringing the total number of BLMIS accounts to 1,317.

claims as of the Filing Date exceeded the statutory SIPA protection limit of $500,000 (respectively, the "Third Allocation" and "Third Interim Distribution").  (ECF No. 5230).

94.    In connection with the Third Interim Distribution, the Trustee proposed holding reserves in connection with the Levy settlement appeal, the Internal Revenue Service (the "IRS") settlement and net loser accounts currently in litigation.  *Id.*

95.    On March 13, 2013, this Court held a hearing and entered an Order Approving the Trustee's Third Allocation of Property to the Fund of Customer Property and Authorizing a Third Interim Distribution to Customers.  (ECF No. 5271).

96.    Thus, on March 29, 2013, the Trustee distributed $506.227 million, or 4.721% of each BLMIS customer's allowed claim, unless the claim had been fully satisfied.  Subsequent to March 29, 2013, an additional $108.032 million was distributed as catch-up payments, bringing the total Third Interim Distribution amount to $614.259 million through the end of the Report Period.[13]  The Third Interim Distribution was made to 1,130 BLMIS accounts,[14] and 26 payments went to claimants who qualified for hardship status under the Trustee's Hardship Program whose claims had not been fully satisfied previously.

E.    **The Trustee's Fourth Allocation of Property to the Fund of Customer Property and Authorizing the Fourth Interim Distribution to Customers**

97.    During the year after the Trustee made the Third Interim Distribution, the Trustee recovered significant additional assets through litigation and settlements, particularly the JPMorgan settlement.

---

[13] Subsequent to the Report Period ending on March 31, 2015, an additional $10.860 was distributed as catch-up payments, bringing the total Third Interim Distribution amount to $625.120 million through April 20, 2015.

[14] Subsequent to the Report Period ending on March 31, 2015, one additional BLMIS account was given distributions from the Third Interim Distribution, bringing the total number of BLMIS accounts to 1,131.

98.    On March 25, 2014, the Trustee filed a motion seeking entry of an order approving the fourth allocation of property to the Customer Fund and authorizing the fourth interim distribution to customers whose claims have not been fully satisfied because their net equity claims as of the Filing Date exceeded the statutory SIPA protection limit of $500,000 (respectively, the "Fourth Allocation" and "Fourth Interim Distribution").  (ECF No. 6024).

99.    In connection with the Fourth Interim Distribution, the Trustee proposed holding reserves in connection with non-preference related settlement payments for accounts with net equity clauses, as well as certain other settlements.  *Id.*

100.    On April 18, 2014, this Court entered an Order Approving the Trustee's Fourth Allocation of Property to the Fund of Customer Property and Authorizing a Fourth Interim Distribution to Customers**.**  (ECF No. 6340).

101.    Thus, on May 5, 2014, the Trustee distributed $351.632 million, or 3.180% of each BLMIS customer's allowed claim, unless the claim had been fully satisfied.  Subsequent to May 5, 2014, an additional $61.352 million was distributed as catch-up payments, bringing the total Fourth Interim Distribution amount to $412.985 million through the end of the Report Period.[15]  The Fourth Interim Distribution was made to 1,098 BLMIS accounts,[16] and 25 payments went to claimants who qualified for hardship status under the Trustee's Hardship Program whose claims had not been fully satisfied previously.

---

[15] Subsequent to the Report Period ending on March 31, 2015, an additional $7.315 million was distributed as catch-up payments, bringing the total Fourth Interim Distribution amount to $420.300 million through April 20, 2015.

[16] Subsequent to the Report Period ending on March 31, 2015, one additional BLMIS account was given distributions from the Fourth Interim Distribution, bringing the total number of BLMIS accounts to 1,099.

F.    **The Trustee's Fifth Allocation of Property to the Fund of Customer Property and Authorizing the Fifth Interim Distribution to Customers**

102.    During the months after the Trustee made the Fourth Interim Distribution, the Trustee recovered significant additional assets through litigation and settlements, particularly with the Blumenfeld defendants (*Picard v. Edward Blumenfeld, et al.,* Adv. Pro. No. 10-04730 (Bankr. S.D.N.Y.) (SMB) (ECF No. 45)), Herald Fund SPC and Primeo Fund (*Picard v. HSBC Bank PLC, et al.*, Adv. Pro. No. 09-01364 (Bankr. S.D.N.Y.) (SMB) (ECF No. 349)), and Senator Fund SPC *(Picard v. HSBC Bank PLC, et al.*, Adv. Pro. No. 09-01364 (Bankr. S.D.N.Y.) (SMB) (ECF No. 350)).

103.    On December 22, 2014, the Trustee filed a motion seeking entry of an order approving the fifth allocation of property to the Customer Fund and authorizing the fifth interim distribution to customers whose claims have not been fully satisfied because their net equity claims as of the Filing Date exceeded the statutory SIPA protection limit of $500,000 (respectively, the "Fifth Allocation" and "Fifth Interim Distribution").  (ECF No. 8860).

104.    In connection with the Fifth Interim Distribution, the Trustee proposed holding reserves in connection with non-preference related settlement payments for accounts with net equity clauses, as well as certain other settlements.  *Id.*

105.    On January 15, 2015, this Court entered an Order Approving the Trustee's Fifth Allocation of Property to the Fund of Customer Property and Authorizing a Fifth Interim Distribution to Customers.  (ECF No. 9014).

106.    On February 6, 2015, the Trustee distributed $355.761 million, or 2.743% of each BLMIS customer's allowed claim, unless the claim had been fully satisfied.[17]  Upon completion

---

[17] Subsequent to the Report Period ending on March 31, 2015, an additional $6.310 million was distributed as catch-up payments, bringing the total Fifth Interim Distribution amount to $362.071 million through April 20, 2015.

of the Fifth Interim Distribution, approximately 52% of the allowed customer claims were satisfied. The Fifth Interim Distribution was made to 1,077 BLMIS accounts,[18] and 23 payments went to claimants who qualified for hardship status under the Trustee's Hardship Program whose claims had not been fully satisfied previously.

### G.    The Trustee's Sixth Allocation of Property to the Fund of Customer Property and Authorizing the Sixth Interim Distribution to Customers

107.    In its order approving the Second Allocation Motion (ECF No. 4997), the Court required the Trustee to maintain the 3% Reserve for the Time-Based Damages Dispute. Under the terms of Judge Lifland's order requiring the 3% Reserve, the Trustee set a Time-Based Damages reserve and allocated such reserve to the Customer Fund as part of the total amount allocated to the Customer Fund in the Second through Fifth Allocations and Interim Distributions.

108.    On April 15, 2015, the Trustee filed a motion seeking entry of an order approving the sixth allocation of property to the Customer Fund and authorizing the sixth interim distribution to customers whose claims have not been fully satisfied because their net equity claims as of the Filing Date exceeded the statutory SIPA protection limit of $500,000 (respectively, the "Sixth Allocation" and "Sixth Interim Distribution"). (ECF No. 9807). In the Sixth Allocation and Sixth Interim Distribution Motion, the Trustee seeks approval to release the bulk of the Time-Based Damages reserve and distribute such funds under the terms set forth therein.

109.    The Sixth Allocation and Sixth Interim Distribution Motion currently is set for hearing on May 28, 2015.

---

[18] Subsequent to the Report Period ending on March 31, 2015, one additional BLMIS account was given distributions from the Fifth Interim Distribution, bringing the total number of BLMIS accounts to 1,078.

## H.    The General Estate

110.    If the Trustee is able to fully satisfy the net equity claims of the BLMIS customers, any funds remaining will be allocated to the general estate and distributed in the order of priority established in Bankruptcy Code § 726 and SIPA § 78fff(e).

111.    All BLMIS customers who filed claims—whether their net equity customer claims were allowed or denied—are deemed to be general creditors of the BLMIS estate.  The Trustee is working diligently on behalf of all creditors and will seek to satisfy all creditor claims.

## IX.    LITIGATION

112.    Other major developments have occurred during the Report Period in the Trustee's avoidance actions and bank/feeder fund litigations.  As the Trustee has more than 1,000 lawsuits pending, this Report does not discuss each of them in detail but instead summarizes those matters with the most activity during the Report Period.

## A.    The District Court—Motions to Withdraw the Reference, Motions to Dismiss and Related Appeals

113.    Upon the motions of hundreds of defendants, the District Court withdrew the reference in numerous cases and heard numerous motions to dismiss. A total of 485 motions to withdraw and 424 joinders were filed, altogether implicating a total of 807 adversary proceedings.  As of the end of the Report Period, the District Court has returned all proceedings to the Bankruptcy Court.

### i.    Proceedings Relating to Motions to Withdraw

#### (a)    The Administrative Order

114.    On March 5, 2012, this Court entered the Administrative Order which stated: "[i]n the interest of administrative efficiency, this Court has been informed by Judge Rakoff, and hereby notifies all parties to the Adversary Proceedings, that the District Court will automatically

regard untimely any motion to withdraw . . . if such motion is not filed on or before April 2, 2012." *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, Adv. No. 08-01789 (ECF No. 4707).

115.    On July 10, 2014, the District Court issued an order directing counsel to parties with individual issues not addressed by the Court's decisions in the consolidated withdrawals to inform the Court by letter by July 18, 2014.  *See In re Madoff Sec.*, No. 12 MC 00115 (JSR) (S.D.N.Y. July 10, 2014), ECF No. 552.   The District Court received several such letters and addressed the issues they raised in separate orders.   On August 4, 2014, the District Court deemed any remaining motions to withdraw the reference to be denied, referred all the adversary proceedings to be returned to the Bankruptcy Court, and directed the closure of all civil cases seeking to withdraw the reference related to the Madoff matter.  *See In re Madoff Sec.*, No. 12 MC 00115 (JSR) (S.D.N.Y. Aug. 4, 2014), ECF No. 557.

## (b)    Consolidated Briefing Orders

116.    In April 2012, the District Court instituted a protocol for then-pending motions to withdraw, which consolidated briefing on common issues raised in the motions to withdraw (the "Common Briefing").  The common issues included:

- whether the Supreme Court's decision in *Stern v. Marshall* (the "Stern Issue") precluded the Bankruptcy Court from entering final judgment on the Trustee's claims and therefore mandated withdrawal of the reference to Bankruptcy Court.  131 S. Ct. 2594 (2011); *see* Order, *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, No. 12 MC 0115 (JSR) (S.D.N.Y. Apr. 13, 2012), ECF No. 4;

- whether the Trustee's claims against certain defendants should be dismissed in light of the defendants' affirmative defense of antecedent debt (the "Antecedent Debt Issue").  *See* Order, No. 12 MC 0115 (JSR) (S.D.N.Y. May 16, 2012), ECF No. 107;

- whether standing issues (the "Standing Issue") bar the Trustee's common law claims against certain defendants by virtue of the doctrine of *in pari delicto* and/or the Securities Litigation Uniform Standards Act of 1998

("SLUSA"), as well as whether the Trustee is entitled to accept assignments or assert the "insider exception" to *in pari delicto*. *See* Order, No. 12 MC 0115 (JSR) (S.D.N.Y. May 15, 2012), ECF No. 114;

- whether § 546(e) of the Bankruptcy Code precludes the Trustee's claims against certain defendants against whom the Trustee has alleged knew or should have known that Madoff was running a Ponzi scheme (the "Bad Faith § 546(e) Issue"). *See* Order, No. 12 MC 0115 (JSR) (S.D.N.Y. May 15, 2012), ECF No. 119;

- whether the Trustee is entitled to employ § 502(d) of the Bankruptcy Code against defendants accused of receiving avoidable transfers (the "§ 502(d) Issue"). *See* Order, No. 12 MC 0115 (JSR) (S.D.N.Y. June 1, 2012), ECF No. 155;

- whether the Supreme Court's ruling in *Morrison v. National Australia Bank Ltd.*, as applied to SIPA or the Bankruptcy Code, bars the Trustee's claims against certain defendants (the "Extraterritoriality Issue"). 130 S. Ct. 2869 (2010); *see* Order, No. 12 MC 0115 (JSR) (S.D.N.Y. June 6, 2012), ECF No. 167; and

- whether SIPA or the securities laws alter the standards for determining good faith under either §§ 548(c) or 550(b) of the Bankruptcy Code (the "Good Faith Standard Issue"). *See* Order, No. 12 MC 0115 (JSR) (S.D.N.Y. June 23, 2012), ECF No. 197.

117.    The Stern Issue was raised by hundreds of defendants. Judge Rakoff heard oral argument on June 18, 2012 and issued a decision on January 4, 2013 (the "Stern Opinion and Order"), ruling that the Bankruptcy Court could not issue a final decision on certain of the Trustee's fraudulent transfer claims. Opinion and Order (ECF No. 427), 460 B.R. 46 (Bankr. S.D.N.Y. 2013). The Stern Opinion and Order indicates that the Bankruptcy Court may be able to render rulings where a defendant filed a claim. *Id.* at 19. In the Stern Opinion and Order, Judge Rakoff found that even in those cases where no claim was filed, the Bankruptcy Court could issue a report and recommendation, and referred the Trustee's cases back to the Bankruptcy Court subject to the other pending rulings. *Id.*

118.    The Antecedent Debt Issue was also raised by hundreds of defendants, who filed their motion on June 25, 2012. (ECF No. 196). Oral argument was held by Judge Rakoff on

August 25, 2012.  Judge Rakoff issued a decision on October 15, 2013 (the "Antecedent Debt Opinion and Order"), ruling that the Trustee's avoidance claims against certain defendants should not be dismissed and stating that "[the] pre-reach-back-period inter-account transfers of amounts exceeding principal in the account of the sender continue to be fictitious profits, not principal, in the account of the recipient, and therefore do not constitute antecedent debt for the recipient of the funds."  *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, No. 12 MC 115 (JSR), 2013 WL 5651285, at *11 (S.D.N.Y. Oct. 15, 2013).

119.    The Standing Issue was raised by various defendants, who filed two sets of moving papers on August 3, 2012.  (ECF Nos. 269, 270, 271).  Judge Rakoff heard oral argument on October 15, 2012 and issued a decision on December 5, 2013 (the "Standing Opinion and Order"), finding that the Trustee "has standing to bring claims on behalf of Madoff Securities' customers to the extent, but only to the extent, that the customers validly assigned their claims to the Trustee.  However, the Court also finds that the Trustee's pursuit of these assigned claims, to the extent that he brings the claims of more than fifty assignors, constitutes a covered class action for purposes of SLUSA."   Opinion and Order (ECF No. 509), 987 F. Supp.2d 309 (S.D.N.Y. 2013).

120.    The Bad Faith § 546(e) Issue was raised by various defendants, who filed two sets of moving papers on July 27, 2012.  (ECF Nos. 259–261).  Judge Rakoff heard oral argument on November 26, 2012 and issued a "bottom line" ruling on February 12, 2013, indicating that under certain circumstances, the Trustee's complaints should not be dismissed at the pleading stage solely on the basis of defendants' invocation of § 546(e) of the Bankruptcy Code.  (ECF No. 439).  On April 15, 2013, Judge Rakoff issued a decision (the "Bad Faith § 546(e) Opinion and Order"), setting forth the basis for his ruling, and indicated that the Trustee's claims are not

precluded under § 546(e) of the Bankruptcy Code in cases where the Trustee "sufficiently alleges that the transferee from whom [the Trustee] seeks to recover a fraudulent transfer knew of [BLMIS's] fraud, that transferee cannot claim the protection of Section 546(e)'s safe harbor." Opinion and Order (ECF No. 460), 491 B.R. 27 (S.D.N.Y. 2013).

121.    Various defendants raised the § 502(d) Issue and joined in moving papers filed on July 13, 2012.  (ECF Nos. 231–33).  Judge Rakoff heard oral argument on October 9, 2012 and issued a "bottom line" ruling on February 12, 2013, indicating that the Trustee may invoke section 502(d) of the Bankruptcy Code.  (ECF No. 439).  Judge Rakoff issued a decision on June 30, 2014 (the "§ 502(d) Opinion and Order"), explaining the reasons for that decision and directing further proceedings related thereto to be returned to the Bankruptcy Court.  Opinion and Order (ECF No. 549), 513 B.R. 437 (S.D.N.Y. 2014).

122.    The Extraterritoriality Issue was joined by various defendants, who filed moving papers on July 3, 2012.  (ECF Nos. 234-36).  Judge Rakoff held oral argument on September 21, 2012.  On July 6, 2014, Judge Rakoff issued a decision (the "Extraterritoriality Opinion and Order") indicating that certain of the Trustee's claims were barred under *Morrison*, and stated that "section 550(a) does not apply extraterritorially to allow for the recovery of subsequent transfers received abroad by a foreign transferee from a foreign transferor," and directing further proceedings related thereto to be returned to the Bankruptcy Court.  Opinion and Order (ECF No. 551), 513 B.R. 222 (S.D.N.Y. 2014).

123.    The Good Faith Standard Issue was raised by various defendants, who filed two main sets of moving papers on July 20, 2012.  (ECF Nos. 242, 243).  Judge Rakoff heard oral argument on October 12, 2012 and issued a decision on April 27, 2014 (the "Good Faith Standard Opinion and Order"), ruling that "in the context of this litigation and with respect to

both section 548(c) and section 550(b)(1), "good faith" means that the transferee neither had actual knowledge of the Madoff Securities fraud nor willfully blinded himself to circumstances indicating a high probability of such fraud."  With respect to the issue of which party bears the burden of pleading a defendant's good faith or lack thereof, Judge Rakoff further ruled that "a defendant may succeed on a motion to dismiss by showing that the complaint does not plausibly allege that that defendant did not act in good faith."  Opinion and Order (ECF No. 524), 516 B.R. 18 (S.D.N.Y. 2014).

124.    Following the entry of the Good Faith Standard Opinion and Order and the Extraterritoriality Opinion and Order, the Trustee filed an omnibus motion for expedited discovery related to the good faith issue and for leave to replead regarding the issues of good faith and extraterritoriality, which affected over 86 adversary proceedings (the "Omnibus Motion").  (ECF No. 7827).  On September 17, 2014, the Bankruptcy Court held a conference to discuss further proceedings to be conducted pursuant to the Extraterritoriality Opinion and Order and the Omnibus Motion.  The Bankruptcy Court directed the parties to confer and devise an efficient procedure and briefing schedule.  The Omnibus Motion is being held in abeyance pending the Bankruptcy Court's resolution of issues relating to extraterritoriality.

(c)    **The 546(e) Appeal**

125.    On April 27, 2012 the District Court entered an order dismissing certain claims in 78 adversary proceedings.  *See Picard v. Greiff*, Adv. No. 11-03775 (BRL) (Bankr. S.D.N.Y.); *Picard v. Blumenthal*, Adv. No. 11-04293 (BRL) (Bankr. S.D.N.Y.); *Picard v. Goldman*, Adv. No. 11-04959 (BRL) (Bankr. S.D.N.Y.); and *Picard v. Hein*, Adv. No. 11-04936 (BRL) (Bankr. S.D.N.Y.).  *See* Order, No. 12 MC 0115 (JSR) (S.D.N.Y. April 30, 2012), ECF No. 57.  These claims included preferences under § 547 of the Bankruptcy Code, constructive fraudulent transfers under § 548(a)(l)(B) of the Bankruptcy Code, and actual and constructive fraudulent

transfers or fraudulent conveyances under provisions of the New York Debtor & Creditor Law incorporated by § 544(b) of the Bankruptcy Code (the "Dismissed Claims"). The Dismissed Claims did not include those claims proceeding under § 548(a)(l)(A) and § 550(a) of the Bankruptcy Code.

126.    On April 30, 2012, the District Court entered an Opinion and Order explaining the reasons for its decision.  *See Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 476 B.R. 715 (S.D.N.Y. 2012).  On May 15, 2012, the District Court entered a Supplemental Opinion and Order to make explicit that § 546(e) of the Bankruptcy Code applies to the Trustee's claims for avoidance and recovery of preferential transfers under § 547 of the Bankruptcy Code.  *See* Supplemental Opinion and Order, No. 12 MC 0115 (JSR) (ECF No. 101).

