Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111

Hearing Date:  June 24, 2015
Hearing Time:  10:00 AM (EST)
Objection Deadline:   May 28, 2015

Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Email: dsheehan@bakerlaw.com
Jorian L. Rose
Email: jrose@bakerlaw.com
Nicholas J. Cremona
Email: ncremona@bakerlaw.com
Seanna R. Brown
Email:sbrown@bakerlaw.com
Amy E. Vanderwal
Email: avanderwal@bakerlaw.com

*Attorneys for Irving H. Picard, Trustee*
*for the Substantively Consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities LLC*
*and the Estate of Bernard L. Madoff*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (SMB) |
| Plaintiff-Applicant, | SIPA Liquidation |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |

## TRUSTEE'S MOTION AND MEMORANDUM
## TO AFFIRM HIS DETERMINATIONS
## DENYING CLAIMS OF CLAIMANTS HOLDING
## <u>INTERESTS IN EPIC VENTURES, LLC</u>

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................... 1

BACKGROUND ....................................................................................................... 2

    A.    The Commencement of The SIPA Proceeding ................................................... 2

    B.    Epic History and Structure .................................................................................. 3

    C.    The BLMIS Account Records ............................................................................. 6

    D.    The Claims ........................................................................................................... 7

    E.    The Customer Decisions ...................................................................................... 8

ARGUMENT ......................................................................................................... 13

CONCLUSION ...................................................................................................... 19

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*In re Adler, Coleman Clearing Corp.*,
  216 B.R. 719 (Bankr. S.D.N.Y. 1998) ...................................................................14

*Aozora Bank Ltd. v. Sec. Investor Prot. Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*,
  480 B.R. 117 (S.D.N.Y. 2012) ..........................................................................8, 9

*Appleton v. First Nat'l Bank of Ohio*,
  62 F.3d 791 (6th Cir. 1995) ...............................................................................14

*In re Beacon Assocs. Litig.*,
  745 F. Supp. 2d 386 (S.D.N.Y. 2010) ...................................................................2

*In re Bernard L. Madoff Inv. Sec. LLC*,
  654 F.3d 229 (2d Cir. 2011) ...................................................................... *passim*

*In re Klein, Maus & Shire, Inc.*,
  301 B.R. 408 (Bankr. S.D.N.Y. 2003) ..................................................................18

*Kruse v. Sec. Investor Prot. Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*,
  708 F.3d 422 (2d Cir. 2013) ....................................................................... *passim*

*In re Lehman Bros. Inc.*,
  462 B.R. 53 (Bankr. S.D.N.Y. 2011) ...................................................................13

*Mishkin v. Siclari (In re Adler, Coleman Clearing Corp.)*,
  277 B.R. 520 (Bankr. S.D.N.Y. 2002) ..................................................................18

*Sec. Investor Prot. Corp. v. 2427 Parent Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*,
  779 F.3d 74 (2d Cir. 2015) ...........................................................................16, 17

*Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff)*,
  515 B.R. 161 (Bankr. S.D.N.Y. 2014) .............................................12, 15, 16, 18

*Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff Inv. Sec. LLC)*,
  454 B.R. 285 (Bankr. S.D.N.Y. 2011) ..................................................8, 9, 11, 18

*Sec. Investor Prot. Corp. v. Jacqueline Green Rollover Account*,
  Nos. 12 Civ. 1039(DLC), 12 Civ. 1139(DLC), 2012 WL 3042986 (S.D.N.Y. July 25, 2012) ......................................................................................10, 11

## TABLE OF AUTHORITIES
### (continued)

Page(s)

*Sec. Investor Prot. Corp. v. Morgan, Kennedy & Co.*,
  533 F.2d 1314 (2d Cir. 1976)..................................................................................10, 14, 15

*Sec. Investor Prot. Corp. v. Stratton Oakmont, Inc.*,
  229 B.R. 273 (Bankr. S.D.N.Y. 1999)..................................................................................14

*Sec. Investor Prot. Corp. v. Wise (In re Stalvey & Assocs., Inc.)*,
  750 F.2d 464 (5th Cir. 1985) ..................................................................................14

*SEC v. F.O. Baroff Co.*,
  497 F.2d 280 (2d Cir. 1974)..................................................................................14

*SEC v. Madoff*,
  No. 1:08-cv-10791-LLS, 2008 WL 5197070 (S.D.N.Y. filed Dec. 11, 2008) ........................2

*Stafford v. Giddens (In re New Times Sec. Servs., Inc.)*,
  463 F.3d 125 (2d Cir. 2006)..................................................................................9, 14, 18

**Statutes**

15 U.S.C.A. § 78*lll*(2)..................................................................................2, 3, 10, 13

15 U.S.C. § 78aaa *et seq.*..................................................................................1

15 U.S.C. § 78eee(a)(4)..................................................................................2

15 U.S.C. § 78eee(b)(3)..................................................................................2

15 U.S.C. § 78eee(b)(4)..................................................................................2

15 U.S.C. § 78fff-1(a)..................................................................................2

15 U.S.C. § 78fff-2(b)..................................................................................14

15 U.S.C. § 78fff-3(a)..................................................................................3

15 U.S.C. § 78*lll*(4)..................................................................................3

15 U.S.C. § 78*lll*(11)..................................................................................3

DEL. CODE ANN. tit. 6, § 18 ..................................................................................3

