**EXHIBIT A**

United States District Court
Southern District of New York

_____

In re BERNARD L. MADOFF
INVESTMENT SECURITIES LLC,

                          Debtor,
_____

ADELE FOX, ET AL.,                             14 Cv. 6790 (JGK)

                   Appellants,

         - against –                <u>OPINION AND ORDER</u>

IRVING H. PICARD,

                   Appellee,

         - and -
_____

CAPITAL GROWTH COMPANY, ET AL.,

                   Intervenors.
_____

JOHN G. KOELTL, District Judge:

     This bankruptcy appeal arises out of Bernard L. Madoff's
Ponzi scheme and the subsequent bankruptcy of Bernard L. Madoff
Investment Securities LLC ("BLMIS") in the wake of the public
revelation of that scheme.  In early 2010, the appellants, Adele
Fox and Susanne Stone Marshall, who each had invested money in
BLMIS, sought to file separate class action lawsuits in the
United States District Court for the Southern District of
Florida (the "Florida Actions") asserting state law claims
against Jeffrey Picower, an alleged Madoff co-conspirator, and
other related defendants (collectively, the "Picower
defendants").  The appellee, Irving H. Picard ("Picard" or the

1

"Trustee"), is the trustee for the BLMIS estate pursuant to the
Securities Investor Protection Act of 1970 ("SIPA"), 15 U.S.C.
§§ 78aaa *et seq*.  After Picard reached a $7.2 billion settlement
agreement with the Picower defendants, the United States
Bankruptcy Court for the Southern District of New York granted
Picard's motion to enjoin the appellants' Florida lawsuits
because they were commenced in violation of the Automatic Stay
Order in the BLMIS liquidation proceeding, and approved the
settlement and a permanent injunction precluding the assertion
of claims that were duplicative or derivative of claims brought
by the Trustee, or that could have been brought by the Trustee,
against the Picower defendants.  On March 26, 2012, this Court
affirmed the bankruptcy court's Automatic Stay Order and its
approval of the settlement and injunction.

The Court of Appeals for the Second Circuit affirmed that
judgment.  Marshall v. Picard (In re Bernard L. Madoff Inv.
Secs. LLC), 740 F.3d 81, 96 (2d Cir. 2014).  In the present
appeal, the appellants challenge the decision of the bankruptcy
court (Bernstein, B.J.), preventing the appellants from filing a
Second Amended Complaint in the Florida district court alleging
new claims against the Picower defendants.  The bankruptcy court
held that the appellants' new claims, including a claim under
Section 20(a) of the Securities Exchange Act of 1934 ("the
Exchange Act"), 15 U.S.C. § 78t(a) (the "Section 20(a) Claim"),

2

and a claim under the Federal Racketeer Influenced and Corrupt
Organization Act, 18 U.S.C. § 1961 *et seq*. (the "Federal RICO
Claim"), were derivative of the Trustee's claims against the
Picower defendants and therefore were precluded by the permanent
injunction.

For the reasons that follow, the bankruptcy court was
correct in finding that the appellants' proposed complaint was
derivative of the Trustee's claims on behalf of all the
creditors of BLMIS and was barred by the permanent injunction.

## I.

The factual background of this case was set out at length
in this Court's prior decision.  See Fox v. Picard (In re
Madoff), 848 F. Supp. 2d 469, 473-76 (S.D.N.Y. 2012).  The Court
assumes familiarity with that decision.  The following factual
and procedural background is presented for its relevance to this
appeal.

In May 2009, the Trustee first filed an adversary
proceeding against the Picower defendants (the "New York
Action"), bringing claims under federal and New York state law
for, among other things, fraudulent transfers and conveyances
made by the Picower defendants as part of their conspiracy with
Madoff.  The Trustee's complaint alleged that the Picower
defendants, knowing that BLMIS was an elaborate hoax, withdrew

billions of dollars from their BLMIS accounts, money that
belonged to defrauded BLMIS customers.

