**Baker & Hostetler LLP**

45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Nicholas J. Cremona
Seanna R. Brown
Amy E. Vanderwal

Hearing Date: June 24, 2015
Time:  10:00 AM

Objections Due: June 10, 2015
Time: 4:00 PM

*Attorneys for Irving H. Picard, Trustee for the*
*Substantively Consolidated SIPA Liquidation of*
*Bernard L. Madoff Investment Securities LLC*
*and Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>    Plaintiff,<br><br>  v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>    Defendant. | Adv. Pro. No. 08-01789 (SMB)<br><br>SIPA Liquidation<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>    Debtor. | |

**AMENDED MOTION FOR ORDER ESTABLISHING SCHEDULE FOR**
**LIMITED DISCOVERY AND BRIEFING ON PROFIT WITHDRAWAL ISSUE**

Irving H. Picard, trustee ("Trustee") for the substantively consolidated liquidation of the

business of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities

Investor Protection Act, 15 U.S.C. § 78aaa *et seq.* ("SIPA"), and the estate of Bernard L. Madoff

("Madoff") (collectively, "Debtor"), by and through his undersigned counsel, hereby submits this

Amended Motion (the "Amended Scheduling Motion") for entry of an order establishing a

schedule for litigation of the profit withdrawal issue ("Profit Withdrawal Issue") and to set a

hearing date to adjudicate the Trustee's treatment of Profit Withdrawal Transactions (as defined

below).

## **PRELIMINARY STATEMENT**

1.      In this SIPA liquidation, the Trustee determined the net equity of customer claims

under SIPA using the Net Investment Method, which was approved by this Court and affirmed

by the Second Circuit.  *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re*

*Bernard L. Madoff Inv. Sec. LLC)*, 424 B.R. 122 (Bankr. S.D.N.Y. 2010); *In re Bernard L.*

*Madoff Inv. Sec. LLC*, 654 F.3d 229 (2d Cir. 2011), *reh'g and reh'g en banc den*. (2d Cir. Nov.

08, 2011), *cert. dismissed*, 132 S. Ct. 2712 (2012), *cert. den*., 2012 WL 396489, 2012 WL

425188 (Jun. 25, 2012).

2.      To calculate net equity claims, the Trustee credited the monies that customers

deposited into their BLMIS accounts and deducted amounts they withdrew from their BLMIS

accounts.  Thus, the Net Investment Method requires an analysis of the "cash in/cash out"

transactions as reflected on the BLMIS customer statements and maintained as part of BLMIS's

books and records.

3.      BLMIS customer statements identified "transaction types" and "transaction

descriptions."  BLMIS used several different transaction types, including "PW" for profit

withdrawal, "CW" for cash withdrawal, and "JRNL" for journal entries.  These three transaction

types are relevant to this Amended Motion.  Where BLMIS customer statements indicated a

"PW" transaction type, the transaction description field generally contained one or more of the words "CHECK," "DIVIDEND," or "INTEREST," sometimes following or preceding a company name, for example, "CHECK VIACOM."  During his review of the BLMIS books and records, the Trustee determined that certain transactions had a similar transaction description to those transactions coded as "PW" transaction types but were coded instead as "CW" or "JRNL." This Amended Motion proposes addressing these variations together, collectively referred to as the "Profit Withdrawal Transactions."

4.     For purposes of determining net equity, consistent with the books and records of BLMIS, the Trustee treated Profit Withdrawal Transactions as cash withdrawals, reducing a customer's net equity claim.

5.     While the Trustee was briefing the separate issue of the treatment of inter-account transfers (the "Inter-Account Transfer Motion"), one claimant, Mr. Aaron Blecker ("Blecker") filed an objection to the Trustee's treatment of certain Profit Withdrawal Transactions—an issue unrelated to the Inter-Account Transfer Motion.  *See* Customers' Memorandum of Law in Opposition to the Trustee's Inter-Account Transfer Motion, ECF No. 6708.  Mr. Blecker asserted that the Trustee improperly calculated net equity by treating certain Profit Withdrawal Transactions, reflected on his BLMIS customer statements, as cash withdrawals.  Mr. Blecker claimed that he did not receive checks from BLMIS for any of these Profit Withdrawal Transactions, but instead claimed that these checks were written out and sent to "various Fortune 500 companies."  *Id*. at 4.   Mr. Blecker and certain other claimants also raised the Profit Withdrawal Issue in claims objections filed with the Trustee.  ECF Nos. 961, 1843, 2273, 2383, 2496, 2512.

