**EXHIBIT "A"**

**AGREEMENT**

**EXECUTION COPY**

**AGREEMENT**

This Agreement, dated as of May 19, 2015 ("Agreement"), is made by and between Irving H. Picard, in his capacity as the trustee ("Trustee") for the liquidation proceedings under the Securities Investor Protection Act of 1970, as amended, 15 U.S.C. § 78aaa *et seq.* ("SIPA"), of Bernard L. Madoff Investment Securities LLC ("BLMIS") and the substantively consolidated Chapter 7 case pending before the United States Bankruptcy Court for the Southern District Court of New York (the "Bankruptcy Court") of Bernard L. Madoff ("Madoff") and Bart M. Schwartz as the appointed Receiver of Ariel Fund Limited ("Ariel") and Gabriel Capital, L.P. ("Gabriel") ("Receiver").[1]    The Trustee, Ariel and Gabriel (including their Receiver), collectively shall be referred to herein as the "Parties."

**BACKGROUND**

A.    BLMIS and its predecessors were registered broker-dealers and members of the Securities Investor Protection Corporation ("SIPC").

B.    On December 11, 2008 (the "Filing Date"), the Securities and Exchange Commission (the "SEC") filed a complaint in the United States District Court for the Southern District of New York (the "District Court") against BLMIS and Madoff.

C.    On December 15, 2008, the District Court entered an order under SIPA, which, in pertinent part, appointed the Trustee for the liquidation of the business of BLMIS under section 5(b)(3) of SIPA and removed the case to the Bankruptcy Court under section 5(b)(4) of SIPA, where it is pending as Case No. 08-01789 (SMB) (the "SIPA Proceeding"). The Trustee is duly qualified to serve and act on behalf of the BLMIS estate (the "BLMIS Estate"). By Order dated June 9, 2009, the Chapter 7 estate of Madoff was substantively consolidated with the BLMIS Estate.

D.    Ariel maintained an account with BLMIS, designated account no. 1FR070 ("Ariel Account"), which was opened in or around August 2000. Over the life of the Ariel Account, Ariel withdrew Seventeen Million Nine Hundred Ninety-Nine Thousand Seven Hundred Forty-Two Dollars ($17,999,742.00) from its BLMIS account (the "Ariel Transfers").

E.    Gabriel maintained an account with BLMIS, designated account no. 1G0321 ("Gabriel Account"), which was opened in or around August 2000. Over the life of the Gabriel Account, Gabriel withdrew Seventeen Million Four Hundred Thousand Dollars ($17,400,000.00) from its BLMIS account (the "Gabriel Transfers").

F.    On or about March 4, 2009, Ariel filed a customer claim with the Trustee, which the Trustee has designated as Claim No. 005652 ("Ariel Customer Claim"). The Ariel Customer

---

[1] The Receiver was appointed on June 10, 2009 by a Stipulation and Order entered in the matter captioned *Cuomo v. J. Ezra Merkin and Gabriel Capital Corporation*, Index No. 450879/2009, Supreme Court of the State of New York, County of New York ("N.Y.A.G. Action").

Claim is included as Attachment A to this Agreement. The Ariel Customer Claim asserts that Ariel is entitled to a claim for money balances as of December 11, 2008. The Parties agree that Ariel's net equity equals One Hundred Seventy-Four Million One Hundred Seven Thousand Fifty-Four and 52/100 Dollars ($174,107,054.52) ("Ariel Net Equity").

G.      On or about March 3, 2009, Gabriel filed a customer claim with the Trustee, which the Trustee has designated as Claim No. 005868 ("Gabriel Customer Claim"). The Gabriel Customer Claim is included as Attachment B to this Agreement. The Gabriel Customer Claim asserts that Gabriel is entitled to a claim for money balances as of December 11, 2008. The Parties agree that Gabriel's net equity equals One Hundred Sixty-Three Million Seven Hundred Thousand Dollars ($163,700,000.00) ("Gabriel Net Equity").

H.      On August 30, 2013, the Trustee filed the Third Amended Complaint ("Third Amended Complaint") in an adversary proceeding captioned *Picard v. J. Ezra Merkin, et al.*, Adv. Pro. No. 09-1182 (SMB) (the "Adversary Proceeding"). In the Third Amended Complaint, the Trustee asserted claims to, among other things, avoid and recover the Ariel Transfers and Gabriel Transfers under 11 U.S.C. §§ 544, 547, 548, 550, or 551, SIPA § 78fff-(2)(c)(3), and the New York Debtor and Creditor Law §§ 270–281 ("Avoiding Power Claims"). The Trustee also asserted claims to disallow the Ariel Customer Claim and the Gabriel Customer Claim, pursuant to 11 U.S.C. § 502(d), and to equitably subordinate those claims, pursuant to 11 U.S.C. §§ 510(c) and 105(a) ("Disallowance and Subordination Claims").

I.      On August 12, 2014, the Bankruptcy Court issued a memorandum decision, dismissing some of the Trustee's Avoiding Power Claims and Disallowance and Subordination Claims (the "Motion to Dismiss Decision").

J.      On February 5, 2015, Ariel and Gabriel filed the Answer of Bart M. Schwartz, as Receiver of Defendants Gabriel Capital, L.P. and Ariel Fund Limited, to the Trustee's Third Amended Complaint.

## AGREEMENT

1.      Payments to Trustee. At the Closing (as defined in paragraph 11), Ariel shall pay or cause to be paid to the Trustee the sum of Seventeen Million, Nine Hundred Ninety-Nine Thousand, Seven Hundred Forty-Two Dollars ($17,999,742.00) ("Ariel Settlement Payment") in full and final settlement and satisfaction of all Avoiding Power Claims, Disallowance and Subordination Claims, and any other claims of the Trustee or the BLMIS Estate of every kind and nature whatsoever, whether known or unknown (as described in paragraph 8), that the Trustee or the BLMIS Estate may have against Ariel.

2.      At the Closing (as defined in paragraph 11), Gabriel shall pay or cause to be paid to the Trustee the sum of Seventeen Million Four Hundred Thousand Dollars ($17,400,000.00) ("Gabriel Settlement Payment") in full and final settlement and satisfaction of all Avoiding Power Claims, Disallowance and Subordination Claims, and any other claims of the Trustee or the BLMIS Estate of every kind and nature whatsoever, whether known or unknown (as described in paragraph 8), that the Trustee or the BLMIS Estate may have against Gabriel.

