**Baker & Hostetler LLP**

45 Rockefeller Plaza
New York, New York 10111
Telephone:  (212) 589-4200
Facsimile:  (212) 589-4201

*Attorneys for Irving H. Picard, Trustee*
*for the substantively consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities LLC*
*and the estate of Bernard L. Madoff*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, <br><br> Plaintiff-Applicant <br><br> v. <br><br> BERNARD L. MADOFF INVESTMENT SECURITIES LLC, <br><br> Defendant. | Adv. Pro. No. 08-01789 (SMB) <br><br> SIPA Liquidation <br><br> (Substantively Consolidated) |
| In re: <br><br> BERNARD L. MADOFF, <br><br> Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, <br><br> Plaintiff, <br><br> v. <br><br> BUREAU OF LABOR INSURANCE, <br><br> Defendant. | Adv. Pro. No. 11-02732 (SMB) |

## THE TRUSTEE'S MEMORANDUM OF LAW IN OPPOSITION TO BUREAU OF LABOR INSURANCE'S MOTION FOR JUDGMENT ON THE PLEADINGS

# TABLE OF CONTENTS

**Page**

I.  PRELIMINARY STATEMENT ...............................................................................1

II. PROCEDURAL BACKGROUND..........................................................................2

     A.      Defendants in Other Adversary Proceedings Move to Withdraw the
            Reference from the Bankruptcy Court on the Extraterritoriality Issue...................2

     B.      This Court Denies BLI's Motion to Dismiss on the Extraterritoriality Issue .........4

     C.      The District Court Issues the Extraterritoriality Decision .......................................6

III. ARGUMENT .........................................................................................................8

     A.      This Court's BLI Decision Remains Law of the Case ...............................................8

           1.      BLI Previously Moved To Dismiss On The Extraterritoriality Issue
                  and Lost................................................................................................10

           2.      The Extraterritoriality Decision Is Not Binding Appellate Authority
                  With Respect To BLI ..............................................................................12

     B.      The BLI Decision Considered the Same *Maxwell I* Factors that the District
            Court Said to Apply When Determining Whether an Individual Action
            Requires an Extraterritorial Application of SIPA and the Bankruptcy Code ........13

           1.      Applying the Maxwell I Factors to BLI Does Not Result in an
                  Extraterritorial Application of the Code and SIPA ....................................14

     C.      Additional Evidence Demonstrates the Domestic Nature of the Transfer.............19

           1.      Fairfield Sentry's Principal Place of Business Was in New York
                  Where It Was Created, Operated, and Controlled from FGG's New
                  York Headquarters ................................................................................20

           2.      Fairfield Sentry's Agreements with BLMIS Confirm Fairfield
                  Sentry's Principal Place of Business Was the United States ....................22

     D.      Comity Does Not Preclude Application of the Bankruptcy Code or SIPA ...........24

           1.      BLI Fails to Meet its Burden of Establishing that Comity Precludes
                  the Trustee's Recovery of the Transfer at Issue.......................................25

           2.      No Parallel Proceeding With Substantially Similar Parties and Issues
                  Exist ....................................................................................................26

           3.      BLI has Identified No Exceptional Circumstances to Support the
                  Application of Comity, and None Exists ..................................................27

IV. CONCLUSION....................................................................................................29

## TABLE OF AUTHORITIES
### (continued)

Page(s)

**Cases**

*Ace Arts, LLC v. Sony/ATV Music Pub., LLC*,
No. 13-cv-7307, 2014 WL 4804465 (S.D.N.Y. Sept. 26, 2014) .......................................26, 28

*Allstate Life Ins. Co. v. Linter Group Ltd*.,
994 F.2d 996 (2d Cir. 1993)...................................................................................................25

*Anwar v. Fairfield Greenwich Ltd.*,
728 F. Supp. 2d 372 (S.D.N.Y. 2010)...................................................................................20

*Arizona v. California*,
460 U.S. 605 (1983)...............................................................................................................10

*Barnett v. Jamesway Corp. (In re Jamesway Corp.)*,
235 B.R. 329 (Bankr. S.D.N.Y. 1999) ..................................................................................12

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007).................................................................................................................8

*Bourdeau Bros., Inc. v. Montagne (In re Montagne)*,
Nos. 08-10916, 08-1024, 2010 WL 271347 (Bankr. D. Vt. Jan. 22, 2010)...........................11

*Caldor, Inc. v. Ozer Group, L.L.C. (In re Caldor Corp.)*,
303 F.3d 161 (2d Cir. 2002)...................................................................................................11

*Camreta v. Greene*,
131 S.Ct. 2020 (2011).............................................................................................................12

*Cargo Partner AG v. Albatrans, Inc.*,
352 F.3d 41 (2d Cir. 2003)........................................................................................................8

*Christianson v. Colt Indus. Operating Corp.*,
486 U.S. 800 (1988)...............................................................................................................10

*Cohen v. Bucci*,
905 F.2d 1111 (7th Cir. 1990) ...............................................................................................11

*Cortes v. City of New York*,
700 F. Supp. 2d 474 (S.D.N.Y. 2010).......................................................................................8

*Daly v. Deptula (In re Carrozzela & Richardson)*,
255 B.R. 267 (Bankr. D. Vt. 2000) ........................................................................................12

*Doe v. New York City Dep't of Social Services*,
709 F.2d 782 (2d Cir. 1983)...................................................................................................13

## TABLE OF AUTHORITIES
### (continued)

Page(s)

*Drexel Burnham Lambert Group, Inc. v. Galadari*,
    777 F.2d 877 (2d Cir. 1985)..................................................................25

*Filetech S.A. v. France Telecom, S.A.*,
    212 F. Supp. 2d 183 (S.D.N.Y. 2001).....................................................18

*Fogel v. Chestnut*,
    668 F.2d 100 (2d Cir. 1981)..................................................................13

*Fonte v. Bd. Of Managers of Cont'l Towers Condo.*,
    848 F.2d 24 (2d Cir. 1988)....................................................................19

*Hartford Fire Ins. v. California*,
    509 U.S. 764 (1993).............................................................................26

*In re Highland Fin. Corp.*,
    216 B.R. 109 (Bankr. S.D.N.Y. 1997)......................................................9

*In re J.P. Jeanneret Assocs., Inc.*,
    769 F. Supp. 2d 340 (S.D.N.Y. 2011)......................................................8

*Johnson v. Rowley*,
    569 F.3d 40 (2d Cir.2009).......................................................................8

*LaFaro v. New York Cardiothoracic Group, PLLC*,
    570 F.3d 471 (2d Cir. 2009)....................................................................8

*Lauritzen v. Larsen*,
    345 U.S. 571 (1953).............................................................................28

*In re Manhattan Inv. Fund Ltd.*,
    310 B.R. 500 (Bankr. S.D.N.Y. 2002).....................................................10

*In re Maxwell Commc'n Corp.*,
    93 F.3d 1036 (2d Cir.1996).................................................24, 26, 27, 28

*Maxwell Commc'n. Corp. v. Société General (In re Maxwell Commc'n Corp.)*,
    186 B.R. 807 (S.D.N.Y. 1995)................................................7, 13, 14, 25

*Morrison v. National Australia Bank Ltd.*,
    561 U.S. 247 (2010)..............................................................1, 2, 4, 13

*N. River Ins. Co. v. Philadelphia Reinsurance Corp.*,
    63 F.3d 160 .........................................................................................10

*Pereira v. Centel Corp. (In re Argo Commc'n Corp.)*,
    134 B.R. 776 (Bankr. S.D.N.Y. 1991)......................................................12

## TABLE OF AUTHORITIES
### (continued)

Page(s)

*Picard v. Bureau of Labor Ins.*,
    480 B.R. 501 (Bankr. S.D.N.Y. 2012) ............................................................................ *passim*

*Picard v. Igoin (In re Madoff Sec.)*,
    No. 08-01789 (SMB), 2015 WL 603209 (Bankr. S.D.N.Y. Feb. 13, 2015) ............................ 28

*Picard v. Katz*,
    No. 11 Civ. 03605 (JSR), 2011 WL 7267859 (S.D.N.Y. July 5, 2011) ................................... 2

*In re Pilgrim's Pride Corp.*,
    442 B.R. 522 (N.D. Tex. 2010) ...................................................................................... 11

*Royal and Sun Alliance Ins. Co. of Canada v. Century Int'l Arms, Inc.*,
    466 F.3d 88 (2d Cir. 2006) ................................................................................... 26, 27, 28

*Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*,
    12-mc-115 (JSR) (S.D.N.Y. June 7, 2012), ECF No. 167 ..................................................... 4

*Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*,
    424 B.R. 122 (Bankr. S.D.N.Y. 2010) ............................................................................. 15

*Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*,
    513 B.R. 222 (S.D.N.Y. 2014) ................................................................................. *passim*

*Société Nationale Industrielle Aerospatiale v. U.S. Dist. Ct.*,
    482 U.S. 522 (1987) ...................................................................................................... 26

*Tarazi v. Truehope, Inc.*,
    958 F. Supp. 2d 428 (S.D.N.Y. 2013) .............................................................................. 26

*United States v. Quintieri*,
    306 F.3d 1217 (2d Cir. 2002) ......................................................................................... 10

*United States v. Uccio*,
    940 F.2d 753 (2d Cir. 1991) ....................................................................................... 9, 10

**Statutes**

11 U.S.C. § 550 .................................................................................................... *passim*

28 U.S.C. § 151 ........................................................................................................... 12

**Rules**

Fed. R. Bankr. P. 7012 ................................................................................................... 8

Fed. R. Civ. P. 8(a)(2) .................................................................................................... 8

## TABLE OF AUTHORITIES
### (continued)

Page(s)

Fed. R. Civ. P. 12(b)(6).....................................................................................................8, 19

Fed. R. Civ. P. 12(c) .........................................................................................................7, 8

Fed. R. Civ. P. 12(d) ..........................................................................................................19

Fed. R. Civ. P. 56......................................................................................................19, 20

**Other Authorities**

18 J. Moore et al., *Moore's Federal Practice* § 134.02[1][d] (3d ed. 2011) ................................12

18 Wright, Miller & Cooper, *Federal Practice and Procedure* § 4478 at 788 (2d
ed. 2014) ........................................................................................................................9

Irving H. Picard (the "Trustee"), as trustee for the liquidation of Bernard L. Madoff

Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act ("SIPA"),

15 U.S.C. § 78aaa *et seq.*, and the substantively consolidated estate of Bernard L. Madoff

("Madoff"), by and through his undersigned counsel, respectfully submits this memorandum in

opposition to the Bureau of Labor Insurance's ("BLI") motion for judgment on the pleadings.

