United States District Court
Southern District of New York

_____

In re BERNARD L. MADOFF
INVESTMENT SECURITIES LLC,

                              Debtor,

_____

ADELE FOX, ET AL.,                          14 Cv. 6790 (JGK)

                    Appellants,

          - against –                        OPINION AND ORDER

IRVING H. PICARD,

                    Appellee,

          - and -

_____

CAPITAL GROWTH COMPANY, ET AL.,

                    Intervenors.

_____

JOHN G. KOELTL, District Judge:

     This bankruptcy appeal arises out of Bernard L. Madoff's
Ponzi scheme and the subsequent bankruptcy of Bernard L. Madoff
Investment Securities LLC ("BLMIS") in the wake of the public
revelation of that scheme.  In early 2010, the appellants, Adele
Fox and Susanne Stone Marshall, who each had invested money in
BLMIS, sought to file separate class action lawsuits in the
United States District Court for the Southern District of
Florida (the "Florida Actions") asserting state law claims
against Jeffrey Picower, an alleged Madoff co-conspirator, and
other related defendants (collectively, the "Picower
defendants").  The appellee, Irving H. Picard ("Picard" or the

1

"Trustee"), is the trustee for the BLMIS estate pursuant to the Securities Investor Protection Act of 1970 ("SIPA"), 15 U.S.C. §§ 78aaa *et seq.* After Picard reached a $7.2 billion settlement agreement with the Picower defendants, the United States Bankruptcy Court for the Southern District of New York granted Picard's motion to enjoin the appellants' Florida lawsuits because they were commenced in violation of the Automatic Stay Order in the BLMIS liquidation proceeding, and approved the settlement and a permanent injunction precluding the assertion of claims that were duplicative or derivative of claims brought by the Trustee, or that could have been brought by the Trustee, against the Picower defendants. On March 26, 2012, this Court affirmed the bankruptcy court's Automatic Stay Order and its approval of the settlement and injunction.

The Court of Appeals for the Second Circuit affirmed that judgment. Marshall v. Picard (In re Bernard L. Madoff Inv. Secs. LLC), 740 F.3d 81, 96 (2d Cir. 2014). In the present appeal, the appellants challenge the decision of the bankruptcy court (Bernstein, B.J.), preventing the appellants from filing a Second Amended Complaint in the Florida district court alleging new claims against the Picower defendants. The bankruptcy court held that the appellants' new claims, including a claim under Section 20(a) of the Securities Exchange Act of 1934 ("the Exchange Act"), 15 U.S.C. § 78t(a) (the "Section 20(a) Claim"),

and a claim under the Federal Racketeer Influenced and Corrupt
Organization Act, 18 U.S.C. § 1961 *et seq.* (the "Federal RICO
Claim"), were derivative of the Trustee's claims against the
Picower defendants and therefore were precluded by the permanent
injunction.

For the reasons that follow, the bankruptcy court was
correct in finding that the appellants' proposed complaint was
derivative of the Trustee's claims on behalf of all the
creditors of BLMIS and was barred by the permanent injunction.

## I.

The factual background of this case was set out at length
in this Court's prior decision.  See Fox v. Picard (In re
Madoff), 848 F. Supp. 2d 469, 473-76 (S.D.N.Y. 2012).  The Court
assumes familiarity with that decision.  The following factual
and procedural background is presented for its relevance to this
appeal.

In May 2009, the Trustee first filed an adversary
proceeding against the Picower defendants (the "New York
Action"), bringing claims under federal and New York state law
for, among other things, fraudulent transfers and conveyances
made by the Picower defendants as part of their conspiracy with
Madoff.  The Trustee's complaint alleged that the Picower
defendants, knowing that BLMIS was an elaborate hoax, withdrew

billions of dollars from their BLMIS accounts, money that belonged to defrauded BLMIS customers.

In February 2010, appellants Fox and Marshall filed separate class action lawsuits in the United States District Court for the Southern District of Florida, alleging Florida state law claims against the Picower defendants based on the same factual allegations as the Trustee's complaint (the "Florida Actions"). Indeed, much of the appellants' initial complaints were cut-and-paste repetitions of the Trustee's complaint. The Trustee filed a motion in the bankruptcy court to enjoin those lawsuits, and on May 3, 2010, the bankruptcy court granted the Trustee's motion. The bankruptcy court held that the appellants' claims were covered by the automatic stay provisions of 11 U.S.C. § 362(a) and therefore belonged "exclusively to the Trustee." Secs. Investor Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC ("Automatic Stay Decision"), 429 B.R. 423, 432 (Bankr. S.D.N.Y. 2010). The court also found that the Florida Actions violated part of a protective order issued by the District Court for the Southern District of New York on December 15, 2008, which had placed BLMIS customers under the protection of the SIPA. Id. at 433. Finally, the bankruptcy court issued a preliminary injunction pursuant to 11 U.S.C. § 105(a) finding that the Florida Actions threatened the BLMIS estate. Id. at 434.

