**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, NY 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Oren J. Warshavsky
Marc E. Hirschfield
Elyssa S. Kates
Jessie Kuhn

*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>   Plaintiff-Applicant,<br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>   Defendant. | Adv. Pro. No. 08-01789 (SMB)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>   Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>   Plaintiff,<br>v.<br><br>RADCLIFF INVESTMENTS LIMITED, ROTHSCHILD TRUST GUERNSEY LIMITED, and ROBERT D. SALEM,<br><br>   Defendants. | Adv. Pro. No. 10-04517 (SMB) |

**[PROPOSED] FIRST AMENDED COMPLAINT**

Irving H. Picard (the "Trustee"), as trustee for the liquidation of the business of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa, *et seq*. ("SIPA"),[1] and the consolidated estate of Bernard L. Madoff ("Madoff"), individually, by and through his undersigned counsel, for his first amended complaint (the "Complaint"), states as follows:

**NATURE OF PROCEEDING**

1.   This adversary proceeding arises from the massive Ponzi scheme perpetrated by Madoff. Over the course of the scheme, there were more than 8,000 client accounts at BLMIS. In early December 2008, BLMIS generated client account statements for its approximately 4,900 open client accounts. When added together, these statements purport that clients of BLMIS had approximately $65 billion invested with BLMIS. In reality, BLMIS had assets on hand worth a small fraction of that amount. On March 12, 2009, Madoff admitted to the fraudulent scheme and pled guilty to 11 felony counts, and was sentenced on June 29, 2009 to 150 years in prison. The within defendants Radcliff Investments Limited, Rothschild Trust Guernsey Limited and Robert D. Salem (collectively, "Defendants") received avoidable transfers from BLMIS or were the entities for whose benefit the transfers were made.

2.   Defendants were beneficiaries of this Ponzi scheme. Since December 11, 2006, Defendants received $7,122,793 in avoidable and thus recoverable transfers. The Trustee's investigation has revealed that $2,122,793 of this amount represented fictitious profits from the Ponzi scheme. Accordingly, Defendants received $2,122,793 of other people's money, all within two years of BLMIS's collapse.

---

[1] For convenience, future reference to SIPA will not include "15 U.S.C."

3. This adversary proceeding is brought pursuant to sections 78fff(b), 78fff-1(a) and 78fff-2(c)(3) of SIPA, sections 105(a), 548(a), 550(a) and 551 of title 11 of the United States Code (the "Bankruptcy Code"), and other applicable law, for avoidance of fraudulent conveyances in connection with certain transfers of property by BLMIS to or for the benefit of Defendants.

4. The Trustee seeks to set aside transfers of fictitious profits and preserve and recover the property for the benefit of BLMIS's defrauded customers.

## JURISDICTION AND VENUE

5. This is an adversary proceeding commenced in this Court, in which the main underlying SIPA proceeding, No. 08-01789 (SMB) (the "SIPA Proceeding"), is pending. The SIPA Proceeding was originally brought in the United States District Court for the Southern District of New York as *Securities Exchange Commission v. Bernard L. Madoff Investment Securities LLC et al.*, No. 08 CV 10791 (the "District Court Proceeding") and has been referred to this Court. This Court has jurisdiction over this adversary proceeding under 28 U.S.C. § 1334(b) and (e)(1), and 15 U.S.C. § 78eee(b)(2)(A) and (b)(4).

6. This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A), (H) and (O). The Trustee consents to the entry of final orders or judgment by this Court if it is determined that consent of the parties is required for this Court to enter final orders or judgment consistent with Article III of the U.S. Constitution.

7. Venue in this judicial district is proper under 28 U.S.C. § 1409.

## DEFENDANTS

8. Defendant Radcliff Investments Limited ("Radcliff") is a limited liability company formed under the laws of the Cayman Islands. Its registered address is Five Continents Financial Ltd., Anchorage Centre, Harbour Drive, 2nd Floor, Georgetown, Cayman Islands. A

3

BLMIS account in the name, "Radcliff Investments Ltd.," with the account address reported as Five Continents Financial Ltd., Anchorage Centre, Harbour Drive, 2nd Floor, Georgetown, Cayman Islands was nominally held by Radcliff. Upon information and belief, Radcliff is owned by a Guernsey-based trust. Upon information and belief, the Trust is the trustee of this Guernsey-based trust.

