BAKER & HOSTETLER LLP
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>       Plaintiff-Applicant,<br><br>   v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>       Defendant. | Adv. Pro. No. 08-01789 (SMB)<br><br>SIPA Liquidation<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>       Debtor. | **TRUSTEE'S SUPPLEMENTAL MEMORANDUM OF LAW IN OPPOSITION TO INTELIGO BANK LTD.'S MOTION TO DISMISS BASED ON EXTRATERRITORIALITY AND IN FURTHER SUPPORT OF THE TRUSTEE'S MOTION FOR LEAVE TO AMEND THE COMPLAINT** |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>       Plaintiff,<br><br>   v.<br><br>INTELIGO BANK LTD. PANAMA BRANCH, f/k/a BLUBANK LTD. PANAMA BRANCH,<br><br>       Defendant. | Adv. Pro. No. 11-02763 (SMB) |

The Trustee respectfully submits this memorandum as a supplement to his Main Brief being filed simultaneously herewith in opposition to the motion to dismiss based on extraterritoriality made by defendant Inteligo Bank Ltd. Panama Branch f/k/a Blubank Ltd. Panama Branch ("Inteligo") and in further support of the Trustee's motion for leave to amend his Complaint.

## BACKGROUND

Inteligo, a sophisticated provider of private banking and financial advisory services, was a shareholder in Fairfield Sentry Limited ("Fairfield Sentry") and Fairfield Sigma Limited ("Sigma" and together with Fairfield Sentry, the "Fairfield Funds"). (Proffered Allegations at ¶¶ 1, 3.) Fairfield Sentry invested substantially all of its assets with BLMIS. (*Id*.) Sigma did not have its own direct BLMIS account, but invested 100% of its assets in Fairfield Sentry. (*Id*.) Inteligo received $10,818,105 in subsequent transfers of BLMIS customer property from the Fairfield Funds (the "Transfers"). (Trustee's Complaint at ¶ 2; *id.* at Exs. D, F.) The Trustee's Proffered Allegations demonstrate that the Trustee's action to recover these Transfers does not require an extraterritorial application of SIPA or Bankruptcy Code Section 550.

## THE TRANSFERS AND COMPONENT EVENTS OF INTELIGO'S FAIRFIELD FUND TRANSACTIONS WERE PREDOMINANTLY DOMESTIC

Citing to *Maxwell I*, the District Court directed that "the location of the transfers as well as the component events of those transactions"[1] must be used to determine whether a subsequent transfer claim involves a domestic or extraterritorial application of the Code and SIPA.[2] Under

---

[1] Extraterritoriality Decision, 513 B.R. at 227 (citing *Maxwell I*, 186 B.R. at 816).

[2] In *Maxwell I*, the court examined all potential connections with the United States by reviewing: (i) the debtor's location; (ii) the defendants' location; (iii) where the defendants engaged in business regarding the transaction; (iv) what transaction and agreements the parties entered into that led to the antecedent debt that the transfers were used to pay; (v) where the parties'

1

the District Court's ruling, the Trustee need only put forth "specific facts suggesting a domestic transfer" to avoid dismissal.[3] This is a fact-based inquiry in which all reasonable inferences should be drawn in the Trustee's favor.[4]

Inteligo argues that simply because it and the Fairfield Funds in which it was invested were formally organized under the laws of foreign countries, the subsequent transfers it received are "purely foreign" and the Trustee's recovery action must be dismissed. This superficial argument disregards the *Maxwell I* analysis directed by the District Court and is inconsistent with Second Circuit extraterritoriality case law that similarly examines a transaction's various connections to the United States.[5]

Based on the facts set forth in the Proffered Allegations, there is no basis for dismissing this case on the grounds of extraterritoriality. The Transfers and component events of Inteligo's transactions with the Fairfield Funds were predominantly domestic.

To begin with, the entire purpose of Inteligo's investments with the Fairfield Funds was to invest in U.S. securities markets through New York-based investment adviser BLMIS, and to earn returns on those U.S.-based investments. Specifically, Inteligo entered into subscription agreements with the Fairfield Funds at least 30 times and in each case affirmed that it knew (i) the Fairfield Funds invested almost exclusively with a New York-based, SEC-registered

---

relationship was centered when conducting the transaction that triggered the transfers; (vi) the law governing the parties' transactions; and (vii) how the transaction was concluded. *In re Maxwell Commc'n Corp.*, 186 B.R. 807, 816-17 (S.D.N.Y. 1995).

[3] Extraterritoriality Decision, 513 B.R. at 232 n.4.

[4] *See*, *e.g.*, *Anwar v. Fairfield Greenwich, Ltd.*, 728 F. Supp. 2d 372, 402-03 (S.D.N.Y. 2010) (deferring ruling on extraterritoriality at motion to dismiss phase and citing standard that "[t]he court must accept all well-pleaded factual allegations in the complaint as true, and draw all reasonable inferences in the plaintiff's favor.").

