**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee*
*for the Substantively Consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities LLC*
*and the Estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (SMB) |
| Plaintiff-Applicant, | SIPA Liquidation |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | **TRUSTEE'S SUPPLEMENTAL MEMORANDUM OF LAW IN OPPOSITION TO BANQUE SYZ'S MOTION TO DISMISS BASED ON EXTRATERRITORIALITY AND IN FURTHER SUPPORT OF THE TRUSTEE'S MOTION FOR LEAVE TO AMEND THE COMPLAINT** |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | Adv. Pro. No. 11-02149 (SMB) |
| Plaintiff, | |
| v. | |
| BANQUE SYZ & CO S.A., | |
| Defendant. | |

The Trustee respectfully submits this memorandum as a supplement to his Main Brief being filed simultaneously herewith in opposition to the motion to dismiss based on extraterritoriality made by defendant Banque Syz & Co. S.A. ("Banque Syz") and in further support of the Trustee's motion for leave to amend his complaint against Banque Syz.

## BACKGROUND

Banque Syz, a highly sophisticated and experienced asset management specialist, was a shareholder in Fairfield Sentry Limited ("Fairfield Sentry"), Fairfield Sigma Limited ("Sigma" and together with Fairfield Sentry, the "Fairfield Funds"), Kingate Global Fund Ltd. ("Kingate Global"), and Kingate Euro Fund Ltd. ("Kingate Euro" and together with Kingate Global, the "Kingate Funds"; the Kingate Funds and the Fairfield Funds together, the "BLMIS Feeder Funds"). (Proffered Allegations at ¶¶ 1, 3.) Fairfield Sentry, Kingate Global, and Kingate Euro invested substantially all of their assets with BLMIS. (*Id.* at ¶ 1.) Sigma did not have its own direct BLMIS account, but invested 100% of its assets in Fairfield Sentry.[1] (*Id.*) Banque Syz received $73,266,724 in subsequent transfers of BLMIS customer property from the BLMIS Feeder Funds (the "Transfers"). (Trustee's Complaint at ¶ 2; *id.* at Exs. E, K, H, M.) The Trustee's Proffered Allegations specifically demonstrate that the Trustee's action to recover the Transfers does not require an extraterritorial application of SIPA or Bankruptcy Code Section 550.

## THE TRANSFERS AND COMPONENT EVENTS OF BANQUE SYZ'S BLMIS FEEDER FUND TRANSACTIONS WERE PREDOMINANTLY DOMESTIC

Citing to *Maxwell I*, the District Court directed that "the location of the transfers as well as the component events of those transactions"[2] must be used to determine whether a subsequent

---

[1] For ease of reference, Sigma is included herein in the definition of "BLMIS Feeder Funds."

[2] Extraterritoriality Decision, 513 B.R. at 227 (citing *Maxwell I*, 186 B.R. at 816).

transfer claim involves a domestic or extraterritorial application of the Code and SIPA.[3] Under the District Court's ruling, the Trustee need only put forth "specific facts suggesting a domestic transfer" to avoid dismissal.[4] This is a fact-based inquiry in which all reasonable inferences should be drawn in the Trustee's favor.[5]

Banque Syz argues that simply because it and the BLMIS Feeder Funds in which it invested were formally organized under the laws of foreign countries, the subsequent transfers it received are "purely foreign" and the Trustee's recovery action must be dismissed. This superficial argument disregards the *Maxwell I* analysis directed by the District Court and is inconsistent with Second Circuit extraterritoriality case law that similarly examines a transaction's various connections to the United States.[6]

To begin with, the entire purpose of Banque Syz's investments with the BLMIS Feeder Funds was to invest in U.S. securities markets through New York-based investment adviser BLMIS and to earn returns on those U.S.-based investments. Banque Syz invested in as many as five separate BLMIS feeder funds as well as opening a direct customer account with BLMIS (the "Banque Syz Direct Account") into which it deposited tens of millions of dollars. (*Id.* at ¶¶ 7-8.) It knew and intended that its feeder fund investments, like its direct investment, would be a means of getting access to BLMIS in New York. Indeed, beginning in 1998, Banque Syz spent a decade actively pursuing opportunities to invest with BLMIS or, in its own words in an e-mail to

---

[3] *In re Maxwell Commc'n Corp.*, 186 B.R. 807, 816-17 (S.D.N.Y. 1995).

