BAKER & HOSTETLER LLP
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee for the
Substantively Consolidated SIPA Liquidation
of Bernard L. Madoff Investment Securities LLC
and the Estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, <br><br> Plaintiff-Applicant, <br><br> v. <br><br> BERNARD L. MADOFF INVESTMENT SECURITIES LLC, <br><br> Defendant. | Adv. Pro. No. 08-01789 (SMB) <br><br> SIPA Liquidation <br><br> (Substantively Consolidated |
| In re: <br><br> BERNARD L. MADOFF, <br><br> Debtor. | **TRUSTEE'S SUPPLEMENTAL MEMORANDUM OF LAW IN OPPOSITION TO ZCM ASSET HOLDING COMPANY'S MOTION TO DISMISS BASED ON EXTRATERRITORIALITY AND IN FURTHER SUPPORT OF THE TRUSTEE'S MOTION FOR LEAVE TO AMEND THE COMPLAINT** |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, <br><br> Plaintiff, <br><br> v. <br><br> ZCM ASSET HOLDING COMPANY (BERMUDA), LLC <br><br> Defendant. | Adv. Pro. No. 12-01512 (SMB) |

The Trustee respectfully submits this memorandum as a supplement to his Main Brief being filed simultaneously herewith in opposition to the motion to dismiss based on extraterritoriality made by ZCM Asset Holding Company (Bermuda) Limited ("ZCM") and in further support of the Trustee's motion for leave to amend his Complaint.

## BACKGROUND

ZCM—part of the Zurich Insurance Group, a sophisticated global financial organization that includes approximately 600 affiliated entities—was a shareholder in Fairfield Sentry Limited ("Fairfield Sentry") and Kingate Global Limited ("Kingate Global" and together with Fairfield Sentry, the "BLMIS Feeder Funds"). (Proffered Allegations at ¶¶ 1, 3.) The BLMIS Feeder Funds invested substantially all of their assets with BLMIS. (*Id.* at ¶ 1.) ZCM received $50,820,216 in subsequent transfers of BLMIS customer property from the BLMIS Feeder Funds (the "Transfers"). (Trustee's Complaint at ¶ 2; *id.* at Exs. C, F). The Trustee's Proffered Allegations demonstrate that the Trustee's action to recover these Transfers does not require an extraterritorial application of SIPA or Bankruptcy Code Section 550.

## THE TRANSFERS AND COMPONENT EVENTS OF ZCM'S BLMIS FEEDER FUND TRANSACTIONS WERE PREDOMINANTLY DOMESTIC

Citing to *Maxwell I*, the District Court directed that "the location of the transfers as well as the component events of those transactions"[1] must be used to determine whether a subsequent transfer claim involves a domestic or extraterritorial application of the Code and SIPA.[2] Under

---

[1] Extraterritoriality Decision, 513 B.R. at 227 (citing *Maxwell I*, 186 B.R. at 816).

[2] In *Maxwell I*, the court examined all potential connections with the United States by reviewing: (i) the debtor's location; (ii) the defendants' location; (iii) where the defendants engaged in business regarding the transaction; (iv) what transaction and agreements the parties entered into that led to the antecedent debt that the transfers were used to pay; (v) where the parties' relationship was centered when conducting the transaction that triggered the transfers; (vi) the law governing the parties' transactions; and (vii) how the transaction was concluded. *In re Maxwell Commc'n Corp.*, 186 B.R. 807, 816-17 (S.D.N.Y. 1995).

the District Court's ruling, the Trustee need only put forth "specific facts suggesting a domestic transfer" to avoid dismissal.[3]  This is a fact-based inquiry in which all reasonable inferences should be drawn in the Trustee's favor.[4]

ZCM argues that simply because it and the BLMIS Feeder Funds in which it invested were formally organized under the laws of foreign countries, the subsequent transfers it received are "purely foreign" and the Trustee's recovery action must be dismissed.  This superficial argument disregards the *Maxwell I* analysis directed by the District Court and is inconsistent with Second Circuit extraterritoriality case law that similarly examines a transaction's various connections to the United States.[5]

To begin with, ZCM's transactions with Fairfield Sentry were controlled and directed, at least in part, by its New York-based affiliate Zurich Capital Markets Inc. ("Zurich Capital Markets").  (Proffered Allegations at ¶ 5.)  ZCM authorized Zurich Capital Markets to negotiate and execute all operational documents on behalf of ZCM.  (*Id.* at ¶ 6.)  ZCM also directed all written communications from Fairfield Sentry to New York-based Zurich Capital Markets.  (*Id.*)  After BNP Paribas S.A. ("BNP") purchased the assets of Zurich Capital Markets in July 2003, BNP's New York-based subsidiary, BNP Paribas Securities Corp. ("BNP Securities"), became ZCM's servicing agent responsible for coordinating ZCM's Fairfield Sentry investments.  (*Id.* at

---

[3] Extraterritoriality Decision, 513 B.R. at 232 n.4.

[4] *See*, *e.g.*, *Anwar v. Fairfield Greenwich, Ltd.*, 728 F. Supp. 2d 372, 402-03 (S.D.N.Y. 2010) (deferring ruling on extraterritoriality at motion to dismiss phase and citing standard that "[t]he court must accept all well-pleaded factual allegations in the complaint as true, and draw all reasonable inferences in the plaintiff's favor.").

[5] *See, e.g.*, *Parkcentral Global Hub Ltd. v. Porsche Auto. Holdings SE*, 763 F.3d 198, 217 (2d Cir. 2014); *European Cmty. v. RJR Nabisco, Inc.*, 764 F.3d 129, 141 (2d Cir. 2014); and other cases cited in the Trustee's Main Brief.

