**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, NY 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>       Plaintiff-Applicant,<br>  v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>       Defendant. | No. 08-01789 (SMB)<br><br>SIPA LIQUIDATION<br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>       Debtor. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and Bernard L. Madoff,<br><br>       Plaintiff,<br>  v.<br><br>HSBC BANK PLC, et al.,<br><br>       Defendants. | Adv. Pro. No. 09-01364 (SMB) |

**THE TRUSTEE'S SUPPLEMENTAL MEMORANDUM OF LAW IN
OPPOSITION TO THE MOTION TO DISMISS BASED ON EXTRATERRITORIALITY
AND IN FURTHER SUPPORT OF THE TRUSTEE'S MOTION FOR LEAVE TO
<u>AMEND COMPLAINTS</u>**

The Trustee respectfully submits this supplemental memorandum in opposition to the consolidated motion to dismiss (the "Motion") and in further support of the Trustee's motion for leave to amend complaints.[1] The Motion was joined in this proceeding by:[2]

- Thema International Fund plc ("Thema International")

- Lagoon Investment Limited ("Lagoon")

- Hermes International Fund Limited ("Hermes")

- Lagoon Investment Trust ("Lagoon Trust")

- Equus Asset Management Ltd. ("Equus")

- Hermes Asset Management Limited ("Hermes Management")

- Thema Asset Management (BVI) ("Thema Management BVI")

- Thema Asset Management (Bermuda) ("Thema Management Bermuda," together with Equus, Hermes Management and Thema Management BVI, the "Management Defendants")

- HSBC Bank Bermuda Limited ("HSBC Bank Bermuda"), HSBC Securities Services (Ireland) Ltd. ("HSSI"), HSBC Institutional Trust Services (Ireland) Limited ("HITSI"), HSBC Securities Services (Luxembourg) S.A. ("HSSL"), HSBC Institutional Trust Services (Bermuda) Limited ("HITSB"), HSBC Securities Services (Bermuda) Ltd.("HSSB"), and HSBC Fund Services (Luxembourg) S.A. ("HSBC Fund Services") (collectively, the "HSBC Defendants")

For ease of reference, the following chart sets forth the relationships among the relevant

---

[1] The Trustee submits this memorandum in accordance with this Court's Order Concerning Further Proceedings on Extraterritoriality Motion and Trustee's Omnibus Motion for Leave to Replead and for Limited Discovery with appended Exhibits A-C entered December 10, 2014, as modified by the Stipulations and Orders entered January 14, 2015 and February 24, 2015 (collectively, the "Order"). This memorandum supplements the Trustee's main memorandum of law filed contemporaneously with this memorandum.

[2] Equus Asset Management Partners L.P., Genevalor, Benbassat et Cie, Cape Investment Advisors Limited, Aurelia Fund Management Limited, Aurelia Asset Management Partners, Alberto Benbassat, Stephane Benbassat, the Estate of Mario Benbassat, Roberto Nespolo, Laurent Mathysen-Gerst, Vladamir Stepczynski, Marc Wenger, Pascal Cattaneo, Olivier Ador, T&M Trusteeship & Management Services S.A., and GTM Management Services Corp. N.V. also joined in the Motion but these parties are not listed as defendants in the Trustee's Second Amended Complaint, and the Trustee does not seek to pursue any cause of action against these defendants at this time.

2

defendants:

