**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee*
*for the Substantively Consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities LLC*
*and the Estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>Plaintiff-Applicant,<br><br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>Defendant. | Adv. Pro. No. 08-01789 (SMB)<br><br>SIPA Liquidation<br><br>(Substantively Consolidated)<br><br>Adv. Pro. No. 10-04285 (SMB) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>Plaintiff,<br><br>v.<br><br>UBS AG, UBS (LUXEMBOURG) SA, UBS FUND SERVICES (LUXEMBOURG) SA, UBS THIRD PARTY MANAGEMENT COMPANY SA, ACCESS INTERNATIONAL ADVISORS LLC, ACCESS INTERNATIONAL ADVISORS LTD., ACCESS MANAGEMENT LUXEMBOURG SA (f/k/a ACCESS INTERNATIONAL ADVISORS (LUXEMBOURG) SA) as represented by its Liquidator MAITRE FERNAND ENTRINGER, ACCESS PARTNERS SA as represented by its | **TRUSTEE'S SUPPLEMENTAL MEMORANDUM OF LAW IN OPPOSITION TO MOVING ACCESS DEFENDANTS' MOTION TO DISMISS BASED ON EXTRATERRITORIALITY AND IN FURTHER SUPPORT OF TRUSTEE'S MOTION FOR LEAVE TO AMEND COMPLAINTS** |

Liquidator MAITRE FERNAND ENTRINGER, PATRICK LITTAYE, CLAUDINE MAGON DE LA VILLEHUCHET (a/k/a CLAUDINE DE LA VILLEHUCHET) in her capacity as Executrix under the Will of THIERRY MAGON DE LA VILLEHUCHET (a/k/a RENE THIERRY DE LA VILLEHUCHET), CLAUDINE MAGON DE LA VILLEHUCHET (a/k/a CLAUDINE DE LA VILLEHUCHET) individually as the sole beneficiary under the Will of THIERRY MAGON DE LA VILLEHUCHET (a/k/a RENE THIERRY DE LA VILLEHUCHET), PIERRE DELANDMETER, THEODORE DUMBAULD, LUXALPHA SICAV as represented by its Liquidators MAITRE ALAIN RUKAVINA and PAUL LAPLUME, MAITRE ALAIN RUKAVINA AND PAUL LAPLUME, in their capacities as liquidators and representatives of LUXALPHA SICAV, GROUPEMENT FINANCIER LTD.,

                Defendants.

The Trustee respectfully submits this supplemental memorandum in opposition to the motion to dismiss of Defendants: (i) Access International Advisors Ltd. ("AIA Ltd."); (ii) Access Management Luxembourg S.A. f/k/a Access International Advisors (Luxembourg) S.A. ("AML (f/k/a AIA (Lux))"); (iii) Access Partners S.A. ("AP (Lux)"); (iv) Patrick Littaye ("Littaye"); and (v) Pierre Delandmeter ("Delandmeter"), (collectively, the "Moving Access Defendants") based on extraterritoriality and in further support of the Trustee's motion for leave to amend his complaint. As set forth below, the Trustee's proposed Second Amended Complaint ("Second Am. Compl.") pleads specific facts showing the subsequent transfers received by the Moving Access Defendants are predominantly domestic under the standard set forth in the Extraterritoriality Decision,[1] such that the Trustee's action does not require an extraterritorial application of SIPA or Bankruptcy Code § 550, and the Moving Access Defendants' motion to dismiss should be denied.

The Moving Access Defendants seek dismissal of the Trustee's claims to recover avoidable transfers they received from Luxalpha SICAV ("Luxalpha") and Groupement Financier Ltd. ("Groupement Financier"), feeder funds the Moving Access Defendants – in coordination with the UBS Defendants[2]—created, directed and controlled to invest exclusively with BLMIS. The transfers to the Moving Access Defendants are not "purely foreign"—and were in fact predominantly domestic—because the component events and the relevant conduct giving rise to the fees received by the Moving Access Defendants occurred in the U.S.[3] The Trustee's subsequent transfer claims seek to recover fees stemming from the coordinated efforts

---

[1] *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 513 B.R. 222, 232-33 (S.D.N.Y. 2014) ("Extraterritoriality Decision").

