**Baker & Hostetler LLP**

45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee*
*for the Substantively Consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities LLC*
*and the Estate of Bernard L. Madoff*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>　　　　　　Plaintiff-Applicant,<br><br>　　v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>　　　　　　Defendant. | Adv. Pro. No. 08-01789 (SMB)<br><br>SIPA Liquidation<br><br>(Substantively Consolidated)<br><br>Adv. Pro. No. 10-04285 (SMB) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>　　　　　　Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>UBS AG, UBS (LUXEMBOURG) SA, UBS FUND SERVICES (LUXEMBOURG) SA, UBS THIRD PARTY MANAGEMENT COMPANY SA, ACCESS INTERNATIONAL ADVISORS LLC, ACCESS INTERNATIONAL ADVISORS LTD., ACCESS MANAGEMENT LUXEMBOURG SA (f/k/a ACCESS INTERNATIONAL ADVISORS (LUXEMBOURG) SA) as represented by its Liquidator MAITRE FERNAND ENTRINGER, ACCESS PARTNERS SA as represented by its | **TRUSTEE'S SUPPLEMENTAL MEMORANDUM OF LAW IN OPPOSITION TO THE UBS DEFENDANTS' MOTION TO DISMISS BASED ON EXTRATERRITORIALITY AND IN FURTHER SUPPORT OF TRUSTEE'S MOTION FOR LEAVE TO AMEND COMPLAINTS** |

Liquidator MAITRE FERNAND ENTRINGER, PATRICK LITTAYE, CLAUDINE MAGON DE LA VILLEHUCHET (a/k/a CLAUDINE DE LA VILLEHUCHET) in her capacity as Executrix under the Will of THIERRY MAGON DE LA VILLEHUCHET (a/k/a RENE THIERRY DE LA VILLEHUCHET), CLAUDINE MAGON DE LA VILLEHUCHET (a/k/a CLAUDINE DE LA VILLEHUCHET) individually as the sole beneficiary under the Will of THIERRY MAGON DE LA VILLEHUCHET (a/k/a RENE THIERRY DE LA VILLEHUCHET), PIERRE DELANDMETER, THEODORE DUMBAULD, LUXALPHA SICAV as represented by its Liquidators MAITRE ALAIN RUKAVINA and PAUL LAPLUME, MAITRE ALAIN RUKAVINA AND PAUL LAPLUME, in their capacities as liquidators and representatives of LUXALPHA SICAV, GROUPEMENT FINANCIER LTD.,

Defendants.

The Trustee respectfully submits this supplemental memorandum in opposition to the motion to dismiss of Defendants (i) UBS (Luxembourg) S.A. ("UBS SA"); (ii) UBS Fund Services (Luxembourg) S.A. ("UBSFSL"); (iii) UBS Third Party Management Company S.A. ("UBSTPM"); and (iv) UBS AG (collectively, the "UBS Defendants") based on extraterritoriality and in further support of the Trustee's motion for leave to amend his complaint. As set forth below, the Trustee's proposed Second Amended Complaint ("Second Am. Compl.") pleads specific facts showing the subsequent transfers received by the UBS Defendants are predominantly domestic under the standard set forth in the Extraterritoriality Decision,[1] such that the Trustee's action does not require an extraterritorial application of SIPA or Bankruptcy Code § 550, and the UBS Defendants' motion to dismiss should be denied.

The UBS Defendants seek dismissal of the Trustee's claims to recover avoidable transfers received from Luxalpha SICAV ("Luxalpha") and Groupement Financier Ltd. ("Groupement Financier"), feeder funds the UBS Defendants created, operated, and/or serviced to invest exclusively with BLMIS. The transfers to the UBS Defendants are not "purely foreign"—and are in fact predominantly domestic—because the component events of the transactions occurred in the U.S., and the legal and economic realities of the transfers were U.S.-centered.[2] The transfers consist of the UBS Defendants' fees for their role in Madoff's scheme. Based on the Trustee's investigation to date, the UBS Defendants, combined, received approximately $97 million in fees. (Second Am. Compl. ¶ 121.) The UBS Defendants contracted with BLMIS to delegate management and custodial functions to BLMIS, and serviced

---

[1] *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 513 B.R. 222, 232-33 (S.D.N.Y. 2014) ("Extraterritoriality Decision").

