**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Regina L. Griffin
Judith A. Selby

*Attorneys for Irving H. Picard, Trustee*
*for the substantively consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities LLC*
*and the estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (SMB) |
| Plaintiff-Applicant, | SIPA Liquidation |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | Adv. Pro. No. 10-05354 (SMB) |
| Plaintiff, | |
| v. | |
| ABN AMRO BANK N.V. (presently known as THE ROYAL BANK OF SCOTLAND, N.V.), | |
| Defendant. | |

**THE TRUSTEE'S SUPPLEMENTAL MEMORANDUM OF LAW IN**
**OPPOSITION TO DEFENDANT'S MOTION TO DISMISS BASED**
**ON EXTRATERRITORIALITY AND IN FURTHER SUPPORT**
**OF TRUSTEE'S MOTION FOR LEAVE TO AMEND COMPLAINTS**

The Trustee respectfully submits this supplemental memorandum to the Trustee's Main Brief in seeking the recovery of approximately $237.9 million of subsequent transfers of BLMIS customer property made to Defendant ABN AMRO Bank N.V. (presently known as The Royal Bank of Scotland, N.V.) ("ABN/RBS"). As set forth below, the allegations contained in the Proffered Allegations pertaining to the Extraterritoriality Issue ("Proffer") plead specific facts demonstrating the component events of the transactions surrounding the subsequent transfers made to ABN/RBS are not "purely foreign" under the standards set forth in the District Court's Extraterritoriality Decision.[1] ABN/RBS's motion to dismiss must be denied, and the Trustee's motion to amend his complaint should be granted.

At issue are subsequent transfers of BLMIS customer property totaling over $140 million that two funds operated and controlled by Tremont Group Holdings and its management arm, Tremont Partners, Inc. (collectively "Tremont"), transferred to ABN/RBS in connection with transactions executed in 2006 (the "2006 Transactions"). In the 2006 Transactions, ABN/RBS: (1) entered into a total return swap with Rye Broad Select Market XL Portfolio ("Rye Portfolio Limited XL"), a Tremont Leveraged Fund that transferred to ABN/RBS approximately $74.6 million of BLMIS customer property representing collateral payments, and (2) invested in Rye Select Broad Market Portfolio Limited ("Rye Portfolio Limited," collectively the "Rye Portfolio Funds"), a Tremont BLMIS Feeder Fund that transferred to ABN/RBS approximately $74.4 million of BLMIS customer property representing redemption payments. Proffer ¶¶ 20-22.

ABN/RBS seeks to label the transfers received in connection with the 2006 Transactions as foreign based solely on ABN/RBS and the Rye Portfolio Funds' places of registration. This simplistic analysis is flawed and contrary to the *Maxwell* "component events" analysis[2]

---

[1] *Securities Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 513 B.R. 222 (S.D.N.Y. 2014).
[2] *In re Maxwell Communication Corp.*, 186 B.R. 807, 816-17 (S.D.N.Y. 1995).

1

embraced by the District Court in the Extraterritoriality Decision, and contrary to Second Circuit precedent calling for courts to consider the economic and legal reality of a transaction.[3]

ABN/RBS ignores a multitude of specific facts that show the transfers and component events of the transactions are not purely foreign, but rather, are predominantly domestic: (1) ABN/RBS affirmatively placed BLMIS at the center of the 2006 Transactions; (2) ABN/RBS personnel in New York were intimately involved in the negotiations and due diligence in connection with the 2006 Transactions; (3) ABN/RBS received all the subsequent transfers at its bank account in New York; (4) the terms and negotiations of the 2006 Transactions were substantially identical to the 2007 Transactions with other Tremont Funds, which ABN/RBS concedes are domestic; (5) the Rye Portfolio Funds are initial transferees with a principal place of business in Tremont's headquarters in Rye, New York.  These Funds' presence in the Cayman Islands existed on paper only, and their actual center of direction, control, and coordination was in New York, from where Tremont operated and managed these Funds.

