**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee*
*for the substantively consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities LLC*
*and the estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>　　　　　Plaintiff-Applicant,<br><br>　　　　　v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>　　　　　Defendant. | Adv. Pro. No. 08-01789 (SMB)<br><br>SIPA Liquidation<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>　　　　　Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>　　　　　Plaintiff,<br><br>　　　　　v.<br><br>PARSON FINANCE PANAMA S.A.,<br><br>　　　　　Defendant. | Adv. Pro. No. 11-02542 (SMB) |

**THE TRUSTEE'S SUPPLEMENTAL MEMORANDUM OF LAW IN OPPOSITION TO PARSON FINANCE PANAMA S.A.'S MOTION TO DISMISS BASED ON EXTRATERRITORIALITY AND IN FURTHER SUPPORT OF TRUSTEE'S MOTION FOR LEAVE TO AMEND THE <u>COMPLAINT</u>**

The Trustee respectfully submits this supplemental memorandum of law in opposition to defendant Parson Finance Panama S.A.'s ("Parson") motion to dismiss based on extraterritoriality and in further support of his motion for leave to amend the complaint. The Trustee's Proffered Allegations set forth specific facts demonstrating that the transfer to Parson is predominantly domestic and that the Trustee's action does not require an extraterritorial application of SIPA or 11 U.S.C. § 550. Accordingly, Parson's motion to dismiss must be denied, and the Trustee should be permitted to amend the complaint.

## BACKGROUND AND LEGAL STANDARD

The District Court returned this action to this Court to determine whether the Trustee's claims against Parson seek the recovery of "purely foreign" transfers, requiring an extraterritorial application of Bankruptcy Code § 550.[1] Under the Extraterritoriality Decision, the Trustee need only "put forth specific facts suggesting a domestic transfer" to avoid dismissal.[2] In making this determination, there is no bright-line test to determine whether a transaction is extraterritorial,[3] and courts must review "the location of the transfers as well as the component events of those transactions."[4] This is a fact-based inquiry in which all reasonable inferences are to be drawn in the Trustee's favor.[5]

The Proffer specifically alleges that Parson received $11,089,081 from Fairfield Sentry Limited ("Fairfield Sentry"). (Proffer at ¶ 1.) Fairfield Sentry invested virtually all of its assets

---

[1] *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 513 B.R. 222, 232–33 (S.D.N.Y. 2014) (the "Extraterritoriality Decision").

[2] *Id.* at 232, n.4.

[3] *Parkcentral Global Hub Ltd. v. Porsche Automobil Holdings SE*, 763 F.3d 198, 216-17 (2d Cir. 2014) (rejecting single-factor, bright-line rule as appropriate analysis to ascertain whether foreign or domestic elements "predominate").

[4] Extraterritoriality Decision at 227 (quoting *Maxwell Commc'n Corp. v. Societe General PLC (In re Maxwell Commc'n Corp.)*, 186 B.R. 807, 817 (S.D.N.Y. 1995)).

[5] *See, e.g., Anwar v. Fairfield Greenwich Ltd.*, 728 F. Supp. 2d 372, 403–05 (S.D.N.Y. 2010).

with BLMIS in New York. (*Id.* at ¶ 2.) Fairfield Greenwich Group ("FGG") created, operated, controlled and marketed Fairfield Sentry from its New York headquarters. (*Id.* at ¶ 3.) Yet Parson argues that its redemption from Fairfield Sentry is "purely foreign" simply because Parson and Fairfield Sentry are organized under foreign law. Parson is wrong. Its superficial analysis ignores the transactions' significant domestic components, including, among other things, that Parson invested in Fairfield Sentry to profit from BLMIS, utilized a Boston-based bank account to transfer and receive funds, and that Fairfield Sentry's principal place of business was in New York. As set forth below, these component events demonstrate that the Trustee's recovery claim does not require an extraterritorial application of SIPA or the Bankruptcy Code, and that Parson's motion must be denied.

### THE TRANSFER AND COMPONENT EVENTS OF THE TRANSACTIONS ARE DOMESTIC

The subsequent transfer from Fairfield Sentry was not "purely foreign," but was predominantly domestic for the following reasons: (1) Parson knowingly invested in Fairfield Sentry to profit from BLMIS in New York, (2) Parson sent and received the transfers from Fairfield Sentry through New York and Boston bank accounts, (3) Fairfield Sentry's subscription agreements required shareholders, such as Parson, to be bound by New York law and to submit to New York jurisdiction, (4) in connection with the subject transactions, Parson dealt with FGG, a New York *de facto* partnership, and (5) Fairfield Sentry's principal place of business was in New York.

First, Parson invested in Fairfield Sentry to profit from BLMIS in New York. Parson knew from Fairfield Sentry's private placement memorandum ("PPM") that Fairfield Sentry invested at least 95% of its assets with BLMIS, which controlled all aspects of these investments in New York. (*Id.* at ¶¶ 2, 5, 28.) Parson knew: (i) Fairfield Sentry delegated all investment

2

decisions to BLMIS as its investment advisor; (ii) BLMIS maintained custody of the assets in New York; and (iii) BLMIS purported to execute trades in U.S. securities on behalf of Fairfield Sentry. (*Id.* at ¶¶ 4-6, 28.) Parson also knew BLMIS was "essential" to Fairfield Sentry's profitability and, in turn, Parson's profitability. (*Id.* at ¶ 28.)

