**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee*
*for the Substantively Consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities LLC*
*and the Estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>Plaintiff-Applicant,<br><br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES, LLC,<br><br>Defendant. | Adv. Pro. No. 08-01789 (SMB)<br><br>SIPA Liquidation<br><br>(Substantively Consolidated)<br><br>Adv. Pro. No. 10-05311 (SMB) |
| In re:<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>Plaintiff,<br><br>v.<br><br>UBS AG, UBS (LUXEMBOURG) S.A., UBS FUND SERVICES (LUXEMBOURG) S.A., UBS THIRD PARTY MANAGEMENT COMPANY S.A., M&B CAPITAL ADVISERS SOCIEDAD DE VALORES, S.A., RELIANCE INTERNATIONAL RESEARCH LLC, RELIANCE MANAGEMENT (GIBRALTAR) LIMITED, LUXEMBOURG INVESTMENT FUND AND LUXEMBOURG INVESTMENT FUND U.S. EQUITY PLUS, as represented by their Liquidators MAÎTRE ALAIN RUKAVINA and PAUL LAPLUME, MAÎTRE ALAIN | **TRUSTEE'S SUPPLEMENTAL MEMORANDUM OF LAW IN OPPOSITION TO M&B CAPITAL ADVISERS SOCIEDAD DE VALORES, S.A.'S MOTION TO DISMISS BASED ON EXTRATERRITORIALITY AND IN FURTHER SUPPORT OF TRUSTEE'S MOTION FOR LEAVE TO AMEND COMPLAINTS** |

| |
|---|
| RUKAVINA and PAUL LAPLUME, in their capacities as liquidators and representatives of LUXEMBOURG INVESTMENT FUND AND LUXEMBOURG INVESTMENT FUND U.S. EQUITY PLUS, and LANDMARK INVESTMENT FUND IRELAND, |
| Defendants. |

The Trustee respectfully submits this supplemental memorandum in opposition to Defendant M&B Capital Advisers Sociedad de Valores, S.A's ("M&B") motion to dismiss based on extraterritoriality and in further support of the Trustee's motion for leave to amend his complaint. As set forth below, the Trustee's proposed Amended Complaint ("Am. Compl.") pleads specific facts showing the subsequent transfers received by M&B are predominantly domestic under the standard set forth in the Extraterritoriality Decision,[1] such that the Trustee's action does not require an extraterritorial application of SIPA or Bankruptcy Code § 550, and M&B's motion to dismiss should be denied.

M&B seeks dismissal of the Trustee's claims to recover avoidable transfers received from Luxembourg Investment Fund-U.S. Equity Plus ("LIF-USEP") and Landmark Investment Fund Ireland ("Landmark"), BLMIS feeder funds that M&B created, operated, and serviced to invest exclusively with BLMIS. The transfers to M&B are not "purely foreign"—and are in fact predominantly domestic—because the component events of the transactions occurred in the U.S., and the legal and economic realities of the transfers were U.S.-based.[2] The transfers consist of fees M&B received for its role in Madoff's scheme and proprietary investments redeemed by M&B with knowledge of fraud. M&B coordinated the creation of LIF-USEP and Landmark to direct foreign investments into the United States through BLMIS. Among other transfers, M&B, which served as LIF-USEP's official distributor, received at least $6 million in trailing and distribution fees originating from LIF-USEP. (Am. Compl. ¶ 127.) Given the substantial domestic connections and the fact that the relationships at issue were centered in the U.S., M&B

---

[1] *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 513 B.R. 222, 232-33 (S.D.N.Y. 2014) ("Extraterritoriality Decision").

[2] Simultaneously herewith, the Trustee has filed the omnibus Trustee's Memorandum of Law in Opposition to the Transferee Defendants' Motion to Dismiss Based on Extraterritoriality and in Further Support of Trustee's Motion for Leave to Amend Complaints, No. 11-02796 (SMB), (Bankr. S.D.N.Y. June 26, 2015) (the "Trustee's Main Brief"), incorporated herein by reference.

