**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee*
*for the Substantively Consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities LLC*
*and the Estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>      Plaintiff-Applicant,<br><br>      v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES, LLC,<br><br>      Defendant. | Adv. Pro. No. 08-01789 (SMB)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated)<br><br>Adv. Pro. No. 10-05311 (SMB) |
| In re:<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>      Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>      Plaintiff,<br><br>      v.<br><br>UBS AG, UBS (LUXEMBOURG) S.A., UBS FUND SERVICES (LUXEMBOURG) S.A., UBS THIRD PARTY MANAGEMENT COMPANY S.A., M&B CAPITAL ADVISERS SOCIEDAD DE VALORES, S.A., RELIANCE INTERNATIONAL RESEARCH LLC, RELIANCE MANAGEMENT (GIBRALTAR) LIMITED, LUXEMBOURG INVESTMENT FUND AND LUXEMBOURG INVESTMENT FUND U.S. EQUITY PLUS, as represented by their Liquidators MAÎTRE ALAIN RUKAVINA and PAUL LAPLUME, MAÎTRE ALAIN RUKAVINA and PAUL LAPLUME, in their | **TRUSTEE'S SUPPLEMENTAL MEMORANDUM OF LAW IN OPPOSITION TO RELIANCE MANAGEMENT (GIBRALTAR) LIMITED'S MOTION TO DISMISS BASED ON EXTRATERRITORIALITY AND IN FURTHER SUPPORT OF TRUSTEE'S MOTION FOR LEAVE TO AMEND COMPLAINTS** |

| |
|---|
| capacities as liquidators and representatives of LUXEMBOURG INVESTMENT FUND AND LUXEMBOURG INVESTMENT FUND U.S. EQUITY PLUS, and LANDMARK INVESTMENT FUND IRELAND, <br>           Defendants. |

The Trustee respectfully submits this supplemental memorandum in opposition to Defendant Reliance Management (Gibraltar) Limited's ("Reliance Gibraltar") motion to dismiss based on extraterritoriality and in further support of the Trustee's motion for leave to amend his complaint. As set forth below, the Trustee's proposed Amended Complaint ("Am. Compl.") pleads specific facts showing the subsequent transfers received by Reliance Gibraltar are predominantly domestic under the standard set forth in the Extraterritoriality Decision,[1] such that the Trustee's action does not require an extraterritorial application of SIPA, or Bankruptcy Code § 550, and Reliance Gibraltar's motion to dismiss should be denied.

Reliance Gibraltar seeks dismissal of the Trustee's claims to recover avoidable transfers received from Luxembourg Investment Fund-U.S. Equity Plus ("LIF-USEP"), a BLMIS feeder fund that Reliance Gibraltar serviced for the sole purpose of investment with BLMIS. The transfers to Reliance Gibraltar are not "purely foreign"—and are in fact predominantly domestic—because the component events of the transactions occurred in the U.S., and the legal and economic realities of the transfers were U.S.-based.[2] The transfers consist of Reliance Gibraltar's fees for their role in Madoff's scheme. Reliance Gibraltar was paid approximately $2.4 million in fees for the services it purported to render as investment advisor to LIF-USEP. (Am. Compl. ¶ 116.) Reliance Gibraltar functioned in New York through the actions of New York-based defendant Reliance International Research LLC ("RIR"). RIR performed investment advisory services on behalf of Reliance Gibraltar, and the fees earned in connection therewith

---

[1] *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 513 B.R. 222, 232-33 (S.D.N.Y. 2014) ("Extraterritoriality Decision").

