BAKER & HOSTETLER LLP
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee for the
Substantively Consolidated SIPA Liquidation
of Bernard L. Madoff Investment Securities LLC
and the Estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>      Plaintiff-Applicant,<br><br>  v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>      Defendant. | Adv. Pro. No. 08-01789 (SMB)<br><br>SIPA Liquidation<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>      Debtor. | **TRUSTEE'S SUPPLEMENTAL MEMORANDUM OF LAW IN OPPOSITION TO UKFP (ASIA) NOMINEES LIMITED'S MOTION TO DISMISS BASED ON EXTRATERRITORIALITY AND IN FURTHER SUPPORT OF THE TRUSTEE'S MOTION FOR LEAVE TO AMEND THE COMPLAINT** |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>      Plaintiff,<br><br>  v.<br><br>UKFP (ASIA) NOMINEES LIMITED f/k/a TOWRY LAW (ASIA) NOMINEES LIMITED,<br><br>      Defendant. | Adv. Pro. No. 12-01566 (SMB) |

The Trustee respectfully submits this memorandum as a supplement to his Main Brief being filed simultaneously herewith in opposition to the motion to dismiss based on extraterritoriality made by defendant UKFP (Asia) Nominees Limited (f/k/a Towry Law (Asia) Nominees Limited) ("UKFP") and in further support of the Trustee's motion for leave to amend his Complaint.

## BACKGROUND

UKFP, which is a wholly-owned subsidiary of international asset management firm Henderson Group plc, is a sophisticated asset manager. (Proferred Allegations at ¶ 3.) UFKP was a shareholder in Fairfield Sentry Limited ("Fairfield Sentry"), which invested substantially all of its assets with BLMIS. (Trustee's Complaint at ¶ 2; *id.* at Ex. C.) UKFP received $8,012,183 in subsequent transfers of BLMIS customer property from Fairfield Sentry (the "Transfers"). (*Id.*) The Trustee's Proffered Allegations demonstrate that the Trustee's action to recover the Transfers does not require an extraterritorial application of SIPA or Bankruptcy Code Section 550.

## THE TRANSFERS AND COMPONENT EVENTS OF UKFP'S FAIRFIELD SENTRY TRANSACTIONS WERE PREDOMINANTLY DOMESTIC

Citing to *Maxwell I*, the District Court directed that "the location of the transfers as well as the component events of those transactions"[1] must be used to determine whether a subsequent transfer claim involves a domestic or extraterritorial application of the Code and SIPA.[2] Under

---

[1] Extraterritoriality Decision, 513 B.R. at 227 (citing *Maxwell I*, 186 B.R. at 816).

[2] In *Maxwell I*, the court examined all potential connections with the United States by reviewing: (i) the debtor's location; (ii) the defendants' location; (iii) where the defendants engaged in business regarding the transaction; (iv) what transaction and agreements the parties entered into that led to the antecedent debt that the transfers were used to pay; (v) where the parties' relationship was centered when conducting the transaction that triggered the transfers; (vi) the law governing the parties' transactions; and (vii) how the transaction was concluded. *In re Maxwell Commc'n Corp.*, 186 B.R. 807, 816-17 (S.D.N.Y. 1995).

the District Court's ruling, the Trustee need only put forth "specific facts suggesting a domestic transfer" to avoid dismissal.[3]  This is a fact-based inquiry in which all reasonable inferences should be drawn in the Trustee's favor.[4]

UKFP argues that simply because it and Fairfield Sentry were formally organized under the laws of foreign countries, the subsequent transfers it received are "purely foreign" and the Trustee's recovery action must be dismissed.  This superficial argument disregards the *Maxwell I* analysis directed by the District Court and is inconsistent with Second Circuit extraterritoriality case law that similarly examines a transaction's various connections to the United States.[5]

Based on the facts set forth in the Proffered Allegations, there is no basis for dismissing this case on the grounds of extraterritoriality.  The Transfers and component events of UKFP's transactions with Fairfield Sentry were predominantly domestic.

To begin with, the entire purpose of UKFP's investments with Fairfield Sentry was to invest in U.S. securities markets through New York-based investment adviser BLMIS, and to earn returns on those U.S.-based investments.  Specifically, UKFP entered into subscription agreements with Fairfield Sentry at least 62 times and in each case it affirmed that it knew (i) Fairfield Sentry invested almost exclusively with a New York-based, SEC-registered investment adviser (i.e. BLMIS) that invested in the U.S. securities market, and (ii) UKFP's money would be transferred to that same investment adviser in New York.  (Proffered

---

[3] Extraterritoriality Decision, 513 B.R. at 232 n.4.

