**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee*
*for the Substantively Consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities LLC*
*and the estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>    Plaintiff-Applicant,<br><br> v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>    Defendant. | SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>    Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>    Plaintiff,<br><br> v.<br><br>MERRILL LYNCH INTERNATIONAL<br><br>    Defendant. | Adv. Pro. No. 10-05346 (SMB) |

**THE TRUSTEE'S SUPPLEMENTAL MEMORANDUM OF LAW IN OPPOSITION TO MERRILL LYNCH INTERNATIONAL'S MOTION TO DISMISS BASED ON EXTRATERRITORIALITY AND IN FURTHER <u>SUPPORT OF TRUSTEE'S MOTION FOR LEAVE TO AMEND</u>**

Irving H. Picard, (the "Trustee"), as trustee for the liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS"), and the substantively consolidated estate of Bernard L. Madoff ("Madoff"), respectfully submits this memorandum as a supplement to his Main Brief[1] in seeking the recovery of subsequent transfers of BLMIS Customer Property made to Defendant Merrill Lynch International ("MLI") by the Fairfield Funds.[2]

## PRELIMINARY STATEMENT

MLI, together with its domestic parent ML & Co. and certain other subsidiaries (collectively, "Merrill Lynch"), structured products that invested, in part, in the Fairfield Funds. MLI Proffer ¶¶ 3, 14. BLMIS, a New York entity, was at the core of MLI's investments with the Fairfield Funds. *Id*. at ¶ 4. Indeed, MLI invested with the Fairfield Funds with the knowledge and intent that those investments would be managed by BLMIS, a U.S. investment adviser, and with the expectation that the investment returns it would receive would be generated by Madoff's purported purchase and sale of U.S. securities. *Id*. at ¶¶ 23-24. The Trustee alleges that the Fairfield Funds withdrew funds from its BLMIS accounts and subsequently transferred $14.2 million and €1.5 million to Defendant MLI. *Id*. at ¶ 1.

MLI's motion should be denied because MLI's argument (i) disregards the *Maxwell I* analysis directed by the District Court, and (ii) ignores the fact that Fairfield Sentry maintained its principal place of business in New York.[3]

---

[1] As used herein, "Main Brief" refers to the Memorandum of Law in Opposition to the Transferee Defendants' Motion to Dismiss Based on Extraterritoriality and In Further Support of Trustee's Motion for Leave to Amend Complaints, filed contemporaneously with this supplement. All arguments set forth in the Main Brief are fully incorporated herein.

[2] The Trustee filed Proffered Allegations Pertaining to the Extraterritoriality Issue as to Merrill Lynch International ("Proffered Allegations" or "MLI Proffer") contemporaneously with this Memorandum of Law.

[3] Detailed allegations regarding the parties, the subsequent transfers at issue and other relevant facts are more fully laid out in the Trustee's Complaint in *Picard v. Merrill Lynch Int'l*, Adv. Pro. No. 10-05346 (SMB) (ECF No. 1).

1

**ARGUMENT**

The District Court directed that the "transfer and component events of the transactions" test set forth in *Maxwell I* must be used to determine whether a subsequent transfer claim involves the domestic or extraterritorial application of the Code and SIPA.[4] This is a fact-based inquiry in which the Trustee's allegations must be accepted as true at this pleading stage, and all reasonable inferences are to be drawn in the Trustee's favor.[5]

Under the framework set forth by the District Court, MLI's motion must be denied for two main reasons. First, the component events and circumstances surrounding the transfers — including the parties to the relevant transactions and the conduct at issue, and the expectation that BLMIS, a New York investment adviser, would purportedly generate returns through his investments in the U.S. securities market — are predominantly domestic. Second, MLI received the transfers from Fairfield Funds, which was managed by Fairfield Greenwich Group ("FGG"), an entity that had its principal place of business in New York.[6]

### A. MLI's Transfers and the Component Events of Its Investment Transactions with the Fairfield Funds Were Centered in the United States

As specified in the Proffered Allegations, the transfers and component events of MLI's transactions with the Fairfield Funds are predominantly domestic, and MLI's incorporation in a foreign jurisdiction does not alter the nature of the transfers as being centered in New York, nor does it render the transactions "purely foreign."[7]

---

[4] *SIPC v. BLMIS*, 513 B.R. 222, 227 (S.D.N.Y. 2014), citing *In re Maxwell Commc'n Corp. ("Maxwell I")*, 186 B.R. 807, 816 (S.D.N.Y. 1995).

[5] *See, e.g.*, *Anwar v. Fairfield Greenwich Ltd.*, 728 F. Supp. 2d 372, 403–05 (S.D.N.Y. 2010).

[6] As set forth in the Main Brief, the doctrine of international comity does not preclude application of the Bankruptcy Code and SIPA to the fraudulent transfers at issue here, either.

[7] Consistent with the holdings of *Morrison*, *Absolute Activist*, and *Maxwell I*—all of which reject a bright-line citizenship test—the District Court agreed that the extraterritoriality analysis is fact-specific. *See* Extraterritoriality Decision, 513 B.R. at 232; *see also Absolute Activist*, 677 F.3d at 69 (the *Morrison* analysis depends on a case's specific facts; residency or citizenship of a party does not affect where a transaction occurs); *Maxwell Commc'n*

1.  **Merrill Lynch's Domestic Legal Entities and Divisions Were Substantial Participants in the Transactions**

Contrary to MLI's claim in the dismissal motion, the transactions at issue were not isolated events occurring in the U.K. with a U.K.-based entity. Rather, various domestic entities and divisions of the Merrill Lynch organization were substantial participants in the transactions with the Fairfield Funds, and various component parts of the transactions with the Fairfield Funds occurred in the United States. *Id*. at ¶ 14.

