**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee*
*for the substantively consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities LLC*
*and the estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | No. 08-01789 (SMB) |
| Plaintiff-Applicant, | SIPA Liquidation |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC and the estate of Bernard L. Madoff, | Adv. Pro. No. 11-02569 (SMB) |
| Plaintiff, | |
| v. | |
| BARCLAYS BANK (SUISSE) S.A., BARCLAYS BANK S.A., and BARCLAYS PRIVATE BANK & TRUST LIMITED, | |
| Defendants. | |

**TRUSTEE'S SUPPLEMENTAL MEMORANDUM**
**OF LAW IN OPPOSITION TO BARCLAYS DEFENDANTS' MOTION**
**TO DISMISS BASED ON EXTRATERRITORIALITY AND IN FURTHER**
**SUPPORT OF TRUSTEE'S MOTION FOR LEAVE TO AMEND COMPLAINTS**

The Trustee respectfully submits this supplemental memorandum in opposition to Barclays Bank (Suisse) S.A. ("Barclays Suisse"), Barclays Bank S.A. ("Barclays Spain"), and Barclays Private Bank & Trust Limited's ("Barclays Jersey") (collectively, the "Barclays Defendants") motion to dismiss based on extraterritoriality and in further support of the Trustee's motion for leave to amend the complaint. As set forth below, the Trustee's Proffered Allegations pertaining to the Extraterritoriality Issue as to the Barclays Defendants ("Barclays Proffer") plead facts showing that the subsequent transfers received by the Barclays Defendants and the component events of the transactions are predominantly domestic under the standard set forth in the Extraterritoriality Decision,[1] such that the Trustee's action does not require an extraterritorial application of SIPA or Bankruptcy Code § 550, the Barclays Defendants' motion to dismiss should be denied, and motion for leave to amend the complaint should be granted.

## I.    BACKGROUND & LEGAL STANDARD

This Court must determine whether the Trustee's claims against the Barclays Defendants seek the recovery of "purely foreign" transfers, requiring an extraterritorial application of SIPA or Bankruptcy Code § 550.[2] Under the District Court's ruling, the Trustee must only put forth "specific facts suggesting a domestic transfer" to avoid dismissal.[3] In making this determination, this Court must review the "location of the transfers as well as the component events of those

---

[1] *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.),* 513 B.R. 222 (S.D.N.Y. 2014) ("Extraterritoriality Decision").
[2] *Id*. at 232.
[3] *Id.* at 232 n.4.

1

transactions."[4]  This is a factual inquiry in which all reasonable inferences are to be drawn in the Trustee's favor.[5]

Barclays Suisse, Barclays Spain, and Barclays Jersey are private banking entities located in Switzerland, Spain, and Jersey, respectively.  Barclays Proffer ¶ 1.  At all relevant times, the Barclays Defendants were subsidiaries of Barclays Bank PLC, a multinational banking and financial services company that maintained, and still maintains, an office in New York.  *Id.* ¶ 7.

The Trustee's Barclays Proffer alleges the Barclays Defendants received subsequent transfers of BLMIS customer property from Fairfield Sentry Limited ("Fairfield Sentry") and Fairfield Sigma Limited ("Sigma").  *Id.* ¶ 2.  Fairfield Sentry was a BLMIS feeder fund ("Feeder Fund")—a single-purpose investment fund that pooled its investors' assets to invest with New York-based BLMIS.  *Id.* ¶ 3.  Sigma accepted subscriptions in Euros, converted the money to U.S. Dollars, and then invested 100% of its assets by purchasing shares of Fairfield Sentry.  *Id.* ¶ 4.  The Trustee alleges that Fairfield Sentry withdrew funds from its BLMIS accounts and transferred the funds to the Barclays Defendants or to Sigma, which in turn transferred the funds to the Barclays Defendants.  *Id.* ¶ 2.

