**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee*
*for the substantively consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities LLC*
*and the estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | No. 08-01789 (SMB) |
| Plaintiff-Applicant, | SIPA Liquidation |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | Adv. Pro. No. 11-02761 (SMB) |
| Plaintiff, | |
| v. | |
| KBC INVESTMENTS LIMITED, | |
| Defendant. | |

**TRUSTEE'S SUPPLEMENTAL**
**MEMORANDUM OF LAW IN OPPOSITION TO**
**DEFENDANT KBC INVESTMENTS LIMITED'S MOTION TO**
**DISMISS BASED ON EXTRATERRITORIALITY AND IN FURTHER**
<u>**SUPPORT OF TRUSTEE'S MOTION FOR LEAVE TO AMEND COMPLAINTS**</u>

The Trustee respectfully submits this supplemental memorandum in opposition to Defendant KBC Investments Limited's ("KBC Investments") motion to dismiss based on extraterritoriality and in further support of the Trustee's motion for leave to amend complaints. As set forth below, the Trustee's Proffered Allegations Pertaining to the Extraterritoriality Issue as to KBC Investments ("KBC Investments Proffer") plead facts showing the subsequent transfers received by KBC Investments are predominantly domestic under the standard set forth in the Extraterritoriality Decision,[1] such that the Trustee's action does not require an extraterritorial application of SIPA or Bankruptcy Code § 550.  KBC Investments' motion to dismiss should be denied, and the Trustee's motion for leave to amend should be granted.

**I.     BACKGROUND & LEGAL STANDARD**

The District Court returned this action to this Court to determine whether the Trustee's claims against KBC Investments seek the recovery of "purely foreign" transfers, requiring an extraterritorial application of SIPA and Bankruptcy Code § 550.[2]  In making this determination, this Court must review "the location of the transfers as well as the component events of those transactions."[3]  This is a fact-based inquiry in which all reasonable inferences are to be drawn in the Trustee's favor.[4]  The Trustee must put forth "specific facts suggesting a domestic transfer" to avoid dismissal.[5]

---

[1] *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*, 513 B.R. 222 (S.D.N.Y. 2014) ("Extraterritoriality Decision").

[2] *Id.* at 232.

[3] *Id.* at 227 (quoting *Maxwell Commc'n Corp. v. Société General PLC (In re Maxwell Commc'n Corp.)*, 186 B.R. 807, 816–17 (S.D.N.Y. 1995) ("*Maxwell I*")).

[4] *See, e.g., Anwar v. Fairfield Greenwich Ltd.*, 728 F. Supp. 2d 372, 403 (S.D.N.Y. 2010).

[5] Extraterritoriality Decision, 513 B.R. at 232 n.4.

The Trustee's KBC Proffer alleges KBC Investments received subsequent transfers of BLMIS customer property from Harley International (Cayman) Limited ("Harley"). KBC Investments Proffer ¶ 1. KBC Investments, a private limited company based in the United Kingdom, was a shell company solely used by its parent company and affiliates as an offshore investment vehicle. *Id.* ¶ 2. Harley was a BLMIS feeder fund ("Feeder Fund")—a single-purpose investment fund that pooled its investors' assets to invest with BLMIS in New York. *Id.* ¶ 3. The Trustee alleges that Harley withdrew funds from its BLMIS account and transferred the funds to KBC Investments. *Id.* ¶ 1.

KBC Investments argues that because it was formally organized under the laws of the United Kingdom, and because Harley was formally organized under the Cayman Islands, it is entitled to a finding that the transfers at issue are "purely foreign" and must be dismissed under the Extraterritoriality Decision. KBC Investments is wrong. Its analysis is contrary to the *Maxwell I* "component events" analysis embraced in the Extraterritoriality Decision,[6] and inconsistent with Second Circuit precedent requiring courts to look at the economic and legal realities of a transaction to determine whether a claim is "sufficiently domestic" for purposes of extraterritoriality.[7] KBC Investments ignores that the transactions involved predominantly domestic components, including that KBC Investments' conduct put the United States at the center of the transactions at issue and that Harley maintained its principal place of business in New York. As set forth below, a review of the facts pertinent to the transfers and the component

---

[6] *Id.* at 227 (citing *Maxwell I*, 186 B.R. at 816–17).

[7] *See, e.g., Mastafa v. Chevron Corp.*, 770 F.3d 170, 182 (2d Cir. 2014); *European Cmty. v. RJR Nabisco, Inc.*, 764 F.3d 129, 141–42 (2d Cir. 2014); *Parkcentral Global Hub Ltd. v. Porsche Automobile Holding SE*, 763 F.3d 198, 216 (2d Cir. 2014).

events of the transactions demonstrate the Trustee's action against KBC Investments does not require an extraterritorial application of SIPA or Bankruptcy Code § 550.

## II.    KBC INVESTMENTS' CONDUCT PUT THE UNITED STATES AT THE CENTER OF THE TRANSACTIONS AT ISSUE

KBC Investments knew New York-based BLMIS served as the investment adviser and custodian for Harley, and that control of Harley's investments rested entirely with New York-based BLMIS.  KBC Investments Proffer ¶¶ 16–17.  KBC Investments also knew BLMIS purportedly invested Harley's assets in U.S. equities, U.S. options, and U.S. Treasury Bills.  *Id.* ¶ 16.  As a result, KBC Investments subscribed funds into Harley with the intent of investing in the U.S. market, and knew control over Harley's investments rested entirely with BLMIS.  *Id.* ¶ 17.

