**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, NY 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>                Plaintiff-Applicant,<br>    v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>                Defendant. | Adv. Pro. No. 08-01789 (SMB)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>                Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>                Plaintiff,<br>    v.<br><br>VIZCAYA PARTNERS LIMITED, BANQUE JACOB SAFRA (GIBRALTAR) LTD, a/k/a BANK J SAFRA LIMITED, ASPHALIA FUND LIMITED, and ZEUS PARTNERS LIMITED,<br><br>                Defendants. | Adv. Pro. No. 09-01154 (SMB) |

**THE TRUSTEE'S SUPPLEMENTAL MEMORANDUM OF LAW**
**IN OPPOSITION TO ZEUS' MOTION TO DISMISS**
**BASED ON EXTRATERRITORIALITY AND IN FURTHER SUPPORT OF THE**
**TRUSTEE'S MOTION FOR LEAVE TO AMEND COMPLAINTS**

The Trustee respectfully submits this supplemental memorandum in opposition to the consolidated motion to dismiss and in further support of the Trustee's motion for leave to amend complaints,[1] which was joined by defendant Zeus Partners Limited ("Zeus"). The Trustee brought this action against Vizcaya Partners Limited ("Vizcaya"), the BLMIS account holder, its two main shareholders, Zeus and Asphalia Fund Limited ("Asphalia"), the funds' custodian Bank J. Safra Sarasin (Gibraltar) Ltd. f/k/a Banque Jacob Safra (Gibraltar) Ltd. ("Safra Gibraltar"), and the funds' investment manager, Siam Capital Management Ltd. ("Siam" and, collectively with Zeus, Vizcaya, and Asphalia, the "Defendants"), to avoid and recover $180 million in initial and subsequent fraudulent transfers they received from BLMIS. Zeus has moved to dismiss the Trustee's claims on the ground that they are barred by *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247 (2010), and that any amendment would be futile (the "Motion"). In connection with the motion to amend, the Trustee is submitting a Proposed Second Amended Complaint (the "Complaint"). The allegations in the Complaint show that (i) amendment would not be futile; and (ii) the component events of the transactions at issue in this proceeding do not require an extraterritorial application of the United States Bankruptcy Code or SIPA.

### U.S. Procedural History and Foreign Proceedings

The Trustee initiated this action on April 9, 2009 and filed an Amended Complaint on September 30, 2009 against Vizcaya, Zeus, Asphalia, Safra Gibraltar, and Siam.[2] After they failed to appear in court or respond to the Amended Complaint, the Bankruptcy Court entered an

---

[1] The Trustee submits this memorandum in accordance with this Court's Order Concerning Further Proceedings on Extraterritoriality Motion and Trustee's Omnibus Motion for Leave to Replead and for Limited Discovery with appended Exhibits A-C entered December 10, 2014, as modified by the Stipulations and Orders entered January 14, 2015 and February 24, 2015 (collectively, the "Order"). This memorandum supplements the Trustee's main memorandum of law filed contemporaneously with this memorandum.
[2] Compl. ¶ 9.

order granting default judgment against Vizcaya, Zeus, Asphalia, and Siam on August 3, 2010

(the "Default").[3]

     As a result of a foreign action brought by Safra Gibraltar,[4] Safra Gibraltar paid into the

custody of the Supreme Court of Gibraltar $61 million held in Zeus' Safra Gibraltar account

comprising transfers of customer property from BLMIS to Zeus (the "Zeus Funds").[5]

     Following the issuance of the Default,[6] the Trustee requested that this Court seek, via

letter of request for judicial assistance (the "Request"), turnover to the custody of the Bankruptcy

Court of any monies held by the Gibraltar Court comprising transfers of customer property to

Defendants.  That Request was issued by this Court on August 23, 2010, whereupon, the Trustee

entered into negotiations with Defendants seeking voluntary turnover compliance with the

Request.  Zeus agreed to repatriate the Zeus Funds to the United States in exchange for the

Trustee's vacating the Default as to Zeus and allowing the Bankruptcy Court to adjudicate the

underlying dispute against Zeus on the merits.   By so-ordered stipulation, the Trustee and Zeus

vacated the Default as to Zeus and agreed that the Zeus Funds would be repatriated to the

custody of this Court.  The Zeus Funds were paid into this Court on August 9, 2011.[7]

