**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee*
*for the substantively consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities LLC*
*and the estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>               Plaintiff-Applicant,<br><br>   v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>               Defendant. | Adv. Pro. No. 08-01789 (SMB)<br><br>SIPA Liquidation<br><br>(Substantively Consolidated) |
| In re:<br>BERNARD L. MADOFF,<br>               Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br>               Plaintiff,<br>   v.<br><br>LIGHTHOUSE INVESTMENT PARTNERS LLC, d/b/a LIGHTHOUSE PARTNERS, LIGHTHOUSE SUPERCASH FUND LIMITED, and LIGHTHOUSE DIVERSIFIED FUND LIMITED,<br><br>               Defendants. | Adv. Pro. No. 11-02762 (SMB)<br><br>**TRUSTEE'S PROFFERED ALLEGATIONS PERTAINING TO THE EXTRATERRITORIALITY ISSUE AS TO DEFENDANT LIGHTHOUSE DIVERSIFIED FUND LIMITED** |

The Trustee, by his undersigned counsel, for his Proffered Allegations Pertaining to the Extraterritoriality Issue as to Defendant Lighthouse Diversified Fund Limited ("Lighthouse Diversified"), states:

## I. INTRODUCTION

1. The Trustee seeks to recover at least $7,913,873, which represents a subsequent transfer of BLMIS customer property made to Defendant Lighthouse Diversified. The BLMIS customer property was transferred from BLMIS to Fairfield Sentry Limited ("Fairfield Sentry"), and subsequently transferred from Fairfield Sentry to Lighthouse Diversified.

2. Lighthouse Diversified was a fund of hedge funds that invested in Fairfield Sentry. Although it was incorporated in the Cayman Islands, Lighthouse Diversified was a shell entity present in the Cayman Islands solely on paper.

3. Lighthouse Diversified maintained a principal place of business in Florida. From its inception, Lighthouse Diversified had no employees. It was created, operated, and controlled entirely from the United States by its Florida-based investment manager, Lighthouse Investment Partners, LLC, d/b/a Lighthouse Partners ("Lighthouse Partners"). Lighthouse Partners is a Delaware limited liability company with Florida headquarters and research offices in New York and Chicago. Lighthouse Diversified shared a Florida address with Lighthouse Partners.

4. Lighthouse Partners organized Lighthouse Diversified in the Cayman Islands to reap the tax advantages associated with establishing an offshore fund.

5. Fairfield Sentry was one of several BLMIS feeder funds ("Feeder Funds")—single-purpose investment funds that pooled their investors' assets to invest with BLMIS, capitalizing on its consistent returns. From November 1990 until Madoff's arrest in December 2008, Fairfield Sentry maintained direct customer accounts with BLMIS in New York.

1

6. As detailed further below, Fairfield Sentry was the largest BLMIS Feeder Fund, and Fairfield Greenwich Group ("FGG"), a *de facto* partnership in New York, created, operated, and controlled Fairfield Sentry.

7. Lighthouse Diversified purposefully invested in Fairfield Sentry to profit from BLMIS in New York. But for BLMIS's fraudulent activities in New York, Lighthouse Diversified would not have received the transfer from Fairfield Sentry.

8. On behalf of Lighthouse Diversified and its other funds, Lighthouse Partners also explored investing in Feeder Funds managed by New York-based Tremont Partners, Inc. ("Tremont"). Upon information and belief, Lighthouse Partners understood that Tremont Feeder Funds were merely another access point to BLMIS in New York.

9. Lighthouse Partners conducted due diligence on Madoff, BLMIS, Fairfield Sentry, and Tremont Feeder Funds on behalf of Lighthouse Diversified. As a result of Lighthouse Partners' due diligence, Lighthouse Diversified knew control over Fairfield Sentry's investments rested entirely with Madoff and BLMIS in New York.

10. The components events of the transactions associated with the transfer at issue were centered in the United States. Lighthouse Diversified was present in the Cayman Islands solely on paper, was operated entirely from the United States by Lighthouse Partners, maintained its principal place of business in the United States, and was a domestic resident. Lighthouse Partners, on behalf of Lighthouse Diversified, utilized its presence in the United States to conduct due diligence on Madoff, BLMIS, and Fairfield Sentry in connection with the transfer at issue. As a result of Lighthouse Partners due diligence, Lighthouse Diversified knew the entire economic purpose of Fairfield Sentry was to deliver money to and profit from BLMIS in New

2

York. Moreover, Fairfield Sentry maintained a principal place of business in New York and was a domestic resident.

