**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee*
*for the Substantively Consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities LLC*
*and the estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | No. 08-01789 (SMB) |
| Plaintiff-Applicant, | SIPA Liquidation |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC and the estate of Bernard L. Madoff, | Adv. Pro. No. 11-02568 (SMB) |
| Plaintiff, | |
| v. | |
| CATHAY LIFE INSURANCE CO. LTD., | |
| Defendant. | |

**TRUSTEE'S SUPPLEMENTAL**
**MEMORANDUM OF LAW IN OPPOSITION TO**
**CATHAY LIFE INSURANCE CO. LTD.'S MOTION**
**TO DISMISS BASED ON EXTRATERRITORIALITY AND IN FURTHER**
**SUPPORT OF TRUSTEE'S MOTION FOR LEAVE TO AMEND COMPLAINTS**

The Trustee respectfully submits this supplemental memorandum in opposition to Cathay Life Insurance Co. Ltd.'s ("Cathay") motion to dismiss based on extraterritoriality and in further support of his motion for leave to amend his complaint. As set forth below the Trustee's Proffered Allegations Pertaining to the Extraterritoriality Issue as to Cathay ("Cathay Proffer") plead facts evidencing the subsequent transfers received by Cathay and the component events of the transactions are predominantly domestic under the standard set forth in the Extraterritoriality Decision,[1] such that the Trustee's action does not require an extraterritorial application of SIPA or Bankruptcy Code § 550, Cathay's motion to dismiss should be denied, and the Trustee's motion for leave to amend the complaint should be granted.

I.    **BACKGROUND & LEGAL STANDARD**

This Court must determine whether the Trustee's claims against Cathay seek the recovery of "purely foreign" transfers, requiring an extraterritorial application of SIPA and Bankruptcy Code § 550.[2] Under the District Court's ruling, the Trustee must only put forth "specific facts suggesting a domestic transfer" to avoid dismissal.[3] In making this determination, this Court must review the "location of the transfers as well as the component events of those transactions."[4] This is a factual inquiry in which all reasonable inferences are to be drawn in the Trustee's favor.[5]

---

[1] *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*, 513 B.R. 222 (S.D.N.Y. 2014) ("Extraterritoriality Decision").

[2] *Id*.

[3] *Id.* at 232 n.4.

[4] *Id.* at 227 (citing *Maxwell Commc'n Corp. v. Société General (In re Maxwell Commc'n Corp.)*,186 B.R. 807, 816-17 (S.D.N.Y. 1995) ("*Maxwell I*")). In *Maxwell I*, the court examined all potential connections with the United States by reviewing: (i) the debtor's location; (ii) the defendants' location; (iii) where the defendants engaged in business regarding the transaction; (iv) what transaction and agreements the parties entered into that led to the antecedent debt that the transfers were used to pay; (v) where the parties' relationship was centered when conducting the transaction that triggered the transfers; (vi) the law governing the parties' transactions; and (vii) how the transaction was concluded. *Maxwell I*, 186 B.R. at 816–17.

[5] *See, e.g., Anwar v. Fairfield Greenwich Ltd.*, 728 F. Supp. 2d 372, 403–05 (S.D.N.Y. 2010).

1

The Trustee's Cathay Proffer alleges Cathay, a Taiwanese insurance company, received at least $24,496,799 in subsequent transfers of BLMIS customer property from Fairfield Sentry Limited ("Fairfield Sentry"). Cathay Proffer ¶ 1. Fairfield Sentry was one of several BLMIS feeder funds ("Feeder Funds")—single-purpose investment vehicles that pooled their investors' assets to invest with New York-based BLMIS, capitalizing on its consistent returns. *Id.* ¶ 3. The Trustee alleges that Fairfield Sentry withdrew funds from its BLMIS accounts and transferred the funds to Cathay. *Id.* ¶ 1.

