BAKER & HOSTETLER LLP
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee for the*
*Substantively Consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities LLC*
*and the Estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, <br><br> Plaintiff-Applicant, <br><br> v. <br><br> BERNARD L. MADOFF INVESTMENT SECURITIES LLC, <br><br> Defendant. | Adv. Pro. No. 08-01789 (SMB) <br><br> SIPA Liquidation <br><br> (Substantively Consolidated) |
| In re: <br><br> BERNARD L. MADOFF, <br><br> Debtor. | **TRUSTEE'S SUPPLEMENTAL MEMORANDUM OF LAW IN OPPOSITION TO BANCA CARIGE S.P.A.'S MOTION TO DISMISS BASED ON EXTRATERRITORIALITY AND IN FURTHER SUPPORT OF THE TRUSTEE'S MOTION FOR LEAVE TO AMEND THE COMPLAINT** |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, <br><br> Plaintiff, <br><br> v. <br><br> BANCA CARIGE S.P.A., <br><br> Defendant. | Adv. Pro. No. 11-02570 (SMB) |

The Trustee respectfully submits this memorandum as a supplement to his Main Brief being filed simultaneously herewith in opposition to the motion to dismiss based on extraterritoriality made by defendant Banca Carige S.P.A. ("Carige") and in further support of the Trustee's motion for leave to amend his Complaint.

## BACKGROUND

Carige is a highly sophisticated, full-service bank and the parent company of Gruppo Banca Carige, a conglomerate including over a dozen major subsidiaries that provide a wide range of financial services. (Proffered Allegations at ¶ 3.) Carige was shareholder in Fairfield Sentry Limited ("Fairfield Sentry"), which invested substantially all of its assets with BLMIS. (Trustee's Complaint at ¶ 2; *id.* at Ex. C.). Carige received a subsequent transfer of $10,532,489 in BLMIS customer property from Fairfield Sentry (the "Transfer"). (*Id.*) The Trustee's Proffered Allegations demonstrate that the Trustee's action to recover this Transfer does not require an extraterritorial application of SIPA or Bankruptcy Code Section 550.

### THE TRANSFER AND COMPONENT EVENTS OF CARIGE'S FAIRFIELD SENTRY TRANSACTIONS WERE PREDOMINANTLY DOMESTIC

Citing to *Maxwell I*, the District Court directed that "the location of the transfers as well as the component events of those transactions"[1] must be used to determine whether a subsequent transfer claim involves a domestic or extraterritorial application of the Code and SIPA.[2] Under the District Court's ruling, the Trustee need only put forth "specific facts suggesting a domestic

---

[1] Extraterritoriality Decision, 513 B.R. at 227 (citing *Maxwell I*, 186 B.R. at 816).

[2] In *Maxwell I*, the court examined all potential connections with the United States by reviewing: (i) the debtor's location; (ii) the defendants' location; (iii) where the defendants engaged in business regarding the transaction; (iv) what transaction and agreements the parties entered into that led to the antecedent debt that the transfers were used to pay; (v) where the parties' relationship was centered when conducting the transaction that triggered the transfers; (vi) the law governing the parties' transactions; and (vii) how the transaction was concluded. *In re Maxwell Commc'n Corp.*, 186 B.R. 807, 816-17 (S.D.N.Y. 1995).

transfer" to avoid dismissal.[3]  This is a fact-based inquiry in which all reasonable inferences

should be drawn in the Trustee's favor.[4]

Carige argues that simply because it and Fairfield Sentry were formally organized under

the laws of foreign countries, the subsequent transfer it received is "purely foreign" and the

Trustee's recovery action must be dismissed.  This superficial argument disregards the *Maxwell I*

analysis directed by the District Court and is inconsistent with Second Circuit extraterritoriality

case law that similarly examines a transaction's various connections to the United States.[5]

Based on the facts set forth in the Proffered Allegations, there is no basis for dismissing

this case on the grounds of extraterritoriality.  The Transfer and component events of Carige's

transactions with Fairfield Sentry were predominantly domestic.

To begin with, the entire purpose of Carige's investment with Fairfield Sentry was to

invest in the U.S. securities markets through New York-based investment adviser BLMIS, and to

earn returns on that U.S.-based investment.  Specifically, Carige entered into a subscription

agreement with Fairfield Sentry and affirmed that it knew (i) Fairfield Sentry invested almost

exclusively with a New York-based, SEC-registered investment adviser (i.e. BLMIS) that

invested in the U.S. securities market, and (ii) Carige's money would be transferred to that same

investment adviser in New York.  (Proffered Allegations at ¶¶ 7-8.)  As Judge Lifland concluded

in a similar matter, "[t]he movement of money to and from BLMIS in the United States . . . was

---

[3] Extraterritoriality Decision, 513 B.R. at 232 n.4.

