**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee*
*for the Substantively Consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities LLC*
*and the estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (SMB) |
| Plaintiff-Applicant, | SIPA Liquidation |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | Adv. Pro. No. 11-02929 (SMB) |
| Plaintiff, | |
| v. | |
| LGT BANK IN LIECHTENSTEIN LTD., | |
| Defendant. | |

**TRUSTEE'S SUPPLEMENTAL MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT LGT BANK IN LIECHTENSTEIN LTD.'S MOTION TO DISMISS BASED ON EXTRATERRITORIALITY AND IN FURTHER SUPPORT OF TRUSTEE'S MOTION FOR LEAVE TO AMEND COMPLAINTS**

The Trustee respectfully submits this supplemental memorandum in opposition to Defendant LGT Bank in Liechtenstein Ltd.'s ("LGT Liechtenstein") motion to dismiss based on extraterritoriality and in further support of the Trustee's motion for leave to amend the complaint.  As set forth below, the Proffered Allegations Pertaining to the Extraterritoriality Issue as to Defendant LGT Liechtenstein ("Proffered Allegations") plead facts evidencing the subsequent transfers received by LGT Liechtenstein are predominantly domestic under the standard set forth in the Extraterritoriality Decision,[1] such that the Trustee's action does not require an extraterritorial application of SIPA or Bankruptcy Code § 550.  LGT Liechtenstein's motion to dismiss should be denied, and the Trustee's motion for leave to amend the complaint should be granted.

I.  **BACKGROUND & LEGAL STANDARD**

This Court must determine whether the Trustee's claims against LGT Liechtenstein seek the recovery of "purely foreign" transfers, requiring an extraterritorial application of SIPA and Bankruptcy Code § 550.[2]  Under the District Court's ruling, the Trustee must only put forth "specific facts suggesting a domestic transfer" to avoid dismissal.[3]  In making this determination, this Court must review the "location of the transfers as well as the component events of those transactions."[4]  This is a factual inquiry in which all reasonable inferences are to be drawn in the

---

[1] *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC* (*In re Madoff Sec.*), 513 B.R. 222 (S.D.N.Y. 2014) ("Extraterritoriality Decision").

[2] *Id*. at 232–33.

[3] *Id.* at 232, n.4.

[4] *Id.* at 227 (citing *In re Maxwell Commc'n Corp. v. Societe General PLC* (*In re Maxwell Commc'n Corp.*), 186 B.R. 807, 817 (S.D.N.Y. 1995) ("*Maxwell I*")).  In *Maxwell I*, the court examined all potential connections with the United States by reviewing: (i) the debtor's location; (ii) the defendants' location; (iii) where the defendants engaged in business regarding the transaction; (iv) what transaction and agreements the parties entered into that led to the antecedent debt that the transfers were used to pay; (v) where the parties' relationship was centered when conducting the transaction that triggered the transfers; (vi) the law governing the parties' transactions; and (vii) how the transaction was concluded.  *Maxwell I*, 186 B.R. at 816–17.

1

Trustee's favor.[5]

The Trustee's Proffered Allegations state that LGT Liechtenstein received at least $10,688,856 in subsequent transfers of BLMIS customer property from Fairfield Sentry Limited ("Fairfield Sentry") and Fairfield Sigma Limited ("Sigma") (collectively, the "Fairfield Funds"). Proffered Allegations ¶ 1. Fairfield Sentry was the largest of many BLMIS feeder funds ("Feeder Funds")—single-purpose investment funds that pooled their investors' assets to invest with BLMIS in New York, capitalizing on its consistent returns. *Id.* ¶ 3. Sigma was a "currency fund," which accepted subscriptions from investors in Euros, converted the money to U.S. Dollars, and then invested 100% of its assets in Fairfield Sentry. *Id.* Fairfield Greenwich Group ("FGG"), a *de facto* partnership based in New York, created, operated, and controlled Fairfield Sentry and Sigma. *Id.* ¶ 4. The Trustee alleges that Fairfield Sentry withdrew funds from its BLMIS accounts and transferred the funds to LGT Liechtenstein, or to Sigma which transferred the funds to LGT Liechtenstein. *Id.* ¶ 1.

