**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee*
*for the Substantively Consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities LLC*
*and the estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (SMB) |
| Plaintiff-Applicant, | SIPA Liquidation |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | Adv. Pro. No. 12-01002 (SMB) |
| Plaintiff, | |
| v. | |
| THE PUBLIC INSTITUTION FOR SOCIAL SECURITY, | |
| Defendant. | |

**TRUSTEE'S SUPPLEMENTAL MEMORANDUM**
**OF LAW IN OPPOSITION TO DEFENDANT THE**
**PUBLIC INSTITUTION FOR SOCIAL SECURITY'S MOTION**
**TO DISMISS BASED ON EXTRATERRITORIALITY AND IN FURTHER**
<u>**SUPPORT OF TRUSTEE'S MOTION FOR LEAVE TO AMEND COMPLAINTS**</u>

The Trustee respectfully submits this supplemental memorandum in opposition to Defendant The Public Institution for Social Security's ("PIFSS") motion to dismiss based on extraterritoriality and in further support of the Trustee's motion for leave to amend complaints. As set forth below the Proffered Allegations Pertaining to the Extraterritoriality Issue as to PIFSS ("Proffered Allegations") plead facts evidencing the subsequent transfers received by PIFSS are predominantly domestic under the standard set forth in the Extraterritoriality Decision,[1] such that the Trustee's action does not require an extraterritorial application of SIPA or Bankruptcy Code § 550. PIFSS's motion to dismiss should be denied and the Trustee's motion for leave to amend the complaint should be granted.

I.  **BACKGROUND & LEGAL STANDARD**

This Court must make a determination as to whether the Trustee's claims against PIFSS seeking the recovery of BLMIS customer property require an extraterritorial application of SIPA and Bankruptcy Code § 550.[2] Under the District Court's ruling, the Trustee need only put forth "specific facts suggesting a domestic transfer" to avoid dismissal.[3] In making this determination, this Court must review the "location of the transfers as well as the component events of those transactions."[4] This is a factual inquiry in which all reasonable inferences are to be drawn in the Trustee's favor.[5]

The Trustee's Proffered Allegations demonstrates that PIFSS received $30 million of BLMIS customer property in subsequent transfers from Fairfield Sentry Limited ("Fairfield

---

[1] *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC* (*In re Madoff Sec.*), 513 B.R. 222 (S.D.N.Y. 2014) ("Extraterritoriality Decision").

[2] *Id*. at 232–33.

[3] *Id.* at 232, n.4.

[4] *Id.* at 227 (quoting *Maxwell Commc'n Corp. v. Societe General PLC* (*In re Maxwell Commc'n Corp.*), 186 B.R. 807, 817 (S.D.N.Y. 1995) ("*Maxwell I*")).

[5] *See, e.g., Anwar v. Fairfield Greenwich Ltd.*, 728 F. Supp. 2d 372, 403–05 (S.D.N.Y. 2010).

1

Sentry"). Proffered Allegations ¶ 1. Fairfield Sentry was a BLMIS feeder fund—a single-purpose investment fund that pooled its investors' assets to invest with BLMIS in New York, capitalizing on its consistent returns. *Id.* The Trustee alleges that Fairfield Sentry withdrew funds from its BLMIS accounts and transferred those funds to PIFSS. *Id.*

PIFSS argues that because it was organized under the laws of Kuwait, and because Fairfield Sentry was organized under the law of the Territory of the British Virgin Islands ("BVI"), it is entitled to a finding that the transfers it received are "purely foreign" and should be dismissed under the Extraterritoriality Decision. PIFSS is wrong. PIFSS fails to take into account the location of the transfers and that the transactions involved predominantly domestic elements. PIFSS's simplistic reasoning is contrary to the *Maxwell I* "component events" analysis embraced by the District Court in the Extraterritoriality Decision,[6] and Second Circuit precedent considering the connection among the parties, and the economic and legal realities of the transactions.[7] PIFSS used its New York-based agent in connection with its Fairfield Sentry investments. PIFSS invested in Fairfield Sentry to profit from New York-based BLMIS. PIFSS used New York bank accounts to transfer funds. Finally, Fairfield Sentry's principal place of business was in New York. Thus, the Trustee's action does not require an extraterritorial application of SIPA or Bankruptcy Code § 550, and PIFSS's motion to dismiss should be denied.

## II. DOMESTIC ELEMENTS PREDOMINATE PIFSS'S TRANSACTIONS WITH FAIRFIELD SENTRY

### A. PIFSS Utilized Its New York Agent, Wafra Investment Advisory Group, in Connection with Its Fairfield Sentry Investment

PIFSS is the autonomous social security agency of the State of Kuwait, but is

---

[6] Extraterritoriality Decision, 513 B.R. at 227 (citing *Maxwell I*, 186 B.R. at 816–17).

[7] *See, e.g., Mastafa v. Chevron Corp.*, 770 F.3d 170, 182 (2d Cir. 2014); *European Cmty. v. RJR Nabisco, Inc.*, 764 F.3d 129, 141–42 (2d Cir. 2014); *Parkcentral Global Hub Ltd. v. Porsche Auto. Holdings SE*, 763 F.3d 198, 216 (2d Cir. 2014).

2

substantially independent from the Kuwaiti government and operates like a private pension fund. Proffered Allegations ¶ 3. PIFSS operates in New York through its domestic agent and U.S. investment adviser, Wafra Investment Advisory Group ("Wafra"). *Id.* ¶ 4. In 1985, PIFSS's Director General established Wafra in New York to manage PIFSS's U.S. investments and to provide PIFSS with greater access to the U.S. securities markets. *Id.* Wafra is beneficially owned by PIFSS and is a Securities and Exchange Commission-registered investment advisory firm. *Id.* ¶ 7. Wafra is incorporated in Delaware, has its principal executive office in New York City, and is licensed to conduct business in the State of New York. *Id.* ¶¶ 4–5.

