**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee
for the substantively consolidated SIPA Liquidation
of Bernard L. Madoff Investment Securities LLC
and the estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (SMB) |
| Plaintiff-Applicant, | SIPA Liquidation |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | Adv. Pro. No. 12-01207 (SMB) |
| Plaintiff, | |
| v. | |
| LLOYDS TSB BANK PLC, | |
| Defendant. | |

**TRUSTEE'S SUPPLEMENTAL MEMORANDUM OF LAW IN
OPPOSITION TO DEFENDANT LLOYDS TSB BANK PLC'S MOTION
TO DISMISS BASED ON EXTRATERRITORIALITY AND IN FURTHER
<u>SUPPORT OF TRUSTEE'S MOTION FOR LEAVE TO AMEND COMPLAINTS</u>**

The Trustee respectfully submits this supplemental memorandum in opposition to Lloyds TSB Bank plc's ("Lloyds") motion to dismiss based upon extraterritoriality and in further support of the Trustee's motion for leave to amend the complaints. As set forth below, the Trustee's Proffered Allegations Pertaining to the Extraterritoriality Issue as to defendant Lloyds ("Proffered Allegations") plead facts evidencing the transfers received by Lloyds are predominantly domestic under the standard set forth in the Extraterritoriality Decision,[1] such that the Trustee's action does not require an extraterritorial application of SIPA or Bankruptcy Code § 550. Lloyds's motion to dismiss should be denied, and the Trustee should be granted leave to amend the complaint.

The Trustee's Proffered Allegations alleges Lloyds received subsequent transfers of BLMIS customer property from Fairfield Sentry Limited ("Fairfield Sentry"), and from Fairfield Sigma Limited ("Sigma," and together with Fairfield Sentry, the "Fairfield Funds"). Proffered Allegations ¶ 1. Fairfield Sentry was a BLMIS feeder funds—single-purpose investment funds that pooled their investors' assets to invest with BLMIS. *Id.* ¶ 3. Fairfield Sentry's sister fund, Sigma, was a currency fund that accepted subscriptions in Euros, converted the money to U.S. Dollars, and then invested 100% of its assets in Fairfield Sentry. *Id.* ¶ 4. Fairfield Sentry withdrew funds from its BLMIS accounts and transferred the funds to Lloyds, and also directed transfers to Sigma which Sigma then transferred to Lloyds. *Id.* ¶¶ 1, 4.

Lloyds argues that because it was organized under the laws of the United Kingdom, and because the Fairfield Funds were organized under the laws of the Territory of the British Virgin Islands ("BVI"), it is entitled to a finding that those transfers are "purely foreign" and must be dismissed under the Extraterritoriality Decision. Lloyds is wrong, and its reasoning is contrary

---

[1] *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.),* 513 B.R. 222 (S.D.N.Y. 2014) ("Extraterritoriality Decision").

1

to the *Maxwell I* "component events" analysis articulated in the Extraterritoriality Decision,[2] as well as with Second Circuit precedent calling for courts to consider the economic and legal realities of the transactions.[3] Lloyds's motion should be denied because: (1) Lloyds purposely invested in feeder funds, including the Fairfield Funds, to profit from Madoff's purported investment in the U.S. securities market; (2) Lloyds's Fairfield Funds investments were managed by its offices in New York and Miami, Florida; (3) Lloyds submitted to New York choice of law, jurisdiction, and venue for its Fairfield Funds investments; (4) Lloyds utilized New York banks in connection with its Fairfield Sentry transactions; and (5) the Fairfield Funds were both operated from their principal place of business in New York.

I. **LLOYDS PURPOSELY INVESTED IN THE FAIRFIELD FUNDS TO PROFIT FROM MADOFF'S PURPORTED INVESTMENT IN THE U.S. SECURITIES MARKET**

Prior to investing in the Fairfield Funds, and based on Lloyds's review of the Fairfield Funds' Private Placement Memoranda ("PPMs"), Lloyds knew the following facts:

- In reality, BLMIS in New York was the Fairfield Funds' investment adviser;
- BLMIS in New York was the Fairfield Funds' custodian;
- BLMIS, a registered broker-dealer, was Fairfield Funds' prime broker;
- New York-based BLMIS implemented Madoff's "split-strike conversion" strategy ("SSC Strategy") purportedly involving the purchase of U.S. equities traded on U.S. exchanges, options, and U.S. Treasury bills on behalf of the Fairfield Funds; and
- Madoff made all investment decisions with respect to the Fairfield Funds' investments with BLMIS.

