**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee
for the Substantively Consolidated SIPA Liquidation
of Bernard L. Madoff Investment Securities LLC
and the estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (SMB) |
| Plaintiff-Applicant, | SIPA Liquidation |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | Adv. Pro. No. 12-01002 (SMB) |
| Plaintiff, | |
| v. | **TRUSTEE'S PROFFERED ALLEGATIONS PERTAINING TO THE EXTRATERRITORIALITY ISSUE AS TO DEFENDANT THE PUBLIC INSTITUTION FOR SOCIAL SECURITY** |
| THE PUBLIC INSTITUTION FOR SOCIAL SECURITY, | |
| Defendant. | |

The Trustee, by his undersigned counsel, for his Proffered Allegations Pertaining to the Extraterritoriality Issue as to Defendant The Public Institution for Social Security ("PIFSS"), states:

1. The Trustee seeks to recover from PIFSS at least $30 million in subsequent transfers of BLMIS customer property made to PIFSS by Fairfield Sentry Limited ("Fairfield Sentry"), a BLMIS feeder fund—a single-purpose investment fund that pooled its investors' assets to invest with BLMIS in New York, capitalizing on its consistent returns.

2. Although incorporated in the Territory of the British Virgin Islands ("BVI"), Fairfield Sentry was a shell corporation present in the BVI only on paper. Fairfield Sentry had no employees and no offices in the BVI. Fairfield Greenwich Group ("FGG"), a *de facto* partnership based in New York, created, operated, and controlled Fairfield Sentry.

3. PIFSS is an autonomous agency of the State of Kuwait responsible for investing the assets of the Kuwaiti social security system. PIFSS operates independently from the Kuwaiti government.

## I. PIFSS'S TRANSACTIONS WITH FAIRFIELD SENTRY WERE CENTERED IN NEW YORK

### A. PIFSS Established a Subsidiary in New York To Manage Its Investments in the United States, Including Its Investments in Fairfield Sentry

4. In 1985, PIFSS's Director General Al-Rajaan established Wafra Investment Advisory Group, Inc. ("Wafra"), a New York company incorporated under the laws of Delaware and registered as a Securities and Exchange Commission ("SEC") investment adviser. PIFSS created Wafra in New York for the purpose of managing PIFSS's investments in the United States and to provide PIFSS with increased access to the U.S. securities market.

5. Wafra is registered to conduct business in the State of New York, where it lists its principal executive office as 767 Fifth Avenue, New York, New York 10020.

1

6.Wafra and PIFSS share executive-level personnel. After creating Wafra, Al-Rajaan served as PIFSS's Director General for over 20 years and currently serves as Wafra's chairman. Additionally, Wafra's Chief Investment Officer, Fawaz Al-Mubaraki, began his career at PIFSS before moving to New York to work for Wafra as its Chief Investment Officer, Executive Vice President, and Head of the Alternative Investments Division.

7.Wafra is beneficially owned by PIFSS, with PIFSS owning 95.5% of Wafra Investment Corporation, a holding company that in turn owns 100% of Wafra. At all pertinent times, Wafra functioned as PIFSS's agent for purposes of its U.S. investments, including meeting with FGG representatives in New York on PIFSS's behalf to conduct due diligence on Fairfield Sentry, Madoff, and BLMIS.

**B.PIFSS Purposefully Invested in Fairfield Sentry as a Means of Profiting from the U.S. Securities Market Through BLMIS in New York**

8.PIFSS knowingly engaged in investment transactions with Fairfield Sentry to profit from investment activities that were to take place entirely in the U.S. securities market through BLMIS. The documents governing PIFSS's transactions with Fairfield Sentry clearly stated that BLMIS in New York would be the investment adviser, broker, and custodian for those investments, and that the investments would be in U.S. S&P 100 Index securities, options, and U.S. Treasurys.

9.Fairfield Sentry required all its investors, such as PIFSS, to execute a subscription agreement incorporating Fairfield Sentry's offering memorandum by reference. By executing a subscription agreement, PIFSS warranted that it read and understood the Fairfield Sentry offering memorandum, had knowledge of the facts and disclosures contained therein, was a professional investor, and had the knowledge and expertise in financial matters sufficient to evaluate the risks involved in the investment.

