**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee*
*for the Substantively Consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities LLC*
*and the estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>　　　　　Plaintiff-Applicant,<br><br>　　v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>　　　　　Defendant. | Adv. Pro. No. 08-01789 (SMB)<br><br>SIPA Liquidation<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>　　　　　Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>BANK JULIUS BAER & CO. LTD.,<br><br>　　　　　Defendant. | Adv. Pro. No. 11-02922 (SMB) |

**TRUSTEE'S SUPPLEMENTAL MEMORANDUM**
**OF LAW IN OPPOSITION TO DEFENDANT BANK**
**JULIUS BAER & CO. LTD.'S MOTION TO DISMISS**
**BASED ON EXTRATERRITORIALITY AND IN FURTHER**
<u>**SUPPORT OF TRUSTEE'S MOTION FOR LEAVE TO AMEND COMPLAINTS**</u>

The Trustee respectfully submits this supplemental memorandum in opposition to defendant Bank Julius Baer & Co. Ltd.'s ("BJB") motion to dismiss on extraterritoriality and in further support of the Trustee's motion for leave to amend the complaint. As set forth below, the Trustee's Proffered Allegations Pertaining to the Extraterritoriality Issues as to Defendant Bank Julius Baer & Co. Ltd. ("Proffered Allegations") plead facts confirming that the subsequent transfers received by BJB are predominantly domestic under the standard set forth in the Extraterritoriality Decision,[1] such that the Trustee's action does not require an extraterritorial application of SIPA or Bankruptcy Code § 550. BJB's motion to dismiss should be denied and the Trustee's motion for leave to amend the complaint should be granted.

## I. BACKGROUND & LEGAL STANDARD

This Court must determine whether the Trustee's claims against BJB seek the recovery of "purely foreign" transfers, requiring an extraterritorial application of SIPA and Bankruptcy Code § 550.[2] Under the District Court's ruling, the Trustee must only put forth "specific facts suggesting a domestic transfer" to avoid dismissal.[3] In making this determination, this Court must review the "location of the transfers as well as the component events of those transactions."[4] This is a factual inquiry in which all reasonable inferences are to be drawn in the Trustee's favor.[5]

The Trustee's Proffered Allegations show that BJB received at least $47,945,178 in subsequent transfers of BLMIS customer property from Fairfield Sentry Limited ("Fairfield Sentry"), Fairfield Sigma Limited ("Sigma"), and Fairfield Lambda Limited ("Lambda").

---

[1] *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC* (*In re Madoff Sec.*), 513 B.R. 222 (S.D.N.Y. 2014) ("Extraterritoriality Decision").
[2] *Id*. at 232–33.
[3] *Id.* at 232, n.4.
[4] *Id.* at 227 (citing *Maxwell Commc'n Corp. v. Societe General PLC* (*In re Maxwell Commc'n Corp.*), 186 B.R. 807, 817 (S.D.N.Y. 1995) ("*Maxwell I*")).
[5] *See, e.g., Anwar v. Fairfield Greenwich Ltd.*, 728 F. Supp. 2d 372, 403–05 (S.D.N.Y. 2010).

1

Proffered Allegations ¶ 1. BJB is a Swiss limited banking and wealth management company. *Id.* ¶ 3. Fairfield Sentry was the largest of several BLMIS feeder funds ("Feeder Funds")—single purpose investment funds that pooled their investors' assets to invest with BLMIS in New York, capitalizing on its consistent returns. *Id.* ¶ 4. Sigma and Lambda were "currency funds," meaning that they accepted subscriptions from investors in Euros and Swiss Francs, respectively, and converted money to U.S. Dollars, and then purchased shares of Fairfield Sentry (collectively, Fairfield Sentry, Sigma, and Lambda will be referred to as the "Fairfield Funds"). *Id*. The Trustee alleges that Fairfield Sentry withdrew funds from its BLMIS accounts and transferred the funds to BJB or to Sigma or Lambda, which in turn transferred the funds to BJB. *Id.* ¶ 2.

