**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee*
*for the substantively consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities LLC*
*and the estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,  Plaintiff-Applicant,  v.  BERNARD L. MADOFF INVESTMENT SECURITIES LLC,  Defendant. | No. 08-01789 (SMB)  SIPA Liquidation  (Substantively Consolidated) |
| In re:  BERNARD L. MADOFF,  Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,  Plaintiff,  v.  FALCON PRIVATE BANK LTD. (f/k/a AIG Privat Bank AG),  Defendant. | Adv. Pro. No. 11-02923 (SMB) |

**TRUSTEE'S SUPPLEMENTAL MEMORANDUM OF LAW**
**IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**
**BASED ON EXTRATERRITORIALITY AND IN FURTHER**
<u>**SUPPORT OF TRUSTEE'S MOTION FOR LEAVE TO AMEND COMPLAINTS**</u>

The Trustee respectfully submits this supplemental memorandum in opposition to Falcon Private Bank Limited's ("Falcon"), formerly known as AIG Privat Bank AG ("AIG Privat Bank"), motion to dismiss based on extraterritoriality and in further support of the Trustee's motion for leave to amend the complaint. As set forth below, the Trustee's Proffered Allegations Pertaining to the Extraterritoriality Issue as to Falcon ("AIG Proffer") plead facts showing that the subsequent transfers received by AIG Privat Bank and the component events of the transactions are predominantly domestic under the standard set forth in the Extraterritoriality Decision,[1] such that the Trustee's action does not require an extraterritorial application of SIPA or Bankruptcy Code § 550. Falcon's motion to dismiss should be denied, and the Trustee's motion for leave to amend should be granted.

I.   **BACKGROUND & LEGAL STANDARD**

This Court must determine whether the Trustee's claims against AIG Privat Bank seek the recovery of "purely foreign" transfers, requiring an extraterritorial application of SIPA or Bankruptcy Code § 550.[2] In making this determination, this Court must review the "location of the transfers as well as the component events of those transactions."[3] This is a factual inquiry in which all reasonable inferences are to be drawn in the Trustee's favor,[4] and the Trustee must

---

[1] *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC,* 513 B.R. 222, 232–33 (S.D.N.Y. 2014) ("Extraterritoriality Decision").

[2] *Id*.

[3] *Id.* at 227 (citing *Maxwell Commc'n Corp. v. Société General* (*In re Maxwell Commc'n Corp.*), 186 B.R. 807, 816–17 (S.D.N.Y. 1995) ("*Maxwell I*")).

[4] *See, e.g., Anwar v. Fairfield Greenwich Ltd.*, 728 F. Supp. 2d 372, 403–05 (S.D.N.Y. 2010).

1

only put forth "specific facts suggesting a domestic transfer" to avoid dismissal.[5]

During the relevant time period, AIG Privat Bank was a Swiss private bank and, significantly, a direct subsidiary of New York-based American International Group, Inc.[6]  AIG Proffer ¶ 2.  The Trustee's AIG Proffer alleges AIG Privat Bank received subsequent transfers of BLMIS customer property from Fairfield Sentry Limited ("Fairfield Sentry") and Fairfield Sigma Limited ("Sigma") (collectively the "Fairfield Funds").  *Id.* ¶ 1.  Fairfield Sentry was a BLMIS feeder fund ("Feeder Fund")—a single-purpose investment fund that pooled its investors' assets to invest with New York-based BLMIS.  *Id.* ¶ 3.  Sigma invested 100% of its assets by purchasing shares of Fairfield Sentry.  *Id.* ¶ 4.  Fairfield Greenwich Group ("FGG"), a *de facto* partnership based in New York, created, operated, and controlled Fairfield Sentry and Sigma.  *Id.* ¶ 6.  The Trustee alleges that Fairfield Sentry withdrew funds from its BLMIS accounts and transferred the funds to AIG Privat Bank or to Sigma, which in turn transferred the funds to AIG Privat Bank.  *Id.* ¶¶ 1, 5.

Falcon argues that because its predecessor was formally organized under the laws of Switzerland, and because the Fairfield Funds were formerly organized under the law of the Territory of the British Virgin Islands ("BVI"), it is entitled to a finding that the transfers are "purely foreign" and must be dismissed under the Extraterritoriality Decision.  Falcon is wrong.  Its analysis is contrary to the *Maxwell I* "component event" analysis embraced in the Extraterritoriality Decision,[7] and inconsistent with Second Circuit precedent requiring courts to

---

[5] Extraterritoriality Decision, 513 B.R. at 232 n.4.
[6] In 2009, Aabar Investments PJSC acquired AIG Privat Bank and changed its name to Falcon.  AIG Proffer ¶ 2.
[7] Extraterritoriality Decision, 513 B.R. at 227.

2

look at the economic and legal realities of the transactions to determine whether a claim is "sufficiently domestic" for purposes of extraterritoriality.[8] As set forth below, a comprehensive review of the transfers and the component events of the transactions demonstrate the Trustee's recovery claims against Falcon do not require an extraterritorial application of SIPA or Bankruptcy Code § 550.

## II. AIG PRIVAT BANK'S CONDUCT IN CONNECTION WITH THE TRANSACTIONS AT ISSUE WAS CENTERED IN THE UNITED STATES

AIG Privat Bank invested in the Fairfield Funds to specifically profit from New York-based BLMIS. AIG Proffer ¶¶ 7, 10–11. In addition to investing in the Fairfield Funds, AIG Privat Bank invested in Ascot Fund Limited ("Ascot"), a Feeder Fund managed by New York-based Gabriel Capital Corporation. *Id.* ¶¶ 8, 14. Upon information and belief, AIG Privat Bank specifically directed funds to Ascot to further profit from New York-based BLMIS. *Id.*

AIG Privat Bank's New York-based affiliate conducted due diligence in New York and managed the relationship with the Fairfield Funds and FGG. *Id.* ¶¶ 9, 15–18. This New York-based affiliate visited FGG's New York headquarters on behalf of AIG Privat Bank. *Id.* ¶ 17.

