**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee*
*for the substantively consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities LLC*
*and the estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | No. 08-01789 (SMB) |
| Plaintiff-Applicant, | SIPA Liquidation |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | Adv. Pro. No. 12-01211 (SMB) |
| Plaintiff, | |
| v. | |
| UNION SECURITIES INVESTMENT TRUST CO., LTD., UNION USD GLOBAL ARBITRAGE FUND, UNION USD GLOBAL ARBITRAGE A FUND, and UNION ARBITRAGE STRATEGY FUND, | |
| Defendants. | |

**TRUSTEE'S SUPPLEMENTAL MEMORANDUM**
**OF LAW IN OPPOSITION TO DEFENDANTS' MOTION**
**TO DISMISS BASED ON EXTRATERRITORIALITY AND IN FURTHER**
**SUPPORT OF TRUSTEE'S MOTION FOR LEAVE TO AMEND COMPLAINTS**

The Trustee respectfully submits this supplemental memorandum in opposition to Union USD Global Arbitrage Fund, Union USD Global Arbitrage A Fund, Union Arbitrage Strategy Fund (collectively, the "Union Funds"), and Union Securities Investment Trust Company, Limited's ("USITC") (collectively, the Union Funds and USITC are referred to as the "Union Securities Defendants") motion to dismiss based on extraterritoriality and in further support of his motion for leave to amend the complaint. As set forth below, the Trustee's Proffered Allegations Pertaining to the Extraterritoriality Issue as to the Union Securities Defendants ("Union Proffer") plead facts evidencing the subsequent transfers received by the Union Securities Defendants and the component events of the transactions are predominantly domestic under the standard set forth in the Extraterritoriality Decision,[1] such that the Trustee's action does not require an extraterritorial application of SIPA or Bankruptcy Code § 550. The Union Securities Defendants' motion to dismiss should be denied and the Trustee's motion for leave to amend the complaint should be granted.

## I.    BACKGROUND & LEGAL STANDARD

This Court must determine whether the Trustee seeks the recovery of "purely foreign" transfers, requiring an extraterritorial application of SIPA and Bankruptcy Code § 550.[2] Under the District Court's ruling, the Trustee must only put forth "specific facts suggesting a domestic transfer" to avoid dismissal.[3] In making this determination, this Court must review the "location

---

[1] *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.),* 513 B.R. 222 (S.D.N.Y. 2014) ("Extraterritoriality Decision").
[2] *Id*. at 232.
[3] *Id.* at 232 n.4.

1

of the transfers as well as the component events of those transactions."[4]  This is a factual inquiry in which all reasonable inferences are to be drawn in the Trustee's favor.[5]

The Trustee's Union Proffer alleges the Union Securities Defendants received at least $17,277,211 in subsequent transfers of BLMIS customer property from Fairfield Sentry Limited ("Fairfield Sentry").  Union Proffer ¶ 1.  USITC is a Taiwanese company that was part of a sophisticated bank network.  *Id.* ¶ 2.  The Union Funds were three Taiwanese funds managed by USITC that invested in Fairfield Sentry.  *Id.*  Fairfield Sentry was a BLMIS feeder fund ("Feeder Fund")—a single-purpose investment fund that pooled its investors' assets to invest with New York-based BLMIS.  *Id.* ¶ 4.  Fairfield Greenwich Group ("FGG"), a *de facto* partnership based in New York, created, operated, and controlled Fairfield Sentry.  *Id.* ¶ 5.  The Trustee alleges that Fairfield Sentry redeemed funds from its BLMIS accounts and transferred the funds to the Union Securities Defendants.  *Id.* ¶¶ 1, 16.

The Union Securities Defendants argue that simply because they were formally organized under the laws of Taiwan, and because Fairfield Sentry was formally organized under the law of the Territory of the British Virgin Islands ("BVI"), they are entitled to a finding that these transfers are "purely foreign" and must be dismissed under the Extraterritoriality Decision.  The Union Securities Defendants are wrong.  The Union Securities Defendants' analysis is contrary to the *Maxwell I* "component event" analysis embraced in the Extraterritoriality Decision,[6] and inconsistent with Second Circuit precedent requiring courts to look at the economic and legal realities of the transactions to determine whether a claim is "sufficiently domestic" for purposes

---

[4] *Id.* at 227 (citing *Maxwell Commc'n Corp. v. Société General* (*In re Maxwell Commc'n Corp.*),186 B.R. 807, 816–17 (S.D.N.Y. 1995) ("*Maxwell I*")).

[5] *Anwar v. Fairfield Greenwich Ltd.*, 728 F. Supp. 2d 372, 403 (S.D.N.Y. 2010).

[6] Extraterritoriality Decision, 513 B.R. at 227 (citing *Maxwell I*, 186 B.R. at 817).

2

of extraterritoriality.[7] The Union Securities Defendants' ignore that their conduct put the United States at the center of the transactions at issue, and that Fairfield Sentry maintained its principal place of business in New York. As set forth below, a comprehensive review of the transfers and the component events of the transactions demonstrate the Trustee's recovery claims against the Union Securities Defendants do not require an extraterritorial application of SIPA or Bankruptcy Code § 550.

## II. THE TRANSFERS AND COMPONENT EVENTS OF THE TRANSACTIONS WERE PREDOMINANTLY DOMESTIC

The transactions at issue involved significant domestic components, including that the Union Securities Defendants: (1) purposefully invested in Fairfield Sentry to profit from New York-based BLMIS; (2) used New York bank accounts in connection with their investments; and (3) agreed New York law applied in connection with their investments. Further, the transfers were made by Fairfield Sentry, a U.S. resident that maintained its principal place of business in New York.

