**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee*
*for the substantively consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities LLC*
*and the estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (SMB) |
| Plaintiff-Applicant, | SIPA Liquidation |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | Adv. Pro. No. 12-01023 (SMB) |
| Plaintiff, | |
| v. | |
| ARDEN ASSET MANAGEMENT INC., ARDEN ASSET MANAGEMENT LLC, and ARDEN ENDOWMENT ADVISERS, LTD., | |
| Defendants. | |

**TRUSTEE'S SUPPLEMENTAL MEMORANDUM OF LAW IN
OPPOSITION TO ARDEN ENDOWMENT ADVISERS, LTD.'S MOTION
TO DISMISS BASED ON EXTRATERRITORIALITY AND IN FURTHER
SUPPORT OF TRUSTEE'S MOTION FOR LEAVE TO AMEND COMPLAINTS**

The Trustee respectfully submits this supplemental memorandum in opposition to defendant Arden Endowment Advisers, Ltd.'s ("Endowment Fund")[1] motion to dismiss based on extraterritoriality and in further support of the Trustee's motion for leave to amend the complaint. As set forth below the Trustee's Proffered Allegations Pertaining to the Extraterritoriality Issue as to Endowment Fund ("Proffered Allegations") plead facts evidencing the subsequent transfers received by Endowment Fund are predominantly domestic under the standard set forth in the Extraterritoriality Decision,[2] such that the Trustee's action does not require an extraterritorial application of SIPA or Bankruptcy Code § 550. Endowment Fund's motion to dismiss should be denied, and the Trustee should be granted leave to amend the complaint.

## BACKGROUND & LEGAL STANDARD

This Court must determine whether the Trustee's claims against Endowment Fund seek the recovery of "purely foreign" transfers, requiring an extraterritorial application of Bankruptcy Code § 550.[3] Under the Extraterritoriality Decision, the Trustee must only put forth "specific facts suggesting a domestic transfer" to avoid dismissal.[4] In making this determination, this Court must review "the location of the transfers as well as the component events of those transactions."[5] This is a fact-based inquiry in which all reasonable inferences are to be drawn in the Trustee's favor.[6]

---

[1] Defendants Arden Asset Management Inc. and Arden Asset Management LLC do not challenge the domestic nature of the $8,413,795 in subsequent transfers they received from Fairfield Sentry Limited and Kingate Global. As a result, these transfers are not addressed in this brief.

[2] *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*, 513 B.R. 222, 232-33 (S.D.N.Y. 2014) ("Extraterritoriality Decision").

[3] *Id.*

[4] *Id.* at 232 n.4.

[5] *Id.* at 227 (quoting *Maxwell Commc'n Corp. v. Societe General PLC (In re Maxwell Commc'n Corp.)* ("*Maxwell I*"), 186 B.R. 807, 817 (S.D.N.Y. 1995)).

[6] *See, e.g., Anwar v. Fairfield Greenwich Ltd.*, 728 F. Supp. 2d 372, 403-05 (S.D.N.Y. 2010).

1

The Trustee's Proffered Allegations allege Endowment Fund received subsequent transfers of BLMIS customer property from Fairfield Sentry Limited ("Fairfield Sentry") and Kingate Global Fund Ltd. ("Kingate Global" and together with Fairfield Sentry, the "Feeder Funds"). Proffered Allegations ¶ 1. BLMIS held accounts for several feeder funds—single-purpose investment funds that pooled their investors' assets to invest with BLMIS, capitalizing on its consistent returns—including Fairfield Sentry and Kingate Global. *Id.* ¶ 2. Fairfield Greenwich Group ("FGG"), a *de facto* partnership based in New York, created, operated, and controlled Fairfield Sentry. *Id.* ¶ 3. The Trustee alleges that the Feeder Funds withdrew funds from their BLMIS accounts and transferred those funds to Endowment Fund. *Id.* ¶ 1.

