BAKER & HOSTETLER LLP
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>       Plaintiff-Applicant,<br><br>  v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>       Defendant. | Adv. Pro. No. 08-01789 (SMB)<br><br>SIPA Liquidation<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>       Debtor. | **TRUSTEE'S SUPPLEMENTAL MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS BASED ON EXTRATERRITORIALITY AND IN FURTHER SUPPORT OF THE TRUSTEE'S MOTION FOR LEAVE TO AMEND THE COMPLAINT** |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>       Plaintiff,<br><br>  v.<br><br>BANK HAPOALIM B.M. and BANK HAPOALIM (SWITZERLAND) LTD.,<br><br>       Defendants. | Adv. Pro. No. 12-01216 (SMB) |

The Trustee respectfully submits this memorandum as a supplement to his Main Brief in opposition to the motion to dismiss based on extraterritoriality made by defendants Bank Hapoalim B.M. ("Hapoalim B.M.") and Bank Hapoalim (Switzerland) Ltd. ("Hapoalim Switzerland" and together with Hapoalim B.M., the "Hapoalim Defendants") and in further support of the Trustee's motion for leave to amend his Complaint.

## BACKGROUND

The Hapoalim Defendants are highly sophisticated and experienced financial institutions and asset management specialists with a global network of branches and subsidiaries, including multiple U.S. branches with billions of dollars of assets in the U.S. (Proffered Allegations at ¶ 3.) The Hapoalim Defendants were shareholders in Fairfield Sentry Limited ("Fairfield Sentry"), and Hapoalim Switzerland was also a shareholder in Kingate Global Fund Ltd. ("Kingate Global" and together with Fairfield Sentry, the "BLMIS Feeder Funds"), each of which invested substantially all of its assets with BLMIS. (Trustee's Complaint at ¶ 2; *id*. at Exs. C, F, G). The Hapoalim Defendants received $27,637,884 in subsequent transfers of BLMIS customer property from the BLMIS Feeder Funds (the "Transfers"). (*Id*.). The Trustee's Proffered Allegations demonstrate that the Trustee's action to recover these Transfers does not require an extraterritorial application of SIPA or Bankruptcy Code Section 550.

## THE TRANSFERS AND COMPONENT EVENTS OF THE HAPOALIM DEFENDANTS' BLMIS FEEDER FUND TRANSACTIONS WERE PREDOMINANTLY DOMESTIC

Citing to *Maxwell I*, the District Court directed that "the location of the transfers as well as the component events of those transactions"[1] must be used to determine whether a subsequent

---

[1] Extraterritoriality Decision, 513 B.R. at 227 (citing *Maxwell I*, 186 B.R. at 816).

transfer claim involves a domestic or extraterritorial application of the Code and SIPA.[2] Under the District Court's ruling, the Trustee need only put forth "specific facts suggesting a domestic transfer" to avoid dismissal.[3] This is a fact-based inquiry in which all reasonable inferences should be drawn in the Trustee's favor.[4]

The Hapoalim Defendants argue that simply because they and the BLMIS Feeder Funds in which they invested were formally organized under the laws of foreign countries, the subsequent transfers they received are "purely foreign" and the Trustee's recovery action must be dismissed. This superficial argument disregards the *Maxwell I* analysis directed by the District Court and is inconsistent with Second Circuit extraterritoriality case law that similarly examines a transaction's various connections to the United States.[5]

Based on the facts set forth in the Proffered Allegations, there is no basis for dismissing this case on the grounds of extraterritoriality. The Transfers and component events of the Hapoalim Defendants' transactions with the BLMIS Feeder Funds were predominantly domestic.

To begin with, the entire purpose of the Hapoalim Defendants' investments with the BLMIS Feeder Funds was to invest in U.S. securities markets through New York-based

---

[2] In *Maxwell I*, the court examined all potential connections with the United States by reviewing: (i) the debtor's location; (ii) the defendants' location; (iii) where the defendants engaged in business regarding the transaction; (iv) what transaction and agreements the parties entered into that led to the antecedent debt that the transfers were used to pay; (v) where the parties' relationship was centered when conducting the transaction that triggered the transfers; (vi) the law governing the parties' transactions; and (vii) how the transaction was concluded. *In re Maxwell Commc'n Corp.*, 186 B.R. 807, 816-17 (S.D.N.Y. 1995).

[3] Extraterritoriality Decision, 513 B.R. at 232 n.4.

