**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee*
*for the Substantively Consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities LLC*
*and the Estate of Bernard L. Madoff*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (SMB) |
| Plaintiff-Applicant | SIPA Liquidation |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | Adv. Pro. No. 12-01565 (SMB) |
| Plaintiff, | |
| v. | |
| STANDARD CHARTERED FINANCIAL SERVICES (LUXEMBOURG) S.A., as represented by its liquidator Hanspeter Krämer, f/k/a AMERICAN EXPRESS FINANCIAL SERVICES (LUXEMBOURG) S.A. and f/k/a AMERICAN EXPRESS BANK (LUXEMBOURG) S.A., STANDARD CHARTERED BANK INTERNATIONAL (AMERICAS) LTD., F/K/A AMERICAN EXPRESS BANK INTERNATIONAL, and STANDARD CHARTERED INTERNATIONAL (USA) LTD., f/k/a AMERICAN EXPRESS BANK LTD., | |

Defendants.

**THE TRUSTEE'S SUPPLEMENTAL MEMORANDUM
OF LAW IN OPPOSITION TO STANDARD CHARTERED
FINANCIAL SERVICES (LUXEMBOURG) S.A.'S
MOTION TO DISMISS BASED ON EXTRATERRITORIALITY AND IN
<u>SUPPORT OF THE TRUSTEE'S MOTION FOR LEAVE TO AMEND</u>**

The Trustee[1] respectfully submits this memorandum as a supplement to his Main Brief, specifically opposing the motion to dismiss by defendant Standard Chartered Financial Services (Luxembourg) S.A. ("SCFS"), and in further support of the Trustee's motion to amend the complaint to add his Proffered Allegations against SCFS ("PA").[2]

## Argument

From December 11, 2002 through December 11, 2008, SCFS received at least $343,673,105 in customer property that originated from BLMIS ("Transfers"): $274,029,164 from Fairfield Sentry Limited ("Fairfield Sentry"); $15,169,706 from Fairfield Sigma Limited ("Fairfield Sigma" with Fairfield Sentry, "Fairfield Funds"); and $54,474,235 from Kingate Global Fund Ltd. ("Kingate Global" with Fairfield Funds, "BLMIS Feeder Funds"). PA ¶ 1. The Trustee seeks to recover these Transfers.

Under the District Court's Extraterritoriality Decision,[3] the Trustee must only put forth "specific facts suggesting a domestic transfer" to avoid dismissal.[4] In making this determination, this Court must review "the location of the transfers as well as the component events of those transactions."[5] This is a fact-based inquiry in which all reasonable inferences are to be drawn in the Trustee's favor.[6]

---

[1] Unless otherwise indicated, capitalized terms shall have the meaning ascribed to them in the Trustee's Main Brief filed contemporaneously with this supplement and fully incorporated herein.
[2] SCFS was formerly known as American Express Financial Services (Luxembourg) S.A. and also as American Express Bank (Luxembourg) S.A.
[3] *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 513 B.R. 222, 232-33 (S.D.N.Y. 2014) ("Extraterritoriality Decision").
[4] *Id.* at 232 n.4.
[5] *Id.* at 227 (quoting *Maxwell Commc'n Corp. v. Societe General PLC*, 186 B.R. 807, 817 (S.D.N.Y. 1995) ("*Maxwell I*")).
[6] *See, e.g., Anwar v. Fairfield Greenwich Ltd.*, 728 F. Supp. 2d 372, 403-05 (S.D.N.Y. 2010); *Mastafa v. Chevron Corp.*, 770 F.3d 170, 182 (2d Cir. 2014); *European Cmty. v. RJR Nabisco, Inc*., 764 F.3d 129, 141 (2d Cir. 2014).

Here, the component events of the transactions comprising the Transfers were predominantly domestic. SC New York[7] sponsored the Defendants' relationship with BLMIS. PA ¶¶ 25, 80. SCFS merely provided back-office operations and only nominally held BLMIS Feeder Fund shares for SC New York. *Id.* ¶¶ 8, 39-41. Moreover, the Defendants received their transfers from the BLMIS Feeder Funds, which operated from New York, and the Defendants ceded control over their U.S.-based investments to BLMIS. *Id.* ¶¶ 1, 80-145.

