**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee*
*for the substantively consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities LLC*
*and the estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (SMB) |
| Plaintiff-Applicant, | SIPA LIQUIDATION |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | Adv. Pro. No. 12-01694 (SMB) |
| Plaintiff, | |
| v. | |
| BANQUE CANTONALE VAUDOISE, | |
| Defendant. | |

**THE TRUSTEE'S SUPPLEMENTAL MEMORANDUM OF LAW IN
OPPOSITION TO BANQUE CANTONALE VAUDOISE'S MOTION TO DISMISS
BASED ON EXTRATERRITORIALITY AND IN FURTHER SUPPORT OF
<u>THE TRUSTEE'S MOTION FOR LEAVE TO AMEND THE COMPLAINT</u>**

Irving H. Picard (the "Trustee"), as trustee for the liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS"), and the substantively consolidated estate of Bernard L. Madoff, respectfully submits this supplemental memorandum of law in opposition to the consolidated motion to dismiss joined by Banque Cantonale Vaudoise ("BCV") claiming that the Trustee's recovery of the subsequent transfers is barred as an extraterritorial application of Bankruptcy Code § 550, and in support of the Trustee's motion for leave to amend his complaint. As set forth below and in the accompanying Proffered Allegations, the Trustee has pled specific facts evidencing that the subsequent transfers made to BCV are sufficiently domestic such that the recovery of the transfers does not require an extraterritorial application of SIPA or the Bankruptcy Code. Accordingly, BCV's motion to dismiss must be denied and the requested amendment should be allowed.

## ARGUMENT

The District Court returned this action to this Court to determine whether the Trustee's claims against BCV seek the recovery of "purely foreign" transfers requiring an extraterritorial application of SIPA or Bankruptcy Code § 550.[1] Under the Extraterritoriality Decision, the Trustee need only "put forth specific facts suggesting a domestic transfer" to avoid dismissal.[2] In making this determination, there is no bright-line test to determine whether a transaction is extraterritorial;[3] rather this Court must review "the location of the transfers as well as the

---

[1] *Securities Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 513 B.R. 222, 232–33 (S.D.N.Y. 2014) (the "Extraterritoriality Decision").

[2] *Id.* at 232 n.4.

[3] *Parkcentral Global Hub Ltd. v. Porsche Auto. Holdings SE*, 763 F.3d 198 at 216-17 (2d Cir. 2014).

component events of those transactions."[4] This is a fact-based inquiry for which all reasonable inferences are to be drawn in the Trustee's favor.[5]

BCV received at least $11,533,129 in subsequent transfers of BLMIS customer property from Fairfield Sentry Limited ("Fairfield Sentry"), which invested virtually all of its assets with BLMIS in New York. (Proffer ¶ 1.)

BCV argues because it and Fairfield Sentry are organized under foreign law, BCV is entitled to a finding that the transfers it received are "purely foreign" and the Trustee's claims must be dismissed. BCV is wrong. Its argument ignores the relevant legal analysis. As set forth below, a comprehensive review of the component events of the transactions demonstrates the transfers were predominantly domestic, not foreign—let alone "purely foreign"—and therefore do not require an extraterritorial application of SIPA or the Bankruptcy Code. BCV entered into the transactions and received the transfers: (1) knowing it was essentially investing in New York-based BLMIS, (2) pursuant to domestic agreements, (3) into and through New York bank accounts, (4) in connection with business BCV and its U.S.-based agent conducted in the United States, and (5) from an investment fund based in and profiting from New York.

First, BCV knew BLMIS's control over its investments in Fairfield Sentry was so extensive it was essentially investing with BLMIS in New York. According to its Fairfield Sentry representative, BCV wanted to invest in Fairfield Sentry because it had the "Madoff bug." (*Id.* ¶ 4.) Fairfield Sentry invested at least 95% of its assets with BLMIS. (*Id.* ¶ 2.) BCV knew BLMIS controlled every aspect of Fairfield Sentry's investments in New York: (i) Fairfield Sentry delegated all investment decisions to BLMIS as its investment advisor; (ii) BLMIS

---

[4] Extraterritoriality Decision at 227 (quoting *Maxwell Commc'n Corp. v. Societe General PLC (In re Maxwell Commc'n Corp.)*, 186 B.R. 807, 817 (S.D.N.Y. 1995)).

[5] *See, e.g.*, *Anwar v. Fairfield Greenwich Ltd.*, 728 F. Supp. 2d 372, 403–05 (S.D.N.Y. 2010).

2

maintained custody of the assets in New York; and (iii) BLMIS purported to execute trades in U.S. securities on behalf of Fairfield Sentry. (*Id.* ¶¶ 5–9.) Fairfield Sentry's private placement memoranda ("PPM") called BLMIS "essential" to Fairfield Sentry's profitability. (*Id.* ¶ 10.)

