**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee*
*for the Substantively Consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities LLC*
*and the estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (SMB) |
| Plaintiff-Applicant, | SIPA Liquidation |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | Adv. Pro. No. 12-01577 (SMB) |
| Plaintiff, | |
| v. | |
| UBS DEUTSCHLAND AG as successor in interest to Dresdner Bank Lateinamerika AG, and LGT BANK (SWITZERLAND) LTD. as successor in interest to Dresdner Bank (Schweiz) AG, | |
| Defendants. | |

**TRUSTEE'S SUPPLEMENTAL MEMORANDUM OF LAW IN**
**OPPOSITION TO DEFENDANT UBS DEUTSCHLAND AG'S MOTION**
**TO DISMISS BASED ON EXTRATERRITORIALITY AND IN FURTHER**
**SUPPORT OF TRUSTEE'S MOTION FOR LEAVE TO AMEND COMPLAINTS**

The Trustee respectfully submits this supplemental memorandum opposing the motion to dismiss on extraterritoriality filed by defendant UBS Deutschland AG ("UBS Deutschland") as successor in interest to Dresdner Bank Lateinamerika AG's ("DBLA"), and in further support of the Trustee's motion for leave to amend the complaint.[1]  As set forth below the Proffered Allegations Pertaining to the Extraterritoriality Issue ("Proffered Allegations") plead facts evidencing the subsequent transfers received by DBLA are predominantly domestic under the standard set forth in the Extraterritoriality Decision,[2] such that the Trustee's action does not require an extraterritorial application of SIPA or Bankruptcy Code § 550.  UBS Deutschland's motion to dismiss should be denied and the Trustee's motion for leave to amend the complaint should be granted.

I.    **BACKGROUND & LEGAL STANDARD**

This Court must determine whether the Trustee's claims against DBLA seeking the recovery of BLMIS customer property require an extraterritorial application of SIPA and Bankruptcy Code § 550.[3]  Under the Extraterritoriality Decision, the Trustee need only put forth "specific facts suggesting a domestic transfer" to avoid dismissal.[4]  To make this determination, this Court must review the "location of the transfers as well as the component events of those transactions."[5]  There is no bright-line test[6]—it is a factual inquiry in which all reasonable

---

[1] The Trustee's supplemental memorandum opposing the motion to dismiss by defendant LGT Bank (Switzerland) Ltd. as successor in interest to Dresdner Bank (Schweiz) AG is filed separately.

[2] *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC* (*In re Madoff Sec.*)*,* 513 B.R. 222 (S.D.N.Y. 2014) ("Extraterritoriality Decision").

[3] *Id.* at 232–33.

[4] *Id.* at 232, n.4.

[5] *Id.* at 227 (quoting *Maxwell Commc'n Corp. v. Societe General PLC* (*In re Maxwell Commc'n Corp.*), 186 B.R. 807, 817 (S.D.N.Y. 1995) ("*Maxwell I*")).

[6] *Parkcentral Global Hub Ltd. v. Porsche Auto. Holdings SE*, 763 F.3d 198, 216–17 (2d Cir. 2014) (rejecting single-factor, bright-line rule as appropriate for extraterritoriality analysis to ascertain whether foreign or domestic elements "predominate").

1

inferences are to be drawn in the Trustee's favor.[7]

The Trustee's Proffered Allegations alleges DBLA received at least $8,409,403 in subsequent transfers of BLMIS customer property from Fairfield Sentry Limited ("Fairfield Sentry") and Fairfield Sigma Limited ("Sigma"). Proffered Allegations ¶ 3. DBLA was a German bank with an office in Miami, Florida. *Id.* ¶ 10. Fairfield Sentry was the largest of many BLMIS feeder funds ("Feeder Funds")—single-purpose investment funds that pooled their investors' assets to invest with BLMIS in New York, capitalizing on its consistent returns. *Id.* ¶ 5. Sigma was a "currency fund," meaning it accepted subscriptions in Euros, converted the money to U.S. Dollars, and then invested 100% of its assets in Fairfield Sentry (collectively, Fairfield Sentry and Sigma are the "Fairfield Funds"). *Id.* ¶¶ 5, 31. The Trustee alleges that Fairfield Sentry withdrew funds from its BLMIS accounts and transferred the funds to DBLA, or to Sigma, which in turn transferred the funds to DBLA. *Id.* ¶ 3.

