**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee*
*for the Substantively Consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities LLC*
*and the estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (SMB) |
| Plaintiff-Applicant, | SIPA Liquidation |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | Adv. Pro. No. 12-01577 (SMB) |
| Plaintiff, | |
| v. | |
| UBS DEUTSCHLAND AG as successor in interest to Dresdner Bank Lateinamerika AG, and LGT BANK (SWITZERLAND) LTD. as successor in interest to Dresdner Bank (Schweiz) AG, | |
| Defendants. | |

**TRUSTEE'S SUPPLEMENTAL MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANT LGT BANK (SWITZERLAND) LTD. AG'S MOTION
TO DISMISS BASED ON EXTRATERRITORIALITY AND IN FURTHER
SUPPORT OF TRUSTEE'S MOTION FOR LEAVE TO AMEND COMPLAINTS**

The Trustee respectfully submits this supplemental memorandum in opposition to the motion to dismiss based on extraterritoriality filed by defendant LGT Bank (Switzerland) Ltd. ("LGT Switzerland") as successor in interest to Dresdner Bank (Schweiz) AG's ("Dresdner Schweiz"), and in further support of the Trustee's motion for leave to amend the complaint.[1] As set forth below, the Proffered Allegations Pertaining to the Extraterritoriality Issue ("Proffered Allegations") plead facts evidencing the subsequent transfers received by Dresdner Schweiz are predominantly domestic under the standard set forth in the Extraterritoriality Decision,[2] such that the Trustee's action does not require an extraterritorial application of SIPA or Bankruptcy Code § 550. LGT Switzerland's motion to dismiss should be denied and the Trustee's motion for leave to amend the complaint should be granted.

I. **BACKGROUND**

This Court must determine whether the Trustee's claims seeking recovery of BLMIS customer property from Dresdner Schweiz require an extraterritorial application of SIPA and Bankruptcy Code § 550.[3] Under the Extraterritoriality Decision, the Trustee need only put forth "specific facts suggesting a domestic transfer" to avoid dismissal.[4] To make this determination, this Court must review the "location of the transfers as well as the component events of those transactions."[5] There is no bright-line test[6]—this is a factual inquiry in which all reasonable

---

[1] The Trustee's supplemental memorandum opposing the motion to dismiss by defendant UBS Deutschland AG as successor in interest to Dresdner Bank Lateinamerika AG is filed separately.

[2] *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.),* 513 B.R. 222 (S.D.N.Y. 2014) ("Extraterritoriality Decision").

[3] *Id.* at 232–33.

[4] *Id.* at 232, n.4.

[5] *Id.* at 227 (quoting *Maxwell Commc'n Corp. v. Societe General PLC (In re Maxwell Commc'n Corp.)*, 186 B.R. 807, 817 (S.D.N.Y. 1995) ("*Maxwell I*")).

[6] *Parkcentral Global Hub Ltd. v. Porsche Auto. Holdings SE*, 763 F.3d 198, 216–17 (2d Cir. 2014) (rejecting single-factor, bright-line rule as appropriate for extraterritoriality analysis to ascertain whether foreign or domestic elements "predominate").

1

inferences are to be drawn in the Trustee's favor.[7]

The Trustee's Proffered Allegations state that Dresdner Schweiz received at least $3,378,116 in subsequent transfers of BLMIS customer property from BLMIS feeder funds Fairfield Sentry Limited ("Fairfield Sentry") and Kingate Euro Fund, Ltd. ("Kingate Euro"). Proffered Allegations ¶ 4. Fairfield Sentry was created by Fairfield Greenwich Group ("FGG"), a New York-based *de facto* partnership. *Id.* ¶12. Kingate Euro invested exclusively with BLMIS in New York. *Id.* ¶ 64.

