**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee*
*for the substantively consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities LLC*
*and the estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (SMB) |
| Plaintiff-Applicant, | SIPA Liquidation |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | Adv. Pro. No. 11-02784 (SMB) |
| Plaintiff, | |
| v. | |
| SOMERS DUBLIN LIMITED, and SOMERS NOMINEES (FAR EAST) LIMITED, | |
| Defendants. | |

**THE TRUSTEE'S SUPPLEMENTAL MEMORANDUM OF LAW IN OPPOSITION TO SOMERS DUBLIN LIMITED'S AND SOMERS NOMINEES (FAR EAST) LIMITED'S MOTION TO DISMISS BASED ON EXTRATERRITORIALITY AND IN FURTHER SUPPORT OF THE <u>TRUSTEE'S MOTION FOR LEAVE TO AMEND THE COMPLAINT</u>**

The Trustee respectfully submits this supplemental memorandum of law in opposition to Somers Dublin Limited's ("Somers Dublin") and Somers Nominees (Far East) Limited's ("Somers Nominees," together the "Somers Defendants") motion to dismiss based on extraterritoriality and in support of the Trustee's motion to amend his complaint. The Trustee's proffered allegations plead specific facts evidencing that the transfers the Somers Defendants received from Fairfield Sentry Limited ("Fairfield Sentry") and Harley International (Cayman) Limited ("Harley," together, the "BLMIS Feeder Funds") are sufficiently domestic under the standards set forth in the Extraterritoriality Decision such that the Trustee's action does not require an extraterritorial application of the Bankruptcy Code or SIPA.[1] Accordingly, the Somers Defendants' motion to dismiss must be denied, and the Trustee should be permitted to amend his complaint.

## BACKGROUND AND LEGAL STANDARD

The District Court returned this action to this Court to determine whether the Trustee's claims against Defendants seek the recovery of "purely foreign" transfers that require an extraterritorial application of SIPA and the Bankruptcy Code.[2] Under the Extraterritoriality Decision, the Trustee must only put forth "specific facts suggesting a domestic transfer" to avoid dismissal.[3] In making this determination, there is no bright-line test to determine whether a transaction is extraterritorial,[4] and the court must review "the location of the transfers as well as the component events of those transactions."[5] This is a fact-based inquiry in which all reasonable

---

[1] *Securities Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 513 B.R. 222 (S.D.N.Y. 2014) (the "Extraterritoriality Decision").

[2] *Id*. at 232–33.

[3] *Id*. at 232 n.4.

[4] *Parkcentral Global Hub Ltd. v. Porsche Automobil Holdings SE*, 763 F.3d 198, 216-17 (2d Cir. 2014).

[5] Extraterritoriality Decision at 227 (quoting *Maxwell Commc'n Corp. v. Societe General PLC (In re Maxwell Commc'n Corp.)*, 186 B.R. 807, 817 (S.D.N.Y. 1995)).

inferences are to be drawn in the Trustee's favor.[6]

The Trustee's Proffer specifically alleges the Somers Defendants received $86,439,850 in subsequent transfers of BLMIS customer property from the BLMIS Feeder Funds, which invested all or at least 95% of their assets with BLMIS in New York. The Somers Defendants argue because they and the BLMIS Feeder Funds were formally organized under the laws of foreign countries, they are entitled to a finding that the transfers they received are "purely foreign" and must be dismissed under the Extraterritoriality Decision. The Somers Defendants are wrong. Their superficial analysis ignores that the transactions have significant domestic components, including, for example, that the BLMIS Feeder Funds maintained their principal places of business in New York. As set forth below, a comprehensive review of the transfers and the component events of the transactions demonstrate the Trustee's recovery claims against the Somers Defendants do not require an extraterritorial application of the Bankruptcy Code or SIPA.

### THE TRANSFERS AND THE COMPONENT EVENTS OF THE TRANSACTIONS ARE DOMESTIC

The subsequent transfers from the BLMIS Feeder Funds were not "purely foreign," but were predominantly domestic for the following reasons: (1) the Somers Defendants knowingly invested in the BLMIS Feeder Funds to profit from BLMIS in New York, (2) the Somers Defendants sent and received the transfers to and from the BLMIS Feeder Funds through New York bank accounts, (3) the Fairfield Sentry transfers stem from subscription agreements that were domestic in nature; (4) the BLMIS Feeder Funds maintained their respective principal places of business in New York.

---

[6] *See Anwar v. Fairfield Greenwich Ltd.*, 728 F. Supp. 2d 372, 403–05 (S.D.N.Y. 2010); *see also SEC v. Gruss*, 859 F. Supp. 2d 653, 666 (S.D.N.Y. 2012).

2

First, the Somers Defendants knew BLMIS acted as the investment advisor, broker-dealer, and custodian for the BLMIS Feeder Funds and knowingly invested in the BLMIS Feeder Funds to profit from BLMIS in New York. (Proffer at ¶ 4.) From Fairfield Sentry's private placement memoranda, the Somers Defendants knew Fairfield Sentry invested 95% of its assets with BLMIS. (*Id.* at ¶ 6). The Somers Defendants also knew: (i) the BLMIS Feeder Funds delegated all investment decisions to BLMIS as their investment advisor; (ii) BLMIS maintained custody of the assets in New York; and (iii) BLMIS purported to execute trades in U.S. securities on behalf of the BLMIS Feeder Funds. (*Id.* at ¶¶ 4-10.) The Somers Defendants also knew BLMIS was "essential" to the BLMIS Feeder Funds' profitability. (*Id.* at ¶ 8).

