**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee
for the Substantively Consolidated SIPA Liquidation
of Bernard L. Madoff Investment Securities LLC
and the estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (SMB) |
| Plaintiff-Applicant, | SIPA Liquidation |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, and the estate of Bernard L. Madoff, | Adv. Pro. No. 11-02537 (SMB) |
| Plaintiff, | |
| v. | |
| ORBITA CAPITAL RETURN STRATEGY LIMITED, | |
| Defendant. | |

**TRUSTEE'S SUPPLEMENTAL MEMORANDUM
OF LAW IN OPPOSITION TO DEFENDANT
ORBITA CAPITAL RETURN STRATEGY LIMITED'S MOTION
TO DISMISS BASED ON EXTRATERRITORIALITY AND IN FURTHER
SUPPORT OF TRUSTEE'S MOTION FOR LEAVE TO AMEND COMPLAINTS**

The Trustee respectfully submits this supplemental memorandum in opposition to defendant Orbita Capital Return Strategy Limited's ("Orbita Capital") motion to dismiss based on extraterritoriality and in further support of the Trustee's motion for leave to amend the complaint. As set forth below, the Proffered Allegations Pertaining to the Extraterritoriality Issue as to Defendant Orbita Capital ("Proffered Allegations") plead facts evidencing the subsequent transfer received by Orbita Capital and the component events of the transactions were predominantly domestic under the standards set forth in the Extraterritoriality Decision,[1] such that the Trustee's action does not require an extraterritorial application of SIPA or Bankruptcy Code § 550. Orbita Capital's motion to dismiss should be denied and the Trustee's motion for leave to amend the complaint should be granted.

## I.   BACKGROUND

This Court must determine whether the Trustee's claims against Orbita Capital seeking the recovery of BLMIS customer property require an extraterritorial application of SIPA and Bankruptcy Code § 550.[2] Under the Extraterritoriality Decision, the Trustee need only put forth "specific facts suggesting a domestic transfer" to avoid dismissal.[3] To make this determination, this Court must review the "location of the transfers as well as the component events of those transactions."[4] This is a factual inquiry in which all reasonable inferences are to be drawn in the Trustee's favor.[5]

The Trustee's Proffered Allegations demonstrate that Orbita Capital received a $30,662,226 subsequent transfer of BLMIS customer property from Fairfield Sentry Limited

---

[1] *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC* (*In re Madoff Sec.*), 513 B.R. 222 (S.D.N.Y. 2014) ("Extraterritoriality Decision").

[2] *Id.* at 232–33.

[3] *Id.* at 232, n.4.

[4] *Id.* at 227 (quoting *Maxwell Commc'n Corp. v. Societe General PLC* (*In re Maxwell Commc'n Corp.*), 186 B.R. 807, 817 (S.D.N.Y. 1995) ("*Maxwell I*")).

[5] *See, e.g., Anwar v. Fairfield Greenwich Ltd.*, 728 F. Supp. 2d 372, 403–05 (S.D.N.Y. 2010).

("Fairfield Sentry"). Proffered Allegations ¶ 1. Orbita Capital was a fund of hedge funds that invested in Fairfield Sentry. *Id.* ¶ 2. Fairfield Sentry was the largest of many BLMIS feeder funds ("Feeder Funds")—single-purpose investment funds that pooled their investors' assets to invest with BLMIS in New York. *Id.* ¶ 3. The Trustee alleges that Fairfield Sentry withdrew funds from its BLMIS accounts and transferred the funds to Orbita Capital. *Id.* ¶ 1.

Orbita Capital argues that simply because it was formally organized under the laws of the Cayman Islands, and because Fairfield Sentry was formally organized under the law of the Territory of the British Virgin Islands ("BVI"), it is entitled to a finding that its transfer is "purely foreign" and should be dismissed under Extraterritoriality Decision. Orbita Capital is wrong. Its reasoning is contrary to the *Maxwell I* "component events" analysis embraced by the District Court in the Extraterritoriality Decision,[6] and inconsistent with Second Circuit precedent considering the connection among the parties, and the economic and legal realities of the transactions.[7]

## II. THE TRANSFER AND COMPONENT EVENTS OF THE TRANSACTIONS ARE PREDOMINANTLY DOMESTIC

First, Orbita Capital purposefully invested in Fairfield Sentry as a means of profiting from New York-based BLMIS and the U.S. securities market. Second, in connection with its Fairfield Sentry investments, Orbita Capital used a New York bank account to transfer money to Fairfield Sentry. Third, Orbita Capital's investment managers in Miami and in London conducted due diligence in New York on Fairfield Sentry, BLMIS, and Madoff in connection with Orbita Capital's investments. Finally, Fairfield Sentry's principal place of business was in New York as it was principally operated by Fairfield Greenwich Group ("FGG"), a New York-

---

[6] Extraterritoriality Decision, 513 B.R. at 227 (citing *Maxwell I*, 186 B.R. at 816–17).
[7] *See, e.g., Mastafa v. Chevron Corp.*, 770 F.3d 170, 182 (2d Cir. 2014); *European Cmty. v. RJR Nabisco, Inc.*, 764 F.3d 129, 141–42 (2d Cir. 2014); *Parkcentral Global Hub Ltd. v. Porsche Auto. Holdings SE*, 763 F.3d 198, 216 (2d Cir. 2014).

2

based *de facto* partnership. Thus, the Trustee's recovery claim against Orbita Capital does not require an extraterritorial application of SIPA and Bankruptcy Code § 550.

