**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee*
*for the substantively consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities LLC*
*and the estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | No. 08-01789 (SMB) |
| Plaintiff-Applicant, | SIPA Liquidation |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | Adv. Pro. No. 11-02493 (SMB) |
| Plaintiff, | |
| v. | |
| ABU DHABI INVESTMENT AUTHORITY, | |
| Defendant. | |

**TRUSTEE'S SUPPLEMENTAL MEMORANDUM OF LAW IN OPPOSITION**
**TO DEFENDANT ABU DHABI INVESTMENT AUTHORITY'S MOTION**
**TO DISMISS BASED ON EXTRATERRITORIALITY AND IN FURTHER**
**SUPPORT OF TRUSTEE'S MOTION FOR LEAVE TO AMEND COMPLAINTS**

The Trustee respectfully submits this supplemental memorandum in opposition to Abu Dhabi Investment Authority's ("ADIA") motion to dismiss based on extraterritoriality and in further support of the Trustee's motion for leave to amend his complaints. The Trustee's Proffered Allegations Pertaining to the Extraterritoriality Issue as to ADIA ("Proffered Allegations") plead specific facts evidencing the subsequent transfers received by ADIA are predominantly domestic under the standard set forth in the Extraterritoriality Decision,[1] such that the Trustee's action does not require an extraterritorial application of SIPA or Bankruptcy Code § 550. ADIA's motion to dismiss should be denied, and the Trustee's motion for leave to amend the complaint should be granted.

## I.   BACKGROUND & LEGAL STANDARD

This Court must determine whether the Trustee's claims against ADIA seek the recovery of "purely foreign" transfers, requiring an extraterritorial application of SIPA or Bankruptcy Code § 550.[2] In making this determination, this Court must review the "location of the transfers as well as the component events of [the] transactions."[3] This is a factual inquiry in which all reasonable inferences are to be drawn in the Trustee's favor.[4] The Trustee need only put forth "specific facts suggesting a domestic transfer" to avoid dismissal.[5]

The Trustee's Proffered Allegations plead ADIA received $300 million in subsequent

---

[1] *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.),* 513 B.R. 222 (S.D.N.Y. 2014) ("Extraterritoriality Decision").

[2] *Id*. at 232.

[3] *Id*. at 227 (citing *Maxwell Commc'n Corp. v. Société General* (*In re Maxwell Commc'n Corp.*), 186 B.R. 807, 816–17 (S.D.N.Y. 1995) ("*Maxwell I*")).

[4] *See, e.g., Anwar v. Fairfield Greenwich Ltd.*, 728 F.Supp.2d 372, 403 (S.D.N.Y. 2010).

[5] Extraterritoriality Decision, 513 B.R. at 232 n.4.

1

transfers of BLMIS customer property from Fairfield Sentry Limited ("Fairfield Sentry"). Proffered Allegations ¶ 2. Fairfield Sentry was one of many BLMIS feeder funds—single-purpose investment funds that pooled their investors' assets to invest with BLMIS. *Id.* Fairfield Greenwich Group ("FGG"), a *de facto* partnership based in New York, created, operated, and controlled Fairfield Sentry. *Id.* ¶ 3. The Trustee alleges that Fairfield Sentry withdrew funds from BLMIS accounts and transferred those funds to ADIA. *Id.* ¶ 2.

ADIA argues that because it is formally organized under the laws of the United Arab Emirates, and because Fairfield Sentry was formally organized under the law of the Territory of the British Virgin Islands ("BVI"), it is entitled to a finding that the transfers it received are "purely foreign" and must be dismissed under the Extraterritoriality Decision. ADIA is wrong, and its superficial analysis is contrary to the *Maxwell I* "component events" analysis embraced by the District Court in the Extraterritoriality Decision,[6] and to Second Circuit precedent requiring courts to consider the economic and legal realities of a transaction.[7] The Trustee's Proffered Allegations evidence that the transfers and the component events of ADIA's transactions were not "purely foreign," but rather involved predominantly domestic elements.

