**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee*
*for the substantively consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities LLC*
*and the estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (SMB) |
| Plaintiff-Applicant, | SIPA Liquidation |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC and the estate of Bernard L. Madoff, | Adv. Pro. No. 12-01194 (SMB) |
| Plaintiff, | |
| v. | |
| KOOKMIN BANK, | |
| Defendant. | |

**TRUSTEE'S SUPPLEMENTAL MEMORANDUM
OF LAW IN OPPOSITION TO KOOKMIN BANK'S MOTION
TO DISMISS BASED ON EXTRATERRITORIALITY AND IN FURTHER
<u>SUPPORT OF TRUSTEE'S MOTION FOR LEAVE TO AMEND THE COMPLAINT</u>**

The Trustee respectfully submits this memorandum of law in opposition to Kookmin Bank's ("Kookmin") motion to dismiss based on extraterritoriality and in support of the Trustee's motion to amend his Complaint. The Proffered Allegations plead specific facts evincing that the Transfers are predominantly domestic under the standards set forth in the Extraterritoriality Decision[1] and that the Trustee's action does not require an extraterritorial application of 11 U.S.C. § 550. Accordingly, Kookmin's motion to dismiss must be denied.

## BACKGROUND & LEGAL STANDARD

The District Court returned this action to this Court to determine whether the Trustee's claims against Kookmin seek the recovery of "purely foreign" transfers, requiring extraterritorial application of Bankruptcy Code § 550.[2] The District Court held that the Trustee must "put forth specific facts suggesting a domestic transfer" to avoid dismissal.[3] In making this determination, there is no bright-line test to determine whether a transaction is extraterritorial,[4] and courts must review "the location of the transfers as well as the component events of those transactions."[5] This is a fact-based inquiry in which all reasonable inferences are to be drawn in the Trustee's favor.[6]

The Trustee's Proffered Allegations specifically allege Kookmin received subsequent transfers of BLMIS customer property from Fairfield Sentry, a fund that invested virtually all of its assets with BLMIS in New York. Kookmin argues that because it and Fairfield Sentry were organized under foreign laws, Kookmin is entitled to a finding that the transfers it received are

---

[1] *Securities Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 513 B.R. 222 (S.D.N.Y. 2014) (the "Extraterritoriality Decision").

[2] *Id.* at 232–33.

[3] *Id.* at 232 n.4.

[4] *Parkcentral Global Hub Ltd. v. Porsche Automobil Holdings SE*, 763 F.3d 198, 216-17 (2d Cir. 2014).

[5] Extraterritoriality Decision at 227 (quoting *Maxwell Commc'n Corp. v. Societe General PLC (In re Maxwell Commc'n Corp.)*, 186 B.R. 807, 817 (S.D.N.Y. 1995)).

[6] *See, e.g.*, *Anwar v. Fairfield Greenwich Ltd.*, 728 F. Supp. 2d 372, 403–05 (S.D.N.Y. 2010).

"purely foreign" and must be dismissed under the Extraterritoriality Decision. Kookmin is mistaken. This superficial analysis ignores that the transactions have significant domestic components, including, for example, that Kookmin invested in Fairfield Sentry to profit from New York-based BLMIS and that Fairfield Sentry maintained its principal place of business in New York. As set forth below, a comprehensive review of the transfers and the component events of the transactions demonstrate the Trustee's recovery claim against Kookmin does not require an extraterritorial application of the Bankruptcy Code.

### THE TRANSFERS AND THE COMPONENT EVENTS OF KOOKMIN'S TRANSACTIONS ARE DOMESTIC

The subsequent transfers from Fairfield Sentry were not "purely foreign," but were predominantly domestic for the following reasons: (1) Kookmin knowingly invested in Fairfield Sentry to profit from BLMIS in New York, (2) Fairfield Sentry's subscription agreements required shareholders, such as Kookmin, to be bound by New York law, to submit to New York jurisdiction, and to send and receive transfers through a New York correspondent bank account, (3) Kookmin conducted business with Fairfield Greenwich Group ("FGG"), a New York *de facto* partnership, and (4) Fairfield Sentry's principal place of business was in New York.

First, Kookmin invested in Fairfield Sentry to profit from BLMIS in New York. Kookmin knew based on Fairfield Sentry's private placement memoranda ("PPM") that Fairfield Sentry invested at least 95% of its assets with BLMIS, which controlled all aspects of those investments in New York. (Proffer at ¶¶ 5-10.) For example, Kookmin knew: (i) Fairfield Sentry delegated all investment decisions to BLMIS as its investment advisor; (ii) BLMIS maintained custody of the assets in New York; and (iii) BLMIS purported to execute trades in U.S. securities on behalf of Fairfield Sentry. (*Id.*) BLMIS was "essential" to Fairfield Sentry's profitability and, in turn, Kookmin's profitability. (*Id.* at ¶¶ 5, 29.)

