**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee*
*for the Substantively Consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities LLC*
*and the estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>　　　　　　　Plaintiff-Applicant,<br>　v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>　　　　　　　Defendant. | No. 08-01789 (SMB)<br><br>SIPA Liquidation<br>(Substantively Consolidated) |
| In re:<br>BERNARD L. MADOFF,<br>　　　　　　　Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC and the estate of Bernard L. Madoff,<br><br>　　　　　　　Plaintiff,<br>　v.<br><br>QUILVEST FINANCE LTD.,<br><br>　　　　　　　Defendant. | Adv. Pro. No. 11-02538 (SMB) |

**TRUSTEE'S SUPPLEMENTAL**
**MEMORANDUM OF LAW IN OPPOSITION TO**
**DEFENDANT QUILVEST FINANCE LTD.'S MOTION TO**
**DISMISS BASED ON EXTRATERRITORIALITY AND IN FURTHER**
<u>**SUPPORT OF TRUSTEE'S MOTION FOR LEAVE TO AMEND COMPLAINTS**</u>

The Trustee respectfully submits this supplemental memorandum in opposition to Defendant Quilvest Finance Ltd.'s ("Quilvest Finance") motion to dismiss based on extraterritoriality and in further support of his motion for leave to amend the complaint. As set forth below the Trustee's Proffered Allegations Pertaining to the Extraterritoriality Issue as to Quilvest Finance ("Quilvest Finance Proffer") plead facts evidencing the subsequent transfers received by Quilvest Finance and component event transactions are predominantly domestic under the standard set forth in the Extraterritoriality Decision,[1] such that the Trustee's action does not require an extraterritorial application of SIPA or Bankruptcy Code § 550. Quilvest Finance's motion to dismiss should be denied and the Trustee should be granted leave to amend.

## I.     BACKGROUND & LEGAL STANDARD

The Trustee's Quilvest Finance Proffer alleges Quilvest Finance received at least $38,030,707 in subsequent transfers of BLMIS customer property from Fairfield Sentry Limited ("Fairfield Sentry"). Quilvest Finance Proffer ¶ 1. Quilvest Finance is a limited company formally registered in the Territory of the British Virgin Islands ("BVI") that operates as a private bank. *Id.* ¶ 2. Fairfield Sentry was one of several BLMIS feeder funds ("Feeder Funds")—single-purpose investment vehicles that pooled their investors' assets to invest with BLMIS, capitalizing on its consistent returns. *Id.* ¶ 3. The Trustee alleges that Fairfield Sentry withdrew funds from its BLMIS accounts and transferred the funds to Quilvest Finance. *Id.* ¶ 1.

Quilvest Finance argues that simply because it is formally organized under the law of the BVI, and because Fairfield Sentry was also formally organized under the law of the BVI, it is entitled to a finding that those transfers are "purely foreign" and must be dismissed under the Extraterritoriality Decision. Quilvest Finance is wrong. Its simplistic reasoning is contrary to

---

[1] *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.),* 513 B.R. 222 (S.D.N.Y. 2014) ("Extraterritoriality Decision").

1

the *Maxwell I* "component event" analysis embraced by the District Court in the Extraterritoriality Decision,[2] and contrary to Second Circuit precedent calling for courts to consider the economic and legal realities of a transaction.[3] Quilvest Finance ignores that its relationship with Fairfield Sentry was centered in the United States, and that Fairfield Sentry maintained its principal place of business in New York and was a domestic resident. As set forth below, the component events of the transactions demonstrate the Trustee's recovery claim against Quilvest Finance does not require an extraterritorial application of Bankruptcy Code § 550.

## II.    THE COMPONENT EVENTS OF THE TRANSACTIONS AT ISSUE OCCURRED IN NEW YORK

There was nothing foreign about the transfers except for Quilvest Finance's place of organization. This lone fact is insufficient to transform purposeful domestic transactions into foreign ones beyond the reach of this Court. The facts underlying the transfers were that Fairfield Sentry and BLMIS were both in the U.S., and Quilvest knowingly ceded control over all investment decisions to BLMIS.

First, Quilvest Finance's investment was made precisely in order to profit from the U.S. market, and it knowingly relinquished control over all investment decisions to Fairfield Sentry and BLMIS, both of which were U.S. operations. Quilvest Finance Proffer ¶ 8. Second, Quilvest Finance's affiliates, and its Boston-based independent consulting firm, Cambridge Associates LLC ("Cambridge"), performed due diligence, conducted meetings in the U.S., and used U.S. banks to facilitate its redemptions and subscriptions. *Id.* ¶ 9. Third, Quilvest Finance

---

[2] Extraterritoriality Decision, 513 B.R. at 227 (citing *Maxwell Commc'n Corp. v. Société General (In re Maxwell Commc'n Corp.)*, 186 B.R. 807, 816–17 (S.D.N.Y. 1995) ("*Maxwell I*")).

[3] *See, e.g., Parkcentral Global Hub Ltd. v. Porsche Auto. Holdings SE*, 763 F.3d 198, 215–17 (2d Cir. 2014) (cautioning lower courts about the problems of narrowly "treating the location of the transaction as the definitive factor in the extraterritoriality inquiry"); *Mastafa v. Chevron Corp.*, 770 F.3d 170, 182 (2d Cir. 2014); *European Cmty. v. RJR Nabisco, Inc.*, 764 F.3d 129, 141 (2d Cir. 2014).

2

received the subsequent transfers at issue from Fairfield Sentry, whose principal place of business was in New York and who was a U.S. resident. *Id.* ¶¶ 25–26.

