**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee*
*for the Substantively Consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities LLC*
*and the estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (SMB) |
| Plaintiff-Applicant, | SIPA Liquidation |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | Adv. Pro. No. 12-01047 (SMB) |
| Plaintiff, | |
| v. | |
| KOCH INDUSTRIES, INC. as successor in interest to Koch Investment (UK) Company, | |
| Defendant. | |

**TRUSTEE'S SUPPLEMENTAL MEMORANDUM OF LAW IN**
**OPPOSITION TO DEFENDANT KOCH INDUSTRIES, INC.'S MOTION**
**TO DISMISS BASED ON EXTRATERRITORIALITY AND IN FURTHER**
**SUPPORT OF TRUSTEE'S MOTION FOR LEAVE TO AMEND COMPLAINTS**

The Trustee respectfully submits this supplemental memorandum in opposition to Defendant Koch Industries, Inc.'s ("Koch Industries"), as successor in interest to Koch Investment (UK) Company ("Koch Investment"), motion to dismiss based on extraterritoriality and in further support of the Trustee's motion for leave to amend his complaint. As set forth below, the Trustee's Proffered Allegations Pertaining to the Extraterritoriality Issue as to defendant Koch Industries, Inc. ("Proffered Allegations") plead facts evidencing the subsequent transfers received by Koch Investment and the component events of the transactions are predominantly domestic under the standard set forth in the Extraterritoriality Decision,[1] such that the Trustee's action does not require an extraterritorial application of SIPA or Bankruptcy Code § 550, and Koch Industries' motion to dismiss should be denied and Trustee's leave to amend should be granted.

I. **BACKGROUND & LEGAL STANDARD**

The Trustee alleges Koch Investment received subsequent transfers of BLMIS customer property from Fairfield Sentry Limited ("Fairfield Sentry"). Proffered Allegations ¶ 1. Koch Industries, a U.S.-based company headquartered in Wichita, Kansas, set up Koch Investment as a private unlimited company in the United Kingdom which existed solely on paper. *Id.* ¶¶ 2, 6. Koch Investment dissolved in 2009, and defendant Koch Industries assumed all of Koch Investment's assets and liabilities. *Id.* ¶ 10. Fairfield Sentry was a BLMIS feeder fund ("Feeder Fund")—a single-purpose investment vehicle that pooled its investors' assets to invest with BLMIS. *Id.* ¶ 4. Fairfield Greenwich Group ("FGG"), a *de facto* partnership based in New York, created, operated, and controlled Fairfield Sentry. *Id.* ¶ 5.

Koch Industries utilized Koch Investment to invest in the British Virgin Islands ("BVI")-

---

[1] *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.),* 513 B.R. 222 (S.D.N.Y. 2014) ("Extraterritoriality Decision").

1

organized Fairfield Sentry when another FGG Feeder Fund in which Koch Industries was invested, Delaware-organized Greenwich Sentry L.P. ("Greenwich Sentry"), had no capacity for additional investments. *Id.* ¶¶ 6, 12. As a U.S. taxpayer, Koch Industries did not have access to Fairfield Sentry, which on-paper was an offshore Feeder Fund only available to foreign residents. *Id.* ¶ 15. By utilizing Koch Investment as an investment entity with a U.K. registered address, Koch Industries gained access to Fairfield Sentry and additional access to BLMIS. *Id.* ¶ 16. Koch Investment had no employees in the United Kingdom, and was operated and controlled entirely in the United States by U.S.-based Koch Industries and its domestic affiliate. *Id.* ¶ 17.

