**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee
for the Substantively Consolidated SIPA Liquidation
of Bernard L. Madoff Investment Securities LLC
and the estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, <br><br> Plaintiff-Applicant, <br> v. <br><br> BERNARD L. MADOFF INVESTMENT SECURITIES LLC, <br><br> Defendant. | Adv. Pro. No. 08-01789 (SMB) <br><br> SIPA Liquidation <br><br> (Substantively Consolidated) |
| In re: <br> BERNARD L. MADOFF, <br><br> Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, <br><br> Plaintiff, <br> v. <br><br> NATIONAL BANK OF KUWAIT S.A.K., <br><br> Defendant. | Adv. Pro. No. 11-02554 (SMB) |

**TRUSTEE'S SUPPLEMENTAL MEMORANDUM OF LAW IN
OPPOSITION TO NATIONAL BANK OF KUWAIT S.A.K.'S MOTION
TO DISMISS BASED ON EXTRATERRITORIALITY AND IN FURTHER
<u>SUPPORT OF TRUSTEE'S MOTION FOR LEAVE TO AMEND COMPLAINTS</u>**

The Trustee respectfully submits this supplemental memorandum in opposition to defendant National Bank of Kuwait S.A.K.'s ("NBK") motion to dismiss on extraterritoriality and in further support of the Trustee's motion for leave to amend the complaint. As set forth below the Proffered Allegations Pertaining to the Extraterritoriality Issue as to NBK ("Proffered Allegations") plead facts evidencing the subsequent transfers received by NBK are predominantly domestic under the standard set forth in the Extraterritoriality Decision,[1] such that the Trustee's action does not require an extraterritorial application of SIPA or Bankruptcy Code § 550. NBK's motion to dismiss should be denied and the Trustee's motion for leave to amend this complaint should be granted.

I.  **BACKGROUND & LEGAL STANDARD**

This Court must determine as to whether the Trustee's claim against NBK seeking the recovery of BLMIS customer property require an extraterritorial application of SIPA and Bankruptcy Code § 550.[2] Under the Extraterritoriality Decision, the Trustee need only put forth "specific facts suggesting a domestic transfer" to avoid dismissal.[3] In making this determination, this Court must review the "location of the transfers as well as the component events of those transactions."[4] There is no bright-line test to determine whether a transaction is extraterritorial or domestic[5]—it is a factual inquiry in which all reasonable inferences are to be drawn in the Trustee's favor.[6]

---

[1] *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.),* 513 B.R. 222 (S.D.N.Y. 2014) ("Extraterritoriality Decision").

[2] *Id.* at 232–33.

[3] *Id.* at 232, n.4.

[4] *Id.* at 227 (quoting *Maxwell Commc'n Corp. v. Societe General PLC (In re Maxwell Commc'n Corp.)*, 186 B.R. 807, 817 (S.D.N.Y. 1995) ("*Maxwell I*")).

[5] *Parkcentral Global Hub Ltd. v. Porsche Auto. Holdings SE*, 763 F.3d 198, 216–17 (2d Cir. 2014) (rejecting single-factor, bright-line rule as appropriate for extraterritoriality analysis to ascertain whether foreign or domestic elements "predominate").

[6] *See, e.g., Anwar v. Fairfield Greenwich Ltd.*, 728 F. Supp. 2d 372, 403–05 (S.D.N.Y. 2010).

1

The Trustee's Proffered Allegations state NBK received $19,178,423 in subsequent transfers of BLMIS customer property from Fairfield Sentry Limited ("Fairfield Sentry"). Proffered Allegations ¶ 1. Fairfield Sentry was a "BLMIS feeder fund"—an investment fund that pooled its investors' assets to invest with BLMIS in New York to benefit from Madoff's purported U.S. markets investments. *Id.* The Trustee alleges Fairfield Sentry withdrew funds from its BLMIS accounts in New York and transferred the funds to NBK. *Id.*

