**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee*
*for the Substantively Consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities LLC*
*and the estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>　　　　　　Plaintiff-Applicant,<br>　　v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>　　　　　　Defendant. | Adv. Pro. No. 08-01789 (SMB)<br><br>SIPA Liquidation<br><br>(Substantively Consolidated) |
| In re:<br>BERNARD L. MADOFF,<br>　　　　　　Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>　　　　　　Plaintiff,<br>　　v.<br><br>THE SUMITOMO TRUST AND BANKING CO., LTD.,<br><br>　　　　　　Defendant. | Adv. Pro. No. 11-02573 (SMB) |

**TRUSTEE'S SUPPLEMENTAL MEMORANDUM OF LAW IN OPPOSITION**
**TO THE SUMITOMO TRUST AND BANKING CO., LTD.'S MOTION**
**TO DISMISS BASED ON EXTRATERRITORIALITY AND IN FURTHER**
**SUPPORT OF TRUSTEE'S MOTION FOR LEAVE TO AMEND COMPLAINTS**

The Trustee respectfully submits this supplemental memorandum in opposition to The Sumitomo Trust and Banking Co., Ltd.'s ("Sumitomo") motion to dismiss based on extraterritoriality and in further support of the Trustee's motion for leave to amend the complaint. As set forth below, the Trustee's Proffered Allegations Pertaining to the Extraterritoriality Issue as to defendant Sumitomo ("Proffered Allegations") plead specific facts indicating that the subsequent transfer received by Sumitomo is predominantly domestic under the standard set forth in the Extraterritoriality Decision,[1] such that the Trustee's action does not require an extraterritorial application of SIPA or Bankruptcy Code § 550. Sumitomo's motion to dismiss should be denied, and the Trustee should be granted leave to amend the complaint.

## I.     BACKGROUND & LEGAL STANDARD

The Trustee's Proffered Allegations explain that Sumitomo received a single $54,253,642 transfer of BLMIS customer property from Fairfield Sentry Limited ("Fairfield Sentry"). Proffered Allegations ¶ 1. Fairfield Sentry was a BLMIS feeder fund—a single-purpose investment fund that pooled its investors' assets to invest with BLMIS in New York, capitalizing on its consistent returns. *Id.* ¶ 3. Fairfield Greenwich Group ("FGG"), a *de facto* partnership based in New York, created, operated, and controlled Fairfield Sentry. *Id.* ¶ 4. The Trustee alleges that Fairfield Sentry withdrew funds from its BLMIS accounts and transferred those funds to Sumitomo. *Id.* ¶ 1.

Sumitomo argues that because it is formally organized under the laws of Japan, and because Fairfield Sentry was formally organized under the laws of the Territory of the British Virgin Islands ("BVI"), it is entitled to a finding that the transfer at issue is "purely foreign" and should be dismissed under the Extraterritoriality Decision. Sumitomo is wrong and it ignores

---

[1] *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC* (*In re Madoff Sec.*), 513 B.R. 222 (S.D.N.Y. 2014) ("Extraterritoriality Decision").

that this analysis is not a bright-line test to determine whether a transaction is extraterritorial or domestic,[2] but rather a factual inquiry with all reasonable inferences drawn in the Trustee's favor.[3] In making this determination, this Court must review the *Maxwell I* "component events" analysis embraced by the District Court in the Extraterritoriality Decision,[4] and as well as Second Circuit precedent calling for courts to consider the economic and legal realities of the transactions.[5]

Sumitomo's motion should be denied because Trustee's action does not require an extraterritorial application of SIPA or Bankruptcy Code § 550: (1) Sumitomo maintained a New York office through which it conducted the transactions with Fairfield Sentry, including conducting due diligence on Fairfield Sentry, BLMIS, and Madoff in connection with its investment; (2) Sumitomo purposefully invested in Fairfield Sentry as a means of gaining access to New York-based BLMIS and the U.S. securities market; (3) Sumitomo agreed New York law applied to the transactions and submitted to New York jurisdiction and venue; (4) Sumitomo used New York bank accounts for its transactions with Fairfield Sentry; and (5) Fairfield Sentry's principal place of business was New York.

