**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee*
*for the Substantively Consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities LLC*
*and the estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | No. 08-01789 (SMB) |
| Plaintiff-Applicant, | SIPA Liquidation |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC and the estate of Bernard L. Madoff, | Adv. Pro. No. 11-02540 (SMB) |
| Plaintiff, | |
| v. | |
| LION GLOBAL INVESTORS LIMITED, | |
| Defendant. | |

**TRUSTEE'S SUPPLEMENTAL**
**MEMORANDUM OF LAW IN OPPOSITION TO**
**LION GLOBAL INVESTORS LIMITED'S MOTION TO**
**DISMISS BASED ON EXTRATERRITORIALITY AND IN FURTHER**
**SUPPORT OF TRUSTEE'S MOTION FOR LEAVE TO AMEND COMPLAINTS**

The Trustee respectfully submits this supplemental memorandum in opposition to Lion Global Investors Limited's ("Lion Global") motion to dismiss based on extraterritoriality and in further support of his motion for leave to amend the complaint. As set forth below, the Trustee's Proffered Allegations Pertaining to the Extraterritoriality Issue as to Lion Global ("Lion Global Proffer") plead facts evidencing the subsequent transfers received by Lion Global and the component events of the transactions are predominantly domestic under the standard set forth in the Extraterritoriality Decision,[1] such that the Trustee's action does not require an extraterritorial application of SIPA or Bankruptcy Code § 550, Lion Global's motion to dismiss should be denied, and the Trustee's motion for leave to amend the complaint should be granted.

I. **BACKGROUND & LEGAL STANDARD**

The Trustee's Lion Global Proffer alleges Lion Capital Management ("Lion Capital") received at least $50,583,443 in subsequent transfers of BLMIS customer property from Fairfield Sentry Limited ("Fairfield Sentry"). Lion Global Proffer ¶ 1. Lion Capital was renamed Lion Global in 2008. *Id.* Fairfield Sentry was one of several BLMIS feeder funds ("Feeder Funds")—single-purpose investment vehicles that pooled their investors' assets to invest with New York-based BLMIS, capitalizing on its consistent returns. *Id.* ¶ 3. Fairfield Greenwich Group ("FGG"), a *de facto* partnership based in New York, created, operated, and controlled Fairfield Sentry. *Id.* ¶ 4. The Trustee alleges Fairfield Sentry withdrew funds from its BLMIS accounts and transferred them to Lion Capital. *Id.* ¶ 1.

Lion Capital was created as a result of a merger involving Straits Lion Asset Management ("Straits Lion") in 2005. *Id.* ¶ 5. Prior to the formation of Lion Capital, FGG had entered into a joint venture with Straits Lion. *Id.* ¶ 6. In 2005, as the successor-in-interest of

---

[1] *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.),* 513 B.R. 222 (S.D.N.Y. 2014) ("Extraterritoriality Decision").

1

Straits Lion, any knowledge about Fairfield Sentry, Madoff, and BLMIS was imputed from Straits Lion to Lion Capital. *Id.* ¶ 7. Upon information and belief, Lion Capital held shares of Fairfield Sentry in connection with the joint venture (hereinafter Straits Lion and Lion Capital will be collectively referred to as "Lion"). *Id.*

Lion argues that simply because it is formally organized under the laws of Singapore, and because Fairfield Sentry was formally organized under the law of the Territory of the British Virgin Islands ("BVI"), it is entitled to a finding that those transfers are "purely foreign" and must be dismissed under the Extraterritoriality Decision. Lion is wrong. Its simplistic reasoning is contrary to the *Maxwell I* "component event" analysis directed by the district court in the Extraterritoriality Decision,[2] and contrary to Second Circuit precedent calling for courts to consider the economic and legal realities of a transaction.[3] The component events of the transactions demonstrate the Trustee's recovery claim against Lion does not require an extraterritorial application of SIPA or Bankruptcy Code § 550. As Lion ignores, Lion's relationship with Fairfield Sentry was centered in the United States. Moreover, the transfers Lion received were from Fairfield Sentry, which maintained its principal place of business in New York.

