**Baker & Hostetler LLP**
45 Rockefeller
New York, NY  10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee for the*
*Substantively Consolidated SIPA Liquidation of*
*Bernard L. Madoff Investment Securities LLC and*
*the Estate of Bernard L. Madoff*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (SMB) |
| Plaintiff-Applicant, | SIPA LIQUIDATION |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | Adv. Pro. No. 10-04287 (SMB) |
| Plaintiff, | |
| v. | |
| CARDINAL MANAGEMENT, INC. AND DAKOTA GLOBAL INVESTMENTS, LTD., | |
| Defendants. | |

## TRUSTEE'S SUPPLEMENTAL MEMORANDUM OF LAW IN OPPOSITION TO DAKOTA GLOBAL INVESTMENTS, LTD.'S MOTION TO DISMISS BASED ON EXTRATERRITORIALITY AND IN FURTHER SUPPORT OF TRUSTEE'S MOTION FOR LEAVE TO AMEND COMPLAINTS

The Trustee respectfully submits this supplemental memorandum in opposition to Dakota Global Investments, Ltd. ("Dakota")'s motion to dismiss based on extraterritoriality and in further support of the Trustee's motion for leave to amend his complaint. As set forth below the Trustee's Proffered Allegations Against Dakota As To The Extraterritoriality Issue ("Proffer") plead specific facts showing the subsequent transfers received by Dakota are predominantly domestic under the standard set forth in the Extraterritoriality Decision,[1] such that the Trustee's action does not require an extraterritorial application of SIPA or Bankruptcy Code § 550, and Dakota's motion to dismiss should be denied.

I.    **Dakota's Transfers From Cardinal Management, Inc. Are Not Extraterritorial**

During the two-year period prior to the Filing Date, Cardinal Management, Inc. ("Cardinal") at the direction of Dakota's agents withdrew for the benefit of Dakota, $28 million from BLMIS, $24 million of which was withdrawn in the 90-day period prior to the Filing Date.[2] It is undisputed that the $28 million in transfers from BLMIS to Cardinal are not extraterritorial and not subject to bar from *Morrison v. Nat'l Austl. Bank, Ltd.*, 561 U.S. 247 (2010).[3] Cardinal, however, was a shell entity that was created for the sole use of Dakota for investment with Madoff in New York.

The District Court directed that the "transfer and component events of the transactions" test set forth in *Maxwell I* must be used to determine whether a subsequent transfer claim involves a domestic or extraterritorial application of the Code and SIPA. The *Maxwell I* analysis is consistent with post-*Morrison* Second Circuit precedent that evaluates the connections among the parties, their transactions, and key events related to the United States to determine whether a

---

[1] *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 513 B.R. 222, 232-33 (S.D.N.Y. 2014) ("Extraterritoriality Decision").
[2] *Picard v. Cardinal Management, Inc. and Dakota Global Investments, Ltd.*, Adv. Pro No. 10-04287 (BRL), Docket No. 001, Complaint at Exhibit B, hereafter "Complaint".
[3] Cardinal has not joined the Transferee Defendants' Motion to Dismiss Based on Extraterritoriality.

claim is "sufficiently domestic" such that an extraterritorial application of a statute is not required.

Facial dismissal is warranted only where the Trustee seeks to recover "purely foreign" transfers.[4]

Whether the Trustee's recovery action seeks domestic transfers is a fact-based inquiry

for which all reasonable inferences are drawn in the Trustee's favor.[5] The Court must consider

the distinct and separate facts of the case when conducting a *Morrison* extraterritoriality analysis

as opposed to a single-factor, bright-line rule.[6] As addressed further below, the Trustee has and

can set forth additional specific facts suggesting a domestic transfer.

## II.    Cardinal Was A Shell Entity That Existed Solely For Dakota's Benefit

Both Cardinal and Dakota were created by Christian Brustlein and his business partner,

Gabriel Charbonnier. Complaint at ¶¶ 34, 37 and 39. Messrs. Brustlein and Charbonnier were

the individuals authorized to act for both entities. *Id.* at ¶¶ 34 and 39; *see also* Proffer at ¶¶ 4, 7.

