**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee
for the substantively consolidated SIPA Liquidation
of Bernard L. Madoff Investment Securities LLC
and the estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (SMB) |
| Plaintiff-Applicant, | SIPA Liquidation |
| v. | |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | (Substantively Consolidated) |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC and the estate of Bernard L. Madoff, | Adv. Pro. No. 11-02571 (SMB) |
| Plaintiff, | |
| v. | |
| BANQUE PRIVÉE ESPÍRITO SANTO S.A., f/k/a Compagnie Bancaire Espírito Santo S.A., | |
| Defendant. | |

**THE TRUSTEE'S SUPPLEMENTAL MEMORANDUM OF LAW IN OPPOSITION
TO BANQUE PRIVÉE ESPÍRITO SANTO S.A.'S MOTION TO DISMISS
BASED ON EXTRATERRITORIALITY AND IN FURTHER SUPPORT
OF THE TRUSTEE'S MOTION FOR LEAVE TO AMEND THE COMPLAINT**

Irving H. Picard (the "Trustee"), as trustee for the liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS"), and the substantively consolidated estate of Bernard L. Madoff, respectfully submits this supplemental memorandum of law in opposition to the consolidated motion to dismiss joined by Banque Privée Espírito Santo S.A. ("Espírito Santo"), formerly known as Compagnie Bancaire Espírito Santo S.A., claiming that the Trustee's recovery of the subsequent transfers is barred as an extraterritorial application of Bankruptcy Code § 550, and in support of the Trustee's motion for leave to amend his complaint. As set forth below and in the accompanying Proffered Allegations, the Trustee has pled specific facts evidencing such that the subsequent transfers made to Espírito Santo are sufficiently domestic that the recovery of the transfers does not require an extraterritorial application of SIPA or the Bankruptcy Code. Accordingly, Espírito Santo's motion to dismiss must be denied and the requested amendment should be allowed.

## ARGUMENT

The District Court returned this action to this Court to determine whether the Trustee's claims against Espírito Santo seek the recovery of "purely foreign" transfers requiring an extraterritorial application of SIPA or Bankruptcy Code § 550.[1] Under the Extraterritoriality Decision, the Trustee need only "put forth specific facts suggesting a domestic transfer" to avoid dismissal.[2] In making this determination, there is no bright-line test to determine whether a transaction is extraterritorial;[3] rather this Court must review "the location of the transfers as well

---

[1] *Securities Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 513 B.R. 222, 232–33 (S.D.N.Y. 2014) (the "Extraterritoriality Decision").

[2] *Id.* at 232 n.4.

[3] *Parkcentral Global Hub Ltd. v. Porsche Auto. Holdings SE*, 763 F.3d 198 at 216-17 (2d Cir. 2014).

as the component events of those transactions."[4] This is a fact-based inquiry for which all reasonable inferences are to be drawn in the Trustee's favor.[5]

During the five-year period from 2004 to 2008, Espírito Santo received at least $13,150,642 in subsequent transfers of BLMIS customer property from Fairfield Sentry Limited ("Fairfield Sentry") and Fairfield Sigma Limited ("Fairfield Sigma," together, the "Fairfield Funds"), which invested virtually all of their assets with BLMIS in New York. (Proffer ¶ 1.)

Espírito Santo argues because it and the Fairfield Funds are organized under foreign law, Espírito Santo is entitled to a finding that the transfers it received are "purely foreign" and the Trustee's claims must be dismissed. Espírito Santo is wrong. Its argument ignores the relevant legal analysis. As set forth below, a comprehensive review of the component events of the transactions demonstrates the transfers were predominantly domestic, not foreign—let alone "purely foreign"—and therefore do not require an extraterritorial application of SIPA or the Bankruptcy Code. Espírito Santo entered into the transactions and received the transfers: (1) knowing it was essentially investing in New York-based BLMIS, (2) pursuant to domestic agreements, (3) into and through New York bank accounts, (4) in connection with business it conducted in the United States, and (5) from investment funds based in and profiting from New York.

First, Espírito Santo knew BLMIS's control over its investments in the Fairfield Funds was so extensive it was essentially investing with BLMIS in New York. The Fairfield Funds invested at least 95% of their assets with BLMIS. (*Id.* ¶ 2.) Espirito Santo knew BLMIS controlled every aspect of the Fairfield Funds' investments in New York: (i) the Fairfield Funds

---

[4] Extraterritoriality Decision at 227 (quoting *Maxwell Commc'n Corp. v. Societe General PLC (In re Maxwell Commc'n Corp.)*, 186 B.R. 807, 817 (S.D.N.Y. 1995)).

[5] *See, e.g.*, *Anwar v. Fairfield Greenwich Ltd.*, 728 F. Supp. 2d 372, 403–05 (S.D.N.Y. 2010).

2

authorized BLMIS to make the investment decisions on their behalf, (ii) BLMIS maintained custody of the assets in New York, and (iii) BLMIS purported to execute trades in U.S. securities on behalf of the Fairfield Funds. (*Id.* ¶¶ 5–9.) The Fairfield Funds' private placement memoranda ("PPM") called BLMIS "essential" to the Fairfield Funds' profitability. (*Id.* ¶ 10.)

