**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee*
*for the substantively consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities LLC*
*and the estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (SMB) |
| Plaintiff-Applicant, | SIPA Liquidation |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | Adv. Pro. No. 12-01021 (SMB) |
| Plaintiff, | |
| v. | |
| GROSVENOR INVESTMENT MANAGEMENT LTD., GROSVENOR PRIVATE RESERVE FUND LIMITED, GROSVENOR BALANCED GROWTH FUND LIMITED, and GROSVENOR AGGRESSIVE GROWTH FUND LIMITED, | |
| Defendants. | |

**TRUSTEE'S SUPPLEMENTAL MEMORANDUM OF LAW IN**
**OPPOSITION TO GROSVENOR DEFENDANTS' MOTION TO DISMISS**
**BASED ON EXTRATERRITORIALITY AND IN FURTHER SUPPORT**
**OF TRUSTEE'S MOTION FOR LEAVE TO AMEND COMPLAINTS**

The Trustee respectfully submits this supplemental memorandum in opposition to Grosvenor Private Reserve Fund Limited's ("Grosvenor Private"), Grosvenor Balanced Growth Fund Limited's ("Grosvenor Balanced"), Grosvenor Aggressive Growth Fund Limited's ("Grosvenor Aggressive," and together with Grosvenor Private and Grosvenor Balanced, the "Grosvenor Funds"), and Grosvenor Investment Management Ltd.'s ("Grosvenor Management," and collectively with the Grosvenor Funds, the "Grosvenor Defendants") motion to dismiss based on extraterritoriality and in further support of the Trustee's motion for leave to amend the complaint. As set forth below, the Trustee's Proffered Allegations Pertaining to the Extraterritoriality Issue as to the Grosvenor Defendants ("Proffered Allegations") plead specific facts showing the subsequent transfers received by the Grosvenor Defendants are predominantly domestic under the standard set forth in the Extraterritoriality Decision,[1] such that the Trustee's action does not require an extraterritorial application of SIPA or Bankruptcy Code § 550. The Grosvenor Defendants' motion to dismiss should be denied, and the Trustee should be granted leave to amend the complaint.

## BACKGROUND & LEGAL STANDARD

This Court must determine whether the Trustee's claims against the Grosvenor Defendants seek the recovery of "purely foreign" transfers, requiring an extraterritorial application of Bankruptcy Code § 550.[2] Under the Extraterritoriality Decision, the Trustee must only put forth "specific facts suggesting a domestic transfer" to avoid dismissal.[3] In making this determination, this Court must review "the location of the transfers as well as the component

---

[1] *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*, 513 B.R. 222, 232-33 (S.D.N.Y. 2014) ("Extraterritoriality Decision").
[2] *Id.*
[3] *Id.* at 232 n.4.

1

events of those transactions."[4] This is a fact-based inquiry in which all reasonable inferences are to be drawn in the Trustee's favor.[5]

The Trustee's Proffered Allegations demonstrate the Grosvenor Defendants received at least $36,506,571 in subsequent transfers of BLMIS customer property collectively made to the Grosvenor Defendants by Fairfield Sentry Limited ("Fairfield Sentry") and Kingate Global Fund Ltd. ("Kingate Global," and together with Fairfield Sentry, the "Feeder Funds"). Proffered Allegations ¶ 1. Of the $36,506,571, at least $31,506,389 are subsequent transfers of BLMIS customer property made to the Grosvenor Defendants by Fairfield Sentry, and at least $5,000,182 are subsequent transfers of BLMIS customer property made to Grosvenor Private, Grosvenor Balanced, and Grosvenor Management by Kingate Global. *Id.* BLMIS held customer accounts for several feeder funds—single-purpose investment funds that pooled their investors' assets to invest with BLMIS, capitalizing on its consistent returns—including Fairfield Sentry and Kingate Global. *Id.* ¶ 2. Fairfield Greenwich Group ("FGG"), a *de facto* partnership based in New York, created, operated, and controlled Fairfield Sentry. *Id.* ¶ 3. The Trustee alleges that Fairfield Sentry and Kingate Global withdrew funds from their BLMIS accounts and transferred those funds to the Grosvenor Defendants. *Id.* ¶¶ 1, 3.

The Grosvenor Defendants argue that because they were each formally organized under the law of Bermuda, and because Fairfield Sentry and Kingate Global were both formally organized under the law of the Territory of the British Virgin Islands ("BVI"), they are entitled to a finding that the transfers are "purely foreign" and must be dismissed under the Extraterritoriality Decision. The Grosvenor Defendants are wrong, and their superficial analysis is contrary to the *Maxwell I* "component events" analysis embraced by the District Court in the

---

[4] *Id.* at 227 (quoting *Maxwell Commc'n Corp. v. Societe General PLC (In re Maxwell Commc'n Corp.)* ("*Maxwell I*"), 186 B.R. 807, 817 (S.D.N.Y. 1995)).

