**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee*
*for the Substantively Consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities LLC*
*and the Estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>             Plaintiff-Applicant,<br><br>   v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>             Defendant. | Adv. Pro. No. 08-01789 (SMB)<br><br>SIPA Liquidation<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>             Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>             Plaintiff,<br><br>   v.<br><br>CAPRICE INTERNATIONAL GROUP INC., CITIBANK (SWITZERLAND) LTD., ERIC SCHIFFER D/B/A DESERT ROSE LTD, PINE CLIFFS INVESTMENT LIMITED AND CENARD INVESTMENTS LTD,<br><br>             Defendants. | Adv. Pro. No. 12-01700 (SMB)<br><br><br>**TRUSTEE'S SUPPLEMENTAL MEMORANDUM OF LAW IN OPPOSITION TO CITIBANK (SWITZERLAND) LTD.'S MOTION TO DISMISS BASED ON EXTRATERRITORIALITY AND IN FURTHER SUPPORT OF THE TRUSTEE'S MOTION FOR LEAVE TO AMEND THE COMPLAINT** |

The Trustee respectfully submits this memorandum as a supplement to his Main Brief being filed simultaneously herewith in opposition to the motion to dismiss based on extraterritoriality made by defendant Citibank (Switzerland) AG ("Citibank Switzerland")[1] and in further support of the Trustee's motion for leave to amend his Complaint.

## BACKGROUND

Citibank Switzerland, part of the Citigroup Inc. financial network with headquarters in New York, is a sophisticated financial institution that provides a range of banking services. (Proffered Allegations at ¶ 4.) Citibank Switzerland invested in Fairfield Sentry Limited ("Fairfield Sentry") through ZCM Asset Holding Company (Bermuda) Limited ("ZCM"), which was a shareholder in Fairfield Sentry. (*Id.* at ¶ 2.) Fairfield Sentry invested substantially all of its assets with BLMIS. (Trustee's Complaint at ¶ 2.) Citibank Switzerland received subsequent transfers of BLMIS customer property from Fairfield Sentry through ZCM (the "Transfers"). (*Id.*) ZCM is a defendant in a separate recovery action by the Trustee, for which the Trustee is making separate filings regarding extraterritoriality. Citibank Switzerland was also a direct investor in Fairfield Sentry.[2] (Proffered Allegations at ¶ 6.) The Trustee's Proffered Allegations demonstrate that the Trustee's action to recover the Transfers does not require an extraterritorial application of SIPA or Bankruptcy Code Section 550.

### THE TRANSFERS AND COMPONENT EVENTS OF CITIBANK SWITZERLAND'S FAIRFIELD SENTRY/ZCM TRANSACTIONS WERE PREDOMINANTLY DOMESTIC

Citing to *Maxwell I*, the District Court directed that "the location of the transfers as well as the component events of those transactions"[3] must be used to determine whether a subsequent

---

[1] Citibank Switzerland is misnamed as "Ltd." instead of "AG" in the Trustee's Complaint.

[2] Citibank Switzerland's direct investments with the fund are not the subject of this action.

[3] Extraterritoriality Decision, 513 B.R. at 227 (citing *Maxwell I*, 186 B.R. at 816).

transfer claim involves a domestic or extraterritorial application of the Code and SIPA.[4]  Under the District Court's ruling, the Trustee need only put forth "specific facts suggesting a domestic transfer" to avoid dismissal.[5]  This is a fact-based inquiry in which all reasonable inferences should be drawn in the Trustee's favor.[6]

Citibank Switzerland argues that simply because it and ZCM were formally organized under the laws of foreign countries, the subsequent transfers it received are "purely foreign" and the Trustee's recovery action must be dismissed.  This superficial argument disregards the *Maxwell I* analysis directed by the District Court and is inconsistent with Second Circuit extraterritoriality case law that similarly examines a transaction's various connections to the United States.[7]

Based on the facts set forth in the Proffered Allegations, there is no basis for dismissing this case on the grounds of extraterritoriality.  The Transfers and component events of Citibank Switzerland's transactions with ZCM—as with Fairfield Sentry directly—were predominantly domestic.

To begin with, the entire purpose of Citibank Switzerland's investments with Fairfield Sentry through ZCM was to invest in U.S. securities markets through New York-based investment adviser BLMIS, and to earn returns on those U.S.-based investments.  As a sophisticated investor in ZCM that also invested in Fairfield Sentry directly, Citibank Switzerland knew that the Transfers from ZCM came from Fairfield Sentry and were governed

---

[4] *In re Maxwell Commc'n Corp.*, 186 B.R. 807, 816-17 (S.D.N.Y. 1995).

[5] Extraterritoriality Decision, 513 B.R. at 232 n.4.

[6] *See*, *e.g.*, *Anwar v. Fairfield Greenwich, Ltd.*, 728 F. Supp. 2d 372, 402-03 (S.D.N.Y. 2010).

