BAKER & HOSTETLER LLP
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>       Plaintiff-Applicant,<br><br>  v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>       Defendant. | Adv. Pro. No. 08-01789 (SMB)<br><br>SIPA Liquidation<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>       Debtor. | **TRUSTEE'S SUPPLEMENTAL MEMORANDUM OF LAW IN OPPOSITION TO SIX SIS AG'S MOTION TO DISMISS BASED ON EXTRATERRITORIALITY AND IN FURTHER SUPPORT OF THE TRUSTEE'S MOTION FOR LEAVE TO AMEND THE COMPLAINT** |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>       Plaintiff,<br><br>  v.<br><br>SIX SIS AG,<br><br>       Defendant. | Adv. Pro. No. 12-01195 (SMB) |

The Trustee respectfully submits this memorandum as a supplement to his Main Brief being filed simultaneously herewith in opposition to the motion to dismiss based on extraterritoriality made by defendant SIX SIS AG (f/k/a SIS SegaInterSettle AG) ("SIX SIS") and in further support of the Trustee's motion for leave to amend his Complaint.

## BACKGROUND

SIX SIS, which is part of the SIX Group of Swiss public companies, is a sophisticated financial industry services provider. (Proffered Allegations at ¶ 3.) SIX SIS was a shareholder in Fairfield Sentry Limited ("Fairfield Sentry"), Fairfield Sigma Limited ("Sigma" and together with Fairfield Sentry, the "Fairfield Funds"), Kingate Global Fund Ltd. ("Kingate Global"), and Kingate Euro Fund Ltd. ("Kingate Euro" and together with Kingate Global, the "Kingate Funds"; the Kingate Funds and the Fairfield Funds together, the "BLMIS Feeder Funds"). (*Id.* at ¶ 1.) Fairfield Sentry, Kingate Global, and Kingate Euro invested substantially all of their assets with BLMIS. (*Id.*) Sigma did not have its own direct BLMIS account, but invested 100% of its assets in Fairfield Sentry.[1] (*Id.*) SIX SIS received $7,023,692 in subsequent transfers of BLMIS customer property from the BLMIS Feeder Funds (the "Transfers"). (Trustee's Complaint at ¶ 2; *id.* at Exs. C, E, H, K.) The Trustee's Proffered Allegations demonstrate that the Trustee's action to recover the Transfers does not require an extraterritorial application of SIPA or Bankruptcy Code Section 550.

## THE TRANSFERS AND COMPONENT EVENTS OF SIX SIS'S BLMIS FEEDER FUND TRANSACTIONS WERE PREDOMINANTLY DOMESTIC

Citing to *Maxwell I*, the District Court directed that "the location of the transfers as well as the component events of those transactions"[2] must be used to determine whether a subsequent

---

[1] For ease of reference, Sigma is included herein in the definition of "BLMIS Feeder Funds."

[2] Extraterritoriality Decision, 513 B.R. at 227 (citing *Maxwell I*, 186 B.R. at 816).

transfer claim involves a domestic or extraterritorial application of the Code and SIPA.[3] Under the District Court's ruling, the Trustee need only put forth "specific facts suggesting a domestic transfer" to avoid dismissal.[4] This is a fact-based inquiry in which all reasonable inferences should be drawn in the Trustee's favor.[5]

SIX SIS argues that simply because it and the BLMIS Feeder Funds in which it invested were formally organized under the laws of foreign countries, the subsequent transfers it received are "purely foreign" and the Trustee's recovery action must be dismissed. This superficial argument disregards the *Maxwell I* analysis directed by the District Court and is inconsistent with Second Circuit extraterritoriality case law that similarly examines a transaction's various connections to the United States.[6]

To begin with, the entire purpose of SIX SIS's investments with the BLMIS Feeder Funds was to invest in U.S. securities markets through New York-based investment adviser BLMIS and to earn returns on those U.S.-based investments. Specifically, SIX SIS entered into subscription agreements with the BLMIS Feeder Funds at least 46 times and in each case affirmed that it knew (i) the BLMIS Feeder Funds invested almost exclusively with a New York-

---

[3] In *Maxwell I*, the court examined all potential connections with the United States by reviewing: (i) the debtor's location; (ii) the defendants' location; (iii) where the defendants engaged in business regarding the transaction; (iv) what transaction and agreements the parties entered into that led to the antecedent debt that the transfers were used to pay; (v) where the parties' relationship was centered when conducting the transaction that triggered the transfers; (vi) the law governing the parties' transactions; and (vii) how the transaction was concluded. *In re Maxwell Commc'n Corp.*, 186 B.R. 807, 816-17 (S.D.N.Y. 1995).

[4] Extraterritoriality Decision, 513 B.R. at 232 n.4.

[5] *See*, *e.g.*, *Anwar v. Fairfield Greenwich, Ltd.*, 728 F. Supp. 2d 372, 402-03 (S.D.N.Y. 2010) (deferring ruling on extraterritoriality at motion to dismiss phase and citing standard that "[t]he court must accept all well-pleaded factual allegations in the complaint as true, and draw all reasonable inferences in the plaintiff's favor.").

[6] *See, e.g., Parkcentral Global Hub Ltd. v. Porsche Auto. Holdings SE*, 763 F.3d 198, 217 (2d Cir. 2014); *European Cmty. v. RJR Nabisco, Inc.*, 764 F.3d 129, 141 (2d Cir. 2014); and other cases cited in the Trustee's Main Brief.

