BAKER & HOSTETLER LLP
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee for the*
*Substantively Consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities LLC*
*and the Estate of Bernard L. Madoff*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>　　　　　　　　　Plaintiff-Applicant,<br><br>　　v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>　　　　　　　　　Defendant. | Adv. Pro. No. 08-01789 (SMB)<br><br>SIPA Liquidation<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>　　　　　　　　　Debtor. | **TRUSTEE'S SUPPLEMENTAL MEMORANDUM OF LAW IN OPPOSITION TO BANK VONTOBEL AG'S MOTION TO DISMISS BASED ON EXTRATERRITORIALITY AND IN FURTHER SUPPORT OF THE TRUSTEE'S MOTION FOR LEAVE TO AMEND THE COMPLAINT** |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>　　　　　　　　　Plaintiff,<br><br>　　v.<br><br>BANK VONTOBEL AG, f/k/a BANK J. VONTOBEL & CO. AG, and VONTOBEL ASSET MANAGEMENT INC.,<br><br>　　　　　　　　　Defendant. | Adv. Pro. No. 12-01202 (SMB) |

The Trustee respectfully submits this memorandum as a supplement to his Main Brief being filed simultaneously herewith in opposition to the motion to dismiss based on extraterritoriality made by Bank Vontobel AG (f/k/a Bank J. Vontobel & Co. AG) ("Bank Vontobel") and in further support of the Trustee's motion for leave to amend his Complaint.

## BACKGROUND

Bank Vontobel is a sophisticated financial services company that was a shareholder in Fairfield Sentry Limited ("Fairfield Sentry"), Fairfield Sigma Limited ("Sigma" and together with Fairfield Sentry, the "Fairfield Funds"), Kingate Global Fund Ltd. ("Kingate Global"), and Kingate Euro Fund Ltd. ("Kingate Euro" and together with Kingate Global, the "Kingate Funds"; the Kingate Funds and the Fairfield Funds together, the "BLMIS Feeder Funds"). (Proffered Allegations at ¶ 2.)  Fairfield Sentry, Kingate Global, and Kingate Euro each invested substantially all of their assets with BLMIS.  (*Id.*)  Sigma did not have its own direct BLMIS account, but invested 100% of its assets in Fairfield Sentry.[1]  (*Id.*)  Bank Vontobel received $11,830,205 in subsequent transfers of BLMIS customer property from the BLMIS Feeder Funds (the "Transfers").  (Trustee's Complaint at ¶ 2; *id.* at Exs. C, F, I, L.)

The Trustee's Proffered Allegations demonstrate that the Trustee's action to recover these Transfers does not require an extraterritorial application of SIPA or Bankruptcy Code Section 550.

## THE TRANSFERS AND COMPONENT EVENTS OF BANK VONTOBEL'S BLMIS FEEDER FUND TRANSACTIONS WERE PREDOMINANTLY DOMESTIC

Citing to *Maxwell I*, the District Court directed that "the location of the transfers as well as the component events of those transactions"[2] must be used to determine whether a subsequent

---

[1] For ease of reference, Sigma is included herein in the definition of "BLMIS Feeder Funds."

[2] Extraterritoriality Decision, 513 B.R. at 227 (citing *Maxwell I*, 186 B.R. at 816).

transfer claim involves a domestic or extraterritorial application of the Code and SIPA.[3]  Under

the District Court's ruling, the Trustee need only put forth "specific facts suggesting a domestic

transfer" to avoid dismissal.[4]  This is a fact-based inquiry in which all reasonable inferences

should be drawn in the Trustee's favor.[5]

Bank Vontobel argues that simply because it and the BLMIS Feeder Funds in which it

invested were formally organized under the laws of foreign countries, the subsequent transfers it

received are "purely foreign" and the Trustee's recovery action must be dismissed.  This

superficial argument disregards the *Maxwell I* analysis directed by the District Court and is

inconsistent with Second Circuit extraterritoriality case law that similarly examines a

transaction's various connections to the United States.[6]

