**WINDELS MARX LANE & MITTENDORF, LLP**
156 West 56th Street
New York, New York 10019
Tel: (212) 237-1000
Fax: (212) 262-1215

*Special Counsel for Irving H. Picard, Trustee for
the Substantively Consolidated SIPA Liquidation of
Bernard L. Madoff Investment Securities LLC
and the Estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>    Plaintiff-Applicant,<br> v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>    Defendant. | Adv. Pro. No. 08-01789 (SMB)<br><br>SIPA Liquidation<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>    Debtor. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and Bernard L. Madoff,<br><br>    Plaintiff,<br> v.<br><br><br><br>Mistral (SPC),<br><br><br><br><br><br>    Defendant. | Adv. Pro. No. 12-01273 (SMB)<br><br><br><br><br><br>**SUPPLEMENTAL MEMORANDUM OF LAW IN OPPOSITION TO MISTRAL (SPC)'S MOTION TO DISMISS BASED ON EXTRATERRITORIALITY AND IN FURTHER SUPPORT OF THE TRUSTEE'S MOTION FOR LEAVE TO AMEND COMPLAINTS** |

Irving H. Picard (the "Trustee") respectfully submits this memorandum as a supplement to his Main Brief being filed simultaneously herewith in opposition to the motion to dismiss based on extraterritoriality made by defendant Mistral (SPC) ("Mistral") and in further support of the Trustee's motion for leave to amend his Complaint to add the Proffered Allegations.

## BACKGROUND

Mistral was a hedge fund managed and operated out of the United States. (Proffered Allegations at ¶ 4.) Mistral was a shareholder in Rye Select Broad Market Portfolio Ltd. (*f/k/a* American Masters Broad Market Fund II Limited) ("Rye Portfolio Limited") and Kingate Global Fund Ltd. ("Kingate Global", and together with Rye Portfolio Limited, the "BLMIS Feeder Funds"), each of which invested substantially all of their assets with BLMIS. (Trustee's Complaint at ¶ 2, *id.* at Exs. D, I.) Mistral received $3,400,033 in subsequent transfers of BLMIS customer property from Rye Portfolio Limited and Kingate Global (the "Transfers"). (*Id.*) The Trustee's Proffered Allegations demonstrate that the Trustee's action to recover these Transfers does not require an extraterritorial application of SIPA or Bankruptcy Code § 550.

## THE TRANSFERS AND COMPONENT EVENTS OF MISTRAL'S BLMIS FEEDER FUND TRANSACTIONS WERE PREDOMINANTLY DOMESTIC.

Citing to *Maxwell I*, the District Court directed that "the location of the transfers as well as the component events of those transactions"[1] must be analyzed to determine whether a subsequent transfer claim involves a domestic or extraterritorial application of the Code and SIPA.[2] Under the District Court's ruling, the Trustee need only put forth "specific facts

---

[1] Extraterritoriality Decision, 513 B.R. at 227 (citing *Maxwell I*, 186 B.R. at 816).

[2] In *Maxwell I*, the court examined all potential connections with the United States by reviewing: (i) the debtor's location; (ii) the defendants' location; (iii) where the defendants engaged in business regarding the transaction; (iv) what transaction and agreements the parties entered into that led to the antecedent debt that the transfers were used to pay; (v) where the parties' relationship was centered when conducting the transaction that triggered the transfers; (vi) the

suggesting a domestic transfer" to avoid dismissal.[3] This is a fact-based inquiry in which all reasonable inferences should be drawn in the Trustee's favor.[4]

Mistral argues that simply because it and the BLMIS Feeder Funds in which it invested were formally organized under the laws of foreign countries, the subsequent transfers it received are "purely foreign" and the Trustee's recovery action must be dismissed. This superficial argument disregards the *Maxwell I* analysis directed by the District Court and is inconsistent with Second Circuit extraterritoriality case law that similarly examines a transaction's various connections with the United States.[5] Mistral's singular focus on place of registration also ignores that, although registered in the Cayman Islands, at all relevant times, Mistral had no employees or offices there, was prohibited from soliciting investors there, and was managed and operated out of the United States.[6] (Proffered Allegations at ¶¶ 4-6.)

