**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee*
*for the substantively consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities LLC*
*and the estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, <br><br> Plaintiff-Applicant, <br> v. <br><br> BERNARD L. MADOFF INVESTMENT SECURITIES LLC, <br><br> Defendant. | Adv. Pro. No. 08-01789 (SMB) <br><br> SIPA Liquidation <br><br> (Substantively Consolidated) |
| In re: <br><br> BERNARD L. MADOFF, <br><br> Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, <br><br> Plaintiff, <br> v. <br><br> CITIVIC NOMINEES LTD., <br><br> Defendant. | Adv. Pro. No. 12-01513 (SMB) |

**TRUSTEE'S SUPPLEMENTAL MEMORANDUM OF LAW**
**IN OPPOSITION TO DEFENDANT CITIVIC NOMINEES LTD.'S MOTION**
**TO DISMISS BASED ON EXTRATERRITORIALITY AND IN FURTHER**
**SUPPORT OF TRUSTEE'S MOTION FOR LEAVE TO AMEND COMPLAINTS**

The Trustee respectfully submits this supplemental memorandum in opposition to Citivic Nominees Ltd.'s ("Citivic") motion to dismiss based upon extraterritoriality and in further support of the Trustee's motion for leave to amend the complaints. As set forth below, the Trustee's Proffered Allegations Pertaining to the Extraterritoriality Issue as to Defendant Citivic ("Proffered Allegations") plead facts evidencing the subsequent transfers received by Citivic are predominantly domestic under the standard set forth in the Extraterritoriality Decision,[1] such that the Trustee's action does not require an extraterritorial application of SIPA or Bankruptcy Code § 550. Citivic's motion to dismiss should be denied, and the Trustee should be granted leave to amend the complaint.

## BACKGROUND & LEGAL STANDARD

The Trustee's Proffered Allegations alleges Citivic received at least $59,479,232 in subsequent transfers of BLMIS customer property from Fairfield Sentry Limited ("Fairfield Sentry"). Proffered Allegations ¶ 1. Fairfield Sentry was one of many BLMIS feeder funds—single-purpose investment funds that pooled their investors' assets to invest with BLMIS. *Id.* Fairfield Greenwich Group ("FGG"), a *de facto* partnership based in New York, created, operated, and controlled Fairfield Sentry. *Id.* ¶ 4. Fairfield Sentry withdrew funds from its BLMIS accounts and transferred those funds to Citivic. *Id.* ¶ 1.

Citivic argues that because it was organized under the laws of the United Kingdom, and because Fairfield Sentry was organized under the laws of the Territory of the British Virgin Islands ("BVI"), it is entitled to a finding that those transfers are "purely foreign" and must be dismissed under the Extraterritoriality Decision. Citivic is wrong, and ignores that this analysis

---

[1] *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.),* 513 B.R. 222 (S.D.N.Y. 2014) ("Extraterritoriality Decision").

1

is a factual inquiry with all reasonable inferences drawn in the Trustee's favor.[2] In making this determination, this Court must review the *Maxwell I* "component events" analysis embraced by the District Court in the Extraterritoriality Decision,[3] and as well as Second Circuit precedent calling for courts to consider the economic and legal realities of the transactions.[4] Citivic's motion should be denied because: (1) Citivic purposely invested in Fairfield Sentry to profit from Madoff's purported investment in the U.S. securities market; (2) Citivic's actions put the United States at the center of its transactions with Fairfield Sentry; (3) Citivic invested in Fairfield Sentry, which was operated from its principal place of business in New York; and (4) Citivic has conceded that U.S. law should apply to the transactions at issue.

