**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee*
*for the Substantively Consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities LLC*
*and the estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | No. 08-01789 (SMB) |
| Plaintiff-Applicant, | SIPA Liquidation |
| v. | |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | (Substantively Consolidated) |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | Adv. Pro. No. 12-01513 (SMB) |
| Plaintiff, | |
| v. | **TRUSTEE'S PROFFERED ALLEGATIONS PERTAINING TO THE EXTRATERRITORIALITY ISSUE AS TO CITIVIC NOMINEES LTD.** |
| CITIVIC NOMINEES LTD., | |
| Defendant. | |

The Trustee, by his undersigned counsel, for his Proffered Allegations Pertaining to the Extraterritoriality Issue as to defendant Citivic Nominees Ltd. ("Citivic"), states:

## I.    INTRODUCTION

1.    The Trustee seeks to recover at least $59,479,232 in subsequent transfers of BLMIS customer property made to Citivic by Fairfield Sentry Limited ("Fairfield Sentry"). Fairfield Sentry was one of many BLMIS feeder funds—single-purpose investment funds that pooled their investors' assets to invest with BLMIS.

2.    Defendant Citivic is registered in the United Kingdom as a British limited company, and is wholly owned by U.K.-based Citibank Investments Limited and U.K.-based Citicorporate Limited, which in turn, are indirectly owned by U.S.-based Citigroup, Inc. ("Citigroup").  Citigroup is a publicly held Delaware corporation.

3.    At all relevant times, Citivic was part of Citigroup's sophisticated banking network.  Citivic was an affiliate of U.S.-based Citibank N.A. ("Citibank") and operated under Citibank's corporate group.  Both Citivic and Citibank were ultimately owned by Citigroup.

4.    From November 1990 through December 2008, Fairfield Sentry maintained direct customer accounts with BLMIS's investment advisory business.  Fairfield Sentry was the largest BLMIS feeder fund, and Fairfield Greenwich Group ("FGG"), a *de facto* partnership based in New York, created, operated, and controlled Fairfield Sentry.  FGG was founded by U.S. citizens and residents, Walter Noel and Jeffrey Tucker.

5.    Although formally incorporated in Territory of the British Virgin Islands ("BVI"), Fairfield Sentry was a shell corporation present in the BVI only on paper.  Fairfield Sentry had no employees and no office, and was operated almost entirely by FGG personnel in New York.

## II. CITIVIC PURPOSELY INVESTED IN FAIRFIELD SENTRY TO PROFIT FROM MADOFF'S PURPORTED INVESTMENT IN THE U.S. SECURITIES MARKET

6. At all relevant times, Citivic knew Fairfield Sentry was entirely invested with New York-based BLMIS. Through its investments in Fairfield Sentry, Citivic intentionally tried to profit from BLMIS's operations in New York.

7. Prior to subscribing in Fairfield Sentry, Citivic performed due diligence on Fairfield Sentry, including, among other things, a review of its Private Placement Memoranda ("PPM"). As a result of its review of the PPM, Citivic, at a minimum, knew the following facts:

- Madoff operated BLMIS, which in turn purported to execute the "split-strike conversion" strategy ("SSC Strategy") on behalf of Fairfield Sentry;

- In reality the investment adviser for Fairfield Sentry was BLMIS in New York;

- BLMIS maintained custody of Fairfield Sentry's investments in New York;

- BLMIS, a New York-based registered broker-dealer, purported to execute the SSC Strategy in New York as prime broker for Fairfield Sentry;

- BLMIS purported to invest the assets invested with the SSC Strategy in U.S. equities, U.S. options, and U.S. Treasury bills ("Treasurys") traded on U.S. exchanges on behalf of Fairfield Sentry; and

- Control over Fairfield Sentry's investments rested entirely with BLMIS and Madoff in New York.

8. Citivic knew that the success of any Fairfield Sentry was entirely dictated by Madoff's purported returns.

9. Citivic knowingly invested in Fairfield Sentry in order to profit from Madoff's purported investment in the U.S. securities market.

