**WINDELS MARX LANE & MITTENDORF, LLP**
156 West 56th Street
New York, New York 10019
Tel: (212) 237-1000
Fax: (212) 262-1215

*Special Counsel for Irving H. Picard, Trustee for*
*the Substantively Consolidated SIPA Liquidation of*
*Bernard L. Madoff Investment Securities LLC*
*and the Estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (SMB) |
| Plaintiff-Applicant, | SIPA Liquidation |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | Adv. Pro. No. 11-02731 (SMB) |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and Bernard L. Madoff, | |
| Plaintiff, | **SUPPLEMENTAL MEMORANDUM OF LAW IN OPPOSITION TO TRINCASTAR CORPORATION'S MOTION TO DISMISS BASED ON EXTRATERRITORIALITY AND IN FURTHER SUPPORT OF THE TRUSTEE'S MOTION FOR LEAVE TO AMEND COMPLAINTS** |
| v. | |
| Trincaster Corporation, | |
| Defendant. | |

The Trustee respectfully submits this memorandum as a supplement to his Main Brief being filed simultaneously herewith in opposition to the motion to dismiss based on extraterritoriality made by defendant Trincastar Corporation ("Trincastar", misspelled as "Trincaster Corporation" in the Complaint) and in further support of the Trustee's motion for leave to amend his Complaint to add the Proffered Allegations.

## BACKGROUND

Trincastar was owned and operated at all relevant times by affiliates of Credit Suisse Group AG ("CS Group") and of CS Group's principal operating subsidiary, Credit Suisse AG ("CS AG"), a major international banking and investment organization which had a significant base of operations in the United States with thousands of U.S. employees, billions of dollars in domestic assets, and a New York headquarters.  (Proffered Allegations at ¶ 7.)  CS AG and certain other Credit Suisse entities are defendants in a separate recovery action by the Trustee, and the Trustee is making separate filings as to the domestic nature of those entities' transactions with BLMIS feeder funds simultaneously herewith.  (*Id*.)

Trincastar was a shareholder in Fairfield Sentry Limited ("Fairfield Sentry").  (Trustee's Complaint at ¶ 2, *id*. at Ex. D.)  Fairfield Sentry invested all or substantially all of its assets with BLMIS.  (*Id*. at ¶ 2.)  Trincastar received $13,311,800 in subsequent transfers of BLMIS customer property from Fairfield Sentry (the "Transfers").  (*Id*. at ¶ 2, *id*. at Ex. D.)

The Trustee's Proffered Allegations demonstrate that the Trustee's action to recover these Transfers does not require an extraterritorial application of SIPA or Bankruptcy Code Section 550.

## THE TRANSFERS AND COMPONENT EVENTS OF TRINCASTAR'S FAIRFIELD SENTRY TRANSACTIONS WERE PREDOMINANTLY DOMESTIC.

Citing to *Maxwell I*, the District Court directed that "the location of the transfers as well as the component events of those transactions"[1] must be analyzed to determine whether a subsequent transfer claim involves a domestic or extraterritorial application of the Code and SIPA.[2] Under the District Court's ruling, the Trustee need only put forth "specific facts suggesting a domestic transfer" to avoid dismissal.[3] This is a fact-based inquiry in which all reasonable inferences should be drawn in the Trustee's favor.[4]

Trincastar argues that simply because it and Fairfield Sentry were formally organized under the laws of foreign countries, the subsequent transfers it received are "purely foreign" and the Trustee's recovery action must be dismissed. This superficial argument disregards the *Maxwell I* analysis directed by the District Court and is inconsistent with Second Circuit extraterritoriality case law that similarly examines a transaction's various connections with the United States.[5] Trincastar's singular focus on place of registration also ignores that, although

---

[1] Extraterritoriality Decision, 513 B.R. at 227 (citing *Maxwell I*, 186 B.R. at 816).

[2] In *Maxwell I*, the court examined all potential connections with the United States by reviewing: (i) the debtor's location; (ii) the defendants' location; (iii) where the defendants engaged in business regarding the transaction; (iv) what transaction and agreements the parties entered into that led to the antecedent debt that the transfers were used to pay; (v) where the parties' relationship was centered when conducting the transaction that triggered the transfers; (vi) the law governing the parties' transactions; and (vii) how the transaction was concluded. *In re Maxwell Commc'n Corp.*, 186 B.R. 807, 816-17 (S.D.N.Y. 1995).

[3] Extraterritoriality Decision, 513 B.R. at 232 n.4.

[4] *See*, *e.g.*, *Anwar v. Fairfield Greenwich, Ltd.*, 728 F. Supp. 2d 372, 402-03 (S.D.N.Y. 2010) (deferring ruling on extraterritoriality at motion to dismiss phase and citing standard that "[t]he court must accept all well-pleaded factual allegations in the complaint as true, and draw all reasonable inferences in the plaintiff's favor.").

[5] *See*, *e.g.*, *Parkcentral Global Hub Ltd. v. Porsche Auto. Holdings SE*, 763 F.3d 198, 217 (2d Cir. 2014); *European Cmty. v. RJR Nabisco, Inc.*, 764 F.3d 129, 141 (2d Cir. 2014); and other cases cited in the Trustee's Main Brief.

registered in the British Virgin Islands, Trincastar had no employees or real office there and was

restricted in doing business there.  (Proffered Allegations at ¶¶ 4-5.)  The Trustee could find no

evidence that Trincastar had any employees of its own.  (*Id*. at ¶ 6.)

