**WINDELS MARX LANE & MITTENDORF, LLP**
156 West 56th Street
New York, New York 10019
Tel: (212) 237-1000
Fax: (212) 262-1215

*Special Counsel for Irving H. Picard, Trustee*
*for the Substantively Consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities LLC*
*and the Estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (SMB) |
| Plaintiff-Applicant, | SIPA Liquidation (Substantively Consolidated) |
| v. | |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant, | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and Bernard L. Madoff, | Adv. Pro. No. 12-01676 (SMB) |
| Plaintiff, v. CREDIT SUISSE AG, as successor-in-interest to Clariden Leu AG and Bank Leu AG; | **SUPPLEMENTAL MEMORANDUM OF LAW IN OPPOSITION TO CREDIT SUISSE AG'S MOTION TO DISMISS BASED ON EXTRATERRITORIALITY AND IN FURTHER SUPPORT OF THE TRUSTEE'S MOTION FOR LEAVE TO AMEND COMPLAINTS** |
| Defendant. | |

Irving H. Picard (the "Trustee") respectfully submits this memorandum as a supplement to his Main Brief being filed simultaneously herewith in opposition to the motion to dismiss based on extraterritoriality made by defendant Credit Suisse AG ("CS AG"), as successor-in-interest to Clariden Leu AG (*f/k/a* Clariden Bank AG) ("Clariden") and Bank Leu AG ("Bank Leu," together with Clariden, the "Subsequent Transferees") and in further support of the motion for leave to amend his First Amended Complaint to add the Proffered Allegations.

## BACKGROUND

The Subsequent Transferees were sophisticated financial institutions which were at all relevant times part of the Credit Suisse group of companies, and in 2012, merged into Defendant CS AG. (Proffered Allegations at ¶¶ 6-10.) CS AG and certain other Credit Suisse entities are defendants in a separate action by the Trustee, and the Trustee is making separate filings as to the domestic nature of those entities' transactions with BLMIS feeder funds. (*Id*. at ¶ 8.)

The Subsequent Transferees were shareholders in the following funds: Fairfield Sentry Limited ("Fairfield Sentry"), Fairfield Sigma Limited ("Sigma") and Fairfield Lambda Limited ("Lambda", and together with Fairfield Sentry and Sigma, the "Fairfield Funds"); and Kingate Global Fund Ltd. ("Kingate Global", and together with the Fairfield Funds, the "BLMIS Feeder Funds"). (Trustee's First Amended Complaint at ¶ 2, *id*. at Exs. E, G, I, M.) Fairfield Sentry and Kingate Global each invested substantially all of their assets with BLMIS. (Proffered Allegations at ¶ 3.) Sigma and Lambda did not have their own direct BLMIS accounts, but invested 100% of their respective assets in Fairfield Sentry. (*Id*.) The Subsequent Transferees received $49,135,288 in transfers of BLMIS customer property from the BLMIS Feeder Funds (the "Transfers"). (*Id*. at ¶ 1.) The Trustee's Proffered Allegations demonstrate that the Trustee's action to recover these Transfers does not require an extraterritorial application of SIPA or Bankruptcy Code Section 550.

## THE TRANSFERS AND COMPONENT EVENTS OF THE SUBSEQUENT TRANSFEREES' BLMIS FEEDER FUND TRANSACTIONS WERE PREDOMINANTLY DOMESTIC.

Citing to *Maxwell I*, the District Court directed that "the location of the transfers as well as the component events of those transactions"[1] must be analyzed to determine whether a subsequent transfer claim involves a domestic or extraterritorial application of the Code and SIPA.[2] Under the District Court's ruling, the Trustee need only put forth "specific facts suggesting a domestic transfer" to avoid dismissal.[3] This is a fact-based inquiry in which all reasonable inferences should be drawn in the Trustee's favor.[4]

CS AG argues that simply because the Subsequent Transferees and the BLMIS Feeder Funds in which they invested were formally organized under the laws of foreign countries, the subsequent transfers they received are "purely foreign" and the Trustee's recovery action must be dismissed. This superficial argument disregards the *Maxwell I* analysis directed by the District Court and is inconsistent with Second Circuit extraterritoriality case law that similarly examines a transaction's various connections with the United States.[5]

