SECURITIES INVESTOR PROTECTION
 CORPORATION
805 Fifteenth Street, N.W., Suite 800
Washington, D.C. 20005-2207
Telephone: (202) 371-8300
JOSEPHINE WANG
General Counsel
Email: jwang@sipc.org
KEVIN H. BELL
Senior Associate General Counsel for Dispute Resolution
Email: kbell@sipc.org
CHRISTOPHER H. LAROSA
Senior Associate General Counsel-Litigation
Email: clarosa@sipc.org

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Proc. No. 08-1789 (BRL) |
| | SIPA Liquidation |
| Plaintiff-Applicant, | |
| | (Substantively Consolidated) |
| v. | |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| IN RE: | |
| BERNARD L. MADOFF, | |
| Debtor. | |

**MEMORANDUM OF THE SECURITIES INVESTOR PROTECTION CORPORATION
IN SUPPORT OF THE TRUSTEE'S MOTION TO AFFIRM HIS TREATMENT OF
<u>PROFIT WITHDRAWALS</u>**

## **TABLE OF CONTENTS**

**PAGE**

TABLE OF AUTHORITIES ................................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................................1

BACKGROUND ................................................................................................................................2

ARGUMENT......................................................................................................................................4

    I.    Claimants ratified the Profit Withdrawal Transactions ...........................................4

    II.    Claimants cannot sustain their burden of proof ......................................................8

CONCLUSION.................................................................................................................................11

# **TABLE OF AUTHORITIES**

**CASES:** **PAGE**

*ACE Secs. Corp. v. DB Structured Products, Inc.*, -- N.E.3d --,
   2015 WL 3616244 (N.Y. June 11, 2015)..................................................................7

*In re Adler Coleman Clearing Corp.*, 198 B.R. 70 (Bankr. S.D.N.Y. 1996) ..................................5

*In re Adler Coleman Clearing Corp.*, 204 B.R. 111 (Bankr. S.D.N.Y. 1997) ................................9

*Appleton v. First Nat'l Bank of Ohio*, 62 F.3d 791 (6th Cir. 1995)..................................................4

*In re A.R. Baron Co., Inc.*, 226 B.R. 790 (Bankr. S.D.N.Y. 1998)..................................................9

*In re Bernard L. Madoff Inv. Secs. LLC*, 654 F.3d 229 (2d Cir. 2011), *cert. dismissed*,
   132 S. Ct. 2712 (2012) *and cert. denied*, 133 S. Ct. 24 and 133 S. Ct. 25 (2012).................3, 4

*CarVal Inv'rs UK ltd. v. Giddens (In re Lehman Bros., Inc.)*, 506 B.R. 346 (S.D.N.Y. 2014),
   *aff'd*, -- F.3d --, 2015 WL 3938079 (2d Cir. Jun. 29, 2015)........................................................9

*Chigirinskiy v. Panchenkova*, 2015 WL 1454646 (S.D.N.Y. March 31, 2015) .........................7, 8

*In re John Dawson & Assocs., Inc.*, 289 B.R. 654 (Bankr. N.D. Ill. 2003).....................................5

*In re Klein, Maus & Shire, Inc.*, 301 B.R. 408 (Bankr. S.D.N.Y. 2003) ........................................5

*Luitpold Pharmaceuticals, Inc. v. Ed. Geistlich Söhne A.G. Für Chemische Industrie*,
   784 F.3d 78 (2d Cir. 2015)......................................................................................................7, 8

*In re Mason Hill & Co., Inc.*, 2004 WL 2659579 (Bankr. S.D.N.Y. Oct. 18, 2004)...................5, 6

*Modern Settings, Inc. v. Prudential-Bach Secs., Inc.*, 936 F.2d 640 (2d Cir. 1991) ...................6, 7

*Mosdos Chofetz Chaim, Inc. v. RBS Citizens, N.A.*, 14 F. Supp. 3d 191 (S.D.N.Y. 2014) .............7

*Pitheckoff v. Sec. Inv'r Prot. Corp. (In re Great Eastern Secs., Inc.)*,
   2011 WL 1345152 (S.D.N.Y. Apr. 5, 2011)............................................................................5, 6

