Page 1

```
 1  UNITED STATES BANKRUPTCY COURT
 2  SOUTHERN DISTRICT OF NEW YORK
 3  Adv. Proc. No. 08-01789-smb (SIPA LIQUIDATION)
 4  - - - - - - - - - - - - - - - - - - - -x
 5  In the Matters of:
 6  SECURITIES INVESTOR PROTECTION CORPORATION,
 7              Plaintiff,
 8  v.
 9  BERNARD L. MADOFF INVESTMENT SECURITIES LLC,
10              Defendant.
11  - - - - - - - - - - - - - - - - - - - -x
12  BERNARD L. MADOFF,
13              Debtor.
14  - - - - - - - - - - - - - - - - - - - -x
15              United States Bankruptcy Court
16              One Bowling Green
17              New York, New York
18
19              February 25, 2015
20              10:03 AM
21
22
23  B E F O R E:
24  HON. STUART M. BERNSTEIN
25  U.S. BANKRUPTCY JUDGE
```

1

2  08-01789-smb Securities Investor Protection Corporation v.

3  Bernard L. Madoff Investment Securities

4

5  HEARING re Trustee's Motion to Affirm Trustee's Determinations

6  Denying Claims of Claimants Holding Interests in S&P and P&S

7  Associates Partnerships

...

