# EXHIBIT A

**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, New York  10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee*
*for the Substantively Consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities LLC*
*and Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | No. 08-01789 (BRL) |
| Plaintiff-Applicant, | SIPA LIQUIDATION |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and Bernard L. Madoff, | Adv. Pro. No. 09-01305 (BRL) |
| Plaintiff, | |
| v. | |
| COHMAD SECURITIES CORPORATION, *et al.*, | |
| Defendant. | |

---

## TRUSTEE IRVING H. PICARD'S FIRST SET OF REQUESTS FOR THE PRODUCTION OF DOCUMENTS TO ALVIN J. DELAIRE, JR.

---

**PLEASE TAKE NOTICE** that pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Rule 7034 of the Federal Rules of Bankruptcy Procedure and the Local Civil Rules of this Court, Irving H. Picard, trustee (the "Trustee") for the Liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS"), requests that Alvin J. Delaire, Jr. ("Defendant," "You" or "Your") produce documents responsive to the document requests set forth herein, as well as a privilege log (if necessary) and deliver the same to the office of Baker Hostetler LLP, c/o Oren J. Warshavsky, 45 Rockefeller Plaza, New York, New York 10111 within 30 days hereof.

### DEFINITIONS

1.      The definitions contained in Rule 26.3 of the Local Rules of the United States District Court for the Southern and Eastern Districts of New York, as adopted in Rule 7026-1 of the Local Bankruptcy Rules for the Southern District of New York, are hereby incorporated by reference.

2.      As used herein, the term "Cohmad" shall mean and include Cohmad Securities Corporation, any current and former parent, subsidiary, affiliate, division, predecessor, successor, owner, principal, member, officer, director, shareholder, manager, agent or representative thereof, including without limitation M.C. Securities Corporation. The term "Cohmad" shall also include all of the Cohmad Representatives, as that term is defined herein.

3.      As used herein, the term "Cohmad Representative" shall include all employees of Cohmad, including without limitation, Maurice "Sonny" Cohn, Marcia B. Cohn, Robert Jaffe, Stanley Mervin Berman, Richard Spring, Alvin "Sonny" Delaire, Jonathan Greenberg, Cyril Jalon, Morton Kurzrok, Linda McCurdy and Rosalie Buccellato.

4.      "BLMIS" refers to Bernard L. Madoff Investment Securities LLC and any and all related persons and entities affiliated with BLMIS, including without limitation: Abtech Industries Inc.; BLM Air Charter LLC; Blumenfeld Development Group; BREA Associates LLC; Cohn, Delaire & Madoff, Inc.; Delta Fund I, L.P.; Madoff Brokerage & Trading Technologies LLC; Madoff Energy Holdings LLC; Madoff Energy III LLC; Madoff Energy IV LLC; Madoff Energy LLC; Madoff Family LLC (a/k/a Madoff Family Fund LLC); Madoff Realty LLC/Madoff Realty Associates/Madoff Realty Trust; Madoff Securities International Ltd.; Madoff Technologies LLC; Primex Holdings LLC; Realty Associates Madoff II; The Madoff Family Foundation (f/k/a Bernard L. and Ruth Madoff Foundation); Yacht Bull Corp (registered by Campbell Corporate Services LTD); Bernard L. Madoff; Ruth Madoff; Andrew Madoff; Mark Madoff; Peter Madoff; Marion Madoff; Shana Madoff (also Skoller or Swanson); Roger Madoff; Annette Bongiorno; Jo Ann "Jodi" Crupi; Eric Lipkin; Irwin Lipkin; Frank DiPascali; Erin Reardon; David Kugel; Belle Jones; Darlene Concepcion, or any other directors, employees, partners, corporate parent, subsidiaries and/or affiliates.

5.      As used herein, the term "Cohn, Delaire & Madoff" shall mean and include Cohn, Delaire & Madoff, Inc., any current and former parent, subsidiary, affiliate, division, predecessor, successor, owner, principal, member, officer, director, shareholder, manager, agent or representative thereof.

3

6.      "Complaint" means the First Amended Complaint filed by the Trustee in this adversary proceeding on October 8, 2009.

7.      "Answer" means the Defendant's Answer to the Complaint filed on October 14, 2011.

8.      "Communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise), including without limitation:  (a) conversations, meetings and discussions in person; (b) conversations, meetings and discussions by telephone or through telephonic messages; and (c) written and electronic correspondence, including communications by email.

9.      "Concerning" means relating to, referring to, describing, evidencing or constituting.

10.      "Debt" means liability on a claim, as defined in 11 U.S.C. § 101(12).

11.      "Defendant," "You" or "Your" shall mean Alvin J. Delaire, Jr., also known as Alvin "Sonny" Delaire and/or Sonny Delaire, as well as his agents and/or his representatives.

12.      The term "document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Federal Rule of Civil Procedure 34(a), including, without limitation, electronic or computerized data compilations.  A draft or non-identical copy is a separate document within the meaning of this term.

13.      "Person" means any natural person or any legal entity including without limitation any business or governmental entity or association.

14.     "Transfer" and "Transfers" mean any payment or payments made by BLMIS to Cohmad, including without limitation any funds, property, or other value conveyed to Cohmad by check, wire transfer, debit, credit to Cohmad, and/or the transfer or return to Cohmad of property, or through any other means by BLMIS.

15.     "Subsequent Transfer" and "Subsequent Transfers" mean any Transfer or Transfers (as defined herein) conveyed by Cohmad to another person.

