# Exhibit A

## ACCOUNTING SERVICES AGREEMENT

THIS ACCOUNTING SERVICES AGREEMENT (this "**Agreement**") is entered into as of January 1, 2004 by and between LEGACY CAPITAL LIMITED, a British Virgin Islands corporation (the "**Fund**"), and KHRONOS LLC, a New York limited liability company (the "**Accountant**").

WHEREAS, the Fund seeks to retain the Accountant to perform certain financial and accounting services, and the Accountant agrees to perform such services;

NOW THEREFORE IT IS HEREBY AGREED as follows:

1. **Appointment.** The Fund hereby retains the Accountant to perform, and the Accountant hereby agrees to perform, certain financial and accounting functions on behalf of the Fund, upon the terms and conditions hereinafter appearing.

2. **Financial and Accounting Functions; Delegation.** During the continuance of, and subject to and in accordance with, this Agreement, the Accountant shall have the responsibility to perform the services set forth on the "Services Schedule" attached hereto. The Accountant is authorized to delegate to a service provider any of the duties undertaken by the Accountant in this Agreement, and the Fund agrees that any such delegation shall not give rise to any additional responsibility or liability on the part of the Accountant unless and except to the extent of the selection of the service provider to which duties are delegated is grossly negligent.

3. **Remuneration.**

    (a) In consideration of the Accountant undertaking the duties and providing the services set forth in this Agreement, the Fund shall pay to the Accountant the Accounting Fee as set forth in the Fee Schedule attached hereto.

    (b) The Accountant shall bear its own overhead and other internal operating costs, but shall be reimbursed by the Fund for such reasonable out-of-pocket expenses which the Accountant incurs on behalf of the Fund.

4. **Term and Termination.** This Agreement may be terminated by the Fund giving to the Accountant or the Accountant giving to the Fund not less than ninety (90) days prior written notice (or such shorter notice as the parties may agree to accept). In addition, this Agreement also may be terminated forthwith by notice in writing by:

    (a) either party if the other party shall commit any material breach of its obligations under this Agreement and shall fail to cure such breach within thirty (30) days of receipt of notice from the other party requiring it to do so; or

    (b) either party if the other party shall go into liquidation (except a voluntary liquidation for the purpose of reconstruction or amalgamation upon terms

11179328.01

      previously approved in writing by the other party) or if a receiver is appointed over any assets of the party.

5. **Scope of Liabilities.** The Accountant shall not be liable to the Fund or the affiliates or shareholders of the Fund for any losses, damages, expenses or claims occasioned by any act or omission of the Accountant or its principals, its agents or employees in connection with the performance of the Accountant's services hereunder or otherwise other than as a result of its own fraud, willful misconduct, gross negligence, reckless disregard of its duties hereunder, material breach of its obligations hereunder, or as otherwise required by applicable law (the Accountant's "**Bad Acts**").

6. **Indemnification.** The Fund shall indemnify the Accountant (which shall include solely for purposes of this Section any of its officers, employees and principals) against, and hold them harmless from, any expense, loss, liability or damage (including reasonable attorneys and accountants fees) arising out of any claim asserted or threatened to be asserted by any third party in connection with the Accountant's performing or having performed financial and accounting services for the Fund pursuant to this Agreement; provided, however, that the Accountant shall not be entitled to indemnification with respect to any expense, loss, liability or damage which was caused by the Accountant's Bad Acts. The Fund shall advance to the Accountant the reasonable costs and expenses of investigating and/or defending any such claim, subject to receiving a written undertaking from the Accountant to repay any such amounts advanced to it in the event and to the extent of any subsequent determination that the Accountant was not entitled to indemnification hereunder. In the event that the Accountant is or becomes a party to any action or proceeding in respect of which indemnification may be sought hereunder, the Accountant shall promptly notify the Fund thereof. Following such notice, the Fund shall be entitled to participate therein and, to the extent that it may wish, to assume the defense thereof with counsel reasonably satisfactory to the Accountant. After notice from the Fund of an election by the Fund to assume the defense of a Claim, the Fund will not be liable to the Accountant hereunder for any legal or other expenses subsequently incurred by the Accountant in connection with the defense thereof other than reasonable costs of investigation unless counsel for the Accountant shall reasonably determine that there is a conflict of interest which requires separate representation of the parties. The Fund shall not be liable hereunder for any settlement of any action or claim effected by the Accountant, without its written consent, which consent shall not be unreasonably withheld, nor shall the Fund enter into any settlement which shall impose any obligation on the Accountant without its written consent.

