**BECKER & POLIAKOFF LLP**

Helen Davis Chaitman, Esq. (4266)
45 Broadway
New York, New York 10006
hchaitman@bplegal.com
*Attorneys for Defendants RAR Entrepreneurial Fund, Ltd.*
*and Russell Oasis*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>                              Plaintiff,<br><br>             v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>                              Defendant. | SIPA LIQUIDATION<br><br>Adv. Pro. No. 08-01789 (SMB)<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>                              Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>                              Plaintiff,<br><br>             v.<br><br>RAR ENTREPRENEURIAL FUND, LTD., et al.,<br><br>                              Defendants. | Adv. Pro. No. 10-04352 (SMB)<br><br>Appeal No. _____ |

**MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION FOR LEAVE TO APPEAL**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................ ii

PRELIMINARY STATEMENT ....................................................................................... 1

BACKGROUND .............................................................................................................. 4

    I.    The Trustee's Financial Stake in Litigations ...................................................... 4

    II.   Decision Below ................................................................................................... 7

ARGUMENT .................................................................................................................... 9

LEAVE FOR AN IMMEDIATE APPEAL SHOULD BE GRANTED ......................... 9

    I.    The Order Presents a Controlling Question of Law........................................... 10

    II.   There is Substantial Ground for Difference of Opinion on the Controlling
        Issue of Law ...................................................................................................... 11

        A.  The Order Conflicts with this Court's Controlling Authority ..................... 12

        B.  The Order is Inconsistent with Supreme Court Precedent and Other
            Authority Recognizing that SIPC has Characteristics of a
            Governmental Entity.................................................................................. 13

        C.  The Order Conflicts in Principle with the Settled Rule that Court
            Appointed Receivers are Deemed to be Governmental Officials for
            Purposes of the Fourteenth Amendment.................................................... 14

        D.  An Immediate Appeal from the Order is Warranted Because the
            Precise Issue Presented is One of First Impression .................................... 15

    III.  An Immediate Appeal will Materially Advance the Ultimate Termination
        of the Litigation................................................................................................. 15

    IV.  An Immediate Appeal from the Other is Warranted Given Its Impact on
        Hundreds of Other Actions ............................................................................... 15

CONCLUSION................................................................................................................. 17

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Adelphia Communications Corp.*, 333 B.R. 649 (S.D.N.Y. 2005) ...................................9, 10

*In re Adler, Coleman Clearing Corp.*, 1998 WL 551972 (Bankr. S.D.N.Y. Aug. 24, 1998) ..............................................................................................................................13

*In re Adler, Coleman Clearing Corp., Fiero Bros, Inc. v. Mishkin,* 1999 WL 1747410 (S.D.N.Y. 1999) ......................................................................................................2

*Aetna Life Ins. Co. v. Lavoie*, 475 U.S. 813 (1986) ................................................................5

*In re Bernard L. Madoff Inv. Secs.*, 476 B.R. 715 (S.D.N.Y. 2012), *aff'd*, 773 F.3d 411 (2d Cir. 2014), *cert. denied*, 135 S.Ct. 2589 (2015) ............................................4

*In re Bernard L. Madoff Inv. Secs. LLC*, 721 F.3d 54 (2d Cir. 2013), *cert. denied*, 134 S.Ct. 2895 (2014) ..........................................................................................................3

*Bilello v. JPMorgan Chase Retirement Plan*, 603 F. Supp. 2d 590 (S.D.N.Y. 2009) ...................................................................................................................................10

*Brown v. Bullock*, 294 F.2d 415 (2d Cir. 1961) (Friendly, J.) ......................................................16

*Caperton v. A.T. Massey Coal Co., Inc.*, 556 U.S. 868 (2009)..............................................5, 7

*Capitol Records, LLC v. Vimeo, LLC*, 972 F. Supp. 2d 537 (S.D.N.Y. 2013) ............................11

*Consol. Edison, Inc. v. Northeast Util.*, 318 F. Supp.2d 181 (S.D.N.Y. 2004) ..............................9

*In re Dinova*, 212 B.R. 437 (B.A.P. 2d Cir. 1997) ........................................................................7

*In re Enron Corp.*, 2006 WL 2548592 (S.D.N.Y. Sept. 5, 2006)................................................4, 9

*In re Facebook, Inc. IPO Securities and Derivative Litigation*, 986 F. Supp. 2d 524 (S.D.N.Y. 2014) .............................................................................................................11

*Forest Guardians v. Bureau of Land Mgmt*, 188 F.R.D. 389 (D. N.M. 1999) ............................10

*German v. Fed. Home Loan Mortgage Corp.*, 896 F. Supp. 1385 (S.D.N.Y. 1995).......................9

*Handelman v. Weiss*, 368 F. Supp. 258 (S.D.N.Y. 1973).......................................................12, 13

*Hohensee v. Grier*, 373 F. Supp. 1358 (M.D. Pa. 1974), *aff'd without opinion,* 524 F2d 1403 (3d Cir. 1975)...........................................................................................................14

