# EXHIBIT 4

1

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

--------------------------------x

       In the Matter

           of                  Case No.

                           1-08-01789


       SIPC V. MADOFF,

               Debtor.

--------------------------------x

                  August 6, 2009

                  United States Custom House

                  One Bowling Green

                  New York, New York 10004


       In Re First Application for Interim Professional

Compensation for Services Rendered and Reimbursement of

Actual and Necessary Expenses Incurred for Baker &

Hostetler LLP, et al.



B E F O R E:

               HON. BURTON R. LIFLAND,

                     U.S. Bankruptcy Judge

2

1

A P P E A R A N C E S:

2

3

4          BAKER HOSTETLER, LLP

5          Attorneys for Irving H. Picard, SIPA Trustee

6               45 Rockefeller Plaza

7               New York, New York 10017

8          BY:   MARC E. HIRSCHFIELD, ESQ.

9                    -and-

10              DAVID J. SHEEHAN, ESQ.

11                   -and-

12              ALISSA M. NANN, ESQ.

13                   -and-

14              IRVING H. PICARD, BLMIS Trustee

15

16

17

18         MILBERG LLP

19              Attorneys for Unofficial

20              Committee of Customers

21              One Pennsylvania Plaza

22              New York, New York 10119

23         BY:   MATTHEW GLUCK, ESQ.

24                   -and-

25              JONATHAN M. LANDERS, ESQ.

3

Page 4 of 41

1

2    A P P E A R A N C E S:  (Continued)

3

4            PHILLIPS NIZER, LLP

5                    Attorneys for The Peskins and Maureen Ebel

6                    666 Fifth Avenue

7                    New York, New York 10103

8            BY:  HELEN DAVIS CHAITMAN, ESQ.

9

10           WINDELS MARK LANE & MITTENDORF, LLP

11           Attorneys for Alan Nisselson Chapter 7 Trustee

12           156 West 56th Street

13           New York, New York  10019

14           BY:   ALAN NISSELSON, ESQ.

15                 -and-

16                 REGINA GRIFFIN, ESQ.

17

18           SECURITIES INVESTOR PROTECTION CORPORATION

19                   805 15th Street, Suite 800

20                   Washington,  D.C.  20005

21           BY:   KEVIN H. BELL, ESQ.

22

23

24

25

4

1             PROCEEDINGS

2             THE COURT:  SIPC v Madoff.

3             With respect to the timing of the hearing,

4    I understand there was a fairly long line outside and that

5    is why we were delayed.   It seems to be no deed becomes

6    unpunished because I could have expected the courtroom to

7    be filled up, which it did not.

8             MR. SHEEHAN:   Good morning, Your Honor.

9             THE COURT:  Good morning, Mr. Sheehan.

10            MR. SHEEHAN:   David Sheehan from Baker

11   Hostetler, on behalf of the Irving Picard as Trustee.

12            We have before Your Honor this morning a

13   number of applications.   As is the normal course we would

14   deal with those that are unopposed and uncontested first.

15            THE COURT: Certainly.

16            MR. SHEEHAN:   At this point we would like

17   to introduce Alissa Nann from our office.

18            MS. NANN:   Good morning, Your Honor.

19   Alissa Nann, on behalf of the trustee.

20            Your Honor, we have this morning the

21   Trustee's fourth motion for an extension of time by which

22   the Trustee may assume or reject certain contracts or

23   leases.

24            Your Honor, we were last before you on this

25   issue on July 7, at which time you entered an order

5

1    extending the deadline to assume or reject to July 31.   We

2    filed the instant motion on July 24th, and a bridge order

3    was entered by Your Honor on the 27th which extended the

4    deadline for the assumption or rejection of certain

5    contracts through today's hearing date.

6              At we explained to the Court the last time

7    we were before Your Honor, this extension motion is made

8    based upon a request by a Serge Trading (phonetic), who is

9    the purchaser of the Debtor's market-making business.

10             They were still in negotiation with Verizon

11   for certain contracts providing phone and internet

12   services, and those are the only contracts to which the

13   extension will apply.   They were told they are very close

14   to coming to a deal with Verizon, and as we also reported

15   to the Court the last time, Serge will be paying the cost

16   of the service through the date of the extension, which we

17   will extend through the 31st and will be covering any

18   confidential and legal expenses relating to the motion.

19             We have not received any objection to the

20   motion, and we would ask that it be granted.

21             THE COURT:   Are they making payments in

22   accordance with the basic contract price?

23             MS. NANN:   I believe so, yes.

24             MR. SHEEHAN:   Yes.

25             THE COURT:  Very well.

6

1           Does anyone want to be heard?

2           There is no response.

3           The application is granted.

4           MS. NANN:   May I approach, Your Honor?

5           THE COURT:  Yes, I will entertain it.   I

6    have approved the order.

7           MS. NANN:   Thank you, Your Honor.

8           MR. SHEEHAN:   Thank you, Your Honor.

9           Your Honor, there are two other

10   applications for which no objections have been received.

11          First, I would like to offer my objection

12   to the application in the Windels motion.  The

13   representatives for the Windels firm, Mr. Nisselson and

14   Regina Griffin are here on behalf of that application.

15          As Your Honor will recall and the record

16   will reflect, Mr. Nisselson was appointed as Chapter 7

17   Trustee for Bernard Madoff and his firm was appointed as

18   his counsel.

19          Subsequently there was an application by

20   Mr. Picard for substantial consolidation and a good deal of

21   the work was engaged in by Mr. Nisselson and his firm in

22   evaluating the proposals, in the responsibility they have

23   before them and how they should fulfill them in connection

24   with our application.

