Page 1

```
 1   UNITED STATES BANKRUPTCY COURT
 2   SOUTHERN DISTRICT OF NEW YORK
 3
 4   - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
 5   SEURITIES INVESTOR PROTECTION
 6   CORPORATION,
 7               Plaintiff,
 8   v.                                  Adv. Case No. 08-01789(SMB)
 9   BERNARD L. MADOFF INVESTMENT
10   SECURITIES LLC,
11               Defendant.
12   - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
13
14               U.S. Bankruptcy Court
15               One Bowling Green
16               New York, New York
17
18               August 17, 2015
19               11:07 AM
20
21
22
23   B E F O R E :
24   HON STUART M. BERNSTEIN
25   U.S. BANKRUPTCY JUDGE
```

1  Hearing re:  Lax & Neville LLP's request for extension of
2  time to file answers in various adversary proceedings
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25  Transcribed by:  Dawn South

```
 1   A P P E A R A N C E S :
 2   BAKER HOSTETLER
 3        Attorney for the Trustee
 4        45 Rockefeller Plaza
 5        New York, NY 10111
 6
 7   BY:  NICHOLAS J. CREMONA, ESQ.
 8
 9   WINDELS MARX LANE & MITTENDORF LLP
10        Attorney for the Trustee
11        156 West 56th Street
12        New York, NY 10019
13
14   BY:  JOHN J. TEPEDINO, ESQ.
15
16   LAX & NEVILLE LLP
17        1450 Broadway
18        35th Floor
19        New York, NY 10018
20
21   BY:  BRIAN J. NEVILLE, ESQ.
22        RAQUEL KRAUS, ESQ.
23
24
25
```

```
 1                P R O C E E D I N G S
 2            THE COURT:  Please be seated.  Madoff?
 3            Got an application to extend the time to file
 4   answers in it looks like 15 or 20 adversary proceedings?
 5            MR. NEVILLE:  Yes, good morning, Honor.
 6            Actually this morning we just double checked the
 7   docket to make sure of the entry of all the case numbers on
 8   the letter that we had submitted on Friday was accurate, and
 9   it turns out that the list is somewhat inaccurate.  I have
10   an amended letter if I could approach and hand it to you?
11            THE COURT:  Sure.  Have you given a copy to
12   counsel?
13            MR. NEVILLE:  I have.
14            THE COURT:  Thank you.
15            MR. NEVILLE:  Your Honor, there's no substantive
16   difference from anything that we've put in the letter, we've
17   just changed the list from 21 to 14, and we indicated in a
18   footnote the ones that we thought had been due today,
19   they're actually due on September 18th.
20            THE COURT:  Go ahead.
21            MR. NEVILLE:  Your Honor, the basis of our
22   application is that we had an associate at our firm for five
23   years, Ms. Gabrielle Preto (ph).  She was the associate at
24   our firm that was primarily assigned to these cases, she had
25   the primary point of contact with the clients, and she was
```

1    the primary point of contact with counsel for the trustee.

2            She left the firm on short notice, and we were

3    just in a little bit of a bind.  We called counsel for the

4    trustee and asked for a short period of extension in which

5    to file the answers, and the trustee declined to do so.

6            So, Your Honor, we're respectfully requesting a

7    short extension of time to file these answers primarily so

8    we can inform our clients of what needs to go on in the

9    answer, what the state of the law is, and begin a discussion

10   of when intend to do going forward.

11           THE COURT:  When did the associate leave?

12           MR. NEVILLE:  Her last day in the office was a

13   week ago Tuesday.

14           THE COURT:  Isn't anyone supervising her work to

15   see if she prepared these answers?

16           MR. NEVILLE:  Your Honor, both my partner and I

17   were supervising her work, and there was a calendar, I

18   treated our calendar saying that this answer was due.

19           I was away on vacation and it just -- the answers

20   in these cases are not that substantive, we understand that

21   the law.

22           Your Honor, I was one of the attorneys that argued

23   the original motions to dismiss.  My partner, Mr. Lax argued

24   at the Second Circuit.  We're well aware of the state of the

25   law.  The answers themselves will not be that complex.

1           The thing that I'm particularly concerned about is
2   keeping in touch with the clients and informing them what we
3   are doing.
4           THE COURT:  Mr. Cremona?
5           MR. CREMONA:  Good morning, Your Honor.  Nicholas
6   Cremona of Baker Hostetler appearing on behalf of the
7   trustee.
8           Your Honor, I just would put the request in
9   context.  The first time I heard the request -- the first
10  time I heard that an extension was needed was Friday at
11  11:00 a.m.  I received an email from Ms. Kraus of Lax
12  Neville, and I'm happy to provide Your Honor with that
13  email, as well as my response.
14          But it's important to note the email requested a
15  blanket extension of the time to respond in 21 adversaries
16  proceedings for a period of 90 days.  To me --
17          THE COURT:  The letter said 60 days.
18          MR. CREMONA:  The letter said 60, but the email
19  asked for 90, and I immediately responded saying, you know,
20  it's unfortunate that the request was made on the eve of the
21  deadline, but I've made clear to all counsel that once these
22  orders were entered we were not extending these dates.  And
23  I'm happy to hand up these emails for Your Honor to review.
24          So, Your Honor, that is the first I had heard of
25  the request, and it was seeking a 90-day extension when we

