**BECKER & POLIAKOFF LLP**

Helen Davis Chaitman hchaitman@bplegal.com
45 Broadway
New York, New York 10006
Telephone  (212) 599-3322
Facsimile  (212) 557-0295

*Attorneys for Defendants Jerome Goodman, individually, as trustee
for The Jerome Goodman Children's GRAT #1, as Limited Partner of
Goodman Capital Partners L.P., and as Beneficiary of The Jerome
Goodman Children's GRAT #1, Goodman Capital Partners L.P., The
Jerome Goodman Children's GRAT #1, Kevin Goodman, as
Beneficiary of The Jerome Goodman Children's GRAT #1 and as
Limited Partner of Goodman Capital Partners L.P., Peter Goodman,
as Beneficiary of The Jerome Goodman Children's GRAT #1 and as
Limited Partner of Goodman Capital Partners L.P., Abbey Goodman,
as Beneficiary of The Jerome Goodman Children's GRAT #1 and as
Limited Partner of Goodman Capital Partners L.P., Philip Goodman,
as Limited Partner of Goodman Capital Partners L.P., and Goodman
Holdings, Inc., as General Partner of Goodman Capital Partners L.P.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-1789 (SMB) |
| Plaintiff-Applicant, | SIPA LIQUIDATION |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | Adv. Pro. No. 10-04545 (SMB) |
| Plaintiff, | **JURY TRIAL DEMANDED** |

{N0089801 4 }

v.

JEROME GOODMAN, Individually, as trustee for The
Jerome Goodman Children's GRAT #1, as Limited
Partner of Goodman Capital Partners L.P., and as
Beneficiary of The Jerome Goodman Children's GRAT
#1,

GOODMAN CAPITAL PARTNERS L.P.,

THE JEROME GOODMAN CHILDREN'S GRAT #1,
KEVIN GOODMAN, as Beneficiary of The Jerome
Goodman Children's GRAT #1 and as Limited Partner
of Goodman Capital Partners L.P.,

PETER GOODMAN, as Beneficiary of The Jerome
Goodman Children's GRAT #1 and as Limited Partner
of Goodman Capital Partners L.P.,

ABBEY GOODMAN, as Beneficiary of The Jerome
Goodman Children's GRAT #1 and as Limited Partner
of Goodman Capital Partners L.P.,

PHILIP GOODMAN, as Limited Partner of Goodman
Capital Partners L.P., and

GOODMAN HOLDINGS, INC., as General
Partner of Goodman Capital Partners L.P.,

Defendants.

## ANSWER AND AFFIRMATIVE DEFENSES

Jerome Goodman, individually, as trustee for The Jerome Goodman Children's GRAT

#1, as Limited Partner of Goodman Capital Partners L.P., and as Beneficiary of The Jerome

Goodman Children's GRAT #1, Goodman Capital Partners L.P., The Jerome Goodman

Children's GRAT #1, Kevin Goodman, as Beneficiary of The Jerome Goodman Children's

GRAT #1 and as Limited Partner of Goodman Capital Partners L.P., Peter Goodman, as

Beneficiary of The Jerome Goodman Children's GRAT #1 and as Limited Partner of Goodman

Capital Partners L.P., Abbey Goodman, as Beneficiary of The Jerome Goodman Children's

GRAT #1 and as Limited Partner of Goodman Capital Partners L.P., Philip Goodman, as Limited

Partner of Goodman Capital Partners L.P., and Goodman Holdings, Inc., as General Partner of

Goodman Capital Partners L.P. ("Defendants"), by and through their undersigned counsel, as

and for their Answer to the Complaint filed by Irving H. Picard ("Plaintiff"), as trustee for the

liquidation of the business of Bernard L. Madoff Investment Securities LLC ("BLMIS") under

the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa, *et seq.* ("SIPA"),[1] and the

substantively consolidated estate of Bernard L. Madoff individually ("Madoff"), state as follows:

Pursuant to the Order Granting in Part and Denying in Part Defendants' Motions to

Dismiss entered in this proceeding on July 16, 2015 [ECF No. 48], the Court dismissed all

counts other than those seeking to avoid and recover initial transfers pursuant to sections

548(a)(1)(A), and 551 of the Bankruptcy Code. The Court dismissed without prejudice counts

seeking to recover subsequent transfers from subsequent transferee defendants pursuant to

section 550(a) of the Bankruptcy Code, applicable provision of SIPA including section 78fff-

2(c)(3) and New York Debtor Creditor Law. Therefore, no response to these counts is

required. To the extent a response is required, the allegations as to those counts are denied.

## NATURE OF PROCEEDING

1.      This adversary proceeding arises from the massive Ponzi scheme perpetrated by

Madoff. Over the course of the scheme, there were more than 8,000 client accounts at BLMIS. In

early December 2008, BLMIS generated client account statements for its approximately 4,900

open client accounts. When added together, these statements purport that clients of BLMIS had

approximately $65 billion invested with BLMIS. In reality, BLMIS had assets on hand worth a

small fraction of that amount. On March 12, 2009, Madoff admitted to the fraudulent scheme and

pled guilty to 11 felony counts, and was sentenced on June 29, 2009 to 150 years in prison. The

---

[1] For convenience, future reference to SIPA will not include "15 U.S.C."

within defendants, Jerome Goodman, individually, and in his capacity as trustee of The Jerome

Goodman Children's GRAT #1, Goodman Capital Partners, L.P., The Jerome Goodman

Children's GRAT #1 and Goodman Holdings, Inc. ("Defendants"), received avoidable transfers

from BLMIS.

**ANSWER:    Defendants deny receipt of avoidable transfers from BLMIS and**

**otherwise lack knowledge or information sufficient to form a belief as to the truth of the**

**remaining allegations of Paragraph 1.**

2.    Defendants were beneficiaries of this Ponzi scheme. Since December 11, 2002,

Defendants received the amount of $12,548,205 from BLMIS. The Trustee's investigation has

revealed that $1,927,814 of this amount represented fictitious profits from the Ponzi scheme.

