Michael I. Goldberg (MG 0869)
**AKERMAN, LLP**
Las Olas Centre II, Suite 1600
350 East Las Olas Boulevard
Fort Lauderdale, FL  33301-2229
Phone:  (954) 463-2700
Fax:  (954) 463-2224

*Attorneys for Krellenstein Family Limited Partnership II of 1999, Krellenstein Family
Enterprises, Inc., Ely Krellenstein Revocable Trust of 1994, Ely Krellenstein, Shirley
Krellenstein Revocable Trust of 1994, and Shirley Krellenstein*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------------x

| | | |
|---|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | : | |
| | : | |
| Plaintiff-Applicant, | : | Adv. Pro. No. 08-01789 (BRL) |
| | : | |
| v. | : | SIPA LIQUIDATION |
| | : | |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | : | (Substantively Consolidated) |
| | : | |
| Defendant. | : | |

----------------------------------------------------------------x

In re: :

BERNARD L. MADOFF, :

                    Debtor. :

----------------------------------------------------------------x

IRVING H. PICARD, Trustee for the Liquidation :
of Bernard L. Madoff Investment Securities LLC, :

                    Plaintiff, :

v. :                                    Adv. Pro. No. 10-04661(SMB)
                                        **<u>JURY TRIAL DEMANDED</u>**

KRELLENSTEIN FAMILY LIMITED :
PARTNERSHIP II OF 1999, a Delaware :
Limited Partnership, :

KRELLENSTEIN FAMILY ENTERPRISES, INC :
a Delaware Corporation, :

ELY KRELLENSTEIN REVOCABLE TRUST OF :
1994, a Florida Trust, :

|  | : |
| ELY KRELLENSTEIN, as settlor, as | : |
| trustee, and as an individual, | : |
|  | : |
| SHIRLEY KRELLENSTEIN REVOCABLE | : |
| TRUST OF 1994, a Florida Trust, and | : |
|  | : |
| SHIRLEY KRELLENSTEIN, as settlor, as | : |
| trustee, and as an individual. | : |
|  | : |
| Defendants | : |

-------------------------------------------------------------------x

## ANSWER AND AFFIRMATIVE DEFENSES

Krellenstein Family Limited Partnership II of 1999 and Krellenstein Family Enterprises, Inc., Ely Krellenstein Revocable Trust of 1994, Ely Krellenstein, Shirley Krellenstein Revocable Trust of 1994, and Shirley Krellenstein (collectively, the "Defendants"), by and through undersigned counsel, hereby answer the Complaint filed by Irving H. Picard  ("Plaintiff"), as trustee for the liquidation of the business of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa, et seq. ("SIPA"), and the substantively consolidated estate of Bernard L. Madoff ,individually, ("Madoff"), states as follows:

Pursuant to the *Order Granting In Part and Denying in Part Defendants' Motion to Dismiss* entered in this proceeding on July 16, 2015 [ECF No. 45], all counts other than those seeking to avoid and recover initial transfers pursuant to sections 548(a)(1)(A) of the Bankruptcy Code have been dismissed. Therefore, no responses to Counts I, III - XIII are required. To the extent a response is deemed required, the allegations as to such counts are denied.

## NATURE OF PROCEEDING

1.    This adversary proceeding arises from the massive Ponzi scheme perpetrated by Madoff. Over the course of the scheme, there were more than 8,000 client accounts at BLMIS. In early December 2008, BLMIS generated client account statements for its approximately

4,900 open client accounts. When added together, these statements purport that clients of BLMIS had approximately $65 billion invested with BLMIS. In reality, BLMIS had assets on hand worth a small fraction of that amount. On March 12, 2009, Madoff admitted to the fraudulent scheme and pled guilty to 11 felony counts, and was sentenced on June 29, 2009 to 150 years in prison. The within defendants Krellenstein Family Limited Partnership II of 1999 ("Partnership") and Krellenstein Family Enterprises, Inc. ("Corporation" and, collectively, "Defendants") received avoidable transfers from BLMIS.

**ANSWER: Defendants deny receipt of avoidable transfers from BLMIS and otherwise lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 1.**

2.    Within the 90 days prior to the Filing Date (defined below), Defendants received the amount of $1,750,000 from BLMIS. The Trustee's investigation has revealed that $464,670 of this amount was a return of principal that Defendants had invested with BLMIS and $1,285,330 represented fictitious profits from the Ponzi scheme. For the former amount, Defendants are in a more favorable position than other defrauded customers of BLMIS as a result of the preference payment. For the latter amount, Defendants have received $1,285,330 of other's people's money. Upon information and belief, Ely Krellenstein Revocable Trust of 1994 ("Ely Trust"), Ely Krellenstein as settlor and trustee of the Ely Trust, and individually, Shirley Krellenstein Revocable Trust of 1994 ("Shirley Trust"), and Shirley Krellenstein as settlor and trustee of the Shirley Trust, and individually, (collectively, the "Subsequent Transferee Defendants") received subsequent transfers of the avoidable transfers referenced above. To the extent the funds transferred from BLMIS were for the benefit of the Subsequent Transferee Defendants, Subsequent Transferee Defendants are the initial transferees of such transfers and

are included in the definition of Defendants for purposes of the allegations herein. This action is brought to recover the preference and fictitious profit amounts so that this customer property can be equitably distributed among all of the victims of BLMIS.

