**BECKER & POLIAKOFF LLP**
Helen Davis Chaitman hchaitman@bplegal.com
45 Broadway
New York, New York 10006
Telephone  (212) 599-3322
Facsimile  (212) 557-0295

*Attorneys for Defendants Reckson Generation; Todd Rechler, individually, and in his capacity as Partner of Reckson Generation; Trust Fbo Todd Rechler; Glenn Rechler, individually, and in his capacity as Partner of Reckson Generation; Trust FBO Glenn Rechler U/W/O William Rechler; Mitchell Rechler, individually, and in his capacity as Partner of Reckson Generation; Trust FBO Mitchell Rechler; Scott Rechler, individually, and in his capacity as Partner of Reckson Generation; Gregg Rechler, individually, and in his capacity as Partner of Reckson Generation; Mark Rechler; individually, and in his capacity as Partner of Reckson Generation; Trust FBO Mark Rechler; and Donald Rechler, as Trustee for Trust FBO Mark Rechler, Trust FBO Glenn Rechler U/W/O William Rechler, Trust FBO Mitchell Rechler, and Trust FBO Todd Rechler*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>             Plaintiff-Applicant,<br><br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>             Defendant. | Adv. Pro. No. 08-1789 (SMB)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>             Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | Adv. Pro. No. 10-05135 (SMB) |

|  |  |
|---|---|
| Plaintiff, | **<u>JURY TRIAL DEMANDED</u>** |
| v. | |
| RECKSON GENERATION; TODD RECHLER, individually, and in his capacity as Partner of RECKSON GENERATION; TRUST FBO TODD RECHLER; GLENN RECHLER, individually, and in his capacity as Partner of RECKSON GENERATION; TRUST FBO GLENN RECHLER U/W/O WILLIAM RECHLER; MITCHELL RECHLER, individually, and in his capacity as Partner of RECKSON GENERATION; TRUST FBO MITCHELL RECHLER; SCOTT RECHLER, individually, and in his capacity as Partner of RECKSON GENERATION; GREGG RECHLER, individually, and in his capacity as Partner of RECKSON GENERATION; MARK RECHLER, individually, and in his capacity as Partner of RECKSON GENERATION; TRUST FBO MARK RECHLER; and DONALD RECHLER, as Trustee for TRUST FBO MARK RECHLER, TRUST FBO GLENN RECHLER U/W/O WILLIAM RECHLER, TRUST FBO MITCHELL RECHLER, and TRUST FBO TODD RECHLER, | |
| Defendants. | |

## ANSWER AND AFFIRMATIVE DEFENSES

Reckson Generation; Todd Rechler, individually, and in his capacity as Partner of Reckson Generation; Trust FBO Todd Rechler; Glenn Rechler, individually, and in his capacity as Partner of Reckson Generation; Trust FBO Glenn Rechler U/W/O William Rechler; Mitchell Rechler, individually, and in his capacity as Partner of Reckson Generation; Trust FBO Mitchell Rechler; Scott Rechler, individually, and in his capacity as Partner of Reckson Generation; Gregg Rechler, individually, and in his capacity as Partner of Reckson Generation; Mark Rechler; individually, and in his capacity as Partner of Reckson Generation; Trust FBO Mark Rechler; and Donald Rechler, as Trustee for Trust FBO Mark Rechler, Trust FBO Glenn Rechler U/W/O William Rechler, Trust FBO Mitchell Rechler, and Trust FBO Todd Rechler

("Defendants"), by and through their undersigned counsel, as and for their Answer to the

Complaint filed by Irving H. Picard ("Plaintiff"), as trustee for the liquidation of the business of

Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor

Protection Act, 15 U.S.C. §§ 78aaa, *et seq*. ("SIPA"),[1] and the substantively consolidated estate

of Bernard L. Madoff individually ("Madoff"), state as follows:

Pursuant to the Order Granting in Part and Denying in Part Defendants' Motions to

Dismiss entered in this proceeding on July 16, 2015 [ECF No. 45], the Court dismissed all

counts other than those seeking to avoid and recover initial transfers pursuant to sections

548(a)(1)(A), and 551 of the Bankruptcy Code.  The Court dismissed without prejudice counts

seeking to recover subsequent transfers from subsequent transferee defendants pursuant to

section 550(a) of the Bankruptcy Code, applicable provision of SIPA including section 78fff-

2(c)(3) and New York Debtor Creditor Law.  Therefore, no response to these counts is

required.  To the extent a response is required, the allegations as to those counts are denied.

## NATURE OF PROCEEDING

1.      This adversary proceeding arises from the massive Ponzi scheme perpetrated by

Madoff. Over the course of the scheme, there were more than 8,000 client accounts at BLMIS. In

early December 2008, BLMIS generated client account statements for its approximately 4,900

open client accounts. When added together, these statements purport that clients of BLMIS had

approximately $65 billion invested with BLMIS. In reality, BLMIS had assets on hand worth a

small fraction of that amount. On March 12, 2009, Madoff admitted to the fraudulent scheme and

pled guilty to 11 felony counts, and was sentenced on June 29, 2009 to 150 years in prison.

BLMIS made avoidable transfers to, or for the benefit of, the within defendants Trust FBO Todd

Rechler, Trust FBO Mitchell Rechler, Trust FBO Glenn Rechler U/W/O William Rechler ("Trust

---

[1] For convenience, future reference to SIPA will not include "15 U.S.C."

FBO Glenn Rechler") and Trust FBO Mark Rechler (the "Trust Defendants"), and Todd Rechler,

Mark Rechler, Mitchell Rechler, Gregg Rechler, Glenn Rechler, Scott Rechler and Reckson

Generation (together with the Trust Defendants, the "Defendants"), and Donald Rechler, in his

capacity as trustee for the Trust Defendants (the "Trustee Defendant").

**ANSWER:    Defendants deny receipt of avoidable transfers from BLMIS and otherwise lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 1.**

2.    Over the course of more than two decades, Rechler family members and entities

owned and/or controlled by them, held 31 separate accounts at BLMIS, through which they

invested approximately $51.5 million and received more than $48 million in fictitious profits

over the life of Madoff's Ponzi scheme. Upon information and belief, Rechler family members

also maintained personal relationships with Madoff family members. Five Rechler BLMIS

accounts (Account Nos. 1R0014, 1R0017, 1R0141, 1R0142 and 1R0144) are at issue in this

Amended Complaint.

