**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, NY 11011
Telephone: 212-589-4200
Facsimile:  212-589-4201
David J. Sheehan

*Attorneys for Irving H. Picard, Trustee for the*
*substantively consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities LLC*
*and the estate of Bernard L. Madoff*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | NO. 08-01789 (SMB) |
| Plaintiff-Applicant, | SIPA LIQUIDATION |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | Adv. Pro. No. 09-1161 (SMB) |
| Plaintiff, | Civ. Pro. No. 15-7056 |
| v. | |
| FEDERICO CERETTI, ET AL. | |
| Defendants. | |

**TRUSTEE'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS**
**KINGATE GLOBAL FUND, LTD.'S AND KINGATE EURO FUND, LTD.'S MOTION**
**FOR LEAVE TO APPEAL FROM THE BANKRUPTCY COURT'S AUGUST 21, 2015**
**ORDER GRANTING IN PART AND DENYING IN PART THOSE DEFENDANTS'**
**MOTION TO DISMISS THE FOURTH AMENDED COMPLAINT**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................................1

LEGAL STANDARDS .........................................................................................................3

ARGUMENT ..........................................................................................................................5

I.     THE FUNDS' MOTION DOES NOT SATISFY THE STANDARDS
FOR OBTAINING INTERLOCUTORY REVIEW. ...............................................5

     A.     There are no controlling questions of law for this Court to
decide. ..........................................................................................................5

          1.     The Bankruptcy Court correctly applied *Kirschner*.........................6

          2.     The Bankruptcy Court correctly applied the *Actual
Knowledge Decision*. ....................................................................10

     B.     There is no substantial ground for difference of opinion as to
the Bankruptcy Court's rulings on imputation and actual
knowledge. ..................................................................................................13

     C.     Interlocutory review will not terminate the litigation. ...............................14

     D.     No extraordinary circumstances exist here. ................................................14

II.     THE SAME COURT THAT DECIDED AT THE TRIAL COURT
LEVEL A THRESHOLD ISSUE RAISED ON APPEAL CANNOT
RULE ON THE ISSUE AT THE APPELLATE LEVEL. ....................................16

CONCLUSION....................................................................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*In re Adelphia Commc'ns. Corp.*,
    333 B.R. 649 (S.D.N.Y. 2005)............................................................................13, 14

*In re Ames Dep't Stores, Inc.*,
    No. 01-42217, 2002 WL 511556 (S.D.N.Y. Apr. 3, 2002) .......................................5

*Aozora Bank Ltd. v. Sec. Investor Prot. Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*,
    480 B.R. 117 (S.D.N.Y. 2012)...............................................................................17

*Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Ams.*,
    426 F. Supp. 2d 125 (S.D.N.Y. 2005)......................................................................4

*In re Bernard L. Madoff Inv. Sec. LLC*,
    531 B.R. 345 (S.D.N.Y. 2015)...............................................................................17

*In re Bernard L. Madoff Inv. Sec. LLC*,
    No. 11-CV-7330, 2012 WL 2497270 (S.D.N.Y. June 27, 2012) ...........................17

*In re Bernard L. Madoff Inv. Sec. LLC*,
    No. 12 Civ. 6109, 2013 WL 5511027 (S.D.N.Y. Sept. 30, 2013) .........................17

*Bilello v. JPMorgan Chase Ret. Plan*,
    603 F. Supp. 2d 590 (S.D.N.Y. 2009)......................................................................5

*Eastwind Grp., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, P.A.*,
    47 Fed. App'x 83 (3d Cir. 2002)............................................................................16

*In re Facebook, Inc., IPO Secs. and Derivative Litig.*,
    986 F. Supp. 2d 524 (S.D.N.Y. 2014)................................................................4, 14

*Flor v. BOT Fin. Corp. (In re Flor)*,
    79 F.3d 281 (2d Cir. 1996).......................................................................................3

*Fox v. Picard*,
    848 F. Supp. 2d 469 (S.D.N.Y. 2012)....................................................................17

*In re Glannon*,
    245 B.R. 882 (D. Kan. 2002).................................................................................16

*Gottesman v. Gen. Motors Corp.*,
    268 F.2d 194 (2d Cir. 1959)......................................................................................4

*Gramercy Advisers, LLC v. Coe*,
    No. 13-CV-9069, 2014 WL 5847442 (S.D.N.Y. Nov. 12, 2014)............................4

# TABLE OF AUTHORITIES
## (continued)

Page(s)

*In re Sept. 11 Litig.*,
   Misc. No. 21-97(AKH), 2003 WL 22251325 (S.D.N.Y. Oct. 1, 2003) ...................................4

*Kirschner v. KPMG LLP*,
   15 N.Y.3d 446 (2010) ................................................................................... *passim*

*Koehler v. Bank of Bermuda LTD*,
   101 F.3d 863 (2d Cir. 1996)....................................................................................3

*In re Manhattan Inv. Fund Ltd.*,
   288 B.R. 52 (S.D.N.Y. 2002)...................................................................................4

*Mkt. St. Ltd. Partners v. Englander Capital Corp.*,
   92 CIV. 7434, 1993 WL 276062 (S.D.N.Y. July 21, 1993) ................................................4, 13

*Murray v. UBS Sec., LLC*,
   No. 12 Civ. 5914, 2014 WL 1316472 (S.D.N.Y. Apr. 1, 2014)................................................3

*In re Pan Am Corp.*,
   159 B.R. 396 (S.D.N.Y. 1993)................................................................................4

*Peshkin v. Levy-Church*,
   No. 11 Civ. 3313, 2012 WL 527426 (S.D.N.Y. Feb. 16, 2012) .............................................17

*Picard v. Ceretti* (*In re Bernard L. Madoff Inv. Sec. LLC*),
   Adv. Proc. No. 09-01161, 2015 WL 4734749 (Bankr. S.D.N.Y. Aug. 11,
   2015) ...................................................................................................... *passim*

