PROSKAUER ROSE LLP
Eleven Times Square
New York, New York 10036
Telephone: 212-969-3000
Facsimile: 212-969-2900
Gregg M. Mashberg (GMM4022)
gmashberg@proskauer.com
Richard L. Spinogatti (RLS1503)
rspinogatti@proskauer.com

*Attorneys for Defendant*
*Lion Global Investors Limited*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>    Plaintiff-Applicant,<br>  v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br>    Defendant. | Adv. Pro. No. 08-01789 (SMB)<br><br>SIPA Liquidation<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF<br><br>    Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC and the estate of Bernard L. Madoff,<br><br>    Plaintiff,<br>  v.<br><br>LION GLOBAL INVESTORS LIMITED,<br><br>    Defendant. | Adv. Pro. No. 11-02540 (SMB) |

**DEFENDANT LION GLOBAL INVESTORS LIMITED'S SUPPLEMENTAL REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS BASED ON EXTRATERRITORIALITY AND IN OPPOSITION TO THE TRUSTEE'S MOTION TO AMEND**

This supplemental reply memorandum is submitted by Defendant Lion Global Investors Limited ("LGI") in response to the Trustee's Supplemental Memorandum.[1] This memorandum supplements the Reply Consolidated Supplemental Memorandum[2] in addressing the Trustee's Proffered Allegations[3] as to LGI.

In *S.I.P.C. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*, 513 B.R. 222, 232 n.4 (S.D.N.Y. 2014) (Rakoff, J.) (the "*Extraterritoriality Decision*"), the District Court explained that "it is the Trustee's obligation to allege 'facts giving rise to the plausible inference that' the transfer occurred 'within the United States,'" quoting *Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60, 69 (2d Cir. 2012). The District Court then held, "[h]ere, to the extent that the Trustee's complaints allege that both the transferor and the transferee reside outside the United States, there is no plausible inference that the transfer occurred domestically," and directed that "unless the Trustee can put forth specific facts suggesting a domestic transfer, his recovery actions seeking foreign transfers should be dismissed." *Id.*

This proceeding must be dismissed pursuant to Judge Rakoff's ruling. The Trustee has alleged that LGI "is a Singapore public limited company operating as a manager of investment funds and maintaining a place of business at One George Street, #08-01, Singapore 049145" (Complaint, ¶ 22), and that Fairfield Sentry Limited ("Fairfield") "is currently in liquidation in the British Virgin Islands ('BVI')" and was "a BVI company" (Complaint, ¶ 2).[4] Fairfield is alleged to have made subsequent transfers, which are the subject of this proceeding, to LGI of $50,583,443 on July 15, 2005. (Complaint, ¶ 41 and Exhibit D) There are no allegations in the

---

[1] Trustee's Supplemental Memorandum of Law in Opposition to Lion Global Investors Limited's Motion to Dismiss Based on Extraterritoriality and in Further Support of Trustee's Motion for Leave to Amend Complaints, hereinafter referenced as "Tr. Supp. Mem., p. ___."
[2] Reply Consolidated Supplemental Memorandum of Law in Support of Transferee Defendants' Motion to Dismiss Based on Extraterritoriality, hereinafter "Reply Consolidated Supplemental Memorandum."
[3] Trustee's Proffered Allegations Pertaining to the Extraterritoriality Issue as to Lion Global Investors Limited, hereinafter referenced as "PA, ¶ ___."
[4] *See also*, Consolidated Supplemental Memorandum of Law in Support of the Transferee Defendants' Motion to Dismiss Based on Extraterritoriality, Appendix A at 22.

1

pending complaint even suggesting a domestic transfer. Indeed, the Trustee does *not* argue that his pending complaint against LGI meets the pleading standard for extraterritoriality articulated by the District Court. Accordingly, it must be dismissed.

For the reasons set forth below and in the Reply Consolidated Supplemental Memorandum, the Trustee's Proffered Allegations cannot cure the deficiencies in his current pleading. Any amendment that would assert the Proffered Allegations would be futile and the Trustee's motion to amend for that purpose must be denied and the proceeding dismissed with prejudice.

The District Court ruled in the *Extraterritoriality Decision* that, "under *Morrison*, the transaction being regulated by Section 550(a)(2) is the transfer of property to a subsequent transferee, not the relationship of that property to a perhaps-distant debtor" and "[t]o determine whether the transfers at issue in this consolidated proceeding occurred extraterritorially, 'the court considers the location of the *transfers* as well as the component events of *those transactions*.'" *Id.* at 227, *quoting In re Maxwell Commc'n Corp.*, ("Maxwell I"), 186 B.R. 807, 817 (S.D.N.Y. 1995) (emphasis added). Not one of the Proffered Allegations against LGI addresses either the location of the subsequent transfers or the component events of *those* transfers.

Eschewing Judge Rakoff's governing analysis, the Trustee instead makes two conclusory and irrelevant assertions: (1) an alleged broader relationship with Fairfield was centered in the United States; and (2) Fairfield maintained its principal place of business in the United States.[5] The first assertion, on its face, is meaningless as to the location of the alleged subsequent transfers or the component events of those transactions. Indeed, the Trustee makes no attempt to define or even surmise how any specific aspect of the alleged broader relationship between

---

[5] The second assertion, which is common to many of these proceedings, is addressed in the Reply Consolidated Supplemental Memorandum.

