**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
Susheel Kirpalani
Robert S. Loigman
Rex Lee
Lindsay M. Weber
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: (212) 849-7000
Telecopier: (212) 849-7100

*Counsel to Joint Liquidators of Kingate Global Fund Ltd. and Kingate Euro Fund Ltd.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>        Plaintiff-Applicant,<br><br>    v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>        Defendant. | No. 08-01789 (SMB)<br><br><br>SIPA LIQUIDATION<br><br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>        Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>        Plaintiff,<br><br>    v.<br><br>FEDERICO CERETTI, *et al.*<br><br>        Defendants. | Adv. Pro. No. 09-1161 (SMB)<br><br>Civ. Pro. No. 15-7086 |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION FOR LEAVE TO APPEAL THE AUGUST 21, 2015 ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS KINGATE GLOBAL FUND LTD. AND KINGATE EURO FUND LTD.'S MOTION TO DISMISS THE FOURTH AMENDED COMPLAINT**

Pursuant to Rule 8013 of the Federal Rules of Bankruptcy Procedure, the Joint Liquidators for defendants Kingate Global Fund Limited ("Kingate Global") and Kingate Euro Fund Limited ("Kingate Euro" and, together with Kingate Global, the "Kingate Funds" or "Funds") respectfully submit this memorandum of law in further support of their Motion for leave to appeal portions of the August 21, 2015 Order (the "Order")[1] of the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") denying in certain respects the Kingate Funds' motion to dismiss claims brought by plaintiff Irving Picard, the Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC (the "Trustee").

## ARGUMENT

In their opening papers, the Kingate Funds demonstrated that leave to appeal the Order should be granted because the Bankruptcy Court materially departed from *Kirschner* and *Cohmad*, as well as other established authority, in denying the Funds' motion to dismiss. In particular, the Funds showed that the Bankruptcy Court incorrectly concluded as a matter of law that the Trustee's allegations were sufficient to (i) impute the Non-Fund Defendants' knowledge, if any, to the Funds and (ii) plead the Non-Fund Defendants' actual knowledge that BLMIS did not trade securities and thus avoid the "safe harbor" under section 546(e) of the Bankruptcy Code. In opposing the Funds' motion for leave to appeal, the Trustee does not respond to the crux of the Funds' arguments. Instead, he relies on a host of mistaken or misleading assertions. The Funds submit this brief solely to address the most glaring of these.

*First*, the Kingate Funds showed that extraordinary circumstances justify an appeal of the Order. For example, as a result of Madoff's fraud, the Funds are in court-supervised liquidation, and the pendency of this case not only will prevent them from completely winding up their

---

[1] The Order incorporates the Bankruptcy Court's memorandum decision of August 11, 2015 (the "Decision"), which sets forth the Bankruptcy Court's reasoning.

1

affairs and making distributions to their innocent investors; it will also be a cash drain on the liquidating estates. *See* Mot. § III. In response, the Trustee asserts that the "Funds' expenses are not coming out of their pockets." Opp. 16. That assertion is irresponsible. The supposed basis of the Trustee's statement is that the Funds' attorneys' fees are being paid out of an account at HSBC in Bermuda, an account that the Trustee previously sought to freeze in furtherance of his claims in this case. *See id.* at 15-16. That does not change the fact that the money in those accounts belongs to the Kingate Funds, for the benefit of their investors and creditors. The reality is plain: The Funds are in liquidation, are paying for their defense of the Trustee's claims, and, by doing so, have less to distribute to their innocent investors. The Trustee's suggestion that this lawsuit comes at no charge to the Funds is flat out false.

*Second*, the Kingate Funds showed that a reversal of the Order would immediately result in the dismissal of all the Trustee's claims (in the case of imputation) or all but two of them (in the case of actual knowledge). *See* Mot. §§ I.B. & II.B. Without explanation, the Trustee contends that a reversal of any portion of the Order would not materially affect the litigation because "a remand would be required on the issue of willful blindness." Opp. 14. The Trustee's argument is simply wrong. While the Trustee contends that the "FAC is replete with … allegations [regarding] the means by which the Funds obtained their knowledge and what the Funds knew" (*id.* at 12 & 12 n.49), not a single one of the allegations that he cites in support of this argument actually concerns the *Funds*' knowledge; rather, each of these allegations concerns knowledge on the part of the *Non-Fund Defendants*. A reversal of the Order on the issue of imputation will result in dismissal of all the Trustee's claims against the Funds because each of

2

those claims is predicated entirely on the Non-Fund Defendants' purported wrongdoing.[2] Moreover, even if the Order were sustained as to imputation, a reversal of the section 546(e) actual knowledge holding would expedite this litigation because only two claims—actual fraudulent transfer (Count II) and equitable subordination (Count XI)—are, according to the Trustee, subject to willful blindness review. All other claims would immediately fail if the actual knowledge holding were reversed.

