PROSKAUER ROSE LLP
Eleven Times Square
New York, New York  10036
Telephone:  212-969-3000
Facsimile:  212-969-2900
Richard L. Spinogatti (RLS1503)
rspinogatti@proskauer.com

*Attorneys for Defendants*
*Grosvenor Investment Management Ltd.,*
*Grosvenor Private Reserve Fund Limited,*
*Grosvenor Balanced Growth Fund Limited, and*
*Grosvenor Aggressive Growth Fund Limited*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>        Plaintiff-Applicant,<br><br>    v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>        Defendant. | Adv. Pro. No. 08-01789 (SMB)<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF<br><br>        Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>        Plaintiff,<br><br>    v.<br><br>GROSVENOR INVESTMENT MANAGEMENT LTD., GROSVENOR PRIVATE RESERVE FUND LIMITED, GROSVENOR BALANCED GROWTH FUND LIMITED, AND GROSVENOR AGGRESSIVE GROWTH FUND LIMITED,<br><br>        Defendants. | Adv. Pro. No. 12-01021 (SMB) |

**DEFENDANTS' SUPPLEMENTAL REPLY MEMORANDUM IN SUPPORT OF THEIR
MOTION TO DISMISS BASED ON EXTRATERRITORIALITY AND IN OPPOSITION
TO THE TRUSTEE'S MOTION FOR LEAVE TO AMEND**

This supplemental reply memorandum is submitted by the Grosvenor Defendants[1] in

response to the Trustee's Supplemental Memorandum.[2]  Certain of the arguments presented in

the Trustee's Supplemental Memorandum are addressed in the Reply Consolidated Supplemental

Memorandum[3], in which the Grosvenor Defendants join.  Accordingly, this memorandum will

respond only to the Trustee's arguments, based on his Proffered Allegations,[3] directed

specifically to the Grosvenor Defendants.

In *S.I.P.C. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*, 513 B.R. 222, 232 n.4

(S.D.N.Y. 2014) (the "*Extraterritoriality Decision*"), the District Court explained that "it is the

Trustee's obligation to alleged 'facts giving rise to the plausible inference that' the transfer

occurred 'within the United States,'" quoting *Absolute Activist Value Master Fund Ltd. v. Ficeto*,

677 F.3d 60, 69 (2d Cir. 2012).  The District Court then held that "[h]ere, to the extent that the

Trustee's complaints allege that both the transferor and the transferee reside outside the United

States, there is no plausible inference that the transfer occurred domestically," and directed that

"unless the Trustee can put forth specific facts suggesting a domestic transfer, his recovery

actions seeking foreign transfers should be dismissed."  *Id.*

In this proceeding, the Trustee has alleged that the Grosvenor Defendants have registered

addresses and a place of business in Bermuda and that Fairfield Sentry Limited ("Fairfield") and

Kingate Global Fund Ltd. ("Kingate"), which are alleged to have made subsequent transfers to

---

[1] Defendants Grosvenor Investment Management Ltd., Grosvenor Private Reserve Fund Limited, Grosvenor
Balanced Growth Fund Limited, and Grosvenor Aggressive Growth Fund Limited.
[2] Trustee's Supplemental Memorandum of Law in Opposition to Grosvenor Defendants' Motion to Dismiss Based
on Extraterritoriality and in Further Support of Trustee's Motion for Leave to Amend Complaints, hereinafter
referenced as "Tr. Supp. Mem., p. __."
[3] Reply Consolidated Supplemental Memorandum of Law in Support of Transferee Defendants' Motion to Dismiss
Based on Extraterritoriality, hereinafter "Reply Consolidated Supplemental Memorandum."

the Grosvenor Defendants, have registered addresses in the British Virgin Islands.[4]  The Trustee

has not pointed to any allegations in his pending complaint as suggestive of a domestic transfer.

Indeed, the Trustee has *not* argued that his pending complaint against the Grosvenor Defendants

meets the pleading standard for extraterritoriality articulated by the District Court.  Accordingly,

it must be dismissed.

For the reasons set forth below and in the Reply Consolidated Supplemental

Memorandum, the Trustee's Proffered Allegations[5] would not cure the deficiencies in his

pleading.  As such, any amendment that would assert the Proffered Allegations would be futile

and the Trustee's motion to amend for that purpose must be denied.

### THE TRUSTEE'S PROFFERED ALLEGATIONS PROVIDE NEITHER THE LOCATION NOR THE COMPONENT EVENTS OF THE SUBSEQUENT TRANSFERS

As the District Court explained in the *Extraterritoriality Decision*, "under *Morrison*, the

transaction being regulated by Section 550(a)(2) is the transfer of property to a subsequent

transferee, not the relationship of that property to a perhaps-distant debtor" and "[t]o determine

whether the transfers at issue in this consolidated proceeding occurred extraterritorially, 'the

court considers the location of the transfers as well as the component events of *those*

transactions.'"  *Id.* at 227, *quoting In re Maxwell Commc'n Corp.*, ("Maxwell I"), 186 B.R. 807,

817 (S.D.N.Y. 1995) (emphasis added).  Not one of the Proffered Allegations is relevant to either

the location of the subsequent transfers or the component events of *those* transfers.

