**SULLIVAN & CROMWELL LLP**

125 Broad Street
New York, New York 10004
Telephone:  (212) 558-4000
Facsimile:   (212) 558-3588

**SULLIVAN & WORCESTER LLP**

1633 Broadway
New York, New York 10019
Telephone:  (212) 660-3000
Facsimile:   (212) 660-3001

(Additional Counsel Listed in Appendix A)

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

SECURITIES INVESTOR PROTECTION
CORPORATION,

                Plaintiff,

             v.

BERNARD L. MADOFF INVESTMENT
SECURITIES LLC,

                Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

In re

BERNARD L. MADOFF,

                Debtor.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

SIPA Liquidation
No. 08-01789-SMB
(Substantively Consolidated)

Applicable to the Adversary Proceedings
Listed in Exhibits A-B to the Court's Order
Dated December 10, 2014, ECF No. 8800

**REPLY CONSOLIDATED SUPPLEMENTAL MEMORANDUM**
**OF LAW IN SUPPORT OF TRANSFEREE DEFENDANTS'**
**MOTION TO DISMISS BASED ON EXTRATERRITORIALITY**

September 30, 2015

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................ iii

ARGUMENT ........................................................................................................2

I.    THE EXISTING CLAIMS TO RECOVER SUBSEQUENT TRANSFERS
      FROM THE TRANSFEREE DEFENDANTS SHOULD BE DISMISSED. ....................3

      1.    The Trustee Makes No Effort to Argue that the Existing
            Complaints Contain Sufficient Allegations that the Subsequent Transfers
            Were Domestic. ........................................................................................3

      2.    Judge Rakoff Held that the Complaints in the Withdrawn Proceedings Did
            Not Satisfy the Trustee's Burden of Pleading Domestic Transfers. ..................5

II.   THE TRUSTEE'S MOTION TO AMEND SHOULD BE DENIED
      BECAUSE THE PROPOSED AMENDMENTS WOULD BE FUTILE. ..........................7

      A.    The Trustee Can Only Satisfy His Burden of Pleading Domestic Transfers By
            Alleging Facts Relevant to the Location of the Transfers Themselves. .......................8

            1.    The Trustee Mischaracterizes Judge Rakoff's Decision Concerning the
                  Trustee's Burden to Plead Domestic Transfers. ................................................9

            2.    The Applicable Decisions of the Supreme Court and the Second Circuit
                  Make Clear that Only Allegations Concerning the Transfers Themselves
                  Can Satisfy the Trustee's Burden. ...............................................................10

      B.    None of the Trustee's Proposed Allegations Support any Inference that the
            Transfers Are Domestic. ............................................................................18

            1.    The Location of BLMIS and the Trustee ........................................................19

            2.    United States Operations of Affiliates of the Feeder Funds
                  (Exhibit 2, Column 1) .................................................................................20

            3.    New York Choice of Law and Venue Provisions in Subscription
                  Agreements (Exhibit 2, Columns 2-3) ............................................................23

            4.    Knowledge that Feeder Funds Invested in the United States (Exhibit 2,
                  Columns 4-7) ...............................................................................................25

            5.    Due Diligence (Exhibit 2, Columns 8-9) .........................................................26

            6.    Use of United States Affiliates, Agents, or Offices
                  (Exhibit 2, Columns 10-11, 19) ....................................................................27

            7.    Use of United States Bank Accounts  (Exhibit 2, Column 12)........................28

            8.    The Transferee Defendants' General "Relationship" with Feeder Funds'
                  United States Office, Employees, or Other Representatives (Exhibit 2,
                  Column 13) ...................................................................................................30

# TABLE OF CONTENTS

### (*continued*)

Page

9.    Fees Based on BLMIS's Performance or Paid Using BLMIS Customer
      Property (Exhibit 2, Column 14) ...................................................................30

10.   Incentive Fees (Exhibit 2, Column 15) .............................................................31

11.   Affiliation With a Feeder Fund (Exhibit 2, Column 16) .................................31

12.   Claims and Defenses in the BLMIS Liquidation (Exhibit 2, Column 17).......32

13.   Defendants are United States Citizens (Exhibit 2, Column 18)......................33

III.   THE TRUSTEE'S CLAIMS SHOULD BE DISMISSED, AND HIS MOTION
       TO AMEND SHOULD BE DENIED, BASED ON COMITY.......................................33

A.    Judge Rakoff's Ruling on Comity Requires Dismissal of All the Complaints
      Subject to this Motion and Makes the Proposed Amendments Futile. ........................34

B.    The Trustee Is Mistaken Concerning the Applicable Principles of Comity. ...............36

CONCLUSION.................................................................................................................40

APPENDIX A.   ADDITIONAL COUNSEL

# TABLE OF AUTHORITIES

**Page(s)**

### Cases

*Absolute Activist Value Master Fund Ltd. v. Ficeto*,
   677 F.3d 60 (2d Cir. 2012) .................................................................................... *passim*

*Ace Arts, LLC v. Sony/ATV Music Pub., LLC*,
   56 F. Supp. 3d 436 (S.D.N.Y. 2014) ................................................................... 40

*Allstate Life Ins. Co. v. Linter Group Ltd.*,
   994 F.2d 996 (2d Cir. 1993) ................................................................................ 40

*In re Banco Santander Securities—Optimal Litig.*,
   732 F. Supp. 2d 1305 (S.D. Fla. 2010), *aff'd*, 439 F. App'x 840 (11th Cir. 2011) ............... 23

*In re Bernard L. Madoff Investment Securities LLC*,
   525 B.R. 871 (S.D.N.Y. 2015) ............................................................................ 29

*Bigio v. Coca-Cola Co.*,
   448 F.3d 176 (2d Cir. 2006) ................................................................................ 37-38

*Cedeno v. Intech Group, Inc.*,
   733 F. Supp. 2d 471 (S.D.N.Y. 2010), *aff'd*, 457 Fed. Appx. 35 (2d Cir. 2012) ............ 28-29

*EEOC v. Arabian American Oil Co.*,
   499 U.S. 244 (1991) ........................................................................................... 14

*European Commmunity v. RJR Nabisco, Inc.*,
   764 F.3d 129 (2d Cir. 2014) ................................................................................ 16

*Fairfield Sentry Ltd. (in Liquidation) v. Migani*,
   [2014] UKPC 9, 2014 WL 1219748 ................................................................ 23, 25, 36

*Ferrand v. Credit Lyonnais*,
   292 F. Supp. 2d 518 (S.D.N.Y. 2003) ................................................................. 24

*Freund v. Republic of France*,
   592 F. Supp. 2d 540 (S.D.N.Y. 2008) ................................................................. 38

*Hartford Fire Ins. Co. v. California*,
   509 U.S. 764 (1993) ........................................................................................... 39

*Henry v. Daytop Village*,
   42 F.3d 89 (2d Cir. 1994) .................................................................................... 32

## TABLE OF AUTHORITIES

(*continued*)

**Page(s)**

*JP Morgan Chase Bank v. Altos Hornos de Mex., S.A. de C.V.*,
412 F.3d 418 (2d Cir. 2005) ................................................................. 39

*In re Kingate Management Ltd. Litigation*,
784 F.3d 128 (2d Cir. 2015) ................................................................. 33

*Licci v. Lebanese Canadian Bank*,
732 F.3d 161 (2d Cir. 2013) ................................................................. 29

*Loginovskaya v. Batratchenko*,
764 F.3d 266 (2d Cir. 2014) ................................................... 12-14, 21, 25

*Mastafa v. Chevron Corp.*,
770 F.3d 170 (2d Cir. 2014) ................................................................. 15

*In re Maxwell Communication Corp.*,
170 B.R. 800 (Bankr. S.D.N.Y. 1994), *aff'd*, 186 B.R. 807 (S.D.N.Y. 1995), *aff'd*, 93 F.3d
1036 (2d Cir. 1996) ................................................................................17

*In re Maxwell Communication Corp.*,
186 B.R. 807 (S.D.N.Y. 1995), *aff'd*, 93 F.3d 1036 (2d Cir. 1996) .............................. *passim*

*In re Maxwell Communication Corp.*,
93 F.3d 1036 (2d Cir. 1996) ................................................................. 36, 38-39

*McCarthy v. Dun & Bradstreet Corp.*,
482 F.3d 184 (2d Cir. 2007) ................................................................. 7-8

*In re Midland Euro Exchange Inc.*,
347 B.R. 708 (Bankr. C.D. Cal. 2006) ................................................................. 29

*Morrison v. National Australia Bank Ltd.*,
547 F.3d 167 (2d Cir. 2008), *aff'd*, 561 U.S. 247 (2010) ....................................... 18

*Morrison v. National Australia Bank Ltd.*,
561 U.S. 247 (2010) ................................................................................. *passim*

*Norex Petroleum Ltd. v. Access Industries, Inc.*,
540 F. Supp. 2d 438 (S.D.N.Y. 2007), *aff'd*, 631 F.3d 29 (2d Cir. 2010) ............................ 29

*Norex Petroleum Ltd. v. Access Industries, Inc.*,
631 F.3d 29 (2d Cir. 2010) ................................................................. 17, 29

*Parkcentral Global Hub Ltd. v. Porsche Auto. Holdings SE*,
763 F.3d 198 (2d Cir. 2014) ................................................................. 10, 15-16

# TABLE OF AUTHORITIES

*(continued)*

<u>Page(s)</u>

*In re Perry H. Koplik & Sons, Inc.,*
    Adv. No. 04–02490 (REG), 2007 WL 3076921 (Bankr. S.D.N.Y. Oct. 18, 2007)................. 8

*Picard v. Bureau of Labor Insurance,*
    480 B.R. 501 (Bankr. S.D.N.Y. 2012)................................................................... 26

*Plumbers' Union Local No. 12 Pension Fund v. Swiss Reinsurance Co.,*
    753 F. Supp. 2d 166 (S.D.N.Y. 2010)............................................................. 11, 22

*Romero v. International Terminal Operating Co.,*
    358 U.S. 354 (1959)........................................................................................ 36

*Royal and Sun Alliance Ins. Co. of Canada v. Century Int'l Arms, Inc.,*
    466 F.3d 88 (2d Cir. 2006)........................................................................... 37-38

*Ruotolo v. City of New York,*
    514 F.3d 184 (2d Cir. 2008).............................................................................8

*SEC v. ICP Asset Management, LLC,*
    No. 10-cv-4791 (LAK),  2012 WL 2359830 (S.D.N.Y. June 21, 2012) ........................ 15-16

*Sherwood Investments Overseas Limited, Inc. v. Royal Bank of Scotland*
*(In re Sherwood Investments Overseas Limited, Inc.),*
    Adv. No. 6:10-ap-158-KSJ, 2015 WL 4486470 (Bankr. M.D. Fla. July 22, 2015) ...............22

*SIPC v. Bernard L. Madoff Investment Securities LLC,*
    501 B.R. 26 (S.D.N.Y. 2014)........................................................................... 26

*SIPC v. Bernard L. Madoff Investment Securities LLC,*
    513 B.R. 222 (S.D.N.Y. 2014)................................................................... *passim*

*SIPC v. Bernard L. Madoff Investment Securities LLC,*
    531 B.R. 439 (Bankr. S.D.N.Y. 2015).............................................................. 4-5

*Steinberg v. Barclay's Nominees (Branches) Ltd.,*
    No. 04-60897-cv, 2008 WL 4601042 (S.D. Fl. Sept. 30, 2008)............................. 29

*Tarazi v. Truehope, Inc.,*
    958 F. Supp. 2d 428, 435 (S.D.N.Y. 2013)........................................................ 40

*Timberlane Lumber Co. v. Bank of America,*
    749 F.2d 1378 (9th Cir. 1984) ...................................................................... 37

*United Feature Syndicate, Inc. v. Miller Features Syndicate, Inc.,*
    216 F. Supp. 2d 198 (S.D.N.Y. 2002)........................................................... 38-39

## TABLE OF AUTHORITIES

*(continued)*

**Page(s)**

### Statutes and Regulations

Bankruptcy Code § 101(54), 11 U.S.C. § 101(54) ...................................................11

Bankruptcy Code § 546(e), 11 U.S.C. § 546(e) ....................................................... 32

Bankruptcy Code § 547, 11 U.S.C. § 547................................................................ 17

Bankruptcy Code § 548, 11 U.S.C. § 548................................................................ 29

Bankruptcy Code § 550(a)(2), 11 U.S.C. § 550(a)(2) ........................................ *passim*

Commodity Exchange Act § 4o, 7 U.S.C. § 6o ....................................................... 12

Commodity Exchange Act § 22, 7 U.S.C. § 25 ....................................................... 12

SEC Rule 10b-5, 17 CFR § 240.10b-5 ......................................................... 10, 13, 15

Securities Exchange Act § 10(b), 15 U.S.C. § 78j(b) ............................................ 9, 32

### Rules

Fed. R. Bankr. P. 7008(a) ....................................................................................... 32

Fed. R. Bankr. P. 7012(b) ....................................................................................... 32

Fed. R. Civ. P. 8(d)(2)-(3)...................................................................................... 32

Fed. R. Civ. P. 12(h)(1)........................................................................................... 32

Fed. R. Civ. P. 12(h)(2)........................................................................................... 32

### Other Authorities

Restatement (Third) of Foreign Relations Law § 213 (1987)..................................... 23

Judge Rakoff directed this Court to apply his extraterritoriality ruling to dismiss claims that "allege that both the transferor and the transferee reside outside of the United States . . . unless the Trustee can put forth specific facts suggesting a domestic transfer." *SIPC v. Bernard L. Madoff Inv. Sec. LLC*, 513 B.R. 222, 232 n.4 (S.D.N.Y. 2014) (the "*Extraterritoriality Decision*").[1]  Seeking to evade Judge Rakoff's ruling, the Trustee argues that it is not law of the case and that, rather than apply Judge Rakoff's order, this Court should revive the "conduct" and "effects" tests that were expressly rejected by the Supreme Court in *Morrison v. National Australia Bank Ltd.*, 561 U.S. 247 (2010).  The Trustee's arguments are without merit.  Judge Rakoff's order is not merely law of the case, it is a mandate, and this Court should reject the Trustee's invitation to disregard it.  The Trustee makes no effort to defend the claims that are the subject of this motion to dismiss, and that motion should be granted.  The Trustee's proffered amended complaints plainly fail to satisfy the pleading requirements set forth by Judge Rakoff, and accordingly the Trustee's motion to amend the complaints should be denied as futile.

