# EXHIBIT  A

IBC No. 385098



## TERRITORY OF THE BRITISH VIRGIN ISLANDS

## THE INTERNATIONAL BUSINESS COMPANIES ACT, CAP.291

### MEMORANDUM OF ASSOCIATION

### AND

### ARTICLES OF ASSOCIATION

### OF

# LIGHTHOUSE DIVERSIFIED FUND LIMITED

Incorporated the 1st day of May, 2000
Amendment registered 28th day of February, 2002
Amendment registered 27th day of December, 2002

**ATU GENERAL TRUST (BVI) LIMITED**
**3076 Sir Francis Drake's Highway, P.O. Box 3463**
**Road Town, Tortola**
**British Virgin Islands**



## TERRITORY OF THE BRITISH VIRGIN ISLANDS

### The International Business Companies Act
### MEMORANDUM OF ASSOCIATION

### LIGHTHOUSE DIVERSIFIED FUND LIMITED

NAME

1.    The name of the Company is Lighthouse Diversified Fund Limited.

REGISTERED OFFICE

2.    The Registered Office of the Company will be at 3076 Sir Francis Drake's Highway, P.O. Box 3463, Road Town, Tortola, British Virgin Islands.

REGISTERED AGENT

3.    The Registered Agent of the Company will be ATU General Trust (BVI) Limited, 3076 Sir Francis Drake's Highway, P.O. Box 3463, Road Town, Tortola, British Virgin Islands.

GENERAL OBJECTS AND POWERS

4.    (1)    The object of the Company is to engage in any act or activity that is not prohibited under any law for the time being in force in the British Virgin Islands.

(2)    The Company may not

(a)    carry on business with persons resident in the British Virgin Islands;

(b)    own an interest in real property situated in the British Virgin Islands, other than a lease referred to in paragraph (e) of subclause (3);

(c)    carry on banking or trust business, unless it is licensed to so do under the Banks and Trust Companies Act, 1990;

(d)    carry on business as an insurance or reinsurance company, insurance agent or insurance broker, unless it is licensed under an enactment authorizing it to carry on that business;

(e)    carry on the business of company management, unless it is licensed under the Company Management Act, 1990; or

(f)    carry on the business of providing the registered office or the registered agent for companies incorporated in the British Virgin Islands.

(3)    For purposes of paragraph (a) of subclause (2), the Company shall not be treated as carrying on business with persons resident in the British Virgin Islands by reason only that

(a)    it makes or maintains deposits with a person carrying on banking business within the British Virgin Islands;

(b)     it makes or maintains professional contact with solicitors, barristers, accountants, bookkeepers, trust companies, administration companies, investment advisers or other similar persons carrying on business within the British Virgin Islands;

(c)     it prepares or maintains books and records within the British Virgin Islands;

(d)     it holds, within the British Virgin Islands, meetings of its directors or members;

(e)     it holds a lease of property for use as an office from which to communicate with members or where books and records of the Company are prepared or maintained;

(f)     it holds shares, debt obligations or other securities in a company incorporated under the International Business Companies Act or under the Companies Act; or

(g)     shares, debt obligations or other securities in the Company are owned by any person resident in the British Virgin Islands or by any company incorporated under the International Business Companies Act or under the Companies Act.

(4)     The Company shall have all such powers as are permitted by law for the time being in force in the British Virgin Islands, irrespective of corporate benefit, to perform all acts and engage in all activities necessary or conducive to the conduct, promotion or attainment of the object of the Company.

CURRENCY

5.     Shares in the Company shall be issued in the currency of the United States of America.

AUTHORIZED CAPITAL

6.     The authorized capital of the Company is US$50,000.00.

CLASSES, NUMBER AND PAR VALUE OF SHARES

7.     The par value of each share shall be U.S. $0.01.  The authorized capital is made up of four classes of shares, as follows:

(1)     1,999,900 non-voting Class A Participating Shares with a par value of U.S. $0.01 each, divided into 20 series of 99,995 shares in each series;

(2)     1,500,000 non-voting Class B Participating Shares with a par value of U.S. $0.01 each divided into 20 series of 75,000 shares in each series;

(3)     1,500,000 non-voting Class C Participating Shares with a par value of U.S. $0.01 each divided into 20 series of 75,000 shares in each series (The Class A, B and C shares are referred to collectively herein as the "Participating Shares"); and

(4)     100 Management Shares with a par value of U.S.$0.01 each, comprising a single series of voting, non-participating shares

DESIGNATIONS, POWERS, PREFERENCES, ETC. OF SHARES

8.     The Shares of the Company shall have the following rights and restrictions:

1.     Management Shares

2

(a)     Vote

The holders of Management Shares shall be entitled to one vote per Management Share held at meetings of members.

(b)     Dividends

The holders of Management Shares shall not be entitled to dividends.

(c)     Distribution on Winding up or Liquidation

In the event of a winding-up, liquidation or dissolution of the Company, whether voluntary or involuntary, or for the purpose of a re-organisation or otherwise or upon any distribution of capital, the holders of Management Shares shall be entitled only to a payment of U.S.$0.01 per Management Share in priority to any payments to other Shareholders of the Company.

2.     Participating Shares

(a)     Vote

The holders of Participating Shares shall not be entitled to any vote in respect of such shareholding save and except that the holders of Participating Shares shall have one vote per Participating Share held in respect of resolutions proposed to amend the Memorandum and/or Articles of Association in order to create any shares having priority over the Participating Shares or in any other manner materially adversely affecting the rights of the Participating Shares, such amendments will be permissible with the written consent of the holders of at least a majority of the outstanding Shares attending and voting in a separate class meeting and a majority of the outstanding Management Shares attending and voting together not less than two thirds of the issued shares of that class or series.

(b)     Dividends

The holders of Participating Shares shall be entitled to dividends, if any, as the Directors may from time to time declare.

(c)     Redemptions

Participating Shares shall be entitled, and subject, to redemption or repurchase whether at the option of the holder or of the Company as provided in the Articles of Association and/or the terms and conditions pursuant to which the Participating Shares are issued

(d)     Distribution on Winding up or Liquidation

In the event of a winding-up, liquidation or dissolution of the Company, whether voluntary or involuntary, or for the purpose of a re-organisation or otherwise or upon any distribution of capital, the holders of the Participating Shares alone, are entitled to a pro rata share of the surplus assets of the Company after the payment of all creditors, and the return of the par value of the Management Shares as described above.

Except as provided in this Memorandum of Association and the Articles of Association, the designations, powers, preferences, rights, qualifications, limitations and restrictions of each Share that the Company is authorised to issue shall be fixed by resolution of Directors, but the Directors shall not allocate different rights as to voting, dividends, distributions on liquidation or redemption unless the Memorandum of Association shall have been amended.

3

VARIATION OF CLASS RIGHTS

9.  The rights attached to any then existing class or series (unless otherwise provided by the terms of issue of the shares of that class or series) may only be varied, whether or not the Company is being wound up, with the written consent of the holders of at least a majority of the outstanding Shares attending and voting in a separate class meeting and a majority of the outstanding Management Shares attending and voting together not less than two thirds of the issued shares of that class or series.

