Lawrence B. Friedman
Elizabeth Vicens
Hugh K. Murtagh
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
Telephone: 212-225-2000
Facsimile: 212-225-3999

*Attorneys for Crédit Agricole (Suisse) S.A.*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, <br><br> Plaintiff-Applicant, <br><br> v. <br><br> BERNARD L. MADOFF INVESTMENT SECURITIES LLC, <br><br> Defendant. | SIPA Liquidation <br><br> No. 08-1789 (SMB) <br><br> (Substantively Consolidated) |
| In re: <br><br> BERNARD L. MADOFF, <br><br> Debtor. | |

IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,

        Plaintiff,

v.

CRÉDIT AGRICOLE (SUISSE) S.A., and CRÉDIT AGRICOLE S.A., a/k/a/ BANQUE DU CRÉDIT AGRICOLE,

        Defendants.

Adv. Pro. No. 12-01022 (SMB)

**SUPPLEMENTAL REPLY MEMORANDUM OF DEFENDANT CRÉDIT AGRICOLE (SUISSE) S.A. IN SUPPORT OF MOTION TO DISMISS BASED ON EXTRATERRITORIALITY**

Crédit Agricole (Suisse) S.A. ("CA Suisse") respectfully submits this reply in further support of the Motion to Dismiss[1] based on Extraterritoriality and specifically in response to the Trustee's Supplemental Memo[2] and Supplemental Allegations[3] directed at CA Suisse. The Supplemental Memo offers seven arguments (set forth below) as to why the Complaint[4] against CA Suisse, if amended to include the newly proffered allegations, should not be dismissed. These arguments are – like the underlying proffered allegations – essentially generic to all defendants, and defendants' Consolidated Reply[5] disposes of all them. To the limited extent the Supplemental Memo purports to raise any issues not fully addressed in the Consolidated Reply, CA Suisse hereby responds.

**BACKGROUND**

The Complaint alleges that CA Suisse is "a Swiss *société anonyme* and maintains a place of business at Quai Général-Guisan 4, 1204 Geneva, Switzerland." Compl. ¶ 22. The Supplemental Allegations allege that CA Suisse has "affiliates" with United States offices, SA ¶ 22, but not that CA Suisse itself has a fixed presence in the United States or a "place of business" other than Switzerland.

The Complaint asserts that CA Suisse received transfers from Fairfield Sentry, Fairfield Sigma, Kingate Global and Kingate Euro, BLMIS feeder funds registered in – and

---

[1] Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Supplemental Memorandum (defined infra note 2).
[2] Trustee's Supplemental Memorandum of Law in Opposition to the Credit Agricole Defendants' Motion to Dismiss Based on Extraterritoriality and in Further Support of the Trustee's Motion for Leave to Amend the Complaint (Adv. Pro. ECF No. 80) (the "Supplemental Memo").
[3] Trustee's Proffered Allegations Pertaining to the Extraterritoriality Issue as to the Credit Agricole Defendants (Adv. Pro. ECF No. 81) ("Supplemental Allegations" or "SA").
[4] Complaint dated January 12, 2012 (Adv. Pro. ECF No. 1).
[5] See defendants' Reply Consolidated Supplemental Memorandum of Law in Support of Transferee Defendants' Motion to Dismiss Based on Extraterritoriality (ECF No. _____; Adv. Pro. ECF No. ____), filed simultaneously herewith.

1

subject to liquidation proceedings under the laws of – the British Virgin Islands (the "Foreign Funds"). SA ¶¶ 17-20; Compl. ¶ 2.

In the Supplemental Memo, the Trustee asserts that alleged transfers from the Foreign Funds to CA Suisse were domestic United States transfers for seven reasons:

1. CA Suisse invested with the Foreign Funds to Profit from N.Y.-based BLMIS.
2. The Fairfield Funds were controlled, operated and managed from New York.
3. The Kingate operations were "based in" New York.
4. The majority of the transfers to CA Suisse utilized N.Y.-based bank accounts.
5. Fairfield transfers were made pursuant to domestic subscription agreements.
6. Additional component events of the transactions make the transfers domestic.
7. CA Suisse previously sought to utilize the U.S. Bankruptcy Code's protections.

See Supplemental Memo at 4-11.

## ARGUMENT

The allegations above are generic to all defendants and are rebutted by the Consolidated Reply. CA Suisse offers the following three supplemental points.

### I. Alleged Use of New York-Based Accounts is Irrelevant.

In the Extraterritoriality Decision, Judge Rakoff held that the use of "correspondent banks in the United States to process dollar-denominated transfers" is not "sufficient to make these foreign transfers domestic." 513 B.R. at 228 n.1. In light of this holding, the Trustee admits that the use of correspondent accounts is "not sufficient." Supplemental Memo at 8. Nevertheless, the Trustee now relies on the allegation that "Credit Agricole Suisse received a majority of the Transfers into its own New-York based correspondent accounts." Id. (emphasis added). Plainly, this allegation fails under the express terms of the Extraterritoriality Decision.

