Lawrence B. Friedman
Elizabeth Vicens
Hugh K. Murtagh
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York  10006
Telephone: 212-225-2000
Facsimile: 212-225-3999

*Attorneys for Crédit Agricole S.A.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, <br><br> Plaintiff-Applicant, <br><br> v. <br><br> BERNARD L. MADOFF INVESTMENT SECURITIES LLC, <br><br> Defendant. | SIPA Liquidation <br><br> No. 08-1789 (SMB) <br><br> (Substantively Consolidated) |
| In re: <br><br> BERNARD L. MADOFF, <br><br> Debtor. | |

IRVING H. PICARD, Trustee for the
Liquidation of Bernard L. Madoff Investment
Securities LLC,

        Plaintiff,

v.                                                                   Adv. Pro. No. 12-01022 (SMB)

CRÉDIT AGRICOLE (SUISSE) S.A., and
CRÉDIT AGRICOLE S.A., a/k/a/ BANQUE
DU CRÉDIT AGRICOLE

        Defendants.


**SUPPLEMENTAL REPLY MEMORANDUM OF DEFENDANT CRÉDIT AGRICOLE
S.A. IN SUPPORT OF MOTION TO DISMISS BASED ON EXTRATERRITORIALITY**

Crédit Agricole S.A. ("CASA") respectfully submits this Supplemental Reply in further support of the Motion to Dismiss[1] based on Extraterritoriality and specifically in response to the Trustee's Supplemental Memo[2] and Supplemental Allegations[3] directed at CASA. The Supplemental Memo offers seven arguments (set forth below) as to why the Complaint,[4] if amended to include the newly proffered allegations, should not be dismissed. The majority of these arguments are directed exclusively at CASA's co-defendant Crédit Agricole (Suisse) S.A. ("CA Suisse") and are irrelevant to CASA. In any event, for the reasons set forth in the CA Suisse Reply,[5] those arguments also fail. The few remaining arguments are – like the underlying proffered allegations – essentially generic to all defendants, and defendants' Consolidated Reply[6] disposes of all them. To the limited extent the Supplemental Memo purports to raise any issues not fully addressed in the Consolidated Reply, CASA hereby responds.

## BACKGROUND

The Complaint alleges that CASA is "a French *société anonyme* and maintains a place of business at 91-93 Boulevard Pasteur, 75015 Paris, France." Compl. ¶ 23. The Supplemental Allegations allege that CASA has "subsidiaries" with United States offices, SA ¶ 15, but not that CASA itself has a fixed presence in the United States or a "place of business" other than in France.

---

[1] Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Supplemental Memorandum (defined infra note 2).

[2] Trustee's Supplemental Memorandum of Law in Opposition to the Credit Agricole Defendants' Motion to Dismiss Based on Extraterritoriality and in Further Support of the Trustee's Motion for Leave to Amend the Complaint (Adv. Pro. ECF No. 80) (the "Supplemental Memo").

[3] Trustee's Proffered Allegations Pertaining to the Extraterritoriality Issue as to the Credit Agricole Defendants (Adv. Pro. ECF No. 81) ("Supplemental Allegations" or "SA").

[4] Complaint dated January 12, 2012 (Adv. Pro. ECF No. 1).

[5] Supplemental Reply Memorandum of Crédit Agricole (Suisse) S.A. in Support of Motion to Dismiss Based on Extraterritoriality (ECF No. _____; Adv. Pro. ECF No. _____) ("CA Suisse Reply") (filed simultaneously herewith).

[6] See Reply Consolidated Supplemental Memorandum of Law in Support of Transferee Defendants' Motion to Dismiss Based on Extraterritoriality (ECF No. _____; Adv. Pro. ECF No. _____) (filed simultaneously herewith).

1

The Complaint asserts that CASA received transfers from Kingate Global and Kingate Euro (together, the "<u>Kingate Funds</u>"), BLMIS feeder funds registered in – and subject to liquidation proceedings under the laws of – the British Virgin Islands.  SA ¶¶ 6-7; Compl. ¶ 2. The Trustee does not allege that CASA received any transfers from any of the Fairfield Funds.

In the Supplemental Memo, the Trustee asserts that alleged transfers from the Foreign Funds to CASA were domestic United States transfers for the following seven reasons:

1.  CASA knowingly and purposely invested with the BLMIS Feeder Funds to Profit from New York-based BLMIS.
2.  The Fairfield Funds were controlled, operated and managed from New York.
3.  The Kingate operations were "based in" New York.
4.  The majority of the transfers to CA Suisse were made utilizing New York-based bank accounts.
5.  The transfers from the Fairfield Funds were made pursuant to domestic subscription agreements.
6.  Additional component events of the transactions show that the transfers were predominantly domestic.
7.  CASA previously sought to utilize the Bankruptcy Code's protections under section 546(e).

<u>See</u> Supplemental Memo at 4-11.

