GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166
Telephone:  (212) 351-4000
Facsimile:  (212) 351-4035

*Attorneys for UBS Deutschland AG*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>    Plaintiff-Applicant,<br><br> v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>    Defendant. | Adv. Pro. No. 08-01789 (SMB)<br><br>SIPA Liquidation<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>    Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>    Plaintiff,<br><br> v.<br><br>UBS DEUTSCHLAND AG, *et ano.*,<br><br>    Defendants. | Adv. Pro. No. 12-01577 (SMB) |

**UBS DEUTSCHLAND'S SUPPLEMENTAL REPLY MEMORANDUM OF
LAW IN FURTHER SUPPORT OF ITS MOTION TO DISMISS BASED
ON EXTRATERRITORIALITY AND IN OPPOSITION TO THE
<u>TRUSTEE'S MOTION FOR LEAVE TO AMEND THE COMPLAINT</u>**

Defendant UBS Deutschland AG ("UBSD") respectfully submits this supplemental reply memorandum in further support of its motion to dismiss based on extraterritoriality and in opposition to the motion for leave to amend by plaintiff Irving H. Picard (the "Trustee"), as trustee for the liquidation of the business of Bernard L. Madoff Investment Securities LLC ("BLMIS") and the estate of Bernard L. Madoff.

## PRELIMINARY STATEMENT

Neither the Trustee's Complaint nor his Proffered Allegations Pertaining to the Extraterritoriality Issue as to the Dresdner Defendants ("Trustee's Proffer") sufficiently pleads specific facts showing that the subsequent transfers allegedly received by UBSD's alleged predecessor, Dresdner Bank Lateinamerika AG ("DBLA"), are domestic under the standard set forth in *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 513 B.R. 222 (S.D.N.Y. 2014) (the "*Extraterritoriality Decision*"). Each of the subsequent transfers that are the subject of the Trustee's claims against UBSD was made by a foreign transferor to a foreign transferee, and took place entirely outside the United States. Accordingly, they are outside the application of section 550(a)(2) of the Bankruptcy Code.

As explained in the Reply Consolidated Supplemental Memorandum of Law in Support of Transferee Defendants' Motion to Dismiss Based on Extraterritoriality (the "Consolidated Reply"), filed concurrently herewith and incorporated by reference herein, the (alleged) facts relied upon by the Trustee do not address the only issue that matters – *where the transfers occurred*. On that critical issue, the Trustee is virtually silent. But Judge Rakoff's decision is clear: The burden is on the Trustee to *affirmatively plead* facts showing that the transfers to DBLA took place in the United States, and the Trustee's evasive silence on that issue thus requires dismissal. *Extraterritoriality Decision*, 513 B.R. at 232 n.4 (holding that "unless the

Trustee can put forth specific facts suggesting a domestic transfer, his recovery actions seeking foreign transfers should be dismissed").

Because both the existing Complaint and the Trustee's Proffer fail to satisfy the Trustee's burden, the Trustee's claims against UBSD should be dismissed, and his motion for leave to amend should be denied.

## ARGUMENT

### THE TRANSFERS AT ISSUE OCCURRED OUTSIDE THE UNITED STATES

UBSD is "a German *[A]ktiengesellschaft*" with its headquarters in Frankfurt, Germany. Compl. ¶ 22; Trustee's Proffer ¶ 10. UBSD is sued as the successor in interest to DBLA, which was "a German bank" that sold its banking and wealth management operations to a subsidiary of UBS AG (UBSD's parent company), which subsidiary was later merged into UBSD. Compl. ¶ 22; Trustee's Proffer ¶ 10.

The Trustee seeks to recover from UBSD $8,409,403 in subsequent transfers allegedly received by DBLA in 2004 and 2005, consisting of:

- transfers in the amount of $6,549,175 made to DBLA by Fairfield Sentry Limited ("Fairfield Sentry"); and

- a single transfer of $1,860,228 made to DBLA by Fairfield Sigma Limited ("Fairfield Sigma").

Trustee's Proffer ¶ 3.[1]

---

[1] The total amount of the subsequent transfers from Fairfield Sentry alleged in the Trustee's Proffer differs from (and is lower than) the amount alleged in the Complaint. *Compare* Trustee's Proffer ¶ 3 (total of $6,549,175) *with* Compl. ¶ 42 & Ex. C (total of $7,230,511). The Trustee fails to offer any explanation for this discrepancy. The Trustee's Proffer also asserts that DBLA received redemption proceeds from Fairfield Sentry "at least 11 times in
*(Cont'd on next page)*

2

Fairfield Sentry and Fairfield Sigma (the "Fairfield Funds") were British Virgin Islands companies that are now in liquidation in the BVI. Compl. ¶ 2. Fairfield Sentry allegedly received fraudulent transfers from BLMIS, a portion of which was subsequently transferred to DBLA (either directly or through Fairfield Sentry). *Id.* ¶¶ 36-42, 46.

