Robert J. Lack (rlack@fklaw.com)
FRIEDMAN KAPLAN SEILER & ADELMAN LLP
7 Times Square
New York, NY 10036-6516
Telephone: (212) 833-1100
Facsimile: (212) 833-1250

*Attorneys for Defendants Multi-Strategy Fund Limited and CDP Capital Tactical Alternative Investments*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>    Plaintiff-Applicant,<br><br>    v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>    Defendant. | No. 08-01789 (SMB)<br><br>SIPA Liquidation<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>    Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC and the Estate of Bernard L. Madoff,<br><br>    Plaintiff,<br><br>    v.<br><br>MULTI-STRATEGY FUND LIMITED and CDP CAPITAL TACTICAL ALTERNATIVE INVESTMENTS,<br><br>    Defendants. | Adv. Pro. No. 12-01205 (SMB) |

**CDP DEFENDANTS' SUPPLEMENTAL REPLY MEMORANDUM OF
LAW IN SUPPORT OF THEIR MOTION TO DISMISS BASED ON
EXTRATERRITORIALITY AND IN OPPOSITION TO
<u>TRUSTEE'S MOTION FOR LEAVE TO AMEND COMPLAINT</u>**

3127086.4

# **TABLE OF CONTENTS**

*Page*

TABLE OF AUTHORITIES .................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................... 1

ARGUMENT .............................................................................................................................. 3

    I.    NO DOMESTIC TRANSFERS TO THE CDP DEFENDANTS ARE ALLEGED IN THE COMPLAINT ................................................................. 3

    II.   THE DOMESTIC CONTACTS ALLEGED BY THE TRUSTEE ARE IRRELEVANT TO THE LOCATION OF THE TRANSFERS ....................... 7

    III.  EVEN IF NON-TRANSFER-RELATED DOMESTIC CONTACTS ARE CONSIDERED, THE COUNT RELATING TO KINGATE STILL MUST BE DISMISSED .................................................................................................. 8

CONCLUSION ........................................................................................................................ 10

# TABLE OF AUTHORITIES

*Page(s)*

**Cases**

*Absolute Activist Value Master Fund Ltd. v. Ficeto*,
   677 F.3d 60 (2d Cir. 2012)..................................................................................................6

*Barclay v. Swiss Fin. Corp. (In re Midland Euro Exch. Inc.)*,
   347 B.R. 708 (Bankr. C.D. Cal. 2006)..................................................................................5

*Loginovskaya v. Batratchenko*,
   764 F.3d 266 (2d Cir. 2014)..............................................................................................5, 8

*Maxwell Commc'n Corp. v. Barclays Bank plc (In re Maxwell Commc'n Corp.)*,
   170 B.R. 800 (Bankr. S.D.N.Y. 1994), *aff'd sub nom. Maxwell Commc'n
   Corp. v. Societe General PLC*, 186 B.R. 807 (S.D.N.Y. 1995), *aff'd on other
   grounds*, 93 F.3d 1036 (2d Cir. 1996) .................................................................................5

*Maxwell Commc'n Corp. v. Societe General PLC (In re Maxwell Commc'n
   Corp.)*, 186 B.R. 807 (S.D.N.Y. 1995), *aff'd on other grounds*, 93 F.3d 1036
   (2d Cir. 1996)........................................................................................................................4

*Morrison v. Nat'l Australia Bank*,
   561 U.S. 247 (2010)..............................................................................................................4

*Sherwood Invs. Overseas Ltd. v. Royal Bank of Scotland, N.V. (In re Sherwood
   Invs. Overseas Ltd.)*, No. 6:10-ap-00158-KSJ, 2015 WL 4486470 (M.D. Fla.
   July 22, 2015)...................................................................................................................5, 6

*SIPC v. Bernard L. Madoff Inv. Secs. LLC*,
   513 B.R. 222 (S.D.N.Y. 2014).....................................................................................1, 4, 6

**PRELIMINARY STATEMENT**

Defendants Multi-Strategy Fund Limited ("MS Fund") and CDP Capital Tactical Alternative Investments ("CDP Tactical," and together with MS Fund, the "CDP Defendants") submit this reply memorandum in support of their motion to dismiss the complaint against them (the "Complaint," No. 12-01205 ECF 1) based on extraterritoriality, and in opposition to the Trustee's motion for leave to amend the Complaint to include the additional allegations contained in the Trustee's Proffered Allegations Pertaining to the Extraterritoriality Issue as to the CDP Defendants (the "CDP Proffer," No. 12-01205 ECF 57). This memorandum supplements and incorporates by reference the arguments presented in the Reply Consolidated Supplemental Memorandum of Law in Support of Transferee Defendants' Motion to Dismiss Based on Extraterritoriality ("Consol. Reply," No. 12-01205 ECF 60).

