KATTEN MUCHIN ROSENMAN LLP
575 Madison Avenue
New York, New York 10022

*Attorneys for Defendants Access International Advisors Ltd.,*
*Access Management Luxembourg SA,*
*Access Partners SA, and Patrick Littaye*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>Plaintiff-Applicant,<br><br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>Defendant. | Adv. Pro. No. 08-01789 (SMB)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>Plaintiff,<br><br>v.<br><br>UBS AG, UBS (LUXEMBOURG) SA, UBS FUND SERVICES (LUXEMBOURG) SA, UBS THIRD PARTY MANAGEMENT COMPANY SA, ACCESS INTERNATIONAL ADVISORS LLC, ACCESS INTERNATIONAL ADVISORS EUROPE LIMITED, ACCESS INTERNATIONAL ADVISORS LTD., ACCESS PARTNERS (SUISSE) SA, ACCESS MANAGEMENT LUXEMBOURG SA (f/k/a ACCESS INTERNATIONAL ADVISORS (LUXEMBOURG) SA) as represented by its Liquidator MAITRE FERNAND ENTRINGER, ACCESS PARTNERS SA as represented by its Liquidator MAITRE FERNAND ENTRINGER, PATRICK LITTAYE, CLAUDINE MAGON DE LA | Adv. Pro. No. 10-04285 (SMB) |

VILLEHUCHET (a/k/a CLAUDINE DE LA VILLEHUCHET) in her capacity as Executrix under the Will of THIERRY MAGON DE LA VILLEHUCHET (a/k/a RENE THIERRY DE LA VILLEHUCHET), CLAUDINE MAGON DE LA VILLEHUCHET (a/k/a CLAUDINE DE LA VILLEHUCHET) individually as the sole beneficiary under the Will of THIERRY MAGON DE LA VILLEHUCHET (a/k/a RENE THIERRY DE LA VILLEHUCHET), PIERRE DELANDMETER, THEODORE DUMBAULD, LUXALPHA SICAV as represented by its Liquidators MAITRE ALAIN RUKAVINA and PAUL LAPLUME, MAITRE ALAIN RUKAVINA AND PAUL LAPLUME, in their capacities as liquidators and representatives of LUXALPHA SICAV, ROGER HARTMANN, RALF SCHROETER, RENE EGGER, ALAIN HONDEQUIN, HERMANN KRANZ, BERND (a/k/a, BERNARD) STIEHL, GROUPEMENT FINANCIER LTD.,

              Defendants.

**REPLY MEMORANDUM OF LAW OF DEFENDANTS ACCESS INTERNATIONAL ADVISORS LTD., ACCESS MANAGEMENT LUXEMBOURG S.A., ACCESS PARTNERS S.A., AND PATRICK LITTAYE IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS BASED ON EXTRATERRITORIALITY AND IN OPPOSITION TO THE TRUSTEE'S MOTION FOR LEAVE TO AMEND COMPLAINTS**

Defendants Access International Advisors Ltd. ("Access Ltd."), Access Management Luxembourg SA (f/k/a Access International Advisors (Luxembourg)("AIA Lux")) (as represented by its Liquidator Maître Fernand Entringer) ("AML"), Access Partners SA (as represented by its Liquidator Maître Fernand Entringer) ("Access Partners"), and Patrick Littaye ("Littaye" and, together with Access Ltd., AML, and Access Partners, the "Access Defendants") respectfully submit this reply memorandum of law in further support of their motion to dismiss based on extraterritoriality and in opposition to the motion of Irving H. Picard (the "Trustee"), Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") for leave to file a second amended complaint in this adversary proceeding (the "Proposed Second Amended Complaint" or "PSAC"). The Access Defendants also adopt and incorporate as if set forth fully herein the arguments and grounds supporting dismissal without leave to amend set forth in the Consolidated Supplemental Reply.[1]

## PRELIMINARY STATEMENT

The Trustee seeks to recover foreign transfers from the Access Defendants, all of which are foreign entities that rendered services to foreign feeder funds. Neither the current complaint nor the Proposed Second Amended Complaint makes any plausible allegation that the transfer of fees to the Foreign Access Defendants was made from the United States or to the United States. Consequently, (i) the Trustee's Amended Complaint against the Access Defendants filed on August 17, 2011 (the "Amended Complaint") must be dismissed; and (ii) the Trustee's motion for leave to amend should be denied.

