**LATHAM & WATKINS LLP**
885 Third Avenue
New York, New York 10022
Telephone:  (212) 906-1200
Facsimile:  (212) 751-4864

*Attorneys for ABN AMRO Bank (Ireland) Ltd.*
*(f/k/a Fortis Prime Fund Solutions Bank*
*(Ireland) Ltd.) (n/k/a ABN AMRO Retained*
*Custodial Services (Ireland) Limited) and*
*ABN AMRO Custodial Services (Ireland) Ltd.*
*(f/k/a Fortis Prime Fund Solutions Custodial*
*Services (Ireland) Ltd.)*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (SMB) |
| Plaintiff-Applicant, | SIPA Liquidation |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and Bernard L. Madoff, | Adv. Pro. No. 10-05355 (SMB) |
| Plaintiff, | |
| v. | |
| ABN AMRO BANK (IRELAND), LTD, (f/k/a FORTIS PRIME FUND SOLUTIONS BANK (IRELAND) LIMITED) and | |
| ABN AMRO CUSTODIAL SERVICES (IRELAND), LTD (f/k/a FORTIS PRIME FUND SOLUTIONS CUSTODIAL SERVICES (IRELAND) LTD.), | |
| Defendants. | |

**ABN DEFENDANTS' SUPPLEMENTAL MEMORANDUM OF LAW IN
SUPPORT OF DEFENDANTS' MOTION TO DISMISS BASED ON
EXTRATERRITORIALITY AND IN REPLY TO THE TRUSTEE'S MOTION
FOR LEAVE TO AMEND COMPLAINTS**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................1

BACKGROUND ........................................................................................................1

ARGUMENT ............................................................................................................3

I.     COUNT FOUR OF THE AMENDED COMPLAINT MUST BE DISMISSED...............3

II.    AMENDMENT WOULD BE FUTILE BECAUSE THE TRUSTEE'S PROFFERED
       ALLEGATIONS HAVE NOT RAISED A PLAUSIBLE INFERENCE THAT THE
       TRANSFERS WERE DOMESTIC IN NATURE...................................................4

       A.    The Proffered Allegations Demonstrate that the ABN Defendants Were
             Foreign Transferees .................................................................4

       B.    The Proffered Allegations Demonstrate that the Kingate Was a Foreign
             Transferor..............................................................................4

       C.    The Proffered Allegations Have Not Demonstrated that the Transfers
             Occurred Within the United States .................................................5

       D.    The Proffered Allegations That the ABN Defendants and Non-Transferees
             Had Connections to BLMIS Do Not Allow the Trustee to Reach the Foreign
             Transfers .............................................................................7

             1.    The ABN Defendants' Relationship with Non-Transferee Affiliates is
                   Irrelevant to the Transfers' Location .....................................7

             2.    Whether the ABN Defendants Had the Knowledge or Intent to Invest
                   in BLMIS Is Irrelevant to the Transfer' Location...........................8

             3.    The Relationship Among the ABN Defendants, Non-Transferee
                   Entities, and Unrelated Feeder Funds Is Irrelevant to the Transfers'
                   Location ...........................................................................9

             4.    Defendants' Reliance on its Defense Pursuant to 11 U.S.C. § 546(e) Is
                   Proper and Irrelevant to the Transfers' Location...........................10

CONCLUSION............................................................................................10

## TABLE OF AUTHORITIES

Page(s)

### CASES

*Arrow Trading Co., Inc. v. Sanyei Corp. (Hong Kong), Ltd.*,
    576 F. Supp. 67 (S.D.N.Y. 1983) ..........................................8

*Cedeno v. Intech Group, Inc.*
    733 F. Supp. 2d 471 (S.D.N.Y. 2010)..................................6

*ePlus Group, Inc. v. Panoramic Communications, LLC*,
    No. 02-7992, 2003 WL 21512229 (S.D.N.Y. July 2, 2003)..................6

*Fagan v. Republic of Austria*,
    No. 08-Civ-6715, 2011 WL 1197677 (S.D.N.Y. Mar. 25, 2011)........................8

*In re Midland Euro Exchange Inc.*,
    347 B.R. 708 (Bankr. C.D. Cal. 2006)..................................6

*Picard v. CACEIS Bank Luxembourg*,
    Adv. Pro. No. 11-02758-SMB (Bankr. S.D.N.Y. Oct. 6, 2011)............................2

