Scott B. Schreiber
Rosa J. Evergreen (to be admitted pro hac)
Dana Y. Elliott
ARNOLD & PORTER LLP
601 Massachusetts Avenue, NW
Washington, D.C.  20001
Telephone: (202) 942-5000
Facsimile: (202) 942-5999

*Attorneys for Defendant Platinum All Weather Fund Limited*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, Plaintiff-Applicant, | Adv. Pro. No.: 08-01789 (SMB) |
| v. | SIPA LIQUIDATION |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, Defendant. | (Substantively Consolidated) |
| In re: | |
| BERNARD L. MADOFF, Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, Plaintiff, | Adv. Pro. No.: 12-01697 (SMB) |
| v. | **PLATINUM ALL WEATHER FUND LIMITED'S REPLY SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS BASED ON EXTRATERRITORIALITY AND IN OPPOSITION TO THE TRUSTEE'S MOTION FOR LEAVE TO AMEND COMPLAINT** |
| ABN AMRO FUND SERVICES (ISLE OF MAN) NOMINEES LIMITED, f/k/a Fortis (Isle of Man) Nominees Limited, PLATINUM ALL WEATHER FUND LIMITED, and ODYSSEY, Defendants. | |

Defendant Platinum All Weather Fund Limited ("PAWFL")[1] respectfully files this supplemental memorandum in further support of PAWFL's motion to dismiss based on extraterritoriality and in opposition to the Trustee's motion for leave to amend his Complaint. PAWFL adopts and incorporates by reference the arguments in the Consolidated Reply.[2]

## PRELIMINARY STATEMENT

For the reasons shown in the Consolidated Reply and below, the Complaint against PAWFL must be dismissed. The Trustee has failed to satisfy his burden of pleading facts sufficient to create a plausible inference that any alleged subsequent transfers made from Fairfield Sentry Limited ("Sentry") and Fairfield Sigma Limited ("Sigma") to ABN and/or PAWFL were domestic. The Trustee's Proffer[3] similarly fails to create a plausible inference that the alleged subsequent transfers were domestic, so the Trustee's motion to amend the Complaint must likewise be denied. Moreover, as noted by Judge Rakoff, even "if the presumption against extraterritoriality were rebutted, the Trustee's use of section 550(a) to reach these foreign transfers would be precluded by concerns of international comity." *See SIPC v. Bernard Madoff Inv. Sec. LLC*, 513 B.R. 222, 231 (S.D.N.Y 2014) (the "Extraterritoriality Decision").

## THE COMPLAINT SHOULD BE DISMISSED
## AND THE MOTION TO AMEND SHOULD BE DENIED AS FUTILE

On June 6, 2012, the Trustee filed his Complaint against PAWFL, together with ABN AMRO Fund Services (Isle of Man) Nominees Limited, f/k/a Fortis (Isle of Man) Nominees Limited ("ABN"), an Isle of Man entity, which is alleged to have received redemption payments

---

[1] PAWFL does not waive, and expressly preserves, all defenses and rights available to PAWFL by answer, motion to dismiss, or otherwise (including without limitation all defenses based on lack of personal jurisdiction). Moreover, at this time, because this Reply is filed in support of its motion to dismiss, PAWFL does not seek to challenge the factual accuracy of the Trustee's allegations in the Complaint or Proffer.

[2] The "Consolidated Reply" refers to the Reply Consolidated Supplemental Memorandum of Law in Support of Transferee Defendants' Motion to Dismiss Based on Extraterritoriality.

[3] The "Proffer" refers to the Trustee's Proffered Allegations Pertaining to the Extraterritoriality Issue as to Platinum All Weather Fund Limited (Doc. No. 98).

- 1 -

from Sentry and Sigma in the total amount of $122,216,748. *See* Compl. ¶¶ 21, 42-46, 48; Proffer, ¶ 1. The Trustee alleges that PAWFL "used [ABN] as its agent" in making investments in Sentry and "received transfers from [ABN]." Compl. ¶ 23.

