SHEARMAN & STERLING LLP
801 Pennsylvania Avenue NW
Suite 900
Washington, DC 20004-2634

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>   Plaintiff,<br><br>   v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>   Defendant. | Adv. Pro. No. 08-01789 (SMB)<br><br>SIPA Liquidation<br>(Substantively Consolidated) |
| In re<br><br>BERNARD L. MADOFF,<br><br>   Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC and the estate of Bernard L. Madoff,<br><br>   Plaintiff<br><br>   v.<br><br>BANCO BILBAO VIZCAYA ARGENTARIA, S.A.,<br><br>   Defendant. | Adv. Pro. No. 10-05351 (SMB) |

**BANCO BILBAO VIZCAYA ARGENTARIA, S.A.'S SUPPLEMENTAL REPLY**
**MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION TO DISMISS**
**BASED ON EXTRATERRITORIALITY AND IN OPPOSITION TO THE TRUSTEE'S**
<u>**MOTION FOR LEAVE TO AMEND HIS COMPLAINT**</u>

Defendant Banco Bilbao Vizcaya Argentaria, S.A. ("BBVA") respectfully submits this supplemental reply memorandum of law in further support of its motion to dismiss based on extraterritoriality. BBVA adopts and incorporates in full the arguments set forth in the Consolidated Supplemental Reply,[1] in particular the arguments relating to the 12 checked boxes for BBVA in the so-called "United States Connections Summary Chart" (the "Chart") attached as Exhibit 2 to the Trustee's Main Memorandum.[2] For the reasons shown in the Consolidated Supplemental Reply and below, the Trustee's Complaint against BBVA filed on December 8, 2010 (the "Complaint") must be dismissed, and the Trustee's motion for leave to amend must be denied as futile, because (i) the Trustee fails, either in his Complaint or Proffer,[3] to satisfy his obligation to plead facts giving rise to a plausible inference that any alleged subsequent transfers from Fairfield Sentry Limited ("Fairfield Sentry") to BBVA occurred domestically, and (ii) principles of international comity independently foreclose the Trustee's claims.

## ARGUMENT

### I. THE COMPLAINT MUST BE DISMISSED UNDER THE EXTRATERRITORIALITY DECISION

On July 6, 2014, Judge Rakoff ruled that "it is the Trustee's obligation to allege 'facts giving rise to the plausible inference that' the transfer occurred 'within the United States'" and that, "to the extent that the Trustee's complaints allege that both the transferor and the transferee reside outside of the United States, there is no plausible inference that the transfer occurred

---

[1] "Consolidated Supplemental Reply" refers to the Consolidated Supplemental Reply Memorandum of Law in Further Support of the Transferee Defendants' Motion to Dismiss Based on Extraterritoriality and in Opposition to the Trustee's Motion for Leave to Amend His Complaints filed on September 30, 2015.

[2] "Trustee's Main Memorandum" refers to the Trustee's Memorandum of Law in Opposition to the Transferee Defendants' Motion to Dismiss Based on Extraterritoriality and in Further Support of Trustee's Motion for Leave to Amend Complaints filed in the consolidated docket on June 26, 2015. (Adv. Pro. No. 08-01789, ECF No. 10287.)

[3] "Proffer" refers to the Trustee's Proffered Allegations Pertaining to the Extraterritoriality Issue As to Banco Bilbao Vizcaya Argentaria, S.A. filed on June 27, 2015. (Adv. Pro. No. 10-05351, ECF No. 110.)

1

domestically." *SIPC v. Bernard L. Madoff Inv. Sec. LLC*, 513 B.R. 222, 232, n.4 (S.D.N.Y. 2014) (the "Extraterritoriality Decision").

