Scott B. Schreiber
Rosa J. Evergreen (to be admitted pro hac)
Dana Y. Elliott
ARNOLD & PORTER LLP
601 Massachusetts Avenue, NW
Washington, D.C.  20001
Telephone: (202) 942-5000
Facsimile: (202) 942-5999

*Attorneys for Defendant Atlantic Security Bank*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br>　　　　Plaintiff-Applicant,<br><br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br>　　　　Defendant. | Adv. Pro. No.:  08-01789 (SMB)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br>　　　　Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br>　　　　Plaintiff,<br><br>v.<br><br>ATLANTIC SECURITY BANK,<br>　　　　Defendant. | Adv. Pro. No.:  11-02730 (SMB) |

**ATLANTIC SECURITY BANK'S REPLY SUPPLEMENTAL MEMORANDUM OF
LAW IN SUPPORT OF MOTION TO DISMISS BASED ON
EXTRATERRITORIALITY AND IN OPPOSITION TO THE TRUSTEE'S
<u>MOTION FOR LEAVE TO AMEND COMPLAINT</u>**

Defendant Atlantic Security Bank ("ASB")[1] respectfully files this supplemental memorandum in further support of ASB's motion to dismiss based on extraterritoriality and in opposition to the Trustee's motion for leave to amend his Complaint. ASB adopts and incorporates by reference herein the arguments in the Consolidated Reply,[2] filed contemporaneously herewith.

### PRELIMINARY STATEMENT

For the reasons shown in the Consolidated Reply and below, the Complaint against ASB must be dismissed. The Trustee has failed to satisfy his burden of pleading facts sufficient to create a plausible inference that any alleged subsequent transfers made from Fairfield Sentry Limited ("Fairfield Sentry") to ASB were domestic. The Trustee's Proffer[3] similarly fails to create a plausible inference that the alleged subsequent transfers were domestic, and so the Trustee's motion to amend the Complaint must likewise be denied. Moreover, as noted by Judge Rakoff, even "if the presumption against extraterritoriality were rebutted, the Trustee's use of section 550(a) to reach these foreign transfers would be precluded by concerns of international comity." *See SIPC v. Bernard Madoff Inv. Sec. LLC*, 513 B.R. 222, 231 (S.D.N.Y 2014) (the "Extraterritoriality Decision").

### THE COMPLAINT SHOULD BE DISMISSED
### AND THE MOTION TO AMEND SHOULD BE DENIED AS FUTILE

On September 22, 2011, the Trustee filed his Complaint against ASB, seeking to recover over $120 million in transfers ASB allegedly received from Fairfield Sentry. Fairfield Sentry

---

[1] ASB does not waive, and expressly preserves, all defenses and rights available to ASB by answer, motion to dismiss, or otherwise (including without limitation all defenses based on lack of personal jurisdiction). Moreover, at this time, because this Reply is filed in support of its motion to dismiss, ASB does not seek to challenge the factual accuracy of the Trustee's allegations in the Complaint or Proffer.

[2] The "Consolidated Reply" refers to the Reply Consolidated Supplemental Memorandum of Law in Support of Transferee Defendants' Motion to Dismiss Based on Extraterritoriality.

[3] The "Proffer" refers to the Trustee's Proffered Allegations Pertaining to the Extraterritoriality Issue as to Atlantic Security Bank (Doc. No. 66).

was a British Virginia Islands ("BVI") company that is currently in liquidation in the BVI. Complaint ¶ 2. ASB is a foreign entity, incorporated in the Cayman Islands and with its principal place of business in Panama. *Id.* ¶ 21. Accordingly, based on the Trustee's own allegations, there can be no dispute that both the transferor and the transferee reside outside of the United States.

