Paul Hastings LLP
75 East 5th Street
New York, NY 10022
Telephone: (212) 318-6000
Barry Sher
Jodi Kleinick
Mor Wetzler

*Attorneys for FIM Limited, FIM Advisers
LLP, Carlo Grosso and Federico Ceretti*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | NO. 08-01789 (BRL) |
| Plaintiff-Applicant, | SIPA LIQUIDATION |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | Adv. Pro. No. 09-1161 (SMB) |
| Plaintiff, | |
| v. | |
| FEDERICO CERETTI, CARLO GROSSO, KINGATE GLOBAL FUND, LTD., KINGATE EURO FUND, LTD., KINGATE MANAGEMENT, LIMITED, FIM ADVISERS LLP, FIM LIMITED, CITI HEDGE FUND SERVICES LIMITED, FIRST PENINSULA INDIVIDUALLY AND AS TRUSTEES OF THE ASHBY TRUST, THE ASHBY TRUST, ASHBY INVESTMENT SERVICES LIMITED | |

INDIVIDUALLY AND AS TRUSTEES OF THE
ASHBY TRUST, ALPINE TRUSTEES LIMITED
INDIVIDUALLY AND AS TRUSTEES OF THE
EL PRELA TRUST, PORT OF HERCULES LTD.
INDIVIDUALLY AND AS TRUSTEE OF THE
EL PRELA TRUST, EL PRELA TRUST, EL
PRELA GROUP HOLDING SERVICES, ASHBY
HOLDING SERVICES LIMITED, AND EL
PRELA TRADING INVESTMENTS LIMITED
AND HSBC BANK BERMUDA LIMITED,

Defendants.

**<u>REPLY MEMORANDUM OF LAW ON BEHALF OF FIM LIMITED, FIM
ADVISERS, CARLO GROSSO AND FEDERICO CERETTI IN FURTHER
SUPPORT OF ALLEGED SUBSEQUENT TRANSFEREE DEFENDANTS'
MOTION TO DISMISS BASED ON EXTRATERRITORIALITY</u>**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................. 2

    I.    THE ALLEGED SUBSEQUENT TRANSFERS.................................. 3

    II.   THE EXTRATERRITORIALITY DECISION.................................... 6

ARGUMENT.......................................................................................................... 9

    A.   The FAC Fails to Satisfy the Trustee's Burden to Allege Facts Giving Rise to the Plausible Inference That Any Subsequent Transfer to Any FIM Defendant Occurred Within the U.S ...................... 9

    B.   The District Court Has Already Rejected The Trustee's Attempts to Blur the Distinction Required Under Section 550(a) Between Initial Transfers and Subsequent Transfers............................................. 11

    C.   The Trustee's Attempt to Lump All of the Subsequent Transferees Together Fails ........................................................................................ 12

    D.   The Summary Chart Attached to the Trustee's Brief Addresses Irrelevant Issues and Changes Nothing................................................... 16

    E.   The Extraterritoriality Decision Also Requires Dismissal of the FAC Based on Comity .......................................................................... 17

CONCLUSION.................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Banco Santander Sec.-Optimal Lit.*,
    732 F. Supp. 2d 1305 (S.D. Fla. 2010) ....................................................................12

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)................................................................................................11

*In re Kingate Mgmt. Ltd. Litig.*,
    784 F.3d 128 (2d Cir. 2015)....................................................................................20

*O'Brien v. Nat'l Prop. Analysts Partners*,
    719 F.Supp. 222 (S.D.N.Y.1989)............................................................................16

*Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*,
    513 B.R. 222 (S.D.N.Y. 2012)........................................................................ *passim*

*In re Sherwood Investments Overseas Ltd., Inc.*,
    No. 6:10-AP-00158-KSJ, 2015 WL 4486470 (Bankr. M.D. Fla. July 22, 2015)..............14, 15

*SIPC v. BLMIS*,
    513 B.R. 437 (S.D.N.Y. 2014)..................................................................................2

*SIPC v. Madoff*,
    2013 U.S. Dist. LEXIS 2517 (S.D. N.Y. Jan. 4, 2013) ............................................2

*Steinberg v. Barclay's Nominees (Branches) Ltd.*,
    No. 04-60897-cv, 2008 WL 4601042 (S.D. Fla. Sept. 30, 2008)............................12

*Weizmann Inst. of Sci. v. Neschis*,
    229 F. Supp. 2d 234 (S.D.N.Y. 2002)......................................................................9

**Statutes**

11 U.S.C. § 550(a)(2)............................................................................................ *passim*

**Other Authorities**

Fed. R. Bankr. P. 7012............................................................................................3

Fed. R. Civ. P. 12(b)(6)............................................................................................3

LEGAL_US_E # 116805659.9

Defendants (i) FIM Limited, (ii) FIM Advisers LLP (together with FIM Limited, "FIM"), (iii) Carlo Grosso and (iv) Federico Ceretti (collectively with FIM, the "FIM Defendants") respectfully submit this supplemental reply memorandum of law in further support of their motion to dismiss the Trustee's Fourth Amended Complaint ("FAC"),[1] and in opposition to: (a) the Trustee's Memorandum of Law in Opposition to the Transferee Defendants' Motion to Dismiss Based on Extraterritoriality and In Further Support of Trustee's Motion For Leave to Amend Complaints (the "Tr. Mem.") (Adv. Pro. Doc. 194); and (b) the Trustee's Supplemental Memorandum of Law In Opposition to Certain Defendants' Motion to Dismiss Based on Extraterritoriality and In Further Support of Trustee's Motion For Leave to Amend Complaints (the "Tr. Supp. Mem.") (Adv. Pro. Doc. 195).[2]  The FIM Defendants also incorporate by reference, join and adopt the reasoning of the Reply Consolidated Supplemental Memorandum of Law in Support of Transferee Defendants' Motion to Dismiss Based on Extraterritoriality (the "Consolidated Reply").  Because the Trustee did not request leave to amend the FAC, the dismissal should be with prejudice.

