WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, New York 10019
Telephone: (212) 728-8000
Facsimile: (212) 728-8111

*Attorneys for Defendants Equus Asset Management Ltd.,*
*Hermes Asset Management Limited, Thema Asset Management*
*Limited and Thema Asset Management (Bermuda) Ltd.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>Plaintiff-Applicant,<br><br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>Defendant. | 08-01789 (SMB)<br><br>SIPA Liquidation<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>Plaintiff,<br><br>v.<br><br>HSBC BANK PLC, et al.,<br><br>Defendants. | Adv. Pro. No. 09-1364 (SMB) |

**SUPPLEMENTAL REPLY MEMORANDUM OF LAW OF EQUUS ASSET**
**MANAGEMENT LTD., HERMES ASSET MANAGEMENT LIMITED, THEMA ASSET**
**MANAGEMENT LIMITED AND THEMA ASSET MANAGEMENT (BERMUDA) LTD.**
**IN FURTHER SUPPORT OF THE TRANSFEREE DEFENDANTS' MOTION TO**
**DISMISS BASED ON EXTRATERRITORIALITY AND IN OPPOSITION TO THE**
<u>**TRUSTEE'S MOTION FOR LEAVE TO AMEND HIS COMPLAINT**</u>

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ....................................................................................................2

ARGUMENT ...................................................................................................................................2

    I.    THE TRUSTEE'S CLAIMS AGAINST THE FOREIGN SUBSEQUENT TRANSFEREES SHOULD BE DISMISSED BECAUSE THE TRUSTEE HAS FAILED TO ALLEGE THAT ANY OF THE TRANSFERS TO THOSE DEFENDANTS WAS DOMESTIC. ..........................................................2

        A.    The Trustee Fails To Allege Any Facts Suggesting A Domestic Transfer ................................................................................................................3

        B.    The Trustee Misconstrues *Parkcentral* ..........................................................5

        C.    The Alleged Relationship Of The Foreign Subsequent Transferees And The Transfers To BLMIS Is Irrelevant ..................................................6

    II.    THIS COURT SHOULD DENY THE TRUSTEE'S MOTION FOR LEAVE TO AMEND. ......................................................................................................8

CONCLUSION ................................................................................................................................9

# TABLE OF AUTHORITIES

**CASES**                                                                                                           **Page(s)**

*Absolute Activist Value Master Fund Ltd. v. Ficeto*,
    677 F.3d 60 (2d Cir. 2012)......................................................................................................8

*Morrison v. National Australia Bank Ltd.*,
    561 U.S. 247 (2010) ................................................................................................................5

*Parkcentral Global Hub Ltd. v. Porsche Automobile Holdings SE*,
    763 F.3d 198 (2d Cir. 2014)................................................................................................5, 6

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
    513 B.R. 222 (S.D.N.Y. 2014).......................................................................................3, 4, 6, 7

Pursuant to the Scheduling Order[1] concerning further proceedings on the consolidated Extraterritoriality Motion,[2] defendants Equus Asset Management Ltd. ("Equus"), Hermes Asset Management Limited ("Hermes Management"), Thema Asset Management Limited ("Thema Management BVI"), and Thema Asset Management (Bermuda) Ltd. ("Thema Management Bermuda" and, collectively, the "Foreign Subsequent Transferees") respectfully submit this reply memorandum (i) in response to the *Trustee's Supplemental Memorandum of Law in Opposition to the Motion to Dismiss Based on Extraterritoriality and in Further Support of the Trustee's Motion for Leave to Amend Complaints*, Adv. Proc. No. 09-01364 (SMB) [Docket No. 397] (the "Trustee's Supplemental Memorandum"), and (ii) in opposition to the Trustee's motion for leave to amend his complaint (the "Amended Complaint") against the Foreign Subsequent Transferees. The Foreign Subsequent Transferees adopt and incorporate in full by reference the arguments set forth in the *Reply Consolidated Supplemental Memorandum of Law in Support of Transferee Defendants' Motion to Dismiss Based on Extraterritoriality* (the "Consolidated Reply Memorandum") filed contemporaneously herewith on behalf of the "Transferee Defendants" listed in Exhibits A and B to the Scheduling Order, including the Foreign Subsequent Transferees, each of whom is listed on Exhibit A thereto.

