SHEARMAN & STERLING LLP
599 Lexington Avenue
New York, New York 10022

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>　　　　　Defendant. | Adv. Pro. No. 08-01789 (SMB)<br><br>SIPA Liquidation<br>(Substantively Consolidated) |
| In re<br><br>BERNARD L. MADOFF,<br><br>　　　　　Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC and the estate of Bernard L. Madoff,<br><br>　　　　　Plaintiff<br><br>　　v.<br><br>NOMURA INTERNATIONAL PLC,<br><br>　　　　　Defendant. | Adv. Pro. No. 11-02759 (SMB) |

**NOMURA INTERNATIONAL PLC'S SUPPLEMENTAL REPLY MEMORANDUM OF
LAW IN FURTHER SUPPORT OF ITS MOTION TO DISMISS BASED ON
EXTRATERRITORIALITY AND IN OPPOSITION TO THE TRUSTEE'S
<u>MOTION FOR LEAVE TO AMEND HIS COMPLAINT</u>**

Defendant Nomura International Plc ("Nomura") respectfully submits this supplemental reply memorandum of law in further support of its motion to dismiss based on extraterritoriality. Nomura adopts and incorporates in full the arguments set forth in the Consolidated Supplemental Reply,[1] in particular the arguments relating to the six checked boxes for Nomura in the so-called "United States Connections Summary Chart" (the "Chart") attached as Exhibit 2 to the Trustee's Main Memorandum.[2] For the reasons shown in the Consolidated Supplemental Reply and below, the Trustee's Complaint against Nomura filed on October 6, 2011 (the "Complaint") must be dismissed, and the Trustee's motion for leave to amend must be denied as futile, because (i) the Trustee fails, either in his Complaint or Proffer,[3] to satisfy his obligation to plead facts giving rise to a plausible inference that any alleged subsequent transfers from Harley International (Cayman) Ltd. ("Harley") to Nomura occurred domestically, and (ii) principles of international comity independently foreclose the Trustee's claims.

## ARGUMENT

### I. THE COMPLAINT MUST BE DISMISSED UNDER THE EXTRATERRITORIALITY DECISION

On July 6, 2014, Judge Rakoff ruled that "it is the Trustee's obligation to allege 'facts giving rise to the plausible inference that' the transfer occurred 'within the United States'" and that, "to the extent that the Trustee's complaints allege that both the transferor and the transferee reside outside of the United States, there is no plausible inference that the transfer occurred

---

[1] "Consolidated Supplemental Reply" refers to the Consolidated Supplemental Reply Memorandum of Law in Further Support of the Transferee Defendants' Motion to Dismiss Based on Extraterritoriality and in Opposition to the Trustee's Motion for Leave to Amend His Complaints filed on September 30, 2015.

[2] "Trustee's Main Memorandum" refers to the Trustee's Memorandum of Law in Opposition to the Transferee Defendants' Motion to Dismiss Based on Extraterritoriality and in Further Support of Trustee's Motion for Leave to Amend Complaints filed in the consolidated docket on June 26, 2015. (Adv. Pro. No. 08-01789, ECF No. 10287.)

[3] "Proffer" refers to the Trustee's Proffered Allegations Pertaining to the Extraterritoriality Issue As to Nomura International Plc filed on June 26, 2015. (Adv. Pro. No. 11-02759, ECF No. 59.)

1

domestically." *SIPC v. Bernard L. Madoff Inv. Sec. LLC*, 513 B.R. 222, 232, n.4 (S.D.N.Y. 2014) (the "Extraterritoriality Decision").

That ruling requires dismissal of the Trustee's Complaint against Nomura. The Trustee seeks to recover subsequent transfers that Nomura allegedly received in 2003 and 2008 from Harley. (Complaint, Ex. D.) The Complaint alleges that Harley—the transferor—is "organized under the laws of the Cayman Islands." (*Id.* ¶ 2.) With respect to Nomura—the transferee—the Trustee alleges that Nomura "a public limited company located [in] . . . the United Kingdom" and "[h]eadquartered in London." (*Id.* ¶ 21, 3.) The salient allegations in the Complaint are substantively indistinguishable from those that were considered by Judge Rakoff when he ruled that "the subsequent transfers that the Trustee seeks to recover here are foreign transfers" and that "the presumption against extraterritorial application of federal statutes has not been rebutted here." Extraterritoriality Decision at 228, 231. The Trustee's Supplemental Memorandum[4] does not even attempt to argue that the Complaint, unamended, can survive. The Complaint should therefore be dismissed.

