CLEARY GOTTLIEB STEEN & HAMILTON LLP
Carmine D. Boccuzzi, Jr.
Samuel L. Raymond
One Liberty Plaza
New York, New York 10006
Telephone: 212-225-2000
Facsimile: 212-225-3999
*Attorneys for Citi Hedge Fund Services Ltd.*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>Plaintiff,<br><br>-against-<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>Defendant. | Adv. Pro. No. 08-01789 (SMB)<br><br>SIPA Liquidation<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>Plaintiff,<br><br>-against-<br><br>FEDERICO CERETTI, CARLO GROSSO, KINGATE GLOBAL FUND, LTD., KINGATE EURO FUND, LTD., KINGATE MANAGEMENT LIMITED, FIM ADVISERS LLP, FIM LIMITED, CITI HEDGE FUND SERVICES LIMITED, et al.,<br><br>Defendants. | Adv. Pro. No. 09-1161 (SMB)<br><br>**SUPPLEMENTAL REPLY MEMORANDUM OF LAW IN SUPPORT OF CITI HEDGE FUND SERVICES LIMITED'S MOTION TO DISMISS BASED ON EXTRATERRITORIALITY** |

Citi Hedge Fund Services Limited ("Citi Hedge") submits this supplemental reply brief in support of its motion to dismiss the Trustee's Fourth Amended Complaint ("Amended Complaint" or "AC").[1] The principles set forth in *SIPC v. BLMIS*, 513 B.R. 222 (S.D.N.Y. 2014), require the dismissal of the Trustee's sole claim against Citi Hedge (AC, Count 9). Section 550(a)(2) of the Bankruptcy Code does not apply to the secondary transfers from the BVI entities Kingate Global Fund, Ltd. and Kingate Euro Fund, Ltd. to the Bermudan company Citi Hedge, because those transfers were foreign. The Trustee did not request leave to amend, which would be futile in any event, and so dismissal should be with prejudice.

## ARGUMENT

Where, as here, "the relevant transfers and transferees are predominantly foreign," in that they involve "foreign feeder funds transferring assets abroad to . . . other foreign transferees," the transfers are beyond the reach of Bankruptcy Code Section 550. *SIPC v. BLMIS* ("*Extraterritoriality Decision*"), 513 B.R. at 227. Kingate Global Fund, Ltd. and Kingate Euro Fund, Ltd. (the "Kingate Funds") were incorporated in BVI and managed from Bermuda. AC ¶¶ 38, 40 (Kingate Global Fund, Ltd. and Kingate Euro Fund Ltd. registered in BVI), 44–46 (Kingate Management Limited, manager of the Kingate Funds, organized in Bermuda). Citi Hedge is incorporated and has its registered address in Bermuda. *Id.* ¶ 72. As the transfers from the Kingate Funds to Citi Hedge were "predominantly foreign" and the Trustee fails to meet his "obligation to allege facts giving rise to the plausible inference that the [otherwise thoroughly foreign] transfer[s] occurred within the United States," these transfers must be held to be outside his clawback powers. *Extraterritoriality Decision*, 513 B.R. at 232 & n.4 (citation omitted).

---

[1] This reply supplements the Reply Consolidated Memorandum of Law in Support of Transferee Defendants' Motion to Dismiss Based on Extraterritoriality ("Consolidated Reply"), also being filed today. Citi Hedge joins and incorporates by reference the Consolidated Reply.

The Trustee offers no new "proffered allegations" as to Citi Hedge (unlike for many of the other defendants subject to the *Extraterritoriality Decision*).[2] Instead, the Trustee argues that these purely offshore secondary transfers were in fact "domestic" because all of the defendants in this action should be considered part of an integrated "Kingate Enterprise," "dedicated to making money from" the NY-based Bernard L. Madoff Investment Securities ("BLMIS"). Tr.'s Supp. Mem. 6, 12. This argument is flawed as a matter of law, and fact.

