**Cleary Gottlieb Steen & Hamilton LLP**
One Liberty Plaza
New York, NY 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999


**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | No. 08-01789 (SMB) |
| Plaintiff-Applicant, | SIPA LIQUIDATION (Substantively Consolidated) |
| v. | |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | Applicable to Adv. Pro. Nos. 09-01161 (SMB), 09-01364 (SMB), 11-02784 (SMB) & 12-01005 (SMB) |
| Debtor. | |

**THE HSBC DEFENDANTS' SEPARATE MEMORANDUM**
**OF LAW ADDRESSING THE CLAIMS IN THE KINGATE, OMNIBUS, SOMERS, AND**
**SICO ACTIONS AND IN FURTHER SUPPORT OF TRANSFEREE DEFENDANTS'**
**MOTION TO DISMISS BASED ON EXTRATERRITORIALITY**

<u>**TABLE OF CONTENTS**</u>

**Page**

PRELIMINARY STATEMENT ........................................................................................ 2

ARGUMENT ................................................................................................................. 4

    I.    The Trustee Has Failed To Plausibly Allege That The Transfers To The HSBC Defendants He Seeks To Avoid Are Domestic .......................................... 4

        A.    The Trustee's Proposed Approach To Identifying Avoidable Domestic Transfers Is Contrary To Judge Rakoff's Ruling ..................... 4

        B.    The Trustee's Factual Allegations In Each Of The Actions Against The HSBC Defendants Fail To Plead Domestic Transfers........................ 7

    II.    The Claims Against The HSBC Defendants Should Also Be Dismissed As A Matter Of Comity ............................................................................................ 19

CONCLUSION ............................................................................................................ 20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**<u>Cases</u>**

*Maxwell Comm'n Corp. v. Societe Gen. PLC (In re Maxwell Commc'n Corp.)*,
186 B.R. 807 (S.D.N.Y. 1995)..........................................................................................3

*Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
513 B.R. 222 (Bankr. S.D.N.Y. 2014) ................................................................. *passim*

*Sherwood Invs. Overseas Ltd., Inc. v. The Royal Bank of Scotland N.V.*
*(In re Sherwood Invs. Overseas Ltd., Inc.)*, Case No. 6:10-bk-00584-KSJ,
2015 WL 4486470 (Bankr. M.D. Fla. July 22, 2015).....................................................3

*Silverman v. K.E.R.U. Realty Corp. (In re Allou Distribs., Inc.)*,
379 B.R. 5 (Bankr. E.D.N.Y 2007).................................................................................8

*Wright v. Ernst & Young LLP*, 152 F.3d 169 (2d Cir. 1998).........................................10

Defendants HSBC Bank Bermuda Limited ("HSBC Bermuda"), HSBC Securities Services (Ireland) Limited ("HSSI"), HSBC Institutional Trust Services (Ireland) Limited ("HITSI"), HSBC Securities Services (Luxembourg) S.A. ("HSSL"), HSBC Institutional Trust Services (Bermuda) Limited ("HITSB"), HSBC Securities Services (Bermuda) Limited ("HSSB"), and HSBC Fund Services (Luxembourg) S.A. ("HSBC Fund Services") (together, the "HSBC Service Providers"), and defendants HSBC Bank plc, HSBC Private Bank (Suisse) S.A. ("HSBC Suisse"), Somers Dublin Limited ("Somers Dublin") and Somers Nominees (Far East) Limited ("Somers Nominees" and, together with Somers Dublin, the "Somers Defendants"), and SICO Limited ("SICO") (together, the "HSBC Investors" and, collectively with the HSBC Service Providers, the "HSBC Defendants") submit this memorandum of law to augment the arguments in the Reply Consolidated Supplemental Memorandum of Law in Support of Transferee Defendants' Motion to Dismiss Based on Extraterritoriality, Adv. No. 08-1789 (SMB) (Sept. 30, 2015) (ECF No. 11542) (the "Consolidated Reply").[1]  This memorandum specifically focuses on the claims against the HSBC Defendants in the complaints filed by Irving H. Picard, the trustee (the "Trustee") appointed for the liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") and the estate of Bernard L. Madoff, in Adv. Pro. No. 09-1161 (SMB) (the "Kingate Action"), Adv. Pro No. 09-1364 (SMB) (the "Omnibus Action"), Adv. Pro. No. 11-02784 (SMB) (the "Somers Action"), and Adv. Pro. No. 12-01005 (SMB) (the "SICO Action").[2]

---

[1] The HSBC Defendants incorporate by reference the arguments made in the Consolidated Reply and those made in the separate briefs filed by the other Transferee Defendants in these and related adversary proceedings.  While the Court's procedural order of December 18, 2014 allows for each HSBC Defendant to submit its own five-page individual brief, which would result in 11 briefs and up to a total of 55 pages of briefing, for economy of presentation, the HSBC Defendants collectively submit this single individual brief, which they have filed in each relevant action.

[2] Capitalized terms used but not defined herein shall have the meanings set forth in the operative complaint in each adversary proceeding or in the Consolidated Reply.

## PRELIMINARY STATEMENT

The Trustee's claims against the HSBC Defendants as subsequent transferees under

§ 550(a) of the Bankruptcy Code fall into two categories.  First, the Trustee seeks the return of

fees paid by foreign feeder funds to foreign HSBC Service Providers for delivering legitimate

custodial and administrative services to these foreign funds for years.  Second, the Trustee seeks

the return of redemption payments made by foreign feeder funds to the foreign HSBC Investors

who invested in those foreign funds, either on behalf of clients or to hedge structured products.

