**DAVIS POLK & WARDWELL LLP**
450 Lexington Avenue
New York, New York  10017
Telephone:  (212) 450-4000
Facsimile:  (212) 701-5800

*Attorneys for Intesa Sanpaolo S.p.A.*
*and the Eurizon Defendants*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------- x

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (SMB) |
| Plaintiff, | |
| - v. - | SIPA Liquidation |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | (Substantively Consolidated) |
| Defendant. | |

------------------------------------- x

| | |
|---|---|
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | Adv. Pro. No. 12-01680 (SMB) |
| Plaintiff, | |
| - v. - | |
| INTESA SANPAOLO SPA (AS SUCCESSOR IN INTEREST TO BANCA INTESA SPA), EURIZON CAPITAL SGR SPA (AS SUCCESSOR IN INTEREST TO EURIZON INVESTIMENTI SGR SPA, F/K/A NEXTRA INVESTMENT MANAGEMENT SGR SPA, AND EURIZON ALTERNATIVE INVESTMENTS SGR SPA, F/K/A NEXTRA ALTERNATIVE INVESTMENTS SGR SPA), EURIZON LOW VOLATILITY F/K/A NEXTRA LOW VOLATILITY, EURIZON LOW VOLATILITY II F/K/A NEXTRA LOW VOLATILITY II, EURIZON LOW | |

```
VOLATILITY PB F/K/A NEXTRA LOW          :
VOLATILITY PB, EURIZON MEDIUM           :
VOLATILITY F/K/A NEXTRA MEDIUM          :
VOLATILITY, EURIZON MEDIUM              :
VOLATILITY II F/K/A NEXTRA MEDIUM       :
VOLATILITY II, EURIZON TOTAL RETURN     :
F/K/A NEXTRA TOTAL RETURN,              :
                                        :
                Defendants.             :
                                        :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
```

**SUPPLEMENTAL REPLY MEMORANDUM OF LAW OF
INTESA SANPAOLO S.p.A. AND THE EURIZON DEFENDANTS
IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS THE COMPLAINT
BASED ON EXTRATERRITORIALITY AND IN OPPOSITION TO
<u>THE TRUSTEE'S MOTION FOR LEAVE TO AMEND THE COMPLAINT</u>**

Intesa Sanpaolo S.p.A. ("Intesa") and the Eurizon Defendants respectfully submit this supplemental reply memorandum of law in further support of their motion to dismiss the Complaint in this action based on extraterritoriality and in opposition to the Trustee's motion for leave to amend the Complaint.[1] Intesa and the Eurizon Defendants expressly adopt and incorporate herein the arguments for dismissal and denial of leave to amend set forth in the Reply Consolidated Supplemental Memorandum of Law in Support of Transferee Defendants' Motion to Dismiss Based on Extraterritoriality filed on September 30, 2015 (Dkt. No. 69) (the "Consolidated Reply Brief").[2]

---

[1] The Complaint names as defendants Eurizon Capital SGR S.p.A., f/k/a Nextra Alternative Investments SGR S.p.A. ("Eurizon Capital"), Eurizon Low Volatility, f/k/a Nextra Low Volatility ("Eurizon Low Volatility"), Eurizon Low Volatility II, f/k/a Nextra Low Volatility II ("Eurizon Low Volatility II"), Eurizon Low Volatility PB, f/k/a Nextra Low Volatility PB ("Eurizon Low Volatility PB"), Eurizon Medium Volatility, f/k/a Nextra Medium Volatility ("Eurizon Medium Volatility"), Eurizon Medium Volatility II, f/k/a Nextra Medium Volatility II ("Eurizon Medium Volatility II"), and Eurizon Total Return, f/k/a Nextra Total Return ("Eurizon Total Return"). The Complaint characterizes Eurizon Low Volatility, Eurizon Low Volatility II, Eurizon Low Volatility PB, Eurizon Medium Volatility, Eurizon Medium Volatility II, and Eurizon Total Return each as an Italian "fondo commune investimento," which is not a legal entity under Italian law. The assets of these funds were managed and promoted by the asset manager, Eurizon Capital. Moreover, prior to the filing of the Complaint, the assets of Eurizon Low Volatility II and Eurizon Low Volatility PB were merged into Eurizon Low Volatility, and the assets of Eurizon Medium Volatility II were merged into Eurizon Medium Volatility. On August 1, 2013, the assets of Eurizon Medium Volatility and Eurizon Total Return were merged into Eurizon Low Volatility. Accordingly, the only fund that exists today, and which is currently managed by Eurizon Capital, is Eurizon Low Volatility. Eurizon Capital and each of the Eurizon funds identified herein are referred to collectively as the "Eurizon Defendants."

Intesa and the Eurizon Defendants expressly reserve all of their rights and defenses in connection with the Adversary Proceeding, including without limitation any defenses based on lack of jurisdiction of the District Court or the Bankruptcy Court.

