# EXHIBIT 1



February 6, 2009

Kelly McCormick
Financial Industry Regulatory Authority
1801 K Street, NW
8th Floor
Washington, DC
20006-1334

**Natixis Securities North America Inc.**
**CRD No. 28722**
**Response to Letter of Inquiry**
**Confidential Treatment Requested**

Dear Ms. McCormick:

    Natixis Securities North America Inc. (the "Firm") submits this letter in response to your letter of January 15, 2009 (the "Request Letter") requesting certain information regarding the provision of or referral to advisory services by the Firm.

    For purposes of this response, please note that, further to your telephone call of January 21, 2009 with the Firm's outside counsel, Russell Sacks of Shearman & Sterling LLP:

1. In respect of information provided below with respect to the activities of the Firm's affiliates, subsidiaries, registered representatives, and other associated persons, the Firm's responses are limited to the activities of persons that are registered with a firm that is a member of the Financial Industry Regulatory Authority ("FINRA"). This information on the activities of such persons is provided regardless of whether such activities were on behalf of the Firm or on behalf of another affiliated entity.

2. The information provided below with respect to the activities of the Firm, its affiliates, subsidiaries, registered representatives, and other associated persons does not include any information regarding the activities of the U.S.-registered broker-dealers named on Exhibit A hereto or their associated persons, notwithstanding that such firms may be "affiliates" of the Firm, as described in the Request Letter. In this regard, please note that the Firm does not hold the books and records of any of the affiliates named on Exhibit A hereto.

3. The information below with respect to the activities of the Firm, its affiliates, subsidiaries, registered representatives, and other associated persons does not include any information regarding the activities of any U.S.-regulated bank or its personnel, other than persons that are registered with a U.S.-registered broker-dealer.
4. Any reference in this letter to the Firm's affiliates, subsidiaries, registered representatives or other associated persons shall exclude such entities or persons as described above.

Natixis Securities North America Inc. 9 West 57th Street, 36th Floor - New York, NY 10019 - Tel. 212-891-1833 - Fax. 212-891-3459
Member FINRA & SIPC

NAT000013

I.  **Introductory Note**

The Firm wishes to note as an initial matter that it did not recommend investments in accounts held at Bernard Madoff Investment Securities ("BMIS") or otherwise managed by Bernard L. Madoff to any client of the Firm or its affiliates, and did not receive any compensation from BMIS or Bernard L. Madoff or transaction-based compensation related to any Madoff-related investment by any person. Certain affiliates of the Firm did, in the ordinary course of their financing business, provide leveraged financing to some institutional clients that held (or sought to hold) exposure to funds that in turn had invested in BMIS brokerage accounts ("BMIS Accounts"). In all relevant cases, such exposure to Madoff-related investments was acquired by such institutional clients on their own initiative, rather than on any recommendation by the Firm or any of its affiliates.

In this regard, and solely in order to permit that affiliate to hedge its exposure to these Madoff-related investments under its financing arrangements with such institutional clients, the Firm acted as investment advisor to a second affiliate that made investments in funds that had in turn invested in BMIS Accounts.

We note that, as a result of the recent events concerning Madoff, the Firm's affiliate that provided this leveraged financing structure suffered significant financial losses as a result of the substantial decrease in value of the Madoff-related assets to which it was exposed through underlying hedging transactions.

Complete information regarding these transactions is found below in relation to Items 6 and 7 of the Request Letter.

II.  **Responses to Request Letter Items**

In response to the Request Letter, the Firm provides the following information (note that the response numbers below correspond to the question numbering found in the Request Letter):

**Response to Item 1**

From January 1, 2006 through December 31, 2008 (the "Review Period"), the Firm, its affiliates, subsidiaries, registered representatives or other associated persons did not refer any of its customers to registered or unregistered investment advisors for the purposes of receiving investment advisory services.

**Response to Item 2**

Not applicable.

**Response to Item 3**

Solely for purposes of the response to this Item 3, the Firm defines "affiliated with" to mean "under the supervision and control of."

The Firm is a dually-registered broker-dealer and investment advisor. Therefore, all of the Firm's registered persons are affiliated with an investment advisor. All registered persons at the Firm, its affiliates or subsidiaries who are also affiliated with an investment advisor during the Review Period are named on Exhibit B hereto. For convenience of

NAT000014

FINRA, Exhibit B also specifies those registered persons of the Firm that also conducted investment advisory activities on behalf of the Firm during the Review Period.

**Response to Item 4**

Except to the extent that the activity described in Response to Item 6 below may constitute "referral", during the Review Period, the Firm, its affiliates, subsidiaries, registered representatives or other associated persons did not refer any of its customers to Bernard L. Madoff Investment Securities LLC ("BMIS"), Mr. Bernard L. Madoff, or any investment or service offered by or entity managed by BMIS or Mr. Bernard L. Madoff (collectively, "Madoff").

**Response to Item 5**

Not Applicable.

