UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>Trustee-Applicant,<br><br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>Defendant. | SIPA Liquidation<br>No. 08-01789 (SMB)<br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>Trustee,<br><br>v.<br><br>NATIXIS, NATIXIS CORPORATE & INVESTMENT BANK (f/k/a IXIS CORPORATE & INVESTMENT BANK), NATIXIS FINANCIAL PRODUCTS, INC., BLOOM ASSET HOLDINGS FUND, and TENSYR LIMITED,<br><br>Defendants. | Adv. Pro. No. 10-05353 (SMB) |

**NATIXIS S.A.'S AND BLOOM ASSET HOLDINGS FUND'S
SUPPLEMENTAL REPLY MEMORANDUM OF LAW IN SUPPORT OF
<u>THEIR MOTION TO DISMISS BASED ON EXTRATERRITORIALITY</u>**

## TABLE OF CONTENTS

Page

I.   THE PROFFERED ALLEGATIONS ARE INSUFFICIENT TO PLEAD NATIXIS S.A. RECEIVED A DOMESTIC TRANSFER OR IS A DOMESTIC ENTITY FROM WHICH AN AVOIDABLE TRANSFER MAY BE RECOVERED ................................................. 1

   A.  The Trustee Fails To Plead Any Domestic Transfers ................................................. 2

   B.  The Trustee Fails To Plead that Natixis S.A. Is a Domestic Entity from Which Recovery Is Permitted Under Section 550(a)(2) ......................................................... 2

       1.  Natixis S.A. Is a Foreign Entity and Its Alleged Transferor, Sentry, Is Also a Foreign Entity ................................................................................................. 2

       2.  The Proffers Do Not Support Any Basis for Liability of Natixis S.A. Under Section 550(a)(2) for Transfers Its Affiliates Allegedly Received ......................... 3

       3.  The Proffers Related to the Tensyr Transaction Are Irrelevant to the Location of Transfers Allegedly Received by Natixis S.A. ....................................................... 5

   C.  The Trustee Fails to Plead Any Other Cognizable Theory Under Which Natixis S.A. Could Possibly Be a Domestic Entity from Which Recovery of Transfers Is Permitted ................................................................................................. 6

II.  THE PROFFERED ALLEGATIONS ARE INSUFFICIENT TO PLEAD BLOOM IS A DOMESTIC ENTITY FROM WHICH AN AVOIDABLE TRANSFER MAY BE RECOVERED ................................................................................................. 7

   A.  Bloom Is a Foreign Entity and All of Its Alleged Transferors Were Also Foreign Entities ......................................................................................................... 7

   B.  The Location of Affiliated and Non-affiliated Entities is Irrelevant For Purposes of Determining the Location of Any Alleged Transfers to Bloom .................................. 8

   C.  The Proffers Do Not Plead Any Domestic Entity Is a Party for Whose Benefit an Alleged Transfer To Bloom Was Made ................................................................... 10

III. THE PROFFERS CONTAIN THE TYPES OF ALLEGATIONS THAT WERE ADDRESSED AND REJECTED BY JUDGE RAKOFF ............................................. 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*20 Pine St. Homeowners Ass'n. v. 20 Pine St. LLC*,
  109 A.D.3d 733, 735 (1st Dep't 2013) ..................................................................................5

*In re Brown Publ'g Co.*,
  Nos. 10-73295, 12-08193, 2015 Bankr. LEXIS 667
  (Bankr. E.D.N.Y. Mar. 4, 2015) ............................................................................................6

*Daimler AG v. Bauman*,
  134 S. Ct. 746 (2014)............................................................................................................3

*Dietz v. Spangenberg*,
  No. 11-2600, 2013 U.S. Dist. LEXIS 123601 (D. Minn. Aug. 29, 2013) .............................6

*Eaves v. Designs for Fin., Inc.*,
  785 F. Supp. 2d 229 (S.D.N.Y. 2011)....................................................................................8

*Gucci America, Inc. v Bank of China*,
  768 F.3d 122 (2d Cir. 2014)..................................................................................................3

*Int'l Equity Invs., Inc. v. Opportunity Equity Partners., Ltd.*,
  472 F. Supp. 2d 544 (S.D.N.Y. 2007)....................................................................................6

