# Exhibit 13

# Ascot Partners, L.P.

## Subscription Agreement

10108442.3

**Confidential**

GCC-P 0432745

### INVESTMENT PROCEDURES

Prospective Investors should read the Confidential Offering Memorandum for Ascot Partners, L.P. (the "Partnership") and the Partnership Agreement of the Partnership as well as this booklet prior to subscribing for Class C limited partnership interests (the "Interests").

If you are interested in purchasing Interests, please complete all applicable pages as indicated below and promptly return this booklet, together with payment, to Ascot Partners L.P., 450 Park Avenue, 32rd Floor, New York, New York, 10022 to reserve Interests in the Partnership:

- [ ] Background Documentation (pages 2-3)

- [ ] Investor Profile Form (pages 13)

- [ ] General Eligibility Representations (pages 14-20)

- [ ] Wiring Instructions (page 21)

- [ ] Signature Page (page 22)

- [ ] Notarization Acknowledgment, if applicable (page 23)

Upon approval of the Investor's subscription, a copy of the executed Signature Page will be countersigned by J. Ezra Merkin (the "General Partner") and returned to the Investor. If the subscription is not accepted, payment will be returned to the prospective Investor.

**For additional information, please contact Mike Autera at 212-838-7200.**

10108442.3

**Confidential**

GCC-P 0432746

BACKGROUND DOCUMENTATION

To comply with applicable anti-money laundering/OFAC rules and regulations and in order to become a limited partner of the Ascot Partners, L.P. (the "Partnership"), you are required to provide the following information:

I.    **Payment Information**

    (a)    Name of Investor:_____

    (b)    Name of the bank from which your payment to the Partnership is being wired (the "Wiring Bank"):
        _____

    (c)    Is the Wiring Bank located in the U.S. or another "FATF Country"*?

             ____Yes          ____No

        If yes, please answer question (d) below.

        If no, please provide the information described in Item II below.

    (d)    Are you a customer of the Wiring Bank?

             ____Yes          ____No

        If yes, you may skip Item II below.

        If no, please provide the information described in Item II below.

II.    **Additional Information**

*Note: this section applies only to investors who responded "no" to question I(b) or I(c) above.*

**The following materials must be provided to the General Partner:**

**For Individual Investors and Participants in Individual Retirement Accounts, Keogh Plans and Other Self-Defined Contribution Plans**

☐    A government issued form of picture identification (*e.g.*, passport or driver's license).

☐    Proof of the current address (*e.g.*, current utility bill), if not included in the form of picture identification.

**For Partnership of Partnerships or Entities that Invest on Behalf of Third Parties Not Located in the U.S. or Other FATF Countries**

☐    A certificate of due formation and organization and continued authorization to conduct business in the jurisdiction of its organization (*e.g.*, certificate of good standing).

☐    An incumbency certificate attesting to the title of the individual executing the Subscription Agreement on behalf of the prospective investor (a sample Incumbency Certificate is attached hereto as <u>Exhibit A</u>).

---

*    As of the date hereof, countries that are members of the Financial Action Task Force on Money Laundering ("FATF Country") are:  Argentina, Australia, Austria, Belgium, Brazil, Canada, Denmark, Finland, France, Germany, Greece, Hong Kong, Iceland, Ireland, Italy, Japan, Luxembourg, Mexico, Kingdom of the Netherlands, New Zealand, Norway, Portugal, Singapore, South Africa, Spain, Sweden, Switzerland, Turkey, United Kingdom, and the United States.

10108442.3

**Confidential**                                                      **GCC-P 0432747**

☐    A completed copy of <u>Exhibit B</u> certifying that the entity has adequate anti-money laundering policies and procedures in place that is consistent with the USA PATRIOT Act, OFAC and other relevant federal, state or foreign anti-money laundering laws and regulations.

☐    A letter of reference from a local office of a reputable bank or brokerage firm which is incorporated, or has its principal place of business located, in the U.S. or other FATF Country certifying that the prospective investor (*i.e.*, the Partnership of Partnerships or the entity investing on behalf of third parties) maintains an account at such bank/brokerage firm for a length of time and containing a statement affirming the prospective investor's integrity (a sample Letter of Reference is attached hereto as <u>Exhibit C</u>).

**For All Other Entity Investors**

☐    A certificate of due formation and organization and continued authorization to conduct business in the jurisdiction of its organization (*e.g.*, certificate of good standing).

☐    An incumbency certificate attesting to the title of the individual executing the Subscription Agreement on behalf of the prospective investor (a sample Incumbency Certificate is attached hereto as <u>Exhibit A</u>).

☐    A letter of reference from a local office of a reputable bank or brokerage firm which is incorporated, or has its principal place of business located, in the U.S. or other FATF Country certifying that the prospective investor (*i.e.*, the Partnership of Partnerships or the entity investing on behalf of third parties) maintains an account at such bank/brokerage firm for a length of time and containing a statement affirming the prospective investor's integrity (a sample Letter of Reference is attached hereto as <u>Exhibit C</u>).

☐    If the prospective investor is a privately-held entity, a completed copy of <u>Exhibit D</u> listing the name of each person who directly, or indirectly through intermediaries, is the beneficial owner of 25% or more of any voting or non-voting class of equity interests of the prospective investor.

☐    If the prospective investor is a trust, a completed copy of <u>Exhibit E</u> listing the current beneficiaries of the trust that have, directly or indirectly, 25% or more of any interest in the trust, the settlor of the trust and the trustees.

**Your Subscription Agreement will not be deemed complete until all of the required documentation listed above is received by the General Partner. Note that exceptions to any of the above requirements may only be made with the consent of the Compliance Officer. Upon approval of the Investor's subscription and verification of the Investor's identity, a copy of the executed Signature Page will be countersigned by the General Partner and returned to the Investor. If the subscription is not accepted, payment will be returned to the prospective Investor.**

**For additional information, please contact Mike Autera at 212-838-7200.**

**Confidential**

GCC-P 0432748

SUBSCRIPTION AGREEMENT

Ascot Partners, L.P.
450 Park Avenue, 32nd Floor
New York, New York 10022

Attn.: Mike Autera

**Re:    Ascot Partners, L.P.—Issuance of Limited Partnership Interests**

Dear Sir/Madam:

The undersigned (the "Investor") wishes to become a limited partner in Ascot Partners, L.P. (the "Partnership"), a Delaware limited partnership, and to purchase Class C limited partnership interests ("Interests") in the Partnership upon the terms and conditions set forth herein, in the Confidential Offering Memorandum of the Partnership, as the same may be updated or modified from time to time (the "Memorandum"), and in the Second Amended and Restated Limited Partnership Agreement of the Partnership, as the same may be amended from time to time (the "Partnership Agreement").

Accordingly, the Investor agrees as follows:

**I.    SUBSCRIPTION FOR INTERESTS**

**(A)**    The Investor agrees to become a limited partner of the Partnership and, in connection therewith, commits to purchase Interests in, and make a capital contribution ("Capital Contribution) to, the Partnership. The minimum initial subscription for an Interest in the Partnership is $500,000 subject to the discretion of the General Partner to accept a lower amount. Payment of the Investor's initial Capital Contribution in good funds must be received by the Partnership prior to the closing date established by the Partnership for the subscription (the "Closing Date"). Subject to any legal or regulatory restrictions before the Closing Date, the Investors payment (the "Payment") will be held by the Partnership in a non-interest bearing account.

**(B)**    The Investor understands and agrees that the Partnership's general partner, J. Ezra Merkin (the "General Partner") reserves the right to reject this subscription for Interests for any reason or no reason, in whole or in part, and at any time prior to its acceptance. If the subscription is rejected, the Payment will be returned promptly to the Investor without deduction and without interest and this Subscription Agreement shall have no force or effect. Upon acceptance of this subscription by the General Partner, the undersigned shall become a limited partner of the Partnership.

**II.    REPRESENTATIONS AND COVENANTS OF THE INVESTOR**

**(A)**    The Investor will not sell or otherwise transfer the Interests without registration under the Securities Act of 1933, as amended (the "Securities Act"), or an exemption therefrom. The Investor understands and agrees that it must bear the economic risk of its investment for an indefinite period of time (subject to limited rights of withdrawal provided in the Partnership Agreement) because, among other reasons, the Interests have not been registered under the Securities Act or under the securities laws of certain states and, therefore, cannot be resold, pledged, assigned or otherwise disposed of unless it is so registered or an exemption from registration is available. The Investor understands that the Partnership is under no obligation to register the Interests on its behalf or to assist it in complying with any exemption from registration under the Securities Act. Furthermore, the Interests can only be transferred with the prior authorization of the General Partner, which may be withheld in the General Partner's sole discretion. The Investor understands that the General Partner may require a limited partner to withdraw from the Partnership in accordance with the Partnership Agreement.

10108442.3

4

**Confidential**

(B)    The Investor has received, carefully read and understands the Partnership Agreement and the Memorandum outlining, among other things, the organization and investment objectives and policies of, and the risks and expenses of an investment in, the Partnership. The Investor acknowledges that it has made an independent decision to invest in the Partnership and that, in making its decision to subscribe for Interests, the Investor has relied solely upon the Memorandum, the Partnership Agreement and independent investigations made by the Investor. The Investor is not relying on the Partnership, the General Partner or any other person or entity with respect to the legal, tax and other economic considerations involved in this investment other than the Investor's own advisers. The Investor's investment in the Interests is consistent with the investment purposes, objectives and cash flow requirements of the Investor and will not adversely affect the Investor's overall need for diversification and liquidity.

The Investor acknowledges that it is not subscribing pursuant hereto for Interests as a result of or pursuant to (i) any advertisement, article, notice or other communications published in any newspaper, magazine or similar media (including any internet site whose information about the Partnership is not password protected) or broadcast over television or radio, or (ii) any seminar or meeting whose attendees, including the Investor, had been invited as a result of, or pursuant to any of the foregoing.

The Investor has been provided an opportunity to obtain any additional information concerning the offering, the Partnership and all other information to the extent the Partnership or the General Partner possesses such information or can acquire it without unreasonable effort or expense, and has been given the opportunity to ask questions of, and receive answers from, the General Partner concerning the terms and conditions of the offering and other matters pertaining to this investment.

(C)    The Investor has not reproduced, duplicated or delivered the Memorandum or this Subscription Agreement to any other person, except professional advisers to the Investor or as instructed by the General Partner. Notwithstanding the foregoing, the Investor (and each employee, representative, or other agent of such investor) may disclose to any and all persons, without limitation of any kind, the tax treatment and tax structure of (i) the Partnership and (ii) any of its transactions, and all materials of any kind (including opinions or other tax analyses) that are provided to the Investor relating to such tax treatment and tax structure.

(D)    The Investor has such knowledge and experience in financial and business matters that the Investor is capable of evaluating the merits and risks of the Investor's investment in the Partnership and is able to bear such risks, and has obtained, in the Investor's judgment, sufficient information from the General Partner to evaluate the merits and risks of such investment. The Investor has evaluated the risks of investing in the Partnership, understands there are substantial risks of loss incidental to the purchase of Interests and has determined that the Interests are a suitable investment for the Investor.

(E)    The Investor is aware of the limited provisions for transferability and withdrawal from the Partnership and has read the sections of the Memorandum entitled "Outline of Partnership Agreement-Withdrawals of Capital," "Outline of Partnership Agreement-Assignability of Interests" and "Limitations on Transferability; Suitability Requirements." The Investor has no need for liquidity in this investment, can afford a complete loss of the investment in the Interests and can afford to hold the investment for an indefinite period of time. The Investor understands that it may withdraw all or a portion of its Interests at the end of the calendar quarter after the two-year anniversary of the date such Interests were purchased (the "First Withdrawal Date") and, thereafter, on each anniversary of the First Withdrawal Date upon 45 days prior written notice to the General Partner.

(F)    The Investor is acquiring the Interests for its own account, for investment purposes only and not with a view toward distributing or reselling the Interests in whole or in part.

101081.42.3

5

**Confidential**

(G)    The Investor understands that:

    (1)    No federal or state agency has passed upon the Interests or made any findings or determination as to the fairness of this investment; and

    (2)    The representations, warranties, agreements, undertakings and acknowledgments made by the Investor in this Agreement (i) will be relied upon by the Partnership and the General Partner in determining the Investor's suitability as a purchaser of Interests and the Partnership's compliance with federal and state securities laws, and shall survive the undersigned's admission as an Investor, and (ii) will be deemed to be made as of the date this agreement is accepted by the General Partner and as of the date of each Capital Contribution.

(H)    The Investor has all requisite power, authority and capacity to acquire and hold the Interests and to execute, deliver and comply with the terms of each of the instruments required to be executed and delivered by the Investor in connection with the Investor's subscription for the Interests, including this Agreement, and such execution, delivery and compliance does not conflict with, or constitute a default under, any instruments governing the Investor, any law, regulation or order, or any agreement to which the Investor is a party or by which the Investor may be bound. If the Investor is an entity, the person executing and delivering each of such instruments on behalf of the Investor has all requisite power, authority and capacity to execute and deliver such instruments, and, upon request by the Partnership or the General Partner, will furnish to the Partnership true and correct copies of any instruments governing the Investor, including all amendments thereto.

(I)    All information which the Investor has provided to the Partnership or the General Partner concerning the Investor, the Investor's status, financial position and knowledge and experience of financial, tax and business matters, or, in the case of an Investor that is an entity, the knowledge and experience of financial, tax and business matters of the person making the investment decision on behalf of such entity, is correct and complete as of the date set forth herein.

(J)    The Investor understands that the value of an Investor's capital account and withdrawals therefrom under the Partnership Agreement, and the performance of the Partnership, may be based on unaudited and in some cases, estimated, valuations of the Partnership's investments and that valuations provided in an Investor's account statement may be an unaudited, estimated value.

