# Exhibit 1

(Amended Complaint)

**WINDELS MARX LANE & MITTENDORF, LLP**
156 West 56th Street
New York, New York 10019
Tel: (212) 237-1000
Fax: (212) 262-1215
Howard L. Simon
Regina Griffin
Stacey A. Bell

*Special Counsel to Irving H. Picard, Trustee for the*
*Substantively Consolidated SIPA Liquidation of*
*Bernard L. Madoff Investment Securities LLC and*
*Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>        Plaintiff-Applicant,<br><br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>        Defendant. | Adv. Pro. No. 08-01789 (BRL)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>        Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>        Plaintiff,<br><br>v.<br><br>STANLEY I. LEHRER, in his capacity as administrator of the Stanley I. Lehrer and Stuart M. Stein, J/T WROS; STUART M. STEIN, individually, and in his capacity as administrator of the Stanley I. Lehrer and Stuart M. Stein, J/T WROS; ARTHUR SISKIND; LINDA SOHN; NEAL GOLDMAN; DOUGLAS ELLENOFF; ELAINE STEIN ROBERTS; NEUBERGER BERMAN LLC, as former custodian of an Individual Retirement Account for the benefit of | Adv. Pro. No. 10-05259 (BRL) |

ELAINE STEIN ROBERTS; ARTHUR J.
FEIBUS; EUNICE CHERVONY LEHRER; NTC
& CO. LLP, as former custodian of an Individual
Retirement Account for the benefit of EUNICE
CHERVONY; ELAINE S. STEIN; ELAINE S.
STEIN REVOCABLE TRUST; JAMAT
COMPANY, LLC; THE MESTRO COMPANY;
TRUST U/W/O DAVID L. FISHER; TRUST
U/T/A 8/20/90; and EVELYN FISHER,
individually, and in her capacity as Trustee for
TRUST U/W/O DAVID L. FISHER and TRUST
U/T/A 8/20/90,

                                    Defendants.

## AMENDED COMPLAINT

Irving H. Picard (the "Trustee"), as trustee for the liquidation of the business of

Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor

Protection Act, 15 U.S.C. §§ 78aaa, *et seq*. ("SIPA"),[1] and the substantively consolidated estate

of Bernard L. Madoff individually ("Madoff"), by and through his undersigned counsel, for his

amended complaint (the "Amended Complaint") states as follows:

## NATURE OF PROCEEDING

1.      This adversary proceeding arises from the massive Ponzi scheme perpetrated by

Madoff.  Over the course of the scheme, there were more than 8,000 client accounts at BLMIS.

In early December 2008, BLMIS generated client account statements for its approximately 4,900

open client accounts.  When added together, these statements purport that clients of BLMIS had

approximately $65 billion invested with BLMIS.  In reality, BLMIS had assets on hand worth a

small fraction of that amount.  On March 12, 2009, Madoff admitted to the fraudulent scheme

and pled guilty to 11 felony counts, and was sentenced on June 29, 2009 to 150 years in prison.

---

[1] For convenience, future reference to SIPA will not include "15 U.S.C."

Stanley I. Lehrer ("Lehrer") and Stuart M. Stein ("Stein") received avoidable transfers from BLMIS.

2.      Since December 11, 2002, Lehrer and Stein received the amount of $22,371,311 from BLMIS.  The Trustee's investigation has revealed that all of this amount represented fictitious profits from the Ponzi scheme.  Accordingly, the Trustee seeks avoidance of the Transfers (as defined below) as they constitute nothing more than other people's money.

3.      Upon information and belief, Stein, Arthur Siskind, Linda Sohn, Neal Goldman, Douglas Ellenoff, Elaine Stein Roberts, Neuberger Berman LLC, as former custodian of the Individual Retirement Account for the benefit of Elaine Stein Roberts, Arthur J. Feibus, Eunice Chervony Lehrer, NTC & Co. LLP, as former custodian of the Individual Retirement Account for the benefit of Eunice Chervony, Elaine S. Stein, the Elaine S. Stein Revocable Trust, Jamat Company, LLC, The Mestro Company, Trust u/w/o David L. Fisher, Trust u/t/a 8/20/90, and Evelyn Fisher, individually, and in her capacity as trustee for the Trust u/w/o David L. Fisher and the Trust u/t/a 8/20/90 (the "Subsequent Transferee Defendants") as well as Lehrer, received subsequent transfers of the avoidable transfers referenced herein.  To the extent the funds transferred from BLMIS were for the benefit of the Subsequent Transferee Defendants, the Subsequent Transferee Defendants are the initial transferees of such transfers for purposes of the allegations herein.

4.      This adversary proceeding is brought pursuant to sections 78fff(b), 78fff-1(a) and 78fff-2(c)(3) of SIPA, sections 105(a), 544, 548(a), 550(a) and 551 of title 11 of the United States Code (the "Bankruptcy Code"), the New York Fraudulent Conveyance Act (New York Debtor and Creditor Law § 270 *et seq*. (McKinney 2001) ("DCL")) and other applicable law, for avoidance of fraudulent conveyances in connection with certain transfers of property by BLMIS

to or for the benefit of Lehrer, Stein and the Subsequent Transferee Defendants.  The Trustee

seeks to set aside such transfers and preserve and recover the property for the benefit of BLMIS'

defrauded customers.

## JURISDICTION AND VENUE

5.      This is an adversary proceeding commenced before the same Court before whom

the main underlying SIPA proceeding, No. 08-01789 (BRL) (the "SIPA Proceeding"), is

pending.  The SIPA Proceeding was originally brought in the United States District Court for the

Southern District of New York as *Securities Exchange Commission v. Bernard L. Madoff*

*Investment Securities LLC et al.*, No. 08 CV 10791 (the "District Court Proceeding") and has

been referred to this Court.  This Court has jurisdiction over this adversary proceeding under 28

U.S.C. § 1334(b) and 15 U.S.C. §§ 78eee(b)(2)(A), (b)(4).

6.      This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (H) and (O).

7.      Venue in this district is proper under 28 U.S.C. § 1409.

## DEFENDANTS

8.      Upon information and belief, Defendant Stuart M. Stein maintains his residence

in Ft. Lauderdale, Florida.  Stein holds a BLMIS account with Lehrer as joint tenants with the

right of survivorship in the name, "Stanley I. Lehrer and Stuart M. Stein, J/T WROS," (the "Joint

Tenancy Account") with the account address reported as White Plains, New York.  Stein is

named in this Amended Complaint, individually, and in his capacity as administrator of the Joint

Tenancy Account.

9.      Upon information and belief, Stanley I. Lehrer maintains his residence in Delray

Beach, Florida.  Lehrer holds a BLMIS account with Stein as joint tenants with the right of

survivorship in the name, "Stanley I. Lehrer and Stuart M. Stein, J/T WROS," with the account

address reported as White Plains, New York.  Lehrer is named in this Amended Complaint solely in his capacity as administrator of the Joint Tenancy Account, and not personally.

10.     Upon information and belief, Subsequent Transferee Defendant Arthur M. Siskind maintains his residence in New York, New York.

11.     Upon information and belief, Subsequent Transferee Defendant Linda Sohn maintains her residence in New York, New York.

12.     Upon information and belief, Subsequent Transferee Defendant Neal Goldman maintains his residence in Brooklyn, New York.

13.     Upon information and belief, Subsequent Transferee Defendant Douglas Ellenoff maintains his residence in New York, New York.

14.     Upon information and belief, Subsequent Transferee Defendant Elaine Stein Roberts maintains her residence in Delray Beach, Florida.

15.     Upon information and belief, Subsequent Transferee Defendant Neuberger Berman, LLC is a limited liability company formed under the laws of the State of Delaware.  Its principal place of business is located at 605 Third Avenue, New York, New York 10158.  Upon further information and belief, Subsequent Transferee Defendant Neuberger Berman, LLC, was, at all relevant times, the custodian of an Individual Retirement Account for the benefit of Elaine Stein Roberts.

16.     Upon information and belief, Subsequent Transferee Defendant Arthur J. Feibus maintains his residence in Mount Kisco, New York.

17.     Upon information and belief, Subsequent Transferee Defendant Eunice Chervony Lehrer maintains her residence in Delray Beach, Florida.

18.    Upon information and belief, Subsequent Transferee Defendant NTC & Co. LLP is a limited liability partnership that was formed under the laws of the State of Colorado.  Its principal place of business is located at 717 17th Street, Suite 2100, Denver, Colorado 08202.  Upon further information and belief, Subsequent Transferee Defendant NTC & Co. LLP, was, at all relevant times, the custodian of an Individual Retirement Account for the benefit of Eunice Chervony.

19.    Upon information and belief, Subsequent Transferee Defendant Elaine S. Stein maintains her residence in Delray Beach, Florida.

20.    Upon information and belief, Subsequent Transferee Defendant the Elaine S. Stein Revocable Trust is a revocable trust formed under the laws of the State of New York with an address reported in Delray Beach, Florida.  Upon information and belief, Defendant Stuart Stein is a trustee of the Elaine S. Stein Revocable Trust and Subsequent Transferee Defendant Elaine S. Stein is a beneficiary of this trust.

21.    Upon information and belief, Subsequent Transferee Defendant Jamat Company, LLC is a limited liability company formed under the laws of the State of New York.  Its principal place of business is located in White Plains, New York.  Upon further information and belief, Defendant Stuart M. Stein and/or Subsequent Transferee Defendant Arthur J. Feibus are the managing members of Jamat Company, LLC.

22.    Upon information and belief, Subsequent Transferee Defendant The Mestro Company is a general partnership organized under the laws of the State of New York.  Its principal place of business is located in White Plains, New York.  Upon further information and belief, Defendant Stuart M. Stein and Subsequent Transferee Defendants Elaine Stein and the Elaine S. Stein Revocable Trust are partners in The Mestro Company.

23.     Upon information and belief, Subsequent Transferee Defendant Trust u/w/o

David L. Fisher is a trust established under the laws of the State of Illinois, with the address

reported as Glencoe, Illinois.  Upon further information and belief, Subsequent Transferee

Defendant Evelyn Fisher is a trustee and the sole beneficiary of the trust.

24.     Upon information and belief, Subsequent Transferee Defendant Trust u/t/a

8/20/90 is a trust established under the laws of the State of Illinois, with the address reported as

Glencoe, Illinois.  Upon further information and belief, Subsequent Transferee Defendant

Evelyn Fisher is a trustee and the sole beneficiary of the trust.

25.     Upon information and belief, Subsequent Transferee Defendant Evelyn Fisher

maintains her residence in Glencoe, Illinois.  Upon further information and belief, Evelyn Fisher

is a trustee and the sole beneficiary of Subsequent Transferee Defendants Trust u/w/o David L.

Fisher and Trust u/t/a 8/20/90.

## BACKGROUND, THE TRUSTEE AND STANDING

26.     On December 11, 2008 (the "Filing Date"),[2] Madoff was arrested by federal

agents for violation of the criminal securities laws, including, *inter alia*, securities fraud,

investment adviser fraud, and mail and wire fraud.  Contemporaneously, the Securities and

Exchange Commission ("SEC") filed a complaint in the District Court which commenced the

District Court Proceeding against Madoff and BLMIS.  The District Court Proceeding remains

pending in the District Court.  The SEC complaint alleged that Madoff and BLMIS engaged in

fraud through the investment advisor activities of BLMIS.

---

[2] Section 78*lll*(7)(B) of SIPA states that the filing date is "the date on which an application for a protective decree is
filed under 78eee(a)(3)," except where the debtor is the subject of a proceeding pending before a United States court
"in which a receiver, trustee, or liquidator for such debtor has been appointed and such proceeding was commenced
before the date on which such application was filed, the term 'filing date' means the date on which such proceeding
was commenced." 15 U.S.C. § 78*lll*(7)(B).  Thus, even though the application for a protective decree was filed on
December 15, 2008, the Filing Date in this action is December 11, 2008.

27.     On December 12, 2008, The Honorable Louis L. Stanton of the District Court
entered an order appointing Lee S. Richards, Esq. (the "Receiver") as receiver for the assets of
BLMIS.

28.     On December 15, 2008, pursuant to section 78eee(a)(4)(A) of SIPA, the SEC
consented to a combination of its own action with an application of the Securities Investor
Protection Corporation ("SIPC").  Thereafter, pursuant to section 78eee(a)(4)(B) of SIPA, SIPC
filed an application in the District Court alleging, *inter alia*, that BLMIS was not able to meet its
obligations to securities customers as they came due and, accordingly, its customers needed the
protections afforded by SIPA.

29.     Also on December 15, 2008, Judge Stanton granted the SIPC application and
entered an order pursuant to SIPA (the "Protective Decree"), which, in pertinent part:

a.     appointed the Trustee for the liquidation of the business of BLMIS
pursuant to section 78eee(b)(3) of SIPA;

b.     appointed Baker & Hostetler LLP as counsel to the Trustee pursuant to
section 78eee(b)(3) of SIPA; and

c.     removed the case to this Court pursuant to section 78eee(b)(4) of SIPA.
By this Protective Decree, the Receiver was removed as Receiver for BLMIS.

30.     By orders dated December 23, 2008 and February 4, 2009, respectively, the
Bankruptcy Court approved the Trustee's bond and found that the Trustee was a disinterested
person.  Accordingly, the Trustee is duly qualified to serve and act on behalf of the estate of
BLMIS.

31.     At a Plea Hearing on March 12, 2009 in the case captioned *United States v.
Madoff*, Case No. 09-CR-213(DC), Madoff pled guilty to an eleven-count criminal information

filed against him by the United States Attorneys' Office for the Southern District of New York.

At the Plea Hearing, Madoff admitted that he "operated a Ponzi scheme through the investment

advisory side of [BLMIS]." Plea Allocution of Bernard L. Madoff at 23, *United States v.*

*Madoff,* No. 09-CR-213 (DC) (S.D.N.Y. March 12, 2009) (Docket No. 50). Additionally,

Madoff asserted "[a]s I engaged in my fraud, I knew what I was doing [was] wrong, indeed

criminal." *Id.* Madoff was sentenced on June 29, 2009 to 150 years in prison.

32.     On August 11, 2009, a former BLMIS employee, Frank DiPascali, pled guilty to

participating in and conspiring to perpetuate the Ponzi scheme. At a Plea Hearing on August 11,

2009 in the case entitled *United States v. DiPascali,* Case No. 09-CR-764 (RJS), DiPascali pled

guilty to a ten-count criminal information. Among other things, DiPascali admitted that the

fictitious scheme had begun at BLMIS since at least the 1980s. Plea Allocution of Frank

DiPascali at 46, *United States v. DiPascali,* No. 09-CR-764 (RJS) (S.D.N.Y. Aug. 11, 2009)

(Docket No. 11).

