Hearing Date:  TBD
Objections Due:  10/29/2015
Replies Due:  11/11/2015

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------------X

SECURITIES INVESTOR PROTECTION
CORPORATION,

                Plaintiff,

      v.

BERNARD L. MADOFF INVESTMENT SECURITIES,
LLC

                Defendant.

Adv. Pro. No. 08-1789 (SMB)

SIPA LIQUIDATION

(substantively consolidated)

------------------------------------------------------------------------X

In re:

BERNARD MADOFF,

                Debtor.

------------------------------------------------------------------------X

IRVING H. PICARD, Trustee for the Liquidation of:
Bernard L. Madoff Investment Securities LLC,

                Plaintiff,

      v.

ANDREW H. COHEN,

                Defendant.

Adv. No. 10-04311 (SMB)

------------------------------------------------------------------------X

## MEMORANDUM OF LAW IN SUPPORT OF MOTION
## TO INTERVENE ON LIMITED COMMON LEGAL ISSUES

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ....................................................................................................... ii

FACTS AND PROCEDURAL HISTORY ................................................................................ 3

ARGUMENT ............................................................................................................................ 5

I.    Customers are entitled to intervene as a matter of right. .................................................. 5

    A.    Customers have a protectable "interest relating to the . . . transaction." ................ 6

    B.    A decision on "value" and pre-judgment interest will, "as a practical
        matter," bind Customers. ......................................................................................... 9

    C.    Existing parties cannot adequately represent Customers' interests. ..................... 10

II.    Alternatively, if the Court is not inclined to allow intervention of right,
     permissive intervention should be granted. ................................................................... 13

    A.    Customers have material interests in common with the subject of this
        adversary proceeding. ........................................................................................... 13

    B.    Intervention will not result in undue delay or prejudice to any party. .................. 14

    C.    Adequacy of current representation is not a dispositive factor in the
        context of permissive intervention. ...................................................................... 15

    D.    Customers' request for intervention is "timely," and the Trustee's
        opposition is a pretext to hobble his adversaries at the trial and
        appellate levels. .................................................................................................... 16

III.    Alternatively, Customers should be permitted to submit post-trial briefs as
     amicus curiae. ................................................................................................................ 18

CONCLUSION ....................................................................................................................... 19

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*B. Fernandez & Hnos., Inc.* v. *Kellogg USA, Inc.*,
    440 F.3d 541 (1st Cir. 2006) ...............................................................................12

*In re Bernard L. Madoff Inv. Sec. LLC*,
    721 F.3d 54 (2d Cir. 2013), *cert. denied*, 134 S. Ct. 982 (2014) ...........................17

*In re Bernard L. Madoff Inv. Sec. LLC*,
    773 F.3d 411 (2d Cir. 2014) *cert. denied,* 135 S. Ct. 2859 (2015) ...................8, 17

*CBS, Inc. v. Snyder*,
    136 F.R.D. 364 (S.D.N.Y. 1991) ...........................................................................11

*Citizens for an Orderly Energy Policy, Inc. v. County of Suffolk*,
    101 F.R.D. 497 (E.D.N.Y. 1984) ...........................................................................14

*Del. Trust Co. v. Wilmington Trust, N.A.*,
    534 B.R. 500 (S.D.N.Y. 2015)..................................................................................7

*Glancy v. Taubman Ctrs, Inc.*,
    373 F.3d 656 (6th Cir. 2004) ................................................................................12

*Hartford Fire Ins. Co.* v. *Mitlof*,
    193 F.R.D. 154 (S.D.N.Y. 2000) ...........................................................................10

*Jamaica Hosp. Med. Ctr., Inc.* v. *United Health Group, Inc.*,
    584 F. Supp. 2d 489 (E.D.N.Y. 2008)...................................................................18

*Jones v. Ford Motor Credit Co.*,
    No. 00 Civ. 8330 (RJH) (KNF), 2004 U.S. Dist. LEXIS 13225
    (S.D.N.Y. July 15, 2004) .......................................................................................14

*MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc.*,
    471 F.3d 377 (2d Cir. 2006) ................................................................................16

*McNeill v. N.Y. City Hous. Auth.*,
    719 F. Supp. 233, 250 (S.D.N.Y. 1989) ..............................................................13

*N.J. Carpenters Health Fund v. Residential Capital, LLC*,
    No. 08 CV 8781 and 08 CV 5093 (HB), 2010 U.S. Dist. LEXIS 135261
    (S.D.N.Y. Dec. 21, 2010) ........................................................................................8

*N.Y. Pub. Interest Research Grp. v. Regents of the Univ. of the State of N.Y.*,
516 F.2d 350 (2d Cir. 1975) ........................................................................... 7-8

*New England Petroleum Corp. v. Fed. Energy Admin.*,
71 F.R.D. 454 (S.D.N.Y. 1978) ....................................................................10-11

*NML Capital, Ltd. v. Republic of Argentina*,
727 F.3d 230 (2d Cir. 2013), *cert. denied*, 134 S. Ct. 2819 (2014) ...................... 18

*Nuesse v. Camp*,
385 F.2d 694 (D.C. Cir. 1967) ...........................................................................6

*Onandaga Indian Nation v. State of New York*,
No. 97-CV-445, 1997 WL 369389 (N.D.N.Y. June 24, 1997)...............................18

*Oneida Indian Nation of Wis. v. New York*,
732 F.2d 261 (2d Cir. 1984) ................................................................. 2, 6, 10

*Provident Bank v. Cmty Home Mortg. Corp.*,
No. 02-cv-5219 (DRH/JO), 2005 WL 1801654 (E.D.N.Y. July 28, 2005)...........................13

*Roane v. Leonhart*,
741 F.3d 147 (D.C. Cir. 2014) ..........................................................................17

*Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec.*,
Case No. 12-mc-115 (JSR), Dkt. No. 489 (S.D.N.Y. Oct. 15, 2013) ......................................4

*Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec., LLC*,
531 B.R. 439 (Bankr. S.D.N.Y. 2015) .................................................................4

*Security Ins. Co. v. Schipporeit, Inc.*,
69 F.3d 1377 (7th Cir. 1995) ..................................................................... 15, 18

*Thomas v. Henderson*,
297 F. Supp. 2d 1311 (S.D. Ala. 2003) ..............................................................14

*Trbovich v. United Mine Workers*,
404 U.S. 528 (1972) ......................................................................................10

*United States Postal Serv. v. Brennan*,
579 F.2d 188 (2d Cir. 1978) ..................................................................... 13, 14

*United States v. Columbia Pictures Indus., Inc.*,
88 F.R.D. 186 (S.D.N.Y. 1980) ........................................................................15

*United States v. El-Gabrowny*,
844 F. Supp. 955 (S.D.N.Y. 1994)....................................................................18

*United States v. Hooker Chemicals & Plastics Corp.*,
749 F.2d 968 (2d Cir. 1984) ........................................................6, 7

*United States v. Yonkers Bd. of Educ.*,
801 F.2d 593 (2d Cir. 1986) ...........................................................16


## Statutes and Rules

11 U.S. Code Section § 546(e) ....................................... 3, 8, 15, 17

11 U.S. Code Section § 548(c) ............................................. 1, 4, 9

Bankruptcy Rule 7024......................................................................1

Fed. R. Civ. P. 12 ...........................................................................4

Fed. R. Civ. P. 24 .................................................................*passim*

Fed. R. Civ. P. 24(a)....................................................................6, 9

Fed. R. Civ. P. 24(a)(2) ........................................................*passim*

Fed. R. Civ. P. 24(b) ....................................................................15

Fed. R. Civ. P.  24(b)(1)(B).......................................................2, 13

Fed. R. Civ. P.  24(b)(3) ...............................................................14

Fed. R. Civ. P.  24(c).....................................................................14

U.C.C. Article 8 .............................................................................9


## Other Authorities

7C Wright, Miller & Kane, *Fed. Prac. & Proc.*, Civil 3d § 1908.1 .............................................6

6 Moore's *Federal Practice*, § 24.03[c] (Matthew Bender 3d Ed.) .............................................6

Wikipedia, *Washington Generals*,
https://en.wikipedia.org/wiki/Washington_Generals ...........................................................18

Movants are good-faith customers ("Customers") that the Trustee has named as

defendants in 57 avoidance actions (identified in the attached Schedule 1). Customers move to

intervene in this adversary proceeding ("*Cohen*"), both as of right and by permission, pursuant to

Rule 24 of the Federal Rules of Civil Procedure (the "Rules"), as made applicable by Bankruptcy

Rule 7024.

All Customers have asserted one or more defenses that raise legal issues common to

defenses asserted in *Cohen*. For that reason, and as further explained below, Customers seek to

intervene on a single critical common legal issue raised in *Cohen*: the scope of the "value"

defense under Bankruptcy Code Section 548(c) in a SIPA avoidance action.[1]

This issue affects not just the defendant in *Cohen*, but the collective defendants in

literally hundreds of similar adversary proceedings by the Trustee against good-faith customers

of Madoff Securities. All of these lawsuits assert claims predicated on identical theories of law

and identical statutory bases of avoidance, and all seek to avoid transfers by a registered

stockbroker to its customers who knew nothing of the broker's misconduct. If intervention is

denied, Customers effectively will be foreclosed from being heard concerning the scope of their

"value" defenses.

Customers recognize that prior decisions by the District Court and this Court in the

motion to dismiss context have held that customer-defendants are entitled to assert the "value"

---

[1] While the Trustee indicated in the *Cohen* August 28, 2015 Revised Joint Pretrial Order
("Revised PTO") that he was seeking prejudgment interest, the Trustee now is apparently
waiving any claim to prejudgment interest in that matter. (SIPA liquidation of Bernard L.
Madoff Investment Securities LLC, Case No. 08-01789 (SMB) Dkt. No. 11154, § V(6) ("Master
Dkt."). *See* Section XIV, Second Revised Joint Pretrial Order, Master Dkt. No. 11715 ("Second
Revised PTO") ("Based on the facts and circumstances in this Adversary Proceeding, the Trustee
withdraws his request for an award of prejudgment interest with respect to the Avoidable
Transfers.") Customers would address the pre-judgment interest issue solely to preserve their
right to be heard if the Trustee changes his position again and seeks prejudgment interest in
*Cohen*.

defense only in the amount of the net nominal dollars deposited. However, the *Cohen* case will

be the very first instance in which a final, appealable order will be entered on the value defense.

Customers have a right to be heard, not just before this court, but before the District Court and

the Second Circuit, where this common, important issue is likely to be finally determined. Thus,

Customers seek to be heard before this Court decides the issue as a threshold to further review, in

order to assure that all relevant theories of the defense and related matters are considered at all

levels.

Moreover, and of particular importance, the Second Circuit has made clear that "except

for allegations frivolous on their face, <u>an application to intervene cannot be resolved by reference</u>

<u>to the ultimate merits of the claims which the intervenor wishes to assert following intervention.</u>"

*Oneida Indian Nation of Wis. v. New York*, 732 F.2d 261, 265 (2d Cir. 1984) (citations omitted;

emphasis added).

Under Rule 24, intervention is the proper procedural path for Customers seeking to

address common legal issues that vitally affect multiple cases. Customers ask for no role or

delay in the evidentiary presentation of the *Cohen* adversary proceeding. Customers seek only

the opportunity to participate as intervenor-defendants (1) in the post-trial briefing and related

proceedings on the common legal issues raised by this action, (2) in any further proceedings

before the District Court, prior to entry of final judgment, and (3) in any appeal from the final

determination.

In these circumstances, intervention is fully warranted both as of right under Rule

24(a)(2) and permissively under Rule 24(b)(1)(B). *See* §§ I and II, below.

