**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Seanna R. Brown
Nicholas J. Cremona
Jorian L. Rose
Amy E. Vanderwal
George Klidonas
Stephanie A. Ackerman

*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>                    Plaintiff-Applicant,<br><br>       v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>                    Defendant. | Adv. Pro. No. 08-01789 (SMB)<br><br>SIPA Liquidation<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>                    Debtor. | |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF THE TRUSTEE'S MOTION TO AFFIRM HIS DETERMINATIONS DENYING CLAIMS OF CLAIMANTS HOLDING INTERESTS IN 1973 MASTERS VACATION FUND, BULL MARKET FUND, AND <u>STRATTHAM PARTNERS</u>**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

LEGAL ARGUMENT .................................................................................................................. 2

    I.      The Pallises Did Not Entrust Their Assets to BLMIS. ........................................... 2

    II.     The Remaining *Morgan, Kennedy* Factors Also Show that the Pallises Were Not Customers ............................................................................................... 6

CONCLUSION ............................................................................................................................. 9

08-01789-cgm    Doc 11828    Filed 10/19/15    Entered 10/19/15 18:11:50    Main Document
Pg 3 of 12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Aozora Bank Ltd. v. Sec. Inv'r Prot. Corp.*,
   480 B.R. 117 (S.D.N.Y. 2012)..................................................................................................6

*In re Bernard L. Madoff Inv. Sec. LLC*,
   708 F.3d 422 (2d Cir. 2013).................................................................................................2, 6

*Focht v. Heeloner (In re Old Naples)*,
   223 F.3d 1296 (10th Cir. 2000) ...............................................................................................8

*In re Lehman Bros., Inc.*,
   791 F.3d 277 (2d Cir. 2015).....................................................................................................7

*Lopez v. Zaremba*,
   3:08CV01132, 2009 WL 36617 (N.D. Ohio Jan. 5, 2009).......................................................7

*In re Primeline Sec. Corp.*,
   295 F.3d 1100 (10th Cir. 2002) ...............................................................................................8

*Sec. and Exch. Commn. v. Kenneth Bove & Co., Inc.*,
   378 F. Supp. 697 (S.D.N.Y. 1974)...........................................................................................7

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
   454 B.R. 285 (Bankr. S.D.N.Y. 2011).................................................................................6, 7

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff)*,
   515 B.R. 161 (Bankr. S.D.N.Y. 2014)..................................................................................5, 8

*Sec. Inv'r Prot. Corp. v. Jacqueline Green Rollover Account*,
   12 CIV. 1039 DLC, 2012 WL 3042986 (S.D.N.Y. July 25, 2012) ..........................................8

*Sec. Inv'r Prot. Corp. v. Morgan, Kennedy & Co., Inc.*,
   533 F.2d 1314 (2d Cir. 1976).......................................................................................... passim

**Statutes**

15 U.S.C. § 78aaa *et seq.* ...............................................................................................................1

15 U.S.C. § 78lll (2)(B)(i)..............................................................................................................7

N.Y. PARTNERSHIP LAW § 12 .........................................................................................................5

N.Y. PARTNERSHIP LAW § 51(2)(b).................................................................................................5

Irving H. Picard, as trustee ("Trustee") for the substantively consolidated liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15 U.S.C. § 78aaa *et seq.* ("SIPA"),[1] and the estate of Bernard L. Madoff ("Madoff"), respectfully submits this Reply Memorandum of Law (the "Reply") In Support of the Trustee's Motion to Affirm Determinations Denying Claims of Claimants Holding Interests in 1973 Masters Vacation Fund, Bull Market Fund, and Strattham Partners (the "Motion"), ECF No. 11310. This Reply is based upon the law set forth below as well as the facts set forth in the Declaration of Stephanie Ackerman ("Ackerman Decl.").

## PRELIMINARY STATEMENT

George G. and Linda G. Pallis (the "Pallises") filed an Objection to the Motion, arguing that they are customers of BLMIS, ECF No. 11669. As the Pallises concede, however, they did not have an account in their name at BLMIS, but instead invested in an account maintained in the name of 1973 Masters Vacation Fund, a New York partnership (the "Masters Fund"). And, as was the case in the numerous prior motions filed by the Trustee and granted by this Court, the Masters Fund, not the Pallises, was the legal owner of the property entrusted to BLMIS for the purposes of purchasing securities. Though the partners in the Masters Fund were instructed to make checks payable to BLMIS when they made contributions to the partnership, the checks clearly indicate that they were intended to be credited to the Masters Fund's BLMIS account and became property of the Masters Fund.

