**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>    Plaintiff,<br><br>    v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>    Defendant. | Adv. Pro. No. 08-01789 (SMB)<br><br>SIPA Liquidation<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>    Debtor. | |

**AFFIDAVIT OF VINEET SEHGAL IN SUPPORT OF THE TRUSTEE'S SUPPLEMENTAL FILING IN FURTHER SUPPORT OF THE TRUSTEE'S MOTION FOR AN ORDER APPROVING THE SIXTH ALLOCATION OF PROPERTY TO THE FUND OF CUSTOMER PROPERTY AND AUTHORIZING <u>SIXTH INTERIM DISTRIBUTION TO CUSTOMERS</u>**

CITY OF NEW YORK    )
             ) ss:
STATE OF NEW YORK   )

  Vineet Sehgal, being duly sworn, deposes and says:

  1.  I am a Managing Director at AlixPartners LLP ("AlixPartners"). I make this affidavit to transmit to the Court information relevant to the Notice of Hearing and Supplemental Filing in further support of the Motion for an Order Approving the Trustee's Sixth Allocation of Property to the Fund of Customer Property and Authorizing Sixth Interim Distribution to Customers (the "Motion") by Irving H. Picard, trustee (the "Trustee") for the liquidation of the business of Bernard L. Madoff Investment Securities LLC ("BLMIS")

under the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa *et seq.* ("SIPA"),[1] and the substantively consolidated estate of Bernard L. Madoff ("Madoff") (collectively, "Debtor").

2. AlixPartners has served as the Trustee's Claims Agent and as the accountant for the BLMIS estate since December of 2008 pursuant to SIPA § 78fff-1(a)(1). As the Claims Agent, AlixPartners was responsible for both mailing the notice of the liquidation and claim forms to potential claimants and causing the notice of the liquidation to be published. AlixPartners has also been responsible for processing all claims submitted to the Trustee and assisting the Trustee in reviewing each customer claim filed to determine whether the asserted claim amount agrees with the "net equity" for that account. In addition, as the accountants for the BLMIS estate, AlixPartners has assisted and continues to assist the Trustee in accounting for the assets of the BLMIS estate, including the cash and cash equivalents available to the Trustee.

3. I have been actively involved in the liquidation of BLMIS and the claims process since December 2008 and have personal knowledge of the matters set forth herein.

**The Claims Process**

4. As of October 20, 2105, the Trustee has received 16,519 customer claims. As of October 20, 2015, the Trustee has determined 16,410 of those claims. The Trustee allowed 2,564 claims and committed to pay approximately $827.7 million in funds advanced to him by SIPC. To date, the allowed claims total approximately $14.862 billion.

5. One hundred nine claims are currently categorized as "deemed determined," meaning that the Trustee has instituted litigation against those claimants.

6. As of October 20, 2015, the Trustee has received 427 timely and 22

---

[1] For convenience, subsequent references to sections of the Act shall follow the form: "SIPA §__."

untimely filed secured priority and unsecured non-priority general creditor claims totaling approximately $1.743 billion. The claimants include vendors, taxing authorities, employees, and customers filing claims on non-customer proof of claim forms. Of these 449 claims, 94 are general creditor claims and 49 are broker-dealer claims, which together total approximately $264.975 million of the $1.743 billion.

### Recoveries by the Trustee

7. Of the total amount allocated to the Customer Fund from the First through the Fifth Allocations, the Trustee reserved $1,444,937,833.62 for Time-Based Damages. In the Sixth Allocation Motion, the Trustee sought to re-allocate that amount, plus an additional $3,779,791.64 that was added to the Time-Based Damages reserve, for a total of $1,448,717,625.26 to be allocated to the Customer Fund in the Sixth Allocation Motion. The Trustee also sought to maintain a general reserve of $200,000,000.00. Thus, the amount available for distribution as of the date of the filing of the Sixth Allocation Motion was $1,248,717,625.26. In addition to the recoveries reported in the Sixth Allocation Motion, as of September 30, 2015, the Trustee has recovered $345,472,293.08 as a result of settlements, interest income, and other miscellaneous recoveries.

