| | |
|---|---|
| **Baker & Hostetler LLP** | **Hearing Date: November 18, 2015 at 10:00 a.m.** |
| 45 Rockefeller Plaza | **Objection Due: November 11, 2015 at 5:00 p.m.** |
| New York, NY  10111 | |
| Telephone: (212) 589-4200 | |
| Facsimile: (212) 589-4201 | |
| David J. Sheehan | |
| Mark A. Kornfeld | |
| Elizabeth A. Scully | |
| Thomas L. Long | |

*Attorneys for Irving H. Picard., Trustee for the
Substantively Consolidated SIPA Liquidation
of Bernard L. Madoff Investment Securities LLC
and the Estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (SMB) |
| Plaintiff-Applicant, | SIPA Liquidation (Substantively Consolidated) |
| v. | |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | Adv. Pro. No. 09-01365 (SMB) |
| Plaintiff, | |
| v. | |
| THYBO ASSET MANAGEMENT LIMITED and  THYBO STABLE FUND LTD. | |
| Defendants. | |

**MOTION FOR ENTRY OF AN ORDER PURSUANT TO SECTION 105(a) OF THE
BANKRUPTCY CODE AND RULES 2002 AND 9019 OF THE FEDERAL RULES OF
BANKRUPTCY PROCEDURE APPROVING A SETTLEMENT AGREEMENT BY
AND AMONG THE TRUSTEE, THYBO ASSET MANAGEMENT LIMITED
AND THYBO STABLE FUND LTD.**

1

                                            Pg 2 of 11

TO:   THE HONORABLE STUART M. BERNSTEIN
      UNITED STATES BANKRUPTCY JUDGE:

Irving H. Picard (the "Trustee"), as trustee for the liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15 U.S.C. §§ 78*aaa-lll* ("SIPA")[1] and the substantively consolidated estate of Bernard L. Madoff ("Madoff," and together with BLMIS, the "Debtors"), by and through his undersigned counsel, submits this motion (the "Motion") seeking entry of an order, pursuant to section 105(a) of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), and Rules 2002 and 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), approving a settlement, the terms and conditions of which are set forth in an agreement (the "Agreement")[2] by and among the Trustee on the one hand, and Thybo Asset Management Limited ("TAM") and Thybo Stable Fund Ltd. ("TSF"), on the other hand (TAM and TSF collectively, the "Defendants," and collectively with the Trustee, the "Parties"). In support of the Motion, the Trustee respectfully represents as follows:

## PRELIMINARY STATEMENT

The Trustee commenced an action against TAM and TSF in this adversary proceeding to recover alleged fraudulent and preferential transfers received by Defendants from BLMIS Account Nos. 1FR069 and 1FR129 (the "Accounts"). The Trustee's action seeks the recovery of transfers aggregating Sixty-Two Million ($62,000,000) dollars (the "Transfers").[3]

Following several rounds of negotiations, the Parties were able to reach a consensual

---

[1] Further citations to SIPA will omit "15 U.S.C." and refer only to the relevant sections of SIPA.

[2] A copy of the Agreement is attached hereto as Exhibit A.

[3] The amount the Trustee is seeking to recover from the Defendants has been adjusted to reflect the recovery the Trustee received as a result of his settlement with the Internal Revenue Service concerning the tax withholdings made by BLMIS during the six-year period prior to the Filing Date, which occurred after this action was initiated.

2

resolution. The Parties entered into the Agreement, which represents a good faith, complete settlement of all disputes between the Trustee and the Defendants raised in this adversary proceeding and the customer claims TSF submitted in connection with Defendants' BLMIS Accounts. By the Agreement, the Trustee will recover Forty-Six Million, Six Hundred Thousand ($46,600,000) dollars, which represents seventy-five percent of the total alleged fraudulent transfers that the Trustee sought to avoid and recover from TAM and TSF ("Settlement Payment"). The Trustee will allow the TSF Net Equity Customer Claim, as defined below, in full, plus 88% of the amount of the Settlement Payment. The Trustee's settlement with the Defendants will obtain a significant, direct monetary benefit for the estate, and will dispose of the Defendants' pending Motion to Dismiss. The Trustee therefore respectfully requests that the Court approve this settlement.

## BACKGROUND

*The Commencement of the BLMIS Liquidation Proceeding*

1. On December 11, 2008 (the "Filing Date"),[4] the Securities and Exchange Commission (the "Commission") filed a complaint in the United States District Court for the Southern District of New York (the "District Court") against the Debtors (Case No. 08 CV 10791). In the complaint, the Commission alleged that the Debtors engaged in fraud through the investment advisor activities of BLMIS.

