# **EXHIBIT A**

## AGREEMENT

This Agreement, dated as of October 21, 2015 ("Agreement"), is made by and between Irving H. Picard, in his capacity as the trustee ("Trustee") for the liquidation proceedings under the Securities Investor Protection Act of 1970, as amended, 15 U.S.C. § 78aaa *et seq.* ("SIPA"), of Bernard L. Madoff Investment Securities LLC ("BLMIS") and the substantively consolidated Chapter 7 case pending before the United States Bankruptcy Court for the Southern District Court of New York (the "Bankruptcy Court") of Bernard L. Madoff ("Madoff"), on the one hand, and defendants Thybo Asset Management Limited ("TAM") and Thybo Stable Fund Ltd. ("TSF"), (TAM and TSF collectively, the "Defendants"), on the other hand. The Trustee and the Defendants shall be referred to herein as the "Parties," and each a "Party."

## BACKGROUND

A. BLMIS and its predecessors were registered broker-dealers and members of the Securities Investor Protection Corporation ("SIPC").

B. On December 11, 2008 (the "Filing Date"), the Securities and Exchange Commission (the "SEC") filed a complaint in the United States District Court for the Southern District of New York (the "District Court") against BLMIS and Madoff.

C. On December 15, 2008, the District Court entered an order under SIPA, which, in pertinent part, appointed the Trustee for the liquidation of the business of BLMIS under section 5(b)(3) of SIPA and removed the case to the Bankruptcy Court under section 5(b)(4) of SIPA, where it is pending as Case No. 08-01789 (SMB) (the "SIPA Proceeding"). The Trustee is duly qualified to serve and act on behalf of the BLMIS estate (the "BLMIS Estate"). By Order dated June 9, 2009, the estate of Madoff was substantively consolidated with the BLMIS Estate.

D. TAM opened its account with BLMIS on or around August 1, 2000, which was designated Account No. 1FR069. This account was closed in December 2006, and its balance was transferred to TSF's account, designated Account No. 1FR129, which was opened October 30, 2006 and remained open until the Filing Date. Between January 1, 2004 and October 30, 2006, two affiliates of Defendants, Thybo Global Fund Limited and Thybo Return Fund Limited (the "Non-Defendant Funds") held accounts at BLMIS, designated Account Nos. 1FR106 and 1FR113 (the "Non-Defendant Accounts"). No withdrawals were made from either of these two accounts. The balance of Account No. 1FR106 was transferred to TAM's account prior to October 2006, and the balance of Account No. 1FR113 was transferred to TSF's account on October 30, 2006. TAM and TSF's accounts collectively will be referred to as the "BLMIS Accounts."

E. In the six years prior to the Filing Date, Defendants withdrew from their BLMIS Accounts Sixty-Two Million Dollars ($62,000,000) (the "Transfers"), which included Forty Million Dollars ($40,000,000.00) during the two-year period prior to the Filing Date and Six Million Dollars ($6,000,000.00) during the ninety-day preference period prior to the Filing Date.

F. On or about July 1, 2009, TSF filed two separate, but identical in form, customer claims with the Trustee, which the Trustee designated as Claim Nos. 13761 and 13961. On or about July 6, 2009, TSF filed a third customer claim with the Trustee, again identical in form to the two earlier claims, which the Trustee designated as Claim No. 70099 (all three together, the "TSF Customer Claims"). The TSF Customer Claims are included as Attachment A to this Agreement. The Parties agree that TSF's net equity equals One Hundred Forty-Five Million, Fifty-Three Thousand, Four Hundred Two Dollars and Thirty-One Cents ($145,053,402.31) ("Net Equity").

G. On July 15, 2009, the Trustee filed a Complaint commencing an adversary proceeding captioned *Picard v. Thybo Asset Management Limited, et al.*, Adv. Pro. No. 09-1365 (SMB), which was amended twice (the "Adversary Proceeding"). In the Complaint, the Trustee asserted claims to avoid and recover the Transfers under 11 U.S.C. §§ 544, 547, 548, 550, and 551, SIPA § 78fff-(2)(c)(3), and the New York Debtor and Creditor Law §§ 270–281 ("Avoiding Power Claims"). The Trustee also asserted a claim to disallow the TSF Customer Claims, pursuant to 11 U.S.C. § 502(d), ("Disallowance Claim").

