**BAKER & HOSTETLER LLP**

45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan

*Attorneys for Irving H. Picard, Trustee for the
Substantively Consolidated SIPA Liquidation of
Bernard L. Madoff Investment Securities LLC
and the estate of Bernard L. Madoff*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>        Debtor. | Adv. Pro. No. 08-1789 (SMB)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>        Plaintiff,<br><br>v.<br><br>ANDREW H. COHEN,<br><br>        Defendant. | Adv. Pro. No. 10-04311 (SMB) |

## TRUSTEE'S OPPOSITION TO MOTION TO INTERVENE

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

FACTS AND PROCEDURAL HISTORY ............................................................................... 2

    I.    Commencement of the Cohen Proceeding............................................................. 2

    II.    *Picard v. Greiff* ................................................................................................... 3

    III.    Antecedent Debt Decision .................................................................................... 4

    IV.    Omnibus Good Faith Decision.............................................................................. 5

    V.    Cohen Proceeding Moves Towards Trial ............................................................. 5

    VI.    Motion to Intervene............................................................................................... 6

ARGUMENT ............................................................................................................................. 7

    I.    The Motion to Intervene is Procedurally Improper .............................................. 7

    II.    Movants Are Not Entitled To Intervention as a Matter of
    Right..................................................................................................................... 12

        A.    Movants Do Not Have a Direct and Substantial Interest in the
        Cohen Proceeding .................................................................................... 13

        B.    Resolution of Mr. Cohen's Action Will Not Adversely Impede
        Movants' Interests in Their Own Actions................................................ 15

        C.    The Motion to Intervene Is Not Timely .................................................. 17

            1.    Movants Moved to Intervene Months After Notice of Trial........ 17

            2.    The Motion to Intervene Will Prejudice the Trustee ................... 18

            3.    Denial of the Motion to Intervene Will Not Prejudice
            Movants....................................................................................... 19

            4.    Unusual Circumstances Support Denial of the Motion to
            Intervene ..................................................................................... 20

        D.    Movants' Interests are Adequately Represented..................................... 20

    III.    Movants Are Not Entitled To Permissive Intervention ...................................... 22

    IV.    Movants Should Not be Permitted to Submit *Amicus* Briefs.............................. 23

CONCLUSION......................................................................................................................... 24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Auto. Club of N. Y., Inc. v. The Port Authority of N. Y. and N. J.*,
No. 11 Civ. 6746, 2011 WL 5865296 (S.D.N.Y. Nov. 22, 2011) ..........................................23

*B. Fernandez & Hnos., Inc. v. Kellogg USA, Inc.*,
440 F.3d 541 (1st Cir. 2006) ...............................................................................................16

*In re Bank of New York Derivative Litig.*,
320 F.3d 291 (2d Cir. 2003) ................................................................................................22

*Berroyer v. United States*,
282 F.R.D. 299 (E.D.N.Y. 2012) .........................................................................................14

*Brennan v. N.Y.C. Bd. Of Educ.*,
260 F.3d 123 (2d Cir. 2001) ................................................................................................14

*Butler, Fitzgerald & Potter v. Sequa Corp.*,
250 F.3d 171 (2d Cir. 2001) ...........................................................................................20, 21

*Ceribelli v. Elghanayan*,
No. 91 Civ. 3337, 1994 WL 529853 (S.D.N.Y. Sept. 28, 1994) ............................................8

*Chevron Corp. v. Donziger*,
No. 11 Civ. 0691, 2011 WL 2150450 (S.D.N.Y. May 31, 2011) ..........................................17

*Credit Suisse Sec. (USA) LLC v. Tracy*,
No. 14 Civ. 8568, 2015 WL 170241 (S.D.N.Y. Jan. 8, 2015) .........................................12, 13

*Crown Financial Corp.* v. *Winthrop Lawrence Corp.*,
531 F.2d 76 (2d Cir. 1976) ..................................................................................................16

*Farmland Dairies v. Comm'r of N.Y State Dep't of Agric. & Mkts.*,
847 F.2d 1038 (2d Cir. 1988) ..............................................................................................17

*Floyd v. City of New York*,
770 F.3d 1051 (2d Cir. 2014) .........................................................................................12, 13

*Fuller v. Volk*,
351 F. 2d 323 (3d Cir. 1965) ...............................................................................................11

*Garrity v. Gallen*,
697 F.2d 452 (1st Cir. 1983) ...............................................................................................20

*Glancy v. Taubman Ctrs, Inc.*,
373 F.3d 656 (6th Cir. 2004) ...............................................................................................16

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*In re Hyde Park P'ship*,
73 B.R. 194 (Bankr. N.D. Ohio 1986) .................................................................22

*In re Ionosphere Clubs, Inc.*,
101 B.R. 844 (Bankr. S.D.N.Y. 1989) ................................................................22

*In re Johns-Manville Corp.*,
36 B.R. 743 (Bankr. S.D.N.Y.1984) ...................................................................23

*Kruse v. Wells Fargo Home Mortgage, Inc.*,
No. 02 Civ. 3089, 2006 WL 1212512 (E.D.N.Y. May 3, 2006) ............................8

*Liberty Mut. Ins. Co. v. Treesdale, Inc.*,
419 F.3d 216 (3d Cir. 2005) ...............................................................................16

*Lipsett v. United States*,
359 F.2d 956 (2d Cir. 1966) ...............................................................................23

*Louis Berger Grp., Inc. v. State Bank of India*,
802 F. Supp. 2d 482 (S.D.N.Y. 2011) ................................................................12

*N.Y. Pub. Interest Research Grp., Inc. v. Regents of Univ. of State of N.Y.*,
516 F.2d 350 (2d Cir. 1975) ...............................................................................15

*North River Ins. Co. v. Philadelphia Reinsurance Corp.*,
63 F.3d 160 (2d Cir. 1995) .................................................................................11

*Oneida Indian Nation of Wisconsin v. State of N.Y.*,
732 F.2d 261 (2d Cir. 1984) ...............................................................................15

*Panzirer v. Wolf*,
No. 79 Civ. 3445, 1980 WL 1395 (S.D.N.Y. April 21, 1980)................................8

*Picard v. Flinn Invs., LLC*,
463 B.R. 280 (S.D.N.Y. 2011).......................................................................3, 12

*Picard v. Greiff*,
476 B.R. 715 (S.D.N.Y. 2012).........................................................................3, 9

*Picard v. Greiff*,
797 F. Supp. 2d 451 (S.D.N.Y. 2011)...........................................................23, 24

*In re Platinum & Palladium Commodities, Litig.*,
No. 10 Civ. 3617, 2014 WL 3500655 (S.D.N.Y. July 15, 2014) ........................14

*In re Pub. Serv. Co. of N.H.*,
88 B.R. 546 (Bankr. D. N.H. 1988) ...................................................................22

# TABLE OF AUTHORITIES
## (continued)

*In re Pulp Finish 1 Co.,*
   No. 12-13774 (SMB), 2014 WL 201482 (Bankr. S.D.N.Y. Jan. 16, 2014) ..........................23

*R & G Mortgage Corp. v. Fed. Home Loan Mortgage Corp.,*
   584 F.3d 1 (1st Cir. 2009) ......................................................................................22

*Restor–A–Dent Labs., Inc. v. Certified Alloy Products, Inc.,*
   725 F.2d 871 (2d Cir.1984)...........................................................................12, 13, 17

*Rodriguez v. Pataki,*
   211 F.R.D. 215 (S.D.N.Y. 2002) ........................................................................13, 14

*Sanders v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,*
   No. 68 Civ. 3522, 1970 WL 224 (S.D.N.Y. June 29, 1970)....................................11

*Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.),*
   496 B.R. 744 (Bankr. S.D.N.Y. 2013) ...................................................................10

*Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.),*
   499 B.R. 416 (S.D.N.Y. 2013)....................................................................4, 9, 10

*Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.),*
   531 B.R. 439 (Bankr. S.D.N.Y. 2015) ...............................................................5, 10

*Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.),*
   773 F.3d 411 (2d Cir. 2015)..............................................................................13

*Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.),*
   987 F. Supp. 2d 309 (S.D.N.Y. 2013)........................................................1, 4, 7, 10

*St. Johns Univ. v. Bolton,*
   450 Fed. App'x 81 (2d Cir. 2011) ..................................................................13, 21

*U S. Postal Serv. v. Brennan,*
   579 F.2d 188 (2d Cir. 1978)...............................................................................22

*U.S. v. Gotti,*
   755 F. Supp. 1157 (E.D.N.Y. 1991) ...................................................................23

*Union Switch & Signal, Inc. v. St. Paul Fire & Marine Ins. Co.,*
   226 F.R.D. 485 (S.D.N.Y. 2005) .......................................................................23

*United States v. Ahmed,*
   788 F. Supp. 196 (S.D.N.Y. 1992) .....................................................................24

*United States v. Bell,*
   5 F.3d 64 (4th Cir. 1993) .................................................................................11

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

*United States v. Ben Zvi,*
242 F.3d 89 (2d Cir. 2001).................................................................................11, 12

*United States v. El-Gabrowny,*
844 F. Supp. 955 (S.D.N.Y. 1994) ...............................................................................23

*United States v. Kikumura,*
947 F.2d 72 (3d Cir. 1991)...........................................................................................12

*United States v. New York,*
820 F.2d 554 (2d Cir.1987)..........................................................................................12

*United States v. Nolan,*
136 F.3d 265 (2d Cir. 1998).........................................................................................15

*United States v. Peoples Benefit Life Ins. Co.,*
271 F.3d 411 (2d Cir. 2001).........................................................................................13

*United States v. Pineiro,*
470 F.3d 200 (5th Cir. 2006) .......................................................................................11

*United States v. Quintieri,*
306 F.3d 1217 (2d Cir. 2002).......................................................................................11

*United States v. Tenzer,*
213 F.3d 34 (2d Cir. 2000)...........................................................................................11

*United States v. Yonkers Bd. of Educ.,*
801 F.2d 593 (2d Cir. 1986).........................................................................................20

*Washington Elec. Coop., Inc. v. Mass. Mun. Wholesale Elec. Co.,*
922 F.2d 92 (2d Cir.1990)............................................................................................13

**Statutes**

11 U.S.C. § 546(e) ............................................................................................................13

11 U.S.C. § 548(c) ...................................................................................................... *passim*

11 U.S.C. § 548(d)(2)(A ...............................................................................................5, 6

15 U.S.C. §§ 78aa *et seq.*..................................................................................................1

**Rules**

Fed. R. Bankr. P. 2018......................................................................................................22

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

Fed. R. Bankr. P. 7024 ........................................................................................................... 2, 22

Fed. R. Civ. P. 19 .......................................................................................................................... 16

Fed. R. Civ. P. 24 ...................................................................................................................... *passim*

Fed. R. Civ. P. 24(a) .............................................................................................................. 12, 13

Fed. R. Civ. P. 24(b) .................................................................................................................... 22

Fed. R. Civ. P. 24(b)(l) ................................................................................................................ 22

Fed. R. Civ. P. 26 ........................................................................................................................ 4, 5

**Other Authorities**

Wright & Miller, 7C Fed. Prac. & Proc. § 1916 (3d ed.) ............................................................ 22

Irving H. Picard, as trustee (the "Trustee") for the substantively consolidated liquidation

of the business of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities

Investor Protection Act, 15 U.S.C. §§ 78aa *et seq.* ("SIPA"),[1] and the estate of Bernard L.

Madoff ("Madoff"), submits this memorandum of law in opposition (the "Opposition") to the

Motion to Intervene (Adv. Pro. No. 08-01789 (SMB), ECF Nos. 11735-11736; Adv. Pro. No. 10-

04311 (SMB), ECF Nos. 61-62) (the "Motion to Intervene") filed by defendants ("Movants") in

57 avoidance actions commenced by the Trustee, by which Movants now seek to intervene in the

Andrew H. Cohen adversary proceeding (the "Cohen Proceeding") regarding certain purported

"value" defenses under Bankruptcy Code Section 548(c).

## PRELIMINARY STATEMENT

The Motion to Intervene is improper because, as Movants admitted in court, they seek to

intervene solely to be in a position to fast-track an appeal regarding antecedent debt to the

Second Circuit—an appeal that the District Court denied when it rejected Movants' petition for

interlocutory relief of the Antecedent Debt Decision (defined below).[2] When this Court asked

Movants, "why do you *have* to intervene in this case *other than* to get a faster track to the Second

Circuit?" Movants could not muster any other justification for the Motion to Intervene.[3]

Even if the Motion to Intervene was appropriate, which it is not, Movants cannot satisfy

the requirements for intervention as of right because (i) Movants have no direct interest in the

---

[1] For convenience, subsequent references to sections of the act shall be denoted simply as "SIPA § __."

[2] *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.),* 987 F. Supp. 2d 309, 311
(S.D.N.Y. 2013) ("Antecedent Debt Interlocutory Denial").

[3] *See* Transcript, Conference Regarding Certain Parties' Request to Intervene ("Intervention Hearing Trans.") at
8:17-20, *Picard v. Cohen,* No. 10-04311 (SMB) (Bank. S.D.N.Y. Sept. 30, 2015). *See* Transcript, Conference
Regarding Certain Parties' Request to Intervene ("Intervention Hearing Trans.") at 8:17-20, *Picard v. Cohen,* No.
10-04311 (SMB) (Bank. S.D.N.Y. Sept. 30, 2015). A true and correct copy of the transcript is annexed as Exhibit 1
of the Declaration of Gregory Schwed in support of the Motion to Intervene, *Picard v. Cohen,* Adv. Pro. No. 10-
04311 (SMB) (Bankr. S.D.N.Y. Oct. 9, 2015), ECF No. 62-1.

Cohen Proceeding; (ii) the resolution thereof will not impede Movants' ability to address the Purported Value Defenses (as defined below) in their own adversary proceedings; (iii) the Motion to Intervene was not made in a timely manner; and (iv) Mr. Cohen is capable of adequately representing Movants' interests.

Permissive intervention is equally inappropriate here because not only is the Motion to Intervene untimely, but Movants have no cognizable interest in the Cohen Proceeding that would warrant their involvement. Further, Movants' Purported Value Defenses will be addressed in their own adversary proceedings before this Court. The fact that Mr. Cohen chose to move forward with discovery, mediation, and ultimately trial before this Court, instead of delaying his case through repeated motion practice before this Court and the District Court, does not provide grounds for intervention. It certainly does not justify Movants' attempt to use Bankruptcy Rule 7024 to take over the Cohen Proceeding in an effort to reinstate an appeal for which leave was denied by the District Court. This is particularly true here where Movants seek to intervene yet again on issues like antecedent debt, which have been repeatedly decided by this Court and the District Court, in proceedings in which Mr. Cohen participated. As such, even if intervention were appropriate, which it is not, the topics on which the Movants desire to opine cannot be revisited by this Court.

Accordingly, the Motion to Intervene should be denied.

