**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------------X

SECURITIES INVESTOR PROTECTION
CORPORATION,

             Plaintiff,

     v.

BERNARD L. MADOFF INVESTMENT SECURITIES,
LLC

             Defendant.

Adv. Pro. No. 08-1789 (SMB)

SIPA LIQUIDATION

(substantively consolidated)

------------------------------------------------------------------------X

In re:

BERNARD MADOFF,

             Debtor.

------------------------------------------------------------------------X

IRVING H. PICARD, Trustee for the Liquidation of:
Bernard L. Madoff Investment Securities LLC,

             Plaintiff,

     v.

ANDREW H. COHEN,

             Defendant.

Adv. No. 10-04311 (SMB)

------------------------------------------------------------------------X

## REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION
## TO INTERVENE ON LIMITED COMMON LEGAL ISSUES

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................................. ii

1.  The Trustee's first argument that Customers intervention motion is
    "procedurally improper" misstates both the facts and the law, and has no merit...............2

2.  The Trustee fails to rebut Customers' argument that they are entitled  to
    intervene as of right. ..........................................................................................................7

    a.  The likelihood that a Second Circuit decision on the "value" defense
        will "as a practical matter" bind Customers satisfies the "interest" test.................7

    b.  Customers' motion to intervene is timely. ............................................................11

    c.  The Trustee fails to rebut the evidence in the record that Mr. Cohen
        cannot "adequately represent" the interests of Customers through
        proceedings in the district court and on appeal.....................................................14

3.  The Trustee presents no meaningful arguments against permissive intervention. ...........15

4.  The Trustee's law of the case argument is also unavailing. ..............................................16

5.  The Trustee's opposition even to *amicus* briefing reveals his real motives. .....................16

Conclusion ..................................................................................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ceribelli v. Elghanayan*,
No. 91 Civ. 3337, 1994 U.S. Dist. LEXIS 13681 (S.D.N.Y. Sept. 26, 1994) ..........................5

*Delaware Trust Co. v. Wilmington Trust, N.A.*,
534 B.R. 500 (S.D.N.Y. 2015)..........................................................................................11

*Hartford Fire Ins. Co. v. Mitlof*,
193 F.R.D. 154 (S.D.N.Y. 2000) .........................................................................................9

*Kruse v. Wells Fargo Home Mortg., Inc.*,
No. 02-CV-3089, 2006 U.S. Dist. LEXIS 26092 (E.D.N.Y. May 3, 2006) ............................5

*N.J. Carpenters Health Fund v. Residential Capital, LLC*,
No. 08-Civ. 8781, 2010 U.S. Dist. LEXIS 135261 (S.D.N.Y. Dec. 21, 2010) ......................11

*N.Y. Pub. Interest Research Grp. v. Regents of the Univ.of the State of N.Y.*,
516 F.2d 350 (2d Cir.1975)................................................................................................11

*Nuesse v. Camp*,
385 F.2d 694 (D.C. Cir.1967) ..............................................................................................9

*Oneida Indian Nation of Wis. v. State of N.Y.*,
732 F.2d 261 (2d Cir. 1984).................................................................................................8

*Panzirer v. Wolf*,
No. 79-Civ. 3445, 1980 U.S. Dist. LEXIS 11146 (S.D.N.Y. Apr. 21, 1980)..........................6

*Picard v. Fishman*,
773 F.3d 411 (2d Cir. 2014), *cert. denied,* 135 S. Ct. 2859 (2015) .......................................10

*Restor-A-Dent Dental Labs, Inc. v. Certified Alloy Prods., Inc.*,
725 F.2d 871 (2d Cir. 1984)...............................................................................................10

*Rodriguez v. Pataki*,
211 F.R.D. 215 (S.D.N.Y. 2002) ........................................................................................10

*Stone v. First Union Corp.*,
371 F.3d 1305 (11th Cir. 2004) ...........................................................................................9

*United States v. Hooker Chems. & Plastics Corp.*,
749 F.2d 968 (2d Cir. 1984)...............................................................................................10

*United States v. Oregon,*
   839 F.2d 635 (9th Cir. 1988) ...............................................................................9

*United States v. People's Benefit Life Ins. Co.,*
   271 F.3d 411 (2d Cir. 2001)...............................................................................10


**Statutes**

11 U.S.C.S. § 741(7)(A)(xi)......................................................................................10


**Other Authorities**

7C Wright, Miller & Kane, Fed. Prac. and Proc.: Civil (3d ed.) § 1916 ......................................12

