Baker & Hostetler LLP                          Hearing Date: December 17, 2015
45 Rockefeller Plaza                           Hearing Time: 10:00 a.m. (EST)
New York, New York 10111                       Objection Deadline: December 10, 2015
Telephone: (212) 589-4200                      Time: 4:00 p.m. (EST)
Facsimile: (212) 589-4201
Irving H. Picard
Email: ipicard@bakerlaw.com
David J. Sheehan
Email: dsheehan@bakerlaw.com
Seanna R. Brown
Email: sbrown@bakerlaw.com
Heather R. Wlodek
Email: hwlodek@bakerlaw.com

*Attorneys for Irving H. Picard, Trustee for the*
*Substantively Consolidated SIPA Liquidation of*
*Bernard L. Madoff Investment Securities LLC*
*and the Estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. No. 08-01789 (SMB) |
| Plaintiff, | SIPA Liquidation |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |

**NINETEENTH APPLICATION OF TRUSTEE AND BAKER & HOSTETLER LLP FOR ALLOWANCE OF INTERIM COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES INCURRED FROM APRIL 1, 2015 THROUGH JULY 31, 2015**

# TABLE OF CONTENTS

**Page**

I. PRELIMINARY STATEMENT ...............................................................................1

II. BACKGROUND ....................................................................................................5

    A. THE SIPA LIQUIDATION .........................................................................5

    B. THE TRUSTEE, COUNSEL AND CONSULTANTS ................................5

    C. PRIOR COMPENSATION ORDERS.........................................................6

III. SUMMARY OF SERVICES ..................................................................................7

    A. HARDSHIP PROGRAM .............................................................................7

    B. THE RECOVERY AND RETURN OF CUSTOMER PROPERTY .....................8

        a. Recoveries Accomplished During The Compensation Period ..........................................................................................8

IV. DETAILED DESCRIPTION OF SERVICES ........................................................9

    A. MATTER 01 ................................................................................................9

        a. Task Code 01: Trustee Investigation ...........................................9

        b. Task Code 02: Bankruptcy Court Litigation..............................10

        c. Task Code 03: Feeder Funds.......................................................13

        d. Task Code 04: Asset Research and Sale .....................................13

        e. Task Code 05: Internal Meetings with Staff ..............................14

        f. Task Code 07: Billing and Trustee Reports................................14

        g. Task Code 08: Case Administration ............................................14

        h. Task Code 09: Banks ...................................................................15

        i. Task Code 10: Court Appearances ..............................................16

        j. Task Code 11: Press Inquiries and Responses............................16

        k. Task Code 12: Document Review ...............................................16

        l. Task Code 13: Depositions and Document Productions by the Trustee...................................................................................16

# TABLE OF CONTENTS

(continued)

**Page**

| | | |
|---|---|---|
| m. | Task Code 14: International | 16 |
| n. | Task Code 15: Charities | 17 |
| o. | Task Code 19: Non-Bankruptcy Litigation | 17 |
| p. | Task Code 20: Governmental Agencies | 18 |
| q. | Task Code 21: Allocation | 18 |
| B. | MATTER 03 – CHAIS | 21 |
| C. | MATTER 04 – MERKIN | 22 |
| D. | MATTER 05 – CUSTOMER CLAIMS | 23 |
| a. | Customer Claims | 23 |
| b. | General Creditor Claims | 23 |
| c. | The Trustee Has Kept Customers Informed Of The Status Of The Claims Process | 24 |
| E. | MATTER 06 – VIZCAYA | 25 |
| F. | MATTER 07 – MADOFF FAMILY | 26 |
| G. | MATTER 09 – FAIRFIELD GREENWICH | 31 |
| H. | MATTER 11 – COHMAD SECURITIES CORPORATION | 35 |
| I. | MATTER 13 – KINGATE | 36 |
| J. | MATTER 21 – AVOIDANCE ACTION LITIGATION | 39 |
| a. | District Court Proceedings | 39 |
| b. | Bankruptcy Court Proceedings | 41 |
| K. | MATTER 29 – RYE/TREMONT | 43 |
| L. | MATTER 30 – HSBC | 45 |
| M. | MATTER 32 – UBS/LIF | 46 |
| N. | MATTER 33 – NOMURA INTERNATIONAL PLC | 48 |
| O. | MATTER 34 – CITIBANK | 50 |

# TABLE OF CONTENTS
(continued)

**Page**

P.  MATTER 35 – NATIXIS ...................................................................................52

Q.  MATTER 36 – MERRILL LYNCH .................................................................54

R.  MATTER 37 – ABN AMRO ............................................................................55

S.  MATTER 38 – BANCO BILBAO ...................................................................56

T.  MATTER 39 – FORTIS ...................................................................................58

U.  MATTER 40 – MEDICI/KOHN ......................................................................60

V.  MATTER 42 – EQUITY TRADING ...............................................................61

W.  MATTER 43 – DEFENDER .............................................................................62

X.  MATTER 45 – LEVEY ....................................................................................63

Y.  MATTER 46 – GLANTZ ..................................................................................64

Z.  MATTER 51 – CRUPI .....................................................................................65

AA.  MATTER 52 – DONALD FRIEDMAN ..........................................................66

BB.  MATTER 53 – MAGNIFY ...............................................................................67

CC.  MATTER 54 – MENDELOW ..........................................................................69

DD.  MATTER 56 – LIPKIN ....................................................................................70

EE.  MATTER 58 – PJ ADMINISTRATORS .........................................................71

FF.  MATTER 59 – STANLEY SHAPIRO .............................................................72

GG.  MATTER 60 – AVELLINO & BIENES ..........................................................72

HH.  MATTER 62 – SUBSEQUENT TRANSFERS ................................................74

II.  MATTER 65 – LEGACY .................................................................................76

JJ.  MATTER 71 – SQUARE ONE ........................................................................77

KK.  MATTER 72 – PLAZA ....................................................................................78

LL.  MATTER 73 – BNP PARIBAS .......................................................................78

V.  COMPENSATION REQUESTED ....................................................................79

**TABLE OF CONTENTS**

(continued)

**Page**

VI.    REQUEST FOR INTERIM COMPENSATION SHOULD BE GRANTED ...................83

VII.    CONCLUSION.............................................................................................................85

TO THE HONORABLE STUART M. BERNSTEIN
UNITED STATES BANKRUPTCY JUDGE:

Baker & Hostetler LLP ("B&H"), as counsel to Irving H. Picard, Esq., trustee (the "Trustee") for the substantively consolidated liquidation proceeding of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act ("SIPA"), 15 U.S.C. § 78aaa *et seq.*,[1] and Bernard L. Madoff ("Madoff"), individually (collectively, the "Debtor"), respectfully submits this nineteenth application (the "Application") on behalf of the Trustee and itself for an order pursuant to § 78eee(b)(5) of SIPA, §§ 330 and 331 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 2016(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and the Order Pursuant to § 78eee(b)(5) of SIPA, sections 105, 330 and 331 of the Bankruptcy Code, Bankruptcy Rule 2016(a), and Local Bankruptcy Rule 2016-1 Establishing Procedures Governing Interim Monthly Compensation of Trustee and Baker & Hostetler LLP, dated February 25, 2009 (ECF No. 126), as amended on December 17, 2009 and June 1, 2011 (ECF Nos. 1078, 4125) (collectively, the "Second Amended Compensation Order"), allowing and awarding (i) interim compensation for services performed by the Trustee and B&H for the period commencing April 1, 2015 through and including July 31, 2015 (the "Compensation Period") and (ii) reimbursement of the Trustee's and B&H's actual and necessary expenses incurred during the Compensation Period, and in support thereof, respectfully represents as follows:

## I.    **PRELIMINARY STATEMENT**

1.      The work completed by the Trustee and B&H, as counsel to the Trustee, during the Compensation Period yielded significant results for BLMIS customers and the liquidation. Through pre-litigation and other settlements, which were approved by the Bankruptcy Court

---

[1] References hereinafter to provisions of SIPA shall omit "15 U.S.C."

and/or the District Court, the Trustee has successfully recovered, or reached agreements to recover, approximately $10.743 billion as of July 31, 2015—more than 61% of the $17.550 billion of principal lost in the Ponzi scheme by those who filed claims—for the benefit of all customers of BLMIS with an allowed claim.[2]

2.      The Trustee has made five interim distributions of customer property to date. *See* discussion *infra* Section IV(A)(q). The Trustee has distributed approximately $7.973 billion to BLMIS customers through November 19, 2015, inclusive of catch-up distributions and SIPC advances in the amount of $226.735 million.[3] *See* discussion *infra* Section IV(A)(q).

3.      No administration costs, including the compensation of the Trustee and his counsel, will be paid out of any recoveries obtained by the Trustee for the benefit of BLMIS customers. Because the percentage commission schedule for trustees found in § 326(a) of the Bankruptcy Code is not applicable in a SIPA liquidation, see § 78eee(b)(5)(C) of SIPA, no applications filed by the Trustee have or will ever include a fee request based on recoveries made by the Trustee for the benefit of BLMIS customers. Rather, all fees, expenses, and administrative costs incurred by the Trustee and his counsel including, but not limited to, B&H; various international special counsel retained by the Trustee (collectively referred to herein as "International Counsel"), including Taylor Wessing LLP ("Taylor Wessing"), Browne Jacobson LLP ("Brown Jacobson"), Triay Stagnetto Neish Barristers & Solicitors ("Triay Stagnetto"), Williams Barristers & Attorneys ("Williams Barristers"); various special counsel to the Trustee

---

[2] The Trustee entered into settlements subsequent to the Compensation Period that will bring an additional $232.209 million into the Customer Fund. *See* discussion *infra* Section III(B).

[3] After the Compensation Period and through November 19, 2015, the total additional amount distributed was $226.735 million, bringing the total amount distributed through November 19, 2015 to $7.973 billion. The $226.735 million amount is comprised of catch-up distributions of: (i) $20.665 million for the First Interim Distribution, (ii) $150.439 million for the Second Interim Distribution, (iii) $21.103 million for the Third Interim Distribution, (iv) $14.214 million for the Fourth Interim Distribution, and (v) $12.261 million for the Fifth Interim Distribution, together with SIPC advances committed in the amount of $8.054 million.

2

(collectively referred to herein as "Counsel"), including Windels Marx Lane & Mittendorf, LLP

("Windels Marx"), Young Conaway Stargatt & Taylor, LLP ("Young Conaway"), Kelley,

Wolter & Scott, P.A. ("Kelley Wolter"); and consultants, are paid out of administrative advances

made by SIPC.  As Judge Lifland affirmed: "Again, the emphasis is that these fees . . . are not

coming from any of the victims, and they're not coming from the estate."  Fifth Appl. Hr'g Tr.

32:15-17, Dec. 14, 2010.

4.      As the Trustee's and his counsels' fees and expenses are chargeable to the general

estate and not to the fund of customer property (the "Customer Fund"), the payment of the same

has absolutely no impact on the Trustee's current and future recoveries that have been and will

be allocated to the Customer Fund for pro rata distribution to BLMIS customers whose claims

have been allowed by the Trustee.

5.      In a liquidation proceeding such as this, where the general estate is insufficient to

pay trustee and counsel compensation, SIPC plays a specific role with compensation and is

required to advance funds to pay the costs of administration.  *See* SIPA §§ 78eee(b)(5)(c) and

78fff-3(b)(2).  SIPC has carefully reviewed this Application, as it has all other compensation

applications, and has closely analyzed the time records and services rendered.  Each month,

SIPC, the Trustee, and B&H engage in extensive discussions regarding billings, and the Trustee

and B&H make reductions where appropriate and finalize the amounts that appear herein.  Thus,

the requested fees and expenses in this Application include (i) fees at the Trustee's and B&H's

hourly billable rates to which a public interest discount of 10% has been applied, and (ii) actual,

necessary, and reasonable expenses incurred within the Compensation Period.

6.      During the hearing on the Eighth Interim Fee Application, Judge Lifland

acknowledged the worldwide efforts of the Trustee and his counsel and approved the application:

Well, having heard the description and being well aware of the worldwide activities started off by Bernie Madoff and the sequelae is left for everybody else to follow all the trails and the trails do lead almost everywhere in the world. It is clear under the circumstances that a Herculean effort to follow those trails has been involved both with counsel here in the United States and counsel overseas.

Eighth Appl. Hr'g Tr. 16, Mar. 15, 2012, ECF No. 4736.

7.      No single document can capture all of the tasks engaged in by the Trustee and B&H since their appointment on December 15, 2008. Hundreds of thousands of hours have been expended in support of the Trustee's efforts to liquidate the estate, determine customer claims, and advance the interests of all claimants by litigating and settling cases for the return of customer property ("Customer Property"). Moreover, the Trustee has vigorously defended the estate with respect to a number of litigations filed against it and against his protection of Customer Property. The following discussion and materials attached to this Application cover the major categories of services for which allowance of compensation is sought.

8.      As Judge Lifland recognized, "[w]ith respect to the kinds of services that have been rendered here, the amounts requested, this is by any stretch of the imagination one of the largest, most complex sets of litigation that have come down the pike. It's measured both in quality and quantity in the thousands with deadlines that have come . . . and it is a big stretch for any law firm or any organization to deal with." Sixth Fee Appl. Hr'g Tr. 45:23-46:6, June 1, 2011.

## II.    BACKGROUND

### A.    THE SIPA LIQUIDATION

9.      The Trustee and B&H's prior interim fee applications, each of which is fully incorporated herein,[4] have detailed the circumstances surrounding the filing of this case and the events that have taken place during prior phases of this proceeding.

### B.    THE TRUSTEE, COUNSEL AND CONSULTANTS

10.     The Trustee and B&H's prior interim fee applications have detailed the description of the Trustee's background and experience.

11.     In rendering professional services to the Trustee, B&H has utilized a legal team comprised of professionals with extensive experience in areas such as bankruptcy, securities, tax, corporate, and litigation, permitting the Trustee to conduct this liquidation efficiently.

12.     The Ponzi scheme perpetrated by Madoff through BLMIS was vast in scope, long in duration, and broad in its geographical reach.  The Trustee, with the assistance of his counsel, has undertaken a comprehensive investigation of BLMIS, Madoff, and hundreds of related individuals and entities.  To this end, the Trustee has engaged not only the services of counsel, but also those of forensic accountants and legal experts, including, but not limited to,

---

[4] Prior fee applications cover the periods from December 11, 2008 to May 31, 2009 (the "First Interim Fee Application") (ECF No. 320, 321); June 1, 2009 to September 30, 2009 (the "Second Interim Fee Application") (ECF No. 998, 1010); October 1, 2009 to January 31, 2010 (the "Third Interim Fee Application") (ECF No. 2188, 2189); February 1, 2010 to May 31, 2010 (the "Fourth Interim Fee Application") (ECF No. 2883); June 1, 2010 to September 30, 2010 (the "Fifth Interim Fee Application") (ECF No. 3207); October 1, 2010 to January 31, 2011 (the "Sixth Interim Fee Application") (ECF No. 4022); February 1, 2011 to May 31, 2011 (the "Seventh Interim Fee Application") (ECF No. 4376); June 1, 2011 to September 30, 2011 (the "Eighth Interim Fee Application") (ECF No. 4676); October 1, 2011 to January 31, 2012 (the "Ninth Interim Fee Application") ("ECF No. 4936); February 1, 2012 to June 30, 2012 (the "Tenth Interim Fee Application") (ECF No. 5097); July 1, 2012 to November 30, 2012 (the "Eleventh Interim Fee Application") (ECF No. 5333); December 1, 2012 to April 30, 2013 (the "Twelfth Interim Fee Application") (ECF No. 5490); and May 1, 2013 through July 31, 2013 (the "Thirteenth Interim Fee Application") (ECF No. 5566); August 1, 2013 through November 30, 2013 (the "Fourteenth Interim Fee Application") (ECF No. 5980); December 1, 2013 through March 31, 2014 (the "Fifteenth Interim Fee Application") (ECF No. 7470); April 1, 2014 through July 31, 2014 (the "Sixteenth Interim Fee Application") (ECF No. 8549); August 1, 2014 through November 31, 2014 (the "Seventeenth Interim Fee Application") (ECF No. 9583); and December 1, 2014 through March 31, 2015 (the "Eighteenth Interim Fee Application") (ECF No. 10814).

AlixPartners LLP ("AlixPartners"), the Trustee's consultant and claims agent; FTI Consulting

("FTI"); and several investigative and industry consultants (collectively referred to herein as the

"Consultants").

C.    **PRIOR COMPENSATION ORDERS**

13.    The Trustee and B&H filed applications for allowance of interim compensation

for professional services rendered and reimbursement of actual and necessary expenses incurred

in prior periods, and this Court approved those applications:

| **Applications** | **Orders Entered**[5] |
|---|---|
| First Application (ECF Nos. 320, 321) | August 6, 2009 (ECF No. 363); March 7, 2013 (ECF No. 5258) |
| Second Application (ECF Nos. 998, 1010) | December 17, 2009 (ECF No. 1078) |
| Third Application (ECF Nos. 2188, 2189) | May 6, 2010 (ECF No. 2251) |
| Fourth Application (ECF No. 2883) | September 14, 2010 (ECF No. 2981) |
| Fifth Application (ECF No. 3207) | December 14, 2010 (ECF No. 3474); March 7, 2013 (ECF No. 5258) |
| Sixth Application (ECF No. 4022) | June 1, 2011 (ECF No. 4125); March 7, 2013 (ECF No. 5258) |
| Seventh Application (ECF No. 4376) | October 19, 2011 (ECF No. 4471); March 7, 2013 (ECF No. 5258) |
| Eighth Application (ECF No. 4676) | January 2, 2013 (ECF No. 5181);[6] March 7, 2013 (ECF No. 5258) |
| Ninth Application (ECF No. 4936) | August 30, 2012 (ECF No. 5012); March 7, 2013 (ECF No. 5258) |
| Tenth Application (ECF No. 5097) | December 19, 2012 (ECF No. 5161); March 7, 2013 (ECF No. 5258) |
| Eleventh Application (ECF No. 5333) | June 5, 2013 (ECF No. 5383) |
| Twelfth Application (ECF No. 5490) | October 17, 2013 (ECF No. 5547) |
| Thirteenth Application (ECF No. 5566) | December 17, 2013 (ECF No. 5605) |

---

[5] On March 7, 2013, this Court entered an Errata Order (ECF No. 5258) to correct errors in the First, Fifth, Sixth, Seventh, Eighth, Ninth, and Tenth orders approving prior applications for allowance of interim compensation that were filed by the Trustee, B&H, and certain of the Counsel and International Counsel retained by the Trustee. The Errata Order did not affect the amount of compensation payable to the Trustee, B&H, or any of the Trustee's Counsel and International Counsel other than, with respect to SCA Creque, an additional $0.60 became due and owing to that firm.

[6] This order amends and supersedes this Court's March 19, 2012 order (ECF No. 4735), approving the Eighth Interim Fee Application.

| Applications | Orders Entered[5] |
|---|---|
| Fourteenth Application (ECF No. 5980) | April 18, 2014 (ECF No. 6343) |
| Fifteenth Application (ECF No. 7470) | August 28, 2014 (ECF No. 7825) |
| Sixteenth Application (ECF No. 8549) | December 22, 2014 (ECF No. 8867) |
| Seventeenth Application (ECF No. 9583) | April 16, 2015 (ECF No. 9823) |
| Eighteenth Application (ECF No. 10814) | August 27, 2015 (ECF No. 11148) |

## III.    SUMMARY OF SERVICES

14.    A SIPA proceeding contemplates, *inter alia*, the processing of customer claims, the orderly liquidation of the business of a broker-dealer, and the return of Customer Property to the failed brokerage's customers.   Accordingly, the Trustee's and B&H's services, which are summarized in greater detail below, are comprised of specific tasks that are critical to accomplishing those objectives.

