WINDELS MARX LANE & MITTENDORF, LLP       Hearing Date:  December 17, 2015
156 West 56th Street                       Hearing Time: 10:00 a.m. EST
New York, New York 10019                   Objection Deadline:  December 10, 2015
Tel:  (212) 237-1000                       Time: 4:00 p.m. EST
Howard L. Simon
Alan Nisselson
Email: hsimon@windelsmarx.com
       anisselson@windelsmarx.com

*Special Counsel to Irving H. Picard, Esq., Trustee for the
Substantively Consolidated SIPA Liquidation of
Bernard L. Madoff Investment Securities LLC and
Alan Nisselson, the Chapter 7 Trustee of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (SMB) SIPA Liquidation (Substantively Consolidated) |
| Plaintiff-Applicant, | |
| v. | |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |

**EIGHTEENTH APPLICATION OF WINDELS MARX LANE & MITTENDORF, LLP**
**FOR ALLOWANCE OF INTERIM COMPENSATION FOR SERVICES**
**RENDERED AND REIMBURSEMENT OF ACTUAL AND NECESSARY**
**EXPENSES INCURRED FROM APRIL 1, 2015 THROUGH JULY 31, 2015**

Windels Marx Lane & Mittendorf, LLP ("Windels Marx" or the "Firm") as special

counsel to Irving H. Picard as trustee (the "Trustee") for the substantively consolidated

liquidation proceeding of Bernard L. Madoff Investment Securities LLC ("BLMIS" or

"Debtor"), and to Alan Nisselson as trustee (the "Chapter 7 Trustee") for the Chapter 7

estate of Bernard L. Madoff ("Madoff"), pursuant to the Orders of this Court dated July 16, 2009 [Docket No. 327] and November 23, 2011 [Docket No. 4547], respectfully submits this application (the "Eighteenth Application") for an order pursuant to section 78eee(b)(5) of the Securities Investor Protection Act ("SIPA"), 15 U.S.C.§ 78eee(b)(5), sections 330 and 331 of title 11 of the United States Code, 11 U.S.C. §§ 101 et. seq. (the "Bankruptcy Code"), and Rule 2016(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), allowing and awarding interim compensation for services performed by Windels Marx for the period commencing April 1, 2015 through and including July 31, 2015 (the "Compensation Period") in the amount of $2,419,611.50 of which 80%, or $1,935,689.20 is to be paid currently and 20%, or $483,922.30, is to be deferred through the conclusion of the liquidation proceeding or further order of the Court, and reimbursement of Windels Marx's actual and necessary expenses incurred during the Eighteenth Compensation Period in the amount of $12,606.18, and in support thereof, respectfully represents as follows:

## I.    PRELIMINARY STATEMENT

1.    During this Eighteenth Compensation Period, Windels Marx continued to assist the Trustee and his counsel, Baker & Hostetler LLP ("Baker"), in their efforts to recover customer property for the victims of Madoff's fraud.

2.    Among other things, Windels Marx continued its investigations into certain subsequent transferees of BLMIS Customer Property for which complaints were previously filed, including related work (i) addressing the confidentiality status of documents for use in such cases, (ii) analyzing the facts and documents of each case in anticipation of amending the complaints to address the "good faith" standard and other

revisions, and (iii) researching and analyzing legal and factual issues in connection with the Trustee's extraterritoriality briefing and drafting related proffers and supplemental briefs for each subsequent transfer case in which Windels is involved.

3.      We also continued to work on the three actions against entities owned by members of the Madoff family and the 30 "Good Faith" adversary proceedings outstanding during the Compensation Period.

4.      Windels Marx also spent time on matters for which we provide assistance to, and work in coordination with, Baker, including (i) investigations of certain of Baker's feeder fund and subsequent transferee defendants, (ii) legal research and drafting of memoranda on common issues relating to some or all of Baker's and Windels Marx's cases, and (iii) significant discovery support for certain of Baker's avoidance actions to the extent Baker has a legal conflict.

5.      The following discussion and the materials attached to this Eighteenth Application cover the major categories of services for which allowance of compensation is sought.

## II.      PROCEDURAL BACKGROUND

The SIPA Liquidation

6.      On December 11, 2008, the United States Securities and Exchange Commission (the "SEC") filed a complaint in the United States District Court for the Southern District of New York (the "District Court") against defendants Madoff and BLMIS (Case No. 08 CV 10791) (the "SEC Action").  The SEC complaint alleged that Madoff and BLMIS engaged in fraud through the investment advisor activities of BLMIS.

