DENTONS US LLP
Carole Neville
1221 Avenue of the Americas
New York, New York 10020
Telephone:  (212) 768-6700
Facsimile:  (212) 768-6800
carole.neville@dentons.com

*Attorneys for Epic Ventures LLC*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>                         Plaintiff,<br><br>                 v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br>                         Defendant. | Adv. Pro. No. 08-01789 (SMB)<br><br>SIPA Liquidation |

### OBJECTION TO TRUSTEE'S DETERMINATION OF CLAIM

Epic Ventures LLC ("Epic") hereby objects to the Notice of Trustee's Determination of

Claim dated November 2, 2015 ("Determination Letter"), as described herein.  A copy of the

Determination Letter is attached to the accompanying Declaration of Eric P. Stein, Managing

Member of Epic as Exhibit A.

### BACKGROUND

1.      On or about December 31, 1999, Epic opened an account with Bernard L. Madoff

Investment Securities LLC ("Madoff Securities") (Account No. 1E0158) (the "Epic Customer

Account") with a transfer from another account, Account No. 1L001330 (the "Lehrer Joint

Venture Account"), held in Madoff Securities for certain customers, including certain

individuals who would become depositors in Epic. Declaration of Eric P. Stein ¶ 5 (hereinafter,

the "Stein Dec.").

2.      Epic itself was formed in or about October 1999, after discussion with Bernard Madoff ("Madoff") and with his express approval, as a vehicle to aggregate individual accounts that were less than Madoff's investment minimum.  The common feature of the accounts in Epic was the investment in Madoff Securities.  The accounts in Epic were held by depositors in different capacities, including, without limitation, IRAs, trusts, and personal accounts.  See Stein Dec. ¶ 3.

3.      As more fully set forth in the Stein declaration, Epic maintained each deposit as a deposit for a separate account (the "Epic Individual Accounts").  Each depositor, called an Economic Interest Holder, held only an economic interest in Epic, which gave the depositor solely the right to net gains, losses and distributions, if any, on the investment in Madoff Securities.  None of the Economic Interest Holder of Epic, other than the managing member, were members of the limited liability company.  Each investor made his, her or its own contribution and distribution decisions.  See Stein Dec. ¶ 4.

4.      From the creation of the Epic Customer Account, Epic received regular communications from Madoff Securities, including monthly statements, trade confirmations, and quarterly portfolio management reports.

5.      The final Madoff Securities statement dated November 30, 2008 (the "Final Madoff Statement") for the Epic Customer Account shows that Epic owned securities with a market value of $15,903,694 in the Epic Customer Account.  A copy of the Final Madoff Statement is annexed to the Epic Customer Claim (defined below).

6.      On December 11, 2008, an action was commenced against Madoff Securities by the Securities & Exchange Commission in the United States District Court for the Southern District of New York.  On December 15, 2008, this liquidation proceeding was commenced pursuant to the SIPA.  *See* Order, Securities and Exchange Commission v. Madoff, No. 08-

10791 (S.D.N.Y. Dec. 15, 2008) (ordering relief under SIPA and transferring proceeding to the United States Bankruptcy Court for the Southern District of New York).  Irving Picard was appointed Trustee ("Trustee"), charged, *inter alia*, with overseeing the liquidation of Madoff and processing customer claims for money pursuant to SIPA.  *Id.*; 15 U.S.C. § 78fff-1(a).

7.    On December 23, 2008, the Court issued an Order directing the Trustee to disseminate notice and claim forms to Madoff customers and setting forth claim-filing deadlines.  *See* Order [Dkt. No. 12].  The December 23, 2008 Order further provided that, to the extent the Madoff Trustee disagrees with the amount set forth on a customer claim form, the Madoff Trustee "shall notify such claimant by mail of their determination that the claim is disallowed, in whole or in part, and the reason therefor . . . "  *See* Order at 6 [Dkt. No. 12].

8.    On or about June 16, 2009, Epic timely filed a claim for the Epic Customer Account for securities (the "Epic Customer Claim") based on the November 30, 2008 Final Madoff Statement.

