# **EXHIBIT 9**

COPY NO.: _____
NAME: _____

February 1996

PROSPECTUS

ASCOT FUND LIMITED

500,000 Redeemable Participating Preference Shares

Issued in Series

      Ascot Fund Limited (the "Fund") is offering its Redeemable Participating Preference Shares (the "Participating Shares") to Qualified Purchasers (as defined herein) at an offering price of $1,000 per share in minimum denominations of $500,000, and integral multiples of $1,000 for investments above such amount. The Participating Shares will be offered in series. Each subscriber of Participating Shares will be issued a different series. Additional subscriptions of Participating Shares by the same person will also be issued in a different series.

      The Fund is incorporated in the Cayman Islands and is formed for the purpose of carrying on the business of an open-ended investment company. The Fund engages primarily in the practice of index arbitrage, convertible arbitrage and options arbitrage, in which individual or baskets of securities are purchased and/or sold against related securities such as index options or individual stock options. These strategies are used to take advantage of price disparities among related securities. The Fund may also make investments in private debt claims and publicly traded securities of bankrupt and distressed companies and in risk arbitrage, as well as make indirect investments, including investments in mutual funds, private investment partnerships, closed end funds and other pooled investment vehicles which engage in similar investment strategies (collectively, "Other Investment Entities"). The Fund may on occasion itself initiate or actively participate in acquisition or restructuring transactions or in proxy contests. The Fund also may invest in the securities of corporations believed to be fundamentally undervalued. The Fund may invest in restricted securities.

      **AN INVESTMENT IN THE FUND INVOLVES A HIGH DEGREE OF RISK. SEE "RISK FACTORS."**

      **THE PARTICIPATING SHARES HAVE NOT BEEN REGISTERED UNDER THE UNITED STATES SECURITIES ACT OF 1933 AND ACCORDINGLY ARE NOT BEING OFFERED AND MAY NOT BE SOLD IN THE UNITED STATES**

CONFIDENTIAL

CONFIDENTIAL

GCC-NYAG 0027832

BS00306056

OR ITS TERRITORIES OR POSSESSIONS OR TO NATIONALS OR RESIDENTS THEREOF. THE PARTICIPATING SHARES MAY NOT BE OFFERED TO THE PUBLIC IN THE CAYMAN ISLANDS.

NO PERSON IS AUTHORIZED TO GIVE ANY INFORMATION OR TO MAKE ANY REPRESENTATIONS OTHER THAN AS PROVIDED IN THIS PROSPECTUS IN CONNECTION WITH THE OFFER CONTAINED IN THIS PROSPECTUS, AND IF GIVEN OR MADE, SUCH INFORMATION OR REPRESENTATIONS MUST NOT BE RELIED UPON AS HAVING BEEN AUTHORIZED BY THE FUND. THIS PROSPECTUS DOES NOT CONSTITUTE AN OFFER OR SOLICITATION TO ANYONE IN ANY JURISDICTION IN WHICH SUCH OFFER OR SOLICITATION IS NOT AUTHORIZED OR TO ANY PERSON TO WHOM IT IS UNLAWFUL TO MAKE SUCH OFFER OR SOLICITATION, AND MAY BE USED ONLY IN CONNECTION WITH THE OFFERING OF PARTICIPATING SHARES AS CONTEMPLATED HEREIN. THIS PROSPECTUS CONSTITUTES AN OFFER ONLY TO THE PERSON WHOSE NAME APPEARS ON THE FIRST PAGE HEREOF.

NEITHER THE DELIVERY OF THIS PROSPECTUS NOR THE ISSUE OF PARTICIPATING SHARES SHALL IMPLY THAT THERE HAS BEEN NO CHANGE IN THE AFFAIRS OF THE FUND SINCE THE DATE OF THIS PROSPECTUS AND NO OTHER REPRESENTATION CONCERNING THEM SHALL BE DEEMED TO HAVE BEEN MADE OR AUTHORIZED BY THE FUND OR OTHERWISE ON ITS BEHALF.

PRIOR TO THE ACQUISITION BY ANY PROSPECTIVE INVESTOR OF ANY PARTICIPATING SHARE BEING OFFERED HEREBY, SUCH PROSPECTIVE INVESTOR AND/OR HIS OR HER REPRESENTATIVES, IF ANY, WILL HAVE AN OPPORTUNITY TO ASK QUESTIONS OF, AND RECEIVE ANSWERS FROM, REPRESENTATIVES OF THE FUND AND THE FUND'S INVESTMENT ADVISOR CONCERNING THE TERMS AND CONDITIONS OF THIS OFFERING AND TO OBTAIN FROM THEM ANY ADDITIONAL INFORMATION NECESSARY TO VERIFY THE ACCURACY OF INFORMATION CONTAINED IN THIS PROSPECTUS, TO THE EXTENT THAT THEY POSSESS SUCH INFORMATION OR CAN ACQUIRE IT WITHOUT UNREASONABLE EFFORT OR EXPENSE.

