# EXHIBIT 10

COPY NO._____
NAME:_____

ANY REPRODUCTION OR DISTRIBUTION OF THIS MEMORANDUM,
IN WHOLE OR IN PART, OR THE DISCLOSURE OF ANY OF
ITS CONTENTS, MAY VIOLATE APPLICABLE SECURITIES LAWS AND IS
PROHIBITED WITHOUT THE EXPRESS PRIOR WRITTEN CONSENT OF THE
MANAGING PARTNER.

Confidential Offering Memorandum
February 1996

ASCOT PARTNERS, L.P.
450 Park Avenue
32nd Floor
New York, New York 10022

The information contained herein is confidential and is furnished for
informational purposes only.  This Confidential Offering Memorandum does not
constitute an offer to sell limited partnership interests; such an offer can be made only
directly by the Managing Partner.  This Confidential Offering Memorandum supersedes
all earlier disclosure concerning the Partnership.

## CONFIDENTIAL OFFERING MEMORANDUM

### ASCOT PARTNERS, L.P.

#### (a Delaware Limited Partnership)

#### CLASS A LIMITED PARTNERSHIP INTERESTS

THIS CONFIDENTIAL OFFERING MEMORANDUM (THIS "MEMORANDUM") IS INTENDED FOR THE EXCLUSIVE USE OF THE PERSON TO WHICH IT IS ADDRESSED IN CONNECTION WITH THE OFFERING (THE "OFFERING") OF CLASS A LIMITED PARTNERSHIP INTERESTS (THE "INTERESTS") IN ASCOT PARTNERS, L.P., A DELAWARE LIMITED PARTNERSHIP (THE "PARTNERSHIP"), AND CONSTITUTES AN OFFER ONLY TO THE PERSON WHOSE NAME APPEARS ON THE COVER PAGE HEREOF. THE DISSEMINATION, DISTRIBUTION, REPRODUCTION OR OTHER USE OF ALL OR ANY PORTION OF THIS MEMORANDUM OR THE DIVULGENCE OF ANY OF ITS CONTENTS OTHER THAN TO THE PROSPECTIVE PURCHASER'S FINANCIAL OR LEGAL COUNSEL, WITHOUT THE SPECIFIC WRITTEN APPROVAL OF THE MANAGING PARTNER OF THE PARTNERSHIP (THE "MANAGING PARTNER"), IS PROHIBITED. ANY PERSON WHO RECEIVES THIS MEMORANDUM AND DOES NOT PURCHASE ANY OF THE INTERESTS IS REQUESTED TO RETURN THIS MEMORANDUM PROMPTLY TO THE MANAGING PARTNER.

PROSPECTIVE PURCHASERS OF INTERESTS SHOULD READ THIS CONFIDENTIAL OFFERING MEMORANDUM CAREFULLY BEFORE MAKING ANY INVESTMENT DECISION REGARDING THE PARTNERSHIP. THE INTERESTS OFFERED HEREBY INVOLVE A SIGNIFICANT DEGREE OF RISK. SEE "RISK FACTORS."

THIS MEMORANDUM DOES NOT CONSTITUTE AN OFFER TO SELL, OR A SOLICITATION OF AN OFFER TO BUY, TO ANY PERSON WHO HAS NOT BEEN REQUESTED TO EXECUTE A SUBSCRIPTION AGREEMENT AND WHO HAS NOT COMPLETED AND RETURNED A COMPLETED SUBSCRIPTION AGREEMENT IN FORM AND SUBSTANCE SATISFACTORY TO THE MANAGING PARTNER. THIS MEMORANDUM DOES NOT CONSTITUTE AN OFFER TO SELL, OR A SOLICITATION OF AN OFFER TO BUY INTERESTS IN ANY JURISDICTION OR TO ANY PERSON TO WHOM OR TO WHICH IT IS UNLAWFUL TO MAKE SUCH AN OFFER OR SOLICITATION IN SUCH JURISDICTION. THIS OFFERING IS MADE ONLY TO ACCREDITED INVESTORS, AS THAT TERM IS DEFINED IN REGULATION D PROMULGATED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "ACT").

CONFIDENTIAL

GCC - SEC 0000141

GCCSAC00000110

PROSPECTIVE INVESTORS ARE NOT TO CONSTRUE THE CONTENTS OF THIS MEMORANDUM AS INVESTMENT, TAX OR LEGAL ADVICE. THIS MEMORANDUM AND THE OTHER DOCUMENTS DELIVERED IN CONNECTION HEREWITH SHOULD BE REVIEWED BY EACH PROSPECTIVE INVESTOR AND SUCH INVESTOR'S FINANCIAL OR LEGAL COUNSEL.

THE INFORMATION CONTAINED HEREIN IS ACCURATE ONLY AS OF THE DATE OF THIS MEMORANDUM. THE INFORMATION IS SUBJECT TO CHANGE AT ANY TIME.

THERE IS NO PUBLIC MARKET FOR THE INTERESTS AND NONE IS LIKELY TO DEVELOP. THE PARTNERSHIP WILL BE UNDER NO OBLIGATION TO REGISTER THE INTERESTS UNDER THE ACT OR TO COMPLY WITH ANY EXEMPTION FROM REGISTRATION UNDER THE ACT.

NO PERSON HAS BEEN AUTHORIZED TO MAKE REPRESENTATIONS, OR GIVE ANY INFORMATION, WITH RESPECT TO THE INTERESTS OFFERED HEREBY, EXCEPT THE INFORMATION CONTAINED HEREIN. PROSPECTIVE INVESTORS ARE URGED TO REQUEST ANY ADDITIONAL INFORMATION THEY MAY CONSIDER NECESSARY IN MAKING AN INFORMED INVESTMENT DECISION. EACH PROSPECTIVE PURCHASER IS INVITED, PRIOR TO THE CONSUMMATION OF A SALE OF ANY INTEREST TO SUCH PURCHASER, TO ASK QUESTIONS OF, AND RECEIVE ANSWERS FROM, THE MANAGING PARTNER CONCERNING THE PARTNERSHIP AND THIS OFFERING AND TO OBTAIN ANY ADDITIONAL INFORMATION TO THE EXTENT THE MANAGING PARTNER POSSESSES THE SAME OR CAN ACQUIRE IT WITHOUT UNREASONABLE EFFORT OR EXPENSE, IN ORDER TO VERIFY THE ACCURACY OF THE INFORMATION SET FORTH HEREIN.

FOR CONNECTICUT RESIDENTS ONLY

THE INTERESTS OFFERED HEREBY HAVE NOT BEEN REGISTERED UNDER SECTION 36-485 OF THE CONNECTICUT UNIFORM SECURITIES ACT (THE "CONNECTICUT ACT") AND, THEREFORE, CANNOT BE RESOLD UNLESS THEY ARE REGISTERED UNDER THE CONNECTICUT ACT OR UNLESS AN EXEMPTION FROM REGISTRATION IS AVAILABLE.

FOR FLORIDA RESIDENTS ONLY

THE INTERESTS ARE OFFERED PURSUANT TO A CLAIM OF EXEMPTION UNDER SECTION 517.061 OF THE FLORIDA SECURITIES ACT AND HAVE NOT BEEN REGISTERED UNDER SAID ACT IN THE STATE OF FLORIDA. ALL FLORIDA RESIDENTS HAVE THE RIGHT TO VOID THE PURCHASE OF THE INTERESTS,

3

CONFIDENTIAL

GCC – SEC 0000142

GCCSAC00000111

WITHOUT PENALTY, WITHIN (3) DAYS AFTER THE FIRST TENDER OF CONSIDERATION IS MADE BY SUCH PURCHASER TO THE PARTNERSHIP, AN AGENT OF THE PARTNERSHIP, OR WITHIN THREE DAYS AFTER THE AVAILABILITY OF THAT PRIVILEGE IS COMMUNICATED TO SUCH PURCHASER, WHICHEVER OCCURS LATER.

