# **EXHIBIT 11**

```
                                                               1
 1               C O N F I D E N T I A L

 2            UNITED STATES BANKRUPTCY COURT
              SOUTHERN DISTRICT OF NEW YORK
 3

 4      --------------------------------x
        In Re:
 5
        BERNARD L. MADOFF INVESTMENT            Adv.Pro.No.
 6      SECURITIES LLC,                         08-01789(BRL)

 7                  Debtor.
        --------------------------------x
 8      IRVING H. PICARD, Trustee for the
        Liquidation of Bernard L. Madoff
 9      Investment Securities LLC,

10                  Plaintiff,                  Adv.Pro.No.
                                                09-1182(BRL)
11                  v.

12      J. EZRA MERKIN, GABRIEL CAPITAL,
        L.P., ARIEL FUND LTD., ASCOT
13      PARTNERS, L.P., GABRIEL CAPITAL
        CORPORATION,
14
                    Defendants.
15      --------------------------------x

16

17            DEPOSITION of MICHAEL E. AUTERA, JR.,

18      as taken by and before NANCY C. BENDISH, Certified

19      Court Reporter, RMR, CRR and Notary Public of the

20      States of New York and New Jersey, at the offices of

21      BAKER & HOSTETLER, 45 Rockefeller Plaza, New York,

22      New York on Monday, September 26, 2011, commencing

23      at 9:43 a.m.

24

25
```

```
                                                               61
 1              C O N F I D E N T I A L

 2            UNITED STATES BANKRUPTCY COURT
              SOUTHERN DISTRICT OF NEW YORK
 3

 4    ---------------------------------x
      In Re:
 5
      BERNARD L. MADOFF INVESTMENT          Adv.Pro.No.
 6    SECURITIES LLC,                       08-01789(BR L)

 7              Debtor.
      ---------------------------------x
 8    IRVING H. PICARD, Trustee for the     VOLUME II
      Liquidation of Bernard L. Madoff
 9    Investment Securities LLC,

10              Plaintiff,                  Adv.Pro.No.
                                            09-1182(BRL)
11              v.

12    J. EZRA MERKIN, GABRIEL CAPITAL,
      L.P., ARIEL FUND LTD., ASCOT
13    PARTNERS, L.P., GABRIEL CAPITAL
      CORPORATION,
14
                Defendants.
15    ---------------------------------x

16

17              DEPOSITION of MICHAEL E. AUTERA, JR.,

18    as taken by and before NANCY C. BENDISH, Certified

19    Court Reporter, RMR, CRR and Notary Public of the

20    States of New York and New Jersey, at the offices of

21    BAKER & HOSTETLER, 45 Rockefeller Plaza, New York,

22    New York on Wednesday, October 19, 2011, commencing

23    at 10:32 a.m.

24

25
```

84

1  don't recall doing that.
2       Q.    Do you recall when you would receive
3  confirmations of the execution of those options?
4       A.    We would receive trade confirmations
5  with the trade tickets on the equities.
6       Q.    And how soon after the trade date
7  would you receive those?
8       A.    It would vary over the course of
9  time.
10      Q.    Can you give me a range?
11      A.    Early on was several days.  Could be
12 a week.  Later and more recently it was just a few
13 days after trade date.
14      Q.    By a few days, would that be three?
15      A.    Could be two, three days.
16      Q.    Well, was it ever more quick than
17 two?
18      A.    Not that I recall.
19      Q.    How would you be able to verify if
20 those options were done contemporaneously with the
21 equities if you received the confirmations no sooner
22 than two days afterwards?
23      A.    Again, I don't recall ever checking
24 that, but compare the trade dates would be the only
25 way from the trade confirmation.

| | |
|---|---|
| BLMIS v. MERKIN, et al. | CONFIDENTIAL    MICHAEL E. AUTERA, JR. 10/19/11 |

91

```
 1   document.  With that correction to some of his
 2   testimony, you can answer the question.
 3        A.     I believe I would have read the final
 4   document.
 5        Q.     On page 4, the final paragraph reads:
 6   "The partnership will act as a master fund for Ascot
 7   Fund Limited, the offshore fund, an exempted company
 8   incorporated in the Cayman Islands, which will
 9   invest substantially all of its capital in the
10   partnership."
11               Did you have any involvement in the
12   decision to change the arrangement for Ascot Fund
13   into a master feeder with Ascot Partners?
14               MR. MENNITT:  Objection to the form.
15        A.     I recall discussing the structure to
16   change to a feeder structure.
17        Q.     Who did you have those discussions
18   with?
19        A.     I recall discussing it with the
20   outside counsel and I recall speaking to Mr. Merkin
21   about it.
22        Q.     I don't want to know the substance of
23   conversations, of course, with outside counsel, but
24   I would like to know what was said with Mr. Merkin.
25        A.     I don't recall specifically, but I
```

