# EXHIBIT 12

# GABRIEL CAPITAL GROUP

450 Park Avenue
New York, NY 10022
TELEPHONE 212 838-7200
FACSIMILE  212 838-9603

November 11, 2002

Dear Investor:

We write this letter to apprise you of changes in the governance of Ascot Fund Limited ("Ascot Fund"). One change requires the consent of participating shareholders. Notice of the other changes is being provided to you for your information only. These changes will become effective at December 31, 2002 and we ask you to complete the attached Consent Form and Subscription Documents and return them to us by November 29, 2002 (the "Notice Date"). Only investors from whom we receive both of these documents by the Notice Date will be permitted to remain in the Fund.

Notice of Changes

Until now Ascot Fund and its domestic counterpart, Ascot Partners, L.P. ("Ascot Partners"), have operated as stand-alone funds with substantially identical investment strategies. We have decided to unify these two funds into a single master-feeder structure. Master-feeder structures are commonly established when paired domestic and offshore funds are managed pari passu. The change in our structure will result in Ascot Partners acting as our central investing mechanism, with Ascot Fund investing as a limited partner in Ascot Partners. This change will enable us to do all trades in the name of Ascot Partners rather than constantly splitting trades between Ascot Partners and Ascot Fund, and will make the entire process cheaper and more efficient. The change will also provide us with added flexibility under the securities laws, which limit the number of funds or accounts to which we may provide investment advice. The new structure should not have any substantive impact on the investors in either Ascot Fund or Ascot Partners. Ascot Fund will remain an offshore entity, domiciled in the Cayman Islands, with the same Directors, Registrar and Transfer Agent, and auditors as before, and with no meaningful changes to its investment program or risk profile.

As part of this new master-feeder structure, the Investment Advisory Agreement between Ascot Fund and Gabriel Capital Corporation (the "Investment Advisory Agreement") will be terminated. The fees that had been payable by Ascot Fund (and indirectly by its investors) will no longer be paid to Gabriel Capital Corporation, but instead will be paid to Ascot Partners.

Because Ascot Fund will no longer employ Gabriel Capital Corporation as Investment Advisor (and, instead, will invest its assets in Ascot Partners), the Memorandum and Articles of Association of Ascot Fund will be amended to delete (i) the requirement that I, or an entity I control, be retained as the Investment Advisor and (ii) references to the Investment Advisor. Be assured that I will continue to direct the management and investing of Ascot Partners as its sole General Partner. Once again, we do not anticipate that these changes will have any substantive impact on investors in either the offshore or domestic fund.

EXHIBIT
TRUSTEE-8
10-9-12

November 11, 2002
Page Two

Ascot Fund's performance speaks for itself. What investors may be less aware of is that the expenses of running Ascot Fund over the past few years have been encroaching to a greater and greater extent into the 1% investment advisory fee. It has always been our practice to absorb the expenses of Ascot Fund ourselves rather than to pass them along to investors. Faced with rising expenses, we intend to continue the practice of absorbing expenses while instituting a moderate increase in the investment advisory fee.

Specifically, we will raise Ascot Partners' investment advisory fee by 50 basis points, from 1.0% to 1.5%. As a result of the conversion to a master-feeder structure and this increase of the investment advisory fee by Ascot Partners, we will effectively be raising the investment advisory fee paid by Ascot Fund as well. Going forward, as now, Ascot Fund will not be allocated overhead expenses and there will be no incentive fee. I believe this is a fair level of compensation for the risk that we take and the results that have been achieved.

Changes Requiring Consent

The new master-feeder structure and the termination of the Investment Advisory Agreement will, under the provisions of Article 40(3) of the Articles of Association of Ascot Fund (the "Articles"), require the redemption of all Participating Shares (those shares held by every shareholder). It is proposed that the Articles be amended to remove this requirement and also to make other necessary changes to facilitate the new structure. As this will constitute an amendment to the class rights of the Participating Shares, under Article 18 of the Articles, this amendment will require the written consent of the holders of the Participating Shares representing at least three-quarters of the total net asset value of all Participating Shares issued as of December 31, 2002 (the "Mandatory Redemption Date").

Documentation

A copy of the revised Prospectus for Ascot Fund as well as the amended Memorandum and Articles of Association to reflect the new master-feeder structure and the termination of the Investment Advisory Agreement will be forwarded to you when they are completed. In addition, we will forward you a copy of the Amended and Restated Limited Partnership Agreement of Ascot Partners, which reflects the change in the investment advisory fee.

Since Ascot Partners operates pursuant to Section 3(c)(7) of the Investment Company Act of 1940, as amended (the "Company Act"), upon conversion to the proposed master-feeder structure, each of the investors in the Ascot Fund will need to be a "qualified purchaser" as defined under the Company Act. Those investors in the Ascot Fund that are unable, or unwilling, to make the qualified purchaser representations will have their shares redeemed on the Mandatory Redemption Date.

CONFIDENTIAL

November 11, 2002
Page Three

We enclose with this letter a subscription document for your completion. The subscription document has been revised to cover the changes discussed in this letter, including a "qualified purchaser" questionnaire, and also to comply with the anti-money laundering and "know your client" requirements of the USA Patriot Act, a statute passed by the United States Congress in the aftermath of the events of September 11, 2001. Finally, we have also enclosed a consent form. **We ask that both documents, fully completed and executed, be returned to us no later than the Notice Date of November 29, 2002.** Again, only investors from whom we receive these documents will be permitted to remain in the Fund. Those shareholders who do not consent by the Notice Date will have their shares redeemed as of December 31, 2002, in accordance with Ascot Fund's redemption provisions.

Please do not hesitate to contact either Michael Autera or me if you have any questions regarding the changes. Thank you for your interest in Ascot Fund over the past years. We look forward to continuing our partnership as joint investors in Ascot Partners in the future.

Very truly yours,
Gabriel Capital Corp.

J. Ezra Merkin
President

CONFIDENTIAL

CONSENT FORM

I, the undersigned, as holder of Participating Shares in Ascot Fund Limited (the "Fund"), have received a letter from J. Ezra Merkin dated November 11, 2002 notifying investors as to certain proposed changes to the structure of the Fund (the "Letter to Investors"). I understand that the Fund will no longer operate as a stand-alone fund but instead will operate under a master-feeder structure with Ascot Partners, L.P. acting as the central investing mechanism in which the Fund will invest as a limited partner (the "New Structure"). I also understand that the agreement entered into between the Fund and the Investment Advisor (Gabriel Capital Corporation) (the "Investment Advisory Agreement"), will be terminated as part of the New Structure.

I confirm that I wish to remain as an investor in the Fund under the New Structure and do hereby provide my consent, in accordance with Article 18 of the Fund's Articles, to the proposed removal of the requirement for redemption of Participating Shares upon termination of the Investment Advisory Agreement and to the other necessary changes that will need to be made to the Articles of Association (the "Articles") to reflect the New Structure.

I understand that if the Fund does not receive my properly executed Consent Form by November 29, 2002 that my shares in the Fund will be redeemed as of December 31, 2002.

Dated: _____, 2002

For Corporate, Partnership                          For Individual Shareholders
or Other Entity Shareholders


_____                      _____
Print Name of Shareholder                          Print Name of Shareholder


By:_____                      _____
    Authorized Signatory                           Signature


_____
Print Name of Authorized Signatory


_____
Title of Authorized Signatory

CONFIDENTIAL

GCC-NYAG  0031105