# EXHIBIT 15

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---

THE PEOPLE OF THE STATE OF NEW YORK,      :

         Plaintiff,      :

     -against-      :     Index No. 450879/2009

J. EZRA MERKIN and GABRIEL CAPITAL      :
CORPORATION,

         Defendants,      :

         and      :

ARIEL FUND LIMITED, ASCOT FUND LIMITED,      :
ASCOT PARTNERS, L.P., GABRIEL ALTERNATIVE      :
ASSETS, LLC, GABRIEL ASSETS, LLC, and
GABRIEL CAPITAL, L.P.,      :

         Relief Defendants.      :

---

**F I L E D**
**Jul 14 2009**
NEW YORK
COUNTY CLERK'S OFFICE

---

## STIPULATION AND ORDER APPOINTING RECEIVER
## FOR ASCOT PARTNERS, L.P.

     **WHEREAS** this matter has come before this Court upon the stipulation of all the parties in the above-captioned action to appoint a receiver as to Ascot Partners L.P. ("Ascot Partners", the "Fund" or the "Receivership Defendant"), to effect certain changes, as listed below, in the structure and personnel of the Receivership Defendant, for the purpose of marshalling and preserving its assets, for the ultimate distribution of the proceeds to the investors of the Fund, and the other responsibilities delineated in this Order; and,

     **WHEREAS** Ascot Partners and Ascot Fund Limited ("Ascot Fund") are parties in this action for the purpose of ensuring the jurisdiction of the Court, and have voluntarily consented to the jurisdiction of the Court solely in the above-captioned action; and,

**WHEREAS** the Receivership Defendant has voluntarily consented to the appointment of a receiver of the Receivership Defendant hereunder, and the organizational changes set forth herein; and,

**WHEREAS** the Defendants deny any wrongdoing but have voluntarily consented to the appointment of a receiver of the Receivership Defendant hereunder, and the organizational changes set forth herein; and,

**WHEREAS** Plaintiff has brought an action alleging violations of New York's Martin Act and Executive Law, and is seeking equitable remedies for such violations to include the appointment of an equity receiver; and,

**WHEREAS** the Court has equitable powers to appoint a receiver in a New York Executive Law section 63(12) action, and pursuant to New York General Business Law section 353-a, to preserve the assets of the Receivership Defendant during the pendency of this action; and,

**WHEREAS** the Court has the power to appoint a replacement control party pursuant to Section 17-803(a) of the Delaware Revised Uniform Limited Partnership Act ("DRULPA"), to wind up the affairs of Ascot Partners; and,

**WHEREAS** the Court finds that, based on the record in these proceedings and the submissions of the parties, the appointment of a receiver as to the Receivership Defendant in this action is appropriate; and,

**WHEREAS** the Ascot Fund was created and structured to act as a feeder fund into Ascot Partners, and thus turned over its investors' funds to Ascot Partners for investment, and effectively delegated its investment decisions to Ascot Partners; and,

**WHEREAS** this Court has personal jurisdiction over the Relief Defendants.

2

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

David B. Pitofsky (the "Receiver"), of Goodwin Procter LLP, is hereby appointed to serve without bond as receiver for the estate of the Receivership Defendant.

## I.

### General Powers and Duties of Receiver

A.  This Order is intended to vest in the Receiver all right, title and authority heretofore vested in the General Partner or senior-most executive or control party, as applicable, of the Receivership Defendant, to the fullest extent permitted by law. The Receiver shall have all powers, authorities, rights and privileges heretofore possessed by the officers, directors, managers, managing partners and general partners of the Receivership Defendant under applicable state, federal and foreign law; by the governing charters, bylaws, articles and/or agreements in addition to all powers and authority of a receiver at equity; and all powers conferred upon a receiver or liquidating trustee, as applicable, including by the provisions of: New York Civil Practice Law and Rules, Article 64; New York General Business Law Section 353-a; and Section 17-803 of the DRULPA, as applicable.

