# EXHIBIT 18

COPY NO.: _____
NAME: _____

January 2003

PROSPECTUS

ASCOT FUND LIMITED

500,000 Redeemable Participating Preference Shares

Issued in Series

     Ascot Fund Limited (the "Fund") is offering its Redeemable Participating Preference Shares (the "Participating Shares") to Qualified Purchasers (as defined herein) at an offering price of $1,000 per share in minimum denominations of $500,000, and integral multiples of $1,000 for investments above such amount. The Participating Shares will be offered in series. Each subscriber of Participating Shares will be issued a different series. Additional subscriptions of Participating Shares by the same person will also be issued in a different series.

     The Fund is a Cayman Islands exempted company incorporated with limited liability under the provisions of The Companies Law (2002 Revision) of the Cayman Islands and was formed for the purpose of carrying on the business of an open-ended investment company. The Fund invests substantially all of its capital through a "master-feeder" structure in Ascot Partners, L.P., a Delaware limited partnership formed in August, 1992 (the "Master Fund"), which primarily engages in the practice of index arbitrage, convertible arbitrage and options arbitrage, in which individual or baskets of securities are purchased and/or sold against related securities such as index options or individual stock options. These strategies are used to take advantage of price disparities among related securities. The Master Fund may also make investments in private debt claims and publicly traded securities of bankrupt and distressed companies and in risk arbitrage, as well as make indirect investments, including investments in private investment partnerships, closed end funds and other pooled investment vehicles which engage in similar investment strategies (collectively, "Other Investment Entities"). The Master Fund may on occasion itself initiate or actively participate in acquisition or restructuring transactions or in proxy contests. The Master Fund also may invest in the securities of corporations believed to be fundamentally undervalued. The Master Fund may invest in restricted securities.

     **AN INVESTMENT IN THE FUND INVOLVES A HIGH DEGREE OF RISK. SEE "RISK FACTORS."**

     **THE PARTICIPATING SHARES HAVE NOT BEEN REGISTERED UNDER THE UNITED STATES SECURITIES ACT OF 1933, AS AMENDED (THE "SECURITIES ACT") AND ACCORDINGLY ARE NOT BEING OFFERED AND MAY NOT BE SOLD IN THE UNITED STATES OR ITS TERRITORIES OR POSSESSIONS**

9218367.11

CONFIDENTIAL

CONFIDENTIAL



GCC (NYU) 0015877

BS00020958

OR TO NATIONALS OR RESIDENTS THEREOF EXCEPT PURSUANT TO AN EXEMPTION TO THE REGISTRATION REQUIREMENTS OF THE SECURITIES ACT. THE PARTICIPATING SHARES MAY NOT BE OFFERED TO THE PUBLIC IN THE CAYMAN ISLANDS. THE PARTICIPATING SHARES WILL NOT BE LISTED ON ANY EXCHANGE AND THE FURTHER SALE OR DISTRIBUTION OF PARTICIPATING SHARES WILL BE RESTRICTED. THERE IS NO PUBLIC MARKET FOR PARTICIPATING SHARES AND NONE IS LIKELY TO DEVELOP.

THE PURCHASE OF PARTICIPATING SHARES IS SUITABLE ONLY FOR SOPHISTICATED INVESTORS WHO ARE NON-U.S. PERSONS OR PERMITTED U.S. PERSONS, WHO DO NOT REQUIRE IMMEDIATE LIQUIDITY FOR THEIR INVESTMENTS, FOR WHOM AN INVESTMENT IN THE FUND DOES NOT CONSTITUTE A COMPLETE INVESTMENT PROGRAM AND WHO FULLY UNDERSTAND AND ARE WILLING TO ASSUME THE RISKS INVOLVED IN THE MASTER FUND'S INVESTMENT PROGRAM. SUBSCRIBERS FOR SHARES MUST REPRESENT THAT THEY ARE ACQUIRING THE SHARES FOR INVESTMENT. THE TRANSFER OF SHARES IS SUBJECT TO LIMITATIONS IMPOSED BY THE FUND'S ARTICLES OF ASSOCIATION (THE "ARTICLES").

NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR TO MAKE ANY REPRESENTATIONS OTHER THAN AS PROVIDED IN THIS PROSPECTUS IN CONNECTION WITH THE OFFER CONTAINED IN THIS PROSPECTUS, AND IF GIVEN OR MADE, SUCH INFORMATION OR REPRESENTATIONS MUST NOT BE RELIED UPON AS HAVING BEEN AUTHORIZED BY THE FUND. THIS PROSPECTUS DOES NOT CONSTITUTE AN OFFER OR SOLICITATION TO ANYONE IN ANY JURISDICTION IN WHICH SUCH OFFER OR SOLICITATION IS NOT AUTHORIZED OR TO ANY PERSON TO WHOM IT IS UNLAWFUL TO MAKE SUCH OFFER OR SOLICITATION, AND MAY BE USED ONLY IN CONNECTION WITH THE OFFERING OF PARTICIPATING SHARES AS CONTEMPLATED HEREIN. THIS PROSPECTUS CONSTITUTES AN OFFER ONLY TO THE PERSON WHOSE NAME APPEARS ON THE FIRST PAGE HEREOF.

NEITHER THE DELIVERY OF THIS PROSPECTUS NOR THE ISSUE OF PARTICIPATING SHARES SHALL IMPLY THAT THERE HAS BEEN NO CHANGE IN THE AFFAIRS OF THE FUND SINCE THE DATE OF THIS PROSPECTUS AND NO OTHER REPRESENTATION CONCERNING THEM SHALL BE DEEMED TO HAVE BEEN MADE OR AUTHORIZED BY THE FUND OR OTHERWISE ON ITS BEHALF. THE INFORMATION CONTAINED HEREIN IS ACCURATE ONLY AS OF THE DATE OF THIS PROSPECTUS. THE INFORMATION IS SUBJECT TO CHANGE AT ANY TIME.

PRIOR TO THE ACQUISITION BY ANY PROSPECTIVE INVESTOR OF ANY PARTICIPATING SHARE BEING OFFERED HEREBY, SUCH PROSPECTIVE INVESTOR AND/OR HIS OR HER REPRESENTATIVES, IF ANY, WILL HAVE AN OPPORTUNITY TO ASK QUESTIONS OF, AND RECEIVE ANSWERS FROM, REPRESENTATIVES OF THE FUND AND THE MANAGING PARTNER (AS

9218367.11

CONFIDENTIAL

GCC (NYU) 0015878

CONFIDENTIAL

BS00020959

DEFINED HEREIN) CONCERNING THE TERMS AND CONDITIONS OF THIS OFFERING AND TO OBTAIN FROM THEM ANY ADDITIONAL INFORMATION NECESSARY TO VERIFY THE ACCURACY OF INFORMATION CONTAINED IN THIS PROSPECTUS, TO THE EXTENT THAT THEY POSSESS SUCH INFORMATION OR CAN ACQUIRE IT WITHOUT UNREASONABLE EFFORT OR EXPENSE. PROSPECTIVE INVESTORS ARE URGED TO REQUEST ADDITIONAL INFORMATION THEY MAY CONSIDER NECESSARY IN MAKING AN INFORMED INVESTMENT DECISION. A PROSPECTIVE INVESTOR SHOULD NOT SUBSCRIBE FOR PARTICIPATING SHARES OF THE FUND UNLESS SATISFIED THAT THE INVESTOR HAS ASKED FOR AND RECEIVED ALL INFORMATION THAT WOULD ENABLE HIM TO EVALUATE THE MERITS AND RISKS OF THE PROPOSED INVESTMENT.

ANY REPRODUCTION OR DISTRIBUTION OF THIS PROSPECTUS, IN WHOLE OR IN PART, OR THE DISCLOSURE OF ANY OF ITS CONTENTS, OTHER THAN TO THE PROSPECTIVE INVESTOR'S FINANCIAL, TAX OR LEGAL ADVISORS MAY VIOLATE APPLICABLE SECURITIES LAWS AND IS PROHIBITED WITHOUT THE EXPRESS PRIOR WRITTEN CONSENT OF THE FUND'S REGISTRAR AND TRANSFER AGENT. BY ACCEPTING DELIVERY OF THIS PROSPECTUS, THE OFFEREE AGREES TO RETURN IT AND ALL ACCOMPANYING DOCUMENTS PROMPTLY UPON REACHING A DECISION NOT TO MAKE AN INVESTMENT IN THE FUND OR IN THE EVENT ITS SUBSCRIPTION IS REJECTED.

