# **EXHIBIT 29**



**BDO Seidman, LLP**
Accountants and Consultants

330 Madison Avenue
New York, New York 10017

RL 2/6/06

IG 2/15/2006

January 27, 2006

REVIEWED
By aw at 9:43 pm, Apr 14, 2006

Mr. Michael E. Autera, Jr.
Chief Financial Officer
Gabriel Capital, L.P.
450 Park Avenue
New York, NY 10022

Dear Mr. Autera:

### Agreement to Provide Services

This agreement is intended to describe the nature and scope of our services.

**Audit**

As agreed, we will audit the statement of assets and liabilities, including condensed schedule of investments, of Gabriel Capital, L.P. ("Partnership") as of December 31, 2005 and the related statements of income, changes in partners' capital and cash flow for the year then ending in accordance with auditing standards generally accepted in the United States of America. The financial records and financial statements are the responsibility of your General Partner and the Partnership's management. In that regard, management is responsible for establishing and maintaining effective internal control over financial reporting, establishing and maintaining proper accounting records, selecting appropriate accounting principles, safeguarding partnership assets, and complying with relevant laws and regulations. The General Partner and the Partnership's management are also responsible for making all financial records and related information available to us.

Our responsibility is to express an opinion on the financial statements based on our audit. An audit includes examining, on a test basis, evidence supporting the amounts and disclosures in the financial statements, assessing the accounting principles used and significant estimates made by management, and evaluating the overall financial statement presentation.

At the conclusion of our audit, we will submit to you a report containing our opinion as to *whether the financial statements, taken as a whole, are fairly presented based on accounting* principles generally accepted in the United States of America. If, during the course of our work, it appears for any reason that we will not be in a position to render an unqualified opinion on the financial statements, or that our report will require an explanatory paragraph, we will discuss this with you. It is possible that, because of unexpected circumstances, we may determine that we cannot render a report or otherwise complete the engagement. If, for any reason, we are unable to complete the audit or are unable to form or have not formed an opinion, we may decline to express an opinion or decline to issue a report as a result of the engagement. If, in our professional judgment, the circumstances require, we may resign from the engagement prior to completion.

X-5 (1/6)



Exhibit
Trustee 27
Eileen Mulvenna 10-10-12

CONFIDENTIAL

CONFIDENTIAL

BDO0000712
CONFIDENTIAL
BDO_S_0004899

BDO_T_0004899

RL 2/6/06



BDO Seidman, LLP
Accountants and Consultants

Gabriel Capital, L.P.
January 27, 2006
Page 2

We will design our audit to provide reasonable assurance of detecting errors or fraud that would have a material effect on the financial statements. Our work will be based primarily upon selected tests of evidence supporting the amounts and disclosures in the financial statements and, therefore, will not include a detailed check of your Partnership's transactions for the period. Accordingly, an audit performed in accordance with auditing standards generally accepted in the United States of America is not a guarantee of the accuracy of the financial statements, and there is a risk that material errors or fraud may exist and not be detected by us. Also, an audit is not designed to detect errors or fraud that are immaterial to the financial statements. However, we will inform you of any material errors or fraud that come to our attention. We will also inform you of illegal acts that come to our attention unless they are clearly inconsequential. In addition, during the course of our audit, financial statement misstatements may be identified, either through our audit procedures or through communication by your employees to us, and we will bring these misstatements to your attention as proposed adjustments. Management is responsible for recording such adjustments in the financial statements or otherwise concluding and confirming in a representation letter provided to us at the conclusion of our audit that the effects of the unrecorded adjustments are, both individually and in the aggregate, immaterial to the financial statements taken as a whole. At the conclusion of our audit, we will communicate to the management all such unrecorded adjustments.

An audit includes consideration of internal control over financial reporting as a basis for designing audit procedures that are appropriate in the circumstances, but not for the purpose of expressing an opinion on the effectiveness of the Partnership's internal control over financial reporting. Accordingly, we will express no such opinion. An audit is not designed to provide assurance on internal control or to identify reportable conditions. However, we are responsible for ensuring that you are aware of any reportable conditions that come to our attention during our engagement.

