# **EXHIBIT 40**

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - -x

In Re:

BERNARD L. MADOFF INVESTMENT            Adv.Pro.No.
SECURITIES LLC,                         08-01789(BRL)

        Debtor.

- - - - - - - - - - - - - - - - - -x

IRVING H. PICARD, Trustee for the

Liquidation of Bernard L. Madoff

Investment Securities LLC,

        Plaintiff,                      Adv.Pro.No.

                                                       09-1182(BRL)

v.

J. EZRA MERKIN, GABRIEL CAPITAL,

L.P., ARIEL FUND LTD., ASCOT

PARTNERS, L.P., GABRIEL CAPITAL

CORPORATION,

        Defendants

- - - - - - - - - - - - - - - - - -x


   Videotaped Deposition of WILBUR KIM, held
at the offices of Regus, 101 Federal Street,
Boston, Massachusetts, pursuant to Agreement
before Janet Sambataro, a Registered Merit
Reporter, Certified Realtime Reporter, Certified
LiveNote Reporter, and a Notary Public within
and for the Commonwealth of Massachusetts,
commencing at 1:46 p.m.


   Reporter:  Janet M. Sambataro, RMR, CRR, CLR

59

**CONFIDENTIAL**

1  
2      A.    Right.

3      Q.    Who is <sup>Redacted</sup>?

4      A.         Redacted      .

5      Q.    And Mr.    Redacted    of the    Redacted

6  then says, "I remember well and each successive

7  conversation."

8      A.    Right.

9           MR. KRISHNA:  Maybe just take a little

10  break.

11          THE WITNESS:  Fine by me.  I'm okay

12  either way.  I can move ahead.

13          MR. KRISHNA:  Let's take a quick break.

14  Ten minutes or so.

15          THE VIDEOGRAPHER:  The time is 2:50.

16  We're off the record.

17              (A recess was taken.)

18          THE VIDEOGRAPHER:  We're back on the

19  record.  The time is 3:04.

20  BY MR. KRISHNA:

21      Q.    If we can turn back to Trustee

22  Exhibit --

23      A.    195.

24      Q.    -- 195.  I think there's where we left

25  off.  It says, "I remember well in each

**CONFIDENTIAL**

successive conversation."

    Do you recall any successive conversations you had with anybody regarding the Redacted investment in Ascot?

    MR. PETRILLO: Objection to form.

A. I'm -- I'm sorry. What -- I'm trying to be clear. What -- what do you --

Q. Forget the document for a second.

A. Okay.

Q. Do you recall any conversations you had, after your meeting with Ascot, with anybody else, regarding the investment?

A. Well, it would come up with Mr. Redacted every, you know, every so often, because he's still invested. And he would -- you know, it would come up, and we would talk about it in the sense of, well, here is the total portfolio. Here is Ascot Partners, which we don't know how they're doing, what they're doing.

    And he would look at us and say, I know, I know. I'm going to keep, you know, whatever it was in there. Let's move on. So that's the conversation Redacted is referring to.

Q. I see. And how often would you meet

61

CONFIDENTIAL

2  with Mr. Redacted?

3      A.   In a normal year, you know, four or
4  five times a year.
5      Q.   And what happened during these
6  meetings?
7      A.   We would do what we normally do, which
8  is go through his portfolio, look at the asset
9  allocation, give a high-level description of kind
10 of what was driving the performance and then new
11 opportunities or any adjustments we wanted to
12 make to the program.
13     Q.   And each time you said you would review
14 the Ascot investment?
15     A.   I can't say that we did it every single
16 meeting. But I think, again, what Redacted would be
17 referring to is the fact that, periodically,
18 since '02 to this time frame, it would come up.
19     It could come up in conversation, just like
20 any investment we have in the portfolio. And,
21 you know, his decision by Mr. Redacted was to keep
22 that piece in.
23     Q.   And following your meeting with
24 Mr. Merkin in 2002, did you do any subsequent due
25 diligence on BLMIS?

62

1                       CONFIDENTIAL
2        A.   I was not able to, because I was not
3    given any information to do anything.
4        Q.   When you say you weren't given any
5    information, do you recall if Mr. Merkin gave you
6    access to BLMIS?
7        A.   No.  There was no access.
8             MR. PETRILLO:  Sorry.  Objection to
9    form.
10       Q.   Did you request access to BLMIS?
11       A.   We requested access.  We requested to
12   have a meeting with anybody on the Madoff team.
13   And no offer of a meeting was -- was provided.
14   They basically -- the answer was no.
15       Q.   And was there a reason given?
16       A.   No.  Other than they weren't taking
17   meetings.
18       Q.   And what was your response?
19       A.   That was not acceptable.
20       Q.   And do you recall if Mr. Merkin had any
21   sort of follow-up?
22       A.   No.  I don't recall anything.
23       Q.   And, then, so outside of from
24   Mr. Merkin, when you got back to Cambridge, did
25   you try to find -- what did you do from there?

84

CONFIDENTIAL

Q. And to get answers to these questions, would you have been -- would you have been able to get them from Mr. Merkin?

MR. PETRILLO: Objection to form.

A. So as I stated earlier, my focus was on the investments, what the strategy is, how it was conducted, and less and on the other stuff on this page here, because unless I get satisfied here, I'm not going to move on to the other set of this process.

So I was focusing very much on understanding is this an investment that I can understand, that I can feel is sustainable, and attractive and appropriate for my client. That's where I put all my time and energy.

Q. And in order to get that understanding, you needed access to BLMIS?

A. Yes. Because I was getting nothing else from Mr. Merkin that would actually provide me any of the information to that.

Q. But you weren't provided access?

A. I was provided nothing.

Q. So, therefore, your -- your recommendation was what?

85

CONFIDENTIAL

A. To retreat -- to redeem, exit the investment.

MR. KRISHNA: Thank you. I don't think we have any further questions.

MR. PETRILLO: Very briefly.

CROSS-EXAMINATION

BY MR. PETRILLO:

Q. Sir, I'm Guy Petrillo. I represent, for today's purposes, Mr. Merkin and Gabriel Capital Corp., which is an entity that Mr. Merkin at the relevant time controlled.

My question is, when you had the meeting with Mr. Merkin that you've referred to today, without guessing, without imagining, what do you actually recall about the words spoken?

A. I can't recall specific words or anything to that nature.

Q. Okay.

A. I can recall the experience in the terms of the fact that I was not particularly happy with the lack of information that I got. That I can -- that I can recall.

Q. But sitting here today, for example, can you say, one way or the other, whether you

93

1      WILBUR KIM
2  Disk No. 1 and the end of the deposition.  The
3  time is 3:47.  We're off the record.
4          (Deposition concluded at 3:47 p.m.)