127.    On June 21, 2012, the Trustee and SIPC each filed notices of appeal in the Second Circuit from these orders.

128.    The Second Circuit held argument on March 5, 2014.  On December 8, 2014, the Court of Appeals for the Second Circuit affirmed the District Court's decision finding that section 546(e) of the Bankruptcy Code bars the Dismissed Claims.

129.    On March 17, 2015, the Trustee and SIPC filed separate petitions for a writ of certiorari with the Supreme Court seeking to reverse the Second Circuit's December 8, 2014 opinion.

**B.**    **Litigation in the Bankruptcy Court and Related Appeals**

    **i.**    **Avoidance Actions**

        **(a)**    **District Court Proceedings**

130.    The District Court has issued rulings on all of the Common Briefing issues as follows:

- *Stern v. Marshall Issue. See* Order, No. 12 MC 115 (JSR) (S.D.N.Y. April 13, 2012), (ECF No. 4); *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*, 490 B.R. 46 (S.D.N.Y. 2013);

- *Antecedent Debt Issue. See* Order, No. 12 MC 115 (JSR) (S.D.N.Y. May 15, 2012), (ECF No. 107); *In re Madoff Sec.,* 499 B.R. 416 (S.D.N.Y. 2013); *In re Madoff Sec.,* No. 499 B.R. 416 (S.D.N.Y. 2013);

- *Section 546(e) Issue. See* Order, No. 12 MC 115 (JSR) (S.D.N.Y. May 16, 2012), (ECF No. 119); Order, No. 12 MC 115 (JSR) (S.D.N.Y. Feb. 12, 2013), (ECF No. 439); *In re Madoff Sec.*, No. 12 MC 115 (JSR), 2013 WL 1609154 (S.D.N.Y. April 15, 2013);

- *Section 550(a) Issue. See* Order, No. 12 MC 115 (JSR) (S.D.N.Y. Aug. 22, 2012), (ECF No. 314); Order, No. 12 MC 115 (JSR) (S.D.N.Y. Dec. 12, 2012); *In re Madoff Sec.,* No. 12 MC 115 (JSR), 501 B.R. 26 (S.D.N.Y. 2013); *In re Madoff Sec.,* No. 12-MC-0115 (JSR), 2014 WL 465360 (S.D.N.Y. Jan. 14, 2014);

- *Standing and SLUSA Issue. See* Order, No. 12 MC 115 (JSR) (S.D.N.Y. May 16, 2012), (ECF No. 114); *In re Madoff Sec.,* 987 F.Supp.2d 311 (S.D.N.Y. 2013);

- *Good Faith Standard Under Either 11 U.S.C. § 548(c) or 11 U.S.C. § 550(b) Issue. See* Order, No. 12 MC 115 (JSR) (S.D.N.Y. June 25, 2012), (ECF No. 197); *In re Madoff Sec.,* No. 12-MC-0115 (JSR), 2014 WL 1651952 (S.D.N.Y. April 27, 2014);

- *Section 502(d) Issue. See* Order, No. 12 MC 115 (JSR) (S.D.N.Y. June 1, 2012), ECF No. 155; Order, No. 12 MC 115 (JSR) (S.D.N.Y. Feb. 12, 2013), (ECF No. 435); *In re Madoff Sec.,* 513 B.R. 437 (S.D.N.Y. 2013); and

- *Extraterritoriality Issue. See* Order, No. 12 MC 115 (JSR) (S.D.N.Y. June 6, 2012), (ECF No. 167); *In re Madoff Sec.,* 513 B.R. 222 (S.D.N.Y. 2014).

**(b)**    **Bankruptcy Court Proceedings**

131.    In March 2014, the Bankruptcy Court established a briefing schedule for all pending motions to dismiss (the "Motions to Dismiss"), and directed the Trustee to file one omnibus opposition to all pending Motions to Dismiss filed by defendants on or before March 10, 2014.  The Bankruptcy Court further directed all participating defendants to reply on or before March 17, 2014.  *See* Case Management Order Regarding Certain Pending Motions to

Dismiss, *In re Madoff,* Adv. Pro. No. 08-01789 (SMB) (Bankr. S.D.N.Y. Feb. 24, 2014), (ECF

No. 5695) ("February 24 Order").   Defendants who filed motions to dismiss filed on or after

April 17, 2014 did not participate in the omnibus briefing.   The Bankruptcy Court further

provided all participating defendants with the opportunity to "opt out" of the omnibus briefing

process referenced in the February 24 Order in the event that defendants did not wish to file a

reply or otherwise participate in the omnibus briefing.

132.    Oral arguments were held on September 17, 2014.  *See* Order Scheduling Hearing

on Becker & Poliakoff LLP Motions to Dismiss and Motions to Dismiss Listed on Appendix A

to the Trustee's February 20 Letter to the Court as Amended, *In re Madoff,* Adv. Pro. No. 08-

01789 (SMB) (Bankr. S.D.N.Y. July 24, 2014), ECF No. 7513 ("Scheduling Order").

133.    The Scheduling Order further provided that the Court would not hear arguments

particular to specific motions to dismiss, such as lack of personal jurisdiction, improper service

of process, or arguments under state-specific non-claim statutes, and directed the parties raising

any such arguments to confer with the Trustee to schedule separate hearing dates for these

arguments.   The Trustee and affected opposing counsel mutually agreed to hold off scheduling

such hearings until after the Bankruptcy Court issues a ruling related to the case-wide issues

raised in the omnibus briefing process.   No ruling has been issued to date.

134.    Approximately 30 actions opted out of the omnibus briefing process by

withdrawing their motion to dismiss, without prejudice, in order to proceed to mediation as

permitted under the Order (1) Establishing Litigation Case Management Procedures for

Avoidance Actions and (2) Amending the February 16, 2010 Protective Order, *In re Madoff*,

Adv. Pro. No. 08-01789 (BRL) (Bankr. S.D.N.Y. Nov. 10, 2010), ECF No. 3141 ("Litigation

Procedures Order"), governing the prosecution of BLMIS avoidance actions.

135.    There were approximately ninety motions to dismiss filed on or after April 17,

2014, with several filed during the Report Period.  These motions to dismiss raised nearly all the

identical issues already addressed by the Motions to Dismiss.  Pursuant to the Litigation

Procedures Order, the vast majority of these motions were automatically referred to mediation.

Certain other defendants requested mediation of their cases.  As a result, the parties engaged in

numerous mediations, approximately fifty of which were conducted during the Report Period.

136.    With respect to cases remaining in the Bankruptcy Court, the next responsive

pleading deadline is scheduled for July 18, 2015.  Additionally, the Trustee considered hardship

applications and where appropriate, dismissed certain defendants from the actions.  In some

cases, the parties engaged in fact and expert discovery, but in other cases, the Trustee's

professionals engaged in settlement negotiations which led to several documented settlements

during the Report Period.

### ii.    Subsequent Transferee Actions

137.    To date, the Trustee has brought a total of 82 adversary proceedings seeking

recovery of just over $7.2 billion in subsequent transfers from 150 defendants who redeemed

money from Fairfield Sentry Limited, Fairfield Sigma Limited, Fairfield Lambda Limited,

Harley International (Cayman) Ltd., Kingate Global Fund Ltd., and Kingate Euro Fund Ltd.  The

Trustee has completed service of process in all but one adversary proceeding, for which the

Trustee is currently in the process of effectuating international service of process on the

remaining two defendants.

138.    The subsequent transferee defendants filed motions to withdraw the reference,

which were granted by Judge Rakoff and resulted in Common Briefing by the Trustee and the

defendants.  Among the issues affecting the subsequent transfer cases are the Extraterritoriality

Issue, the Bad Faith § 546(e) Issue, the avoidance of initial transfers through the settlement with

Fairfield Sentry, Greenwich Sentry, Greenwich Sentry Partners, and various Tremont funds

under Bankruptcy Code § 550, application of SLUSA, and the Trustee's standing to assert claims

assigned to him.    The District Court has issued its rulings on all of the issues affecting

subsequent transferee cases and remanded the cases to this Court for further findings based on

the legal standards set forth in the District Court's decisions.

139.    On August 22, 2014, a number of subsequent transferee defendants, as well as

other defendants, requested a conference with this Court to discuss procedures for motions to

dismiss based on the Extraterritoriality Opinion and Order.    (ECF No. 7766).    On August 28,

2014, the Trustee filed the Omnibus Motion.    (ECF No. 7826).    *See* discussion *infra* Section

IX(B)(iii).    On September 17, 2014, this Court held a conference to discuss the extraterritoriality

motion to dismiss procedures, which included discussions regarding the Omnibus Motion.    *See*

discussion *infra* Section IX(B)(iii).    During the conference, this Court ordered the parties to

confer and submit a report or recommendation prior to the next omnibus hearing scheduled for

October 22, 2014.    *See* discussion *infra* Section IX(B)(iii).    The parties submitted an order to the

Court for procedures governing defendants' motions to dismiss and the Trustee's motion for

expedited discovery.    On November 19, 2014, this Court held a hearing regarding two objections

that were filed in response to the order the parties had submitted to the Court.    Following the

hearing, the parties submitted a modified order, which was entered by this Court on December

18, 2014.

140.    Two subsequent transferee defendants filed motions to dismiss in the Bankruptcy

Court.    Briefing on one motion has not yet been completed.    In the second motion, *Picard v.*

*Bureau of Labor Insurance*, the defendant sought to dismiss based on the Foreign Sovereign

Immunities Act, lack of personal jurisdiction, improper extraterritorial application of SIPA and

the Bankruptcy Code, the failure to avoid the initial transfers to Fairfield Sentry through the

Fairfield Sentry settlement, and the statute of limitations under Bankruptcy Code § 550.  Adv.

No. 11-02732 (BRL) (Bankr. S.D.N.Y.), ECF No. 8–10.  On October 11, 2012, the Bankruptcy

Court denied the motion to dismiss on all grounds.  (ECF No. 51).

141.    Currently, the response dates to the Trustee's subsequent transfer adversary

proceedings have been extended while the parties await this Court's rulings on the Defendants'

extraterritoriality motions to dismiss and the Omnibus Motion.  *See* discussion *infra* Section

IX(B)(iii).

### iii.    *Picard v. ABN AMRO Bank N.A.*

142.    On December 8, 2010, the Trustee commenced an action against ABN AMRO

Bank N.A. (presently known as The Royal Bank of Scotland N.V.) (the "ABN/RBS"), ABN

AMRO Incorporated ("ABNI"), Rye Select Broad Market XL Fund, LP, and Rye Select Broad

Market XL Portfolio Limited Ltd.  *Picard v. ABN AMRO Bank N.A.*, Adv. Pro. No. 10-05354

(BRL) (Bankr. S.D.N.Y.) (the "ABN/RBS Action").

143.    On September 30, 2011, ABN/RBS and ABNI moved for withdrawal of the

reference.  *Picard v. ABN AMRO Bank N.A.*, No. 11 Civ. 6878 (JSR) (S.D.N.Y.), ECF Nos. 1-3.

On January 11, 2012, the Trustee and SIPC opposed the motion.  *Id.*, ECF Nos. 12-14.  On

January 27, 2012, ABN/RBS and ABNI filed reply papers.  *Id.*, ECF No. 15.  The District Court

granted the motion on May 15, 2012, allowing ABN/RBS and ABNI to move to dismiss as to the

issues of 550(a) and 546(g).  *Id.*, ECF No. 21.

144.    On July 18, 2012, ABN/RBS and ABNI filed a motion to dismiss the Trustee's

complaint, claiming the safe harbor of Bankruptcy Code section 546(g) bars the Trustee's

subsequent transferee claims.  *Id.*, ECF Nos. 29-31.  On August 14, 2012, the Trustee filed an

amended complaint naming only ABN/RBS and Rye Select Broad Market XL Fund, LP as

defendants. *Id.*, ECF No. 32. On September 5, 2012, ABN/RBS filed a motion to dismiss the

Trustee's amended complaint, again claiming the safe harbor of Bankruptcy Code section 546(g)

bars the Trustee's subsequent transferee claims. *Id.*, ECF Nos. 33-35. On September 25, 2012,

the Trustee and SIPC opposed the motion. *Id.*, ECF Nos. 36-37. On October 5, 2012, ABN/RBS

filed reply papers. *Id.*, ECF No. 38. On March 14, 2013, the District Court issued an order

partially denying and partially granting the 546(g) motion, and stating that an opinion providing

the reason for the ruling would follow. *Id.*, ECF No. 39. On April 15, 2013, the District Court

issued its decision concerning Bankruptcy Code section 546(e). *Id.*, ECF No. 40.

145.    On February 27, 2013, the Trustee voluntarily dismissed Rye Select Broad

Market XL Fund, L.P. with prejudice. *Picard v. ABN AMRO Bank N.A.*, Adv. Pro. No. 10-

05354 (BRL) (Bankr. S.D.N.Y.), ECF No. 56.

146.    On April 27, 2014, the District Court issued the Good Faith Standard Opinion and

Order, upon which ABN/RBS and other defendants had moved to withdraw the reference.

*Securities Inv. Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC*, 2014 WL 1651952 (S.D.N.Y.

Apr. 27, 2014).

147.    On July 6, 2014, the District Court issued the Extraterritoriality Opinion and

Order. *Securities Inv. Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC*, 513 B.R. 222 (S.D.N.Y.

2014).   See discussion *supra* Section IX(A)(i)(b). Through the Extraterritoriality Opinion and

Order, the ABN/RBS Action was remanded back to the Bankruptcy Court. *Picard v. ABN

AMRO Bank N.A.*, Adv. Pro. No. 10-05354 (SMB) (Bankr. S.D.N.Y.), ECF No. 67.

148.    Following the entry of the Extraterritoriality Opinion and Order, the Trustee filed

the Omnibus Motion for Leave to Replead Pursuant to Federal Rule of Civil Procedure 15(a) and

Court Order Authorizing Limited Discovery Pursuant to Federal Rule of Civil Procedure

26(d)(1) (the "Omnibus Motion"). *Id.*, ECF No. 69. Following a request by certain defendants, on September 17, 2014, the Bankruptcy Court held a conference to discuss further proceedings to be conducted pursuant to the Extraterritoriality Opinion and Order and the Omnibus Motion. The Bankruptcy Court directed the parties to confer and devise an efficient procedure and briefing schedule.

149.    On October 2, 2014, the Trustee filed a letter advising that the Trustee and counsel representing the defendants in this and other actions are working together to prepare a mutually acceptable agreed order that will set forth a proposed process and briefing schedule. *Id.*, ECF No. 73.

150.    On October 23, 2014, the Trustee filed a proposed order setting forth a proposed process and briefing schedule. *Id.*, ECF No. 78. Following limited objections by certain defendants, on November 19, 2014, the Bankruptcy Court held a conference to discuss the proposed process and briefing schedule.

151.    On December 10, 2014, the Bankruptcy Court entered an Order Concerning Further Proceedings on Extraterritoriality Motion and Trustee's Omnibus Motion for Leave to Replead and for Limited Discovery (the "ET Scheduling Order"). *Id.*, ECF No. 89.

152.    On December 31, 2014, Defendants filed the Consolidated Supplemental Memorandum of Law in Support of the Transferee Defendants' Motion to Dismiss Based on Extraterritoriality seeking to dismiss the claims listed in Exhibits A and B to the ET Scheduling Order (the "Consolidated Motion to Dismiss"). *Id.*, ECF No. 90.

153.    On January 13, 2015 and February 24, 2015, the Court so ordered two stipulations modifying the ET Scheduling Order and certain deadlines for the parties to file their respective

submissions in connection with the Extraterritoriality Opinion and Order and the Omnibus Motion.

154.    On March 4, 2015, the Trustee filed a Letter Regarding Confidentiality Designations Affecting The Trustee's Extraterritoriality Submission.  *Id.*, ECF No. 93.  The Bankruptcy Court held an informal conference on the confidentiality issues on March 18, 2015.

155.    On April 1, 2015, the Court entered a Third Stipulation and Order Modifying the Order Concerning Further Proceedings on Extraterritoriality Motion and Trustee's Omnibus Motion for Leave to Replead and for Limited Discovery (the "Third Stipulation").  *Securities Inv. Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC*, Adv. Pro. No. 08-1789 (Bankr. S.D.N.Y.) (SMB), ECF No. 9720.  The Trustee's papers in opposition to the Extraterritoriality Opinion and Order and the Consolidated Motion to Dismiss, and in further support of the Omnibus Motion, are due to be filed under the Third Stipulation with the Court on June 30, 2015.

### iv.    *Picard v. ABN AMRO (Ireland) Ltd.*

156.    On December 8, 2010, the Trustee commenced an action against ABN AMRO Bank (Ireland) Ltd. (f/k/a Fortis Prime Solutions Bank (Ireland) Limited), ABN Custodial Services (Ireland) Ltd. (f/k/a Fortis Prime Solutions Custodial Services (Ireland) Ltd.) (collectively the "ABN (Ireland) Defendants"), Rye Select Broad Market XL Fund, LP, Rye Select Broad Market XL Portfolio Limited.  *Picard v. ABN AMRO (Ireland) Ltd.*, Adv. Pro. No. 10-05355 (Bankr. S.D.N.Y.) (BRL) (the "ABN (Ireland) Action").

157.    On September 30, 2011, the ABN AMRO Defendants moved for withdrawal of the reference.  *Picard v. ABN AMRO (Ireland) Ltd.,* No. 11 Civ. 6877 (JSR) (S.D.N.Y.), ECF No. 1-3.  On January 11, 2012, the Trustee opposed the motion to withdraw the reference.  (ECF Nos. 13-14).  On January 27, 2012, the ABN AMRO Defendants filed reply papers.  (ECF Nos. 15-16).  The District Court granted the motion on May 15, 2012, allowing the ABN (Ireland)

Defendants to move to dismiss as to the issue of Bankruptcy Code section 546(g).  (ECF No. 22).

The ABN (Ireland) Defendants participated in Common Briefing on the Stern Issue, the

Extraterritoriality Issue, the Bad Faith § 546(e) Issue, the Good Faith Standard Issue, and the

Antecedent Debt Issue.  *Picard v. ABN AMRO (Ireland) Ltd.,* No. 11 Civ. 6877 (S.D.N.Y.)

(JSR), ECF No. 22.  The District Court has rendered decisions on all of these Common Briefing

issues, which are discussed *supra* in Section IX(A)(iv)(b).

158.    On June 13, 2012, the ABN (Ireland) Defendants filed a motion to dismiss the

Trustee's complaint, claiming the safe harbor of Bankruptcy Code section 546(g) bars the

Trustee's subsequent transferee claims.  (ECF Nos. 27-29).

159.    On November 29, 2012, the District Court heard oral argument on the ABN

(Ireland) Defendants' motion to dismiss jointly with two other motions raising Bankruptcy Code

section 546(g) (the "546(g) Motions").  On February 15, 2013, the District Court issued a bottom

line order partially denying and partially granting the 546(g) Motions, with an opinion explaining

the bottom line order to follow.  (ECF No. 41).  On April 15, 2013, the District Court issued the

Bad Faith § 546(e) Opinion and Order.  (ECF No. 42).  On December 26, 2013, the District

Court issued its opinion concerning the 546(g) Motions, confirming and explaining the February

15, 2013 bottom line order.  (ECF No. 43).

160.    On February 27, 2013, the Trustee voluntarily dismissed Rye Select Broad

Market XL Fund, L.P. with prejudice.  *Picard v. ABN AMRO (Ireland) Ltd.*, Adv. Pro. No. 10-

05355 (BRL) (Bankr. S.D.N.Y.), ECF No. 50.

161.    On April 27, 2014, the District Court issued the Good Faith Standard Opinion and

Order, upon which Nomura and other defendants had moved to withdraw the reference.

*Securities Inv. Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC*, 2014 WL 1651952 (S.D.N.Y. Apr. 27, 2014). *See* discussion *supra* Section IX(A)(i)(b).

162.     In July 2014, the District Court issued the Extraterritoriality Opinion and Order. *Securities Inv. Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC*, 513 B.R. 222 (S.D.N.Y. 2014). *See* discussion *supra* Section IX(A)(i)(b). Through the Extraterritoriality Opinion and Order, the ABN (Ireland) Action was remanded back to the Bankruptcy Court. *Picard v. ABN AMRO (Ireland) Ltd.*, Adv. Pro. No. 10-05355 (Bankr. S.D.N.Y.) (SMB), ECF No. 63.