DEL. CODE ANN. tit. 6, § 18-101(7) ..................................................................................3

DEL. CODE ANN. tit. 6, § 18-201 ..................................................................................3

DEL. CODE ANN. tit. 6, § 18-201(b) ..................................................................................16

<u>**TABLE OF AUTHORITIES**</u>
**(continued)**

**Page(s)**

DEL. CODE ANN. tit. 6, § 18-701 ...................................................................................................16

Dodd-Frank Wall Street Reform and Consumer Protection Act. Pub. L. No. 111-
   203, § 983(b), 124 Stat. 1931 (2010) ........................................................................................13

**Rules**

Fed. R. Civ. P. 36(a)(3) ................................................................................................................17

**Other Authorities**

1–12 *Collier on Bankruptcy* ¶ 12.12 ...........................................................................................10

Irving H. Picard, as trustee ("Trustee") for the substantively consolidated liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15 U.S.C. § 78aaa *et seq.* ("SIPA"),[1] and the estate of Bernard L. Madoff ("Madoff"), respectfully submits this motion and memorandum of law (the "Motion") to affirm the denial of the claims filed by eighteen claimants  (the "Objecting Claimants"), who objected to the Trustee's determinations and who had interests in a Delaware limited liability company, Epic Ventures, LLC ("Epic").  The Objecting Claimants are specifically identified on Exhibit 2 to the Declaration of Vineet Sehgal filed herewith.  This memorandum is based upon the law set forth below as well as the facts set forth in the accompanying declarations of Stephanie Ackerman ("Ackerman Decl.") and Vineet Sehgal ("Sehgal Decl.").

## PRELIMINARY STATEMENT

The Objecting Claimants seek customer status in this SIPA proceeding, despite their acknowledgement that they had no accounts in their respective names or any other direct relationship with BLMIS.  Instead, they invested in Epic, a Delaware limited liability company which had a BLMIS account and invested its own assets with BLMIS, and which filed its own claim regarding the account with the Trustee.  The case is indistinguishable from the eight prior decisions in this SIPA proceeding involving the question of who is the "customer" under SIPA, including the Second Circuit decision *Kruse v. Sec. Investor Prot. Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*, 708 F.3d 422 (2d Cir. 2013) and the other cases referenced in Section E *infra*.  In *Kruse*, the Second Circuit held that only the Delaware entities that had accounts at BLMIS, and not the investors in those entities, were customers of BLMIS.  The current Motion seeks to apply *Kruse* and its progeny to the Objecting Claimants through entry of an order

---

[1] *See* 15 U.S.C.A. § 78aaa et seq. (West 2009).  For convenience, subsequent references to sections of the Securities Investor Protection Act shall be denoted simply as "SIPA § __."

affirming the Trustee's denial of the claims listed on Exhibit 2 to the supporting Declaration of

Vineet Sehgal, expunging such claims, and overruling, on the grounds that Claimants are not

"customers" as such term is used at SIPA § 78*lll*(2), all objections filed by the Claimants as to

the claims at issue.[2]

## BACKGROUND

### A.    THE COMMENCEMENT OF THE SIPA PROCEEDING

The basic facts of the BLMIS fraud are widely known and have been recounted in

numerous decisions.  *See, e.g., In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d 229, 231 (2d

Cir. 2011); *In re Beacon Assocs. Litig.*, 745 F. Supp. 2d 386, 393–94 (S.D.N.Y. 2010).  On

December 11, 2008, the Securities and Exchange Commission ("SEC") filed a complaint in the

District Court against Madoff and BLMIS, captioned *SEC v. Madoff*, No. 1:08-cv-10791-LLS,

2008 WL 5197070 (S.D.N.Y. filed Dec. 11, 2008), alleging fraud through the investment advisor

activities of BLMIS.  The SEC consented to the consolidation of its case with an application of

the Securities Investor Protection Corporation ("SIPC"). Thereafter, SIPC filed an application

under SIPA § 78eee(a)(4) alleging that because of its insolvency, BLMIS needed SIPA

protection. The District Court appointed the Trustee under SIPA § 78eee(b)(3) and removed the

proceeding to this Court under SIPA § 78eee(b)(4).

Under SIPA, the Trustee is responsible, among other things, for recovering and

distributing customer property to a broker's customers, assessing claims, and liquidating other

assets of the firm for the benefit of the estate and its creditors. A SIPA trustee has the general

powers of a bankruptcy trustee, in addition to the powers granted by SIPA. SIPA § 78fff-1(a).

The statutory framework for the satisfaction of customer claims in a SIPA liquidation proceeding

---

[2] The Trustee reserves all other bases for objections to the claims that are the subject of the Motion.

provides that "customers," as defined in SIPA § 78*lll*(2), share pro rata in "customer property,"

defined in SIPA § 78*lll*(4), to the extent of their "net equity," defined in SIPA § 78*lll*(11).  For

each customer with a valid net equity claim, if the customer's share of customer property does

not make her whole, SIPC advances funds to the SIPA trustee up to the amount of the customer's

net equity, not to exceed $500,000 (the amount applicable to this case). SIPA § 78fff-3(a).

On December 23, 2008, this Court entered a Claims Procedures Order. (ECF No. 12.)