In February 2010, appellants Fox and Marshall filed
separate class action lawsuits in the United States District
Court for the Southern District of Florida, alleging Florida
state law claims against the Picower defendants based on the
same factual allegations as the Trustee's complaint (the
"Florida Actions"). Indeed, much of the appellants' initial
complaints were cut-and-paste repetitions of the Trustee's
complaint. The Trustee filed a motion in the bankruptcy court
to enjoin those lawsuits, and on May 3, 2010, the bankruptcy
court granted the Trustee's motion. The bankruptcy court held
that the appellants' claims were covered by the automatic stay
provisions of 11 U.S.C. § 362(a) and therefore belonged
"exclusively to the Trustee." Secs. Investor Prot. Corp. v.
Bernard L. Madoff Inv. Secs. LLC ("Automatic Stay Decision"),
429 B.R. 423, 432 (Bankr. S.D.N.Y. 2010). The court also found
that the Florida Actions violated part of a protective order
issued by the District Court for the Southern District of New
York on December 15, 2008, which had placed BLMIS customers
under the protection of the SIPA. Id. at 433. Finally, the
bankruptcy court issued a preliminary injunction pursuant to 11
U.S.C. § 105(a) finding that the Florida Actions threatened the
BLMIS estate. Id. at 434.

4

Thereafter, the Trustee reached a settlement with the Picower defendants pursuant to which the Picower defendants agreed to return $5 billion to the BLMIS estate and forfeit $2.2 billion to the Government.  The $7.2 billion represented the entire amount of money withdrawn by the Picower defendants from their BLMIS accounts.  On January 13, 2011, the bankruptcy court approved the settlement and issued the following permanent injunction pursuant to the settlement agreement:

> [A]ny BLMIS customer or creditor of the BLMIS estate who filed or could have filed a claim in the liquidation, anyone acting on their behalf or in concert or participation with them, or anyone whose claim in any way arises from or is related to BLMIS or the Madoff Ponzi scheme, is hereby permanently enjoined from asserting any new claim against the Picower BLMIS Accounts or the Picower Releasees that is duplicative or derivative of the claims brought by the Trustee, or which could have been brought by the Trustee against the Picower BLMIS Accounts or the Picower Releasees . . . .

Murphy Decl. filed Mar. 11, 2014, Ex. A (Permanent Injunction Order and Exhibit, Picard v. Picower, Case No. 09-1197 (Bankr. S.D.N.Y. Jan. 13, 2011), ECF No. 43 ("Settlement Order"), at 7).

On March 26, 2012, this Court affirmed the January 13 Order, holding that the settlement was fair and reasonable, and that the issuance of the permanent injunction was a proper exercise of the bankruptcy court's power under § 105(a) to protect the BLMIS estate and the bankruptcy court's jurisdiction over the massive SIPA liquidation.  See Fox, 848 F. Supp. 2d at 473.  This Court held that the claims asserted in the Florida

Actions were "general claims common to all BLMIS investors" that
were "substantively duplicative of the Trustee's fraudulent
transfer action." Id. at 481.  In particular, this Court noted
that both complaints in the Florida Actions explicitly relied on
the Trustee's complaint in the New York action and cited to the
Trustee's complaint throughout.  Id. at 479.  Accordingly, the
Court affirmed the bankruptcy court's grant of the Trustee's
motion to enjoin the Florida Actions, and its issuance of a
preliminary injunction.  This Court also affirmed the bankruptcy
court's approval of the Settlement Agreement, holding that the
"substantial sum" of $7.2 billion was "recovered for the estate
after arm's length bargaining, and the injunction of derivative
claims like the Florida Actions was part of that bargain." Id.
at 490.