3

6.      This Court upheld the Trustee's treatment of inter-account transfers and its opinion does not specifically address the Profit Withdrawal Issue. *See* Order Affirming Application of the Trustee's Inter-Account Method to the Determination of Transfers Between BLMIS Accounts, ECF No. 8857, *appeal docketed*, No. 15-cv-1151 (PAE) (S.D.N.Y. Feb. 18, 2015).

7.      Because Profit Withdrawal Transactions occurred in numerous BLMIS accounts, the Trustee sought to institute an omnibus proceeding that would permit the Trustee, the Securities Investor Protection Corporation ("SIPC"), claimants, and defendants in avoidance actions to be heard on the Profit Withdrawal Issue.  To that end, the Trustee filed a Motion for Order Establishing Schedule for Limited Discovery and Briefing on Profit Withdrawal Issue, (the "Initial Profit Withdrawal Scheduling Motion"), ECF No. 9357.  One objection was filed to the Trustee's Motion on March 18, 2015.  ECF No. 9507.  The Trustee and certain other parties (the "Defense Group")[1] engaged in discussions in an effort to resolve informal objections to the Motion.  Following those discussions, the Trustee proposed modified procedures for litigating the Profit Withdrawal Issue, proposed herein, to which the Defense Group had no objections.

## BACKGROUND

8.      On December 11, 2008, the Securities and Exchange Commission ("SEC") filed a Complaint in the United States District Court for the Southern District of New York against defendants Madoff and BLMIS, No. 08-CV-10791 (LLS) (the "Civil Case").

---

[1] These parties are represented by Loeb & Loeb LLP; Dentons USA LLP; Kleinberg, Kaplan, Woff & Cohen, P.C.; Milberg LLP; Pryor Cashman LLP; Frejka PLLC; Bryan Cave LLP; Goodwin Proctor LLP; Schulte Roth & Zabel LLP; K&L Gates LLP; Seeger Weiss LLP; and Robbins Kaplan LLP.

9.      On December 15, 2008, pursuant to section 78eee(a)(4)(A) of the Securities

Investor Protection Act, 15 U.S.C. § 78aaa et seq. ("SIPA"),[2] the SEC consented to a

combination of the Civil Case with an application filed by SIPC.  Thereafter, pursuant to section

78eee(a)(3) of SIPA, SIPC filed an application in the District Court alleging, inter alia, that the

Debtor was not able to meet its obligations to securities customers as they came due and,

accordingly, its customers needed the protection afforded by SIPA.

10.     On December 15, 2008, the District Court entered an order pursuant to SIPA

which, in pertinent part:

>           (a)     appointed Irving H. Picard as trustee for the liquidation of
>           the business of BLMIS, pursuant to section 78eee(b)(3) of SIPA;
>
>           (b)     appointed Baker & Hostetler LLP as counsel to the Trustee
>           pursuant to section 78eee(b)(3) of SIPA;
>
>           (c)     removed the case to this Bankruptcy Court pursuant to
>           section 78eee(b)(4) of SIPA; and
>
>           (d)     authorized the Trustee to take immediate possession of the
>           property of the debtor, wherever located.

11.     Under SIPA, the Trustee is responsible for determining claims, recovering and

distributing customer property to BLMIS customers, and liquidating assets of the Debtor for the

benefit of the estate and its creditors.

12.     On December 23, 2008, this Court entered an order (the "Claims Procedures

Order") that, inter alia, specified the procedures for the filing, determination, and adjudication of

customer claims in this liquidation proceeding.

13.     The Claims Procedures Order authorizes the Trustee to determine claims,

provides claimants with the right to oppose the Trustee's determinations of their claims by filing

---

[2] Subsequent references to SIPA shall omit "15 U.S.C."

their objections with this Court, and directs the Trustee to request a hearing date for the objections and notify the objecting claimants thereof.

14.    Pursuant to section 78*lll*(11) of SIPA, the term "net equity" means the dollar amount of the account or accounts of a customer, to be determined by—(A) calculating the sum which would have been owed by the debtor to such customer if the debtor had liquidated, by sale or purchase on the filing date, all securities positions of such customer (other than customer name securities reclaimed by such customer); minus (B) any indebtedness of such customer to the debtor on the filing date[.]." Furthermore, section 78fff-2(b) of SIPA provides that the Trustee should make payments to customers based on "net equity" insofar as the amount owed to the customer is "ascertainable from the books and records of the debtor or [is] otherwise established to the satisfaction of the trustee."