3.    <u>Allowance of Customer Claim</u>.  Upon the Closing (as defined in paragraph 11), the Ariel Customer Claim shall be deemed conclusively allowed pursuant to section 502 of the Bankruptcy Code and 15 U.S.C. § 78*lll*(11), equal in priority to other allowed customer claims against the BLMIS Estate, in the amount of One Hundred Seventy-Four Million One Hundred Seven Thousand Fifty-Four and 52/100 Dollars ($174,107,054.52) plus eighty-five percent (85%) of the Ariel Settlement Payment, for an aggregate allowed claim amount of One Hundred Eighty-Nine Million Four Hundred Six Thousand Eight Hundred Thirty Five and 22/100 Dollars ($189,406,835.22)  (the "<u>Ariel Allowed Claim</u>"), except that Ariel will not be entitled to receive an advance from SIPC as provided for in 15 U.S.C. § 78fff-3.  As of the date of this Agreement, the initial amount to be paid by the Trustee to Ariel allocable to the Ariel Allowed Claim in respect of a catch-up distribution is $92,434,323.72 (48.802% of the Ariel Allowed Claim).

4.    Upon the Closing (as defined in paragraph 11), the Gabriel Customer Claim shall be deemed conclusively allowed pursuant to section 502 of the Bankruptcy Code and 15 U.S.C. § 78*lll*(11), equal in priority to other allowed customer claims against the BLMIS Estate, in the amount of One Hundred Sixty-Three Million Seven Hundred Thousand Dollars ($163,700,000.00) plus eighty-five percent (85%) of the Gabriel Settlement Payment, for an aggregate allowed claim amount of One Hundred Seventy Eight Million, Four Hundred Ninety Thousand Dollars ($178,490,000.00) (the "<u>Gabriel Allowed Claim</u>"), except that Gabriel will not be entitled to receive an advance from SIPC as provided for in 15 U.S.C. § 78fff-3.  As of the date of this Agreement, the initial amount to be paid by the Trustee to Gabriel allocable to the Gabriel Allowed Claim in respect of a catch-up distribution is $87,106,698.80 (48.802% of the Gabriel Allowed Claim).

5.    Upon the Closing (as defined in paragraph 11), Ariel and/or Gabriel shall pay no distributions of cash or liquid securities to or for the benefit of J. Ezra Merkin until the settlement between the New York Attorney General and J. Ezra Merkin and Gabriel Capital Corporation in the N.Y.A.G. Action is satisfied and paid in full.  Counsel for Ariel, Gabriel, and the Receiver hereby represent and warrant that, consistent with the terms of the settlement between the New York Attorney General and J. Ezra Merkin and Gabriel Capital Corporation in the N.Y.A.G. Action, no distributions have been made from Ariel and/or Gabriel to J. Ezra Merkin, and that no future distributions will be made from Ariel and/or Gabriel to J. Ezra Merkin until the settlement between the New York Attorney General and J. Ezra Merkin and Gabriel Capital Corporation in the N.Y.A.G. Action is satisfied and paid in full.

6.    <u>Release by the Trustee</u>.  In consideration for the terms herein, except with respect to the obligations, rights, and considerations arising under this Agreement, upon the Closing (as defined in paragraph 11), the Trustee on behalf of himself, BLMIS, and its consolidated estates, shall release, acquit, and forever discharge Ariel and Gabriel, as well as Bart M. Schwartz as the appointed Receiver of Ariel and Gabriel, including their and his successors and/or assigns from any and all past, present, or future claims or causes of action (including any suit, petition, demand, or other claim in law, equity, or arbitration) and from any and all allegations of liability or damages (including any allegation of duties, debts, reckonings, contracts, controversies, agreements, promises, damages, responsibilities, covenants, or accounts), of whatever kind, nature, or description, direct or indirect, in law, equity or arbitration, absolute or contingent, in tort, contract, statutory liability, or otherwise, based on strict liability, negligence, gross negligence, fraud, breach of fiduciary duty, or otherwise (including attorneys' fees, costs, or

disbursements), known or unknown, existing as of the date of the Closing that are, have been, could have been, or might in the future be asserted by the Trustee based on, arising out of, or in any way related to Ariel's and Gabriel's relationship with BLMIS, including, without limitation, the claims against Ariel and Gabriel in the Adversary Proceeding and any other avoidance claims under Chapter 5 of Title 11 of the United States Code, except for any and all claims to enforce Ariel's and Gabriel's obligations under this Agreement.  For the avoidance of doubt, and without limiting the foregoing, the Parties agree that the Trustee's release granted herein shall extend to the reserves which currently are being maintained in the N.Y.A.G. Action in connection with the claims asserted by the Trustee in the Adversary Proceeding, but shall not in any way extend to the other defendants in the Adversary Proceeding.

7. <u>Releases by Ariel and Gabriel</u>.  In consideration for the covenants and agreements in this Agreement and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, except with respect to the obligations, rights, and considerations arising under this Agreement, upon the Closing (as defined in paragraph 11), Ariel and Gabriel hereby release, acquit, and forever discharge the Trustee and all his agents, representatives, attorneys, employees, and professionals, and BLMIS and its consolidated estate, from any and all past, present, or future claims or causes of action (including any suit, petition, demand, or other claim in law, equity, or arbitration) and from any and all allegations of liability or damages (including any allegation of duties, debts, reckonings, contracts, controversies, agreements, promises, damages, responsibilities, covenants, or accounts), of whatever kind, nature or description, direct or indirect, in law, equity, or arbitration, absolute or contingent, in tort, contract, statutory liability, or otherwise, based on strict liability, negligence, gross negligence, fraud, breach of fiduciary duty, or otherwise (including attorneys' fees, costs or, disbursements), known or unknown, existing as of the date of the Closing, based on, arising out of, or in any way related to BLMIS, except for Ariel's and Gabriel's rights to enforce the Trustee's obligations under this Agreement.  For the avoidance of doubt, nothing in this release shall release the right or claim of Ariel and Gabriel to any and all distributions they receive from (i) the forfeiture fund established by the U.S. Department of Justice and (ii) the settlement in the N.Y.A.G. Action.