## I.    PRELIMINARY STATEMENT

The Trustee's adversary proceeding against BLI seeks to recover a single transfer of

BLMIS customer property under section 550 of the Bankruptcy Code.  BLI never moved to

withdraw the reference from this Court.  Instead, BLI moved this Court to dismiss the

proceeding on several grounds, including that the United States Supreme Court's holding in

*Morrison v. National Australia Bank Ltd.*, 561 U.S. 247 (2010), prohibited the Trustee from

recovering the transfer from BLI.  This Court previously denied BLI's motion to dismiss,

holding that the Trustee was not seeking to apply SIPA or the Bankruptcy Code extraterritorially.

BLI now seeks to take advantage of a ruling from the District Court in which the District

Court found that the recovery of "purely foreign" transfers under section 550 requires an

extraterritorial and impermissible application of the Bankruptcy Code.  However, the District

Court's Extraterritoriality Decision is not law of the case with respect to BLI, and more

importantly, the Extraterritoriality Decision[1] does not save BLI because this Court already

considered the component events and circumstances surrounding the transfer to BLI and

concluded that the transfer is not purely foreign.  Nevertheless if in light of the Extraterritoriality

Decision this Court now finds that the Trustee has not alleged a sufficiently domestic transfer,

the Trustee respectfully requests that this Court convert BLI's motion into one for summary

---

[1] *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*, 513 B.R. 222 (S.D.N.Y. 2014) ("Extraterritoriality Decision").

judgment and consider additional evidence that demonstrates the domestic nature of the transfer. Finally, this Court should deny BLI's motion for judgment on the pleadings because international comity does not preclude the application of the Bankruptcy Code or SIPA.

## II.    PROCEDURAL BACKGROUND

On September 22, 2011, the Trustee filed this adversary proceeding against BLI to recover a single $42,123,406 transfer of BLMIS customer property that BLI received as a subsequent transferee of Fairfield Sentry Limited ("Fairfield Sentry"), the largest of the BLMIS feeder funds.[2]

On February 3, 2012, BLI moved this Court to dismiss the complaint, arguing: (1) the Supreme Court's holding in *Morrison* prohibited the Trustee from recovering the transfer from BLI as an impermissible extraterritorial application of the Bankruptcy Code; (2) it was immune from liability under the Foreign Sovereign Immunities Act (the "FSIA"); (3) this Court lacked personal jurisdiction and asserting personal jurisdiction would violate the Due Process Clause of the United States Constitution; and (4) the Trustee had not avoided the initial transfers from BLMIS to Fairfield Sentry and could not avoid the initial transfers because the statute of limitations had expired.[3]

### A.    Defendants in Other Adversary Proceedings Move to Withdraw the Reference from the Bankruptcy Court on the Extraterritoriality Issue

Following the District Court's July 2011 withdrawal of the reference in *Picard v. Katz*,[4] defendants in other adversary proceedings commenced by the Trustee filed hundreds of separate

---

[2] *Picard v. Bureau of Labor Ins.*, No. 11-02732 (BRL) (Bankr. S.D.N.Y. Sept. 22, 2011), ECF No. 1 ("BLI Compl.").

[3] Memorandum of Law in Support of Defendant's Motion to Dismiss at 1, *Picard v. Bureau of Labor Ins.*, No. 11-02732 (BRL) (Bankr. S.D.N.Y. Feb. 3, 2012), ECF No. 10.

[4] *Picard v. Katz*, No. 11 Civ. 03605 (JSR), 2011 WL 7267859 (S.D.N.Y. July 5, 2011).

motions to withdraw the reference on a sundry of issues, including the extraterritoriality issue raised by BLI in its February 3, 2012 motion to dismiss.

On March 5, 2012, this Court issued an order to notify parties in the Trustee's adversary proceedings that the District Court had set a deadline of April 2, 2012 for filing motions to withdraw the reference based on issues arising from pleadings in the adversary proceedings.[5] BLI affirmatively chose not to move to withdraw the reference and decided to proceed in this Court with its then-pending motion to dismiss. In contrast, defendants in 765 other adversary proceedings filed motions to withdraw the reference. These defendants included several who—like BLI—already had filed motions to dismiss, which were mooted by the withdrawal of the reference.[6]

On May 15, 2012, the District Court withdrew the reference on the extraterritoriality issue, which was framed as "whether SIPA applies extraterritorially, permitting the Trustee to avoid and recover transfers that occurred abroad."[7] Finding that the extraterritoriality issue posed "only a legal question," the District Court partially consolidated proceedings on the issue.[8] Other defendants subsequently joined the proceeding, and the District Court issued a further order, withdrawing the issue in additional cases

> for the limited purpose of hearing and determining whether SIPA and/or the Bankruptcy Code as incorporated by SIPA apply extraterritorially, permit[] the Trustee to avoid the initial Transfers

---

[5] *See* Order, *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*, No. 08-01789 (SMB) (Bankr. S.D.N.Y. Mar. 12, 2012), ECF No. 4707.

[6] *See, e.g.*, *Picard v. Natixis*, No. 10-05353 (BRL) (Bankr. S.D.N.Y.), ECF Nos. 18, 24, and 32; *Picard v. Natixis*, No. 10-cv-09501 (JSR) (S.D.N.Y.), ECF Nos. 1 and 5; *Picard v. Banco Bilbao Vizcaya Argentaria, S.A.*, No. 10-05351 (BRL) (Bankr. S.D.N.Y.), ECF Nos. 21 and 28.

[7] Order at 6, *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*, No. 12-mc-115 (JSR) (S.D.N.Y. May 15, 2012), ECF No. 97.

[8] *Id.* at 11.

that were received abroad or to recover from initial, immediate, or mediate foreign transferees.[9]

The District Court's order expressly reserved the parties' rights to dispute all issues other than that legal question, and the defendants and the Trustee litigated only the legal issue of whether SIPA and the avoidance and recovery provisions of the Code apply extraterritorially.[10] Neither the defendants nor the Trustee addressed the factual allegations of any individual proceeding.

The Trustee and the parties who had sought to withdraw the reference on the extraterritoriality issue fully briefed the issue and the District Court heard oral argument.[11]  At the same time, the Trustee and BLI had fully briefed the motion to dismiss[12] and this Court heard oral argument.[13]

B.    **This Court Denies BLI's Motion to Dismiss on the Extraterritoriality Issue**

On October 11, 2012, this Court held that the Trustee was not seeking to apply section 550 extraterritorially and therefore the presumption against extraterritoriality under *Morrison* was not implicated.[14]  Even if the Trustee's claim did involve an extraterritorial application, this

---

[9] Order at 3, *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*, 12-mc-115 (JSR) (S.D.N.Y. June 7, 2012), ECF No. 167.

[10] Notably, while the Extraterritoriality Decision addresses the application of international comity, the issue was not part of the question withdrawn by the District Court and indeed the first time the defendants raised the issue was in their reply. *See* Consolidated Reply Memorandum in Support of the Extraterritorial Defendants' Motion to Dismiss at 14, *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*, No. 12-mc-115 (JSR) (S.D.N.Y. Aug. 31, 2012), ECF No. 322.

[11] Transcript of Oral Argument on Extraterritoriality Issue, *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*, No. 12-mc-115 (JSR) (S.D.N.Y. Sept. 21, 2012), ECF No. 357.

[12] Trustee's Sur-Reply in Opp. to the Motion to Dismiss, *Picard v. Bureau of Labor Ins.*, No. 11-02732 (BRL) (Bankr. S.D.N.Y. July 16, 2012), ECF No 45.

[13] Transcript of Oral Argument on Motion to Dismiss, *Picard v. Bureau of Labor Ins.*, No. 11-02732 (BRL) (Bankr. S.D.N.Y. Aug. 8, 2012), ECF No 48.