4

Thereafter, the Trustee reached a settlement with the
Picower defendants pursuant to which the Picower defendants
agreed to return $5 billion to the BLMIS estate and forfeit $2.2
billion to the Government.  The $7.2 billion represented the
entire amount of money withdrawn by the Picower defendants from
their BLMIS accounts.  On January 13, 2011, the bankruptcy court
approved the settlement and issued the following permanent
injunction pursuant to the settlement agreement:

> [A]ny BLMIS customer or creditor of the BLMIS estate who
> filed or could have filed a claim in the liquidation,
> anyone acting on their behalf or in concert or
> participation with them, or anyone whose claim in any way
> arises from or is related to BLMIS or the Madoff Ponzi
> scheme, is hereby permanently enjoined from asserting any
> new claim against the Picower BLMIS Accounts or the Picower
> Releasees that is duplicative or derivative of the claims
> brought by the Trustee, or which could have been brought by
> the Trustee against the Picower BLMIS Accounts or the
> Picower Releasees . . . .

Murphy Decl. filed Mar. 11, 2014, Ex. A (Permanent Injunction
Order and Exhibit, Picard v. Picower, Case No. 09-1197 (Bankr.
S.D.N.Y. Jan. 13, 2011), ECF No. 43 ("Settlement Order"), at 7).

On March 26, 2012, this Court affirmed the January 13
Order, holding that the settlement was fair and reasonable, and
that the issuance of the permanent injunction was a proper
exercise of the bankruptcy court's power under § 105(a) to
protect the BLMIS estate and the bankruptcy court's jurisdiction
over the massive SIPA liquidation.  See Fox, 848 F. Supp. 2d at
473.  This Court held that the claims asserted in the Florida

5

Actions were "general claims common to all BLMIS investors" that were "substantively duplicative of the Trustee's fraudulent transfer action." Id. at 481. In particular, this Court noted that both complaints in the Florida Actions explicitly relied on the Trustee's complaint in the New York action and cited to the Trustee's complaint throughout. Id. at 479. Accordingly, the Court affirmed the bankruptcy court's grant of the Trustee's motion to enjoin the Florida Actions, and its issuance of a preliminary injunction. This Court also affirmed the bankruptcy court's approval of the Settlement Agreement, holding that the "substantial sum" of $7.2 billion was "recovered for the estate after arm's length bargaining, and the injunction of derivative claims like the Florida Actions was part of that bargain." Id. at 490.

On January 13, 2014, the Court of Appeals for the Second Circuit affirmed this Court's judgment. See Marshall, 740 F.3d at 96. The Court held that the appellants had merely put new legal labels on the same claims brought by the Trustee against the Picower defendants for fraudulent transfers and withdrawals. Id. at 92. Citing with approval an opinion in a related case by Judge Sullivan of this Court, the Court of Appeals stated that the "[c]omplaints plead nothing more than that the Picower Defendants traded on their own BLMIS accounts, knowing that such 'trades' were fraudulent, and then withdrew the 'proceeds' of

such falsified transactions from BLMIS." Id. (emphasis in
original) (quoting A&G Goldman P'ship v. Picard (In re Bernard
L. Madoff Inv. Secs., LLC), No. 12cv6109, 2013 WL 5511027, at *7
(S.D.N.Y. Sept. 30, 2013)).

Ultimately, the Court of Appeals held that the Florida
Actions were derivative of the Trustee's claims against the
Picower defendants, because although they alleged different
legal claims and sought different types of damages, the Fox and
Marshall complaints alleged "nothing more than steps necessary
to effect the Picower defendants' fraudulent withdrawals of
money from BLMIS, instead of 'particularized' conduct directed
at BLMIS customers." Id. at 84. As an example of
"particularized" actions that were lacking, the Court noted that
the appellants did not allege that "the Picower defendants made
any misrepresentations to appellants." Id. at 93. Finally, the
Court of Appeals noted that it was affirming "without prejudice
to appellants seeking leave to amend their complaints," and
stated:

> There is conceivably some particularized conspiracy claim
> appellants could assert that would not be derivative of
> those asserted by the Trustee. That question, however, is
> not properly before us, and is a question in the first
> instance for the United States District Court for the
> Southern District of Florida.