9.  Defendant Rothschild Trust Guernsey Limited (the "Trust") is a limited liability company incorporated under the laws of Guernsey in 1970. It is a subsidiary of N. M. Rothschild & Sons. The Trust's principal place of business is located at St. Peter's House, Le Bordage Street, Peter Port, Guernsey GY1 6AX. Upon information and belief based upon the Trustee's investigation to date, the Trust managed and controlled customer account number 1FR100 (the "Account") and represented to BLMIS that the Trust owned the funds in the Account. The Trust and/or its employees signed documents relating to the Account, instructed BLMIS to provide the Trust with all Account information and documents, corresponded with BLMIS, directed the liquidation of the Account and directed that the transfers be sent to an account at JPMorgan Chase Bank in New York held in the subaccount name of "Rotrust re Radcliff Investments Limited" (the "Trust Account"). The Trust is a for the benefit of or initial transferee of the avoidable transfers referenced above.

10.  Upon information and belief, defendant Robert D. Salem ("Mr. Salem") maintains a business address in London, England.[2] Upon further information and belief, Mr. Salem was the principal for the investment with BLMIS and an ultimate beneficiary of the fictitious profits transferred by BLMIS to the Trust Account. Upon further information and belief, Mr. Salem

---

[2] Mr. Salem, although properly served with the complaint, never responded. Accordingly, on September 18, 2014, the Clerk of the Court entered default against Mr. Salem. The Trustee intends to request entry of a final judgment against Mr. Salem.

4

300353381.12

communicated with BLMIS employees regarding the Account and received copies of deal tickets, cash account movement reports, and month-end valuations. Upon further information and belief, Mr. Salem engaged Stephen Chaplin ("Mr. Chaplin"), Executive Vice President of Radix Organization Inc., an investment advisor registered with the Securities and Exchange Commission ("SEC"), with offices in New York, New York, to assist Mr. Salem in connection with the Account and BLMIS generally.

11.     Thus, the Trust and Mr. Salem intended to invest, or caused investments to be made, with BLMIS in the United States. The Trust and Mr. Salem were the beneficial owners or intended beneficiaries of the Account and did receive such benefits in the form of transfers of fictitious profits from the Account.

## BACKGROUND, THE TRUSTEE AND STANDING

12.     On December 11, 2008 (the "Filing Date"), Madoff was arrested by federal agents for criminal violations of federal securities laws, including securities fraud, investment adviser fraud, and mail and wire fraud. Contemporaneously, the SEC commenced the District Court Proceeding.

13.     On December 15, 2008, under SIPA § 78eee(a)(4)(A), the SEC consented to combining its action with an application by the Securities Investor Protection Corporation ("SIPC"). Thereafter, under SIPA § 78eee(a)(4)(B), SIPC filed an application in the District Court alleging, among other things, that BLMIS could not meet its obligations to securities customers as they came due and its customers needed the protections afforded by SIPA.

14.     Also on December 15, 2008, Judge Stanton granted SIPC's application and entered an order pursuant to SIPA, which, in pertinent part:

   a.     appointed the Trustee for the liquidation of the business of BLMIS pursuant to SIPA § 78eee(b)(3);

5

300353381.12

      b.      appointed Baker & Hostetler LLP as counsel to the Trustee pursuant to SIPA § 78eee(b)(3); and

      c.      removed the case to this Court pursuant to SIPA § 78eee(b)(4).

15. By orders dated December 23, 2008 and February 4, 2009, respectively, this Court approved the Trustee's bond and found that the Trustee was a disinterested person. Accordingly, the Trustee is duly qualified to serve and act on behalf of the estate.

16. On April 13, 2009, an involuntary bankruptcy petition was filed against Madoff, and on June 9, 2009, this Court substantively consolidated the chapter 7 estate of Madoff into the SIPA Proceeding.

17. At a plea hearing on March 12, 2009, in the case captioned *United States v. Madoff*, Case No. 09-CR-213(DC), Madoff pleaded guilty to an 11-count criminal information filed against him by the United States Attorney for the Southern District of New York. At the plea hearing, Madoff admitted he "operated a Ponzi scheme through the investment advisory side of [BLMIS]."