[5] *See, e.g.*, *Parkcentral Global Hub Ltd. v. Porsche Auto. Holdings SE*, 763 F.3d 198, 217 (2d Cir. 2014); *European Cmty. v. RJR Nabisco, Inc.*, 764 F.3d 129, 141 (2d Cir. 2014); and other cases cited in the Trustee's Main Brief.

investment adviser (i.e. BLMIS) that invested in the U.S. securities market, and (ii) Inteligo's money would be transferred to that same investment adviser in New York. (Proffered Allegations at ¶¶ 7-8.) As Judge Lifland concluded in a similar matter, "[t]he movement of money to and from BLMIS in the United States . . . was not fortuitous or incidental; instead, it was 'the ultimate objective' and the '*raison d'etre*' of the Agreement between" the investor and the feeder fund.[6]

The express provisions of its agreements with the Fairfield Funds further demonstrate the domestic nature of Inteligo's investment transactions with the Fairfield Funds. Inteligo agreed in its subscription agreements with the Fairfield Funds that New York law would govern its investments, and it consented to U.S. jurisdiction. (Proffered Allegations at ¶¶ 9-10.)

In connection with its investments in the Fairfield Funds, Inteligo also entered into a distribution and fee sharing agreement with Fairfield Greenwich Limited ("FG Limited") to promote investment in the Fairfield Funds. (*Id.* at ¶ 11.) FG Limited was registered to do business in New York and listed its principal executive office as that of Fairfield Greenwich Group ("FGG") in New York, and its typical fee-sharing agreement stated that it was governed by New York law. (*Id.*)

In addition, Inteligo entered into a confidentiality agreement with FG Limited in connection with a certain BLMIS-related structured financial product, pursuant to which Inteligo expressly submitted itself to the laws of New York and the jurisdiction of the New York courts. (*Id.* at ¶ 13.) Thus, based on the subscription agreements, the distribution and fee sharing agreement, and the confidentiality agreement, Inteligo had every expectation that U.S. laws

---

[6] *Picard v. Bureau of Labor Ins. (In re BLMIS)*, 480 B.R. 501, 513 (Bankr. S.D.N.Y. 2012).

would apply to its investment transactions and that it would be subject to suit in the United States.

Inteligo also purposefully and repeatedly used its own U.S. bank account and the U.S. banking system in connection with its at least 80 subscriptions into and redemptions from Fairfield Sentry, including the Transfers at issue.[7] (Proffered Allegations at ¶¶ 14-16.) Specifically, in its Fairfield Sentry subscription agreements and redemption documents, Inteligo designated a bank account in its own name at JPMorgan Chase in New York for remitting subscriptions and receiving redemptions. (*Id*. at ¶ 15) Inteligo also remitted its subscriptions into a U.S. correspondent account at the direction of Fairfield Sentry, which funds were then ultimately delivered to BLMIS in New York. (*Id*. at ¶ 17.)

The domestic nature of Inteligo's transactions is also evidenced by the fact that the U.S. was the focus of Inteligo's communications and due diligence with respect to its Fairfield Fund investments. FGG personnel in New York updated Inteligo with information about the Fairfield Funds, including conference calls, marketing updates, and in-person meetings. (*Id.* at ¶ 19.) Among the due diligence materials Inteligo received from FGG was detailed information regarding the split-strike conversion strategy and its purported implementation by BLMIS. (*Id*.)

Beyond all of the above domestic components, Inteligo's argument that its transactions are "purely foreign" is wrong because it ignores the reality of the Fairfield Funds, from which it received the Transfers. FGG in New York created, managed, and controlled the Fairfield Funds. (*Id.* at ¶¶ 21-22, 30-32.) The Fairfield Funds were based out of New York and had their principal place of business in New York. (*Id.* at ¶ 20.) Although technically registered in the

---

[7] *See*, *e.g.*, *Picard v. Igoin (In re BLMIS)*, 2015 WL 603209, at *16-17 (Bankr. S.D.N.Y. Feb. 13, 2015) (in the analogous context of personal jurisdiction, repeated use of U.S. bank accounts sufficient).

4

BVI, the Fairfield Funds had no employees or offices there, and at all times, operational decisions were made by FGG employees in New York.[8] (Proffered Allegations at ¶¶ 24-26.) In its BLMIS account opening documents, FGG listed Fairfield Sentry's address as in the United States. (*Id.* at ¶ 27.) The Fairfield Funds' initial and on-going due diligence on BLMIS was conducted in New York, and the operative legal documents for their BLMIS accounts were governed by New York law. (*Id.* at ¶ 29.) BLMIS in New York served as the Fairfield Funds' investment manager and implemented the split-strike conversion strategy for the Fairfield Funds. (*Id.* at ¶¶ 34-51.)

## CONCLUSION

For the forgoing reasons and those stated in the Trustee's Main Brief, Inteligo's motion to dismiss should be denied, and the Trustee's motion for leave to amend his Complaint should be granted.

Dated: June 26, 2015  
      New York, New York

By: /s/ Thomas L. Long  
Baker & Hostetler LLP  
45 Rockefeller Plaza  
New York, New York  10111  
Telephone: (212) 589-4200  
Facsimile: (212) 589-4201  
David J. Sheehan  
Thomas L. Long  
Matthew D. Feil  
Hannah C. Choate

*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Estate of Bernard L. Madoff*

---

[8] *See SEC v. Gruss*, 2012 WL 3306166 at *3 (S.D.N.Y. Aug 13, 2012) (finding that issues of fact existed regarding whether an offshore fund was "foreign" for purposes of extraterritoriality where complaint alleged that operational and investment decisions for the offshore fund were made in New York, "such that for all intents and purposes, the [offshore fund] was based in New York").

5