[4] Extraterritoriality Decision, 513 B.R. at 232 n.4.

[5] *See*, *e.g.*, *Anwar v. Fairfield Greenwich, Ltd.*, 728 F. Supp. 2d 372, 402-03 (S.D.N.Y. 2010) (deferring ruling on extraterritoriality at motion to dismiss phase and citing standard that "[t]he court must accept all well-pleaded factual allegations in the complaint as true, and draw all reasonable inferences in the plaintiff's favor.").

[6] *See, e.g., Parkcentral Global Hub Ltd. v. Porsche Auto. Holdings SE*, 763 F.3d 198, 217 (2d Cir. 2014); *European Cmty. v. RJR Nabisco, Inc.*, 764 F.3d 129, 141 (2d Cir. 2014); and other cases cited in the Trustee's Main Brief.

2

Fairfield Greenwich Group ("FGG"), "looking for some Madoff." (*Id.* at ¶¶ 5-6.) Banque Syz co-founder Eric Syz ("Syz") was related to Walter Noel, co-founder of FGG, and as a result also knew and met with Madoff personally on multiple occasions. (*Id.* at ¶ 9.) Syz was among the select group of individuals included in Madoff's personal telephone contact list. (*Id.*)

Banque Syz entered into subscription agreements with the BLMIS Feeder Funds at least 46 times and in each case affirmed that it knew (i) the BLMIS Feeder Funds invested almost exclusively with a New York-based, SEC-registered investment adviser (i.e. BLMIS) that invested in the U.S. securities market, and (ii) Banque Syz's money would be transferred to that same investment adviser in New York. (*Id.* at ¶¶ 10-12.) Thus, Banque Syz knowingly relinquished all control over its investments with BLMIS to BLMIS, and its connections to BLMIS and the United States were anything but remote. As Judge Lifland concluded in a similar matter, "[t]he movement of money to and from BLMIS in the United States . . . was not fortuitous or incidental; instead, it was 'the ultimate objective' and the '*raison d'etre*' of the Agreement between" the investor and the feeder fund.[7]

The express provisions of its agreements with the Fairfield Funds and with BLMIS directly further demonstrate the domestic nature of Banque Syz's investment transactions with the BLMIS Feeder Funds. Both in its Fairfield Fund subscription agreements and its BLMIS customer agreements related to the Banque Syz Direct Account, Banque Syz agreed that New York law would govern its investments, and it consented to U.S. jurisdiction. (Proffered Allegations at ¶¶ 13-15.) Thus, Banque Syz had every expectation that U.S. laws would apply to its investment transactions and that it would be subject to suit in the United States.

Moreover, Banque Syz purposefully and repeatedly used U.S. bank accounts and the U.S.

---

[7] *Picard v. Bureau of Labor Ins. (In re BLMIS)*, 480 B.R. 501, 513 (Bankr. S.D.N.Y. 2012).

banking system in connection with its subscriptions into and Transfers from Fairfield Sentry and Kingate Global.[8] Specifically, (i) in its Fairfield Sentry transaction documents, Banque Syz designated a bank account in its own name at UBS in New York to make subscription payments, and (ii) in its Fairfield Sentry and, upon information and belief, Kingate Global transaction documents, Banque Syz designated this same bank account to receive redemption payments. (Proffered Allegations at ¶¶ 18-20.) Banque Syz also remitted its subscriptions into U.S. correspondent accounts at the direction of Fairfield Sentry and Kingate Global, which funds were then ultimately delivered to BLMIS in New York. (*Id.* at ¶ 21.)