2

¶ 7.)  ZCM directed written communications from Fairfield Sentry to BNP Securities, including ZCM's Fairfield Sentry's redemption confirmations.  (*Id.* at ¶ 8.)

The entire purpose of ZCM's investments with the BLMIS Feeder Funds was to invest in U.S. securities markets through New York-based investment adviser BLMIS, and to earn returns on those U.S.-based investments.  Specifically, ZCM entered into subscription agreements with the BLMIS Feeder Funds at least 40 times and in each case affirmed that it knew (i) the BLMIS Feeder Funds invested almost exclusively with a New York-based, SEC-registered investment adviser (i.e. BLMIS) that invested in the U.S. securities market, and (ii) ZCM's money would be transferred to that same investment adviser in New York.  (*Id.* at ¶¶ 12-13.)  As Judge Lifland concluded in a similar matter, "[t]he movement of money to and from BLMIS in the United States . . . was not fortuitous or incidental; instead, it was 'the ultimate objective' and the '*raison d'etre*' of the Agreement between" the investor and the feeder fund.[6]

The express provisions of its agreements with Fairfield Sentry further demonstrate the domestic nature of ZCM's investment transactions with the BLMIS Feeder Funds.  ZCM agreed in its subscription agreements with Fairfield Sentry that New York law would govern its investments, and it consented to U.S. jurisdiction. (Proffered Allegations at ¶¶ 15-16.)  Thus, ZCM had every expectation that U.S. laws would apply to its investment transactions and that it would be subject to suit in the United States.

ZCM also purposefully and repeatedly used an affiliate's U.S. bank account and the U.S. banking system in connection with its at least 60 subscriptions into and redemptions from

---

[6] *Picard v. Bureau of Labor Ins. (In re BLMIS)*, 480 B.R. 501, 513 (Bankr. S.D.N.Y. 2012).

Fairfield Sentry, including the Transfers at issue.[7] Specifically, in its Fairfield Sentry transaction documents, ZCM designated a bank account in its affiliate's name at Citibank in New York for remitting subscriptions to and receiving redemptions from Fairfield Sentry. (Proffered Allegations at ¶ 18.) ZCM typically had New York-based BNP Securities make Fairfield Sentry redemption requests on ZCM's behalf. (*Id.* at ¶ 20.) ZCM also remitted its subscriptions into a U.S. correspondent account at the direction of Fairfield Sentry, which funds were then ultimately delivered to BLMIS in New York. (*Id*. at ¶ 21.)

Beyond all of the above domestic components, ZCM's argument that its transactions are "purely foreign" is wrong because it ignores the reality of the BLMIS Feeder Funds, from which it received the Transfers. Fairfield Greenwich Group ("FGG") in New York created, managed, and controlled Fairfield Sentry. (*Id.* at ¶ 22.) Fairfield Sentry was based out of New York and had its principal place of business in New York. (*Id.* at ¶¶ 22, 28.) Although technically registered in the BVI, Fairfield Sentry had no employees or offices there, and at all times, operational decisions were made by FGG employees in New York.[8] (Proffered Allegations at ¶ 27.) In its BLMIS account opening documents, FGG listed Fairfield Sentry's address as in the United States. (*Id.* at ¶ 29.) Fairfield Sentry's initial and on-going due diligence on BLMIS was conducted in New York, and the operative legal documents for its BLMIS accounts were governed by New York law. (*Id.* at ¶¶ 31, 33.) BLMIS in New York served as Fairfield Sentry's

---

[7] *See, e.g.*, *Picard v. Igoin (In re BLMIS*), 2015 WL 603209, at *16-17 (Bankr. S.D.N.Y. Feb. 13, 2015) (in the analogous context of personal jurisdiction, repeated use of U.S. bank accounts sufficient).

[8] *See SEC v. Gruss*, 2012 WL 3306166 at *3 (S.D.N.Y. Aug 13, 2012) (finding that issues of fact existed regarding whether an offshore fund was "foreign" for purposes of extraterritoriality where complaint alleged that operational and investment decisions for the offshore fund were made in New York, "such that for all intents and purposes, the [offshore fund] was based in New York").

4

investment manager and implemented the split-strike conversion strategy for Fairfield Sentry. (*Id.* at ¶¶ 35-36.)

Kingate Global similarly had no physical offices, no employees, and transacted no meaningful business in the BVI where it was technically registered. (*Id.* at ¶ 47.) Instead, Kingate Global operated through investment managers, consultants, and other service providers with substantial connections to the United States. (*Id.* at ¶ 49.) BLMIS in New York was the investment manager, executing broker, and custodian for Kingate Global's assets, and thus control over Kingate Global rested entirely with BLMIS in New York. (*Id.* at ¶¶ 55-56.) New York was the hub for Kingate Global's due diligence on BLMIS, and Kingate Global's agreements with BLMIS were governed by New York law. (*Id.* ¶¶ at 57-66.)

## CONCLUSION

For the forgoing reasons and those stated in the Trustee's Main Brief, ZCM's motion to dismiss should be denied, and the Trustee's motion for leave to amend his Complaint should be granted.

Dated: June 26, 2015  
       New York, New York

By: /s/ Thomas L. Long  
Baker & Hostetler LLP  
45 Rockefeller Plaza  
New York, New York  10111  
Telephone: (212) 589-4200  
Facsimile: (212) 589-4201  
David J. Sheehan  
Thomas L. Long  
Matthew D. Feil  
Hannah C. Choate  

*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Estate of Bernard L. Madoff*

5