| Feeder Fund | Investment Manager | Administrator / Sub-Administrator | Custodian / Sub-Custodian |
|---|---|---|---|
| Alpha Prime | Alpha Prime Asset Management | HSBC Bank Bermuda/HSSB (A) <br><br> HSSL (SA) | HSBC Bank Bermuda/ HITSB (C) <br><br> HSSL (SC) |
| Hermes | Hermes Management / Equus | HSBC Bank Bermuda/HSSB (A) <br><br> HSSL/HSBC Fund Services (SA) | HSBC Bank Bermuda/ HITSB (C) <br><br> HSSL (SC) |
| Lagoon | *Lagoon is Hermes' subsidiary and existed only to be a BLMIS Accountholder; does not have an inv. manager | *Lagoon is Hermes' subsidiary and existed only to be a BLMIS Accountholder; does not have an administrator | HSBC Bank Bermuda/ HITSB (C) <br><br> HSSL (SC) |
| Lagoon Trust | Hermes Management | HSSL | HSSL |
| Thema Fund | Thema Management Bermuda | HSBC Bank Bermuda/HSSB (A) <br><br> HSSL (SA) | HSBC Bank Bermuda/ HITSB (C) <br><br> HSSL (SC) |
| Thema Wise | *Thema Wise is Thema Fund's subsidiary and existed only to be a BLMIS Accountholder; does not have an inv. manager | *Thema Wise is Thema Fund's subsidiary and existed only to be a BLMIS Accountholder; does not have an administrator | *Thema Wise is Thema Fund's subsidiary and existed only to be a BLMIS Accountholder; does not have a custodian |
| Thema International | Thema Management BVI | HSSI | HITSI (C) <br><br> HSBC Bank Bermuda (SC) |

3

The Management Defendants and HSBC Defendants (collectively, the "Transferee Defendants") assert that the Trustee's Amended Complaint is barred by *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247 (2010) and that any amendment would be futile (the "Motion"). In connection with the motion to amend, the Trustee is submitting a Proposed Second Amended Complaint (the "Complaint"). The allegations in the Complaint show that (i) amendment would not be futile; and (ii) the component events of the transactions at issue in this proceeding do not require an extraterritorial application of the United States Bankruptcy Code or SIPA.

## ARGUMENT

The Trustee seeks to recover from the Transferee Defendants property, or its value, initially transferred by BLMIS, a New York based NASD-registered broker-dealer, to four BLMIS accountholders—Alpha Prime Fund Limited ("Alpha Prime"), Thema International, Thema Wise, and Lagoon (collectively, the "BLMIS Accountholders"). The BLMIS Accountholders were established to invest exclusively with BLMIS's investment advisory business (the "IA Business"). The Transferee Defendants were designed to extract hundreds of millions of dollars from Madoff's Ponzi scheme for the benefit of the Feeder Funds (as defined below), the Management Defendants, and the HSBC Defendants, and are immediate or mediate transferees of the BLMIS Accountholders that received customer property through transfers (the "Transfers").[3] The Transfers, as described in the Complaint, include $297,354,246 in initial transfers to Lagoon;[4] $735,536,907 in initial transfers to Thema International;[5] $130,135,000 in

---

[3] The Trustee has reserved his right to add information regarding the Transfers and seek recovery of additional subsequent transfers following discovery in this proceeding. Compl. ¶ 548.
[4] Compl. ¶ 376.
[5] *Id.*

4

initial transfers to Thema Wise/Thema Fund;[6] $83,170,000 in initial transfers to Alpha Prime;[7] at least $79,334,375 million received by Hermes Management;[8] at least $10,558,411 million received by Thema Management (Bermuda);[9] at least $105,437,711 received by Thema Management BVI;[10] at least $1,761,740 received by Equus;[11] and at least $21,208,961 in fees received by the HSBC Defendants.[12] The Transfers do not include redemptions paid to subscribers in the Feeder Funds.

Under *Morrison*, which revised the standard for determining whether a securities transaction is extraterritorial, the Court must consider the context in which the transaction occurred.[13] Judge Rakoff determined that in the context of an avoidance action, as here,[14] the nature of a transaction—whether foreign or domestic—is determined by the location of the transfers and the component events of that transaction.[15] According to Judge Rakoff, the Trustee must "put forth specific facts suggesting . . . domestic transfer[s]."[16] The specific facts alleged in this proceeding require consideration of the economic reality of the Transfers,[17] and all reasonable inferences must be drawn in the Trustee's favor.[18] Consistent with this, a recent

---

[6] *Id.*

[7] *Id.*

[8] *Id.* ¶¶ 159, 384.

[9] *Id.*

[10] *Id.*

[11] *Id.*

[12] *Id.* ¶ 384.

[13] *Morrison*, 561 U.S. at 267, 273.

[14] Because BLMIS made the initial transfers to the BLMIS Accountholder, the Complaint seeks to avoid the initial transfers and recover the Transfers subsequently made to the Transferee Defendants.