[2] The UBS Defendants consist of Defendants UBS (Luxembourg) S.A. ("UBS SA"), UBS Fund Services (Luxembourg) S.A. ("UBSFSL"), UBS Third Party Management Company S.A. ("UBSTPM"), and UBS AG.

[3] Simultaneously herewith, the Trustee has filed the omnibus Trustee's Memorandum of Law in Opposition to the Transferee Defendants' Motion to Dismiss Based on Extraterritoriality and in Further Support of Trustee's Motion for Leave to Amend Complaints, No. 11-02796 (SMB), (Bankr. S.D.N.Y. June 26, 2015) (the "Trustee's Main Brief"), incorporated herein by reference.

1

of the Moving Access Defendants to establish and support Luxalpha and Groupement Financier. The fees received by the Moving Access Defendants for their purported management and advisory services to Luxalpha and Groupement Financier all derive from management functions that were contractually delegated to BLMIS, and which were performed in New York by BLMIS.[4]

In addition, Moving Access Defendants AIA Ltd., AML and AP (Lux) are not purely foreign transferees because they are or were mere shell entities that were at all relevant times dominated and controlled by Access founders Littaye and Thierry Magon de la Villehuchet ("Villehuchet") through Access's headquarters in New York. (Second Am. Compl. ¶¶ 133-145.) Littaye and Villehuchet formed these shell entities and installed them in management and administration positions for the Luxalpha and Groupement Financier funds to create the appearance that those positions were occupied by separate, independent actors. (*Id.*)

Littaye and Villehuchet also used these entities to service Luxalpha and Groupement Financier because Madoff advised Access that he wished to deal with offshore entities. (*Id.* ¶ 135.) Littaye and Villehuchet cultivated the appearance that the entities that comprised Access were distinct from one another and separately organized, but those entities operated as a single business enterprise, and/or as alter egos of one another. (*Id.* ¶ 132.) Defendant AIA LLC, along with its corporate parent AIA Inc., comprised Access's New York offices, which served as the headquarters for Access's operations. (*Id.* ¶ 127.)

Based on the Trustee's investigation to date, the Moving Access Defendants received approximately $100 million in subsequent transfers. (*Id.* ¶¶ 290a, 290c, 290d.) Given the

---

[4] "Access" refers to the Moving Access Defendants who moved for dismissal of the complaint based on extraterritoriality and their corporate parents/affiliates, including New York-based Access International Advisors Inc. ("AIA Inc.") and Access International Advisors LLC ("AIA LLC").

2

substantial domestic connections, the fact that the contractual relationships at issue were centered in the U.S., and the fact that Access's relevant operations were performed in New York, the Moving Access Defendants cannot now be allowed to evade the Trustee's claims on grounds of the extraterritorial application of the Bankruptcy Code.[5]

I. **THE MOVING ACCESS DEFENDANTS DIRECTED THE CREATION OF LUXALPHA AND GROUPEMENT FINANCIER AND SERVICED THESE FUNDS FOR THE SOLE PURPOSE OF INVESTMENT WITH BLMIS IN NEW YORK**

In 1994, Littaye and Villehuchet co-founded Access in New York. (*Id*. ¶ 127.) Villehuchet was a U.S. citizen who lived in New Rochelle, New York and was based in Access's New York City office. (*Id*. ¶ 82.) Littaye regularly traveled to New York to run Access's business and to meet with Madoff personally. (*Id*. ¶ 81-82.) Investing with BLMIS was Access's primary business, which was made possible through Littaye's close business and social relationship with Madoff stretching back to 1985. (*Id*. ¶¶ 76-77.) Access functioned as the manager and/or portfolio advisor for numerous BLMIS feeder funds. (*Id*. ¶ 77.) As such, Access was the point of entry to BLMIS for billions of dollars from European investors. (*Id*.)