[2] Simultaneously herewith, the Trustee has filed the omnibus Trustee's Memorandum of Law in Opposition to the Transferee Defendants' Motion to Dismiss Based on Extraterritoriality and in Further Support of Trustee's Motion for Leave to Amend Complaints, No. 11-02796 (SMB), (Bankr. S.D.N.Y. June 26, 2015) (the "Trustee's Main Brief"), incorporated herein by reference.

Luxalpha and Groupement Financier through contractual relationships and regular contact with

both BLMIS and New York-based Access International Advisors LLC (collectively, with its

affiliates and officers, "Access").  (*Id.* ¶¶ 92-100, 129, 146-183.)  The UBS Defendants also

routed money to Luxalpha and Groupement Financier through a bank account at UBS AG's

branch in Stamford, Connecticut.  (*Id.* ¶¶ 96-97, 173.)  Given the substantial domestic

connections and the fact that the contractual relationships at issue were centered in the U.S., the

UBS Defendants cannot now be allowed to evade the Trustee's claims on grounds of the

extraterritorial application of the Bankruptcy Code.[3]

## I.    THE UBS DEFENDANTS DIRECTED THE CREATION OF LUXALPHA AND SERVICED LUXALPHA AND GROUPEMENT FINANCIER FOR THE SOLE PURPOSE OF INVESTMENT WITH BLMIS IN NEW YORK

The UBS Defendants became involved with Luxalpha in 2004, after New York-based

Access approached UBS SA to request that it and its corporate affiliates serve as official sponsor,

custodian, manager, and administrator for Luxalpha, in order to allow Access to funnel foreign

money into the United States through BLMIS. (*Id.* ¶¶ 101-111.)  UBS SA agreed, and along with

parent UBS AG and Access, made the collective decision to establish Luxalpha.  (*Id.*)  As the

UBS Defendants knew, Luxalpha was a fund wholly invested with BLMIS in New York, with

both custodial and management authority contractually delegated to BLMIS. (*Id.* ¶¶ 146-183.)

In 2005, Defendants UBS SA and UBSFSL began servicing Groupement Financier and its

related fund, Groupement Financier Levered Ltd. ("Groupement Levered"). (*Id.* ¶¶ 92.)  They

knew that Groupement Financier was also completely invested in BLMIS, with all management

---

[3] *See Parkcentral Global Hub Ltd. v. Porsche Auto. Holdings SE*, 763 F.3d 198, 207 (2d Cir. 2014); *Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60, 69 (2d Cir. 2012) (holding *Morrison* depends on a case's specific facts and that residency or citizenship of a party does not affect where a transaction occurs); *In re Maxwell Commc'n Corp.*, 170 B.R. 800, 809 (S.D.N.Y. 1994) ("The court must look at the facts of a case to determine whether they have a center of gravity outside the United States.  Thus, for example, a transfer made in the U.S. by a foreign national to a foreign national could be considered a domestic transaction.").

and custodial authority delegated to BLMIS in New York.  (*Id.*)  The UBS Defendants' activity

with regard to Luxalpha and Groupement Financier was entirely focused on directing

investments to BLMIS in New York and profiting from these investments.

Luxalpha was incorporated as an investment fund in Luxembourg in 2004 and

Groupement Financier was incorporated as an investment fund in the British Virgin Islands in

2003. (*Id.* ¶¶ 55-56, 61, 87, 103.)  However, neither Luxalpha nor Groupement Financier had any

employees or independent office space in those off-shore jurisdictions.  (*Id.* ¶ 276)  Both were

created for the sole purpose of investment with BLMIS in New York, and invested 100% of their

assets with BLMIS in New York.  (*Id.* ¶¶ 88, 177.)  Luxalpha and Groupement Financier held

BLMIS customer account numbers 1FR108 and 1FR096, respectively.  (*Id.* ¶¶ 280.)