I.     **THE TRANSFERS AND COMPONENT EVENTS OF THE 2006 TRANSACTIONS ARE PREDOMINANTLY DOMESTIC**

   A.     **ABN/RBS Affirmatively Placed BLMIS, a U.S. Regulated Broker Dealer, at the Core of the 2006 Transactions**

ABN/RBS's entire purpose for dealing with Tremont was to invest with BLMIS.  The 2006 Transactions were structured so that ABN/RBS could derive revenue from Tremont in New York and from BLMIS in New York.  Proffer ¶¶ 20-22.  ABN/RBS knew that BLMIS purportedly invested Rye Portfolio Limited's assets in U.S. securities and treasurys.  *Id*. at ¶¶ 26-28, 54-55.  ABN/RBS referred to the 2006 Transactions as the "Madoff transaction," and it made clear during its negotiations with Tremont that BLMIS's role as account manager was "central to

---

[3] *See Parkcentral Global Hub Ltd. v. Porsche Auto. Holdings SE*, 763 F.3d 198, 215 (2014) (cautioning lower courts about the problems of narrowly "treating the location of the transaction as the definitive factor in the extraterritoriality inquiry").

the whole transaction." Proffer ¶¶ 27, 35. ABN/RBS could terminate the 2006 Transactions if BLMIS was not Rye Portfolio Limited's account manager. *Id*. at ¶¶ 29-33.

The 2006 Transactions contained additional terms further demonstrating that the component events surrounding ABN/RBS's receipt of subsequent transfers are not purely foreign but are in fact domestic: (1) as account manager, BLMIS had to invest Rye Portfolio Limited's assets in U.S. securities using the split strike conversion strategy; (2) all payments to ABN/RBS and Rye Portfolio Limited XL had to be directed to their respective New York bank accounts; (3) subscription payments for investment in Rye Portfolio Limited were sent to its New York bank for deposit in the Fund's account there; (4) any communications to Rye Portfolio Limited XL were to be directed to Tremont's headquarters in New York; and (5) a New York-based Tremont representative signed the 2006 Swap Confirmation for Rye Portfolio Limited XL. *Id*. at ¶¶ 29-33, 39-41, 65, 66, 70. Finally, ABN/RBS knew that BLMIS was subject to U.S. laws, and in 2007 it negotiated an amendment that allowed to it to quickly redeem its investment if Madoff were investigated for violating U.S. securities laws and regulations. *Id*. at ¶¶ 34-38.

In 2007, ABN/RBS entered into transactions with two other Tremont Funds registered in Delaware (the "2007 Transactions"). *Id*. at ¶¶ 20, 43-45. ABN/RBS did not move to dismiss the counts in the Amended Complaint related to the 2007 Transactions, even though the 2006 and 2007 Transactions are virtually identical with regard to issues affecting extraterritoriality, effectively conceding that the 2007 Transactions are domestic. *Id*. at ¶¶ 42-49. Any distinction ABN/RBS attempts to create concerning the domesticity of the 2006 and 2007 Transactions is purely artificial.

Recognizing that BLMIS was at the core of any transaction with a BLMIS Feeder Fund, ABN/RBS set an internal limit on BLMIS-related transactions, designated as "madoff capacity."

3

Proffer ¶ 64. ABN/RBS explored additional BLMIS investments through a number of other BLMIS Feeder Funds. *Id*. at ¶¶ 60-62. ABN/RBS's transactions with Tremont were just one part of its overall desire for "undertaking Madoff risk." *Id*. at ¶ 63.