Parson invested in Fairfield Sentry *because* its money would ultimately be placed with BLMIS, and in turn, Madoff would invest its assets in U.S. securities traded on U.S. markets. But for BLMIS and its U.S.-based investment strategy, Parson would not have invested in Fairfield Sentry. As Judge Lifland concluded in a similar matter, "[t]he movement of money to and from BLMIS in the United States … was not fortitious or incidental; instead, it was 'the ultimate objective' and the '*raison d'etre*' of the Agreement between" Parson and Fairfield Sentry.[6]

Second, Parson wired its funds to Fairfield Sentry through a correspondent bank account at HSBC Bank USA, N.A., which funds were ultimately deposited in BLMIS's JPMorgan Chase Bank N.A. account in New York. (*Id.* at ¶ 11.) Parson then used its own bank account at State Street Bank in Boston, Massachusetts to receive the redemption payment from Fairfield Sentry. (*Id.* at ¶ 12.)

Third, to invest in Fairfield Sentry, Parson executed a subscription agreement that was domestic in nature. Under Fairfield Sentry's subscription agreements, shareholders, such as Parson, (i) submitted to New York courts' jurisdiction, (ii) agreed that New York law would govern the agreements, (iii) agreed to wire Fairfield Sentry subscription payments to a New York correspondent bank account, and (iv) agreed to BLMIS in New York controlling all aspects of

---

[6] *Picard v. Bureau of Labor Ins.*, 480 B.R. 501, 523 (Bankr. S.D.N.Y. 2012).

3

the investments, as described in the PPM. (*Id*. at ¶¶ 4, 7-9, 28.) Under the subscription agreement, Parson had every expectation that New York law apply to its investments.

Fourth, in connection with its Fairfield Sentry investment, Parson dealt with FGG. Parson relied on its agent Anova Holdings AG ("Anova") to conduct due diligence on Fairfield Sentry. (*Id*. at ¶¶ 13-14.) FGG employee Ron Thomann was Parson's contact at FGG, and Thomann regularly communicated via email and telephone with Anova regarding Parson's investments. (*Id*.) On a regular basis between 2003 and 2005, Anova representatives met with FGG in New York to conduct due diligence on Parson's behalf. (*Id*. at ¶ 14.)

Fifth, Fairfield Sentry was principally operated in New York by FGG. In 1988, U.S. citizens and residents, Walter Noel and Jeffrey Tucker, founded FGG. (*Id*. at ¶ 16.) Noel and Tucker incorporated Fairfield International Managers, Inc. ("Fairfield International Managers") under Delaware law as part of FGG. (*Id*. at ¶ 18, 22, 29.) Through Fairfield International Managers, Noel and Tucker organized the largest BLMIS feeder fund, Fairfield Sentry. (*Id*.)

Noel and Tucker formally organized Fairfield Sentry as an international business company under BVI law. (*Id*. at ¶ 19.) As such, BVI law restricted Fairfield Sentry from doing business in the BVI except with BVI international business companies. (*Id*.) Fairfield Sentry was a shell corporation present in the BVI solely on paper. (*Id*. at 20.) Its BVI registered address was a post office box care of a local trust company owned and operated by a local law firm. (*Id*.)

From its inception until its liquidation in 2009, Fairfield Sentry had no employees and no offices. (*Id*.) At all relevant times, Fairfield Sentry was operated almost entirely by FGG's New York City headquarters personnel who maintained final control of Fairfield Sentry's bank accounts and relationships with Fairfield Sentry's back office service providers. (*Id*. at ¶¶ 26-27.)

4

Beginning in 1990, Tucker opened Fairfield Sentry's BLMIS accounts. (*Id*. at ¶ 22.) In the account opening documents, Tucker identified Fairfield Sentry's mailing address as Fairfield International Managers' office in Greenwich, Connecticut and directed BLMIS to send Fairfield Sentry's monthly account statements, trade confirmations, and correspondence to the same office. (*Id*.) In January 1998, FGG requested BLMIS to send all Fairfield Sentry account information to FGG's New York City headquarters. (*Id*.)

From Fairfield Sentry's inception, FGG personnel at its New York City headquarters controlled the sales and subscriptions of the fund's shares. (*Id*. at 26.) From at least January 1, 2002, all Fairfield Sentry subscription agreements contained New York choice of law provisions, and provided for venue and jurisdiction for any disputes in New York. (*Id*. at ¶ 27.)

At all relevant times, FGG New York City headquarters personnel monitored Fairfield Sentry's investments; managed the relationships with BLMIS; directed investments into and out of BLMIS as well as into and out of Fairfield Sentry; marketed Fairfield Sentry; approved all subscriptions for Fairfield Sentry shares; maintained all of Fairfield Sentry's books and records; and made all strategic and operational decisions regarding Fairfield Sentry. (*Id*. at ¶¶ 26-27.) Together, these facts further evince the parties' long-standing relationship was centered in the United States.

Taken together, these "component events" demonstrate the transfers are domestic and are not "purely foreign."

## **CONCLUSION**

For the foregoing reasons and those stated in the Trustee's main brief, this Court should grant the Trustee's motion to amend the Complaint and deny Parson's motion to dismiss.

5

Dated: June 26, 2015  /s/ Thomas L. Long
      New York, New York  **Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Thomas L. Long
Torello H. Calvani

*Attorneys for Irving H. Picard, Trustee*
*for the Substantively Consolidated SIPA*
*Liquidation of Bernard L. Madoff Investment*
*Securities LLC and the estate of Bernard L.*
*Madoff*