1

cannot now be allowed to evade the Trustee's claims on grounds of extraterritorial application of the Bankruptcy Code.[3]

## I. M&B DIRECTED THE CREATION OF LIF-USEP FOR THE PURPOSE OF INVESTING WITH BLMIS IN NEW YORK

To establish LIF-USEP as a Madoff feeder fund, M&B and its affiliates took concerted action in New York. M&B needed an introduction to, and approval from, Madoff. M&B's principals had longstanding relationships with one of Madoff's top envoys, Manuel Echeverría. In 2004, M&B engaged Echeverría to act on its behalf in gaining access to Madoff to create LIF-USEP. (*Id.* ¶¶ 5, 75–78, 88.) M&B also drew on Echeverría's connections to enlist the UBS Defendants[4] and the Reliance Group Defendants,[5] including New York-based Reliance International Research LLC ("RIR") to serve in various roles for the new fund, thereby facilitating LIF-USEP's establishment. (*Id.* ¶¶ 88-92.)

LIF-USEP was structured as a *société d'investissement à capital variable*, or "SICAV"— an open-ended umbrella investment company with multiple sub-funds. (*Id.* ¶ 42.) On August 18, 2005, defendant LIF-USEP, a sub-fund of LIF, was formed for the exclusive purpose of investing with BLMIS. (*Id.*) LIF-USEP opened account no. 1FR123 with BLMIS and began investing directly with BLMIS in September 2005. (*Id.*) Throughout LIF-USEP's life, it was exclusively invested with BLMIS in New York. (*Id.* ¶ 94.) LIF-USEP had no employees and no office space of its own. (*Id.* ¶ 95.) Rather, LIF-USEP was officially operated by M&B, in conjunction with the UBS Defendants and the Reliance Group Defendants. (*Id.* ¶¶ 95, 293.) In

---

[3] *See Parkcentral Global Hub Ltd. v. Porsche Auto. Holdings SE*, 763 F.3d 198, 207 (2d Cir. 2014); *Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60, 69 (2d Cir. 2012) (holding *Morrison* depends on a case's specific facts and that residency or citizenship of a party does not affect where a transaction occurs); *In re Maxwell Commc'n Corp.*, 170 B.R. 800, 809 (S.D.N.Y. 1994) ("The court must look at the facts of a case to determine whether they have a center of gravity outside the United States. Thus, for example, a transfer made in the U.S. by a foreign national to a foreign national could be considered a domestic transaction.").
[4] The UBS Defendants include defendants UBS (Luxembourg) S.A. ("UBS SA"), UBS Fund Services (Luxembourg) S.A., UBS Third Party Management Company S.A. ("UBSTPM"), and UBS AG.
[5] The Reliance Group Defendants include defendants Reliance Management (Gibraltar) Limited and RIR.

the words of M&B Managing Partner Juan Carlos Rodriguez Hergueta ("Hergueta") in a letter to Echeverría, "[w]ithout M&B [LIF-USEP] would not be possible." (*Id*. ¶ 96.) M&B placed more than €150 million of its clients' private and institutional capital with BLMIS. (*Id*.)

Although registered in Luxembourg, virtually all authority for LIF-USEP was delegated to BLMIS in New York. (*Id*. ¶¶ 8, 102, 266–268, 272, 277.) In August 2005, LIF-USEP's official custodian, UBS SA, entered into an undisclosed Sub-Custodian Agreement, delegating all custodial authority to Madoff. (*Id*. ¶ 266.) LIF-USEP's official portfolio manager, UBS SA, delegated complete asset management authority for LIF-USEP to BLMIS via a trading authorization agreement executed with the opening of LIF-USEP's account at BLMIS. (*Id*. ¶ 267.) M&B, which structured an identical arrangement for the Landmark fund, was fully aware of Madoff's control over LIF-USEP. (*Id*. ¶¶ 102, 233.)

M&B, which served as LIF-USEP's official distributor, received at least $6 million in trailing and distribution fees originating from LIF-USEP. (*Id*. ¶¶ 127, 304a.) M&B, including its affiliate M&B Capital Advisers Gestión SGIIC ("M&B SGIIC"), invested its own money into LIF-USEP, but redeemed the entirety of its investments, approximately $3.8 million, prior to Madoff's arrest. (*Id*. ¶¶ 304c, 304d.)