[2] Simultaneously herewith, the Trustee has filed the omnibus Trustee's Memorandum of Law in Opposition to the Transferee Defendants' Motion to Dismiss Based on Extraterritoriality and in Further Support of Trustee's Motion for Leave to Amend Complaints, No. 11-02796 (SMB), (Bankr. S.D.N.Y. June 26, 2015) (the "Trustee's Main Brief"), incorporated herein by reference.

were derived from investment management functions that were contractually delegated to BLMIS in New York. (*Id.* ¶¶ 116-117.) Given the substantial domestic connections and the fact that the relationships at issue were centered in the U.S., Reliance Gibraltar cannot now be allowed to evade the Trustee's claims on grounds of extraterritorial application of the Bankruptcy Code.[3]

## I. THE RELIANCE GROUP ACTED AS A SINGLE BUSINESS ENTERPRISE AND MAINTAINED A CONTINUOUS PRESENCE IN NEW YORK

Reliance Gibraltar was one of three entities created and operated by Tim Brockmann. Brockmann also created New York-based RIR and Reliance Management (BVI) Limited ("Reliance BVI"), the parent company of Reliance Gibraltar. (*Id.* ¶ 114.) Reliance Gibraltar, Reliance BVI, and RIR together comprised the Reliance Group. RIR is a New York limited lability company with registered offices at 147 East 48th Street, New York New York.[4] (*Id.* ¶ 55.)

The Reliance Group held itself out as a single business enterprise whose New York operations were essential to the Group's ability to market and perform services to its clients. (*Id.* ¶ 118.) RIR in New York housed the majority of the Reliance Group's employees, and of the eight members of the Reliance Group's "Investment Team," six were RIR employees. (*Id.*) Brockmann visited the RIR office in New York—located just blocks from BLMIS's offices—at least once a quarter for approximately eight years. (*Id.*) At least one of Brockmann's stints in

---

[3] *See Parkcentral Global Hub Ltd. v. Porsche Auto. Holdings SE*, 763 F.3d 198, 207 (2d Cir. 2014); *Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60, 69 (2d Cir. 2012) (holding *Morrison* depends on a case's specific facts and that residency or citizenship of a party does not affect where a transaction occurs); *In re Maxwell Commc'n Corp.*, 170 B.R. 800, 809 (S.D.N.Y. 1994) ("The court must look at the facts of a case to determine whether they have a center of gravity outside the United States. Thus, for example, a transfer made in the U.S. by a foreign national to a foreign national could be considered a domestic transaction.").

[4] Initially, Brockmann shared ownership of RIR with business partner Justin Lowe ("Lowe"), a U.S. citizen living and working in New York, before selling his interest to Lowe and New York-based RIR analyst William Trevor Uhl ("Uhl"). (Am. Compl. ¶ 113.)

2

New York lasted several months. (*Id.*) Even when Brockmann was not in New York, he and other Reliance Group personnel were in near-constant communications with RIR. (*Id.*) The Reliance Group used the website "www.reliance-funds.com," which RIR helped design and maintain. (*Id.*) New York-based Lowe and Uhl were listed in the Reliance Group's promotional materials as part of Reliance Gibraltar. (*Id.*) Lowe sent emails with disclaimers stating that the emails were sent by Reliance Gibraltar, not RIR. (*Id.*)

Although RIR ostensibly was created to provide research services, RIR in New York performed functions beyond those typically performed by a research team, including but not limited to, fundraising, meeting with investors, communicating with UBS (Luxembourg) S.A. ("UBS SA") regarding LIF-USEP's subscriptions and redemptions, and facilitating LIF-USEP's investments with BLMIS. (*Id.* ¶ 119.)

Over time, RIR took over more and more of Reliance Gibraltar's responsibilities, in part because Reliance Group members believed these activities needed to be performed in New York. (*Id.*) According to Lowe, the "whole purpose" for having RIR operate out of New York was because a majority of the hedge funds were located there. (*Id.*) In furtherance of its New York-centric approach, Brockmann and Lowe met with Madoff in New York to discuss the Reliance Group's BLMIS investments, including LIF-USEP. (*Id.*) RIR's own notes indicate that Brockmann was representing Reliance Gibraltar at the meetings. (*Id.*) As an integral part of the Reliance Group, Reliance Gibraltar functioned in New York through RIR, which acted as Reliance Gibraltar's agent in New York and fulfilled Reliance Gibraltar's official investment advisory obligations for LIF-USEP. (*Id.*)