[4] *See*, *e.g.*, *Anwar v. Fairfield Greenwich, Ltd.*, 728 F. Supp. 2d 372, 402-03 (S.D.N.Y. 2010) (deferring ruling on extraterritoriality at motion to dismiss phase and citing standard that "[t]he court must accept all well-pleaded factual allegations in the complaint as true, and draw all reasonable inferences in the plaintiff's favor.").

[5] *See, e.g., Parkcentral Global Hub Ltd. v. Porsche Auto. Holdings SE*, 763 F.3d 198, 217 (2d Cir. 2014); *European Cmty. v. RJR Nabisco, Inc.*, 764 F.3d 129, 141 (2d Cir. 2014); and other cases cited in the Trustee's Main Brief.

2

Allegations at ¶¶ 7-8.)  As Judge Lifland concluded in a similar matter, "[t]he movement of money to and from BLMIS in the United States . . . was not fortuitous or incidental; instead, it was 'the ultimate objective' and the '*raison d'etre*' of the Agreement between" the investor and the feeder fund.[6]

UKFP also purposefully and repeatedly used its affiliate's U.S. bank account and the U.S. banking system in connection with its at least 53 redemptions from Fairfield Sentry, which constitute the Transfers at issue.[7]  (Proffered Allegations at ¶ 10.)  Specifically, in its Fairfield Sentry transaction documents, UKFP designated a bank account in the name of its affiliate at Citibank in New York to receive redemption payments from Fairfield Sentry.  (*Id*.)  UKFP also remitted its subscriptions into a U.S. correspondent account at the direction of Fairfield Sentry, which were then ultimately delivered to BLMIS in New York.  (*Id.* at ¶ 11.)

The domestic nature of UKFP's transactions is also evidenced by the fact that the United States was the focus of UKFP's communications, meetings, and due diligence with respect to its Fairfield Sentry investments.  UKFP communicated and met with high-level executives at Fairfield Greenwich Group ("FGG") in New York in connection with its investments, including its primary contact at FGG—New York-based partner Lourdes Barreneche.  (*Id.* at ¶ 13.)  Through communications and meetings with Barreneche and other New York-based FGG personnel, UKFP sought out and obtained in-depth information regarding both Fairfield Sentry and BLMIS.  (*Id.* at ¶ 14.)

Beyond all of the above domestic components, UKFP's argument that its transactions are "purely foreign" is wrong because it ignores the reality of Fairfield Sentry, from which it

---

[6] *Picard v. Bureau of Labor Ins. (In re BLMIS)*, 480 B.R. 501, 513 (Bankr. S.D.N.Y. 2012).

[7] *See*, *e.g.*, *Picard v. Igoin (In re BLMIS)*, 2015 WL 603209, at *16-17 (Bankr. S.D.N.Y. Feb. 13, 2015) (in the analogous context of personal jurisdiction, repeated use of U.S. bank accounts sufficient).

3

received the Transfers. FGG in New York created, managed, and controlled Fairfield Sentry. (*Id.* at ¶¶ 16-17, 25-27.) Fairfield Sentry was based out of New York and had its principal place of business in New York. (*Id.* at ¶ 20.) Although technically registered in the BVI, Fairfield Sentry had no employees or offices there, and at all times, operational decisions were made by FGG employees in New York.[8] (Proffered Allegations at ¶¶ 19-21.) In its BLMIS account opening documents, FGG listed Fairfield Sentry's address as in the United States. (*Id.* at ¶ 22.) Fairfield Sentry's initial and on-going due diligence on BLMIS was conducted in New York, and the operative legal documents for its BLMIS accounts were governed by New York law. (*Id.* at ¶¶ 24, 26.) BLMIS in New York served as Fairfield Sentry's investment manager and implemented the split-strike conversion strategy for Fairfield Sentry. (*Id.* at ¶¶ 29-38.)

## CONCLUSION

For the forgoing reasons and those stated in the Trustee's Main Brief, UKFP's motion to dismiss should be denied, and the Trustee's motion for leave to amend his Complaint should be granted.

---

[8] *See SEC v. Gruss*, 2012 WL 3306166 at *3 (S.D.N.Y. Aug 13, 2012) (finding that issues of fact existed regarding whether an offshore fund was "foreign" for purposes of extraterritoriality where complaint alleged that operational and investment decisions for the offshore fund were made in New York, "such that for all intents and purposes, the [offshore fund] was based in New York").

4

| | |
|---|---|
| Dated: June 26, 2015<br>New York, New York | By: /s/ Thomas L. Long<br>Baker & Hostetler LLP<br>45 Rockefeller Plaza<br>New York, New York  10111<br>Telephone: (212) 589-4200<br>Facsimile: (212) 589-4201<br>David J. Sheehan<br>Thomas L. Long<br>Matthew D. Feil<br>Hannah C. Choate<br><br>*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Estate of Bernard L. Madoff* |