New York-headquartered ML & Co. played an essential role in various parts of the transactions. *Id*. at ¶ 17. For example, in each of the Merrill Structured Products at issue, ML & Co. served as either the issuer or the guarantor. *Id*. In either role, ML & Co. was obligated to repay the investors of the Merrill Structured Products, and thus, to hedge the collective risk of the Merrill Lynch entities. *Id*. at ¶¶ 17-18. And ML & Co. caused MLI to enter into subscription agreements with the Fairfield Funds that led to the transfers for the express purpose of having those funds invested in the U.S. securities market. *Id*.

The domestic nature of the transaction is further demonstrated by the fact that the global Merrill Lynch organization worked together to conduct due diligence on the Fairfield Funds and BLMIS in New York, and this due diligence was conducted by Merrill Lynch's New York-based due diligence division. *Id*. at ¶ 38.

2.  **The Transaction Documents Made Clear that BLMIS was at the Center of the Relationship Between MLI and the Fairfield Funds**

MLI's investments with the Fairfield Funds were governed by Private Placement Memoranda and Subscription Agreements, which MLI received prior to investing with the Fairfield Funds. *Id*. at ¶¶ 24-25. MLI knew from these transaction documents, among other

---

*Corp.*, 170 B.R. at 809 (deciding whether a transaction is domestic requires looking at the facts "to determine whether they have a center of gravity outside the United States. Thus, for example, a transfer made in the U.S. by a foreign national to a foreign national could be considered a domestic transaction.").

3

sources, that its investments with the Fairfield Funds would be transferred to BLMIS in New York for purportedly investing in U.S. equities, U.S. options, and U.S. treasurys. *Id*. at ¶¶ 23-25. Further, MLI repeatedly acknowledged internally that Fairfield Sentry was merely a "Madoff feeder fund." *Id*. at ¶ 26. MLI made the subscriptions into the Fairfield Funds with the knowledge that any returns from these investments it received would be derived from the U.S. securities market. *Id*. at ¶ 27.

### 3. MLI Consented to New York Jurisdiction and U.S. Law

The express provisions of MLI's Subscription Agreements with the Fairfield Funds state the investments would be subject to the New York law and the jurisdiction of U.S. Courts. *Id*. ¶¶ 31-32. Additionally, the Final Terms applying to the transactions created and sold by MLI and ML & Co. to its investors in the Merrill Structured Products expressly provided that New York was the "governing law" for the products, and therefore any dispute regarding the terms and operation of the products would be subject to New York jurisdiction. *Id*. at ¶ 20. Indeed, after BLMIS's fraud was revealed, MLI employees exchanged emails acknowledging that the Transfers could be subject to a clawback action by the Trustee. *Id*. ¶ 29.

### 4. MLI Instructed Fairfield to Deposit its BLMIS Investment Returns Into Its New York Bank Account

In executing its Subscription Agreements, MLI instructed Fairfield that almost all of the deposits with the Fairfield Funds for investments with BLMIS and, eventually, almost all of the returns on its investments with BLMIS, would be made through its J.P. Morgan account in New York. *Id*. at ¶¶ 34-36. MLI received virtually all of the subsequent transfers of BLMIS Customer Property at issue in its New York bank account at J.P. Morgan. *Id*. ¶ 37.

4

### 5. MLI Received the Transfers from the Fairfield Funds, Which Maintained Their Principal Place of Business in New York

MLI received its transfers from the Fairfield Funds, which maintained their principal place of business in New York. *Id*. at ¶ 49.

FGG is a New York-based *de facto* partnership created by U.S. citizens that, together with Fairfield International Managers, Inc., (organized under Delaware law) organized the Fairfield Funds. *Id*. at ¶¶ 51-52. The Fairfield Funds were organized under BVI law in name only from their inception through their liquidations in 2009, and at all times relevant had no employees and no offices. *Id*. at ¶ 54. FGG personnel at its New York City headquarters, among other things: (i) controlled the sales and subscriptions of the funds' shares; (ii) maintained final control of the Fairfield Funds' bank accounts; (iii) monitored the Fairfield Funds' investments; (iv) managed the relationships with BLMIS; (v) directed investments into and out of BLMIS as well as into and out of the Fairfield Funds; (vi) marketed the Fairfield Funds; (vii) approved all subscriptions for the Fairfield Funds' shares; (viii) maintained the relationships with the Fairfield Funds' back office service providers; (ix) maintained all of the Fairfield Funds' books and records at the FGG New York City headquarters; and (x) made strategic and operational decisions regarding the Fairfield Funds. *Id*. at ¶¶ 60-61. Accordingly, the Fairfield Funds' principal place of business was FGG's New York City headquarters.

### CONCLUSION

For the foregoing reasons and those set forth in the Main Brief, MLI's Motion to Dismiss should be denied, and the Trustee's motion to amend should be granted.

5

| | |
|---|---|
| Dated: June 26, 2015<br>      New York, New York | /s/ Stacey A. Bell<br>**Baker & Hostetler LLP**<br>45 Rockefeller Plaza<br>New York, New York 10111<br>Telephone:  (212) 589-4200<br>Facsimile:  (212) 589-4201<br>David J. Sheehan<br>Regina Griffin<br>Stacey A. Bell<br>Amanda Fein<br>Margaret E. Hirce<br><br>*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and estate of Bernard L. Madoff* |

6