Barclays Suisse, Barclays Spain, and Barclays Jersey argue simplistically that because they were formally organized under the laws of Switzerland, Spain, and Jersey, respectively, and because Fairfield Sentry and Sigma were formally organized under the law of the Territory of the British Virgin Islands ("BVI"), they are entitled to a finding that the transfers are "purely

---

[4] *Id.* at 227 (citing *Maxwell Commc'n Corp. v. Société General (In re Maxwell Commc'n Corp.),* 186 B.R. 807, 816–17 (S.D.N.Y. 1995) ("*Maxwell I*")).

[5] *See, e.g., Anwar v. Fairfield Greenwich Ltd.*, 728 F. Supp. 2d 372, 403 (S.D.N.Y. 2010).

2

foreign" and must be dismissed under the Extraterritoriality Decision. The Barclays Defendants are wrong, and their analysis is contrary to the *Maxwell I* "component event" analysis embraced in the Extraterritoriality Decision,[6] and inconsistent with Second Circuit precedent requiring courts to look at the economic and legal realities of a transaction to determine whether a claim is "sufficiently domestic" for purposes of extraterritoriality.[7] The Barclays Defendants ignore that the transactions at issue involved numerous, significant domestic components, including that Fairfield Sentry and Sigma were domestic residents that maintained their principal place of business in New York, and the Barclays Defendants' conduct put the United States at the center of the transactions at issue.

The subsequent transfers the Barclays Defendants received were not "purely foreign." In reality, there was nothing foreign about them except the places that the Barclays Defendants were formally organized. The Barclays Defendants' conduct puts the United States at the center of the transactions. Indeed, they purposely sought to profit from U.S. investments controlled by Madoff in New York.

As set forth below, a comprehensive review of the transfers and the component events of the transactions demonstrate the Trustee's recovery claims against the Barclays Defendants do not require an extraterritorial application of SIPA or Bankruptcy Code § 550.

---

[6] Extraterritoriality Decision, 513 B.R. at 227 (citing *Maxwell I*, 186 B.R. at 816–17).
[7] *See, e.g., Mastafa v. Chevron Corp.*, 770 F.3d 170, 182 (2d Cir. 2014); *European Cmty. v. RJR Nabisco, Inc.*, 764 F.3d 129, 141–42 (2d Cir. 2014); *ParkCentral Global Hub Ltd. v. Porsche Auto. Holdings,* 763 F.3d 198, 216 (2d Cir. 2014).

3

## II. THE TRANSFERS AND THE COMPONENT EVENTS OF THE TRANSACTIONS WERE PREDOMINANTLY DOMESTIC

The transactions at issue involved significant domestic components, including that the Barclays Defendants used New York bank accounts to transfer funds to and from Fairfield Sentry. Barclays Proffer ¶¶ 12–19. Barclays Wealth and Barclays Capital employees traveled to New York to conduct due diligence on Fairfield Sentry, Sigma, Madoff, and BLMIS, as they had to out of necessity, to understand these U.S. entities. *Id.* ¶ 22. Barclays Suisse agreed New York law, jurisdiction, and venue applied in connection with its investments in Fairfield Sentry, and Barclays Jersey served as the trustee of four family trusts that shared a direct BLMIS account. *Id.* ¶¶ 20–21, 25. Further, the transfers were made by U.S. residents that maintained their principal place of business in New York. *Id.* ¶¶ 29–62.

### A. The Barclays Defendants' Conduct Put the United States at the Center of the Transactions at Issue

The Barclays Defendants used New York bank accounts to direct funds to and from Fairfield Sentry. Barclays Suisse, Barclays Spain, and Barclays Jersey directed Fairfield Sentry subscription payments to New York correspondent bank accounts at either Republic National Bank of New York or HSBC Bank USA (depending on when each defendant executed a Fairfield Sentry subscription agreement) on at least 81 occasions over the course of 9 years, 11 occasions over the course of 9 years, and 4 occasions over the course of 7 years, respectively. Barclays Proffer ¶ 13. These funds were ultimately deposited in BLMIS's account at JPMorgan Chase Bank NA in New York. *Id.* ¶ 13.