KBC Investments relied upon its New York-based affiliate, KBC Financial Products USA Inc. ("KBC USA"), to manage its investments in Harley and other Feeder Funds.  *Id.* ¶¶ 9, 12–13.  KBC USA was responsible for the day-to-day oversight and administration of KBC Investments' investments and conducted due diligence in New York on behalf of KBC Investments.  *Id.* ¶ 12.  Employees of KBC Investments' Ireland-based affiliate, KBC Asset Management Ltd. ("KBCAM"), traveled to New York to conduct due diligence in connection with KBC Investments' investments in Feeder Funds.  *Id.* ¶ 14.

In addition to Harley, KBC Investments invested in or explored investing in other Feeder Funds, including Fairfield Sentry Limited, a Feeder Fund managed by New York-based Fairfield Greenwich Group ("FGG"), and Feeder Funds managed by New York-based Tremont Partners, Inc.  *Id.* ¶ 5.  As with its investments in Harley, KBC Investments invested in these New York-based Feeder Funds to profit from New York-based BLMIS.  *Id.* ¶ 7.

KBC Investments used New York bank accounts to transfer funds to and from Harley.

3

*Id.* ¶¶ 18–20. When subscribing in Harley, KBC Investments directed funds to correspondent bank accounts at either JP Morgan Chase, New York or the Northern Trust Banking Corporation in New York. *Id.* ¶ 19. When redeeming from Harley, KBC Investments directed all of its redemption payments—totaling four payments over a ten month period—to a HSBC Bank USA bank account in New York. *Id.* ¶ 20.

At the time it received redemption payments from Harley, KBC investments filed quarterly institutional investment manager reports with the U.S. Securities and Exchange Commission because it managed substantial U.S. investments. *Id.* ¶ 21.

Finally, KBC Investments entered into a swap transaction involving investments in a Feeder Fund with Lehman Brothers Special Financing Inc. ("Lehman"), a domestic entity incorporated in Delaware. *Id.* ¶¶ 6, 22. KBC Investments entered into this swap transaction so Lehman could illegally avoid U.S. tax payments and improve its balance sheet at a time when its parent company was nearing its bankruptcy filing. *Id.*

### III.    HARLEY MAINTAINED ITS PRINCIPAL PLACE OF BUSINESS IN NEW YORK

This Court previously entered summary judgment against Harley in the amount of more than $1 billion, holding that "Harley specifically sought out the United States as a place to do business when it opened an account with BLMIS," and that the transfers received by Harley "arose out of business transactions tied to Harley's securities account with BLMIS in New York." KBC Investments Proffer ¶¶ 27–28.

Although incorporated in the Cayman Islands, Harley was operated and controlled by Fix Asset Management Services Inc. ("FAM"), which was incorporated under New York law and headquartered in New York, New York. *Id.* ¶¶ 4, 39–40. Harley had no employees or offices in the Cayman Islands and acted principally through FAM. *Id.* ¶ 41. For example, FAM in New

4

York: (1) conducted due diligence on BLMIS and monitored Harley's investments with BLMIS; (2) received Harley's account statements from BLMIS, (3) corresponded directly with BLMIS to request redemptions into and subscriptions from Harley's BLMIS account, and (4) marketed the sale of shares in Harley to investors. *Id.* ¶¶ 45–47, 49.

Charles Fix held all of the voting shares for Harley and lived in New York. *Id.* ¶ 42. Mr. Fix's daughter, Tatiana Fix Katisgera, was the chief executive officer of FAM, and Ms. Fix also lived in New York. *Id.* ¶ 43.

Harley conducted no meaningful business in the Cayman Islands. In its Memorandum of Association, Harley represented that, under the Cayman Islands Companies Law, "[t]he Company will not trade in the Cayman Islands with any person, firm or corporation except in furtherance of the business of the Company carried on outside the Cayman Islands." *Id.* ¶ 35. As such, Harley was registered as an exempt company under Cayman Islands law and was not permitted to solicit investors in the Cayman Islands. *Id.* ¶ 34.

In its subscription agreements, Harley directed investors to wire U.S. dollars to bank accounts in New York held by its administrator. The agreements required subscriptions to be wired to an account at the Northern Trust Banking Corporation ("Northern Trust"), located at 40 Broad Street, New York, New York. *Id.* ¶ 50. When Harley redeemed funds from its BLMIS account, BLMIS paid redemptions to the same Northern Trust bank account in New York. *Id.* ¶ 51.

## IV. <u>CONCLUSION</u>

For the foregoing reasons and those stated in the Trustee's Main Brief, this Court should deny KBC Investments' motion to dismiss and grant the Trustee's motion for leave to amend.

| | |
|---|---|
| Dated: June 26, 2015<br>New York, New York | /s/ Thomas L. Long<br>**Baker & Hostetler LLP**<br>45 Rockefeller Plaza<br>New York, New York 10111<br>Telephone:  (212) 589-4200<br>Facsimile:  (212) 589-4201<br>David J. Sheehan<br>Thomas L. Long<br><br>**Baker & Hostetler LLP**<br>65 East State Street<br>Suite 2100<br>Columbus, Ohio 43215-4260<br>Telephone:  (614) 228-1541<br>Facsimile:  (614) 462-2616<br>Lauren M. Hilsheimer<br>Justin J. Joyce<br><br>*Attorneys for Irving H. Picard, Trustee*<br>*for the Substantively Consolidated SIPA*<br>*Liquidation of Bernard L. Madoff Investment*<br>*Securities LLC and the estate of Bernard L.*<br>*Madoff* |