## ARGUMENT

     The Trustee seeks to recover from the Defendants property, or its value, initially

transferred by BLMIS to Vizcaya.  Zeus was an immediate transferee of Vizcaya, which received

$180 million in customer property from BLMIS.[8]  Zeus received $108 million of customer

---

[3] Compl. ¶ 11.
[4] The Default was entered several months after a July 2010 ruling by the English Court of Appeal, which rendered foreign default judgments in bankruptcy proceedings enforceable in England and, by extension, the British Commonwealth.  *Safra Gibraltar v. Zeus & Others* – 2009 S 174
[5] Compl. ¶ 12.
[6] *See Rubin v. Eurofinance S.A.* [2010] EWA Civ. 895, and *Cambridge Gas Transp.  Corp. v. Official Comm. Of Unsecured Creditors of Navigator Holdings plc.* [2006] UKPC 26, [2007] 1 AC 508.
[7] Compl. ¶¶ 12-13.
[8] Compl. ¶ 2.

property in subsequent transfers from Vizcaya.[9]  As alleged in the Complaint, Gerard Vila, an

investment banker, created and maintained a structure of foreign entities, including Zeus, which

functioned exclusively to direct funds into BLMIS and to profit from BLMIS's business

activities.[10]  Vizcaya and Zeus were merely letter box entities with no employees.  They existed

for the sole purpose of ultimately channeling funds to BLMIS.[11]

   In the Extraterritoriality Decision, Judge Rakoff determined that in the context of an

avoidance action,[12] the foreign or domestic nature of a transaction is determined by the location

of the transfers and the component events of that transaction.[13]  According to Judge Rakoff,

dismissal is not warranted where the Trustee has "put forth specific facts suggesting . . . domestic

transfer[s]."[14]  The Trustee alleges specific facts in this proceeding regarding the economic

reality of the Transfers, which the Court must consider,[15] and all reasonable inferences must be

drawn in the Trustee's favor.[16]  As Judge Rakoff held, extraterritorial transfers are those that

only can be characterized as "*purely* foreign."[17]

   The component events of the transactions were centered in New York.  New York was

the locus of all meaningful business activity and profit for Vizcaya and Zeus.  More

importantly—New York was the source of the transfers of BLMIS customer property to

Defendants and is where the Zeus Funds currently reside.  Neither the place of formation nor

---

[9] Compl. ¶ 194.

[10] Compl. ¶¶ 47-49.

[11] *Id.*

[12] Because BLMIS made the initial transfers to the BLMIS Accountholder (which have been avoided here), the Complaint seeks to recover the Transfers subsequently made to the Transferee Defendants.

[13] *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 513 B.R. 222, 227 (S.D.N.Y. 2014) ("Extraterritoriality Decision") (quoting *In re Maxwell Commc'n Corp.*, 186 B.R. 807, 817 (S.D.N.Y. 1995).

[14] *Id.* at 232 n.4.

[15] *See Parkcentral Global Hub Ltd. v. Porsche Auto. Holdings SE*, 763 F.3d 198, 213, 215-16 (2d Cir. 2014) (The Court must consider "the foreignness of the facts constituting the defendant's alleged violation," or its "economic reality," in determining whether the application of the statute is extraterritorial.)

[16] *Anwar v. Fairfield Greenwich Ltd.*, 728 F. Supp. 2d 372, 403-05 (S.D.N.Y. 2010); *cf. SEC v. ICP Asset Mgmt., LLC*, No. 09 Civ. 0118 (VM), 2012 WL 2359830, at *2 (S.D.N.Y. June 21, 2012) (denying summary judgment because evidence permitted inference that challenged conduct was domestic).

[17] Extraterritoriality Decision at 232 (emphasis added).

residence of Zeus in a foreign jurisdiction when no material business activity took place defines

the transactions at issue as "purely" foreign.[18]  Therefore, the Motion should be denied.