## II. LIGHTHOUSE DIVERSIFIED WAS OPERATED ENTIRELY FROM THE UNITED STATES

11. Although incorporated in the Cayman Islands, Lighthouse Diversified was a shell entity present in the Cayman Islands solely on paper. Lighthouse Partners established Lighthouse Diversified in the Cayman Islands to reap the tax benefits associated with organizing an offshore fund.

12. At all relevant times, Lighthouse Diversified's principal place of business was in Florida. From its inception, Lighthouse Diversified had no employees. It was created, operated, and controlled entirely from the United States by its Florida-based investment manager, Lighthouse Partners. Lighthouse Partners, a Delaware limited liability company, maintains a principal place of business in New York along with research offices in New York and Chicago. Lighthouse Diversified shared a Florida address with Lighthouse Partners. As Lighthouse Diversified's investment manager, Lighthouse Partners was authorized and directed to conduct due diligence for Lighthouse Diversified.

13. Lighthouse Partners utilized its presence in the United States to manage Lighthouse Diversified's relationship with New York-based FGG and New York-based Tremont.

14. On behalf of Lighthouse Diversified, Lighthouse Partners worked with FGG's New York-based Jacqueline Harary and Lourdes Barreneche to arrange investments in Fairfield Sentry. Harary and Barreneche were the main FGG representatives responsible for Lighthouse Diversified's investments in Fairfield Sentry and FGG's relationship with Lighthouse Diversified.

3

15. Lighthouse Partners was responsible for requesting and coordinating Lighthouse Diversified's redemptions from Fairfield Sentry. Lighthouse Diversified's Fairfield Sentry redemption confirmations were also directed to Lighthouse Partners' headquarters in Florida.

### III. FROM LIGHTHOUSE PARTNERS' DUE DILIGENCE, LIGHTHOUSE DIVERSIFIED KNEW CONTROL OVER FAIRFIELD SENTRY'S INVESTMENTS RESTED ENTIRELY WITH BLMIS IN NEW YORK

16. As a result of Lighthouse Partners' due diligence on Madoff, BLMIS, Fairfield Sentry, and Tremont, prior to investing in Fairfield Sentry, Lighthouse Diversified knew the following facts:

   a. In reality the investment adviser for Fairfield Sentry was BLMIS in New York.

   b. BLMIS in New York was the executing broker for Fairfield Sentry's investments, and BLMIS in New York purportedly operated and executed Madoff's split-strike conversion strategy ("SSC Strategy") on behalf of Fairfield Sentry.

   c. The SSC Strategy purportedly involved the purchase of U.S. equities, U.S. options, and U.S. Treasurys traded on U.S. exchanges, and the decisions regarding which U.S. securities to purportedly purchase were made by Madoff in New York.

   d. BLMIS in New York had custody of at least 95% of Fairfield Sentry's investments.

   e. BLMIS was a registered U.S. broker-dealer regulated by the SEC.

17. Lighthouse Diversified knew the entire economic purpose of Fairfield Sentry was to deliver money to and profit from BLMIS in New York.

### IV. LIGHTHOUSE DIVERSIFIED UTILIZED A NEW YORK BANK TO TRANSFER FUNDS

18. Lighthouse Diversified utilized a New York bank account to transfer funds to Fairfield Sentry. The subscription agreements Lighthouse Diversified executed in connection with its investments stated that all money from Lighthouse Diversified be directed to a New

York HSBC Bank USA correspondent bank account for ultimate deposit in Fairfield Sentry's bank account. From Fairfield Sentry's bank account, the funds were deposited in BLMIS's account at JPMorgan Chase Bank NA in New York. In connection with subscribing funds to Fairfield Sentry, Lighthouse Diversified directed funds to this New York HSBC Bank USA account.

### V.   FAIRFIELD SENTRY MAINTAINED ITS PRINCIPAL PLACE OF BUSINESS IN NEW YORK

19.  At all relevant times, Fairfield Sentry's principal place of business was in New York and Fairfield Sentry was a U.S. resident.

#### A.   The Genesis of the FGG *De Facto* Partnership

20.  In 1988, Walter Noel and Jeffrey Tucker founded FGG, a *de facto* partnership based in New York City. FGG created, managed, and marketed a variety of investment vehicles, the largest of which were BLMIS Feeder Funds.