Cathay argues that simply because it was formally organized under the laws of Taiwan, and because Fairfield Sentry was formally organized under the law of the Territory of the British Virgin Islands ("BVI"), it is entitled to a finding that those transfers are "purely foreign" and must be dismissed under the Extraterritoriality Decision. Cathay is wrong. Its simplistic reasoning is contrary to the *Maxwell I* "component events" analysis embraced by the District Court in the Extraterritoriality Decision,[6] and is inconsistent with Second Circuit precedent considering the connection among the parties, and the economic and legal realities of the transactions.[7] Cathay ignores that Fairfield Sentry maintained its principal place of business in New York and that Cathay's relationship with Fairfield Sentry was centered in the United States. As set forth below, the component events of the transactions demonstrate the Trustee's recovery claim against Cathay does not require an extraterritorial application of SIPA or Bankruptcy Code § 550.

First, Cathay knew from Fairfield Sentry's Private Placement Memoranda ("PPMs") that control over Fairfield Sentry's investments rested virtually entirely with BLMIS in New York.

---

[6] Extraterritoriality Decision, 513 B.R. at 227; *Maxwell I*, 186 B.R. at 816–17.

[7] *See, e.g., Parkcentral Global Hub Ltd. v. Porsche Auto. Holdings SE*, 763 F.3d 198, 215–17 (2d Cir. 2014) (cautioning lower courts about the problems of narrowly "treating the location of the transaction as the definitive factor in the extraterritoriality inquiry"); *Mastafa v. Chevron Corp.*, 770 F.3d 170, 182 (2d Cir. 2014); *European Cmty. v. RJR Nabisco, Inc.*, 764 F.3d 129, 141 (2d Cir. 2014).

2

Cathay Proffer ¶¶ 6–7.  Second, Cathay executed agreements with Fairfield Sentry and Fairfield Greenwich (Bermuda) Limited ("FG Bermuda"), an administrative entity created, operated, and controlled by FGG, that contained New York choice of law provisions and subjected Cathay to the jurisdiction and venue of the New York courts.  *Id.* ¶¶ 16–19.  Third, Cathay used New York bank accounts to transfer money to and from Fairfield Sentry.  *Id.* ¶ 20.  Fourth, Cathay received the subsequent transfers at issue from Fairfield Sentry whose principal place of business was in New York and who was a domestic resident.  *Id.* ¶¶ 22–23.

## II.     CATHAY'S RELATIONSHIP WITH FAIRFIELD SENTRY WAS CENTERED IN THE UNITED STATES

Cathay purposefully invested in Fairfield Sentry to profit from BLMIS in New York.  Cathay Proffer ¶ 5.  Cathay knew from Fairfield Sentry's PPMs—of which it acknowledged receipt in connection with making its first investment—that BLMIS in New York served as the custodian for Fairfield Sentry, that control of Fairfield Sentry's investments rested entirely with BLMIS in New York, and that there was a possibility BLMIS could misappropriate the assets invested in Fairfield Sentry.  *Id.* ¶¶ 10, 13–14.  Cathay also knew from PPMs that BLMIS purportedly invested Fairfield Sentry's assets in U.S. equities, U.S. options, and U.S. Treasury Bills.  *Id.* ¶ 12.  Cathay therefore made subscriptions into Fairfield Sentry with the intent to invest in the U.S. market.  *Id.* ¶ 7.

Cathay agreed to be bound by New York law and subject to the New York courts in recognition of the U.S.-based nature of the transactions.  By executing a Fairfield Sentry subscription agreement, Cathay agreed that New York law and jurisdiction of New York courts would apply to its relationship with Fairfield Sentry.  *Id.* ¶¶ 16–17.  Cathay also entered into a confidentiality agreement with FG Bermuda, enabling Cathay to receive confidential Fairfield

3

Sentry marketing and due diligence materials related to its investments in Fairfield Sentry. *Id.* ¶ 18. This confidentiality agreement was also governed by New York law. *Id.* ¶ 19.