[4] *See*, *e.g.*, *Anwar v. Fairfield Greenwich, Ltd.*, 728 F. Supp. 2d 372, 402-03 (S.D.N.Y. 2010)
(deferring ruling on extraterritoriality at motion to dismiss phase and citing standard that "[t]he
court must accept all well-pleaded factual allegations in the complaint as true, and draw all
reasonable inferences in the plaintiff's favor.").

[5] *See, e.g., Parkcentral Global Hub Ltd. v. Porsche Auto. Holdings SE*, 763 F.3d 198, 217 (2d
Cir. 2014); *European Cmty. v. RJR Nabisco, Inc.*, 764 F.3d 129, 141 (2d Cir. 2014); and other
cases cited in the Trustee's Main Brief.

not fortuitous or incidental; instead, it was 'the ultimate objective' and the '*raison d'etre*' of the

Agreement between" the investor and the feeder fund.[6]

The express provisions of its agreement with Fairfield Sentry further demonstrate the

domestic nature of Carige's investment transactions with Fairfield Sentry.  Carige agreed in its

subscription agreement with Fairfield Sentry that New York law would govern its investment in

Fairfield Sentry, and it consented to U.S. jurisdiction.  (Proffered Allegations at ¶ 10.)  Thus,

Carige had every expectation that U.S. laws would apply to its investment transactions and that it

would be subject to suit in the United States.

Carige also purposefully used its own U.S. bank account and the U.S. banking system in

connection with its subscription into and Transfer from Fairfield Sentry.  Specifically, in both its

subscription agreement and redemption documents, Carige designated a bank account in its own

name at Wachovia Bank in New York for remitting its subscription to, and receiving its Transfer

from, Fairfield Sentry.  (*Id.* at ¶¶ 12-13.)  Carige also remitted its subscription into a U.S.

correspondent account at the direction of Fairfield Sentry, which funds were then ultimately

delivered to BLMIS in New York.  (*Id*. at ¶ 14.)

Beyond all of the above domestic components, Carige's argument that its transactions are

"purely foreign" is wrong because it ignores the reality of Fairfield Sentry, from which it

received the Transfer.  Fairfield Greenwich Group ("FGG") in New York created, managed, and

controlled Fairfield Sentry.  (*Id.* at ¶ 15.)  Fairfield Sentry was based out of New York and had

its principal place of business in New York.  (*Id.*)  Although technically registered in the BVI,

Fairfield Sentry had no employees or offices there, and at all times, operational decisions were

---

[6] *Picard v. Bureau of Labor Ins. (In re BLMIS)*, 480 B.R. 501, 513 (Bankr. S.D.N.Y. 2012).

made by FGG employees in New York.[7] (Proffered Allegations at ¶¶ 20, 26-27.)  In its BLMIS

account opening documents, FGG listed Fairfield Sentry's address as in the United States.  (*Id.* at

¶ 23.)  Fairfield Sentry's initial and on-going due diligence on BLMIS was conducted in New

York, and the operative legal documents for its BLMIS accounts were governed by New York

law.  (*Id.* at ¶¶ 24, 26.)  BLMIS in New York served as Fairfield Sentry's investment manager

and implemented the split-strike conversion strategy for Fairfield Sentry.  (*Id.* at ¶¶ 8, 37.)

### CONCLUSION

For the forgoing reasons and those stated in the Trustee's Main Brief, Carige's motion to

dismiss should be denied, and the Trustee's motion for leave to amend his Complaint should be

granted.

Dated: June 26, 2015  
      New York, New York

By: /s/ Thomas L. Long
  Baker & Hostetler LLP
  45 Rockefeller Plaza
  New York, New York  10111
  Telephone: (212) 589-4200
  Facsimile: (212) 589-4201
  David J. Sheehan
  Thomas L. Long
  Matthew D. Feil
  Hannah C. Choate

*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Estate of Bernard L. Madoff*

---

[7] *See SEC v. Gruss*, 2012 WL 3306166 at *3 (S.D.N.Y. Aug 13, 2012) (finding that issues of fact existed regarding whether an offshore fund was "foreign" for purposes of extraterritoriality where complaint alleged that operational and investment decisions for the offshore fund were made in New York, "such that for all intents and purposes, the [offshore fund] was based in New York").