LGT Liechtenstein argues that simply because it is formally organized under the laws of Liechtenstein, and because Fairfield Sentry and Sigma were formally organized under the laws of the Territory of the British Virgin Islands ("BVI"), it is entitled to a finding that the transfers at issue are "purely foreign" and should be dismissed under the Extraterritoriality Decision. LGT Liechtenstein's reasoning is wrong, contrary to the *Maxwell I* "component events" analysis embraced by the District Court in the Extraterritoriality Decision,[6] and inconsistent with Second Circuit precedent considering the economic and legal realities of the transactions.[7] As explained

---

[5] *See, e.g., Anwar v. Fairfield Greenwich Ltd.*, 728 F. Supp. 2d 372, 403–05 (S.D.N.Y. 2010).

[6] Extraterritoriality Decision, 513 B.R. at 227 (citing *Maxwell I*, 186 B.R. at 816–17).

[7] *See, e.g., Mastafa v. Chevron Corp.*, 770 F.3d 170, 182 (2d Cir. 2014); *European Cmty. v. RJR Nabisco, Inc.*, 764 F.3d 129, 141–42 (2d Cir. 2014); *Parkcentral Global Hub Ltd. v. Porsche Auto. Holdings SE*, 763 F.3d 198, 216 (2d Cir. 2014).

2

further below, the Trustee's recovery claims against LGT Liechtenstein do not require an extraterritorial application of SIPA and Bankruptcy Code § 550.

## II. THE TRANSFERS AND COMPONENT EVENTS OF THE TRANSACTIONS WERE PREDOMINANTLY DOMESTIC

First, LGT Liechtenstein purposefully invested in the Fairfield Funds as a means of profiting from BLMIS in New York. Second, LGT Liechtenstein and its New York affiliate conducted due diligence on the Fairfield Funds, BLMIS, and Madoff in New York in connection with its investments. Third, LGT Liechtenstein utilized New York banks to transfer funds to Fairfield Sentry and agreed New York choice of law, jurisdiction, and venue applied in connection with the transactions. Lastly, the Fairfield Funds' principal place of business was in New York.

### A. LGT Liechtenstein's Conduct Put New York at the Center of the Transactions

LGT Liechtenstein purposefully invested in the Fairfield Funds to obtain access to BLMIS in New York and to profit from Madoff's U.S. investment strategy. Proffered Allegations ¶ 5. In connection with its investments in the Fairfield Funds, LGT Liechtenstein received and analyzed the Fairfield Funds' private placement memoranda ("PPMs") which explained that the Fairfield Funds were entirely dependent on BLMIS in New York. *Id.* ¶¶ 13, 17. From the PPMs, LGT Liechtenstein also knew that Madoff executed the split-strike conversion strategy on behalf of the Fairfield Funds through the purported purchase and sale of U.S. S&P 100 Index securities, U.S. options, and U.S. Treasurys traded on U.S. exchanges. *Id.* LGT Liechtenstein intended to benefit from BLMIS's implementation of Madoff's U.S. investment strategy, and relinquished control over investment decisions to Madoff. *Id.* ¶ 10.

LGT Liechtenstein executed Fairfield Sentry subscription agreements in connection with its investments. In these agreements, LGT Liechtenstein agreed to be bound by New York

3

choice of law and submitted to the jurisdiction and venue of the New York courts. *Id.* ¶ 18. LGT Liechtenstein also executed Sigma subscription agreements with similar New York choice of law, jurisdiction, and venue provisions. *Id.* ¶ 19.