In its ordinary course of business, PIFSS specifically targets investments in the United States. *Id.* ¶ 8. Wafra provided investment advisory support to PIFSS with respect to its investments in Fairfield Sentry. *Id.* ¶ 7. As PIFSS's agents, Wafra's representatives met with Fairfield Greenwich Group ("FGG") in New York to conduct due diligence on Fairfield Sentry, Madoff, and BLMIS. *Id.*

### B. PIFSS Purposefully Invested in Fairfield Sentry as a Means of Profiting from BLMIS in New York

PIFSS purposefully invested in Fairfield Sentry as a means of profiting from BLMIS in New York. *Id.* ¶ 8. Prior to investing, Fairfield Sentry required all investors to execute subscription agreements incorporating Fairfield Sentry's offering memorandum by reference. *Id.* ¶ 9. By executing a subscription agreement, Fairfield Sentry investors such as PIFSS warranted that they had read and understood the offering memorandum, had knowledge of the facts and disclosures contained therein, were professional investors, and had the knowledge and expertise in financial matters sufficient to evaluate the risks involved in the investment. *Id.*

PIFSS knew from Fairfield Sentry's offering memoranda that its investments would be managed by BLMIS, and BLMIS retained custody of these assets and held the assets in

3

segregated accounts in New York. *Id.* ¶ 10. PIFSS also knew that BLMIS purportedly invested Fairfield Sentry's assets in U.S. securities, options, and U.S. Treasurys. *Id.* ¶ 10, 31.

Fairfield Sentry's offering memorandum also explained to PIFSS that Fairfield Sentry was created, operated, and controlled from FGG's New York headquarters by member company Fairfield Greenwich Limited ("FG Limited"). *Id.* ¶ 11. FG Limited was registered to conduct business in the State of New York and reported its principal office as in New York. *Id.*

PIFSS utilized New York bank accounts to deliver subscription payments to Fairfield Sentry. *Id.* ¶ 12. The Fairfield Sentry subscription agreements PIFSS executed instructed that all money from PIFSS be directed to correspondent back accounts in New York for ultimate deposit in Fairfield Sentry's account. *Id.* ¶ 13. From Fairfield Sentry's bank account, the funds were deposited in BLMIS's account at JPMorgan Chase Bank NA in New York. *Id.*

PIFSS communicated directly with FGG's New York personnel and invested in Fairfield Sentry as a means of investing with BLMIS in New York. *Id.* ¶ 7, 10. PIFSS ultimately redeemed from Fairfield Sentry not because of concerns specific to Fairfield Sentry and FGG, but due to specific concerns about Madoff and BLMIS's operations in New York. *Id.* ¶¶ 14–17.

### C. Fairfield Sentry's Principal Place of Business Was in New York

In 1988, U.S. citizens and residents, Walter Noel and Jeffrey Tucker, founded FGG, a *de facto* partnership based in New York. *Id.* ¶ 19. As part of FGG, Noel and Tucker organized BLMIS Feeder Fund Fairfield Sentry, as an international business company under BVI law. *Id.* ¶¶ 20, 22. As an international business company, BVI law restricted Fairfield Sentry from doing business with other BVI citizens and residents except with other BVI international business companies. *Id.* ¶ 22. Fairfield Sentry was a shell corporation present in the BVI solely on paper. *Id.* ¶ 23. Its BVI statutorily required registered address was a post office box care of a local trust company owned and operated by a local law firm. *Id.*

4

From its inception until its liquidation in 2009, Fairfield Sentry had no employees and no offices. *Id*. At all relevant times, Fairfield Sentry was operated almost entirely by FGG's New York headquarters personnel who maintained final control of Fairfield Sentry's bank accounts and relationships with Fairfield Sentry's back office service providers. *Id.* ¶¶ 23–26.

From Fairfield Sentry's inception, FGG personnel at its New York headquarters controlled the sales and subscriptions of the funds' shares. *Id.* ¶¶ 29–30. From at least January 1, 2002, all Fairfield Sentry subscription agreements contained New York choice of law provisions, and provided for venue and jurisdiction for any disputes in New York. *Id.* ¶ 30.

At all relevant times, FGG New York personnel: monitored Fairfield Sentry's investments; managed the relationships with BLMIS; directed investments into and out of BLMIS; marketed Fairfield Sentry; approved all subscriptions for Fairfield Sentry shares; maintained all of Fairfield Sentry's books and records at the FGG New York headquarters; and made all strategic and operational decisions regarding Fairfield Sentry. *Id.* ¶ 29.

### III. CONCLUSION

For the foregoing reasons and those stated in the Trustee's Main Brief, this Court should deny PIFSS's motion to dismiss and grant the Trustee's motion for leave to amend the complaint.

| | |
|---|---|
| Dated: June 26, 2015<br>New York, New York | /s/ Thomas L. Long<br>**Baker & Hostetler LLP**<br>45 Rockefeller Plaza<br>New York, New York 10111<br>Telephone: (212) 589-4200<br>Facsimile: (212) 589-4201<br>David J. Sheehan<br>Thomas L. Long<br>Catherine E. Woltering<br><br>**Baker & Hostetler LLP**<br>65 East State Street, Suite 2100<br>Columbus, Ohio 43215<br>Telephone: (614) 228-1541<br>Facsimile: (614) 462-2616<br>Melonia A. Bennett<br><br>*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the estate of Bernard L. Madoff* |

6