Proffered Allegations ¶ 7.

In addition to its investments in the Fairfield Funds, and while not at issue in the current

---

[2] Extraterritoriality Decision, at 227 (citing *Maxwell Commc'n Corp. v. Société General (In re Maxwell Commc'n Corp.)* 186 B.R. 807, 816–17 (S.D.N.Y. 1995) ("*Maxwell I*")).

[3] *See, e.g., Mastafa v. Chevron Corp.,* 770 F.3d 170, 182 (2d Cir. 2014); *European Cmty. v. RJR Nabisco, Inc.,* 764 F.3d 129, 141–42 (2d Cir. 2014); *Parkcentral Global Hub Ltd. v. Porsche Auto. Holdings SE*, 763 F.3d 198, 216–17 (2d Cir. 2014).

2

action, Lloyds also sought out additional opportunities to profit from Madoff, including investing in BLMIS feeder funds operated by Delaware incorporated and New York-based Access International Advisors LLC. *Id.* ¶ 10. At all relevant times, Lloyds's knowingly directed its investments to the BLMIS feeder funds because they provided access to BLMIS. *Id.* ¶ 9.

## II. LLOYDS'S NEW YORK AND MIAMI OFFICES MANAGED ITS GLOBAL RELATIONSHIP WITH, AND INVESTMENTS IN, THE FAIRFIELD FUNDS

Defendant Lloyds's U.S. offices in Miami, Florida ("Miami Office") and New York, New York ("New York Office") precipitated and managed the transactions with Fairfield Sentry. Proffered Allegations ¶¶ 13–14. The Miami and New York Offices served as the "hub" for Lloyds's Americas business, which included its decades-long relationship with Fairfield Sentry and New York-based Fairfield Greenwich Group ("FGG"), a *de facto* partnership based in New York that created, operated, and controlled Fairfield Sentry and Sigma. *Id.* ¶¶ 5, 16. FGG's Lourdes Barreneche managed Lloyds's relationship with FGG from FGG's principal place of business in New York. *Id.* ¶ 15. Lloyds's Miami and New York Offices conducted due diligence on, executed subscription agreements for, and directed redemptions from Fairfield Sentry. *Id.* ¶ 17.

Lloyds's attended due diligence meetings with FGG in Miami and New York, gathering information on the Fairfield Funds, Madoff, and BLMIS that was subsequently shared with Lloyds's Geneva, Switzerland office ("Geneva Office"). *Id.* ¶ 18. Lloyds's Miami and New York Offices worked with Lloyds's Geneva Office in connection with investments Lloyds made in the Fairfield Funds through its Geneva Office. *Id.* ¶ 22. For purposes of its BLMIS investments through the Feeder Funds, Lloyds functioned as a single global unit. *Id.* ¶ 18.

## III. LLOYDS SUBMITTED TO NEW YORK CHOICE OF LAW, JURISDICTION, AND VENUE, AND UTILIZED U.S. BANKS

As a result of its due diligence on the Fairfield Funds, BLMIS, and Madoff, the Miami

3

Office executed at least eight Fairfield Sentry subscription agreements in which Lloyds agreed its investments in Fairfield Sentry would be subject to New York law, jurisdiction, and venue. Proffered Allegations ¶¶ 24–27.