2

10. From the offering memoranda, among other things PIFSS knew in connection with its investment in Fairfield Sentry the following facts:

- Fairfield Sentry invested virtually all its assets in Madoff's split-strike conversion investment strategy ("SSC Strategy");

- As Fairfield Sentry's investment adviser, Madoff purportedly executed and controlled the SSC Strategy in New York;

- BLMIS in New York purportedly determined which shares of U.S.-based companies on the S&P 100 Index to purchase;

- BLMIS in New York purportedly determined the timing of the purchase and sale of the S&P 100 Index securities;

- BLMIS purportedly invested Fairfield Sentry's funds in U.S. Treasurys when they were not invested in U.S. S&P 100 Index securities;

- BLMIS was a U.S. registered broker-dealer;

- BLMIS in New York maintained custody of Fairfield Sentry's assets invested in the SSC Strategy; and

- BLMIS claimed it held Fairfield Sentry's assets in segregated accounts in New York.

11. At the time of PIFSS's subscriptions, Fairfield Sentry's offering memorandum explained Fairfield Sentry was managed from FGG's New York headquarters by FGG member company Fairfield Greenwich Limited ("FG Limited"). FG Limited was the cornerstone of the FGG *de facto* partnership, which was registered to conduct business in the State of New York and listed its principal executive office as FGG's New York headquarters.

### C. PIFSS Used New York Bank Accounts to Transfer Funds

12. PIFSS used New York bank accounts to transfer funds to Fairfield Sentry.

13. PIFSS executed subscription agreements in connection with its investments in Fairfield Sentry. These agreements required that all money from PIFSS for the purchase of Fairfield Sentry shares be directed to a Republic National Bank of New York or New York

3

HSBC Bank USA correspondent bank accounts for ultimate deposit in Fairfield Sentry's bank account. From Fairfield Sentry's bank account, the funds were deposited in BLMIS's account at JPMorgan Chase Bank NA in New York. In connection with subscribing funds to Fairfield Sentry, PIFSS directed funds to these correspondent bank accounts on at least eleven occasions.

### D.   PIFSS Ultimately Redeemed from Fairfield Sentry because of Concerns about BLMIS's Operations in New York

14.   PIFSS ultimately redeemed from Fairfield Sentry, not because of concerns specific to Fairfield Sentry and FGG, but rather due to operational concerns about its ultimate investment with Madoff and BLMIS in New York.

15.   During a November 2003 due diligence meeting with its New York-based FGG representative Gregory Bowes, PIFSS raised concerns about the investment industry's suspicions about BLMIS, questioning Bowes about the "constant swirl of rumors surrounding Madoff."

16.   PIFSS explained to Bowes it was contemplating a large redemption from Fairfield Sentry because of these specific "rumors" and concerns about Madoff and BLMIS's operations in New York.

17.   The following month, in December 2003, PIFSS submitted a Fairfield Sentry redemption request.

### E.   Fairfield Sentry's Principal Place of Business Was in New York

18.   At all relevant times, Fairfield Sentry's principal place of business was in New York and Fairfield Sentry was a U.S. resident.

#### 1.   The Genesis of the Fairfield Greenwich Group *De Facto* Partnership

19.   In 1988, Walter Noel and Jeffrey Tucker founded *de facto* partnership FGG based in New York City. FGG created, managed, and marketed a variety of investment vehicles, the largest of which were BLMIS feeder funds.

4

20. The FGG *de facto* partnership included: individual persons; U.S. corporations; foreign corporations; and investment vehicles created, managed, operated, and marketed from FGG's New York headquarters. Among the FGG investment vehicles were the three BLMIS feeder funds—Fairfield Sentry, Greenwich Sentry, L.P. ("Greenwich Sentry"), and Greenwich Sentry Partners, L.P.—as well as the so-called currency funds, Fairfield Sigma Limited ("Sigma") and Fairfield Lambda Limited ("Lambda"). Sigma and Lambda received subscriptions in Euros and Swiss Francs respectively, converted the foreign currencies to U.S. dollars, and then invested all of the U.S. dollars in Fairfield Sentry.

21. FGG also included a number of administrative entities that purportedly provided management and backoffice support to the funds. These entities included: FG Limited, Fairfield Greenwich (Bermuda), Ltd. ("FG Bermuda"), Fairfield Greenwich Advisors LLC ("FG Advisors"), and Fairfield International Managers, Inc. ("Fairfield International Managers").