BJB argues that simply because it is formally organized under the laws of Switzerland, and because Fairfield Sentry, Sigma, and Lambda were formally organized under the laws of the Territory of the British Virgin Islands ("BVI"), it is entitled to a finding that the transfers at issue are "purely foreign" and should be dismissed under the Extraterritoriality Decision. BJB's reasoning is superficial, contrary to the *Maxwell I* "component events" analysis embraced by the District Court in the Extraterritoriality Decision,[6] and inconsistent with Second Circuit precedent considering the connection among the parties, and the economic and legal realities of the transactions.[7]

## II.  THE TRANSFERS AND COMPONENT EVENTS OF THE TRANSACTIONS AT ISSUE WERE PREDOMINANTLY DOMESTIC

The subsequent transfers the Trustee seeks to recover from BJB were not "purely foreign." First, BJB knew virtually all the Fairfield Funds' assets were invested with BLMIS in New York. Second, in connection with the transactions at issue, BJB agreed to New York law

---

[6] Extraterritoriality Decision, 513 B.R. at 227 (citing *Maxwell I*, 186 B.R. at 816–17).
[7] *See, e.g., Mastafa v. Chevron Corp*., 770 F.3d 170, 182 (2d Cir. 2014); *European Cmty. v. RJR Nabisco, Inc*., 764 F.3d 129, 141–42 (2d Cir. 2014); *ParkCentral Global Hub Ltd. v. Porsche Automobile Holdings SE*, 763 F.3d 198, 216. (2d Cir. 2014).

2

and submitted to the jurisdiction and venue. Third, BJB's New York office conducted due diligence on the Fairfield Funds, other Feeder Funds, and BLMIS. Fourth, BJB utilized New York bank accounts to repeatedly and systematically transfer funds for its Fairfield Sentry investments. Finally, the Fairfield Funds resided in New York as they were principally operated in New York by Fairfield Greenwich Group ("FGG"), a New York-based *de facto* partnership.

### A. BJB's Relationship with the Fairfield Funds and BLMIS Was Centered in New York

BJB purposefully invested in the Fairfield Funds to obtain access to BLMIS in New York and to profit from Madoff's U.S. investment strategy. Proffered Allegations ¶ 6. In connection with its investments in the Fairfield Funds, BJB received and analyzed the Fairfield Funds' private placement memoranda ("PPMs"), which explained: (1) the Fairfield Funds were entirely dependent on BLMIS in New York; and (2) that Madoff executed the split-strike conversion investment strategy on behalf of the Fairfield Funds through the purported purchase and sale of U.S. S&P 100 Index securities, U.S. options, and U.S. Treasurys traded on U.S. exchanges. *Id.* ¶¶ 14, 18.

BJB executed subscription agreements in connection with its investments in the Fairfield Funds and in doing so, agreed to be bound by New York law and submitted to the jurisdiction and venue of the New York courts. *Id.* ¶¶ 20–21. BJB also executed a letter of understanding with an FGG management entity to receive fees in connection with its Fairfield Funds' investments, and in doing so acknowledged that the agreement was governed by New York law. *Id.* ¶ 22–23.

Although BJB was formed as a Swiss limited company, at all relevant times it maintained an office in New York, which conduced due diligence on the Fairfield Funds, Madoff, and BLMIS in connection with its investment. *Id.* ¶ 24. Employees from BJB's New York office

3

met with Madoff in his New York office and toured BLMIS's trading room. *Id.* ¶ 25. BJB's Swiss-based employees also visited FGG's New York headquarters and routinely corresponded with FGG U.S. personnel as part of BJB's ongoing due diligence. *Id.* ¶ 26.