AIG Privat Bank also voluntarily executed subscription agreements in connection with its investments in the Fairfield Funds. *Id.* ¶¶ 19–20. By executing Fairfield Fund subscription agreements, AIG Privat Bank agreed its investments would be governed by New York law and subject to the jurisdiction and venue of the New York courts. *Id.*

AIG Privat Bank used a New York correspondent bank account at either Republic

---

[8] *See, e.g., Mastafa v. Chevron Corp.*, 770 F.3d 170, 182 (2d Cir. 2014); *European Cmty. v. RJR Nabisco, Inc.*, 764 F.3d 129, 141 (2d Cir. 2014); *Parkcentral Global Hub Ltd. v. Porsche Automobile Holding SE,* 763 F.3d 198, 216 (2d Cir. 2014).

3

National Bank of New York or at HSBC Bank USA to direct funds to Fairfield Sentry's bank account. *Id.* ¶ 22. These funds were then deposited in BLMIS's account at JPMorgan Chase Bank NA in New York. *Id.* AIG Privat Bank also used a bank account at HSBC Bank USA in New York to receive redemption payments from Fairfield Sentry. *Id.* ¶ 23.

### III.   FAIRFIELD SENTRY AND SIGMA MAINTAINED THEIR PRINCIPAL PLACE OF BUSINESS IN NEW YORK

FGG's founding partners Walter Noel and Jeffrey Tucker formally organized the Fairfield Funds as international business companies under BVI law. AIG Proffer ¶¶ 28, 49. As international business companies, BVI law restricted the Fairfield Funds from doing business with other BVI citizens and residents except with other BVI international business companies. *Id.* The Fairfield Funds were shell corporations present in the BVI only on paper. *Id.* ¶¶ 29, 50. Their BVI statutorily required registered address was a post office box care of a local trust company owned and operated by a local law firm. *Id.*

From their inception until their liquidation in 2009, the Fairfield Funds had no employees, no offices, or operations in the BVI. *Id.* At all relevant times, the Fairfield Funds were operated almost entirely by FGG's New York City headquarters personnel who maintained final control of the Fairfield Funds' bank accounts and relationships with the Fairfield Funds' back office service providers. *Id.* ¶¶ 34–36, 51–53.

Beginning in 1990, Tucker opened Fairfield Sentry's BLMIS accounts. *Id.* ¶ 31. In the account opening documents, Tucker identified Fairfield Sentry's mailing address as Fairfield International Managers' office in Greenwich, Connecticut and directed BLMIS to send Fairfield Sentry's monthly account statements, trade confirmations, and correspondence to the same Fairfield International Managers office. *Id.* In January 1998, FGG requested BLMIS to send all Fairfield Sentry account information to FGG's New York City headquarters. *Id.*

4

From the Fairfield Funds' inception, FGG personnel in New York controlled the sales and subscriptions of the funds' shares. *Id.* ¶¶ 34–36, 51–53. From at least January 1, 2002, all Fairfield Sentry subscription agreements contained New York choice of law provisions, and provided for venue and jurisdiction for any disputes in New York. *Id.* ¶ 36.

At all relevant times, FGG New York City headquarters personnel monitored the Fairfield Funds' investments; managed the relationships with BLMIS; directed investments into and out of BLMIS as well as into and out of Fairfield Sentry; marketed the Fairfield Funds; approved all subscriptions for Fairfield Funds shares; maintained all of the Fairfield Funds' books and records at the FGG New York City headquarters; and made all strategic and operational decisions regarding the Fairfield Funds. *Id.* ¶¶ 35–36, 51–53.

## IV.     FALCON HAS ALREADY AGREED U.S. LAWS SHOULD APPLY

Finally, Falcon previously argued in this case that Bankruptcy Code section 546(e)'s safe harbor should shield the transfers from suit precisely because of their connection to the U.S. securities markets into which BLMIS purported to invest.[9] This argument is inconsistent with Falcon's current assertion that the transactions lack sufficient domestic connections for purposes of extraterritoriality. Falcon should not be allowed to have it both ways, taking advantage of U.S. law when it suits it and running from it when it does not.

## V.     CONCLUSION

For the foregoing reasons and those stated in the Trustee's Main Brief, this Court should deny Falcon's motion to dismiss and grant the Trustee's motion for leave to amend.

---

[9] Brief for Financial Institution Defendants as Amici Curiae Supporting Respondents, p.1, *Picard v. Ida Fishman Revocable Trust (In re Bernard L. Madoff Inv. Sec LLC)*, No. 12-2557, 2014 WL 6863608 (2d Cir. Dec. 8, 2014).

5

Dated: June 26, 2015         /s/ Thomas L. Long
      New York, New York         **Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Thomas L. Long

**Baker & Hostetler LLP**
65 East State Street
Suite 2100
Columbus, Ohio 43215
Telephone: (614) 228-1541
Facsimile: (614) 462-2616
Lauren M. Hilsheimer
Justin J. Joyce

*Attorneys for Irving H. Picard, Trustee*
*for the substantively consolidated SIPA*
*Liquidation of Bernard L. Madoff Investment*
*Securities LLC and the estate of Bernard L.*
*Madoff*