### A. The Union Securities Defendants' Conduct Put the United States at the Center of the Transactions at Issue

The Union Securities Defendants purposefully invested in Fairfield Sentry to profit from New York-based BLMIS. Union Proffer ¶ 6. They knew BLMIS served as the investment adviser and custodian for Fairfield Sentry, and that control of Fairfield Sentry's investments rested entirely with BLMIS. *Id.* ¶ 7. They also knew BLMIS purportedly invested almost all of Fairfield Sentry's assets in U.S. equities, U.S. options, and U.S. Treasury Bills. *Id.* With their Fairfield Sentry investments, the Union Securities Defendants intended to direct funds to New York-based BLMIS and the U.S. market. *Id.* ¶ 8.

---

[7] *See, e.g., Mastafa v. Chevron Corp.*, 770 F.3d 170, 182 (2d Cir. 2014); *European Cmty. v. RJR Nabisco, Inc.*, 764 F.3d 129, 141–42 (2d Cir. 2014); *Parkcentral Global Hub Ltd. v. Porsche Auto. Holdings SE*, 763 F.3d 198, 216 (2d Cir. 2014).

The Union Securities Defendants also used U.S. bank accounts to transfer funds to and from Fairfield Sentry.  *Id.* ¶ 14.  On at least 20 occasions over the course of 3 years, the Union Securities Defendants directed Fairfield Sentry subscription payments to a New York HSBC Bank USA correspondent bank account for ultimate deposit in Fairfield Sentry's bank account.  *Id.* ¶ 15.  From Fairfield Sentry's bank account, the funds were deposited in BLMIS's account at JPMorgan Chase Bank NA ("JPMorgan") in New York.  *Id.*  The Union Securities Defendants also used a correspondent account at JPMorgan in New York 48 times over a 2 year period to receive redemption payments from Fairfield Sentry.  *Id.* ¶ 16.

The Union Securities Defendants voluntarily executed subscription agreements in connection with their investments in Fairfield Sentry.  *Id.* ¶ 17.  By executing these subscription agreements, the Union Securities Defendants agreed their investments would be governed by New York law and subject to the jurisdiction and venue of New York courts.  *Id*.  The Union Securities Defendants also executed a confidentiality agreement with FGG that was governed by New York law.  *Id.* ¶¶ 18–19.

### B. Fairfield Sentry Maintained its Principal Place of Business in New York

Fairfield Sentry maintained its principal place of business in New York and was a U.S. resident.  Union Proffer ¶ 20.  In 1988, Walter Noel and Jeffrey Tucker, founded FGG, a New York-based *de facto* partnership.  *Id.* ¶ 21.  As part of FGG, Noel and Tucker incorporated Fairfield International Managers, Inc. ("Fairfield International Managers").  *Id.* ¶¶ 21, 23.  Through Fairfield International Managers, Noel and Tucker organized Fairfield Sentry.  *Id.* ¶¶ 24, 27.

Noel and Tucker formally organized Fairfield Sentry as an international business company under BVI law.  *Id.* ¶ 24.  As an international business company, BVI law restricted

4

Fairfield Sentry from doing business with other BVI citizens and residents except with other BVI international business companies. *Id*. Fairfield Sentry was a shell corporation present in the BVI solely on paper. *Id*. ¶ 25. Its BVI statutorily required registered address was a post office box care of a local trust company owned and operated by a local law firm. *Id*.

From its inception until its liquidation in 2009, Fairfield Sentry had no employees and no offices. *Id*. At all relevant times, Fairfield Sentry was operated almost entirely by FGG's New York City headquarters personnel who maintained final control of Fairfield Sentry's bank accounts and relationships with Fairfield Sentry's back office service providers. *Id*. ¶¶ 30–32.

Beginning in 1990, Tucker opened Fairfield Sentry's BLMIS accounts. *Id*. ¶ 27. In the account opening documents, Tucker identified Fairfield Sentry's mailing address as Fairfield International Managers' office in Greenwich, Connecticut and directed BLMIS to send Fairfield Sentry's monthly account statements, trade confirmations, and correspondence to the same Fairfield International Managers office. *Id*. In January 1998, FGG requested BLMIS to send all Fairfield Sentry account information to FGG's New York headquarters. *Id*.

From Fairfield Sentry's inception, FGG personnel at its New York headquarters controlled the sales and subscriptions of the fund's shares. *Id*. ¶¶ 31–32. From at least January 1, 2002, all Fairfield Sentry subscription agreements contained New York choice of law provisions, and provided for venue and jurisdiction for any disputes in New York. *Id*. ¶ 32.

At all relevant times, FGG New York City headquarters personnel monitored Fairfield Sentry's investments; managed the relationships with BLMIS; directed investments into and out of BLMIS; marketed Fairfield Sentry; approved all subscriptions for Fairfield Sentry shares; maintained Fairfield Sentry's books and records at the FGG New York City headquarters; and made all strategic and operational decisions regarding Fairfield Sentry. *Id*. ¶¶ 31–32.

5

### III. CONCLUSION

For the foregoing reasons and those stated in the Trustee's Main Brief, this Court should deny the Union Securities Defendants' motion to dismiss and grant the Trustee's motion for leave to amend.

Dated: June 26, 2015
New York, New York

/s/ Thomas L. Long
**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Thomas L. Long

**Baker & Hostetler LLP**
65 East State Street
Suite 2100
Columbus, Ohio 43215
Telephone: (614) 228-1541
Facsimile: (614) 462-2616
Lauren M. Hilsheimer
Justin J. Joyce
Damon M. Durbin

*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the estate of Bernard L. Madoff*