Endowment Fund argues that because it was formally organized under the law of the Cayman Islands, and the Feeder Funds were formally organized under the law of the Territory of the British Virgin Islands ("BVI"), it is entitled to a finding that the transfers are "purely foreign" and must be dismissed under the Extraterritoriality Decision. Endowment Fund is wrong, and its superficial analysis is contrary to the *Maxwell I* "component events" analysis embraced by the Extraterritoriality Decision.[7] As set forth below, a review of the component events of the transactions demonstrate the transfers were predominantly domestic, not foreign—let alone "purely foreign"—and therefore do not require an extraterritorial application of SIPA or Bankruptcy Code § 550.

## I. THE TRANSFERS TO ENDOWMENT FUND ARE DOMESTIC

To determine whether conduct is extraterritorial, this Court must determine whether the transfers and component events of the transactions are domestic under *Maxwell I*.

### A. The Transfers At Issue are Domestic in Nature

Endowment Fund received at least $26,011,165 that originated from BLMIS and was

---

[7] *See* Extraterritoriality Decision, 513 B.R. at 227 (citing *Maxwell I*, 186 B.R. at 817).

subsequently transferred by the Feeder Funds. Proffered Allegations ¶ 1. The component events identified in *Maxwell I*, in addition to the location of the BLMIS indicate the transfers to Endowment Fund are domestic. Moreover, the center of Endowment Fund's actions and investments was the New York office it shared with its investment managers, non-moving defendants Arden Asset Management Inc., a New York corporation, and Arden Asset Management LLC (together "Arden Management"), a Delaware limited liability company. *Id.* ¶ 7. Arden Management created, directed, controlled, and operated Endowment Fund from New York. *Id.* ¶¶ 7–8.

Endowment Fund's principal place of business was located in the U.S., sharing an address with Arden Management's New York City headquarters. *Id.* It was operated entirely by Arden Management in New York. *Id.* ¶ 7. Endowment Fund was a shell entity with no offices, employees, or operations in the Cayman Islands.[8] *Id.* From its inception, Arden Management served as Endowment Fund's investment manager, listing its principal place of business as Arden Management's New York headquarters. *Id.* Arden Management executives were Endowment Fund's executives. *Id.* ¶ 10. Moreover, on behalf of Endowment Fund, Arden Management conducted due diligence on BLMIS and the Feeder Funds, including attending meetings in New York with Madoff and FGG. *Id.* ¶ 18.

Endowment Fund's transactions and agreements with the Feeder Funds indicate that the parties all understood their transactions to be domestic. New York-based Arden Management approved, directed, and controlled all of the subsequent transfers made to Endowment Fund. *Id.* ¶¶ 7, 13. Each of the subsequent transfers from Fairfield Sentry, and upon information and belief

---

[8] *See SEC v. Gruss*, No. 11 Civ. 2420, 2012 WL 3306166, at *3 (S.D.N.Y. Aug. 13, 2012) (finding that issues of fact existed regarding whether an offshore fund was "foreign" for purposes of extraterritoriality where complaint alleged that operational and investment decisions for the offshore fund were made in New York, "such that for all intents and purposes, the [offshore fund] was based in New York").

3

Kingate Global, was made to Endowment Fund's New York Citi Private Bank account. *Id.* ¶¶ 32, 34.

Endowment Fund's relationships with BLMIS and the Feeder Funds were all clearly centered in the U.S. Endowment Fund and Fairfield Sentry both maintained their principal places of business in New York. *Id.* ¶¶ 7, 35. Endowment Fund knew the Feeder Funds were almost entirely invested with BLMIS, which purportedly implemented Madoff's split-strike conversion strategy ("SSC Strategy") to purchase U.S. securities. *Id.* ¶ 23. Further, by executing Fairfield Sentry subscription agreements, Endowment Fund agreed its investments would be governed by New York law and venue. *Id.* ¶¶ 26–27. And finally, Endowment Fund received all of the transfers at issue from both Fairfield Sentry, and upon information and belief Kingate Global, in its account at Citi Private Bank in New York. *Id.* ¶¶ 32, 34.