[4] *See, e.g., Anwar v. Fairfield Greenwich, Ltd.*, 728 F. Supp. 2d 372, 402-03 (S.D.N.Y. 2010) (deferring ruling on extraterritoriality at motion to dismiss phase and citing standard that "[t]he court must accept all well-pleaded factual allegations in the complaint as true, and draw all reasonable inferences in the plaintiff's favor.").

[5] *See, e.g., Parkcentral Global Hub Ltd. v. Porsche Auto. Holdings SE*, 763 F.3d 198, 217 (2d Cir. 2014); *European Cmty. v. RJR Nabisco, Inc.*, 764 F.3d 129, 141 (2d Cir. 2014); and other cases cited in the Trustee's Main Brief.

2

investment adviser BLMIS, and to earn returns on those U.S.-based investments. Specifically, the Hapoalim Defendants entered into subscription agreements with the BLMIS Feeder Funds at least 80 times combined and in each case affirmed that they knew (i) the BLMIS Feeder Funds invested almost exclusively with a New York-based, SEC-registered investment adviser (i.e. BLMIS) that invested in the U.S. securities market, and (ii) the Bank Hapoalim Defendants' money would be transferred to that same investment adviser in New York. (Proffered Allegations at ¶¶ 6-8.) As Judge Lifland concluded in a similar matter, "[t]he movement of money to and from BLMIS in the United States . . . was not fortuitous or incidental; instead, it was 'the ultimate objective' and the '*raison d'etre*' of the Agreement between" the investor and the feeder fund.[6]

The express provisions of their agreements with Fairfield Sentry further demonstrate the domestic nature of the Hapoalim Defendants' investment transactions with the BLMIS Feeder Funds. The Hapoalim Defendants agreed in their subscription agreements with Fairfield Sentry that New York law would govern their investments, and they consented to U.S. jurisdiction. (Proffered Allegations at ¶ 11.) Thus, the Hapoalim Defendants had every expectation that U.S. laws would apply to their investment transactions and that they would be subject to suit in the United States.

The Hapoalim Defendants also purposefully and repeatedly used U.S. bank accounts and the U.S. banking system in connection with the Transfers from the BLMIS Feeder Funds.[7] Specifically, in their BLMIS Feeder Fund transaction documents, (i) Hapoalim B.M. designated a bank account in its own name at its own New York branch to receive redemption payments

---

[6] *Picard v. Bureau of Labor Ins. (In re BLMIS)*, 480 B.R. 501, 513 (Bankr. S.D.N.Y. 2012).

[7] *See, e.g.*, *Picard v. Igoin (In re BLMIS)*, 2015 WL 603209, at *16-17 (Bankr. S.D.N.Y. Feb. 13, 2015) (in the analogous context of personal jurisdiction, repeated use of U.S. bank accounts sufficient).

3

from Fairfield Sentry, and (ii) Hapoalim Switzerland designated a U.S. correspondent account at Chase Manhattan Bank in New York to receive redemption payments from Fairfield Sentry and, upon information and belief, Kingate Global. (Proffered Allegations at ¶ 13.) The Hapoalim Defendants also remitted their subscriptions into U.S. correspondent accounts at the direction of the BLMIS Feeder Funds, which funds were then ultimately delivered to BLMIS in New York. (*Id.* at ¶ 16.)

The domestic nature of the transactions is also evidenced by the fact that significant elements of the Hapoalim Defendants' BLMIS-related business were conducted domestically by their U.S. branches. Hapoalim B.M. is the parent company of other "Bank Hapoalim" entities, including Hapoalim Switzerland, with branches in New York City (the "New York Branch"),[8] Miami (the "Miami Branch"), and Chicago (the "Chicago Branch"). (*Id.* at ¶ 18.)

The Miami Branch was the U.S. branch most heavily involved in the Hapoalim Defendants' investments with BLMIS. Working in conjunction with non-defendant Hapoalim Securities USA, Inc. ("Hapoalim Securities"), a U.S.-based Hapoalim entity, the Miami Branch performed due diligence on Primeo Select Fund ("Primeo"), another feeder fund that invested substantially all of its assets with BLMIS. (*Id.* at ¶¶ 19-24.) Such due diligence was equally applicable to the Hapoalim Defendants' investments in Fairfield Sentry and Kingate Global, as such funds were interchangeable vehicles for investing with BLMIS. (*Id.* at ¶ 20.)