SCFS argues that because it was formally organized under Luxembourg and the BLMIS Feeder Funds from which it received the Transfers were formally organized under the laws of the Territory of the British Virgin Islands ("BVI"), it is entitled to a finding that the Transfers are "purely foreign." SCFS's analysis is contrary to the *Maxwell I* "component events" analysis embraced by the District Court in the Extraterritoriality Decision,[8] and ignores the Second Circuit's requirement that a court consider the economic realities and legal underpinnings of a transaction.[9]

Finally, the Defendants ignore that the Fairfield Funds' principal place of business was in the United States, and that Kingate Global's operations were based in New York. *Id.* ¶¶ 84-145.

The Defendants should not be able to hide behind a tangential foreign connection to avoid this Court's scrutiny. SCFS's motion should be denied, and the Trustee should be allowed to amend the complaint to add the Proffered Allegations.

---

[7] SC New York, known as Standard Chartered International (USA) Ltd., was formerly known as American Express Bank Ltd.

[8] *See* Extraterritoriality Decision at 227 (citing *Maxwell I*, 186 B.R. at 817).

[9] *Parkcentral Global Hub Ltd. v. Porsche Auto. Holdings SE*, 763 F.3d 198, 216 (2d Cir. 2014) (rejecting single-factor, bright-line rule as appropriate for extraterritoriality analysis to ascertain whether foreign or domestic elements "predominate").

I.      THE TRANSFERS ARE DOMESTIC IN NATURE

    A.      **The Defendants' BLMIS-Related Operations and the Component Events of the Transactions Underlying the Transfers Were Predominantly Domestic**

BLMIS-related products were managed through SC New York's private bank platform ("Private Bank"). PA ¶¶ 17-20. High-level employees in New York sponsored the creation of, and oversaw investment in, BLMIS-related investment products. *Id.* ¶¶ 17-34. SC New York directed this activity and worked with defendant SC Miami[10] to sell investments in the BLMIS Feeder Funds, which were designed to preclude U.S. taxpayers as shareholders. *Id.* ¶¶ 35, 36, 38. Thus, SC New York and SC Miami could not hold shares of those funds directly, leading SC New York to use SCFS as the nominee to purchase shares in the BLMIS Feeder Funds as an administrative matter. *Id.* ¶¶ 38-39.

Defendants' BLMIS-related investment operations were centered in New York. *Id.* ¶¶ 6, 17-20. Not only did key personnel from New York sit on the committees and groups responsible for overseeing BLMIS-related investments, but notably, no one from SCFS sat on any such committees or groups. *Id.* ¶¶ 19, 21-34. SC New York executives were responsible for the approval, due diligence, and oversight of the BLMIS-related investments as well as the allocation of Fairfield Sentry to Private Bank clients. *Id.* ¶¶ 21-34. All of the dealings between SC New York, SC Miami, and/or SCFS on the one hand, and the Fairfield Funds and their management on the other, occurred in New York. *Id.* ¶¶ 49, 60-65, 69-70, 74-76, 79, 82.

By investing in the BLMIS Feeder Funds, the Defendants sought to profit from investing in the U.S. markets with BLMIS in New York, and its exclusively U.S.-based investment strategy. *Id.* ¶¶ 80-83. Moreover, the Defendants knew that BLMIS, an SEC registered broker-

---

[10] SC Miami, known as Standard Chartered Bank International (Americas) Ltd., was formerly known as American Express Bank International.

dealer, was the BLMIS Feeder Funds' prime broker, investment adviser, and custodian of nearly all, if not all, of their assets. PA ¶ 81. Furthermore, the Defendants knew that BLMIS was a SIPC member, and in the event of BLMIS's insolvency, SIPC could appoint a trustee and that the Defendants' investments would be protected under U.S. law. *Id.*[11]

In connection with the transactions, the Private Bank dealt exclusively with FGG's New York personnel. *Id.* at ¶¶ 49, 69, 75-76, 79, 82. The agreements governing SCFS's investment transaction with the Fairfield Funds expressly provided that New York law would govern those investments, and SCFS agreed to be subject to the jurisdiction of courts within the State of New York. *Id.* ¶¶ 45-46, 51, 58.