BCV invested in Fairfield Sentry *because* its money would ultimately be placed with BLMIS, and in turn, Madoff would invest its assets in U.S. securities traded on U.S. markets. But for BLMIS and its U.S.-based investment strategy, BCV would not have invested in Fairfield Sentry. As Judge Lifland concluded in a similar matter, "[t]he movement of money to and from BLMIS in the United States … was not fortitious or incidental; instead, it was 'the ultimate objective' and the '*raison d'etre*' of the Agreement between" the investor and Fairfield Sentry.[6]

Second, the subscription agreement governing BCV's investments with and transfers from Fairfield Sentry demonstrated the transactions were domestic. BCV agreed that New York law would govern the agreement and agreed to submit to venue in New York and the jurisdiction of New York courts. (*Id.* ¶¶ 11–12.) Accordingly, BCV had every reason to expect to be subject to U.S. law and courts with respect to the transfers it received from Fairfield Sentry.

Third, BCV knowingly directed funds to and from BLMIS using New York bank accounts in connection with its investments. Between 2003 and 2008, BCV sent subscription payments to a New York correspondent account for Fairfield Sentry, who ultimately sent the funds to BLMIS's bank account in New York. (*Id.* ¶ 13.) BCV also received each of its redemption payments from a New York correspondent account. (*Id.* ¶ 14.) The use of New York bank accounts demonstrates the transfers were not "purely foreign."

---

[6] *Picard v. Bureau of Labor Ins.*, 480 B.R. 501, 523 (Bankr. S.D.N.Y. 2012).

3

<u>Fourth</u>, to facilitate its investments in Fairfield Sentry, BCV conducted business in New York with Fairfield Greenwich Group ("FGG"), a *de facto* partnership based in New York that created, operated, controlled, and marketed the Fairfield Funds. BCV employees visited FGG's New York office on at least three occasions to conduct due diligence on Fairfield Sentry. (*Id.* ¶ 15.) BCV's primary contact at FGG was Philip Toub, a partner from FGG's New York office. (*Id.* ¶ 16.) BCV employees regularly communicated with Toub and other FGG employees in New York. (*Id.*)

BCV also engaged U.S.-based agent Gottex Fund Management Ltd. ("Gottex") to conduct due diligence on Fairfield Sentry on BCV's behalf. (*Id.* ¶ 17.) Gottex was incorporated in Delaware, was registered to conduct business in New York, and maintained offices in New York and Boston. (*Id.*) Gottex employees from New York and Boston met with and received due diligence information from FGG in 2007. (*Id.* ¶ 18.)

<u>Fifth</u>, Fairfield Sentry, which sent the transfers to BCV, had extensive connections with the United States. Fairfield Sentry's principal place of business was in New York. In 1988, U.S. citizens and residents, Walter Noel and Jeffrey Tucker, founded FGG. (*Id.* ¶ 20.) Noel and Tucker formally organized Fairfield Sentry as an international business company under BVI law (*id.* ¶ 23), but it was a shell corporation present in the BVI solely on paper. Its BVI registered address was a post office box care of a local trust company owned and operated by a local law firm. (*Id.* ¶ 24.) From its inception until its liquidation in 2009, Fairfield Sentry had no employees and no offices. (*Id.*) As an international business company, BVI law restricted Fairfield Sentry from doing business in the BVI except with other BVI international business companies. (*Id.* ¶ 23.)

4

Beginning in 1990, Tucker opened Fairfield Sentry's BLMIS accounts. (*Id.* ¶ 26.) In the account opening documents, Tucker provided a U.S. mailing address. (*Id.*) Later, FGG requested BLMIS to send all Fairfield Sentry account information to FGG's New York headquarters. (*Id.*)

At all relevant times, Fairfield Sentry was operated almost entirely by FGG's New York headquarters personnel who maintained final control of Fairfield Sentry's bank accounts and relationships with Fairfield Sentry's back-office service providers. (*Id.* ¶¶ 29–31.) FGG New York headquarters personnel monitored Fairfield Sentry's investments; managed the relationships with BLMIS; directed investments into and out of BLMIS as well as into and out of Fairfield Sentry; marketed Fairfield Sentry; approved and controlled all subscriptions for Fairfield Sentry shares; maintained all of Fairfield Sentry's books and records; and made all strategic and operational decisions regarding Fairfield Sentry. (*Id.* ¶¶ 30–31)

## CONCLUSION

For the foregoing reasons and those stated in the Trustee's main brief, the Trustee respectfully requests that the Court deny BCV's motion to dismiss and grant the Trustee's motion for leave to amend his complaint.

Dated: June 26, 2015  /s/ Thomas L. Long
      New York, New York  **Baker & Hostetler LLP**
                                      45 Rockefeller Plaza
                                      New York, New York 10111
                                      Telephone: (212) 589-4200
                                      Facsimile: (212) 589-4201
                                      David J. Sheehan
                                      Thomas L. Long
                                      Torello H. Calvani

                                      *Attorneys for Irving H. Picard, Trustee*
                                      *for the Substantively Consolidated SIPA*
                                      *Liquidation of Bernard L. Madoff Investment*
                                      *Securities LLC and the estate of Bernard L.*
                                      *Madoff*