UBS Deutschland argues simplistically that because DBLA was formally organized under the laws of Germany, and because the Fairfield Funds were formally organized under the laws of the Territory of the British Virgin Islands ("BVI"), it is entitled to a finding that those transfers are "purely foreign" and should be dismissed under the Extraterritoriality Decision. UBS Deutschland is wrong and fails to consider the *Maxwell I* "component event" analysis embraced by the District Court in the Extraterritoriality Decision,[8] and Second Circuit precedent requiring courts to look at the economic and legal realities of a transaction to determine whether a claim is "sufficiently domestic" for purposes of extraterritoriality.[9] As explained further below, the Trustee's recovery claims against DBLA do not require an extraterritorial application

---

[7] *See, e.g., Anwar v. Fairfield Greenwich Ltd.*, 728 F. Supp. 2d 372, 403–05 (S.D.N.Y. 2010).

[8] Extraterritoriality Decision, 513 B.R. at 227.

[9] *See, e.g., Mastafa v. Chevron Corp.*, 770 F.3d 170, 182 (2d Cir. 2014); *European Cmty. v. RJR Nabisco, Inc.*, 764 F.3d 129, 141–42 (2d Cir. 2014); *Parkcentral Global Hub Ltd.*, 763 F.3d at 216.

2

of SIPA and Bankruptcy Code § 550.

## II. THE TRANSFERS AND COMPONENT EVENTS OF THE TRANSACTIONS WERE PREDOMINANTLY DOMESTIC

The component events of the transactions were predominantly domestic. First, DBLA purposefully invested in the Fairfield Funds to profit from BLMIS in New York. Second, DBLA's Miami-based employees worked with Fairfield Sentry's creator, Fairfield Greenwich Group ("FGG") and its New York employees to conduct due diligence on the Fairfield Funds, Madoff, and BLMIS in connection with its investments and subscribe funds to the Fairfield Funds. Third, DBLA agreed it was subject to New York law, jurisdiction, and venue. Fourth, DBLA repeatedly used a New York bank account to transfer money to and from Fairfield Sentry. Finally, because the Fairfield Funds maintained their principal place of business in New York, they were domestic residents.

### A. DBLA's Conduct Put the United States at the Center of the Transactions

DBLA purposefully invested in the Fairfield Funds to profit from BLMIS in New York. Proffered Allegations ¶ 16. DBLA knew BLMIS in New York served as the investment adviser, broker-dealer, and custodian for the Fairfield Funds, and that control of the Fairfield Funds' investments rested entirely with BLMIS. *Id.* DBLA also knew BLMIS purportedly invested the Fairfield Funds' assets in the U.S. market. *Id.* Armed with this knowledge, DBLA purposefully invested in the Fairfield Funds to profit from the U.S. markets through BLMIS. *Id.*

DBLA utilized its Miami, Florida office to conduct due diligence on the Fairfield Funds, Madoff, and BLMIS in New York in connection with its investments. *Id.* ¶¶ 14–17. New York-based FGG partner Lourdes Barreneche traveled to Miami to meet with at least 13 DBLA employees for a due diligence and marketing meeting, during which DBLA decided to invest in Fairfield Sentry. *Id.* ¶ 15. Employees in this Miami office directed Fairfield Sentry subscription

3

payments on behalf of DBLA and worked with Barreneche to do so. *Id.* ¶ 17. As a result of this due diligence, DBLA knew that Madoff controlled all aspects of its investments and that it ceded control of such decision to BLMIS in exchange for profiting from the U.S. markets. *Id.* ¶ 16.