LGT Switzerland argues that simply because Dresdner Schweiz was formally organized under the laws of Switzerland, and because Fairfield Sentry and Kingate Euro were formally organized under the laws of the Territory of the British Virgin Islands ("BVI"), it is entitled to a finding that the transfers at issue are "purely foreign" and must be dismissed under the Extraterritoriality Decision. LGT Switzerland's analysis is contrary to the *Maxwell I* "component event" analysis embraced in the Extraterritoriality Decision,[8] and inconsistent with Second Circuit precedent requiring courts to look at the economic and legal realities of a transaction to determine whether a claim is "sufficiently domestic" for purposes of extraterritoriality.[9] As explained further below, the Trustee's recovery claims against LGT Switzerland do not require an extraterritorial application of SIPA and Bankruptcy Code § 550.

## II. THE TRANSFERS AND COMPONENT EVENTS OF THE TRANSACTIONS ARE PREDOMINANTLY DOMESTIC

Dresdner Schweiz's relationship with Fairfield Sentry and Kingate Euro was centered in New York. First, Dresdner Schweiz purposefully invested in Fairfield Sentry and Kingate Euro to profit from BLMIS in New York. Second, Dresdner Schweiz worked with an FGG New

---

[7] *See, e.g., Anwar v. Fairfield Greenwich Ltd.*, 728 F. Supp. 2d 372, 403–05 (S.D.N.Y. 2010).

[8] Extraterritoriality Decision, 513 B.R. at 227.

[9] *See, e.g., Mastafa v. Chevron Corp.*, 770 F.3d 170, 182 (2d Cir. 2014); *European Cmty. v. RJR Nabisco, Inc.*, 764 F.3d 129, 141–42 (2d Cir. 2014); *Parkcentral Global Hub Ltd.*, 763 F.3d at 216.

2

York-based employee in connection with the transactions. Third, Dresdner Schweiz executed subscription agreements under which it agreed to be subject to New York choice of law, jurisdiction, and venue in connection with its Fairfield Sentry investments. Fourth, Dresdner Schweiz repeatedly utilized New York bank accounts to transfer money to and from Fairfield Sentry. Fifth, Fairfield Sentry's principal place of business was in New York. Finally, Kingate Euro's sole economic purpose was to invest in a New York-based investment operation.

### A. Dresdner Schweiz's Conduct Put New York at the Center of the Transactions

Dresdner Schweiz purposefully invested in Fairfield Sentry and Kingate Euro to profit from BLMIS in New York. Proffered Allegations ¶ 9. Dresdner Schweiz knew BLMIS in New York served as the investment adviser and custodian for Fairfield Sentry and Kingate Euro and that control of their investments rested entirely with BLMIS in New York. *Id.* ¶ 8. Dresdner Schweiz also knew BLMIS purportedly invested Fairfield Sentry's and Kingate Euro's assets in U.S. S&P 100 Index securities, U.S. options, and U.S. Treasurys. *Id.*

Dresdner Schweiz worked with a New York-based FGG investment relations employee, Lauren Ross, to manage Dresdner Schweiz's relationship with FGG and Fairfield Sentry. *Id.* ¶ 24.

Dresdner Schweiz also executed subscription agreements in connection with its investments in Fairfield Sentry, agreeing the agreements would be governed by New York law and disputes would be resolved in New York courts. *Id.* ¶ 25. By executing Fairfield Sentry subscription agreements, Dresdner Schweiz agreed its subscription payments to Fairfield Sentry would flow through a New York HSBC Bank USA account. *Id.* ¶ 27.

In addition, Dresdner Schweiz repeatedly used another New York HSBC Bank USA account for receipt of redemption payments from Fairfield Sentry. *Id.* ¶ 28.

3

### B. Fairfield Sentry Maintained Its Principal Place of Business in New York

In 1988, U.S. citizens and residents, Walter Noel and Jeffrey Tucker, founded FGG. *Id.* ¶¶ 12, 30. Through FGG, Noel and Tucker organized Fairfield Sentry. *Id.* ¶¶ 31, 33.