The Somers Defendants invested in the BLMIS Feeder Funds *because* their money would ultimately be placed with BLMIS, and in turn, Madoff would invest their assets in U.S. securities traded on U.S. markets. But for BLMIS and its U.S.-based investment strategy, the Somers Defendants would not have invested in the BLMIS Feeder Funds. As Judge Lifland concluded in a similar matter, "[t]he movement of money to and from BLMIS in the United States … was not fortitious or incidental; instead, it was 'the ultimate objective' and the '*raison d'etre*' of the Agreement between" the investor and Fairfield Sentry.[7]

Second, from 2004 through 2008, the Somers Defendants invested in and redeemed from the BLMIS Feeder Funds using New York bank accounts. (*Id.* at ¶¶ 15-17.) Somers Nominees instructed Fairfield Sentry to pay redemptions to an account held by "HSBC Fund Services" at Citibank, N.A. in New York. (*Id.* at ¶ 16.) Somers Dublin instructed Harley to pay redemptions to an account at HSBC Bank USA, N.A. in New York. (*Id.* at ¶ 17.)

Third, the Fairfield Sentry transfers were made pursuant to subscription agreements that

---

[7] *Picard v. Bureau of Labor Ins.*, 480 B.R. 501, 523 (Bankr. S.D.N.Y. 2012).

3

were domestic in nature. By executing the agreements, the Somers Defendants knowingly (i) agreed that New York law would govern the agreements, (ii) submitted to venue and jurisdiction in New York, (iii) agreed to wire subscription payments to a New York bank account, (iv) selected a New York bank account to receive redemption payments; and (v) agreed to BLMIS in New York controlling all aspects of the investments, as described in the PPMs. (*Id.* at ¶¶ 13-14.) Accordingly, the Somers Defendants had every reason to expect that U.S. law would apply to them and the transfers they received from Fairfield Sentry.

<u>Fourth</u>, Harley's principal place of business was in New York. (*Id.* at ¶ 48.) Although formally incorporated in the Cayman Islands, Harley was operated and controlled by Fix Asset Management Services Inc. ("FAM"), which is incorporated under New York law and headquartered in New York, New York. (Proffer, ¶ 65.) Harley had no employees or offices in the Cayman Islands and acted principally through FAM in New York. (Proffer, ¶ 66.) FAM in New York: (i) conducted due diligence on BLMIS and monitored its investments with BLMIS; (ii) received Harley's account statements from BLMIS, (iii) corresponded directly with BLMIS to request redemptions into and subscriptions from Harley's BLMIS account, and (iv) marketed the sale of shares in Harley and Harley's levered sub-funds to investors. (Proffer, ¶¶ 70-74.)

Harley did not conduct meaningful business in the Cayman Islands. In its Memorandum of Association, Harley represented that "[t]he Company will not trade in the Cayman Islands with any person, firm or corporation except in furtherance of the business of the Company carried on outside the Cayman Islands." (Proffer, ¶ 60.) As such, Harley was registered as an exempt company and was not permitted to solicit investors in the Cayman Islands.

This Court previously entered summary judgment against Harley in the amount of more than $1 billion, holding that "Harley specifically sought out the United States as a place to do

4

business when it opened an account with BLMIS," and that the transfers received by Harley "arose out of business transactions tied to Harley's securities account with BLMIS in New York." (Proffer, ¶¶ 52-53.)

Sixth, Fairfield Sentry's principal place of business was in New York, where it was operated and controlled by the Fairfield Greenwich Group ("FGG"), a New York *de facto* partnership. FGG was founded in 1988 by U.S. citizens and residents Walter Noel and Jeffrey Tucker. (*Id.* at ¶ 19.) At all relevant times, Fairfield Sentry was operated almost entirely by FGG's New York City headquarters personnel who maintained final control of Fairfield Sentry's bank accounts and relationships with Fairfield Sentry's back office service providers. (*Id.* at ¶ 28.)

From Fairfield Sentry's inception, FGG personnel at its New York City headquarters controlled the sales and subscriptions of the fund's shares. (*Id.* at ¶ 29.) At all relevant times, FGG New York City headquarters personnel monitored Fairfield Sentry's investments; managed the relationships with BLMIS; directed investments into and out of BLMIS as well as into and out of Fairfield Sentry; marketed Fairfield Sentry; approved all subscriptions for Fairfield Sentry shares; maintained all of Fairfield Sentry's books and records at the FGG New York City headquarters; and made all strategic and operational decisions regarding Fairfield Sentry. (*Id.*)

## CONCLUSION

For the foregoing reasons and those stated in the Trustee's main brief, the Trustee respectfully requests that the Court deny the Somers Defendants' motion to dismiss and grant the Trustee's motion for leave to amend the complaint.

| | |
|---|---|
| Dated: June 26, 2015<br>New York, New York | /s/ Thomas L. Long<br>**Baker & Hostetler LLP**<br>45 Rockefeller Plaza<br>New York, New York 10111<br>Telephone: (212) 589-4200<br>Facsimile: (212) 589-4201<br>David J. Sheehan<br>Thomas L. Long<br>Torello H. Calvani<br><br>*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the estate of Bernard L. Madoff* |

6