### A. Orbita Capital's Relationship with Fairfield Sentry was Centered in the United States

Orbita Capital, through its investment managers Coutts & Co. Limited ("Coutts") and later RBS Asset Management Ltd. ("RBS AM"), intentionally chose to invest in Fairfield Sentry to place funds with BLMIS in New York and to profit from Madoff's U.S. investment strategy. Proffered Allegations ¶¶ 5–6. Orbita Capital knew Madoff's SSC Strategy purportedly involved the purchase of U.S. S&P 100 Index securities, U.S. options, and U.S. Treasurys traded on U.S. exchanges. *Id.* ¶ 12. Orbita Capital also knew BLMIS in New York served as the investment adviser and custodian for Fairfield Sentry and that control of Fairfield Sentry's investments rested entirely with BLMIS in New York. *Id.* ¶ 13–14.

Orbita Capital executed subscription agreements in connection with its investments in Fairfield Sentry. *Id.* ¶ 15. These agreements designated that all money from Orbita Capital be directed to a Republic National Bank of New York correspondent bank account for ultimate deposit in Fairfield Sentry's bank account. *Id.* From Fairfield Sentry's bank account, the funds were deposited in BLMIS's account at JP Morgan Chase Bank NA in New York. *Id.*

Orbita Capital's investment managers conducted due diligence on Orbita Capital's behalf in the United States. *Id.* ¶¶ 6, 17. Coutts managed Orbita Capital from its offices in Miami, Florida and London, England. *Id.* ¶ 18. New York-based FGG employees traveled to Coutts' Miami office for Coutts to conduct due diligence on Fairfield Sentry in connection with Orbita Capital's investments. *Id.* ¶ 19. Coutts also sent employees from its London office to FGG's New York headquarters on a quarterly basis to conduct due diligence on Fairfield Sentry, Madoff, and BLMIS. *Id.* ¶ 20.

3

In 2000, Royal Bank of Scotland Group plc ("RBS Group") acquired Coutts as part of an acquisition. *Id.* ¶ 16. RBS Group's asset management subsidiary, RBS AM, eventually assumed management of Orbita Capital from Coutts. *Id.* ¶¶ 16, 22. RBS AM continued to send employees from its London office to FGG's New York headquarters on a quarterly basis to continue to conduct due diligence. *Id.* ¶ 23. After completing due diligence in New York on Orbita Capital's behalf, RBS AM employees had concerns about the lack of transparency into Fairfield Sentry's investments. *Id.* ¶ 24. In December 2004, RBS AM contacted New York-based FGG employee Lauren Ross to inform her that it would be redeeming Orbita Capital's "full position in Fairfield Sentry as of Jan 31 [2005]." *Id.*

### B. Fairfield Sentry's Principal Place of Business Was in New York

In 1988, Walter Noel and Jeffrey Tucker, founded *de facto* partnership FGG, in the United States. *Id.* ¶ 4, 26. As part of FGG, Noel and Tucker incorporated Fairfield International Managers, Inc. ("Fairfield International Managers"). *Id.* ¶ 28. Through Fairfield International Managers, Noel and Tucker organized the largest BLMIS feeder fund, Fairfield Sentry. *Id.* ¶ 29.

Noel and Tucker formally organized Fairfield Sentry as an international business company under BVI law. *Id.* As an international business company, BVI law restricted Fairfield Sentry from doing business with other BVI citizens and residents except with other BVI international business companies. *Id.* Fairfield Sentry was a shell corporation present in the BVI solely on paper. *Id.* ¶ 30. Its BVI statutorily required registered address was a post office box care of a local trust company owned and operated by a local law firm. *Id.*

From its inception until its liquidation in 2009, Fairfield Sentry had no employees and no offices. *Id.* At all relevant times, Fairfield Sentry was operated almost entirely by FGG's New York personnel who maintained final control of Fairfield Sentry's bank accounts and relationships with Fairfield Sentry's back office service providers. *Id.* ¶¶ 32–37.

Beginning in 1990, Tucker opened Fairfield Sentry's BLMIS accounts. *Id.* ¶ 32. In the account opening documents, Tucker identified Fairfield Sentry's mailing address as Fairfield International Managers' office in Greenwich, Connecticut and directed BLMIS to send Fairfield Sentry's monthly account statements, trade confirmations, and correspondence to the same Fairfield International Managers office. *Id*. In January 1998, FGG requested BLMIS to send all Fairfield Sentry account information to FGG's New York headquarters. *Id*.

From Fairfield Sentry's inception, FGG personnel at its New York headquarters controlled the sales and subscriptions of the funds' shares. *Id.* ¶¶ 36–37. From at least January 1, 2002, all Fairfield Sentry subscription agreements contained New York choice of law provisions, and provided for venue and jurisdiction for any disputes in New York. *Id.* ¶ 37.

At all relevant times, FGG New York personnel monitored Fairfield Sentry's investments; managed the relationships with BLMIS; directed investments into and out of BLMIS; marketed Fairfield Sentry; approved all subscriptions for Fairfield Sentry shares; maintained all of Fairfield Sentry's books and records at the FGG New York headquarters; and made all strategic and operational decisions regarding Fairfield Sentry. *Id.* ¶¶ 36–37.

## III.    CONCLUSION

For the foregoing reasons and those stated in the Trustee's Main Brief, this Court should deny Orbita Capital's motion to dismiss and grant the Trustee's motion for leave to amend the complaint.

5

| | |
|---|---|
| Dated: June 26, 2015<br>New York, New York | /s/ Thomas L. Long |

**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Thomas L. Long

**Baker & Hostetler LLP**
65 East State Street, Suite 2100
Columbus, Ohio 43215
Telephone: (614) 228-1541
Facsimile: (614) 462-2616
Lauren M. Hilsheimer
Melonia A. Bennett

*Attorneys for Irving H. Picard, Trustee*
*for the Substantively Consolidated SIPA*
*Liquidation of Bernard L. Madoff Investment*
*Securities LLC and the estate of Bernard L.*
*Madoff*