II.     **THE TRANSFERS AND THE COMPONENT EVENTS OF THE TRANSACTIONS AT ISSUE WERE PREDOMINANTLY DOMESTIC**

The subsequent transfers from Fairfield Sentry to ADIA were not "purely foreign" because ADIA: (1) invested in Fairfield Sentry and another FGG fund as part of its U.S.-focused

---

[6] *Id.* at 227 (citing *Maxwell I*, 186 B.R. at 807, 816–17).
[7] *See, e.g., Mastafa v. Chevron Corp.*, 770 F.3d 170, 182 (2d Cir. 2014); *European Cmty. v. RJR Nabisco, Inc.*, 764 F.3d 129, 141–42 (2d Cir. 2014); *Parkcentral Global Hub Ltd. v. Porsche Automobile Holding SE*, 763 F.3d 198, 216 (2d Cir. 2014).

2

investment strategy; (2) subscribed in Fairfield Sentry with the intent to profit from New York-based BLMIS; (3) centered its relationship with FGG in New York; and, (4) directed subsequent transfers of BLMIS customer property to its own bank account in Tampa, Florida and to a correspondent bank account at HSBC Bank USA in New York. Further, the transfers were made by Fairfield Sentry, which maintained its principal place of business in New York.

### A.    ADIA's Conduct Put the United States at the Center of the Transactions

At all times relevant, ADIA was a significant participant in U.S. markets, investing between 35% and 50% of its over $700 billion global portfolio in North America, including the United States. Proffered Allegations ¶ 12. ADIA's U.S.-focused investment strategy included ADIA's investments in Fairfield Sentry. *Id.* ¶ 15. ADIA knew Fairfield Sentry directed virtually all of its assets to New York-based BLMIS. *Id.* ADIA also knew BLMIS purported to invest in S&P 100 Index equities, options, U.S. Treasury Bills ("Treasurys"), and mutual funds invested in Treasurys. *Id.* Further, ADIA understood that New York-based BLMIS drove the purported success of Fairfield Sentry and that control over Fairfield Sentry's assets rested entirely with BLMIS and Madoff in New York. *Id.* ¶ 18. By subscribing in Fairfield Sentry, ADIA intentionally directed its funds to BLMIS with the intent to invest in the United States and profit from BLMIS's performance. *Id.* ¶ 15.

ADIA's relationship with FGG was centered in New York. *Id.* ¶¶ 19–25. ADIA visited FGG's New York headquarters to conduct due diligence on Fairfield Sentry, Madoff, and BLMIS, and received and analyzed due diligence materials prepared by FGG personnel in New York. *Id.* ¶¶ 20, 24. Philip Toub, a FGG partner and member of FGG's Executive Committee, managed FGG's relationship with ADIA from FGG's New York headquarters. *Id.* ¶ 20. Other New York-based FGG personnel, including FGG co-founders Jeffrey Tucker and Walter Noel, helped develop and maintain FGG's relationship with ADIA. *Id.* ¶ 21. ADIA: (1) negotiated

3

Fairfield Sentry fee rebates with Tucker and FGG's New York-based chief financial officer, Daniel Lipton; (2) directed Fairfield Sentry due diligence questions to FGG's New York-based director of investor relations, Lauren Ross; and, (3) reviewed reports created by a U.S.-based FGG consultant analyzing BLMIS's purported investments in U.S. markets and the purported timing of BLMIS's purchase and sale of U.S. S&P 100 Index equities, options, U.S. Treasurys, and mutual funds invested in Treasurys. *Id.* ¶¶ 22, 25. ADIA also hired a New York-based consultant to conduct due diligence on Fairfield Sentry. *Id.* ¶ 23.