2

Kookmin invested in Fairfield Sentry *because* its money would ultimately be placed with BLMIS, and in turn, Madoff would invest their assets in U.S. securities traded on U.S. markets. But for BLMIS and its U.S.-based investment strategy, Kookmin would not have invested in Fairfield Sentry. As Judge Lifland concluded in a similar matter, "[t]he movement of money to and from BLMIS in the United States … was not fortitious or incidental; instead, it was 'the ultimate objective' and the '*raison d'etre*' of the Agreement between" the investor and Fairfield Sentry.[7]

Second, the transfers were made pursuant to a subscription agreement that was domestic in nature. By executing the subscription agreement, Kookmin knowingly (i) submitted to New York courts' jurisdiction, (ii) agreed that New York law would govern the agreements, (iii) agreed to wire Fairfield Sentry subscription payments to a New York correspondent bank account, and (iv) agreed to BLMIS in New York controlling all aspects of the investments, as described in the PPM. (*Id.* at ¶¶ 12-15.) These facts show the underlying contracts were domestic.

Third, Kookmin conducted business with New York-based FGG, which created, marketed, managed, and controlled Fairfield Sentry. (*Id.* at ¶ 17.) Kookmin made Fairfield Sentry subscription and redemption requests to FGG in New York. (*Id.* at ¶ 15.) New York FGG personnel approved all such subscriptions and redemptions. (*Id.*) The parties' long-standing relationship was centered in the United States, and Kookmin took purposeful steps to invest in the United States.

Fourth, Fairfield Sentry was principally operated in New York by FGG. In 1988, U.S. citizens and residents, Walter Noel and Jeffrey Tucker, founded FGG. (*Id.* at ¶ 17.) Noel and

---

[7] *Picard v. Bureau of Labor Ins.*, 480 B.R. 501, 523 (Bankr. S.D.N.Y. 2012).

3

Tucker incorporated Fairfield International Managers, Inc. ("Fairfield International Managers") under Delaware law as part of FGG. (*Id.*) Through Fairfield International Managers, Noel and Tucker organized Fairfield Sentry, the largest BLMIS feeder fund. (*Id.* at ¶¶ 2, 23, 30, 32.)

Noel and Tucker organized Fairfield Sentry as an international business company under BVI law. (*Id.* at ¶ 20.) As such, BVI law restricted Fairfield Sentry from doing business in the BVI except with BVI international business companies. (*Id.*) Fairfield Sentry was a shell corporation present in the BVI solely on paper. (*Id.* at 21.) Its BVI registered address was a post office box care of a local trust company owned and operated by a local law firm. (*Id.*)

From its inception until its liquidation in 2009, Fairfield Sentry had no employees and no offices. (*Id.*) At all relevant times, Fairfield Sentry was operated almost entirely by FGG's New York City headquarters personnel who maintained final control of Fairfield Sentry's bank accounts and relationships with Fairfield Sentry's back office service providers. (*Id.* at ¶¶ 27-28.)

Beginning in 1990, Tucker opened Fairfield Sentry's BLMIS accounts. (*Id.* at 23.) In the account opening documents, Tucker identified Fairfield Sentry's mailing address as Fairfield International Managers' office in Greenwich, Connecticut and directed BLMIS to send Fairfield Sentry's monthly account statements, trade confirmations, and correspondence to the same office. (*Id.*) In January 1998, FGG requested BLMIS to send all Fairfield Sentry account information to FGG's New York City headquarters. (*Id.*)

From Fairfield Sentry's inception, FGG personnel at its New York City headquarters controlled the sales and subscriptions of the fund's shares. (*Id.* at 27.) From at least January 1, 2002, all Fairfield Sentry subscription agreements contained New York choice of law provisions, and provided for venue and jurisdiction for any disputes in New York. (*Id.* at ¶ 28.)

At all relevant times, FGG New York City headquarters personnel monitored Fairfield Sentry's investments; managed the relationships with BLMIS; directed investments into and out of BLMIS as well as into and out of Fairfield Sentry; marketed Fairfield Sentry; approved all subscriptions for Fairfield Sentry shares; maintained all of Fairfield Sentry's books and records; and made all strategic and operational decisions regarding Fairfield Sentry. (*Id*. at ¶¶ 27-28.) Together, these facts further evince the parties' long-standing relationship was centered in the United States.

## CONCLUSION

Taken together, these "component events" demonstrate the transfers are domestic and are not "purely foreign."

For the foregoing reasons and those stated in the Trustee's main brief, this Court should grant the Trustee's motion for leave to amend and deny Kookmin's motion to dismiss.

Dated: June 26, 2015  /s/ Thomas L. Long
New York, New York  **Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Thomas L. Long
Torello H. Calvani
Jonathan D. Blattmachr

*Attorneys for Irving H. Picard, Trustee
for the Substantively Consolidated SIPA
Liquidation of Bernard L. Madoff Investment
Securities LLC and the estate of Bernard L.
Madoff*

5