### A. The Relationship between Quilvest Finance and Fairfield Sentry Was Centered in the United States

Quilvest Finance knew from Fairfield Sentry's Private Placement Memoranda ("PPM")—of which it acknowledged receipt in connection with making its first investment—that BLMIS in New York served as the custodian for Fairfield Sentry, and that control of Fairfield Sentry's investments rested entirely with BLMIS in New York. *Id.* ¶¶ 15–19. In addition, BLMIS purportedly invested Fairfield Sentry's assets in U.S. equities, U.S. options, and U.S. Treasurys, and Quilvest Finance knew it. *Id.* ¶ 17. Quilvest Finance even understood that there was a possibility BLMIS could misappropriate the assets invested in Fairfield Sentry. *Id.* ¶ 19.

At all relevant times, Quilvest Finance's affiliates selected hedge fund investments for Quilvest Finance and conducted due diligence in connection with those investments. *Id.* ¶¶ 10–11. Employees from Quilvest Finance's affiliate in Switzerland traveled to Fairfield Greenwich Group's ("FGG") New York headquarters to conduct due diligence on Fairfield Sentry on Quilvest Finance's behalf. *Id.* ¶ 10. In addition, employees from Quilvest Finance's affiliate in Paris frequently communicated via telephone and email with New York- and Miami-based FGG employees in connection with Quilvest Finance's subscriptions and redemptions. *Id.* ¶ 11.

Quilvest Finance relied on Cambridge to assist it in making investment decisions, including decisions related to Fairfield Sentry, BLMIS, and Madoff. *Id.* ¶ 12. Cambridge was "a vital part of their decision making process," and Quilvest Finance and its affiliates' main contact at Cambridge worked in Cambridge's Boston headquarters. *Id*

3

Quilvest Finance also used New York bank accounts to transfer funds to and from Fairfield Sentry. *Id.* ¶ 23. When Quilvest Finance delivered subscription funds to Fairfield Sentry, on at least 46 occasions over the course of 5 years, those funds flowed through a New York HSBC Bank USA correspondent bank account for ultimate deposit in Fairfield Sentry's bank account. *Id.* ¶ 24. From Fairfield Sentry's bank account, the funds were deposited in BLMIS's account at JPMorgan Chase Bank NA ("JPMorgan") in New York. *Id.* Quilvest Finance used its Quilvest affiliate in Switzerland's account at JPMorgan in New York to receive transfers from Fairfield Sentry at least 36 times over a five year period. *Id.* ¶ 25.

### B.  Fairfield Sentry Maintained Its Principal Place of Business in New York

Fairfield Sentry's principal place of business was in New York. *Id.* ¶ 26. In 1988, Walter Noel and Jeffrey Tucker founded FGG, a New York-based *de facto* partnership. *Id.* ¶ 27. Through FGG, Noel and Tucker organized Fairfield Sentry. *Id.* ¶ 30. Noel and Tucker formally organized Fairfield Sentry as an international business company under BVI law. *Id.* As an international business company, BVI law restricted Fairfield Sentry from doing business with other BVI citizens and residents except with other BVI international business companies. *Id.* Fairfield Sentry was a shell corporation present in the BVI solely on paper. *Id.* ¶ 31. Its BVI statutorily required registered address was a post office box care of a local trust company owned and operated by a local law firm. *Id.*

From its inception until its liquidation in 2009, Fairfield Sentry had no employees and no offices. *Id.* At all relevant times, Fairfield Sentry was operated almost entirely by FGG's New York City headquarters personnel who maintained final control of Fairfield Sentry's bank accounts and relationships with Fairfield Sentry's back office service providers. *Id.*

Beginning in 1990, Tucker opened Fairfield Sentry's BLMIS accounts. *Id.* ¶ 33. In the account opening documents, Tucker identified Fairfield Sentry's mailing address as Fairfield

4

International Managers, Inc.'s office in Greenwich, Connecticut and directed BLMIS to send Fairfield Sentry's monthly account statements, trade confirmations, and correspondence to the same U.S. address. *Id.* In January 1998, FGG requested BLMIS to send all Fairfield Sentry account information to FGG's New York City headquarters. *Id.*

From Fairfield Sentry's inception, FGG personnel at its New York City headquarters controlled the sales and subscriptions of the fund's shares. *Id.* ¶¶ 37–38. From at least January 1, 2002, all Fairfield Sentry subscription agreements contained New York choice of law provisions, and provided for venue and jurisdiction for any disputes in New York. *Id.* ¶ 38.

At all relevant times, FGG New York headquarters personnel monitored the Fairfield Sentry investments; managed the relationships with BLMIS; directed investments into and out of BLMIS; marketed Fairfield Sentry; approved all subscriptions for Fairfield Sentry shares; maintained Fairfield Sentry's books and records at the FGG New York City headquarters; and made all strategic and operational decisions regarding Fairfield Sentry. *Id.* ¶¶ 37–38.

### III. CONCLUSION

For the foregoing reasons and those stated in the Trustee's Main Brief, this Court should deny Quilvest Finance's motion to dismiss and grant the Trustee's motion for leave to amend.

5

| | |
|---|---|
| Dated: June 26, 2015<br>New York, New York | */s/* Thomas L. Long<br>**Baker & Hostetler LLP**<br>45 Rockefeller Plaza<br>New York, New York 10111<br>Telephone:  (212) 589-4200<br>Facsimile:  (212) 589-4201<br>David J. Sheehan<br>Thomas L. Long<br><br>**Baker & Hostetler LLP**<br>65 East State Street, Suite 2100<br>Columbus, Ohio 43215<br>Telephone:  (614) 228-1541<br>Facsimile:  (614) 462-2616<br>Lauren M. Hilsheimer<br>Damon M. Durbin<br>Justin J. Joyce<br><br>*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and estate of Bernard L. Madoff* |

6