Defendant Koch Industries argues that because Koch Investment was organized under the laws of the United Kingdom, and because Fairfield Sentry was organized under the laws of the BVI, it is entitled to a finding that the transfers at issue are "purely foreign" and must be dismissed under the Extraterritoriality Decision. Koch Industries is wrong, and its reasoning is contrary to the *Maxwell I* "component events" analysis embraced by the district court in the Extraterritoriality Decision,[2] and contrary to Second Circuit precedent calling for courts to consider the economic and legal realities of the transactions.[3]

As set forth below, a comprehensive review of the component events of the transactions demonstrates the transfers at issue were clearly predominantly domestic, and the Trustee's recovery claim against Koch Industries does not require an extraterritorial application of SIPA or Bankruptcy Code § 550. First, Koch Investment was a U.S. resident entirely controlled and operated in the United States by Koch Industries and its domestic affiliate. Second, Koch

---

[2] Extraterritoriality Decision, 513 B.R. at 227 (citing *Maxwell Commc'n Corp. v. Société General (In re Maxwell Commc'n Corp.)* 186 B.R. 807, 816–17 (S.D.N.Y. 1995) ("*Maxwell I*")).

[3] *See, e.g., Mastafa v. Chevron Corp.,* 770 F.3d 170, 182 (2d Cir. 2014); *European Cmty. v. RJR Nabisco, Inc.,* 764 F.3d 129, 141 (2d Cir. 2014); *Parkcentral Global Hub Ltd. v. Porsche Auto. Holdings SE*, 763 F.3d 198, 216–17 (2d Cir. 2014).

2

Investment utilized U.S. bank accounts in connection with the transfers.  Third, Koch Investment submitted to U.S. choice of law provisions in its subscription and side letter agreements related to the transactions at issue.  Finally, Fairfield Sentry maintained a principal place of business in New York and was a U.S. resident.

## II.     KOCH INVESTMENT WAS OPERATED AND CONTROLLED ENTIRELY FROM THE UNITED STATES

Although Koch Investment was formed as a U.K. company, it was operated entirely from the United States by U.S.-based Koch Industries.  Proffered Allegations ¶ 17.  Koch Industries and Houston, Texas-based Koch Capital Markets LP ("KCM")—a non-party affiliate owned by Koch Industries—selected and administered Koch Investment's investments from the United States.  *Id.*  From its office in Houston and on behalf of Koch Investment, KCM personnel: (i) conducted due diligence on Fairfield Sentry, Madoff, and BLMIS in connection with Koch Investment's investment; (ii) signed a Fairfield Sentry subscription agreement; and (iii) directed and controlled all subscriptions and redemptions to and from Fairfield Sentry.  *Id.* ¶¶ 17–22.  KCM held due diligence meetings with FGG representatives at its Houston office, and directed FGG to send all communications regarding Koch Investment's Fairfield Sentry holdings to its Houston office address.  *Id.* ¶¶ 19, 21.  When KCM personnel requested redemptions on behalf of Koch Investment from Fairfield Sentry in 2005, Fairfield Sentry's administrator sent the redemption confirmations to KCM's Houston office address.  *Id.* ¶ 22.

## III.    KOCH INVESTMENT UTILIZED U.S. BANK ACCOUNTS IN CONNECTION WITH THE TRANSACTIONS

Koch Investment utilized New York bank accounts—including an account in its own name—to direct funds to and from Fairfield Sentry.  Proffered Allegations ¶ 23.  All subscription payments from Koch Investment to Fairfield Sentry flowed through an HSBC Bank USA

correspondent bank account for ultimate deposit in Fairfield Sentry's bank account, and then to BLMIS's account at JPMorgan Chase NA ("JPMorgan") in New York. *Id.* ¶ 24. When redeeming funds from Fairfield Sentry, Koch Investment directed all payments to its own account at JPMorgan in Brooklyn, New York. *Id.* ¶ 25.