NBK argues that because it is formally organized under the laws of Kuwait, and because Fairfield Sentry was formally organized under the laws of the Territory of the British Virgin Islands ("BVI"), it is entitled to a finding that the transfers are "purely foreign" and should be dismissed under the Extraterritoriality Decision. NBK's superficial reasoning is contrary to the *Maxwell I* "component event" analysis embraced by the District Court in the Extraterritoriality Decision, and contrary to Second Circuit precedent requiring courts to look at the economic and legal realities of a transaction.[7] Here, the Trustee has alleged specific facts showing the transfers to NBK were not "purely foreign" and do not require an extraterritorial application of SIPA and the Bankruptcy Code, including: (1) BLMIS's operations in New York were central to NBK's transactions with Fairfield Sentry; (2) NBK used its New York office in connection with its investments in BLMIS through Fairfield Sentry; (3) NBK agreed its investment in Fairfield Sentry was governed by New York law, jurisdiction, and venue; (4) NBK utilized New York bank accounts to invest in Fairfield Sentry, and receive redemptions and fee rebate payments for its investment; and (5) Fairfield Sentry's principal place of business was in New York.

## II. THE TRANSFERS AND COMPONENT EVENTS OF NBK'S TRANSACTIONS WITH FAIRFIELD SENTRY ARE PREDOMINANTLY DOMESTIC

NBK purposefully invested in Fairfield Sentry as a means of transacting business with

---

[7] *See, e.g., Mastafa v. Chevron Corp.*, 770 F.3d 170, 182 (2d Cir. 2014); *European Cmty. v. RJR Nabisco, Inc.*, 764 F.3d 129, 141–42 (2d Cir. 2014); *Parkcentral Global Hub Ltd.*, 763 F.3d at 216.

BLMIS in its attempt to profit from U.S.-based investment strategy and purported investments in the U.S. markets. Proffered Allegations ¶ 7. NBK filed customer claims and in its brief appealing the Trustee's denial of those customer claims, NBK divulged the centrality of BLMIS's New York operations, explaining that it invested in Fairfield Sentry—among other BLMIS feeder funds—specifically to gain access to BLMIS and the U.S. markets.[8] *Id.* ¶¶ 8–9.

NBK purposefully invested in the Fairfield Sentry and other BLMIS feeder funds to place its funds with BLMIS because NBK knew Madoff purported to execute the split-strike conversion strategy ("SSC Strategy") for each of the BLMIS feeder funds by investing exclusively in U.S. securities, options, and U.S. Treasurys. *Id.* ¶ 20. Prior to subscribing in Fairfield Sentry, NBK specifically sought out "hedge funds linked to the managed accounts with Bernard L. Madoff LLC, NY." *Id.* ¶ 19. NBK identified at least seven BLMIS feeder funds, including Fairfield Sentry. *Id.* ¶ 18. From its due diligence, NBK also knew that BLMIS maintained custody and investment discretion over the assets invested with the SSC Strategy in New York, and BLMIS purported to execute the SSC Strategy in New York as prime broker. *Id.* ¶ 20. NBK willingly relinquished control over its U.S. investments to BLMIS. *Id.* ¶ 21.

NBK's conduct placed New York at the center of its BLMIS investments through Fairfield Sentry. Fairfield Greenwich Group ("FGG"), a *de facto* partnership based in New York, created, operated, and controlled Fairfield Sentry, and representatives responsible for managing NBK's investments in Fairfield Sentry were based in FGG's New York office. *Id.* ¶ 23–25. NBK knew BLMIS's operations in New York were essential to its entire transaction with Fairfield Sentry. *Id.* ¶ 23. NBK purposefully invested in Fairfield Sentry as a means to place its investments in U.S. securities with BLMIS in New York. *Id.* ¶ 7. Moreover, NBK

---

[8] Appellants Brief at 12, *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec.*, No. 11-cv-06565 (DLC) (S.D.N.Y. Oct. 14, 2011), ECF No. 7.

maintained a New York office, which it utilized in connection with its Fairfield Sentry investments. *Id.* ¶ 17.

NBK executed Fairfield Sentry subscription agreements invoking New York law, and agreeing to New York jurisdiction and venue in connection with its investments. *Id.* ¶¶ 10–11. By executing these agreements, NBK also directed its subscription payments to an HSBC Bank, New York account for ultimate deposit in Fairfield Sentry's account. *Id.* ¶ 14. From Fairfield Sentry's account, the funds were deposited in BLMIS's account at JPMorgan Chase Bank NA ("JPMorgan") in New York. *Id.* ¶ 14.