## II. THE TRANSFER AND COMPONENT EVENTS OF SUMITOMO'S TRANSACTIONS WITH FAIRFIELD SENTRY ARE PREDOMINANTLY DOMESTIC

Sumitomo's transactions with Fairfield Sentry were overwhelmingly domestic in nature. At all relevant times, Sumitomo maintained a branch office in New York. Proffered Allegations

---

[2] *Parkcentral Global Hub Ltd. v. Porsche Auto. Holdings SE*, 763 F.3d 198, 216–17 (2d Cir. 2014) (rejecting single-factor, bright-line rule as appropriate for extraterritoriality analysis to ascertain whether foreign or domestic elements "predominate").

[3] *See, e.g., Anwar v. Fairfield Greenwich Ltd.*, 728 F. Supp. 2d 372, 403–05 (S.D.N.Y. 2010).

[4] Extraterritoriality Decision, 513 B.R. at 227 (citing *Maxwell Commc'n Corp. v. Société General (In re Maxwell Commc'n Corp.)* 186 B.R. 807, 816–817 (S.D.N.Y. 1995) ("*Maxwell I*")).

[5] *See, e.g., Mastafa v. Chevron Corp.*, 770 F.3d 170, 182 (2d Cir. 2014); *European Cmty. v. RJR Nabisco, Inc.*, 764 F.3d 129, 141–42 (2d Cir. 2014); *Parkcentral Global Hub Ltd.*, 763 F.3d at 216–17 (2d Cir. 2014).

2

¶¶ 5–6. Sumitomo's New York office conducted due diligence on Fairfield Sentry, BLMIS, and Madoff, and representatives from its New York office met with representatives at FGG's headquarters. *Id.* ¶ 7. FGG was a *de facto* partnership based in New York that created, operated, and controlled Fairfield Sentry. *Id.* ¶ 4. This due diligence was critical to Sumitomo's decision to invest in Fairfield Sentry. *Id.* ¶¶ 7–13.

Sumitomo knew Fairfield Sentry's principal place of business was in New York at FGG's headquarters, and that BLMIS's operations in New York were central to its investment with Fairfield Sentry. *Id.* ¶¶ 11–12. Sumitomo identified Madoff as "the key person" behind the purported success of the split-strike conversion investment strategy ("SSC Strategy")—in which Fairfield Sentry invested at least 95% of its assets. *Id.* ¶ 12. Sumitomo subscribed in Fairfield Sentry as a means of gaining access to New York-based BLMIS and the U.S. securities market. *Id.* ¶ 13.

From its meetings with representatives of Fairfield Sentry and its review of Fairfield Sentry's offering memoranda and due diligence questionnaires, Sumitomo knew the following facts:

- The "geographical focus of the [SSC Strategy]" is the "S&P 100 Equities (United States)," *id.* ¶ 8;
- BLMIS maintained custody and investment discretion over the assets invested with the SSC Strategy in New York, *id.*;
- BLMIS purported to execute the SSC Strategy as prime broker from New York, *id.*; and
- BLMIS purported to invest exclusively in U.S. S&P 100 Index securities, S&P 100 Index options, and U.S. Treasury bills. *Id.*

In connection with its investment in Fairfield Sentry, Sumitomo executed a subscription agreement, invoking New York law, and agreeing to New York jurisdiction and venue. *Id.* ¶¶ 17–18. By executing the subscription agreement, Sumitomo agreed to send its

3

subscription payment to an HSBC Bank, New York account for ultimate deposit in Fairfield Sentry's bank account, and then to BLMIS's account at JPMorgan Chase NA in New York. *Id.* ¶ 22. Sumitomo also executed a confidentiality agreement with an FGG member company, which included a New York choice of law provision. *Id.* ¶ 19. By executing these agreements, Sumitomo agreed that U.S. law would apply to its relationship and investment with Fairfield Sentry. *Id.* ¶¶ 17–20.