## II. THE TRANSFERS AND COMPONENT EVENTS OF THE TRANSACTIONS WERE PREDOMINANTLY DOMESTIC

The Lion Global Proffer sets forth facts that show the transfers and component events of the transactions were comprised of predominantly domestic elements. First, Lion knew control over Fairfield Sentry's investments rested entirely with BLMIS in New York. Second, Lion sent

---

[2] Extraterritoriality Decision, 513 B.R. at 227 (citing *Maxwell Commc'n Corp. v. Société General (In re Maxwell Commc'n Corp.)*, 186 B.R. 807, 816–17 (S.D.N.Y. 1995) ("*Maxwell I*")).

[3] *See, e.g., Parkcentral Global Hub Ltd. v. Porsche Auto. Holdings SE*, 763 F.3d 198, 215–17 (2d Cir. 2014) (cautioning lower courts about the problems of narrowly "treating the location of the transaction as the definitive factor in the extraterritoriality inquiry"); *Mastafa v. Chevron Corp.*, 770 F.3d 170, 182 (2d Cir. 2014); *European Cmty. v. RJR Nabisco, Inc.*, 764 F.3d 129, 141 (2d Cir. 2014).

2

employees to New York to meet with FGG and conduct due diligence on Fairfield Sentry, Madoff, and BLMIS. Third, Lion signed documents that contained New York choice of law provisions. Fourth, Lion used New York bank accounts in connection with the transactions at issue. Finally, Lion received the subsequent transfers at issue from Fairfield Sentry, whose principal place of business was in New York.

### A. Lion's Relationship with Fairfield Sentry Was Centered in the United States

Lion knew that its transactions with Fairfield Sentry were centered on BLMIS, in New York. As a result of its due diligence and close relationship with FGG because of the joint venture, Lion knew BLMIS served as the custodian for Fairfield Sentry and that control of Fairfield Sentry's investments rested entirely with BLMIS. Lion Global Proffer ¶ 8. Lion also knew BLMIS purportedly invested Fairfield Sentry's assets in U.S. equities, U.S. options, and U.S. Treasurys. *Id.* ¶ 16. Lion therefore made subscriptions into Fairfield Sentry to profit from BLMIS in New York and with intent to invest in the U.S. market. *Id.* ¶ 17.

Lion and joint venture employees frequently traveled to FGG's New York headquarters to conduct due diligence on FGG's funds, including Fairfield Sentry, and become familiar with FGG's operations. *Id.* ¶ 12. Lion employees, including Lion's CEO, traveled to FGG's New York headquarters to familiarize themselves with FGG's processes and procedures. *Id.* FGG personnel from the New York headquarters also sent Lion monthly update letters discussing the joint venture and due diligence performed with Lion and the joint venture in New York. *Id.* ¶ 14.

Lion also, upon information and belief, voluntarily executed a Fairfield Sentry subscription agreement, which contained a New York choice of law provision and subjected Lion to the jurisdiction and venue of the New York courts. *Id.* ¶ 19. Lion's subscription payments flowed through a New York HSBC Bank USA correspondent bank account for ultimate deposit in Fairfield Sentry's bank account. *Id.* ¶ 23. From Fairfield Sentry's bank

3

account, the funds were deposited in BLMIS's account at JPMorgan Chase Bank NA in New York. *Id.* Lion received redemption payments from Fairfield Sentry in a correspondent account at The Bank of New York. *Id.* ¶ 24.

In addition, Lion's joint venture entered into a letter of understanding with Fairfield Greenwich Limited ("FG Limited"), an FGG administrative entity, to receive fees in exchange for promoting FGG's funds, including Fairfield Sentry. *Id.* ¶ 20. The letter of understanding contained a New York choice of law provision and directed all notice related to the letter to FGG's New York headquarters. *Id.* ¶ 21.