Mr. Brustlein has stated that he and his partner "have full control on Dakota," and represented to

lenders that Dakota had "a managed account at Madoff," since they considered and treated

Dakota and Cardinal, in whose name the Madoff account nominally existed, as one in the same.

Proffer at ¶ 24. Mr. Brustlein further acknowledged that "Cardinal is in fact a Special Purpose

Vehicle for the sole use of Dakota." *Id.* at ¶ 6. Mr. Brustlein also affirmed that Cardinal "is not

audited, as it is fully consolidated into Dakota." *Id.* at ¶ 25. Through a fiduciary agreement both

the voting and non-voting shares of Cardinal were held by a private foundation for and on behalf

---

[4] *Id.* at 232.

[5] *See Anwar v. Fairfield Greenwich Ltd.*, 728 F. Supp. 2d 372, 403-05 (S.D.N.Y. 2010); *see also SEC v. ICP Asset Mgmt., LLC*, 2012 WL 2359830, at *2 (S.D.N.Y. June 21, 2012) (denying summary judgment because evidence permitted inferences that the conduct complained of was domestic).

[6] *See* Extraterritoriality Decision at 227 ("To determine whether the transfers at issue in this consolidated proceeding occurred extraterritorially, 'the court considers the location of the transfers as well as the component events of those transactions.'") (quoting *In re Maxwell Commc'n Corp.*, 186 B.R. 807, 817 (S.D.N.Y. 1995)); *Parkcentral Global Hub Ltd. v. Porsche Auto. Holdings SE*, 2014 WL 3973877 at *6 (2d Circ. Aug. 15, 2014); *Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60, 69 (2d Cir. 2012) (holding *Morrison* depends on a case's specific facts and that residency or citizenship of a party does not affect where a transaction occurs); *In re Maxwell Commc'n Corp.*, 170 B.R. 800, 809 (S.D.N.Y. 1994) ("The court must look at the facts of a case to determine whether they have a center of gravity outside the United States.").

of Dakota, and all of Cardinal's assets and liabilities were owned by Dakota. *Id.* at ¶¶ 23 and

29. Cardinal had no offering memorandum and did not function as a separate feeder fund. *Id.* at

¶ 26. Rather, Dakota was the feeder fund that Messrs. Brustlein and Charbonnier marketed as a

means to invest in BLMIS's U.S.-based investments. *Id.* at ¶ 27. The main object and "raison

d'être" of Dakota was to profit from Madoff's U.S.-based investment activity.[7] *Id.* at ¶ 6.

### III. Dakota Used Its "Special Purpose Vehicle," Cardinal, To Invest Exclusively In The U.S. With Madoff

Brustlein and Charbonnier, and in turn Dakota and its shell Cardinal, knew that Madoff

purported to employ an investment strategy that involved the purchase and sale of U.S. securities

and U.S. treasury bonds over U.S. exchanges. *Id.* at ¶¶ 8-9. Dakota's creators and authorized

agents, Brustlein and Charbonnier, wanted to have a direct account with Madoff and sought to

meet with Madoff at the end of 2004 with the intent of persuading Madoff to allow them to open

an account and invest with BLMIS. *Id.* at ¶ 10. Dakota intentionally directed its investment

with BLMIS in the United States, and Cardinal existed as a shell entity to facilitate this

investment. *Id.* at ¶¶ 16, 26-29.

### IV. The Component Events Of The Transfers At Issue All Derived From Dakota's Business Activity With BLMIS In The U.S. And Are Domestic

Far from being a transferee remote from BLMIS,[8] Dakota was in all meaningful respects

the intended beneficiary, and a domestic actor. As a result, the Trustee has stated a valid claim

and there is no *Morrison* bar. The transactions between and among BLMIS, Dakota and its

"special purpose vehicle," Cardinal, were overwhelmingly centered in the United States.[9]

Brustlein and Charbonnier delivered to BLMIS offices in New York all the account opening

---

[7] *Picard v. Bureau of Labor Ins. (In re Bernard L. Madoff Inv. Sec.)*, 480 B.R. 501, 513 (Bankr. S.D.N.Y. 2012).
[8] *Cf.* Extraterritoriality Decision, at 227 (addressing insufficiency of remote or tangential connections to the domestic debtor).
[9] *See* Extraterritoriality Decision, at 227 (To determine whether the transfers at issue in this consolidated proceeding occurred extraterritorially, "the court considers the location of the transfers as well as the component events of those transactions.") (citing *In re Maxwell Commc'n Corp.* ("Maxwell I"), 186 B.R. 807 (S.D.N.Y. 1995)).