Espírito Santo invested in the Fairfield Funds *because* its money would ultimately be placed with BLMIS, and in turn, Madoff would invest its assets in U.S. securities traded on U.S. markets. But for BLMIS and its U.S.-based investment strategy, Espírito Santo would not have invested in the Fairfield Funds. As Judge Lifland concluded in a similar matter, "[t]he movement of money to and from BLMIS in the United States … was not fortitious or incidental; instead, it was 'the ultimate objective' and the '*raison d'etre*' of the Agreement between" the investor and Fairfield Sentry.[6]

Second, the subscription agreements governing Espírito Santo's investments with and transfers from the Fairfield Funds demonstrated the transactions were domestic. Espírito Santo agreed that New York law would govern the agreements and agreed to submit to venue in New York and the jurisdiction of New York courts. (*Id.* ¶ 12–13.) Accordingly, Espírito Santo had every reason to expect to be subject to U.S. law and courts with respect to the transfers it received from the Fairfield Funds.

Third, Espírito Santo knowingly directed funds to and from New York-based BLMIS using New York bank accounts in connection with its investments. Espírito Santo sent subscription payments to a New York bank account for Fairfield Sentry, who ultimately sent the funds to BLMIS's bank account in New York. (*Id.* ¶ 16.) From 2004 to 2008, Espírito Santo received dozens of separate redemption payments from Fairfield Sentry into its agent's New

---

[6] *Picard v. Bureau of Labor Ins.*, 480 B.R. 501, 523 (Bankr. S.D.N.Y. 2012).

3

York bank account. (*Id.* ¶ 17.) The regular use of New York bank accounts throughout Espírito Santo's investment in Fairfield Sentry demonstrates the transfers were domestic and not "purely foreign."

Fourth, to facilitate investments in the Fairfield Funds, Espírito Santo and its affiliates conducted business in New York with the Fairfield Greenwich Group ("FGG"), a *de facto* partnership based in New York which created, operated, controlled, and marketed the Fairfield Funds. Their primary contacts at FGG were Philip Toub and Lourdes Barreneche, both partners from FGG's New York office. (*Id.* ¶ 19.) Espírito Santo's affiliates conducted initial and ongoing due diligence on the Fairfield Funds at FGG's offices in New York. (*Id.*) An affiliate of Espírito Santo received a fee rebate for investments it directed to Fairfield Sentry, including Espírito Santo's. (*Id.* ¶ 20.)

Fifth, the Fairfield Funds, which sent the transfers to Espírito Santo, had extensive connections with the United States. The Fairfield Funds' principal place of business was in New York. In 1988, U.S. citizens and residents, Walter Noel and Jeffrey Tucker, founded FGG. (*Id.* ¶ 23.) Noel and Tucker formally organized the Fairfield Funds as international business companies under BVI law (*id.* ¶¶ 26, 47), but they were shell corporations present in the BVI solely on paper. Their BVI registered address was a post office box care of a local trust company owned and operated by a local law firm. (*Id.* ¶ 27, 48.) From their inception until their liquidation in 2009, the Fairfield Funds had no employees and no offices. (*Id.*) As international business companies, BVI law restricted the Fairfield Funds from doing business in the BVI except with other BVI international business companies. (*Id.* ¶¶ 26, 47.)

4

Beginning in 1990, Tucker opened Fairfield Sentry's BLMIS accounts. (*Id.* ¶ 29.) In the account opening documents, Tucker provided a U.S. mailing address. (*Id.*) Later, FGG requested BLMIS to send all Fairfield Sentry account information to FGG's New York headquarters. (*Id.*)

At all relevant times, the Fairfield Funds were operated almost entirely by FGG's New York headquarters personnel who maintained final control of the Fairfield Funds' bank accounts and relationships with the Fairfield Funds' back-office service providers. (*Id.* ¶¶ 32–34, 51–52.) FGG New York headquarters personnel monitored the Fairfield Funds' investments; managed the relationships with BLMIS; directed investments into and out of BLMIS as well as into and out of Fairfield Sentry; marketed the Fairfield Funds; approved all subscriptions for Fairfield Funds shares; maintained all of the Fairfield Funds' books and records; and made all strategic and operational decisions regarding the Fairfield Funds. (*Id.* ¶¶ 33–34, 49–50.)

## CONCLUSION

For the foregoing reasons and those stated in the Trustee's main brief, the Trustee respectfully requests that the Court deny Espírito Santo's motion to dismiss and grant the Trustee's motion for leave to amend his complaint.

Dated: June 26, 2015  /s/ Thomas L. Long
      New York, New York  **Baker & Hostetler LLP**
      45 Rockefeller Plaza
      New York, New York 10111
      Telephone: (212) 589-4200
      Facsimile: (212) 589-4201
      David J. Sheehan
      Thomas L. Long
      Torello H. Calvani

*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the estate of Bernard L. Madoff*

5