[5] *See, e.g., Anwar v. Fairfield Greenwich Ltd.*, 728 F. Supp. 2d 372, 403-05 (S.D.N.Y. 2010).

Extraterritoriality Decision,[6] and inconsistent with Second Circuit precedent requiring courts to look at the economic and legal realities of a transaction to determine whether a claim is "sufficiently domestic" for purposes of extraterritoriality.[7] As set forth below, a review of the component events of the transactions, facts pertinent to the domestic nature of Fairfield Sentry, and the economic reality of Kingate Global's operations demonstrate the Trustee's recovery claims against the Grosvenor Defendants do not require an extraterritorial application of SIPA or Bankruptcy Code § 550.

## I. THE TRANSFERS AND THE COMPONENT EVENTS OF THE TRANSACTIONS WERE COMPRISED OF PREDOMINANTLY DOMESTIC ELEMENTS

The Proffered Allegations sets forth specific facts that show the transfers and the component events of the transactions were comprised of predominantly domestic elements, including: (1) the Grosvenor Defendants' relationship with Fairfield Sentry was centered in New York; (2) the Grosvenor Defendants knew New York-based BLMIS controlled Fairfield Sentry's and Kingate Global's investments and Madoff purported to invest in U.S. markets; (3) the Grosvenor Defendants intentionally directed their investments to New York-based BLMIS; (4) the Grosvenor Defendants repeatedly utilized New York banks to transfer funds; (5) Fairfield Sentry's principal place of business was in New York; (6) the economic reality of Kingate Global's operations was in New York; and (7) recognizing the domestic nature of their investments, the Grosvenor Defendants have argued U.S. laws should apply to these transactions.

The component events of the Grosvenor Defendants' transactions with Fairfield Sentry were centered in New York. On behalf of the Grosvenor Funds, Grosvenor Management

---

[6] *See* Extraterritoriality Decision, 513 B.R. at 227 (citing *Maxwell I*, 186 B.R. at 817).
[7] *See, e.g., Mastafa v. Chevron Corp.*, 770 F.3d 170, 182 (2d Cir. 2014); *European Cmty. v. RJR Nabisco, Inc.*, 764 F.3d 129, 141–42 (2d Cir. 2014); *Parkcentral Global Hub Ltd. v. Porsche Auto. Holdings,* 763 F.3d 198, 216 (2d Cir. 2014).

3

arranged Fairfield Sentry subscriptions with New York-based FGG co-founder Jeffrey Tucker. Proffered Allegations ¶ 6. In connection with these investments, Grosvenor Management regularly communicated with FGG representatives in New York. *Id.* ¶ 10. Further, the Grosvenor Defendants purposefully subscribed in Kingate Global in order to profit from New York-based BLMIS. *Id.* ¶¶ 7–8.

The Grosvenor Defendants were part of a larger group of sophisticated financial entities that included fund managers, fund administrators, asset managers, and other entities that were generally known to the hedge fund industry as the Grosvenor Group ("Grosvenor Group"). *Id.* ¶ 13. The Grosvenor Defendants gained access to significant information concerning Madoff, BLMIS, and the Feeder Funds through Dan Voth ("Voth"), a Grosvenor Group employee previously employed at Kingate Global's administrator, then known as Hemisphere Management Limited ("Hemisphere"). *Id.* ¶¶ 15–16. As part of his responsibilities at Hemisphere, Voth regularly communicated with New York-based Frank DiPascali, a BLMIS employee who h— elped run Madoff's fraudulent investment advisory business, about the Kingate Global's investments with BLMIS. *Id.* ¶ 17. The Grosvenor Defendants were also privy to Voth's review and familiarity with BLMIS trade confirmations each of which listed BLMIS as a member of SIPC regulated by the SEC. *Id.* ¶ 24.

As a result of their due diligence and Voth's employment at Hemisphere, the Grosvenor Defendants also knew control over Fairfield Sentry's and Kingate Global's investments rested almost entirely with New York-based Madoff and BLMIS. *Id.* at ¶¶ 23, 25. Specifically, the Grosvenor Defendants knew the following facts:

- In reality New York-based BLMIS was Fairfield Sentry's and Kingate Global's investment adviser.