[7] *See, e.g., Parkcentral Global Hub Ltd. v. Porsche Auto. Holdings SE*, 763 F.3d 198, 217 (2d Cir. 2014); *European Cmty. v. RJR Nabisco, Inc.*, 764 F.3d 129, 141 (2d Cir. 2014); and other cases cited in the Trustee's Main Brief.

2

by the same investment documents as Citibank Switzerland's direct Fairfield Sentry investments. (Proffered Allegations at ¶ 8.)  Citibank Switzerland thus knew that all of its direct investments' connections to BLMIS in New York applied equally to the Transfers.  Specifically, Citibank Switzerland entered into subscription agreements with Fairfield Sentry multiple times and in each case affirmed that it knew (i) Fairfield Sentry invested almost exclusively with a New York-based, SEC-registered investment adviser (i.e. BLMIS) that invested in the U.S. securities market, and (ii) Citibank Switzerland's money would be transferred to that investment adviser in New York.  (*Id.* at ¶ 11.)  As Judge Lifland concluded in a similar matter, "[t]he movement of money to and from BLMIS in the United States . . . was not fortuitous or incidental; instead, it was 'the ultimate objective' and the '*raison d'etre*' of the Agreement between" the investor and the feeder fund.[8]

The express provisions of its agreements with Fairfield Sentry further demonstrate the domestic nature of Citibank Switzerland's investment transactions with Fairfield Sentry through ZCM.  Citibank Switzerland agreed in its subscription agreements with Fairfield Sentry that New York law would govern its investments, and it consented to U.S. jurisdiction.  (Proffered Allegations at ¶ 13.)  Thus, Citibank Switzerland had every expectation that U.S. laws would apply to its direct Fairfield Sentry investment transactions and that it would be subject to suit in the United States.  Citibank Switzerland knew that, like all other Fairfield Sentry investors, ZCM agreed to the same U.S. jurisdiction and governing law provisions in its agreements with Fairfield Sentry.  (*Id.* at ¶ 14.)

Moreover, ZCM's Fairfield Sentry redemptions—the source of the Transfers at issue— were paid into a bank account at Citibank in New York.  ZCM then paid such Transfers into Citibank Switzerland's account in its own name also at Citibank in New York.  (*Id.* at ¶¶ 15-16.)

---

[8] *Picard v. Bureau of Labor Ins. (In re BLMIS)*, 480 B.R. 501, 513 (Bankr. S.D.N.Y. 2012).

3

Citibank Switzerland also used this account to receive redemptions from its direct Fairfield Sentry investment. (*Id.* at ¶ 16.) Citibank Switzerland also knew that it and ZCM were remitting their subscriptions into a U.S. correspondent account at the direction of Fairfield Sentry, which funds were then ultimately delivered to BLMIS in New York. (*Id.* at ¶ 17.)

Beyond all of the above domestic components, Citibank Switzerland's argument that its transactions are "purely foreign" is wrong because it ignores the reality of Fairfield Sentry, from which it received the Transfers through ZCM. Fairfield Greenwich Group ("FGG") in New York created, managed, and controlled Fairfield Sentry. (*Id.* at ¶ 19.) Fairfield Sentry was based out of New York and had its principal place of business in New York. (*Id.* at ¶ 18.) Although technically registered in the BVI, Fairfield Sentry had no employees or offices there, and at all times, operational decisions were made by FGG employees in New York.[9] (Proffered Allegations at ¶ 24.) In its BLMIS account opening documents, FGG listed Fairfield Sentry's address as in the United States. (*Id.* at ¶¶ 25-26.) Fairfield Sentry's initial and on-going due diligence on BLMIS was conducted in New York, and the operative legal documents for its BLMIS accounts were governed by New York law. (*Id.* at ¶¶ 29-30.) BLMIS in New York served as Fairfield Sentry's investment manager and implemented the split-strike conversion strategy for Fairfield Sentry. (*Id.* at ¶ 32.)

---

[9] *See SEC v. Gruss*, 2012 WL 3306166 at *3 (S.D.N.Y. Aug 13, 2012) (finding that issues of fact existed regarding whether an offshore fund was "foreign" for purposes of extraterritoriality where complaint alleged that operational and investment decisions for the offshore fund were made in New York, "such that for all intents and purposes, the [offshore fund] was based in New York").

4

**CONCLUSION**

For the forgoing reasons and those stated in the Trustee's Main Brief, Citibank Switzerland's motion to dismiss should be denied and the Trustee's motion for leave to amend his Complaint should be granted.

Dated: June 26, 2015  
      New York, New York

By: /s/ Thomas L. Long  
Baker & Hostetler LLP  
45 Rockefeller Plaza  
New York, New York  10111  
Telephone: (212) 589-4200  
Facsimile: (212) 589-4201  
David J. Sheehan  
Thomas L. Long  
Matthew D. Feil  
Hannah C. Choate

*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Estate of Bernard L. Madoff*

5