2

based, SEC-registered investment adviser (i.e. BLMIS) that invested in the U.S. securities market, and (ii) SIX SIS's money would be transferred to that same investment adviser in New York. (Proffered Allegations at ¶¶ 7-9.) As Judge Lifland concluded in a similar matter, "[t]he movement of money to and from BLMIS in the United States . . . was not fortuitous or incidental; instead, it was 'the ultimate objective' and the '*raison d'etre*' of the Agreement between" the investor and the feeder fund.[7]

The express provisions of its agreements with the Fairfield Funds further demonstrate the domestic nature of SIX SIS's investment transactions with the BLMIS Feeder Funds. SIX SIS agreed in its subscription agreements with the Fairfield Funds that New York law would govern its investments, and it consented to U.S. jurisdiction. (Proffered Allegations at ¶¶ 10, 11.) Thus, SIX SIS had every expectation that U.S. laws would apply to its investment transactions and that it would be subject to suit in the United States.

SIX SIS also purposefully and repeatedly used a U.S. bank account and the U.S. banking system in connection with its subscriptions into and redemptions from Fairfield Sentry and Kingate Global, which redemptions constitute certain of the Transfers at issue.[8] SIX SIS made at least 35 separate subscription payments to Fairfield Sentry, received at least 55 separate subsequent transfers from Fairfield Sentry and Kingate Global, and repeatedly and systematically used its own U.S. bank account to make and receive these payments. (Proffered Allegations at ¶¶ 12-14.) Specifically, (i) in its Fairfield Sentry transaction documents, SIX SIS designated a bank account in its own name at Brown Brothers Harriman in New York to make subscription payments, and (ii) in its Fairfield Sentry and, upon information and belief, Kingate Global

---

[7] *Picard v. Bureau of Labor Ins. (In re BLMIS)*, 480 B.R. 501, 513 (Bankr. S.D.N.Y. 2012).

[8] *See, e.g.*, *Picard v. Igoin (In re BLMIS)*, 2015 WL 603209, at *16-17 (Bankr. S.D.N.Y. Feb. 13, 2015) (in the analogous context of personal jurisdiction, repeated use of U.S. bank accounts sufficient).

3

transaction documents, SIX SIS designated this same bank account to receive redemption payments. (*Id.* at ¶¶ 13-14.) SIX SIS also remitted its subscriptions into U.S. correspondent accounts at the direction of Fairfield Sentry and Kingate Global, which funds were then ultimately delivered to BLMIS in New York. (*Id.* at ¶ 15.)

Beyond all of the above domestic components, SIX SIS's argument that its transactions are "purely foreign" is wrong because it ignores the reality of the BLMIS Feeder Funds, from which it received the Transfers. The majority of SIX SIS's BLMIS Feeder Fund transfers (inclusive of the newly discovered transfers) were from the Fairfield Funds. (*Id.* at ¶ 2.) Fairfield Greenwich Group ("FGG") in New York created, managed, and controlled the Fairfield Funds. (*Id.* at ¶¶ 27, 43.) The Fairfield Funds were based out of New York and had their principal place of business in New York. (*Id.* at ¶ 16.) Although technically registered in the BVI, the Fairfield Funds had no employees or offices there, and at all times, operational decisions were made by FGG employees in New York.[9] (Proffered Allegations at ¶¶ 20, 21, 27, 40-43.) In its BLMIS account opening documents, FGG listed Fairfield Sentry's address as in the United States. (*Id.* at ¶ 23.) The Fairfield Funds' initial and on-going due diligence on BLMIS was conducted in New York, and the operative legal documents for Fairfield Sentry's BLMIS accounts were governed by New York law. (*Id.* at ¶¶ 25, 27, 43.) BLMIS in New York served as the Fairfield Funds' investment manager and implemented the split-strike conversion strategy for the Fairfield Funds. (*Id.* at ¶¶ 8, 30.)

The Kingate Funds similarly had no physical offices, no employees, and transacted no

---

[9] *See SEC v. Gruss*, 2012 WL 3306166 at *3 (S.D.N.Y. Aug 13, 2012) (finding that issues of fact existed regarding whether an offshore fund was "foreign" for purposes of extraterritoriality where complaint alleged that operational and investment decisions for the offshore fund were made in New York, "such that for all intents and purposes, the [offshore fund] was based in New York").

4

meaningful business in the BVI where they were registered. (*Id.* at ¶ 52.) Instead, the Kingate Funds operated through investment managers, consultants, and other service providers with substantial connections to the United States. (*Id.* at ¶¶ 62-71.) BLMIS in New York was the investment manager, executing broker, and custodian for the Kingate Funds' assets, and thus control over the Kingate Funds rested entirely with BLMIS in New York. (*Id.* at ¶¶ 59-61.) New York was the hub for the Kingate Funds' due diligence on BLMIS, and the Kingate Funds' agreements with BLMIS were governed by New York law. (*Id.* at ¶¶ 57, 68-70.)

## CONCLUSION

For the forgoing reasons and those stated in the Trustee's Main Brief, SIX SIS's motion to dismiss should be denied and the Trustee's motion for leave to amend his Complaint should be granted.

Dated: June 26, 2015  
       New York, New York

By: /s/ Thomas L. Long  
Baker & Hostetler LLP  
45 Rockefeller Plaza  
New York, New York 10111  
Telephone: (212) 589-4200  
Facsimile: (212) 589-4201  
David J. Sheehan  
Thomas L. Long  
Matthew D. Feil  
Hannah C. Choate

*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Estate of Bernard L. Madoff*

5