This singular focus on place of registration also ignores the fact that Bank Vontobel and

its non-movant sister entity U.S.-based Vontobel Management invested in the same BLMIS

Feeder Funds and shared a relationship with the Fairfield Funds, and as discussed below,

Vontobel Management conducted significant elements of Bank Vontobel's transactions with the

BLMIS Feeder Funds.  (Proffered Allegations at ¶¶ 19-27.)  Thus, for purposes of

extraterritoriality there is no reason to distinguish between the foreign-registered Bank Vontobel

and U.S.-registered Vontobel Management.

The transfers and component events of Bank Vontobel's BLMIS Feeder Fund

transactions were predominantly domestic.

---

[3] *In re Maxwell Commc'n Corp.*, 186 B.R. 807, 816-17 (S.D.N.Y. 1995).

[4] Extraterritoriality Decision, 513 B.R. at 232 n.4.

[5] *See, e.g.*, *Anwar v. Fairfield Greenwich, Ltd.*, 728 F. Supp. 2d 372, 402-03 (S.D.N.Y. 2010).

[6] *See, e.g.*, *Parkcentral Global Hub Ltd. v. Porsche Auto. Holdings SE*, 763 F.3d 198, 217 (2d Cir. 2014); *European Cmty. v. RJR Nabisco, Inc.*, 764 F.3d 129, 141 (2d Cir. 2014); and other cases cited in the Trustee's Main Brief.

To begin with, the entire purpose of Bank Vontobel's investment with the BLMIS Feeder Funds was to invest in U.S. securities markets through New York-based investment adviser BLMIS, and to earn returns on those U.S.-based investments. Specifically, Bank Vontobel entered into subscription agreements with the BLMIS Feeder Funds at least 84 times and in each case affirmed that it knew (i) the BLMIS Feeder Funds invested almost exclusively with a New York-based, SEC-registered investment adviser (i.e. BLMIS) that invested in the U.S. securities market, and (ii) Bank Vontobel's money would be transferred to that same investment adviser in New York. (*Id.* at ¶¶ 7-9.) As Judge Lifland concluded in a similar matter, "[t]he movement of money to and from BLMIS in the United States . . . was not fortuitous or incidental; instead, it was 'the ultimate objective' and the '*raison d'etre*' of the Agreement between" the investor and the feeder fund.[7]

Moreover, Bank Vontobel agreed in its subscription agreements that New York law would govern its investments, and it consented to U.S. jurisdiction. (Proffered Allegations at ¶ 12.) In connection with its investments in the Fairfield Funds, Bank Vontobel also entered into a distribution and fee sharing agreement with Fairfield Greenwich Limited ("FG Limited") to promote investment in the Fairfield Funds. (*Id.* at ¶ 13.) FG Limited was registered to do business in New York and listed its principal executive office as that of Fairfield Greenwich Group ("FGG") in New York, and its typical fee-sharing agreement stated that it was governed by New York law. (*Id.*) Thus, Bank Vontobel had every expectation that U.S. laws would apply to its investment transactions and that it would be subject to suit in the United States. (*Id.* at ¶ 12.)

Bank Vontobel also purposefully and repeatedly used a U.S. bank account and the U.S.

---

[7] *Picard v. Bureau of Labor Ins. (In re BLMIS)*, 480 B.R. 501, 513 (Bankr. S.D.N.Y. 2012).

3

banking system in connection with its redemptions from Fairfield Sentry and Kingate Global, which constitute certain of the Transfers at issue.[8]  Bank Vontobel received at least 40 separate subsequent transfers from Fairfield Sentry and Kingate Global, and repeatedly and systematically used its own U.S. bank account to receive redemptions.  (Proffered Allegations at ¶ 16.) Specifically, in its Fairfield Sentry transaction documents, Bank Vontobel designated a bank account in its own name at JP Morgan Chase Bank NA in New York for receiving redemptions from Fairfield Sentry.  (*Id.*)  Upon information and belief, in its transaction documents with Kingate Global it designated its same account at JP Morgan Chase Bank NA in New York for receiving redemptions from Kingate Global.  (*Id.* at ¶ 17.)  Bank Vontobel also remitted its subscriptions into U.S. correspondent accounts at the direction of Fairfield Sentry and Kingate Global, which funds were then ultimately delivered to BLMIS in New York.  (*Id.* at ¶ 18.)