The fact that Mistral was managed and operated by a U.S. investment manager—Credit Suisse Index Co. Inc., a Delaware corporation (the "U.S. Fund Manager")—demonstrates the domestic nature of Mistral's BLMIS Feeder Fund investment transactions. (*Id*. at ¶ 6.) Mistral had no business operations other than the investments it made, and the U.S. Fund Manager made those investments. (*Id*. at ¶ 4.)

---

law governing the parties' transactions; and (vii) how the transaction was concluded. *In re Maxwell Commc'n Corp.*, 186 B.R. 807, 816-17 (S.D.N.Y. 1995).

[3] Extraterritoriality Decision, 513 B.R. at 232 n.4.

[4] *See*, *e.g.*, *Anwar v. Fairfield Greenwich, Ltd*., 728 F. Supp. 2d 372, 402-03 (S.D.N.Y. 2010).

[5] *See, e.g., Parkcentral Global Hub Ltd. v. Porsche Auto. Holdings SE*, 763 F.3d 198, 217 (2d Cir. 2014); *European Cmty. v. RJR Nabisco, Inc*., 764 F.3d 129, 141 (2d Cir. 2014); and other cases cited in the Trustee's Main Brief.

[6] *See SEC v. Gruss*, 2012 WL 3306166 at *3 (S.D.N.Y. Aug 13, 2012) (finding that issues of fact existed regarding whether an offshore fund was "foreign" for purposes of extraterritoriality where complaint alleged that operational and investment decisions for the offshore fund were made in New York, "such that for all intents and purposes, the [offshore fund] was based in New York").

2

Furthermore, Mistral's investments with the BLMIS Feeder Funds arose out of a New York-based relationship between the U.S. Fund Manager and New York-based Tremont, which created, managed and operated Rye Portfolio Limited and managed Kingate Global at relevant times. (*Id*. at ¶ 7.) These entities jointly operated a hedge fund index that tracked various funds, including both of the BLMIS Feeder Funds in which Mistral invested. (*Id*. at ¶ 8.)

Moreover, the entire purpose of Mistral's investments in the two BLMIS Feeder Funds was to invest in U.S. securities markets through New York-based investment adviser BLMIS, and to earn returns on those U.S.-based investments. (*Id.* at ¶ 9.) Mistral knew that its investments in the BLMIS Feeder Funds were controlled entirely by Bernard Madoff and BLMIS in New York, as evidenced for example by an e-mail with Tremont referring to the so called "Bernie Maddof [sic] fund". (*Id*. at ¶ 11.)

Mistral's knowledge and intent is also evidenced by its investment transaction documents with both BLMIS Feeder Funds. Mistral entered into subscription agreements with the BLMIS Feeder Funds at least five times and in each case affirmed that it knew (i) the BLMIS Feeder Funds invested almost exclusively with a New York-based, SEC-registered investment adviser (i.e. BLMIS) that invested in the U.S. securities market, and (ii) Mistral's money would be transferred to that same investment adviser in New York. (*Id*. at ¶¶ 12-15.) As Judge Lifland concluded in a similar matter, "[t]he movement of money to and from BLMIS in the United States . . . was not fortuitous or incidental; instead, it was 'the ultimate objective' and the '*raison d'etre*' of the Agreement between" the investor and the feeder fund.[7]

Mistral also purposefully used a U.S. bank account and the U.S. banking system to send subscriptions into and receive redemption payments from the BLMIS Feeder Funds, which

---

[7] *Picard v. Bureau of Labor Ins. (In re BLMIS)*, 480 B.R. 501, 513 (Bankr. S.D.N.Y. 2012).