## I. CITIVIC PURPOSELY INVESTED IN FAIRFIELD SENTRY TO PROFIT FROM MADOFF'S PURPORTED INVESTMENT IN THE U.S. SECURITIES MARKET

From its review of Fairfield Sentry's Private Placement Memoranda ("PPMs"), among other things, Citivic, at a minimum, knew the following facts:

- Madoff operated BLMIS, which in turn purported to execute the "split-strike conversion" strategy ("SSC Strategy") on behalf of Fairfield Sentry;

- In reality the investment adviser for Fairfield Sentry was BLMIS in New York;

- BLMIS maintained custody of Fairfield Sentry's investments in New York;

- BLMIS, a New York-based registered broker-dealer, purported to execute the SSC Strategy in New York as prime broker for Fairfield Sentry;

- BLMIS purported to invest the assets invested with the SSC Strategy in U.S. equities, U.S. options, and U.S. Treasury bills traded on U.S. exchanges on behalf of Fairfield Sentry; and

---

[2] *See, e.g., Anwar v. Fairfield Greenwich Ltd.*, 728 F. Supp. 2d 372, 403–05 (S.D.N.Y. 2010).

[3] Extraterritoriality Decision, 513 B.R. at 227 (citing *Maxwell Commc'n Corp. v. Société General (In re Maxwell Commc'n Corp.)* 186 B.R. 807, 816–17 (S.D.N.Y. 1995) ("*Maxwell I*")).

[4] *See, e.g., Mastafa v. Chevron Corp.*, 770 F.3d 170, 182 (2d Cir. 2014); *European Cmty. v. RJR Nabisco, Inc.*, 764 F.3d 129, 141–42 (2d Cir. 2014); *Parkcentral Global Hub Ltd.*, 763 F.3d at 216–17 (2d Cir. 2014).

2

- Control over Fairfield Sentry's investments rested entirely with BLMIS and Madoff in New York.

Proffered Allegations ¶ 7.

Citivic knew the entire economic purpose of Fairfield Sentry was to deliver money to BLMIS in New York. *Id.* ¶¶ 7–9. Citivic knowingly invested in Fairfield Sentry to profit from Madoff's purported investment in the U.S. securities market. *Id.* ¶ 9.

## II. CITIVIC'S ACTIONS PUT THE UNITED STATES AT THE CENTER OF ITS TRANSACTIONS WITH FAIRFIELD SENTRY

Although registered in the United Kingdom, Citivic itself was part of U.S.-based Citigroup Inc.'s ("Citigroup") sophisticated banking network. Proffered Allegations ¶¶ 2–3. Citivic was an affiliate of U.S.-based and Citigroup-owned Citibank N.A. ("Citibank") and operated under Citibank's corporate group. *Id.* ¶ 3. Citivic worked in tandem with Citibank to invest in Fairfield Sentry. *Id.* ¶ 10.

Citivic's actions put the United States at the center of its transactions and relationship with Fairfield Sentry. *Id.* ¶¶ 10–16. Citibank's affiliate based in New York acted on behalf of Citivic, including serving as Fairfield Greenwich Group's ("FGG") representative of record for Citivic's investments in Fairfield Sentry. *Id.* ¶ 10. U.S.-based FGG representatives, including Cornelis Boele, Lourdes Barreneche, Philip Toub, and Santiago Reyes—each sales representatives and partners at FGG—managed FGG's relationship with Citivic and served as Citivic's contacts for its investments in Fairfield Sentry. *Id.* ¶ 11. Together these U.S.-based FGG representatives were responsible for everything related to Citivic's investments in, and redemptions from, Fairfield Sentry. *Id.*

Citivic executed a Fairfield Sentry subscription agreement wherein it agreed its investments would be governed by New York law, and submitted to New York venue and jurisdiction. *Id.* ¶¶ 12–14. Citivic agreed its subscriptions payments from Citivic to Fairfield

3

Sentry would flow through an account at HSBC Bank USA in New York for ultimate deposit in Fairfield Sentry's bank account, and then to BLMIS's account at JPMorgan Chase NA ("JPMorgan") in New York. *Id.* ¶ 15. Citivic also transferred subscription payments to Fairfield Sentry through an account at Republic National Bank of New York. *Id.* In its redemption requests, Citivic directed Fairfield Sentry to forward its redemption payments to its accounts at Citibank and JPMorgan in New York. *Id.* ¶ 16.