2

### III. CITIVIC'S ACTIONS PUT NEW YORK AT THE CENTER OF ITS TRANSACTIONS WITH FAIRFIELD SENTRY

#### A. New York was the Center of Citivic's Relationship with Fairfield Sentry and Citivic Agreed to New York Choice of Law, Venue, and Jurisdiction in Connection with Its Fairfield Sentry Investments

10.  Citivic utilized Citibank's New York-based affiliate to communicate with FGG's New York-based representatives in connection with its investments in Fairfield Sentry. Citibank's affiliate acted on behalf of Citivic, including serving as the FGG representative of record for Citivic's investments in Fairfield Sentry. Citivic worked in tandem with Citibank to make investments in Fairfield Sentry.

11.  U.S.-based Cornelis Boele, Lourdes Barreneche, Philip Toub, and Santiago Reyes—each sales representatives and partners at FGG—managed FGG's relationship with Citivic, served as Citivic's contacts and representatives for its investments in Fairfield Sentry, and were responsible for everything related to Citivic's investments in, and redemptions from, Fairfield Sentry. These relationships included communications related to Citivic's Fairfield Sentry transfers.

12.  Citivic executed a subscription agreement with Fairfield Sentry, which Citibank transmitted to Fairfield Sentry via facsimile.

13.  By executing a subscription agreement with Fairfield Sentry, Citivic agreed that its Fairfield Sentry investments "shall be governed and enforced in accordance with the laws of New York, without giving effect to its conflict of laws provisions."

14.  Citivic also "agree[d] that any suit, action or proceeding . . . with respect to this Agreement and [Fairfield Sentry] may be brought in New York," and "irrevocably submit[ted] to the jurisdiction of the New York courts with respect to any [p]roceeding."

3

### B. Citivic Repeatedly Utilized U.S. Bank Accounts to Transfer Funds

15. Citivic's Fairfield Sentry subscription agreement to purchase Fairfield Sentry shares required that all money from Citivic be directed to a New York HSBC Bank USA correspondent bank account, for ultimate deposit in Fairfield Sentry's bank account. Citivic also used a Republic National Bank of New York correspondent account to transfer money to Fairfield Sentry's bank account. From Fairfield Sentry's bank account, the funds were deposited in BLMIS's account at JPMorgan Chase Bank NA ("JPMorgan") in New York. On at least 59 occasions, over the course of 5 years, in connection with purchasing shares of Fairfield Sentry, Citivic directed funds to this New York HSBC Bank USA and/or Republic National Bank of New York account.

16. Citivic also used an account at Citibank in New York held in its own name, and an account at JPMorgan in New York held in the name "Euroclear Bank" to receive transfers from Fairfield Sentry. Citivic completed redemption requests, which directed redemption payments to be sent to these accounts at Citibank and JPMorgan in New York. Citivic utilized these accounts regularly—at least 31 times over a 6 year period—to receive $59,479,232 in redemption payments from Fairfield Sentry.

## IV. FAIRFIELD SENTRY MAINTAINED ITS PRINCIPAL PLACE OF BUSINESS IN NEW YORK

17. At all relevant times, Fairfield Sentry's principal place of business was in New York and Fairfield Sentry was a U.S. resident.

### A. The Genesis of the Fairfield Greenwich Group *De Facto* Partnership

18. In 1988, Walter Noel and Jeffrey Tucker founded a *de facto* partnership called FGG based in New York City. FGG created, managed, and marketed a variety of investment vehicles, the largest of which were BLMIS feeder funds.

4

19.     The FGG *de facto* partnership included: individual persons; U.S. corporations; foreign corporations; and investment vehicles created, managed, operated, and marketed from FGG's New York headquarters. Among the FGG investment vehicles were the three BLMIS feeder funds—Fairfield Sentry, Greenwich Sentry, L.P. ("Greenwich Sentry"), and Greenwich Sentry Partners, L.P.—as well as the so-called currency funds, Fairfield Sigma Limited ("Sigma") and Fairfield Lambda Limited ("Lambda"). Sigma and Lambda received subscriptions in Euros and Swiss Francs respectively, converted the foreign currencies to U.S. dollars, and then invested all of the U.S. dollars in Fairfield Sentry.