The Transfers and component events of Trincastar's Fairfield Sentry transactions were

predominantly domestic.  To begin with, the entire purpose of Trincastar's investments with

Fairfield Sentry was to invest in U.S. securities markets through New York-based investment

adviser BLMIS, and to earn returns on those U.S.-based investments.  Trincastar entered into

subscription agreements with Fairfield Sentry at least three times and in each case affirmed that

it knew (i) Fairfield Sentry invested almost exclusively with a New York-based, SEC-registered

investment adviser (i.e. BLMIS) that invested in the U.S. securities market, and (ii) its own

money would be transferred to that same investment adviser in New York.  (*Id*. at ¶¶ 10-11.)  As

Judge Lifland concluded in a similar matter, "[t]he movement of money to and from BLMIS in

the United States . . . was not fortuitous or incidental; instead, it was 'the ultimate objective' and

the '*raison d'etre*' of the Agreement between" the investor and the feeder fund.[6]

In addition, Trincastar entered into a fee sharing arrangement with a U.S.-based Fairfield

entity to promote investment in Fairfield Sentry, thereby subjecting itself to the potential

application of U.S. law.  (Proffered Allegations at ¶¶ 12-13.)

Trincastar also purposefully used a U.S. bank account and the U.S. banking system to

send subscriptions into and receive redemption payments from Fairfield Sentry, which

redemptions constitute the Transfers at issue.[7]  (Proffered Allegations at ¶¶ 15-16.)  Trincastar

remitted subscriptions at least three times and received redemptions at least six times, and it

---

[6] *Picard v. Bureau of Labor Ins. (In re BLMIS)*, 480 B.R. 501, 513 (Bankr. S.D.N.Y. 2012).

[7] *See, e.g.*, *Picard v. Igoin (In re BLMIS)*, 2015 WL 603209, at *16-17 (Bankr. S.D.N.Y. Feb. 13, 2015) (in the analogous context of personal jurisdiction, repeated use of U.S. bank accounts sufficient).

selected a U.S. bank account at the Bank of New York in New York in the name of CS AG to effect such transfers. (*Id*. at ¶¶ 16-18.) Trincastar also remitted its subscriptions into a U.S. correspondent account at the direction of Fairfield Sentry, which moneys were then ultimately delivered to BLMIS in New York. (*Id*. at ¶ 19.)

Further evidencing the domestic nature of Trincastar's transactions with Fairfield Sentry is that regular and extensive due diligence was conducted by New York personnel at CS AG's headquarters with respect to all of the Credit Suisse group's common BLMIS feeder fund investments, which would have been for the benefit of and shared with Trincastar. (*Id*. at ¶¶ 20-23.) These New York-based CS Group persons analyzed relevant information, and regularly met and/or communicated with New York-based BLMIS feeder fund managers over the course of many years, for this purpose. (*Id*. at ¶ 23.)

Beyond all of the above domestic components, Trincastar's argument that its transactions are purely foreign is wrong because it ignores the reality of Fairfield Sentry, from which it received the Transfers. FGG in New York created, managed, and controlled Fairfield Sentry. (*Id*. at ¶¶ 25-26, 34-36.) Fairfield Sentry was based out of New York and had its principal place of business in New York. (*Id*. at ¶¶ 24, 29.) Although technically registered in the BVI, Fairfield Sentry had no employees or offices there, and at all times, operational decisions were made by FGG employees in New York.[8] (Proffered Allegations at ¶¶ 28-30.) In its BLMIS account opening documents, FGG listed Fairfield Sentry's address as in the United States. (*Id*. at ¶ 31.) Fairfield Sentry's initial and on-going due diligence on BLMIS was conducted in New

---

[8] *See SEC v. Gruss*, 2012 WL 3306166 at *3 (S.D.N.Y. Aug 13, 2012) (finding that issues of fact existed regarding whether an offshore fund was "foreign" for purposes of extraterritoriality where complaint alleged that operational and investment decisions for the offshore fund were made in New York, "such that for all intents and purposes, the [offshore fund] was based in New York").

York, and the operative legal documents for its BLMIS accounts were governed by New York law.  (*Id.* at ¶¶ 33, 35.)  BLMIS in New York served as Fairfield Sentry's investment manager and implemented the split-strike conversion strategy for Fairfield Sentry.  (*Id.* at ¶¶ 38-47.)

## CONCLUSION

For the foregoing reasons and those stated in the Trustee's Main Brief, Trincastar's motion to dismiss should be denied, and the Trustee's motion for leave to amend his Complaint to add the Proffered Allegations should be granted.


Dated: New York, New York
      June 26, 2015

Respectfully submitted,

By: /s/ Howard L. Simon
**WINDELS MARX LANE & MITTENDORF, LLP**
156 West 56th Street
New York, New York 10019
Tel:  (212) 237-1000
Howard L. Simon
Kim M. Longo
Antonio J. Casas
Brian W. Kreutter

*Special Counsel to Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and Bernard L. Madoff*