To begin with, the entire purpose of the Subsequent Transferees' investments with the BLMIS Feeder Funds was to invest in U.S. securities markets through New York-based investment adviser BLMIS, and to earn returns on those U.S.-based investments. Specifically, the Subsequent Transferees entered into subscription agreements with the BLMIS Feeder Funds at least 186 times combined and in each case affirmed that they knew (i) the BLMIS Feeder

---

[1] Extraterritoriality Decision, 513 B.R. at 227 (citing *Maxwell I*, 186 B.R. at 816).

[2] *In re Maxwell Commc'n Corp.*, 186 B.R. 807, 816-17 (S.D.N.Y. 1995).

[3] Extraterritoriality Decision, 513 B.R. at 232 n.4.

[4] *See, e.g., Anwar v. Fairfield Greenwich, Ltd.*, 728 F. Supp. 2d 372, 402-03 (S.D.N.Y. 2010).

[5] *See, e.g., Parkcentral Global Hub Ltd. v. Porsche Auto. Holdings SE*, 763 F.3d 198, 217 (2d Cir. 2014); *European Cmty. v. RJR Nabisco, Inc.*, 764 F.3d 129, 141 (2d Cir. 2014); and other cases cited in the Trustee's Main Brief.

Funds invested almost exclusively with a New York-based, SEC-registered investment adviser (i.e. BLMIS) that invested in the U.S. securities market and (ii) that their money would be transferred to that same investment adviser in New York. (Proffered Allegations at ¶¶ 13-14.) As Judge Lifland concluded in a similar matter, "[t]he movement of money to and from BLMIS in the United States . . . was not fortuitous or incidental; instead, it was 'the ultimate objective' and the '*raison d'etre*' of the Agreement between" the investor and the feeder fund.[6]

The express provisions of their agreements with the Fairfield Funds further demonstrate the domestic nature of the Subsequent Transferees' investment transactions with these funds. (Proffered Allegations at ¶¶ 16-19.) The Subsequent Transferees agreed in their subscription agreements with the Fairfield Funds that New York law would govern their investments, and they consented to U.S. jurisdiction. (*Id*. at ¶ 17.) Additional related agreements between Clariden and a U.S.-based Fairfield entity were also governed by U.S. law. (*Id*. at ¶ 19.) Clariden entered into one or more fee sharing agreements with N.Y.-based Fairfield Greenwich Limited to promote investment in the Fairfield Funds, which contained a New York governing law provision. (*Id*. at ¶¶ 18-19.)

The Subsequent Transferees also purposefully and repeatedly used U.S. accounts and the U.S. banking system to send subscriptions into and receive redemption payments from Fairfield Sentry and/or Kingate Global, which redemptions constitute the Transfers at issue from those funds.[7] (Proffered Allegations at ¶¶ 23-24.) The Subsequent Transferees collectively remitted subscriptions at least 163 times and received redemptions at least 139 times, and they selected accounts at HSBC USA or the Bank of New York, both in New York, for these purposes. (*Id*. at

---

[6] *Picard v. Bureau of Labor Ins. (In re BLMIS)*, 480 B.R. 501, 513 (Bankr. S.D.N.Y. 2012).

[7] *See, e.g.*, *Picard v. Igoin (In re BLMIS)*, 2015 WL 603209, at *16-17 (Bankr. S.D.N.Y. Feb. 13, 2015) (in the analogous context of personal jurisdiction, repeated use of U.S. bank accounts sufficient).

3

¶¶ 23-26.) Clariden designated that same Bank of New York account for receiving fees from New York-based FGG affiliate, Fairfield Greenwich Limited. (*Id*. at ¶ 21.) The Subsequent Transferees also remitted their subscriptions into U.S. correspondent accounts, as directed by Fairfield Sentry and Kingate Global, which were ultimately delivered to BLMIS in New York. (*Id*. at ¶ 27.)