*In re Primeline Secs. Corp.*, 295 F.3d 1100 (10th Cir. 2002)..........................................................9

*In re Rausman*, 855 N.Y.S.2d 263 (N.Y. App. Div. 2008).............................................................7

*Regions Bank v. Wieder & Mastroianni, P.C.*, 526 F. Supp. 2d 411 (S.D.N.Y. 2007),
   *aff'd*, 268 F. App'x 17 (2d Cir. 2008)..........................................................................................7

# TABLE OF AUTHORITIES
## cont.

**CASES:**                                                                    **PAGE**

*Richardson Greenshields Secs., Inc. v. Lau*, 819 F. Supp. 1246 (S.D.N.Y. 1993)..........6

*SEC v. Baroff*, 497 F.2d 280 (2d Cir. 1974) ................................................................9

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC*,
    515 B.R. 161 (Bankr. S.D.N.Y. 2014)................................................................8

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC*,
    522 B.R. 41 (Bankr. S.D.N.Y. 2014)..................................................................3

*Sec. Inv'r Prot. Corp. v. Pepperdine Univ. (In re Brentwood Securities, Inc.)*,
    925 F.2d 325 (9th Cir. 1991) ..............................................................................9

*SIPC v. Bernard L. Madoff Inv. Secs. LLC*, 496 B.R. 744 (Bankr. S.D.N.Y. 2013),
    aff'd, 779 F.3d 74 (2d Cir. 2015), *petition for cert docketed*,
    *Peshkin v. Picard*, 14 A1099 (2015)..................................................................5

*SIPC v. Stratton Oakmont*, 229 B.R. 273 (Bankr. S.D.N.Y.), *aff'd sub nom.*,
    *Arford v. Miller*, 239 B.R. 698 (S.D.N.Y. 1999), *aff'd*, 210 F.3d 420 (2d Cir. 2000)...............9

*Stafford v. Giddens (In re New Times Secs. Servs., Inc.)*, 463 F.3d 125 (2d Cir. 2006)..................4

*U.S. Information Systems, Inc. v. Int'l Bhd. of Elec. Workers Local Union Number 3,*
    *AFL-CIO*, 2006 WL 2136249 (S.D.N.Y. Aug. 1, 2006) ........................................10

# TABLE OF AUTHORITIES
**cont.**

**STATUTES AND RULES:** **PAGE**

Securities Investor Protection Act, as amended, 15 U.S.C. §

78fff-2(b) ................................................................................................................................8

Securities Investor Protection Act (2008), 15 U.S.C. §

78*lll*(2) ...................................................................................................................................4
78*lll*(2)(B) ..............................................................................................................................4
78*lll*(4) ...................................................................................................................................5

N.Y. C.P.L.R. § 213(2) ..............................................................................................................7

**PUBLICATIONS AND TREATISES:**

Joseph M. McLaughlin, Jack B. Weinstein, Margaret A. Berger,
   2 *Weinstein's Fed. Evid.* § 406.03 (2d ed. 2014) ..................................................................10

Pursuant to the Court's Order of June 25, 2015, the Securities Investor Protection Corporation ("SIPC") submits this memorandum in support of the motion ("Motion") of Irving H. Picard ("Trustee"), as trustee for the substantively consolidated liquidation of the business of Bernard L. Madoff Investment Securities LLC ("BLMIS") and the estate of Bernard L. Madoff (collectively "Debtor"), to affirm the Trustee's treatment of profit withdrawals.

## PRELIMINARY STATEMENT

The Trustee's Motion arises from challenges by a group of "customer" claimants ("Claimants") to the decision by the Trustee, in applying the Net Investment Method to compute net equity, to treat as cash withdrawals certain amounts reflected in "profit withdrawal" notations on account statements issued to them by BLMIS. As discussed below, each Claimant entered into an account agreement with BLMIS that required the Claimant to object in writing to any errors on an account statement provided to the Claimant by BLMIS. The same provision required the Claimant to make any such objection within ten days after receipt of the relevant statement. Claimants do not deny receiving the relevant statements, but have provided no evidence of any written objection to any of those statements. They have therefore ratified the transactions in question as a matter of law.