25  Transcribed by:  Lisa Beck

Veritext Legal Solutions
212-267-6868    www.veritext.com    516-608-2400

```
 1   A P P E A R A N C E S :
 2   BAKER & HOSTETLER LLP
 3        Attorneys for Irving H. Picard, Trustee for the
 4         Substantively Consolidated SIPA Liquidation of
 5         Bernard L. Madoff Investment Securities LLC and
 6         the Estate of Bernard L. Madoff
 7        45 Rockefeller Plaza
 8        New York, NY 10111
 9
10   BY:   AMY E. VANDERWAL, ESQ.
11         JORIAN L. ROSE, ESQ.
12
13
14   BECKER & POLIAKOFF LLP
15        Attorneys for Claimants, P&S Associates General
16         Partnership
17        45 Broadway
18        8th Floor
19        New York, NY 10006
20
21   BY:   JULIE GORCHKOVA, ESQ.
22
23
24
25
```

```
 1
 2   SECURITIES INVESTOR PROTECTION CORPORATION
 3        805 15th Street, N.W.
 4        Suite 800
 5        Washington, DC 20005
 6
 7   BY:   NATHANAEL S. KELLEY, ESQ.
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

1           THE COURT:  Suppose there was that evidence in this
2   case, would it then be the trustee's position that they're
3   customers?
4           MS. VANDERWAL:  If they -- just because BLMIS or there
5   were other people who had invested?
6           THE COURT:  Let's say we got an affidavit from
7   somebody who said, you know, I told -- the managing partner
8   told me that this money was going to be invested through the
9   partnership with BLMIS and that's why I did it.
10          MS. VANDERWAL:  And our position is that that would
11  not be sufficient --
12          THE COURT:  Why not?
13          MS. VANDERWAL:  -- because it doesn't satisfy the most
14  essential factor that has been identified from this body of
15  case law which is that the purported customer owned the funds
16  that are invested with BLMIS.
17          THE COURT:  All right.  Thank you.
18          MS. VANDERWAL:  Thank you.
19          THE COURT:  S&P Associates and P&S Associates,
20  collectively "the Partnerships", are Florida general
21  partnerships that had accounts with BLMIS and essentially acted
22  as feeder funds investing all of their partnership funds with
23  BLMIS.  This motion concerns the customer status of the general
24  partners of the partnerships.  They never invested directly
25  with BLMIS.  Instead, they invested directly with the

1    partnerships or indirectly with entities that became general

2    partners of the partnerships and invested their own funds

3    through the partnerships.

4            For the sake of convenience, I will refer to anyone on

5    invested directly or indirectly with the partnerships as

6    partners.

7            Except as noted, the facts are not in dispute and are

8    derived from the declarations of Bik, BIK, Cheema, C-H-E-E-M-A,

9    and Vineet, V-I-N-E-E-T, Sehgal, SEHGAL, submitted on this

10   motion and the documents attached to those declarations.  The

11   partnerships were formed in 1992 and were governed by nearly

12   identical partnership agreements.  Their purpose was to invest

13   in all types of market-placed securities, Partnership

14   Agreements, Section 2.02, and were funded with initial capital

15   contributions by the partners.  Partnership Agreements, Section

16   4.01.  Michael D. Sullivan and Greg Powell served as the

17   managing general partners and had the exclusive authority to

18   manage and control the day-to-day operations of the partnership

19   and maintain the partnership property.  Partnership Agreements,

20   Section 8.01.  Nevertheless, the general partners could have a

21   say in the selection of brokers.  For example, a majority of

22   the partners in interest could cause the partnership to

23   terminate or allow a specific broker selected by the majority

24   and grant their selected broker discretionary investment powers

25   with the partnerships' investment funds.  Partnership

1   Agreement, Section 2.02.

2              In addition, the partnership agreements at Section

3   8.04 stated that the partners would review any broker's

4   engagement with the partnership at the regular quarterly

5   meetings.

6              As noted, the partnerships maintained accounts with

7   BLMIS and following the commencement of the SIPA liquidation,

8   filed customer claims with the trustee based on their alleged

9   account statements dated November 30, 2008.  According to the

10  trustee, the partnerships' claims have been allowed in an

11  amended amount.  Each has received either payment of or the

12  benefit of a 500,000 dollar SIPC advance and interim

13  distributions have been made to each of them from the customer

14  fund maintained by the trustee.

15             Numerous partners also filed their own customer

16  claims.  The trustee disallowed those claims on the basis that

17  the partners were not customers of BLMIS within the meaning of

18  SIPA.  One hundred fifty-eight partners objected to his claim

19  determinations and this motion seeks to affirm his disallowance

20  of the partners' claims.  The motion elicited the response from

21  78 partners represented by the law firm, Becker and Poliakoff

22  LLP.  Although approximately 50 percent of the objecting

23  partners did not respond to the motion, I will refer to the

24  entire group as the objecting partners.

25             In SIPC v. BLMIS, 515 B.R. 161 (Bankr. S.D.N.Y. 2014),

1  the Court reviewed the decisions by this Court, the district

2  court and the Second Circuit relating to the customer status of

3  persons who did not have accounts with BLMIS and instead

4  invested with entities that, in turn, invested directly with

5  BLMIS.  To summarize briefly, customer status under SIPA is

6  narrowly interpreted.  The "critical aspect" of the customer

7  definition is "the entrustment of cash or securities to the

8  broker-dealer for the purposes of trading securities".  The

9  indicia of customer status include a direct financial

10 relationship with BLMIS, a property interest in the funds

11 invested directly with BLMIS, securities accounts with BLMIS,

12 control over the account holders' investments with BLMIS and

13 identification of the alleged customer in BLMIS' books and

14 records.  Finally, the claimant has the burden of showing that

15 he or she is a customer, id. at page 165-68.

16         The objecting partners have failed to sustain their

17 burden of proof.  They did not entrust any cash or securities

18 with BLMIS.  They invested with the partnerships who, in turn,

19 invested with BLMIS.  They have no direct financial

20 relationship with BLMIS.  They did not deposit money with or

21 withdraw money from BLMIS or receive investment statements or

22 tax statements in their own names from BLMIS.  The documents

23 produced by the trustee show that all communications with or by

24 the partnerships went through Sullivan or Powell and all

25 deposits and withdrawals were made by them in the names of the

1   partnerships.  Thus, even if BLMIS knew or surmised that the

2   partnerships' BLMIS accounts were funded with partners'

3   contributions, there is no evidence that BLMIS maintained

4   records identifying the partners or even knew who they were,

5   and the fact remains that the partners did not entrust anything

6   to BLMIS.

7           The objecting partners nevertheless contend that the

8   controlling decisions including Kruse v. Bricklayers and

9   Bricklayers and Allied Craftsman Local 2 Annuity Fund, (In re

10  BLMIS), 708 F.3d 422 (2nd Cir. 2013), and SIPC v. Morgan,

11  Kennedy and Co., 533 F.2d 1314 (2nd Cir.), cert. denied. 426

12  U.S. 936 (1976), are distinguishable for three reasons.  First,

13  the partners had a specific interest under Florida law in all

14  partnership property invested with BLMIS.  Second, BLMIS knew