16.     "Cohmad BLMIS Accounts" means the 1,378 BLMIS accounts referred to in Exhibits 1, 6 and 7 of the Complaint as well as any other BLMIS account held at any time and/or any account having any connection to BLMIS.

17.     "Cohmad BLMIS Accountholder" means any individual or entity with a direct or indirect interest in any Cohmad BLMIS Account.

18.     For all purposes herein, spelling, grammar, syntax, abbreviations, idioms and proper nouns shall be construed and interpreted to give proper meaning and consistency to its context.

19.     The following rules of construction apply to these Requests:

    a.     "Any" and "All" shall be deemed to include the other;

    b.     "And" and "Or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of these Requests all responses that might otherwise be construed to be outside of its scope;

    c.     "All" and "Each" shall be construed as "all and each"; and

    d.     The singular form of any word includes the plural and *vice versa*.

20.     Reference to any person that is not a natural person and is not otherwise defined herein refers to and includes any current or former parent, subsidiary, affiliate,

division, branch, agency, representative office, predecessor, successor, principal,

member, director, officer, shareholder, manager, employee, attorney-in-fact, attorney,

nominee, agent or representative of such person.

**INSTRUCTIONS**

1.      All documents shall be identified by the request to which they are

primarily responsive or be produced as they are maintained in the usual course of

business.

2.      Produce all documents and all other materials described below in Your

actual or constructive possession, custody, or control, including in the possession,

custody or control of a current or former employee, wherever those documents and

materials are maintained, including on personal computers, PDAs, wireless devices or

web-based mail systems such as Gmail, Yahoo or the equivalent.

3.      Produce all documents maintained on paper, electronically stored

information, electronic mail and instant messaging platforms regardless of whether the

electronic mail or instant messaging platform operates on Your own server or Bloomberg

or Reuters or similar servers and platforms.  Produce all documents, computerized data or

content stored on electromagnetic media even if they are designated as drafts or as

deleted.  Produce all voicemail messages, audio files, all e-mail messages, text messages

and all other formats, including without limitation, word processing, electronic

spreadsheets, images, databases, digital photocopier memory and any other memory

storage devices such as fax machines or scanners, intranet system data, internet system

data, telephone or cellular telephone calling records or data compilations.

4.      Produce the original of each document requested together with all non-identical copies and drafts of that document.  If the original of a document cannot be located, a copy should be produced in lieu thereof and should be legible and bound or stapled in the same manner as the original.  Multiple versions of documents, an e-mail or its attachment distributed to multiple recipients or any other non-identical copy of a document are separate documents within the meaning of this instruction.

5.      Documents not otherwise responsive to these Requests should be produced if such documents mention, discuss, refer to, explain or concern one or more documents that are called for by these Requests, if such documents are attached to, enclosed with or accompany documents called for by these Requests or if such documents constitute routing slips, transmittal memoranda or letters, comments, evaluations or similar materials.

6.      Documents attached to each other should not be separated; separate documents should not be attached to each other.

7.      Documents should include all exhibits or appendices which are referenced in, attached to, included or are a part of the requested documents.  Include all related content, including without limitation attachments to documents, linked documents and appended documents, as well as descriptions of each document's organization such as custodians, files, etc.

8.      You should produce the original of each document requested.  If the original of a document cannot be located or it is unreasonable to produce the original, a fair and accurate copy should be produced in lieu thereof.

9.      If a request calls for information concerning a Transfer or Subsequent Transfer, redemption or withdrawal, include documents that reflect the account name and number for the account the funds were transferred from and to, method of transfer (i.e., wire, check, etc.), date of, amount and the reason for the Transfer or Subsequent Transfer, redemption or withdrawal.

10.     If any document, or any part thereof, is not produced based on a claim of attorney-client privilege, work-product protection or any other privilege, then in answer to such request or part thereof, for each such document:

a.      Identify the type, title and subject matter of the document;

b.      State the place, date and manner of preparation of the document;

c.      Identify the author, addressee and recipient of the document; and

d.      State the nature of the legal privilege, or work-product protection and the factual basis for the claim.

11.     With respect to each document to which an objection as to production is made, state the following:

a.      Nature of the document;

b.      Date of the document;

c.      Name and title of the person to whom the document was addressed and copied;

d.      Name and title of the person who prepared and/or sent the document;

e.      General subject matter of the document;

f.      All documents referred to or accompanying such documents;

g.      Number of pages in the document; and

h.    Specific ground on which the objection is made.

12.    No part of any request shall be left unanswered merely because an objection has been interposed to another part of the request.

13.    If an objection is made to any request or part thereof under the Federal Rules of Bankruptcy Procedure 7034, the objection shall state with specificity all grounds for that objection.

14.    If a request is objected to as unduly burdensome, You shall (i) indicate the nature of the burden involved in providing the response requested; and (ii) set forth a proposal as to a less burdensome response that would provide responsive information.

15.    All requests herein incorporate Rules 7026-7037 of the Federal Rules of Bankruptcy Procedure, Rules 26-37 of the Federal Rules of Civil Procedure and Local Civil Rules for the United States Bankruptcy Court, Southern District of New York 7026-7037.

16.    To the extent a document sought herein was at one time, but is no longer, in Your actual or constructive possession, custody, or control, state whether it: (i) is missing or lost; (ii) has been destroyed; (iii) has been transferred to others; and/or (iv) has been otherwise disposed of.  In each instance, identify the document; state the time period during which it was maintained; state the circumstance surrounding authorization for such disposition thereof and the date thereof; identify each person having knowledge of the circumstances of the disposition thereof; and identify each person who had possession, custody or control of the document, to whom it was available or who had knowledge of the document and/or the contents thereof.  Documents prepared prior to,

but which relate or refer to, the time period covered by these documents are to be identified and produced.