7. **Independent Contractor.** For all purposes of this Agreement, the Accountant shall be an independent contractor and not an employee or an agent of any of the Fund or the Fund, nor shall anything herein be construed as making the Fund or the Fund partners or co-venturers with the Accountant or any of its affiliates. Except as provided in this Agreement, the Accountant shall not have authority to bind, obligate or represent the Fund.

2

11179328.01

CONFIDENTIAL

MAY0019169

8. **Books and Records.**

   (a) All books, records and other documents received or prepared by the Accountant on behalf of the Fund shall be the exclusive property of the Fund. Except as otherwise authorised by the Fund, all such books, records and other documents (other than those which are not of a material nature) shall be preserved by the Accountant for a period of at least six years from the end of the period to which they relate or until they are delivered to duly appointed successors to the Accountant upon termination of this Agreement.

   (b) The Accountant shall be entitled to scan any accounting files upon finalization of the relevant financial statements; but such scan shall be preserved by the Accountant for a period of at least six years from the end of the period to which they relate or until they are delivered to duly appointed successors to the Accountant upon termination of this Agreement. The Accountant shall be entitled to destroy general ledger print-outs which do not support current or comparative year figures and further shall be entitled to destroy bank statements, brokers' advice slips, any other source documentation upon termination of this Agreement.

   (c) Upon the expiration of this Agreement, the Accountant shall hand over to the Fund, or such person(s) as the Fund may direct, all books of account, correspondence and records relating to the affairs of the Fund which are in the Accountant's possession as accountant.

9. **Confidentiality.** Neither of the parties hereto shall unless compelled so to do by any court of competent jurisdiction either before or after the termination of this Agreement disclose to any person (other than a director, officer, attorney, partner, auditor or accountant of the relevant party) not authorised by the other party to receive the same any information relating to such other party or to the affairs of such other party of which the party disclosing the same shall have become possessed during the period of this Agreement and each party shall use its best endeavours to prevent any such disclosure as aforesaid. In the event a request is made by a court of competent jurisdiction or governmental agency to disclose confidential shareholder information, the Accountant, unless prohibited by law, will immediately notify the Fund of such request and the Fund may request the Accountant to obtain a legal opinion of local counsel as to whether such request must be complied with under local law. Any costs arising out of this exercise will be borne by the relevant Fund. If the Accountant disagrees with local counsel's opinion as to compliance, it may terminate this Agreement immediately.

10. **Notice.** Any notice required to be given hereunder may be served on any party by being left at or sent by registered post to the registered office for the time being of the party and any notice given by post shall be deemed to have been served at the expiration of seventy-two hours after it is posted and in proving such service it shall be sufficient to prove that the envelope containing the notice was properly addressed and sent by registered post.

3

11179328.01

CONFIDENTIAL

MAY0019170

11. **Modification; Waiver.** Except as otherwise expressly provided herein, this Agreement shall not be amended nor shall any provision of this Agreement be considered modified or waived unless evidenced by a writing signed by the parties to be charged with such amendment, waiver or modification.

12. **Entire Agreement; Binding Effect.** This Agreement represents the entire agreement between the parties, and shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns.

13. **Governing Law.** This Agreement shall be governed by and construed in accordance with the laws of New York, without giving effect to conflicts of law.

14. **Dispute Resolution**. Any dispute or claim between the parties arising out of or relating to this Agreement shall first be submitted to non-binding mediation, and if not successful, shall be submitted to binding arbitration in New York pursuant to such terms as the parties shall agree. Judgement on any arbitration award which may be rendered may be entered in any court having proper jurisdiction over the parties.

15. **Counterparts.** This Agreement may be signed in any number of counterparts. Any single counterpart or a set of counterparts signed in either case by the parties hereto shall constitute a full and original agreement for all purposes.

IN WITNESS WHEREOF the parties hereto have caused this Agreement to be executed the day and year first above written.