*In re Jartran, Inc.,* 886 F.2d 859 (7th Cir. 1989)............................................................9

*Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in Amministrazione Straordinaria,* 921 F.2d 21 (2d Cir. 1990) ...........................................10, 15

*KPMG Peat Marwick, L.L.P. v. Estate of Nelco, Ltd., Inc.,* 250 B.R. 74 (E.D. Va. 2000) ..............................................................................................................10

*Kramer v. Lockwood Pension Services, Inc.,* 653 F. Supp. 2d 354 (S.D.N.Y. 2009)...................16

*Lebbos v. Judge of Superior Court, Santa Clara Cnty.,* 883 F.22d 810, 818 ...............................14

*In re Lloyd Securities, Inc.,* 163 B.R. 242 (Bankr. E.D. Pa. 1994)................................................12

*In re Madoff,* 2010 WL 3260074 (S.D.N.Y. Sept. 6, 2010) .........................................................16

*Mathews v. Eldridge,* 424 U.S. 319 (1976).....................................................................................7

*North Fork Bank v. Abelson,* 207 B.R. 382 (E.D.N.Y. 1997) .......................................................10

*Northeast Savings F.A. v. Geremia,* 191 B.R. 275 (D.R.I. 1996)..................................................15

*In re Pappas,* 207 B.R. 379 (B.A.P. 2d Cir. 1997) ..........................................................................4

*Picard v. HSBC Bank PLC,* 454 B.R. 25 (S.D.N.Y. 2011) .............................................................3

*Picard v. JPMorgan Chase & Co.,* 460 B.R. 84 (S.D.N.Y.) ...........................................................3

*Picard v. Kohn,* 907 F. Supp.2d 395 (S.D.N.Y. 2012) ...................................................................3

*Romea v. Heiberger & Assocs.,* 988 F. Supp. 715 (S.D.N.Y. 1998) .............................................15

*SEC v. Credit Bancorp, Ltd.,* 103 F. Supp. 2d 223 (S.D.N.Y. 2000) (Sweet, J.) .........................15

*SIPC v. Barbour,* 421 U.S. 412 (1975) ..........................................................................................13

*Tumey v. State of Ohio,* 273 U.S. 510 (1927) ..................................................................................5

*In re Watson,* 309 B.R. 652 (B.A.P. 1st Cir. 2004) .......................................................................10

*Withrow v. Larkin,* 421 U.S. 35 (1975)............................................................................................5

*In re Worldcom,* 2003 WL 21498904 (S.D.N.Y. June 30, 2003) ..................................................10

*Young v. Paramount Comm'ns Inc.,* 186 B.R. 803 (S.D.N.Y. 1995) ..............................................9

*Young v. U.S. ex rel. Vuitton et Fils S.A.,* 481 U.S. 787 (1987) ......................................................2

**Statutes & Rules**

11 U.S.C. § 546(e) ...........................................................................................................3, 4

15 U.S.C. § 78eee(b)(6) .......................................................................................................8

28 U.S.C. § 158(a) ...............................................................................................................1

28 U.S.C. § 1292(b) .............................................................................................................9

Fed. R. Bankr.P. 8003 ..........................................................................................................1

**Other Authorities**

Carlyn Kolker and Christopher Scinta, *Madoff Trustee Picard May Take Five
    Years to Pay Back Investors* (Jan. 21, 2009),
    http://www.bloomberg.com/apps/news?pid=newsarchive&sid=a6JDlygKnj8k ......................6

Pursuant to 28 U.S.C. § 158(a) and Federal Rule of Bankruptcy Procedure 8003, defendants RAR Entrepreneurial Fund, LTD. and Russell Oasis (the "Movants") submit this memorandum of law in support of their motion for leave to appeal the July 16, 2015 order of the Bankruptcy Court (Hon. Stuart M. Bernstein) denying in part and granting in part Movants' motion to dismiss [ECF No. 65] following entry of a June 2, 2015 memorandum decision regarding omnibus motions to dismiss (the "Decision") [ECF No. 61].[1]

## PRELIMINARY STATEMENT

Movants are former customers of Bernard L. Madoff Investment Securities, LLC ("Madoff") who are defendants in an avoidance action commenced by Irving H. Picard (the "Trustee") seeking return of the money that Movants innocently withdrew from their accounts within the last two years of Madoff's operations.  In the Decision, the Bankruptcy Court granted in part and denied in part Movants' motion to dismiss the complaint.  Movants seek to appeal only one aspect of the Decision at this time[2]:  the Bankruptcy Court's denial of Movants' motion to dismiss the complaint on the ground that the Trustee's 15% interest in the fees paid to his law firm, Baker & Hostetler LLP ("B&H"), by the Securities Investor Protection Corporation ("SIPC") violates the Movants' due process rights because the Trustee is a quasi-governmental official and he has an economic interest in prosecuting litigation, regardless of the merits of the litigation.