25          It was found by SIPC and the Trustee that

08-01789-smb Doc 11091-2 Filed 08/17/15 Entered 08/17/15 18:18:07 Exhibit 2
08-01789-smb Doc 981 Filed 08/11/09 Entered 08/29/09 10:35:32 Main Document
Pg 8 of 10

7

1      these were a very valuable resource to the overall estate

2      as well as to the advancement of what we are trying to

3      achieve in this case.  As a result they submitted their

4      application to our firm and to SIPC.

5              As Your Honor knows from the record that

6      application has been approved.  Obviously, it has been

7      agreed to by the U.S. Trustee.  And more importantly it

8      was approved by SIPC who will advance the funds from its

9      SIPA fund to pay the fees and expenses of Mr. Nisselson and

10     his firm.

11             We would move that application here this

12     morning, Your Honor.

13             THE COURT:  Does anyone want to be heard?

14             MR. BELL:  Kevin Bell, for the Securities

15     Investment Protection Corporation.  We have submitted

16     SIPC's recommendation in support of the application by

17     Windels Marx.  We would ask the Court to grant an order

18     approving it.

19             THE COURT:  It is clear from the prior

20     order of the Court that the compensation would not be

21     coming out of any of the estates, that it is coming purely

22     from SIPC.  So there is no charge in any of the funds that

23     will be made available for distribution either under the

24     Chapter 7 or SIPC.  The application has been granted.

25             MR. BELL:  Thank you.

08-01789-smb   Doc 981   Filed 06/11/09   Entered 08/29/09 10:35:33   Main Document
Pg 9 of 10

8

1        MR. SHEEHAN:   We have an order in

2    accordance with the rules of the court.  It is an omnibus

3    form of the order addressing all the fee applications.

4        THE COURT:  We will take that up at the

5    conclusion of the hearing.

6        MR. SHEEHAN:    Thank you, Your Honor.

7        The other unopposed application is that on

8    behalf of the international law firms who have been

9    retained by the Trustee in connection with his

10   investigation, and his efforts to obtain assets and return

11   them to the customer property fund.

12       I wouldn't go through all the applications,

13   Your Honor, since it is unopposed.   As Your Honor is aware

14   through the many applications that were made here over the

15   course of the last several months we have been retaining

16   counsel in Gibraltar, the British Virgin Islands, Bermuda

17   and the United Kingdom and they have been active in

18   assisting us not only in connection with the joint

19   provisional liquidation proceeding in the Court of Great

20   Britain, but also assisting us in these other proceedings.

21   They found those services to be extremely valuable.

22       We have submitted those applications to

23   SIPC who have reviewed them and also approved them and

24   submitted an application in support.   We believe that

25   application should be granted, and I would move that

1    application as well, Your Honor.

2                   MR. BELL:   Kevin Bell, on behalf of SIPC.

3                   SIPC has submitted it's recommendation and

4    is in full support of the Court entering an order approving

5    the application.

6                   THE COURT:   Does anyone else want to be

7    heard?

8                   The application is granted.

9                   Essentially, with respect to some of the

10   foreign activities that have been conducted with the aid of

11   these foreign counsel, there has been some international

12   recognition including recognition within the UN of

13   protocols that emanated from this effort.  And the UN

14   guidelines making reference to this activity has recently

15   been approved by the commission, and I think that has been

16   a very interesting aspect of some of these efforts.  The

17   application is granted.

18                  MR. SHEEHAN:   Thank you, Your Honor.

19                  The last application is the application by

20   Mr. Picard, as Trustee, and Baker Hostetler by its counsel

21   to which there has been opposition filed.   Initially, I

22   would ask that Mr. Picard be allowed to speak with regard

23   to his application as Trustee.

24                  THE COURT:   Sure.

25                  MR. PICARD:   Good morning, Your Honor.  I

08-01789-smb   Doc 981   Filed 06/11/09   Entered 08/29/09 10:35:31   Main Document
Pg 11 of 41

10

1    was appointed by Judge Stanton on December 15, when just a

2    few days earlier Mr. Madoff had been arrested.   The SEC

3    filed a complaint against Mr. Madoff and Madoff Securities

4    International.

5              Judge Stanton appointed Lee Richards as the

6    receiver.   When that occurred on December 11, Your Honor,

7    when I was appointed for the Bernard L. Madoff Investment

8    Securities, which I will refer to as BLMIS, Mr. Richards

9    was replaced with respect to the Debtor.   He continued

10   with respect to BLMIS until the joint liquidator was

11   appointed.

12             After a hearing on February 4th of this

13   year, Your Honor found that both I and Baker Hostetler met

14   the disinterested standard of the SIPA statute.   Today's

15   hearing, as Mr. Sheehan has stated concerns, interim fees

16   for four and-a-half months through April 30, Your Honor.

17             My activities are set forth in my

18   application and I am prepared to provide a summary of some

19   of the important aspects of it and answer any questions

20   Your Honor may have.

21             I seek $759,228.75 for the four and-a-half

22   month period beginning on December 16.

23             I expended 1,088.5 hours, Your Honor.   20

24   percent of the amount that I seek will be deferred until

25   later in the case, that is $151,845.75, Your Honor.

11

1          So I am seeking payment of $607,383, Your

2     Honor.   I also seek disbursements for local travel.

3          During the period I was operating a portion

4     of the business.  As Your Honor will recall, we tried to

5     maintain initially the propriety trading and market-making

6     operations for sale.   We ultimately did sell them.   We

7     had retained Lazard Freres to help in the marketing of

8     that.

9          We reduced the head count initially from

10    approximately 160 people down to approximately 40 and those

11    people were really necessary for the market-making

12    operations.  When it became obvious to us in March that the

13    market-making operations would be sold to any one of the

14    bidders that we had been talking to without the employees,

15    we let them go.