1  had made clear that we would not be extending these
2  deadlines.
3           I think it's also important to note as,
4  Mr. Neville already acknowledged, these are straightforward
5  fictitious profits three year only cases where Your Honor's
6  order was entered on June 2, which disposed of all of the
7  defenses, and the --
8           THE COURT:  Were all these adversaries involved?
9           MR. CREMONA:  They were all subject to the omnibus
10 proceeding --
11          THE COURT:  Okay.
12          MR. CREMONA:  -- which is why I think they've been
13 on notice since June 2.  The orders were then entered on
14 July 16, which provided 30 days from that date.
15          I also independently emailed all counsel all along
16 the process, as you know it was a arduous 45-day negotiation
17 process to get the orders entered.
18          THE COURT:  Let me ask you a practical question.
19          MR. CREMONA:  Sure.
20          THE COURT:  If I deny the request are you going to
21 enter default judgments against these defendants?
22          MR. CREMONA:  We would not do that, Your Honor.
23 It was just a matter of the request we felt was not
24 reasonable in the time and the scope.
25          And just so you understand the trustee's position,

1   it's a matter of fairness, we've treated all counsel to
2   similarly situated defendants in the same fashion. We've
3   denied requests. And contrary to the statement in the
4   letter we're not giving extensions to cases in the omnibus
5   proceeding, with the exception of a handful, and that's only
6   in the cases where we have settlement in principal or we
7   have one where there was a deceased defendant.
8          So it is a matter of fairness and it is a matter
9   of the defendants -- I think it's also worth pointing out,
10  Your Honor and I had a conversation here in court January of
11  2014 where we had people that wanted further extensions, and
12  you know, the defendants have been in possession of the
13  trustee's exhibit, via these complaints, since December
14  2010. All we're talking about is whether or not the
15  transfers can be admitted or denied, and the basis for which
16  to answer has been in their possession for nearly five
17  years.
18         I understand it's unfortunate timing that
19  Ms. Preto was leaving the firm, but the trustee has to
20  manage the cases in a fair and consistent manner.
21         THE COURT: Okay. I got it.
22         Look, I will grant an extension 'til
23  September 18th to file the answers in the other case.
24         I understand what you're saying, Mr. Cremona, you
25  have to deal with a thousand cases or however many are left.

1  I'm curious how many are left, because I've been signing

2  dismissal order.

3           MR. CREMONA:  Uh-huh.

4           THE COURT:  But this is a situation where the firm

5  was in a bind.  Somebody left.

6           I agree with you that the legal issues have been

7  paired down, but you still have a complaint left, and I

8  don't know how you answer it or respond to claims that have

9  been dismissed, but you still have a complaint out there.

10          There's no point not granting the extension,

11 because I entered I default judgment that would not be

12 sustained on appeal.

13          So, I'll give you 'til September 18th to answer in

14 these 14 cases to go along with the (indiscernible) to

15 answer in the other cases that you mentioned.

16          MR. CREMONA:  Thank you, Your Honor.

17          THE COURT:  All right.  Why don't you just submit

18 an order so we have a record of that.

19          MR. NEVILLE:  We'll submit it when we get back to

20 the office.

21          THE COURT:  How many adversary proceedings are

22 left?

23          MR. CREMONA:  Roughly 565 on the innocent investor

24 side, and that takes into account all the dismissals based

25 on 546(e), and that's not including the bad faith cases.

```
 1              THE COURT:  And the subject of transferred cases.
 2              MR. CREMONA:  Exactly.
 3              THE COURT:  So how many cases in total are left?
 4              MR. CREMONA:  I would say approximately 625.
 5              THE COURT:  That's all?
 6              MR. CREMONA:  I believe so.
 7              THE COURT:  (Indiscernible) 1,000 last year.
 8              MR. CREMONA:  There were.  We've had a number of
 9   successful mediations, as Your Honor is aware, a tremendous
10   number of settlements in 2014, as well as post 546(e) we've
11   dismissed about 120 cases, which were preference or secure
12   only cases.  So --
13              THE COURT:  Okay.
14              MR. CREMONA:  -- there's been a tremendous amount
15   of progress since then.
16              THE COURT:  All right.  Thank you.  Good seeing
17   you.
18              MR. CREMONA:  Thank you, Your Honor.
19              MR. NEVILLE:  Thank you, Your Honor.
20       (Whereupon these proceedings were concluded at 11:47
21   AM)
22
23
24
25
```

# I N D E X

### RULINGS

                                                                    PAGE

Lax & Neville LLP's Request for Extension of Time
to File Answers in Various Adversary Proceedings        8

1        C E R T I F I C A T I O N

2

3   I, Dawn South, certify that the foregoing transcript is a

4   true and accurate record of the proceedings.

5   *Dawn South* (Digitally signed by Dawn South
    DN: cn=Dawn South, o=Veritext, ou,
    email=digital@veritext.com, c=US
    Date: 2015.08.18 10:12:28 -04'00')

6   _____

7   Dawn South

8   AAERT Certified Electronic Transcriber CET**D-408

9

10

11

12  Date:   August 18, 2015

13

14

15

16

17

18

19

20

21

22  Veritext Legal Solutions

23  330 Old Country Road

24  Suite 300

25  Mineola, NY 11501