Accordingly, Defendants have received $1,927,814 of other people's money. Upon information

and belief, Defendants The Jerome Goodman Children's GRAT #1, Jerome Goodman, Kevin

Goodman, Peter Goodman, Abbey Goodman and Philip Goodman ("Subsequent Transferee

Defendants") received subsequent transfers of the avoidable transfers referenced above. To the

extent the funds transferred from BLMIS were for the benefit of the Subsequent Transferee

Defendants, Subsequent Transferee Defendants are the initial transferees of such transfers and

are included in the definition of Defendants for purposes of the allegations herein. This action is

brought to recover the fictitious profit amount so that this customer property can be equitably

distributed among all of the victims of BLMIS.

**ANSWER:    Defendants deny the allegations of Paragraph 2.**

3.    This adversary proceeding is brought pursuant to sections 78fff(b), 78fff-1(a) and

78fff-2(c)(3) of SIPA, sections 105(a), 544, 548(a), 550(a) and 551 of title 11 of the United

States Code (the "Bankruptcy Code"), the New York Fraudulent Conveyance Act (New York

Debtor and Creditor Law § 270 *et seq.* (McKinney 2001) ("DCL")) and other applicable law, for avoidance of fraudulent conveyances in connection with certain transfers of property by BLMIS to or for the benefit of Defendants. The Trustee seeks to set aside such transfers and preserve and recover the property for the benefit of BLMIS' defrauded customers.

**ANSWER:    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 3.**

<u>**JURISDICTION AND VENUE**</u>

4.    This is an adversary proceeding commenced before the same Court before whom the main underlying SIPA proceeding, No. 08-01789 (BRL) (the "SIPA Proceeding"), is pending. The SIPA Proceeding was originally brought in the United States District Court for the Southern District of New York as *Securities Exchange Commission v. Bernard L. Madoff Investment Securities LLC et al.*, No. 08 CV 10791 (the "District Court Proceeding") and has been referred to this Court. This Court has jurisdiction over this adversary proceeding under 28 U.S.C. § 1334(b) and 15 U.S.C. §§ 78eee(b)(2)(A), (b)(4).

**ANSWER:    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 4.**

5.    This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (H) and (O).

**ANSWER:    Defendants deny the allegations of Paragraph 5.  Pursuant to Local Rule 9027-2, Defendants do not consent to the entry of final orders or judgment by the Bankruptcy Court.**

6.    Venue in this district is proper under 28 U.S.C. § 1409.

**ANSWER:    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 6.**

**DEFENDANTS**

7.    Upon information and belief, Defendant and Subsequent Transferee Defendant

Jerome Goodman is the trustee for and a beneficiary of The Jerome Goodman Children's GRAT

#1, and a limited partner of Goodman Capital Partners, L.P. Jerome Goodman holds a BLMIS

account in the name, "Jerome Goodman c/o Kevin Goodman," with the account address reported

in Great Neck, New York. Jerome Goodman maintains his residence in Great Neck, New York.

**ANSWER:    Defendant admits the allegations of Paragraph 7, except to deny that**

**he is a resident of Great Neck, New York.**

8.    Upon information and belief, Defendant Goodman Capital Partners, L.P. is a

limited partnership that was formed under the laws of the state of New York. Its principal place

of business is located in Great Neck, New York. Goodman Capital Partners, L.P. holds a BLMIS

account in the name, "Goodman Capital Partners, L.P.," with the account address reported in

Great Neck, New York.

**ANSWER:    Defendant admits the allegations of Paragraph 8, except to deny that**

**it was formed under the laws of the state of New York.**

9.    Upon information and belief, Defendant The Jerome Goodman Children's GRAT

#1 is a Grantor Retained Annuity Trust that was formed under the laws of the state of New York.

The Jerome Goodman Children's GRAT #1 holds a BLMIS account in the name, "The Jerome

Goodman Children's GRAT #1," with the account address reported in Great Neck, New York.

**ANSWER:    Defendant admits the allegations of Paragraph 9, except that**

**Defendant lacks knowledge or information sufficient to form a belief as to the state of**

**formation of the The Jerome Goodman Children's GRAT #1.**

10.    Upon information and belief, Defendant Goodman Holdings, Inc. is a corporation

that was formed under the laws of the state of New York. Its principal place of business is

located in Great Neck, New York. Goodman Holdings, Inc. is the general partner of Goodman Capital Partners, L.P.

**ANSWER:    Defendant admits the allegations of Paragraph 10.**

11.    Upon information and belief, Subsequent Transferee Defendant Kevin Goodman is a beneficiary of The Jerome Goodman Children's GRAT #1 and a limited partner of Goodman Capital Partners, L.P. Kevin Goodman maintains his residence in Great Neck, New York.

**ANSWER:    Defendant admits the allegations of Paragraph 11.**

12.    Upon information and belief, Subsequent Transferee Defendant Peter Goodman is a beneficiary of The Jerome Goodman Children's GRAT #1 and a limited partner of Goodman Capital Partners L.P. Peter Goodman maintains his residence in Hallandale Beach, Florida.

**ANSWER:    Defendant admits the allegations of Paragraph 12, except to deny that he resides in Hallandale Beach, Florida.**

13.    Upon information and belief, Subsequent Transferee Defendant Abbey Goodman is a beneficiary of The Jerome Goodman Children's GRAT #1 and a limited partner of Goodman Capital Partners, L.P. Abbey Goodman maintains her residence in New York, New York.

**ANSWER:    Defendant admits the allegations of Paragraph 13, except to deny that she resides in New York, New York.**

14.    Upon information and belief, Subsequent Transferee Defendant Philip Goodman is a limited partner of Goodman Capital Partners, L.P. Philip Goodman maintains his residence in Roslyn, New York.