**ANSWER:  The Subsequent Transferee Defendants assert that that the Court's *Memorandum Decision regarding Omnibus Motions to Dismiss* entered on June 2, 2015 [ECF No. 44], requires the dismissal of all subsequent transfer claims, and, therefore, the removal of the Subquent Transferee Defendants as parties in this action.[1]  The Defendants deny the allegations of Paragraph 2.**

3.      This adversary proceeding is brought pursuant to sections 78fff(b), 78fff-1(a) and 78fff-2(e)(3) of SIPA, sections 105(a), 544, 547, 548(a), 550(a) and 551 of title 11 of the United States Code (the "Bankruptcy Code"), the New York Fraudulent Conveyance Act (New York Debtor and Creditor Law § 270 *et seq.* (McKinney 2001) ("DCL")) and other applicable law, for avoidance of preferential transfers, and avoidance of fraudulent conveyances in connection with certain transfers of property by BLMIS to or for the benefit of Defendants. The Trustee seeks to set aside such transfers and preserve and recover the property for the benefit of BLMIS' defrauded customers.

**ANSWER:  Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 3.**

---

[1]      The Court's *Memorandum Decision regarding Omnibus Motions to Dismiss* entered on June 2, 2015 [ECF No. 44] provides, in relevant part:

> The Court leaves it to the parties in the first instance to determine whether this ruling requires the dismissal of the subsequent transfer claim in the specific case. If they agree, the disposition should be incorporated into a dismissal order. If they cannot agree, they should arrange a conference with the Court to discuss a procedure by which the Court can expeditiously consider the individual pleadings or an agreed upon sample and determine whether the subsequent transfer claims warrant dismissal in accordance with this opinion.

Order at pp. 51-2.

**JURISDICTION AND VENUE**

4.     This is an adversary proceeding commenced before the same Court before whom the main underlying SIPA proceeding, No. 08-01789 (BRL) (the "SIPA Proceeding"), is pending. The SIPA Proceeding was originally brought in the United States District Court for the Southern District of New York as *Securities Exchange Commission v. Bernard L. Madoff Investment Securities LLC et al.,* No. 08 CV 10791 (the "District Court Proceeding") and has been referred to this Court. This Court has jurisdiction over this adversary proceeding under 28 U.S.C. § 1334(b) and 15 U.S.C. §§ 78eee(b)(2)(A) and (b)(4).

**ANSWER:**     **Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 4.**

5.     This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (F), (H) and (O).

**ANSWER:**     **Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 5.   Pursuant to Local Rule 9027-2, Defendants do not consent to the entry of final orders or judgment by the Bankruptcy Court.**

6.     Venue in this district is proper under 28 U.S.C. § 1409.

**ANSWER:**     **Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 6.**

**DEFENDANTS**

7.     Upon information and belief, Defendant Partnership is a limited partnership formed under the laws of the state of Delaware. Its principal place of business is located in Dover, Delaware. Defendant Partnership holds a BLMIS account in the name, "Krellenstein Family LP 11 1999," with the account address reported in Palm Beach Gardens, Florida.

Defendant Corporation is a general partner of Defendant Partnership. Subsequent Transferee Defendants Ely Trust and Shirley Trust (collectively, the "Trusts") are limited partners of Defendant Partnership.

**ANSWER:    The Subsequent Transferee Defendants assert that that the Court's** *Memorandum Decision regarding Omnibus Motions to Dismiss* **entered on June 2, 2015 [ECF No. 44], requires the dismissal of all subsequent transfer claims, and, therefore, the removal of the Subquent Transferee Defendants as parties in this action. The Defendants otherwise admit to the allegations of Paragraph 7.**

8.    Upon information and belief, Defendant Corporation is a corporation formed under the laws of the state of Delaware. Its principal place of business is located in Dover, Delaware.

**ANSWER:    The Defendants admit to the allegations of Paragraph 8.**

9.    Upon information and belief, Subsequent Transferee Defendant Shirley Trust is a trust formed under the laws of the state of Florida. Subsequent Transferee Defendant Shirley Krellenstein is the settlor and a trustee of Subsequent Transferee Defendant Shirley Trust. Subsequent Transferee Defendants Shirley Krellenstein and Ely Krellenstein are beneficiaries of Subsequent Transferee Defendant Shirley Trust, and either have received distributions from, or hold beneficial interests in, said trust.

**ANSWER:    The Subsequent Transferee Defendants assert that that the Court's** *Memorandum Decision regarding Omnibus Motions to Dismiss* **entered on June 2, 2015 [ECF No. 44], requires the dismissal of all subsequent transfer claims, and, therefore, the removal of the Subquent Transferee Defendants as parties in this action.  The Defendants otherwise admit to the allegations of Paragraph 9.**

10.     Upon information and belief, Subsequent Transferee Defendant Ely Trust is a trust formed under the laws of the state of Florida. Subsequent Transferee Defendant Ely Krellenstein is the settlor and a trustee of Subsequent Transferee Defendant Ely Trust. Subsequent Transferee Defendants Ely Krellenstein and Shirley Krellenstein are beneficiaries of Subsequent Transferee Defendant Ely Trust, and either have received distributions from, or hold beneficial interests in, said trust.