**ANSWER:    Defendants deny the allegations of Paragraph 2.**

3.    The Defendants were beneficiaries of this Ponzi scheme. Since December 11,

2002, BLMIS made transfers totaling $4,664,524 to, or for the benefit of, the Defendants. The

Trustee's investigation has revealed that $3,932,004 of this amount represented fictitious profits

from the Ponzi scheme. Accordingly, $3,932,004 of the transfers to, or for the benefit of, the

Defendants constituted other people's money. This action is brought to recover the fictitious

profit amount so that this customer property can be equitably distributed among all of the victims

of BLMIS.

**ANSWER:    Defendants deny the allegations of Paragraph 3.**

4.      Upon information and belief, Glenn Rechler, Mark Rechler, Mitchell Rechler, Gregg Rechler, Scott Rechler and Todd Rechler (collectively, the "Subsequent Transferee Defendants") received subsequent transfers of the avoidable transfers referenced above. To the extent the funds transferred from BLMIS were for the benefit of the Subsequent Transferee Defendants, the Subsequent Transferee Defendants are the initial transferees of such transfers and are included in the definition of Defendants for purposes of the allegations herein. This action is brought to recover the fictitious profit amount so that this customer property can be equitably distributed among all of the victims of BLMIS.

**ANSWER:     Defendants deny the allegations of Paragraph 4.**

5.      This adversary proceeding is brought pursuant to sections 78fff(b), 78fff-1(a) and 78fff-2(c)(3) of SIPA, sections 105(a), 544, 548(a), 550(a) and 551 of title 11 of the United States Code (the "Bankruptcy Code"), the New York Fraudulent Conveyance Act (New York Debtor and Creditor Law § 270 *et seq.* (McKinney 2001) ("DCL")) and other applicable law, for avoidance of fraudulent conveyances in connection with certain transfers of property by BLMIS to, or for the benefit of, Defendants. The Trustee seeks to set aside such transfers and preserve and recover the property for the benefit of BLMIS' defrauded customers.

**ANSWER:     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 5.**

**JURISDICTION AND VENUE**

6.      This is an adversary proceeding commenced before the same Court before whom the main underlying SIPA proceeding, No. 08-01789 (BRL) (the "SIPA Proceeding"), is pending. The SIPA Proceeding was originally brought in the United States District Court for the Southern District of New York as *Securities Exchange Commission v. Bernard L. Madoff Investment Securities LLC et al.*, No. 08 CV 10791 (the "District Court Proceeding") and has

been referred to this Court. This Court has jurisdiction over this adversary proceeding under 28

U.S.C. § 1334(b); 15 U.S.C. §§ 78eee(b)(2)(A), (b)(4); N.Y. CPLR 301 and 302; and

Bankruptcy Rule 7004. The Defendants and Subsequent Transferee Defendants maintained

minimum contacts with New York in connection with the claims alleged herein.

**ANSWER:    Defendants lack knowledge or information sufficient to form a belief**
**as to the truth of the allegations of Paragraph 6.**

7.    This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B), (C), (H) and

(O).

**ANSWER:    Defendants deny the allegations of Paragraph 7.  Pursuant to Local**
**Rule 9027-2, Defendants do not consent to the entry of final orders or judgment by the**
**Bankruptcy Court.**

8.    Venue in this district is proper under 28 U.S.C. § 1409.

**ANSWER:    Defendants lack knowledge or information sufficient to form a belief**
**as to the truth of the allegations of Paragraph 8.**

## DEFENDANTS

9.    Upon information and belief, Defendant Reckson Generation is a partnership that

was formed under the laws of the State of New York. Defendant's principal place of business is

located in Melville, New York. Upon information and belief, Glenn Rechler, Gregg Rechler,

Mitchell Rechler, Scott Rechler, Mark Rechler and Todd Rechler are partners of Defendant

Reckson Generation.

**ANSWER:    Defendants admit the allegations of Paragraph 9.**

10.    Upon information and belief, Defendant Trust FBO Todd Rechler is a trust that

was formed under the laws of the State of New York. Defendant holds a BLMIS account in the

name, "Trust FBO Todd Rechler," with the account address reported as Melville, New York.

**ANSWER:    Defendant Trust FBO Todd Rechler admits the allegations of**
**Paragraph 10.**

11.    Upon information and belief, Defendant Trust FBO Glenn Rechler is a trust that was formed under the laws of the State of New York. Defendant holds a BLMIS account in the name, "Trust FBO Glenn Rechler U/W/O William Rechler," with the account address reported as Melville, New York.

**ANSWER:    Defendant Trust FBO Glenn Rechler admits the allegations of**
**Paragraph 11.**

12.    Upon information and belief, Defendant Trust FBO Mitchell Rechler is a trust that was formed under the laws of the State of New York. Defendant holds a BLMIS account in the name, "Trust FBO Mitchell Rechler," with the account address reported as Melville, New York.

**ANSWER:    Defendant Trust FBO Mitchell Rechler admits the allegations of**
**Paragraph 12.**

13.    Upon information and belief, Defendant Trust FBO Mark Rechler is a trust that was formed under the laws of the State of New York. Defendant holds a BLMIS account in the name, "Trust FBO Mark Rechler," with the account address reported as Melville, New York.

**ANSWER:    Defendant Trust FBO Mark Rechler admits the allegations of**
**Paragraph 13.**

14.    Upon information and belief, Defendant and Subsequent Transferee Defendant Todd Rechler maintains his residence in Morristown, New Jersey. Todd Rechler is named in this Amended Complaint individually, and in his capacity as partner of Defendant Reckson Generation.

**ANSWER:    Defendant Todd Rechler admits the allegations of Paragraph 14.**

15.    Upon information and belief, Defendant and Subsequent Transferee Defendant Scott Rechler maintains his residence in Glen Head, New York. Scott Rechler is named in this Amended Complaint individually, and in his capacity as partner of Defendant Reckson Generation.