*Picard v. Katz*,
   462 B.R. 447 (S.D.N.Y. 2011)................................................................................13

*Picard v. Katz*,
   466 B.R. 208 (S.D.N.Y. 2012)................................................................................15

*Picard v. Merkin* (*In re Bernard L. Madoff Inv. Sec. LLC*),
   515 B.R. 117 (Bankr. S.D.N.Y. 2014).........................................................................6, 9, 11

*Quinn v. Altria Grp., Inc.*,
   No. 07 Civ. 8783, 2008 WL 3518462 (S.D.N.Y. Aug. 1, 2008) .........................................4, 13

*In re S. African Apartheid Litig.*,
   No. 02 MDL 1499, 2009 WL 5177981 (S.D.N.Y. Dec. 31, 2009)............................................5

*Sec. Investor Prot. Corp. v. Jacqueline Green Rollover Account*,
   Nos. 12 Civ. 1039, 12 Civ. 1139, 2012 WL 3042986 (S.D.N.Y. July 25, 2012) ....................17

## TABLE OF AUTHORITIES
### (continued)

*Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
  No. 11-MC 285, 2011 WL 6057927 (S.D.N.Y. Dec. 6, 2011)................................................17

*Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
  516 B.R. 18 (S.D.N.Y. 2014)........................................................................................4, 12

*Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
  987 F. Supp. 2d 309 (S.D.N.Y. 2013)..............................................................................3

*Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
  12-MC-0115, 2013 WL 1609154, (S.D.N.Y. Apr. 15, 2013)........................................ *passim*

*In re Southold Dev. Corp.*,
  129 B.R. 18 (E.D.N.Y. 1991) .........................................................................................16

*In re T.R. Acquisition Corp.*,
  No. M47, Bankruptcy No. 95-B-41322, 1997 WL 51500 (S.D.N.Y. Feb. 6,
  1997) ............................................................................................................................3, 4

*United States v. Huron Consulting Grp., Inc.*,
  No. 09 Civ. 1800 (JSR), 2011 WL 2017322 (S.D.N.Y. May 16, 2011)........................4, 5, 14

**Statutes**

11 U.S.C. § 546(e) ..............................................................................................................6, 11

11 U.S.C. § 548(a)(1)(A) ......................................................................................................11

15 U.S.C. § 78aaa et seq. .......................................................................................................1

28 U.S.C. § 158(a) ................................................................................................................3

28 U.S.C. § 1292(b) ........................................................................................................4, 5, 14

**Rules**

Fed. R. Bankr. P. 2004...........................................................................................................2

Fed. R. Bankr. P. 7026...........................................................................................................3

Fed. R. Bankr. P. 7030...........................................................................................................3

Fed. R. Bankr. P. 7033...........................................................................................................3

Fed. R. Bankr. P. 7034...........................................................................................................3

Fed. R. Bankr. P. 7036...........................................................................................................3

**TABLE OF AUTHORITIES**
**(continued)**

<u>**Page(s)**</u>

Fed. R. Bankr. P. 8004.................................................................................................................3

Fed. R. Civ. P. 16.........................................................................................................................2

Irving H. Picard, as trustee ("Trustee") for the substantively consolidated liquidation of

the business of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities

Investor Protection Act, 15 U.S.C. § 78aaa et seq. ("SIPA"), and the estate of Bernard L. Madoff

("Madoff"), respectfully submits this Memorandum of Law in opposition to the motion (the

"Motion") filed by Defendants Kingate Global Fund, Ltd. and Kingate Euro Fund, Ltd. (together,

the "Funds") for leave to appeal from portions of the August 21, 2015 interlocutory order

("Order") of the United States Bankruptcy Court for the Southern District of New York

("Bankruptcy Court") granting in part and denying in part the Funds' motion to dismiss the

Trustee's Fourth Amended Complaint ("FAC").

In support of the Motion, the Funds filed a Memorandum of Law ("Mov. Br.") and the

Declaration of Robert S. Loigman attaching the Order, the Bankruptcy Court's August 11, 2015

Memorandum Decision Granting in Part and Denying in Part Defendant Kingate Global Fund,

Ltd.'s and Kingate Euro Fund, Ltd.'s Motions to Dismiss the Fourth Amended Complaint, and

the Trustee's FAC, as Exhibits A through C, respectively.

## **<u>INTRODUCTION</u>**

The Motion is predicated on the Funds' dissatisfaction with the following two rulings

made in the Bankruptcy Court's decision in *Picard v. Ceretti, (In re BLMIS*), Adv. Proc. No. 09-

01161, 2015 WL 4734749 (Bankr. S.D.N.Y. Aug. 11, 2015) (ECF No. 199) (the "*MTD*

*Decision*"): (1) the FAC pleads sufficient facts to impute to the Funds, at the pleading stage, the

acts and knowledge of the Non-Fund Defendants; and (2) the FAC pleads sufficient facts to

establish, at the pleading stage, that the Funds had actual knowledge that BLMIS was not

executing securities trades for their customer accounts.  Neither those rulings, nor the Funds'

disagreement with them, present the requisite "exceptional circumstances" that warrant a

departure from the final judgment rule and permit an interlocutory appeal.