2

Fairfield and LGI (or, more accurately, unspecified related entities), demonstrates or even tends to show that the actual subsequent transfers occurred in the United States

### THE TRUSTEE'S PROFFERED ALLEGATIONS CONCERNING THE RELATIONSHIP BETWEEN LGI AND FAIRFIELD PROVIDE NEITHER THE LOCATION OF THE SUBSEQUENT TRANSFERS NOR THEIR COMPONENT EVENTS

The Proffered Allegations made to support the Trustee's assertion that the relationship between LGI and Fairfield was centered in the United States concern (1) due diligence by "Lion" (which could be either Lion Capital Management or non-party Straits Lion Assets Management (*see* PA, ¶¶ 1, 5 and 7)) in connection with a joint venture (PA, ¶¶ 11-15); (2) "Lion's" knowledge that Fairfield would invest with BLMIS (PA, ¶¶ 16-17); (3) choice of law and forum consent clauses in a subscription agreement (PA, ¶¶ 18-19); and (4) a choice of law clause in a letter of understanding (PA, ¶¶ 20-21).[6] These Proffered Allegations contain no information about the alleged subsequent transfers to LGI in July 2015 or the component events of those transactions. Moreover, the Proffered Allegations, which are confused, imprecise and ambiguous, do not support the Trustee's conclusory (and irrelevant) assertion that LGI's relationship with Fairfield was centered in the United States.

**(1)** Oblivious to the controlling issue of where the alleged transfers actually took place, the Trustee alleges that "Lion" entered into a joint venture with "FGG, a *de facto* partnership" (PA, ¶ 4) in September 2003 (two years before the alleged subsequent transfers), but does not identify the specific "Lion" or FGG entities that were the joint venture co-parties or the national residences of such entities. *See* PA, ¶¶ 11-15. Similarly, the Trustee alleges that the due

---

[6] The Trustee also alleges that correspondent bank accounts were used in connection with transfers between LGI and Fairfield (PA, ¶¶ 22-24). The Trustee does not allege, however, that LGI maintained a bank account in the United States and used such an account in connection with the subsequent transfers. Moreover, the District Court found that the use of correspondent bank accounts to process dollar-denominated transfers was not sufficient to make the transfers domestic. *Extraterritoriality Decision*, 513 B.R. at 228, n.1.

3

diligence meetings and training sessions allegedly attended by "Lion" employees were "in connection with the joint venture and "Lion's" investments," but he does not allege that these activities were in connection with the alleged subsequent transfers. Nor does he even identify the actual investments or which entity made them in making his conclusory and otherwise irrelevant assertion that "Lion's investments" were a topic or a focus of the alleged due diligence.

Under any circumstances, the notion that the alleged joint venture between an unspecified "Lion" entity and an unnamed "FGG" entity supports the conclusion that the alleged broader relationship between the actual parties to this proceeding – LGI and Fairfield – was "centered in the United States," is belied by the Trustee's Proffered Allegation that "[t]he joint venture served as a hedge fund management and distribution platform *in Asia* for FGG funds, including Fairfield Sentry." PA, ¶11 (emphasis added).

In sum, the Trustee's belabored discussion of various activities of various "Lion" and "FGG" entities, even if treated as true for the purposes of the motion, is ultimately a distraction and does nothing to present a "plausible inference that the transfers took place domestically."

**(2)** With respect to the Trustee's proffered allegations concerning choice of law provisions (P.A., ¶¶ 19-21), this allegation not only fails to overcome the non-domestic nature of the redemptions pled by the Trustee (*supra*, p. 1), it is untenable as a matter of law. In *Fairfield Sentry Limited (in Liquidation) v. Migani and others*, 2014 UKPC 9, the Privy Council held that the subject of this proceeding the – subsequent transfers – *depend wholly on the construction of the Articles [of Association of the Fairfield Fund], which is governed by the law of the British Virgin Islands.*" (Emphasis added.) The Privy Council rejected the relevance of New York law.

**(3)** The Trustee has also argued that LGI's assertion that Bankruptcy Code Section 546(e) applies to the initial transfers from BLMIS to Fairfield is inconsistent with and should

4

preclude LGI from arguing that section 550(a) should not be applied extraterritorially. (Tr. Supp. Mem. at p. 5) The Trustee cites no authority for this proposition and there is none. All such alleged conduct occurred after the transfers that the Trustee seeks to recover and cannot possibly create any inference concerning the location of those transfers. In any event, as shown in the Reply Consolidated Supplemental Memorandum, there is no bar to raising inconsistent defenses, even assuming that such defenses were inconsistent. LGI has argued that Section 546(e) applies to the unquestionably domestic *initial* transfers between BLMIS and Fairfield, barring the Trustee's avoidance claims except as asserted under Section 548(a)(1)(A). Here, by contrast, the issue is whether the Trustee is seeking to apply section 550(a) extraterritorially to recover alleged *subsequent* transfers from Fairfield to LGI – transfers that neither the complaint nor the Proffered Allegations plausibly allege as having occurred domestically.

## CONCLUSION

The complaint should be dismissed and leave to replead should be denied, with prejudice

Dated: New York, New York
September 30, 2015

Respectfully submitted,

PROSKAUER ROSE LLP
By: /s/ Gregg M. Mashberg
  Gregg M. Mashberg (GMM4022)
  Richard L. Spinogatti (RLS1503)
Eleven Times Square
New York, New York 10036
Telephone: 212-969-3000
Facsimile: 212-969-2900
gmashberg@proskauer.com
rspinogatti@proskauer.com

*Attorneys for Defendant
Lion Global Investors Limited*