*Third*, the Kingate Funds showed that the actual knowledge holding should be reversed because the Bankruptcy Court inferred actual knowledge from allegations that, unlike in *Cohmad*, concerned only what the Non-Fund Defendants may have failed to do. In opposition, the Trustee misconstrues the Funds as asserting that *Cohmad* reflected "the *only* types of facts that would satisfy the actual knowledge test." Opp. 12 (emphasis in original). That is misleading. The Funds did not suggest that allegations of actual knowledge must be exactly the same as those in *Cohmad*. Rather, the differences between the allegations in *Cohmad* and this case are stark and instructive. In *Cohmad*, there were specific allegations concerning what the Cohmad defendants knew and how they understood that BLMIS was not trading securities; for example, they had a database showing both the actual balances and imaginary BLMIS-manufactured balances in their clients' accounts. Here, by contrast, the Trustee's allegations

---

[2] As the Funds explained, if the managers were aware of Madoff's fraud, then their conduct in misleading the Funds—to obtain fees *from the Funds themselves*—harmed the Funds; it did not benefit the Funds at all. As a result, the adverse interest exception to imputation should apply. The Trustee has no real response; he asserts only that the managers' misconduct supposedly benefitted the Funds because it provided them with "'an aura of profitability that enable[d] [the Funds] to attract more investors'." Opp. 7 (quoting the Decision, *Picard v. Ceretti*, (*In re BLMIS*), Adv. Proc. No. 09-01161, 2015 WL 4734749, at *16 (Bankr. S.D.N.Y. Aug. 11, 2015)). But the Trustee is at a loss to explain how having more investors actually provided a benefit to the Funds. In fact, as the Funds showed, and the Trustee has not contradicted, if the Trustee's allegations are true, then having more investors only allowed the managers to loot even more money from the Funds. *See* Mot. § I.A.

3

concern only the circumstances that the Non-Fund Defendants should have investigated. *Cohmad* requires the former to sustain allegations of actual knowledge at the pleading stage. If *Cohmad* is not strictly followed, then even those investors who believed their transfers were completed pursuant to securities contracts can be deprived of the protections afforded by section 546(e)'s safe harbor.

*Fourth*, the Trustee's assertion that Judge Rakoff cannot hear this appeal is backwards. *See* Opp. 16. Judge Rakoff issued the *Cohmad* decision, which is law of this case, in a proceeding to which the Trustee and Kingate Funds were parties. Judge Rakoff then remanded the case for further proceedings. It makes perfect sense for Judge Rakoff to address the Motion and, if granted, the appeal, and the Trustee cannot provide any support or explanation for why Judge Rakoff would be ill equipped to determine whether His Honor's prior rulings have been correctly interpreted and applied by the Bankruptcy Court.[3]

[*remainder intentionally left blank*]

---

[3] Neither of the Trustee's cited authorities on this issue even suggests that it would be impermissible for Judge Rakoff to hear an appeal of the Order. Both decisions stand only for the proposition that a district court should not exercise original and appellate jurisdiction *at the same time*, which would not be the case here. *See In re Southold Dev. Corp.*, 129 B.R. 18, 21 (E.D.N.Y. 1991); *In re Glannon*, 245 B.R. 882, 891-92 (D. Kan. 2002).

## CONCLUSION

Leave to appeal the Order's rulings on imputation and actual knowledge should be granted.

Dated: New York, New York
September 30, 2015

        QUINN EMANUEL URQUHART &
          SULLIVAN, LLP

By:   /s/ Robert S. Loigman
      Susheel Kirpalani
      Robert S. Loigman
      Rex Lee
      Lindsay M. Weber

51 Madison Avenue, 22nd Floor
New York, New York 10010
(212) 849-7000

*Counsel to Joint Liquidators of Kingate Global Ltd. and Kingate Euro Ltd.*

5