The Trustee first argues that the transfers and his recitation of component events were

comprised of "predominantly domestic elements."  (Tr. Supp. Mem., p. 3.)  However, his

itemization of "domestic elements" does not reference a single fact or event relating directly to

---

[4] *See* Consolidated Supplemental Memorandum of Law in Support of the Transferee Defendants' Motion to Dismiss Based on Extraterritoriality, Appendix A at 24.
[5] Trustee's Proffered Allegations Pertaining to the Extraterritoriality Issue as to Grosvenor Defendants, hereinafter referenced as "PA, ¶ __."

the location of the alleged subsequent transfers, and the Proffered Allegations on which the

Trustee's argument is based do not support his conclusory assertion that the component events

were domestic.

The Trustee prefaces his Proffered Allegations of purported component events with the

assertion that the Grosvenor Defendants invested in Fairfield and Kingate "because their money

would ultimately be placed with BLMIS," where Fairfield and Kingate "established trading

accounts for the purpose of having Madoff invest their assets in securities traded on the U.S.

markets." PA, ¶ 7. The Trustee then alleges that the Grosvenor Defendants invested with

BLMIS through Fairfield and Kingate "to profit from BLMIS and Madoff." PA, ¶ 8. Neither

the motive of the Grosvenor Defendants for investing with Fairfield and Kingate nor their

alleged intent to profit from those investments relates to the location of the subsequent transfers

from Fairfield and Kingate to the Grosvenor entities or the component events of *those* transfers.

The Trustee's "component events" begin with the conclusory assertion that the

Grosvenor Defendants' relationship with Fairfield was centered in the United States. (PA, ¶¶ 10-

12.) In support, he alleges that one of the Grosvenor Defendants "conducted due diligence" and

"communicated directly" with Fairfield representatives at Fairfield Greenwich Group ("FGG") in

New York. Putting aside the absence of factual detail, neither the conduct of due diligence nor

the direct communication support the conclusion that the relationship with Fairfield was

"centered in the United States," and neither the poorly pled allegations nor the unsupported

conclusion are germane, in any respect, to where the subsequent transfers occurred. Similarly,

the Trustee's allegation that the Grosvenor Defendants requested and received access to FGG's

password protected website[6] provides no information about the location of the subsequent

transfers. And, the Trustee's final allegation in this category, that the Grosvenor Defendants'

---

[6] Although the Trustee alleges that the website provided further detail about Fairfield's BLMIS account, he does not allege, if, when, or how often the Grosvenor Defendants visited the website or, if they did, what information they learned by doing so. Most certainly, the Trustee does not relate visiting the website to the subsequent transfers.

3

*subscriptions* in Fairfield were "arranged" with FGG's Jeffrey Tucker, says nothing about the *redemptions* from Fairfield, which are the component events of the subsequent transfers.

The Trustee next asserts that the Grosvenor Defendants invested in Kingate in order to profit from BLMIS. (PA, ¶¶ 13-19.) Although that conclusion is meaningless to the extraterritoriality analysis, the Trustee's Proffered Allegations (1) do not support the conclusion he asserts, and (2) are still furthered removed from the location or component events of the redemption transactions. That the Grosvenor Defendants were part of the "Grosvenor Group" (PA, ¶ 13), that they "shared office locations, utilized one another's employees, exchanged information, and discussed specific [but unspecified] concerns relating to BLMIS, Madoff, and the Feeder Funds" (PA, ¶ 14), and that Dan Voth, a former employee of Hemisphere Management Limited ("Hemisphere"), which was Kingate's "Bermuda-based administrator," became an employee of the "Grosvenor Group" (PA, ¶ 15), are lacking in both meaningful detail and any stated connection to the subsequent transfers. Similarly, that Mr. Voth "acquired significant [but again unspecified] information concerning . . . Madoff, BLMIS and [Kingate]" while employed at Hemisphere (PA, ¶ 16), and that he communicated with a BLMIS employee about Kingate's investments with BLMIS, again while at Hemisphere and again undetailed as to content (PA, ¶¶ 16 and 17), say nothing about the subsequent transfers. Finally, that the Grosvenor Defendants first invested with Kingate after Mr. Voth was employed by the Grosvenor Group, even when coupled with the wholly conclusory assertion that "[Mr.] Voth's intimate [but again unspecified] knowledge of [Kingate's] operations allowed the Grosvenor Defendants to profit from . . . BLMIS" (PA, ¶¶ 18 and 19), reveals nothing about the location or the component events of the subsequent transactions.