---

[1]    The definitions of capitalized terms in the Consolidated Supplemental Memorandum of Law in Support of the Transferee Defendants' Motion to Dismiss Based on Extraterritoriality, Adv. No. 08-1789 (SMB) (Bankr. S.D.N.Y. Dec. 31, 2014), ECF No. 8903 ("Opening Memorandum") apply to this reply memorandum.

The Transferee Defendants also include Bank Austria Worldwide Fund Management Ltd. ("BAWFM"), a defendant in Adversary Proceeding No. 09-1364.  BAWFM did not participate in the initial briefing on this motion because it believed it had not been served with the operative complaint.  Now that the Trustee has filed a return of service of the proffered Second Amended Complaint, BAWFM asks the Court to consider its motion to dismiss.  Counsel for the Trustee has stated that he believes BAWFM has been served but does not object to BAWFM being considered a part of the instant motion.

As BAWFM is not in the charts now before the court, we proffer here the following information as to the allegations against BAWFM.  In the Amended Complaint, BAWFM is alleged to be a BVI entity and is alleged together with other "Management Defendants" to have received subsequent transfers from "Feeder Fund Defendants," all of whom are foreign entities.  *See* Am. Compl. ¶¶ 57-69, 72, 352.  The proffered Second Amended Complaint alleges that BAWFM received subsequent transfers from Alpha Prime Fund Ltd., a Bermuda Company, and Thema International Fund plc, an Irish Company.  *See* Prof. Second Am. Compl. ¶¶ 64, 82, 384.

**ARGUMENT**

The Trustee's Memorandum of Law[2] ("Tr. Mem." or "Trustee's Memorandum")

confirms that his existing claims to recover subsequent transfers from the Transferee Defendants

should be dismissed and that his motion to amend should be denied.    With a handful of

exceptions,[3] the Trustee makes no effort to argue that the existing complaints contain allegations

sufficient to create a plausible inference that the subsequent transfers he seeks to recover

occurred in the United States.    Instead, he relies on allegations he proposes to make if he is

permitted to amend his complaints.    Since Judge Rakoff has ruled that a claim to recover a

transfer made by a foreign transferor to a foreign transferee should be dismissed in the absence

of allegations creating a plausible inference that the transfer was domestic, the motion to dismiss

the existing claims should be granted.

The Trustee's Memorandum also makes clear that his motion to amend should be

denied because the proposed amendments would be futile, and that the claims in the one

complaint he has already amended should be dismissed.    The Trustee cannot dispute in this Court

that section 550(a) only applies to subsequent transfers if they occurred in the United States, or

that he has the burden of pleading facts creating a plausible inference that the transfers satisfy

this requirement.    Yet, his proposed allegations simply fail to address where the transfers

---

[2]    Trustee's Memorandum of Law in Opposition to the Transferee Defendants' Motion to Dismiss Based on Extraterritoriality and in Further Support of Trustee's Motion for Leave to Amend Complaints, Adv. No. 08-1789 (SMB) (June 26, 2015), ECF No. 10287.

[3]    The Trustee relies on an amended complaint that he has already been permitted to file in *Picard v. Ceretti*, Adv. No. 09-1161 (SMB), which must be dismissed for the reasons stated in footnote 4 and Parts II-III below.  He also asserts that transfers to five individual defendants in *Picard v. Fairfield Sentry Ltd.*, Adv. No. 09-1239 (SMB), were domestic because they are U.S. citizens.  These individuals should be treated the same as foreign citizens for the reasons set forth in the separate memorandum submitted on their behalf, and they are not discussed separately in this memorandum.    For simplicity, this memorandum proceeds on the basis that all the transferors and transferees are foreign nationals because they are business entities organized under the laws of foreign countries or individuals who are citizens of foreign countries.

- 2 -

occurred.    Instead, he has submitted hundreds of pages concerning allegations relating to

extraneous factors like where certain transferors conducted some of their operations, the due

diligence that certain Transferee Defendants conducted when they invested in the feeder funds,

the location of affiliates that are not alleged to have received the transfers, and even the defenses

asserted in these proceedings long after the transfers were made.    Under Judge Rakoff's decision

and controlling Supreme Court and Second Circuit precedent, these allegations cannot satisfy the

Trustee's burden of pleading domestic transfers.

Finally, the Trustee's argument concerning Judge Rakoff's alternate holding that

the claims should be dismissed based on comity completely misses the point.    The Trustee relies

on the standards for abstention in favor of parallel foreign judicial proceedings, based on comity

of the courts, but Judge Rakoff's decision was based on the distinct principles of international

choice of law known as comity of nations.    Under the relevant standards, the claims subject to

this motion must be dismissed and the proposed amendments would be futile on the additional

ground of comity.

## I.    THE EXISTING CLAIMS TO RECOVER SUBSEQUENT TRANSFERS FROM THE TRANSFEREE DEFENDANTS SHOULD BE DISMISSED.

### 1.    The Trustee Makes No Effort to Argue that the Existing Complaints Contain Sufficient Allegations that the Subsequent Transfers Were Domestic.

Judge Rakoff held that "to the extent that the Trustee's complaints allege that both

the transferor and the transferee reside outside of the United States," the complaints must be

dismissed "unless the Trustee can put forth specific facts suggesting a domestic transfer."

*Extraterritoriality Decision*, 513 B.R. at 232 n.4.    With the exception of the *Ceretti* case,[4]

---

[4]    In *Picard v. Ceretti*, Adv. No. 09-1161 (SMB), the Trustee filed a Fourth Amended
Complaint on March 17, 2014, ECF No. 100, long after the extraterritoriality motion was

however, the Trustee does not attempt to show that the allegations of the existing complaints "put forth specific facts suggesting a domestic transfer." Instead, he relies entirely on allegations in proposed amended complaints. *E.g.*, Tr. Mem. 8 n.25; 9 nn.26-31; 13 nn.48-55; 30 n.118; 32 nn.121-123. Since he makes no effort to argue that the existing complaints contain sufficient allegations to create a plausible inference that the transfers were domestic, his claims must be dismissed, and the Court should turn its attention to the motion to amend.

There is no merit to the Trustee's assertion that "[l]aw of the case is inapplicable here." Tr. Mem. 14. As this Court has recognized, "Judge Rakoff's extensive consideration of [an] issue would normally foreclose further argument in this Court." *SIPC v. Bernard L. Madoff Inv. Sec. LLC*, 531 B.R. 439, 466 (Bankr. S.D.N.Y. 2015). Moreover, this Court has recognized that, when "Judge Rakoff return[s] the proceedings to this Court 'for further proceedings consistent with this Opinion and Order,'" it should be construed as "a mandate." *Id.* That is just what Judge Rakoff did in the *Extraterritoriality Decision*.

Judge Rakoff's decision is also law of the case, binding on the Trustee, in the proceedings that were not before Judge Rakoff. "Judge Rakoff's decisions are law of the case" when the parties "participated in the withdrawal of the reference of the [] issue [and] have had their day in court." *Id.* In any event, the "persuasive force of Judge Rakoff's decision[]" should

---

submitted to Judge Rakoff. He is not seeking further to amend that complaint, and incorrectly asserts that the existing complaint contains sufficient allegations to survive a motion to dismiss. (Tr. Mem. 8 n.25, 10 nn.33, 37-39.) However, the arguments in Parts II-III of this Argument apply to that complaint because the types of allegations that the Trustee cites in the Fourth Amended Complaint in an effort to show that he has satisfied his burden of pleading domestic transfers are the same as the types of allegations in the proposed amended complaints that he cites in all the other proceedings. Accordingly, the Fourth Amended Complaint in *Ceretti* should be dismissed for the same reasons that the Trustee's proposed amendments would be futile.

"lead [this Court] to the same conclusions" that Judge Rakoff reached in the *Extraterritoriality*

*Decision* with respect to the other moving parties. *Id.*[5]

## 2. Judge Rakoff Held that the Complaints in the Withdrawn Proceedings Did Not Satisfy the Trustee's Burden of Pleading Domestic Transfers.

In light of the Trustee's failure to argue that the existing complaints satisfy the

pleading requirements established by Judge Rakoff, there is no practical significance to his

argument that in the proceedings before Judge Rakoff, "Defendants and the Trustee litigated only

the legal issue of whether SIPA and the avoidance and recovery provisions of the Code apply

extraterritorially," and that "the Trustee's pleadings have yet to be reviewed." Tr. Mem. 5-6, 15.

However, the plain language of Judge Rakoff's decision makes clear that there is no merit to the

Trustee's contention, and that Judge Rakoff considered the complaints in the withdrawn

pleadings and held that they should be dismissed.

---

[5]    There are six Transferee Defendants (excluding defendants against which the Trustee has already discontinued his claims for other reasons) for whom the Trustee has not identified *any* allegations, in either an existing or any proposed amended complaint, that would support an inference that they received domestic transfers.    Those defendants, and the adversary proceedings in which the claims are asserted against them, are:

> HSBC Holdings plc (09-1364)
> HSBC Bank (Cayman Islands) Ltd. (09-1364)
> HSBC Private Banking Holdings (Suisse) S.A. (09-1364)
> Estate of Doris Igoin (10-4336)
> Pictet et Cie (11-1724)
> Banque J. Safra (Suisse) SA (11-1725)

None of these six defendants is listed in Exhibit 2-A to the Trustee's Memorandum.  Because the Trustee has made no effort to show that he has made or could make allegations creating a plausible inference that the transfers he seeks to recover from these defendants are domestic, his claims against them should be dismissed with prejudice and without leave to amend.  Moreover, the last three adversary proceedings listed above are omitted from the list of proceedings to which the Trustee's Memorandum applies, in Exhibit 1 to the Memorandum, and no papers in opposition to the motion were filed in those adversary proceedings.  The defendants in those proceedings participated in the motion before Judge Rakoff (*see* Scheduling Order Ex. A), so the claims against them are directly subject to his remand order.  Accordingly, the Trustee apparently does not oppose dismissal of those adversary proceedings.

Judge Rakoff expressly "determine[d], first, whether *the factual circumstances at issue* require an extraterritorial application of the relevant statutory provision." *Extraterritoriality Decision*, 513 B.R. at 226 (emphasis added). After considering the complaints, he "conclude[d] that the subsequent transfers that the Trustee seeks to recover here are foreign transfers and thus would require an extraterritorial application of section 550(a)." *Id.* at 228. Citing the CACEIS Complaint as an "example," Judge Rakoff found that "[h]ere, the relevant transfers and transferees are predominantly foreign: foreign feeder funds transferring assets abroad to their foreign customers and other foreign transferees." *Id.* at 227. Only after making that ruling did he consider "whether such an extraterritorial application was intended by Congress," and held that it was not. *Id.* at 228. Thus, contrary to the Trustee's assertions (Tr. Mem. 15), Judge Rakoff did not simply "presume" that the Trustee failed to plead that the transfers were domestic—he expressly held that the Trustee failed to do so.

The proceedings before Judge Rakoff were not limited to abstract legal issues. He directed the defendants to move to dismiss the Trustee's complaints based on the extraterritoriality issue, *SIPC v. Bernard L. Madoff Investment Securities LLC*, No. 12-mc-115 (JSR) (S.D.N.Y. May 15, 2012), ECF No. 97, and they did so. In opposing that motion, the Trustee argued that his claims "seek to apply the Bankruptcy Code and SIPA domestically," because the initial source of the transfers, BLMIS, was a domestic debtor and U.S. broker-dealer. Trustee's Memorandum of Law in Opposition to Defendants' Motion to Dismiss 5, 8-12, No. 12-mc-115 (JSR) (S.D.N.Y. Aug. 17, 2012), ECF No. 310. The Trustee further argued that "[e]very fraudulent transfer at issue originated from Madoff's New York-based J.P. Morgan bank account, and was made in furtherance of a Ponzi scheme BLMIS conducted out of its New York offices" and "the mere fact that Defendants may have received some of BLMIS's customer

property in a foreign country is irrelevant under *Morrison*'s analysis." *Id.* at 17.  In the
alternative, the Trustee argued that the Court should defer ruling until the Trustee could conduct
further discovery "to identify where particular defendants reside and where the fraudulent
transfers and subsequent transfers took place." *Id.* at 27.  Likewise, SIPC argued that
"[a]djudication of the Trustee's claims does not require extraterritorial application of the
avoidance and recovery provisions of SIPA and the Bankruptcy Code because the transfers in
question were domestic" in that "the 'center of gravity' of the BLMIS Ponzi scheme, and all of
the transfers made in connection with it—including those subsequent transfers of stolen customer
property made by hedge fund Defendants to their overseas investors—is the United States."
Memorandum of Law of the SIPC in Opposition to the Extraterritorial Defendants' Motion to
Dismiss 4, 10, No. 12-mc-115 (S.D.N.Y. Aug. 17, 2012), ECF No. 309.  It argued that "BLMIS,
and its Ponzi scheme, were organized, managed, and operated in the U.S., and all of its
principals, along with most of its customers and other creditors, were domiciled here." *Id*. at 24.