RIGHTS NOT VARIED BY THE ISSUE OF SHARES PARI PASSU, REDEMPTIONS OR CHANGES IN POLICIES OR OBJECTIVES

10. The rights conferred upon the holders of the shares of any class issued with preferred or other rights shall not, unless otherwise expressly provided by the terms of issue of the shares of that class, be deemed to be varied by:

(1)  the creation or issue of further shares ranking pari passu therewith. This clause shall not be construed to grant the holders of the shares of any class issued with preferred or other rights pre-emptive or similar rights;

(2)  the redemption or repurchase of any Participating Shares; or

(3)  the passing of a resolution of directors changing or varying the investment policies or objective of the Company.

REGISTERED SHARES

11. Shares in the Company shall only be issued as registered shares and shall not be exchanged for shares issued to bearer.

TRANSFER OF SHARES

12. Subject to the provisions relating to transfer in the Articles of Association, Participating Shares in the Company shall be transferred subject to the prior consent of the Company as evidenced by a resolution of the directors.

AMENDMENT OF MEMORANDUM AND ARTICLES OF ASSOCIATION

13. Subject to the rights of Participating Shareholder in clauses 8 (2)(a) and 9 above, the Company may amend its Memorandum of Association and the Articles by a resolution of directors or by a resolution of a majority of the holders of the outstanding Management Shares.

DEFINITIONS

14. The meanings of words in this Memorandum of Association are as defined in the Articles.

PROFESSIONAL FUND

15. The Company is intended to be a "professional fund" as defined in the Mutual Funds Act 1996 (as amended) and accordingly, no subscription for Participating Shares in the Company shall be accepted, nor shall Participating Shares be issued and allotted to any person unless the subscriber declares that he is a "professional investor" and/or declares his eligibility and consent to be treated as a "professional investor" as the term is defined in that Act.

4

DEFINITIONS

14.     The meanings of words in this Memorandum of Association are as defined in the
        Articles.

PROFESSIONAL FUND

15.     The Company is intended to be a "professional fund" as defined in the Mutual Funds Act
        1996 (as amended) and accordingly, no subscription for shares in the Company shall be
        accepted, nor shares issued and allotted to any person unless the subscriber declares that
        he is a professional investor and/or declares his eligibility and consent to be treated as a
        professional investor as the term is defined in that Act.

We, the undersigned Registered Agent, subscribe our name to this Memorandum of Association.

---

NAME, ADDRESS AND DESCRIPTION OF SUBSCRIBER

---

ATU General Trust (BVI) Limited
3076 Sir Francis Drake's Highway
P.O. Box 3463
Road Town, Tortola
British Virgin Islands                        Signed by: Michael Parton

                                              _____
                                              Michael Parton
                                              Authorised Signatory


Registered Agent

---

**Dated this 1ˢᵗ day of May, 2000**

Witness to the above signature:-

                                              Signed by: Andrew Ke...

                                              _____
                                              Andrew Keuls
                                              Road Town
                                              Tortola
                                              British Virgin Islands

**TERRITORY OF THE BRITISH VIRGIN ISLANDS**
**The International Business Companies Act**

**ARTICLES OF ASSOCIATION**
**OF**
**LIGHTHOUSE DIVERSIFIED FUND LIMITED**

PRELIMINARY

1. In these Articles, if not inconsistent with the subject or context, the words and expressions standing in the first column of the following table shall bear the meanings set opposite them respectively in the second column thereof.

| Words | Meaning |
|---|---|
| Administrator | Means the person for the time being appointed and acting as administrator of the Company; |
| Business Day | Means any day on which banks are open for business in New York, New York or the British Virgin Islands, or any other day as determined by the Company as evidenced by a Resolution of Directors. |
| Capital | The sum of the aggregate par value of all outstanding shares with par value of the Company and shares with par value held by the Company as Treasury Shares plus; |
| | (a) the aggregate of the amounts designated as Capital of all outstanding shares without par value of the Company and shares without par value held by the Company as Treasury Shares, and |
| | (b) the amounts as are from time to time transferred from Surplus to Capital by a Resolution of Directors. |
| Company | Means Lighthouse Diversified Fund Limited |
| Director | Means a person who is a director of the Company; |
| Eligible Investors | Includes any Person that acquires Shares privately outside the United States, its territories or possessions or a Person that is not a United States Person as later defined but only in accordance with relevant laws of the jurisdiction where the offer is made, or in limited circumstances within the United States or to a United States Person but only in a transaction that does not require the registration of the Shares or the Company under applicable United States federal or state securities laws. |
| Investment Manager | Means the Person for the time being appointed and acting as investment manager of the Company; |
| Member | A Person who holds Shares in the Company. |
| Memorandum | The Memorandum of Association filed by the Company with the Registrar of Companies. |
| Net Asset Value | Means the net asset value per Share determined in accordance with these |

Articles.

| | |
|---|---|
| Person | An individual, a corporation, a trust, the estate of a deceased individual, a partnership, an unincorporated association of Persons or any other entity. |

Placement Memorandum

Any confidential private offering memorandum of the Company, as may be amended from time to time, pursuant to which its Shares are offered.

Resolution of Directors

(a)     A resolution approved at a duly convened and constituted meeting of directors of the Company or of a committee of directors of the Company by the affirmative vote of a simple majority of the directors present at the meeting who voted and did not abstain; except that where a director is given more than one vote, he shall be counted by the number of votes he casts for the purpose of establishing a majority; or

(b)     a resolution consented to in writing by all directors or of all members of the committee, as the case may be, except that where a director is given more than one vote, he shall be counted by the number of votes he casts for the purpose of establishing a majority.

Resolution of Members

(a)     A resolution approved at a duly convened and constituted meeting of the Members holding voting Shares of the Company by the affirmative vote of

(i)     a simple majority of the votes of the shares entitled to vote thereon which were present at the meeting and were voted and not abstained, or

(ii)     a simple majority of the votes of each class or series of shares which were present at the meeting and entitled to vote thereon as a class or series and were voted and not abstained and of a simple majority of the votes of the remaining shares entitled to vote thereon which were present at the meeting and were voted and not abstained; or

(b)     a resolution consented to in writing by

(i)     an absolute majority of the votes of shares entitled to vote thereon, or

(ii)     an absolute majority of the votes of each class or series of shares entitled to vote thereon as a class or series and of an absolute majority of the votes of the remaining shares entitled to vote thereon.

Securities

Shares and debt obligations of every kind, and options, warrants and rights to acquire shares, or debt obligations.

Share

Includes the Management Shares and the Participating Shares, as the case may be, having the rights and being subject to the restrictions specified in the Memorandum and these Articles with respect to such Shares and "Shares" shall be construed accordingly;

2

Surplus

The excess, if any, at the time of the determination of the total assets of the Company over the aggregate of its total liabilities, as shown in its books of account, plus the Company's Capital.

The Memorandum

The Memorandum of Association of the Company as originally framed or as from time to time amended.

The Act

The International Business Companies Act (Cap 291) including any modification, extension, re-enactment or renewal thereof and any regulations made thereunder.

The Seal

Any seal which has been duly adopted as the seal of the Company.

These Articles

These Articles of Association as originally framed or as from time to time amended.

Treasury Shares

Shares in the Company that were previously issued but were repurchased, redeemed or otherwise acquired by the Company and not canceled.