The Trustee tries to argue around the failure of his correspondent-banking allegation in two equally hopeless ways. First, the Trustee asserts, without any support, that an

2

alleged "repeated" use of correspondent accounts becomes an "important factor." Id. This makes no sense. For purposes of the extraterritoriality analysis, each transfer that the Trustee is trying to claw back must be evaluated on its own terms. See Extraterritoriality Decision, 513 B.R. at 227 (analysis "focuses on the nature of the transaction in which property is transferred"). The bank accounts allegedly used in other, irrelevant transfers have no bearing on the extraterritorial nature of any particular transfer. Moreover, even if it were appropriate to consider the transfers as a group, a group of foreign transfers would not become any more domestic by all being foreign in the same way (i.e., from one foreign entity to another, despite the involvement of a correspondent account). Finally, viewing the alleged transfers as a group also requires taking account of the many other transfers that allegedly did not use correspondent banks. See Supplemental Memo at 8 (asserting "a majority" of transfers utilized New York-based correspondent accounts). The plausible inference from this allegation is not that the use of correspondent accounts is "important" for determining whether a transfer was domestic; instead it is that the use of correspondent accounts is meaningless to such an analysis.

Second, the Trustee asserts that the use of correspondent accounts takes on greater significance when combined with other facts allegedly making the transfers "predominantly domestic." Id. This also does not make sense: An irrelevant fact does not become relevant by association. More importantly, for the reasons set forth herein and in the consolidated briefing, the Trustee's "many facts" are all irrelevant to plausibly alleging a domestic transfer between the Foreign Funds and CA Suisse.

## II.     The Kingate Funds Were Not "Based In" New York.

The Trustee's allegation that certain managers and agents of Kingate Global and Euro resided in New York is not only irrelevant, it is also false. Defendants' Consolidated Reply

3

amply explains the irrelevance of these allegations in light of governing precedents and Judge Rakoff's holding that a complaint that clearly alleged that a feeder funds' managers resided in the United States is nonetheless subject to dismissal on extraterritoriality grounds. See Consolidated Reply at 22-23 (citing Extraterritoriality Decision, 513 B.R. 232 n.4).[6]

In addition, however, the allegation that Kingate is "based in" New York is fiction. Notably, the Trustee does not offer a single allegation about the location of the alleged transferors, Kingate Global and Kingate Euro, which were registered in the BVI and are in liquidation proceedings in the BVI. Instead, the Trustee focuses on the funds' co-managers, Tremont (Bermuda) Limited ("Tremont") and Kingate Management Limited ("KML") – which also were not U.S. companies. Supplemental Memo at 7. Grasping at straws to reach the United States, the Trustee then asserts that Tremont was itself "managed" by a Connecticut company, and that KML "engaged consultants" FIM Limited and FIM Limited Advisers LLP, which consultants "had a London address" but allegedly performed due diligence on feeder funds in the United States. Id. In other words, the far-fetched support for the Trustee's assertion that Kingate Global and Kingate Euro were "based in" New York is that one of their co-managers "managers" was in Connecticut and the other co-manager had a London-based advisor that, like any other competent advisor, performed due diligence abroad. Setting aside that "based in" is a phrase without legal significance in general, and that such a "base" is irrelevant to the present analysis, the Trustee falls short of plausibly alleging that the Kingate Funds were "based in" New York.

---

[6] Because the Trustee has devoted the vast majority of his proffers to allegations regarding alleged New York connections of the Fairfield Funds, compare Supplemental Allegations ¶¶ 76-110 (Fairfield), with id. ¶¶ 111-15, 122-30 (Kingate), the Consolidated Reply then focuses on explaining why those allegations are, at best, overstated, while not dealing specifically with the Trustee's desultory allegations regarding Kingate funds.

4

**III.    Alleged "Additional Component Events" of the Transactions Were Not Components of the Transactions.**

The Extraterritoriality Decision, as well as the substantial additional authority set forth in the Consolidated Reply, make clear that the only relevant "component events" are the component events of the transfers.  See Extraterritoriality Decision, 513 B.R. at 227 (statute "focuses on the nature of the transaction in which property is transferred"), id. ("court considers the location of the transfers as well as the component events of those transactions" (emphasis added); Consolidated Reply at 11-19.  The Trustee, however, seeks to rely exclusively on alleged additional component events of a general relationship between CA Suisse and affiliates of the Fairfield Funds.  See Supplemental Memo at 9-11 (summarizing allegations that CA Suisse communicated with Fairfield funds affiliate FGG "regarding, among other things, its investments in the Fairfield Funds").  Ultimately, the Trustee attempts to shoehorn these allegations into relevance by asserting that they, "relate to . . . the transfers."  Id.  Whether or not these allegations are true , and whether or not they "relate to" the transfers, they are plainly – by the Trustee's own admission – not "component events" of the transfers.  "It is a rare case of prohibited extraterritorial application that lacks all contact with the territory of the United States," and the tangential contacts on which the Trustee relies do not render domestic the foreign transfers at issue here.  See Extraterritoriality Decision, 513 B.R. at 227 (quotations omitted).

## CONCLUSION

The remainder of the Trustee's arguments are wholly generic to all similarly-situated defendants and fail for the reasons set forth in the Consolidated Reply.  For the reasons set forth therein, above, and in the Motion to Dismiss, the Complaint against CA Suisse must be dismissed in its entirety and the Trustee's motion to amend the Complaint should be denied.

Dated: New York, New York
September 30, 2015

Respectfully submitted,

CLEARY GOTTLIEB STEEN & HAMILTON LLP


By: */s/ Lawrence B. Friedman*
Lawrence B. Friedman
(lfriedman@cgsh.com)
Elizabeth Vicens
(evicens@cgsh.com)
Hugh K. Murtagh
(hmurtagh@cgsh.com)

One Liberty Plaza
New York, New York  10006
T: 212-225-2000
F: 212-225-3999

*Attorneys for Crédit Agricole (Suisse) S.A.*

6