## ARGUMENT

On their face, the majority of the Trustee's arguments simply do not apply to CASA, because the Trustee fails to actually present any factual allegations in support of them. As noted, the Trustee never alleges that CASA received transfers from Fairfield Funds, and yet he argues that the transfers to CASA were domestic because the Fairfield Funds were controlled, operated and managed from New York and because the Fairfield Funds involved subscription agreements referencing New York law.  Similarly, the Trustee never alleges any additional "component events" of transfers to CASA, or that CASA received any transfers to New York-based accounts.  Of the three remaining arguments, two are wholly generic and unavailing arguments based on defendants' alleged contacts with BLMIS, which are fully rebutted in the

2

Consolidated Reply, and the third, that the Kingate Funds were "based in" NewYork, is simply

false.

## I.        The Kingate Funds Were Not "Based In" New York.

The Trustee's allegation that certain managers and agents of Kingate Global and

Euro resided in New York is not only irrelevant, it is also false.

Defendants' Consolidated Reply amply explains the irrelevance of these

allegations in light of governing precedents and Judge Rakoff's holding that a complaint that

clearly alleged that a feeder funds' managers resided in the United States is nonetheless subject

to dismissal on extraterritoriality grounds.    See Consolidated Reply at 22-23 (citing

Extraterritoriality Decision, 513 B.R. 232 n.4).[7]

In addition, however, the allegation that Kingate is "based in" New York is fiction.

Notably, the Trustee does not offer a single allegation about the location of the alleged

transferors, Kingate Global and Kingate Euro, which were registered in the BVI and are in

liquidation proceedings in the BVI.    Instead, the Trustee focuses on the funds' co-managers,

Tremont (Bermuda) Limited ("Tremont") and Kingate Management Limited ("KML") – which

also were not U.S companies.  Supplemental Memo at 7.  Grasping at straws to reach the United

States, the Trustee then asserts that Tremont was itself "managed" by a Connecticut company,

and that KML "engaged consultants" FIM Limited and FIM Limited Advisers LLP, which

consultants "had a London address" but allegedly performed due diligence on feeder funds in the

United States. Id.  In other words, the far-fetched support for the Trustee's assertion that Kingate

Global and Kingate Euro were "based in" New York is that one of their co-managers "managers"

---

[7] Because the Trustee has devoted the vast majority of his proffers to allegations regarding alleged New York
connections of the Fairfield Funds, compare Supplemental Allegations ¶¶ 76-110 (Fairfield), with id. ¶¶ 111-15,
122-30 (Kingate), the Consolidated Reply focuses on explaining why those allegations are, at best, overstated, but
does not address specifically the Trustee's desultory allegations regarding the Kingate Funds.

was in Connecticut and the other co-manager had a London-based advisor that, like any other competent advisor, performed due diligence abroad.  Setting aside that "based in" is a phrase without legal significance in general, and that such a "base" is irrelevant in any event to the present analysis, the Trustee falls well short of plausibly alleging that the Kingate Funds were "based in" New York.

## II.  CASA's Alleged Contacts With BLMIS Are Irrelevant and Are Fully Addressed in the Consolidated Reply.

The Trustee's two remaining arguments, concerning CASA's alleged contacts with BLMIS, are generic to all similarly-situated defendants and are fully rebutted in the Consolidated Reply.   First, the argument that CASA "knowingly and purposely invested with the BLMIS Feeder Funds to profit from New-York-based BLMIS" is leveled equally at all subsequent transferee defendants and is irrelevant to the extraterritoriality analysis that applies to all of them.  See Consolidated Reply at 26-27.  Second, the argument that CASA previously sought to use the Bankruptcy Code's protections under section 546(e) is also generic – which is presumably why the Trustee forgot to replace references to Caceis with references to CASA in this section of his Supplemental Memo – and is irrelevant to any analysis of the transfers themselves.  See Consolidated Reply at 33-34.  As a general matter, the Trustee confuses allegations that might be relevant to a personal jurisdiction analysis with arguments that are obviously irrelevant to an extraterritoriality analysis, which "focuses on the nature of the transaction in which property is transferred," not on "a mere connection to a U.S. debtor." Extraterritoriality Decision, 513 B.R. at 227; Morrison v. Nat'l Australia Bank Ltd., 561 U.S. 247, 249, (2010) ("It is a rare case of prohibited extraterritorial application that lacks all contact with United States territory.")  Accordingly, and as is shown in the Consolidated Reply, the Trustee's

4

allegations regarding CASA's contacts with BLMIS do not plausibly render domestic the alleged

transfers from BVI-based Kingate to France-based CASA.

## CONCLUSION

For the reasons set forth herein, as well as in the CA Suisse Reply, the

Consolidated Reply, and in the Motion to Dismiss, the Complaint against CASA must be

dismissed and the Trustee's motion to amend the Complaint should be denied.

Dated: New York, New York
       September 30, 2015

Respectfully submitted,

CLEARY GOTTLIEB STEEN & HAMILTON LLP


By: */s/ Lawrence B. Friedman*
    Lawrence B. Friedman
    (lfriedman@cgsh.com)
    Elizabeth Vicens
    (evicens@cgsh.com)
    Hugh K. Murtagh
    (hmurtagh@cgsh.com)

One Liberty Plaza
New York, New York  10006
T: 212-225-2000
F: 212-225-3999

*Attorneys for Crédit Agricole S.A.*