Thus, the transfers were made by foreign entities to foreign entities, and the Trustee alleges no facts – nor could he – that suggest that the transfers took place in the United States. Indeed, the Trustee alleges that the Fairfield Funds maintained bank accounts at "Citco Bank Nederland, N.V. Dublin Branch" (Trustee's Proffer ¶¶ 39, 58), suggesting that the subsequent transfers at issue here were made from that bank account in Ireland to DBLA in Germany. The transfers at issue were, therefore, foreign transfers as specified in the *Extraterritoriality Decision*, and outside the scope of section 550 of the Bankruptcy Code.

With but one exception, discussed below, rather than alleging facts about the transfers themselves, the Trustee instead identifies a host of irrelevant (alleged) facts concerning DBLA's and the Fairfield Funds' relationships with the United States, none of which bears on where the transfers occurred. *See Extraterritoriality Decision*, 513 B.R. at 227 ("the transaction being regulated by section 550(a)(2) is the transfer of property to a subsequent transferee, not the relationship of that property to a perhaps-distant debtor"). The Consolidated Reply thoroughly explains why the factors relied upon by the Trustee fail to establish that the transfers at issue are domestic. Regarding UBSD specifically:

---

*(Cont'd from previous page)*

2005 and 2006" (Trustee's Proffer ¶ 22), even though the Complaint identifies just four subsequent transfers at issue, in 2004 and 2005 (*see* Compl. Ex. C). Once again, the Trustee offers no explanation for his inconsistent allegations. Ultimately, for the reasons explained in this brief and in the Consolidated Reply, the Trustee's claims must be dismissed whatever the true number, dates, or amounts of the transfers.

3

- It is irrelevant that DBLA invested in the Fairfield Funds for the purpose of profiting from the funds' investment with BLMIS. *See* Trustee's Proffer ¶ 16. As Judge Rakoff held, "[a]lthough the chain of transfers originated with Madoff Securities in New York, that fact is insufficient to make the recovery of these otherwise thoroughly foreign subsequent transfers into a domestic application of section 550(a)." *Extraterritoriality Decision*, 513 B.R. at 228.

- It is irrelevant that DBLA allegedly had employees in its Miami, Florida office perform due diligence on Fairfield Sentry, and that employees in that office interacted with Fairfield Greenwich Group in New York in connection with investing in Fairfield Sentry. *See* Trustee's Proffer ¶¶ 14-15, 17. The facts leading to DBLA's *investment* in Fairfield Sentry and Fairfield Sigma say nothing about where its *redemptions* from those funds took place.

- Similarly, as the Consolidated Reply explains, it is irrelevant that New York law applied to disputes between DBLA and the Fairfield Funds arising out of DBLA's *subscription* to the funds. The application of New York law to such disputes says nothing about the location of the subsequent transfers at issue. Further, as Judge Rakoff held, the focus must be on the transfer from the Fairfield Funds *to* DBLA, not DBLA's transfer of investment money to the funds. *See also Fairfield Sentry Ltd. (in Liquidation) v. Migani*, [2014] UKPC 9 ¶ 10, 2014 WL 1219748 (appeal taken from the BVI) (Fairfield Sentry's subscription agreements do not control member's right to receive and retain redemptions).

Put differently, the *background of* and *reasons for* the transfers – which are the facts the Trustee addresses – are irrelevant to the question of *where* the transfers occurred.

4

The only allegation by the Trustee that even touches upon the subsequent transfers at issue is his deliberately vague allegation that DBLA "utilized" a Citibank account in New York to receive transfers of redemption proceeds from Fairfield Sentry. Trustee's Proffer ¶ 22. (The Trustee makes no allegation at all about what account was "utilized" by DBLA to receive transfers from Fairfield Sigma. And, as noted earlier (*see supra* note 1), the Trustee's allegations are inconsistent about the number of times the account was allegedly "utilized.")

Regardless of what the Trustee intended by his ambiguous terminology, and regardless of how many times the account was "utilized," the Trustee's allegation is insufficient to demonstrate that the transfers from Fairfield Sentry to DBLA took place in the United States. Judge Rakoff has already held that the use of "correspondent banks in the United States to process dollar-denominated transfers" is not sufficient to make such transfers domestic for purposes of the extraterritoriality analysis. *Extraterritoriality Decision*, 513 B.R. at 228 n.1. And although the Trustee avoids pleading whether the alleged DBLA account at Citibank was or was not a "correspondent" bank account, the Consolidated Reply (at 28-29) explains that the irrelevance of using a U.S. bank account is not limited to correspondent banks.

Because the Trustee alleges no facts suggesting that the subsequent transfers themselves took place in the United States, the Complaint and the Trustee's Proffer fail to state a cognizable claim against UBSD under section 550 of the Bankruptcy Code.

## CONCLUSION

For the foregoing reasons and those stated in the Consolidated Reply, this Court should deny the Trustee's motion for leave to amend and grant UBSD's motion to dismiss.

5

Dated:  New York, New York  
        September 30, 2015

Respectfully submitted,  
GIBSON, DUNN & CRUTCHER LLP

By:   /s/ *Marshall R. King*  
     Marshall R. King  
     mking@gibsondunn.com  
     Gabriel Herrmann  
     gherrmann@gibsondunn.com  
     200 Park Avenue  
     New York, NY  10166-0193  
     Telephone:  (212) 351-4000

*Attorneys for Defendant UBS Deutschland AG*