All of the transfers allegedly received by the CDP Defendants were extraterritorial in that they were "received abroad by a foreign transferee from a foreign transferor." *SIPC v. Bernard L. Madoff Inv. Secs. LLC*, 513 B.R. 222, 232 (S.D.N.Y. 2014) (the "*Extraterritoriality Decision*"). The alleged transferees, MS Fund and CDP Tactical,[1] are both alleged to have been organized in Canada (Scheduling Order[2] at 18; *see also* Compl. ¶¶ 22-23).[3]

---

[1] Although the plaintiff Trustee alleges that the CDP Defendants "collectively received" money initially transferred from Bernard L. Madoff Investment Securities LLC ("BLMIS") to Fairfield Sentry Limited ("Fairfield Sentry") and Kingate Global Fund Ltd. ("Kingate") (CDP Proffer ¶ 1), he later alleges that MS Fund was the "fund that invested in Fairfield Sentry and Kingate Global," and that "CDP Tactical acted as the investment manager for MS Fund" (*id.* ¶ 2).

[2] "Scheduling Order" refers to the Order Concerning Further Proceedings on Extraterritoriality Motion and Trustee's Omnibus Motion for Leave to Replead and for Limited Discovery, Dec. 10, 2014, No. 12-01205 ECF 45, which includes an agreed-upon schedule showing the jurisdictions under whose laws the transferors and transferees were organized at the time of the transfers.

[3] In fact, MS Fund was incorporated in the Cayman Islands, but this difference is immaterial to this motion.

3127086.4

The alleged transferors, Fairfield Sentry and Kingate, were both organized in the British Virgin Islands (Scheduling Order at 18; *see also* Compl. ¶ 2). These allegations, and the absence of any allegations that domestic banks originated or ultimately received the transfers, are dispositive under the law Judge Rakoff set forth for this Court to apply, and mandate dismissal of the Complaint, without leave to amend, because the allegations of the Complaint solely arise under the Bankruptcy Code, which does not apply extraterritorially.

In the Trustee's response (No. 12-01205 ECF 55) to the Transferee Defendants' joint motion to dismiss, as well as in his supplemental opposition concerning the CDP Defendants (No. 12-01205 ECF 56), the Trustee points to allegations he has made, or proposes to make, concerning domestic aspects of Fairfield's (and to a far lesser extent Kingate's) operations, their supposed investments in the U.S. markets through BLMIS, and certain domestic due diligence activities in which the CDP Defendants allegedly engaged prior to investing. But as the Transferee Defendants' consolidated briefs point out, these asserted domestic contacts are irrelevant because they do not concern *the transfers themselves* that are the subject of the Trustee's clawback action. *See* Consol. Reply pt. II(A); Consolidated Supplemental Memorandum of Law in Support of the Transferee Defendants' Motion to Dismiss Based on Extraterritoriality ("Consol. Mem"), at 5-6 & n.3 (No. 12-01205 ECF 46).

3127086.4

**ARGUMENT**

I. **NO DOMESTIC TRANSFERS TO THE CDP DEFENDANTS ARE ALLEGED IN THE COMPLAINT**

The Complaint alleges that the CDP Defendants received a transfer from Kingate on March 1, 2005 (Compl. Ex. C).[4] The foreign nature of this transfer is manifest from the allegations of the Trustee's complaint against Kingate (the "Kingate Complaint"),[5] whose allegations the Trustee incorporates by reference into the Complaint (Compl. ¶ 36) as well as into his proffered allegations pertaining to the extraterritoriality issue as to the CDP Defendants (CDP Proffer ¶ 79). In particular, the Kingate Complaint alleges that:

- Kingate Global is organized under the laws of the British Virgin Islands with a registered address in the BVI (Kingate Compl. ¶ 38).

- Kingate's custodian is HSBC Bank Bermuda Limited, f/k/a Bank Bermuda Limited ("HSBC Bank Bermuda"), with a registered address in Bermuda (*id.* ¶ 79).