---

[1] The term "Consolidated Supplemental Reply" refers to the Consolidated Supplemental Reply Memorandum of Law in Further Support of the Transferee Defendants' Motion to Dismiss Based on Extraterritoriality and in Opposition to the Trustee's Motion for Leave to Amend His Complaints filed on September 30, 2015.

1

**FACTUAL BACKGROUND**

All of the Access Defendants are, by the Trustee's own pleadings, either entities organized abroad with principal places of business and registered offices in foreign locations, or a foreign national. The foreign Access Defendants are alleged to have received subsequent transfers from so-called Madoff feeder funds including Groupement Financier Ltd. ("Groupement"), (PSAC, ¶ 61) and Luxalpha SICAV ("Luxalpha") (*Id*. at ¶ 55), or various foreign entities that services those foreign funds (specifically: (i) UBS (Luxembourg) S.A. ("UBS SA") (incorporated in Luxembourg); and (ii) UBS Third Party Management Company SA ("UBSTPM") (incorporated in Luxembourg)). When the Amended Complaint and PSAC are analyzed, it is clear that the Transfer to the Access Defendants described more fully below did not take place in the United States.

**The Funds**

Groupement is an investment fund organized under the laws of the British Virgin Islands, with a registered agent and registered office located therein. PSAC, ¶ 61. Groupement invested with BLMIS, holding account number 1FR096. *Id*. at ¶ 87.

Groupement Levered/Groupement II is a fund which was also organized under the laws of the British Virgin Islands. *Id.* at ¶ 88. Groupement Levered is alleged to have invested all of its assets with Groupement, which in turn is alleged to have invested all of its assets with BLMIS. *Id.*

Luxalpha is a Luxembourg-based UCITS fund with a registered office located in the same jurisdiction. *Id*. at ¶ 55. Luxalpha was placed in liquidation by the District Court of Luxembourg on April 2, 2009 and is represented herein by its court-appointed liquidators, Maître Alain Rukavina, barrister (avocat á la Cour) and Paul LaPlume, company auditor, both residents of Luxembourg. *Id*. at ¶¶ 56, 57. Luxalpha is alleged to have invested with BLMIS, though the

2

account, 1FR108, was held in the name of "UBS (Luxembourg) S.A. for the benefit of Luxalpha." *Id*. at ¶¶ 103, 105.

**The Access Service Providers**

Access Ltd. is a limited liability company incorporated in the Bahamas with its registered office located there. PSAC, ¶ 47. Access Ltd. was identified as the "operator, sponsor, and investment advisor" of Groupement. *Id.* at ¶ 134. While the Trustee identifies Access Ltd. as listed in various operating memoranda as the investment manager to Groupement, he alleges that Access Ltd. did not, in fact, act as investment manager to Groupement. *Id.* at ¶¶ 91, 94, 134. AIA Ltd. is also alleged to have served as the "official 'Consultant and Client introducer' and exclusive introducing agent" for Luxalpha. *Id.* at ¶ 135. According to the PSAC, although Access Ltd. was formed in 1998, as of 2004 it "did not have a physical presence in any jurisdiction." *Id.*

AML (f/k/a AIA Lux) is a société anonyme incorporated and organized under the laws of Luxembourg, with a registered office therein.[2] PSAC, ¶ 48. AIA Lux served as Luxalpha's portfolio advisor from February 4, 2004 until August 1, 2004, where it is alleged to have advised defendant UBS SA, a Luxembourg based entity, in connection with UBS SA's role as portfolio manager of Luxalpha. *Id.* at ¶¶ 91, 94, 140. AML formally served as portfolio manager for Luxalpha from November 17, 2008 through its liquidation, but entered into an Investment Advisory Agreement with Access Partners. *Id*. at ¶¶ 118, 140.