*Picard v. Ceretti*,
    Adv. Pro. No. 09-01161-SMB (Bankr. S.D.N.Y. Mar. 17, 2014)........................5

*Securities Investor Protection Corp. v. Bernard Madoff Investment Securities LLC (In re BLMIS*),
    513 B.R. 222 (S.D.N.Y. 2014)........................................ *passim*

*William Wrigley Jr. Co. v. Waters*,
    890 F.2d 594 (2d Cir. 1989)........................................8

### STATUTES

11 U.S.C § 546(e) ..........................................................10

11 U.S.C. § 548 ..........................................................6

31 U.S.C. § 5318A(e)(1)(B) ..........................................................6

Defendants ABN AMRO Bank (Ireland), Ltd. ("ABN Ireland") and ABN AMRO
Custodial Services (Ireland), Ltd ("ABN Custodial," and with ABN Ireland, the "ABN
Defendants") respectfully submit this memorandum in reply to the Trustee's Opposition Brief.[1]
It incorporates by reference the arguments made in the Transferee Defendants' Motion to
Dismiss Based on Extraterritoriality, as well as those in the Consolidated Brief.[2]

## PRELIMINARY STATEMENT

This Court is presented with a straightforward task:  the application of an unambiguous
order from the District Court.  The District Court held clearly and unequivocally that the Trustee
cannot recover a transfer occurring abroad between a foreign transferor and a foreign transferee.
The Trustee now seeks to confuse the issue by proffering new, sweeping allegations about
parties, transfers, and conduct not at issue in this proceeding.  When those allegations are put
aside, however, it becomes clear:  the claims subject to this motion were foreign transfers, made
from one foreign party to another.  They are identical in all material respects to the complaint
that the District Court considered at length and found to be foreign.  Those claims must be
dismissed, and the Trustee's proffer must be denied as futile.

## BACKGROUND

In this adversary proceeding, Irving H. Picard (the "Trustee"), trustee for the estate of
Bernard L. Madoff Investment Securities LLC ("BLMIS"), seeks to recover subsequent transfers
made to the ABN Defendants.  Count Four of the Amended Complaint, ECF No. 42 (the

---

[1]    The term "Opposition Brief" shall mean the Trustee's Supplemental Memorandum of Law in Opposition to
Defendants' Motion to Dismiss Based on Extraterritoriality and in Further Support of the Trustee's Motion
for Leave to Amend Complaints, dated June 26, 2015, ECF No. 96.

[2]    The term "Consolidated Brief" shall mean the Reply Consolidated Supplemental Memorandum of Law in
Support of Transferee Defendants' Motion to Dismiss Based on Extraterritoriality, dated September 30,
2015.

"Amended Complaint" or "AC"), seeks to recover transfers worth $147,816,740 made to the

ABN Defendants by Kingate Global, Ltd. ("Kingate").[3]  AC ¶¶ 179-183.

The District Court withdrew the reference to this and several dozen similar proceedings

to consider whether the Trustee's claims were impermissibly extraterritorial.  Taking the

allegations in *Picard v. CACEIS Bank Luxembourg* as a representative example, the District

Court held that "the Trustee's recovery claims are dismissed to the extent that they seek to

recover purely foreign transfers" and remanded to the Bankruptcy Court for proceedings

consistent with its opinion.  *Sec. Investor Prot. Corp. v. Bernard Madoff Inv. Sec. LLC (In re

BLMIS*), 513 B.R. 222, 232 (S.D.N.Y. 2014); *see* Complaint, Adv. Pro. No. 11-02758-SMB

(Bankr. S.D.N.Y. Oct. 6, 2011), ECF No. 1 ("*CACEIS* Compl.").  After Defendants moved to

dismiss, the Trustee filed new Proffered Allegations.[4]  The Proffered Allegations continue to

allege that the ABN Defendants are incorporated in Ireland, Proffer ¶¶ 10-11, and that Kingate is

registered in the British Virgin Islands ("BVI"), Proffer ¶ 16.  They add no new allegations about

the transfers themselves, save that the funds were received in a bank account belonging to ABN

Ireland at Northern Trust Bank in New York.  Proffer ¶¶ 30-31.