Sentry was a British Virgin Islands ("BVI") company that is currently in liquidation in the BVI. *Id.* ¶ 2. ABN is a foreign Isle of Man entity, and PAWFL is likewise a foreign entity, organized under the laws of the Cayman Islands and with a registered address in Grand Cayman. *Id.* ¶¶ 21, 23; Proffer ¶¶ 6, 8. Accordingly, based on the Trustee's own allegations, there can be no dispute that both the transferor and the transferees reside outside of the United States.

Neither the Complaint nor the Proffer contain any allegations showing that the alleged subsequent transfers at issue occurred in the United States. On the dispositive issue of where the transfer from Sentry occurred, the Proffer is deliberately silent. While the Proffer contains 73 paragraphs, the vast majority relate to Sentry, the information disclosed in its private placement memorandum, and the subscription agreements -- none of which relate to where the transfers occurred. The Trustee's Proffer does not overcome Judge Rakoff's holding that application of section 550(a)(2) to transfers from a foreign feeder fund (here, Sentry) to a foreign entity (here, ABN and Platinum) is barred by extraterritoriality. Simply put, the Trustee fails to meet his "obligation to allege 'facts giving rise to the plausible inference that' the transfer occurred 'within in the United States.'" Extraterritoriality Decision, at 232 n.4.

The Consolidated Reply addresses the reasons that the Proffer is irrelevant to the dispositive issue of where the transfers occurred. PAWFL therefore does not separately address each category in the Trustee's chart, attached as Exhibit 2 to the Supplemental Memorandum,[4] or

---

[4]    The "Supplemental Memorandum" refers to the Memorandum of Law in Opposition to the Transferee Defendants' Motion to Dismiss Based on Extraterritoriality and in Further Support of the Trustee's Motion for Leave to Amend Complaints (Doc. No. 10287).

the related allegations in the Proffer. Nevertheless, PAWFL sets forth below additional reasons the Proffer does not meet the pleading burden mandated by Judge Rakoff as to PAWFL.

### 1. Subscription Agreement

The Trustee alleges that PAWFL, through ABN, entered into a subscription agreement with Sentry under which it agreed to submit to New York jurisdiction. *See* Proffer ¶¶ 33-36. This purported fact is irrelevant because, as set forth in more detail in the Consolidated Reply, the purported jurisdictional provisions in the subscription agreements do not speak to the location of the subsequent transfers or purport to suggest that section 550(a) would apply to such transfers.[5]

### 2. United States Office and Due Diligence

The Trustee alleges that Platinum Capital Management Ltd. ("Platinum Capital"), an entity domiciled in the United Kingdom, launched and operated PAWFL from its New York subsidiary. *See* Proffer ¶¶ 13-14, 16. The Trustee also alleges that PAWFL conducted due diligence on its investments in New York. *See id.* ¶¶ 24-25. The Trustee's allegations are irrelevant and do nothing to support a plausible inference that the subsequent transfers sought to be avoided were domestic. Notably, nowhere does the Trustee allege that PAWFL *itself* maintained an office in the United States, only that a subsidiary of another entity had a United States office. In fact, the Trustee alleges that ABN, an entity domiciled outside of the United States, was PAWFL's purported agent in making investments. *See* Compl. ¶ 23; Proffer ¶ 10.

Even if PAWFL did have a United States office, "[c]ourts applying the extraterritoriality presumption to fraudulent transfers typically hold that the proper focus is the *transfers* sought to be avoided, not the parties' . . . locus." *Overseas Ltd., Inc. v. The Royal Bank of Scotland N.V.*

---

[5] Judge Rakoff already considered similar allegations in the Extraterritoriality Decision and determined that they were irrelevant.