That ruling requires dismissal of the Trustee's Complaint against BBVA. The Trustee seeks to recover subsequent transfers that BBVA allegedly received in November 2008 from Fairfield Sentry. (Complaint ¶¶ 145-47.)[4] The Complaint alleges that Fairfield Sentry—the transferor—is "a British Virgin Islands hedge fund." (*Id*. ¶ 66.) With respect to BBVA—the transferee that had purchased the securities and consequently suffered the loss—the Trustee alleges, "BBVA is a banking corporation organized under the laws of Spain." (*Id*. ¶ 63.) The salient allegations in the Complaint are substantively indistinguishable from those that were considered by Judge Rakoff when he ruled that "the subsequent transfers that the Trustee seeks to recover here are foreign transfers" and that "the presumption against extraterritorial application of federal statutes has not been rebutted here." Extraterritoriality Decision at 228-231. The Trustee's Supplemental Memorandum[5] does not even attempt to argue that the Complaint, unamended, can survive. The Complaint should therefore be dismissed.

## II. THE TRUSTEE'S MOTION FOR LEAVE TO AMEND SHOULD BE DENIED ON THE GROUND OF FUTILITY

The Trustee should not be permitted to amend because the proposed amendments, as set forth in the Proffer, would be futile. The Trustee has made the same or similar allegations in all or nearly all of the 88 proceedings currently before the Court and assigned each allegation to one

---

[4] The Complaint (¶¶ 145-47) identifies alleged transfers to BBVA totaling $45 million. The Proffer (¶¶ 1, 76) states that the Trustee is seeking $57.5 million from BBVA, although does not identify any new transfers.

[5] The "Trustee's Supplemental Memorandum" refers to the Trustee's Supplemental Memorandum of Law in Opposition to BBVA's Motion to Dismiss Based on Extraterritoriality and in Further Support of the Trustee's Motion for Leave to Amend the Complaint filed on June 27, 2015. (Adv. Pro. No. 10-05351, ECF No. 109.)

2

or more of 19 categories presented in the Trustee's Chart.[6] As explained in the Consolidated Supplemental Reply, none of these allegations, singly or in combination, can save the Trustee's Complaint from dismissal under the Extraterritoriality Decision and other applicable law.

The Proffer cites a litany of extraneous factors of no relevance to the inquiry. Specifically, the Proffer alleges that: (i) Fairfield Sentry had operations in the United States (Proffer ¶¶ 77-79; Chart Item No. 1); (ii) BBVA's subscription agreements with Fairfield Sentry contained New York choice-of-law and venue provisions (Proffer ¶¶ 37-44; Chart Item Nos. 2-3); (iii) BBVA knew—from Fairfield memoranda and its own due diligence—that its funds would be largely managed by BLMIS in New York and used to purchase U.S. securities (Proffer ¶¶ 28-36, 69-73; Chart Item Nos. 4-7); (iv) BBVA used agents and affiliates in New York to conduct due diligence on BLMIS and manage its relationship with Fairfield (Proffer ¶¶ 45-68; Chart Item Nos. 8-11); and (v) BBVA utilized a New York correspondent bank account in connection with the transfers (Proffer ¶¶ 74-76; Chart Item No. 12). Virtually all of these proffered allegations are unrelated to the transfers at issue.[7] And, as explained in the Consolidated Supplemental Reply, none undermine the conclusion that "the subsequent transfers that the Trustee seeks to recover here are foreign transfers." Extraterritoriality Decision at 228.[8]

Moreover, the Trustee overstates the impact of his allegations concerning BBVA's due diligence. Even if the involvement of U.S. agents in due diligence could be relevant (which the

---

[6] The Trustee asserts that he has made allegations against BBVA falling within categories that are numbered 1-12 in his Chart. (Chart at p. 5 (Adv. Pro No. 10-05351).)

[7] The only exception is the allegation that BBVA used a New York bank account in connection with the transfers, which Judge Rakoff already squarely ruled is "[in]sufficient to make these foreign transfers domestic." Extraterritoriality Decision at 228, n.1 (quoting, in support of this ruling, case law that had "dismiss[ed] a RICO claim as impermissibly extraterritorial where '[t]he scheme's contacts with the United States, however, were limited to the movement of funds into and out of U.S.-based bank accounts'") (citation omitted).

[8] Indeed, several allegations in the Proffer underscore the foreign nature of the transfers. (*See, e.g.*, Proffer ¶ 2 (BBVA is a "Spanish global banking corporation"); *id*. ¶ 81 (Fairfield Sentry was "organized . . . under the International Business Company Act of the BVI").)