Neither the Complaint nor the Proffer contain any allegations showing that the alleged subsequent transfers at issue occurred in the United States. On the dispositive issue of where the transfers from Fairfield Sentry occurred, the Proffer is deliberately silent. While the Proffer contains 45 paragraphs, the vast majority relate to Fairfield Sentry, the information disclosed in its private placement memorandum, or the purported subscription agreements -- none of which relate to where the transfers occurred. The Trustee's Proffer does not overcome Judge Rakoff's holding that application of section 550(a)(2) to transfers from a foreign feeder fund (here, Fairfield Sentry) to a foreign entity (here, ASB) is barred by extraterritoriality. Simply put, the Trustee fails to meet his "obligation to allege 'facts giving rise to the plausible inference that' the transfer occurred 'within in the United States.'" Extraterritoriality Decision, at 232 n.4.

The Consolidated Reply addresses the reasons that the Trustee's Proffer is irrelevant to the dispositive issue of where the transfers occurred. ASB therefore does not separately address each category in the Trustee's chart, attached as Exhibit 2 to the Trustee's Supplemental Memorandum,[4] or the related allegations in the Proffer. Nevertheless, ASB sets forth below additional reasons the Proffer does not meet the pleading burden mandated by Judge Rakoff as to ASB.

---

[4] The "Trustee's Supplemental Memorandum" refers to the Memorandum of Law in Opposition to the Transferee Defendants' Motion to Dismiss Based on Extraterritoriality and in Further Support of the Trustee's Motion for Leave to Amend Complaints (Doc. No. 10287).

1. **Subscription Agreement**

The Trustee alleges that to invest in Fairfield Sentry, "an investor such as ASB" executed a subscription agreement. *See* Proffer, ¶ 5. The Trustee then goes on to explain that Fairfield Sentry's subscription agreements included a New York law venue provision and an agreement to submit to the jurisdiction of New York courts. *See id.* ¶¶ 10-12. Notably, nowhere in the Proffer does the Trustee make any allegations of fact that any agreement entered into between ASB and Fairfield Sentry *itself* contained a venue or jurisdictional provision or agreement. The Trustee instead states that he believes that ASB entered into a subscription agreement with Fairfield Sentry, and then separately alleges that Fairfield Sentry's subscription agreements with various unnamed other entities included certain venue and jurisdictional provisions and agreements. This does not amount to a well-pled and legally sustainable allegation that there was an *actual* subscription agreement entered into between ASB and Fairfield Sentry that included a New York law venue provision or an agreement to submit to the jurisdiction of New York courts.[5]

2. **United States Office and Due Diligence**

The Trustee's allegations that ASB maintained an office in Florida,[6] and that ASB personnel and agents met with FGG employees and conducted due diligence in the United States, are irrelevant. *See* Proffer ¶¶ 13-17. Simply because the Trustee alleges ASB maintained an office in Florida and/or conducted due diligence in the United States does nothing to support a plausible inference that the subsequent transfers sought to be avoided were domestic.

---

[5] More importantly, even if ASB *had* entered into a subscription agreement that did include such provision, that fact would be irrelevant because, as set forth in more detail in the Consolidated Reply, the purported jurisdictional provisions in the subscription agreements do not speak to the location of the subsequent transfers or purport to suggest that section 550(a) would apply to such transfers. Moreover, Judge Rakoff already considered similar allegations in the Extraterritoriality Decision and determined that they were irrelevant.

[6] The Trustee concedes, as he must, that ASB is incorporated in the Cayman Islands and maintains its principal place of business in Panama. *See* Complaint ¶ 21.