---

[1] The FAC (Adv. Pro. Doc. 100) is annexed as Exhibit 1 to the accompanying declaration of Jodi Kleinick dated September 30, 2015 (the "Kleinick Dec.").

[2]  Pursuant to the Court's Order Concerning Further Proceedings on Extraterritoriality Motion and Trustee's Omnibus Motion for Leave to Replead and For Limited Discovery (ECF No. 8800), the Trustee was entitled to submit a five-page supplemental opposition brief with respect to each defendant, and each specifically-mentioned defendant was entitled to submit a five-page reply.  The Trustee submitted a single consolidated brief against defendants in the Kingate action in lieu of separate shorter briefs, and the four FIM Defendants collectively submit this single consolidated reply.  By submitting this memorandum and joining in the Consolidated Reply, the FIM Defendants do not consent to the final adjudication of this matter by the Bankruptcy Court. Pursuant to the District Court's order dated January 4, 2013, only the District Court has authority to finally determine the extraterritoriality issue, and the FIM Defendants expressly reserve and do not waive their rights in this respect.  *SIPC v. Madoff*, 2013 U.S. Dist. LEXIS 2517 (S.D. N.Y. Jan. 4, 2013); *see also SIPC v. BLMIS*, 513 B.R. 437, 443 (S.D.N.Y. 2014).

1

# PRELIMINARY STATEMENT[3]

The FAC acknowledges that every alleged subsequent transfer to the FIM Defendants was made by a foreign transferor to a foreign transferee residing abroad.  The Trustee has not proffered any plausible allegation that any of these transfers occurred within the geographical boundaries of the United States.  Nor could he.  Under the unequivocal holding by the District Court in its Extraterritoriality Decision, the claim in this proceeding against all four FIM Defendants is and must be dismissed.

Faced with this, the Trustee's Supplemental Memorandum, like his Main Memorandum, seeks to divert the focus from the transfers themselves by focusing on extraneous issues:

(1) he unsuccessfully attempts to blur the distinction between the alleged *initial* transfers from BLMIS to Kingate Global Fund and Kingate Euro Fund (the "Kingate Funds"), which were made from the U.S. (and are not at issue), with the *subsequent* transfers at issue here, which were purely foreign;

(2) he tries to lump all the FIM Defendants into something he calls the "Kingate Enterprise" – a term that appears nowhere in the FAC – to make it appear as if there were one transferor (BLMIS) and one transferee (the "enterprise"); and

(3) he raises a host of irrelevant "facts" that have no bearing on whether the alleged subsequent transfers to any FIM Defendant occurred within the U.S. and are not even alleged in the FAC.

None of these arguments can save the FAC from dismissal as to any of the FIM Defendants.

Even if the FAC had alleged facts to rebut the presumption against extraterritoriality – which it does not – the District Court's alternative holding mandates dismissal of the FAC as to the FIM Defendants based on international comity.  The Kingate Funds and KML (like the Fairfield Sentry and Harley funds at issue in the example case Judge Rakoff considered) are in liquidation proceedings in their own foreign jurisdictions.  Moreover, the Kingate Funds are pursuing claims against the FIM Defendants and others in those jurisdictions to recover amounts

---

[3] The FIM Defendants in no way concede the accuracy of the Trustee's allegations contained in the FAC, and accept these allegations as true solely for the purposes of this motion, as required by Fed. R. Civ. P. 12(b)(6), applicable pursuant to Fed. R. Bankr. P. 7012.

paid by the Funds, and the District Court made clear that the Trustee cannot make an end-run around those foreign proceedings.   The FAC should be dismissed on this ground as well.

## I.      THE ALLEGED SUBSEQUENT TRANSFERS

The Trustee added the FIM Defendants in this proceeding in June 2011 with the filing of his Third Amended Complaint (the "TAC") (*See* Adv. Pro. Docs. 1, 5, 11 and 32).[4]  In his TAC, the Trustee asserted, *inter alia*, a claim pursuant to Section 550(a)(2) of the Bankruptcy Code to recover fees allegedly subsequently transferred from Kingate Management Limited ("KML"), a foreign entity residing abroad, directly or indirectly to the FIM Defendants, all foreign entities and individuals residing abroad.  *See* TAC ¶¶ 49-50, 65, 68, 70, 119, 123-24.  The TAC included a chart – based on extensive discovery the Trustee had received from FIM[5] – graphically demonstrating that none of these alleged subsequent transfers occurred within the U.S.  *See* TAC, Ex. C.

On March 17, 2014, six months after the FIM Defendants' motion to dismiss on the basis of extraterritoriality was fully submitted, the Trustee filed the FAC again asserting a claim against the FIM Defendants under Section 550(a)(2) of the Bankruptcy Code.  Tellingly, in contrast to the TAC, the FAC omitted the chart that showed the actual entities from and to which the alleged subsequent transfers to the FIM Defendants came, something the Trustee now seeks to obscure.  Nonetheless, the allegations in the FAC continue to allege subsequent transfers that occurred outside the U.S. and that were sent directly from a foreign transferor to foreign transferees.

---

[4] The TAC (Adv. Pro. Doc. 32) is attached as Exhibit 2 to the Kleinick Dec.

[5] The Trustee was provided with nearly 1 million pages of discovery in connection with his Rule 2004 Subpoena issued to FIM (USA), a subsidiary of FIM Limited, and over 30,000 documents pursuant to a discovery order issued by the U.K. court directed to FIM Limited and FIM Advisers.

The entire chain of transfers alleged in the FAC is as follows, with the alleged subsequent transfers to the FIM Defendants appearing in the third step:

(1)    Initial transfers were allegedly made by BLMIS to the Kingate Funds, BVI entities that reside in the BVI, at the Kingate Funds' accounts at the Bank of Bermuda in Bermuda (FAC ¶¶ 38, 40, 42, 43, 79, 80, 242, 243, 247, 248-252).