---

[1] The "Scheduling Order" is the Court's *Order Concerning Further Proceedings on Extraterritoriality Motion and Trustee's Omnibus Motion for Leave to Replead and for Limited Discovery*, Case No. 08-01789 (SMB) [Docket No. 8800], as modified by the Stipulations and Orders entered on January 14, 2015 [Docket No. 8990], February 24, 2015 [Docket No. 9350] (the "Second Stipulation and Scheduling Order"), and March 31, 2015 [Docket No. 9720].

[2] Capitalized terms not otherwise defined herein have the meanings given to them in the *Consolidated Supplemental Memorandum of Law in Support of the Transferee Defendants' Motion to Dismiss Based on Extraterritoriality.* Adv. Proc. No. 09-1364 (SMB) [Docket No. 360].

- 1 -

**PRELIMINARY STATEMENT**

Judge Rakoff was clear: there is no plausible inference that a challenged transfer is domestic for purposes of Section 550 of the Bankruptcy Code where the transfer that is sought to be recovered was sent and received abroad from a foreign transferor to a foreign transferee. That is exactly what we have here. As demonstrated below, the Foreign Subsequent Transferees are all foreign entities incorporated and operating overseas and each of them received the alleged transfers at issue here (the "Transfers") from non-U.S. entities for services performed outside the U.S. It is thus not surprising that the Trustee has failed to allege any facts in the Amended Complaint plausibly suggesting that those Transfers were domestic. Nor has the Trustee shown how the proposed allegations in his proffered Second Amended Complaint against the Foreign Subsequent Transferees come close to satisfying that burden. Rather, the Trustee's arguments in opposition to the Extraterritoriality Motion are based entirely on a grab bag of alleged "connections" to the United States or BLMIS that are wholly irrelevant to the governing legal standard this Court must apply to determine whether the Transfers were domestic.

For these reasons and those set forth in the Consolidated Reply Memorandum, the Extraterritoriality Motion should be granted, the claims to recover the Transfers should be dismissed with prejudice, and the Trustee's request for leave to amend the Amended Complaint should be denied.

**ARGUMENT**

**I.     THE TRUSTEE'S CLAIMS AGAINST THE FOREIGN SUBSEQUENT TRANSFEREES SHOULD BE DISMISSED BECAUSE THE TRUSTEE HAS FAILED TO ALLEGE THAT ANY OF THE TRANSFERS TO THOSE DEFENDANTS WAS DOMESTIC.**

In prior proceedings before the District Court, Judge Rakoff held that "section 550(a) does not apply extraterritorially to allow for the recovery of subsequent transfers received

- 2 -

abroad by a foreign transferee from a foreign transferor." *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 513 B.R. 222, 232 (S.D.N.Y. 2014) (the "Extraterritoriality Decision"). As such, "unless the Trustee can put forth *specific facts* suggesting a domestic transfer, his recovery actions seeking foreign transfers should be dismissed." *Id.* at 232 n. 4 (emphasis added). In determining whether the Transfers here "occurred extraterritorially, the court [must] consider the location of the transfers as well as the component events of those transactions." *Id.* at 227 (internal citation omitted).

As demonstrated below, the allegations in the Amended Complaint as well as the Trustee's proffered Second Amended Complaint (the "Proffered Second Amended Complaint") fall far short of meeting the Trustee's burden under the Extraterritoriality Decision. As a result, the Extraterritoriality Motion should be granted and the Trustee's claims against the Foreign Subsequent Transferees to recover the Transfers should be dismissed with prejudice.