## II. THE TRUSTEE'S MOTION FOR LEAVE TO AMEND SHOULD BE DENIED ON THE GROUND OF FUTILITY

The Trustee should not be permitted to amend because the proposed amendments, as set forth in the Proffer, would be futile. The Trustee has made the same or similar allegations in all or nearly all of the 88 proceedings currently before the Court and assigned each allegation to one or more of 19 categories presented in the Trustee's Chart.[5] As explained in the Consolidated

---

[4] The "Trustee's Supplemental Memorandum" refers to the Trustee's Supplemental Memorandum of Law in Opposition to Nomura's Motion to Dismiss Based on Extraterritoriality and in Further Support of Trustee's Motion for Leave to Amend the Complaint filed on October 6, 2011. (Adv. Pro. No. 11-02759, ECF No. 58.)

[5] The Trustee asserts that he has made allegations against Nomura falling within categories that are numbered 1, 3, 5-7, and 12 in his Chart. (Chart at p. 7 (Adv. Pro No. 11-02759).)

2

Supplemental Reply, none of these allegations, singly or in combination, can save the Trustee's Complaint from dismissal under the Extraterritoriality Decision and other applicable law.

The Proffer cites a litany of extraneous factors of no relevance to the inquiry. Specifically, the Proffer alleges that: (i) Harley had operations in the United States (Proffer ¶¶ 67-73; Chart Item No. 1); (ii) Nomura's subscription agreements with Harley contained a New York arbitration provision (Proffer ¶¶ 22-23; Chart Item No. 3); (iii) Nomura knew—from Harley memoranda and its own due diligence—that its funds would be largely managed by BLMIS in New York and used to purchase U.S. securities (Proffer ¶¶ 14-20; Chart Item Nos. 5-7); and (iv) Nomura utilized a New York correspondent bank account in connection with the transfers (Proffer ¶¶ 26-27; Chart Item No. 12). Virtually all of these proffered allegations are unrelated to the transfers at issue.[6] And, as explained in the Consolidated Supplemental Reply, none undermine the conclusion that "the subsequent transfers that the Trustee seeks to recover here are foreign transfers." Extraterritoriality Decision at 228.[7]

Moreover, even if the type of U.S. activity that the Trustee cites in his Proffer could be legally relevant (which the Consolidated Supplemental Reply establishes is not the case), the proffered allegations do not support the conclusion that there was an appreciable level of such activity. As a threshold matter, it is notable that the Trustee only identifies six types of purported "U.S. connection" allegations in this case (Chart at p. 7); in other words, of the 19 total possible

---

[6] The only exception is the allegation that Nomura used a New York bank account in connection with the transfers, which Judge Rakoff already squarely ruled is "[in]sufficient to make these foreign transfers domestic." Extraterritoriality Decision at 228, n.1 (quoting, in support of this ruling, case law that had "dismiss[ed] a RICO claim as impermissibly extraterritorial where '[t]he scheme's contacts with the United States, however, were limited to the movement of funds into and out of U.S.-based bank accounts'") (citation omitted).

[7] Indeed, several allegations in the Proffer underscore the foreign nature of the transfers. (*See, e.g.*, Proffer ¶ 7 ("Nomura is a commercial bank incorporated under the laws of the United Kingdom."); *id*. ¶ 11 ("Harley was at all times relevant a Cayman-registered" fund).)

3

categories of purported "U.S. connection" allegations that the Trustee has claimed are relevant and has asserted against other defendants, a full 13 *do not apply in this case*.