*First*, as a legal matter, the Trustee offers no authority that his characterization of the defendants here as an "enterprise" would serve to render "domestic" the otherwise "purely foreign" transfers between the Kingate Funds and Citi Hedge. *See Extraterritoriality Decision*, 513 B.R. at 231. Even if the enterprise concept were legally relevant, as an argument in a brief (as opposed to non-conclusory allegations in a complaint) it is insufficient to defeat the motion to dismiss. *See, e.g.*, *Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998) ("a party is not entitled to amend its complaint through statements made in motion papers").

*Second*, the citations by the Trustee to the Amended Complaint do not help him—the purported allegations either have nothing to say as to whether defendants, including Citi Hedge, constitute an enterprise, or are otherwise simply "labels and conclusions" insufficient under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Tr.'s Supp. Mem. 6 n.33 (citing to AC ¶¶ 2–7, 42, 96); *see* AC ¶¶ 42, 96 (allegations concerning Federico Ceretti and Carlo Grosso, including the sole reference to an "enterprise"); AC ¶¶ 2–7 (conclusory allegations that defendants "operated in unison to collectively profit from Madoff's Ponzi scheme"). The Amended Complaint fails to support the Trustee's argument that the "operational, administrative,

---

[2] Tr.'s Supplemental Mem. of Law in Opp. to Certain Defs.' Mot. To Dismiss Based on Extraterritoriality and in Further Supp. of Tr.'s Mot. for Leave to Amend Complaints ("Tr.'s Supp. Mem.") 2 n.13. The title of the Trustee's filing is mistaken, because the Trustee does not seek leave to amend the Amended Complaint. Accordingly, the Court should treat the Trustee as simply opposing the motions to dismiss based on extraterritoriality filed by Citi Hedge and the Kingate defendants.

2

marketing, and due diligence services" of the purported "enterprise" were performed in New York, Tr.'s Supp. Mem. 18, and his argument that no defendant "acted independently from Ceretti and Grosso," *id.* at 17, further undercuts his position that the purported "enterprise" (again, a concept irrelevant to the situs of the challenged transfers) was domestic given that Ceretti and Grosso are both Italian nationals residing in the UK. AC ¶¶ 32–33.

*Third*, Trustee is wrong in arguing that he should be able to clawback the transfers because they "were wholly dependent upon Madoff's Ponzi scheme," Tr.'s Supp. Mem. 18, and "but for the Transfers that money would have been part of BLMIS's customer property estate." *Id.* 17. The *Extraterritoriality Decision* concerned transfers "wholly dependent upon Madoff's Ponzi scheme," meaning that acceptance of this argument would fly in the face of Judge Rakoff's reasoning. The clearly foreign nature of subsequent transfers from foreign entities (the Kingate Funds) to another foreign entity (Citi Hedge) is simply not undercut by a previous domestic transfer. 513 B.R. at 228 ("Although the chain of transfers originated with Madoff Securities in New York, that fact is insufficient to make the recovery of these otherwise thoroughly foreign subsequent transfers into a domestic application of section 550(a).").

The Trustee otherwise seeks to avoid the effect of the *Extraterritoriality Decision* by arguing that Citi Hedge is indirectly owned by, or affiliated with, U.S. entities. Tr.'s Supp. Mem. 15 n.104. The mere existence of U.S. affiliates cannot render "domestic" offshore transfers. *See Norex Petroleum Ltd. v. Access Indus., Inc.*, 631 F.3d 29, 33 (2d Cir. 2010) ("slim contacts" insufficient to "support a claim of domestic application" of federal law). And while the Trustee lists Factor 11 (concerning the involvement of agents in the transfers) on his chart of

3

U.S. connections (Ex. 2) as relevant to Citi Hedge, he does not plead in the Amended Complaint that any U.S. agent was linked to the challenged transfers.[3]