In both cases, because both the transferor and transferee for each transfer are foreign entities,

"there is no plausible inference that the transfer occurred domestically."  *Sec. Investor Prot.*

*Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 513 B.R. 222, 232 n.4 (Bankr. S.D.N.Y. 2014)

(hereinafter, *Extraterritoriality Decision*).

The Court should not permit the Trustee's voluminous and largely irrelevant submissions

to obscure what is a relatively simple and straightforward inquiry.  The only question for the

Court to decide is whether, based on the pleadings and information of which the Court can take

judicial notice, the Trustee can plausibly show that the transfers he seeks to avoid are potentially

avoidable domestic transfers.   As Judge Rakoff held, "to the extent that the Trustee's complaints

allege that both the transferor and the transferee reside outside the United States" – as is the case

with all of the transfers to HSBC Defendants at issue here – "there is no plausible inference that

the transfer occurred domestically.  Therefore, unless the Trustee can put forth specific facts

suggesting a domestic transfer, his recovery actions seeking foreign transfers should be

dismissed."  *Id.*

Except with respect to one action (in which his allegations are as insufficient as in all the

others), the Trustee does not argue that the operative complaints in any of the actions against the

HSBC Defendants allege domestic transfers, implicitly acknowledging that the claims in these complaints fail under Judge Rakoff's Extraterritoriality Decision.[3]  The Trustee instead seeks leave to amend his deficient pleadings to overcome the presumption that all transfers to the HSBC Defendants were foreign transfers, based on his newly proffered allegations of purportedly "domestic elements" to the transactions.  Because the Trustee's proposed amendments continue to fail to "put forth specific facts suggesting a domestic transfer," *id.*, the Trustee's motions to amend are futile and all of his claims against the HSBC Defendants should be dismissed.

Judge Rakoff provided a clear roadmap for the relevant inquiry:  the Court must focus on "the location of the transfers as well as the component events of those transactions."  *Id.* at 227 (quoting *Maxwell Comm'n Corp. v. Societe Gen. PLC (In re Maxwell Commc'n Corp.)*, 186 B.R. 807, 817 (S.D.N.Y. 1995)) (internal quotation marks omitted).  Critically, "those transactions" means the transfers themselves, *see* Consolidated Reply at 17, and the test Judge Rakoff established specifically requires the Court to focus on whether the transferor and transferee were foreign entities and whether the transfer took place abroad.  *Extraterritoriality Decision*, 513 B.R. at 227.  Despite the Trustee's attempt to reframe the Court's inquiry,[4] it is irrelevant whether the transferred funds originated from a United States source[5] or were once "customer

---

[3] In the Kingate Action, the Trustee has not sought to amend the operative complaint.  As discussed further below, the allegations in that complaint also fail to raise a plausible inference of any domestic transfers to HSBC Defendants.  *See also* Consolidated Reply at 3 n.4.

[4] *See* Trustee's Mem. of Law in Opp'n to the Transferee Defs.' Mot. to Dismiss Based on Extraterritoriality and in Further Support of Trustee's Mot. for Leave to Amend Compls., Adv. No. 08-1789 (SMB) (June 26, 2015) (ECF No. 10287) ("Trust. Main Br.") at 29-31.

[5] *Extraterritoriality Decision*, 513 B.R. at 228 ("Although the chain of transfers originated with Madoff Securities in New York, that fact is insufficient to make the recovery of these otherwise thoroughly foreign subsequent transfers into a domestic application of section 550(a)."); *accord In re Sherwood Inv. Overseas Ltd., Inc.*, Case No. 6:10-bk-00584-KSJ, 2015 WL 4486470, at *20 (Bankr. M.D. Fla. July 22, 2015) (explaining that the defendant's "initiation of the Transfers from the United States does not defeat the presumption's application when the actual Transfers occurred abroad").

3

property" of BLMIS.[6]  The Trustee has failed to allege any specific facts sufficient to raise a

plausible inference that the transfers to the HSBC Defendants were domestic, and in fact has pled

facts that confirm that these transfers were foreign.  Accordingly, the Trustee's motions to amend

should be denied and his claims against the HSBC Defendants in each of the relevant actions

should be dismissed.[7]

## ARGUMENT

I. **The Trustee Has Failed To Plausibly Allege That The Transfers To The HSBC Defendants He Seeks To Avoid Are Domestic**

A. **The Trustee's Proposed Approach To Identifying Avoidable Domestic Transfers Is Contrary To Judge Rakoff's Ruling**

Instead of attempting to satisfy the test for domestic transfers that Judge Rakoff set out

for him in the Extraterritoriality Decision, the Trustee ignores that ruling and attempts to redefine

his pleading requirement as "plausibly alleging [that] a transfer has domestic *elements*."  Trust.

Main Br. at 7 (emphasis added).  This is not the governing test.  Judge Rakoff's decision

expressly found that the mere existence of some "domestic elements" tangentially related to the

transfer at issue cannot render that transfer domestic.  *See, e.g.*, *Extraterritoriality Decision*, 513

B.R. at 228 (holding that the following factual allegations are insufficient to plead a domestic

transfer:  (i) the chain of transfers originated with BLMIS in New York, (ii) defendants used

correspondent bank accounts to process the transfers, (iii) the transfers derived from the sale of

U.S. assets, and (iv) a significant portion of the fraudulent conduct occurred in the United

States).