[2] All citations to "Dkt. No." refer to documents appearing on the docket in this Adversary Proceeding, *Picard v. Intesa Sanpaolo S.p.A., et al.*, Adv. Pro. No. 12-1680 (SMB).

As set forth in greater detail in the Consolidated Reply Brief, the Complaint filed against Intesa and the Eurizon Defendants on May 31, 2012 (Dkt. No. 1) must be dismissed because it fails to allege any facts that any of the subsequent transfers allegedly received by Intesa and the Eurizon Defendants from Fairfield Sentry Limited ("Fairfield Sentry"), Kingate Global Fund Ltd. ("Kingate Global"), and/or Kingate Euro Fund Ltd. ("Kingate Euro" and, together with Fairfield Sentry and Kingate Global, the "Funds") occurred in the United States such that they would fall within the domestic reach of Section 550(a)(2) of the United States Bankruptcy Code. The District Court has explained that where, as here, "both the transferor and the transferee reside[d] outside of the United States, there is no plausible inference that the transfer occurred domestically." *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 513 B.R. 222, 232 n.4 (S.D.N.Y. 2014) (the "Extraterritoriality Decision"). The Trustee alleges that each transfer at issue in this Adversary Proceeding was made from one of the Funds, all of which were British Virgin Island companies. *See* Compl. ¶ 2. The recipients of those transfers allegedly were Intesa ("an Italian *società per azioni*" and the largest bank in Italy), Eurizon Capital (an "Italian *società per azioni*" with a place of business in Milan, Italy), and certain funds managed by Eurizon Capital (each an "Italian *fondo commune investimento*" with a business address in Milan, Italy). *See id.* ¶¶ 3, 23-30.[3] The Complaint contains no allegations that any transfer between these foreign entities occurred domestically and therefore is plainly incapable of satisfying the pleading requirements set forth in the Extraterritoriality Decision.

---

[3] The Trustee claims that Intesa maintained a place of business in New York, *see* Compl. ¶ 3, but alleges no facts that the single transfer purportedly received by Intesa from Kingate Global involved this New York location in any respect, *see* Consolidated Reply Memorandum at 27-28.

2

Recognizing this, the Trustee has proffered various allegations that he proposes to include in an amended complaint against Intesa and the Eurizon Defendants to avoid dismissal under the Extraterritoriality Decision.[4] Many of these allegations concern Bernard L. Madoff Investment Securities LLC and the Funds generally, *see, e.g.*, Proffer ¶¶ 36-40, 42, 45, 49-58, 80-132, and are insufficient to adequately plead any domestic transfers for the reasons explained in the Consolidated Reply Memorandum. The new allegations specific to Intesa and the Eurizon Defendants similarly fail to create a plausible inference that any transfer allegedly received by Intesa or the Eurizon Defendants occurred in the United States. Accordingly, leave to amend the Complaint should be denied as futile.

### *The Transfers Allegedly Received by Intesa*

The Complaint originally alleged that Intesa received a transfer of $5,286,438 in November 2004 from Kingate Global. Compl. ¶ 58. The Trustee now proffers that Intesa received "not less than $19,165,526" from Kingate Global, although he provides no other details about any additional transfers. Proffer ¶ 7. Regardless of how much money Intesa allegedly received from Kingate Global, however, the Trustee has failed to propose any new allegations that would demonstrate that any transfers occurred in the United States. The Trustee alleges that Intesa maintained a "place of business" in New York but makes no suggestion that this "place of business" was involved in any transfer from Kingate Global. Proffer ¶ 6. To the contrary, the Trustee expressly concedes that no U.S.-based affiliates of Intesa were involved in any transfers. *See* Trustee's Memorandum of Law in Opposition to the Transferee Defendants' Motion to Dismiss Based on Extraterritoriality and in Further Support of Trustee's Motion for Leave to

---

[4] These proffered allegations are contained in the Trustee's Proffered Allegations Pertaining to the Extraterritoriality Issue as to the Intesa Defendants ("Proffer") (Dkt. No. 67).

Amend Complaints ("Trustee's Opposition Brief") (Dkt. No. 65) at Ex. 2-A (entry for Adv. Pro. No. 12-1680).

The Trustee also alleges that Intesa "conduct[ed] due diligence with regards to its proprietary investments" and once met in New York with representatives of Fairfield Greenwich Group regarding *Fairfield Sentry*. Proffer ¶¶ 68-70. Even if Intesa's general due diligence mattered in any way to the extraterritoriality analysis—and it does not, *see* Consolidated Reply Memorandum at 26-27—Intesa is alleged to have invested in *Kingate Global*, not Fairfield Sentry, and therefore this allegation can have no conceivable connection to any transfers Intesa allegedly received. Moreover, the Trustee concedes that Intesa never conducted any due diligence in the United States relating to its investment in Kingate Global. *See* Trustee's Opposition Brief at Ex. 2-A (entry for Adv. Pro. No. 12-1680).