**Response to Item 6**

During the Review Period, the Firm, its affiliates, subsidiaries, registered representatives or other associated persons did not recommend to any of its customers the purchase of any affiliated or unaffiliated fund, hedge fund, fund of funds, or any investment vehicle that invested wholly or in part in Madoff-managed investments, other than as described below with respect to certain hedging activities related to the financing activities of affiliates.

    A.    *General Overview of Related Financing Activities*

For the information of FINRA, we note that as part of its regular course of business during the Review Period, Natixis Financial Products Inc. ("Natixis FP"), a U.S. affiliate of the Firm that has employees that are also associated persons of the Firm, entered into total return swap transactions with institutional investor clients that sought leveraged exposure to investment funds or funds of funds (such transactions, "Financing Swaps"). These individually-negotiated Financing Swaps provided such institutional investor clients ("Swap Counterparties") with returns that match, on a leveraged basis, any positive returns on a security or portfolio of securities (the "Reference Securities").

In each such transaction, Natixis FP received an initial cash or securities payment from the Swap Counterparty at the time a Financing Swap was executed. Thereafter, all positive returns on the Reference Securities, net of financing costs, were paid by Natixis FP to the Swap Counterparty. In most cases, and in all cases relating to BMIS as described below, the Swap Counterparty had no obligation to compensate Natixis FP in the event that there are negative returns on the Reference Securities.

In order to hedge its exposure to Reference Securities under a Financing Swap, in cases where the terms of the Reference Securities permitted purchase by a U.S. person, Natixis FP acquired the Reference Securities for its own account. In cases where the terms of the Reference Securities did not permit purchases by U.S. persons, Natixis FP hedged its exposure via an existing and corresponding total return swap (the "Second Swap") with a third party, Califano Investments Limited ("Califano"), an affiliate of Natixis FP and the

NAT000015

Firm.[1] This Second Swap generally hedged on a portfolio basis Natixis FP's exposure to such offshore Reference Securities under all related Financing Swaps, as described below. The reference securities under the Second Swap were primarily shares of an investment vehicle wholly-owned by Califano (which investment vehicle in turn would hold the relevant Reference Securities to all related Financing Swaps, as described below).[2] Under the Second Swap, Califano was obligated to pass positive returns on the Second Swap's reference securities to Natixis FP and Natixis FP was obligated to make Califano whole for any negative returns on the Second Swap's reference securities. Natixis FP was not required to make any initial cash or securities payment to Califano under the Second Swap. The Second Swap covered the totality of Natixis FP's offshore hedging requirements across Financing Swaps.

To complete this hedging structure with respect to Reference Securities the terms of which did not permit purchases by U.S. persons, Califano (or its predecessor entity) wholly owned an investment vehicle named Bloom Asset Holdings Fund ("Bloom"), an Irish umbrella trust, which in turn would acquire and hold all such underlying Reference Securities for which the Second Swap was to act as a hedge on a portfolio basis against Natixis FP's exposure to such Reference Securities under the related Financing Swaps.[3] The Firm, in its capacity as investment advisor of record to Bloom, directed the purchase of such Reference Securities for the account of Bloom so that, via the Second Swap between Califano and Natixis FP, Natixis FP had effectively hedged on a portfolio basis its exposure to the Reference Securities under the related Financing Swaps.

With respect to each Financing Swap, because Natixis FP was obligated under the Second Swap to make Califano whole for any negative returns on the Second Swap's reference securities as a result of any negative returns on the relevant Reference Securities, but was not itself made whole by the Swap Counterparty under the related Financing Swap, Natixis FP effectively bore the risk of any downside in the Reference Securities in excess of the initial cash or securities payment from the Swap Counterparty at the time such Financing Swap was executed. Natixis FP therefore conducted diligence on the Reference Securities in order to determine the market, credit, and related risks of entering into the Financing Swap.

The Firm wishes to emphasize that each of Natixis FP, Califano and Bloom are indirect, wholly-owned subsidiaries of Natixis, the indirect parent company of the Firm. The Firm's investment advisory relationship with Bloom and Bloom's investments in such Reference Securities during the Review Period were purely a function of the manner in

---

[1] Up until December 12, 2007, the role of Califano was played by European International Reinsurance Company Ltd ("EIR"), an unaffiliated third-party indirectly owned by a foreign financial institution, which in turn owned the hedging vehicle described below. During the portion of the Review Period in which EIR played this role, the underlying hedging vehicle and its assets were consolidated for accounting purposes on the books of Natixis FP.

[2] In a few cases (including, for a two-month period, with respect to the shares in the Harley International (Cayman) Ltd and the Herald Fund SPC described in Response 6.B), the Reference Securities themselves (rather than the shares of the wholly-owned investment vehicle) were directly included among the reference securities under the Second Swap.

[3] As an Irish umbrella trust, Bloom has the power to create sub-funds. Blossom Asset Holdings Fund is the sole sub-fund of Bloom, and is the entity in which all of Bloom's assets were technically held.