*Rieger v. Drabinsky* (*In re Livent Noteholders Sec. Litig.*),
  151 F. Supp. 2d 371 (S.D.N.Y. 2001)................................................................................3, 9

*Schechter v. 5841 Bldg. Corp. (In re Hanson)*,
  341 B.R. 638 (Bankr. N.D. Ill. 2006) ....................................................................................6

*SEC v. Gruss*,
  859 F. Supp. 2d 653 (S.D.N.Y. May 9, 2012) ......................................................................9

*SEC v. Gruss*,
  No. 11 Civ. 2420, 2012 U.S. Dist. LEXIS 114007 (S.D.N.Y. Aug. 9, 2012) .........................9

*SIPC v. Madoff*,
  513 B.R. 222 (S.D.N.Y. 2014)...................................................................................... passim

*Taizhou Zhongneng Imp. & Exp. Co. v. Koutsobinas*,
  509 F. App'x 54 (2d Cir. 2013) .............................................................................................4

*Tannenbaum v. Zeller*,
  552 F.2d 402 (2d Cir. 1977)..................................................................................................9

*Turner v. Phoenix Fin., LLC (In re Imageset, Inc.)*,
   299 B.R. 709 (Bankr. D. Me. 2003) ...................................................................................... 6

**Statutes**

11 U.S.C. § 550(a) ............................................................................................... *passim*

iii

For the reasons stated in the Consolidated Reply[1] and herein, this Court is required to dismiss the claims of Irving Picard as trustee (the "Trustee") for the substantively consolidated liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") against Natixis S.A. and Bloom Asset Holdings Fund ("Bloom"), which joined the Transferee Defendants' Motion to Dismiss Based on Extraterritoriality. As stated generally in the Consolidated Reply, in both the Opposition and the Supplemental Opposition, the Trustee makes no effort to argue that the Complaint contains allegations sufficient to create a plausible inference that any subsequent transfers to Natixis S.A. and Bloom occurred in the United States, and therefore, on this basis alone it should be dismissed as to such defendants.[2] In addition, the Proffers are futile because they either (i) advance the same type of allegations addressed by Judge Rakoff in using the CACEIS Complaint as an "example" in *SIPC v. Madoff*, 513 B.R. 222, 232 n.4 (S.D.N.Y. 2014) (the "*Extraterritoriality Decision*") or (ii) otherwise fail even to suggest a domestic transfer.[3]

## I. THE PROFFERED ALLEGATIONS ARE INSUFFICIENT TO PLEAD NATIXIS S.A. RECEIVED A DOMESTIC TRANSFER OR IS A DOMESTIC ENTITY FROM WHICH AN AVOIDABLE TRANSFER MAY BE RECOVERED

The Proffers related to Natixis S.A.'s activity and any transfers it allegedly received are futile. In order to plead that a transfer is within the territorial scope of section 550(a), the Trustee has the burden to allege "specific facts" giving rise to a plausible inference that such a transfer was domestic. *Extraterritoriality Decision*, 513 B.R. at 232 n.4. As discussed below, none of

---

[1] "Consolidated Reply" means the Consolidated Supplemental Memorandum of Law in Support of Transferee Defendants' Motion to Dismiss Based on Extraterritoriality, filed on September 30, 2015.

[2] As used herein, "Opposition" means the Memorandum of Law in Opposition to the Transferee Defendants' Motion to Dismiss Based on Extraterritoriality, filed on June 26, 2015; "Supplemental Opposition" means the Supplemental Memorandum of Law in Opposition to the Motion to Dismiss Based on Extraterritoriality, filed in this adversary proceeding, *Picard v. Natixis et al.*, No. 10-05353 (Bankr. S.D.N.Y.) (the "Action"), on June 27, 2015, Dkt No. 101; and "Complaint" means the complaint filed in the Action. Defendant Tensyr Limited ("Tensyr") is represented by separate legal counsel and filed its own supplemental reply.

[3] As used herein, The "Proffers" mean Proffered Allegations Pertaining to the Extraterritoriality Issue as to Natixis S.A., Bloom and Tensyr Limited, filed in the Action on June 27, 2015, Dkt. No. 102; and "CACEIS Complaint" means the complaint filed in *Picard v. Caceis Bank Luxembourg et al.*, No. 11-02758 (Bankr. S.D.N.Y.).

the Proffers create such an inference. Further, the Trustee does not make out a claim under Title 11 of the United States Code (the "Bankruptcy Code") or any other applicable law pursuant to which Natixis S.A. could possibly be responsible for any transfers it did not physically receive, regardless of allegations related to Natixis Financial Products LLC ("Natixis FP") or any non-affiliated parties, such as Tensy. Therefore the alleged New York contacts of such parties are irrelevant.