(K)    The Investor understands that the Partnership will not register as an investment company under the Investment Company Act of 1940, as amended (the "Company Act"), nor will it make a public offering of its securities within the United States. The Investor understands that the Partnership complies with Section 3(c)(7) of the Company Act, which permits private investment companies (such as the Partnership) to sell their interests, on a private placement basis, to an unlimited number of investors that are "qualified purchasers" under the Company Act. If the Investor is an entity, the Investor represents that (i) it was not formed for the purpose of investing in the Partnership, (ii) it does not invest more than 40% of its total assets in the Partnership, (iii) each of its beneficial owners participates in investments made by the Investor *pro rata* in accordance with its interest in the Investor and, accordingly, its beneficial owners cannot opt in or out of investments made by the Investor, and (iv) its beneficial owners did not and will not contribute additional capital (other than previously committed capital) for the purpose of purchasing the Interests.

(L)    If applicable, the Investor has identified its status as a Benefit Plan Investor (as defined below) to the Partnership on page 14. If the Investor has identified to the Partnership on page 14 that it is not currently a Benefit Plan Investor, but becomes a Benefit Plan Investor, the Investor shall forthwith disclose to the General Partner promptly in writing such fact and also the percentage of such Investor's equity interests

10108442.3

6

**Confidential**

**GCC-P 0432751**

held by Benefit Plan Investors.  For these purposes, a "Benefit Plan Investor," as defined under the Department of Labor Regulation Section 2510.3-101(f), includes, but is not limited to, retirement and other employee benefit plans subject to ERISA and employee benefit plans and arrangements not subject to ERISA, such as U.S. and non-U.S. governmental plans, church plans, non-U.S. retirement, health and welfare plans and individual retirement accounts, as well as entities whose underlying assets include plan assets by reason of investment by plans in such entities.

(M)    If the Investor is an insurance company and is investing the assets of its general account in the Partnership, it has identified on page 15 whether the assets underlying the general account constitute plan assets within the meaning of ERISA.  The Investor agrees to promptly notify the General Partner if there is a change in the percentage of the general account's assets that constitute plan assets within the meaning of ERISA and shall disclose such new percentage ownership.

(N)    The Investor acknowledges, understands and agrees that the General Partner has authority to allocate transaction costs to obtain research and brokerage products and services as set forth in the Memorandum. By signing this Subscription Agreement, the Investor expressly consents to any arrangement pursuant to which the General Partner obtains such products and services and other products and services.

(O)    The Investor understands that Schulte Roth & Zabel LLP acts as counsel to the Partnership, the General Partner and their affiliates.  The Investor also understands that, in connection with this offering of Interests and subsequent advice to the Partnership, the General Partner and their affiliates, Schulte Roth & Zabel LLP will not be representing investors in the Partnership, including the Investor, and no independent counsel has been retained to represent investors in the Partnership.

(P)    If the Investor is a "charitable remainder trust" within the meaning of Section 664 of the Internal Revenue Code, the Investor has advised the General Partner in writing of such fact and the Investor acknowledges that it understands the risks, including specifically the tax risks, if any, associated with its investment in the Partnership.

(Q)    The Investor also understands and agrees that, although the Partnership will use its reasonable efforts to keep the information provided in the answers to this Subscription Agreement strictly confidential, the Partnership may present this Subscription Agreement and the information provided in answers to it to such parties as it deems advisable if called upon to establish the availability under any applicable law of an exemption from registration of the Interests, the compliance with applicable law and any relevant exemptions thereto by the Partnership and the General Partner or if the contents thereof are relevant to any issue in any action, suit, or proceeding to which the Partnership and the General Partner are a party or by which they are or may be bound.

## III.    GENERAL

(A)    The Investor agrees to indemnify and hold harmless the Partnership, the General Partner and each of their respective partners, members, directors, officers and agents, and each other person, if any, who controls, is controlled by, or is under common control with, any of the foregoing, within the meaning of Section 15 of the Securities Act, against any and all loss, liability, claim, damage and expense whatsoever (including all expenses reasonably incurred in investigating, preparing or defending against any claim whatsoever) arising out of or based upon (i) any false representation or warranty made by the Investor, or breach or failure by the Investor to comply with any covenant or agreement made by the Investor, in this Subscription Agreement or in any other document furnished by the Investor to any of the foregoing in connection with this transaction or (ii) any action for securities law violations instituted by the Investor which is finally resolved by judgment against the Investor.

(B)    The Investor hereby appoints the General Partner of the Partnership as its true and lawful representative and attorney-in-fact, in its name, place and stead to make, execute, sign, acknowledge, swear to and file:

10108442.3

7

**Confidential**

GCC-P 0432752

(1)     any partnership certificate, business certificate, fictitious name certificate, or amendment thereto, or other instrument or document of any kind necessary or desirable to accomplish the business, purpose and objectives of the Partnership, or required by any applicable federal, state, local or foreign law;

(2)     the Partnership Agreement and any amendment duly approved as provided therein; and

(3)     any and all instruments, certificates and other documents which may be deemed necessary or desirable to effect the winding-up and termination of the Partnership (including a certificate of cancellation of the certificate of limited partnership).

This power of attorney is coupled with an interest, is irrevocable, and shall survive and shall not be affected by the subsequent death, disability, incompetency, termination, bankruptcy, insolvency or dissolution of the Investor; *provided, however,* that this power of attorney will terminate upon the substitution of another Investor for all of the Investor's investment in the Partnership or upon the withdrawal of the Investor from the Partnership. The Investor hereby waives any and all defenses which may be available to contest, negate or disaffirm the actions of the General Partner taken in good faith under such power of attorney.

(C)     If any provision of this Subscription Agreement is invalid or unenforceable under any applicable law, then such provision shall be deemed inoperative to the extent that it may conflict therewith and shall be deemed modified to conform with such applicable law. Any provision hereof which may be held invalid or unenforceable under any applicable law shall not affect the validity or enforceability of any other provisions hereof, and to this extent the provisions hereof shall be severable.

(D)     **Prospective Investors should check the OFAC website at <http://ww.treas.gov/ofac> before making the following representations.**

The Investor represents that the amounts contributed by it to the Partnership were not and are not directly or indirectly derived from activities that may contravene federal, state or international laws and regulations, including anti-money laundering laws and regulations.

U.S. Federal regulations and executive orders administered by the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC") prohibit, among other things, the engagement in transactions with, and the provision of services to, certain foreign countries, territories, entities and individuals.[*] The lists of OFAC prohibited countries, territories, persons and entities can be found on the OFAC website at <http://www.treas.gov/ofac>. In addition, the programs administered by OFAC ("OFAC Programs") prohibit dealing with individuals or entities in certain countries regardless of whether such individuals or entities appear on the OFAC lists.

The Investor represents and warrants that, to the best of its knowledge, none of:

(i)     the Investor;

(ii)     any person controlling or controlled by the Investor;

(iii)     if the Investor is a privately held entity, any person having a beneficial interest in the Investor; or

---

[*]    These individuals include specially designated nationals, specially designated narcotics traffickers and other parties subject to OFAC sanctions and embargo programs.

10108442.3

8

(iv) any person for whom the Investor is acting as agent or nominee in connection with this investment.

is a country, territory, individual or entity named on an OFAC list, nor is a person or entity prohibited under the OFAC Programs.

Please be advised that the Partnership may not accept any amounts from a prospective investor if it cannot make the representation set forth in the preceding paragraph.  If an existing Investor can not make these representations, the Partnership may require the withdrawal of the Investor's Interests.

The Investor agrees promptly to notify the Partnership should the Investor become aware of any change in the information set forth in these representations.  The Investor is advised that, by law, the Partnership may be obligated to "freeze the account" of such Investor, either by prohibiting additional investments from the Investor, declining any withdrawal requests and/or segregating the assets in the account in compliance with governmental regulations, and the Partnership may also be required to report such action and to disclose the Investor's identity to OFAC.  The Investor further acknowledges that the General Partner may, by written notice to the Investor, suspend the withdrawal rights of such Investor if the General Partner reasonably deems it necessary to do so to comply with anti-money laundering regulations applicable to the Partnership, the General Partner or any of the Partnership's other service providers.

The Investor represents and warrants that, to the best of its knowledge, none of:

(i) the Investor;

(ii) any person controlling or controlled by the Investor;

(iii) if the Investor is a privately held entity, any person having a beneficial interest in the Investor; or

(iv) any person for whom the Investor is acting as agent or nominee in connection with this investment.

is a senior foreign political figure,[*] or any immediate family member[**] or close associate[***] of a senior foreign political figure as such terms are defined in the footnotes below.

(E) If the Investor is a non-U.S. banking institution (a "Foreign Bank") or if the Investor receives deposits from, makes payments on behalf of, or handles other financial transactions related to a Foreign Bank, the Investor represents and warrants to the Partnership that:

(i) the Foreign Bank has a fixed address, other than solely an electronic address, in a country in which the Foreign Bank is authorized to conduct banking activities;

---

[*] A "senior foreign political figure" is defined as a senior official in the executive, legislative, administrative, military or judicial branches of a non-U.S. government (whether elected or not), a senior official of a major non-U.S. political party, or a senior executive of a non-U.S. government-owned corporation.  In addition, a "senior foreign political figure" includes any corporation, business or other entity that has been formed by, or for the benefit of, a senior foreign political figure.

[**] "Immediate family" of a senior foreign political figure typically includes the figure's parents, siblings, spouse, children and in-laws.

[***] A "close associate" of a senior foreign political figure is a person who is widely and publicly known to maintain an unusually close relationship with the senior foreign political figure, and includes a person who is in a position to conduct substantial U.S. and non-U.S. financial transactions on behalf of the senior foreign political figure.

10108442.3

9

Confidential

GCC-P 0432754

    (ii)       the Foreign Bank employs one or more individuals on a full-time basis;

    (iii)      the Foreign Bank maintains operating records related to its banking activities;

    (iv)      the Foreign Bank is subject to inspection by the banking authority that licensed the Foreign Bank to conduct banking activities; and

    (v)       the Foreign Bank does not provide banking services to any other Foreign Bank that does not have a physical presence in any country and that is not a regulated affiliate.

**(F)**    The Investor understands and agrees that any withdrawal proceeds paid to it will be paid to the same account from which the Investor's investment in the Partnership was originally remitted, unless the General Partner, in its sole discretion, agrees otherwise.

**(G)**    The Investor agrees that, upon the request of the Partnership or the General Partner, it will provide such information as the Partnership or the General Partner require to satisfy applicable anti-money laundering laws and regulations, including, without limitation, the Investor's anti-money laundering policies and procedures, background documentation relating to its directors, trustees, settlors and beneficial owners, and audited financial statements, if any.

## IV.    TRUSTEE, AGENT, REPRESENTATIVE OR NOMINEE

**(A)**    If the Investor is acting as trustee, agent, representative or nominee for a subscriber (a "Beneficial Owner"), the Investor understands and acknowledges that the representations, warranties and agreements made herein are made by the Investor (A) with respect to the Investor *and* (B) with respect to the Beneficial Owner. The Investor further represents and warrants that it has all requisite power and authority from said Beneficial Owner to execute and perform the obligations under this Subscription Agreement. The Investor also agrees to indemnify the Partnership, General Partner and their agents for any and all costs, fees and expenses (including legal fees and disbursements) in connection with any damages resulting from the Investor's misrepresentation or misstatement contained herein, or the assertion of the Investor's lack of proper authorization from the Beneficial Owner to enter into this Subscription Agreement or perform the obligations hereof.

**(B)**    If the Investor will enter into a swap, structured note or other derivative instrument, the return from which is based in whole or in part on the return of the Partnership (the "Swap") with a third party (a "Third Party"), the Investor represents and warrants that with respect to a Third Party entering into a Swap: (a) the Third Party is authorized under its constitutional documents (e.g., certificate of incorporation, by-laws, partnership agreement or trust agreement) and applicable law to enter into the Swap and would also be so authorized to invest directly into the Partnership; (b) the Third Party has received and reviewed a copy of the Memorandum, the Partnership Agreement and the Subscription Agreement; (c) the Third Party acknowledges that the Partnership and the General Partner and their respective representatives are not responsible for the legality, suitability or tax consequences of the Swap and that the Investor is not an agent of any of them; and (d) the Third Party is an "eligible contract participant" as defined under the Commodities Exchange Act, as amended, an "accredited investor" under Regulation D promulgated under the Securities Act and a "qualified purchaser" under the Company Act. The Investor also agrees to indemnify the Partnership and the General Partner and their respective partners, members, directors, officers and agents for any and all costs, fees and expenses (including legal fees and disbursements) in connection with any damages resulting from the Investor's misrepresentation or misstatement in connection with the swap. Nothing herein constitutes an agreement or statement by the Partnership as to the legality of a Swap or the suitability of a Swap for the Third Party.

10108442.3

**Confidential**

GCC-P 0432755

V.    **ADDITIONAL INFORMATION AND SUBSEQUENT CHANGES IN THE FOREGOING REPRESENTATIONS**

(A)    Each of the Partnership and the General Partner may request from the Investor such additional information as it may deem necessary to evaluate the eligibility of the Investor to acquire Interests, and may request from time to time such information as it may deem necessary to determine the eligibility of the Investor to hold Interests or to enable the General Partner to determine the Partnership's or the General Partner's compliance with applicable regulatory requirements or the Partnership's tax status, and the Investor agrees to provide such information as may reasonably be requested.

(B)    The Investor agrees to notify the General Partner promptly if there is any change with respect to any of the information or representations made herein and to provide the General Partner with such further information as the General Partner may reasonably require.