33.     As the Trustee appointed under SIPA, the Trustee is charged with recovering and

paying out customer property to BLMIS' customers, assessing claims, and liquidating any other

assets of the firm for the benefit of the estate and its creditors. The Trustee is in the process of

marshalling BLMIS' assets, and the liquidation of BLMIS' assets is well underway. However,

such assets will not be sufficient to reimburse the customers of BLMIS for the billions of dollars

that they invested with BLMIS over the years. Consequently, the Trustee must use his authority

under SIPA and the Bankruptcy Code to pursue recovery from customers who received

preferences and/or payouts of fictitious profits to the detriment of other defrauded customers

whose money was consumed by the Ponzi scheme. Absent this or other recovery actions, the

Trustee will be unable to satisfy the claims described in subparagraphs (A) through (D) of SIPA

section 78fff-2(c)(1).

34.     Pursuant to section 78fff-1(a), the Trustee has the general powers of a bankruptcy

trustee in a case under the Bankruptcy Code in addition to the powers granted by SIPA pursuant

to SIPA section 78fff(b).  Chapters 1, 3, 5 and subchapters I and II of chapter 7 of the

Bankruptcy Code apply to this proceeding to the extent consistent with SIPA.

35.     Pursuant to sections 78fff(b) and 78*lll*(7)(B) of SIPA, the Filing Date is deemed to

be the date of the filing of the petition within the meaning of section 548 of the Bankruptcy Code

and the date of the commencement of the case within the meaning of section 544 of the

Bankruptcy Code.

36.     The Trustee has standing to bring these claims pursuant to section 78fff-1(a) of

SIPA and the Bankruptcy Code, including sections 323(b) and 704(a)(1), because, among other

reasons:

        a.      Lehrer, Stein and the Subsequent Transferee Defendants received

"Customer Property" as defined in 15 U.S.C. §78*lll*(4);

        b.      BLMIS incurred losses as a result of the claims set forth herein;

        c.      BLMIS' customers were injured as a result of the conduct detailed herein;

        d.      SIPC has not reimbursed, and statutorily cannot fully reimburse, all

customers for all of their losses;

        e.      the Trustee will not be able to fully satisfy all claims;

        f.      the Trustee, as bailee of customer property, can sue on behalf of the

customer bailors;

g.      the Trustee is the assignee of claims paid, and to be paid, to customers of

BLMIS who have filed claims in the liquidation proceeding (such claim-filing customers,

collectively, "Accountholders").  As of the date hereof, the Trustee has received multiple express

unconditional assignments of the applicable Accountholders' causes of action, which actions

could have been asserted against Lehrer, Stein and the Subsequent Transferee Defendants.  As

assignee, the Trustee stands in the shoes of persons who have suffered injury in fact and a

distinct and palpable loss for which the Trustee is entitled to reimbursement in the form of

monetary damages.  The Trustee brings this action on behalf of, among others, those defrauded

customers of BLMIS who invested more money in BLMIS than they withdrew; and

h.      SIPC is the subrogee of claims paid, and to be paid, to customers of

BLMIS who have filed claims in the liquidation proceeding.  SIPC has expressly conferred upon

the Trustee enforcement of its rights of subrogation with respect to payments it has made and is

making to customers of BLMIS from SIPC funds.

## THE FRAUDULENT PONZI SCHEME

37.      Founded in 1959, BLMIS began operations as a sole proprietorship of Madoff and

later, effective January 2001, formed as a New York limited liability company wholly owned

by Madoff.  Since in or about 1986, BLMIS operated from its principal place of business at

885 Third Avenue, New York, New York.  Madoff, as founder, proprietor, chairman, and chief

executive officer, ran BLMIS together with several family members and a number of additional

employees.  BLMIS was registered with the SEC as a securities broker-dealer under section

15(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78$o$(b).  By that registration, BLMIS

is a member of SIPC.  BLMIS had three business units: investment advisory (the "IA Business"),

market making and proprietary trading.

38.    For certain accounts in the IA Business, BLMIS purported to participate in a
capital appreciation/depreciation strategy, depending on whether the customer sought to generate
gains or losses.  For example, the strategy was executed by either purporting to purchase small
groups of securities near lows and then purporting to sell those same securities at highs, or by
purporting to short-sell securities near highs and then purporting to repurchase those securities
near lows.

39.    For other accounts, Madoff described the IA Business' strategy as a "split-strike
conversion" strategy.  Madoff promised these clients that their funds would be invested in a
basket of common stocks within the S&P 100 Index, which is a collection of the 100 largest U.S.
publicly traded companies.  The basket of stocks would be intended to mimic the movement of
the S&P 100 Index.  Madoff asserted that he would carefully time purchases and sales to
maximize value, but this meant that the clients' funds would intermittently be out of the market,
at which times they would purportedly be invested in U.S. issued securities and money market
funds.  The second part of the split-strike conversion strategy was the hedge of such purchases
with option contracts.  Madoff purported to purchase and sell S&P 100 Index option contracts
that closely corresponded with the stocks in the basket, thereby controlling the downside risk of
price changes in the basket of stocks.

40.    Although clients of the IA Business received monthly or quarterly statements
purportedly showing the securities that were held in – or had been traded through – their
accounts, as well as the growth of and profit from those accounts over time, the trades reported
on these statements were a complete fabrication.  The security purchases and sales depicted in
the account statements virtually never occurred and the profits reported were entirely fictitious.
At his Plea Hearing, Madoff admitted that he never in fact purchased any of the securities he

claimed to have purchased for customer accounts.  *See* Plea Allocution of Bernard L. Madoff at

3, *United States v. Madoff,* No. 09-CR-213 (DC) (S.D.N.Y. March 12, 2009) (Docket No. 50).

Indeed, based on the Trustee's investigation to date and with the exception of isolated individual

trades for certain clients, there is no record of BLMIS having cleared any purchase or sale of

securities on behalf of the IA Business at the Depository Trust & Clearing Corporation, the

clearing house for such transactions.

41.     Prior to his arrest, Madoff assured clients and regulators that he conducted all

trades on the over-the-counter market after hours.  To bolster that lie, Madoff periodically wired

tens of millions of dollars to BLMIS' affiliate, Madoff Securities International Ltd. ("MSIL"), a

London based entity substantially owned by Madoff and his family.  There are no records that

MSIL ever used the wired funds to purchase securities for the accounts of the IA Business

clients.

42.     Additionally, based on the Trustee's investigation to date, there is no evidence

that BLMIS ever purchased or sold any of the options that Madoff claimed on customer

statements to have purchased and sold.

43.     For all periods relevant hereto, the IA Business was operated as a Ponzi scheme

and Madoff and his co-conspirators concealed the ongoing fraud in an effort to hinder, delay or

defraud other current and prospective customers of BLMIS.  The money received from investors

was not set aside to buy securities as purported, but instead was primarily used to make the

distributions to – or payments on behalf of – other investors.  The money sent to BLMIS for

investment, in short, was simply used to keep the scheme going and to enrich Madoff, his

associates and others, including Lehrer, Stein and the Subsequent Transferee Defendants, until

such time as the requests for redemptions in December 2008 overwhelmed the flow of new investments and caused the inevitable collapse of the Ponzi scheme.

44.     The payments to investors constituted an intentional misrepresentation of fact regarding the underlying accounts and were an integral and essential part of the fraud.  The payments were necessary to validate the false account statements, and were made to avoid the detection of the fraud, to retain existing investors and to lure other investors in the Ponzi scheme.

45.     During the scheme, certain investors requested and received distributions of the so-called "profits" listed for their accounts which were nothing more than fictitious profits.  Other investors, from time to time, redeemed or closed their accounts, or removed portions of purportedly available funds, and were paid consistently with the statements they had been receiving.  Some of those investors later re-invested part or all of those withdrawn payments with BLMIS.

46.     When payments were made to or on behalf of these investors, including to Lehrer, Stein and the Subsequent Defendants, the falsified monthly statements of accounts reported that the accounts of such investors included substantial gains.  In reality, BLMIS had not invested the investors' principal as reflected in customer statements.  In an attempt to conceal the ongoing fraud and thereby hinder, delay or defraud other current and prospective investors, BLMIS paid to or on behalf of certain investors the inflated amounts reflected in the falsified financial statements, including principal and/or fictitious profits.

47.     BLMIS used the funds deposited from new investments to continue operations and pay redemption proceeds to or on behalf of other investors and to make other transfers.  Due to the siphoning and diversion of new investments to fund redemptions requested by other investors, BLMIS did not have the funds to pay investors on account of their new investments.

BLMIS was able to stay afloat only by using the principal invested by some clients to pay other investors or their designees.

48.     In an effort to hinder, delay or defraud authorities from detecting the fraud, BLMIS did not register as an Investment Advisor until September 2006.

49.     In or about January 2008, BLMIS filed with the SEC a Uniform Application for Investment Adviser Registration.  The application represented, *inter alia*, that BLMIS had 23 customer accounts and assets under management of approximately $17.1 billion.  In fact, in January 2008, BLMIS had approximately 4,900 active client accounts with a purported value of approximately $65 billion under management.

50.     Not only did Madoff seek to evade regulators, Madoff also had false audit reports "prepared" by Friehling & Horowitz, a three-person accounting firm in Rockland County, New York.  Of the two accountants at the firm, one was semi-retired and living in Florida for many years prior to the Filing Date.

51.     At all times relevant hereto, the liabilities of BLMIS were billions of dollars greater than the assets of BLMIS.  At all relevant times, BLMIS was insolvent in that (i) its assets were worth less than the value of its liabilities; (ii) it could not meet its obligations as they came due; and (iii) at the time of the transfers, BLMIS was left with insufficient capital.

## THE TRANSFERS

52.     According to BLMIS' records, the Joint Tenancy Account (No. 1L0013) was maintained with BLMIS, as set forth on Exhibit A.  The Joint Tenancy Account was first established in or about January 1978 by Howard M. Squadron ("Squadron") and Allen A. Stein as joint tenants with the right of survivorship.  Following Allen A. Stein's death on November 8, 1988, ownership of the Joint Tenancy Account changed to Squadron and Stanley I. Lehrer as

joint tenants with the right of survivorship.  On or about April 21, 1992, ownership of the Joint

Tenancy Account was changed to Stanley I. Lehrer and Stuart M. Stein, as joint tenants with the

right of survivorship, and the named account holder was amended to "Stanley I. Lehrer and

Stuart M. Stein, J/T WROS."

53.     Upon information and belief, a Customer Agreement, an Option Agreement,

and/or a Trading Authorization Limited to Purchases and Sales of Securities and Options

(collectively, the "Account Agreements") were executed and delivered to BLMIS at BLMIS'

headquarters located at 885 Third Avenue, New York, New York.

54.     The Joint Tenancy Account Agreements were to be performed in New York, New

York through securities trading activities that would take place in New York, New York.  The

Joint Tenancy Account was held in New York, New York, and funds were sent to BLMIS and/or

to BLMIS' account at JPMorgan Chase & Co., Account #xxxxxxxxxxx1703 (the "BLMIS Bank

Account") in New York, New York for application to the Joint Tenancy Account and the

purported conducting of trading activities.  Between the date the Joint Tenancy Account was

opened and the Filing Date, deposits were made to BLMIS through checks and/or wire transfers

into the BLMIS Bank Account and/or the Joint Tenancy Account received inter-account transfers

from other BLMIS accounts.

55.     During the six years prior to the Filing Date, BLMIS made transfers to Lehrer,

Stein and/or the Subsequent Transferee Defendants (collectively, the "Transfers") totaling at

least $22,371,311 in fictitious profits from the Ponzi scheme.  The Transfers constitute non-

existent profits supposedly earned in the Joint Tenancy Account, but, in reality, they were other

people's money.  The Transfers were made to or for the benefit of the Lehrer, Stein and/or the

Subsequent Transferee Defendants and are set forth in Columns 10 and 11 on Exhibit B annexed
hereto.

56.     The Transfers that are avoidable and recoverable under sections 544(b), 550(a)(1)
and 551 of the Bankruptcy Code, applicable provisions of SIPA, particularly SIPA section 78fff-
2(c)(3), and applicable provisions of N.Y. CPLR 203(g) (McKinney 2001) and DCL sections
273 – 279 (McKinney 2001) total at least $22,371,311 and are referred to hereafter as the "Six
Year Transfers."  See Exhibit B, Column 11.

57.     The Transfers that are avoidable and recoverable under sections 548(a), 550(a)(1)
and 551 of the Bankruptcy Code and applicable provisions of SIPA, particularly SIPA section
78fff-2(c)(3), total at least $4,955,500 and are referred to hereafter as the "Two Year Transfers."
See Exhibit B, Column 10.

58.     Upon information and belief, some or all of the Transfers were subsequently
transferred by Lehrer, Stein and/or the Subsequent Transferee Defendants to one or more of the
Subsequent Transferee Defendants (collectively, the "Subsequent Transfers").

59.     The Subsequent Transfers, or the value thereof, are recoverable from the
Subsequent Transferee Defendants pursuant to § 550(a) of the Bankruptcy Code.

60.     The Trustee's investigation is ongoing and the Trustee reserves the right to
(i) supplement the information regarding the Transfers, Subsequent Transfers and any additional
transfers and (ii) seek recovery of such additional transfers.

61.     To the extent that any of the avoidance and/or recovery counts may be
inconsistent with each other, they are to be treated as being pled in the alternative.

## CUSTOMER CLAIMS

62.     On or about February 26, 2009, Lehrer and Stein, as administrators of the Joint
Tenancy Account (the "Administrator Defendants"), filed a customer claim with the Trustee
which the Trustee has designated as Claim No. 004003 (the "Customer Claim").

63.     On or about July 1, 2010, the Trustee issued a Notice of Trustee's Determination
of Claim to Defendants (the "Determination") with respect to the Customer Claim.  A copy of
the Determination is attached hereto as Exhibit C.

64.     The Administrator Defendants did not file an objection to the Determination with
the Court.

65.     On December 23, 2008, this Court entered an Order on Application for Entry of
an Order Approving Form and Manner of Publication and Mailing of Notices, Specifying
Procedures for Filing, Determination and Adjudication of Claims, and Providing Other Relief
("Claims Procedures Order"; Docket No. 12).  The Claims Procedures Order includes a process
for determination and allowance of claims under which the Trustee has been operating.  The
Trustee intends to resolve the Customer Claim and any related objections to the Trustee's
determination of such claim through a separate hearing as contemplated by the Claims
Procedures Order.

## COUNT ONE
## FRAUDULENT TRANSFER – 11 U.S.C. §§ 548(a)(1)(A), 550(a) AND 551

66.     To the extent applicable, the Trustee incorporates by reference the allegations
contained in the previous paragraphs of this Amended Complaint as if fully rewritten herein.