Intervention will promote efficient judicial administration by allowing these issues of

broad applicability to be addressed on a unified basis, rather than through repetitive, piecemeal

follow-on proceedings.  Intervention will also be consistent with the prior course of consolidated

briefing of key issues affecting multiple defendants, such as the application of the "securities

contract/settlement payment" defense of Bankruptcy Code Section 546(e); the question of the

Trustee's standing; and, indeed, the previous briefing of certain "value" defense issues, both

before the District Court and this Court.  That efficient and equitable practice should be

continued here.

The Trustee's real objective in opposing intervention is clear.  He wants to litigate these

key issues against an underfunded opponent with relatively little at stake, thus functionally

preventing Customers (with about $197 million at stake and attorneys who have been intimately

involved in every facet of this liquidation) from having their chance to participate.  This result

would permit the Trustee to avoid litigating the common issues presented in this case on a

common basis under the same principles that have governed previous virtually all of the

litigation of important issues in this case.  It would also be unfair, both to Customers, whose

common defenses with Mr. Cohen stand to be prejudiced by the Trustee's tactics, and to Mr.

Cohen, who should not have to defend these important common issues on his own.  As noted

below, courts grant intervention to avoid the type of unfair, asymmetrical battle sought by the

Trustee.  *See* § II(D), below.

## FACTS AND PROCEDURAL HISTORY[2]

Customers are defendants in 57 adversary proceedings brought by the Trustee.  These

complaints seek to avoid and recover, in the aggregate, $197MM distributed to Customers by

Bernard L. Madoff Investment Securities, LLC ("Madoff Securities").  Schwed Decl. ¶ 3.

---

[2] This Motion is accompanied by a declaration of Gregory Schwed of Loeb & Loeb LLP
("Schwed Decl."), counsel for certain Customers.

Like Andrew Cohen, the defendant in this adversary proceeding, Customers are "good

faith" defendants – that is, the Trustee has never alleged that any of them had any knowledge or

notice of the fraud perpetrated by Madoff Securities and its principal, Bernard Madoff.  *Id.* ¶ 4*;

see also* Second Revised PTO at 7 ("Stipulated Facts").  Master Dkt. No. 11717.  Customers had

a substantially similar, if not identical, broker customer relationship with Madoff Securities.

Under Bankruptcy Code Section 548(c), good-faith defendants in fraudulent transfer

actions are entitled to assert a defense to the extent that they have provided "value."  The Trustee

maintains that defendants are entitled to a "value" defense only to the extent of the nominal

dollar amounts that they deposited with Madoff Securities.  However, Customers (who typically

deposited funds over the course of many years – sometimes decades – before they received

payments from Madoff Securities) believe that the "value" defense affords far greater protection,

under one or more theories.  *See* § I(C), below (summarizing Customers' "value" defenses).

District Judge Rakoff withdrew the reference to decide common issues surrounding the

value defense in the context of Rule 12 motions and ruled that a customer's "value" is limited to

only the net dollars deposited.  *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec.*, Case

No. 12-mc-115 (JSR), Dkt. No. 489 (S.D.N.Y. Oct. 15, 2013).  Customers then sought, but were

denied, certification of the issue for an interlocutory appeal to the Second Circuit.  *Id.*, Dkt. Nos.

490, 491, 506 (motion and briefs), 508 (Memorandum Order).

After the District Court returned the reference of various adversary proceedings, some

customers moved this Court to dismiss the Trustee's complaints based, in part, on the "value"

defense.  This Court denied that portion of the motion.  *Sec. Investor Prot. Corp. v. Bernard L.

Madoff Inv. Sec., LLC,* 531 B.R. 439 (Bankr. S.D.N.Y. 2015).

The Revised PTO in this adversary proceeding was entered on the adversary and master

docket sheet on August 28, 2015.  Master Dkt. No. 11154.  One of the "Issues to be Tried" is:

"The extent to which any transfers made by [Madoff Securities] to Mr. Cohen were made for

value…."  *Id.* § V(4) (same in § V(1), page 11, in Second Revised PTO, Master Dkt. 11715).

On the "value" issue, about $197 million of potential liability is at stake for Customers in

their actions.  By contrast, the amount at stake in the adversary proceeding against Mr. Cohen is

relatively small:  just over $1.1 million.  Second Revised PTO at 2.  Master Dkt. No. 11715.

Customers asked the Trustee to consent to the proposed intervention, and provided the

Trustee with the information he requested about the identity and number of proposed intervenors.

Schwed Decl. ¶ 5.  The Trustee declined to consent, and a preliminary conference was held on

September 30, at which the Court allowed Customers to file this motion to intervene.  *Id.* & Ex. 1

(transcript of September 30 conference).

## ARGUMENT

Given the many adversary proceedings that raise the "value defense," the decision in

*Cohen* is likely to control the ultimate disposition of the scope of that defense in hundreds of

subsequent adversary proceedings arising from the Madoff Securities fraud.  In these

circumstances, Customers should have the opportunity to be meaningfully heard, at all levels of

the litigated dispute.

## I.    Customers are entitled to intervene as a matter of right.

Rule 24 reads, in pertinent part:

> (a)    Intervention of Right.  On timely motion, the court **must**
> permit anyone to intervene who: …
>
> (2) claims an interest relating to the property or transaction
> that is the subject of the action, and is so situated that disposing of the
> action may as a practical matter impair or impede the movant's ability to

protect its interest, unless existing parties adequately represent that interest.

(Emphasis added).

All three Rule 24(a)(2) criteria (sufficient interest; practical impairment of moving party's ability to protect interest; and inadequacy of current representation) "address the same basic question:  Will denial of intervention have a significant enough effect on the movant?" 6 Moore's Federal Practice, § 24.03[c] (Matthew Bender 3d Ed.).  The answer here is unquestionably "yes."  Customers' interests in the "value" defense is concrete and substantial. The determination of the scope of the defense by a final judgment involves a potential swing of many millions of dollars for hundreds of Customers.  It is unrealistic and unfair to place the entire burden of pursuing these arguments on a financially stressed, single defendant with only a relatively small amount at stake.