The remaining factors described in the governing Second Circuit case, *Morgan, Kennedy,* have also not been satisfied here. The customer file maintained by BLMIS reflects the name of

---

[1] *See* 15 U.S.C. § 78aaa *et seq.* (West 2009). For convenience, subsequent references to sections of the Securities Investor Protection Act shall be denoted simply as "SIPA § __."

1

the partnership as the accountholder, not individual partners like the Pallises. The BLMIS books and records do not reflect the Pallises having any interest in the Masters Fund BLMIS account—details regarding the beneficiaries of Masters Fund were known only to the partnership and not to BLMIS. The Pallises did not receive customer statements or other communication from BLMIS and were only able to make withdrawals from the Masters Fund. Finally, BLMIS's books and records show that only the authorized agents of the accountholder had legal capacity in which they could deal with BLMIS. The Pallises were not authorized agents of the Masters Fund.

Accordingly, the Pallises' arguments do not warrant a different outcome from the other similar customer motions previously filed by the Trustee. The fact that certain checks were made payable to BLMIS for convenience does not alter the fact that nothing in the record establishes that the Pallises could have had any reasonable belief that they were accountholders or customers of BLMIS. Courts have repeatedly held that customer status under SIPA must been narrowly interpreted.[2] The Pallises have failed to meet their burden to establish they are entitled to such status and the Motion should be granted.

## LEGAL ARGUMENT

### I.   The Pallises Did Not Entrust Their Assets to BLMIS

The Pallises' Objection stems from a single fact: they made certain checks payable to "Bernard L. Madoff" rather than to the Masters Fund. As a result, the Pallises mistakenly conclude that they entrusted their assets to BLMIS, that BLMIS had possession or control over their assets, and that they were known to BLMIS. This singular fact, however, does not afford

---

[2] *In re Bernard L. Madoff Inv. Sec. LLC*, 708 F.3d 422, 426 (2d Cir. 2013).

2

them customer status because: (i) the Masters Fund was the customer of BLMIS; (ii) the Pallises' admissions and discovery responses reveal that they did not have a relationship with BLMIS that could give rise to customer status; and (iii) New York general partnership law precludes their argument that they had an interest in the Masters Fund's BLMIS account.

It is clear from the face of the checks relied upon by the Pallises that they were for deposit into the Masters Fund's account with BLMIS. The memorandum line states that the check was for the "1973 Masters Vacation Fund." *See* ECF No. 11310, Ackerman Decl., Ex. 15, MCMDP_00001628-30. The correspondence from the Pallises to David G. Friehling (a representative of the Masters Fund) also indicates that the funds were entrusted to the Masters Fund and not to BLMIS or Madoff. *Id.* Finally, the checks were not submitted directly to BLMIS by the Pallises but were collected by Friehling and then passed on to BLMIS for investment in the Masters Fund account.

The Pallises also provided discovery responses to the Trustee indicating not only that they were general partners in a partnership but that they were not customers of BLMIS. Specifically, they admitted to the following in their responses to the Trustee's Requests for Admission:

1. The BLMIS account was not titled in the Pallises' names.

2. The Pallises did not have an account in their names.

3. The Pallises never received correspondence directly from BLMIS.[3]

---

[3] The Pallises deny this on the grounds that they received correspondence from Friehling & Horowitz, CPA, which they equate with BLMIS based on a definition found in one of the Trustee's discovery requests. Though Friehling & Horowitz, CPA was the auditor for BLMIS, it was acting as an agent of the Masters Fund when sending correspondence to its partners, and not as an agent of BLMIS. In fact, at no time has the Trustee argued that Friehling & Horowitz is the alter ego of BLMIS or that the two entities should be treated as the same. The definition of BLMIS in discovery requests relied upon by the Pallises provided:

*continued on next page...*

3

4. The Pallises never deposited securities directly with BLMIS.

5. The Pallises never made a payment of cash directly with BLMIS for credit to an account in their names.

6. The Pallises never withdrew funds directly from BLMIS.

7. The Pallises never received investment statements from BLMIS in their names.

8. The Pallises did not receive tax statements from BLMIS in their names.[4]

9. The Pallises never entered into contracts in their names with BLMIS.

10. The only relationship to BLMIS was by way of the Pallises' relationship to the Masters Fund.

11. The Pallises did not have control, investment discretion, or decision-making power over any investment assets at BLMIS.