8. Also available for distribution is $1,829,950.00, derived from a release from the net equity reserve. The net equity reserve is maintained for certain settlements containing a clause stating if the Trustee's definition of Net Equity is altered by the courts, the claims relating to those settlements will be re-determined accordingly. After a review of the terms of these settlements, the Trustee and his professionals determined that the reserve related to three accounts does not need to be maintained and can be released for distribution.

9. Also available for distribution is $9,197,955.40, derived from adjustments made following the Bankruptcy Code section 546(e) ruling. The Trustee reached agreements

3

with certain accountholders to return preference payments to those accountholders if a final court order issued concluding that section 546(e) applies to this SIPA liquidation. Following the denial of the petition for certiorari by the Supreme Court on the Second Circuit's decision upholding the application of section 546(e), *Picard v. Ida Fishman Revocable Trust*, 773 F.3d 411 (2d Cir. 2014), *cert. denied*, 135 S.Ct. 2858 (2015), the Trustee re-determined certain accounts in accordance with those agreements. The re-determinations resulted in three adjustments for each account. First, the Trustee credited the preference payments to the accountholders in the amount of $18,847,496.86. Second, the Trustee reduced their allowed claim amount by the same amount that was credited to them. Third, the Trustee calculated the difference in distribution payments for each account as to the first through fifth distributions between their prior allowed claim amount and their re-determined claim amount. Because their re-determined claim amount was lower than their prior claim amount, those accountholders needed to refund the BLMIS estate $9,810,591.00. The Trustee offset this payment against the credit amount of $18,847,496.86 and refunded $9,036,905.86 to these claimants. Of the $9,810,591.00 credit to the BLMIS estate, $9,197,955.40 is available for this sixth distribution and $612,635.60 will be returned to SIPC. The $612,635.60 relates to: (i) a decrease in the amount of the SIPC advance to which the accountholders were entitled in the amount of $344,660.66; and (ii) an increase in SIPC's subrogation payment in the amount of $267,974.94 related to these accounts.

10. Of the total recoveries since the Sixth Allocation Motion, $102,287,153.38 was used for catch-up payments for recently-determined accounts to bring those accounts up to the 48.802% (cumulative first through fifth interim distribution percentage) distributed to all accounts on their allowed amount.

11. The Trustee wishes to maintain the $200,000,000 general reserve requested in the Sixth Allocation Motion.

12. Therefore, the total amount available for the Sixth Interim Distribution is now $1,502,930,670.36, a difference of $254,213,045.10 from the filing date of the Sixth Allocation Motion. Through the Sixth Allocation Motion, the Trustee allocated $10,551,459,551.74 to the customer fund. The Trustee seeks approval to allocate the additional $345,472,293.08 that has been recovered since that time. A chart summarizing this information is below:

| Description | Amount |
| --- | --- |
| **ORIGINAL SIXTH ALLOCATION MOTION** | |
| Amount Allocated in Allocation Motions 1 through 5 | $10,551,459,551.74 |
| Amount Re-Allocated in Sixth Allocation Motion | $1,448,717,625.26 |
| General Reserve | ($200,000,000.00) |
| **Amount Available for Distribution in Sixth Allocation Motion** | **$1,248,717,625.26** |
| | |
| Numerator | $1,248,717,625.26 |
| Denominator | $18,141,936,238.30 |
| **Distribution %** | **6.883%** |
| | |
| **UPDATES IN SUPPLEMENTAL FILING** | |
| Amount Available for Distribution from Sixth Motion | $1,248,717,625.26 |
| Additional Recoveries to be Allocated | $345,472,293.08 |
| Catch-Up Distribution for Newly-Determined Accounts | ($102,287,153.38) |
| Amount Available from Net Equity Reserve | $1,829,950.00 |
| Amount Available from 546(e) Ruling | $9,197,955.40 |
| **Amount Available for Distribution** | **$1,502,930,670.36** |
| | |
| Numerator | $1,502,930,670.36 |
| Denominator | $18,358,218,522.68 |
| **Distribution %** | **8.186%** |

5

### The Net Investment Method Denominator

13.     The Trustee's Net Investment Method Denominator is the allowed amount of all accounts that have an allowed claim plus the net cash balance for all accounts into which more funds were deposited than withdrawn for which a claim has been filed, but not yet allowed. As of September 30, 2015, the Trustee's Net Investment Method denominator is $18,358,218,522.68. This number is subject to change as additional accounts are determined.