2. On December 15, 2008, pursuant to section 78eee(a)(4)(A) of SIPA, the Commission consented to a combination of its own action with an application of the Securities Investor Protection Corporation ("SIPC"). Thereafter, pursuant to section 78eee(a)(3) of SIPA, SIPC filed an application in the District Court alleging, *inter alia*, that BLMIS was not able to

---

[4] In this case, the Filing Date is the date on which the Commission commenced its suit against BLMIS, December 11, 2008, and a receiver was appointed for BLMIS. *See* section 78*lll*(7)(B) of SIPA.

meet its obligations to securities customers as they came due and, accordingly, its customers needed the protection afforded by SIPA.

3. On that date, the District Court entered the Protective Decree, to which BLMIS consented, which, in pertinent part:

    (i)    appointed the Trustee for the liquidation of the business of BLMIS pursuant to section 78eee(b)(3) of SIPA;
    (ii)    appointed Baker & Hostetler LLP as counsel to the Trustee pursuant to section 78eee(b)(3) of SIPA; and
    (iii)    removed the case to this Court pursuant to section 78eee(b)(4) of SIPA.

4. On April 13, 2009, an involuntary bankruptcy petition was filed against Madoff. On June 9, 2009, this Court entered an order substantively consolidating Madoff's Chapter 7 estate with the BLMIS SIPA proceeding.

*Defendants' BLMIS Accounts and Customer Claims*

5. On or around August 1, 2000, TAM opened its account with BLMIS, which was designated Account No. 1FR069. This account was closed in December 2006, and its balance was transferred to TSF's account, designated Account No. 1FR129, which was opened October 30, 2006 and remained open until the Filing Date. Between January 1, 2004 and October 30, 2006, two affiliates of Defendants, Thybo Global Fund Limited and Thybo Return Fund Limited (the "Non-Defendant Funds") held accounts at BLMIS, designated Account Nos. 1FR106 and 1FR113. No withdrawals were made from either of these two accounts. The balance of Account No. 1FR106 was transferred to TAM's account prior to October 2006, and the balance of Account No. 1FR113 was transferred to TSF's account on October 30, 2006. Within the six-year period prior to the Filing Date, Defendants withdrew from Account Nos. 1FR069 and 1FR129 a total of Sixty-Two Million ($62,000,000) dollars (as defined above, the "Transfers").

6. On or about July 1, 2009, TSF filed two separate, but identical in form, customer

4

claims with the Trustee, which the Trustee designated as Claim Nos. 13761 and 13961. On or about July 6, 2009, TSF filed a third customer claim with the Trustee, again identical in form to the two earlier claims, which the Trustee designated as Claim No. 70099 (all three together, the "Customer Claims"). All three Customer Claims assert losses for alleged securities owed to TSF based on account number 1FR129.

7.     The Parties agree that Defendants' net equity is One Hundred Forty-Five Million, Fifty-Three Thousand, Four Hundred Two Dollars and Thirty-One Cents ($145,053,402.31) (the "TSF Net Equity Claim").

*The Trustee's Claims Against the Defendants*

8.     On July 15, 2009, the Trustee filed a complaint commencing this adversary proceeding against the Defendants, which was amended first on August 25, 2009 and again on February 10, 2011. The Complaint, as amended, sought to avoid and recover the Transfers under 11 U.S.C. §§ 544, 547, 548, 550, and 551, SIPA § 78fff-(2)(c)(3), and the New York Debtor and Creditor Law §§ 270–281 ("Avoiding Power Claims"). The Trustee also asserted a claim to disallow the TSF Customer Claims, pursuant to 11 U.S.C. § 502(d) ("Disallowance Claim").

9.     The Defendants have disputed any liability to the BLMIS estate for the Transfers. Following the commencement of the adversary proceeding, Defendants filed a motion to dismiss, which has been fully briefed, but has not been heard as of the date of this settlement motion.

## SETTLEMENT DISCUSSIONS AND THE TRUSTEE'S INVESTIGATION

10.     During the past several months, Defendants, through their counsel, engaged in good faith discussions with the Trustee aimed at resolving the Trustee's claims and the amount, if any, of the TSF Customer Claims. These discussions followed earlier discussions which were not successful in resolving the Trustee's claims.

5

11. The Trustee has conducted a comprehensive investigation of the funds that TAM and TSF gave to BLMIS. The Defendants have cooperated with the Trustee and facilitated the investigation by providing information the Trustee has requested. This investigation included, but was not limited to: the review and analysis of the BLMIS-related transactional histories as reflected in the BLMIS account statements of Defendants; correspondence and other records and documents available to the Trustee; meetings with the Defendants' counsel; and a substantial review of third-party records and documents.