## AGREEMENT

1. <u>Payment to Trustee</u>. At the Closing (as defined in paragraph 8) Defendants shall pay or cause to be paid to the Trustee, pursuant to the means set forth in paragraph 8, the sum of Forty-Six Million, Six Hundred Thousand Dollars ($46,600,000) (the "Settlement Payment") in full and final settlement and satisfaction of all Avoiding Power Claims and the Disallowance Claim that the Trustee or the BLMIS Estate has against the Defendants.

2. <u>Allowance of TSF Customer Claim</u>. Upon the Closing (as defined in paragraph 8), TSF's Customer Claim shall be deemed conclusively allowed pursuant to section 502 of the Bankruptcy Code and 15 U.S.C. § 78*lll*(11), equal in priority to other allowed customer claims against the BLMIS Estate, in the amount of One Hundred Forty-Five Million, Fifty-Three Thousand, Four Hundred Two Dollars and Thirty-One Cents ($145,053,402.31), plus eighty-eight percent (88%) of the Settlement Payment, for an aggregate allowed claim amount of One Hundred Eighty-Six Million, Sixty-One Thousand, Four Hundred Two Dollars and Thirty-One Cents ($186,061,402.31) (the "Allowed Claim"). As of the date of this Agreement, the initial amount to be paid by the Trustee to TSF allocable to the Allowed Claim in respect of a catch-up distribution is Ninety-One Million, Three Hundred One Thousand, Six Hundred Eighty-Five Dollars and Fifty-Six Cents ($91,301,685.56) (48.802% of the Allowed Claim plus a SIPC advance of $500,000.00) (the "Catch-Up Distribution"). TSF shall be entitled to the SIPC customer advance provided for under section 78fff-3(a) of SIPA applicable to its Allowed Claim in the amount of $500,000.00, which is included in the Catch-Up Distribution. Thereafter, TSF shall be entitled to ratable distributions owing on the Allowed Claim in due course as distributed by the Trustee and approved by the Bankruptcy Court from time to time on the same basis and timetable as the holders of admitted claims in the SIPA liquidation of the BLMIS Estate.

3. <u>Release by the Trustee</u>. (a) (i) In consideration for the covenants and agreements in this Agreement and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, except with respect to the obligations, rights, and considerations

arising under this Agreement, upon the Closing (as defined in paragraph 8), the Trustee on behalf of himself, BLMIS, and its consolidated estates (collectively, the "Trustee Releasors"), shall release, acquit, and forever discharge the Defendants and Non-Defendant Funds, including their successors and/or assigns, officers, directors, and current and former shareholders, from any and all past, present, or future claims or causes of action (including any suit, petition, demand, or other claim in law, equity, or arbitration) and from any and all allegations of liability or damages (including any allegation of duties, debts, reckonings, contracts, controversies, agreements, promises, damages, responsibilities, covenants, or accounts), of whatever kind, nature, or description, direct or indirect, in law, equity or arbitration, absolute or contingent, in tort, contract, statutory liability, or otherwise, based on strict liability, negligence, gross negligence, fraud, breach of fiduciary duty, or otherwise (including attorneys' fees, costs, or disbursements), known or unknown, existing as of the date of the Closing that are, have been, could have been, or might in the future be asserted by the Trustee based on, arising out of, or in any way related to Defendants' or Non-Defendant Funds' respective direct or indirect relationship with BLMIS, the BLMIS Accounts, Non-Defendant Accounts, or the Transfers, except that the Trustee retains the right to enforce the terms and conditions of this Agreement.

(ii) In consideration for the covenants and agreements set forth in this Agreement and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, except with respect to any rights arising under this Agreement and as provided under Section 3(b) of this Agreement, the Trustee Releasors hereby release and agree not to further pursue any subsequent transferees of the Transfers relating to Defendants' BLMIS Accounts (the "Subsequent Transferee Releasees").