## FACTS AND PROCEDURAL HISTORY

### I. Commencement of the Cohen Proceeding

On November 26, 2010, the Trustee brought this adversary proceeding against Mr. Cohen, a former employee of BLMIS, to avoid and recover fraudulent transfers totaling $1,143,461 admittedly received by Mr. Cohen in connection with the investment advisory account (No. 1C1219) that he held at BLMIS (the "Account"). On June 13, 2011, Mr. Cohen

answered the Trustee's Complaint, and asserted a counterclaim against BLMIS for fraud and

breach of fiduciary duty. [4]

## II.    *Picard v. Greiff*

In 2011, as part of the first wave of motions to withdraw the reference to the Bankruptcy

Court ("Motions to Withdraw") in these proceedings, defendants in at least five avoidance

actions filed Motions to Withdraw in their respective actions.[5]  Defendants in approximately 80

other avoidance actions, including Movants, filed joinders in support of those Motions to

Withdraw.[6]  On November 28, 2011, the District Court issued a consolidated ruling granting the

five Motions to Withdraw for the limited purposes of deciding, among other things, "whether the

Trustee may, consistent with non-bankruptcy law, avoid transfers that Madoff Securities

purportedly made in order to satisfy antecedent debt." *Picard v. Flinn Invs., LLC*, 463 B.R. 280,

288 (S.D.N.Y. 2011).  Subsequently, the District Court ruled that "[t]he transfers from Madoff

Securities to defendants that exceeded the return of defendants' principal, *i.e.*, that constituted

profits, were not 'for value.'" *Picard v. Greiff*, 476 B.R. 715, 725 (S.D.N.Y. 2012).[7]

---

[4] Mr. Cohen's counterclaim was dismissed pursuant to a stipulation filed on August 27, 2015. *See Stipulation of Dismissal of Counterclaim, Picard v. Cohen,* Adv. Pro. No. 10-04311 (Bankr. S.D.N.Y. August 27, 2015), ECF No. 54.

[5] *Picard v. Greiff,* Adv. Pro. No. 10-04357 (SMB) (Bankr. S.D.N.Y. June 2, 2011), ECF No. 9; *Picard v. Blumenthal,* Adv. Pro. No. 10-04582 (SMB) (Bankr S.D.N.Y. June 23, 2011), ECF No. 15-17; *Picard v. Hein,* Adv. Pro. No. 10-04861 (SMB) (Bankr. S.D.N.Y. July 15, 2011), ECF No. 14-15; *Picard v. Goldman,* Adv. Pro. No. 10-04735 (SMB) (Bankr. S.D.N.Y. July 19, 2011), ECF No. 8-10; and *Picard v. Flinn,* Adv. Pro. No. 10-04953 (SMB) (Bankr. S.D.N.Y. July 26, 2011), ECF Nos. 7-8.

[6] At least 32 joinders were filed in support of the Motions to Withdraw filed in *Picard v. Blumenthal*, No. 11 Civ. 4293 (JSR); 27 joinders were filed in *Picard v. Hein*, No. 11 Civ. 4936 (JSR), and 20 joinders were filed in *Picard v. Goldman*, No. 11 Civ. 4959.

[7] The *Greiff* decision applied to four motions to dismiss as filed in the following four avoidance actions: *Picard v. Greiff,* No. 11 Civ. 3775 (JSR); *Picard v. Blumenthal,* No. 11 Civ. 4293 (JSR); *Picard v. Hein,* No. 11 Civ. 4936 (JSR); *Picard v. Goldman,* No. 11 Civ. 4959. The ruling also applied to all avoidance actions that filed joinders in support of the motions to dismiss.

### III.    Antecedent Debt Decision

On March 14, 2012, Mr. Cohen moved to withdraw the reference to this Court on several issues including, but not limited to, whether the Trustee improperly seeks to avoid transfers that BLMIS made in satisfaction of antecedent debt owed by BLMIS to Mr. Cohen. Through several consent orders entered by the District Court, Mr. Cohen's motion was consolidated with hundreds of other similar motions in order to allow the District Court to decide the antecedent debt issue, among others, on a consolidated basis.[8] On October 15, 2013, the District Court extensively analyzed the antecedent debt issue and held that BLMIS customers are not entitled to retain avoidable transfers they received from BLMIS under Section 548(c) because such transfers did not constitute the "satisfaction of . . . antecedent debt" within the meaning of the statute. *See Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.),* 499 B.R. 416, 422-23 (S.D.N.Y. 2013) (the "Antecedent Debt Decision"). Certain defendants, including Movants, petitioned for interlocutory relief to appeal the Antecedent Debt Decision to the Second Circuit, which petition was denied. *Antecedent Debt Interlocutory Denial,* 987 F. Supp. 2d at 311.

After the consolidated briefings concluded, the avoidance actions were returned to this Court for further proceedings in accordance with the Order Establishing Litigation Case Management Procedures for Avoidance Actions, *In re Madoff Sec.*, Adv. Pro. No. 08-01789 (Bankr. S.D.N.Y. Nov. 10, 2010), ECF No. 3141 ("Litigation Procedures Order"). The Litigation Procedures Order provided for the scheduling of discovery in accordance with Federal

---

[8] *See* Order, *In re Madoff Sec.*, No. 12 MC 115 (JSR) (S.D.N.Y. May 16, 2012), ECF No. 107 (relating to the antecedent debt issue).

Rule of Civil Procedure 26, directed all parties to mandatory mediation at the close of discovery, and if mediation proves unsuccessful, to schedule a trial date before this Court. *Id.*

## IV.    **Omnibus Good Faith Decision**

On February 24, 2014, this Court established a briefing schedule for all pending motions to dismiss (the "Omnibus Motions to Dismiss"). *See* Case Management Order Regarding Certain Pending Motions to Dismiss, *In re Madoff,* Adv. Pro. No. 08-01789 (SMB) (Bankr. S.D.N.Y. Feb. 24, 2014), (ECF No. 5695) (the "February 24 Order"). On June 2, 2015, this Court granted in part and denied in part the Omnibus Motions to Dismiss for reasons set forth in its Memorandum Decision Regarding Omnibus Motions to Dismiss. *See generally Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*, 531 B.R. 439 (Bankr. S.D.N.Y. 2015) ("Omnibus Good Faith Decision"). This Court determined that "[t]hose moving defendants that participated in the withdrawal of the reference of the antecedent debt/value issue have had their day in court and Judge Rakoff's decisions are law of the case." *Id.* at 466. The Court further concluded "that the payment of fictitious profits did not satisfy an antecedent debt or provide value within the meaning of Bankruptcy Code § 548(c) and (d)(2)(A)." *Id.* at 470.

## V.    **Cohen Proceeding Moves Towards Trial**

While the consolidated briefings were being addressed by the District Court, and after the *Grieff* decision was issued on April 30, 2012, the Trustee and Mr. Cohen moved forward with discovery pursuant to the Litigation Procedures Order. In July 2014, all discovery including fact and expert discovery was completed. On March 10, 2015, the Trustee and Mr. Cohen conducted an unsuccessful mediation before Keith N. Costa. On April 29, 2015, the first notice of the final pretrial conference in the Cohen Proceeding was filed. Subsequent notices were also filed on May 18, 2015, July 15, 2015, and August 28, 2015 (ECF Nos. 10011, 10668, 11154, respectively), all of which were filed on the main bankruptcy court docket as well as the docket

for the Cohen Proceeding, in accordance with the Order Directing Duplicate Filings, *In re Madoff Sec.,* Adv. Pro. No. 08-01789 (SMB) (Bankr. S.D.N.Y. Feb. 18, 2014), ECF No. 5659 ("Order Directing Duplicate Filings"), which was entered at Movants' request.[9]

## VI.    Motion to Intervene

Just weeks prior to the trial in the Cohen Proceeding, on September 24, 2015, Movants submitted to the Court their initial letter requesting leave to intervene in the present matter. On September 25, 2015, the Trustee filed a letter in response, opposing Movants' request for leave to intervene. On September 30, 2015, at a hearing before this Court, Movants were granted leave to file their Motion to Intervene. *See* Intervention Hearing Trans. at 44:25–45:5.