Fed. R. Civ. P. 24.......................................................................................... *passim*

Fed. R. Civ. P. 24(a) ..................................................................................2, 9, 10

Fed. R. Civ. P. 24(b) ..........................................................................................16

Before discussing the shortcomings in the Trustee's opposition papers, Customers ask that the Court consider a critical threshold question:  Why does the Trustee oppose Customers' limited intervention in this action?  It cannot be that the Trustee would be prejudiced in any legally cognizable way.  The *Cohen* trial is over and the evidentiary record is closed.  Customers' intervention will be limited to briefing the "value" defense, a legal issue, based on the stipulated record in the case.  The Trustee cannot identify a single way in which he would be prejudiced if he had to respond to such briefing.  *See* Section 2(B), below.

The Trustee's position cannot be explained by some general policy to oppose unified briefing on important issues in the Madoff Securities liquidation proceedings.  Indeed, the Trustee and SIPC encouraged or consented to consolidated briefing and adjudications of <u>seven</u> important issues that cut across multiple adversary proceedings – including elements of this very issue considered in prior proceedings in the District Court and this Court.  *See* Customers' Memorandum of Law (Dkt. No. 61-1) at 15 ("Mem.").[1]

Rather, the Trustee insists that intervention is inappropriate because the "value" defense has been "definitively" decided by those courts.  If the Trustee is so certain that the defense is meritless, he should not be troubled by Customers' intervention.  If he is correct that the ultimate outcome is assured, Customers' intervention is an opportunity for him to cement his position through a result that will, as a practical matter, finally bind Customers in the hundreds of active remaining lawsuits, far ahead of the individual schedules in those cases.

The likely (but unstated) explanation for the Trustee's opposition is that he would prefer to face only the opposition of a single underfunded defendant when this case is briefed and argued at all future stages through the inevitable appeal to the Second Circuit.  Unlike Mr.

---

[1] Capitalized terms used but not defined herein have the same meanings ascribed to them in Customers' Motion to Intervene on Limited Common Legal Issues (Dkt. No. 61).

Cohen, Customers, a group with hundreds of millions of dollars at stake, have the financial

resources and motivation to assure the fullest record for final determinations of the key issues,

whether here, in the district court or at the court of appeals.

The Trustee musters no plausible defense to Customers' motion.  His opposition focuses

on the merits of the underlying "value" defense, rather than addressing the simple issues

presented to the Court:  Do the Customers have a right under Rule 24 to intervene in the *Cohen*

action, or have they shown a common issue of law sufficient to allow permissive intervention?

The Second Circuit has emphasized that the substantive merit of proposed intervenors' position –

the bulk of the Trustee's response – is irrelevant to the Rule 24(a) analysis.  *See* Mem. at 2.  The

Trustee cites no law to the contrary.

The parameters and nature of the "value" defense are present in every remaining

clawback claim against an innocent customer of Madoff Securities.  The overarching

consideration – never plausibly addressed by the Trustee – is the strong likelihood that a final

appellate ruling on this defense will, "as a practical matter" (to use the words of Rule 24(a)) bind

all such innocent customers.  While Customers differ from the Trustee as to scope of the "value"

defense, a motion to intervene is not the place to debate the merits of that issue.  Rather,

intervention concerns only the ability to be heard in a meaningful way on the overlapping issues.

The Trustee should not be permitted to pick off an underfunded defendant and silence those with

the most at stake from presenting the "value" defense at each level of the judicial and appellate

process.

**1.**      **The Trustee's first argument that Customers intervention motion is "procedurally**
         <u>**improper" misstates both the facts and the law, and has no merit.**</u>

The Trustee first bases his opposition to intervention on a vague assertion that the motion

is "procedurally improper."  The Trustee does not tie this argument to any statute or rule, but

claims only that Customers are seeking to "bypass" and "circumvent" the District Court's earlier

adverse ruling on the "value" defense, concluding that it is an "abuse of process that [Customers]

are now attempting." Opp. at 7. This argument does not hold up to scrutiny.

Customers had no control over the progress of the *Cohen* case. The fact that this lawsuit

was the first of the Trustee's innocent customer actions to go to trial, and will likely be the first

to be considered on the merits on appeal, was controlled by the Trustee.

The Trustee claims that: "[t]he fact that Mr. Cohen chose to move forward with

discovery, mediation, and ultimately trial before this Court, <u>instead of delaying his case through</u>

<u>repeated motion practice before this Court and the District Court</u>, does not provide grounds for

intervention." Opp. at 2. (Emphasis added.) However, the Trustee provides no case law or

other support for his assertion that Customers' prior motions are relevant to the intervention

analysis.