### A.    HARDSHIP PROGRAM

15.    The Trustee and B&H implemented a Hardship Program in an effort to accelerate SIPA protection for BLMIS victims suffering hardship.  The first phase of this program is more fully described in prior interim fee applications.  Based on the information received, the Trustee did not sue approximately 250 individuals.

16.    The Trustee expanded the Hardship Program into a second phase at the time he commenced avoidance actions to recover Customer Property.  The Trustee has not pursued, or has terminated, avoidance actions against BLMIS account holders suffering proven hardship.  In November 2010, the Trustee announced that, to forego an avoidance action, the account holder must submit financial and other pertinent information.  Through this program, the Trustee has worked with a substantial number of applicants to confirm their hardship status and dismissed defendants in avoidance actions.

17.    As of July 31, 2015, the Trustee had received 525 applications from avoidance action defendants relating to 338 adversary proceedings.   After reviewing the facts and

7

circumstances presented in each application and, in many cases, requesting additional verifying information, the Trustee dismissed 210 Hardship Program applicants-defendants from avoidance actions.  As of July 31, 2015, there were 66 applications still under review and 249 that were resolved because they were either withdrawn by the applicant, deemed withdrawn for failure of the applicant to pursue the application, denied for lack of hardship or referred for consideration of settlement.  The Trustee has also extended the time for applicants to answer or otherwise respond to avoidance action complaints while their Hardship Program applications are pending.

18.    The Trustee established a Hardship Program Hotline with a telephone number and electronic mail address.  A large number of potential applicants have been assisted by the Trustee through the use of this hotline.

B.    **THE RECOVERY AND RETURN OF CUSTOMER PROPERTY**

a.    **Recoveries Accomplished During The Compensation Period**

19.    Without the need for protracted litigation, during the Compensation Period, the Trustee settled fifty-five cases for $183,773,594.73.  As of July 31, 2015, the Trustee had successfully recovered approximately $10.743 billion.

20.    The Trustee entered into settlements subsequent to the Compensation Period that will bring an additional $232.209 million into the Customer Fund.

21.    The Trustee is also engaged in ongoing settlement negotiations with a number of parties that when completed, will result in additional recoveries for the benefit of customers without the delay and expense of protracted litigation.

22.    Through the end of the Compensation Period, the Trustee recovered $536,102,384.27 as a result of preferences and other settlements that were made pursuant to agreements subject to the net equity dispute.  The United States Supreme Court (the "Supreme Court") declined to review the net equity dispute.

8

## IV.    DETAILED DESCRIPTION OF SERVICES

23.    Given the unprecedented fraud perpetrated by Madoff, the issues presented by this liquidation are complex, discovery is wide-ranging, and the litigation that has ensued is hotly contested. All of this requires an enormous effort by the Trustee and his counsel for the benefit of the victims. The following is a more detailed synopsis of the significant services rendered by the Trustee and B&H during the Compensation Period, organized according to internal B&H matter numbers and task codes.

24.    Matter Number 01 is the general matter number used for tasks by the Trustee and B&H. Task numbers for Matter Number 01 have been assigned for specific categories of work to permit a more detailed analysis of the fees incurred.

25.    Matter Numbers 03-73 (with the exception of Matter Number 05, which relates to customer claims) relate to litigation brought by the Trustee and B&H against various individuals, feeder funds, and entities. In each of these matters, the Trustee and B&H attorneys perform several functions, including the following tasks: conduct legal research, draft internal memoranda, engage in internal meetings regarding investigation and litigation strategy, and engage in discussions with counsel for defendant(s). Rather than repeat these tasks, the description of each matter will be limited to matter-specific tasks and case activity that occurred during the Compensation Period.

### A.    MATTER 01

26.    This matter categorizes time spent by the Trustee and B&H and encompasses the below enumerated tasks.

### a.    Task Code 01: Trustee Investigation

27.    This category relates to time spent with respect to the investigation into BLMIS, Madoff, and various assets.

28.     The Trustee is seeking the return of billions of dollars to the estate of BLMIS for distribution to customers in accordance with SIPA.  In carrying out his investigation into the many layers of complex financial transactions engaged in by Madoff and those who worked for him, the Trustee has issued hundreds of subpoenas, analyzed the myriad of documentation received, and conducted numerous follow-up activities to enforce the Trustee's rights to the return of Customer Property.

29.     During the Compensation Period, the Trustee and B&H attorneys initiated, participated in, and monitored international proceedings involving BLMIS.  B&H attorneys continued the investigation of banks, feeder funds, auditors, insiders, Madoff's friends and family members, former BLMIS employees, and other Madoff-related parties.

30.     B&H attorneys discussed and conferenced with SIPC, Windels Marx, and International Counsel regarding investigation and litigation strategy, prepared requests for discovery, negotiated other discovery-related issues with adversaries, and organized and reviewed documents received in response to third-party inquiries and subpoenas.

**b.      Task Code 02: Bankruptcy Court Litigation**

31.     This category relates to time spent conducting legal research, drafting, filing various pleadings and motions in the main bankruptcy proceeding that affect the hundreds of adversary proceedings filed by the Trustee.

32.     During the Compensation Period, B&H attorneys focused on various administrative tasks relating to the pending litigations.  They continued to develop overall case strategies applicable to the pending litigations and researched various legal issues related to those litigations including developments in Ponzi law, fraudulent transfer law, bankruptcy matters, privilege, evidence, and rules regarding experts and expert testimony.

10

33.    During the Compensation Period, B&H attorneys filed an action seeking to enjoin third parties from pursuing lawsuits that the Trustee argued are subject to permanent injunctions that were previously approved by the Bankruptcy Court.  A hearing was held on February 5, 2015, and the matter is currently under advisement.  *See Picard v. A&G Goldman P'ship*, Adv. Pro. No. 14-02407 (SMB) (Bankr. S.D.N.Y.).  In addition, during the Compensation Period, B&H attorneys filed briefs in response to an appeal filed by an alleged putative class in the District Court, arguing that the Bankruptcy Court properly enforced a permanent injunction barring their claims.  *See Fox v. Picard*, Case No. 14-cv-06790 (JGK) (S.D.N.Y.).  B&H attorneys also opposed the same putative class's petition under Rule 27 to depose Bernard Madoff in the District Court of Delaware, and sought transfer of that case to the Southern District of New York.  *See Marshall v. Madoff*, Case No. 15-mc-56, (JGK) (S.D.N.Y.)

34.    On December 8, 2014, the United States Court of Appeals for the Second Circuit (the "Second Circuit") issued its opinion relating to section 546(e), which the Trustee and B&H attorneys reviewed and analyzed.  *Picard v. Ida Fishman Revocable Trust*, 773 F.3d 411 (2d Cir. 2014).  On March 17, 2015, the Trustee filed a petition for writ of certiorari in the Supreme Court, seeking reversal of that decision.  (Case No. 14-1129).  On June 22, 2015, the Supreme Court denied the Trustee's petition for a writ of certiorari.

35.    On December 5, 2014, Judge Bernstein issued an opinion and order affirming the Trustee's treatment of inter-account transfers as that method relates to application of the net investment method to calculation of a customer's net equity claims.  *In re Bernard L. Madoff*, 522 B.R. 41 (Bankr. S.D.N.Y. 2014).  In February 2015, five separate appeals were filed in the District Court.  (Case Nos. 15-cv-01151; 15-cv-01195; 15-cv-01223; 15-cv-01236; 15-cv-01263

(S.D.N.Y.)).  Oral argument was held before the Honorable Paul A. Engelmayer on September 17, 2015, and the parties are awaiting a decision.

36.    In a declaration related to the Inter-Account Transfer matter, one customer raised an issue with respect to certain withdrawals that were reflected on his BLMIS customer account statements.  *See* Declaration of Aaron Blecker, In Opposition to the Trustee's Motion to Affirm The Application of The Net Investment Method to the Determination of Customer Transfers Between BLMIS Accounts (ECF No. 6761).  Several other customers objected to the Trustee's denial of their net equity claims for similar reasons.  These customers dispute whether they actually received funds that appear to be identified on BLMIS customer account statements as "PW", which the Trustee understands to indicate "Profit Withdrawals."

37.    Upon further review and analysis, the Trustee discovered that several hundred accounts contained the notation "PW."  In light of the large number of impacted accounts, the Trustee sought to institute an omnibus proceeding to resolve the question of whether the Trustee's treatment of "PW" transactions as cash withdrawals for the purposes of a customer's net equity calculation is proper.  *See* Motion for Order Establishing Schedule For Limited Discovery & Briefing On Profit Withdrawal Issue (ECF No. 9357).  Following discussions with various counsel, the Trustee withdrew his Motion and filed an Amended Motion for Order Establishing Schedule for Limited Discovery and Briefing on Profit Withdrawal Issue (ECF No. 10017).  The Court granted the Amended Motion on June 25, 2015 (ECF No. 10266).

38.    On July 14, 2015, the Trustee filed his motion and memorandum of law on the Profit Withdrawal Issue, along with the supporting declarations.  (ECF Nos. 10660-10664).  The parties are currently proceeding under the schedule set forth therein.

39.    On December 10, 2014, the Bankruptcy Court issued the Order Concerning Further Proceedings on Extraterritoriality Motion and Trustee's Omnibus Motion for Leave to Replead and for Limited Discovery (the "Extraterritoriality Scheduling Order").  The opposing parties filed their brief on December 31, 2014.  During the Compensation Period, the Trustee and B&H attorneys worked on their opposition, including the main brief, proffered allegations, amended complaints, and individual briefs for all 91 cases implicated in the extraterritoriality proceedings.  These filings were completed by June 30, 2015.

### c.    Task Code 03: Feeder Funds

40.    This matter categorizes time spent by the Trustee and his counsel pursuing avoidance and recovery actions against entities which maintained accounts at BLMIS and had their own investors.  The Trustee and his counsel continue to identify, investigate, and monitor feeder funds in the United States and abroad and prosecute actions against such feeder funds for the recovery of Customer Property.  Separate matter numbers have been assigned to individual feeder funds sued by the Trustee.

### d.    Task Code 04: Asset Research and Sale

41.    This category relates to time spent with respect to the discovery, recovery, and liquidation of various assets for the benefit of the estate.

42.    During the Compensation Period, the Trustee and B&H attorneys conducted due diligence in connection with the liquidation of assets held by Madoff Family, LLC; conducted due diligence in connection with certain interests of Madoff Energy LLC and its affiliates; and continued to value the intellectual property interest in Primex, evaluated corporate governance issues, strategized as to its sale and engaged consultants to assist in the valuation and marketing of certain intellectual property of Primex.

13

43.    In addition, during the Compensation Period, the Trustee completed the sales of certain assets through auctions at Sotheby's and Litchfield County Auctions.

44.    During the Compensation Period, the Trustee continued to recover funds from securities that BLMIS purchased and sold prior to December 11, 2008 in connection with its proprietary trading operations.

### e.    Task Code 05: Internal Meetings with Staff

45.    This category relates to time spent by the Trustee and B&H attorneys in internal meetings regarding the liquidation proceeding, investigation and litigation strategy, as well as training sessions for attorneys and paraprofessionals.  Internal meetings and discussions have ensured the effective use of time spent on this matter and avoided duplicative efforts.

### f.    Task Code 07: Billing and Trustee Reports

46.    This category relates to time spent by the Trustee, B&H attorneys, and paraprofessionals reviewing the monthly B&H billing statements prior to submitting the statements to SIPC to ensure that time was properly billed, correcting any errors in time entries, writing off certain time and expenses as agreed to by B&H, preparing fee applications, responding to motions for leave to appeal fee orders, preparing Trustee reports, and other related tasks.

### g.    Task Code 08: Case Administration

47.    This category relates to time spent assisting the efficient administration of the case.

48.    The Trustee filed several motions before this Court that govern the treatment of and procedures related to the efficient litigation of these actions.  These procedures ensure compliance with the Bankruptcy Code and SIPA, as well as consistency and transparency.

49.     On October 20, 2011, the Trustee and B&H moved for an Order Establishing Noticing Procedures in order to streamline the procedural aspects of service in the main proceeding and all related adversary proceedings.  (ECF No. 4469).  This Court entered the Order on December 5, 2011.  (ECF No. 4560).

50.     On October 28, 2011, this Court entered an Order Granting Supplemental Authority To Stipulate To Extensions Of Time To Respond And Adjourn Pre-Trial Conferences to March 16, 2012.  (ECF No. 4483).  Thereafter, on January 30, 2012, a supplemental Order was entered granting authority to extend time to respond to the complaint and adjourn the pre-trial conferences through September 14, 2012.  (ECF No. 4483).  Subsequently, on December 11, 2013, a supplemental Order was entered granting authority to extend time to respond to the complaint and adjourn the pre-trial conferences through July 18, 2014.  (ECF No. 5358).

### h.    Task Code 09: Banks

51.     Primarily as a result of international and domestic feeder fund investigations, the Trustee commenced investigations of numerous banks and other financial institutions involved with BLMIS.  Time categorized under this task code relates to the investigation of target banks and the roles played by the banks in the Ponzi scheme, the preparation of letters of inquiry and subpoenas, the review of responses to letters and subpoenas received from such banks and other third parties, and the preparation of pleadings relating to claims that will be brought against such banks.  Separate matter numbers have been assigned to banks sued by the Trustee.

### i.  Task Code 10: Court Appearances[7]

52.     This category relates to time spent by the Trustee and B&H attorneys making court appearances in this Court, other federal courts within the Second Circuit, and various courts abroad.

### j.  Task Code 11: Press Inquiries and Responses

53.     This category relates to time spent by the Trustee, B&H attorneys, and paraprofessionals in responding to press inquiries, preparing and issuing press releases, and preparing for and holding press conferences relating to BLMIS, Madoff, customer claims, and the recovery of funds.

### k.  Task Code 12: Document Review

54.     This category relates to time spent by the Trustee and B&H attorneys reviewing documents received from parties and third parties in response to the hundreds of letters and subpoenas issued by the Trustee, as well as other discovery-related tasks that cross multiple cases.

### l.  Task Code 13: Depositions and Document Productions by the Trustee

55.     This category generally relates to time spent by the Trustee and B&H attorneys conducting discovery that touches upon more than one matter and responding to discovery propounded to the Trustee by various third parties.

### m.  Task Code 14: International

56.     The fraud Madoff perpetrated through BLMIS has many international implications involving foreign individuals, feeder funds, and international banking institutions. The Trustee is actively investigating and seeking to recover assets for the BLMIS estate in many

---

[7] Many attorneys making court appearances bill their time for appearances to either Task Code 02–Bankruptcy Court Litigation or to the matter number that relates to that specific litigation, rather than to Task Code 10.

different jurisdictions, including Austria, the Bahamas, Bermuda, the British Virgin Islands ("BVI"), Canada, the Cayman Islands, England, France, Gibraltar, Guernsey, Ireland, Israel, Liechtenstein, Luxembourg, Spain, and Switzerland.  These investigations utilize a combination of voluntary requests for information and the use of the Trustee's subpoena power.

57.    This category relates to the ongoing investigation, the preparation and service of subpoenas against entities in many jurisdictions, service of process, and communication with International Counsel regarding the utilization of local laws to obtain necessary discovery and pursue recovery of customer property in foreign jurisdictions.  The investigation is made challenging by the broad array of bank secrecy statutes and other foreign legislation designed to limit discovery.

58.    In addition, time categorized by this task code relates to the participation in and monitoring of various BLMIS-related third-party actions brought in Europe and the Caribbean, as well as discussions with International Counsel on strategic and jurisprudential matters that involve multiple actions against more than one defendant.

### n.    Task Code 15: Charities

59.    This category relates to reviewing financial documents and conducting due diligence of charitable accounts held at BLMIS, corresponding and meeting with the representatives of these charities to obtain further information concerning transfers from their BLMIS accounts and discussing settlement and resolution of issues.

### o.    Task Code 19: Non-Bankruptcy Litigation

60.    This matter categorizes time spent by the Trustee and B&H attorneys on non-bankruptcy litigation.

p.      **Task Code 20: Governmental Agencies**

61.    This matter categorizes time spent by the Trustee and B&H attorneys responding to requests for information by the United States Attorney's Office for the Southern District of New York, the Internal Revenue Service, various congressional representatives, and other government agencies.

q.      **Task Code 21: Allocation**

62.    This matter categorizes time spent by the Trustee and B&H attorneys coordinating the distribution of Customer Property.

63.    The ultimate purpose of marshaling the Customer Fund is to distribute those monies, as SIPA directs, to BLMIS customers with allowed claims.

64.    The Trustee previously filed six motions seeking entry of an order approving allocations of property to the Customer Fund and authorizing pro rata interim distributions of Customer Property, and this Court entered orders approving those motions (the status of the sixth motion is discussed below):

| No. of Distribution | Date of Distribution | Amount Allocated | Amount Distributed through the Compensation Period | Percentage Distributed | ECF No. for Motion | ECF No. for Order |
|---|---|---|---|---|---|---|
| 1 | 10/05/2011 | $2.618 billion | $655.931 million[8] | 4.602% | 4048 | 4217 |
| 2 | 09/19/2012 | $5.501 billion | $4.764 billion[9] | 33.556% | 4930 | 4997 |
| 3 | 03/29/2013 | $1.198 billion | $666.285 million[10] | 4.721% | 5230 | 5271 |

[8] Subsequent to the Compensation Period ending on July 31, 2015, an additional $20.665 million was distributed as catch-up payments, bringing the total First Interim Distribution amount to $676.595 million through November 19, 2015.

[9] Subsequent to the Compensation Period ending on July 31, 2015, an additional $150.439 million was distributed as catch-up payments, bringing the total Second Interim Distribution amount to $4.915 billion through November 19, 2015.

| No. of Distribution | Date of Distribution | Amount Allocated | Amount Distributed through the Compensation Period | Percentage Distributed | ECF No. for Motion | ECF No. for Order |
|---|---|---|---|---|---|---|
| 4 | 05/05/2014 | $477.504 million | $448.035 million[11] | 3.180% | 6024 | 6340 |
| 5 | 02/06/2015 | $704.396 million | $385.995 million[12] | 2.743% | 8860 | 9014 |

65.    The Trustee had distributed approximately $7.746 billion[13] to BLMIS customers through the end of the Compensation Period, or 48.802% of each BLMIS customer's allowed claim. This represents a significant milestone in this litigation, with 1,163 BLMIS accounts fully satisfied through the end of the Compensation Period. The 1,163 fully satisfied accounts represent more than 52% of accounts with allowed claims.