7.      In the SEC Action, the SEC consented to a combination of its own action

with an application of the Securities Investor Protection Corporation ("SIPC").  Thereafter,

pursuant to section 78eee(a)(3) of the SIPA, SIPC filed an application in the District Court

alleging, inter alia, that BLMIS was not able to meet its obligations to securities customers

as they came due and, accordingly, its customers needed the protection afforded by SIPA.

8.    On December 15, 2008, District Judge Stanton granted the SIPC

application, which among other things:

- appointed Irving H. Picard as the SIPA Trustee for the liquidation of the business of BLMIS pursuant to 15 U.S.C. § 78eee(b)(3);
- appointed Baker as counsel to the SIPA Trustee pursuant to 15 U.S.C. § 78eee(b)(3); and
- removed the liquidation proceeding (the "BLMIS Liquidation") to this Court pursuant to 15 U.S.C. § 78eee(b)(4).

<u>The Bernard L. Madoff Chapter 7 Case</u>

9.    On April 13, 2009, Blumenthal & Associates Florida General Partnership,

Martin Rappaport Charitable Remainder Unitrust, Martin Rappaport, Marc Cherno and

Steven Morganstern (collectively, the "Petitioning Creditors"), through their attorneys,

Milberg LLP, filed an involuntary petition for relief under Chapter 7 of the Bankruptcy

Code against Madoff.

10.    On April 16, 2009, the Petitioning Creditors filed a motion to appoint a

trustee in Madoff's case, and on that same date, the Court entered an Order to Show Cause

Why the Court Should Not Enter an Order Directing the United States Trustee to Appoint

an Interim Trustee.

11.    On April 20, 2009, the Court entered an Order directing the Office of the

United States Trustee for the Southern District of New York (the "UST") to appoint an

interim trustee to perform the duties of trustee as set forth in Bankruptcy Code §§ 701 and

704, pursuant to which the UST appointed Alan Nisselson as the Chapter 7 Trustee on April 21, 2009.

12.    On April 24, 2009, the Court entered an Order authorizing and empowering the Chapter 7 Trustee to retain Windels Marx to represent him in the Madoff case, effective as of April 21, 2009.

13.    On May 5, 2009, the SIPA Trustee and SIPC filed a joint motion for entry of an order pursuant to section 105(a) of the Bankruptcy Code substantively consolidating the Madoff estate into the BLMIS Liquidation (the "Substantive Consolidation Motion").

14.    On June 9, 2009, after the Chapter 7 Trustee filed a Response to the Substantive Consolidation Motion, the Court entered a Consent Order ("Consent Order") [Docket No. 252] which, among other things:

- approved the Substantive Consolidation Motion, nunc pro tunc to December 11, 2008;
- ordered that the Chapter 7 Trustee would remain trustee to the Madoff estate and would continue to have all powers, rights, claims, and interests of a Chapter 7 trustee pursuant to, among others, Chapters 5 and 7 of the Bankruptcy Code;
- directed that the Trustee would have all the duties and powers of a SIPA trustee and of a Chapter 7 trustee, other than those specifically granted to the Chapter 7 Trustee as indicated above; and
- ordered that the Chapter 7 Trustee would be authorized to use as his counsel any counsel or special counsel retained by the Trustee, after consultation with, and the approval of, the Trustee and SIPC.

15.    On July 16, 2009, this Court entered an Order granting the Trustee's motion to retain Windels Marx as special counsel on behalf of the consolidated estate, *nunc pro tunc* as of June 9, 2009 [Docket No. 327], finding that Windels Marx is disinterested pursuant to provisions section 78eee(b)(6) of SIPA, section 327(a) of the Bankruptcy Code, and Bankruptcy Rule 2014(a) and is therefore in compliance with the

disinterestedness requirement in section 78eee(b)(3) of SIPA, section 327(a) of the Bankruptcy Code, and Bankruptcy Rule 2014(a).

16.    On November 23, 2011, this Court entered an Order [Docket No. 4547] making certain provisions of this Court's Order Establishing Procedures Governing Interim Monthly Compensation of the Trustee and Baker & Hostetler LLP, amended and superseded in its entirety on June 1, 2011, applicable to Windels Marx, *nunc pro tunc* as of June 1, 2011.

## III.    SPECIAL COUNSEL'S EXPERIENCE

17.    Windels Marx engages in the general practice of law, and has substantial expertise in such areas as bankruptcy, commercial litigation, securities, tax and corporate law.