9.    On or about June 16, 2009, each of the Economic Interest Holders also timely filed claims for their Madoff Securities account held in Epic.  On November 19, 2010, the Trustee sent determination letters rejecting the claims of the Economic Interest Holders, on the grounds that he, she or it did not have a Madoff Securities account and it was not a customer of Madoff Securities under SIPA.  Although there are significant differences between Epic and other funds involved, in April 2015, based on decisions of the Bankruptcy Court disallowing claims of individual depositors in similar alternative vehicles, the Economic Interest Holders consented to the disallowance of their claims.

10.    On or about November 30, 2010, the Trustee brought an adversary proceeding against Epic (Adv. No 10-04466 (SMB)) seeking to avoid a transfer made on September 29, 2008 as a preferential transfer.  In its answer, among other defenses, Epic challenged the

calculation of two inter account deposits. The adversary proceeding was dismissed by stipulated order in July 2015 based application of section 546(e) of the Bankruptcy Code to the Trustee's preference claims.

11.     On or about November 2, 2015, the Trustee sent Epic the Determination Letter rejecting the Epic Customer Claim as filed and stating that Epic is entitled to an allowed claim of only $2,825,000 because no securities were purchased for the Epic Customer Account.

## GROUNDS FOR OBJECTION

### I.     The Trustee's Calculation of the Allowed Claim is Legally Improper.

12.     The Trustee reviewed and determined thousands of customer claims filed against Madoff Securities. He calculated each customer's net equity by netting the customer's total deposits against the total withdrawals over the entire history of the account (the "Net Investment Method"). Where a customer's cash deposits included transfers from a separate Madoff Securities account, however, the Trustee unilaterally reduced the sum of those deposits based on the net equity within the transferor's account (the "Inter-Account Write-Downs"). The Trustee did not attempt to formally avoid the obligations to the transferee customer under Section 548(a)(1) of the Bankruptcy Code. Instead, he simply reduced (or wrote off entirely) the value of the cash transfers—regardless of whether the transfer occurred one year or twenty before the filing of the liquidation proceeding.

13.     If the Trustee wants to unwind recorded inter-account transfers, he must proceed in avoidance (either to avoid the transfer to the receiving customer as a subsequent transferee or—if he can—avoid the obligation Madoff Securities had to the receiving customer under state law). The Inter-Account Write-Downs are plainly an attempt to circumvent this process and its limitations, and should not be sanctioned. SIPA provides that the Trustee can only avoid a transfer "if and to the extent that such transfer is voidable or void under the provisions of Title

11" of the Bankruptcy Code. 15 U.S.C. § 78fff-2(c)(3). Thus, whether or not the Trustee can avoid those transfers is governed exclusively by the Bankruptcy Code, not the Trustee's creative accounting methods.

14.    In response to claimants' objections to his Inter-Account Write-Downs, the Trustee filed a motion in the bankruptcy court "seeking entry of an order affirming the application of the Net Investment Method . . . to transfers between [Madoff Securities] customer accounts." The Trustee argued that the Inter-Account Write-Downs merely "adjusted the transfers out of the transferor account to reflect [only] the amount of principal actually available in the account." The Trustee did not directly dispute that the inter-account transfers between separate customer accounts in fact occurred and that they were recorded on the Madoff Securities' books and records as transfers of cash. The Court granted the Trustee's motion and the issue is currently on appeal.

15.    Epic is one of the parties that has argued to the United States District Court on appeal that the Trustee's treatment of inter-account transfers in computing SIPA customer claims violates the statute's plain language. To the extent that the Trustee disregards a transfer, he must follow the process set forth in the Bankruptcy Code for avoidance, subject to its limitations.

16.    Under SIPA, the Trustee is responsible for determining the net equity claims of customers who seek reimbursement from the estate. 15 U.S.C. § 78fff-2(b). The term "customer" is statutorily defined, and includes "any person . . . who has a claim on account of securities received, acquired or held by the debtor," including any person who "deposit[s] cash with the debtor for the purpose of purchasing securities[.]" 15 U.S.C. § 78lll(2). For net equity calculations, SIPA expressly provides that "accounts held by a customer in separate capacities

shall be deemed to be accounts of separate customers." 15 U.S.C. § 78lll(11) (defining "net equity").