ANY REPRODUCTION OR DISTRIBUTION OF THIS PROSPECTUS, IN WHOLE OR IN PART, OR THE DISCLOSURE OF ANY OF ITS CONTENTS, OTHER THAN TO THE PROSPECTIVE INVESTOR'S FINANCIAL OR LEGAL COUNSEL MAY VIOLATE APPLICABLE SECURITIES LAWS AND IS PROHIBITED WITHOUT THE EXPRESS PRIOR WRITTEN CONSENT OF THE FUND'S ADMINISTRATOR. BY ACCEPTING DELIVERY OF THIS PROSPECTUS, THE

CONFIDENTIAL                                                    GCC-NYAG 0027833

CONFIDENTIAL                                                    BS00306057

OFFEREE AGREES TO RETURN IT AND ALL ACCOMPANYING DOCUMENTS PROMPTLY UPON REACHING A DECISION NOT TO MAKE AN INVESTMENT IN THE FUND.

PROSPECTIVE INVESTORS SHOULD READ THIS PROSPECTUS CAREFULLY BEFORE MAKING ANY INVESTMENT DECISIONS REGARDING THE FUND. PROSPECTIVE INVESTORS ARE NOT TO CONSTRUE THE CONTENTS OF THIS PROSPECTUS AS LEGAL, INVESTMENT, TAX OR OTHER ADVICE. PERSONS INTERESTED IN PURCHASING THE PARTICIPATING SHARES OFFERED HEREBY SHOULD INFORM THEMSELVES AS TO THE TAX CONSEQUENCES, FOREIGN EXCHANGE CONTROL REGULATIONS AND OTHER LEGAL REQUIREMENTS IN THEIR OWN COUNTRIES WHICH MAY BE APPLICABLE TO THE PURCHASE, HOLDING, EXCHANGE OR SALE OF SUCH SHARES.

EACH PROSPECTIVE INVESTOR MUST RELY UPON HIS OR HER OWN REPRESENTATIVES, INCLUDING HIS OR HER OWN LEGAL COUNSEL AND ACCOUNTANTS, AS TO LEGAL, ECONOMIC, TAX AND RELATED ASPECTS OF THE INVESTMENT DESCRIBED HEREIN AND AS TO ITS SUITABILITY FOR SUCH INVESTOR.

IN MAKING AN INVESTMENT DECISION INVESTORS MUST RELY ON THEIR OWN EXAMINATION OF THE FUND AND THE TERMS OF THE OFFERING, INCLUDING THE MERITS AND RISKS INVOLVED. THE PARTICIPATING SHARES HAVE NOT BEEN RECOMMENDED BY ANY FEDERAL OR STATE SECURITIES COMMISSION OR REGULATORY AUTHORITY. FURTHERMORE, THE FOREGOING AUTHORITIES HAVE NOT CONFIRMED THE ACCURACY OR DETERMINED THE ADEQUACY OF THIS DOCUMENT. ANY REPRESENTATION TO THE CONTRARY IS A CRIMINAL OFFENSE. THE PARTICIPATING SHARES ARE SUBJECT TO RESTRICTIONS ON TRANSFERABILITY AND RESALE AND MAY NOT BE TRANSFERRED OR RESOLD EXCEPT AS PERMITTED UNDER THE SECURITIES ACT OF 1933, AS AMENDED, AND THE APPLICABLE STATE SECURITIES LAWS, PURSUANT TO REGISTRATION OR EXEMPTION THEREFROM. INVESTORS SHOULD BE AWARE THAT THEY WILL BE REQUIRED TO BEAR THE FINANCIAL RISKS FOR THIS INVESTMENT FOR AN INDEFINITE PERIOD OF TIME.

The following is a brief description of the Fund and of the Participating Shares. The descriptions herein do not purport to be complete and are qualified in their entirety by reference to the terms of the Articles of Association of the Fund (the "Articles") and the agreements described below which the Fund has entered into with respect to the sale of the Participating Shares. A copy of the Articles is available upon request and will be provided to

3

CONFIDENTIAL

CONFIDENTIAL

GCC-NYAG 0027834

BS00306058

each prospective investor prior to the execution by such investor of a subscription application. All expressions of dollars ($) in this Prospectus relate to United States currency.

## THE FUND

The Fund was incorporated in the Cayman Islands on February 10, 1992 as an exempted company under the Cayman Islands Companies Law (Revised). The Fund commenced operations on February 20, 1992 and has a fiscal year ending December 31. The Articles provide for the Fund to undertake business as a corporate open-ended investment fund.

Substantially all of the assets of the Fund are derived from the allotment and issue of Participating Shares and from borrowings secured by Fund assets. Holders of Participating Shares share substantially all of the net appreciation in value of the Fund's assets. See "Participating Shares" below. Participating Shares are issued in series and are non-voting. All of the voting shares of the Fund are owned by Ariel Management Corporation, the Investment Advisor to the Fund. See "Investment Advice" below. Such voting shares do not entitle the Investment Advisor to participate in the net appreciation of the Fund. A portion of the Investment Advisor's compensation, however, is in the form of a percentage of the annual increase in the Fund's net asset value.

## INVESTMENT POLICY

The general purpose of the Fund is to achieve above average capital appreciation of its assets while seeking to reduce risk where possible. The Fund's investment philosophy is to employ its assets in order to seek out discrepancies between market valuation and intrinsic worth. The Fund engages primarily in the practice of index arbitrage, convertible arbitrage and options arbitrage, in which individual or baskets of securities are purchased and/or sold against related securities such as index options or individual stock options. These strategies are used to take advantage of price disparities among related securities. The Fund also may make investments in private debt claims and publicly traded securities of bankrupt and distressed companies and in risk arbitrage as well as make indirect investments, including investments in Other Entities. The Fund may on occasion itself initiate or actively participate in acquisition or restructuring transactions or in proxy contests. The Fund may invest in the securities of corporations believed to be fundamentally undervalued. The Fund may invest in restricted securities.