### FOR PENNSYLVANIA RESIDENTS ONLY

PURSUANT TO SECTION 207(m) OF THE PENNSYLVANIA SECURITIES ACT, EACH PENNSYLVANIA RESIDENT WHO ACCEPTS AN OFFER TO PURCHASE THE INTERESTS SHALL HAVE THE RIGHT TO WITHDRAW HIS ACCEPTANCE AND RECEIVE A FULL REFUND OF ALL MONIES PAID, WITHOUT INCURRING ANY LIABILITY TO THE PARTNERSHIP OR ANY OTHER PERSON, WITHIN TWO (2) BUSINESS DAYS FROM THE RECEIPT BY THE PARTNERSHIP OF HIS WRITTEN BINDING CONTRACT OF PURCHASE OR IN THE CASE OF A TRANSACTION IN WHICH THERE IS NO WRITTEN BINDING CONTRACT OF PURCHASE, WITHIN TWO DAYS AFTER HE MAKES THE INITIAL PAYMENT FOR THE INTERESTS BEING OFFERED.

THE INTERESTS MAY NOT BE SOLD BY THE INVESTOR FOR A PERIOD OF TWELVE (12) MONTHS AFTER THE DATE OF PURCHASE.

THE INTERESTS MAY NOT BE TRANSFERRED EXCEPT IN ACCORDANCE WITH THE REQUIREMENTS OF SECTION 203(d) OF THE PENNSYLVANIA SECURITIES ACT AND REGULATION 203.041 PROMULGATED THEREUNDER.

### NASAA LEGEND

IN MAKING AN INVESTMENT DECISION INVESTORS MUST RELY ON THEIR OWN EXAMINATION OF THE PARTNERSHIP AND THE TERMS OF THE OFFERING, INCLUDING THE MERITS AND RISKS INVOLVED. THE INTERESTS HAVE NOT BEEN RECOMMENDED BY ANY FEDERAL OR STATE SECURITIES COMMISSION OR REGULATORY AUTHORITY. FURTHERMORE ' THE FOREGOING AUTHORITIES HAVE NOT CONFIRMED THE ACCURACY OR DETERMINED THE ADEQUACY OF THIS DOCUMENT. ANY REPRESENTATION TO THE CONTRARY IS A CRIMINAL OFFENSE.

THE INTERESTS ARE SUBJECT TO RESTRICTIONS ON TRANSFERABILITY AND RESALE AND MAY NOT BE TRANSFERRED OR RESOLD EXCEPT AS PERMITTED UNDER THE SECURITIES ACT OF 1933, AS AMENDED, AND THE APPLICABLE STATE SECURITIES LAWS, PURSUANT TO REGISTRATION OR EXEMPTION THEREFROM. INVESTORS SHOULD BE AWARE THAT THEY MAY BE REQUIRED

4

CONFIDENTIAL

GCC - SEC 0000143

GCCSAC00000112

TO BEAR THE FINANCIAL RISKS OF THIS INVESTMENT FOR AN INDEFINITE PERIOD OF TIME.

This Memorandum should be read in conjunction with the Limited Partnership Agreement of ASCOT PARTNERS, L.P., dated as of November 6, 1992 (the "Partnership Agreement"), a copy of which is available upon request and will be provided to each prospective investor prior to the execution by such investor of a Subscription Agreement. Unless the context otherwise requires, all capitalized terms used in this Memorandum without definition have the respective meanings assigned to them in the Partnership Agreement.

Subscriptions will be subject to acceptance or rejection in whole or in part by the Managing Partner, which reserves the right to cease accepting subscriptions at any time without notice. Subscriptions will be accepted in the minimum amount of $500,000 or such greater or lesser amounts as may be determined in the discretion of the Managing Partner. See "The Offering".

Investment Approach

Ascot Partners, L.P., a Delaware limited partnership formed on August 17, 1992, engages primarily in the practice of index arbitrage, convertible arbitrage and options arbitrage, in which individual or baskets of securities are purchased and/or sold against related securities such as index options or individual stock options. These strategies are used to take advantage of price disparities among related securities. The Partnership also may make investments in private debt claims and publicly traded securities of bankrupt and distressed companies and in risk arbitrage as well as make indirect investments, including investments in mutual funds, private investment partnerships, closed-end funds, and other pooled investment vehicles which engage in similar investment strategies (collectively "Other Investment Entities"). The Partnership may on occasion itself initiate or actively participate in acquisition or restructuring transactions or in proxy contests. The Partnership also may invest in the securities of corporations believed to be fundamentally undervalued. The Partnership may invest in restricted securities.

When the Partnership engages in indirect investments in Other Investment Entities fees, including performance-based fees, may be payable to such pooled vehicles by the Partnership, in addition to the fees payable to the General Partners by Limited Partners discussed below. In such cases, the Managing Partner will retain overall investment responsibility for the portfolio of the Partnership (although not the investment decisions of any independent money managers managing Other Investment Entities). Such arrangements are subject to periodic review by the Managing Partner and are terminable at reasonable intervals in the Managing Partner's discretion. The Partnership may withdraw from or invest in different investment partnerships and terminate or enter into new investment advisory agreements without prior notice to or the consent of the Limited Partners. See "Risk Factors -- Independent Money Managers".

5

CONFIDENTIAL

GCC - SEC 0000144

GCCSAC00000113

The Managing Partner intends to the extent circumstances permit to adopt a selective approach in evaluating potential investment situations, generally concentrating on relatively fewer transactions he can follow more closely. The Managing Partner may often employ strategies involving derivative securities like options, futures and convertibles which may present more favorable risk-reward relationships. The Managing Partner expects to use hedging devices and will engage in short sales. There can be no assurance that any of the hoped-for benefits of the foregoing approach will be realized. Moreover, the Managing Partner reserves the right to deviate from the foregoing approach to the extent he deems appropriate. Notwithstanding the foregoing, the Partnership will not be permitted to trade in commodities and futures, including financial futures, or in options on commodities and futures, unless the Managing Partner registers as a commodity pool operator under the Commodity Exchange Act or the Partnership otherwise would become able to so trade under applicable law. The Managing Partner currently does not intend to register as a commodity pool operator, but reserves the right to so register in the future. If the Partnership registers as a commodity pool operator or if the Partnership otherwise becomes eligible to trade commodities and futures, then the Partnership shall be permitted to trade in commodities and futures. To the extent that the Partnership trades in commodities and futures and related options, the Partnership will incur additional risks. Because of the low margin deposits normally required in futures trading, the same risks as those resulting from leverage described below will be particularly present. In addition, due to market and regulatory factors commodities and futures and related options may be less liquid than other types of investments.

The Managing Partner reserves the right to alter or modify some or all of the Partnership's investment strategies in light of available investment opportunities (subject to limitations on the purchase and sale of futures and commodities), to take advantage of changing market conditions, where the Managing Partner, in its sole discretion, concludes that such alterations or modifications are consistent with the goal of maximizing returns to investors, subject to what the Managing Partner, in its sole discretion, considers an acceptable level of risk.