BENDISH REPORTING, INC.
877.404.2193

BLMIS v. MERKIN, et al.        CONFIDENTIAL    MICHAEL E. AUTERA, JR. 10/19/11

92

1  think we talked about the benefits of creating a
2  feeder structure as opposed to having Ascot Fund and
3  Ascot Partners investing separately.
4      Q.    And what are those benefits?
5      A.    Since the two funds were being
6  managed pari passu by Mr. Merkin, it made sense to
7  have one fund invest into the other that would cut
8  back on the level of paperwork, the trading,
9  reporting and things like that.
10     Q.    So, in other words, it was more
11 efficient to accomplish the same trading for the
12 Ascot, the two Ascot funds, if there were a master
13 feeder relationship?
14     A.    Again, I don't know about the
15 trading, but it was more efficient from the
16 operations and back office standpoint, which was
17 where my involvement was.
18     Q.    Do you know if the same consideration
19 was given to Gabriel Partners and Ariel Fund?  If
20 there was consideration to change them to a master
21 feeder arrangement?
22     A.    Not that I recall.
23     Q.    I ask you to turn to page 14.  And
24 the second full paragraph is entitled "Limited
25 Partner Withdrawals" and I ask you to read that

BENDISH REPORTING, INC.
877.404.2193

BLMIS v. MERKIN, et al.          CONFIDENTIAL    MICHAEL E. AUTERA, JR. 10/19/11

113

1    Q.    If they wired it, where would the
2  wire go to?
3    A.    For Ascot Partners it would go to
4  Ascot's brokerage account at Morgan Stanley &
5  Company.
6    Q.    And a check, where would that go?
7    A.    The check would come to Gabriel
8  Capital Corp. Gabriel Capital Corp. would deposit
9  it at the Morgan Stanley account.
10   Q.    For the portion of Ascot that was
11  invested through BLMIS, take me through the steps of
12  how that money went from the Morgan Stanley
13  brokerage account to the custody of BLMIS.
14   A.    Mr. Merkin would decide the amount
15  of -- if there was a change, he decided to make a
16  change, whether to add money to the Madoff account
17  or take money out of the Madoff account, that
18  decision would be made, and he would let me know and
19  I would send a wire request. If the money was going
20  to the Madoff account, generally I would send a
21  request to Morgan Stanley asking them to wire funds
22  to Morgan Stanley -- to Madoff. And if Madoff, if
23  we were taking money out of the Madoff account, I
24  would send instructions to the Madoff firm asking,
25  telling them -- instructing them to wire the funds

BENDISH REPORTING, INC.
877.404.2193

BLMIS v. MERKIN, et al.        CONFIDENTIAL     MICHAEL E. AUTERA, JR. 10/19/11

114

1  to Morgan Stanley.
2       Q.      The wires to and from BLMIS, do you
3  recall where that account was?  Where the money
4  actually would have gone?
5       A.      My recollection is that Madoff
6  Securities used a bank account at JPMorgan.
7       Q.      And within the account, turning to
8  the Morgan Stanley brokerage account, was there any
9  segregation of assets there for investors in Ascot
10 versus Ariel and Gabriel, or was it all just one
11 fund -- one account?
12      A.      I'm sorry, just ask that again,
13 please.
14      Q.      Sure.  You said for investors in
15 Ascot that whether it was by wire or check being
16 deposited, eventually the money ends up in a
17 brokerage account at Morgan Stanley, correct?
18      A.      Yes.
19      Q.      Is that also the case for investors
20 in Ariel and Gabriel?
21      A.      Yes.
22      Q.      And specifically is it correct then
23 that investors in Ariel and Gabriel, their money
24 either by wire or check would find its way into the
25 Morgan Stanley brokerage account?