B.  The Receiver shall have power to retain, dismiss or replace any and all trustees, officers, managers, employees, investment advisors, accountants, attorneys and other agents of the Receivership Defendant. Such persons and entities shall have no authority with respect to the Receivership Defendant's operations or assets, except to the extent expressly granted by the Receiver. The Receiver shall assume control of the operations and assets of the Receivership Defendant and shall pursue and preserve all of its claims and defenses.

3

C.    In addition to the specific powers of receivership granted herein, the Receiver shall possess and exercise all of the rights and powers held under applicable law by the Managing Partner and General Partner of Ascot Partners.

D.    Persons currently holding a position with the Receivership Defendant shall possess authority to act on behalf of the Receivership Defendant unless expressly revoked by the Receiver.

E.    The Receiver shall have all powers, authorities, rights and privileges accorded to receivers under the laws of the State of New York. Subject to the specific provisions in Sections II through XIII, below, the Receiver, without limitation, shall also have the following general powers and duties:

1.    To use reasonable efforts to determine the nature, location and value of all property interests of the Receivership Defendant, including, but not limited to, monies, funds, securities, credits, effects, goods, chattels, lands, premises, leases, claims, rights and other assets, together with all rents, profits, dividends, interest or other income attributable thereto, of whatever kind, which the Receivership Defendant owns, possesses, has a beneficial interest in, or control directly or indirectly ("Receivership Property" or, collectively, the "Receivership Estate");

2.    To take custody, control and possession of all Receivership Property and records relevant thereto from the Receivership Defendant; to sue for and collect, recover, receive and take into possession from third parties all Receivership Property and Receivership Defendant's records relevant thereto;

3.    To manage, control, operate, wind-down and maintain the Receivership Estate, to segregate and not commingle the Fund's income and proceeds in advance of any distribution, and hold in his possession, custody and control all Receivership Property, pending further Order of this Court;

4.    To use Receivership Property for the benefit of the Receivership Estate, making payments and disbursements and incurring expenses as may be necessary or advisable in the ordinary course of business in discharging his duties as Receiver;

4

5.  To take any action which, prior to the entry of this Order, could have been taken by the officers, directors, partners, managers, trustees and agents of the Receivership Defendant;

6.  To engage and employ persons in his discretion to assist in carrying out his duties and responsibilities hereunder, including, but not limited to, accountants, attorneys, securities traders, registered representatives, financial or business advisers, liquidating agents, real estate agents, forensic experts, brokers, traders or auctioneers;

7.  To take such action as the Receiver determines for the preservation of Receivership Property or to prevent the dissipation or concealment of Receivership Property;

8.  To bring such legal actions based on law or equity in any state, federal, or foreign court as the Receiver deems necessary or appropriate in discharging his duties as Receiver;

9.  To pursue, resist and defend all suits, actions, claims and demands which may now be pending or which may be brought by or asserted against the Receivership Estate; and,

10. To take such other action as is consistent with this Order, the organizational documents of the Receivership Defendant or as may be approved by this Court.

F.    The Receiver, without limitation, also shall have the authority for and in the name of the Receivership Defendant to take such action, as he deems necessary or advisable, to sell or otherwise dispose of the securities, financial instruments and assets owned for investment purposes by or on behalf of the Receivership Defendant (all such items being called herein a "Security" or "Securities"), to make follow-on investments, and to refinance, hedge or otherwise act to protect the value of and return on the Receivership Defendant's Securities until such Securities are liquidated. Such authority shall include, without limitation, the power to directly or through third party managers:

1.  possess, transfer, mortgage, pledge or otherwise deal in, and to exercise all rights, powers, privileges and other incidents of ownership or possession with respect to, the Securities;

5

2.     lend, with or without security, any of the Securities including by entering into reverse repurchase agreements;

3.     borrow or raise funds, including by entering into repurchase agreements and secure the payment of obligations of the Receivership Defendant by mortgage upon, or pledge or hypothecation of, all or any part of the property of the Receivership Defendant;