PROSPECTIVE INVESTORS SHOULD READ THIS PROSPECTUS CAREFULLY BEFORE MAKING ANY INVESTMENT DECISIONS REGARDING THE FUND. PROSPECTIVE INVESTORS ARE NOT TO CONSTRUE THE CONTENTS OF THIS PROSPECTUS AS LEGAL, INVESTMENT, TAX OR OTHER ADVICE. PERSONS INTERESTED IN PURCHASING THE PARTICIPATING SHARES OFFERED HEREBY SHOULD INFORM THEMSELVES AS TO THE TAX CONSEQUENCES, FOREIGN EXCHANGE CONTROL REGULATIONS AND OTHER LEGAL REQUIREMENTS IN THEIR OWN COUNTRIES WHICH MAY BE APPLICABLE TO THE PURCHASE, HOLDING, EXCHANGE OR SALE OF SUCH SHARES.

EACH PROSPECTIVE INVESTOR MUST RELY UPON HIS OR HER OWN REPRESENTATIVES, INCLUDING HIS OR HER OWN LEGAL ADVISORS, TAX ADVISORS AND ACCOUNTANTS, AS TO LEGAL, ECONOMIC, TAX AND RELATED ASPECTS OF THE INVESTMENT DESCRIBED HEREIN AND AS TO ITS SUITABILITY FOR SUCH INVESTOR. UPON REQUEST TO THE MANAGING PARTNER, A COPY OF THE CONFIDENTIAL OFFERING MEMORANDUM FOR THE MASTER FUND WHICH PROVIDES FURTHER DETAILS AS TO THE MASTER FUND WILL BE MADE AVAILABLE TO PROSPECTIVE INVESTORS.

The following is a brief description of the Fund and of the Participating Shares. The descriptions herein do not purport to be complete and are qualified in their entirety by reference to the terms of the Articles of the Fund and the agreements described below which the

9218367.11                          -3-

**CONFIDENTIAL**                                  GCC (NYU) 0015879

CONFIDENTIAL                                       BS00020960

Fund has entered into with respect to the sale of the Participating Shares. A copy of the Articles is available upon request and will be provided to each prospective investor prior to the execution by such investor of a subscription application. All expressions of dollars ($) in this Prospectus relate to United States currency.

## THE FUND

The Fund was incorporated in the Cayman Islands on February 10, 1992 and is an exempted company under The Companies Law (2002 Revision) of the Cayman Islands. The Fund commenced operations on February 20, 1992 and has a fiscal year ending December 31. The Fund invests substantially all of its capital through a "master-feeder" structure in the Master Fund. The Articles provide for the Fund to undertake business as a corporate open-ended investment fund.

Substantially all of the assets of the Fund are derived from the allotment and issue of Participating Shares and from borrowings secured by the Fund's assets. Holders of Participating Shares share substantially all of the net appreciation in the value of the Fund's assets. Participating Shares are issued in series and are non-voting. See "Participating Shares" below. All of the voting shares of the Fund are owned by Gabriel Capital Corporation. See "Voting Shares" below. Such voting shares do not entitle Gabriel Capital Corporation to participate in the net appreciation of the Fund. A portion of the Managing Partner's compensation is in the form of a percentage of the annual increase in the Fund's net asset value.

## INVESTMENT POLICY

The general purpose of the Fund through its investment in the Master Fund is to achieve above average capital appreciation of its assets while seeking to reduce risk where deemed appropriate by the Managing Partner. The Master Fund's investment philosophy is to employ its assets in order to seek out discrepancies between market valuation and intrinsic worth. The Master Fund engages primarily in the practice of index arbitrage, convertible arbitrage and options arbitrage, in which individual or baskets of securities are purchased and/or sold against related securities such as index options or individual stock options. These strategies are used to take advantage of price disparities among related securities. The Master Fund also may make investments in private debt claims and publicly traded securities of bankrupt and distressed companies and in risk arbitrage as well as make indirect investments, including investments in private investment partnerships, closed-end funds, and other pooled investment vehicles which engage in similar investment strategies (collectively "Other Investment Entities"). The Master Fund may on occasion itself initiate or actively participate in acquisition or restructuring transactions or in proxy contests. The Master Fund may also invest in the securities of corporations believed to be fundamentally undervalued. The Master Fund may invest in restricted securities.

When the Master Fund engages in indirect investments through Other Investment Entities, fees, including performance-based fees, may be payable to such pooled vehicles by the Master Fund, in addition to the fees payable to the Managing Partner. In such cases, the Managing Partner will retain overall investment responsibility for the portfolio of the Master Fund (although not the investment decisions of any independent money managers managing

9218367.11                              -4-

**CONFIDENTIAL**

CONFIDENTIAL

**GCC (NYU) 0015880**

BS00020961

Other Investment Entities). Such arrangements are subject to periodic review by the Managing Partner and are terminable at reasonable intervals in the Managing Partner's discretion. The Master Fund may withdraw from or invest in different investment partnerships and terminate or enter into new investment advisory agreements without prior notice to or the consent of the investors in the Fund. See "Risk Factors – Independent Money Managers."

The Managing Partner of the Master Fund implements the Master Fund's investment policies and objectives. See "Investment Advice." The Managing Partner may often employ strategies involving derivative securities like options, futures and convertibles, which may present more favorable risk-reward relationships. The Managing Partner uses hedging devices frequently and engages in short sales. There can be no assurance that any of the hoped-for benefits of the described Managing Partner's strategies will be realized. Moreover, the Managing Partner reserves the right to deviate from the foregoing approach to the extent he deems appropriate. Notwithstanding the foregoing, the Master Fund will not trade in commodities and futures, including financial futures, or in options on commodities and futures, unless the Managing Partner registers as a commodity pool operator under the Commodity Exchange Act, as amended (the "CEA"), or the Master Fund otherwise avails itself of an exemption from registration. The Managing Partner does not currently intend to use futures or options thereon, but reserves the right to do so in the future. If the Managing Partner registers as a commodity pool operator or if the Master Fund otherwise becomes eligible to trade commodities and futures, then the Master Fund shall be permitted to trade in commodities and futures. To the extent that the Master Fund trades in commodities and futures and related options, the Fund will incur additional risks. Because of the low margin deposits normally required in futures trading, the same risks as those resulting from leverage described below will be particularly present. In addition, due to market and regulatory factors commodities and futures and related options may be less liquid than other types of investments.

The Managing Partner reserves the right to alter or modify some or all of the Master Fund's investment strategies in light of available investment opportunities (subject to limitations on the purchase and sale of futures and commodities) to take advantage of changing market conditions, where the Managing Partner, in his sole discretion, concludes that such alterations or modifications are consistent with the goal of maximizing returns to investors, subject to what the Managing Partner, in his sole discretion, considers an acceptable level or risk.

The Master Fund will execute its trades through unaffiliated brokers, who may be selected on a basis other than that which will necessarily result in the lowest cost for each trade. Clearing, settlement and custodial services will be provided by one or more unaffiliated brokerage firms.

The Master Fund may borrow money and use credit to purchase or carry its investments.

<u>MANAGING PARTNER OF THE MASTER FUND</u>

The Managing Partner of the Master Fund is J. Ezra Merkin. Mr. Merkin is currently the Managing and General Partner of Gabriel Capital, L.P. and is involved in managing several offshore funds. Mr. Merkin was formerly the Managing and General Partner of Ariel

9218367.11                                          -5-

**CONFIDENTIAL**

CONFIDENTIAL

**GCC (NYU) 0015881**

BS00020962

Capital, L.P. from January 1, 1989 until December 31, 1991. Prior to that, Mr. Merkin served as Managing Partner of Gotham Capital, L.P., an investment partnership, from 1985 to 1988. Mr. Merkin was associated with Halcyon Investments from 1982 to 1985 and with the law firm of Milbank, Tweed, Hadley & McCloy from 1979 to 1982. Mr. Merkin graduated from Columbia College magna cum laude and is a member of Phi Beta Kappa. He is an honors graduate of Harvard Law School. Mr. Merkin currently serves as chairman of the investment committees of two private endowment funds.

## RISK FACTORS

PARTICIPATION BY INVESTORS IN THIS FUND SHOULD BE CONSIDERED A HIGH RISK INVESTMENT. THE FOLLOWING SPECIAL CONSIDERATIONS AND RISKS TOGETHER WITH OTHER MATTERS SET FORTH ELSEWHERE IN THIS PROSPECTUS SHOULD BE CONSIDERED CAREFULLY, BUT ARE NOT INTENDED TO BE AN EXHAUSTIVE LISTING OF ALL POTENTIAL RISKS ASSOCIATED WITH AN INVESTMENT IN THE FUND.

Fund Risks

      Success Dependent on Managing Partner. The success of the Master Fund depends primarily upon the Managing Partner of the Master Fund. The death or incapacity of J. Ezra Merkin, the Managing Partner, would result in the required redemption of all Participating Shares in issue at the redemption price upon such date as the Fund's Board of Directors (defined below) may in its discretion determine (as described in the Fund's Articles).