**E-mail Communication**

In connection with this engagement, we may communicate with you or others via e-mail transmission. As e-mails can be intercepted and read, disclosed, or otherwise used or communicated by an unintended third party, or may not be delivered to each of the parties to whom they are directed and only to such parties, we cannot guarantee or warrant that e-mails from us will be properly delivered and read only by the addressee. Therefore, we specifically disclaim and waive any liability or responsibility whatsoever for interception or unintentional disclosure or communication of e-mail transmissions, or for the unauthorized use or failed delivery of e-mails transmitted by us in connection with the performance of this engagement. In that regard, you agree that we shall have no liability for any loss or damage to any person or entity resulting from the use of e-mail transmissions, including any consequential, incidental, direct, indirect, or special damages, such as loss of sales or

X-5 (2/6)

CONFIDENTIAL

CONFIDENTIAL

BDO0000713
CONFIDENTIAL
BDO_S_0004900

BDO_T_0004900

RL 2/6/06



BDO Seidman, LLP
Accountants and Consultants

Gabriel Capital, L.P.
January 27, 2006
Page 3

anticipated profits, or disclosure or communication of confidential or proprietary information.

**Ownership of Working Papers**

The working papers prepared in conjunction with our audit are the property of our Firm, constitute confidential information, and will be retained by us in accordance with our Firm's policies and procedures.

**Reproduction of Audit Report**

If the Partnership plans any reproduction or publication of our report, or any portion of it, copies of masters' or printers' proofs of the entire document should be submitted to us in sufficient time for our review and approval before printing. You also agree to provide us with a copy of the final reproduced material for our approval before it is distributed.

**Posting of Audit Report and Financial Statements on Your Web Site**

You agree to indemnify BDO Seidman, LLP from any and all claims that may arise from any differences between the electronic version of the financial statements and audit report presented on your web site, now and in the future, and the signed version of the financial statements and audit report provided to management by BDO Seidman, LLP.

**Review of Documents for Sale of Securities**

The audited financial statements and our report thereon should not be provided or otherwise made available to recipients of any document to be used in connection with the sale of securities (including securities offerings on the Internet) without first submitting copies of the document to us in sufficient time for our review and approval.

**Management Representations**

As required by auditing standards generally accepted in the United States of America, we will request certain written representations from management at the close of our audit to confirm oral representations given to us and to indicate and document the continuing appropriateness of such representations and reduce the possibility of misunderstanding concerning matters that are the subject of the representations. Because of the importance of management's representations to an effective audit and provided the audited financial statements and our report thereon are not included in a registration statement under the Securities Act of 1933 or in a Private Placement Memorandum, the Partnership agrees to release and indemnify BDO Seidman, LLP and its personnel from any liability and costs relating to our services under this agreement attributable to any misrepresentations by the

X-5 (3/6)

BDO0000714
CONFIDENTIAL
CONFIDENTIAL                                                    BDO_S_0004901

CONFIDENTIAL                                                    BDO_T_0004901

RL 2/6/06

 BDO Seidman, LLP
Accountants and Consultants

Gabriel Capital, L.P.
January 27, 2006
Page 4

General Partner and the Partnership's management.

**Availability of Records and Personnel**

You agree that all records, documentation, and information we request in connection with our audit will be made available to us (including those pertaining to related parties), that all material information will be disclosed to us, and that we will have the full cooperation of, and unrestricted access to, your personnel during the course of the engagement.

**Assistance by Your Personnel and Internet Access**

We also ask that your personnel prepare various schedules and analyses for our staff on a timely basis. In addition, we ask that you provide high-speed Internet access to our engagement team, if practicable, while working on the Partnership's premises. This assistance will serve to facilitate the progress of our work and minimize costs to you.

**Other Services**

We are always available to meet with you and other executives at various times throughout the year to discuss current business, operational, accounting, and auditing matters affecting your Partnership. Whenever you feel such meetings are desirable, please let us know. We are also prepared to provide services to assist you in any of these areas. We will also be pleased, at your request, to attend your directors' and Partners' meetings.