163.     Following the entry of the Extraterritoriality Opinion and Order, the Trustee filed the Omnibus Motion. *Id.*, ECF No. 65. *See* discussion *supra* Section IX(B)(iii). Following a request by certain defendants, on September 17, 2014, the Bankruptcy Court held a conference to discuss further proceedings to be conducted pursuant to the Extraterritoriality Opinion and Order and the Omnibus Motion. The Court directed the parties to confer and devise an efficient procedure and briefing schedule.

164.     On October 2, 2014, the Trustee filed a letter advising that the Trustee and counsel representing the defendants in this and other actions are working together to prepare a mutually acceptable agreed order that will set forth a proposed process and briefing schedule. *Id.*, ECF No. 69.

165.     On October 23, 2014, the Trustee filed a proposed order setting forth a proposed process and briefing schedule. *Id.*, ECF No. 74. Following limited objections by certain defendants, on November 19, 2014, the Bankruptcy Court held a conference to discuss the proposed process and briefing schedule.

166.     On December 10, 2014, the Bankruptcy Court entered the ET Scheduling Order. *Id.*, ECF No. 85. *See* discussion *supra* Section IX(B)(iii).

167.    On December 31, 2014, Defendants filed the Consolidated Motion to Dismiss. *Id.*, ECF No. 86. *See* discussion *supra* Section IX(B)(iii).

168.    On January 13, 2015 and February 24, 2015, the Court so ordered two stipulations modifying the ET Scheduling Order and certain deadlines for the parties to file their respective submissions in connection with the Extraterritoriality Opinion and Order and the Omnibus Motion.

169.    On March 4, 2015, the Trustee filed a Letter Regarding Confidentiality Designations Affecting The Trustees Extraterritoriality Submission. *Id.*, ECF No. 89. The Bankruptcy Court held an informal conference on the confidentiality issues on March 18, 2015.

170.    On April 1, 2015, the Court entered the Third Stipulation. *Securities Inv. Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC*, Adv. Pro. No. 08-1789 (Bankr. S.D.N.Y.) (SMB), ECF No. 9720. *See* discussion *supra* Section IX(B)(iii). The Trustee's papers in opposition to the Extraterritoriality Opinion and Order and the Consolidated Motion to Dismiss, and in further support of the Omnibus Motion, are due to be filed under the Third Stipulation with the Court on June 30, 2015.

171.    The Trustee continues to draft the papers in opposition to the Extraterritoriality Opinion and Order and the Consolidated Motion to Dismiss, and in further support of the Omnibus Motion. The Trustee continues to work with opposing counsel to de-designate confidential documents supporting the Trustee's papers.

v.    ***Picard v. HSBC Bank plc***

172.    On July 15, 2009, the Trustee commenced an adversary proceeding against a handful of HSBC entities and international feeder funds in the financial services industry that transferred funds to and from BLMIS. *Picard v. HSBC Bank plc*, Adv. No. 09-01364 (BRL) (Bankr. S.D.N.Y.) (the "HSBC Action"). After further investigation, the Trustee filed an

amended complaint on December 5, 2010, expanding the pool of defendants to thirteen HSBC entities and forty-eight individuals and entities, and alleging that over 33% of all monies invested in Madoff's Ponzi scheme were funneled by and through these defendants into BLMIS.  (ECF No. 35).

173.    The thirteen HSBC-related defendants and, separately, UniCredit S.p.A. and Pioneer Alternative Investment Management Limited, moved to withdraw the reference.  On April 14, 2011, United States District Judge Jed S. Rakoff ("Judge Rakoff") withdrew the reference to consider the Trustee's standing to assert common law claims.  *Picard v. HSBC Bank plc*, No. 11 Civ. 00836 (JSR) (S.D.N.Y.), ECF Nos. 20, 23.

174.    On May 3, 2011, the same defendants filed motions to dismiss.  *Picard v. HSBC Bank plc*, No. 11 Civ. 00836 (ECF Nos. 24–27).  The Trustee and SIPC opposed the motions. (ECF Nos. 32–36).  On July 28, 2011, the District Court dismissed the Trustee's common law claims, holding that the Trustee lacked standing, under any theory, to assert them.  *Picard v. HSBC Bank plc*, 454 B.R. 25, 37–38 (S.D.N.Y. 2011).  The District Court returned the remainder of the HSBC Action to this Court for further proceedings.  *Id.* at 38.

175.    On December 15, 2011, the Trustee appealed the District Court's decision to the Second Circuit.  *See Picard v. HSBC Bank PLC*, No. 11-5175 (2d Cir. 2011); *Picard v. HSBC Bank PLC*, No. 11-5207 (2d Cir. 2011).  Oral argument was held on November 21, 2012.  On June 20, 2013, the Second Circuit affirmed the decision of the District Court.  (ECF No. 163).

176.    On October 9, 2013, the Trustee filed a petition for a writ of certiorari with the Supreme Court.  *See Picard v. J.P. Morgan Chase & Co.*, *pet. for cert. filed*, (U.S. Oct. 9, 2013) No. 13-448.  The Supreme Court denied the petition.

177.    The District Court returned several of the Trustee's bankruptcy claims to this Court; however, various defendants in the HSBC Action moved to withdraw the reference from this Court and those motions have been granted, at least in part, by the District Court.  These defendants participated in a variety of motions before the District Court on Common Briefing, including the Bad Faith § 546(e) Issue, the § 502(d) Issue, the Extraterritoriality Issue, and the Good Faith Standard Issue.  The District Court's disposition of these Common Briefing issues is discussed *supra* in Section IX(A)(i)(b).  The HSBC Action now has been returned to the Bankruptcy Court.

178.    Following the entry of the Extraterritoriality Opinion and Order, the Trustee filed the Omnibus Motion.  ECF No. 7827.  *See* discussion *supra* Section IX(B)(iii).  Following a request by certain defendants, on September 17, 2014, the Bankruptcy Court held a conference to discuss further proceedings to be conducted pursuant to the Extraterritoriality Opinion and Order and the Omnibus Motion.  The Court directed the parties to confer and devise an efficient procedure and briefing schedule.  The Omnibus Motion is being held in abeyance pending the Bankruptcy Court's ruling on the extraterritoriality issues.

179.    The Trustee had been engaged in mediation with Primeo Fund (In Official Liquidation) and Herald Fund SPC (In Official Liquidation).  The mediation commenced in April 2014.  The mediation resulted in a settlement whereby Herald and Primeo paid the Trustee $496,844,288, and Herald received an allowed claim of $1,639,896,943.  *See* discussion *supra* Section VII(B).

180.    The Trustee had been engaged in mediation with Senator Fund.  The mediation commenced in March 2014, which resulted in a $95 million settlement between the Trustee and Senator Fund.   Under the settlement, Senator Fund received an allowed claim in the amount of

$238,753,482 and a catch-up distribution in the amount of $116,516,474.29. Senator Fund paid $95 million by assigning to the Trustee: (i) the funds to be advanced by SIPC in the amount of $500,000 under Senator Fund's allowed customer claim, and (ii) $94.5 million of the $116,516,474.29 catch-up distribution owed to Senator Fund under its allowed customer claim. *See* discussion *supra* Section VII(B).

### vi.    *The Luxalpha Action*

181.    On December 10, 2014, the Court entered the ET Scheduling Order. *See* discussion *supra* Section IX(B)(iii). The ET Scheduling Order provided certain deadlines for the parties to file their respective submissions in connection with the Extraterritoriality Issue and the Omnibus Motion.

182.    On December 31, 2014, the transferee defendants listed in Exhibits A and B to the ET Scheduling Order (the "Defendants Group")—including the moving Access Defendants[19] in the Luxalpha Proceeding (defined below), M&B Capital Advisors Sociedad de Valores, S.A. in the LIF Proceeding, Reliance Management (Gibraltar) Ltd. in the LIF Proceeding (defined below), and the UBS Defendants[20] in the Luxalpha and LIF Proceedings—filed their Consolidated Motion to Dismiss. *Picard v. UBS AG*, Adv. Pro. No. 10-4285 (SMB) (Bankr. S.D.N.Y.) (the "Luxalpha Proceeding"); *Picard v. UBS AG*, Adv. Pro. No. 10-05311 (SMB) (Bankr. S.D.N.Y.) (the "LIF Proceeding"). *See* discussion *supra* Section IX(B)(iii).

183.    During the Report Period, the Trustee prepared amended complaints in the Luxalpha and LIF Proceedings in connection with the Omnibus Motion. The Trustee also

---

[19] The moving Access Defendants consist of Access International Advisors Ltd., Access Management Luxembourg SA (f/k/a Access International Advisors (Luxembourg) SA), Access Partners SA, Patrick Littaye and Claudine Magon de la Villehuchet in her capacity as Executrix and sole beneficiary under the will of Thierry Magon de la Villehuchet.

[20] The UBS Defendants consist of UBS AG, UBS (Luxembourg) SA, UBS Fund Services Luxembourg SA, and UBS Third Party Management SA.

worked on submissions opposing moving defendants' motions to dismiss based on the Extraterritoriality Issue in the Luxalpha and LIF Proceedings.

184.    In preparing the amended complaints and submissions on the Extraterritoriality Issue across numerous cases—including the Luxalpha and LIF Proceedings—the Trustee relies upon and references many documents that were designated confidential by the various parties who produced such documents (the "Producing Parties").

185.    In an effort to address these confidentiality issues, the Trustee's time to file his submissions under the ET Scheduling Order was extended under a so-ordered stipulation on January 13, 2015, ECF No. 8990, and again under a second so-ordered stipulation on February 24, 2015, ECF No. 9350.  *See* discussion *supra* Section IX(B)(iii).

186.    The Trustee completed meet-and-confer discussions regarding confidentiality issues with counsel for relevant Producing Parties, including the UBS Defendants and Reliance International Research LLC.  Such meet and confers resulted in the de-designation of several documents, but outstanding issues remain with several Producing Parties.

187.    On March 2, 2015, the Court held a conference to discuss the confidentiality issues regarding documents the Trustee relies upon in his amended complaints and submissions on the Extraterritoriality Issue across numerous cases, including the Luxalpha and LIF Proceedings.

188.    As a result of the March 2, 2015 conference with the Court, the Trustee must coordinate with the Defendants Group to file stipulations or motions to: (i) file the submissions on the Extraterritoriality Issue under seal and designate allegations derived from confidential documents as "attorneys' eyes only," and (ii) appoint a discovery arbitrator to adjudicate the confidentiality issues where necessary.

189.    In light of the above and pending resolution of the confidentiality issues, the Court and the parties have agreed to an extension of the Trustee's time to file his amended complaints and submissions on the Extraterritoriality Issue across all relevant cases.    *See* discussion *supra* Section IX(B)(iii).

190.    The Trustee and his counsel continue to work towards a resolution of these confidentiality issues in order to brief the extraterritoriality issues and motion for leave to replead.

### vii.    *The Kohn Action*

191.    On December 10, 2010, the Trustee commenced an adversary proceeding (the "Kohn Action") against Sonja Kohn ("Kohn"), Bank Medici, UniCredit Bank Austria AG ("Bank Austria"), UniCredit S.p.A. ("UniCredit), Pioneer Asset Management ("Pioneer"), Alessandro Profumo ("Profumo"), and dozens of individuals, trusts, and nominee companies (collectively, the "Kohn Defendants").    *Picard v. Kohn*, Adv. No. 10-5411 (BRL) (Bankr. S.D.N.Y.).

192.    On February 22, 2011, UniCredit, Bank Austria, Pioneer, and Profumo moved to withdraw the reference as to certain of the Trustee's claims against them.    *Picard v. Kohn*, No. 11 Civ. 01181 (JSR) (S.D.N.Y.).    The Trustee and SIPC opposed the motion.    (ECF Nos. 15–17). On June 6, 2011, Judge Rakoff granted the motion to consider the Trustee's standing to assert his RICO claims and to determine whether those claims are otherwise barred.    (ECF Nos. 34, 55, 56).

193.    On July 25, 2011, UniCredit, Bank Austria, Pioneer, and Profumo filed motions to dismiss the Trustee's RICO and common law claims.    (ECF Nos. 38–41, 44–47, 49–50).    The Trustee and SIPC opposed the motions to dismiss.    (ECF Nos. 51–54).    On February 22, 2012,

Judge Rakoff dismissed the RICO and common law claims as to those defendants and returned the remainder of the claims to this Court.  (ECF No. 69).

194.    On March 21, 2012, the Trustee initiated an appeal within the thirty day time period prescribed by Rule 4(a)(1)(A) of the Federal Rules of Appellate Procedure to preserve the Trustee's right to appeal.  (ECF No. 70).

195.    Since entry of the Administrative Order, thirty-two of the Kohn Defendants have moved to withdraw the reference, including UniCredit and Pioneer (*Kohn*, No. 11 Civ. 01181, ECF Nos. 70–75), Bank Austria, Kohn and certain of her family members and related companies (ECF Nos. 89, 94).

196.    On April 6, 2012, the Trustee filed the second amended complaint and amended RICO case statement in this Court.  (ECF No. 97).

197.    On April 10, 2012, the Trustee dismissed Gianfranco Gutty as a defendant in the Kohn Action.  (ECF No. 100).

198.    On May 10, 2012, the Trustee entered into a stipulation to formally dismiss Hassans International Law Firm.  (ECF No. 104).

199.    On August 10, 2012, the Clerk of this Court (the "Clerk") entered a default against defendant Daniele Cosulich, on a request made by the Trustee on August 9, 2012.  (ECF Nos. 114, 112).

200.    On August 31, 2012, the Clerk entered a default against defendants Yakov Lantzitsky and Sharei Halacha Jerusalem, Inc., on a request made by the Trustee on August 30, 2012.  (ECF Nos. 122, 123, 116, 118).

201.    On November 16, 2012, the Trustee filed a motion for judicial assistance for service of process on defendants in Liechtenstein and Austria.  (ECF Nos. 145, 146).

202.    On December 17, 2012, the Court signed an order issuing requests for international judicial assistance for service of process on defendants in Liechtenstein and Austria.  (ECF Nos. 151, 152).

203.    On April 15, 2013, the Clerk entered a default against defendants Brightlight Trading Ltd., Eastview Service Ltd., Fintechnology Ltd., IT Resources Ltd., Marketinc Strategies Ltd., and Systor S.A., on a request made by the Trustee on April 12, 2013.  (ECF Nos. 170, 171, 172, 173, 174, and 175).

204.    On April 25, 2013, the Clerk entered a default against defendants RTH AG, Tonga International S.A., Lifetrust AG, and Starvest Anstalt, on requests made by the Trustee on April 17 and 23, 2013.  (ECF Nos. 183, 184, 185, and 186).

205.    On June 13, 2013, Starvest Anstalt and Lifetrust AG filed a notice of joinder in the motion to withdraw the reference from the Bankruptcy Court.  (ECF No. 198).

206.    On June 18, 2013, the Clerk entered a default against defendants Bank Medici AG (Gibraltar), New Economy Tech S.A., and Paul de Sury on a request made by the Trustee on June 13, 2013.  (ECF Nos. 200, 201, and 202).

207.    On December 17, 2013, Josef Duregger, Peter Fischer, Gerhard Randa, Wilhelm Hemetsberger, Werner Kretschmer, Harald Nograsek, Stefan Zapotocky (the "Bank Austria Individual Defendants") filed a motion to withdraw the reference to the Bankruptcy Court.  (ECF No. 218).  The District Court denied the Bank Austria Individual Defendants' motion to withdraw the reference without prejudice to its being reasserted if the Bankruptcy Court resolves the personal jurisdiction issue in favor of exercising jurisdiction.  *Picard v. Kohn*, No. 13 Civ. 08994 (JSR) (S.D.N.Y.), ECF No. 4.

208.    On May 9, 2014, the Trustee filed a supplemental stipulation with the Second Circuit, withdrawing with prejudice the appeal initiated by the Trustee on March 21, 2012. *Picard v. Kohn*, No. 12-1106 (2d Cir.), ECF No. 61.  This supplemental stipulation states that the appeal, which was initially withdrawn on April 5, 2012 without prejudice, was premature in that some claims remain pending in the District Court and no Fed. R. Civ. P. 54(b) certification has issued. The Trustee agreed with the appellees that this stipulation does not preclude later appeal from a final judgment or an otherwise appealable order.

209.    On July 18, 2014, the Bank Austria Individual defendants filed a motion to dismiss the second amended complaint for lack of personal jurisdiction.  (ECF Nos. 254, 255, 256, and 257).

210.    On July 30, 2014, the District Court returned the defendants' motion to withdraw the reference to the Bankruptcy Court.  (ECF Nos. 258, 259. 260, 261).

211.    On September 29, 2014, the parties stipulated to extend the Trustee's time to respond to the Bank Austria Individual Defendants' motion to October 29, 2014 and the Bank Austria Individual Defendants' time to reply to December 17, 2014.  (ECF No. 266).

212.    On October 7, 8, and 13, 2014, the parties stipulated to extend the time to answer or otherwise respond for certain defendants.  (ECF Nos. 267, 268, 269, 270).[21]

213.    On October 29, 2014, the parties stipulated to extend the Trustee's time to respond to the motion to dismiss filed by Josef Duregger, Peter Fischer, Harald Nograsek, Gerhard Randa, Stefan Zapotocky, Wenre Kretschmer, Wilhelm Hemetsberger, Peter Scheithauer, and Ursual Radel-Leszczynski.  (ECF No. 273).  On November 12, 2014, the same

---

[21] The parties covered by these stipulations are as follows: Helmuth Frey, Andreas Pirkner and Werner Tripolt (ECF No. 267); Manfred Kastner (ECF No. 268); Line Group Ltd., Line Management Services Ltd., Line Holdings Ltd., and Recrest Investments, Inc. (ECF No. 269); and Franco Mugnai (ECF No. 270).

parties stipulated to extend the Trustee's time to respond to the motion to dismiss.  (ECF No. 276).

214.    On November 26, 2014, the Trustee filed his Notice of Voluntary Dismissal Without Prejudice of seventy-three defendants.  (ECF No. 281).  The Trustee then filed a Motion for Leave to File a Third Amended Complaint, which reflects the dismissal of the parties dismissed pursuant to the Notice of Dismissal filed on November 26, 2014.  (ECF No. 283).  The remaining defendants are Ms. Sonja Kohn, Infovaleur, Inc. and Tecno Development & Research Ltd. (the "Remaining Defendants").  *See* ECF No. 282, Ex. 1.

215.    On December 11, 2014 (ECF No. 287), February 3, 2015 (ECF No. 289), and March 16, 2015 (ECF No. 290), the Trustee and the Remaining Defendants stipulated to extend the time for the Remaining Defendants to file a response to the Trustee's Motion for Leave to File a Third Amended Complaint.  The return date for the Trustee's Motion for Leave to File a Third Amended Complaint is currently June 24, 2015.

### viii.    *Picard v. Nomura Int'l plc*

216.    On December 8, 2010, the Trustee commenced an action against Nomura Bank International plc ("Nomura Bank International") seeking the return of approximately $35 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences and fraudulent conveyances in connection with certain transfers of property by BLMIS to or for the benefit of Nomura.  *Picard v. Nomura Int'l plc*, Adv. No. 10-05348 (SMB) (Bankr. S.D.N.Y. Dec. 8, 2010) (the "Nomura Action").

217.    On March 30, 2012, Nomura Bank International moved for withdrawal of the reference.  *Picard v. Nomura Bank Int'l plc*, Adv. Pro. No. 10-05348 (Bankr. S.D.N.Y.), ECF No. 20-21; and *Picard v. Nomura Bank Int'l plc*, No. 12 Civ. 2446 (JSR) (S.D.N.Y.), ECF Nos. 1-3.  The Trustee and SIPC opposed the motion as part of Common Briefing on the Antecedent

Debt Issue, the Bad Faith § 546(e) Issue, the Extraterritoriality Issue, the Good Faith Standard Issue, and the Stern Issue.

218.    By orders issued by the District Court during the Spring and Summer of 2012, the District Court included Nomura Bank International's motion to withdraw the reference in Common Briefing and oral argument.