Pursuant to that order, the Trustee determines claims eligible for customer protection under

SIPA, claimants may object to the Trustee's determination of a claim by filing an objection in

this Court, and the Trustee requests a hearing date for the objection and notifies the objecting

claimant thereof.  *Id.*

## B.    EPIC HISTORY AND STRUCTURE

The Objecting Claimants invested in Epic.  Epic was organized as a Delaware limited

liability company in 1999. Its certificate of formation was filed with the State of Delaware on

November 2, 1999.  *See* Ackerman Decl. ¶ 10, Ex. 2.  Its BLMIS account, number 1E0158, was

opened later that same year. Sehgal Decl. ¶¶ 14, 18, Exs. 4, 8; *see also* ECF No. 3801 at 1.  Epic

is legally governed by both the Delaware Limited Liability Company Act ("DLLA"),[3] and by its

own Limited Liability Company Agreement of Epic Ventures, LLC.[4]  *See* DLLA §§ 18-101(7),

18-201.

Epic had a single member, Eric Stein, who also served as its Member Manager.  All of

the Objecting Claimants, including the Member Manager, are interest holders in Epic pursuant to

the LLC Agreement. The LLC Agreement provides for two main subcategories of interest

---

[3] DEL. CODE ANN. tit. 6, § 18.

[4] *See* Sehgal Decl. Ex. 7 at 1 (hereafter, "LLC Agreement").

3

holders: members (who have certain voting rights), and economic interest owners (who have no voting rights.) Except for Eric Stein, all Objecting Claimants are categorized solely as economic interest holders. *See* LLC Agreement, Article I at pp. 2-3, Article III, § 4.11; Objection to Trustee's Determination of Claim at 2 (ECF No. 3371).

Epic was structured to allow for multiple "series" representing different investment opportunities, *see* LLC Agreement, Articles I, V, §3.4, but it appears that only one such investment opportunity may have existed. *See* Epic claim, Sehgal Decl. ¶ 16, Ex. 6 at p. 5 ("none of the Economic Interest Owners had any right to participate in any company investments other than in the BLMIS Investment.")

Epic filed a claim in this BLMIS proceeding, which is currently "deemed determined" because of the Trustee's pending litigation against Epic to recover a preferential payment. Sehgal Decl. ¶ 13. The litigation is ongoing.

The Objecting Claimants sent their money to Epic as capital contributions to Epic. *See* LLC Agreement, Article I "Capital Contribution", Article V. The capital accounts represented their proportional interest in Epic (or in the particular Epic series in which they invested) and were calculated pursuant to a formula set out in the LLC Agreement that included the contributions, any withdrawals, and allowance for the fees and expenses of Epic, including indemnification obligations and management fees. *Id.* at Articles I, V, §§ 4.3-4.5, 4.9. If at any time an interest holder chose to withdraw from Epic (on 60 days written notice, among other limitations), or request a partial withdrawal of its interest, the Member Manager would determine whether the distribution would be wholly in cash or, if not, which securities would form part of it. *See* LLC Agreement, § 5.3. The LLC Agreement also provided for retaining a reserve for

liabilities.  *Id.* at §§ 5.3, 4.5.    The LLC Agreement restricted assignment of interests.  *Id.* at § 5.3.

Only the Member Manager had the right to manage Epic, including the ability to enter into contracts, open accounts, invest Epic's assets, or delegate investment functions.   LLC Agreement, § 4.1 ("the Member Manager shall have exclusive responsibility for all the affairs of the Company . . . ." and "the Member Manager shall have full power and authority . . . .to manage, control and direct all . . . investments . . . to deal in and with the Investment Opportunities and other property of the Company . . . to direct the selection of brokers . . . ."). The Member Manager was compensated for the special functions that he performed on behalf of Epic.  LLC Agreement, § 4.3.

 Economic interest owners had no voting rights (*see* LLC Agreement, Article III, §4.11). Moreover, even had there been more than one member, the LLC Agreement provided that only the Member Manager was in control:  "The Member Manager shall have sole and exclusive power and authority to act for or bind the Company . . . . No Member (other than the Member Manager, in its capacity as Member Manager) or Economic Interest Owner shall have any power or authority to act for or bind the Company."  LLC Agreement, § 4.2.  Similarly, section 4.11 provided "The Economic Interest Owners shall take no part in the management or control of the Company's business and shall have no right or authority to act for the Company or to vote on matters."

Thus, like other entities that have been the focus of "customer" decisions in this SIPA proceeding, Epic meets the following criteria:  (1) it is a legal entity (*i.e.*, capable of owning property, suing, and being sued) that was created as an investment vehicle; (2) it owned the funds that it used for investment, which funds were obtained from the legal entity's interest holders,

including, among others, the Objecting Claimants; (3) the management and direction of fund investments by Epic were restricted to management, specifically the sole Member Manager; (4) Epic had a BLMIS account in its name, according to the books and records of BLMIS; and (5) Epic is not a bank, broker, or dealer.

## C.    THE BLMIS ACCOUNT RECORDS

Epic maintained an account in its own name (the "Account") with BLMIS. The Objecting Claimants did not. Sehgal Decl. ¶¶ 7-11, 15, 18, Exs. 2, 5, 8. The Member Manager—in his capacity as such—had authority over the Account. The Objecting Claimants did not. Sehgal Decl. ¶¶17, 18, 19, Exs. 7, 8.