      On January 13, 2014, the Court of Appeals for the Second
Circuit affirmed this Court's judgment.  See Marshall, 740 F.3d
at 96.  The Court held that the appellants had merely put new
legal labels on the same claims brought by the Trustee against
the Picower defendants for fraudulent transfers and withdrawals.
Id. at 92.  Citing with approval an opinion in a related case by
Judge Sullivan of this Court, the Court of Appeals stated that
the "[c]omplaints plead nothing more than that the Picower
Defendants traded on their own BLMIS accounts, knowing that such
'trades' were fraudulent, and then withdrew the 'proceeds' of

                                    6

such falsified transactions from BLMIS." Id. (emphasis in
original) (quoting A&G Goldman P'ship v. Picard (In re Bernard
L. Madoff Inv. Secs., LLC), No. 12cv6109, 2013 WL 5511027, at *7
(S.D.N.Y. Sept. 30, 2013)).

Ultimately, the Court of Appeals held that the Florida
Actions were derivative of the Trustee's claims against the
Picower defendants, because although they alleged different
legal claims and sought different types of damages, the Fox and
Marshall complaints alleged "nothing more than steps necessary
to effect the Picower defendants' fraudulent withdrawals of
money from BLMIS, instead of 'particularized' conduct directed
at BLMIS customers." Id. at 84. As an example of
"particularized" actions that were lacking, the Court noted that
the appellants did not allege that "the Picower defendants made
any misrepresentations to appellants." Id. at 93. Finally, the
Court of Appeals noted that it was affirming "without prejudice
to appellants seeking leave to amend their complaints," and
stated:

> There is conceivably some particularized conspiracy claim
> appellants could assert that would not be derivative of
> those asserted by the Trustee. That question, however, is
> not properly before us, and is a question in the first
> instance for the United States District Court for the
> Southern District of Florida.

Id. at 94.

7

Less than a month after the Court of Appeals' decision, on
February 5, 2014, appellants Fox and Marshall, together with
appellants Marsha Peshkin and Russell Oasis, moved in the
Florida District Court to re-open the Fox action, and for leave
to file a Second Amended Complaint (the "New Fox Complaint").
See Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Secs.
LLC ("Injunction Decision"), 511 B.R. 375, 383 (Bankr. S.D.N.Y.
2014).  The New Fox Complaint asserts a Section 20(a) claim, a
Federal RICO claim, a claim under the Florida Civil Remedies for
Criminal Practices Act, Chapter 772 of the Florida Statutes (the
"Florida RICO Claim"), and claims under Florida common law.  See
Murphy Decl. Ex. B (New Fox Complaint).  Plaintiffs Fox and
Oasis make their claims on behalf of "net winners"—BLMIS
customers who withdrew more money than they deposited with BLMIS
over the span of their participation in the BLMIS Discretionary
Trading Program-and plaintiffs Marshall and Peshikin seek to
represent "net losers"—BLMIS customers who withdrew less money
than they deposited with BLMIS.[1]  New Fox Compl. ¶¶ 8-11.  The
New Fox Complaint removes all citations to the Trustee's
complaint in the New York Action, and adds allegations that the

---

[1] As explained in this Court's previous decision, the Trustee's method of
calculating each customer's *pro rata* share of the BLMIS property, or their
net equity, entitles "net losers" to receive all of their principal
investments before "net winners" receive any compensation for the fictitious
profits they believed they had made.  The Court of Appeals has affirmed this
method of reimbursement.  See In re Bernard L. Madoff Inv. Secs. LLC, 654
F.3d 229, 235 (2d Cir. 2011).

Picower defendants controlled the BLMIS investment scheme, and

that Picower caused BLMIS to make misrepresentations to

customers in order to induce them into investing with BLMIS, so

that Picower could make more fraudulent gains from the BLMIS

scheme.  New Fox Compl. ¶¶ 46-56.

    On February 18, 2014, the Picower defendants sought an

immediate stay of the action before the Florida district court.

Injunction Decision, 511 B.R. at 383.  In their motion, they

included a letter from the Trustee stating his intention to file

an injunction motion in the bankruptcy court.  Id.  The Florida

district court ultimately stayed the proceedings in that court,

and denied the plaintiffs' request for an emergency hearing on

their cross-motion to allow them to proceed in the Florida

district court, after the Trustee had filed an injunction motion

in the bankruptcy court.  Id.  The Florida district court

stated:

> The Court declines to conduct an emergency hearing on the
> question of whether to enjoin the New York action.  Rather,
> this Court defers to the Bankruptcy Court for the Southern
> District of New York for a ruling on Picard's motion to
> enjoin the instant action.