15.    On this basis, the Trustee determined that net equity claims should be calculated based upon the monies that customers deposited into their BLMIS accounts, minus any amounts they withdrew from their BLMIS accounts (the "Net Investment Method").  Some claimants argued that the Trustee was required to calculate net equity using the amounts shown on the November 30, 2008 BLMIS customer statements.

16.    The Trustee's use of the Net Investment Method was upheld by this Court, reported at 424 B.R. 122 (Bankr. S.D.N.Y. 2010).  This Court's decision was affirmed by the United States Court of Appeals for the Second Circuit, reported at 654 F.3d 229, 241 (2d Cir. 2011).  On June 25, 2012, the United States Supreme Court denied certiorari, and thus the Trustee's use of the Net Investment Method has been upheld.

17.    The Trustee's investigation has revealed that at various points during the fraud and particularly in the years preceding the 2000s, Madoff falsely represented that he was paying

profits or dividends to customers.  As part of his fraudulent scheme, Madoff made this

representation sending monies in the form of the Profit Withdrawal Transactions, as reflected on

BLMIS customer statements.  There were no "profits," however, because there was no trading.

These withdrawals were merely funds sent by BLMIS to its customers in furtherance of the

scheme.

18.     The Trustee has determined each BLMIS accounts' net equity based on the

BLMIS books and records.  As described in the briefing on the Net Investment Method, for the

time period of April 1, 1981 through December 11, 2008, the Trustee compiled chronological

listings of all cash and principal transactions for every BLMIS account from the BLMIS

customer statements.  The Trustee reconciled cash deposit and withdrawal transactions reflected

on all BLMIS customer statements during the time period of December 1998 to December 2008

to the available bank records for the same time period.  That reconciliation process showed that

99% of the cash deposit and withdrawal transactions reflected on all BLMIS customer statements

tied out to third party bank records.  The remaining 1% consisted primarily of withdrawal

transactions for which cancelled checks were not available.

19.     Based on the Trustee's review of the BLMIS books and records, including third

party bank records, the Trustee determined that the Profit Withdrawal Transactions should be

treated as cash withdrawals for purposes of determining net equity.  For example, the Trustee

confirmed that, for the period for which he has bank records, where the transaction type "PW"

appears on a BLMIS customer statement and a company name following "CHECK" is listed in

the transaction description field, those checks were made out to and cashed by customers.

20.     The BLMIS accounts in which the customer statements reflect "PW" (profit

withdrawals) or other similar transactions (a "Direct Eligible Account") are identified on Exhibit

1 attached hereto.   The BLMIS accounts that have one or more inter-account transfers from

accounts listed on Exhibit 1 (an "Indirect Eligible Account"), or from other Indirect Eligible

Accounts, are identified on Exhibit 2 attached hereto.  BLMIS accounts other than those

identified on Exhibits 1 and 2 are not impacted by the Profit Withdrawal Issue.

### THE PROFIT WITHDRAWAL SCHEDULING MOTION

21.    On February 25, 2015 the Trustee filed the Initial Profit Withdrawal Scheduling

Motion seeking the entry of an order setting a schedule for discovery and briefing on the Profit

Withdrawal Issue.  *See* Initial Profit Withdrawal Scheduling Motion, ECF No. 9537.  The

Trustee submitted a proposed order that covered fact and expert discovery, among other things.

The hearing on the Profit Withdrawal Motion was originally scheduled for April 28, 2015, with

an objection deadline of March 18, 2015.

22.    On March 16, 2015, Fiterman Investment Fund, Verdeway Investment Partners

LLC, Steven Fiterman and Susan Fiterman, represented by Loeb & Loeb, requested an extension

of time to file an objection to the Initial Profit Withdrawal Motion and to extend the Trustee's

time to reply to that objection, which request was submitted to Chambers by electronic mail.

23.    On March 18, 2015, a group of claimants represented by Becker & Poliakoff LLP

filed an objection to the Initial Profit Withdrawal Motion.  ECF No. 9507.  No other objections

were filed.

24.    On April 1, 2015, the Trustee requested to (i) modify the deadlines for the filing

of objections and replies and (ii) reschedule the hearing on the Profit Withdrawal Motion, as

agreed by the Trustee and the Defense Group.  ECF No. 9723.  On the same date, the Court

granted the request.  Accordingly, the deadline for the Defense Group to object was extended to

April 22, 2015; the deadline for the Trustee and SIPC to reply was extended to May 13, 2015;

and the hearing was adjourned until May 20, 2015 at 10:00 am.  ECF No. 9737.