8. <u>Unknown Claims</u>.  Unknown Claims shall mean any released claims pursuant to paragraphs 6 and 7 of the Agreement, as defined herein, that the Parties do not know or suspect to exist in their favor at the time of giving the release in this Agreement that if known by them, might have affected their settlement and release in this Agreement.  With respect to any and all released claims in paragraphs 6 and 7 of this Agreement, the Parties shall expressly waive or be deemed to have waived, the provisions, rights and benefits of California Civil Code section 1542 (to the extent it applies herein), which provides:

<u>A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR.</u>

The Parties expressly waive, and shall be deemed to have waived, any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, or principle of common law or foreign law, that is similar, comparable, or equivalent in effect to California Civil Code section 1542. The Parties may hereafter discover facts in addition to or different from those that they now know or believe to be true with respect to the subject matter of the Released Claims, but the Parties shall expressly have and be deemed to have fully, finally, and forever settled and released any and all Released Claims, known or unknown, suspected or unsuspected, contingent or noncontingent, whether or not concealed or hidden, that now exist or heretofore have existed, upon any theory of law or equity now existing or coming into existence in the future, including conduct that is negligent, reckless, intentional, with or without malice, or a breach of any duty, law, or rule, without regard to the subsequent discovery or existence of such different or additional facts. The Parties acknowledge and shall be deemed to have acknowledged that the foregoing waiver was separately bargained for and a key element of the settlement of which this release is a part.

9.      Dismissal of Adversary Proceedings.  As soon as practical after the Closing (as defined in paragraph 11), the Parties shall submit to the Bankruptcy Court a stipulation requesting the dismissal of the Adversary Proceeding, with prejudice, as against Ariel and Gabriel, with each party bearing its own costs, attorneys' fees, and expenses.

10.      Court Approval; Effective Date; Termination.  This Agreement is subject to, and shall become effective and binding on the Parties upon, the Bankruptcy Court's approval of this Agreement in the SIPA Proceeding by an order that is no longer subject to appeal, review, or rehearing (the "Effective Date").  The Trustee shall use his reasonable efforts to obtain approval of the Agreement in the SIPA Proceeding as promptly as practicable after the date of this Agreement.  If this Agreement has not become effective as provided in this paragraph within 360 days after the date of this Agreement (or within such additional time as mutually agreed upon by the Parties), then (a) this Agreement (other than this paragraph and paragraphs 21 and 22) shall terminate and void; (b) all of the statements, concessions, consents, and agreements contained in the Agreement (other than this paragraph) shall be void; and (c) neither the Trustee nor Ariel or Gabriel may use or rely on any such statement, concession, consent, or agreement in any public statement or litigation involving the SIPA Proceeding, or any case or proceeding relating to Ariel, Gabriel, BLMIS, or Madoff.

11.      Closing.  There shall be a closing ("Closing") within five business days after the Effective Date of this Agreement.  At the Closing simultaneously:

(a)      Ariel shall satisfy the Settlement Payment by conveying, assigning, endorsing, and transferring to the Trustee the sum of Seventeen Million, Nine Hundred Ninety-Nine Thousand, Seven Hundred Forty-Two Dollars ($17,999,742.00) from the catch-up distribution owed to Ariel under the Ariel Allowed Claim.

(b)      The Trustee shall pay Ariel the sum of Seventy-Four Million, Four Hundred Thirty-Four Thousand, Five Hundred Eighty-One and 72/100 Dollars ($74,434,581.72), consisting of the balance of the catch-up distribution owed to Ariel under the Ariel Allowed Claim pursuant to payment instructions to be provided by Ariel to the Trustee.  If at the Closing, the Trustee has made a further distribution to customers

holding allowed claims, the Trustee shall pay Ariel the additional amount owed to it based on the then distribution formula.

(c)    Gabriel shall satisfy the Settlement Payment by conveying, assigning, endorsing, and transferring to the Trustee the sum of Seventeen Million, Four Hundred Thousand Dollars ($17,400,000.00) from the catch-up distribution owed to Gabriel under the Gabriel Allowed Claim.

(d)    The Trustee shall pay Gabriel the sum of Sixty-Nine Million Seven Hundred Six Thousand Six Hundred Eighty Nine and 80/100 Dollars ($69,706,689.80), consisting of the balance of the catch-up distribution owed to Gabriel under the Gabriel Allowed Claim pursuant to payment instructions to be provided by Gabriel to the Trustee. If at the Closing, the Trustee has made a further distribution to customers holding allowed claims, the Trustee shall pay Gabriel the additional amount owed to it based on the then distribution formula.

(e)    The releases contained in paragraphs 6 and 7 shall become effective without any further action by any of the Parties.

12.    <u>Cooperation and Discovery Obligations</u>.    Ariel and Gabriel hereby agree, if requested by the Trustee, to use good faith efforts to reasonably cooperate with the Trustee in his prosecution of claims against other non-settling defendants in this Adversary Proceeding, so long as such cooperation would not, in Receiver's reasonable judgment, have an adverse effect on any of the interests of Ariel or Gabriel, its investors, and/or its shareholders.    Nothing in this Section shall in any way impair the Trustee's discovery or other rights pursuant to the Bankruptcy Code, Federal Rules of Bankruptcy Procedure or other applicable law.    Nothing in this Section shall impair Ariel and Gabriel's rights under the Bankruptcy Code, Federal Rules of Bankruptcy Procedure or other applicable law to object to such discovery.

13.    <u>Ariel's, Gabriel's and Trustee's Authority</u>.    The Receiver for Ariel and Gabriel represents and warrants to the Trustee that, as of the date hereof, he has the full power, authority, and legal right to execute and deliver, and to perform his obligations under this Agreement and has taken all necessary action to authorize the execution, delivery, and performance of his obligations under this Agreement.    The Trustee represents and warrants to Ariel and Gabriel that, as of the date hereof, and subject to the approval of the Bankruptcy Court as set forth in paragraph 10 above, he has the full power, authority, and legal right to execute and deliver, and to perform his obligations under this Agreement and has taken all necessary action to authorize the execution, delivery, and performance of his respective obligations under this Agreement. Ariel represents and warrants that it owns and controls the Ariel Customer Claim as of the date of this Agreement.    Gabriel represents and warrants that it owns and controls the Gabriel Customer Claim as of the date of this Agreement.