[14] *Picard v. Bureau of Labor Ins.*, 480 B.R. 501, 523 (Bankr. S.D.N.Y. 2012) (the "BLI Decision").  This Court also rejected each of BLI's other arguments, holding: (1) BLI was not immune under the FSIA; (2) this Court may exercise personal jurisdiction over BLI; and (3) the Trustee may pursue recovery from BLI as a subsequent transferee under section 550 because the initial transfers from BLMIS to Fairfield Sentry were avoidable.

Court held that Congress expressed clear intent for such an application with regard to a foreign subsequent transferee.[15]

In rejecting BLI's argument that the Trustee was seeking to apply section 550 extraterritorially, this Court throughout its opinion highlighted the domestic nature of the transfer. For example, this Court found that, "[t]he BLMIS Ponzi scheme was operated in the United States and the funds used to operate the scheme were received and disbursed to investors in the United States."[16] This Court also found that "BLI invested . . . in Fairfield Sentry with the specific purpose of having funds invested in BLMIS in New York, and intended to profit from this U.S.-based investment."[17] This Court reasoned that BLI's money did not ultimately end up in "an account at BLMIS as a result of happenstance or coincidence," but rather that BLI invested "knowing, intending and contemplating that the substantial majority of funds invested in Fairfield Sentry would be transferred to BLMIS in New York to be invested in the New York securities market."[18]

Considering the totality of the circumstances, this Court found, "[t]his movement of money to and from BLMIS in the United States, as contemplated by the Agreements, was not fortuitous or incidental; instead it was 'the ultimate objective,' and the 'raison d'etre' of the Agreement between BLI and Fairfield Sentry."[19] And "[a]t bottom, this is not a situation where the ripples caused by an overseas transaction manage eventually to reach the shores of the United States. Rather, BLI intended to profit from BLMIS in New York through investments in

---

[15] *Id.* at 526.

[16] *Id.* at 524.

[17] *Id.* at 506.

[18] *Id.* at 517.

[19] *Id.* at 513.

Fairfield Sentry."[20]    Accordingly, this Court concluded BLI's investment was "domestic" in nature because the sole purpose of its investment was to invest with BLMIS in the United States.[21]

BLI did not seek leave to appeal the BLI Decision.  Instead, BLI answered the Trustee's Complaint on February 28, 2013.[22]

### C.    The District Court Issues the Extraterritoriality Decision

On July 6, 2014, the District Court issued the Extraterritoriality Decision.  The District Court held that the presumption against the extraterritorial application of section 550 of the Code and SIPA was not rebutted because Congress did not clearly indicate that either statute applied extraterritorially.[23]

On a consolidated basis, the District Court found recovery of "purely foreign" transfers under section 550 requires an extraterritorial application of the Code and SIPA. The District Court, citing the Southern District of New York case *Maxwell Communications Corporation v. Société Generale ("Maxwell I")*, set forth a test to determine whether the recovery of a subsequent transfer requires an extraterritorial application:

> To determine whether the transfers at issue in this consolidated proceeding occurred extraterritorially, "the court considers the

---

[20] *Id.* at 515.

[21] *Id.* at 524.

[22] *Picard v. Bureau of Labor Ins.*, No. 11-02732 (BRL) (Bankr. S.D.N.Y. Feb. 28, 2013), ECF 54.  With the exception of a letter to this Court on November 17, 2014, BLI took no action between answering the complaint on February 28, 2013 and filing this motion on April 9, 2015.

[23] Extraterritoriality Decision, 513 B.R. at 231.  The Trustee believes the Extraterritorial Decision is erroneous. However, no final order has been entered disposing of any one proceeding from which to appeal.  Until a final order is entered from which no further appeal can be taken, the Trustee reserves all rights with respect to the District Court's determination that SIPA and the Code do not apply extraterritorially, and that the focus of these statutes is on the "property subsequently transferred."

location of the transfers as well as the component events of those transactions."[24]

As it only reviewed the extraterritoriality issue as a legal matter, the District Court did not dismiss any of the Trustee's subsequent transferee claims. Instead, the District Court returned those cases to this Court, indicating that the pleadings in each case should be reviewed to determine whether the Trustee set forth facts alleging that the transfers sought are not purely foreign and, indeed, have sufficient domestic elements to preclude the application of the presumption against extraterritoriality.[25]

Upon return to this Court of the cases that had been before the District Court, certain defendants requested a procedure for this Court to consider the factual nature of their cases based upon the legal test set forth in the District Court's opinion. Those defendants and the Trustee are in the process of briefing the applicable cases pursuant to a stipulated order entered by this Court. At a hearing during which the briefing procedure was being addressed by the Trustee and the defendants who had withdrawn the reference, BLI asked this Court to join the briefing process. This Court noted that BLI was not included in the cases returned by the District Court and the extraterritoriality issue had been previously determined by this Court on BLI's motion to dismiss. Subsequently, BLI filed this motion for judgment on the pleading under Fed. R. Civ. P. 12(c) despite having already "litigated the extraterritoriality decision and . . . lost it . . . before Judge Lifland."[26]

---

[24] *Id.* at 227 (quoting *Maxwell Commc'n. Corp. v. Société General (In re Maxwell Commc'n Corp.)*, 186 B.R. 807, 817 (S.D.N.Y. 1995)).

[25] Because BLI did not participate in the consolidated briefing before the District Court, this case was not considered by the District Court at the time of its ruling, and was not returned to this Court for further factual determinations.

[26] *See* Hearing Transcript attached to Declaration of Amiad M. Kushner, Esq. at 31:13-15, *Picard v. Bureau of Labor Ins.*, No. 11-02732 (BRL) (Bankr. S.D.N.Y. Apr. 9, 2015), ECF No. 87-6 ("Kushner Decl.").

## III.    ARGUMENT

In considering a motion for judgment on the pleadings under Fed. R. Civ. P. 12(c), a court applies the same standards used for the determination of a motion pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss a complaint for failure to state a claim.[27]  On a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or a motion for judgment on the pleadings under Fed. R. Civ. P. 12(c), made applicable here by Fed. R. Bankr. P. 7012, this Court "must liberally construe all claims, accept all factual allegations in the complaint as true, and draw all reasonable inferences" in the Trustee's favor.[28]  To survive the motion, the pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."[29]  The allegations need only meet the "plausibility" standard, such that they "nudge[] the[] claims across the line from conceivable to plausible . . . ."[30]  A claim is facially plausible where the plaintiff pleads "factual content [that] allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[31]

### A.    This Court's BLI Decision Remains Law of the Case

In its motion for judgment on the pleadings BLI argues the District Court's Extraterritoriality Decision "is now the law of the case" and should be treated as binding authority in the BLI proceeding.[32]  BLI is mistaken.  This Court's BLI Decision was and remains

---

[27] *Johnson v. Rowley*, 569 F.3d 40, 43 (2d Cir.2009) (per curiam); *see also LaFaro v. New York Cardiothoracic Group, PLLC*, 570 F.3d 471, 475-76 (2d Cir. 2009); *Cortes v. City of New York*, 700 F. Supp. 2d 474, 480-81 (S.D.N.Y. 2010).

[28] *In re J.P. Jeanneret Assocs., Inc.*, 769 F. Supp. 2d 340, 353 (S.D.N.Y. 2011) (citing *Cargo Partner AG v. Albatrans, Inc.*, 352 F.3d 41, 44 (2d Cir. 2003)); *Jennings*, 489 F.3d at 510.

[29] Fed. R. Civ. P. 8(a)(2).

[30] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Iqbal*, 556 U.S. at 680.

[31] *Iqbal*, 556 U.S. at 663.

[32] Memorandum of Law in Support of Defendant Bureau of Labor Insurance's Motion for Judgment on the Pleadings at 1, *Picard v. Bureau of Labor Ins.*, No. 11-02732 (BRL) (Bankr. S.D.N.Y. Apr. 9, 2015), ECF No. 86 ("BLI Brief").

law of the case because: (1) this Court already considered the case-specific facts and held that the

presumption against extraterritoriality is not a bar to the Trustee's recovery from BLI; and (2) the

District Court's decision is not binding appellate authority. To be sure, this Court may change its

prior ruling in light of the Extraterritoriality Decision; however, a review of the Extraterritoriality

Decision and the facts previously considered in the BLI Decision provide no compelling reason

to do so now.[33]

The law of the case doctrine prevents courts from addressing issues that were previously

litigated and determined in prior proceedings in the same case.[34] The doctrine applies in two

distinct situations. First, the doctrine applies when a party asks a court to reconsider its own

decision. Here, "a court will not ordinarily reconsider its own prior decisions, although it retains

the discretion to do so."[35] This is because "when a court has ruled on an issue, that decision

should generally be adhered to by that court in subsequent stages in the same case."[36] Second,

the doctrine applies when a lower court is asked to apply the decision of a superior court on

remand. In this situation, "a lower court must apply the decision of a superior court on

remand."[37] This is because once an appellate court has decided an issue, "the trial court, at a

---

[33] This Court recently addressed the persuasive force a decision can hold even if it is not, by definition, law of the case. Memorandum Decision Regarding Omnibus Motions to Dismiss at 38, *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*, No. 08-01789 (SMB) (Bankr. S.D.N.Y. June 2, 2015), ECF No. 10089 ("Those moving defendants that participated in the withdrawal of the reference of the antecedent debt/value issue have had their day in court and Judge Rakoff's decisions are law of the case. . . . Those moving defendants who did not move to withdraw the reference on the antecedent debt/value issue are not similarly bound, but the persuasive force of Judge Rakoff's decisions lead me to the same conclusions.").