Id. at 94.

7

Less than a month after the Court of Appeals' decision, on
February 5, 2014, appellants Fox and Marshall, together with
appellants Marsha Peshkin and Russell Oasis, moved in the
Florida District Court to re-open the Fox action, and for leave
to file a Second Amended Complaint (the "New Fox Complaint").
See Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Secs.
LLC ("Injunction Decision"), 511 B.R. 375, 383 (Bankr. S.D.N.Y.
2014).  The New Fox Complaint asserts a Section 20(a) claim, a
Federal RICO claim, a claim under the Florida Civil Remedies for
Criminal Practices Act, Chapter 772 of the Florida Statutes (the
"Florida RICO Claim"), and claims under Florida common law.  See
Murphy Decl. Ex. B (New Fox Complaint).  Plaintiffs Fox and
Oasis make their claims on behalf of "net winners"—BLMIS
customers who withdrew more money than they deposited with BLMIS
over the span of their participation in the BLMIS Discretionary
Trading Program-and plaintiffs Marshall and Peshikin seek to
represent "net losers"—BLMIS customers who withdrew less money
than they deposited with BLMIS.[1]  New Fox Compl. ¶¶ 8-11.  The
New Fox Complaint removes all citations to the Trustee's
complaint in the New York Action, and adds allegations that the

---

[1] As explained in this Court's previous decision, the Trustee's method of
calculating each customer's *pro rata* share of the BLMIS property, or their
net equity, entitles "net losers" to receive all of their principal
investments before "net winners" receive any compensation for the fictitious
profits they believed they had made.  The Court of Appeals has affirmed this
method of reimbursement.  See In re Bernard L. Madoff Inv. Secs. LLC, 654
F.3d 229, 235 (2d Cir. 2011).

Picower defendants controlled the BLMIS investment scheme, and
that Picower caused BLMIS to make misrepresentations to
customers in order to induce them into investing with BLMIS, so
that Picower could make more fraudulent gains from the BLMIS
scheme.  New Fox Compl. ¶¶ 46-56.

On February 18, 2014, the Picower defendants sought an
immediate stay of the action before the Florida district court.
Injunction Decision, 511 B.R. at 383.  In their motion, they
included a letter from the Trustee stating his intention to file
an injunction motion in the bankruptcy court.  Id.  The Florida
district court ultimately stayed the proceedings in that court,
and denied the plaintiffs' request for an emergency hearing on
their cross-motion to allow them to proceed in the Florida
district court, after the Trustee had filed an injunction motion
in the bankruptcy court.  Id.  The Florida district court
stated:

> The Court declines to conduct an emergency hearing on the
> question of whether to enjoin the New York action.  Rather,
> this Court defers to the Bankruptcy Court for the Southern
> District of New York for a ruling on Picard's motion to
> enjoin the instant action.

Id. (citing the Florida district court's Order dated March 14,
2014).  The plaintiffs filed a notice of appeal, and moved
before the Court of Appeals for the Eleventh Circuit to expedite
the appeal and for an injunction pending appeal.  Id.  On May 7,

9

2014, the Eleventh Circuit Court of Appeals denied both motions. Id. at 383-84.[2]

On June 23, 2014, the bankruptcy court granted the Trustee's motion to enjoin the Fox Plaintiffs from prosecuting the New Fox Complaint in the Florida Actions.  Id. at 394-95.[3] The court held that the New Fox Complaint did not contain "any particularized allegation that the Picower Defendants participated in the preparation of any financial information sent to the proposed class members or directed BLMIS to send false information to the customers."  Id. at 394. The court found the new allegations as to the Picower defendants' misrepresentations to BLMIS customers to be "wholly conclusory," and concluded that the appellants were attempting to "plead around" the permanent injunction by attaching new legal claims to allegations that were derivative of the Trustee's action. Id. at 394-95.[4]

---

[2] After the bankruptcy court granted the Trustee's motion to enjoin the filing of the New Fox Complaint, the Eleventh Circuit Court of Appeals dismissed the appeal as moot.