18. At a plea hearing on August 11, 2009, in the case captioned *United States v. DiPascali*, Case No. 09-CR-764 (RJS), Frank DiPascali, a former BLMIS employee, pleaded guilty to a ten-count criminal information charging him with participating in and conspiring to perpetuate the Ponzi scheme. DiPascali admitted that no purchases or sales of securities took place in connection with BLMIS customer accounts and that the Ponzi scheme had been ongoing at BLMIS since at least the 1980s.

19. At a plea hearing on November 21, 2011, in the case captioned *United States v. Kugel*, Case No. 10-CR-228 (LTS), David Kugel, a former BLMIS trader and manager, pleaded guilty to a six-count criminal information charging him with securities fraud, falsifying the

6

records of BLMIS, conspiracy, and bank fraud. Kugel admitted to helping create false, backdated trades in BLMIS customer accounts beginning in the early 1970s.

20. On March 24, 2014, Daniel Bonventre, Annette Bongiorno, Jo Ann Crupi ("Ms. Crupi"), George Perez, and Jerome O'Hara were convicted of fraud and other crimes in connection with their participation in the Ponzi scheme as employees of BLMIS's investment advisory business ("IA Business").

21. As the Trustee appointed under SIPA, the Trustee is charged with assessing claims, recovering and distributing customer property to BLMIS's customers holding allowed customer claims, and liquidating any remaining BLMIS assets for the benefit of the estate and its creditors. The Trustee is using his authority under SIPA and the Bankruptcy Code to avoid and recover payouts of fictitious profits and/or other transfers made by the Debtors to customers and others to the detriment of defrauded, innocent customers whose money was consumed by the Ponzi scheme. Absent this and other recovery actions, the Trustee will be unable to satisfy the claims described in subparagraphs (A) through (D) of SIPA § 78fff-2(c)(1).

22. Pursuant to SIPA § 78fff-1(a), the Trustee has the general powers of a bankruptcy trustee in a case under the Bankruptcy Code in addition to the powers granted by SIPA pursuant to SIPA § 78fff(b). Chapters 1, 3, 5 and subchapters I and II of chapter 7 of the Bankruptcy Code apply to this proceeding to the extent consistent with SIPA pursuant to SIPA § 78fff(b).

23. The Trustee has standing to bring the avoidance and recovery claims in this matter under SIPA § 78fff-1(a) and applicable provisions of the Bankruptcy Code, including 11 U.S.C. §§ 323(b) and 704(a)(1), because the Trustee has the power and authority to avoid and recover transfers under Bankruptcy Code sections 548, 550(a), and 551, and SIPA §§ 78fff-1(a) and 78fff-2(c)(3).

7

## **THE PONZI SCHEME**

24.  Madoff founded BLMIS in or about 1960 as a sole proprietorship. On January 1, 2001, Madoff continued BLMIS as a sole member limited liability company under the laws of the State of New York. BLMIS's ownership and control did not change since its formation in 1960. During that time, BLMIS had been continually registered with the SEC, and remained a SIPC member since its formation in late 1970. For most of its existence, BLMIS operated from its principal place of business at 885 Third Avenue, New York, New York. Madoff, as founder, sole owner, chairman, and chief executive officer, operated BLMIS with several family members and other employees, including DiPascali and David Kugel, both of whom pleaded guilty to helping Madoff carry out the fraudulent scheme.

25.  Beginning in the 1990s, Madoff outwardly ascribed the consistent investment success of BLMIS's IA Business to the "split-strike conversion" ("SSC") investment strategy. Madoff claimed his strategy would produce steady returns without the volatility in the stock market or other high return investment strategies. Madoff generally indicated that investors' funds would be invested in a basket of common stocks within the Standard & Poor's 100 Index ("S&P 100 Index"), which is a collection of the 100 largest publicly traded companies, as determined by Standard & Poor's Index Committee. The basket of stocks was designed to correlate to the movement of the S&P 100 Index. The second part of the SSC strategy involved purporting to sell call options and buy put options on the S&P 100 Index; this is commonly referred to as a "collar." Madoff purported to purchase and sell option contracts to control the downside risk of price changes in the basket of stocks correlated to the performance of the S&P 100 Index. All options relating to the companies within the S&P 100 Index, including options based upon the S&P 100 Index itself, clear through the Options Clearing Corporation ("OCC").