Beyond all of the above domestic components, Banque Syz's argument that its transactions are "purely foreign" is wrong because it ignores the reality of the BLMIS Feeder Funds, from which it received the Transfers. FGG in New York created, managed, and controlled the Fairfield Funds. (*Id.* at ¶ 23.) The Fairfield Funds were based out of New York and had their principal place of business in New York. (*Id.* at ¶ 22.) Although technically registered in the BVI, the Fairfield Funds had no employees or offices there, and at all times, operational decisions were made by FGG employees in New York.[9] (Proffered Allegations at ¶¶ 28, 48.) In their BLMIS account opening documents, FGG listed Fairfield Sentry's address as in the United States. (*Id.* at ¶¶ 29-30.) The Fairfield Funds' initial and on-going due diligence on BLMIS was conducted in New York, and the operative legal documents for their BLMIS accounts were governed by New York law. (*Id.* at ¶¶ 33-34, 49-50.)

---

[8] *See*, *e.g.*, *Picard v. Igoin (In re BLMIS)*, 2015 WL 603209, at *16-17 (Bankr. S.D.N.Y. Feb. 13, 2015) (in the analogous context of personal jurisdiction, repeated use of U.S. bank accounts sufficient).

[9] *See SEC v. Gruss*, 2012 WL 3306166 at *3 (S.D.N.Y. Aug 13, 2012) (finding that issues of fact existed regarding whether an offshore fund was "foreign" for purposes of extraterritoriality where complaint alleged that operational and investment decisions for the offshore fund were made in New York, "such that for all intents and purposes, the [offshore fund] was based in New York").

4

The Kingate Funds similarly had no physical offices, no employees, and transacted no meaningful business in the BVI where they were registered. (*Id.* at ¶ 58.) Instead, the Kingate Funds operated through investment managers, consultants, and other service providers with substantial connections to the United States. (*Id.* at ¶ 60.) BLMIS in New York was the investment manager, executing broker, and custodian for the Kingate Funds' assets, and thus control over the Kingate Funds rested entirely with BLMIS in New York. (*Id.* at ¶¶ 66-67.) New York was the hub for the Kingate Funds' due diligence on BLMIS, and the Kingate Funds' agreements with BLMIS were governed by New York law. (*Id.* at ¶ 76.)

Finally, Banque Syz had every expectation, based on a U.S. legal memorandum it received in 2004, that investing in a BLMIS feeder fund meant taking on the risk of a BLMIS bankruptcy in the U.S. and that in such an event, a trustee would be appointed by SIPC. (*Id.* at ¶ 16.) Banque Syz in fact sought to utilize the protections provided by SIPC in the U.S. bankruptcy process by filing a Customer Claim with the Trustee with respect to the Banque Syz Direct Account. (*Id.* at ¶ 17.) Banque Syz should not be able to invoke "extraterritoriality" with respect to the Trustee's action against it while at the same time seeking to participate in the Trustee's distributions from the fund of customer property.[10]

## CONCLUSION

For the forgoing reasons and those stated in the Trustee's Main Brief, Banque Syz's motion to dismiss should be denied and the Trustee's motion for leave to amend his Complaint should be granted.

---

[10] *See, e.g., In re Interbulk*, 240 B.R. 195, 199 (Bankr. S.D.N.Y. 1999).

08-01789-cgm    Doc 10294    Filed 06/26/15    Entered 06/26/15 19:05:27    Main Document
Pg 7 of 7

| | |
|---|---|
| Dated: June 26, 2015<br>New York, New York | By: /s/ Thomas L. Long<br>Baker & Hostetler LLP<br>45 Rockefeller Plaza<br>New York, New York  10111<br>Telephone: (212) 589-4200<br>Facsimile: (212) 589-4201<br>David J. Sheehan<br>Thomas L. Long<br>Matthew D. Feil<br>Hannah C. Choate<br><br>*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Estate of Bernard L. Madoff* |