[15] *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 513 B.R. 222, 227 (S.D.N.Y. 2014) ("Extraterritoriality Decision") (quoting *In re Maxwell Commc'n Corp.*, 186 B.R. 807, 817 (S.D.N.Y. 1995)).

[16] *Id.* at 232 n.4.

[17] *See Parkcentral Global Hub Ltd. v. Porsche Auto. Holdings SE*, 763 F.3d 198, 213, 215-16 (2d Cir. 2014) (The Court must consider "the foreignness of the facts constituting the defendant's alleged violation," or its "economic reality," in determining whether the application of the statute is extraterritorial.).

[18] *Anwar v. Fairfield Greenwich Ltd.*, 728 F. Supp. 2d 372, 403-05 (S.D.N.Y. 2010); *cf. SEC v. ICP Asset Mgmt., LLC*, No. 09 Civ. 0118 (VM), 2012 WL 2359830, at *2 (S.D.N.Y. June 21, 2012) (denying summary judgment because evidence permitted inference that challenged conduct was domestic).

5

decision of the United States Court of Appeals for the Second Circuit (rendered after the Extraterritoriality Decision) explains that the presence of some foreign elements in a transaction is not dispositive as to whether a particular application of a statute is extraterritorial.[19] In the Extraterritoriality Decision, Judge Rakoff similarly held that extraterritorial transfers are those which only can be characterized as "*purely* foreign."[20]

The Trustee's Complaint alleges specific facts showing that the component events and economic reality of the transactions were focused in New York. Neither the place of formation nor residence of the Transferee Defendants in a foreign jurisdiction overcome the component events of these transactions. These facts demonstrate that the Transfers were not purely foreign.[21] The Motion should therefore be denied.

A.      **The Transfers from BLMIS to the BLMIS Accountholders Are Domestic[22]**

In the early 1990s, Madoff's sources of money threatened to run dry. He approached Sonja Kohn, an Austrian investment professional whom he met in the late 1980s when she was living in New York, to help create new sources of revenue.[23] In 1992, Kohn introduced Madoff to Mario Benbassat, the patriarch of the Benbassat family of Swiss investment professionals.[24]

---

[19] *Parkcentral*, 763 F.3d at 216.
[20] Extraterritoriality Decision, 513 B.R. at 232 (emphasis added).
[21] *Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60, 69 (2d Cir. 2012) (the *Morrison* analysis depends on a case's specific facts; residency or citizenship of a party does not affect where a transaction occurs); *In re Maxwell Commc'n Corp.*, 170 B.R. 800, 809 (Bankr. S.D.N.Y. 1994) (deciding whether a transaction is domestic requires looking at the facts "to determine whether they have a center of gravity outside the United States. Thus, for example, a transfer made in the U.S. by a foreign national to a foreign national could be considered a domestic transaction.").
[22] This section is separated here because Thema International and Lagoon are listed as subsequent transferees. If that issue is resolved section A and B would likely be combined.
[23] Compl. ¶¶ 32-33.
[24] *Id.* ¶ 34.

6

In 1993, Kohn returned to Austria from New York, forging a relationship with Bank Austria, to which she touted her Madoff connection.[25]

Kohn, the members of the Benbassat family (Mario Benbassat, Alberto Benbassat, and Stephane Benbassat), and their colleague David Smith, created the BLMIS Accountholders—single purpose vehicles whose sole function was to invest with BLMIS. The BLMIS Accountholders directed investments to BLMIS by (i) investing directly in Alpha Prime, (ii) investing directly with Thema International, (iii) investing with Thema Coral Fund, a sub-fund of Thema Fund, which then directed all investments to Thema Wise, (iv) investing with one of Hermes International's three sub-funds invested with BLMIS (Hermes World, Hermes Neutral, Hermes Universal), which then directed some or all of those investments to Lagoon, or (v) investing with Lagoon Trust, which directed all investments to Lagoon. Alpha Prime, Thema International, Thema Fund, Thema Wise, Hermes, Lagoon, and Lagoon Trust are collectively referred to as the "Feeder Funds." Sonja Kohn, Ursula Radel-Leszczynski, Stefan Zapotocky, Nigel Fielding, Mario Benbassat, Alberto Benbassat, Stephane Benbassat, and David Smith were the directors of some or all of the Feeder Funds (the "Directors").