Luxalpha was established in 2004 as a joint venture between Access and Defendants UBS AG and UBS (Luxembourg) S.A. ("UBS SA") to replace a prior Access-affiliated fund named Oreades SICAV ("Oreades"). Oreades was closed when its main service provider, BNP Paribas, developed misgivings about the legitimacy of BLMIS. (*Id*. ¶ 5.) The UBS Defendants stepped in to replace BNP Paribas and to help create Luxalpha. (*Id.*)

---

[5] *See Parkcentral Global Hub Ltd. v. Porsche Auto. Holdings SE*, 763 F.3d 198, 207 (2d Cir. 2014); *Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60, 69 (2d Cir. 2012) (holding *Morrison* depends on a case's specific facts and that residency or citizenship of a party does not affect where a transaction occurs); *In re Maxwell Commc'n Corp.*, 170 B.R. 800, 809 (S.D.N.Y. 1994) ("The court must look at the facts of a case to determine whether they have a center of gravity outside the United States. Thus, for example, a transfer made in the U.S. by a foreign national to a foreign national could be considered a domestic transaction.").

3

The Moving Access Defendants knew that Luxalpha was a fund wholly invested with BLMIS in New York, and arranged to have the UBS Defendants create Luxalpha and serve as its sponsor, manager, custodian and administrator. (*Id.* ¶¶ 101-111.) Access also coordinated the secret delegation of custodial and management authority from UBS SA to BLMIS. (*Id.* ¶¶ 178-183.) The Moving Access Defendants profited from this arrangement in the form of fees received by contracting with the UBS Defendants to serve as Luxalpha's "advisor," "consultant" and "client introducer." (*Id.* ¶¶ 134, 140, 141) Access provided little, if any, substantive advisory services because, as Access had arranged, BLMIS was actually managing Luxalpha instead of UBS SA. (*Id.* ¶¶ 151-183.)

Access created Groupement Financier in February 2003, and opened Groupement Financier's account with BLMIS that same year. (*Id.* ¶ 87.) The Moving Access Defendants knew that Groupement Financier was also completely invested with BLMIS, and served as Groupement Financier's manager and investment advisor. (*Id.* ¶¶ 87-91.) But all management and custodial authority was effectively delegated to BLMIS in New York. (*Id.*) The Moving Access Defendants' activity with regard to Luxalpha and Groupement Financier was entirely focused on directing investments to BLMIS in New York and receiving fees as a result of these investments. (*Id.*)

Luxalpha was incorporated as an investment fund in Luxembourg, and Groupement Financier was incorporated as an investment fund in the British Virgin Islands. (*Id*. ¶¶ 55, 61.) However, neither Luxalpha nor Groupement Financier had any employees or independent office space in those jurisdictions. (*Id*. ¶ 276.) Both were created for the sole purpose of investment with BLMIS in New York, and did nothing other than invest with BLMIS in New York. (*Id*. ¶¶

4

88, 177.) Luxalpha and Groupement Financier held BLMIS customer account numbers 1FR108 and 1FR096, respectively. (*Id*. ¶ 280.)

## II. THE MOVING ACCESS DEFENDANTS RECEIVED FEES BASED ON ACTIVITY THAT WAS CENTERED IN THE UNITED STATES

As service providers to Luxalpha and Groupement Financier, the Moving Access Defendants intended to and did transact business in the U.S. The Moving Access Defendants were headquarted in New York (*Id.* ¶ 132,) delegated their duties to BLMIS in New York (*Id.* ¶¶ 134, 140,) communicated directly and frequently with BLMIS in New York (*Id.* ¶¶ 80, 81) met with Madoff personally (*Id.* ¶¶ 80, 81,) and directed the transfer of hundreds of millions of dollars between New York and Luxalpha and Groupement Financier. (*Id.* ¶¶ 76-79 & Exs. B-C.)