## II.    THE UBS DEFENDANTS RECEIVED TRANSFERS IN THE FORM OF FEES BASED ON ACTIVITY THAT WAS CENTERED IN THE UNITED STATES

As the service providers of Luxalpha and Groupement Financier, the UBS Defendants

intended to and did transact their Madoff-related business in the U.S.  The UBS Defendants

delegated their duties to BLMIS in New York, communicated directly and frequently with

BLMIS in New York, and directed the transfer of hundreds of millions of dollars between New

York and Luxalpha and Groupement Financier.  The Trustee has alleged specific facts

demonstrating that the subsequent transfers the UBS Defendants received for these activities, in

the form of custodial fees, management fees, administrative fees and dividends, are not "purely

foreign." As such, the Trustee's action cannot be dismissed.

### A.    UBS AG Transacted Business in the United States and Received Transfers from UBS SA and UBSFSL Based on Activity Centered in New York

UBS AG received approximately $4.2 million in recoverable subsequent transfers from

2004 through 2008, in the form of dividends paid by UBS SA and UBSFSL, which were

comprised, in part, of fee amounts received from Luxalpha, Groupement Financier, and

Groupement Levered. (*Id*. ¶ 289d.)  UBS AG is the parent company of the global UBS bank, and

the ultimate owner of subsidiaries UBS SA, UBSTPM, and UBSFSL. [4]   (*Id*. ¶¶ 42-45.)

Although headquartered in Switzerland, it maintains offices and conducts daily business

activities in New York City, Stamford, Connecticut and other locations in the United States.  (*Id*.

¶ 42.)

UBS AG was not merely the corporate parent of the particular UBS Defendants who

served as the official manager, custodian and administrator of Luxalpha, and the prime bank and

administrator of Groupement Financier.  UBS AG also served as a co-sponsor of Luxalpha

during the life of the fund's existence. (*Id*. ¶ 153.)  UBS AG's role as co-sponsor was essential

for the Luxembourg regulator's approval of Luxalpha, as that representation led the Luxembourg

regulator to believe that one of the world's biggest financial institutions was safeguarding the

fund and would ultimately be responsible for losses.  (*Id.*)

UBS AG also approved the fund structure that the UBS Defendants established for

Luxalpha—one that delegated custodial and management authority to BLMIS in New York.

UBS AG granted an exception to its usual policy prohibiting such arrangements, and enabled the

contractual relationships giving rise to the fees at issue in this action.  (*Id*. ¶¶ 156-157.)  Indeed,

the UBS Defendants' illusory role with respect to Luxalpha was widely acknowledged and freely

discussed among Access's insiders who commented, "Luxalpha UCITS is a strange entity; UBS

is window dressing or a front." (*Id*. ¶ 178.)

---

[4] UBS SA paid dividends to corporate parent UBS AG in 2004, 2006, 2007, and 2008; and UBSFSL paid dividends
to corporate parent UBS AG in each year from 2005 to 2008 – all of which were based upon revenues received by
UBS SA and UBSFSL.  (Second Am. Compl. ¶ 289d.)

UBS AG was represented as an integral part of Luxalpha's operations with respect to the

fund's purported investments in U.S. securities.  In connection with UBS AG's role as a sponsor

and promoter of Luxalpha, UBS SA represented to Luxalpha's auditors that UBS AG was

approving BLMIS's option counterparties.  (*Id*. ¶ 244.)  Additionally, UBS AG provided the

services of its branch in Stamford, Connecticut to transfer money between Luxalpha's bank

account at UBS SA and BLMIS, and to process U.S. dollar subscriptions for Luxalpha,

Groupement Financier, and Groupement Levered. (*Id*. ¶¶ 96-97, 173.)  UBS AG served as co-

sponsor of Luxalpha and provided the use of its banking facilities in Stamford, Connecticut to

support its subsidiaries' operation of, and receipt of fees from, Luxalpha and Groupement

Financier, through which UBS AG received considerable profits in the form of dividends.