### B.   ABN/RBS's New York Personnel Were Intimately Involved in Conducting Negotiations and Due Diligence in Connection with the 2006 Transactions

ABN/RBS received the subsequent transfers at issue because of substantial conduct occurring in the U.S. ABN/RBS's New York-based subsidiary, ABN Amro Incorporated ("ABNI"), led the negotiations of the 2006 Transactions. *Id*. at ¶¶ 50-52. Tremont identified ABNI's David Schwartz ("Schwartz"), the executive director of ABNI's structured products division in New York, as its "main contact" with ABN/RBS. *Id*. at ¶ 51. Schwartz met and regularly communicated with Tremont in New York concerning the 2006 Transactions, including its significant amendment in 2007. *Id*. at ¶¶ 35, 51, 52, 57. ABN/RBS's Head of Hedge Fund Credit Risk was based in the U.S. and tasked with the credit review of the funds connected with the 2006 Transactions, and remained so through 2008.[4] *Id*. at ¶ 59.

### C.   ABN/RBS Received the Transfers from the Tremont Funds, which had their Principal Place of Business in New York

All of Tremont's Rye Funds, whether registered in the Cayman Islands or in the U.S., had their principal place of business in New York; none of the Rye Portfolio Funds had any real offices or operations in the Cayman Islands. *Id*. at ¶¶ 71-96. ABN/RBS seeks to differentiate the 2006 Transactions from the 2007 Transactions based solely on where the funds were registered, but it cites no legal authority that would make the place of registration alone

---

[4] ABN/RBS previously argued that Bankruptcy Code section 546(e)'s safe harbor should shield their Transfers from suit precisely because of their connection to the U.S. securities markets into which BLMIS purported to invest. This argument is inconsistent with ABN/RBS's current assertion that their transactions lack sufficient domestic connections for purposes of extraterritoriality. *See* Brief of *Amici Curiae* Financial Institution Defendants in Support of Appellees and Affirmance of the District Court, *Picard v. Ida Fishman Revocable Trusts*, No. 12-2557-bk (2d Cir. filed Oct. 18, 2013). ABN/RBS should not be allowed to have it both ways, taking advantage of U.S. law when it suits it and running from it when it does not.

dispositive. As discussed in the Trustee's Main Brief, the Court's analysis must consider all component events of a transaction. In reality, Tremont in New York handled the management, administration, marketing, and due diligence for the Rye Portfolio Funds. Proffer ¶¶ 71-75, 83-96. Tremont also received investors' redemption requests, handled wire transfers into BLMIS, received and signed BLMIS trade tickets and account statements, and served as signatories on their BLMIS accounts. *Id*. at ¶¶ 76-79, 89-96.

As exempted companies under the Cayman Islands Companies Law, the Rye Portfolio Funds were barred from soliciting investors in the Cayman Islands,[5] were prohibited from accepting investments from members of the public in the Cayman Islands, and paid no taxes in the Cayman Islands. *Id*. at ¶¶ 85, 86. Because the Rye Portfolio Funds were operated, controlled and managed by Tremont in New York, they were not engaged in "purely foreign" activity and any transfers from those funds are not purely foreign, and thus, not barred.

### D. All of the Transfers at Issue Were Sent and Received in New York

ABN/RBS received the transfers at issue at its bank account in New York from Tremont's bank accounts in New York. *Id*. at ¶¶ 65-68. The Rye Portfolio Funds used their accounts at the Bank of New York located in New York City to send collateral and redemption payments to ABN/RBS. *Id*. at ¶¶ 67, 68. ABN/RBS received all the transfers at its bank account in New York, as was required by the terms of the 2006 Transactions. *Id*. at ¶¶ 39, 65, 66.

Dated: June 26, 2015  
New York, New York  

*/s/ Judith A. Selby*  
Baker & Hostetler LLP  
45 Rockefeller Plaza  
New York, New York 10111  
Telephone: (212) 589-4200/Facsimile: (212) 589-4201  
David J. Sheehan, Regina L. Griffin, Judith A. Selby  
*Attorneys for Irving H. Picard, Esq., Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Estate of Bernard L. Madoff*

---

[5] *See* Section 174 of the Companies Laws (2013 Revision).