## II. M&B DIRECTED THE CREATION OF LANDMARK FOR THE PURPOSE OF INVESTMENT WITH BLMIS IN NEW YORK

At the end of March 2007, the UBS Defendants closed LIF-USEP to new subscriptions, as a result of concerns about Madoff. (*Id*. ¶¶ 100.) In order to meet continued demand for BLMIS, M&B's solution was to create a new BLMIS Feeder Fund in Ireland, called Landmark. (*Id*. ¶ 100-101.) In August 2007, M&B contacted Echeverría, who contacted Madoff, and arranged a meeting between Madoff and M&B personnel to discuss establishing Landmark. (*Id*. ¶ 101.)

3

M&B managing partner Hergueta then executed Landmark's BLMIS account opening documents, consisting of a Customer Agreement, an Option Agreement, and a Trading Authorization Limited to Purchases and Sales of Securities and Options. (*Id*. ¶ 102.) Through these agreements, M&B delegated all management authority for Landmark to BLMIS. These documents contain a New York choice of law clause. (*Id*.) M&B also worked with Landmark's custodian, HSBC Institutional Trust Services Ireland, to ensure that a sub-custodian agreement was in place for Landmark effectively giving Madoff custody of Landmark's assets. (*Id*. ¶ 233.)

M&B served as Landmark's portfolio manager, collecting at least $777,420 in management fees. (*Id*. ¶ 304b.) But as all management authority had actually been delegated to Madoff through the trading authorization executed by Hergueta, M&B received fees for services performed in New York. M&B also redeemed approximately $8,103,190 in proprietary investments in Landmark, further profiting from the Ponzi scheme. (*Id*. ¶ 304e.) The Trustee's subsequent transfer claims involving Landmark seek to recover money M&B received from a fund it purposely established in order to invest directly with BLMIS and profit from these U.S. investments. As with LIF-USEP, these claims should not be dismissed on grounds of extraterritoriality.

### III    M&B AND ITS AGENT ECHEVERRÍA COMMUNICATED FREQUENTLY WITH NEW YORK IN FURTHERANCE OF THE OPERATION OF LIF-USEP AND LANDMARK

M&B was in regular contact with New York during the operation of both Landmark and LIF-USEP. M&B founder Morenes met with Madoff twice in the two years prior to Madoff's arrest. (*Id*. ¶ 96.) M&B also received Landmark's BLMIS account statements and trade tickets directly from BLMIS in New York. (*Id*. ¶ 140.) M&B was also in regular communication with New York-based Defendant RIR, an affiliate of LIF-USEP's investment advisor. (*Id*. ¶¶ 40, 96.)

4

M&B employees communicated with RIR by email at least several times every month between 2005 and 2008, discussing LIF-USEP's account activity, Madoff's purported trades and the process of obtaining trade-level information, subscriptions and redemptions from LIF-USEP's accounts, negotiations about the fees M&B would collect, LIF-USEP's offering documents and financial statements, and discussions of Madoff's investment strategy. (*Id.* ¶ 96.)

Echeverría, M&B's agent, also had numerous contacts with New York. Echeverría regularly communicated with Madoff in-person, by telephone, and by fax. (*Id.* ¶ 291.) He regularly communicated with RIR in the United States. (*Id.*) Indeed, at least fifty times during LIF-USEP's and Landmark's existence, Echeverría communicated with Madoff, RIR, or the UBS Defendants on M&B's behalf, to direct investments into the United States. (*Id.*)

## CONCLUSION

For the foregoing reasons and those stated in the Trustee's Main Brief, this Court should grant the Trustee's motion for leave to amend and deny M&B's motion to dismiss.

Dated: June 26, 2015  
      New York, New York

Respectfully submitted,

*/s/ David J. Sheehan*  
**Baker & Hostetler LLP**  
45 Rockefeller Plaza  
New York, New York 10111  
Telephone: (212) 589-4200  
Facsimile: (212) 589-4201  
David J. Sheehan  
Email:dsheehan@bakerlaw.com

*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Estate of Bernard L. Madoff*

5