## II. RELIANCE GIBRALTAR AND ITS AFFILIATES FACILITATED THE CREATION OF AND SERVICED LIF-USEP FOR THE SOLE PURPOSE OF INVESTING WITH BLMIS IN NEW YORK

3

The Reliance Group's introduction to the opportunity to invest in Madoff through LIF-USEP was orchestrated by Manuel Echeverría ("Echeverría") and the principals of defendant M&B. (*Id*. ¶¶ 5, 88.) Echeverría enjoyed close relationships with Brockmann and Madoff. (*Id*. ¶¶ 5, 79, 89.) At Echeverría's request, UBS AG and UBS SA co-sponsored the creation of LIF-USEP, for the sole purpose of investing in the U.S. through BLMIS. (*Id*. ¶¶ 88, 92.) Echeverría and M&B then presented the Reliance Group with a lucrative opportunity to serve as LIF-USEP's investment advisor, which Reliance Gibraltar accepted. (*Id*. ¶¶ 89-90.)

Even before LIF-USEP was opened, the Reliance Group directed investments into BLMIS. (*Id*. ¶ 147.) As early as 1999, Reliance Group entities were directing investments into Madoff through the Kingate Global Fund, Ltd. and Optimal Strategic U.S. Equity Ltd. ("Optimal"). (*Id*.) The Reliance Group obtained several due diligence reports and meeting notes Optimal prepared on BLMIS. (*Id*. ¶ 192, 226, 236, 237.) These reports put the Reliance Group on notice of numerous indicia of fraud and noted that BLMIS was regulated by the NASD and the SEC, and that U.S. law governed BLMIS's trading activities. (*Id*. ¶ 236.) The Reliance Group's investments with BLMIS in New York were such a large part of RIR's portfolio that RIR employees referred to Madoff as RIR's "sacred cow." (*Id*. ¶ 196.)

The Reliance Group knew that BLMIS purported to employ a trading strategy that transferred investors' funds to New York for investment in U.S. securities. (*Id*. ¶ 132.) Through its management of LIF-USEP, and its role in the creation and management of other BLMIS investment vehicles, such as Defender Limited ("Defender"), the Reliance Group knew that Madoff acted as the broker-dealer, custodian, and investment adviser. (*Id*.) The Reliance Group also was familiar with the terms of BLMIS account opening documents. (*Id*. ¶ 133.) These

4

documents provided BLMIS with complete authority to trade in U.S. securities on LIF-USEP's (and Defender's) behalf, and explicitly referenced U.S. law. (*Id.*)

### III. RELIANCE GIBRALTAR RETURNED SUBSTANTIAL TRANSFERS TO THE UNITED STATES

Reliance Gibraltar received approximately $2.4 million in fees from UBS SA and UBS Third Party Management Company S.A. ("UBSTPM"), which consisted of a portion of the management fees that UBS SA and UBSTPM received from LIF-USEP, and which ultimately originated from BLMIS. (*Id.* ¶ 116.) A portion of these fees were then transferred by Reliance Gibraltar to RIR's bank account in New York for the services RIR provided to Reliance Gibraltar in the management of LIF-USEP. (*Id.* ¶ 117.) Thus, a substantial portion of the transfers that Reliance Gibraltar received for directing investments into BLMIS made its way back to New York, underscoring the domestic connections of the activity in question.

### CONCLUSION

For the foregoing reasons and those stated in the Trustee's Main Brief, this Court should grant the Trustee's motion for leave to amend and deny Reliance Gibraltar's motion to dismiss.

Dated: June 26, 2015  
New York, New York

Respectfully submitted,

*/s/ David J. Sheehan*  
**Baker & Hostetler LLP**  
45 Rockefeller Plaza  
New York, New York 10111  
Telephone: (212) 589-4200  
Facsimile: (212) 589-4201  
David J. Sheehan  
Email:dsheehan@bakerlaw.com

*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Estate of Bernard L. Madoff*

5