Barclays Suisse and Barclays Spain maintained bank accounts in their own name at Barclays Bank PLC in New York and utilized their New York bank accounts to receive redemption payments from Fairfield Sentry. *Id.* ¶¶ 14–17. Barclays Suisse used its New York bank account 74 times over a 5 year period to receive redemption payments from Fairfield

4

Sentry. *Id.* ¶ 15.  Barclays Spain utilized its New York bank account 10 times over a 5 year period to receive redemption payments from Fairfield Sentry. *Id.* ¶ 17.  Barclays Jersey utilized a New York correspondent bank account at Barclays Bank PLC on two occasions to receive transfers from Fairfield Sentry. *Id.* ¶¶ 18–19.

Barclays Bank PLC organized its operations into business segments based on the services provided. *Id.* ¶ 8.  Employees in two business segments in particular—Barclays Wealth and Barclays Capital—were integral in initiating and maintaining the Barclays Defendants' investment relationship with BLMIS, Madoff, and the New York-based *de facto* partnership that created, operated, and controlled Fairfield Sentry and Sigma, Fairfield Greenwich Group ("FGG"). *Id.* ¶¶ 5, 8, 22–24.  The Barclays Defendants utilized the worldwide network of Barclays Wealth and Barclays Capital employees to conduct due diligence on Fairfield Sentry, Sigma, Madoff, and BLMIS in New York. *Id.* ¶¶ 9, 22–24.  London-based Barclays Wealth and Barclays Capital employees visited FGG's New York headquarters, frequently communicated with FGG New York Personnel, and reviewed and analyzed due diligence materials sent by FGG New York personnel. *Id.* ¶¶ 22–24.

As a result of their due diligence and the due diligence of Barclays Wealth and Barclays Capital, the Barclays Defendants knew control over Fairfield Sentry's and Sigma's investments rested almost entirely with BLMIS in New York. *Id.* ¶ 10.  The Barclays Defendants also knew New York-based BLMIS executed Madoff's "split-strike conversion" investment strategy ("SSC Strategy") on behalf of Fairfield Sentry and Sigma, that New York-based BLMIS was the custodian of Fairfield Sentry's and Sigma's investments, and that the entire economic purpose of Fairfield Sentry and Sigma was to deliver money to BLMIS. *Id.* ¶ 9.  Further, the Barclays Defendants knew Madoff's SSC Strategy purportedly involved the purchase of U.S. equities,

5

U.S. options, and U.S. Treasury Bills ("Treasurys") traded on U.S. exchanges, and that the decisions regarding which U.S. equities to purportedly purchase were made by Madoff in New York. *Id.* The Barclays Defendants invested through Fairfield Sentry and Sigma precisely to profit from BLMIS's control over a U.S. investment strategy and its implementation. *Id.* ¶ 10.

Barclays Suisse executed Fairfield Sentry subscription agreements in connection with its investments. *Id.* ¶ 20. By executing these subscription agreements, Barclays Suisse agreed any dispute related to the agreements would be governed by New York law and subject to the jurisdiction and venue of New York courts. *Id.* ¶¶ 20–21.

In 2004, Barclays Jersey was appointed as a trustee of four family trusts that shared a direct BLMIS account. *Id.* ¶ 25. As trustee, Barclays Jersey monitored the trusts' investments and reviewed BLMIS account statements on behalf of the trusts. *Id.* ¶¶ 25–27. These BLMIS account statements detailed the U.S. equities, U.S. options, and U.S. Treasurys BLMIS purported to purchase and sell each month, highlighting that the SSC Strategy's returns were derived from U.S. investments. *Id.* ¶ 27. After Madoff's Ponzi scheme collapsed in 2008, each of these trusts filed customer claims through Barclays Jersey. *Id.* ¶ 28.

### B. Fairfield Sentry and Sigma Maintained Their Principal Place of Business in New York

In 1988, U.S. citizens and residents, Walter Noel and Jeffrey Tucker, founded FGG, a New York-based *de facto* partnership. Barclays Proffer ¶ 30. As part of FGG, Noel and Tucker incorporated Fairfield International Managers, Inc. ("Fairfield International Managers") under Delaware law. *Id.* ¶¶ 30, 32. Through Fairfield International Managers, Noel and Tucker organized Fairfield Sentry, as well as a so-called "currency fund," Sigma, that invested all of its assets in Fairfield Sentry (collectively, the "Fairfield Funds"). *Id.* ¶¶ 33, 55.