### A.    The Transfers Came Through Entities Whose Only Business Was Directing Investment Funds Into BLMIS

Zeus functioned in conjunction with Vizcaya and also with Siam, which is an entity

beneficially owned and controlled by Vila,[19] to profit from United States-based investment

activities that BLMIS strategized and purported to implement.[20]  Vila set up Zeus purely as an

investment vehicle for clients to invest with BLMIS in New York.[21]  Zeus exclusively invested

in Vizcaya, which, in turn, solely invested with BLMIS.[22]

Despite having a registered address in the British Virgin Islands, Zeus had no physical

office or employees there.[23]  The only business activity generating profit for Zeus—BLMIS's

investment advisory business—was conducted in New York.  Investments into Zeus were

managed and controlled from New York.  On or about December 1, 2004, Zeus, Siam, and Safra

National Bank of New York ("Safra New York") entered into an agreement confirming that

Safra New York would control investments into Zeus.[24]  Safra New York invested a total of

$67,285,000 in Zeus.[25]  By the terms of Zeus's subscription agreement, all subscriptions into

and redemptions from Zeus were made in U.S. dollars and transmitted via U.S. banks.[26]  Safra

New York monitored Zeus's daily operations, requesting daily trade tickets and weekly estimates

---

[18] *Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60, 69 (2d Cir. 2012) (the *Morrison* analysis depends on a case's specific facts; residency or citizenship of a party does not affect where a transaction occurs); *Maxwell*, 170 B.R. at 809 (deciding whether a transaction is domestic requires looking at the facts "to determine whether they have a center of gravity outside the United States. Thus, for example, a transfer made in the U.S. by a foreign national to a foreign national could be considered a domestic transaction.").

[19] Compl. ¶¶ 47, 86.

[20] Compl. ¶¶ 6, 21, 91.

[21] Compl. ¶ 82.

[22] Compl. ¶¶ 6, 91, 174.

[23] Compl. ¶ 112.

[24] Compl. ¶ 88.

[25] Compl. ¶ 87.

[26] Compl. ¶ 92.

of Zeus's NAV.[27]  Safra New York employees revised and negotiated Zeus's corporate

documents and reviewed Zeus's performance.[28]  Correspondence from PricewaterhouseCoopers,

Zeus's administrator, regarding Zeus's operations was directed to Safra New York's

headquarters in New York.[29]  Moreover, Zeus's board of directors met in New York and

resolved to change the fund's custodian from Bank Safra France to Bank Safra Gibraltar.[30]

**B.**     **BLMIS Performed Investment Adviser, Custodian, and Broker-Dealer Functions for the Defendants**

BLMIS controlled all investment advisory, management, and custodial functions for

Vizcaya and, because they worked in tandem, for Zeus.[31]  For example, the Vizcaya BLMIS

Customer Agreement and Trading Authorization appointed BLMIS, a NASD-registered broker-

dealer, to act as Vizcaya' s agent, exclusively implementing BLMIS's proprietary investment

strategy.[32]  That strategy involved the purported purchase and sale of securities traded

exclusively on U.S.-based exchanges and regulated by U.S. securities laws.[33]

**C.**     **Zeus Voluntarily Repatriated the Zeus Funds to the United States**

Zeus consented to the repatriation of the Zeus Funds from Gibraltar to the United States

Bankruptcy Court and stipulated to the adjudication of the Trustee's claims against Zeus in this

Court.[34]  In so doing, Zeus acknowledged that the United States Bankruptcy Court was the

appropriate forum for substantive adjudication of the Trustee's claims.  Zeus was under no

obligation to take this step.  It did so voluntarily and without compulsion.

---

[27] Compl. ¶ 181.
[28] Compl. ¶ 83.
[29] Compl. ¶ 84.
[30] Compl. ¶ 85.
[31] Compl. ¶ 173.
[32] Compl. ¶¶ 59, 66.
[33] Compl. ¶¶ 21, 36; *Morrison v. Australia Nat'l Bank*, 130 S. Ct. 2869, 2888 (2010) (assessing whether a claim is domestic or foreign based on whether, among other things, case involved securities listed on a domestic exchange).
[34] Compl. ¶13.

Dated: June 26, 2015
      New York, New York

**BAKER & HOSTETLER LLP**


By: /s/  David J. Sheehan
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Email: dsheehan@bakerlaw.com

*Attorneys for Irving H. Picard, Trustee for the
substantively consolidated SIPA Liquidation of
Bernard L. Madoff Investment Securities LLC
and the estate of Bernard L. Madoff*