21.  The FGG *de facto* partnership included: individual persons; U.S. corporations; foreign corporations; and investment vehicles created, managed, operated, and marketed from FGG's New York headquarters. Among the FGG investment vehicles were the three BLMIS Feeder Funds—Fairfield Sentry, Greenwich Sentry, L.P. ("Greenwich Sentry"), and Greenwich Sentry Partners, L.P.—as well as the so-called currency funds, Fairfield Sigma Limited ("Sigma") and Fairfield Lambda Limited ("Lambda"). Sigma and Lambda received subscriptions in Euros and Swiss Francs respectively, converted the foreign currencies to U.S. dollars, and then invested all of the U.S. dollars in Fairfield Sentry.

22.  FGG also included a number of administrative entities that purportedly provided management and backoffice support to the funds. These entities included: Fairfield Greenwich Limited ("FG Limited"), Fairfield Greenwich (Bermuda), Ltd. ("FG Bermuda"), Fairfield

5

Greenwich Advisors LLC ("FG Advisors"), and Fairfield International Managers, Inc. ("Fairfield International Managers").

### B. Fairfield Sentry

23. On October 30, 1990, FGG founding partners, Noel and Tucker, organized Fairfield Sentry under the International Business Company Act of the Territory of the British Virgin Islands ("BVI"), for the sole purpose of creating a fund to invest with Madoff. Noel and Tucker chose to organize Fairfield Sentry under BVI law in order to avoid U.S. taxation and enjoy tax free status in the BVI. Under BVI statutory law, Fairfield Sentry was prohibited from doing business with other BVI residents except for other entities organized under the International Business Companies Act.

24. Fairfield Sentry was a shell corporation present in the BVI solely on paper. From its inception until its liquidation, Fairfield Sentry had no employees and no office. It was operated almost entirely by FGG personnel based in New York ("FGG New York Personnel"). Its statutorily required registered address in the BVI was a post office box care of a local trust company owned and operated by a local law firm. The same post office box served as the registered address for hundreds of other investment vehicles unrelated to the FGG operations. The law firm operating the trust company and registered post office box addressed its statements for Fairfield Sentry services to FGG's New York headquarters.

25. Fairfield Sentry's operations, structure, agreements, and marketing materials all demonstrate that Fairfield Sentry's principal place of business was in the United States. Fairfield Sentry is currently in liquidation proceedings in the BVI and the United States.

6

### 1. Fairfield Sentry's Agreements with BLMIS Confirm Fairfield Sentry's Principal Place of Business Was in the United States

26. When FGG opened Fairfield Sentry's BLMIS accounts, FGG made it clear Fairfield Sentry was operated from the United States and not the BVI. In November 1990, Tucker executed BLMIS account documents opening Fairfield Sentry's BLMIS account 1FN012 and options account 1FN069. In the account opening documents, Tucker listed Fairfield Sentry's address as the office address of Fairfield International Managers—a company jointly owned by Noel and Tucker—in Greenwich, Connecticut. Further, Tucker directed BLMIS to send all BLMIS account statements, trade confirmations, and correspondence to Fairfield International Managers' offices in Greenwich, Connecticut. In October 1992, Tucker opened a second Fairfield Sentry account at BLMIS, 1FN045, as well as a second options account, 1FN070. BLMIS sent Fairfield Sentry's account statements, trade confirmations, and correspondence for these accounts to the same Greenwich, Connecticut office. On January 29, 1998, FGG notified BLMIS to change Fairfield Sentry's address for all of its BLMIS accounts to FGG's New York headquarters.

27. After the original BLMIS account documents were executed by Tucker on behalf of Fairfield Sentry, FGG partners Tucker, Daniel Lipton, and Mark McKeefry—all located in FGG's New York headquarters—executed additional BLMIS account documents on behalf of Fairfield Sentry including: customer agreements, trade authorizations, options agreements, and Internal Revenue Service forms. In most instances, FGG listed Fairfield Sentry's address on these BLMIS account documents as FGG's New York headquarters.

28. The BLMIS customer agreements covering Fairfield Sentry's BLMIS accounts are governed by New York law and all disputes arising under the agreements must be resolved by mandatory arbitration in New York utilizing the laws of New York. All transactions under

7

Fairfield Sentry's BLMIS customer agreements were subject to the Securities Exchange Act of 1934 and to the rules and regulations of the SEC and Board of Governors of the Federal Reserve System. Every BLMIS trade confirmation received and reviewed by FGG personnel on behalf of Fairfield Sentry identified BLMIS as a U.S. registered broker-dealer and a Securities Investor Protection Corporation ("SIPC") member regulated by the SEC.