Cathay also used New York bank accounts to transfer funds to and from Fairfield Sentry. *Id.* ¶ 20. When Cathay subscribed funds to Fairfield Sentry, those funds flowed through a New York HSBC Bank USA correspondent bank account for ultimate deposit in Fairfield Sentry's bank account. *Id.* ¶ 21. From Fairfield Sentry's bank account, the funds were deposited in BLMIS's account at JPMorgan Chase Bank NA ("JPMorgan") in New York. *Id.* Cathay used a JPMorgan account in New York to receive transfers from Fairfield Sentry. *Id.* ¶ 22.

### III. FAIRFIELD SENTRY MAINTAINED ITS PRINCIPAL PLACE OF BUSINESS IN NEW YORK

Fairfield Sentry maintained its principal place of business in New York and was a U.S. resident. In 1988, Walter Noel and Jeffrey Tucker founded the Fairfield Greenwich Group ("FGG"), a New York-based *de facto* partnership. Cathay Proffer ¶ 24. Through FGG, Noel and Tucker organized BLMIS Feeder Fund Fairfield Sentry. *Id.* ¶¶ 27–28.

Noel and Tucker formally organized Fairfield Sentry as an international business company under BVI law. *Id.* ¶ 27. As an international business company, BVI law restricted Fairfield Sentry from doing business with other BVI citizens and residents except with other BVI international business companies. *Id.* Fairfield Sentry was a shell corporation present in the BVI solely on paper. *Id.* ¶ 28. Its BVI statutorily required registered address was a post office box care of a local trust company owned and operated by a local law firm. *Id.*

From its inception until its liquidation in 2009, Fairfield Sentry had no employees and no offices. *Id.* At all relevant times, Fairfield Sentry was operated almost entirely by FGG's New York City headquarters personnel who maintained final control of Fairfield Sentry's bank accounts and relationships with Fairfield Sentry's back office service providers. *Id.*

4

Beginning in 1990, Tucker opened Fairfield Sentry's BLMIS accounts. *Id.* ¶ 30. In the account opening documents, Tucker listed a U.S. mailing address for Fairfield Sentry and directed BLMIS to send Fairfield Sentry's monthly account statements, trade confirmations, and correspondence to the same U.S. address. *Id.* In January 1998, FGG requested BLMIS to send all Fairfield Sentry account information to FGG's New York City headquarters. *Id.*

From Fairfield Sentry's inception, FGG personnel at its New York City headquarters controlled the sales and subscriptions of the fund's shares. *Id.* ¶ 35. From at least January 1, 2002, all Fairfield Sentry subscription agreements contained New York choice of law provisions, and provided for venue and jurisdiction for any disputes in New York. *Id.*

At all relevant times, FGG New York City headquarters personnel monitored Fairfield Sentry's investments; managed the relationships with BLMIS; directed investments into and out of BLMIS; marketed Fairfield Sentry; approved all subscriptions for Fairfield Sentry shares; maintained all of Fairfield Sentry's books and records at the FGG New York City headquarters; and made all strategic and operational decisions regarding Fairfield Sentry. *Id.* ¶¶ 34–35.

## IV. <u>CONCLUSION</u>

For the foregoing reasons and those stated in the Trustee's Main Brief, this Court should deny Cathay's motion to dismiss and grant the Trustee's motion for leave to amend.

5

Dated: June 26, 2015  
      New York, New York

/s/ Thomas L. Long  
**Baker & Hostetler LLP**  
45 Rockefeller Plaza  
New York, New York 10111  
Telephone: (212) 589-4200  
Facsimile: (212) 589-4201  
David J. Sheehan  
Thomas L. Long

**Baker & Hostetler LLP**  
Capital Square  
65 E. State St., Suite 2100  
Columbus, Ohio 43215-4260  
Telephone: (614) 228-1541  
Facsimile: (614) 462-2616  
Lauren M. Hilsheimer  
Damon M. Durbin  
Justin J. Joyce

*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and estate of Bernard L. Madoff*