By executing the Fairfield Sentry subscription agreements, LGT Liechtenstein also agreed that all money from LGT Liechtenstein be directed to an HSBC Bank, New York bank account for ultimate deposit in Fairfield Sentry's bank account. *Id.* ¶ 21. From Fairfield Sentry's bank account, the funds were deposited in BLMIS's account at JPMorgan Chase Bank NA in New York. *Id.*

LGT Liechtenstein used its affiliate, LGT Capital Partners Ltd. ("LGT Capital"), as its investment manager. *Id.* ¶ 22. Although LGT Capital is based in Switzerland, it maintains an office in New York, which it used to conduct its due diligence on New York-based Fairfield Funds, BLMIS, and Madoff, and shared this due diligence with LGT Liechtenstein. *Id.* ¶¶ 22-23. Additionally, LGT Capital Swiss-based employees traveled to FGG's New York headquarters on multiple occasions and routinely corresponded with FGG's New York personnel as part of their ongoing due diligence. *Id.* ¶ 25.

### B.     Fairfield Sentry and Sigma's Principal Place of Business Was in New York

FGG's founding partners Walter Noel and Jeffrey Tucker formally organized the Fairfield Funds as international business companies under BVI law. *Id.* ¶¶ 33, 54. As international business companies, BVI law restricted the Fairfield Funds from doing business with other BVI citizens and residents except with other BVI international business companies. *Id.* The Fairfield Funds were shell corporations present in the BVI solely on paper. *Id.* ¶¶ 34, 55. Their BVI statutorily required registered address was a post office box care of a local trust company owned and operated by a local law firm. *Id.*

From their inception until their liquidation in 2009, the Fairfield Funds had no employees

4

and no offices. *Id.* At all relevant times, the Fairfield Funds were operated almost entirely by FGG's New York personnel who maintained final control of the Fairfield Funds' bank accounts and relationships with the Fairfield Funds' back office service providers. *Id.* ¶¶ 40–41, 56–57.

Beginning in 1990, Tucker opened Fairfield Sentry's BLMIS accounts. *Id.* ¶ 36. In the account opening documents, Tucker identified Fairfield Sentry's mailing address to FGG-member company Fairfield International Managers, Inc.'s office in Greenwich, Connecticut and directed BLMIS to send Fairfield Sentry's monthly account statements, trade confirmations, and correspondence to the same office. *Id.* In January 1998, FGG requested BLMIS to send all Fairfield Sentry account information to FGG's New York headquarters. *Id.*

From the Fairfield Funds' inception, FGG New York personnel controlled the sales and subscriptions of the funds' shares. *Id.* ¶¶ 40–41, 56–57. From at least January 1, 2002, all Fairfield Sentry subscription agreements contained New York choice of law provisions, and provided for venue and jurisdiction for any disputes in New York. *Id.* ¶ 41.

At all relevant times, FGG New York personnel monitored the Fairfield Funds' investments; managed the relationships with BLMIS; directed investments into and out of BLMIS; marketed the Fairfield Funds; approved all subscriptions for Fairfield Funds shares; maintained all of the Fairfield Funds' books and records at the FGG New York headquarters; and made all strategic and operational decisions regarding the Fairfield Funds. *Id.* ¶¶ 40, 56.

## III. CONCLUSION

For the foregoing reasons and those stated in the Trustee's Main Brief, this Court should deny LGT Liechtenstein's motion to dismiss and grant the Trustee's motion for leave to amend the complaint.

5

| | |
|---|---|
| Dated: June 26, 2015<br>New York, New York | /s/ Thomas L. Long<br>**Baker & Hostetler LLP**<br>45 Rockefeller Plaza<br>New York, New York 10111<br>Telephone: (212) 589-4200<br>Facsimile: (212) 589-4201<br>David J. Sheehan<br>Thomas L. Long<br><br>**Baker & Hostetler LLP**<br>65 East State Street, Suite 2100<br>Columbus, Ohio 43215<br>Telephone: (614) 228-1541<br>Facsimile: (614) 462-2616<br>Lauren M. Hilsheimer<br>Melonia A. Bennett<br><br>*Attorneys for Irving H. Picard, Trustee*<br>*for the Substantively Consolidated SIPA*<br>*Liquidation of Bernard L. Madoff Investment*<br>*Securities LLC and the estate of Bernard L.*<br>*Madoff* |