In these subscription agreements and subsequent redemption requests for Fairfield Sentry, Lloyds directed all transfers to and from Fairfield Sentry were to be made to an account at the State Street Bank & Trust in Boston held in the name of "Lloyds TSB Bank Miami," and a Bank of America New York account held by "Lloyds TSB Bank plc Miami Sec. Dept." *Id.* ¶¶ 31–33. Similarly, Citco Global Custody N.V. ("Citco Global") executed Fairfield Sentry subscription agreements on behalf of Lloyds's Geneva Office in which Lloyds agreed to the same New York choice of law and venue provisions. *Id.* ¶ 27. In connection with these subscription agreements, Lloyds Geneva Office directed all future redemption payments to a New York HSBC Bank USA correspondent account. *Id.* ¶ 34. Through its Geneva Office, Lloyds also invested in Sigma. *Id.* ¶ 28. Pursuant to Sigma's PPM, Lloyds agreed that its Sigma investment would be governed by New York law, jurisdiction, and venue. *Id.*

All Fairfield Sentry subscription payments from Lloyds to Fairfield Sentry flowed through an account at New York HSBC Bank USA and/or Republic National Bank of New York for ultimate deposit in Fairfield Sentry's bank account, and then to BLMIS's account at JPMorgan Chase NA in New York. *Id.* ¶ 30.

IV.  **THE FAIRFIELD FUNDS HAD A PRINCIPAL PLACE OF BUSINESS IN NEW YORK WHERE FGG OPERATED AND CONTROLLED THEM**

In 1988, U.S. citizens and residents, Walter Noel and Jeffrey Tucker, founded FGG. Proffered Allegations at ¶¶ 5, 36. As part of FGG, Noel and Tucker incorporated Fairfield International Managers, Inc. ("Fairfield International Managers") under Delaware law. *Id.* ¶ 42. Through Fairfield International Managers, Noel and Tucker organized the largest Feeder Fund,

4

Fairfield Sentry, as well as Sigma. *Id.* ¶¶ 5, 42.

Noel and Tucker formally organized the Fairfield Funds as international business companies under BVI law. *Id.* ¶¶ 39, 60. As international business companies, BVI law restricted the Fairfield Funds from doing business with other BVI citizens and residents except with other BVI international business companies. *Id.* The Fairfield Funds were shell corporations present in the BVI solely on paper. *Id.* ¶¶ 40, 61. Their BVI statutorily required registered address was a post office box care of a local trust company. *Id.*

From inception until their liquidation in 2009, the Fairfield Funds had no employees and no offices. *Id.* At all relevant times, the Fairfield Funds were operated almost entirely by FGG's New York personnel who maintained final control of the Fairfield Funds' bank accounts and relationships with the Fairfield Funds' back office service providers. *Id.* ¶¶ 45–47, 62–64. From the Fairfield Funds' inception, FGG personnel at its New York City headquarters controlled the sales and subscriptions of the funds' shares. *Id.* From at least January 1, 2002, all Fairfield Sentry subscription agreements contained New York choice of law provisions, and provided for venue and jurisdiction for any disputes in New York. *Id.* ¶ 47.

At all relevant times, FGG's New York City headquarters personnel monitored the Fairfield Funds' investments; managed the relationships with BLMIS; directed investments into and out of BLMIS as well as into and out of Fairfield Sentry; marketed the Fairfield Funds; approved all subscriptions for Fairfield Funds shares; maintained all of the Fairfield Funds' books and records at the FGG New York City headquarters; and made all strategic and operational decisions regarding the Fairfield Funds. ¶¶ 45–47, 62–64.

## V.  CONCLUSION

For the foregoing reasons and those stated in the Trustee's Main Brief, this Court should grant the Trustee's motion for leave to amend and deny Lloyds's motion to dismiss.

5

| | |
|---|---|
| Dated: June 26, 2015<br>New York, New York | /s/ Thomas L. Long<br>**Baker & Hostetler LLP**<br>45 Rockefeller Plaza<br>New York, New York 10111<br>Telephone: (212) 589-4200<br>Facsimile: (212) 589-4201<br>David J. Sheehan<br>Thomas L. Long<br>Catherine E. Woltering<br><br>**Baker & Hostetler LLP**<br>65 East State Street, Suite 2100<br>Columbus, Ohio 43215<br>Telephone: (614) 228-1541<br>Facsimile: (614) 462-2616<br>Brian R. Noethlich<br><br>*Attorneys for Irving H. Picard, Trustee*<br>*for the substantively consolidated SIPA*<br>*Liquidation of Bernard L. Madoff Investment*<br>*Securities LLC and the estate of Bernard L.*<br>*Madoff* |