### 2. Fairfield Sentry

22. On October 30, 1990, FGG founding partners, Noel and Tucker, organized Fairfield Sentry under the International Business Company Act of the BVI, for the sole purpose of creating a fund to invest with Madoff. Noel and Tucker chose to organize Fairfield Sentry under BVI law in order to avoid U.S. taxation and enjoy tax free status in the BVI. Under BVI statutory law, Fairfield Sentry was prohibited from doing business with other BVI residents except for other entities organized under the International Business Companies Act.

23. Fairfield Sentry was a shell corporation present in the BVI solely on paper. From its inception until its liquidation, Fairfield Sentry had no employees and no office. It was operated almost entirely by FGG personnel based in New York ("FGG New York Personnel"). Its statutorily required registered address in the BVI was a post office box care of a local trust company owned and operated by a local law firm. The same post office box served as the

5

registered address for hundreds of other investment vehicles unrelated to the FGG operations. The law firm operating the trust company and registered post office box addressed its statements for Fairfield Sentry services to FGG's New York headquarters.

24. Fairfield Sentry's operations, structure, agreements, and marketing materials all demonstrate that Fairfield Sentry's principal place of business was in the United States. Fairfield Sentry is currently in liquidation proceedings in the BVI and the United States.

### a. *Fairfield Sentry's Agreements with BLMIS Confirm Fairfield Sentry's Principal Place of Business Was in the United States*

25. When FGG opened Fairfield Sentry's BLMIS accounts, FGG made it clear Fairfield Sentry was operated from the United States and not the BVI. In November 1990, Tucker executed BLMIS account documents opening Fairfield Sentry's BLMIS account 1FN012 and options account 1FN069. In the account opening documents, Tucker listed Fairfield Sentry's address as the office address of Fairfield International Managers—a company jointly owned by Noel and Tucker—in Greenwich, Connecticut. Further, Tucker directed BLMIS to send all BLMIS account statements, trade confirmations, and correspondence to Fairfield International Managers' offices in Greenwich, Connecticut. In October 1992, Tucker opened a second Fairfield Sentry account at BLMIS, 1FN045, as well as a second options account, 1FN070. BLMIS sent Fairfield Sentry's account statements, trade confirmations, and correspondence for these accounts to the same Greenwich, Connecticut office. On January 29, 1998, FGG notified BLMIS to change Fairfield Sentry's address for all of its BLMIS accounts to FGG's New York headquarters.

26. After the original BLMIS account documents were executed by Tucker on behalf of Fairfield Sentry, FGG partners Tucker, Daniel Lipton, and Mark McKeefry—all located in FGG's New York headquarters—executed additional BLMIS account documents on behalf of

6

Fairfield Sentry including: customer agreements, trade authorizations, options agreements, and Internal Revenue Service forms. In most instances, FGG listed Fairfield Sentry's address on these BLMIS account documents as FGG's New York headquarters.

27.     The BLMIS customer agreements covering Fairfield Sentry's BLMIS accounts are governed by New York law and all disputes arising under the agreements must be resolved by mandatory arbitration in New York utilizing the laws of New York. All transactions under Fairfield Sentry's BLMIS customer agreements were subject to the Securities Exchange Act of 1934 and to the rules and regulations of the SEC and Board of Governors of the Federal Reserve System. Every BLMIS trade confirmation received and reviewed by FGG personnel on behalf of Fairfield Sentry identified BLMIS as a U.S. registered broker-dealer and a Securities Investor Protection Corporation member regulated by the SEC.

### b. *FGG New York Personnel Controlled Fairfield Sentry's Relationship with Various Citco Entities*

28.     As the original directors of Fairfield Sentry, Noel and Tucker contracted with Citco Fund Services (Europe) B.V. ("Citco Fund Services") to provide Fairfield Sentry with backoffice administrative services such as coordinating subscription and redemption forms, maintaining Know Your Customer information, and serving as the independent party verifying the Net Asset Value of the Fairfield Sentry shares. Noel and Tucker also contracted Citco Global Custody N.V. ("Citco Custody") to nominally serve as the custodian of the Fairfield Sentry assets. In reality, BLMIS was the custodian inasmuch as all of the Fairfield Sentry assets were held in the BLMIS accounts. As a result, Citco Custody entered into a sub-custodian agreement with BLMIS. As a further part of the relationship with Citco Fund Services and Citco Custody, Noel and Tucker also opened bank accounts at Citco Bank Nederland, N.V. Dublin Branch ("Citco Bank Dublin"). FGG New York Personnel had final control of the Fairfield

7

Sentry bank accounts and controlled all of Fairfield Sentry's relationships with the various Citco entities.