When the Fairfield Funds ran out of capacity to accepted investments for BJB, BJB invested moneys in other Feeder Funds to further increase its investments with New York-based BLMIS. *Id.* ¶ 27. BJB knew the other Feeder Funds were entirely or almost entirely invested with BLMIS in New York. *Id.*

BJB also used New York bank accounts to repeatedly transfer funds to and from Fairfield Sentry investments. *Id.* ¶ 28. Pursuant to the subscription agreements BJB executed in connection with its investments, BJB sent its funds at least 249 times over the course of 12 years to a Republic National Bank of New York or New York HSBC Bank USA correspondent bank account (depending on when the subscription agreement was executed), for deposit in Fairfield Sentry's bank account. *Id.* ¶ 29. From Fairfield Sentry's bank account, the funds were deposited in BLMIS's account at JPMorgan Chase Bank NA ("JPMorgan") in New York. *Id.* BJB also received redemption payments in its own bank account at JPMorgan in New York. *Id.* ¶ 30. BJB utilized its New York account repeatedly—at least 119 times. *Id.*

### B. The Fairfield Funds' Principal Place of Business Was in New York

The Fairfield Funds' principal place of business was in New York. *Id.* ¶ 31. FGG's founding partners, Walter Noel and Jeffrey Tucker formally organized the Fairfield Funds as international business companies under BVI law. *Id.* ¶¶ 35, 57. As international business companies, BVI law restricted the Fairfield Funds from doing business with other BVI citizens and residents except with other BVI international business companies. *Id.* The Fairfield Funds were shell corporations present in the BVI solely on paper. *Id.* ¶¶ 36, 58. Their BVI statutorily required registered address was a post office box care of a local trust company owned and

4

operated by a local law firm. *Id.*

From their inception until their liquidation in 2009, the Fairfield Funds had no employees and no offices. *Id.* At all relevant times, the Fairfield Funds were operated almost entirely by FGG New York personnel who maintained final control of the Fairfield Funds' bank accounts and relationships with the Fairfield Funds' back office service providers. *Id.*

Beginning in 1990, Tucker opened Fairfield Sentry's BLMIS accounts. *Id.* ¶ 38. In the account opening documents, Tucker identified Fairfield Sentry's mailing address as FGG-member company Fairfield International Managers, Inc.'s office in Greenwich, Connecticut and directed BLMIS to send Fairfield Sentry's monthly account statements, trade confirmations, and correspondence to the same Fairfield International Managers, Inc. office. *Id.* In January 1998, FGG requested BLMIS to send Fairfield Sentry account information to FGG in New York. *Id.*

From the Fairfield Funds' inception, FGG personnel at its New York headquarters controlled the sales and subscriptions of the funds' shares. *Id.* ¶ 43. From at least January 1, 2002, all Fairfield Sentry subscription agreements contained New York choice of law provisions, and provided for venue and jurisdiction for any disputes in New York. *Id.*

At all relevant times, FGG New York headquarters personnel monitored the Fairfield Funds' investments; managed the relationships and investments with BLMIS; marketed the Fairfield Funds; approved all subscriptions for Fairfield Funds shares; maintained the Fairfield Funds' books and records at the FGG New York headquarters; and made all strategic and operational decisions regarding the Fairfield Funds. *Id.* ¶¶ 42, 59.

### III. CONCLUSION

For the foregoing reasons and those stated in the Trustee's Main Brief, this Court should deny BJB's motion to dismiss and grant the Trustee's motion for leave to amend the complaint.

5

| | |
|---|---|
| Dated: June 26, 2015<br>New York, New York | /s/  Thomas L. Long<br>**Baker & Hostetler LLP**<br>45 Rockefeller Plaza<br>New York, New York 10111<br>Telephone: (212) 589-4200<br>Facsimile: (212) 589-4201<br>David J. Sheehan<br>Thomas L. Long<br><br>**Baker & Hostetler LLP**<br>65 East State Street, Suite 2100<br>Columbus, Ohio 43215<br>Telephone: (614) 228-1541<br>Facsimile: (614) 462-2616<br>Lauren M. Hilsheimer<br>Melonia A. Bennett<br><br>*Attorneys for Irving H. Picard, Trustee*<br>*for the Substantively Consolidated SIPA*<br>*Liquidation of Bernard L. Madoff Investment*<br>*Securities LLC and the estate of Bernard L.*<br>*Madoff* |