## II.    FAIRFIELD SENTRY'S PRINCIPAL PLACE OF BUSINESS WAS NEW YORK

Fairfield Sentry was the largest Feeder Fund. Proffered Allegations ¶ 3. Although registered in the BVI, Fairfield Sentry had no employees or offices there. *Id.* ¶ 40. At all relevant times, Fairfield Sentry was at least 95% invested in BLMIS. *Id.* ¶ 21. Fairfield Sentry's principal place of business was New York and it had no employees. *Id.* ¶¶ 40–41. As such, all operational decisions for Fairfield Sentry were made in New York. *Id.* ¶ 46. Fairfield Sentry's initial and on-going due diligence of BLMIS was conducted in New York and the operative legal documents for its BLMIS account were governed by New York law. *Id.* ¶¶ 44, 46. Moreover, BLMIS in New York served as Fairfield Sentry's investment manager and implemented Madoff's SSC Strategy for Fairfield Sentry. *Id.* ¶ 49.

Because Fairfield Sentry maintained its principal place of business in New York and conducted its business from its New York headquarters, the transfer made by Fairfield Sentry to Endowment Fund is not purely foreign.

4

### III. KINGATE GLOBAL INVESTED WITH BLMIS TO MAKE MONEY FROM A NEW YORK-BASED INVESTMENT OPERATION

Kingate Global invested exclusively with BLMIS in New York and formed an enterprise with a single economic purpose: to make money from a New York-based investment operation. Proffered Allegations ¶ 62.

Kingate Global executed BLMIS customer agreements governed by U.S. law and venue. *Id.* ¶¶ 67–69. The agreements authorized BLMIS to maintain custody of the fund's assets, act as its investment manager and executing broker, investing its assets in U.S. securities traded only on domestic exchanges. *Id.* ¶¶ 70–72. Control over Kingate Global rested entirely with BLMIS.

Kingate Global had no physical offices, no employees, and transacted no meaningful business in the BVI. *Id.* ¶ 63. Instead, Kingate Global operated through service providers with substantial connections to the U.S. For example, Tremont (Bermuda) Limited served as Kingate Global's co-manager for almost 10 years and was itself managed from New York by Tremont Partners, Inc., a Connecticut corporation. *Id.* ¶ 64. Kingate Global was also co-managed by Kingate Management Limited ("KML"), which operated through agents in New York. *Id.* ¶ 76. KML engaged consultants FIM Limited and FIM Advisers LLP (together "FIM") to perform due diligence on BLMIS. *Id.* ¶ 79. FIM's affiliate FIM (USA) Inc. in New York was the hub for FIM's feeder fund due diligence, including monitoring, researching, and soliciting investors for Kingate Global. *Id.* ¶ 80.

Because Kingate Global conducted its Madoff business in the United States, the transfers made by Kingate Global to Endowment Fund are not purely foreign.

### IV. CONCLUSION

For the foregoing reasons and those stated in the Trustee's Main Brief, this Court should grant the Trustee's motion for leave to amend the complaint and deny Endowment Fund's motion to dismiss.

| | |
|---|---|
| Dated: June 26, 2015<br>New York, New York | /s/ Thomas L. Long<br>**Baker & Hostetler LLP**<br>45 Rockefeller Plaza<br>New York, New York 10111<br>Telephone:  (212) 589-4200<br>Facsimile:  (212) 589-4201<br>David J. Sheehan<br>Thomas L. Long<br>Catherine E. Woltering<br><br>**Baker & Hostetler LLP**<br>65 East State Street, Suite 2100<br>Columbus, Ohio 43215<br>Telephone:  (614) 228-1541<br>Facsimile:  (614) 462-2616<br>Douglas A. Vonderhaar<br><br>*Attorneys for Irving H. Picard, Trustee*<br>*for the substantively consolidated SIPA*<br>*Liquidation of Bernard L. Madoff Investment*<br>*Securities LLC and the estate of Bernard L.*<br>*Madoff* |