Notably, the Miami branch received and communicated warnings it received about BLMIS through this due diligence. For example, in or around October 2008, Eddie Sarnow, First Vice President of the Miami Branch, corresponded with an employee at U.S.-based Pioneer

---

[8] According to Hapoalim B.M.'s 2009 annual statement, "[m]ost of the Bank Group's international corporate activity is conducted" at the New York Branch. (*Id.* at ¶ 25.) The New York Branch is a member of the Federal Deposit Insurance Corporation and is licensed as a foreign banking organization by the New York Department of Financial Services. (*Id.*)

4

Investment Management ("Pioneer")—which marketed and distributed Primeo—as to a warning that the Hapoalim Defendants had received regarding their investments in Primeo. Shortly after Sarnow received this warning, the Hapoalim Defendants redeemed at least $2.2 million of their investments.[9] (*Id.* at ¶ 23.)

The Miami branch and Hapoalim Securities also regularly communicated and met in Miami with Miami-based employees of Pioneer regarding a distribution agreement, which authorized the Miami Branch to distribute Primeo and provided for a Hapoalim B.M. subsidiary to receive a fee in connection with any moneys the Hapoalim Defendants invested in Primeo. (*Id*. at ¶ 24.)

Beyond all of the above domestic components, the Hapoalim Defendants' argument that their transactions are "purely foreign" is wrong because it ignores the reality of the BLMIS Feeder Funds, from which they received the Transfers. The majority of the Hapoalim Defendants' BLMIS Feeder Fund transfers were from Fairfield Sentry. (*Id*. at ¶ 2.) Fairfield Greenwich Group ("FGG") in New York created, managed, and controlled Fairfield Sentry. (*Id.* at ¶ 30.) Fairfield Sentry was based out of New York and had its principal place of business in New York. (*Id.*) Although technically registered in the BVI, Fairfield Sentry had no employees or offices there, and at all times, operational decisions were made by FGG employees in New York.[10] (Proffered Allegations at ¶ 35.) In its BLMIS account opening documents, FGG listed

---

[9] Through the Chicago Branch, the Hapoalim Defendants also communicated directly with, and received in New York account related information from, BLMIS, by virtue of the Chicago Branch's participation as a lender in a credit facility secured by a borrower's BLMIS customer account. (*Id*. at ¶¶ 27-29.)

[10] *See SEC v. Gruss*, 2012 WL 3306166 at *3 (S.D.N.Y. Aug 13, 2012) (finding that issues of fact existed regarding whether an offshore fund was "foreign" for purposes of extraterritoriality where complaint alleged that operational and investment decisions for the offshore fund were made in New York, "such that for all intents and purposes, the [offshore fund] was based in New York").

5

Fairfield Sentry's address as in the United States. (*Id.* at ¶ 37.) Fairfield Sentry's initial and on-going due diligence on BLMIS was conducted in New York, and the operative legal documents for its BLMIS accounts were governed by New York law. (*Id.* at ¶¶ 39, 41-42.) BLMIS in New York served as Fairfield Sentry's investment manager and implemented the split-strike conversion strategy for Fairfield Sentry. (*Id.* at ¶ 8.)

Kingate Global similarly had no physical offices, no employees, and transacted no meaningful business in the BVI where it was registered. (*Id.* at ¶ 58.) Instead, Kingate Global operated through investment managers, consultants, and other service providers with substantial connections to the United States. (*Id*. at ¶¶ 60, 68-77.) BLMIS in New York was the investment manager, executing broker, and custodian for Kingate Global's assets, and thus control over Kingate Global rested entirely with BLMIS in New York. (*Id.* at ¶ 9.) New York was the hub for Kingate Global's due diligence on BLMIS, and Kingate Global's agreements with BLMIS were governed by New York law. (*Id*. at ¶¶ 62-63, 76.)

## CONCLUSION

For the forgoing reasons and those stated in the Trustee's Main Brief, the Hapoalim Defendants' motion to dismiss should be denied and the Trustee's motion for leave to amend his Complaint should be granted.

6

| | |
|---|---|
| Dated:  June 26, 2015<br>New York, New York | By:  /s/ Thomas L. Long<br>Baker & Hostetler LLP<br>45 Rockefeller Plaza<br>New York, New York  10111<br>Telephone: (212) 589-4200<br>Facsimile: (212) 589-4201<br>David J. Sheehan<br>Thomas L. Long<br>Matthew D. Feil<br>Hannah C. Choate<br><br>*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Estate of Bernard L. Madoff* |