Finally, through the operation of the Private Bank, the Defendants used New York bank accounts to repeatedly transfer funds to and from the BLMIS Feeder Fund investments. *Id.* ¶¶ 17, 60-63. Pursuant to the BLMIS Feeder Fund subscription agreements, SCFS sent its funds at least 236 times in the approximate total amount of $649,988,571 from 2003 to 2008 to a correspondent bank account in New York, for ultimate deposit in a BLMIS Feeder Fund bank account. *Id.* ¶ 63. From the BLMIS Feeder Fund bank accounts, the funds were deposited in BLMIS's account at JPMorgan Chase Bank NA in New York. *Id.* The Defendants also used their correspondent bank account in New York repeatedly—at least 174 times from 2003 to 2008—to receive approximately $328,503,399 in Transfers from the BLMIS Feeder Funds. *Id.* ¶ 62.

---

[11] Moreover, the Defendants previously argued in this case that Bankruptcy Code section 546(e)'s safe harbor should shield their Transfers from suit precisely because of their connection to the U.S. securities markets into which BLMIS purported to invest. *See* Memorandum of Law in Support of Motion to Withdraw the Reference to the Bankruptcy Court at 9-12, *Picard v. Standard Chartered Fin. Serv. (Luxembourg) S.A.*, No. 12-01565 Dkt. No. 30 (Bankr. S.D.N.Y. Aug. 16, 2012). This argument is inconsistent with the Defendants' current assertion that their transactions lack sufficient domestic connections for purposes of extraterritoriality. The Defendants should not be allowed to have it both ways, taking advantage of U.S. law when it suits them and running from it when it does not.

**B.    Defendants Received Transfers from the Fairfield Funds that Maintained Their Principal Place of Business in New York**

The Fairfield Funds maintained their principal place of business in New York. PA ¶¶ 84-117. FGG is a New York-based *de facto* partnership created by U.S. citizens that created, operated, and controlled the largest BLMIS Feeder Fund, Fairfield Sentry. *Id.* ¶¶ 84-86. While the Fairfield Funds were organized as international business companies under BVI law, from their inception until its liquidation in 2009, the Fairfield Funds had no employees or offices in the BVI, but instead were controlled and operated by FGG personnel in New York. PA ¶¶ 87-89, 110.

**C.    Defendants Received Transfers From Kingate Global Whose Operations Were Based in New York**

Defendants also received transfers from Kingate Global, which invested exclusively with BLMIS in New York and, together with its purported investment manager, consultant, and other service providers, formed an enterprise with a single economic purpose: to make money from a New York-based investment operation purporting to invest exclusively in U.S. markets. *Id.* ¶¶ 118-45. Kingate Global had no physical offices, no employees, and transacted no meaningful business in the BVI where it was organized. *Id.* ¶ 121. Instead, Kingate Global operated through service providers with substantial connections to the United States, and was co-managed by Kingate Management Limited, which operated through agents in New York where due diligence on BLMIS was performed. *Id.* ¶¶ 122-45.

<u>CONCLUSION</u>

For the foregoing reasons and those stated in the Trustee's Main Brief, the Trustee respectfully requests that the Court deny SCFS's motion to dismiss and grant the Trustee's motion to amend the complaint.

Dated: June 26, 2015                    /s/ David J. Sheehan
      New York, New York           **Baker & Hostetler LLP**
                                       45 Rockefeller Plaza
                                       New York, New York 10111
                                       Telephone:  (212) 589-4200
                                       Facsimile:  (212) 589-4201
                                       David J. Sheehan
                                       Thomas L. Long
                                       Deborah H. Renner
                                       Robertson D. Beckerlegge
                                       Jonathan A. Forman

                                     *Attorneys for Irving H. Picard, Trustee*
                                     *for the Substantively Consolidated SIPA*
                                     *Liquidation of Bernard L. Madoff Investment*
                                     *Securities LLC and the estate of Bernard L. Madoff*