DBLA executed subscription agreements in connection with its investments in the Fairfield Funds that contained New York choice of law provisions and specified that DBLA agreed it was subject to the jurisdiction and venue of the New York courts in connection with any disputes that arose related to the agreements. *Id.* ¶¶ 18–19.

DBLA directed all of its subscription payments to a New York HSBC Bank USA account for ultimate deposit in Fairfield Sentry's bank account. *Id.* ¶ 21. From Fairfield Sentry's bank account, the funds were deposited in BLMIS's account at JPMorgan Chase Bank NA in New York. *Id.* DBLA repeatedly utilized its own account at Citibank in New York to receive redemption payments from Fairfield Sentry. *Id.* ¶ 22.

### B.    The Fairfield Funds Maintained Their Principal Place of Business in New York

In 1988, U.S. citizens and residents, Walter Noel and Jeffrey Tucker, founded Fairfield FGG, a New York-based *de facto* partnership. *Id.* ¶¶ 12, 30. Through FGG, Noel and Tucker organized Fairfield Sentry, as well as a "currency fund," Sigma that invested all of its assets in Fairfield Sentry. *Id.* ¶¶ 31, 33, 54.

Noel and Tucker formally organized the Fairfield Funds as international business companies under BVI law. *Id.* ¶¶ 33, 54. As international business companies, BVI law restricted the Fairfield Funds from doing business with other BVI citizens and residents except with other BVI international business companies. *Id.* The Fairfield Funds were shell corporations present in the BVI solely on paper. *Id.* ¶¶ 34, 55. Their BVI statutorily required registered address was a post office box care of a local trust company owned and operated by a

4

local law firm. *Id.*

From their inception until their liquidation in 2009, the Fairfield Funds had no employees and no offices. *Id.* At all relevant times, the Fairfield Funds were operated almost entirely by FGG's New York personnel who maintained final control of the Fairfield Funds' bank accounts and relationships with the Fairfield Funds' back office service providers. *Id.* ¶¶ 36–39.

Beginning in 1990, Tucker opened Fairfield Sentry's BLMIS accounts. *Id.* ¶ 36. In the account opening documents, Tucker identified Fairfield Sentry's mailing address as FGG-member company Fairfield International Managers, Inc.'s office in Greenwich, Connecticut and directed BLMIS to send Fairfield Sentry's monthly account statements, trade confirmations, and correspondence to the same office. *Id.* In January 1998, FGG requested BLMIS to send all Fairfield Sentry account information to FGG's New York headquarters. *Id.*

From the Fairfield Funds' inception, FGG personnel at its New York headquarters controlled the sales and subscriptions of the funds' shares. *Id.* ¶¶ 41, 57. From at least January 1, 2002, all Fairfield Sentry subscription agreements contained New York choice of law provisions, and provided for venue and jurisdiction for any disputes in New York. *Id.* ¶ 41.

At all relevant times, FGG New York personnel monitored the Fairfield Funds' investments; managed the relationships with BLMIS; directed investments into and out of BLMIS; approved its investors' subscriptions and redemptions; marketed the Fairfield Funds; maintained all of the Fairfield Funds' books and records at the FGG New York headquarters; and made all strategic decisions regarding the Fairfield Funds. *Id.* ¶ 40.

### III.  CONCLUSION

For the foregoing reasons and those stated in the Trustee's Main Brief, this Court should deny UBS Deutschland's motion to dismiss and grant the Trustee's motion for leave to amend the complaint.

| | |
|---|---|
| Dated: June 26, 2015<br>      New York, New York | */s/* Thomas L. Long<br>**Baker & Hostetler LLP**<br>45 Rockefeller Plaza<br>New York, New York 10111<br>Telephone: (212) 589-4200<br>Facsimile: (212) 589-4201<br>David J. Sheehan<br>Thomas L. Long<br><br>**Baker & Hostetler LLP**<br>65 East State Street, Suite 2100<br>Columbus, Ohio 43215<br>Telephone: (614) 228-1541<br>Facsimile: (614) 462-2616<br>Lauren M. Hilsheimer<br>Melonia A. Bennett<br><br>*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the estate of Bernard L. Madoff* |

6