Noel and Tucker formally organized Fairfield Sentry as an international business company under BVI law. *Id.* ¶ 33. As an international business company, BVI law restricted Fairfield Sentry from doing business with other BVI citizens and residents except with other BVI international business companies. *Id.* Fairfield Sentry was a shell corporation present in the BVI solely on paper. *Id.* ¶ 34. Its BVI statutorily required registered address was a post office box care of a local trust company owned and operated by a local law firm. *Id.*

From its inception until its liquidation in 2009, Fairfield Sentry had no employees and no offices. *Id.* At all relevant times, Fairfield Sentry was operated almost entirely by FGG's New York personnel who maintained final control of Fairfield Sentry's bank accounts and relationships with Fairfield Sentry's back office service providers. *Id.* ¶ 36–39.

FGG New York personnel controlled the sales and subscriptions of Fairfield Sentry's shares. *Id.* ¶ 41. From at least January 1, 2002, all Fairfield Sentry subscription agreements contained New York choice of law provisions, and provided for venue and jurisdiction for any disputes in New York. *Id.*

At all relevant times, FGG New York personnel monitored Fairfield Sentry's investments; managed the relationships with BLMIS; directed investments into and out of BLMIS; approved its investors' subscriptions and redemptions; marketed Fairfield Sentry; maintained all of Fairfield Sentry's books and records; and made all strategic and operational decisions regarding Fairfield Sentry. *Id.* ¶ 40.

4

### C. Kingate Euro's Sole Economic Purpose Was to Invest in New York-based BLMIS

Kingate Euro invested exclusively with BLMIS in New York and, together with its purported investment manager, consultant, and other service providers, formed an enterprise with a single economic purpose: to make money from New York-based BLMIS. *Id.* ¶ 64.

Kingate Euro executed customer agreements, and other accounts opening documents, and delivered the agreements to BLMIS in New York. *Id.* ¶ 68. The agreements were governed by U.S. law, and disputes under the agreements were to be resolved in the United States. *Id.* ¶ 69. The agreements further authorized BLMIS to act as Kingate Euro's investment manager, custodian, and executing broker and to invest Kingate Euro's assets according to Madoff's investment strategy, which purported to involve the purchase and sale of U.S. securities traded only on domestic exchanges. *Id.* ¶ 72. Accordingly, control over Kingate Euro rested entirely with BLMIS in New York. *Id.* ¶¶ 71–73.

Kingate Euro had no physical offices, no employees, and transacted no meaningful business in the BVI. *Id.* ¶ 65. Instead, Kingate Euro operated through service providers with substantial connections to the United States. *Id.* ¶ 66. Kingate Euro was co-managed by Kingate Management Limited ("KML"), which operated through agents in New York. *Id.* ¶ 74. KML engaged consultants FIM Limited and FIM Advisers LLP (together "FIM") to perform due diligence on BLMIS. *Id.* ¶ 77. Although FIM had a London address, its head of due diligence was located in New York and worked its affiliate, FIM (USA) Inc. in New York. *Id.* ¶ 78. From New York, FIM (USA) Inc. monitored and solicited investors for Kingate Euro. *Id.* ¶ 79.

## III. CONCLUSION

For the foregoing reasons and those stated in the Trustee's Main Brief, this Court should deny LGT Switzerland's motion to dismiss and grant the Trustee's motion for leave to amend.

5


| | |
|---|---|
| Dated:  June 26, 2015<br>New York, New York | */s/* Thomas L. Long<br>**Baker & Hostetler LLP**<br>45 Rockefeller Plaza<br>New York, New York 10111<br>Telephone: (212) 589-4200<br>Facsimile: (212) 589-4201<br>David J. Sheehan<br>Thomas L. Long<br><br>**Baker & Hostetler LLP**<br>65 East State Street, Suite 2100<br>Columbus, Ohio 43215<br>Telephone: (614) 228-1541<br>Facsimile: (614) 462-2616<br>Lauren M. Hilsheimer<br>Melonia A. Bennett<br><br>*Attorneys for Irving H. Picard, Trustee*<br>*for the Substantively Consolidated SIPA*<br>*Liquidation of Bernard L. Madoff Investment*<br>*Securities LLC and the estate of Bernard L.*<br>*Madoff* |