ADIA utilized New York bank accounts to transfer funds to and from Fairfield Sentry. *Id.* ¶¶ 6–8, 11. ADIA directed funds to correspondent bank accounts in New York to subscribe in Fairfield Sentry. *Id.* ¶ 16. At all times relevant, ADIA maintained a Tampa, Florida bank account in its name at JPMorgan Chase, New York and utilized this bank account to receive $200 million in redemption proceeds from Fairfield Sentry. *Id.* ¶¶ 7–8. ADIA directed the remaining $100 million redemption payment from Fairfield Sentry to a New York correspondent bank account at HSBC Bank USA to invest in another fund created by FGG. *Id.* ¶ 11. This fund, Fairfield Holdings Fund Limited ("Holdings"), was managed by FGG personnel located in New York and Fairfield Greenwich Advisors, LLC, a Delaware limited liability company with its principal place of business in New York. *Id* ¶ 10. Holdings held numerous U.S.-based investments and maintained its principal place of business in New York. *Id* ¶¶ 10–11.

**B.    Fairfield Sentry's Principal Place of Business Was in New York**

In 1988, Walter Noel and Jeffrey Tucker, founded FGG, a New York-based *de facto* partnership. Proffered Allegations ¶ 27. As part of FGG, Noel and Tucker incorporated Fairfield International Managers, Inc. ("Fairfield International Managers"). *Id.* ¶¶ 27–29. Through Fairfield International Managers, Noel and Tucker organized Fairfield Sentry. *Id.* ¶ 30.

4

Noel and Tucker formally organized Fairfield Sentry as an international business company under BVI law. *Id.* As an international business company, BVI law restricted Fairfield Sentry from doing business with other BVI citizens and residents except with other BVI international business companies. *Id.* Fairfield Sentry was a shell corporation present in the BVI solely on paper. *Id.* ¶ 31. Its BVI statutorily required registered address was a post office box care of a local trust company owned and operated by a local law firm. *Id.*

From its inception until its liquidation in 2009, Fairfield Sentry had no employees and no offices. *Id.* At all relevant times, Fairfield Sentry was operated almost entirely by FGG's New York City headquarters personnel who maintained final control of the Fairfield Sentry's bank accounts and relationships with Fairfield Sentry's back office service providers. *Id.* ¶¶ 36–38.

From Fairfield Sentry's inception, FGG personnel at its New York City headquarters controlled the sales and subscriptions of the fund's shares. *Id.* ¶¶ 37–38. From at least January 1, 2002, all Fairfield Sentry subscription agreements contained New York choice of law provisions, and provided for venue and jurisdiction for any disputes in New York. *Id.* ¶ 38.

At all relevant times, FGG personnel in New York monitored Fairfield Sentry's investments; managed the relationship with BLMIS; directed investments into and out of BLMIS; marketed Fairfield Sentry; approved all subscriptions for Fairfield Sentry shares; maintained all of Fairfield Sentry's books and records at the FGG New York City headquarters; and made all strategic and operational decisions regarding Fairfield Sentry. *Id.* ¶¶ 36–38.

### III. CONCLUSION

For the foregoing reasons and those stated in the Trustee's Main Brief, this Court should deny ADIA's motion to dismiss and grant the Trustee's motion for leave to amend the complaint.

5

| | |
|---|---|
| Dated: June 26, 2015<br>New York, New York | /s/ Thomas L. Long<br>**Baker & Hostetler LLP**<br>45 Rockefeller Plaza<br>New York, New York 10111<br>Telephone: (212) 589-4200<br>Facsimile: (212) 589-4201<br>David J. Sheehan<br>Thomas L. Long<br>Catherine E. Woltering<br><br>**Baker & Hostetler LLP**<br>65 East State Street<br>Suite 2100<br>Columbus, Ohio 43215<br>Telephone: (614) 228-1541<br>Facsimile: (614) 462-2616<br>Justin J. Joyce<br><br>*Attorneys for Irving H. Picard, Trustee*<br>*for the substantively consolidated SIPA*<br>*Liquidation of Bernard L. Madoff Investment*<br>*Securities LLC and the estate of Bernard L.*<br>*Madoff* |

6