## IV. KOCH INVESTMENT ENTERED INTO AGREEMENTS WITH FGG THAT CONTAINED NEW YORK CHOICE OF LAW PROVISIONS

Koch Investment voluntarily executed a subscription agreement in connection with its investments in Fairfield Sentry that contained a New York choice of law provision, and submitted Koch Investment to the venue and jurisdiction of New York courts. Proffered Allegations ¶¶ 26–27. A Houston-based KCM employee also worked with Fairfield Greenwich (Bermuda) Ltd. ("FG Bermuda")—a FGG administrative entity—to enter into a "side letter" agreement that supplemented the terms of the subscription agreement. *Id.* ¶¶ 28, 47. Under the side letter, FG Bermuda would provide Koch Investment with periodic financial reports on Fairfield Sentry and would send the reports to KCM's Houston office. *Id.* ¶ 28. The side letter, like the subscription agreement, contained New York choice of law provisions. *Id.*

## V. FAIRFIELD SENTRY MAINTAINED ITS PRINCIPAL PLACE OF BUSINESS IN NEW YORK

FGG's founding partners, Walter Noel and Jeffrey Tucker formally organized the Fairfield Sentry as international business companies under BVI law. Proffered Allegations ¶ 33. As an international business company, BVI law restricted Fairfield Sentry from doing business with other BVI citizens and residents except with other BVI international business companies. *Id.* Fairfield Sentry was a shell corporation present in the BVI solely on paper. *Id.* ¶ 34. Its BVI statutorily required registered address was a post office box care of a local trust company owned and operated by a local law firm. *Id.*

4

From its inception until its liquidation in 2009, Fairfield Sentry had no employees and no offices. *Id.* ¶ 34. At all relevant times, Fairfield Sentry was operated almost entirely by FGG's New York City headquarters personnel who maintained final control of Fairfield Sentry's bank accounts and relationships with Fairfield Sentry's back office service providers. *Id.* ¶¶ 34, 39.

Beginning in 1990, Tucker opened Fairfield Sentry's BLMIS accounts. *Id.* ¶ 36. In the account opening documents, Tucker identified Fairfield Sentry's mailing address as Fairfield International Managers' office in Greenwich, Connecticut and directed BLMIS to send Fairfield Sentry's monthly account statements, trade confirmations, and correspondence to the same Fairfield International Managers' office. *Id.* In January 1998, FGG requested BLMIS to send all Fairfield Sentry account information to FGG's New York City headquarters. *Id.*

From Fairfield Sentry's inception, FGG personnel at its New York City headquarters controlled the sales and subscriptions of the funds' shares. *Id.* ¶¶ 40–41. From at least January 1, 2002, all Fairfield Sentry subscription agreements contained New York choice of law provisions, and provided for venue and jurisdiction for any disputes in New York. *Id.* ¶ 41.

At all relevant times, FGG New York City headquarters personnel monitored Fairfield Sentry's investments; managed the relationships with BLMIS; directed investments into and out of BLMIS as well as into and out of Fairfield Sentry; marketed Fairfield Sentry; approved all subscriptions for Fairfield Sentry shares; maintained all of Fairfield Sentry's books and records at the FGG New York City headquarters; and made all strategic and operational decisions regarding Fairfield Sentry. *Id.* ¶ 40.

## VI.  CONCLUSION

For the foregoing reasons and those stated in the Trustee's Main Brief, this Court should deny Koch Industries' motion to dismiss and grant the trustee's motion for leave to amend.

| | |
|---|---|
| Dated: June 26, 2015<br>New York, New York | /s/ Thomas L. Long<br>**Baker & Hostetler LLP**<br>45 Rockefeller Plaza<br>New York, New York 10111<br>Telephone: (212) 589-4200<br>Facsimile: (212) 589-4201<br>David J. Sheehan<br>Thomas L. Long<br><br>**Baker & Hostetler LLP**<br>65 East State Street, Suite 2100<br>Columbus, Ohio 43215<br>Telephone: (614) 228-1541<br>Facsimile: (614) 462-2616<br>Lauren M. Hilsheimer<br>Brian R. Noethlich<br><br>*Attorneys for Irving H. Picard, Trustee*<br>*for the substantively consolidated SIPA*<br>*Liquidation of Bernard L. Madoff Investment*<br>*Securities LLC* |