NBK also repeatedly utilized New York bank accounts to receive redemptions and fee payments in connection with its Fairfield Sentry investments. *Id.* ¶¶ 15. For its redemption payments from Fairfield Sentry, NBK utilized a New York account of its custodial bank, Euroclear Bank S.A./Fundsettle, at The Bank of New York and directed its money through this account at least 30 times to receive redemption payments from Fairfield Sentry. *Id.* ¶ 16.

NBK also executed a Letter of Understanding with FGG-member entity, Fairfield Greenwich Limited ("FG Limited"), which maintained its principal place of business in New York. *Id.* ¶ 12. Under the terms of the Letter of Understanding, NBK received retrocession payments—fees rebated back to NBK for placing money with Fairfield Sentry as an incentive for investing. *Id.* These retrocession payments were paid to NBK from FG Limited's New York account at JPMorgan and NBK directed the retrocession payments to its account held at its New York office. *Id.* ¶ 17. NBK and FG Limited also agreed in the Letter of Understanding that their relationship was governed by New York law. *Id.* ¶ 13.

### III.   NEW YORK-BASED FGG CREATED, OPERATED, AND CONTROLLED FAIRFIELD SENTRY

In 1988, Walter Noel and Jeffrey Tucker, founded FGG. *Id*. ¶ 28. Through FGG, Noel

4

and Tucker organized the largest BLMIS feeder fund, Fairfield Sentry. *Id*.

Noel and Tucker formally organized Fairfield Sentry as an international business company under BVI law. *Id.* ¶ 31. As an international business company, BVI law restricted Fairfield Sentry from doing business with other BVI citizens and residents except with other BVI international business companies. *Id*. Fairfield Sentry was a shell corporation present in the BVI solely on paper. *Id*. ¶ 32. Its BVI statutorily required registered address was a post office box care of a local trust company owned and operated by a local law firm. *Id*.

From its inception until its liquidation in 2009, Fairfield Sentry had no employees and no offices. *Id*. At all relevant times, it was operated almost entirely by FGG's New York headquarters personnel who maintained final control of Fairfield Sentry's bank accounts and relationships with Fairfield Sentry's back office service providers. *Id*. ¶¶ 32, 39.

From Fairfield Sentry's inception, FGG personnel at its New York headquarters controlled the sales and subscriptions of the funds' shares. *Id*. ¶ 38. From at least January 1, 2002, all Fairfield Sentry subscription agreements contained New York choice of law provisions, and provided for venue and jurisdiction for any disputes in New York. *Id*. ¶ 39.

At all relevant times, FGG's New York headquarters personnel monitored Fairfield Sentry's investments; managed its relationships with BLMIS; directed investments into and out of BLMIS; approved its investors' subscriptions and redemptions; marketed Fairfield Sentry; maintained Fairfield Sentry's books and records at the FGG New York headquarters; and made all strategic and operational decisions for Fairfield Sentry. *Id*. ¶ 38.

## IV.   CONCLUSION

For the foregoing reasons and those stated in the Trustee's Main Brief, this Court should deny NBK's motion to dismiss and grant the Trustee's motion for leave to amend the complaint.

5

| | |
|---|---|
| Dated: June 26, 2015<br>      New York, New York | /s/ Thomas L. Long<br>**Baker & Hostetler LLP**<br>45 Rockefeller Plaza<br>New York, New York 10111<br>Telephone: (212) 589-4200<br>Facsimile: (212) 589-4201<br>David J. Sheehan<br>Thomas L. Long<br>Catherine E. Woltering<br><br>**Baker & Hostetler LLP**<br>65 East State Street, Suite 2100<br>Columbus, Ohio 43215<br>Telephone: (614) 228-1541<br>Facsimile: (614) 462-2616<br>Melonia A. Bennett<br><br>*Attorneys for Irving H. Picard, Trustee*<br>*for the Substantively Consolidated SIPA*<br>*Liquidation of Bernard L. Madoff Investment*<br>*Securities LLC and the estate of*<br>*Bernard L. Madoff* |