Finally, Sumitomo directed Fairfield Sentry to send Sumitomo's full redemption to its New York bank account, which Sumitomo held in its own name at Citibank N.A. *Id.* ¶ 23.

There was nothing foreign about Sumitomo's investment, and it deliberately sought to profit from the U.S. market by investing in a strategy run by BLMIS in New York.

### III.     FAIRFIELD SENTRY MAINTAINED A PRINCIPAL PLACE OF BUSINESS IN NEW YORK

In 1988, U.S. citizens and residents, Walter Noel and Jeffrey Tucker, founded FGG. Proffered Allegations ¶¶ 4, 25. As part of FGG, Noel and Tucker incorporated Fairfield International Managers, Inc. and organized the largest BLMIS Feeder Fund, Fairfield Sentry. *Id.* ¶¶ 27–28.

Noel and Tucker formally organized Fairfield Sentry as an international business company under BVI law. *Id.* ¶ 28. As an international business company, BVI law restricted Fairfield Sentry from doing business with other BVI citizens and residents except with other BVI international business companies. *Id.* Fairfield Sentry was a shell corporation present in the BVI solely on paper. *Id.* ¶ 29. Its BVI statutorily required registered address was a post office box care of a local trust company owned and operated by a local law firm. *Id.*

From its inception until its liquidation in 2009, Fairfield Sentry had no employees and no offices. *Id.* At all relevant times, Fairfield Sentry was operated almost entirely by FGG's New

4

York headquarters personnel who maintained final control of Fairfield Sentry's bank accounts and relationships with Fairfield Sentry's back office service providers. *Id.* ¶¶ 34–36.

Beginning in 1990, Tucker opened Fairfield Sentry's BLMIS accounts. *Id.* ¶ 31. In the account opening documents, Tucker identified Fairfield Sentry's mailing address as Fairfield International Managers, Inc.'s office in Greenwich, Connecticut and directed BLMIS to send Fairfield Sentry's monthly account statements, trade confirmations, and correspondence to the same Fairfield International Managers, Inc. office. *Id.* In January 1998, FGG requested BLMIS to send all Fairfield Sentry account information to FGG's New York headquarters. *Id.*

From Fairfield Sentry's inception, FGG personnel at its New York headquarters controlled the sales and subscriptions of the funds' shares. *Id.* ¶¶ 35–36. From at least January 1, 2002, all Fairfield Sentry subscription agreements contained New York choice of law provisions, and provided for venue and jurisdiction for any disputes in New York. *Id.* ¶ 36.

At all relevant times, FGG's New York headquarters personnel monitored Fairfield Sentry's investments; managed the relationships with BLMIS; directed investments into and out of BLMIS; marketed Fairfield Sentry; approved all subscriptions for Fairfield Sentry shares; maintained Fairfield Sentry's books and records at the FGG New York headquarters; and made all strategic and operational decisions regarding Fairfield Sentry. *Id.* ¶¶ 35–36.

## IV.  CONCLUSION

For the foregoing reasons and those stated in the Trustee's Main Brief, this Court should deny Sumitomo's motion to dismiss and grant the Trustee's motion for leave to amend the complaint.

5

| | |
|---|---|
| Dated: June 26, 2015<br>New York, New York | /s/ Thomas L. Long<br>**Baker & Hostetler LLP**<br>45 Rockefeller Plaza<br>New York, New York 10111<br>Telephone: (212) 589-4200<br>Facsimile: (212) 589-4201<br>David J. Sheehan<br>Thomas L. Long<br>Catherine E. Woltering<br><br>**Baker & Hostetler LLP**<br>65 East State Street, Suite 2100<br>Columbus, Ohio 43215<br>Telephone: (614) 228-1541<br>Facsimile: (614) 462-2616<br>Melonia A. Bennett<br>Brian R. Noethlich<br><br>*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the estate of Bernard L. Madoff* |