### B. Fairfield Sentry Maintained its Principal Place of Business in New York

FGG's founding partners, Walter Noel and Jeffrey Tucker, formally organized Fairfield Sentry as an international business company under BVI law. Lion Global Proffer ¶ 29. As an international business company, BVI law restricted Fairfield Sentry from doing business with other BVI citizens and residents except with other BVI international business companies. *Id.* Fairfield Sentry was a shell corporation present in the BVI solely on paper. *Id.* ¶ 30. Its BVI statutorily required registered address was a post office box care of a local trust company owned and operated by a local law firm. *Id.*

From its inception until its liquidation in 2009, Fairfield Sentry had no employees and no offices. *Id.* At all relevant times, Fairfield Sentry was operated almost entirely by FGG New York personnel who maintained final control of Fairfield Sentry's bank accounts and relationships with Fairfield Sentry's back office service providers. *Id.* ¶ 37.

Beginning in 1990, Tucker opened Fairfield Sentry's BLMIS accounts. *Id.* ¶ 32. In the account opening documents, Tucker identified Fairfield Sentry's mailing address as Fairfield International Managers, Inc.'s office in Greenwich, Connecticut and directed BLMIS to send Fairfield Sentry's monthly account statements, trade confirmations, and correspondence to the

4

same U.S. address. *Id.* In January 1998, FGG requested BLMIS to send all Fairfield Sentry account information to FGG's New York headquarters. *Id.*

From Fairfield Sentry's inception, FGG personnel at its New York headquarters controlled the sales and subscriptions of the fund's shares. *Id.* ¶ 37. From at least January 1, 2002, all Fairfield Sentry subscription agreements contained New York choice of law provisions, and provided for venue and jurisdiction for any disputes in New York. *Id.*

At all relevant times, FGG New York personnel monitored Fairfield Sentry's investments; managed the relationships and investments with BLMIS; marketed Fairfield Sentry; approved all subscriptions for Fairfield Sentry shares; maintained Fairfield Sentry's books and records at the FGG New York headquarters; and made all strategic and operational decisions regarding Fairfield Sentry. *Id.* ¶¶ 36–37.

### III. RECOGNIZING THE DOMESTIC NATURE OF ITS INVESTMENTS, LION HAS ARGUED U.S. LAWS SHOULD APPLY TO THESE TRANSACTIONS

Lion previously argued in this case that Bankruptcy Code section 546(e)'s safe harbor should shield their transfers from suit precisely because of their connection to the U.S. securities markets into which BLMIS purported to invest.[4] This argument is inconsistent with the Defendants' current assertion that their transactions lack sufficient domestic connections for purposes of extraterritoriality. Defendants should not be allowed to have it both ways, taking advantage of U.S. law when it suits them and running from it when it does not.

### IV. CONCLUSION

For the foregoing reasons and those stated in the Trustee's Main Brief, this Court should deny Lion Global's motion to dismiss and grant the Trustee's motion for leave to amend.

---

[4] Brief for Financial Institution Defendants as Amici Curiae Supporting Respondents at 11, *Picard v. Ida Fishman Revocable Trust (In re Bernard L Madoff Inv. Sec. LLC)*, 773 F.3d 411 (No. 12-2557) (2d Cir. 2014).

5

| | |
|---|---|
| Dated: June 26, 2015<br>New York, New York | /s/ Thomas L. Long<br>**Baker & Hostetler LLP**<br>45 Rockefeller Plaza<br>New York, New York 10111<br>Telephone: (212) 589-4200<br>Facsimile: (212) 589-4201<br>David J. Sheehan<br>Thomas L. Long<br><br>**Baker & Hostetler LLP**<br>65 East State Street, Suite 2100<br>Columbus, Ohio 43215<br>Telephone: (614) 228-1541<br>Facsimile: (614) 462-2616<br>Lauren M. Hilsheimer<br>Damon M. Durbin<br><br>*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the estate of Bernard L. Madoff* |