documents for Dakota's shell entity, Cardinal, on or about March 9, 2005.  *Id.* at ¶ 11.  The

agreements authorized Madoff to buy, sell, and trade U.S. stocks and bonds on the account's

behalf.  *Id.*  The Customer Agreement expressly required the rights and liabilities related to the

BLMIS account and investments to be determined in accordance with New York laws.  *Id.* at ¶

13.  The Customer Agreement further subjected all transactions under the agreement to be

subject to the Securities Exchange Act of 1934, the rules and regulations of the Securities and

Exchange Commission, the Board of Governors of the Federal Reserve, and the Commodities

Futures Trading Commission.  *Id.* at ¶ 14.  Disputes regarding transactions were also to be

determined by arbitration pursuant to a U.S. statute, the Federal Arbitration Act.  *Id.* at ¶ 15.

Further, Dakota permitted Madoff to serve in New York as its investment advisor and custodian

of its Madoff account assets.  *Id.* at ¶ 17.

After opening the BLMIS account, Dakota's agents maintained frequent contact with

BLMIS in New York throughout the life of its investment.  Dakota's agents reviewed the

account statements and trade confirmations that BLMIS sent from the United States every

month.  *Id.* at ¶ 21.  Dakota's agents corresponded about the investment relationship with Madoff

and BLMIS in the United States via telephone, letter, facsimile, and e-mail.  *Id.*  Dakota's agents

also met with Madoff in New York multiple times to discuss its investment.  *Id.* at ¶ 20.

Dakota directed all of Cardinal's transfers of money on its behalf to and from BLMIS. *Id.*

at ¶¶ 18, 22, 23, 25, 28, 29.  When Dakota transferred money to BLMIS it knew that it was

ultimately sending funds to a U.S. bank account held with J.P. Morgan for BLMIS's investment

on its behalf in the U.S., and when it received funds from BLMIS, it knew that the transfers

derived from BLMIS's purported investments in the U.S. on its behalf.  *Id.* at ¶ 18.  On occasion,

Dakota also had Cardinal utilize a U.S. branch of Wachovia Bank to facilitate its transfers of

money from BLMIS.  *Id.* at ¶ 19.  Dakota reaped financial benefit from BLMIS's investment

activity in the United States in that it purposefully invested all of its funds with BLMIS and

received all of the transfers from BLMIS to Cardinal.  *Id.* at ¶¶ 22, 28.  Dakota had no other

investments beyond its investments in BLMIS through "its special purpose vehicle," Cardinal.

*Id.* at ¶ 6.  None of the transfers at issue would have been received by Dakota but-for its

deliberate actions, including its decision to establish its "special purpose vehicle," Cardinal, for

the sole purpose of establishing an account for its benefit to invest with BLMIS in the United

States.  *Id.* at ¶¶ 6, 16.  As a result, Dakota and the transfers which originated with BLMIS are

sufficiently connected to the United States that the transfers are recoverable by the Trustee

pursuant to 11 U.S.C. § 550(a).

## V.    Conclusion

For the foregoing reasons, as well as those set forth in the Trustee's Main Brief, this

Court should grant the Trustee's motion for leave to amend and deny Dakota's motion to

dismiss.

Dated: June 26, 2015          By:    /s/  *Elizabeth A. Scully*
New York, New York                   Baker & Hostetler LLP
                                     45 Rockefeller Plaza
                                     New York, New York 10111
                                     Telephone: 212.589.4200
                                     Facsimile: 212.589.4201
                                     David J. Sheehan
                                     Mark A. Kornfeld
                                     --and--
                                     Elizabeth A. Scully (*pro hac*)
                                     1050 Connecticut Ave., N.W., 1100
                                     Washington, D.C. 20036
                                     Telephone: (202) 861-1500
                                     Facsimile: (202) 861-1783

*Attorneys for Irving H. Picard, Trustee for the*
*Substantively Consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities LLC*
*and the Estate of Bernard L. Madoff*