- BLMIS in New York was the executing broker for Fairfield Sentry's and Kingate

4

> Global's investments, and that New York-based BLMIS purportedly invested exclusively in U.S. markets.
>
> - At least 95% of Fairfield Sentry's assets and 100% of Kingate Global's assets were invested with BLMIS.
>
> - BLMIS was a registered U.S. broker-dealer regulated by the SEC.
>
> - The entire economic purpose of Fairfield Sentry and Kingate Global was to profit from BLMIS.

*Id.* ¶¶ 20–22. Accordingly, the Grosvenor Defendants selected Fairfield Sentry and Kingate Global precisely because these feeder funds offered access to BLMIS and the returns Madoff claimed to generate from investing in U.S. securities markets. *Id.* ¶¶ 7–8.

In addition, the Grosvenor Defendants repeatedly utilized New York banks to transfer funds to and from Fairfield Sentry and Kingate Global. *Id.* ¶ 26. On at least 130 occasions over the course of almost 12 years, in connection with subscribing funds to Fairfield Sentry, the Grosvenor Defendants directed funds to either a Republic National Bank of New York or New York HSBC Bank USA account. *Id.* ¶ 27. Moreover, on at least 15 occasions over the course of more than 3 years, in connection with subscribing funds to Kingate Global, the Grosvenor Defendants directed funds to a Citibank N.A. account in New York. *Id.* ¶ 29. Grosvenor Balanced and Grosvenor Private also directed redemption payments from Fairfield Sentry and, upon information and belief, Kingate Global to its account at Barclays Bank plc in New York. *Id.* ¶¶ 28, 30. Upon information and belief, Grosvenor Aggressive also received a redemption payment from Fairfield Sentry in its account at Barclays Bank plc in New York. *Id.* ¶ 28.

In sum, the Grosvenor Defendants knew all of their Fairfield Sentry and Kingate Global investments were with BLMIS in New York and purportedly invested in U.S. markets by a U.S.-registered broker dealer. *Id.* ¶¶ 22, 25. Further, in the case of Fairfield Sentry, as detailed below, its principal place of business was New York. *Id.* ¶ 31.

5

## II. FAIRFIELD SENTRY MAINTAINED ITS PRINCIPAL PLACE OF BUSINESS IN NEW YORK

In 1988, U.S. citizens and residents, Walter Noel and Tucker, founded FGG, a New York-based *de facto* partnership. Proffered Allegations ¶ 32. As part of FGG, Noel and Tucker incorporated Fairfield International Managers, Inc. ("Fairfield International Managers"). *Id.* ¶ 34. Through Fairfield International Managers, Noel and Tucker organized the largest BLMIS feeder fund, Fairfield Sentry. *Id.* ¶ 3.

Noel and Tucker formally organized Fairfield Sentry as an international business company under BVI law. *Id.* ¶ 35. Fairfield Sentry was a shell corporation present in the BVI solely on paper. *Id.* ¶ 36. Its BVI statutorily required registered address was a post office box care of a local trust company owned and operated by a local law firm. *Id.*

From its inception until its liquidation in 2009, Fairfield Sentry had no employees and no offices. *Id.* At all relevant times, Fairfield Sentry was operated almost entirely by FGG's New York City headquarters personnel who maintained final control of Fairfield Sentry's bank accounts and relationships with Fairfield Sentry's back office service providers. *Id.* ¶¶ 36, 41.

Beginning in 1990, Tucker opened Fairfield Sentry's BLMIS accounts. *Id.* ¶ 38. In the account opening documents, Tucker identified Fairfield Sentry's mailing address as Fairfield International Managers' office in Greenwich, Connecticut and directed BLMIS to send Fairfield Sentry's monthly account statements, trade confirmations, and correspondence to the same Fairfield International Managers office. *Id.* ¶¶ 38, 47. In January 1998, FGG requested BLMIS to send all Fairfield Sentry account information to FGG's New York City headquarters. *Id.* ¶ 38.

From Fairfield Sentry's inception, FGG personnel at its New York City headquarters controlled the sales and subscriptions of the fund's shares. *Id.* ¶ 43. From at least January 1, 2002, all Fairfield Sentry subscription agreements contained New York choice of law provisions

6

and provided for venue and jurisdiction for any disputes in New York. *Id.*

At all relevant times, FGG New York City headquarters personnel monitored Fairfield Sentry's investments; managed the relationships with BLMIS; directed investments into and out of BLMIS as well as into and out of Fairfield Sentry; marketed Fairfield Sentry; approved all subscriptions for Fairfield Sentry shares; maintained all of Fairfield Sentry's books and records at the FGG New York City headquarters; and made all strategic and operational decisions regarding Fairfield Sentry. *Id.* ¶¶ 42–43.