Further, significant elements of Bank Vontobel's BLMIS-related business were conducted by its U.S. affiliate, defendant Vontobel Asset Management, Inc. ("Vontobel Management"), a New York corporation with its principal place of business in New York. Vontobel Management served as the investment adviser to former defendant Vontobel Absolute Return Fund ("Vontobel Fund"), which invested as much as 80% of its assets under management with BLMIS through Fairfield Sentry.  (*Id.* at ¶ 20.)   Bank Vontobel and Vontobel Management together partnered with New York-based FGG to manage and market Vontobel Fund.  (*Id.* at 22.)

Bank Vontobel's relationship with FGG and due diligence on the Fairfield Funds and BLMIS was also based in New York.  In internal correspondence, FGG personnel noted that FGG had "a good relationship with Vontobel New York."  (*Id.* at ¶ 27.)  In fact, FGG considered the two Vontobel entities among its top 50 clients, and FGG co-founders Walter Noel and Jeffrey

---

[8] *See, e.g.*, *Picard v. Igoin (In re BLMIS)*, 2015 WL 603209, at *16-17 (Bankr. S.D.N.Y. Feb. 13, 2015) (in the analogous context of personal jurisdiction, repeated use of U.S. bank accounts sufficient).

Tucker afforded Vontobel Management personnel the rare opportunity to meet directly with Madoff at BLMIS's New York office.  (*Id.* at ¶ 26.)

Beyond all of the above domestic components, Bank Vontobel's argument that its transactions are "purely foreign" is wrong because it ignores the reality of the BLMIS Feeder Funds, from which it received the Transfers.  The majority of Bank Vontobel's transfers were from the Fairfield Funds.  (*Id.* at ¶ 3.)  The Fairfield Funds were based out of New York and had their principal place of business in New York.  (*Id.* at ¶ 28.)  Although technically registered in the BVI, the Fairfield Funds had no employees or offices there, and at all times, operational decisions were made by FGG employees in New York.[9]  (Proffered Allegations at ¶ 33.)

The Kingate Funds similarly had no physical offices, no employees, and transacted no meaningful business in the BVI where they were registered.  (*Id.* at ¶ 64.)  Instead, the Kingate Funds operated through investment managers, consultants, and other service providers with substantial connections to the United States.  (*Id.* at ¶ 66.)

## CONCLUSION

For the foregoing reasons and those stated in the Trustee's Main Brief, Bank Vontobel's motion to dismiss should be denied and the Trustee's motion for leave to amend his Complaint should be granted.

---

[9] *See SEC v. Gruss*, 2012 WL 3306166 at *3 (S.D.N.Y. Aug 13, 2012) (finding that issues of fact existed regarding whether an offshore fund was "foreign" for purposes of extraterritoriality where complaint alleged that operational and investment decisions for the offshore fund were made in New York, "such that for all intents and purposes, the [offshore fund] was based in New York").

Dated: June 26, 2015          By: /s/ Thomas L. Long
      New York, New York          Baker & Hostetler LLP
                                                      45 Rockefeller Plaza
                                                      New York, New York  10111
                                                      Telephone: (212) 589-4200
                                                      Facsimile: (212) 589-4201
                                                      David J. Sheehan
                                                      Thomas L. Long
                                                      Matthew D. Feil
                                                      Hannah C. Choate

*Attorneys for Irving H. Picard, Trustee for the*
*Substantively Consolidated SIPA Liquidation of*
*Bernard L. Madoff Investment Securities LLC*
*and the Estate of Bernard L. Madoff*

6