3

redemptions constitute the Transfers at issue. (Proffered Allegations at ¶ 16-17.) Mistral remitted subscriptions at least 5 times and received redemptions at least 3 times, and it used a bank account at the Northern Trust International Banking Corporation in New York or New Jersey for this purpose. (*Id.* at ¶¶ 17-19.) Mistral also remitted its subscriptions into U.S. bank or correspondent accounts as directed by the BLMIS Feeder Funds, which moneys were then ultimately delivered to BLMIS in New York. (*Id.* at ¶ 20.) In addition, every redemption Mistral received from Rye Portfolio Limited came from that fund's New York-based bank account. (*Id.* at ¶ 21.)

Further evidencing the domestic nature of Mistral's transactions is that Mistral's due diligence on the BLMIS Feeder Funds was conducted in New York. The U.S. Fund Manager, which is a part of the Credit Suisse group of companies with a headquarters in New York, relied heavily on New York-based personnel at Credit Suisse's offices to communicate with and obtain information from the BLMIS Feeder Funds. (*Id.* at ¶¶ 22-25.) Mistral also had ready access to Tremont executives in New York. (*Id.* at ¶¶ 23-24.)

Beyond all of the above domestic components, Mistral's argument that its transactions are purely foreign is wrong because it ignores the reality of the BLMIS Feeder Funds from which it received the Transfers. Although technically registered in the Cayman Islands, Rye Portfolio Limited had no real presence there—just a P.O. Box—and, as an exempted company under Cayman Islands law, was not allowed to solicit investors there. (*Id.* at ¶¶ 40-41.) At all relevant times, Rye Portfolio Limited's principal place of business was at the Rye, New York offices of Delaware corporation Tremont Group Holdings, Inc., which, together with one or more of its affiliates, formed, managed and operated Rye Portfolio Limited along with multiple other

4

BLMIS feeder funds.[8] (*Id*. at ¶¶ 26-30, 42-51.) Rye Portfolio Limited's due diligence on, and communications with, BLMIS took place in New York through Tremont's New York personnel, and its agreements with BLMIS were governed by New York law. (*Id*. at ¶¶ 29, 31-34.)

Kingate Global similarly had no physical offices, no employees, and transacted no meaningful business in the BVI where it was technically registered. (*Id*. at ¶ 58.) Instead, Kingate Global operated through investment managers, consultants, and other service providers with substantial connections to the United States. (*Id*. at ¶¶ 59-60, 68-77.) BLMIS in New York was the investment manager, executing broker, and custodian for Kingate Global's assets, and thus control over Kingate Global rested entirely with BLMIS in New York. (*Id*. at ¶¶ 65-67.) New York was the hub for Kingate Global's due diligence on BLMIS, and Kingate Global's agreements with BLMIS were governed by New York law. (*Id*. at ¶¶ 62-64, 74-76.)

Finally, Mistral previously argued in this case that Bankruptcy Code section 546(e)'s safe harbor should shield its Transfers from suit precisely because of their connection to the U.S. securities markets into which BLMIS purported to invest.[9] This argument is inconsistent with Mistral's current assertion that its transactions lack sufficient domestic connections for purposes of extraterritoriality. Mistral should not be allowed to have it both ways, taking advantage of U.S. law when it suits it and running from it when it does not.

## CONCLUSION

For the foregoing reasons and those stated in the Trustee's Main Brief, Mistral's motion to dismiss should be denied, and the Trustee's motion for leave to amend his Complaint to add the Proffered Allegations should be granted.

---

[8] *See SEC v. Gruss, supra*, n.6.

[9] *See* Brief of *Amici Curiae* Financial Institution Defendants in Support of Appellees and Affirmance of the District Court, *Picard v. Ida Fishman Revocable Trusts (In re Bernard L. Madoff. Inv. Sec. LLC)*, No. 12-2557 (bk) (2d Cir. Jan. 29, 2014), ECF No. 346.

5

Dated: New York, New York
June 26, 2015

Respectfully submitted,

By: /s/ Howard L. Simon
**WINDELS MARX LANE & MITTENDORF, LLP**
156 West 56th Street
New York, New York 10019
Tel: (212) 237-1000
Howard L. Simon
Kim M. Longo
Antonio J. Casas
Brian W. Kreutter
*Special Counsel to Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and Bernard L. Madoff*

6