### III.    FAIRFIELD SENTRY'S PRINCIPAL PLACE OF BUSINESS WAS NEW YORK

In 1988, U.S. citizens and residents, Walter Noel and Jeffrey Tucker, founded FGG. Proffered Allegations ¶¶ 4, 18. As part of FGG, Noel and Tucker incorporated Fairfield International Managers, Inc. ("Fairfield International Managers") under Delaware law. *Id.* ¶ 20. Through Fairfield International Managers, Noel and Tucker organized the largest BLMIS feeder fund, Fairfield Sentry. *Id.* ¶¶ 4, 20.

Noel and Tucker formally organized Fairfield Sentry as an international business company under BVI law. *Id.* ¶ 21. As an international business company, BVI law restricted Fairfield Sentry from doing business with other BVI citizens and residents except with other BVI international business companies. *Id.* Fairfield Sentry was a shell corporation present in the BVI solely on paper. *Id.* ¶ 22. Fairfield Sentry's BVI statutorily required registered address was a post office box care of a local trust company owned and operated by a local law firm. *Id.*

From inception until its liquidation in 2009, Fairfield Sentry had no employees and no offices. *Id.* At all relevant times, Fairfield Sentry was operated almost entirely by FGG's New York personnel who maintained final control of Fairfield Sentry's bank accounts and relationships with Fairfield Sentry's back office service providers. *Id.* ¶¶ 28–29. From Fairfield Sentry's inception, FGG personnel at its New York City headquarters controlled the sales and subscriptions of the fund's shares. *Id.* From at least January 1, 2002, all Fairfield Sentry

4

subscription agreements contained New York choice of law provisions, and provided for venue and jurisdiction for any disputes in New York. *Id.* ¶ 29.

At all relevant times, FGG's New York City headquarters personnel monitored Fairfield Sentry's investments; managed the relationships with BLMIS; directed investments into and out of BLMIS as well as into and out of Fairfield Sentry; marketed Fairfield Sentry; approved all subscriptions for Fairfield Sentry; maintained all of Fairfield Sentry's books and records at the FGG New York City headquarters; and made all strategic and operational decisions regarding Fairfield Sentry. *Id.* ¶¶ 28–29.

## IV. CITIVIC CONCEDED THAT U.S. LAW APPLIES TO ITS TRANSACTIONS

Finally, Citivic previously argued in this case that Bankruptcy Code section 546(e)'s safe harbor should shield its transfers from suit precisely because of their connection to the U.S. securities markets into which BLMIS purported to invest.[5] This argument is inconsistent with Citivic's current assertion that its transactions lack sufficient domestic connections for purposes of extraterritoriality. Citivic should not be allowed to have it both ways, taking advantage of U.S. law when it suits it and running from it when it does not.

## V. CONCLUSION

For the foregoing reasons and those stated in the Trustee's Main Brief, this Court should deny Citivic's motion to dismiss and grant the Trustee's motion for leave to amend the complaint.

---

[5] *See* Brief for Financial Institution Defendants as Amici Curiae Supporting Respondents at 11, *Picard v. Ida Fishman Revocable Trust (In re Madoff Sec.)*, 773 F.3d 411 (No. 12-2557) (2d Cir. 2014).

Dated:  June 26, 2015       /s/ Thomas L. Long
      New York, New York       **Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone:  (212) 589-4200
Facsimile:  (212) 589-4201
David J. Sheehan
Thomas L. Long
Catherine E. Woltering

**Baker & Hostetler LLP**
65 East State Street, Suite 2100
Columbus, Ohio 43215
Telephone:  (614) 228-1541
Facsimile:  (614) 462-2616
Brian R. Noethlich

*Attorneys for Irving H. Picard, Trustee*
*for the substantively consolidated SIPA*
*Liquidation of Bernard L. Madoff Investment*
*Securities LLC and the estate of Bernard L.*
*Madoff*