20.     FGG also included a number of administrative entities that purportedly provided management and back office support to the funds. These entities included: Fairfield Greenwich Limited ("FG Limited"), Fairfield Greenwich (Bermuda), Ltd. ("FG Bermuda"), Fairfield Greenwich Advisors LLC ("FG Advisors"), and Fairfield International Managers, Inc. ("Fairfield International Managers").

**B.     Fairfield Sentry**

21.     On October 30, 1990, FGG founding partners, Noel and Tucker, organized Fairfield Sentry under the International Business Company Act of the BVI, for the sole purpose of creating a fund to invest with Madoff. Noel and Tucker chose to organize Fairfield Sentry under BVI law in order to avoid U.S. taxation and enjoy tax free status in the BVI. Under BVI statutory law, Fairfield Sentry was prohibited from doing business with other BVI residents except for other entities organized under the International Business Companies Act.

22.     Fairfield Sentry was a shell corporation present in the BVI solely on paper. From its inception until its liquidation, Fairfield Sentry had no employees and no office. It was operated almost entirely by FGG personnel based in New York ("FGG New York Personnel"). Its statutorily required registered address in the BVI was a post office box care of a local trust

5

company owned and operated by a local law firm. The same post office box served as the registered address for hundreds of other investment vehicles unrelated to the FGG operations. The law firm operating the trust company and registered post office box addressed its statements for Fairfield Sentry services to FGG's New York headquarters.

23. Fairfield Sentry's operations, structure, agreements, and marketing materials all demonstrate that Fairfield Sentry's principal place of business was in the United States. Fairfield Sentry is currently in liquidation proceedings in the BVI and the United States.

    **1.    Fairfield Sentry's Agreements With BLMIS Confirm Fairfield Sentry's Principal Place of Business Was in the United States**

24. When FGG opened Fairfield Sentry's BLMIS accounts, FGG made it clear Fairfield Sentry was operated from the United States and not the BVI. In November 1990, Tucker executed BLMIS account documents opening Fairfield Sentry's BLMIS account 1FN012 and options account 1FN069. In the account opening documents, Tucker listed Fairfield Sentry's address as the office address of Fairfield International Managers—a company jointly owned by Noel and Tucker—in Greenwich, Connecticut. Further, Tucker directed BLMIS to send all BLMIS account statements, trade confirmations, and correspondence to Fairfield International Managers' offices in Greenwich, Connecticut. In October 1992, Tucker opened a second Fairfield Sentry account at BLMIS, 1FN045, as well as a second options account, 1FN070. BLMIS sent Fairfield Sentry's account statements, trade confirmations, and correspondence for these accounts to the same Greenwich, Connecticut office. On January 29, 1998, FGG notified BLMIS to change Fairfield Sentry's address for all of its BLMIS accounts to FGG's New York headquarters.

25. After the original BLMIS account documents were executed by Tucker on behalf of Fairfield Sentry, FGG partners Tucker, Daniel Lipton, and Mark McKeefry—all located in

6

FGG's New York headquarters—executed additional BLMIS account documents on behalf of Fairfield Sentry including: customer agreements, trade authorizations, options agreements, and Internal Revenue Service forms. In most instances, FGG listed Fairfield Sentry's address on these BLMIS account documents as FGG's New York headquarters.

26.     The BLMIS customer agreements covering Fairfield Sentry's BLMIS accounts are governed by New York law and all disputes arising under the agreements must be resolved by mandatory arbitration in New York utilizing the laws of New York. All transactions under Fairfield Sentry's BLMIS customer agreements were subject to the Securities Exchange Act of 1934 and to the rules and regulations of the SEC and Board of Governors of the Federal Reserve System. Every BLMIS trade confirmation received and reviewed by FGG personnel on behalf of Fairfield Sentry identified BLMIS as a U.S. registered broker-dealer and a Securities Investor Protection Corporation ("SIPC") member regulated by the SEC.