Further evidencing the domestic nature of the Subsequent Transferees' transactions is that regular and extensive due diligence was conducted by New York personnel at CS AG's headquarters with respect to all of the Credit Suisse group's common BLMIS Feeder Fund investments, and that the Subsequent Transferees were subject to Credit Suisse's approval processes in connection with such investments. (*Id*. at ¶¶ 28-34.) These New York-based CS AG persons analyzed relevant information, and regularly met and/or communicated with New York-based BLMIS feeder fund managers over the course of many years, which activities would have been for the benefit of and shared with the Subsequent Transferees. (*Id*. at ¶¶ 29, 31-34.)

All of these U.S.-based activities related to the Subsequent Transferees' BLMIS Feeder Fund investments were part of the larger Credit Suisse group of companies' substantial and coordinated U.S. operations, including that of Defendant CS AG, the principal operating subsidiary of CS Group. (*Id*. at ¶¶ 8-10.) For example, CS AG and Clariden together operated a cross-border banking business in Switzerland and New York for decades. (*Id*. at ¶ 10.)

Beyond all of the above domestic components, CS AG's argument that the Subsequent Transferees' transactions are purely foreign is wrong because it ignores the reality of the BLMIS Feeder Funds. The Fairfield Funds, from which the Subsequent Transferees received the vast majority of the Transfers, were based out of New York and had their principal place of business in New York. (*Id*. at ¶¶ 35, 40, 62.) Although technically registered in the BVI, the Fairfield Funds had no employees or offices there, and at all times, operational decisions were made by

FGG employees in New York.[8]  (Proffered Allegations at ¶¶ 39-41, 61-63.)

Kingate Global similarly had no physical offices, no employees, and transacted no meaningful business in the BVI where it was technically registered.  (*Id*. at ¶ 72.)  Instead, Kingate Global operated through investment managers, consultants, and other service providers with substantial connections to the United States.  (*Id*. at ¶¶ 73-74, 82-91.)  BLMIS in New York was the investment manager, executing broker, and custodian for Kingate Global's assets, and Kingate Global's agreements with BLMIS were governed by New York law.  (*Id*. at ¶¶ 79-81.)

Finally, CS AG previously argued in this case that Bankruptcy Code section 546(e)'s safe harbor should shield the Subsequent Transferees' Transfers from suit precisely because of their connection to the U.S. securities markets into which BLMIS purported to invest.[9] This argument is inconsistent with CS AG's current assertion that the Subsequent Transferees' transactions lack sufficient domestic connections for purposes of extraterritoriality.  CS AG should not be allowed to have it both ways, taking advantage of U.S. law when it suits it and running from it when it does not.

## CONCLUSION

For the foregoing reasons and those stated in the Trustee's Main Brief, CS AG's motion to dismiss should be denied, and the Trustee's motion for leave to amend his First Amended Complaint to add the Proffered Allegations should be granted.

---

[8] *See SEC v. Gruss*, 2012 WL 3306166 at *3 (S.D.N.Y. Aug 13, 2012) (finding that issues of fact existed regarding whether an offshore fund was "foreign" for purposes of extraterritoriality where complaint alleged that operational and investment decisions for the offshore fund were made in New York, "such that for all intents and purposes, the [offshore fund] was based in New York").

[9] *See* Brief of *Amici Curiae* Financial Institution Defendants in Support of Appellees and Affirmance of the District Court, *Picard v. Ida Fishman Revocable Trusts (In re Bernard L. Madoff. Inv. Sec. LLC)*, No. 12-2557 (bk) (2d Cir. Jan. 29, 2014), ECF No. 346.

5

| | |
|---|---|
| Dated: New York, New York<br>June 26, 2015 | Respectfully submitted,<br><br>By: /s/ Howard L. Simon<br>**WINDELS MARX LANE & MITTENDORF, LLP**<br>156 West 56th Street<br>New York, New York 10019<br>Tel: (212) 237-1000<br>Howard L. Simon<br>Antonio J. Casas<br>Kim M. Longo<br>Brian W. Kreutter<br><br>*Special Counsel to Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and Bernard L. Madoff* |