Beyond ratification, Claimants have the burden to prove that they did not receive funds from BLMIS on or about the dates and in the amounts reflected in the contested "profit withdrawal" notations and cannot meet that burden. On the contrary, as discussed in detail in the Trustee's memorandum and more briefly below, the "profit withdrawal" notations are corroborated by BLMIS and investor bank records, among other evidence, for the period from December 1998 through December 2008. That evidence is sufficient to demonstrate the existence of a corporate practice by BLMIS in effect for earlier periods.

## BACKGROUND

The facts underlying the Trustee's Motion are aptly and expansively discussed in the Trustee's memorandum. In brief summary, each of the Claimants who object to the Trustee's Motion entered into a "Customer Agreement" with BLMIS. The agreement signed by each of the Claimants included a paragraph requiring the customer to object in writing to the contents of an account statement within ten (10) days of receipt thereof. That paragraph provided, in full, as follows:

> **CONFIRMATIONS AND STATEMENTS**
> Confirmations of transactions and statements for the Customer's Account(s) shall be binding upon the Customer if the Customer does not object, in writing, within ten days after receipt by the Customer. Notice or other communications including margin and maintenance calls delivered or mailed to the address given below shall, until the broker has received notice in writing of a different address, be deemed to have been personally delivered to the Customer whether actually received or not.

(*See*, *e.g.*, Declaration of Vineet Sehgal §§ 6-8, Ex. 2-4 § 16.)

BLMIS issued periodic account statements to investors with accounts at the firm, including Claimants. Claimants have not denied receiving any of the account statements issued by BLMIS with respect to their accounts, including those implicated by the Trustee's Motion. The account statements issued by BLMIS to its account-holders identified "transaction types" and "transaction descriptions." (*See* Expert Report of Lisa M. Collura ("Collura Rep.") § 7; Expert Report of Matthew B. Greenblatt ("Greenblatt Rep.") ¶ 6.) Transaction type notations included: "PW" for profit withdrawal; "CW" for cash withdrawal; or "JRNL" for journal entries. (*See* Collura Rep. at ¶ 7; Greenblatt Rep. at ¶¶ 6, 23-24) Where BLMIS customer statements indicated a "PW" transaction type, the transaction description field generally contained one or more of the words "CHECK," "DIVIDEND," or "INTEREST," sometimes following or preceding a company name, for example, "CHECK VIACOM." (*See* Greenblatt Rep. at ¶¶ 6,

2

23-24.) During his review of the BLMIS books and records, the Trustee determined that certain transactions had a similar transaction description to those transactions coded as "PW" transaction types but were coded instead as "CW" or "JRNL."[1] (*See* Greenblatt Rep. at ¶ 23.)

As discussed in detail in the Trustee's memorandum and supporting materials, for the period from December 1998 through the commencement of the instant liquidation in December 2008, the Trustee's experts were able to reconcile 99% of the Profit Withdrawal Transactions to BLMIS bank account records and to the bank account records of the recipients of the transfers. (See Collura Rep. at ¶ 17.) This Court itself has noted that the cash deposit and withdrawal entries on customer account statements issued by BLMIS were accurate. *See Sec. Inv'r. Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC*, 522 B.R. 41, 47 (Bankr. S.D.N.Y. 2014) (Bernstein, J.) ("In fact, the only accurate entries in the BLMIS records reflected the actual cash deposits and withdrawals in each account").

The Trustee has computed "net equity" in this liquidation using the "Net Investment Method" and that usage has been approved by the Second Circuit. *In re Bernard L. Madoff Inv. Secs. LLC*, 654 F.3d 229 (2d Cir. 2011), *cert. dismissed*, 132 S. Ct. 2712, *and cert. denied*, 132 S. Ct. 24 and 133 S. Ct. 25 (2012) ("*BLMIS*"). Under that method, the Trustee credited a BLMIS investor with the amount of cash deposited by that investor into the investor's BLMIS account, and then deducted from aggregate cash credits the amount of any cash withdrawn by the investor from the account. *See BLMIS*, 654 F.3d at 233-34. For purposes of these computations, the Trustee treated Profit Withdrawal Transactions as cash withdrawals. In accordance with the provisions of this Court's December 23, 2008 Order on Application for Entry of an Order Approving Form and Manner of Publication and Mailing of Notices, Specifying Procedures for

---

[1] For convenience, all transactions notated as PW, CW, or JRNL on account statements issued by BLMIS to its account-holders will be referenced as "Profit Withdrawal Transactions."