15  that each partner had made a decision to entrust his or her

16  funds with BLMIS.  Third, the partners had the ability to

17  control the investment decisions because they had the authority

18  to allow or terminate a specific broker and allow a broker to

19  have discretionary investment powers with the partnerships'

20  funds.

21          The partners had no interest in the property at the

22  partnerships under current Florida law.  Florida Revised

23  Uniform Partnership Act ("Florida revised UPA") declares that a

24  partnership is a legal entity distinct from its partners.

25  Florida statute Section 620.8201(1).  "Property acquired by a

1  partnership is property of the partnership and not of the
2  partners individually," id. Section 620.8203, and "Partnership
3  property is owned by the partnership as an entity not by the
4  partners as co-owners", id. Section 620.8501.
5       In addition, the partnership agreements provide that
6  all property acquired by the partnerships would be owned by and
7  in the name of the partnership and each partner expressly
8  waived his right to require the partition of any partnership
9  property.  Partnership Agreement, Section 6.01.
10      The objecting partners did not dispute the current
11 state of the law or the text of the partnership agreements.
12 Instead, they argue that the partnerships were organized in
13 1992 under the former Florida Uniform Partnership Act ("Florida
14 UPA") and Section 620.675 of that law provided, among other
15 things, that "at the inception of an incident to the
16 partnership relationship, each partner acquires certain
17 property rights [including] his rights in specific partnership
18 property."
19      The Florida UPA was repealed by the Florida Revised
20 UPA, effective January 1, 1998, see 6 - Part 1 U.L.A. 24
21 (2001), but the objecting partners imply that the repeal did
22 not affect the rights granted under the repealed law.  Assuming
23 the former law governed the partners' rights, they still had no
24 right to the funds in the partnerships' BLMIS accounts.  Former
25 Florida statute Section 620.68 provided that subject to the

Page 33

1  Florida UPA and the partnership agreement, a partner could not

2  possess specific partnership property for non-partnership

3  purposes absent the consent of all partners.  There is no

4  evidence of such consent here.  But even if there was, it would

5  be irrelevant.  The partnership agreements provided, as noted,

6  that the partners had no right to the partnership property and

7  waived their right to partition.  Accordingly, the partner had

8  no right to possess the partnerships' BLMIS investments under

9  the prior law and certainly has no right in the specific

10 partnership property under the current law.

11         Next, the objecting partners offered no admissible

12 evidence to support their contention that BLMIS knew that they

13 had invested with the partnerships because they wanted to

14 invest with BLMIS.  Instead, the objecting partners cite to

15 their responses to the trustee's request for admissions.  The

16 responses were signed by Helen Chaitman, Esquire, the attorney

17 for the objecting partners.  And the relevant response consists

18 of multiple hearsay.  It is offered to prove that the objecting

19 partners told the managing partners who told BLMIS that the

20 objecting partners were investing in the partnerships in order

21 to invest in BLMIS.  It is noteworthy that no objecting partner

22 offered an affidavit to that effect that he told the managing

23 general partners that he was investing in the partnerships in

24 order to invest in BLMIS.  Nor did the objecting partners

25 submit an affidavit from either of the managing general

1  partners attesting to what they told representatives of BLMIS.
2       Furthermore, the partnership agreements did not
3  mention Madoff, a significant omission given that the
4  partnership agreements were dated December 11, 1992 and that
5  BLMIS trading agreements were dated December 28, 1992.  Thus,
6  the partnerships with BLMIS investors from the onset.  Nor is
7  there any documentary evidence in the form of offering
8  memoranda or partnership meeting minutes indicating that the
9  partnerships solicited partners with a promise to invest in
10 BLMIS, reviewed and/or approved BLMIS as a broker, invested
11 BLMIS with discretionary trading authority or that the
12 partnership ever informed the partners of its relationship with
13 Madoff or BLMIS until Madoff's arrest.  In fact, when Sullivan
14 informed the P&S partners that Madoff had been arrested and all
15 of the partnerships' funds had been invested with BLMIS, his
16 letter did not suggest that the partners already knew that the
17 partnership was invested with BLMIS.
18      But even if the objecting partners or some of them
19 sought to invest in the partnerships in order to invest
20 indirectly with BLMIS, they still would not be customers.  They
21 entrusted their money to the partnerships not BLMIS and they
22 dealt with the partnerships not BLMIS.  However, the
23 partnerships hold allowed customer claims and received
24 distributions.  The partners have the right under Florida's
25 partnership laws and the partnership agreements to look to the

08-01789-cgm   Doc 10705-2   Filed 07/16/15   Entered 07/16/15 15:48:01   Exhibit 11
Pg 13 of 16

Page 35

1    partnerships to recover at least some of their losses.

2            Lastly, although the partnership agreements authorized

3    the majority of the partners to direct the partnerships to

4    select or terminate a particular broker or arm a broker with

5    the discretionary trading authority, there is no evidence that

6    this ever occurred.  Moreover, the right belonged to 51 percent

7    of the partners acting as a majority and did not empower any

8    individual to dictate an investment, select the broker or

9    withdraw money from BLMIS.  As an individual, the partner could

10   only withdraw his investment from the partnership.  He had no

11   right or ability to control his "share" of the partnerships'

12   investments with BLMIS.

13           But even if the partners had some level of control

14   over the partnerships' investments, "that fact, standing alone,

15   would be insufficient to confer 'customer' status on appellants

16   [the partners] given that, individually, they 'made no

17   purchases, transacted no business, and had no dealings

18   whatsoever' with BLMIS."  Kruse, 708 F.3d at 427 (quoting

19   Morgan, Kennedy, 533 F.2d at 1318).

20           Accordingly, the objecting partners have failed to

21   sustain their burden of proving that they are SIPA customers of

22   BLMIS.  The Court has considered the objecting partners

23   remaining arguments and concludes that they lack merit.  Settle

24   order on notice to counsel to the objecting partners and to the

25   objecting partners that appeared pro se.

Veritext Legal Solutions
212-267-6868         www.veritext.com         516-608-2400

Page 36

1          Thank you.

2          MS. VANDERWAL:  Thank you, Your Honor.

3     (Whereupon these proceedings were concluded at 10:47 a.m.)

```
 1
 2                          I N D E X
 3
 4                         R U L I N G S
 5    DESCRIPTION                                    PAGE    LINE
 6    Trustee's motion to affirm his                  35      23
 7    determination denying claims of claimants
 8    holding interests in S&P and P&S Associates
 9    Partnerships granted
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 38

C E R T I F I C A T I O N

I, Lisa Beck, certify that the foregoing transcript is a true and accurate record of the proceedings.

_____

Lisa Beck (CET**D 486)

AAERT Certified Electronic Transcriber

Date: February 26, 2015

Veritext Legal Solutions

330 Old Country Rd

Suite 300

Mineola, NY 11501