17.     Unless otherwise limited herein, the relevant time period applicable to these demands is January 1, 1960 to the present.

18.     These Requests are deemed to be continuing and all disclosures and responses must be supplemented in accordance with Federal Rule of Civil Procedure 26(e).

## MANNER OF PRODUCTION

All documents produced to the Trustee shall be provided in either native file ("native") or single-page 300 dpi-resolution group IV TIF format ("tiff") format as specified below, along with appropriately formatted industry-standard database load files, and accompanied by true and correct copies or representations of unaltered attendant metadata. Where documents are produced in tiff format, each document shall be produced along with a multi-page, document-level searchable text file ("searchable text") as rendered by an industry-standard text extraction program in the case of electronic originals or by an industry-standard Optical Character Recognition ("ocr") program in the case of scanned paper documents.  Searchable text of documents shall not be produced as fielded data within the ".dat file" as described below.

1.     Database load files and production media structure

Database load files shall consist of: (1) a comma-delimited values (".dat") file containing: production document identifier information, data designed to preserve "parent and child" relationships within document "families", reasonably accessible and properly

preserved metadata (or bibliographic coding in the case of paper documents), custodian

or document source information, as well as native file loading/linking information (where

applicable); and (2) an Opticon ("opt") file to facilitate the loading of tiff images.  Load

files should be provided in a root-level folder named "Data", images shall be provided

within a root level "Images" folder containing reasonably structured subfolders, and

searchable text files shall be provided in a single root-level "Text" folder.

      2.      <u>Electronic documents and data, generally</u>

Documents and other responsive data or materials created, stored, or displayed on

electronic or electro-magnetic media shall be produced in the order in which the

documents are or were stored in the ordinary course of business, including all reasonably

accessible metadata, custodian or document source information, and searchable text as to

allow the Trustee through a reasonable and modest effort, to fairly, accurately and

completely access, search and display, comprehend and assess the documents' true and

original content.

      3.      <u>Emails and attachments, and other email account-related documents</u>

All documents and accompanying metadata created and/or stored in the ordinary

course of business within commercial, off-the-shelf e-mail systems including but not

limited to Microsoft Exchange™, Lotus Notes™ or Novell Groupwise™ shall be

produced in tiff format, accompanying metadata, and searchable text files or, alternately,

in a format that fairly, accurately, and completely represents each document in such a

manner as to make the document reasonably useable, manageable, and comprehendible

by the Trustee.

4.      Documents and data created or stored in or by structured electronic
        databases

With the exclusion of email and email account-related documents and data, all

documents and accompanying metadata created and/or stored in structured electronic

databases or files shall be produced in a format that enables the Trustee to reasonably

manage and import those documents into a useable, coherent database.  The documents

must be accompanied with reasonably detailed, clear and focused documentation

explaining the documents' content and format including but not limited to data

dictionaries and diagrams.  Some acceptable formats, if and only if provided with

definitive file, table and field level schemas include:

(a) XML format files;

(b) Microsoft SQL databases;

(c) Access databases; and/or

(d) fixed or variable length ASCII delimited files.

5.      Spreadsheets, multimedia, and non-standard file types

All documents generated or stored in software such as Microsoft Excel or other

commercially available spreadsheet programs, as well as any multimedia files such as

audio or video, shall be produced in their native format, along with an accompanying

placeholder image in tiff format indicating a native file has been produced.  A

"Nativelink" entry shall be included in the .dat load file indicating the relative file path to

each native file on the production media. To the extent the party has other file types that

do not readily or easily and accurately convert to tiff and searchable text, the party may

elect to produce those files in native format subject to the other requirements listed

12

herein.  Native files may be produced within a separate root-level folder structure on deliverable media entitled "Natives."

6.      "Other" electronic documents

All other documents and accompanying metadata and embedded data created or stored in unstructured files generated by commercially available software systems (excluding e-mails, structured electronic databases, spreadsheets, or multimedia) such as but not limited to word processing (such as Microsoft Word), image files (such as Adobe .pdf files, and other formats), and text files shall be produced in tiff and searchable text format in the order the files are or were stored in the ordinary course of business.

7.      Paper documents

Documents originally created or stored on paper shall be produced in tiff format. Relationships between documents shall be identified within the Relativity .dat file utilizing document identifier numbers to express parent document/child attachment boundaries, folder boundaries, and other groupings.  In addition, the searchable text of each document shall be provided as a multi-page text file as provided for by these instructions.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

1.      All documents and/or communications concerning any securities and/or brokerage license(s) or registration(s) held by You, including without limitation, dates of licenses or registration and current status of licenses or registrations.

2.      All documents and/or communications concerning the organization, formation and structure of Cohmad.

3.      All documents and/or communications concerning Your ownership of Cohmad.

4.      All documents and/or communications concerning Your duties and responsibilities at Cohmad, including without limitation, Your duties and responsibilities as a Registered Representative of Cohmad.

5.      All documents concerning the organization, formation, structure and business of Cohn, Delaire & Madoff.

6.      All documents concerning Your association, registration and/or employment within the financial industry.

7.      All documents and/or communications concerning Cohmad BLMIS Accounts opened, originated or referred by You.

8.      All documents and/or communications concerning Cohmad BLMIS Accounts for which You were listed as the registered representative.