LEGACY CAPITAL LIMITED

_____
Signature

_____
Print Name of Signatory

KHRONOS LLC

_____
Signature

_____
Print Name of Signatory

4

11179328.01

CONFIDENTIAL

MAY0019171

### Fee Schedule

The Accountant shall receive from the Fund an annual fee equal to $42,000 (the "**Accounting Fee**"). The Accounting Fee shall be paid to the Accountant monthly in arrears. In addition, all non-recurring set-up costs incurred by the Accountant shall be reimbursed by the Fund, estimates of which are included in the attached Services Schedule.

5

11179328.01

**CONFIDENTIAL**    MAY0019172

<u>Services Schedule</u>

The Accountant will provide the Fund with certain financial, accounting, valuation and administrative services relating to the Fund's account since its inception. There are four components to the service that are outlined below including estimated times for completion and the associated costs.

1) One time set-up fee
   - Set-up database
   - Initialize investment master
   - Load initial position information
   - Establish reporting profile for the Fund
   - Technology development to enhance data interface to support additional pricing and volume statistics requested (i.e. high, low, volume, VWAP)

The estimated timing to complete the one time set-up process is one week, and the associated cost is $5,000 assuming the Accountant does not require any report customization.

2) Historical data load (10/1/00 – Present)
   - Parse the Fund's existing spreadsheets into daily files
   - Modify trade data to include trade date information
   - Format the Fund's transaction files into the Accountant's trade entry template and make any necessary adjustments to the data including adding commissions
   - Upload and process trading templates on a daily basis
   - Value the portfolio daily and store price/volume statistics based on historical pricing from IDC
   - Reconcile the Fund's account to the monthly brokerage statements provided and record any non-trade related activity
   - Generate month-end position, profit/loss and transaction reports and publish them to the web portal
   - Allocate monthly income/loss to the Fund's two underlying investors
   - Produce a monthly trial balance, balance sheet, income statement and statement of changes in net asset value for the Fund and publish them to the web portal

The estimated timing to complete the historical data load from 10/1/00-Present is 2-3 weeks, and the associated cost is $26,000-$30,000. The pricing is included as a range in attempt to consider unforeseen issues that may arise in the historical data loading due to the manual nature of the process.

3) Historical data load (1/1/92-9/30/99)
   - Manually enter daily trading activity from monthly brokerage statements into the Accountant's trade entry templates and make any necessary adjustments including adding commissions
   - Upload and process trading templates on a daily basis

6

**CONFIDENTIAL**                                                                                                          MAY0019173

- Value the portfolio daily and store price/volume statistics based on historical pricing from IDC
- Reconcile the Fund's account to the monthly brokerage statements provided and record any non-trade related activity
- Generate month-end position, profit/loss and transaction reports and publish them to the web portal
- Allocate monthly income/loss to the Fund's two underlying investors
- Produce a monthly trial balance, balance sheet, income statement and statement of changes in net asset value for the Fund and publish them to the web portal

The estimated timing to complete the historical data load from 1/1/92-9/30/99 is 1-2 months, and the associated cost is $73,000-$80,000. The pricing is included as a range in attempt to consider unforeseen issues that may arise in the historical data loading due to the manual nature of the process. The costs associated with the one time set-up fee, as well as all of the historical data loading, will be billed on a progress basis with the final billing due upon completion of the historical data loading.

4) Ongoing services
   - Manually enter trades off the paper confirmations received on a daily basis
   - Value the portfolio daily based on end of day pricing and store price/volume statistics from IDC
   - Produce daily position, profit/loss and transaction reports and publish them to the web portal
   - Reconcile the Fund's account to the monthly brokerage statements provided and record any non-trade related activity
   - Generate month-end position, profit/loss and transaction reports and publish them to the web portal
   - Allocate monthly income/loss to the Fund's two underlying investors
   - Produce a monthly trial balance, balance sheet, income statement and statement of changes in net asset value for the Fund and publish them to the web portal
   - Assist the Fund with the annual financial statement audit

The annual fee to the Accountant for the services described in section 4 above shall be $42,000, which shall be charged and paid monthly in arrears.

The cost for the historical pricing information from IDC will be passed through from the Accountant to the Fund without any markup. This cost will be determined by IDC upon the Accountant providing them with further information regarding the number of securities traded over time. For any additional services requested by the Accountant pertaining to establishing linkage with a third party risk system, or the preparation of any document or report outside the scope or timing of the services described above, the Accountant shall charge and the Fund shall pay an additional fee to be agreed upon by the parties.

7

11179328.01

CONFIDENTIAL                                                                                          MAY0019174