When it has served his purposes, throughout the Madoff liquidation, the Trustee has asserted the position of a quasi-governmental official.  For example, in responding to a document

---

[1] Declaration of Helen Davis Chaitman, Esq. (the "Chaitman Decl."), Ex. A (Decision).

[2] Movants reserve their right to appeal at the conclusion of the case the other aspects of the Decision, as well as the issue raised here, if the Movants' motion for leave to appeal is denied.

demand served by defendants in an action brought by the Trustee, the Trustee asserted that he

had no obligation to produce certain documents because he was a "quasi-governmental official."

> Specifically, the Trustee objects to any Request that seeks documents that are protected by the investigatory privilege, as that privilege was articulated in *In re Adler, Coleman Clearing Corp., Fiero Bros, Inc. v. Mishkin,* 1999 WL 1747410 (S.D.N.Y. 1999). The investigatory privilege is "a qualified common law privilege protecting civil, as well as criminal law-enforcement investigatory files from civil discovery." *In re Adler* at 3. **The Trustee is a SIPA Trustee with quasi-governmental law enforcement duties and obligations** to locate and recover the assets of [Madoff] and distribute those assets to injured investors. The Trustee and his retained professionals have created millions of documents during the course of this investigation analyzing and assessing potential claims that the Trustee may bring to recover assets. These files are shielded from discovery in civil litigation by the investigatory privilege.[3]

Similarly, the Trustee accepted an appointment by the Department of Justice to distribute

funds that the government obtained from the Estate of Jeffry Picower in satisfaction of claims

asserted by the government against the Estate.[4]  Although the Trustee now denies that he is a

quasi-governmental official, he readily embraced that status when it served his purposes and,

obviously, he cannot have it both ways.

Under a long line of Supreme Court cases, it is a denial of due process for a quasi

governmental official to have an economic interest in civil or criminal proceedings which he

initiates.  *See Young v. U.S. ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 808 (1987) (noting that a

disinterested prosecutor is necessary, otherwise "[a] scheme injecting a personal interest,

---

[3] Chaitman Decl., Ex. B (Discovery Response) at 3, ¶ 5 (emphasis added).

[4] Chaitman Decl., Ex. C (United States Department of Justice, Southern District of New York Press Release, "Manhattan U.S. Attorney Announces Agreement to Recover $7.2 Billion for Victims of Bernard L. Madoff's Ponzi Scheme from Estate of Jeffry M. Picower") at 4.

financial or otherwise, into the enforcement process may bring irrelevant or impermissible factors into the prosecutorial decision.").

The reason for this line of cases is demonstrated by the Trustee's conduct here: B&H has been paid in excess of $1 billion for its work in the Madoff case and the Trustee has been paid over $150 million, based on his 15% interest in those fees. Given this structure, the Trustee had every economic motivation to litigate and engender enormous fees for his firm, even if the litigation he institutes is meritless – as it has been proven to be in this case. In December 2010, the Trustee filed approximately 1,000 lawsuits seeking to recover from scores of defendants who were forced to incur the enormous expense of litigating to establish that the complaints failed to state a claim. These defendants fell into two categories: defendants charged with complicity in Madoff's scheme and innocent customers victimized by Madoff.

As to the first category, the Trustee has been predictably unsuccessful: Despite the expenditure of a vast amount of money to assert claims against alleged co-conspirators, Judges Rakoff and McMahon held that the Trustee lacked standing to sue to recover no less than $27.6 billion. *See Picard v. HSBC Bank PLC*, 454 B.R. 25, 28 (S.D.N.Y. 2011); *Picard v. JPMorgan Chase & Co.*, 460 B.R. 84, 89 (S.D.N.Y.). Both decisions were affirmed by the Second Circuit, based upon long-established precedent holding that the Trustee stands *in pari delicto* with Madoff and, thus, cannot sue his alleged co-conspirators. *See In re Bernard L. Madoff Inv. Secs. LLC*, 721 F.3d 54, 64 (2d Cir. 2013), *cert. denied*, 134 S.Ct. 2895 (2014). In addition, Judge Rakoff held that the Trustee lacked standing to recover $19.6 billion from numerous European defendants. *See Picard v. Kohn*, 907 F. Supp.2d 395 (S.D.N.Y. 2012).

In complaints asserted against innocent customers, the Trustee sought to recover approximately $6 billion. Of that amount, both Judge Rakoff and the Second Circuit have held

that the Trustee cannot recover $2 billion because he is barred by 11 U.S.C. Section 546(e) from suing to recover withdrawals made before December 11, 2006. *In re Bernard L. Madoff Inv. Secs.*, 476 B.R. 715 (S.D.N.Y. 2012), *aff'd*, 773 F.3d 411 (2d Cir. 2014), *cert. denied*, 135 S.Ct. 2589 (2015). The Trustee could not cite a single Court of Appeals case in which Section 546(e) had been interpreted to allow such suits.