16          But in each case, Your Honor, that we dealt

17    with the employees and the terminations we had Warren Act

18    problems, ERISA problems both for healthcare, for the 401-K

19    plan that had been maintained and the 401-K plan, Your

20    Honor, was made at Fidelity, and the only investments that

21    the employees could make were funds of Fidelity.

22          So from that vantage point those assets are

23    being managed now by an independent agent, and they are all

24    well protected.

25          But we are still dealing with the

08-01789-smb Doc 981 Filed 08/11/09 Entered 08/29/09 10:35:38 Main Document
Pg 13 of 41

12

1    Department of Labor, Your Honor, which is very concerned

2    about it, and they are doing a review. We will have a tax

3    return for the 401-K plan that will be filed before the end

4    of the year, Your Honor.

5          In addition to the business and the sale of

6    the market-making operations, I have been involved with the

7    claims and the investment account information, preparation

8    of determination letters and regular communications with my

9    consultants and the claim processing agent, application

10    partners, where the beginning of the claims process is, the

11    review, research, contacting people when we need more

12    information.

13          Together with my counsel I have been

14    involved in a statuary investigation of BLMIS's affairs and

15    had significant contact with both the FBI, the U.S.

16    Attorney's office, SEC, FENRA and, of course, the JPLs in

17    the U.K. We had numerous contacts, I personally as well as

18    my counsel with various state regulators, as I mentioned

19    the Department of Labor and other regulatory and law

20    enforcement agencies.

21          As I indicated, we retained Lazard with

22    SIPA's approval to help market and sell the market-making

23    operations. It was a lengthy term. It took probably

24    longer than we had hoped. But we ultimately were able to

25    sell it and we have every reason to believe that we will be

13

1    getting additional monies over the next couple of years

2    that the purchaser will be successful and the customers in

3    the long run will benefit from that sale.

4            Your Honor, we also had extensive dealings

5    with the Depository Trust Clearing Corporation, which held

6    Madoff securities that were there.  There were about 1,600

7    positions in the account on December 11, and both the DTCC

8    and the National Securities Stock Corporation were not

9    ready to release a lot of the securities because there were

10   close-outs and all sorts of other issues that had to be

11   resolved.  So that was another piece of the operation that

12   took a lot of time.

13           In addition, a lot of the financial

14   institutions that were holding money were not ready to

15   release those funds.  It took substantial negotiations.

16           As you may recall, in the early stages of

17   the case, a number of stipulations were provided to you

18   which you did approve, whereby when the banks released the

19   funds they also received certain indemnification rights

20   from us.

21           So that, again, was a process that took a

22   bit of time and was not as easy as it might have been in

23   the typical case where you contact the bank and they say

24   here it is.

25           I have also had some involvement in

14

1    Bankruptcy Court litigation, especially in connection with

2    the foreign countries, and we have made a number of

3    appearances in the District Court at Judge Stanton's

4    request in connection with the SEC action.

5              With respect to my fees, Your Honor, I

6    would like the record to note that I have voluntary reduced

7    my fees by 10 percent.  That is a reduction of about

8    $84,000, Your Honor.  As I indicated there is a deferral

9    of about $150,000 in the laboring case.

10             Also, I did not bill for, I wrote off

11   approximately 176 hours, which is about another $123,000.

12   So in seeking the $759,228.75, and the approval of payment

13   of $607,383, I submit, Your Honor, those are reasonable

14   requests under the circumstances of this proceeding.

15             As noted at paragraph 33 of my application

16   and contrary to the implication of certain objections that

17   have been filed with the Court and before the press, the

18   amounts that will be rewarded either today or at another

19   time are going to be turned over to Baker Hostetler, the

20   firm of which I am a partner.  I want to emphasize I will

21   not retain any portion of the award.

22             I previously reported and can tell you

23   again that the general estate has been and will continue to

24   be insufficient to meet the costs of administration

25   including legal fees.  Thus, under all appropriate

08-01789-smb   Doc 981   Filed 08/11/09   Entered 08/29/09 10:35:33   Main Document
Pg 16 of 41

15

1    sections of the statute, SIPC will be required to advance

2    those funds necessary to pay awards of compensation as it

3    has other administration costs as this case has moved

4    along.

5              In its recommendation in support of the

6    application, SIPC has acknowledged that it will advance the

7    necessary funds.

8              Accordingly, I request that the Court award

9    the amounts requested and approved by SIPC.

10             Your Honor, I would like to address a

11   certain number of objections that have been filed.   I will

12   limit my remarks to factual matters.   I do not propose to

13   respond to personal attacks as its contained in the papers

14   and filed by certain of the objectors.

15             But my silence, should not be construed,

16   Your Honor, as an agreement with any of those comments.

17             First, I disagree with the comments that

18   have been made that SIPC is insurance, rather, when raised

19   by statute, SIPC provided an advance to the Trustee to make

20   payments up to the statuary maximum.   So that they don't

21   have to wait until the end of the case, or later on in the

22   case to get a distribution of.

23             Those advances, Your Honor, are deemed a

24   supplement to customer property.

25             Number 2.   Contrary to allegations in a

16

1   number of the objections, Your Honor, I will not be

2   receiving 3 percent of any recovery.   Your Honor has

3   already addressed that, so I won't belabor that point.

4         With respect to a number of other

5   objections, questions have been raised about the claims

6   processing, and why it is necessary to review claims and

7   research them.   That has to do with a disagreement over

8   the methodology of how claims are being handled.

9         But I like to give you a couple of

10  examples, Your Honor, as to why it is necessary to review

11  and research claims.

12        We have many accounts in a single name and

13  in other names but we get more than one claim for that

14  account.   We just can't pay each account whatever it

15  claims it should be paid.   That has to be reviewed so we

16  could determine who the right claimant is, et cetera.