**ANSWER:    Defendant admits the allegations of Paragraph 14.**

## BACKGROUND, THE TRUSTEE AND STANDING

15.    On December 11, 2008 (the "Filing Date"),[2] Madoff was arrested by federal

agents for violation of the criminal securities laws, including, *inter alia*, securities fraud,

investment adviser fraud, and mail and wire fraud. Contemporaneously, the Securities and

Exchange Commission ("SEC") filed a complaint in the District Court which commenced the

District Court Proceeding against Madoff and BLMIS. The District Court Proceeding remains

pending in the District Court. The SEC complaint alleged that Madoff and BLMIS engaged in

fraud through the investment advisor activities of BLMIS.

**ANSWER:    Defendants lack knowledge or information sufficient to form a belief
as to the truth of the allegations of Paragraph 15.**

16.    On December 12, 2008, The Honorable Louis L. Stanton of the District Court

entered an order appointing Lee S. Richards, Esq. (the "Receiver") as receiver for the assets of

BLMIS.

**ANSWER:    Defendants lack knowledge or information sufficient to form a belief
as to the truth of the allegations of Paragraph 16.**

17.    On December 15, 2008, pursuant to section 78eee(a)(4)(A) of SIPA, the SEC

consented to a combination of its own action with an application of the Securities Investor

Protection Corporation ("SIPC"). Thereafter, pursuant to section 78eee(a)(4)(B) of SIPA, SIPC

filed an application in the District Court alleging, *inter alia*, that BLMIS was not able to meet its

obligations to securities customers as they came due and, accordingly, its customers needed the

protections afforded by SIPA.

---

[2] Section 78*lll*(7)(B) of SIPA states that the filing date is "the date on which an application for a protective decree is filed under 78eee(a)(3)," except where the debtor is the subject of a proceeding pending before a United States court "in which a receiver, trustee, or liquidator for such debtor has been appointed and such proceeding was commenced before the date on which such application was filed, the term 'filing date' means the date on which such proceeding was commenced." 15 U.S.C. § 78*lll*(7)(B). Thus, even though the application for a protective decree was filed on December 15, 2008, the Filing Date in this action is December 11, 2008.

**ANSWER:**   **Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 17.**

18.   Also on December 15, 2008, Judge Stanton granted the SIPC application and entered an order pursuant to SIPA (the "Protective Decree"), which, in pertinent part:

a.   appointed the Trustee for the liquidation of the business of BLMIS pursuant to section 78eee(b)(3) of SIPA;

b.   appointed Baker & Hostetler LLP as counsel to the Trustee pursuant to section 78eee(b)(3) of SIPA; and

c.   removed the case to this Court pursuant to section 78eee(b)(4) of SIPA. By this Protective Decree, the Receiver was removed as Receiver for BLMIS.

**ANSWER:**   **Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 18.**

19.   By orders dated December 23, 2008 and February 4, 2009, respectively, the Bankruptcy Court approved the Trustee's bond and found that the Trustee was a disinterested person. Accordingly, the Trustee is duly qualified to serve and act on behalf of the estate of BLMIS.

**ANSWER:**   **Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 19.**

20.   At a Plea Hearing on March 12, 2009 in the case captioned *United States v. Madoff*, Case No. 09-CR-213(DC), Madoff pled guilty to an eleven-count criminal information filed against him by the United States Attorneys' Office for the Southern District of New York. At the Plea Hearing, Madoff admitted that he "operated a Ponzi scheme through the investment advisory side of [BLMIS]." Plea Allocution of Bernard L. Madoff at 23, *United States v. Madoff,*

No. 09-CR-213 (DC) (S.D.N.Y. March 12, 2009) (Docket No. 50). Additionally, Madoff

asserted "[a]s I engaged in my fraud, I knew what I was doing [was] wrong, indeed criminal." *Id.*

Madoff was sentenced on June 29, 2009 to 150 years in prison.

       **ANSWER:**    **Defendants lack knowledge or information sufficient to form a belief**

**as to the truth of the allegations of Paragraph 20.**

       21.      On August 11, 2009, a former BLMIS employee, Frank DiPascali, pled guilty to

participating in and conspiring to perpetuate the Ponzi scheme. At a Plea Hearing on August 11,

2009 in the case entitled *United States v. DiPascali,* Case No. 09-CR-764 (RJS), DiPascali pled

guilty to a ten-count criminal information. Among other things, DiPascali admitted that the

fictitious scheme had begun at BLMIS since at least the 1980s. Plea Allocution of Frank

DiPascali at 46, *United States v. DiPascali,* No. 09-CR-764 (RJS) (S.D.N.Y. Aug. 11, 2009)

(Docket No. 11).

       **ANSWER:**    **Defendants lack knowledge or information sufficient to form a belief**

**as to the truth of the allegations of Paragraph 21.**

       22.      As the Trustee appointed under SIPA, the Trustee is charged with recovering and

paying out customer property to BLMIS' customers, assessing claims, and liquidating any other

assets of the firm for the benefit of the estate and its creditors. The Trustee is in the process of

marshalling BLMIS' assets, and the liquidation of BLMIS' assets is well underway. However,

such assets will not be sufficient to reimburse the customers of BLMIS for the billions of dollars

that they invested with BLMIS over the years. Consequently, the Trustee must use his authority

under SIPA and the Bankruptcy Code to pursue recovery from customers who received

preferences and/or payouts of fictitious profits to the detriment of other defrauded customers

whose money was consumed by the Ponzi scheme. Absent this or other recovery actions, the

Trustee will be unable to satisfy the claims described in subparagraphs (A) through (D) of SIPA section 78fff-2(c)(1).