**ANSWER:     The Subsequent Transferee Defendants assert that that the Court's *Memorandum Decision regarding Omnibus Motions to Dismiss* entered on June 2, 2015 [ECF No. 44], requires the dismissal of all subsequent transfer claims, and, therefore, the removal of the Subquent Transferee Defendants as parties in this action. The Defendants otherwise admit to the allegations of Paragraph 10.**

11.     Upon information and belief, Subsequent Transferee Defendants Ely Krellenstein and Shirley Krellenstein maintain their residence in Palm Beach Gardens, Florida.

**ANSWER:     The Subsequent Transferee Defendants assert that that the Court's *Memorandum Decision regarding Omnibus Motions to Dismiss* entered on June 2, 2015 [ECF No. 44], requires the dismissal of all subsequent transfer claims, and, therefore, the removal of the Subquent Transferee Defendants as parties in this action. The Defendants otherwise admit to the allegations of Paragraph 11.**

## BACKGROUND, THE TRUSTEE AND STANDING

12.     On December 11, 2008 (the "Filing Date"),[2] Madoff was arrested by federal agents for violation of the criminal securities laws, including, *inter alia,* securities fraud,

---

[2]     Section 78lll(7)(B) of SIPA states that the filing date is "the date on which an application for a protective decree is filed under 78eee(a)(3)," except where the debtor is the subject of a proceeding pending before a United States court "in which a receiver, trustee, or liquidator for such debtor has been appointed and such proceeding was commenced before the date on which such application was filed, the term 'filing date' means the date on which such

investment adviser fraud, and mail and wire fraud. Contemporaneously, the Securities and Exchange Commission ("SEC") filed a complaint in the District Court which commenced the District Court Proceeding against Madoff and BLMIS. The District Court Proceeding remains pending in the District Court. The SEC complaint alleged that Madoff and BLMIS engaged in fraud through the investment advisor activities of BLMIS.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 12.**

13.     On December 12, 2008, The Honorable Louis L. Stanton of the District Court entered an order appointing Lee S. Richards, Esq. (the "Receiver") as receiver for the assets of BLMIS.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 13.**

14.     On December 15, 2008, pursuant to section 78eee(a)(4)(A) of SIPA, the SEC consented to a combination of its own action with an application of the Securities Investor Protection Corporation ("SIPC"). Thereafter, pursuant to section 78eee(a)(4)(B) of SIPA, SIPC filed an application in the District Court alleging, *inter alia,* that BLMIS was not able to meet its obligations to securities customers as they came due and, accordingly, its customers needed the protections afforded by SIPA.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 14.**

15.     Also on December 15, 2008, Judge Stanton granted the SIPC application and entered an order pursuant to SIPA (the "Protective Decree"), which, in pertinent part:

---

proceeding was commenced." 15 U.S.C. § 78lll(7)(B). Thus, even though the application for a protective decree was filed on December 15, 2008, the Filing Date in this action is December 11, 2008

(a)    appointed the Trustee for the liquidation of the business of BLMIS pursuant to section 78eee(b)(3) of SIPA;

(b)    appointed Baker & Hostetler LLP as counsel to the Trustee pursuant to section 78eee(b)(3) of SIPA; and

(c)    removed the case to this Court pursuant to section 78eee(b)(4) of SIPA. By this Protective Decree, the Receiver was removed as Receiver for BLMIS.

**ANSWER:  Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 15.**

16.    By orders dated December 23, 2008 and February 4, 2009, respectively, the Bankruptcy Court approved the Trustee's bond and found that the Trustee was a disinterested person. Accordingly, the Trustee is duly qualified to serve and act on behalf of the estate of BLMIS.

**ANSWER:  Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 16.**

17.    At a Plea Hearing on March 12, 2009 in the case captioned *United States v. Madoff,* Case No. 09-CR-213(DC), Madoff pled guilty to an eleven-count criminal information filed against him by the United States Attorneys' Office for the Southern District of New York. At the Plea Hearing, Madoff admitted that he "operated a Ponzi scheme through the investment advisory side of [BLMIS]." Plea Allocution of Bernard L. Madoff at 23, *United States v. Madoff,* No. 09-CR-213 (DC) (S.D.N.Y. March 12, 2009) (Docket No. 50). Additionally, Madoff asserted "[a]s I engaged in my fraud, I knew what I was doing [was] wrong, indeed criminal." *Id.* Madoff was sentenced on June 29, 2009 to 150 years in prison.

**ANSWER:  Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 17.**

18.    On August 11, 2009, a former BLMIS employee, Frank DiPascali, pled guilty to participating in and conspiring to perpetuate the Ponzi scheme. At a Plea Hearing on August 11, 2009 in the case entitled *United States v. DiPascali,* Case No. 09-CR-764 (RJS), DiPascali pled guilty to a ten-count criminal information. Among other things, DiPascali admitted that the fictitious scheme had begun at BLMIS since at least the 1980s. Plea Allocution of Frank DiPascali at 46, *United States v. DiPascali,* No. 09-CR-764 (RJS) (S.D.N.Y. Aug. 11, 2009) (Docket No. 11).