**ANSWER:    Defendant Scott Rechler admits the allegations of Paragraph 15.**

16.    Upon information and belief, Defendant and Subsequent Transferee Defendant Gregg Rechler maintains his residence in New York, New York. Gregg Rechler is named in this Amended Complaint individually, and in his capacity as partner of Defendant Reckson Generation.

**ANSWER:    Defendant Greg Rechler admits the allegations of Paragraph 16.**

17.    Upon information and belief, Defendant and Subsequent Transferee Defendant Mitchell Rechler maintains his residence in Glen Head, New York. Mitchell Rechler is named in this Amended Complaint individually, and in his capacity as partner of Defendant Reckson Generation.

**ANSWER:    Defendant Mitchell Rechler admits the allegations of Paragraph 17.**

18.    Upon information and belief, Defendant and Subsequent Transferee Defendant Mark Rechler maintains his residence in Laurel Hollow, New York. Mark Rechler is named in this Amended Complaint individually, and in his capacity as partner of Defendant Reckson Generation.

**ANSWER:    Defendant March Rechler admits the allegations of Paragraph 18.**

19.    Upon information and belief, Defendant and Subsequent Transferee Defendant Glenn Rechler maintains his residence in Greater London, United Kingdom. Glenn Rechler is

named in this Amended Complaint individually, and in his capacity as partner of Defendant

Reckson Generation.

**ANSWER:    Defendant Glenn Rechler admits the allegations of Paragraph 19.**

20.    Upon information and belief, Trustee Defendant Donald Rechler maintains his

residence in Locust Valley, New York. Upon information and belief, at all relevant times,

Donald Rechler has served as a trustee of the Trust Defendants, and is named in this Amended

Complaint solely in his capacity as trustee, not personally.

**ANSWER:    Defendant Donald Rechler admits the allegations of Paragraph 20.**

**BACKGROUND, THE TRUSTEE AND STANDING**

21.    On December 11, 2008 (the "Filing Date"),[2] Madoff was arrested by federal

agents for violation of the criminal securities laws, including, *inter alia*, securities fraud,

investment adviser fraud, and mail and wire fraud. Contemporaneously, the Securities and

Exchange Commission ("SEC") filed a complaint in the District Court which commenced the

District Court Proceeding against Madoff and BLMIS. The District Court Proceeding remains

pending in the District Court. The SEC complaint alleged that Madoff and BLMIS engaged in

fraud through the investment advisor activities of BLMIS.

**ANSWER:    Defendants lack knowledge or information sufficient to form a belief**

**as to the truth of the allegations of Paragraph 21.**

22.    On December 12, 2008, The Honorable Louis L. Stanton of the District Court

entered an order appointing Lee S. Richards, Esq. (the "Receiver") as receiver for the assets of

BLMIS.

---

[2] Section 78*lll*(7)(B) of SIPA states that the filing date is "the date on which an application for a protective decree is filed under 78eee(a)(3)," except where the debtor is the subject of a proceeding pending before a United States court "in which a receiver, trustee, or liquidator for such debtor has been appointed and such proceeding was commenced before the date on which such application was filed, the term 'filing date' means the date on which such proceeding was commenced." 15 U.S.C. § 78*lll*(7)(B). Thus, even though the application for a protective decree was filed on December 15, 2008, the Filing Date in this action is December 11, 2008.

**ANSWER:** **Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 22.**

23.    On December 15, 2008, pursuant to section 78eee(a)(4)(A) of SIPA, the SEC consented to a combination of its own action with an application of the Securities Investor Protection Corporation ("SIPC"). Thereafter, pursuant to section 78eee(a)(4)(B) of SIPA, SIPC filed an application in the District Court alleging, *inter alia*, that BLMIS was not able to meet its obligations to securities customers as they came due and, accordingly, its customers needed the protections afforded by SIPA.

**ANSWER:** **Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 23.**

24.    Also on December 15, 2008, Judge Stanton granted the SIPC application and entered an order pursuant to SIPA (the "Protective Decree"), which, in pertinent part:

a.    appointed the Trustee for the liquidation of the business of BLMIS pursuant to section 78eee(b)(3) of SIPA;

b.    appointed Baker & Hostetler LLP as counsel to the Trustee pursuant to section 78eee(b)(3) of SIPA; and

c.    removed the case to this Court pursuant to section 78eee(b)(4) of SIPA. By this Protective Decree, the Receiver was removed as Receiver for BLMIS.

**ANSWER:** **Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 24.**

25.    By orders dated December 23, 2008 and February 4, 2009, respectively, the Bankruptcy Court approved the Trustee's bond and found that the Trustee was a disinterested

person. Accordingly, the Trustee is duly qualified to serve and act on behalf of the estate of

BLMIS.

**ANSWER:    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 25.**

26.    At a Plea Hearing on March 12, 2009 in the case captioned *United States v. Madoff*, Case No. 09-CR-213(DC), Madoff pled guilty to an eleven-count criminal information filed against him by the United States Attorneys' Office for the Southern District of New York. At the Plea Hearing, Madoff admitted that he "operated a Ponzi scheme through the investment advisory side of [BLMIS]." Plea Allocution of Bernard L. Madoff at 23, *United States v. Madoff*, No. 09-CR-213 (DC) (S.D.N.Y. March 12, 2009) (Docket No. 50). Additionally, Madoff asserted "[a]s I engaged in my fraud, I knew what I was doing [was] wrong, indeed criminal." *Id.* Madoff was sentenced on June 29, 2009 to 150 years in prison.

**ANSWER:    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 26.**

27.    On August 11, 2009, a former BLMIS employee, Frank DiPascali, pled guilty to participating in and conspiring to perpetuate the Ponzi scheme. At a Plea Hearing on August 11, 2009 in the case entitled *United States v. DiPascali,* Case No. 09-CR-764 (RJS), DiPascali pled guilty to a ten-count criminal information. Among other things, DiPascali admitted that the fictitious scheme had begun at BLMIS since at least the 1980s. Plea Allocution of Frank DiPascali at 46, *United States v. DiPascali,* No. 09-CR-764 (RJS) (S.D.N.Y. Aug. 11, 2009) (Docket No. 11).