The Motion fails to establish a single prerequisite for interlocutory review. First, the Funds do not claim the Bankruptcy Court's imputation and actual knowledge rulings are based on inapplicable legal principles; instead, the Funds merely challenge the Bankruptcy Court's application of those principles. But a challenge to the application of law to facts does not present a "pure" question of law necessary for interlocutory appeal. Second, even if there were a question of law for this Court to consider, there is no "substantial ground for difference of opinion" on any such question, *i.e.*, no substantial doubt that the Bankruptcy Court's rulings on imputation and actual knowledge were correct. The Bankruptcy Court closely followed the legal precedents that the Funds assert were overlooked or misapplied. The *MTD Decision* painstakingly analyzed the Trustee's relevant factual allegations on imputation and actual knowledge, properly considered them as true at the motion to dismiss stage and drew reasonable inferences favorable to the Trustee from them, and then found those allegations sufficient to state causes of action under governing law. Third, interlocutory review of the Order and the *MTD Decision* would only stall, rather than "materially advance," the ultimate termination of this proceeding. The Funds are required to answer the FAC on September 30, 2015, a Rule 16 conference is scheduled for October 28, 2015, and the parties are poised to begin discovery immediately thereafter.[1]

---

[1] Contrary to the Funds' assertion, the Trustee has not "had access to extensive discovery." Mov. Br. at 23. The Funds produced 436 documents in 2009 and 2010 in response to a subpoena issued pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure on February 27, 2009. Documents were produced by Non-Fund Defendant FIM Advisers LLP in 2010 and 2011 pursuant to a June 28, 2010 Order by the English High Court of Justice directing FIM Advisers LLP to produce documents located using search terms selected by counsel for the parties. The Trustee expects that the Funds and FIM Advisers LLP, as well as other parties and non-parties, including Carlo Grosso, Federico Ceretti, Kingate Management Limited, HSBC Bank Bermuda, and Citi Hedge Fund Services Limited, have voluminous additional documents relevant to this adversary proceeding. Moreover, the Trustee has not conducted a single deposition in this proceeding and has not engaged in any discovery under Bankruptcy Rules 7026, 7030, 7033, 7034, or 7036.

The myriad equitable factors cited by the Funds as exceptional circumstances are irrelevant to the requisite standards for interlocutory review and belied by the facts. Far from exceptional, the present procedural posture of this litigation is commonplace. District courts deny motions to dismiss daily, finding that a unique set of factual allegations suffices to state a cause of action for relief. If an interlocutory appeal were permitted from an order denying a motion to dismiss simply because the unsuccessful litigant was dissatisfied with how the district court applied the law to the plaintiff's properly pleaded allegations, then interlocutory appeals would become the norm rather than the exception.

For all of the reasons discussed in this Memorandum, the Motion should be denied.

## LEGAL STANDARDS

The Motion seeks this Court's leave to appeal from the Bankruptcy Court's Order pursuant to 28 U.S.C. § 158(a) and Federal Rule of Bankruptcy Procedure 8004. Consistent with the "basic tenet of federal law to delay appellate review until a final judgment has been entered,"[2] leave to appeal may be granted only in exceptional circumstances.[3] Interlocutory appeals are strongly disfavored because they "prolong judicial proceedings, add delay and expense to litigants, burden appellate courts, and present issues for decision on uncertain and incomplete records, tending to weaken the precedential value of judicial opinions."[4] Interlocutory appeals also are prone to "stimulate . . . more and greater pre-trial sparring apart

---

[2] *Murray v. UBS Sec., LLC,* No. 12 Civ. 5914, 2014 WL 1316472, at *3 (S.D.N.Y. Apr. 1, 2014) (citing *Koehler v. Bank of Bermuda LTD*, 101 F.3d 863, 865 (2d Cir. 1996)); *see also SIPC v. BLMIS*, 987 F. Supp. 2d 309, 311 (S.D.N.Y. 2013) (denying leave for interlocutory appeal because "certification in this instance is likely to result in the kind of piecemeal, interminable litigation that is the bane of those jurisdictions that foolishly lack a final judgment rule").

[3] *Flor v. BOT Fin. Corp. (In re Flor)*, 79 F.3d 281, 284 (2d Cir. 1996); *Murray*, 2014 WL 1316472, at *3; *In re T.R. Acquisition Corp.*, No. M47, Bankruptcy No. 95-B-41322, 1997 WL 51500, at *1 (S.D.N.Y. Feb. 6, 1997).

[4] *United States v. Huron Consulting Grp., Inc.*, No. 09 Civ. 1800, 2011 WL 2017322, at *1 (S.D.N.Y. May 16, 2011) (quoting *In re Sept. 11 Litig.*, Misc. No. 21-97, 2003 WL 22251325, at *1 (S.D.N.Y. Oct. 1, 2003)).

from the merits"[5] and allow a moving party to reargue issues that the lower court has already

addressed and rejected.[6]  Therefore, challenges to the sufficiency of a pleading generally are not

exceptional circumstances warranting interlocutory review,[7] and motions seeking such relief

should not be granted in circumstances where, as here, the movants simply disagree with the

lower court's application of the law.[8]

　　　When determining whether to grant leave to appeal from an interlocutory bankruptcy

order, courts generally apply the standards set forth in section 1292(b) of title 28.[9]  The Funds

must establish, therefore, that the Order "involves a controlling question of law as to which there

is substantial ground for difference of opinion and that an immediate appeal from the order may

materially advance the ultimate termination of the litigation."[10]  Even when each of the elements

---

[5] *Gottesman v. Gen. Motors Corp.*, 268 F.2d 194, 196 (2d Cir. 1959).

[6] *Gramercy Advisers, LLC v. Coe*, No. 13-CV-9069, 2014 WL 5847442, at *4 (S.D.N.Y. Nov. 12, 2014) (denying interlocutory appeal where "Defendants do not take issue with the Court's understanding of the law; Defendants simply disagree with the district court's *application* of well-established New York contract law"); *SIPC v. BLMIS*, 516 B.R. 18, 25 (S.D.N.Y. 2014) (denying an interlocutory appeal in the BLMIS liquidation because it was just an "attempt by one party or another in these complicated proceedings to seek interlocutory appeal of some ruling adverse to that particular party"); *Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Ams.*, 426 F. Supp. 2d 125, 129 (S.D.N.Y. 2005) ("A mere claim that the district court's ruling was incorrect does not demonstrate a substantial ground for difference of opinion" as required for the grant of an interlocutory appeal. (citation omitted)).