The Trustee's next alleged component events begin with the conclusory (and unrevealing) assertion that the Grosvenor Defendants knew that BLMIS "controlled" the investments by Fairfield and Kingate and BLMIS "purported to invest . . . in U.S. markets" (PA,

4

¶ 20).  The supporting allegations concerning BLMIS's custody of the investments by Fairfield and Kingate, BLMIS's role as investment adviser for Fairfield and Kingate, the "SSC Strategy," Madoff's control of securities purchase decisions, BLMIS's registration with the SEC, and the "economic purpose" of Fairfield and Kingate "to deliver money to and profit from" BLMIS, make no mention of the subsequent transfers, their location, or their component elements.  (PA, ¶¶ 21-22.)  The Trustee's remaining allegations, that the Grosvenor Defendants "understood" that the trades by BLMIS for Kingate and Fairfield involved the same "U.S. equities and U.S. Treasurys [sic]" (PA, ¶ 23), and that they were "privy" to Voth's review and familiarity with BLMIS trade confirmations which identified BLMIS as a member of SIPC, beyond their lack of any sense, let alone specificity and detail, neither mention or relate to the subsequent transfers.[7]

The Trustee next argues that Fairfield maintained its principal place of business in New York and therefore "the transfers made by [Fairfield] to the Grosvenor Defendants are not purely foreign."  (Tr. Supp. Mem., p. 7.)  However, examination of the Trustee's Proffered Allegations demonstrates that the Trustee's premise does not support the conclusion that the subsequent transfers from Fairfield to the Grosvenor Defendants occurred within the United States.  As this argument is common to many of these proceedings, it will be addressed in the [Consolidated Reply Memorandum of Transferee Defendants].

The Trustee's conclusory assertion that the "economic reality" of Kingate's operations was in New York does not address either the location of the subsequent transfers or the component events of those transactions. The particulars of the relationship and interactions between Kingate and BLMIS, under the *Extraterritoriality Decision*, are irrelevant to the determination of extraterritoriality.  And, while BLMIS may have had custody and control of the

---

[7] The Trustee also alleges that correspondent bank accounts were used in connection with transfers between the Grosvenor Defendants and Fairfield and Kingate (PA, ¶¶ 26-30).  The Trustee does not allege, however, that the Grosvenor Defendants maintained a bank account in the United States and used such an account in connection with the subsequent transfers.  Moreover, the District Court found that the use of correspondent bank accounts to process dollar-denominated transfers was not sufficient to make the transfers domestic.  Extraterritoriality Decision, 513 B.R. at 228, n.1.

funds invested with it by Kingate, the conclusion, by the Trustee, that control over Kingate "rested entirely with BLMIS in New York" does not follow and is nothing more than an implausible speculative leap.  Similarly, that Kingate is alleged to have used *foreign-based* service providers such as Tremont (Bermuda) Limited, co-managers such as Kingate Management Limited, and consultants such as FIM Limited and FIM Advisers LLP, with affiliates in the United States, does not support or in any way relate to the conclusion that Kingate's transfers to the Grosvenor Defendants "are not purely foreign."

The Trustee has also argued that the Grosvenor Defendants' assertion that Bankruptcy Code Section 546(e) applies to the initial transfers from BLMIS to Fairfield and Kingate, providing a safe harbor barring the Trustee's avoidance claims except as asserted under section 548(a)(1)(A), is inconsistent with and should preclude the Grosvenor Defendants from arguing that section 550(a) should not be applied extraterritorially, precluding the Trustee's subsequent transfer recovery claims.  The Trustee cites no authority for this proposition and there is none. All such alleged conduct occurred after the transfers that the Trustee seeks to recover and cannot possibly create any inference concerning the location of those transfers.  In any event, as shown in the Reply Consolidated Supplemental Memorandum, there is no bar to raising inconsistent defenses, even assuming that such defenses were inconsistent.

**CONCLUSION**

The complaint against the Grosvenor Defendants should be dismissed and leave to

replead should be denied, with prejudice.

Dated: New York, New York
       September 30, 2015

By: /s/ Richard L. Spinogatti
    Richard L. Spinogatti (RLS1503)
    PROSKAUER ROSE LLP
    Eleven Times Square
    New York, New York  10036-8299
    Telephone:    (212) 969-3000
    Facsimile:    (212) 969-2900
    Email:  rspinogatti@proskauer.com

*Attorneys for Defendants*
*Grosvenor Investment Management Ltd.,*
*Grosvenor Private Reserve Fund Limited,*
*Grosvenor Balanced Growth Fund Limited, and*
*Grosvenor Aggressive Growth Fund Limited*