Judge Rakoff considered and rejected each of these arguments, holding that "it is
the Trustee's obligation to allege 'facts giving rise to the plausible inference that' the transfer
occurred 'within the United States.'"  513 B.R. at 232 n.4 (quoting *Absolute Activist Value
Master Fund Ltd. v. Ficeto*, 677 F.3d 60, 69 (2d Cir. 2012)).  The Trustee did not seek
reconsideration of that order, and cannot do so in this Court.  His contention that Judge Rakoff
did not decide to dismiss the claims in the withdrawn proceedings is incorrect, and those claims
must be dismissed.

## II.   THE TRUSTEE'S MOTION TO AMEND SHOULD BE DENIED BECAUSE THE PROPOSED AMENDMENTS WOULD BE FUTILE.

Granting leave to amend a complaint is "within the sound discretion of the . . .
court . . . [and a] court has discretion to deny leave for good reason." *McCarthy v. Dun &*

*Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007).   Here, leave to amend should be denied

because the proposed amendments would be futile.   *See Ruotolo v. City of N.Y.*, 514 F.3d 184,

191 (2d Cir. 2008); *In re Perry H. Koplik & Sons, Inc.*, Adv. No. 04–02490 (REG), 2007 WL

3076921, at *4 (Bankr. S.D.N.Y. Oct. 18, 2007).   The Trustee has the burden to allege "specific

facts" giving rise to a plausible inference that the transfers were domestic, *Extraterritoriality*

*Decision*, 513 B.R. at 232 n.4 (quoting *Absolute Activist,* 677 F.3d at 69), and his proposed

amendments fail to meet that burden.

      Indeed, the proposed allegations say nothing whatsoever concerning the location

of the transfers.   The summary of the hundreds of proffered allegations in the Trustee's

Memorandum, including the tables attached to the Memorandum as Exhibit 2, make this clear.

He has attempted to discharge his burden of pleading domestic transfers with allegations

concerning such topics as the place where some of the transferors conducted certain operations,

the location of events relating to the defendants' investments in the feeder funds, the location of

the transfers from BLMIS to the initial transferee, and the Trustee's and the defendants'

participation in the BLMIS SIPA proceedings.   None of these allegations has any relevance to

the decisive issue of the location of the subsequent transfers that the Trustee seeks to recover.

    **A.**    **THE TRUSTEE CAN ONLY SATISFY HIS BURDEN OF**
           **PLEADING DOMESTIC TRANSFERS BY ALLEGING**
           **FACTS RELEVANT TO THE LOCATION OF THE**
           **TRANSFERS THEMSELVES.**

      The Trustee is mistaken when he asserts that Judge Rakoff held that only claims

to recover "purely foreign" transfers, without any domestic elements, should be dismissed.   Tr.

Mem. 7.   While Judge Rakoff referred to the transfers as "predominantly foreign" or "purely

foreign," 513 B.R. at 227, 231, he never said that *only* claims to recover "purely foreign"

transfers should be dismissed. Indeed, failing to dismiss claims unless they involve "purely foreign" transfers would be contrary to controlling Supreme Court and Second Circuit precedent.

> 1.    **The Trustee Mischaracterizes Judge Rakoff's Decision Concerning the Trustee's Burden to Plead Domestic Transfers.**

Judge Rakoff made clear that to avoid dismissal the Trustee must do more than "set forth facts plausibly alleging a transfer has *domestic elements*." Tr. Mem. 6-7 (emphasis added). Rather, Judge Rakoff held that all of the Trustee's claims to recover subsequent transfers from foreign transferors to foreign transferees must be dismissed "unless the Trustee can put forth specific facts suggesting a *domestic transfer*" occurred. 513 B.R. at 232 n.4 (emphasis added). Judge Rakoff specifically held that alleging certain domestic *elements* would not be enough to avoid dismissal. He made clear that the Trustee's allegations that "the chain of transfers originated with Madoff Securities in New York . . . [are] insufficient to make the recovery of these otherwise thoroughly foreign subsequent transfers into a domestic application of section 550(a)." *Id.* at 228. "Nor is the fact that some of the defendants here allegedly used correspondent banks in the United States to process dollar-denominated transfers sufficient to make these foreign transfers domestic." *Id.* at 228 n.1.

Judge Rakoff also cited and relied on the Supreme Court's holding in *Morrison*, 561 U.S. at 270, "rejecting the notion that the section 10(b) claim at issue was domestic because a significant portion of the fraudulent conduct occurred in the United States," as well as the District Court's decision in *In re Maxwell Communication Corp.*, 186 B.R. 807, 816-17 (S.D.N.Y. 1995), "rejecting the claim that the alleged preferential transfers were domestic because the funds for the transfers derived from the sale of U.S. assets." 513 B.R. at 228. Thus,

Judge Rakoff's ruling requires that the Trustee do more than allege domestic *elements* of the transfer; he instead must allege a *domestic transfer*.[6]

> ### 2.    The Applicable Decisions of the Supreme Court and the Second Circuit Make Clear that Only Allegations Concerning the Transfers Themselves Can Satisfy the Trustee's Burden.

In *Morrison*, the Supreme Court held that whether or not a claim would require an impermissible extraterritorial application of a statute depends on the location of the conduct that is the "focus" of the statute or "the object of the statute's solicitude."  561 U.S. at 266-67. *Morrison* and other Supreme Court and Second Circuit decisions make clear that only allegations concerning the location of that conduct itself can satisfy this requirement, and that no amount of domestic activity leading to or ensuing from that specific conduct is relevant.  Judge Rakoff held that the focus of section 550(a)(2) was the subsequent transfers the Trustee seeks to recover, 513 B.R. at 227, so only allegations concerning those transfers can satisfy the Trustee's burden.

Thus, in *Absolute Activist*, the Second Circuit discussed at length when a "transaction in other securities" not registered on a U.S. exchange is "domestic" so as to be subject to Rule 10b-5 under *Morrison*.  677 F.3d at 67-69.  The plaintiffs, nine Cayman Island hedge funds, alleged that the defendants, including their investment manager, caused them to purchase shares of companies incorporated in the United States ("U.S. Penny Stocks") while the defendants manipulated the price of those shares upwards, in part by transactions among the funds.  The court first held that for purposes of the Exchange Act, a securities "transaction"

---

[6]    The only issue presented by the motion is whether the new allegations proffered by the Trustee are sufficient to allege domestic transfers.  The burden is on the Trustee, and neither the defendants nor the Court are required to speculate about what other allegations could satisfy the Trustee's burden.  *See Parkcentral Global Hub Ltd. v. Porsche Auto. Holdings SE*, 763 F.3d 198, 215 (2d Cir. 2014) (applying the Supreme Court's admonition to "decline to lay down . . . broad rule[s] . . . to govern all conceivable future questions in [an] area" to the issue of whether a proposed application of a statute is domestic).

occurs not only where title to the shares is passed, but also where the seller incurs an irrevocable obligation to sell, or the buyer incurs an irrevocable obligation to buy, the securities. *Id.* This holding was based on the provisions of the Exchange Act prohibiting fraud in connection with a "purchase or sale" of a security and defining "purchase" and "sale" to include a contract to purchase or sell, *see id*. at 67 (citing 15 U.S.C. §§ 78c(a)(13)-(14)). The holding is not applicable to the present proceedings because section 550(a)(2) only authorizes a trustee to recover a subsequent "transfer," and the Bankruptcy Code's definition of "transfer" does not include a contract to make a transfer. *See* 11 U.S.C. §§ 101(54), 550(a)(2).

The Second Circuit then held that the complaint did "not sufficiently allege that purchases or sales took place in the United States." 677 F.3d at 69-70. It expressly held that the following allegations were not sufficient to plead a domestic transaction:

- The U.S. Penny Stocks were issued by U.S. companies and registered with the SEC.

- "[I]nvestors subscribed to the Funds by wiring money to a bank located in New York."

- "[T]he Funds were heavily marketed in the United States and . . . United States investors were harmed by the defendants' actions."

- Two of the defendants resided in California.[7]

---

[7] The court stated that the residence of the parties to the transactions was "irrelevant" because foreign persons can make purchases within the United States and a United States resident can make a purchase outside the United States (citing *Plumbers' Union Local No. 12 Pension Fund v. Swiss Reinsurance Co.*, 753 F. Supp. 2d 166, 178 (S.D.N.Y. 2010)). However, it acknowledged that "it may be more likely for domestic transactions to involve parties residing in the United States." 677 F.3d at 69. In the context of that decision, the point of this statement was that the domestic residence of a party is not enough to make a transaction domestic. The Second Circuit's statement does not call into question Judge Rakoff's ruling that the Trustee failed to satisfy his burden of making allegations supporting a plausible inference that a transfer was domestic by alleging that a transfer was made by and to non-U.S. persons, without other allegations showing a domestic transfer.

- 11 -

- Defendant Hunter, a broker-dealer located in California, "was an underwriter for, or was otherwise involved, in the offerings of the U.S. Penny Stock Companies whose shares Defendants caused the Funds to purchase."

- Defendant Ficeto "carried out his fraudulent activities and caused Hunter to carry out its fraudulent activities in, among other places, the United States."

*Id.* at 70.

Likewise, *Loginovskaya v. Batratchenko*, 764 F.3d 266 (2d Cir. 2014), makes clear that only allegations directly relating to the location of the subsequent transfers themselves can satisfy the Trustee's burden.  That case involved a claim under the Commodity Exchange Act ("CEA").  Section 4o of the CEA, 7 U.S.C. § 6o, prohibits fraudulent conduct by certain participants in the commodities markets, and section 22, 7 U.S.C. § 25, creates "a private right of action against a person whose violation of the CEA 'result[s] from one or more of the transactions' listed in the statute."  764 F.3d at 272 (quoting 7 U.S.C. § 25(a)(1)).  The Second Circuit held that the complaint should be dismissed for failure to allege a transaction subject to section 22 of the CEA within the United States, *id.* at 272-75.  It concluded, "[T]he presumption against extraterritorial effect applies to CEA § 22; that provision requires a commodities transaction; and Loginovskaya has not alleged a domestic commodities transaction."  *Id.* at 275.

In particular, the Second Circuit explained:

Loginovskaya alleges her claim arises from the purchase, sale, or placing an order for the purchase or sale of an interest or participation in a commodity pool.  *See* 7 U.S.C. § 25(a)(1)(C)(iii). She must therefore demonstrate that the transfer of title or the point of irrevocable liability for such an interest occurred in the United States.[8]

---

[8]    Following its decision concerning the Securities Exchange Act in *Absolute Activist*, *see* pages 10-12 above, the Second Circuit held, based on specific provisions of the CEA, that the transactions that are the focus of section 22 of the CEA include contracts to make transfers as well as the transfers themselves.  *Id.* at 273-274.

- 12 -

*Id*. at 274 (footnote omitted).   Loginovskaya's claim was based on her investment in Thor

United, *id*. at 269, one of the members of the Thor Group, all of which were "based in New

York," *id*. at 268.   The dissent observed that she was "[e]nticed by the array of investment

opportunities in the vaunted commodities markets of the United States." *Id*. at 275.   She entered

into two investment contracts with Thor United and the Group's chief executive officer,

Batratchenko, a U.S. citizen residing in Russia.   "Pursuant to the contracts, Loginovskaya

transferred a total of $720,000 to Thor United's bank accounts in New York," *id*. at 269, and her

claim was based on the loss of those funds.

Plaintiff argued that she acquired an interest in Thor Opti-Max, another member

of the Thor Group, that was transferred in New York.   The Second Circuit disagreed because she

only contracted with Thor United, which in turn held title to the other Thor programs. *Id*. at 274.

The Second Circuit also considered it immaterial that Thor United was incorporated in the

United States. *Id*.   The court held that plaintiff's transfers of funds to Thor's bank account in

New York did not render her purchase domestic because the transfers were "actions needed to

carry out the transactions, and not the transactions themselves—which were previously entered

into when the contracts were executed in Russia." *Id*. at 275.   Finally, the provisions of

plaintiff's contract giving her the right to withdraw the transferred funds from the New York

bank account for 15 days after they were deposited "merely implemented an aspect of a

transaction that was executed in Russia." *Id*.

These decisions are in accord with controlling Supreme Court precedent.   In

*Morrison* itself, the Supreme Court concluded that the purchases of ordinary shares of National

Australia Bank ("NAB") by foreign purchasers occurred entirely outside the United States, 561

U.S. at 273, and therefore would not support a claim under Rule 10b-5, despite allegations that:

- American Depositary Receipts representing a right to receive a certain number of shares were traded on the New York Stock Exchange. *Id*. at 251.