United States Person

means:

(1)    a resident or citizen of the United States;

(2)    a Fund or corporation organized under the laws of the United States;

(3)    any entity not organized under the laws of the United States:

    (a)    that has its principal office or place of business in the United States; or

    (b)    (i)    in which citizens or residents of or entities organized under the laws of or existing in the United States directly or indirectly hold in the aggregate 50 percent or more of the beneficial interests; and

           (ii)    that will own directly or indirectly, either alone or together with affiliated persons, an aggregate of more than 9.9 percent of the Fund's outstanding Shares; or

    (c)    (i)    that is organized principally for passive investment (such as an investment company, a commodity pool or other similar vehicle); and

           (ii)    (A)    in which the amount of units of participation held by United States Persons (other than "qualified eligible participants" as defined in Rule 4.7 under the United States Commodity Exchange Act) represents in the aggregate 10 percent or more of the beneficial interest in the entity; or

                (B)    that was formed for the purpose of facilitating investment by United States Persons in the Fund, or in any other commodity pool with

3

respect to which the operator is exempt from certain requirements of Part 4 of the regulations promulgated by the United States Commodity Futures Trading Commission by virtue of its participants being non-United States Persons; or

(C) that was formed by United States Persons principally for the purpose of investing in securities not registered under the United States Securities Act of 1933, as amended, unless it is formed and owned by "accredited investors" (as defined in Rule 501(a) under the Securities Act of 1933, as amended) who are not natural persons, estates or trusts;

(4) an estate or trust:

(a) of which an executor, administrator or trustee is a United States Person, unless:

(i) an executor, administrator or trustee who is not a United States Person has sole or shared investment discretion with respect to the assets of the estate or trust; and

(ii) (A) in the case of an estate, it is governed by non-U.S. law; or

(B) in the case of a trust, no beneficiary (and no settlor if the trust is revocable) is a United States Person; or

(b) the income of which is subject to United States income tax regardless of source;

(5) any agency or branch of a foreign entity located in the United States;

(6) any non-discretionary account or similar account (other than an estate or trust) held for the benefit or account of one or more United States Persons; and

(7) any discretionary account or similar account (other than an estate or trust) held by a dealer or other fiduciary organized, incorporated, or (if an individual) resident in the United States, unless it is held by a dealer or other professional fiduciary exclusively for the benefit or account of one or more non-United States Persons.

For purposes of the foregoing, the term "United States" means the United States of America, its territories and possessions, any state of the United States, and the District of Columbia. Persons requiring details regarding other terms used in the foregoing definition (such as "qualified eligible participant" and "accredited investor") should contact the Company's Administrator.

"Written" or any term of like import includes words typewritten, printed, painted, engraved, lithographed, photographed or represented or reproduced by any mode of reproducing words in a visible form, including telex, facsimile, telegram, cable or other form of writing produced by electronic communication.

Save as aforesaid, any words or expressions defined in the Act shall bear the same meaning in these Articles.

Whenever the singular or plural number, or the masculine, feminine or neuter gender is used in these Articles, it shall equally, where the context admits, include the others.

A reference in these Articles to voting in relation to shares shall be construed as a reference to voting by Members holding the shares except that it is the votes allocated to the shares that shall be counted and not the number of Members who actually voted and a reference to shares being present at a meeting shall be given a corresponding construction.

A reference to money in these Articles is, unless otherwise stated, a reference to the currency in which shares in the Company shall be issued according to the provisions of the Memorandum.

REGISTERED SHARES

1. Share certificates in respect of Shares issued and allotted shall not be issued and confirmation of registration in the Register of Members shall be sent to Members when subscription moneys have been paid.

2. If several Persons are registered as joint holders of any shares, any one of such Persons may give an effectual receipt for any dividend payable in respect of such shares.

3. The Company shall be entitled to treat the registered holder of any Share as the absolute owner thereof and accordingly shall not be bound to recognise any equitable or other claim to, or interest in, such Share on the part of any other person.

4. Notwithstanding any other provision of the Memorandum and these Articles, no Participating Shares may be issued or transferred to, held by or registered in the name of any United States Person other than in a transaction that does not require the registration of the Shares or the Company under applicable United States federal or state securities laws.

SHARES, AUTHORIZED CAPITAL AND CAPITAL

5. Subject to the provisions of these Articles and any Resolution of Members, the unissued shares of the Company shall be at the disposal of the directors who may without prejudice to any rights previously conferred on the holders of any existing shares or class or series of shares offer, allot, grant options over or otherwise dispose of shares to such Persons, at such times and upon such terms and conditions as the Company may by a Resolution of Directors determine. Members shall not have pre-emptive or similar rights.

6. The Company shall allot and issue Shares only upon receipt by the Company or its authorized agents of a subscription agreement ("Subscription Agreement") in such form and number of copies as the Directors may from time to time determine including payment of the subscription proceeds ("Subscription Proceeds"). Shares of the Company generally will be available for subscription on the first Business Day of each month, or such other times as the Directors shall determine in their sole discretion ("Subscription Date") in any event, the completed Subscription Agreement and payment of the Subscription Proceeds must be sent to the Administrator (as set out in the Placement Memorandum) not later than two (2) Business Days before the effective Subscription Date. Provided always that the directors may waive any of these requirements at their discretion.

7. The subscription price for Shares of the Company will be based on their prevailing Net Asset Value provided that in the case of an initial issue of Shares (that is, an issue of Shares at a time when there are no Shares of the relevant class in issue or where such Shares in issue are nil paid), the Directors shall, at their discretion, fix a subscription price which shall apply for the purposes of such initial issue of Shares. The Directors reserve the right to accept and reject subscriptions in their sole discretion.

8. Shares in the Company shall be issued for money, shares or interests of any kind in other companies, services rendered, personal property, an estate in real property, a promissory note or other binding

5

obligation to contribute money or property or any combination of the foregoing as shall be determined by a Resolution of Directors.

9. Shares in the Company may be issued for such amount of consideration as the directors may from time to time by a Resolution of Directors determine, except that in the case of shares with par value, the amount shall not be less than the par value, and in the absence of fraud the decision of the directors as to the value of the consideration received by the Company in respect of the issue is conclusive unless a question of law is involved. The consideration in respect of the shares constitutes Capital to the extent of the par value and the excess constitutes Surplus.

10. The Directors may impose such restrictions as they think necessary for the purpose of ensuring that no Shares in the Company are acquired or held by any Person who is not an Eligible Investor in breach of the law of or requirements of any country or governmental authority or in contravention of these Articles.

11. A Share issued by the Company upon conversion of, or in exchange for, another share or a debt obligation or other security in the Company, shall be treated for all purposes as having been issued for money equal to the consideration received or deemed to have been received by the Company, in its sole discretion, in respect of the other share, debt obligation or security.

12. Treasury Shares may be disposed of by the Company on such terms and conditions (not otherwise inconsistent with these Articles) as the Company may by a Resolution of Directors determine.

13. The Company may issue fractions of a share and a fractional share shall have the same corresponding fractional liabilities, limitations, preferences, privileges, qualifications, restrictions, rights and other attributes of a whole share of the same class or series of shares.

14. The Company may purchase, redeem or otherwise acquire and hold its own shares but only out of Surplus or in exchange for newly issued shares of equal value but no purchase, redemption or other acquisition shall be made unless the directors determine that immediately after the purchase, redemption or other acquisition the Company will be able to satisfy its liabilities as they become due in the ordinary course of its business and the realizable value of the assets of the Company will not be less than the sum of its total liabilities, other than deferred taxes, as shown in the books of account, and its Capital. In the absence of fraud, the decision of the directors as to the realizable value of the assets of the Company is conclusive, unless a question of law is involved.