- HSBC Bank Bermuda, at which Kingate maintained at least four accounts (*id.* ¶ 242), received the money that BLMIS transferred to Kingate (*id.* ¶ 243; Compl. Exs. A, B).

The Trustee does not allege the identity of the bank from which Kingate made its alleged transfer to the CDP Defendants, undoubtedly because the only plausible inference from what is pleaded is that that transfer was sent from HSBC Bank Bermuda. *See* CDP Proffer ¶ 76 (HSBC Bank N.A. was Kingate's custodian). Indeed, the Trustee alleges that HSBC Bank Bermuda received at least $916 million from BLMIS but identifies only $466,364 that HSBC Bank Bermuda received in fees (Kingate Compl. ¶¶ 243, 245-46, 258). The only plausible

---

[4] The Complaint also alleged transfers on April 1, 2001 and December 19, 2006 (Compl. Ex. C), but these allegations have been withdrawn in the CDP Proffer, which alleges total transfers from Kingate equal to the amount transferred on March 1, 2005 (CDP Proffer ¶ 1).

[5] The current version of the Kingate Complaint is the Fourth Amended Complaint captioned *Picard v. Ceretti*, No. 09-01161 ECF 100 (Mar. 17, 2014).

3

inference from these allegations is that HSBC Bank Bermuda transferred virtually all the money it received from BLMIS to Kingate's investors.

The Complaint also alleges that the CDP Defendants received transfers from Fairfield Sentry on March 15, 2005 (Compl. Ex. F). The foreign nature of this transfer likewise is manifest from the allegations of the Trustee's complaint against Fairfield Sentry, whose allegations the Trustee incorporates by reference into the Complaint (Compl. ¶ 44), and from the allegations of the Trustee's proffered Second Amended Complaint against Fairfield (the "Fairfield Complaint"),[6] which the Trustee incorporates into his proffer as to the CDP Defendants (CDP Proffer ¶ 51). The Fairfield Complaint alleges that Fairfield Sentry was organized under the laws of the British Virgin Islands (Fairfield Compl. ¶ 40; CDP Proffer ¶ 31), and that it maintained bank accounts at Citco Bank Nederland, N.V. Dublin Branch in Ireland (Fairfield Compl. ¶¶ 42, 452; CDP Proffer ¶ 37).

As discussed in the Consolidated Reply, the critical factor in assessing extraterritoriality is the location of the challenged transfer. Whether that location was domestic depends on the location from which the transfer was made and in which it was ultimately received. It is true that in his opinion, Judge Rakoff stated that "[t]o determine whether the transfers at issue in this consolidated proceeding occurred extraterritorially, 'the court considers the location of the transfers as well as the component events of those transactions.'" *Extraterritoriality Decision*, 513 B.R. at 227 (quoting *Maxwell Commc'n Corp. v. Societe General PLC (In re Maxwell Commc'n Corp.)*, 186 B.R. 807, 817 (S.D.N.Y. 1995), *aff'd on other grounds*, 93 F.3d 1036 (2d Cir. 1996)). But *Morrison v. Nat'l Australia Bank*, 561 U.S.

---

[6] The Proffered Second Amended Complaint is captioned *Picard v. Fairfield Investment Fund Limited*, No. 09-01239 ECF 187 (June 26, 2015).

4

3127086.4

247 (2010), limited *Maxwell*, so the only "component events" of a monetary transfer that now matter are the components in which the transferor sends the transfer and the transferee receives it. Certainly, where the plaintiff does not allege either that the transfer was sent from a bank in the United States or was ultimately received by a bank in the United States, the transfer cannot be considered domestic.[7]