Access Partners is a société anonyme incorporated and organized under the laws of Luxembourg, with a registered office within that jurisdiction. PSAC, ¶ 49. The Trustee alleges that Access Partners formally served as Luxalpha's investment advisor from February 13, 2007

---

[2] AML and Access Partners are represented in this action by their Liquidator Maître Fernand Entringer.

3

through its liquidation, during which time it advised defendant UBSTPM, an entity organized under the laws of Luxembourg, and later AML, in connection with their roles as managers for Luxalpha. *Id.* at ¶¶ 45, 141. Access Partners was also designated as Groupement's investment advisor. *Id.* at ¶¶ 91, 94.

Littaye is alleged to be "a citizen of France." PSAC, ¶ 50. Plaintiff alleges that Mr. Littaye served as co-founder, Partner, Chairman, and Chief Executive Officer and co-owner of AIA LLC; director of Luxalpha and Groupement; and co-owner of AIA Ltd., AML and Access Partners. *Id*. Plaintiff also alleges that Mr. Littaye maintained a relationship with Madoff beginning 1985 and that "this relationship led to Access's dealings with BLMIS." *Id*. at ¶ 76.

**The Alleged Transfers**

The Trustee alleges, based on his "investigation to date, that Feeder Fund Defendants Luxalpha and Groupement Financier subsequently transferred some of the Initial Transfers to the Access Defendants . . . as payment for their alleged service of the Feeder Fund Defendants." *Id*. at ¶ 288. As to each of the Access Defendants specifically, the Trustee avers:

> AIA Ltd. received at least $25.4 million in fees from February from UBS SA pursuant to a February 5, 2004 "Consulting and Exclusive Introducing Agreement," which consisted of fees received by UBS SA from Luxalpha for serving as Luxalpha's official manager. AIA Ltd. also received at least $28.5 million in fees from UBSTPM under an August 1, 2006 "Client Introducer Agreement," which consisted of fees received by UBSTPM from Luxalpha for serving as Luxalpha's official manager. AIA Ltd. further received at least $15 million in fees from Groupement Financier for serving as the official manager of Groupement Financier from 2003 to December 2008, and received at least $400,000 in fees for serving as the official manager of Groupement Levered from 2003 to December 2008.
>
> AML (f/k/a AIA (Lux)) received at least $2.4 million in fees from Groupement Financier for serving as the investment advisor to Groupement Financier from 2003 to 2007, and received at least $50,000 for serving as the investment advisor to Groupement Levered from 2003 to 2007. In addition, AML (f/k/a AIA (Lux)) received fees from UBS SA in connection with its role as official portfolio advisor to Luxalpha from February 2004 to August 2004, which consisted of fees

4

> received by UBS SA from Luxalpha for serving as Luxalpha's official manager, in an amount to be proven at trial.
>
> AP (Lux) received at least $17.8 million in fees from UBSTPM for serving as the investment advisor to Luxalpha from 2007 to December 2008, consisting of fees received by UBSTPM from Luxalpha for serving as Luxalpha's official manager. AP (Lux) also received at least $8.4 million in fees from Groupement Financier for serving as the official investment advisor to Groupement Financier from 2007 to December 2008, and received an additional $2.5 million in fees from Groupement Levered for serving as the official investment advisor to Groupement Levered from 2007 to December 2008.

*Id*. at ¶ 290.

As to Littaye, the Trustee conclusory alleges that he "received millions of dollars of Subsequent Transfers, in an amount to be proven at trial" and that a "significant amount of the Subsequent Transfers received by AIA Ltd., AIA LLC, AP (Lux), and AML (f/k/a AIA (Lux)) were subsequently transferred to Littaye and Villehuchet, either directly or indirectly, in the form of distributions, payments, or other transfers of value." *Id.* at ¶ 291. Finally, the Trustee asserts that non-moving defendant Villehuchet received $6.5 million in compensation paid from bank accounts controlled by Access's New York office from 2004 through 2008, and, "upon information and belief, co-owner Littaye received at least the same amount of compensation paid from other Access-controlled bank accounts." *Id.* Notably, the Trustee does not allege the location of the accounts nor tie them in any way to the initial transfers from BLMIS nor to either of the Funds.