The remaining new allegations do not pertain to the ABN Defendants or the transfers at

issue in the case, but to a broader alleged connection between BLMIS and other subsidiaries of

the ABN Defendants' parent (the "Fortis Entities"[5]).  Specifically, the Trustee alleges that:

- the Fortis Entities "operated as one unit" and two entities in that "unit" were
  incorporated and headquartered in the U.S. *Id.* at ¶¶ 9, 12;

---

[3]   Of these, $63,445,285 worth of transfers were allegedly made to ABN Ireland and $84,371,455 worth of
transfers were allegedly made to ABN Custodial.  AC ¶ 180.

[4]   The terms "Proffered Allegations" or "Proffer" shall mean the Trustee's Proffered Allegations Pertaining to the
Extraterritoriality Issue as to ABN AMRO (Ireland) Ltd. and ABN AMRO Custodial Services (Ireland)
Ltd., ECF No. 97.

[5]   At the time of the transfers at issue, ABN Ireland was known as Fortis Prime Fund Solutions Bank (Ireland)
Ltd. and ABN Custodial was known as Fortis Prime Fund Solutions Custodial Services (Ireland) Ltd.

- the Fortis Entities were aware that their funds were being invested in New York, Proffer ¶¶ 33-40, 54-60; and

- the Fortis Entities invested in and conducted services on behalf of so-called feeder funds unconnected to Kingate, ¶¶ 41-53.

## ARGUMENT

## I.    COUNT FOUR OF THE AMENDED COMPLAINT MUST BE DISMISSED

The District Court's holding above mandates the immediate dismissal of Count Four of the original complaint. The Court unequivocally ordered that "the Trustee's recovery claims *are dismissed*" and remanded the relevant proceedings only to determine whether a given transfer, as alleged, was purely foreign and thus subject to dismissal. *BLMIS*, 513 B.R. at 232 (emphasis added). The component allegations that made a transfer foreign were made equally clear: "Here, to the extent that the Trustee's complaints allege that both the alleged transferor and the transferee reside outside of the United States, there is no plausible inference that the transfer occurred domestically." *BLMIS*, 513 B.R. at 232 n.4.

That is precisely what the Trustee's amended complaint alleges: that the ABN Defendants (the transferees) are incorporated and maintain their principal place of business in Ireland, while Kingate (the transferor) is organized under the laws of, and maintains its principal place of business in, the British Virgin Islands (the "BVI"). AC ¶¶ 27-28, 34. At no point since the District Court's order has the Trustee disputed that the allegations in his complaint described a foreign transfer. Nor at any point has the Trustee contended that the allegations in the complaint survived the District Court's order. On the basis of the Trustee's unambiguous holding alone, Count Four must be dismissed without leave to amend.

3

## II.   AMENDMENT WOULD BE FUTILE BECAUSE THE TRUSTEE'S PROFFERED ALLEGATIONS HAVE NOT RAISED A PLAUSIBLE INFERENCE THAT THE TRANSFERS WERE DOMESTIC IN NATURE

The Proffered Allegations also fail to set forth any facts sufficient to raise a plausible inference that the transfers are domestic in nature.  The Trustee's proposed amendment is therefore futile and his motion for leave to amend should be denied.

### A.   The Proffered Allegations Demonstrate that the ABN Defendants Were Foreign Transferees

The Proffered Allegations do not challenge the fact that ABN Ireland and ABN Custodial are both foreign transferees.  The Trustee continues to allege that both are incorporated under the laws of Ireland, Proffer ¶¶ 10-11, and does not seek to amend the allegations from the Amended Complaint that each maintained its principal place of business in Ireland.  AC ¶¶ 27-28.  Further, the residence of the ABN Defendants is identical in all material ways to that alleged in *CACEIS*, which the District Court found to be foreign from the face of the Trustee's complaint.  *BLMIS*, 513 B.R. at 227; *CACEIS* Compl. ¶¶ 22-25.

### B.   The Proffered Allegations Demonstrate that the Kingate Was a Foreign Transferor

It is equally plain from the face of the Proffered Allegations that Kingate was a foreign transferor.  Those allegations concede that Kingate was registered in the BVI and co-managed by Tremont (Bermuda) Limited, a Bermudan entity.  Proffer ¶17.  The Trustee argues that transfers received from Kingate should be considered domestic because its activities were operated out of and directed at the United States.  However, the District Court implicitly rejected this argument when it considered the allegations in the *CACEIS* complaint.  There, the Trustee had alleged that Fairfield Sentry was managed by a U.S.-based entity, the Fairfield Greenwich Group.  *CACEIS* Compl. ¶ 7.  Nonetheless, the District Court found that Fairfield was a foreign entity – and that

transfers received from it were foreign – because it was organized under foreign law.  513 B.R. at 225-26.