*(In re Sherwood Invs.)*, 2015 WL 4486470, at *19 (Bankr. M.D. Fla. July 22, 2015) (emphasis in original) (citing Extraterritoriality Decision, 513 B.R. at 227; *Maxwell Commc'n Corp. v. Societe General (In re Maxwell Commc'n Corp.)*, 186 B.R. 807, 816-17 (S.D.N.Y. 1995), *aff'd sub nom.*, 93 F.3d 1036 (2d Cir. 1996)). In *Sherwood Investments*, the bankruptcy court expressly declined to apply the Bankruptcy Code's fraudulent transfer provisions extraterritorially where the transferee had bank branches in the United States, stating that "'[c]orporations are often present in many countries, and it would reach too far to say that mere corporate presence suffices' to displace the presumption against extraterritorial application." *See id.* at *18-22 (quoting *Kiobel v. Toyal Dutch Petroleum Co.*, 133 S. Ct. 1959, 1669 (2013)).[6]

Moreover, the Trustee alleges no facts whatsoever to indicate that Platinum Capital's alleged offices in New York were connected to, let alone essential to the transfers. The fact that the Trustee alleges that Platinum Capital had a United States office and/or PAWFL conducted due diligence in the United States do not support a plausible inference that the subsequent transfers were domestic.

### 3. Marketing as a Madoff Feeder Fund to United States Investors

The Trustee alleges that PAWFL marketed itself as a BLMIS feeder fund and marketed itself to investors in the United States. *See* Proffer ¶¶ 16, 20-22. These allegations, even if true, do not support a plausible inference that the subsequent transfers were domestic. In *Absolute Activist Value Master Fund Ltd. v. Ficeto*, the Second Circuit held that the complaint did not sufficiently allege that certain transactions were domestic, expressly finding that allegations that "the Funds were heavily marketed in the United States" were not sufficient. 677 F.3d 60, 70 (2d Cir. 2012) (considering whether a "transaction in other securities" was "domestic"). Similarly,

---

[6] Indeed, the Complaint that Judge Rakoff discussed in his Extraterritoriality Decision contained an allegation that the defendants maintained an office in New York, but Judge Rakoff did not consider that allegation to be relevant in the analysis of whether the transfers were domestic.

the Trustee's allegations that PAWFL marketed itself in a particular way to investors do not give rise to a plausible inference that the subsequent transfers were domestic.

### 4. Use of United States Bank Accounts

The Trustee alleges that, through ABN, PAWFL used New York bank accounts to transfer funds to and from Sentry. *See* Proffer ¶¶ 37-39. The alleged use of U.S. bank accounts is irrelevant and does not support a plausible inference that the subsequent transfers were domestic. As Judge Rakoff specifically held in the Extraterritoriality Decision, a defendant's use of correspondent accounts (like the correspondent account of Sentry's bank, Citco Bank Dublin, at HSBC in New York) to process dollar-denominated transfers is not "sufficient to make those foreign transfers domestic." Extraterritoriality Decision, at 228 n.1 (citing *Cedeno v. Intech Grp., Inc.*, 733 F. Supp. 2d 471, 472 (S.D.N.Y. 2010)).[7] Moreover, as explained in the Consolidated Reply, Judge Rakoff's ruling is not limited to correspondent bank accounts. *See id.* at 228 (citing *Maxwell* and *In re Midland Euro Exch. Inc.*, 347 B.R. 708, 717 (Bankr. C.D. Cal. 2006)). For these reasons, and as set forth in more detail in the Consolidated Reply, the Trustee's allegations regarding ABN and/or PAWFL's use of New York bank accounts do not give rise to a plausible inference that the accounts were anything more than correspondent bank accounts, or that the subsequent transfers were domestic.

### CONCLUSION

For the foregoing reasons, as well as the reasons set forth in the Consolidated Reply, PAWFL respectfully requests that the Court dismiss the Complaint with prejudice.

---

[7] The Trustee cannot get around this simply by avoiding the word 'correspondent.' The accounts described in the Proffer are very clearly correspondent accounts. *See* 31 U.S.C. § 5318A(e)(1)(B) (defining "correspondent account" as "an account established to receive deposits from, make payments on behalf of a foreign financial institution, or handle other financial transactions related to such institution").

Dated: New York, New York
September 30, 2015

                                ARNOLD & PORTER LLP

By:    /s/ Scott B. Schreiber_____

Scott B. Schreiber
Rosa J. Evergreen (to be admitted pro hac)
Dana Y. Elliott
601 Massachusetts Avenue, NW
Washington, D.C.  20001
Telephone: (202) 942-5000
Facsimile: (202) 942-5999

*Attorneys for Defendant Platinum All Weather Fund Limited*

- 6 -