3

Consolidated Supplemental Reply establishes is not the case), the Trustee's own allegations undermine any suggestion that he has pled an appreciable level of U.S. involvement here. Instead, his allegations show that such activity was controlled and performed by employees from BBVA Madrid. (*See, e.g.*, Proffer ¶ 55 ("[BBVA Madrid] employees regularly . . . travelled to New York to conduct due diligence on Fairfield Sentry"); *id*. ¶ 56 ("BBVA sent four employees from Madrid . . . . [who] met with numerous FGG employees, including FGG's founder—Jeffrey Tucker."); *id*. ¶¶ 58-59 (BBVA Madrid employees "requested . . . trade reports, FGG's BLMIS account opening agreement and trading authorization agreement," and a comfort letter from FGG's General Counsel).)  In contrast, the Trustee alleges diligence activity by a *single* U.S.-based BBVA employee. (*Id*. ¶¶ 45-51.)  Furthermore, the proffered facts hardly suggest that he served as anything more than a tour guide for BBVA's Madrid office.  For example, the New York Director "worked with the Global BBVA Director from Madrid to arrange a weeklong series of meetings" with FGG. (*Id*. ¶ 65.)  When BBVA Madrid wanted to meet Madoff, "two different Madrid-based BBVA employees accompanied the New York BBVA Director" to the BLMIS office in New York. (*Id*. ¶ 67.)  In short, the Trustee's allegations show that BBVA's due diligence was conducted by non-U.S. employees on behalf of a foreign shareholder-investor.

### III. THE TRUSTEE'S COMPLAINT SHOULD ALSO BE DISMISSED, AND HIS MOTION TO AMEND DENIED AS FUTILE, UNDER COMITY PRINCIPLES

Even if the Trustee had met his burden of alleging that the transfers at issue were domestic (which he has not), his Complaint against BBVA and his motion to amend cannot survive in light of Judge Rakoff's separate ruling on comity.  Judge Rakoff found that international comity was an additional basis for dismissal that is wholly independent of the deficiencies addressed above. Extraterritoriality Decision at 231 ("[T]he Court further concludes, in the alternative, that *even if the presumption against extraterritoriality were*

4

*rebutted*, the Trustee's use of section 550(a) to reach these foreign transfers would be precluded by concerns of international comity.") (emphasis added).

Judge Rakoff specifically cited Fairfield Sentry's foreign liquidation proceedings in particular as giving rise to comity concerns that require dismissal of the Trustee's claims:

> As is the case with Fairfield Sentry and Harley, many of the feeder funds are currently involved in their own liquidation proceedings in their home countries. These foreign jurisdictions have their own rules concerning on what bases the recipient of a transfer from a debtor should be required to disgorge it. Indeed, the BVI courts have already determined that Fairfield Sentry could not reclaim transfers made to its customers under certain common-law theories—a determination in conflict with what the Trustee seeks to accomplish here.

Extraterritoriality Decision at 232 (internal citation omitted). Judge Rakoff's rationale for a comity dismissal thus applies with special force in this case, given that the Trustee's claims against BBVA involve Fairfield Sentry transfers. (Complaint ¶ 30; Proffer ¶ 1.)[9]

## CONCLUSION

For the foregoing reasons, BBVA respectfully requests that the Court dismiss the Trustee's Complaint against BBVA with prejudice and without leave to amend.

Dated: September 30, 2015
      New York, New York

Respectfully submitted,

*/s/* Heather L. Kafele
Heather L. Kafele
Shearman & Sterling LLP
801 Pennsylvania Ave. NW,
Suite 900
Washington, DC 20004
hkafele@shearman.com
(202) 508-8097

*Counsel for Defendant Banco Bilbao Vizcaya Argentaria, S.A.*

---

[9] The Trustee's Supplemental Memorandum relating to BBVA does not address comity. The arguments on comity in the Trustee's Main Memorandum are flawed for the reasons explained in the Consolidated Supplemental Reply, including because they reflect an impermissible challenge to Judge Rakoff's analysis and conclusions.

5