- 3 -

"Courts applying the extraterritoriality presumption to fraudulent transfers typically hold that the proper focus is the *transfers* sought to be avoided, not the parties' . . . locus." *Overseas Ltd., Inc. v. The Royal Bank of Scotland N.V. (In re Sherwood Invs.)*, 2015 WL 4486470, at *19 (Bankr. M.D. Fla. July 22, 2015) (emphasis in original) (citing Extraterritoriality Decision, 513 B.R. at 227; *Maxwell Commc'n Corp. v. Societe General (In re Maxwell Commc'n Corp.)*, 186 B.R. 807, 816-17 (S.D.N.Y. 1995), *aff'd sub nom.*, 93 F.3d 1036 (2d Cir. 1996)). In *Sherwood Investments*, the bankruptcy court expressly declined to apply the Bankruptcy Code's fraudulent transfer provisions extraterritorially where the transferee had bank branches in the United States, stating that "'[c]orporations are often present in many countries, and it would reach too far to say that mere corporate presence suffices' to displace the presumption against extraterritorial application." *See id.* at *18-22 (quoting *Kiobel v. Toyal Dutch Petroleum Co.*, 133 S. Ct. 1959, 1669 (2013)).[7]

Moreover, the Trustee's own allegations make it clear that these purported due diligence meetings were unrelated to ASB's Fairfield investments. The Trustee refers to meetings on various dates in 2003. *See* Proffer ¶¶ 15-17. All of these dates are long after ASB began investing with Fairfield, which by the Trustee's own assertion was in 1997. *See id.* ¶ 14. The fact that the Trustee alleges that ASB maintained an office in Florida and/or conducted due diligence in the United States in 2003 -- six years after the Trustee alleges ASB began investing with Fairfield -- does not support a plausible inference that the subsequent transfers were domestic.

---

[7] Indeed, the Complaint that Judge Rakoff discussed in his Extraterritoriality Decision contained an allegation that the defendants maintained an office in New York, but Judge Rakoff did not consider that allegation to be relevant in the analysis of whether the transfers were domestic.

- 4 -

### 3. Use of United States Bank Accounts

The Trustee alleges that ASB used New York bank accounts to transfer funds to and from Fairfield Sentry. *See* Proffer ¶¶ 18-20. The alleged use of U.S. bank accounts is irrelevant and does not support a plausible inference that the subsequent transfers were domestic. As Judge Rakoff specifically held in the Extraterritoriality Decision, a defendant's use of correspondent accounts (like the correspondent account of Fairfield Sentry's bank, Citco Bank Dublin, at HSBC in New York) to process dollar-denominated transfers is not "sufficient to make those foreign transfers domestic." Extraterritoriality Decision, at 228 n.1 (citing *Cedeno v. Intech Grp., Inc.*, 733 F. Supp. 2d 471, 472 (S.D.N.Y. 2010)). The Trustee cannot get around this simply by avoiding the word 'correspondent.' The accounts described in the Proffer are very clearly correspondent accounts. *See* 31 U.S.C. § 5318A(e)(1)(B) (defining "correspondent account" as "an account established to receive deposits from, make payments on behalf of a foreign financial institution, or handle other financial transactions related to such institution"). Moreover, as explained in the Consolidated Reply, Judge Rakoff's ruling is not limited to correspondent bank accounts. *See id.* at 228 (citing *Maxwell* and *In re Midland Euro Exch. Inc.*, 347 B.R. 708, 717 (Bankr. C.D. Cal. 2006)).

For these reasons, and as set forth in more detail in the Consolidated Reply, the Trustee's allegations regarding ASB's use of New York bank accounts do not give rise to a plausible inference that the accounts were anything more than correspondent bank accounts, or that the subsequent transfers were domestic.

### CONCLUSION

For the foregoing reasons, as well as the reasons set forth in the Consolidated Reply, ASB respectfully requests that the Bankruptcy Court enter an order dismissing the Complaint with prejudice and denying the Trustee's motion for leave to amend the Complaint.

Dated: New York, New York
September 30, 2015

ARNOLD & PORTER LLP

By:    /s/ Scott B. Schreiber

Scott B. Schreiber
Rosa J. Evergreen (to be admitted pro hac)
Dana Y. Elliott
601 Massachusetts Avenue, NW
Washington, D.C. 20001
Telephone: (202) 942-5000
Facsimile: (202) 942-5999

*Attorneys for Defendant Atlantic Security Bank*

- 6 -