(2)    Thereafter, subsequent transfers of certain amounts were allegedly made from the Kingate Funds from their accounts in Bermuda to KML, a Bermuda entity that resides in Bermuda, as fees pursuant to a management agreement between the Kingate Funds and KML (FAC ¶¶ 44, 48, 106-109, 114, 117, 253).

(3)    Thereafter, subsequent transfers of unspecified amounts were allegedly made from KML to either:

(a)    FIM Limited and/or FIM Advisers LLP, both U.K. entities that reside in the UK, in the form of consulting and distribution fees, and thereafter to Messrs. Grosso and Ceretti, both Italian citizens who reside in the U.K., in their capacities as principals/officers of FIM (FAC ¶¶ 32, 33, 35, 49, 50, 51, 52, 110; Zeballos Dec. Ex. A; or

(b)    KML's two shareholders, (i) El Prela Trust/El Prela Group Holding Services Ltd. and (ii) Ashby Trust /Ashby Holdings Services Ltd., (foreign trusts organized in either the Island of Jersey or the BVI that reside in either the Island of Jersey, the BVI, Liberia or Monaco) (the "Trusts"), or to the trustees of those trusts, Alpine Trustees/Port of Hercules or First Peninsula (foreign trusts organized and residing in either Liberia or the BVI, which allegedly maintained their bank accounts in Monaco, Bermuda, Guernsey, the Island of Jersey or Switzerland) (the "Trustees") in the form of distributions; and thereafter from the Trusts or the Trustees (together, the "Trust Defendants") to Messrs. Grosso and Ceretti, again both Italian citizens who reside in the U.K., as beneficiaries of those Trusts.  FAC ¶¶ 32, 33, 54-60, 63-68, 70, 79, 256.[6]

---

[6] A complete summary of the alleged transferors and transferees for the subsequent transfers to the FIM Defendants, together with their citizenships and residencies, is attached to the Kleinick Dec. as Exhibit 3.

The following chart illustrates the alleged subsequent transfers to the four FIM Defendants, taken from the allegations in the FAC:



From the perspective of citizenship, residency or principal address of the alleged transferors and transferees, the FAC demonstrates that every alleged subsequent transfer to any FIM Defendant went from a foreign transferor to a foreign transferee outside of the U.S.:

| Transferor/Transferee | KML[7] | FIM Limited / FIM Advisers[8] | Trust Defendants[9] | Grosso / Ceretti[10] |
|---|---|---|---|---|
| Organization / Citizenship | Bermuda | UK | BVI, Liberia, Jersey | Italy |
| Residency | Bermuda | UK | BVI, Liberia, Monaco | UK |
| Address / Principal place of business | Bermuda | UK | BVI, Liberia, Monaco | UK |

## II.    THE EXTRATERRITORIALITY DECISION

On July 7, 2014, the District Court issued its Extraterritoriality Decision,[11] holding that
the Trustee has no authority under Section 550(a)(2) of the Code to attempt to recover
"subsequent transfers received abroad by a foreign transferee from a foreign transferor" and that
the Trustee's claims "are dismissed" to the extent that they seek to recover such foreign transfers.
Extraterritoriality Decision at 232.  The District Court rejected the Trustee's attempts, rehashed
here, to argue that these foreign transfers should somehow be considered domestic because they
relate to a remote domestic debtor, BLMIS, and to rely on a litany of "facts" that focus on
everything but where the transfer actually occurred:  "the transaction being regulated by section
550(a)(2) is the *transfer* of property to a subsequent transferee" and, thus, to determine whether
the alleged subsequent transfers to any transferee occurred extraterritorially, the court considers
only the "location of the *transfers* as well as the component events of those [*transfers*]."  *Id.*, 513
B.R. at 227 (quoting *Maxwell*, 186 B.R. at 817) (emphasis added).

---

[7] FAC ¶¶ 44, 48.

[8] FAC ¶¶ 49-50.

[9] FAC ¶¶ 54-58, 63-66.  *See also* FAC ¶ 70 (alleging flow of funds, without alleging that such
funds are subsequent transfers, "into and out of bank accounts opened in Monaco, Bermuda,
Guernsey, Island of Jersey, and Switzerland").

[10] FAC ¶¶ 32, 33.

[11] *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.*), 513 B.R.
222 (S.D.N.Y. 2012) (the "Extraterritoriality Decision").

In dismissing the Trustee's claim and remanding this proceeding back to this Court to implement its decision, the District Court re-emphasized that it is the location of the transfer that governs:

> [I]t is the Trustee's obligation to allege 'facts giving rise to the plausible inference that' the **transfer** occurred "**within** the United States." Here, to the extent that the Trustee's complaints allege that both the transferor and the transferee reside outside of the United States, there is no plausible inference that the transfer occurred domestically. Thus, unless the Trustee can put forth **specific facts showing a domestic transfer**, his recovery actions seeking foreign transfers should be dismissed.

*Id.* at 232 n.4 (emphasis added) (citation omitted). The District Court rejected the Trustee's arguments that use of a correspondent bank in the U.S. to process dollar-denominated transactions could somehow transform a foreign transfer into a domestic one. *Id.* at 228 n.1.

The District Court also dismissed the Trustee's Section 550(a)(2) claims on the basis of comity, holding that "in the alternative…even if the Trustee could allege facts to rebut the presumption against extraterritoriality, the Trustee's use of section 550(a) to reach these foreign subsequent transfers would be precluded by concerns of international comity." *Id.* at 231. Using the Fairfield Sentry and Harley funds as examples, the District Court explained that where foreign subsequent transferors are involved in their own liquidation proceedings in their home countries (as both the Kingate Funds and KML are in the BVI and Bermuda), those jurisdictions have a greater interest in applying their laws to determine the amounts recoverable by those foreign transferors from the recipients of those amounts (i.e., the alleged subsequent transferees), and that the Trustee cannot make an end-run around those liquidation proceedings to lay claim to transfers allegedly made by those entities. *Id.* at 232.