### A. The Trustee Fails To Allege Any Facts Suggesting A Domestic Transfer

Nothing in the Amended Complaint, the Proffered Second Amended Complaint, or any of the memoranda filed by the Trustee in connection with the Extraterritoriality Motion identifies any facts, let alone specific facts, plausibly suggesting that the Transfers were domestic. For example, the Trustee does not contend any of the Transfers were made in the United States or that any of the Transfers were received in or transferred through or to the United States. The Trustee also does not allege that (i) any of the Foreign Subsequent Transferees have U.S. bank accounts, (ii) any of the Transfers were made from U.S. bank accounts, (iii) the agreements between the Foreign Subsequent Transferees and the relevant feeder funds for whom they provided services were governed by U.S. law or contained U.S. venue provisions, or (iv) the Foreign Subsequent Transferees received some or all of the Transfers from feeder funds with

08-01789-cgm    Doc 11624    Filed 09/30/15    Entered 09/30/15 18:16:31    Main Document
                                                      Pg 7 of 13

their principal operations in the United States or from BLMIS directly.[3] *See* Trustee's Memorandum at Exhibit 2.

To the contrary, the following facts, all of which the Trustee concedes, conclusively demonstrate that the Transfers at issue here were not domestic:

- Hermes Management, Thema Management Bermuda, and Equus are each organized under the laws of, and have registered addresses in, Bermuda. Amended Complaint at ¶¶ 82, 83, 85; Proffered Second Amended Complaint at ¶¶ 45, 76; Scheduling Order, Exhibit A at 7.

- Thema Management BVI is organized under the laws of, and its registered address is in, the British Virgin Islands. Amended Complaint at ¶ 84; Proffered Second Amended Complaint at ¶ 66;[4] Scheduling Order, Exhibit A at 7.

- The feeder funds from whom each of the Foreign Subsequent Transferees allegedly received the Transfers are organized under the laws of, and have registered addresses, in the British Virgin Islands or Ireland. Scheduling Order, Exhibit A at 7.

- The Transfers were made by certain foreign feeder funds (located in the British Virgin Islands or Ireland) to the Foreign Subsequent Transferees (located in Bermuda and the British Virgin Islands) outside of the United States for services performed by the Foreign Subsequent Transferees for such feeder funds outside the United States. *See* Amended Complaint at ¶¶ 82-85; Proffered Second Amended Complaint at ¶¶ 45, 66, 76.

---

[3] The facts (or lack thereof) listed in this paragraph are for illustrative purposes only to underscore the Trustee's failure to allege any domestic facts as to the Transfers. Nothing in this paragraph should be deemed as an admission that, even if the Trustee had alleged such facts in the Proffered Second Amended Complaint or other pleading, such facts would be sufficient to suggest a domestic transfer (which they would not). *See* Extraterritoriality Decision, 513 B.R. at 227-28; *see also* Section I.C below and Consolidated Reply Memorandum at 9-10, 18-33.

[4] The Proffered Second Amended Complaint alleges that Thema Management BVI had no employees of its own and was administered and operated by Equus and Genevalor (a former defendant who the Trustee has voluntarily dismissed from this action). Proffered Second Amended Complaint at ¶ 67. Even if taken as true, such allegations only reinforce the absence of any domestic transfer. Genevalor is an asset management firm located in Switzerland. Proffered Second Amended Complaint at ¶ 38. And, as noted above, Equus is a Bermuda company. *Id*. at ¶ 45. The Trustee has not alleged any facts as to either Genevalor or Equus that would remotely suggest that any of the Transfers were domestic.

In short, the Trustee has failed to meet his burden of pleading specific facts showing that the challenged Transfers were domestic. For that reason alone, dismissal of the claims to recover the Transfers with prejudice is warranted and leave to amend should be denied as futile.