Moreover, the paucity of allegations in the Proffer relating to Nomura's investment with Harley is striking. To fill this void, the Trustee repeatedly recycles allegations about purported U.S. "connections" associated with *other* funds and presumes to impute them to Nomura's investment in Harley. For example, the Trustee nowhere alleges facts concerning Nomura's due diligence on Harley, much less that such activity occurred in the U.S. Instead, the Trustee devotes two pages to detailing Nomura's alleged "due diligence inquiries . . . focused on the *Fairfield Funds* and BLMIS in New York" (Proffer ¶¶ 29-33 (emphasis added)), and then asserts in conclusory fashion that those allegations are "equally applicable to Nomura's investments in Harley" "[b]ecause Nomura understood that BLMIS in New York served as Harley's custodian as well" (*id*. ¶ 34). Similarly, the Trustee alleges that in 2007 Nomura discussed its risk assessments with "*FGG* employees in New York," and that its U.S. employees "declined an offer to receive information . . . about *another Feeder Fund*." (*Id*. ¶¶ 36-37 (emphasis added).)[8] In short, the Trustee's proffer is filled with allegations about Nomura investments other than the Harley investment at issue in this case, which do not support the conclusion that there was an appreciable level of U.S. activity in connection with the Harley transfers.

### III. THE TRUSTEE'S COMPLAINT SHOULD ALSO BE DISMISSED, AND HIS MOTION TO AMEND DENIED AS FUTILE, UNDER COMITY PRINCIPLES

Even if the Trustee had met his burden of alleging that the transfers at issue were domestic (which he has not), his Complaint against Nomura and his motion to amend cannot survive in light of Judge Rakoff's separate ruling on comity. Judge Rakoff found that

---

[8] In the same vein, the Trustee describes choice-of-law provisions in contracts *that have no connection to Harley*. (*See* Proffer ¶ 24 (asserting that Nomura entered a non-disclosure agreement with *FGG* "in connection with its . . . investments in the *Fairfield Funds*") (emphasis added); *id*. ¶ 25 (alleging Nomura entered into a "similar confidentiality agreement in connection with . . . another BLMIS Feeder Fund," Tremont Group Holdings, Inc.).)

4

international comity was an additional basis for dismissal that is wholly independent of the deficiencies addressed above. Extraterritoriality Decision at 231 ("[T]he Court further concludes, in the alternative, that *even if the presumption against extraterritoriality were rebutted*, the Trustee's use of section 550(a) to reach these foreign transfers would be precluded by concerns of international comity.") (emphasis added).

Judge Rakoff specifically cited Harley's foreign liquidation proceedings in particular as giving rise to comity concerns that require dismissal of the Trustee's claims:

> As is the case with Fairfield Sentry and Harley, many of the feeder funds are currently involved in their own liquidation proceedings in their home countries. These foreign jurisdictions have their own rules concerning on what bases the recipient of a transfer from a debtor should be required to disgorge it. Indeed, the BVI courts have already determined that Fairfield Sentry could not reclaim transfers made to its customers under certain common-law theories—a determination in conflict with what the Trustee seeks to accomplish here.

Extraterritoriality Decision at 232 (internal citation omitted). Judge Rakoff's rationale for a comity dismissal thus applies with special force in this case, given that the Trustee's claims against Nomura involve Harley transfers. (Complaint ¶ 2; Proffer ¶ 2.)[9]

## CONCLUSION

For the foregoing reasons, Nomura respectfully requests that the Court dismiss the Trustee's Complaint against Nomura with prejudice and without leave to amend.

Dated: September 30, 2015
      New York, New York

                                            Respectfully submitted,

                                            SHEARMAN & STERLING LLP

---

[9] The Trustee's Supplemental Memorandum relating to Nomura does not address comity. The arguments on comity in the Trustee's Main Memorandum are flawed for the reasons explained in the Consolidated Supplemental Reply, including because they reflect an impermissible challenge to Judge Rakoff's analysis and conclusions.

5

By: */s/ Brian H. Polovoy*
599 Lexington Avenue
New York, New York 10022
bpolovoy@shearman.com
(212) 848-4703

*Counsel for Defendant Nomura International Plc*