Nor are the laundry list of factors on the Trustee's chart (Ex. 2) individually or collectively sufficient to plead that the transfers to Citi Hedge were domestic. *See* Consolidated Reply 20–33 (describing the irrelevance of the Trustee's factors). Factors 4–7 and 14, regarding Citi Hedge's alleged knowledge into BLMIS' role, are based solely on the relationship of the transfers to the "perhaps-distant debtor" BLMIS, rather than the subsequent transfers which are the focus of Section 550(a)(2). *Extraterritoriality Decision*, 513 B.R. at 227; *see also* Consolidated Reply 25–26, 30. Additionally, the Amended Complaint includes no allegations that Citi Hedge knew the fees it received from the Kingate Funds originated with BLMIS (even assuming that the fees did so originate). Factors 8–9, regarding Citi Hedge's due diligence, improperly focus on the "place where [BLMIS'] deception originated," *Morrison v. Nat'l Australia Bank*, 561 U.S. 247, 266 (2010), rather than the place where the *transfers* occurred. *See* Consolidated Reply 26–27. Finally, Factor 16, regarding Citi Hedge's relationship with the Kingate Funds, hardly helps the Trustee since those entities were indisputably offshore. *See* Consolidated Reply 31.

As a seeming aside, the Trustee states that Citi Hedge should have expected U.S. law to apply, because the customer relationship between the Kingate Funds and BLMIS were governed by U.S. law. Tr.'s Supp. Mem. 18. This relationship between the Kingate Funds and BLMIS is irrelevant to the place where the transfers from the Kingate Funds to Citi Hedge occurred. The

---

[3] Further, the Trustee cites the role of Citi Hedge's affiliates in his allegations about personal jurisdiction. Tr.'s Supp. Mem. 15 n.104 (citing AC ¶ 91, which appears under heading V.H, "This Court Has Personal Jurisdiction Over All Defendants"). But the personal jurisdiction analysis is distinct from the extraterritoriality analysis, *see* Consolidated Reply 29, and Citi Hedge expressly reserves its defenses for remaining issues, including that of personal jurisdiction. Order Concerning Further Proceedings on Extraterritoriality Mot. 10–11, Adv. Pro. No. 09-1161, Dkt. No. 156 (Bankr. S.D.N.Y. Dec. 18, 2014).

4

Trustee also argues, implausibly, that Section 550 should apply because in the District Court in another proceeding, Citi Hedge moved (in 2010, years after any of the alleged transfers) to dismiss certain class action complaints under federal and New York law. Tr.'s Supp. Mem. 19–20. The Trustee offers no authority to support a link between the situs of the alleged transfers and legal arguments made in a subsequent case. In any event, *plaintiffs* sought to bring federal securities law claims against Citi Hedge and the other defendants, and then dropped them "in light of *Morrison*." *In re Kingate Mgmt. Ltd. Litig.*, No. 09-CV-5386 (DAB) (S.D.N.Y.), Dkt. No. 145 (Order noting voluntary dismissal of federal claims). Moreover, Citi Hedge sought to dismiss plaintiffs' claims based on BVI law (while demonstrating that the claims also failed under New York law, which plaintiffs invoked). *See, e.g.*, *id.*, Dkt. No. 97, at 14.

Finally, the Court's dismissal should be with prejudice, because the Trustee offers no proposed amendments to his Amended Complaint, and as described above, any possible amendments would be futile. *Balintulo v. Ford Motor Co.*, 796 F.3d 160, 164–65 (2d Cir. 2015).

## CONCLUSION

The Trustee has failed to plead that the transfers to Citi Hedge occurred within the United States, and the Court should dismiss his claim with prejudice.

Dated: New York, New York
September 30, 2015

    CLEARY GOTTLIEB STEEN & HAMILTON LLP

    By: /s/ Carmine D. Boccuzzi, Jr.
        Carmine D. Boccuzzi, Jr.
        Samuel L. Raymond
    One Liberty Plaza
    New York, New York 10006
    (212) 225-2000
    (212) 225-3999 (facsimile)
    cboccuzzi@cgsh.com
    *Attorneys for Citi Hedge Fund Services Ltd.*