Nevertheless, in pursuit of a contrived and irrelevant objective, the Trustee has identified

19 potential "connections" to the United States that he claims can transform these foreign

---

[6] *Extraterritoriality Decision*, 513 B.R at 230 (explaining that SIPA's customer property provisions do not overcome the presumption against extraterritoriality).

[7] The HSBC Defendants reserve all other defenses to the claims asserted herein.

transfers between foreign parties based on their foreign transactions into domestic transfers. Trust. Main Br. at 1 n.1, Ex. 2-B.  The Trustee is mistaken in his approach, and improperly focuses on the initial transfers rather than the transfers he is seeking to avoid.  *See Extraterritoriality Decision*, 513 B.R. at 227 (explaining that § 550(a) regulates only "the transfer of property to a subsequent transferee, not the relationship of that property to a perhaps-distant debtor").  Moreover, most of his purported "connections" have already been expressly rejected by Judge Rakoff in the Extraterritoriality Decision, such as that the money that funded the transfers initially originated from a U.S. source or that the foreign feeder funds sought to participate in BLMIS's investment activities.  *See id.* at  227-28.[8]

Without conceding the relevance of any of these "connections," it is also worth noting that based on the Trustee's "score card", Trust. Main Br. at Ex. 2-A, the transfers to the HSBC Defendants are not alleged to have been made by BLMIS directly (or by any other U.S. entity); the HSBC Defendants are not alleged to be U.S. citizens; the HSBC Defendants are not alleged to have filed any Proofs of Claim in the United States; and the HSBC Defendants are not alleged to have maintained a U.S. office utilized in connection with the transactions at issue.  The other "connections" on which the Trustee seeks to rely are even more plainly irrelevant and unavailing for the reasons set forth in the Consolidated Reply, which we incorporate by reference and will not repeat here.[9]

Although irrelevant, it is also not true that the Trustee's pleadings in his actions against the HSBC Defendants include several of the "connections" that he now claims apply to the

---

[8] *See, e.g.*, "Connections" 4 (use of a New York investment advisor), 5 (knowledge that assets were custodied in the U.S.), 6 (knowledge that assets were managed, custodied, and invested by BLMIS), and 7 (knowledge that assets were invested in U.S. securities).  Trust. Main Br. at Ex. 2-A, 2-B.

[9] The Trustee's party-specific choice of law allegations are also irrelevant both to Judge Rakoff's statutory holding and to his alternative comity holding, including because individual parties cannot choose their own insolvency regimes.  The Consolidated Reply includes a correct analysis of the relevant choice of law and comity issues, the latter of which is also briefly discussed *infra* at Part II.

HSBC Defendants. *Id.* at Ex. 2-A, 2-B. For example, his allegations in the Kingate Action do

not include "connections" 8 (conducting due diligence with respect to the transfers) or 16

(participation in fund management or creation by or for the benefit of fund management). The

Kingate Complaint contains no specific allegations that HSBC Bermuda (a) performed any due

diligence relating to the transfers at issue, or (b) participated in the Kingate Funds' management

or was created for the benefit of the Kingate Funds. Nevertheless, the Trustee improperly

attempts through his briefing here to manufacture such allegations out of whole cloth. Similarly,

despite listing them in his "score card," *id.* at Ex. 2-A, the Trustee has not properly alleged that

"connections" 8 (conducting due diligence with respect to the transfers), 10 (use of a U.S.

affiliate in connection with the transfers), or 12 (use of a U.S. bank account to receive transfers)

apply to the HSBC Service Providers, as he has not pled that *any* of the HSBC Service Providers

(a) performed any due diligence relating to the transfers at issue, or (b) ever used a U.S. affiliate

or a U.S. account in connection with the fee payments at issue (or at all, in the case of the HSBC

Administrators).

The only facts relevant to whether § 550(a) would require extraterritorial application to

reach the transfers the Trustee seeks to claw back are the narrow facts concerning those specific

subsequent transfers at issue. As shown below, both the Trustee's operative complaints and his

proffered new allegations fall far short of alleging that transfers to the foreign HSBC Defendants

from foreign entities on account of foreign services or foreign investments are nevertheless

domestic in nature. None of the allegations, operative or proposed, give rise to a plausible

inference that an avoidable domestic transfer was received by any of the HSBC Defendants.

Further, even if the Trustee's allegations were not deficient (and they are), his improper lumping

of all the defendants together, without specifying which of his allegations apply to which

defendants and to which transfers, independently causes him to fail to overcome the presumption

that transfers from foreign feeder funds to foreign HSBC Defendants were foreign transfers, as

such overly generalized allegations fail to plead "specific facts suggesting a domestic transfer" as

to any of the HSBC Defendants.

B.      **The Trustee's Factual Allegations In Each Of The Actions Against The
        HSBC Defendants Fail To Plead Domestic Transfers**

In each action against HSBC Defendants, as detailed below, the factual allegations made

in the operative complaints fail to plead a domestic transfer that might be recoverable, and where

the Trustee seeks leave to amend to include new allegations, those proposed amendments are

futile because the proposed new allegations do not put forth "specific facts suggesting a domestic

transfer."

i.    <u>The Kingate Action</u>

In April 2009, the Trustee brought an action against BLMIS feeder funds Kingate Global

Fund Ltd. ("Kingate Global") and Kingate Euro Fund Ltd. ("Kingate Euro," and together with

Kingate Global, the "Kingate Funds") and their cash custodian, HSBC Bermuda, seeking the

return of preferential transfers the Kingate Funds allegedly received from BLMIS, as well as

immediate turnover and accounting of these transfers from HSBC Bermuda.  After repeated

amendments of his complaint, as to HSBC Bermuda the Trustee now solely seeks the recovery of

the fees it received for providing custodial services to the Kingate Funds.  *See* Kingate Fourth

Am. Compl. ("Kingate Compl."), Count Nine.