The Trustee vaguely alleges that Kingate Global "utilized an account at HSBC in New York to effectuate" transfers to Intesa. Proffer ¶ 67. But mere allegations that transfers involved bank accounts located in the United States—and specifically correspondent bank accounts like Kingate Global's account at HSBC (a fact well known by the Trustee)—are insufficient to demonstrate domestic transfers. *See* Extraterritoriality Decision, 513 B.R. at 228 n.1 ("Nor is the fact that some of the defendants here allegedly used correspondent banks in the United States to process dollar-denominated transfers sufficient to make these foreign transfers domestic."); Consolidated Reply Memorandum at 28-29 & nn.18-19.

The Trustee has failed to proffer any allegations that would permit a plausible inference that transfers from Kingate Global to Intesa occurred in the United States. His motion for leave to amend must be denied as futile.

4

***The Transfers Allegedly Received by the Eurizon Defendants***

The Trustee's motion for leave to amend the Complaint as to the Eurizon Defendants similarly must be denied as futile. The Trustee's principal contention for why transfers to the Eurizon Defendants were domestic is that they involved a New York-based bank account. Proffer ¶¶ 62-63, 65-66. As noted above and in the Consolidated Reply Memorandum at 28-29 & nn.18-19, the mere fact that funds allegedly flowed through bank accounts located in the United States is insufficient to demonstrate that a transaction was domestic.

The Trustee also alleges various due diligence-related conduct undertaken by the Eurizon Defendants in connection with investments in the Funds, including through an entity with which they allegedly formed a joint venture in December 2005. *See* Proffer ¶¶ 71-76. But again, none of those due diligence-related activities has any bearing on the *location* of any transfers from the Funds to the Eurizon Defendants—the vast majority of which occurred prior to the alleged joint venture. *See* Compl. Exs. C-D, G-M, P-R. Those activities accordingly have no bearing on the analysis required by the Extraterritoriality Decision. Nor does the Trustee proffer any new allegations that the joint venture was the recipient of any of the alleged transfers.

The Trustee contends that representatives from the Eurizon Defendants spoke with representatives from Fairfield Sentry located in New York about a May 2003 redemption request. *See* Proffer ¶ 78. This proffered allegation contains no information concerning where that transfer took place following the alleged conversation and, accordingly, creates no inference that the transfer was domestic.

Lastly, the Trustee now alleges that a Eurizon entity maintained an office in New York during the time period when the Eurizon Defendants allegedly received transfers from the Funds. *See* Proffer ¶ 12. There is no allegation, however, that this office was involved in any way with

5

any investment activity, or that it was involved in any way with the transfers allegedly received by the Eurizon Defendants. This allegation therefore has no relevance to the analysis required by the Extraterritoriality Decision.

At most, the Trustee has alleged a small number of *contacts* between the Eurizon Defendants and the United States, which are not sufficient to plead any domestic *transfers* under the Extraterritoriality Decision. *See* Consolidated Reply Brief at 29 & n.19. Any amendment of the Complaint therefore would be futile.

*   *   *

The Trustee's proffered allegations against Intesa and the Eurizon Defendants are substantially similar to the general categories of allegations asserted against defendants in many of the other proceedings before this Court concerning extraterritoriality. The Consolidated Reply Memorandum addresses each category of allegation—most of which concern conduct directed at the United States rather than the location of any transfers. Numerous of those categories do not apply to Intesa or the Eurizon Defendants. For example, the Trustee concedes that none of the agreements allegedly governing the relationships between Intesa or the Eurizon Defendants and any of the Funds contained New York choice of law or venue provisions. *See* Trustee's Opposition Brief at Ex. 2-A (entry for Adv. Pro. No. 12-1680). To the extent the Trustee's general categories of allegations are directed at Intesa and/or the Eurizon Defendants, however, this memorandum expressly incorporates herein the responses in the Consolidated Reply Brief to avoid burdening the Court with unnecessary duplication.

## CONCLUSION

For the reasons set forth above, Intesa and the Eurizon Defendants respectfully request that the Court (1) dismiss the Complaint with prejudice for failure to plead allegations sufficient to demonstrate that transfers from Fairfield Sentry, Kingate Global and Kingate Euro to Intesa and/or the Eurizon Defendants occurred in the United States, and (2) deny the Trustee's motion for leave to amend as futile because the proffered allegations, which are expressly directed at overcoming the Complaint's fatal deficiencies, fail to give rise to a plausible inference that any transfers occurred in the United States.

Dated:   New York, New York
         September 30, 2015

                       DAVIS POLK & WARDWELL LLP

                       By:   /s/ Elliot Moskowitz
                             Elliot Moskowitz
                             Andrew Ditchfield

                       450 Lexington Avenue
                       New York, New York  10017
                       Telephone:  (212) 450-4000
                       Facsimile:  (212) 701-5800
                       elliot.moskowitz@davispolk.com
                       andrew.ditchfield@davispolk.com

                       *Attorneys for Intesa Sanpaolo S.p.A. and the Eurizon Defendants*