NAT000016

which Natixis structured the hedging of these Financing Swaps using the various internal Natixis subsidiaries involved.

### B. Description of Financing Activities Relating to Madoff

In the ordinary course of its business in this area, Natixis FP provided three (3) Financing Swaps to hedge fund counterparties for which the Reference Securities were interests in (i) Groupement Financier Ltd. ("Groupment Financier"), (ii) Harley International (Cayman) Ltd (the "Harley Fund") and (iii) initially the Alpha Prime Fund Limited (the "Alpha Prime Fund") and later, after substitution at the Swap Counterparties request, Herald Fund SPC (the "Herald Fund"). Each of these four Reference Securities was a hedge fund that invested substantially all of its funds in BMIS Accounts.

In one additional instance, Natixis FP provided a Financing Swap the Reference Securities for which were a basket of fund interests that included, among others, the Harley Fund.

In two further instances, Natixis FP provided Financing Swaps the Reference Securities for which were funds of hedge funds which included, as one of several holdings, the Sentry Fund, which in turn invested substantially all of its funds in BMIS Account.

In each of the six instances described above, Natixis FP's exposure to the Reference Securities under these Financing Swaps was hedged via the Califano/Bloom structure (or its predecessor entity) pursuant to which the Firm, in its capacity as investment advisor, directed the purchase of the relevant Reference Securities for the account of Bloom.

### C. No Recommendation of Madoff Investments to Any Person Other Than as a Hedge against Exposure to Portfolios selected by Institutional Swap Counterparties

Neither Natixis FP, the Firm, nor any affiliate thereof recommended or proposed the relevant Madoff-related Reference Securities to the Swap Counterparty; rather, in all cases these Reference Securities were proposed by the Swap Counterparty on its own initiative and the services provided by all Natixis entities involved to the Swap Counterparty were limited to leveraged financing services for which fees were a percentage of the leverage amount.

For FINRA's convenience, a simplified organization chart of the Firm and the affiliates described herein is included as Exhibit C hereto.

### Response to Item 7(a)

The name of the affiliated customer that the Firm recommended to invest in funds that invested wholly or in part in BMIS Accounts, the CRD number of the registered representative of record, the name of the product, and the description/type of investment are set forth in Exhibit D hereto. For FINRA's convenience, in each such case we have also provided a general description of the Financing Swap to which such investment was incident.

### Response to Item 7(b)

There are no written or other agreements between the Firm and BMIS.

NAT000017

**Response to Item 7(c)**

A description of all fees or other charges paid by Bloom to the Firm in connection with Bloom's investment in BMIS Accounts and copies of all fee schedules or other charges are attached as Exhibit E.

**Response to Item 7(d)**

No fees or other compensation by category have been received by the Firm from BMIS.

**Response to Item 7(e)**

All presentation materials, marketing materials, scripts, advertising and sales literature were intended for or provided to Bloom by the Firm regarding Reference Securities that were interests in funds directly or indirectly invested in BMIS Accounts are attached as Exhibit F.

**Response to Item 7(f)**

All presentation materials, marketing materials, scripts, advertising and sales literature were intended for or provided to registered representatives of the Firm regarding funds directly or indirectly invested in the BMIS Accounts are attached hereto as Exhibit G. We note that all such materials were provided by Swap Counterparties (or by the managers of the Reference Securities at the direction of the Swap Counterparties) to the Firm's registered representatives that were involved in Natixis FP's leveraged financing activities and were received by such persons in their capacity as employees of Natixis FP.

**Response to Item 7(g)**

Copies of all files concerning due diligence conducted by the Firm of funds directly or indirectly invested in BMIS Accounts, including the dates of each review, the name and title of the individual conducting the review and copies of all memoranda or reports concerning the results of the review, are attached hereto as Exhibit H. We note that in each instance, this due diligence was conducted for the sole purpose of evaluating, from a credit perspective, the quality of Madoff-related assets acquired as hedges to Natixis FP's exposure to Madoff-related Reference Securities under the Financing Swaps to which they related.

**Response to Item 7(g)**

To date, no customer and/or issuer complaints, arbitration, and/or litigation claims have been filed with the Firm, its affiliates, subsidiaries, registered representatives or other associated persons concerning the BMIS Accounts.

This response letter and the documents attached hereto are numbered NS00001 through NS02250.

NAT000018

\* \* \* \* \*

    We trust that the information provided herein is responsive to the Request Letter. Should you have any questions, need additional information or wish to discuss any of the matters described herein, we would be please do so at your earliest convenience. To that end, please do not hesitate to contact, at any time, the undersigned at (212) 891-1833 or Joshua P. Laterman of Natixis U.S. Legal at (212) 698-3223.

    Sincerely,

    Lou Milano
    Chief Compliance Officer
    Natixis Securities North America, Inc.

cc:    Ira Gluck
    (FINRA)

    Jacques Busquet
    Joshua P. Laterman
    Jeremy R. Newell
    Louis Pinto
    Joe Vuolo
    (Natixis)

NAT000019