### A.  THE TRUSTEE FAILS TO PLEAD ANY DOMESTIC TRANSFERS

The Proffers contain no allegations whatsoever concerning the location of the transfers the Trustee seeks to recover. Indeed, the only Proffers that could be said to even relate to the alleged transfers pertain only to their alleged amounts, long stretches of time over which such transfers may have occurred and the alleged use of a correspondent bank by Fairfield Sentry Limited ("Sentry"), which is irrelevant under the *Extraterritoriality Decision*. Accordingly, the Proffers fail to create any plausible inference of a domestic transfer.

### B.  THE TRUSTEE FAILS TO PLEAD THAT NATIXIS S.A. IS A DOMESTIC ENTITY FROM WHICH RECOVERY IS PERMITTED UNDER SECTION 550(A)(2)

As discussed below, the Proffers related to the conduct and activities of Natixis S.A. and other parties, which do not relate to the transfers themselves, are futile.

#### 1.  *Natixis S.A. Is a Foreign Entity and Its Alleged Transferor, Sentry, Is Also a Foreign Entity*

As alleged by the Trustee, Natixis S.A. is a "French corporate and investment bank" "organized under the laws of" and "based in" France.[4] Complaint ¶¶ 62, 192; *see also* Proffers ¶

---

[4] The entity referred to by the Trustee as Natixis CIB, which was actually known as IXIS Corporate & Investment Bank ("CIB"), no longer exists and its successor-in-interest is Natixis S.A. As alleged by the Trustee, at all relevant times CIB was "an investment and corporate bank based in Paris, France." Complaint ¶ 63. The Trustee described CIB's "swaps" in a section entitled "Other Natixis Swaps (*Not Initiated by Natixis U.S. Entities*)." Complaint at 36 (emphasis added). Accordingly, the Trustee alleged CIB only received BLMIS-related transfers from Sentry. Proffers ¶ 68, Complaint ¶¶ 125, 133, 135, 137-147. The Trustee's single conclusory Proffer in paragraph 68 that CIB was a New York entity is contradicted by the Complaint and should be afforded no weight. *Rieger v.*

2

5.[5] Conversely, the Trustee does not allege that Natixis S.A. was in any way managed or controlled from the United States. Moreover, as discussed below, all of the Trustee's allegations regarding Natixis S.A.'s limited connections to New York (even taken as true) are insufficient to support a plausible inference that Natixis S.A. was a domestic transferee, including, for example, allegations that Natixis S.A. conducted or requested that an affiliate conduct due diligence on Sentry and BLMIS in New York, *see e.g.*, Proffers ¶ 111, or knew that Sentry invested in BLMIS, *see, e.g.*, Proffers ¶ 131.

In addition, Sentry, the only fund expressly alleged to be a transferor to Natixis S.A.,[6] is an investment fund organized under the laws of the British Virgin Islands, Proffers ¶ 122, and therefore is a foreign transferor. The operations and location of Sentry's manager are irrelevant for purposes of determining Sentry's location. Consolidated Reply at 20-23. Further, as discussed in the Consolidated Reply at 23-25, paragraph 57 of the Proffers regarding submission to New York jurisdiction or choice of law provisions in agreements allegedly entered into by Natixis S.A. are irrelevant for purposes of determining the location of Natixis S.A. or any transfers it may have received.

### 2. The Proffers Do Not Support Any Basis for Liability of Natixis S.A. Under Section 550(a)(2) for Transfers Its Affiliates Allegedly Received

The Trustee's allegations that Natixis S.A. is the ultimate corporate parent of Bloom and entities that are located in the United States, Proffers ¶¶ 10, 13, has no bearing on the location of

---

*Drabinsky* (*In re Livent Noteholders Sec. Litig.*), 151 F. Supp. 2d 371, 405-06 (S.D.N.Y. 2001). Any transfers to CIB were therefore foreign and any claims related to transfers allegedly received by it must be dismissed.