(C)    This Subscription Agreement may be executed through the use of separate signature pages or in any number of counterparts. Each counterpart shall, for all purposes, constitute one agreement binding on all the parties, notwithstanding that all parties do not execute the same counterpart.

(D)    **GEORGIA SUBSCRIBERS.** The Interests have been issued or sold in reliance on Paragraph (13) of Code Section 10-5-9 of the Georgia Securities Act of 1973, and may not be sold or transferred except in a transaction which is exempt under such act or pursuant to an effective registration under such act.

10108442.3

11

ASCOT PARTNERS, L.P.

INVESTOR PROFILE FORM

**ALL INVESTORS MUST COMPLETE THIS PAGE.**

Name of Investor (*Please Print or Type*)          Social Security Number/Tax I.D. Number

$

Amount of Subscription

Type of Investor—Please check one:

☐ Individual          ☐ Registered Investment Company    ☐ Joint Tenants (with Rights of Survivorship)
☐ Partnership         ☐ Limited Liability Company          ☐ Tenants in Common
☐ Corporation         ☐ Trust

Other —Specify:_____

Full Mailing Address (*Exactly as it should appear on labels*):

☐ Mr.    ☐ Mrs.    ☐ Ms.    ☐ Miss    ☐ Dr.    ☐ Other _____

Telephone number                          Fax number

Residence (if an individual) or Principal Place of Business (if an entity) Address (*No P.O. Boxes Please, if any*):

Telephone number                          Fax number

Address of Authorized Representative/Agent (*No P.O. Boxes Please, if any*):

Telephone number                          Fax number

10108442.3

12

ASCOT PARTNERS, L.P.

INVESTOR PROFILE FORM

Attention:_____

E-Mail Address:_____

**COMMUNICATIONS TO INVESTOR**

Please send all communications to *(Please initial one):*

_____        Mailing Address
*Initial*

_____        Residence or Principal Place of Business Address
*Initial*

_____        Authorized Representative/Agent
*Initial*

10108442.3

13

**Confidential**

**GCC-P 0432758**

**ASCOT PARTNERS, L.P.**

**GENERAL ELIGIBILITY REPRESENTATIONS**

**PLEASE COMPLETE ALL APPROPRIATE ITEMS.**

I.    **INVESTOR INFORMATION**

   **(A)**    Formation date of entity, if applicable: _____

   **(B)**    If an entity, the Investor is organized under the laws of: _____

   **(C)**    Was the Investor referred to the Partnership by a placement agent?    Yes ☐    No ☐

   If yes, please provide name of placement agent: _____

   **(D)**    The Investor hereby warrants and represents that:

   *(Please initial one and complete blanks)*

   _____    1.    If the Investor is a corporation, a partnership, a limited liability company, a
   *Initial*         trust or other legal entity, it is:
                     organized under the laws of: _____

                     and has its principal place of business in: _____

   _____    2.    If beneficial ownership of the Investor is held by an individual, such
   *Initial*         individual is of legal age and is a resident of: _____
                     _____

   **(E)**    If the Investor is an entity, the Investor hereby certifies to either 1 or 2 below:

   *(Please initial one)*

   _____    1.    If the Investor is a corporation, partnership, limited liability company, trust or
   *Initial*         other entity, less than 25% of the value of each class of equity interests in the
                     Investor (excluding from the computation interests held by any individual or
                     entity (other than a Benefit Plan Investor) with discretionary authority or
                     control over the assets of the Investor and of any individual or entity who
                     provides investment advice for a fee (direct or indirect) with respect to the
                     assets of the Investor or any affiliate of such person or entity) is held by
                     Benefit Plan Investors (as defined in Section II(M) of this Subscription
                     Agreement.

   _____    2.    Twenty-five percent or more of the value of any class of equity interests in the
   *Initial*         Investor (excluding from the computation interests held by any individual or
                     entity (other than a Benefit Plan Investor) with discretionary authority or
                     control over the assets of the Investor and of any individual or entity who
                     provides investment advice for a fee (direct or indirect) with respect to the
                     assets of the Investor or any affiliate of such person or entity) is held by
                     Benefit Plan Investors;

                     and

                     the Investor, ____ (is) ____ (is not) subject to the fiduciary responsibility
                     provisions of ERISA and/or the prohibited transaction provisions of Section
                     4975 of the Code.

10108442.3

14

**Confidential**

**GCC-P 0432759**

ASCOT PARTNERS, L.P.

GENERAL ELIGIBILITY REPRESENTATIONS

(F)     If the Investor is an insurance company, the Investor hereby certifies to either 1 or 2 below:

*(Please initial one)*

_____     1.     The Investor is an insurance company investing the assets of its general
*Initial*            account in the Partnership but none of the underlying assets of the Investor's
                     general account constitutes plan assets within the meaning of ERISA.

_____     2.     The Investor is an insurance company investing in the Partnership with
*Initial*            general account assets and a portion of the underlying assets of the Investor's
                     general account constitutes plan assets within the meaning of ERISA; and

                     ____% of its general account constitute plan assets within the meaning of
                     ERISA.

10108442.3

15

**Confidential**

**GCC-P 0432760**

ASCOT PARTNERS, L.P.

GENERAL ELIGIBILITY REPRESENTATIONS

---

**II.    CERTIFICATION OF NON-FOREIGN STATUS & SUBSTITUTE FORM W-9**

For All Investors

The Investor certifies that it is a U.S. person and that it is **NOT** (1) a non-resident alien or (2) a foreign corporation, foreign partnership, foreign trust or foreign estate (as those terms are defined in the Internal Revenue Code of 1986, as amended, including income tax regulations) for purposes of U.S. Federal income taxation. The Investor agrees to notify the Partnership within 60 days of the date it becomes a foreign person or entity. The Investor further certifies that its name, U.S. taxpayer identification number, home address (in the case of an individual) and business address (in the case of an entity), as they appear on the Investor Profile Form in this Subscription Agreement, are true and correct. The Investor further certifies that it is **NOT** subject to backup withholding because either (1) it is exempt from backup withholding, (2) it has not been notified by the Internal Revenue Service ("IRS") that it is subject to backup withholding as a result of a failure to report all interest or dividends, or (3) the IRS has notified it that it is no longer subject to backup withholding.[*] The Investor makes these certifications under penalty of perjury and understands that they may be disclosed to the IRS by the Partnership and that any false statement contained in this paragraph could be punished by fine and/or imprisonment.

_____        _____
Signature                          Date

---

[*] The Investor must cross out the preceding sentence if it has been notified by the IRS that it is currently subject to backup withholding because it has failed to report all interest and dividends on its tax return.

10108442.3

16

**Confidential**

GCC-P 0432761

ASCOT PARTNERS, L.P.

GENERAL ELIGIBILITY REPRESENTATIONS

### III.    ACCREDITED INVESTOR STATUS

The Investor certifies that the Investor is an "accredited investor" as defined in Regulation D promulgated under the Securities Act because:

*(Please initial as appropriate)*

**(A)**        **Individuals**

_____
*Initial*

1.    The Investor has an individual net worth, or joint net worth with his or her spouse, in excess of $1,000,000.  As used herein, "net worth" means the excess of total assets at fair market value, including home,* home furnishings and automobiles, over total liabilities; or

_____
*Initial*

2.    The Investor had individual income (exclusive of any income attributable to his or her spouse) of more than $200,000 in each of the past two years, or joint income with his or her spouse of more than $300,000 in each of those years, and reasonably expects to reach the same income level in the current year.**

**(B)**        **Corporations, Partnerships or Limited Liability Companies**

_____
*Initial*

1.    The Investor has total assets in excess of $5,000,000 and was not formed for the specific purpose of acquiring the Interests offered; or

_____
*Initial*

2.    Each of the Investor's equity owners is an accredited investor for either of the following reasons:

(a)    the equity owner of the Investor has an individual net worth, or joint net worth with his or her spouse, in excess of $1,000,000.  As used herein, "net worth" means the excess of total assets at fair market value, including home,* home furnishings and automobiles, over total liabilities,

(b)    the equity owner of the Investor has individual income (exclusive of any income

---

* Notwithstanding anything to the contrary herein, for purposes of determining "net worth," the principal residence owned by an individual shall be valued either at (A) cost, including the cost of improvements, net of current encumbrances upon the property, or (B) the appraised value of the property as determined upon written appraisal used by an institutional lender making a loan to the individual secured by the property, including the cost of subsequent improvements, net of current encumbrances upon the property.  "Institutional lender" means a bank, savings and loan company, industrial loan company, credit union or personal property broker or a company whose principal business is as a lender secured by real property and which has such loans receivable in the amount of $2,000,000 or more.

** For purposes of this Subscription Agreement, individual income means adjusted gross income, as reported for federal income tax purposes, less any income attributable to a spouse or to property owned by a spouse, increased by the following amounts (but not including any amounts attributable to a spouse or to property owned by a spouse): (i) the amount of any tax-exempt interest income under Section 103 of the United States Internal Revenue Code of 1986, as amended (the "Code"), received; (ii) the amount of losses claimed as a limited partner in a limited partnership as reported on Schedule E of Form 1040; (iii) any deduction claimed for depletion under Section 611 *et seq.* of the Code; (iv) amounts contributed to an Individual Retirement Account (as defined in the Code) or Keogh retirement plan; (v) alimony paid; and (vi) any elective contributions to a cash or deferred arrangement under Section 401(k) of the Code.

Notwithstanding anything to the contrary herein, for purposes of determining "net worth," the principal residence owned by an individual shall be valued either at: (i) cost, including the cost of improvements, net of current encumbrances upon the property; or (ii) the appraised value of the property as determined upon written appraisal used by an institutional lender making a loan to the individual secured by the property, including the cost of subsequent improvements, net of current encumbrances upon the property.  "Institutional lender" means a bank, savings and loan company, industrial loan company, credit union or personal property broker or a company whose principal business is as a lender secured by real property and which has such loans receivable in the amount of $2,000,000 or more.

10108442.3

17

**Confidential**

GCC-P 0432762

ASCOT PARTNERS, L.P.

GENERAL ELIGIBILITY REPRESENTATIONS

attributable to his or her spouse) of more than $200,000 in each of the past two years, or joint income with his or her spouse of more than $300,000 in each of those years, and reasonably expects to reach the same income level in the current year.[**] *The General Partner, in its sole discretion, may request information regarding the basis on which such equity owners are accredited,* and/or

(c) the equity owner of the Investor is an entity that would be an accredited investor as set forth under III (B), (C), (D) and/or (E)

**(C)**         **Trusts**

_____
*Initial*

1.    The Investor has total assets in excess of $5,000,000, was not formed for the specific purpose of acquiring the Interests offered and its purchase is directed by a sophisticated person. *As used in the foregoing sentence, a "sophisticated person" is one who has such knowledge and experience in financial and business matters that it is capable of evaluating the merits and risks of the prospective investment;* or

_____
*Initial*

2.    The Investor is: (a) a bank as defined in Section 3(a)(2) of the Securities Act, a savings and loan association, or other institution as defined in Section 3(a)(5)(A) of the Securities Act; (b) acting in a fiduciary capacity; and (c) subscribing for the purchase of the interests being offered on behalf of a trust account or accounts; or

_____
*Initial*

3.    The Investor is a revocable trust that may be amended or revoked at any time by the grantors thereof, and all of the grantors are accredited investors as described herein. *The General Partner, in its sole discretion, may request information regarding the basis on which such equity owners are accredited.*

**(D)**         **Banks, Savings and Loans and Similar Institutions**

_____
*Initial*

The Investor is a bank as defined in Section 3(a)(2) of the Securities Act or a savings and loan association, or other institution as defined in Section 3(a)(5)(A) of the Securities Act acting in its individual capacity.

**(E)**         **Insurance Companies**

_____
*Initial*

The Investor is an insurance company as defined in Section 2(13) of the Securities Act.

---

[**]   For purposes of this Subscription Agreement, individual income means adjusted gross income, as reported for federal income tax purposes, less any income attributable to a spouse or to property owned by a spouse, increased by the following amounts (but not including any amounts attributable to a spouse or to property owned by a spouse):  (i) the amount of any tax-exempt interest income under Section 103 of the Code, received; (ii) the amount of losses claimed as a limited partner in a limited partnership as reported on Schedule E of Form 1040; (iii) any deduction claimed for depletion under Section 611 *et seq.* of the Code; (iv) amounts contributed to an Individual Retirement Account (as defined in the Code) or Keogh retirement plan; (v) alimony paid; and (vi) any elective contributions to a cash or deferred arrangement under Section 401(k) of the Code.

**Confidential**                                                                                            GCC-P 0432763

ASCOT PARTNERS, L.P.

GENERAL ELIGIBILITY REPRESENTATIONS

## IV.    QUALIFIED PURCHASER STATUS

The Investor hereby certifies that the Investor is a "qualified purchaser" under the Company Act because:

**(A)**    **Individuals**

_____
*Initial*    The Investor is a qualified purchaser because he/she (alone, or together with his/her spouse, if investing jointly) owns not less than $5,000,000 in investments.[*]

**(B)**    **"Family" Corporations, Trusts or Other "Family" Entities**

_____
*Initial*    The Investor: (i) was not formed for the specific purpose of investing in the Partnership, (ii) owns not less than $5,000,000 in investments; and (iii) is owned directly or indirectly by or for: (a) two or more natural persons who are related as siblings or spouse (including former spouses), or direct lineal descendants by birth or adoption; (b) spouses of such persons; (c) the estates of such persons; or (d) foundations, Section 501(c)(3) organizations or trusts established by or for the benefit of such persons.