67.     Each of the Two Year Transfers was made on or within two years before the
Filing Date.

68.     Each of the Two Year Transfers constituted a transfer of an interest of BLMIS in property within the meaning of section 101(54) of the Bankruptcy Code and pursuant to section 78fff-2(c)(3) of SIPA.

69.     Each of the Two Year Transfers was made by BLMIS with the actual intent to hinder, delay or defraud some or all of BLMIS' then existing and/or future creditors.

70.     Each of the Two Year Transfers constitutes a fraudulent transfer avoidable by the Trustee pursuant to section 548(a)(1)(A) of the Bankruptcy Code and recoverable pursuant to section 550(a) of the Bankruptcy Code and section 78fff-2(c)(3) of SIPA.

71.     As a result of the foregoing, pursuant to sections 548(a)(1)(A), 550(a), and 551 of the Bankruptcy Code and section 78fff-2(c)(3) of SIPA, the Trustee is entitled to a judgment: (a) avoiding and preserving the Two Year Transfers, (b) directing that the Two Year Transfers be set aside, and (c) recovering the Two Year Transfers, or the value thereof, from Stein for the benefit of the estate of BLMIS.

**COUNT TWO**
**FRAUDULENT TRANSFER – 11 U.S.C. §§ 548(a)(1)(B), 550(a) AND 551**

72.     To the extent applicable, the Trustee incorporates by reference the allegations contained in the previous paragraphs of this Amended Complaint as if fully rewritten herein.

73.     Each of the Two Year Transfers was made on or within two years before the Filing Date.

74.     Each of the Two Year Transfers constituted a transfer of an interest of BLMIS in property within the meaning of section 101(54) of the Bankruptcy Code and pursuant to section 78fff-2(c)(3) of SIPA.

75.     BLMIS received less than reasonably equivalent value in exchange for each of the Two Year Transfers.

76.     At the time of each of the Two Year Transfers, BLMIS was insolvent, or became

insolvent as a result of the Two Year Transfers.

77.     At the time of each of the Two Year Transfers, BLMIS was engaged in a business

or a transaction, or was about to engage in a business or transaction, for which any property

remaining with BLMIS was an unreasonably small capital.

78.     At the time BLMIS made each of the Two Year Transfers, BLMIS had incurred,

was intending to incur, or believed that it would incur debts beyond its ability to pay them as the

debts matured.

79.     Each of the Two Year Transfers constitutes a fraudulent transfer avoidable by the

Trustee pursuant to section 548(a)(1)(B) of the Bankruptcy Code and recoverable pursuant to

section 550(a) of the Bankruptcy Code and section 78fff-2(c)(3) of SIPA.

80.     As a result of the foregoing, pursuant to sections 548(a)(1)(B), 550(a), and 551 of

the Bankruptcy Code and section 78fff-2(c)(3) of SIPA, the Trustee is entitled to a judgment:

(a) avoiding and preserving the Two Year Transfers, (b) directing that the Two Year Transfers be

set aside, and (c) recovering the Two Year Transfers, or the value thereof, from Stein for the

benefit of the estate of BLMIS.

## COUNT THREE
## FRAUDULENT TRANSFER – NEW YORK DEBTOR AND CREDITOR LAW §§ 276, 278 AND/OR 279, AND 11 U.S.C. §§ 544(b), 550(a) AND 551

81.     To the extent applicable, the Trustee incorporates by reference the allegations

contained in the previous paragraphs of this Amended Complaint as if fully rewritten herein.

82.     At all times relevant to the Six Year Transfers, there have been and are one or

more creditors who have held and still hold matured or unmatured unsecured claims against

BLMIS that were and are allowable under section 502 of the Bankruptcy Code or that were and are not allowable only under section 502(e) of the Bankruptcy Code.

83.     Each of the Six Year Transfers constituted a conveyance by BLMIS as defined under DCL section 270.

84.     Each of the Six Year Transfers was made by BLMIS with the actual intent to hinder, delay or defraud the creditors of BLMIS.  BLMIS made each of the Six Year Transfers to or for the benefit of Lehrer and Stein in furtherance of a fraudulent investment scheme.

85.     As a result of the foregoing, pursuant to DCL sections 276, 278 and/or 279, sections 544(b), 550(a) and 551 of the Bankruptcy Code, and section 78fff-2(c)(3) of SIPA, the Trustee is entitled to a judgment: (a) avoiding and preserving the Six Year Transfers, (b) directing that the Six Year Transfers be set aside, and (c) recovering the Six Year Transfers, or the value thereof, from Stein, for the benefit of the estate of BLMIS.

## COUNT FOUR
## FRAUDULENT TRANSFER – NEW YORK DEBTOR AND CREDITOR LAW §§ 273 AND 278 AND/OR 279, AND 11 U.S.C. §§ 544(b), 550(a) AND 551

86.     To the extent applicable, the Trustee incorporates by reference the allegations contained in the previous paragraphs of the Amended Complaint as if fully rewritten herein.

87.     At all times relevant to the Six Year Transfers, there have been and are one or more creditors who have held and still hold matured or unmatured unsecured claims against BLMIS that were and are allowable under section 502 of the Bankruptcy Code or that were and are not allowable only under section 502(e) of the Bankruptcy Code.

88.     Each of the Six Year Transfers constituted a conveyance by BLMIS as defined under DCL section 270.

89.     BLMIS did not receive fair consideration for any of the Six Year Transfers.

90.    BLMIS was insolvent, or became insolvent as a result of the Six Year Transfers.

91.    As a result of the foregoing, pursuant to DCL sections 273, 278 and/or 279,

sections 544(b), 550(a) and 551 of the Bankruptcy Code, and section 78fff-2(c)(3) of SIPA, the

Trustee is entitled to a judgment: (a) avoiding and preserving the Six Year Transfers,

(b) directing that the Six Year Transfers be set aside, and (c) recovering the Six Year Transfers,

or the value thereof, from Stein, for the benefit of the estate of BLMIS.

**COUNT FIVE**
**FRAUDULENT TRANSFER – NEW YORK DEBTOR AND CREDITOR LAW §§ 274,**
**278 AND/OR 279, AND 11 U.S.C. §§ 544(b), 550(a), AND 551**

92.    To the extent applicable, the Trustee incorporates by reference the allegations

contained in the previous paragraphs of the Amended Complaint as if fully rewritten herein.

93.    At all times relevant to the Six Year Transfers there have been and are one or

more creditors who have held and still hold matured or unmatured unsecured claims against

BLMIS that were and are allowable under section 502 of the Bankruptcy Code or that were and

are not allowable only under section 502(e) of the Bankruptcy Code.

94.    Each of the Six Year Transfers constituted a conveyance by BLMIS as defined

under DCL section 270.

95.    BLMIS did not receive fair consideration for any of the Six Year Transfers.

96.    At the time BLMIS made each of the Six Year Transfers, BLMIS was engaged or

was about to engage in a business or transaction for which the property remaining in its hands

after each of the Six Year Transfers was an unreasonably small capital.

97.    As a result of the foregoing, pursuant to DCL sections 274, 278 and/or 279,

sections 544(b), 550(a) and 551 of the Bankruptcy Code, and section 78fff-2(c)(3) of SIPA, the

Trustee is entitled to a judgment: (a) avoiding and preserving the Six Year Transfers,

(b) directing that the Six Year Transfers be set aside, and (c) recovering the Six Year Transfers, or the value thereof, from Stein, for the benefit of the estate of BLMIS.

## COUNT SIX
## FRAUDULENT TRANSFER – NEW YORK DEBTOR AND CREDITOR LAW §§ 275, 278 AND/OR 279, AND 11 U.S.C. §§ 544(b), 550(a), AND 551

98.     To the extent applicable, the Trustee incorporates by reference the allegations contained in the previous paragraphs of the Amended Complaint as if fully rewritten herein.

99.     At all times relevant to the Six Year Transfers there have been and are one or more creditors who have held and still hold matured or unmatured unsecured claims against BLMIS that were and are allowable under section 502 of the Bankruptcy Code or that were and are not allowable only under section 502(e) of the Bankruptcy Code.

100.    Each of the Six Year Transfers constituted a conveyance by BLMIS as defined under DCL section 270.

101.    BLMIS did not receive fair consideration for any of the Six Year Transfers.

102.    At the time BLMIS made each of the Six Year Transfers, BLMIS had incurred, was intending to incur, or believed that it would incur debts beyond its ability to pay them as the debts matured.

103.    As a result of the foregoing, pursuant to DCL sections 275, 278 and/or 279 and sections 544(b), 550(a) and 551 of the Bankruptcy Code, and section 78fff-2(c)(3) of SIPA, the Trustee is entitled to a judgment: (a) avoiding and preserving the Six Year Transfers, (b) directing that the Six Year Transfers be set aside, and (c) recovering the Six Year Transfers, or the value thereof, from Stein, for the benefit of the estate of BLMIS.

**COUNT SEVEN**
**RECOVERY OF SUBSEQUENT TRANSFER – NEW YORK DEBTOR AND**
**CREDITOR LAW §§ 278 AND/OR 279 AND 11 U.S.C. §§ 544, 548 , 550(a) AND 551**

104.    To the extent applicable, the Trustee incorporates by reference the allegations

contained in the previous paragraphs of this Amended Complaint as if fully rewritten herein.

105.    Each of the Transfers is avoidable under sections 544 and 548 of the Bankruptcy

Code, DCL sections 273, 274, 275 and/or 276 and section 78fff-2(c)(3) of SIPA.

106.    On information and belief, the Subsequent Transfers were transferred by Lehrer,

Stein and/or one or more of the Subsequent Transferee Defendants to one or more of the

Subsequent Transferee Defendants.

107.    Each of the Subsequent Transfers was made directly or indirectly to the

Subsequent Transferee Defendants.

108.    The Subsequent Transferee Defendants are immediate or mediate transferees of

the Subsequent Transfers.

109.    As a result of the foregoing and the avoidance of the within Transfers, pursuant to

DCL sections 278 and/or 279, sections 544(b), 548(a), 550(a) and 551 of the Bankruptcy Code,

and section 78fff-2(c)(3) of SIPA, the Trustee is entitled to a judgment against the Subsequent

Transferee Defendants: (a) avoiding and preserving the Subsequent Transfers, (b) directing that

the Subsequent Transfers be set aside, and (c) recovering the Subsequent Transfers, or the value

thereof, from the Subsequent Transferee Defendants for the benefit of the estate of BLMIS.

**WHEREFORE**, the Trustee respectfully requests that this Court enter judgment in favor

of the Trustee as follows:

i.    On the First Claim for Relief, pursuant to sections 548(a)(1)(A), 550(a) and 551

of the Bankruptcy Code, and section 78fff-2(c)(3) of SIPA: (a) avoiding and preserving the Two

Year Transfers, (b) directing that the Two Year Transfers be set aside, and (c) recovering the

Two Year Transfers, or the value thereof, from Stein, for the benefit of the estate of BLMIS;

    ii.    On the Second Claim for Relief, pursuant to sections 548(a)(1)(B), 550(a) and

551 of the Bankruptcy Code, and section 78fff-2(c)(3) of SIPA: (a) avoiding and preserving the

Two Year Transfers, (b) directing that the Two Year Transfers be set aside, and (c) recovering

the Two Year Transfers, or the value thereof, from Stein, for the benefit of the estate of BLMIS;

    iii.    On the Third Claim for Relief, pursuant to DCL sections 276, 278 and/or 279,

sections 544(b), 550(a) and 551 of the Bankruptcy Code, and section 78fff-2(c)(3) of SIPA:

(a) avoiding and preserving the Six Year Transfers, (b) directing that the Six Year Transfers be

set aside, and (c) recovering the Six Year Transfers, or the value thereof, from Stein, for the

benefit of the estate of BLMIS;

    iv.    On the Fourth Claim for Relief, pursuant to DCL sections 273, 278 and/or 279,

sections 544(b), 550(a) and 551 of the Bankruptcy Code, and section 78fff-2(c)(3) of SIPA:

(a) avoiding and preserving the Six Year Transfers, (b) directing that the Six Year Transfers be

set aside, and (c) recovering the Six Year Transfers, or the value thereof, from Stein, for the

benefit of the estate of BLMIS;

    v.    On the Fifth Claim for Relief, pursuant to DCL sections 274, 278 and/or 279,

sections 544(b), 550(a), and 551 of the Bankruptcy Code, and section 78fff-2(c)(3) of SIPA:

(a) avoiding and preserving the Six Year Transfers, (b) directing the Six Year Transfers be set

aside, and (c) recovering the Six Year Transfers, or the value thereof, from Stein, for the benefit

of the estate of BLMIS;

    vi.    On the Sixth Claim for Relief, pursuant to DCL sections 275, 278 and/or 279,

sections 544(b), 550(a) and 551 of the Bankruptcy Code, and section 78fff-2(c)(3) of SIPA:

(a) avoiding and preserving the Six Year Transfers, (b) directing that the Six Year Transfers be

set aside, and (c) recovering the Six Year Transfers, or the value thereof, from Stein, for the

benefit of the estate of BLMIS;

      vii.     On the Seventh Claim for Relief as a result of the avoidance of the within

Transfers, pursuant to DCL section 278 and/or 279, sections 544(b), 548, 550(a) and 551 of the

Bankruptcy Code, and section 78fff-2(c)(3) of SIPA: (a) avoiding and preserving the Subsequent

Transfers; (b) directing that the Subsequent Transfers be set aside; and (c) recovering the

Subsequent Transfers, or the value thereof, from the Subsequent Transferee Defendants for the

benefit of the estate of BLMIS.

      viii.    On all Claims for Relief, pursuant to federal common law and N.Y. CPLR 5001

and 5004 awarding the Trustee prejudgment interest from the date on which the Transfers were

received;

      ix.     On all Claims for Relief, establishment of a constructive trust over the proceeds of

the Transfers and the Subsequent Transfers in favor of the Trustee for the benefit of BLMIS'

estate;

      x.      On all Claims for Relief, assignment of Stein's and the Subsequent Transferee

Defendants' income tax refunds from the United States, state and local governments for taxes

paid on fictitious profits during the course of the scheme;

      xi.     On all Claims for Relief, awarding the Trustee all applicable interest, costs, and

disbursements of this action; and

xii.    On all Claims for Relief, granting Plaintiff such other, further, and different relief

as the Court deems just, proper and equitable.