The Second Circuit has made clear that the elements of a Rule 24(a) inquiry should be considered flexibly:  "the various components of the Rule are not bright lines, but ranges . . . Application of the Rule requires that its components be read not discretely, but together.  A showing that a very strong interest exists may warrant intervention upon a lesser showing of impairment or inadequacy of representation."  *United States v. Hooker Chemicals & Plastics Corp.*, 749 F.2d 968, 983 (2d Cir. 1984).

## A.    Customers have a protectable "interest relating to the . . . transaction."

In a leading case decided shortly after the 1966 liberalization of Rule 24, the District of Columbia Circuit observed that "the 'interest' test is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process."  *Nuesse v. Camp*, 385 F.2d 694, 700 (D.C. Cir. 1967) (emphasis added) (cited with approval in 7C Wright, Miller & Kane, Fed. Prac. & Proc., Civil 3d § 1908.1 at 333-34).  The

Second Circuit concurs in this broad, practical approach: "The 1966 amendments focused on abandoning formalistic restrictions in favor of 'practical considerations' to allow courts to reach pragmatic solutions to intervention problems." *Hooker, supra*, 749 F.2d at 983 (citations omitted).

The Second Circuit further has held that even when a pending action may not directly bind a proposed intervenor, intervention as of right is required if "there is a substantial likelihood that the claims and interests of the proposed intervenors . . . may be adversely affected at least by principles of *stare decisis*, arising out of the final judgment to be entered in this case." *Oneida Indian Nation of Wis. v. New York*, 732 F.2d 261, 265 (2d Cir. 1984). This case presents that precise situation.

Here, an adverse final decision on the scope and merits of the value defense – even without Customers' participation – could slam the door on Customers' right to pursue their asserted "value" defenses at the appellate level. Both Judge Rakoff and this Court ruled previously in the motion to dismiss context that Customers were limited in their "value" defense, in the context of the issues presented on those motions, to claim the benefit only of the nominal dollars deposited, as a matter of law. If a final order were entered reaffirming that ruling, and the appellate court were to similarly rule, all Customers would be functionally bound by the legal principles enunciated by those decisions, and the individual factual differences among the actions (typically only the number of defendants, the amount in controversy, and the duration of a customer's investments with Madoff Securities) would be irrelevant to the overriding legal decision.

The demonstrable economic interest of a proposed intervenor is a sufficient ground for intervention of right. For example, in *N.Y. Pub. Interest Research Grp. v. Regents of the Univ.*

*of the State of N.Y.*, 516 F.2d 350 (2d Cir. 1975), the Court held that a pharmaceutical society

and three individual pharmacists were entitled to intervene as of right in an action brought by

consumers.  The consumers sought to enjoin state regulators from enforcing a ban on the

advertising of prescription drug prices.  Even though the express purpose of the ban was to

regulate "unprofessional conduct in the practice of pharmacy," the Court confirmed that the

practical economic effect on the pharmacists was paramount:  "There can be little doubt that the

challenged prohibition against advertising the price of prescription drugs . . . affects the

economic interests of members of the pharmacy profession."  *Id.* at 351-52.

Similarly, in *Del. Trust Co. v. Wilmington Trust, N.A.*, 534 B.R. 500 (S.D.N.Y. 2015),

intervention as of right was ordered where the proposed intervenors had significant interests at

stake that would be harmed by use of a proposed method for allocating funds.  *See also N.J.*

*Carpenters Health Fund v. Residential Capital, LLC*, No. 08 CV 8781 and 08 CV 5093  (HB),

2010 U.S. Dist. LEXIS 135261, at *12-15 (S.D.N.Y. Dec. 21, 2010) (granting intervention as of

right where "[t]he Intervenors' interest will be impaired by any disposition of this action that

includes findings that affect their claims.  Any disposition on the merits would inevitably affect

their claims since they arise from the same course of conduct and assert the same legal theories

as the current plaintiffs.").

Also illuminating is *In re Bernard L. Madoff Inv. Sec. LLC*, 773 F.3d 411 (2d Cir. 2014)

*cert. denied,* 135 S. Ct. 2859 (2015), in which the Court rejected the Trustee's argument for a

narrow construction of the safe harbor of Bankruptcy Code Section 546(e).  The Court ruled that,

as used in that statute, the phrase "related to" a securities contract was framed "quite

expansively" and therefore included a wide range of agreements "related to" the specific forms

of securities contract enumerated in the statute.  The same interpretive approach, giving a natural

reading to Rule 24(a)'s broad language (requiring the intervenor to show only "an interest
<u>relating to</u> the … transaction that is the subject of the action."), is appropriate here.

      **B.**    **A decision on "value" and pre-judgment interest
will, "as a practical matter," bind Customers.**

As contemplated by Rule 24(a)(2), Customers are very much "so situated that [an adverse
result on "value" or prejudgment interest] may as a practical matter impair or impede the
movant's ability to protect its interest."  A final judicial determination on these issues would
functionally bind all good-faith defendants.  The essential facts in the good-faith suits are largely
the same:  a customer deposited funds with Madoff Securities before the bankruptcy, and, with
no knowledge of the fraud, withdrew a larger nominal amount – sometimes years or decades
later.

The basic "value" defenses for good faith customers are all also essentially the same.
They include the concepts:  (i) that the transfers constituted value "to the extent that[a] transferee
. . . gave value to the debtor in exchange for such transfer or obligation" (11 U.S.C. § 548(c)) or
satisfied "present or antecedent debts" (11 U.S.C. 548(d)(2)(A)), including Customer claims and
broker obligations under contracts and applicable law for rescission, securities fraud, breach of
fiduciary duty, common law fraud, and securities entitlements owed under U.C.C. Article 8,
together with interest thereon); (ii) that such obligations are unavoidable and cannot be reached
by the Trustee; and (iii) that the "value" of deposited funds can only be meaningfully measured
against the challenged transfer by using inflation-adjusted or "constant" dollars or otherwise to
account for time-value-of-money principles.