*See* Ackerman Decl., Ex. 4, 1973 Masters Vacation Fund RFA ¶¶1-6, 8-12.

The documents produced by the Pallises further show that they invested their money through a general partnership. For example, the Pallises received a Schedule K-1 tax form on which, in the "Information About the Partner" section, the box labeled "General partner or LLC member-manager" was checked. *See, e.g.,* Ackerman Decl., Ex. 15, MCMDP_00001631-1652

---

*…continued from previous page*

"BLMIS" means Bernard L. Madoff Investment Securities LLC, Madoff Securities International Ltd. ("MSIL"), Madoff Securities International LLC, Bernard L. Madoff, Ruth Madoff, and all affiliated Persons and entities, including, but not limited to, any officers, directors, agents, representatives, employees, partners, parent companies, subsidiaries, predecessor or successor and related entities, and affiliates of the above specifically identified Persons and entities.

This definition was merely for definitional discovery purposes. *See, e.g.*, Ackerman Decl. Exhibit 1.

[4] The Pallises received tax statements from Friehling & Horowitz CPA, not from BLMIS. *See supra* n.3.

4

(attaching Schedule K-1 as well as other tax documents).  Moreover, after the fraud was revealed, David G. Friehling sent a letter to Linda Pallis stating:

> You are receiving this letter because you are a *partner* in the 1973 Masters Vacation Fund, for which you have received a *Schedule K-1 (IRS Form 1065) through 2007*, which reported your share of income, deductions, credits, etc. for this investment account.

Ackerman Decl., Ex. 15, MCMDP_00001617 (emphasis added).[5]  By virtue of investing in a New York partnership and providing the partnership's representatives with their checks to invest into BLMIS, the Pallises' property became partnership property.[6]  Because the check became partnership property once it was sent to the Masters Fund, the Pallises *did not entrust their assets to the debtor through an account maintained in their names* and, therefore, they should not be afforded customer status.[7]

---

[5] The Trustee did not include the Pallises' document production as an exhibit to the Motion.  Instead, the Trustee included only Dr. Anthony Russo's production as representative of what claimants of the Masters Fund received from the Trustee so as to not burden the Court with all claimants' documents.  *See* Ackerman Decl. Ex. 7.  However, the Trustee has provided the Court with the Pallises' production in connection with this Reply.  *See* Ackerman Decl.

[6] *See* N.Y. PARTNERSHIP LAW § 12 ("All property originally brought into the partnership stock or subsequently acquired . . . on account of the partnership is partnership property" and allowing for title, even of real property, to be acquired and passed in the partnership name.); *see also* N.Y. PARTNERSHIP LAW § 51(2)(b) ("A partner's right in specific partnership property is not assignable except in connection with the assignment of the rights of all the partners in the same property.").

[7] *See Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff)*, 515 B.R. 161, 168 (Bankr. S.D.N.Y. 2014) (concluding that a claimant who wished to qualify as a person who has deposited cash with the debtor for the purposes of purchasing securities must show that she entrusted her "own assets directly *through an account maintained in her own name* rather than indirectly through a fund that then entrusted the fund's assets through an account maintained in the fund's name.") (emphasis added).