### Interim Calculation of *Pro Rata* Share
### Distribution of Customer Fund

14.     Of the $1,502,930,670.36 numerator, $1,180,380,014.84 will be distributed as part of the Sixth Interim Distribution to allowed accounts, and SIPC subrogation for allowed accounts in the amount of $36,212,744.51 will be released to SIPC. For deemed determined accounts, $286,211,009.04 will be reserved, bringing the total deemed determined reserve related to 1 through 6 interim distributions to $1,992,498,532.04.

15.     The Denominator is $18,358,218,522.68. To determine the percentage of each allowed customer net equity claim that can be satisfied from the Customer Fund, the Net Customer Fund is divided by the Denominator, resulting in the following percentage:

$$\frac{\$1{,}502{,}930{,}670.36 \text{ (Net Customer Fund)}}{\$18{,}358{,}218{,}522.68 \text{ (Denominator)}} = 8.186\%$$

16.     A total of 1,063 accounts will receive a distribution of approximately 8.186% of their net equity claims, unless the account becomes fully satisfied. Of these 1,063 accounts, 101 will become fully satisfied, bringing the total of fully satisfied account holders to 1,264 (962 accounts will remain partially satisfied and will be entitled to participate in future distributions). The average payment amount to those 1,063 BLMIS accounts will be $1,110,423.34.

17. An additional 72 accounts that are currently "deemed determined" could receive a distribution if and when the status of their claims moves from "deemed determined" to allowed. Thirty-three of the 72 accounts would be fully satisfied by the SIPC advance. The remaining 39 accounts would receive both a SIPC advance and a distribution in accordance with the Trustee's Motion and his earlier distribution motions. Nine of the remaining 39 accounts would be fully satisfied by the First through Sixth Interim Distribution

18. Twenty payments will go to claimants who qualified for hardship status under the Trustee's claims Hardship Program.

19. Upon approval of the Motion, each customer's ratable share of the Net Customer Fund should be no less than 56.988% of the customer's net equity claim, which includes the proposed Sixth Allocation and Sixth Distribution of 8.186%[2] and includes the 4.602% customers received subject to the First Allocation and First Interim Distribution, the 33.556% customers received subject to the Second Allocation and Second Interim Distribution, the 4.721% customers received subject to the Third Allocation and Third Interim Distribution, the 3.180% customers received subject to the Fourth Allocation and Fourth Interim Distribution, and the 2.743% customers received subject to the Fifth Allocation and Fifth Interim Distribution. If the Sixth Allocation Motion is approved, and when combined with the prior five distributions, the Trustee will have distributed more than $8.3 billion from the Customer Fund to BLMIS customers.

---

[2] Each customer's ratable share may be less than 8.186% for those BLMIS accounts that are fully satisfied.

By: /s/ Vineet Sehgal

———————————————
Vineet Sehgal

City of New York

State of New York

Subscribed and sworn to me (or affirmed) before me, Sharyn P. Doyle, Notary Public, on this 19th day of October, 2015 by Vineet Sehgal, proved to me on the basis of satisfactory evidence to be the person who appeared before me.

WITNESS my hand and official seal.

SHARYN P. DOYLE
Notary Public, State of New York
No. 01DO5051953
Qualified in New York County
Commission Expires Nov. 13, 2017

/s/ Sharyn P. Doyle
Sharyn P. Doyle, Notary Public
Qualified in State of New York

*Commission Expires: November 13, 2017*