12. After a review of the relevant records and a thorough and deliberate consideration of the uncertainty and risks inherent in all litigation, the Trustee, in the exercise of his business judgment, has determined that it is appropriate to reach a consensual resolution rather than to continue the litigation.

13. On October 22, 2015, the Trustee and the Defendants executed the Agreement wherein they agreed to settle the matters at issue in this adversary proceeding on the terms summarized below.

**OVERVIEW OF THE AGREEMENT**

14. The principal terms and conditions of the Agreement are generally as follows (as stated above, the Agreement is attached as Exhibit A and may be reviewed for a complete account of its terms):[5]

- At the Closing, Defendants shall pay or cause to be paid to the Trustee Forty-Six Million, Six Hundred Thousand ($46,600,000) dollars (the "Settlement Payment").

---

[5] Terms not otherwise defined shall have the meaning ascribed to them in the Agreement. In the event of any inconsistency between the summary of the terms provided in this section and the terms of the Agreement, the Agreement shall prevail.

6

- Upon the Closing, TSF shall have an Allowed Claim in the amount of One Hundred Eighty-Six Million, Sixty-One Thousand, Four Hundred Two Dollars and Thirty-One Cents ($186,061,402.31) ("the TSF Customer Claim"), which is equal to TSF's Net Equity Claim ($145,053,402.31) plus 88% of the Settlement Payment. The TSF Customer Claim shall be deemed conclusively allowed pursuant to 11 U.S.C. § 502, equal in priority to other allowed customer claims against the BLMIS Estate.

- At the Closing, Defendants shall satisfy the Settlement Payment to the Trustee through a deduction from the distribution on TSF's allowed claim, and the Trustee shall pay the remaining balance of the then due catch up distribution on its allowed claim.[6]

- The Trustee shall seek approval of the Agreement before the Court.

- The Defendants shall release, acquit, and discharge the Trustee, and the Trustee shall release, acquit, and discharge the Defendants.

- Within five days of the Closing, the Parties shall submit to the Court a stipulation requesting dismissal of this adversary proceeding with prejudice as against the Defendants, with each Party bearing its own costs, attorneys' fees, and expenses.

---

[6] As of the date of the Agreement, the Bankruptcy Court has approved five *pro rata* interim distributions to BLMIS customers totaling 48.802 percent. Additionally, TSF is entitled to the SIPC customer advance provided for under section 78fff-3(a) of SIPA in the amount of Five Hundred Thousand ($500,000) dollars. Accordingly, in order to catch-up TSF's distribution to that of other customers with allowed claims, under the current approved distributions, the Trustee would pay TSF at closing 48.802 percent of its allowed claim, plus Five Hundred Thousand ($500,000) dollars as a SIPA advance, aggregating Ninety-One Million, Three Hundred One Thousand, Six Hundred Eighty-Five Dollars and Fifty-Six Cents ($91,301,685.56) less the Settlement Payment of Forty-Six Million, Six Hundred Thousand ($46,600,000) dollars, for a total of Forty-Four Million, Seven Hundred One Thousand, Six Hundred Eighty-Five Dollars and Fifty-Six Cents ($44,701,685.56).

**RELIEF REQUESTED**

15. By this Motion, the Trustee respectfully requests that the Court enter an order substantially in the form of the proposed Order attached as Exhibit B approving the Agreement.

**LEGAL BASIS**

16. Bankruptcy Rule 9019(a) provides, in pertinent part, that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Courts have held that in order to approve a settlement or compromise under Bankruptcy Rule 9019(a), a bankruptcy court should find that the compromise proposed is fair and equitable, reasonable, and in the best interests of a debtor's estate. *In re Ionosphere Clubs, Inc.*, 156 B.R. 414, 426 (S.D.N.Y. 1993), *aff'd*, 17 F.3d 600 (2d Cir. 1994) (citing *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968)).

17. The Second Circuit has stated that a bankruptcy court, in determining whether to approve a compromise, should not decide the numerous questions of law and fact raised by the compromise, but rather should "canvass the issues and see whether the settlement 'fall[s] below the lowest point in the range of reasonableness.'" *Liu v. Silverman (In re Liu)*, 1998 U.S. App. LEXIS 31698, at *3 (2d Cir. Dec. 18, 1998) (quoting *In re W.T. Grant Co.*, 699 F.2d 599, 608 (2d Cir. 1983)); *see also Masonic Hall & Asylum Fund v. Official Comm. of Unsecured Creditors (In re Refco, Inc.)*, 2006 U.S. Dist. LEXIS 85691, at *21-22 (S.D.N.Y. Nov. 16, 2006); *In re Ionosphere Clubs*, 156 B.R. at 426. "[T]he court need not conduct a 'mini-trial' to determine the merits of the underlying litigation." *In re Purified Down Prods. Corp.*, 150 B.R. 519, 522 (S.D.N.Y. 1993).