(b) Notwithstanding the foregoing release contained in Section 3(a)(ii), the Defendants, Non-Defendant Funds, and Subsequent Transferee Releasees are not released from liability for any transfers that they may have received in connection with any account not specified herein or referenced on Exhibit B of the Complaint filed in the Adversary Proceeding, or may receive after the date of this Agreement which constitute subsequent transfers of transfers made by BLMIS which are avoidable and recoverable under SIPA, the Bankruptcy Code and other applicable laws.

4. Release by the Defendants. (a) In consideration for the covenants and agreements in this Agreement and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, except with respect to the obligations, rights, and considerations arising under this Agreement, upon the Closing (as defined in paragraph 8), the Defendants shall release, acquit, and forever discharge the Trustee and all his agents, representatives, attorneys, employees, and professionals, and BLMIS and its consolidated estate, from any and all past, present, or future claims or causes of action (including any suit, petition, demand, or other claim in law, equity, or arbitration) and from any and all allegations of liability or damages (including any allegation of duties, debts, reckonings, contracts, controversies, agreements, promises, damages, responsibilities, covenants, or accounts), of whatever kind, nature, or description, direct or indirect, in law, equity or arbitration, absolute or contingent, in tort, contract, statutory liability, or otherwise, based on strict liability, negligence, gross negligence, fraud, breach of fiduciary duty, or otherwise (including attorneys' fees, costs, or disbursements), known or unknown, existing as of the date of the Closing that are, have been, could have been, or might in the future be asserted by the Defendants based on, arising out of, or

3

in any way related to BLMIS or Madoff, except that the Defendants retain the right to enforce the terms and conditions of this Agreement.

(b) In consideration for the covenants and agreements set forth in this Agreement and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, except with respect to any rights arising under this Agreement, Defendants hereby release and agree not to further pursue any subsequent transferees of the Transfers made relating to Defendants' BLMIS Accounts.

5. <u>Unknown Claims</u>. Unknown Claims shall mean any released claims pursuant to paragraphs 3 and 4 of the Agreement ("<u>Released Claims</u>") that the Parties do not know or suspect to exist in their favor at the time of giving the release in this Agreement that if known by them, might have affected their settlement and release in this Agreement. With respect to any and all released claims in paragraphs 3 and 4 of this Agreement, the Parties shall expressly waive or be deemed to have waived, the provisions, rights and benefits of California Civil Code section 1542 (to the extent it applies herein), which provides:

> <u>A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR.</u>

The Parties expressly waive, and shall be deemed to have waived, any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, or principle of common law or foreign law, that is similar, comparable, or equivalent in effect to California Civil Code section 1542. The Trustee and/or the Defendants may hereafter discover facts in addition to or different from those that they now know or believe to be true with respect to the subject matter of the Released Claims, but the Parties shall expressly have and be deemed to have fully, finally, and forever settled and released any and all Released Claims, known or unknown, suspected or unsuspected, contingent or noncontingent, whether or not concealed or hidden, that now exist or heretofore have existed, upon any theory of law or equity now existing or coming into existence in the future, including conduct that is negligent, reckless, intentional, with or without malice, or a breach of any duty, law, or rule, without regard to the subsequent discovery or existence of such different or additional facts. The Parties acknowledge and shall be deemed to have acknowledged that the foregoing waiver was separately bargained for and a key element of the settlement of which this release is a part.

6. <u>Dismissal of Adversary Proceedings</u>. Within five days of the Closing (as defined in paragraph 8), the Parties shall submit to the Bankruptcy Court, a stipulation requesting the dismissal of the Adversary Proceeding, with prejudice, as against the Defendants, with each Party bearing its own costs, attorneys' fees, and expenses.