On October 9, 2015, Movants filed the Motion to Intervene, seeking to intervene concerning the scope of the "value defense" under Section 548(c) of the Bankruptcy Code, which Movants state includes the following concepts:

> (i) that the transfers constituted value "to the extent that[a] transferee. . . gave value to the debtor in exchange for such transfer or obligation" (11 U.S.C. § 548(c)) or satisfied "present or antecedent debts" (11 U.S.C. 548(d)(2)(A)), including Customer claims and broker obligations under contracts and applicable law for rescission, securities fraud, breach of fiduciary duty, common law fraud, and securities entitlements owed under U.C.C. Article 8, together with interest thereon); (ii) that such obligations are unavoidable and cannot be reached by the Trustee; and (iii) that the "value" of deposited funds can only be meaningfully measured against the challenged transfer by using inflation-adjusted or "constant" dollars or otherwise to account for time-value-of-money principles.

Motion to Intervene at 9 (the "Purported Value Defenses").[10]

---

[9] *See* Transcript of Hearing Re: Conference Re: Request for Consolidated Briefing at 11:11-22 and 40:4-23, *In re Madoff Sec.*, Adv. Pro. No. 08-01789 (SMB) (Bankr. S.D.N.Y. Feb. 14, 2014) ("February 14 Hearing Trans."). Relevant portions of this transcript are annexed as Exhibit A to the Declaration of Nicholas J. Cremona dated October 29, 2015 (the "Cremona Declaration"), filed contemporaneously herewith.

## ARGUMENT

### I.    The Motion to Intervene is Procedurally Improper

Movants admit that their intervention is the first step in a two-part fast-tracking strategy—first, to become part of the contested matter, and second, to then appeal any judgment issued in the Cohen Proceeding concerning the Purported Value Defenses.  *See* Intervention Hearing Trans. at 7:8-10.   In so doing, Movants seek to bypass the District Court's earlier denial of interlocutory relief to appeal the Antecedent Debt Decision.  *See generally Antecedent Debt Interlocutory Denial,* 987 F. Supp. 2d 309 (S.D.N.Y. 2013).  This is entirely improper.  Movants should not be permitted to circumvent the District Court's decision and ignore the Litigation Procedures Order, which was put in place to provide for the orderly administration of adversary proceedings and prevent the very abuse of process that Movants are now attempting.

When asked by this Court, Movants admitted that they are "hoping to get the Second Circuit to take a fresh look at [the Purported Value Defenses]."  Intervention Hearing Trans. at 8:3-7.  When this Court pressed further, asking Movants "why do you *have* to intervene in this case *other than* to get a faster track to the Second Circuit?" (*Id.* at 8:17-20), Movants could not articulate a different basis, simply asserting that they could make a difference before the Second Circuit as follows:

> **THE COURT:** You're going to appeal a judgment in Mr. Cohen's case?

---

[10] Movants initially also sought to intervene on the availability, rate, and computation of prejudgment interest if a money judgment is entered against a defendant.  However, given that the Trustee has since withdrawn his claim to prejudgment interest in the *Cohen* matter, as Movants acknowledge in their moving papers (Motion to Intervene at 1, n.1), the Trustee will not address intervention arguments on that basis.  *See* Section XIV, Second Revised Joint Pretrial Order, *In re Madoff Sec.,* Adv. Pro. No. 08-01789 (SMB) (Bankr. S.D.N.Y. Oct. 9, 2015), ECF No. 11715 ("Based on the facts and circumstances in this Adversary Proceeding, the Trustee withdraws his request for an award of prejudgment interest with respect to the Avoidable Transfers.")

> **MR. SCHWED:** If we're allowed to intervene, we would be a party who is entitled to have that issue decided by the Second Circuit. You see, Your Honor, I think it's a very pragmatic issue.
>
> • • •
>
> **THE COURT:** But you have your -- I come back to this. You have your own cases in which you can raise these arguments if you lose. So why do you have to intervene in this case other than to get a faster track to the Second Circuit?
>
> **MR. SCHWED:** Because I think as a practical matter if this goes to the Second Circuit -- and let's just say for the sake of argument we could have made a difference had we been there, and the Second Circuit --
>
> **THE COURT:** That's a big assumption.
>
> **MR. SCHWED:** Pardon?
>
> **THE COURT:** That's a big assumption.
>
> **MR. SCHWED:** It's a huge assumption.

Intervention Hearing Trans. at 8:17-25, 12:16–13:3. Courts have readily denied motions to intervene where movants sought intervention as an end run around existing orders and procedural rules. *Cf. Kruse v. Wells Fargo Home Mortgage, Inc.*, No. 02 Civ. 3089, 2006 WL 1212512, at *6 (E.D.N.Y. May 3, 2006) (denying intervention where plaintiffs attempted to do through Rule 24 what they would be strictly prohibited from doing via subsequent filings); *Ceribelli v. Elghanayan*, No. 91 Civ. 3337, 1994 WL 529853, at *1 (S.D.N.Y. Sept. 28, 1994) (denying intervention where proposed intervenors, unhappy with their earlier decision to abandon their federal RICO claim in favor of common law claims in state court, now sought to revive that RICO claim after the statute of limitations ran out by joining a suit timely filed by others); *Panzirer v. Wolf*, No. 79 Civ. 3445, 1980 WL 1395, at *10 (S.D.N.Y. April 21, 1980) (denying intervention where it was merely a "back-door" attempt to begin an action anew).

Significantly, Movants have already raised the Purported Value Defenses before this Court and the District Court.  Movants identified those issues as grounds for the Motions to Withdraw as early as June 2, 2011[11] and raised the Purported Value Defenses again in motions to dismiss beginning in November 11, 2011.[12]   And the District Court considered and rejected every Purported Value Defense articulated in the Motion to Intervene in at least two prior decisions.  First, in *Greiff*, 476 B.R. at 725, which resolved the first wave of motions to dismiss and included the participation of many Movants,[13]  the District Court concluded that transfers from BLMIS that "exceeded the return of defendants' principal, *i.e.*, that constituted profits, were not 'for value.'" *Id.*

After *Greiff*, once again the District Court rejected several of the Purported Value Defenses raised by these same Movants in the consolidated proceeding in the District Court,[14] holding that such claims "cannot provide value as against the Madoff Securities customer property estate under SIPA." *Antecedent Debt Decision*, 499 B.R. at 422 n. 6.  In denying interlocutory relief of its decision, the District Court stated that an interlocutory appeal would not "materially advance the litigation's termination," but would "result in the kind of piecemeal,

---

[11] *See e.g., Picard v. Blumenthal,* No. 11-Civ-04293 (JSR) (S.D.N.Y. June 24, 2011), ECF No. 2 (Milberg LLP); *Picard v. Goldman*, No. 11-Civ-04959 (JSR) (S.D.N.Y. July 19, 2011), ECF No. 2 (Pryor Cashman LLP); *Picard v. Hein*, No. 11- Civ-04936 (JSR) (S.D.N.Y. July 19, 2011), ECF No. 1-1 (Dentons US LLP).

[12] *See e.g., Picard v. Blumenthal*, No. 11-Civ-04293 (JSR) (S.D.N.Y. Nov. 11, 2011), ECF No. 15-1 (Milberg LLP); *Picard v. Goldman*, No. 11- Civ-04959 (JSR) (S.D.N.Y. Jan. 4, 2014), ECF No. 24 (Pryor Cashman LLP); *Picard v. Hein*, No. 11-Civ-04936 (JSR) (S.D.N.Y. Jan. 4, 2014), ECF No. 19 (Dentons US LLP).

[13] *See supra* note 7. 44 of the 57 Movants listed in Schedule 1 to the Motion to Intervene ("Schedule 1") participated via motions to dismiss or joinders in support of those motion to dismiss as filed in the following four avoidance actions: *Picard v. Greiff*, No. 11 Civ. 3775 (JSR); *Picard v. Blumenthal*, No. 11 Civ. 4293 (JSR); *Picard v. Goldman*, No. 11 Civ. 4959; *Picard v. Hein*, No. 11 Civ. 4936 (JSR). A chart listing Movants' participation in prior briefings before this Court and the District Court is annexed as Exhibit B of the Cremona Declaration.