Moreover, contrary to the Trustee's innuendo, the Customers' prior motions to dismiss

were not frivolous filings that were brushed aside *en masse*. To the contrary, Customers

succeeded on several issues (over the staunch opposition of the Trustee and SIPC), including

their Section 546(e) defense (after lengthy motion practice and the Trustee's unsuccessful

appeal), and dismissal of the Trustee's insufficiently pleaded claims to avoid unparticularized

subsequent transfers or alleged "obligations incurred" by Madoff Securities. The Court,

accordingly, should reject the Trustee's unsupported suggestion that Customers should be

penalized by denying their motion to intervene simply because they had the temerity to exercise

their right to test the Trustee's complaints in important pretrial proceedings.

To advance his point that Customers' intervention motion is "procedurally improper," the

Trustee contorts the transcript of the September 30 conference before the Court, attempting to

show that Customers' motion is just a fast-shuffle tactic to obtain a quicker path to review in the

Second Circuit. Opp. at 1, 7-8. This assertion is demonstrably false. Customers made clear in

their September 24 letter (sent nearly a week before the conference) that their goal is defensive:

to address the possible preclusive effect of a potential adverse District Court or Second Circuit

decision on the "value" defense, and to assure that Customers, as directly affected parties, would

not be prejudiced by the doctrine of *stare decisis*. *See* Schwed Decl. Ex. 9 at 3; *see also id.*, Ex.

1 (Tr. 13) (Customer counsel making same point at conference).

In fact, Customers would have preferred that the "value" defense be resolved by the

District Court or Second Circuit in one of their own cases, on a trial record that they had

developed. But because of the Trustee's choice to advance *Cohen* to the front of the line,

coupled with the possible preclusive effect on their cases of a District Court or Second Circuit

ruling in *Cohen*, Customers have no practical choice but to seek intervention.

To the extent the Trustee tries to exploit Customers' counsel's statement that Customers

hoped "to get the Second Circuit to take a fresh look" at the "value" defense, he is stating only an

obvious banality. Of course Customers want to obtain a more favorable result on appeal – as

would any litigant, in any setting. The critical point is that Customers' motivation to intervene

was driven by the <u>Trustee's</u> decision to select *Cohen* as the first full test of the merits of his

claims in an innocent customer case.

The Trustee next claims that: "[c]ourts have readily denied motions to intervene where

movants sought intervention as an end run around existing orders and procedural rules." *See*

Trustee's Opposition to Motion to Intervene (Dkt. No. 65) at 8 ("Opp."). This proposition is also

wide of the mark. Nothing about the Customers' motion is remotely an "end run" around any

"existing orders" or "procedural rules." When Judge Rakoff denied Customers' motion to take

an interlocutory appeal from certain pre-trial decisions involving the "value" defense, his

decision neither stated nor implied that, two years later, Customers would be stripped of their

Rule 24 right to intervene in an action that could be dispositive of this defense.  Similarly,

nothing in the Litigation Procedures Order renders Rule 24 inoperative or deprives defendants of

the ability to seek intervention in an appropriate case.

The three cases the Trustee cites to support the alleged "procedural abuse" are irrelevant.

*Kruse v. Wells Fargo Home Mortg., Inc.*, No. 02-CV-3089, 2006 U.S. Dist. LEXIS 26092, at *12

(E.D.N.Y. May 3, 2006), was a class-action where the original class plaintiffs admitted that they

had no remaining claims.  The intervenors there sought to "resuscitate a suit in which the original

named plaintiffs never had standing to sue," having waited over three years to intervene.  The

court determined that intervention would be prejudicial because it would re-open discovery that

had been closed for years.  The court denied intervention and understandably concluded: "Since

the original named plaintiffs' claims are moot, … it would be improper to permit intervention to

'breathe life into a non-existent lawsuit.'" *Id.* at *26.

That type of procedural manipulation is entirely unrelated to what Customers seek here.

The lawsuit against Mr. Cohen is very much alive, as are the defenses.