66.    On April 15, 2015, the Trustee filed a motion seeking entry of an order approving the sixth allocation of property to the Customer Fund and authorizing the sixth interim distribution to customers whose claims have not been fully satisfied because their net equity claims as of the Filing Date exceeded the statutory SIPA protection limit of $500,000 (respectively, the "Sixth Allocation" and "Sixth Interim Distribution"). (ECF No. 9807). In the Sixth Allocation and Sixth Interim Distribution Motion, the Trustee sought approval to release the bulk of the Time-Based Damages reserve and distribute such funds under the terms set forth

[10] Subsequent to the Compensation Period ending on July 31, 2015, an additional $21.103 million was distributed as catch-up payments, bringing the total Third Interim Distribution amount to $687.387 million through November 19, 2015.

[11] Subsequent to the Compensation Period ending on July 31, 2015, an additional $14.214 million was distributed as catch-up payments, bringing the total Fourth Interim Distribution amount to $462.249 million through November 19, 2015.

[12] Subsequent to the Compensation Period ending on July 31, 2015, an additional $12.261 million was distributed as catch-up payments, bringing the total Fifth Interim Distribution amount to $398.256 million through November 19, 2015.

[13] This amount is inclusive of the First though Fifth Interim Distributions and approximately $825.190 million of advances committed by the Securities Investor Protection Corporation.

19

therein. These funds became available for distribution following the decision of the Second Circuit on the "time-based damages" issue. *In Re Bernard L. Madoff Inv. Sec. LLC,* 779 F.3d 74 (2d Cir. Feb. 20, 2015) (the "Time-Based Damages Decision").

67.     The Trustee could not distribute these funds until the time limit to file a petition for certiorari with the Supreme Court expired with no petition being filed or a final, non-appealable order was entered on the Time-Based Damages Decision.

68.     At the time the Trustee filed the Sixth Allocation Motion, no petitions for certiorari had been filed on the Time-Based Damages Decision. The time period to file a petition for certiorari was due to expire on May 21, 2015. The hearing date on the Sixth Allocation Motion was set for May 28, 2015, which would permit the hearing to go forward if no petitions for certiorari were filed by that date. The Trustee indicated in the Sixth Allocation Motion that the hearing may not be able to go forward if a petition for certiorari was filed.

69.     A group of claimants represented by Helen Davis Chaitman, Esq. moved for an extension of time within which to file a petition for certiorari with the Supreme Court. The Supreme Court granted that request on April 28, 2015, extending the time to file a petition for certiorari to July 20, 2015. *Marsha Peshkin v. Irving H. Picard, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,* No. 14A1099 (2015).

70.     Following the extension of time to file the petition for a writ of certiorari, the Trustee filed a notice of adjournment of the hearing on the Sixth Allocation Motion, adjourning the hearing from May 28, 2015 to July 29, 2015. The purpose of the adjournment was to allow the extended time period within which to file a petition for certiorari to expire. If no petition was filed, the Trustee would seek the Court's approval to allocate and distribute funds from the fund of customer property, as outlined in the Trustee's Sixth Allocation Motion.

71.    On July 20, 2015, the group of claimants represented by Helen Davis Chaitman filed a petition for a writ of certiorari with the Supreme Court.  Accordingly, the hearing on the Trustee's Sixth Allocation Motion was adjourned *sine die*, pending the determination of the petition for a writ of certiorari by the Supreme Court.

72.    On October 5, 2015, the Supreme Court denied the petition for certiorari, paving the way for the Trustee to request authorization from the Court to make a sixth distribution to customers of more than $1.18 billion—up to 8.186% of each customer's allowed claim amount. On October 20, 2015, the Trustee filed a Notice of Hearing and Supplemental Filing in Further Support of the Trustee's Motion for an Order Approving Sixth Allocation of Property to the Fund of Customer Property and Authorizing Sixth Interim Distribution to Customers (ECF No. 11834) and an Affidavit of Vineet Sehgal in support.  (ECF No. 11835).  A hearing on the Trustee's Sixth Allocation Motion was held on November 18, 2015.  On November 18, 2015, this Court entered an order approving the Trustee's Sixth Allocation Motion.  (ECF No. 12066).

## B.    **MATTER 03 – CHAIS**

73.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against the Estate of Stanley Chais, Pamela Chais, and a number of related individuals and entities (collectively, the "Chais Defendants") seeking the return of more than $1.1 billion under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable laws, for preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Chais Defendants.  *Picard v. Estate of Chais, et. al.*, Adv. No. 09-01172 (SMB) (Bankr. S.D.N.Y.).

74.    During the Compensation Period, B&H attorneys continued to participate in discussions regarding the potential settlement of the case following the conclusion of the mediation ordered by this Court on July 18, 2012 in *Picard v. Chais et al.* and the related action

21

to enforce the automatic stay and enjoin certain state court third party actions brought by investors of Stanley Chais and the California Attorney General.

### C.    **MATTER 04 – MERKIN**

75.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against sophisticated money manager and Madoff associate J. Ezra Merkin ("Merkin"), Gabriel Capital Corporation ("GCC"), and Merkin's funds: Gabriel Capital, L.P. ("Gabriel Capital"), Ariel Fund, Ltd. ("Ariel Fund"), Ascot Partners, L.P. ("Ascot Partners"), and Ascot Fund Limited ("Ascot Fund," collectively, the "Merkin Defendants").  The Trustee alleges that Merkin knew or was willfully blind to the fact that Madoff's investment advisory business was predicated on fraud and as filed seeks the return of nearly $560 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences and fraudulent conveyances in connection with certain transfers of property by BLMIS to or for the benefit of the Merkin Defendants.  *Picard v. J. Ezra Merkin, et al.*, Adv. No. 09-01182 (SMB) (Bankr. S.D.N.Y.).

76.    During the Compensation Period, B&H attorneys worked to finalize a settlement between the Trustee, Gabriel Capital, Ariel Fund, and Bart M. Schwartz, as the Appointed Receiver of Gabriel Capital and Ariel Fund.  On May 29, 2015, the Trustee filed a motion with the Court entering an order approving the settlement.  (ECF Nos. 266-267).  On June 23, 2015, the Court entered an order granting the Trustee's motion and approving the settlement.  (ECF No. 270).

77.    B&H attorneys also continued to engage in expert discovery, which concluded on July 17, 2015.  On May 15, 2015, the Trustee and the Merkin Defendants served rebuttal expert reports.  Additionally, B&H attorneys prepared to take and defend the depositions of expert witnesses and handled related expert discovery requests.

78. During the Compensation Period, B&H attorneys strategized and prepared for anticipated summary judgment motions by the remaining defendants and prepared documents and completed related tasks in preparation for trial.

### D.    MATTER 05 – CUSTOMER CLAIMS

#### a.    Customer Claims

79. During the Compensation Period, the Trustee allowed $872,724,208.89 in customer claims, bringing the total amount of allowed claims as of July 31, 2015 to $14,440,820,877.82.  As of July 31, 2015, the Trustee has paid or committed to pay $825,190,489.69 in cash advances from SIPC.  This is the largest commitment of SIPC funds of any SIPA liquidation proceeding and greatly exceeds the total aggregate payments made in all SIPA liquidations to date.

80. As of July 31, 2015, 114 claims relating to 79 accounts were "deemed determined," meaning that the Trustee has instituted litigation against those account holders and related parties.  The complaints filed by the Trustee in those litigations set forth the express grounds for disallowance of customer claims under § 502(d) of the Bankruptcy Code. Accordingly, such claims will not be allowed until the avoidance actions are resolved by settlement or otherwise and the judgments rendered against the claimants in the avoidance actions are satisfied.

#### b.    General Creditor Claims

81. As of July 31, 2015, the Trustee had received 427 timely and 22 untimely filed secured and unsecured priority and non-priority general creditor claims totaling approximately $1.7 billion.  The claimants include vendors, taxing authorities, employees, and customers filing claims on non-customer proof of claim forms.  Of these 449 claims and $1.7 billion, the Trustee has received 94 general creditor claims and 49 broker-dealer claims totaling approximately $265

million.  At this time, the BLMIS general estate has no funds from which to make distributions to priority/non-priority general creditors and/or broker dealers.

     c.    **The Trustee Has Kept Customers Informed Of The Status Of The Claims Process**

82.    Throughout the liquidation proceeding, the Trustee has kept customers, interested parties, and the public informed of his efforts by maintaining the Trustee Website (www.madofftrustee.com), a toll-free customer hotline, conducting a Bankruptcy Code § 341(a) meeting of creditors on February 20, 2009, and responding to the multitude of phone calls, e-mails, and letters received on a daily basis, both from claimants and their representatives.

83.    The Trustee Website includes features that allow the Trustee to share information with claimants, their representatives, and the general public with regard to the ongoing recovery efforts and the overall liquidation. In addition to containing the Trustee's court filings, media statements, and weekly information on claims determinations, the Trustee Website includes up-to-date information on the status of Customer Fund recoveries, an "Ask the Trustee" page where questions of interest are answered and updated, a letter from the Chief Counsel to the SIPA Trustee on litigation matters, a detailed distribution page, an FAQs page, and a timeline of important events.  The Trustee Website is monitored and updated on a daily basis.

84.    In addition, the Trustee Website allows claimants to e-mail their questions directly to the Trustee's professionals, who follow up with a return e-mail or telephone call to the claimants.  As of July 31, 2015, the Trustee and his professionals had received and responded to more than 7,100 e-mails from BLMIS customers and their representatives via the Trustee Website.

85.     The toll-free customer hotline provides status updates on claims and responses to claimants' questions and concerns.  As of July 31, 2015, the Trustee, B&H, and the Trustee's professionals had fielded more than 8,200 hotline calls from claimants and their representatives.

86.     The Trustee and his team have endeavored to respond in a timely manner to every customer inquiry and ensure that the customers are as informed as possible about various aspects of the BLMIS proceeding.

87.     The Trustee and B&H attorneys continued the Trustee's Hardship Program, reviewed hardship applications, and communicated regularly with SIPC and AlixPartners regarding the review and determination of hardship applicants, the customer claims review process, the customer claims database, reconciliation of investment advisory accounts and other matters of interest in determining claims.

88.     The Trustee and B&H attorneys reviewed customer accounts and communicated with customers or their representatives regarding possible settlements related to those accounts.

E.     **MATTER 06 – VIZCAYA**

89.     This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Vizcaya Partners Ltd. ("Vizcaya"), Asphalia Fund Ltd. ("Asphalia"), Zeus Partners Ltd. ("Zeus") and Banque Jacob Safra (Gibraltar) Ltd. ("Bank Safra") (collectively, the "Vizcaya Defendants") seeking the return of $180 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Vizcaya Defendants.  *Picard v. Vizcaya Partners Ltd.*, Adv. No. 09-01154 (SMB) (Bankr. S.D.N.Y.).

90.     During the Compensation Period, B&H attorneys continued to analyze court submissions, document productions and information collected during the Trustee's investigation

to verify support for the Trustee's allegations seeking to recover transfers received by the Vizcaya Defendants.

91.    Based on this analysis, B&H attorneys prepared a proposed second amended complaint to be submitted pursuant to the Extraterritoriality Scheduling Order. *See* discussion *supra* Section IV(A)(b).

92.    In accordance with the Extraterritoriality Scheduling Order, B&H attorneys also drafted a supplemental submission identifying allegations in the Second Amended Complaint that support the extraterritorial application of SIPA and the Bankruptcy Code to Defendant Zeus, who joined in the motion seeking dismissal based on *Morrison v. National Australian Bank*, 561 U.S. 247 (2010).

93.    B&H attorneys also collaborated with foreign counsel regarding the Trustee's foreign proceedings in Gibraltar and particular issues of Gibraltar law as applicable to this action.

## F.    <u>MATTER 07 – MADOFF FAMILY</u>

94.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing numerous avoidance actions against members of the Madoff family.

95.    On October 2, 2009, the Trustee filed a complaint against Peter Madoff, the late Andrew Madoff, the late Mark Madoff, and Shana Madoff (collectively, the "Family Defendants") asserting claims for preferences, fraudulent transfers, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Family Defendants. *Picard v. Peter B. Madoff*, Adv. No. 09-01503 (SMB) (Bankr. S.D.N.Y.), ECF No. 1.  On March 15, 2010, each of the Family Defendants separately moved this Court to dismiss the Trustee's complaint.  (ECF Nos. 13–19).  On September 22, 2011, this Court denied in part and granted in part the motions to dismiss.  (ECF No. 55).  Defendant Andrew Madoff,

individually, and as Executor of the Estate of Mark D. Madoff, filed a motion for leave to seek interlocutory review of this Court's September 22, 2011 decision.  (ECF No. 56).  Following briefing and oral argument, the District Court denied that motion on December 22, 2011.  (ECF No. 74).

96.    In accordance with this Court's September 22, 2011 decision, on November 7, 2011, the Trustee filed an amended complaint against the Family Defendants, identifying additional transfers and seeking the return of over $225 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent transfers, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Family Defendants.  *Picard v. Peter B. Madoff*, Adv. No. 09-01503 (SMB) (Bankr. S.D.N.Y.), (ECF No. 64).  Shana Madoff, Peter Madoff, and Andrew Madoff, both on his own behalf and as Executor of the Estate of Mark D. Madoff, each answered the amended complaint on January 17, 2012.  (ECF Nos. 78, 79, 80).

97.    On December 23, 2011, the Trustee filed a motion seeking leave to file a second amended complaint, adding additional claims and defendants to the action against the Family Defendants.  (ECF No. 71).  On April 4, 2012, following briefing and oral argument, this Court issued a written opinion denying in part and granting in part the Trustee's motion. (ECF No. 106).  On May 4, 2012, the Trustee filed a second amended complaint against the Family Defendants and named as additional defendants Mark Madoff's widow, Stephanie Mack, and Andrew Madoff's wife, Deborah Madoff. (ECF No. 113).   The Trustee also named Mark Madoff's ex-wife, Susan Elkin, as a subsequent transferee defendant.   Defendants Andrew Madoff, the Estate of Mark D. Madoff, Shana Madoff, and Susan Elkin answered the second amended complaint on July 2, 2012.   (ECF Nos. 124–126).   Susan Elkin was voluntarily

27

dismissed with prejudice pursuant to stipulation by the parties on March 26, 2014. (ECF No. 177).

98.     On April 2, 2012, Stephanie Mack and Deborah Madoff moved to withdraw the reference from this Court. (ECF Nos. 101, 104). The Trustee subsequently adjourned the time for Stephanie Mack and Deborah Madoff to respond to the second amended complaint. (ECF Nos. 128, 134, 139, 141, 149, 152, 154, 157, 159, 165, 167). On December 6, 2013, the District Court ruled that the Trustee was barred from pursuing common law claims against Stephanie Mack and Deborah Madoff because they do not fall within the insider exception to the *in pari delicto* doctrine, and returned the cases to the Bankruptcy Court. Deborah Madoff was voluntarily dismissed with prejudice pursuant to stipulation by the parties on June 27, 2014. (ECF No. 183). Stephanie Mack was voluntarily dismissed with prejudice by the Trustee on April 6, 2015. (ECF No. 211).

99.     On June 29, 2012, Peter Madoff pleaded guilty to a two-count indictment and consented to the entry of a forfeiture order for $143.1 billion. Under the Preliminary Forfeiture Order, Peter Madoff and his wife, Marion Madoff, forfeited substantially all of their assets to the United States. Subsequently, on February 6, 2013, Peter Madoff was dismissed from this action in connection with the entry of a consent judgment in the amount of $90,390,500.00. (ECF No. 145). On February 7, 2013, the Trustee dismissed a separate adversary proceeding against Marion Madoff through a notice of voluntary dismissal with prejudice. *Picard v. Marion Madoff*, Adv. No. 10-04310 (SMB) (Bankr. S.D.N.Y.), (ECF No. 17).

100.     In connection with Peter Madoff's plea agreement, his daughter, defendant Shana Madoff, also forfeited to the United States substantially all of her assets that were the subject of

the Trustee's claims against her.  Subsequently, on March 18, 2013, the Trustee dismissed the case against Shana Madoff with prejudice.  (ECF No. 148).

101.    On July 15, 2014, the Trustee filed a motion seeking leave to file a third amended complaint, adding additional support for existing claims and eliminating allegations against defendants that had been dismissed.  (ECF No. 184).  Andrew Madoff, both on his own behalf and as Executor of the Estate of Mark D. Madoff, opposed the Trustee's motion on August 12, 2014 (the "Opposition").  (ECF No. 191).  By stipulation of the parties and order of this Court, the Trustee has until January 8, 2016 to file a reply to the Opposition, and a hearing on the motion is scheduled before this Court on January 29, 2016.  (ECF No. 223).  Following the death of Andrew Madoff on September 3, 2014, the parties stipulated to an extension of the deadline to substitute the Estate of Andrew Madoff, Martin Flumenbaum as Executor of the Estate of Andrew Madoff, and David Blumenfeld as the Successor Executor of the Estate of Mark Madoff to January 8, 2016.  (ECF No. 222).

102.    The Trustee commenced two adversary proceedings against members of the late Andrew Madoff and the late Mark Madoff's families to recover fraudulent conveyances made by Bernard and Ruth Madoff.  *Picard v. Stephanie S. Mack*, Adv. No. 10-05328 (SMB) (Bankr. S.D.N.Y.); *Picard v. Deborah Madoff*, Adv. No. 10-05332 (SMB) (Bankr. S.D.N.Y.).  Amended complaints were filed in these actions on February 7, 2012.  *Picard v. Mack*, Adv. No. 10-05328, (ECF No. 23); *Picard v. Deborah Madoff*, Adv. No. 10-05332, (ECF No. 13).  All defendants in both actions answered on March 23, 2012.  *Picard v. Mack*, Adv. No. 10-05328, (ECF No. 30); *Picard v. Deborah Madoff*, Adv. No. 10-05332, (ECF No. 20).  On March 26, 2014, the parties filed a stipulation for voluntary dismissal of Susan Elkin, Daniel G. Madoff and K.D.M. with prejudice.  *Picard v. Mack*, Adv. No. 10-05328, (ECF No. 56).  On April 6, 2015, the parties

filed a stipulation for voluntary dismissal of the entire action and all other remaining defendants with prejudice. *Picard v. Mack*, Adv. No. 10-05328, (ECF No. 73).

103.    Deborah Madoff moved to withdraw the reference from this Court on April 2, 2012. *Picard v. Deborah Madoff*, Adv. No. 10-05332, (ECF No. 22).  On October 28, 2013, the District Court ordered that the proceeding be returned to the District Court.  *Picard v. Deborah Madoff*, Adv. No. 12-02751, (ECF No. 8).  On June 27, 2014, the parties filed a stipulation for voluntary dismissal of the action with prejudice.  (ECF No. 54).

104.    The Trustee commenced two adversary proceedings against foundations created by and named for the late Andrew and Mark Madoff and their spouses: *Picard v. Mark & Stephanie Madoff Found.*, Adv. No. 10-05325 (SMB) (Bankr. S.D.N.Y.) and *Picard v. Deborah & Andrew Madoff Found.*, Adv. No. 10-05330 (SMB) (Bankr. S.D.N.Y.).  The defendants in these cases answered on January 17, 2012, and March 23, 2012, respectively.  *Picard v. Mark & Stephanie Madoff Found.*, Adv. No. 10-05325, (ECF No. 10); *Picard v. Deborah & Andrew Madoff Found.*, Adv. No. 10-05330, (ECF No. 10).  These proceedings were voluntarily dismissed without prejudice by stipulation of the parties and order of this Court on February 4, 2014. *Picard v. Mark & Stephanie Madoff Found.*, Adv. No. 10-05325, (ECF No. 38); *Picard v. Deborah & Andrew Madoff Found.*, Adv. No. 10-05330, (ECF No. 42).