18.    In particular, the senior Windels Marx attorneys in charge of this matter specialize in advising Chapter 7 and Chapter 11 bankruptcy trustees in connection with complex bankruptcy litigation related to, among other things, asset analysis and recovery.

## IV.    SUMMARY OF SERVICES

19.    The services rendered by Windels Marx during the four-month Eighteenth Compensation Period are described below.  In rendering professional services to the Trustee and the Chapter 7 Trustee, Windels Marx's legal team has been composed of professionals with extensive experience in bankruptcy and complex commercial litigation, securities, tax, and corporate law.

20.    Windels Marx professionals have worked closely with the Trustee, his counsel Baker, and the Trustee's other retained professionals to coordinate their efforts in order to maximize efficiency and to avoid any duplication of effort.

21.     This Eighteenth Application is intended to serve as a summary description of the more significant services rendered by Windels Marx during the Eighteenth Compensation Period.  The following section provides an overview of those services, sorted by the matter and task codes used by Windels Marx for specific categories of work.

22.     Matter Number 02 is the general matter number used for tasks that affect all proceedings commenced by Windels Marx on behalf of the Trustee, and task numbers have been assigned for specific categories of work to permit a more detailed analysis of the fees incurred.[1]

23.     Matter Numbers 03-20 relate to specific projects, adversary proceedings, or groups of adversary proceedings commenced, being handled, and/or being supervised by Windels Marx on behalf of the Trustee. Common tasks conducted by Windels Marx in these projects, adversary proceedings, or groups of adversary proceedings include the drafting of reports, analyses, and internal memoranda; the filing of papers and the scheduling of matters with the Bankruptcy and/or District Courts; on-going coordination with Baker regarding investigation and litigation strategy; and/or discussions with opposing counsel regarding representation, service, and appearance issues, extensions of time to respond, adjournments of pre-trial conferences, discovery, and settlement.  For the sake of brevity, the descriptions of specific projects, adversary proceedings, or groups of adversary proceedings in paragraphs 24 through 55 below will not repeat these common tasks, but will be limited to matter-specific tasks and case activity that occurred during the Compensation Period.

## A.     MADOFF  GENERAL (MATTER 02)

---

[1] Matter 01 is reserved for certain non-billable time entries.

**Task Code 004: Case Administration (604.1 hours)**

24.     This category relates to various tasks across cases, including (i) research projects and memoranda of general applicability for use by Windels Marx and/or Baker, (ii) the on-going review and reporting internally and to SIPC and Baker on the status of cases and case-wide issues, (iii) the on-going review, organizing, and docketing of case-related information into Baker's and Windels Marx's central databases for use across all Windels Marx and Baker teams, (iv) coordinated tasks affecting or related to one or more Windels Marx and/or Baker cases, and (v) general administrative tasks.

25.     Time entries during this Compensation Period related to, among other things, work common to the Firm's subsequent transferee cases and subsequent transferee-related projects performed at Baker's request, including (i) analysis, legal research, and drafting memoranda on numerous arguments and issues affecting Windels Marx and Baker subsequent transferee cases, (ii) assisting with drafting common language for the extraterritoriality briefing, including the main brief, and the proffers and supplemental briefs for each Windels Marx subsequent transferee case and the Baker subsequent transferee "coordinated cases" on which Windels provides assistance (discussed in Section L below), (iii) reviewing and analyzing documents and issues related to bank accounts, transfers, and subscriptions/redemptions for use in the extraterritoriality proffers and briefs, (iv)  working on discovery, case plans, and strategies for each of Windels Marx's subsequent transferee cases and the coordinated cases, and (v) attending, and working on and addressing common strategies, issues, and protocols raised in, team meetings led by Baker.

**Task Code 007: Fee Application (119.2 hours)**

26.    This category relates to the Firm's preparation of Windels Marx's monthly billing statements to SIPC, as well as Windels Marx's Applications for Interim Compensation, and the time spent by attorneys and paraprofessionals in reviewing the Windels Marx billing statements before they are submitted to SIPC and the Trustee, to ensure that time was properly billed, to correct any errors in time entries, to write off certain time and expenses as agreed to by Windels Marx for the benefit of SIPC, and to respond to certain adjustments requested by SIPC and/or the Trustee after their review of the monthly billing statements and draft fee application.

### Task Code 020: Internal Office Meetings (13.5 hours)

27.    This category covers internal Windels Marx strategy and case management sessions related to the Firm's pending adversary proceedings. Through these internal meetings and discussions, Windels Marx seeks to ensure the effective use of the time of all timekeepers working on matters, to avoid duplicative efforts, and to provide a consistent approach to the approximately 44 adversary proceedings outstanding during this period, the coordinated cases discussed in Matter 20 below, and other legal matters being handled by the Firm.