17.      Beyond the calculation of net equity and verification of customer claims, a SIPA trustee is also "vested with the same powers and title with respect to the debtor and the property of the debtor . . . as a trustee in a case under Title 11[, the Bankruptcy Code]." 15 U.S.C. §§ 78fff–1(a). vAs relevant here, SIPA borrows the Bankruptcy Code's avoidance powers and limits a SIPA trustee to avoidance of transfers "if and to the extent that such transfer is voidable or void under the provisions of Title 11." Id. § 78fff-2(c)(3). Thus, a SIPA trustee's powers— like those of a bankruptcy trustee—are statutorily limited.

18.      Moreover, SIPA requires the Trustee to include "the sum which would have been owed by the debtor" to his customer if the debtor had liquidated. 15 U.S.C. § 78lll(11). State law governs what Madoff Securities owed to its customers, and provides that Madoff Securities' customers had a legal right to withdraw the full face-value of any inter-account transfer received in their accounts. Because Madoff Securities owed the full face-value of those inter-account transfers, SIPA bars the Trustee from discounting them through his Inter-Account Write-Downs.

19.      Finally, the Trustee has a statutory duty to satisfy the customer net equity claims that are ascertainable from the debtor's "books and records." 15 U.S.C. §78fff-2(b). Likewise a "customer" includes "any person who had deposited cash with the debtor for the purpose of purchasing securities." 15 U.S.C. § 78lll(2)(B). The Trustee concedes that Epic was a  customer and that Madoff Securities' books and records show that these inter-account transfers occurred and were recorded as cash deposits. SIPA bars the Trustee from simply disregarding these transactions.

20.     For these reasons, the Trustee should give full credit to the inter account transfers.  The Epic Customer Claim should be allowed in the amount of $7,325,000, which is the sum of deposits totaling $12,425,000 less withdrawals of $5,100,000.

## II.     The Trustee's Calculation of the Allowed Claim is Factually Incorrect.

21.     The Trustee's calculation of Epic's allowed claim is based upon the complete disallowance of an initial transfer from Lehrer Joint Venture Account in the amount of $2,000,000 on December 31, 1999 and complete disallowance of a transfer on September 26, 2008 from the same account in the amount of $2,500,000 and deduction of $400,000 from the Epic Customer Account for a transfer to the Lehrer Joint Venture Account 1L001330 on September 29, 2008.  However, even assuming the Trustee's method of reducing the aggregate deposits by aggregate withdrawals applies in the case of an inter account transfer, the disallowance and deductions are in error.

22.     According to the Stein Declaration, the initial deposit represents the withdrawal of three individual accounts held in the Lehrer Joint Venture Account and redeposit of at least two positive balances into the new Epic Customer Account.  See Stein Decl. ¶ 6.  Eric Stein and Sharon Stein deposited $290,000 and $240,000, respectively into the Lehrer Joint Venture Account and made no withdrawals until the withdrawal for deposit into their accounts in Epic. Stein Dec.¶ 6.  Accordingly, using the Trustee's methodology for calculating inter account transfers (money in versus money out), the initial deposit should have, at a minimum, a credit of $530,000.

23.     The second transfer of $2,500,000 from account 1L001330 represents a mistake of Madoff Securities.  The withdrawal request was for only $2,100,000.  See request of Elaine Stein Roberts, as nominee for a separate account in the Lehrer Joint Venture Account. Stein Dec. ¶ 7.  Madoff Securities transferred $2,500,000 in error.  To correct the mistake Epic

returned promptly $400,000 to Lehrer Joint Venture Account. The transaction is recorded by the Trustee as debit to Epic's claim. Accordingly, Epic lost both the credit for a $2,500,000 deposit, and also $400,000 of its own equity. Stein Dec. ¶ 7. The Trustee's records should reflect that transaction was to correct an error and should not be treated as a double charge against Epic's claim. Moreover, the Trustee should be required to prove that the transactions are completely as listed by furnishing the appropriate records to Epic.

24. Epic has not received any distributions from the Madoff Securities' estate, notwithstanding the fact that it has always had a positive account balance. See Stein Dec. ¶ 8.

## RELIEF REQUESTED

For the reasons stated herein, the Epic Customer Claim should be allowed in its entirety in the amount of $7,325,000. Nothing in this Objection should be construed as a waiver of Epic's right to collect $2,825,000 set forth in the Determination Letter as the minimum distribution from the Madoff Securities' bankruptcy estate while this dispute is being resolved.