The Fund has hired the Investment Advisor to implement the Fund's investment policies and objectives. See "Investment Advice." The Investment Advisor may often employ strategies involving derivative securities like options, futures and convertibles which may present more favorable risk-reward relationships. There can be no assurance that any of the hoped-for benefits of the described Investment Advisor's strategies will be realized. Moreover, the Investment Advisor reserves the right to deviate from the foregoing approach to

4

CONFIDENTIAL

CONFIDENTIAL

GCC-NYAG 0027835

BS00306059

the extent it deems appropriate. Notwithstanding the foregoing, the Fund will not be permitted to trade in commodities and futures, including financial futures, or in options on commodities and futures, unless the Investment Advisor registers as a commodity pool operator under the Commodity Exchange Act or the Fund otherwise would become able to trade under applicable law. The Investment Advisor currently does not intend to register as a commodity pool operator, but reserves the right to so register in the future. If the Investment Advisor registers as a commodity pool operator or if the Fund otherwise becomes eligible to trade commodities and futures, then the Fund shall be permitted to trade in commodities and futures. To the extent that the Fund trades in commodities and futures and related options, the Fund will incur additional risks. Because of the low margin deposits normally required in futures trading, the same risks as those resulting from leverage described below will be particularly present. In addition, due to market and regulatory factors commodities and futures and related options may be less liquid than other types of investments.

When the Fund engages in indirect investments in Other Investment Entities fees, including performance-based fees, may be payable to such pooled vehicles by the Partnership, in addition to the fees payable to the Investment Advisor discussed below. In such cases, the Investment Advisor will retain overall investment responsibility for the portfolio of the Fund (although not the investment decisions of any independent money managers managing Other Investment Entities). Such arrangements are subject to periodic review by the Investment Advisor and are terminable at reasonable intervals in the Investment Advisor's discretion. The Fund may withdraw from or invest in different investment partnerships and terminate or enter into new investment advisory agreements without prior notice to or the consent of the shareholders. See "Risk Factors -- Independent Money Managers".

## RISK FACTORS

## PARTICIPATION BY INVESTORS IN THIS FUND SHOULD BE CONSIDERED A HIGH RISK INVESTMENT

### Fund Risks

*Success Dependent on Investment Advisor.* The success of the Fund depends to a great extent upon Ariel Management Corporation, Investment Advisor to the Fund. The death or incapacity of J. Ezra Merkin, owner of all outstanding shares of said Investment Advisor, would result in the redemption of all outstanding Participating Shares.

*Success Dependent on Investment Advisors of Other Investment Entities.* The success of the Fund is also dependent upon any investment advisors to Other Investment Entities. Although the Investment Advisor will retain overall responsibility for investments in Other Investment Entities, actions or inactions on the part of the investment advisors of any Other Investment Entities may affect the profitability of the Fund.

5

CONFIDENTIAL

CONFIDENTIAL

GCC-NYAG 0027836

BS00306060

<u>Lack of Management and Investment Control by Investors</u>. Holders of Participating Shares will take no part in the management, control or operation of the Fund. The Fund's Articles of Association give the Fund broad authority to expand the Fund's activities within the areas described herein and therein without the consent of the holders of Participating Shares.

<u>Limitations on Redemptions</u>. Participating Shares may be redeemed quarterly as of the last business day of each March, June, September and December upon 30 days' written notice to the Fund. Distribution of cash in respect of all or any part of a holder's redeemed Participating Shares need not be made until 90 days after the last day of such quarter.

<u>Required Redemptions</u>. The Participating Shares of any shareholder may be redeemed by the Board of Directors of the Fund and such shareholder may be required to withdraw from the Fund, as of the last day of any calendar month, if the Board of Directors determines that such termination and withdrawal are in the best interests of the Fund. The Board of Directors shall give 30 days written notice of any such determination to such shareholder.

<u>Business Risks</u>

The principal activity of the Fund will be the practice of index arbitrage, convertible arbitrage and options arbitrage as well as investing in other securities. Because of the inherently speculative nature of these activities, the results of the Fund's activities may be expected to fluctuate from period to period.

<u>Options Transactions</u>. The Fund engages in various types of options transactions, including arbitrage and hedging in options on securities and indexes of securities. This activity is designed to reduce the risks attendant in short-selling and in taking long positions in certain transactions and may involve stock options on a registered option exchange and offsetting transactions in the underlying stock, or offsetting transactions in one or more options for stock. The Fund also may take positions directly or indirectly in options on stock of companies which may, in the judgment of the Investment Advisor, be potential acquisition candidates in merger, exchange offer or cash tender offer transactions. If the potential acquisition candidate does not become the subject of a merger, exchange offer or cash tender offer, the Fund may suffer a loss.

When the Fund purchases an option, it must pay the price of the option and transaction charges to the broker effecting the transaction. If the option is exercised by the Fund, the total cost of exercising the option may be more than the brokerage costs which would have been payable had the underlying security been purchased directly. If the option expires, the Fund will lose the cost of the option.