The Partnership will execute its trades through unaffiliated brokers, who may be selected on a basis other than that which will necessarily result in the lowest cost for each trade. Clearing, settlement and custodial services will be provided by one or more unaffiliated brokerage firms.

The Partnership may borrow money and use credit to purchase or carry its investments.

Managing and General Partner

The Managing Partner and General Partner of the Partnership is J. Ezra Merkin. Mr. Merkin is currently the Managing and General Partner of Gabriel Capital, L.P., and was formerly the Managing and General Partner of Ariel Capital, L.P. from January 1, 1989 until

CONFIDENTIAL

GCC – SEC 0000145

GCCSAC00000114

December 31, 1991. Prior to that, Mr. Merkin served as managing partner of Gotham Capital, an investment partnership, from 1985 to 1988. Mr. Merkin was associated with Halcyon Investments from 1982 to 1985 and with the law firm of Milbank, Tweed, Hadley & McCloy from 1979 to 1982. Mr. Merkin graduated from Columbia College magna cum laude and is a member of Phi Beta Kappa. He is an honors graduate of Harvard Law School. Mr. Merkin served on the faculty of The Benjamin N. Cardozo School of Law from 1981 to 1992.

Risk Factors. The principal activity of the Partnership will be index arbitrage and investments in other securities. Because of the inherently speculative nature of these activities, the results of the Partnership's operations may be expected to fluctuate from period to period.

Options Transactions. The Partnership engages in various types of options transactions, including arbitrage and hedging in options on securities and indexes of securities. This activity is designed to reduce the risks attendant in short-selling and in taking long positions in certain transactions and may involve stock options on a registered option exchange and offsetting transactions in the underlying stock, or offsetting transactions in one or more options for stock. The Partnership also may take positions in options on stock of companies which may, in the judgment of the Managing Partner, be potential acquisition candidates in merger, exchange offer or cash tender offer transactions. If the potential acquisition candidate does not become the subject of a merger, exchange offer or cash tender offer, the Partnership may suffer a loss.

When the Partnership purchases an option, it must pay the price of the option and transaction charges to the broker effecting the transaction. If the option is exercised by the Partnership, the total cost of exercising the option may be more than the brokerage costs which would have been payable had the underlying security been purchased directly. If the option expires, the Partnership will lose the cost of the option.

In certain transactions the Partnership may not be "hedged" against market fluctuations or, in liquidation situations, the hedge may not accurately value the assets of the company being liquidated. This can result in losses, even if the proposed transaction is consummated.

Arbitrage Transactions. The Partnership may purchase securities at prices often only slightly below the anticipated value to be paid or exchanged for such securities in a merger, exchange offer or cash tender offer which the Partnership determines is probable and substantially above the prices at which such securities traded immediately prior to announcement of the merger, exchange offer or cash tender offer. If the proposed transaction appears likely not to be consummated or in fact is not consummated or is delayed, the market price of the security to be tendered or exchanged may be expected to decline sharply, which would result in a loss to the Partnership. Moreover, where a security to be issued in a merger or exchange offer has been sold short as a hedge in the expectation that the short position will be covered by delivery of such security when issued, failure of the merger or exchange offer to

7

CONFIDENTIAL

GCC - SEC 0000146

GCCSAC00000115

be consummated may force an arbitrageur to cover his short position in the market at a higher price than his short sale, with a resulting loss.

Offerors in tender or exchange offers customarily reserve the right to cancel such offers in the above circumstances and in a variety of other circumstances, including an insufficient response from shareholders of the target company. Defensive activities of a target company or the actions of regulatory authorities may result in significant delays, during which the Partnership's capital will be committed to the transaction and significant interest charges on funds borrowed to finance its arbitrage activities in connection with the transaction may be incurred, and ultimately may defeat an acquisition.

In addition, if the Partnership determines that the offer price for a security which is the subject of a tender offer is likely to be increased, either by the original bidder or by another party, the Partnership may purchase securities above the offer price; such purchases are subject to a high degree of risk.

Bankruptcy Situations. Investments in debt claims and the securities of companies that have filed for bankruptcy (under U.S. law or the laws of foreign jurisdictions) may be made at various stages in the bankruptcy process based on the Managing Partner's judgment that there is sufficient profit potential. The Partnership may invest in the debt instruments which have been issued by foreign countries or in the debt instruments of defaulted obligors where the instruments are guaranteed by a foreign government. Such investee entities generally are highly leveraged and substantial doubts exist as to whether the entity will be able to service its debt (i.e., pay interest for borrowed money when interest payments are due) or retire its debt upon maturity. In liquidations (both in and out of bankruptcy) and other forms of corporate reorganization, there exists the risk that the reorganization either will be unsuccessful, will be delayed or will result in a distribution of cash or a new security the value of which will be less than the purchase price to the Partnership of the security in respect of which such distribution is received. These investments are generally illiquid and have a high risk profile.

Other Transactions. The Partnership may also make certain purchases of securities as to which no extraordinary corporate transaction has been announced. Such purchases may include securities which the Managing Partner believes to be undervalued, or where a significant position in the securities of the particular company has been taken by one or more other persons or where other companies in the same or a related industry have been the subject of acquisition attempts. If the Partnership purchases securities in anticipation of an acquisition attempt or reorganization, and an acquisition attempt or reorganization does not in fact occur, the Partnership may sell the securities at a substantial loss. Further, when securities are purchased in anticipation of an acquisition attempt or reorganization, a substantial period of time may elapse between the Partnership's purchase of the securities and the acquisition attempt or reorganization. During this period, a portion of the Partnership's funds would be committed to the securities purchased, and the Partnership may finance such purchases with borrowed funds on which it will have to pay interest.

8

CONFIDENTIAL

Proxy Contests.  The Partnership may invest in securities of a company which is the subject of a proxy contest in the expectation that new management will be able to improve the company's performance or effect a sale or liquidation of its assets so that the price of the subject company's securities will increase to a price above that paid for the securities by the Partnership.  If the incumbent management of the subject company is not defeated or if new management is unable to improve the company's performance or sell or liquidate the company, the market price of the securities of the subject company will typically fall to a price below that paid for the securities by the Partnership, causing the Partnership to suffer a loss.  In addition, even upon the successful completion of a proxy contest, the market price of the securities of the subject company may not rise to a price above that paid for the securities by the Partnership.

Commodities.  The Managing Partner may decide to register as a commodity pool operator under the Commodity Exchange Act and seek certain exemptive letters thereunder, so as to enable the Partnership to trade in commodities and financial futures and related options.  Because of the very low margin, deposits normally required in futures trading, the risks resulting from leverage described below are particularly present in such trading.  In addition, due to market and regulatory factors, futures may be less liquid then other types of investments.

Short Selling.  Where the Partnership determines that it is probable that a transaction will not be consummated, the Partnership may sell the securities of the target company short, at prices below the announced price for the securities in the transaction.  If the transaction (or another transaction, such as a "defensive" merger or a friendly tender offer) is consummated, the Partnership may be forced to cover the short position in the market at a higher price than the short sale price, with a resulting loss.  There is in theory no limit to the loss which the Partnership could incur in covering a short sale.

Market Risk and Lack of Diversification.  Substantial risks are involved in the acquisition or disposition of securities.  Securities and their issuers are affected by, among other things: changing supply and demand; federal, state and governmental laws, regulations and enforcement activities; trade, fiscal and monetary programs and policies; and national and international political and economic developments.  Given the Partnership's relatively small size, with a majority of the Partnership's assets expected to be invested in relatively few situations, portfolio diversification may be limited.  The Partnership's investment plan does not constitute a balanced investment plan.  The securities in which the Partnership may invest may be regarded as of high risk.  Such securities are subject to a number of risk factors, including market volatility, creditworthiness of the issuer, liquidity of the secondary trading market, and availability of market quotations.