BENDISH REPORTING, INC.
877.404.2193

BLMIS v. MERKIN, et al.　　　　　CONFIDENTIAL　　MICHAEL E. AUTERA, JR. 10/19/11

202

1　　　　　　　Can you look at the last page, which
2　we'll represent appears to be from, I think
3　Bloomberg -- from Bloomberg and appears -- and it's
4　reflective of the open high/low and close of this
5　equity for the range of the 16th to the 22nd.  You
6　see where I'm picking that range from?  Do you see
7　that?
8　　　　A.　　Say the range again, I'm sorry.
9　　　　Q.　　February 16th through 22nd.
10　　　　A.　　Yes.
11　　　　Q.　　If you look at the trade date of what
12　is stated on this confirm being the 16th, can you
13　tell us what it says is the high and low for that
14　date.
15　　　　A.　　This screen shot says the high is 52
16　dollars and the low is $50.25.
17　　　　Q.　　Okay.  And the price on this monthly
18　statement, however, says a price higher than the
19　high reflected on the screen shot, correct?  Because
20　it says $52.59?
21　　　　A.　　That's correct.
22　　　　Q.　　I thank you for all your time and
23　your answers today and last time and working through
24　these documents with us.
25　　　　　　　Was there ever an analysis done of

BENDISH REPORTING, INC.
877.404.2193

| | BLMIS v. MERKIN, et al. | CONFIDENTIAL | MICHAEL E. AUTERA, JR. 10/19/11 |

203

```
 1   the kind that this is reflective of where there was
 2   comparison of -- let me back up.
 3               Did anybody ever bring to your
 4   attention the fact that the monthly statement prices
 5   and confirm prices are prices outside of the daily
 6   trading range for the stock?
 7        A.     No.
 8        Q.     Appears 2002 to 2008?
 9        A.     No.
10        Q.     Anyone ever discuss the fact that
11   there are either confirmations or monthly statements
12   reflective of prices that were outside the daily
13   high/low trade range?
14        A.     For that period?
15        Q.     For that period for any of the three
16   funds that we've been talking about.
17        A.     Until 2008?
18        Q.     Yes.
19        A.     No.
20        Q.     Was there ever discussion with
21   Mr. Merkin that you're aware of where he indicated
22   knowledge about that?
23        A.     No.
24        Q.     Have you or Mr. Merkin to your
25   knowledge ever directed anyone to do an analysis of
```

BENDISH REPORTING, INC.
877.404.2193

| | |
|---|---|
| BLMIS v. MERKIN, et al. | CONFIDENTIAL    MICHAEL E. AUTERA, JR. 10/19/11 |

204

```
 1   this kind of actually pulling out a Bloomberg and
 2   doing -- of seeing whether or not what was on a
 3   monthly statement or confirm was in fact within the
 4   range of that particular day and as reflected on
 5   those statements?
 6           A.    I'm not aware of anyone directed to
 7   do that.
 8           Q.    And you're not aware of anyone in
 9   fact doing that; would that be fair?
10           A.    I do recall that there was someone
11   who came in and looked at the Madoff activity and
12   analyzed it.
13           Q.    I'm asking about someone came in,
14   someone from outside GCC?
15           A.    Yes.
16           Q.    I'm asking at any point in time if
17   anyone at GCC ever in fact do the analysis to see
18   whether or not what was reflected as the price for a
19   purchase or sale as being in fact within the daily
20   high or low of -- high and low of that particular
21   security?
22           A.    Not that I'm aware of.
23           Q.    Now, if you would, you said that
24   someone had come in and looked at that.  When was
25   that, and who was that?
```

BENDISH REPORTING, INC.
877.404.2193

BLMIS v. MERKIN, et al.    CONFIDENTIAL    MICHAEL E. AUTERA, JR. 10/19/11

227

1            MR. MENNITT:  We will reserve our
2    questions for the time of trial.
3            MR. GOTTHOFFER:  I'll reserve, but it
4    may be not for the time of trial, but may be pending
5    document production, some of the other things we've
6    been discussing, but nothing at this time.
7            MS. MALASKA:  Nothing now but we
8    reserve our right to ask questions later.
9            (Deposition concluded 4:15 p.m.)
10                   -o0o-
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

BENDISH REPORTING, INC.
877.404.2193