4.     engage in hedging transactions including, without limitation, currency forwards, currency futures, spot trades, interest rate swaps and credit default swaps;

5.     open, maintain and close accounts, including margin, custodial and foreign currency accounts, with brokers, which power shall include the authority to issue all instructions and authorizations to brokers regarding the Securities and/or money therein; to pay, or authorize the payment and reimbursement of, brokerage commissions that may be in excess of the lowest rates available that are paid to brokers who execute transactions for the account of the Receivership Defendant and who supply or pay (or rebate a portion of the Receivership Defendant's brokerage commissions to the Receivership Defendant for payment of) for research or execution services utilized by the Receivership Defendant; provided that the Receivership Defendant does not pay a rate of commissions in excess of what is competitively available from comparable brokerage firms for comparable services, taking into account various factors, including commission rates, reliability, financial responsibility, strength of the broker and ability of the broker to efficiently execute transactions, the broker's facilities and the broker's provision or payment of the cost of research and other services or property that are of benefit to the Receivership Defendant or the Receiver;

6.     open, maintain and close accounts, including custodial accounts, with banks, including banks located outside the United States, and draw checks;

7.     enter into arrangements with brokers to open "average price" accounts and allocate the Securities or other assets so sold, on an average price basis, among such accounts;

8.     do any and all acts on behalf of the Receivership Defendant, and exercise all rights of the Receivership Defendant, with respect to the Receivership Defendant's interest in any person, including, without limitation, the voting of Securities, participation in arrangements with creditors, the institution and settlement or compromise of suits and administrative proceedings and other like or similar matters; and

9.     to authorize any member, employee or other agent of Goodwin Procter or GCC to act for and on behalf of the Receivership Defendant in all matters incidental to the foregoing.

**II.**

### Receivership Defendant's Structure, Personnel and Agreement Changes

A.     The Defendants, the Ascot Fund and the Receivership Defendant, by their counsel, have taken prior to the date of this Order or, if not already taken, have agreed to take all necessary and appropriate steps to seek to effectuate changes in the organizational structure, personnel and agreements of Defendants, the Ascot Fund and the Receivership Defendant to ensure the Receiver fully controls, manages, directs and operates the Receivership Defendant. These steps include arranging for the following:

1.     An amendment to the Ascot Partners Limited Partnership Agreement, by which J. Ezra Merkin will resign as General Partner and Managing Partner and convert his economic interest in Ascot Partners to a limited partnership interest. In addition, Ascot Partners shall cause to be filed with the Secretary of State of the State of Delaware an amendment to Ascot Partners' Certificate of Limited Partnership reflecting the withdrawal by J. Ezra Merkin as General Partner.

2.     The appointment of the Receiver as Liquidating Trustee of Ascot Partners by order of this Court, pursuant to section 17-803 of DRULPA.

3.     An agreement with Morgan Stanley that it will not terminate its prime broker agreement with Ascot Partners or impose adverse terms as a result of the appointment of the Receiver as Liquidating Trustee.

B.     In the event that the Receiver deems it necessary that additional actions be taken to ensure the Receiver fully controls, manages, directs and operates the Receivership Defendant, the Defendants, the Ascot Fund and the Receivership Defendant agree to take all steps the Receiver may reasonably direct to effectuate such purpose.

C.     The aforementioned steps are supplemental, and do not derogate from, but only supplement the authority of the Receiver. To the extent any of the steps require a vote of partners in the Fund under Fund agreements, the absence of such vote will not derogate from the

7

management authority vested otherwise in the Receiver by this Order. The failure of the Defendants, the Ascot Fund, the Receivership Defendant or any court or regulatory authority, to take or complete any of the aforementioned steps shall have no impact on the authority or powers of the Receiver under the laws of the State of New York.

     D.    The Ascot Fund and its officers, directors, agents, managers, general partners, managing partners, trustees, attorneys, accountants and employees, as well as those acting in their place, agree not to make any distribution, whether in cash or in kind, to any shareholder of the Ascot Fund without providing 30 days written notice to the Receiver.