      Lack of Management and Investment Control by Investors. Holders of Participating Shares will take no part in the management, control or operation of the Fund and consequently, the Master Fund. Subscribers of Participating Shares must rely on the Managing Partner with respect to the management and investment decisions of the Master Fund. The Master Fund's limited partnership agreement (the "Partnership Agreement", as amended from time to time) gives the Managing Partner broad authority to expand the Master Fund's activities within the areas described herein and therein.

      Limitations on Redemptions. Participating Shares may be redeemed quarterly as of the last business day of each March, June, September and December upon 30 days' prior written notice to the Fund. Participating Shares may also be redeemed at the discretion of the Board of Directors of the Fund. Distribution of cash in respect of all or any part of a holder's redeemed Participating Shares need not be made until 90 days after the last day of such quarter.

      If the Fund receives redemption requests for more than one-fourth of the net asset value of all Participating Shares of all series then outstanding on a certain Valuation Date (as defined in the Articles) then the Fund may scale down the number of Participating Shares to be redeemed in response to each request to such extent as may be necessary to ensure that the foregoing limit is not exceeded and shall carry forward for redemption to the next Valuation Date the balance of each request and so on to the succeeding Valuation Date until each request has been complied with in full.

**CONFIDENTIAL**

CONFIDENTIAL

**GCC (NYU) 0015882**

BS00020963

Required Redemptions.  The Participating Shares of any shareholder may be compulsorily redeemed by the Board of Directors of the Fund and such shareholder may be required to withdraw from the Fund, as of the last day of any calendar month, if the Board of Directors determines that such termination and withdrawal are in the best interests of the Fund. The Board of Directors shall give 30 days' prior written notice of any such determination to such shareholder.

Business Risks

The principal activity of the Master Fund is the practice of index arbitrage, convertible arbitrage and options arbitrage as well as investing in other securities.  Because of the inherently speculative nature of these activities, the results of the Master Fund's activities may be expected to fluctuate from period to period.  There can be no assurance that the Master Fund's investments will generate a profit and that substantial losses will not be incurred.

Independent Money Managers.  The Managing Partner may delegate investment discretion for all or a portion of the Master Fund's funds to money managers, other than the Managing Partner, or make investments with Other Investment Entities.  Consequently, the success of the Master Fund may also be dependent upon other money managers or investment advisors to Other Investment Entities.  Although the Managing Partner will exercise reasonable care in selecting such independent money managers or Other Investment Entities and will monitor the results of those money managers and Other Investment Entities, the Managing Partner may not have custody over the funds invested with the other money managers or with Other Investment Entities.  Hence, the actions or inactions on the part of other money managers or the investment advisors to Other Investment Entities may affect the profitability of the Master Fund.  The risk of loss of the funds invested with other money managers or with Other Investment Entities may not be insured by any insurance company, bonding company, governmental agency, or other entity and the Managing Partner is not liable for any such loss. Independent money managers and managers of Other Investment Entities selected by the Managing Partner may receive compensation based on the performance of their investments. Performance-based compensation usually is calculated on a basis which includes unrealized appreciation of the Master Fund's assets, and may be greater than if such compensation were based solely on realized gains.  Further, a particular independent money manager or manager of an Other Investment Entity may receive incentive compensation in respect of its portfolio for a period even though the Master Fund's overall portfolio depreciated during such period.  The independent money managers and Other Investment Entities may trade wholly independently of one another and may at times hold economically offsetting positions.

Options Transactions.  The Master Fund may engage from time to time in various types of options transactions, including hedging and arbitrage in options on securities.  This activity is designed to reduce the risks attendant in short-selling and in taking long positions in certain transactions and may involve stock options on a registered option exchange and offsetting transactions in the underlying stock, or offsetting transactions in one or more options for stock. The Master Fund also may take positions in options on stock of companies which may, in the judgment of the Managing Partner, be potential acquisition candidates in merger, exchange offer or cash tender offer transactions.  If the potential acquisition candidate does not become the subject of a merger, exchange offer or cash tender offer, the Master Fund may suffer a loss.

9218367.11                                              -7-

**CONFIDENTIAL**                                    GCC (NYU) 0015883

CONFIDENTIAL                                                    BS00020964

When the Master Fund purchases an option, it must pay the price of the option and transaction charges to the broker effecting the transaction. If the option is exercised by the Master Fund, the total cost of exercising the option may be more than the brokerage costs which would have been payable had the underlying security been purchased directly. If the option expires, the Master Fund will lose the cost of the option. The ability to trade in or exercise options may be restricted in the event that trading in the underlying issue becomes restricted. Options trading may also be illiquid with respect to contracts with extended expirations.

In certain transactions the Master Fund may not be "hedged" against market fluctuations or, in liquidation situations, the hedge may not accurately value the assets of the company being liquidated. This can result in losses, even if the proposed transaction is consummated.

Arbitrage Transactions. The Master Fund may purchase securities at prices often only slightly below the anticipated value to be paid or exchanged for such securities in a merger, exchange offer or cash tender offer which the Managing Partner determines is probable and substantially above the prices at which such securities traded immediately prior to announcement of the merger, exchange offer or cash tender offer. If the proposed transaction appears likely not to be consummated or in fact is not consummated or is delayed, the market price of the security to be tendered or exchanged may be expected to decline sharply, which would result in a loss to the Master Fund. Moreover, where a security to be issued in a merger or exchange offer has been sold short as a hedge in the expectation that the short position will be covered by delivery of such security when issued, failure of the merger or exchange offer to be consummated may force an arbitrageur to cover his short position in the market at a higher price than his short sale, with a resulting loss.

Offerors in tender or exchange offers customarily reserve the right to cancel such offers in the above circumstances and in a variety of other circumstances, including an insufficient response from shareholders of the target company. Even if the defensive activities of a target company or the actions of regulatory authorities fail to defeat an acquisition, they may result in significant delays, during which the Master Fund's capital will be committed to the transaction and significant interest charges on funds borrowed to finance its arbitrage activities in connection with the transaction may be incurred.

Bankruptcy Situations. Investments in debt claims and the securities of companies that have filed for bankruptcy (under U.S. law or the laws of foreign jurisdictions) may be made at various stages in the bankruptcy process based on the Managing Partner's judgment that there is sufficient profit potential. The Master Fund may invest in the debt instruments which have been issued by foreign countries or in the debt instruments of defaulted obligors where the instruments are guaranteed by a foreign government. An entity in this situation generally is highly leveraged and substantial doubts exist as to whether the entity will be able to service its debt (i.e., pay interest for borrowed money when interest payments are due) or retire its debt upon maturity. These investments are generally illiquid and have a high risk profile.

In liquidations (both in and out of bankruptcy) and other forms of corporate reorganization, there exists the risk that the reorganization either will be unsuccessful, will be

9218367.11                                    -8-

**CONFIDENTIAL**

CONFIDENTIAL

**GCC (NYU) 0015884**

BS00020965

delayed or will result in a distribution of cash or a new security the value of which will be less than the purchase price to the Master Fund of the security in respect of which such distribution is received. It may be difficult to obtain accurate information concerning a company in financial distress, with the result that analysis and valuation are especially difficult. The market for securities of such companies tends to be less liquid.

Other Transactions. The Master Fund may also make certain purchases of securities as to which no extraordinary corporate transaction has been announced. Such purchases may include securities which the Managing Partner believes to be undervalued, or where a significant position in the securities of the particular company has been taken by one or more other persons or where other companies in the same or a related industry have been the subject of acquisition attempts. If the Master Fund purchases securities in anticipation of an acquisition attempt or reorganization, and an acquisition attempt or reorganization does not in fact occur, the Master Fund may sell the securities at a substantial loss. Further, when securities are purchased in anticipation of an acquisition attempt or reorganization, a substantial period of time may elapse between the Master Fund's purchase of the securities and the acquisition attempt or reorganization. During this period, a portion of the Master Fund's funds would be committed to the securities purchased, and the Master Fund may finance such purchases with borrowed funds on which it will have to pay interest.

Proxy Contests. The Master Fund may invest in securities of a company which is the subject of a proxy contest in the expectation that new management will be able to improve the company's performance or effect a sale or liquidation of its assets so that the price of the subject company's securities will increase to a price above that paid for the securities by the Master Fund. If the incumbent management of the subject company is not defeated or if new management is unable to improve the company's performance or sell or liquidate the company, the market price of the securities of the subject company will typically fall to a price below that paid for the securities by the Master Fund, causing the Master Fund to suffer a loss. In addition, even upon the successful completion of a proxy contest, the market price of the securities of the subject company may not rise to a price above that paid for the securities by the Master Fund.

Commodities. The Managing Partner may decide to register as a commodity pool operator under the CEA and seek certain exemptive letters thereunder, so as to enable the Master Fund to trade in commodities and financial futures and related options. Because of the very low margin deposits normally required in futures trading, the risks resulting from leverage described below are particularly present in such trading. In addition, due to market and regulatory factors, futures may be less liquid than other types of investments.