**Independence**

Professional and certain regulatory standards require us to be independent, in both fact and appearance, with respect to your Partnership in the performance of our services. Any discussions that you have with personnel of our Firm regarding employment could pose a threat to our independence. Therefore, we request that you inform us prior to any such discussions so that we can implement appropriate safeguards to maintain our independence. In addition, if you hire one of our personnel, you agree to pay us a fee of 20% of that individual's base compensation at your Partnership 90 days from the first day of employment.

**Dispute Resolution Procedure**

If any dispute, controversy, or claim arises in connection with the performance or breach of this agreement (including disputes regarding the validity or enforceability of this agreement), either party may, upon written notice to the other party, request facilitated negotiations. Such negotiations shall be assisted by a neutral facilitator acceptable to both parties and shall require the best efforts of the parties to discuss with each other in good faith

X-5 (4/6)

BDO0000715
CONFIDENTIAL
BDO_S_0004902

CONFIDENTIAL

CONFIDENTIAL                                                                 BDO_T_0004902

RL 2/6/06



BDO Seidman, LLP
Accountants and Consultants

Gabriel Capital, L.P.
January 27, 2006
Page 5

their respective positions and, respecting their different interests, to finally resolve such dispute.

Each party may disclose any facts to the other party or to the facilitator that it, in good faith, considers necessary to resolve the dispute. However, all such disclosures will be deemed in furtherance of settlement efforts and will not be admissible in any subsequent litigation against the disclosing party. Except as agreed by both parties, the facilitator shall keep confidential all information disclosed during negotiations. The facilitator shall not act as a witness for either party in any subsequent arbitration between the parties.

Such facilitated negotiations shall conclude within sixty days from receipt of the written notice unless extended by mutual consent. The parties may also agree at any time to terminate or waive facilitated negotiations. The costs incurred by each party in such negotiations will be borne by it; the fees and expenses of the facilitator, if any, shall be borne equally by the parties.

If any dispute, controversy, or claim arises in connection with the performance or breach of this agreement (including disputes regarding the validity or enforceability of this agreement) and cannot be resolved by facilitated negotiations (or the parties agree to waive that process), then such dispute, controversy, or claim shall be settled by arbitration. The arbitration proceeding shall take place in the city in which the BDO Seidman office providing the relevant services exists, unless the parties agree to a different locale. The proceeding shall be governed by the provisions of the Federal Arbitration Act ("FAA") or, if a court of competent jurisdiction determines the FAA inapplicable, by the laws of the state in which the proceeding is to take place. In any arbitration instituted hereunder, the proceedings shall proceed in accordance with the then current Arbitration Rules for Professional Accounting and Related Disputes of the American Arbitration Association ("AAA"), except that no pre-hearing discovery shall be permitted unless specifically authorized by the arbitration panel.

Such arbitration shall be conducted before a panel of three persons, one chosen by each party and the third selected by the two party-selected arbitrators. The arbitration panel shall have no authority to award non-monetary or equitable relief, and any monetary award shall not include punitive damages. The confidentiality provisions applicable to facilitated negotiation shall also apply to arbitration. The award issued by the arbitration panel may be confirmed in a judgment by any Federal or state court of competent jurisdiction.

X-5 (5/6)

BDO0000716
CONFIDENTIAL

CONFIDENTIAL                                         BDO_S_0004903

CONFIDENTIAL                                         BDO_T_0004903



BDO Seidman, LLP
Accountants and Consultants

RL 2/6/06

Gabriel Capital, L.P.
January 27, 2006
Page 6

**Fees**

Our charges to your Partnership for the audit services described above will be made at our regular rates, plus out-of-pocket expenses.

Our charges for other services will be agreed to separately.

Bills will be rendered on a monthly basis and are due upon receipt. If payments are not received promptly, we reserve the right to stop work on the engagement.

\*    \*    \*    \*    \*

Very truly yours,

*BDO Seidman, LLP*

BDO Seidman, LLP

Acknowledged:

By: _____     __1/29/06__
     Michael E. Autera, Jr.                    Date

G:\FBS\Clients\G\Gabriel\Gabriel05\Eng Ltr 2005.doc

X-5 (6/6)

BDO0000717
CONFIDENTIAL
BDO_S_0004904

CONFIDENTIAL

CONFIDENTIAL    BDO_T_0004904