219.    On May 16, 2012, the District Court granted the motion to withdraw on the Antecedent Debt Issue, allowing Nomura Bank International, as part of Common Briefing, to move to dismiss.  On May 23, 2012, the District Court granted the motion to withdraw on the Bad Faith § 546(e) Issue, allowing Nomura Bank International, as part of Common Briefing, to move to dismiss.  On June 7, 2012, the District Court granted the motion to withdraw on the Extraterritoriality Issue, allowing Nomura Bank International, as part of Common Briefing, to move to dismiss.  On June 23, 2012, the District Court granted the motion to withdraw on the Good Faith Standard Issue, allowing Nomura Bank International, as part of Common Briefing, to move to dismiss.  On July 12, 2012, the District Court granted the motion to withdraw on the Stern Issue.  *Picard v. Nomura Bank Int'l plc*, No. 12-cv-02446 (S.D.N.Y.), ECF Nos. 8-12.  The District Court's disposition of these Common Briefing Issues is discussed *supra* in Section IX(A)(i)(b).

220.    On June 6, 2012, the Trustee filed an amended complaint adding Nomura International plc ("Nomura") as a defendant ("Nomura Amended Complaint").  *Picard v. Nomura Bank Int'l plc*, Adv. Pro. No. 10-05348 (SMB) (Bankr. S.D.N.Y.), ECF. No. 42.  Nomura declined to file a motion to withdraw the reference on the issues listed above.

221.    On July 25, 2012, the Trustee, under Rule 21 of the Federal Rules of Civil Procedure made applicable to this proceeding through Rule 7021 of the Federal Rules of

Bankruptcy Procedure, voluntarily dismissed Nomura Bank International without prejudice. *Picard v. Nomura Int'l plc*, Adv. No. 10-05348 (SMB) (Bankr. S.D.N.Y.), ECF No. 45.

222.    On April 27, 2014, the District Court issued the Good Faith Standard Opinion and Order, upon which Nomura and other defendants had moved to withdraw the reference. *Securities Inv. Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC*, 2014 WL 1651952 (S.D.N.Y. Apr. 27, 2014). *See* discussion *supra* Section IX(A)(i)(b).

223.    On July 7, 2014, the District Court issued the Extraterritoriality Opinion and Order. *Securities Inv. Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC*, 513 B.R. 222 (S.D.N.Y. 2014). *See* discussion *supra* Section IX(A)(i)(b).  Through the Extraterritoriality Opinion and Order, the Nomura Action was remanded back to the Bankruptcy Court.  *Picard v. Nomura Int'l plc*, Adv. Pro. No. 10-05348 (SMB) (Bankr. S.D.N.Y.), ECF No. 57.

224.    Following the entry of the Extraterritoriality Opinion and Order, the Trustee filed the Omnibus Motion.  *Id.*, ECF No. 59.  *See* discussion *supra* Section IX(B)(iii).  Following a request by certain defendants, on September 17, 2014, the Bankruptcy Court held a conference to discuss further proceedings to be conducted pursuant to the Extraterritoriality Opinion and Order and the Omnibus Motion.  The Court directed the parties to confer and devise an efficient procedure and briefing schedule.  *See* discussion *supra* Section IX(B)(iii).

225.    On October 2, 2014, the Trustee filed a letter advising that the Trustee and counsel representing the defendants in this and other actions are working together to prepare a mutually acceptable agreed order that will set forth a proposed process and briefing schedule. *Id.*, ECF No. 63.

226.    On October 23, 2014, the Trustee filed a proposed order setting forth a proposed process and briefing schedule.  *Id.*, ECF No. 68.  Following limited objections by certain

defendants, on November 19, 2014, the Bankruptcy Court held a conference to discuss the proposed process and briefing schedule.

227.    On December 10, 2014, the Bankruptcy Court entered the ET Scheduling Order. *Id.*, ECF No. 79.  *See* discussion *supra* Section IX(B)(iii).

228.    On December 31, 2014, Defendants filed the Consolidated Motion to Dismiss. *Id.*, ECF No. 80.  *See* discussion *supra* Section IX(B)(iii).

229.    On January 13, 2015 and February 24, 2015, the Court so ordered two stipulations modifying the ET Scheduling Order and certain deadlines for the parties to file their respective submissions in connection with the Extraterritoriality Opinion and Order and the Omnibus Motion.  *See* discussion *supra* Section IX(B)(iii).

230.    On March 4, 2015, the Trustee filed a Letter Regarding Confidentiality Designations Affecting The Trustee's Extraterritoriality Submission.  *Id.*, ECF No. 83.  The Bankruptcy Court held an informal conference on the confidentiality issues on March 18, 2015.

231.    On April 1, 2015, the Court entered the Third Stipulation.  *Securities Inv. Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC*, Adv. Pro. No. 08-1789 (Bankr. S.D.N.Y.) (SMB), ECF No. 9720.  *See* discussion *supra* Section IX(B)(iii).  The Trustee's papers in opposition to the Extraterritoriality Opinion and Order and the Consolidated Motion to Dismiss, and in further support of the Omnibus Motion, are due to be filed under the Third Stipulation with the Court on June 30, 2015.

232.    The Trustee continues to draft the papers in opposition to the Extraterritoriality Opinion and Order and the Defendants' Consolidated Motion to Dismiss, and in further support of the Omnibus Motion.  The Trustee continues to work with opposing counsel to de-designate confidential documents supporting the Trustee's papers.

63

### ix.  *Picard v. Equity Trading*

233.  On December 5, 2010, the Trustee commenced an adversary proceeding against Equity Trading Portfolio Limited, Equity Trading Fund Limited and BNP Paribas Arbitrage, SNC (collectively, the "Equity Trading Defendants"), seeking the return of over $16 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent transfers, fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Equity Trading Defendants.  *Picard v. Equity Trading Portfolio Limited*, Adv. No. 10-04457 (BRL) (Bankr. S.D.N.Y.) (the "Equity Trading Action").

234.  On October 31, 2011, defendant BNP Paribas Arbitrage, SNC moved to withdraw the reference, and on November 7, 2011, defendants Equity Trading Portfolio Limited and Equity Trading Fund Limited joined that motion.  (ECF Nos. 16, 21).  On May 15, 2012, Judge Rakoff withdrew the reference in part for the Equity Trading Defendants to consider the Trustee's standing to assert common law claims and issues related to SLUSA and Bankruptcy Code Section 546(e).  *Picard v. Equity Trading*, No. 11-cv-07810 (JSR) (S.D.N.Y.), ECF Nos. 13, 14.  In those same orders, Judge Rakoff consolidated the cases with others into case number 12 MC 0115 and issued consolidated briefing schedules.  The Equity Trading Defendants participated in Common Briefing as to the Standing Issue and the Bad Faith § 546(e) Issue.  The District Court's disposition of these Common Briefing issues is discussed *supra* in Section IX(A)(i)(b).

235.  On December 10, 2014 the Court entered the ET Scheduling Order, which extended the Equity Trading Defendants' time to respond to the complaint to a date thirty days after certain events specified in that order occur.  (ECF No. 78).  *See* discussion *supra* Section IX(B)(iii).

### x.   *Picard v. Avellino*

236.   On December 10, 2010, the Trustee commenced an avoidance action against Avellino & Bienes, Frank J. Avellino, Michael S. Bienes, Nancy C. Avellino, Dianne K. Bienes, Thomas G. Avellino, and numerous other trusts and entities (collectively, the "A&B Defendants") seeking the return of over $904 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent conveyances in connection with certain transfers of property by BLMIS to or for the benefit of the A&B Defendants. *Picard v. Frank J. Avellino*, Adv. No. 10-05421 (SMB) (Bankr. S.D.N.Y.) (the "A&B Action").

237.   On June 6, 2011, certain A&B Defendants moved to dismiss the complaint in the Bankruptcy Court. *A&B Action* (ECF Nos. 23-27).  In addition, on June 7, 2011, certain A&B Defendants moved to withdraw the reference to the Bankruptcy Court. *Id.* (ECF Nos. 28–30); *see also Picard v. Avellino*, No. 11-cv-03882 (JSR) (S.D.N.Y.) (the "A&B Withdrawal Action").

238.   The motion to withdraw the reference was fully briefed in the District Court, and oral argument was held on October 18, 2011.  On February 29, 2012, the District Court issued a Memorandum Order withdrawing the reference on certain issues of law raised by the A&B Defendants and other defendants named in separate adversary proceedings commenced by the Trustee. *A&B Withdrawal Action* (ECF No. 20).  As a result of the District Court's order, during the period of May 2012 through October 2012, the Trustee and the A&B Defendants joined in consolidated briefing and oral arguments on the withdrawn issues of law.  *See A&B Withdrawal Action* (ECF Nos. 21–23).

239.   Following the disposition of the Common Briefing issues, the Trustee and the A&B Defendants filed a coordinated briefing schedule on August 7, 2014.  *A&B Action* (ECF No. 81).  Per the schedule, on September 24, 2014, certain A&B Defendants filed a Renewed

Motion to Dismiss, incorporating their previous June 6, 2011 pleading. *A&B Action* (ECF Nos. 82-84). On November 24, 2014, the Trustee filed an amendment to the original complaint (the "A&B Amended Complaint") in response to the Renewed Motion to Dismiss. *A&B Action* (ECF No. 86). The Trustee and A&B Defendants conferred and filed an amended coordinated briefing schedule on January 14, 2015. *A&B Action* (ECF No. 87). Under the schedule, certain A&B Defendants filed a Motion to Dismiss the A&B Amended Complaint on January 28, 2015. *A&B Action* (ECF Nos. 88-89). The Trustee's time to respond to the Motion to Dismiss the Amended Complaint shall be up to and including May 21, 2015.

240. During the Report Period, the Trustee spent significant time drafting and ultimately filing the A&B Amended Complaint. Additionally, the Trustee has been preparing an opposition brief in response to certain A&B Defendants' Renewed Motion to Dismiss, as well as continuing general discovery and case preparation.

### xi.   *Picard v. BNP Paribas*

241. The Trustee has brought a total of five adversary proceedings seeking the return of approximately $1 billion under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act from BNP Paribas S.A. and its subsidiaries—BNP Paribas (Suisse) S.A., BNP Paribas Arbitrage SNC, BNP Paribas (Canada), BNP Paribas Bank & Trust Cayman Limited, BGL BNP Paribas Luxembourg S.A., BNP Paribas Investment Partners Luxembourg S.A., BNP Paribas Securities Services—Succursale de Luxembourg, BNP Paribas Securities Services S.A., and BNP Paribas Securities Corp. (collectively, "BNP Paribas")—who redeemed money from feeder funds that invested with BLMIS. *Picard v. BNP Paribas Arbitrage, SNC*, Adv. No. 11-02796 (BRL) (Bankr. S.D.N.Y. 2011); *Picard v. BNP Paribas S.A.*, Adv. No. 12-01576 (BRL) (Bankr. S.D.N.Y. 2011); *Picard v. Legacy Capital Ltd.*, Adv. No. 10-05286 (BRL) (Bankr. S.D.N.Y. 2010); *Picard v. Oreades SICAV*, Adv. No. 10-05120 (BRL) (Bank. S.D.N.Y. 2010);

and *Picard v. Equity Trading Portfolio Ltd.*, Adv. No. 10-04457 (BRL) (Bank. S.D.N.Y. 2010) (collectively, the "BNP Paribas Proceedings"). The Trustee has completed service of process in each of the BNP Paribas Proceedings.

242. BNP Paribas filed motions to withdraw the reference, which were granted by Judge Rakoff and resulted in consolidated subject matter briefing pending in the District Court. Among the Common Briefing issues affecting the BNP Paribas Proceedings are the Extraterritoriality Issue, the Bad Faith § 546(e) Issue, the Good Faith Standard Issue, and the avoidance of initial transfers through settlements with feeder funds that invested with BLMIS. The District Court has issued opinions on each of the withdrawn issues and remanded the BNP Paribas Proceedings back to the Bankruptcy Court for proceedings consistent with the District Court's opinions. The District Court's disposition of these Common Briefing issues is discussed *supra* in Section IX(A)(i)(b).

243. Following the entry of the Extraterritoriality Opinion and Order, the Trustee filed the Omnibus Motion. *Id.*, ECF No. 69. *See* discussion *supra* Section IX(B)(iii). Following a request by certain defendants, on September 17, 2014, the Bankruptcy Court held a conference to discuss further proceedings to be conducted pursuant to the Extraterritoriality Opinion and Order and the Omnibus Motion. The Bankruptcy Court directed the parties to confer and devise an efficient procedure and briefing schedule.

244. On October 2, 2014, the Trustee filed a letter advising that the Trustee and counsel representing the defendants in this and other actions are working together to prepare a mutually acceptable agreed order that will set forth a proposed process and briefing schedule. *Id.*, ECF No. 73.

245.    On October 23, 2014, the Trustee filed a proposed order setting forth a proposed process and briefing schedule.  *Id.*, ECF No. 74.  Following limited objections by certain defendants, on November 19, 2014, the Bankruptcy Court held a conference to discuss the proposed process and briefing schedule.

246.    On December 10, 2014, the Bankruptcy Court entered the ET Scheduling Order. *Id.*, ECF No. 85.  *See* discussion *supra* Section IX(B)(iii).

247.    On December 31, 2014, Defendants filed the Consolidated Motion to Dismiss. *Id.*, ECF No. 86.  *See* discussion *supra* Section IX(B)(iii).

248.    On January 13, 2015 and February 24, 2015, the Court so ordered two stipulations modifying the ET Scheduling Order and certain deadlines for the parties to file their respective submissions in connection with the Extraterritoriality Opinion and Order and the Omnibus Motion.

249.    On March 4, 2015, the Trustee filed a Letter Regarding Confidentiality Designations Affecting The Trustees Extraterritoriality Submission.  *Id.*, ECF No. 89.  The Bankruptcy Court held an informal conference on the confidentiality issues on March 18, 2015.

250.    On April 1, 2015, the Court entered the Third Stipulation.  *Securities Inv. Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC*, Adv. Pro. No. 08-1789 (Bankr. S.D.N.Y.) (SMB), ECF No. 9720.  *See* discussion *supra* Section IX(B)(iii).  The Trustee's papers in opposition to the Extraterritoriality Opinion and Order and the Consolidated Motion to Dismiss, and in further support of the Omnibus Motion, are due to be filed under the Third Stipulation with the Court on June 30, 2015.

### xii.    *Picard v. Cohmad Sec. Corp.*

251.    On June 22, 2009, the Trustee commenced an adversary proceeding against Madoff insiders Cohmad Securities Corporation ("Cohmad"), Maurice ("Sonny") J. Cohn

68

("Sonny Cohn"), Marcia B. Cohn, and several other defendants (collectively, the "Cohmad Defendants") seeking the return of over $245 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent conveyances, disallowance of any claims filed against the estate by the Cohmad Defendants, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Cohmad Defendants. *Picard v. Cohmad Sec. Corp.*, Adv. No. 09-01305 (BRL) (Bankr. S.D.N.Y.).

252.   The complaint seeks to avoid and recover the fictitious profits withdrawn by the Cohmad Defendants and the return of commissions and fees transferred directly from BLMIS to Sonny Cohn and Cohmad.  On October 8, 2009, the Trustee filed an amended complaint.  (ECF No. 82).   The Cohmad Defendants filed numerous motions to dismiss, which the Trustee opposed.  (ECF No. 135).

253.   On August 1, 2011, this Court issued its Memorandum Decision and Order Denying Defendants' Motions to Dismiss Trustee's Complaint.  (ECF No. 209).  This Court found that the Trustee had adequately pleaded that the transfers received by the Cohmad Defendants in excess of their principal were not transferred for reasonably equivalent value, and Cohmad and Sonny Cohn lacked good faith in receiving commissions from Madoff.  *Picard v. Cohmad Sec. Corp.*, 454 B.R. 317, 332–34 (Bankr. S.D.N.Y. 2011).

254.   Certain of the Cohmad Defendants filed a motion for leave to appeal.  *See Picard v. Cohmad Sec. Corp.*, No. 11 MC 00337 (TPG) (S.D.N.Y.), ECF Nos. 212–13.  The Cohmad Defendants' appeal was denied by Judge Griesa on November 14, 2012.

255.   In March and April 2012, the Cohmad Defendants moved to withdraw the reference from this Court.  *Picard v. Cohmad*, 12-cv-02676 (JSR) (S.D.N.Y.), ECF No. 1.  The Cohmad Defendants have also participated in Common Briefing as to the Bad Faith § 546(e)

Issue and the Good Faith Standard Issue. *See* discussion *supra* Section (IX)(A)(i)(b). The District Court rendered a decision on the Bad Faith § 546(e) Issue, which indicated that the Trustee adequately pleaded a case against the Cohmad Defendants so that the Cohmad Defendants are not entitled to dismiss the Trustee's complaint at the pleading stage on the basis of Bankruptcy Code Section 546(e).

256.    Meanwhile, the parties have engaged in discovery. The Trustee has served discovery on all parties, and discovery is ongoing.

### xiii.   *Picard v. Defender*

257.    On December 5, 2010, the Trustee commenced an adversary proceeding against Defender Limited, Reliance Management (BVI) Limited, Reliance Management (Gibraltar) Limited, and Tim Brockmann (collectively, the "Foreign Defendants"), and Reliance International Research, LLC, and Justin Lowe (collectively, the "Domestic Defendants," and together with the Foreign Defendants, the "Defendants") seeking the return of over $93 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent transfers, fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Domestic Defendants and the Foreign Defendants. *Picard v. Defender Ltd.*, Adv. No. 10-05229 (SMB) (Bankr. S.D.N.Y.) (the "Defender Action").

258.    On November 29, 2012, the Trustee filed a notice of voluntary dismissal without prejudice of Justin Lowe. (ECF No. 58).

259.    On April 2, 2012, the Foreign Defendants and the Domestic Defendants separately moved to withdraw the reference. (ECF Nos. 24, 28). On May 15, 2012, Judge Rakoff withdrew the reference in part for the Foreign Defendants and the Domestic Defendants to consider the Trustee's standing to assert common law claims and issues related to SLUSA and

Bankruptcy Code Section 546(e).  No. 12-cv-02800 (JSR) (S.D.N.Y.), ECF Nos. 7, 8; No. 12-cv-02871 (JSR) (S.D.N.Y), ECF Nos. 7, 9.  In those same orders, Judge Rakoff consolidated these cases with others into Case No. 12 MC 0115 and issued consolidated briefing schedules.  The Foreign Defendants and Domestic Defendants participated in Common Briefing as to the Standing, SLUSA and Bankruptcy Code Section 546(e) issues.  The District Court's disposition of these Common Briefing issues is discussed *supra* in Section IX(A)(i)(b).

260.    On April 27, 2012, defendants Reliance Management (BVI) Limited, Reliance Management (Gibraltar) Limited, and Tim Brockmann (the "Moving Defendants") filed a motion to dismiss for lack of personal jurisdiction.  (ECF No. 36).  The Trustee opposed the motion.  (ECF No. 49).  The Moving Defendants filed their reply brief on October 26, 2012.  (ECF No. 55).  This Court converted the hearing on this motion, scheduled for December 19, 2012, into a Rule 16 conference and directed the parties to meet and confer with respect to the motion.  This motion to dismiss remains pending.

261.    On December 18, 2013, the Trustee and defendants Reliance Management (Gibraltar) Limited, and Tim Brockmann filed a stipulation of dismissal without prejudice of Reliance Management (Gibraltar) Limited, and Tim Brockmann.  (ECF No. 72).

262.    On December 10, 2014 the Court entered the ET Scheduling Order, which extended the Defender Defendants' time to respond to the complaint to a date thirty days after certain events specified in that order occur.  (ECF No. 104).  *See* discussion *supra* Section IX(B)(iii).

263.    On March 23, 2015, the Trustee and the Defendants executed an agreement wherein they agreed to settle the matters at issue in this adversary proceeding, and the Trustee filed a motion for entry of an order pursuant to section 105(a) of the Bankruptcy Code and Rules

2002 and 9019 of the Federal Rules of Bankruptcy Procedure approving the settlement agreement.  (ECF No. 114).