The records of BLMIS reflect money deposited or withdrawn by Epic, acting through the Member Manager, and not by the Objecting Claimants. The account opening documents all reference Epic. The BLMIS records shows letters signed by the Member Manager and requesting withdrawals to be wired to Epic bank accounts. *See* Sehgal Decl. ¶¶ 14, 18, Exs 4, 8. BLMIS sent Account statements and related communications to Epic, not the Objecting Claimants. *See* Ackerman Decl. ¶ 9 Ex. 1 at Requests for Admission numbers 3, 8 (hereafter "RFA__"); Sehgal Decl. ¶¶ 15, 19, Ex. 5. The account maintenance files of BLMIS for this Account do not reference the economic interest owners of Epic. Sehgal Decl. ¶ 18, Ex. 8.

Because Epic maintained an Account at BLMIS and made deposits into and withdrawals from the Account, the books and records of BLMIS reflect the amounts owing and owed by the BLMIS estate for the Account. The books and records of BLMIS do not, in contrast, reflect deposits or withdrawals directly to or from BLMIS by the Objecting Claimants with regard to the Account. They also do not show what amounts individual Objecting Claimants invested in, or withdrew from, Epic. Sehgal Decl. ¶ 19.

6

### D.    THE CLAIMS

The claims at issue in this Motion involve investments into Epic by the Objecting Claimants.  Sehgal Decl. ¶¶ 7-12, Exs. 1-3. The Objecting Claimants, the 18 claims filed by them, and the objection to determinations of those claims, are specifically identified in Exhibits 2 and 3 to the Sehgal Decl.  The Objecting Claimants were the interest holders in Epic.  *See* Objection to Trustee's Determination of Claim at 2 (ECF No. 3371).  Their 18 claims were based solely upon their investments in Epic. Sehgal Decl. ¶ 9.  The Trustee denied their claims, citing the fact that they lacked BLMIS accounts and were not customers of BLMIS.  Sehgal Decl. ¶ 11. The Objecting Claimants filed one objection to the Trustee's determination of their claims. Sehgal Decl. ¶¶ 11-12, Exs. 2, 3.  This Motion addresses the objection and the specified claims identified on Exhibit 2 of the Sehgal Decl.[5]

Since receiving the sole objection to the claims determinations, the Trustee served discovery, including requests for admission on the Objecting Claimants seeking to determine their basis for claiming customer status, and inquiring into deposits, payments, communications, account openings, and their relationship with the account holder.  None of the Objecting Claimants responded or otherwise demonstrated their entitlement to customer status under SIPA. *See* Ackerman Decl. ¶¶ 5, 9, Ex 1.

Epic filed a customer claim with the Trustee for the supposed value of its Account. Sehgal Decl. ¶¶ 13, 16, Ex. 6.   Its claim is currently "deemed determined" because of outstanding litigation to recover a preferential payment.  Sehgal Decl. ¶ 13.  Epic's claim is not before the Court on this Motion.

---

[5] Any claims of Objecting Claimants that may exist as to other accounts are not the subject of this Motion.

## E.    THE CUSTOMER DECISIONS

There have been eight prior decisions in this proceeding dealing with whether investors in BLMIS accountholder entities could be treated as "customers" under SIPA; all of the decisions said they could not.[6]  The Trustee's first motion regarding the definition of "customer" under SIPA was the Trustee's Motion To Affirm Trustee's Determinations Denying Claims of Claimants Without BLMIS Accounts In Their Names, Namely, Investors in Feeder Funds, filed on June 11, 2010 (ECF No. 2416) (the "Initial Feeder Fund Motion").  One of the feeder funds was a New York limited liability company and seven of the 16 feeder funds addressed by the motion were limited liability partnerships organized in Delaware.[7]  On June 28, 2011, this Court issued its memorandum decision and order affirming the Trustee's denial of the claims.  *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff Inv. Sec. LLC),* 454 B.R. 285 (Bankr. S.D.N.Y. 2011), *aff'd sub nom. Aozora Bank Ltd. v. Sec. Investor Prot. Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*, 480 B.R. 117 (S.D.N.Y. 2012), *aff'd sub nom. Kruse v. Sec. Investor Prot. Corp. (In re Bernard L. Madoff Inv. Sec. LLC),* 708 F.3d 422 (2d Cir. 2013).

The Court found that, in light of the plain language of SIPA and relevant case law, the claimants in the Initial Feeder Fund Motion did not qualify as "customers" under SIPA.  *Id*. at 290.  The Court found that the claimants invested in, not through, those feeder funds, and had no

---

[6] One other customer motion is presently scheduled for hearing on May 20, 2015.  *See* Trustee's Motion And To Affirm His Determinations Denying Claims Of Claimants Holding Interests In The Lazarus-Schy Family Partnership, The Schy Family Partnership, Or The Lazarus Investment Group. (ECF No. 9771).  At this writing, the deadline for objections has passed and no objections have been filed.

[7] *See* Mem. of Law in Support of Trustee's Motion To Affirm Trustee's Determinations Denying Claims Of Claimants Without BLMIS Accounts In Their Names, Namely, Investors In Feeder Funds at 4 n.8, ECF No. 2411; *see also Aozora Bank Ltd. v. Sec. Investor Prot. Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*, 480 B.R. 117, (S.D.N.Y. 2012), *aff'd sub nom. Kruse v. Sec. Investor Prot. Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*, 708 F.3d 422 (2d Cir. 2013).

individual accounts at BLMIS. *Id.* at 297. It was the feeder funds that entrusted their monies with BLMIS for the purpose of trading or investing in securities—the touchstone of "customer" status—whereas the claimants purchased interests in the feeder funds. *Id*. at 299. The Court held that absent a direct relationship with BLMIS, the claimants sought a definition of "customer" that stretched the term beyond its limits. *Id.* at 302.