Id. (citing the Florida district court's Order dated March 14,

2014).  The plaintiffs filed a notice of appeal, and moved

before the Court of Appeals for the Eleventh Circuit to expedite

the appeal and for an injunction pending appeal.  Id.  On May 7,

2014, the Eleventh Circuit Court of Appeals denied both motions.
Id. at 383-84.[2]

On June 23, 2014, the bankruptcy court granted the
Trustee's motion to enjoin the Fox Plaintiffs from prosecuting
the New Fox Complaint in the Florida Actions.   Id. at 394-95.[3]
The court held that the New Fox Complaint did not contain "any
particularized allegation that the Picower Defendants
participated in the preparation of any financial information
sent to the proposed class members or directed BLMIS to send
false information to the customers."   Id. at 394. The court
found the new allegations as to the Picower defendants'
misrepresentations to BLMIS customers to be "wholly conclusory,"
and concluded that the appellants were attempting to "plead
around" the permanent injunction by attaching new legal claims
to allegations that were derivative of the Trustee's action.
Id. at 394-95.[4]

---

[2] After the bankruptcy court granted the Trustee's motion to enjoin the filing
of the New Fox Complaint, the Eleventh Circuit Court of Appeals dismissed the
appeal as moot.
[3] The Court also granted the Trustee's motion to enjoin the proposed amended
class action complaint which plaintiffs Pamela Goldman and A&G Goldman
Partnership (collectively, the "Goldman Plaintiffs") sought to file in the
Florida district court.   Id. at 393.  The Goldman Plaintiffs initially
appealed from that decision, but subsequently withdrew their appeal and filed
another amended complaint in the Florida district court.  The Trustee moved
to enjoin that complaint as well, and the Trustee's motion is currently
pending before the bankruptcy court.  See Picard v. Goldman (In re Bernard L.
Madoff), Adv. Pro. No. 1402407 (Bankr. S.D.N.Y. 2014).
[4] Because the bankruptcy court found that the New Fox Complaint violated the
permanent injunction, it declined to reach the question of whether the New
Fox Complaint violated the automatic stay.  Id. at 395.

On appeal, the appellants principally argue that (1) by
acting on the Trustee's injunction motion, the bankruptcy court
violated the directions of the Court of Appeals in Marshall
which stated that whether there is "some particularized
conspiracy claim" that the appellants could bring against the
Picower defendants "is a question in the first instance for the
United States District Court for the Southern District of
Florida," 740 F.3d at 94; and (2) the claims in the New Fox
Complaint allege particularized injuries traceable to the
Picower defendants and thus are independent claims that they may
permissibly bring against the Picower defendants.

A district court reviews a bankruptcy court's findings of
fact for clear error and its legal conclusions de novo. See In
re Bell, 225 F.3d 203, 209 (2d Cir. 2000); In re Metaldyne
Corp., 421 B.R. 620, 624 (S.D.N.Y. 2009).

### II.

As an initial matter, the appellants argue that the
bankruptcy court violated the mandate from the Second Circuit
Court of Appeals by exercising jurisdiction over the Trustee's
motion and enjoining the New Fox Complaint. They contend that
when the Court of Appeals stated in Marshall that whether the
appellants could assert claims that were not derivative of the
Trustee's claims was a "question in the first instance" for the

11

Florida District Court, 740 F.3d at 94, the Court reserved that
question for the Florida district court alone.