25.    The Trustee and the Defense Group engaged in several meet and confers to

resolve informal objections to the procedures proposed in the Initial Profit Withdrawal

Scheduling Motion.  Following those discussions, the Trustee determined that proposing revised

procedures would be in the best interests of all parties.

26.    The amended procedures contemplate that only those accountholders who filed a

customer claim prior to the July 2, 2009 bar date in this case will be permitted to participate in

the Profit Withdrawal Motion.   The amended procedures further provide that the Trustee will

file his substantive motion and any supporting declarations before discovery commences.  The

parties will then proceed to fact discovery, during which time any affected claimants can

determine whether they would like to participate in further litigation on the Profit Withdrawal

Issue ("Participating Claimants").  The parties that determine they wish to participate further in

the Profit Withdrawal litigation will then proceed through expert disclosures and discovery.

Following the close of discovery, Participating Claimants may submit an opposition to the

Trustee's Motion and any supporting material.  The Trustee and SIPC may submit replies.  To

the extent that the Trustee's or SIPC's replies address any issues that arose during discovery or

following the submission of the Trustee's Motion, Participating Claimants may submit a sur-

reply to address those issues.

27.    The procedures outlined in the preceding paragraph contrast to the original

proposed procedures in several ways.  First, the Initial Profit Withdrawal Scheduling Motion

anticipated that both avoidance defendants and claimants would participate in the Profit

Withdrawal Issue.  The proposed order now provides that litigation of the Profit Withdrawal

Issue will be limited to those parties who filed a claim in this proceeding prior to the July 2, 2009 bar date, *i.e.*, claimants. Avoidance action defendants who did not file claims will not be able to participate. To the extent that Profit Withdrawal issues arise in avoidance litigations, those parties may litigate it in their individual cases.

28.    The proposed amended procedures also provide that the Trustee will set forth the relief he seeks and all facts, data and legal theories in support prior to the start of discovery. SIPC may also file a brief at that time. This will permit claimants to review information in possession of the Trustee on the Profit Withdrawal Issue prior to determining whether they want to participate.[3] Changes have also been made to the discovery schedule and expert disclosures, in order to ensure that only those parties that wish to litigate the Profit Withdrawal Issue to its conclusion will bear the costs of those efforts.

29.    The Defense Group does not oppose entry of the proposed order submitted herewith containing the modified procedures and a proposed schedule for litigation of the Profit Withdrawal Issue.

## NOTICE

30.    Notice of this Amended Motion will be provided by U.S. Mail, postage prepaid or email to (i) all parties listed on Exhibits 1 and 2 to this Amended Motion; (ii) all parties on the Master Service List; (iii) the SEC; (iv) the IRS; (v) the United States Attorney for the Southern District of New York; and (vi) SIPC, pursuant to the Order Establishing Notice Procedures (ECF No. 4560) (collectively, the "Notice Parties"). The Trustee submits that other or further notice is required. In addition, all of the Trustee's pleadings filed in accordance with the schedule outlined above will be posted to the Trustee's website www.madofftrustee.com and are accessible, without charge, from that site.

---

[3] Nothing in the revised procedures requires any claimant to participate in the Profit Withdrawal litigation.

**WHEREFORE**, the Trustee respectfully requests that the Court: (a) enter an order substantially in the form attached to the Notice of Motion as Exhibit A, granting the relief requested herein; and (b) grant such other and further relief as the Court deems proper.

Dated: New York, New York
       May 19, 2015

Respectfully submitted,

BAKER & HOSTETLER LLP

By:    */s/ David J. Sheehan*
       David J. Sheehan
       dsheehan@bakerlaw.com
       Nicholas J. Cremona
       ncremona@bakerlaw.com
       Seanna R. Brown
       sbrown@bakerlaw.com
       Amy E. Vanderwal
       avanderwal@bakerlaw.com
       45 Rockefeller Plaza
       14th Floor
       New York, NY  10111
       Telephone:   212.589.4200
       Facsimile:   212.589.4201

       *Attorneys for Irving H. Picard, Trustee
       for the Substantively Consolidated SIPA
       Liquidation of Bernard L. Madoff
       Investment Securities LLC and Bernard
       L. Madoff*