14.    <u>Further Assurances</u>.    The Parties shall execute and deliver any document or instrument reasonably requested by any of them after the date of this Agreement to effectuate the intent of this Agreement.

15.     <u>Entire Agreement</u>.    This Agreement constitutes the entire agreement and understanding between and among the Parties and supersedes all prior agreements, representations, and understandings concerning the subject matter hereof.

16.     <u>No Admission</u>.  This Agreement and all negotiations, statements, and proceedings in connection therewith are not, will not be argued to be, and will not be deemed to be a presumption, concession, or admission by any Party of any fault, liability, or wrongdoing whatsoever.  This Agreement and any matter relating thereto may not be offered or received in evidence or otherwise referred to in any civil, criminal, or administrative action or proceeding as evidence of any fault, liability, or wrongdoing whatsoever.

17.     <u>Amendments, Waiver</u>.  This Agreement may not be terminated, amended, or modified in any way except in a writing signed by all of the Parties.  No waiver of any provision of this Agreement shall be deemed to constitute a waiver of any other provision hereof, whether or not similar, nor shall such waiver constitute a continuing waiver.

18.     <u>Assignability</u>.    No party hereto may assign its rights under this Agreement without the prior written consent of each of the other Parties hereto, except that nothing in this Agreement shall prevent Ariel or Gabriel from assigning all or part of the respective Ariel Allowed Claim or Gabriel Allowed Claim, without the prior written consent of the Trustee, pursuant to the Bankruptcy Court's November 10, 2010 Order Establishing Procedures for the Assignment of Allowed Claims.

19.     <u>Successors Bound</u>.  This Agreement shall be binding upon and inure to the benefit of each of the Parties and their successors and permitted assigns.

20.     <u>No Third Party Beneficiary</u>.  Except as expressly provided in paragraphs 3 and 4, the Parties do not intend to confer any benefit by or under this Agreement upon any person or entity other than the Parties hereto and their respective successors and permitted assigns.

21.     <u>Applicable Law</u>.  This Agreement shall be construed and enforced in accordance with the laws of the State of New York, without regard to its conflict of laws provisions.

22.     <u>Exclusive Jurisdiction</u>.  The Parties agree that the Bankruptcy Court shall have exclusive jurisdiction over any and all disputes between or among the Parties, whether in law or equity, arising out of or relating to this Agreement, or any provision thereof, and the Parties hereby consent to and submit to the jurisdiction of the Bankruptcy Court for any such action.  In the event the BLMIS proceeding is closed by a final decree and not reopened, the Parties agree that any dispute arising out of this Agreement, or any provision thereof, may be brought in the United States District Court for the Southern District of New York or the Supreme Court of New York in New York County.

23.     <u>Captions and Rules of Construction</u>.  The captions in this Agreement are inserted only as a matter of convenience and for reference and do not define, limit, or describe the scope of this Agreement or the scope or content of any of its provisions.  Any reference in this Agreement to a paragraph is to a paragraph of this Agreement.  "Includes" and "including" are not limiting.

24. <u>Counterparts, Electronic Copy of Signatures</u>. This Agreement may be executed and delivered in any number of counterparts, each of which so executed and delivered shall be deemed to be an original and all of which shall constitute one and the same document. The Parties may evidence their execution of this Agreement by delivery to the other Parties of scanned or faxed copies of their signatures with the same effect as the delivery of an original signature.

25. <u>Negotiated Agreement</u>. This Agreement has been fully negotiated by the Parties. Each Party acknowledges and agrees that this Agreement has been drafted jointly, and the rule that ambiguities in an agreement or contract may be construed against the drafter shall not apply in the construction or interpretation of this Agreement.

26. <u>Severability</u>. In the event that any term or provision of this Agreement or any application thereof is deemed to be invalid or unenforceable, the remainder of this Agreement and any other application of such term or provision shall not be affected thereby.

27. <u>Notices</u>. Any notices under this Agreement shall be in writing, shall be effective when received and may be delivered only by hand, by overnight delivery service, by fax, or by electronic transmission to:

If to the Trustee:

Irving H. Picard
Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111
Email:  ipicard@bakerlaw.com

If to Bart M. Schwartz, Ariel
and/or Gabriel:

Bart M. Schwartz
c/o Guidepost Partners LLC
1185 Avenue of the Americas
Suite 1750
New York, NY 10036-2603
Email: BSchwartz@bartmschwartz.com

with copies to:
David J. Sheehan
Lan Hoang
Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111
Email: dsheehan@bakerlaw.com
        lhoang@bakerlaw.com

with copies to:
James C. McCarroll
Jordan W. Siev
Reed Smith LLP
599 Lexington Avenue
22nd Floor
New York, New York  10022
Email:  jmccarroll@reedsmith.com
        jsiev@reedsmith.com

*[Signature pages follow]*

8

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be executed as of the date first above written.

*Trustee for the Substantively*
*Consolidated SIPA Liquidation of*
*Bernard L. Madoff Investment Securities LLC*
*and the estate of Bernard L. Madoff*

_____
IRVING H. PICARD

Sworn to and subscribed before me
this 19th day of May, 2015

_____
Notary Public

SONYA M. GRAHAM
Notary Public, State of New York
No. 01GR6133214
Qualified in Westchester County
Commission Expires: 9/12/2017

9

**ARIEL FUND LIMITED**

_____
BART M. SCHWARTZ, RECEIVER


Sworn to and subscribed before me
this _21_ day of May, 2015


_____
Notary Public

BARBARA A. SACCENTE
Notary Public, State of New York
No. 41-5009013
Qualified in Queens County
Commission Expires __3/8/19__

**GABRIEL CAPITAL, L.P.**

_____
BART M. SCHWARTZ, RECEIVER

Sworn to and subscribed before me
this **21** day of May, 2015

_____
Notary Public

BARBARA A. SACCENTE
Notary Public, State of New York
No. 41-5009613
Qualified in Queens County
Commission Expires **5/8/19**