[34] *In re Highland Fin. Corp.*, 216 B.R. 109, 113 (Bankr. S.D.N.Y. 1997) (Bernstein, J.).

[35] *Id.* at 113.

[36] *United States v. Uccio*, 940 F.2d 753, 758 (2d Cir. 1991); *see also* 18 Wright, Miller & Cooper, *Federal Practice and Procedure* § 4478 at 788 (2d ed. 2014) (finding the law of the case doctrine serves the purpose of "maintain[ing] consistency and avoid[ing] reconsideration of matters once decided during the course of a single continuing lawsuit").

[37] *In re Highland Fin. Corp.*, 216 B.R. at 113 ("This second prong—known as the mandate rule—requires the trial court, following remand, to proceed in accordance with the appellate court's decision and mandate.").

later stage in the same litigation, is under a duty to follow the appellate court's ruling on that issue."[38]

Courts recognize that "law of the case directs a court's discretion; it does not limit the tribunal's power."[39]  There are exceptions to the doctrine, and a court may deviate from prior rulings given "cogent or compelling reasons," such as an intervening change in controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.[40]  As discussed below, the circumstances here do not render the Extraterritoriality Decision law of the case with respect to BLI.

### 1.    *BLI Previously Moved To Dismiss On The Extraterritoriality Issue and Lost*

The BLI Decision is law of the case in this proceeding as to the application of the extraterritoriality issue to BLI because that precise issue was litigated in the BLI proceeding by the same parties and it has already been decided by this Court.[41]

Specifically, BLI previously moved this Court to dismiss on the extraterritoriality issue, and after briefing and oral argument this Court issued the BLI Decision, holding the Trustee's section 550 claim did not require an extraterritorial application of the Bankruptcy Code.[42]  That BLI previously moved to dismiss in this Court  and had the issue decided distinguishes BLI from each of the defendants in the other adversary proceedings who withdrew the reference to the

---

[38] *In re Manhattan Inv. Fund Ltd.*, 310 B.R. 500, 511 (Bankr. S.D.N.Y. 2002).

[39] *Arizona v. California*, 460 U.S. 605, 618 (1983); *N. River Ins. Co. v. Philadelphia Reinsurance Corp.*, 63 F.3d 160, 164 ("It is generally accepted that the law of the case doctrine does not limit the power of a court, but merely expresses the practice of courts generally to refuse to reopen what has been decided.").

[40] *United States v. Quintieri*, 306 F.3d 1217, 1230 (2d Cir. 2002); *see also Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988) (finding courts should be "loathe" to revisit an earlier decision "in the absence of extraordinary circumstances").

[41] *United States v. Uccio*, 940 F.2d 753, 758 (2d Cir. 1991) (finding law of the case prevents court from addressing issues previously litigated and determined in prior proceedings in same case).

[42] BLI Decision, 480 B.R. at 523.

District Court, participated in the consolidated briefing in the District Court, and had the issue

returned to this Court to determine whether the component events and circumstances surrounding

those parties' transfers, relationships, and conduct at issue results in an extraterritorial

application.[43]

   The fact that the BLI Decision was rendered in a different adversary proceeding from

those involved in the District Court decision also distinguishes this case from the authorities

cited in BLI's memorandum of law.  For example, in *In re Pilgrim's Pride Corporation*, a Texas

district court withdrew the reference on the bankruptcy court's own recommendation and

decided a promissory estoppel issue against one set of the debtors' claimants.[44]  When the debtor

later moved for summary judgment against a different set of claimants, the bankruptcy court

found that the previously decided promissory estoppel issue was law of the case.[45]  As such, the

authorities cited by BLI merely stand for the unremarkable proposition that a "case" in the

bankruptcy context is generally understood to mean the umbrella litigation under which the

adversary proceedings take place,[46] and that a court's prior rulings in the case can constitute law

of the case in the adversary proceedings.[47]

---

[43] That BLI previously moved to dismiss on extraterritoriality issue and had the issue decided is also what distinguishes it from other defendants who moved to withdraw the reference but not on the extraterritoriality issue. *See, e.g.*, Memorandum of Law in Support of Motion of Koch Industries, Inc. to Withdraw the Reference, *Picard v. Koch Inv. Co. UK*, 12-cv-03033 (BRL) (S.D.N.Y. Apr. 17, 2012) (defendant seeking dismissal before this Court as part of the extraterritoriality briefing procedure, but did not raise extraterritoriality in the motion it filed to withdraw the reference on other issues).

[44] *In re Pilgrim's Pride Corp.*, 442 B.R. 522, 529 (N.D. Tex. 2010).

[45] *Id.* at 534-35.

[46] *See Caldor, Inc. v. Ozer Group, L.L.C.*, (*In re Caldor Corp.*), 303 F.3d 161, 168 (2d Cir. 2002); *see also Cohen v. Bucci*, 905 F.2d 1111, 1112 (7th Cir. 1990) ("Adversary proceedings in bankruptcy are not distinct pieces of litigation; they are components of a single bankruptcy case ....").

[47] *See Bourdeau Bros., Inc. v. Montagne*, (*In re Montagne*), Nos. 08-10916, 08-1024, 2010 WL 271347, at *12 (Bankr. D. Vt. Jan. 22, 2010) (applying law of the case doctrine to dismiss abuse of process counterclaim which was identical to a claim previously litigated and lost by the same defendants in different adversary proceeding).

None of these authorities apply the law of the case doctrine to a defendant like BLI who

previously moved to dismiss on an issue, had the issue decided against it, and then sought to re-

litigate the issue after a later favorable ruling in a different adversary proceeding.

### 2.    *The Extraterritoriality Decision Is Not Binding Appellate Authority With Respect To BLI*

BLI argues that the Extraterritoriality Decision is law of the case because there has been

an intervening change in the law.[48]  Again, BLI is mistaken.  The Extraterritoriality Decision is

not binding appellate authority with respect to BLI because BLI chose to litigate the

extraterritoriality issue in this Court and was not one of the actions returned from the District

Court.[49]  It is well accepted that the decision of one district court judge is not binding on another

district court judge, even within the same district.[50]  "Logically then, a judge of the bankruptcy

court—a unit of the district court, 28 U.S.C. § 151—is not bound by the decision of a single

district court judge."[51]  Accordingly, the Extraterritoriality Decision is not an intervening change

in *controlling* law.  It is another district court's decision, which this Court is free to follow or

reject as persuasive authority based on its own independent analysis.

Finally, even if the Extraterritoriality Decision was controlling—or simply persuasive to

this Court—no "cogent or compelling reasons" exist to depart from the BLI Decision.  In the

BLI Decision this Court held that SIPA and the Bankruptcy Code applied extraterritorially under

---

[48] BLI Brief at 8.

[49] BLI Decision, 480 B.R. at 518, n.17 ("As BLI never moved to withdraw the reference and is not a party to the aforementioned [withdrawn] proceedings, [the extraterritoriality issue] remain[s] before this Court.").

[50] *Camreta v. Greene*, 131 S.Ct. 2020, 2033, n.7 (2011) ("A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case.") (quoting 18 J. Moore et al., *Moore's Federal Practice* § 134.02[1][d], p.134 (3d ed. 2011).

[51] *Daly v. Deptula* (*In re Carrozzela & Richardson*), 255 B.R. 267, 272 (Bankr. D. Vt. 2000); *see also Barnett v. Jamesway Corp.*, (*In re Jamesway Corp.*), 235 B.R. 329, 336 n.1 (Bankr. S.D.N.Y. 1999) ("We find that where the bankruptcy court sits in a multi-judge district, it is not bound by principles of stare decisis by the decision of a district judge in that district."); *Pereira v. Centel Corp.* (*In re Argo Commc'n Corp.*), 134 B.R. 776, 786 n.9 (Bankr. S.D.N.Y. 1991) (same).

*Morrison* because they focused on the effect on the domestic bankruptcy estate. In contrast, the District Court held the focus was not on the depletion of the bankruptcy estate but the recovery of subsequent transfers. However, as discussed below, the District Court's holding does not change the outcome of the analysis with respect to BLI.[52]

### B. The BLI Decision Considered the Same *Maxwell I* Factors that the District Court Said to Apply When Determining Whether an Individual Action Requires an Extraterritorial Application of SIPA and the Bankruptcy Code

The District Court held that the "transfer and component events of the transaction" test set forth in *Maxwell I* must be used to determine whether a subsequent transfer claim involves the domestic or extraterritorial application of the Code and SIPA.[53] In *Maxwell I*, the court identified all potential connections with the United States by reviewing: (i) the debtor's location; (ii) the defendants' location; (iii) where the defendants engaged in business regarding the transaction; (iv) what transaction and agreements the parties entered into that led to the debt that the transfers were used to pay; (v) where the parties' relationship was centered when conducting the transaction underlying the debt that triggered the transfers; (vi) the law governing the parties' transactions; and (vii) how the transaction was concluded.[54]

On the consolidated motion before it, the District Court's ruling did not—and could not—include individual determinations regarding whether each of the hundreds of transferors and transferees were "foreign" because the factors underlying each of the transactions were not before the District Court.[55] Indeed language from the Extraterritoriality Decision—"to the

---

[52] *Doe v. New York City Dep't of Social Services*, 709 F.2d 782, 790 (2d Cir. 1983) (denying to depart from law of the case where purported change in law did not affect trial court's prior holding); *Fogel v. Chestnut*, 668 F.2d 100, 112 (2d Cir. 1981) (same).