[3] The Court also granted the Trustee's motion to enjoin the proposed amended class action complaint which plaintiffs Pamela Goldman and A&G Goldman Partnership (collectively, the "Goldman Plaintiffs") sought to file in the Florida district court.  Id. at 393.  The Goldman Plaintiffs initially appealed from that decision, but subsequently withdrew their appeal and filed another amended complaint in the Florida district court.  The Trustee moved to enjoin that complaint as well, and the Trustee's motion is currently pending before the bankruptcy court.  See Picard v. Goldman (In re Bernard L. Madoff), Adv. Pro. No. 1402407 (Bankr. S.D.N.Y. 2014).

[4] Because the bankruptcy court found that the New Fox Complaint violated the permanent injunction, it declined to reach the question of whether the New Fox Complaint violated the automatic stay.  Id. at 395.

On appeal, the appellants principally argue that (1) by acting on the Trustee's injunction motion, the bankruptcy court violated the directions of the Court of Appeals in Marshall which stated that whether there is "some particularized conspiracy claim" that the appellants could bring against the Picower defendants "is a question in the first instance for the United States District Court for the Southern District of Florida," 740 F.3d at 94; and (2) the claims in the New Fox Complaint allege particularized injuries traceable to the Picower defendants and thus are independent claims that they may permissibly bring against the Picower defendants.

A district court reviews a bankruptcy court's findings of fact for clear error and its legal conclusions de novo. See In re Bell, 225 F.3d 203, 209 (2d Cir. 2000); In re Metaldyne Corp., 421 B.R. 620, 624 (S.D.N.Y. 2009).

## II.

As an initial matter, the appellants argue that the bankruptcy court violated the mandate from the Second Circuit Court of Appeals by exercising jurisdiction over the Trustee's motion and enjoining the New Fox Complaint.  They contend that when the Court of Appeals stated in Marshall that whether the appellants could assert claims that were not derivative of the Trustee's claims was a "question in the first instance" for the

11

Florida District Court, 740 F.3d at 94, the Court reserved that question for the Florida district court alone.

This argument is without merit. In making the statement on which the appellants rely, the Court of Appeals noted that a sufficiently particularized non-derivative claim was not "properly before" it. Id. Any discussion by the Court of what such a claim could "conceivably" look like would have been strictly hypothetical. Id. Therefore, the Court made clear that the appellants should seek to file any amended complaint in the court where its claims were pending, the United States District Court for the Southern District of Florida. The Court of Appeals did not state, in its January 13 Opinion or the Mandate issued on February 5, that only the Florida district court could consider whether the appellants had stated non-derivative claims. As the bankruptcy court properly found, the Court of Appeals did nothing to disturb the bankruptcy court's jurisdiction to interpret its own orders, including the permanent injunction issued as part of the Trustee's settlement with the Picower defendants. See Travelers Indem. Co. v. Bailey, 557 U.S. 137, 151 (2009) (stating that "the Bankruptcy Court plainly had jurisdiction to interpret and enforce its own prior orders," including an injunction it had issued).

In any event, the parties' actions in this case were consistent with the language that the appellants quote from the

Court of Appeals' decision in Marshall.  The appellants sought
to file the New Fox Complaint in the Florida district court in
the first instance, and that court decided to stay the action so
that the bankruptcy court could determine whether the Complaint
violated its own prior injunction.  See Injunction Decision, 511
B.R. at 383.  The appellants thus availed themselves of both the
Florida district court and the Eleventh Circuit Court of Appeals
before the bankruptcy court issued its decision.

Accordingly, the bankruptcy court appropriately considered
the merits of the Trustee's motion to enjoin the appellants'
claims as derivative of the Trustee's claims in violation of the
permanent injunction.

### III.

The Court of Appeals has defined "derivative claims" in the
context of a bankruptcy as "ones that 'arise from harm done to
the estate' and that 'seek relief against third parties that
pushed the debtor into bankruptcy.'"  Marshall, 740 F.3d at 89
(quoting Picard v. JPMorgan Chase & Co. (In re Bernard L. Madoff
Inv. Secs. LLC), 721 F.3d 54, 70 (2d Cir. 2013) (brackets
omitted)).  "While a derivative injury is based upon 'a
secondary effect from harm done to the debtor,' an injury is
said to be 'particularized' when it can be 'directly traced to
the third party's conduct.'"  Id. (quoting St. Paul Fire &
Marine Ins. Co. v. PepsiCo, Inc., 884 F.2d 688, 704 (2d Cir.

13

1989) (brackets omitted)).  Although the same factual

allegations may give rise to both derivative and independent

claims, appellants may not state independent claims merely by

asserting new legal claims or seeking different forms of relief

than the Trustee.  Id. at 91-93.  Rather, courts should "inquire

into the factual origins of the injury" and the "nature of the

legal claims asserted."  Id. at 89 (citing Johns-Manville Corp.

v. Chubb Indem. Ins. Co. (In re Johns-Manville Corp.) ("Manville

III"), 517 F.3d 52, 67 (2d Cir. 2008)).