8

The OCC has no records showing that BLMIS's IA Business cleared any trades in any exchange-listed options.

26. BLMIS commingled all of the funds received from IA Business investors in a single BLMIS account maintained at JPMorgan Chase Bank.

27. Because Madoff claimed that he would carefully time purchases and sales to maximize value, customer funds would intermittently be out of the market. During those times, Madoff claimed that the funds were invested in U.S. Treasury securities ("Treasury Bills") or mutual funds invested in Treasury Bills. There is no record of BLMIS clearing a single purchase or sale of securities in connection with the SSC strategy at the Depository Trust & Clearing Corporation, the clearing house for such transactions, or any other trading platform on which BLMIS could have traded securities. There are no other BLMIS records that demonstrate that BLMIS traded securities using the SSC strategy.

28. At their plea hearings, Madoff and DiPascali admitted that BLMIS purchased none of the securities listed on the IA Business customers' fraudulent statements.

29. Madoff operated the IA Business as a Ponzi scheme. The money received from IA Business customers was used primarily to make distributions to, or payments for, other customers. The falsified trades reflected in monthly account statements made it appear that the IA Business accounts included substantial gains on customers' principal investments. The Ponzi scheme collapsed in December 2008, when the requests for redemptions overwhelmed the flow of new investments with BLMIS's IA Business.

30. Since at least 1983, BLMIS financial reports filed with the SEC fraudulently omitted the existence of the billions of dollars of customer funds held by BLMIS.

31. BLMIS did not register as an investment adviser with the SEC until August 2006. At that time, BLMIS filed with the SEC a Form ADV (Uniform Application for Investment Adviser Registration) representing, among other things, that BLMIS had 23 customer accounts and assets under management of $11.7 billion. Thereafter, BLMIS filed a Form ADV annually with the SEC, the latest of which was filed in January 2008. It represented that BLMIS had 23 customer accounts with assets under management of $17.1 billion. In fact, at that time BLMIS had over 4,900 active customer accounts with a purported value of approximately $68 billion under management.

32. Contrary to standard practice in the investment advisory industry, BLMIS did not charge the IA Business customers a fee for investment advisory services. Madoff knew others that solicited investors for BLMIS, or, directly or indirectly, funded customer accounts, charged hundreds of millions of dollars for investment advisory services attributed to BLMIS. Instead of investment advisory fees, BLMIS purported to accept commissions for the purported trades, as reflected in the fraudulent IA Business customer statements.

33. BLMIS's auditor was Friehling & Horowitz, CPA, P.C. ("Friehling & Horowitz"), a three-person accounting firm in Rockland County, New York. Of the three employees at the firm, one employee was an administrative assistant and one was a semi-retired accountant living in Florida. On or about November 3, 2009, David Friehling, the sole proprietor of Friehling & Horowitz, pleaded guilty to filing false audit reports for BLMIS and filing false tax returns for Madoff and others.

34. At all relevant times, BLMIS was insolvent because (i) its assets were worth less than the value of its liabilities; (ii) it could not meet its obligations as they came due; and (iii) at the time of the transfers alleged herein, BLMIS was left with insufficient capital.

10

## **THE TRANSFERS**

35. According to BLMIS's records, the Account was maintained with BLMIS, as set forth on Exhibit A. For the Account, a Customer Agreement, an Option Agreement, and/or a Trading Authorization Limited to Purchases and Sales of Securities and Options (collectively, the "Account Agreements") were executed and delivered to BLMIS at BLMIS's headquarters at 885 Third Avenue, New York, New York.

36. The Account Agreements were to be performed in New York, New York through securities trading activities that would take place in New York, New York. The Account was held in New York, New York, and Defendants sent or caused to be sent funds to BLMIS and/or to BLMIS's account at JPMorgan Chase & Co., Account #xxxxxxxxxxx1703 (the "BLMIS Bank Account") in New York, New York for application to the Account and the purported conducting of trading activities. Between the date the Account was opened and the Filing Date, Defendants made deposits or caused deposits to be made to the Account at BLMIS through checks and/or wire transfers to the BLMIS Bank Account and/or received inter-account transfers from other BLMIS accounts.