To do business with BLMIS, the BLMIS Accountholders, or certain of the HSBC Defendants acting on their behalf, signed and delivered to BLMIS account opening agreements authorizing BLMIS to invest for the BLMIS Accountholders.[26] All of the Feeder Funds, Directors, Management Defendants, and HSBC Defendants played an important part in the customer relationship with BLMIS and worked together to use BLMIS's New York-based

---

[25] *Id.* ¶ 36.
[26] *Id.* ¶¶ 44, 142, 147, 397, 491.

operations as their profit center. The BLMIS Accountholders each filed a customer claim with the Trustee based on their relationship with BLMIS.[27]

The BLMIS Accountholders received initial transfers from BLMIS. Therefore, the concerns raised in the Extraterritoriality Decision regarding a potential extraterritorial application of section 550 do not apply to these transfers.

B.  The Transfers Came Through Entities Seeking to Profit from BLMIS in New York

The Feeder Funds needed service providers to facilitate their investment with BLMIS. Accordingly, the Directors established management entities to manage the Feeder Funds. They created Hermes Asset Management to manage Hermes, Lagoon, and Lagoon Trust, Thema Asset Management BVI to manage Thema International, Thema Management Bermuda to manage Thema Fund and Thema Wise, and Alpha Prime Asset Management[28] to manage Alpha Prime. The Benbassats and Smith also ensured that Equus, an entity they controlled, provided certain administrative services to Thema Management Bermuda and Thema Management BVI.[29]

On behalf of the Feeder Funds and the Management Defendants, the Directors and their associates met with Madoff and/or Frank DiPascali, a BLMIS employee, in New York dozens of times and had regular phone calls with them throughout the course of the Feeder Funds' relationship with Madoff and BLMIS.[30] During those meetings and telephone calls, the Directors and their associates discussed the Feeder Funds' performance and Madoff's strategy, as well as opportunities to capitalize on their relationship through the development of new

---

[27] *Id.* ¶ 148.
[28] Alpha Prime Asset Management is not a party to the Motion.
[29] Compl. ¶¶ 67, 77.
[30] *Id.* ¶¶ 33-34, 39, 80, 261-62, 264, 398, 511.

8

BLMIS investment vehicles.[31] Based on these meetings and contacts with Madoff, the Directors and Management Defendants approved continued investment with BLMIS. Each new investment vehicle was created to mimic the structure and performance of a previously created Feeder Fund.[32]

The Feeder Funds also enlisted various HSBC entities to act as administrators and custodians. The Benbassats and Smith selected HSBC Bank Bermuda and HITSB as custodian and HSSL as sub-custodian for Hermes, Lagoon, Lagoon Trust, and Thema Fund/Thema Wise, and HITSI as custodian for Thema International. HSBC Bank Bermuda and HSSB served as administrator and HSBC Fund Services and HSSL served as sub-administrator to Hermes, Lagoon, Lagoon Trust and Thema Fund/Thema Wise, while Thema International appointed HSSI as administrator. Alpha Prime appointed HSBC Bank Bermuda its custodian and administrator.[33] HSBC Bank Bermuda then appointed HSSL as Alpha Prime's sub-administrator and sub-custodian delegating its administrative and custodial duties to HSSL.

As custodians, the HSBC Defendants received and held the Feeder Funds' subscriptions and transferred these funds to BLMIS in U.S. dollars through one of HSBC's U.S. bank accounts.[34] The HSBC Defendants used HSBC Bank USA at least 317 times to effect the BLMIS feeder funds' subscriptions to and redemptions from BLMIS. Accordingly HSBC Bank USA was a key component in effecting the transfers and carrying out the HSBC Defendants' duties as custodians for the Feeder Funds.[35] As administrators, the HSBC Defendants reviewed and verified the Feeder Funds' BLMIS customer statements and calculated the funds' Net Asset

---

[31] *Id.* ¶ 37.
[32] *Id.*
[33] HITSB replaced HSBC Bank Bermuda as Alpha Prime's custodian and administrator in January 2007.
[34] Compl. ¶ 145.
[35] *Id.*

9

value ("NAV").  In return for the services they rendered to the Feeder Funds, the HSBC Defendants received, in the aggregate, approximately $21,208,961 in fees.  These fees were paid to the HSBC Defendants even though many of the custodial duties they purported to render were delegated to BLMIS in New York.