### A. <u>AIA Ltd. Was a Shell Entity Controlled by New York-Based Access and Received Fees Based on Activity That Was Centered in the United States</u>

Defendant AIA Ltd. received at least $53.9 million in "client introduction" or "consulting" fees in connection with the management of Luxalpha. (*Id.* ¶ 290a.) AIA Ltd. also received at least $15 million in fees from Groupement Financier for serving as the official manager from 2003 to December 2008 and received at least $400,000 in fees for serving as the official manager of Groupement Financier Levered Limited ("Groupement Levered") from 2003 to December 2008. (*Id.*) Groupement Levered was another fund created by Access, and operated in conjunction with the UBS Defendants. Groupement Levered invested the entirety of its assets into Groupement Financier, and thus, into BLMIS. (*Id.* ¶ 88.)

Although formally incorporated in the Bahamas, AIA Ltd. had no employees and no physical presence there. Access itself described AIA Ltd. as an offshore "money box" set up for the "prime purpose [of] . . . the receipt of fees" on behalf of Access because "Bernie Madoff wants to only deal with offshore entities related to our accounts." (*Id.* ¶ 135.) AIA Ltd. relied on

5

Access personnel in New York to perform its work for Luxalpha and Groupement Financier. (*Id.* ¶ 136.) Money from AIA Ltd. funds was used to pay Access employees in New York. (*Id.* ¶ 135.) During the entire life of Luxalpha and Groupement Financier, AIA Ltd. was owned completely (or nearly completely) by Littaye and Villehuchet, who were also the owners of the AIA LLC and AIA Inc. entities that together comprised Access's New York headquarters office. (*Id.* ¶¶ 50, 51, 127, 132.)

### i. AIA Ltd.'s Luxalpha-Related Work was Performed by Access New York, but It Received Fees as if It Performed These Services Itself

AIA Ltd. served as a "Consultant and Client Introducer" for Luxalpha during the entirety of Luxalpha's operational life. (*Id.* ¶ 134.) But as Access had arranged, virtually all authority over the management of Luxalpha was centered in New York. In March 2004, UBS SA executed Luxalpha's BLMIS account opening documents. (*Id.* ¶¶ 159-60.) These documents included a Trading Authorization, which stated that the assets of Luxalpha would be invested with U.S. equities listed on the S&P 100, and provided for the delegation of complete managerial authority for Luxalpha to BLMIS in New York. (*Id.*) The account opening documents also included a Customer Agreement, which contains a New York choice of law clause. (*Id.*)

In furtherance of the management of Luxalpha, UBS SA also contracted with New York based AIA LLC, to provide UBS SA with "portfolio advisory services" in connection with Luxalpha. (*Id.* ¶ 129.) That contract contains a New York choice of law clause. (*Id.*)

Access New York employees compiled reports on Luxalpha's activities, which included Luxalpha's performance for the period, and BLMIS's purported entrances and exits from the U.S. stock market. (*Id.* ¶ 136.) The reports themselves say they were "[p]repared by [New York-based] Access International Advisors, Inc. for Access International Advisors Limited."

6

(*Id.*)  None of the consultant services that AIA Ltd. purported to provide to Luxalpha was accomplished in the Bahamas, but instead was performed in New York.

> ii. <u>AIA Ltd. Delegated Its Groupement Financier and Groupement Levered Managerial Duties to BLMIS in New York, but It Received Fees as if It Performed These Services Itself</u>

Although AIA Ltd. served as Groupement Financier's official manager, all management functions for this fund were performed by BLMIS in New York. In April 2003, Patrick Littaye, as director of Groupement Financier, executed Groupement Financier's BLMIS account opening documents. (*Id.* ¶ 87.)  Pursuant to the Trading Authorization, complete managerial authority for Groupement Financier was delegated to BLMIS.  (*Id.*)  The account opening documents executed by Littaye for Groupement Financier include a Customer Agreement, which contains a New York choice of law clause.[6]  (*Id.*)  AIA Ltd. also served as the official manager of Groupement Levered—but as Groupement Levered was fully invested in Groupement Financier, all management was again provided by BLMIS in New York.  (*Id.* ¶ 88, 137.)