### B.  UBS SA Received Fees Based on Activity That Was Centered in the United States

#### i.  UBS SA Received Fees for Luxalpha Custodial Duties That It Delegated to BLMIS in New York

UBS SA served nominally as Luxalpha's official custodian for the life of the fund,

making representations about its official functions in each of Luxalpha's prospectuses and to the

financial regulator in Luxembourg. (*Id*. ¶¶ 162-164.)  UBS SA led investors to believe that a

large, international bank was safekeeping the fund's assets.  However, UBS SA performed no

custodial work in Luxembourg for Luxalpha because it directly contracted with BLMIS to

delegate all custodial authority for the fund to BLMIS in New York.  Contemporaneous with the

formation of Luxalpha, UBS SA entered into a Sub-Custodian Agreement with BLMIS, dated

February 5, 2004.  (*Id*.)  This Sub-Custodian Agreement delegated custodial authority to BLMIS,

and noted that the "US assets of the Fund" would be invested with BLMIS.  (*Id*.)  BLMIS

received no compensation for serving as the *de facto* manager and sub-custodian.  (*Id.*)

UBS SA regularly communicated with BLMIS, directing the transfer of millions of dollars of Luxalpha's assets into and out of BLMIS in New York.  UBS SA communicated with BLMIS regarding "mismatched" trade tickets, tax issues, and missing accounting statements (*Id.* ¶ 170.)  UBS SA was in regular telephone communication with BLMIS, and received Luxalpha's account statements and trade confirmations from BLMIS by mail and by fax on a regular basis. (*Id.*)  These regular and frequent communications, which gave rise to the subsequent transfers at issue, are specific evidence of the domestic nature of UBS SA's activity.

UBS SA also used a U.S. bank account to process Luxalpha's subscriptions and redemptions.  (*Id.* ¶ 173.)   In furtherance of its custodial function (and the delegation of this function to BLMIS), UBS SA regularly sent Luxalpha investor money to and from BLMIS's bank account at JPMorgan in New York.  (*Id.*)  Luxalpha's U.S. dollar investors wired money into UBS SA's account at the Stamford, Connecticut branch of UBS AG, which money was then forwarded to UBS SA.  (*Id.*) These subscriptions were pooled by UBS SA and then sent to BLMIS's bank account at JPMorgan in New York – again passing through UBS AG in Stamford.  (*Id.*)  When Luxalpha requested money from BLMIS, the money flowed from JPMorgan in New York to UBS SA's account at UBS AG's Stamford branch and then to Luxalpha's bank account at UBS SA.  (*Id.*)

       ii.   <u>UBS SA Received Fees for Luxalpha Managerial Duties That It Delegated to BLMIS in New York</u>

Defendant UBS SA served as the official manager of Luxalpha from February 2004 to August 2006.  (*Id.* ¶ 158.)  It represented itself as manager in Luxalpha's prospectuses, and made similar claims to the financial regulator in Luxembourg.  (*Id.* ¶¶ 161, 164.)  In March 2004, employees of Defendant UBS SA executed Luxalpha's BLMIS account opening documents, consisting of a Customer Agreement, Trading Authorization, and Option Agreement, and

transmitted them to BLMIS. (*Id.* ¶¶ 159-160.)  Although UBS SA officially served as Luxalpha's

manager, the Trading Authorization provided BLMIS with complete authority to trade the assets

of Luxalpha, which the agreement stated would be invested in U.S. equities listed on the S&P

100.  (*Id.* ¶ 159.)  The Customer Agreement also contained a New York choice of law clause.

(*Id.* ¶ 160.)[5]

UBS SA not only contracted with BLMIS itself, but also with New York-based

Defendant Access International Advisors LLC ("AIA LLC") to provide UBS SA with "portfolio

advisory services" in connection with Luxalpha.  (*Id.* ¶ 129.)  AIA LLC's purported advisory

services included advising UBS SA on "the manner in which the assets of the Fund might be

traded, cleared and invested . . ." – that is, with BLMIS in New York.  (*Id.*)  Moreover, the

contract between UBS SA and AIA LLC contains a New York choice of law clause and an

arbitration provision that requires any dispute to be arbitrated in New York City.  (*Id.*)

Luxembourg-based UBS SA received approximately $39.4 million from Luxalpha for

custodial and managerial services that it sub-contracted to BLMIS for performance in New York.