6

Noel and Tucker formally organized the Fairfield Funds as international business companies under BVI law. *Id.* ¶¶ 33, 55. As international business companies, BVI law restricted the Fairfield Funds from doing business with other BVI citizens and residents except with other BVI international business companies. *Id.* The Fairfield Funds were shell corporations present in the BVI solely on paper. *Id.* ¶¶ 34, 56. Their BVI statutorily required registered address was a post office box care of a local trust company owned and operated by a local law firm. *Id.* ¶¶ 34, 56.

From their inception until their liquidation in 2009, the Fairfield Funds had no employees and no offices. *Id.* ¶¶ 34, 56. At all relevant times, the Fairfield Funds were operated almost entirely by FGG's New York City headquarters personnel who maintained final control of the Fairfield Funds' bank accounts and relationships with the Fairfield Funds' backoffice service providers. *Id.* ¶¶ 34, 39, 57–59.

Beginning in 1990, Tucker opened Fairfield Sentry's BLMIS accounts. *Id.* ¶ 36. In the account opening documents, Tucker identified Fairfield Sentry's mailing address as Fairfield International Managers' office in Greenwich, Connecticut and directed BLMIS to send Fairfield Sentry's monthly account statements, trade confirmations, and correspondence to the same Fairfield International Managers office. *Id.* In January 1998, FGG requested BLMIS to send all Fairfield Sentry account information to FGG's New York City headquarters. *Id.*

From the Fairfield Funds' inception, FGG personnel at its New York City headquarters controlled the sales and subscriptions of the funds' shares. *Id.* ¶¶ 40–41, 57–58. From at least January 1, 2002, all Fairfield Sentry subscription agreements contained New York choice of law provisions, and provided for venue and jurisdiction for any disputes in New York. *Id.* ¶ 41.

7

At all relevant times, FGG New York City headquarters personnel monitored the Fairfield Funds' investments; managed the relationships with BLMIS; directed investments into and out of BLMIS as well as into and out of Fairfield Sentry; marketed the Fairfield Funds; approved all subscriptions for Fairfield Funds shares; maintained all of the Fairfield Funds' books and records at the FGG New York City headquarters; and made all strategic and operational decisions regarding the Fairfield Funds. *Id.* ¶¶ 40–41, 57–58.

### C.    The Barclays Defendants Have Argued U.S. Laws Should Apply to the Transactions at Issue

Finally, the Barclays Defendants previously argued in this case that Bankruptcy Code section 546(e)'s safe harbor should shield their transfers from suit precisely because of their connection to the U.S. securities markets into which BLMIS purported to invest.[8] This argument is inconsistent with the Defendants' current assertion that their transactions lack sufficient domestic connections for purposes of extraterritoriality. Defendants should not be allowed to have it both ways, taking advantage of U.S. law when it suits them and running from it when it does not.

### III.    CONCLUSION

For the foregoing reasons and those stated in the Trustee's Main Brief, this Court should deny the Barclays Defendants' motion to dismiss and grant the Trustee's motion for leave to amend.

---

[8] *See* Brief for Financial Institution Defendants as Amici Curiae Supporting Respondents at 11, *Picard v Ida Fishman Revocable Trust (In re Bernard L Madoff Inv. Sec LLC)*, No. 12-2557 (2d Cir. Dec. 8, 2014), 2014 WL 6863608.

8

| | |
|---|---|
| Dated: June 26, 2015<br>New York, New York | /s/ Thomas L. Long<br>**Baker & Hostetler LLP**<br>45 Rockefeller Plaza<br>New York, New York 10111<br>Telephone:  (212) 589-4200<br>Facsimile:  (212) 589-4201<br>David J. Sheehan<br>Thomas L. Long<br><br>**Baker & Hostetler LLP**<br>65 East State Street<br>Suite 2100<br>Columbus, Ohio 43215<br>Telephone:  (614) 228-1541<br>Facsimile:  (614) 462-2616<br>Lauren M. Hilsheimer<br>Justin J. Joyce<br><br>*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the estate of Bernard L. Madoff* |