### 2. FGG New York Personnel Controlled Fairfield Sentry's Relationship with Various Citco Entities

29. As the original directors of Fairfield Sentry, Noel and Tucker contracted with Citco Fund Services (Europe) B.V. ("Citco Fund Services") to provide Fairfield Sentry with backoffice administrative services such as coordinating subscription and redemption forms, maintaining Know Your Customer information, and serving as the independent party verifying the Net Asset Value of the Fairfield Sentry shares. Noel and Tucker also contracted Citco Global Custody N.V. ("Citco Custody") to nominally serve as the custodian of the Fairfield Sentry assets. In reality, BLMIS was the custodian inasmuch as all of the Fairfield Sentry assets were held in the BLMIS accounts. As a result, Citco Custody entered into a sub-custodian agreement with BLMIS. As a further part of the relationship with Citco Fund Services and Citco Custody, Noel and Tucker also opened bank accounts at Citco Bank Nederland, N.V. Dublin Branch ("Citco Bank Dublin"). FGG New York Personnel had final control of the Fairfield Sentry bank accounts and controlled all of Fairfield Sentry's relationships with the various Citco entities.

### 3. FGG New York Personnel Managed Fairfield Sentry

30. At all relevant times, Fairfield Sentry was operated from FGG's New York headquarters. FGG New York Personnel monitored Fairfield Sentry's investments; managed Fairfield Sentry's relationship with BLMIS, Madoff, clients, and potential clients; created

8

marketing and performance materials for Fairfield Sentry; marketed Fairfield Sentry; performed administrative functions required by Fairfield Sentry; negotiated confidentiality agreements and other service provider contracts on behalf of Fairfield Sentry; directed investments into and out of BLMIS; and conducted various other due diligence and risk management activities. Until Fairfield Sentry's liquidation, FGG maintained Fairfield Sentry's books and records in New York.

31. FGG New York Personnel made and controlled all decisions regarding Fairfield Sentry's assets not invested with BLMIS. FGG New York Personnel also had final control of Fairfield Sentry's banking accounts, including Fairfield Sentry's accounts at Citco Bank Dublin. Even with the Citco entities' various roles, FGG New York Personnel made all ultimate operational decisions regarding Fairfield Sentry. From the outset of Fairfield Sentry's operations, FGG New York Personnel controlled and approved all subscriptions into and redemptions from the fund. From at least January 1, 2002, all Fairfield Sentry subscription agreements contained New York choice of law provisions, and provided for venue and jurisdiction for any disputes in New York.

### 4. Fairfield Sentry's Investors Knew They Were Investing in BLMIS

32. Fairfield Sentry's subscription agreements also incorporated its Private Placement Memoranda ("PPMs") by reference. Each Fairfield Sentry subscriber acknowledged receipt of the PPM. The original or later amended PPM's disclosed to the Fairfield Sentry investors that a minimum of 95% of its assets were: (1) deposited in its accounts at BLMIS in New York; (2) invested by BLMIS, an SEC-registered broker-dealer; (3) traded in accordance with Madoff's SSC Strategy; and (4) through BLMIS invested in U.S. S&P 100 Index securities and options or

short-term U.S. Treasurys. Fairfield Sentry's PPM also disclosed to investors that BLMIS's services were "essential to the continued operation of the Fund."

### 5.    BLMIS Was Fairfield Sentry's Investment Manager

33.    Although FGG attempted to hide its manager, BLMIS served as the investment manager throughout the life of Fairfield Sentry. At the outset, Fairfield Sentry used Information Memoranda to solicit investments in the fund. The Information Memoranda listed Fairfield International Managers as Fairfield Sentry's investment manager for which it was paid a performance fee of 20% of the reported gains in Fairfield Sentry's BLMIS accounts. Despite Fairfield International Managers' reported role, Fairfield Sentry disclosed that all of Fairfield Sentry's assets were in discretionary brokerage accounts operated by BLMIS, which in reality made all of Fairfield Sentry's investment decisions.

34.    In October 1997, Noel and Tucker agreed to merge FGG with Andrés Piedrahita's Littlestone Associates, which was a money management firm also located in New York City. Piedrahita is Noel's son-in-law. With the merger, Littlestone Associates' clients became FGG clients. In order to reflect the new ownership of FGG, Noel, Tucker, and Piedrahita formed FG Limited FG. FG Limited was formed under the laws of Ireland.