### c. *FGG New York Personnel Managed Fairfield Sentry*

29. At all relevant times, Fairfield Sentry was operated from FGG's New York headquarters. FGG New York Personnel monitored Fairfield Sentry's investments; managed Fairfield Sentry's relationship with BLMIS, Madoff, clients, and potential clients; created marketing and performance materials for Fairfield Sentry; marketed Fairfield Sentry; performed administrative functions required by Fairfield Sentry; negotiated confidentiality agreements and other service provider contracts on behalf of Fairfield Sentry; directed investments into and out of BLMIS; and conducted various other due diligence and risk management activities. Until Fairfield Sentry's liquidation, FGG maintained Fairfield Sentry's books and records in New York.

30. FGG New York Personnel made and controlled all decisions regarding Fairfield Sentry's assets not invested with BLMIS. FGG New York Personnel also had final control of Fairfield Sentry's banking accounts, including Fairfield Sentry's accounts at Citco Bank Dublin. Even with the Citco entities' various roles, FGG New York Personnel made all ultimate operational decisions regarding Fairfield Sentry. From the outset of Fairfield Sentry's operations, FGG New York Personnel controlled and approved all subscriptions into and redemptions from the fund. From at least January 1, 2002, all Fairfield Sentry subscription agreements contained New York choice of law provisions, and provided for venue and jurisdiction for any disputes in New York.

### d. *Fairfield Sentry's Investors Knew They Were Investing in BLMIS*

31. Fairfield Sentry's subscription agreements also incorporated its private placement memoranda ("PPMs") or offering memoranda by reference. Each Fairfield Sentry subscriber

8

acknowledged receipt of the PPM. The original or later amended PPM's disclosed to the Fairfield Sentry investors that a minimum of 95% of its assets were: (1) deposited in its accounts at BLMIS in New York; (2) invested by BLMIS, an SEC-registered broker-dealer; (3) traded in accordance with Madoff's SSC Strategy; and (4) through BLMIS invested in U.S. S&P 100 Index securities and options or short-term U.S. Treasurys. Fairfield Sentry's PPM also disclosed to investors that BLMIS's services were "essential to the continued operation of the Fund."

### e. *BLMIS Was Fairfield Sentry's Investment Manager*

32.     Although FGG attempted to hide its manager, BLMIS served as the investment manager throughout the life of Fairfield Sentry. At the outset, Fairfield Sentry used Information Memoranda to solicit investments in the fund. The Information Memoranda listed Fairfield International Managers as Fairfield Sentry's investment manager for which it was paid a performance fee of 20% of the reported gains in Fairfield Sentry's BLMIS accounts. Despite Fairfield International Managers's reported role, Fairfield Sentry disclosed that all of Fairfield Sentry's assets were in discretionary brokerage accounts operated by BLMIS, which in reality made all of Fairfield Sentry's investment decisions.

33.     In October 1997, Noel and Tucker agreed to merge FGG with Andrés Piedrahita's Littlestone Associates, which was a money management firm also located in New York City. Piedrahita is Noel's son-in-law. With the merger, Littlestone Associates' clients became FGG clients. In order to reflect the new ownership of FGG, Noel, Tucker, and Piedrahita formed FG Limited. FG Limited was formed under the laws of Ireland.

34.     While FG Limited was formed under foreign law, it reported its principal place of business as FGG's New York headquarters, registered to do business in the State of New York, and listed its principal executive office as FGG's New York headquarters. Upon the formation of FG Limited, Fairfield International Managers assigned all of its management contracts with

9

Fairfield Sentry and Greenwich Sentry to FG Limited. Following the assignment of the management contracts to FG Limited, FGG New York Personnel revised the Fairfield Sentry Information Memoranda to list FG Limited as Fairfield Sentry's investment manager, even though all of Fairfield Sentry's assets remained in the discretionary brokerage accounts controlled by BLMIS.