Because Fairfield Sentry maintained its principal place of business in New York and conducted its business from its New York headquarters, the transfers made by Fairfield Sentry to the Grosvenor Defendants are not purely foreign.

## III. KINGATE GLOBAL INVESTED WITH BLMIS TO MAKE MONEY FROM A NEW YORK-BASED INVESTMENT OPERATION

Kingate Global invested exclusively with BLMIS in New York and, together with its purported investment manager, consultant, and other service providers, formed an enterprise with a single economic purpose: to make money from a New York-based investment operation. Proffered Allegations ¶ 58.

Kingate Global executed customer agreements, and other accounts opening documents, and delivered the agreements to BLMIS in New York. *Id.* ¶ 63. The agreements were governed by U.S. law, and disputes under the agreements were to be resolved in the United States. *Id.* ¶¶ 64–65. The agreements further authorized BLMIS to act as Kingate Global's investment manager and executing broker and to invest Kingate Global's assets according to Madoff's SSC investment strategy, which purported to involve the purchase and sale of U.S. securities traded only on domestic exchanges. *Id.* ¶¶ 66–68. In addition, the agreements provided that BLMIS would hold custody of Kingate Global's investments in New York. *Id.* ¶ 68. Accordingly,

7

control over Kingate Global rested entirely with BLMIS in New York.

Kingate Global had no physical offices, no employees, and transacted no meaningful business in the BVI. *Id.* ¶ 59. Instead, Kingate Global operated through service providers with substantial connections to the United States. Tremont (Bermuda) Limited served as the co-manager of Kingate Global for approximately 10 years and was formed in Bermuda, but was itself managed from New York by Tremont Partners, Inc., a Connecticut corporation. *Id.* ¶ 60. Kingate Global was also co-managed by Kingate Management Limited ("KML"), which operated through agents in New York. *Id.* ¶ 72. KML engaged consultants FIM Limited and FIM Advisers LLP (together "FIM") to perform due diligence on BLMIS. *Id.* ¶ 75. Although FIM had a London address, the head of due diligence for its feeder fund investments was located in New York and worked with FIM's affiliate FIM (USA) Inc. in New York, which was the hub for FIM's feeder fund due diligence. *Id.* ¶¶ 76–77. From New York, FIM (USA) Inc. monitored, researched and solicited investors for Kingate Global. *Id.* ¶ 77.

Because Kingate Global conducted its Madoff business in the United States, the transfers made by Kingate Global to Grosvenor Private, Grosvenor Balanced, and Grosvenor Management are not purely foreign.

## IV. RECOGNIZING THE DOMESTIC NATURE OF THEIR INVESTMENTS, THE GROSVENOR DEFENDANTS HAVE ARGUED U.S. LAWS SHOULD APPLY TO THESE TRANSACTIONS

Finally, the Grosvenor Defendants previously argued in this case that Bankruptcy Code § 546(e)'s safe harbor should shield their transfers from suit precisely because of their connection to the U.S. securities markets into which BLMIS purported to invest.[8] This argument is inconsistent with the Grosvenor Defendants' current assertion that their transactions lack

---

[8] *See* Brief for Financial Institution Defendants as Amici Curiae Supporting Respondents at 11, *Picard v. Ida Fishman Revocable Trust (In re Bernard L Madoff Inv. Sec. LLC)*, 773 F.3d 411 (No. 12-2557) (2d Cir. 2014).

8

sufficient domestic connections for purposes of extraterritoriality.  Defendants should not be allowed to have it both ways, taking advantage of U.S. law when it suits them and running from it when it does not.

## V. CONCLUSION

For the foregoing reasons and those stated in the Trustee's Main Brief, this Court should grant the Trustee's motion for leave to amend the complaint and deny the Grosvenor Defendants' motion to dismiss.

Dated: June 26, 2015  
    New York, New York

*/s/* Thomas L. Long  
**Baker & Hostetler LLP**  
45 Rockefeller Plaza  
New York, New York 10111  
Telephone: (212) 589-4200  
Facsimile: (212) 589-4201  
David J. Sheehan  
Thomas L. Long  
Catherine E. Woltering  

**Baker & Hostetler LLP**  
65 East State Street, Suite 2100  
Columbus, Ohio 43215  
Telephone: (614) 228-1541  
Facsimile: (614) 462-2616  
Douglas A. Vonderhaar  

*Attorneys for Irving H. Picard, Trustee*  
*for the substantively consolidated SIPA*  
*Liquidation of Bernard L. Madoff Investment*  
*Securities LLC and the estate of Bernard L.*  
*Madoff*