### 2. FGG New York Personnel Controlled Fairfield Sentry's Relationship With Various Citco Entities

27.     As the original directors of Fairfield Sentry, Noel and Tucker contracted with Citco Fund Services (Europe) B.V. ("Citco Fund Services") to provide Fairfield Sentry with back office administrative services such as coordinating subscription and redemption forms, maintaining Know Your Customer information, and serving as the independent party verifying the Net Asset Value of the Fairfield Sentry shares. Noel and Tucker also contracted Citco Global Custody N.V. ("Citco Custody") to nominally serve as the custodian of the Fairfield Sentry assets. In reality, BLMIS was the custodian inasmuch as all of the Fairfield Sentry assets were held in the BLMIS accounts. As a result, Citco Custody entered into a sub-custodian agreement with BLMIS. As a further part of the relationship with Citco Fund Services and Citco Custody, Noel and Tucker also opened bank accounts at Citco Bank Nederland, N.V. Dublin

7

Branch ("Citco Bank Dublin"). FGG New York Personnel had final control of the Fairfield Sentry bank accounts and controlled all of Fairfield Sentry's relationships with the various Citco entities.

### 3. FGG New York Personnel Managed Fairfield Sentry

28. At all relevant times, Fairfield Sentry was operated from FGG's New York headquarters. FGG New York Personnel monitored Fairfield Sentry's investments; managed Fairfield Sentry's relationship with BLMIS, Madoff, clients, and potential clients; created marketing and performance materials for Fairfield Sentry; marketed Fairfield Sentry; performed administrative functions required by Fairfield Sentry; negotiated confidentiality agreements and other service provider contracts on behalf of Fairfield Sentry; directed investments into and out of BLMIS; and conducted various other due diligence and risk management activities. Until Fairfield Sentry's liquidation, FGG maintained Fairfield Sentry's books and records in New York.

29. FGG New York Personnel made and controlled all decisions regarding Fairfield Sentry's assets not invested with BLMIS. FGG New York Personnel also had final control of Fairfield Sentry's banking accounts, including Fairfield Sentry's accounts at Citco Bank Dublin. Even with the Citco entities' various roles, FGG New York Personnel made all ultimate operational decisions regarding Fairfield Sentry. From the outset of Fairfield Sentry's operations, FGG New York Personnel controlled and approved all subscriptions into and redemptions from the fund. From at least January 1, 2002, all Fairfield Sentry subscription agreements contained New York choice of law provisions, and provided for venue and jurisdiction for any disputes in New York.

8

### 4.  Fairfield Sentry's Investors Knew They Were Investing in BLMIS

30. Fairfield Sentry's subscription agreements also incorporated its Private Placement Memoranda ("PPMs") by reference. Each Fairfield Sentry subscriber acknowledged receipt of the PPM. The original or later amended PPMs disclosed to the Fairfield Sentry investors that a minimum of 95% of its assets were: (1) deposited in its accounts at BLMIS in New York; (2) invested by BLMIS, an SEC-registered broker-dealer; (3) traded in accordance with Madoff's SSC Strategy; and (4) through BLMIS invested in U.S. S&P 100 Index securities and options or short-term U.S. Treasurys. Fairfield Sentry's PPM also disclosed to investors that BLMIS's services were "essential to the continued operation of the Fund."

### 5.  BLMIS Was Fairfield Sentry's Investment Manager

31. Although FGG attempted to hide its manager, BLMIS served as the investment manager throughout the life of Fairfield Sentry. At the outset, Fairfield Sentry used Information Memoranda to solicit investments in the fund. The Information Memoranda listed Fairfield International Managers as Fairfield Sentry's investment manager for which it was paid a performance fee of 20% of the reported gains in Fairfield Sentry's BLMIS accounts. Despite Fairfield International Managers' reported role, Fairfield Sentry disclosed that all of Fairfield Sentry's assets were in discretionary brokerage accounts operated by BLMIS, which in reality made all of Fairfield Sentry's investment decisions.

32. In October 1997, Noel and Tucker agreed to merge FGG with Andrés Piedrahita's Littlestone Associates, which was a money management firm also located in New York City. Piedrahita is Noel's son-in-law. With the merger, Littlestone Associates' clients became FGG clients. In order to reflect the new ownership of FGG, Noel, Tucker, and Piedrahita formed FG Limited FG. FG Limited was formed under the laws of Ireland.

9

33. While FG Limited was formed under foreign law, it reported its principal place of business as FGG's New York headquarters, registered to do business in the State of New York, and listed its principal executive office as FGG's New York headquarters. Upon the formation of FG Limited, Fairfield International Managers assigned all of its management contracts with Fairfield Sentry and Greenwich Sentry to FG Limited. Following the assignment of the management contracts to FG Limited, FGG New York Personnel revised the Fairfield Sentry Information Memoranda to list FG Limited as Fairfield Sentry's investment manager, even though all of Fairfield Sentry's assets remained in the discretionary brokerage accounts controlled by BLMIS.