3

Filing, Determination, and Adjudication of Claims; and Providing Other Relief ("Procedures Order"), the Trustee issued and mailed to each of the Claimants a Determination describing his disposition of the relevant claim and the basis for the same. (*See* ECF 12 at 6-7.) Claimants objected to those Determinations, but have produced no evidence that, prior to the commencement of this liquidation, they complained at any time to BLMIS about any of the Profit Withdrawal Transactions. Through his Motion, the Trustee seeks entry of an order affirming his net equity computations to the extent based upon his treatment of Profit Withdrawal Transactions as cash withdrawals.

## ARGUMENT

### I. Claimants ratified the Profit Withdrawal Transactions

"Customer" status under SIPA is contingent upon the entrustment of cash or securities to the broker-dealer for the securities account of an investor for one or more purposes identified in SIPA. *See* SIPA §§ 78*lll*(2) (2008) (customer is a person who has a claim on account of securities received, acquired, or held for the securities account of such person "with a view to sale, to cover consummated sales, pursuant to purchase, as collateral security, or for purposes of effecting transfer"); 78*lll*(2)(B) (2008) ("The term 'customer' includes—any person who has deposited cash with the debtor for the purpose of purchasing securities"). *See also*, *e.g.*, *BLMIS*, 654 F.3d at 236 ("'[T]he critical aspect of the 'customer' definition is the entrustment of cash or securities to the broker-dealer *for the purposes of trading securities*'" (quoting *Appleton v. First Nat'l Bank of Ohio*, 62 F.3d 791, 801 (6th Cir. 1995) (emphasis added by Second Circuit)); *Stafford v. Giddens (In re New Times Secs. Servs., Inc.)*, 463 F.3d 125, 128 (2d Cir. 2006) (same). Such status also may arise from the conversion of assets that were held by the broker-dealer for a customer. *See* SIPA §§ 78*lll*(2) (2008) (extending "customer" status to "any person

4

who has a claim against the debtor arising out of sales or conversions of such [custodied] securities"); 78*lll*(4) (2008) (including in "customer property" any customer cash or securities "unlawfully converted" by the debtor). But conversion may be a basis for "customer" status only with respect to property held in custody by the broker-dealer for a customer pursuant to contract, and SIPA's "customer" provisions merely seek to restore to customers property held in custody for them by the broker-dealer pursuant to contract. *See*, *e.g.*, *SIPC v. Bernard L. Madoff Inv. Secs. LLC*, 496 B.R. 744, 759 (Bankr. S.D.N.Y. 2013), (noting that "beyond including converted property as a customer claim, SIPA provides no protection for any other losses caused by 'conversion, fraud, or other broker wrongdoing'"), *aff'd*, 779 F.3d 74 (2d Cir. 2015), *petition for cert. docketed*, *Peshkin v. Picard*, 14A 1099 (2015). Even then, "customer" relief under SIPA is limited to the restitution of cash or securities held in custody by the broker-dealer for the customer. It does not include damages for breach of contract. *See id.* at 759 ("[I]t is well settled that claims are not protected under SIPA when they are for 'damages resulting from a broker's misrepresentations, fraud or breach of contract'" (*quoting In re Klein, Maus & Shire, Inc.*, 301 B.R. 408, 421 (Bankr. S.D.N.Y. 2003)).

Unauthorized transactions by a broker-dealer in a customer account may give rise to a customer claim under SIPA. *See*, *e.g.*, *Pitheckoff v. Sec. Inv'r. Prot. Corp. (In re Great Eastern Secs., Inc.)*, 2011 WL 1345152, at * 4 (S.D.N.Y. Apr. 5, 2011); *In re Mason Hill & Co., Inc.*, 2004 WL 2659579, at * 5 (Bankr. S.D.N.Y. Oct. 18, 2004) (Bernstein, J.); *In re John Dawson & Assocs., Inc.*, 289 B.R. 654, 662 (Bankr. N.D. Ill. 2003); *In re Adler Coleman Clearing Corp.*, 198 B.R. 70, 75 (Bankr. S.D.N.Y. 1996). For this purpose, an unauthorized transaction by a broker-dealer in a customer account is treated as a conversion of customer assets. *See*, *e.g.*, *Mason Hill*, 2004 WL 2659579, at * 5; *John Dawson*, 289 B.R. at 662.