9.      All tax returns prepared by or for Defendant.

10.      All documents concerning Defendant's investment decisions or strategies.

11.      All documents and/or communications concerning sales strategies of the Cohmad Representatives.

12.      All documents and/or communications concerning solicitation of clients or potential clients, rejected or otherwise.

13.      All documents concerning Cohmad BLMIS Accountholder qualifications.

14

14.    All documents and/or communications concerning the promotion or marketing of Cohmad, BLMIS and/or Madoff.

15.    All documents and/or communications concerning accounting firm or accountant referrals for Cohmad BLMIS Accountholders.

16.    All documents and/or communications concerning any investment account maintained by or for the benefit of Defendant.

17.    All documents and/or communications concerning any customer account referred by Cohmad to BLMIS or maintained by Cohmad, including without limitation the Cohmad BLMIS Accounts.

18.    All documents and/or communications concerning statements and/or trade confirmations for the Cohmad BLMIS Accounts.

19.    All documents and/or communications concerning monies, commissions, remuneration and/or other benefits conferred upon You by Cohmad, BLMIS and/or Madoff.

20.    All documents and/or communications concerning monies, commissions, remuneration and/or other benefits conferred upon Cohmad's Representatives.

21.    All documents concerning Defendant's bank accounts or brokerage accounts in which any funds or other consideration was received and/or transferred from and/or provided by BLMIS or Cohmad.

22.    All documents and/or communications concerning Your selection of BLMIS investments.

23.     All documents and/or communications concerning selection of BLMIS as an asset manager.

24.     All documents and/or communications concerning any account ever held by Defendant with BLMIS.

25.     All documents and/or communications concerning any account ever held by Defendant with Cohmad.

26.     All documents and/or communications concerning the performance of BLMIS, including without limitation, any bookkeeping of BLMIS's trades, assets and/or returns.

27.     All documents and/or communications concerning any inquiry, request for documents, subpoena, investigation, arbitration or litigation concerning Defendant, Cohmad or BLMIS.

28.     All documents concerning any communication and/or agreements between Defendant and any other person concerning Cohmad and/or BLMIS.

29.     All documents concerning communications between Defendant and BLMIS concerning any account held or maintained by BLMIS.

30.     All documents and/or communications concerning any social or personal relationship between Defendant and BLMIS.

31.     All documents and/or communications concerning any social or personal relationship between Defendant and Madoff.

32.     All documents and/or communications concerning meetings between Defendant and BLMIS, including, but not limited to, meetings during which other persons were also present.

33.    All documents and/or communications relating to Your employment or engagement with Cohmad and/or BLMIS.

34.    All documents and/or communications relating to any training and sale strategies during Your employment or engagement with Cohmad and/or BLMIS.

35.    All documents and/or communications concerning complaints or questions from investors received by Defendant or Cohmad regarding BLMIS or Madoff.

36.    All documents and/or communications concerning any instructions given to clients or prospective clients not to contact BLMIS or Madoff.

37.    All documents and/or communications concerning any efforts by You, Cohmad Representatives and/or Cohmad to analyze the purported trading activity and/or other operations conducted by BLMIS and/or Madoff.

38.    All documents and/or communications concerning the investment strategies of BLMIS and/or Madoff.

39.    All documents and/or communications concerning the "Cohmad Cash Database," as defined in the Complaint at Paragraph 69, including, without limitation account payment schedules, statements and/or reports.

40.    All documents and/or communications between Defendant and/or the Cohmad Representatives on the one hand and Cohmad BLMIS Accountholders on the other.

41.    All documents and/or communications between Defendant and/or the Cohmad Representatives on the one hand and prospective investors in either Cohmad or BLMIS on the other.

42.    All documents and/or communications concerning BLMIS's financial condition, solvency or ability to timely pay its debts.

43.    All documents and/or communications concerning any corporate or financial inconsistencies, discrepancies or irregularities concerning BLMIS.

44.    All documents and/or communications concerning investigations and/or examinations of BLMIS, including, without limitation, any due diligence, advisory opinions, research, advice or warnings concerning BLMIS or its investments.

45.    All documents and/or communications between Defendant and Cohmad's accountants and/or auditors regarding BLMIS and/or Madoff.

46.    All documents and/or communications concerning the disclosure or non-disclosure of BLMIS and/or Madoff in promotion or marketing materials.

47.    All documents and/or communications concerning any refusal by BLMIS or Madoff to personally meet with clients or prospective investors.

48.    All documents and/or communications concerning industry or market rate of returns on investments during the relevant time period.

49.    All documents and/or communications concerning Defendant's receipt and review of BLMIS-related account statements and/or trade confirmations.

50.    All documents and/or communications concerning the clearance of trades by Cohmad.

51.    All documents and/or communications concerning the clearance of trades by or on behalf of BLMIS.

52.      All documents and/or communications concerning BLMIS's performance that was provided to Cohmad BLMIS Account Holders.

53.      To the extent not previously requested, all documents and/or communications concerning each Transfer, including without limitation the date of the Transfer, the amount of the Transfer, the account name and account number for the account the funds were transferred from, the account name and account number the funds were transferred to, the method of transfer (wire, check, etc.) and the reason for the Transfer.

54.      All documents and/or communications concerning each Subsequent Transfer, including without limitation the date of the Subsequent Transfer, the amount of the Subsequent Transfer, the account name and account number for the account the funds were transferred from, the account name and account number for the account the funds were transferred to, the method of transfer (wire, check, etc.) and reason for the Subsequent Transfer.

55.      To the extent not previously requested, all documents and/or communications that support or otherwise are relevant to any of the defenses raised by Defendant in this action, including without limitation, Affirmative Defenses One through Thirty-Seven in Defendant's Answer to the Complaint.