Thus, for the $1 billion in fees paid to Baker & Hostetler of which $150 million was paid to the Trustee, the Trustee is left seeking to recover approximately $4 billion from former Madoff customers in the same position as the Movants. Even these claims, we believe, will prove to be unsustainable for various issues. But the threshold issue is the one Movants seek to appeal here: The Trustee's financial stake in these massive legal fees has influenced him to pursue litigation against scores of parties without any basis in law to do so. His conduct constitutes a violation of the defendants' right to due process of law because the Trustee has forced these parties to expend enormous sums of money seeking dismissal of the claims.

We ask the Court to grant Movants' leave to appeal because this is a disputed ruling that involves a controlling question of law as to which there are substantial grounds for difference of opinion, and because an immediate appeal from the order may materially advance the ultimate termination of the litigation. *See In re Enron Corp.*, 2006 WL 2548592 at *3 (S.D.N.Y. Sept. 5, 2006) (granting leave to appeal); *In re Pappas*, 207 B.R. 379, 381 (B.A.P. 2d Cir. 1997).

## **BACKGROUND**

### I.    **The Trustee's Financial Stake in Litigations**

The Trustee affirmatively led the public to believe that he has not personally received as compensation even the Trustee's fees paid to B&H since his appointment. At the hearing on his first fee application, the Trustee stated as follows:

> As noted at paragraph 33 of my application and contrary to the implication of certain objections that have been filed with the Court and before the press, the amounts that will be rewarded either today or at another time are going to be turned over to Baker Hostetler, the firm of which I am a partner. I want to emphasize I will not retain any portion of the award.[5]

This statement in open court turned out to be untrue. On June 1, 2011, the Trustee finally admitted that he is compensated in the amount of a percentage of the fees paid to B&H by SIPC, although he stated it was "much less" than 30%.[6] Movants have repeatedly asserted that the percentage is at least 15% and the Trustee has never denied it.

The Trustee's financial interest in his official functions constitutes a violation of the Movants' right to due process of law. *See Aetna Life Ins. Co. v. Lavoie*, 475 U.S. 813, 822 (1986) (internal citations omitted) (proper inquiry is whether financial stake "would offer a possible temptation[,]" and not whether individual was actually influenced); *Withrow v. Larkin*, 421 U.S. 35, 47 (1975) (due process concerns exist when "the probability of actual bias on the part of the . . . decisionmaker is too high to be constitutionally tolerable); *Tumey v. State of Ohio*, 273 U.S. 510 (1927) (compensation structure under which mayor-judge received salary supplement only upon convicting defendant violated due process); *Caperton v. A.T. Massey Coal Co., Inc.*, 556 U.S. 868 (2009) (litigant's due process rights are violated where judge accepted $3 million contribution to his election campaign from party litigant).

The Trustee's conflict of interest is exacerbated by the fact that he has successfully argued to the Bankruptcy Court that it has no authority to review the fees of B&H for reasonableness once SIPC approves them (which it has done throughout the SIPA liquidation).

---

[5] Chaitman Decl., Ex. D (Excerpt from the 8/6/09 Hrg. Trans.) at 14:15-21.

[6] Chaitman Decl., Ex. E (Excerpt from the 6/1/11 Hrg. Trans.) at 32:20-23.

Thus, SIPC, whose members have been enriched by the Trustee's violations of SIPA, can control the Trustee's compensation and that of his law firm.

The Trustee asserts that he is a quasi-governmental officer when it suits his purposes. For example, in refusing to produce documents sought by a defendant in one of his 1,000 litigations, the Trustee asserted: "The Trustee is a SIPA Trustee with quasi-governmental law enforcement duties and obligations to locate and recover the assets of [Madoff] and distribute those assets to injured investors."[7]

And yet, when it serves his economic purposes, he insists that he is not a quasi-governmental officer.[8]  But the law is clear that, as the "decision-maker" for SIPC, a quasi-governmental agency, the Trustee is acting in a quasi-governmental capacity.[9]  Moreover, the Trustee accepted the appointment by the Department of Justice to serve as a special master to distribute funds forfeited to the United States by Madoff co-conspirators Carl Shapiro and the Picower parties.  In a press release dated December 17, 2010 the Government stated:

> The United States Attorney's Office will use funds forfeited in the settlement announced today to compensate victims of Madoff's fraud.  Last week, in connection with a $625 million settlement involving the Office, the SIPA Trustee, and Carl Shapiro and his family, Mr. Bharara announced that the Department of Justice had

---

[7] Chaitman Decl., Ex. Chaitman Decl., Ex. B (Discovery Response) at 3, ¶ 5.

[8] *Picard v. RAR Entrepreneurial Fund, Ltds.*, Adv. Pro. No. 10-4352, ECF No. 54 (Tr. Br. below) at 3-4 (Bankr. S.D.N.Y.)