17        We have also received claims from customers

18  that don't comport with the documents that they submitted

19  or in some cases they just submit a signed piece of paper

20  with no information.   Those all need to be reviewed, Your

21  Honor, so that we know what the right amount is, who the

22  right claimant is, et cetera.

23        We have also discovered that several

24  hundred claimants who should be treated as customers

25  submitted claims as general creditors.   So we now in

17

1   reviewing all the general creditor claims to right that if

2   someone was a customer filed the wrong form we don't want

3   to penalize them, so the claims processing people are now

4   reviewing that.

5          We have also found that numerous claims

6   were filed both by customers and by attorneys here with the

7   Bankruptcy Court, not with the claims agent.   As long as

8   those claims were filed before July 2, which was the bar

9   date, we are going to honor them.   But, again, we had to

10  collect them from the Court and they have to now be melded

11  into our system.

12         So I just wanted to give you a little bit

13  of a flavor of some of the issues that we are dealing with

14  here.   Mr. Sheehan, I am sure we will deal with some of

15  the other objections.

16         If you have any questions, I would be

17  pleased to answer them.

18              THE COURT:   Thank you.

19              MR. SHEEHAN:   Your Honor, on behalf of the

20  Baker Hostetler we have an application here this morning

21  for fees in the amount of $14,662,319, less the 20 percent

22  retention that Mr. Picard alluded to that the firm has

23  agreed to.   The firm has also agreed to a 10 percent

24  voluntary reduction of the fees in this case.

25         I will not repeat, obviously, what Mr.

08-01789-smb Doc 981 Filed 06/11/09 Entered 08/29/09 10:35:33 Main Document
Pg 19 of 41

18

1    Picard has just said or enter into any great detail this

2    morning what has already been laid out in quite some detail

3    in the interim report, we submitted the report and it is

4    available for everyone to see.

5            I think it is important, given the scope

6    and size this which justifies the reasonable nature of our

7    application here today to at least highlight to your Honor

8    some of the things we have encountered here that make this

9    a very, very unusual case.

10           First of all, this is a case that has been

11   talked about in the press incessantly and is one that

12   concerns one of the largest frauds that ever took place in

13   the United States.

14           That is by any measure absolutely true.

15   We do know that to be a fact by virtue of the investigation

16   that has been undertaken here.  That investigation doesn't

17   just require us to look at the November 30, 2008 statements

18   and end the inquiry with regard to the nature and extent of

19   the fraud perpetrated by Madoff and his colleagues.

20           Needless to say we have to go behind that.

21   We have to investigate that clearly and thoroughly, first

22   and foremost because he is a crook.  What are we supposed

23   to do, Your Honor, rely upon the crook's last statement and

24   that becomes somehow the be all and end all of how we

25   investigate this case, would anyone in their right mind

19

 1    make that suggestion?

 2              Obviously, we have to look behind that

 3    fiction and find out what the truth is, Your Honor, and the

 4    truth requires us to look back, look back into time,

 5    recreate exactly what happened.

 6              We know that Mr. Madoff is a liar.   We

 7    know that he has lied incessantly throughout his career.

 8    Are we supposed to rely upon his allocations?  I don't, Mr.

 9    Picard doesn't.  We know it is not true.

10              We are going beyond that.   We are looking

11    to see everything that we can with regard to each of the

12    customers.   We owe that to all of those customers who left

13    their money in there relying upon his lies, and they

14    deserve to have a complete and adequate investigation, so

15    that at the end of the day, Your Honor, they at least get

16    back a fair share of what they entrusted to Mr. Madoff.

17              That requires us to look at hundreds of

18    thousands of records.   These records, as I say, can't be

19    just the customers' statements.  As the SIPA statute says

20    we need to look at the books and records of the Debtor when

21    we make this decision and that requires us to look at bank

22    statements, to be able to trace cash in and cash out.

23    There were no securities, and that is the bedrock of this

24    case, cash in and cash out.   So at the end of the day we

25    can't rely on what Mr. Madoff says is in and out, we have

20

1   to look at bank records, third-party records, counterparts

2   and everyone else with regard to each claimant.

3           Each claimant here, and there was not very

4   many of them, are not very new to the scene.   Many had

5   been there for years, if not decades.   Many of them had

6   accounts they received from others, accounts that they

7   received from their father, their brother, their sister or

8   some other relative.   Well, that account was a fiction.

9   The father didn't have any cash.   What he had was false

10  profits.   His money in was gone years ago.   What are we

11  supposed to do?   Just ignore all of that?   Accept that?   Or

12  are we supposed to go and investigate that?

13          And that is exactly what we have been

14  doing, and a tremendous amount of time spent by Baker

15  Hostetler as well as the foreign counsel and the other

16  consultants we have hired has been spent on that effort.

17  And so we could find out what the truth is and make the

18  payments to those people under the statute, and in

19  accordance with the law and that is what we are doing.

20          Those customer claims that we received, the

21  almost 16,000 of those deserve, each and every one of them

22  to be examined carefully to arrive at exactly what the

23  facts are, not just to accept facially what one might

24  suggest should be the be all and end all.   Each customer

25  deserves to have in this horrible situation the ability to

08-01789-smb Doc 11091-2 Filed 06/17/15 Entered 06/17/15 18:18:07 Exhibit 2
08-01789-smb Doc 381 Filed 06/11/09 Entered 08/29/09 10:35:33 Main Document
Pg 22 of 41

21

1   know that this Trustee and his counsel have looked

2   carefully at those records, that we looked at the entire

3   history of them.

4          We are trying to assist them in accordance

5   with the statutes, the moneys under SIPA and from the

6   customers' funds be accumulated by the Trustee in excess of

7   $1 billion, soon-to-be 1 billion 5 and growing throughout

8   the course of the litigation that we commenced in this

9   case.