**ANSWER:    Defendants deny the allegations of Paragraph 22.**

23.    Pursuant to section 78fff-1(a), the Trustee has the general powers of a bankruptcy trustee in a case under the Bankruptcy Code in addition to the powers granted by SIPA pursuant to SIPA section 78fff(b). Chapters 1, 3, 5 and subchapters I and II of chapter 7 of the Bankruptcy Code apply to this proceeding to the extent consistent with SIPA.

**ANSWER:    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 23.**

24.    Pursuant to sections 78fff(b) and 78*lll*(7)(B) of SIPA, the Filing Date is deemed to be the date of the filing of the petition within the meaning of section 548 of the Bankruptcy Code and the date of the commencement of the case within the meaning of section 544 of the Bankruptcy Code.

**ANSWER:    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 24.**

25.    The Trustee has standing to bring these claims pursuant to section 78fff-1(a) of SIPA and the Bankruptcy Code, including sections 323(b) and 704(a)(1), because, among other reasons:

a.    the Defendants received "Customer Property" as defined in 15 U.S.C. §78*lll*(4);

b.    BLMIS incurred losses as a result of the claims set forth herein;

c.    BLMIS' customers were injured as a result of the conduct detailed herein;

> d.    SIPC has not reimbursed, and statutorily cannot fully reimburse, all customers for all of their losses;

> e.    the Trustee will not be able to fully satisfy all claims;

> f.    the Trustee, as bailee of customer property, can sue on behalf of the customer bailors;

> g.    the Trustee is the assignee of claims paid, and to be paid, to customers of BLMIS who have filed claims in the liquidation proceeding (such claim-filing customers, collectively, "Accountholders"). As of the date hereof, the Trustee has received multiple express unconditional assignments of the applicable Accountholders' causes of action, which actions could have been asserted against Defendants and Subsequent Transferee Defendants. As assignee, the Trustee stands in the shoes of persons who have suffered injury in fact and a distinct and palpable loss for which the Trustee is entitled to reimbursement in the form of monetary damages. The Trustee brings this action on behalf of, among others, those defrauded customers of BLMIS who invested more money in BLMIS than they withdrew; and

> h.    SIPC is the subrogee of claims paid, and to be paid, to customers of BLMIS who have filed claims in the liquidation proceeding. SIPC has expressly conferred upon the Trustee enforcement of its rights of subrogation with respect to payments it has made and is making to customers of BLMIS from SIPC funds.

**ANSWER:    Defendants deny the allegations of Paragraph 25.**

## THE FRAUDULENT PONZI SCHEME

26.    Founded in 1959, BLMIS began operations as a sole proprietorship of Madoff and later, effective January 2001, formed as a New York limited liability company wholly owned by Madoff. Since in or about 1986, BLMIS operated from its principal place of business at 885 Third Avenue, New York, New York. Madoff, as founder, proprietor, chairman, and chief

executive officer, ran BLMIS together with several family members and a number of additional

employees. BLMIS was registered with the SEC as a securities broker-dealer under section 15(b)

of the Securities Exchange Act of 1934, 15 U.S.C. § 78*o*(b). By that registration, BLMIS is a

member of SIPC. BLMIS had three business units: investment advisory (the "IA Business"),

market making and proprietary trading.

**ANSWER:    Defendants deny the allegations of Paragraph 26: BLMIS was not**

**formed until 2001.**

27.     For certain accounts in the IA Business, BLMIS purported to participate in a

capital appreciation/depreciation strategy, depending on whether the customer sought to generate

gains or losses. For example, the strategy was executed by either purporting to purchase small

groups of securities near lows and then purporting to sell those same securities at highs, or by

purporting to short-sell securities near highs and then purporting to repurchase those securities

near lows.

**ANSWER:    Defendants lack knowledge or information sufficient to form a belief**

**as to the truth of the allegations of Paragraph 27.**

28.     For other accounts, Madoff described the IA Business' strategy as a "split-strike

conversion" strategy. Madoff promised these clients that their funds would be invested in a

basket of common stocks within the S&P 100 Index, which is a collection of the 100 largest U.S.

publicly traded companies. The basket of stocks would be intended to mimic the movement of

the S&P 100 Index. Madoff asserted that he would carefully time purchases and sales to

maximize value, but this meant that the clients' funds would intermittently be out of the market,

at which times they would purportedly be invested in U.S. issued securities and money market

funds. The second part of the split-strike conversion strategy was the hedge of such purchases

with option contracts. Madoff purported to purchase and sell S&P 100 Index option contracts

that closely corresponded with the stocks in the basket, thereby controlling the downside risk of

price changes in the basket of stocks.

**ANSWER:    Defendants lack knowledge or information sufficient to form a belief**

**as to the truth of the allegations of Paragraph 28.**

29.    Although clients of the IA Business received monthly or quarterly statements

purportedly showing the securities that were held in – or had been traded through – their

accounts, as well as the growth of and profit from those accounts over time, the trades reported

on these statements were a complete fabrication. The security purchases and sales depicted in the

account statements virtually never occurred and the profits reported were entirely fictitious. At

his Plea Hearing, Madoff admitted that he never in fact purchased any of the securities he

claimed to have purchased for customer accounts. *See* Plea Allocution of Bernard L. Madoff at 3,

*United States v. Madoff,* No. 09-CR-213 (DC) (S.D.N.Y. March 12, 2009) (Docket No. 50).

Indeed, based on the Trustee's investigation to date and with the exception of isolated individual

trades for certain clients other than Defendants, there is no record of BLMIS having cleared any

purchase or sale of securities on behalf of the IA Business at the Depository Trust & Clearing

Corporation, the clearing house for such transactions.