**ANSWER:  Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 18.**

19.    As the Trustee appointed under SIPA, the Trustee is charged with recovering and paying out customer property to BLMIS' customers, assessing claims, and liquidating any other assets of the firm for the benefit of the estate and its creditors. The Trustee is in the process of marshalling BLMIS' assets, and the liquidation of BLMIS' assets is well underway. However, such assets will not be sufficient to reimburse the customers of BLMIS for the billions of dollars that they invested with BLMIS over the years. Consequently, the Trustee must use his authority under SIPA and the Bankruptcy Code to pursue recovery from customers who received preferences and/or payouts of fictitious profits to the detriment of other defrauded customers whose money was consumed by the Ponzi scheme. Absent this or other recovery actions, the Trustee will be unable to satisfy the claims described in subparagraphs (A) through (D) of SIPA section 78fff-2(c)(1).

**ANSWER:  Defendants deny the allegations of Paragraph 19.**

20.    Pursuant to section 78fff-1(a), the Trustee has the general powers of a bankruptcy trustee in a case under the Bankruptcy Code in addition to the powers granted by SIPA pursuant to SIPA section 78fff(b). Chapters 1, 3, 5 and subchapters I and II of chapter 7 of the Bankruptcy Code apply to this proceeding to the extent consistent with SIPA.

**ANSWER:  Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 20.**

21.    Pursuant to sections 78fff(b) and *78111(7)(B)* of SIPA, the Filing Date is deemed to be the date of the filing of the petition within the meaning of sections 547 and 548 of the Bankruptcy Code and the date of the commencement of the case within the meaning of section 544 of the Bankruptcy Code.

**ANSWER:  Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 21.**

22.    The Trustee has standing to bring these claims pursuant to section 78fff-1(a) of SIPA and the Bankruptcy Code, including sections 323(b) and 704(a)(1), because, among other reasons:

(a)    Defendants received "Customer Property" as defined in 15 U.S.C. *§78111(4);*

(b)    BLMIS incurred losses as a result of the claims set forth herein;

(c)    BLMIS' customers were injured as a result of the conduct detailed herein;

(d)    SIPC has not reimbursed, and statutorily cannot fully reimburse, all customers for all of their losses;

(e)    the Trustee will not be able to fully satisfy all claims;

(f)    the Trustee, as bailee of customer property, can sue on behalf of the customer bailors;

(g)    the Trustee is the assignee of claims paid, and to be paid, to customers of BLMIS who have filed claims in the liquidation proceeding (such claim-filing customers are collectively referred to as "Accountholders"). As of the date hereof, the Trustee has received multiple express unconditional assignments of the applicable Accountholders' causes of action, which actions could have been asserted against Defendants and Subsequent Transferee Defendants. As assignee, the Trustee stands in the shoes of persons who have suffered injury in fact and a distinct and palpable loss for which the Trustee is entitled to reimbursement in the form of monetary damages. The Trustee brings this action on behalf of, among others, those defrauded customers of BLMIS who invested more money in BLMIS than they withdrew; and

(h)    SIPC is the subrogee of claims paid, and to be paid, to customers of BLMIS who have filed claims in the liquidation proceeding. SIPC has expressly conferred upon the Trustee enforcement of its rights of subrogation with respect to payments it has made and is making to customers of BLMIS from SIPC funds.

**ANSWER:  Defendants deny the allegations of Paragraph 22.**

## THE FRAUDULENT PONZI SCHEME

23.    Founded in 1959, BLMIS began operations as a sole proprietorship of Madoff and later, effective January 2001, formed as a New York limited liability company wholly owned by Madoff. Since in or about 1986, BLMIS operated from its principal place of business at 885 Third Avenue, New York, New York. Madoff, as founder, proprietor, chairman, and chief executive officer, ran BLMIS together with several family members and a number of additional employees. BLMIS was registered with the SEC as a securities broker-dealer under section 15(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78o(b). By that registration,

BLMIS is a member of SIPC. BLMIS had three business units: investment advisory (the "IA Business"), market making and proprietary trading.

**ANSWER:  Defendants deny the allegations of Paragraph 23; BLMIS was not formed until 2001.**

24.    For certain accounts in the IA Business, BLMIS purported to participate in a capital appreciation/depreciation strategy, depending on whether the customer sought to generate gains or losses, For example, the strategy was executed by either purporting to purchase small groups of securities near lows and then purporting to sell those same securities at highs, or by purporting to short-sell securities near highs and then purporting to repurchase those securities near lows.

**ANSWER:  Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 24.**

25.    For other accounts, Madoff described the IA Business' strategy as a "split-strike conversion" strategy. Madoff promised these clients that their funds would be invested in a - basket of common stocks within the S&P 100 Index, which is a collection of the 100 largest U.S. publicly traded companies. The basket of stocks would be intended to mimic the movement of the S&P 100 Index. Madoff asserted that he would carefully time purchases and sales to maximize value, but this meant that the clients' funds would intermittently be out of the market, at which times they would purportedly be invested in U.S. issued securities and money market funds. The second part of the split-strike conversion strategy was the hedge of such purchases with option contracts. Madoff purported to purchase and sell S&P 100 Index option contracts that closely corresponded with the stocks in the basket, thereby controlling the downside risk of price changes in the basket of stocks.