**ANSWER:    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 27.**

28.     As the Trustee appointed under SIPA, the Trustee is charged with recovering and paying out customer property to BLMIS' customers, assessing claims, and liquidating any other assets of the firm for the benefit of the estate and its creditors. The Trustee is in the process of marshalling BLMIS' assets, and the liquidation of BLMIS' assets is well underway. However, such assets will not be sufficient to reimburse the customers of BLMIS for the billions of dollars that they invested with BLMIS over the years. Consequently, the Trustee must use his authority under SIPA and the Bankruptcy Code to pursue recovery from customers who received preferences and/or payouts of fictitious profits to the detriment of other defrauded customers whose money was consumed by the Ponzi scheme. Absent this or other recovery actions, the Trustee will be unable to satisfy the claims described in subparagraphs (A) through (D) of SIPA section 78fff-2(c)(1).

**ANSWER:     Defendants deny the allegations of Paragraph 28.**

29.     Pursuant to section 78fff-1(a), the Trustee has the general powers of a bankruptcy trustee in a case under the Bankruptcy Code in addition to the powers granted by SIPA pursuant to SIPA section 78fff(b). Chapters 1, 3, 5 and subchapters I and II of chapter 7 of the Bankruptcy Code apply to this proceeding to the extent consistent with SIPA.

**ANSWER:     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 29.**

30.     Pursuant to sections 78fff(b) and 78*lll*(7)(B) of SIPA, the Filing Date is deemed to be the date of the filing of the petition within the meaning of section 548 of the Bankruptcy Code and the date of the commencement of the case within the meaning of section 544 of the Bankruptcy Code.

**ANSWER:** **Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 30.**

31.     The Trustee has standing to bring these claims pursuant to section 78fff-1(a) of SIPA and the Bankruptcy Code, including sections 323(b) and 704(a)(1), because, among other reasons:

a.     the Defendants and the Subsequent Transferee Defendants received "Customer Property" as defined in 15 U.S.C. §78*lll*(4);

b.     BLMIS incurred losses as a result of the claims set forth herein;

c.     BLMIS' customers were injured as a result of the conduct detailed herein;

d.     SIPC has not reimbursed, and statutorily cannot fully reimburse, all customers for all of their losses;

e.     the Trustee will not be able to fully satisfy all claims;

f.     the Trustee, as bailee of customer property, can sue on behalf of the customer bailors;

g.     the Trustee is the assignee of claims paid, and to be paid, to customers of BLMIS who have filed claims in the liquidation proceeding (such claim-filing customers, collectively, "Accountholders"). As of the date hereof, the Trustee has received multiple express unconditional assignments of the applicable Accountholders' causes of action, which actions could have been asserted against Defendants and Subsequent Transferee Defendants. As assignee, the Trustee stands in the shoes of persons who have suffered injury in fact and a distinct and palpable loss for which the Trustee is entitled to reimbursement in the form of monetary damages. The Trustee brings this action on behalf of, among others, those defrauded customers of BLMIS who invested more money in BLMIS than they withdrew; and

h.      SIPC is the subrogee of claims paid, and to be paid, to customers of

BLMIS who have filed claims in the liquidation proceeding. SIPC has expressly conferred upon

the Trustee enforcement of its rights of subrogation with respect to payments it has made and is

making to customers of BLMIS from SIPC funds.

**ANSWER:      Defendants deny the allegations of Paragraph 28.**

## THE FRAUDULENT PONZI SCHEME

32.      Founded in 1959, BLMIS began operations as a sole proprietorship of Madoff and

later, effective January 2001, formed as a New York limited liability company wholly owned by

Madoff. Since in or about 1986, BLMIS operated from its principal place of business at 885

Third Avenue, New York, New York. Madoff, as founder, proprietor, chairman, and chief

executive officer, ran BLMIS together with several family members and a number of additional

employees. BLMIS was registered with the SEC as a securities broker-dealer under section 15(b)

of the Securities Exchange Act of 1934, 15 U.S.C. § 78*o*(b). By that registration, BLMIS is a

member of SIPC. BLMIS had three business units: investment advisory (the "IA Business"),

market making and proprietary trading.

**ANSWER:      Defendants deny the allegations of Paragraph 29; BLMIS was not**

**formed until 2001.**

33.      For certain accounts in the IA Business, BLMIS purported to participate in a

capital appreciation/depreciation strategy, depending on whether the customer sought to generate

gains or losses. For example, the strategy was executed by either purporting to purchase small

groups of securities near lows and then purporting to sell those same securities at highs, or by

purporting to short-sell securities near highs and then purporting to repurchase those securities

near lows.

**ANSWER:    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 33.**

34.    For other accounts, Madoff described the IA Business' strategy as a "split-strike conversion" strategy. Madoff promised these clients that their funds would be invested in a basket of common stocks within the S&P 100 Index, which is a collection of the 100 largest U.S. publicly traded companies. The basket of stocks would be intended to mimic the movement of the S&P 100 Index. Madoff asserted that he would carefully time purchases and sales to maximize value, but this meant that the clients' funds would intermittently be out of the market, at which times they would purportedly be invested in U.S. issued securities and money market funds. The second part of the split-strike conversion strategy was the hedge of such purchases with option contracts. Madoff purported to purchase and sell S&P 100 Index option contracts that closely corresponded with the stocks in the basket, thereby controlling the downside risk of price changes in the basket of stocks.

**ANSWER:    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 34.**

35.    Although clients of the IA Business received monthly or quarterly statements purportedly showing the securities that were held in – or had been traded through – their accounts, as well as the growth of and profit from those accounts over time, the trades reported on these statements were a complete fabrication. The security purchases and sales depicted in the account statements virtually never occurred and the profits reported were entirely fictitious. At his Plea Hearing, Madoff admitted that he never in fact purchased any of the securities he claimed to have purchased for customer accounts. *See* Plea Allocution of Bernard L. Madoff at 3, *United States v. Madoff,* No. 09-CR-213 (DC) (S.D.N.Y. March 12, 2009) (Docket No. 50).

Indeed, based on the Trustee's investigation to date and with the exception of isolated individual trades for certain clients, there is no record of BLMIS having cleared any purchase or sale of securities on behalf of the IA Business at the Depository Trust & Clearing Corporation, the clearing house for such transactions.