[7] *See In re Facebook, Inc., IPO Secs. and Derivative Litig.*, 986 F. Supp. 2d 524, 530 (S.D.N.Y. 2014) (explaining that challenges related to the sufficiency of pleadings are generally not appropriate subjects of interlocutory appeal); *In re Manhattan Inv. Fund Ltd.*, 288 B.R. 52, 56 (S.D.N.Y. 2002) (explaining that challenges to sufficiency of pleadings "are not generally the appropriate subjects of interlocutory review, as a reversal [on interlocutory appeal] at most could lead only to a remand for repleading, with possibilities of further interlocutory appeals thereafter" (citations omitted)).

[8] *See Quinn v. Altria Grp., Inc.*, No. 07 Civ. 8783, 2008 WL 3518462, at *3 (S.D.N.Y. Aug. 1, 2008) (denying a request for interlocutory appeal in part due to Defendants' arguments simply "represent[ing] disagreements with the Court about the impact of the Supreme Court's decision in [the case at issue]"); *see also Mkt. St. Ltd. Partners v. Englander Capital Corp.*, No. 92 CIV. 7434, 1993 WL 276062, at *2 (S.D.N.Y. July 21, 1993) (explaining that an interlocutory appeal to determine whether the court properly applied the law to the facts is inappropriate).

[9] *See, e.g., In re Pan Am Corp.*, 159 B.R. 396, 401 (S.D.N.Y. 1993) (explaining that "28 U.S.C. § 1292(b), which governs interlocutory appeals from the district courts to the courts of appeal, provides the standard for determining whether leave to appeal from an interlocutory bankruptcy order should be granted"); *T.R. Acquisition Corp.,* 1997 WL 51500, at *1 (same).

[10] 28 U.S.C. § 1292(b); *In re Ames Dep't Stores, Inc.*, No. 01-42217, 2002 WL 511556, at *2 (S.D.N.Y. Apr. 3, 2002).

under section 1292(b) is present, a district court, may, in its discretion, deny interlocutory appeal

from a bankruptcy court order.[11]

## ARGUMENT

### I.    THE FUNDS' MOTION DOES NOT SATISFY THE STANDARDS FOR OBTAINING INTERLOCUTORY REVIEW.

The Bankruptcy Court determined that the FAC plausibly alleged sufficient facts to

reasonably infer that: (i) the adverse interest exception to the well-settled law on imputation of

an agent's knowledge to its principal did not apply to the Non-Fund Defendants; and (ii) the

Funds had actual knowledge BLMIS traded no actual securities transactions for its customer

accounts under the reasoning in *SIPC v. BLMIS*, No. 12-MC-0115, 2013 WL 1609154,

(S.D.N.Y.  Apr. 15, 2013) ("*Actual Knowledge Decision*").[12]  The Funds mischaracterize those

rulings as "controlling questions of law" warranting interlocutory review of the Order.[13]

### A.    There are no controlling questions of law for this Court to decide.

The Funds argue that the Bankruptcy Court's imputation and actual knowledge rulings

conflict, respectively, with the governing authority set forth in *Kirschner v. KPMG LLP*, 15

N.Y.3d 446 (2010), and the district court's *Actual Knowledge Decision*.[14]  The Funds' attempt to

fabricate a conflict between the *MTD Decision* and i) *Kirschner*'s analysis of imputation, and ii)

---

[11] *Huron Consulting Grp., Inc.*, 2011 WL 2017322, at *1 (recognizing that a "district judge has unfettered discretion to deny certification of an order for interlocutory appeal even when a party has demonstrated that the criteria of 28 U.S.C. § 1292(b) are met" (citations and quotation marks omitted)); *see also Bilello v. JPMorgan Chase Ret. Plan*, 603 F. Supp. 2d 590, 593-95 (S.D.N.Y. 2009) (denying a motion to certify an opinion for interlocutory appeal because although the elements under section 1292(b) were all arguably present, the court determined that the grounds for difference of opinion was not *substantial*); *In re S. African Apartheid Litig.*, No. 02 MDL 1499, 2009 WL 5177981, at *2 (S.D.N.Y. Dec. 31, 2009) (same).

[12] *MTD Decision*, at *13-16.  The Funds refer to the *Actual Knowledge Decision* as "*Cohmad*." Mov. Br. at 2 n.2.

[13] Mov. Br. at 16.

[14] Mov. Br. at 17-18, 22.

the *Actual Knowledge Decision*'s analysis of section 546(e)'s safe harbor, is hollow and unsubstantiated by the *MTD Decision*.

       1.    <u>The Bankruptcy Court correctly applied *Kirschner*.</u>

The Bankruptcy Court rightly concluded that the FAC sufficiently pleaded imputation of the Non-Fund Defendants' knowledge to the Funds.[15]  The Funds contend the Bankruptcy Court was wrong because it "relied on its decision in *Merkin* and . . . focused on the Non-Fund Defendants' alleged misconduct instead of who was actually victimized by it, namely the Kingate Funds."[16]  This contention is without merit.  The Bankruptcy Court applied the black letter law of agency.[17]  The Bankruptcy Court then cited to its decision in *Picard v. Merkin*, which relied on, and extensively cited to, *Kirschner* as authoritative on imputation.[18]  The Funds agree that the principles of imputation discussed in *Kirschner* are instructive.[19]  But it appears the Funds believe their interpretation of *Merkin* and its application of the imputation doctrine under *Kirschner* is preferable to the Bankruptcy Court's application of its own reasoning in *Merkin* and its precedential effect.