- The misrepresentations on which the claims were based related to a mortgage servicing business located in Florida that had been acquired by NAB. *Id*.

- The misrepresentations included public statements by officers of the mortgage servicer, *id*. at 266, presumably in Florida.

- The misrepresentations resulted from manipulation of the mortgage servicer's financial models by its officers, *id*., presumably in Florida.

In *EEOC v. Arabian American Oil Co.*, 499 U.S. 244 (1991), the Supreme Court affirmed the dismissal of an action for employment discrimination on the ground that Title VII did not apply "extraterritorially to regulate the employment practices of United States employers who employ United States citizens abroad." *Id*. at 246-47, 259. The conduct regulated by the statute was discrimination in employment, and the alleged discrimination on which plaintiff's claim was based occurred while he was employed in Saudi Arabia. *Id*. at 247. The Court affirmed the dismissal of plaintiff's claims even though he was a U.S. citizen, both defendants were Delaware corporations, one defendant was licensed to do business in Texas, the second defendant had its principal place of business in Texas, and the plaintiff was originally hired by the second defendant in Texas. *Id*.

Thus, the controlling decisions of the Supreme Court and the Second Circuit require a narrow focus on factual allegations that are directly relevant to the location of the subsequent transfers to which the Trustee seeks to apply section 550(a)(2). There is no merit to the Trustee's assertion that "post-*Morrison* Second Circuit precedent . . . evaluates connections among the parties, their transactions, and key events related to the United States" and "endorse[s] a holistic factual review." Tr. Mem. 18-19.

Not only is the Trustee's appeal to facts not directly involved in the transfers precluded by the decisions cited above, it is not supported by the cases cited by the Trustee

- 14 -

himself. Indeed, *Mastafa v. Chevron Corp.*, 770 F.3d 170 (2d Cir. 2014) (Tr. Mem. 19 n.80), actually contradicts the Trustee's position. There, the Second Circuit affirmed the dismissal of a claim under the Alien Tort Statute ("ATS") because the complaint did not allege specific conduct either in or "touching and concerning" the United States that would satisfy the requirements for stating a claim under the ATS. *Id.* at 189-194. It did so even though the complaint alleged numerous events in the United States that bore some relationship to the claim. *See id.* at 182-83, 189-91.

Any suggestion that *Parkcentral* reduced a plaintiff's burden of pleading that the conduct which is the focus of the statute was domestic, by allowing the invocation of facts not directly relevant to the location of that conduct (Tr. Mem. 18-20 & nn.79, 81, 86-87), is without merit. In *Parkcentral*, the Second Circuit held that the domestic location of such conduct is necessary, but not sufficient, for a claim pursuant to a statute that has no extraterritorial application. It concluded that even though the claims related to domestic securities transactions, other facts made the proposed application of Rule 10b-5 extraterritorial. 763 F.3d at 215.[9]

The Trustee's invocation of *SEC v. ICP Asset Management, LLC*, No. 10-cv-4791 (LAK), 2012 WL 2359830, at *3 (S.D.N.Y. June 21, 2012) (Tr. Mem. 19 n.81), is equally unavailing. *ICP* involved claims under the Exchange Act, the Securities Act, and the Investment Advisers Act ("IAA"). The court held that the Securities Act claims were subject to the same extraterritoriality analysis as claims under the Exchange Act and applied the Second Circuit's decision in *Absolute Activist* to conclude that the evidence created a plausible inference that the specific purchases and sales on which the claims were based were domestic transactions. *Id.* at

---

[9]     In this motion the defendants rely on the Trustee's failure to satisfy the necessary condition of pleading domestic transfers, and it is not necessary to consider the additional requirements for a permissible domestic claim established by *Parkcentral*.

*2.  As discussed above (pages 10-12), the Trustee's allegations do not satisfy his burden under the test adopted in *Absolute Activist*.  The court concluded that the "focus" of the IAA was "the investment adviser and its actions," not securities transactions, *id.* at *3, and accordingly its discussion of that claim has no relevance to the Trustee's burden of pleading domestic transfers.

In *European Community v. RJR Nabisco, Inc.*, 764 F.3d 129, 141 (2d Cir. 2014) (Tr. Mem. 19 n.80), the Second Circuit held that the territorial application of RICO depends on the territorial scope of the statutes defining the predicate offenses, some of which expressly apply to extraterritorial conduct.  *Id.* at 139.  Its discussion concerning whether the plaintiff had adequately alleged domestic conduct was limited to the allegations concerning predicate offenses under three statutes that it found did not have extraterritorial application:  mail fraud, wire fraud, and violations of the Travel Act.  Its holding that the plaintiff had adequately alleged domestic offenses because they "alleged conduct in the United States that satisfies *every essential element* of the mail fraud, wire fraud, and Travel Act claims," *id.* at 142 (emphasis added), can hardly be said to reduce the Trustee's burden of pleading domestic transfers.

In the same footnote in which the Trustee cites *RJR Nabisco*, he makes clear that his position is inconsistent with *Morrison* because he cites the concurring opinion of Justices Stevens and Ginsburg in that case, while acknowledging that their opinion was "disagreeing with [the] test adopted by the majority." (Tr. Mem. 19 n.80.)  Finally, the case cited by the Trustee as "*Gitlin v. Barclays Bank (In re Maxwell Commc'n Corp.)*, 170 B.R. 800, 809 (Bankr. S.D.N.Y. 1994)" (Tr. Mem. 19 n.81), is the Bankruptcy Court's decision in *Maxwell* 16 years before the Supreme Court decided *Morrison*, and obviously has nothing to do with "post-*Morrison* Second Circuit precedent" (Tr. Mem. 18).

There is likewise no merit to the Trustee's effort to justify his reliance on events preceding or resulting from the transfers based on Justice Rakoff's quotation from the District Court's decision in *Maxwell*: "To determine whether the transfers at issue in this consolidated proceeding occurred extraterritorially, 'the court considers the location of the transfers as well as the component events of those transactions.'"  Tr. Mem. 20 (quoting 513 B.R. at 227 (quoting *Maxwell*, 186 B.R. at 817)).  The Trustee apparently contends that the District Court's reference to "those transactions" refers to something other than the transfers themselves, such as the defendants' investments in the feeder funds.  That contention is mistaken.  The words "those transactions" refer to the only transactions mentioned in the same sentence—the transfers themselves.  The District Court's opinion confirms that it does not refer to the "component events" of anything but the transfers themselves.  Indeed, the quoted language appears at the end of a paragraph which begins:  "A more appropriate analysis of the relevant conduct under § 547 is to consider *all component events of the transfers*."  186 B.R. at 816-17 (emphasis added).[10]

The wide-ranging, "holistic" inquiry advocated by the Trustee is, in fact, no different from the conduct and effects tests that the Second Circuit used prior to the Supreme Court's decision in *Morrison*.  *See, e.g.*, *Norex Petroleum Ltd. v. Access Indus., Inc.*, 631 F.3d 29, 32 (2d Cir. 2010); *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 171 (2d Cir. 2008), *aff'd on other grounds*, 561 U.S. 247 (2010).  The *Morrison* decision rejected that test because it was inconsistent with the Supreme Court's presumption against extraterritoriality and produced unpredictable results.  561 U.S. at 258-59.  Indeed, the Supreme Court made clear how it would

---

[10]   The District Court's decision in *Maxwell* was rendered 14 years before the Supreme Court rejected the Second Circuit's test for determining whether a claim would require an impermissible extraterritorial application of a statute, in *Morrison*.  To the extent the District Court's decision relied on any factors other than the location of the transfers themselves, it has been overruled by *Morrison* and the other decisions of the Supreme Court and the Second Circuit discussed on pages 10-14 above.

view the Trustee's arguments against "a single-factor approach, such as the geographic location

of the transfer" (Tr. Mem. 20):

> There is no more damning indictment of the "'conduct' and
> 'effects'" tests than the Second Circuit's own declaration that "the
> presence or absence of any single factor which was considered
> significant in other cases . . . is not necessarily dispositive in future
> cases."

*Morrison*, 561 U.S. at 258-59 (citation omitted).  Thus, consistent with the decisions of the

Supreme Court and the Second Circuit discussed above, the Trustee can only satisfy his pleading

burden with allegations concerning the transfers themselves.  He has failed to do so.

### B.    NONE OF THE TRUSTEE'S PROPOSED ALLEGATIONS SUPPORT ANY INFERENCE THAT THE TRANSFERS ARE DOMESTIC.

Under the applicable standard established by Judge Rakoff's *Extraterritoriality*

*Decision* and the decisions of the Supreme Court and Second Circuit, none of the Trustee's

proposed amendments create a plausible inference that the transfers he seeks to recover were

domestic.[11]  The Trustee's own characterization of the proposed amendments makes clear that he

is relying on allegations that have nothing to do with the location of the transfers.  Instead, he

argues that his proposed allegations suggest that "Defendants received their subsequent transfers

*because of* substantial and targeted conduct occurring in the United States" and that "the

component events of the transactions *leading to* Defendants' receipt of subsequent transfers are

not purely foreign."  Tr. Mem. 23 (emphasis added).  Under the decisions discussed above, the

reasons for the subsequent transfers and the events leading to those transfers are irrelevant to the

extraterritoriality issue.   The only issue is whether the transfers themselves occurred in the

United States, and none of the Trustee's proffered allegations address this dispositive issue.

---

[11]    As discussed in note 4 above, the Court should dismiss the existing claims to recover
subsequent transfers involving foreign parties in *Picard v. Ceretti* for the same reason.

For example, in the HSBC Action, Adv. No. 09-1364, the proffered Second Amended Complaint alleges that BAWFM, a BVI entity, received subsequent transfers from Alpha Prime, a Bermuda corporation, and Thema International, an Irish company. Prof. Second Am. Compl. ¶¶ 64, 82, 384. There is not a single allegation that any of the transfers to BAWFM were domestic. The Trustee argues that the proffered Second Amended Complaint demonstrates domestic conduct by these Transferee Defendants. Tr. Mem. 22-33. For example, with respect to BAWFM, the Trustee alleges that in its role as investment advisor to Alpha Prime and Thema International, BAWFM "reviewed Madoff's options strategy," "monitored Alpha Prime's investment policies," and "check[ed] the securities prices Madoff reported against the prices Bloomberg reported." Prof. Second Am. Compl. ¶¶ 283, 285, 298, 341, 346. As discussed more fully below in points 5 and 8, these allegations are irrelevant to Judge Rakoff's mandate that the Trustee allege facts that demonstrate a domestic transfer. As the proffered complaint alleges nothing regarding the location of the transfers themselves, it would not meet the pleading burden mandated by Judge Rakoff, and the request to amend must be denied as futile.

The Trustee's Memorandum relies on proposed allegations concerning his own and BLMIS's location plus 19 categories of proposed allegations reflected in the columns in Exhibit 2-A, and described in Exhibit 2-B, to the Trustee's Memorandum. There is no need for the Court to consider anything beyond the Trustee's own descriptions of these allegations because those descriptions make it obvious that none of the allegations relates to the location of the transfers the Trustee seeks to recover. However, some additional reasons why they do not satisfy the Trustee's burden of pleading domestic transfers are outlined below.

## 1.    The Location of BLMIS and the Trustee

The Trustee points to the fact that (1) *he* is a "domestic SIPA trustee," seeking to recover transfers "made by a United States broker-dealer debtor." Tr. Mem. 22. But these

factors are wholly irrelevant because, as Judge Rakoff concluded, the focus of section 550(a) is
"the transfer of property to a subsequent transferee, not the relationship of that property to a
perhaps-distant debtor." 513 B.R. at 227.

Judge Rakoff was obviously aware of the Trustee's and BLMIS's location when
he held that the subsequent transfers in the withdrawn proceedings were not within the territorial
scope of section 550(a)(2).  He rejected arguments by the Trustee that his claims did not involve
an exterritorial application of the Bankruptcy Code because "[t]he Trustee's claims seek to
remedy the wrongful acts of a [domestic] debtor/member broker-dealer in a U.S. liquidation
proceeding."  Trustee's Memorandum of Law in Opposition to Defendants' Motion to Dismiss
12, No. 12-mc-115 (JSR) (S.D.N.Y. Aug. 17, 2012), ECF No. 310.  Instead, Judge Rakoff held
that the focus of the statute is "'the property transferred' and the fact of its transfer, *not the
debtor*."  513 B.R. at 227 (emphasis added). Finally, the Trustee's assertion that this Court
should follow *Maxwell* in considering "the debtor's location" (Tr. Mem. 18) is without merit
because in *Maxwell* it was the debtor that made the transfers.  In contrast, this motion concerns
subsequent transfers, and not transfers made by the debtor.

### 2.    United States Operations of Affiliates of the Feeder Funds (Exhibit 2, Column 1)[12]

Similarly, the Trustee's proposed allegations that the managers of, and services
providers to, the Fairfield, Harley, and Tremont Funds[13] had their principal operations in the
United States (Tr. Mem. Ex. 2, Col. 1)[14] are simply irrelevant, and do nothing to support a

---

[12]   These parentheticals refer to the chart attached to the Trustee's Memorandum as Exhibit 2-A.