15. A determination by the directors under the preceding Regulation is not required where shares are purchased, redeemed or otherwise acquired: (a) pursuant to a right of a Member to have his shares redeemed or to have his shares exchanged for money or other property of the Company; (b) by virtue of a transfer of Capital (c) by virtue of the provisions of Section 83 of the Act; or (d) pursuant to an order of the court.

16. Shares that the Company purchases, redeems or otherwise acquires pursuant to the preceding Regulation may be canceled or held as Treasury Shares except to the extent that such shares are in excess of 80 percent of the issued shares of the Company in which case they shall be canceled but they shall be available for reissue.

17. Where shares in the Company are held by the Company as Treasury Shares or are held by another company of which the Company holds, directly or indirectly, shares having more than 50 percent of the votes in the election of directors of the other company, such shares of the Company are not entitled to vote or to have dividends paid thereon and shall not be treated as outstanding for any purpose except for purposes of determining the Capital of the Company.

TRANSFER OF SHARES

18. Participating Shares may only be transferred, sold, assigned, charged mortgaged, pledged or otherwise disposed of with the consent of the directors, which may be withheld in their sole discretion, and otherwise subject to any limitations in the Memorandum and these Articles. Subject to the foregoing, Shares in the Company may be transferred by a written instrument of transfer signed by the transferor and containing the name and address of the transferee, but in the absence of such written instrument of transfer the Company may accept such evidence of a transfer of shares as it considers appropriate. The Company in its sole discretion may require any transferee or assignee of any Member to agree in writing to be bound by the Memorandum and Articles of Association.

19. The Company shall not be required to treat a transferee of a Share in the Company as a Member until the directors have consented to such transfer and the transferee's name has been entered in the share register.

20. Subject to any limitations in the Memorandum and these Articles, the Company must on the application of the transferor or transferee of a share in the Company enter in the share register the name of the transferee of the share, save that the registration of transfers may be suspended and the share register closed at such times and for such periods as the Company may from time to time by a Resolution of Directors determine provided always that such registration shall not be suspended and the share register closed for more than 60 days in any period of 12 months.

TRANSMISSION OF SHARES

21. The executor or administrator of a deceased Member, the guardian of an incompetent Member or the trustee of a bankrupt Member shall be the only Person recognized by the Company as having any title to such Member's share but they shall not be entitled to exercise any right as a Member of the Company until they have proceeded as set forth in the next following three regulations.

22. The production to the Company of any document which is evidence of probate of the will, or letters of administration of the estate, or confirmation as executor, of a deceased Member or of the appointment of a guardian of an incompetent Member or the trustee of a bankrupt Member shall be accepted by the Company even if the deceased, incompetent or bankrupt Member is domiciled outside the British Virgin Islands if the document evidencing the grant of probate or letters of administration, confirmation as executor, appointment as guardian or trustee in bankruptcy is issued by a foreign court which had competent jurisdiction in the matter. For the purpose of establishing whether or not a foreign court had competent jurisdiction in such a matter the directors may obtain appropriate legal advice. The directors may also require an indemnity to be given by the executor, administrator, guardian or trustee in bankruptcy.

23. Any Person becoming entitled by operation of law or otherwise to a share or shares in consequence of the death, incompetence or bankruptcy of any Member may be registered as a Member upon such evidence being produced as may reasonably be required by the directors. An application by any such Person to be registered as a Member shall for all purposes be deemed to be a transfer of shares of the deceased, incompetent or bankrupt Member and the directors shall treat it as such.

24. Any Person who has become entitled to a share or shares in consequence of the death, incompetence or bankruptcy of any Member may, instead of being registered himself, request in writing that some Person to be named by him be registered as the transferee of such share or shares and such request shall likewise be treated as if it were a transfer.

25. What amounts to incompetence on the part of a Person is a matter to be determined by the court having regard to all the relevant evidence and the circumstances of the case.

RESTRICTIONS ON TRANSFER, ACQUISITION AND OWNERSHIP OF SHARES BY INELIGIBLE INVESTORS

26. Notwithstanding the generality of Article 10 above, the Company may from time to time, in its sole and absolute discretion, restrict or prevent the ownership of Shares or demand the redemption of Shares in the Company by any person who is not an Eligible Investor and take any other action necessary or advisable, with respect to its issuance and sale of its Shares, to prevent any violation or possible violation of, or loss of any exemption under, the United States Securities Act of 1933, as amended, or the United States Investment Company Act of 1940, as amended or the United States Securities Exchange Act, 1934 as amended.

27. The Company in its sole discretion shall determine the adequacy of the evidence of ownership of shares by any Person and the conclusions drawn therefrom.

REDUCTION OR INCREASE IN AUTHORIZED CAPITAL OR CAPITAL

28. The Company may amend the Memorandum to increase or reduce its authorized Capital and in connection therewith the Company may in respect of any unissued shares increase or reduce the number of such shares, increase or reduce the par value of any such shares or effect any combination of the foregoing.

29. The Company may amend the Memorandum to: (a) divide the shares, including issued shares, of a class or series into a larger number of shares of the same class or series; or (b) combine the shares, including issued shares, of a class or series into a smaller number of shares of the same class or series; provided, however, that where shares are divided or combined under (a) or (b) of this Regulation, the aggregate par value of the new shares must be equal to the aggregate par value of the original shares.

30. The Capital of the Company may by a Resolution of Directors be increased by transferring an amount of the Surplus of the Company to Capital.

31. Subject to the provisions of the two next succeeding Regulations, the Capital of the Company may by a Resolution of Directors be reduced.

32. No reduction of Capital shall be effected that reduces the Capital of the Company to an amount that immediately after the reduction is less than the aggregate par value of all outstanding shares with par value and all shares with par value held by the Company as Treasury Shares and the aggregate of the amounts designated as Capital of all outstanding shares without par value and all shares without par value held by the Company as Treasury Shares that are entitled to a preference, if any, in the assets of the Company upon liquidation of the Company.

33. No reduction of Capital shall be effected unless the directors determine that immediately after the reduction the Company will be able to satisfy its liabilities as they become due in the ordinary course of its business and that the realizable assets of the Company will not be less than its total liabilities, other than deferred taxes, as shown in the books of the Company and its remaining Capital, and, in the absence of fraud, the decision of the directors as to the realizable value of the assets of the Company is conclusive, unless a question of law is involved.

REDEMPTION OF SHARES

34. The Company reserves the right to require a redemption of Participating Shares on not less than 30 days' prior written notice (or on not less than five days' prior written notice if the Company determines that such Members continued investment in the Company may cause the Company or the Investment Manager to violate any applicable law).

35. Subject to the provisions of these Articles, each holder of Participating Shares is permitted to make complete or partial redemptions of their Participating Shares at the Net Asset Value ("Redemption Proceeds") as of the close of business on the last Business Day of each month (or at such other times as the Board of Directors may determine) by giving a written notice of withdrawal to the Administrator at least 90 days prior to the proposed redemption date ("Redemption Date"); provided that, each redemption that occurs within one year of a Member's initial investment in the Company is subject to a redemption fee equal to 2% of the aggregate Net Asset Value of the Participating Shares redeemed. The Fund may, in its sole discretion, waive the notice requirements set forth above.