Significantly, in the two cases Judge Rakoff cited after quoting *Maxwell*, the transfers were found to be foreign where the sending and receiving banks were foreign: *Maxwell* involved a transfer from Maxwell's account with NatWest in London to an account at Barclays' branch in London, *see Maxwell Commc'n Corp. v. Barclays Bank plc (In re Maxwell Commc'n Corp.)*, 170 B.R. 800, 804 (Bankr. S.D.N.Y. 1994), *aff'd sub nom. Maxwell Commc'n Corp. v. Societe General PLC*, 186 B.R. 807 (S.D.N.Y. 1995), *aff'd on other grounds*, 93 F.3d 1036 (2d Cir. 1996), and in *Barclay v. Swiss Fin. Corp. (In re Midland Euro Exch. Inc.)*, 347 B.R. 708, 715 (Bankr. C.D. Cal. 2006), "the funds originated from a bank account in London and, although transferred through a bank account in New York, eventually ended up in another bank account in England." *Accord Sherwood Invs. Overseas Ltd. v. Royal Bank of Scotland, N.V. (In re Sherwood Invs. Overseas Ltd.)*, No. 6:10-ap-00158-KSJ, 2015 WL 4486470, at *19-20 (M.D. Fla. July 22, 2015) (citing Judge Rakoff's decision and refusing to apply Bankruptcy Code to transfers from accounts in Switzerland to accounts in England).

---

[7] This is not to suggest that the mere allegation that a transfer was sent from or ultimately received in a U.S. bank account would be sufficient to allege a domestic transfer. *See Loginovskaya v. Batratchenko*, 764 F.3d 266, 275 (2d Cir. 2014) (wiring money to a U.S. bank "is insufficient to demonstrate a domestic transaction"); Consol. Reply pt. II(B)(7). But where the complaint fails to allege that *either* the transferring bank or the ultimately receiving bank was in the United States, it surely has not alleged a domestic transfer.

The Complaint, even as supplemented by the CDP Proffer, fails to allege that any of the transfers to the CDP Defendants originated from or ultimately were received by a bank in the United States. Nor can such an allegation be inferred, because where, as here, "the Trustee's complaint[] allege[s] that both the transferor and the transferee reside outside of the United States, there is no plausible inference that the transfer occurred domestically." *Extraterritoriality Decision*, 513 B.R. at 232 n.4. In such a circumstance, where the Trustee has failed to "put forth specific facts suggesting a domestic transfer, his recovery action[] . . . should be dismissed." *Id*.

The Trustee's failure to allege that the transfers to the CDP Defendants originated from or ultimately were received by a U.S. bank is fatal to his claims against the CDP Defendants. This fatal flaw in the Trustee's pleading remains even if, as the Trustee argues, Fairfield Sentry (notwithstanding its organization in the BVI) "resided" in the United States by virtue of certain U.S. operations. As the Second Circuit stated in *Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60 (2d Cir. 2012), "residency does not affect where a transaction occurs," *id*. at 69, and hence the Trustee must still "put forth specific facts suggesting a domestic *transfer*," *Extraterritoriality Decision*, 513 B.R. at 232 n.4 (emphasis added), not merely a domestic *transferor*. *See Sherwood*, 2015 WL 4486470, at *20 (rejecting application of Bankruptcy Code to transfer from Swiss account to English account, even though transfer was initiated by BVI corporation's principal who lived in the U.S.).

The Complaint should be dismissed with prejudice; leave to amend should be denied. In contrast to *Absolute Activist*, in which leave to amend was granted where the plaintiffs "represent[ed] that the underlying transactional documents, which are not currently part of the record . . . , demonstrate that the transactions occurred in the United States," 677 F.3d at 713, the Trustee, despite having been given the opportunity to do so, has made no such

6

3127086.4

representation and has not proffered the wire transfer documentation showing the originating and ultimately receiving banks for the transfers in question.

## II. THE DOMESTIC CONTACTS ALLEGED BY THE TRUSTEE ARE IRRELEVANT TO THE LOCATION OF THE TRANSFERS

The Trustee argues that even if the CDP Defendants are organized in Canada, Kingate and Fairfield Sentry were organized in the BVI, and the transfers in question originated in one foreign bank and ended up in another, the transfers to the CDP Defendants were nevertheless domestic because the transferors had U.S. operations and purported to invest in the U.S. market, and because the CDP Defendants performed due diligence in the U.S. As discussed in the Consolidated Reply, these factors are irrelevant to the location of the transfers themselves and thus to whether the Bankruptcy Code applies to them.

Inasmuch as most of the proffered allegations against the CDP Defendants are similar to those against other Transferee Defendants and are discussed in the omnibus briefs, the CDP Defendants will focus here on those allegations that relate specifically to them. These pertain to alleged due diligence the CDP Defendants performed in New York at the time of their investment in Fairfield Sentry and Kingate (CDP Proffer ¶¶ 10, 12-16), and cautionary messages they allegedly received about Madoff prior to redeeming (*id*. ¶¶ 11, 17).