In sum, the Trustee's allegations on their face demonstrate that the Access Defendants were foreign companies (and a foreign national), who received foreign transfers from purely foreign investment funds and entities. There are no allegations that any of the transfers ever touched U.S. soil, not at their origination points and not at their destinations.

5

**ARGUMENT**

**The Amended Complaint Must Be
Dismissed Under the Extraterritoriality Decision**

On July 7, 2014, Judge Rakoff decided the consolidated motion to dismiss of the Transferee Defendants (including the Access Defendants) based on extraterritoriality. *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 513 B.R. 222 (S.D.N.Y.2014) (the "Extraterritoriality Decision"). Judge Rakoff held:

> [I]t is the Trustee's obligation to allege "facts giving rise to the plausible inference that" the transfer occurred "within the United States." *Here, to the extent that the Trustee's complaints allege that both the transferor and the transferee reside outside of the United States, there is no plausible inference that the transfer occurred domestically.* Therefore, unless the Trustee can put forth specific facts suggesting a domestic transfer, his recovery actions seeking foreign transfers should be dismissed.

*Id.* at 232 n.4 (emphasis added and internal citation omitted).[3] Judge Rakoff then remanded the adversary proceedings against the Access and the other Transferee Defendants to this Court "for further proceedings consistent with this Opinion and Order." *Id.* at 232.

The Trustee makes no effort to argue that the current operative Amended Complaint could withstand scrutiny under Judge Rakoff's ruling in the Extraterritoriality Decision. Nor could he. There are no facts suggesting that any of the transfers alleged to have been received by any of the Access Defendants are domestic. The transfers at issue were made from purely foreign entities (including: (i) UBS SA (Luxembourg); (ii) UBSTPM (Luxembourg); (iii) Groupement Financier (BVI); (iv) Groupement Levered (BVI); and (v) Luxalpha (Luxembourg))

---

[3] Judge Rakoff's ruling is consistent with pre-existing Supreme Court and Second Circuit authorities. As explained in the Consolidated Supplemental Reply, the Supreme Court and Second Circuit have repeatedly held that whether a claim would require an impermissible extraterritorial application of a statute depended on the location of the conduct that is the "focus" of the statute, or the "object of the statute's solicitude." Here, the conduct that is the focus is the Transfers at issue. *See* Transferee Reply Brief at 10-18 (*citing* Supreme Court and Second Circuit cases).

6

to the purely foreign Access Defendants.  The transfers are alleged neither to originate from the United States nor sent to the United States.  They are not alleged to have any domestic components whatsoever.  Therefore, the Amended Complaint should be dismissed under the Extraterritoriality Decision.

**The Trustee's Motion for Leave to**
**Amend Should Be Denied as Futile**

Unable to support the Amended Complaint after the Extraterritoriality Decision, the Trustee instead seeks leave to again amend his complaint to add additional allegations.  "An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to [Rule] 12(b)(6)."  *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002).  Thus, "[a] trial court does not abuse its discretion in denying leave to amend a complaint which even as amended would fail to state a cause of action."  *S.S. Silberblatt, Inc. v. E. Harlem Pilot Block Bldg. 1 Hous. Dev. Fund Co.*, 608 F.2d 28, 42 (2d Cir. 1979).  Because the Trustee cannot show that any of the subsequent transfers he seeks to recover occurred within the United States, the Trustee's effort to amend his complaint is futile, and his motion should be denied.