Moreover, the scope of Kingate's domestic connection is belied by the allegations in *Picard v. Ceretti*, Adv. Pro. No. 09-01161-SMB (Bankr. S.D.N.Y. Mar. 17, 2014), ECF No. 100 ("*Ceretti* Compl."), which the Trustee purports to incorporate by reference into its proffer. Proffer ¶ 88.  According to the allegations in that complaint, Kingate:  (1) was registered in the BVI, *Ceretti* Compl. ¶ 38;  (2) was co-managed by Kingate Management Limited, a Bermuda corporation, and Tremont (Bermuda) Limited[6] from 1995 to 2005, *Ceretti* Compl. ¶¶ 44, 46, 106; (3) was managed exclusively by Kingate Management Limited after 2005, *Ceretti* Compl. ¶ 113-114; (4) was administered by a Bermudan corporation, *Ceretti* Compl. ¶ 72; and (5) used a Bermudan bank as custodian of its cash assets, *Ceretti* Compl. ¶ 79-80.  Regardless of where its business was "centered," Kingate was a foreign entity that relied extensively and exclusively on foreign entities, and any transfers it made were undoubtedly foreign in nature.

### C. The Proffered Allegations Have Not Demonstrated that the Transfers Occurred Within the United States

Moreover, the transfers themselves occurred abroad.  The initial transfers from BLMIS to Kingate were sent to Kingate's bank account in Bermuda.  *Ceretti* Compl. ¶¶ 242-252.  The Trustee alleges that the ABN Defendants then "received" the transfers in ABN Ireland's bank account at Northern Trust Bank in New York.   Proffer ¶ 30.  However, the District Court held that this allegation does not support a finding that the transfer was domestic:  "Nor is the fact that … defendants here allegedly used correspondent banks in the United States to process dollar-denominated transfers sufficient to make these foreign transfers domestic."  513 B.R. at 228 n.1.

---

[6]    In his brief, the Trustee argues that Tremont (Bermuda), Kingate's co-manager, was "headquartered in New York."  The Proffered Allegations tell a different story:  Tremont (Bermuda) was a Bermudan entity. Proffer ¶ 65.  In turn, Tremont (Bermuda) was managed by a *different* entity whose employees were based in New York – demonstrating how far removed the Trustee must reach to find a domestic connection.  *Id*.

Although the Trustee studiously avoids using the word "correspondent," he "cannot engage in artful re-pleading to avoid [the] negative result" of the District Court's holding. *ePlus Group, Inc. v. Panoramic Commc'ns, LLC*, No. 02-7992, 2003 WL 21512229, at *2 (S.D.N.Y. July 2, 2003). A correspondent account is defined in federal anti-money laundering law as "an account established to receive deposits from, make payments on behalf of a foreign institution, or handle other financial transactions related to such institution." 31 U.S.C. § 5318A(e)(1)(B). The Proffered Allegations describe precisely that. The Northern Trust account was held by ABN Ireland, a foreign financial institution, and used to receive financial transactions from Kingate on behalf of the ABN Defendants, both of whom are foreign. Proffer ¶ 30. It was allegedly also used by four additional Fortis Entities, all foreign financial institutions, to make payments and receive transfers on their behalf. Proffer ¶ 31. No plausible inference can be raised that ABN Ireland's Northern Trust account was anything *but* a correspondent account.

Nor does the Trustee's artful omission matter, as the precedent relied upon by the District Court is clear that the use of a U.S. bank account, whether or not the account is explicitly a correspondent account, is not sufficient to render the subject matter of a claim domestic. *See Cedeno v. Intech Group, Inc.* 733 F. Supp. 2d 471, 472 (S.D.N.Y. 2010) (dismissing RICO claim as extraterritorial despite "the movement of funds into and out of U.S.-based bank accounts"); *In re Midland Euro Exch. Inc.*, 347 B.R. 708, 715 (Bankr. C.D. Cal. 2006) (holding application of 11 U.S.C. § 548 impermissibly extraterritorial despite transfer of funds "through a bank account in New York"). Here, the Trustee has not alleged that the transfer of funds through the Northern Trust account was anything but ephemeral – only that a U.S. account was used. This temporary possession does not raise a plausible inference that transfer was domestic in nature.