The Kingate Funds have been in liquidation in Bermuda and the BVI since 2009, and

KML has been in liquidation in Bermuda since June 2009.  TAC ¶ 64; FAC ¶ 43.[12]  In January

2011, six months before the Trustee added the FIM Defendants in this proceeding, the Kingate

Funds' liquidators brought an action in Bermuda (the "Bermuda Action") against KML, the FIM

Defendants, certain of the Trust Defendants and others seeking the same relief for the Kingate

Funds' estate that the Trustee is seeking here – recovery of amounts paid by the Kingate Funds

to KML pursuant to the management agreement between those parties, and thereafter paid by

KML to the FIM Defendants.[13]  That action is being actively litigated, and the Trustee has

acknowledged that these foreign proceedings seek the same relief from the FIM Defendants as

does the Trustee.  *See Picard v. Kingate Funds*, Adv. Pro. No. 12-01920, ECF No. 32 (Mar. 26,

2014) ("[The] Bermuda Action also seeks to recover the property that the [SIPA] Trustee in the

Avoidance Action alleges is customer property.").

---

[12] On March 2, 2012, the Bermuda Court directed that KML be wound up and appointed The Official Receiver of Bermuda Stephen Lowe, as liquidator.  TAC ¶ 48.  *See also* Order winding up KML (March 2, 2012), attached as Exhibit 1 to Declaration of Ted Debonis dated September 30, 2015 in support of KML's Reply Memorandum in Support of Its Motion to Dismiss Based on Extraterritoriality and in Opposition to the Trustee's Motion for Leave to Amend the Complaint (Dkt. No. 213).

[13] The Bermuda Action is in the Supreme Court of Bermuda, Civil Jurisdiction, Commercial List, captioned *Kingate Global Fund Limited (in Liquidation) and Kingate Euro Fund Limited (in Liquidation) v. Kingate Management Limited & Others*, 2010 No. 454**,** and the latest pleading filed by the Kingate Funds' liquidators is the Re-Re-Re-Amended Statement of Claim dated April 17, 2015, attached as Exhibit A to the Declaration of Andrew Witts dated September 30, 2015 ("Witts Decl.") in support of the Trust Defendants' Reply in Support of the Consolidated Supplemental Motion to Dismiss Based on Extraterritoriality, being filed concurrently.  *See Weizmann Inst. of Sci. v. Neschis*, 229 F. Supp. 2d 234, 244 n.14 (S.D.N.Y. 2002) (court can take judicial notice of documents filed in a foreign proceeding to establish the fact of such litigation and related filings).

**ARGUMENT**

A.  <u>The FAC Fails to Satisfy the Trustee's Burden to Allege Facts Giving Rise to the
Plausible Inference That Any Subsequent Transfer to Any FIM Defendant
Occurred Within the U.S.</u>

There is only one issue before the Court—whether the Trustee has carried his burden to

allege facts from which it plausibly can be inferred that the subsequent transfers allegedly made

to any FIM Defendant occurred within the U.S.  He has not.

The FAC itself acknowledges that each alleged subsequent transfer to each of the four

FIM Defendants came from a foreign transferor and went to a foreign transferee outside of the

U.S. using foreign bank accounts.  In particular, the alleged subsequent transfers at issue here

allegedly went from KML to the FIM Defendants via one of two paths:  (1) from KML to FIM

Limited/FIM Advisers and then from FIM Limited/FIM Advisers to Messrs. Grosso or Ceretti,

or (2) from KML to the Trust Defendants and from the Trust Defendants to Messrs. Grosso or

Ceretti.  FAC ¶¶ 32, 33, 35, 49-52, 54-60, 63-68, 70, 79, 110**.**

Every alleged subsequent transferor thus is acknowledged to be a foreign entity that

resided outside of the U.S. and maintained its bank accounts in foreign jurisdictions.  *See id.*; *see*

*also* Tr. Supp. Mem. at 17 ("the corporate members of the Kingate Enterprise were incorporated

or formed abroad"); FAC ¶ 70 (listing transfers to and from accounts in Monaco, Bermuda,

Guernsey, Island of Jersey, and Switzerland; no transfers in the U.S.).  Similarly, the alleged

transferees (the FIM Defendants), are all acknowledged to be foreign entities or individuals

residing outside of the U.S.  *Id.*;  FAC ¶¶ 32, 33 35, 36**.**  Under the mandate of the District Court,

the Trustee's Section 550(a)(2) claim is and must be dismissed as to all four FIM Defendants.

*See* Extraterritoriality Decision at 232.

The Trustee nevertheless suggests that payments from KML to FIM Limited were

"routed directly or indirectly through a bank account in New York," but this gets him nowhere.

*See* Tr. Supp. Mem. at 16 (citing FAC ¶ 89);  *see also id.* at 18 (referring to "investments in U.S.

dollars, necessitating a course of dealing with New York banks"). In the first place, no specific

payment is identified as having gone this route – such a general, vague statement is meaningless.