### B. The Trustee Misconstrues *Parkcentral*

The Trustee's reliance on *Parkcentral Global Hub Ltd. v. Porsche Automobile Holdings SE*, 763 F.3d 198 (2d Cir. 2014) ("*Parkcentral*") in an attempt to salvage his claims against the Foreign Subsequent Transferees is misplaced for several reasons. First, contrary to the Trustee's argument, consideration of the amorphous "economic reality of the Transfers" (Trustee's Supplemental Memorandum at 5-6) was not the standard adopted by the Second Circuit in *Parkcentral* and has no bearing on this Court's analysis.[5] Rather, the only time the Second Circuit used the term "economic reality" is when it discussed the district court's application of *Morrison v. National Australia Bank Ltd.*, 561 U.S. 247 (2010), in the procedural history. *Parkcentral*, 763 F. 3d at 213.

Second, the Trustee contends that the Second Circuit "explains that the presence of some foreign elements in a transaction is not dispositive as to whether a particular application of a statute is extraterritorial." Trustee's Supplemental Memorandum at 6. That contention, however, turns *Parkcentral* on its head. In *Parkcentral*, the Second Circuit held that even where the relevant transaction has met the requirements of a domestic transaction, a case must be dismissed if the claims "are so predominantly foreign as to be impermissibly extraterritorial."

---

[5] Curiously, in his principal Opposition brief to the Extraterritoriality Motion, the Trustee does not cite to *Parkcentral* for the supposed "economic reality" standard that he advances in his Supplemental Memorandum against the Foreign Subsequent Transferees. One can only presume that his reliance on the vague notion of "economic reality" is an attempt to blur the clear test articulated by Judge Rakoff in the Extraterritoriality Decision given the complete absence of any facts connecting the Foreign Subsequent Transferees to a domestic Transfer.

- 5 -

763 F.3d at 216. In that case, the Second Circuit looked to the "foreignness of the facts constituting the defendant's alleged violation" to determine that the foreign transaction at issue there was not domestic. *Id*. at 215.[6]

Finally, even if this Court were to consider the "economic reality," the result would be the same. The Transfers are not domestic: they involve payments being transferred by certain foreign feeder funds to foreign service providers for services rendered by the Foreign Subsequent Transferees to those foreign feeder funds, all outside of the United States.

### C. The Alleged Relationship Of The Foreign Subsequent Transferees And The Transfers To BLMIS Is Irrelevant

In discussing whether section 550(a) applies extraterritorially to allow for the recovery of subsequent transfers, Judge Rakoff held that the "transaction being regulated by section 550(a)(2) is the transfer of property to a subsequent transferee, not the relationship of that property to a perhaps-distant debtor." Extraterritoriality Decision, 513 B.R. at 227. Significantly, Judge Rakoff specifically ruled (i) even if the defendants and the transfers bear some "mere connection to a U.S. debtor, be it tangential or remote, [that] is insufficient on its own to make every application of the Bankruptcy Code domestic;" and (ii) that "the chain of transfers originated with Madoff Securities in New York . . . is insufficient to make the recovery of [ ] otherwise thoroughly foreign subsequent transfers into a domestic application of section 550(a)." *Id*. at 227-28.

The Amended Complaint and the Proffered Second Amended Complaint ignore these clear holdings. Here, none of the facts alleged by the Trustee – even if taken as true – gives rise to any plausible inference that ***the Transfers*** at issue in this litigation occurred

---

[6] *See also* Consolidated Reply Memorandum at 15, fn. 9.

domestically. *See* Trustee's Supplemental Memorandum at 9-13. At most, such facts describe the general relationship between, among others, the feeder funds, BLMIS, and the Foreign Subsequent Transferees. But such allegations do not supplant the Trustee's burden to allege ***specific facts*** showing that ***the Transfers*** themselves were domestic.[7]