HSBC Bermuda is a Bermudan banking institution with its principal place of business at

6 Front Street, Hamilton HM 11, Bermuda.  Kingate Compl. ¶ 79.  The Kingate Funds are both

registered and organized in the British Virgin Islands ("BVI").  *Id.* ¶¶ 38, 40.  Thus, per Judge

Rakoff's ruling, "there is no plausible inference that the transfer [of fees to HSBC Bermuda]

occurred domestically" and this claim must be dismissed "unless the Trustee can put forth specific facts suggesting a domestic transfer". *Extraterritoriality Decision*, 513 B.R. at 232 n.4.

The only specific facts that the Trustee has put forward confirm the foreign nature of the Kingate Funds' transfers to HSBC Bermuda. The Kingate Funds maintained four accounts with HSBC Bermuda. Kingate Compl. ¶ 242. When the Kingate Funds redeemed their BLMIS investments, the proceeds were transferred from BLMIS to these accounts at HSBC Bermuda in Bermuda. *Id.* ¶¶ 242-44. The Kingate Funds then allegedly made transfers to HSBC Bermuda of approximately $466,364 in fees for custodial services. *Id.* ¶¶ 258, 317-321. The Trustee does not allege which accounts these subsequent transfers were made to or from, meaning he has failed to allege "any specific facts suggesting a domestic transfer." This is sufficient to warrant dismissal. Even if it were not, because the Trustee does not plead the existence of any other Kingate accounts, and he could not plead that the transfers to the HSBC Defendants were subsequent transfers of customer property *unless* they originated from the same Kingate Funds accounts in Bermuda that initially received the redemption monies from BLMIS, the transfers could only be foreign. *See Silverman v. K.E.R.U. Realty Corp.* (*In re Allou Distribs., Inc.*), 379 B.R. 5, 30 (Bankr. E.D.N.Y 2007) ("[I]n order to state a Section 550(a)(2) claim, [the Trustee] must allege sufficient facts to show, if proved, that the funds at issue originated with the debtor.").

Thus, the Trustee acknowledges that the transferor Kingate Funds and transferee HSBC Bermuda are foreign entities, and that the transfers were made from one Bermudan account to another. The Trustee also recognizes that the transfers constituted fees paid for services that HSBC Bermuda performed in Bermuda for a BVI-registered client. Kingate Compl. ¶¶ 80, 243, 245-46. All of those factors merely confirm that these were foreign transfers.

Under Judge Rakoff's mandated analysis, this ends the inquiry, as the Trustee has failed to identify any avoidable domestic transfer. The only relevant facts are those concerning the specific subsequent transfers at issue – here, the Kingate Funds' payment of fees to HSBC Bermuda from one overseas account to another overseas account for services provided abroad. Far from setting forth "specific facts suggesting a domestic transfer," as Judge Rakoff required, the Kingate Complaint confirms that all relevant component events of the subsequent transfers at issue occurred in Bermuda, or at best fails to raise a plausible inference of any domestic transfer.

In an effort to escape this reality, the Trustee tries to rewrite Judge Rakoff's ruling. The Trustee argues that the transfers' location abroad "would not alter the fact that the Transfers were comprised of customer property removed from the United States ('U.S.') with conscious disregard of BLMIS's fraudulent activities."[10] Judge Rakoff has already ruled, however, that such considerations cannot change the nature of transfers that occurred abroad between foreign parties from foreign transfers to domestic ones. *Extraterritoriality Decision*, 513 B.R. at 228 ("Although the chain of transfers originated with Madoff Securities in New York, that fact is insufficient to make the recovery of these otherwise thoroughly foreign subsequent transfers into a domestic application of section 550(a)."). This makes perfect sense, because any effort to apply § 550(a) is necessarily based on a transfer which can be traced back to a U.S. debtor. The Trustee's argument that this is determinative of whether a subsequent transfer is domestic would render Judge Rakoff's ruling on whether foreign subsequent transfers can be recovered meaningless.

The Trustee also for the first time in a supplemental memorandum of law introduces the fanciful argument that HSBC Bermuda is part of a "Kingate Enterprise" centered in New York.

---

[10] Trustee's Supp. Mem. of Law in Opp'n to Certain Defs.' Mot. to Dismiss Based on Extraterritoriality and in Further Support of Trustee's Mot. for Leave to Amend Compls., Adv. No. 09-01161 (SMB) (June 26, 2015) (ECF No. 195) ("Kingate Trust. Supp. Mem.") at 5.

Kingate Trust. Supp. Mem. at 5-6. As a threshold matter, the only reference to an "enterprise" in any form in the Kingate Complaint is in Paragraph 42, which simply alleges that the Kingate Funds – not HSBC Bermuda or other defendants – "were part of an *enterprise* created by Ceretti and Grosso to invest with BLMIS." Kingate Compl. ¶ 42 (emphasis added). Since no factual allegation claiming HSBC Bermuda was part of a "Kingate Enterprise" appears in the Trustee's complaint, this argument has no relevance to the Court's analysis here. *See, e.g.*, *Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998) ("[A] party is not entitled to amend its complaint through statements made in motion papers.").