[5] By the terms of the order dated December 10, 2014 filed in the main case, Dkt. No. 8800 (the "Scheduling Order"), this motion is limited to the issue of extraterritoriality. Natixis S.A. does not intend to and does not waive any other available defenses, including without limitation lack of personal jurisdiction based on the Supreme Court's ruling in *Daimler AG v. Bauman*, 134 S. Ct. 746 (2014) and as applied by the Second Circuit in *Gucci America, Inc. v Bank of China*, 768 F.3d 122 (2d Cir. 2014). Both *Daimler* and *Gucci* were decided after Natixis S.A. moved to dismiss the Complaint.

[6] *See* Proffers at 6; Opposition Exhibit 2 at 5.

3

the transfers or whether Natixis S.A. is a foreign transferee. Specifically, the Trustee refers to the alleged location and conduct of Natixis FP and Bloom, each of which are separate legal entities distinct from Natixis S.A. and each other, but has not pled any allegations that could support ignoring their legal form. Complaint ¶¶ 62-66. Corporate form may only be ignored in limited circumstances where piercing the corporate veil or alter ego liability is warranted, which requires a party to show that a parent "exercised . . . complete domination" over the subsidiary "in respect to the transaction attacked," and that "this domination was used to commit a fraud or wrong against the plaintiff." *Taizhou Zhongneng Imp. & Exp. Co. v. Koutsobinas*, 509 F. App'x 54, 56-57 (2d Cir. 2013) (internal quotation marks and citations omitted).

The Trustee does not allege any facts showing that Natixis S.A. had "complete domination" over any affiliate located in the United States or Bloom (a foreign entity), but rather he alleges that Natixis S.A. functions as a business in and of itself, and entered its own transactions with its own clients, distinct and separate from the transactions entered by Natixis FP on behalf of its own customers. Indeed, prior to filing the Proffers, the fact that Natixis S.A., Natixis FP and Bloom are separate and distinct entities was recognized and relied on by the Trustee in the Complaint. Nearly all of the allegations in the Complaint, regardless of whether they concerned a defendant's conduct, location or activities, related solely and separately to each such defendant, and no other entity. *See, e.g.*, Complaint ¶¶ 70 - 136. In any event, in the Proffers the Trustee merely alleges, without any detail, that (i) Natixis S.A. had incidental connections with the United States through "communications" and "visits" (though only one visit is alleged), (ii) Natixis S.A. collaborated with and had discussions with its domestic non-moving affiliate, Natixis FP, in connection with their respective BLMIS-related transactions and (iii) affiliates of Natixis S.A. had exposure in the funds invested in BLMIS. Such allegations are

4

insufficient to plead that the corporate veil of an entity can be pierced *see, e.g., 20 Pine Street Homeowners Ass'n. v. 20 Pine Street LLC*, 109 A.D.3d 733, 735 (1st Dep't 2013), and therefore are irrelevant for purposes of determining the location of Natixis S.A. or any transfers it may have received.

### *3.   The Proffers Related to the Tensyr Transaction Are Irrelevant to the Location of Transfers Allegedly Received by Natixis S.A.*

The conclusory Proffers regarding the Tensyr transaction are insufficient to support domestic transfers to Natixis S.A. Contrary to the Trustee's unsubstantiated allegations, as a matter of law, Tensyr was *not* created as a joint venture between Natixis S.A. and Fairfield Greenwich Group ("FGG"). Under New York law, the following five elements are necessary to form a joint venture: "(1) two or more persons must enter into a specific agreement to carry on an enterprise for profit; (2) their agreement must evidence their intent to be joint venturers; (3) each must make a contribution of property, financing, skill, knowledge, or effort; (4) each [purported joint venturer] must have some degree of joint control over the venture; and (5) there must be a provision for the sharing of both profits and losses." *Int'l Equity Invs., Inc. v. Opportunity Equity Partners., Ltd.*, 472 F. Supp. 2d 544, 552 (S.D.N.Y. 2007) (internal quotation marks and citation omitted), *aff'd*, 246 F. App'x 73 (2d Cir. 2011). The Trustee has not even attempted to allege the existence of any of these required elements of a joint venture.