**(C)**    **Trusts (Other Than Trusts That Qualify under Sections (B) or (D) hereof)**

_____
*Initial*    The Investor: (i) was not formed for the specific purpose of investing in the Partnership; and (ii) each trustee (or other authorized person) that is authorized and required to make decisions with respect to this investment is a person described in (A), (B) or (D), at the time the decision to purchase Interests is made, and each settlor or other person who has contributed assets to the trust is a person described in (A), (B) or (D) at any time such person contributed assets to the trust.

*If the Investor initialed (C), the Investor must complete either (F) or (G).*

**(D)**    **Other Entities**

_____
*Initial*    The Investor: (i) was not formed for the specific purpose of investing in the Partnership; and (ii) is an entity, acting for its own account or the accounts of other qualified purchasers, which in the aggregate owns and invests on a discretionary basis, not less than $25,000,000 in investments (as defined above).

*If the Investor initialed (D), the Investor must complete (F).*

---

[*] For these purposes, the term "investments" means any or all: (i) securities (as defined in the Securities Act), except for securities of issuers controlled by the Investor ("Control Securities"), unless (A) the issuer of the Control Securities is itself a registered or private investment company or is exempted from the definition of investment company by Rule 3a-6 or Rule 3a-7 under the Company Act, (B) the Control Securities represent securities of an issuer that files reports pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934, as amended, (C) the issuer of the Control Securities has a class of securities listed on a designated offshore securities market under Regulation S under the Securities Act, or (D) the issuer of the Control Securities is a private company with shareholders' equity not less than $50 million determined in accordance with generally accepted accounting principles, as reflected in the company's most recent financial statements (provided such financial statements were issued within 16 months of the date of Investor's purchase of an Interest). (ii) futures contracts or options thereon held for investment purposes; (iii) physical commodities held for investment purposes; (iv) swaps and other similar financial contracts entered into for investment purposes; (v) real estate held for investment purposes; and (vi) cash and cash equivalents held for investment purposes.

*Note: In determining whether the $5 million or $25 million thresholds are met, investments can be valued at cost or fair market value as of a recent date. If investments have been acquired with indebtedness, the amount of the indebtedness must be deducted in determining whether the threshold has been met.*

10108442.3

19

**Confidential**                                                GCC-P 0432764

ASCOT PARTNERS, L.P.

GENERAL ELIGIBILITY REPRESENTATIONS

**(E)**        **Entities That Do Not Qualify under (B)-(D)**

_____        The Investor is a qualified purchaser because each beneficial owner of the Investor's
               securities is a qualified purchaser as described in this Section IV. *Note: This certification
               does not apply to beneficiaries of an irrevocable trust.*

*Initial*

               *If the Investor initialed (E), the Investor must complete (F).*

**(F)**        **All Investors That Are Entities**

_____   1.   The Investor is not an entity that is excepted from the definition of an "investment company"
*Initial*       under the Company Act pursuant to Section 3(c)(1) or 3(c)(7) thereof (a "Section 3(c)(1) or
               3(c)(7) Company"); or

_____   2.   The Investor is a Section 3(c)(1) or 3(c)(7) Company but does not have ANY direct
*Initial*       "beneficial owners" that have held an interest in the Investor on or before April 30, 1996 (a
               "Pre-April 30 Holder"); or

_____   3.   The Investor is a Section 3(c)(1) or 3(c)(7) Company and has obtained consent to its
*Initial*       treatment as a qualified purchaser from all of its Pre-April 30 Holders.

          4.   *If the Investor initialed (F)(2) or(F)(3), the Investor must also respond "Yes" or "No" to
               the following:*

               ☐ Yes

               ☐ No

               Is any direct or indirect beneficial owner of the Investor itself a Section 3(c)(1) or 3(c)(7)
               Company that controls, is controlled by, or is under common control with, the Investor?

               *Note: If the Investor cannot answer NO to (F)(4) because it has a control relationship with a
               beneficial owner that is itself a Section 3(c)(1) or 3(c)(7) Company, the Investor may be
               required to obtain consent from the security-holders of such owner.*

**(G)**        **Investors That Initialed (B) or (C) May Initial (G) Instead of (F)**

_____        The Investor has obtained consent to its treatment as a qualified purchaser from all of its
*Initial*       trustees, directors or general partners.

30108442.3

20

**Confidential**                                                      **GCC-P 0432765**

ASCOT PARTNERS, L.P.

WIRING INSTRUCTIONS*

**Citibank, NA**
**New York, New York**

**ABA** 021-000089

**A/C Morgan Stanley & Co., Inc.**
**3889-0774**

**CR Ascot Partners, L.P.**
**038-23021**

**REF** *Investor Name*

*IMPORTANT

1.  Please have your bank identify on the wire transfer the name of the prospective Investor.

2.  We recommend that your bank charge its wiring fees separately so that the amount you have elected to invest may be invested.

Please also have your bank send the following message (facsimile number (212) 838-9603) to Ascot Partners, L.P., 450 Park Avenue, 32nd Floor, New York, NY 10022, Attn: Mike Autera.

"Ascot Partners, L.P. – We have credited your account at _____ for _____
                                                              (bank)              (amount)
by order of _____ on _____.
            (name of investor)       (date)

The Fedwire number of the wire transfer was _____."

**INVESTORS MUST WIRE FUNDS TO THE PARTNERSHIP'S ACCOUNT IN THE AMOUNT SPECIFIED BY THE GENERAL PARTNER WHICH SHALL BE AVAILABLE TO THE GENERAL PARTNER NO LATER THAN TWO BUSINESS DAYS PRIOR TO THE DATE OF THE CLOSING.**

10108442.3

21

**Confidential**

GCC-P 0432766

ASCOT PARTNERS, L.P.

SIGNATURE PAGE

**ALL INVESTORS MUST COMPLETE THIS SECTION.**

The undersigned hereby represents that:

(a)    the undersigned has carefully read and is familiar with this Subscription Agreement, the Memorandum and the Partnership Agreement;

(b)    the information contained herein is complete and accurate and may be relied upon; and

(c)    the undersigned agrees that the execution of this signature page constitutes the execution and receipt of this Subscription Agreement and the execution and receipt of the Partnership Agreement.

IN WITNESS WHEREOF, the undersigned has executed this Subscription Agreement this _____ day of _____, ___.

INDIVIDUALS                                            ENTITIES

_____                   _____
Signature                                               Print Name of Entity

                                                        By: _____
_____                   Authorized Signature
Print Name

_____                   _____
Additional Investor Signature                    Print Name and Title

_____
Print Name

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**FOR INTERNAL USE ONLY**
**To be completed by J. EZRA MERKIN**

_____
SUBSCRIPTION ACCEPTED
AS TO $_____

ASCOT PARTNERS, L.P.
By: **J. EZRA MERKIN**

By: _____

Date: _____, _____

10108442.3

22

**Confidential**                                            GCC-P 0432767

**ASCOT PARTNERS, L.P.**

**NOTARIZATION ACKNOWLEDGMENT**

ACKNOWLEDGMENT

STATE OF _____ )
                         ) ss:
COUNTY OF_____ )

On this _____ day of _____, ___, before me personally appeared _____, to me known and known to me to be the individual who executed the foregoing Subscription Agreement in the capacity therein indicated, who acknowledged that he or she, being authorized to do so, executed the foregoing instrument for the purposes therein contained and in the capacity therein indicated as his or her own free act and deed.

_____
Notary Public

My Commission Expires:

_____

10108442.3

23

GCC-P 0432768

ADDITIONAL SUBSCRIPTION FORM

Ascot Partners, L.P.
450 Park Avenue, 32nd Floor
New York, New York  10022

Attn.:  Mike Autera


Dear Sir/Madam:

      The undersigned hereby wishes to make an additional capital contribution to Ascot Partners, L.P. (the  "Partnership").    The  amount  to  be  contributed  ("Additional  Capital  Contribution")  is: $_____.

      The undersigned acknowledges and agrees:  (i) that the undersigned is making the Additional Capital Contribution on the terms and conditions contained in the subscription agreement, dated _____ ___, 20___, previously executed by the undersigned and accepted by the General Partner (the "Subscription Agreement"); (ii) that the representations and covenants of the undersigned contained in the Subscription Agreement and the anti-money laundering supplement thereto are true and correct in all material respects as of the date set forth below; (iii) that the information provided on the Investor Profile Form in the Subscription Agreement is correct as of the date set forth below; and (iv) that the background information provided to the General Partner is true and correct in all material respects as of the date set forth below.


*[The rest of the page is intentionally left blank.]*


10108442.3

A-1

**Confidential**

GCC-P 0432769

**THE UNDERSIGNED AGREES TO NOTIFY THE GENERAL PARTNER
PROMPTLY IN WRITING SHOULD THERE BE ANY CHANGE
IN ANY OF THE FOREGOING INFORMATION.**

Dated: _____, 20____

INDIVIDUALS                                    ENTITIES

_____                _____
Signature                                      Print Name of Entity

                                               By: _____
_____                     Authorized Signatory
Print Name

_____                _____
Additional Investor Signature                  Print Name and Title

_____
Print Name

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**FOR INTERNAL USE ONLY**
**To be completed by J. EZRA MERKIN**

ADDITIONAL CAPITAL CONTRIBUTION ACCEPTED
AS TO $_____

**ASCOT PARTNERS, L.P.**

By:  **J EZRA MERKIN**

By:_____

Date: _____, 20____

*[Signature page to Additional Subscription Form.]*

10108442.3

A-2

**Confidential**

GCC-P 0432770

### REQUEST FOR WITHDRAWAL OF LIMITED PARTNERSHIP INTEREST

Ascot Partners, L.P.
450 Park Avenue, 32nd Floor
New York, New York  10022

Attn.: Mike Autera

Dear Sir/Madam:

The undersigned limited partner of the Partnership (the "Limited Partner") hereby requests that the Partnership withdraw from the Limited Partner's capital account(s) in the Partnership (each, a "Capital Account") and pay the following amount to the Limited Partner as directed below:

(check one)

_____    the entire balance of the Limited Partner's Capital Account(s)

_____    $_____

on the next available withdrawal date (the "Withdrawal Date") following receipt of this letter.* In the event that after giving effect to such withdrawal, the aggregate Capital Account balances of the Limited Partner would be less than $500,000 please:

(check one)

_____    disregard this Request for Withdrawal

_____    withdraw all of the remaining balance of such Capital Account(s) on such Withdrawal Date.

---

*    This Request for Withdrawal must be received at least 45 days prior to a Withdrawal Date. **Requests for Withdrawal must be unconditional. Notices of withdrawals are irrevocable by the Investor.**

10108442.3

RW-1

**Confidential**

GCC-P 0432771

If desired, set forth instructions for the account to which the withdrawal amount may be sent by wire transfer:

_____
Name of Bank

_____
Address of Bank

_____
ABA Number

_____
Account Number

_____
Name Under Which Account Is Held

**Note:  Withdrawal proceeds shall be paid to the same account from which the Limited Partner's investment in the Partnership was originally remitted, unless the General Partner, in its sole discretion, agrees otherwise.**

Very truly yours,

Signature(s) Guaranteed by:

_____
Signature of Limited Partner

_____

_____
Print name

Mailing Address

_____

_____

_____

*[Signature page to Additional Subscription Form.]*

10108442.3

RW-2

**Confidential**

GCC-P 0432772

## CLIENT PRIVACY NOTICE

Your privacy is very important to us. This Privacy Notice sets forth our policies with respect to nonpublic personal information of shareholders, prospective shareholders and former shareholders. These policies apply to individuals and Individual Retirement Accounts only and may be changed at any time, provided a notice of such change is given to you.

You provide us with personal information, such as your address, social security number, assets and/or income information, (i) in the subscription agreement and related documents, (ii) in correspondence and conversations with our representatives and (iii) through transactions with or through us.

We do not disclose any of this personal information about our shareholders, prospective shareholders or former shareholders to anyone, other than to our affiliates, and except as permitted by law, such as to our attorneys and auditors in order to service your investment. We will, however, release information about you if you direct us to do so or if compelled to do so by law.

We seek to carefully safeguard your private information and, to that end, restrict access to nonpublic personal information about you to those employees and other persons who need to know the information to enable us to provide services to you. We maintain physical, electronic and procedural safeguards to protect your nonpublic personal information.

10108442.3

**Confidential**

GCC-P 0432773

# Exhibit 14

# Ascot Fund Limited

## Subscription Documents

## (FOR NON-U.S. INVESTORS)

**Registrar and Transfer Agent:**

**Fortis Fund Services (Cayman) Limited**
**Grand Pavilion Commercial Center**
**802 West Bay Road**
**Grand Cayman, Cayman Islands**
**British West Indies**

**Ascot Fund Limited**

---

### INVESTMENT PROCEDURES

Prospective Investors should read the Confidential Memorandum for Ascot Fund Limited (the "Fund") and this booklet prior to subscribing to the Fund.

If you are interested in purchasing Shares (as defined herein), please complete all applicable pages as indicated below and promptly send a copy of this booklet by facsimile and then return the original booklet by overnight courier to Fortis Fund Services (Cayman) Limited, P.O. Box 2003, Grand Pavilion Commercial Center, 802 West Bay Road, Grand Cayman, Cayman Islands, British West Indies, Attn: Manager, Shareholder Services (the "Registrar and Transfer Agent"), Telephone (345) 949-7942, Facsimile (345) 914-9903:

☐    Background Documentation (pages 2-3)

☐    Investor Profile Form (page 9)

☐    General Eligibility Representations (pages 10-15)

☐    Wiring Instructions (page 16)

☐    Signature Page (page 17)

---

1

---

**Confidential**

**GCC-P 0498853**

## BACKGROUND DOCUMENTATION

To comply with applicable anti-money laundering/OFAC rules and regulations, you are required to provide the following information:

**I.    Payment Information**

      (a)    Name of the bank from which your payment to the Fund is being wired (the "Wiring Bank"):

                    _____

      (b)    Is the Wiring Bank located in the U.S. or another "FATF Country"[*]?