Date:  New York, New York
        December 10, 2010

**WINDELS MARX LANE & MITTENDORF, LLP**

/s/ Regina Griffin
Regina Griffin (rgriffin@windelsmarx.com)
Howard L. Simon (hsimon@windelsmarx.com)
Stacey A. Bell (sbell@windelsmarx.com)
156 West 56th Street
New York, New York 10019
Telephone: (212) 237-1000
Facsimile: (212) 262-1215

*Special Counsel for Irving H. Picard, Trustee for
the Substantively Consolidated SIPA Liquidation of
Bernard L. Madoff Investment Securities LLC and
Bernard L. Madoff*

| BLMIS Account Name | BLMIS Account Number |
|---|---|
| STANLEY I LEHRER & STUART M STEIN J/T WROS | 1L0013 |

MADC1064_00000001

08-01789-smb    Doc 11726-1    Filed 12/10/15    Entered 12/10/15 11:53:55    Exhibit 1
10-05289-smb    Doc 1-2    Filed 10/09/15    Entered 10/09/15 11:53:55    Exhibit B Pg
(Amended Complaint)    Pg 30 of 45

Exhibit B

BLMIS ACCOUNT NO. 1SO135 - STANLEY CHAIS GROUP & STEARY FETTERS/T WROS

| Column 1 | Column 2 | Column 3 | Column 4 | Column 5 | Column 6 | Column 7 | Column 8 | Column 9 | Column 10 | Column 11 |
|---|---|---|---|---|---|---|---|---|---|---|
| Date | Transaction Description | Transaction Amount Reported in Customer Statement | Cash Deposits | Cash Withdrawals | Transfers of Principal In | Transfers of Principal Out | Balance of Principal | 90-Day Preferential Transfers | 2-Year Fraudulent Transfers | 6-Year Fraudulent Conveyances |
| 3/31/1981 | PRINCIPAL CREDIT MARCH 1981 | 1,545,525 [1] | 1,545,525 | - | - | - | 1,545,525 | - | - | - |
| 3/31/1981 | PRINCIPAL CREDIT MARCH 1981 | 290,310 [1] | 290,310 | - | - | - | 1,835,835 | - | - | - |
| 3/9/1982 | CHECK | (750) | - | (750) | - | - | 1,835,085 | - | - | - |
| 3/11/1982 | CHECK | (750) | - | (750) | - | - | 1,834,335 | - | - | - |
| 3/15/1982 | CHECK RET | 750 | 750 | - | - | - | 1,835,085 | - | - | - |
| 7/13/1982 | CHECK | (50,478) | - | (50,478) | - | - | 1,784,607 | - | - | - |
| 10/27/1982 | TRANS TO H SQUADRON (1SO135) | (200,000) | - | - | - | (200,000) | 1,584,607 | - | - | - |
| 1/28/1983 | CHECK | 151,111 | 151,111 | - | - | - | 1,735,718 | - | - | - |
| 7/18/1983 | CHECK | (75,000) | - | (75,000) | - | - | 1,660,718 | - | - | - |
| 7/28/1983 | CHECK | (25,000) | - | (25,000) | - | - | 1,635,718 | - | - | - |
| 8/15/1983 | CHECK | (85,000) | - | (85,000) | - | - | 1,550,718 | - | - | - |
| 2/8/1984 | CHECK | 63,315 | 63,315 | - | - | - | 1,614,033 | - | - | - |
| 4/5/1984 | CHECK | 15,000 | 15,000 | - | - | - | 1,629,033 | - | - | - |
| 5/17/1985 | CHECK | (1,633) | - | (1,633) | - | - | 1,627,400 | - | - | - |
| 3/17/1986 | CHECK | (2,139) | - | (2,139) | - | - | 1,625,261 | - | - | - |
| 3/27/1987 | CHECK | (4,000) | - | (4,000) | - | - | 1,621,261 | - | - | - |
| 1/22/1988 | CHECK | (254,654) | - | (254,654) | - | - | 1,366,607 | - | - | - |
| 2/1/1988 | CHECK | 154,654 | 154,654 | - | - | - | 1,521,261 | - | - | - |
| 2/11/1988 | CHECK | 100,000 | 100,000 | - | - | - | 1,621,261 | - | - | - |
| 4/18/1988 | CHECK | (4,000) | - | (4,000) | - | - | 1,617,261 | - | - | - |
| 2/1/1989 | TRANS TO 10191510 (101915) | (2,175,926) [2] | - | - | - | (1,617,261) | (4,000) | - | - | - |
| 3/2/1989 | CHECK | (4,000) | - | (4,000) | - | - | (4,000) | - | - | - |
| 7/12/1989 | CHECK | 100,000 | 100,000 | - | - | - | 96,000 | - | - | - |
| 1/3/1990 | CHECK | 500,000 | 500,000 | - | - | - | 596,000 | - | - | - |
| 2/2/1990 | TRANS FROM 10191510 (101915) | 1,436,087 [3] | - | - | 861,609 | - | 1,457,609 | - | - | - |
| 2/2/1990 | TRANS FR 10191510 (101915) | 1,259,482 [3] | - | - | 755,651 | - | 2,213,261 | - | - | - |
| 2/13/1990 | CHECK | (50,000) | - | (50,000) | - | - | 2,163,261 | - | - | - |
| 2/22/1990 | CHECK | (12,000) | - | (12,000) | - | - | 2,151,261 | - | - | - |
| 3/1/1990 | CANCEL CHECK 02/22/90 | 12,000 | - | 12,000 | - | - | 2,163,261 | - | - | - |
| 3/2/1990 | CHECK | (5,000) | - | (5,000) | - | - | 2,158,261 | - | - | - |
| 6/11/1990 | TRANS TO H&A SQUADRON (1SO136) | (1,600,000) | - | - | - | (1,600,000) | 558,261 | - | - | - |
| 6/29/1990 | CHECK | (90,000) | - | (90,000) | - | - | 468,261 | - | - | - |
| 11/26/1990 | TRANS FR 10177410 A/O 11/16/90 (1SO136) | 13,093 | - | - | 13,093 | - | 481,354 | - | - | - |
| 1/11/1991 | CHECK | (480,000) | - | (480,000) | - | - | 1,354 | - | - | - |
| 2/15/1991 | CHECK | (5,000) | - | (5,000) | - | - | (3,646) | - | - | - |
| 7/2/1991 | CHECK | (160,000) | - | (160,000) | - | - | (163,646) | - | - | - |
| 7/3/1991 | STOP PAYMENT CHECK 7/2/91 | 160,000 | - | 160,000 | - | - | (3,646) | - | - | - |
| 7/3/1991 | CHECK | (160,000) | - | (160,000) | - | - | (163,646) | - | - | - |
| 2/19/1992 | CHECK | (5,000) | - | (5,000) | - | - | (168,646) | - | - | - |
| 1/11/1993 | CHECK | 100,000 | 100,000 | - | - | - | (68,646) | - | - | - |
| 3/16/1993 | CHECK | (6,000) | - | (6,000) | - | - | (74,646) | - | - | - |
| 3/25/1993 | STOP PAYMENT | 6,000 | - | 6,000 | - | - | (68,646) | - | - | - |
| 3/26/1993 | CHECK | (6,000) | - | (6,000) | - | - | (74,646) | - | - | - |
| 4/1/1993 | CHECK | 150,000 | 150,000 | - | - | - | 75,354 | - | - | - |
| 12/31/1993 | CHECK WIRE | 176,000 | 176,000 | - | - | - | 251,354 | - | - | - |
| 4/12/1994 | CHECK | (7,000) | - | (7,000) | - | - | 244,354 | - | - | - |
| 6/9/1994 | CHECK | (165,000) | - | (165,000) | - | - | 79,354 | - | - | - |
| 12/8/1994 | CHECK | (2,050,000) | - | (2,050,000) | - | - | (1,970,646) | - | - | - |
| 3/16/1995 | CHECK | (7,000) | - | (7,000) | - | - | (1,977,646) | - | - | - |
| 3/31/1995 | CHECK WIRE | 100,000 | 100,000 | - | - | - | (1,877,646) | - | - | - |
| 6/16/1995 | CHECK | (175,000) | - | (175,000) | - | - | (2,052,646) | - | - | - |
| 2/28/1996 | CHECK | (7,000) | - | (7,000) | - | - | (2,059,646) | - | - | - |
| 3/15/1996 | CHECK | (195,654) | - | (195,654) | - | - | (2,255,300) | - | - | - |
| 4/26/1996 | CHECK | (61,531) | - | (61,531) | - | - | (2,316,831) | - | - | - |
| 6/18/1996 | ROLLOVER TO 1S023130 (1SO231) | (308,130) [4] | - | - | - | - | (2,316,831) | - | - | - |
| 6/18/1996 | ROLLOVER A/O 6/18/96 (1L0105) | (2,389,267) [4] | - | - | - | - | (2,316,831) | - | - | - |
| 6/26/1996 | ROLLOVER TO 1S023130 (1SO231) | (370,403) [4] | - | - | - | - | (2,316,831) | - | - | - |

MADC1064_00000002

Exhibit B

BLMIS ACCOUNT NO. 1L0013 - STANLEY T. MILLER & STUART H. STEIN J/T WROS

| Column 1 | Column 2 | Column 3 | Column 4 | Column 5 | Column 6 | Column 7 | Column 8 | Column 9 | Column 10 | Column 11 |
|---|---|---|---|---|---|---|---|---|---|---|
| Date | Transaction Description | Transaction Amount Reported in Customer Statement | Cash Deposits | Cash Withdrawals | Transfers of Principal In | Transfers of Principal Out | Balance of Principal | 90-Day Preferential Transfers | 2-Year Fraudulent Transfers | 6-Year Fraudulent Conveyances |
| 7/2/1996 | ROLLOVER TO 1S023130 *(1S0231)* | (706,954) [4] | - | - | - | - | (2,316,831) | - | - | - |
| 7/9/1996 | CHECK | (30,000) | - | (30,000) | - | - | (2,346,831) | - | - | - |
| 9/16/1996 | CHECK | (3,446) | - | (3,446) | - | - | (2,350,277) | - | - | - |
| 9/17/1996 | CHECK | (50,000) | - | (50,000) | - | - | (2,400,277) | - | - | - |
| 9/24/1996 | CHECK | (78,000) | - | (78,000) | - | - | (2,478,277) | - | - | - |
| 12/16/1996 | TRANS TO 1L010530 *(1L0105)* | (174,677) [4] | - | - | - | - | (2,478,277) | - | - | - |
| 12/16/1996 | TRANS TO 1S023130 *(1S0231)* | (101,294) [4] | - | - | - | - | (2,478,277) | - | - | - |
| 12/31/1996 | CHECK WIRE | 75,000 | 75,000 | - | - | - | (2,403,277) | - | - | - |
| 1/2/1997 | TRANS TO 1P006230 *(1P0062)* | (616,018) [4] | - | - | - | - | (2,403,277) | - | - | - |
| 1/3/1997 | CHECK | (400,000) | - | (400,000) | - | - | (2,803,277) | - | - | - |
| 1/3/1997 | CHECK | (4,416,669) | - | (4,416,669) | - | - | (7,219,946) | - | - | - |
| 1/17/1997 | CHECK | (50,000) | - | (50,000) | - | - | (7,269,946) | - | - | - |
| 2/19/1997 | CHECK | (193,959) | - | (193,959) | - | - | (7,463,905) | - | - | - |
| 3/27/1997 | CHECK | (150,000) | - | (150,000) | - | - | (7,613,905) | - | - | - |
| 4/4/1997 | CHECK | (100,000) | - | (100,000) | - | - | (7,713,905) | - | - | - |
| 4/14/1997 | CHECK | (150,000) | - | (150,000) | - | - | (7,863,905) | - | - | - |
| 5/30/1997 | CHECK | (30,000) | - | (30,000) | - | - | (7,893,905) | - | - | - |
| 6/10/1997 | CHECK | 20,000 | 20,000 | - | - | - | (7,873,905) | - | - | - |
| 6/13/1997 | CHECK | (42,500) | - | (42,500) | - | - | (7,916,405) | - | - | - |
| 7/25/1997 | TRANS TO 1L014130 *(1L0141)* | (3,664,425) [4] | - | - | - | - | (7,916,405) | - | - | - |
| 8/28/1997 | CHECK | (160,000) | - | (160,000) | - | - | (8,076,405) | - | - | - |
| 11/19/1997 | TRANS TO 1P006230 *(1P0062)* | (761,185) [4] | - | - | - | - | (8,076,405) | - | - | - |
| 11/19/1997 | TRANS FROM 1P006230 *(1P0062)* | 761,185 [5] | - | - | - | - | (8,076,405) | - | - | - |
| 11/19/1997 | CANCEL *(1P0062)* | (761,185) | - | - | - | - | (8,076,405) | - | - | - |
| 11/26/1997 | CHECK | (30,000) | - | (30,000) | - | - | (8,106,405) | - | - | - |
| 12/11/1997 | TRANS FROM 1L010530 *(1L0105)* | 100,000 [5] | - | - | - | - | (8,106,405) | - | - | - |
| 12/1/1997 | CHECK WIRE | 50,000 | 50,000 | - | - | - | (8,056,405) | - | - | - |
| 12/17/1997 | CHECK | (100,000) | - | (100,000) | - | - | (8,156,405) | - | - | - |
| 12/24/1997 | CHECK RETURNED | 100,000 | - | 100,000 | - | - | (8,056,405) | - | - | - |
| 2/27/1998 | CHECK | (33,898) | - | (33,898) | - | - | (8,090,304) | - | - | - |
| 3/5/1998 | CHECK | (200,000) | - | (200,000) | - | - | (8,290,304) | - | - | - |
| 4/2/1998 | CHECK | (175,000) | - | (175,000) | - | - | (8,465,304) | - | - | - |
| 5/5/1998 | CHECK WIRE | 100,000 | 100,000 | - | - | - | (8,365,304) | - | - | - |
| 5/22/1998 | CHECK | (60,000) | - | (60,000) | - | - | (8,425,304) | - | - | - |
| 7/6/1998 | CHECK | (50,000) | - | (50,000) | - | - | (8,475,304) | - | - | - |
| 7/16/1998 | CHECK | (75,000) | - | (75,000) | - | - | (8,550,304) | - | - | - |
| 10/6/1998 | CHECK | (20,000) | - | (20,000) | - | - | (8,570,304) | - | - | - |
| 11/17/1998 | TRANS TO 1P006230 *(1P0062)* | (912,570) [4] | - | - | - | - | (8,570,304) | - | - | - |
| 12/3/1998 | CHECK | (150,000) | - | (150,000) | - | - | (8,720,304) | - | - | - |
| 12/18/1998 | TRANS FROM 1L010530 *(1L0105)* | 250,000 [5] | - | - | - | - | (8,720,304) | - | - | - |
| 12/23/1998 | CHECK | (200,000) | - | (200,000) | - | - | (8,920,304) | - | - | - |
| 12/23/1998 | TRANS TO 1S038730 *(1S0387)* | (2,241,458) [4] | - | - | - | - | (8,920,304) | - | - | - |
| 1/7/1999 | CHECK | (200,000) | - | (200,000) | - | - | (9,120,304) | - | - | - |
| 2/11/1999 | CHECK | (100,000) | - | (100,000) | - | - | (9,220,304) | - | - | - |
| 3/2/1999 | CHECK | (17,000) | - | (17,000) | - | - | (9,237,304) | - | - | - |
| 3/24/1999 | CHECK | (130,000) | - | (130,000) | - | - | (9,367,304) | - | - | - |
| 4/8/1999 | CHECK | (40,000) | - | (40,000) | - | - | (9,407,304) | - | - | - |
| 4/13/1999 | CHECK | (50,000) | - | (50,000) | - | - | (9,457,304) | - | - | - |
| 4/14/1999 | TRANS TO 1S028730 *(1S0287)* | (90,193) [4] | - | - | - | - | (9,457,304) | - | - | - |
| 5/26/1999 | CHECK | (150,000) | - | (150,000) | - | - | (9,607,304) | - | - | - |
| 12/6/1999 | TRANS TO 1P006230 *(1P0062)* | (1,466,484) [4] | - | - | - | - | (9,607,304) | - | - | - |
| 12/8/1999 | CHECK | (20,000) | - | (20,000) | - | - | (9,627,304) | - | - | - |
| 12/31/1999 | TRANS TO 1E015830 *(1E0158)* | (2,000,000) [4] | - | - | - | - | (9,627,304) | - | - | - |
| 1/3/2000 | CHECK | (200,000) | - | (200,000) | - | - | (9,827,304) | - | - | - |
| 1/11/2000 | TRANS FROM 1L010530 A/O 12/31 *(1L0105)* | 200,000 [5] | - | - | - | - | (9,827,304) | - | - | - |
| 1/12/2000 | CHECK | (120,000) | - | (120,000) | - | - | (9,947,304) | - | - | - |