If the "value" and prejudgment interest issues in this adversary proceeding end up being
finally decided by the Second Circuit – particularly as matters of law – any such ruling would,
"as a practical matter" (to use the language of the Rule), bind all parties in the case.  The Trustee,

as plaintiff in control of his many cases, is guaranteed a seat at the table in this Court, the District

Court and the Second Circuit.  By contrast, Customers with a great deal at stake from such a

determination will have no voice – unless intervention is granted.

This potential unfairness is the very reason why Rule 24(a)(2) mandates intervention

when, under a flexible standard, the pending litigation may "as a practical matter" impair or

impede the movants' ability to protect their interests.  The impairment to Customers need not rise

to the level of formal issue or claim preclusion.  *See Oneida Indian Nation of Wis.*, 732 F.2d at

265  (intervention of right allowed where "there is a substantial likelihood that the claims and

interests of the proposed intervenors . . . may be adversely affected, <u>at least by the principles of</u>

<u>stare decisis</u>, arising out of a final judgment.") (emphasis added); *Hartford Fire Ins. Co.* v.

*Mitlof*, 193 F.R.D. 154, 161 (S.D.N.Y. 2000) (allowing intervention of right:  "Although [the

proposed intervenor] would not be barred by res judicata from bringing its own action against

Hartford, as a practical matter, its claim against Hartford could be compromised by the outcome

of the instant litigation.").

In short, if and when the Second Circuit rules on these issues, it will essentially be "game

over" on these issues.  Once the Second Circuit has made a considered decision on the value

defense raised by Mr. Cohen, it is prohibitively unlikely to reverse itself on the same or closely

related issues when Customers finally have their opportunity to raise them.  It will not matter that

Customers did not technically get their chance to make their case in an appellate forum.

### C.    <u>Existing parties cannot adequately represent Customers' interests.</u>

"The requirement of the Rule [intervention of right] is satisfied if the applicant shows that

the representation of his interest '<u>may be</u>' inadequate; and <u>the burden of making that showing</u>

<u>should be treated as minimal</u>."  *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972)

(emphasis added); *accord New England Petroleum Corp. v. Fed. Energy Admin.*, 71 F.R.D. 454,

458 (S.D.N.Y. 1978); *see also CBS*, *Inc. v. Snyder*, 136 F.R.D. 364, 368 (S.D.N.Y. 1991) ("The

burden of persuasion to demonstrate adequacy of representation falls on the party opposing

intervention.") (citations omitted).

Here, it is plain that "existing parties" cannot "adequately represent" Customers'

interests.  Rule 24(a)(2).  This is in no way to impugn the competence or diligence of Mr.

Cohen's counsel.  Rather, it is only a practical recognition of the realities of representing a

private individual of modest means in a relatively small-stakes case.  The amount at issue in

*Cohen* is only $1.1 million.

At the September 30 preliminary conference on Customers' intervention request, counsel

for Mr. Cohen indicated that he would welcome Customers' intervention because litigation of

these complex "value" legal issues (through appeal, if necessary) would be inordinately

expensive for Mr. Cohen, who is of limited means.  Schwed Decl. Ex. 1 (Tr. at 22, lines 20-23)

("He [Mr. Cohen] doesn't have the wherewithal and we don't have the wherewithal to spend a

quarter of million dollars or something in that range from here on in all the way up to the Second

Circuit.").  Moreover, Mr. Cohen, for the last few years has been employed only part-time.  *Id*. at

22, lines 17-19.  He has been unable to pay his counsel even the modest $25,000 he has been

charged for their representation of him thus far, in the pretrial phases over the last several years.

*Id*. at 21, line 24 – 22, line 9.  In these circumstances, it is unrealistic and unfair to both

Customers and Mr. Cohen to expect Mr. Cohen and his counsel to carry the full burden on these

complex, nuanced issues that vitally affect the economic fate of Customers and hundreds of other

defendants.

Customers, by contrast, collectively have about $197 million at stake, involving the very

same "value" defense (as well as variations thereon) as is raised in *Cohen*. Customers can take

advantage of economies of scale in representation that are unavailable to Mr. Cohen.

These quantitative differences are legally meaningful. For example, in *Glancy v.*

*Taubman Ctrs, Inc*., 373 F.3d 656, 675 (6th Cir. 2004), the Court ruled that an existing party did

not "adequately represent" the absentee because, among other things, while the existing party

"would have a similar interest in fighting any action to invalidate the stock . . . the intensity of

that interest differs from [the absentee], as [the absentee] controls [500] times more shares." The

Court went on to observe: "Courts have held that asymmetry in the intensity of the interest can

prevent a named party from representing the interests of the absentee." *Id.*; *see also B.*

*Fernandez & Hnos*., *Inc*. v. *Kellogg USA*, *Inc*., 440 F.3d 541, 546 (1st Cir. 2006) ("One way for

the intervenor to show inadequate representation is to demonstrate that its interests are

sufficiently different in kind <u>or degree</u> from those of the named party.") (emphasis added).

Apart from the economic factors inhibiting a comprehensive exposition by Mr. Cohen's

counsel, it would be inappropriate and unfair to insist that Mr. Cohen's counsel frame and fully

explicate each of Customers' defense theories and arguments. Mr. Cohen is not a class

representative. His counsel will no doubt do precisely what attorneys should do: represent Mr.

Cohen and his interests exclusively. If those interests diverge from the interests of Customers,

Mr. Cohen's lawyers will be duty-bound to do what is best for Mr. Cohen, without regard to the

interests of anyone else.[3]

---

[3] Notably, the Trustee, in his three-page letter setting forth his reasons for opposing
intervention, never claimed that Mr. Cohen could "adequately represent" all Customers on these
issues. Schwed Decl. Ex. 10.