5

## II. The Remaining *Morgan, Kennedy* Factors Also Show that the Pallises Were Not Customers

Consideration of the majority (if not all) of the remaining factors relied upon in *Morgan, Kennedy* and by courts in these proceedings demonstrates that the Pallises were not customers.[8] Discovery has revealed that the Pallises did not have a direct financial relationship with BLMIS because they invested with the Masters Fund, and not BLMIS.[9] The Pallises did not have a property interest in the Masters Fund account because they were general partners of the Masters Fund, not accountholders of BLMIS.[10] Moreover, they lacked control over the BLMIS account, including over the timing of their investment, as evidenced in a letter from Jerome Horowitz to the partners.[11] Finally, even if Madoff could have been aware that the Pallises were partners of the Masters Fund because the Pallises' names were on the checks received, the books and

---

[8] *See In re Aozora Bank Ltd. v. Sec. Inv'r Prot. Corp.*, 480 B.R. 117, 127 (S.D.N.Y. 2012), *aff'd sub nom. In re Bernard L. Madoff Inv. Sec. LLC*, 708 F.3d 422 (2d Cir. 2013) (listing *Morgan, Kennedy* factors). The *Morgan, Kennedy* opinion detailed a number of factors, such as

> [M]aking purchases with the debtor, transacting business with the debtor, having dealings with the debtor, being known by the debtor, owning cash or securities held by the debtor, having securities accounts in one's name with the debtor, having a capacity to have dealings with the broker-dealer, and having a name that appears on the debtor's books or records.

*In re Aozora Bank Ltd. v. Sec. Inv'r Prot. Corp.*, 480 B.R. 117, 127 (S.D.N.Y. 2012), *aff'd sub nom. In re Bernard L. Madoff Inv. Sec. LLC*, 708 F.3d 422 (2d Cir. 2013) (citing *Sec. Inv'r Prot. Corp. v. Morgan, Kennedy & Co., Inc.*, 533 F.2d 1314, 1315-1319 (2d Cir. 1976)).

[9] *See, e.g., Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 454 B.R. 285, 302 (Bankr. S.D.N.Y. 2011), *aff'd sub nom. In re Aozora Bank Ltd. v. Sec. Inv'r Prot. Corp.*, 480 B.R. 117 (S.D.N.Y. 2012), *aff'd sub nom. In re Bernard L. Madoff Inv. Sec. LLC*, 708 F.3d 422 (2d Cir. 2013).

[10] *Id.; see also supra* n.6 (citing to New York partnership law).

[11] *Id.; see also* Ackerman Decl., Ex. 8, MCMDP_00001626 (indicating that "[d]eposits will be accepted only between January 1st and 15th and July 1st and 15th", that "[a]ny checks received at any other time will be returned to sender", and "[w]ithdrawals for the month of January will be accepted no later than November 15th and withdrawals for July will be accepted no later than May 15th").

6

records of BLMIS have no record of their participation.[12] In sum, and similar to the employee-beneficiaries in *Morgan, Kennedy*, the Pallises made no purchases, transacted no business, and had no direct dealings with BLMIS with respect to the Masters Fund.[13]

Even if this Court were to find that the Pallises entrusted their assets to BLMIS, that factor *alone* does not afford the Pallises customer status. Based on SIPA's language and legislative history, the "absence of actual receipt, acquisition or possession" of a claimant's property by the debtor precludes customer status because "actual entrustment of assets to the debtor is a '*sine qua non*' of SIPA protection."[14] In other words, if the entrustment factor is missing, then a claimant cannot be a customer; [15] but even if the entrustment factor is met, a claimant is not *necessarily* a customer.

This Court explained in its ERISA Claimant Decision that:

> The foregoing authorities show that to qualify as a "person who has deposited cash with the debtor for the purpose of purchasing securities," SIPA § 78lll (2)(B)(i), the party asserting that she was a BLMIS customer must show that she entrusted her own assets directly through an account maintained in her own name rather than indirectly through a fund that then entrusted the fund's assets through an account maintained in the fund's name. *The fact that she exercised some control over her own investments in the fund or the fund's investments in BLMIS is not sufficient to meet the narrow definition of customer under SIPA.* Further, as discussed

---

[12] *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 454 B.R. 285, 302 (Bankr. S.D.N.Y. 2011), *aff'd sub nom. In re Aozora Bank Ltd. v. Sec. Inv'r Prot. Corp.*, 480 B.R. 117 (S.D.N.Y. 2012), *aff'd sub nom. In re Bernard L. Madoff Inv. Sec. LLC*, 708 F.3d 422 (2d Cir. 2013).

[13] *See, e.g., Sec. Inv'r Prot. Corp. v. Morgan, Kennedy & Co., Inc.*, 533 F.2d 1314, 1318 (2d Cir. 1976).