18. In deciding whether a particular compromise falls within the "range of reasonableness," courts consider the following factors:

    (i)    the probability of success in the litigation;

8

(ii) the difficulties associated with collection;

(iii) the complexity of the litigation, and the attendant expense, inconvenience, and delay; and

(iv) the paramount interests of the creditors (or in this case, customers).

*In re Refco, Inc.*, 2006 U.S. Dist. LEXIS 85691 at *22; *Nellis v. Shugrue*, 165 B.R. 115, 122 (S.D.N.Y. 1994) (citing *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 292 (2d Cir. 1992), *cert. denied*, 506 U.S. 1088 (1993)).

19. The bankruptcy court may credit and consider the opinions of the trustee or debtor and their counsel in determining whether a settlement is fair and equitable. *See In re Purified Down Prods.*, 150 B.R. at 522; *In re Drexel Burnham Lambert Grp.*, 134 B.R. at 505. Even though the Court has discretion to approve settlements and must independently evaluate the reasonableness of the settlement, *In re Rosenberg*, 419 B.R. 532, 536 (Bankr. E.D.N.Y. 2009), the business judgment of the trustee and his counsel should be considered in determining whether a settlement is fair and equitable. *In re Chemtura Corp.*, 439 B.R. at 594. The competency and experience of counsel supporting the settlement may also be considered. *Nellis*, 165 B.R. at 122. Finally, the court should be mindful of the principle that "the law favors compromise." *In re Drexel Burnham Lambert Grp.*, 134 B.R. at 505 (quoting *In re Blair*, 538 F.2d 849, 851 (9th Cir. 1976)).

20. The Agreement furthers the interest of BLMIS customers by recovering seventy-five percent of the total alleged fraudulent transfers prior to the Filing Date, and by limiting the increase of the TSF Customer Claim pursuant to 11 U.S.C. § 502(h) to only eighty-eight percent of the recovered Transfers. The Agreement also resolves all claims between the Parties and the subsequent transferees of Defendants and avoids the cost and delay of what could otherwise be lengthy and contentious litigation. (Affidavit of the Trustee in Support of the Motion (the "Picard

9

Affidavit"). A true and accurate copy of the Picard Affidavit is attached as Exhibit C).

## CONCLUSION

21.     The Trustee believes that the terms of the Agreement fall well above the lowest point in the range of reasonableness. The Agreement resolves the claims raised by the Trustee against the Defendants as to this adversary proceeding, and it avoids likely lengthy, burdensome, and expensive litigation regarding the claims and defenses in this matter. The Trustee also believes that the Agreement represents a fair and reasonable compromise of the Avoiding Power Claims and the Disallowance Claim. Because the Agreement is well within the "range of reasonableness" and confers a significant monetary benefit on the estate, the Trustee respectfully requests that the Court enter an Order approving the Agreement.

## NOTICE

22.     In accordance with Bankruptcy Rules 2002 and 9019, notice of this Motion has been given to (i) SIPC; (ii) the United States Attorney for the Southern District of New York; and (iii) Carmine D. Boccuzzi, Jr of Cleary Gottlieb Steen & Hamilton LLP, One Liberty Plaza, New York, New York 10006. Notice of this Motion will also be provided via email and/or U.S. Mail to all persons who have filed notices of appearance in the BLMIS proceeding and to all defendants in this adversary proceeding pursuant to the Order Establishing Notice Procedures and Limiting Notice, ECF No. 4560. The Trustee submits that no other or further notice is required.

WHEREFORE, the Trustee respectfully requests entry of an Order substantially in the form of Exhibit B granting the relief requested in the Motion.

Dated: New York, New York  
October 23, 2015

Respectfully submitted,

BAKER & HOSTETLER LLP

By: /s/ Elizabeth A. Scully  
David J. Sheehan  
E-mail: dsheehan@bakerlaw.com  
Mark A. Kornfeld  
E-mail: mkornfeld@bakerlaw.com  
Thomas L. Long  
E-mail: tlong@bakerlaw.com  
45 Rockefeller Plaza  
New York, New York 10111  
Telephone: (212) 589-4200  
Facsimile: (212) 589-4201

--and--

Elizabeth A. Scully (*pro hac*)  
E-mail: escully@bakerlaw.com  
1050 Connecticut Ave., N.W., 1100  
Washington, D.C. 20036  
Telephone: (202) 861-1500  
Facsimile: (202) 861-1783

*Attorneys for Irving H. Picard,*  
*Trustee for the Substantively Consolidated*  
*SIPA Liquidation of the estate of Bernard L.*  
*Madoff Investment Securities LLC and the*  
*Estate of Bernard L. Madoff*