7. <u>Court Approval; Effective Date; Termination</u>. The Parties' rights and obligations under this Agreement shall be fixed as of the date of execution and delivery of signatures by the Parties, subject to approval by the Bankruptcy Court. The Parties jointly agree to support this

Agreement in connection with the submission to, and approval thereof by, the Bankruptcy Court. This Agreement is subject to, and shall become effective upon, the Bankruptcy Court's approval of this Agreement in the SIPA Proceeding by an order that is no longer subject to appeal, review, or rehearing ("Effective Date"). The Trustee shall use his reasonable efforts to obtain approval of the Agreement in the SIPA Proceeding as promptly as practicable after the date of this Agreement. If this Agreement has not become effective as provided in this paragraph within 360 days after the date of this Agreement (or within such additional time as mutually agreed upon by the Parties), then (a) this Agreement (other than this paragraph) shall terminate and be void; (b) all of the statements, concessions, consents, and agreements contained in the Agreement (other than this paragraph) shall be void; and (c) neither the Trustee nor the Defendants may use or rely on any such statement, concession, consent, or agreement in any public statement or litigation involving the SIPA Proceeding, or any case or proceeding relating to Defendants, BLMIS, or Madoff.

8. Closing. There shall be a closing ("Closing") within five business days after the Effective Date of this Agreement in settlement of the Trustee's Avoiding Power Claims and Disallowance Claim. At the Closing, the Trustee shall cause to be paid to TSF the amount of the Catch-Up Distribution then owing less the Settlement Payment amount of $46,600,000.00 that Defendants shall at the same time pay to the Trustee pursuant to paragraph 1 through a deduction of said amount from the then owing Catch-Up Distribution. Accordingly, under the current approved distributions the Trustee would pay TSF Forty-Four Million, Seven Hundred One Thousand, Six Hundred Eighty-Five Dollars and Fifty-Six Cents ($44,701,685.56), consisting of the balance of:

    a. The Catch-Up Distribution under the Allowed Claim owed to TSF pursuant to paragraph 2, minus

    b. The Settlement Payment totaling $46,600,000.00.

9. Defendants' and Trustee's Authority. The Defendants represent and warrant to the Trustee that, as of the date hereof, each of them has the full power, authority, and legal right to execute and deliver, and to perform their respective obligations under this Agreement and have taken all necessary action to authorize the execution, delivery, and performance of their respective obligations under this Agreement. The Trustee represents and warrants to the Defendants that, as of the date hereof, and subject to the approval of the Bankruptcy Court as set forth in paragraph 7 above, he has the full power, authority, and legal right to execute and deliver, and to perform his obligations under this Agreement and has taken all necessary action to authorize the execution, delivery, and performance of his respective obligations under this Agreement.

10. Further Assurances. The Parties shall execute and deliver any document or instrument reasonably requested by any of them after the date of this Agreement to effectuate the intent of this Agreement.

11. Entire Agreement. This Agreement constitutes the entire agreement and understanding between and among the Parties and supersedes all prior agreements, representations, and understandings concerning the subject matter hereof.

12. **No Admission.** This Agreement and all negotiations, statements, and proceedings in connection therewith are not, will not be argued to be, and will not be deemed to be a presumption, concession, or admission by any Party of any fault, liability, or wrongdoing whatsoever. This Agreement may not be offered or received in evidence or otherwise referred to in any civil, criminal, or administrative action or proceeding as evidence of any fault, liability, or wrongdoing whatsoever.

13. **Amendments, Waiver.** This Agreement may not be terminated, amended, or modified in any way except in a writing signed by all of the Parties. No waiver of any provision of this Agreement shall be deemed to constitute a waiver of any other provision hereof, whether or not similar, nor shall such waiver constitute a continuing waiver.

14. **Assignability.** No Party hereto may assign its rights under this Agreement without the prior written consent of each of the other Parties hereto, except that nothing in this Agreement shall prevent TSF's ability to assign all or part of the TSF Allowed Claim pursuant to the Bankruptcy Court's November 10, 2010 Order Establishing Procedures for the Assignment of Allowed Claims.

15. **Successors Bound.** This Agreement shall be binding upon and inure to the benefit of each of the Parties and their successors and permitted assigns.

16. **No Third Party Beneficiary.** The Parties do not intend to confer any benefit by or under this Agreement upon any person or entity other than the Parties hereto and their respective successors and permitted assigns.