[14] 11 of the 57 Movants listed in Schedule 1 participated in the briefings related to the Antecedent Debt Decision. *See* Exhibit B.

interminable litigation that is the bane of those jurisdictions that foolishly lack a final judgment

rule. . . by which a district court's interim rulings may not normally be appealed until the case is

over and final judgment rendered." *Antecedent Debt Interlocutory Denial,* 987 F. Supp. 2d at

311.

If that was not enough, Movants asserted—for the third time—the exact same arguments

in the Omnibus Good Faith Motions to Dismiss before this Court.[15] Once again, they were

rejected. This Court was unequivocally clear when it held that, "[t]hose moving defendants that

participated in the withdrawal of the reference of the antecedent debt/value issue have had their

day in court and Judge Rakoff's decisions are law of the case." *Omnibus Good Faith Decision*,

531 B.R. at 466 (citing *Antecedent Debt Decision*, 499 B.R. at 430).[16]

Movants insist that the analyses of the Purported Value Defenses completed by this Court

and the District Court were not sufficiently substantive, but the voluminous record speaks for

itself. In fact, this Court noted its extensive analysis of the Purported Value Defenses in its

Omnibus Good Faith Decision. *See* Intervention Hearing Trans. at 27:20-24 ("I spent 16 pages

talking about antecedent debt and I'm just not going to reconsider that unless something new has

---

[15] 32 of the 57 Movants listed in Schedule 1 participated in the briefings related to the Omnibus Good Faith Decision. *See* Exhibit B.

[16] It should be noted that Movants also seek to argue that they should receive adjustments for the time during which they were invested with BLMIS. Several Movants previously filed objections to the Trustee's *Motion for an Order Affirming Trustee's Calculations of Net Equity and Denying Time-Based Damages*, arguing that the Trustee has to take into account the effects of inflation, constant dollar, or time value of money when calculating "value" in terms of customers' net equity claims. While this briefing addressed the calculation of net equity in the claims context, at least 34 of the 57 Movants listed in Schedule 1 either filed objections or participated therein. This Court held that the Trustee was not required to make adjustments to customer claims to account for any form of time-based damages. The Second Circuit affirmed, and the Supreme Court denied certiorari. *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.),* 496 B.R. 744, 755 (Bankr. S.D.N.Y. 2013) *aff'd sub nom.*, 779 F.3d 74 (2d Cir. 2015) *cert. denied sub nom. Peshkin v. Picard*, No. 14A1099, 2015 WL 4468041 (U.S. Oct. 5, 2015). As the District Court has observed, the calculation of net equity is the same in both the claims and avoidance context. *See Antecedent Debt Decision,* 499 B.R. at 420 ("[A] customer's net equity and the amounts sought in avoidance and recovery proceedings (assuming the customer's good faith) are two sides of the same coin.")

been decided that's highly persuasive or mandatory authority.")  The reality is that Movants want to take over the Cohen Proceeding, displacing Mr. Cohen and substituting Movants and their five law firms instead.  Intervention under Rule 24 should not be used "to breathe life" into nonexistent issues already fully addressed and decided.  *Sanders v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 68 Civ. 3522, 1970 WL 224, at *2-3 (S.D.N.Y. June 29, 1970) (citing *Fuller v. Volk,* 351 F. 2d 323, 328 (3d Cir. 1965)) (denied intervention as moot where motion to dismiss granted against original named plaintiff).

Moreover, Movants fail to acknowledge that Mr. Cohen was party to the withdrawn proceedings before the District Court which culminated in the Antecedent Debt Decision. Therefore, Mr. Cohen—like Movants—has already "had his day in court" and cannot ask this Court to revisit the Purported Value Defenses.  *See, e.g., United States v. Ben Zvi*, 242 F.3d 89, 95 (2d Cir. 2001) (holding that "[t]he mandate rule 'compels compliance on remand with the dictates of the superior court and forecloses relitigation of issues expressly or impliedly decided by the  . . . court" (quoting *United States v. Bell*, 5 F.3d 64, 66 (4th Cir. 1993)).  *See also United States v. Pineiro*, 470 F.3d 200, 205 (5th Cir. 2006) ("The [mandate] rule is essential to the orderly administration of justice, as it is aimed at preventing obstinate litigants from repeatedly asserting the same arguments and at discouraging opportunistic litigants from appealing repeatedly in the hope of acquiring a more favorable appellate panel.").  The Motion to Intervene therefore is procedurally barred on this additional ground—the Purported Value Defenses cannot be revisited by this Court.[17]

---

[17] Although "courts may depart from the law of the case and reconsider [an] issue for 'cogent' and 'compelling' reasons such as 'an intervening change in controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice'," *United States v. Quintieri*, 306 F.3d 1217, 1230 (2d Cir. 2002) (quoting *United States v. Tenzer*, 213 F.3d 34, 39 (2d Cir. 2000)), no such compelling reasons are present here.  *See North River Ins. Co. v. Philadelphia Reinsurance Corp.*, 63 F.3d 160 (2d Cir. 1995) (holding that "a court may depart from

## II.    Movants Are Not Entitled To Intervention as a Matter of Right

Even if Movants' request for intervention were procedurally proper, which it is not, Movants cannot satisfy the standard for intervention as a matter of right.  Rule 24 authorizes intervention as a right only when the movant can demonstrate: (i) an interest relating to the property or transaction that is the subject of the action; (ii) that disposing of the action could, as a practical matter, impede the movant's ability to protect its interests; (iii) that the application was timely filed; and (iv) that the interest is not adequately represented by existing parties to the action.  *See* Fed. R. Civ. P. 24(a).  *See also United States v. New York,* 820 F.2d 554, 556 (2d Cir.1987) (citing *Restor–A–Dent Labs., Inc. v. Certified Alloy Products, Inc.,* 725 F.2d 871, 874 (2d Cir.1984)).

Movants bear the burden of establishing the right to intervene.  Movants also must satisfy all four criteria specified in the rule.  *Floyd v. City of New York*, 770 F.3d 1051, 1057-58 (2d Cir. 2014) ("[F]ailure to satisfy any one of these four requirements is a sufficient ground to deny the application.") (internal citation and quotation omitted); *Credit Suisse Sec. (USA) LLC v. Tracy*, No. 14 Civ. 8568, 2015 WL 170241, at *3 (S.D.N.Y. Jan. 8, 2015); *Louis Berger Grp., Inc. v. State Bank of India*, 802 F. Supp. 2d 482, 487 (S.D.N.Y. 2011).  In this case, Movants fail to satisfy even a single requirement.

---

the law of the case where a fundamental change in the law impacts directly upon the parties' rights and obligations" but cautioning that "the law of the case should be disregarded only when the court has a clear conviction of error with respect to a point of law on which its previous decision was predicated" (internal quotations and citations omitted)).  Further, "[t]o determine whether an issue remains open for reconsideration on remand, the trial court should look to both the specific dictates of the remand order as well as the broader 'spirit of the mandate.'" *Ben Zvi*, 242 F.3d at 95 (quoting *United States v. Kikumura*, 947 F.2d 72, 76 (3d Cir. 1991)).  Here, the District Court remanded the Cohen Proceeding, along with many other adversary proceedings to this Court, after having withdrawn the reference made to this Court "in order to undertake the 'significant interpretation' of securities law necessary to resolve" the Purported Value Defenses raised by Mr. Cohen and others.  *Flinn*, 463 B.R. at 285.  Given the context in which the Cohen Proceeding was remanded back to this Court, the Purported Value Defenses are not subject to "reconsideration" before this Court.