The other cases the Trustee cites are also inapposite.  In *Ceribelli v. Elghanayan*, No. 91

Civ. 3337, 1994 U.S. Dist. LEXIS 13681, at *2 (S.D.N.Y. Sept. 26, 1994), the potential

intervenors filed a federal action against defendants, but then "made a prior informed decision"

to dismiss that action in favor of proceeding in state court.  Meanwhile, the plaintiff had filed a

timely RICO action, in which the potential intervenors sought to intervene after their own RICO

statute of limitations had run.  Rejecting the request to intervene, the court concluded that this

was not a proper use of intervention:  "Something akin to a rule of repose may be invoked when

a party, having chosen a course of action and forgone a claim in the course of doing so, seeks to revive that claim after the statute of limitations has run by joining a suit timely filed by others." *Id.*

Customers do not seek to skirt any rule or revive long-dead claims. They seek to ensure that the record before this Court contains a full explication of the legal arguments on the "value" defense and that they are not prejudiced on this major potential defense by inadequate representation before the District Court and Second Circuit.

Finally, in *Panzirer v. Wolf*, No. 79-Civ. 3445, 1980 U.S. Dist. LEXIS 11146 (S.D.N.Y. Apr. 21, 1980), the plaintiff repeatedly and unsuccessfully attempted to bring a class-action. At the last minute, a proposed class-action plaintiff sought to intervene, to salvage the case. Rejecting the request, the court reasoned that "the intervenors cannot possibly have a claim or defense in common with a plaintiff who never had a claim. As the Ninth Circuit has noted, 'where the original plaintiffs were never qualified to represent the class, a motion to intervene represents a back-door attempt to begin the action anew, and need not be granted.'" *Id.* at *29 (quoting *Lidie v. California*, 478 F.2d 552, 555 (9th Cir. 1973).[2]

The Trustee tries to fit within these cases by arguing that "[i]ntervention under Rule 24 should not be used 'to breathe life' into nonexistent issues already fully addressed and decided." Opp. at 11. But this argument is sophistry. Even accepting *arguendo* the Trustee's characterization of the earlier rulings, the "value" issue has plainly not been <u>finally</u> decided in the *Cohen* case itself, let alone  conclusively resolved in the appellate courts in any innocent customer action.

---

[2] It is notable that in all of the Trustee's cited cases, the putative intervenors moved only for permissive intervention. Customers have a strong claim for intervention of right, not just permissive intervention.

2.      **The Trustee fails to rebut Customers' argument that they are entitled to intervene as of right.**

The Trustee claims that Customers "fail to satisfy even a single requirement" of the standards for intervention as a matter of right.  Opp. at 12.  To the contrary, Customers meet all of the standards.

a.      **The likelihood that a Second Circuit decision on the "value" defense will "as a practical matter" bind Customers satisfies the "interest" test.**

In their moving papers, Customers stated that the "essential facts in the good-faith suits are largely the same: a customer deposited funds with Madoff Securities before the bankruptcy, and, with no knowledge of the fraud, withdrew a larger nominal amount – sometimes years or decades later."  (Mem. at 9.)  Customers continued: "If the 'value' … issue[] in this adversary proceeding end[s] up being finally decided by the Second Circuit – particularly as matters of law – any such ruling would, "as a practical matter" (to use the language of the Rule), bind all parties in the case."  *Id*.

Arguing that "denial of the motion to intervene will not prejudice Customers" (Opp. at 19-20), the Trustee rests on an out-of-context snippet from the conference transcript where, in response to the Court's query as to why Customers could not raise these defenses in their own cases, Customers' counsel replied, "'Well, we could.'"  Opp. at 20.  While that statement is correct, it is irrelevant to the issue at hand.  If the Second Circuit ultimately rules against the "value" defense in the *Cohen* case, it will make no difference that any given Customer technically could later raise the exact same defense in the Bankruptcy Court.  The law will be definitively settled, without that Customer's input, and the Bankruptcy Court will be obliged to follow it.  Customers' counsel made this very point shortly after the statement quoted by the Trustee, pointing out that if the Second Circuit ratifies the District Court's prior view on "value,"

"then it will apply to us as a matter of *stare decisis* … in other words, it will really be game over
…."  Schwed Decl. Ex. 1 (Tr. 13).