105.    The Trustee commenced various adversary proceedings against Madoff's relatives beyond his immediate family to recover preferences and fraudulent conveyances.  Currently, the Trustee's cases styled *Picard v. Wiener Family Ltd. P'ship*, Adv. No. 10-04323 (Bankr. S.D.N.Y.) and *Picard v. Wiener*, Adv. No. 10-04293 (Bankr. S.D.N.Y.) remain pending. Discovery is ongoing in these proceedings, and fact discovery is currently scheduled to close on

March 15, 2016. *Picard v. Wiener Family Ltd. P'ship*, Adv. No. 10-04323, (ECF No. 34); *Picard v. Wiener*, Adv. No. 10-04293, (ECF No. 34).

### G.    **MATTER 09 – FAIRFIELD GREENWICH**

106.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance and recovery actions against Fairfield Sentry Ltd. ("Sentry"), Fairfield Sigma Ltd. ("Sigma), Fairfield Lambda Ltd. ("Lambda") (collectively, the "Fairfield Funds"), Greenwich Sentry, L.P. ("Greenwich Sentry"), Greenwich Sentry Partners, L.P. ("Greenwich Sentry Partners", and together with Greenwich Sentry, the "Greenwich Funds"), and other defendants seeking the return of approximately $3.5 billion under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Fairfield Funds and the Greenwich Funds. *Picard v. Fairfield Sentry Ltd. (In Liquidation)*, Adv. No. 09-01239 (SMB) (Bankr. S.D.N.Y. May 18, 2009). This matter also categorizes time spent by the Trustee and B&H attorneys pursuing avoidance and recovery actions, as well as damages claims against other Fairfield Greenwich Group related entities and individuals, including the founding partners and other management officials.

107.    On June 7, 2011, this Court conditionally approved a settlement agreement between the Trustee and the Joint Liquidators for the Fairfield Funds (the "Joint Liquidators"), (ECF No. 95). On July 13, 2011, this Court entered consent judgments between the Trustee and Lambda in the amount of $52.9 million (ECF No. 108), Sentry in the amount of $3.054 billion (ECF No. 109), and Sigma in the amount of $752.3 million (ECF No. 110).

108.    As part of the Fairfield Funds settlement, Sentry agreed to permanently reduce its net equity claim from approximately $960 million to $230 million. Additionally, the Joint Liquidators agreed to make a $70 million payment to the Customer Fund. The Joint Liquidators

also agreed to assign to the Trustee all of the Fairfield Funds' claims against the Fairfield

Greenwich Group management companies, officers, and partners, and the Trustee retained his

own claims against the management defendants. Further, the Trustee and the Joint Liquidators

agreed to share future recoveries in varying amounts, depending on the nature of the claims.

109.    On July 7, 2011, this Court approved a settlement between the Trustee and the

Greenwich Funds, wherein this Court entered judgment against Greenwich Sentry in an amount

over $206 million and against Greenwich Sentry Partners in an amount over $5.9 million.

*Picard v. Fairfield Sentry*, Adv. No. 09-01239 (SMB) (Bankr. S.D.N.Y.), (ECF No. 107).  In the

settlement, the Greenwich Funds agreed to permanently reduce their net equity claim from

approximately $143 million to approximately $37 million, for a combined reduction of over

$105.9 million.  Additionally, the Greenwich Funds assigned to the Trustee all of their claims

against Fairfield Greenwich Group management and agreed to share with the Trustee any

recoveries they receive against service providers.

110.    On April 2, 2012, the remaining defendants in the *Fairfield Sentry* action filed

motions to withdraw the reference on a number of issues that later became subject to Common

Briefing and hearings before Judge Rakoff of the District Court.  *See* discussion *infra* Section

IV(J).  The Trustee briefed and presented argument at the hearings on these issues before the

District Court.  As of July 31, 2014, the District Court had issued decisions on all issues subject

to Common Briefing and remanded the cases to this Court for further findings based on the legal

standards set forth in the District Court's decisions.  *See* discussion *infra* Section IV(EE).

111.    On June 6, 2012, the Trustee filed additional recovery actions against entities or

persons related to Fairfield Greenwich Group employees or partners entitled *Picard v. RD Trust*,

Adv. No. 12-01701 (SMB) (Bankr. S.D.N.Y.), *Picard v. Barrenche Inc.*, Adv. No. 12-01702

(SMB) (Bankr. S.D.N.Y.), and *Picard v. Alix Toub*, Adv. No. 12-01703 (SMB) (Bankr.

S.D.N.Y.). The parties in the *Toub* action have entered into a stipulated stay as permitted by this

Court. None of the defendants in the three actions have yet responded to the Trustee's

complaints.

112.    On November 6, 2012 in the District Court, in a putative class action filed by

former Fairfield Funds investors against several Fairfield Greenwich Group partners and

management officials, the plaintiffs and the Fairfield Greenwich Group related defendants filed a

motion seeking preliminary approval of a settlement. *Anwar v. Fairfield Greenwich Ltd.*, No. 09

Civ. 118 (VM)(FM) (S.D.N.Y.), ECF No. 997. On November 29, 2012, the Trustee filed an

application seeking an injunction against the implementation of the settlement. *See Picard v.

Fairfield Greenwich Ltd.*, Adv. No. 12-02047 (SMB) (Bankr. S.D.N.Y.), ECF No. 2. On

December 21, 2012, the defendants filed a motion to withdraw the reference to the Bankruptcy

Court. (ECF No. 11). On February 6, 2013, the District Court granted the defendants' motion to

withdraw the reference to the Bankruptcy Court, *Picard v. Fairfield Greenwich Ltd.*, 12 Civ.

9408 (VM) (S.D.N.Y.), (ECF No. 30). On March 20, 2013, the District Court denied the

Trustee's application seeking an injunction against the implementation of the *Anwar* settlement.

(ECF No. 59). On April 8, 2013, the Trustee filed a notice of appeal from the District Court's

denial of the Trustee's application for an injunction against the implementation of the *Anwar*

settlement. (ECF No. 61).

113.    On February 26, 2013, the Trustee filed a letter requesting a pre-motion

conference on a motion to intervene in the *Anwar* action. (ECF No. 1054). On March 8, 2013,

the District Court deemed the pre-motion conference letter to be a motion to intervene and

denied the Trustee's request. (ECF No. 1071). On April 8, 2013, the Trustee filed a notice of appeal from the order denying his request to intervene in the *Anwar* action. (ECF. No. 1106).

114.    Briefing on both appeals of the *Anwar* decisions was completed on June 7, 2013. Oral argument on the appeals occurred on October 10, 2013. On August 8, 2014, the Second Circuit issued its decision affirming the District Court's decisions.

115.    On January 8, 2014, in the case entitled *In re: Fairfield Sentry Limited*, No. 11 Civ. 5905 (AT) (S.D.N.Y.), the Court granted a motion to withdraw the reference in an appeal in the Fairfield Sentry Chapter 15 proceedings regarding the Fairfield Sentry Liquidator's ability to assign claims to the Trustee. On January 28, 2014, the Trustee requested a pre-motion conference for a motion to intervene in the matter. On January 30, 2014, the District Court denied the Trustee's request for a pre-motion conference and instead set a briefing schedule for the filing of the motion to intervene. The Trustee submitted his motion to intervene on February 28, 2014. Morning Mist Holdings and Miugal Lomeli filed opposition papers on March 14, 2014. The Trustee filed a reply in support of the motion to intervene on March 21, 2014. On July 31, 2014, the District Court granted the Trustee's motion to intervene and set a briefing schedule on the issue regarding the Fairfield Sentry Liquidator's ability to assign claims to the Trustee. Following the filing of the Trustee's brief, on September 30, 2014, the District Court dismissed the Complaint. The time for filing an appeal of the District Court's decision has expired without any appeal being filed.

116.    A number of defendants in other proceedings, along with some of the Fairfield management defendants, filed motions to dismiss which were subject to Common Briefing in the District Court following motions to withdraw the reference to this Court. All of the Common Briefing decisions have been issued by the District Court. *See* discussion *infra* Section IV(J).

The District Court remanded to this Court several of the proceedings which had been subject to Common Briefing, including the *Fairfield* action.

117.    Some of the *Fairfield* action defendants joined other defendants in the motion to dismiss on extraterritoriality grounds, which had been subject to Common Briefing. The defendants filed a supplemental memorandum in support of the extraterritoriality motion to dismiss on December 31, 2014.    The Trustee filed his response to the supplemental memorandum on June 26, 2015, which included an addendum specific to the *Fairfield* defendants and a proffered Second Amended Complaint.  The defendants' reply memorandum was filed on September 30, 2015.

118.    As part of the briefing on the extraterritoriality motion to dismiss, the Trustee sought the de-designation as confidential of certain documents produced by the *Fairfield* defendants.  Pursuant to a stipulation entered by the Trustee and the *Fairfield* defendants the Trustee submitted the documents to an arbitrator, who ruled the documents were not confidential.  On June 22, 2015, the Trustee submitted a letter to this Court seeking the confirmation of the arbitrator's decision.  On July 15, 2015, this Court entered an order deeming the Trustee's letter to be a motion and granted the Trustee's request to confirm the arbitrator's decision holding the documents not to be confidential.

119.    Pursuant to this Court's order scheduling the extraterritoriality motion to dismiss, the response date to the Trustee's complaint will be set based on the court's ruling on the extraterritoriality motion to dismiss.

### H.    MATTER 11 – COHMAD SECURITIES CORPORATION

120.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Cohmad Securities Corporation, its principals, certain employees of Cohmad, and their family members who held BLMIS IA Accounts (collectively, the "Cohmad

Defendants") seeking the return of over $245 million under SIPA, the Bankruptcy Code, the

New York Fraudulent Conveyance Act, and other applicable law for fraudulent conveyances,

disallowance of any claims filed against the estate by the Cohmad Defendants, and damages in

connection with certain transfers of property by BLMIS to or for the benefit of the Cohmad

Defendants.  *Picard v. Cohmad Sec. Corp.*, Adv. No. 09-01305 (SMB) (Bankr. S.D.N.Y.).  This

matter also includes time spent by the Trustee and B&H attorneys pursuing avoidance actions

against BLMIS customers who were referred to BLMIS by the Cohmad Defendants and are net

winners.

121.    During the Compensation Period, B&H attorneys continued to move forward with

discovery (which has included motion practice) and developing the cases at issue.

## I.    **MATTER 13 – KINGATE**

122.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing

avoidance and recovery under SIPA, the Bankruptcy Code, New York Debtor and Creditor Law

and other applicable law of approximately $926 million in initial transfers BLMIS made to

Kingate Global Fund, Ltd. ("Kingate Global") and Kingate Euro Fund, Ltd. ("Kingate Euro,"

together with Kingate Global, the "Kingate Funds") in the proceeding captioned as *Picard v.

Federico Ceretti*, Adv. No. 09-01161 (BRL) (Bankr. S.D.N.Y.) (the "Kingate Matter").  The

Kingate Funds are in liquidation proceedings in the BVI and Bermuda under the auspices of

court-appointed joint liquidators.  Each of the Kingate Funds filed a customer claim in the SIPA

proceedings, the total combined amount of which is approximately $800 million.  The Trustee

seeks to equitably subordinate the Kingate Funds' customer claims.  Until the Kingate Matter is

resolved, the customer claims are temporarily disallowed under section 502(d) of the Bankruptcy

Code.

123.    From the initial transfers made to the Kingate Funds, the Trustee seeks the recovery of more than $370 million in purported management fees the Kingate Funds subsequently transferred to Kingate Management Limited ("Kingate Management"), as manager of the Kingate Funds in the proceeding.  Those transfers also include more than $297 million that Kingate Management paid out of its management fees as purported dividends to its shareholders and other defendants.

124.    All 16 subsequent transferee defendants in the Kingate Matter are parties to the extraterritoriality proceedings pending before this Court and are subject to the Extraterritoriality Scheduling Order, as modified by the Stipulations and Orders entered on January 14, 2015, ECF No. 8990; February 24, 2015, ECF No. 9350; and March 31, 2015, ECF No. 9720.  *See* discussion *supra* Section IV(A)(b).

125.    During the Compensation Period, B&H attorneys devoted significant time to the research necessary to address the defendants' authorities and arguments that the Trustee may not recover transfers made to foreign-based subsequent transferees.  On June 26, 2015, B&H attorneys filed the Trustee's brief in opposition to the consolidated motions to dismiss (ECF 194). On that same date, B&H attorneys filed a supplemental brief (ECF 195) relating to the domestic nature of the subsequent transfers to the defendants in the Kingate Matter who seek dismissal of the Trustee's Fourth Amended Complaint on extraterritoriality grounds.  The Kingate Funds are not parties to the extraterritoriality proceedings.

126.    By Order entered on April 6, 2015 (ECF 189), this Court denied the motion of defendants FIM Limited, FIM Advisers LLP, Federico Ceretti, and Carlo Grosso against the Trustee and his counsel under 28 U.S.C. § 1927 and the Court's inherent equitable powers.

127.    Throughout the Compensation Period, B&H attorneys continued to prepare for trial in the Kingate Matter.  This involved weekly working sessions in which B&H attorneys examined the Trustee's themes, strategies, testamentary and documentary proofs, the defendants' themes and strategies revealed to date, and counterpoints to them.

128.    The Trustee also monitors the class action proceedings in *In re Kingate Mgmt. Ltd. Litig.*, No. 09-cv-05386-DAB, following the Second Circuit's decision in *In re Kingate Mgmt. Ltd. Litig.*, 784 F.3d 128 (2d Cir. 2015), overruling the dismissal and remanding to the District Court to determine whether Securities Litigation Uniform Standards Act of 1998 and New York's Martin Act preempted the plaintiffs' securities fraud claims because, as defendants had argued, substantial events that occurred in New York gave rise to the claims.  The class action plaintiffs were investors in the Kingate Funds and asserted claims arising from Madoff's fraud against Kingate Management, Tremont (Bermuda) Limited, Tremont Group Holdings, Inc., FIM Advisers LLP, FIM Limited, FIM (USA) Incorporated, Federico Ceretti, Carlo Grosso, Graham H. Cook, John E. Epps, Sandra Manzke, Charles D. Sebah, Keith R. Bish, Christopher Wetherhill, Michael G. Tannenbaum, Citi Hedge Fund Services Ltd., and PricewaterhouseCoopers Bermuda.  On remand, the plaintiff investors further amended their complaint, dropping the securities fraud claims against those defendants and alleging they breached fiduciary and common law duties and contractual obligations owed to the plaintiffs.

129.    The Trustee's legal team includes the advice and counsel of the Trustee's foreign solicitors and barristers in the United Kingdom, Bermuda and the BVI, through periodic telephone discussions and, on occasion, face-to-face meetings.  During the Compensation Period, B&H attorneys called upon the Trustee's foreign solicitors and barristers as the needs of the case required.

## J.    **MATTER 21 – AVOIDANCE ACTION LITIGATION**

130.    This matter categorizes time spent litigating the hundreds of avoidance actions filed by the Trustee, coordinating service of process, preparing preservation letters and discovery requests and reviewing produced documents, communicating formally and informally with counsel for various defendants, reviewing Hardship Program applications, drafting extensions of time to respond to various complaints and adjournments of pre-trial conferences, conducting settlement negotiations and settling with various defendants, engaging in mediation with certain defendants, developing legal strategies and witnesses that will be relevant to all actions, implementing internal processes to track and manage the avoidance actions, and researching various issues relating to and raised in such avoidance actions.

### a.    **District Court Proceedings**

131.    In April 2012, the District Court instituted a new briefing protocol for pending motions to withdraw the reference, facilitating consolidated briefing on common issues raised in the motions to withdraw ("Common Briefing").  The District Court has issued rulings on all of the Common Briefing issues as follows:

- *Stern v. Marshall Issue.*  See Order, No. 12 MC 115 (JSR) (S.D.N.Y. April 13, 2012), (ECF No. 4); Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.), 490 B.R. 46 (S.D.N.Y. 2013);

- *Antecedent Debt Issue.  See* Order, No. 12 MC 115 (JSR) (S.D.N.Y. May 15, 2012), (ECF No. 107); *In re Madoff Sec.,* 499 B.R. 416 (S.D.N.Y. 2013); *In re Madoff Sec.,* No. 499 B.R. 416 (S.D.N.Y. 2013);

- *Section 546(e) Issue.  See* Order, No. 12 MC 115 (JSR) (S.D.N.Y. May 16, 2012), (ECF No. 119); Order, No. 12 MC 115 (JSR) (S.D.N.Y. Feb. 12, 2013), (ECF No. 439); *In re Madoff Sec.*, No. 12 MC 115 (JSR), 2013 WL 1609154 (S.D.N.Y. April 15, 2013);

- *Section 550(a) Issue.  See* Order, No. 12 MC 115 (JSR) (S.D.N.Y. Aug. 22, 2012), (ECF No. 314); Order, No. 12 MC 115 (JSR) (S.D.N.Y. Dec. 12, 2012); *In re Madoff Sec.,* No. 12 MC 115 (JSR), 501 B.R. 26 (S.D.N.Y.

2013); *In re Madoff Sec.,* No. 12-MC-0115 (JSR), 2014 WL 465360 (S.D.N.Y. Jan. 14, 2014);

- *Standing and SLUSA Issue. See* Order, No. 12 MC 115 (JSR) (S.D.N.Y. May 16, 2012), (ECF No. 114); *In re Madoff Sec.,* 987 F.Supp.2d 311 (S.D.N.Y. 2013);

- *Good Faith Standard Under Either 11 U.S.C. § 548(c) or 11 U.S.C. § 550(b) Issue. See* Order, No. 12 MC 115 (JSR) (S.D.N.Y. June 25, 2012), (ECF No. 197); *In re Madoff Sec.,* No. 12-MC-0115 (JSR), 2014 WL 1651952 (S.D.N.Y. April 27, 2014);

- *Section 502(d) Issue. See* Order, No. 12 MC 115 (JSR) (S.D.N.Y. June 1, 2012), ECF No. 155; Order, No. 12 MC 115 (JSR) (S.D.N.Y. Feb. 12, 2013), (ECF No. 435); *In re Madoff Sec.,* 513 B.R. 437 (S.D.N.Y. 2013); and

- *Extraterritoriality Issue. See* Order, No. 12 MC 115 (JSR) (S.D.N.Y. June 6, 2012), (ECF No. 167); *In re Madoff Sec.,* 513 B.R. 222 (S.D.N.Y. 2014).

132.    On April 27, 2014, the District Court issued the "Good Faith Standard Opinion and Order," ruling that "in the context of this litigation and with respect to both section 548(c) and section 550(b)(1), "good faith" means that the transferee neither had actual knowledge of the Madoff Securities fraud nor willfully blinded himself to circumstances indicating a high probability of such fraud." With respect to the issue of which party bears the burden of pleading a defendant's good faith or lack thereof, Judge Rakoff further ruled that "a defendant may succeed on a motion to dismiss by showing that the complaint does not plausibly allege that that defendant did not act in good faith." Good Faith Standard Opinion and Order (ECF No. 524).