### Task Code 041: Discovery, Document Review, Document Production (1,001.1 hours)

28.    This category relates to discovery and related issues not specific to a Windels Marx case, such as document productions in response to third party subpoenas, productions of documents produced by parties with whom Baker has a conflict, confidentiality issues concerning these document productions, and other discovery-related work that is responsive to requests from Baker or applicable generally to Windels Marx's

cases.

29.    Time entries during this Compensation Period related to, among other things, (i) working with Baker on issues related to obtaining discovery from foreign third-parties, (ii) preparing  numerous bank subpoenas for Baker in Good Faith cases and working on related responses, document productions, custodian certifications, and a motion to compel production, (iii) working on matters related to the de-designation of confidential documents used or to be used in subsequent transfer amended complaints and the extraterritoriality briefing, including a motion to dedesignate certain documents produced by a non-party, and (iv) working with the Baker Discovery Management Team (and sub-groups thereof) on general discovery protocols, strategies, and issues impacting the Firm's Madoff cases.

### Task Code 042: Bankruptcy Court Litigation (4.8 hours)

30.    This category covers litigation brought by Windels Marx on behalf of the Trustee other than adversary proceedings against BLMIS Investment Advisor customers, which during the Compensation Period included the fraudulent conveyance cases against Hoboken Radiology LLC, *Picard v Hoboken Radiology LLC*, Adv. Pro. No. 10-05386 (Bankr. S.D.N.Y.) (SMB), and PetcareRX, *Picard v. PetCareRX*, Adv. Pro. No. 10-05392 (Bankr. S.D.N.Y.) (SMB). The Hoboken Radiology case was closed and dismissed in April 2015.

31.    The minimal time entries during this Compensation Period related to addressing (i) closing issues in Hoboken Radiology and (ii) the effect of the Supreme Court's denial of certiorari  on 546(e)  on the PetCareRX proceeding.

### Task Code L140: Document/File Management (1.0 hours)

32.     This category covers time spent managing on-site and off-site preservation and organization activities with respect to the Firm's Madoff-related physical case files and inventories.

**B.      GOOD FAITH PROCEEDINGS (MATTER 07) (<u>947.5 hours</u>)**

33.     This category relates to the 30 "Good Faith" adversary proceedings against BLMIS Investment Advisor net winner customers that were outstanding during this Compensation Period. These cases seek to recover approximately $109.4 million in fictitious profits paid out by BLMIS in two year transfers.

34.      In addition to the tasks outlined in ¶ 23, time entries during this Compensation Period included (i) analyzing Windels Marx's good faith cases and determining next steps for same in light of the Supreme Court's denial of certiorari on the section 546(e) issue and this Court's decision on the omnibus motion to dismiss, including drafting related proposed orders and stipulations of dismissal, (ii) assessing settlement potential, participating in settlement conferences, drafting settlement-related memoranda, and working on possible settlement and/or dismissal in numerous good faith cases,  (iii) working on case status, litigation strategy, mediation, undisputed transfer stipulations, financial information analysis,  and discovery issues in several of the good faith cases, and (iv) researching, analyzing, and working on legal and factual issues applicable to some or all of the good faith cases.

**C.      MADOFF FAMILY ENTITIES (MATTER 08) (<u>31.2 hours</u>)**

35.     This category relates to three cases against certain Madoff family-owned entities and Madoff family members seeking in the aggregate over $30 million in transfers from BLMIS that were used to capitalize and fund certain Madoff family personal business

ventures. *Picard v. Madoff Technologies LLC, et al.,* Adv. Pro. No. 10-0483 (Bankr.

S.D.N.Y.) (SMB); *Picard v. Madoff Family LLC, et al.,* Adv. Pro. No. 10-03485 (Bankr.

S.D.N.Y.) (SMB); *Picard v. Madoff Energy Holdings,* Adv. Pro. No. 10-034184 (Bankr.

S.D.N.Y.) (SMB).

36.    In addition to the tasks outlined in ¶ 23, time entries during this

Compensation Period related to working on (i) stipulations adjourning the pretrial

conferences and deadlines for substituting parties in the three cases and (ii) issues related

to a potential settlement with the Andrew Madoff and Mark Madoff estates and the effects

of same on assets held by the entities.