Dated: November 24, 2015                    DENTONS US LLP

By:   */s/ Carole Neville*
      Carole Neville
      1221 Avenue of the Americas
      New York, New York 10020
      Telephone: (212) 768-6700
      Facsimile: (212) 768-6800

      *Attorneys for Epic Ventures LLC*

DENTONS US LLP
Carole Neville
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 768-6700
Facsimile: (212) 768-6800
carole.neville@dentons.com

*Attorneys for Epic Ventures LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br>Defendant. | Adv. Pro. No. 08-01789 (SMB)<br><br>SIPA Liquidation |

**DECLARATION OF ERIC P. STEIN, MANAGING M EMBER**
**OF EPIC VENTURES LLC IN SUPPORT OF OBJECTION TO TRUSTEE'S**
**DETERMINATION OF CLAIM**

I, Eric P. Stein, Managing Member of Epic Ventures, LLC ("Epic") declare as follows:

1.      I am the sole Managing Member of Epic.  I make this declaration in support of Epic's Objection to the Trustee's determination of the Epic Customer Claim, as defined in the objection and as set forth in the Determination Letter attached hereto as Exhibit A.

2.      Unless otherwise stated, I heave personal knowledge of the facts set forth herein and if called as a witness, I could and would testify competently thereto.

3.      Epic was formed in or about October 1999, after my discussion with Bernard Madoff ("Madoff") and with his express approval, as a vehicle to aggregate individual accounts that were less than Madoff's investment minimum.  The common feature of the accounts in Epic

was the investment in Madoff Securities.  The accounts in Epic were held by depositors in different capacities, including, without limitation, IRAs, trusts, and personal accounts.

4.      I maintained each deposit as a deposit for a separate account in Epic (the "Epic Individual Accounts").  Each depositor, called an Economic Interest Holder, held only an economic interest in Epic, which gave the depositor solely the right to net gains, losses and distributions, if any, on the investment in Madoff Securities.  None of the Economic Interest Holders of Epic were members of the limited liability company.  Each investor made his, her or its own contribution and distribution decisions.

5.      On or about December 31, 1999, on behalf of these individuals and entities, I opened an account with Bernard L. Madoff Investment Securities LLC ("Madoff Securities") (Account No.1E0158) (the "Epic Customer Account") with a transfer from another account, Account No. 1L001330 (the "Lehrer Joint Venture Account"), held in Madoff Securities for certain customers, including individuals who would become depositors in Epic.  The funds were transferred to the Epic Customer Account so that each individual or entity could have a better ability to manage its own money.

6.      The initial deposit represents the withdrawal of three individual accounts held in the Lehrer Joint Venture Account and redeposit of at least two positive balances into the new Epic Customer Account.   Sharon Stein and I deposited $240,000 and $290,000, respectively, into our accounts in the Lehrer Joint Venture Account and made no withdrawals until the withdrawal for deposit into our individual accounts in Epic. Accordingly, using the Trustee's methodology for calculating inter account transfers (money in versus money out), the initial deposit into Epic should reflect, at a minimum, a credit of $530,000 representing principal.  The Trustee has disallowed the entirety of that initial deposit.

7.    The Trustee has also fully deducted the second transfer of $2,500,000 from the Lehrer Joint Venture Account.  This transfer from the Lehrer Joint Venture Account represents a mistake of Madoff Securities.  The withdrawal request was for only $2,100,000.  In response to the direction from Elaine Stein Roberts as nominee of a separate account within the Lehrer Joint Venture Account for $2,100,000, a copy of which is attached as Exhibit B hereto, conveyed to Madoff Securities, Madoff Securities transferred $2,500,000 in error.  To correct the mistake I promptly returned $400,000 to Account 1L001330.   This transaction is recorded by the Trustee as debit of principal to Epic's claim.   Accordingly, Epic lost both the credit for a $2,100,000 or $2,500,000 deposit, and also $400,000 of its own equity.  I believe that the request to redeposit $400,000 was accompanied by an explanation of the error.  The Trustee's records should reflect that transaction was to correct an error and should not be treated as a double charge against Epic's claim.   Epic Customer Claim should not be reduced by $400,000.

8.    Because of litigation against Epic for recovery of an alleged preferential transfer and the Trustee's refusal to address the claim until now, Epic has not received any distributions from the Madoff Securities' estate, notwithstanding the fact that it has always had a positive account balance.