6

CONFIDENTIAL                                                                                           GCC-NYAG 0027837

CONFIDENTIAL                                                                                           BS00306061

In certain transactions the Fund may not be "hedged" against market fluctuations or, in liquidation situations, the hedge may not accurately value the assets of the company being liquidated. This can result in losses, even if the proposed transaction is consummated.

Arbitrage Transactions. The Fund may purchase securities at prices often only slightly below the anticipated value to be paid or exchanged for such securities in a merger, exchange offer or cash tender offer which the Investment Advisor determines is probable and substantially above the prices at which such securities traded immediately prior to announcement of the merger, exchange offer or cash tender offer. If the proposed transaction appears likely not to be consummated or in fact is not consummated or is delayed, the market price of the security to be tendered or exchanged may be expected to decline sharply, which would result in a loss to the Fund. Moreover, where a security to be issued in a merger or exchange offer has been sold short as a hedge in the expectation that the short position will be covered by delivery of such security when issued, failure of the merger or exchange offer to be consummated may force an arbitrageur to cover his short position in the market at a higher price than his short sale, with a resulting loss.

Offerors in tender or exchange offers customarily reserve the right to cancel such offers in the above circumstances and in a variety of other circumstances, including an insufficient response from shareholders of the target company. Defensive activities of a target company or the actions of regulatory authorities may result in significant delays, during which the Fund's capital will be committed to the transaction and significant interest charges on funds borrowed to finance its arbitrage activities in connection with the transaction may be incurred, and was ultimately defeat an acquisition.

In addition, if the Fund determines that the offer price for a security which is the subject of a tender offer is likely to be increased, either by the original bidder or by another party, the Fund may purchase securities above the offer price; such purchases are subject to a high degree of risk.

Bankruptcy Situations. Investments in debt claims and the securities of companies that have filed for bankruptcy (under U.S. law or the laws of foreign jurisdictions) may be made at various stages in the bankruptcy process based on the Investment Advisor's judgment that there is sufficient profit potential. The Fund may invest in the debt instruments which have been issued by foreign countries or in the debt instruments of defaulted obligors where the instruments are guaranteed by a foreign government. Such investee entities generally are highly leveraged and substantial doubts exist as to whether the entity will be able to service its debt (i.e., pay interest for borrowed money when interest payments are due) or retire its debt upon maturity. In liquidations (both in and out of bankruptcy) and other forms of corporate reorganization, there exists the risk that the reorganization either will be unsuccessful, will be delayed or will result in a distribution of cash or a new security the value of which will be less than the purchase price to the Fund of the security in respect of which

7

CONFIDENTIAL

CONFIDENTIAL

GCC-NYAG 0027838

BS00306062

such distribution is received. These investments are generally illiquid and have a high risk profile.

Other Transactions. The Fund may also make certain purchases of securities as to which no extraordinary corporate transaction has been announced. Such purchases may include securities which the Investment Advisor believes to be undervalued, or where a significant position in the securities of the particular company has been taken by one or more other persons or where other companies in the same or a related industry have been the subject of acquisition attempts. If the Fund purchases securities in anticipation of an acquisition attempt or reorganization, and an acquisition attempt or reorganization does not in fact occur, the Fund may sell the securities at a substantial loss. Further, when securities are purchased in anticipation of an acquisition attempt or reorganization, a substantial period of time may elapse between the Fund's purchase of the securities and the acquisition attempt or reorganization. During this period, a portion of the Fund's funds would be committed to the securities purchased, and the Fund may finance such purchases with borrowed funds on which it will have to pay interest.

Proxy Contests. The Fund may invest in securities of a company which is the subject of a proxy contest in the expectation that new management will be able to improve the company's performance or effect a sale or liquidation of its assets so that the price of the subject company's securities will increase to a price above that paid for the securities by the Fund. If the incumbent management of the subject company is not defeated or if new management is unable to improve the company's performance or sell or liquidate the company, the market price of the securities of the subject company will typically fall to a price below that paid for the securities by the Fund, causing the Fund to suffer a loss. In addition, even upon the successful completion of a proxy contest, the market price of the securities of the subject company may not rise to a price above that paid for the securities by the Fund.

Commodities. The Investment Advisor may decide to register as a commodity pool operator under the Commodity Exchange Act and seek certain exemptive letters thereunder, so as to enable the Fund to trade in commodities and financial futures and related options. Because of the very low margin, deposits normally required in futures trading, the risks resulting from leverage described below are particularly present in such trading. In addition, due to market and regulatory factors, futures may be less liquid then other types of investments.

Short Selling. Where the Fund determines that it is probable that a transaction will not be consummated, the Fund may sell the securities of the target company short, at prices below the announced price for the securities in the transaction. If the transaction (or another transaction, such as a "defensive" merger or a friendly tender offer) is consummated, the Fund may be forced to cover the short position in the market at a higher price than the short sale price, with a resulting loss. There is in theory no limit to the loss which the Fund could incur in covering a short sale.