Leverage.  The Partnership is permitted to borrow funds in order to be able to make additional investments.  Consequently, fluctuations in the value of the Partnership's portfolio will have a significant effect in relation to the Partnership's capital.  The risk of loss and the

9

CONFIDENTIAL

GCC – SEC 0000148

GCCSAC00000117

possibility of gain is therefore increased. The amount of borrowings which the Partnership may have outstanding at any time may be large in relation to its capital. In addition, the level of interest rates generally, and the rates at which the Partnership can borrow in particular, will be an expense of the Partnership and therefore affect the operating results of the Partnership.

Lending of Portfolio Securities. The Partnership may from time to time lend securities from its portfolio to brokers, dealers and financial institutions such as banks and trust, companies. The borrower may fail to return the securities involved in such transactions, particularly if such borrower is in financial distress, in which event the Partnership may incur a loss.

Portfolio Turnover. The Partnership anticipates that its portfolio turnover rate may be very high. Typically, high portfolio turnover results in correspondingly high transaction costs, including brokerage commission expenses.

Effect of Limited Partner Withdrawal. The exercise by Limited Partners of their right to withdraw under the Partnership Agreement may cause the Partnership to be unable to carry out a particular investment strategy. The obligation of the Partnership to honor one or more withdrawal requests may adversely affect the Partnership's ability to accomplish its economic objectives and may cause the Managing Partner to dissolve the Partnership as a means of overriding withdrawal requests of Limited Partners.

Lack of Management Control. The management of the affairs of the Partnership will be vested exclusively in the General Partners. They will have wide latitude in making investment decisions and may withdraw their own capital, admit new Limited Partners or terminate the Partnership at any time. Generally, the Limited Partners will have no right to participate in the decisions of the Managing Partner or General Partners or otherwise in the affairs of the Partnership, to remove the Managing Partner or any General Partner, to approve the admission of any new General Partner or to dissolve the Partnership. The Managing Partner may require any Limited Partner to withdraw from the Partnership at any time.

Independent Money Managers. The Managing Partner may delegate investment discretion for all or a portion of the Partnership's funds to money managers, other than the Managing Partner, or make investments with other private investment partnerships, closed-end funds or other pooled vehicles ("Other Investment Entities"). Although the Managing Partner will exercise reasonable care in selecting such independent money managers or Other Investment Entities and will monitor the results of those money managers and Other Investment Entities, the Managing Partner and the General Partners may not have custody over the funds invested with the other money managers or with Other Investment Entities. The risk of loss of the funds invested with other money managers or with Other Investment Entities may not be insured by any insurance company, bonding company, governmental agency, or other entity and the General Partners and Managing Partner are not liable for any such loss. Independent money managers and managers of Other Investment Entities selected by the

10

CONFIDENTIAL

GCC - SEC 0000149

GCCSAC00000118

Managing Partner may receive compensation based on the performance of their investments. Performance-based compensation usually is calculated on a basis which includes unrealized appreciation of the Partnership's assets, and may be greater than if such compensation were based solely on realized gains. Further, a particular independent money manager or manager of an Other Investment Entity may receive incentive compensation in respect of its portfolio for a period even though the Partnership's overall portfolio depreciated during such period. The independent money managers and Other Investment Entities will trade wholly independently of one another and may at times hold economically offsetting positions.

Exculpation of the General Partners from Liability. The Partnership Agreement provides that the General Partners will not be liable for, and will be indemnified by the Partnership against, any act or omission unless such act or omission constitutes gross negligence, fraud or willful misconduct. As a result, Limited Partners may be entitled to a more limited right of action against the General Partners than they would otherwise have had absent such a limitation in the Partnership Agreement.

Conflicts of Interest. The General Partners have broad powers to conduct investment and money management activities outside the Partnership. These activities, which will include management of other partnerships one or more offshore managed funds (the "Managed Funds"), may create conflicts of interest with the Partnership with regard to such matters as allocation of opportunities to participate in particular investments. Other accounts affiliated with the General Partners may hold positions opposite to positions maintained on behalf of the Partnership. The Partnership will obtain no interest in any such outside investments or activities. The Partnership Agreement does not require the General Partners, their officers or directors to devote all or any specified portion of their time to managing the Partnership's affairs, but only to devote so much of their time to the Partnership's affairs as they reasonably believe necessary in good faith. The Partnership Agreement does not prohibit the General Partners or their affiliates from engaging in any other existing or future business, and the General Partners or their affiliates currently provide and anticipate continuing to provide investment management services to other clients. In addition, the General Partners, their officers or directors may invest for their own accounts in various investment opportunities, including in investment partnerships. The General Partners may determine that an investment opportunity in a particular investment partnership is appropriate for a particular account, or for itself, but not for the Partnership.

The Managing Partner will allocate overhead expenses among the Partnership and the Managed Funds on a fair basis, as determined by the Managing Partner. These other activities will require a substantial amount of the Managing Partner's time and effort.

Liability for Return of Distributions. Under Delaware law, any Limited Partner who receives a distribution from the Partnership shall be liable to the Partnership for the amount of the distribution to the extent such amount was distributed at a time that the liabilities of the

11

CONFIDENTIAL

GCC – SEC 0000150

GCCSAC00000119

Partnership exceeded the fair value of its assets and the Limited Partner knew of the state of the Partnership's financial condition at the time of such distribution.

Tax and Other Risks. Although the Managing Partner believes that the Partnership will be treated as a partnership for federal income tax purposes, no ruling has been, or will be, obtained from the Internal Revenue Service, to that effect and no opinion of counsel has been sought. If the Partnership is taxed not as a partnership but as a corporation it will, among other things, have to pay income tax on its earnings in the same manner and at the same rates as a corporation, and Partners would be subject to an additional tax on earnings distributed. If the Partnership is treated as such for tax purposes, Partners will be taxed on the Partnership's taxable income whether or not it is distributed. The Managing Partner does not intend to make distributions to the Limited Partners that reflect the taxable income of the Partnership and is not required to mare any distributions except upon the withdrawal of capital by a Partner pursuant to the Partnership Agreement. Furthermore, a Limited Partner who withdraws capital from the Partnership in accordance with the Partnership Agreement may receive the amount so withdrawn in kind. Accordingly, in either such event, a Limited Partner may not receive sufficient liquid assets to pay income taxes attributable to his distributive share of Partnership income.

Restrictions on Transferability and Withdrawal. Each investor who becomes a Limited Partner will be required to represent that he is acquiring the interest for investment and not with a view to distribution or resale; that he understands he must bear the economic risk of an investment for an indefinite period of time because the securities have not been registered with the Securities and Exchange Commission or any other state or governmental agency; and that he understands the interests cannot be sold unless an exemption from such registration is available. Transfers of Limited Partnership interests without consent of the Managing Partner will be permitted only in limited circumstances. In no event may transfers be made which would cause a violation of any federal or state securities laws or which are likely to result in a termination of the Partnership for federal income tax purposes. Consequently, the purchase of interests should be considered only as a long-term and illiquid investment.