     E.    Subject to the direction of the Receiver, GCC will provide continuity of operations, internal record-keeping, financial accounting and back-office functions for the Receivership Defendant. The Receiver will cause the Fund to reimburse GCC for its expenses incurred in providing such services (including compensation of GCC's employees other than J. Ezra Merkin). The Receiver will have sole discretion to retain or dismiss GCC.

     F.    J. Ezra Merkin agrees to provide assistance as reasonably requested by the Receiver without compensation, for the benefit of the investors in the Fund.

     G.    J. Ezra Merkin and GCC will not receive any other fees from the Receivership Defendant or Ascot Fund, including, without limitation, any management, incentive, profit-sharing or deferred fee under any prior agreement, but without prejudice as to the claims of the parties concerning any fees, including, without limitation, any management, incentive, profit-sharing or deferred fee claimed to have been earned or accrued prior to the appointment of the Receiver.

H.    Nothing in this Order shall abrogate the Court's powers under the CPLR or its

equitable powers.  The parties hereto acknowledge and stipulate to the Court's power to modify

or supplement this Order, for cause, at any time.

## III.

### Access to Information

A.    The past and/or present officers, directors, agents, managers, general partners,

managing partners, trustees, attorneys, accountants and employees of the Receivership

Defendant, as well as those acting in their place, are hereby ordered and directed to turn over to

the Receiver forthwith all paper and electronic information of, and/or relating to, the

Receivership Defendant, and all Receivership Property, in such manner as the Receiver may

specify; such information shall include but not be limited to books, records, documents, accounts

and all other instruments and papers.

B.    The Receivership Defendant's past and/or present officers, directors, agents,

attorneys, managers, shareholders, employees, accountants, debtors, creditors, managing

partners, and general and limited partners, and other appropriate persons or entities shall produce

all documents as required by the Receiver regarding the business of the Receivership Defendant,

or any other matter relevant to the operation or administration of the receivership or the

collection of funds due to the Receivership Defendant, in such manner as the Receiver may

specify.  In the event that the Receiver deems it necessary to require the appearance of the

aforementioned persons or entities or their documents, the Receiver shall make its discovery

requests in accordance with the New York Civil Practice Law and Rules.

## IV.

### Access to Books, Records and Accounts

A.      The Receiver is authorized to take immediate possession of all assets, bank accounts or other financial accounts, books and records and all other documents or instruments of the Receivership Defendant. All persons and entities having control, custody or possession of any Receivership Property are hereby directed to turn such property over to the Receiver, in such manner as the Receiver may specify.

B.      The Receivership Defendant, as well as its agents, servants, employees, attorneys, any persons acting for or on behalf of the Receivership Defendant, and any persons receiving notice of this Order by personal service, facsimile transmission or otherwise, having possession of the property, business, books, records, accounts or assets of the Receivership Defendant, are hereby directed to deliver the same to the Receiver, his agents and/or employees, in such manner as the Receiver may specify. Nothing in this paragraph shall impinge on a person's rights to assert any applicable privilege.

C.      All banks, brokerage firms, financial institutions, and other persons or entities which have possession, custody or control of any assets or funds held by, in the name of, or for the benefit of, directly or indirectly, the Receivership Defendant, that receive actual notice of this Order by personal service, facsimile transmission or otherwise shall, in such manner as the Receiver may specify:

1.      Not liquidate, transfer, sell, convey or otherwise transfer any assets, securities, funds, or accounts in the name of or for the benefit of the Receivership Defendant except upon instructions from the Receiver or as may be delegated by the Receiver;

2.      Except as permitted in existing agreements, not exercise any form of set-off, alleged set-off, lien, or any form of self-help whatsoever, or refuse to transfer any funds or assets to the Receiver's control without the permission of this Court or the Receiver;

3.   Within ten business days of receipt of that notice, file with the Court and serve on the Receiver and the New York Attorney General a certified statement setting forth, with respect to each such account or other asset, the balance in the account or description of the assets as of the close of business on the date of receipt of the notice; and,

4.   Cooperate expeditiously in the transfer of funds, other assets and accounts to the Receiver or at the direction of the Receiver.