Short Selling. Where the Master Fund determines that it is probable that a transaction will not be consummated, the Master Fund may sell the securities of the target company short, at prices below the announced price for the securities in the transaction. If the transaction (or another transaction, such as a "defensive" merger or a friendly tender offer) is consummated, the Master Fund may be forced to cover the short position in the market at a higher price than the short sale price, with a resulting loss. There is in theory no limit to the loss which the Master Fund could incur in covering a short sale.

9218367.11

-9-

**CONFIDENTIAL**

CONFIDENTIAL

**GCC (NYU) 0015885**

BS00020966

Market Risk and Lack of Diversification. Substantial risks are involved in the acquisition or disposition of securities. Securities and their issuers are affected by, among other things: changing supply and demand; federal, state and governmental laws, regulations and enforcement activities; trade, fiscal and monetary programs and policies; and national and international political and economic developments. The concentration of assets in particular types of investments could subject the assets of the Master Fund to increased volatility. The Master Fund's investment plan does not constitute a balanced investment plan. The securities in which the Master Fund may invest may be regarded as of high risk. Such securities are subject to a number of risk factors, including market volatility, creditworthiness of the issuer, liquidity of the secondary trading market, and availability of market quotations.

Leverage. The Master Fund is permitted to borrow funds in order to be able to make additional investments. The use of leverage may increase the Master Fund's risk of loss of capital or securities, as relatively small price movement in an instrument may result in immediate and substantial loss. Consequently, fluctuations in the value of the Master Fund's portfolio will have a significant effect in relation to the Master Fund's capital. The amount of borrowings which the Master Fund may have outstanding at any time may be large in relation to its capital. In addition, the level of interest rates generally, and the rates at which the Master Fund can borrow in particular, will be an expense of the Master Fund and therefore affect the operating results of the Master Fund.

Derivatives. Derivative securities, in addition to being highly volatile and speculative, may be internally leveraged such that each percentage change in interest rates will have a multiple effect on the derivative security. Certain positions therefore may be subject to wide and sudden fluctuations in market value, with a resulting fluctuation in the amount of profits and losses. Certain transactions in derivatives may expose the Master Fund to potential losses that exceed the amount originally invested by the Master Fund. Repurchase agreements are structured so that the Master Fund sells securities to another party, usually a bank or other securities firm, and agrees to repurchase them at an agreed-upon price and date. A repurchase agreement is the equivalent of borrowing money and pledging securities as collateral.

Lending of Portfolio Securities. The Master Fund may from time to time lend securities from its portfolio to brokers, dealers and financial institutions such as banks and trust companies. The borrower may fail to return the securities involved in such transactions, particularly if such borrower is in financial distress or fails, in which event the Master Fund may incur a loss.

Portfolio Turnover. The Master Fund anticipates that its portfolio turnover rate may be very high. Typically, high portfolio turnover results in correspondingly high transaction costs, including brokerage commission expenses.

Overall Investment Risk. All securities investments risk the loss of capital. The nature of the securities to be purchased and traded by the Master Fund and the investment techniques and strategies to be employed by it may increase such risk. Moreover, the identification of investment opportunities is a difficult task, and there can be no assurance that such opportunities will be successfully recognized by the Master Fund. While the Managing Partner will devote his best efforts to the management of the Master Fund's portfolio, there can

9218367.11

-10-

CONFIDENTIAL                                              GCC (NYU) 0015886

CONFIDENTIAL                                              BS00020967

be no assurance that the Master Fund will not incur losses. Returns generated from the Master Fund's investments may not adequately compensate shareholders of the Fund for the business and financial risks assumed. A shareholder should be aware that it may lose all or a substantial part of its investment in the Fund if the Master Fund incurs losses. Many unforeseeable events, including actions by various government agencies and domestic and international economic and political developments, may cause sharp market fluctuations that could adversely affect the Master Fund's portfolio and performance.

### Exculpation of the Managing Partner from Liability

Pursuant to the Partnership Agreement, the Managing Partner will not be liable for, and will be indemnified by the Fund against, any act or omission unless such act or omission constitutes gross negligence, fraud or willful misconduct. As a result, investors in the Master Fund may be entitled to a more limited right of action against the Managing Partner than they would otherwise have had absent such a limitation in the Partnership Agreement.

### Exculpation of the Registrar and Transfer Agent from Liability

The administration agreement (the "Administration Agreement") between the Fund and Fortis Fund Services (Cayman) Ltd. (the "Registrar and Transfer Agent") provides that the Registrar and Transfer Agent will not be liable for, and will be indemnified by the Fund against, any loss or damage unless such loss or damage is sustained or suffered by reason of the gross negligence, bad faith or willful default of the Registrar and Transfer Agent. As a result, investors in the Fund may be entitled to a more limited right of action against the Registrar and Transfer Agent than they would otherwise have had absent such a limitation in the Administration Agreement described herein. (See "Administration," below).

Conflicts of Interest. The Managing Partner has broad powers to conduct investment and money management activities outside the Master Fund. These activities, which include management of one or more other domestic investment partnerships and one or more offshore managed funds (the "Managed Funds"), may create conflicts of interest with the Master Fund with regard to such matters as allocation of opportunities to participate in particular investments. Other accounts affiliated with the Managing Partner may hold positions opposite to positions maintained on behalf of the Master Fund. The Master Fund will obtain no interest in any such outside investments or activities. The Managing Partner or his employees are not required to devote all or any specified portion of their time to managing the Master Fund's affairs, but only to devote so much of their time to the Master Fund's affairs as they reasonably believe necessary in good faith. The Managing Partner or his affiliates are not prohibited from engaging in any other existing or future business, and the Managing Partner or his affiliates currently provide and anticipate continuing to provide investment management services to other clients. In addition, the Managing Partner or his employees may invest for their own accounts in various investment opportunities, including in investment partnerships. The Managing Partner may determine that an investment opportunity in a particular investment partnership is appropriate for a particular account, or for himself, but not for the Master Fund.

Other Activities. In addition to managing the Master Fund, the Managing Partner manages the Managed Funds, which may have similar or different investment objectives to the

9218367.11                                    -11-

**CONFIDENTIAL**

CONFIDENTIAL

**GCC (NYU) 0015887**

BSO0020968

Master Fund. The Managing Partner may allocate overhead expenses among the Master Fund and the Managed Funds on a fair basis, as determined by the Managing Partner. These other activities will require a substantial amount of the Managing Partner's time and effort.

Liability for Return of Distributions. Under Delaware law, any investor who receives a distribution from the Master Fund shall be liable to the Master Fund for the amount of the distribution to the extent such amount was distributed at a time that the liabilities of the Master Fund exceeded the fair value of its assets and the investor knew of the state of the Master Fund's financial condition at the time of such distribution.

Tax Risks. Although the Managing Partner believes that the Master Fund will be treated as a partnership for federal income tax purposes, no ruling has been, or will be, obtained from the Internal Revenue Service, to that effect. If the Master Fund is taxed not as a partnership but as a corporation it will, among other things, have to pay income tax on its earnings in the same manner and at the same rates as a corporation, and investors would be subject to an additional tax on earnings distributed. The Fund and the Master Fund (which is treated as a partnership for U.S. tax purposes and thus is not in any event subject to U.S. income tax) expect to conduct their activities in such a manner that, under current law, the Fund and the Master Fund will not be engaged in a trade or business within the United States. Similarly, the Fund and the Master Fund generally will seek to invest in Other Investment Entities only if such Other Investment Entities do not expect to be engaged in a trade or business within the United States, although the Fund and the Master Fund cannot assure that such Other Investment Entities will in fact not be engaged in a trade or business within the United States.

Registration and Qualification. Neither the Master Fund nor the Managing Partner has registered with any governmental or regulatory agency. Therefore, the Master Fund will not be subject to the limitations imposed on entities regulated under the various federal securities laws, which include, among other limitations, restrictions on transactions between a fund, its adviser or other affiliates, the use of leverage and limitations on borrowing. In addition, private rights of action against the Master Fund arising under various federal securities laws may not be available to investors, including the Fund, in the Master Fund. The Managing Partner, in the course of the conduct of the Master Fund's activities, will evaluate his obligations to register or comply with any rules which may be imposed upon the Master Fund or the Managing Partner, by any governmental or regulatory agency having jurisdiction over the activities being pursued by or on behalf of the Master Fund. However, no assurance can be given that compliance with all such rules will be undertaken or if undertaken will comply fully with such requirements. Compliance with such rules could adversely affect the Master Fund's operations and the ability of investors, including the Fund, to withdraw capital from the Master Fund.