### xiv.   *Picard v. Friedman*

264.   On December 9, 2010, the Trustee commenced an adversary proceeding seeking the return of more than $19 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent transfers, fraudulent conveyances and recovery in connection with certain transfers of property by BLMIS to or for the benefit of S. Donald Friedman, individually and as a beneficiary of an individual retirement account, Saundra Friedman, Ari Friedman, Broadway-Elmhurst Co. LLC and NTC & Co. LLP (the "Friedman Defendants").  *Picard v. Friedman*, Adv. No. 10-05395 (SMB) (Bankr. S.D.N.Y.).  NTC & Co. LLP was subsequently voluntarily dismissed as a defendant.

265.   The complaint alleges that the Friedman Defendants received fraudulent transfers from BLMIS in bad faith.  The complaint was amended on March 31, 2011 (ECF No. 13) to add allegations concerning newly-discovered transfers after the Friedman Defendants sought to dismiss the action on February 18, 2011.  (ECF Nos. 7, 8).  The Friedman Defendants answered the amended complaint on May 13, 2011.  (ECF No. 26).

266.   On March 30, 2012, the Friedman Defendants moved to withdraw the reference to the District Court.  *See Picard v. Friedman*, No. 12-cv-02343 (JSR) (S.D.N.Y.).  The District Court granted the motion by orders entered on May 16, 2012 and June 25, 2012, allowing the Friedman Defendants to move to dismiss as to the Stern Issue, the Antecedent Debt Issue, the Bad Faith § 546(e) Issue, and the issue of whether the Trustee may avoid mandatory withdrawals from individual retirement accounts.  (ECF Nos. 7, 8).  The Friedman Defendants participated in Common Briefing on these issues.  *See id.*  The District Court's disposition of these Common Briefing issues is discussed *supra* in Section IX(A)(i)(b).

267.    Discovery in the Trustee's action continued to proceed while the motions to dismiss concerning Common Briefing issues were pending.  During the Report Period, the case management plan was further amended.  *Picard v. Friedman*, Adv. No. 10-05395 (SMB) (Bankr. S.D.N.Y.), ECF No. 120.  The Trustee also completed a review of accounting files produced by the former bookkeeper for the Friedman Defendants, along with a final review of the Trustee's documents in connection with his requirement to seasonably supplement his document production under Federal Rule of Civil Procedure 26(e).

268.    During the Report Period, the Trustee took the deposition of Mr. Donald Friedman and prepared for witness interviews.

xv.    ***Picard v. J. Ezra Merkin***

269.    On May 7, 2009, the Trustee commenced an adversary proceeding against sophisticated money manager and Madoff associate J. Ezra Merkin ("Merkin"); the investment management company he solely owned, Gabriel Capital Corporation ("GCC"); and his funds, Gabriel Capital, L.P. ("Gabriel Capital"), Ariel Fund Ltd. ("Ariel Fund"), and Ascot Partners, L.P. ("Ascot Partners") (collectively, the "Merkin Defendants"[22]).  (ECF. No. 1).  The Trustee alleged that Merkin knew or should have known that Madoff's investment advisory business ("IA Business") was predicated on fraud.  Among other things, the Trustee sought the return of nearly $560 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law, for preferential and fraudulent transfers that were made by BLMIS to or for the benefit of the Merkin Defendants.  *Picard v. J. Ezra Merkin*, Adv. No. 09-01182 (BRL) (Bankr. S.D.N.Y.) (ECF No. 1-2).  On August 6, 2009, the Trustee filed an amended complaint.  (ECF No. 10).

---

[22] Ascot Fund Ltd. was added as a defendant on August 30, 2014 and will be included in the definition of "Merkin Defendants" for all events after this date.

270.    On November 4, 2009, Bart M. Schwartz, as receiver of defendants Ariel Fund and Gabriel Capital (the "Ariel/Gabriel Receiver"), and Merkin and GCC filed separate motions to dismiss the complaint, which the Trustee opposed. (ECF No. 17, 22, 29-31). The Trustee sought and was granted leave to file a second amended complaint (ECF No. 39, 46), which was filed on December 23, 2009. (ECF No. 49). The Ariel/Gabriel Receiver and Merkin and GCC then renewed their motions to dismiss, which the Trustee again opposed. (ECF Nos. 54-55, 62–63).

271.    On November 17, 2010, the Court entered its Memorandum Decision and Order Granting in Part and Denying in Part Defendants' Motions to Dismiss Trustee's Complaint (the "November 17, 2010 Memorandum Decision and Order"). (ECF No. 84); *see also Picard v. Merkin*, 440 B.R. 243 (Bankr. S.D.N.Y. 2010).

272.    On December 1, 2010, the Ariel/Gabriel Receiver filed a Motion for Leave to Appeal the Court's November 17, 2010 Memorandum Decision and Order. (ECF No. 86); *see also Picard v. Merkin*, 11-MC-0012 (KMW) (S.D.N.Y. Jan. 12, 2011). On August 31, 2011, United States District Judge Kimba M. Wood denied the motion. *Picard v. Merkin*, No. 11-MC-0012 (KMW), 2011 WL 3897970 (S.D.N.Y. Aug. 31, 2011).

273.    On April 2, 2012, the Ariel/Gabriel Receiver and Merkin and GCC filed motions to withdraw the reference to the Bankruptcy Court. (ECF No. 120, 125). On this date, David B. Pitofsky, the former receiver[23] for Ascot Partners (the "Ascot Partners Receiver," and together with the Ariel/Gabriel Receiver, the "Receivers"), filed a Statement of Joinder to the Ariel/Gabriel Receiver's motion to withdraw the reference. (ECF No. 123). The District Court subsequently withdrew the reference to the Bankruptcy Court as to certain issues. On April 27,

---

[23] On May 17, 2013, Ralph C. Dawson was appointed to replace David Pitofsky as Receiver for Ascot Partners. (ECF No. 143). All references to the "Ascot Receiver" for events after this date will refer to Ralph Dawson.

2014, the District Court decided the last of these issues and directed the adversary proceeding back to the Bankruptcy Court for further proceedings.  *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 2014 WL 1651952, at *5 (Bankr. S.D.N.Y. Apr. 27, 2014).

274.    In connection with ongoing discovery before the Bankruptcy Court, the parties jointly agreed to appoint former bankruptcy judge Melanie Cyganowski as binding arbitrator.  To date, Judge Cyganowski has heard multiple discovery disputes between the parties and has issued seven decisions.  On March 15, 2013, Judge Cyganowski issued a ruling ("Arbitration Decision No. 3") granting in substantial part, and denying in part, the Trustee's request to respond to the Trustee's discovery requests.  (ECF No. 196).  Among other things, Arbitration Decision No. 3 compelled Merkin and GCC to comply with Federal Rule of Civil Procedure 34(b) by identifying how their production corresponded with the Trustee's document requests and required them to produce the underlying financial records that they received from banks and other financial institutions.

275.    On August 8, 2013, Judge Cyganowski heard oral arguments with regard to additional discovery disputes.  Among the matters at issue were the Trustee's pursuit of Rule 2004 discovery from Merkin's wife, Lauren Merkin, who individually and jointly with Merkin received subsequent transfers of funds or was the beneficiary of subsequent transfers to Merkin and other third parties, discovery deficiencies related to Arbitration Decision No. 3, and deficiencies related to the Trustee's Fourth Request for Production of Documents.  During the Reporting Period, on December 6, 2014, Judge Cyganowski issued three decisions related to these issues.  (ECF Nos. 247-249).  These decisions, among other things, compelled the Merkin Defendants to produce various categories of documents to the Trustee.

276.   On August 30, 2013, the Trustee filed the third amended complaint (the "Third Amended Complaint"), which alleges that the Merkin Defendants had knowledge of, or were willfully blind to, the fraud at BLMIS consistent with the District Court's recent decisions.  (ECF No. 212).  The Third Amended Complaint also asserted subsequent transfer claims against Ascot Fund Ltd. ("Ascot Fund"), a Cayman fund controlled by Merkin.

277.   On October 11, 2013, the Receivers, Merkin and GCC filed motions to dismiss the Third Amended Complaint.  (ECF Nos. 160, 166, 168).  On November 15, 2013, the Trustee filed a consolidated opposition brief in response to these motions to dismiss.  (ECF No. 173).  On December 20, 2013, the Receivers and Merkin and GCC filed briefs in further support of their motions to dismiss.  (ECF Nos. 185-188).

278.   The Trustee entered into a stipulation with Ascot Fund extending its time to move, answer, or otherwise respond to the Third Amended Complaint.  (ECF Nos. 159, 171).  Ascot Fund ultimately filed a motion to dismiss the Third Amended Complaint on December 20, 2013.  (ECF Nos. 182-183).  On December 23, 2013, the Trustee and Ascot Fund entered into a stipulation which clarified the subsequent transfer counts of the Third Amended Complaint against Ascot Fund.  (ECF No. 189).  The Trustee filed his opposition to the Ascot Fund motion to dismiss on January 31, 2014.  (ECF Nos. 198-199).

279.   On April 30, 2014, this Court heard oral arguments on the motions to dismiss. (ECF No. 210).  Thereafter, on August 12, 2014, this Court entered its Decision Granting in Part and Denying in Part Defendants' Motion to Dismiss.  (ECF No. 212).  The Court found that the Third Amended Complaint "adequately pleads willful blindness" and that the Trustee may thus still pursue avoiding and recovering all of the intentional fraudulent transfers that he brought under section 548(a)(1)(A) of the Bankruptcy Code.  The Court also found that the Trustee did

not sufficiently plead that the Merkin Defendants had "actual knowledge" of Madoff's fraud.  As

a result, the Court held that section 546(e) of the Bankruptcy Code limits the Trustee's avoidance

counts to those asserted under section 548(a)(1)(A), and dismissed the Trustee's counts for

preferential transfers, constructive fraudulent transfers, and fraudulent transfers under New York

Debtor & Creditor law.  The Court also dismissed the Third Amended Complaint's counts of

disallowance and equitable disallowance on bases unrelated to actual knowledge.

280.    Following the Court's ruling, on August 26, 2014, the Merkin Defendants filed a

proposed order for consideration by Judge Bernstein.  (ECF. No. 218).  On August 29, 2014, the

Trustee filed an objection to the Merkin Defendants' proposed order, arguing that an order at this

time was impractical and premature and noting that the Trustee was going to seek certification of

the decision under Federal Rule of Civil Procedure 54(b) and 28 U.S.C. § 158(d) for the

dismissed counts for preferential transfers, constructive fraudulent transfers, and fraudulent

transfers under New York Debtor & Creditor law.  (ECF. No. 219).

281.    On September 5, 2014, the Trustee filed a motion requesting that the Court: (i)

direct entry of final judgment as against Gabriel Capital, Ariel Fund, and Ascot Partners under

Federal Rule of Civil Procedure 54(b) (the "Rule 54(b) Judgment"),[24] on the counts for

preferential transfers, constructive fraudulent transfers, and fraudulent transfers under New York

Debtor & Creditor law, (ii) expressly determine that there is no just reason for delay, and (iii)

certify the Rule 54(b) Judgment for an immediate appeal to the Second Circuit under 28 U.S.C. §

158(d).  (ECF No. 227).  On September 12, 2014, the Receivers, Merkin and GCC opposed the

Trustee's motion.  (ECF No. 230-231).  A hearing on the Trustee's motion was held on October

2, 2014.  (ECF No. 232).  On December 10, 2014, the Court denied the Trustee's motion and

---

[24] Made applicable to the adversary proceeding by Federal Rule of Bankruptcy Procedure 7054.

issued its Order Granting In Part and Denying In Part Defendants' Motion to Dismiss the Third Amended Complaint. (ECF No. 251-252).

282.    On February 5, 2015, Ariel Fund and Gabriel Capital, Ascot Partners and Ascot Fund, and Merkin and GCC filed their respective answers to the Third Amended Complaint. (ECF No. 259-261).

283.    During the Report Period, the Trustee continued to analyze documents produced by the Merkin Defendants and third parties in connection with preparing for depositions, the conclusion of fact discovery, and the disclosure of expert witnesses. On January 30, 2015, fact discovery concluded. On March 20, 2015, the Trustee, Merkin, and GCC served disclosed expert reports pursuant to Rule 26(a)(2) of the Federal Rules of Civil Procedure.

### xvi.    *Picard v. Kingate*

284.    On March 17, 2014, the Trustee filed and served a fourth amended complaint under SIPA, the Bankruptcy Code, New York Debtor and Creditor Law and other applicable law against Kingate Global Fund, Ltd. and Kingate Euro Fund, Ltd. and numerous other defendants in the adversary proceeding captioned as *Picard v. Federico Ceretti*, Adv. No. 09-01161 (SMB) (Bankr. S.D.N.Y.), ECF No. 100 (the "Kingate Fourth Amended Complaint").

285.    In early October 2014, and again in late December 2014, the Trustee's counsel negotiated with counsel for the subsequent transferee defendants multiple extensions of time to answer or otherwise respond to the Kingate Fourth Amended Complaint, bringing the parties' stipulated deadline to January 16, 2015.

286.    The stipulated deadline for the subsequent transferee defendants to answer or otherwise respond to the Kingate Fourth Amended Complaint has effectively been extended indefinitely and will abide this Court's ruling on the subsequent transferee defendants' consolidated and contested motion to dismiss the complaints, and the Trustee's related motion in

accordance with the schedule set forth in this Court's ET Scheduling Order, entered on December 10, 2014. (ECF 156). *See* discussion *supra* Section IX(B)(iii).

287.    On October 14, 2014, the Trustee filed his memorandum of law in opposition to the Kingate Funds' Joint Liquidators' motion to dismiss the Kingate Fourth Amended Complaint (ECF 126). On November 25, 2014, the Joint Liquidators filed a reply brief in further support of the motion to dismiss. (ECF 147). The Court heard oral argument on December 17, 2014 and reserved decision.

288.    By letter to the Court dated November 14, 2014, counsel for certain subsequent transferee defendants, namely, FIM Limited, FIM Advisers LLP, Federico Ceretti, and Carlo Grosso (collectively, "FIM Defendants") requested a status conference before the Court to be held on November 19, 2014, which was granted. Counsel for the Trustee was asked to appear and was called upon to address in open court the arguments made by the FIM Defendants despite there being no motion on file by the FIM Defendants providing substantive or adequate procedural notice of the basis for the conference. The Court heard the arguments of the FIM Defendants but cautioned them that they had proceeded improperly. No relief was granted.

289.    In accordance with the ET Scheduling Order, the Trustee's counsel assisted the Trustee in reviewing all allegations in the Fourth Amended Complaint and other documents that show the predominantly domestic nature of the subsequent transfers the Trustee seeks to recover, and in drafting addenda relating particularly to the subsequent transfers to the 16 subsequent transferees in the Kingate avoidance and recovery proceeding. The addenda will supplement the Trustee's Consolidated Supplemental Memorandum to be filed under the ET Scheduling Order.

290.    On January 26, 2015, counsel for the FIM Defendants filed a motion against the Trustee and his counsel for relief under 28 U.S.C. § 1927 and the Court's inherent power

supported by legal briefs, declarations of counsel, and declarations of one of the subsequent transferee defendants and certain third parties. (ECF Nos. 161-164, and ECF Nos. 169-170). The Trustee opposed that motion with a memorandum of law and supporting declarations. (ECF Nos. 165-167). On March 26, 2015, the Court heard the parties' oral argument, and for the reasons stated on the record at the hearing, the Court denied the FIM Defendants' motion.

291. Throughout the Report Period, the Trustee and his counsel have continued to prepare for discovery and, ultimately, for trial.

        **xvii.**   ***Picard v. Legacy Capital Limited***

292. On December 6, 2010, the Trustee commenced an action against Legacy Capital Ltd., Isaac Jimmy Mayer, Rafael Mayer, Khronos LLC, Khronos Capital Research LLC, HCH Management Co., Montpellier Resources Ltd., BNP Paribas Securities Corp., Inversiones Coque S.A., Aurora Resources Ltd., and Olympus Assets LDC (collectively, the "Legacy Capital Defendants") seeking the return of over $218 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Legacy Capital Defendants. *Picard v. Legacy Capital Ltd.*, Adv. No. 10-05286 (BRL) (Bankr. S.D.N.Y. 2010).

293. During the Report Period, B&H attorneys prepared for continued litigation in this action. In support of this effort, B&H attorneys continued their investigation of the Legacy Capital Defendants and the respective fraudulent transfers to each defendant. B&H attorneys also continued to identify relevant witnesses in the United States and abroad and procured information regarding the Legacy Capital Defendants and relevant third party witnesses.

294. B&H attorneys, on behalf of the Trustee, also reached agreements with the Legacy Capital Defendants to extend the time to respond to the Trustee's complaint in the action,

as well as to de-designate the confidentiality level of documents previously produced by the Legacy Capital Defendants. The Trustee also continued to develop his case against the Legacy Capital Defendants.

  **xviii.**   _**Picard v. Magnify Inc.**_

  295. On December 6, 2010, the Trustee commenced an action against Magnify, Inc. and several related companies holding BLMIS accounts, individuals acting on behalf of these accounts, and several other recipients of transfers from these accounts (collectively, the "Magnify Defendants") seeking the return of more than $154 million under SIPA §§ 78fff(b) and 78fff-2(c)(3), §§ 105(a), 542, 544, 547, 548(a), and 551 of the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable laws for preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Magnify Defendants. _Picard v. Magnify Inc._, Adv. No. 10-05279 (BRL) (Bankr. S.D.N.Y.). On September 21, 2011, the Trustee filed an amended complaint in the action. (ECF No. 39).

  296. On April 2, 2012, defendants Robert H. Book and R.H. Book LLC moved to withdraw the reference to the District Court on several grounds. _See Picard v. Magnify, Inc._, No. 12-cv-02482 (JSR) (S.D.N.Y.). These defendants have since resolved the Trustee's claims and have been dismissed from the action.

  297. Defendant Kurt Brunner moved to dismiss the Trustee's complaint for lack of personal jurisdiction on September 1, 2011, and supplemented this motion with regard to allegations in the amended complaint on November 3, 2011. _Picard v. Magnify_, Adv. No. 10-05279 (BRL) (ECF Nos. 32, 48). On June 14, 2012, this Court held a hearing on Mr. Brunner's motion to dismiss for lack of personal jurisdiction. This Court denied the motion and ordered jurisdictional discovery over Mr. Brunner related to "the degree to which Brunner controlled and profited from [defendants] Magnify, Premero and Strand" and entered an order to this effect on

June 15, 2012.  (ECF No. 97).    Determination of personal jurisdiction over Mr. Brunner was

stayed pending resolution of a motion to dismiss for lack of personal jurisdiction and *forum non*

*conveniens* filed in *Picard v. Estate (Succession) of Doris Igoin*, Adv. No. 10-04336 (BRL)

(Bankr. S.D.N.Y.), a pending avoidance action against defendants who have ties to the late

founder of several of the Magnify Defendants.

298.    Mr. Brunner subsequently resolved the Trustee's claims and was dismissed from

the *Magnify* action without prejudice on February 5, 2015.  The *Igoin* defendants' motion was

denied on February 13, 2015.

299.    In addition, the parties entered into an amended case management plan.  Pursuant

to this plan, the Trustee received and reviewed documents served in response to written

discovery requests to several of the Magnify Defendants, conferred with counsel for the Magnify

Defendants regarding contemplated depositions in the United States and Israel, and continued to

seek documents through letters of request pursuant to the Hague Convention to certain third

parties who may possess relevant information.

### xix.    *Picard v. Merrill Lynch*

300.    On December 8, 2010, the Trustee commenced an action against Merrill Lynch

International ("MLI") seeking the return of approximately $16 million under SIPA, the

Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for

preferences and fraudulent transfers in connection with certain transfers of property by BLMIS

to or for the benefit of MLI.  *Picard v. Merrill Lynch Int'l*, Adv. No. 10-05346 (SMB) (Bankr.

S.D.N.Y. Dec. 8, 2010).

301.    On November 22, 2011, the Trustee commenced an action against Merrill Lynch

Bank (Suisse), S.A. ("MLBS") seeking the return of approximately $46 million under SIPA, the

Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for

preferences and fraudulent transfers in connection with certain transfers of property by BLMIS to or for the benefit of MLBS. *Picard v. Merrill Lynch Bank (Suisse), S.A.*, Adv. No. 11-02910 (SMB) (Bankr. S.D.N.Y. Nov. 22, 2011).