Certain claimants appealed this decision to the District Court. The District Court affirmed, extensively analyzing the statutory definition and holding that the claimants did not qualify as customers under the plain language of SIPA. *Aozora Bank Ltd.*, 480 B.R. 117 (S.D.N.Y. 2012).

On further appeal, the Second Circuit also affirmed, confirming that "[j]udicial interpretations of 'customer' status support a narrow interpretation of the SIPA's provisions." *Id.* at 426 (citing *Stafford v. Giddens (In re New Times Sec. Servs., Inc.)*, 463 F.3d 125, 127 (2d Cir. 2006)). The Second Circuit held that "the critical aspect of the 'customer' definition" was "the entrustment of cash or securities to the broker-dealer for the purposes of trading securities." *Kruse*, 708 F.3d at 426 (citing *In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d at 236.). The Second Circuit found that the claimants failed to meet this fundamental requirement because the money sent to BLMIS belonged to the entities, not to the individual claimants, and the individual claimants therefore failed to establish that they had entrusted cash or securities to BLMIS. *Kruse*, 708 F.3d at 427. The Second Circuit also found that the individual claimants did not exhibit other indicia of customer status in their dealings (or lack of dealings) with BLMIS, including that they did not exert any control over the accounts at issue and that they were not reflected in BLMIS records. *Id.* at 426-27.

The Second Circuit held that the interests "sold by the Feeder Funds to investors . . . did not confer an ownership interest in money that the Feeder Funds ultimately invested in BLMIS." Thus, the Second Circuit concluded, "regardless of their intent, appellants never entrusted their cash or securities to BLMIS and, thus, fail to satisfy this 'critical aspect of the "customer" definition.' *In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d at 236 (internal quotation marks omitted); *see SIPC v. Morgan, Kennedy & Co.*, 533 F.2d at 1318;[8] *see also* 1–12 *Collier on Bankruptcy* ¶ 12.12 (16th ed. 2012) ('[A] claimant will not be entitled to customer protection under SIPA unless the debtor actually receives the claimant's cash or securities; the debtor must actually have come into possession or control.')." *Kruse,* 708 F.3d at 427-28.

While the appeals of the First Feeder Fund Decision were pending, the Trustee also filed a motion (the "ERISA Motion") to address arguments that were raised by claimants without BLMIS accounts who were benefit plans or benefit plan participants and who sought to use the Employee Retirement Income Security Act ("ERISA") as a basis for determining their customer status.[9] (ECF No. 4521.)  The District Court withdrew the reference from the Bankruptcy Court and granted the ERISA Motion.  *Sec. Investor Prot. Corp. v. Jacqueline Green Rollover Account*, Nos. 12 Civ. 1039(DLC), 12 Civ. 1139(DLC), 2012 WL 3042986 *3 (S.D.N.Y. July 25, 2012).

The District Court noted that the first two of the three ways to qualify as a "customer" under SIPA § 78*lll*(2), "presume that a customer must have a securities account with the debtor," and that the claimants also did not qualify under the third method of having "deposited cash with the debtor for the purpose of purchasing securities."  *Id.* at *4.  That was so because none of the

---

[8] *Sec. Investor Prot. Corp. v. Morgan, Kennedy & Co.*, 533 F.2d 1314, 1318 (2d Cir. 1976), *cert. denied*, 426 U.S. 936 (1976) ("*Morgan Kennedy*").

[9] Prior to the hearing on the Initial Feeder Fund Motion, the Court had removed from the scope of the motion the question of whether ERISA affects "customer" status under SIPA.

claimants "owned any cash deposited with BLMIS. Rather, . . . in each case this cash was owned by the third-party entity in which the claimant invested, and which had a BLMIS account in its name." *Id.* at *5. The District Court also rejected arguments that fiduciary responsibilities could suffice to create a "customer" relationship: "Without an account in his or her name with BLMIS or title to any assets with BLMIS, a claimant cannot achieve customer status merely by virtue of having a fiduciary relationship with the debtor." *Id.* at *12.

Further SIPA "customer" motions followed, each of which was determined in favor of the Trustee. On August 21, 2013, the Court issued its Bench Memorandum Granting Trustee's Second Motion to Affirm Trustee's Determinations Denying Claims of Claimants Who Invested in Certain Feeder Funds and Did Not Have BLMIS Accounts in Their Names (ECF No. 5450) ("the Second Feeder Fund Decision"). That decision reaffirmed that "the burden is on the claimant to establish he is a 'customer' entitled to SIPA protection, and such a showing is not easily met." Second Feeder Fund Decision at 4 (quoting *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 454 B.R. at 294). Also, the Court determined that the claimants "fail[ed] to [meet their burden] because they lack any of the indicia of a 'customer' relationship with BLMIS." *Id.* In particular, "they had no securities accounts at BLMIS, were not known to BLMIS, lacked privity and any financial relationship with BLMIS, lacked property interest in any feeder fund account assets at BLMIS, entrusted no cash or securities to BLMIS, had no investment discretion over feeder fund assets invested with BLMIS, received no accounts statements or other communications from BLMIS and had no transactions reflected on the books and records at BLMIS." *Id.*