    This argument is without merit.  In making the statement on
which the appellants rely, the Court of Appeals noted that a
sufficiently particularized non-derivative claim was not
"properly before" it.  Id.  Any discussion by the Court of what
such a claim could "conceivably" look like would have been
strictly hypothetical.  Id.  Therefore, the Court made clear
that the appellants should seek to file any amended complaint in
the court where its claims were pending, the United States
District Court for the Southern District of Florida.  The Court
of Appeals did not state, in its January 13 Opinion or the
Mandate issued on February 5, that only the Florida district
court could consider whether the appellants had stated non-
derivative claims.  As the bankruptcy court properly found, the
Court of Appeals did nothing to disturb the bankruptcy court's
jurisdiction to interpret its own orders, including the
permanent injunction issued as part of the Trustee's settlement
with the Picower defendants.  See Travelers Indem. Co. v.
Bailey, 557 U.S. 137, 151 (2009) (stating that "the Bankruptcy
Court plainly had jurisdiction to interpret and enforce its own
prior orders," including an injunction it had issued).

    In any event, the parties' actions in this case were
consistent with the language that the appellants quote from the

12

Case 1:14-cv-08795-JGK    Document 34    Filed 05/11/15    Page 15 of 24

Court of Appeals' decision in Marshall.  The appellants sought
to file the New Fox Complaint in the Florida district court in
the first instance, and that court decided to stay the action so
that the bankruptcy court could determine whether the Complaint
violated its own prior injunction.  See Injunction Decision, 511
B.R. at 383.  The appellants thus availed themselves of both the
Florida district court and the Eleventh Circuit Court of Appeals
before the bankruptcy court issued its decision.

Accordingly, the bankruptcy court appropriately considered
the merits of the Trustee's motion to enjoin the appellants'
claims as derivative of the Trustee's claims in violation of the
permanent injunction.

### III.

The Court of Appeals has defined "derivative claims" in the
context of a bankruptcy as "ones that 'arise from harm done to
the estate' and that 'seek relief against third parties that
pushed the debtor into bankruptcy.'"  Marshall, 740 F.3d at 89
(quoting Picard v. JPMorgan Chase & Co. (In re Bernard L. Madoff
Inv. Secs. LLC), 721 F.3d 54, 70 (2d Cir. 2013) (brackets
omitted)).  "While a derivative injury is based upon 'a
secondary effect from harm done to the debtor,' an injury is
said to be 'particularized' when it can be 'directly traced to
the third party's conduct.'"  Id. (quoting St. Paul Fire &
Marine Ins. Co. v. PepsiCo, Inc., 884 F.2d 688, 704 (2d Cir.

13

1989) (brackets omitted)). Although the same factual
allegations may give rise to both derivative and independent
claims, appellants may not state independent claims merely by
asserting new legal claims or seeking different forms of relief
than the Trustee. Id. at 91-93. Rather, courts should "inquire
into the factual origins of the injury" and the "nature of the
legal claims asserted." Id. at 89 (citing Johns-Manville Corp.
v. Chubb Indem. Ins. Co. (In re Johns-Manville Corp.) ("Manville
III"), 517 F.3d 52, 67 (2d Cir. 2008)).

The appellants argue that the claims they have added in the
New Fox Complaint, principally the Section 20(a) claim, allege
particularized injuries to themselves and others similarly
situated and thus are independent from the Trustee's claims
against the Picower defendants. The Section 20(a) claim alleges
that BLMIS committed a primary violation of § 10(b) of the
Exchange Act, and that the Picower defendants controlled BLMIS
and participated in convincing additional customers to invest in
BLMIS by inducing BLMIS's misleading statements to customers.
See New Fox Compl. ¶¶ 109-20.