11

**ATTACHMENT A**

**ARIEL FUND LIMITED CUSTOMER CLAIM**

**CUSTOMER CLAIM**

Bernard L. Madoff Investment Securities LLC
Case No 08-01789-BRL
U.S. Bankruptcy Court for the Southern District of New York
Claim Number:        **005652**

## BERNARD L. MADOFF INVESTMENT SECURITIES LLC

In Liquidation

**DECEMBER 11, 2008**

RECEIVED

MAR 0 4 2009

(Please print or type)

**Name of Customer:**  Ariel Fund Limited
**Mailing Address:**  450 Park Avenue, # 3201
**City:**  New York  **State:**  NY  **Zip:**  10022
**Account No.:**  1-FR070-3-0, 1-FR070-4-0
**Taxpayer I.D. Number (Social Security No.):**  N/A

NOTE:    BEFORE COMPLETING THIS CLAIM FORM, BE SURE TO READ CAREFULLY
THE ACCOMPANYING INSTRUCTION SHEET. A SEPARATE CLAIM FORM
SHOULD BE FILED FOR EACH ACCOUNT AND, TO RECEIVE THE FULL
PROTECTION AFFORDED UNDER SIPA, ALL CUSTOMER CLAIMS MUST BE
RECEIVED BY THE TRUSTEE ON OR BEFORE March 4, 2009. CLAIMS
RECEIVED AFTER THAT DATE, BUT ON OR BEFORE July 2, 2009, WILL BE
SUBJECT TO DELAYED PROCESSING AND TO BEING SATISFIED ON
TERMS LESS FAVORABLE TO THE CLAIMANT. PLEASE SEND YOUR CLAIM
FORM BY CERTIFIED MAIL - RETURN RECEIPT REQUESTED.

*******************************************************************************

1.    Claim for money balances as of **December 11, 2008**:

    a.    The Broker owes me a Credit (Cr.) Balance of      $308,611,739

    **but in no event less than** $166,446,426.

    b.    I owe the Broker a Debit (Dr.) Balance of      $0

    c.    If you wish to repay the Debit Balance

    please insert the amount you wish to repay and

    attach a check payable to "Irving H, Picard, Esq., Trustee for Bernard L.

    Madoff Investment Securities LLC."

    If you wish to make a payment, it **must be enclosed**      $0

    with this claim form.

    d.    If balance is zero, insert "None."      None[1]

---

[1] Ariel Fund Limited assumes question 1.d. refers to the net balance owed to Bernard L. Madoff Investment
Securities, LLC.
SRZ-10846147.4

2

MWPTAP00033170

MWPTAP00354048

2.      Claim for securities as of **December 11, 2008**:

**PLEASE DO NOT CLAIM ANY SECURITIES YOU HAVE IN YOUR POSSESSION.**

|  |  | YES | NO |
|---|---|---|---|
| a. | The Broker owes me securities | N/A | N/A |
| b. | I owe the Broker securities | N/A | N/A |
| c. | If yes to either, please list below: | N/A | N/A |

| Date of Transaction (trade date) | Name of Security | Number of Shares or Face Amount of Bonds | |
|---|---|---|---|
| | | The Broker Owes Me (Long) | I Owe the Broker (Short) |
| N/A | N/A | N/A | N/A |
| | | | |
| | | | |
| | | | |

**Proper documentation can speed the review, allowance and satisfaction of your claim and shorten the time required to deliver your securities and cash to you. Please enclose, if possible, copies of your last account statement and purchase or sale confirmations and checks which relate to the securities or cash you claim, and any other documentation, such as correspondence, which you believe will be of assistance in processing your claim. In particular, you should provide all documentation (such as cancelled checks, receipts from the Debtor, proof of wire transfers, etc.) of your deposits of cash or securities with the Debtor from as far back as you have documentation. You should also provide all documentation or information regarding any withdrawals you have ever made or payments received from the Debtor.**

Please explain any differences between the securities or cash claimed and the cash balance and securities positions on your last account statement. If, at any time, you complained in writing about the handling of your account to any person or entity or regulatory authority, and the complaint relates to the cash and/or securities that you are now seeking, please be sure to provide with your claim copies of the complaint and all related correspondence, as well as copies of any replies that you received. **PLEASE CHECK THE APPROPRIATE ANSWER FOR ITEMS 3 THROUGH 9.**

**NOTE:   IF "YES" IS MARKED ON ANY ITEM, PROVIDE A DETAILED EXPLANATION**

SRZ-10846147.4

MWPTAP00033171

MWPTAP00354049

**ON A SIGNED ATTACHMENT. IF SUFFICIENT DETAILS ARE NOT PROVIDED, THIS CLAIM FORM WILL BE RETURNED FOR YOUR COMPLETION.**

|  |  | <u>YES</u> | <u>NO</u> |
|---|---|---|---|
| 3. | Has there been any change in your account since December 11, 2008? If so, please explain. | _____ | __x___ |
| 4. | Are you or were you a director, officer, partner, shareholder, lender to or capital contributor of the broker? | _____ | __x___ |
| 5. | Are or were you a person who, directly or indirectly and through agreement or otherwise, exercised or had the power to exercise a controlling influence over the management or policies of the broker? | _____ | __x___ |
| 6. | Are you related to, or do you have any business venture with, any of the persons specified in "4" above, or any employee or other person associated in any way with the broker? If so, give name(s) | _____ | __x___ |
| 7. | Is this claim being filed by or on behalf of a broker or dealer or a bank? If so, provide documentation with respect to each public customer on whose behalf you are claiming. | _____ | __x___ |
| 8. | Have you ever given any discretionary authority to any person to execute securities transactions with or through the broker on your behalf? Give names, addresses and phone numbers. | _____ | __$x^2$__ |
| 9. | Have you or any member of your family ever filed a claim under the Securities Investor Protection Act of 1970? if so, give name of that broker. | _____ | __x___ |

Please list the full name and address of anyone assisting you in the preparation of this claim form:  <u>Schulte Roth & Zabel LLP, 919 Third Avenue, New York, New York 10022, Attn: Lawrence V. Gelber and David J. Karp.</u>

---

[2] Ariel Fund Limited assumes that the definition of "any person" in question § excludes Bernard L. Madoff.
SRZ-10846147.4

4

MWPTAP00354050

If you cannot compute the amount of your claim, you may file an estimated claim. In that case, please indicate your claim is an estimated claim.