[53] Extraterritoriality Decision, 513 B.R. at 222, 232 n.4; *Maxwell I*, 186 B.R. at 816.

[54] *Maxwell I*, 186 B.R. at 816-17.

[55] BLI did not participate in the consolidated briefing before the District Court and thus there is no way that this case was considered by the District Court at the time of its ruling.

extent" that the Trustee's pleadings allege "purely foreign transfers," whether the Trustee "can put forth specific facts suggesting a domestic transfer," and whether the Trustee's claims "should be dismissed"—confirms that the Trustee's pleadings in those cases have yet to be reviewed and must be reviewed in the proceeding ongoing before this Court to determine whether the component events and circumstances surrounding the transfers, the parties' relationships, and the conduct at issue results in an extraterritorial application of the law.[56]

As previously determined in the BLI Decision and as further explained below, the component events and circumstances surrounding the transfer from Fairfield Sentry to BLI rebut the presumption that the Trustee is seeking to apply section 550 of the Code extraterritorially. Accordingly, even in view of the District Court's subsequent decision, the BLI Decision remains the law of the case in this proceeding and requires the denial of BLI's motion for judgment on the pleadings.

        **1.**        ***Applying the Maxwell I Factors to BLI Does Not Result in an Extraterritorial Application of the Code and SIPA***

A holistic examination of the BLI Decision provides irrefutable evidence that Judge Lifland considered the transfer and the component events of the transactions involving BLI[57]—as articulated in *Maxwell I*—and found numerous domestic elements sufficient to hold the transfer is not "purely foreign."[58]

---

[56] Extraterritoriality Decision, 513 B.R. at 222, 232; n.4; *Maxwell I*, 186 B.R. at 816.

[57] The BLI Decision's discussion of extraterritoriality in section IV, *see* BLI Decision 480 B.R. at 523-28, is neither the beginning nor the end of Judge Lifland's analysis of the "transfer and component events of the transaction" BLI entered into with Fairfield Sentry.

[58] Extraterritoriality Decision, 513 B.R. at 227 (citing *Maxwell I*, 186 B.R. at 816).

<u>Location of the Debtor</u>:    BLMIS operated from its principal place of business at 885 Third Avenue, New York, New York.[59]

<u>Location of the Initial Transferee Fund</u>:    Fairfield Greenwich Group ("FGG") based in New York managed and controlled Fairfield Sentry.[60]    Fairfield Sentry is currently in liquidation in the British Virgin Islands ("BVI").    It maintained direct customer accounts with BLMIS's investment advisory business for the purpose of investing assets with BLMIS.    Fairfield Sentry maintained in excess of 95% of its assets in its BLMIS customer accounts.[61]

<u>Location of the Defendant</u>:    BLI is an agency or instrumentality of the Republic of China (commonly known as Taiwan).[62]    Prior to investing in Fairfield Sentry, BLI hired a Taiwanese investment adviser agent, Union Securities Investment Trust Co. Ltd. ("Union Securities"), to conduct diligence on Fairfield Sentry.[63]

<u>Where Defendant Engaged in Business Regarding the Transactions</u>:    BLI and its consultant, Union Securities, are located in Taiwan.

<u>Transactions and Agreements Leading to Transfer</u>:    Prior to investing in Fairfield Sentry, "BLI hired an investment advisor agent, [Union Securities], to conduct diligence on Fairfield Sentry.    As part of this diligence, Fairfield Greenwich Group, the entity controlling Fairfield Sentry furnished BLI with a private placement memorandum and other general information about the Fund.    BLI also received specific information about the Fund's investment strategy,

---

[59] *See* BLI Compl. ¶ 23; *see also* BLI Decision, 480 B.R. 501, n.4 ("A comprehensive discussion of the facts underlying this SIPA liquidation and Madoff's notorious Ponzi scheme is set forth in this Court's March 1, 2010 net equity decision.") (citing *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.),* 424 B.R. 122, 125–33 (Bankr. S.D.N.Y. 2010)).

[60] BLI Decision, 480 B.R. at 507; *see also* BLI Compl. ¶ 7.

[61] BLI Compl. ¶ 3.

[62] BLI Decision, 480 B.R. at 507.

[63] *See* Declaration of Thomas L. Long in Support of the Trustee's Memorandum of Law in Opposition to the Motion to Dismiss of the Bureau of Labor Insurance, *Picard v. Bureau of Labor Ins.*, No. 11-02732 (BRL) (Bankr. S.D.N.Y. Apr. 4, 2012), ECF No. 17-1.

along with past results and details of specific trades in the Standard & Poor's 100 Index ('S&P 100')."[64]

Through this investigation, BLI knew Fairfield Sentry's "[investment] strategy is executed by Bernard L. Madoff Securities and that a minimum of 95% of the Fund's assets would be held in BLMIS's custody in New York and invested in U.S. Securities and Treasuries."[65] Armed with this knowledge, BLI decided to invest in Fairfield Sentry.

On January 4, 2007, BLI executed a subscription agreement ("Agreement") with Fairfield Sentry.[66]   The Agreement expressly incorporated the 2004 and 2006 private placement memoranda ("PPMs"), which "clearly highlighted the prominent role of New York-based BLMIS's split strike conversion strategy (the 'SSC Strategy') in Fairfield Sentry's investments."[67]  The BLI Decision highlighted the following disclosures:

- "As a result of the Investment Manager's selection of Bernard L. Madoff Investment Securities, LLC ('BLM[IS]') as execution agent of the split strike conversion strategy, substantially all of the Fund's assets will be held in segregated accounts at BLM[IS], a U.S. registered broker-dealer and qualified custodian."[68]

- "During those times when BLMIS's SSC strategy was not in the U.S. equity markets, investor funds were used to purchase U.S. Treasury Bills."[69]

- "When the Fund invests utilizing the 'split strike conversion' strategy ... it will not have custody of the assets so invested" because "BLMIS would retain custody of at least 95% of the Fund's assets in the United States . . . ."[70]

- BLMIS would "determine which shares of companies on the S & P 100 would be purchased, as well as the timing of such purchases."[71]

---

[64] BLI Decision, 480 B.R. at 507.

[65] *Id.* at 507 (internal quotations omitted).

[66] *Id.*

[67] *Id.* at 508.

[68] *Id.* (alteration in original).

[69] *Id.*

[70] *Id.*

- "The services of BLM[IS] and its personnel are essential to the continued operation of the Fund, and its profitability, if any."[72]

- "Fairfield Sentry's investment manager, Fairfield Greenwich (Bermuda) Ltd., had the discretion to invest less than 5% of the fund's net asset value outside of BLMIS's SSC strategy, with the rest going to BLMIS."[73]

The BLI Decision also detailed the various ways the Agreement memorialized the connections between BLI and New York, including:

- "*First*, BLI agree[d] that any suit, action or proceeding ... with respect to this Agreement and [Fairfield Sentry] may be brought in New York and irrevocably submit[ted] to the jurisdiction of the New York courts with respect to any [p]roceeding."[74]

- "*Second*, the Agreement specified that it shall be governed and enforced in accordance with the laws of New York, without giving effect to its conflict of laws provisions."[75]

- "*Third*, the Agreement required that all subscription payments from BLI to Fairfield Sentry pass through Fairfield Sentry's New York HSBC bank account."[76]

- "*Finally*, BLI specified that all redemption payments from Fairfield Sentry Investments should be wired only to JPMorgan Chase Bank, New York at 270 Park Avenue, New York, N.Y. 10017, USA."[77]

Center of the Parties' Relationship when Conducting the Transactions and Transfer: The BLI Decision is unambiguous that BLI's investments "did not merely 'end up' in an account at BLMIS as a result of happenstance or coincidence."[78] Rather, BLI "purposefully availed itself of the benefits and protections of New York laws by knowing, intending and contemplating that the substantial majority of funds invested in Fairfield Sentry would be transferred to BLMIS in New

---

[71] *Id.*

[72] *Id* (alteration in original).

[73] *Id.*

[74] *Id.* (emphasis in original) (alterations in original) (internal quotation marks omitted) (citing Agreement, p. 6, ¶ 19).

[75] *Id.* (emphasis in original) (internal quotation marks omitted) (citing Agreement, p. 5, ¶ 16).

[76] *Id.* (emphasis in original) (internal quotation marks omitted) (citing Agreement, p. 5, ¶ 16).

[77] *Id.* (emphasis in original) (internal quotation marks omitted) (citing Agreement, p. 11, ¶ 30(g)).

[78] *Id.* at 518.