     The appellants argue that the claims they have added in the

New Fox Complaint, principally the Section 20(a) claim, allege

particularized injuries to themselves and others similarly

situated and thus are independent from the Trustee's claims

against the Picower defendants.  The Section 20(a) claim alleges

that BLMIS committed a primary violation of § 10(b) of the

Exchange Act, and that the Picower defendants controlled BLMIS

and participated in convincing additional customers to invest in

BLMIS by inducing BLMIS's misleading statements to customers.

See New Fox Compl. ¶¶ 109-20.

     The Goldman plaintiffs, who are also parties that sought to

file class actions against the Picowers, had brought a similar

Section 20(a) claim that an earlier bankruptcy court decision

found derivative of the Trustee's claims.  In an Opinion dated

September 30, 2013, the district court affirmed the bankruptcy

14

court's order.  See Goldman, 2013 WL 5511027, at *1.  Judge

Sullivan acknowledged that a creditor's claim may be non-

derivative if "some direct legal obligation flowed from the

defendants to the creditor," and that a Section 20(a) claim

provides that direct legal obligation.  Id. at *5-6.  However,

Judge Sullivan noted that the court must analyze the factual

allegations to ensure that the claim is a "bona fide" Section

20(a) claim, or else parties could "easily plead around the

protections of the Bankruptcy Code by deceptively labeling their

claims."  Id. at *6.  The court held that the appellants had not

alleged bona fide Section 20(a) claims because the only

substantive factual allegations against the Picower defendants

pertained to their fraudulent withdrawals from their BLMIS

accounts, the same subject matter as the Trustee's claims.  Id.

at *6-9.  The only allegations pertaining to elements of

"control person" liability were conclusory or involved BLMIS and

not the Picower defendants.  Id.

    The appellants in this case argue that unlike the

appellants in Goldman, they have alleged a "bona fide" Section

20(a) claim against the Picower defendants.  The appellants

argue that their Section 20(a) claims "involve direct injuries

. . . based [on] their own reliance on fraudulent statements and

misrepresentations made to them."  Medkser v. Feingold, 307 F.

App'x 262, 265 (11th Cir. 2008) (holding that Section 20(a)

15

claims were non-derivative of bankruptcy trustee's claims). However, like the plaintiffs in Goldman and unlike the plaintiffs in Medkser, the appellants have not made particularized allegations about any misrepresentations made by the Picower parties or direct involvement of the Picower parties in misrepresentations by Madoff.  In fact, the New Fox Complaint does not provide any specific misrepresentations, and with respect to the only misrepresentations it generally discusses— the "inflated account values" sent by BLMIS—the allegations regarding Picower's involvement are entirely conclusory.  New Fox Compl. ¶¶ 51-55.  Therefore, the bankruptcy court properly found that the allegations supporting the Section 20(a) claim were conclusory and simply "based on the secondary effects of the fraudulent transfers to the Picower Defendants," and thus "inseparable from the Trustee's claim."  Injunction Decision, 511 B.R. at 394.[5]

The appellants point to a handful of paragraphs of the New Fox Complaint to argue that there are sufficient, particularized allegations of Picower's direct involvement in misrepresentations made by BLMIS.  However, the paragraphs contain allegations similar to the control person allegations

---

[5] The appellants argue at length that the bankruptcy court improperly treated the Trustee's motion as a motion to dismiss and found that the appellants Section 20(a) claim does not state a claim upon which relief can be grounded. The bankruptcy court did no such thing.  The court's discussion of the merits of any of the appellants' claims only related to whether they were derivative of the Trustee's claims and could properly be enjoined.