37. During the two years prior to the Filing Date, BLMIS made transfers totaling approximately $2,122,793 in fictitious profits from the Ponzi scheme (collectively, the "Transfers") to Defendants or for their benefit. The Transfers constitute non-existent profits supposedly earned in the Account, but, in reality, they were other people's money. The Transfers were made to or for the benefit of Defendants at the direction of the Trust, to an account controlled by the Trust in New York, New York and are set forth in Columns 10 and 11 on Exhibit B annexed hereto.

38. The Transfers that are avoidable and recoverable under sections 548(a), 550(a)(1) and 551 of the Bankruptcy Code and applicable provisions of SIPA, particularly SIPA section

11

78fff-2(c)(3) total approximately $2,122,793 and are referred to hereafter as the "Two Year Transfers." See Exhibit B, Column 10.

39. Based upon representations made by Defendants or on their behalf, the Trust and Mr. Salem are beneficiaries or initial transferees of the Transfers.

40. The Transfers, or the value thereof, are recoverable from the Trust and/or Mr. Salem pursuant to §550(a) of the Bankruptcy Code.

41. Alternatively, on information and belief, some or all of the Transfers were subsequently transferred by Radcliff to the Trust and/or Mr. Salem (collectively, the "Subsequent Transfers").

42. The Subsequent Transfers, or the value thereof, are recoverable from the Trust and Mr. Salem pursuant to §550(a) of the Bankruptcy Code.

43. The Trustee's discovery and investigation is ongoing, and the Trustee reserves the right to: (i) supplement the information on the Initial Transfers, the Subsequent Transfers, and any additional transfers; and (ii) seek avoidance and recovery of such transfers.

### ALLEGATIONS REGARDING THE EXTRATERRITORIALITY ISSUE

44. Trustees of defendant Trust expressly informed Jodi Crupi of BLMIS in 2003 that although Radcliff was the named accountholder, the "ultimate beneficial owner" of the BLMIS account was the Trust, and the assets of the account were "owned and directly controlled by ourselves as Trustees." Accordingly, Radcliff was a mere passive investment vehicle.

45. Trustees of the Trust communicated directly with BLMIS over the life of the Account, including providing BLMIS with information in connection with the opening of the Account. The Trust directed BLMIS to provide the Trust with documents relating to the Account. Consistent with the Trust's instructions, the Trust received statements and other documents directly from BLMIS.

46.     The Trust directed the closing of the Account at BLMIS.  In a letter on the Trust's letterhead dated May 31, 2007, the Trust's representatives directed BLMIS to liquidate the holdings in the Account and transfer the proceeds to the Trust Account at JP Morgan Chase Bank.  The letter stated in part that "[u]pon completion of this transfer I would be grateful if you would kindly close **our account with you in the name of Radcliff Investments Limited…**"  In another letter on the Trust's letterhead dated October 31, 2007, the Trust's representatives again directed BLMIS to close the Account and transfer the full balance to the Trust Account at JP Morgan Chase Bank.  Therefore, the Trust directed the transfers the Trustee now seeks to avoid and recover.

47.     Upon information and belief, the routing number for the Trust Account is only used for accounts opened in New York with U.S. banking institutions.  Therefore, the Trust directed BLMIS to close the Account and transfer the funds from the Account to a United States receiving bank, a further indication of the domestic nature of the transactions at issue.

48.     Mr. Salem, along with the Trust, took steps to open the Account, and knowingly and purposefully directed investments into the United States.  Mr. Salem had direct communications with BLMIS in connection with the Account, including speaking with Ms. Crupi.  In addition to directly communicating with BLMIS employees, Mr. Salem directed activities relating to the Account through the use of agents.  For instance, in connection with the opening of the Account, Mr. Salem utilized the services of Mr. Chaplin, the Executive Vice President of Radix Organization, Inc., a registered investment advisor with offices in New York, New York.  Mr. Salem continued to communicate directly with BLMIS over the life of the Account.