All of the Transfers the Transferee Defendants received comprise customer property that the Feeder Funds withdrew from BLMIS and fulfilled a single economic purpose: to profit from a New York-based investment operation.  For example, the Directors and other Feeder Fund agents executed the BLMIS account opening documents, consisting of a Customer Agreement, Trading Authorization, and Option Agreement (the "BLMIS Account Opening Documents"), and transmitted them to BLMIS.[36]

The HSBC Defendants and their affiliates were service providers to over 20 Madoff related investment vehicles.  For example, HSSL's Global Chief Administrative Officer and Alpha Prime director, Nigel Fielding, was also a director of the Primeo Fund ("Primeo"), another Madoff feeder fund.[37]  As Primeo's custodian, HSSL executed the BLMIS Account Opening Documents on behalf of the fund.  Moreover, Fielding was a signatory to the sub-custody agreement between HSSL and BLMIS in which HSSL delegated to BLMIS the custodial duties it owed to Primeo.[38]  Likewise, HSSL, executed certain Lagoon BLMIS Account Opening Documents.[39]  Thus, the HSBC Defendants knew the extent of BLMIS's control over the Feeder Funds' investment strategy and custody of assets, and knew that the fees they received from the Feeder Funds were based on activities conducted in New York.

---

[36] *Id.* ¶¶ 44, 57, 75, 83.
[37] *Id.* ¶ 84.
[38] *Id.* ¶ 120.
[39] *Id.* ¶ 44.

C.  **BLMIS in New York Performed Investment Adviser, Custodian, and Broker-Dealer Functions for the Feeder Funds**

The BLMIS Accountholders' only investments were with BLMIS's IA Business in New York. Despite having registered addresses in Ireland, BVI, or Bermuda, the Feeder Funds had no physical offices or employees in either country.[40] Indeed, the Feeder Funds' presence and transactions in New York substantially outweighed their presence in the jurisdiction where they were formed. These jurisdictions require independent entities to serve as investment managers, investment advisors, custodians, and administrators as a means of safeguarding assets. Though the Directors created and maintained foreign service providers to the Feeder Funds, in reality, only Madoff made the investment decisions for the Feeder Funds, while acting as the broker-dealer executing transactions, investment adviser implementing the investment strategy and selecting the securities to be purchased and sold, and custodian, responsible for the safekeeping of assets.[41] Accordingly, the nucleus of each of the Feeder Funds' operations was in New York.

Although the Feeder Funds' official investment managers and investment advisers were the Management Defendants, the BLMIS Account Opening Documents provided BLMIS with complete authority to buy, sell and trade in U.S. securities on the BLMIS Accountholders' behalf.[42] Custodial functions were also delegated to BLMIS. For example, Thema International identified HITSI as its custodian.[43] HITSI then appointed HSBC Bank Bermuda sub-custodian, and HSBC Bank Bermuda subsequently entered into an agreement with BLMIS designating BLMIS as sub-custodian.[44] BLMIS also served as Thema International's investment

---

[40] *Id.* ¶¶ 43, 74, 82, 104.
[41] *Id.* ¶¶ 85, 155, 162-64, 166, 171, 179, 195-96, 222, 450, 477, 494.
[42] *Id.* ¶¶ 44, 65, 75, 83, 145, 147.
[43] *Id.* ¶179.
[44] *Id.*

11

adviser.[45] Shortly after its appointment as Alpha Prime's sub-custodian and sub-administrator, HSSL entered into a sub-custody agreement with BLMIS delegating to BLMIS its primary custodial duty of holding and safeguarding Alpha Prime's assets.[46]

Each Feeder Fund directly or indirectly placed subscription moneys from investors with BLMIS in New York for BLMIS to purchase U.S. securities traded exclusively on U.S. exchanges. BLMIS served as the Feeder Funds' agent to implement the split-strike conversion strategy in New York. Each of the Transferee Defendants knew that BLMIS's investment strategy purportedly involved purchasing U.S. securities traded only on U.S. exchanges, and that BLMIS in New York executed the transactions, and performed investment advisory, custodial, and reporting services regarding the invested assets.[47]