Although AIA Ltd. held itself out as Groupement Financier and Groupement Levered's investment manager, it was never licensed anywhere in the world to act as an investment manager. (*Id.* ¶ 137.)   As with Luxalpha, Access New York employees also compiled reports on Groupement Financier's activities on a wide range of issues. (*Id.* ¶ 136.)  And again, as with Luxalpha, these reports on Groupement Financier state they were "[p]repared by [New York-based] Access International Advisors, Inc. for Access International Advisors Limited." (*Id.*)

---

[6] The Customer Agreement also provided that any controversies between BLMIS and Groupement Financier must be determined by arbitration under the Federal Arbitration Act, to be conducted in one of the following forums, all located in the U.S.: "before the American Arbitration Association, or before the New York Stock Exchange, Inc., or an arbitration facility provided by any other exchange of which the broker is a member, or the National Association of Securities Dealers, Inc . . ." The Customer Agreement further provided that all transactions in the customers' account must be subject to the provisions of the Securities Exchange Act of 1934, the Commodities Exchange Act, the rules and regulations of the SEC, the Board of Governors of the Federal Reserve System and the Commodities Futures Trading Commission.  (*Id.* ¶ 87.)

7

As all responsibility for the management of Groupement Financier and Groupement Levered's assets rested with BLMIS in New York, AIA Ltd. received $15.4 million in management fees from these funds for services that were in fact provided by BLMIS in New York. (*Id.* ¶ 290a.) None of the management of Groupement Financier was accomplished in the Bahamas, but instead was done through a combination of BLMIS and Access employees in New York.

B. **AML Was a Shell Entity Controlled by New York-Based Access and Received Fees Based on Activity That Was Centered in the United States**

AML (formerly AIA (Lux)) served as official portfolio advisor to Luxalpha from February 2004 to August 2004, receiving transfers in the form of fees. (*Id.* ¶ 290d.) In addition, AML received at least $2.4 million in fees for serving as the official investment advisor to Groupement Financier from 2003 to 2007, and at least $50,000 for serving as the investment advisor to Groupement Levered from 2003 to 2007. (*Id.*)

AML, like AIA Ltd., was an offshore shell entity subject to the control of majority owners Littaye and Villehuchet. (*Id.* ¶¶ 50, 51, 139.) AIA (Lux) had "no regular employees" and "no full time employees," listed Littaye and its outside counsel Pierre Delandmeter as the only investment professionals at the firm, and identified no one as carrying out its responsibilities other than Littaye and Delandmeter. (*Id.* ¶ 142.) The questionnaire also indicates that the functions of trading, research and development, IT/programming, administration, and marketing and business development are each "outsourced" by AIA (Lux). (*Id.*) In February 2005, a memo was circulated in Access's New York office providing instructions as to how to use remote access software to access the Luxembourg office, and concerning how emails, faxes and phone calls sent there would be forwarded. (*Id.* ¶ 145.) And notes from an Access meeting confirm AIA (Lux)'s purpose as an overseas shell entity for the

8

receipt of funds – stating that a "[s]ervice agreement will have to be put in place between the companies of AIA group, to spread the AIA Lux incomes." (*Id.* ¶ 142.)

AML and its predecessor AIA Lux purported to provide advisory services to Luxalpha, Groupement Financier, and Groupement Levered from its nominal address in Luxembourg. In reality, any purported services rendered were provided by or at the direction of Access's New York office. Access, although headquarted in New York, incorporated AML (f/k/a AIA (Lux)) as a Luxembourg shell company for the sole purpose of receiving fees related to BLMIS investments. Thus, the component events of these transactions involve domestic activity and U.S. law should apply to the transfers AML (f/k/a/ AIA (Lux)) received.