(*Id.* ¶ 289a.)  In furtherance of this delegation, UBS SA communicated frequently with New

York, transferred money to and from New York, and utilized the services of a second New York-

based company, AIA LLC.  The Trustee's subsequent transfer claims against UBS SA seek to

recover the custodial and management fees it received.  The component events of these

transactions involve domestic activity.  UBS SA had every reason to believe that U.S. law would

---

[5] The Customer Agreement also provided that any controversies between BLMIS and Luxalpha must be determined by arbitration under the Federal Arbitration Act, to be conducted in one of the following forums, all located in the U.S.: "before the American Arbitration Association, or before the New York Stock Exchange, Inc., or an arbitration facility provided by any other exchange of which the broker is a member, or the National Association of Securities Dealers, Inc…" The Customer Agreement further provided that all transactions in the customers' account must be subject to the provisions of the Securities Exchange Act of 1934, the Commodities Exchange Act, the rules and regulations of the SEC, the Board of Governors of the Federal Reserve System and the Commodities Futures Trading Commission.  (*Id.* ¶ 160.)

apply when it contracted with two separate New York businesses to procure services that UBS

SA was itself receiving fees for providing.

        iii.   <u>UBS SA Received Fees for Custodial Duties for Groupement and Groupement</u>
             <u>Levered That It Delegated to BLMIS in New York</u>

UBS SA received approximately $1 million in fees for serving as Groupement

Financier's "prime bank." (*Id*. ¶ 289a.)  UBS SA served this custodial function in name only.

(*Id*. ¶ 92.)  Madoff held Groupement Financier's invested assets, and all custodial authority for

these assets rested with BLMIS. (*Id*.)  UBS SA thus earned "prime bank" fees despite providing

no meaningful banking services, as all invested assets were held in New York.

UBS SA and UBSFSL's operating memorandum for Groupement Financier and

Groupement Levered notes that "Groupement . . . will invest the subscription monies with

Bernard Madoff," as UBS SA would transfer the funds to Groupement Financier's account at the

Bank of Bermuda, which then forwarded the funds on to BLMIS's account at JPMorgan in New

York.  (*Id*. ¶ 96.)  The Groupement Financier and Groupement Levered subscription forms also

note that new subscription money should be sent to UBS SA (with U.S. dollar subscriptions

again processed through UBS SA's bank account at UBS AG in Stamford, Connecticut). (*Id*.)

Thus, UBS's conduct was purposefully directed towards the United States.

UBS SA also additionally received approximately $500,000 for serving as the official

custodian for Groupement Levered (*Id*. ¶ 289a.)   Groupement Levered was an investment fund

that invested the entirety of its assets into Groupement Financier, and thus, into BLMIS. (*Id*. ¶

88.)  As a result, Groupement Levered's assets were held on a day-to-day basis not by official

custodian UBS SA, but by BLMIS in New York.

UBS SA earned prime bank and custodial fees based upon Groupement Financier's and

Groupement Levered's total net assets, despite the fact that it never maintained custody of either

Fund's net assets and knew that all custodial services were effectively being provided in New York.

### C.  **UBSTPM Received Fees for Activity That Was Centered in the United States**

In August 2006, Defendant UBSTPM became Luxalpha's official manager, continuing UBS SA's practice of leaving all management of Luxalpha to Madoff, while collecting fees based on the investment activities (i.e., trading of U.S. securities) purportedly executed by BLMIS in New York. (*Id.* ¶¶ 174-175.)  Under its contract with Luxalpha, UBSTPM was officially responsible for Luxalpha's investment management decisions.  (*Id.*)  However, all actual investment management authority over Luxalpha had previously been delegated to BLMIS for performance in New York, under the Trading Authorization executed by UBS SA in 2004.  (*Id* ¶¶ 159, 174-175.)