35.    While FG Limited was formed under foreign law, it reported its principal place of business as FGG's New York headquarters, registered to do business in the State of New York, and listed its principal executive office as FGG's New York headquarters. Upon the formation of FG Limited, Fairfield International Managers assigned all of its management contracts with Fairfield Sentry and Greenwich Sentry to FG Limited. Following the assignment of the management contracts to FG Limited, FGG New York Personnel revised the Fairfield Sentry Information Memoranda to list FG Limited as Fairfield Sentry's investment manager, even

10

though all of Fairfield Sentry's assets remained in the discretionary brokerage accounts controlled by BLMIS.

36.    In 2002, Noel, Tucker, and others from FGG approached Madoff to inform him FGG would be launching a new fund of funds. The new fund would be open to both U.S. and foreign investors and, as a result, FGG would form a new U.S. entity to be the investment adviser of the fund as well as other FGG operated funds, including the feeder and currency funds. Fearing greater SEC scrutiny, Madoff rejected the idea that a U.S.-based entity would serve in the role as the investment manager of the feeder and currency funds. As a result, FGG formed two new entities, FG Advisors and FG Bermuda.

37.    In October 2003, FGG formed FG Advisors as a Delaware limited liability company. FG Advisors is a wholly owned subsidiary of FG Limited. At the same time, FGG formed FG Bermuda under Bermuda law as another wholly owned subsidiary of FG Limited. Upon the formation of FG Advisors and FG Bermuda, FG Limited assigned certain of its management contracts to both entities, including the investment advisory agreements for the three BLMIS Feeder Funds, Fairfield Sentry, Sigma, Lambda, and Greenwich Sentry, to FG Bermuda. FG Limited remained the placement agent for the same funds.

38.    In 2003, with FG Bermuda's entry into the FGG operations, FGG New York Personnel issued new PPMs which listed FG Bermuda as Fairfield Sentry's investment manager and removed all references to the discretionary accounts at BLMIS. The new PPMs also stated FG Limited would remain as Fairfield Sentry's Placement Agent and receive a portion of the management and performance fees paid to FG Bermuda. The same PPMs also disclosed that Fairfield Sentry would pay a percentage fee to FG Advisors for providing administrative services and incurring administrative costs.

39. Prior to 2006, while FG Bermuda purported to manage Fairfield Sentry's, Sigma's, Lambda's, Greenwich Sentry's, and Greenwich Sentry Partners' investments, it did not register as an investment adviser under the Investment Advisers Act of 1940.

40. In 2005 and 2006, the SEC conducted an investigation of BLMIS and its relationship to its Feeder Funds. While the investigation was ongoing, in an attempt to deflect further SEC inquiry, FG Bermuda registered as an investment adviser under the Investment Advisers Act of 1940. Following FG Bermuda's registration in April 2006, it was required to file Form 13Fs with the SEC that Mark McKeefry, FGG's New York-based general counsel, executed and submitted.

41. After its 2005 and 2006 investigation, the SEC determined that BLMIS, and not FG Bermuda, was the investment manager of Fairfield Sentry. Accordingly, the SEC required Fairfield Sentry to modify its investor communications and PPMs to properly disclose BLMIS as Fairfield Sentry's investment manager for the fund's assets held in the BLMIS accounts.

42. As originally operated, 100% of Fairfield Sentry's assets were in its BLMIS accounts. Beginning in 2003, Fairfield Sentry began investing up to 5% of its assets with other fund managers, all of whom were selected by FGG New York Personnel. FGG organized a number of so-called "seedling funds," with Fairfield Sentry's investment serving as the base. The seedling funds were operated and organized by FGG New York Personnel. Many of the seedling funds, in turn, invested part of their assets back into Fairfield Sentry.

43. The Trustee incorporates by reference the allegations of the Second Amended Complaint proffered in *Picard v. Fairfield Investment Fund, Ltd.*, Adv. Pro. No. 09-01239 (SMB) (Bankr. S.D.N.Y., filed June 26, 2015 as part of the Extraterritoriality Briefing).

12

| | |
|---|---|
| Dated: June 26, 2015<br>New York, New York | /s/ Thomas L. Long<br>**Baker & Hostetler LLP**<br>45 Rockefeller Plaza<br>New York, New York 10111<br>Telephone:  (212) 589-4200<br>Facsimile:  (212) 589-4201<br>David J. Sheehan<br>Thomas L. Long<br><br>**Baker & Hostetler LLP**<br>65 East State Street, Suite 2100<br>Columbus, Ohio 43215<br>Telephone:  (614) 228-1541<br>Facsimile:  (614) 462-2616<br>Lauren M. Hilsheimer<br>Douglas A. Vonderhaar<br><br>*Attorneys for Irving H. Picard, Trustee for the substantively consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the estate of Bernard L. Madoff* |