35.    In 2002, Noel, Tucker, and others from FGG approached Madoff to inform him FGG would be launching a new fund of funds. The new fund would be open to both U.S. and foreign investors and, as a result, FGG would form a new U.S. entity to be the investment adviser of the fund as well as other FGG operated funds, including the feeder and currency funds. Fearing greater SEC scrutiny, Madoff rejected the idea that a U.S.-based entity would serve in the role as the investment manager of the feeder and currency funds. As a result, FGG formed two new entities, FG Advisors and FG Bermuda.

36.    In October 2003, FGG formed FG Advisors as a Delaware limited liability company. FG Advisors is a wholly owned subsidiary of FG Limited. At the same time, FGG formed FG Bermuda under Bermuda law as another wholly owned subsidiary of FG Limited. Upon the formation of FG Advisors and FG Bermuda, FG Limited assigned certain of its management contracts to both entities, including the investment advisory agreements for the three BLMIS feeder funds, Fairfield Sentry, Sigma, Lambda, and Greenwich Sentry, to FG Bermuda. FG Limited remained the placement agent for the same funds.

37.    In 2003, with FG Bermuda's entry into the FGG operations, FGG New York Personnel issued new PPMs which listed FG Bermuda as Fairfield Sentry's investment manager and removed all references to the discretionary accounts at BLMIS. The new PPMs also stated FG Limited would remain as Fairfield Sentry's Placement Agent and receive a portion of the

10

management and performance fees paid to FG Bermuda. The same PPMs also disclosed that Fairfield Sentry would pay a percentage fee to FG Advisors for providing administrative services and incurring administrative costs.

38. Prior to 2006, while FG Bermuda purported to manage Fairfield Sentry's, Sigma's, Lambda's, Greenwich Sentry's, and Greenwich Sentry Partners' investments, it did not register as an investment adviser under the Investment Advisers Act of 1940.

39. In 2005 and 2006, the SEC conducted an investigation of BLMIS and its relationship to its feeder funds. While the investigation was ongoing, in an attempt to deflect further SEC inquiry, FG Bermuda registered as an investment adviser under the Investment Advisers Act of 1940. Following FG Bermuda's registration in April 2006, it was required to file Form 13Fs with the SEC that Mark McKeefry, FGG's New York-based general counsel, executed and submitted.

40. After its 2005 and 2006 investigation, the SEC determined that BLMIS, and not FG Bermuda, was the investment manager of Fairfield Sentry. Accordingly, the SEC required Fairfield Sentry to modify its investor communications and PPMs to properly disclose BLMIS as Fairfield Sentry's investment manager for the fund's assets held in the BLMIS accounts.

41. As originally operated, 100% of Fairfield Sentry's assets were in its BLMIS accounts. Beginning in 2003, Fairfield Sentry began investing up to 5% of its assets with other fund managers, all of whom were selected by FGG New York Personnel. FGG organized a number of so-called "seedling funds," with Fairfield Sentry's investment serving as the base. The seedling funds were operated and organized by FGG New York Personnel. Many of the seedling funds, in turn, invested part of their assets back into Fairfield Sentry.

11

42. Finally, the Trustee incorporates by reference the allegations of the Second Amended Complaint proffered in *Picard v. Fairfield Investment Fund, Ltd.*, Adv. Pro. No. 09-01239 (SMB), (Bankr. S.D.N.Y., filed June 26, 2015 as part of the Extraterritoriality Briefing).

| | |
|---|---|
| Dated: June 26, 2015<br>New York, New York | /s/ Thomas L. Long<br>**Baker & Hostetler LLP**<br>45 Rockefeller Plaza<br>New York, New York 10111<br>Telephone: (212) 589-4200<br>Facsimile: (212) 589-4201<br>David J. Sheehan<br>Thomas L. Long<br>Catherine E. Woltering<br><br>**Baker & Hostetler LLP**<br>65 East State Street, Suite 2100<br>Columbus, Ohio 43215<br>Telephone: (614) 228-1541<br>Facsimile: (614) 462-2616<br>Melonia A. Bennett<br><br>*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the estate of Bernard L. Madoff* |