34. In 2002, Noel, Tucker, and others from FGG approached Madoff to inform him FGG would be launching a new fund of funds. The new fund would be open to both U.S. and foreign investors and, as a result, FGG would form a new U.S. entity to be the investment adviser of the fund as well as other FGG operated funds, including the feeder and currency funds. Fearing greater SEC scrutiny, Madoff rejected the idea that a U.S.-based entity would serve in the role as the investment manager of the feeder and currency funds. As a result, FGG formed two new entities, FG Advisers and FG Bermuda.

35. In October 2003, FGG formed FG Advisors as a Delaware limited liability company. FG Advisors is a wholly owned subsidiary of FG Limited. At the same time, FGG formed FG Bermuda under Bermuda law as another wholly owned subsidiary of FG Limited. Upon the formation of FG Advisors and FG Bermuda, FG Limited assigned certain of its management contracts to both entities, including the investment advisory agreements for the three BLMIS feeder funds, Fairfield Sentry, Sigma, Lambda, and Greenwich Sentry, to FG Bermuda. FG Limited remained the placement agent for the same funds.

36. In 2003, with FG Bermuda's entry into the FGG operations, FGG New York Personnel issued new PPMs which listed FG Bermuda as Fairfield Sentry's investment manager and removed all references to the discretionary accounts at BLMIS. The new PPMs also stated FG Limited would remain as Fairfield Sentry's Placement Agent and receive a portion of the management and performance fees paid to FG Bermuda. The same PPMs also disclosed that Fairfield Sentry would pay a percentage fee to FG Advisors for providing administrative services and incurring administrative costs.

37. Prior to 2006, while FG Bermuda purported to manage Fairfield Sentry's, Sigma's, Lambda's, Greenwich Sentry's, and Greenwich Sentry Partners' investments, it did not register as an investment adviser under the Investment Advisers Act of 1940.

38. In 2005 and 2006, the SEC conducted an investigation of BLMIS and its relationship to its feeder funds. While the investigation was ongoing, in an attempt to deflect further SEC inquiry, FG Bermuda registered as an investment adviser under the Investment Advisers Act of 1940. Following FG Bermuda's registration in April 2006, it was required to file Form 13Fs with the SEC that Mark McKeefry, FGG's New York-based general counsel, executed and submitted.

39. After its 2005 and 2006 investigation, the SEC determined that BLMIS, and not FG Bermuda, was the investment manager of Fairfield Sentry. Accordingly, the SEC required Fairfield Sentry to modify its investor communications and PPMs to properly disclose BLMIS as Fairfield Sentry's investment manager for the fund's assets held in the BLMIS accounts.

40. As originally operated, 100% of Fairfield Sentry's assets were in its BLMIS accounts. Beginning in 2003, Fairfield Sentry began investing up to 5% of its assets with other fund managers, all of whom were selected by FGG New York Personnel. FGG organized a

11

number of so-called "seedling funds," with Fairfield Sentry's investment serving as the base. The seedling funds were operated and organized by FGG New York Personnel. Many of the seedling funds, in turn, invested part of their assets back into Fairfield Sentry.

41.     The Trustee incorporates by reference the allegations of the Second Amended Complaint proffered in *Picard v. Fairfield Investment Fund, Ltd*., Adv. Pro. No. 09-01239 (SMB) (Bankr. S.D.N.Y., filed June 26, 2015 as part of the Extraterritoriality Briefing).

Dated: June 26, 2015
      New York, New York

/s/  Thomas L. Long
**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone:  (212) 589-4200
Facsimile:  (212) 589-4201
David J. Sheehan
Thomas L. Long
Catherine E. Woltering

**Baker & Hostetler LLP**
Capital Square
65 E. State St., Suite 2100
Columbus, Ohio 43215-4260
Telephone:  (614) 228-1541
Facsimile:  (614) 462-2616
Brian R. Noethlich

*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and estate of Bernard L. Madoff*