5

"Customer" status is unavailable, however, with respect to an unauthorized account transaction ratified by an investor. *See*, *e.g.*, *Mason Hill*, 2004 WL 2659579, at * 6. An investor ratifies an unauthorized transaction by acquiescing in it, and will be found to have acquiesced if the investor knew the pertinent facts surrounding the trade and manifested a clear intent to approve it. *See*, *e.g.*, *Great Eastern*, 2011 WL 1345152, at * 6; *Richardson Greenshields Secs., Inc. v. Lau*, 819 F. Supp. 1246, 1259 (S.D.N.Y. 1993). Failure to object to a transaction over a long period of time is compelling evidence of such intent. *See Great Eastern*, 2011 WL 1345152, at * 6; *Greenshields*, 819 F.Supp. at 1259. Moreover, if the investor knew of the challenged transaction, the investor bears the burden to demonstrate that this knowledge did not rise to the level of ratification. *See Great Eastern*, 2011 WL 1345152, at * 6; *Greenshields*, 819 F. Supp. at 1259.

Ratification may be deemed to have occurred as a matter of law if the contract between a broker-dealer and an investor requires the investor to object in writing within a specified period of time – usually ten days - to a transaction reflected on an account statement, trade confirmation, or other communication from the broker-dealer. *See*, *e.g.*, *Modern Settings, Inc. v. Prudential-Bach Secs., Inc.*, 936 F.2d 640, 645-46 (2d Cir. 1991); *Great Eastern*, 2011 WL 1345152, at * 6; *Mason Hill*, 2004 WL 2659579, at * 6. Enforcement of these provisions prevents the "cherry picking" of transactions by an investor after the fact and mitigates the prospect of an evidentiary vacuum in post-trade disputes between investor and customer. *See Modern Settings*, 936 F.2d at 645-46; *Mason Hill*, 2004 WL 2659579 at * 6. The Second Circuit explained this rationale in detail in *Modern Settings*:

> The purpose of the ten-day written complaint clause in the customer agreement is to require the customer to memorialize his or her complaint soon after receipt of the account statement rather than waiting to see if the trade is profitable. The writing requirement of the clause insures that unauthorized trading disputes are

6

> not relegated to "swearing contests" between broker and customer. For these reasons, broker-customer agreements requiring written notice of objection within a limited amount of time after the customer receives confirmation of the transaction generally have been enforced by courts.

936 F.2d at 645-46.

In this case, as noted, the Customer Agreements which Claimants entered into with BLMIS required Claimants to object in writing to the contents of an account statement within ten days after receipt of that statement. Claimants have not denied that they received these statements on a timely basis and have presented no evidence that they complained in writing about any of the Profit Withdrawal Transactions. They therefore ratified those transactions as a matter of law, for the reasons discussed above.[2]

---

[2] Most of Claimants' objections also are barred by the applicable statute of limitations. In New York, the statute of limitations for an action for breach of contract is six years. *See* N.Y. C.P.L.R. § 213(2) (McKinney 2004); *Luitpold Pharmaceuticals, Inc. v. Ed. Geistlich Söhne A.G. Für Chemische Industrie*, 784 F.3d 78, 97 (2d Cir. 2015). New York does not apply the "discovery" rule to this limitations period. *ACE Secs. Corp. v. DB Structured Products, Inc.*, -- N.E.3d --, 2015 WL 3616244 (N.Y. June 11, 2015).