56.      To the extent not previously requested, all documents and/or communications concerning BLMIS.

57.      To the extent not previously requested, all documents and/or communications concerning Cohmad.

58.    To the extent not previously requested, all documents and/or

communications between Defendant and BLMIS.

59.    To the extent not previously requested, all documents and/or

communications between Defendant and Cohmad.

Date:  New York, New York
       December 22, 2011

Of Counsel:

Lan Hoang
Email: lhoang@bakerlaw.com
Michelle R. Kaplan
Email: mkaplan@bakerlaw.com
Carrie Longstaff
Email: clongstaff@bakerlaw.com
Tatiana Markel
Email: tmarkel@bakerlaw.com
Jessie A. Schweller
Email:  jschweller@bakerlaw.com

By */s/  Oren J. Warshavsky*

**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
Oren J. Warshavsky
Email: owarshavsky@bakerlaw.com
Brian F. Allen
Email:  ballen@bakerlaw.com
Lindsey A. Shoshany
Email:  lshoshany@bakerlaw.com
Dominic A. Gentile
Email: dgentile@bakerlaw.com

*Attorneys for Irving H. Picard, Trustee for the*
*Substantively Consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities*
*LLC and Bernard L. Madoff*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and accurate copy of the foregoing was served this

22nd day of December, 2011 by electronic mail upon the following:

<u>Counsel to Defendant Alvin J. Delaire, Jr.</u>

Mark A. Blount
Email: mblount@tessercohen.com
John J. Lavin
Email: jlavin@tessercohen.com

_____ *s/Dawn Larkin-Wallace*_____
Dawn Larkin-Wallace

**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, New York  10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee*
*for the Substantively Consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities LLC*
*and Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | No. 08-01789 (BRL) |
| Plaintiff-Applicant, | SIPA LIQUIDATION |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and Bernard L. Madoff, | Adv. Pro. No. 09-01305 (BRL) |
| Plaintiff, | |
| v. | |
| COHMAD SECURITIES CORPORATION, *et al.*, | |
| Defendants. | |

## TRUSTEE IRVING H. PICARD'S FIRST SET OF REQUESTS FOR THE PRODUCTION OF DOCUMENTS TO CAROL DELAIRE

**PLEASE TAKE NOTICE** that pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Rule 7034 of the Federal Rules of Bankruptcy Procedure and the Local Civil Rules of this Court, Irving H. Picard, Trustee (the "Trustee") for the Liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS"), requests that Carol Delaire ("Defendant," "You" or "Your") produce documents responsive to the document requests set forth herein, as well as a privilege log (if necessary) and deliver the same to the office of Baker Hostetler LLP, c/o Oren J. Warshavsky, 45 Rockefeller Plaza, New York, New York 10111 within 30 days hereof.

## DEFINITIONS

1.      The definitions contained in Rule 26.3 of the Local Rules of the United States District Court for the Southern and Eastern Districts of New York, as adopted in Rule 7026-1 of the Local Bankruptcy Rules for the Southern District of New York, are hereby incorporated by reference.

2.      "Defendant," "You" or "Your" shall mean Carol Delaire, her agents, and/or representatives.

3.      As used herein, the term "Cohmad" shall mean and include Cohmad Securities Corporation, any current and former parent, subsidiary, affiliate, division, predecessor, successor, owner, principal, member, officer, director, shareholder, manager, agent or representative thereof, including without limitation M.C. Securities

Corporation. The term "Cohmad" shall also include all of the Cohmad Representatives, as that term is defined herein.

4. As used herein, the term "Cohmad Representative" shall include all employees of Cohmad, including without limitation, Maurice "Sonny" Cohn, Marcia Cohn, Robert Jaffe, Stanley Merwin Berman, Richard Spring, Alvin "Sonny" Delaire, Jonathan Greenberg, Cyril Jalon, Morton Kurzrok, Linda Schoenheimer McCurdy and Rosalie Buccellato.

5. "BLMIS" refers to Bernard L. Madoff Investment Securities LLC and any and all related persons and entities affiliated with BLMIS, including without limitation: Abtech Industries Inc.; BLM Air Charter LLC; Blumenfeld Development Group; BREA Associates LLC; Cohn, Delaire & Madoff, Inc.; Delta Fund I, L.P.; Madoff Brokerage & Trading Technologies LLC; Madoff Energy Holdings LLC; Madoff Energy III LLC; Madoff Energy IV LLC; Madoff Energy LLC; Madoff Family LLC (a/k/a Madoff Family Fund LLC); Madoff Realty LLC/Madoff Realty Associates/Madoff Realty Trust; Madoff Securities International Ltd.; Madoff Technologies LLC; Primex Holdings LLC; Realty Associates Madoff II; The Madoff Family Foundation (f/k/a Bernard L. and Ruth Madoff Foundation); Yacht Bull Corp (registered by Campbell Corporate Services LTD); Bernard L. Madoff; Ruth Madoff; Andrew Madoff; the late Mark Madoff; Peter Madoff; Marion Madoff; Shana Madoff (also Skoller or Swanson); Roger Madoff; Annette Bongiorno; Jo Ann "Jodi" Crupi; Eric Lipkin; Irwin Lipkin; Frank DiPascali; Erin Reardon; David Kugel; Belle Jones; Darlene Concepcion, or any other directors, employees, partners, corporate parent, subsidiaries and/or affiliates.

6.      "Complaint" means the First Amended Complaint filed by the Trustee in this adversary proceeding on October 8, 2009.