[9] Chaitman Decl., Ex. F (March 10, 2011 Testimony of SEC Chairwoman Mary Shapiro before the House Committee on Oversight and Government Reform (testifying that the Trustee and not the SEC makes the decision to clawback from innocent investors)); *see also* Carlyn Kolker and Christopher Scinta, "Madoff Trustee Picard May Take Five Years to Pay Back Investors" dated January 21, 2009, available at Bloomberg.com, at 1 (quoting SIPC's President Stephen Harbeck identifying the Trustee as the decision-maker.)

appointed Irving H. Picard as Special Master to oversee the
process of remission or mitigation under the forfeiture laws.[10]

As a quasi-governmental figure, the Trustee is not "'allowed to be a judge in his own

cause; because his interest would certainly bias his judgment and, not improbably, corrupt his

integrity.'" *Caperton*, 556 U.S. at 876-77 (quoting The Federalist No. 10, p. 59 (J. Cooke ed.

1961) (J. Madison)).    Thus, the Trustee's pecuniary interest raises a serious constitutional

question that compels review by this Court.

## II.    Decision Below

On November 1, 2013, Movants filed a motion to dismiss the complaint filed by the

Trustee (the "Motion") arguing, *inter alia*, that the Trustee is a quasi-governmental official and

that it is a denial of due process for him to sue them when he has a percentage interest in the

legal fees generated.    In their opposition papers, SIPC and the Trustee both denied that SIPC is a

quasi-governmental agency and that the Trustee is a governmental or a quasi-governmental

actor.    The Trustee also made the frivolous argument that there are no procedural due process

violations in connection with his conduct because due process was afforded through notice and

an opportunity to be heard at the hearing on disinterestedness of the Trustee and his counsel – a

hearing which took place approximately two years before the Trustee filed his 1,000 complaints

and two years before he disclosed his percentage interest in his law firm's fees.

The Trustee glosses that, at the disinterestedness hearing, he withheld from the Court and

from the creditor body the fact that his contract with B&H entitles him to a percentage of the fees

paid by SIPC to B&H.    Due process requires giving interested parties all material information

and a *meaningful* opportunity to present objections.    *See Mathews v. Eldridge,* 424 U.S. 319, 333

---

[10] Chaitman Decl., Ex. C (United States Department of Justice, Southern District of New York
Press Release, "Manhattan U.S. Attorney Announces Agreement to Recover $7.2 Billion for
Victims of Bernard L. Madoff's Ponzi Scheme from Estate of Jeffry M. Picower,") at 4.

(1976) (the fundamental requirement of due process is the opportunity to be heard in a meaningful manner); *accord In re Dinova*, 212 B.R. 437, 444 (B.A.P. 2d Cir. 1997) ("Obviously the purpose of 'notice and a hearing' is to enable parties to respond to facts and law tendered in support of the motion."). The Trustee's concealment of the information concerning his compensation at the time of the disinterestedness hearing refutes any argument that adequate notice and an opportunity to be heard was provided.

After Movants filed their reply in further support of the Motion, Movants obtained a copy of the Trustee's Responses and Objections to the First of Requests for Production of Documents of Defendants J. Ezra Merkin and Gabriel Capital Corporation in *Picard v. Merkin*, Adv. No. Pro. 09-1182 (the "Discovery Response").[11] In the Discovery Response, the Trustee objected to disclosure of documents based on an investigative privilege, explicitly stating: "The Trustee is a SIPA Trustee with quasi-governmental law enforcement duties and obligations . . . ."[12] Pursuant to the Bankruptcy Court's instruction, the Trustee's admission was presented to the Bankruptcy Court at oral argument on the Motion.

Judge Bernstein rejected Movants' argument that the Trustee's financial stake in his quasi-governmental decisions violates Movants' due process rights.[13] The Bankruptcy Court held that the Trustee is not a quasi-governmental employee because "SIPC is not a government agency[.][14] The court, relying on SIPA § 78eee(b)(6), held that SIPC "is a not-for-profit corporation whose members include brokers and dealers," ignoring substantial authority

---

[11] Chaitman Decl., Ex. B.

[12] *Id.* at 3, ¶ 5.

[13] Chaitman Decl., Ex. A (Decision) at 25.

[14] *Id.*

supporting the proposition that SIPC, which is supervised by the Securities and Exchange

Commission, is a quasi-governmental body.  Although there is no evidence that the Trustee and

SIPC have ever disagreed on any issue in this case, the Bankruptcy Court held that the Trustee is

not a decision-maker for SIPC because it is "conceivable" that the Trustee and SIPC can

disagree.[15]  As to the Trustee's 15% interest in the legal fees paid to B&H, the Bankruptcy Court

rationalized that the Trustee "and his firm are entitled to reasonable compensation like any other

trustee and his counsel."[16]    On July 16, 2015, the Bankruptcy Court entered an order

implementing the Decision (together with the Decision, the "Order").  Movants now move for

leave to appeal the Order.