10          Our goal is to create the largest customer

11  fund possible so we could return not just to the people

12  entitled to the SIPA advantages of $500,000, but in

13  significant dollars through the customer fund administered

14  by Mr. Picard.

15          That requires us to look at the customer

16  claims carefully, Your Honor.   It is suggested that we are

17  not moving promptly.   Promptly is a subjective term.   If

18  someone went in and looked at all the work required to look

19  at all of this and find out what the background is, I would

20  suggest we are moving with all due diligence of deliberate

21  speed, and everything we could do to make this move as fast

22  as we have.   We have already paid out over $300 million.

23  We have allowed claims over $3 billion.

24          Those claims have already been adjudicated.

25  We have looked at them carefully, finished their claim.

22

1    Each of those people have received $500,000 or less

2    depending on the amount of their allowed claim.

3              That is just one aspect of this case, Your

4    Honor, requiring the assistance not only of Mr. Picard

5    reviewing these and looking at them, but also his counsel

6    and the people we have hired as our claims agent in it case

7    as well as other investigative means that we have.

8              That is just customer claims, Your Honor.

9    And we have an array of litigation.  Some of which has

10   reached this courthouse in terms of individuals that we

11   have sued for substantial sums of money that's been

12   wrongfully received, as we allege, and we allege based upon

13   a thorough analysis of the books and records.  This is

14   just not a spurious claim.  This is one that has been

15   thoroughly researched by the Trustee and brought to this

16   Court because we believe that money should be returned,

17   returned so that they could be distributed equally on a pro

18   rata basis to all of the legitimate customers and allowed

19   claims in this proceeding.

20             We are continuing that investigation, Your

21   Honor.  Your Honor will see over the succeeding months

22   numerous litigations.  This is a case that unlike almost

23   any other will have more litigation in it than probably any

24   other case that Your Honor has before you in terms of the

25   avoidance actions we have been bringing against literally

08-01789-smb    Doc 981    Filed 06/11/09    Entered 08/29/09 10:35:33    Main Document
Pg 24 of 41

23

1   hundreds of people.   An argument has been made that we

2   have somehow done is somehow adverse to some of the

3   customers.

4            What I have said publicly, and I will say

5   here, look at what the Trustee does.   The Trustee is not

6   suing little people.   He is not trying to hurt the little

7   guy.   We are suing people who have taken substantial funds

8   out.

9            We had settlements, as Your Honor has

10  approved, at this point, tantamount to 130 million dollars

11  from a foreign feeder fund, a very significant result in

12  this case.

13           In terms of the message it says to other

14  feeder funds that Mr. Picard will not just look back but he

15  will do everything he can to bringing the funds into the

16  estate.   That requires the full service of a lot of

17  attorneys at our firm.

18           Those records have been detailed and we

19  have given you this report because we believe we acted very

20  responsibly and reasonably in pursuing each of these

21  actions.   And not the least is the fact we have this vast

22  array of international litigation which I suspect, Your

23  Honor, as time progresses it will become even larger than

24  the domestic litigation that we have seen.

25           What we're seeing underlying these

08-01789-smb Doc 981 Filed 06/11/09 Entered 06/29/09 10:35:33 Main Document
Pg 25 of 41

24

1    international machinations that one could not comprehend

2    unless you have had access to all the records and see how

3    this money is moving between the banks, principals an

4    feeder funds and organizations that have no purpose other

5    than as to this.

6              This is not suggesting that you could

7    simply look at a bank statement and make a decision as to

8    what is occurring, Your Honor.  You need to have active

9    participation by lawyers, investigators and Trustees to get

10   behind the scenes and find out exactly what is happening,

11   which has cost us, as Your Honor knows, and which we have

12   already dealt with today, is the retention of counsel

13   around the world at this point and it is going to grow

14   simply because this is a fraud that went on for decades.

15             And the architect of it had an amazing

16   amount of time to create this fraud.  We are

17   deconstructing it and I think, quite frankly, I submit to

18   your Honor that the Trustee and his counsel and those he

19   has retained as consultants have in a very short period of

20   time unraveled a good deal of what is going on.  But that

21   onion has been has yet to be pierced to its core.

22             At the end of day all work that's detailed

23   in our time records and all the work we have spelled out in

24   the interim report will be submitted to you as well as to

25   the applications we have submitted here today.  The detail

08-01789-smb Doc 11091-2 Filed 06/17/15 Entered 06/17/15 18:18:07 Exhibit 2
08-01789-smb Doc 981 Filed 06/11/09 Entered 06/29/09 10:35:52 Main Document
Pg 26 of 41

25

 1    exactly what I think the Trustee has been doing and why we

 2    have been doing it, the purpose it is accomplishing by

 3    virtue of what we are doing in this case.

 4              I do want to talk a bit about the

 5    objections, not because I believe they have any merit.  I

 6    think, quite frankly, there's a collateral attack here.

 7              One of the objections actually reargued and

 8    we have made this statement to your Honor, essentially a

 9    cause of action that is completed here, the motion to

10    dismiss is pending.  We do not believe this is the forum

11    for that discussion.  It will be briefed and it will be

12    argued and Your Honor will render a decision as to what the

13    net equity calculation should be in this case as decided by

14    the Trustee, but ultimately by Your Honor.

15              But an objection to our fees here is not

16    the forum in which to discuss those issues, we respectfully

17    submit.

18              Mr. Picard has indicated there are other

19    objections, and most of those emanate from a

20    misapprehension of the law.  Unfortunately, there is a lot

21    of press that is erroneous with regard to the 3 percent

22    that has actually no application in the SIPA statute and,

23    Your Honor, has already alluded to that, to the fact that

24    somehow we are going to get a piece of the action.  There

25    is no basis in the law for that, factually or otherwise.