**ANSWER:    Defendants deny the allegations of Paragraph 29.**

30.    Prior to his arrest, Madoff assured clients and regulators that he conducted all

trades on the over-the-counter market after hours. To bolster that lie, Madoff periodically wired

tens of millions of dollars to BLMIS' affiliate, Madoff Securities International Ltd. ("MSIL"), a

London based entity substantially owned by Madoff and his family. There are no records that

MSIL ever used the wired funds to purchase securities for the accounts of the IA Business

clients.

**ANSWER:    Defendants lack knowledge or information sufficient to form a belief**

**as to the truth of the allegations of Paragraph 30.**

31.    Additionally, based on the Trustee's investigation to date, there is no evidence

that BLMIS ever purchased or sold any of the options that Madoff claimed on customer

statements to have purchased and sold.

**ANSWER:    Defendants lack knowledge or information sufficient to form a belief**

**as to the truth of the allegations of Paragraph 31.**

32.    For all periods relevant hereto, the IA Business was operated as a Ponzi scheme

and Madoff and his co-conspirators concealed the ongoing fraud in an effort to hinder, delay or

defraud other current and prospective customers of BLMIS. The money received from investors

was not set aside to buy securities as purported, but instead was primarily used to make the

distributions to – or payments on behalf of – other investors. The money sent to BLMIS for

investment, in short, was simply used to keep the scheme going and to enrich Madoff, his

associates and others, including Defendants, until such time as the requests for redemptions in

December 2008 overwhelmed the flow of new investments and caused the inevitable collapse of

the Ponzi scheme.

**ANSWER:    Defendants deny the allegations of Paragraph 32.**

33.    The payments to investors constituted an intentional misrepresentation of fact

regarding the underlying accounts and were an integral and essential part of the fraud. The

payments were necessary to validate the false account statements, and were made to avoid

detection of the fraud, to retain existing investors and to lure other investors into the Ponzi

scheme.

**ANSWER:     Defendants deny the allegations of Paragraph 33.**

34.     During the scheme, certain investors requested and received distributions of the

so-called "profits" listed for their accounts which were nothing more than fictitious profits. Other

investors, from time to time, redeemed or closed their accounts, or removed portions of

purportedly available funds, and were paid consistently with the statements they had been

receiving. Some of those investors later re-invested part or all of those withdrawn payments with

BLMIS.

**ANSWER:     Defendants lack knowledge or information sufficient to form a belief
as to the truth of the allegations of Paragraph 34.**

35.     When payments were made to or on behalf of these investors, including

Defendants, the falsified monthly statements of accounts reported that the accounts of such

investors included substantial gains. In reality, BLMIS had not invested the investors' principal

as reflected in customer statements. In an attempt to conceal the ongoing fraud and thereby

hinder, delay or defraud other current and prospective investors, BLMIS paid to or on behalf of

certain investors the inflated amounts reflected in the falsified financial statements, including

principal and/or fictitious profits.

**ANSWER:     Defendants lack knowledge or information sufficient to form a belief
as to the truth of the allegations of Paragraph 35.**

36.     BLMIS used the funds deposited from new investments to continue operations

and pay redemption proceeds to or on behalf of other investors and to make other transfers. Due

to the siphoning and diversion of new investments to fund redemptions requested by other

investors, BLMIS did not have the funds to pay investors on account of their new investments.

BLMIS was able to stay afloat only by using the principal invested by some clients to pay other

investors or their designees.

> **ANSWER:    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 36.**

37.    In an effort to hinder, delay or defraud authorities from detecting the fraud, BLMIS did not register as an Investment Advisor until September 2006.

> **ANSWER:    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 37.**

38.    In or about January 2008, BLMIS filed with the SEC a Uniform Application for Investment Adviser Registration. The application represented, *inter alia*, that BLMIS had 23 customer accounts and assets under management of approximately $17.1 billion. In fact, in January 2008, BLMIS had approximately 4,900 active client accounts with a purported value of approximately $65 billion under management.

> **ANSWER:    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 38.**

39.    Not only did Madoff seek to evade regulators, Madoff also had false audit reports "prepared" by Friehling & Horowitz, a three-person accounting firm in Rockland County, New York. Of the two accountants at the firm, one was semi-retired and living in Florida for many years prior to the Filing Date.

> **ANSWER:    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 39.**

40.     At all times relevant hereto, the liabilities of BLMIS were billions of dollars greater than the assets of BLMIS. At all relevant times, BLMIS was insolvent in that (i) its assets were worth less than the value of its liabilities; (ii) it could not meet its obligations as they came due; and (iii) at the time of the transfers, BLMIS was left with insufficient capital.

**ANSWER:     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 40.**

## THE TRANSFERS

41.     According to BLMIS' records, multiple accounts (Nos. 1CM520, 1CM521 and 1CM787) were maintained with BLMIS, as set forth on Exhibit A (collectively, the "Accounts"). Upon information and belief, for each Account, a Customer Agreement, an Option Agreement, and/or a Trading Authorization Limited to Purchases and Sales of Securities and Options (collectively, the "Account Agreements") were executed and delivered to BLMIS at BLMIS' headquarters at 885 Third Avenue, New York, New York.

**ANSWER:     Defendants admit the allegations of Paragraph 41 except to state that he does not recall whether a Customer Agreement, an Option Agreement, and/or a Trading Authorization Limited to Purchases and Sales of Securities and Options were executed in connection with each of the accounts.**

42.     The Account Agreements were to be performed in New York, New York through securities trading activities that would take place in New York, New York. The Accounts were held in New York, New York, and Defendants sent funds to BLMIS and/or to BLMIS' account at JPMorgan Chase & Co., Account #xxxxxxxxxxx1703 (the "BLMIS Bank Account") in New York, New York for application to the Accounts and the purported conducting of trading activities. Between the date the Accounts were opened and the Filing Date, Defendants made

deposits to BLMIS through checks and/or wire transfers into the BLMIS Bank Accounts and/or received inter-account transfers from other BLMIS accounts.