**ANSWER:  Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 25.**

26.    Although clients of the IA Business received monthly or quarterly statements purportedly showing the securities that were held in – or had been traded through – their accounts, as well as the growth of and profit from those accounts over time, the trades reported on these statements were a complete fabrication. The security purchases and sales depicted in the account statements virtually never occurred and the profits reported were entirely fictitious. At his Plea Hearing, Madoff admitted that he never in fact purchased any of the securities he claimed to have purchased for customer accounts. *See* Plea Allocution of Bernard L. Madoff at 3, *United States v. Madoff;* No. 09-CR-213 (DC) (S.D.N.Y. March 12, 2009) (Docket No. 50). Indeed, based on the Trustee's investigation to date and with the exception of isolated individual trades for certain clients other than Defendants, there is no record of BLMIS having cleared any purchase or sale of securities on behalf of the IA Business at the Depository Trust & Clearing Corporation, the clearing house for such transactions.

**ANSWER:    Defendants deny the allegations of Paragraph 26.**

27.    Prior to his arrest, Madoff assured clients and regulators that he conducted all trades on the over-the-counter market after hours. To bolster that lie, Madoff periodically wired tens of millions of dollars to BLMIS' affiliate, Madoff Securities International Ltd. ("MSIL"), a London based entity substantially owned by Madoff and his family. There are no records that MSIL ever used the wired funds to purchase securities for the accounts of the IA Business clients.

**ANSWER:  Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 27.**

28.    Additionally, based on the Trustee's investigation to date, there is no evidence that BLMIS ever purchased or sold any of the options that Madoff claimed on customer statements to have purchased and sold.

**ANSWER:  Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 28.**

29.    For all periods relevant hereto, the IA Business was operated as a Ponzi scheme and Madoff and his co-conspirators concealed the ongoing fraud in an effort to hinder, delay or defraud other current and prospective customers of BLMIS. The money received from investors was not set aside to buy securities as purported, but instead was primarily used to make the distributions to – or payments on behalf of – other investors. The money sent to BLMIS for investment, in short, was simply used to keep the scheme going and to enrich Madoff, his associates and others, including Defendants, until such time as the requests for redemptions in December 2008 overwhelmed the flow of new investments and caused the inevitable collapse of the Ponzi scheme.

**ANSWER:    Defendants deny the allegations of Paragraph 29.**

30.    The payments to investors constituted an intentional misrepresentation of fact regarding the underlying accounts and were an integral and essential part of the fraud. The payments were necessary to validate the false account statements, and were made to avoid detection of the fraud, to retain existing investors and to lure other investors into the Ponzi scheme.

**ANSWER:    Defendants deny the allegations of Paragraph 30.**

31.    During the scheme, certain investors requested and received distributions of the so-called "profits" listed for their accounts which were nothing more than fictitious profits.

Other investors, from time to time, redeemed or closed their accounts, or removed portions of purportedly available funds, and were paid consistently with the statements they had been receiving. Some of those investors later re-invested part or all of those withdrawn payments with BLMIS.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 31.**

32.    When payments were made to or on behalf of these investors, including Defendants, the falsified monthly statements of accounts reported that the accounts of such investors included substantial gains. In reality, BLMIS had not invested the investors' principal as reflected in customer statements. In an attempt to conceal the ongoing fraud and thereby hinder, delay or defraud other current and prospective investors, BLMIS paid to or on behalf of certain investors the inflated amounts reflected in the falsified financial statements, including principal and/or fictitious profits.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 32.**

33.    BLMIS used the funds deposited from new investments to continue operations and pay redemption proceeds to or on behalf of other investors and to make other transfers. Due to the siphoning and diversion of new investments to fund redemptions requested by other investors, BLMIS did not have the funds to pay investors on account of their new investments. BLMIS was able to stay afloat only by using the principal invested by some clients to pay other investors or their designees.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 33.**

34.    In an effort to hinder, delay or defraud authorities from detecting the fraud, BLMIS did not register as an Investment Advisor until September 2006.

**ANSWER:  Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 34.**

35.    In or about January 2008, BLMIS filed with the SEC a Uniform Application for Investment Adviser Registration. The application represented, *inter alia,* that BLMIS had 23 customer accounts and assets under management of approximately $17.1 billion. In fact, in January 2008, BLMIS had approximately 4,900 active client accounts with a purported value of approximately $65 billion under management.

**ANSWER:  Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 35.**

36.    Not only did Madoff seek to evade regulators, Madoff also had false audit reports "prepared" by Friehling & Horowitz, a three-person accounting firm in Rockland County, New York. Of the two accountants at the firm, one was a semi-retired and living in Florida for many years prior to the Filing Date.

**ANSWER:  Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 36.**

37.    At all times relevant hereto, the liabilities of BLMIS were billions of dollars greater than the assets of BLMIS. At all relevant times, BLMIS was insolvent in that: (i) its assets were worth less than the value of its liabilities; (ii) it could not meet its obligations as they came due; and (iii) at the time of the transfers, BLMIS was left with insufficient capital.

**ANSWER:  Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 37.**

## THE TRANSFERS

38.     According to BLMIS' records, an account (No. 1ZB097) was maintained with BLMIS as set forth on Exhibit A (the "Account"). Upon information and belief, for the Account, a Customer Agreement, an Option Agreement, and/or a Trading Authorization Limited to Purchases and Sales of Securities and Options (collectively, the "Account Agreements") were executed and delivered to BLMIS at BLMIS' headquarters at 885 Third Avenue, New York, New York.