**ANSWER:    Defendants deny the allegations of Paragraph 35.**

36.    Prior to his arrest, Madoff assured clients and regulators that he conducted all trades on the over-the-counter market after hours. To bolster that lie, Madoff periodically wired tens of millions of dollars to BLMIS' affiliate, Madoff Securities International Ltd. ("MSIL"), a London based entity substantially owned by Madoff and his family. There are no records that MSIL ever used the wired funds to purchase securities for the accounts of the IA Business clients.

**ANSWER:    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 36.**

37.    Additionally, based on the Trustee's investigation to date, there is no evidence that BLMIS ever purchased or sold any of the options that Madoff claimed on customer statements to have purchased and sold.

**ANSWER:    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 37.**

38.    For all periods relevant hereto, the IA Business was operated as a Ponzi scheme and Madoff and his co-conspirators concealed the ongoing fraud in an effort to hinder, delay or defraud other current and prospective customers of BLMIS. The money received from investors was not set aside to buy securities as purported, but instead was primarily used to make the distributions to – or payments on behalf of – other investors. The money sent to BLMIS for

investment, in short, was simply used to keep the scheme going and to enrich Madoff, his associates and others, including Defendants, until such time as the requests for redemptions in December 2008 overwhelmed the flow of new investments and caused the inevitable collapse of the Ponzi scheme.

**ANSWER:    Defendants deny the allegations of Paragraph 38.**

39.    The payments to investors constituted an intentional misrepresentation of fact regarding the underlying accounts and were an integral and essential part of the fraud. The payments were necessary to validate the false account statements, and were made to avoid detection of the fraud, to retain existing investors and to lure other investors into the Ponzi scheme.

**ANSWER:    Defendants deny the allegations of Paragraph 39.**

40.    During the scheme, certain investors requested and received distributions of the so-called "profits" listed for their accounts which were nothing more than fictitious profits. Other investors, from time to time, redeemed or closed their accounts, or removed portions of purportedly available funds, and were paid consistently with the statements they had been receiving. Some of those investors later re-invested part or all of those withdrawn payments with BLMIS.

**ANSWER:    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 40.**

41.    When payments were made to or on behalf of these investors, including Defendants, the falsified monthly statements of accounts reported that the accounts of such investors included substantial gains. In reality, BLMIS had not invested the investors' principal as reflected in customer statements. In an attempt to conceal the ongoing fraud and thereby

hinder, delay or defraud other current and prospective investors, BLMIS paid to or on behalf of certain investors the inflated amounts reflected in the falsified financial statements, including principal and/or fictitious profits.

**ANSWER:    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 41.**

42.    BLMIS used the funds deposited from new investments to continue operations and pay redemption proceeds to or on behalf of other investors and to make other transfers. Due to the siphoning and diversion of new investments to fund redemptions requested by other investors, BLMIS did not have the funds to pay investors on account of their new investments. BLMIS was able to stay afloat only by using the principal invested by some clients to pay other investors or their designees.

**ANSWER:    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 42.**

43.    In an effort to hinder, delay or defraud authorities from detecting the fraud, BLMIS did not register as an Investment Advisor until September 2006.

**ANSWER:    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 43.**

44.    In or about January 2008, BLMIS filed with the SEC a Uniform Application for Investment Adviser Registration. The application represented, *inter alia*, that BLMIS had 23 customer accounts and assets under management of approximately $17.1 billion. In fact, in January 2008, BLMIS had approximately 4,900 active client accounts with a purported value of approximately $65 billion under management.

**ANSWER:** **Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 44.**

45.      Not only did Madoff seek to evade regulators, Madoff also had false audit reports "prepared" by Friehling & Horowitz, a three-person accounting firm in Rockland County, New York. Of the two accountants at the firm, one was semi-retired and living in Florida for many years prior to the Filing Date.

**ANSWER:** **Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 45.**

46.      At all times relevant hereto, the liabilities of BLMIS were billions of dollars greater than the assets of BLMIS. At all relevant times, BLMIS was insolvent in that (i) its assets were worth less than the value of its liabilities; (ii) it could not meet its obligations as they came due; and (iii) at the time of the transfers, BLMIS was left with insufficient capital.

**ANSWER:** **Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 46.**

### **THE TRANSFERS**

47.      According to BLMIS' records, BLMIS Account Nos. 1R0014 (Reckson Generation), 1R0017 (Trust FBO Mark Rechler), 1R0141[3] (Trust FBO Glenn Rechler), 1R0142 (Trust FBO Mitchell Rechler), and 1R0144 (Trust FBO Todd Rechler) were maintained with BLMIS, as set forth on Exhibit A (collectively, the "Accounts"). Upon information and belief, for each Account, a Customer Agreement, an Option Agreement, and/or a Trading Authorization Limited to Purchases and Sales of Securities and Options (collectively, the "Account

---

[3] Account Nos. 1R0141, 1R0142 and 1R0144 appear to have been opened with transfers from predecessor accounts. Any principal balances in such predecessor accounts have been credited to the 1R0141, 1R0142 and 1R0144 accounts, as reflected on Exhibit B attached hereto.

Agreements") were executed and delivered to BLMIS at BLMIS' headquarters at 885 Third

Avenue, New York, New York.

**ANSWER:    Defendants admit the allegations of Paragraph 47.**

48.    The Account Agreements were to be performed in New York, New York through

securities trading activities that would take place in New York, New York. The Accounts were

held in New York, New York, and some or all of the Defendants sent funds to BLMIS and/or to

BLMIS' account at JPMorgan Chase & Co., Account #xxxxxxxxxxx1703 (the "BLMIS Bank

Account") in New York, New York for application to the Accounts and the purported conducting

of trading activities. Between the date the Accounts were opened and the Filing Date, some or all

of the Defendants made deposits to BLMIS through checks and/or wire transfers into the BLMIS

Bank Account and/or received inter-account transfers from other BLMIS accounts.