Rehashing the argument made in their original motion to dismiss, the Funds reason that because the Bankruptcy Court did not apply the adverse interest exception to the Non-Fund Defendants, its ruling is inconsistent with *Kirschner*.[20]  *Kirschner* set forth the following principles defining the adverse interest exception as the "most narrow of exceptions":

---

[15] *MTD Decision*, at *16.

[16] Mov. Br. at 17.

[17] *MTD Decision*, at *15 (recognizing that "knowledge acquired by an agent while acting within the scope of his authority is imputed to the principal").

[18] *Picard v. Merkin* (*In re BLMIS*), 515 B.R. 117, 146-47 (Bankr. S.D.N.Y. 2014).

[19] Mov. Br. at 13-15.

[20] Mov. Br. at 13-14.  Although the Funds now complain that the Bankruptcy Court misapplied *Kirschner*, the Funds did not cite to *Kirschner* in their moving brief in support of their motion to dismiss the FAC.  Nor did the Funds
*…continued on next page*

6

- agency law imputes to the principal the agent's acts taken, and the agent's knowledge acquired, within the scope of the agent's authority,[21]

- for the adverse interest exception to defeat imputation, "the agent must have *totally abandoned* his principal's interests and be acting *entirely* for his own or another's purposes,"[22]

- the exception cannot be invoked solely because the agent has a conflict of interest or because the agent is not acting primarily for his principal,[23]

- when both the agent and the corporate principal benefit from the agent's fraud, the exception does not apply,[24] and

- when the agent's fraud benefits *only* the agent, it can be said that "the fraud is committed against a corporation rather than on its behalf."[25]

In its *MTD Decision* the Bankruptcy Court correctly applied each of the foregoing principles when imputing the Non-Fund Defendants' actual knowledge to the Funds,[26] and the Funds' recycled arguments to the contrary have no merit.

The Bankruptcy Court recognized that imputing an agent's fraudulent conduct to the principal turns on whether the principal enjoyed *any* benefit from the agent's conduct.[27]  The Bankruptcy Court found the FAC adequately pleaded that the Funds enjoyed "an aura of profitability that enable[d] [the Funds] to attract more investors," and that such "apparent

---

cogently present any of the principles of agency law governing the question of imputation in their moving brief. The Funds' one citation to *Kirschner* appears in their reply brief. *Compare* Def.'s Memo. in Support of Mot. to Dismiss, July 18, 2014, ECF No. 112, *with* Def.'s Reply Memo. in Further Support of Mot. to Dismiss, Nov. 25, 2014, ECF No. 147, at 18.

[21] 15 N.Y.3d at 465-66 (referring to imputation as "a fundamental principle" of the law of agency and corporations and recognizing that, because a corporation "must act solely through the instrumentality of [its] officers or other duly authorized agents," a corporation is "responsible for the acts of its authorized agents even if particular acts were unauthorized" (citations omitted)).

[22] *Id.* at 466 (emphasis in original).

[23] *Id.*

[24] *Id.*

[25] *Id.*

[26] *MTD Decision*, at *15-16.

[27] *Id.*

profitability . . . benefitted those shareholders who withdrew money from the Funds before

Madoff's fraud was discovered."[28]  The Bankruptcy Court concluded that this was "sufficient to

support the inference that the Funds benefitted from the actions of their agents even if the agents

were conflicted and also acted for their own benefit."[29]  The Bankruptcy Court's reliance on

those allegations was sound and dispositive, because *Kirschner* instructs that if the agent's

misconduct "enables the business to survive—to attract investors . . . and raise funds for

corporate purposes"—then the adverse interest exception does not apply.[30]

    *Kirschner* also explains that an agent commits fraud against its principal *only* when the

agent has totally abandoned his principal's interests and is acting entirely for his own or

another's purposes.  If those facts are not present, or if the agent's conduct "enable[d]" the

principal "to attract investors . . . and raise funds for corporate purposes," then the agent

committed a fraud *on behalf of* the corporate principal, not against it.[31]  The Bankruptcy Court

determined that the Non-Fund Defendants' conduct and the business relationship with BLMIS

benefitted both the Funds and the Non-Fund Defendants until the fraud was discovered.[32]

    The Funds contend that their "net loser" status and their ongoing liquidations *ipso facto*

mean the Funds could not have benefitted as a matter of law.[33]  The Funds' argument thus would

have the adverse interest exception turn on the principal's condition after discovery of the

agent's fraud.  *Kirschner*, as applied in *Merkin*, however, rejects such an outcome.  *Kirschner*

---

[28] *Id.,* at *16.

[29] *Id.*

[30] *Kirschner*, 15 N.Y.3d at 468.

[31] *Id.*

[32] *MTD Decision*, at *16.

[33] *See, e.g.*, Mov. Br. at 12 (stating "the Non-Fund Defendants' misconduct provided no benefit whatsoever to the Funds but instead victimized them"); *Id.* at 15 (stating the Funds "enjoyed no benefit (only great loss) by investing [with] BLMIS").

eliminates from the analysis any harm to the corporation resulting from discovery of the agent's fraud:

> [A]ny harm from the discovery of the fraud—rather than from the fraud itself—does not bear on whether the adverse interest exception applies.  The disclosure of corporate fraud nearly always injures the corporation.  If that harm could be taken into account, a corporation would be able to invoke the adverse interest exception and disclaim virtually every corporate fraud—even a fraud undertaken for the corporation's benefit—as soon as it was discovered and no longer helping the company.[34]

Likewise, *Kirschner* instructs that even when the principal is forced to file for bankruptcy, and the agent's fraud is found to have caused the principal's bankruptcy, it does not follow that the agent "totally abandoned" the principal's interests.[35]  That the Funds suffered a "loss" *after* discovery of Madoff's fraud that forced them into liquidation is thus irrelevant, because absent Madoff's arrest, the Funds and their shareholders would have continued to enjoy the benefits that the fraud provided.[36]

The Funds' arguments seek to turn what is an exception to the rule into a rule itself.  A corporate entity can only act through its principals, managers, and agents.[37]  Under the Funds' flawed analysis, a corporate entity would never be liable.  This is particularly true with respect to entities like the Funds that exist solely as investment vehicles.  Here, the interests of the principals, managers, and agents are perfectly aligned to profit from BLMIS.