[13]   In this memorandum, "Fairfield Funds" refers to Fairfield Sentry, Fairfield Sigma, and
Fairfield Lambda.

[14]   Exhibit 2-A to the Trustee's Memorandum, the Trustee has checked the boxes in this column
for some Transferee Defendants that received transfers from both Fairfield, Tremont, or Harley
Funds and other funds as well.  It appears from the discussion in the Trustee's Memorandum,

plausible inference that their transfers to the defendants occurred in the United States. Not only are the general operations of affiliates of foreign feeder funds not relevant to where the subsequent transfers occurred, but the Trustee also mischaracterizes his own proffered allegations about the operations of those funds.[15]

*First*, Judge Rakoff already considered complaints involving the Harley and foreign Fairfield Funds and found "no plausible inference that the transfer occurred domestically," 513 B.R. at 232 n.4. He specifically cited the CACEIS Complaint as an example, and it asserts claims to recover subsequent transfers by Fairfield Sentry and Harley International (Cayman) Ltd. CACEIS Compl. ¶ 2. Moreover, that complaint alleges that Fairfield Sentry was a "Fairfield Greenwich Group ('FGG') managed Madoff feeder fund" and that CACEIS sent subscription agreements to "FGG's New York City office." CACEIS Compl. ¶ 7. Thus, Judge Rakoff implicitly ruled that the place of operations of a fund's manager is not relevant.

Judge Rakoff's ruling is in line with controlling precedents holding that even if a party's principal operations are in the United States, this does not make a transaction with that party domestic. Indeed, 80 percent of the assets and the principal sources of revenue of Maxwell Communication Corporation, whose transfers the District Court held to be extraterritorial in *Maxwell*, were located in the United States. *Maxwell*, 186 B.R. at 812. In *Loginovskaya* there was no question that the plaintiff was asserting claims based on commodities transactions with an entity based in New York, and the Second Circuit nonetheless affirmed dismissal of those claims based on extraterritoriality. 764 F.3d at 268, 274-75. As the Second Circuit has

---

however, that the Trustee is only making this argument with respect to the transfers from the Fairfield, Tremont and Harley Funds, and not the other funds.

[15]  The Trustee's Memorandum refers to Fairfield and Tremont Funds organized under U.S. law, but this motion does not seek the dismissal of claims to recover any transfers by those funds to the moving transferees.

recognized, "a foreign resident can make a purchase within the United States, and a United States resident can make a purchase outside the United States." *Absolute Activist*, 677 F.3d at 69 (quoting *Plumbers' Union Local No. 12 Pension Fund*, 753 F. Supp. 2d at 178).

In a recent decision that cited and relied on Judge Rakoff's decision and the District Court's decision in *Maxwell*, the Bankruptcy Court for the Middle District of Florida dismissed avoidance claims on the ground that the transfers were extraterritorial even though the debtor's principal "lived in the United States and directed [the debtor's] business with [the transferees] from his Florida home." *Sherwood Inv. Overseas Limited, Inc. v. Royal Bank of Scotland (In re Sherwood Inv. Overseas Limited, Inc.)*, No. 6:10-ap-158-KSJ, 2015 WL 4486470, at *20 (Bankr. M.D. Fla. July 22, 2015).

*Second*, even if the place of operation of the foreign feeder funds' affiliated entities and individuals were relevant, the Trustee misstates his own allegations concerning the supposed domestic operations of those funds. For example, Fairfield Sentry's investment manager during the relevant period was initially Fairfield Greenwich Ltd., a company organized in the Cayman Islands, until 2003, and then Fairfield Greenwich (Bermuda) Ltd., a company organized in Bermuda with key employees, including its head of risk management, based in Bermuda. Amended Complaint ¶¶ 122, 125 & Ex. 25, *Picard v. Fairfield Sentry Ltd*, Adv. No. 09-1239 (SMB) (Bankr. S.D.N.Y. July 20, 2010), ECF No. 23. Other key service providers for Fairfield Sentry were organized and located abroad, including its administrator, custodian bank, depository, auditor, placement agent, registrar, and transfer agent. *See* Private Placement Memorandum of Fairfield Sentry Limited, as of August 14, 2006 ("Fairfield Private Placement Memorandum"), at "Fund Directory" (Ex. 1 to Supplemental Declaration of Thomas L. Long in

Support of Trustee's Sur-Reply, *Picard v. Bureau of Labor Insurance*, No. 11-2732 (SMB) (Bankr. S.D.N.Y. July 16, 2012), ECF No. 46-1 ("Long Declaration")).

*Third*, the Trustee's contention that the foreign feeder funds' relationship with their home jurisdiction is limited to a "post office box" or "the address of an international law firm" (Tr. Mem. 24-25) is incorrect as a matter of law. The law of the jurisdiction where a business entity is organized controls the relationship between the entity and its members or shareholders, the articles of incorporation or other organizational documents, and the duties of its directors. *See, e.g.*, *Fairfield Sentry Ltd. (in Liquidation) v. Migani*, [2014] UKPC 9, 2014 WL 1219748 (appeal taken from the BVI); Restatement (Third) of Foreign Relations Law § 213 (1987). Because the law of the place of incorporation controls the directors' duties in the event of the entity's insolvency, it is normally also the jurisdiction in which the primary insolvency proceeding for the entity will be commenced.

### 3.   New York Choice of Law and Venue Provisions in Subscription Agreements (Exhibit 2, Columns 2-3)

The Trustee's allegations that subscription agreements for some of the foreign feeder funds were governed by New York law, or designate New York courts for resolution of disputes arising from those agreements (Tr. Mem. 12, 25), are likewise irrelevant. These provisions do not speak to the location of the subsequent transfers that were made as a result of redemptions by the foreign feeder funds, and they do not purport to suggest that section 550(a) would apply to those transfers. Moreover, "looking to the subjective intent of foreign investors to determine whether the [statute] applies is clearly contrary to *Morrison*." *In re Banco Santander Securities—Optimal Litig.*, 732 F. Supp. 2d 1305, 1317 (S.D. Fla. 2010), *aff'd*, 439 F. App'x 840 (11th Cir. 2011).

- 23 -

In the *Extraterritoriality Decision*, Judge Rakoff considered complaints in which the Trustee alleged that the Transferee Defendants had submitted to New York law or jurisdiction in feeder fund subscription agreements, and did not find those allegations to be relevant.  He specifically cited the CACEIS Complaint, which alleged that CACEIS "entered, or caused their agent to enter into, subscription agreements with Fairfield Sentry under which they submitted to New York jurisdiction."  CACEIS Compl. ¶ 7.  The Trustee's assertion that Judge Rakoff "overlooked" this allegation (Tr. Mem. 22 n. 93) should be rejected, particularly in light of the fact that he made the CACEIS Complaint the centerpiece of his explanation of why the Trustee was seeking to recover extraterritorial transfers.  *See Ferrand v. Credit Lyonnais*, 292 F. Supp. 2d 518, 521-22 (S.D.N.Y. 2003) ("that the Court did not specifically reference every factual detail or incident . . . does not necessarily establish that the Court did not consider that particular matter").

When Judge Rakoff observed, in the context of his comity analysis, that "investors in these foreign funds had no reason to expect that U.S. law would apply to their relationships with the feeder funds," *Extraterritoriality Decision*, 513 B.R. at 232, he was not overlooking the provisions of the subscription agreements providing that disputes relating to those agreements would be governed by New York law.  He was referring instead to the law relevant to the claims that are the subject of this motion, pointing out that the Transferee Defendants had no reason to think that New York law would govern either insolvency proceedings for foreign investment funds or their shareholders' rights with respect to redemptions.  Indeed, the Privy Council has since confirmed, in an appeal arising from Fairfield Sentry's insolvency proceeding in the BVI, that Fairfield Sentry's subscription agreements have

- 24 -

no bearing on a member's right to receive and retain redemptions. *Migani*, [2014] UKPC 9, ¶ 10, 2014 WL 1219748.

### 4.    Knowledge that Feeder Funds Invested in the United States (Exhibit 2, Columns 4-7)

The Trustee attempts to describe this as four separate factors, but they all boil down to the assertion that the defendants knew (1) that the feeder funds used the money invested with them to invest with BLMIS in the United States and (2) the money used to make the subsequent transfers had been invested or held in custody in the United States.[16]    Such allegations have no relevance to whether the subsequent transfers that the Trustee seeks to recover occurred in the United States.    The Second Circuit made this clear in *Loginovskaya* when it held that the plaintiff's investments in New-York-based commodity pools took place outside the United States even though she wired money to New York and was, in the words of the dissenting opinion, "[e]nticed by the array of investment opportunities in the vaunted commodities markets of the United States."    764 F.3d at 275.    Moreover, the District Court held in *Maxwell* that the transfers at issue were extraterritorial even though Maxwell Communication used the loans that were repaid to purchase businesses in the United States, presumably with the lenders' knowledge, and the transfers were made with proceeds of assets in the United States. *Maxwell*, 186 B.R. 812-14.

---

[16]    *See* Tr. Mem. Exs. 2-A and 2-B, Description of Columns 4-7, which identify the following factors: (1) A "United States investment adviser was disclosed to Defendant, including disclosures—formal or informal—that BLMIS was the investment adviser or that assets were invested by a New York investment adviser;" (2) "Defendant knew that the assets used to make the transfers or form the basis of the transactions were custodied in the United States;" (3) "Defendant knew that the assets used to make the transfers or form the basis of the transactions were managed, custodied, and/or invested by BLMIS;" and (4) "Defendant knew the assets used to make the transfer or form the basis of the transactions were purportedly invested in U.S. equities, options, and/or Treasurys."

Judge Rakoff gave no weight to these factors in the *Extraterritoriality Decision*, despite the fact that the CACEIS Complaint that he used as his exemplar contains similar allegations. CACEIS Compl. ¶ 6 (stating that CACEIS "knowingly direct[ed] funds to be invested with New York-based BLMIS through the Feeder Funds" and "knowingly received subsequent transfers from BLMIS by withdrawing money from the Feeder Funds.").[17] As Judge Rakoff explained, "under Morrison, the transaction being regulated by section 550(a)(2) is the transfer of property to a subsequent transferee, not the relationship of that property to a perhaps-distant debtor." *Extraterritoriality Decision*, 513 B.R. at 227.

### 5.    Due Diligence (Exhibit 2, Columns 8-9)

The Trustee's allegations that the Transferee "Defendant[s] conducted due diligence in the United States" or "conducted due diligence on BLMIS" (Tr. Mem. 30, Exs. 2-A and 2-B, Column 8-9) do not support any inference that the transfers he seeks to recover, made long after that due diligence, occurred in the United States. As Judge Rakoff recognized in citing *Morrison*, foreign transfers are not considered domestic simply because "a significant portion of the fraudulent conduct occurred in the United States," *Extraterritoriality Decision*, 513 B.R. at 228, including BLMIS's deception of indirect investors who conducted due diligence before

---

[17]    There is no merit to the Trustee's attempt to bolster his argument regarding the Transferee Defendants' alleged knowledge of where the funds were invested by referring to Judge Lifland's ruling in *Picard* v. *Bureau of Labor Insurance*, 480 B.R. 501 (Bankr. S.D.N.Y. 2012) (Tr. Mem. 11-12, 32). Judge Lifland's decision was only applicable to the defendant in that proceeding and not to any of the moving parties here. In the passages cited by the Trustee, Judge Lifland was explaining his holding that BLI was subject to the Court's personal jurisdiction, and he never said these factors were relevant to the extraterritoriality issue. *See id.* at 513. Of course, the fact that a defendant is subject to personal jurisdiction in the United States does not mean that the claims against that defendant involve a permissible domestic application of a statute. *See Absolute Activist*, 677 F.3d at 69. Judge Rakoff was aware of Judge Lifland's ruling, which he cited four times in a decision concerning a different issue, *see SIPC v. Bernard L. Madoff Investment Securities LLC*, 501 B.R. 26, 32, 35-36 (S.D.N.Y. 2013), and he never mentioned it in his subsequent *Extraterritoriality Decision*.

investing in foreign feeder funds. At most, the Transferee Defendants' due diligence contributed to their mistaken belief that the foreign feeder funds would invest in the U.S. securities markets through accounts at BLMIS. As set forth in the preceding section, this knowledge is irrelevant to the location of the transfers.

### 6. Use of United States Affiliates, Agents, or Offices (Exhibit 2, Columns 10-11, 19)

The Trustee's allegations relating to the Transferee Defendants' use of affiliates, offices, and agents in the United States, none of which are alleged to have actually received any of the transfers the Trustee seeks to recover (*see* Tr. Mem. Exs. 2-A and 2-B, Columns 10-11, 19), do not support any inference that those transfers were domestic. The Trustee's Memorandum does not assert that these affiliates, offices, or agents participated in the transfers at issue.

The Trustee perfunctorily indicates that, for some of the Transferee Defendants, a U.S. affiliate or agent was used "in connection with the transfers or transactions at issue," or that a U.S. office was used "in connection with transaction." *See* Tr. Mem. Ex. 2-B, Description of Columns 10-11, 19. However, the Trustee's description of what he means by "us[ing] a U.S. agent in connection with the transfers or transactions at issue" reveals that it means nothing more than using an agent in the United States "to conduct due diligence, meet with Feeder Fund representatives, execute agreements, or otherwise provide services for, or on behalf, of the Defendant." Tr. Mem. Ex. 2-B, Description of Column 11. Although such conduct may relate to the Transferee Defendants' investments in the feeder funds, they do not address the location of the subsequent transfers the Trustee seeks to recover.