36. Subject to limitations in these Articles, at least 90% of the redemption proceeds due normally will be settled in cash or, subject to the discretion of the Company, wholly or partially with portfolio securities of the Company within 15 business days after the Redemption Date, provided that the Company may delay such payment if such delay is reasonably necessary to prevent such redemption from having a material adverse impact on the Company.  Any balance of the Redemption Proceeds will be settled (without interest thereon) promptly following completion of the audit of the Company's financial statements for the fiscal year in which the redemption occurred, subject to the discretion of the Directors to require some greater period of time as they deem necessary to protect the interests of the remaining Members

37. Where the Directors determine that the payment of Redemption Proceeds in cash within the time prescribed therefor would not be in the best interests of the Company, the Company may distribute securities or other assets held by it pro rata in kind.

38. The Company has the authority to deduct from the Redemption Proceeds an amount representing actual or estimated reasonable expenses associated with processing a redemption request.

39. The Company reserves the right to suspend the redemption of Participating Shares and the computation of Net Asset Value if it determines that such a suspension is warranted by certain extraordinary circumstances, including circumstances where it is unable to fairly value the Company's assets due to extreme market conditions. Further, the Directors may suspend redemptions or extend the time for redemption of Participating Shares where the timing of a redemption or redemptions would cause, in the aggregate, more than 20% of the assets of the Company to be liquidated at any Redemption Date or otherwise if in the best interests of the company.  Participating Shares will not be issued when Redemptions are suspended.

DETERMINATION OF NET ASSET VALUE

40. Net Asset Valuations of the assets of the Company and the Participating Shares will be calculated as of each month end by the Administrator, or on such other days as may from time to time be determined by the Board of Directors, Administrator, or Investment Manager (each, a "Valuation Date") using United States generally accepted accounting principles as a basis. The Administrator will issue the Net Asset Valuations for each Member's shareholding as of each fiscal quarter end within 45 days of the end of the fiscal quarter.  To the extent feasible, liabilities are accrued as of each Valuation Date.

41. The Administrator receives portfolio valuations directly from the sub-advisers and investment vehicles and generally relies on such information in recording porfolio valuations for purposes of calculating the Net Assest Value for the assets and liabilities of the Company and the Participating Shares.  The Investment Manager reserves the right to make adjustments to such valuations or approve the use of certain estimates.  The Administrator will calculate and disseminate the Net Asset Value of the assets of the Company and each class or series of Shares.

Situations involving uncertainties as to the valuation of portfolios could have an adverse effect on the Company's Net Asset Value if the Investment Manager's or Administrator's judgments regarding

appropriate valuations are incorrect. In the absence of bad faith, the Administrator's Net Asset Value determinations are conclusive and binding on all Shareholders.

There will be deducted from the total value of the Company's assets all accrued debts and liabilities, including: (a) monthly management fees of the Investment Manager earned but not yet paid; (b) any allowance for the Company's estimated annual audit, legal and other fees; (c) fees and charges of the Administrator and brokerage fees; (d) investments of the Company contracted to be sold; (e) the gross acquisition consideration of investments or other property contracted to be purchased for the Company's; (f) reserves authorised or approved by the Directors or the Investment Manager for duties and charges or taxes or contingencies (accrued where appropriate (g) the aggregate amount of all borrowings and interest, commitment fees and other charges arising in connection therewith (accrued where appropriate (h) other liabilities of the Company of whatsoever nature (which shall, where appropriate, be deemed to accrue) including outstanding payments on any Shares previously redeemed and, as from the record date in respect thereof, any dividends declared and not paid (contingent liabilities (if any) being valued in such manner as the Investment Manager Directors may determine from time to time or in any particular case).

The Net Asset Value of the assets of the Company and the Shares will be expressed in United States Dollars and any items denominated in other currencies will be translated at prevailing exchange rates as determined by the Administrator.

42. The fair value of any assets not referred to above (or the valuation of any assets referred to therein in the event that the Investment Manager shall determine that market prices or quotations do not fairly represent the value of particular assets) shall be determined by or pursuant to the direction of the Investment Manager. In these circumstances, the Investment Manager will attempt to use consistent and fair valuation criteria and may (but is not required to) obtain independent appraisals at the expense of the Company. In the absence of bad faith , the Investment Manager's net asset valuations shall be conclusive and binding on all Members. Except as otherwise determined by or at the direction of the Investment Manager, investment and trading transactions shall be accounted for on the trade date. Accounts shall be maintained in U.S. dollars and except as otherwise determined by or at the direction of the Investment Manager: (i) assets and liabilities denominated in currencies other than U.S. dollars shall be translated at the rates of exchange in effect at the close of the fiscal period (and exchange adjustments shall be recorded in the results of operations); and (ii) investment and trading transactions and income and expenses shall be translated based on the methodology approved by the Investment Manager or Sub-Adviser. The value of each security and other asset of the Company determined by the Investment Manager shall be conclusive and binding on all of the shareholders and all parties claiming through or under them.

43. The Net Asset Value of the assets of the Company shall generally be determined by the Company on terms in accordance with Placement Memorandum, the rights pursuant to which shares are issued, any Subscription Agreement for Shares and in the absence thereof in such manner as may be determined by a Resolution of Directors.

SUSPENSION OF RIGHTS

44. Notwithstanding any other provision in the Memorandum or these Articles, the Directors, in their sole discretion, may suspend the issue and redemption of Participating Shares, the calculation of the Company's Net Asset Value and the right of Member's to receive Redemption Proceeds upon the occurrence of extraordinary   circumstances, including the occurrence of any of the following circumstances:

(i)    if any such Share redemption or Share issue would result in a violation by the Company of the laws of any relevant jurisdiction or the rules of any self-regulatory organization applicable to the Company;

(ii)    when any securities exchange or organized interdealer market on which a significant portion, in the opinion of the directors, of the Company's assets is regularly traded or quoted is closed (other than for holidays) or trading thereon has been suspended or restricted;

(iiii)    if it is not reasonably practicable to make an accurate and timely determination of the Net Asset Value of the Participating Shares; or

(iv)    if the Member's or Directors have adopted a resolution for the dissolution of the Company, pending a pro rata distribution of the assets of the Company.

45. Notice of any suspension will be given immediately to any Member who has submitted a redemption request and to whom full payment of the Redemption Proceeds has not yet been remitted. If a redemption request is not rescinded by a Member following notification of a suspension, the Redemption will be effected as of the last Business Day of the month in which the suspension is lifted, at the Net Asset Value at that time.

THE INVESTMENT MANAGER

46. The Directors may appoint any Person or Persons as Investment Manager of the Company to exercise all or any of the duties, powers and discretions exercisable by the Directors upon such terms and conditions and for such period and with such restrictions and subject to overall supervision of the Directors as the Directors think fit and whether collaterally with or to the exclusive of their own powers.

47. The Investment Manager shall be entitled to receive for its services such fees, including a fee on the issue of Shares, as may from time to time be agreed between the Investment Manager and the Company.

MEETINGS AND CONSENTS OF MEMBERS

48. The directors of the Company may convene meetings of the Members of the Company at such times and in such manner and places within or outside the British Virgin Islands as the directors consider necessary or desirable, but not in the United States.

49. Upon the written request of Members holding 25 percent or more of the outstanding voting shares in the Company the directors shall convene a meeting of Members.

50. The directors shall give not less than 30 days notice of meetings of Members to those Persons whose names on the date of the notice is given appear as Members in the share register of the Company and are entitled to vote at the meeting but if the directors determine that prompt action by the Member is necessary they may give not less than 10 days notice of a meeting of Members.

51. The directors may fix the date notice is given of a meeting of Members as the record date for determining those shares that are entitled to vote at the meeting.