The allegations concerning due diligence at the time of investment, such as that "the CDP Defendants visited FGG's New York headquarters to meet with FGG senior partners" (*id*. ¶ 13), plainly have no bearing on whether the redemption made the following year was domestic or foreign. And although the allegations concerning the CDP Defendants' motivation for redemption – that they "were informed and influenced by the opinions of Albourne America and Albourne Partners" that Madoff might be orchestrating a Ponzi scheme (*id*. ¶ 17) – involve

7

3127086.4

events closer in time to the transfers at issue, they still do not relate to the location of the transfers themselves.

Even if the location of discussions preceding a redemption were relevant to the location of the ensuing transfer, there is no allegation in the CDP Proffer that the cautionary messages allegedly given to the CDP Defendants were delivered in the United States. Indeed, the only particularized allegation provided by the Trustee is that CDP Tactical's president wrote an email to Albourne Partners' managing director about "a conversation you and I had in February of 2005 . . . We had discussed Madoff and the potential [P]onzi scheme. Got so scared . . . that we redeemed on March 31st of 2005." (*Id.*) Notably, the CDP Proffer does *not* allege that this February 2005 conversation occurred in the United States. That is because the conversation actually took place in *London* – a fact that is apparent from the email the Trustee quotes, and which the Trustee has hidden from the Court by the use of an ellipsis.[8]

### III. EVEN IF NON-TRANSFER-RELATED DOMESTIC CONTACTS ARE CONSIDERED, THE COUNT RELATING TO KINGATE STILL MUST BE DISMISSED

Even if the Court could consider non-transfer-related factors such as the location of a transferor's operations, neither the Complaint nor the CDP Proffer contains any substantial allegations concerning the domestic operations of Kingate. The allegations of the Kingate Complaint and the CDP Proffer in fact underscore the *foreign* nature of Kingate's operations:

---

[8] The actual email reads (with the portions omitted by the Trustee italicized here): "I remember a conversation you and I had in February of 2005 *in a restaurant of London (reviewed my notes last night)*. We had discussed Madoff and the potential ponzi scheme. Got so scared *on my way back to Montreal* that we redeemed on March 31st of 2005." (Reply Declaration of Robert J. Lack, Sept. 30, 2015, Ex. A.) Inasmuch as the Trustee purports to quote this email in the CDP Proffer, this Court can consider the email on this motion. *See Loginovskaya*, 764 F.3d at 274 n.8.

8

3127086.4

- The individuals who established and control Kingate, Federico Ceretti and Carlo Grosso, are Italian nationals who reside in the United Kingdom (Kingate Compl. ¶¶ 2, 32-33, 45).

- Kingate's co-manager, Kingate Management Limited, is organized under the laws of, and has a registered address in, Bermuda (*id.* ¶ 44, 46).

- Kingate's other co-manager, Tremont (Bermuda) Limited, also was formed in Bermuda (CDP Proffer ¶ 56).

- Kingate's administrator, Citi Hedge Fund Services Limited, also is organized under the laws of, and has a registered address in, Bermuda (Kingate Compl. ¶ 72).[9]

Thus, even if the Court were to find the allegations concerning the Fairfield Sentry transfer in Count II of the Complaint (as supplemented by the CDP Proffer) to be sufficient, Count I of the Complaint, relating to Kingate, would have to be dismissed.

---

[9] The Trustee's claim that Kingate was managed from New York cites three individuals based in New York, but they allegedly signed co-management agreements with *Bermudian* entities Kingate Management Limited and Tremont (Bermuda) Limited (Proffer ¶¶ 66, 69) and performed due diligence for *London*-based FIM Limited and FIM Advisers LLP (*id.* ¶¶ 71-72).

9

3127086.4

## **CONCLUSION**

For the foregoing reasons, the Trustee's Complaint against the CDP Defendants should be dismissed with prejudice, without leave to amend.

Dated: New York, New York
September 30, 2015

Respectfully submitted,

s/ Robert J. Lack
Robert J. Lack (rlack@fklaw.com)
FRIEDMAN KAPLAN SEILER
& ADELMAN LLP
7 Times Square
New York, NY 10036-6516
Telephone: (212) 833-1100
Facsimile: (212) 833-1250

*Attorneys for Defendants Multi-Strategy Fund Limited and CDP Capital Tactical Alternative Investments*