The Trustee advances two reasons to establish that its Proposed Second Amended Complaint is not futile.  Neither is availing.  First, the Trustee claims that the Access Defendants "directed the creation of Luxalpha and Groupement Financier and serviced these funds for the sole purpose of investment with BLMIS in New York," and that the Access Defendants received fees "as a result of these investments." Opp. at 3-4.[4]  The Trustee's argument completely misses the point of the Extraterritoriality Decision.  Rather than pleading facts sufficient to give rise to a plausible inference that the transfers he seeks to recover occurred within the United States, as he

---

[4] "Opp." refers to The Trustee's Supplemental Memorandum of Law in Opposition to the Access Defendants' Motion to Dismiss Based on Extraterritoriality and in Further Support of the Trustee's Motion for Leave to Amend Complaints, dated June 26, 2015.

7

is required to do to satisfy his burden, the Trustee instead focuses on the Access Defendants' alleged knowledge of the feeder funds investment in BLMIS, and that the Access Defendants received related (albeit distant) subsequent transfers. As Judge Rakoff explained, however, allegations that "the chain of transfers originated with Madoff Securities in New York . . . [are] insufficient to make the recovery of these otherwise thoroughly foreign subsequent transfers into a domestic application of section 550(a)." 513 B.R. at 228. Because the new allegations within the Proposed Second Amended Complaint say nothing whatsoever concerning the location of the transfers to the Access Defendants, the Trustee has failed to meet his burden, and his motion to amend should be held to be futile.

Second, the Trustee focuses on the domestic operations of alleged affiliates of the Access Defendants. The Trustee alleges that non-moving defendant AIA LLC's "New York offices served as the headquarters for Access's operations" that the various Access entities, including the moving Access Defendants "operated as a single business enterprise, or alter egos of one another" and that "each of AIA Ltd., AP (Lux) and AML . . . was either completely or nearly-completely owned by Littaye and Access co-founder Villehuchet." PSAC, ¶¶ 132, 291; *see also* Opp. at 5, 10. This argument fails for several reasons. First, the Trustee ignores corporate formalities without any showing that piercing the corporate veil is warranted. As the Trustee acknowledges, each of the Access Defendants were legally incorporated and distinct. In addition, the Trustee's argument attempts to misdirect the focus of attention from the dispositive inquiry – where the relevant transfers occurred – to non-relevant ancillary actions alleged to have occurred in the United States. In essence, the Trustee claims that some of the services, for which the Access Defendants received fees, were actually performed by employee's in Access's New York office. *See, e.g.* PSAC, ¶ 136 (AIA Ltd. relied on Access personnel in New York to

8

complete reports for Luxalpha and Groupement), ¶ 144 (Analyses of Luxalpha's and Groupement's performance were composed on AP (Lux) letterhead, but internal documents showed that these analyses were prepared by employees in Access's New York headquarters). But of course, the Trustee's vague allegations of the activities of an undefined "Access" group in the United States has no bearing on whether the Transfers that the Access Defendants received were domestic or foreign. As explained in the Consolidated Supplemental Reply, similar facts were considered by Judge Rakoff and rejected as irrelevant to the question of where the Transfers occurred. *See* Consolidated Supplemental Reply at 20-23. Similarly, the Trustee's allegations that Littaye spent time, or conducted activity in the United States does not substitute for the missing allegations that he received subsequent transfers there.

Simply stated, none of the allegations in the Proposed Second Amended Complaint, singly or in combination, give rise to a plausible inference that the alleged subsequent transfers to any of the Access Defendants occurred in the United States.

9

## CONCLUSION

For the reasons set forth above, the Trustee's motion for leave to amend its complaint should be denied and the Access Defendants' motion to dismiss the operative Amended Complaint should be granted.

Dated: New York, New York
September 30, 2015

    Respectfully submitted,

    KATTEN MUCHIN ROSENMAN LLP

    By:    s/ Anthony L. Paccione
        Anthony L. Paccione
        anthony.paccione@kattenlaw.com
        Brian L. Muldrew
        brian.muldrew@kattenlaw.com
        Allison M. Wuertz
        allison.wuertz@kattenlaw.com

        575 Madison Avenue
        New York, New York 10022
        (212) 940-8800 (p)
        (212) 940-8776 (f)

        *Attorneys for Defendants Access International Advisors Ltd., Access Management Luxembourg SA, Access Partners SA, and Patrick Littaye*