6

**D.    The Proffered Allegations That the ABN Defendants and Non-Transferees Had Connections to BLMIS Do Not Allow the Trustee to Reach the Foreign Transfers**

Thus unable to pursue his claim under the clear language of the District Court's holding, the Trustee attempts to redefine the "transactions" at issue as encompassing any knowledge of or connections to BLMIS, mostly through allegations about non-transferee affiliates of the ABN Defendants.  This flies in the face of the District Court's instruction that the relevant transaction is "the transfer of property to a subsequent transferee, not the relationship of that property to a perhaps-distant debtor."  *See* 513 B.R. at 227.

**1.    The ABN Defendants' Relationship with Non-Transferee Affiliates is Irrelevant to the Transfers' Location**

The Proffered Allegations assert that the ABN Defendants were part of a "global network of banks and financial service providers" and  "included and relied upon" a "U.S.-incorporated and N.Y.-headquartered" entity, Proffer ¶¶ 9-11.   This alone does not raise a plausible inference that the ABN Defendants are somehow domestic, or that the transfers received by them were.  Notably, the Trustee does not, and cannot, allege that the Fortis "network" was based in the United States; in fact, it concedes in the Amended Complaint that the "ultimate parent company" is ABN AMRO Group N.V., a foreign entity with its seat in the Netherlands.  AC ¶ 27.

Nonetheless, the Proffered Allegations refer to the conduct of "Fortis" (i.e., the so-called "network") throughout, by implication attributing the conduct of the domestic entity, which was not a transferee, to the ABN Defendants, who were.  In fact, nearly a third of the paragraphs in the complaint that purport to describe the ABN Defendants' conduct fail to point to any conduct by either Defendant, rather than the nebulous "Fortis."  However, there is no basis to collapse the corporate structure in this way.  The attribution of the business of one sister subsidiary to another constitutes "a double piercing of the corporate veil."  *Arrow Trading Co., Inc. v. Sanyei Corp.*

7

*(Hong Kong), Ltd.*, 576 F. Supp. 67, 70 n.1 (S.D.N.Y. 1983).  *See also Fagan v. Republic of Austria*, No. 08-Civ-6715, 2011 WL 1197677, at *18 (S.D.N.Y. Mar. 25, 2011) (holding that "the existence of [a] sister subsidiary" or "the presence of the [corporate group] in New York" is not sufficient to support general personal jurisdiction).  Courts respect the corporate form and will disregard it only where it was used to achieve fraud or where one party dominates the other so much that it effectively acted as its alter ego. *William Wrigley Jr. Co. v. Waters*, 890 F.2d 594, 600 (2d Cir. 1989).  The Trustee has not alleged that either circumstance existed here, merely that the sister subsidiaries cooperated with each other.  Proffer ¶¶ 12-15.  Particularly here, where the central issue is the location of particular transfers, this is not sufficient to collapse the corporate structure and impute the residence of one sister corporation to another.

> **2.**      <u>Whether the ABN Defendants Had the Knowledge or Intent to Invest in BLMIS Is Irrelevant to the Transfers' Location</u>

The Trustee also levels a series of allegations meant to demonstrate that the ABN Defendants (and the other Fortis Entities) understood that their investments were to be invested in BLMIS.  For example, the Trustee alleges that:

- Kingate's Information Memorandum disclosed that a broker-dealer registered and based in the United States (BLMIS) served as investment manager, advisor, and "actual" custodian of Kingate's assets, ¶¶ 25-27;

- The Investment Memorandum disclosed that BLMIS's investment strategy involved U.S. stocks, ¶ 25; and

- The ABN Defendants understood that BLMIS had full discretion over Kingate's investments, ¶ 28.

However, as discussed in section II.B.4 of the Consolidated Brief, the District Court implicitly rejected the premise that the "purpose" of the investment or the transferees' knowledge that the Kingate Funds invested in BLMIS were "component events" of the transfers when it held the transfers in *CACEIS* to be foreign.