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). And as this Court has already

determined to be "incontrovertible," this is simply another reference to a correspondent bank

account – FIM Limited never had any bank account in New York, and the account at Brown

Brothers Harriman & Company ("BBH") referred to in the FAC is a correspondent account

belonging to MeesPierson Bank in Guernsey, Channel Islands, that MeesPierson used for *its* U.S.

dollar transactions. *See* Adv. Proc. Doc. 190 (Hearing Tr. at 18:22-19:1) ("it is now

incontrovertible that the BBH account did not belong to FIM Ltd. and moreover that it has never

had an account in New York."). *See also* Adv. Proc. Docs. 160-165, 190.[14]

The District Court rejected the Trustee's argument that the use of a correspondent bank in

the U.S. can render a foreign transfer domestic, even if such an account belonged to the alleged

transferee – and here the account does not even belong to FIM Limited. Extraterritoriality

Decision at 228 n.1. The Trustee is merely attempting to re-litigate an issue that already has

been decided against him (Tr. Mem. at 22), and as explained in the Consolidated Reply, the cases

cited by the Trustee are inapposite because they are personal jurisdiction cases, which the

---

[14] The Trustee has acknowledged that this account is a correspondent bank account in proffered allegations he makes in other adversary proceedings, omitting any suggestion that the account belonged to FIM (USA) and eliminating the word "directly" to characterize the flow of funds through the account. *See, e.g., Picard v. SICO Ltd.*, No. 12-01005, Proffered Cmplt. ¶ 77 ("FIM also directed fee payments to be routed through a bank account in New York"); *Picard v. Banco Itau Europa Luxembourg, S.A., et al.*, No. 12-01019, Proffered Cmplt. ¶ 88 (same); *Picard v. Grosvenor Investment Mgmt., Ltd.*, No. 12-01021, Proffered Cmplt. ¶ 82 (same); *Picard v. Credit Agricole (Suisse) S.A., et al.*, No. 12-01022, Proffered Cmplt. ¶ 135 (same); Picard v. Arden Asset Mgmt., No. 12-01023, Proffered Cmplt. ¶ 86 (same); *Picard v. Solon Capital, Ltd.*, No. 12-01025, Proffered Cmplt. ¶ 82 (same); *Picard v. SIX SIS AG*, No. 12-1195, Proffered Cmplt. ¶ 75 (same); *Picard v. Bank Vontobel AG, et al.*, No. 12-01202, Proffered Cmplt. ¶ 87 (same); *Picard v. Multi-Strategy Fund Ltd., et al.*, No. 12-01205, Proffered Cmplt. ¶ 78 (same); *Picard v. Schroder & Co. Bank AG*, No. 12-01210, Proffered Cmplt. ¶ 91 (same); *Picard v. Bank Hapoalim B.M., et al.*, No. 12-01216, Proffered Cmplt. ¶ 81 (same); *Picard v. Mistral (SPC)*, No. 12-01273, Proffered Cmplt. ¶ 81 (same).

Trustee has conceded have no relevance to the determination of whether a transfer is foreign or domestic. *See* ECF No. 310 at 16. Even in the personal jurisdiction context, the cases make clear that the presence or use of a correspondent bank account in the U.S. by a third party intermediate bank – such as MeesPierson here – would not give rise to jurisdiction over a client of that intermediate bank. *See Steinberg v. Barclay's Nominees (Branches) Ltd.,* No. 04-60897-cv, 2008 WL 4601042, at *6 (S.D. Fla. Sept. 30, 2008) (fact that Standard Bank Asia Limited had its correspondent bank account at Citibank in New York and used that account for redemptions for a fund did not confer jurisdiction over the fund); *In re Banco Santander Sec.-Optimal Litig.*, 732 F. Supp. 2d 1305, 1324 (S.D. Fla. 2010) (intermediary bank's designation of correspondent bank account to receive funds for its own transactions cannot confer personal jurisdiction on party with account at intermediary bank).

Because none of the alleged subsequent transfers to any FIM Defendant occurred within the U.S., this Court's inquiry must end and the Trustee's Section 550(a)(2) claim as to all four FIM Defendants be dismissed under the District Court's mandate.

B.    <u>The District Court Has Already Rejected The Trustee's Attempts to Blur the Distinction Required Under Section 550(a) Between Initial Transfers and Subsequent Transfers</u>

The Trustee asserts that "but for" BLMIS, none of the alleged subsequent transfers would have occurred, and they are all therefore domestic. *See, e.g.,* Tr. Supp. Mem. at 5 (even if the transfers were made from and to foreign entities abroad, they are "customer property of BLMIS" that was removed from the U.S).[15] All of these arguments have been made and rejected before.

---

[15] *See also* Tr. Supp. Mem. at 6 (no transfers "but for" BLMIS); 5-6 (intent to profit from BLMIS); 10 (functions performed by BLMIS); 11 (BLMIS as agent of funds); 12 (BLMIS's strategy); 14 (communications with BLMIS); 15-16 (BLMIS's performance); Tr. Mem. at 4 (transfers "initially came from BLMIS"); 8 (fees were "derived from BLMIS customer property"); 10 (BLMIS was Investment Advisor); 29 (Kingate Funds "operated" through BLMIS); 30-31 (investments by Funds "with BLMIS" "necessitated …dealing with U.S. banks"); 33 (transfers "stemmed" from BLMIS).

As the District Court recognized, Section 550(a) makes a distinction between initial and subsequent transfers. The District Court accordingly rejected the Trustee's "but-for" arguments,[16] holding that the focus of the inquiry is not on the initial transfers or the relationship of those transfers to BLMIS, but on the physical location of the alleged subsequent transfer. Extraterritoriality Decision at 7-8 (Section 550(a)(2) focuses on the "transfer of property to a subsequent transferee, not the relationship of that property to [the debtor]"). Extraterritoriality Decision at 227-28; *see also* Consolidated Reply at 19-20; 25-26. None of the Trustee's arguments concerning BLMIS, its investments and activities, its accounts in New York, or the supposed "raison d'etre" for the fees that are the subject of the alleged subsequent transfers can alter the District Court's holding.