The Trustee's attempt to allege domestic "component events" of the Transfers fares no better. The purported "component events" include that BLMIS's management and custody of the feeder funds' assets were in New York; that BLMIS's implementation and execution of the split strike conversion strategy involved exclusively U.S. securities listed on U.S. exchanges; that BLMIS made the initial transfers to certain of the feeder funds (from which the Transfers were subsequently made); that investment with BLMIS in U.S. dollars necessitated a course of dealing with New York banks; that BLMIS-issued customer statements and trade confirmations from New York formed the basis for calculating certain feeder funds' net asset value and the payments to the Foreign Subsequent Transferees. *See* Trustee's Supplemental Memorandum at 13-14. However, these alleged facts about BLMIS's operations or transactions with parties ***other than*** the Foreign Subsequent Transferees do not constitute "component events" of the Transfers themselves and, therefore, fail to give rise to any inference that those Transfers were domestic.[8] For the same reasons, the allegations in Exhibit 2 to the Trustee's Memorandum are irrelevant. *See* Consolidated Reply Memorandum at 18-33.

---

[7] The Trustee's reliance on such facts conflates the analysis for extraterritoriality with personal jurisdiction. Indeed, the Trustee acknowledges in his memoranda that the cases he cites address the issue of personal jurisdiction, not extraterritoriality. *See, e.g.*, Trustee's Memorandum at 29, n. 117; Trustee's Supplemental Memorandum at 14. Regardless of whether these facts could support a finding of personal jurisdiction (which the Foreign Subsequent Transferees deny), the relevant analysis under the Extraterritoriality Decision is directed at the transfers themselves – not about the relationship of those transfers to "a perhaps-distant debtor." *See* Extraterritoriality Decision, 513 B.R. at 227-28.

[8] *See* Consolidated Reply Memorandum at 9-10, 18-33.

- 7 -

In sum, the only conclusion that can be drawn from the Trustee's allegations is that the Transfers were located outside of the United States and the component events of those Transfers were non-domestic. Accordingly, because the Trustee has failed to put forth specific facts suggesting a domestic transfer, his claims to recover the Transfers from the Foreign Subsequent Transferees should be dismissed with prejudice.

## II.  THIS COURT SHOULD DENY THE TRUSTEE'S MOTION FOR LEAVE TO AMEND.

As the Trustee acknowledges, leave to replead should be denied if the "amendment would be futile." Trustee's Memorandum at 17 (*citing Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60, 71 (2d Cir. 2012)). Here, amendment would be futile. As discussed in Section I above, the Trustee has failed to show how any of the proposed allegations against the Foreign Subsequent Transferees in the Proffered Second Amended Complaint suggest that the Transfers were domestic. As a result, leave to amend should be denied.

## CONCLUSION

For the foregoing reasons, and those set forth in the Consolidated Reply Memorandum, the Foreign Subsequent Transferees respectfully request that the Court grant the Extraterritoriality Motion, dismiss the claims to recover the Transfers with prejudice, and deny the Trustee's motion for leave to amend the Amended Complaint.

Dated:  New York, New York  WILLKIE FARR & GALLAGHER LLP
September 30, 2015

By:    /s/ Sameer Advani
Robin Spigel
Sameer Advani
Stuart R. Lombardi

787 Seventh Avenue
New York, New York 10019
Telephone:  (212) 728-8000
Facsimile:  (212) 728-8111
rspigel@willkie.com
sadvani@willkie.com
slombardi@willkie.com

*Equus Asset Management Ltd., Hermes Asset Management Limited, Thema Asset Management Limited, and Thema Asset Management (Bermuda) Ltd.*

15110182

# CERTIFICATE OF SERVICE

I, Sameer Advani, hereby certify that I caused a true and correct copy of the foregoing document to be served upon the parties in this action who receive electronic service through CM/ECF and by electronic mail upon counsel to Irving H. Picard, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC. I certify under penalty of perjury that the foregoing is true and correct.

Date:  New York, New York
      September 30, 2015                           /s/ Sameer Advani
                                                               Sameer Advani