Although the Kingate Complaint alleges that the defendants "operated in unison to collectively profit from Madoff's Ponzi scheme," Kingate Compl. ¶ 7, it is unclear what is meant by this statement, as there are no allegations that the defendants (i) shared profits, (ii) communicated with each other, (iii) engaged in any coordinated activity, or (iv) had any other relationship with each other in law or in fact that would justify treating them as a single enterprise. In any event, even if the Trustee had pled that HSBC was part of some sort of "Kingate Enterprise" that hoped to profit from BLMIS, such pleading would have no relevance to whether any avoidable domestic transfer took place (and plainly none did). Judge Rakoff has already specifically rejected the argument that defendants' hope to profit from investments in BLMIS was relevant to whether a domestic transfer occurred. *Extraterritoriality Decision*, 513 B.R. at 228.

      ii.   <u>The Omnibus Action</u>

In July 2009, the Trustee, in a single action, sued multiple BLMIS feeder funds, their managers and directors, and various HSBC Defendants, including the HSBC Service Providers

and certain HSBC Investors, in connection with their alleged initial or subsequent transfers from
BLMIS.

a. *The HSBC Service Providers*

The HSBC Service Providers are all foreign entities that provided custodial and
administrative services abroad to various foreign feeder funds.  The transfers that the Trustee
now seeks to recover are the approximately $21,208,961 in fees allegedly paid by the foreign
feeder funds to the foreign HSBC Service Providers on account of custodial and administrative
services rendered abroad.  Proposed Omnibus Second Am. Compl. ("Prop. Omni. SAC") ¶¶ 384,
596.

According to the Trustee:

- HSBC Bermuda, incorporated in Bermuda (Omnibus Am.Compl. ("Omni.
  Compl.") ¶ 100), served as administrator and custodian of Alpha Prime Fund
  Limited ("Alpha Prime"), incorporated in Bermuda (Omni. Compl. ¶ 60), Hermes
  International Fund Limited ("Hermes"), incorporated in BVI (Omni. Compl. ¶
  62), and Thema Fund Ltd. ("Thema"), incorporated in BVI (Omni. Compl. ¶ 64);
  also served as custodian of Lagoon Investment Limited ("Lagoon"), incorporated
  in BVI (Omni. Compl. ¶ 63); and served as sub-custodian of Thema International
  Fund plc ("Thema International"), incorporated in Ireland (Omni. Compl. ¶ 66);

- HITSB, incorporated in Bermuda (Omni. Compl. ¶ 99) served as custodian of
  Alpha Prime (Bermuda), Hermes (BVI), Lagoon (BVI), and Thema (BVI);

- HSSB, incorporated in Bermuda (Omni. Compl. ¶ 98) served as administrator of
  Alpha Prime (Bermuda), Hermes (BVI), and Thema (BVI);

- HITSI, incorporated in Ireland (Omni. Compl. ¶ 105) served as custodian of
  Thema International (Ireland);

- HSSI, incorporated in Ireland (Omni. Compl. ¶ 106) served as administrator of
  Thema International (Ireland);

- HSSL, incorporated in Luxembourg (Omni. Compl. ¶ 101), served as sub-
  administrator and sub-custodian of Alpha Prime (Bermuda), Hermes (BVI), and
  Thema (BVI); as sub-custodian of Lagoon (BVI); and as administrator and
  custodian of Lagoon Investment Trust, incorporated in BVI (Omni. Compl. ¶ 68);

11

- HSBC Fund Services, incorporated in Luxembourg (Omni. Compl. ¶ 107) served as sub-administrator of Hermes (BVI). Omni. Compl. ¶¶ 98-101, 105-107.

The Trustee clearly acknowledges that each of the transferors and each of the transferees is a foreign entity; thus, per Judge Rakoff's ruling, the transfers between them are presumptively foreign. *Extraterritoriality Decision*, 513 B.R. at 233 n.4. Nowhere in the operative Omnibus Amended Complaint does the Trustee allege that the transfers at issue – the payment of fees from the foreign feeder funds to the foreign HSBC Service Providers for services rendered abroad – occurred in or touched the United States in any way.

The Trustee's would-be allegations in his Proposed Omnibus SAC also include no allegations that the transfers to the HSBC Service Providers occurred in or touched the United States in any way, relying instead on the same type of BLMIS-focused tangential "connections" that Judge Rakoff rejected. *See, e.g.,* Prop. Omni. SAC ¶ 44 (alleging that HSSL was involved in feeder funds' opening of accounts at BLMIS); ¶ 145 (alleging that the HSBC Defendants facilitated the feeder funds' transfers to and from BLMIS); *id.* (alleging that certain HSBC Defendants knew that those transfers were for purported U.S. investments). Thus, both the operative complaint and the proposed amendments fail to set forth "specific facts suggesting a domestic transfer."

b. *HSBC Bank plc*

HSBC Bank plc is a British public limited company with a principal place of business at 8 Canada Square, London E14 5HQ, United Kingdom. Omni. Compl. ¶ 96; Prop. Omni. SAC ¶ 122. The Trustee's claims against HSBC Bank plc arise from hedging investments HSBC Bank plc allegedly made in support of HSBC's Global Structured Fund Products group ("GSFP"). Omni. Compl. ¶¶ 245-48, 262, 268, 271; Prop. Omni. SAC ¶ 134. GSFP offered structured products to investors seeking leveraged exposure to BLMIS. Omni. Compl. ¶ 245;

12

Prop. Omni. SAC ¶ 137.  To hedge these transactions, HSBC Bank plc allegedly invested

directly in foreign Madoff reference funds Harley International (Cayman) Limited ("Harley"),

Rye Select Broad Market Portfolio Limited ("Rye Portfolio"), and Rye Select Broad Market XL

Portfolio Limited ("Rye XL Portfolio"), all of which are registered in the Cayman Islands, Prop.