In fact, the Trustee's bald conclusions are actually contradicted by his very own allegations. The Proffers contain merely an unsubstantiated allegation that there were some unspecified "other duties performed and assistance provided by Natixis and the Bank of New York." Proffers ¶ 27. Moreover, the Trustee specifically describes such duties and assistance as "limited." Supplemental Opposition at 5. Thus, the Trustee does not plausibly allege that Natixis S.A. exercised control over Tensyr. *See Int'l Equity Invs.*, 472 F. Supp. 2d at 553 (an

5

"advisory and oversight role" is not tantamount to control). Nonetheless, even if the Trustee had alleged the existence of a joint venture, any alleged activities of Natixis S.A. in connection therewith would be irrelevant for purposes of determining the domesticity of transfers that were made to Natixis S.A. *See*, *e.g*, Proffers ¶ 111 (alleged visit by Natixis S.A. to FGG).

        **C.**      **THE TRUSTEE FAILS TO PLEAD ANY OTHER COGNIZABLE THEORY UNDER WHICH NATIXIS S.A. COULD POSSIBLY BE A DOMESTIC ENTITY FROM WHICH RECOVERY OF TRANSFERS IS PERMITTED**

Given that the Trustee fails to put forth any cognizable theory of recovery against Natixis S.A. as a domestic transferee under section 550(a)(2), the only other potential avenue of recovery against Natixis S.A. would be under section 550(a)(1), but the Trustee has not even attempted to state a claim specifically against Natixis S.A. under that section. First, the Trustee concedes that Natixis S.A. is not an initial transferee under section 550(a)(1). Proffers ¶¶ 1, 6. In addition, the Complaint and the Proffers do not contain allegations or advance any cognizable legal theory suggesting Natixis S.A. is a domestic entity for whose benefit a transfer was made.

Contrary to the Trustee's attempt to link Natixis S.A. to the activity of Natixis FP and Bloom, Natixis S.A. is not the beneficiary of any transfers to Natixis FP or Bloom merely by virtue of its alleged affiliation with them. *See Schechter v. 5841 Bldg. Corp. (In re Hanson)*, 341 B.R. 638, 645-46 (Bankr. N.D. Ill. 2006); *In re Brown Publ'g Co.*, Nos. 10-73295, 12-08193, 2015 Bankr. LEXIS 667, at *26 (Bankr. E.D.N.Y. Mar. 4, 2015); *Dietz v. Spangenberg*, No. 11-2600, 2013 U.S. Dist. LEXIS 123601, at *52 (D. Minn. Aug. 29, 2013); *Turner v. Phoenix Fin., LLC (In re Imageset, Inc.)*, 299 B.R. 709, 718 (Bankr. D. Me. 2003). Therefore, the Proffers regarding the locations or activities of Natixis FP or Bloom or the transfers they may have received are irrelevant to the claims against Natixis S.A. Thus, the Proffers attempting to link Natixis S.A. to its affiliates and their activity, *see supra*, section I.B, are irrelevant for purposes of determining the location of any transfers received by Natixis S.A.

## II. THE PROFFERED ALLEGATIONS ARE INSUFFICIENT TO PLEAD BLOOM IS A DOMESTIC ENTITY FROM WHICH AN AVOIDABLE TRANSFER MAY BE RECOVERED

To the extent the Trustee sufficiently pleads that Bloom is a subsequent transferee of avoidable transfers, the Proffers fail to allege that Bloom is anything more than a foreign transferee that may have received transfers from a foreign transferor and do not support any cognizable theory as to how Bloom could be liable for the return of any domestic transfers that were allegedly received by other entities. Thus, the Proffers regarding the locations and activities of other entities are irrelevant.

### A. BLOOM IS A FOREIGN ENTITY AND ALL OF ITS ALLEGED TRANSFERORS WERE ALSO FOREIGN ENTITIES

As acknowledged by the Trustee, Bloom is an "Irish umbrella trust." Complaint ¶ 65. In addition, each of the funds from which Bloom allegedly received transfers is a foreign entity: Groupement Financier Limited (BVI), Alpha Prime (Bermuda), and Harley (Cayman Islands and Isle of Man) (collectively, "Funds").[7] Proffers ¶¶ 16, 144, 149, 170, Opposition Exhibit 2 at 5. As with Sentry and Harley, the Trustee argues that Groupement and Alpha Prime are domestic through allegations regarding the place of operation of fund managers, activities of fund managers and subscription agreements containing New York choice of law and venue provisions. Such allegations are irrelevant and do not support a plausible inference that their transfers to the defendants occurred in the United States. *See* Consolidated Reply at 20-25. Indeed, the Proffers are devoid of any allegations regarding transfers other than their amount, long stretches of time over which they may have occurred and the use of correspondent bank accounts, which is irrelevant under the *Extraterritoriality Decision*. As discussed below,

---

[7] Judge Rakoff specifically described Harley as a foreign fund invested in BLMIS and the subject of liquidation proceedings in its home country (raising comity concerns), such that recovery of transfers to foreign entities "would constitute an exterritorial application of" section 550. *Extraterritoriality Decision*, 513 B.R. at 226.