                    ____Yes     ____No

          If yes, please answer question (c) below.

          If no, please provide the information described in Item II below.

      (c)    Are you a customer of the Wiring Bank?

                    ____Yes     ____No

          If yes, you may skip Item II below.

          If no, please provide the information described in Item II below.

**II.    Additional Information**

*Note: this section applies only to investors who responded "no" to question I(b) or I(c) above.*

**The following materials must be provided to the Registrar and Transfer Agent:**

**For Individual Investors**

☐    A certified copy of a government issued form of picture identification (*e.g.*, passport or driver's license).

☐    Proof of the individual's current address (*e.g.*, original or certified copy of a current utility bill), if not included in the form of picture identification.

---

[*]    As of the date hereof, countries that are members of the Financial Action Task Force on Money Laundering ("FATF Country") are: Argentina, Australia, Belgium, Brazil, Canada, Denmark, Finland, France, Germany, Greece, Hong Kong, Iceland, Ireland, Italy, Japan, Luxembourg, Mexico, Kingdom of the Netherlands, New Zealand, Norway, Portugal, Singapore, Spain, Sweden, Switzerland, Turkey, United Kingdom and the United States.

**Confidential**

**For Fund of Funds or Entities that Invest on Behalf of Third Parties that are Not Located in the FATF Countries**

☐ A certified copy of the certificate of due formation and organization and continued authorization to conduct business in the jurisdiction of its organization (*e.g.*, certificate of good standing).

☐ An original or certified copy of an incumbency certificate attesting to the title of the individual executing the Subscription Agreement on behalf of the prospective investor (a sample Incumbency Certificate is attached hereto as <u>Exhibit A</u>).

☐ A completed copy of <u>Exhibit B</u> certifying that the entity has adequate anti-money laundering policies and procedures in place that is consistent with the USA PATRIOT Act, OFAC and other relevant federal, state or non-U.S. anti-money laundering laws and regulations.

☐ A letter of reference from a local office of a reputable bank or brokerage firm which is incorporated, or has its principal place of business located, in the U.S. or other FATF Country certifying that the prospective investor (*i.e.*, the fund of funds or the entity investing on behalf of third parties) maintains an account at such bank/brokerage firm and containing a statement affirming the prospective investor's integrity (a sample Letter of Reference is attached hereto as <u>Exhibit C</u>).

**For All Other Entity Investors**

☐ A certified copy of the certificate of due formation and organization and continued authorization to conduct business in the jurisdiction of its organization (*e.g.*, certificate of good standing), if applicable.

☐ An original or certified copy of an incumbency certificate attesting to the title of the individual executing the Subscription Agreement on behalf of the prospective investor (a sample Incumbency Certificate is attached hereto as <u>Exhibit A</u>).

☐ A letter of reference from a local office of a reputable bank or brokerage firm which is incorporated, or has its principal place of business located, in the U.S. or other FATF Country certifying that the prospective investor (*i.e.*, the fund of funds or the entity investing on behalf of third parties) maintains an account at such bank/brokerage firm for a length of time and containing a statement affirming the prospective investor's integrity (a sample Letter of Reference is attached hereto as <u>Exhibit C</u>).

☐ If the prospective investor is a privately-held entity, a completed copy of <u>Exhibit D</u> listing the name of each person who directly, or indirectly through intermediaries, is the beneficial owner of 10% or more of any voting or non-voting class of equity interests of the prospective investor.

☐ If the prospective investor is a trust, a completed copy of <u>Exhibit E</u> listing the current beneficiaries of the trust that have, directly or indirectly, 10% or more of any interest in the trust, the settlor of the trust and the trustees.

**Note: Your Subscription Agreement will not be deemed complete until all of the required documentation listed above is received by the Registrar and Transfer Agent. Upon approval of the Investor's subscription and verification of the Investor's identity, a copy of the executed Signature Page will be countersigned by the Fund and returned to the Investor. If the subscription is not accepted, payment will be returned to the prospective Investor.**

3

**Ascot Fund Limited**

SUBSCRIPTION AGREEMENT

Ascot Fund Limited
c/o Fortis Fund Services (Cayman) Limited
Grand Pavilion Commercial Center
802 West Bay Road
Grand Cayman, Cayman Islands
British West Indies
Attn.: Manager, Shareholder Services
Telephone: (345) 949-7942
Facsimile: (345) 914-9903

Re:    **Ascot Fund Limited—Issuance of Shares**

Dear Sir/Madam:

The undersigned (the "Investor") wishes to become a shareholder of Ascot Fund Limited (the "Fund"), an exempted company incorporated in the Cayman Islands, and to purchase shares ("Shares") in the Fund upon the terms and conditions set forth herein, in the Confidential Memorandum of the Fund, as the same may be updated or modified from time to time (the "Memorandum"), and in the Memorandum of Association and the Articles of Association of the Fund, as each may be amended from time to time (collectively, and together with the Memorandum, the "Fund Documents"). Capitalized terms used herein but not defined herein shall have the meanings assigned to them in the Memorandum. All references herein to "dollars" or "$" are to U.S. dollars.

Accordingly, the Investor agrees as follows:

**I.    SUBSCRIPTION FOR SHARES**

**(A)**    The Investor agrees to become a shareholder of the Fund and, in connection therewith, subscribes for and agrees to make the investment for the number of Shares (including fractional Shares) which can be purchased with this subscription at a purchase price of $1,000 per Share. Payment in good funds for Shares must be received prior to the closing date established by the Fund for the subscription (the "Closing Date"). Subject to any legal or regulatory restrictions before the Closing Date, the Investor's payment (the "Payment") will be held by the Fund in a non-interest bearing account. The minimum initial subscription is $500,000, subject to the discretion of the board of directors of the Fund (the "Board of Directors") to accept a lower amount. At no time will the Fund accept a minimum subscription of less than $50,000.

**(B)**    The Investor understands and agrees that the Fund reserves the right to reject this subscription for Shares for any reason or no reason, in whole or in part, and at any time prior to its acceptance. If the subscription is rejected, the Payment will be returned promptly to the Investor and this Subscription Agreement shall have no force or effect. Upon acceptance of this subscription by the Fund, the Investor shall become a shareholder of the Fund and shall be subject to the terms of the Fund Documents.

**II.    REPRESENTATIONS AND COVENANTS OF THE INVESTOR**

**(A)**    The Investor represents that it is not a U.S. Person. The Investor (i) covenants that it will not resell, reoffer or transfer any Shares or any interest therein, except with the consent of the Fund, to a U.S. Person; (ii) acknowledges that reoffers, resales or any transfer of the Shares may be made only in compliance with applicable securities laws and only with the prior authorization of the Fund, which may, in its discretion, decline to issue any Shares to, or register Shares in the name of, any person; and (iii) agrees not to transfer any of its Shares except on the books of the Fund and acknowledges that the Shares shall be transferable only to investors who are eligible investors as described in the Memorandum. The Investor understands

1

that the Fund may compulsorily repurchase all or any portion of the Investor's Shares in accordance with the Fund Documents.

**(B)**    The Investor has received, carefully read and understands the Memorandum outlining, among other things, the organization and investment objectives and policies of, and the risks and expenses of an investment in, the Fund. The Investor acknowledges that it has made an independent decision to invest in the Fund and that, in making its decision to subscribe for Shares, the Investor has relied solely upon the Fund Documents and independent investigations made by the Investor. The Investor is not relying on the Fund, the Fund's Board of Directors, the Registrar and Transfer Agent or J. Ezra Merkin (the "General Partner"), or any other person or entity with respect to the legal, tax and other economic considerations involved in this investment other than the Investor's own advisers. The Investor's investment in the Shares is consistent with the investment purposes, objectives and cash flow requirements of the Investor and will not adversely affect the Investor's overall need for diversification and liquidity.

The Investor acknowledges that it is not subscribing pursuant hereto for Shares as a result of, or pursuant to: (i) any advertisement, article, notice or other communications published in any newspaper, magazine or similar media (including any internet site whose information about the Fund is not password protected) or broadcast over television or radio, or (ii) any seminar or meeting whose attendees, including the Investor, had been invited as a result of, or pursuant to, any of the foregoing.

The Investor has been provided an opportunity to obtain any additional information concerning the offering, the Fund and all other information to the extent the Fund or its authorized representatives possess such information or can acquire it without unreasonable effort or expense, and has been given the opportunity to ask questions of, and receive answers from, the Fund or its authorized representatives concerning the terms and conditions of the offering and other matters pertaining to this investment.

**(C)**    The Investor has not reproduced, duplicated or delivered the Memorandum or this Subscription Agreement to any other person, except professional advisers to the Investor or as instructed by the Fund.

**(D)**    The Investor has such knowledge and experience in financial and business matters that the Investor is capable of evaluating the merits and risks of the Investor's investment in the Fund and is able to bear such risks, and has obtained, in the Investor's judgment, sufficient information from the Fund or its authorized representatives to evaluate the merits and risks of such investment. The Investor has evaluated the risks of investing in the Fund, understands there are substantial risks of loss incidental to the purchase of Shares and has determined that the Shares are a suitable investment for the Investor.

**(E)**    The Investor has consulted with its own advisors and is fully informed as to the legal and tax requirements within the Investor's own country (or countries) regarding a purchase of the Shares.

**(F)**    The Investor is aware of the limited provisions for transferability and redemptions from the Fund and has read the section of the Memorandum entitled "The Participating Shares – Redemption and Transfer." The Investor has no need for liquidity in this investment, can afford a complete loss of the investment in the Shares and can afford to hold the investment for an indefinite period of time.

**(G)**    The Investor understands that the Fund expects to invest substantially all of its capital through a "master-feeder" structure in Ascot Partners, L.P., a Delaware Limited Partnership (the "Partnership"). Notwithstanding the foregoing, the Fund may invest all or a portion of its securities and assets directly rather than investing through the Partnership.

**(H)**    The Investor is acquiring the Shares for its own account, for investment purposes only and not with a view toward distributing or reselling the Shares in whole or in part.

**Confidential**

GCC-P 0498857

**(I)**    The Investor understands the method of compensation under the Limited Partnership Agreement of the Partnership (the "Partnership Agreement") between the Partnership and the General Partner and understands the Investment Advisory Fee (as described in the Partnership Agreement) and its risks including that:

    (i)    the Investment Advisory Fee may create an incentive for the General Partner to cause the Partnership to make investments that are riskier or more speculative than would be the case in the absence of a Investment Advisory Fee; and

    (ii)    the General Partner may receive increased compensation since the Investment Advisory Fee will be calculated on a basis which includes realized and unrealized appreciation.

**(J)**    The Investor understands that:

    (i)    No governmental agency has passed upon the Shares or made any findings or determination as to the fairness of this investment; and

    (ii)    The representations, warranties, agreements, undertakings and acknowledgments made by the Investor in this Subscription Agreement will be relied upon by the Fund, the Board of Directors and the Registrar and Transfer Agent, in determining the Investor's suitability as a purchaser of Shares and the Fund's compliance with various securities laws, and shall survive the Investor's becoming a shareholder of the Fund.

**(K)**    The Investor has all requisite power, authority and capacity to acquire and hold the Shares and to execute, deliver and comply with the terms of each of the instruments required to be executed and delivered by the Investor in connection with the Investor's subscription for the Shares, including this Subscription Agreement, and such execution, delivery and compliance does not conflict with, or constitute a default under, any instruments governing the Investor, any law, regulation or order, or any agreement to which the Investor is a party or by which the Investor may be bound. If the Investor is an entity, the person executing and delivering each of such instruments on behalf of the Investor has all requisite power, authority and capacity to execute and deliver such instruments, and, upon request by the Fund or the Registrar and Transfer Agent, will furnish to the Fund a true and correct copy of any instruments governing the Investor, including all amendments thereto.

**(L)**    All information which the Investor has provided to the Fund or the Registrar and Transfer Agent concerning the Investor, the Investor's status, financial position and knowledge and experience of financial, tax and business matters, or, in the case of an Investor that is an entity, the knowledge and experience of financial, tax and business matters of the person making the investment decision on behalf of such entity, is correct and complete as of the date set forth herein.

**(M)**    The Investor understands that the value of its Shares and redemptions thereof, and the performance of the Fund, may be based on unaudited and in some cases, estimated, valuations of the Fund's investments and that valuations provided in an Investor's account statement may be an unaudited, estimated value.

**(N)**    If the Investor is a corporation, partnership, limited liability company, trust or other entity, it is not a benefit plan investor (a "Benefit Plan Investor") as defined under the Department of Labor Regulation Section 2510.3-101(f), and less than 25% of the value of each class of equity interests in the Investor (excluding from the computation interests of any individual or entity with discretionary authority or control over the assets of the Investor) are held by Benefit Plan Investors (as so defined). If the Investor is a Benefit Plan Investor because either (a) it is an employee benefit plan ("Employee Benefit Plan") within the meaning of Section 3(3) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), or (b) 25% or more of the value of each class of equity interests in the Investor (excluding from such computation interests of any individual or entity with discretionary authority or control over the assets of the Investor) is

3

held by Benefit Plan Investors, or if the Investor becomes a Benefit Plan Investor, the Investor shall forthwith disclose to the Fund promptly in writing such fact and also the percentage of such Investor's equity interests held by Benefit Plan Investors. By signing this Subscription Agreement, the Investor expressly acknowledges that the Fund may require that the Investor completely withdraw from the Fund if the Investor is an Employee Benefit Plan or if 25% or more of the value of any class of equity interests in the Investor (excluding from the computation interests of any individual or entity with discretionary authority or control over the assets of the Investor) is held by Benefit Plan Investors (as so defined).