MADC1064_00000003

08-01789-smb    Doc 11726-1    Filed 10/09/15    Entered 10/09/15 18:53:55    Exhibit 1
10-05289-smb    Doc 2-2    Filed 12/10/10    Entered 12/10/10 16:51:54    Exhibit B Pg
(Amended Complaint)    Pg 32 of 45

Exhibit B

BLMIS ACCOUNT NO. 1L0013 - STANLEY T. MILLER & SIGMUND MILLER JT WROS

| Column 1 | Column 2 | Column 3 | Column 4 | Column 5 | Column 6 | Column 7 | Column 8 | Column 9 | Column 10 | Column 11 |
|---|---|---|---|---|---|---|---|---|---|---|
| Date | Transaction Description | Transaction Amount Reported in Customer Statement | Cash Deposits | Cash Withdrawals | Transfers of Principal In | Transfers of Principal Out | Balance of Principal | 90-Day Preferential Transfers | 2-Year Fraudulent Transfers | 6-Year Fraudulent Conveyances |
| 1/21/2000 | CHECK | 83,000 | 83,000 | - | - | - | (9,864,304) | - | - | - |
| 2/1/2000 | TRANS TO 1P006230 (1P0062) | (84,171) [4] | - | - | - | - | (9,864,304) | - | - | - |
| 2/2/2000 | CHECK | (17,500) | - | (17,500) | - | - | (9,881,804) | - | - | - |
| 3/1/2000 | CHECK | (280,000) | - | (280,000) | - | - | (10,161,804) | - | - | - |
| 3/1/2000 | CHECK | (200,000) | - | (200,000) | - | - | (10,361,804) | - | - | - |
| 5/22/2000 | CHECK | (100,000) | - | (100,000) | - | - | (10,461,804) | - | - | - |
| 5/31/2000 | CHECK | (140,000) | - | (140,000) | - | - | (10,601,804) | - | - | - |
| 6/30/2000 | CHECK WIRE | 25,000 | 25,000 | - | - | - | (10,576,804) | - | - | - |
| 8/29/2000 | CHECK | (195,000) | - | (195,000) | - | - | (10,771,804) | - | - | - |
| 11/7/2000 | CHECK | (4,050,000) | - | (4,050,000) | - | - | (14,821,804) | - | - | - |
| 12/19/2000 | CHECK | (100,000) | - | (100,000) | - | - | (14,921,804) | - | - | - |
| 12/29/2000 | CHECK | (150,000) | - | (150,000) | - | - | (15,071,804) | - | - | - |
| 12/29/2000 | TRANS FROM 1L010530 (1L0105) | 200,000 [8] | - | - | - | - | (15,071,804) | - | - | - |
| 1/2/2001 | CHECK | (100,000) | - | (100,000) | - | - | (15,171,804) | - | - | - |
| 1/23/2001 | CHECK | 75,000 | 75,000 | - | - | - | (15,096,804) | - | - | - |
| 2/8/2001 | CHECK | (19,500) | - | (19,500) | - | - | (15,116,304) | - | - | - |
| 2/9/2001 | CHECK | (100,000) | - | (100,000) | - | - | (15,216,304) | - | - | - |
| 2/13/2001 | CHECK | 40,000 | 40,000 | - | - | - | (15,176,304) | - | - | - |
| 2/20/2001 | CHECK | (240,000) | - | (240,000) | - | - | (15,416,304) | - | - | - |
| 2/22/2001 | TRANS TO 1G032530 (1G0325) | (795,195) [4] | - | - | - | - | (15,416,304) | - | - | - |
| 2/22/2001 | TRANS TO 1S043730 (1S0437) | (640,682) [4] | - | - | - | - | (15,416,304) | - | - | - |
| 3/13/2001 | CHECK | (35,000) | - | (35,000) | - | - | (15,451,304) | - | - | - |
| 3/30/2001 | CHECK | (100,000) | - | (100,000) | - | - | (15,551,304) | - | - | - |
| 5/1/2001 | CHECK | (180,000) | - | (180,000) | - | - | (15,731,304) | - | - | - |
| 5/15/2001 | CHECK | (90,000) | - | (90,000) | - | - | (15,821,304) | - | - | - |
| 6/26/2001 | TRANS TO 1G032530 (1G0325) | (19,545) [4] | - | - | - | - | (15,821,304) | - | - | - |
| 6/26/2001 | TRANS TO 1S043730 (1S0437) | (15,747) [4] | - | - | - | - | (15,821,304) | - | - | - |
| 8/30/2001 | CHECK | (150,000) | - | (150,000) | - | - | (15,971,304) | - | - | - |
| 11/9/2001 | CHECK | (100,000) | - | (100,000) | - | - | (16,071,304) | - | - | - |
| 12/28/2001 | CHECK | (100,000) | - | (100,000) | - | - | (16,171,304) | - | - | - |
| 12/31/2001 | TRANS FROM 1L010530 (1L0105) | 225,000 [8] | - | - | - | - | (16,171,304) | - | - | - |
| 1/17/2002 | CHECK | (150,000) | - | (150,000) | - | - | (16,321,304) | - | - | - |
| 2/4/2002 | STOP PAYMENT | 150,000 | - | 150,000 | - | - | (16,171,304) | - | - | - |
| 2/5/2002 | CHECK | (150,000) | - | (150,000) | - | - | (16,321,304) | - | - | - |
| 2/6/2002 | CHECK | (19,500) | - | (19,500) | - | - | (16,340,804) | - | - | - |
| 2/25/2002 | CHECK | (240,000) | - | (240,000) | - | - | (16,580,804) | - | - | - |
| 3/26/2002 | CHECK | (55,000) | - | (55,000) | - | - | (16,635,804) | - | - | - |
| 4/30/2002 | CHECK | 190,000 | 190,000 | - | - | - | (16,445,804) | - | - | - |
| 5/16/2002 | CHECK | (100,000) | - | (100,000) | - | - | (16,545,804) | - | - | - |
| 5/22/2002 | CHECK | (100,000) | - | (100,000) | - | - | (16,645,804) | - | - | - |
| 6/17/2002 | CHECK | (55,000) | - | (55,000) | - | - | (16,700,804) | - | - | - |
| 8/1/2002 | CHECK | (50,000) | - | (50,000) | - | - | (16,750,804) | - | - | - |
| 9/13/2002 | CHECK | (55,000) | - | (55,000) | - | - | (16,805,804) | - | - | - |
| 11/27/2002 | CHECK | (30,000) | - | (30,000) | - | - | (16,835,804) | - | - | - |
| 12/2/2002 | CHECK | (65,000) | - | (65,000) | - | - | (16,900,804) | - | - | - |
| 12/11/2002 | CHECK | (55,000) | - | (55,000) | - | - | (16,955,804) | - | - | (55,000) |
| 12/31/2002 | TRANS FROM 1L010530 (1L0105) | 500,000 [8] | - | - | - | - | (16,955,804) | - | - | - |
| 1/2/2003 | CHECK | (100,000) | - | (100,000) | - | - | (17,055,804) | - | - | (100,000) |
| 1/29/2003 | CHECK | (20,500) | - | (20,500) | - | - | (17,076,304) | - | - | (20,500) |
| 2/7/2003 | CHECK | (150,000) | - | (150,000) | - | - | (17,226,304) | - | - | (150,000) |
| 3/3/2003 | CHECK | 25,000 | 25,000 | - | - | - | (17,201,304) | - | - | - |
| 3/21/2003 | CHECK | (300,000) | - | (300,000) | - | - | (17,501,304) | - | - | (300,000) |
| 4/29/2003 | CHECK | 30,000 | 30,000 | - | - | - | (17,471,304) | - | - | - |
| 6/2/2003 | CHECK | (200,000) | - | (200,000) | - | - | (17,671,304) | - | - | (200,000) |
| 6/16/2003 | CHECK | (985,000) | - | (985,000) | - | - | (18,656,304) | - | - | (985,000) |
| 6/23/2003 | CHECK WIRE | 800,000 | 800,000 | - | - | - | (17,856,304) | - | - | - |
| 8/4/2003 | CHECK WIRE | 500,000 | 500,000 | - | - | - | (17,356,304) | - | - | - |
| 8/15/2003 | CHECK | (150,000) | - | (150,000) | - | - | (17,506,304) | - | - | (150,000) |

MADC1064_00000004

BLMIS ACCOUNT NO. 1L0013 - STANLEY CHAIS GILBERT & STEART 1 FETTEN/T WROS

| Column 1 | Column 2 | Column 3 | Column 4 | Column 5 | Column 6 | Column 7 | Column 8 | Column 9 | Column 10 | Column 11 |
|---|---|---|---|---|---|---|---|---|---|---|
| Date | Transaction Description | Transaction Amount Reported in Customer Statement | Cash Deposits | Cash Withdrawals | Transfers of Principal In | Transfers of Principal Out | Balance of Principal | 90-Day Preferential Transfers | 2-Year Fraudulent Transfers | 6-Year Fraudulent Conveyances |
| 9/11/2003 | CHECK WIRE | 99,970 | 99,970 | - | - | - | (17,406,334) | - | - | - |
| 10/1/2003 | CHECK | (50,000) | - | (50,000) | - | - | (17,456,334) | - | - | (50,000) |
| 12/1/2003 | CHECK | (250,000) | - | (250,000) | - | - | (17,706,334) | - | - | (250,000) |
| 12/2/2003 | CHECK | 10,000 | 10,000 | - | - | - | (17,696,334) | - | - | - |
| 12/10/2003 | CHECK | (75,000) | - | (75,000) | - | - | (17,771,334) | - | - | (75,000) |
| 12/17/2003 | CHECK | (50,000) | - | (50,000) | - | - | (17,821,334) | - | - | (50,000) |
| 12/30/2003 | CHECK | 191,000 | 191,000 | - | - | - | (17,630,334) | - | - | - |
| 12/31/2003 | TRANS FROM 1L010530 (1L0105) | 300,000 [5] | - | - | - | - | (17,630,334) | - | - | - |
| 1/23/2004 | CHECK | (100,000) | - | (100,000) | - | - | (17,730,334) | - | - | (100,000) |
| 2/6/2004 | CHECK | (121,500) | - | (121,500) | - | - | (17,851,834) | - | - | (121,500) |
| 3/2/2004 | CHECK | (150,000) | - | (150,000) | - | - | (18,001,834) | - | - | (150,000) |
| 3/3/2004 | CHECK | (55,000) | - | (55,000) | - | - | (18,056,834) | - | - | (55,000) |
| 3/5/2004 | CHECK | (150,000) | - | (150,000) | - | - | (18,206,834) | - | - | (150,000) |
| 4/15/2004 | CHECK | (25,000) | - | (25,000) | - | - | (18,231,834) | - | - | (25,000) |
| 5/11/2004 | CHECK | (925,000) | - | (925,000) | - | - | (19,156,834) | - | - | (925,000) |
| 6/3/2004 | CHECK | (55,000) | - | (55,000) | - | - | (19,211,834) | - | - | (55,000) |
| 6/28/2004 | CHECK | (100,000) | - | (100,000) | - | - | (19,311,834) | - | - | (100,000) |
| 8/3/2004 | CHECK | (75,000) | - | (75,000) | - | - | (19,386,834) | - | - | (75,000) |
| 8/4/2004 | CHECK | (75,000) | - | (75,000) | - | - | (19,461,834) | - | - | (75,000) |
| 8/9/2004 | RETURNED CHECK | 75,000 | - | 75,000 | - | - | (19,386,834) | - | - | - |
| 8/19/2004 | CHECK | (369,000) | - | (369,000) | - | - | (19,755,834) | - | - | (369,000) |
| 9/2/2004 | CHECK | (55,000) | - | (55,000) | - | - | (19,810,834) | - | - | (55,000) |
| 9/28/2004 | CHECK | 50,000 | 50,000 | - | - | - | (19,760,834) | - | - | - |
| 9/28/2004 | TRANS FROM 1L010530 (1L0105) | 500,000 [5] | - | - | - | - | (19,760,834) | - | - | - |
| 9/30/2004 | CHECK | (100,000) | - | (100,000) | - | - | (19,860,834) | - | - | (100,000) |
| 10/20/2004 | TRANS FROM 1L010530 (1L0105) | 500,000 [5] | - | - | - | - | (19,860,834) | - | - | - |
| 11/1/2004 | TRANS TO 1L010530 (1L0105) | (1,000,000) [4] | - | - | - | - | (19,860,834) | - | - | - |
| 11/3/2004 | CHECK | (1,255,000) | - | (1,255,000) | - | - | (21,115,834) | - | - | (1,255,000) |
| 11/16/2004 | CHECK | (120,000) | - | (120,000) | - | - | (21,235,834) | - | - | (120,000) |
| 12/13/2004 | CHECK | (55,000) | - | (55,000) | - | - | (21,290,834) | - | - | (55,000) |
| 12/30/2004 | CHECK | (100,000) | - | (100,000) | - | - | (21,390,834) | - | - | (100,000) |
| 12/31/2004 | CHECK | (1,535,311) | - | (1,535,311) | - | - | (22,926,145) | - | - | (1,535,311) |
| 12/31/2004 | TRANS FROM 1L010530 (1L0105) | 500,000 [5] | - | - | - | - | (22,926,145) | - | - | - |
| 1/24/2005 | CHECK | (150,000) | - | (150,000) | - | - | (23,076,145) | - | - | (150,000) |
| 2/9/2005 | CHECK | (375,000) | - | (375,000) | - | - | (23,451,145) | - | - | (375,000) |
| 2/25/2005 | CHECK | (22,500) | - | (22,500) | - | - | (23,473,645) | - | - | (22,500) |
| 3/17/2005 | CHECK | (1,016,000) | - | (1,016,000) | - | - | (24,489,645) | - | - | (1,016,000) |
| 3/24/2005 | CHECK | (100,000) | - | (100,000) | - | - | (24,589,645) | - | - | (100,000) |
| 4/29/2005 | CHECK | (2,500,000) | - | (2,500,000) | - | - | (27,089,645) | - | - | (2,500,000) |
| 5/26/2005 | CHECK | (192,500) | - | (192,500) | - | - | (27,282,145) | - | - | (192,500) |
| 7/19/2005 | CHECK | 50,000 | 50,000 | - | - | - | (27,232,145) | - | - | - |
| 7/22/2005 | CHECK | (50,000) | - | (50,000) | - | - | (27,282,145) | - | - | (50,000) |
| 8/26/2005 | CHECK | (180,000) | - | (180,000) | - | - | (27,462,145) | - | - | (180,000) |
| 9/16/2005 | CHECK | (150,000) | - | (150,000) | - | - | (27,612,145) | - | - | (150,000) |
| 9/21/2005 | CHECK | (250,000) | - | (250,000) | - | - | (27,862,145) | - | - | (250,000) |
| 9/26/2005 | CHECK | 25,000 | 25,000 | - | - | - | (27,837,145) | - | - | - |
| 10/3/2005 | CHECK | (400,000) | - | (400,000) | - | - | (28,237,145) | - | - | (400,000) |
| 10/18/2005 | CHECK | 50,000 | 50,000 | - | - | - | (28,187,145) | - | - | - |
| 12/1/2005 | CHECK | (35,000) | - | (35,000) | - | - | (28,222,145) | - | - | (35,000) |
| 12/6/2005 | CHECK | (110,000) | - | (110,000) | - | - | (28,332,145) | - | - | (110,000) |
| 12/16/2005 | CHECK | (50,000) | - | (50,000) | - | - | (28,382,145) | - | - | (50,000) |
| 12/30/2005 | TRANS FROM 1L010530 (1L0105) | 500,000 [5] | - | - | - | - | (28,382,145) | - | - | - |
| 1/3/2006 | CHECK | (250,000) | - | (250,000) | - | - | (28,632,145) | - | - | (250,000) |
| 1/31/2006 | CHECK | (1,050,000) | - | (1,050,000) | - | - | (29,682,145) | - | - | (1,050,000) |
| 2/3/2006 | CHECK | (50,000) | - | (50,000) | - | - | (29,732,145) | - | - | (50,000) |
| 3/1/2006 | CHECK | (198,500) | - | (198,500) | - | - | (29,930,645) | - | - | (198,500) |
| 3/31/2006 | CHECK | (255,000) | - | (255,000) | - | - | (30,185,645) | - | - | (255,000) |
| 5/31/2006 | CHECK | (915,000) | - | (915,000) | - | - | (31,100,645) | - | - | (915,000) |