**II.    Alternatively, if the Court is not inclined to allow intervention of
right, permissive intervention should be granted.**

Permissive intervention is appropriate where the movant "has a claim or defense that

shares with the main action a common question of law or fact."  Rule 24(b)(1)(B); *see also*

*Provident Bank v. Cmty. Home Mortg. Corp.*, No. 02-cv-5219 (DRH/JO), 2005 WL 1801654, at

*10 (E.D.N.Y. July 28, 2005) (permissive intervention warranted when common questions of

law and fact arose from the same underlying fraud).

Other relevant factors include whether intervenors' "interests are adequately represented

by the other parties, and whether parties seeking intervention will significantly contribute to full

development of the underlying factual issues in the suit and to the just and equitable adjudication

of the legal questions presented."  *United  States Postal Serv. v. Brennan*, 579 F.2d 188, 191-92

(2d Cir. 1978) (internal quotation marks and citation omitted).

Customers easily meet these criteria.  As a matter of sound judicial discretion, permissive

intervention should accordingly be allowed here.

**A.    Customers have material interests in common
with the subject of this adversary proceeding.**

As detailed above, Customers raise significant legal questions that are identical to or

otherwise significantly implicated by those presented in this adversary proceeding:  the scope

and extent of the "value" defense.  Where, as here, a final judicial ruling in Mr. Cohen's case

will, as a practical matter, adjudicate the legal principles that will determine Customers' rights,

intervention should be permitted.  *See McNeill v. N.Y. City Hous. Auth.*, 719 F. Supp. 233, 250

(S.D.N.Y. 1989) (allowing permissive intervention where the intervenors' legal interests were

common to the ones raised by the parties, and the issues did not turn on individual facts and

circumstances).

**B.**    **Intervention will not result in undue delay or prejudice to any party.**

Under Rule 24(b)(3), "the court must consider whether the intervention will unduly delay or prejudice adjudication of the original parties' rights." Here, no delay or prejudice would result from Customers' intervention.

The Trustee has not identified, and cannot identify, any legitimate additional burden, either in cost or delay, that would result from Customers' limited-scope intervention. Customers do not seek any delay in the *Cohen* trial. *See Thomas v. Henderson*, 297 F. Supp. 2d 1311, 1326 (S.D. Ala. 2003) (allowing insurance company to intervene for the "limited purpose" of submitting special jury interrogatories, where insurance company would not participate in the trial and the intervention would require no additional discovery or delay the trial).[4]

Even if Customers' intervention caused some modest delay, the Second Circuit has held that "[t]he principal consideration set forth in the Rule is whether the intervention will <u>unduly</u> delay or prejudice the adjudication of the rights of the original parties." *Brennan*, *supra*, 579 F.2d at 191-92 (internal quotation marks omitted; emphasis added); *Citizens for an Orderly Energy Policy, Inc. v. County of Suffolk*, 101 F.R.D. 497, 502-03 (E.D.N.Y. 1984) (even if additional parties took additional time, permissive intervention is proper if the resulting delay will not be undue) (citing 7C Wright, Miller & Kane, <u>Fed. Prac. & Proc.</u>, Civil 3d § 1913); *see also Jones v. Ford Motor Credit Co.*, No. 00 Civ. 8330 (RJH) (KNF), 2004 U.S. Dist. LEXIS 13224, at *6 (S.D.N.Y. July 15, 2004) (finding that despite delay, "efficiency is best served" by allowing intervention).

---

[4] Customers' proposed intervention is so minimal in scope that Customers believe Rule 24(c)'s requirement that the motion "be accompanied by a pleading that sets out the claim or defense for which intervention is sought" is met by this brief and reference to page 11 of the Second Revised PTO that identifies Mr. Cohen's "value" defense and right to "any type of setoff," as issues to be tried. Master Dkt. No. 11715.

In fact, far from delaying matters, intervention would further the interests of judicial

management and litigation efficiency. *See Sec. Ins. Co. v. Schipporeit, Inc.*, 69 F.3d 1377, 1381

(7th Cir. 1995) ("The most obvious benefits of intervention in general are efficiency and

consistency that result from resolving related issues in a single proceeding.").  The Trustee had

little problem with – and in fact encouraged – consolidated briefing on numerous issues in this

liquidation, including:  (i) the issue of the Trustee's standing; (ii) the applicability of Bankruptcy

Code Section 546(e); (iii) issues regarding the calculation of net equity; (iv) inter-account

transfer issues; (v) issues regarding extraterritoriality; (vi) issues regarding the jurisdiction of the

Bankruptcy Court after *Stern v. Marshall*; and (vii) the previous contested proceedings on

"value" before judge Rakoff and this Court.  There is no principled (or valid) reason for a

different result here.

### C.    Adequacy of current representation is not a dispositive factor in the context of permissive intervention.

As previously discussed, Mr. Cohen cannot adequately represent the interests of the

Customers on the "value" issue.  While this factor is a prerequisite for intervention of right under

Rule 24(a)(2), it is only one of many considerations for permissive intervention.  *See* Rule 24(b)

(no mention of adequacy of representation); *United States v. Columbia Pictures Indus., Inc.*, 88

F.R.D. 186, 189 (S.D.N.Y. 1980) (reliance on adequate representation "seems inappropriate" for

permissive representation).  In short, even if the Court finds that Mr. Cohen can adequately

represent Customer interests, permissive intervention would still be appropriate.

**D.    Customers' request for intervention is "timely," and the Trustee's opposition
is a pretext to hobble his adversaries at the trial and appellate levels.**

The timeliness requirement "is flexible" and any decision as to timeliness "is one

entrusted to the district judge's sound discretion." *United States v. Yonkers Bd. of Educ.*, 801

F.2d 593, 594-95 (2d Cir. 1986)).  The factors in assessing timeliness include:  "(a) the length of

time the applicant knew or should have known of [its] interest before making the motion; (b) the

prejudice to existing parties resulting from the applicant's delay; (c) prejudice to [the] applicant

if the motion is denied; and (d) [the] presence of unusual circumstances militating for or against

a finding of timeliness." *MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc.*, 471 F.3d 377, 390

(2d Cir. 2006) (internal quotation marks and citation omitted).