[14] *Lopez v. Zaremba*, 3:08CV01132, 2009 WL 36617, at *6 (N.D. Ohio Jan. 5, 2009) (quoting *Sec. and Exch. Commn. v. Kenneth Bove & Co., Inc.*, 378 F. Supp. 697, 700 (S.D.N.Y. 1974)).

[15] *See In re Lehman Bros., Inc.*, 791 F.3d 277, 282 (2d Cir. 2015) ("Several of our sister circuits have also joined us in requiring that a claimant show that it entrusted property to a broker-dealer to qualify as a customer.") (citation omitted).

7

>below, although "repeated business dealings" may confer customer status despite the absence of a BLMIS account maintained in her own name, the business dealings must be of the kind associated with the activities as a customer and not as an agent for another customer, i.e., the fund itself.[16]

Thus, the entrustment factor is a minimum requirement for a claimant to argue the other *Morgan, Kennedy* factors.

Significantly, this Court has recognized that the "only cases in which a claimant that was not an account holder was found to be a customer involved situations in which a customer account was not opened for the claimant due to misfeasance of the broker-dealer or its agents."[17] The Court referred to *In re Primeline Sec. Corp.* and *In re Old Naples Sec., Inc.*, in which the claimants were considered customers and afforded customer protection under SIPA when the insolvent broker-dealer (or someone that the investor reasonably believed to be an agent of the broker-dealer) promised to open a brokerage account on the investor's behalf but failed to do so.[18] In contrast, the Pallises did not give their money to a broker-dealer thinking that an account would be opened in their names. Instead, the Pallises invested in the Masters Fund and gave their checks to Friehling & Horowitz, an agent for the Masters Fund, and made the checks payable to "Bernard L. Madoff" merely for Friehling's convenience in his administration of the

---

[16] *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 515 B.R. 161, 168 (Bankr. S.D.N.Y. 2014) (emphasis added).

[17] *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 515 B.R. 161, 168 n.5 (Bankr. S.D.N.Y. 2014) (citing *Sec. Inv'r Prot. Corp. v. Jacqueline Green Rollover Account*, 12 CIV. 1039 DLC, 2012 WL 3042986, at *14 (S.D.N.Y. July 25, 2012)).

[18] *See In re Primeline Sec. Corp.*, 295 F.3d 1100, 1107 (10th Cir. 2002) ("If a claimant intended to have the brokerage purchase securities on the claimant's behalf and reasonably followed the broker's instructions regarding payment, the claimant is a 'customer' under SIPA even if the brokerage or its agents misappropriate the funds."); *Focht v. Heeloner (In re Old Naples)*, 223 F.3d 1296, 1303 (10th Cir. 2000) ("If an investor intended to have the brokerage purchase securities on her behalf and reasonably followed the broker's instructions regarding payment, she can be considered a 'customer' under SIPA if the brokerage or its agents then misappropriate the funds.").

8

Masters Fund. The Pallises have not provided any evidence that they reasonably expected they had an account with BLMIS by simply writing these checks or that BLMIS should have considered the Pallises as its customers. In fact, their admissions in their responses to the Trustee's Requests for Admission belie their objections. As such, based upon an analysis of the remaining *Morgan, Kennedy* factors, the Pallises are not customers of BLMIS but rather general partners of the Masters Fund.

## CONCLUSION

For all of the foregoing reasons, the Court should affirm the Trustee's determination denying the claims of the Objecting Claimants, overrule their objections, and grant such other and further relief as the Court deems just and proper.

Dated: New York, New York
October 19, 2015

Respectfully submitted,

*/s/ David J. Sheehan*
David J. Sheehan
Email: dsheehan@bakerlaw.com
Seanna R. Brown
Email: sbrown@bakerlaw.com
Nicholas J. Cremona
Email: ncremona@bakerlaw.com
Jorian L. Rose
Email: jrose@bakerlaw.com
Amy E. Vanderwal
Email: avanderwal@bakerlaw.com
George Klidonas
Email: gklidonas@bakerlaw.com
Stephanie A. Ackerman
Email: sackerman@bakerlaw.com
**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, New York  10111
Tel: (212) 589-4200
Fax: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Estate of Bernard L. Madoff*