17. **Applicable Law.** This Agreement shall be construed and enforced in accordance with the laws of the State of New York, without regard to its conflict of laws provisions.

18. **Exclusive Jurisdiction.** The Parties agree that the Bankruptcy Court shall have exclusive jurisdiction over any and all disputes between or among the Parties, whether in law or equity, arising out of or relating to this Agreement, or any provision thereof, and the Parties hereby consent to and submit to the jurisdiction of the Bankruptcy Court for any such action. In the event the BLMIS proceeding is closed by a final decree and not reopened, the Parties agree that any dispute arising out of this Agreement, or any provision thereof, may be brought in the District Court or the Supreme Court of New York in New York County. For the avoidance of doubt, Defendants' entry into this Agreement does not constitute consent to the jurisdiction of any U.S. court for purposes other than enforcement of this Agreement, and is without prejudice to any defense (including lack of personal jurisdiction) that Defendants may have against any other type of action, including with respect to the Adversary Proceeding.

19. **Captions and Rules of Construction.** The captions in this Agreement are inserted only as a matter of convenience and for reference and do not define, limit, or describe the scope of this Agreement or the scope or content of any of its provisions. Any reference in this Agreement to a paragraph is to a paragraph of this Agreement. "Includes" and "including" are not limiting.

20. **Counterparts, Electronic Copy of Signatures.** This Agreement may be executed and delivered in any number of counterparts, each of which so executed and delivered shall be

deemed to be an original and all of which shall constitute one and the same document. The Parties may evidence their execution of this Agreement by delivery to the other Parties of scanned or faxed copies of their signatures with the same effect as the delivery of an original signature.

    21.    <u>Negotiated Agreement</u>. This Agreement has been fully negotiated by the Parties. Each Party acknowledges and agrees that this Agreement has been drafted jointly, and the rule that ambiguities in an agreement or contract may be construed against the drafter shall not apply in the construction or interpretation of this Agreement.

    22.    <u>Severability</u>. In the event that any term or provision of this Agreement or any application thereof is deemed to be invalid or unenforceable, the remainder of this Agreement and any other application of such term or provision shall not be affected thereby.

    23.    <u>Notices</u>. Any notices under this Agreement shall be in writing, shall be effective when received and may be delivered only by hand, by overnight delivery service, by fax, or by electronic transmission to:

If to the Trustee:

Irving H. Picard
Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111
E-mail: ipicard@bakerlaw.com

with copies to:

Mark A. Kornfeld
E-mail: mkornfeld@bakerlaw.com
Thomas L. Long
E-mail: tlong@bakerlaw.com
Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111
T: (212) 589-4200
F: (212) 589-4201
--and--
Elizabeth A. Scully
E-mail: escully@bakerlaw.com
Baker & Hostetler LLP
1050 Connecticut Ave., N.W., 1100
Washington, D.C. 20036
Telephone: (202) 861-1500
Facsimile: (202) 861-1783

If to TAM and/or TSF, c/o:

Carmine D. Boccuzzi, Jr.
E-mail: cboccuzzi@cgsh.com
Cleary Gottlieb Steen & Hamilton, LLP
One Liberty Plaza
New York, NY 10006
T: (212) 225-2000
F: (212) 225-3999

*[Signature pages follow]*

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be executed as of the date first above written.

_____
IRVING H. PICARD

Sworn to and subscribed before me
this 22nd day of October, 2015

_____
Notary Public

SONYA M. GRAHAM
Notary Public, State of New York
No. 01GR6133214
Qualified in Westchester County
Commission Expires: 9/12/20__

8

**THYBO ASSET MANAGEMENT LIMITED**

By : _____
Director
CODAN SERVICES (B.V.I.) LTD.
Corporate Director

Subscribed before me
this 21st day of October, 2015

_____
Notary Public




THYBO STABLE FUND LTD.

By: _____
Director
CODAN SERVICES (B.V.I.) LTD.
Corporate Director

Subscribed before me
this 21st day of October, 2015

_____
Notary Public