### A.    Movants Do Not Have a Direct and Substantial Interest in the Cohen Proceeding

Movants do not have a direct or substantial interest in the Cohen Proceeding.  They have no interest in Mr. Cohen's BLMIS account nor in any transfers made therefrom.  They similarly do not share in any liability that Mr. Cohen may ultimately be found to have for the transfers he received.  In short, Movants have no protectable interest in the Cohen Proceeding at all.

For an interest to be "cognizable" under Rule 24, it must be "direct, substantial, and legally protectable." *Credit Suisse,* 2015 WL 170241, at *3 (citing *Floyd,* 770 F.3d at 1060).  As the Second Circuit has held, "[a]n interest that is remote from the subject matter of the proceeding, or that is contingent upon the occurrence of a sequence of events before it becomes colorable, will not satisfy the rule." *United States v. Peoples Benefit Life Ins. Co.*, 271 F.3d 411, 415 (2d Cir. 2001) (quoting *Washington Elec. Coop., Inc. v. Mass. Mun. Wholesale Elec. Co.,* 922 F.2d 92, 97 (2d Cir.1990)); *St. Johns Univ. v. Bolton*, 450 Fed. App'x 81, 83 (2d Cir. 2011); *Restor–A–Dent Dental Labs., Inc. v. Certified Alloy Prods., Inc.,* 725 F.2d 871, 874 (2d Cir.1984) ("[S]uch an interest must be direct, as opposed to remote or contingent.").[18]

For example, in *Rodriguez v. Pataki,* while the potential intervenor had a "global interest" in election issues, he had "little to no interest" in the challenges to the redistricting plans adopted by the New York Legislature in 2002 at the center of the matter in which he sought to intervene. 211 F.R.D. 215, 218 (S.D.N.Y. 2002).  The potential intervenor simply "fail[ed] to identify any interest of his that might be impaired by the disposition of this action." *Id.*  The District Court

---

[18] Movants cite to *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.),* 773 F.3d 411 (2d Cir. 2015), to assert that the phrase "relating to" an interest under Rule 24(a) should be interpreted as broadly as the phrase "related to" a securities contract under Section 546(e) of the Bankruptcy Code.  However, that case dealt with the applicability of the safe harbor under Section 546(e) and the definition of a securities contract therein. Movants do not—and cannot—provide any support for their far-fetched position the analysis in the context of Section 546(e) should be similarly applied here in the context of a Rule 24 motion to intervene.

further noted that the potential intervenor was also free to bring an independent action to address

his specific election issues.  *Id.  See also In re Platinum & Palladium Commodities, Litig.*, No.

10 Civ. 3617, 2014 WL 3500655, at *7 (S.D.N.Y. July 15, 2014) (finding interest too speculative

where it is contingent on obtaining a judgment and showing the judgment was covered by the

policies).

Nowhere in the Motion to Intervene do Movants assert that they have a "direct,

substantial, and legally protectable" interest in the Cohen Proceeding—nor can they—for the

simple reason that the matter will be limited to Mr. Cohen's Purported Value Defenses (if any

remain to be adjudicated) as to the specific transfers made from his BLMIS account, and what

Mr. Cohen may have done with the proceeds of those transfers.  Movants have no "direct,

substantial, and legally protectable" interest in either Mr. Cohen's BLMIS account or Mr.

Cohen's liability as to the transfers from that account.  Instead, Movants' "direct, substantial, and

legally protectable" interests are in their individual avoidance actions, and any Purported Value

Defenses related to Movants' BLMIS accounts will be addressed therein.  *Cf. Brennan v. N.Y.C.

Bd. Of Educ.,* 260 F.3d 123, 131 (2d Cir. 2001) (granted intervention because movants'

employment status would be directly affected by the proposed settlement agreement); *Berroyer

v. United States*, 282 F.R.D. 299, 304 (E.D.N.Y. 2012) (granted intervention because worker's

compensation carrier's claims directly arose out of the "same transaction and occurrence that is

the subject of the instant case").

To the extent Movants have raised novel arguments in an attempt to manufacture an

interest in the Cohen Proceeding, those arguments cannot be addressed by the Court.  *See*

Intervention Hearing Trans., at 45:18-23 (This Court noted: "Another point nobody raised, which

14

you should bear in mind, is if an issue doesn't arise in the Cohen case . . . I'm not going to hear

other parties on that issue.  It's not going to be decided.  So bear that in mind.").

### B.    Resolution of Mr. Cohen's Action Will Not Adversely Impede Movants' Interests in Their Own Actions

Movants go to great lengths in an attempt to manufacture a different standard under Rule

24, incorrectly arguing that intervention as of right is required if "there is a substantial likelihood

that the claims and interests of the proposed intervenors . . . may be adversely affected at least by

principles of *stare decisis,* arising out of the final judgment to be heard in this case."  Motion to

Intervene at 7 citing *Oneida Indian Nation of Wisconsin v. State of N.Y.*, 732 F.2d 261, 265 (2d

Cir. 1984).  However, "the apprehended force of *stare decisis* will not support intervention as of

right in all cases," including in the Cohen Proceeding, which deals with facts unique to that

matter.  *Id.* at 266.  *See e.g., United States v. Nolan*, 136 F.3d 265, 269 (2d Cir. 1998) ("The

principle of *stare decises* [sic] is applicable only where the facts in the two actions are the

same.") (internal citation omitted).

The cases cited by Movants are distinguishable on this basis.  For example, Movants rely

heavily on the *Oneida* decision in which the plaintiffs were Indian tribes who brought an action

to declare their title to and recover five million acres of land in New York State. 732 F.2d at 264.

The Second Circuit permitted other tribes to intervene as of right on the grounds that an adverse

decision could, through *stare decisis,* preclude the intervenors from vindicating their ownership

interests in the very same land, in a later suit.  The Second Circuit ruled that *stare decisis* only

applies because of "*the unusual circumstances of this case* where the intervenors' ability to

protect their interests will be impaired or impeded as 'a practical matter' by a judgment entitling

the plaintiffs to recover the disputed lands." *Id.* at 266 (emphasis added).  *See also N.Y. Pub.

Interest Research Grp., Inc. v. Regents of Univ. of State of N.Y.,* 516 F.2d 350, 352 (2d Cir.

1975) (trade association of pharmacists granted intervention in litigation challenging ban on advertising of prescription drug prices given their direct interest in the "continued existence of independent local drugstores").

By contrast, consideration of the Motion to Intervene will not decide the ownership of a particular piece of property in which Movants assert an interest. Instead, the Cohen Proceeding involves a BLMIS account in which Movants have no interest or potential liability. And if Movants' unsupported fears of a potential precedential effect were given any credence, then the intervention standards would be rendered so impractically broad that any litigant could intervene in any litigation that could possibly impact a position they may or may not take in the future. That cannot be the case.

Finally, Movants incorrectly assert that their economic interests will be impeded by the Cohen Proceeding, thus making intervention appropriate. However, "[t]he mere fact that a lawsuit may impede a third party's ability to recover in a separate suit ordinarily does not give the third party a right to intervene." *Liberty Mut. Ins. Co. v. Treesdale, Inc.*, 419 F.3d 216, 224 (3d Cir. 2005). The cases cited by Movants are inapposite because the potential intervenors had interests that were "direct, substantial, and legally protectable," which is not the case for Movants. *See B. Fernandez & Hnos., Inc. v. Kellogg USA, Inc.,* 440 F.3d 541 (1st Cir. 2006) (intervenor had a direct interest because it was assigned defendant's rights and obligations under the disputed contract); *Glancy v. Taubman Ctrs, Inc.,* 373 F.3d 656, 664-677 (6th Cir. 2004) (limited partnership was a "necessary party" under analysis of the joinder provisions under Rule 19, not Rule 24).