The Trustee's other attempt to show that Customers will not be harmed by an adverse
final appellate decision on the value defense occurs in the Trustee's struggle to distinguish
*Oneida Indian Nation of Wis. v. State of N.Y.*, 732 F.2d 261 (2d Cir. 1984).  That controlling
decision held that intervention as of right is <u>required</u> if "<u>there is a substantial likelihood that the
claims and interests of the proposed intervenors may be adversely affected at least by principles
of stare decisis, arising out of the final judgment </u>to be entered in this case."  *Id*. at 265.
(Emphasis added.)  The Trustee tries to distance himself from *Oneida* on the theory that the
Court's statement that "stare decisis will not require intervention of right in all cases" (*id*. at 266)
means that Customers would not be bound by the doctrine because *Cohen* "deals with facts
unique to that matter."  Opp. at 15.  But the Trustee never explains  how the *Cohen* facts differ in
any meaningful way from the facts in any of the Customer cases.  Both *Cohen* and all the
Customer cases involve the identical pattern:  an innocent customer who contracted with and
entrusted funds to his broker (Madoff Securities), and later requested, and received from the
broker, good-faith withdrawals in excess of his original deposits that the Trustee now seeks to
recover years later.

The Trustee tries to distinguish *Oneida* on the basis that the intervenors there had an
interest in the very same land.  But the Trustee's assertion is belied by the Second Circuit's
recognition that Rule 24 mandates intervention of right where "the intervenors' ability to protect
their interests will be impaired or impeded as 'a practical matter' by a judgment" in the case
where intervention is sought.  *Oneida Indian Nation of Wis.*,732 F.2d at 266.  Customers face
exactly that risk here.

Other courts confirm that the adverse *stare decisis* effect of a ruling on the proposed

intervenors is, in itself, sufficient to support intervention of right. *See, e.g., Stone v. First Union

Corp.*, 371 F.3d 1305, 1310 (11th Cir. 2004) (a decision on similar claims of ADEA violations

(even where non-binding) "would have significant persuasive effects ... [that] are sufficiently

significant to warrant intervention."); *United States v. Oregon*, 839 F.2d 635, 638-39 (9th Cir.

1988) (granting intervention where the determination of common issues "when upheld by an

appellate ruling will have a persuasive stare decisis effect in any parallel or subsequent litigation

[which] ... is an important consideration in determining the extent to which an applicant's

interest may be impaired."); *Nuesse v. Camp*, 385 F.2d 694, 701-702 (D.C. Cir.1967) (granting

intervention as of right, where, even though the proposed intervenor technically would not "be

precluded by res judicata from relitigating this question if an unfavorable answer is rendered in

his absence ... the first judicial treatment of this question, would receive great weight" and an

unfavorable appellate ruling would hamper him "in seeking to vindicate his approach in another

court."); *Hartford Fire Ins. Co. v. Mitlof*, 193 F.R.D. 154, 162 (S.D.N.Y. 2000) (while *stare

decisis* "will not support intervention as of right in all cases, it does so here, where as a practical

matter, [the secondary insurer's] interests will be impaired by a judgment in [the primary

insurer's] favor.").

The Trustee insists that Customers have no protectable "interest" under Rule 24(a)

because they have no interest in Mr. Cohen's account and any judgment against him will not

technically subject them to liability. Opp. at 16. But this cramped view of the "interest" needed

to support intervention as of right – requiring, in essence a direct interest in the property at

interest in the lawsuit or direct *res judicata* prejudice – was questionable even before the 1966

amendments to Rule 24 and is untenable under the existing, more liberal version of the rule. *See*

*United States v. Hooker Chems. & Plastics Corp.*, 749 F.2d 968, 983 (2d Cir. 1984) ("The 1966

amendments focused on abandoning formalistic restrictions in favor of 'practical considerations'

to allow courts to reach pragmatic solutions to intervention problems.").[3]

The success or failure of the "value" defense represents a swing of many millions of

dollars for Customers, implicating a "direct, substantial, and legally protectable" interest, by any

standard. The cases the Trustee cites involve far more questionable, attenuated, and contingent

interests. For example, the Trustee cites *United States v. People's Benefit Life Ins. Co.*, 271 F.3d

411, 415 (2d Cir. 2001), for the proposition that an interest "that is contingent upon the

occurrence of a sequence of events before it becomes colorable, will not satisfy the rule," and

*Restor-A-Dent Dental Labs, Inc. v. Certified Alloy Prods., Inc.*, 725 F.2d 871, 874 (2d Cir.