133.    On July 6, 2014, Judge Rakoff issued the "Extraterritoriality Opinion and Order," indicating that certain of the Trustee's claims were barred under *Morrison*. It stated that "section 550(a) does not apply extraterritorially to allow for the recovery of subsequent transfers received abroad by a foreign transferee from a foreign transferor," and directed further proceedings related thereto be returned to the Bankruptcy Court. Extraterritoriality Opinion and Order (ECF No. 551), 513 B.R. 222 (S.D.N.Y. 2014).

b.    **Bankruptcy Court Proceedings**

134.    In March 2014, the Bankruptcy Court established a briefing schedule for all pending motions to dismiss (the "Motions to Dismiss"), and directed the Trustee to file one omnibus opposition to all pending Motions to Dismiss filed by defendants on or before March 10, 2014. The Bankruptcy Court further directed all participating defendants to reply on or before March 17, 2014. *See* Case Management Order Regarding Certain Pending Motions to Dismiss, *In re Madoff,* Adv. Pro. No. 08-01789 (SMB) (Bankr. S.D.N.Y. Feb. 24, 2014), (ECF No. 5695) ("February 24 Order"). Defendants who filed motions to dismiss filed on or after April 17, 2014 did not participate in the omnibus briefing. The Bankruptcy Court further provided all participating defendants with the opportunity to "opt out" of the omnibus briefing process referenced in the February 24 Order in the event that defendants did not wish to file a reply or otherwise participate in the omnibus briefing.

135.    Oral arguments were held on September 17, 2014. *See* Order Scheduling Hearing on Becker & Poliakoff LLP Motions to Dismiss and Motions to Dismiss Listed on Appendix A to the Trustee's February 20 Letter to the Court as Amended, *In re Madoff,* Adv. Pro. No. 08-01789 (SMB) (Bankr. S.D.N.Y. July 24, 2014), ECF No. 7513 ("Scheduling Order").

136.    Approximately 30 actions opted out of the omnibus briefing process by withdrawing their motion to dismiss, without prejudice, in order to proceed to mediation as permitted under the Order (1) Establishing Litigation Case Management Procedures for Avoidance Actions and (2) Amending the February 16, 2010 Protective Order, *In re Madoff*, Adv. Pro. No. 08-01789 (BRL) (Bankr. S.D.N.Y. Nov. 10, 2010), ECF No. 3141 ("Litigation Procedures Order"), governing the prosecution of BLMIS avoidance actions.

137.    There were approximately sixty motions to dismiss filed on or after April 17, 2014. These motions to dismiss raised nearly all the identical issues already addressed by the

Motions to Dismiss. Pursuant to the Litigation Procedures Order, the vast majority of these motions were automatically referred to mediation. Certain other defendants requested mediation of their cases. A total of 20 mediations were held during the Compensation Period.

138. On June 2, 2015, the Court granted in part and denied in part the Motions to Dismiss for reasons set forth in its Memorandum Decision Regarding Omnibus Motions to Dismiss (the "Omnibus Decision"), No. 08-01789 (SMB), 2015 WL 3465752 (Bankr. S.D.N.Y. June 2, 2015).

139. On July 30, 2015, on behalf of defendants in *Picard v. RAR Entrepreneurial Fund, Ltd., et al*, Adv. Pro. No. 10-04352 (SMB), Helen Davis Chaitman, Esq., then of Becker & Poliakoff LLP, and now of Chaitman LLP, filed a notice of motion for leave to appeal the Omnibus Decision. *See* No. 08-01789 (SMB) (Bankr. S.D.N.Y. July 30, 2015), ECF Nos. 10905, 10906, 10907.

140. Twelve actions entered into stipulations with the Trustee that were so ordered by the Bankruptcy Court, whereby the parties agreed to apply the Omnibus Decision to their respective adversary proceedings. In particular, the Trustee and the defendants agreed that "Any decision rendered in the Omnibus Proceedings, to the extent it affects the unresolved issues in the Adversary Proceeding, will apply equally to the Adversary Proceeding, and such decision will dispose of the motion to dismiss filed herein" (*see e.g.,* Adv. Pro. No. 10-04661, entered June 2, 2015, ECF No. 39).

141. On June 22, 2015, the Supreme Court denied certiorari of the Trustee's appeal of *SIPC v. Ida Fishman Revocable Trust,* 14-1128 and *Picard v. Ida Fishman Revocable Trust,* 14-1129 (the "Supreme Court Decision"), affirming that section 546(e) of the Bankruptcy Code applies to the Trustee's avoidance actions.

142.    At the beginning of the Compensation Period, there were 748 active good faith avoidance actions. 190 were resolved during the Compensation Period, leaving a total of 558 active good faith avoidance actions by the end of the Compensation Period.  126 active good faith cases were dismissed pursuant to the Supreme Court Decision.  In other avoidance actions, the Trustee considered hardship applications and where appropriate, agreed to dismiss certain defendants from the actions.  During the Compensation Period, a total of four actions were dismissed pursuant to approved hardship applications, and at least one action was dismissed due to the Trustee's findings of no liability.  In addition, the Trustee's professionals engaged in settlement negotiations, which led to an estimated 27 documented settlements during the Compensation Period.

### K.    **MATTER 29 – RYE/TREMONT**

143.    This matter categorizes time spent by the Trustee and B&H attorneys following the settled avoidance action filed on December 7, 2010, against Tremont Group Holdings, Inc., Tremont Partners, Inc., Tremont (Bermuda) Ltd., Rye Select Broad Market Fund, and numerous related investment funds, entities and individuals (collectively, the "Tremont Funds") in which the Trustee sought the return of approximately $2.1 billion under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences and fraudulent conveyances in connection with certain transfers of property by BLMIS (the "Tremont Litigation").  *Picard v. Tremont Group Holdings, Inc*., Adv. No. 10-05310 (SMB) (Bankr. S.D.N.Y. Dec. 7, 2010).

144.    After the court filing, the parties entered into substantive settlement negotiations, which resulted in a significant settlement approved by the Court on September 22, 2011.  The settlement between the Trustee, the Tremont Funds and the former chief executive of Tremont Group Holdings, Inc. resulted in the cash payment amount of $1.025 billion.  *Picard v. Tremont*

*Group Holdings, Inc*., Adv. No. 10-05310 (SMB) (Bankr. S.D.N.Y. Dec. 7, 2010), (ECF No. 38). This is the largest cash settlement to date in any case brought by the Trustee against any feeder or investment fund.

145.   Two objections to the settlement agreement were filed by non-BLMIS customers, both of which were overruled by this Court. There were two non-settling defendants at the time, Sandra Manzke ("Manzke") and Rye Select Broad Market XL Portfolio Limited ("XL Portfolio"). As more fully discussed below, pursuant to the settlement, Tremont delivered $1.025 billion into an escrow account, which was placed into the Customer Fund, and the Trustee allowed certain customer claims related to Tremont in the approximate amount of $2.9 billion.

146.   Certain objectors filed an appeal of the Tremont settlement on October 18, 2011. *See Picard v. Tremont Group Holdings, Inc*., No. 11-7330 (GBD) (Bankr. S.D.N.Y. Oct. 18, 2011). On June 27, 2012, United States District Judge George B. Daniels granted the Trustee's motion to dismiss the appeal, and judgment was entered on June 28, 2012. (ECF Nos. 35, 36).

147.   On July 27, 2012, an appeal of the judgment was filed with the Second Circuit. (ECF No. 37). Prior to submitting any briefing, however, the parties submitted a joint stipulation of dismissal, and the appeal was dismissed on October 25, 2012. (ECF No. 39). Accordingly, Tremont delivered $1.025 billion into an escrow account on November 6, 2012, and the settlement payment was released from escrow to the Trustee on February 8, 2013. Thereupon, the Trustee allowed certain customer claims related to Tremont.

148.   On February 10, 2012, defendant XL Portfolio settled with the Trustee in connection with the Tremont Litigation, as well as two other actions commenced on December 8, 2010, by the Trustee against XL Portfolio and other defendants. These other actions are captioned *Picard v. ABN AMRO Bank, N.V. et al*., Adv. No. 10-05354 (SMB) (Bankr. S.D.N.Y.

44

Dec. 8, 2010) and *Picard v. ABN AMRO (Ireland) Ltd., et al*., Adv. No. 10-05355 (SMB) (Bankr.

S.D.N.Y. Dec. 8, 2010).

149.    On September 17, 2013, the remaining defendant in the Tremont Litigation,

Manzke, who was also a defendant in the captioned action, *Picard v. Maxam Absolute Return*

*Fund Ltd., et al*., Adv. No. 10-05342 (Bankr. S.D.N.Y. Dec. 8, 2010), settled both actions against

her.  After the *Maxam* settlement, Manzke was dismissed from the Tremont Litigation, and that

case closed.

150.    During the Compensation Period, B&H attorneys continued to prepare for

litigation in this action.

### L.    MATTER 30 – HSBC

151.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing

claims against HSBC Bank plc, HSBC Securities Services (Luxembourg) S.A., eleven other

HSBC entities (collectively, the "HSBC Defendants"), as well as affiliated feeder funds

including Thema International Ltd., Thema Wise Investments Ltd., Lagoon Investment, Geo

Currencies Ltd., and Alpha Prime Fund, as well as management companies affiliated with those

funds, seeking the return of approximately $1.6 billion under SIPA, the Bankruptcy Code, the

New York Fraudulent Conveyance Act, and other applicable law for preferences and fraudulent

conveyances.  *Picard v. HSBC Bank plc*, Adv. No. 09-01364 (SMB) (Bankr. S.D.N.Y. Nov. 30,

2012).

152.    The Trustee settled his claims against Herald Fund SpC, Herald (Lux) SICAV,

Primeo Fund and Senator Fund, which resulted in over $600 million in consideration to the

Estate.

**M.**    **MATTER 32 – UBS/LIF**

153.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing bankruptcy claims against UBS AG, UBS (Luxembourg) SA, UBS Fund Services (Luxembourg) SA, and numerous other entities and individuals (collectively, the "Luxalpha Defendants") seeking the return of approximately $1.1 billion under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Luxalpha Defendants (the "Luxalpha Action"). *Picard v. UBS AG*, Adv. No. 10-04285 (SMB) (Bankr. S.D.N.Y. Oct. 22, 2012).

154.    This matter also incorporates time spent by the Trustee and B&H attorneys pursuing the avoidance action against Luxembourg Investment Fund, UBS entities, and other defendants (the "LIF Defendants") seeking the return of approximately $555 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent conveyances and damages in connection with certain transfers of property by BLMIS (the "LIF Action"). *Picard v. UBS AG*, Adv. No. 10-05311 (SMB) (Bankr. S.D.N.Y. Oct. 22, 2012).

155.    On December 19, 2012, the Trustee participated in a hearing in this Court regarding the motions to dismiss the amended complaint filed by a number of the Luxalpha Defendants and the LIF Defendants for lack of personal jurisdiction and *forum non conveniens.* At the hearing, the Court directed the parties to meet and confer on the issues in dispute with the goal of narrowing the issues before the Court.  The Trustee has narrowed the number of defendants and parties in dispute.  The meet-and-confer process in the Luxalpha Action and the LIF Action is now complete, with certain motions to dismiss for lack of personal jurisdiction and/or *forum non conveniens* remaining pending before the Court.

46

156.    On July 6, 2014, the District Court issued the Extraterritoriality Opinion and Order regarding the effect of the Supreme Court's decision in *Morrison v. Nat'l Australia Bank Ltd.*, 130 S. Ct. 2869 (2010) on subsequent transfers received by certain defendants ("Transferee Defendants").    *See* discussion *supra* Section IV(J).    The Trustee and his counsel analyzed the decision and its implications in anticipation of additional motions to dismiss to be filed by certain defendants in the Luxalpha Action and the LIF Action.

157.    On August 28, 2014, the Trustee filed a motion seeking leave to replead and an order authorizing limited discovery (the "Trustee's Motion") (ECF Nos. 7826, 7827 and 7828). The Trustee's Motion seeks leave to replead in certain adversary proceedings, including Luxalpha and LIF.

158.    On December 10, 2014, the Bankruptcy Court entered the Extraterritoriality Scheduling Order, ECF No. 8800.    *See* discussion *supra* Section IV(A)(b).    Pursuant to the Extraterritoriality Scheduling Order, on December 31, 2014, the Transferee Defendants filed a Consolidated Supplemental Memorandum of Law in Support of the Transferee Defendants' Motion to Dismiss Based on Extraterritoriality in the main SIPA proceeding, Adv. No. 08-1789-SMB.    The Extraterritoriality Scheduling Order, as modified by the Stipulations and Orders entered on January 14, 2015, ECF No. 8990; February 24, 2015, ECF No. 9350; and March 31, 2015, ECF No. 9720, set June 30, 2015 as the Trustee's deadline to submit his opposition to the Transferee Defendants' motion to dismiss based on extraterritoriality.    The Trustee submitted his opposition on June 26, 2015.

159.    During the Compensation Period, B&H attorneys worked on and submitted a proffered second amended complaint in the Luxalpha Action and a proffered amended complaint in the LIF Action.    B&H attorneys also prepared and submitted briefs in opposition to the

47

moving defendants' motions to dismiss based on extraterritoriality. These documents were submitted on June 26, 2015.

160.    B&H attorneys also participated in meet and confers with counsel for certain producing parties, including UBS AG, UBS (Luxembourg) SA and Reliance International Research LLC, to discuss documents that were identified as "Confidential" when produced to the Trustee. The Trustee's ability to rely on such documents/information in preparing his proposed amended complaints or proffered allegations pertaining to the extraterritoriality issue and the Trustee's Motion was in dispute. Through the meet and confer process, B&H attorneys and attorneys for several producing parties were able to resolve the confidentiality issues regarding several, but not all, relevant documents. The Trustee thereafter entered into arbitration with several producing parties, for the purpose of resolving the remaining confidentiality issues.

## N.    MATTER 33 – NOMURA INTERNATIONAL PLC

161.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Nomura International plc ("Nomura") seeking the return of approximately $35 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of Nomura (the "Nomura Action"). *Picard v. Nomura Int'l plc*, Adv. No. 10-05348 (SMB) (Bankr. S.D.N.Y. Dec. 8, 2010).

162.    By orders issued by the District Court during the Spring and Summer of 2012, the District Court included Nomura's motion to withdraw the reference in Common Briefing and oral argument.

163.    Prior to the Compensation Period, B&H attorneys, on behalf of the Trustee, reached agreements with Nomura to extend Nomura's time to respond to the amended complaint

48

while awaiting determinations from the District Court with respect to Common Briefing. *Picard v. Nomura Int'l plc*, Adv. No. 10-05348 (SMB) (Bankr. S.D.N.Y.), (ECF Nos. 55, 56, 58, 65, 74). Prior to and during the Compensation Period, B&H attorneys, on behalf of the Trustee, reached agreements with Nomura to adjourn the pre-trial conference. *Picard v. Nomura Int'l plc*, Adv. No. 10-05348 (SMB) (Bankr. S.D.N.Y.), (ECF Nos. 81, 93).

164. Prior to the Compensation Period, the District Court issued the Extraterritoriality Opinion and Order and the Good Faith Standard Opinion and Order, and remanded the Nomura proceeding back to the Bankruptcy Court for further proceedings consistent with its opinions. (ECF No. 57). *See* discussion *supra* Section IV(J).

165. Prior to the Compensation Period, B&H attorneys, on behalf of the Trustee, presented to the Court, and the Court so ordered, that the transferee defendants, including Nomura, submit a consolidated memorandum of law to in support of dismissal based on the extraterritoriality issue. The Court so ordered that the Trustee and SIPC file a consolidated memorandum of law opposing the motion to dismiss and seeking leave to amend the complaints, and an additional five page addendum opposing the motion to dismiss specific to the transferee defendants, including Nomura. *Picard v. Nomura Int'l plc*, Adv. No. 10-05348 (SMB) (Bankr. S.D.N.Y.), (ECF No. 79).

166. During the Compensation Period, B&H attorneys, on behalf of the Trustee, drafted and filed with the Court the five page addendum opposing the motion to dismiss specific to Nomura and proffered allegations pertaining to the extraterritoriality issue as to Nomura. *Picard v. Nomura Int'l plc*, Adv. No. 10-05348 (SMB) (Bankr. S.D.N.Y.), (ECF Nos. 90, 91).

167. During the Compensation Period, B&H attorneys reviewed and analyzed the District Court's opinions as they relate to the Nomura Action and continued to prepare for

litigation in light of the District Court's opinions. In addition, B&H attorneys participated in meetings with the Trustee's experts to continue to prepare for discovery and trial. B&H attorneys researched and drafted memoranda regarding many aspects of trial preparation and continued to negotiate the de-designation of documents with producing parties.

### O.    **MATTER 34 – CITIBANK**

168.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Citibank, N.A., Citibank North America, Inc., and Citigroup Global Markets Ltd. (collectively, "Citibank") seeking the return of approximately $430 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences and fraudulent transfers in connection with certain transfers of property by BLMIS to or for the benefit of Citibank (the "Citibank Action"). *Picard v. Citibank*, Adv. No. 10-05345 (SMB) (Bankr. S.D.N.Y. Dec. 8, 2010).

169.    Prior to the Compensation Period, the District Court issued an opinion granting Citibank's motion to dismiss in part, holding that the section 546(g) safe harbor protects certain redemption payments but not collateral payments from recovery to the extent they cannot be avoided under section 548(a)(1)(A). *Picard v. Citibank*, Case No. 11-cv-07825 (JSR) (S.D.N.Y. Dec. 26, 2013), (ECF No. 37).

170.    Prior to the Compensation Period, the District Court issued the Extraterritoriality Opinion and Order and the Good Faith Standard Opinion and Order, and remanded the Citibank Action, among others, to the Bankruptcy Court for further proceedings consistent with its opinions. *See* discussion *supra* Section IV(J).

171.    Prior to the Compensation Period, the Trustee filed his Memorandum of Law in Support of Omnibus Motion for Leave to Replead Pursuant to Fed. R. Civ. P. 15(a) and Court Order Authorizing Limited Discovery Pursuant to Fed. R. Civ. P. 26(d)(1) ("Omnibus Motion").

*Picard v. Citibank*, Adv. No. 10-05345, (ECF No. 72).    Following a request by certain

defendants, on September 17, 2014, the Bankruptcy Court held a conference to discuss further

proceedings to be conducted pursuant to the Extraterritoriality Opinion and Order and the

Omnibus Motion. The Bankruptcy Court directed the parties to confer and devise an efficient

procedure and briefing schedule.

172.    Prior to the Compensation Period, on October 2, 2014, the Trustee filed a letter

advising that the Trustee and counsel representing the defendants in this and other actions are

working together to prepare a mutually acceptable agreed order that will set forth a proposed

process and briefing schedule.    On October 23, 2014, the Trustee filed a proposed order setting

forth a proposed process and briefing schedule.    *Picard v. Citibank*, Adv. No. 10-05345, (ECF

Nos. 75 and 80).    Following limited objections by certain defendants, on November 19, 2014, the

Bankruptcy Court held a conference to discuss the proposed process and briefing schedule.

173.    Prior to the Compensation Period, on December 10, 2014, the Bankruptcy Court

entered the Extraterritoriality Scheduling Order.    *See* discussion *supa* Section IV(A)(b).    On

December 31, 2014, defendants filed the Consolidated Supplemental Memorandum of Law in

Support of the Transferee Defendants' Motion to Dismiss Based on Extraterritoriality seeking to

dismiss the claims listed in Exhibits A and B to the Extraterritoriality Scheduling Order (the

"Consolidated Motion to Dismiss").