**D.    CREDIT SUISSE (MATTER 12) (<u>915.0 hours</u>)**

37.    This category relates to an avoidance action filed on December 12, 2011 to

recover subsequent transfers of BLMIS Customer Property from certain BLMIS feeder

funds to Defendants totaling over $375 million. *Picard v. Credit Suisse AG, et al.,* Adv.

Pro. No. 11-02925 (Bankr. S.D.N.Y.) (SMB).

38.    In addition to the tasks outlined in ¶ 23, time entries during this

Compensation Period related to (i) reviewing and analyzing various Credit Suisse-related

regulatory, public, and other documents for use in the Credit Suisse extraterritoriality

proffer and supplemental brief, (ii) researching and analyzing legal and factual issues and

drafting analyses, charts, and memoranda for use in the Credit Suisse extraterritoriality

proffer and supplemental brief, (iii) updating and drafting new language and sections for a

Credit Suisse draft amended complaint and the Credit Suisse extraterritoriality proffer and

supplemental brief, and (iv) developing case evaluations, summaries, and strategies,

including identifying potential witnesses and discovery targets, and drafting case plans.

**E.    SOLON CAPITAL (MATTER 13) (122.8 hours)**

39.    This category relates to an avoidance action filed on January 17, 2012, amended July 30, 2012, to recover subsequent transfers of BLMIS Customer Property from a BLMIS feeder fund to Defendant totaling approximately $2 million. *Picard v. Solon Capital, Ltd.*, Adv. Pro. No. 12-01025 (Bankr. S.D.N.Y.) (SMB).

40.    In addition to the tasks outlined in ¶ 23, time entries during this Compensation Period related to (i) reviewing and analyzing Solon Capital-related documents, court filings, and other documents, for potential use in the Solon Capital extraterritoriality proffer and supplemental brief, (ii) updating and drafting new language and sections for a Salon Capital draft second amended complaint and extraterritoriality proffer and supplemental brief, (iii) working on de-designation and confidentiality issues related to documents to potentially be used in a Solon Capital draft second amended complaint and the Solon Capital extraterritoriality proffer and supplemental brief, and (iv) developing case summaries and strategies, including identifying discovery targets and drafting case plans.

**F.    ZEPHYROS (MATTER 14) (127.5 hours)**

41.    This category relates to an avoidance action filed on April 5, 2012 to recover subsequent transfers of Customer Property from certain BLMIS feeder funds to Defendant totaling over $114 million. *Picard v. Zephyros Limited*, Adv Pro. No. 12-01278 (Bankr. S.D.N.Y.) (SMB).

42.    In addition to the tasks outlined in ¶ 23, time entries during this Compensation Period related to (i) reviewing and analyzing transfer, bank account, and other Zephyros-related documents for potential use in the Zephyros extraterritoriality

proffer and supplemental brief, (ii) updating and drafting new language and sections for a Zephyros draft amended complaint and the Zephyros extraterritoriality proffer and supplemental brief, (iii) working on de-designation and confidentiality issues related to documents to potentially be used in a Zephyros draft amended complaint and the Zephyros extraterritoriality proffer and supplemental brief, and (iv) developing case summaries and strategies, including identifying discovery targets and drafting case plans.

## G.    MISTRAL (MATTER 15) (<u>196.4 hours</u>)

43.    This category relates to an avoidance action filed on April 5, 2012 to recover subsequent transfers of Customer Property from certain BLMIS feeder funds to Defendant totaling approximately $3.4 million.  *Picard v. Mistral (SPC)*, Adv Pro. No. 12-01273 (Bankr. S.D.N.Y.) (SMB).

44.    In addition to the tasks outlined in ¶ 23, time entries during this Compensation Period related to (i) reviewing and analyzing expert analyses, wire transfer, bank account, and other Mistral-related documents for potential use in the Mistral extraterritoriality proffer and supplemental brief, (ii) updating and drafting the Mistral extraterritoriality proffer and supplemental brief, (iii) working on de-designation and confidentiality issues related to documents to potentially be used in a Mistral draft amended complaint and the Mistral extraterritoriality proffer and supplemental brief, and (iv) developing case summaries and strategies, including identifying discovery targets and drafting case evaluations.

## H.    SOCIETE GENERALE (MATTER 16) (<u>308.2 hours</u>)

45.    This category relates to an avoidance action filed on May 30, 2012 to recover subsequent transfers of Customer Property from certain BLMIS feeder funds to

Defendants totaling over $162 million. *Picard v. Societe Generale Private Banking (Suisse) S.A. (f/k/a SG Private Banking Suisse S.A.)*, Adv Pro. No. 12-01677 (Bankr. S.D.N.Y.) (SMB).