Executed this 24 day of November 2015 under pains and penalties of perjury.


　　__/s/ Eric P. Stein_____
　　Eric P. Stein, Managing Member,
　　Epic Ventures LLC

## EXHIBIT A

**(Determination Letter)**

**BERNARD L. MADOFF INVESTMENT SECURITIES LLC**

In Liquidation

**DECEMBER 11, 2008**[1]



**NOTICE OF TRUSTEE'S DETERMINATION OF CLAIM**

November 2, 2015

Epic Ventures LLC
c/o Eric P. Stein
P.O. Box 880287
Boca Raton, Florida 33488

Dear Epic Ventures LLC:

**PLEASE READ THIS NOTICE CAREFULLY.**

The liquidation of the business of BERNARD L. MADOFF INVESTMENT SECURITIES LLC ("BLMIS") is being conducted by Irving H. Picard, Trustee under the Securities Investor Protection Act, 15 U.S.C. § 78aaa et seq. ("SIPA"), pursuant to an order entered on December 15, 2008 by the United States District Court for the Southern District of New York.

The Trustee has made the following determination regarding your claim on BLMIS Account No. 1E0158, designated as Claim No. 013379:

Your claim for securities is **DENIED**. No securities were ever purchased for your account.

Your claim is **ALLOWED** for $2,825,000.00, which was the balance in your BLMIS Account on the Filing Date based on the amount of money you deposited with BLMIS for the purchase of securities, less subsequent withdrawals, as outlined in Table 1 attached hereto.

Your **ALLOWED CLAIM** of $2,825,000.00 will be satisfied in the following manner:

---

[1] Section 78lll(7)(B) of SIPA states that the filing date is "the date on which an application for a protective decree is filed under 78eee(a)(3)," except where the debtor is the subject of a proceeding pending before a United States court "in which a receiver, trustee, or liquidator for such debtor has been appointed and such proceeding was commenced before the date on which such application was filed, the term 'filing date' means the date on which such proceeding was commenced." Section 78lll(7)(B). Thus, even though the Application for a protective decree was filed on December 15, 2008, the Filing Date in this action is on December 11, 2008.

300000761.5

The enclosed **PARTIAL ASSIGNMENT AND RELEASE** must be executed, notarized and returned in the envelope provided herewith. Upon receipt of the executed and notarized **PARTIAL ASSIGNMENT AND RELEASE**, the Trustee will make partially satisfy your **ALLOWED CLAIM** by sending you a check in the amount of $500,000.00, with the funds being advanced by Securities Investor Protection Corporation pursuant to section 78fff-3(a)(1) of SIPA. At this time, you are entitled to $1,378,656.50 (based on 48.802% of your allowed claim) for catch-up distributions the Trustee has previously made. You will also be entitled to additional distributions, if any are made by the Trustee.

**PLEASE TAKE NOTICE:** You did not previously receive a determination letter because your claim was temporarily disallowed pursuant to Bankruptcy Code Section 502(d) in connection with an adversary proceeding pending against you. As a result of the dismissal of the adversary proceeding against you, your claim is now being determined pursuant to this Notice of Trustee's Determination of Claim.

**PLEASE TAKE NOTICE:** If you disagree with this determination and desire a hearing before Bankruptcy Judge Stuart M. Bernstein, you **MUST** file your written opposition, setting forth the grounds for your disagreement, referencing Bankruptcy Case No. 08-1789 (SMB) and attaching copies of any documents in support of your position, with the United States Bankruptcy Court **and** the Trustee within **THIRTY DAYS** after November 2, 2015, the date on which the Trustee mailed this notice.

**PLEASE TAKE FURTHER NOTICE:** If you do not properly and timely file a written opposition, the Trustee's determination with respect to your claim will be deemed confirmed by the Court and binding on you.

**PLEASE TAKE FURTHER NOTICE:** If you properly and timely file a written opposition, a hearing date for this controversy will be obtained by the Trustee and you will be notified of that hearing date. Your failure to appear personally or through counsel at such hearing will result in the Trustee's determination with respect to your claim being confirmed by the Court and binding on you.