8

CONFIDENTIAL

CONFIDENTIAL

GCC-NYAG 0027839

BS00306063

<u>Market Risk and Lack of Diversification</u>. Substantial risks are involved in the acquisition or disposition of securities. Securities and their issuers are affected by, among other things: changing supply and demand; federal, state and governmental laws, regulations and enforcement activities; trade, fiscal and monetary programs and policies; and national and international political and economic developments. Given the Fund's relatively small size, with a majority of the Fund's assets expected to be invested in relatively few situations, portfolio diversification may be limited. The Fund's investment plan does not constitute a balanced investment plan. The securities in which the Fund may invest may be regarded as of high risk. Such securities are subject to a number of risk factors, including market volatility, creditworthiness of the issuer, liquidity of the secondary trading market, and availability of market quotations.

<u>Leverage</u>. The Board of Directors of the Fund has authorized the Investment Advisor to borrow funds on the Fund's behalf in order to be able to make additional investments. Consequently, fluctuations in the value of the Fund's portfolio will have a significant effect in relation to the Fund's capital. The risk of loss and the possibility of gain is therefore increased. The amount of borrowings which the Fund may have outstanding at any time may be large in relation to its capital. In addition, the level of interest rates generally, and the rates at which the Fund can borrow in particular, will be an expense of the Fund and therefore affect the operating results of the Fund.

<u>Lending of Portfolio Securities</u>. Each of the Fund and the Other Investment Entities in which the Fund invests may from time to time lend securities from its portfolio to brokers, dealers and financial institutions such as banks and trust companies. The borrower may fail to return the securities involved in such transactions, particularly if such borrower is in financial distress, in which event the Fund may incur a loss.

<u>Portfolio Turnover</u>. The Fund anticipates that its portfolio turnover rate may be very high. Typically, high portfolio turnover results in correspondingly high transaction costs, including brokerage commission expenses.

<u>Independent Money Managers</u>. The Investment Advisor may delegate investment discretion for all or a portion of the assets of the Fund to money managers, other than the Investment Advisor, or make investments with Other Investment Entities. Although the Investment Advisor will exercise reasonable care in selecting such independent money managers or Other Investment Entities and will monitor the results of those money managers and Other Investment Entities, the Investment Advisor may not have custody over the funds invested with the other money managers or with Other Investment Entities. The risk of loss of the funds invested with other money managers or with Other Investment Entities may not be insured by any insurance company, bonding company, governmental agency, or other entity and the Investment Advisor is not liable for any such loss. Independent money managers and managers of Other Investment Entities selected by the Investment Advisor may receive compensation based on the performance of their investments. Performance-based

9

CONFIDENTIAL

CONFIDENTIAL

GCC-NYAG 0027840

BS00306064

compensation usually is calculated on a basis which includes unrealized appreciation of the Fund's assets, and may be greater than if such compensation were based solely on realized gains. Further, a particular independent money manager or manager of an Other Investment Entity may receive incentive compensation in respect of its portfolio for a period even though the Fund's overall portfolio depreciated during such period. The independent money managers and Other Investment Entities will trade wholly independently of one another and may at times hold economically offsetting positions.

Exculpation of the Investment Advisor from Liability

The Investment Advisory Agreement provides that the Investment Advisor will not be liable for, and will be indemnified by the Fund against, any act or omission unless such act or omission constitutes gross negligence, fraud or willful misconduct. As a result, investors in the Fund may be entitled to a more limited right of action against the Investment Advisor than they would otherwise have had absent such a limitation in the Investment Advisory Agreement described herein. (See "Investment Advice," below).

Exculpation of the Administrator from Liability

The administration agreement (the "Administration Agreement") between the Fund and MeesPierson (Cayman) Ltd. (the "Administrator") provides that the Administrator will not be liable for, and will be indemnified by the Fund against, any loss or damage unless such loss or damage is sustained or suffered by reason of the gross negligence, bad faith or willful default of the Administrator. As a result, investors in the Fund may be entitled to a more limited right of action against the Administrator than they would otherwise have had absent such a limitation in the Administration Agreement described herein. (See "Administration," below).

Conflicts of Interest. The Investment Advisor has broad powers to conduct investment and money management activities outside the Fund. These activities, which will include management of one or more other offshore managed funds (the "Managed Funds"), may create conflicts of interest with the Fund with regard to such matters as allocation of opportunities to participate in particular investments. Other accounts affiliated with the Investment Advisor may hold positions opposite to positions maintained on behalf of the Fund. The Fund will obtain no interest in any such outside investments or activities. Neither the Articles of Association nor the Investment Advisory Agreement requires the Investment Advisor, its officers or directors to devote all or any specified portion of their time to managing the Fund's affairs, but only to devote so much of their time to the Fund's affairs as they reasonably believe necessary in good faith. Neither the Articles of Association nor the Investment Advisory Agreement prohibits the Investment Advisor or its affiliates from engaging in any other existing or future business, and the Investment Advisor or its affiliates currently provide and anticipate continuing to provide investment management services to other clients. In addition, the Investment Advisor, its officers or directors may invest for its

10

CONFIDENTIAL

CONFIDENTIAL

GCC-NYAG 0027841

BS00306065

own accounts in various investment opportunities, including in investment partnerships. The Investment Advisor may determine that an investment opportunity in a particular investment partnership is appropriate for a particular account, or for itself, but not for the Fund.

The Investment Advisor will allocate overhead expenses among the Fund and the Managed Funds on a fair basis as determined by the Investment Advisor. These other activities will require a substantial amount of the Investment Advisor's time and effort.

Tax Risks

Each prospective investor should obtain the advice of his own tax advisor concerning the matters discussed in this Prospectus and the effect of an investment in the Fund on his personal tax situation.