A Limited Partner generally will not be permitted to withdraw any part or all of his Capital Account balance from the Partnership except on December 31 of each year, and then only upon 45 days' prior written notice. Withdrawn amounts may be paid to Limited Partners in cash or securities in the discretion of the Managing Partner, and payment will be subject to delay and to retention of reserves.

Registration and Qualification. Neither the Partnership nor any of its General Partners has registered with any governmental or regulatory agency. The Managing Partner, in the course of the conduct of the Partnership's activities, will evaluate his obligations to register or comply with any rules which may be imposed upon the Partnership, or its General Partners, by any governmental or regulatory agency having jurisdiction over the activities being pursued by or on behalf of the Partnership. However, no assurance can be given that compliance with all

12

CONFIDENTIAL

GCC - SEC 0000151

GCCSAC00000120

such rules will be undertaken or if undertaken will comply fully with such requirements. Compliance with such rules could adversely affect the Partnership's operations and the Partners' ability to withdraw capital from the Partnership.

PAST RESULTS ARE NOT NECESSARILY INDICATIVE OF FUTURE PERFORMANCE. NO ASSURANCE CAN BE MADE THAT PROFITS WILL BE ACHIEVED OR THAT SUBSTANTIAL LOSSES WILL NOT BE INCURRED.

The Offering

Class A Limited Partnership interests are being offered on a private placement basis to persons who would qualify as "accredited investors" under the securities laws. Unless the Managing Partner determines otherwise, the minimum investment will be $500,000. No minimum amount of capital is required to be raised in order for the offering to be consummated.

Subscription agreements have been furnished to prospective investors along with this Memorandum. Subscriptions will be accepted at the discretion of the Managing Partner. If a subscription is accepted, the subscriber will be expected to deliver immediately available funds to the Partnership as per the instructions of the Managing Partner. Subscribing Limited Partners will represent that they are "accredited investors" under the Act, that they have had the opportunity to ask questions and receive answers concerning the terms and conditions of the offering and to obtain any information which the Managing Partner possesses or can acquire without unreasonable effort or expense concerning the Partnership and that they are aware that their Partnership interests have not been registered under the securities laws and will be subject to restrictions on transfer.

Summary of the Restated Partnership Agreement

The following summary of the Restated Partnership Agreement is qualified by reference to the actual terms of the Restated Partnership Agreement, a copy of which will be furnished upon request.

Capital Accounts; Allocations. Each Partner will have a capital account equal initially to the amount of cash or the value of property contributed by him. The Managing Partner may permit additional capital contributions and may admit new limited partners. The General Partners will not be personally liable for the return of capital contributions, and no interest will be payable thereon.

Partnership loss for each Accounting Period will be allocated among Partners in proportion to the balance in their respective capital accounts at the start of such period. At the end of each Accounting Period each Partner's capital account will be increased proportionately to reflect Partnership income for each Accounting Period. Income and loss for this purpose

13

CONFIDENTIAL

GCC - SEC 0000152

GCCSAC00000121

will include unrealized appreciation and depreciation on investments; if a majority of the Class A Limited Partners disputes a valuation, the dispute will be resolved by an accounting firm to be agreed on at the time. All expenses of organizing and operating the Partnership, including administrative expenses such as rent and salaries of personnel other than the Managing Partner, will be Partnership expenses, including those incurred by the General Partners on the Partnership's behalf. A new Accounting Period will begin on each January 1 as well as at the time new or additional capital is contributed to, or capital is withdrawn from, the Partnership.

At the end of each fiscal year of the Partnership (which will be a calendar year) and upon dissolution, an amount equal to 1% (prorated for periods of less than a year) of the sum of each Class A Limited Partner's capital account balance at the end of such year will be allocated to the General Partners or their designees.

Limited Partner Withdrawals. A Limited Partner may withdraw all or part of his capital from the Partnership on 45 days' prior notice on December 31 of any year, and will be deemed to have withdrawn from the Partnership at the end of any year (or in certain cases, 60 days later) during which he dies, becomes bankrupt or is adjudicated incompetent. The Managing Partner may cause any Limited Partner to withdraw from the Partnership on 30 days' notice. The withdrawing Partner will receive the amount of his capital account to be withdrawn (less reserves determined by the Managing Partner for contingent liabilities) within 90 days after withdrawal. All amounts remaining unpaid (less reserves) will begin to bear interest at a rate equal to a specified broker's call rate 30 days after withdrawal. Distributions may be made in the form of property valued as of the date of distribution, but no Partner will receive more than his pro rata interest in any investment. Limited Partners may not otherwise make withdrawals, and the Partnership does not plan to make pro rata distributions to Partners on an on-going basis.

Transfer of Interests. Limited Partners may not transfer their interests without consent of the Managing Partner except by will, by operation of law or to affiliates. No transfer will be permitted if it would result in a termination of the Partnership for tax purposes, violate securities laws or require registration of the Partnership as an investment company or of any General Partner as an investment adviser. (See also "The Offering".) No permitted transferee other than an affiliate may be substituted as a Limited Partner without the Managing Partner's consent.

The General Partners; Exculpation; Indemnity. The Managing Partner is required to devote substantially his entire time and effort during normal business hours to his money management activities, including (but not limited to) the affairs of the Partnership. Subject to the foregoing, he may engage, with certain limited exceptions, in other investment activities for his own account and for the account of others, and the Partnership will have no interest therein. The General Partners will not be liable to the Partnership or the Limited Partners except for bad faith, gross negligence, recklessness, fraud, intentional misconduct or acts taken with knowledge that they exceed the Partnership's purposes and powers, and will be entitled to

14

CONFIDENTIAL

GCC - SEC 0000153

GCCSAC00000122

indemnity from the Partnership for all loss incurred by them defending claims concerning their activities as such not resulting from any of the foregoing.

Subject to the consent of the Managing Partner, the General Partners may withdraw any or all of their capital accounts at any time; provided, however, that at all times the General Partners, in the aggregate, will maintain at least a 1% interest in the Partnership. In addition, subject to the consent of the General Partner, each of the General Partners may withdraw from its capital account each year, as advances against any future withdrawals by the General Partner, amounts which in the aggregate do not exceed approximately 50% of the General Partner's share of the profits of the Partnership at the time of such withdrawal, all as estimated by the Managing Partner. Withdrawals pursuant to the preceding sentence will not reduce the General Partner's capital account until the end of the year.

A General Partner will be deemed to have withdrawn upon his bankruptcy, death or adjudicated incompetency, and may be forced to withdraw at any time by the Managing Partner. The Managing Partner may admit new General Partners at any time.

Reports. The Partnership will provide to the Partners unaudited financial statements within 35 days after the end of each calendar quarter (other than the last) and will furnish to them annual audited financial statements within 90 days after year end, and tax information as soon thereafter as practicable.

Dissolution. The Partnership will dissolve on December 31, 2015 or earlier if the Managing Partner so determines, and will dissolve if the Managing Partner dies, retires or becomes bankrupt or incapacitated. Upon dissolution, property remaining after satisfying Partnership liabilities will be distributed (subject to maintenance of reserves for remaining liabilities as determined by the Managing Partner) to the Partners in proportion to the balances in their capital accounts at the time of distribution. Distributions of property will be ratable among the Partners. Reserves will be released, without interest, when the Managing Partner determines they are no longer required.

Amendments. The Partnership Agreement may be amended with the consent of the General Partners and a majority in interest of the Limited Partners, but amendments reducing the obligations of the General Partners or increasing the obligations of the Limited Partners require unanimous consent, and no amendment may reduce the balance of a Partner's capital account or alter or modify his interest in Partnership income, distributions or losses or his rights of withdrawal without his consent.