D.   J. Ezra Merkin and GCC have a continuing obligation to turn over to the Receiver all documents of the Receivership Defendant and all non-privileged documents (where the right to waive the privilege does not belong to the Receivership Defendant) related to the Receivership Defendant, including, without limitation, all mail, correspondence, and account statements, in such manner as the Receiver may specify.

## V.

## Access to Real and Personal Property

A.   The Receiver is authorized to take immediate possession of all personal property of the Receivership Defendant, in such manner as the Receiver may specify, wherever located, including but not limited to bank records and accounts, savings records and accounts, brokerage records and accounts, certificates of deposit, stocks, bonds, debentures, and other securities and investments, contracts, mortgages, furniture, office supplies and equipment.

B.   The Receiver is authorized to take immediate possession of all real property of the Receivership Defendant, wherever located, including but not limited to all ownership and leasehold interests and fixtures.  Upon receiving actual notice of this Order by personal service, facsimile transmission or otherwise, all persons other than law enforcement officials acting within the course and scope of their official duties, are (without the express written permission of the Receiver) prohibited from:  (a) entering such premises; (b) removing anything from such premises; or, (c) destroying, concealing or erasing anything on such premises.

C.    The Receiver is authorized to open all mail directed to or received by or at the offices or post office boxes of the Receivership Defendant, and to inspect all mail directed to, or received by or on behalf of, the Receivership Defendant and opened prior to the entry of this Order, to determine whether items or information therein fall within the mandates of this Order.

## VI.

### Notice to Third Parties

A.    The Receiver shall promptly give notice of his appointment to all known officers, directors, agents, employees, shareholders, creditors, debtors, managers and general and limited partners of the Receivership Defendant and Ascot Fund, as the Receiver deems necessary or advisable to effectuate the operation of the receivership.

B.    All persons and entities owing any obligation, debt, or distribution with respect to an ownership interest to the Receivership Defendant shall, until further ordered by this Court, pay all such obligations in accordance with the terms thereof to the Receiver and its receipt for such payments shall have the same force and effect as if the Receivership Defendant had received such payment.

C.    In furtherance of his responsibilities in this matter, the Receiver is authorized to communicate with, and/or serve this Order upon, any person, entity or government office that he deems appropriate to inform them of the status of this matter and/or the financial condition of the Receivership Estate.  All government offices which maintain public files of security interests in real and personal property shall record this Order upon the request of the Receiver or the New York Attorney General.

D.    The Receiver is authorized to instruct the United States Postmaster to hold and/or reroute mail which is related to the business, operations or activities of the Receivership Defendant, including all mail addressed to, or for the benefit of, the Receivership Defendant.

E.    The Receiver is authorized to assert, prosecute and/or negotiate any claim under

any insurance policy held by or issued on behalf of the Receivership Defendant, or their officers,

directors, agents, employees or trustees, and to take any and all appropriate steps in connection

with such policies.

## VII.

### Injunction Against Interference with Receiver

A.    The Receivership Defendant and all persons receiving notice of this Order by

personal service, facsimile or otherwise, are hereby restrained and enjoined from directly or

indirectly taking any action or causing any action to be taken, without the express written

agreement of the Receiver, which would:

1.    Interfere with the Receiver's efforts to take control, possession, or
management of any Receivership Property; such prohibited actions
include but are not limited to, using self-help or executing or issuing or
causing the execution or issuance of any court attachment, subpoena,
replevin, execution, or other process for the purpose of impounding or
taking possession of or interfering with or creating or enforcing a lien
upon any Receivership Property;

2.    Hinder, obstruct or otherwise interfere with the Receiver in the
performance of his duties; such prohibited actions include but are not
limited to, concealing, destroying or altering records or information;