Absence of Regulatory Oversight. The Master Fund is not required nor does it intend to register as an investment company under the Investment Company Act of 1940, as amended (the "Investment Company Act"), and, accordingly, the provisions of the Investment Company Act (which, among other protections, require investment companies to have a majority of disinterested directors, require securities held in custody at all times to be individually segregated from the securities of any other person and marked to clearly identify such securities as the property of such investment company, and regulate the relationship between the adviser and the investment company) will not be applicable.

9218367.11                                          -12-

**CONFIDENTIAL**

CONFIDENTIAL

**GCC (NYU) 0015888**

BS00020969

Other Risks

The potential payment of a percentage of any increase in the Master Fund's net asset value to the Managing Partner as an Investment Advisory Fee (as defined below) may create an incentive for the Managing Partner to cause the Master Fund to make investments that are riskier or more speculative than would be the case if the Investment Advisory Fee were calculated on a different basis. In addition, since the Investment Advisory Fee is calculated on a basis which includes unrealized appreciation of the Master Fund's assets, it may be greater than if such allocation was based solely on realized gains. It is possible that the Investment Advisory Fee may be based, in part, on the unrealized appreciation of securities (including securities of other investment funds in which the Master Fund may have invested) for which market quotations are not readily available. The value of such securities will be determined solely by the Managing Partner. Any valuation of such securities will be based on the Managing Partner's expertise and experience in valuing similar securities and will be reviewed by the Master Fund's independent auditors in preparing their annual certified audit of the Master Fund.

The Investment Advisory Fee will be calculated on a series by series basis of the Participating Shares of the Fund. The period of time for which particular fee calculations are made may differ from series to series of the Participating Shares of the Fund. Thus it is possible that an Investment Advisory Fee may be earned by the Managing Partner with respect to a series of Participating Shares that would not have been earned had the Investment Advisory Fee been calculated on an aggregate – and not series-by-series – basis.

The Fund may issue in the future Participating Shares for which the Investment Advisory Fee is calculated on a basis different from the method of calculating the Investment Advisory Fee set forth herein.

PAST RESULTS MAY NOT BE INDICATIVE OF FUTURE PERFORMANCE. NO ASSURANCE CAN BE MADE THAT PROFITS WILL BE ACHIEVED OR THAT SUBSTANTIAL LOSSES WILL NOT BE INCURRED.

INVESTMENT ADVICE

The Master Fund's assets are invested by the Managing Partner, J. Ezra Merkin, who has full discretionary authority to invest the assets of the Master Fund.

The Fund will be a limited partner in the Master Fund and pursuant to the Partnership Agreement, the Fund will pay the Managing Partner or its designee an investment advisory fee as of the last business day of each fiscal year based on the value of its interests in the Master Fund held on or withdrawn as of the end of such fiscal year and as of the withdrawal date for those interests the Fund withdraws as of any quarterly withdrawal date (the "Investment Advisory Fee"). The Investment Advisory Fee is equal to 1.5% (pro rated for periods of less than a year) of the value of the Fund's interest in the Master Fund, as adjusted to take account of capital contributed or withdrawn by the Fund during such period. The Fund's capital account in the Master Fund is based on the net asset value of each series of Participating Shares in the Fund. Therefore, in order to pay the Investment Advisory Fee, the Fund will deduct from each holder of Participating Shares, 1.5% of the value of each series of Participating Shares held by such

9218367.11                                -13-

CONFIDENTIAL                                              GCC (NYU) 0015889

CONFIDENTIAL                                                        BS00020970

shareholder on or redeemed as of the end of such fiscal year and as of the redemption date for those Participating Shares redeemed as of any quarterly redemption date by such shareholder. The Fund will adjust a shareholder's contribution to the Investment Advisory Fee to take account for capital contributed or redeemed by such shareholder during such period. The Fund may issue in the future different series of Participating Shares as to which the Investment Advisory Fee is calculated on a different basis.

The Fund will bear its pro rata share of the Master Fund's expenses relating to costs, fees and expenses of attorneys, accountants or other professionals. In addition, the Fund may bear its pro rata share of the Master Fund's expenses related to the Fund's and Master Fund's operations, including, among other things, any direct costs, fees and expenses incurred in connection with the purchase, sale or carrying of any security, including, but not limited to, brokerage and transaction costs, margin interest expenses and fees, including performance-based fees, payable to investment managers or partners of private investment partnerships, closed-end funds or other pooled investment vehicles.

<u>DETERMINATION OF NET ASSET VALUE</u>

The net asset value ("NAV") of the Master Fund will be equivalent to its respective gross assets less its gross liabilities as of any date of determination. To the extent feasible, expenses, fees and other liabilities will be accrued.

Substantially all of the net assets of the Fund are invested in interests of the Master Fund. Accordingly, appreciation or depreciation in the NAV of a series of Participating Shares is based upon appreciation or depreciation of the interests in the Master Fund held by the Fund, with appropriate adjustments for liabilities of the Fund. The NAV per Participating Share (prior to the determination of any applicable fees payable to the Managing Partner) is determined first by allocating any realized or unrealized increase or decrease in the NAV of the Fund for a period among the series of Participating Shares *pro rata* in accordance with the NAV of each series at the beginning of the period and then dividing the NAV of each series by the number of outstanding Participating Shares therein. NAV will be calculated at the end of each quarter, and estimated NAV will be calculated at the end of each month. Shares within a series will have the same NAV per Share. An Investment Advisory Fee determined with respect to a particular series of Participating Shares will be debited against the NAV of such series. The initial NAV of a series of Shares is equal to the aggregate subscription price paid by all shareholders of such series in subscribing for such Participating Shares, net of any applicable charges and expenses.

To the extent feasible, expenses, fees and other liabilities are accrued using generally accepted accounting principles as a guideline. Reserves may be taken for estimated or accrued expenses, liabilities or contingencies.

The Managing Partner will value the assets of the Master Fund. The net assets of the Fund will be valued pursuant to the Articles by the Board of Directors of the Fund. All matters concerning valuation of securities, as well as accounting procedures, not expressly provided for in the Articles and policies adopted by the Board of Directors may be determined by the Board of Directors, whose determination is final and conclusive as to all shareholders.

9218367.11                                          -14-

**CONFIDENTIAL**

CONFIDENTIAL

**GCC (NYU) 0015890**

BS00020971

## ADMINISTRATION

The Fund is administered pursuant to the terms of the Administration Agreement by the Registrar and Transfer Agent, a company registered in the Cayman Islands and which has a Trust License issued under the Bank and Trust Companies Law of the Cayman Islands (2001 Revision) and an unrestricted Mutual Fund Administrator's License issued under the Mutual Funds Law of the Cayman Islands (2001 Revision). The Fund pays the Registrar and Transfer Agent an annual fee, subject to negotiated adjustments.

The Registrar and Transfer Agent maintains the principal office of the Fund in George Town, Grand Cayman, Cayman Islands. All administrative functions of the Fund are conducted from the Fund's offices in the Cayman Islands.

## BOARD OF DIRECTORS

The directors of the Fund are Don Martin Seymour and Aldo Ghisletta (the "Board of Directors").

Don M. Seymour is a Managing Director of dms Management Ltd., a company management firm, licensed and regulated under the laws of the Cayman Islands. He also serves as a Director of Cayman Airways Limited, the national airline of the Cayman Islands and on the boards of several notable investment companies. He is a Notary Public and a previous member of the Trade & Business Licensing Board of the Cayman Islands. Prior to founding dms Management Ltd., he was the Head of the Investment Services Division of the Cayman Islands Monetary Authority where he directed the authorization, supervision and enforcement of regulated mutual funds under the Mutual Funds Law, and the supervision of company managers under the Companies Management Law of the Cayman Islands. He holds a BBA degree in Accounting from the University of Texas at Austin and qualified as a Certified Public Accountant in the State of Illinois.

Aldo Ghisletta is a Director of dms Management Ltd., a company management firm, licensed and regulated under the laws of the Cayman Islands. Previously, he was General Manager of Morval Bank & Trust Cayman Ltd. from 1999 to 2000 where he directed its private banking, mutual fund administration, trust and companies administration operations in the Cayman Islands. Prior to that, he was Vice-President of Banca Unione di Credito, a Swiss banking group, from 1990 to 1999 where he was responsible for its mutual funds administration, securities trading, accounting and administration operations in Lugano and Zurich. He is a Swiss citizen and holds a degree in Banking and Accounting from the Unione di Banche Svizzere, Bellinzona granted in 1969.

## BROKERAGE

The Managing Partner selects brokers to effect transactions for the Master Fund which receive commissions in connection with the brokerage services, including clearing and settling functions, provided to the Master Fund. Such brokers will not perform managerial or policymaking functions for the Master Fund. Clearing and settling services normally include, among other matters, arranging for (i) the receipt and delivery of securities purchased, sold,

**CONFIDENTIAL**                                                          **GCC (NYU) 0015891**

CONFIDENTIAL                                                                    BS00020972

borrowed and loaned, (ii) the making and receiving of payments therefor, (iii) custody of securities fully paid for or not fully paid for and, therefor, compliance with margin and maintenance requirements, (iv) custody of all cash, dividends and exchanges, distributions and rights accruing to the Fund's account, and (v) tendering securities in connection with cash tender offers, exchange offers, mergers or other corporate reorganizations.