302.    On May 2, 2012, both MLI and MLBS moved for withdrawal of the reference. *Picard v. Merrill Lynch Int'l*, No. 12-cv-03486 (JSR) (S.D.N.Y.), ECF Nos. 1–2; *Picard v. Merrill Lynch Bank (Suisse) S.A.*, No. 12-cv-03487 (JSR) (S.D.N.Y.), ECF Nos. 1–2.  MLI and MLBS participated in Common Briefing as to the Bad Faith § 546(e) Issue, the Extraterritoriality Issue, § 550(a), the Stern Issue, and the Good Faith Standard Issue.  Judge Rakoff has rendered decisions on all of these Common Briefing issues, which is discussed *supra* in Section IX(A)(i)(b).

303.    On April 27, 2014, Judge Rakoff issued the Good Faith Standard Opinion and Order, upon which MLI, MLBS, and other defendants had moved to withdraw the reference. *Securities Inv. Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC*, 2014 WL 1651952 (S.D.N.Y. Apr. 27, 2014).  *See* discussion *supra* Section IX(A)(i)(b).

304.    In July 2014, Judge Rakoff issued the Extraterritoriality Opinion and Order.  *See* discussion *supra* Section IX(A)(i)(b).  Through such order, the MLI and MLBS actions were returned to the Bankruptcy Court.  *Picard v. Merrill Lynch Int'l*, Adv. No. 10-05346 (SMB) (Bankr. S.D.N.Y.), ECF No. 51; *Picard v. Merrill Lynch Bank (Suisse), S.A.*, Adv. No. 11-02910 (SMB) (Bankr. S.D.N.Y.), ECF No. 41.

305.    Following the entry of the Extraterritoriality Opinion and Order, the Trustee filed the Omnibus Motion.  *Picard v. Merrill Lynch Int'l*, Adv. No. 10-05346 (SMB) (Bankr. S.D.N.Y.), ECF No. 53; *Picard v. Merrill Lynch Bank (Suisse), S.A.*, Adv. No. 11-02910 (SMB) (Bankr. S.D.N.Y.), ECF No. 43.  *See* discussion *supra* Section IX(B)(iii).  Following a request

by certain defendants, on September 17, 2014, the Bankruptcy Court held a conference to discuss

further proceedings to be conducted pursuant to the Extraterritoriality Opinion and Order and the

Omnibus Motion.  The Court directed the parties to confer and devise an efficient procedure and

briefing schedule.  *See* discussion *supra* Section IX(B)(iii).

306.    On October 2, 2014, the Trustee filed a letter advising that the Trustee and

counsel representing the defendants in this and other actions are working together to prepare a

mutually acceptable agreed order that will set forth a proposed process and briefing schedule.

*Picard v. Merrill Lynch Int'l*, Adv. No. 10-05346 (SMB) (Bankr. S.D.N.Y.), ECF No. 57; *Picard*

*v. Merrill Lynch Bank (Suisse), S.A.*, Adv. No. 11-02910 (SMB) (Bankr. S.D.N.Y.), ECF No. 47.

307.    On October 23, 2014, the Trustee filed a proposed order setting forth a proposed

process and briefing schedule.  *Picard v. Merrill Lynch Int'l*, Adv. No. 10-05346 (SMB) (Bankr.

S.D.N.Y.), ECF No. 62; *Picard v. Merrill Lynch Bank (Suisse), S.A.*, Adv. No. 11-02910 (SMB)

(Bankr. S.D.N.Y.), ECF No. 52.  Following limited objections by certain defendants, including

MLI, *Picard v. Merrill Lynch Int'l*, Adv. No. 10-05346 (SMB) (Bankr. S.D.N.Y.), ECF No. 64,

on November 19, 2014, the Bankruptcy Court held a conference to discuss the proposed process

and briefing schedule.

308.    On December 10, 2014, the Bankruptcy Court entered the ET Scheduling Order.

*Picard v. Merrill Lynch Int'l*, Adv. No. 10-05346 (SMB) (Bankr. S.D.N.Y.), ECF No. 77; *Picard*

*v. Merrill Lynch Bank (Suisse), S.A.*, Adv. No. 11-02910 (SMB) (Bankr. S.D.N.Y.), ECF No. 62.

*See* discussion *supra* Section IX(B)(iii).

309.    On December 31, 2014, Defendants filed the Consolidated Motion to Dismiss.

*Picard v. Merrill Lynch Int'l*, Adv. No. 10-05346 (SMB) (Bankr. S.D.N.Y.), ECF No. 78; *Picard*

*v. Merrill Lynch Bank (Suisse), S.A.*, Adv. No. 11-02910 (SMB) (Bankr. S.D.N.Y.), ECF No. 63. *See* discussion *supra* Section IX(B)(iii).

310.    On January 13, 2015 and February 24, 2015, the Court so ordered two stipulations modifying the ET Scheduling Order and certain deadlines for the parties to file their respective submissions in connection with the Extraterritoriality Opinion and Order and the Omnibus Motion.

311.    On March 4, 2015, the Trustee filed a Letter Regarding Confidentiality Designations Affecting The Trustees Extraterritoriality Submission. *Picard v. Merrill Lynch Int'l*, Adv. No. 10-05346 (SMB) (Bankr. S.D.N.Y.), ECF No. 79; *Picard v. Merrill Lynch Bank (Suisse), S.A.*, Adv. No. 11-02910 (SMB) (Bankr. S.D.N.Y.), ECF No. 64.  The Bankruptcy Court held an informal conference on the confidentiality issues on March 18, 2015.  *See* discussion *supra* Section IX(B)(iii).

312.    On April 1, 2015, the Court entered the Third Stipulation.  *Securities Inv. Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC*, Adv. Pro. No. 08-1789 (Bankr. S.D.N.Y.) (SMB), ECF No. 9720.  *See* discussion *supra* Section IX(B)(iii).  The Trustee's papers in opposition to the Extraterritoriality Opinion and Order and the Consolidated Motion to Dismiss, and in further support of the Omnibus Motion, are due to be filed under the Third Stipulation with the Court on June 30, 2015.

### xx.    *Picard v. Natixis*

313.    On December 8, 2010, the Trustee commenced an action against Natixis, Natixis Corporate & Investment Bank (f/k/a Ixis Corporate & Investment Bank), Natixis Financial Products, Inc., Bloom Asset Holdings Fund, and Tensyr Ltd. (collectively, the "Natixis Defendants") seeking the return of approximately $430 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences and

fraudulent transfers in connection with certain transfers of property by BLMIS to or for the benefit of the Natixis Defendants (the "Natixis Action"). *Picard v. Natixis*, Adv. No. 10-05353 (SMB) (Bankr. S.D.N.Y.).

314.    On December 20, 2011 and January 10, 2012, the Natixis Defendants moved for withdrawal of the reference. *Picard v. Natixis*, No. 11 Civ. 9501 (JSR) (S.D.N.Y.), ECF Nos. 1–3, 5–7.  In May and June 2012, the District Court directed the Natixis Defendants to participate in Common Briefing as to the Bad Faith § 546(e) Issue, the Stern Issue, the Good Faith Standard Issue, the Extraterritoriality Issue, and deferring briefing on remaining issues in pending motions to withdraw the reference. *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec., LLC (In re Madoff Sec., LLC)*, 12 MC 0115 (JSR) (S.D.N.Y.), ECF Nos. 109, 131, 166, 197.  The District Court's disposition of these Common Briefing issues is discussed *supra* in Section IX(A)(i)(b)**.**

315.    On April 27, 2014, the District Court issued the Good Faith Standard Opinion and Order, upon which the Natixis Defendants and other defendants had moved to withdraw the reference. *Securities Inv. Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC*, 2014 WL 1651952 (S.D.N.Y. Apr. 27, 2014).  *See* discussion *supra* Section IX(A)(i)(b).

316.    On July 7, 2014, the District Court issued the Extraterritoriality Opinion and Order. *Securities Inv. Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC*, 513 B.R. 222 (S.D.N.Y. 2014).  *See* discussion *supra* Section IX(A)(i)(b).  Through the Extraterritoriality Opinion and Order, the Natixis Action was remanded back to the Bankruptcy Court. *Picard v. Natixis*, Adv. Pro. No. 10-05353 (SMB) (Bankr. S.D.N.Y.), ECF No. 65.

317.    Following the entry of the Extraterritoriality Opinion and Order, the Trustee filed the Omnibus Motion. *Id.*, ECF No. 67.  *See* discussion *supra* Section IX(B)(iii).  Following a request by certain defendants, on September 17, 2014, the Bankruptcy Court held a conference to

discuss further proceedings to be conducted pursuant to the Extraterritoriality Opinion and Order and the Omnibus Motion. The Bankruptcy Court directed the parties to confer and devise an efficient procedure and briefing schedule. *See* discussion *supra* Section IX(B)(iii).

318.    On October 2, 2014, the Trustee filed a letter advising that the Trustee and counsel representing the defendants in this and other actions are working together to prepare a mutually acceptable agreed order that will set forth a proposed process and briefing schedule. *Id.*, ECF No. 71.

319.    On October 23, 2014, the Trustee filed a proposed order setting forth a proposed process and briefing schedule. *Id.*, ECF No. 75. Following limited objections by certain defendants, on November 19, 2014, the Bankruptcy Court held a conference to discuss the proposed process and briefing schedule.

320.    On December 10, 2014, the Bankruptcy Court entered the ET Scheduling Order. *Id.*, ECF No. 88. *See* discussion *supra* Section IX(B)(iii).

321.    On December 31, 2014, Defendants filed the Consolidated Motion to Dismiss. *Id.*, ECF No. 89. *See* discussion *supra* Section IX(B)(iii).

322.    On January 13, 2015 and February 24, 2015, the Court so ordered two stipulations modifying the ET Scheduling Order and certain deadlines for the parties to file their respective submissions in connection with the Extraterritoriality Opinion and Order and the Omnibus Motion.

323.    On March 4, 2015, the Trustee filed a Letter Regarding Confidentiality Designations Affecting The Trustees Extraterritoriality Submission. *Id.*, ECF No. 92. The Bankruptcy Court held an informal conference on the confidentiality issues on March 18, 2015.

324.    On April 1, 2015, the Court entered the Third Stipulation. *Securities Inv. Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC*, Adv. Pro. No. 08-1789 (Bankr. S.D.N.Y.) (SMB), ECF No. 9720. *See* discussion *supra* Section IX(B)(iii). The Trustee's papers in opposition to the Extraterritoriality Opinion and Order and the Consolidated Motion to Dismiss, and in further support of the Omnibus Motion, are due to be filed under the Third Stipulation with the Court on June 30, 2015.

### xxi.    *Picard v. Andrew H. Madoff*

325.    On October 2, 2009, the Trustee commenced an adversary proceeding against Peter Madoff, Andrew Madoff, Shana Madoff, and the late Mark Madoff (the "Family Defendants") seeking the return of approximately $198 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent transfers, fraudulent conveyances and damages for breach of fiduciary duty, negligence, unjust enrichment, constructive trust, and accounting in connection with certain transfers of property by BLMIS to or for the benefit of the Family Defendants. *Picard v. Andrew H. Madoff*, Adv. No. 09-01503 (BRL) (Bankr. S.D.N.Y.).[25]    On March 15, 2010, the Family Defendants filed a motion to dismiss the complaint. (ECF Nos. 13–19). The Trustee opposed the motion. (ECF No. 25).

326.    On September 22, 2011, this Court filed its Memorandum Decision And Order Denying In Part And Granting In Part Defendants' Motion To Dismiss Trustee's Complaint. (ECF No. 55); *Picard v. Andrew H. Madoff*, 458 B.R. 87 (Bankr. S.D.N.Y. 2011). This Court upheld the Trustee's common law claims for breach of fiduciary duty, negligence, unjust enrichment, constructive trust, and accounting. In so doing, the Court determined that the Trustee's common law claims (i) were not barred by the doctrine of *in pari delicto* or the related

---

[25] The case formerly was styled as *Picard v. Peter B. Madoff*, Adv. No. 09-01503. The caption was revised following the Trustee's consent judgment against Peter Madoff and dismissal with prejudice of Shana Madoff, as discussed herein.

*Wagoner* Rule because the Family Defendants were alleged to be insiders and fiduciaries of

BLMIS, and (ii) were not preempted by the Martin Act because those claims were unrelated to

the fraudulent investment advice given by Madoff to customers of the IA Business.  (ECF Nos.

123, 124).  This Court also ruled that because the NYAG has no enforcement power under the

Martin Act to bring the types of claims asserted in the Trustee's complaint, which do not require

proof of scienter, the common law claims would not interfere with the Martin Act's statutory

enforcement mechanism.  (ECF No. 127).

327.    This Court dismissed certain of the Trustee's claims for a failure to identify the

transfers with the requisite particularity, noting that "[r]ectifying the majority of these pleading

deficiencies upon amendment should not prove to be a Herculean task."  *Id.*  This Court granted

leave to the Trustee to amend his complaint.  *Id.*

328.    On October 6, 2011, Andrew Madoff and the Estate of Mark Madoff filed a

Motion for Leave to Appeal the Bankruptcy Court's decision (ECF Nos. 56–57), which was

assigned to United States District Judge William H. Pauley, III.  *See Picard v. Estate of Mark D.

Madoff*, No. 11 MC 00379 (WJP) (S.D.N.Y.).  On December 22, 2011, Judge Pauley issued a

decision denying the Motion for Leave to Appeal.  (ECF No. 12).

329.    On November 7, 2011, the Trustee filed an Amended Complaint that identified

the date and amount of each transfer alleged in the action.  *Picard v. Andrew H. Madoff*, Adv.

No. 09-01503 (BRL) (Bankr. S.D.N.Y.), ECF No. 64.  The Amended Complaint also increased

the amount sought from the Family Defendants from over $198 million to over $226 million.

This increase was due, in part, to the ongoing nature of the Trustee's investigation, which

uncovered additional fraudulent transfers to the Family Defendants in various forms.

330.    On December 23, 2011, the Trustee filed a Motion for Leave to File a Second Amended Complaint.  (ECF No. 71).  In his proposed Second Amended Complaint, the Trustee sought to name as defendants Mark Madoff's widow, Stephanie Mack, Mark Madoff's ex-spouse, Susan Elkin, and Andrew Madoff's wife, Deborah Madoff (collectively, the "Spouse Defendants").  *Id.*  The Trustee also sought to add additional fraudulent transfer claims against the Family Defendants, as well as subsequent transferee claims against both the Family Defendants and the Spouse Defendants.  *Id.*  Lastly, the Trustee sought to make certain clarifications with regard to previously asserted fraudulent transfer claims.  *Id.*  The Spouse Defendants and Andrew Madoff, individually and as Executor of the Estate of Mark Madoff, opposed the motion.  (ECF Nos. 89, 91, 94, 96).

331.    This Court heard oral arguments on the Trustee's motion on April 3, 2012.  On April 4, 2012, this Court issued a Memorandum Decision and Order Denying in Part and Granting in Part the Trustee's Motion for Leave to File a Second Amended Complaint.  (ECF No. 106).  The Court granted the Trustee leave to name Stephanie Mack and Deborah Madoff as defendants with respect to certain common law causes of action as to which the statute of limitation had not yet run.  *Id.*  The Court denied leave to name the Spouse Defendants as defendants with respect to the bankruptcy causes of action and certain common law causes of action for which the statute of limitation had expired.  *Id.*  The Court granted the Trustee leave to pursue additional fraudulent transfer claims against the Family Defendants, as well as subsequent transferee claims against both the Family Defendants and the Spouse Defendants.  Finally, the Court granted the Trustee leave to make the necessary clarifications with regard to previously asserted claims.  *Id.*

332. On April 2, 2012, putative defendants Stephanie Mack and Deborah Madoff moved to withdraw the reference in this case, notwithstanding that they were not yet named as defendants. (ECF Nos. 100, 104). In their moving papers (ECF Nos. 101, 105), Ms. Mack and Ms. Madoff noted that while they had not yet been named as defendants, they were nevertheless filing the motion to withdraw the reference by the Court-instituted April 2, 2012 deadline out of an abundance of caution. *Id.* They both argued, in part, that the cases against them ought to be precluded by the rule of *in pari delicto*, specifically, because they were not insiders of BLMIS, as to whom Courts have recognized a narrow exception to this rule. *Id.* While Ms. Mack's motion sought withdrawal of the reference only with respect to the claims against her (ECF No. 101), Ms. Madoff's motion sought to withdraw the reference with respect to the entire case (ECF No. 105). Ms. Madoff also filed a separate motion to withdraw the reference in the related action filed against her by the Trustee. *Picard v. Deborah Madoff*, Adv. No. 10-05332 (BRL) (Bankr. S.D.N.Y.), ECF Nos. 22, 23.

333. The Trustee consented to allow Ms. Mack and Ms. Madoff to submit their briefs to the District Court as part of the consolidated briefing to determine issues related to the Trustee's standing in adversarial proceedings. Oral argument on the consolidated briefing, including the arguments set forth by Ms. Mack and Ms. Madoff, was heard by Judge Rakoff on October 16, 2012.

334. On December 6, 2013, the District Court issued an Opinion and Order in which it determined that the Trustee lacked standing to bring common law claims against Ms. Mack and Ms. Madoff. *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC* (JSR) (S.D.N.Y. Dec. 6, 2013), ECF No. 509. The District Court found that the Trustee was barred from bringing such claims under the *in pari delicto* doctrine, and that Ms. Mack and Ms. Madoff were not insiders

for the purposes of an exception to the *in pari delicto* doctrine. *Id.* Thus, the District Court dismissed the Trustee's common law claims against Ms. Mack and Ms. Madoff and returned the remainder of the proceeding to this Court. *Id.*

335.    On June 29, 2012, Peter Madoff pleaded guilty to a two-count indictment and consented to the entry of a forfeiture order for $143.1 billion. Specifically, Peter Madoff pleaded guilty to one count of conspiracy to commit securities fraud, falsify records of an investment adviser, falsify records of a broker-dealer, make false filings with the SEC, commit mail fraud, falsify statements in relation to documents required by ERISA, and obstruct and impede the lawful governmental function of the IRS. He also pleaded guilty to one count of falsifying records of an investment advisor. *See United States v. O'Hara*, 10 Cr. 228 (LTS) (S.D.N.Y.), ECF No. 246 (the "Preliminary Forfeiture Order"). Under the Preliminary Forfeiture Order, Peter Madoff and his wife, Marion Madoff, forfeited substantially all of their assets to the United States Government. In addition, the Preliminary Forfeiture Order covered certain significant property owned by Shana Madoff that was forfeited under the same plea agreement.

336.    On February 6, 2013, Peter Madoff consented to the entry of judgment against him in the amount of $90,390,500, the full amount of the Trustee's claims against him. (ECF No. 145). Under the consent judgment, the Trustee will forbear from seeking to enforce the judgment as long as Peter Madoff makes reasonable efforts to cooperate with the Trustee in the Trustee's efforts to recover funds for the BLMIS estate. *Id.*

337.    As part of the consent judgment, the Trustee agreed to forbear from seeking recovery against Shana Madoff and to dismiss the Trustee's action against Marion Madoff. *Id.* On February 7, 2013, the Trustee voluntarily dismissed, with prejudice, the adversary proceeding against Marion Madoff. *Picard v. Marion Madoff*, Adv. No. 10-04310 (BRL) (Bankr. S.D.N.Y.

Feb. 7, 2013), ECF No. 16.  On March 19, 2013, the Court so ordered a stipulation dismissing with prejudice the adversary proceeding against Shana Madoff.  *Picard v. Andrew H. Madoff*, Adv. No. 09-01503 (BRL) (ECF No. 148).

338.    On February 4, 2014, the Court so ordered a stipulation dismissing without prejudice the adversary proceeding against the Deborah and Andrew Madoff Foundation.  *Picard v. Deborah and Andrew Madoff Foundation*, Adv. No. 10-05330 (SMB) (ECF No. 42).

339.    On February 4, 2014, the Court also so ordered a stipulation dismissing without prejudice the adversary proceeding against the Mark and Stephanie Madoff Foundation.  *Picard v. Mark and Stephanie Madoff Foundation*, Adv. No. 10-05325 (SMB) (ECF No. 38).