On August 22, 2014, this Court issued its Memorandum Decision Granting Motion To Affirm Trustee's Determinations Denying Claims Of Claimants Who Invested In Certain ERISA

Plans. *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff)*, 515 B.R. 161 (Bankr. S.D.N.Y. 2014) (hereinafter, "*ERISA Claimant Decision*").  In affirming the Trustee's determinations, this Court concluded that "[t]he claimant has the burden to establish his status as a 'customer'" and "not every victim of a broker-dealer's fraud is a 'customer.'" *Id.* at 166.  The Court found that "to qualify as a 'person who has deposited cash with the debtor for the purpose of purchasing securities,' . . . the party asserting that she was a BLMIS customer must show that she entrusted her own assets directly through an account maintained in her own name rather than indirectly through a fund that then entrusted the fund's assets through an account maintained in the fund's name." *Id.* at 168 (internal citations omitted). Moreover, even the fact that a claimant exercised some control over her own investments in the fund or the fund's investments in BLMIS is not sufficient to meet "the narrow definition of customer under SIPA." *Id.*

On February 25, 2015, this Court read into the record a decision (the "S&P Decision") granting Trustee's Motion And Memorandum To Affirm His Determinations Denying Claims Of Claimants Holding Interests In S & P Or P & S Associates, General Partnerships.   This Court summarized the state of the law, as expressed in its prior decision[10]  as follows: First, it said, "customer status under SIPA is narrowly interpreted."   Further, "[t]he 'critical aspect' of the customer definition is 'the entrustment of cash or securities to the broker-dealer for the purposes of trading securities.'"   In addition, "[t]he indicia of customer status include a direct financial relationship with BLMIS, a property interest in the funds invested directly with BLMIS, securities accounts with BLMIS, control over the account holders' investments with BLMIS and identification of the alleged customer in BLMIS' books and records."   The Court concluded,

---

[10] *ERISA Claimant Decision*, 515 B.R. at 165-68.

"[f]inally, the claimant has the burden of showing that he or she is a customer."  Hr'g.

Transcript, *S&P Decision*, at p. 30 (Ackerman Decl. Ex. 3). The Court held that the objecting

partners failed to sustain their burden of proving that they are SIPA customers of BLMIS.  *Id.* at

36.  An order granting the Trustee's motion was entered March 10, 2015. (ECF No. 9450).

On April 27, 2015, the Court entered its Order Approving Trustee's Motion To Affirm

His Determinations Denying Claims of Claimants Holding Interests In Peerstate Equity Fund,

L.P.  (ECF No. 9883).  The Trustee's motion (ECF No. 9463) was unopposed.

## ARGUMENT

To be a "customer" under SIPA, an investor must have "a claim on account of securities

received, acquired, or held by the debtor in the ordinary course of its business as a broker or

dealer from or for the securities accounts of such person," including "any person who has

deposited cash with the debtor for the purpose of purchasing securities." SIPA § 78lll(2).[11]  Thus,

to be a "customer" an investor must have entrusted cash or securities with the debtor for the

---

[11] The definition applicable to this SIPA proceeding is:

(2) CUSTOMER

The term "customer" of a debtor means any person (including any person with whom the debtor deals as principal or agent) who has a claim on account of securities received, acquired, or held by the debtor in the ordinary course of its business as a broker or dealer from or for the securities accounts of such person for safekeeping, with a view to sale, to cover consummated sales, pursuant to purchases, as collateral security, or for purposes of effecting transfer. The term "customer" includes any person who has a claim against the debtor arising out of sales or conversions of such securities, and any person who has deposited cash with the debtor for the  purpose of purchasing securities, but does not include—

(A) any person to the extent that the claim of such  person arises out of transactions with a foreign subsidiary of a member of SIPC; or

(B) any person to the extent that such person has a claim for cash or securities which by contract, agreement, or understanding, or by operation of law, is part of the capital of the debtor, or is subordinated to the claims of any or all creditors of the debtor, notwithstanding that some ground exists for declaring such contract, agreement, or understanding void or voidable in a suit between the claimant and the debtor.

SIPA § 78*lll*(2), *see* 15 U.S.C.A. § 78*lll*(2)  (West 2009). After the start of this case, the "customer" definition was slightly reorganized and amended in a manner irrelevant to the present issues by the Dodd-Frank Wall Street Reform and Consumer Protection Act. Pub. L. No. 111-203, § 983(b), 124 Stat. 1931 (2010); *see In re Lehman Bros. Inc.*, 462 B.R. 53, n.9 (Bankr. S.D.N.Y. 2011).

purpose of trading or investing in securities.[12]  The Second Circuit, as well as this Court, has held

in this very SIPA proceeding that investors in entities do not constitute "customers" under SIPA

where only that entity rather than the investor had an account in the brokerage being liquidated

under SIPA. *See e.g. Kruse*, 708 F.3d at 427 (holding investors who bought interests in a

Delaware entity that invested funds via the entity's own BLMIS account "never entrusted *their*

cash or securities to BLMIS and, thus, fail to satisfy this 'critical aspect of the "customer"

definition'" regardless of their intent) (citing *In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d at