The Goldman plaintiffs, who are also parties that sought to
file class actions against the Picowers, had brought a similar
Section 20(a) claim that an earlier bankruptcy court decision
found derivative of the Trustee's claims. In an Opinion dated
September 30, 2013, the district court affirmed the bankruptcy

14

court's order.  See Goldman, 2013 WL 5511027, at *1.  Judge

Sullivan acknowledged that a creditor's claim may be non-

derivative if "some direct legal obligation flowed from the

defendants to the creditor," and that a Section 20(a) claim

provides that direct legal obligation.  Id. at *5-6.  However,

Judge Sullivan noted that the court must analyze the factual

allegations to ensure that the claim is a "bona fide" Section

20(a) claim, or else parties could "easily plead around the

protections of the Bankruptcy Code by deceptively labeling their

claims."  Id. at *6.  The court held that the appellants had not

alleged bona fide Section 20(a) claims because the only

substantive factual allegations against the Picower defendants

pertained to their fraudulent withdrawals from their BLMIS

accounts, the same subject matter as the Trustee's claims.  Id.

at *6-9.  The only allegations pertaining to elements of

"control person" liability were conclusory or involved BLMIS and

not the Picower defendants.  Id.

     The appellants in this case argue that unlike the

appellants in Goldman, they have alleged a "bona fide" Section

20(a) claim against the Picower defendants.  The appellants

argue that their Section 20(a) claims "involve direct injuries

. . . based [on] their own reliance on fraudulent statements and

misrepresentations made to them."  Medkser v. Feingold, 307 F.

App'x 262, 265 (11th Cir. 2008) (holding that Section 20(a)

15

claims were non-derivative of bankruptcy trustee's claims).
However, like the plaintiffs in Goldman and unlike the
plaintiffs in Medkser, the appellants have not made
particularized allegations about any misrepresentations made by
the Picower parties or direct involvement of the Picower parties
in misrepresentations by Madoff.  In fact, the New Fox Complaint
does not provide any specific misrepresentations, and with
respect to the only misrepresentations it generally discusses—
the "inflated account values" sent by BLMIS—the allegations
regarding Picower's involvement are entirely conclusory.  New
Fox Compl. ¶¶ 51-55.  Therefore, the bankruptcy court properly
found that the allegations supporting the Section 20(a) claim
were conclusory and simply "based on the secondary effects of
the fraudulent transfers to the Picower Defendants," and thus
"inseparable from the Trustee's claim."  Injunction Decision,
511 B.R. at 394.[5]

    The appellants point to a handful of paragraphs of the New
Fox Complaint to argue that there are sufficient, particularized
allegations of Picower's direct involvement in
misrepresentations made by BLMIS.  However, the paragraphs
contain allegations similar to the control person allegations

_____

[5] The appellants argue at length that the bankruptcy court improperly treated
the Trustee's motion as a motion to dismiss and found that the appellants
Section 20(a) claim does not state a claim upon which relief can be grounded.
The bankruptcy court did no such thing.  The court's discussion of the merits
of any of the appellants' claims only related to whether they were derivative
of the Trustee's claims and could properly be enjoined.

that Judge Sullivan rejected in <u>Goldman</u> in the opinion cited

with approval by the Court of Appeals.  The portions of the New

Fox Complaint identified by the appellants, along with the rest

of the Complaint, are replete with the type of derivative

allegations that Judge Sullivan identified: (1) They allege

actions taken by the Picower defendants regarding "their *own*

BLMIS accounts," and are thus duplicative of the Trustee's

fraudulent transfer claims, 2013 WL 5511027, at *7 (emphasis in

original); <u>see</u> New Fox Compl. ¶ 44 ("[Picower] directed Madoff

. . . to document fictitious gains in the accounts of the

Picower Parties . . . ."); <u>id.</u> ¶ 47 ("[The Picower Parties]

demanded that BLMIS manufacture fictitious losses for the

Picower Parties."); (2) They make particularized factual

allegations regarding the BLMIS fraud, but the Picower

defendants are nowhere to be found, <u>see</u> <u>id.</u> ¶¶ 34-40; or (3)

They make conclusory allegations of control person liability

with no particularized factual support, <u>see</u> <u>id.</u> ¶ 46 ("Picower

fully and knowingly participated in the fraud that BLMIS

perpetrated on customers . . . and actively encouraged people to

enter into investment advisory agreements with BLMIS."); <u>id.</u> ¶

119 ("Picower directly or indirectly induced the material

misrepresentations and omissions giving rise to the securities

violations alleged herein.").  As the bankruptcy court correctly

concluded: "The New Fox Complaint does not include any

particularized allegations that Picower solicited any investor
or induced Madoff to do so.  Indeed, the Fox Plaintiffs do not
even allege that they were solicited directly or indirectly by
Picower to invest in BLMIS.  Thus the allegations in the New Fox
Complaint are wholly conclusory."  Injunction Decision, 511 B.R.
at 394.