**IT IS A VIOLATION OF FEDERAL LAW TO FILE A FRAUDULENT CLAIM. CONVICTION CAN RESULT IN A FINE OF NOT MORE THAN $50,000 OR IMPRISONMENT FOR NOT MORE THAN FIVE YEARS OR BOTH.**

**THE FOREGOING CLAIM IS TRUE AND ACCURATE TO THE BEST OF MY INFORMATION AND BELIEF.**

Date ____3|2|09____    Signature _____

J. Ezra Merkin
President of Gabriel Capital Corporation
Investment Advisor to Ariel Fund Limited

(If ownership of the account is shared, all must sign above. Give each owner's name, address, phone number, and extent of ownership on a signed separate sheet. If other than a personal account, *e.g.,* corporate, trustee, custodian, etc., also state your capacity and authority. Please supply the trust agreement or other proof of authority.)

**This customer claim form must be completed and mailed promptly, together with supporting documentation, etc. to:**

Irving H. Picard, Esq.,
Trustee for Bernard L. Madoff Investment Securities LLC
Claims Processing Center
2100 McKinney Ave., Suite 800
Dallas, TX 75201

MWPTAP00033173

**MWPTAP00354051**

## ATTACHMENT TO CLAIM

**THIS CLAIM IS AN ESTIMATED CLAIM.**

**THIS CLAIM IS FILED WITHOUT PREJUDICE TO THE RIGHT OF EACH INVESTOR IN ARIEL FUND LIMITED TO FILE, ASSERT, AND PROSECUTE ANY CLAIM AS A CUSTOMER OF BERNARD L. MADOFF INVESTMENT SECURITIES, LLC OR OTHERWISE, TO THE FULLEST EXTENT PERMITTED BY LAW.**

### Ariel's Express Reservations

Ariel Fund Limited ("Ariel") reserves its right to amend, modify, and/or supplement any of the claims set forth herein, and to file in accordance with Court orders and procedures amended, modified, supplementary, and/or other additional claims, including, but not limited to, claims under Section 502(h) of Title 11 of the United States Code, or similar law, that Ariel may have against Bernard L. Madoff Investment Securities, LLC ("BMIS").

Ariel reserves the right to attach, produce, and/or rely upon additional documents supporting its claims and additional documents that may become available after further investigation or discovery.

This claim is filed under compulsion of the deadline to file claims and is filed to protect Ariel from forfeiture of its claims. The filing of this claim shall not constitute a waiver or release of any of Ariel's rights:

- Against any person, entity, or property;

- To contest the jurisdiction of this Court with respect to the subject matter of the claims set forth herein, to object to any other proceeding commenced with respect thereto, or to object to any other proceeding commenced in this case against or otherwise involving Ariel; and/or

- To elect remedies or choice of law.

The filing of this claim shall not constitute a concession or admission by Ariel of liability or facts with respect to any claim that has been or may be asserted against Ariel or BMIS by third parties.

Nothing contained herein shall limit the rights of Ariel to file any proceeding or to take any action concerning its claims.

Nothing in this claim is intended to nor shall waive or release any right, remedy, or claim of Ariel against any person or entity, including, without limitation, any affiliate of, or entity otherwise related to, BMIS.

If any person or entity asserts claims against Ariel, Ariel intends to defend such claims. Ariel reserves all rights, defenses and remedies thereto, including, without limitation, the rights of setoff or recoupment, which may or may not affect the total amount of Ariel's claims.

### Documentation Available Upon Request

The claims described herein are evidenced by various agreements, instruments, and other documents that are too voluminous to attach hereto. Copies of the agreements, instruments, and other documents are available from Ariel's attorneys upon reasonable request by the Trustee.

SRZ-10846147.4

6

MWPTAP00033174

MWPTAP00354052

# ARIEL FUND LIMITED

## CERTIFICATE OF AUTHORIZATION

I, J. Ezra Merkin, hereby certify that I am the duly elected, qualified and acting President of Gabriel Capital Corporation ("GCC"), a Delaware corporation. GCC is currently serving as Investment Advisor to Ariel Fund Limited, pursuant to the Seventh Amended and Restated Investment Advisory Agreement, by and between Gabriel Capital Corporation and Ariel Fund Limited, dated December 29, 2008. I hereby certify further that I am duly authorized to sign the Customer Claim submitted to the Trustee of Bernard L. Madoff Investment Securities, LLC, dated as of March 2, 2009, by and on behalf of Ariel Fund Limited.

IN WITNESS WHEREOF, I have signed this Certificate this 2nd day of March 2009.

By: _____
J. Ezra Merkin
President of Gabriel Capital Corporation
Investment Advisor to Ariel Fund Limited

SRZ-10851680.1

MWPTAP00033175

**MWPTAP00354053**

PS|Ship - FedEx Label

From:   Origin ID: JRBA   (212)756-2000
Vanessa Browder
Schulte Roth & Zabel LLP
919 Third Ave.
23rd Floor
New York, NY 10022



Ship Date: 02MAR09
ActWgt: 1 LB
CAD: 3848298/WBUS0200
Account#: S *********

Delivery Address Bar Code

SHIP TO: (212)756-2788        BILL SENDER

**Irving H. Picard, Esq.**
**Trustee for L. Madoff Investment Se**
**2100 McKinney Ave**

**Dallas, TX 752011803**

Ref # 027582.0019-03562
Invoice #
PO #
Dept #

TRK# 0201   7901 6134 9446

TUE - 03MAR        A1
**PRIORITY OVERNIGHT**
DSR RES

**XH RBDA**

75201
TX-US
DFW

**FOLD on this line and place in shipping pouch with bar code and delivery address visible**

1. Fold the first printed page in half and use as the shipping label.
2. Place the label in a waybill pouch and affix it to your shipment so that the barcode portion of the label can be read and scanned.
3. Keep the second page as a receipt for your records. The receipt contains the terms and conditions of shipping and information useful for tracking your package.