York to be invested in the New York securities market."[79]  This Court repeatedly acknowledged

that BLI knew and intended its investment in Fairfield Sentry to be centered in New York:

- "BLI invested tens of millions of dollars in Fairfield Sentry with the <u>specific purpose</u> of having funds invested in BLMIS in New York, and intended to profit from this U.S.-based investment."[80]

- "BLI intended to <u>purposefully</u> avail itself of the forum [New York] . . . ."[81]

- "Armed with this knowledge, BLI <u>chose to invest</u> in Fairfield Sentry . . . ."[82]

- "BLI cannot claim a violation of its due process rights from having to appear in a New York court to defend itself in a suit arising from activities with <u>a clear New York nexus</u>."[83]

- "[T]his is not a situation where the ripples caused by an overseas transaction manage eventually to reach the shores of the United States. Rather, BLI <u>intended</u> to profit from BLMIS in New York through investments in Fairfield Sentry."[84]

- "BLI's actions <u>caused a direct effect in the United States</u> by causing a two-way flow of funds to and from New York-based BLMIS: to BLMIS for investment in U.S. Securities and U.S. Treasuries and from BLMIS in the form of profits from those investments."[85]

- The "movement of money to and from BLMIS in the United States, as contemplated by the Agreements, was <u>not fortuitous or incidental</u>; instead, it was '<u>the ultimate objective</u>' and the '<u>raison d'etre</u>' of the Agreement between BLI and Fairfield Sentry."[86]

- "At bottom, the Trustee's instant suit is based upon BLI's investment of tens of millions of dollars in Fairfield Sentry with the <u>specific goal</u> of having funds invested in BLMIS in New York, with <u>intent</u> to profit therefrom. Such investment was <u>not haphazard</u>. Rather, BLI <u>intentionally</u> tossed a seed from abroad to take root and grow as a new tree in the Madoff money orchard in the United States and reap the benefits therefrom."[87]

---

[79] *Id.*

[80] *Id.* (emphasis added).

[81] *Id.* (emphasis added).

[82] *Id.* at 507.

[83] *Id.* at 517 (emphasis added).

[84] *Id.* (emphasis added) (internal quotation marks omitted).

[85] *Id.* at 513 (emphasis added).

[86] *Id.* (quoting *Filetech S.A. v. France Telecom, S.A.*, 212 F. Supp. 2d 183, 197 (S.D.N.Y. 2001)).

[87] *Id.* at 506.

Law Governing the Parties' Transactions:  BLI warranted in the Agreement that it was a "professional investor," and had the knowledge and expertise in financial matters sufficient to evaluate the risks involved in an investment in Fairfield Sentry, including agreeing that its investment "shall be governed and enforced in accordance with the laws of New York, without giving effect to its conflict of laws provisions" and requiring BLI to "irrevocably submit[] to the jurisdiction of the New York courts."[88]

How the Transaction was Concluded:  On July 4, 2008, a BLI representative in Taiwan submitted a redemption request via fax to Fairfield Sentry's administrator specifying that redeemed funds should be wired to the New York JP Morgan Account.[89]  As noted by Judge Lifland, BLI's redemption request: (1) triggered a transfer of over $42 million from BLMIS's accounts in New York, through New York banks, finally to BLI abroad; and (2) resulted in a sizeable financial loss for a U.S. entity, BLMIS, and for BLMIS customers who will receive less of a distribution from the Trustee's customer fund if the $42 million were to remain with BLI.[90]

## C.    Additional Evidence Demonstrates the Domestic Nature of the Transfer

Nevertheless if in light of the Extraterritoriality Decision, this Court now finds the Trustee has not alleged a sufficiently domestic transfer despite Judge Lifland's analysis of the *Maxwell I* factors, this Court may convert the motion into one for summary judgment and consider the additional evidence that demonstrates the domestic nature of the transfer.[91]  In so

---

[88] *Id*. at 508 (citations omitted).

[89] *Id*. at 509 (citing Declaration by Tsai, Chung–Chun in Support of Defendant's Motion to Dismiss Plaintiff's First Amended Complaint ¶ 15, *Picard v. Bureau of Labor Ins.*, No. 11-02732 (BRL) (Bankr. S.D.N.Y. Feb. 3, 2012), ECF No. 9; Supplemental Declaration of Tsai, Chung–Chun Tsai ¶ 6, Ex. A, *Picard v. Bureau of Labor Ins.*, No. 11-02732 (BRL) (Bankr. S.D.N.Y. Feb. 3, 2012), ECF No. 39).

[90] *Id*. at 513, 514 n. 10.

[91] Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."); *Fonte v. Bd. Of Managers of Cont'l Towers Condo.*, 848 F.2d 24, 25 (2d Cir. 1988) (explaining that Fed. R. Civ. P. 12(d) gives

doing, this Court should consider the following evidence regarding the location of the initial

transferee fund, Fairfield Sentry.

> ### 1.    *Fairfield Sentry's Principal Place of Business Was in New York Where It Was Created, Operated, and Controlled from FGG's New York Headquarters*

In or around 1988, Walter Noel and Jeffrey Tucker founded FGG, a *de facto* partnership

operated out of New York, New York.[92]  FGG was essentially a collection of investment funds

and the individuals and entities that operated those funds.[93]

On October 30, 1990, FGG founding partners, Noel and Tucker, organized Fairfield

Sentry for the purpose of creating a fund to invest with Madoff.[94]  Fairfield Sentry was the

largest BLMIS feeder fund ("Feeder Fund")—a single-purpose investment fund that pooled its

investors' assets to invest with New York-based BLMIS.[95]

Noel and Tucker chose to organize Fairfield Sentry under BVI law in order to avoid U.S.

taxation and enjoy tax-free status in the BVI.[96]  Fairfield Sentry was present in the BVI on paper

---

courts "two options when matters outside the pleadings are presented in response to a 12(b)(6) motion: the court may exclude the additional material and decide the motion on the complaint alone or it may convert the motion to one for summary judgment under Fed. R. Civ. P. 56 and afford all parties the opportunity to present supporting material").

[92] Declaration of Torello Calvani, Esq. June 9, 2015 ("Calvani Decl."), Ex. 1, SECSEV0040051 at 0053–0054 (FGG presentation describing FGG's history); Ex. 2, SECSEV2348748 at 8760 (October 1, 2004 Fairfield Sentry PPM stating "FGG maintains its principal office in New York"), attached as Exhibit 4 to the Declaration of Thomas L. Long in Support of the Trustee's Memorandum of Law in Opposition to the Motion to Dismiss the Bureau of Labor Insurance, April 19, 2012, ECF No. 17, and referred to in the BLI Decision as the "2004 PPM." BLI Decision, 480 B.R. at 507.

[93] *See Anwar v. Fairfield Greenwich Ltd.*, 728 F. Supp. 2d 372, 403 (S.D.N.Y. 2010) (holding FGG was a *de facto* partnership).

[94] Calvani Decl., Ex. 3 SECSEV3005218 at 5230 (August 14, 2006 Fairfield Sentry PPM explaining "[t]he Fund was incorporated in the Territory of the British Virgin Islands ('BVI') as an international business company on October 30, 1990."), attached as Exhibit 1 to the Supplemental Declaration of Thomas L. Long in Support of the Trustee's Sur-Reply in Opposition to the Motion to Dismiss the Bureau of Labor Insurance, July 16, 2012, ECF No. 46, and referred to in the BLI Decision as the "2006 PPM." BLI Decision, 480 B.R. at 507.

[95] *Id.* at 5233.

[96] *Id.* at 5221 ("The Fund is incorporated as an International Business Company under the International Business Companies Act of the British Virgin Islands.").

only—the fund never had any employees or offices in the BVI,[97] and was legally prohibited from

doing business with most BVI residents.[98]

Fairfield Sentry's operations, structure, agreements, and marketing materials all

demonstrate that Fairfield Sentry's principal place of business was the United States. FGG

operated Fairfield Sentry from its New York headquarters, and the fund was operated almost

entirely by FGG personnel based in New York ("FGG New York Personnel").[99] FGG New York

Personnel made operational decisions regarding Fairfield Sentry;[100] had final control of Fairfield

Sentry's banking accounts;[101] and controlled and approved subscriptions into and redemptions

from the fund;[102] monitored Fairfield Sentry's investments;[103] managed Fairfield Sentry's

relationship with BLMIS, Madoff, clients, and potential clients;[104] approved marketing and

---

[97] *Id.* at 5223 (listing a PO Box c/o Codan Trust Company (BVI) Ltd. as the address for Fairfield Sentry); Calvani Decl., Ex. 1, SECSEV0040051 at 0057 (FGG presentation listing FGG's locations with no reference to the BVI).

[98] Calvani Decl., Ex. 3, SECSEV3005218 at 5261 (2006 PPM explaining "[t]he Shares offered hereby may not be sold to or purchased by persons resident in the British Virgin Islands, but may be sold to British Virgin Islands international business companies").

[99] Calvani Decl., Ex. 4, SECSEV2968041 (FGG's New York headquarters floor plan showing, among others, the offices of Jeffrey Tucker, Dan Lipton, Andres Piedrahita, Mark McKeefry, Lourdes Barreneche, Cornelis Boele, Jacqueline Harary, and Philip Toub); Ex. 1, SECSEV0040051 at 0069–0077 (FGG presentation noting that FGG's founding partners Walter Noel and Tucker were based in FGG's Greenwich, Connecticut and New York, New York offices, respectively, and that 11 other FGG personnel were based in FGG's New York headquarters).

[100] Calvani Decl., Ex. 5, SECSEV0729553; Ex. 6, SECSEV1772566; Ex. 7, SECSEV0613197; Ex.8 SECSEV0604041; Ex. 9, SECSEV0742678; Ex. 10, SECSEV2138859.