that Judge Sullivan rejected in Goldman in the opinion cited
with approval by the Court of Appeals.  The portions of the New
Fox Complaint identified by the appellants, along with the rest
of the Complaint, are replete with the type of derivative
allegations that Judge Sullivan identified: (1) They allege
actions taken by the Picower defendants regarding "their *own*
BLMIS accounts," and are thus duplicative of the Trustee's
fraudulent transfer claims, 2013 WL 5511027, at *7 (emphasis in
original); see New Fox Compl. ¶ 44 ("[Picower] directed Madoff
. . . to document fictitious gains in the accounts of the
Picower Parties . . . ."); id. ¶ 47 ("[The Picower Parties]
demanded that BLMIS manufacture fictitious losses for the
Picower Parties."); (2) They make particularized factual
allegations regarding the BLMIS fraud, but the Picower
defendants are nowhere to be found, see id. ¶¶ 34-40; or (3)
They make conclusory allegations of control person liability
with no particularized factual support, see id. ¶ 46 ("Picower
fully and knowingly participated in the fraud that BLMIS
perpetrated on customers . . . and actively encouraged people to
enter into investment advisory agreements with BLMIS."); id. ¶
119 ("Picower directly or indirectly induced the material
misrepresentations and omissions giving rise to the securities
violations alleged herein.").  As the bankruptcy court correctly
concluded: "The New Fox Complaint does not include any

17

particularized allegations that Picower solicited any investor
or induced Madoff to do so.  Indeed, the Fox Plaintiffs do not
even allege that they were solicited directly or indirectly by
Picower to invest in BLMIS.  Thus the allegations in the New Fox
Complaint are wholly conclusory."  Injunction Decision, 511 B.R.
at 394.

The appellants cite cases with examples of meritorious
Section 20(a) claims, but the descriptions of the facts alleged
in those cases present a telling contrast with the paucity of
specifics in the New Fox Complaint.  For example, the appellants
cite In re Global Crossing, Ltd., 322 F. Supp. 2d 319 (S.D.N.Y.
2004), but the court in that case made clear that the factual
allegations supporting the Section 20(a) claims were "fully
developed" and "considerably more specific" than other claims
that the court had dismissed.  Id. at 351 (holding that the
plaintiffs stated Section 20(a) claim against the defendant
because they alleged specific scenarios showing "actual control
and culpable participation" by the defendant).  In another case
relied upon by the appellants, the court lists several
paragraphs of specific facts showing that the defendant acted
with "severe recklessness."  See In re Sunbeam Secs. Litig., 89
F. Supp. 2d 1326, 1344-45 (S.D. Fla. 1999).  In this case, the
appellants have alleged no particularized actions on the part of
the Picower defendants.  The purpose of this comparison is not

18

to opine on whether appellants' Section 20(a) claim would survive a motion to dismiss, but rather to make clear that any allegations purporting to show an injury directly traceable to the Picower defendants' conduct are too conclusory to present a "bona fide" claim independent from the Trustee's action.  See Goldman, 2013 WL 5511027, at *9.

The appellants have offered little explanation for how the rest of the claims in the New Fox Complaint are independent from the Trustee's claims, and indeed, the bankruptcy court was plainly correct in finding those claims to be derivative.  See Injunction Decision, 511 B.R. at 394-95.  None of the Federal RICO claims and claims under Florida state law in the New Fox Complaint allege particularized injuries directly traceable to the Picowers' conduct.  See New Fox Compl. ¶¶ 123-93.  Accordingly, Counts Two through Six of the New Fox Complaint are also derivative of the Trustee's claims against the Picower defendants.

In sum, the appellants seek to bring claims based on legal theories that Judge Sullivan in Goldman and the Second Circuit Court of Appeals in Marshall explained could qualify theoretically as independent claims.  However, the appellants have merely repackaged the same facts underlying the Trustee's claims without any new particularized injuries of the appellants that are directly traceable to the Picower defendants.  Thus,

19

all of the claims in the New Fox Complaint "impermissibly attempt to 'plead around' the bankruptcy court's injunction barring all 'derivative claims,'" <u>Marshall</u>, 740 F.3d at 96, and the bankruptcy court properly granted the Trustee's motion to enjoin the filing of the New Fox Complaint in the Florida district court.[6]

Accordingly, the bankruptcy court's June 23 Order is **affirmed.**

---

[6] The Trustee argues that the claims in the New Fox Complaint violate the automatic stay provisions of 11 U.S.C. § 362(a)(3).  The bankruptcy court found it unnecessary to reach this question in light of its holding that the New Fox Complaint violates the permanent injunction, and this Court agrees.

## CONCLUSION

The Court has considered all of the arguments raised by the parties. To the extent not specifically addressed, the arguments are either moot or without merit.

The bankruptcy court's Order enjoining the appellants from filing the New Fox Complaint in the United States District Court for the Southern District of Florida is **AFFIRMED**.

**This Opinion and Order finally disposes of the above captioned appeal.**

**The Clerk is directed to close this case and to close any open motions.**

SO ORDERED.

Dated:    New York, New York
          May 11, 2015                    _____/s/_____
                                                John G. Koeltl
                                          United States District Judge