13

49. The Trust, having represented to BLMIS that it owned the assets invested with BLMIS, is the beneficiary of the Transfers, and knew that its investments were domestic. The Trust knowingly and deliberately directed investments with BLMIS in the United States. The Trust is also connected to another BLMIS account (Account No. 1FR130), held or nominally held in the name of Provence Management II Stichting. Account No. 1FR130 was a net loser account. A claim was filed for that account and allowed by the Trustee.

50. Thus, both the Trust and Mr. Salem's activities were directed at investing with BLMIS and in deriving profit from BLMIS's purported SSC strategy. Moreover, the component events surrounding the deposits of funds into BLMIS and the subsequent redemptions of those same investments were centered in the United States.

51. To the extent that any of the avoidance and/or recovery counts may be inconsistent with each other, they are to be treated as being pled in the alternative.

## COUNT ONE
## FRAUDULENT TRANSFERS – 11 U.S.C. §§ 105(a), 548(a)(1)(A), 550(a) AND 551

52. To the extent applicable, the Trustee incorporates by reference the allegations contained in the previous paragraphs of this Complaint as if fully rewritten herein.

53. Each of the Two Year Transfers was made on or within two years before the Filing Date.

54. Each of the Two Year Transfers constituted a transfer of an interest of BLMIS in property within the meaning of section 101(54) of the Bankruptcy Code and pursuant to section 78fff-2(c)(3) of SIPA.

55. Each of the Two Year Transfers was made by BLMIS with the actual intent to hinder, delay or defraud some or all of BLMIS's then existing and/or future creditors.

14

56. Each of the Two Year Transfers constitutes a fraudulent transfer avoidable by the Trustee pursuant to section 548(a)(1)(A) of the Bankruptcy Code and recoverable from Defendants pursuant to section 550(a) of the Bankruptcy Code and section 78fff-2(c)(3) of SIPA.

57. As a result of the foregoing, pursuant to sections 105(a), 548(a)(1)(A), 550(a), and 551 of the Bankruptcy Code and 15 U.S.C. § 78fff-2(c)(3), the Trustee is entitled to a judgment: (a) avoiding and preserving the Two Year Transfers; (b) directing that the Two Year Transfers be set aside; (c) recovering the Two Year Transfers, or the value thereof, from the Defendants for the benefit of the BLMIS estate; and (d) awarding any other relief the Court deems just and appropriate.

## COUNT TWO
## FRAUDULENT TRANSFERS – 11 U.S.C. §§ 105(a), 548(a)(1)(B), 550(a) AND 551

58. To the extent applicable, the Trustee incorporates by reference the allegations contained in the previous paragraphs of this Complaint as if fully rewritten herein.

59. Each of the Two Year Transfers was made on or within two years before the Filing Date.

60. Each of the Two Year Transfers constituted a transfer of an interest of BLMIS in property within the meaning of section 101(54) of the Bankruptcy Code and pursuant to section 78fff-2(c)(3) of SIPA.

61. BLMIS received less than reasonably equivalent value in exchange for each of the Two Year Transfers.

62. At the time of each of the Two Year Transfers, BLMIS was insolvent, or became insolvent as a result of the Two Year Transfers.

15

63. At the time of each of the Two Year Transfers, BLMIS was engaged in a business or a transaction, or was about to engage in a business or transaction, for which any property remaining with BLMIS was an unreasonably small capital.

64. At the time BLMIS made each of the Two Year Transfers, BLMIS had incurred, was intending to incur, or believed that it would incur debts beyond its ability to pay them as the debts matured.

65. Each of the Two Year Transfers constitutes a fraudulent transfer avoidable by the Trustee pursuant to section 548(a)(1)(B) of the Bankruptcy Code and recoverable from the Defendants pursuant to section 550(a) of the Bankruptcy Code and section 78fff-2(c)(3) of SIPA.

66. As a result of the foregoing, pursuant to sections 105(a), 548(a)(1)(B), 550(a), and 551 of the Bankruptcy Code and 15 U.S.C. § 78fff-2(c)(3), the Trustee is entitled to a judgment: (a) avoiding and preserving the Two Year Transfers; (b) directing that the Two Year Transfers be set aside; (c) recovering the Two Year Transfers, or the value thereof, from the Defendants for the benefit of the BLMIS estate; and (d) awarding any other relief the Court deems just and appropriate.