**D.    The Transfers Resulted From the Funds', Management Defendants', and HSBC Defendants' Relationship with BLMIS in New York**

Regardless of the jurisdiction in which the Transferee Defendants were formed, the economic activity giving rise to the Transfers occurred in New York. BLMIS's investment strategy attracted Feeder Fund investors, a strategy performed in New York. Indeed, many of the Feeder Fund subscribers only invested in the Feeder Funds to place their money with BLMIS in New York.[48] The Management Defendants were compensated in fees based on the NAV of Alpha Prime, Thema International, Thema Coral, Lagoon Trust and Hermes World, and portions of the NAV of Hermes Neutral and Hermes Universal, invested with BLMIS in New York.[49] These fees consisted, at least in part, of customer property taken from BLMIS in New York.

---

[45] *Id.* ¶¶181-83.
[46] *Id.* ¶¶ 120, 145, 163.
[47] *Id.* ¶¶ 44, 65, 75, 83, 145, 147, 402, 477, 494.
[48] *Id.* ¶ 260.
[49] *Id.* ¶ 150.

12

Likewise, the HSBC Defendants received a portion of the Transfers in the form of fees representing a percentage of the NAV of Alpha Prime, Thema International, Thema Coral, Lagoon Trust, and Hermes World, and those portions of the NAV of Hermes Neutral and Hermes Universal invested with BLMIS.[50] The Transfers that the Transferee Defendants received compensated them for the respective roles they played in the Feeder Funds' business relationship with BLMIS.

The amount of fees was not related to the scope or complexity of, or the time allotted to, the services rendered by the Management Defendants or the HSBC Defendants. Indeed, all investment advisory and custodial functions were turned over to BLMIS in New York.[51] Nor were the fees dependent upon where the services were performed. The Transfers received by the Transferee Defendants were directly and solely based on the Feeder Funds' assets under management most of which were in the custody of BLMIS in New York. And, as alleged in the Complaint, but for the Transfers, that money would have been part of BLMIS's customer property estate.[52]

The Feeder Funds flourished for 16 years, channeling hundreds of millions of dollars into BLMIS in New York. While the Transferee Defendants are incorporated in foreign jurisdictions, their existence depended entirely on BLMIS's New York IA Business, and the component events of the transactions constituted numerous links to the United States: BLMIS's implementation and execution of the split strike conversion strategy that involved exclusively U.S. securities listed on U.S. exchanges and attracted billions of investment dollars into the Feeder Funds; BLMIS's management and custody of the Feeder Funds' assets in New York; BLMIS's initial transfers to

---

[50] *Id.* ¶¶ 121, 384.
[51] *Id.* ¶¶ 155, 162-64.
[52] *Id.* ¶¶ 150, 159, 384.

the Feeder Funds, from which the Transfers to the Transferee Defendants were made; investments with BLMIS in U.S. dollars, necessitating a course of dealing with New York banks; and BLMIS-issued customer statements and trade confirmations from New York that formed the basis for calculating the Benbassat Funds' NAV and the payments to the Transferee Defendants. Because the Transfers made to the Transferee Defendants were wholly derived from Madoff's Ponzi scheme and caused injury in New York by prolonging Madoff's fraud and reducing BLMIS's customer property estate, the Motion should be denied, and the Trustee should be granted leave to amend.[53]

## CONCLUSION

For the reasons set forth herein and in the Trustee's main brief, the Trustee's claims against the Transferee Defendants are not purely foreign or subject to dismissal on the grounds of extraterritoriality, and the Trustee should be granted leave to amend.

Dated: June 26, 2015
      New York, New York

/s/ David J. Sheehan
**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Email: dsheehan@bakerlaw.com

*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the estate of Bernard L. Madoff*

---

[53] *Id.* ¶ 608. *Cf. Picard v. Estate (Succession) of Igoin*, Adv. Pro. 10-04336 (SMB), 2015 WL 603209, at *8 (Bankr. S.D.N.Y. Feb. 13, 2015) (finding personal jurisdiction where conduct caused injury in New York).