C. **AP (Lux) Was a Shell Entity Controlled by New York-Based Access and Received Fees Based on Activity That Was Centered in the United States**

AP (Lux) received at least $17.8 million in fees for serving as the investment advisor to Luxalpha from 2007 to December 2008. (*Id.* ¶ 290c.) AP (Lux) also received at least $8.4 million in fees from Groupement Financier for serving as the official investment advisor to Groupement Financier from 2007 to December 2008, and received an additional $2.5 million in fees from Groupement Levered for serving as the official investment advisor to Groupement Levered from 2007 to December 2008. (*Id.*).

Like AIA Ltd. and AML, AP (Lux) was an offshore shell entity subject to the control of majority owners Littaye and Villehuchet. (*Id.* ¶¶ 50, 51, 139. ) A 2008 contact list for various entities, including AP (Lux), shows an address and a phone number for an AP (Lux) Luxembourg office, but not a single Access employee is associated with this phone number. (*Id.* ¶ 144.) Analyses of Luxalpha's and Groupement Financier's performance were composed on AP (Lux) letterhead and distributed, but internal Access documents show that these analyses were prepared by employees in Access's New York headquarters. (*Id.*)

9

Access used AP (Lux) to protect Luxalpha and BLMIS from U.S. regulatory scrutiny. Littaye acknowledged in a meeting that Access "already took a small risk for Luxalpha" with respect to BLMIS and the U.S. Securities and Exchange Commission when it had New York-incorporated AIA LLC previously serve as the investment advisor for Luxalpha and, therefore, Access created AP (Lux) to take over in this role. (*Id.* ¶ 143.) New York-based Access formed AP (Lux) as a Luxembourg shell company for the sole purpose of receiving "investment advisor" fees, where such advisory services, if any, were performed in New York. The Trustee's subsequent transfer claims against AP (Lux) seek to recover the fees transferred to it under this arrangement orchestrated by New York-based Access.

### D. Patrick Littaye Performed Work in New York, Controlled New York-Based Access, and Received Transfers Based on Activity That Took Place In New York

Access co-founder and principal Littaye, received millions of dollars of subsequent transfers. (*Id.* ¶ 291.) At all relevant times, each of AIA Ltd., AP (Lux), and AML (f/k/a AIA (Lux)) was either completely or nearly-completely owned by Littaye and Access co-founder Villehuchet. (*Id.*) A significant amount of the subsequent transfers received by AIA LLC, AIA Ltd., AP (Lux), and AML (f/k/a AIA (Lux)) were subsequently transferred to Littaye, either directly or indirectly, in the form of distributions, payments, or other transfers of value. (*Id.*)

Littaye founded Access with Villehuchet in New York in 1994. (*Id.* ¶ 50.) Along with Villehuchet, Littaye was the co-owner of AIA Inc., Access's New York-registered entity, which owned Delaware-registered AIA LLC—both of which were based in Access's New York headquarters. (*Id.* ¶ 50, 127.) Littaye was a director of New York-based AIA Inc. for the 2003 to 2008 lifetime of the Luxalpha, Groupement Financier, and Groupement Levered funds. (*Id.* ¶ 50.) Littaye was also, at various times, a director of AIA Ltd., AML, and AP (Lux). (*Id.*)

10

Groupement Financier and Luxalpha were both founded as a result of Littaye's close relationship with Madoff. (*Id.* ¶ 78.) Littaye travelled to New York on at least a quarterly basis to meet with Madoff, occasionally bringing clients to meet with Madoff. (*Id.* ¶ 81, 82.) Littaye was also in regular written communication with BLMIS. (*Id.* ¶ 82.) For example, Littaye executed the account opening documents for Groupement Financier, and communicated regularly with BLMIS regarding the opening of accounts, the receipt and review of trade tickets and account statements, and instructions regarding redemptions. (*Id.* ¶¶ 81, 87.)