UBSTPM assumed the official managerial role only to nominally comply with regulations that prohibited the same entity from serving as both custodian and manager.  The UBS Defendants created a façade to make it appear that Luxalpha's custodial and managerial duties had been divided separately between two Luxembourg companies, UBS SA and UBSTPM, when in fact both roles had rested solely with BLMIS in New York from the first day of Luxalpha's operation.  (*Id.* ¶ 175.)

UBSTPM received approximately $53.3 million in fees from Luxalpha for serving as Luxalpha's official manager from August 2006 to December 2008.  (*Id.* ¶ 289c.)  The subsequent transfers the Trustee seeks to recover from UBSTPM are for management fees paid to it for work performed in New York.

### D.  **UBSFSL Received Fees for Activity That Was Centered in the United States**

UBSFSL received approximately $2.5 million in fees from Luxalpha for serving as the official administrator of Luxalpha from February 2004 to December 2008.  (*Id*. ¶ 289b.)  UBSFSL also received at least $497,000 from Groupement Financier and Groupement Levered for serving as the official administrator of these funds from February 2005 to December 2008.  (*Id*.)

As the Luxembourg-based administrator of Luxalpha and Groupement Financier, UBSFSL was responsible for performing these Funds' accounting and calculating their net asset value ("NAV").  However, because Luxalpha and Groupement Financier were entirely invested with BLMIS, and performed no securities trading of their own, UBSFSL relied entirely on the accounting performed by BLMIS and listed on BLMIS's account statements and trading confirmations to determine Luxalpha's and Groupement Financier's NAV.  (*Id*. ¶¶ 171-173.)  UBSFSL performed no independent verification of Madoff's purported trades, or the prices reported by Madoff. (*Id*.)  UBSFSL only created "mirror" accounting records based on the trade confirmations and account statements that it received from BLMIS.  (*Id*.)

UBSFSL was in regular communication with Access's New York office regarding its work for Luxalpha.  UBSFSL corresponded with Access's New York office regarding Access's SEC registration, Luxalpha investor subscriptions and redemptions, and payment of Access's portfolio advisory fees.  (*Id.*  ¶ 173.)  UBSFSL also was in communication with BLMIS directly.  (*Id*.)  And UBSFSL processed bills for Luxalpha's professional liability insurance, from a New York-based insurance broker.  (*Id.*)  Moreover, UBSFSL directed subscriptions for Luxalpha, instructing clients to route U.S. dollar subscriptions through UBS SA's bank account at UBS AG in Stamford, Connecticut. (*Id.*)

With regard to Groupement Financier, UBSFSL frequently corresponded with Access's New York office regarding the calculation of the NAV, the set-up of UBSFSL's administration services to Groupement Financier, and Access's indemnity of the UBS Defendants. (*Id*. ¶ 95.) UBSFSL processed subscriptions for Groupement Financier, instructing clients to route U.S. dollar subscriptions through a bank account at UBS AG in Stamford, Connecticut. (*Id*. ¶ 96.) The subscription forms for Groupement Financier and Groupement Levered made specific reference to U.S. anti-money laundering laws and the U.S. Patriot Act. (*Id*.)

UBSFSL was also in contact with other New York business associates aside from Access and BLMIS in administering Groupement Financier and Groupement Levered.  It received bills for Groupement Financier's professional liability insurance from a New York-based insurance broker.  (*Id*. ¶ 95.)  UBSFSL also communicated with CDC Financial Products, the New York-based provider of leverage to Groupement Levered, regarding Groupement Financier and Groupement Levered valuations. (*Id*.)

## **<u>CONCLUSION</u>**

For the foregoing reasons and those stated in the Trustee's Main Brief, this Court should grant the Trustee's motion for leave to amend and deny the UBS Defendants' motion to dismiss.

Dated: New York, New York
June 26, 2015

Respectfully submitted,

**BAKER & HOSTETLER LLP**

By:  /s/ David J. Sheehan
Baker & Hostetler LLP
45 Rockefeller Plaza
New York, NY 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Email:  dsheehan@bakerlaw.com

*Attorneys for Irving H. Picard, Trustee*
*for the Substantively Consolidated SIPA*
*Liquidation of Bernard L. Madoff Investment*
*Securities LLC and Estate of Bernard L. Madoff*