Under New York law, conversion suits are subject to a three year statute of limitations. *See, e.g.*, *Chigirinskiy v. Panchenkova*, 2015 WL 1454646, at * 16 (S.D.N.Y. March 31, 2015); *Mosdos Chofetz Chaim, Inc. v. RBS Citizens, N.A.*, 14 F. Supp. 3d 191, 209 (S.D.N.Y. 2014). Where possession is originally lawful, however, a conversion does not occur until the owner makes a demand for the return of the property and the person in possession of the property refuses to return it. *See Chigirinskiy*, 2015 WL 1454646, at * 16; *In re Rausman*, 855 N.Y.S.2d 263, 264 (N.Y. App. Div. 2008). The latter rule, however, does not apply if the lawful custodian of property commits an overt and positive act of conversion of the property by an unlawful sale or disposition of the same. *See Chigirinskiy*, 2015 WL 1454646, at * 16; *Regions Bank v. Wieder & Mastroianni, P.C.*, 526 F. Supp. 2d 411, 414 (S.D.N.Y. 2007), *aff'd*, 268 F. App'x 17 (2d Cir. 2008).

In this case, there is no indication that, prior to the commencement of this liquidation, any of the Claimants complained or filed suit against BLMIS on the basis of the Profit Withdrawal Transactions. If the Profit Withdrawal Transactions were indeed unauthorized and the funds, instead of being remitted to Claimants, were converted by BLMIS, then the delivery by BLMIS to Claimants of account statements reflecting those transactions constituted overt and positive acts of conversion that would have been recognized as such by the Claimants. As a result, the failure by Claimants to complain and instead to rest on their rights for more than three years

## II. Claimants cannot sustain their burden of proof

As noted, in compliance with the Procedures Order, the Trustee issued to each of the Claimants a written Determination describing his disposition of the Claimant's claim and the reasons therefor. Under SIPA, Claimants now have the burden to rebut the Trustee's reasons and to demonstrate how the claim should have been determined. *See, e.g., Sec. Inv'r. Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC*, 515 B.R. 161, 166 (Bankr. S.D.N.Y. 2014) (Bernstein, J.) ("The [customer] claimant [under SIPA] has the burden to establish his status as a 'customer,' and such a showing is not easily met" (citations omitted)).

Allocation of the burden of proof to the claimant arises from the language of SIPA. SIPA provides that a trustee is obligated to satisfy customer claims for net equity to the extent a broker's obligations are ascertainable from the books and records of the debtor or "are otherwise established to the satisfaction of the trustee." *See* SIPA § 78fff-2(b). The emphasis in this language on the debtor's "books and records" and the extent of the broker's obligations indicates that the language encompasses both the nature *and* amount of the debtor's obligations. Moreover, the quoted language indicates that a claimant challenging a trustee's claim determination must rebut that determination "to the satisfaction of the trustee;" *i.e.*, must bear the burden to demonstrate that the trustee's determination is in error and to establish the correct

---

prior to the commencement of the SIPA proceeding on December 11, 2008, would place their claims outside of the limitations period for conversion. *See Chigirinskiy*, 2015 WL 1454646 at * 16. Likewise, any of the Profit Withdrawal Transactions that occurred more than six years prior to December 11, 2008 falls outside the limitations period for breach of contract. *See, e.g., Luitpold*, 784 F.3d at 97. Accordingly, as a matter of law, Claimants would not have a viable "customer" claim for any such transaction that occurred before December 11, 2002, at the earliest.

8

amount of the claimant's net equity. The courts have agreed.[3] *See*, *e.g.*, *In re Primeline Secs. Corp.*, 295 F.3d 1100, 1107 (10th Cir. 2002); *Sec. Inv'r Prot. Corp. v. Pepperdine Univ* (*In re Brentwood Securities, Inc.*), 925 F.2d 325, 328 (9th Cir. 1991); *CarVal Inv'rs UK Ltd. v. Giddens* (*In re Lehman Bros., Inc.*), 506 B.R. 346, 353 (S.D.N.Y. 2014), *aff'd*, -- F.3d --, 2015 WL 3938079 (2d Cir. Jun. 29, 2015).