7.      "Answer" means the Defendant's Answer to the Complaint filed on October 14, 2011.

8.      "Communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise), including without limitation: (a) conversations, meetings and discussions in person; (b) conversations, meetings and discussions by telephone or through telephonic messages; and (c) written and electronic correspondence, including communications by e-mail.

9.      "Concerning" means relating to, referring to, describing, evidencing or constituting.

10.     "Debt" means liability on a claim, as defined in 11 U.S.C. § 101(12).

11.     The term "document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Federal Rule of Civil Procedure 34(a), including, without limitation, electronic or computerized data compilations. A draft or non-identical copy is a separate document within the meaning of this term.

12.     "Person" means any natural person or any legal entity including without limitation any business or governmental entity or association.

13.     "Transfer" and "Transfers" mean any payment or payments made by BLMIS to Defendant, including without limitation any funds, property, or other value conveyed to Defendant by check, wire transfer, debit, credit to Defendant's Accounts (as

that term is defined herein), and/or the transfer or return to Defendant of property, or

through any other means by BLMIS.

14.     "Subsequent Transfer" and "Subsequent Transfers" mean any Transfer or

Transfers (as defined herein) by Cohmad to another person.

15.     The "Accounts" means the BLMIS accounts set forth in Exhibit 1 to the

Complaint and/or any other BLMIS account in which Defendant has an interest,

including without limitation the accounts bearing numbers 1D0014, 1D0015 and 1H0044.

16.     Unless otherwise limited herein, the relevant time period applicable to

these demands is the period between and including the date on which Defendant first

invested with BLMIS and/or Cohmad through the present.

17.     For all purposes herein, spelling, grammar, syntax, abbreviations, idioms

and proper nouns shall be construed and interpreted to give proper meaning and

consistency to its context.

18.     The following rules of construction apply to these Requests:

        a.      "Any" and "All" shall be deemed to include the other;

        b.      "And" and "Or" shall be construed either disjunctively or

conjunctively as necessary to bring within the scope of these Requests all

responses that might otherwise be construed to be outside of its scope;

        c.      "All" and "Each" shall be construed as "all and each"; and

        d.      The singular form of any word includes the plural and *vice versa*.

19.     Reference to any person that is not a natural person and is not otherwise

defined herein refers to and includes any current or former parent, subsidiary, affiliate,

division, branch, agency, representative office, predecessor, successor, principal,

member, director, officer, shareholder, manager, employee, attorney-in-fact, attorney,

nominee, agent or representative of such person.

## INSTRUCTIONS

1.      All documents shall be identified by the request to which they are

primarily responsive or be produced as they are maintained in the usual course of

business.

2.      Produce all documents and all other materials described below in Your

actual or constructive possession, custody, or control, including in the possession,

custody or control of a current or former employee, wherever those documents and

materials are maintained, including on personal computers, PDAs, wireless devices or

web-based mail systems such as Gmail, Yahoo or the equivalent.

3.      Produce all documents maintained on paper, electronically stored

information, electronic mail and instant messaging platforms regardless of whether the

electronic mail or instant messaging platform operates on Your own server or Bloomberg

or Reuters or similar servers and platforms.  Produce all documents, computerized data or

content stored on electromagnetic media even if they are designated as drafts or as

deleted.  Produce all voice-mail messages, audio files, all e-mail messages, text messages

and all other formats, including without limitation, word processing, electronic

spreadsheets, images, databases, digital photocopier memory and any other memory

storage devices such as fax machines or scanners, intranet system data, internet system

data, telephone or cellular telephone calling records or data compilations.

4.      Produce the original of each document requested together with all non-

identical copies and drafts of that document.  If the original of a document cannot be

located, a copy should be produced in lieu thereof and should be legible and bound or

stapled in the same manner as the original.  Multiple versions of documents, an e-mail or

its attachment distributed to multiple recipients or any other non-identical copy of a

document are separate documents within the meaning of this instruction.

5.      Documents not otherwise responsive to these Requests should be

produced if such documents mention, discuss, refer to, explain or concern one or more

documents that are called for by these Requests, if such documents are attached to,

enclosed with or accompany documents called for by these Requests or if such

documents constitute routing slips, transmittal memoranda or letters, comments,

evaluations or similar materials.

6.      Documents attached to each other should not be separated; separate

documents should not be attached to each other.

7.      Documents should include all exhibits or appendices which are referenced

in, attached to, included or are a part of the requested documents.  Include all related

content, including without limitation attachments to documents, linked documents and

appended documents, as well as descriptions of each document's organization such as

custodians, files, etc.

8.      You should produce the original of each document requested.  If the

original of a document cannot be located or it is unreasonable to produce the original, a

fair and accurate copy should be produced in lieu thereof.

9.      If a request calls for information concerning a Transfer or Subsequent

Transfer, redemption or withdrawal, include documents that reflect the account name and

number for the account the funds were transferred from and to, method of transfer (i.e.,

wire, check, etc.), date of, amount and the reason for the Transfer or Subsequent Transfer,

redemption or withdrawal.

10.     If any document, or any part thereof, is not produced based on a claim of

attorney-client privilege, work-product protection or any other privilege, then in answer

to such request or part thereof, for each such document:

    a.     Identify the type, title and subject matter of the document;

    b.     State the place, date and manner of preparation of the document;

    c.     Identify the author, addressee and recipient of the document; and

    d.     State the nature of the legal privilege, or work-product protection and the factual basis for the claim.