## ARGUMENT

### LEAVE FOR AN IMMEDIATE APPEAL SHOULD BE GRANTED

District courts generally apply the standards set forth in 28 U.S.C. § 1292(b) when

determining whether to grant leave to appeal from an interlocutory order of the Bankruptcy

Court. *See In re Adelphia Communications Corp.*, 333 B.R. 649, 658 (S.D.N.Y. 2005) (citing *In

re Alexander*, 248 B.R. 478, 483 (S.D.N.Y. 2000)); *see also In re Enron Corp.*, 2006 WL

2548592 at *3.  This Court has discretion to grant leave to appeal the Order pursuant to 28

U.S.C. § 1292(b).  *See In re Jartran, Inc.,* 886 F.2d 859, 866 (7th Cir. 1989).  A court may

exercise its discretion to grant leave to appeal where the order:  (1) "involves a controlling

question of law," (2) as to "which there is a substantial ground for difference of opinion," and (3)

"an immediate appeal from the order may materially advance the ultimate termination of the

litigation." *Young v. Paramount Comm'ns Inc.*, 186 B.R. 803, 806 (S.D.N.Y. 1995).  The

---

[15] *Id.*

[16] *Id.*

granting of a permissive interlocutory appeal is particularly appropriate "where appellate review might avoid protracted and expensive litigation[.]" *See German v. Fed. Home Loan Mortgage Corp.*, 896 F. Supp. 1385, 1398 (S.D.N.Y. 1995); *see also Consol. Edison, Inc. v. Northeast Util.*, 318 F. Supp.2d 181, 196 (S.D.N.Y. 2004) ("Institutional efficiency of the federal court system is a chief concern[.]") (citing *Suozzo v. Bergreen*, 2003 WL 256784, *3 (S.D.N.Y. Feb. 2003)).

## I.    The Order Presents a Controlling Question of Law

The "'question of law' must refer to a 'pure' question of law that the reviewing court could decide quickly and cleanly without having to study the record. The question must also be 'controlling' in the sense that, at a minimum, determination of the issue on appeal would materially affect the litigation's outcome." *In re Adelphia Communications Corp.*, 333 B.R. at 658 (internal citations omitted); *se also In re Worldcom*, 2003 WL 21498904, at *10 (S.D.N.Y. June 30, 2003); *North Fork Bank v. Abelson*, 207 B.R. 382, 389-90 (E.D.N.Y. 1997)). Whether an appeal has wide-spread impact on other cases should also be considered. *See Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in Amministrazione Straordinaria*, 921 F.2d 21, 24 (2d Cir. 1990).

The Trustee's standing is a "controlling question of law." *See Bilello v. JPMorgan Chase Retirement Plan*, 603 F. Supp. 2d 590, 593 (S.D.N.Y. 2009); *KPMG Peat Marwick, L.L.P. v. Estate of Nelco, Ltd., Inc.*, 250 B.R. 74, 81-82 (E.D. Va. 2000) (holding "that the issue the issue of whether a bankruptcy trustee has standing to pursue claims to vindicate damages suffered by creditors in their individual capacities does indeed constitute a controlling question of law"); *Forest Guardians v. Bureau of Land Mgmt*, 188 F.R.D. 389, 396 (D. N.M. 1999) ("Standing is a controlling question of law. . . ."); *In re Watson*, 309 B.R. 652, 659-660 (B.A.P. 1st Cir. 2004) ("Standing  . . . is generally a controlling question of law, as the case will be dismissed if the

plaintiff is found to lack standing.") (citation omitted).   As this Court explained in *Bilello*,

"standing . . . is a legal question that determines [plaintiff's] ability to maintain the . . . claims in

[a] lawsuit. . . . It is therefore a controlling question of law whose resolution would materially

advance the termination of the litigation."   *Id.* (footnote omitted).

Thus, the Order presents a controlling issue of law, *i.e.,* does the fact that the Trustee

receives a percentage of the total fees paid by SIPC to B&H violate Movants' right to due

process of law?   A determination of this question is not a factual inquiry; it involves a pure

question of law that this Court can decide quickly.   The Trustee's admission, in responding to a

document demand, that he is a quasi-governmental official; the Trustee's acceptance of an

appointment by the Department of Justice to distribute government funds; and his admission that

he receives a percentage of the fees paid to B&H leave the only issue one of law, *i.e*., whether

the Trustee's conduct violates the due process clause of the United States Constitution.

## II.    There is Substantial Ground for Difference of Opinion on the Controlling Issue of Law

"A substantial ground for difference of opinion exists when '(1) there is conflicting

authority on the issue, or (2) the issue is particularly difficult and of first impression. . . .'"   *In re*

*Facebook, Inc. IPO Securities and Derivative Litigation*, 986 F. Supp. 2d 524, 539 (S.D.N.Y.

2014) (internal citation omitted); *id.* at 533 (finding that substantial ground for difference of

opinion existed given "conflicting authority on the issue"); *Capitol Records, LLC v. Vimeo, LLC*,

972 F. Supp. 2d 537, 551 (S.D.N.Y. 2013).

The Bankruptcy Court held that the Trustee cannot be a quasi-governmental actor

because SIPC was established by Congress as a non-profit corporation, not an agency or

establishment of the United States Government.[17]   However, the Bankruptcy Court ignored the

---

[17] Chaitman Decl., Ex. A at 25.