26

1    None of these objections are accurate.

2              Rather than deal with them any further, I

3    believe at this point Your Honor should just not ignore

4    them, everyone has an opportunity to come to this Court and

5    make their position known to your Honor, but respectfully

6    they should not stand in the way to your Honor granting

7    your application here today.

8              Your Honor, that summarily is where I

9    believe we have come in this case to date.  We have a lot

10   more work to do, but I would respectfully request that Your

11   Honor approve our application as stated in our paper.

12             MR. BELL:   Kevin Bell for SIPC, Your

13   Honor.

14             Let me put in perspective what this case is

15   about.  In the 38 and three-quarter years that SIPC has

16   been in existence, SIPC has advanced two Trustees 520

17   million to satisfy the claims of hundreds of thousands of

18   customers who have filed claims in over 320 liquidation

19   proceedings.

20             In this case, Your Honor, through last

21   night, SIPC has committed to advance $311 million to

22   satisfy the customers to whom the Trustee has made the

23   terminations.

24             That is more than 60 percent, Your Honor,

25   of what SIPC has advanced throughout its history in this

27

```
 1    case.

 2              I would expect, Your Honor, that in the

 3    coming weeks that that number, $520 million will be

 4    exceeded in this liquidation proceeding.  That is just the

 5    perspective of the dollars that SIPC is putting out for

 6    customers and the dollar amount that Mr. Sheehan has talked

 7    about of the allowed claims is about $3.4 billion.  That

 8    means there is $3.1 billion of claims above the SIPC

 9    amount.

10              And the statute clearly requires, Your

11    Honor, the Trustee and his counsel to be aggressive in

12    trying to recover each and every penny that Mr. Madoff and

13    his colleagues took from customers and disbursed worldwide.

14    That effort is required by the Securities Investor

15    Protection Act, Your Honor, and by Congress who intended

16    the Trustee to move forward.

17              Let's go back to the Chandler Act of 1936

18    and look at how 60(E) is constructed, and we can go back

19    and look at the legislative history, the paper crisis in

20    the '60s and we can look at that to see how SIPA was

21    created.

22              The whole program that Congress set up

23    where SIPC would advance funds to supplement whatever the

24    Trustee had in the customer properties.  We have submitted

25    a response to the objections in noting some of the points.
```

28

 1   But this misimpression about the word "insurance" is

 2   nowhere in the statute.  It is misleading.  It leads a

 3   lot of the innocent victims to, and I have talked to a

 4   number of them, to have a miscomprehension of what is

 5   happening.  SIPC has used its personnel and its resource

 6   to have this happen.

 7            With regard to the Trustee's applications,

 8   let me be very clear.  This Court's Order, monthly

 9   compensation procedure order of February 25, set forth the

10   procedures.  The Trustee and counsel have submitted to

11   SIPC on a monthly basis their invoices.  Each page of each

12   invoice has been read by the SIPC attorney on the case, by

13   me, as well by SIPC's general counsel, and we have entered

14   into dialogue with regard to some of the entries, with

15   regard to services.  There have been adjustments made with

16   regard to some of those entries.

17            SIPC has filed its recommendation.  We

18   said we look at applications.  We look at everything in

19   this case.  The oversight that SIPC has is a public

20   responsibility.

21            We had as you see in the response, we set

22   forth, a complete discussion at Congress when the statute

23   was amended in 1978.  I happen to have been with SIPC for

24   over 36 years.  So I have worked on hundreds of SIPC

25   liquidation proceedings and on a number of fee

29

1    applications.   I guess the three us, the general counsel

2    and I have been have an aggregate of 100 years of work on

3    SIPA matters and on fee applications.   So we bring a level

4    of expertise in reviewing this.

5              So some of the objections, Your Honor, were

6    by our own people and by bankruptcy practitioners seem to

7    miss the mark about really what the oversight is here

8    because this is a public trust that we have that we

9    represent to the Court in each and every recommendation we

10   make, particularly in cases where it is a no asset case

11   because the legislative history shows the complete

12   discussion of that fact with regard to how Section 5 of the

13   statute, the compensation provision, was created.

14             SIPC hopefully supports a recommendation of

15   the Trustee and of the Trustee's counsel with regard to the

16   applications that are before the Court and I would be

17   willing to answer any questions that the Court may have

18   with regard to SIPC's position.

19             THE COURT:  Thank you.

20             MR. BELL:   Thank you, Your Honor.

21             THE COURT:  Does anyone want to be heard?

22             MS. CHAITMAN:   I would like to speak now,

23   Your Honor.  My name is Helen Chaitman.  I am with the law

24   firm of Phillips Nizer.

25             I would like to outline in detail the

08-01789-smb   Doc 981   Filed 08/11/09   Entered 08/25/09 10:35:11   Main Document
Pg 31 of 41

30

1    objection that I have filed on behalf of Diane and Roger

2    Peskin and Maureen Ebel, the basis for which we asked the

3    Court to set a hearing at which we can prove the facts set

4    forth in the objection.

5            The objection is, in fact, an offer of

6    proof of what we would establish at the hearing and we

7    believe that Baker Hostetler and the Trustee have a

8    conflict of interest which under the established standard

9    in this Court disables them from serving in this case and

10   from receiving any compensation.

11           As a bankruptcy Trustee, it is fundamental

12   that the Trustee has a fiduciary duty to the customers of

13   this estate.

14           However that duty, Your Honor, is even more

15   important here because this is a proceeding under the

16   Securities Investor Protection Act which as SIPC has

17   acknowledged was passed in order to protect customers.