**ANSWER:    Defendants deny the allegations of Paragraph 42 to the extent that BLMIS was not formed until 2001 and otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 42.**

43.    During the six years prior to the Filing Date, BLMIS made transfers (collectively, the "Transfers") to Defendants totaling at least $1,927,814 in fictitious profits from the Ponzi scheme. The Transfers received by Defendants constitute non-existent profits supposedly earned in the Account, but, in reality, they were other people's money. The Transfers were made to or for the benefit of Defendants and are set forth in Columns 10 and 11 on Exhibit B annexed hereto.

**ANSWER:    Defendants deny the allegations of Paragraph 43.**

44.    The Transfers that are avoidable and recoverable under sections 544(b), 550(a)(1) and 551 of the Bankruptcy Code, applicable provisions of SIPA, particularly SIPA section 78fff-2(c)(3), and applicable provisions of N.Y. CPLR 203(g) (McKinney 2001) and DCL sections 273 – 279 (McKinney 2001) total at least $1,927,814 and are referred to hereafter as the "Six Year Transfers." See Exhibit B, Column 11. The Transfers that are avoidable and recoverable under sections 548(a), 550(a)(1) and 551 of the Bankruptcy Code and applicable provisions of SIPA, particularly SIPA section 78fff-2(c)(3) total at least $1,572,609 and are referred to hereafter as the "Two Year Transfers." See Exhibit B, Column 10.

**ANSWER:    Defendants deny the allegations of Paragraph 44.**

45.    On information and belief, the amount of $2,000,000 of the Transfers were subsequently transferred by Defendant Jerome Goodman to Subsequent Transferee Defendant

The Jerome Goodman Children's GRAT #1. On information and belief, the amount of $2,000,000 of the Transfers were subsequently transferred by Defendant The Jerome Goodman Children's GRAT #1 to Subsequent Transferee Defendant Jerome Goodman. On information and belief, some of the Transfers were subsequently transferred by Defendant The Jerome Goodman Children's GRAT #1 to Subsequent Transferee Defendants Jerome Goodman, Kevin Goodman, Peter Goodman and Abbey Goodman. On information and belief, some of the Transfers were subsequently transferred by Defendant Goodman Capital Partners, L.P. to Subsequent Transferee Defendants Jerome Goodman, Kevin Goodman, Peter Goodman, Abbey Goodman and Philip Goodman (collectively, the "Subsequent Transfers").

**ANSWER:    Defendants deny the allegations of Paragraph 45.**

46.    The Subsequent Transfers, or the value thereof, are recoverable from Subsequent Transferee Defendants pursuant to section 550(a) of the Bankruptcy Code.

**ANSWER:    Defendants deny the allegations of Paragraph 46.**

47.    The Trustee's investigation is ongoing and the Trustee reserves the right to (i) supplement the information regarding the Transfers, Subsequent Transfers and any additional transfers and (ii) seek recovery of such additional transfers.

**ANSWER:    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 47.**

48.    To the extent that any of the avoidance and/or recovery counts may be inconsistent with each other, they are to be treated as being pled in the alternative.

**ANSWER:    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 48.**

## CUSTOMER CLAIMS

49.    On or about July 1, 2009, Defendant Jerome Goodman filed a customer claim
with the Trustee which the Trustee has designated as Claim # 014439 (the "First Customer
Claim").

**ANSWER:    Defendants lack knowledge or information sufficient to form a belief
as to the truth of the allegations of Paragraph 49.**

50.    On or about October 19, 2009, the Trustee issued a Notice of Trustee's
Determination of Claim to Defendant Jerome Goodman (the "First Determination") with respect
to the First Customer Claim. A copy of the First Determination is attached hereto as Exhibit C.

**ANSWER:    Defendant admits the allegations of Paragraph 50.**

51.    Defendant Jerome Goodman did not file an objection to the First Determination
with the Court.

**ANSWER:    Defendants lack knowledge or information sufficient to form a belief
as to the truth of the allegations of Paragraph 51.**

52.    On or about July 1, 2009, Defendant Goodman Capital Partners L.P. filed a
customer claim with the Trustee which the Trustee has designated as Claim # 014456 (the
"Second Customer Claim"). In addition, on or about July 1, 2009, Defendants Abbey Goodman,
Kevin Goodman, Peter Goodman, Philip Goodman and Goodman Holdings, Inc. filed additional
customer claims with the Trustee which the Trustee has designated as Claim #'s 014451,
014452, 014453, 014454 and 014455, respectively (together with the Second Customer Claim,
the "Second Customer Claims").

**ANSWER:    Defendants admit the allegations of Paragraph 52.**

53.    On or about October 19, 2009, the Trustee issued a Notice of Trustee's
Determination of Claim to Defendant Goodman Capital Partners, L.P. (the "Second

Determination") with respect to the Second Customer Claim. A copy of the Second

Determination is attached hereto as Exhibit C.

**ANSWER:    Defendants admit the allegations of Paragraph 53.**

54.    Defendants Goodman Capital Partners L.P., Abbey Goodman, Kevin Goodman,

Peter Goodman, Philip Goodman and Goodman Holdings, Inc. did not file an objection to the

Second Determination with the Court.

**ANSWER:    Defendants admit the allegations of Paragraph 54.**

55.    On December 23, 2008, this Court entered an Order on Application for Entry of

an Order Approving Form and Manner of Publication and Mailing of Notices, Specifying

Procedures for Filing, Determination and Adjudication of Claims, and Providing Other Relief

("Claims Procedures Order"; Docket No. 12). The Claims Procedures Order includes a process

for determination and allowance of claims under which the Trustee has been operating. The

Trustee intends to resolve the First Customer Claims, the Second Customer Claims and any

related objection to the Trustee's determination of such claims through a separate hearing as

contemplated by the Claims Procedures Order.