**ANSWER:   Defendants admit the allegations of Paragraph 38.**

39.     The Account Agreements were to be performed in New York, New York through securities trading activities that would take place in New York, New York. The Account was held in New York, New York, and Defendants sent funds to BLMIS and/or to BLMIS' account at JPMorgan Chase & Co., Account #xxxxxxxxxxl 703 (the "BLMIS Bank Account") in New York, New York for application to the Account and the purported conducting of trading activities. Between the date the Account was opened and the Filing Date, Defendants made deposits to BLMIS through checks and/or wire transfers into the BLMIS Bank Account and/or received inter-account transfers from other BLMIS accounts.

**ANSWER:   Defendants deny the allegations of paragraph 39 to the extent that BLMIS was not formed until 2001 and otherwise lack knowledge or information sufficient to form a belief to the truth of the allegations.**

40.     During the 90 days prior to the Filing Date, BLMIS made transfers (collectively, the "Transfers") totaling the amount of $1,750,000 to Defendants. Of that amount, the amount of $464,670 constituted a preference payment (the "Preference Period Transfers") as a return of principal and $1,285,330 constituted a transfer of fictitious profits supposedly earned in the Account ("Fictitious Profits") or, in other words, other people's money. The Transfers were

made to or for the benefit of Defendants and are set forth in Columns 9, 10, and 11 of Exhibit B annexed hereto.

(a)     Of the Transfers, Preference Period Transfers in the amount of $464,670 are a return of principal made during the 90 days prior to the Filing Date, and are recoverable under sections 547, 550(a) and 551 of the Bankruptcy Code and applicable provisions of SIPA, particularly SIPA section 78fff-2(c)(3). See Exhibit B, Column 9.

(b)     Of the Transfers, Fictitious Profits in the amount of $1,285,330 are avoidable and recoverable under sections 544(b), 548(a), 550(a) and 551 of the Bankruptcy Code and applicable provisions of SIPA, particularly SIPA section 78fff-2(C)(3), and DCL sections 273 —279 (McKinney 2001). See Exhibit B, Columns 10 and 11.

**ANSWER:   Defendants deny the allegations of Paragraph 40.**

41.     The Fictitious Profits that are avoidable and recoverable under sections 544(b), 550(a)(1) and 551 of the Bankruptcy Code, applicable provisions of SIPA, particularly SIPA section 78fff-2(c)(3), and applicable provisions of N.Y. CPLR 203(g) (McKinney 2001) and DCL sections 273 —279 (McKinney 2001) total $1,285,330 and are referred to hereafter as the "Six Year Transfers." See Exhibit B, Column 11. The Fictitious Profits that are avoidable and recoverable under sections 548(a), 550(a)(1) and 551 of the Bankruptcy Code and applicable provisions of SIPA, particularly SIPA section 78fff-2(c)(3) total $1,285,330 and are referred to hereafter as the "Two Year Transfers." See Exhibit B, Column 10.

**ANSWER:   Defendants deny the allegations of Paragraph 41.**

42.     Upon information and belief, some or all of the Transfers were subsequently transferred by Defendants to Subsequent Transferee Defendants (the "Subsequent Transfers").

**ANSWER:     The Subsequent Transferee Defendants assert that that the Court's *Memorandum Decision regarding Omnibus Motions to Dismiss* entered on June 2, 2015**

**[ECF No. 44], requires the dismissal of all subsequent transfer claims, and, therefore, the removal of the Subquent Transferee Defendants as parties in this action. Defendants deny the allegations of Paragraph 42.**

43.    The Subsequent Transfers, or the value thereof, are recoverable from Subsequent Transferee Defendants pursuant to §550(a) of the Bankruptcy Code.

**ANSWER The Subsequent Transferee Defendants assert that that the Court's** *Memorandum Decision regarding Omnibus Motions to Dismiss* **entered on June 2, 2015 [ECF No. 44], requires the dismissal of all subsequent transfer claims, and, therefore, the removal of the Subquent Transferee Defendants as parties in this action. Defendants deny the allegations of Paragraph 43.**

44.    The Trustee's investigation is ongoing and the Trustee reserves the right to (i) supplement the information regarding the Transfers, Subsequent Transfers and any additional transfers and (ii) seek recovery of such additional transfers.

**ANSWER:  Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 44.**

45.    To the extent that any of the avoidance and/or recovery counts may be inconsistent with each other, they are to be treated as being pled in the alternative.

**ANSWER:  Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 45.**

<u>**CUSTOMER CLAIM**</u>

46.    On or about June 25, 2009, Defendant Partnership filed a customer claim with the Trustee which the Trustee has designated as Claim #011102 (the "Customer Claim").