**ANSWER:    Defendants deny the allegations of Paragraph 48 to the extent that**

**BLMIS was not formed until 2001 and otherwise lack knowledge or information sufficient**

**to form a belief as to the truth of the allegations of Paragraph 48.**

49.    During the six years prior to the Filing Date, BLMIS made transfers (collectively,

the "Transfers") to, or for the benefit of, Defendants totaling at least $3,932,004 in fictitious

profits from the Ponzi scheme. The Transfers to, or for the benefit of, Defendants constitute non-

existent profits supposedly earned in the Accounts, but, in reality, they were other people's

money. The Transfers were made to, or for the benefit of, Defendants and are set forth in

Columns 10 and 11 on Exhibit B annexed hereto.

**ANSWER:    Defendants deny the allegations of Paragraph 49.**

50.    The Transfers that are avoidable and recoverable under sections 544(b), 550(a)(1)

and 551 of the Bankruptcy Code, applicable provisions of SIPA, particularly SIPA section 78fff-

2(c)(3), and applicable provisions of N.Y. CPLR 203(g) (McKinney 2001) and DCL sections

273 – 279 (McKinney 2001) total at least $3,932,004 and are referred to hereafter as the "Six

Year Transfers." The Six Year Transfers were made to, or for the benefit of, the Defendants as

follows: (a) $1,519,524 in the Reckson Generation Account; (b) $431,620 in the Trust FBO

Mark Rechler Account; (c) $442,620 in the Trust FBO Glenn Rechler Account; (d) $423,620 in

the Trust FBO Mitchell Rechler Account; and (e) $1,114,620 in the Trust FBO Todd Rechler

Account. See Exhibit B, Column 11.

> **ANSWER:    Defendants deny the allegations of Paragraph 50.**

51.    The Transfers, within two years, that are avoidable and recoverable under sections

548(a), 550(a)(1) and 551 of the Bankruptcy Code and applicable provisions of SIPA,

particularly SIPA section 78fff-2(c)(3), total at least $2,205,524 and are referred to hereafter as

the "Two Year Transfers." The Two Year Transfers were made to, or for the benefit of, the

Defendants as follows: (a) $1,519,524 in the Reckson Generation Account; (b) $286,000 in the

Trust FBO Mark Rechler Account; and (c) $400,000 in the Trust FBO Glenn Rechler Account.

See Exhibit B, Column 10.

> **ANSWER:    Defendants deny the allegations of Paragraph 51.**

52.    On information and belief, some or all of the Transfers were subsequently

transferred by the Defendants to the Subsequent Transferee Defendants (collectively, the

"Subsequent Transfers").

> **ANSWER:    Defendants lack knowledge or information sufficient to form a belief
> as to the truth of the allegations of Paragraph 52.**

53.    The Subsequent Transfers, or the value thereof, are recoverable from the

Subsequent Transferee Defendants pursuant to § 550(a) of the Bankruptcy Code.

**ANSWER:    Defendants deny the allegations of Paragraph 53.**

54.      In addition to the Transfers identified above, the Trustee's investigation has revealed that BLMIS made $2,949,260 of principal transfers and $1,259,260 of additional fictitious profits transfers, to or for the benefit of, the Defendants over the history of the Accounts.

**ANSWER:    Defendants deny the allegations of Paragraph 54.**

55.      To the extent discovery reveals that the Defendants were aware, or should have been aware, of the irregularities in the Accounts that would have provided them with inquiry notice of Madoff's fraud, the Trustee reserves the right to (i) supplement the information regarding the Transfers and Subsequent Transfers and any additional transfers; and (ii) seek recovery of some or all of the full history of the principal and fictitious profits transfers, totaling $8,140,524, that were made by BLMIS to, or for the benefit of, the Defendants and the Subsequent Transferee Defendants.

**ANSWER:    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 55.**

56.      To the extent that any of the avoidance and/or recovery counts may be inconsistent with each other, they are to be treated as being pled in the alternative.

**ANSWER:    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 56.**

## CUSTOMER CLAIMS

57.      On or about June 19, 2009, Defendants Trust FBO Mark Rechler, Trust FBO Glenn Rechler and Trust FBO Mitchell Rechler filed customer claims with the Trustee which the Trustee has designated as Claim Nos. 010632, 010466 and 010467, respectively (the "Customer Claims").

**ANSWER:    Defendant admits the allegations of Paragraph 57.**

58.    On or about October 19, 2009, November 30, 2009, and December 8, 2009, the Trustee issued Notices of Trustee's Determination of Claims (the "Determinations") to Defendants Trust FBO Mark Rechler, Trust FBO Glenn Rechler and Trust FBO Mitchell Rechler with respect to the Customer Claims. Copies of the Determinations are attached hereto as Exhibit C.

**ANSWER:    Defendant admits the allegations of Paragraph 58.**

59.    On or about October 19, 2009, the Trustee issued a Notice of Trustee's Determination of Claim to Defendant Trust FBO Mitchell Rechler with respect to Customer Claim No. 010467.

**ANSWER:    Defendant admits the allegations of Paragraph 59.**

60.    On or about November 30, 2009, the Trustee issued a Notice of Trustee's Determination of Claim to Defendant Trust FBO Mark Rechler with respect to Customer Claim No. 010632.

**ANSWER:    Defendant admits the allegations of Paragraph 60.**

61.    On or about December 8, 2009, the Trustee issued a Notice of Trustee's Determination of Claim to Defendant Trust FBO Glenn Rechler with respect to Customer Claim No. 010466.

**ANSWER:    Defendant admits the allegations of Paragraph 61.**

62.    Defendants Trust FBO Mark Rechler, Trust FBO Glenn Rechler and Trust FBO Mitchell Rechler did not file objections to the Determinations with the Court.

**ANSWER:    Defendant admits the allegations of Paragraph 62.**

63.     On December 23, 2008, this Court entered an Order on Application for Entry of an Order Approving Form and Manner of Publication and Mailing of Notices, Specifying Procedures for Filing, Determination and Adjudication of Claims, and Providing Other Relief ("Claims Procedures Order"; Docket No. 12). The Claims Procedures Order includes a process for determination and allowance of claims under which the Trustee has been operating. The Trustee intends to resolve the Customer Claims and any related objections to the Trustee's determination of such claims through a separate hearing as contemplated by the Claims Procedures Order.