---

[34] 15 N.Y.3d at 469.

[35] *Id.* at 468 ("[T]he mere fact that a corporation is forced to file for bankruptcy does not determine whether its agents' conduct was, at the time it was committed, adverse to the company.").  *Kirschner* recognized that if the exception applied "when the company received only short term benefits but suffered long term harm," the exception would become a "nearly impermeable rule barring imputation." *Id.* at 470.

[36] *MTD Decision*, at *16 n.11.

[37] *Kirschner*, 15 N.Y.3d at 468.

Lastly, the Funds suggest that "holding the Funds and their investors responsible for the knowledge of the managers who were stealing from them would be just the same as imputing Bernard Madoff's knowledge to investors who hired BLMIS to manage their money."[38]  That analogy is beyond all reason.  There can be no comparison between the relationships of the parties.  Investors with BLMIS were not shareholders of BLMIS; they were customers.  And the Trustee is not seeking to impute the knowledge of the Funds' shareholders, but that of the very entities and individuals with the authority to act, and that did act, on behalf of the Funds.  Furthermore, the Trustee represents an estate of customer property intended to relieve customers from the damage caused by Madoff's fraud.[39]

In sum, the Bankruptcy Court properly found sufficient allegations of benefit to the Funds from the Non-Fund Defendants' conduct to defeat application of the adverse interest exception at the pleading stage.  The Bankruptcy Court correctly interpreted and applied *Kirschner* to the letter.  Although the Funds suggest that the Bankruptcy Court's ruling is "inconsistent" with the principles set forth in *Kirschner*, it is, in fact, the Funds' arguments that flatly contradict *Kirschner*.

2.      The Bankruptcy Court correctly applied the *Actual Knowledge Decision*.

The *MTD Decision* did not materially depart from the *Actual Knowledge Decision*, as the Funds wrongly argue,[40] but strictly applied it.  The *Actual Knowledge Decision* makes clear that section 546(e) is not a *per se* safe harbor from avoidance of transfers; it is subject to the actual

---

[38] Mov. Br. at 3.

[39] The Funds claim that the "Trustee seeks to increase the Funds' losses by bringing this case . . . ."  Mov. Br. at 1. However, in truth, the Trustee is seeking to fulfill his statutory rights and fiduciary obligation to maximize recovery for the fund of customer property and to make, to the extent possible, distributions on allowed customer claims.

[40] Mov. Br. at 19.

knowledge test.[41]   To avoid transfers made by BLMIS outside of section 548(a)(1)(A), the

district court ruled that the "Trustee must show, at a minimum, that the transferee had actual

knowledge that there were no actual securities transactions being conducted."[42]   The *MTD*

*Decision* acknowledges the threshold under the *Actual Knowledge Decision* that the FAC had to

meet to survive the motion to dismiss, explaining that "'actual knowledge' implies a high level

of certainty and absence of any substantial doubt regarding the existence of a fact."[43]

   The Funds contend the facts addressed by the district court in the *Actual Knowledge*

*Decision* are not the same "types of facts" alleged in the FAC.[44]   Indeed, the facts alleged in the

FAC against the Funds and the Non-Fund Defendants are not only different from those discussed

in the *Actual Knowledge Decision*, they are also different from every other avoidance and

recovery action the Trustee has commenced against defendants that allegedly had actual

knowledge of fraud at BLMIS.   Although there may be some facts common to more than one

defendant that allegedly acted with actual knowledge, every adversary proceeding stands on its

own facts.   If a difference in facts between cases were enough, then almost every decision of the

Bankruptcy Court would be ripe for interlocutory appeal, making them the norm, rather than a

rarely granted, extraordinary step.

   The allegations discussed in the *Actual Knowledge Decision* simply presented *one* set of

facts that met the test for stating a claim for actual knowledge.   The Funds are incorrect in

arguing, therefore, that "unique access to BLMIS," or "access to Madoff's true customer

---

[41] *Actual Knowledge Decision*, 2013 WL 1609154, at *1.   The Trustee does not concede that actual knowledge is required to overcome section 546(e) but acknowledges that it is the standard the District Court has instructed the Bankruptcy Court to apply.

[42] *Actual Knowledge Decision*, 2013 WL 1609154, at *4.

[43] *MTD Decision*, at *13 (citing *Merkin*, 515 B.R. at 139-40).

[44] Mov. Br. at 19-20.

information or some similar basis for knowing that BLMIS did not conduct real transactions,"[45] are the *only* types of facts that would satisfy the actual knowledge test. The district court recognized that each case would have distinctive facts and left it to the Bankruptcy Court to apply the *Actual Knowledge Decision* in each of those distinct cases.[46] The Bankruptcy Court's analysis of the facts in the FAC comports with that mandate.

In its *MTD Decision*, the Bankruptcy Court properly drew the reasonable inference the Funds had actual knowledge based on "[t]he totality of the allegations in the FAC."[47] The Funds again disagree. They make the unsupported claim that the Trustee does not make a single allegation regarding the Funds' actual knowledge is demonstrably false.[48] The FAC is replete with such allegations, containing no less than 45 paragraphs that specifically allege the means by which the Funds obtained their knowledge and what the Funds knew.[49] The Funds also contend the FAC alleges they "should have been aware" or "should have done more to investigate various impossible trades."[50] By meticulously analyzing the allegations in the FAC, however, the Bankruptcy Court determined the separate allegations, when taken together, set forth sufficient facts to reasonably infer that the Funds and the Non-Fund Defendants—sophisticated

---

[45] *Id*. at 4.