Even if the Trustee alleged that a Transferee's domestic "affiliate," "office," or "agent" participated in the transfers, this would not create an inference that the transfers were

domestic.  In *Maxwell*, the District Court held that the transfers occurred outside the United

States even though the transfers to one of the defendants, Barclays, were made to Barclays' New

York branch.  *See* 186 B.R. at 817 n.5.  The complaint that Judge Rakoff specifically discussed

in his *Extraterritoriality Decision* contained an allegation that "the CACEIS Defendants are part

of the CACEIS Group, which maintains an office in New York City" (CACEIS Compl. ¶ 7), but

Judge Rakoff did not consider that allegation to be relevant to his analysis of whether transfers to

CACEIS were domestic.

### 7.   Use of United States Bank Accounts (Exhibit 2, Column 12)

The Trustee's allegations that most of the Transferee Defendants used U.S. bank

accounts, including correspondent bank accounts, to receive redemption payments from the

foreign feeder funds  (Tr. Mem. Ex. 2-B, Description of Column 12) does not create an inference

that the transfers were domestic.  Judge Rakoff specifically considered this fact and held that the

use of "correspondent banks in the United States to process dollar-denominated transfers" is not

"sufficient to make these foreign transfers domestic."  513 B.R. at 228 n.1.

Judge Rakoff's ruling is not limited to correspondent banks.   Indeed, in the

*Maxwell* decision that Judge Rakoff cites, the District Court held that the transfers to one of the

defendants, Barclays, were extraterritorial although they were made to Barclays' own New York

branch.   186 B.R. at 817 n.5.   Judge Rakoff's holding concerning U.S. bank accounts was

supported with a citation to *Cedeno v. Intech Group, Inc.*, 733 F. Supp. 2d 471 (S.D.N.Y. 2010),

*aff'd*, 457 Fed. Appx. 35 (2d Cir. 2012), and he quoted that opinion as holding that a proposed

application of RICO was impermissibly extraterritorial because "[t]he scheme's contacts with the

United States . . . were limited to the movement of funds into and out of U.S.-based bank

accounts." 513 B.R. at 228 n.1.[18]  Nothing in the *Cedeno* opinion suggests that the accounts in question were correspondent accounts.  Elsewhere in the *Extraterritoriality Decision* Judge Rakoff quoted the decision in *In re Midland Euro Exchange Inc.*, 347 B.R. 708, 717 (Bankr. C.D. Cal. 2006), as noting the parties' agreement that the claims in that case would require an extraterritorial application of section 548 although the transferred funds were "transferred through a bank account in New York."  513 B.R. at 227-28.  The transfer in *Midland*, like the transfer to Barclays in *Maxwell*, was made to the defendant's own account in New York. *Midland*, 347 B.R. at 713.

The Trustee's further contention that the use of a U.S. bank account "may be considered with other component events surrounding the transfers as a relevant factor" (Tr. Mem. 22) finds no support in Judge Rakoff's *Extraterritoriality Decision*, or in the cases on which the Trustee relies.  All of the cases cited by the Trustee involved an assessment of personal jurisdiction under New York's long-arm statute, an entirely different analysis that looks to whether a party has purposefully availed itself of the privilege of doing business in New York.[19]

---

[18]    Similarly, in *Norex Petroleum Ltd. v. Access Industries, Inc.*, where the Second Circuit held that "the slim contacts with the United States alleged by Norex are insufficient to support extraterritorial application of the RICO statute," 631 F.3d at 33, the District Court's opinion shows that the "slim contacts" included the fact that defendant wired funds that were used for the allegedly illegal activity through banks in the United States. *See Norex Petroleum Ltd. v. Access Indus., Inc.*, 540 F. Supp. 2d 438, 444 (S.D.N.Y. 2007), *aff'd*, 631 F.3d 29 (2d Cir. 2010).

[19]    *See In re Bernard L. Madoff Inv. Sec. LLC*, 525 B.R. 871, 886 (S.D.N.Y. 2015) (Tr. Mem. 22, 37); *Licci v. Lebanese Canadian Bank*, 732 F.3d 161, 171 (2d Cir. 2013) (Tr. Mem. 22); *Steinberg* v. *Barclay's Nominees (Branches) Ltd.*, No. 04-60897-cv, 2008 WL 4601042, at *6 (S.D. Fl. Sept. 30, 2008) (Tr. Mem. 22).

8.     **The Transferee Defendants' General "Relationship"
with Feeder Funds' United States Office, Employees, or
Other Representatives (Exhibit 2, Column 13)**

The table at the end of the Trustee's Memorandum indicates that he proposes to
make allegations that certain Transferee Defendants' "relationship[s] with Feeder Fund[s] had
significant U.S. connections by virtue of the Defendant[s'] communications with specific Feeder
Fund offices, sales representatives, agents, employees, and/or other representatives located in the
U.S." Tr. Mem. Ex. 2-B, Description of Column 13.  However, the Trustee's Memorandum does
not even attempt to explain how these "relationships" create any plausible inference that the
relevant transfers were domestic.  Indeed, there is no indication that the "communications" had
anything to do with the transfers.

9.     **Fees Based on BLMIS's Performance or Paid Using
BLMIS Customer Property (Exhibit 2, Column 14)**

The Trustee contends that certain Transferee Defendants received "[f]ees paid to
Service Provider and Management Defendants that were based on BLMIS's performance and/or
paid using BLMIS customer property" and therefore should be deemed domestic transactions.
Tr. Mem. Ex. 2-B, Description of Column 14; Tr. Mem. 31.  However, this is an allegation that
the Trustee could make with respect to *every* redemption payment from the foreign feeder funds,
because the amount of those payments was ultimately based on BLMIS's reported performance,
as reflected in each fund's Net Asset Value, and the Trustee's right to recover the payments
depends on showing that they were paid using BLMIS customer money.  As set forth above,
Judge Rakoff ruled that the fact that payments originated with BLMIS in New York did not
make the subsequent transfers from foreign feeder funds to the foreign Transferee Defendants
domestic.  513 B.R. at 228.  This holding applies equally to any fees paid to the Service Provider
or Management Defendants.

### 10.    Incentive Fees (Exhibit 2, Column 15)

As explained in Exhibit 2-B, the checkmarks in column 15 of Exhibit 2 are supposed to refer to proposed allegations concerning "Fees paid to Shareholder Defendants by the Feeder Funds and/or their management as incentives to invest with specific Feeder Fund or solicit others to invest in the fund." The Trustee's Memorandum does not offer any explanation of why such fees are relevant to the location of the transfers the Trustee seeks to recover, and they manifestly are not.

### 11.    Affiliation With a Feeder Fund (Exhibit 2, Column 16)

As explained in Exhibit 2-B, the checkmarks in column 16 of Exhibit 2 are supposed to refer to proposed allegations that the respective "Defendant participated in Feeder Fund management, and/or is an entity created by, or for the benefit of, Feeder Fund management." As described, these allegations do not refer to the location of *any* event, let alone to the location of the transfers, which is the only relevant issue. The Trustee's Memorandum makes no effort to explain how these allegations could be relevant to the location of the transfers, and they are not.[20]

---

[20]    The Trustee's assertion (Tr. Mem. 30) that:

> The Management and Service Provider Defendants were sophisticated agents of the Feeder Funds, who could not operate solely abroad and facilitate purely foreign transfers when the Feeder Funds' entire business revolved around BLMIS in New York

simply repeats the theory that the transfers came from Funds with their principal operations in the United States, which is discussed above. In addition, allegations that a defendant "could not operate solely abroad" or facilitate "purely foreign transfers" fail to create a plausible inference that any transfer was domestic because the Supreme Court and Second Circuit have made clear repeatedly that incidental connections with the United States are not enough to make conduct domestic for purposes of an extraterritoriality analysis. *See* section II(A)(2), *supra*.

### 12.    Claims and Defenses in the BLMIS Liquidation
### (Exhibit 2, Column 17)

Incredibly, the Trustee asserts that the fact that certain Transferee Defendants filed customer claims in the BLMIS liquidation, asserted defenses under section 546(e) of the Bankruptcy Code, or asserted that the Securities Litigation Uniform Standards Act ("SLUSA") precludes certain state law claims, should somehow preclude them from maintaining that the transfers they allegedly received were foreign.   The Trustee cites no authority for this proposition, and there is none.   All such alleged conduct occurred after the transfers that the Trustee seeks to recover and cannot possibly create any inference concerning the location of those transfers.

Unlike objections to personal jurisdiction or venue, which can be waived by a party's litigation conduct, *see* Fed. R. Bankr. P. 7012(b); Fed. R. Civ. P. 12(h)(1), a defense based on the presumption against extraterritoriality is addressed to the merits.   *Morrison*, 561 U.S. at 254 ("But to ask what conduct § 10(b) reaches is to ask what conduct § 10(b) prohibits, which is a merits question.").   These motions to dismiss based on extraterritoriality are motions to dismiss for failure to state a claim, and such a defense may be raised at any time.   *See* Fed. R. Bankr. P. 7012(b); Fed. R. Civ. P. 12(h)(2).   Moreover, a defendant may set out defenses alternatively and may raise "as many separate [. . .] defenses as it has, *regardless of consistency*." Fed. R. Bankr. P. 7008(a); Fed. R. Civ. P. 8(d)(2)-(3) (emphasis added); *see also Henry v. Daytop Village*, 42 F.3d 89, 95 (2d Cir. 1994).

Finally, the Transferee Defendants have not "invoked" SLUSA to "safeguard the transfers" (Tr. Mem. 14) because SLUSA has nothing to do with a claim under section 550(a)(2). Rather, SLUSA precludes certain class actions asserting state law claims that are predicated on

allegations of misleading conduct by a defendant in connection with the purchase or sale of

"covered securities." *In re Kingate Mgmt. Ltd. Litig.*, 784 F.3d 128, 140 (2d Cir. 2015).[21]

### 13. Defendants are United States Citizens
### (Exhibit 2, Column 18)

As discussed above, this allegation relating to five individual defendants is

irrelevant for the reasons stated in the supplemental memorandum submitted on their behalf.

\*       \*       \*       \*

Because none of the Trustee's proffered allegations creates a plausible inference

that the transfers subject to this motion were domestic, his motion for leave to amend should be

denied.

### III.   THE TRUSTEE'S CLAIMS SHOULD BE DISMISSED, AND
### HIS MOTION TO AMEND SHOULD BE DENIED, BASED
### ON COMITY.

The Trustee's argument concerning comity is primarily an argument that Judge

Rakoff's decision was wrong.  He can present that argument to the Second Circuit in due course,

and he could have moved for reargument before Judge Rakoff if he wanted a further opportunity

to litigate the comity issue.[22]   The argument is foreclosed for purposes of the present

---

[21]   The Trustee cites *In re Kingate Management Ltd. Litigation*, 784 F.3d at 135 (Tr. Mem. 14, 32), but that was a securities class action by feeder fund investors rather than a claim to recover transfers under the Bankruptcy Code.  The Trustee also cites an answer filed by BLI (Tr. Mem. 14), but BLI is not one of the Transferee Defendants.

[22]   The Trustee's assertion that in the proceedings before Judge Rakoff, "[t]he first time the Defendants raised the issue [of comity] was in their reply" (Tr. Mem. 6 n.13) is misleading.  The defendants cited the Second Circuit's comity decision in *Maxwell* in their opening brief in support of their contention that the statutory provisions on which the Trustee relies do not apply extraterritorially.  Consolidated Memorandum of Law in Support of Extraterritorial Defendants' Motion to Dismiss 9, 12, 19 n.17, No. 12-mc-115 (JSR) (July 13, 2012), ECF No. 235.  SIPA's memorandum in opposition to the motion devoted the entire third section of its argument to comity, observing that "the Defendants invoke the doctrine of international comity." Memorandum of Law of the SIPC in Opposition to the Extraterritorial Defendants' Motion to Dismiss 23-25, No. 12-mc-115 (JSR) (Aug. 17, 2012), ECF No. 309.   The Trustee's

proceedings, however.  Judge Rakoff's decision governs the adversary proceedings that were

before him pursuant to his order returning them to this Court, and it governs the additional

proceedings subject to this consolidated motion because it is law of the case as applicable to the

Trustee and those proceedings are indistinguishable from the proceedings considered by Judge

Rakoff.  In any event, the Trustee's attack on Judge Rakoff's decision is based on a fundamental

misunderstanding of the law of comity and is completely without merit.

> **A.    JUDGE RAKOFF'S RULING ON COMITY REQUIRES
> DISMISSAL OF ALL THE COMPLAINTS SUBJECT TO
> THIS MOTION AND MAKES THE PROPOSED
> AMENDMENTS FUTILE.**

As shown in Defendants' Supplemental Memorandum, Judge Rakoff

unequivocally held that comity requires the dismissal of the proceedings that were before him.