52. A meeting of Members may be called on short notice: (a) if Members holding not less than 75 percent of the total number of shares entitled to vote on all matters to be considered at the meeting, have waived notice of the meeting; and for this purpose presence at the meeting shall be deemed to constitute waiver.

53. The inadvertent failure of the directors to give notice of a meeting to a Member, or the fact that a Member has not received notice, does not invalidate the meeting.

54. A Member may be represented at a meeting of Members by a proxy who may speak and vote on behalf of the Member.

55. The instrument appointing a proxy shall be produced at the place appointed for the meeting before the time for holding the meeting at which the Person named in such instrument proposes to vote.

56. The following shall apply in respect of joint ownership of shares: (a) if two or more Persons hold shares jointly each of them may be present in Person or by proxy at a meeting of Members and may speak as a Member; (b) if only one of the joint owners is present in Person or by proxy he may vote on behalf of all joint owners; and (c) if two or more of the joint owners are present in Person or by proxy they must vote as one.

57. A Member shall be deemed to be present at a meeting of Members if he participates by telephone or other electronic means and all Members participating in the meeting are able to hear each other.

58. A meeting of Members is duly constituted if, at the commencement of the meeting, there are present at least two persons holding directly or by proxy not less than two thirds of the votes of the shares entitled to vote on Resolutions of Members to be considered at the meeting. If a quorum be present, notwithstanding the fact that such quorum may be represented by only two Persons, then such Persons may resolve any matter and a certificate signed by such Persons accompanied, where such Persons be a proxy, by a copy of the proxy form, shall constitute a valid Resolution of Members.

59. If within two hours from the time appointed for the meeting a quorum is not present, the meeting, if convened upon the requisition of Members, shall be dissolved; in any other case it shall stand adjourned to the next Business Day at the same time and place or to such other time and place as the directors may determine, and if at the adjourned meeting there are present within one hour from the time appointed for the meeting in Person or by proxy not less than one third of the votes of the shares or each class or series of shares entitled to vote on the resolutions to be considered by the meeting, those present shall constitute a quorum but otherwise the meeting shall be dissolved.

60. At every meeting of Members, the Chairman of the Board of Directors shall preside as chairman of the meeting. If there is no Chairman of the Board of Directors or if the Chairman of the Board of Directors is not present at the meeting, the Members present shall choose some of their number to be the chairman. If the Members are unable to choose a chairman for any reason, then the Person representing the greatest number of voting shares present in Person or by prescribed form of proxy at the meeting shall preside as chairman failing which the oldest individual Member or representative of a Member present shall take the chair.

61. The chairman may, with the consent of the meeting, adjourn any meeting from time to time, and from place to place, but no business shall be transacted at any adjourned meeting other than the business left unfinished at a meeting from which the adjournment took place.

62. At any meeting of the Members the chairman shall be responsible for deciding in such manner as he shall consider appropriate whether any resolution has been carried or not and the result of his decision shall be announced to the meeting and recorded in the minutes thereof. If the chairman shall have any doubt as to the outcome of any resolution put to the vote, he shall cause a poll to be taken of all votes cast upon such resolution, but if the chairman shall fail to take a poll then any Member present in Person or by proxy who disputes the announcement by the chairman of the result of any vote may immediately following such announcement demand that a poll be taken and the chairman shall thereupon cause a poll to be taken. If a poll is taken at any meeting, the result thereof shall be duly recorded in the minutes of that meeting by the chairman.

63. Any Person other than an individual shall be regarded as one Member and subject to the specific provisions hereinafter contained for the appointment of representatives of such Persons the right of

any individual to speak for or represent such Member shall be determined by the law of the jurisdiction where, and by the documents by which, the Person is constituted or derives its existence. In case of doubt, the directors may in good faith seek legal advice from any qualified Person and unless and until a court of competent jurisdiction shall otherwise rule, the directors may rely and act upon such advice without incurring any liability to any Member.

64. Any Person other than an individual which is a Member of the Company may by a Resolution of Directors or other governing body authorize such Person as it thinks fit to act as its representative at any meeting of the Company or of any class of Members of the Company, and the Person so authorized shall be entitled to exercise the same powers on behalf of the Person which he represents as that Person could exercise if it were an individual Member of the Company.

65. The chairman of any meeting at which a vote is cast by proxy or on behalf of any Person other than an individual may call for a notarially certified copy of such proxy or authority which shall be produced within 7 days of being so requested or the votes cast by such proxy or on behalf of such Person shall be disregarded.

66. Directors of the Company may attend and speak at any meeting of the Company and at any separate meeting of the holders of any class or series of shares in the Company.

67. An action that may be taken by the Members at a meeting may also be taken by a Resolution of Members consented to in writing or by telex, telegram, cable, facsimile or other written electronic communication, without the need for any notice, but if any Resolution of Members is adopted otherwise than by the unanimous written consent of all Members, a copy of such resolution shall forthwith be sent to all Members not consenting to such resolution.

DIRECTORS

68. The first directors of the Company shall be appointed by the subscriber to the Memorandum; and thereafter, the directors shall be elected by a Resolution of Members for such term as the Members determine.

69. The minimum number of directors shall be one and the maximum number shall be twenty.

70. Each director shall hold office for the term, if any, fixed by Resolution of Members or until his earlier death, resignation or removal.

71. A director may be removed from office, with or without cause, by a Resolution of Members or, with cause, by a Resolution of Directors.

72. A director may resign his office by giving written notice of his resignation to the Company and the resignation shall have effect from the date the notice is received by the Company or from such later date as may be specified in the notice.

73. Any vacancy in the Board of Directors may be filled by a Resolution of Members.

74. With the prior approval by a Resolution of Members, the directors may, by a Resolution of Directors, fix the emoluments of directors with respect to services to be rendered in any capacity to the Company.

75. A director shall not be subject to a share qualification, and may be an individual or a company.

POWERS OF DIRECTORS

76. The business and affairs of the Company shall be managed by the directors, who may pay all expenses incurred preliminary to and in connection with the formation and registration of the Company

and may exercise all such powers of the Company as are not by the Act or by the Memorandum or these Articles required to be exercised by the Members of the Company, subject to any delegation of such powers as may be authorized by these Articles and to such requirements as may be prescribed by a Resolution of Members; but no requirement made by a Resolution of Members shall prevail if it be inconsistent with these Articles nor shall such requirement invalidate any prior act of the directors which would have been valid if such requirement had not been made.

77. The directors may, by a Resolution of Directors, appoint any Person, including a Person who is a director, to be an officer or agent of the Company. Agents may include administrators, investment managers and custodians.

78. Every officer or agent of the Company has such powers and authority of the directors, including the power and authority to affix the Seal, as are set forth in these Articles or in the Resolution of Directors appointing the officer or agent, except that no officer or agent has any power or authority with respect to the matters requiring a Resolution of Directors under the Act.

79. Any director which is a body corporate may appoint any Person its duly authorized representative for the purpose of representing it at meetings of the Board of Directors or with respect to unanimous written consents.

80. The continuing directors may act notwithstanding any vacancy in their body, save that if their number is reduced to their knowledge below the number fixed by or pursuant to these Articles as the necessary quorum for a meeting of directors, the continuing directors or director may act only for the purpose of appointing directors to fill any vacancy that has arisen or summoning a meeting of Members.

81. All cheques, promissory notes, drafts, bills of exchange and other negotiable instruments and all receipts for moneys paid to the Company, shall be signed, drawn, accepted, endorsed or otherwise executed, as the case may be, in such manner as shall from time to time be determined by a Resolution of Directors.