8

**3.**    The Relationship Among the ABN Defendants, Non-Transferee Entities, and Unrelated Feeder Funds Is Irrelevant to the Transfers' Location

Ranging even further from the transfers at issue, the Trustee also proffers a series of allegations about the relationship between other, unrelated feeder funds, on the one hand, and the Fortis Entities, on the other.  He alleges that, as part of a global "Madoff strategy," various Fortis Entities considered BLMIS feeder funds to be identical and received transfers from (Proffer ¶ 33), conducted due diligence on (Proffer ¶¶ 34-49, 54-60), and provided fund services to (Proffer ¶¶ 50-53), certain feeder funds with no connection to the Kingate transfers whatsoever.  The Trustee argues that, because the Fortis Entities' relationship with those unrelated funds involved contacts with New York, the "component events" of the Kingate transfers occurred in New York.

Not only does this ignore the District Court's opinion, which held that section 550(a) – and thus, the extraterritoriality analysis – was *not* concerned with the connection between the transferee and the debtor, *BLMIS*, 513 B.R. at 227, it is also contradicted by the Trustee's Proffered Allegations themselves.  Although the Trustee tries to impute activities taken in connection with or on behalf of other feeder funds to the Kingate transfers, it is clear that the ABN Defendants considered investments in each feeder fund to be more than simply an investment in BLMIS, and dealt with each on its own terms.  For example, the Trustee notes that Fortis Entities "conducted extensive due diligence on the Tremont Feeder Funds . . . in anticipation of its transactions with the funds,"[7] Proffer ¶ 34; specifically evaluated trade confirmations and account statements that pertained solely to Harley International (Cayman) Limited, Proffer ¶ 47; and provided administrative and custodial services to several other funds according to the needs of each, Proffer ¶¶ 52-53.

---

[7]    Although the Trustee seeks to recover transfers received from the Tremont Feeder Funds (as defined in ¶ 2 of the Proffer) in this proceeding, the ABN Defendants have not argued that those transfers were extraterritorial.

The Proffered Allegations also demonstrate that the location of each fund was of specific importance to the ABN Defendants, stating that an ABN Ireland memorandum called the Tremont Funds "'identical products' with the **sole difference** being whether they were marketed to onshore or offshore investors." Proffer ¶ 37 (emphasis added). The memorandum noted that distinction for a reason: investors in different jurisdictions require different investment structures for legitimate reasons, legal and financial, and expect those structures to be respected. The Trustee should not be permitted to disregard those structures as a justification to exceed his statutory authority.

**4.**    Defendants' Reliance on its Defense Pursuant to 11 U.S.C. § 546(e) Is Proper and Irrelevant to the Transfers' Location

Finally, the Trustee argues that the ABN Defendants, through their assertion of the safe harbor defense under 11 U.S.C § 546(e), are "taking advantage of U.S. law when it suits them and running from it when it does not." As discussed in section II.B.12 of the Consolidated Brief, there is nothing improper about asserting inconsistent defenses. Moreover, the defenses are not actually inconsistent. Section 546(e) applies because BLMIS purported to be a U.S. stockbroker; the domestic or foreign nature of the subsequent transfer is not relevant. In contrast, the extraterritoriality analysis is focused *exclusively* on the location of the transfer.

## CONCLUSION

For the foregoing reasons and those set forth in the Consolidated Brief, the ABN Defendants respectfully request that the Court dismiss Count Four of the Amended Complaint in this adversary proceeding with prejudice.

Dated:    September 30, 2015
          New York, New York

                                           **LATHAM & WATKINS LLP**

                                By:  /s/ Christopher R. Harris
                                           Christopher R. Harris
                                           Thomas J. Giblin

                                           885 Third Avenue
                                           New York, New York 10022
                                           Telephone:  (212) 906-1200
                                           Facsimile:  (751) 751-4864
                                           Email: christopher.harris@lw.com
                                           Email:  thomas.giblin@lw.com

                                           *Attorneys for ABN AMRO Bank*
                                           *(Ireland) Ltd. (f/k/a Fortis Prime*
                                           *Fund Solutions Bank (Ireland)*
                                           *Ltd.) (n/k/a ABN AMRO Retained*
                                           *Custodial Services (Ireland)*
                                           *Limited) and ABN AMRO*
                                           *Custodial Services (Ireland) Ltd.*
                                         *(f/k/a Fortis Prime Fund Solutions*
                                         *Custodial Services (Ireland) Ltd.)*

11