C.    The Trustee's Attempt to Lump All of the Subsequent Transferees Together Fails

The Trustee's attempt to collapse all of the alleged subsequent transferees – which are separate entities and individuals – into one "Kingate Enterprise" transferee fares no better. This term appears nowhere in the FAC. It was invented in the Trustee's opposition brief. Moreover, the Trustee's arguments that the "core" of the claimed "Kingate Enterprise" existed in New York or that the "Kingate Enterprise would not have existed but for BLMIS" are beside the point. The Extraterritoriality Decision found that the determination of whether the Trustee has met his pleading burden and plausibly alleged facts showing that a subsequent transfer occurred within

---

[16] *See* ECF No. 310 at 3 (arguing the Court should look to BLMIS, not the location of the recipient of the transfer); 12 (arguing BLMIS perpetrated a fraud from the U.S. and transferred customer property out of accounts in the U.S.); 13 (arguing the Trustee's recovery actions "focus on the acts of BLMIS"); 16 (arguing the focus of Section 550(a) is the domestic debtor and not on where the subsequent transferees reside); 17 (arguing Section 550(a) permits the Trustee to recover subsequent transfers received abroad because the transfers originated from BLMIS's bank account in New York and was made in furtherance of a New York Ponzi scheme); 26 (arguing Congress did not intend the application of Section 550(a) to "depend upon a party's foreign residence status"); ECF No. 357 at 13-15 (rejecting the Trustee's argument that the focus of the inquiry should be on the domestic debtor rather than the residence of the subsequent transferee).

the U.S. focuses on the *specific* subsequent transferor and transferee, and the location of the *specific* alleged subsequent transfer between those parties. *See* Extraterritoriality Decision at 225 (referring to "a" foreign transferor and "a" foreign transferee), 227 (noting that Section 550(a) focuses on "the property transferred"), 232 (holding that Section 550(a) does not allow for the recovery of subsequent transfers received abroad by "a" foreign transferee from "a" foreign transferor), 232 n.4 (where the complaint alleges that "the" transferor and "the" transferee reside outside of the U.S., there is no plausible inference that the transfer occurred domestically). *See also In re Sherwood Investments Overseas Ltd., Inc.*, No. 6:10-AP-00158-KSJ, 2015 WL 4486470, at *19-20 (Bankr. M.D. Fla. July 22, 2015) (debtor's presence in U.S. cannot defeat a finding of extraterritorial application).

As a result, in analyzing the alleged subsequent transfers from KML to the FIM Defendants or from the Trust Defendants to Messrs. Grosso or Ceretti, the only allegations that matter are those that relate to those specific transferors and transferees. None of the allegations relating to parties other than the transferors and transferees has any relevance. *See, e.g.,* irrelevant allegations relating to BLMIS, the Kingate Funds, Tremont (Bermuda) Limited, HSBC Bank Bermuda, and Citi Hedge. Tr. Supp. Mem. at 9 n.66 and at 15 n.104. None of these arguments or allegations has any bearing on the locations of the subsequent transfers to the FIM Defendants.

While allegations relating to KML, in its capacity as transferor, could be relevant to the issue of whether a subsequent transfer to FIM or to the Trusts is foreign, none of the allegations relied on by the Trustee relates to the locations of the alleged subsequent transfers. It does not matter that KML (acknowledged to be a foreign entity resident outside of the U.S. with a three-member board) had one director who was an attorney in New York or that KML engaged FIM (foreign entities resident outside the U.S.) as its consultant. If anything, these allegations give rise to the inference that any subsequent transfers from KML occurred outside the U.S. *See* Tr. Supp. Mem. at 7-8, 13; FAC ¶¶ 44, 51, 52. That the Trust Defendants (which the Trustee admits

are all foreign and moved funds between various accounts within their own foreign countries) "received" portions of the transfers from KML allegedly "derived from" the Kingate Funds and were therefore "key components" of the supposed Kingate Enterprise is irrelevant to the location of transfers from KML to the Trust Defendants, or from the Trust Defendants to either Messrs. Grosso or Ceretti.  *See* Tr. Supp. Mem. at 10.

The Trustee's inclusion of FIM (USA), Inc. in his opposition brief's chart of the supposed "Kingate Enterprise" is contrary to his own allegations acknowledging that the alleged subsequent transfers to the named FIM Defendants did not go to FIM (USA) and all occurred outside the U.S., and that KML's agreements were with FIM and not FIM (USA).  *See* FAC ¶¶ 89, 110-12.  Although the "graphic illustration" in the Trustee's opposition includes FIM (USA) ***as if*** the FAC actually alleged the transfer of fees from KML to that entity, the FAC makes no such allegation.[17]  Quite the contrary, the Trustee himself repeatedly acknowledges that FIM (USA) has not received any portion of the subsequent transfers made to any FIM Defendant.  *See* Tr. Supp. Mem. at 6 n.32 and 16.

The Trustee also argues that "FIM and FIM (USA) were treated as one company."  Tr. Supp. Mem. at 8.  This is both irrelevant and unsupported by the FAC.[18]  Even if it were alleged, that does not change the location of the transfers, which admittedly were not to FIM (USA) and not in the U.S.  Moreover, none of the allegations in the FAC, including the allegations cited by the Trustee as support for his "one company" proposition, say anything of the sort. *See* FAC ¶ 5

---

[17] *See* Tr. Supp. Mem. at 3;  *Cf.* TAC, Ex. C (showing no alleged subsequent transfers to FIM (USA)).  The FAC alleges only that FIM (USA): (1) was "incorporated [in 2005] under the laws of the State of Delaware, with a principal place of business in New York, New York" (FAC ¶ 37); that unspecified defendants communicated with FIM (USA) (FAC ¶ 83); that FIM (USA) marketed FIM Advisers' services and performed research functions in New York on behalf and under the direction of the FIM Defendants (FAC ¶ 84);  that employees of FIM (USA) "promoted FIM in the United States," and that certain employees of FIM Advisers were also employees of FIM (USA) (FAC ¶ 85).

[18] *See Sherwood Investments Overseas*, 2015 WL 4486470, at *21 (corporate presence in U.S. is not sufficient to render foreign transfers "domestic").