Omni. SAC ¶¶ 388, 496, and Thema International, an Irish company, Omni. Compl. ¶ 66; Prop.

Omni. SAC ¶ 64.  The Trustee seeks to recover redemptions HSBC Bank plc received directly

from these foreign funds – namely, $15,900,000 from Rye Portfolio, $53,000,000 from Rye XL

Portfolio, $15,599,960 from Harley, and $14,094,388 from Thema International.  Prop. Omni.

SAC ¶¶ 417, 421, 490, 541.[11]

The Trustee recognizes that transferors Harley, Rye Portfolio, Rye XL Portfolio, and

Thema International and transferee HSBC Bank plc are all foreign entities, and that the

transactions at issue occurred as a result of HSBC Bank plc's investments in the foreign funds.

The Trustee's Proposed Omnibus SAC would allege that HSBC Bank plc held an account at

HSBC Bank USA ("HBUS") in New York, Prop. Omni. SAC ¶ 147, and that HSBC Bank plc

directed that all redemptions from Rye Portfolio, Rye XL Portfolio, Thema International, and a

$3,599,960 redemption from Harley, be made to this account on its behalf, *id.* ¶¶ 417, 421, 480.

The Trustee fails to make any allegations with respect to the location of the accounts involved in

the remaining $12 million of transfers from Harley to HSBC Bank plc, *see id.* ¶¶ 533-34, and so

the claims to claw back those transfers should be dismissed in accordance with Judge Rakoff's

ruling that transfers between foreign parties are presumptively foreign.  As to the remaining

transfers, the Trustee cannot meet his burden to present "specific facts suggesting a domestic

---

[11] Although the Trustee alleges that HSBC Bank plc also invested in and redeemed from Senator Fund, Prop. Omni.
SAC ¶¶ 134, 214, nowhere in the Proposed Omnibus SAC does he seek to recover this specific subsequent transfer.
In any event, any such claim also would involve a challenge to a transfer to and from a foreign entity, and would fail
for the same reasons detailed herein.

transfer" simply by alleging that U.S. dollar-denominated redemptions were directed to a U.S.

dollar account. This allegation is consistent with HSBC Bank plc's use of a correspondent

account at HBUS to process the transfers. Its use, therefore, cannot render these foreign transfers

domestic. *Extraterritoriality Decision*, 513 B.R. at 228 n.1 ("Nor is the fact that some of the

defendants here allegedly used correspondent banks in the United States to process dollar-

denominated transfers sufficient to make these foreign transfers domestic."). Even if the Trustee

had pled that the transfers terminated in HSBC Bank plc's HBUS account (which he did not),

this single domestic factor would not outweigh the foreign nature of every other component

event of these transfers, *i.e.*, that they were between foreign entities regarding foreign

investments in foreign feeder funds. *See* Consolidated Reply at 28-29.

<blockquote>c. <em>HSBC Suisse</em></blockquote>

HSBC Suisse is a Swiss public company with its principal place of business at Quai des

Bergues 9-17, P.O. Box 2888, 1211 Geneva 1, Switzerland, which serves as the headquarters for

HSBC's Private Banking group ("Private Bank"). Omni. Compl. ¶ 104; Prop. Omni. SAC ¶ 126.

At the direction and on behalf of its Private Bank clients, HSBC Suisse placed investments

abroad in BVI-registered Fairfield Sentry Limited ("Fairfield Sentry") and Fairfield Sigma

Limited ("Fairfield Sigma"). Omni. Compl. ¶ 293; Prop. Omni. SAC ¶ 129; Compl., *Picard v.*

*Fairfield Sentry Ltd.*, Adv. No. 09-01239 (BRL) (Bankr. S.D.N.Y. July 20, 2010) (ECF No. 23).

The Trustee seeks to recover redemption payments that HSBC Suisse received with respect to its

client-directed investments in the foreign funds, purportedly $9,195,298 from Fairfield Sigma

and $363,383,585 from Fairfield Sentry. Prop. Omni. SAC ¶¶ 485-86, 596.

The operative complaint makes clear that foreign transferee HSBC Suisse received the

payments at issue from foreign transferors Fairfield Sentry and Fairfield Sigma on account of the

investments HSBC Suisse made in those foreign funds at the direction of its clients. No

allegations are made in the operative complaint that could suggest that the transfers to HSBC

Suisse from foreign feeder funds were anything but foreign transfers.