7

Proffers related to the location of any of Bloom's affiliates alleged to be involved in redemption requests are irrelevant.

### B. THE LOCATION OF AFFILIATED AND NON-AFFILIATED ENTITIES IS IRRELEVANT FOR PURPOSES OF DETERMINING THE LOCATION OF ANY ALLEGED TRANSFERS TO BLOOM

The Proffers related to Bloom's relationship with domestic non-movant Natixis FP and the Proffers ambiguously directed at "Defendants" generally, do not meet the standards necessary to hold Bloom responsible for transfers allegedly received by any other entity. Accordingly, the location of any other alleged transferee, such as Natixis FP, is irrelevant for determining the location of any transfers to Bloom.

First, there is not a single well-pleaded allegation supporting the fabricated assertion that "Bloom's principal place of business was located in the United States at Natixis FP's New York headquarters." Supplemental Opposition at 11. As an initial matter, contrary to the Proffers, for nearly the entire time of Bloom's relevant activity, Bloom was owned by European International Reinsurance Company Ltd ("EIR"), an entity unaffiliated with the Natixis group. *See* FINRA Response at 4 n.1.[8] The Trustee does not allege EIR created or acquired Bloom for purposes of serving Natixis FP. It was not until December 12, 2007, less than a year prior to the Madoff arrest, that Bloom was acquired by Califano Investments Ltd., a Maltese entity that is an indirect subsidiary of Natixis S.A. *See* FINRA Response at 4 n.1; Complaint ¶ 78. Accordingly, the Trustee's allegations are contradicted by the very documents on which he relies and should be afforded no weight. *Rieger*, 151 F. Supp. 2d at 405-06.

---

[8] The Proffers cite to, rely on and quote from "a February 2009 response letter to a FINRA inquiry." Proffers ¶ 20 (cited as "FINRA Response" herein). Accordingly, the Court in ruling on this motion to dismiss may take into consideration facts alleged in that document. *Eaves v. Designs for Fin., Inc.*, 785 F. Supp. 2d 229, 246 (S.D.N.Y. 2011) (letters expressly referenced in a complaint "are incorporated by reference [therein], and the Court may therefore consider them.") A copy of the FINRA Response is attached as Exhibit 1 to the accompanying Declaration of Joseph Cioffi, dated September 30, 2015.

8

The Trustee does not allege that Bloom is an alter ego of any Natixis-affiliated company located in New York. Even if Bloom purchased Fund shares at the advice of a United States "investment advisor," Natixis North America ("Natixis NA") as alleged by the Trustee, s*ee, e.g.*, Complaint ¶¶ 75, 82; Proffers ¶ 20,[9] any alleged actions taken by Natixis NA in advising Bloom, Proffers ¶ 13-14, are consistent with the role of investment advisors generally. *See*, *e.g.*, *Tannenbaum v. Zeller*, 552 F.2d 402, 405 (2d Cir. 1977). Thus, the Trustee's allegations regarding Natixis NA's involvement with Bloom do not in any way show that Bloom and Natixis FP were "the same entity" for alter ego purposes at the time of any transfers prior to December 12, 2007 – when Bloom and FP were under entirely unrelated ownership – or after.[10]

To support his baseless assertion that Bloom is a domestic transferee, the Trustee only cites one case in a footnote, *SEC v. Gruss*, No. 11 Civ. 2420, 2012 U.S. Dist. LEXIS 114007 (S.D.N.Y. Aug. 9, 2012) (denying motion for leave to appeal), which he mischaracterizes. The claims at issue there involved, among other things, inter-fund transfers between an onshore fund and an offshore fund. Further, the claims were not brought against the funds, but against an officer of the New York-based investment advisor. *See SEC v. Gruss*, 859 F. Supp. 2d 653, 665-66 (S.D.N.Y. May 9, 2012) (denying motion to dismiss). Accordingly, *Gruss* is inapposite and does not support the Trustee's attempt to make alleged transfers to Bloom domestic.