(O)   If the Investor is an insurance company investing the assets of its general account in the Fund, none of the Investor's general account constitutes assets of an employee benefit plan ("Employee Benefit Plan") as defined in Section 3(3) of ERISA. If the Investor is such an entity and any portion of its general account assets constitute assets of an Employee Benefit Plan (as so defined) or, at any time any portion of its general account become assets of an Employee Benefit Plan, the Investor shall forthwith disclose to the Fund the percentage of its general account assets held by Employee Benefit Plans. By signing this Subscription Agreement, the Investor expressly acknowledges that the Fund may require that the Investor completely withdraw from the Fund if any portion of the Investor's general account constitutes assets of an Employee Benefit Plan.

(P)   The Investor acknowledges, understands and agrees that the General Partner has authority to allocate transaction costs to obtain research and brokerage services as set forth in the Memorandum. By signing this Subscription Agreement, the Investor expressly consents to any arrangement pursuant to which the General Partner obtains such products and services.

(Q)   The Investor understands that Schulte Roth & Zabel LLP acts as U.S. counsel to the Fund, the Partnership, the General Partner and their affiliates. The Investor also understands that, in connection with this offering of Shares and subsequent advice to the Fund, the Partnership, the General Partner and their affiliates, Schulte Roth & Zabel LLP will not be representing investors in the Fund, including the Investor, and no independent counsel has been retained to represent investors in the Fund.

(R)   The Investor understands and agrees that, although the Fund, the General Partner and the Registrar and Transfer Agent will use their reasonable efforts to keep the information provided in the answers to this Subscription Agreement strictly confidential, the Fund, the General Partner and the Registrar and Transfer Agent may present this Subscription Agreement and the information provided in answers to it to such parties (e.g., affiliates, attorneys, auditors, administrators, brokers and regulators) as it deems necessary or advisable to facilitate the acceptance and management of the Investor's subscription for Shares including, but not limited to, in connection with anti-money laundering and similar laws, if called upon to establish the availability under any applicable law of an exemption from registration of the Shares, the compliance with applicable law and any relevant exemptions thereto by the Fund, the General Partner, the Registrar and Transfer Agent or any of their affiliates, or if the contents thereof are relevant to any issue in any action, suit, or proceeding to which the Fund, the General Partner, the Registrar and Transfer Agent or their affiliates are a party or by which they are or may be bound. The Fund, the General Partner and the Registrar and Transfer Agent may also release information about the Investor if directed to do so by the Investor, if compelled to do so by law, or in connection with any government or self-regulatory organization request or investigation.

4

**(S)    Prospective Investors should check the OFAC website at <http://www.treas.gov/ofac> before making the following representations.**

The Investor represents that the amounts used to purchase Shares of the Fund were not and are not directly or indirectly derived from activities that may contravene U.S. federal, state or international laws and regulations, including anti-money laundering laws and regulations.

Federal regulations and Executive Orders administered by the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC") prohibit, among other things, the engagement in transactions with, and the provision of services to, certain foreign countries, territories, entities and individuals.* The lists of OFAC prohibited countries, territories, persons and entities can be found on the OFAC website at <http://www.treas.gov/ofac>. In addition, the programs administered by OFAC ("OFAC Programs") prohibit dealing with individuals or entities in certain countries regardless of whether such individuals or entities appear on the OFAC lists.

The Investor represents and warrants that, to the best of its knowledge, none of:

(i)     the Investor;

(ii)    any person controlling or controlled by the Investor;

(iii)   if the Investor is a privately held entity, any person having a beneficial interest in the Investor; or

(iv)    any person for whom the Investor is acting as agent or nominee in connection with this investment

is a country, territory, individual or entity named on an OFAC list, nor is a person or entity prohibited under the OFAC Programs.

Please be advised that the Fund may not accept any amounts from a prospective investor if it cannot make the representation set forth in the preceding paragraph. If an existing Investor cannot make these representations, the Fund may require the redemption of the Investor's Shares.

The Investor agrees to notify the Fund promptly should the Investor become aware of any change in the information set forth in these representations. The Investor is advised that, by law, the Fund may be obligated to "freeze the account" of such Investor, either by prohibiting additional subscriptions from the Investor, declining any redemption requests and/or segregating the assets in the account in compliance with governmental regulations, and the Fund may also be required to report such action and to disclose the Investor's identity to OFAC. The Investor further acknowledges that the Fund may, by written notice to the Investor, suspend the payment of redemption proceeds payable to such Investor if the Fund reasonably deems it necessary to do so to comply with anti-money laundering regulations applicable to the Fund, or any of the Fund's other service providers.

**(T)**    The Investor represents and warrants that, to the best of its knowledge, none of:

(i)     the Investor;

(ii)    any person controlling or controlled by the Investor;

---

* These individuals include specially designated nationals, specially designated narcotics traffickers and other parties subject to OFAC sanctions and embargo programs.

5

**Confidential**

(iii)    if the Investor is a privately held entity, any person having a beneficial interest in the Investor; or

(iv)    any person for whom the Investor is acting as agent or nominee in connection with this investment

is a senior foreign political figure,[*] or any immediate family member[**] or close associate[***] of a senior foreign political figure as such terms are defined in the footnotes below.

(U)    If the Investor is a non-U.S. banking institution (a "Foreign Bank") or if the Investor receives deposits from, makes payments on behalf of, or handles other financial transactions related to a Foreign Bank, the Investor represents and warrants to the Fund that:

(i)    the Foreign Bank has a fixed address, other than solely an electronic address, in a country in which the Foreign Bank is authorized to conduct banking activities;

(ii)    the Foreign Bank employs one or more individuals on a full-time basis;

(iii)    the Foreign Bank maintains operating records related to its banking activities;

(iv)    the Foreign Bank is subject to inspection by the banking authority that licensed the Foreign Bank to conduct banking activities; and

(v)    the Foreign Bank does not provide banking services to any other Foreign Bank that does not have a physical presence in any country and that is not a regulated affiliate.

(V)    The Investor understands and agrees that any redemption proceeds paid to it will be paid to the same account from which the Investor's investment in the Fund was originally remitted, unless the Fund agrees otherwise.

## III.    GENERAL

(A)    The Investor agrees to indemnify and hold harmless the Fund, the Partnership, the General Partner, each director and officer of the Fund, the Registrar and Transfer Agent, each of their affiliates, and each other person, if any, who controls, is controlled by, or is under common control with, any of the foregoing, within the meaning of Section 15 of the Securities Act, against any and all loss, liability, claim, damage and expense whatsoever (including all expenses reasonably incurred in investigating, preparing or defending against any claim whatsoever) arising out of or based upon (i) any false representation or warranty made by the Investor, or breach or failure by the Investor to comply with any covenant or agreement made by the Investor, in this Subscription Agreement or in any other document furnished by the Investor to any of the foregoing in connection with this transaction or (ii) any action for securities law violations instituted by the Investor which is finally resolved by judgment against the Investor.

---

[*]    A "senior foreign political figure" is defined as a senior official in the executive, legislative, administrative, military or judicial branches of a non-U.S. government (whether elected or not), a senior official of a major non-U.S. political party, or a senior executive of a non-U.S. government-owned corporation. In addition, a "senior foreign political figure" includes any corporation, business or other entity that has been formed by, or for the benefit of, a senior foreign political figure.

[**]    "Immediate family" of a senior foreign political figure typically includes the figure's parents, siblings, spouse, children and in-laws.

[***]    A "close associate" of a senior foreign political figure is a person who is widely and publicly known to maintain an unusually close relationship with the senior foreign political figure, and includes a person who is in a position to conduct substantial U.S. and non-U.S. financial transactions on behalf of the senior foreign political figure.

6

Confidential

GCC-P 0498861

**(B)**    The Investor hereby acknowledges that the Partnership, the General Partner, the Registrar and Transfer Agent and each director and officer of the Fund are entitled to be indemnified out of the assets of the Fund as provided in the Fund Documents.

**(C)**    This Subscription Agreement (i) shall be binding upon the Investor and the heirs, legal representatives, successors, and permitted assigns of the Investor and shall inure to the benefit of the Fund and its successors and assigns, (ii) shall be governed, construed, and enforced in accordance with the laws of Cayman Islands, (iii) shall survive the acceptance of the Investor as a shareholder of the Fund, and (iv) shall, if the Investor consists of more than one person, be the joint and several obligation of each such person.

**(D)**    The Investor hereby irrevocably agrees that any suit, action or proceeding with respect to this Subscription Agreement or the Fund and any or all transactions relating hereto and thereto may be brought in the courts of Cayman Islands. The Investor hereby irrevocably (i) submits to the jurisdiction of such courts with respect to any such suit, action or proceeding and agrees and consents that service of process as provided by Cayman Islands law may be made upon the Investor in any such suit, action or proceeding brought in any of said courts, and may not claim that any such suit, action or proceeding has been brought in an inconvenient forum and (ii) consents to the service of process out of any of the aforesaid courts, in any such suit, action or proceeding, by the mailing of copies thereof, by overnight courier addressed to the Investor at the address of the Investor then appearing on the records of the Fund. Nothing contained herein shall affect the right of the Fund to commence any action, suit or proceeding or otherwise to proceed against the Investor in any other jurisdiction or to serve process upon the Investor in any manner permitted by any applicable law in any relevant jurisdiction.

**(E)**    If any provision of this Subscription Agreement is invalid or unenforceable under any applicable law, then such provision shall be deemed inoperative to the extent that it may conflict therewith and shall be deemed modified to conform with such applicable law. Any provision hereof which may be held invalid or unenforceable under any applicable law shall not affect the validity or enforceability of any other provisions hereof, and to this extent the provisions hereof shall be severable.

**(F)**    If any answers provided or background documentation required under this Subscription Agreement is found to be false, forged or misleading, the Investor understands that the Fund may compulsorily redeem the Shares held by such Investor in accordance with the Fund Documents.

## IV.    TRUSTEE, AGENT, REPRESENTATIVE OR NOMINEE

If the Investor is acting as trustee, agent, representative or nominee for a subscriber (a "Beneficial Owner"), the Investor understands and acknowledges that the representations, warranties and agreements made herein are made by the Investor (A) with respect to the Investor *and* (B) with respect to the Beneficial Owner. The Investor further represents and warrants that it has all requisite power and authority from said Beneficial Owner to execute and perform the obligations under this Subscription Agreement. The Investor also agrees to indemnify the Fund, the Partnership, the General Partner, the Registrar and Transfer Agent, and their affiliates and agents for any and all costs, fees and expenses (including legal fees and disbursements) in connection with any damages resulting from the Investor's misrepresentation or misstatement contained herein, or the assertion of the Investor's lack of proper authorization from the Beneficial Owner to enter into this Subscription Agreement or perform the obligations hereof.

If the Investor will enter into a swap, structured note or other derivative instrument, the return from which is based in whole or in part on the return of the Fund (the "Swap") with a third party (a "Third Party"), the Investor represents and warrants that with respect to a Third Party entering into a Swap:  (a) the Third Party is authorized under its constitutional documents (*e.g.*, certificate of incorporation, bylaws, partnership agreement or trust agreement) and applicable law (including U.S. and non-U.S. anti-money laundering laws and regulations) to enter into the Swap and would also be so authorized to invest directly into the Fund; (b) the Third Party has received and reviewed a copy of

**Confidential**

GCC-P 0498862

the Fund Documents and this Subscription Agreement; (c) the Third Party acknowledges that the Fund and its affiliates are not responsible for the legality, suitability or tax consequences of the Swap and that the Investor is not an agent of the Fund; and (d) the Third Party is (i) an "eligible contract participant" under Commodity Futures Trading Commission rules, and (ii) either a Permitted U.S. Person who is an "accredited investor" under Regulation D and a "qualified purchaser" under the Company Act or a non-U.S. Person, and (iii) is eligible to receive "hot issues" because it is not a restricted person as contemplated under the rules of the National Association of Securities Dealers, Inc. Nothing herein constitutes an agreement or statement by the Fund as to the legality of a Swap or the suitability of a Swap for the Third Party.

## V.  ADDITIONAL INFORMATION AND SUBSEQUENT CHANGES IN THE FOREGOING REPRESENTATIONS

The Fund may request from the Investor such additional information as it may deem necessary to evaluate the eligibility of the Investor to acquire Shares, and may request from time to time such information as it may deem necessary to determine the eligibility of the Investor to hold Shares or to enable the Fund to determine the Fund's, the General Partner's, or the Registrar and Transfer Agent's compliance with applicable regulatory requirements or the Fund's tax status, and the Investor agrees to provide such information as may reasonably be requested.

The Investor agrees to notify the Fund promptly if there is any change with respect to any of the information or representations made herein and to provide the Fund with such further information as the Fund may reasonably require.

This Subscription Agreement may be executed through the use of separate signature pages or in any number of counterparts. Each counterpart shall, for all purposes, constitute one agreement binding on all the parties, notwithstanding that all parties do not execute the same counterpart.

## VI.  LEGENDS

(A)    If the Memorandum is issued, circulated or distributed to the Investor in the United Kingdom, the Investor hereby acknowledges that the sale of Shares pursuant to this Subscription Agreement is effected by private placing and that, accordingly, no steps have been taken in any jurisdiction that would permit the issue of any prospectus, application form, notice, circular or other invitation offering the Shares to the public for subscription or purchase, and hereby confirms and represents that the Investor is a person falling within Articles 19, 49 or 50 of the Financial Services and Markets Act 2000 (Financial Promotion) Order 2001 (as amended) (the "Financial Promotion Order"). The Investor undertakes not to communicate or cause to be communicated in the United Kingdom any financial promotion within the meaning of the Financial Services and Markets Act 2000 relating to the Shares other than to persons who fall within Articles 19, 49 or 50 of the Financial Promotion Order.