MADC1064_00000005

Exhibit B

BLMIS ACCOUNT NO. 1L0013 - STANLEY I. LEHRER & SIDNEY MILLER JT WROS

| Column 1 Date | Column 2 Transaction Description | Column 3 Transaction Amount Reported in Customer Statement | Column 4 Cash Deposits | Column 5 Cash Withdrawals | Column 6 Transfers of Principal In | Column 7 Transfers of Principal Out | Column 8 Balance of Principal | Column 9 90-Day Preferential Transfers | Column 10 2-Year Fraudulent Transfers | Column 11 6-Year Fraudulent Conveyances |
|---|---|---|---|---|---|---|---|---|---|---|
| 6/13/2006 | CHECK | (30,000) | - | (30,000) | - | - | (31,150,645) | - | - | (30,000) |
| 6/26/2006 | CHECK | 420,000 | 420,000 | - | - | - | (30,730,645) | - | - | - |
| 7/18/2006 | CHECK | (150,000) | - | (150,000) | - | - | (30,880,645) | - | - | (150,000) |
| 8/1/2006 | CHECK | (900,000) | - | (900,000) | - | - | (31,780,645) | - | - | (900,000) |
| 9/1/2006 | CHECK | (155,000) | - | (155,000) | - | - | (31,935,645) | - | - | (155,000) |
| 9/7/2006 | CHECK | (30,000) | - | (30,000) | - | - | (31,965,645) | - | - | (30,000) |
| 11/3/2006 | CHECK | (100,000) | - | (100,000) | - | - | (32,065,645) | - | - | (100,000) |
| 12/27/2006 | CHECK | 15,000 | 15,000 | - | - | - | (32,050,645) | - | - | - |
| 12/29/2006 | CHECK | (55,000) | - | (55,000) | - | - | (32,105,645) | - | (55,000) | (55,000) |
| 1/2/2007 | STOP PAYMENT | 90,000 | - | 90,000 | - | - | (32,015,645) | - | - | - |
| 1/2/2007 | CHECK | (90,000) | - | (90,000) | - | - | (32,105,645) | - | (90,000) | (90,000) |
| 1/2/2007 | CHECK | (90,000) | - | (90,000) | - | - | (32,195,645) | - | - | - |
| 1/19/2007 | CHECK | (100,000) | - | (100,000) | - | - | (32,295,645) | - | (100,000) | (100,000) |
| 2/8/2007 | CHECK | (50,000) | - | (50,000) | - | - | (32,345,645) | - | (50,000) | (50,000) |
| 2/22/2007 | CHECK | (25,000) | - | (25,000) | - | - | (32,370,645) | - | (25,000) | (25,000) |
| 3/5/2007 | CHECK | (40,000) | - | (40,000) | - | - | (32,410,645) | - | (40,000) | (40,000) |
| 3/15/2007 | CHECK | (625,000) | - | (625,000) | - | - | (33,035,645) | - | (625,000) | (625,000) |
| 5/10/2007 | CHECK | (125,000) | - | (125,000) | - | - | (33,160,645) | - | (125,000) | (125,000) |
| 6/5/2007 | CHECK | (335,000) | - | (335,000) | - | - | (33,495,645) | - | (335,000) | (335,000) |
| 8/16/2007 | CHECK | (10,000) | - | (10,000) | - | - | (33,505,645) | - | (10,000) | (10,000) |
| 8/22/2007 | CHECK | (80,000) | - | (80,000) | - | - | (33,585,645) | - | (80,000) | (80,000) |
| 8/31/2007 | CHECK | (1,250,000) | - | (1,250,000) | - | - | (34,835,645) | - | (1,250,000) | (1,250,000) |
| 9/27/2007 | CHECK | (175,000) | - | (175,000) | - | - | (35,010,645) | - | (175,000) | (175,000) |
| 10/29/2007 | CHECK | 30,000 | 30,000 | - | - | - | (34,980,645) | - | - | - |
| 11/19/2007 | CHECK | (50,000) | - | (50,000) | - | - | (35,030,645) | - | (50,000) | (50,000) |
| 11/28/2007 | CHECK | (10,000) | - | (10,000) | - | - | (35,040,645) | - | (10,000) | (10,000) |
| 12/7/2007 | CHECK | (55,000) | - | (55,000) | - | - | (35,095,645) | - | (55,000) | (55,000) |
| 12/27/2007 | CHECK | (98,000) | - | (98,000) | - | - | (35,193,645) | - | (98,000) | (98,000) |
| 12/31/2007 | TRANS FROM 1L010530 (1L0105) | 650,000 [5] | - | - | - | - | (35,193,645) | - | - | - |
| 1/2/2008 | CHECK | (300,000) | - | (300,000) | - | - | (35,493,645) | - | (300,000) | (300,000) |
| 2/4/2008 | CHECK | (100,000) | - | (100,000) | - | - | (35,593,645) | - | (100,000) | (100,000) |
| 2/8/2008 | CHECK | (40,000) | - | (40,000) | - | - | (35,633,645) | - | (40,000) | (40,000) |
| 2/22/2008 | CHECK | (25,000) | - | (25,000) | - | - | (35,658,645) | - | (25,000) | (25,000) |
| 3/4/2008 | CHECK | (220,000) | - | (220,000) | - | - | (35,878,645) | - | (220,000) | (220,000) |
| 3/19/2008 | CHECK | (225,000) | - | (225,000) | - | - | (36,103,645) | - | (225,000) | (225,000) |
| 3/26/2008 | CHECK | (85,000) | - | (85,000) | - | - | (36,188,645) | - | (85,000) | (85,000) |
| 4/25/2008 | CHECK | (107,500) | - | (107,500) | - | - | (36,296,145) | - | (107,500) | (107,500) |
| 5/28/2008 | CHECK | (120,000) | - | (120,000) | - | - | (36,416,145) | - | (120,000) | (120,000) |
| 7/18/2008 | CHECK | (85,000) | - | (85,000) | - | - | (36,501,145) | - | (85,000) | (85,000) |
| 8/11/2008 | CHECK | (80,000) | - | (80,000) | - | - | (36,581,145) | - | (80,000) | (80,000) |
| 8/22/2008 | CHECK | 175,173 | 175,173 | - | - | - | (36,405,972) | - | - | - |
| 8/26/2008 | CHECK | (50,000) | - | (50,000) | - | - | (36,455,972) | - | (50,000) | (50,000) |
| 8/27/2008 | CHECK | (90,000) | - | (90,000) | - | - | (36,545,972) | - | (90,000) | (90,000) |
| 8/28/2008 | CHECK RETURNED | (175,173) | (175,173) | - | - | - | (36,721,145) | - | - | - |
| 9/8/2008 | CHECK | 175,173 | 175,173 | - | - | - | (36,545,972) | - | - | - |
| 9/8/2008 | CHECK | (55,000) | - | (55,000) | - | - | (36,600,972) | - | (55,000) | (55,000) |

MADC1064_00000006

Exhibit B

BLMIS ACCOUNT NO. 1L0013 - STANLEY CHAIS OR SHIRLEY CHAIS J/T WROS

| Column 1 | Column 2 | Column 3 | Column 4 | Column 5 | Column 6 | Column 7 | Column 8 | Column 9 | Column 10 | Column 11 |
|---|---|---|---|---|---|---|---|---|---|---|
| Date | Transaction Description | Transaction Amount Reported in Customer Statement | Cash Deposits | Cash Withdrawals | Transfers of Principal In | Transfers of Principal Out | Balance of Principal | 90-Day Preferential Transfers | 2-Year Fraudulent Transfers | 6-Year Fraudulent Conveyances |
| 9/26/2008 | TRANS TO 1E01 5830 (1E01 58) | (2,500,000) [4] | - | - | - | - | (36,600,972) | - | - | - |
| 9/29/2008 | TRANS FROM 1E01 5830 (1E01 58) | 400,000 | - | - | 400,000 | - | (36,200,972) | - | - | - |
| 10/20/2008 | CHECK | (160,000) | - | (160,000) | - | - | (36,360,972) | - | (160,000) | (160,000) |
| 11/19/2008 | CHECK | (40,000) | - | (40,000) | - | - | (36,400,972) | - | (40,000) | (40,000) |
| 12/2/2008 | CHECK | 20,000 | 20,000 | - | - | - | (36,380,972) | - | - | - |
| | Total: | | $ 6,595,808 | $ (41,589,872) | $ 2,030,354 | $ (3,417,261) | $ (36,380,972) | $ - | $ (4,955,500) | $ (22,371,311) |

[1] Exhibit B sets forth a cash flow forensic analysis of the specified account(s) from March 1981 up to December 11, 2008, as applicable. Although records of BLMIS customer statements exist back to November 1978 in some circumstances, there is less financial information on those statements. Accordingly, the attached cash flow analysis provides the accountholder(s) with a beneficial presumption that the cash and securities on a historical cost basis in the account(s) as of March 1981 were principal and did not include any fictitious profits.

[2] Although BLMIS statements reflect that a larger transfer was made out of the account on this date, a portion of the "transferred" funds consisted of fictitious profits which were never achieved and thus could not have been transferred. Accordingly, only the principal remaining in the account was transferred out of the account on this date.

[3] Although BLMIS statements reflect that a larger transfer was made into the account on this date, a portion of the "transferred" funds consisted of fictitious profits which were never achieved and thus could not have been transferred. Accordingly, only the principal remaining in the originating account was transferred into this account on this date.

[4] Although BLMIS statements reflect that funds were transferred out of this account on this date, these funds consisted entirely of fictitious profits which were never achieved and thus no funds were actually transferred out of the account on this date. Accordingly, the account balance has remained unchanged.

[5] Although BLMIS statements reflect that funds were transferred into this account on this date, these funds consisted entirely of fictitious profits which were never achieved and thus no funds were actually transferred into the account on this date. Accordingly, the account balance has remained unchanged.

MADC1064_00000007

## BERNARD L. MADOFF INVESTMENT SECURITIES LLC

In Liquidation

### DECEMBER 11, 2008[1]

## NOTICE OF TRUSTEE'S DETERMINATION OF CLAIM

July 1, 2010

Stanley I. Lehrer and Stuart M. Stein JT/WROS
**REDACTED**
White Plains, NY  10603

Dear Stanley I. Lehrer and Stuart M. Stein JT/WROS:

### PLEASE READ THIS NOTICE CAREFULLY.

The liquidation of the business of BERNARD L. MADOFF INVESTMENT SECURITIES LLC ("BLMIS") is being conducted by Irving H. Picard, Trustee under the Securities Investor Protection Act, 15 U.S.C. § 78aaa et seq. ("SIPA"), pursuant to an order entered on December 15, 2008 by the United States District Court for the Southern District of New York.

The Trustee has made the following determination regarding your claim on BLMIS Account No. 1L0013 designated as Claim Number 4003:

Your claim for securities is **DENIED**. No securities were ever purchased for your account.

Further, based on the Trustee's analysis, the amount of money you withdrew from your account at BLMIS (total of $45,007,132.98), as more fully set forth in Table 1 annexed hereto and made a part hereof, is greater than the amount that was deposited with BLMIS for the purchase of securities (total of $8,626,161.46). As noted, no securities were ever purchased by BLMIS for your account. Any and all profits reported to you by BLMIS on account statements were fictitious.