One of the procedural difficulties of the Madoff Securities liquidation is that the master

case docket reflects activity in literally hundreds of cases, many on dramatically different time

tracks.  With the entry of the Revised PTO in *Cohen* on August 28, it became clear that trial was

imminent, and Customers promptly initiated the process of intervention.  Customers have

subsequently proceeded quickly and diligently to move the process forward.  Specifically,

Customers asked the Trustee's counsel, in a September 11 email, if the Trustee would consent to

Customers' limited intervention.  Schwed Decl. Ex. 2.  The Trustee's counsel responded, in a

September 14 email, that the Trustee was "considering [Customers'] request" and would

"provide a response later this week," but the Trustee first wanted to additional information from

Customers as to the identities and number of defendants seeking intervention.  *Id.*, Ex. 3.

Because September 14 and 15 were Jewish High Holidays, the Trustee's counsel was told that a

response to the request would have to wait until later in the week.  *Id.*, Ex. 4.  On September 17,

Customers' counsel responded to the Trustee's requests regarding the extent and identity of the

proposed intervenors.  *Id.*, Ex. 5.

On September 18, Trustee's counsel formally refused to consent to the intervention request. *Id.*, Ex. 6. The Trustee was asked for his reasons on September 20 (*id.*, Ex. 7), and Trustee responded on September 21. *Id.*, Ex. 8. Notably, the Trustee, in identifying his reasons, never claimed that Customers' intervention motion would be untimely. *Id.*

Customers then submitted to the Court a letter dated September 24, seeking permission to file the intervention motion. *Id.*, Ex. 9 (Dkt. No.56). The Trustee responded on September 25. *Id.*, Ex. 10 (Dkt. No. 57). A preliminary conference was held on September 30, at which the Court permitted Customers to make this motion to intervene. *Id.*, Ex 1 (Tr. at 44, line 25). Customers and the Trustee then agreed on a briefing schedule, which was approved by the Court.

Significantly, the Trustee would in no way be prejudiced by the proposed limited intervention – a major factor in assessing timeliness. *See Roane v. Leonhart*, 741 F.3d 147, 151-152 (D.C. Cir. 2014) (district court abused its discretion in denying intervention as untimely without considering fact that intervention carried no risk of prejudicing existing parties, because "the requirement of timeliness is aimed primarily at preventing potential intervenors from unduly disrupting litigation, to the unfair detriment of the existing parties.").

The Trustee's real objective here is obvious. He opposes intervention not because he will be prejudiced, but because he wants to avoid a fight with well-financed and well-organized adversaries on the critical "value" defense. In the wake of the Trustee's prior significant appellate losses,[5] he and his counsel would presumably prefer to litigate these high-stakes "value" issues against an opponent who has limited ability to mount a full-scale defense.

---

[5] *See, e.g.*, *In re Bernard L. Madoff Inv. Sec. LLC,* 773 F.3d 411 (2d Cir. 2014), *cert. denied*, 135 S. Ct. 2859 (2015) (rejecting Trustee's argument on the scope of Bankruptcy Code Section 546(e)) and *In re Bernard L. Madoff Inv. Sec. LLC*, 721 F.3d 54 (2d Cir. 2013), *cert. denied*, 134 S. Ct. 982 (2014) (rejecting Trustee's attempt to hold banks responsible for Madoff's fraud).

Fortunately, courts have seen through such tactics.  For example, the Seventh Circuit, in

granting an intervention of right over the opposition of an insurance company, wryly observed:

"[The insurance company] opposed LaSalle's petition to intervene because it wanted a quick,

unopposed adjudication . . . . It wanted to play the Washington Generals[6] and get out of town

with a quick win.  The district court wisely allowed a more worthy opponent to get into and onto

the court."  *Sec. Ins. Co. v. Schipporeit, Inc.*, 69 F.3d 1377, 1381 (7th Cir. 1995).

### III.    Alternatively, Customers should be permitted to submit post-trial briefs as amicus curiae.

The appropriate procedural mechanism to ensure that Customers' rights to be heard on

these vital issues are preserved is intervention.  However, if the Court declines intervention,

Customers seek leave to submit post-trial briefs as *amici*.  *See NML Capital*, *Ltd. v. Republic of

Argentina*, 727 F.3d 230, 239-240 (2d Cir. 2013), *cert. denied*, 134 S. Ct. 2819 (2014) (denying

intervention, but considering movants' submissions as being from *amici curiae*); *United States v.

El-Gabrowny*, 844 F. Supp. 955, 957 n.1 (S.D.N.Y. 1994) (*amicus* briefs allowed when "they are

of aid to the court and offer insights not available from the parties").  While there is no single

prevailing standard for obtaining leave to file an *amicus brief* in the district or bankruptcy courts,

courts generally have broad inherent discretion and authority to permit or deny an appearance as

*amicus curiae* in any particular matter.  *Onandaga Indian Nation v. State of N.Y.*, No. 97-CV-

445, 1997 WL 369389, at *2 (N.D.N.Y. June 24, 1997); *Jamaica Hosp. Med. Ctr.*, *Inc.* v. *United

Health Group*, *Inc.*, 584 F. Supp. 2d 489, 497 (E.D.N.Y. 2008) (discussing broad discretion for

granting *amicus* participation).   To the extent intervention is denied, the Court should exercise

that power to permit Customers to be heard through the filing of *amicus* briefs.

---

[6] The Washington Generals "were an American exhibition basketball team, best known
for their spectacular losing streak in exhibition games against the Harlem Globetrotters."
https://en.wikipedia.org/wiki/Washington_Generals.

## CONCLUSION

For the foregoing reasons, Customers respectfully request that they be allowed to intervene as of right or, alternatively, to intervene permissively.  If both forms of intervention are denied, then they request the opportunity to file *amicus briefs*.