The Second Circuit has held that any indirect benefit or purported harm to a party from the outcome of a lawsuit is insufficient to satisfy this prong. *See Crown Financial Corp.* v.

*Winthrop Lawrence Corp.,* 531 F.2d 76, 77 (2d Cir. 1976) (finding no interest in underlying

action where movant had purchased land with a lien upon it, and sought to intervene in the suit

giving rise to the lien); *Restor-A-Dent Dental Labs.,* 725 F.2d at 872-76 (finding no interest in

underlying breach of contract suit where insurance company sought to intervene to determine

what portion of damages it would owe if defendant was held liable); *see also Chevron Corp. v.

Donziger*, No. 11 Civ. 0691, 2011 WL 2150450, at *2-3 (S.D.N.Y. May 31, 2011) (finding no

interest where lawyer sought contingency fees recoverable if his client prevailed).

Movants will have an opportunity to argue the appropriateness of the Purported Value

Defenses as applied to their own BLMIS accounts and transfers, in their individual adversary

proceedings, consistent with the Litigation Procedures Order, *i.e.*, after discovery and mediation

of their individual cases.  As a result, the Cohen Proceeding will not sufficiently impede

Movants' interests in their own actions.

### C.    The Motion to Intervene Is Not Timely

When considering timeliness under Rule 24, courts examine (a) the length of time the

movant knew or should have known about his interest in the proceedings, (b) the prejudice to the

existing parties from the delay, (c) the prejudice to the applicant if the motion is denied, and (d)

the presence of any unusual circumstances weighing for or against a finding of timeliness.

*Farmland Dairies v. Comm'r of N.Y State Dep't of Agric. & Mkts.*, 847 F.2d 1038, 1044 (2d Cir.

1988) (denying leave to intervene where movants should have sought to participate at an earlier

stage in the proceedings).

### 1.    Movants Moved to Intervene Months After Notice of Trial

Movants did not act in a timely manner.  Movants submitted their initial letter requesting

leave to intervene in the Cohen Proceeding on September 24, 2015. While Movants claimed that

they moved as soon as they learned the Cohen Proceeding was going to trial, sending an email to

the Trustee's counsel on September 11, 2015, the first notice of the final pre-trial conference in

the Cohen Proceeding was actually filed nearly *five* months earlier in the main bankruptcy docket

on April 29, 2015 (Adv. Pro. No. 08-01789, ECF No. 9897).  Subsequent notices were also filed

on May 18, 2015, July 15, 2015, and August 28, 2015 (ECF Nos. 10011, 10668, 11154,

respectively).  Rather than promptly making the request to intervene immediately after any one

of these earlier filings, Movants chose to wait until the weeks before trial.

Movants attempt to excuse their lateness by claiming the main bankruptcy docket is

difficult to follow as it "reflects activity in literally hundreds of cases, many on dramatically

different time tracks." Motion to Intervene at 16.  However, Movants neglect to acknowledge

that they are represented by <u>five</u> different "well-financed and well-organized" (Motion to

Intervene at 17) law firms, all of which are fully capable of monitoring one bankruptcy docket.

What's more, the notices were filed in the main bankruptcy docket in accordance with the Order

Directing Duplicate Filings, which was specifically entered at Movants' request so that they

would be able to follow what was happening in all of the adversary proceedings.  *See* February

14 Hearing Trans. at 11:11-22 and 40:4-23.  In addition, as registered accountholders on the Case

Management/Electronic Case File ("CM/ECF") for the Bankruptcy Court, and pursuant to the

Order Establishing Notice Procedures and Limiting Notice, *In re Madoff Sec.,* Adv. Pro. No. 08-

01789 (Bank. S.D.N.Y. Dec. 5, 2011), ECF No. 4560, counsel from all five law firms consented

to electronic service of all court filings in this liquidation.  Movants' claimed ignorance of the

earlier trial notices does not transform their delayed request to intervene into a timely one.

### 2.    The Motion to Intervene Will Prejudice the Trustee

Movants' attempt to intervene at this late date only will prejudice the Trustee and bypass

the Litigation Procedures Order, which was put in place to provide for the orderly administration

of the adversary proceedings, and prevent such an abuse of process.  With over 600 adversary

proceedings still pending before this Court, the Trustee must be able to move cases forward in

accordance with the Litigation Procedures Order.  The Court should not allow Movants to further

their own interests at the expense of the administration of the estate as a whole. They should not

be permitted to participate in an action where they have no interest to make arguments already

made and rejected.[19]  Movants must wait to raise the Purported Value Defenses under Section

548(c) until the appropriate time, *i.e.*, after discovery and mediation of their individual cases.

### 3.    Denial of the Motion to Intervene Will Not Prejudice Movants

Movants fare no better with regard to the final two timeliness factors.  As previously

discussed, Movants are named parties in their own individual adversary proceedings.  These

proceedings are now in different stages of discovery, years after Movants chose to delay the

cases by participating in motions to withdraw, consolidated issue briefings, and motions to

dismiss.  Contrary to Movants' outlandish accusations, the Trustee did not handpick the Cohen

Proceeding to "avoid a fight with well-financed and well-organized adversaries."  Motion to

Intervene at 17.  Mr. Cohen, unlike Movants, chose not to delay his case.  He chose not to file

multiple motions, but instead to respond to the Trustee's Complaint and to comply with a

discovery schedule that was completed ahead of Movants.  Mr. Cohen and the Trustee engaged

in mediation, which ultimately failed, and his case is now properly before the Court pursuant to

the Litigation Procedures Order.

There is no prejudice to Movants if the Motion to Intervene is denied.  Movants

acknowledged the same when asked by this Court, "why can't you raise [the Purported Value

---

[19] See February 14 Hearing at 41:9-15 ("[T]he problem is I have 1,000 cases that have to be tried and maybe another 1,000 claims objections, or whatever the number is, that have to be resolved, and what you're really suggesting and what caught my ear is when you said don't try the case, it's scheduled for trial, is then all these proceedings can't move any faster than the slowest case.").

Defenses] in your own cases?" and Movants admitted, "Well, we could." Intervention Hearing

Trans. at 8:8-10. This Court further indicated that since Movants raised the Purported Value

Defenses in their own cases, "when, [sic] and if your cases are tried and you lose, you can raise

that issue." *Id.* at 9:3-5.

### 4.    Unusual Circumstances Support Denial of the Motion to Intervene

Finally, given that the Purported Value Defenses have been briefed, argued, and decided

multiple times by this Court and the District Court, and given the Trustee's need to proceed

efficiently with his avoidance actions, there are unusual circumstances that would weigh against

any finding of timeliness. Movants' intervention would only force the parties to "relitigate

issues which have already been decided after lengthy proceedings," *United States v. Yonkers Bd.

of Educ.*, 801 F.2d 593, 596 (2d Cir. 1986), and force litigation that would cause substantial

delay for net loser victims still waiting for the return of their principal. *Garrity v. Gallen*, 697

F.2d 452, 457 (1st Cir. 1983). As this Court has noted several times, it is simply not practical to

proceed in this manner. *See* February 14 Hearing Trans. at 41:9-15.

### D.    Movants' Interests are Adequately Represented

Even if Movants were able to demonstrate they had an interest in the Cohen Proceeding,

which they cannot, that interest is adequately represented by Mr. Cohen. The Second Circuit has

"demanded a more rigorous showing of inadequacy in cases where the putative intervenor and a

named party have the same ultimate objective." *Butler, Fitzgerald & Potter v. Sequa Corp.*, 250

F.3d 171, 179 (2d Cir. 2001). "Where there is an identity of interest, as here, the movant to

intervene must rebut the presumption of adequate representation by the party already in the

action." *Id.* This presumption "attaches in the absence of 'evidence of collusion, adversity of

interest, nonfeasance, or incompetence.'" *St. John's Univ.*, 450 Fed. App'x at 84 (quoting *Butler,* 250 F.3d at 180).