1984), for the notion that "an interest must be direct, as opposed to remote or contingent."[4]

There is nothing "contingent" or "remote" about Customers' interest in the "value"

defense and its determination. Counsel for Mr. Cohen has said that if he loses on the "value"

---

[3] The Trustee tries to dismiss in a footnote (Opp. at 13, n.18) the Second Circuit's recent construction of words in another statute that closely parallel key words in Rule 24(a). Rule 24(a) requires the intervenor to show only "an interest <u>relating to</u> the … transaction that is the subject of the action." Bankruptcy Code Section 741 (7)(A)(xi) protects as "securities contracts" any arrangement "<u>related to</u>" a type of contract enumerated in that statute (emphasis added). In the Section 546(e) Decision, the Second Circuit emphasized that those two words must be construed "quite expansively," and held that Madoff Securities' account opening agreements with its customers were "securities contracts" within the protection of the safe harbor in Section 546(e). *Picard v. Fishman*, 773 F.3d 411, 418-419 (2d Cir. 2014), *cert. denied,* 135 S. Ct. 2859 (2015). The Trustee never explains why the Second Circuit's expansive interpretation of "related to" does not apply equally to the "relating to" clause in Rule 24(a).

[4] The Trustee also cites, as one of his lead authorities, *Rodriguez v. Pataki*, 211 F.R.D. 215, 218 (S.D.N.Y. 2002). Opp. at 13. But there, the potential intervenor, a *pro se* litigant, had only an amorphous "global interest" in election issues, and had "little to no interest" in the challenges to redistricting plans adopted by the New York legislature. The difference is stark between such an attenuated, non-economic interest and direct hard-money stakes at issue for Customers.

defense, he will have no choice but to appeal it.  Unquestionably, the Trustee would do likewise.

Thus, it is a certainty that this important issue will be the subject of an appeal.

The Trustee either fails to distinguish or ignores Customers' other key authorities.  For

example, the Trustee tries to distinguish *N.Y. Pub. Interest Research Grp. v. Regents of the Univ.

of the State of N.Y.*, 516 F.2d 350 (2d Cir.1975), on the grounds that it involved a pharmaceutical

trade association having an interest in "the continued existence of independent local drugstores."

But the Trustee never explains (and cannot explain) how the interest of a trade association in

furthering its members' political agenda is a more direct economic interest than Customers'

interest in reducing or eliminating their out-of-pocket, real-dollar exposure in these claw-back

cases.  To put it in terms of the standard used in *N.Y. Public Interest*, "there can be little doubt"

that the success or failure of the "value" defense "affects the economic interests" of the

Customers.  516 F.2d at 351-52.

Finally, the Trustee does not even attempt to distinguish the two cases decided in this

district that support Customers' position, *Delaware Trust Co. v. Wilmington Trust, N.A.*, 534

B.R. 500 (S.D.N.Y. 2015) and *N.J. Carpenters Health Fund v. Residential Capital, LLC,* No. 08-

Civ. 8781, 2010 U.S. Dist. LEXIS 135261, at *12-15 (S.D.N.Y. Dec.  21, 2010).  *See* Mem. at 8.

**b.    Customers' motion to intervene is timely.**

In insisting that Customers' intervention motion is not timely, the Trustee misstates

verifiable facts and overstates his claim of prejudice.

Customers first sought the Trustee's consent for intervention on September 11, 2015.

Schwed Decl. Ex.2.  The Trustee claims this was somehow too late because:

> [T]he first notice of the final pretrial conference in the Cohen Proceeding was
> actually filed nearly *five* months earlier in the main bankruptcy docket on April
> 29, 2015 (Adv. Pro. No. 08-01789, ECF No. 9897).  Subsequent notices were also
> filed on May 18, 2015, July 15, 2015, and August 28, 2015 (ECF Nos. 10011,
> 10668, 11154, respectively).

Opp. at 18. (emphasis in original). A review of the ECF entries reveals that the April 29 and

May 18 notices were <u>not</u> marked "final." *See* Master Dkt. Nos. 9897, 10011. Thus, the

Trustee's statement that these were notices of "<u>final</u> pre-trial conferences" is just false.

In any event, the law provides for a pragmatic approach in determining whether a motion

to intervene is timely. This approach focuses primarily on "prejudice" and does not focus only

on the passage of time. *See* 7C Wright, Miller & Kane, Fed. Prac. and Proc.: Civil (3d ed.) §

1916 at 541-54 (2007) (and collected cases set forth therein) ("The most important consideration

in deciding whether a motion for intervention is untimely is whether the delay in moving for

intervention will prejudice the existing parties to the case. If prejudice is found, the motion will

be denied as untimely. Conversely, the absence of prejudice supports finding the motion to be

timely.").

The Trustee fails to provide any meaningful support for his assertion that "the motion to

intervene will prejudice the Trustee." Opp.at 18-19. For example, the Trustee says that the

Litigation Procedures Order should be construed to, "prevent [Customers'] abuse of process."