174.    Prior to the Compensation Period, on January 13, 2015 and February 24, 2015,

the Court so ordered two stipulations modifying the Extraterritoriality Scheduling Order and

certain deadlines for the parties to file their respective submissions in connection with the

Extraterritoriality Opinion and Order and the Omnibus Motion. *Sec. Inv. Prot. Corp. v. Bernard

L. Madoff Inv. Sec., LLC*, Adv. Pro. No. 08-1789 (Bankr. S.D.N.Y.) (SMB), (ECF. Nos. 8990

and 9350).  On March 4, 2015, the Trustee filed a Letter Regarding Confidentiality Designations Affecting the Trustees Extraterritoriality Submission.  The Bankruptcy Court held an informal conference on the confidentiality issues on March 18, 2015.

175.    During the Compensation Period, on April 1, 2015, the Court entered a Third Stipulation and Order Modifying the Order Concerning Further Proceedings on Extraterritoriality Motion and Trustee's Omnibus Motion for Leave to Replead and for Limited Discovery (the "Third Stipulation").  *Securities Inv. Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC*, Adv. Pro. No. 08-1789 (Bankr. S.D.N.Y.) (SMB), (ECF No. 9720).  The Trustee's papers in opposition to the Extraterritoriality Opinion and Order and the Consolidated Motion to Dismiss, and in further support of the Omnibus Motion, were due to be filed under the Third Stipulation with the Court on June 30, 2015.

176.    During the Compensation Period, B&H attorneys, on behalf of the Trustee, entered into stipulations with counsel to Citibank while awaiting determination from the Bankruptcy Court on the Extraterritoriality and Good Faith Issue.  *Picard v. Citibank*, Adv. No. 10-05345 (SMB) (Bankr. S.D.N.Y. April 15, 2015), (ECF No. 93).

P.    **MATTER 35 – NATIXIS**

177.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Natixis, Natixis Corporate & Investment Bank (f/k/a Ixis Corporate & Investment Bank), Natixis Financial Products, Inc., Bloom Asset Holdings Fund, and Tensyr Ltd. (collectively, the "Natixis Defendants") seeking the return of approximately $430 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent transfers and fraudulent conveyances in connection with certain transfers of property by BLMIS to or for the benefit of the Natixis Defendants (the

"Natixis Action"). *Picard v. Natixis*, Adv. No. 10-05353 (SMB) (Bankr. S.D.N.Y. Dec. 8, 2010).

178.    By orders issued by the District Court, during the Spring and Summer of 2012, the District Court included the Natixis Defendants' motion to withdraw the reference in Common Briefing and oral argument.

179.    Prior to and during the Compensation Period, B&H attorneys, on behalf of the Trustee, reached agreements with the Natixis Defendants to extend the Trustee's time to respond to motions to dismiss the complaint while awaiting determinations from the District Court with respect to Common Briefing. *Picard v. Natixis*, Adv. No. 10-05353 (SMB) (Bankr. S.D.N.Y. Dec. 8, 2010), (ECF Nos. 99, 104).

180.    Prior to the Compensation Period, the District Court issued the Extraterritoriality Opinion and Order and the Good Faith Standard Opinion and Order, and remanded the Natixis Action back to the Bankruptcy Court for further proceedings consistent with its opinions. (ECF No. 65). *See* discussion *supra* Section IV(J). B&H attorneys, on behalf of the Trustee, also presented to the Court, and the Court so ordered, that the transferee defendants, including the Natixis Defendants, submit a consolidated memorandum of law in support of dismissal based on the extraterritoriality issue. The Court so ordered that the Trustee and SIPC file a consolidated memorandum of law opposing the motion to dismiss and seeking leave to amend the complaints, as well as an additional addendum opposing the motion to dismiss specific to the transferee defendants, including the Natixis Defendants.

181.    During the Compensation Period, B&H attorneys, on behalf of the Trustee, drafted and filed the consolidated memorandum of law opposing the motion to dismiss and seeking leave to amend the complaints (ECF No. 100), the addendum opposing the motion to

dismiss specific to the Natixis Defendants (ECF No. 101), and proffered allegations pertaining to the extraterritoriality issue as to the Natixis Defendants. (ECF No. 102).

### Q. **MATTER 36 – MERRILL LYNCH**

182.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Merrill Lynch International ("MLI") seeking the return of at least $16 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences and fraudulent transfers in connection with certain transfers of property by BLMIS to or for the benefit of MLI (the "MLI Action"). *Picard v. Merrill Lynch Int'l*, Adv. No. 10-05346 (SMB) (Bankr. S.D.N.Y. Dec. 8, 2010).

183.    Prior to the Compensation Period, the District Court issued the Extraterritoriality Opinion and Order and the Good Faith Standard Opinion and Order, and remanded the MLI Action, among others, to the Bankruptcy Court for further proceedings consistent with its opinions. *See* discussion *supra* Section IV(J).  In response to the Extraterritoriality Opinion and Order, B&H attorneys, on behalf of the Trustee, prepared a Notice of Presentment of Order with coordinating defendants' counsel for the Bankruptcy Court to hear and decide issues concerning Common Briefing on the extraterritoriality issue.  (ECF Nos. 62, 64, 67, 71, 75).

184.    Prior to the Compensation Period, the Court so ordered a stipulation permitting the defendants, including MLI, to submit a consolidated memorandum of law in support of dismissal of the Trustee's complaints based on the extraterritoriality issue.  The Court also permitted the Trustee and SIPC to file a consolidated memorandum of law opposing the defendants' consolidated motion to dismiss and seeking leave to amend the complaints.  As part of that stipulated order, the Trustee and SIPC were permitted to file additional addendums opposing the motions to dismiss specific to each defendant, including as to MLI.

54

185.     During the Compensation Period, B&H attorneys, on behalf of the Trustee, drafted and filed the consolidated memorandum of law opposing the defendants' motion to dismiss and seeking leave to amend the complaints. (ECF No. 87).  In addition, B&H attorneys drafted and filed certain addendums opposing the defendants' motion to dismiss specific to MLI (ECF No. 88), and proffered allegations for an amended complaint pertaining to the extraterritoriality issue as to MLI.  (ECF No. 89).

186.     During the Compensation Period, B&H attorneys, on behalf of the Trustee, entered into stipulations with counsel to MLI while awaiting determination from the Bankruptcy Court on the extraterritoriality issue and good faith issue. (ECF No. 85).

## R.     MATTER 37 – ABN AMRO

187.     This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against ABN AMRO Bank N.V. (presently known as The Royal Bank of Scotland, N.V.) ("ABN/RBS") seeking the return of approximately $237 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences and fraudulent transfers in connection with certain transfers of property by BLMIS to or for the benefit of ABN/RBS (the "ABN/RBS Action").  *Picard v. ABN AMRO Bank, N.A.* (presently known as The Royal Bank of Scotland, N.V.), Adv. No. 10-05354 (SMB) (Bankr. S.D.N.Y. Dec. 8, 2010).

188.     Prior to the Compensation Period, ABN/RBS filed a motion to withdraw the reference, which was granted by Judge Rakoff and resulted in Common Briefing before the District Court.

189.     In addition, prior to the Compensation Period, on February 27, 2013, the Trustee voluntarily dismissed Rye Select Broad Market XL Fund, L.P. with prejudice.  *Picard v. ABN AMRO Bank N.A.*, Adv. No. 10-05354 (SMB) (Bankr. S.D.N.Y.), (ECF No. 56).

190.    Prior to the Compensation Period, the District Court issued the Extraterritoriality Opinion and Order and the Good Faith Standard Opinion and Order, and remanded the ABN/RBS Action back to the Bankruptcy Court for further proceedings consistent with these decisions.  *See* discussion *supra* Section IV(J).

191.    Prior to the Compensation Period, the Trustee and B&H attorneys entered into stipulations with counsel for ABN/RBS extending ABN/RBS's time to respond to the Trustee's amended complaint.

192.    During the Compensation Period, B&H attorneys prepared for continued litigation in the ABN/RBS Action by, *inter alia*, reviewing and analyzing relevant documents and correspondence.  B&H attorneys reviewed and analyzed the District Court's decisions as they relate to the ABN/RBS Action and continued to prepare for further litigation in light thereof. B&H attorneys also consulted with experts to obtain additional insight into the transfers the Trustee is seeking to recover and the underlying transactions that gave rise to the transfers.

193.    In addition, B&H attorneys, on behalf of the Trustee, researched and drafted an omnibus motion seeking the Court's leave to replead and authorization for limited discovery pursuant to the Extraterritoriality Opinion and Order and the Good Faith Standard Opinion and Order.  (ECF Nos. 69, 70, 71, 72).  B&H attorneys also reviewed and analyzed documents to support the Trustee's filings concerning extraterritoriality, and drafted and filed proffered allegations and a memorandum related thereto.  (ECF Nos. 99, 100, 101).

### S.    __MATTER 38 – BANCO BILBAO__

194.    This matter categorizes time spent by the Trustee and B&H attorneys, on behalf of the Trustee, pursuing the avoidance action against Banco Bilbao Vizcaya Argentaria, S.A. ("BBVA") seeking the return of at least $45 million under SIPA, the Bankruptcy Code, and the New York Fraudulent Conveyance Act in connection with a transfer of property by BLMIS to or

56

for the benefit of BBVA (the "BBVA Action"). *Picard v. Banco Bilbao Vizcaya Argentaria*, S.A., Adv. No. 10-05351 (SMB) (Bankr. S.D.N.Y.).

195.    Prior to the Compensation Period, BBVA filed a motion to withdraw the reference, which was granted by Judge Rakoff and resulted in Common Briefing pending in the District Court. *Picard v. Banco Bilbao Vizcaya Argentaria, S.A.*, Adv. No. 11 Civ. 07100 (JSR) (S.D.N.Y.), (ECF Nos. 1–3). BBVA's motion to withdraw the reference included arguments about extraterritoriality and the good faith standard.

196.    Prior to the Compensation Period, the District Court issued the Extraterritoriality Opinion and Order and the Good Faith Standard Opinion and Order, and remanded the BBVA Action back to the Bankruptcy Court for further proceedings consistent with its opinions. *Picard v. Banco Bilbao Vizcaya Argentaria*, S.A., Adv. No. 10-05351 (SMB) (Bankr. S.D.N.Y.), (ECF No. 75). *See* discussion *supra* Section IV(J).

197.    Prior to the Compensation Period, B&H attorneys drafted, filed, served, and argued an omnibus motion seeking the Bankruptcy Court's leave to replead and authorization for limited discovery pursuant to the Extraterritoriality Opinion and Order and the Good Faith Standard Opinion and Order. *Id.*, (ECF No. 78). B&H attorneys also drafted, filed, and served a notice of presentment of order concerning further proceedings on extraterritoriality motion and Trustee's omnibus motion for leave to replead and for limited discovery and opportunity for hearing. *Id.*, (ECF Nos. 94, 95). The Bankruptcy Court entered the Extraterritoriality Scheduling Order on December 11, 2014. *Id.*, (ECF No. 96). *See* discussion *supra* Section IV(A)(b). Pursuant to the Extraterritoriality Scheduling Order, BBVA filed a consolidated supplemental memorandum of law in support of the transferee defendants' motion to dismiss based on extraterritoriality. *Id.*, (ECF No. 97).

198.    During the Compensation Period, pursuant to the Extraterritoriality Scheduling Order and stipulations modifying certain deadlines therein, B&H attorneys drafted and filed the Trustee's memorandum of law in opposition to the transferee defendants' motion to dismiss based on extraterritoriality and in further support of his motion for leave to amend complaints, the Trustee's supplemental memorandum of law in opposition to BBVA's motion to dismiss based on extraterritoriality and in further support of the trustee's motion for leave to amend complaints, and the Trustee's proffered allegations pertaining to the extraterritoriality issue as to BBVA. *Id.*, (ECF Nos. 108–110.).

### T.    MATTER 39 – FORTIS

199.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against ABN AMRO Bank (Ireland) Ltd. (f/k/a Fortis Prime Fund Solutions Bank (Ireland) Ltd.), ABN AMRO Custodial Services (Ireland) Ltd. (f/k/a Fortis Prime Fund Solutions Custodial Services (Ireland) Ltd.) (collectively, the "Fortis Defendants"), Rye Select Broad Market XL Fund, LP, and Rye Select Broad Market XL Portfolio Ltd. seeking the return of approximately $747 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences and fraudulent conveyances in connection with certain transfers of property by BLMIS to or for the benefit of the Fortis Defendants (the "Fortis Action"). *Picard v. ABN AMRO Retained Custodial Services (Ireland) Ltd.*, Adv. No. 10-05355 (SMB) (Bankr. S.D.N.Y. Dec. 8, 2010).

200.    On February 27, 2013, the Trustee voluntarily dismissed Rye Select Broad Market XL Fund, L.P. with prejudice. *Picard v. ABN AMRO Retained Custodial Services (Ireland) Ltd*., Adv. No. 10-05355 (SMB) (Bankr. S.D.N.Y. Dec. 8, 2010), (ECF No. 50).

201.    By orders issued by the District Court during the Spring and Summer of 2012, the District Court included the Fortis Defendants' motion to withdraw the reference in Common

Briefing and oral argument.  Prior to and during the Compensation Period, B&H attorneys, on behalf of the Trustee, reached agreements with the Fortis Defendants to extend the Trustee's time to respond to motions to dismiss the complaint while awaiting determinations from the District Court with respect to Common Briefing.  *Picard v. ABN AMRO Retained Custodial Services (Ireland) Ltd.*, Adv. No. 10-05355 (SMB) (Bankr. S.D.N.Y.), (ECF No. 62, 64. 71, 82).

202.    Prior to the Compensation Period, the District Court issued the Extraterritoriality Opinion and Order and the Good Faith Standard Opinion and Order, and remanded the Fortis Action back to the Bankruptcy Court for further proceedings consistent with its opinions.  *See* discussion *supra* Section IV(J).

203.    Prior to the Compensation Period, B&H attorneys, on behalf of the Trustee, presented to the Court, and the Court so ordered, that the transferee defendants, including the Fortis Defendants, submit a consolidated memorandum of law in support of dismissal based on the extraterritoriality issue.  The Court so ordered that the Trustee and SIPC file a consolidated memorandum of law opposing the motion to dismiss and seeking leave to amend the complaints, as well as an additional addendum opposing the motion to dismiss specific to the transferee defendants, including the Fortis Defendants.  (ECF Nos. 83, 85).

204.    During the Compensation Period, B&H attorneys reviewed and analyzed the District Court's opinions as they relate to the Fortis Action and continued to prepare for litigation in light of the District Court's opinions.  In addition, B&H attorneys participated in meetings with the Trustee's experts to continue to prepare for discovery and trial.  B&H attorneys drafted memoranda regarding potential witness interviews and continued to negotiate the de-designation of documents.

205.    During the Compensation Period, B&H attorneys, on behalf of the Trustee,
drafted and filed the Trustee's memorandum of law in opposition to the transferee defendants'
motion to dismiss based on extraterritoriality and in further support of his motion for leave to
amend complaints, the Trustee's supplemental memorandum of law in opposition to Fortis's
motion to dismiss based on extraterritoriality and in further support of the trustee's motion for
leave to amend complaints, and the Trustee's proffered allegations pertaining to the
extraterritoriality issue as to the Fortis Defendants.

U.    **MATTER 40 – MEDICI/KOHN**

206.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing
avoidance and other civil claims against Sonja Kohn, UniCredit Bank Austria AG ("Bank
Austria"), Bank Medici AG ("Bank Medici"), and numerous other financial institutions, entities,
and individuals (collectively, the "Kohn Defendants") seeking the return of approximately $19.6
billion under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, the
Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961, et seq., and other
applicable laws in connection with certain transfers of property by BLMIS to or for the benefit of
the Kohn Defendants. *Picard v. Kohn*, Adv. No. 10-05411 (SMB) (Bankr. S.D.N.Y. Dec. 10,
2010).    In a subsequent decision, the Trustee's non-bankruptcy claims were dismissed as to
certain parties.    As a result, on November 26, 2014, prior to the Compensation Period, the
Trustee filed a motion to amend the complaint. *Picard v. Kohn*, Adv. No. 10-05411 (SMB)
(Bankr. S.D.N.Y. Dec. 10, 2010) (ECF No. 282).    The proposed amendment seeks to recover
$34,484,360 from certain of the Kohn Defendants under the Bankruptcy Code and New York
State Debtor and Creditor Law.  This motion is currently pending.

207.    This matter also covers work performed by B&H attorneys relating to *Madoff
Securities International Limited v. Raven & Ors*, [2011] EWHC (Civ) 3102 (Eng.).  Trial in this

matter commenced in London in June 2013 and concluded on July 18, 2013. On October 18, 2013, the English court ruled against MSIL's joint liquidators. No further action was taken in this matter during the Compensation Period.

208. During the Compensation Period, the Trustee agreed, on two separate occasions (April 28, 2015 and June 25, 2015), to extend the time for the Kohn Defendants to respond to the motion to amend the complaint. *Picard v. Kohn*, Adv. No. 10-05411 (SMB) (Bankr. S.D.N.Y. Dec. 10, 2010) (ECF Nos. 293, 294).

## V.    **MATTER 42 – EQUITY TRADING**

209. This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Equity Trading Portfolio Limited, Equity Trading Fund Ltd., and BNP Paribas Arbitrage, SNC (collectively, the "Equity Trading Defendants") seeking the return of approximately $16 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent transfers, fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Equity Trading Defendants. *Picard v. Equity Trading Portfolio Limited*, Adv. No. 10-04457 (SMB) (Bankr. S.D.N.Y. Dec. 1, 2010), (ECF No. 2).

210. The Equity Trading Defendants filed motions, or joinders to the motions, in the District Court to withdraw the reference from this Court. (ECF Nos. 16, 21). The District Court included the motions in its orders for Common Briefing and oral argument.

211. During the Compensation Period, B&H attorneys and the Equity Trading Defendants engaged in pleadings and other proceedings related to the extraterritoriality motion and confidentiality designations. (ECF Nos. 76, 79, 80, 82 and 84). B&H attorneys also prepared for continued litigation in this action. The pre-trial conference is scheduled for December 16, 2015. (ECF No. 86).

W.     **MATTER 43 – DEFENDER**

212.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the

avoidance action against Defender Limited, Reliance Management (BVI) Limited, and Reliance

International Research LLC (collectively, the "Defender Defendants") seeking the return of over

$93 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and

other applicable law for preferences, fraudulent transfers, fraudulent conveyances and damages

in connection with certain transfers of property by BLMIS to or for the benefit of the Defender

Defendants. *Picard v. Defender Limited*, Adv. No. 10-05229 (SMB) (Bankr. S.D.N.Y. Dec. 5,

2010).

213.    On April 2, 2012, the Defender Defendants filed motions in the District Court to

withdraw the reference from this Court.  (ECF Nos. 24, 28).  The District Court partially granted

these motions and included these motions in its orders for Common Briefing and oral argument.

214.    On April 27, 2012, defendants Reliance Management (BVI) Limited, Reliance

Management (Gibraltar) Limited, and Tim Brockmann filed a motion in this Court to dismiss for

lack of personal jurisdiction.  (ECF No. 36).  The Trustee opposed the motion.  (ECF No. 49).