46.    In addition to the tasks outlined in ¶ 23, time entries during this Compensation Period related  to (i) reviewing and analyzing various Societe Generale-related public and other documents for use in the Societe Generale extraterritoriality proffer and supplemental brief,  (ii) researching and analyzing legal and factual issues and drafting analyses, charts, and memoranda for use in the Societe Generale extraterritoriality proffer and supplemental brief, (iii) updating and drafting new language and sections for a Societe Generale draft amended complaint and the Societe Generale extraterritoriality proffer and supplemental brief,  and (iv) developing case strategies, including identifying potential discovery targets and drafting case summaries and evaluations.

## I.    ROYAL BANK OF CANADA (MATTER 17) (537.8 hours)

47.    This category contains entries related to two avoidance actions. The first action relates to an avoidance action filed on June 6, 2012 to recover subsequent transfers of Customer Property from certain BLMIS feeder funds to Defendants totaling over $100 million. *Picard v. Royal Bank of Canada*, Adv. Pro. No. 12-01699 (SMB).

48.    The second action under Matter 17 relates to an avoidance action filed on June 6, 2012 to recover subsequent transfers of Customer Property from certain BLMIS feeder funds to Defendants totaling over $80 million.  *Picard v. Banque Internationale a Luxembourg S.A. (f/k/a Dexia Banque Internationale a Luxembourg S.A.)*, Adv. Pro. No. 12-01698 (SMB).

49.    In addition to the tasks outlined in ¶ 23, time entries during this

Compensation Period related to (i) reviewing and analyzing various Royal Bank of Canada

and Banque Internationale a Luxembourg-related public and other documents for use in the

Royal Bank of Canada and Banque Internationale a Luxembourg extraterritoriality proffers

and supplemental briefs,  (ii) researching and analyzing legal and factual issues and

drafting analyses, charts, and memoranda for use in the Royal Bank of Canada and Banque

Internationale a Luxembourg extraterritoriality proffers and supplemental briefs and draft

amended complaints, (iii) working on de-designation and confidentiality issues related to

documents to potentially be used in the Royal Bank of Canada and Banque Internationale a

Luxembourg extraterritoriality proffers and supplemental briefs, (iv) updating and drafting

the Royal Bank of Canada and Banque Internationale a Luxembourg extraterritoriality

proffers and supplemental briefs,  and (v) developing case strategies, including identifying

potential discovery targets and drafting case summaries and evaluations.

**J.      CREDIT SUISSE (AS SUCCESSOR-IN-INTEREST TO CLARIDEN LEU) (MATTER 18) (225.9 hours)**

50.     This category relates to an avoidance action filed on May 30, 2012,

amended July 30, 2012, to recover subsequent transfers of Customer Property from certain

BLMIS feeder funds to Defendant totaling over $49 million. *Picard v. Credit Suisse AG.,*

*as successor-in-interest to Clariden Leu AG and Bank Leu AG*, Adv. Pro. No. 12-01676

(SMB). 23

51.     In addition to the tasks outlined in ¶ 23, time entries during this

Compensation Period related to (i) reviewing and analyzing various Clariden Leu-related

public and other documents, and researching and analyzing legal and factual issues, for use

in the Clariden Leu extraterritoriality proffer and supplemental brief, (ii) working on de-

designation and confidentiality issues related to documents to potentially be used in the Clariden Leu extraterritoriality proffer and supplemental brief and draft amended complaint, (iii) updating and drafting new language and sections for a Clariden Leu draft amended complaint and the Clariden Leu extraterritoriality proffer and supplemental brief, and (iv) developing case strategies, including identifying potential discovery targets and drafting case summaries and evaluations.

**K.    TRINCASTAR (MATTER 19) (121.2 hours)**

52.     This category relates to an avoidance action filed on September 22, 2011 to recover subsequent transfers of Customer Property from a BLMIS feeder fund to Defendant totaling approximately $13.3 million. *Picard v. Trincastar Corp*., 11-02731 (SMB).

53.     In addition to the tasks outlined in ¶ 23, time entries during this Compensation Period related to (i) reviewing and analyzing various Trincastar-related public and other documents, and researching and analyzing legal and factual issues, for use in the Trincastar extraterritoriality proffer and supplemental brief, (ii) working on de-designation and confidentiality issues related to documents to potentially be used in the Trincastar extraterritoriality proffer and supplemental brief and draft amended complaint, (iii) updating and drafting new language and sections for a Trincastar draft amended complaint and the Trincastar extraterritoriality proffer and supplemental brief,  and (iv) developing case strategies, including identifying potential discovery targets and drafting case summaries and evaluations.