**PLEASE TAKE FURTHER NOTICE:** You must mail your opposition, if any, in accordance with the above procedure, to each of the following addresses:

Clerk of the United States Bankruptcy Court for
the Southern District of New York
One Bowling Green
New York, New York 10004

and

Irving H. Picard, Trustee
c/o Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111

_____
Irving H. Picard

Trustee for the Liquidation of the Business of
Bernard L. Madoff Investment Securities LLC

cc:    Carole Neville, Esq.
       Dentons
       1221 Avenue of the Americas
       New York, New York 10020

| | | Table | |
| :-- | :--: | :--: | :--: |
| | | DEPOSITS | |
| **DATE** | **TRANSACTION DESCRIPTION** | **AMOUNT** | **ADJUSTED AMOUNT** |
| 12/31/1999 | TRANS FROM 1L001330 | $2,000,000.00 | $0.00 |
| 6/2/2000 | CHECK WIRE | $550,000.00 | $550,000.00 |
| 10/2/2001 | CHECK WIRE | $1,250,000.00 | $1,250,000.00 |
| 1/3/2002 | CHECK WIRE | $700,000.00 | $700,000.00 |
| 1/6/2003 | CHECK WIRE | $3,925,000.00 | $3,925,000.00 |
| 4/2/2004 | CHECK WIRE | $400,000.00 | $400,000.00 |
| 4/1/2005 | CHECK WIRE | $425,000.00 | $425,000.00 |
| 1/8/2007 | CHECK WIRE | $300,000.00 | $300,000.00 |
| 7/2/2008 | CHECK WIRE | $375,000.00 | $375,000.00 |
| 9/26/2008 | TRANS FROM 1L001330 | $2,500,000.00 | $0.00 |
| **Total Deposits:** | | $12,425,000.00 | $7,925,000.00 |
| | | | |
| | | WITHDRAWALS | |
| **DATE** | **TRANSACTION DESCRIPTION** | **AMOUNT** | **ADJUSTED AMOUNT** |
| 12/28/2000 | CHECK WIRE | ($750,000.00) | ($750,000.00) |
| 7/1/2002 | CHECK WIRE | ($750,000.00) | ($750,000.00) |
| 4/4/2006 | CHECK WIRE | ($1,200,000.00) | ($1,200,000.00) |
| 1/5/2007 | CHECK WIRE | ($500,000.00) | ($500,000.00) |
| 10/2/2007 | CHECK WIRE | ($500,000.00) | ($500,000.00) |
| 7/1/2008 | CHECK WIRE | ($500,000.00) | ($500,000.00) |
| 9/29/2008 | TRANS TO 1L001330 | ($400,000.00) | ($400,000.00) |
| 9/29/2008 | CHECK WIRE | ($500,000.00) | ($500,000.00) |
| **Total Withdrawals:** | | ($5,100,000.00) | ($5,100,000.00) |
| | | | |
| **Total deposits less withdrawals:** | | $7,325,000.00 | $2,825,000.00 |

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**



SECURITIES INVESTOR PROTECTION
CORPORATION,

      Plaintiff-Applicant,

      v.

BERNARD L. MADOFF INVESTMENT
SECURITIES LLC,

      Defendant.

Adv. Pro. No. 08-01789-SMB

SIPA Liquidation

## PARTIAL ASSIGNMENT AND RELEASE

**KNOW ALL MEN BY THESE PRESENTS,** that Epic Ventures LLC, located at c/o

Eric P. Stein, P.O. Box 880287, Boca Raton, Florida 33488 (hereinafter referred to as the

"Assignor") in consideration of the payment of $500,000.00 to satisfy in part its claim for

customer protection (the "Customer Claim", having been designated Claim #013379) filed in the

liquidation proceeding of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the

Securities Investor Protection Act, 15 U.S.C. §78aaa et seq. ("SIPA") (see §§78fff-2(b), 78fff-

2(d), and §78fff-3(a)(1) of SIPA), does for itself hereby assign, transfer and set over to Irving H.

Picard as SIPA Trustee (the "SIPA Trustee") for the liquidation of BLMIS (see §78fff-2(b) of

SIPA), and the Securities Investor Protection Corporation ("SIPC"), as subrogee to the extent of

its cash advances to the SIPA Trustee for the satisfaction of the aforementioned Customer Claim

(see §78fff-3(a)(1) of SIPA), any and all rights, including causes of action or claims, that

Assignor now may have against BLMIS and/or any third party arising out of or relating to any

fraudulent or illegal activity with respect to Assignor's BLMIS account (Account No. 1E0158,

the "BLMIS Account"), which gave rise to the allowed Customer Claim for securities filed by

300000760

Assignor against BLMIS.  Such assignment is only to the extent that Assignor has received satisfaction of the Customer Claim as set forth above.