Regulatory Risks

The Fund is not registered as a broker-dealer under the federal securities laws and neither the Investment Advisor nor the Fund is registered under United States federal or state securities laws as an investment advisor or investment company. The Investment Advisor intends to effect any required registrations with regulatory authorities; however, the determination whether registration is required in certain cases involves issues which have not been judicially or administratively passed upon and accordingly are not free from doubt. No assurance can be given that the SEC, or, if the issues involved were litigated, a court, may not take a different view on any question concerning registration. If administrative or litigation proceedings are commenced, such proceedings could be time consuming and expensive, and the costs thereof might have to be borne by the Fund. Furthermore, if it is determined that the Investment Advisor or the Fund should have registered under the provisions of the securities laws mentioned above, adverse consequences to the Fund could result, possibly including civil or criminal sanctions, interruption of the business and redemption or the sale of some or all of the Participating Shares.

Other Risks

The potential payment of a percentage of any increase in the Fund's net asset value to the Investment Advisor as an investment advisory fee may create an incentive for the Investment Advisor to cause the Fund to make investments that are riskier or more speculative than would be the case if the investment advisory fee were calculated on a different basis. In addition, since the investment advisory fee is calculated on a basis which includes unrealized appreciation of the Fund's assets, it may be greater than if such allocation was based solely on realized gains. It is possible that the investment advisory fee may be based, in part, on the unrealized appreciation of securities (including securities of other Investment Funds in which the Funds may have invested) for which market quotations are not readily available. The value of such securities will be determined solely by the Investment Advisor. Any valuation

11

CONFIDENTIAL

CONFIDENTIAL

GCC-NYAG 0027842

BS00306066

of such securities will be based on the Investment Advisor's expertise and experience in valuing similar securities and will be reviewed by the Fund's independent auditors in preparing their annual certified audit of the Fund.

The investment advisory fee will be calculated on a series by series basis. The period of time for which particular fee calculations are made may differ from series to series. Thus, it is possible that an investment advisory fee may be earned by the Investment Advisor with respect to a series of shares that would not have been earned had the investment advisory fee been calculated on an aggregate -- and not series by series -- basis.

The Fund may issue in the future Participating Shares for which the investment advisory fee is calculated on a basis different from the method of calculating the investment advisory fee set forth herein.

PAST RESULTS ARE NOT NECESSARILY INDICATIVE OF FUTURE PERFORMANCE. NO ASSURANCE CAN BE MADE THAT PROFITS WILL BE ACHIEVED OR THAT SUBSTANTIAL LOSSES WILL NOT BE INCURRED.

### INVESTMENT ADVICE

The Fund's assets are invested by Ariel Management Corporation (the "Investment Advisor"), a Delaware corporation, pursuant to the terms of an investment advisory agreement between the Investment Advisor and the Fund (the "Investment Advisory Agreement"). All of the outstanding capital stock of the Investment Advisor is owned by J. Ezra Merkin. The Investment Advisory Agreement can be assigned to any entity controlled by J. Ezra Merkin.

J. Ezra Merkin has owned and managed the Investment Advisor since January 1989. Mr. Merkin currently is the Managing and General Partner of Gabriel Capital, L.P. and Ascot Partners, L.P., and was formerly the Managing and General Partner of Ariel Capital, L.P. from January 1, 1989 until December 31, 1991. Prior to that, Mr. Merkin served as a managing partner of Gotham Capital, L.P. from 1985 to 1988. Mr. Merkin was associated with Halcyon Investments from 1982 to 1985 and with the law firm of Milbank, Tweed, Hadley & McCloy from 1979 to 1982. Mr. Merkin was graduated from Columbia College magna cum laude and is a member of Phi Beta Kappa. He is an honors graduate of Harvard Law School. Mr. Merkin served on the faculty of The Benjamin N. Cardozo School of Law from 1981 to 1992.

Under the Investment Advisory Agreement, the Investment Advisor has full discretionary authority to invest the assets of the Fund. The Fund will pay the Investment Advisor or its designee, on a series by series basis, an investment advisory fee as of the last business day of each fiscal year (in the case of Participating Shares held on or redeemed as of the end of such year) or as of the redemption date (in the case of Participating Shares

12

CONFIDENTIAL

CONFIDENTIAL

GCC-NYAG 0027843

BS00306067

redeemed as of any quarterly redemption date). The investment advisory fee is equal to 1% (pro rated for periods of less than a year) of the net asset value of each series of Participating Shares on the last day of each year. The Fund may issue in the future different series of Participating Shares as to which the investment advisory fee is calculated on a different basis.

The Investment Advisor may, in addition to the fee described in the immediately preceding paragraph, earn an additional fee of up to $100,000 per annum at its discretion, without regard to the performance of the Fund.

The Fund will indemnify the Investment Advisor for any losses due to action or inaction that the Investment Advisor reasonably believed to be in the best interests of the Fund, and the Investment Advisor will not be liable to the Fund for such action or inaction. The Investment Advisor may take market positions for the account of other funds or for its own account which are different from or opposite to the Funds's.

## ADMINISTRATION

The Fund is administered pursuant to the terms of the Administration Agreement by the Administrator, a Cayman Islands company duly licensed as a Class "A" Unrestricted Bank and Trust Company pursuant to the provisions of the Banks and Trust Companies Law, 1989. The Fund pays the Administrator an annual fee, subject to negotiated adjustments.