Additional Classes of Limited Partners. Pursuant to Delaware law, the Partnership Agreement provides for the future creation of additional classes of Limited Partners having such relative rights, powers and duties as may be established in the sole discretion of the Managing Partner, including rights, powers and duties senior to existing classes of Limited Partners. The creation of such classes of Limited Partners and the admission of such Limited

15

CONFIDENTIAL

GCC – SEC 0000154

GCCSAC00000123

Partners, including any amendment of the Partnership Agreement, will not require the vote or approval of any existing Limited Partner or class of Limited Partners. Subject to Delaware law, future classes of Limited Partners may be granted the right to vote separately or with all or any existing classes of Limited Partners on any matter.

Federal Income Tax Consequences

The following is a general summary of some of the federal income tax consequences to Limited Partners of an investment in the Partnership. IT IS NOT INTENDED AS A COMPLETE ANALYSIS OF ALL POSSIBLE TAX CONSIDERATIONS IN ACQUIRING, HOLDING AND DISPOSING OF AN INTEREST IN THE PARTNERSHIP AND, THEREFORE, IS NOT A SUBSTITUTE FOR CAREFUL TAX PLANNING BY EACH INVESTOR, PARTICULARLY SINCE THE FEDERAL, STATE AND LOCAL INCOME TAX CONSEQUENCES OF AN INVESTMENT, IN PARTNERSHIPS LIKE THE PARTNERSHIP MAY NOT BE THE SAME FOR ALL TAXPAYERS. This discussion has been prepared on the assumption that a Limited Partner will be an individual who is a citizen or resident of the United States. INVESTORS SHOULD CONSULT THEIR OWN TAX ADVISORS WITH RESPECT TO THE TAX CONSEQUENCES (INCLUDING STATE, LOCAL AND FOREIGN TAX CONSEQUENCES) OF AN INVESTMENT IN THE PARTNERSHIP.

The statements contained herein are based on existing law as contained in the Internal Revenue Code of 1986, as amended (the "Code"), Treasury regulations, administrative rulings and other pronouncements, and court decisions as of the date hereof. The existing law, as presently interpreted, is subject to change by either new legislation, or by new or differing interpretations in regulations, administrative pronouncements or court decisions, any of which could, by retroactive application or otherwise, adversely affect a Limited Partner's investment in the Partnership.

Classification as a Partnership. The availability of certain tax benefits depends on classification of the Partnership as a partnership rather than as an association taxable as a corporation for federal income tax purposes. No tax ruling will be sought from the Internal Revenue Service ("IRS") as to the status of the Partnership as a partnership for federal income tax purposes, and no opinion of counsel to that effect will be obtained. However, the Managing Partner believes that the Partnership will be treated as a partnership for federal income tax purposes and not as an association taxable as a corporation. No assurance can be given that partnership status could not be lost because of future changes in the law or the regulations, or due to changes in the manner in which the Partnership is operated.

In particular, a "publicly traded partnership" (as defined under Section 7704 of the Code) is treated as a corporation in any taxable year unless 90% of the partnership's gross income for said taxable year and each preceding year during which the partnership was in existence consisted of "qualifying income" (generally, interest, dividends, gain from the sale

16

of capital assets and certain other items). It is likely, but not certain, that the Partnership will meet the "qualifying income" test. Even if the Partnership does not meet the "qualifying income" test, the Managing Partner believes that the Partnership will not be considered a publicly traded partnership because (i) interests in the Partnership are not traded on an established securities market, and (ii) interests in the Partnership are not expected to be considered to be readily tradable on a secondary market or the substantial equivalent thereof.

If the Partnership were classified as an association taxable as a corporation, either at the outset, or due to a change in the way the Partnership is operated or in relevant law (including legislation, regulations, rulings or case law), the Partnership would be subject to federal income tax on any taxable income at regular corporate tax rates (reducing the return to the Partner). In such event, the Partners would not be entitled to take into account their distributive share of the Partnership's deductions, and would take into account the Partnership's income in computing their taxable income only to the extent distributed to them either as dividends or as non-dividend distributions in excess of the tax basis of their Partnership interests.

Taxation of Partners on Income or Losses of the Partnership. So long as the Partnership is classified as a partnership for federal income tax purposes, it will not be required to pay federal income tax as an entity. Instead, each Partner will report on his federal income tax return for each year during which he is a member of the Partnership, his distributive share of the items of income, gain, loss, deduction and credit of the Partnership, whether or not cash is distributed to such Partner during the taxable year. The characterization of an item of income, gain, loss or deduction (e.g., as a capital gain or loss as opposed to ordinary income or loss) will usually be the same for the Partners as it is for the Partnership. Since Partners will be required to include Partnership income in their respective income tax returns without regard to whether there are distributions attributable to that income, Partners may become liable for federal, state and local income taxes on that income even though they have received no distributions from the Partnership with which to pay such taxes.

Basis of Limited Partnership Interest. A Limited Partner's tax basis in his Partnership interest will include the amount of money such Partner contributes to the Partnership, increased by (i) any additional contributions made by him to the Partnership, (ii) his distributive share of any Partnership income, and (iii) the amount, if any, of his share of Partnership indebtedness; and decreased, but not below zero, principally by (x) distributions from the Partnership to him, (y) the amount of his distributive share of Partnership losses and (z) any reduction in his share of Partnership indebtedness.

Limitations on Deduction of Losses. The deduction of partnership losses by a Limited Partner is subject to numerous limitations. A Partner's share of partnership losses and deductions in any taxable year generally may be deducted only to the extent of his tax basis in his partnership interest at the end of such year, or, in the case of individuals and certain closely-held corporations, if less, the amount he is considered "at risk" (i.e., generally, to the

17

CONFIDENTIAL

GCC - SEC 0000156

GCCSAC00000125

extent of the partner's investment of cash and property and borrowed amounts for which the partner is personally liable or which are secured by personal assets other than his partnership interest). Additionally, it is likely that most of the income and loss of the Partnership will be characterized as portfolio income and loss, and, thus, Limited Partners subject to the passive activity loss limitations will not be entitled to offset passive losses against their distributive shares of Partnership portfolio income.

Limitation on Deductibility of Certain Expenses. The Code limits the deductibility of interest paid by an individual on indebtedness incurred to purchase or carry investment property to the amount of the taxpayer's net investment income. Investment interest includes interest paid by the Partnership on its debt and would generally include interest paid by a Limited Partner on indebtedness incurred to purchase or carry his interest in the Partnership to the extent the Partnership's income constitutes "portfolio income." It is anticipated that all or most income earned by the Partnership and passed through to the Limited Partners should be included in net investment income. Subject to certain limitations, investment interest expense which is not deductible in a taxable year can be carried forward until all disallowed amounts have been deducted.

Subject to certain enumerated exceptions, an individual taxpayer's miscellaneous itemized deductions (including miscellaneous itemized deductions derived through a partnership), which includes investment expenses, are deductible only to the extent they exceed two percent of the taxpayer's adjusted gross income. An individual's itemized deductions, computed after the application of all other limitations, including the two percent limitation described above is further reduced if the individual's adjusted gross income exceeds certain thresholds. The individual's itemized deductions are reduced by the lesser of (i) three percent of the individual's gross income over the applicable income threshold or (ii) 80% of the itemized deductions otherwise allowable for the taxable year. For purposes of this reduction, itemized deductions do not include deductions for medical expenses, casualty and theft losses and investment interest. If the Partnership is considered not to be engaged in a trade or business, these limitations would apply to the Partnership's expenses.