3.    Dissipate or otherwise diminish the value of any Receivership Property,
including but not limited to, releasing claims or disposing, transferring,
exchanging, assigning or in any way conveying any Receivership
Property, enforcing judgments, assessments or claims against any
Receivership Property or the Receivership Defendant, attempting to
modify, cancel, terminate, call, extinguish, revoke or accelerate the due
date of any lease, loan, mortgage, indebtedness, security agreement or
other agreement executed by the Receivership Defendant or which
otherwise affects any Receivership Property, provided, however, that
nothing above shall restrict the existing authority provided for in
agreements between the Receivership Defendant and investment managers
or sub-managers (other than J. Ezra Merkin or GCC), and provided further
that third parties may rely upon the instruction of GCC and its personnel if
so authorized by the Receiver; or,

13

  ·4.      Interfere with or harass the Receiver, or interfere in any manner with the jurisdiction of this Court over the Receivership Estate.

B.      If at any time any person or entity fails, appears to fail, or indicates an intention to fail, to comply in any way with the terms of this Order, the Receiver may seek immediate assistance of the New York Attorney General, and also may seek further Order of this Court, on such expedited notice as the Receiver deems appropriate in the circumstances, in aid of enforcement of this Order.

## VIII.

### Investigate and Prosecute Claims

A.      The Receiver is authorized and empowered to investigate, prosecute, defend, intervene in or otherwise participate in, compromise, and/or adjust actions in any state, federal or foreign court or proceeding of any kind as may in his sole discretion be advisable or proper to recover and/or conserve Receivership Property.

B.      The Receiver is authorized and empowered to:

    1.      Investigate the manner in which the financial and business affairs of the Receivership Defendant were conducted and to institute such actions and legal proceedings, for the benefit and on behalf of the Receivership Estate, as the Receiver deems necessary and appropriate;

    2.      Seek, among other legal and equitable relief, the imposition of constructive trusts, disgorgement of profits, asset turnover, avoidance of fraudulent transfers, rescission and restitution, collection of debts, and such other relief as may be necessary to enforce this Order; and,

    3.      Defend, compromise or settle legal actions in which the Receivership Defendant or the Receiver is a party; except, however, in actions where the Receivership Defendant is a nominal party, as in certain foreclosure actions where the action does not affect a claim against or adversely affect the value of any Receivership Property, the Receiver may file appropriate pleadings in the Receiver's discretion.

C.      The Receiver hereby holds, and is therefore empowered to waive, all privileges, including the attorney-client privilege, held by the Receivership Defendant. Notwithstanding

14

any other term or provision of this Stipulation and Order, nothing herein shall constitute or

require the waiver of any claim of privilege or work-product protection of J. Ezra Merkin or

GCC.

## IX.

### Bankruptcy Filing

A.    The Receiver may file voluntary petitions for relief under Title 11 of the United

States Code (the "Bankruptcy Code") for the Receivership Defendant.  If the Receivership

Defendant is placed in bankruptcy proceedings, the Receiver, as the General Partner of Ascot

Partner shall become, and shall be empowered to operate, the Receivership Estate as a debtor in

possession unless otherwise ordered by the Bankruptcy Court.

B.    The Receiver is authorized to take any action which he deems to be necessary and

appropriate in order to file for relief under the Bankruptcy Code, including the execution of all

necessary partnership resolutions or directions.

## X.

### Liability of Receiver

A.    The Receiver shall not be required to post bond or give an undertaking of any

type in connection with his appointment in this matter.

B.    The Receiver and Goodwin Procter shall owe fiduciary duties to the Fund in

accordance with law.  Any claim against the Receiver or Goodwin Procter based upon acts or

omissions committed under authority of this Order shall be asserted only in this action or with

prior leave of the Court.  Neither the Receiver nor Goodwin Procter shall have any liability

unless the Court determines that the Receiver or Goodwin Procter engaged in gross negligence,

willful misconduct or acted in bad faith or committed a material breach of fiduciary duty.