### ACCOUNTANTS

The Fund's accountants are BDO Binder.

### VOTING SHARES

The Fund issued 100 founders shares, with a par value of $1.00 per share, to Gabriel Capital Corporation shortly after the Fund's incorporation. The founders shares are the only shares issued by the Fund that carry voting rights. Holders of founders shares are not entitled to participate in the appreciation of the Fund's assets but are entitled to a return of par value upon liquidation or dissolution of the Fund.

### THE PARTICIPATING SHARES

The Fund will issue up to 500,000 Participating Shares in series, with a par value of $0.01 per share, at an offering price of $1,000 per share in minimum denominations of $500,000 and in integral multiples of $1,000 thereafter, to "Qualified Purchasers". Participating Shares (1) will be issued in registered form, (2) fully paid for when issued, (3) have no voting rights and (4) have no preemptive, conversion or exchange rights.

It is anticipated that no dividends will be paid on the Participating Shares. The Fund will retain and reinvest the net income derived from its investments, including its investment in the Master Fund.

The Participating Shares will be offered in series. Shares will be issued to subscribers in separate series based on subscription date. Shares issued to the same subscriber but on different dates will also be issued in separate series. Upon the issuance of a series of Participating Shares, an account for such series will be created to which shall be credited initially the subscription proceeds of such series and thereafter the pro-rated part of the profits and gains (realized and unrealized) of the Fund and from which shall be debited pro-rated losses, expenses and liabilities of the Fund, including the accrued and unpaid fees owed to the Managing Partner, and dividends and proceeds of redemption in respect of shares of that series when paid.

The Fund may consolidate different series of shares into one (or more) series of shares based on the net asset value of each such series being consolidated at the time of consolidation.

### REDEMPTION AND TRANSFER

Participating Shares are transferable, subject to the approval of the Board of Directors, and are similarly redeemable, at the request of the holder thereof, as of the last Business Day (as defined in the Articles of the Fund) of each quarter during the Fund's fiscal

9218367.11                                     -16-

**CONFIDENTIAL**

CONFIDENTIAL

**GCC (NYU) 0015892**

BS00020973

year, which shall be the calendar year (each, a "Redemption Date"). However, in no event may Participating Shares be transferred to a person who is not a Qualified Purchaser. Distribution of cash in respect of all or any of a holder's redeemed Participating Shares need not be made until 90 days after a Redemption Date.

A holder of Participating Shares may redeem his shares, in whole or in part, subject to certain rights of the Fund to delay or limit the right to redeem, by written notice to the Registrar and Transfer Agent on behalf of the Company given 30 days prior to a Redemption Date. Partial redemptions are permitted so long as a redeeming shareholder, after such redemption, continues to own Participating Shares of one or more series with a net asset value of at least $500,000. The redemption price of Participating Shares will be based on the per share net asset value of the Fund attributable to the series of Participating Shares of which the redeemed Participating Shares are a part as of the relevant Redemption Date. Net asset value as of a given date is the aggregate value of the Fund's assets over its liabilities as of such date.

All Participating Shares will be redeemed upon the first to occur of the following events: (i) on December 31, 2033, or the next succeeding Business Day; (ii) upon the incapacity or death of Mr. J. Ezra Merkin; (iii) following a determination by the Board of Directors that the Fund should be dissolved; or (iv) upon the occurrence of any event causing the dissolution of the Fund under Cayman Islands law. If in the opinion of the Board of Directors of the Fund the holding of Participating Shares by any given holder thereof is unlawful or detrimental to the interests or well-being of the Fund, the Board of Directors may, and if a holder of Participating Shares no longer is a Qualified Purchaser the Board of Directors shall, require the redemption of all Participating Shares held by such shareholder.

## U.S. REGULATORY MATTERS

The Fund and the Master Fund will not register as investment companies and therefore are not required to adhere to certain investment policies under the Investment Company Act. The Fund and the Master Fund are not required to register as investment companies for purposes of the Investment Company Act because they are not making, and do not propose to make a public offering of interests in the United States. The Fund and Master Fund intend to comply with Section 3(c)(7) of the Investment Company Act with respect to offers made to permitted U.S. persons and non-U.S. investors, as defined under Regulation S of the U.S. Securities Act of 1933, as amended.

## U.S. ANTI-MONEY LAUNDERING REGULATIONS

As part of the Fund's responsibility for the prevention of money laundering, the Board of Directors and its affiliates may require a detailed verification of an investor's identity, any beneficial owner underlying the account and the source of the payment.

The Board of Directors reserves the right to request such information as is necessary to verify the identity of a subscriber and the underlying beneficial owner of a subscriber's or an investor's interest in the Fund. In the event of delay or failure by the subscriber or investor to produce any information required for verification purposes, the Board of Directors may refuse to accept a subscription or may cause the withdrawal of any such investor from the

9218367.11                                          -17-

**CONFIDENTIAL**

CONFIDENTIAL

**GCC (NYU) 0015893**

BS00020974

Fund. The Board of Directors, by written notice to any investor, may suspend the withdrawal rights of such investor if the Board of Directors reasonably deems it necessary to do so to comply with anti-money laundering regulations applicable to the Fund, the Board of the Directors or any of the Fund's other service providers.

Each subscriber and investor shall be required to make such representations to the Fund as the Fund and the Board of Directors shall require in connection with such anti-money laundering programs, including without limitation, representations to the Fund that such subscriber or investor is not a prohibited country, territory, individual or entity listed on the U.S. Department of Treasury's Office of Foreign Assets Control ("OFAC") website and that it is not directly or indirectly affiliated with, any country, territory, individual or entity named on an OFAC list or prohibited by any OFAC sanctions programs. Such investor shall also represent to the Fund that amounts contributed by it to the Fund were not directly or indirectly derived from activities that may contravene U.S. federal, state or international laws and regulations, including anti-money laundering laws and regulations.

## CAYMAN ISLANDS ANTI-MONEY LAUNDERING REGULATIONS

In order to comply with regulations aimed at the prevention of money laundering, the Registrar and Transfer Agent will require verification of identity from all subscribers unless, in any case, the Registrar and Transfer Agent is satisfied that an exemption under applicable anti-money laundering regulations applies. Depending on the circumstances of each subscription, it may not be necessary to obtain full documentary evidence of identity where: (a) the subscriber makes the payment from an account held in the subscriber's name at a recognized financial institution; or (b) the subscriber is regulated by a recognized regulatory authority and is based or incorporated in, or formed under the law of, a recognized jurisdiction; or (c) the subscription is made by an intermediary acting on behalf of the subscriber and such intermediary is regulated by a recognized regulatory authority and is based or incorporated in, or formed under the law of, a recognized jurisdiction.

The Registrar and Transfer Agent reserves the right to request such information as is necessary to verify the identity of a subscriber. In the event of delay or failure on the part of the subscriber in producing any information required for verification purposes, the Registrar and Transfer Agent may refuse to accept the application in which case any funds received will be returned without interest to the account from which they were originally debited.

The Registrar and Transfer Agent also reserves the right to refuse to make any redemption payment to a shareholder if the Board of Directors or the Registrar and Transfer Agent suspect or are advised that the payment of redemption proceeds to such shareholder might result in a breach of applicable anti-money laundering or other laws or regulations by any person in any relevant jurisdiction or if such refusal is considered necessary or appropriate to ensure the compliance by the Fund or the Registrar and Transfer Agent with any such laws or regulations in any relevant jurisdiction.

If during the course of his business, any person resident in the Cayman Islands (including the Fund) knows or suspects that another person is engaged in money laundering, such person is required to report such knowledge or suspicion pursuant to the Proceeds of

9218367.11                                           -18-

CONFIDENTIAL                                                  GCC (NYU) 0015894

CONFIDENTIAL                                                  BS00020975

Criminal Conduct Law (2001 Revision) of the Cayman Islands and such report shall not be treated as a breach of any restriction upon the disclosure of information imposed by law or otherwise.

## MUTUAL FUNDS LAW

The Fund falls within the definition of a "mutual fund" under the Mutual Funds Law (2001 Revision) of the Cayman Islands (the "Law") and accordingly is registered pursuant to Section 4(3) of that Law. The Fund is not required to be licensed or to employ a licensed mutual fund administrator since the minimum interest purchasable by a prospective investor in the Fund exceeds CI$40,000 or its equivalent in any other currency. Accordingly, the obligations of the Fund are to (a) register the Fund with the Managing Director of the Monetary Authority of the Cayman Islands (the "Managing Director"), (b) file with the Managing Director prescribed details of this Prospectus and any changes to it, (c) file annually with the Managing Director accounts signed off by an approved auditor in the Cayman Islands, and (d) pay a prescribed registration fee.