340.    On March 26, 2014, the Trustee voluntary dismissed with prejudice Susan Elkin from Adversary Proceeding 09-01503.  *Picard v. Andrew H. Madoff*, Adv. No. 09-01503 (SMB) (ECF No. 177).  On the same day, the Trustee voluntarily dismissed with prejudice Susan Elkin, Daniel Madoff and K.D.M. from Adversary Proceeding 10-05328.  *Picard v. Stephanie Mack*, Adv. No. 10-05328 (SMB) (ECF No. 56).

341.    On June 27, 2014, the Trustee voluntarily dismissed with prejudice Deborah Madoff from Adversary Proceeding 09-01503.  *Picard v. Andrew H. Madoff,* Adv. No. 09-01503 (SMB) (ECF No. 183).  On the same day, the Trustee voluntarily dismissed with prejudice Adversary Proceeding 10-05332.  *Picard v. Deborah Madoff,* Adv. No. 10-05332 (SMB) (ECF No. 54).

342.    The Trustee filed a Motion for Leave to File a Third Amended Complaint on July 15, 2014.  (ECF No. 184).  In his proposed Third Amended Complaint, the Trustee sought to remove all dismissed defendants and the factual allegations and claims asserted against them in the Second Amended Complaint.  (ECF No. 185).  The Trustee also sought to address altered

legal standards and pleading burdens in light of District Court decisions rendered after the Second Amended Complaint was filed. (*Id.*).

343.    Andrew Madoff, individually and as Executor of the Estate of Mark Madoff, opposed the motion.  (ECF No. 191, 192).  A hearing on the Trustee's Motion for Leave to Amend is scheduled for May 20, 2015.  (ECF No. 209).  Following the death of Andrew Madoff on September 3, 2014, the parties stipulated to an extension of the deadline to substitute the Estate of Andrew Madoff, Martin Flumenbaum as Executor of the Estate of Andrew Madoff, and David Blumenfeld as the Successor Executor of the Estate of Mark Madoff to June 5, 2015. (ECF No. 210).

### xxii.    *Picard v. Richard M. Glantz*

344.    On December 9, 2010, the Trustee commenced an adversary proceeding against Richard Glantz and several related individuals and entities (collectively, the "Glantz Defendants"), seeking the return of more than $113 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent transfers, fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Glantz Defendants.  *Picard v. Richard M. Glantz*, Adv. No. 10-05394 (BRL) (Bankr. S.D.N.Y. Dec. 9, 2010).

345.    The Trustee alleges that Richard Glantz and his deceased father, Edward Glantz, created and managed entities that pooled many millions of dollars of investor funds to be funneled into BLMIS.  *See Picard v. Richard M. Glantz*, Adv. No. 10-05394 (BRL) (Bankr. S.D.N.Y.).  The Trustee further alleges that after Richard Glantz, Edward Glantz and entities they created and managed were permanently enjoined from future securities laws by the SEC, Richard Glantz and Edward Glantz arrived at a new arrangement with Madoff, which resulted in Richard Glantz and Edward Glantz receiving fraudulent side payments.  (ECF No. 1).  In

addition, Richard Glantz continued to funnel his own money, his family's money, and other people's money into BLMIS though new entities. *Id.*

346. To date, the Trustee has dismissed or settled with twenty-one Glantz Defendants. Eighteen Glantz Defendants remain in this adversary proceeding. (ECF Nos. 11, 13, 14, 20, 25, 31, 43, 44, 46, 49, 50, 51).

347. On February 1, 2012, the then-remaining Glantz Defendants moved in this Court to dismiss the complaint. The Trustee and counsel for the Glantz Defendants subsequently entered into a scheduling stipulation, which was so ordered by the Court on April 2, 2012, providing new dates for the Trustee to amend the complaint and for the Glantz Defendants to supplement their motion to dismiss or file a new one.

348. Prior to entry of that scheduling stipulation, on March 31, 2012, the remaining Glantz Defendants filed a motion to withdraw the reference. (ECF No. 34). On April 11, 2012, the motion to withdraw the reference was referred to Judge Rakoff. *See Picard v. Glantz*, No. 12-cv-02778 (JSR) (S.D.N.Y.), ECF Nos. 1–3. On May 15, May 16, June 1 and June 25, 2012, the District Court entered orders withdrawing the reference, in part, for the limited purpose of hearing and determining certain Common Briefing issues. (ECF Nos. 7, 9, 10, 11).

349. The Trustee and the remaining Glantz Defendants entered into subsequent stipulations extending the Trustee's time to amend the complaint and the Glantz Defendants' time to either supplement their motion to dismiss or file a new motion to dismiss. Pursuant to the last of these stipulations, which was so ordered by this Court on November 14, 2014, the Trustee filed an amended complaint on January 9, 2015. *Picard v. Glantz*, Adv. No. 10-05394 (SMB) (ECF Nos. 61, 62).

350.    The Trustee and the remaining Glantz Defendants entered into subsequent stipulations extending the Glantz Defendants' time to either supplement their motion to dismiss or file a new motion to dismiss.  Pursuant to the last of these stipulations, which was so ordered by this Court on March 31, 2015, the Glantz Defendants may either supplement their motion to dismiss or file a new motion to dismiss by May 1, 2015.  *Picard v. Glantz*, Adv. No. 10-05394 (SMB) (ECF No. 65).

### xxiii.    *Picard v. Stanley Chais*

351.    On May 1, 2009, the Trustee commenced an action against Stanley Chais and Pamela Chais, certain members of their family, and a number of related trusts and entities (collectively, the "Chais Defendants") seeking the return of more than $1.3 billion under SIPA §§ 78fff(b) and 78fff-2(c)(3), §§ 105(a), 542, 544, 547, 548(a), and 551 of the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable laws for turnover, accounting, preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Chais Defendants (the "Chais Action").  *Picard v. Chais*, Adv. No. 09-1172 (BRL) (Bankr. S.D.N.Y.).  Stanley Chais died in 2010, and the action continues against his estate.

352.    On April 2, 2012, certain of the Chais Defendants moved to withdraw the reference to the District Court on several grounds.  *See Picard v. Chais*, No. 12-cv-02371 (S.D.N.Y) (JSR); *Picard v. Chais*, No. 12-cv-02658 (JSR) (S.D.N.Y.).  Both motions have been granted, in part, respecting certain Common Briefing issues.  The moving defendants, acting collectively with other defendants in such adversary proceedings at the direction of the District Court, have filed briefs in connection with certain of those discrete issues.  Briefing has been completed respecting these Common Briefing issues.

353.    On July 18, 2012, by order of this Court, the parties in the Chais Action and the Hall Action were ordered to participate in a joint mediation of both actions. *Picard v. Chais*, Adv. No. 09-1172 (Bankr. S.D.N.Y.), ECF No.128. The mediation took place on February 12, 13 and 14, 2013, and the parties took part in additional sessions with the mediator thereafter. On February 11, 2015, the court-appointed mediator, Bankruptcy Judge James F. Garrity, filed a Mediator's final report in the matter indicating that several of the parties had reached a settlement in principle to resolve their disputes, the parties were in the process of drafting documents to memorialize their agreements, and discussions between the non-settling parties were ongoing. *Id.*, ECF No. 142.

354.    In addition to this activity, in the event that a settlement between the Trustee and the Chais Defendants is not finalized, the Trustee has readied an amended complaint for filing. Per a stipulation with defendant Michael Chasalow, the Trustee has until June 30, 2015 to file the amended complaint in the Chais Action. *Id.*, ECF No. 143.

### xxiv.   *Picard v. Stanley Shapiro*

355.    On December 9, 2010, the Trustee commenced an action against Stanley Shapiro, Renee Shapiro, David Shapiro, Rachel Shapiro, Leslie Shapiro Citron, Kenneth Citron, and numerous trusts (collectively, the "Shapiro Defendants") seeking the return of over $54 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Shapiro Defendants. *See Picard v. Shapiro*, Adv. No. 10-05383 (BRL) (Bankr. S.D.N.Y.). In early 2014, the Trustee filed a second amended complaint against the Shapiro Defendants.

356.    On August 28, 2014, the Shapiro Defendants moved to dismiss the second amended complaint on several grounds including, but not limited to, that they could avail

themselves of the safe harbor protection under Section 546(e) of the Bankruptcy Code.  During the Report Period, the Trustee prepared and filed his opposition to the Shapiro Defendants' motion, and also argued the motion before the Bankruptcy Court on March 5, 2015.  During the Report Period, the Trustee continued to develop his case against the Shapiro Defendants.

      xxv.    *__Picard v. Fairfield Greenwich__*

357.    On May 18, 2009, the Trustee commenced an action against Fairfield Sentry Ltd. ("Sentry"), Fairfield Sigma Ltd. ("Sigma), Fairfield Lambda Ltd. ("Lambda") (collectively, the "Fairfield Funds"), Greenwich Sentry, L.P. ("Greenwich Sentry"), Greenwich Sentry Partners, L.P. ("Greenwich Sentry Partners", and together with Greenwich Sentry, the "Greenwich Funds"), and other defendants seeking the return of approximately $3.5 billion under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Fairfield Funds and the Greenwich Funds.  *Picard v. Fairfield Sentry Ltd. (In Liquidation)*, Adv. No. 09-01239 (BRL) (Bankr. S.D.N.Y. May 18, 2009).

358.    On June 7, 2011, this Court conditionally approved a settlement agreement between the Trustee and the Joint Liquidators for the Fairfield Funds (the "Joint Liquidators"). (ECF No. 95).  On July 13, 2011, this Court entered consent judgments between the Trustee and Lambda in the amount of $52.9 million (ECF No. 108), Sentry in the amount of $3.054 billion (ECF No. 109), and Sigma in the amount of $752.3 million (ECF No. 110).

359.    As part of the Fairfield Funds settlement, Sentry agreed to permanently reduce its net equity claim from approximately $960 million to $230 million.  Additionally, the Joint Liquidators agreed to make a $70 million payment to the Customer Fund.  The Joint Liquidators also agreed to assign to the Trustee all of the Fairfield Funds' claims against the Fairfield

Greenwich Group management companies, officers, and partners, and the Trustee retained his own claims against the management defendants. Further, the Trustee and the Joint Liquidators agreed to share future recoveries in varying amounts, depending on the nature of the claims.

360.    On July 7, 2011, this Court approved a settlement between the Trustee and the Greenwich Funds, wherein this Court entered judgment against Greenwich Sentry in an amount over $206 million and against Greenwich Sentry Partners in an amount over $5.9 million. *Picard v. Fairfield Sentry*, Adv. No. 09-01239 (BRL) (Bankr. S.D.N.Y.), ECF No. 107. In the settlement, the Greenwich Funds agreed to permanently reduce their net equity claim from approximately $143 million to approximately $37 million, for a combined reduction of over $105.9 million. Additionally, the Greenwich Funds assigned to the Trustee all of their claims against Fairfield Greenwich Group management and agreed to share with the Trustee any recoveries they receive against service providers.

361.    On April 2, 2012, the remaining defendants in the Fairfield Sentry action filed motions to withdraw the reference on a number of issues that later became subject to Common Briefing and hearings before Judge Rakoff of the District Court. The Trustee briefed and presented argument at the hearings on these issues before the District Court. The District Court has issued its opinions providing guidance to this Court and remanded the cases for further findings applying the standards set forth in the District Court's opinions.

362.    On June 6, 2012, the Trustee filed additional recovery actions against entities or persons related to Fairfield Greenwich Group employees or partners entitled *Picard v. RD Trust*, Adv. No. 12-01701 (BRL) (Bankr. S.D.N.Y.), Picard v. Barrenche Inc., Adv. No. 12-01702 (BRL) (Bankr. S.D.N.Y.), and *Picard v. Alix Toub*, Adv. No. 12-01703 (BRL) (Bankr. S.D.N.Y.). The parties in the *Toub* action have entered into a stipulated stay as permitted by this

Court.    None of the defendants in the three actions have responded yet to the Trustee's complaints.

363.    On November 6, 2012 in the District Court, in a putative class action filed by former Fairfield Funds investors against several Fairfield Greenwich Group partners and management officials, the plaintiffs and the Fairfield Greenwich Group related defendants filed a motion seeking preliminary approval of a settlement.  *Anwar v. Fairfield Greenwich Ltd.*, No. 09 Civ. 118 (S.D.N.Y.), ECF No. 997.  On November 29, 2012, the Trustee filed an application seeking an injunction against the implementation of the settlement.  *See Picard v. Fairfield Greenwich Ltd.*, Adv. No. 12-02047 (BRL) (Bankr. S.D.N.Y.), ECF No. 2.  On December 21, 2012, the defendants filed a motion to withdraw the reference to the Bankruptcy Court.  (ECF No. 11).  On February 6, 2013, the District Court granted the defendants' motion to withdraw the reference to the Bankruptcy Court, *Picard v. Fairfield Greenwich Ltd.*, 12 Civ. 9408 (VM) (S.D.N.Y.), ECF No. 30.  On March 20, 2013, the District Court denied the Trustee's application seeking an injunction against the implementation of the *Anwar* settlement.  (ECF No. 59).  On April 8, 2013, the Trustee filed a notice of appeal from the District Court's denial of the Trustee's application for an injunction against the implementation of the *Anwar* settlement.  (ECF No. 61).

364.    On February 26, 2013, the Trustee filed a letter requesting a pre-motion conference on a motion to intervene in the *Anwar* action.  (ECF No. 1054).  On March 8, 2013, the District Court deemed the pre-motion conference letter to be a motion to intervene and denied the Trustee's request.  (ECF No. 1071).  On April 8, 2013, the Trustee filed a notice of appeal from the order denying his request to intervene in the *Anwar* action.  (ECF. No. 1106).

365.    Briefing on both appeals of the *Anwar* decisions was completed on June 7, 2013. Oral argument on the appeals occurred on October 10, 2013.  On August 8, 2014, the Second Circuit denied the Trustee's request for an injunction.  (ECF No. 181).

366.    As of March 31, 2014, the response date to the Trustee's complaints has been extended while awaiting this Court's rulings on motions to dismiss based on application of the District Court's rulings on extraterritoriality.

### xxvi.   *Picard v Vizcaya*

367.    After extensive investigation, the Trustee brought both domestic and Gibraltar-based actions against Vizcaya Partners Ltd. ("Vizcaya"), Banque Jacob Safra (Gibraltar) Ltd. ("Bank Safra"), Asphalia Fund Ltd. ("Asphalia"), Zeus Partners Ltd. ("Zeus"), and Siam Capital Management ("Siam").  *Picard v. Vizcaya*, Adv. No. 09-01154 (BRL) (Bankr. S.D.N.Y.).

368.    Vizcaya, Siam, Asphalia, and Zeus failed to appear or answer the Trustee's amended complaint in this Court. Accordingly, this Court granted the Trustee's motion for default judgment on August 3, 2010.  (ECF No. 49).  Thereafter, Zeus and the Trustee entered into a stipulation pursuant to which the Trustee agreed to vacate the default judgment against Zeus. Zeus agreed not to oppose the Trustee's application to the Supreme Court of Gibraltar for the transfer of over $60 million that had been held in Zeus's account at Bank Safra and was placed in the custody of the Gibraltar Supreme Court.  This Court approved the stipulation on November 23, 2010.  (ECF No. 56).  The Trustee and Siam reached a settlement, and Siam was dismissed from the domestic and Gibraltar actions.

369.    The Trustee filed an application in the Gibraltar Supreme Court for the repatriation of those funds to the United States, which was granted.  Those funds were deposited in the Court's registry on August 8, 2011.

370.    The parties to the U.S. action are presently engaged in discovery, and the Trustee has been preparing document productions which would satisfy his responses to the defendants' document requests to date.

371.    The Trustee also has served a protective action in Gibraltar to preserve his right to sue Vizcaya, Bank Safra, Asphalia, Zeus, Siam, Banque J. Safra (Suisse) SA, and Pictet et Cie for $180 million in transfers received from BLMIS.  The parties have agreed to a stay, which was ordered by the Supreme Court of Gibraltar.  The stay is in place until further order.  The parties may apply for a lift of the stay any time after the expiration of 28 days from the determination of the Judicial Committee of the Privy Council of any appeals or cross appeals brought against the February 7, 2014 Court of Appeal Judgment in the action discussed in the paragraph below.

372.    Following the UK Supreme Court's judgment in *Rubin v. Eurofinance,* defendants Vizcaya and Asphalia moved to dismiss the Trustee's actions in Gibraltar that seek to enforce the default judgment entered against them in the United States, and to release assets that have been frozen by the Gibraltar action.  A hearing was held in March 2013 and continued in May 2013. Following the hearing, the Court issued an order denying Vizcaya's motion and denying Asphalia's motion in part, finding that the Trustee's action involved issues of fact that required a trial.  Vizcaya and Asphalia filed an appeal of this order.

373.    The appeal was heard by the Court of Appeal on October 7-8, 2013.  A judgment was issued on February 7, 2014 (the "Court of Appeal Judgment").  The Court of Appeal Judgment denied Vizcaya's relief in part and granted it in part.  On March 28, 2014, Vizcaya filed an application for permission to appeal to the Privy Council.  During the Report Period, the Trustee filed a Notice of Objection to Vizcaya's application to appeal, as well as an application

for permission to cross-appeal to the Privy Council.  On July 28, 2014, the Privy Council informed the parties that Vizcaya's application will be granted and the Trustee's application for permission to cross-appeal will be refused.  At a March 24, 2014 hearing, the Supreme Court of Gibraltar stayed this action until an outcome is reached by the Privy Council.

374.    In addition, in September 2012, the Trustee filed an action in the Gibraltar courts opposing and seeking to join to the Trustee's existing proceedings in Gibraltar a petition filed by Mr. Robert Faissal against Vizcaya (the "Faissal Action").  The Faissal Action seeks to adjourn the enforcement of a default judgment entered in the BVI against Vizcaya.  The Trustee has sought relevant disclosures from third parties.  The parties have agreed to a stay of this action, which may be lifted upon application by the parties any time after the expiration of 28 days from the determination of the Privy Council of Vizcaya's appeal brought against the Court of Appeal Judgment.

### xxvii.  *Picard v Rye/Tremont*

375.    On December 7, 2010 the Trustee commenced an action against Tremont Group Holdings, Inc., Tremont Partners, Inc., Tremont (Bermuda) Ltd., Rye Select Broad Market Fund, and numerous other entities and individuals (collectively, the "Tremont Funds") in which the Trustee sought the return of approximately $2.1 billion under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences and fraudulent conveyances in connection with certain transfers of property by BLMIS to or for the benefit of the Tremont Funds (the "Tremont Litigation").  *Picard v. Tremont Group Holdings, Inc.*, Adv. No. 10-05310 (SMB) (Bankr. S.D.N.Y.).

376.    After the court filing, the parties entered into substantive settlement negotiations. On September 22, 2011, this Court approved a settlement between the Trustee and more than a dozen domestic and foreign investment funds, their affiliates, and a former chief executive

associated with Tremont Group Holdings, Inc. (collectively, "Tremont") in the amount of $1.025

billion.  *Picard v. Tremont Group Holdings, Inc.*, Adv. No. 10-05310 (SMB) (Bankr. S.D.N.Y.),

(ECF No. 38).  (There were two non-settling defendants at the time, Sandra Manzke ("Manzke")

and Rye Select Broad Market XL Portfolio Limited ("XL Portfolio")).

377.    Pursuant to the settlement, Tremont delivered $1.025 billion into an escrow

account, which was placed into the Customer Fund, and the Trustee allowed certain customer

claims related to Tremont in the approximate amount of $2.9 billion.  Two objections to the

settlement agreement were filed by non-BLMIS customers, both of which were overruled by this

Court.  This Court entered an Order Granting Trustee's Motion for Entry of Order Approving

Agreement.  (ECF No. 38).

378.    Certain objectors filed an appeal of the Tremont settlement on October 18, 2011.

*See Picard v. Tremont Group Holdings, Inc.*, No. 11-7330 (GBD) (Bankr. S.D.N.Y.), (ECF No.