236); *In re New Times Sec. Servs., Inc.,* 463 F.3d at 128 ("[T]he critical aspect of the 'customer'

definition is the entrustment of cash or securities to the broker-dealer for the purposes of trading

securities.") (quoting *Appleton v. First Nat'l Bank of Ohio,* 62 F.3d 791, 801 (6th Cir. 1995)); *In

re Adler, Coleman Clearing Corp.*, 216 B.R. 719, 724–25 (Bankr. S.D.N.Y. 1998) ("The term

[customer] refers to those who entrust cash or securities to broker-dealers for the purpose of

trading and investing in the securities market.").  The Trustee is responsible for discharging

obligations of the debtor to customers with such claims "insofar as such obligations are

ascertainable from the books and records of the debtor or are otherwise established to the

satisfaction of the trustee."  SIPA § 78fff-2(b).

The Objecting Claimants' investment in Epic does not meet the requirements for

"customer" status outlined in the seminal Second Circuit decision *Morgan Kennedy*.  *Kruse*, 708

F.3d at 427.  In *Morgan Kennedy*, the Second Circuit rejected the argument that the beneficial

owners of the account holder were the "customers" under SIPA, citing the facts that: (1) title to

---

[12] "Customer" status under SIPA is on a transaction by transaction basis.  *SEC v. F.O. Baroff Co.*, 497 F.2d 280, 282
n.2 (2d Cir. 1974) (under SIPA, "a person may be a 'customer' with respect to some of his claims for cash or shares,
but not with respect to others"); *Sec. Investor Prot. Corp. v. Wise (In re Stalvey & Assocs., Inc.)*, 750 F.2d 464, 471
n.4 (5th Cir. 1985) ("Customer status 'in the air' is insufficient to confer the SIPA's protection on a given
transaction"); *Sec. Investor Prot. Corp. v. Stratton Oakmont, Inc.*, 229 B.R. 273, 277 (Bankr. S.D.N.Y. 1999), *aff'd
sub nom. Arford v. Miller*, 210 F.3d 420 (2d Cir. 2000) ("an investor can be a customer vis-a-vis certain transactions
but not others").

the trust assets was held by the account holder, not the beneficiaries; (2) the securities account with the debtor was in the name of the account holder, not the beneficiaries; (3) the account holder had the exclusive power to entrust the assets to the debtor; (4) the beneficiaries were unknown to the broker; and (5) the beneficiaries had no legal capacity in which they could deal with the debtor.  533 F.2d at 1318.

The Objecting Claimants' circumstances are not distinguishable from those of the claimants in *Morgan Kennedy*, and do not show the hallmarks of customer status discussed in this Court's most recent decision.  Hr'g. Transcript, *S&P Decision*, at 30 (Ackerman Decl. Ex. 3).  The Objecting Claimants entrusted their money to Epic, not BLMIS.  The Objecting Claimants lacked a direct financial relationship with BLMIS as to the account money.  The money entrusted to BLMIS was the property of Epic, not the Objecting Claimants.  The BLMIS Account was in the name of Epic, not in the individual names of Objecting Claimants.  The economic interest owners lacked control over Epic's investments with BLMIS and were not identified in BLMIS' books and records.  Like the trustees who acted for the trust account in *Morgan Kennedy*, the Managing Member who dealt with BLMIS did so as an agent and is no more an individual customer under SIPA than were the *Morgan Kennedy* trustees.  *Morgan Kennedy,* 533 F.2d at 1321.  *Accord ERISA Claimant Decision* 515 B.R. at 170 (Objectors were not SIPA customers because "the contacts with BLMIS identified by the Objectors occurred in their capacities" as officials of the accountholder "and not in their individual capacities concerning individual accounts.")

Accordingly, the Objecting Claimants in their capacity as Epic interest holders never entrusted *their* cash or securities to BLMIS and, thus, fail to satisfy this "critical aspect of the 'customer' definition."  *See Kruse,* 708 F.3d at 426-27 (citing *In re Bernard L. Madoff Inv. Sec.*

*LLC*, 654 F.3d at 236); *accord ERISA Claimant Decision,* 515 B.R. at 169.   Whether they intended or expected that Epic would ultimately invest with BLMIS is irrelevant under SIPA. *See Kruse*, 708 F.3d at 426-27; *ERISA Claimant Decision*, 515 B.R. at 169-170.

The Objecting Claimants, as investors in Epic, do not have property rights in the money they contributed to Epic, or in anything that Epic purchased with it.  Those assets belong to Epic. Like the account holders dealt with by prior Customer Opinions, Epic is a legal entity under the laws of its home jurisdiction, with all that that entails, including ownership of the assets that it invested with BLMIS.  Delaware law explicitly recognizes limited liability companies such as Epic as distinct legal entities that own their own property.  *See, e.g.*, DLLA § 18-201(b) ("A limited liability company formed under this chapter shall be a separate legal entity . . . ."); DLLA § 18-701 ("A member has no interest in specific limited liability company property.")

Epic's Managing Member was required to carry out the investments and various internal functions of the LLC and exclusively controlled the assets.  It was Epic, not the Objecting Claimants, that entrusted assets to BLMIS for the purpose of purchasing securities.  Epic alone had the right to direct the investment of those assets, and to withdraw property from the Epic Account.   It was Epic, not the Objecting Claimants, that was the customer for its Account under SIPA.