     The appellants cite cases with examples of meritorious
Section 20(a) claims, but the descriptions of the facts alleged
in those cases present a telling contrast with the paucity of
specifics in the New Fox Complaint.  For example, the appellants
cite In re Global Crossing, Ltd., 322 F. Supp. 2d 319 (S.D.N.Y.
2004), but the court in that case made clear that the factual
allegations supporting the Section 20(a) claims were "fully
developed" and "considerably more specific" than other claims
that the court had dismissed.  Id. at 351 (holding that the
plaintiffs stated Section 20(a) claim against the defendant
because they alleged specific scenarios showing "actual control
and culpable participation" by the defendant).  In another case
relied upon by the appellants, the court lists several
paragraphs of specific facts showing that the defendant acted
with "severe recklessness."  See In re Sunbeam Secs. Litig., 89
F. Supp. 2d 1326, 1344-45 (S.D. Fla. 1999).  In this case, the
appellants have alleged no particularized actions on the part of
the Picower defendants.  The purpose of this comparison is not

18

to opine on whether appellants' Section 20(a) claim would
survive a motion to dismiss, but rather to make clear that any
allegations purporting to show an injury directly traceable to
the Picower defendants' conduct are too conclusory to present a
"bona fide" claim independent from the Trustee's action.  See
Goldman, 2013 WL 5511027, at *9.

     The appellants have offered little explanation for how the
rest of the claims in the New Fox Complaint are independent from
the Trustee's claims, and indeed, the bankruptcy court was
plainly correct in finding those claims to be derivative.  See
Injunction Decision, 511 B.R. at 394-95.  None of the Federal
RICO claims and claims under Florida state law in the New Fox
Complaint allege particularized injuries directly traceable to
the Picowers' conduct.  See New Fox Compl. ¶¶ 123-93.
Accordingly, Counts Two through Six of the New Fox Complaint are
also derivative of the Trustee's claims against the Picower
defendants.

     In sum, the appellants seek to bring claims based on legal
theories that Judge Sullivan in Goldman and the Second Circuit
Court of Appeals in Marshall explained could qualify
theoretically as independent claims.  However, the appellants
have merely repackaged the same facts underlying the Trustee's
claims without any new particularized injuries of the appellants
that are directly traceable to the Picower defendants.  Thus,

19

all of the claims in the New Fox Complaint "impermissibly
attempt to 'plead around' the bankruptcy court's injunction
barring all 'derivative claims,'" <u>Marshall</u>, 740 F.3d at 96, and
the bankruptcy court properly granted the Trustee's motion to
enjoin the filing of the New Fox Complaint in the Florida
district court.[6]

    Accordingly, the bankruptcy court's June 23 Order is
**affirmed.**

---

[6] The Trustee argues that the claims in the New Fox Complaint violate the
automatic stay provisions of 11 U.S.C. § 362(a)(3).  The bankruptcy court
found it unnecessary to reach this question in light of its holding that the
New Fox Complaint violates the permanent injunction, and this Court agrees.

**CONCLUSION**

The Court has considered all of the arguments raised by the parties. To the extent not specifically addressed, the arguments are either moot or without merit.

The bankruptcy court's Order enjoining the appellants from filing the New Fox Complaint in the United States District Court for the Southern District of Florida is **AFFIRMED.**

**This Opinion and Order finally disposes of the above captioned appeal.**

**The Clerk is directed to close this case and to close any open motions.**

SO ORDERED.

Dated:     New York, New York
           May 11, 2015            _____/s/_____
                                        John G. Koeltl
                                  United States District Judge

21