MWPTAP00033176

http://nyvmtpweb1/index.php

3/2/2009

**MWPTAP00354054**

RT **777 B**
FZ **778**

9446
03..03

# FedEx Express

## Extremely Urgent

insert
airbill
here ▶

# Envelope

### What is the weight limit for the FedEx® Envelope rate?
Eight ounces — including the FedEx Envelope, which must contain (up to approximately thirty 8½ x 11" pages). If it exceeds the gross weight limit, a higher rate will apply.

### What can be shipped in the FedEx Envelope?
This envelope is designed for documents. Contents should be compatible with the container and packed securely to help assure safe transportation with ordinary care in handling. Shipments within the U.S. with a value greater than US$500 should not be shipped in this envelope. International shipments with a value in excess of US$100 for carriage or customs should not be shipped in this envelope. Do not send cash, cash equivalent or other prohibited items. This envelope is for FedEx Express shipments only. Any other use is prohibited.

### What is the FedEx limit of liability?
For shipments within the U.S., FedEx liability is limited to US$100 for loss, damage, delay, misdelivery or nondelivery unless you declare a higher value and pay an extra charge. The maximum declared value for the contents of this envelope is US$500. See the current FedEx Service Guide or the FedEx® US Airbill for details.

For international shipments, FedEx liability is limited to US$100 for damage, delay or loss of shipment by surface or air and may be further limited by certain treaties, including the Warsaw Convention, typically to US$9.07 per pound. See the current FedEx Service Guide or the FedEx® International Air Waybill for details.

### Want more information?
Go to fedex.com, or call 1.800.GoFedEx 1.800.463.3339 for U.S. domestic shipments, 1.800.247.4747 for international shipments. Call your local FedEx office if you are outside the U.S.

© 2005 FedEx 156470/156470 REV 9/05 RT

100%
Recycled
Paperboard®

MWPTAP000331.77

**MWPTAP00354055**

**ATTACHMENT B**

**<u>GABRIEL CAPITAL, LP CUSTOMER CLAIM</u>**

**CUSTOMER CLAIM**

Bernard L. Madoff Investment Securities LLC
Case No 08-01789-BRL
U S Bankruptcy Court for the Southern District of New York
Claim Number:                 **005868**

## BERNARD L. MADOFF INVESTMENT SECURITIES LLC

In Liquidation

### DECEMBER 11, 2008

RECEIVED

MAR 03 2009

(Please print or type)

Name of Customer:    Gabriel Capital, LP
Mailing Address:      450 Park Avenue, #3201
City:  New York                State:  NY        Zip:  10022
Account No.:  1-G0321-3-0, 1-G0321-4-0
Taxpayer I.D. Number (Social Security No.):  13-3621277

NOTE:    BEFORE COMPLETING THIS CLAIM FORM, BE SURE TO READ CAREFULLY THE ACCOMPANYING INSTRUCTION SHEET. A SEPARATE CLAIM FORM SHOULD BE FILED FOR EACH ACCOUNT AND, TO RECEIVE THE FULL PROTECTION AFFORDED UNDER SIPA, ALL CUSTOMER CLAIMS MUST BE RECEIVED BY THE TRUSTEE ON OR BEFORE March 4, 2009. CLAIMS RECEIVED AFTER THAT DATE, BUT ON OR BEFORE July 2, 2009, WILL BE SUBJECT TO DELAYED PROCESSING AND TO BEING SATISFIED ON TERMS LESS FAVORABLE TO THE CLAIMANT. PLEASE SEND YOUR CLAIM FORM BY CERTIFIED MAIL - RETURN RECEIPT REQUESTED.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

1.    Claim for money balances as of **December 11, 2008**:

   a.    The Broker owes me a Credit (Cr.) Balance of                     $308,092,181

        **but in no event less than** $159,560,388.

   b.    I owe the Broker a Debit (Dr.) Balance of                        $0

   c.    If you wish to repay the Debit Balance

        please insert the amount you wish to repay and

        attach a check payable to "Irving H, Picard, Esq., Trustee for Bernard L.

        Madoff Investment Securities LLC."

        If you wish to make a payment, it **must be enclosed**

        with this claim form.                                             $0

   d.    If balance is zero, insert "None."                               None[1]

---

[1] Gabriel Capital, LP assumes question 1.d. refers to the net balance owed to Bernard L. Madoff Investment Securities, LLC.
SRZ-10846153 3

2

MWPTAP00033864

**MWPTAP00360806**

2.  Claim for securities as of **December 11, 2008**:

**PLEASE DO NOT CLAIM ANY SECURITIES YOU HAVE IN YOUR POSSESSION.**

|   |   | YES | NO |
|---|---|---|---|
| a. | The Broker owes me securities | N/A | N/A |
| b. | I owe the Broker securities | N/A | N/A |
| c. | If yes to either, please list below: | N/A | N/A |

| Date of Transaction (trade date) | Name of Security | Number of Shares or Face Amount of Bonds | |
|---|---|---|---|
| | | The Broker Owes Me (Long) | I Owe the Broker (Short) |
| N/A | N/A | N/A | N/A |
| | | | |
| | | | |
| | | | |

**Proper documentation can speed the review, allowance and satisfaction of your claim and shorten the time required to deliver your securities and cash to you. Please enclose, if possible, copies of your last account statement and purchase or sale confirmations and checks which relate to the securities or cash you claim, and any other documentation, such as correspondence, which you believe will be of assistance in processing your claim. In particular, you should provide all documentation (such as cancelled checks, receipts from the Debtor, proof of wire transfers, etc.) of your deposits of cash or securities with the Debtor from as far back as you have documentation. You should also provide all documentation or information regarding any withdrawals you have ever made or payments received from the Debtor.**

Please explain any differences between the securities or cash claimed and the cash balance and securities positions on your last account statement. If, at any time, you complained in writing about the handling of your account to any person or entity or regulatory authority, and the complaint relates to the cash and/or securities that you are now seeking, please be sure to provide with your claim copies of the complaint and all related correspondence, as well as copies of any replies that you received. **PLEASE CHECK THE APPROPRIATE ANSWER FOR ITEMS 3 THROUGH 9.**