[101] Calvani Decl., Ex. 5, SECSEV0729553 at 9553 (Written resolutions of all Directors of the Company, dated September 14, 2004 stating New York-based Lipton was "authorized to sign and otherwise execute for and in the name of the Company … any of the following transactions on behalf of the Company" including "Deposits and Withdrawals in overnight deposit account XX8568 at Citco Bank Nederland N.V. in the name of Fairfield Sentry Limited").

[102] Calvani Decl., Ex. 6, SECSEV1772566 (internal FGG email showing Tucker approving a subscription into Fairfield Sentry); Ex. 7, SECSEV0613197 (same); Ex.8, SECSEV0604041 (internal FGG email showing Tucker and Lipton had authority to approve redemptions from Fairfield Sentry); Ex. 9, SECSEV0742678 (internal FGG email showing Tucker approving a redemption from Fairfield Sentry).

[103] Calvani Decl., Ex. 10, SECSEV2138859 (internal FGG email showing Lipton making the ultimate decision regarding how much money FGG will send to Madoff from Fairfield Sentry).

[104] Calvani Decl., Ex. 11, SECSEV23243675 (letter from Tucker to Madoff discussing steps FGG was taking to increase subscriptions in Fairfield Sentry and indicating Tucker, along with other founding partners Noel and Piedrahita would like to meet and speak with Madoff in person); Ex. 12, SECSEV0033350 (notes from a meeting at

performance materials for Fairfield Sentry;[105] marketed Fairfield Sentry;[106] performed administrative functions required by Fairfield Sentry;[107] negotiated agreements on behalf of Fairfield Sentry;[108] and directed investments into and out of BLMIS.[109]  FGG maintained Fairfield Sentry's books and records in New York.[110]

### 2. *Fairfield Sentry's Agreements with BLMIS Confirm Fairfield Sentry's Principal Place of Business Was the United States*

In Fairfield Sentry's agreements with BLMIS, it was clear that Fairfield Sentry operated in the United States.  BLMIS account documents from the early 1990s listed Fairfield Sentry's address as the office address of Fairfield International Managers—an operating company jointly

---

BLMIS's office, listing the attendees as Madoff, Frank DiPascali, Noel, Tucker, McKeefry, and Amit Vijayvergiya); Ex.13, SECSEV0963565 (email showing FGG New York Personnel managing the relationship with a client invested in Fairfield Sentry); Ex. 14, EFG_Cap_E-0007758 (client notes entitled "Meeting at Fairfield Greenwich Group New York" regarding Fairfield Sentry and BLMIS); Ex. 15, SECSEV0695834 (internal FGG email regarding a Fairfield Sentry client meeting with Tucker at FGG's New York headquarters); Ex.16, SECSEV1771902 (FGG New York Personnel including Tucker and Lipton discussing via email the form and content of a monthly commentary on Fairfield Sentry).

[105] Calvani Decl., Ex. 17, SECSEV0580779 (Lipton explaining via email to FGG New York Personnel would be in charge of "sign off" and "approv[al]" of Fairfield Sentry marketing materials containing monthly performance statistics referred to as "tear sheets").

[106] Calvani Decl., Ex. 1,  SECSEV0040051 at 0071, 0073, 0077 (FGG presentation noting FGG New York Personnel marketing responsibilities of Barreneche, Boele, Harary, and Toub); *see also* Ex. 13, SECSEV0963565; Ex. 14, EFG_Cap_E-0007758; Ex. 15, SECSEV0695834.

[107] Calvani Decl., Ex. 18, SECSEV0863707 (internal FGG email indicating FGG New York Personnel were in charge of managing folders containing information related to Fairfield Sentry); Ex. 19, AMF00071583 at 1589 (fax Madoff directing all future mailings related to Fairfield Sentry to FGG's New York headquarters).

[108] Calvani Decl., Ex. 20, SECSEV0056365 (Letter of Understanding between EFG Private Bank SA and Fairfield Greenwich Limited signed by FGG New York-based employee Robert Blum, which discusses fees EFG Private Bank SA would receive in connection with selling shares of Fairfield Sentry and contains a New York choice of law provision).

[109] Calvani Decl., Ex. 10, SECSEV2138859 (internal FGG email showing Lipton deciding how much money FGG will send to BLMIS from Fairfield Sentry); Ex. 5, SECSEV0729553 (Written resolutions of all Directors of the Company, dated September 14, 2004, stating New York-based Lipton was "authorized to sign and otherwise execute for and in the name of the Company … any of the following transactions on behalf of the Company" including "Transfers of funds to and from investment accounts … held with Bernard L. Madoff Investment Securities, LLC and accounts at Citco Bank Nederland N.V. in the name of Fairfield Sentry Limited").

[110] Calvani Decl., Ex. 18, SECSEV0863707 (email listing the Fairfield Sentry files maintained at FGG's New York headquarters).

owned by Noel and Tucker—in Greenwich, Connecticut.[111]  In 1998, FGG faxed a change of address notice to BLMIS indicating Fairfield Sentry's address was now FGG's New York headquarters.[112]

The account documents were executed by FGG New York Personnel.  Tucker executed the original account opening documents on behalf of Fairfield Sentry.[113]  Later, FGG partners Tucker, Daniel Lipton, and Mark McKeefry—all located in FGG's New York headquarters— executed additional BLMIS account documents on behalf of Fairfield Sentry including: customer agreements,[114] trade authorizations,[115] options agreements,[116] and Internal Revenue Service forms.[117]

The BLMIS customer agreements covering Fairfield Sentry's BLMIS accounts are governed by New York law and all disputes arising under the agreements must be resolved by mandatory arbitration in New York utilizing the laws of New York.[118]  All transactions under Fairfield Sentry's BLMIS customer agreements were subject to the Securities Exchange Act of 1934 and to the rules and regulations of the SEC and Board of Governors of the Federal Reserve

---

[111] Calvani Decl., Ex. 21, AMF00071631 (excerpt from Fairfield Sentry's BLMIS account opening documents).

[112] Calvani Decl., Ex. 19, AMF00071583 at 1589 (excerpt from Fairfield Sentry's BLMIS account opening documents).

[113] *Id.* at 1609-1613 (excerpt from Fairfield Sentry's BLMIS account opening documents).

[114] Calvani Decl., Ex. 22, SECSEV0033372 at 3377-3379 (excerpt from Fairfield Sentry's BLMIS account opening documents).

[115] *Id.* at 3374 (excerpt from Fairfield Sentry's BLMIS account opening documents); Calvani Decl., Ex. 23, MS00867576 at 7586, 7597, 7608 (same).

[116] *Id.* (excerpt from Fairfield Sentry's BLMIS account opening documents); Ex. 23, MS00867576 at 7576-77, 7609-10 (same).

[117] Calvani Decl., Ex. 19, AMF00071583 at 1583 (excerpt from Fairfield Sentry's BLMIS account opening documents).

[118] Calvani Decl., Ex. 22, SECSEV0033372 at 3377-79 (excerpt from Fairfield Sentry's BLMIS account opening documents).

System.[119]  Every BLMIS trade confirmation received and reviewed by FGG personnel on behalf

of Fairfield Sentry identified BLMIS as a U.S. registered broker-dealer and a Securities Investor

Protection Corporation member regulated by the SEC.[120]

As detailed above, Fairfield Sentry's principal place of business was in New York, and it

was a domestic resident.  As such, the transfer the Trustee seeks to recover from BLI is domestic

in nature and no extraterritorial application of the Bankruptcy Code or SIPA is required.

### D.    Comity Does Not Preclude Application of the Bankruptcy Code or SIPA

BLI contends for the first time in this motion that the Trustee's claims must be dismissed

on the grounds of comity because Fairfield Sentry is subject to a liquidation proceeding in BVI,

so the BVI must have a greater interest than the United States in applying its law to the transfer

at issue.[121]  For many reasons—factual, procedural, and legal—this is not true.

BLI argues under the District Court's decision that courts conducting a comity analysis

must apply the choice-of-law analysis articulated by the Second Circuit in *Maxwell*

*Communications Corporation v. Société Generale ("Maxwell II")* to determine whether the

application of U.S. law would be reasonable under the circumstances, comparing the interests of

the United States and the relevant foreign state.[122]  What BLI fails to tell this Court is that Judge

---

[119] *Id.* at 3377 (excerpt from Fairfield Sentry's BLMIS account opening documents).

[120] Calvani Decl., Ex. 24, SECSEV0009959 (BLMIS trade confirmation addressed to "FAIRFIELD SENTRY LTD C/O FAIRFIELD GREENWICH GROUP" at its New York headquarters, noting BLMIS was a member of the National Association of Securities Dealers, SIPC, National Securities Clearing Corporation, and Depository Trust Company).

[121] BLI did not raise comity in its motion to dismiss, nor was comity included in the 13 affirmative defenses asserted in its answer. Memorandum of Law in Supoort of Defendant's Motion to Dismiss, *Picard v. Bureau of Labor Ins.*, No. 11-02732 (BRL) (Bankr. S.D.N.Y. Feb. 3, 2012), ECF No. 10; Answer and Jury Demand, *Picard v. Bureau of Labor Ins.*, No. 11-02732 (BRL) (Bankr. S.D.N.Y. Feb. 28, 2013), ECF No. 54.