### COUNT THREE
### RECOVERY OF SUBSEQUENT TRANSFERS - 11 U.S.C. §§ 105(a) AND 550(a)

67. To the extent applicable, the Trustee incorporates by reference the allegations contained in the previous paragraphs of this Complaint as if fully rewritten herein.

68. On information and belief, the Subsequent Transfers were transferred by Radcliff to the Trust and Mr. Salem.

69. Each of the Subsequent Transfers is recoverable from the Trust and Mr. Salem under section 550(a) of the Bankruptcy Code.

16

300353381.12

70. Each of the Subsequent Transfers was made directly or indirectly to the Trust and/or Mr. Salem.

71. The Trust and/or Mr. Salem are immediate or mediate transferees of the Subsequent Transfers from Radcliff.

72. As a result of the foregoing, pursuant to sections 105(a) and 550(a) of the Bankruptcy Code and 15 U.S.C. § 78fff-2(c)(3), the Trustee is entitled to a judgment against the Trust and Mr. Salem: (a) recovering the Subsequent Transfers, or the value thereof, from the Trust and Mr. Salem for the benefit of the BLMIS estate; and (b) awarding any other relief the Court deems just and appropriate.

WHEREFORE, the Trustee respectfully requests that this Court enter judgment in favor of the Trustee and against the Defendants as follows:

i. On the First Claim for Relief, pursuant to sections 105(a), 548(a)(1)(A), 550(a), and 551 of the Bankruptcy Code and 15 U.S.C. § 78fff-2(c)(3), judgment: (a) avoiding and preserving the Two Year Transfers; (b) directing that the Two Year Transfers be set aside; (c) recovering the Two Year Transfers, or the value thereof, from the Defendants for the benefit of the BLMIS estate; and (d) awarding any other relief the Court deems just and appropriate;

ii. On the Second Claim for Relief, pursuant to sections 105(a), 548(a)(1)(B), 550(a), and 551 of the Bankruptcy Code and 15 U.S.C. § 78fff-2(c)(3), judgment: (a) avoiding and preserving the Two Year Transfers; (b) directing that the Two Year Transfers be set aside; (c) recovering the Two Year Transfers, or the value thereof, from the Defendants for the benefit of the BLMIS estate; and (d) awarding any other relief the Court deems just and appropriate;

iii. On the Third Claim for Relief, pursuant to sections 105(a) and 550(a) of the Bankruptcy Code and 15 U.S.C. § 78fff-2(c)(3), judgment against the Trust and Mr. Salem: (a)

17

recovering the Subsequent Transfers, or the value thereof, from the Trust and Mr. Salem for the benefit of the BLMIS estate; and (b) awarding any other relief the Court deems just and appropriate;

    iv.    On all Claims for Relief, impressing the Defendants' property or the proceeds, product and offspring of such property, with an equitable lien and/or a constructive trust in favor of the Trustee for the benefit of the estate, to the extent that the Transfers were used, in whole or in part, to purchase, improve and/or maintain such property;

    v.    On all Claims for Relief, establishing a constructive trust over all Transfers and their proceeds, product and offspring in favor of the Trustee for the benefit of the estate;

    vi.    On all Claims for Relief, pursuant to federal common law, awarding the Trustee prejudgment interest from the date on which the Initial Transfers were received;

    vii.    On all Claims for Relief, awarding the Trustee all applicable interest, costs and disbursements incurred in this proceeding; and

    viii.    Granting the Trustee such other, further, and different relief as the Court deems just, proper, and equitable.

Date:  June 26, 2015
        New York, New York

By: */s/ David J. Sheehan*_____

**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Email:  dsheehan@bakerlaw.com
Oren J. Warshavsky
Email: owarshavsky@bakerlaw.com
Marc E. Hirschfield

18

Email: mhirschfield@bakerlaw.com
Elyssa Kates
Email: ekates@bakerlaw.com
Jessie Kuhn
Email: jkuhn@bakerlaw.com

*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Estate of Bernard L. Madoff*

19

300353381.12