Littaye also regularly attended and presented at Access's strategy meetings in New York regarding its BLMIS funds. (*Id.* ¶ 82.) During one of Littaye's regular trips to New York, he was presented with an analysis by an outside consultant that demonstrated Madoff's purported performance was impossible. (*Id.* ¶¶ 203-210.) Even when he was not in New York, Littaye was in regular email and telephone contact with Access's headquarters there, directing and managing its operations along with Villehuchet. (*Id.* ¶ 82.) Access's marketing materials listed Littaye as having an office and phone number in New York. (*Id.*)

Littaye was the co-founder and co-owner of New York-based Access, coordinated the creation of Luxalpha and Groupement Financier, the opening of Luxalpha's and Groupement Financier's accounts with BLMIS, and the delegation of management and custodial duties to BLMIS in New York. Littaye directed New York-based Access to incorporate foreign shell companies for the sole purpose of receiving fees, as it was Madoff's preference to deal with offshore entities. The Trustee's subsequent transfer claims against Littaye seek to recover the fees transferred to him under this arrangement that was orchestrated at his direction.

11

### E. Pierre Delandmeter Performed Work in New York and Received Transfers Based on Activity That Took Place In New York

Delandmeter received approximately $350,000 in subsequent transfers from Luxalpha in connection with Delandmeter's purported provision of professional services to Luxalpha. (*Id.* ¶ 292.) Delandmeter also received subsequent transfers from Groupement Financier in connection with Delandmeter's purported provision of professional services to Groupement Financier. (*Id.*) A portion of the Luxalpha, Groupement Financier, and Groupement Levered-related subsequent transfers received by AIA LLC, AIA Ltd., AP (Lux), and AML were subsequently transferred to Delandmeter, directly or indirectly, in connection with the Luxalpha, Groupement Financier and Groupement Levered-related services Delandmeter provided to Access. (*Id.*)

Along with Littaye and Villehuchet, Delandmeter was also involved in Access's New York-based operations. Although a resident of Luxembourg, on several occasions, Delandmeter attended Access's quarterly strategic meetings in New York in person, and on many other occasions Delandmeter participated in Access's strategic, administrative or partners' meetings via telephone conference. (*Id.* ¶ 83.) Luxalpha, Groupement Financier and Access's other BLMIS-related investments were among the key items discussed and worked on at these meetings. (*Id.*)

Delandmeter was also in regular communication with Access's New York staff regarding many matters relating to Luxalpha, Groupement Financier and BLMIS. (*Id.* ¶ 84.) As just one example, as of October 2008, Access's procedures mandated that any written communications from Access's New York staff involving Luxalpha or Groupement Financier required consultation with and authorization from Delandmeter before such written communications could be released. (*Id.*)

12

Delandmeter was involved with Access's investments in BLMIS in several other ways as well. Delandmeter served as a director of AIA Inc., a New York-incorporated Access entity that owned AIA LLC. (*Id.* ¶¶ 53, 50.) He executed the board resolution directing the opening of Luxalpha's BLMIS accounts and approved the prospectus that concealed the delegation of custodial and management authority to BLMIS. (*Id.* ¶ 85.) Among many other tasks, Delandmeter also participated in the drafting of prospectuses, was responsible for meeting with and approving invoices from a New York-based insurance broker responsible for professional liability insurance for Luxalpha's board. (*Id.*) The Trustee's subsequent transfer claims against Delandmeter seek to recover the fees transferred to him for activity that was centered and focused on New York.

## CONCLUSION

For the foregoing reasons and those stated in the Trustee's Main Brief, this Court should grant the Trustee's motion for leave to amend and deny the Moving Access Defendants' motion to dismiss.

Dated: New York, New York
      June 26, 2015

Respectfully submitted,

**BAKER & HOSTETLER LLP**

By: /s/ David J. Sheehan
Baker & Hostetler LLP
45 Rockefeller Plaza
New York, NY 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Email: dsheehan@bakerlaw.com

*Attorneys for Irving H. Picard, Trustee*
*for the Substantively Consolidated SIPA*
*Liquidation of Bernard L. Madoff Investment*
*Securities LLC and Estate of Bernard L. Madoff*

13