Further, as the language of SIPA suggests, "customer" status under SIPA is transaction specific. A claimant bears the burden to establish that the claimant is a "customer" with respect to every cash balance, security, or transaction as to which the claimant asserts "customer" status. *See*, *e.g.*, *SEC v. Baroff*, 497 F.2d 280, 282 n. 2 (2d Cir. 1974); *SIPC v. Stratton Oakmont*, 229 B.R. 273, 277 (Bankr. S.D.N.Y.), *aff'd sub nom.*, *Arford v. Miller*, 239 B.R. 698 (S.D.N.Y. 1999), *aff'd*, 210 F.3d 420 (2d Cir. 2000); *In re Adler Coleman Clearing Corp.*, 204 B.R. 111, 115 (Bankr. S.D.N.Y. 1997). Accordingly, a claimant challenging a trustee's determination with respect to a particular transaction bears the burden to rebut that determination.

Claimants here contend that the Trustee erred in determining that they received the amounts reflected in the Profit Withdrawal notations on their BLMIS account statement and that the Trustee should not have deducted those amounts from their aggregate deposits into their BLMIS accounts in computing their net equities. The Claimants have the burden to prove that they never received the subject amounts, but they have not met that burden.

In fact, for the reasons discussed at length in the Trustee's memorandum, the evidence submitted by the Trustee in support of his Motion proves the contrary. As discussed, for

---

[3] Allocation of the burden of proof to the claimant also comports with general bankruptcy policy. As this Court has observed, "[i]n an ordinary bankruptcy, claimants seeking a preferred status bear the burden of showing that they are within the class of eligible persons and that their transactions are protected under the Bankruptcy Code." *In re A.R. Baron Co., Inc.*, 226 B.R. 790, 795 (Bankr. S.D.N.Y. 1998). The rule applies with respect to "customer" status in a SIPA proceeding. *Id.*

example, for the period from December 1998 through December 2008, the Trustee's experts have determined that, in nearly all cases, the Profit Withdrawal notations on account statements issued by BLMIS to its customers correspond to BLMIS and investor bank records demonstrating delivery to investors of funds in the amounts shown on the statements. That evidence is sufficient both to establish receipt by Claimants of the amounts now challenged by them, particularly in the absence of any compelling documentary evidence to the contrary.

It is also sufficient to demonstrate that BLMIS maintained a consistent corporate practice of sending investor funds in the amounts reflected in corresponding Profit Withdrawal notations on the account statements issued and mailed to the same investors. Under Rule 406 of the Federal Rules of Evidence, the existence of that practice over a ten-year period is sufficient to support the inference that BLMIS maintained the same practice prior to 1998 and that the Profit Withdrawal notations on account statements issued for earlier periods are also accurate. *See* Fed. R. Evid. 406 ("Evidence of a person's habit or an organization's routine practice may be admitted to prove that on a particular occasion the person or organization acted in accordance with the habit or routine practice"). *See also*, *e.g.*, *U.S. Information Systems, Inc. v. Int'l Bhd. of Elec. Workers Local Union Number 3, AFL-CIO*, 2006 WL 2136249, at * 18 (S.D.N.Y. Aug. 1, 2006) ("Routine practice evidence is more probative than character evidence because routines consist of automatic, nonvolitional acts"); Joseph M. McLaughlin, Jack B. Weinstein, Margaret A. Berger, 2 *Weinstein's Fed. Evid.* § 406.03 (2d ed. 2014) ("Evidence of a routine practice is particularly persuasive in the business context because of the profit-driven need for regularity"). In addition, for the reasons discussed in detail in the Trustee's memorandum, expert extrapolation from existing evidence is both permissible and persuasive in a Ponzi scheme featuring incomplete records.

## **CONCLUSION**

For the reasons stated, the Court should grant the Trustee's Motion.

Date: July 14, 2015
      Washington, D.C.

                          Respectfully submitted,

                          JOSEPHINE WANG
                          General Counsel

                          KEVIN H. BELL
                          Senior Associate General Counsel
                           For Dispute Resolution

                          <u>/s/ Christopher H. LaRosa</u>
                          CHRISTOPHER H. LAROSA
                          Senior Associate General Counsel – Litigation

                          SECURITIES INVESTOR PROTECTION
                           CORPORATION
                          805 15th Street, N.W., Suite 800
                          Washington, D.C. 20005
                          Telephone: (202) 371-8300
                          E-mail: <u>jwang@sipc.org</u>
                                        <u>kbell@sipc.org</u>
                                        <u>clarosa@sipc.org</u>