11.     With respect to each document to which an objection as to production is

made, state the following:

    a.     Nature of the document;

    b.     Date of the document;

    c.     Name and title of the person to whom the document was addressed and copied;

    d.     Name and title of the person who prepared and/or sent the document;

    e.     General subject matter of the document;

    f.     All documents referred to or accompanying such documents;

    g.     Number of pages in the document; and

    h.     Specific ground on which the objection is made.

12.     No part of any request shall be left unanswered merely because an objection has been interposed to another part of the request.

13.     If an objection is made to any request or part thereof under the Federal Rules of Bankruptcy Procedure 7034, the objection shall state with specificity all grounds for that objection.

14.     If a request is objected to as unduly burdensome, You shall (i) indicate the nature of the burden involved in providing the response requested; and (ii) set forth a proposal as to a less burdensome response that would provide responsive information.

15.     All requests herein incorporate Rules 7026-7037 of the Federal Rules of Bankruptcy Procedure, Rules 26-37 of the Federal Rules of Civil Procedure and Local Civil Rules for the United States Bankruptcy Court, Southern District of New York 7026-7037.

16.     To the extent a document sought herein was at one time, but is no longer, in Your actual or constructive possession, custody, or control, state whether it: (i) is missing or lost; (ii) has been destroyed; (iii) has been transferred to others; and/or (iv) has been otherwise disposed of.  In each instance, identify the document; state the time period during which it was maintained; state the circumstance surrounding authorization for such disposition thereof and the date thereof; identify each person having knowledge of the circumstances of the disposition thereof; and identify each person who had possession, custody or control of the document, to whom it was available or who had knowledge of the document and/or the contents thereof.  Documents prepared prior to, but which relate or refer to, the time period covered by these documents are to be identified and produced.

17.    These Requests are deemed to be continuing and all disclosures and responses must be supplemented in accordance with Federal Rule of Civil Procedure Rule 26(e).

## MANNER OF PRODUCTION

All documents produced to the Trustee shall be provided in either native file ("native") or single-page 300 dpi-resolution group IV TIF format ("tiff") format as specified below, along with appropriately formatted industry-standard database load files, and accompanied by true and correct copies or representations of unaltered attendant metadata. Where documents are produced in tiff format, each document shall be produced along with a multi-page, document-level searchable text file ("searchable text") as rendered by an industry-standard text extraction program in the case of electronic originals or by an industry-standard Optical Character Recognition ("ocr") program in the case of scanned paper documents. Searchable text of documents shall not be produced as fielded data within the ".dat file" as described below.

1.    Database load files and production media structure

Database load files shall consist of: (1) a comma-delimited values (".dat") file containing: production document identifier information, data designed to preserve "parent and child" relationships within document "families", reasonably accessible and properly preserved metadata (or bibliographic coding in the case of paper documents), custodian or document source information, as well as native file loading/linking information (where applicable); and (2) an Opticon (".opt") file to facilitate the loading of tiff images. Load files should be provided in a root-level folder named "Data", images shall be provided within a root level "Images" folder containing reasonably structured subfolders, and

10

searchable text files shall be provided in a single root-level "Text" folder.

    2.    <u>Electronic documents and data, generally</u>

Documents and other responsive data or materials created, stored, or displayed on electronic or electro-magnetic media shall be produced in the order in which the documents are or were stored in the ordinary course of business, including all reasonably accessible metadata, custodian or document source information, and searchable text as to allow the Trustee through a reasonable and modest effort, to fairly, accurately and completely access, search and display, comprehend and assess the documents' true and original content.

    3.    <u>E-mails and attachments, and other e-mail account-related documents</u>

All documents and accompanying metadata created and/or stored in the ordinary course of business within commercial, off-the-shelf e-mail systems including but not limited to Microsoft Exchange™, Lotus Notes™ or Novell Groupwise™ shall be produced in tiff format, accompanying metadata, and searchable text files or, alternately, in a format that fairly, accurately, and completely represents each document in such a manner as to make the document reasonably useable, manageable, and comprehendible by the Trustee.

    4.    <u>Documents and data created or stored in or by structured electronic databases</u>

With the exclusion of e-mail and e-mail account-related documents and data, all documents and accompanying metadata created and/or stored in structured electronic databases or files shall be produced in a format that enables the Trustee to reasonably manage and import those documents into a useable, coherent database.  The documents

must be accompanied with reasonably detailed, clear and focused documentation

explaining the documents' content and format including but not limited to data

dictionaries and diagrams.  Some acceptable formats, if and only if provided with

definitive file, table and field level schemas include:

>   (a) XML format files;

>   (b) Microsoft SQL databases;

>   (c) Access databases; and/or

>   (d) fixed or variable length ASCII delimited files.

>   5.      Spreadsheets, multimedia, and non-standard file types

All documents generated or stored in software such as Microsoft Excel or other

commercially available spreadsheet programs, as well as any multimedia files such as

audio or video, shall be produced in their native format, along with an accompanying

placeholder image in tiff format indicating a native file has been produced.  A

"Nativelink" entry shall be included in the .dat load file indicating the relative file path to

each native file on the production media. To the extent the party has other file types that

do not readily or easily and accurately convert to tiff and searchable text, the party may

elect to produce those files in native format subject to the other requirements listed

herein.  Native files may be produced within a separate root-level folder structure on

deliverable media entitled "Natives."

>   6.      "Other" electronic documents

All other documents and accompanying metadata and embedded data created or

stored in unstructured files generated by commercially available software systems

(excluding e-mails, structured electronic databases, spreadsheets, or multimedia) such as but not limited to word processing (such as Microsoft Word), image files (such as Adobe .pdf files, and other formats), and text files shall be produced in tiff and searchable text format in the order the files are or were stored in the ordinary course of business.