Trustee's own admission that he is a quasi-governmental officer and it ignored the Trustee's acceptance of an appointment by the Department of Justice to distribute government funds to Madoff customers.  In addition, the Decision is in direct conflict with binding authority of this Court; it is irreconcilable with principles enunciated by the United States Supreme Court; and it is inconsistent with decisions recognizing that state court receivers, who are similarly situated, are deemed to be governmental officials for due process purposes.

A.    The Order Conflicts with this Court's Controlling Authority

In *Handelman v. Weiss*, 368 F. Supp. 258, 263 (S.D.N.Y. 1973), this Court recognized that "[t]he attorney for SIPC is in many ways a representative of governmental interests." Similarly the court recognized in *In re Lloyd Securities, Inc.*, that SIPC "is . . . not a totally private body, entirely independent from governmental attachment."  163 B.R. 242, 253 (Bankr. E.D. Pa. 1994).   In *Handelman*, the court barred an attorney who formally assisted another attorney in the representation of a SIPA trustee from representing a plaintiff, in a later litigation, related to the liquidation that he worked on as the SIPA trustee's counsel.  The Court relied upon the Disciplinary Rule that prohibits a lawyer from accepting private employment in a matter in which he had substantial responsibility while he was a public employee.

The plaintiffs' attorneys in Handelman made the same argument that the Trustee and SIPC made below:  counsel was not a public, *i.e.*, government employee and, hence, this rule did not apply.  *See* 368 F. Supp. at 263.  This Court rejected that argument because, while counsel "*may not technically have been a public employee*[,]" disqualification was warranted because "*[t]he attorney for SIPC is in many ways a representative of governmental interests*."   *Id.* (emphasis added).  The *Handelman* court explained:

> SIPA was enacted in response to the financial crisis of 1969-70 which had led to the failure of several brokerage firms and resulted in customers losses in excess of $130 million.  As part of its efforts

> to protect the public investor, Congress created SIPC, a non-profit corporation whose membership consists of registered brokers and dealers, and members of the national securities exchange. SIPC administers an insurance program designed to protect the customers of its members. SIPC is not a federal agency and cannot regulate its members; it is, however, responsible for helping to develop procedures designed to detect the approaching financial difficulties of its members . . . , and it has made a practice of securing detailed financial reports on certain aspects of debtors' businesses. . . . The Board of Directors is appointed by the Government: one by the Secretary of the Treasury; one by the Federal Reserve Board; and five by the President with the advice and consent of the Senate.

*Id.* (footnotes omitted; citations omitted).

Clearly, there is a conflict between the Order and *Handelman* that must be promptly resolved by this Court.

B.    The Order is Inconsistent with Supreme Court Precedent and Other Authority Recognizing that SIPC has Characteristics of a Governmental Entity

The Bankruptcy Court's ruling that SIPC is a not a governmental agency simply because it is classified as a not-for profit is irreconcilable with *SIPC v. Barbour*, 421 U.S. 412, 420 (1975), where the United States Supreme Court recognized that SIPC has the characteristics of a governmental entity.  Customers of a broker-dealer have no implied private right of action under SIPA to compel SIPC to exercise its statutory authority.  Moreover, SIPC's actions are substantially scrutinized by the Government.  *See id.* (noting that the SEC has substantial supervision over SIPC's operations; SIPC is required to report to Congress and the President; SIPC is required to provide its books and records to the SEC and the Comptroller General).  Finally, SIPC is protected by sovereign immunity.  *See In re Adler*, *Coleman Clearing Corp.*, 1998 WL 551972, *31 (Bankr. S.D.N.Y. Aug. 24, 1998).

Further, although the Bankruptcy Court held that the Trustee is not a decision maker for SIPC because he and SIPC "may disagree," the former-SEC Chairman, Mary Shapiro, and

SIPC's President, Stephen Harbeck, have both publicly recognized that the Trustee is a decision-maker for SIPC.  Chairman Shapiro has, in fact, acknowledged that it is the Trustee – not the SEC – who makes the decision to sue innocent customers as fraudulent transferees.[18]  Moreover, in 2011, Congressman Scott Garrett, Chairman of the House Subcommittee on Capital Markets, Insurance, and Government-Sponsored Enterprises, along with others in the House of Representatives, launched an investigation into the Trustee's conduct as well as the Trustee's compensation.[19]  They did so because the Subcommittee has direct supervision of SIPC and of SIPA liquidations, which are managed by SIPC-appointed and compensated trustees.  Indeed, the Representatives of the Subcommittee felt that the specific economic arrangement the Trustee has with B&H should be "publicly available" given that "the Trustee's appointment, powers, and service all derive from [SIPA], a public law[.]"[20]

        C.        The Order Conflicts in Principle with the Settled Rule that Court Appointed Receivers are Deemed to be Governmental Officials for Purposes of the Fourteenth Amendment

Acts of a court-appointed receiver are "state action" for due process purposes.  *See Lebbos v. Judge of Superior Court, Santa Clara Cnty.*, 883 F.22d 810, 818 n. 10 (9th Cir. 1989) (holding that "[b]ecause [defendant] was acting in his capacity as court-appointed receiver, he was acting under color of state law"); *Hohensee v. Grier*, 373 F. Supp. 1358, 1364 (M.D. Pa. 1974) ("State action includes 'misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law. . . .' In my view, this concept of state action would include the actions of a receiver appointed by a state court.")