18           The protection to the customers under SIPA

19   is that the Trustee will promptly pay customers up to

20   $500,000 in SIPC insurance based upon their last account

21   statements.   That what the statute says, Your Honor, and I

22   understand that the term SIPC insurance is no longer

23   embraced by SIPC, but for the Trustee, but, in fact, it was

24   on the website until this case came down that SIPC started

25   to ignore the statute under which it was enacted.   It was

08-01789-smb   Doc 11091-2   Filed 08/17/15   Entered 08/17/15 18:18:07   Exhibit 2
08-01789-smb   Doc 981   Filed 06/11/09   Entered 08/29/09 10:35:51   Main Document
Pg 32 of 41

31

1    always referred to as SIPC insurance and it is not simply

2    an advance to customers, it is an advance to customers

3    where there are no assets in the case.   It is a guaranteed

4    payment to customers up to $500,000 based upon their last

5    statements.

6              I have laid out in the objection, Your

7    Honor, that under the statute there was no contemplation

8    that people would have to file claims.   The Trustee was

9    obligated to look at the last statements and honor the

10   claims.   Congress understood that there would be SIPA

11   liquidations involving crooks where the brokers had never

12   purchased the securities.

13             THE COURT:  Let me see if I understand the

14   thrust of your objection at this point.   It is A, there is

15   some kind of conflict of interest that then disables Baker

16   Hostetler and the Trustee from remaining on the case.   B,

17   that the distribution scheme as it was espoused is opposed

18   by you.

19             Frankly, I have read through your long

20   objection, and I do find it in the main it really

21   constitutes to the support of the Court for the adversary

22   proceeding that you brought which will be subject to

23   further review by this Court now.   So you are in an

24   adversarial position and I don't believe it is the

25   appropriate for you to use that as the a fulcrum to object

32

 1    to fees here.

 2            We will deal with the motion to dismiss,

 3    which is set before the Court when, in September or some

 4    time later on in the month.   But the only thing that

 5    really remains with respect to your objection is the

 6    disinterestedness of the Trustee and counsel.

 7            MS. CHAITMAN:  Well --

 8            THE COURT:  If you want to speak

 9    specifically to that I will be glad to entertain that.

10            MS. CHAITMAN:   I would like to, Your

11    Honor, because if the Trustee and Baker Hostetler were

12    acting solely in the interests of SIPC, they would have

13    handled their retention totally differently.

14            They have defied -- SIPA is not a Chinese

15    menu where you could take one from column A and one from

16    column B.

17            The statute mandates prompt payment of

18    customer claims based upon their last statements.   The

19    statute even prohibits SIPC from changing the definition of

20    net equity which is defined, in essence, as the last

21    statement.   All of this is laid out in the objection.

22            If SIPC chose not to follow the statute for

23    the first time in its 38 and-a-half years  --

24            THE COURT:  That is the issue that is drawn

25    before me in the adversary proceeding, Ms. Chaitman.

33

1             MS. CHAITMAN:  There is more than that.

2             THE COURT: That is what is before me and I

3     am not trying that issue today.

4             MS. CHAITMAN:   I understand that but the

5     point is -- SIPC is running expenses at the rate of $2

6     million a week.   The Trustee and Baker Hostetler are

7     running expenses at the rate of $1 million a week.

8             A great portion of those expenses are

9     solely because they are defying the mandate in the statute.

10    So by your approving fees, Your Honor, based upon a blatant

11    defiance of their statuary obligations, you are sanctioning

12    a conflict of interest.

13            What is important in this case which is

14    unprecedented certainly in SIPC's history is SIPC is

15    insolvent.   It is incapable of paying its debt as they

16    become as Marie Shapiro of the SEC commission, testified on

17    July 14 in Congress --

18            THE COURT:  That is hearsay and media

19    speculation.   I am here only with respect to the

20    appropriateness of granting fees.   I am not trying the

21    other issues, Ms. Chaitman, nor am I interested in what

22    goes on before Congress because it has no effect except the

23    laws that Congress passes and Congress did pass a very

24    peculiar law, if you want to call it that, with respect to

25    SIPA.

34

1          If you look at the wording in the statutes

2     they are very clear and they give this Court, as a matter

3     of fact very little discretion.

4               MS. CHAITMAN:   Your Honor --

5               THE COURT:  Do you have anything else, Ms.

6     Chaitman, that is not in your papers?

7               MS. CHAITMAN:   I have nothing that is not

8     in my papers, Your Honor.

9               THE COURT:  Thank you.

10         Is there any response?

11              MR. SHEEHAN:   No, Your Honor.

12              MR. BELL:   No, Your Honor.

13              THE COURT:  Does anyone else want to be

14    heard?

15         There is no response.

16         I have considered all of the responses, all

17    of the applications here before me today.   I find no merit

18    to the objections.

19         The last objector, essentially has a

20    disagreement with respect to the distribution scheme, and

21    that is an issue which is a matter that will be brought

22    before me and I would resolve it one way or the other.

23    But the Court has already held a disinterestedness hearing.

24    There was no objection at that time and there are no new

25    facts that have come forward that would change the

35

1    disinterestedness concept with respect to the fee

2    application here today.

3              With respect to the responses that were

4    stated in the objections, they clearly lay out the fact

5    that there has been nothing shown that this Trustee is not

6    acting in good faith.   That is clear.

7              There is nothing that has been shown that

8    this Trustee is guilty of any kind of fraud or dereliction

9    of duty, another very key important factor that the Court

10   would consider as to whether or not a Trustee should be

11   removed or his disinterestedness.

12             We come back down to the disagreement in

13   the approach to handling the case, which is a matter that

14   is to be determined by this Court in connection with the

15   adversary proceeding that is pending before me.

16             On the other hand, it has not been shown at

17   all that the Trustee services have been anything but

18   necessary, have been reasonable.  That have been a product

19   of decades of massive fraud, and I don't think there is any

20   real argument that this is the largest fraud committed in

21   the United States and I don't go back down to anything AD

22   or that appear in the rest of the world, but I am sure this

23   comes close to the top.