**ANSWER:    Defendants lack knowledge or information sufficient to form a belief
as to the truth of the allegations of Paragraph 55.**

## <u>COUNT ONE</u>
### <u>FRAUDULENT TRANSFER - 11 U.S.C. §§ 548(a)(1)(A), 550(a) AND 551</u>

56.    To the extent applicable, the Trustee incorporates by reference the allegations

contained in the previous paragraphs of this Complaint as if fully rewritten herein.

**ANSWER:    Defendants repeat the answers heretofore stated.**

57.    Each of the Two Year Transfers was made on or within two years before the

Filing Date.

**ANSWER:   Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 57.**

58.     Each of the Two Year Transfers constituted a transfer of an interest of BLMIS in property within the meaning of section 101(54) of the Bankruptcy Code and pursuant to section 78fff-2(c)(3) of SIPA.

**ANSWER:   Defendants deny the allegations of Paragraph 58.**

59.     Each of the Two Year Transfers was made by BLMIS with the actual intent to hinder, delay or defraud some or all of BLMIS' then existing and/or future creditors.

**ANSWER:   Defendants deny the allegations of Paragraph 59.**

60.     Each of the Two Year Transfers constitutes a fraudulent transfer avoidable by the Trustee pursuant to section 548(a)(1)(A) of the Bankruptcy Code and recoverable from Defendants pursuant to section 550(a) of the Bankruptcy Code and section 78fff-2(c)(3) of SIPA.

**ANSWER:   Defendants deny the allegations of Paragraph 60.**

61.     As a result of the foregoing, pursuant to sections 548(a)(1)(A), 550(a), and 551 of the Bankruptcy Code and section 78fff-2(c)(3) of SIPA, the Trustee is entitled to a judgment against Defendants: (a) avoiding and preserving the Two Year Transfers, (b) directing that the Two Year Transfers be set aside, and (c) recovering the Two Year Transfers, or the value thereof, from Defendants for the benefit of the estate of BLMIS.

**ANSWER:   Defendants deny the allegations of Paragraph 61.**

## AFFIRMATIVE DEFENSES

1.     The Complaint fails to state a claim upon which relief can be granted.

2.     The transfers from BLMIS or Madoff to Defendants made prior to two years from the Filing Date are shielded from avoidance under the safe harbor provision of section 546(e) of the Bankruptcy Code.

3.    Defendants gave, and BLMIS or Madoff received, reasonably equivalent value in exchange for the transfers alleged in the Complaint.

4.    Defendants took the transfers alleged in the Complaint for value and in good faith on account of a valid antecedent debt as contemplated by 11 U.S.C. Section 548(c).

5.    The Complaint violates Rules 8(a)(2) and 9(b) of the Federal Rules of Civil Procedure, *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).

6.    The Trustee lacks standing, in whole or in part, to bring the claims asserted because he lacks Article III injury.

7.    The Trustee's prosecution of these claims is a denial of Defendants' rights to due process of law because the Trustee is a quasi-governmental officer and he has an economic interest in each litigation because he receives at least 15% of all legal fees paid to Baker & Hostetler LLP.

8.    The claims are not ripe because they do not meet the conditions of section 78fff-2(c)(3) of SIPA. The Trustee has not established that there is a shortfall in customer property.

9.    The transfers are not avoidable and/or recoverable because the funds at issue were not property of the bankruptcy estate in which BLMIS or Madoff had a legal interest.  *See In re Enron*, 2002 WL 32772482 (Bankr. S.D.N.Y. 2002)

10.    The Complaint fails to state a claim on which relief can be granted because it fails to properly plead the elements required for the avoidance of BLMIS' or Madoff's obligations. Absent an action to avoid BLMIS' or Madoff's obligations to pay what is owed to the customer under applicable state law, the transfers were all made on account of antecedent debt.  To the

extent the Trustee will attempt to plead the avoidance of obligations, he is not authorized under governing statutes to pursue such avoidance claims.

11.     The payments received by the Defendants were taken without actual fraudulent intent and for fair consideration, as provided by section 278(2) of the New York Debtor and Creditor Law. They are thus not avoidable or recoverable as against the Defendants under sections 544 and 550 of the Bankruptcy Code or sections 272 through 276 of the New York Debtor and Creditor Law.

12.     The payments received by the Defendants were taken for fair consideration and without knowledge of the fraud, as provided by section 278(1) of the New York Debtor and Creditor Law.  They are thus not avoidable or recoverable as against the Defendants under Sections 544 and 550 of the Bankruptcy Code or sections 272 through 276 of the New York Debtor and Creditor Law.

13.     The Trustee's claims are barred by his own breach of fiduciary duty.

14.     The Trustee's claims are barred in whole or part by applicable statutes of limitations.

15.     The Trustee's calculation of Defendants' liability violates the Defendants' due process rights.

16.     The Defendants are entitled to setoff, recoupment, and/or equitable adjustment because each year Defendants were required to pay taxes on the fictitious profits" reported on, among other things, IRS Form 1099 and other information reported by BLMIS or Madoff to the Internal Revenue Service, state and/or local governmental taxing authorities.

17.    The Internal Revenue Service was a co-obligor of Defendants, with whom the Trustee settled all claims without the consent of Defendants, thereby discharging Defendants of any liability.

18.    Each claim for recovery of a fraudulent transfer is subject to setoff or equitable adjustment because the Defendants received such transfer in good faith, without knowledge of the alleged fraud, and in payment of an antecedent debt, in whole or in part, on account of obligations owed by BLMIS or Madoff for, *inter alia*, (a) amounts contractually due to customers under New York law for the balances shown on prior customer account statements and related documents; (b) rescission remedies, including damages and interest for fraud and misrepresentation pursuant to federal and state law; (c) the time value of money; (d) unjust enrichment; (e) damages for breach of fiduciary duty; and/or (f) money had and received.

19.    The Defendants are entitled to full credit for any purported account balance at the beginning of the statute of limitations period.