**ANSWER:   Defendants admit the allegations of Paragraph 46.**

47.     On or about August 28, 2009, the Trustee issued a Notice of Trustee's Determination of Claim to Defendant Partnership (the "Determination") with respect to the Customer Claim. A copy of the Determination is attached hereto as Exhibit C.[3]

**ANSWER:   Defendants admit the allegations of Paragraph 47.**

48.     Defendant Partnership did not file an objection to the Determination with the Court.

**ANSWER:    Defendants admit the allegations of Paragraph 48.**

49.     On December 23, 2008, this Court entered an Order on Application for Entry of an Order Approving Form and Manner of Publication and Mailing of Notices, Specifying Procedures for Filing, Determination and Adjudication of Claims, and Providing Other Relief ("Claims Procedures Order"; Docket No. 12). The Claims Procedures Order includes a process for determination and allowance of claims under which the Trustee has been operating. The Trustee intends to resolve Customer Claim and any related objection to the Trustee's determination of such claim as contemplated by the Claims Procedures Order.

**ANSWER:   Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 49.**

## COUNT TWO
## FRAUDULENT TRANSFERS – 11 U.S.C. §§ 548(a)(1)(a), 550(a) AND 551

60.     To the extent applicable, the Trustee incorporates by reference the allegations contained in the previous paragraphs of this Complaint as if fully rewritten herein.

**ANSWER:  Defendants repeat the answers heretofore stated.**

---

[3] In October 2009, the Trustee adjusted the methodology used for analysis of certain account transactions, specifically deposits that were cancelled. As a result, there may be slight variations in the way certain transactions are displayed in Exhibit B as compared to Table 1 attached to Exhibit C. The net cash balance of the account is not affected by this adjustment.

61.    Each of the Two Year Transfers was made on or within two years before the Filing Date.

**ANSWER:   Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 61.**

62.    Each of the Two Year Transfers constituted a transfer of an interest of BLMIS in property within the meaning of section 101(54) of the Bankruptcy Code and pursuant to section 78fff-2(c)(3) of SIPA.

**ANSWER:   Defendants deny the allegations of Paragraph 62.**

63.    Each of the Two Year Transfers was made by BLMIS with the actual intent to hinder, delay or defraud some or all of BLMIS' then existing and/or future creditors.

**ANSWER:  Defendants deny the allegations of Paragraph 63.**

64.    Each of the Two Year Transfers constitutes a fraudulent transfer avoidable by the Trustee pursuant to section 548(a)(1)(A) of the Bankruptcy Code and recoverable from Defendants pursuant to section 550(a) of the Bankruptcy Code and section 78fff-2(c)(3) of SIPA.

**ANSWER:    Defendants deny the allegations of Paragraph 64.**

65.    As a result of the foregoing, pursuant to sections 548(a)(1)(A), 550(a) and 551 of the Bankruptcy Code and section 78fff-2(c)(3) of SIPA, the Trustee is entitled to a judgment against Defendants: (a) avoiding and preserving the Two Year Transfers, (b) directing that the Two Year Transfers be set aside, and (c) recovering the Two Year Transfers, or the value thereof, from Defendants for the benefit of the estate of BLMIS.

**ANSWER:  Defendants deny the allegations of Paragraph 65.**

## AFFIRMATIVE DEFENSES

1.    The Complaint fails to state a claim upon which relief can be granted.

2.      The transfers from BLMIS or Madoff to Defendants made prior to two years from the Filing Date are shielded from avoidance under the safe harbor provision of section 546(e) of the Bankruptcy Code.

3.      Defendants gave, and BLMIS or Madoff received, reasonably equivalent value in exchange for the transfers alleged in the Complaint.

4.      Defendants took the transfers alleged in the Complaint for value and in good faith on account of a valid antecedent debt as contemplated by 11 U.S.C. Section 548(c).

5.      The Complaint violates Rules 8(a)(2) and 9(b) of the Federal Rules of Civil Procedure, *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), and Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007).

6.      The Trustee lacks standing, in whole or in part, to bring the claims asserted because he lacks Article III injury.

7.      The claims are not ripe because they do not meet the conditions of section 78fff-2(c)(3) of SIPA. The Trustee has not established that there is a shortfall in customer property.

8.      The transfers are not avoidable and/or recoverable because the funds at issue were not property of the bankruptcy estate in which BLMIS or Madoff had a legal interest. *See In re Enron*, 2002 WL 32772482 (Bankr. S.D.N.Y. 2002)

9.      The payments received by the Defendants were taken without actual fraudulent intent and for fair consideration, as provided by section 278(2) of the New York Debtor and Creditor Law. They are thus not avoidable or recoverable as against the Defendants under sections 544 and 550 of the Bankruptcy Code or sections 272 through 276 of the New York Debtor and Creditor Law.

10.     The payments received by the Defendants were taken for fair consideration and without knowledge of the fraud, as provided by section 278(1) of the New York Debtor and Creditor Law. They are thus not avoidable or recoverable as against the Defendants under Sections 544 and 550 of the Bankruptcy Code or sections 272 through 276 of the New York.

11.     The Trustee's claims are barred in whole or part by applicable statutes of limitations.

12.     The Defendants are entitled to setoff, recoupment, and/or equitable adjustment because each year Defendants were required to pay taxes on the fictitious profits" reported on, among other things, IRS Form 1099 and other information reported by BLMIS or Madoff to the Internal Revenue Service, state and/or local governmental taxing authorities.