**ANSWER:    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 63.**

**COUNT ONE**
**FRAUDULENT TRANSFER – 11 U.S.C. §§ 548(a)(1)(A), 550(a) AND 551**

64.     To the extent applicable, the Trustee incorporates by reference the allegations contained in the previous paragraphs of this Amended Complaint as if fully rewritten herein.

**ANSWER:    Defendants repeat the answers heretofore stated.**

65.     Each of the Two Year Transfers was made on or within two years before the Filing Date.

**ANSWER:    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 65.**

66.     Each of the Two Year Transfers constituted a transfer of an interest of BLMIS in property within the meaning of section 101(54) of the Bankruptcy Code and pursuant to section 78fff-2(c)(3) of SIPA.

**ANSWER:    Defendants deny the allegations of Paragraph 66.**

67.    Each of the Two Year Transfers was made by BLMIS with the actual intent to hinder, delay or defraud some or all of BLMIS' then existing and/or future creditors.

**ANSWER:    Defendants deny the allegations of Paragraph 67.**

68.    Each of the Two Year Transfers constitutes a fraudulent transfer avoidable by the Trustee pursuant to section 548(a)(1)(A) of the Bankruptcy Code and recoverable from Defendants Reckson Generation, Trust FBO Mark Rechler, and Trust FBO Glenn Rechler pursuant to section 550(a) of the Bankruptcy Code and section 78fff-2(c)(3) of SIPA.

**ANSWER:    Defendants deny the allegations of Paragraph 68.**

69.    As a result of the foregoing, pursuant to sections 548(a)(1)(A), 550(a), and 551 of the Bankruptcy Code and section 78fff-2(c)(3) of SIPA, the Trustee is entitled to a judgment (i) against Defendants Reckson Generation, Trust FBO Mark Rechler, and Trust FBO Glenn Rechler: (a) avoiding and preserving the Two Year Transfers, (b) directing that the Two Year Transfers be set aside, and (c) recovering the Two Year Transfers, or the value thereof, from Defendants Reckson Generation, Trust FBO Mark Rechler, and Trust FBO Glenn Rechler for the benefit of the estate of BLMIS; and (ii) against the Trustee Defendant directing the Trustee Defendant to surrender and transfer or to otherwise facilitate the surrender and transfer of such avoided Two Year Transfers from Defendants Reckson Generation, Trust FBO Mark Rechler, and Trust FBO Glenn Rechler to the Trustee for the benefit of the estate of BLMIS.

**ANSWER:    Defendants deny the allegations of Paragraph 61.**

**AFFIRMATIVE DEFENSES**

1.    The Complaint fails to state a claim upon which relief can be granted.

2.    The transfers from BLMIS or Madoff to Defendants made prior to two years from the Filing Date are shielded from avoidance under the safe harbor provision of section 546(e) of the Bankruptcy Code.

3.      Defendants gave, and BLMIS or Madoff received, reasonably equivalent value in exchange for the transfers alleged in the Complaint.

4.      Defendants took the transfers alleged in the Complaint for value and in good faith on account of a valid antecedent debt as contemplated by 11 U.S.C. Section 548(c).

5.      The Complaint violates Rules 8(a)(2) and 9(b) of the Federal Rules of Civil Procedure, *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).

6.      The Trustee lacks standing, in whole or in part, to bring the claims asserted because he lacks Article III injury.

7.      The Trustee's prosecution of these claims is a denial of Defendants' rights to due process of law because the Trustee is a quasi-governmental officer and he has an economic interest in each litigation because he receives at least 15% of all legal fees paid to Baker & Hostetler LLP.

8.      The claims are not ripe because they do not meet the conditions of section 78fff-2(c)(3) of SIPA. The Trustee has not established that there is a shortfall in customer property.

9.      The transfers are not avoidable and/or recoverable because the funds at issue were not property of the bankruptcy estate in which BLMIS or Madoff had a legal interest.  *See In re Enron*, 2002 WL 32772482 (Bankr. S.D.N.Y. 2002)

10.     The Complaint fails to state a claim on which relief can be granted because it fails to properly plead the elements required for the avoidance of BLMIS' or Madoff's obligations. Absent an action to avoid BLMIS' or Madoff's obligations to pay what is owed to the customer under applicable state law, the transfers were all made on account of antecedent debt.  To the

extent the Trustee will attempt to plead the avoidance of obligations, he is not authorized under governing statutes to pursue such avoidance claims.

11.    The payments received by the Defendants were taken without actual fraudulent intent and for fair consideration, as provided by section 278(2) of the New York Debtor and Creditor Law. They are thus not avoidable or recoverable as against the Defendants under sections 544 and 550 of the Bankruptcy Code or sections 272 through 276 of the New York Debtor and Creditor Law.

12.    The payments received by the Defendants were taken for fair consideration and without knowledge of the fraud, as provided by section 278(1) of the New York Debtor and Creditor Law.  They are thus not avoidable or recoverable as against the Defendants under Sections 544 and 550 of the Bankruptcy Code or sections 272 through 276 of the New York Debtor and Creditor Law.

13.    The Trustee's claims are barred by his own breach of fiduciary duty.

14.    The Trustee's claims are barred in whole or part by applicable statutes of limitations.

15.    The Trustee's calculation of Defendants' liability violates the Defendants' due process rights.

16.    The Defendants are entitled to setoff, recoupment, and/or equitable adjustment because each year Defendants were required to pay taxes on the fictitious profits" reported on, among other things, IRS Form 1099 and other information reported by BLMIS or Madoff to the Internal Revenue Service, state and/or local governmental taxing authorities.

17.      The Internal Revenue Service was a co-obligor of Defendants, with whom the Trustee settled all claims without the consent of Defendants, thereby discharging Defendants of any liability.

18.      Each claim for recovery of a fraudulent transfer is subject to setoff or equitable adjustment because the Defendants received such transfer in good faith, without knowledge of the alleged fraud, and in payment of an antecedent debt, in whole or in part, on account of obligations owed by BLMIS or Madoff for, *inter alia*, (a) amounts contractually due to customers under New York law for the balances shown on prior customer account statements and related documents; (b) rescission remedies, including damages and interest for fraud and misrepresentation pursuant to federal and state law; (c) the time value of money; (d) unjust enrichment; (e) damages for breach of fiduciary duty; and/or (f) money had and received.