[46] *Actual Knowledge Decision*, 2013 WL 1609154, at *7.

[47] *MTD Decision*, at *15.

[48] Mov. Br. at 2, 7.

[49] *See* FAC ¶¶ 6, 7, 42, 83, 96, 132, 141, 146-47, 153-55, 161-168, 170, 174, 177, 182, 184-85, 188, 190-91, 193, 198, 205-06, 208, 210, 212-14, 216, 218, 222, 231-32, 235-36.

[50] Mov. Br. at 2, 4, 20. Here, the Funds allude to the inquiry notice standard, which the district court had previously ruled is inapplicable in a SIPA proceeding. *Actual Knowledge Decision*, 2013 WL 1609154, at *4 n.2; *SIPC v. BLMIS*, 516 B.R. at 21-22; *Picard v. Katz*, 462 B.R. 447, 455 (S.D.N.Y. 2011). The Trustee has not yet had the opportunity to appeal from a final order imposing on the Trustee, under these precedents, the heightened standard and pleading burden, but preserves his rights.

and experienced securities-industry professionals—knew the reported securities transactions in the customer statements and trade confirmations did not occur.[51]

The Funds' disagreement with the Bankruptcy Court's analysis does not satisfy the standard for granting an interlocutory appeal.[52]

### B. There is no substantial ground for difference of opinion as to the Bankruptcy Court's rulings on imputation and actual knowledge.

It is axiomatic that because there are no controlling issues of law involved in this Motion, there can be no substantial ground for a difference of opinion concerning them. A "controlling question of law" must be a "pure" legal question that the court could decide "quickly and cleanly without having to study the record."[53] To determine that the adverse interest exception and the actual knowledge standards were met, the Bankruptcy Court made a thorough review and assessment of the totality of the factual allegations in the FAC, and applying the requisite standard of review on a motion to dismiss, properly found them sufficient.[54] If granted, the Funds' challenge to that ruling would require an extensive review of all of those allegations and the entire record below. Such an outcome is antithetical to the limited purpose of interlocutory review, and is improper at the motion to dismiss stage when the allegations must be interpreted in the light most favorable to the plaintiff.[55]

---

[51] *MTD Decision*, at *1-9, 15.

[52] *See Quinn*, 2008 WL 3518462, at *3; *see also Mkt. St. Ltd. Partners*, 1993 WL 276062, at *2.

[53] *In re Adelphia Commc'ns. Corp.*, 333 B.R. 649, 658 (S.D.N.Y. 2005) (citation omitted).

[54] *MTD Decision*, at *1-10.

[55] *See In re Facebook, Inc.*, 986 F. Supp. 2d at 530.

### C.    Interlocutory review will not terminate the litigation.

The Funds' argument that reversal on appeal will bring a complete resolution to this litigation is presumptively incorrect.[56]  This argument ignores that a remand would be required on the issue of willful blindness, which the Bankruptcy Court did not reach in light of its determination concerning actual knowledge.[57]  Instead of conserving the Court's and the parties' resources, an appeal would require an extensive review of the record and result in delay and added expense to the parties.[58]

### D.    No extraordinary circumstances exist here.

Apart from failing to meet the applicable statutory standards under section 1292(b), the Funds put forward a conflux of equitable considerations—bordering on the dramatic, irrelevant, and false—as to why interlocutory review nonetheless should be granted.

The first is the canard that this adversary proceeding is preventing the Funds from winding up their affairs.[59]  It is a matter of public record that the Funds have initiated litigation in Bermuda against almost all of the Non-Fund Defendants and other defendants common to this litigation.[60]  The matter has been pending for approximately as long as this adversary proceeding, and until concluded, the Funds will not complete the winding-up of their affairs.

---

[56] Mov. Br. at 18, 22.

[57] *MTD Decision*, at 16.

[58] *Huron Consulting Grp., Inc.*, 2011 WL 2017322, at *1 (citation omitted); *In re Adelphia Commc'ns. Corp.*, 333 B.R. at 658, 662-63.

[59] Mov. Br. at 1-2.

[60] The litigation is in the Supreme Court of Bermuda, No. 2010-454,  captioned as *Kingate Global Fund Limited (in Liquidation) and Kingate Euro Fund Limited (in Liquidation), Plaintiffs, v. Kingate Management Limited, FIM Limited, FIM Advisers LLP, First Peninsula Trustees Limited (as Trustee of the Ashby Trust), Port of Hercules Trustees Limited (as Trustee of the El Prela Trust), Ashby Holdings Services Limited, El Prela Group Holding Services Limited, Mr. Carlo Grosso, Mr. Federico Ceretti, Ashby Investment Services Limited, El Prela Trading Investments Limited, Alpine Trustees Limited, Defendants*,  Civil Jurisdiction No. 454-2010 (Supreme Court of Bermuda) (Commercial Division).

The second is the canard that this adversary proceeding is preventing the Funds from making distributions to their "innocent investors."[61] The Funds are in liquidation and have no money to distribute. Significantly, still left to be determined are the number of investors, their identities, which of them have been fully satisfied from their redemptions before discovery of the fraud, which have not, and whether the Funds' investors included defendants in this or any other fraudulent transfer action in the Bankruptcy Court that may have had knowledge of, or were willfully blind to, the fraud.

Third is the canard that all the Funds' investors "depend[] in large part on the Kingate Funds' ability to recover the net unpaid sums invested with BLMIS."[62] The Funds are seeking to recover over $300 million in the Bermuda action they commenced. Some of the Funds' investors may also have recourse to the Madoff Victim Fund, which has approximately $4 billion in assets that eventually will be distributed to eligible claimants. Also a matter of public record is the class action commenced by investors in the Funds seeking damages, which the Second Circuit remanded to this Court.[63]

Fourth is the canard that the Funds will be prejudiced by having to litigate this action to trial, incurring expenses that could be used to compensate their investors.[64] The law does not recognize such circumstances as prejudice,[65] because those circumstances attend every entity that is in liquidation, receivership, or bankruptcy and is a party-defendant in litigation. Also, money on deposit at HSBC in Bermuda, which is subject to the Trustee's claims in this litigation, is

---

[61] Mov. Br. at 2.