513 B.R. at 232. He based this conclusion on the following observations, which were quoted in

full in the Defendants' Supplemental Memorandum but are repeated here for the Court's

convenience:

> As is the case with Fairfield Sentry and Harley, many of the feeder
> funds are currently involved in their own liquidation proceedings
> in their home countries. These foreign jurisdictions have their own
> rules concerning on what bases the recipient of a transfer from a
> debtor should be required to disgorge it. *See, e.g., In re Fairfield
> Sentry Ltd. Litig.*, 458 B.R. 665, 672 (S.D.N.Y. 2011) (noting that
> the foreign representative of Fairfield Sentry's estate had filed
> against its investors "statutory claims under BVI law for 'unfair
> preferences' and 'undervalue transactions'"). Indeed, the BVI
> courts have already determined that Fairfield Sentry could not
> reclaim transfers made to its customers under certain common-law
> theories—a determination in conflict with what the Trustee seeks
> to accomplish here.
>
> The Trustee is seeking to use SIPA to reach around such foreign
> liquidations in order to make claims to assets on behalf of the SIPA

---

memorandum in opposition devoted two long footnotes to responding to the comity argument.
Trustee's Memorandum of Law in Opposition  to Defendants' Motion to Dismiss Concerning
Extraterritoriality 15 n.16, 16 n.17, No. 12-mc-115 (JSR) (Aug. 17, 2012), ECF No. 310.

customer-property estate—a specialized estate created solely by a U.S. statute, with which the defendants here have no direct relationship. Without any agreement to the contrary (which the Trustee does not suggest exists), investors in these foreign funds had no reason to expect that U.S. law would apply to their relationships with the feeder funds.

513 B.R. at 232 (citations omitted).

These observations apply to the complaints in the additional proceedings subject to this motion that were not before Judge Rakoff, and they would apply to the amended complaints that the Trustee seeks permission to file. Judge Rakoff did not say that all the feeder funds are subject to foreign insolvency proceedings, only that many of them are. As shown in the boldfaced entries in Appendix A to the Opening Memorandum, this generalization is true of all the proceedings subject to this motion. Moreover, as shown in the Exhibits to the Scheduling Order, most of the additional adversary proceedings involve transfers by the same feeder funds that made the transfers at issue before Judge Rakoff and are now subject to foreign insolvency proceedings.

Nothing in the proposed amended complaints would change the facts on which Judge Rakoff based his decision. There is no basis for arguing that the choice of law provision in the Fairfield subscription agreements is inconsistent with Judge Rakoff's observation that the investors had no reason to expect U.S. law to apply. The CACEIS Complaint that Judge Rakoff used to illustrate the Trustee's allegations asserted that CACEIS "knowingly accepted the rights, benefits, and privileges of conducting business and/or transactions in the United States and New York" and "entered, or caused their agent to enter, into subscription agreements with Fairfield Sentry under which they submitted to New York jurisdiction." CACEIS Compl. ¶ 7. The Trustee's speculation that Judge Rakoff simply overlooked this allegation (Tr. Mem. 22 n. 93) is unfounded. To the contrary, Judge Rakoff necessarily recognized that designating New York

- 35 -

contract law to govern the subscription agreement had no effect on what insolvency law would govern claims to recover redemptions. In the passage quoted above, Judge Rakoff referred to a decision of the BVI court which applied BVI law to hold that Fairfield's liquidators could not recover redemption payments under certain theories. Since Judge Rakoff's decision, the Privy Council has confirmed that Fairfield's subscription agreements have no bearing on a fund participant's right to receive and retain redemptions. *Migani*, [2014] UKPC 9, 2014 WL 1219748. The Privy Council emphasized that Fairfield Sentry's Articles of Association control a subscriber's right to receive and retain a redemption payment and that those provisions are governed by BVI law. *Id.* ¶ 20.

Finally, there is no merit to the Trustee's assertion that Judge Rakoff's "alternative rationale of comity is not implicated" if this Court concludes that "the transfers are not foreign but sufficiently domestic to apply United States law" (Tr. Mem. 33). As Judge Rakoff recognized, 513 B.R. at 231, international comity may require dismissal of claims even if those claims are not barred on grounds of extraterritoriality. *See Romero v. Int'l Terminal Operating Co.*, 358 U.S. 354, 382-83 (1959); *In re Maxwell Communication Corp.*, 93 F. 3d 1036, 1047 (2d Cir. 1996). The "foreignness" that Judge Rakoff considered relevant to his application of comity is set out in the quotation above: It is the fact that many of the transferors are subject to foreign insolvency proceedings and that the foreign jurisdictions have their own rules concerning what payments by those transferors can be recovered. The Trustee's arguments that the transfers are domestic could not change those facts.

### B. THE TRUSTEE IS MISTAKEN CONCERNING THE APPLICABLE PRINCIPLES OF COMITY.

Even if this Court could reconsider Judge Rakoff's ruling on comity, the Trustee's arguments that Judge Rakoff erred are completely without merit because they are based on legal

principles that do not apply to his decision. International comity involves two separate doctrines: Comity of the courts relates to when a court will abstain from hearing a case in deference to a parallel foreign proceeding, while comity of nations determines when courts will decline to apply U.S. law in deference to the law of other countries. *See, e.g., Bigio v. Coca-Cola Co.*, 448 F.3d 176, 178 (2d Cir. 2006). The Trustee's arguments are based on the principles of comity of the courts, and are simply irrelevant to Judge Rakoff's decision because it was based on comity of nations.

The Trustee argues that the defendants have failed to satisfy two requirements for abstention set forth in *Royal and Sun Alliance Ins. Co. of Canada v. Century Int'l Arms, Inc.*, 466 F.3d 88 (2d Cir. 2006). Tr. Mem. 34. That decision addressed the standards for determining whether to abstain from hearing a case in deference to a parallel foreign proceeding, based on "comity of the courts," and expressly recognized the distinction between this form of comity and comity of nations. *See id.* at 92.

The Second Circuit recognized the importance of the distinction in an opinion written by Judge Rakoff himself. In *Bigio*, the court reversed the District Court because it had mistakenly applied the standards applicable to comity of nations rather than the standards applicable to comity of the courts. After observing that "the district court applied the seven-factor test articulated in *Timberlane*,"[23] Judge Rakoff, sitting by designation, explained:

> That test is used to determine whether a court should apply United States law extraterritorially, . . . , but that is not in issue here. Rather, the only issue of international comity properly raised here is whether adjudication of this case by a United States court would offend "amicable working relationships" with Egypt. *JP Morgan Chase Bank v. Altos Hornos de Mex., S.A. de C.V.*, 412 F.3d 418, 423 (2d Cir. 2005). *Cf. In re Maxwell Comm. Corp.*, 93 F.3d 1036, 1047 (2d Cir. 1996) ("We realize that 'international comity' may

---

[23]    *Timberlane Lumber Co. v. Bank of America*, 749 F.2d 1378 (9th Cir. 1984).

- 37 -

describe two distinct doctrines: as a canon of construction, it might shorten the reach of a statute; second, it may be viewed as a discretionary act of deference by a national court to decline to exercise jurisdiction in a case properly adjudicated in a foreign state, the so-called comity among courts.").

*Bigio*, 448 F.3d at 178; *see also United Feature Syndicate, Inc. v. Miller Features Syndicate, Inc.*, 216 F. Supp. 2d 198, 210 (S.D.N.Y. 2002) (comity of nations governs "whether U.S. statutes should be applied extraterritorially in the face of potential conflicts with the laws of other countries," while comity of the courts governs "whether to abstain from exercising jurisdiction out of deference to parallel proceedings pending in other countries").

In the *Extraterritoriality Decision*, Judge Rakoff applied comity of nations. He engaged in a "choice-of-law analysis to determine whether the application of U.S. law would be reasonable under the circumstances, comparing the interests of the United States and the relevant foreign state." 513 B.R. at 231 (citing *Maxwell*, 93 F.3d at 1047-48). The test applied by Judge Rakoff is completely different from the doctrine of comity of the courts, pursuant to which "abstention is appropriate where there are parallel proceedings, the alternate forum for the claim is 'adequate,' and there are 'additional circumstances that outweigh the district court's general obligation to exercise its jurisdiction.'" *Freund v. Republic of France*, 592 F. Supp. 2d 540, 565-66 (S.D.N.Y. 2008) (quoting *Royal and Sun Alliance*, 466 F.3d at 94-95).

Thus there is no merit to the Trustee's arguments that Judge Rakoff's comity decision was erroneous based on the absence of parallel foreign proceedings. Tr. Mem. 34-36. In some contexts the application of comity of the courts may depend on the existence of parallel foreign legal proceedings,[24] but comity of nations is not subject to any such requirement. Rather,

---

[24]  The Trustee is mistaken in asserting that comity of the courts requires not only parallel foreign bankruptcy proceedings, but also the simultaneous assertion of the *same claims* in each proceeding. Tr. Mem. 34-35. While courts apply these requirements to some types of foreign legal proceedings, they give broad deference to foreign *bankruptcy* proceedings, regardless of

comity of nations is a "component of choice-of-law theory" reflecting "the respect sovereign

nations afford each other by limiting the reach of their laws." *See Hartford Fire Ins. Co. v.

California*, 509 U.S. 764, 817 (1993) (Scalia, J., dissenting). Although Judge Rakoff referred to

the fact that many of the foreign transferors are subject to foreign insolvency proceedings as a

relevant factor, he did so as part of his analysis of whether foreign jurisdictions have a greater

interest than the United States in applying their own laws to the transfers at issue, and concluded

that they did. "Given the indirect relationship between Madoff Securities and the transfers at

issue here, these foreign jurisdictions have a greater interest in applying their own laws than does

the United States." 513 B.R. at 232.[25]

The Trustee presents no argument that Judge Rakoff erred in his application of the

comity of nations[26] or as to why comity of nations should not apply here. Instead, the Trustee

---

whether there is any specific overlap between claims brought in the United States and claims in
the foreign proceeding. *See, e.g.*, *Altos Hornos*, 412 F.3d 418, 424 ("We have repeatedly held
that U.S. courts should ordinarily decline to adjudicate creditor claims that are the subject of a
foreign bankruptcy proceeding."); *United Feature Syndicate*, 216 F. Supp. 2d at 211 ("In the
bankruptcy context, abstaining from exercising jurisdiction on the basis of comity can be
particularly appropriate, since '[t]he equitable and orderly distribution of a debtor's property
requires assembling all claims against the limited assets in a single proceeding.'") (citations
omitted).

[25]   This is true even for those feeder funds that are not currently subject to foreign insolvency
proceedings because, as a practical matter, the Trustee would not need to recover anything from
the Transferee Defendants if he were able to recover the full amount of the allegedly voidable
transfers from the initial transferees. To the extent the Trustee is actually able to avoid an initial
transfer, then either he will recover the transferred funds from the initial transferee or the initial
transferee will commence insolvency proceedings if it has not already done so. Thus, the
Trustee's attempt to recover *subsequent* transfers will always conflict with foreign laws
governing the rights of creditors and transferees of an insolvent foreign entity.

[26]   The Trustee makes a passing assertion that there is no true conflict between section 550(a)(2)
and foreign law (Tr. Mem. 35), but he provides no support for this contention and it is without
merit. In contrast with other contexts in which a true conflict exists only when it is impossible to
comply with both U.S. and foreign law, in the insolvency context the Second Circuit has held
that a true conflict exists whenever foreign insolvency law would result in a different distribution
of the estate than U.S. bankruptcy law. *See Maxwell*, 93 F.3d at 1050. Judge Rakoff identified
two sources of "true conflict" that justify the application of comity. First, he pointed to the

ignores the very existence of the comity of nations doctrine and faults the Defendants for failing to satisfy the requirements set forth in cases that explicitly apply the distinct, and irrelevant, doctrine of comity of the courts.  Tr. Mem. 33 n. 128 (citing *Allstate Life Ins. Co. v. Linter Group Ltd.*, 994 F. 2d 996, 999 (2d Cir. 1993)); Tr. Mem. 34 n. 132 (citing *Ace Arts, LLC v. Sony/ATV Music Pub., LLC*, 56 F. Supp. 3d 436, 444-445 (S.D.N.Y. 2014) and *Tarazi v. Truehope, Inc.*, 958 F. Supp. 2d 428, 435 (S.D.N.Y. 2013)).  Accordingly, the Trustee has not suggested any colorable basis for not dismissing all the claims subject to this consolidated motion, and denying the Trustee's motion to amend, based on the alternate ground of comity.

## CONCLUSION

For the reasons stated above and in the Opening Memorandum, the claims listed in the Exhibits to the Scheduling Order should be dismissed with prejudice and the Trustee's motion to amend should be denied.

Dated:    New York, New York
            September 30, 2015

                                   **SULLIVAN & CROMWELL LLP**

                                   /s/ Robinson B. Lacy
                                   Robinson B. Lacy
                                   (lacyr@sullcrom.com)

                                   125 Broad Street
                                   New York, New York 10004
                                   (212) 558-4000

---

substantive conflicts between U.S. and foreign rules for recovering transfers made by the feeder funds.  513 B.R. at 232 ("Indeed, the BVI courts have already determined that Fairfield Sentry could not reclaim transfers made to its customers under certain common-law theories—a determination in conflict with what the Trustee seeks to accomplish here.")  Second, he pointed to the conflict created by the Trustee's attempt to circumvent the foreign proceedings instead of accepting the same treatment as other creditors of the foreign funds.  *Id.* ("The Trustee is seeking to use SIPA to reach around such foreign liquidations in order to make claims to assets on behalf of the SIPA customer-property estate.")