82. The directors may appoint the Investment Manager by a Resolution of Directors to exercise all the powers of the Company to borrow money and to mortgage or charge its undertakings and property or any part thereof, to issue debentures, debenture stock and other Securities whenever money is borrowed or as security for any debt, liability or obligation of the Company or of any third party. Where the Investment Manager has the power to borrow funds on behalf of the Company it will be in line with borrowing policies and restriction established by the Directors

PROCEEDINGS OF DIRECTORS

83. The directors of the Company or any committee thereof may meet at such times and in such manner and places within or outside the British Virgin Islands as the directors may determine to be necessary or desirable. The directors may cause the Company to reimburse them for travel, hotel and other expenses actually incurred by them in attending directors' meetings or otherwise in connection with the business of the Company.

84. A director shall be deemed to be present at a meeting of directors if he participates by telephone or other electronic means and all directors participating in the meeting are able to hear each other.

85. A director shall be given not less than 3 days notice of meetings of directors, but a meeting of directors held without 3 days notice having been given to all directors shall be valid if all the directors entitled to vote at the meeting who do not attend, waive notice of the meeting and for this purpose, the presence of a director at a meeting shall constitute waiver on his part. The inadvertent failure to give notice of a meeting to a director, or the fact that a director has not received the notice, does not invalidate the meeting.

86. A director may by a written instrument appoint an alternate who need not be a director and an alternate is entitled to attend meetings in the absence of the director who appointed him and to vote or consent in place of the director; provided, however, that the alternate of a director who is not a citizen of the United States shall also not be a citizen of the United States.

87. A meeting of directors is duly constituted for all purposes if at the commencement of the meeting there are present in person or by alternate not less than one half of the total number of directors, unless there are only 2 directors in which case the quorum shall be 2.

88. If the Company shall have only one director the provisions herein contained for meetings of the directors shall not apply but such sole director shall have full power to represent and act for the Company in all matters as are not by the Act or the Memorandum or these Articles required to be exercised by the Members of the Company and in lieu of minutes of a meeting shall record in writing and sign a note or memorandum of all matters requiring a Resolution of Directors. Such a note or memorandum shall constitute sufficient evidence of such resolution for all purposes.

89. At every meeting of the directors the Chairman of the Board of Directors shall preside as chairman of the meeting. If there is no Chairman of the Board of Directors or if the Chairman of the Board of Directors is not present at the meeting the Vice Chairman of the Board of Directors shall preside. If there is no Vice Chairman of the Board of Directors or if the Vice Chairman of the Board of Directors is not present at the meeting the directors present shall choose some one of their number to be chairman of the meeting.

90. An action that may be taken by the directors or a committee of directors at a meeting may also be taken by a Resolution of Directors or a committee of directors consented to in writing or by telex, telegram, cable, facsimile or other written electronic communication by all directors or all members of the committee, as the case may be, without the need for any notice.

91. The directors shall cause the following corporate records to be kept: (a) minutes of all meetings of directors, Members, committees of directors, committees of officers and committees of Members; (b) copies of all resolutions consented to by directors, Members, committees of directors, committees of officers and committees of Members; and (c) such other accounts and records as the directors consider necessary or desirable in order to reflect the financial position of the Company.

92. The books, records and minutes shall be kept at the registered office of the Company, its principal place of business or at such other place as the directors determine.

93. The directors may, by a Resolution of Directors, designate one or more committees, each consisting of one or more directors.

94. Each committee of directors has such powers and authorities of the directors, including the power and authority to affix the Seal, as are set forth in the Resolution of Directors establishing the committee, except that no committee has any power or authority to amend the Memorandum or these Articles, to appoint directors or fix their emoluments, or to appoint officers or agents of the Company.

95. The meetings and proceedings of each committee of directors consisting of 2 or more directors shall be governed mutatis mutandis by the provisions of these Articles regulating the proceedings of directors so far as the same are not superseded by any provisions in the resolution establishing the committee.

OFFICERS

96. The Company may by a Resolution of Directors appoint officers of the Company at such times as shall be considered necessary or expedient. Such officers may consist of a Chairman of the Board of Directors, a Manager, a Vice Chairman of the Board of Directors, a President and one or more Vice Presidents, Secretaries and Treasurers and such other officers as may from time to time be deemed desirable. Any number of offices may be held by the same Person.

97. The officers shall perform such duties as shall be prescribed at the time of their appointment subject to any modification in such duties as may be prescribed thereafter by a Resolution of Directors or Resolution of Members, but in the absence of any specific allocation of duties it shall be the responsibility of Chairman of the Board of Directors to preside at meetings of directors and Members, the Vice Chairman to act in the absence of the Chairman, the President to manage the day to day affairs of the Company, the Vice Presidents to act in order of seniority in the absence of the President but otherwise to perform such duties as may be delegated to them by the President, the Secretaries to maintain the share register, minute books and records (other than financial records) of the Company and to ensure compliance with all procedural requirements imposed on the Company by applicable law, and the Treasurer to be responsible for the financial affairs of the Company.

98. The emoluments of all officers shall be fixed by a Resolution of Directors.

99. The officers of the Company shall hold office until their successors are duly elected and qualified, but any officer elected or appointed by the directors may be removed at any time, with or without cause, by a Resolution of Directors. Any vacancy occurring in any office of the Company may be filled by a Resolution of Directors.

CONFLICT OF INTERESTS

100. No agreement or transaction between the Company and one or more of its directors or any Person in which any director has a financial interest or to whom any director is related, including as a director of that other Person, is void or voidable for this reason only or by reason only that the director is present at the meeting of directors or at the meeting of the committee of directors that approves the agreement or transaction or that the vote or consent of the director is counted for that purpose if the material facts of the interest of each director in the agreement or transaction and his interest in or relationship to any other party to the agreement or transaction are disclosed in good faith or are known by the other directors.

101. A director who has an interest in any particular business to be considered at a meeting of directors or Members may be counted for purposes of determining whether the meeting is duly constituted and may cast a vote on the matter under consideration.

INDEMNIFICATION

102. Subject to the limitations hereinafter provided no Director, officer or liquidator of the Company shall be liable to the Company for any act or omission and the Company shall indemnify against all expenses, including legal fees, and against all judgments, fines and amounts paid in settlement and reasonably incurred in connection with legal, administrative or investigative proceedings any Person who

    a.    is or was a party or is threatened to be made a party to any threatened, pending or completed proceedings, whether civil, criminal, administrative or investigative, by reason of the fact that the Person is or was a director, an officer or a liquidator of the Company; or

    b.    is or was, at the request of the Company, serving as a director, officer or liquidator of, or in any other capacity is or was acting for, another company or a partnership, joint venture, trust or other enterprise.

16

103. A director, officer or liquidator of the Company shall not be liable to the Company and the Company shall indemnify a Person if the Person acted honestly and in good faith with a view to the best interests of the Company and, in the case of criminal proceedings, the Person had no cause to believe that his conduct was unlawful.

104. The decision of the directors as to whether the Person acted honestly and in good faith and with a view to the best interests of the Company and as to whether the Person had no cause to believe that his conduct was unlawful or whether the acts or omissions in question amounted to willful misconduct or gross negligence, is, in the absence of fraud, sufficient for the purposes of these Articles, unless a question of law is involved.