(does not mention FIM (USA)); ¶ 84 (alleging that FIM (USA) "marketed FIM Advisers'
services" and performed unspecified research functions for the FIM Entities); ¶ 85 (alleging that
employees of FIM (USA) "promoted [the FIM Entities]" and that "certain employees" of FIM
Advisers were also employees of FIM (USA)); and ¶ 110 (does not mention FIM (USA), alleges
a contract between KML and FIM Limited/FIM Advisers, pursuant to which FIM Limited
received a fee from KML).  *See also supra* note 15.

        The same is true of the financial statements attached to the Trustee's papers, which are
not even mentioned in the FAC and should not be considered on a motion to dismiss.  *See* Tr.
Supp. Mem. at 8 and nn.58-61; Zeballos Dec. Exs. B-D.[19]  Were this Court to nevertheless
consider them, they clearly show that FIM and FIM (USA) were separate companies: (a) FIM
Limited and FIM Advisers prepared separate financial statements; (b) FIM Limited, FIM
Advisers and FIM (USA) were organized as separate entities (Zeballos Dec. Ex. B at 15); (c)
FIM (USA) was a wholly-owned subsidiary of FIM Limited; and (d) these entities had separate
boards of directors and different members.[20]  That one of FIM's employees worked in the U.S.
out of FIM (USA's) offices, or that a parent entity filed a consolidated financial statement, does
not support the Trustee's argument.  *See* U.K. Companies Act 2006, § 399 (previously
Companies Act 1985 § 229 (as amended)) (imposing an obligation on a parent company to
prepare full group accounts consolidating the finances of the parent company and its
subsidiaries).

_____

[19] *See O'Brien v. Nat'l Prop. Analysts Partners*, 719 F. Supp. 222, 229 (S.D.N.Y. 1989) ("[I]t is
axiomatic that the Complaint cannot be amended by the briefs in opposition to a motion to
dismiss.").

[20] FIM Limited is a corporation whose board consists of two directors, Messrs. Grosso and
Ceretti.  *See* Zeballos Dec. Ex. A, B at 3; FIM Advisers is an LLP comprised of seven members:
FIM Limited, Messrs. Healy, D'Oria, Albright, Robertson, Jochems and Chapman (Zeballos
Dec. Ex. C at 1-2); and FIM (USA) is a corporation whose board consisted of three directors,
Messrs. Dragoo, Healy and Tannenbaum (Zeballos Dec. Ex. E).

D.    The Summary Chart Attached to the Trustee's Brief Addresses Irrelevant Issues
        and Changes Nothing

Although the Trustee's Summary Chart identifies 19 "elements" that the Trustee

contends somehow inform this Court's analysis of whether the alleged subsequent transfers

occurred within the U.S., none of these elements have anything to do with the *location* of the

alleged subsequent transfers to the FIM Defendants, or to any of the other alleged subsequent

transferee defendants. *See* Tr. Mem., Ex. 2; Consolidated Reply at 18-33.

As an initial matter, the Trustee concedes that seven of the "elements" he relies on most

heavily in his main memorandum *do not apply* to the FIM Defendants at all:  the Kingate Funds

did not have principal (or even any) alleged operations in the U.S. (1); there are no U.S. choice

of law or venue provisions in the agreements between KML and FIM (2, 3); there are no alleged

subsequent transfers to Shareholder Defendants (15); none of the FIM Defendants filed a

customer claim in BLMIS's estate (17); the FIM Defendants are not U.S. citizens (18); and the

FIM Defendants did not maintain a U.S. office (19).

As to the remainder, five of the "elements" relate entirely to BLMIS and its activities,

which as discussed above, have no bearing on the location of the subsequent transfers. *See*

columns 4-7, 14.  The Trustee's remaining columns have no bearing on the location of the

alleged subsequent transfers and/or are not plausibly alleged in the FAC.  The Trustee checks off

his column 11 labeled "used a U.S. bank account," but as discussed above, the only account

alleged in the FAC is a correspondent bank account belonging to MeesPierson Bank which the

District Court held does not convert foreign transfers into domestic ones.  Column 13 is labeled

"had relationship with Feeder Funds' U.S. office, employees or other reps," but the Kingate

Funds are not even alleged to have any U.S. office (*see* Column 1), and even if they did, it would

be irrelevant to the location of the subsequent transfers to the FIM Defendants, which are alleged

to have come from KML.  Column 16 is labelled "Defendant participated in feeder fund

management, and/or is an entity created by, or for the benefit, Feeder Fund management," but

this too is irrelevant because none of the FIM Defendants is alleged to have received any transfers from the Kingate Funds (which themselves are not even alleged to be U.S. entities), and the argument is not supported by any allegation in the FAC.[21]  *See* Consolidated Reply at 31. Finally, the Trustee checks off the columns labelled "conducted due diligence in the U.S." and "conducted due diligence on BLMIS" (8, 9), but any such diligence would be irrelevant to where the transfer of funds to FIM or Messrs. Grosso or Ceretti occurred.  *See* Consolidated Reply at 26-27; FAC ¶¶ 49-50, 130**.**

For all of these reasons, the Trustee's efforts to transform what he has acknowledged to be transfers from foreign subsequent transferors to the foreign FIM Defendants outside of the U.S. into domestic transfers fail, and the District Court's decision requires that the FAC be finally dismissed as to the FIM Defendants.