The Trustee's proposed allegations fare no better. With respect to the alleged transfers

from Fairfield Sigma to HSBC Suisse, the Trustee fails to propose any allegations regarding the

location of the transfers, and thus still fails to raise any inference that these transfers were

domestic. With respect to Fairfield Sentry, the Trustee's Proposed Omnibus SAC would allege

that HSBC Suisse requested that its Fairfield Sentry redemptions be sent in U.S. dollars to an

account it held at HBUS. Prop. Omni. SAC ¶¶ 480, 543. As is the case with HSBC Bank plc's

dollar-denominated HBUS account, the Trustee fails to allege or create any plausible inference

that HSBC Suisse's HBUS account was anything other than a correspondent account used to

receive dollar-denominated redemptions. Its use, therefore, would not be "sufficient to make

these foreign transfers domestic." *Extraterritoriality Decision*, 513 B.R. at 228 n.1. Likewise,

even if the Trustee had pled that Fairfield Sentry's transfers to HSBC Suisse terminated in the

HBUS account (which he has not), this one factor would be insufficient to render these

thoroughly foreign transfers domestic. *See* Consolidated Reply at 28-29.

> iii.    The Somers Action

In October 2011, the Trustee brought suit against the Somers Defendants, both of which

are HSBC affiliates, seeking to recover alleged subsequent transfers they received in the form of

redemption payments from foreign feeder funds Fairfield Sentry and Harley. Somers Compl.

Counts One and Two. Somers Dublin is an Irish private limited company that maintains a place

of business at 1 Grand Canal Square, Grand Canal Harbour, Dublin 2, Ireland. Somers Compl. ¶

22. The Trustee's claims against Somers Dublin arise from the alleged $1,985,648 in

redemption payments it received from Fairfield Sentry, a BVI company, *id.* ¶ 2; *see also* Somers

Proffered Allegations ("Somers Prof. Alleg.") ¶ 1, and the alleged $79,999,960 in redemption

payments it received from Harley, a Cayman Islands company, Somers Compl. ¶ 2; Somers Prof.

Alleg. ¶ 1, with respect to its investments in those funds.

Somers Nominees is a Bermuda limited liability company that maintains a place of

business at Compass Point, 9 Bermudian Road, Hamilton HM11, Bermuda.  Somers Compl.

¶ 23.  The Trustee's claims against Somers Nominees arise from the alleged $4,454,242 in

redemption payments it received from BVI-registered Fairfield Sentry with respect to

investments Somers Nominees made in that fund.  *Id.* ¶ 58; Somers Prof. Alleg. ¶ 1.

The Trustee acknowledges that each of the transferors and transferees in the Somers

Action is a foreign entity, and that the transactions occurred as a result of the Somers

Defendants' investments in foreign funds.  In fact, the Trustee's allegations against the Somers

Defendants are nearly identical to those he made against defendant CACEIS Bank Luxembourg,

including the identity of the foreign feeder funds from which most of the subsequent transfers

originated, that the funds were wired through New York banks, and that the transfers were

received with knowledge of their origin from BLMIS.  *Compare* Compl. ¶¶ 2, 6, 7, *Picard v.*

*Caceis Bank Luxembourg*, No. 11-02758-smb (Bankr. S.D.N.Y. Oct. 6, 2011) (ECF. No. 1)

("CACEIS Compl.") *with* Somers Compl. ¶¶ 2, 6, 7.  In considering these same allegations

against CACEIS, Judge Rakoff explicitly found that the transfers at issue were foreign.

*Extraterritoriality Decision*, 513 B.R. at 228 ("[T]he Court concludes that the subsequent

transfers that the Trustee seeks to recover here are foreign transfers and thus would require an

extraterritorial application of section 550(a).").

Nor do the Trustee's proposed amendments suggest these transfers were domestic, but rather confirm that they are subject to dismissal under the Extraterritoriality Decision. The Trustee would allege that the Somers Defendants "invested in and redeemed from the BLMIS Feeder Funds *using* New York bank accounts"[12] and explicitly points to correspondent accounts used by the Somers Defendants to process subscription payments, Somers Prof. Alleg. ¶¶ 16-17. Judge Rakoff's ruling is clear that this sole proposed allegation of using correspondent bank accounts would be insufficient to save these claims from dismissal under the Extraterritoriality Decision. *Extraterritoriality Decision*, 513 B.R. at 228 n.1. The Trustee's new allegations thus do not set forth "specific facts suggesting a domestic transfer." *Id.*, 513 B.R. at 232 n.4.

### iv.  The SICO Action

In April 2013, the Trustee sued HSBC affiliate SICO, seeking recovery of alleged subsequent transfers it received in the form of redemptions from foreign feeder funds Kingate Global and Fairfield Sentry. SICO First Am. Compl. ("SICO Compl."), Counts One and Two.[13] SICO is a company registered in the BVI with an address at P.O. Box 3162, Woodbourne Hall, Road Town, Tortola VG1110, BVI. SICO Compl. ¶¶ 3, 22; SICO Proffered Allegations ("SICO Prof. Alleg.") ¶ 2. The Trustee's claims against SICO arise from the alleged $1,070,796 in redemption payments it received from BVI-registered Kingate Global, SICO Compl. ¶¶ 2, 40; SICO Prof. Alleg. ¶ 1, and the alleged $14,544,621 in redemption payments it received from BVI-registered Fairfield Sentry, SICO Compl. ¶¶ 2, 48; SICO Prof. Alleg. ¶ 1, with respect to SICO's investments in these foreign funds.