---

[9] The advisor of record was Natixis Securities North America, not Natixis NA. FINRA Response at 4.

[10] Such allegations include (i) an irrelevant reference to how an individual (Eric Raiten) at Natixis NA involved in Bloom's alleged purchase of shares in funds pursuant to the hedging swap (discussed below) was also a Natixis FP employee and (ii) a mischaracterization of a Natixis FP employee's (Benedicte Rabier) statement in an "April 2007 email." In that email, the employee merely asked, "Do we (BLOOM) hold non-voting shares?" Email from B. Rabier to C. Oddy and others, dated April 11, 2007. This is not by any stretch a characterization of Natixis FP and Bloom as "one in [*sic*] the same" as the Trustee erroneously contends.

9

### C. THE PROFFERS DO NOT PLEAD ANY DOMESTIC ENTITY IS A PARTY FOR WHOSE BENEFIT AN ALLEGED TRANSFER TO BLOOM WAS MADE

The Trustee's attempts to show a benefit to Natixis FP under a hedging swap are insufficient to domesticate a "purely foreign" transferee such as Bloom or to make any transfers domestic. *See, e.g.*, Complaint ¶ 65, Proffers ¶¶ 14, 21.[11] Even if Natixis FP were an entity for whose benefit an alleged transfer was made, as a separate legal entity, its status as such would have no bearing on the status of Bloom as a foreign transferee, and therefore, its location must be irrelevant to the determination of the location of any transfers allegedly received by Bloom.

### III. THE PROFFERS CONTAIN THE TYPES OF ALLEGATIONS THAT WERE ADDRESSED AND REJECTED BY JUDGE RAKOFF

The Proffers, including those not addressed above, are also insufficient to allege that any transfers to Natixis S.A. or Bloom were domestic because, as described in the Consolidated Reply and the chart below, they concern the same categories of allegations of which Judge Rakoff was aware in finding that the alleged transfers in the CACEIS Complaint were foreign.

| **Category of Allegation** | **Proffers** | **Corresponding Allegations in the CACEIS Complaint** |
|---|---|---|
| NY choice of law/forum selection | ¶ 57 | ¶ 7 |
| US contacts of funds/managers | ¶¶ 71, 119, 166 | ¶ 7 |
| Knowledge of US-based activity regarding custody of assets and underlying transactions | *See, e.g.*, ¶¶ 35, 38, 44 | ¶¶ 6, 7, 27-29 |
| Activity by US offices, affiliates and agents, including diligence conducted in US | *See, e.g.*, ¶¶ 70, 99, 110 | ¶ 7 |
| Use of correspondent bank accounts by Sentry and other Funds | ¶¶ 78, 89, 96, 113 | ¶ 7 |
| Business dealings with US-based management of Sentry | ¶ 97 | ¶ 7 |
| US-sourced income | ¶¶ 68 | ¶¶ 7, 44, 58 |

---

[11]Bloom entered into a hedging swap with non-movant domestic defendant Natixis FP, whereby Bloom purchased and held shares in foreign funds that were the reference funds in Natixis FP's total return swaps with its clients. *See, e.g.*, FINRA Response at 4, Complaint ¶¶ 74-75, Proffers ¶ 24.

10

**CONCLUSION**

Defendants respectfully request that the Court dismiss with prejudice the counts listed in Exhibit A to the Scheduling Order as against defendants Natixis S.A. (in its own capacity and as successor-in-interest to IXIS CIB) and Bloom Asset Holdings Fund.

Dated: New York, New York
September 30, 2015

DAVIS & GILBERT LLP

  /s/ Joseph Cioffi
Joseph Cioffi
Bruce M. Ginsberg
James R. Serritella
1740 Broadway
New York, New York 10019
Telephone: (212) 468-4800
Facsimile: (212) 468-4888

*Attorneys for Natixis S.A. (in its own capacity and as successor-in-interest to IXIS Corporate & Investment Bank), Natixis Financial Products LLC (as successor-in-interest to Natixis Financial Products Inc.) and Bloom Asset Holdings Fund*