(B)    Investors in Hong Kong shall not sell, transfer or otherwise dispose of the legal or the beneficial interest in any Shares unless such sale, transfer or disposition is to another holder of the Shares or to a person whose ordinary business it is to buy or sell shares or debentures and is subject to the condition that such person shall undertake to observe all restrictions (including the requirement to impose similar restrictions on any subsequent holder) applicable to the original holder of such Shares.

**Confidential**

GCC-P 0498863

## ASCOT FUND LIMITED

### INVESTOR PROFILE FORM

## ALL INVESTORS MUST COMPLETE THIS PAGE.

Name of Investor (Please Print or Type)

$

Amount of Subscription

Type of Investor—Please check one:
- ☐ Individual
- ☐ Joint Tenants (with Rights of Survivorship)
- ☐ Tenants in Common
- ☐ Limited Liability Company
- ☐ Corporation
- ☐ Partnership
- ☐ Trust
- ☐ Other:
- Specify: _____

Full Mailing Address (Exactly as it should appear on labels):

☐ Mr.    ☐ Mrs.    ☐ Ms.    ☐ Miss    ☐ Dr.    ☐ Other _____

Telephone number                    Fax number

Residence (if an individual) or Principal Place of Business (if an entity) Address (No P.O. Boxes Please):

Telephone number                    Fax number

Address of Authorized Representative/Agent (No P.O. Boxes Please):

Telephone number                    Fax number

E-Mail: _____

Attention: _____

## COMMUNICATIONS TO INVESTOR

Please send all communications to (*Initial one*):

_____ Mailing Address _____ Residence or Principal Place of Business Address
*Initial*                *Initial*

9

GCC-P 0498864

ASCOT FUND LIMITED

| GENERAL ELIGIBILITY REPRESENTATIONS |
|---|

**PLEASE COMPLETE ALL APPROPRIATE ITEMS.**

I.  **INVESTOR INFORMATION**

   (1)   Formation Date of Entity, if applicable: _____

   (2)   Was the Investor referred to the Fund by a Placement Agent?    Yes____    No____

   If yes, please provide name of Placement Agent: _____

   (3)   The Investor hereby warrants and represents that:

   *(Initial one and complete blanks)*

   _____     (a)    if an individual, the Investor is of legal age and is a
   *(initial)*

   citizen of: _____

   resident of: _____

   **OR**

   _____     (b)    if a corporation, partnership, trust, or other legal entity, the Investor is:
   *(initial)*

   organized under the laws of: _____

   has its principal place of business in: _____

   (4)   The Investor _____ (is) _____ (is not) (**check one**) a "benefit plan investor" (*e.g.*, any employee pension benefit plan or employee welfare plan, including a non-U.S. pension fund).

   (5)   The Investor has received the Memorandum outside the U.S. in the following country:

   _____

   (6)   The Investor has signed the Subscription Documents outside the U.S. in the following country:

   _____

10

**Confidential**

**GCC-P 0498865**

ASCOT FUND LIMITED

GENERAL ELIGIBILITY REPRESENTATIONS

**II.**    **QUALIFIED PURCHASER STATUS**

The Investor is a "qualified purchaser" under the Company Act (generally, $5 million in qualified investments for individuals and family entities and $25 million in qualified investments for non-family entities) as set forth herein. **Read the following representations carefully and initial each applicable statement.** The Investor certifies that:

**A.**    **Individuals**

_____
*Initial*  The Investor is a qualified purchaser because he/she (alone, or together with his/her spouse, if investing jointly) owns not less than $5,000,000 in investments.[*]

**B.**    **"Family" Corporations, Foundations, Section 501(c)(3) Organizations, Partnerships, Trusts, Limited Liability Companies or other "Family" Entities**

_____
*Initial*  (1)    The Investor was not formed for the specific purpose of investing in the Fund;

_____
*Initial*  (2)    The Investor owns not less than $5,000,000 in investments; and

_____
*Initial*  (3)    The Investor is owned directly or indirectly by or for (i) two or more natural persons who are related as siblings or spouse (including former spouses), or direct lineal descendants by birth or adoption, (ii) spouses of such persons, (iii) the estates of such persons or (iv) foundations, Section 501(c)(3) organizations, or trusts established by or for the benefit of such persons.

**C.**    **Trusts (Other Than Trusts That Qualify under B or C hereof)**

_____
*Initial*  (1)    The Investor was not formed for the specific purpose of investing in the Fund; and

_____
*Initial*  (2)    Each trustee (or other authorized person) who is authorized and required to make decisions with respect to this investment is a person described in A, B or D, at the time the decision to purchase Shares is made, and each settlor or other person who has contributed assets to the trust is a person described in A, B or D at any time such person contributed assets to the trust.

---

[*]    The term "investments" means any or all (1) securities (as defined in the Securities Act), except for securities of issuers controlled by the Investor ("Control Securities") unless the (A) issuer of the Control Securities is itself a registered or private investment company or is exempted from the definition of investment company by Rule 3a-6 or Rule 3a-7 under the Company Act, (B) the Control Securities represent securities of an issuer that files reports pursuant to Section 13 or 15(d) of the Exchange Act, (C) the issuer of the Control Securities has a class of securities listed on a designated offshore securities market under Regulation S under the Securities Act or (D) the issuer of the Control Securities is a private company with shareholders' equity not less than $50 million determined in accordance with generally accepted accounting principles, as reflected in the company's most recent financial statements (provided such financial statements were issued within 16 months of the date of Investor's purchase of Shares); (2) futures contracts or options thereon held for investment purposes; (3) physical commodities held for investment purposes; (4) swaps and other similar financial contracts entered into for investment purposes; (5) real estate held for investment purposes; and (6) cash and cash equivalents held for investment purposes.

Note:    In determining whether the $5 million or $25 million thresholds are met, investments can be valued at cost or fair market value as of a recent date. If investments have been acquired with indebtedness, the amount of the indebtedness must be deducted in determining whether the threshold has been met.

II

**Confidential**

GCC-P 0498866

ASCOT FUND LIMITED

## GENERAL ELIGIBILITY REPRESENTATIONS

**D.    Other Entities**

_Initial_    (1)    The Investor was not formed for the specific purpose of investing in the Fund; and

_Initial_    (2)    The Investor is an entity, acting for its own account or the accounts of other qualified purchasers, which in the aggregate owns and invests on a discretionary basis, not less than $25,000,000 in investments (as defined above).

**E.    Entities That Do Not Qualify Under B-D**[*]

_Initial_    The Investor is a qualified purchaser because each beneficial owner of the Investor's securities is a qualified purchaser as described in these representations.

**F.    All Investors That Are Entities**

_Initial_    (1)    The Investor is not an entity that is excepted from the definition of an "investment company" under the Company Act pursuant to Section 3(c)(1) or 3(c)(7) thereof (a "3(c)(1) or 3(c)(7) Company"); or

_Initial_    (2)    The Investor is a Section 3(c)(1) or 3(c)(7) Company but does not have ANY direct "beneficial owners" that have held an interest in the Investor on or before April 30, 1996 (a "Pre-April 30 Holder"); or

_Initial_    (3)    The Investor is a Section 3(c)(1) or 3(c)(7) Company and has obtained consent to its treatment as a qualified purchaser from all of its Pre-April 30 Holders.

**G.    Investors That Checked B or C May Check G Instead Of F**

_Initial_    The Investor has obtained consent to its treatment as a qualified purchaser from all of its trustees, directors or general partners.

**H.    Investors That Checked F(2) Or F(3) Must Also Respond YES or NO To H**

Is any direct or indirect beneficial owner of the Investor itself a Section 3(c)(1) or 3(c)(7) Company that controls, is controlled by, or is under common control with the Investor?

☐ YES        ☐ NO

If the Investor cannot answer NO to H because it has a control relationship with a beneficial owner that is itself a Section 3(c)(1) or 3(c)(7) Company, the Investor may be required to obtain consent from the security-holders of such owner.

[*]    This certification does not apply to beneficiaries of an irrevocable trust.

12

**Confidential**

**GCC-P 0498867**

ASCOT FUND LIMITED

GENERAL ELIGIBILITY REPRESENTATIONS

**III.    ALLOCATIONS OF HOT ISSUES**

The Fund from time to time may invest, directly or through partnerships or other pooled investment vehicles, in "hot issues," as defined in the rules of the NASD. In order for the Fund to determine whether the Investor is eligible to participate in profits and losses from such "hot issues," the Investor has initialed those statements below which apply to it and, if the Investor is a corporation, partnership, trust or other entity, which apply to any person having a beneficial interest in the Investor:

**A.    General:**

*(Initial as Appropriate)*

_____    1.    The Investor, or a person having a beneficial interest in the Investor, is a broker-dealer.

_____    2.    The Investor, or a person having a beneficial interest in the Investor, is an officer, director, general partner, employee or agent of a broker-dealer, or a person associated with a broker-dealer.[*]

_____    3.    The Investor, or a person having a beneficial interest in the Investor, has acted as a finder in respect of the public offering of any securities or acted in a fiduciary capacity (including, among others, attorneys, accountants and financial consultants) to the managing underwriter in any such offering.

_____    4.    The Investor, or a person having a beneficial interest in the Investor, is (i) a senior officer of a bank, savings and loan institution, insurance company, investment company, investment advisory firm, or any other institutional type account (including, but not limited to, hedge funds, private investment partnerships, investment corporations or investment clubs), U.S. or non-U.S., or (ii) a person in the securities department of, or an employee or a person who may influence or whose activities directly or indirectly involve or are related to the function of buying or selling securities for, any bank, savings and loan institution, insurance company, investment company, investment advisory firm, or other institutional type account, U.S. or non-U.S.

_____    5(a).    The Investor, or a person having a beneficial interest in the Investor, is a member of the immediate family[**] of an employee or agent of, or person associated with, a broker-dealer. If the foregoing statement applies to the Investor, or to a person with a beneficial interest in the Investor, the name of the broker-dealer is _____.

---

[*]    For purposes of statement 2 above, "a person associated with a broker-dealer" includes every sole proprietor, partner, officer, director or branch manager of any NASD member, or any natural person occupying a similar status or performing similar functions, or any natural person engaged in the investment banking or securities business who is directly or indirectly controlling or controlled by such member, whether or not any such person is registered or exempt from registration with the NASD. For purposes of statement 2 above, broker-dealers do not include members engaged solely in the purchase or sale of either investment company/variable contracts securities or direct participation program securities.

[**]    The Investor understands that for purposes of the NASD Rules, the term "immediate family" includes parents, mother-in-law or father-in-law, husband or wife, brother or sister, brother-in-law or sister-in-law, son-in-law or daughter-in-law, children and any other person supported, directly or indirectly to a material extent, by a person identified in statement 1 or 2 above.

13

## ASCOT FUND LIMITED

---

### GENERAL ELIGIBILITY REPRESENTATIONS

_____ 5(b)  If 5(a) is applicable, the Investor, or a person having a beneficial interest in the Investor, is supported directly or indirectly by the immediate family member referred to in 5(a).

_____ 6.  The Investor, or a person having a beneficial interest in the Investor, is supported directly or indirectly, to a material extent, by a person described in statements 3 or 4 above.

_____ 7.  The Investor owns equity securities of or has contributed capital to (i) a broker-dealer or (ii) an entity which owns equity securities of or has contributed capital to a broker-dealer.* The name of the broker-dealer is: _____.

_____ 8.  The Investor is supported directly or indirectly, to a material extent, by an immediate family member who is a person referred to in 7 above.  The name of the broker-dealer is: _____.

**OR**

_____ 9.  None of the above statements are applicable.

**B.    Owners, Direct or Indirect, of Securities of or Interests in Broker-Dealers:**

*If statement 7 or statement 8 has been initialed, please indicate which of the following statements are true (initial as appropriate):*

_____ A.  The Investor's interest** in the broker-dealer is passive and constitutes less than 10% of the equity interest or capital of the broker-dealer.

_____ B.  The Investor is not in a position, by virtue of its ownership interest in a broker-dealer, to direct the allocation of hot issues.

_____ C.  The shares of the broker-dealer in which the Investor has an interest, or the shares of the parent of such broker-dealer, are publicly traded on an exchange or on NASDAQ.

_____ D.  The Investor is an account established for the benefit of *bona fide* public customers (such as an insurance company separate, general or investment account or a bank trust account).

**OR**

_____ E.  None of the above statements (A, B, C and D) are applicable.

---

\*      For purposes of statements 7 and 8 above, broker-dealers do not include broker-dealers engaged solely in the purchase or sale of either investment company/variable contracts securities or direct participation program securities.

\*\*     The interest of the Investor in a broker-dealer as a result of an investment in an entity (the "Intermediate Owner") which owns or has contributed capital to such broker-dealer is equal to the product of the Investor's percentage interest in the Intermediate Owner and the Intermediate Owner's percentage interest in the broker-dealer.