---

[1] Section 78lll(7)(B) of SIPA states that the filing date is "the date on which an application for a protective decree is filed under 78eee(a)(3)," except where the debtor is the subject of a proceeding pending before a United States court "in which a receiver, trustee, or liquidator for such debtor has been appointed and such proceeding was commenced before the date on which such application was filed, the term 'filing date' means the date on which such proceeding was commenced." Section 78lll(7)(B). Thus, even though the Application for a protective decree was filed on December 15, 2008, the Filing Date in this action is on December 11, 2008.

As reflected in Table 1, certain of the transfers into or out of your account have been adjusted. As part of the Trustee's analysis of accounts, the Trustee has assessed accounts based on a money in/money out analysis (i.e., has the investor deposited more or less than he or she withdrew from BLMIS). This analysis allows the Trustee to determine which part of an account's balance is originally invested principal and which part is fictitious gains that were fabricated by BLMIS. A customer's allowed claim is based on the amount of principal in the customer's account.

Whenever a customer requested a transfer from one account to another, the Trustee analyzed whether the transferor account had principal in the account at the time of the transfer. The available principal in the account was transferred to and credited in the transferee account. Thus, the reason that the adjusted amount of transferred deposits or withdrawals in Table 1 is less than the purported transfer amount is that the transferor account did not have sufficient principal available to effectuate the full transfer. The difference between the purported transfer amount and the adjusted transfer amount is the amount of fictitious gain that was transferred to or from your account. Under the money in/money out analysis, the Trustee does not give credit for fictitious gains in settling your allowed claim.

Since there were no profits to use either to purchase securities or to pay you any money beyond the amount that was deposited into your BLMIS account, the amount of money you received in excess of the deposits in your account ($36,380,971.52) was taken from other customers and given to you. Accordingly, because you have withdrawn more than was deposited into your account, you do not have a positive "net equity" in your account and you are not entitled to an allowed claim in the BLMIS liquidation proceeding. Therefore, your claim is **DENIED** in its entirety.

**On March 1, 2010, the United States Bankruptcy Court for the Southern District of New York (Lifland, J.) issued a decision which affirmed the Trustee's Net Investment Method for determining customer claims. The final resolution of this issue is expected to be determined on appeal.**

**Should a final and unappealable court order determine that the Trustee is incorrect in his interpretation of "net equity" and its corresponding application to the determination of customer claims, the Trustee will be bound by that order and will apply it retroactively to all previously determined customer claims in accordance with the Court's order. Nothing in this Notice of Trustee's Determination of Claim shall be construed as a waiver of any rights or claims held by you in having your customer claim re-determined in accordance with any such Court order.**

**PLEASE TAKE NOTICE:** If you disagree with this determination and desire a hearing before Bankruptcy Judge Burton R. Lifland, you **MUST** file your written opposition, setting forth the grounds for your disagreement, referencing Bankruptcy Case No. 08-1789 (BRL) and attaching copies of any documents in support of your position, with the United States Bankruptcy Court **and** the Trustee within **THIRTY DAYS** after July 1, 2010, the date on which the Trustee mailed this notice.

MADC1064_00000009

**PLEASE TAKE FURTHER NOTICE:** If you do not properly and timely file a written opposition, the Trustee's determination with respect to your claim will be deemed confirmed by the Court and binding on you.

**PLEASE TAKE FURTHER NOTICE:** If you properly and timely file a written opposition, a hearing date for this controversy will be obtained by the Trustee and you will be notified of that hearing date. Your failure to appear personally or through counsel at such hearing will result in the Trustee's determination with respect to your claim being confirmed by the Court and binding on you.

**PLEASE TAKE FURTHER NOTICE:** You must mail your opposition, if any, in accordance with the above procedure, to each of the following addresses:

Clerk of the United States Bankruptcy Court for
the Southern District of New York
One Bowling Green
New York, New York  10004

and

Irving H. Picard, Trustee
c/o Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York  10111

_Irving H. Picard_

Trustee for the Liquidation of the Business of
Bernard L. Madoff Investment Securities LLC

cc:    Stanley I. Lehrer and Stuart M. Stein JT/WROS
**REDACTED**
Delray Beach, FL  33446

3

| - Table 1 - | | | |
|---|---|---|---|
| DEPOSITS | | | |
| **DATE** | **TRANSACTION DESCRIPTION** | **AMOUNT** | **ADJUSTED AMOUNT** |
| 3/31/1981 | ALIX: 3/31/1981 Equity | $1,545,524.74 | $1,545,524.74 |
| 3/31/1981 | ALIX: 3/31/1981 Equity | $290,309.95 | $290,309.95 |
| 3/15/1982 | CHECK RET | $750.00 | $750.00 |
| 1/28/1983 | CHECK | $151,111.08 | $151,111.08 |
| 2/8/1984 | CHECK | $63,314.75 | $63,314.75 |
| 4/5/1984 | CHECK | $15,000.00 | $15,000.00 |
| 2/1/1988 | CHECK | $154,654.00 | $154,654.00 |
| 2/11/1988 | CHECK | $100,000.00 | $100,000.00 |
| 7/12/1989 | CHECK | $100,000.00 | $100,000.00 |
| 1/3/1990 | CHECK | $500,000.00 | $500,000.00 |
| 2/2/1990 | TRANS FROM 10191510 | $1,436,086.77 | $861,609.20 |
| 2/2/1990 | TRANS FROM 10191510 | $1,259,481.61 | $755,651.37 |
| 11/26/1990 | TRANS FR 10177410 A/O 11/16/90 | $13,093.00 | $13,093.00 |
| 1/11/1993 | CHECK | $100,000.00 | $100,000.00 |
| 4/1/1993 | CHECK | $150,000.00 | $150,000.00 |
| 12/31/1993 | CHECK WIRE | $176,000.00 | $176,000.00 |
| 3/31/1995 | CHECK WIRE | $100,000.00 | $100,000.00 |
| 12/31/1996 | CHECK WIRE | $75,000.00 | $75,000.00 |
| 6/10/1997 | CHECK | $20,000.00 | $20,000.00 |
| 11/19/1997 | TRANS FROM 1P006230 | $761,185.41 | $0.00 |
| 11/19/1997 | CANCEL | ($761,185.41) | $0.00 |
| 12/11/1997 | TRANS FROM 1L010530 | $100,000.00 | $0.00 |
| 12/12/1997 | CHECK WIRE | $50,000.00 | $50,000.00 |
| 5/5/1998 | CHECK WIRE | $100,000.00 | $100,000.00 |
| 12/18/1998 | TRANS FROM 1L010530 | $250,000.00 | $0.00 |
| 1/11/2000 | TRANS FROM 1L010530 A/O 12/31 | $200,000.00 | $0.00 |
| 1/21/2000 | CHECK | $83,000.00 | $83,000.00 |
| 6/30/2000 | CHECK WIRE | $25,000.00 | $25,000.00 |
| 12/29/2000 | TRANS FROM 1L010530 | $200,000.00 | $0.00 |
| 1/23/2001 | CHECK | $75,000.00 | $75,000.00 |
| 2/13/2001 | CHECK | $40,000.00 | $40,000.00 |
| 12/31/2001 | TRANS FROM 1L010530 | $225,000.00 | $0.00 |
| 4/30/2002 | CHECK | $190,000.00 | $190,000.00 |
| 12/31/2002 | TRANS FROM 1L010530 | $500,000.00 | $0.00 |
| 3/3/2003 | CHECK | $25,000.00 | $25,000.00 |
| 4/29/2003 | CHECK | $30,000.00 | $30,000.00 |
| 6/23/2003 | CHECK WIRE | $800,000.00 | $800,000.00 |
| 8/4/2003 | CHECK WIRE | $500,000.00 | $500,000.00 |
| 9/11/2003 | CHECK WIRE | $99,970.00 | $99,970.00 |
| 12/2/2003 | CHECK | $10,000.00 | $10,000.00 |
| 12/30/2003 | CHECK | $191,000.00 | $191,000.00 |

4

MADC1064_00000011

| 12/31/2003 | TRANS FROM 1L010530 | $300,000.00 | $0.00 |
| 9/28/2004 | CHECK | $50,000.00 | $50,000.00 |
| 9/28/2004 | TRANS FROM 1L010530 | $500,000.00 | $0.00 |
| 10/20/2004 | TRANS FROM 1L010530 | $500,000.00 | $0.00 |
| 12/31/2004 | TRANS FROM 1L010530 | $500,000.00 | $0.00 |
| 7/19/2005 | CHECK | $50,000.00 | $50,000.00 |
| 9/26/2005 | CHECK | $25,000.00 | $25,000.00 |
| 10/18/2005 | CHECK | $50,000.00 | $50,000.00 |
| 12/30/2005 | TRANS FROM 1L010530 | $500,000.00 | $0.00 |
| 6/26/2006 | CHECK | $420,000.00 | $420,000.00 |
| 12/27/2006 | CHECK | $15,000.00 | $15,000.00 |
| 10/29/2007 | CHECK | $30,000.00 | $30,000.00 |
| 12/31/2007 | TRANS FROM 1L010530 | $650,000.00 | $0.00 |
| 8/22/2008 | CHECK | $175,173.37 | $175,173.37 |
| 8/28/2008 | CHECK RETURNED | ($175,173.37) | ($175,173.37) |
| 9/8/2008 | CHECK | $175,173.37 | $175,173.37 |
| 9/29/2008 | TRANS FROM 1E015830 | $400,000.00 | $400,000.00 |
| 12/2/2008 | CHECK | $20,000.00 | $20,000.00 |
| **Total Deposits:** | | $14,129,469.27 | $8,626,161.46 |

| WITHDRAWALS | | | |
|---|---|---|---|
| **DATE** | **TRANSACTION DESCRIPTION** | **AMOUNT** | **ADJUSTED AMOUNT** |
| 3/9/1982 | CHECK | ($750.00) | ($750.00) |
| 3/11/1982 | CHECK | ($750.00) | ($750.00) |
| 7/13/1982 | CHECK | ($50,477.64) | ($50,477.64) |
| 10/27/1982 | TRANS TO H SQUADRON | ($200,000.00) | ($200,000.00) |
| 7/18/1983 | CHECK | ($75,000.00) | ($75,000.00) |
| 7/28/1983 | CHECK | ($25,000.00) | ($25,000.00) |
| 8/15/1983 | CHECK | ($85,000.00) | ($85,000.00) |
| 5/17/1985 | CHECK | ($1,633.31) | ($1,633.31) |
| 3/17/1986 | CHECK | ($2,139.00) | ($2,139.00) |
| 3/27/1987 | CHECK | ($4,000.00) | ($4,000.00) |
| 1/22/1988 | CHECK | ($254,654.00) | ($254,654.00) |
| 4/18/1988 | CHECK | ($4,000.00) | ($4,000.00) |
| 2/1/1989 | TRANS TO 10191510 | ($2,175,925.80) | ($1,617,260.57) |
| 3/2/1989 | CHECK | ($4,000.00) | ($4,000.00) |
| 2/13/1990 | CHECK | ($50,000.00) | ($50,000.00) |
| 2/22/1990 | CHECK | ($12,000.00) | ($12,000.00) |
| 3/1/1990 | CANCEL CHECK 02/22/90 | $12,000.00 | $12,000.00 |
| 3/2/1990 | CHECK | ($5,000.00) | ($5,000.00) |
| 6/11/1990 | TRANS TO H&A SQUADRON | ($1,600,000.00) | ($1,600,000.00) |
| 6/29/1990 | CHECK | ($90,000.00) | ($90,000.00) |
| 1/11/1991 | CHECK | ($480,000.00) | ($480,000.00) |
| 2/15/1991 | CHECK | ($5,000.00) | ($5,000.00) |
| 7/2/1991 | CHECK | ($160,000.00) | ($160,000.00) |
| 7/3/1991 | STOP PAYMENT CHECK 7/2/91 | $160,000.00 | $160,000.00 |
| 7/3/1991 | CHECK | ($160,000.00) | ($160,000.00) |

5

MADC1064_00000012

| 2/19/1992 | CHECK | ($5,000.00) | ($5,000.00) |
|---|---|---|---|
| 3/16/1993 | CHECK | ($6,000.00) | ($6,000.00) |
| 3/25/1993 | STOP PAYMENT | $6,000.00 | $6,000.00 |
| 3/26/1993 | CHECK | ($6,000.00) | ($6,000.00) |
| 4/12/1994 | CHECK | ($7,000.00) | ($7,000.00) |
| 6/9/1994 | CHECK | ($165,000.00) | ($165,000.00) |
| 12/8/1994 | CHECK | ($2,050,000.00) | ($2,050,000.00) |
| 3/16/1995 | CHECK | ($7,000.00) | ($7,000.00) |
| 6/16/1995 | CHECK | ($175,000.00) | ($175,000.00) |
| 2/28/1996 | CHECK | ($7,000.00) | ($7,000.00) |
| 3/15/1996 | CHECK | ($195,654.00) | ($195,654.00) |
| 4/26/1996 | CHECK | ($61,531.00) | ($61,531.00) |
| 6/18/1996 | ROLLOVER TO 1S023130 | ($308,130.00) | $0.00 |
| 6/24/1996 | ROLLOVER A/O 6/18/96 | ($2,389,267.00) | $0.00 |
| 6/26/1996 | ROLLOVER TO 1S023130 | ($370,403.00) | $0.00 |
| 7/2/1996 | ROLLOVER TO 1S023130 | ($706,954.00) | $0.00 |
| 7/9/1996 | CHECK | ($30,000.00) | ($30,000.00) |
| 9/16/1996 | CHECK | ($3,446.00) | ($3,446.00) |
| 9/17/1996 | CHECK | ($50,000.00) | ($50,000.00) |
| 9/24/1996 | CHECK | ($78,000.00) | ($78,000.00) |
| 12/16/1996 | TRANS TO 1L010530 | ($174,677.00) | $0.00 |
| 12/16/1996 | TRANS TO 1S023130 | ($101,294.00) | $0.00 |
| 1/2/1997 | TRANS TO 1P006230 | ($616,018.00) | $0.00 |
| 1/3/1997 | CHECK | ($400,000.00) | ($400,000.00) |
| 1/3/1997 | CHECK | ($4,416,669.00) | ($4,416,669.00) |
| 1/17/1997 | CHECK | ($50,000.00) | ($50,000.00) |
| 2/19/1997 | CHECK | ($193,959.00) | ($193,959.00) |
| 3/27/1997 | CHECK | ($150,000.00) | ($150,000.00) |
| 4/4/1997 | CHECK | ($100,000.00) | ($100,000.00) |
| 4/14/1997 | CHECK | ($150,000.00) | ($150,000.00) |
| 5/30/1997 | CHECK | ($30,000.00) | ($30,000.00) |
| 6/13/1997 | CHECK | ($42,500.00) | ($42,500.00) |
| 7/25/1997 | TRANS TO 1L014130 | ($3,664,424.81) | $0.00 |
| 8/28/1997 | CHECK | ($160,000.00) | ($160,000.00) |
| 11/19/1997 | TRANS TO 1P006230 | ($761,185.41) | $0.00 |
| 11/26/1997 | CHECK | ($30,000.00) | ($30,000.00) |
| 12/17/1997 | CHECK | ($100,000.00) | ($100,000.00) |
| 12/24/1997 | CHECK RETURNED | $100,000.00 | $100,000.00 |
| 2/27/1998 | CHECK | ($33,898.46) | ($33,898.46) |
| 3/5/1998 | CHECK | ($200,000.00) | ($200,000.00) |
| 4/2/1998 | CHECK | ($175,000.00) | ($175,000.00) |
| 5/22/1998 | CHECK | ($60,000.00) | ($60,000.00) |
| 7/6/1998 | CHECK | ($50,000.00) | ($50,000.00) |
| 7/16/1998 | CHECK | ($75,000.00) | ($75,000.00) |
| 10/6/1998 | CHECK | ($20,000.00) | ($20,000.00) |
| 11/17/1998 | TRANS TO 1P006230 | ($912,570.00) | $0.00 |
| 12/3/1998 | CHECK | ($150,000.00) | ($150,000.00) |
| 12/23/1998 | TRANS TO 1S038730 | ($2,241,458.00) | $0.00 |