Dated:  October 9, 2015

Respectfully submitted[7],

LOEB & LOEB LLP

By:  /s/  Gregory Schwed
    Gregory Schwed
    345 Park Avenue
    New York, New York 10154
    Tel: (212) 407-4000
    Email: gschwed@loeb.com

BAKER & MCKENZIE LLP

By:  /s/ Richard A. Kirby
    Richard A. Kirby
    815 Connecticut Avenue, N.W.
    Washington, District of Columbia  20006
    Tel:  (202) 452-7020
    Email:  richard.kirby@bakermckenzie.com

MILBERG LLP

By:  /s/ Matthew A. Kupillas
    Matthew A. Kupillas
    One Pennsylvania Plaza 49th Floor
    New York, New York  10119
    Tel:  (212) 613-5697
    Email:  mkupillas@milberg.com

DENTONS US LLP

By:  /s/ Carole Neville
    Carole Neville
    1221 Avenue of the Americas
    New York, New York  10020-1089
    Tel:  (212) 768-6889
    Email:  carole.neville@dentons.com

PRYOR CASHMAN LLP

By:  /s/ Richard Levy, Jr.
    Richard Levy, Jr.
    7 Times Square
    New York, NY  10036.
    Tel:  (212) 326-0886
    Email:  rlevy@pryorcashman.com

---

[7] *See* Schedule 1 for list of clients.

## SCHEDULE 1

### ADVERSARY CASES HANDLED BY LOEB & LOEB LLP

| Case Name | Docket Number |
|---|---|
| Picard v. Kenneth Evenstad Trust, et al. | 10-4342 |
| Picard v. Kenneth Evenstad Trust, et al. | 10-4933 |
| Picard v. Mark Evenstad Trust, et al. | 10-4512 |
| Picard v. MBE Preferred Ltd Partnership, et al. | 10-4952 |
| Picard v. Serene Warren Trust, et al. | 10-4514 |
| Picard v. SEW Preferred Ltd Partnership, et al. | 10-4945 |

### ADVERSARY CASES HANDLED BY BAKER & McKENZIE LLP

| Case Name | Docket Number |
|---|---|
| Picard v. Lanx | 10-4384 |
| Picard v. Lowery | 10-4387 |
| Picard v. South Ferry | 10-4488 |
| Picard v. South Ferry | 10-4350 |
| Picard v. ZWD | 10-4374 |

### ADVERSARY CASES HANDLED BY DENTONS US LLP

| Case Name | Docket Number |
|---|---|
| Picard v. Alvin Gindel Revocable Trust, et al. | 10-4925 |
| Picard v. America-Israel Cultural Foundation | 10-5058 |
| Picard v. BAM L.P., et al. | 10-4401 |
| Picard v. Barbara Berson | 10-4415 |
| Picard v. Estate of Jack Shurman, et al. | 10-5028 |
| Picard v. Eugene J. Ribakoff 2006 Trust, et al. | 10-5085 |
| Picard v. Laura E. Giggenheimer Cole | 10-4882 |
| Picard v. Sidney Cole | 10-4672 |
| Picard v. The Federica Ripley French Revocable Trust, et al. | 10-5424 |
| Picard v. James Greiff | 10-4357 |
| Picard v. Harold Hein | 10-4861 |
| Picard v. Toby T. Hobish, et al. | 10-5236 |
| Picard v. Ida Fishman Revocable Trust, et al. | 10-4777 |
| Picard v. Joel I. Gordon Revocable Trust | 10-4615 |
| Picard v. Lapin Children LLC | 10-5209 |
| Picard v. David Markin, et al. | 10-5224 |

| | |
|---|---|
| Picard v. Stanley Miller | 10-4921 |
| Picard v. The Murray Family Trust, et al. | 10-4510 |
| Picard v. Neil Reger Profit Sharing Keogh, et al. | 10-5424 |
| Picard v. Rose Gindel Trust, et al. | 10-4401 |
| Picard v. S&L Partnership, et al. | 10-4702 |
| Picard v. Barry Weisfeld | 10-4332 |

## ADVERSARY CASES HANDLED BY MILBERG LLP

| Case Name | Docket Number |
|---|---|
| Picard v. Gary Albert | 10-4966 |
| Picard v. Aspen Fine Arts Co. | 10-4335 |
| Picard v. Gerald Blumenthal | 10-4582 |
| Picard v. Norton A. Eisenberg | 10-4576 |
| Picard v. Elbert R. Brown Trust, et al. | 10-5398 |
| Picard v. The Estate of Ira S. Rosenberg, et al. | 10-4978 |
| Picard v. P. Charles Gabriele | 10-4724 |
| Picard v. Stephen R. Goldenberg | 10-04946 |
| Picard v. Ruth E. Goldstein | 10-04725 |
| Picard v. The Joseph S. Popkin Revocable Trust, et al. | 10-4712 |
| Picard v. Potamkin Family Foundation I, Inc. | 10-5069 |
| Picard v. Mitchell Ross | 10-4723 |
| Picard v. Richard Roth | 10-5136 |
| Picard v. Jonathan Sobin | 10-4540 |
| Picard v. Harold A. Thau | 10-4951 |
| Picard v. The William M. Woessner Family Trust, et al. | 10-4741 |

## ADVERSARY CASES HANDLED BY PRYOR CASHMAN LLP

| Case Name | Docket Number |
|---|---|
| Picard v. Patrice M. Auld, et al. | 10-4343 |
| Picard v. Bernard Marden Profit Sharing Plan, et al. | 10-5429 |
| Picard v. Abraham J. Goldberg, et al. | 10-5439 |
| Picard v. Charlotte Marden Irrevocable Trust, et al. | 10-5118 |
| Picard v. James P. Marden, et al. | 10-4341 |
| Picard v. Marden Family Limited Partnership, et al. | 10-4348 |
| Picard v. Murray Pergament Trust, et al. | 10-5194 |
| Picard v. Stanley Plesent | 10-4375 |