Movants cannot rebut the presumption that Mr. Cohen adequately represents their interests because they all share the same ultimate objective, the dismissal of the Trustee's avoidance actions for which they are all named defendants. Movants argue that Mr. Cohen does not have the financial ability to litigate the Purported Value Defenses through an appeal to the Second Circuit (Motion to Intervene at 11), but there is absolutely nothing in the trial record regarding Mr. Cohen's inability to prosecute such an appeal. In fact, the record suggests the opposite. The evidence proffered by Mr. Cohen at trial, namely his tax returns and an affidavit submitted by Mr. Cohen's accountant, R. Paul Speece, show that Mr. Cohen earned $4,132,642 in taxable income between 1996 and 2002.[20]

Movants also argue that Mr. Cohen is not motivated to appeal to the Second Circuit but counsel for Mr. Cohen specifically told this Court, "We're going to go up to Judge Rakoff. . . And then I'm going to the Second Circuit. And I don't know how long we can go on with this case. I mean, but we will. We now will because we'll do it for them as well as for ourselves." Intervention Hearing Trans. at 21:8-16. *See also* Transcript of Hearing Re: Pretrial Conference, at 7:1-5, *Picard v. Cohen,* Adv. Pro. No. 10-04311 (SMB) (Bankr. S.D.N.Y. June 2, 2015).

There is no basis for intervention as of right because Movants lack a legally protectable interest in the Cohen proceeding. Even if that was not the case, Movants' interests are adequately protected by Mr. Cohen.[21]

---

[20] *See* Defendant's Exhibit No. 7, as submitted as part of the trial record in the Cohen Proceeding.

[21] Not only are Movants' interests adequately represented by Mr. Cohen, but their interests have been adequately represented by their own counsel in prior briefings. A chart listing arguments raised by Movants in prior briefings before this Court and the District Court is annexed as Exhibit C to the Cremona Declaration.

### III.    Movants Are Not Entitled To Permissive Intervention

Movants further argue that, if they are not entitled to intervene as a matter of right, the Court should grant them permissive intervention. *See* Motion to Intervene at 13-18. However, permissive intervention is not warranted here either. Bankruptcy Rules 7024 and 2018 provide for permissive intervention in appropriate circumstances, but "the extent to which permissive intervention will be permitted is limited." *In re Ionosphere Clubs, Inc.*, 101 B.R. 844, 853 (Bankr. S.D.N.Y. 1989). Moreover, "[a] court should be discriminating in determining whether permissive intervention is appropriate." *Id.* at 854 (denying permissive intervention where, among other things, the interests of the intervenor would already be represented adequately by existing parties).[22]

Movants cannot meet either of the two considerations in Rule 24(b): a timely motion, and a claim or defense that shares a common question of law or fact with the main case. *See* Fed. R. Civ. P. 24(b)(l). First, the timeliness considerations set out in Section II.3 "apply with even greater force to permissive intervention." Wright & Miller, 7C Fed. Prac. & Proc. § 1916 (3d ed.). *See R & G Mortgage Corp. v. Fed. Home Loan Mortgage Corp.*, 584 F.3d 1, 8 (1st Cir. 2009). Second, Movants present no common claims or defenses because, as discussed at length in Sections II.1 and 2, they have no cognizable interest in the Cohen Proceeding.

Further, the ability of another forum to resolve the issues the movant wishes to address weighs against permissive intervention. *See e.g., In re Bank of New York Derivative Litig.*, 320 F.3d 291, 301 (2d Cir. 2003) (affirming denial of intervention where shareholders' interests will

---

[22] Further, and contrary to Movants' assertions (*see* Motion to Intervene at 15), seeking to intervene on a permissive basis does not avoid the necessity of demonstrating a lack of adequate representation by other parties to the proceeding. *See, e.g., U S. Postal Serv. v. Brennan*, 579 F.2d 188, 191-92 (2d Cir. 1978); *In re Pub. Serv. Co. of N.H.*, 88 B.R. 546, 551 (Bankr. D. N.H. 1988); *In re Hyde Park P'ship*, 73 B.R. 194, 197 (Bankr. N.D. Ohio 1986).

be adequately protected in parallel state court proceedings); *Lipsett v. United States*, 359 F.2d

956, 960 (2d Cir. 1966) (noting that "[e]ach taxpayer [ha]d available a remedy by separate action

in a proper forum if he met the statutory requirements for a tax suit."); *Union Switch & Signal,*

*Inc. v. St. Paul Fire & Marine Ins. Co.*, 226 F.R.D. 485, 492 (S.D.N.Y. 2005) (finding no

impairment because movant could protect interest in another forum); *In re Pulp Finish 1 Co.,*

No. 12-13774 (SMB), 2014 WL 201482, at *9 (Bankr. S.D.N.Y. Jan. 16, 2014) (denying

permissive intervention where potential intervenor may pursue his purported claims in a separate

adversary proceeding pending in Pennsylvania in which he was a named plaintiff).

Here, Movants' concerns can be addressed in the context of their own avoidance actions,

and, as such, permissive intervention should not be granted.

## IV.    Movants Should Not be Permitted to Submit *Amicus* Briefs

Movants alternatively seek to participate as *amici*.  But that is not appropriate because

they are parties to avoidance actions and their briefs will merely echo the arguments of the other

similarly situated defendants.  "An amicus is not a party to the litigation, but participates only to

assist the court." *U.S. v. Gotti*, 755 F. Supp. 1157, 1158 (E.D.N.Y. 1991); *see also Auto. Club of*

*N. Y., Inc. v. The Port Authority of N. Y. and N. J.*, No. 11 Civ. 6746, 2011 WL 5865296, at *2

(S.D.N.Y. Nov. 22, 2011) ("The usual rationale for amicus curiae submissions is that they are of

aid to the court and offer insights not available from the parties.") (citing *United States v. El-*

*Gabrowny*, 844 F. Supp. 955, 957 n.1 (S.D.N.Y. 1994); *In re Johns-Manville Corp.,* 36 B.R.

743, 759 (Bankr. S.D.N.Y.1984).

Amicus status is not proper where the movant's interests are the same as those of a

litigant.  In fact, the District Court previously denied a motion for amicus status because the

moving party was a defendant in another adversary proceeding brought by the Trustee.  *See*

*Picard v. Greiff*, 797 F. Supp. 2d 451, 452 (S.D.N.Y. 2011).  As the District Court explained,

"the partiality of an amicus is a factor to consider in deciding whether to allow participation

[and] [h]ere, because Mr. Velvel is actually a party to another adversary proceeding brought by

Irving Picard . . . Mr. Velvel could not provide the Court with neutral assistance in analyzing the

issues before it." *Id.* (internal citation omitted). *See also United States v. Ahmed*, 788 F. Supp.

196, 198 n. 1 (S.D.N.Y. 1992) (denying amicus status to movant on behalf of defendants where

defendant's interests were adequately represented by counsel).

## **CONCLUSION**

For the foregoing reasons, the Trustee respectfully requests that the Court deny the

Motion to Intervene in its entirety.

Date:  October 29, 2015            By: */s/ David J. Sheehan*            
       New York, New York

**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Email: dsheehan@bakerlaw.com
Nicholas J. Cremona
Email: ncremona@bakerlaw.com
Keith R. Murphy
Email: kmurphy@bakerlaw.com
Amy E. Vanderwal
Email: avanderwal@bakerlaw.com
Anat Maytal
Email: amaytal@bakerlaw.com

*Attorneys for Irving H. Picard, Trustee for the*
*Substantively Consolidated SIPA Liquidation of*
*Bernard L. Madoff Investment Securities LLC*
*and the estate of Bernard L. Madoff*