*Id.* But he never explains how a motion permitted by the Federal Rules of Civil Procedure could

be an "abuse of process." He further asserts that "the Trustee must be able to move cases

forward" and "[t]he Court should not allow [Customers] to further their own interests at the

expense of administration of the estate as a whole." *Id.* But these conclusory platitudes have no

connection to the actual course of the Trustee's avoidance cases. Intervention would not

interfere with the Trustee's scheduling preferences or agendas in any other actions. Nor would

intervention interfere with *Cohen* itself, because Customers have committed to adhere to the

existing post-trial briefing schedule. Indeed, intervention would actually <u>aid</u> case administration

by providing a framework for final determinations of the "value" defense in dozens of cases that

might otherwise continue in litigation for months or years based on the lengthy pretrial schedules proposed by the Trustee.

The Trustee insists that Customers "should not be permitted to participate in an action … to make arguments already made and rejected."  Opp. at 19.  But the issue is not whether the Customers' "value" defense was rejected on pre-trial motions.  The issue is whether Customers have a right to be heard before entry of a final decision on the merits, and in any review of that decision.

Even accepting at face value the Trustee's claim that intervention on this limited legal issue will somehow disturb his larger litigation agenda, he fails to show how it could possibly make a difference if Customers had sought to intervene in *Cohen* at an earlier point.  Customers made clear from the start that they would not disrupt in any way the *Cohen* trial, which in fact took place and was concluded on the schedule the Trustee desired.  Similarly, allowing Customers to brief the "value" issue would not delay the Court-approved post-trial briefing schedule because Customers will conform to that schedule.

The Trustee's high dudgeon about the supposed prejudice to him is pure theater.  The Trustee is wrong factually (the actual delay was not what he claims) and, more importantly, he cannot point to any delay that would disrupt his litigation agenda.  The only impact of Customers' intervention on the Trustee is that he would have to litigate with better-financed opposition on this critical issue.  That it is not legally cognizable "prejudice."  It is more accurately described as providing for a fair fight.

      **c.**      **The Trustee fails to rebut the evidence in the record that**
              **Mr. Cohen cannot "adequately represent" the interests of**
              <u>**Customers through proceedings in the district court and on appeal**</u>.

Customers' moving papers presented statements made of record by Mr. Cohen's counsel to the effect that his client lacks the wherewithal to finance an appeal; that the client has been employed only part-time; and that the client has been unable to pay his counsel even for the modest fees billed so far.  Mem. at 11.

In response, the Trustee claims that Mr. Cohen earned $4,132,642 million in taxable income between 1996 and 2002.  Opp. at 21.  However, those gross income numbers – reflecting income earned as long as 19 years ago – do not rebut Mr. Cohen's <u>current</u> inability to finance a defense.  First, of that $4.1 million, nearly half ($1,802,694) was phantom income attributable to phony gains reported by Madoff Securities with respect to his account.  DX7[5] (Affidavit of Paul Speece, CPA, ¶¶ 11, 19, 27, 35, 43, 51, 59).  To make matters worse, Mr. Cohen had to pay $773,869 in federal, New York State and New York City taxes on that phantom income – none of which he ever recovered.  *Id*. ¶ 62.

Second, the trial record also shows that after leaving Madoff Securities and moving to Virginia, Mr. Cohen's income (including wages, salary and non-Madoff Securities interest and dividends) never exceeded $45,000 a year.  DX7, Ex. FF; DX1, p. 8; DX2, p.10; DX3, p.11; DX4, p. 6; DX5, p. 9; DX7, Ex. A, p. 16.  All this time, Mr. Cohen was also supporting his wife and two minor children.  DX1, p. 8.

Finally, Mr. Cohen may need to ultimately find a way to pay the Trustee as much as $1.1 million if liability is upheld – a contention the Trustee would be hard-pressed to dispute.  In short, it is not plausible that Mr. Cohen has the current means to finance his own defense, let

---

[5] "DX" references refer to Defendant's Exhibits, submitted as part of the trial record in the *Cohen* proceeding.

alone adequately represent Customers in a multi-forum presentation and appeal on this complex issue.

Perhaps aware that it borders on ridiculous to claim that Mr. Cohen has the means to "adequately represent" *the Customers* through post-trial briefing in this Court and possibly two layers of judicial review, the Trustee concludes his "adequate representation" argument with a footnote claiming that: "Not only are [Customers'] interests adequately represented by Mr. Cohen, but their interests have been adequately represented by their own counsel in prior briefings." Opp. at 21, n.21. (attaching a chart). This point is, of course, irrelevant. The question is not whether Customers were well represented in the past, but whether Mr. Cohen can provide them with adequate representation in the remaining litigation in this case over the merits of the value defense, including proceedings for the entry of final judgment in the district court, and on appeal where this issue will be finally decided.