The moving defendants filed their reply brief on October 26, 2012.  (ECF No. 55).  This Court

converted the hearing on this motion, scheduled for December 19, 2012, into a Rule 16

conference and directed the parties to meet and confer with respect to the motion.

215.    B&H attorneys conferred with counsel, pursuant to this Court's instructions at the

Rule 16 conference, with respect to the motion to dismiss and to attempt to narrow the issues to

be determined by this Court.  B&H attorneys negotiated with counsel for defendants Reliance

Management (Gibraltar) Limited and Tim Brockmann on an agreement to dismiss those

defendants without prejudice in return for, among other things, their agreement to continue

participating in discovery in the Bankruptcy Court.  The parties signed that agreement on

62

December 16, 2013, and the Court so ordered the stipulation of voluntary dismissal without prejudice on December 18, 2013.  (ECF No. 72).

216.    During the Compensation Period, B&H attorneys engaged in mediation and settlement discussions with counsel that resulted in a settlement agreement executed on March 23, 2015 (the "Defender Settlement Agreement").  Under the terms of the Defender Settlement Agreement, the Trustee will recover 100 percent of the fraudulent transfers and preference payments aggregating $93,000,000 that he sought to avoid and recover from Defender (the "Settlement Payment").  The Trustee will allow the Defender customer claim in full, plus 88% of the amount of the Settlement Payment.  On March 23, 2015, B&H attorneys filed a motion for entry of an order pursuant to Section 105(A) of the Bankruptcy Code and Rules 2002 and 9019 of the Federal Rules of Bankruptcy Procedure to approve the Defender Settlement Agreement. (ECF No. 114).

217.    On April 16, 2015, the Court issued an order approving the Defender Settlement Agreement.  (ECF No. 116).

218.    On June 18, 2015, the court issued a Stipulation and Order for Voluntary Dismissal of Adversary Proceeding with Prejudice.  (ECF No. 117).

## X.    MATTER 45 – LEVEY

219.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing four avoidance actions in which Joel Levey is a named defendant (collectively, the "Levey Actions").  The Levey Actions are as follows:  *Picard v. Joel Levey*, Adv. No. 10-04282 (SMB) (Bankr. S.D.N.Y. Nov. 23, 2010); *Picard v. Aaron Levey Revocable Living Trust*, Adv. No. 10-04894 (SMB) (Bankr. S.D.N.Y. Dec. 2, 2010); *Picard v. Aaron Levey Revocable Living Trust*, Adv. No. 10-05441 (SMB) (Bankr. S.D.N.Y. Dec. 2, 2010); and *Picard v. Frances Levey Revocable Living Trust*, Adv. No. 10-05430 (SMB) (Bankr. S.D.N.Y. Dec. 2, 2010).  The action

against *Joel Levey*, Adv. No. 10-04282 (SMB) (Bankr. S.D.N.Y. Nov. 23, 2010), is a bad faith action and seeks the recovery of fictitious profits and principal.

220.    Together with Joel Levey, the other named defendants in the Levey Actions are Aaron Levey Revocable Living Trust, Frances Levey Revocable Living Trust, Wendy Kapner Revocable Trust, Wendy Kapner, Sandra Moore, and James Kapner (collectively, the "Levey Defendants").    The individual Levey Defendants were named in their various capacities, including as grantor, trustee, and/or beneficiary.    The Levey Actions seek an aggregate recovery of approximately $6.8 million under SIPA, the Bankruptcy Code, the New York Debtor and Creditor Law, and other applicable law for the recovery of avoidable transfers and damages related to transfers made by BLMIS to or for the benefit of the Levey Defendants.

221.    During the Compensation Period, B&H attorneys participated in voluntary mediation with the Levey Defendants.

## Y.    MATTER 46 – GLANTZ

222.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Richard M. Glantz and numerous other individuals, trusts and entities (collectively, the "Glantz Defendants"), seeking the return of more than $113 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent transfers and fraudulent conveyances in connection with certain transfers of property by BLMIS to or for the benefit of the Glantz Defendants.    *Picard v. Richard M. Glantz*, Adv. No. 10-05394 (SMB) (Bankr. S.D.N.Y. Dec. 9, 2010).

223.    Following the filing of the complaint, certain defendants were dismissed based on hardship, settlement or other reasons.    On February 1, 2012, the remaining defendants filed a motion to dismiss.    (ECF Nos. 26–30).    The parties subsequently entered into stipulations extending the Trustee's time to amend the complaint in response to the motion to dismiss.    On

March 31, 2012, the defendants filed a motion to withdraw the reference in the District Court. *Picard v. Glantz*, No. 12 Civ. 02778 (JSR) (S.D.N.Y. July 12, 2012), (ECF Nos. 1–3). Judge Rakoff partially granted the motion to withdraw the reference to address certain issues related to the majority of the avoidance actions brought by the Trustee (ECF Nos. 10–12).

224. On January 9, 2015, the Trustee filed an amended complaint (ECF No. 62), and the parties thereafter entered into stipulations extending the defendants' time to file a motion to dismiss the amended complaint. On May 1, 2015, the defendants moved to dismiss the amended complaint. (ECF No. 68). During the Compensation Period, B&H attorneys prepared the Trustee's opposition to the defendants' motion to dismiss, which opposition was filed on August 14, 2015. (ECF No. 75). The motion to dismiss remains pending.

## Z.    **MATTER 51 – CRUPI**

225. This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Jo Ann Crupi, a former BLMIS employee, and Judith Bowen, (collectively, the "Crupi Defendants") seeking the return of over $8.7 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent transfers, fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Crupi Defendants. *Picard v. Jo Ann Crupi*, Adv. No. 10-04216 (SMB) (Bankr. S.D.N.Y.).

226. Jo Ann Crupi was charged in a thirty-three count indictment by the United States Attorney's Office, asserting among other things, that she conspired to defraud BLMIS investment advisory clients, conspired to commit securities fraud and to falsify books and records, committed securities fraud, falsified the records of BLMIS, committed tax evasion and committed bank fraud. *USA v. O'Hara, et al.*, Case No. 10-cr-00228 (LTS). On or about March 24, 2014, following a lengthy jury trial, Ms. Crupi was found guilty on several counts of the

indictment.  On December 23, 2014, the District Court entered the Judgment in a Criminal Case pursuant to which Ms. Crupi was sentenced to six years imprisonment, plus four years of supervised release.  A money judgment in the approximate amount of $33,950,967,159.26 was entered against Ms. Crupi.  On April 8, 2015, the District Court entered the Amended Consent Preliminary Order of Forfeiture as to Specific Property/Money Judgment (Case No. 10-cr-00228 (LTS), ECF No. 1318), pursuant to which Ms. Crupi and Ms. Bowen forfeited certain assets and retained certain other assets.

227.    The Trustee is pursuing litigation against Ms. Crupi and Ms. Bowen.  On July 30, 2015, after negotiations between B&H attorneys and counsel for the Crupi Defendants, the Court "so ordered" a case management plan.

### AA.    MATTER 52 – DONALD FRIEDMAN

228.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against S. Donald Friedman, individually and in his capacity as a beneficiary of an individual retirement account, Saundra Friedman, Broadway-Elmhurst Co. LLC, and Ari Friedman (collectively, the "Friedman Defendants"), seeking the return of more than $19 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent transfers, fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Friedman Defendants.  *Picard v. Friedman*, Adv. Pro. No. 10-05395 (SMB) (Bankr. S.D.N.Y. Dec. 9, 2010).

229.    During the Compensation Period, B&H attorneys prepared a digest of the deposition of Mr. Donald Friedman.  B&H attorneys also reviewed documents and existing work product to prepare for potential interviews of former BLMIS employees involved with the Friedman Defendants.

230.    During the Compensation Period, B&H attorneys reviewed mediation procedures and performed research concerning a possible mediation with the Friedman Defendants.  B&H attorneys also performed research on collectability matters.

231.    Furthermore, during the Compensation Period, B&H attorneys corresponded with opposing counsel concerning updated financial information of the Friedman Defendants, mediation, and case management matters.

### BB.    MATTER 53 – MAGNIFY

232.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Magnify Inc., Premero Investments Ltd., Strand International Investments Ltd., The Yeshaya Horowitz Association, Yair Green, Kurt Brunner, Special Situations Cayman Fund LP, Express Enterprises Inc., R.H. Book LLC, and Robert H. Book seeking the return of over $154 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent transfers, fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the defendants.  *Picard v. Magnify Inc., et.al*, Adv. No. 10-05279 (SMB) (Bankr. S.D.N.Y. Dec. 6, 2010).

233.    During the Compensation Period, B&H attorneys continued their investigation of the defendants located outside of the United States.  B&H attorneys continued their review of document productions received from Magnify Inc., Premero Investments Ltd., Strand International Investments Ltd., The Yeshaya Horowitz Association, Yair Green, and Express Enterprises Inc. (collectively, the "Magnify Defendants") as part of ongoing discovery between the parties.  B&H attorneys also continued to produce documents in response to discovery requests by the Magnify Defendants.  On April 6, 2015, B&H attorneys filed an amended Case Management Plan in the case negotiated with counsel for the Magnify Defendants.

67

234.    During the Compensation Period, B&H attorneys corresponded and conferred with counsel for the Magnify Defendants regarding outstanding discovery issues and received additional productions of documents.    Previously, B&H attorneys had prepared and served subpoenas under Rule 45 of the Federal Rules of Civil Procedure and assisted in the preparation of requests for the issuance of letters of request under The Hague Evidence Convention for production of documents from third party foreign banks with relevant information regarding the Magnify Defendants.    The Magnify Defendants had objected to the production by one of the third party foreign banks, and the matter is currently under consideration by the Swiss Court.

235.    In addition to the *Picard v. Magnify* action, this matter also encompasses time spent by the Trustee and B&H attorneys pursuing the avoidance action against the Estate (Succession) of Doris Igoin, Laurence Apfelbaum, and Emilie Apfelbaum (collectively, the "Apfelbaum Defendants"), who have ties to the late founder of several of the Magnify Defendants, seeking the return of over $152 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent transfers, fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Apfelbaum Defendants.    *Picard v. Estate (Succession) of Doris Igoin*, Adv. No. 10-04336 (SMB) (Bankr. S.D.N.Y. Nov. 30, 2010).

236.    During the Compensation Period, B&H attorneys continued their investigation of the Apfelbaum Defendants, who are located outside of the United States.    Following the denial of a motion to dismiss the Trustee's complaint for lack of personal jurisdiction and *forum non conveniens*, B&H attorneys and counsel for the Apfelbaum Defendants negotiated and filed a Case Management Notice on June 25, 2015.    Pursuant to an agreement with the Apfelbaum

Defendants, B&H attorneys also filed a Notice of Applicability of the Order Approving

Litigation Case Management Procedures for Avoidance Actions on June 24, 2015.

237.    The Apfelbaum Defendants filed a motion to withdraw the reference on April 2,

2012. *Picard v. Estate (Succession) of Doris Igoin*, No. 12-02872 (JSR) (S.D.N.Y. Apr. 12,

2012).  B&H attorneys previously drafted various motions and pleadings related to this motion to

withdraw the reference and continue to pursue legal remedies related to certain orders entered by

the District Court.

238.    On October 23, 2014, B&H attorneys submitted a Notice of Presentment of Order

Concerning Further Proceedings on Extraterritoriality Motion and Trustee's Omnibus Motion for

Leave to Replead and for Limited Discovery and Opportunity for Hearing related to certain

avoidance actions, including the *Picard v. Igoin* matter.  Such motion concerned certain

avoidance actions in which the reference was withdrawn concerning whether SIPA and/or the

Bankruptcy Code as incorporated by SIPA apply extraterritorially, permitting the Trustee to

avoid initial transfers that were received abroad or to recover from initial, immediate or mediate

foreign transferees.  On June 26, 2015, the Trustee subsequently dismissed Count Seven of the

Amended Complaint, which obviated the need for the Trustee to include the *Picard v. Igoin*

matter in the briefing concerning the extraterritorial application of SIPA and/or the Bankruptcy

Code.

### CC.    <u>MATTER 54 – MENDELOW</u>

239.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the

avoidance action against Steven B. Mendelow, Nancy Mendelow, Cara Mendelow, Pamela

(Mendelow) Christian, C&P Associates, Ltd., and C&P Associates, Inc. (collectively, the

"Mendelow Defendants") seeking the return of over $20 million under SIPA, the Bankruptcy

Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent

transfers, fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Mendelow Defendants. *Picard v. Steven B. Mendelow*, Adv. No. 10-04283 (SMB) (Bankr. S.D.N.Y. Nov. 23, 2010).

240.    The Mendelow Defendants moved to withdraw the reference, which was granted in part. *Picard v. Mendelow*, No. 11 Civ. 07680 (JSR) (S.D.N.Y. Oct. 28, 2011), (ECF No. 14). The matter was returned to the Bankruptcy Court on August 1, 2014. *Picard v. Mendelow*, No. 11-cv-07680 (JSR)(S.D.N.Y. August 4, 2014), (Dkt. No. 19).

241.    On November 14, 2015, the Mendelow Defendants answered the Complaint. On January 23, 2015, the Trustee entered into a Case Management Order with the Mendelow Defendants.    On May 14, 2015, B&H attorneys served written discovery requests on the Mendelow Defendants.

242.    The Mendelow Defendants filed a Motion for Judgment on the Pleadings on May 14, 2015. B&H attorneys drafted the Trustee's Opposition to Defendants' Motion for Judgment on the Pleadings.

### DD.    MATTER 56 – LIPKIN

243.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Irwin Lipkin, Carole Lipkin, Eric Lipkin, Erika Lipkin, Marc Lipkin, Russell Lipkin, Karen Yokomizo Lipkin, and other individuals (collectively, the "Lipkin Defendants") seeking the return of approximately $9 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent transfers, fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Lipkin Defendants. *Picard v. Irwin Lipkin*, Adv. No. 10-04218 (BRL) (Bankr. S.D.N.Y.).

244.    During the Compensation Period, Eric Lipkin was sentenced to home detention for a period of nine months as part of a larger two year supervised release sentence. *See United States v. O'Hara*, 10-cr-00228.   B&H attorneys granted certain of the Lipkin Defendants extensions of time to respond to the complaint.   B&H also prepared and agreed to a ninth amended case management plan, pursuant to which certain of the Lipkin Defendants consented to mediation of the Trustee's claims against them. *Picard v. Lipkin*, Adv. No. 10-04218, ECF No. 109.

245.    During the Compensation Period, B&H also negotiated a settlement between the Trustee, the United States Attorney's Office and Irwin Lipkin and Carole Lipkin.   Pursuant to the settlement, the Trustee's claims against Irwin Lipkin and Carole Lipkin have been resolved, and Irwin Lipkin and Carole Lipkin withdrew their objections to the Trustee's denial of Mr. and Mrs. Lipkin's customer claims.   The settlement was "so ordered" by the District Court after the close of the Compensation Period.

## EE.    <u>MATTER 58 – PJ ADMINISTRATORS</u>

246.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against American Securities Management, L.P., PJ Associates Group, L.P., and numerous other individuals and entities (collectively, the "PJ Defendants") seeking the return of approximately $91 million, including approximately $10 million in fictitious profits under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent transfers, fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the PJ Defendants. *Picard v. American Sec. Mgmt., L.P.*, Adv. No. 10-05415 (BRL) (Bankr. S.D.N.Y. Dec. 10, 2010).

247.    During the Compensation Period, B&H attorneys prepared for continued litigation in this action, reviewed documents produced by the PJ Defendants, and evaluated settlement possibilities.

### FF.    MATTER 59 – STANLEY SHAPIRO

248.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Stanley Shapiro, Renee Shapiro, S&R Investment Co., David Shapiro, Rachel Shapiro, Leslie Shapiro Citron, Kenneth Citron, and numerous trusts (collectively, the "Shapiro Defendants") seeking the return of over $54 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Shapiro Defendants. *Picard v. Shapiro*, Adv. No. 10-05383 (SMB) (Bankr. S.D.N.Y. Dec. 9, 2010).

249.    Prior to the Compensation Period, B&H attorneys prepared and filed the second amended complaint against the Shapiro Defendants, the Shapiro Defendants moved the Bankruptcy Court to dismiss the second amended complaint on numerous grounds, the Trustee opposed the motion, and the Bankruptcy Court held oral argument on the motion on March 5, 2015.

250.    During the Compensation Period, B&H attorneys continued to further develop the Trustee's case against the Shapiro Defendants and continued to prepare for discovery with the Shapiro Defendants.

### GG.    MATTER 60 – AVELLINO & BIENES

251.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Avellino & Bienes, Frank J. Avellino, Michael S. Bienes, Nancy C. Avellino, Dianne K. Bienes, Thomas G. Avellino, and numerous other trusts and entities

(collectively, the "A&B Defendants") seeking the return of over $904 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent transfers, fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the A&B Defendants. *Picard v. Avellino*, Adv. No. 10-05421 (SMB) (Bankr. S.D.N.Y. Dec. 10, 2010).

252.    On June 6, 2011, certain of the A&B Defendants moved to dismiss the complaint in this Court. (ECF No. 23). That same day, certain A&B Defendants moved to withdraw the reference. *Picard v. Avellino*, No. 11-03882 (JSR) (S.D.N.Y. June 7, 2011), (ECF Nos. 1–3). The motion to withdraw the reference was fully briefed in the District Court, and oral argument was held on October 18, 2011. The reference to this Court was withdrawn on several issues on February 29, 2012. (ECF No. 20). The Trustee and the A&B Defendants participated in Common Briefing before the District Court on the issues withdrawn.

253.    In July 2014, after all withdrawn issues had been decided, the parties negotiated a schedule for the briefing of pending or renewed motions to dismiss. On September 24, 2014, the A&B Defendants filed a supplemental motion to dismiss, renewing their arguments from their 2011 motion. (ECF Nos. 82-85). The Trustee responded by filing an amended complaint on November 24, 2014. (ECF No. 86).

254.    On January 28, 2015, the A&B Defendants filed a renewed motion to dismiss the amended complaint. (ECF No. 88-90). On May 21, 2015, the Trustee filed an opposition to the motion to dismiss. (ECF No. 99). On June 22, 2015, the A&B Defendants filed a reply in support of the motion to dismiss. (ECF No. 101). Oral argument was held on July 29, 2015. At oral argument, the Court requested supplemental briefing from the parties on certain additional issues. The supplemental briefs were filed on August 12, 2015. (ECF No. 102-104). B&H

attorneys continued to perform legal and factual research in connection with the opposition to the A&B Defendants' motion to dismiss the amended complaint, including preparation for oral argument and supplemental briefing requested by the Court.

255.    In addition, while the above-referenced motions and schedules have been pending, B&H attorneys have continued to prepare for discovery, conduct document review, and perform overall case assessment.

## HH.    MATTER 62 – SUBSEQUENT TRANSFERS

256.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing recovery actions against entities that received subsequent transfers of Customer Property from BLMIS.

257.    Prior to the Compensation Period, the Trustee briefed and presented argument at hearings before the District Court on issues raised by subsequent transfer defendants, as well as other defendants, that were subject to Common Briefing and hearings.  As of July 31, 2014, the District Court issued all of its decisions on the issues subject to Common Briefing and remanded the cases to this Court for further findings based on the legal standards set forth in the District Court's decisions. See discussion *supra* Section IV(J).