**L.    COORDINATED CASES (MATTER 20) (800.3 hours)**

54.     This category relates to a group of thirteen international subsequent

transferee cases, filed by Baker and staffed with Baker attorneys, which Howard Simon is supervising, with supporting work by other Windels attorneys, to facilitate the coordination of common information, issues, and documents between the firms and take advantage of staffing efficiencies. During the Eighteenth Compensation period, this category also included work performed at Baker Hostetler's request in connection with the Tremont group of Madoff feeder funds, and application of same to all Windels Marx and Baker subsequent transferee cases.

55.    Time entries during this Compensation Period related to (i) reviewing and analyzing redemption, subscription, and other documents, and conducting legal and factual analysis and drafting related memoranda, for use in the coordinated cases' extraterritoriality proffers and supplemental briefs, (ii) updating and drafting new language and sections for the coordinated cases' draft amended complaints and the extraterritoriality proffers and supplemental briefs for the coordinated cases and for nine additional Baker subsequent transferee cases, (iii) reviewing potential settlement options for one or more of the coordinated cases,  (iv) reviewing and analyzing various Tremont fund-related public and other documents, and researching and analyzing legal and factual issues, for use in the Tremont feeder fund-related sections for Windels Marx and Baker amended subsequent transferee complaints and extraterritoriality proffers and supplemental briefs, and (v) drafting updated and new Tremont feeder fund-related language and sections for Windels Marx and Baker amended subsequent transferee complaints and extraterritoriality proffered allegations and supplemental briefs.

## V.    <u>COMPENSATION REQUESTED</u>

56.    During the Eighteenth Compensation Period, Windels Marx expended

6,077.5 hours in the rendition of professional and paraprofessional services on behalf of the Trustee and the Chapter 7 Trustee, resulting in a blended attorney hourly rate of $410.80 for fees incurred.

57.    Prior to filing this Eighteenth Application, Windels Marx provided to SIPC and the Trustee (i) its April 1, 2015 through July 31, 2015 monthly statements setting forth the Firm's total fees for services rendered and expenses incurred on behalf of the consolidated estate for each month during the period April 1, 2015 through July 31, 2015 in the aggregate amount of $2,854,408.96 and $19,073.07, respectively, and (ii) a draft of this Eighteenth Application. The Firm wrote off certain unbilled and billed time, and SIPC's staff made certain additional adjustments and suggestions, which were adopted by Windels Marx. After such write-offs and adjustments (and the 10% discount), Windels Marx's April 1, 2015 through July 31, 2015 monthly statements reflected total fees and expenses of $2,419,611.50 and $12,606.18, respectively.

58.    Specifically, Windels Marx's total fees and expenses for this Eighteenth Compensation Period were $2,854,408.96 and $19,073.07, respectively. In connection with preparing each of the four monthly statements and this Eighteenth Application, Windels Marx voluntarily (i) wrote off unbilled time of $105,953.40, (ii) wrote off billed time of $59,998.33, and (iii) reduced its total remaining fees of $2,688,457.22 to $2,419,611.50 by discounting the Firm's rates by 10% at SIPC's request (resulting in a voluntary reduction of $434,797.46 or approximately 15.23% of Windels Marx's total fees). Windels Marx also agreed to write off expenses customarily charged to other clients in the amount of $6,466.89, resulting in $12,606.18 of remaining expenses. Such fees and expenses are reasonable based on the customary compensation charged by comparably

skilled practitioners in the Chapter 7 and 11 Cases and comparable bankruptcy and non-bankruptcy cases in a competitive national legal market. Total hours expended after all reductions equal 6,077.50.

59.      There is no agreement or understanding among the Trustee, Windels Marx or any other person, other than members of Windels Marx, for sharing of compensation to be received for services rendered in this case.

60.      This Eighteenth Application has been prepared in accordance with the Amended Guidelines for Fees and Disbursements of Professionals in Southern District of New York Bankruptcy Cases adopted by the Court on April 19, 1995 (the "Local Guidelines"). Pursuant to the Local Guidelines, the certification of Howard L. Simon, Esq. regarding compliance with the same is attached hereto as Exhibit A.

61.      Exhibit B annexed hereto provides a schedule of Windels Marx professionals and paraprofessionals who have provided services for the Debtors during the Eighteenth Compensation Period, the capacity in which each individual is employed by the Firm, the year in which each attorney was licensed to practice law in New York, the hourly billing rate charged by Windels Marx for services provided by each individual and the aggregate number of hours billed by each individual. The 10% discount (as described above) is already reflected in the total amount billed.