Further, Assignor has not previously compromised or assigned any claim, cause of action or other right against BLMIS, its principals or agents or any third party arising out of or related to any fraudulent or illegal activity giving rise to the Customer Claim.

Upon reasonable request of the SIPA Trustee or SIPC, Assignor agrees to cooperate with the SIPA Trustee or SIPC in connection with any efforts of either to recover from the principals or agents of BLMIS or anyone else for amounts advanced by SIPC or paid by the SIPA Trustee to satisfy in part Assignor's Customer Claim in this SIPA liquidation proceeding.  Such efforts to recover by the SIPA Trustee or SIPC, either to demand or pursue or to prosecute or settle any collection effort, action or proceeding therefore, shall be at the sole cost of the SIPA Trustee or SIPC.

Effective immediately and without further action, contingent only upon Assignor's receipt from the SIPA Trustee or his agent of a check in the amount of $500,000.00 as set forth in the SIPA Trustee's Notice of Determination of the Customer Claim dated November 2, 2015 (the "Trustee's Determination"), and upon receipt by the SIPA Trustee of this executed and notarized Partial Assignment and Release, the Assignor does for itself, and for its executors, administrators, heirs and assigns hereby remise, release and forever discharge the SIPA Trustee and SIPC, as subrogee to the extent of its cash advances for the satisfaction of the Customer Claim, and, as the case may be, their officers, directors, professionals, employees, agents, successors and assigns, of and from any and all claims arising out of or relating to the Assignor's BLMIS Account, the Customer Claim filed with the SIPA Trustee as protected by the provisions of SIPA, and any and all circumstances giving rise to said Customer Claim which the Assignor

300000760                                                          2

now has, or hereafter may have, for or by any reason, cause, matter or thing whatsoever from the beginning of the world to the date of the execution of this Partial Assignment and Release, only to the extent that the SIPA Trustee and/or SIPC has paid monies to the Assignor to satisfy Assignor's Customer Claim.

Assignor acknowledges the sufficiency of the consideration to be received in accordance with the SIPA Trustee's Determination and under this Partial Assignment and Release.

The undersigned acknowledges that he is authorized to execute this Partial Assignment and Release on behalf of Epic Ventures LLC.

**IN WITNESS WHEREOF,** the undersigned has on this day set forth below duly executed this Partial Assignment of Assignor's Customer Claim and Release, intending to be legally bound hereby.

**EPIC VENTURES LLC**

By: _____
     Eric Stein

Sworn and subscribed before me this
_____ day of _____, 2015.


_____
    Notary Public

## **EXHIBIT B**

**(Withdrawal Request)**

September 25, 2008

To:    Mr. Stanley Lehrer
       Mr. Stuart Stein

From: Elaine Stein Roberts

Re:    Withdrawal from Joint Venture account

Please transfer $2,100,000 from the Elaine Stein Roberts nominee account within the
Lehrer-Stein Joint Venture account (1-L0013-3) to the account of Epic Ventures LLC (1-
E0158-3) both at Bernard Madoff Securites.

If you have any questions or concerns, please don't hesitate to call me at 413-644-0105 or
Eric Stein at 561-338-3363.

Thank you for expediting this request for the end of September "window" and I apologize
for the short notice.

Many thanks and warm regards,

Elaine Stein Roberts

## CERTIFICATE OF SERVICE

I, Carole Neville, hereby certify that on November 24, 2015, I caused a true and correct copy of the foregoing **Objection to Trustee's Determination of Claim** on behalf of Epic Ventures LLC and **Declaration of Eric P. Stein** to be filed electronically with the Court and served upon the parties in this action who receive electronic service through CM/ECF, and served via electronic mail and U.S. First Class Mail upon:

> David J. Sheehan, Esq.
> Baker & Hostetler LLP
> 45 Rockefeller Plaza
> New York, NY 10111

Dated: November 24, 2015

 _/s/ Carole Neville_
Carole Neville