The Administrator maintains the principal office of the Fund in George Town, Grand Cayman, Cayman Islands. All administrative functions of the Fund (other than investment of the Fund's assets by the Investment Advisor pursuant to the Investment Advisory Agreement) are conducted from the Fund's offices in the Cayman Islands.

## DIRECTORS

The sole director of the Fund is MeesPierson Management (Cayman) Limited, an affiliate of the Administrator of the Fund based in the Cayman Islands. The Fund's director sits on the Board of Directors of more than 50 companies.

## BROKERAGE

The Investment Advisor selects brokers to effect transactions for the Fund which receive commissions in connection with the brokerage services, including clearing and settling functions, provided to the Fund. Such brokers will not perform managerial or policy-making functions for the Fund. Clearing and settling services normally include, among other matters, arranging for (i) the receipt and delivery of securities purchased, sold, borrowed and loaned, (ii) the making and receiving of payments therefor, (iii) custody of securities fully paid for or not fully paid for and, therefor, compliance with margin and maintenance requirements,

13

CONFIDENTIAL                                                           GCC-NYAG 0027844

CONFIDENTIAL                                                           BS00306068

(iv) custody of all cash, dividends and exchanges, distributions and rights accruing to the Fund's account, and (v) tendering securities in connection with cash tender offers, exchange offers, mergers or other corporate reorganizations.

## ACCOUNTANTS

The Fund's accountants are BDO Binder.

## VOTING SHARES

The Fund issued 100 founders shares, with a par value of $1.00 per share, to Ariel Management Corporation, the Investment Advisor, shortly after the Fund's incorporation. The founders shares are the only shares issued by the Fund that carry voting rights. Holders of founders shares are not entitled to participate in the appreciation of the Fund's assets but are entitled to a return of par value upon liquidation or dissolution of the Fund.

## THE PARTICIPATING SHARES

The Fund will issue up to 500,000 Participating Shares in series, with a par value of $.01 per share, at an offering price of $1,000 per share in minimum denominations of $500,000 and in integral multiples of $1,000 thereafter, to Qualified Purchasers, as defined in "Qualified Purchasers" below. Participating Shares will be issued in registered form, will be fully paid when issued, are non-voting and will have no preemptive, conversion or exchange rights.

It is anticipated that no dividends will be paid on the Participating Shares. The Fund will retain and reinvest the net income derived from its investments.

The Participating Shares will be offered in series. Shares will be issued to separate subscribers in separate series. Shares issued to the same subscriber but on different days will also be issued in separate series. Upon the issuance of a series of Participating Shares, an account for such series will be created to which shall be credited initially the subscription proceeds of such series and thereafter the pro-rated part of the profits and gains (realized and unrealized) of the Fund and from which shall be debited pro-rated losses, expenses and liabilities of the Fund, including the accrued and unpaid fees owed to the Investment Advisor, and dividends and proceeds of redemption in respect of shares of that series when paid.

The Fund may consolidate different series of shares into one (or more) series of shares based on the net asset value of each such series being consolidated at the time of consolidation.

14

CONFIDENTIAL                                                                                    GCC-NYAG 0027845

CONFIDENTIAL                                                                                    BS00306069

<u>Redemption and Transfer</u>

Participating Shares are transferable, subject to the approval of the Directors, and are similarly redeemable, at the request of the holder thereof, as of the last Business Day (as defined in the Articles) of each quarter during the Fund's fiscal year, which shall be the calendar year (each, a "Redemption Date"). However, in no event may Participating Shares be transferred to a person who is not a Qualified Purchaser, as defined below.

A holder of Participating Shares may redeem his shares, in whole or in part, subject to certain rights of the Fund to delay or limit the right to redeem, by written notice to the Administrator on behalf of the Company given 30 days prior to a Redemption Date. Partial redemptions are permitted so long as a redeeming shareholder, after such redemption, continues to own Participating Shares of one or more series representing an aggregate initial subscription price of at least $500,000. The redemption price of Participating Shares will be based on the per share net asset value of the Fund attributable to the series of Shares of which the redeemed Shares are a part as of the relevant Redemption Date. Net asset value as of a given date is the aggregate value of the Fund's assets over its liabilities as of such date.

All Participating Shares will be redeemed upon the first to occur of the following events: (i) on December 31, 2033, or the next succeeding Business Day; (ii) in the event of the termination of the Investment Advisory Agreement unless a new agreement meeting the requirements of the Articles is in effect; (iii) upon the incapacity or death of Mr. J. Ezra Merkin; (iv) following a determination by the Directors that the Fund should be dissolved; or (v) upon the occurrence of any event causing the dissolution of the Fund under Cayman Islands law. If in the opinion of the Directors of the Fund the holding of Participating Shares by any given holder thereof is unlawful or detrimental to the interests or well-being of the Fund, the Directors may, and if a holder of Participating Shares no longer is a Qualified Purchaser (as described below) the Directors shall, require the redemption of all Participating Shares held by such holder.

## ANNUAL REPORTS

Approximately 30 days after to the end of each quarter, the Fund will provide each holder of Participating Shares an unaudited financial statement for such quarter. In addition, within 120 days of the last day of each fiscal year, the Fund will provide to each shareholder an audited financial statement of the Fund for such fiscal year.