Due to the uncertainty of the application of the limitations on miscellaneous itemized deductions to entities such as the Partnership, prospective investors should consult their tax advisors regarding the potential impact of this provision on their personal tax situations.

Distributions. Generally, distributions of cash to a partner are taxable only to the extent they exceed such partner's basis in his partnership interest. The amount of such excess generally would be taxable as capital gain. It should be noted that, although gain may be recognized upon a partial redemption of an interest in the Partnership, loss will be recognized only upon a complete redemption of all of a Limited Partner's interest in the Partnership and only if the distribution consists solely of cash and property described in Section 751 of the Code (generally, property which, on sale, would produce ordinary income). Therefore, a Limited Partner who sustains an economic loss on partial redemption of his interest in the

18

GCC – SEC 0000157

GCCSAC00000126

Partnership will not be allowed a loss for federal income tax purposes at the time of such redemption.

It is possible, under the Limited Partnership Agreement, that Partnership assets other than cash may be distributed in kind to a Partner. No gain or loss is recognized in a distribution solely of property other than cash, unless the Partnership has Section 751 property and the distribution either is non-pro rata or is in complete liquidation of the Partner's interest. In such cases, the Partner or the Partnership, or both, may recognize gain or loss. The basis to a Partner of property distributed to him in liquidation of his entire interest in the Partnership will be equal to the basis of such Partner's interest in the Partnership decreased by any cash received in the distribution. In any other distribution, the basis to such Partner of the property distributed will be the lesser of its basis to the Partnership prior to the distribution or such Partner's basis for his Partnership interest. In such a distribution, the Partner's basis for such Partner's interest will be reduced by the amount of the basis of the property distributed to such Partner.

Allocations of Income and Loss. A Partner's distributive share of partnership income, gain, loss, deduction or credit for federal income tax purposes is generally determined in accordance with the provisions of the partnership agreement. However, under Section 704(b) of the Code, an allocation or portion thereof will be respected only if it either has "substantial economic effect" or is in accordance with the partner's "interest in the partnership".

Although the matter is not free from doubt, the Managing Partner believes that the allocations of income, deductions and other tax items to the Limited Partners contained in the Limited Partnership Agreement are in accordance with the Limited Partners' interests in the Partnership and will be sustained in all material respects. It should be noted, however, that there can be no assurance that the IRS will not claim that such allocations are not in accordance with the Limited Partners' interest in the Partnership and, therefore, attempt to alter allocations to the Limited Partners.

In the event property other than cash is contributed to the capital of the Partnership, under Section 704(c) of the Code, gain (or loss) with respect to any such property in an amount equal to the difference between the basis of such property and its fair market value at the time it is contributed to the Partnership shall, for federal income tax purposes, be specially allocated to the partners who contributed such property.

Investors should note that the "mark-to-market" rules applicable under Code Section 1256 to regulated futures contracts, foreign currency contracts, non-equity options and dealer equity options may result in the Partnership recognizing gain for tax purposes prior to the time it has economically realized that gain.

Sale of an Interest or Withdrawal. Generally, based on the nature of the investments of the Partnership and the nature of a Partner's investment in the Partnership, a Partner will

19

CONFIDENTIAL

GCC - SEC 0000158

GCCSAC00000127

recognize capital gain or loss (except to the extent gain is attributable to property described in Section 751 of the Code, in which event the gain will be treated as ordinary income) upon the sale or taxable exchange of an interest in the Partnership or upon receiving only cash from the Partnership upon withdrawal therefrom (see "Distributions" above). The amount of such gain or loss will be determined by the difference between the amount realized and the Partner's adjusted tax basis in such Partner's interest in the Partnership. For this purpose, the amount realized includes such Partner's share of the Partnership's outstanding liabilities, if any.

Certain Partnership Transactions. The Code, administrative rulings and decisions contain specific rules regarding the taxation of securities, futures and option transactions such as, for example, the rules on "wash sales", "marking to market", conversion transactions and "straddles" entered into by entities such as the Partnership. Such rules are complex and in certain cases are unclear, and may be subject to change at any time. Accordingly, each investor should consult his own tax advisor regarding the tax treatment of specific transactions entered into by the Partnership.

Elections as to Basis Adjustments. The Partnership Agreement does not require the General Partners to make an election under Section 754 of the Code, nor does it prohibit the General Partners from doing so. In general, such an election, if made, would permit the Partnership to adjust the tax basis of its assets to reflect gain or loss attributable to an interest in the Partnership sold or exchanged, or transferred upon the death of a partner. Certain adjustments might also arise if property is distributed in kind. In general, in the case of a transfer, such adjustments only affect the successor partner and are beneficial to it if the property has appreciated in value, and adverse if it has decreased in value. In the case of a distribution, the adjustments, if any, affect the Partners other than the distributee. An election, once made, is normally irrevocable. If there are many transfers or distributions to which the election applies, the calculation of the adjustments and the necessary record keeping become extremely complicated. As a result, the General Partners, in their discretion, may choose not to make the election, even though the failure to make such an election may increase in some instances the overall taxes of the Partners.

Partnership Tax Returns; Audit. The information filed by the Partnership may be audited by federal and other taxing authorities. There can be no assurance that such authorities will not make adjustments in the tax figures reported in such return. Any adjustments resulting from such audits may require each Partner to file an amended tax return, pay additional income taxes and interest and possibly result in the imposition of penalties or an audit of the partner's own return. Any audit of a Partner's return could result in adjustments of non-Partnership, as well as Partnership, income and losses.

Generally, upon an IRS audit, the tax treatment of Partnership items will be determined at the Partnership level pursuant to administrative or judicial proceedings conducted at the Partnership level. Each Limited Partner will generally be required to file his tax returns in a manner consistent with the information returns filed by the Partnership or be subject to

20

CONFIDENTIAL

GCC - SEC 0000159

GCCSAC00000128

possible penalties, unless the Limited Partner files a statement with his tax return on Form 8082 describing any inconsistency. The Managing Partner will be the Partnership's "tax matters partner" and as such will have certain responsibilities with respect to any IRS audit and any court litigation relating to the Partnership.

State and Local Income Tax. Each Partner may also be liable for state and local income taxes payable to the state and locality in which he is a resident or doing business or to a state or locality in which the Partnership conducts business. The income tax laws of each state and locality may differ from the above discussion of federal income tax laws so each prospective Limited Partner should consult his own tax counsel with respect to potential state and local income taxes payable as a result of an investment in the Partnership.

Unrelated Business Taxable Income

Code Section 511(a)(1) provides for a tax on the unrelated business taxable income ("UBTI") of a tax-exempt organization or trust. Generally, interest, dividends and gains or losses from the sale, exchange or other disposition of property (other than stock in trade or other property which would be treated as inventory or property held primarily for sale to customers in the ordinary course of the trade or business) are not treated as UBTI, provided that, notwithstanding these exceptions, in the case of debt-financed property, income derived from such property is treated as UBTI to the extent provided for in Code Section 514 or, with respect to interest, if received from an organization which is "controlled" by the tax-exempt organization. For this latter purpose, "control" means ownership of stock possessing at least eighty percent of the total combined voting power of all classes of stock entitled to vote and at least eighty percent of the total number of shares of all other classes of stock of the corporation. The Partnership may utilize leverage in furtherance of its goals and purposes.