15

C.    The appointment of the Receiver is a permanent appointment, subject, in all

respects, to the power of the Court to remove and replace the Receiver for cause. The Receiver

and his agents, acting within the scope of such agency, are entitled to rely on all outstanding

rules of law and Orders of this Court, and on the advice of counsel and the advice of financial

accounting and other experts, and will not be liable for an act or omission that is made in good

faith reliance on such outstanding rules of law, Orders of the Court or professional advice.

D.    The Receiver may resign, including if the Receiver determines that insufficient

funds exist for him to continue to fulfill his duties as set forth in this Order. In the event the

Receiver decides to resign, the resignation shall not be effective until the Court appoints a

successor. The Receiver shall then follow such instructions as the Court may provide.

E.    The Receivership Defendant shall indemnify and hold harmless the Receiver and

Goodwin Procter with respect to any or all claims, rights and causes of actions of every type or

nature whatsoever based upon acts or omissions committed under authority of this Order, unless

this Court finds the Receiver or Goodwin Procter engaged in gross negligence, willful

misconduct or bad faith or committed a material breach of fiduciary duty. The Receivership

Defendant shall further indemnify the Receiver and Goodwin Procter for, and advance

reasonable costs and attorneys' fees in defending against, any claims against the Receiver or

Goodwin Procter based upon acts or omissions committed under authority of this Order;

provided, however, to the extent this Court finds that the Receiver or Goodwin Procter engaged

in gross negligence, willful misconduct or bad faith or committed a material breach of fiduciary

duty, the Receiver or Goodwin Procter shall immediately repay any advanced defense costs or

attorneys' fees.

16

F.      Any indemnity claim of any nature asserted by Defendant J. Ezra Merkin, his

agents or affiliates (including in respect of the fees and disbursements of legal counsel

representing any of the foregoing) against the Receivership Defendant or its assets shall be

subordinated in all respects to the right of the Receiver and Goodwin Procter to recover in full all

amounts of any nature due to the Receiver and Goodwin Procter under this Order (including

pursuant to the indemnity provisions of this Order); provided, however, that such subordination

shall not be construed to be a waiver by Defendant J. Ezra Merkin, his agents or affiliates, of the

right to seek indemnification from the Receivership Defendant in accordance with the terms of

the agreements and other documents relating to the Receivership Defendant, which claims shall

not be adversely affected by this stipulation and order.

## XI.

### Fees, Expenses and Accountings

A.      The Receiver need not obtain Court approval prior to the disbursement of

Receivership Funds for expenses that the Receiver deems advantageous to the orderly

administration and operation of the receivership.  Further, prior Court approval is not required

for payments of applicable federal, state or local taxes.

B.      Subject to Paragraph C immediately below, the Receiver is authorized to solicit

persons and entities ("Retained Personnel"), including, without limitation, Goodwin Procter, and

such outside legal counsel, accounting and financial professionals as he deems appropriate, to

assist him in carrying out the duties and responsibilities described in this Order.

C.      Retained Personnel are entitled to reasonable compensation and expense

reimbursement from the Receivership Estate.  Such compensation shall be in amounts

commensurate with the services performed by the Retained Personnel.

D.      Goodwin Procter's blended hourly billing rate for all attorneys in 2009 shall be

$510. Fees for paraprofessionals, administrative support and Retained Personnel will be billed at

their regular rates. The Receiver shall submit Receiver, Goodwin Procter, and Retained

Personnel fees and expenses to the Court for review and approval. Fees for Retained Personnel

will be paid in the amounts billed to the Receiver, without any mark-up. The Receiver may, in

his discretion, pay invoices for fees and expenses of the Receiver, Goodwin Procter, and

Retained Personnel monthly, subject to review on 10 days' notice by the Attorney General, and

absent notice to the Receiver of any objection by the New York Attorney General within such 10

day period. Amounts paid to the Receiver, Goodwin Procter and for other Retained Personnel

shall be included in the regular reports to the Investor Committee, and all invoice payments shall

be made subject to final review and approval by the Court, on notice to the Investor Committee,

no less than every four months.