As a regulated mutual fund the Fund will be subject to the supervision of the Managing Director and the Managing Director may at any time instruct the Fund to have its accounts audited and to submit them to the Managing Director within such time as the Managing Director specifies. In addition the Managing Director may ask the Board of Directors to give the Managing Director such information or such explanation in respect of the Fund as the Managing Director may reasonably require to enable it to carry out its duty under the Law. However, neither the Managing Director nor the Cayman Islands Monetary Authority accepts any responsibility for the financial soundness of the Fund or for the accuracy of any statements made or opinions expressed in this document.

The Board of Directors must give the Managing Director access to or provide at any reasonable time all records relating to the Fund and the Managing Director may copy or take an extract of a record it is given access to. Failure to comply with these requests by the Managing Director may result in substantial fines being imposed on the Board of Directors and may result in the Managing Director applying to the court to have the Fund wound up.

The Managing Director is prohibited by the Law from disclosing any information relating to the affairs of a mutual fund other than disclosure required for the effective regulation of a mutual fund or when required to by law or by the court.

The Managing Director may take certain actions if it is satisfied that a regulated mutual fund is or is likely to become unable to meet its obligations as they fall due or is carrying on or is attempting to carry on business or is winding up its business voluntarily in a manner that is prejudicial to its investors or creditors. The powers of the Managing Director include, inter alia, the power to require the substitution of Board of Directors, to appoint a person to advise the Fund on the proper conduct of its affairs or to appoint a person to assume control of the affairs of the Fund. There are other remedies available to the Managing Director including the ability to apply to the court for approval of other actions.

**CONFIDENTIAL**                                              GCC (NYU) 0015895

CONFIDENTIAL                                                  BS00020976

## ANNUAL REPORTS

Approximately 30 days after to the end of each quarter, the Fund will provide each holder of Participating Shares an unaudited financial statement for the quarter. In addition, within 120 days of the last day of each fiscal year, the Fund will provide to each shareholder an audited financial statement of the Fund for such fiscal year.

## OPERATING RESULTS

Information concerning the operating results of the Fund is available on request.

## QUALIFIED PURCHASERS

Participating Shares are being offered to persons who certify on a Subscription Agreement that they are (1)(a)not "U.S. Persons" as that term is defined in Regulation S of the Securities Act or (b) U.S. persons subject to the U.S. Employee Retirement Income Security Act of 1974, as amended, or otherwise exempt from payment of U.S. federal income tax or entities substantially all of the ownership interests in which are held by tax-exempt U.S. persons, (2) an "accredited investor" as that term is defined in Regulation D of the Securities Act and (3) a "qualified purchaser" as that term is defined under Section 2(a)(51) of the Investment Company Act and the rules promulgated thereunder or "knowledgeable employees" as defined under Rule 3c-5 of the Investment Company Act. Unless the Board of Directors determine otherwise, the minimum investment will be $500,000. No minimum amount of capital is required to be raised in order for the offering to be consummated.

## TAXATION IN THE CAYMAN ISLANDS

On the basis of the current legislation of the Cayman Islands, there are no income, profits, capital transfer, capital gains or other similar taxes that would be applicable to the profits or gains of the Fund, and shareholders of the Fund are not subject to any such taxes or any similar taxes in respect of their holdings of Participating Shares. The Fund has applied for and has obtained an undertaking from the Cayman Islands Governor-in-Council that, for a period of 20 years from 3rd March, 1992, (a) no law which is enacted after such date in the Cayman Islands imposing any tax to be levied on profits, income, gains or appreciations shall apply to the Fund (as the case may be); (b) no tax to be levied on profits, income, gains or appreciations or which is in the nature of estate duty or inheritance tax shall be payable on or in respect of its shares, debentures or other obligations.

## TAXATION IN THE UNITED STATES

The following is a discussion of certain U.S. federal income tax considerations for persons to whom such considerations are relevant in purchasing Participating Shares of the Fund. The discussion does not purport to deal with all aspects of federal taxation that may be relevant to particular investors and is for general informational purposes only. The federal income tax consequences that may be applicable to an investor may vary depending on an investor's particular situation. For example, certain investors including insurance companies, financial institutions, broker-dealers, tax-exempt organizations and persons who are not citizens or residents of the United States may be subject to special rules not described below. Prospective

9218367.11                                     -20-

CONFIDENTIAL                                     GCC (NYU) 0015896

CONFIDENTIAL                                                           BS00020977

investors are advised to consult their own tax advisors regarding the U.S. federal income tax considerations in acquiring, holding and disposing of the Participating Shares, as well as any state, local or foreign tax considerations.

**U.S. Taxation of the Fund.** The Fund and the Master Fund (which is treated as a partnership for U.S. tax purposes and thus is not in any event subject to U.S. income tax) expect to conduct their activities in such a manner that, under current law, the Fund and the Master Fund will not be engaged in a trade or business within the United States. Similarly, the Fund and the Master Fund generally will seek to invest in Other Investment Entities only if such Other Investment Entities do not expect to be engaged in a trade or business within the United States, although the Fund and the Master Fund cannot assure that such Other Investment Entities will in fact not be engaged in a trade or business within the United States. Accordingly, and assuming the Fund and the Master Fund is not engaged in a U.S. trade or business, either as a result of their own activities or as the result of the activities of any Other Investment Entity that is a partnership for U.S. tax purposes, the Fund will not be required to file U.S. federal income tax returns and will not be subject to U.S. federal income or withholding tax in respect of any capital gains realized by it (except to the extent, if any, that such gains are attributable to investments in securities that constitute U.S. real property interests). However, the Fund will be subject to a 30 percent withholding tax in respect of any dividend income and, depending upon the circumstances, possibly in respect of interest and in respect of payments to the Fund in connection with short sales or loans of securities and similar payments. If the Fund, the Master Fund or any Other Investment Entity were to be engaged in a trade or business within the United States, the Fund would be subject to U.S. federal income taxation on a net income basis (and to the branch profits tax) in respect of any income that is effectively connected with such trade or business within the United States.

**U.S. Taxation of Foreign Shareholders.** Dividends paid by the Fund, if any, redemptions of Participating Shares by the Fund and sales of Participating Shares by a shareholder generally will not be subject to U.S. income (or withholding) tax in the case of any shareholder which is not a United States citizen or resident or a United States entity, unless such dividends or the gains from such redemptions or sales are effectively connected with a trade or business of the shareholder in the United States or (under certain circumstances) are attributable to an office or other fixed place of business of such shareholder in the United States.

The transfer of Participating shares in the Fund, by way of gift by, or as a result of the death of, an individual shareholder of the Fund who is not a U.S. citizen or resident, will not be subject to U.S. gift or estate taxes.

**U.S. Taxation of U.S. Shareholders.** U.S. persons should be aware that the Fund will constitute a controlled foreign corporation ("CFC"), a foreign personal holding company ("FPHC"), as well as a "passive foreign investment company" ("PFIC") for U.S. federal income tax purposes. Accordingly, any U.S. person holding Participating Shares (including Participating Shares held indirectly through entities such as a partnership, trust, estate, controlled foreign corporation or foreign personal holding company) could be subject to significant adverse tax consequences and to certain reporting requirements. U.S. Persons that are subject to an excise tax on their annual net income (*e.g.*, private foundations) are particularly urged to consult their

CONFIDENTIAL

CONFIDENTIAL

GCC (NYU) 0015897

BS00020978

own tax advisors with respect to their investment in the Fund, in light of the Fund's status as a FPHC and a CFC.

The foregoing discussion of taxation is for informational purposes only and investors are urged to consult with their own tax advisors respecting the tax consequences of an investment in the Fund, including the tax treatment under the laws of any jurisdiction to which they might be subject.

### ERISA CONSIDERATIONS

THE FOLLOWING SUMMARY OF CERTAIN ASPECTS OF THE EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974, AS AMENDED ("ERISA"), IS BASED UPON ERISA, JUDICIAL DECISIONS, U.S. DEPARTMENT OF LABOR REGULATIONS AND RULINGS IN EXISTENCE ON THE DATE HEREOF.  THIS SUMMARY IS GENERAL IN NATURE AND DOES NOT ADDRESS EVERY ERISA ISSUE THAT MAY BE APPLICABLE TO THE FUND AND/OR THE MASTER FUND OR A PARTICULAR INVESTOR.  ACCORDINGLY, EACH PROSPECTIVE INVESTOR SHOULD CONSULT WITH ITS OWN COUNSEL IN ORDER TO UNDERSTAND THE ERISA ISSUES AFFECTING THE FUND, THE MASTER FUND AND THE INVESTOR.