1).  Thereafter, Tremont filed a motion to dismiss the appeal, which was subsequently joined by

motions filed by the Trustee and parties subject to the settlement.  (ECF Nos. 4, 6, 8, 12, 14).

The non-BLMIS customers who commenced the appeal opposed the dismissal.  (ECF Nos. 15,

16).  On June 27, 2012, United States District Judge George B. Daniels granted the motion to

dismiss the appeal, and judgment was entered on June 28, 2012.  (ECF Nos. 35, 36).

379.    On July 27, 2012, the non-BLMIS objectors filed an appeal with the Second

Circuit. (ECF No. 37).  Prior to submitting any briefing, however, the parties submitted a joint

stipulation of dismissal, and the appeal was dismissed on October 25, 2012.  (ECF No. 39).  The

terms of the settlement, therefore, have been implemented.

380.    Pursuant to the Tremont settlement, Tremont delivered $1.025 billion into an

escrow account on November 6, 2012.  The settlement payment was released from the escrow

account to the Trustee on February 8, 2013.  Accordingly, the Trustee allowed certain customer claims related to Tremont.

381.    On February 10, 2012, XL Portfolio settled with the Trustee in connection with the Tremont Litigation, as well as two other actions commenced on December 8, 2010 by the Trustee against XL Portfolio and other defendants.  These other actions are captioned *Picard v. ABN AMRO Bank, N.V. et al.,* Adv. No. 10-05354 (SMB) (Bankr. S.D.N.Y. Dec. 8, 2010) and *Picard v. ABN AMRO (Ireland) Ltd., et al,* Adv. No. 10-05355 (SMB) (Bankr. S.D.N.Y. Dec. 8, 2010).

382.    On September 17, 2013, the remaining defendant in the Tremont Litigation, Manzke, who was also a defendant in the captioned action, *Picard v. Maxam Absolute Return Fund Ltd., et al.,* Adv. No. 10-05342 (Bankr. S.D.N.Y. Dec. 8, 2010), settled and had approved the latter action.  Upon the Maxam settlement, Manzke was dismissed from the Tremont Litigation, and that case closed.

383.    Subsequent to the dismissal of the Maxam and Tremont cases, strategy and investigation for proposed actions and amended proceedings against subsequent transferees has continued.

## C.    Injunction Proceedings

384.    The Trustee commenced numerous injunction actions seeking to enjoin third party lawsuits brought against defendants who also have been named as defendants in the Trustee's avoidance actions.  Through these proceedings, the Trustee has sought to enforce the automatic stay established by § 362 of the Bankruptcy Code and related District Court stays, and/or to enjoin third party actions under § 105 of the Bankruptcy Code in order to facilitate the orderly administration of the BLMIS liquidation, and to preserve assets from which the Trustee may recover for the benefit of all BLMIS customers.  During the Report Period, there have been

developments in the Bankruptcy Court, the District Court and courts in the Third Circuit with respect to these proceedings.

### i. *Picard v. Marshall*

385.    The Trustee was previously successful in enjoining Adele Fox and other plaintiffs (the "Fox Plaintiffs") from pursuing  putative class actions they had brought in 2010 against the Picower estate and related entities (the "Picower Parties") in view of the Trustee's settlement with the Picower Parties and the permanent injunction ("Permanent Injunction") issued as part of the settlement, precluding claims that duplicate or derive from claims the Trustee brought or could have brought against the Picower Parties.  This Court's decision barring the Fox Plaintiffs' suits was affirmed by the District Court and Second Circuit.  *See Picard v. Fox*, 429 B.R. 423 (Bankr. S.D.N.Y. 2010), *aff'd, Fox v. Picard*, 848 F. Supp. 2d 469 (S.D.N.Y. 2012), *aff'd, In re Marshall*, 740 F.3d 81 (2d Cir. 2014).

386.    On February 5, 2014, shortly after the Second Circuit's affirmance, the Fox Plaintiffs brought a motion in Florida District Court to bring a second amended complaint against the Picower Parties.   On March 11, 2014, the Trustee commenced an adversary proceeding in this Court seeking to enjoin the Fox Plaintiffs from proceeding with their new proposed class action in violation of the automatic stay and Permanent Injunction.  *See Picard v. Marshall*, Adv. Pro. No. 14-01840 (Bankr. S.D.N.Y. filed Mar. 11, 2014).  The Trustee's action also sought to enjoin another set of plaintiffs (the "Goldman Plaintiffs") from bringing a putative class action against the Picower Parties.

387.    On June 23, 2014, the Bankruptcy Court issued a decision granting the Trustee's application and enjoining the Fox Plaintiffs and Goldman Plaintiffs from proceeding.  *Picard v. Marshall*, 511 B.R. 375 (Bankr. S.D.N.Y. 2014).  The Court held that the Fox Plaintiffs and Goldman Plaintiffs stated derivative claims barred by the Permanent Injunction.   The Fox

Plaintiffs appealed the order decision to the District Court, *see Marshall v. Picard*, 14-CV-6790 (S.D.N.Y.), and oral argument took place on April 7, 2015. (The Goldman Plaintiffs had appealed, but withdrew their appeal.) The parties are awaiting a decision.

388.    Shortly after appealing this Court's decision, the Fox Plaintiffs moved in this Court for a deposition of Bernard Madoff and others under Federal Rule of Bankruptcy Procedure 2004 and, with respect to Bernard Madoff's deposition, under Federal Rule of Civil Procedure 27(a) and (b). On October 30, 2014, this Court denied the motion in full except that it found that it lacked jurisdiction to rule on the request for Bernard Madoff's deposition under Rule 27(a). *See Picard v. Marshall*, No. 14-01840, 2014 WL 5486279 (Bankr. S.D.N.Y. Oct. 30, 2014).

389.    The Fox Plaintiffs subsequently brought a Rule 27(a) petition in Delaware District Court seeking to perpetuate Bernard Madoff's testimony through his deposition. The Picower Parties moved to transfer the case to the District Court, and the Trustee intervened in support of the motion. On February 25, 2015, the Delaware District Court transferred the case to the District Court, declining to rule on the Rule 27(a) petition. *See In re Marshall*, No. 15-MC-01, 2014 WL 849302 (D. Del. Feb. 25, 2015).

390.    On March 10, 2015, the Fox Plaintiffs petitioned the Third Circuit for a writ of mandamus to vacate the transfer order and further asked that Court to rule on the Rule 27 petition. That proceeding is pending. *See In re Marshall*, No. 15-1590 (3d Cir. 2015).

391.    Meanwhile, on March 4, 2015, the case was transferred to the District Court, and Judge John G. Koeltl of the Southern District of New York accepted the case as related to the pending appeal on the Permanent Injunction.

392.    Oral argument on the Rule 27 petition occurred on April 7, 2015, jointly with oral argument on the appeal.

### ii.    *Picard v. A&G Goldman Partnership*

393.    In December 2011, A & G Goldman Partnership and Pamela Goldman (the "Goldman Plaintiffs") moved before this Court to lift the automatic stay so that they could file putative securities class actions against the Picower Parties. *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC,* No. 08-01789 (SMB) (S.D.N.Y. Dec. 13, 2011), ECF No. 4581. 338. On June 20, 2012, this Court issued an order denying the Goldman Plaintiffs' motion as duplicative and derivative of the Trustee's settled claims and thus in violation of the Permanent Injunction as well as the automatic stay. *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 477 B.R. 351, 352–53 (Bankr. S.D.N.Y. 2012).

394.    The Goldman Plaintiffs appealed to the District Court. *See A & G Goldman P'ship v. Picard*, No. 12-cv-06109 (RJS) (S.D.N.Y. Aug. 10, 2012). On September 30, 2013, after oral argument, the District Court issued a decision affirming the Bankruptcy Court's decision and dismissing the appeal. *A & G Goldman P'ship v. Picard*, No. 12 Civ. 6109 (RJS), 2013 WL 5511027 (S.D.N.Y. Sept. 30, 2013). The Goldman Plaintiffs did not further appeal the District Court's decision.

395.    On January 6, 2014, the Goldman Plaintiffs filed a new action in the District Court for the Southern District of Florida, seeking to file a new complaint against the Picower Parties. On March 11, 2014, the Trustee successfully sought injunctive relief, as discussed above. The Goldman Plaintiffs appealed the decision but subsequently withdrew their appeal.

396.    On August 28, 2014, the Goldman Plaintiffs brought a new action against the Picower Parties in the United States District Court for the Southern District of Florida, again seeking to allege securities law claims against the Picower Parties. On November 17, 2014, the

Trustee brought an adversary proceeding in this Court to enforce the Permanent Injunction against the Goldman Plaintiffs. The Picower Parties also brought a motion to enforce the Permanent Injunction against the Goldman Plaintiffs. The two actions were consolidated and oral argument took place on February 5, 2015. The parties are awaiting a decision.

## X.    INTERNATIONAL INVESTIGATION AND LITIGATION

397.    The Trustee's international investigation and recovery of BLMIS estate assets involves, among other things: (i) identifying the location and movement of estate assets abroad, (ii) becoming involved in litigation brought by third parties in foreign courts, by appearance or otherwise, to prevent the dissipation of funds properly belonging to the estate, (iii) bringing actions before United States and foreign courts and government agencies to recover customer property for the benefit of the customers and creditors of the BLMIS estate, and (iv) retaining international counsel to assist the Trustee in these efforts, when necessary. More than seventy of the actions filed in this Court involve international defendants, and the Trustee also has actions pending in the United Kingdom, Bermuda, the British Virgin Islands ("BVI"), Gibraltar, and the Cayman Islands, among other countries.

398.    The following summarizes key litigation involving foreign defendants in the Bankruptcy Court and in foreign courts.

### A.    <u>Austria and Italy</u>

399.    The Trustee has actively investigated certain banks, institutions, and individuals located in these jurisdictions. The Kohn and HSBC Actions, both discussed *supra*, name several Austrian and Italian defendants, including Sonja Kohn, Bank Austria, and UniCredit S.p.A.

### B.    <u>Bermuda</u>

400.    The Trustee is actively investigating various BLMIS-related entities, their officers and directors, and transfers of funds to and through Bermuda. In addition, in December 2010,

the Trustee filed protective actions in Bermuda against several HSBC-related entities in order to preserve the Trustee's ability to bring causes of action in that jurisdiction, as well as an action in the Bankruptcy Court against Bermuda-based Whitechapel Management Limited. *Picard v. Whitechapel Mgmt. Ltd.*, Adv. No. 10-05402 (BRL) (Bankr. S.D.N.Y.). The Trustee also continues to actively monitor third party legal proceedings taking place in Bermuda that involve several BLMIS-related entities.

## C.   BVI and the Cayman Islands

401.   The Trustee has discovered and is actively investigating the involvement of no fewer than twenty BVI-based feeder funds that funneled money into the Ponzi scheme. In particular, the Trustee has investigated and filed complaints in the Bankruptcy Court against BVI-based Kingate Global Fund Ltd., Kingate Euro Fund Ltd., Thybo Asset Management Ltd., Thybo Global Fund Ltd., Thybo Return Fund Ltd., Thybo Stable Fund Ltd., Hermes International Fund Limited, Lagoon Investment Limited, Thema Fund Ltd, Thema Wise Investments Ltd., Lagoon Investment Trust, Defender Limited, Equity Trading Portfolio, and Granadilla Holdings Limited. *See, e.g.*, *Picard v. Kingate*, Adv. No. 09-01161 (BRL) (Bankr. S.D.N.Y.); *Picard v. Thybo*, Adv. No. 09-01365 (BRL) (Bankr. S.D.N.Y.); *Picard v. Defender Ltd.*, Adv. No. 10-05229 (BRL) (Bankr. S.D.N.Y.).

402.   The Trustee has investigated and filed complaints in the Bankruptcy Court against Cayman Islands-based Harley International (Cayman) Ltd. ("Harley"), *Picard v. Harley*, Adv. No. 09-01187 (BRL) (Bankr. S.D.N.Y.) (the "Harley Adversary Proceeding"), Herald Fund SPC, and the Primeo Fund, the latter two of which are defendants in the HSBC Action. The Trustee also filed complaints in the Cayman Islands against Harley and the Primeo Fund. The Trustee's claims against Harley in the Cayman courts were discontinued by mutual consent, and the

Primeo case was settled in 2014; accordingly, the Trustee no longer has any active litigation pending in the Cayman Islands.

**D.   England**

403.   The Trustee currently has protective claims pending in England against Kingate-related individuals and entities and against HSBC and related entities.

**E.   Gibraltar**

404.   After extensive investigation, the Trustee brought both domestic and Gibraltar-based actions against Vizcaya Partners Ltd. ("Vizcaya"), Banque Jacob Safra (Gibraltar) Ltd. ("Bank Safra"), Asphalia Fund Ltd. ("Asphalia"), Zeus Partners Ltd. ("Zeus"), and Siam Capital Management ("Siam").   *Picard v. Vizcaya*, Adv. No. 09-01154 (BRL) (Bankr. S.D.N.Y.).   The parties who appeared in the domestic action are presently engaged in discovery.

405.   Vizcaya, Siam, Asphalia, and Zeus failed to appear or answer the Trustee's amended complaint in this Court.   Accordingly, this Court granted the Trustee's motion for default judgment on August 3, 2010.   (ECF No. 49).   Thereafter, Zeus and the Trustee entered into a stipulation pursuant to which the Trustee agreed to vacate the default judgment against Zeus.   Zeus agreed not to oppose the Trustee's application to the Supreme Court of Gibraltar for the transfer of over $60 million that had been held in Zeus's account at Bank Safra and was placed in the custody of the Supreme Court of Gibraltar (the "Zeus Funds").   This Court approved the stipulation on November 23, 2010.   (ECF No. 56).

406.   The Trustee subsequently filed an application in the Supreme Court of Gibraltar for the repatriation of the Zeus Funds to the United States, which was granted.   The Zeus Funds were deposited in the Court's registry on August 8, 2011.

407.   In September 2012, the Trustee reached a settlement with Siam, which was dismissed from all domestic and foreign proceedings involving the Trustee.

408.    Following the issuance of the default judgment in the Trustee's domestic adversary proceeding, the Trustee moved to enforce the default in Gibraltar.  This enforcement proceeding, which remains pending, was stayed pending the judgment of the UK Supreme Court in a third party case involving related legal issues.  Following this issuance of the UK Supreme Court's judgment in that case, Vizcaya and Asphalia moved the Gibraltar court for an order dismissing the Trustee's enforcement action.  The Gibraltar court held a hearing on that motion in March and May 2013.  On June 19, 2013, the Court issued an order denying Vizcaya's motion and denying Asphalia's motion in part, finding that the Trustee's action involved issues of fact that required a trial.  The defendants appealed from this judgment to the Gibraltar Court of Appeal, which issued a judgment on February 7, 2014.  This judgment denied defendants' relief in part and granted it in part.  On March 28, 2014, Vizcaya filed an Application for Permission to Appeal to the Privy Council.  The enforcement action is now stayed in the Gibraltar Supreme Court pending the judgment of the Privy Council, with hearings anticipated to take place late 2015.

409.    In addition to the enforcement action, the Trustee filed a protective action in Gibraltar under substantive U.S. and Gibraltar law to preserve his right to avoid fraudulent transfers from BLMIS to Vizcaya, Bank Safra, Asphalia, Zeus, Siam, Banque J. Safra (Suisse) SA, and Pictet et Cie.  Upon agreement of the parties and the order of the Gibraltar court, the action was stayed until further order.  The parties can apply to lift the stay any time after the expiration of twenty-eight days from the determination by the Privy Council of any appeals or cross appeals brought against the February 7, 2014 Court of Appeal judgment in the enforcement action discussed above.

410.    In addition, in September 2012, the Trustee filed an action in the Gibraltar courts opposing and seeking to join to the Trustee's existing proceedings in Gibraltar a petition filed by Mr. Robert Faissal against Vizcaya (the "Faissal Action"). The Faissal Action involves the enforcement of a default judgment entered in the BVI in favor of Mr. Faissal against Vizcaya. The parties have agreed to a stay of this action which remains in place as of the date of this report.

## F.    Ireland

411.    The Trustee investigated Ireland-based Thema International Fund plc and included the feeder fund as a defendant in the HSBC Action. The Trustee has continued to investigate this fund, related litigation and related entities.

## G.    Switzerland and Luxembourg

412.    In 2010, the Trustee filed two lawsuits in this Court against Switzerland-based UBS AG and other UBS-related entities and various feeder funds, management companies, and individuals, discussed above. The Trustee also continues to monitor certain BLMIS-related third party actions.

## XI.    FEE APPLICATIONS AND RELATED APPEALS

## A.    Objections to Prior Fee Applications

413.    Objections were filed to six of the seventeen fee applications submitted by the Trustee and B&H. Discussions of the objections to the first through sixth fee applications, and related motions for leave to appeal the Court's orders granting the Trustee's and B&H's fee applications and overruling those objections, are discussed more fully in the Trustee's Amended Third Interim Report ¶¶ 186–90 (ECF No. 2207); the Trustee's Fourth Interim Report ¶¶ 163–66 (ECF No. 3083); the Trustee's Fifth Interim Report ¶¶ 134–43 (ECF No. 4072); and the Trustee's Sixth Interim Report ¶¶ 131–42 (ECF No. 4529). No decision has been entered on the

motion for leave to appeal the Second Interim Fee Order, No. M47-b (DAB) (S.D.N.Y.).  The

motion for leave to appeal the Sixth Interim Fee Order was withdrawn on September 10, 2014.

*Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, Case No. 11 MC 00265(PGG)

(S.D.N.Y.), ECF No. 9.

### B.    Sixteenth Fee Application

414.    On November 21, 2014, the Trustee and his counsel filed the Sixteenth

Application for Interim Compensation for Services Rendered and Reimbursement of Actual and

Necessary Expenses incurred from April 1, 2014 through and including July 31, 2014 with the

Bankruptcy Court.  (ECF No. 8549).  Special counsel and international special counsel also filed

applications for Interim Professional Compensation.  (ECF Nos. 8550, 8551, 8553, 8555-8569,

8572).

415.    At the hearing on December 18, 2014, the Trustee, his counsel, and SIPC were

heard and provided a description of the services rendered and the reasons for which the

compensation sought in the Sixteenth Interim Fee Application was reasonable.  This Court

subsequently entered the Sixteenth Interim Fee Order approving the Sixteenth Interim Fee

Applications.  (ECF No. 8867).  No motion for leave to appeal the Sixteenth Interim Fee Order

was filed.

### C.    Seventeenth Fee Application

416.    On March 23, 2015, the Trustee and his counsel filed the Seventeenth Application

for Interim Compensation for Services Rendered and Reimbursement of Actual and Necessary

Expenses incurred from August 1, 2014 through and including November 30, 2014 with the

Bankruptcy Court.  (ECF No. 9583).  Special counsel and international special counsel also filed

applications for Interim Professional Compensation.  (ECF Nos. 9589, 9594-9602, 9604, 9605,

9607-9611).

417.    At the hearing on April 16, 2015, the Trustee, his counsel, and SIPC were heard

and provided a description of the services rendered and the reasons for which the compensation

sought in the Seventeenth Interim Fee Application was reasonable.   This Court subsequently

entered the Seventeenth Interim Fee Order approving the Seventeenth Interim Fee Application.

(ECF No. 9823).   To date, no motion for leave to appeal the Seventeenth Interim Fee Order has

been filed.

## XII.    CONCLUSION

The foregoing report represents a summary of the status of this proceeding and the

material events that have occurred through March 31, 2015, unless otherwise indicated.   This

Report will be supplemented and updated with further interim reports.

Dated:  New York, New York
      April 29, 2015

Respectfully submitted,

**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Email: dsheehan@bakerlaw.com
Seanna R. Brown
Email: sbrown@bakerlaw.com
Heather R. Wlodek
Email: hwlodek@bakerlaw.com

*Attorneys for Irving H. Picard, Trustee for the*
*Substantively Consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities*
*LLC and Bernard L. Madoff*

*/s/ Irving H. Picard*
Irving H. Picard
**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
Email: ipicard@bakerlaw.com

*Trustee for the Substantively Consolidated*
*SIPA Liquidation of Bernard L. Madoff*
*Investment Securities LLC and*
*Bernard L. Madoff*