Because BLMIS never exercised a custodial function on behalf of the individual Objecting Claimants, who made no deposits or withdrawals at BLMIS, the Objecting Claimants have neither "customer" claims nor individual net equity. The purpose of SIPA, a statute intended to deal with broker insolvency, is "to expedite the return of customer property" by "protecting the *custody* function of brokers," according to a recent Second Circuit decision that declined to permit interest or time-based damages for customer claims under SIPA. *Sec. Investor*

*Prot. Corp. v. 2427 Parent Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*, 779 F.3d 74, 80 (2d

Cir. 2015) (internal citations omitted).  Customers share in the fund of customer property ratably,

according to each customer's "net equity." *Id*. at 77, 81.  The definition of net equity is limited

by the fundamental SIPA design "to return customer property to customers," *id.* at 77, whether in

cash or in actual securities.  *Id*. at 80.  The Second Circuit stated, "[w]e . . . previously concluded

that in [the BLMIS] case net equity . . . should be determined based on customers' actual

deposits and withdrawals.  These deposits, net withdrawals, constitute customer property here."

*Id.* at 81 (citations omitted).  The books and records of BLMIS do not show Objecting Claimants

making BLMIS deposits or BLMIS withdrawals, only the Managing Member acting on Epic's

behalf.   Sehgal Decl. ¶ 19.  The Objecting Claimants accordingly have no individual net equity

and are not "customers" within the meaning of SIPA.  *See Sec. Investor Prot. Corp. v. 2427*

*Parent Corp.*, 779 F.3d at 81.

Objecting Claimants failed to respond at all to requests for admission, thereby admitting

them. Fed. R. Civ. P. 36(a)(3).  The admitted requests establish that the Objecting Claimants had

no relationship with BLMIS that qualify them as customers.  Among other things, the Objecting

Claimants thus admitted that the Account was not titled in their name (RFA 1), that they did not

have an account in their name at BLMIS (RFA 2), and that they never entered into contracts in

their name with BLMIS. (RFA 10.)  They admitted that they never received correspondence

directly from BLMIS (RFA 3), and that they never received investment statements (RFA 8) or

tax statements (RFA 9) in their names from BLMIS.  They admitted that they never paid cash

directly to BLMIS for credit to an account in their names (RFA 5), nor ever deposited securities

directly to BLMIS. (RFA 4.)  They admitted that they never directly withdrew (RFA 6) or

received (RFA 7) funds from BLMIS, and that any funds withdrawn were transmitted to them

from the Account holder, Epic. (RFA 7.)  They admitted that their only relationship to BLMIS existed by way of their relationship to Epic (RFA 11), and they did not have control or investment discretion over investment assets at BLMIS. (RFA 12, RFA 15.)  They conceded that the assets at BLMIS were owned by and in the name of Epic, and that Epic kept its funds separate from the Objecting Claimant's personal funds. (RFA 13, RFA 14); *see* Ackerman Decl. ¶ 9, Ex. 1.

As the Second Circuit has explained, "[j]udicial interpretations of 'customer' status support a narrow interpretation of the SIPA's provisions." *Kruse*, 708 F.3d at 426 (citing *In re New Times Sec. Servs., Inc.,* 463 F.3d at 127).  Customer status under SIPA is narrowly construed and is the burden of the claimant to establish.  *See ERISA Claimant Decision,* 515 B.R. at 166 ("The burden is on the claimant to establish he is a 'customer' entitled to SIPA protection, and such a showing 'is not easily met.'")  *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 454 B.R. at 294 (citing *In re Klein, Maus & Shire, Inc.*, 301 B.R. 408, 418 (Bankr. S.D.N.Y. 2003)); *see also Mishkin v. Siclari (In re Adler, Coleman Clearing Corp.)*, 277 B.R. 520, 557 (Bankr. S.D.N.Y. 2002) ("[I]it is well-established in the Second Circuit that a claimant bears the burden of proving that he or she is a 'customer' under SIPA.")  The Objecting Claimants have not met this burden. Thus, under Second Circuit precedent, the Objecting Claimants are not SIPA customers.

## CONCLUSION

For all of the foregoing reasons, the Court should affirm the Trustee's determination denying the claims of the Objecting Claimants, overrule their objections, expunge the claims, and grant such other and further relief as the Court deems just and proper.

Dated: New York, New York
      May 6, 2015

Respectfully submitted,

*/s/ David J. Sheehan*
David J. Sheehan
Email: dsheehan@bakerlaw.com
Jorian L. Rose
Email: jrose@bakerlaw.com
Nicholas J. Cremona
Email: ncremona@bakerlaw.com
Seanna R. Brown
Email: sbrown@bakerlaw.com
Amy E. Vanderwal
Email : avanderwal@bakerlaw.com
**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, New York  10111
Tel: (212) 589-4200
Fax: (212) 589-4201

Brian A. Bash
Email: bbash@bakerlaw.com
Wendy J. Gibson
Email: wgibson@bakerlaw.com
**Baker & Hostetler LLP**
1900 E. 9th St Suite 3200
Cleveland, Ohio  44114
Tel: (216) 621-0200
Fax: (216) 696-0740

*Attorneys for Irving H. Picard, Trustee*
*for the Substantively Consolidated SIPA*
*Liquidation of Bernard L. Madoff Investment*
*Securities LLC and the Estate of Bernard L.*
*Madoff*

300356549