**NOTE:   IF "YES" IS MARKED ON ANY ITEM, PROVIDE A DETAILED EXPLANATION**

SRZ-10846153 3

MWPTAP00033865

**MWPTAP00360807**

**ON A SIGNED ATTACHMENT. IF SUFFICIENT DETAILS ARE NOT PROVIDED, THIS CLAIM FORM WILL BE RETURNED FOR YOUR COMPLETION.**

|  |  | YES | NO |
|---|---|---|---|
| 3. | Has there been any change in your account since December 11, 2008? If so, please explain. | _____ | x |
| 4. | Are you or were you a director, officer, partner, shareholder, lender to or capital contributor of the broker? | _____ | x |
| 5. | Are or were you a person who, directly or indirectly and through agreement or otherwise, exercised or had the power to exercise a controlling influence over the management or policies of the broker? | _____ | x |
| 6. | Are you related to, or do you have any business venture with, any of the persons specified in "4" above, or any employee or other person associated in any way with the broker? If so, give name(s) | _____ | x |
| 7. | Is this claim being filed by or on behalf of a broker or dealer or a bank? If so, provide documentation with respect to each public customer on whose behalf you are claiming. | _____ | x |
| 8. | Have you ever given any discretionary authority to any person to execute securities transactions with or through the broker on your behalf? Give names, addresses and phone numbers. | _____ | $x^2$ |
| 9. | Have you or any member of your family ever filed a claim under the Securities Investor Protection Act of 1970? if so, give name of that broker. | _____ | x |

Please list the full name and address of anyone assisting you in the preparation of this claim form:  Schulte Roth & Zabel LLP, 919 Third Avenue, New York, New York 10022, Attn: Lawrence V. Gelber and David J. Karp.

---

[2] Gabriel Capital, LP assumes that the definition of "any person" in question 8 excludes Bernard L. Madoff.
SRZ-10846153.3

MWPTAP00033866

MWPTAP00360808

If you cannot compute the amount of your claim, you may file an estimated claim. In that case, please indicate your claim is an estimated claim.

**IT IS A VIOLATION OF FEDERAL LAW TO FILE A FRAUDULENT CLAIM. CONVICTION CAN RESULT IN A FINE OF NOT MORE THAN $50,000 OR IMPRISONMENT FOR NOT MORE THAN FIVE YEARS OR BOTH.**

**THE FOREGOING CLAIM IS TRUE AND ACCURATE TO THE BEST OF MY INFORMATION AND BELIEF.**

Date ___3\2\09___    Signature _____

J. Ezra Merkin
General Partner of Gabriel Capital, LP

(If ownership of the account is shared, all must sign above. Give each owner's name, address, phone number, and extent of ownership on a signed separate sheet. If other than a personal account, *e.g.,* corporate, trustee, custodian, etc., also state your capacity and authority. Please supply the trust agreement or other proof of authority.)

**This customer claim form must be completed and mailed promptly, together with supporting documentation, etc. to:**

Irving H. Picard, Esq.,
Trustee for Bernard L. Madoff Investment Securities LLC
Claims Processing Center
2100 McKinney Ave., Suite 800
Dallas, TX 75201

SRZ-10846153.3

5

MWPTAP00033867

MWPTAP00360809

## ATTACHMENT TO CLAIM

**THIS CLAIM IS AN ESTIMATED CLAIM.**

**THIS CLAIM IS FILED WITHOUT PREJUDICE TO THE RIGHT OF EACH INVESTOR IN GABRIEL CAPITAL, LP TO FILE, ASSERT, AND PROSECUTE ANY CLAIM AS A CUSTOMER OF BERNARD L. MADOFF INVESTMENT SECURITIES, LLC OR OTHERWISE, TO THE FULLEST EXTENT PERMITTED BY LAW.**

### Gabriel's Express Reservations

Gabriel Capital, LP ("Gabriel") reserves its right to amend, modify, and/or supplement any of the claims set forth herein, and to file in accordance with Court orders and procedures amended, modified, supplementary, and/or other additional claims, including, but not limited to, claims under Section 502(h) of Title 11 of the United States Code, or similar law, that Gabriel may have against Bernard L. Madoff Investment Securities, LLC ("BMIS").

Gabriel reserves the right to attach, produce, and/or rely upon additional documents supporting its claims and additional documents that may become available after further investigation or discovery.

This claim is filed under compulsion of the deadline to file claims and is filed to protect Gabriel from forfeiture of its claims. The filing of this claim shall not constitute a waiver or release of any of Gabriel's rights:

- Against any person, entity, or property;

- To contest the jurisdiction of this Court with respect to the subject matter of the claims set forth herein, to object to any other proceeding commenced with respect thereto, or to object to any other proceeding commenced in this case against or otherwise involving Gabriel; and/or

- To elect remedies or choice of law.

The filing of this claim shall not constitute a concession or admission by Gabriel of liability or facts with respect to any claim that has been or may be asserted against Gabriel or BMIS by third parties.

Nothing contained herein shall limit the rights of Gabriel to file any proceeding or to take any action concerning its claims.

Nothing in this claim is intended to nor shall waive or release any right, remedy, or claim of Gabriel against any person or entity, including, without limitation, any affiliate of, or entity otherwise related to, BMIS.

If any person or entity asserts claims against Gabriel, Gabriel intends to defend such claims. Gabriel reserves all rights, defenses and remedies thereto, including, without limitation, the rights of setoff or recoupment, which may or may not affect the total amount of Gabriel's claims.

### Documentation Available Upon Request

The claims described herein are evidenced by various agreements, instruments, and other documents that are too voluminous to attach hereto. Copies of the agreements, instruments, and other documents are available from Gabriel's attorneys upon reasonable request by the Trustee.

SRZ-10846153.3

MWPTAP00033868

**MWPTAP00360810**

PS|Ship - FedEx Label



1. Fold the first printed page in half and use as the shipping label.
2. Place the label in a waybill pouch and affix it to your shipment so that the barcode portion of the label can be read and scanned.
3. Keep the second page as a receipt for your records. The receipt contains the terms and conditions of shipping and information useful for tracking your package.

MWPTAP00033869

http://nyvmtpweb1/index.php

3/2/2009

**MWPTAP00360811**