[122] Extraterritoriality Decision, 513 B.R. at 231 (citing *Maxwell Commc'n. Corp. v. Société General (In re Maxwell Commc'n Corp.),* 93 F.3d 1036, 1047-48 (2d Cir.1996)).

Lifland already analyzed—and rejected—whether principles of comity justify this Court's

abstention under *Maxwell II*.

> Employing a comity analysis, the Second Circuit held that as
> *Maxwell* involved a debtor subject to joint insolvency proceedings
> in the United States and the United Kingdom, the doctrine of
> international comity precludes application of the American
> avoidance law to transfers in which England's interest has
> primacy. <u>This reasoning has no applicability to the instant case,
> where BLMIS is not subject to parallel liquidation proceedings in
> another court.</u>[24]
>
> _____
> [24] In addition, comity is an affirmative defense that BLI has the
> burden of proving. As BLI has not argued that comity concerns
> prevent the application of Section 550 to its receipt of fraudulent
> transfers from BLMIS, the Court need not address the issue.[123]

BLI articulates no other or independent basis for this affirmative defense:  it identifies no

change in controlling law on comity since it was actually decided by Judge Lifland; no actual

conflict of laws; and certainly no "extraordinary" circumstances that would make abstention

appropriate.  The same factors that demonstrate why the transfer to BLI at issue in this action is

domestic also demonstrate why deference to Fairfield Sentry's BVI liquidation proceeding is

inappropriate.

> ### 1.    BLI Fails to Meet its Burden of Establishing that Comity Precludes the Trustee's Recovery of the Transfer at Issue

Comity is an affirmative defense dependent on the specific facts present in each case.[124]

In conducting a comity analysis, courts in this Circuit apply a two-part test requiring a defendant

to show that: (i) parallel proceedings in the United States and overseas constitute "a true conflict

_____

[123] BLI Decision, 480 B.R. at 526 n.24 (emphasis added) (internal citations omitted).

[124] *Allstate Life Ins. Co. v. Linter Group Ltd.*, 994 F.2d 996, 999 (2d Cir. 1993) (quoting *Drexel Burnham Lambert Group, Inc. v. Galadari*, 777 F.2d 877, 880 (2d Cir. 1985)).

between American law and that of a foreign jurisdiction,"[125] and (ii) "the specific facts . . . are sufficiently exceptional to justify abstention" and to "outweigh the district court's general obligation to exercise its jurisdiction."[126]

BLI does not address either factor.   Instead, it baldly asserts that the District Court concluded that "claims based on extraterritorial transfers from foreign feeder funds such as Fairfield Sentry should be dismissed on comity grounds" because: (i) "the 'subsequent transfer' at issue in this adversary proceeding was made by Fairfield Sentry, which is currently in liquidation proceedings in its home country, the BVI," and (ii) the "BVI has a greater interest in applying its own laws to the matters at issue in this proceeding than does the United States."[127] This assertion misconstrues the District Court's decision and falls well short of satisfying the Second Circuit two-part test for comity.

### 2.    No Parallel Proceeding With Substantially Similar Parties and Issues Exist

To prevail BLI must show that "substantially the same [parties are] litigating substantially the same issues" simultaneously in the United States and overseas.[128]   Though Fairfield Sentry is involved in liquidation proceedings abroad, BLI fails to show how this presents an actual conflict.   BLI cannot make this showing because Fairfield Sentry's BVI liquidation is not a parallel proceeding to the Trustee's domestic recovery action; rather it is a third-party action to which the Trustee is not a party and in which the Trustee did not participate,

---

[125] *See Maxwell II,* 93 F.3d at 1049 (citing *Hartford Fire Ins. v. California*, 509 U.S. 764, 798 (1993)); *Société Nationale Industrielle Aerospatiale v. U.S. Dist. Ct.*, 482 U.S. 522, 555 (1987) (Blackmun, J., dissenting) (existence of a true conflict is a "threshold question")).

[126] *Royal and Sun Alliance Ins. Co. of Canada v. Century Int'l Arms, Inc*., 466 F.3d 88, 94-95 (2d Cir. 2006).

[127] BLI Brief at 13-14.

[128] *Royal and Sun Alliance*, 466 F.3d at 94; *see also Ace Arts, LLC v. Sony/ATV Music Pub., LLC*, No. 13-cv-7307 (AJN,), 2014 WL 4804465, at *5 (S.D.N.Y. Sept. 26, 2014) (actions involving one common party and one common claim insufficiently parallel to warrant abstention); *Tarazi v. Truehope, Inc*., 958 F. Supp. 2d 428, 435 (S.D.N.Y. 2013).

the outcome of which will not resolve the Trustee's claims. Thus, Fairfield Sentry's foreign liquidation proceeding and the Trustee's subsequent transfer action before this Court do not involve the same parties or issues.[129]

Second Circuit precedent is clear—identification of a parallel proceeding with a true conflict is required before abstaining on comity grounds.[130] The District Court decision acknowledges this precedent with its reference to *Maxwell II*, which considers the existence of a true conflict in a parallel proceeding to be a threshold issue.[131] This is why Judge Lifland rejected comity *in this action* because, as a threshold matter, "BLMIS is not subject to parallel liquidation proceedings in another court." [132] Because no parallel proceedings exist here, then *a fortiori* no "true" conflict can exist either.

### 3. BLI has Identified No Exceptional Circumstances to Support the Application of Comity, and None Exists

Courts do not defer to a foreign jurisdiction based on circumstances that routinely exist in a parallel litigation.[133] Even if BLI could prove that a parallel proceeding posed a true conflict with United States law in this recovery proceeding—which it cannot—BLI would still have to show that exceptional circumstances exist to justify this Court's abstention. To evaluate whether "exceptional circumstances" are present, the Second Circuit reviews: (i) adequacy of the

---

[129] Notably, this Court granted Chapter 15 recognition to Fairfield Sentry, and subsequently the Joint Liquidator filed an action against BLI under a theory of mutual mistake as to the net asset value of the fund. *See* Amended Complaint, *Fairfield Sentry Limited (In Liquidation) v. Bureau of Labor Ins.*, Adv. Pro. No. 11-01574 (SMB) (Bankr. S.D.N.Y. Oct. 5, 2012), ECF No. 10. This Court approved a settlement between the Trustee and the Joint Liquidator that allowed both the Trustee and the Liquidator to maintain actions simultaneously against common defendants under different legal principles in order to ensure adequate recovery for both Fairfield Sentry and the BLMIS estate.

[130] *Maxwell II*, 93 F.3d at 1049.

[131] *See id.*; Extraterritoriality Decision, 513 B.R. at 231.

[132] BLI Decision, 480 B.R. at 523.

[133] *Royal and Sun Alliance*, 466 F.3d at 92 ("[P]arallel proceedings in the same in personam claim should ordinarily be allowed to proceed simultaneously, at least until a judgment is reached in one which can be pled as res judicata in the other.") (citations omitted).

27

alternate forum; (ii) potential prejudice to either party; (iii) the convenience of the parties; (iv) the connection between the litigation and the United States; and (v) the connection between the litigation and the foreign jurisdiction.[134] No one factor is determinative; instead, the court's ultimate determination is based upon the "totality of the circumstances."[135]

No exceptional circumstances are present here. Concerning "potential prejudice to and convenience of the parties," the Trustee is not a party to foreign liquidation proceedings, and such proceedings do not implicate the BLMIS estate. Considering "the interests of the affected forums . . . and the mutual interest of all nations,"[136] this Court has noted that the United States "has a strong interest in applying the fraudulent transfer provisions of the Bankruptcy Code which are incorporated through SIPA."[137] BLI has failed to identify any parallel proceedings, analyze these factors in any of the Trustee's recovery actions, articulate why Judge Lifland's prior finding as to the application of comity in this action should be disturbed, or make any affirmative showing to warrant dismissal on comity grounds. This Court should not abstain from hearing the Trustee's recovery action against BLI.

---

[134] *Id.* at 94; *see also Lauritzen v. Larsen,* 345 U.S. 571, 582 (1953); *Maxwell II,* 93 F.3d at 1048; *Ace Arts, LLC,* 2014 WL 4804465, at *4.

[135] *Royal and Sun Alliance*, 466 F.3d at 94.

[136] BLI Brief at 14.

[137] *Picard v. Igoin (In re Madoff Sec.)*, No. 08-01789 (SMB), 2015 WL 603209, at *8 (Bankr. S.D.N.Y. Feb. 13, 2015). Moreover, this Court has found that it has a "substantial interest" in trying the adversary proceedings that share common factual and legal issues with the more than 1,000 cases in the BLMIS liquidation. *Id.* at *9.

## IV.  <u>CONCLUSION</u>

Based on the foregoing, the Trustee respectfully requests that this Court deny BLI's

motion for judgment on the pleadings.

Dated: June 9, 2015                       /s/ Thomas L. Long
     New York, New York             **Baker & Hostetler LLP**
                                45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Thomas L. Long
Torello Calvani
Catherine E. Woltering

**Baker & Hostetler LLP**
65 E. State Street
Suite 2100
Columbus, Ohio 43215
Telephone: (614) 589-4200
Facsimile: (614) 589-4201
Lauren M. Hilsheimer

*Attorneys for Irving H. Picard, Trustee for the*
*Substantively Consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities*
*LLC and the estate of Bernard L. Madoff*

29