      7.    <u>Paper documents</u>

Documents originally created or stored on paper shall be produced in tiff format. Relationships between documents shall be identified within the Relativity .dat file utilizing document identifier numbers to express parent document/child attachment boundaries, folder boundaries, and other groupings.  In addition, the searchable text of each document shall be provided as a multi-page text file as provided for by these instructions.

## <u>REQUESTS FOR PRODUCTION OF DOCUMENTS</u>

      1.    All documents and/or communications concerning the Accounts, including without limitation, account statements, trade confirmations or other summaries or reports of the financial performance, status, value, balance or amount of the Accounts.

      2.    All documents and/or communications concerning any investment account maintained by or for the benefit of Defendant.

      3.    All documents and/or communications concerning any bank accounts held by or for the benefit of Defendant.

      4.    All financial statements prepared by or for the benefit of Defendant, including, without limitation, all drafts, supporting schedules, work papers, journal entries, account ledgers and trial balances.

      5.    All tax returns prepared by or for Defendant.

6.      All documents and/or communications concerning the promotion or marketing of Cohmad and/or BLMIS.

7.      All documents and/or communications concerning Cohmad's and/or BLMIS's offering statements.

8.      All documents and/or communications concerning any Transfers between Defendant and any person.

9.      All documents and/or communications concerning any Transfers between Defendant and BLMIS.

10.     All documents and/or communications concerning any Transfers between Defendant and Cohmad.

11.     All documents and/or communications concerning Cohmad's and/or BLMIS's compliance with statutory and regulatory obligations.

12.     All documents and/or communications concerning management fees, administrative fees, performance fees, remuneration and/or other benefits paid to any person as a result monies invested in the Accounts.

13.     All documents and/or communications concerning the performance of BLMIS and/or Cohmad.

14.     All documents and/or communications concerning any efforts by You and/or Cohmad to analyze, investigate, evaluate or examine the purported trading activity and/or other operations conducted by BLMIS and/or Madoff.

15.     All documents and/or communications concerning the investment strategies of Defendant.

16.    All documents and/or communications concerning the investment strategies of BLMIS and/or Cohmad.

17.    All documents and/or communications between Defendant and her representatives and/or agents.

18.    All documents and/or communications between Defendant and BLMIS.

19.    All documents and/or communications between Defendant and Cohmad.

20.    All documents and/or communications from any accountants, auditors, accounting firms or auditing firms concerning Defendant, Cohmad and/or BLMIS.

21.    To the extent not previously requested, all documents and/or communications concerning each Transfer, including without limitation the date of the Transfer, the amount of the Transfer, the account name and account number for the account the funds were transferred from, the account name and account number the funds were transferred to, the method of transfer (wire, check, etc.) and the reason for the Transfer.

22.    All documents and/or communications concerning each Subsequent Transfer, including without limitation the date of the Subsequent Transfer, the amount of the Subsequent Transfer, the account name and account number for the account the funds were transferred from, the account name and account number for the account the funds were transferred to, the method of transfer (wire, check, etc.) and reason for the Subsequent Transfer.

23.    All documents and/or communications concerning any inquiry, request for documents, subpoena, investigation, arbitration or litigation concerning Defendant, Cohmad and/or BLMIS.

24.     To the extent not previously requested, all documents and/or

communications that support or otherwise are relevant to any and all defenses raised by

You in this action, including without limitation those identified as Affirmative Defenses

One through Thirty-Six in Your Answer to the Complaint.

25.     To the extent not previously requested, all documents that were or should

be identified pursuant to Rule 26(a) by or in Defendant's Initial Disclosures.

26.     To the extent not previously requested, all documents and/or

communications concerning BLMIS.

27.     To the extent not previously requested, all documents and/or

communications concerning Cohmad.

Date:  New York, New York
       December 22, 2011


Of Counsel:                                     By /s/ Oren J. Warshavsky
Lan Hoang                                       **Baker & Hostetler LLP**
E-mail: lhoang@bakerlaw.com                     45 Rockefeller Plaza
Michelle R. Kaplan                              New York, New York 10111
E-mail: mkaplan@bakerlaw.com                    Telephone: (212) 589-4200
Carrie Longstaff                                Facsimile: (212) 589-4201
E-mail: clongstaff@bakerlaw.com                 Oren J. Warshavsky
Tatiana Markel                                  E-mail: owarshavsky@bakerlaw.com
E-mail: tmarkel@bakerlaw.com                    Brian F. Allen
Jessie A. Schweller                             E-mail:  ballen@bakerlaw.com
E-mail: jschweller@bakerlaw.com                 Lindsey A. Shoshany
                                                E-mail:  lshoshany@bakerlaw.com
                                                Dominic A. Gentile
                                                E-mail: dgentile@bakerlaw.com

                                                *Attorneys for Irving H. Picard, Trustee for the*
                                                *Substantively Consolidated SIPA Liquidation*
                                                *of Bernard L. Madoff Investment Securities*
                                                *LLC and Bernard L. Madoff*

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and accurate copy of the foregoing was served this

22nd day of December, 2011 by electronic mail upon the following:

Counsel to Defendants Alvin Delaire and Carol Delaire

Mark A. Blount
E-mail: mblount@tessercohen.com
John J. Lavin
E-mail: jlavin@tessercohen.com


_____*s/Dawn Larkin-Wallace*_____
Dawn Larkin-Wallace