---

[18] *See* footnote 9, *supra.*

[19] Chaitman Decl., Ex. G (6/3/2011 Letter) at 2.

[20] Chaitman Decl., Ex. H (9/13/2013 Letter) at 7.

(quoting *Adickes v. S. H. Kress & Co.*, 398 U.S. 144 (1970)), *aff'd without opinion*, 524 F2d 1403 (3d Cir. 1975).

Just as state court receivers are deemed to be state officials under the fourteenth amendment, so too should SIPC-appointed trustees be deemed public officials for due process purposes. The Order deviates from this well-established rule and, therefore, raises an issue threatening the integrity of the entire proceeding.

> D.    An Immediate Appeal from the Order is Warranted Because the Precise Issue Presented is One of First Impression

The issue presented here -- whether the Trustee's compensation as a percentage of the fees that B&H incurs as a result of his quasi-governmental decisions is a violation of Madoff customers' due process rights-- is one not settled by controlling authority. Although courts have recognized that SIPC serves governmental functions, there is no precedent directly on point as to the precise issue here. The lack of controlling authority on the issue presented is an independent basis warranting immediate review. *See Northeast Savings F.A. v. Geremia*, 191 B.R. 275, 278 (D.R.I. 1996); s*ee Klinghoffer*, 921 F.2d at 25 (hearing interlocutory appeal involving the difficult issue of first impression). Accordingly, this Court should hear the appeal now; an appeal at the conclusion of the Madoff liquidation could serve no purpose.

## III.    An Immediate Appeal will Materially Advance the Ultimate Termination of the Litigation

If this Court agrees that the Trustee's conduct constitutes a violation of Movants' due process rights, the complaint against Movants will have to be dismissed.

## IV.    An Immediate Appeal from the Other is Warranted Given Its Impact on Hundreds of Other Actions

In exercising its discretion, the Court should also "consider the system-wide costs and benefits of allowing the appeal." *Klinghoffer*, 921 F.2d at 24; *see also SEC v. Credit Bancorp,*

*Ltd.,* 103 F. Supp. 2d 223, 226 (S.D.N.Y. 2000) (Sweet, J.) (recognizing that court should consider whether resolution of issue has "precedential value for a large number of cases") (internal citations omitted); *Romea v. Heiberger & Assocs.,* 988 F. Supp. 715, 717 (S.D.N.Y. 1998) (holding that interlocutory appeal was appropriate where question of law had "broad applicability" and was "of considerable importance"). An immediate appeal is particularly appropriate where a court's ruling is of unusual significance, including instances where other pending cases will require resolution of similar issues. *Kramer v. Lockwood Pension Services, Inc.*, 653 F. Supp. 2d 354, 397-98 (S.D.N.Y. 2009) (noting interlocutory appeals should be granted for "consideration [of a] case . . . of unusual significance, one in which a ruling is of practical importance going well beyond run-of-the-mill concerns of parties before the Court"); *Brown v. Bullock*, 294 F.2d 415, 417 (2d Cir. 1961) (Friendly, J.) (explaining that interlocutory appeal was granted because "such a determination was likely to have precedential value for a large number of other suits . . . now pending in the Southern District [of New York]).

The Order extends to virtually, if not, all clawback actions pending in the Bankruptcy Court. Absent an immediate appeal, the parties run the risk that their litigations could later be set back to square one, at great cost to the parties and with tremendous delay of the overall resolution of these litigations. These are precisely the kind of "extraordinary circumstances" where an interlocutory appeal is warranted. *See In re Madoff*, 2010 WL 3260074, *5 (S.D.N.Y. Sept. 6, 2010).

**CONCLUSION**

This motion raises a genuine issue concerning the integrity of the bankruptcy proceeding that requires review by this Court on an interlocutory basis.   Therefore, Movants respectfully request that the motion for leave to appeal the Order be granted.

July 30, 2015

                                                         **BECKER & POLIAKOFF LLP**

                        By:      /s/ Helen Davis Chaitman
                                  Helen Davis Chaitman
                                  45 Broadway
                                  New York, New York 10006
                                  (212) 599-3322

                                  *Attorneys for Defendants RAR*
                                  *Entrepreneurial Fund, Ltd. and Russell*
                                  *Oasis*