24             And many of the objections that have been

25   alleged are based upon the assumption that by granting fees

36

1    here that in some way it affects the amount of funds to be

2    distributed.    That is absolutely not the case.

3             The statute even reads, and I will quote

4    from the statutes, in any case which allowance are to be

5    paid by SIPC without reasonable expectation of recoupment,

6    therefore, as provided in this chapter and there is no

7    reasonable expectation of recoupment here, and there is no

8    difference between the amounts requested and the amounts

9    recommended by SIPC, the Court awards the amounts

10   recommended by SIPC.

11            The main word "shall" is included.  I am

12   taken by that because I know the difference between may and

13   shall.  That removes a fair amount of discretion on the

14   part of the Court when SIPC agrees with and makes the

15   recommendation with respect to the applications.   So there

16   isn't any real review that court ought to be conducting.

17   But even if the Court were to it is clear that SIPC is the

18   payor.

19            SIPC is the one whose ox is gored because

20   no funds of the claimant or of the victims will be impacted

21   by the granting of fees here, and it is clear from the

22   record before me that SIPC has not been supine as an

23   overseer.   And in each case of the applications that have

24   been run through SIPC, SIPC has reviewed them and has

25   caused an adjustment, and I assume an adjustment downward

08-01789-smb Doc 981 Filed 06/11/09 Entered 08/29/09 10:35:33 Main Document
Pg 38 of 41

37

1    in the request.

2              Therefore, there has been the form of

3    monitoring that Congress envisioned.   Now you may fault

4    Congress for the way it set this statute up.   I can fault

5    Congress in many respects.   But I do not have the power or

6    the inclination to do anything other than to implement the

7    law that is promulgated and handed down by Congress.   The

8    1978 amendments, for example, strengthened by a factor of

9    10, the hand of SIPC with respect to the conduct of these

10   cases.

11             I do not find that any basis for changing

12   this Court's view of disinterestedness exists, and I am

13   very familiar with a lot of the activities that have taking

14   place in connection with this matter.

15             As I alluded to before, this case now

16   becomes a poster child for across the board litigation in

17   that the protocols that have been developed and entered

18   into somewhat at the Court's urging and with respect to the

19   cooperation of foreign entities who have an involvement

20   here, those protocols have now found their way into the

21   international community.

22             And now from the official guidelines

23   emanating from the United Nation, the Trustee's services

24   have proven valuable in that regard and, certainly, we all

25   recognize that the fraud that has taken place over the

08-01789-smb  Doc 981  Filed 06/11/09  Entered 06/29/09 10:35:33  Main Document
Pg 39 of 41

38

1   decades by a convicted felon has mandated a really

2   extensive forensic activity in order to justify the

3   administration of this case and the handling of the claims

4   process.

5           I note that the Trustee has modified his

6   stance of changing the view of the expectancy in the

7   granting of claims.  And while I don't care much about the

8   media attention to this case, I can't help but read the New

9   York Law Journal every morning and reading about there has

10  been a further relaxation on the distribution scheme in

11  advancing it.

12          So that the sum of the complaints with

13  respect to the acceleration and approval has been adhered

14  to, and that there is a less restrictive approach having

15  been taken with respect to the dissemination of monies.

16          The long and short of it is that despite

17  the disagreement of methodology being applied here in this

18  unique and unusual case, I do find that the services

19  rendered have been reasonable, that they have been done

20  responsibly and to this point have been with a salutary

21  effect.

22          I will approve the application.

23          MR. SHEEHAN:   Thank you, Your Honor.

24          THE COURT:  Not withstanding the fact that

25  according to the Congressional scheme I don't have even

39

1    have a choice, as other courts have held.   I don't

2    necessarily agree with that because all I would have to do

3    if I disagree with the fees is perhaps put them over, but

4    if I have to put them over and I have no basis to do that,

5    but if anyone looks at the architect of the SIPA statute

6    they will see all that does is give SIPC another

7    opportunity to come back and justify the positions that it

8    has taken.   Another waste of time.

9              But, again, that is the way Congress wrote

10   it, and that is the way I will act to administer it.

11             I will entertain an order.

12             MR. SHEEHAN:   Thank you Your Honor.

13             May I approach.

14             THE COURT: Yes.

15             That is notwithstanding, Mr. Sheehan, one

16   condition that you are too old to do this.   That was

17   contained in one of the objections.

18             MR. SHEEHAN:   I am just a spring chicken

19   compared to Mr. Picard, Your Honor.

20             THE COURT:  I have approved the order.

21             MR. SHEEHAN:   Thank you very much, Your

22   Honor.

23             MS. NANN:   Thank you, Your Honor.

24                  *      *      *

25

08-01789-smb   Doc 981   Filed 08/11/09   Entered 08/29/09 10:35:33   Main Document
Pg 41 of 41

40

```
 1                    C E R T I F I C A T E

 2

 3     STATE OF NEW YORK        }

                                }    ss.:

 4     COUNTY OF NEW YORK       }

 5                    I, MINDY CORCORAN, a Shorthand Reporter

 6     and Notary Public within and for the State of New York, do

 7     hereby certify:

 8                    That I reported the proceedings in the

 9     within entitled matter, and that the within transcript is a

10     true record of such proceedings.

11                    I further certify that I am not related, by

12     blood or marriage, to any of the parties in this matter and

13     that I am in no way interested in the outcome of this

14     matter.

15                    IN WITNESS WHEREOF, I have hereunto set my

16     hand this 7th day of August, 2009.

17

18                    _____

                               MINDY CORCORAN

19

20

21

22

23

24

25
```