20.    The Trustee has fraudulently calculated Defendants' liability by charging Defendants with withdrawals that the Trustee has no proof were taken.

21.    The Trustee's claims are barred by estoppel, waiver, or laches.

22.    The Trustee's claims are barred by the doctrine of *in pari delicto* and other related equitable defenses.

23.    The Trustee relies upon a Ponzi scheme presumption which does not exist under the Bankruptcy Code.

24.    Madoff and/or BLMIS was not a Ponzi scheme at all relevant times.

25.    The Trustee's claims are barred, in whole or part, because BLMIS or Madoff was not insolvent at the time of each of the transfers allegedly received by the Defendants and BLMIS or Madoff did not become insolvent as a result of such transfers.

26.    The Trustee's claims are barred in whole or part because they depend upon calculations that improperly attempt to avoid transfers that occurred outside the statutory reach back periods for the avoidance of transfers.

27.    The Trustee's claims are barred in whole or part for failure to properly credit inter-account transfers, profit withdrawals, and other adjustments.

28.    The Trustee's claims are barred in whole or part for failure to properly account for the time value of money through an interest adjustment to principal deposits.

29.    The Complaint fails to state a claim on which relief can be granted because it fails to sufficiently trace the funds at issue from BLMIS or Madoff to the Defendants.

30.    Recovery of attorneys' fees from the Defendants is not permissible under sections 544 and 550 of the Bankruptcy Code and section 276-a of the New York Debtor and Creditor Law because such fees are not a "transfer" or "conveyance" under applicable law.

31.     Even if the Trustee is entitled to the return of some or all of the transfers, he is not entitled to interest from the date of each alleged transfer.

32.    The claims are barred in whole or part by *res judicata*, collateral estoppel, and/or issue preclusion.

33.    The Complaint is barred, in whole or in part, because the Trustee has failed to plead all of the elements of fraudulent transfer under sections 548(a)(1)(A) and 548(a)(1)(B) of the Bankruptcy Code with sufficient particularity and factual support.

34.     The Complaint is barred, in whole or in part, because the Trustee has failed to plead all of the elements of fraudulent transfer under section 544 of the Bankruptcy Code and sections 273, 274, 275, 276, 276-a, 278 and/or 279 of the New York Debtor and Creditor Law with sufficient particularity and factual support.

35.     BLMIS or Madoff purchased securities with the Defendants' money, even if those securities were not allocated on BLMIS' or Madoff's records to the Defendants' account.

36.     The Trustee's claims violate the New York State policy of finality in financial transactions.

37.     The withdrawals that the Trustee seeks to recover were legally compelled under State and federal securities laws.

38.     Customers are entitled to 9% interest from the date of deposit under New York law and under the Securities Exchange Act.

39.     Customers are entitled to full-dollar credit for funds transferred into their accounts.

40.     The Trustee's calculation of claims going back beyond the statute of limitations period violates the due process clause of the Fifth Amendment of the United States Constitution and violates the New York State Constitution.

41.     The Trustee lacks standing because BLMIS was not formed until 2001 and the orders of the District Court and the Bankruptcy Court did not give the Trustee authority to recover fraudulent transfers of Bernard Madoff.

42.     There can be no liability of any recipient of funds who, as a matter of law or contract, was required to transfer any portion of the funds to a third party.

43.     The Defendants cannot be liable for withdrawals that Defendants were legally compelled to transfer to state and federal taxing authorities.

44.     The Trustee's claims are barred by any applicable statute of repose.

45.     Defendants are entitled to full-dollar credit for all deposits made within the reach back period.

46.     The Trustee's claims are barred in whole or part for failure to properly credit Defendants with all of Defendants' deposits.

Defendants assert the foregoing affirmative defenses and reserve the right to amend this Answer to assert other and further defenses when and if, in the course of the investigation, discovery, or preparation for trial it becomes appropriate. By designating these matters as "defenses," Defendants do not relieve the Trustee of proving under the appropriate standard of proof all elements of any claim alleged. Defendants do not undertake any burdens that properly rest upon the Trustee, and do not suggest either that the Trustee does not bear the burden of proof as to such matters or that such matters are not elements that he must establish in order to make out a *prima facie* case against Defendants.

Defendants further adopt and incorporate by reference any and all other defenses asserted or to be asserted by any other defendant or party-in-interest to the extent that Defendants are similarly situated and may properly assert such defense.

WHEREFORE, Defendants respectfully request that the Complaint be dismissed as against Defendants, and that costs be awarded against the Trustee.

Dated:    September 16, 2015                    **BECKER & POLIAKOFF LLP**
New York, New York

By:    */s/ Helen Davis Chaitman*      

Helen Davis Chaitman
45 Broadway
New York, New York 10006
Telephone: (212) 599-3322
Facsimile: (212) 557-0295
hchaitman@bplegal.com

*Attorneys for Defendants Jerome Goodman,
individually, as trustee for The Jerome Goodman
Children's GRAT #1, as Limited Partner of
Goodman Capital Partners L.P., and as
Beneficiary of The Jerome Goodman Children's
GRAT #1, Goodman Capital Partners L.P., The
Jerome Goodman Children's GRAT #1, Kevin
Goodman, as Beneficiary of The Jerome Goodman
Children's GRAT #1 and as Limited Partner of
Goodman Capital Partners L.P., Peter Goodman,
as Beneficiary of The Jerome Goodman Children's
GRAT #1 and as Limited Partner of Goodman
Capital Partners L.P., Abbey Goodman, as
Beneficiary of The Jerome Goodman Children's
GRAT #1 and as Limited Partner of Goodman
Capital Partners L.P., Philip Goodman, as Limited
Partner of Goodman Capital Partners L.P., and
Goodman Holdings, Inc., as General Partner of
Goodman Capital Partners L.P.*