13.     Each claim for recovery of a fraudulent transfer is subject to setoff or equitable adjustment because the Defendants received such transfer in good faith, without knowledge of the alleged fraud, and in payment of an antecedent debt, in whole or in part, on account of obligations owed by BLMIS or Madoff for, inter alia, (a) amounts contractually due to customers under New York law for the balances shown on prior customer account statements and related documents; (b) rescission remedies, including damages and interest for fraud and misrepresentation pursuant to federal and state law; (c) the time value of money; (d) unjust enrichment; (e) damages for breach of fiduciary duty; and/or (f) money had and received.

14.     The Defendants are entitled to full credit for any purported account balance at the beginning of the statute of limitations period.

15.     The Trustee's claims are barred by estoppel, waiver, or laches.

16.     The Trustee's claims are barred by the doctrine of in pari delicto and other related equitable defenses.

17.     Madoff and/or BLMIS was not a Ponzi scheme at all relevant times.

18.     The Trustee's claims are barred, in whole or part, because BLMIS or Madoff was not insolvent at the time of each of the transfers allegedly received by the Defendants and BLMIS or Madoff did not become insolvent as a result of such transfers.

19.     The Trustee's claims are barred in whole or part because they depend upon calculations that improperly attempt to avoid transfers that occurred outside the statutory reach back periods for the avoidance of transfers.

20.     The Trustee's claims are barred in whole or part for failure to properly credit inter-account transfers, profit withdrawals, and other adjustments.

21.     The Trustee's claims are barred in whole or part for failure to properly account for the time value of money through an interest adjustment to principal deposits.

22.     The Complaint fails to state a claim on which relief can be granted because it fails to sufficiently trace the funds at issue from BLMIS or Madoff to the Defendants.

23.     Recovery of attorneys' fees from the Defendants is not permissible under sections 544 and 550 of the Bankruptcy Code and section 276-a of the New York Debtor and Creditor Law because such fees are not a "transfer" or "conveyance" under applicable law.

24.     Even if the Trustee is entitled to the return of some or all of the transfers, he is not entitled to interest from the date of each alleged transfer.

25.     The claims, other than the 11 U.S.C. § 548(a)(1)(a) claims, are barred in whole or part by res judicata, collateral estoppel, and/or issue preclusion.

26.     The Complaint is barred, in whole or in part, because the Trustee has failed to plead all of the elements of fraudulent transfer under sections 548(a)(1)(A) and 548(a)(1)(B) of the Bankruptcy Code with sufficient particularity and factual support.

27.    The Complaint is barred, in whole or in part, because the Trustee has failed to plead all of the elements of fraudulent transfer under section 544 of the Bankruptcy Code and sections 273, 274, 275, 276, 276-a, 278 and/or 279 of the New York Debtor and Creditor Law with sufficient particularity and factual support.

28.    BLMIS or Madoff purchased securities with the Defendants' money, even if those securities were not allocated on BLMIS' or Madoff's records to the Defendants' account therefore, the Defendants have a constructive trust, or equitable claim to such securities and their proceeds, including sums transferred to the Defendants.

29.    The withdrawals that the Trustee seeks to recover were legally compelled under State and federal securities laws.

30.    Customers are entitled to 9% interest from the date of deposit under New York law and under the Securities Exchange Act.

31.    The Trustee lacks standing because BLMIS was not formed until 2001 and the orders of the District Court and the Bankruptcy Court did not give the Trustee authority to recover fraudulent transfers of Bernard Madoff.

32.    There can be no liability of any recipient of funds who, as a matter of law or contract, was required to transfer any portion of the funds to a third party. Thus, for example, any funds transferred by the Defendants to the IRS in payment of taxes with respect to the Transfers should not be recoverable from the Defendants.

33.    The Trustee's claims are barred by any applicable statute of repose.

34.    Defendants are entitled to full-dollar credit for all deposits made within the reach back period.

Defendants assert the foregoing affirmative defenses and reserve the right to amend this Answer to assert other and further defenses when and if, in the course of the investigation, discovery, or preparation for trial it becomes appropriate. By designating these matters as "defenses," Defendants do not relieve the Trustee of proving under the appropriate standard of proof all elements of any claim alleged. Defendants do not undertake any burdens that properly rest upon the Trustee, and do not suggest either that the Trustee does not bear the burden of proof as to such matters or that such matters are not elements that he must establish in order to make out a prima facie case against Defendants.

Defendants further adopt and incorporate by reference any and all other defenses asserted or to be asserted by any other defendant or party-in-interest to the extent that Defendants are similarly situated and may properly assert such defense.

WHEREFORE, Defendants respectfully request that the Complaint be dismissed as against Defendants, and that costs be awarded against the Trustee.

Dated: New York, NY
         September 16, 2015

Respectfully submitted,

**AKERMAN LLP**

By: /s/ Michael I. Goldberg
        Michael I. Goldberg (MG 0869)
        Email: michael.goldberg@akerman.com
        Las Olas Centre II, Suite 1600
        350 East Las Olas Boulevard
        Fort Lauderdale, FL 33301-2229
        Phone: (954) 463-2700
        Fax: (954) 463-2224

        *Attorneys for Krellenstein Family Limited Partnership II of 1999, Krellenstein Family Enterprises, Inc., Ely Krellenstein Revocable Trust of 1994, Ely Krellenstein, Shirley Krellenstein Revocable Trust of 1994, and Shirley Krellenstein*