19.      The Defendants are entitled to full credit for any purported account balance at the beginning of the statute of limitations period.

20.      The Trustee has fraudulently calculated Defendants' liability by charging Defendants with withdrawals that the Trustee has no proof were taken.

21.      The Trustee's claims are barred by estoppel, waiver, or laches.

22.      The Trustee's claims are barred by the doctrine of *in pari delicto* and other related equitable defenses.

23.      The Trustee relies upon a Ponzi scheme presumption which does not exist under the Bankruptcy Code.

24.      Madoff and/or BLMIS was not a Ponzi scheme at all relevant times.

25. The Trustee's claims are barred, in whole or part, because BLMIS or Madoff was not insolvent at the time of each of the transfers allegedly received by the Defendants and BLMIS or Madoff did not become insolvent as a result of such transfers.

26. The Trustee's claims are barred in whole or part because they depend upon calculations that improperly attempt to avoid transfers that occurred outside the statutory reach back periods for the avoidance of transfers.

27. The Trustee's claims are barred in whole or part for failure to properly credit inter-account transfers, profit withdrawals, and other adjustments.

28. The Trustee's claims are barred in whole or part for failure to properly account for the time value of money through an interest adjustment to principal deposits.

29. The Complaint fails to state a claim on which relief can be granted because it fails to sufficiently trace the funds at issue from BLMIS or Madoff to the Defendants.

30. Recovery of attorneys' fees from the Defendants is not permissible under sections 544 and 550 of the Bankruptcy Code and section 276-a of the New York Debtor and Creditor Law because such fees are not a "transfer" or "conveyance" under applicable law.

31. Even if the Trustee is entitled to the return of some or all of the transfers, he is not entitled to interest from the date of each alleged transfer.

32. The claims are barred in whole or part by *res judicata*, collateral estoppel, and/or issue preclusion.

33. The Complaint is barred, in whole or in part, because the Trustee has failed to plead all of the elements of fraudulent transfer under sections 548(a)(1)(A) and 548(a)(1)(B) of the Bankruptcy Code with sufficient particularity and factual support.

34.     The Complaint is barred, in whole or in part, because the Trustee has failed to plead all of the elements of fraudulent transfer under section 544 of the Bankruptcy Code and sections 273, 274, 275, 276, 276-a, 278 and/or 279 of the New York Debtor and Creditor Law with sufficient particularity and factual support.

35.     BLMIS or Madoff purchased securities with the Defendants' money, even if those securities were not allocated on BLMIS' or Madoff's records to the Defendants' account.

36.     The Trustee's claims violate the New York State policy of finality in financial transactions.

37.     The withdrawals that the Trustee seeks to recover were legally compelled under State and federal securities laws.

38.     Customers are entitled to 9% interest from the date of deposit under New York law and under the Securities Exchange Act.

39.     Customers are entitled to full-dollar credit for funds transferred into their accounts.

40.     The Trustee's calculation of claims going back beyond the statute of limitations period violates the due process clause of the Fifth Amendment of the United States Constitution and violates the New York State Constitution.

41.     The Trustee lacks standing because BLMIS was not formed until 2001 and the orders of the District Court and the Bankruptcy Court did not give the Trustee authority to recover fraudulent transfers of Bernard Madoff.

42.     There can be no liability of any recipient of funds who, as a matter of law or contract, was required to transfer any portion of the funds to a third party.

43.     The Defendants cannot be liable for withdrawals that Defendants were legally compelled to transfer to state and federal taxing authorities.

44.     The Trustee's claims are barred by any applicable statute of repose.

45.     Defendants are entitled to full-dollar credit for all deposits made within the reach back period.

46.     The Trustee's claims are barred in whole or part for failure to properly credit Defendants with all of Defendants' deposits.

Defendants assert the foregoing affirmative defenses and reserve the right to amend this Answer to assert other and further defenses when and if, in the course of the investigation, discovery, or preparation for trial it becomes appropriate. By designating these matters as "defenses," Defendants do not relieve the Trustee of proving under the appropriate standard of proof all elements of any claim alleged. Defendants do not undertake any burdens that properly rest upon the Trustee, and do not suggest either that the Trustee does not bear the burden of proof as to such matters or that such matters are not elements that he must establish in order to make out a *prima facie* case against Defendants.

Defendants further adopt and incorporate by reference any and all other defenses asserted or to be asserted by any other defendant or party-in-interest to the extent that Defendants are similarly situated and may properly assert such defense.

WHEREFORE, Defendants respectfully request that the Complaint be dismissed as against Defendants, and that costs be awarded against the Trustee.

Dated:    September 18, 2015          **BECKER & POLIAKOFF LLP**
          New York, New York

                                  By:    */s/ Helen Davis Chaitman*_____

                                         Helen Davis Chaitman
                                         45 Broadway
                                         New York, New York 10006
                                         Telephone: (212) 599-3322
                                         Facsimile: (212) 557-0295
                                         hchaitman@bplegal.com

                                         *Attorneys for Defendants Reckson Generation;
                                         Todd Rechler, individually, and in his capacity
                                         as Partner of Reckson Generation; Trust Fbo
                                         Todd Rechler; Glenn Rechler, individually,
                                         and in his capacity as Partner of Reckson
                                         Generation; Trust FBO Glenn Rechler U/W/O
                                         William Rechler; Mitchell Rechler,
                                         individually, and in his capacity as Partner of
                                         Reckson Generation; Trust FBO Mitchell
                                         Rechler; Scott Rechler, individually, and in his
                                         capacity as Partner of Reckson Generation;
                                         Gregg Rechler, individually, and in his
                                         capacity as Partner of Reckson Generation;
                                         Mark Rechler; individually, and in his
                                         capacity as Partner of Reckson Generation;
                                         Trust FBO Mark Rechler; and Donald
                                         Rechler, as Trustee for Trust FBO Mark
                                         Rechler, Trust FBO Glenn Rechler U/W/O
                                         William Rechler, Trust FBO Mitchell Rechler,
                                         and Trust FBO Todd Rechler*