[62] Mov. Br. at 6-7.

[63] *See In re Kingate Mgmt. Ltd. Litig.*, No. 09-CV-5386 (S.D.N.Y. May 20, 2015) (ECF No. 178).

[64] Mov. Br. at 23.

[65] *See Picard v. Katz*, 466 B.R. 208, 210-11 (S.D.N.Y. 2012).

being reduced over time to pay the Funds' fees and expenses, including attorneys' fees, with the

Trustee's consent.  The Funds' expenses are not coming out of their pockets.

## II.  THE SAME COURT THAT DECIDED AT THE TRIAL COURT LEVEL A THRESHOLD ISSUE RAISED ON APPEAL CANNOT RULE ON THE ISSUE AT THE APPELLATE LEVEL.

With their Motion, the Funds also filed a Civil Cover Sheet and a Statement of

Relatedness to the *Actual Knowledge Decision* and specifically directed the appeal to the

Honorable Jed S. Rakoff, U.S.D.J.[66]  The proceedings that took place in *SIPC v. BLMIS,* No. 12-

MC-0115 (the "Madoff District Court Proceeding") were the result of various motions to

withdraw the reference granted and consolidated by Judge Rakoff.  When a district court

withdraws the reference, a district court acts under its original jurisdiction.[67]  Following the

disposition of the issues on which the reference was withdrawn, Judge Rakoff referred the cases

back to the Bankruptcy Court for further disposition.[68]

To preserve his rights, the Trustee notes that an assignment of this interlocutory appeal to

Judge Rakoff, as requested by the Funds,[69] would be inappropriate because Judge Rakoff

presided over the Madoff District Court Proceeding and issued the *Actual Knowledge Decision*

in his original jurisdiction.  Judge Rakoff, therefore, cannot now sit in appellate jurisdiction over

an appeal from the Order and *MTD Decision* predicated on the *Actual Knowledge Decision*.[70]

---

[66] Sept. 9, 2015, ECF No. 206.

[67] *See, e.g., Eastwind Grp., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, P.A.*, 47 Fed. App'x 83, 84 (3d Cir. 2002).

[68] *Actual Knowledge Decision*, 2013 WL 1609154, at *7.

[69] Sept. 9, 2015, ECF No. 206.

[70] *See In re Southold Dev. Corp.*, 129 B.R. 18, 21 (E.D.N.Y. 1991) (holding that when the district court exercises its appellate jurisdiction, it appears untenable for the district court to "withdraw the reference and act pursuant to both its original and appellate jurisdiction"); *see also In re Glannon*, 245 B.R. 882, 891-92 (D. Kan. 2002) (finding that because the court was sitting in appellate jurisdiction rather than original jurisdiction, case must be randomly reassigned to another district judge for purposes of presiding over trial in original jurisdiction).

All other appeals to date from orders of the Bankruptcy Court in the BLMIS liquidation have been randomly assigned to judges of this Court.[71]  There is no basis to depart from this practice here, particularly when the instant appeal invokes this Court's appellate jurisdiction whereas the earlier, related case was an exercise of this Court's original jurisdiction.

## CONCLUSION

For the foregoing reasons, the Motion must be denied.

Dated:    September 23, 2015          Respectfully submitted,
          New York, New York

                                      BAKER & HOSTETLER LLP

                                      s/ David J. Sheehan
                                      David J. Sheehan
                                      Email: dsheehan@bakerlaw.com
                                      Geraldine E. Ponto
                                      Email: gponto@bakerlaw.com
                                      Anthony M. Gruppuso
                                      Email: agruppuso@bakerlaw.com
                                      Michelle R. Usitalo
                                      Email: musitalo@bakerlaw.com
                                      George Klidonas
                                      Email: gklidonas@bakerlaw.com
                                      45 Rockefeller Plaza
                                      New York, NY 10111
                                      Telephone: (212) 589-4200
                                      Facsimile: (212) 589-4201

                                      Attorneys for Irving H. Picard, Trustee for the
                                      substantively consolidated SIPA Liquidation of
                                      Bernard L. Madoff Investment Securities LLC and
                                      the estate of Bernard L. Madoff

---

[71] See In re BLMIS, No. 1-15-cv-01151 (S.D.N.Y. 2015) (Engelmayer, J.); In re BLMIS, 531 B.R. 345 (S.D.N.Y. 2015) (Koeltl, J.); In re BLMIS, No. 12 Civ. 6109, 2013 WL 5511027 (S.D.N.Y. Sept. 30, 2013) (Sullivan, J.); Fox v. Picard, 848 F. Supp. 2d 469 (S.D.N.Y. 2012) (Koeltl, J.); Peshkin v. Levy-Church, No. 11 Civ. 3313, 2012 WL 527426 (S.D.N.Y. Feb. 16, 2012) (Batts, J.); Aozora Bank Ltd. v. SIPC (In re BLMIS), 480 B.R. 117 (S.D.N.Y. 2012) (Cote, J.); SIPC. v. Jacqueline Green Rollover Account, Nos. 12 Civ. 1039, 12 Civ. 1139, 2012 WL 3042986 (S.D.N.Y. July 25, 2012) (Cote, J.); In re BLMIS, No. 11-CV-7330, 2012 WL 2497270 (S.D.N.Y. June 27, 2012) (Daniels, J.); SIPC v. BLMIS, No. 11-MC 285, 2011 WL 6057927 (S.D.N.Y. Dec. 6, 2011) (Patterson, J.).