**SULLIVAN & WORCESTER LLP**

Franklin B. Velie
(fvelie@sandw.com)
Jonathan G. Kortmansky
(jkortmansky@sandw.com)
Mitchell C. Stein
(mstein@sandw.com)

1633 Broadway
New York, New York  10019
(212) 660-3000

**APPENDIX A**
**ADDITIONAL COUNSEL**

**ALLEN & OVERY LLP**

Michael S. Feldberg
(michael.feldberg@allenovery.com)
Geoffrey S. Brounell
(geoffrey.brounell@allenovery.com)
Alex Corey
(alex.corey@allenovery.com)

1221 Avenue of the Americas
New York, NY 10020
(212) 610-6300

**ARNOLD & PORTER LLP**

Scott B. Schreiber
(scott.schreiber@aporter.com)
Rosa J. Evergreen
(rosa.evergreen@aporter.com)

601 Massachusetts Ave., N.W.
Washington, DC  20001
(202) 942-5000

**BAKER & MCKENZIE LLP**

David W. Parham (admitted pro hac vice)
(David.Parham@bakermckenzie.com)

2300 Trammell Crow Center
2001 Ross Avenue
Dallas, Texas  75201
(214) 978-3000

**CHAFFETZ LINDSEY LLP**

Peter R. Chaffetz
(peter.chaffetz@chaffetzlindsey.com)
Scott W. Reynolds
(scott.reynolds@chaffetzlindsey.com)
Andreas A. Frischknecht
(andreas.frischknecht@chaffetzlindsey.com)
Ted DeBonis
(ted.debonis@chaffetzlindsey.com)
Erin E. Valentine
(erin.valentine@chaffetzlindsey.com)

505 Fifth Avenue
New York, New York  10017
(212) 257-6940

**CHALOS & CO, P.C.**

George M. Chalos
(gmc@chaloslaw.com)
Kerri M. D'Ambrosio
(kdambrosio@chaloslaw.com)

55 Hamilton Avenue
Oyster Bay, New York  11771
(516) 714-4300

**CLEARY GOTTLIEB STEEN & HAMILTON LLP**

Thomas J. Moloney
(tmoloney@cgsh.com)
Lawrence B. Friedman
(lfriedman@cgsh.com)
David E. Brodsky
(dbrodsky@cgsh.com)
Carmine D. Boccuzzi, Jr.
(cboccuzzi@cgsh.com)
Breon S. Peace
(bpeace@cgsh.com)
Ari D. Mackinnon
(amackinnon@cgsh.com)
Elizabeth E. Vicens
(evicens@cgsh.com)

One Liberty Plaza
New York, New York 10006
(212) 225-2000

**DAVIS & GILBERT LLP**

Joseph Cioffi
(jcioffi@dglaw.com)
Bruce Ginsberg
(bginsberg@dglaw.com)
James R. Serritella
(jserritella@dglaw.com)

1740 Broadway
New York, New York  10019
(212) 468-4800

**DAVIS POLK & WARDWELL LLP**

Elliot Moskowitz
(elliot.moskowitz@davispolk.com)
Andrew Ditchfield
(andrew.ditchfield@davispolk.com)

450 Lexington Avenue
New York, New York  10017
(212) 450-4000

**DEBEVOISE & PLIMPTON LLP**

Joseph P. Moodhe
(jpmoodhe@debevoise.com)
Shannon R. Selden
(srselden@debevoise.com)
Erica S. Weisgerber
(eweisgerber@debevoise.com)

919 Third Avenue
New York, New York 10022
(212) 909-6000

**DECHERT LLP**

Gary J. Mennitt
(gary.mennitt@dechert.com)

1095 Avenue of the Americas
New York, New York  10036
(212) 698-3500

**FLEMMING ZULACK WILLIAMSON
ZAUDERER LLP**

John F. Zulack
(jzulack@fzwz.com)
Elizabeth A. O'Connor
(eoconnor@fzwz.com)

One Liberty Plaza
New York, New York  10006
(212) 412-9500

**FOLEY HOAG LLP**

Daniel Schimmel
(dschimmel@foleyhoag.com)

1540 Broadway, 23rd Floor
New York, New York  10036
(646) 927-5500

**FRESHFIELDS
BRUCKHAUS DERINGER
US LLP**

Timothy P. Harkness
(timothy.harkness@freshfields.com)
David Y. Livshiz
(david.livshiz@freshfields.com)

601 Lexington Avenue
31st Floor
New York, New York 10022
(212) 277-4000

**FRIEDMAN KAPLAN
SEILER & ADELMAN LLP**

Robert J. Lack
(rlack@fklaw.com)

7 Times Square
New York, New York  10036
(212) 833-1100

**GIBSON, DUNN & CRUTCHER LLP**

Marshall R. King
(mking@gibsondunn.com)
Gabriel Herrmann
(gherrmann@gibsondunn.com)

200 Park Avenue
New York, NY  10166
(212) 351-4000

**GOODWIN PROCTER LLP**

William P. Weintraub
(wweintraub@goodwinprocter.com)
Gregory W. Fox
(gfox@goodwinprocter.com)

The New York Times Building
620 Eight Avenue
New York, NY 10018
(212) 813-8800

**HERBERT SMITH FREEHILLS NEW YORK LLP**

Scott S. Balber
(scott.balber@hsf.com)
Jonathan C. Cross
(jonathan.cross@hsf.com)
Benjamin Mills
(benjamin.mills@hsf.com)

450 Lexington Avenue,
14th Floor
New York, NY 10017
(917) 542-7600

**HOGAN LOVELLS US LLP**

Marc J. Gottridge
(marc.gottridge@hoganlovells.com)
Benjamin J.O. Lewis
(benjamin.lewis@hoganlovells.com)
Erin Marie Meyer
(erin.meyer@hoganlovells.com)

875 Third Avenue
New York, New York 10022
(212) 918-3000

**JENNER & BLOCK LLP**

Richard Levin
(RLevin@jenner.com)

919 Third Avenue
New York, New York  10022
(212) 891-1601

**JONES DAY**

Thomas E. Lynch
(telynch@jonesday.com)
Julie R. Gorla
(jrgorla@jonesday.com)

222 East 41st Street
New York, New York  10017
(212) 326-3939

**KATTEN MUCHIN ROSENMAN LLP**

Anthony Paccione
(anthony.paccione@kattenlaw.com)
Brian Muldrew
(brian.muldrew@kattenlaw.com)
Mark Ciani
(mark.ciani@kattenlaw.com)
Allison Wuertz
(allison.wuertz@kattenlaw.com)

575 Madison Avenue
New York, NY  10022-2585
(212) 940-8800

**KELLNER HERLIHY GETTY &
FRIEDMAN, LLP**

Eugene F. Getty
(efg@khgflaw.com)

470 Park Avenue South, 7N
New York, New York 10016
(212) 889-2821

**KING & SPALDING LLP**

Richard A. Cirillo
(rcirillo@kslaw.com)

1185 Avenue of the Americas
New York, NY 10036-4003
(212) 556-2100

**LATHAM & WATKINS LLP**

Thomas J. Giblin
(Thomas.Giblin@lw.com)
Christopher Harris
(Christopher.Harris@lw.com)

885 Third Avenue
New York, New York 10022
(212) 906-1200

**LOEB & LOEB LLP**

Eugene R. Licker
(elicker@loeb.com)

345 Park Avenue
New York, New York 10154
(212) 407-4157

**MILBANK, TWEED, HADLEY & McCLOY
LLP**

Dorothy Heyl
(dheyl@milbank.com)
Stacey J. Rappaport
(srappaport@milbank.com)

28 Liberty Street
New York, New York 10005
Telephone: (212) 530-5000

- 49 -

**MORRISON & FOERSTER LLP**

Carl H. Loewenson, Jr.
(cloewenson@mofo.com)
Kiersten A. Fletcher
(kfletcher@mofo.com)

250 West 55th Street
New York, New York 10019
(212) 468-8000

**O'MELVENY & MYERS LLP**

Pamela A. Miller
(pmiller@omm.com)
William J. Sushon
(wsushon@omm.com)
Daniel S. Shamah
(dshamah@omm.com)

Seven Times Square
New York, New York 10036
(212) 326-2000

**ORRICK, HERRINGTON & SUTCLIFFE LLP**

Jonathan P. Guy, Esq.
(jguy@orrick.com)
Peter J. Amend, Esq.
(pamend@orrick.com)

Columbia Center
1152 15th Street, N.W.,
Washington, D.C. 20005
(202) 339-8516

**PAUL HASTINGS LLP**

Barry Sher
(barrysher@paulhastings.com)
Jodi Kleinick
(jodikleinick@paulhastings.com)
Mor Wetzler
(morwetzler@paulhastings.com)

75 East 55th Street
New York, New York  10022
(212) 318-6000

**PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP**

Martin Flumenbaum
(mflumenbaum@paulweiss.com)
Andrew J. Ehrlich
(aehrlich@paulweiss.com)

1285 Avenue of the Americas
New York, NY  10019-6064
(212) 373-3000

**PILLSBURY WINTHROP SHAW
PITTMAN LLP**

Eric Fishman
(eric.fishman@pillsburylaw.com)
Samuel Cavior
(samuel.cavior@pillsburylaw.com)

1540 Broadway
New York, New York 10036
(212) 858-1000

**PROSKAUER ROSE LLP**

Gregg M. Mashberg
(gmashberg@proskauer.com)
Richard L. Spinogatti
(rspinogatti@proskauer.com)

Eleven Times Square
New York, New York  10036
(212) 969-3000

**QUINN EMANUEL URQUHART &
SULLIVAN, LLP**

Peter E. Calamari
(petercalamari@quinnemanuel.com)
Marc L. Greenwald
(marcgreenwald@quinnemanuel.com)
Eric M. Kay
(erickay@quinnemanuel.com)

51 Madison Avenue, 22nd Floor
New York, New York 10010
(212) 849-7000

**ROPES & GRAY LLP**

Robert S. Fischler
(Robert.Fischler@ropesgray.com)
Martin J. Crisp
(Martin.Crisp@ropesgray.com)

1211 Avenue of the Americas
New York, New York  10036
(212) 596-9000

**SHEARMAN & STERLING LLP**

Brian H. Polovoy, Esq.
(bpolovoy@shearman.com)

599 Lexington Avenue
New York, New York 10022
(212) 848-4000

**SHEARMAN & STERLING LLP**

Heather L. Kafele, Esq.
(hkafele@shearman.com)

801 Pennsylvania Ave., NW
Washington, DC 20004
(202) 508-8000

**SHEPPARD MULLIN RICHTER &
HAMPTON LLP**

Malani J. Cademartori, Esq.
(mcademartori@sheppardmullin.com)
Blanka K. Wolfe, Esq.
(bwolfe@sheppardmullin.com)

30 Rockefeller Plaza
New York, New York 10112
(212) 653-8700

**SIDLEY AUSTIN LLP**

Alan M. Unger
(aunger@sidley.com)
Bryan Krakauer (admitted pro hac vice)
(bkrakauer@sidley.com)
Andrew P. Propps
(apropps@sidley.com)

787 Seventh Avenue
New York, New York 10019
(212) 839-5300

**SIMPSON THACHER & BARTLETT LLP**

Mark G. Cunha
(mcunha@stblaw.com)
Peter E. Kazanoff
(pkazanoff@stblaw.com)
Jeffrey E. Baldwin
(jbaldwin@stblaw.com)

425 Lexington Avenue
New York, New York 10017-3954
(212) 455-2000

**STEPTOE & JOHNSON LLP**

Seong J. Kim (*Admitted Pro Hac Vice*)
(skim@steptoe.com)

2121 Avenue of the Stars, Suite 2800
Los Angeles, California 90067
(310) 734-1914

**SULLIVAN & CROMWELL LLP**

Sharon L. Nelles
(nelless@sullcrom.com)

125 Broad Street
New York, New York 10004
(212) 558-4000

Diane L. McGimsey
(mcgimseyd@sullcrom.com)

1888 Century Park East
Los Angeles, California 90067
*Admitted pro hac vice*

**WILLKIE FARR & GALLAGHER LLP**

Robin Spigel
(rspigel@willkie.com)
Sameer Advani
(sadvani@willkie.com)

787 Seventh Avenue
New York, New York 10019
(212) 728-8000

**WILMER CUTLER PICKERING HALE
AND DORR LLP**

Charles C. Platt
(charles.platt@wilmerhale.com)
Andrea J. Robinson
(andrea.robinson@wilmerhale.com)
George W. Shuster, Jr.
(george.shuster@wilmerhale.com)

7 World Trade Center
New York, New York  10007
(212) 230-8860

**WOLLMUTH MAHER & DEUTSCH LLP**

Frederick R. Kessler
(fkessler@wmd-law.com)

500 Fifth Avenue
New York, NY 10110
(212) 382-3300

**WROBEL SCHATZ & FOX LLP**

Philip R. Schatz
(Philip.schatz@wsfny.com)

1040 Avenue of the Americas, Suite 1101
New York, NY 10018-3703
212-421-8100

**WUERSCH & GERING**

Samuel D. Levy
(samuel.levy@wg-law.com)

100 Wall Street
10th Floor
New York, NY 10005
(212) 509-5050