105. The termination of any proceedings by any judgment, order, settlement or a conviction or the entering of a nolle prosequi does not, by itself, create a presumption that the Person did not act honestly and in good faith and with a view to the best interests of the Company or that the Person had reasonable cause to believe that his conduct was unlawful.

106. If a Person to be indemnified has been successful in defense of any proceedings referred to above the Person is entitled to be indemnified against all expenses, including legal fees, and against all judgments, fines and amounts paid in settlement and reasonably incurred by the Person in connection with the proceedings.

107. The Company may purchase and maintain insurance in relation to any Person against any liability asserted against the Person and incurred by the Person while serving the Company in any capacity, including, but not limited to, service as a director, an officer, and employee, an agent or a liquidator of the Company, or while serving in any capacity for another company or a partnership, joint venture, trust or other enterprise, at the request of the Company, whether or not the Company has or would have had the power to indemnify the Person against the liability as provided in these Articles.

SEAL

108. The Company may have more than one Seal and references herein to the Seal shall be references to every Seal that shall have been duly adopted by a Resolution of Directors. The directors shall provide for the safe custody of the Seal and for an imprint thereof to be kept at the Registered office. Except as otherwise expressly provided herein the Seal when affixed to any written instrument shall be witnessed and attested to by the signature of a director or any other Person so authorized from time to time by a Resolution of Directors. Such authorization may be before or after the Seal is affixed, may be general or specific and may refer to any number of sealings. The Directors may provide for a facsimile of the Seal and of the signature of any director or authorized Person which may be reproduced by printing or other means on any instrument and it shall have the same force and validity as if the Seal had been affixed to such instrument and the same had been signed as herein before described.

DIVIDENDS

109. The Company may by a Resolution of Directors declare and pay dividends in money, shares, or other property, but dividends shall only be declared and paid out of Surplus. In the event that dividends are paid in specie the directors shall have responsibility for establishing and recording, in the a Resolution of Directors authorizing the dividends, a fair and proper value for the assets to be so distributed.

110. The directors may from time to time pay to the Members such interim dividends as appear to the directors to be justified by the profits of the Company.

111. The directors may, before declaring any dividend, set aside out of the profits of the Company such sum as they think proper as a reserve fund, and may invest the sum so set apart as a reserve fund upon such Securities as they may select.

112. No dividend shall be declared and paid unless the directors determine that immediately after the payment of the dividend the Company will be able to satisfy its liabilities as they become due in the ordinary course of its business and the realizable value of the assets of the Company will not be less than the sum of its total liabilities, other than deferred taxes, as shown in its books of account, and its Capital. In the absence of fraud, the decision of the directors as to the realizable value of the assets of the Company is conclusive, unless a question of law is involved.

113. Notice of any dividend that may have been declared shall be given to each Member in manner hereinafter mentioned and all dividends unclaimed for 3 years after having been declared may be forfeited by a Resolution of Directors for the benefit of the Company.

114. No dividend shall bear interest as against the Company and no dividend shall be paid on Treasury Shares.

115. A share issued as a dividend by the Company shall be treated for all purposes as having been issued for money equal to the Surplus that is transferred to Capital upon the issue of the share.

116. In the case of a dividend of authorized but unissued shares with par value, an amount equal to the aggregate par value of the shares shall be transferred from Surplus to Capital at the time of the distribution.

117. A division of the issued and outstanding shares of a class or series of shares into a larger number of shares of the same class or series having a proportionately smaller par value does not constitute a dividend of shares.

ACCOUNTS

118. The books of account shall be kept at the registered office of the Company, its principal place of business or at such other place or places as the directors deem fit.

119. The directors shall, unless such requirement be waived by Resolution of Members, cause to be made out and shall serve on the Members or lay before a meeting of Members at some date not later than eighteen months after the incorporation of the Company and subsequently once at least in every calendar year a profit and loss account for a period in the case of the first account since the incorporation of the Company and in any other case since the preceding account, made to a date not earlier than the date of the notice by more than twelve months, and a balance sheet as at the date to which the profit and loss account is made up. The Company's profit and loss account and balance sheet shall be drawn up so as to give respectively a true and fair view of the profit or loss of the Company for that financial period, and a true and fair view of the state of affairs of the Company as at the end of that financial period.

120. A copy of such profit and loss account and balance sheet shall be served on each Member.

121. The Company may by a Resolution of Directors include in the computation of Surplus for any purpose the unrealized appreciation of the assets of the Company, and, in the absence of fraud, the decision of the directors as to the value of the assets is conclusive, unless a question of law is involved.

AUDIT

122. The Company may by Resolution of Members call for the accounts to be examined by auditors.

18

123. The auditors shall be appointed by a Resolution of Directors.

124. The auditors may be Members of the Company but no director or officer shall be eligible to be an auditor of the Company during his continuance in office.

125. The remuneration of the auditors of the Company shall be fixed by a Resolution of Directors.

126. The auditors shall examine each profit and loss account and balance sheet required to be served on every Member of the Company or laid before a meeting of the Members of the Company and shall state in a written report whether or not (a) in their opinion the profit and loss account and balance sheet give a true and fair view respectively of the profit and loss for the period covered by the accounts, and of the state of affairs of the Company at the end of that period; (b) all the information and explanations required by the auditors have been obtained.

127. The report of the auditors shall be annexed to the accounts and shall be read at the meeting of Members at which the accounts are laid before the Company or shall be served on the Members.

NOTICES

128. Any notice, information or written statement to be given by the Company to Members must be served in the case of Members holding registered shares by personal service or by mail addressed to each Member at the address shown in the share register.

129. Any summons, notice, order, document, process, information or written statement to be served on the Company may be served by leaving it, or by sending it by registered mail addressed to the Company, at its registered office, or by leaving it with, or by sending it by registered mail to, the registered agent of the Company.

130. Service of any summons, notice, order, document, process, information or written statement to be served on the Company may be proved by showing that the summons, notice, order, document, process, information or written statement was mailed in such time as to admit to its being delivered in the normal course of delivery within the period prescribed for service and was correctly addressed and the postage was prepaid.

VOLUNTARY WINDING UP AND DISSOLUTION

131. The Company may voluntarily commence to wind up and dissolve by a Resolution of Members or by a Resolution of Directors, but if the Company has never issued shares it may voluntarily commence to wind up and dissolve by a Resolution of Directors.

CONTINUATION

132. The Company may by Resolution of Members or by a resolution passed unanimously by all directors of the Company continue as a company incorporated under the laws of a jurisdiction outside the British Virgin Islands in the manner provided under those laws.

FUNDAMENTAL CHANGES

133. Notwithstanding section 80 of the Act, the Directors may sell, transfer, lease, exchange or otherwise dispose of the assets of the Company without the sale, transfer, lease, exchange or other disposition being authorised by a resolution of Members.

WE, the undersigned Registered Agent, subscribe our name to these Articles of Association.

---

NAME, ADDRESS AND DESCRIPTION OF SUBSCRIBER

---

ATU General Trust (BVI) Limited
3076 Sir Francis Drake's Highway
P.O. Box 3463
Road Town, Tortola
British Virgin Islands                    Signed by: Michael Parton

                                          _____
                                          Michael Parton
                                          Authorised Signatory

Registered Agent

---

**Dated this 1st day of May, 2000**

Witness to the above signature:-

                                          Signed by: Andrew Keuls

                                          _____
                                          Andrew Keuls
                                          Road Town
                                          Tortola
                                          British Virgin Islands

20