     E.     <u>The Extraterritoriality Decision Also Requires Dismissal of the FAC Based on Comity</u>

The Trustee's attempt to avoid dismissal of the FAC under the District Court's alternative holding that his Section 550(a)(2) claims are precluded under international comity fares no better.  The District Court already rejected the very same arguments being made by the Trustee and SIPA here.[22]

After performing a thorough choice of law analysis to determine whether the application of U.S. law would be reasonable under these very circumstances, the District Court concluded that it was not, given the "*indirect relationship* between [BLMIS] and the [subsequent] transfers

---

[21] Messrs. Grosso and Ceretti are not alleged to be party to any contract with KML in their individual capacities, and were not "created by or for the benefit" of the Kingate Funds.  FIM was in existence long before the Kingate Funds were established.  *Compare* FAC ¶ 35 (FIM Limited was founded in 1981 *with* FAC ¶ 2 (Kingate Funds were established in 1994 and 2000). *See also* TAC ¶ 155 (FIM Advisers was FIM Limited's successor).

[22] The Trustee made the same arguments to the District Court.  *See* ECF No. 310 at 15 n.16, 16 n.17; ECF. No. 309 at 23-24; ECF No. 357 at 16-19.

here." Extraterritoriality Decision at 232 (emphasis added).  The District Court pointed to the

fact that none of the alleged subsequent transferees had any direct relationship with BLMIS – the

subsequent transferee relationships were with or through the foreign feeder funds – and the

foreign jurisdictions overseeing the liquidations of those funds have the right to determine on

what bases the recipients of transfers from those debtors should be required to disgorge them.

The Trustee has no right to use U.S. law to "reach around such foreign liquidations" to make

claims to assets on behalf of BLMIS, with which the FIM Defendants had no direct relationship.

*Id*.

The Trustee argues that the FIM Defendants should have expected that they "would be

subject to U.S. laws" or "invoked American law." Tr. Supp. Mem. at 18-20;  Tr. Mem. at 32

n. 125.  The Trustee also argues that his claim should not be dismissed because "no parallel

proceeding with substantially similar parties and issues exists." Tr. Mem. at 34.  As explained in

the Consolidated Reply, however, these arguments are premised on legal principles that do not

apply to the District Court's comity holding.  Consolidated Reply at 33-40. Moreover, these

arguments fail as to the FIM Defendants for several additional reasons:

- There is no allegation in the FAC that any agreement to which any FIM
  Defendant is a party provides that U.S. law applies to potential claims
  against the FIM Defendants, and none of the documents relied on by the
  Trustee provides otherwise.

- The District Court has already rejected the Trustee's arguments that the
  alleged subsequent transfers would not have occurred "but for" the
  Kingate Funds' "customer relationship" with BLMIS.   Extraterritoriality
  Decision at 232.

- Neither the fact that the Kingate Funds' Information Memorandum
  contained a boilerplate disclosure that the Kingate Funds and BLMIS may
  be required to comply with "various legal requirements" with respect to
  investments by BLMIS, nor the fact that the Kingate Funds engaged U.S.
  counsel to advise on U.S. compliance issues, establishes any agreement
  that U.S. law would apply to the FIM Defendants' relationship with the
  Kingate Funds or KML.  *See* Extraterritoriality Decision at 232.  To the
  contrary, the agreements with the Kingate Funds (including the Funds'
  subscription agreements with their investors, the management agreements
  between the Funds and KML, and the consulting and distribution

agreements between KML and FIM) expressly provide that they are governed by Bermuda, BVI, or U.K. law.[23]

- The Trustee's argument that comity should not preclude his claims because the FIM Defendants "invoked U.S. law" by arguing, years after the alleged subsequent transfers here, that a different U.S. law precluded investors in the Kingate Funds from asserting common law claims in the U.S. (and that those claims could only be pursued in Bermuda by the Kingate Funds and/or by KML, if at all) is absurd.[24]

Lastly, the District Court has already rejected the Trustee's arguments concerning comity under the precise circumstances involving the FIM Defendants. *See* ECF No. 357 at 17-18, 29-30; ECF No. 310 at 15 n.16. The Bermuda Action is a parallel foreign proceeding where the issue of what, if any, fees are recoverable from the Kingate Funds of KML, the FIM Defendants and certain of the Trust Defendants, is being litigated in the context of the Kingate Funds' liquidation proceedings. *See* Witts Decl. Exh. A. The fact that the Trustee is not party to those proceedings, like the Trustee is not a party to the foreign proceedings involving Fairfield Sentry and Harley, is irrelevant. Moreover, as the District Court recognized, a decision by the Bermuda court limiting the Kingate Funds rights to recover amounts paid by the Funds – which is under consideration in the Bermuda Action -- would be in direct conflict with what the Trustee hopes to accomplish here. *See* Extraterritoriality Decision at 232. Comity therefore requires dismissal of the Trustee's Section 550(a)(2) claim as to the FIM Defendants.

---

[23] *See Picard v. Kingate Global Fund, et al.*, No. 12-01920-smb, Dkt. No. 25 (Loigman Declaration) Exh. B at 2; Exh. C at 5; Exh. D at 4; Exh. E at 11; Exh. G at 4.

[24] *See* Consolidated Reply at 33-40; *see also In re Kingate Mgmt. Ltd. Litig.*, 11-1397-cv, Dkt. No. 127 at 9-11 (2d Cir.); No. 1:09-cv-05386-DAB (S.D.N.Y.) Dkt No. 82 at 7-8, 154 at 9, 162 at 10-18; *In re Kingate Mgmt. Ltd. Litig.*, 784 F.3d 128, 151 (2d Cir. 2015) (finding SLUSA precludes plaintiffs' common law claims premised on misrepresentations and omissions).

## CONCLUSION

For the foregoing reasons, the FAC should be dismissed with prejudice as to the FIM

Defendants, together with such other and further relief as the Court deems appropriate.

Dated:   New York, New York
       September 30, 2015

PAUL HASTINGS  LLP


By:   /s/ Jodi Kleinick
Barry Sher
Jodi Kleinick
Mor Wetzler

75 East 55th Street
New York, NY 10022
Telephone: (212) 318-6000


*Attorneys for Defendants FIM Limited,  FIM*
*Advisers LLP, Carlo Grosso and Federico*
*Ceretti*