---

[12] Trustee's Supp. Mem. of Law in Opp'n to Somers Dublin Limited's and Somers Nominees (Far East) Limited's Mot. to Dismiss Based on Extraterritoriality and in Further Support of Trustee's Mot. for Leave to Amend Compls., Adv. No. 11-02784 (SMB) (June 27, 2015) (ECF No. 82) at 3.

[13] The Trustee initially sued the wrong entity, SICO Securities & Investment Company BSC, and amended his complaint in order to name SICO Limited.

The Trustee's existing allegations thus recognize that SICO, Kingate Global, and Fairfield Sentry are all BVI entities, and that the redemptions at issue occurred as a result of SICO's investments in the foreign funds.  The operative complaint does not allege that these transfers originated or concluded in the United States.  As with Somers, these allegations are almost identical to those the Trustee pled in his action against CACEIS, *compare* CACEIS Compl. ¶¶ 2, 6, 7, *with* SICO Compl. ¶¶ 2, 6, 7, where Judge Rakoff found that the transfers at issue were unquestionably foreign.  *Extraterritoriality Decision*, 513 B.R. at 227-28.

The Trustee now states that SICO received the redemption payments at issue "through New York bank accounts"[14] and in his proposed new allegations would plead that SICO's subscription payments were "directed to a New York correspondent bank account at HSBC USA for ultimate deposit in Fairfield Sentry's bank account," SICO Prof. Alleg. ¶ 25.  Again, as Judge Rakoff made clear, this is not enough to allege that these were domestic transfers. *Extraterritoriality Decision*, 513 B.R. at 228 n.1.  The Trustee's Proffered Allegations thus fail to set forth any specific facts that would suggest that the transfers made between these foreign entities on account of foreign investments were domestic.

*            *            *

Accordingly, the Trustee's requests to yet again amend his allegations should be denied as futile, and all the claims to recover subsequent transfers made to the foreign HSBC Defendants by foreign feeder funds should be dismissed pursuant to Judge Rakoff's Extraterritoriality Decision, as the Trustee has failed to plead or propose to plead "specific facts suggesting a domestic transfer."

---

[14] Trustee's Supp. Mem. of Law in Opp. to SICO Limited's Mot. to Dismiss Based on Extraterritoriality and in Further Support of Trustee's Mot. for Leave to Amend Compls., Adv. No. 12-01005 (SMB) (June 26, 2015) (ECF No. 60) at 2.

## II.    The Claims Against The HSBC Defendants Should Also Be Dismissed As A Matter Of Comity

Judge Rakoff's alternative holding on comity also requires dismissal of the Trustee's claims against the HSBC Defendants.  We incorporate by reference the arguments in the Consolidated Reply with respect to this alternative holding, *see* Consolidated Reply at 33-40, and only briefly address here certain facts unique to the HSBC Defendants.

The clearest paradigm for when, as a matter of comity, U.S. bankruptcy law should not apply is when the foreign entity that made the potentially avoidable transfer is itself in a foreign liquidation proceeding and a representative of that foreign estate has invoked foreign law to preserve its claims.  *See Extraterritoriality Decision*, 513 B.R. at 231-32.  This is precisely the circumstance present for Kingate, Fairfield Sentry, and Harley.  Kingate Compl. ¶ 43 ("The Kingate Funds are in liquidation proceedings in the British Virgin Islands and Bermuda.");  *Extraterritoriality Decision*, 513 B.R. at 232 (Fairfield Sentry and Harley "are currently involved in their own liquidation proceedings in their home countries").  The Trustee seeks to avoid $1,537,160 in transfers made by Kingate to HSBC Bermuda and SICO; $384,368,096 in transfers made by Fairfield Sentry to HSBC Suisse, the Somers Defendants, and SICO; and $95,599,920 in transfers made by Harley to Somers Dublin and HSBC Bank plc.  Kingate Compl. ¶ 258; Prop. Omni. SAC ¶¶ 486, 535; Somers Compl. ¶¶ 58, 63; SICO Compl. ¶¶ 51, 56.  In addition, while not in liquidation proceedings, BLMIS feeder funds Hermes and Thema International are suing HSBC Bermuda in Bermuda, under Bermuda law, to recover the very same fee payments that the Trustee seeks to avoid in the Omnibus Action.  *See* Moloney Decl. Exs. A & B.

As Judge Rakoff stressed, "[g]iven the indirect relationship between Madoff Securities and the transfers at issue here, these foreign jurisdictions have a greater interest in applying their

own laws than does the United States." *Extraterritoriality Decision*, 513 B.R. at 232. Given the overlap between the foreign and domestic liquidation proceedings and other litigation and the strong interest of foreign jurisdictions in applying their own respective laws to entities incorporated under those laws, the claims against the HSBC Defendants should also be dismissed on comity grounds.

## CONCLUSION

In sum, all of the Trustee's proposed amendments are futile and all of his claims should be dismissed for failing to plausibly allege any avoidable domestic transfers.

For the foregoing reasons, the HSBC Defendants respectfully request that this Court enter an order dismissing with prejudice the Trustee's claims seeking recovery against the HSBC Defendants and denying the Trustee's motion for leave to amend, and/or granting the HSBC Defendants such other or further relief as is right and just.

Dated: New York, New York
September 30, 2015

CLEARY GOTTLIEB STEEN & HAMILTON LLP

By: */s/ Thomas J. Moloney*

Thomas J. Moloney
Joaquin N. Terceño

One Liberty Plaza
New York, New York 10006
(212) 225-2000

*Attorneys for the HSBC Defendants*