14

**Confidential**

GCC-P 0498869

ASCOT FUND LIMITED

### GENERAL ELIGIBILITY REPRESENTATIONS

**C.     Nominees:**

*Please answer each of the following questions, if applicable*

1.     Is the Investor investing as a nominee for, or otherwise for or on behalf of, anyone other than the Investor?

_____Yes        _____No

2.     If the answer to question C. 1. is "yes," the person for whom the Investor is acting:

*Please check one*

_____ is an individual

_____ is an entity, but is not an investment fund

_____ is an investment fund (including any family investment vehicle, trust, hedge fund, investment club or other entity, group or association by means of which more than one individual makes investments)

**D.     Additional Information:**

If the Investor is a natural person, indicate the occupation and business affiliation of the Investor. If the Investor is a private corporation, partnership, trust, or other private entity, indicate the name(s), occupation(s) and business affiliations of all person(s) having a beneficial interest in the Investor. **In the case of an Investor which is an investment fund, the Investor may either (i) provide the information requested below with respect to its beneficial owners that participate in profits and losses attributable to hot issues or (ii) if the Investor does not wish to provide such information, contact the Registrar and Transfer Agent to obtain a form of letter to be delivered to the Fund by legal counsel or independent certified public accountants to the Investor relating to participation in "hot issues".**

| <u>Name</u> | <u>Occupation</u> |
|---|---|
| _____ | _____ |
| _____ | _____ |

        The Investor hereby agrees to promptly notify the Fund should there be any change in the information set forth in this response.

15

ASCOT FUND LIMITED

WIRING INSTRUCTIONS*

JP Morgan Chase Bank, NY
SWIFT ADDRESS: CHASUS33
ABA Number 021000021
Account Name: Fortis Bank (Cayman) Limited
Account Number: 544 707 901
SWIFT ADDRESS: FBCIKYKY
Sub Account Name: Ascot Fund Limited
Sub Account Number: 238336

*IMPORTANT

1.  Please have your bank identify on the wire transfer the name of the prospective Investor.

2.  We recommend that your bank charge its wiring fees separately so that the amount you have elected to invest may be invested.

16

Confidential

GCC-P 0498871

## ASCOT FUND LIMITED

---

### SIGNATURE PAGE

**ALL INVESTORS MUST COMPLETE THIS SECTION.**

The undersigned hereby represents that:

(a)     the undersigned has carefully read and is familiar with this Subscription Agreement and the Fund Documents;

(b)     the information contained herein is complete and accurate and may be relied upon; and

(c)     the undersigned agrees that the execution of this signature page constitutes the execution and receipt of this Subscription Agreement.

IN WITNESS WHEREOF, the undersigned has executed this Subscription Agreement this ____ day of _____, 200__.

INDIVIDUALS                                    ENTITIES

_____                _____
Signature                                      Print Name of Entity

                                               By: _____
_____                
Print Name                                     Authorized Signature

_____                _____
Additional Investor Signature                  Print Name and Title

_____
Print Name

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**FOR INTERNAL USE ONLY**
**To be completed by ASCOT FUND LIMITED**

_____
SUBSCRIPTION ACCEPTED
AS TO $_____

ASCOT FUND LIMITED
By: FORTIS FUND SERVICES (CAYMAN) LIMITED

By: _____

Date: _____, 200____

17

**Confidential**

GCC-P 0498872

**EXHIBIT A**

### FORM OF INCUMBENCY CERTIFICATE

The undersigned, being the _____ of _____,
                             *Insert Title*                        *Insert Name of Entity*

a _____ organized under the laws of _____
   *Insert Type of Entity*                             *Insert Jurisdiction of Organization*

(the "Company"), does hereby certify on behalf of the Company that the persons named below are

directors and/or officers of the Company and that the signature at the right of said name, respectively, is

the genuine signature of said person and that the persons listed below are each an authorized signatory for

the Company.

| Name | Title | Signature |
|------|-------|-----------|
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |

IN WITNESS WHEREOF, the undersigned has hereunto set his hand as of the ___ day of

_____, 200___.

_____
Name:  *Print Name of Signatory #1*
Title:  *Print Title of Signatory #1*

THE UNDERSIGNED, _____, a duly authorized _____
                         *Insert Name of Signatory #2*                  *Insert Title*

of the Company, does hereby certify that _____ is a duly authorized
                                   *Insert Name of Signatory #1*

officer of _____ and that the signature set forth above is [his][her] true and
           *Insert Name of Company*

correct signature.

IN WITNESS WHEREOF, the undersigned has executed this certificate as of the ___ day

of _____, 200___.

_____
Name:  *Print Name of Signatory #2*
Title:  *Print Title of Signatory #2*

A-1

**Confidential**

**GCC-P 0498873**

**EXHIBIT B**

## AML CERTIFICATION FORM FOR ENTITIES
## THAT INVEST ON BEHALF OF THIRD PARTIES

The undersigned, being the _____ of _____ ,
*Insert Title*                          *Insert Name of Entity*

a _____ organized under the laws of _____
*Insert Type of Entity*                                        *Insert Jurisdiction of Organization*

(the "Company"), does hereby certify on behalf of the Company that it is aware of the requirements of the USA PATRIOT Act of 2001, the regulations administered by the U.S. Department of Treasury's Office of Foreign Assets Control, and other applicable U.S. federal, state or non-U.S. anti-money laundering laws and regulations (collectively, the "anti-money laundering/OFAC laws"). The Company has anti-money laundering policies and procedures in place reasonably designed to verify the identity of its [beneficial holders] [underlying investors] and their sources of funds. Such policies and procedures are properly enforced and are consistent with the anti-money laundering/OFAC laws such that the Fund may rely on this Certification.

The Company hereby represents to the Fund that, to the best of its knowledge, the Company's [beneficial holders] [underlying investors] are not individuals, entities or countries that may subject the Fund to criminal or civil violations of any anti-money laundering/OFAC laws. The Company has read the section entitled "Representations and Warranties of the Investor" in the Fund's Subscription Agreement. The Company has taken all reasonable steps to ensure that its [beneficial holders] [underlying investors] are able to certify to such representations. The Company agrees to promptly notify the Fund should the Company have any questions relating to any of the investors or become aware of any changes in the representations set forth in this Certification.

Date: _____        By: _____
                              Name:
                              Title:

B-1

**EXHIBIT C**

[LETTERHEAD OF LOCAL OFFICE OF FATF MEMBER BANKING INSTITUTION
OR BROKERAGE FIRM]

Ascot Fund Limited
c/o Fortis Fund Services (Cayman) Limited
Grand Pavilion Commercial Center
802 West Bay Road
Grand Cayman, Cayman Islands
British West Indies

To whom it may concern:

      I, _____, the _____ of _____, do hereby certify
              *Name*            *Title*         *Name of Institution*

that _____ has maintained an account at our institution for
          *Name of Investor*

_____ years and, during this period, nothing has occurred that would give our  institution
*Insert Period*

cause to be concerned regarding the integrity of _____.
                                          *Name of Investor*

      Do not hesitate to contact me at _____ if you have any further questions.
                         *Insert Telephone No.*

      Very truly yours,

      _____
      Name:
      Title:

C-1

**Confidential**

**GCC-P 0498875**

**BENEFICIAL OWNERSHIP INFORMATION**

**To Be Completed By Entity Investors That Are Privately Held Entities**

**Instructions:** Please complete and return this <u>Exhibit D</u> and provide the name of every person who is directly, or indirectly through intermediaries, the beneficial owner of 10% or more of any voting or non-voting class of equity interests of the Investor. If the intermediary's shareholders or partners are not individuals, continue up the chain of ownership listing their 10% or more equity interest holders until individuals are listed. If there are no 10% beneficial owners, please write None.

| <u>Full Name</u> | If Shareholder is an Individual, Insert Name and Address of <u>Principal Employer and Position</u> | Citizenship (for Individuals) or Principal Place of <u>Business (for Entities)</u> |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

D-1

**Confidential**

**GCC-P 0498876**

**EXHIBIT E**

### TRUST OWNERSHIP INFORMATION

#### To Be Completed By Entity Investors That Are Trusts

**Instructions:  Please complete and return this <u>Exhibit E</u> and provide the name of:  i) every current beneficiary that has, directly or indirectly, an interest of 10% or more in the trust; ii) every person who contributed assets to the trust (settlors or grantors); and iii) every trustee.   If there are intermediaries that are not individuals, continue up the chain of ownership listing their 10% or more equity interest holders until individuals are listed.**

| <u>Full Name and Address</u> | Status (Beneficiary/Settlor/ Trustee) | Citizenship (for Individuals) or Principal Place of Business (for Entities) |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

E-1

**Confidential**

**GCC-P 0498877**

REQUEST FOR REDEMPTION OF SHARES

Dated: _____, _____

To:   Ascot Fund Limited
c/o  Fortis Fund Services (Cayman) Limited
      Grand Pavilion Commercial Center
      802 West Bay Road
      Grand Cayman, Cayman Islands
      British West Indies
      Attn : Manager, Shareholder Services
      Telephone: (345) 949-7942
      Facsimile: (345) 914-9903

Dear Sir or Madam:

The undersigned shareholder of the Fund (the "Shareholder") hereby requests to redeem that portion of its shares (the "Shares") of Ascot Fund Limited (the "Fund") as is indicated below:

        *(check one)*

_____    all of the Shareholder's outstanding Shares

_____    a portion of the Shareholder's outstanding Shares having a net asset value at the time of redemption of $_____.

on the next available redemption date (the "Redemption Date") following receipt of this letter.[*] In the event that after giving effect to such redemption, the net asset value of the Shareholder's unredeemed Shares would be less than $500,000 please:

        *(check one)*

_____    disregard this Request for Redemption

_____    redeem all of the Shareholder's outstanding Shares.

The cash proceeds of the redemption should be paid to the Shareholder as follows:

_____
Name

---

[*]   This Request for Redemption must be received at least 30 days prior to a Redemption Date. **Requests for redemption must be unconditional. Notices of Redemptions are irrevocable by the Investor.**

RR-1

**Confidential**

**GCC-P 0498878**

Set forth instructions for the account to which the cash proceeds of the redemption will be sent by wire transfer:

_____
Name of Bank

_____
Address of Bank

_____
ABA Number

_____
Account Number

_____
Name Under Which Account Is Held

**Note:   Redemption proceeds shall be paid to the same account from which the Shareholder's investment in the Fund was originally remitted, unless the Fund agrees otherwise.**

Signature(s) Guaranteed by:

_____

Very truly yours,

_____
Signature of Shareholder

_____
(Print name)

Mailing Address

_____

_____

_____

RR-2

**Confidential**

**GCC-P 0498879**

## ASCOT FUND LIMITED

### ADDITIONAL SUBSCRIPTION FORM

Ascot Fund Limited
c/o Fortis Fund Services (Cayman) Limited
Grand Pavilion Commercial Center
802 West Bay Road
Grand Cayman, Cayman Islands
British West Indies
Attn.: Manager, Shareholder Services
Telephone: (345) 949-7942
Facsimile: (345) 914-9903

Dear _____:

        The undersigned hereby wishes to make an additional subscription for Shares ("Additional Subscription") in Ascot Fund Limited (the "Fund").

        The amount of Additional Subscription is: $_____.

        The undersigned acknowledges and agrees: (i) that the undersigned is making the Additional Subscription on the terms and conditions contained in the subscription agreement, dated _____ ___, 200__, previously executed by the undersigned and accepted by the Fund (the "Subscription Agreement"); (ii) that the representations and warranties of the undersigned contained in the Subscription Agreement are true and correct in all material respects as of the date set forth below; (iii) the information provided on the Investor Profile Form in the Subscription Agreement is correct as of the date set forth below; and (iv) the background information provided to the Registrar and Transfer Agent is true and correct in all material respects as of the date set forth below.

**THE UNDERSIGNED AGREES TO NOTIFY THE FUND
PROMPTLY SHOULD THERE BE ANY CHANGE IN ANY OF
THE FOREGOING INFORMATION.**

Dated: _____ ___, 200__

| INDIVIDUALS | ENTITIES |
|---|---|
| | |
| _____ | _____ |
| Signature | Print Name of Entity |
| | By: |
| _____ | _____ |
| Print Name | Authorized Signature |
| | |
| _____ | _____ |
| Additional Investor Signature | Print Name and Title |
| | |
| _____ | |
| Print Name | |

AS-1

**Confidential**

**FOR INTERNAL USE ONLY**
To be completed by FORTIS FUND SERVICES (CAYMAN) LIMITED

ADDITIONAL SUBSCRIPTION ACCEPTED
AS TO $_____

**ASCOT FUND LIMITED**
By:  FORTIS FUND SERVICES (CAYMAN) LIMITED
By:_____

Date:  _____, 200____

AS-2

**Confidential**

**GCC-P 0498881**

## ASCOT FUND LIMITED

### CLIENT PRIVACY NOTICE

Your privacy is very important to us. This Privacy Notice sets forth our policies with respect to nonpublic personal information of investors, prospective investors and former investors. These policies apply to individuals only and may be changed at any time, provided a notice of such change is given to you.

You provide us with personal information, such as your address, assets and/or income information, (i) in the Subscription Agreement and related documents, (ii) in correspondence and conversations with the Fund's representatives and (iii) through transactions in the Fund.

We do not disclose any of this personal information about our investors, prospective investors or former investors to anyone, other than to our affiliates, and except as permitted by law, such as to our attorneys, auditors, brokers and regulators and, in such case, only as necessary to facilitate the acceptance and management of your investment. Thus, it may be necessary, under anti-money laundering and similar laws, to disclose information about Investors in order to accept subscriptions from them. We will also release information about you if you direct us to do so, if compelled to do so by law, or in connection with any government or self-regulatory organization request or investigation.

We may also disclose information you provide to us to companies that perform marketing services on our behalf, such as a placement agent. If such a disclosure is made, the Fund and the General Partner will require such third parties to treat your private information with confidentiality.

We seek to carefully safeguard your private information and, to that end, restrict access to nonpublic personal information about you to those employees and other persons who need to know the information to enable the Fund to provide services to you. We maintain physical, electronic and procedural safeguards to protect your nonpublic personal information.

**Confidential**