MADC1064_00000013

| 12/23/1998 | CHECK | ($200,000.00) | ($200,000.00) |
|---|---|---|---|
| 1/7/1999 | CHECK | ($200,000.00) | ($200,000.00) |
| 2/11/1999 | CHECK | ($100,000.00) | ($100,000.00) |
| 3/2/1999 | CHECK | ($17,000.00) | ($17,000.00) |
| 3/24/1999 | CHECK | ($130,000.00) | ($130,000.00) |
| 4/8/1999 | CHECK | ($40,000.00) | ($40,000.00) |
| 4/13/1999 | CHECK | ($50,000.00) | ($50,000.00) |
| 4/14/1999 | TRANS TO 1S028730 | ($90,193.00) | $0.00 |
| 5/26/1999 | CHECK | ($150,000.00) | ($150,000.00) |
| 12/6/1999 | TRANS TO 1P006230 | ($1,466,484.00) | $0.00 |
| 12/8/1999 | CHECK | ($20,000.00) | ($20,000.00) |
| 12/31/1999 | TRANS TO 1E015830 | ($2,000,000.00) | $0.00 |
| 1/3/2000 | CHECK | ($200,000.00) | ($200,000.00) |
| 1/12/2000 | CHECK | ($120,000.00) | ($120,000.00) |
| 2/1/2000 | TRANS TO 1P006230 | ($84,171.00) | $0.00 |
| 2/2/2000 | CHECK | ($17,500.00) | ($17,500.00) |
| 3/1/2000 | CHECK | ($200,000.00) | ($200,000.00) |
| 3/1/2000 | CHECK | ($280,000.00) | ($280,000.00) |
| 5/22/2000 | CHECK | ($100,000.00) | ($100,000.00) |
| 5/31/2000 | CHECK | ($140,000.00) | ($140,000.00) |
| 8/29/2000 | CHECK | ($195,000.00) | ($195,000.00) |
| 11/7/2000 | CHECK | ($4,050,000.00) | ($4,050,000.00) |
| 12/19/2000 | CHECK | ($100,000.00) | ($100,000.00) |
| 12/29/2000 | CHECK | ($150,000.00) | ($150,000.00) |
| 1/2/2001 | CHECK | ($100,000.00) | ($100,000.00) |
| 2/8/2001 | CHECK | ($19,500.00) | ($19,500.00) |
| 2/9/2001 | CHECK | ($100,000.00) | ($100,000.00) |
| 2/20/2001 | CHECK | ($240,000.00) | ($240,000.00) |
| 2/22/2001 | TRANS TO 1G032530 | ($795,195.00) | $0.00 |
| 2/22/2001 | TRANS TO 1S043730 | ($640,682.00) | $0.00 |
| 3/13/2001 | CHECK | ($35,000.00) | ($35,000.00) |
| 3/30/2001 | CHECK | ($100,000.00) | ($100,000.00) |
| 5/1/2001 | CHECK | ($180,000.00) | ($180,000.00) |
| 5/15/2001 | CHECK | ($90,000.00) | ($90,000.00) |
| 6/26/2001 | TRANS TO 1G032530 | ($19,545.00) | $0.00 |
| 6/26/2001 | TRANS TO 1S043730 | ($15,747.00) | $0.00 |
| 8/30/2001 | CHECK | ($150,000.00) | ($150,000.00) |
| 11/9/2001 | CHECK | ($100,000.00) | ($100,000.00) |
| 12/28/2001 | CHECK | ($100,000.00) | ($100,000.00) |
| 1/17/2002 | CHECK | ($150,000.00) | ($150,000.00) |
| 2/4/2002 | STOP PAYMENT | $150,000.00 | $150,000.00 |
| 2/5/2002 | CHECK | ($150,000.00) | ($150,000.00) |
| 2/6/2002 | CHECK | ($19,500.00) | ($19,500.00) |
| 2/25/2002 | CHECK | ($240,000.00) | ($240,000.00) |
| 3/26/2002 | CHECK | ($55,000.00) | ($55,000.00) |
| 5/16/2002 | CHECK | ($100,000.00) | ($100,000.00) |
| 5/22/2002 | CHECK | ($100,000.00) | ($100,000.00) |
| 6/17/2002 | CHECK | ($55,000.00) | ($55,000.00) |

7

MADC1064_00000014

| | | | |
|---|---|---|---|
| 8/1/2002 | CHECK | ($50,000.00) | ($50,000.00) |
| 9/13/2002 | CHECK | ($55,000.00) | ($55,000.00) |
| 11/27/2002 | CHECK | ($30,000.00) | ($30,000.00) |
| 12/2/2002 | CHECK | ($65,000.00) | ($65,000.00) |
| 12/11/2002 | CHECK | ($55,000.00) | ($55,000.00) |
| 1/2/2003 | CHECK | ($100,000.00) | ($100,000.00) |
| 1/29/2003 | CHECK | ($20,500.00) | ($20,500.00) |
| 2/7/2003 | CHECK | ($150,000.00) | ($150,000.00) |
| 3/21/2003 | CHECK | ($300,000.00) | ($300,000.00) |
| 6/2/2003 | CHECK | ($200,000.00) | ($200,000.00) |
| 6/16/2003 | CHECK | ($985,000.00) | ($985,000.00) |
| 8/15/2003 | CHECK | ($150,000.00) | ($150,000.00) |
| 10/1/2003 | CHECK | ($50,000.00) | ($50,000.00) |
| 12/1/2003 | CHECK | ($250,000.00) | ($250,000.00) |
| 12/10/2003 | CHECK | ($75,000.00) | ($75,000.00) |
| 12/17/2003 | CHECK | ($50,000.00) | ($50,000.00) |
| 1/23/2004 | CHECK | ($100,000.00) | ($100,000.00) |
| 2/6/2004 | CHECK | ($121,500.00) | ($121,500.00) |
| 3/2/2004 | CHECK | ($150,000.00) | ($150,000.00) |
| 3/3/2004 | CHECK | ($55,000.00) | ($55,000.00) |
| 3/5/2004 | CHECK | ($150,000.00) | ($150,000.00) |
| 4/15/2004 | CHECK | ($25,000.00) | ($25,000.00) |
| 5/11/2004 | CHECK | ($925,000.00) | ($925,000.00) |
| 6/3/2004 | CHECK | ($55,000.00) | ($55,000.00) |
| 6/28/2004 | CHECK | ($100,000.00) | ($100,000.00) |
| 8/3/2004 | CHECK | ($75,000.00) | ($75,000.00) |
| 8/4/2004 | CHECK | ($75,000.00) | ($75,000.00) |
| 8/9/2004 | RETURNED CHECK | $75,000.00 | $75,000.00 |
| 8/19/2004 | CHECK | ($369,000.00) | ($369,000.00) |
| 9/2/2004 | CHECK | ($55,000.00) | ($55,000.00) |
| 9/30/2004 | CHECK | ($100,000.00) | ($100,000.00) |
| 11/1/2004 | TRANS TO 1L010530 | ($1,000,000.00) | $0.00 |
| 11/3/2004 | CHECK | ($1,255,000.00) | ($1,255,000.00) |
| 11/16/2004 | CHECK | ($120,000.00) | ($120,000.00) |
| 12/13/2004 | CHECK | ($55,000.00) | ($55,000.00) |
| 12/30/2004 | CHECK | ($100,000.00) | ($100,000.00) |
| 12/31/2004 | CHECK | ($1,535,311.00) | ($1,535,311.00) |
| 1/24/2005 | CHECK | ($150,000.00) | ($150,000.00) |
| 2/9/2005 | CHECK | ($375,000.00) | ($375,000.00) |
| 2/25/2005 | CHECK | ($22,500.00) | ($22,500.00) |
| 3/17/2005 | CHECK | ($1,016,000.00) | ($1,016,000.00) |
| 3/24/2005 | CHECK | ($100,000.00) | ($100,000.00) |
| 4/29/2005 | CHECK | ($2,500,000.00) | ($2,500,000.00) |
| 5/26/2005 | CHECK | ($192,500.00) | ($192,500.00) |
| 7/22/2005 | CHECK | ($50,000.00) | ($50,000.00) |
| 8/26/2005 | CHECK | ($180,000.00) | ($180,000.00) |
| 9/16/2005 | CHECK | ($150,000.00) | ($150,000.00) |
| 9/21/2005 | CHECK | ($250,000.00) | ($250,000.00) |

8

MADC1064_00000015

| 10/3/2005 | CHECK | ($400,000.00) | ($400,000.00) |
|---|---|---|---|
| 12/1/2005 | CHECK | ($35,000.00) | ($35,000.00) |
| 12/6/2005 | CHECK | ($110,000.00) | ($110,000.00) |
| 12/16/2005 | CHECK | ($50,000.00) | ($50,000.00) |
| 1/3/2006 | CHECK | ($250,000.00) | ($250,000.00) |
| 1/31/2006 | CHECK | ($1,050,000.00) | ($1,050,000.00) |
| 2/3/2006 | CHECK | ($50,000.00) | ($50,000.00) |
| 3/1/2006 | CHECK | ($198,500.00) | ($198,500.00) |
| 3/31/2006 | CHECK | ($255,000.00) | ($255,000.00) |
| 5/31/2006 | CHECK | ($915,000.00) | ($915,000.00) |
| 6/13/2006 | CHECK | ($50,000.00) | ($50,000.00) |
| 7/18/2006 | CHECK | ($150,000.00) | ($150,000.00) |
| 8/1/2006 | CHECK | ($900,000.00) | ($900,000.00) |
| 9/1/2006 | CHECK | ($155,000.00) | ($155,000.00) |
| 9/7/2006 | CHECK | ($30,000.00) | ($30,000.00) |
| 11/3/2006 | CHECK | ($100,000.00) | ($100,000.00) |
| 12/29/2006 | CHECK | ($55,000.00) | ($55,000.00) |
| 1/2/2007 | STOP PAYMENT | $90,000.00 | $90,000.00 |
| 1/2/2007 | CHECK | ($90,000.00) | ($90,000.00) |
| 1/2/2007 | CHECK | ($90,000.00) | ($90,000.00) |
| 1/19/2007 | CHECK | ($100,000.00) | ($100,000.00) |
| 2/8/2007 | CHECK | ($50,000.00) | ($50,000.00) |
| 2/22/2007 | CHECK | ($25,000.00) | ($25,000.00) |
| 3/5/2007 | CHECK | ($40,000.00) | ($40,000.00) |
| 3/15/2007 | CHECK | ($625,000.00) | ($625,000.00) |
| 5/10/2007 | CHECK | ($125,000.00) | ($125,000.00) |
| 6/5/2007 | CHECK | ($335,000.00) | ($335,000.00) |
| 8/16/2007 | CHECK | ($10,000.00) | ($10,000.00) |
| 8/22/2007 | CHECK | ($80,000.00) | ($80,000.00) |
| 8/31/2007 | CHECK | ($1,250,000.00) | ($1,250,000.00) |
| 9/27/2007 | CHECK | ($175,000.00) | ($175,000.00) |
| 11/19/2007 | CHECK | ($50,000.00) | ($50,000.00) |
| 11/28/2007 | CHECK | ($10,000.00) | ($10,000.00) |
| 12/7/2007 | CHECK | ($55,000.00) | ($55,000.00) |
| 12/27/2007 | CHECK | ($98,000.00) | ($98,000.00) |
| 1/2/2008 | CHECK | ($300,000.00) | ($300,000.00) |
| 2/4/2008 | CHECK | ($100,000.00) | ($100,000.00) |
| 2/8/2008 | CHECK | ($40,000.00) | ($40,000.00) |
| 2/22/2008 | CHECK | ($25,000.00) | ($25,000.00) |
| 3/4/2008 | CHECK | ($220,000.00) | ($220,000.00) |
| 3/19/2008 | CHECK | ($225,000.00) | ($225,000.00) |
| 3/26/2008 | CHECK | ($85,000.00) | ($85,000.00) |
| 4/25/2008 | CHECK | ($107,500.00) | ($107,500.00) |
| 5/28/2008 | CHECK | ($120,000.00) | ($120,000.00) |
| 7/18/2008 | CHECK | ($85,000.00) | ($85,000.00) |
| 8/11/2008 | CHECK | ($80,000.00) | ($80,000.00) |
| 8/26/2008 | CHECK | ($50,000.00) | ($50,000.00) |
| 8/27/2008 | CHECK | ($90,000.00) | ($90,000.00) |

MADC1064_00000016

| | | | |
|---|---|---|---|
| 9/8/2008 | CHECK | ($55,000.00) | ($55,000.00) |
| 9/26/2008 | TRANS TO 1E015830 | ($2,500,000.00) | $0.00 |
| 10/14/2008 | CHECK | ($160,000.00) | ($160,000.00) |
| 11/14/2008 | CHECK | ($40,000.00) | ($40,000.00) |
| **Total Withdrawals:** | | ($66,424,196.43) | ($45,007,132.98) |
| | | | |
| **Total deposits less withdrawals:** | | ($52,294,727.16) | ($36,380,971.52) |

10

MADC1064_00000017