**3.    The Trustee presents no meaningful arguments against permissive intervention.**

The Trustee argues that permissive intervention is inappropriate because the intervention motion was not "timely" and because Customers allegedly "present no common claims or defenses." Opp. at 22.

As discussed above, Customers' request for intervention was timely. The lag between Customers' knowledge that the *Cohen* case was going to trial and Customers' commencement of the intervention process was short. Most importantly, that brief delay causes no prejudice to the Trustee – the trial occurred as scheduled, without any delay, and post-trial briefing will similarly be concluded as scheduled. Against these uncontested facts, the Trustee can show no actual prejudice. *See* Section 2(B), above.

The Trustee's further assertion that Customers share "no common … defenses" with *Cohen* is absurd. Mr. Cohen and his counsel expressly preserved the very defenses relating to

time-value-of-money and other "value" defenses on which Customers seek to intervene and

which are at issue in all of Customers' own cases.  *See* Second Revised Pretrial Order at 11

(Master Dkt. No. 11715) (under "Issues to be tried"); *see also* Answer at 15 (Affirmative

Defense 6: "Any alleged transfers made to Defendants were received … for value and in

discharge of an antecedent debt.") (*Cohen* Dkt. No. 10); Revised Pretrial Order at 7-9, sections

IV(B)(2), (10) (Master Dkt. No. 11154).  In the language of Rule 24(b), Customers therefore

obviously have the requisite "defense that shares with the main action [*Cohen*] a common

question of … law."  Fed. R. Civ. P. 24(b).

**4.      The Trustee's law of the case argument is also unavailing.**

The Trustee proposes a variant of the "law of the case" doctrine, to suggest that Mr.

Cohen and Customers have "already 'had [their] day in court' and cannot ask this Court to revisit

the Purported Value Defenses."  Opp. at 11.  But as Customers have repeatedly explained, their

objective in asking for intervention is, in large part, to ensure an adequate legal record is

presented to this Court on the "value" defense allowing for a full determination of the issue by

this Court and on any further judicial review.

**5.      The Trustee's opposition even to *amicus* briefing reveals his real motives.**

Finally, the Trustee objects even to Customers' alternative request to submit an *amicus*

*curiae* brief on the value defense.  Opp. at 23-24.  This reflexive opposition to affording

Customers any voice on the "value" defense reinforces the conclusion that the Trustee's true

motive for opposing intervention is to steamroll an underfunded adversary in the hope of

avoiding a full airing of the "value" defense issues, particularly on appeal.  At a minimum,

Customers should be permitted the alternative of leave to file an *amicus* brief on the merits of

this critical issue.

## Conclusion

For the above reasons, and the reasons stated in their moving papers, Customers

respectfully request that the Court grant the intervention motion in its entirety.  If both forms of

intervention are denied, then they alternatively request leave to file an *amicus curiae* brief.

Dated:  November 11, 2015

Respectfully submitted[6],

LOEB & LOEB LLP

By: /s/  Gregory Schwed
    Gregory Schwed
    345 Park Avenue
    New York, New York 10154
    Tel: (212) 407-4000
    Email: gschwed@loeb.com

BAKER & MCKENZIE LLP

By: /s/ Richard A. Kirby
    Richard A. Kirby
    815 Connecticut Avenue, N.W.
    Washington, District of Columbia  20006
    Tel:  (202) 452-7020
    Email:  richard.kirby@bakermckenzie.com

MILBERG LLP

By: /s/ Matthew A. Kupillas
    Matthew A. Kupillas
    One Pennsylvania Plaza 49th Floor
    New York, New York  10119
    Tel:  (212) 613-5697
    Email:  mkupillas@milberg.com

DENTONS US LLP

By: /s/ Carole Neville
    Carole Neville
    1221 Avenue of the Americas
    New York, New York  10020-1089
    Tel:  (212) 768-6889
    Email:  carole.neville@dentons.com

PRYOR CASHMAN LLP

By: /s/ Richard Levy, Jr.
    Richard Levy, Jr.
    7 Times Square
    New York, NY  10036.
    Tel:  (212) 326-0886
    Email:  rlevy@pryorcashman.com

---

[6] *See* Schedule 1 for list of clients.

NY1377867.2
217250-10001