258.    As part of its Common Briefing decisions, the District Court remanded the cases in which subsequent transfer defendants filed an extraterritoriality motion to dismiss.  On August 22, 2014, the subsequent transfer defendants wrote this Court asking for a conference to discuss further proceedings on the extraterritoriality motion to dismiss.  On August 28, 2014, the Trustee filed a motion to replead and requested limited discovery based on the common briefing decisions issued by the District Court.  On October 17, 2014, this Court held a conference with the parties regarding the defendants' request as to further proceedings on the extraterritoriality

74

motion to dismiss and the Trustee's motion to replead and for limited discovery. During the conference, this Court requested the parties to submit a proposed order governing the requests.

259.   On October 23, 2014, the parties filed a proposed scheduling order to govern the further proceedings on the defendants' extraterritoriality motion to dismiss and the Trustee's request for leave to replead and for limited discovery. Two defendants filed objections to the proposed order. On November 12, 2014, the Trustee filed a response to the objections to the proposed scheduling order. On November 19, 2014, this Court held a hearing on the two objections, as well as a request for clarification by a third defendant. Following the hearing, this Court requested the parties to file a revised scheduling order. On December 10, 2014, this Court issued a revised scheduling order. On February 24, 2015, this Court issued a further revised scheduling order. On March 31, 2015, this Court issued a new revised scheduling order.

260.   On December 31, 2014, the defendants filed their supplemental memorandum in support of their extraterritoriality motion to dismiss. On June 26-30, 2015, the Trustee filed a principal brief in response to the supplemental memorandum in support of the extraterritoriality motion to dismiss, as well as addenda and proffered amended complaints or allegations specific to the moving defendants.

261.   As part of the extraterritoriality briefing, the Trustee sought the de-designation as confidential of numerous documents produced by the defendants. Some of the defendants voluntarily de-designated the documents while others required arbitration and at least one hearing with this Court.

262.   The Trustee's investigation is ongoing, and additional recovery actions against other subsequent transferees likely will be filed in the future.

II.     **MATTER 65 – LEGACY**

263.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Legacy Capital Ltd., Isaac Jimmy Mayer, Rafael Mayer, Khronos LLC, Khronos Capital Research LLC, HCH Management Co., Montpellier Resources Ltd., BNP Paribas Securities Corp., Inversiones Coque S.A., Aurora Resources Ltd., and Olympus Assets LDC (collectively, the "Legacy Capital Defendants") seeking the return of over $218 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Legacy Capital Defendants. *Picard v. Legacy Capital Ltd.*, Adv. No. 10-05286 (SMB) (Bankr. S.D.N.Y. Dec. 6, 2010).

264.    During the Compensation Period, B&H attorneys prepared for continued litigation in this action.  In support of this effort, B&H attorneys continued their investigation of the Legacy Capital Defendants and the respective fraudulent transfers to each defendant.  B&H attorneys also continued to identify relevant witnesses in the United States and abroad and procured information regarding the Legacy Capital Defendants and relevant third party witnesses.

265.    On July 2, 2015, B&H attorneys, on behalf of the Trustee, filed and served a First Amended Complaint ("Amended Complaint") in connection with this adversary proceeding. The Trustee's Amended Complaint named Khronos LLC and Legacy Capital Ltd. as the remaining defendants.  On July 30, 2015, Defendants Khronos LLC and Legacy Capital Ltd. filed motions to dismiss the Amended Complaint under Federal Rule of Bankruptcy Procedure 7012(b) and Federal Rule of Civil Procedure 12(b)(6).  The Trustee also prepared an opposition to the motions to dismiss during the Compensation Period, and oral argument was set before Judge Bernstein on the pending motions for October 28, 2015.  During the Compensation Period,

the Trustee continued to develop his case against Defendants Khronos LLC and Legacy Capital

Ltd.

### JJ.    MATTER 71 – SQUARE ONE

266.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the

avoidance and recovery action against Square One Fund Ltd., Luc D. Estenne, Square Asset

Management Ltd., Partners Advisers S.A., Circle Partners, and Kathryn R. Siggins (collectively,

the "Square One Defendants") seeking the return of approximately $26.2 million under SIPA,

the Bankruptcy Code, and the New York Fraudulent Conveyance Act in connection with certain

transfers of property by BLMIS to or for the benefit of the Square One Defendants. *Picard v.

Square One Fund, Ltd.*, et al., Adv. Pro. No. 10-04330 (SMB) (Bankr. S.D.N.Y. Nov. 29, 2010).

267.    During the Compensation Period, B&H attorneys and counsel for the Square One

Defendants agreed to dismiss without prejudice Partners Advisers S.A., Circle Partners, Luc D.

Estenne, Square Asset Management, Ltd. and Kathryn R. Siggins from the action.  On June 16,

2015, the court so ordered the parties' stipulation to dismiss those parties without prejudice.

*Picard v. Square One Fund, Ltd.*, et al., Adv. Pro. No. 10-04330 (SMB) (Bankr. S.D.N.Y.), (ECF

No. 102).  At present, the Trustee now seeks to avoid and recover the $26.2 million transferred

by BLMIS directly to Square One.

268.    During the Compensation Period, B&H attorneys, on behalf of the Trustee,

entered into a stipulation with counsel for the Square One Defendants to extend Square One's

time to answer, move, or otherwise respond to the Trustee's complaint pending disposition of the

Trustee's Omnibus Motion for Leave to Replead and for Limited Discovery and Opportunity for

Hearing. *Picard v. Square One Fund, Ltd.*, et al., Adv. Pro. No. 10-04330 (SMB) (Bankr.

S.D.N.Y.), (ECF No. 87).

### KK.    MATTER 72 – PLAZA

269.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Plaza Investments International Limited and Notz, Stucki Management (Bermuda) Limited (collectively, the "Plaza Defendants") seeking the return of approximately $235 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Plaza Defendants.  *Picard v. Plaza Invs. Int'l Ltd.*, Adv. No. 10-04284 (SMB) (Bankr. S.D.N.Y. Nov. 23, 2010).

270.    During the Compensation Period, B&H attorneys negotiated with counsel for the Plaza Defendants a settlement agreement to resolve the Trustee's avoidance action.  A motion seeking approval of the settlement agreement was filed with the Bankruptcy Court on June 19, 2015 (ECF No. 77), and an order approving the settlement was entered on July 28, 2015 (ECF No. 82).  Pursuant to the settlement agreement, the Trustee recovered $140,000,000, which represents one hundred percent of the preference and two-year alleged fraudulent transfers and sixty percent of the total alleged fraudulent transfers within the six-year period that the Trustee sought to avoid and recover from the Plaza Defendants.

### LL.    MATTER 73 – BNP PARIBAS

271.    This matter categorizes time spent by the Trustee and B&H attorneys in five adversary proceedings seeking the return of approximately $1 billion under SIPA, the Bankruptcy Code, and the New York Fraudulent Conveyance Act from BNP Paribas S.A. and its subsidiaries— BNP Paribas S.A., BNP Paribas Arbitrage SNC, BNP Paribas Bank & Trust (Cayman) Limited, BNP Paribas Securities Services, BNP Paribas (Suisse) S.A., and BGL BNP Paribas Luxembourg S.A., and BNP Paribas Securities Corp. (collectively, the "BNP Paribas Defendants")—who redeemed money from feeder funds that invested with BLMIS.  *Picard v.*

*BNP Paribas Arbitrage, SNC,* Adv. No. 11-02796 (SMB) (Bankr. S.D.N.Y. Nov. 3, 2011); *Picard v. BNP Paribas S.A.,* Adv. No. 12-01576 (SMB) (Bankr. S.D.N.Y. May 4, 2012); *Picard v. Legacy Capital Ltd.,* Adv. No. 10-05286 (SMB) (Bankr. S.D.N.Y. Dec. 6, 2010); *Picard v. Oreades SICAV,* Adv. No. 10-05120 (SMB) (Bank. S.D.N.Y. Dec. 2, 2010); and *Picard v. Equity Trading Portfolio Ltd.,* Adv. No. 10-04457 (SMB) (Bank. S.D.N.Y. Dec. 1, 2010) (collectively, the "BNP Paribas Proceedings").

272.    Prior to the Compensation Period, the BNP Paribas Defendants filed motions to withdraw the reference, which were granted by Judge Rakoff and resulted in Common Briefing in the District Court.  The BNP Paribas Defendants' motion to withdraw the reference included arguments about extraterritoriality and the good faith standard.  As part of Common Briefing, the District Court issued the Extraterritoriality Opinion and Order and the Good Faith Standard Opinion and Order, and remanded the BNP Paribas Proceedings back to the Bankruptcy Court for further proceedings consistent with its opinions.  *See* discussion *supra* Section IV(J).

273.    During the Compensation Period, under the Extraterritoriality Scheduling Order and stipulations modifying certain deadlines therein, B&H attorneys drafted and filed the Trustee's memorandum of law in opposition to the BNP Paribas Defendants' motion to dismiss based on extraterritoriality and in further support of his motion for leave to amend complaints, the Trustee's supplemental memorandum of law in opposition to the BNP Paribas Defendants' motion to dismiss based on extraterritoriality and in further support of the trustee's motion for leave to amend complaints, and the Trustee's proffered allegations pertaining to the extraterritoriality issue as to the BNP Paribas Defendants.

## V.    <u>COMPENSATION REQUESTED</u>

274.    This Application has been prepared in accordance with the Amended Guidelines for Fees and Disbursements of Professionals in Southern District of New York Bankruptcy Cases

adopted by the Court on April 19, 1995 (the "Local Guidelines") and the Second Amended Compensation Order. Pursuant to the Local Guidelines, the declaration of David J. Sheehan, Esq., regarding compliance with the same is attached hereto as Exhibit A.

275.    The Trustee, and B&H, as counsel to the Trustee, expended 100,137.10 hours in the rendition of professional and paraprofessional services during the Compensation Period, resulting in an average hourly discounted rate of $412.35 for fees incurred.[14] The blended attorney rate is $493.40.

276.    Prior to filing this Application, in accordance with the Second Amended Compensation Order, the Trustee, and B&H, as counsel to the Trustee, provided to SIPC: (i) monthly fee statements setting forth the Trustee's and B&H's fees for services rendered and expenses incurred during the Compensation Period, and (ii) a draft of this Application. In connection with the four monthly statements, the Trustee and B&H voluntarily adjusted their fees by writing off $1,204,171.40 (not including the 10% public interest discount, as discussed below), and wrote off expenses customarily charged to other clients in the amount of $155,459.23.

277.    At SIPC's request, the Trustee's and B&H's fees in this case reflect a 10% public interest discount from their standard rates. This discount has resulted in an additional voluntary reduction during the Compensation Period of $4,588,000.81. The requested fees are reasonable based on the customary compensation charged by comparably skilled practitioners in comparable bankruptcy and non-bankruptcy cases in a competitive national legal market.

278.    Pursuant to the Second Amended Compensation Order, on May 20, 2015, the Trustee, and B&H, as counsel to the Trustee, provided SIPC with their statements of fees and

---

[14] In order to streamline the invoices and related fee applications, as of June 1, 2011, the invoice amounts reflect combined amounts for the Trustee and B&H.

expenses incurred in connection with this case regarding the period from April 1, 2015 through April 30, 2015 (the "April Fee Statement"). The April Fee Statement reflected fees of $10,706,205.40 and expenses of $94,144.98. SIPC's staff requested certain adjustments and made suggestions, which were adopted by the Trustee and B&H. After such adjustments, the April Fee Statement reflected fees of $9,635,584.86. After subtracting the Court-ordered 10% holdback, SIPC advanced $8,672,026.37 for services rendered and $93,583.21 for expenses incurred by the Trustee and B&H.

279.    Pursuant to the Second Amended Compensation Order, on June 19, 2015, the Trustee, and B&H, as counsel to the Trustee, provided SIPC with their statements of fees and expenses incurred in connection with this case regarding the period from May 1, 2015 through May 31, 2015 (the "May Fee Statement"). The May Fee Statement reflected fees of $11,043,589.70 and expenses of $62,405.79. SIPC's staff requested certain adjustments and made suggestions, which were adopted by the Trustee and B&H. After such adjustments, the May Fee Statement reflected fees of $9,939,230.73. After subtracting the Court-ordered 10% holdback, SIPC advanced $8,945,307.66 for services rendered and $61,178.63 for expenses incurred by the Trustee and B&H.

280.    Pursuant to the Second Amended Compensation Order, on July 23, 2015, the Trustee, and B&H, as counsel to the Trustee, provided SIPC with their statements of fees and expenses incurred in connection with this case regarding the period from June 1, 2015 through June 30, 2015 (the "June Fee Statement"). The June Fee Statement reflected fees of $13,004,833.80 and expenses of $92,945.12. SIPC's staff requested certain adjustments and made suggestions, which were adopted by the Trustee and B&H. After such adjustments, the June Fee Statement reflected fees of $11,704,350.42. After subtracting the Court-ordered 10%

holdback, SIPC advanced $10,533,915.38 for services rendered and $92,678.37 for expenses incurred by the Trustee and B&H.

281.    Pursuant to the Second Amended Compensation Order, on August 20, 2015, the Trustee, and B&H, as counsel to the Trustee, provided SIPC with their statements of fees and expenses incurred in connection with this case regarding the period from July 1, 2015 through July 31, 2015 (the "July Fee Statement").    The July Fee Statement reflected fees of $11,125,379.20 and expenses of $68,127.63.    SIPC's staff requested certain adjustments and made suggestions, which were adopted by the Trustee and B&H.    After such adjustments, the July Fee Statement reflected fees of $10,012,841.28.    After subtracting the Court-ordered 10% holdback, SIPC advanced $9,011,557.15 for services rendered and $67,618.56 for expenses incurred by the Trustee and B&H.

282.    Exhibit B annexed hereto is a schedule of the B&H professionals, including the Trustee, and B&H paraprofessionals who have provided services for the Trustee during the Compensation Period, the capacity in which each individual is employed by B&H, the year in which each attorney was licensed to practice law, the hourly billing rate charged by B&H for services provided by each individual, the aggregate number of hours billed by each individual, and the total compensation requested for each individual, prior to the 10% discount.

283.    Exhibit C annexed hereto is a summary of compensation by work task code and matter number for total number of hours expended and total fees for services rendered by B&H professionals and paraprofessionals.    The 10% discount is taken off the total cumulative amount billed, as reflected on Exhibit C.

284.    Exhibit D annexed hereto provides a schedule of the expenses for which reimbursement is requested by B&H.

285.    There is no agreement or understanding among the Trustee, B&H, and any other person, other than members of B&H, for sharing of compensation to be received for services rendered in this case.  No agreement or understanding prohibited by 18 U.S.C. § 155 has been made or will be made by the Trustee or B&H.

286.    To the extent that time or disbursement charges for services rendered or disbursements incurred relate to the Compensation Period, but were not classified or processed prior to the preparation of this Application, the Trustee and B&H reserve the right to request additional compensation for such services and reimbursement of such expenses in a future application.

## VI.    REQUEST FOR INTERIM COMPENSATION SHOULD BE GRANTED

287.    Section 78eee(b)(5)(A) of SIPA provides in pertinent part that, upon appropriate application and after a hearing, "[t]he court shall grant reasonable compensation for services rendered and reimbursement for proper costs and expenses incurred . . . by a trustee, and by the attorney for such a trustee . . . ."  Section 78eee(b)(5)(C) of SIPA specifically establishes SIPC's role in connection with applications for compensation and the consideration the Court should give to SIPC's recommendation concerning fees.  That section provides as follows:

> In any case in which such allowances are to be paid by SIPC without reasonable expectation of recoupment thereof as provided in this chapter and there is no difference between the amounts requested and the amounts recommended by SIPC, the court shall award the amounts recommended by SIPC.  In determining the amount of allowances in all other cases, the court shall give due consideration to the nature, extent, and value of the services rendered, and shall place considerable reliance on the recommendation of SIPC.

SIPA § 78eee(b)(5)(C).

288.    To the extent the general estate is insufficient to pay such allowances as an expense of administration, § 78eee(b)(5)(E) of SIPA requires SIPC to advance the funds necessary to pay the compensation of the Trustee and B&H.  *See* SIPA § 78fff-3(b)(2).

83

289.   While the Trustee has recovered, or entered into agreements to recover, approximately $10.743 billion as of July 31, 2015, a significant portion of these funds must be held in reserve pending final resolution of several appeals and disputes.

290.   Accordingly, the Trustee has determined that, at this time, he has no reasonable expectation that the general estate will be sufficient to make a distribution to general creditors or pay administrative expenses.  The Trustee has been advised by SIPC that it concurs in this belief. Any fees and expenses allowed by this Court will be paid from advances by SIPC without any reasonable expectation by SIPC of recoupment thereof.

291.   Therefore, with respect to this Application, the Trustee, and B&H, as counsel to the Trustee, request that consistent with § 78eee(b)(5)(C) of SIPA, the Court "shall award the amounts recommended by SIPC."  See *In re Bell & Beckwith*, 112 B.R. 876 (Bankr. N.D. Ohio 1990).  SIPC will file its recommendation to the Court with respect to this Application prior to the hearing scheduled to be held on December 17, 2015.

292.   The Trustee, and B&H, as counsel to the Trustee, submit that the request for interim allowance of compensation and expenses made by this Application is reasonable and complies with the provisions of the Bankruptcy Code governing applications for compensation and reimbursement of expenses, pursuant to § 78eee(b)(5) of SIPA.

## VII.    <u>CONCLUSION</u>

The Trustee, and B&H, as counsel to the Trustee, respectfully submit that the services rendered during the Compensation Period and accomplishments to date merit the approval of the fees and disbursements requested herein, and respectfully requests that the Court enter Orders as follows: (i) allowing and awarding $41,292,007.29 (of which $37,162,806.56 is to be paid currently and $4,129,200.73 is to be held back through the conclusion of the liquidation period or until further order of the Court) as an interim payment for professional services rendered by the Trustee and B&H during the Compensation Period, and $315,058.77 as reimbursement of the actual and necessary costs and expenses incurred by the Trustee and B&H in connection with the rendition of such services; and (ii) granting such other and further relief as the Court may deem just and proper.

Dated: New York, New York          Respectfully submitted,
          November 23, 2015

                                   **BAKER & HOSTETLER LLP**

                                   By:  <u>*s/ David J. Sheehan*</u>
                                        Baker & Hostetler LLP
                                        45 Rockefeller Plaza
                                        New York, New York 10111
                                        Telephone: (212) 589-4200
                                        Facsimile: (212) 589-4201
                                        Irving H. Picard
                                        Email: <u>ipicard@bakerlaw.com</u>
                                        David J. Sheehan
                                        Email: <u>dsheehan@bakerlaw.com</u>
                                        Seanna R. Brown
                                        Email: <u>sbrown@bakerlaw.com</u>
                                        Heather R. Wlodek
                                        Email: <u>hwlodek@bakerlaw.com</u>

                                   *Attorneys for Irving H. Picard, Trustee for the*
                                   *Substantively Consolidated SIPA Liquidation of*
                                   *Bernard L. Madoff Investment Securities LLC and*
                                   *the Estate of Bernard L. Madoff*

85