62.      Exhibit C annexed hereto provides a schedule of the expenses for which reimbursement is requested. The requested expenses are customarily charged to and paid by Windels Marx's bankruptcy and non-bankruptcy clients. At SIPC's request, Windels Marx has not charged for local travel expenses and overtime meals, which categories of expenses are regularly charged to and paid by Windels Marx's clients.

63.    Exhibit D annexed hereto is a summary by matter and task code of services performed by Windels Marx from April 1, 2015 through July 31, 2015.

64.    To the extent that time or disbursement charges for services rendered or disbursements incurred relate to the Eighteenth Compensation Period, but were not classified or processed prior to the preparation of this Eighteenth Application, Windels Marx reserves the right to request additional compensation for such services and reimbursement of such expenses in a future application.

### VI.    WINDELS MARX'S REQUEST FOR INTERIM COMPENSATION SHOULD BE GRANTED

65.    Section 78eee(b)(5)(A) of SIPA provides in pertinent part that, upon appropriate application and after a hearing, "[t]he court shall grant reasonable compensation for services rendered and reimbursement for proper costs and expenses incurred ... by a trustee ..."  Section 78eee(b)(5)(C) of SIPA specifically establishes SIPC's role in connection with applications for compensation and the consideration the Court should give to SIPC's recommendation concerning fees.  That section provides as follows:

> In any case in which such allowances are to be paid by SIPC without reasonable expectation of recoupment thereof as provided in this Chapter and there is no difference between the amounts requested and the amounts recommended by SIPC, the court shall award the amounts recommended by SIPC.  In determining the amount of allowances in all other cases, the court shall give due consideration to the nature, extent, and value of the services rendered, and shall place considerable reliance on the recommendations of SIPC.

66.    To the extent the general estate is insufficient to pay such allowances as an expense of administration, section 78eee(b)(5)(E) of SIPA requires SIPC to advance the funds necessary to pay the compensation of Windels Marx (*see* section 78fff-3(b)(2) of SIPA).

67.    Based on the allocation process set forth in SIPA, the Trustee has determined at this time that he has no reasonable expectation that the general estate will be sufficient to make any distribution to general creditors or pay any administrative expenses. That is, the Trustee believes that any assets allocated to the BLMIS general estate will be exhausted prior to his being able to reimburse SIPC fully.  The Trustee has been advised by SIPC that it concurs with this belief of the Trustee.  Accordingly, any fees and expenses allowed by this Court will be paid from advances by SIPC without any reasonable expectation by SIPC of recoupment thereof.

68.    Therefore, with respect to this Eighteenth Application, Windels Marx requests that consistent with section 78eee(b)(5)(C) of SIPA, the Court "award the amounts recommended by SIPC."  *See In re Bell & Beckwith*, 112 B.R. 876 (Bankr. N.D. Ohio 1990).  Windels Marx expects that SIPC will file its recommendation to the Court with respect to this Eighteenth Application prior to the hearing, currently scheduled for December 17, 2015.

69.    Windels Marx submits that the request for interim allowance of compensation made through this Eighteenth Application is reasonable and complies with the provisions of the Bankruptcy Code governing applications for compensation and reimbursement of expenses, pursuant to section 78eee(b)(5) of SIPA.

## VII.    CONCLUSION

70.    Windels Marx respectfully submits that the services rendered during the Eighteenth Compensation Period merit the approval of the fees and disbursements requested herein, and respectfully requests that the Court enter an Order: (i) allowing and awarding $2,419,611.50 (of which 80%, or $1,935,689.20, is to be paid currently, and

20%, or $483,922.30 is to be deferred through the conclusion of the liquidation proceeding or further order of the Court) as an interim payment for professional services rendered by Windels Marx during the Eighteenth Compensation Period, and $12,606.18 as reimbursement of the actual and necessary costs and expenses incurred by the Firm in connection with the rendition of such services, and (ii) granting such other and further relief as the Court may deem just and proper.

Dated: New York, New York
        November 23, 2015

Respectfully submitted,

WINDELS MARX LANE & MITTENDORF, LLP
*Special Counsel for Irving H. Picard, Trustee for the SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and Alan Nisselson, the Chapter 7 Trustee of Bernard L. Madoff*

/s/ Howard L. Simon
Howard L. Simon (hsimon@windelsmarx.com)
156 West 56th Street
New York, New York 10019
Telephone: (212) 237-1000
Facsimile: (212) 262-1215