## OPERATING RESULTS

Information concerning the operating results of the Fund is available on request.

15

CONFIDENTIAL

CONFIDENTIAL

GCC-NYAG 0027846

BS00306070

## QUALIFIED PURCHASERS

Participating Shares are being offered to persons who certify on a Subscription Application that they are not U.S. persons. Unless the Investment Advisor determines otherwise, the minimum investment will be $500,000. No minimum amount of capital is required to be raised in order for the offering to be consummated.

## TAXATION IN THE CAYMAN ISLANDS

On the basis of the current legislation of the Cayman Islands, there are no income, profits, capital transfer, capital gains or other similar taxes that would be applicable to the profits or gains of the Fund, and shareholders of the Fund are not subject to any such taxes or any similar taxes in respect of their holdings of Participating Shares.

## TAXATION IN THE UNITED STATES

The following is a discussion of certain U.S. federal income tax considerations for persons to whom such considerations are relevant in purchasing Participating Shares of the Fund. The discussion does not purport to deal with all aspects of federal taxation that may be relevant to particular investors and is for general informational purposes only. The federal income tax consequences that may be applicable to an investor may vary depending on an investor's particular situation. For example, certain investors including insurance companies, financial institutions, broker-dealers, tax-exempt organizations and persons who are not citizens or residents of the United States may be subject to special rules not described below. Prospective investors are advised to consult their own tax advisors regarding the U.S. federal income tax considerations in acquiring, holding and disposing of the Participating Shares, as well as any state, local or foreign tax considerations.

**U.S. Taxation of the Fund.** The Fund expects to conduct its activities in such a manner that, under current law, the Fund will not be engaged in a trade or business within the United States. Similarly, the Fund generally will seek to invest in Other Investment Entities only if such Other Investment Entities do not expect to be engaged in a trade or business within the United States, although the Fund cannot assure that such Other Investment Entities will in fact not be engaged in a trade or business within the United States. Accordingly, and assuming the Fund is not engaged in a U.S. trade or business, either as a result of its own activities or as the result of the activities of any Other Investment Entity that is a partnership for U.S. tax purposes, the Fund will not be required to file U.S. federal income tax returns and will not be subject to U.S. federal income or withholding tax in respect of any capital gains realized by it (except to the extent, if any, that such gains are attributable to investments in securities that constitute U.S. real property interests). However, the Fund will be subject to a 30 percent withholding tax in respect of any dividend income and, depending upon the circumstances, possibly in respect of interest and in respect of payments to the Fund in connection with short sales or loans of securities and similar payments. If the

16

CONFIDENTIAL

CONFIDENTIAL

GCC-NYAG 0027847

BS00306071

Fund or any Other Investment Entity were to be engaged in a trade or business within the United States, the Fund would be subject to U.S. federal income taxation on a net income basis (and to the branch profits tax) in respect of any income that is effectively connected with such trade or business within the United States.

**U.S. Taxation of Foreign Shareholders.** Dividends paid by the Fund, if any, redemptions of Participating Shares by the Fund and sales of Participating Shares by a shareholder generally will not be subject to U.S. income (or withholding) tax in the case of any shareholder which is not a United States citizen or resident or a United States entity, unless such dividends or the gains from such redemptions or sales are effectively connected with a trade or business of the shareholder in the United States or (under certain circumstances) are attributable to an office or other fixed place of business of such shareholder in the United States.

The transfer of Participating shares in the Fund, by way of gift by, or as a result of the death of, an individual shareholder of the Fund who is not a U.S. citizen or resident, will not be subject to U.S. gift or estate taxes.

**U.S. Taxation of U.S. Shareholders.** U.S. persons should be aware that the Fund will constitute a foreign personal holding company ("FPHC"), as well as a "passive foreign investment company" ("PFIC") for U.S. federal income tax purposes. Accordingly, any U.S. person holding Participating Shares (including Participating Shares held indirectly through entities such as a partnership, trust, estate, controlled foreign corporation or foreign personal holding company) could be subject to significant adverse tax consequences.

The foregoing discussion of taxation is for informational purposes only and investors are urged to consult with their own tax advisors respecting the tax consequences of an investment in the Fund, including the tax treatment under the laws of any jurisdiction to which they might be subject.

<u>ADDRESSES</u>

| | |
|---|---|
| The Fund: | Ascot Fund Limited |
| | c/o MeesPierson |
| | (Cayman) Limited |
| | Harbour Drive |
| | Cayside Gallery |
| | 1st Floor |
| | Grand Cayman, Cayman Islands |

17

CONFIDENTIAL

CONFIDENTIAL

GCC-NYAG 0027848

BS00306072

| | |
|---|---|
| The Administrator: | MeesPierson (Cayman) Limited<br>Harbour Drive<br>Cayside Gallery<br>1st Floor<br>Grand Cayman, Cayman Islands<br>Attention: Roger H. Hanson<br>Tel: (809) 949-7942<br>Telecopy: (809) 949-8340 |
| The Investment Advisor: | Ariel Management Corporation<br>450 Park Avenue<br>32nd Floor<br>New York, NY 10022<br>Tel: (212) 838-7200<br>Telecopy: (212) 838-9603 |

18

CONFIDENTIAL

CONFIDENTIAL

GCC-NYAG 0027849

BS00306073