Based upon the foregoing, it is not anticipated that a Limited Partner's purchase, holding or disposition of an interest in the Partnership will give rise to UBTI unless such Limited Partner incurs indebtedness in order to purchase its interest, the Partnership incurs indebtedness which constitutes "acquisition indebtedness" with respect to its income generating assets or, with respect to interest income, such income is received from an organization which is "controlled" by the Partnership or any of the Partners. It is unclear whether the "control test" is to be applied at the Partnership level or at the Limited Partner level. At present, it cannot be determined how much Partnership income will constitute UBTI as a result of the Partnership's use of leverage or the receipt of interest from controlled organizations.

It should be noted that, for several years, there have been announcements by members of the House of Representatives Ways and Means Committee that they would like to introduce legislation to alter the taxation of UBTI of tax-exempt organizations generally.

IMPORTANCE OF OBTAINING PROFESSIONAL ADVICE. THE FOREGOING ANALYSIS IS NOT INTENDED AS A SUBSTITUTE FOR CAREFUL TAX PLANNING,

21

CONFIDENTIAL

GCC - SEC 0000160

GCCSAC00000129

PARTICULARLY SINCE THE INCOME TAX CONSEQUENCES OF AN INVESTMENT IN THE PARTNERSHIP ARE COMPLEX AND CERTAIN OF THESE CONSEQUENCES WOULD VARY SIGNIFICANTLY WITH THE PARTICULAR SITUATION OF EACH LIMITED PARTNER. ACCORDINGLY, PROSPECTIVE INVESTORS ARE STRONGLY URGED TO CONSULT THEIR OWN TAX ADVISORS REGARDING THE POSSIBLE TAX CONSEQUENCES OF AN INVESTMENT IN THE PARTNERSHIP INCLUDING THE ALTERNATIVE MINIMUM TAX.

## ERISA CONSIDERATIONS

In considering an investment of a portion of the assets of a pension or profit-sharing plan or other "employee benefit plan" (as defined in Section 3(3) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA") ) that is subject to Title I of ERISA, and any investment funds or other collective investment vehicles that contain assets of one or more of such plans (each an "ERISA Plan"), in an interest in the Partnership, the fiduciary of the ERISA Plan who is responsible for making such investment should carefully consider, taking into account the facts and circumstances of the ERISA Plan, whether an investment in such interest is consistent with the fiduciary responsibility requirements of ERISA, including, but not limited to, whether: (i) such investment is consistent with the prudence and diversification requirements of ERISA taking into account, among other things, the ERISA Plan's need for sufficient liquidity to pay benefits when due, given that there is not expected to be a market in which to sell or otherwise dispose of interests in the Partnership, (ii) the fiduciary has authority to make such investment under the appropriate governing instrument and Title I of ERISA, (iii) such investment is made solely in the interest of the participants in and beneficiaries of the ERISA Plan, (iv) the acquisition or holding of such interests will result in a non-exempt, prohibited transaction under Section 406 of ERISA or Section 4975 of the Code, and (v) such investment does not violate ERISA's prohibition or improper delegation of control over or responsibility for "plan assets."

The trustee or other person who is investing assets of an individual retirement account described in Section 408 of the Code that is not subject to Title I of ERISA, or any pension, profit-sharing, Keogh or other retirement plan that is not subject to Title I of ERISA but is qualified under Section 401(a) of the Code, and any investment funds or other collective investment vehicles that contain assets of one or more of such plans (each an "Individual Plan") in an interest in the Partnership should carefully consider whether: (i) such investment is consistent with the Individual Plan's needs for sufficient liquidity to pay benefits when due, given that there is not expected to be a market to sell or dispose of interests in the Partnership; (ii) such trustee or other person has authority to make such investment under the appropriate governing instrument; and (iii) the acquisition or holding of such interest will result in a non-exempt prohibited transaction under Section 4975 of the Code.

Fiduciaries of ERISA Plans and trustees and other persons who are investing assets of Individual Plans (each such plan or account is herein referred to as a "Plan") should

22

CONFIDENTIAL

GCC - SEC 0000161

GCCSAC00000130

also carefully consider the definition of the term "plan assets" in Regulations Section 2510.3-101 promulgated by the U.S. Department of Labor on November 13, 1986 (the "Plan Assets Regulations"). The term "plan assets" is not defined in ERISA or the Code; however, the Plan Assets Regulations describe what constitutes assets of a Plan with respect to a Plan's investment in another entity for purposes of the fiduciary responsibility and prohibited transaction provisions of ERISA and the prohibited transaction rules of Section 4975 of the Code. Generally, the Plan Assets Regulations state that the term "plan assets" includes both the interest of a Plan in a limited partnership such as the Partnership and an undivided interest in the assets of the limited partnership, unless it is established that equity participation in such limited partnership by Benefit Plan Investors (as such term is defined in the Plan Assets Regulations) is not significant.

The Plan Assets Regulations state that equity participation by Benefit Plan Investors is significant on any date if, immediately after the most recent acquisition of any equity interest in the entity, twenty-five per cent or more of the value of any class of equity interests in the entity (excluding the value of any such interest held by the general partners) is held by Benefit Plan Investors (the "25% threshold"). Although the General Partners intend to restrict the acquisition of interests in the Partnership by Benefit Plan Investors to not more than ten per cent of any class of the equity of the Partnership, there can be no assurance that equity participation by Benefit Plan Investors will always remain below the 25% threshold.

If for any reason the assets of the Partnership should be deemed to be "plan assets" of an ERISA Plan which is a Limited Partner: (i) the prudence, diversification, exclusive benefit and other requirements of ERISA, which are generally applicable to investments by ERISA Plans and impose liability on fiduciaries, would extend to investments made by the Partnership; (ii) certain transactions that the Partnership might enter into, or may have entered into, in the ordinary course of its business, might constitute "prohibited transactions" under ERISA and might have to be rescinded, (iii) the fiduciary of the ERISA Plan that determined to purchase interests may be liable under ERISA for any losses to the ERISA Plan arising out of investments made by the Partnership that do not conform to the ERISA requirements, and (iv) the payment of certain of the fees payable to the General Partners or their designees or fees, including performance-based fees, payable to Other Investment Entities might be considered to be prohibited transactions under Section 406 of ERISA and Section 4975 of the Code. Also, if for any reason the assets of the Partnership should be deemed to be assets of an Individual Plan that is a Limited Partner, certain transactions that the Partnership might enter into, or may have entered into in the ordinary course of its business may constitute "prohibited transactions" under Section 4975 of the Code.

This summary is based on the provisions of ERISA and the Code (and the related regulations and administrative and judicial interpretations) as of the date hereof. This summary does not purport to be complete, and no assurance can be given that future legislation, court decisions, administrative regulations, rulings or administrative pronouncements will not significantly modify the requirements summarized herein. Any such

23

CONFIDENTIAL

changes may be retroactive and may thereby apply to transactions entered into prior to the date of their enactment or release. Since the application of the relevant statutory provisions of ERISA and the Code is highly dependent on the specific facts and circumstances relating to each Plan, it is the responsibility of the appropriate fiduciary of each Plan to determine that an investment in an interest in the Partnership is consistent with all of the applicable requirements of ERISA and Section 4975 of the Code (and the regulations, rulings and administrative pronouncements relating thereto) under the facts and circumstances of the particular Plan. **Any fiduciary of the Plan considering an investment in an interest in the Partnership should consult with its tax and legal advisors regarding these matters prior to making such investment.**

24

CONFIDENTIAL

GCC – SEC 0000163

GCCSAC00000132