E.      In preparation for entry of this Order, the Receiver and Goodwin Procter

expended multiple billable hours, and incurred professional fees payable to professionals that,

upon entry of this Order, may become Retained Personnel. The Receiver shall submit to the

New York Attorney General invoices for all of his and Goodwin Procter's billable hours, and for

all fees and expenses incurred by him in connection with preparation and entry of this Order,

within five business days following entry of the Order. The New York Attorney General shall

review such invoices and inform the Receiver of any objections to payment thereof within five

business days following the Receiver's submission of such invoices. In the absence of any

timely objection by the New York Attorney General, the fees and expenses stated in such

invoices shall then be due and payable.

F.    The Receiver shall have the authority to make all payments due and payable for all periods prior to the date hereof to all banks, brokerage firms, financial institutions and other persons or entities that have engaged in business with the Receivership Defendant prior to the date hereof or from this date forward.

G.    The Receiver shall not, without the prior approval of this Court, on notice: (i) make any distributions to the limited partners of the Receivership Defendant, including any such distributions to J. Ezra Merkin in such capacity, or (ii) make any payments of any sort to or for the account of J. Ezra Merkin.

## XII.

### Investor Committee

The Receiver shall provide regular reports to, and receive input from, an "Investor Committee" comprised of investors in the Fund selected by the Receiver, in consultation with Plaintiff, from among investors who volunteer to advise and consult with the Receiver without compensation, for the benefit of the Fund, and in order to provide transparency to investors in the Fund, including information regarding the liquidation of the assets of the Fund. The Receiver shall provide regular reports concerning: the financial conditions and operations of the Receivership Defendant; proposed budgets, if any; and fees and expenses of the Receiver and Retained Personnel. Prior to any distribution to investors, or payment of any kind to or for the benefit of J. Ezra Merkin (apart from payments made pursuant to II-D), the Receiver shall provide reasonable notice to the Investor Committee. At the appropriate time, the Receiver shall provide a plan of wind-down and distribution.

19

## XIII.

### Effective Date

The authority and powers of the Receiver shall vest and the Receivership over the
Receivership Defendant shall take effect immediately upon the date of the Order by the Court.

Dated: June 25, 2009
New York, New York

ANDREW M. CUOMO
Attorney General of the State of New York
120 Broadway, 23rd Floor
New York, New York 10271
(212) 416-8198

By: _____

DAVID A. MARKOWITZ, *Chief*
Investor Protection Bureau
*Counsel for Plaintiff*

J. EZRA MERKIN
GABRIEL CAPITAL CORPORATION

By: _____

DECHERT LLP
Andrew J. Levander
1095 Avenue of the Americas
New York, New York 10036
(212) 698-3500
*Counsel for Defendants*

## XIII.

### Effective Date

The authority and powers of the Receiver shall vest and the Receivership over the

Receivership Defendant shall take effect immediately upon the date of the Order by the Court.

Dated:  June ___, 2009
        New York, New York

ANDREW M. CUOMO
Attorney General of the State of New York
120 Broadway, 23rd Floor
New York, New York 10271
(212) 416-8198

By:    _____

DAVID A. MARKOWITZ, *Chief*
Investor Protection Bureau
*Counsel for Plaintiff*

J. EZRA MERKIN
GABRIEL CAPITAL CORPORATION

By:    _____

DECHERT LLP
Andrew J. Levander
1095 Avenue of the Americas
New York, New York 10036
(212) 698-3500
*Counsel for Defendants*

20

ASCOT FUND LIMITED
ASCOT PARTNERS L.P.

By:

SCHULTE ROTH & ZABEL LLP
Howard Schiffman
919 Third Avenue
New York, New York 10022
(212) 756-2000
*Counsel for Relief Defendants*

IT IS SO ORDERED, this 30th day of June 2009,

**F I L E D**

**Jul 14 2009**

NEW YORK
COUNTY CLERK'S OFFICE

RICHARD B. LOWE III
JUSTICE, SUPREME COURT
NEW YORK COUNTY

21