<u>General</u>

Persons who are fiduciaries with respect to a U.S. employee benefit plan or trust within the meaning of, and subject to, the provisions of ERISA (an "ERISA Plan"), an individual retirement account or a Keogh plan subject solely to the provisions of the Internal Revenue Code of 1986, as amended (the "IRC")[1] (an "Individual Retirement Fund") should consider, among other things, the matters described below before determining whether to invest in the Fund, and thus the Master Fund.

ERISA imposes certain general and specific responsibilities on persons who are fiduciaries with respect to an ERISA Plan, including prudence, diversification, prohibited transaction and other standards.  In determining whether a particular investment is appropriate for an ERISA Plan, U.S. Department of Labor ("DOL") regulations provide that a fiduciary of an ERISA Plan must give appropriate consideration to, among other things, the role that the investment plays in the ERISA Plan's portfolio, taking into consideration whether the investment is designed reasonably to further the ERISA Plan's purposes, the risk and return factors of the potential investment, the portfolio's composition with regard to diversification, the liquidity and current return of the total portfolio relative to the anticipated cash flow needs of the ERISA Plan, the projected return of the total portfolio relative to the ERISA Plan's funding objectives, and the limitation on the rights of a shareholder to redeem all or any portion of their Participating Shares or to transfer their Participating Shares.  Before investing the assets of an ERISA Plan in the Fund (and thus, the Master Fund), a fiduciary should determine whether such an investment is consistent with its fiduciary responsibilities and the foregoing regulations.  For example, a fiduciary should consider whether an investment in the Fund may be too illiquid or too speculative for a particular ERISA Plan and whether the assets of the ERISA Plan would be

---

[1]    References hereinafter made to ERISA include parallel references to the IRC.

9218367.11                                      -22-

**CONFIDENTIAL**

CONFIDENTIAL

**GCC (NYU) 0015898**

BS00020979

sufficiently diversified. If a fiduciary with respect to any such ERISA Plan breaches its responsibilities with regard to selecting an investment or an investment course of action for such ERISA Plan, the fiduciary may be held personally liable for losses incurred by the ERISA Plan as a result of such breach.

Plan Assets Regulations

      The DOL has published a regulation (the "Regulation") describing when the underlying assets of an entity in which certain benefit plan investors ("Benefit Plan Investors") invest constitute "plan assets" for purposes of ERISA. Benefit Plan Investors include employee benefit plans as defined in Section 3(3) of ERISA, whether or not subject to Title I of ERISA, plans described in Section 4975(e)(1) of the IRC, government plans, church plans, non-U.S. employee benefit plans, certain insurance company general and separate accounts and entities, the underlying assets of which include plan assets by reason of investment therein by Benefit Plan Investors. The effect of the Regulation is to treat certain entities as pooled funds for the collective investment of plan assets.

      The Regulation provides that, as a general rule, when an ERISA Plan invests assets in another entity, the ERISA Plan's assets include its investment, but do not, solely by reason of such investment, include any of the underlying assets of the entity. However, when an ERISA Plan acquires an "equity interest" in an entity that is neither: (a) a "publicly offered security," nor (b) a security issued by an investment fund registered under the U.S. Investment Company Act, then the ERISA Plan's assets include both the equity interest and an interest in each of the underlying assets of the entity, unless it is established that:

      (i)    the entity is an "operating company;" or
      (ii)   the equity participation in the entity by Benefit Plan Investors is not "significant."

      Equity participation in an entity by Benefit Plan Investors is considered "significant" if 25% or more of the value of any class of equity interests in the entity is held by such Benefit Plan Investors. Equity interests held by a person with discretionary authority or control with respect to the assets of the entity and equity interests held by a person who provides investment advice for a fee (direct or indirect) with respect to such assets or any affiliate of any such person (other than a Benefit Plan Investor) are not considered for purposes of determining whether equity participation by Benefit Plan Investors is significant.

Plan Asset Consequences

      It is the current intent of the Managing Partner to monitor the investments in the Fund to ensure that the aggregate investment by Benefit Plan Investors does not equal or exceed 25% of the value of any class of the Shares in the Fund so that equity participation by Benefit Plan Investors in the Fund will not be considered "significant" under the Regulation and, as a result, the underlying assets of the Fund will not be deemed "plan assets" for purposes of the Regulation. Shares held by the Managing Partner and its affiliates are not considered for purposes of determining whether equity participation by Benefit Plan Investors is significant. If

9218367.11

-23-

CONFIDENTIAL

CONFIDENTIAL

GCC (NYU) 0015899

BS00020980

the assets of the Fund were regarded as "plan assets" of a Benefit Plan Investor, the Managing Partner might be deemed a "fiduciary" (as defined in ERISA and the IRC) with respect to such Benefit Plan Investor and might be subject to the obligations and liabilities imposed on fiduciaries by ERISA. Moreover, the Fund would be subject to various other requirements of ERISA and the IRC. In particular, the Fund would be subject to rules restricting transactions with "parties in interest" and prohibiting transactions involving conflicts of interest on the part of fiduciaries which might result in a violation of ERISA and the IRC unless the Fund obtained appropriate exemptions from the DOL allowing the Fund to conduct its operations as described herein. As described above, under "Redemption and Transfer", the Board of Directors of the Fund reserves the right to redeem all or a part of the Participating Shares held by any shareholder, subject to the aforesaid, including, without limitation, to ensure compliance with the above percentage limitation. In addition, the Managing Partner reserves the right, however, to waive the 25% limitation and thereafter to comply with ERISA.

Representations by Plans

An ERISA Plan proposing to invest in the Fund will be required to represent that it is, and any fiduciaries responsible for the ERISA Plan's investments are, aware of, and understand, both the Fund's and the Master Fund's investment objective, policies and strategies, that the decision to invest plan assets in the Fund, and thus the Master Fund, was made with appropriate consideration of relevant investment factors with regard to the ERISA Plan and is consistent with the duties and responsibilities imposed upon fiduciaries with regard to their investment decisions under ERISA.

WHETHER OR NOT THE UNDERLYING ASSETS OF THE FUND AND/OR THE MASTER FUND ARE DEEMED PLAN ASSETS UNDER THE REGULATION, AN INVESTMENT IN THE FUND BY AN ERISA PLAN IS SUBJECT TO ERISA. ACCORDINGLY, FIDUCIARIES OF ERISA PLANS SHOULD CONSULT WITH THEIR OWN COUNSEL AS TO THE CONSEQUENCES UNDER ERISA OF AN INVESTMENT IN THE FUND.

ERISA Plans and Individual Retirement Funds Having Prior Relationships with the Managing Partner and/or any of its Affiliates

Certain prospective ERISA Plan and Individual Retirement Fund investors may currently maintain relationships with the Managing Partner or other entities which are affiliated with the Managing Partner. Each of such persons may be deemed to be a party in interest to, and/or a fiduciary of, any ERISA Plan or Individual Retirement Fund to which any of them provide investment management, investment advisory or other services. ERISA prohibits ERISA Plan assets from being used for the benefit of a party in interest and also prohibits an ERISA Plan fiduciary from using its position to cause the ERISA Plan to make an investment from which it or certain third parties in which such fiduciary has an interest would receive a fee or other consideration. Similar provisions are imposed by the IRC with respect to Individual Retirement Funds. ERISA Plan and Individual Retirement Fund investors should consult with counsel to determine if participation in the Fund is a transaction which is prohibited by ERISA or the IRC.

9218367.11                                    -24-

CONFIDENTIAL                                    GCC (NYU) 0015900

CONFIDENTIAL                                    BS00020981

The provisions of ERISA are subject to extensive and continuing administrative and judicial interpretation and review. The discussion of ERISA contained herein is, of necessity, general and may be affected by future publication of regulations and rulings. Potential investors should consult with their legal advisors regarding the consequences under ERISA of the acquisition and ownership of Participating Shares.

## ADDRESSES

| | |
|---|---|
| The Fund: | Ascot Fund Limited<br>c/o Fortis Fund Services(Cayman) Limited<br>P.O. Box 2003GT<br>Grand Pavilion Commercial Centre<br>802 West Bay Road<br>Grand Cayman, Cayman Islands |
| Registrar and Transfer Agent: | Fortis Fund Services(Cayman) Limited<br>P.O. Box 2003GT<br>Grand Pavilion Commercial Centre<br>802 West Bay Road<br>Grand Cayman, Cayman Islands |
| Managing Partner: | J. Ezra Merkin<br>450 Park Avenue<br>32nd Floor<br>New York, NY 10022<br>Tel: (212) 838-7200<br>Telecopy: (212) 838-9603 |

9218367.11

-25-

**CONFIDENTIAL**

CONFIDENTIAL

GCC (NYU) 0015901

BS00020982