# EXHIBIT 57

# GABRIEL CAPITAL, L.P.

*A Delaware Limited Partnership*

---

## CONFIDENTIAL OFFERING MEMORANDUM

---

**March 2006**

**General Partner:**
450 Park Avenue
32nd Floor
New York, New York 10022

ANY REPRODUCTION OR DISTRIBUTION OF THIS CONFIDENTIAL OFFERING MEMORANDUM, IN WHOLE OR IN PART, OR THE DISCLOSURE OF ANY OF ITS CONTENTS, MAY VIOLATE APPLICABLE SECURITIES LAWS AND IS PROHIBITED WITHOUT THE EXPRESS PRIOR WRITTEN CONSENT OF THE GENERAL PARTNER. NOTWITHSTANDING ANYTHING TO THE CONTRARY HEREIN, EACH INVESTOR (AND EACH EMPLOYEE, REPRESENTATIVE, OR OTHER AGENT OF SUCH INVESTOR) MAY DISCLOSE TO ANY AND ALL PERSONS, WITHOUT LIMITATION OF ANY KIND, THE TAX TREATMENT AND TAX STRUCTURE OF (I) THE PARTNERSHIP AND (II) ANY OF ITS TRANSACTIONS, AND ALL MATERIALS OF ANY KIND (INCLUDING OPINIONS OR OTHER TAX ANALYSES) THAT ARE PROVIDED TO THE INVESTOR RELATING TO SUCH TAX TREATMENT AND TAX STRUCTURE.

The information contained herein is confidential and is furnished for informational purposes only. This Confidential Offering Memorandum supersedes all earlier disclosure concerning the Partnership.

---

9990439.8

CONFIDENTIAL

GCC - SEC 0000874



SECSAZ0000874

# CONFIDENTIAL OFFERING MEMORANDUM

## GABRIEL CAPITAL, L.P.

450 Park Avenue
32nd Floor
New York, New York 10022

Gabriel Capital, L.P., a Delaware limited partnership formed on January 1, 1991 (the "Partnership"), was organized to operate as a private investment partnership for the benefit of U.S. taxable investors. The Partnership's investment objective is to provide limited partners with a total return on their investment consisting of capital appreciation and income by investing in a diverse portfolio of securities. Generally, the Partnership will invest and trade in U.S. and non-U.S., marketable and non-marketable, equity and debt securities and options, as well as other evidences of ownership interest or indebtedness, including receivership certificates, and promissory notes and payables to trade creditors of distressed companies or companies in Chapter 11 bankruptcy proceedings, and commodities contracts, futures contracts (relating to stock indices, options on stock indices, commodities and options on commodities) and forward contracts.  The Partnership will invest in the securities of corporations believed to be fundamentally undervalued. The Partnership will also make indirect investments with third-party managers, including investments through managed accounts and investments in mutual funds, private investment partnerships, closed-end funds and other pooled investment vehicles (including special purpose vehicles), which engage in similar investment strategies as the Partnership (collectively, "Other Investment Entities"). The Partnership expects to invest in private and restricted securities. The Partnership may utilize leverage when deemed appropriate by the General Partner (as defined below), including to enhance the Partnership's returns and meet withdrawals that would otherwise result in the premature liquidation of investments. There can be no assurance that the Partnership's investment objective will be achieved. (See "Investment Program.")

J. Ezra Merkin serves as the general partner of the Partnership (the "General Partner"). The General Partner has ultimate responsibility for the management, operations and investment decisions made on behalf of the Partnership. Gabriel Capital Corporation, a Delaware corporation (the "Management Company"), provides administrative and managerial services to the Partnership. All of the outstanding capital stock of the Management Company is owned or controlled by J. Ezra Merkin.

This Confidential Offering Memorandum relates to an offering of Class B limited partner interests in the Partnership (the "Interests") to certain investors that, if accepted, will become limited partners of the Partnership (each, a "Limited Partner" or "Class B Limited Partner"). The Partnership has issued Class A interests (the "Class A Interests") to investors (each, a "Class A Limited Partner", and together with the Class B Limited Partners and the General Partner, the "Partners"). The Partnership may offer Interests to prospective new Limited Partners as of the beginning of each quarter (or at such other times as the General Partner in its sole discretion may allow).

9990439.8

-i-

Investors in the Partnership must be "accredited investors" as defined in Rule 501 under the Securities Act of 1933, as amended, "qualified purchasers" as such term is defined in Section 2(a)(51) of the Investment Company Act of 1940, as amended, (the " Company Act"), and must meet other suitability requirements. Interests may not be purchased by nonresident aliens, foreign corporations, foreign partnerships, foreign trusts or foreign estates, all as defined in the Internal Revenue Code of 1986, as amended (the "Code"), or by entities that are tax-exempt. Such investors may be eligible to invest in Ariel Fund Limited, a Cayman Islands exempted company that maintains a similar investment program as that of the Partnership. The General Partner, in its sole discretion, may decline to admit a prospective investor for any reason or for no reason, even if it satisfies the Partnership's suitability requirements.

Interests in the Partnership are suitable only for sophisticated investors (i) that do not require immediate liquidity for their investments, (ii) for which an investment in the Partnership does not constitute a complete investment program and (iii) that fully understand and are willing to assume the risks involved in the Partnership's investment program. The Partnership's investment practices, by their nature, may be considered to involve a substantial degree of risk. (See "Investment Program" and "Certain Risk Factors").

Prospective investors should carefully read this Confidential Offering Memorandum. The contents of this Confidential Offering Memorandum, however, should not be considered legal or tax advice, and each prospective investor should consult its own counsel and advisers as to all matters concerning an investment in the Partnership.

There will be no public offering of the Interests. No offer to sell (or solicitation of an offer to buy) will be made in any jurisdiction in which such offer or solicitation would be unlawful.

This Confidential Offering Memorandum has been prepared solely for the information of the person to whom it has been delivered on behalf of the Partnership and may not be reproduced or used for any other purpose. The dissemination, distribution, reproduction or other use of all or any portion of this Confidential Offering Memorandum or the divulgence of any of its contents other than to the prospective investor's financial, tax or legal advisors, without the prior written approval of the General Partner, is prohibited. Any person that receives this Confidential Offering Memorandum and does not purchase a Interest is requested to promptly return this Confidential Offering Memorandum to the General Partner. Notwithstanding anything herein to the contrary, each investor (and each employee, representative, or other agent of such investor) may disclose to any and all persons, without limitation of any kind, the tax treatment and tax structure of (i) the Partnership and (ii) any transactions described herein, and all materials of any kind (including opinions or other tax analyses) that are provided to the investor relating to such tax treatment and tax structure. Each person accepting this Confidential Offering Memorandum agrees to return it to the General Partner promptly upon request. This Confidential Offering Memorandum is accurate as of its date, and no representation or warranty is made as to its continued accuracy after such date.

The Partnership will not be registered as an investment company under the Company Act and, therefore, will not be required to adhere to certain operational restrictions and

9990439.8

-ii-

CONFIDENTIAL                    GCC - SEC 0000876

SECSAZ0000876

requirements under the Company Act. The General Partner is not registered as an investment adviser under the Investment Advisers Act of 1940, as amended.

---

WHILE THE PARTNERSHIP MAY TRADE COMMODITY FUTURES AND/OR COMMODITY OPTIONS CONTRACTS, THE GENERAL PARTNER IS EXEMPT FROM REGISTRATION WITH THE COMMODITY FUTURES TRADING COMMISSION ("CFTC") AS A COMMODITY POOL OPERATOR ("CPO") PURSUANT TO CFTC RULE 4.13(a)(4). THEREFORE, UNLIKE A REGISTERED CPO, THE GENERAL PARTNER IS NOT REQUIRED TO DELIVER A CFTC DISCLOSURE DOCUMENT TO PROSPECTIVE LIMITED PARTNERS, NOR IS HE REQUIRED TO PROVIDE LIMITED PARTNERS WITH CERTIFIED ANNUAL REPORTS THAT SATISFY THE REQUIREMENTS OF CFTC RULES APPLICABLE TO REGISTERED CPOs.

THE GENERAL PARTNER QUALIFIES FOR THE EXEMPTION UNDER CFTC RULE 4.13(a)(4) ON THE BASIS THAT, AMONG OTHER THINGS (I) EACH LIMITED PARTNER IS EITHER (A) A NATURAL PERSON WHO IS A "QUALIFIED ELIGIBLE PERSON" AS DEFINED IN CFTC RULE 4.7(a)(2) OR (B) A NON-NATURAL PERSON THAT IS EITHER AN "ACCREDITED INVESTOR" AS DEFINED UNDER SECURITIES AND EXCHANGE COMMISSION RULES OR A "QUALIFIED ELIGIBLE PERSON AS DEFINED UNDER CFTC RULE 4.7; AND (II) INTERESTS IN THE PARTNERSHIP ARE EXEMPT FROM REGISTRATION UNDER THE SECURITIES ACT OF 1933 AND OFFERED AND SOLD WITHOUT MARKETING TO THE PUBLIC IN THE UNITED STATES.

---

NO OFFERING LITERATURE OR ADVERTISING IN WHATEVER FORM WILL BE EMPLOYED IN THE OFFERING OF THE INTERESTS EXCEPT FOR THIS CONFIDENTIAL OFFERING MEMORANDUM, STATEMENTS CONTAINED HEREIN AND WRITTEN MATERIALS SPECIFICALLY APPROVED BY THE GENERAL PARTNER. NO PERSON HAS BEEN AUTHORIZED TO MAKE ANY REPRESENTATION OR GIVE ANY INFORMATION WITH RESPECT TO THE INTERESTS, EXCEPT FOR THE INFORMATION CONTAINED HEREIN.

THE INTERESTS HAVE NOT BEEN FILED WITH OR APPROVED OR DISAPPROVED BY THE SECURITIES AND EXCHANGE COMMISSION OR ANY OTHER GOVERNMENTAL AGENCY OR REGULATORY AUTHORITY OR ANY NATIONAL SECURITIES EXCHANGE. NO SUCH AGENCY, AUTHORITY OR EXCHANGE HAS PASSED UPON THE ACCURACY OR ADEQUACY OF THIS CONFIDENTIAL OFFERING MEMORANDUM OR THE MERITS OF AN INVESTMENT IN THE PARTNERSHIP INTERESTS OFFERED HEREBY. ANY REPRESENTATION TO THE CONTRARY IS UNLAWFUL.

5990439.8

-iii-

CONFIDENTIAL

GCC - SEC 0000877

IN MAKING AN INVESTMENT DECISION, INVESTORS MUST RELY UPON THEIR OWN EXAMINATION OF THE PARTNERSHIP AND THE TERMS OF THE OFFERING, INCLUDING THE MERITS AND RISKS INVOLVED.

EACH PROSPECTIVE INVESTOR IS INVITED TO MEET WITH THE GENERAL PARTNER TO DISCUSS WITH, ASK QUESTIONS OF, AND RECEIVE ANSWERS FROM, THE GENERAL PARTNER CONCERNING THE TERMS AND CONDITIONS OF THIS OFFERING OF THE INTERESTS, AND TO OBTAIN ANY ADDITIONAL INFORMATION, TO THE EXTENT THE PARTNERSHIP POSSESSES SUCH INFORMATION OR CAN ACQUIRE IT WITHOUT UNREASONABLE EFFORT OR EXPENSE, NECESSARY TO VERIFY THE INFORMATION CONTAINED HEREIN.

THESE SECURITIES ARE SUBJECT TO RESTRICTIONS ON TRANSFERABILITY AND RESALE AND MAY NOT BE TRANSFERRED OR RESOLD EXCEPT AS PERMITTED UNDER THE SECURITIES ACT OF 1933, AS AMENDED, PURSUANT TO REGISTRATION OR EXEMPTION THEREFROM. INVESTORS SHOULD BE AWARE THAT THEY MAY BE REQUIRED TO BEAR THE FINANCIAL RISKS OF THIS INVESTMENT FOR AN INDEFINITE PERIOD OF TIME.

*     *     *     *

9990439.%

CONFIDENTIAL

GCC – SEC 0000878

SECSAZ0000878

# TABLE OF CONTENTS

Page

SUMMARY OF TERMS .................................................................................. 1

THE PARTNERSHIP ...................................................................................... 14

INVESTMENT PROGRAM .............................................................................. 14

THE GENERAL PARTNER AND THE MANAGEMENT COMPANY ...................... 16

THE INTERESTS ........................................................................................... 16

SALES CHARGES ......................................................................................... 17

FISCAL YEAR .............................................................................................. 17

SPECIAL INVESTMENT SUB-ACCOUNTS ...................................................... 17

ALLOCATIONS OF GAINS AND LOSSES; INCENTIVE ALLOCATION ............... 18

MANAGEMENT FEE; EXPENSES .................................................................... 18

CERTAIN RISK FACTORS .............................................................................. 19

CONFLICTS OF INTEREST ............................................................................. 30

BROKERAGE COMMISSIONS ........................................................................ 31

OUTLINE OF PARTNERSHIP AGREEMENT ..................................................... 32

ANTI-MONEY LAUNDERING REGULATIONS .................................................. 50

LIMITATIONS ON TRANSFERABILITY; SUITABILITY REQUIREMENTS ............ 50

COUNSEL ..................................................................................................... 51

AUDITOR; REPORTS .................................................................................... 51

SUBSCRIPTION FOR INTERESTS .................................................................. 51

ADDITIONAL INFORMATION ........................................................................ 52

99990439.8

-v-

CONFIDENTIAL

GCC - SEC 0000879

SECSAZ0000879

# GABRIEL CAPITAL, L.P.

## SUMMARY OF TERMS

The following is a summary of the principal terms of the Partnership (as defined below). The following summary is qualified in its entirety by the more detailed information set forth in this Confidential Offering Memorandum and by the terms and conditions of the Limited Partnership Agreement of the Partnership, as the same may be amended from time to time. This summary should be read in conjunction with such detailed information.

**THE PARTNERSHIP:**

Gabriel Capital, L.P., a Delaware limited partnership formed on January 1, 1991 (the "Partnership"), was organized to operate as a private investment partnership for the benefit of U.S. taxable investors. (See "The Partnership.")

Ariel Fund Limited, a Cayman Islands exempted company organized for the benefit of U.S. tax-exempt and non-U.S. investors, follows an investment program substantially similar to that of the Partnership (the "Offshore Fund"). The Offshore Fund and the Partnership will invest on a side-by-side basis, unless differences in the investments of the Offshore Fund or the U.S. Partnership are deemed to be in the best interest of the respective fund's investors.

**INVESTMENT PROGRAM:**

The Partnership's investment objective is to provide limited partners with a total return on their investment consisting of capital appreciation and income by investing in a diverse portfolio of securities. Generally, the Partnership will invest and trade in U.S. and non-U.S., marketable and non-marketable, equity and debt securities and options, as well as other evidences of ownership interest or indebtedness, including receivership certificates, and promissory notes and payables to trade creditors of distressed companies or companies in Chapter 11 bankruptcy proceedings, and commodities contracts, futures contracts (relating to stock indices, options on stock indices, commodities and options on commodities) and forward contracts. The Partnership will invest in the securities of corporations believed to be fundamentally undervalued. The Partnership will also make indirect investments with third-party managers, including investments through managed accounts and investments in mutual funds, private investment partnerships, closed-end funds and other pooled investment vehicles (including special

9990439.8

1

purpose vehicles), which engage in similar investment strategies as the Partnership (collectively, "Other Investment Entities"). The Partnership expects to invest in private and restricted securities. The Partnership may utilize leverage when deemed appropriate by the General Partner (as defined below), including to enhance the Partnership's returns and meet withdrawals that would otherwise result in the premature liquidation of investments. There can be no assurance that the Partnership's investment objective will be achieved. (See "Investment Program.")

When the Partnership engages in investments through Other Investment Entities, fees, including performance-based fees, may be payable by the Partnership, in addition to the fees payable to the General Partner discussed below. In such cases, the General Partner will retain overall investment responsibility for the portfolio of the Partnership (although not the investment decisions of any independent money managers managing Other Investment Entities). Such arrangements are subject to periodic review by the General Partner and are terminable at reasonable intervals in the General Partner's discretion. The Partnership may withdraw from or invest in different investment funds and terminate or enter into new investment advisory agreements without prior notice to, or consent of, the Limited Partners (as defined below). (See "Certain Risk Factors — Independent Money Managers.")

From time to time, the General Partner may, in his sole discretion, acquire assets or securities that the General Partner believes lack a readily ascertainable market value or otherwise lack sufficient liquidity. Certain of these investments (not exceeding 40% of the net asset value of each Limited Partner's capital accounts, calculated at the time such investments are designated, and with such investments valued at cost) may be designated special investments (each a "Special Investment") to be put into separate special investment sub-accounts ("Special Investment Sub-Accounts"). In addition, existing investments may be designated Special Investments and will be valued at their carry value when so designated. Interests in a Special Investment Sub-Account are allocated *pro rata* to those investors that are Partners (defined below) at the time a Special Investment is made (or

99904393

2

CONFIDENTIAL

GCC – SEC 0000881

designated).  (See Special Investment Sub-Accounts; Allocation of Gains and Losses and Incentive Allocation.")

The General Partner will not permit more than the greater of 50% of the Partnership's capital and 25% of the Partnership's total assets (on a cost basis, giving consideration to hedging techniques utilized) to be invested in a single investment. Moreover, it will not permit more than 10% of the Partnership's capital to be placed at risk in a single investment. The General Partner will have the discretion to determine how much is at risk for purposes of this test.

**The Partnership's investment program is speculative and may entail substantial risks. Since market risks are inherent in all investments to varying degrees, there can be no assurance that the Partnership's investment objectives will be achieved. In fact, certain investment practices described above can, in some circumstances, substantially increase the adverse impact on the Partnership's investment portfolios. . (See "Certain Risk Factors.")**

**THE GENERAL PARTNER; MANAGEMENT COMPANY:**

J. Ezra Merkin will serve as the general partner of the Partnership (the "General Partner"). The General Partner has ultimate responsibility for the management, operations and investment decisions made on behalf of the Partnership.

Gabriel Capital Corporation, a Delaware corporation (the "Management Company"), provides administrative and managerial services to the Partnership. All of the outstanding capital stock of the Management Company is owned or controlled by J. Ezra Merkin.

**THE INTERESTS**

This Confidential Offering Memorandum relates to an offering of Class B limited partner interests in the Partnership (the "Interests") to certain investors that, if accepted, will become limited partners of the Partnership (each a "Limited Partner" or a "Class B Limited Partner"). The Partnership has issued Class A interests (the "Class A Interests") to investors (each, a "Class A Limited Partner", and together with the Class B Limited Partners and the General Partner, the "Partners"). Class A Interests have different redemption rights and less exposure to Special Investments than the Limited Partner

9990439.1

3

CONFIDENTIAL

GCC - SEC 0000882

SECSAZ0000882

Interests.

The General Partner may issue other classes of interests in the future that differ in terms of, among other things, rights, powers and duties, including rights, powers and duties senior to existing classes of Limited Partners. The General Partner may establish new classes of interests, and determine the terms of such classes, without approval of the existing Limited Partners. (See "The Interests.")

**SPECIAL INVESTMENT SUB-ACCOUNTS**

The Partnership will establish a Special Investment Sub-Account for each investment that the General Partner deems a Special Investment. Only persons that are Partners at the time such Special Investment Sub-Account is established shall participate in such Special Investment Sub-Account and their respective Interests therein shall be determined in accordance with their respective partnership percentages at the time such Special Investment Sub-Account is established. Any security position in a Special Investment Sub-Account shall not be considered to be a part of a Partner's capital account, except to the extent the investment or the proceeds of such Special Investment Sub-Account are reallocated to a Partner's capital account. Upon a sale, distribution to Partners or other disposition which shall constitute a "realization" of all or a portion of a Special Investment held in a Special Investment Sub-Account (including a determination by the General Partner, in his sole discretion, that such special investment should no longer be maintained in a Special Investment Sub-Account), the net proceeds of such investment will be allocated to the capital accounts of the Partners participating in such Special Investment Sub-Account in proportion to such Partners' participating percentages in such Special Investment Sub-Account.

In the event the Partnership makes an investment that the General Partner determines is a follow-up investment to a Special Investment held in a Special Investment Sub-Account (each a "Follow-Up Investment"), the participating Partners shall share in such Follow-Up Investment in proportion to their participating percentage interest in the related Special Investment Sub-Account; *provided, however,* that the General Partner, in his reasonable discretion, may permit additional Limited Partners to participate in such Follow-up Investment; *provided further, however,* that if a Limited Partner shall have withdrawn from the

99990439.8

4

CONFIDENTIAL

GCC — SEC 0000883

SECSAZ0000883

Partnership, the General Partner shall equitably adjust the participating percentage interests of the remaining participating Partners to reflect such Limited Partner's withdrawal and non-participation in the Follow-Up Investment. In its discretion, the General Partner need not designate as a "Follow-Up Investment" an additional investment in the same or similar opportunity as the investment for which a Special Investment Sub-Account has been established.    Such investment may be designated as a new Special Investment. (See "Special Investment Sub Accounts.")

**MINIMUM SUBSCRIPTION:**    The Partnership may offer. Interests to new Limited Partners as of the beginning of each quarter (or at such other times as the General Partner in its sole discretion may allow).

The minimum initial subscription is $1,000,000 for an Interest in the Partnership, subject to the discretion of the General Partner to accept lesser amounts.

**ADDITIONAL CAPITAL CONTRIBUTIONS:**    Limited Partners of the Partnership may make additional capital contributions in amounts of at least $250,000 with the consent of the General Partner and subject to his discretion to accept other amounts.    Each capital contribution of a Limited Partner will be credited to such Limited Partner's capital account.

**SALES CHARGES:**    There are no sales charges payable to the General Partner or the Partnership in connection with the offering of Interests. (See "Sales Charges.")

**FISCAL YEAR:**    The fiscal year of the Partnership will end on December 31 of each calendar year.

**ALLOCATION OF GAINS AND LOSSES AND INCENTIVE ALLOCATION:**    Partnership loss for each accounting period will be allocated among the Partners in proportion to the balance in their respective capital accounts at the start of such period. . At the end of each accounting period, each Partner's capital account will be increased proportionately to reflect Partnership income for each accounting period (including any increase reflecting such Partner's share of cash or value of securities or proceeds transferred from a Special Investment Sub-Account to the Partner's capital account (based upon its *pro rata* interest in such Special Investment Sub-Account) and decreased by the cash or value of securities transferred from such Partner's capital account to a Special Investment Sub-Account).    Income

5990439.8

5

SECSAZ0000884

and loss for this purpose will include unrealized appreciation and depreciation on investments (other than unrealized appreciation or depreciation in a Special Investment Sub-Account).

Each Limited Partner's share of the Partnership's net income in excess of the Management Fee (defined below) for the accounting periods to date during that year (including any income or loss realized on investments previously held in Special Investment Sub-Accounts) will be allocated 20% to the General Partner (or to a designee as he shall direct) and 80% to such Limited Partner (the "Incentive Allocation"). Similar allocations will be made with respect to a Limited Partner's capital account at the time such Limited Partner withdraws capital from the Partnership. There is no "high water mark" concept in the calculation of Incentive Allocation. At his discretion, the General Partner may waive the allocations described above with respect to any particular Limited Partner.

Whenever income or loss is realized (or deemed realized) in a Special Investment Sub-Account, such income or loss will be allocated to all Partners having an interest in such account *pro rata* in proportion to their interest in such account, and then transferred to such Partner's regular capital account at the end of the accounting period. Notwithstanding the foregoing, if a Limited Partner withdraws all or substantially all of its capital account (becoming a "Withdrawn Limited Partner") before the realization (as described herein) of that portion of his capital allocated to a Special Investment Sub-Account, income realized or deemed realized subsequent to withdrawal will be allocated 20% to the General Partner (or to a designee as it shall direct) and 80% to such Withdrawn Limited Partner.

**MANAGEMENT FEE; OPERATING AND OTHER EXPENSES:**

On the last business day of each fiscal year of the Partnership and upon dissolution, an amount equal to 1% (prorated for periods of less than a year) of each Limited Partner's capital account balance at the beginning of such year plus such Partner's contributed capital during such year (including all amounts allocated to a Special Investment Sub-Account) will be charged against such Limited Partner's capital account and paid to the General Partner as a management fee (the "Management Fee"). At his discretion, the General Partner may waive the fees described above with respect to any particular Limited

9990439.8

6

CONFIDENTIAL

GCC – SEC 0000885

SECSAZ0000885

Partner.

The Partnership shall (i) pay, or cause to be paid, all costs, fees, operating expenses and other expenses of the Partnership (including the costs, fees and expenses of attorneys, accountants or other professionals and the compensation of all personnel providing services to the Partnership, including, in the discretion of the General Partner, the General Partner) incurred in organizing the Partnership and in pursuing and conducting, or otherwise related to, the activities of the Partnership, and (ii) reimburse the General Partner for any out-of-pocket costs, fees and expenses incurred by him in connection therewith. The amount of any costs, fees and expenses incurred in connection with the purchase, sale or carrying of any security, including, but not limited to, brokerage and other transaction costs and margin interest expenses will be paid by the Partnership. Notwithstanding the foregoing, any investment expense relating specifically to a Special Investment Sub-Account will be charged against the capital accounts of the Partners participating in such Special Investment Sub-Account in proportion to their respective participating percentage interests therein.

In addition, the Partnership is responsible for certain expenses of the General Partner, including, but not limited to, rent and salaries of personnel. Historically, such expenses have not exceeded 1% of the Partnership's net assets, however, there can be no assurance that this will continue to be true in the future.

If any of the above expenses are incurred jointly for the account of the Partnership and any other investment funds or trading accounts sponsored or managed by the General Partner or his affiliates, such expenses will be allocated to the Partnership and such other funds or accounts in a manner as the General Partner considers fair and reasonable. (See "Management Fee; Expenses"; "Brokerage Commissions"; "Auditors"; and Financial Reports.")

WITHDRAWALS:    A Class B Limited Partner may withdraw all or part of such Limited Partner's capital account from the Partnership with respect to capital contributions made on or after February 1, 2006 at the end of the calendar quarter after the two year anniversary of the date such Interests were purchased (the "First Withdrawal Date"),

9990439.8

7

and, thereafter, on each anniversary of the First Withdrawal Date upon 45 days prior written notice to the General Partner.

A Class A Limited Partner may withdraw all or part of such Limited Partner's capital account from the Partnership on June 30 or December 31 of any fiscal year upon 45 days prior written notice to the General Partner.

Each date as of which a Limited Partner withdraws all or a portion of its capital account or withdraws from the Partnership is herein referred to as a "Withdrawal Date."

Excluding amounts allocated to Special Investment Sub-Accounts, the Withdrawing Partner will receive the amount of such Limited Partner's capital account (less reserves determined by the General Partner for contingent liabilities) within 90 days after withdrawal. All amounts remaining unpaid (less reserves) will begin to bear interest at a rate equal to a specified broker's call rate for the period beginning 30 days after the effective date of such withdrawal and ending 90 days after the effective date of such withdrawal.

A distribution in respect of a withdrawal may be made in cash or in kind, as determined by the General Partner in its discretion. In-kind distributions will be made to Withdrawing Limited Partners on a *pro rata* basis.

Limited Partners may not otherwise make withdrawals, and the Partnership does not plan to make *pro rata* distributions to Partners on an on-going basis.

**SPECIAL INVESTMENT SUB-ACCOUNT WITHDRAWAL**

Notwithstanding the foregoing, no withdrawal may be made by a Limited Partner from any portion of its capital account that is allocated to a Special Investment Sub-Account. If a portion of a Withdrawn Limited Partner's capital account has been allocated to a Special Investment Sub-Account, then, unless otherwise determined by the General Partner, the amount distributed to such Withdrawn Limited Partner will not include any interest of such Partner in such Special Investment Sub-Account. Such Partner will retain its interest in any Special Investment Sub-Account until the realization or deemed realization of the Special Investment relating to such Special Investment Sub-Account. Income realized or deemed realized

9990439.8

8

CONFIDENTIAL

GCC − SEC 0000887

SECSAZ0000887

subsequent to withdrawal will be allocated 20% to the General Partner (or to a designee as it shall direct) and 80% to such Withdrawn Limited Partner. Any loss realized subsequent to such withdrawal shall be allocated to the Withdrawn Limited Partner. Upon the realization of a Special Investment of a Withdrawn Limited Partner which is held in a Special Investment Sub-Account, the proceeds allocable to that Withdrawn Limited Partner, after reduction for the Incentive Allocation, if any, will be paid to the Withdrawn Limited Partner.

In addition, if after giving effect to a withdrawal, a Limited Partner would be completely withdrawn from the Partnership except for its interest in one or more Special Investment Sub-Accounts, all or a portion of the proceeds with respect to such withdrawal may be reserved or held back to pay for the Management Fee expected to be earned over the life of the Special Investments. Upon the realization or deemed realization of the applicable Special Investments, any unused reserve or hold back shall be paid to such Limited Partner.

To the extent, the amount reserved or held back to pay Management Fees (as described above) does not cover Management Fees that would otherwise be payable over the life of the Special Investment, then such unpaid Management Fees may be paid out of profits, if any, earned in respect of such Special Investment for the period beginning from the time such shortfall begins to accrue until realization or deemed realization. "Accrued Interest" is the amount of interest earned on any amount held back that, at the time of calculation, has not been applied to the Management Fees in respect of any Special Investment Sub-Account of a Limited Partner that has withdrawn all or substantially all of its capital account.

**COMPULSORY WITHDRAWAL; SUSPENSION OF WITHDRAWAL RIGHTS:**

The General Partner may, in its sole discretion, terminate the Interest of any Limited Partner, in whole or in part, upon at least thirty days prior written notice.

The General Partner, by written notice to any Limited Partner, may suspend the withdrawal rights of such Limited Partner if the General Partner reasonably deems it necessary to do so to comply with anti-money laundering laws and regulations applicable to the Partnership, the General Partner or any of the

9990439.8

9

CONFIDENTIAL

GCC - SEC 0000888

SECSAZ0000888

Partnership's other service providers. (See "Anti-Money Laundering Regulations" and "Outline of Partnership Agreement.")

**DISSOLUTION:**

The Partnership will dissolve upon the first to occur of the following: (i) a determination by the General Partner that the Partnership should be dissolved or (ii) the death, bankruptcy, retirement or insanity of the General Partner which prevents him from devoting substantially his entire time, skill and attention to the Partnership and other funds and managed accounts for a period of 90 days; (iii) December 31, 2015; or (iv) any event causing the dissolution of the Partnership under the laws of the State of Delaware.

**RESTRICTIONS ON TRANSFER:**

No Limited Partner or transferee thereof will, without the prior written consent of the General Partner, which may be withheld in his sole discretion, create, or suffer the creation of, a security interest in such Limited Partner's Interest.    Except for sales, transfers, assignments or other dispositions (i) by last will and testament, (ii) by operation of law, or (iii) to an affiliate of a Limited Partner, without the prior written consent of the General Partner, which may be withheld in his sole discretion, no Limited Partner shall sell, transfer, assign, or in any manner dispose of such Limited Partner's Interest, in whole or in part, nor enter into any agreement as the result of which any person shall become interested with such Limited Partner therein. (See "Limitations on Transferability; Suitability Requirements.")

**CERTAIN RISK FACTORS:**

There can be no assurance that the investment objective of the Partnership will be achieved. Investments in illiquid securities and the use of short sales, options, leverage, futures and other derivative instruments may create special risks and substantially increase the impact of adverse price movements on the Partnership's portfolio.    The Incentive Allocation to the General Partner may create an incentive for the General Partner to cause the Partnership to make investments that are riskier than it would otherwise make. Moreover, an investment in the Partnership provides limited liquidity since the Interests are not freely transferable, and the Partners will have limited withdrawal rights. (See "Certain Risk Factors.")

9990439.8

10

CONFIDENTIAL

GCC - SEC 0000889

SECSAZ0000889

LEVERAGE:

The Partnership has the power to borrow and may do so when deemed appropriate by the General Partner, including to enhance the Partnership's returns and meet withdrawals that would otherwise result in the premature liquidation of investments. The use of leverage can, in certain circumstances, substantially increase the losses to which the Partnership's investment portfolios may be subject. (See "Certain Risk Factors.")

BROKERAGE COMMISSIONS:

Portfolio transactions for the Partnership will be allocated to brokers on the basis of best execution and in consideration of a broker's ability to effect the transactions, its facilities, reliability and financial responsibility and the provision or payment by the broker of the costs of research and research-related services which are of benefit to the Partnership, the General Partner or related funds and accounts. Accordingly, the commission rates (or dealer markups and markdowns arising in connection with riskless principal transactions) charged to the Partnership by brokers in the foregoing circumstances may be higher than those charged by other brokers who may not offer such services. The General Partner has not entered into, and does not expect to enter into, any written soft dollar arrangements.

Morgan Stanley & Co., Inc. (the "Prime Broker") currently serves as the principal prime broker for the Partnership, and clears (generally on the basis of payment against delivery) the Partnership's securities transactions that are effected through other brokerage firms. The Partnership is not committed to continue its relationship with the Prime Broker for any minimum period and the General Partner may select other or additional brokers to act as prime brokers for the Partnership. (See "Brokerage Commissions.")

CONFLICTS OF INTEREST:

The General Partner and his affiliates will provide investment management services to managed accounts and other investment partnerships or funds, some of which have similar investment objectives to those of the Partnership. Such activities may raise conflicts of interest. However, the General Partner or his affiliates, as applicable, will undertake to do so in a manner that is consistent with their respective fiduciary duties to the Partnership. (See "Conflicts of Interest.")

REGULATORY MATTERS:

The Partnership is not registered as an investment

9990439.8

11

CONFIDENTIAL

GCC - SEC 0000890

SECSAZ0000890

company and, therefore, is not required to adhere to certain operational restrictions and requirements under the Company Act.

The Partnership relies on the exclusion provided in Section 3(c)(7) of the U.S. Investment Company Act of 1940, as amended, which permits private investment companies to sell their interests, on a private placement basis, to an unlimited number of "qualified purchasers", as defined in Section 2(a)(51) of the Company Act.

The General Partner will claim an exemption under Commodity Futures Trading Commission ("CFTC") Rule 4.13(a)(4) from registration with the CFTC as a commodity pool operator and, accordingly, is not subject to certain regulatory requirements with respect to the Partnership that would otherwise be applicable absent such an exemption.

The General Partner is not registered as an investment adviser under the Investment Advisers Act of 1940, as amended. (See "The General Partner" and "Limitations on Transferability; Suitability Requirements.")

**SUITABILITY:**

Investors in the Partnership must be "accredited investors" as defined in Rule 501 under the Securities Act of 1933, as amended, "qualified purchasers" as such term is defined in Section 2(a)(51) of the Company Act and must meet other suitability requirements. Interests may not be purchased by nonresident aliens, foreign corporations, foreign partnerships, foreign trusts or foreign estates, all as defined in the Internal Revenue Code of 1986, as amended (the "Code"), or by entities that are tax-exempt. Such investors may be eligible to invest in the Offshore Fund which has a substantially similar investment program to that of the Partnership.

The General Partner, in its sole discretion, may decline to admit a prospective investor for any other reason or for no reason, even if it satisfies the Partnership's suitability requirements. (See "Limitations on Transferability; Suitability Requirements.")

**TAXATION:**

The Partnership operates as a partnership and not as an association or a publicly traded partnership taxable as a corporation for Federal tax purposes. Accordingly, the Partnership should not be subject to Federal income tax, and each Limited Partner will be required to report on

CONFIDENTIAL                                    GCC - SEC 0000891

                                                SECSAZ0000891

its own annual tax return such Limited Partner's distributive share of the Partnership's taxable income or loss. (See "Tax Aspects.")

**ERISA AND OTHER TAX-EXEMPT ENTITIES:**

Tax-exempt entities subject to the Employment Retirement Income Security Act of 1974, as amended, and other tax-exempt entities may purchase shares in the Offshore Fund, but will not be offered Interests in the Partnership.

**AUDITORS:**

BDO Seidman, LLP serves as the Partnership's auditor. The Partnership will provide to the Limited Partners unaudited financial statements within 35 days after the end of each calendar quarter (other than the last) and will furnish to them annual audited financial statements within 90 days after year end, and tax information as soon thereafter as practicable. Certain Limited Partners may have access to certain information regarding the Partnership that may not be available to other Limited Partners. Such Limited Partners may make investment decisions with respect to their investment in the Partnership based on such information.

**LEGAL COUNSEL:**

Schulte Roth & Zabel LLP, 919 Third Avenue, New York, New York 10022, acts as counsel to the Partnership in connection with this offering of Interests. Schulte Roth & Zabel LLP also acts as counsel to the General Partner and his affiliates. In connection with the Partnership's offering of Interests and subsequent advice to the Partnership, the General Partner and his affiliates, Schulte Roth & Zabel LLP will not be representing the Limited Partners of the Partnership. No independent counsel has been retained to represent the Limited Partners of the Partnership.

**SUBSCRIPTION FOR INTEREST:**

Persons interested in subscribing for Interests will be furnished with, and will be required to complete and return to the General Partner, subscription documents and other certain documents.

CONFIDENTIAL

GCC  –  SEC 0000892

SECSAZ0000892

## THE PARTNERSHIP

Gabriel Capital, L.P., a Delaware limited partnership formed on January 1, 1991 (the "Partnership"), was organized to operate as a private investment partnership for the benefit of U.S. taxable investors.

Ariel Fund Limited, a Cayman Islands exempted company organized for the benefit of U.S. tax-exempt and non-U.S. investors, follows an investment program substantially similar to that of the Partnership (the "Offshore Fund"). The Offshore Fund and the Partnership will invest on a side-by-side basis, unless differences in the investments of the Offshore Fund or the U.S. Partnership are deemed to be in the best interest of the respective fund's investors.

## INVESTMENT PROGRAM

The Partnership's investment objective is to provide limited partners with a total return on their investment consisting of capital appreciation and income by investing in a diverse portfolio of securities. Generally, the Partnership will invest and trade in U.S. and non-U.S., marketable and non-marketable, equity and debt securities and options, as well as other evidences of ownership interest or indebtedness, including receivership certificates, and promissory notes and payables to trade creditors of distressed companies or companies in Chapter 11 bankruptcy proceedings, and commodities contracts, futures contracts (relating to stock indices, options on stock indices, commodities and options on commodities) and forward contracts. The Partnership will invest in the securities of corporations believed to be fundamentally undervalued. The Partnership will also make indirect investments with third-party managers, including investments through managed accounts and investments in mutual funds, private investment partnerships, closed-end funds and other pooled investment vehicles (including special purpose vehicles), which engage in similar investment strategies as the Partnership (collectively, "Other Investment Entities"). The Partnership expects to invest in private and restricted securities. The Partnership may utilize leverage when deemed appropriate by the General Partner (as defined below), including to enhance the Partnership's returns and meet withdrawals that would otherwise result in the premature liquidation of investments. **There can be no assurance that the Partnership's investment objective will be achieved.**

When the Partnership engages in investments through Other Investment Entities, fees, including performance-based fees, may be payable by the Partnership, in addition to the fees payable to the General Partner discussed below. In such cases, the General Partner will retain overall investment responsibility for the portfolio of the Partnership (although not the investment decisions of any independent money managers managing Other Investment Entities). Such arrangements are subject to periodic review by the General Partner and are terminable at reasonable intervals in the General Partner's discretion. The Partnership may withdraw from or invest in different investment funds and terminate or enter into new investment advisory agreements without prior notice to, or consent of, the Limited Partners. (See "Certain Risk Factors – Independent Money Managers").

From time to time, the General Partner may, in his sole discretion, acquire assets or securities that the General Partner believes lack a readily ascertainable market value or otherwise lack sufficient liquidity. Certain of these investments (not exceeding 40% of the net asset value of each Limited Partner's capital accounts, calculated at the time such investments are

9990439.8                                          14

SECSAZ0000893

designated, and with such investments valued at cost) may be designated special investments (each a "Special Investment") to be put into separate special investment sub-accounts ("Special Investment Sub-Accounts"). In addition, existing investments may be designated Special Investments and will be valued at their carry value when so designated. Interests in a Special Investment Sub-Account are allocated *pro rata* to those investors that are Partners (defined below) at the time a Special Investment is made (or designated).

The General Partner will not permit more than the greater of 50% of the Partnership's capital and 25% of the Partnership's total assets (on a cost basis, giving consideration to hedging techniques utilized) to be invested in a single investment. Moreover, it will not permit more than 10% of the Partnership's capital to be placed at risk in a single investment. The General Partner will have the discretion to determine how much is at risk for purposes of this test.

The General Partner intends, to the extent circumstances permit, to adopt a selective approach in evaluating potential investment situations, generally concentrating on relatively fewer transactions he can follow more closely. The General Partner expects to primarily engage in distressed and bankruptcy investing (including private equity investments) and risk and other arbitrage transactions (including capital structure arbitrage transactions). The General Partner expects to frequently use hedging devices and will engage in short sales. There can be no assurance that any of the hoped-for benefits of the foregoing approach will be realized. Moreover, the General Partner reserves the right to deviate from the foregoing approach to the extent he deems appropriate. To the extent that the Partnership trades in commodities and futures and related options, the Partnership will incur additional risks. Because of the low margin deposits normally required in futures trading, the same risks as those resulting from leverage described below will be particularly present. In addition, due to market and regulatory factors, commodities and futures and related options may be less liquid than other types of investments.

The General Partner reserves the right to alter or modify some or all of the Partnership's investment strategies in light of available investment opportunities to take advantage of changing market conditions, where the General Partner, in his sole discretion, concludes that such alterations or modifications are consistent with the goal of maximizing returns to investors, subject to what the General Partner considers an acceptable level of risk.

The Partnership will execute its trades through unaffiliated brokers, who may be selected on a basis other than that which will necessarily result in the lowest cost for each trade. Clearing, settlement and custodial services will be provided by one or more unaffiliated brokerage firms.

\* \* \*

The descriptions contained herein of specific strategies that the Partnership may engage in should not be understood as in any way limiting the Partnership's investment activities. The Partnership may engage in investment strategies that are not described herein, but that General Partner considers appropriate.

The Partnership's investment program is speculative and may entail substantial risks. Since market risks are inherent in all investments to varying degrees,

9990439.8                                          15

CONFIDENTIAL                                    GCC – SEC 0000894

there can be no assurance that the Partnership's investment objectives will be achieved. In fact, certain investment practices described above can, in some circumstances, substantially increase the adverse impact on the Partnership's investment portfolios. (See "Certain Risk Factors").

## THE GENERAL PARTNER AND THE MANAGEMENT COMPANY

J. Ezra Merkin will serve as the general partner of the Partnership (the "General Partner"). The General Partner has ultimate responsibility for the management, operations and investment decisions made on behalf of the Partnership.

Mr. Merkin is currently general partner of Ascot Partners, L.P. and is involved in managing several offshore funds, including Ariel Fund Limited. Mr. Merkin was formerly the General Partner of Ariel Capital, L.P. from January 1, 1989 until December 31, 1991. Prior to that, Mr. Merkin served as a Managing Partner of Gotham Capital, L.P., an investment partnership, from 1985 to 1988. Mr. Merkin was associated with Halcyon Investments from 1982 to 1985 and with the law firm of Milbank, Tweed, Hadley & McCloy from 1979 to 1982. Mr. Merkin graduated from Columbia College magna cum laude and is a member of Phi Beta Kappa. He is an honors graduate of Harvard Law School. Mr. Merkin currently serves as chairman of the investment committee of two private endowment funds.

Gabriel Capital Corporation, a Delaware corporation (the "Management Company"), provides administrative and managerial services to the Partnership. All of the outstanding capital stock of the Management Company is owned or controlled by J. Ezra Merkin.

## THE INTERESTS

This Confidential Offering Memorandum relates to an offering of Class B limited partner interests in the Partnership (the "Interests") to certain investors that, if accepted, will become limited partners of the Partnership (each a "Limited Partner" or a "Class B Limited Partner"). The Partnership has issued Class A interests (the "Class A Interests") to investors (each, a "Class A Limited Partner", and together with the Class B Limited Partners and the General Partner, the "Partners"). Class A Interests have different redemption rights and less exposure to Special Investments than the Limited Partner Interests.

The minimum initial subscription is $1,000,000 for an Interest in the Partnership, subject to the discretion of the General Partner to accept lesser amounts. Limited Partners of the Partnership may make additional capital contributions in amounts of at least $250,000 with the consent of the General Partner and subject to his discretion to accept other amounts. Each capital contribution of a Limited Partner will be credited to such Limited Partner's capital account.

The General Partner may issue other classes of interests in the future that differ in terms of, among other things, rights, powers and duties, including rights, powers and duties senior to existing classes of Limited Partners. The General Partner may establish new classes of interests, and determine the terms of such classes, without approval of the existing Limited Partners.

9990439.8

16

CONFIDENTIAL

SECSAZ0000895

## SALES CHARGES

There are no sales charges payable to the General Partner, or the Partnership in connection with the offering of Interests.

## FISCAL YEAR

The fiscal year of the Partnership will end on December 31 of each calendar year.

## SPECIAL INVESTMENT SUB-ACCOUNTS

The Partnership will establish a Special Investment Sub-Account for each investment that the General Partner deems a Special Investment. Only persons that are Partners at the time such Special Investment Sub-Account is established shall participate in such Special Investment Sub-Account and their respective interests therein shall be determined in accordance with their respective partnership percentages at the time such Special Investment Sub-Account is established. Any security position in a Special Investment Sub-Account shall not be considered to be a part of a Partner's capital account, except to the extent the investment or the proceeds of such Special Investment Sub-Account are reallocated to a Partner's capital account. Upon a sale, distribution to Partners or other disposition which shall constitute a "realization" of all or a portion of a Special Investment held in a Special Investment Sub-Account (including a determination by the General Partner, in his sole discretion, that such special investment should no longer be maintained in a Special Investment Sub-Account), the net proceeds of such investment will be allocated to the capital accounts of the Partners participating in such Special Investment Sub-Account in proportion to such Partners' participating percentages in such Special Investment Sub-Account.

In the event the Partnership makes an investment that the General Partner determines is a follow-up investment to a Special Investment held in a Special Investment Sub-Account (each a "Follow-Up Investment"), the participating Partners shall share in such Follow-Up Investment in proportion to their participating percentage interest in the related Special Investment Sub-Account; *provided, however,* that the General Partner, in his reasonable discretion, may permit additional Limited Partners to participate in such Follow-up Investment; *provided further, however,* that if a Limited Partner shall have withdrawn from the Partnership, the General Partner shall equitably adjust the participating percentage interests of the remaining participating Partners to reflect such Limited Partner's withdrawal and non-participation in the Follow-Up Investment. In its discretion, the General Partner need not designate as a "Follow-Up Investment" an additional investment in the same or similar opportunity as the investment for which a Special Investment Sub-Account has been established. Such investment may be designated as a new Special Investment.

Special Investments will generally be carried at cost (or, in the case of assets previously acquired, at carrying value upon designation). Other assets and liabilities for which no such market prices are available will be assigned such value as the General Partner may reasonably determine. All other assets and liabilities of the Partnership (except goodwill) will be assigned such value as the General Partner may reasonably determine.

9990439.8                              17

CONFIDENTIAL                          GCC - SEC 0000896


SECSAZ0000896

## ALLOCATIONS OF GAINS AND LOSSES; INCENTIVE ALLOCATION

Partnership loss for each accounting period will be allocated among the Partners in proportion to the balance in their respective capital accounts at the start of such period. At the end of each accounting period, each Partner's capital account will be increased proportionately to reflect Partnership income for each accounting period (including any increase reflecting such Partner's share of cash or value of securities or proceeds transferred from a Special Investment Sub-Account to the Partner's capital account (based upon its *pro rata* interest in such Special Investment Sub-Account) and decreased by the cash or value of securities transferred from such Partner's capital account to a Special Investment Sub-Account). Income and loss for this purpose will include unrealized appreciation and depreciation on investments (other than unrealized appreciation or depreciation in a Special Investment Sub-Account).

Each Limited Partner's share of the Partnership's net income in excess of the Management Fee (defined below) for the accounting periods to date during that year (including any income or loss realized on investments previously held in Special Investment Sub-Accounts) will be allocated 20% to the General Partner (or to a designee as he shall direct) and 80% to such Limited Partner (the "Incentive Allocation"). Similar allocations will be made with respect to a Limited Partner's capital account at the time such Limited Partner withdraws capital from the Partnership. There is no "high water mark" concept in the calculation of Incentive Allocation. At his discretion, the General Partner may waive the allocations described above with respect to any particular Limited Partner.

Whenever income or loss is realized (or deemed realized) in a Special Investment Sub-Account, such income or loss will be allocated to all Partners having an interest in such account *pro rata* in proportion to their interest in such account, and then transferred to such Partner's regular capital account at the end of the accounting period. Notwithstanding the foregoing, if a Limited Partner withdraws all or substantially all of its capital account (becoming a "Withdrawn Limited Partner") before the realization (as described herein) of that portion of his capital allocated to a Special Investment Sub-Account, income realized or deemed realized subsequent to withdrawal will be allocated 20% to the General Partner (or to a designee as it shall direct) and 80% to such Withdrawn Limited Partner.

## MANAGEMENT FEE; EXPENSES

### Management Fee

On the last business day of each fiscal year of the Partnership and upon dissolution, an amount equal to 1% (prorated for periods of less than a year) of each Limited Partner's capital account balance at the beginning of such year plus such Partner's contributed capital during such year (including all amounts allocated to a Special Investment Sub-Account) will be charged against such Limited Partner's capital account and paid to the General Partner as a management fee (the "Management Fee"). At his discretion, the General Partner may waive the fees described above with respect to any particular Limited Partner.

### Partnership Expenses

The Partnership shall (i) pay, or cause to be paid, all costs, fees, operating expenses and other expenses of the Partnership (including the costs, fees and expenses of

9990439.8                                          18

SECSAZ0000897

attorneys, accountants or other professionals and the compensation of all personnel providing services to the Partnership, including, in the discretion of the General Partner, the General Partner) incurred in organizing the Partnership and in pursuing and conducting, or otherwise related to, the activities of the Partnership, and (ii) reimburse the General Partner for any out-of-pocket costs, fees and expenses incurred by him in connection therewith. The amount of any costs, fees and expenses incurred in connection with the purchase, sale or carrying of any security, including, but not limited to, brokerage and other transaction costs and margin interest expenses will be paid by the Partnership. Notwithstanding the foregoing, any investment expense relating specifically to a Special Investment Sub-Account will be charged against the capital accounts of the Partners participating in such Special Investment Sub-Account in proportion to their respective participating percentage interests therein.

In addition, the Partnership is responsible for certain expenses of the General Partner, including, but not limited to, rent and salaries of personnel. Historically, such expenses have not exceeded 1% of the Partnership's net assets, however, there can be no assurance that this will continue to be true in the future.

If any of the above expenses are incurred jointly for the account of the Partnership and any other investment funds or trading accounts sponsored or managed by the General Partner or his affiliates, such expenses will be allocated to the Partnership and such other funds or accounts in a manner as the General Partner considers fair and reasonable.

## CERTAIN RISK FACTORS

PARTICIPATION BY INVESTORS IN THE PARTNERSHIP SHOULD BE CONSIDERED A HIGH RISK INVESTMENT. THE FOLLOWING SPECIAL CONSIDERATIONS AND RISKS TOGETHER WITH OTHER MATTERS SET FORTH ELSEWHERE IN THIS CONFIDENTIAL OFFERING MEMORANDUM SHOULD BE CONSIDERED CAREFULLY, BUT ARE NOT INTENDED TO BE AN EXHAUSTIVE LISTING OF ALL POTENTIAL RISKS ASSOCIATED WITH AN INVESTMENT IN THE PARTNERSHIP.

The Nature of Transactions Involving Reorganizations. The Partnership will purchase securities and other instruments at a discount to their expected value upon consummation of an announced or anticipated reorganization. Such purchases may be made at prices which are only slightly below such expected value but are substantially in excess of the market price of the securities or other instruments prior to the announcement of the reorganization. In addition, if the Partnership determines that the offer price for a security which is the subject of a tender offer is likely to be increased, either by the original bidder or by another party, the Partnership may purchase securities above the offer price; such purchases are subject to a high degree of risk. As a result, if the reorganization is not consummated or is delayed, the value of such securities or other instruments may decline significantly and the Partnership may sell them at a loss. In addition, if the ultimate value of the cash and/or securities distributed upon consummation of the reorganization is less than expected, the Partnership may realize a loss. The potential for loss may be increased by the Partnership's use of borrowings to purchase securities or other instruments.

9990439.8

19

GCC - SEC 0000898

SECSAZ0000898

No proposed reorganization is certain to be consummated. There are several factors which may result in the termination of a reorganization. These include opposition by the management or shareholders of the company or companies involved in the reorganization; opposition by regulatory agencies whose approval may be required; litigation; a material adverse change in the business of the company or companies involved in the reorganization or the securities markets generally; passage of legislation by governmental entities restricting certain types of reorganizations; and other circumstances, including, but not limited to, the failure to meet certain conditions customarily specified in acquisition agreements. These factors may also cause significant delays, during which the Partnership's capital will be committed and interest charges on any funds borrowed to finance the Partnership's investments may be incurred.

The Partnership may also make certain speculative purchases and sales of securities. Such purchases and sales may include securities which the General Partner believes to be undervalued or overvalued, as the case may be, or where other companies in the same or a related industry have been the subject of reorganizations. If the Partnership purchases securities in anticipation of a reorganization, and a reorganization does not in fact occur, the Partnership may sell the securities at a material loss. Further, when securities are purchased in anticipation of a reorganization, a substantial period of time may elapse between the Partnership's purchase of the securities and the reorganization. During this period, a portion of the Partnership's capital would be committed to the securities purchased, and the Partnership may finance such purchases with borrowed funds on which it will have to pay interest.

The General Partner will attempt to assess risk in determining the nature and extent of the investment the Fund will make in specific securities. However, many risks cannot be quantified.

Non-marketable Obligations. Non-marketable obligations include promissory notes and other evidences of ownership or indebtedness, as well as payables to trade creditors of distressed companies and companies in Chapter 11 bankruptcy proceedings. These securities and instruments ordinarily remain unpaid unless and until the company reorganizes and/or emerges from Chapter 11. There can be no assurance that a reorganization plan favorable to the class of securities held by the Partnership will be adopted or that the subject company might not eventually be liquidated rather than reorganized. These obligations may be highly speculative and may have to be held for an extended period of time. The ultimate value realized upon redemption of such obligations depends upon the recapitalization or reorganization plan adopted in Chapter 11. There can be no assurance that the cash and/or securities, if any, ultimately received in redemption of the obligations will equal the Partnership's cost. In a Chapter 11 proceeding, there can be considerable delay in reaching accord on a restructuring plan acceptable to a bankrupt company's lenders, bondholders and other creditors and then getting that plan approved by the bankruptcy court, and during this period a portion of the Partnership's capital would be invested in the non-marketable obligations purchased, and the Partnership may finance such purchases with borrowed funds on which it will have to pay interest. Furthermore, there is a risk that the Chapter 11 reorganization will be unsuccessful and that the obligations will become worthless.

Arbitrage Transactions. The Partnership may purchase securities at prices often only slightly below the anticipated value to be paid or exchanged for such securities in a merger, exchange offer or cash tender offer which the Partnership determines is probable and

9990439.8                                    20

CONFIDENTIAL

GCC - SEC 0000899

SECSAZ0000899

substantially above the prices at which such securities traded immediately prior to announcement of the merger, exchange offer or cash tender offer. If the proposed transaction appears likely not to be consummated or in fact is not consummated or is delayed, the market price of the security to be tendered or exchanged may be expected to decline sharply, which would result in a loss to the Partnership. Moreover, where a security to be issued in a merger or exchange offer has been sold short as a hedge in the expectation that the short position will be covered by delivery of such security when issued, failure of the merger or exchange offer to be consummated may force an arbitrageur to cover his short position in the market at a higher price than his short sale, with a resulting loss.

The consummation of mergers and tender and exchange offers can be prevented or delayed by a variety of factors, the likelihood of occurrence of which can be very difficult to evaluate. A tender or exchange offer by one company for the securities of another will often be opposed by the management or shareholders of the target company on the grounds that the consideration offered is inadequate or for a variety of other reasons. Even where a merger or tender or exchange offer has been agreed upon by the management of the two companies involved, its consummation may be prevented or delayed by intervention of a government regulatory agency; a shareholder's suit to enjoin the proposed transaction; in the case of a merger, the failure of the shareholders of the company to be acquired, and, where necessary, the acquiring company, to approve the merger; market conditions resulting in material changes in securities prices; and a variety of other circumstances. In case of a tender or exchange offer made for less than all outstanding securities of an issue with the provision that, if a greater number is tendered, securities will be accepted pro rata, a tendering arbitrageur may have returned to him, and be forced to sell at a loss, a portion of the securities tendered.

Other Transactions. The Partnership may also make certain purchases of securities as to which no extraordinary corporate transaction has been announced. Such purchases may include securities which the General Partner believes to be undervalued, or where a significant position in the securities of the particular company has been taken by one or more other persons or where other companies in the same or a related industry have been the subject of acquisition attempts. If the Partnership purchases securities in anticipation of an acquisition attempt or reorganization, and an acquisition attempt or reorganization does not in fact occur, the Partnership may sell the securities at a substantial loss. Further, when securities are purchased in anticipation of an acquisition attempt or reorganization, a substantial period of time may elapse between the Partnership's purchase of the securities and the acquisition attempt or reorganization. During this period, a portion of the Partnership's capital would be committed to the securities purchased, and the Partnership may finance such purchases with borrowed funds on which it will have to pay interest.

Proxy Contests. The Partnership may invest in securities of a company which is the subject of a proxy contest in the expectation that new management will be able to improve the company's performance or effect a sale or liquidation of its assets so that the price of the subject company's securities will increase to a price above that paid for the securities by the Partnership. If the incumbent management of the subject company is not defeated or if new management is unable to improve the company's performance or sell or liquidate the company, the market price of the securities of the subject company will typically fall to a price below that paid for the securities by the Partnership, causing the Partnership to suffer a loss. In addition,

CONFIDENTIAL                                          GCC – SEC 0000900


                                                     SECSAZ0000900

even upon the successful completion of a proxy contest, the market price of the securities of the subject company may not rise to a price above that paid for the securities by the Partnership.

Options Transactions. The Partnership may engage from time to time in various types of options transactions, including hedging and arbitrage in options on securities. This activity is designed to reduce the risks attendant in short-selling and in taking long positions in certain transactions and may involve stock options on a registered option exchange and offsetting transactions in the underlying stock, or offsetting transactions in one or more options for stock. The Partnership also may take positions in options on stock of companies which may, in the judgment of the General Partner, be potential acquisition candidates in merger, exchange offer or cash tender offer transactions. If the potential acquisition candidate does not become the subject of a merger, exchange offer or cash tender offer, the Partnership may suffer a loss.

When the Partnership purchases an option, it must pay the price of the option and transaction charges to the broker effecting the transaction. If the option is exercised by the Partnership, the total cost of exercising the option may be more than the brokerage costs which would have been payable had the underlying security been purchased directly. If the option expires, the Partnership will lose the cost of the option. The ability to trade in or exercise options may be restricted in the event that trading in the underlying issue becomes restricted. Options trading may also be illiquid with respect to contracts with extended expirations.

In certain transactions the Partnership may not be "hedged" against market fluctuations or, in liquidation situations, the hedge may not accurately value the assets of the company being liquidated. This can result in losses, even if the proposed transaction is consummated.

Futures Contracts. The value of futures depends upon the price of the instruments, such as commodities, underlying them. The prices of futures are highly volatile, and price movements of futures contracts can be influenced by, among other things, interest rates, changing supply and demand relationships, trade, fiscal, monetary and exchange control programs and policies of governments, and national and international political and economic events and policies. In addition, investments in futures are also subject to the risk of the failure of any of the exchanges on which the Partnership's positions trade or of its clearinghouses or counterparties.

Futures positions may be illiquid because certain commodity exchanges limit fluctuations in certain futures contract prices during a single day by regulations referred to as "daily price fluctuation limits" or "daily limits." Under such daily limits, during a single trading day no trades may be executed at prices beyond the daily limits. Once the price of a particular futures contract has increased or decreased by an amount equal to the daily limit, positions in that contract can neither be taken nor liquidated unless traders are willing to effect trades at or within the limit. This could prevent the Partnership from promptly liquidating unfavorable positions and subject the Partnership to substantial losses or from entering into desired trades. In extraordinary circumstances, a futures exchange or the CFTC could suspend trading in a particular futures contract, or order liquidation or settlement of all open positions in such contract.

CONFIDENTIAL                                    GCC – SEC 0000901

SECSAZ0000901

Forward Trading.    Forward contracts and options thereon, unlike futures contracts, are not traded on exchanges and are not standardized; rather, banks and dealers act as principals in these markets, negotiating each transaction on an individual basis. Forward and "cash" trading is substantially unregulated; there is no limitation on daily price movements and speculative position limits are not applicable. The principals who deal in the forward markets are not required to continue to make markets in the currencies or commodities they trade, and these markets can experience periods of illiquidity, sometimes of significant duration. There have been periods during which certain participants in these markets have refused to quote prices for certain currencies or commodities or have quoted prices with an unusually wide spread between the price at which they were prepared to buy and that at which they were prepared to sell. Disruptions can occur in forward markets due to unusually high trading volume, political intervention or other factors. The imposition of controls by governmental authorities might also limit such forward (and futures) trading to less than that which the General Partner would otherwise recommend, to the possible detriment of the Partnership. Market illiquidity or disruption could result in significant losses to the Partnership.

Participation in Unfriendly Transactions.    The Partnership may seek to initiate acquisition or restructuring transactions or proxy fights against the wishes of the subject company's management, or may actively participate in transactions of this sort initiated by others. Such transactions typically become embroiled in litigation, and participants therein may be found to have violated any of the many laws and regulations applicable thereto. This could impose substantial cost and expense (including litigation expense) on the Partnership, and subject it to various legal remedies such as injunctions against future participation in these transactions, disgorgement of gains, loss of voting rights or forced disposition of the investment. Participation in such transactions may also require the Partnership to make significant disclosure concerning its operations.

Short Selling.    Short selling involves selling securities which are not owned by the short seller and borrowing them for delivery to the purchaser, with an obligation to replace the borrowed securities at a later date. Short selling allows the investor to profit from a decline in market price to the extent such decline exceeds the transaction costs and the costs of borrowing the securities. The extent to which the Partnership engages in short sales will depend upon the General Partner's investment strategy and opportunities. A short sale creates the risk of a theoretically unlimited loss, in that the price of the underlying security could theoretically increase without limit, thus increasing the cost to the Partnership of buying those securities to cover the short position. There can be no assurance that the Partnership will be able to maintain the ability to borrow securities sold short. In such cases, the Partnership can be "bought in" (i.e., forced to repurchase securities in the open market to return to the lender). There also can be no assurance that the securities necessary to cover a short position will be available for purchase at or near prices quoted in the market. Purchasing securities to close out a short position can itself cause the price of the securities to rise further, thereby exacerbating the loss.

Market Risk and Lack of Diversification.    Substantial risks are involved in the acquisition or disposition of securities. Securities and their issuers are affected by, among other things: changing supply and demand; federal, state and governmental laws, regulations and enforcement activities; trade, fiscal and monetary programs and policies; and national and international political and economic developments. The concentration of assets in particular types of investments could subject the assets of the Partnership to increased volatility. The

9990439.8

23

GCC - SEC 0000902

SECSAZ0000902

Partnership's investment plan does not constitute a balanced investment plan. The securities in which the Partnership may invest may be regarded as of high risk. Such securities are subject to a number of risk factors, including market volatility, creditworthiness of the issuer, liquidity of the secondary trading market, and availability of market quotations.

Leverage. The Partnership's anticipated use of short-term margin borrowings, investment in derivative securities and the use of repurchase agreements create certain risks to the Partnership. The use of leverage may increase the Partnership's risk of loss of capital or securities, as a relatively small price movement in an instrument may result in immediate and substantial loss. For example, should the securities pledged to brokers to secure the Partnership's margin accounts decline in value, the Partnership could be subject to a "margin call," pursuant to which the Partnership must either deposit additional funds with the broker or suffer mandatory liquidation of the pledged securities to compensate for the decline in value. In the event of a sudden, precipitous drop in value of the Partnership's assets occasioned by a market "crash" such as the one that took place in October 1987, the Partnership might not be able to liquidate assets quickly enough to pay off its margin debt. Consequently, fluctuations in the value of the Partnership's portfolio will have a significant effect in relation to the Partnership's capital. Although currently the Partnership utilizes leverage from time to time, as investment opportunities change (e.g., arbitrage opportunities increase) the amount of borrowings which the Partnership may have outstanding at any time may be large in relation to its capital. In addition, the level of interest rates generally, and the rates at which the Partnership can borrow in particular, will be an expense of the Partnership and therefore affect the operating results of the Partnership.

Derivatives. Derivative securities, in addition to being highly volatile and speculative, may be internally leveraged such that each percentage change in Interest rates will have a multiple effect on the derivative security. Certain positions therefore may be subject to wide and sudden fluctuations in market value, with a resulting fluctuation in the amount of profits and losses. Certain transactions in derivatives may expose the Partnership to potential losses that exceed the amount originally invested by the Partnership. Repurchase agreements are structured so that the Partnership sells securities to another party, usually a bank or other securities firm, and agrees to repurchase them at an agreed upon price and date. A repurchase agreement is the equivalent of borrowing money and pledging securities as collateral.

Risks of Litigation. Investing in distressed securities can be a contentious and adversarial process. Different investor groups may have qualitatively different, and frequently conflicting, interests. The Partnership's investment activities may include activities that are hostile in nature and will subject it to the risks of becoming involved in litigation by third-parties. This risk may be greater where the Partnership exercises control or significant influence over a company's direction. The expense of defending against claims against the Partnership by third-parties and paying any amounts pursuant to settlements or judgments would be borne by the Partnership and would reduce net assets. The General Partner will be indemnified by the Partnership in connection with such litigation, subject to certain conditions.

Lending of Portfolio Securities. The Partnership may from time to time lend securities from its portfolio to brokers, dealers and financial institutions such as banks and trust companies. The borrower may fail to return the securities involved in such transactions,

9990439.8                                      24

CONFIDENTIAL                          GCC - SEC 0000903

SECSAZ0000903

particularly if such borrower is in financial distress, in which event the Partnership may incur a loss..

Portfolio Turnover. The Partnership currently does not have high portfolio turnover, however, to the extent certain strategies become a larger part of the Partnership's investment strategy (e.g., arbitrage strategies), portfolio turnover may be high. Typically, high portfolio turnover results in correspondingly high transaction costs, including brokerage commission expenses.

Overall Investment Risk. All securities investments risk the loss of capital. The nature of the securities to be purchased and traded by the Partnership and the investment techniques and strategies to be employed by it may increase such risk. Moreover, the identification of investment opportunities is a difficult task, and there can be no assurance that such opportunities will be successfully recognized by the Partnership. While the General Partner will devote his best efforts to the management of the Partnership's portfolio, there can be no assurance that the Partnership will not incur losses. Returns generated from the Partnership's investments may not adequately compensate Limited Partners for the business and financial risks assumed. A Limited Partner should be aware that it may lose all or a substantial part of its investment in the Partnership. Many unforeseeable events, including actions by various government agencies and domestic and international economic and political developments, may cause sharp market fluctuations that could adversely affect the Partnership's portfolio and performance.

Liquidity of Investments. The Partnership may invest in unregistered securities of publicly held companies, securities of privately held companies and other illiquid securities. Such investments may be difficult to value. They may, by their nature, entail a prolonged investment horizon from the initial investment date to final disposition. It may not be possible to sell such securities on short notice and, if possible, such sales may require substantial discounts. Certain of these investments may be designated Special Investments (as defined herein).

Currency Exchange Exposure. The Partnership may invest a portion of its assets in the securities of non-U.S. issuers and other instruments denominated in non-U.S. currencies, the prices of which are determined with reference to currencies other than the U.S. dollar. The Partnership, however, values its securities and other assets in U.S. dollars. The Partnership may or may not seek to hedge its non-U.S. currency exposure by entering into currency hedging transactions, such as treasury locks, forward contracts and futures contracts. There can be no guarantee that instruments suitable for hedging currency or market shifts will be available at the time when the Partnership wishes to use them, or that hedging techniques employed by the Partnership will be effective. Furthermore, certain currency market risks may not be fully hedged or hedged at all.

To the extent unhedged, the value of the Partnership's positions in non-U.S. investments will fluctuate with U.S. dollar exchange rates as well as the price changes of the investments in the various local markets and currencies. In such cases, an increase in the value of the U.S. dollar compared to the other currencies in which the Partnership makes its investments will reduce the effect of any increases and magnify the effect of any decreases in the prices of the Partnership's securities in their local markets and may result in a loss to the

9990439.8                                          25

CONFIDENTIAL                                    GCC - SEC 0000904


SECSAZ0000904

Partnership. Conversely, a decrease in the value of the U.S. dollar will have the opposite effect on the Partnership's non-U.S. dollar investments.

Non-U.S. Investments.  The Partnership may invest in financial instruments of non-U.S. corporations and governments.  Investing in the financial instruments of companies (and, from time to time, governments) outside of the U.S. involves certain considerations not usually associated with investing in financial instruments of U.S. companies or the U.S. Government, including political and economic considerations, such as greater risks of expropriation, nationalization, confiscatory taxation, imposition of withholding and other taxes on interest, dividends, capital gains and other income, limitations on the removal of assets and general social, political and economic instability; the relatively small size of the securities markets in such countries and the low volume of trading, resulting in potential lack of liquidity and in price volatility; the evolving and unsophisticated laws and regulations applicable to the securities and financial services industries of certain countries; fluctuations in the rate of exchange between currencies and costs associated with currency conversion; and certain government policies that may restrict the Partnership's investment opportunities.  In addition, accounting and financial reporting standards that prevail outside of the U.S. generally are not as high as U.S. standards and, consequently, less information is typically available concerning companies located outside of the U.S. than for those located in the U.S.  As a result, the Partnership may be unable to structure its transactions to achieve the intended results or to mitigate all risks associated with such markets.  It may also be difficult to enforce the Partnership's rights in such markets.  For example, financial instruments traded on non-U.S. exchanges and the non-U.S. persons that trade these instruments are not subject to the jurisdiction of the Securities and Exchange Commission or Commodity Futures Trading Commission or the securities and commodities laws and regulations of the U.S.  Accordingly, the protections accorded to the Partnership under such laws and regulations are unavailable for transactions on foreign exchanges and with foreign counterparties.

Counterparty Risk.  Some of the markets in which the Partnership may effect transactions are "over-the-counter" or "interdealer" markets.  The participants in such markets are typically not subject to the same credit evaluation and regulatory oversight as are members of "exchange-based" markets.  In addition, many of the protections afforded to participants on some organized exchanges, such as the performance guarantee of an exchange clearinghouse, might not be available in connection with such "over-the-counter" transactions.  This exposes the Partnership to the risk that a counterparty will not settle a transaction in accordance with its terms and conditions because of a dispute over the terms of the contract (whether or not *bona fide*) or because of a credit or liquidity problem, thus causing the Partnership to suffer a loss.  Such "counterparty risk" is accentuated for contracts with longer maturities where events may intervene to prevent settlement, or where the Partnership has concentrated its transactions with a single or small group of counterparties.  The General Partner is not restricted from dealing with any particular counterparty or from concentrating any or all of the Partnership's transactions with one counterparty.  Moreover, the General Partner has no formal credit function which evaluates the creditworthiness of the Partnership's counterparties.  The ability of the Partnership to transact business with any one or number of counterparties, the lack of any meaningful and independent evaluation of such counterparties' financial capabilities and the absence of a regulated market to facilitate settlement may increase the potential for losses by the Partnership.

9990439.8

26

CONFIDENTIAL

GCC - SEC 0000905

SECSAZ0000905

In addition, the counterparties with which the Partnership effects transactions may, from time to time, cease making markets or quoting prices in certain of the instruments. In such instances, the Partnership may be unable to enter into a desired transaction in currencies, or to enter into an offsetting transaction with respect to an open position, which might adversely affect its performance. Further, in contrast to exchange-traded markets, forward, spot and option contracts on currencies do not provide a trader with the right to offset its obligations through an equal and opposite transaction. For this reason, in entering into forward, spot or options contracts, the Partnership may be required, and must be able, to perform its obligations under the contract.

### The Partnership

Limited Liquidity. An investment in the Partnership provides limited liquidity since Interests in the Partnership are not freely transferable and the withdrawal rights of holders of the Interests are restricted. A Limited Partner may not withdraw any portion of its capital account that is allocated to a Special Investment Sub-Account, unless otherwise determined by the General Partner. A Limited Partner will retain its interest in any Special Investment Sub-Account until the realization or deemed realization of the Special Investment relating to such Special Investment Sub-Account. Because the Partnership may invest up to 40% of the net asset value of each Limited Partner's capital accounts in Special Investments, a Limited Partner may only be able to withdraw a portion of its capital account(s) for an indefinite period of time.

Effect of Limited Partner Withdrawal. A significant withdrawal of capital from the Partnership may cause a temporary imbalance in the Partnership's portfolio which may adversely affect the remaining Limited Partners.

Valuation of the Partnership's Assets. All securities, liabilities and other property will be assigned such values as the General Partner reasonably determines to be their fair market value and such values will be binding upon the Partners; provided that in the event a majority in interest of the Class A Limited Partners does not agree with any such determination, such disagreement will be submitted for resolution to a firm of independent certified public accountants (other than the partnership's auditors) which will be mutually agreed upon by the General Partner and the majority in interest of the Class A Limited Partners. Any determination made by such firm of independent certified public accountants will be final and binding upon the General Partner and Class A Limited Partners.

Required Withdrawals. The General Partner may cause any Limited Partner to withdraw from the Partnership in whole or in part. The withdrawal of such Limited Partner will be effective as of the date specified in such notice, which date shall not be less than 30 days after the date such notice is given. Such mandatory withdrawal may create adverse tax and/or economic consequences to the Limited Partner depending on the timing thereof in respect of the Partnership and the Limited Partner.

Layering of Fees. The Partnership may invest in Other Investment Entities. To the extent the Partnership invests in such Other Investment Entities, Limited Partners may be subject to management fees, incentive fees or allocations and expenses at both the level of the Partnership and the level of the underlying Other Investment Entities.

9990439.8                                   27

CONFIDENTIAL

GCC – SEC 0000906

SECSAZ0000906

Reports to Limited Partners. The Partnership may offer certain Limited Partners additional information and reporting that other Limited Partners may not receive, and such information may affect a Limited Partner's decision to request a withdrawal of its Interests.

Competition. The securities industry generally, and the business of investing in reorganization related securities or instruments in particular, is extremely competitive, and is expected to remain so in the foreseeable future. As a result, the Partnership may under perform funds with similar investment strategies, or the market in general.

Success Dependent on General Partner. The success of the Partnership depends primarily upon the General Partner. The death or incapacity of J. Ezra Merkin would result in the dissolution Of the Partnership.

Incentive Allocation. The Incentive Allocation to the General Partner may create an incentive for the General Partner to cause the Partnership to make investments that are riskier or more speculative than would be the case in the absence of the Incentive Allocation. In addition, because the Incentive Allocation is calculated on a basis that includes unrealized appreciation of the Partnership's assets, it may be greater than if such allocation were based solely on realized gains. There is no "high water mark" concept in the calculation of Incentive Allocation.

In-Kind Distributions. A withdrawing Limited Partner may, at the sole and absolute discretion of the General Partner, receive property other than cash. Any investments distributed in-kind may not be readily marketable or saleable and may have to be held by such Limited Partner for an indefinite period of time.

Independent Money Managers. The General Partner may delegate investment discretion for all or a portion of the Partnership's funds to money managers, other than the General Partner, or make investments with Other Investment Entities. Although the General Partner will exercise reasonable care in selecting such independent money managers or Other Investment Entities and will monitor the results of those money managers and Other Investment Entities, the General Partner may not have custody over the funds invested with the other money managers or with Other Investment Entities. The risk of loss of the funds invested with other money managers or with Other Investment Entities may not be insured by any insurance company, bonding company, governmental agency, or other entity and the General Partner is not liable for any such loss. Independent money managers and managers of Other Investment Entities selected by the General Partner may receive compensation based on the performance of their investments as well as asset-based management fees. Performance-based compensation usually is calculated on a basis which includes unrealized appreciation of the Partnership's assets, and may be greater than if such compensation were based solely on realized gains. Further, a particular independent money manager or manager of an Other Investment Entity may receive incentive compensation in respect of its portfolio for a period even though the Partnership's overall portfolio depreciated during such period. The independent money managers and Other Investment Entities will trade wholly independently of one another and may at times hold economically offsetting positions.

Indemnification of the General Partner from Liability. The Partnership Agreement provides that the General Partner will not be liable for, and will be indemnified by

9990439.8                                28

SECSAZ0000907

the Partnership against, any act or omission if such act or omission is not the result of bad faith, gross negligence, recklessness, fraud or intentional misconduct. Such indemnification, however, shall not relieve the General Partner or his legal representative of any liability, to the extent that such liability may not be waived, modified or limited under applicable law (including, without limitation, liability under U.S. federal securities laws which, under certain circumstances, impose liability even on persons acting in good faith).

Other Activities. In addition to managing the Partnership, the General Partner will manage other funds and managed accounts, which may have similar investment objectives to the Partnership. The General Partner will allocate overhead expenses among the Partnership and the managed accounts on a fair basis, as determined by the General Partner. These other activities will require a substantial amount of the General Partner's time and effort.

Statutory Regulations and Non-Registration. The financial services industry generally, and the activities of hedge funds and their managers, in particular, have been subject to intense and increasing regulatory scrutiny. Such scrutiny may increase the Partnership's and the Management Company's exposure to potential liabilities and to legal, compliance and other related costs. Increased regulatory oversight can also impose administrative burdens on the Management Company, including, without limitation, responding to investigations and implementing new policies and procedures. Such burdens may divert the Management Company's time, attention and resources from portfolio management activities.

Liability for Return of Distributions. Under Delaware law, any Limited Partner who receives a distribution from the Partnership shall be liable to the Partnership for the amount of the distribution to the extent such amount was distributed at a time that the liabilities of the Partnership exceeded the fair value of its assets and the Limited Partner knew of the state of the Partnership's financial condition at the time of such distribution. Under Delaware law, a Limited Partner that receives a distribution from the Partnership will have no liability for the amount of the distribution after the expiration of three years from the date of the distribution.

Tax and Other Risks. Although the General Partner believes that the Partnership will be treated as a partnership for federal income tax purposes, no ruling has been, or will be, obtained from the Internal Revenue Service, to that effect and no opinion of counsel has been sought. If the Partnership is taxed not as a partnership but as a corporation it will, among other things, have to pay income tax on its earnings in the same manner and at the same rates as a corporation, and Partners would be subject to an additional tax on earnings distributed. If the Partnership is treated as a Partnership for U.S. federal tax purposes, Partners will be taxed on the Partnership's taxable income whether or not it is distributed. The General Partner does not intend to make distributions to the Limited Partners that reflect the taxable income of the Partnership and is not required to make any distributions except upon the withdrawal of capital by a Partner pursuant to the Partnership Agreement. Furthermore, a Limited Partner who withdraws capital from the Partnership in accordance with the Partnership Agreement may receive the amount so withdrawn in kind. Accordingly, in either such event, a Limited Partner may not receive sufficient liquid assets to pay income taxes attributable to his distributive share of Partnership income. Thus, Limited Partners may have to rely upon resources independent of their Interests to pay their obligations to the federal, state and local tax authorities.

9990439.8    29

CONFIDENTIAL

GCC – SEC 0000908

SECSAZ0000908

Factors Affecting Investments.   There are a number of factors which may adversely affect the ability of the Partnership to pursue its investment strategy.  There is a limited availability of debt financing for takeovers of highly leveraged companies.  Mergers of a certain size require approval of the U.S. Federal Trade Commission (the "FTC") or other government agencies because of potential antitrust implications.  It is possible at any time for the FTC or other governmental agency to more vigorously enforce the antitrust laws affecting mergers.  In addition, there are state laws aimed at curbing takeovers and courts have given management greater authority to employ defensive measures in the face of hostile takeover attempts where management believes doing so is in the long-term interests of the company. Many companies generally have adopted various measures aimed at making takeovers more difficult and expensive.  Similarly, changing economic conditions, accounting standards and tax and securities laws (among other factors) may impair the profitability of the types of transactions in which the Partnership intends to invest, adversely affecting its operations.

Terrorist Action.  There is a risk of terrorist attacks on the United States and elsewhere causing significant loss of life and property damage and disruptions in global markets. Economic and diplomatic sanctions may be in place or imposed on certain states and military action may be commenced.  The impact of such events is unclear, but could have a material effect on general economic conditions and market liquidity.

PAST RESULTS MAY NOT BE INDICATIVE OF FUTURE PERFORMANCE. NO ASSURANCE CAN BE MADE THAT PROFITS WILL BE ACHIEVED OR THAT SUBSTANTIAL LOSSES WILL NOT BE INCURRED.

**The foregoing list of risk factors does not purport to be a complete enumeration or explanation of the risks involved in an investment in the Partnership. Prospective investors should read this entire Confidential Offering Memorandum and consult with their own legal, tax and financial advisers before deciding to invest in the Partnership.**

## CONFLICTS OF INTEREST

The General Partner and his affiliates will provide investment management services to managed accounts and other investment partnerships or funds, some of which may have similar investment objectives to those of the Partnership.  The portfolio strategies the General Partner and his affiliates may use for other investment funds or accounts could conflict with the transactions and strategies employed by the General Partner in managing the Partnership and affect the prices and availability of the securities and other financial instruments in which the Partnership invest.

The General Partner has agreed to devote substantially his entire time and effort during normal business hours to the management of the Partnership and other investment entities managed by the Managing Partner, or their respective successors; provided, however, that the General Partner may act, consistent, however, with the foregoing, as a director, officer or employee of any corporation (including any corporation in which the Partnership is invested), a trustee of any trust, an executor or administrator of any estate, a partner of any partnership (including a partnership in which the Partnership is invested) or an administrative official of any other business entity, and may receive compensation and participate in profits in connection with

9990439.8                                          30

any of the foregoing, and may trade in securities for his own account or for other accounts for investors including securities which are the same or different from those traded in or held by the Partnership. The terms of the Partnership Agreement do not restrict the General Partner or his affiliates from forming additional investment funds, from entering into other investment advisory relationships, or from engaging in other business activities, even though such activities may be in competition with the Partnership and/or may involve substantial time and resources of the General Partner or his affiliates. In the event the General Partner or any of his affiliates decide to engage in such activities in the future, the General Partner or his affiliates, as applicable, will undertake to engage in such activities in a manner that is consistent with their fiduciary duties, to the Partnership. Nevertheless, these activities could be viewed as creating a conflict of interest in that the time and effort of the General Partner and his affiliates will not be devoted exclusively to the business of the Partnership but will be allocated between the business of the Partnership and the management of the monies of other advisees of the General Partner and his affiliates.

When it is determined that it would be appropriate for the Partnership and one or more other funds and managed accounts managed of the General Partner or his affiliates to participate in an investment opportunity, the General Partner will seek to execute orders for all of the participating investment accounts, including the Partnership, on an equitable basis, taking into account such factors as the relative amounts of capital available for new investments, relative exposure to short-term market trends, and the investment programs and portfolio positions of the Partnership and the affiliated entities for which participation is appropriate. Orders may be combined for all such accounts, and if any order is not filled at the same price, they may be allocated on an average price basis. Similarly, if an order on behalf of more than one account cannot be fully executed under prevailing market conditions, securities may be allocated among the different accounts on a basis that the General Partner considers equitable.

The General Partner may share office space with third-party money managers. If the managers were to acquire inside information with respect to certain securities, the Partnership will be precluded from purchasing securities to which such inside information relates or be precluded from selling securities held by the Partnership that were purchased before the inside information was acquired.

Subject to internal compliance policies and approval procedures, the General Partner and his employees as well as members and employees of his affiliates, may engage, from time to time, in personal trading of securities and other instruments, including securities and instruments in which the Partnerships may invest. Any such trading will be either effected after the Partnerships have effected their transactions.

<u>BROKERAGE COMMISSIONS</u>

Portfolio transactions for the Partnership will be allocated to brokers on the basis of best execution and in consideration of a broker's ability to effect the transactions, its facilities, reliability and financial responsibility and the provision or payment by the broker of the costs of research and research-related services which are of benefit to the Partnership, the General Partner or related funds and accounts. Accordingly, the commission rates (or dealer markups and markdowns arising in connection with riskless principal transactions) charged to the Partnership by brokers in the foregoing circumstances may be higher than those charged by other

9990439.8                                        31

CONFIDENTIAL

GCC  -  SEC  0000910

SECSAZ0000910

brokers who may not offer such services. The General Partner has not entered into, and does not expect to enter into, any written soft dollar arrangements.

Investors in the Partnership may include fund of funds affiliated with brokers or, possibly, brokerage firms themselves. The fact that any such investor has invested in the Partnership will not be taken into consideration in selecting brokers (including prime brokers).

The Partnership's securities transactions can be expected to generate a substantial amount of brokerage commissions and other compensation, all of which the Partnership, not the General Partner or the Management Company, will be obligated to pay. The General Partner will have complete discretion in deciding what brokers and dealers the Partnership will use and in negotiating the rates of compensation the Partnership will pay.

Morgan Stanley & Co., Inc. (the "Prime Broker") currently serves as the principal prime broker for the Partnership, and clears (generally on the basis of payment against delivery) the Partnership's securities transactions that are effected through other brokerage firms. The Partnership is not committed to continue its relationship with the Prime Broker for any minimum period and the General Partner may select other or additional brokers to act as prime brokers for the Partnership.

From time to time, brokers (including the Prime Broker) may assist the Partnership in raising additional funds from investors, and representatives of the General Partner may speak at conferences and programs sponsored by the Prime Broker for investors interested in investing in hedge funds. Through such "capital introduction" events, prospective investors in the Partnership and the Offshore Fund have the opportunity to meet with the General Partner. Neither the General Partner nor the Partnership compensates the Prime Broker for organizing such events or for any investments ultimately made by prospective investors attending such events. However, such events and other services (including, without limitation, capital introduction services) provided by the Prime Broker may influence the General Partner in deciding whether to use such prime broker in connection with brokerage, financing and other activities of the Partnership. However, the General Partner will not commit to a broker to allocate a particular amount of brokerage in any such situation.

<u>OUTLINE OF PARTNERSHIP AGREEMENT</u>

The following outline summarizes the material provisions of each Limited Partnership Agreement of the Partnership (the "Partnership Agreement") that are not discussed elsewhere in this Confidential Offering Memorandum. This outline is only a summary and is not definitive, and each prospective Limited Partner should carefully read the Partnership Agreement in its entirety.

Limited Liability. No Limited Partner will be bound by or be liable for the repayment, satisfaction or discharge of any debts, liabilities or obligations of the Partnership except to the extent of (i) such Partner's capital account, and (ii) as may otherwise be required by applicable law.

Term. The Partnership will continue indefinitely upon the first to occur of the following: (i) a determination by the General Partner that the Partnership should be dissolved or

9990439.8                                        32

CONFIDENTIAL                                        GCC - SEC 0000911

SECSAZ0000911

(ii) the death, bankruptcy, retirement or insanity of the General Partner which prevents him from devoting substantially his entire time, skill and attention to the Partnership and other funds and managed accounts for a period of 90 days; (iii) December 31, 2015; or (iv) any event causing the dissolution of the Partnership under the laws of the State of Delaware. Upon dissolution of the Partnership, no further business will be done in the Partnership's name except completion of any incomplete transactions and the taking of such action as shall be necessary for the winding up of the affairs of the Partnership and the distribution of its assets.

Management. The management of the Partnership will be vested exclusively in the General Partner. Except as authorized by the General Partner, the Limited Partners will have no part in the management of the Partnership and will have no authority or right to act on behalf of the Partnership in connection with any matter. The General Partner and his affiliates may engage in any other business venture, and neither the Partnership nor any Limited Partner will have any rights in or to such ventures or the income or profits derived therefrom.

Capital Accounts. Each Partner will have a capital account equal initially to the amount of cash or the value of property contributed by him. The General Partner may permit additional capital contributions and may admit new Limited Partners. The General Partner will not be personally liable for the return of capital contributions, and no interest will be payable thereon.

Withdrawals of Capital. A Class B Limited Partner may withdraw all or part of such Limited Partner's capital account from the Partnership with respect to capital contributions made on or after February 1, 2006 at the end of the calendar quarter after the two year anniversary of the date such Interests were purchased (the "First Withdrawal Date"), and, thereafter, on each anniversary of the First Withdrawal Date upon 45 days prior written notice to the General Partner.

A Class A Limited Partner may withdraw all or part of such Limited Partner's capital account from the Partnership on June 30 or December 31 of any fiscal year upon 45 days prior written notice to the General Partner.

Each date as of which a Limited Partner withdraws all or a portion of its capital account or withdraws from the Partnership is herein referred to as a "Withdrawal Date."

Excluding amounts allocated to Special Investment Sub-Accounts, the Withdrawing Partner will receive the amount of such Limited Partner's capital account (less reserves determined by the General Partner for contingent liabilities) within 90 days after withdrawal. All amounts remaining unpaid (less reserves) will begin to bear interest at a rate equal to a specified broker's call rate for the period beginning 30 days after the effective date of such withdrawal and ending 90 days after the effective date of such withdrawal.

A distribution in respect of a withdrawal may be made in cash or in kind, as determined by the General Partner in its discretion. In-kind distributions will be made to Withdrawing Limited Partners on a *pro rata* basis.

Limited Partners may not otherwise make withdrawals, and the Partnership does not plan to make *pro rata* distributions to Partners on an on going basis.

9990439.2                                    33

SECSAZ0000912

Special Investment Sub-Account Withdrawal. Notwithstanding the foregoing, no withdrawal may be made by a Limited Partner from any portion of its capital account that is allocated to a Special Investment Sub-Account. If a portion of a Withdrawn Limited Partner's capital account has been allocated to a Special Investment Sub-Account, then, unless otherwise determined by the General Partner, the amount distributed to such Withdrawn Limited Partner will not include any interest of such Partner in such Special Investment Sub-Account. Such Partner will retain its interest in any Special Investment Sub-Account until the realization or deemed realization of the Special Investment relating to such Special Investment Sub-Account. Income realized or deemed realized subsequent to withdrawal will be allocated 20% to the General Partner (or to a designee as it shall direct) and 80% to such Withdrawn Limited Partner. Any loss realized subsequent to such withdrawal shall be allocated to the Withdrawn Limited Partner. Upon the realization of a Special Investment of a Withdrawn Limited Partner which is held in a Special Investment Sub-Account, the proceeds allocable to that Withdrawn Limited Partner, after reduction for the Incentive Allocation, if any, will be paid to the Withdrawn Limited Partner.

In addition, if after giving effect to a withdrawal, a Limited Partner would be completely withdrawn from the Partnership except for its interest in one or more Special Investment Sub-Accounts, all or a portion of the proceeds with respect to such withdrawal may be reserved or held back to pay for the Management Fee expected to be earned over the life of the Special Investments. Upon the realization or deemed realization of the applicable Special Investments, any unused reserve or hold back shall be paid to such Limited Partner.

To the extent, the amount reserved or held back to pay Management Fees (as described above) does not cover Management Fees that would otherwise be payable over the life of the Special Investment, then such unpaid Management Fees may be paid out of profits, if any, earned in respect of such Special Investment for the period beginning from the time such shortfall begins to accrue until realization or deemed realization. "Accrued Interest" is the amount of interest earned on any amount held back that, at the time of calculation, has not been applied to the Management Fees in respect of any Special Investment Sub-Account of a Limited Partner that has withdrawn all or substantially all of its capital account.

Required Withdrawals. The General Partner may, in its sole discretion, terminate the Interest of any Limited Partner, in whole or in part, upon at least thirty days prior written notice.

Suspension of Withdrawal Rights. The General Partner, by written notice to any Limited Partner, may suspend the withdrawal rights of such Limited Partner if the General Partner reasonably deems it necessary to do so to comply with anti-money laundering laws and regulations applicable to the Partnership, the General Partner or any of the Partnership's other service providers. (See "Anti-Money Laundering Regulations" and "Outline of Partnership Agreement").

General Partner Withdrawals. The General Partner may withdraw amounts from the Partnership at any time, provided that the General Partner will at all times maintain a sufficient capital investment in the Partnership so that the General Partner will, in the aggregate, be entitled to receive at least 1% of Partnership income, loss, taxable income, taxable loss and distributions of the Partnership.

9990439.8                                                34

CONFIDENTIAL                                    GCC – SEC 0000913

SECSAZ0000913

Withdrawal, Death, Bankruptcy or Adjudicated Incompetence, Etc. of a Limited Partner. In the event of the death, bankruptcy or adjudicated incompetency of a Limited Partner, the Interest of such Limited Partner shall continue until the later of (a) the first to occur of the last day of the fiscal year of the Partnership in which such event takes place (the "Year of Determination") or the earlier termination of the Partnership, and (2) the day 60 days after the date of such Limited Partner's death, bankruptcy or incompetency. If the Partnership is continued after the expiration of the Year of Determination, such Limited Partner will be deemed to have withdrawn from the Partnership (except as to any Interest in a Special Investment Sub-Account) as of the later of the last day of the Year of Determination and 60 days after the date of such Partner's death, bankruptcy or incompetency.

Types of Securities in which the Partnership May Invest. The Partnership may invest in and trade equity securities (including restricted equity securities), equity options, equity related convertible securities, interest-bearing or interest rate sensitive marketable securities (including those issued or guaranteed by the United States Government or agencies or instrumentalities of the United States Government), bonds, trade creditor claims and other evidences of ownership interest, currency and commodities contracts, options, futures and forward contracts with respect to any of the foregoing, and any other instruments which are traded in normal channels of trading for securities and commodities and to engage in transactions in connection with mergers, consolidations, acquisitions, transfers of assets, tender offers, exchange offers, recapitalizations, proxy fights, liquidations, bankruptcies or other similar transactions. The foregoing investments may be made directly or indirectly through mutual funds or other pooled investment vehicles, notwithstanding that fees (including performance-based fees) may be payable to the investment manager of such funds or vehicles by the Partnership.

Valuation of Partnership Assets and Liabilities. All securities, liabilities and other property will be assigned such values as the General Partner reasonably determines to be their fair market value and such values will be binding upon the Partners; provided that in the event a majority in interest of the Class A Limited Partners does not agree with any such determination, such disagreement will be submitted for resolution to a firm of independent certified public accountants (other than the partnership's auditors) which will be mutually agreed upon by the General Partner and the majority in interest of the Class A Limited Partners. Any determination made by such firm of independent certified public accountants will be final and binding upon the General Partner and Class A Limited Partners. No value will be attributable to the goodwill, if any, of the business and for the firm name of the Partnership. The costs of retaining such accountants will be paid by the Partnership.

Assignability of Interests. No Limited Partner or transferee thereof will, without the prior written consent of the General Partner, which may be withheld in his sole discretion, create, or suffer the creation of, a security interest in such Limited Partner's Interest. Except for sales, transfers, assignments or other dispositions (i) by last will and testament, (ii) by operation of law, or (iii) to an affiliate of a Limited Partner, without the prior written consent of the General Partner, which may be withheld in his sole discretion, no Limited Partner will sell, transfer, assign, or in any manner dispose of such Limited Partner's Interest, in whole or in part, nor enter into any agreement as the result of which any person becomes interested with such Limited Partner therein. In no event will a Limited Partner's interest in the Partnership, or any part thereof, be assigned or transferred to any Person unless the transferee executes

9990439.8

35

documentation reasonably satisfactory to the General Partner pursuant to which the transferee agrees to be bound by the Partnership Agreement and the General Partner is satisfied that such assignment or transfer (i) is not in violation of any applicable federal or state securities laws, (ii) will not result in the Partnership being considered to have terminated within the meaning of Section 708 of the Code, (iii) will not result in any General Partner being required to register under the Investment Advisers Act of 1940, as amended, and (iv) will not result in the Partnership being required to register under the Company Act and (v) will not cause the Partnership to be treated as a publicly traded partnership taxable as a corporation for U.S. federal income tax purposes. In connection with the preceding sentence, the General Partner will have the right to require a legal opinion of counsel satisfactory to him. Unless the foregoing conditions are met, no attempted assignment or transfer of a Limited Partner's interest in the Partnership, or part thereof, will be valid or binding on the Partnership. All expenses incurred in connection with any transfer pursuant to the foregoing provisions will be paid by the transferring Limited Partner. Notwithstanding any other provision of the Partnership Agreement to the contrary, no unit of Partnership Interest may be subdivided for resale into units smaller than a unit the initial offering price of which would have been at least $20,000.

Admission of New Partners. The General Partner may admit one or more additional Limited Partners at any time in its sole and absolute discretion. The General Partner may do all things appropriate or convenient in connection with the admission of any additional Limited Partner. Additional Limited Partners will be required to execute an agreement pursuant to which it becomes bound by the terms of the Partnership Agreement. The General Partner may also admit one or more additional general partners at any time in its sole and absolute discretion.

Amendments to The Partnership Agreement. The Partnership Agreement may not be amended except by a writing executed by the General Partners and by a majority in interest of the Limited Partners; provided, however, that (a) without the consent of all the Partners, no such amendment will change the Partnership to a general partnership, reduce the liabilities, obligations or responsibilities of the General Partners or increase the liabilities, obligations or responsibilities of the Limited Partners, and (b) without the consent of each Partner affected thereby, no such amendment will reduce the capital account of any Partner or alter or modify his interest in Partnership income, distributions or Partnership Losses; and provided further, however, that the General Partner may amend the Partnership Agreement without the consent of any of the other Partners to reflect changes validly made in the membership of the Partnership; to reflect changes in the capital accounts of the Partners resulting from operation of the Partnership Agreement and, subject to other provisos of the Partnership Agreement, to reflect the creation of additional classes of Limited Partners. Notwithstanding any of the foregoing provisions, the Partnership Agreement will be amended from time to time in each and every manner to comply with the then existing requirements of the Code, the Treasury Regulations and the rulings of the Internal Revenue Service affecting the status of the limited partnership as a partnership for federal income tax purposes, and no amendment will be proposed which will directly or indirectly affect or jeopardize the then status of the limited partnership as a partnership for federal income tax purposes.

Reports to Partners. The Partnership will provide to the Partners unaudited financial statements within 35 days after the end of each calendar quarter (other than the last) and will furnish to them annual audited financial statements within 90 days after year end, and tax information as soon thereafter as practicable.

9990439.8                                    36

CONFIDENTIAL

GCC - SEC 0000915

SECSAZ0000915

Exculpation. The Partnership Agreement provides that the General Partner will not be liable, responsible or accountable in damages or otherwise to the Partnership or to any Limited Partner, successor, assignee or transferee except by reason of acts or omissions due to bad faith, gross negligence, recklessness, fraud or intentional misconduct, or by reason of actions taken in the knowledge that such actions were not within the stated purposes and powers of the Partnership.

Indemnification. The Partnership Agreement provides that the Partnership will indemnify, defend and hold the General Partner and, if expressly directed by the General Partner, the Partnership's agents, employees, advisors and consultants, harmless from and against any loss, liability, damage, cost or expense, including reasonable attorneys' fees, in defense of any demands, claims or lawsuits against the General Partner or such other persons, in or as a result of or relating to his capacity, actions or omissions as General Partner or an agent, employee, advisor, or consultant, concerning the business, or activities undertaken on behalf, of the Partnership, including, without limitation, any demands, claims or lawsuits initiated by a Limited Partner or resulting from or relating to the offer and sale of the Interests, provided that the acts or omissions of such General Partner or other person are not the result of bad faith, gross negligence, recklessness, fraud or intentional misconduct, or such a lesser standard of conduct as under applicable law prevents indemnification hereunder, or were taken in the knowledge that such actions were not within the stated purposes and powers of the Partnership.

The General Partner, and any other indemnified person, will be entitled to receive, upon application therefor, advances to cover the costs of defending any claim or action against him; provided that such advances will be repaid to the Partnership if the General Partner or other person violated any of the standards set forth in the preceding paragraph. All rights of the General Partner and others to indemnification will survive the dissolution of the Partnership and the death, retirement, removal, dissolution, adjudicated incompetency or insolvency of either the General Partner or an agent, employee, or advisor, or others, provided that notice of a potential claim for indemnification hereunder is made by or on behalf of the person seeking such indemnification prior to the time distribution in liquidation of the property of the Partnership is made.

If the Partnership is made a party to any claim, dispute or litigation or otherwise incurs any loss, liability, damage, cost or expense (i) as a result of or in connection with the General Partner's obligations or liabilities unrelated to the Partnership business, or (ii) by reason of his bad faith, gross negligence, recklessness, fraud or intentional misconduct, or by reason of actions taken in the knowledge that such actions were not within the stated purposes and powers of the Partnership, the General Partner will indemnify and reimburse the Partnership for all loss, liability, damage, cost and expense incurred, including reasonable attorneys' fees.

## TAX ASPECTS

CIRCULAR 230 NOTICE. THE FOLLOWING NOTICE IS BASED ON U.S. TREASURY REGULATIONS GOVERNING PRACTICE BEFORE THE U.S. INTERNAL REVENUE SERVICE: (1) ANY U.S. FEDERAL TAX ADVICE CONTAINED HEREIN, INCLUDING ANY OPINION OF COUNSEL REFERRED TO HEREIN, IS NOT INTENDED OR WRITTEN TO BE USED, AND CANNOT BE USED BY ANY TAXPAYER FOR THE PURPOSE OF AVOIDING U.S. FEDERAL TAX

9990439.8                                    37

CONFIDENTIAL                          GCC — SEC 0000916

SECSAZ0000916

PENALTIES THAT MAY BE IMPOSED ON THE TAXPAYER; (2) ANY SUCH ADVICE IS WRITTEN TO SUPPORT THE PROMOTION OR MARKETING OF THE TRANSACTIONS DESCRIBED HEREIN (OR IN ANY SUCH OPINION OF COUNSEL); AND (3) EACH TAXPAYER SHOULD SEEK ADVICE BASED ON THE TAXPAYER'S PARTICULAR CIRCUMSTANCES FROM AN INDEPENDENT TAX ADVISOR.

The following is a summary of certain aspects of the income taxation of the Partnership and its Limited Partners which should be considered by a prospective Limited Partner. The Partnership has not sought a ruling from the Internal Revenue Service (the "Service") or any other Federal, state or local agency with respect to any of the tax issues affecting the Partnership, nor has it obtained an opinion of counsel with respect to any tax issues.

This summary of certain aspects of the Federal income tax treatment of the Partnership is based upon the Internal Revenue Code of 1986, as amended (the "Code"), judicial decisions, Treasury Regulations (the "Regulations") and rulings in existence on the date hereof, all of which are subject to change. This summary does not discuss the impact of various proposals to amend the Code which could change certain of the tax consequences of an investment in the Partnership. This summary also does not discuss all of the tax consequences that may be relevant to a particular investor or to certain investors subject to special treatment under the Federal income tax laws, such as insurance companies.

EACH PROSPECTIVE LIMITED PARTNER SHOULD CONSULT WITH ITS OWN TAX ADVISER IN ORDER FULLY TO UNDERSTAND THE FEDERAL, STATE, LOCAL AND FOREIGN INCOME TAX CONSEQUENCES OF AN INVESTMENT IN THE PARTNERSHIP.

### Tax Treatment of Partnership Operations

Classification of the Partnership. The Partnership operates as a partnership for Federal tax purposes that is not a publicly traded partnership taxable as a corporation. If it were determined that the Partnership should be taxable as a corporation for Federal tax purposes (as a result of changes in the Code, the Regulations or judicial interpretations thereof, a material adverse change in facts, or otherwise), the taxable income of the Partnership would be subject to corporate income tax when recognized by the Partnership; distributions of such income, other than in certain redemptions of Interests, would be treated as dividend income when received by the Partners to the extent of the current or accumulated earnings and profits of the Partnership; and Partners would not be entitled to report profits or losses realized by the Partnership.

UNLESS OTHERWISE INDICATED, REFERENCES IN THE FOLLOWING DISCUSSION OF THE TAX CONSEQUENCES OF PARTNERSHIP INVESTMENTS, ACTIVITIES, INCOME, GAIN AND LOSS, INCLUDE THE DIRECT INVESTMENTS, ACTIVITIES, INCOME, GAIN AND LOSS OF THE PARTNERSHIP, AND THOSE INDIRECTLY ATTRIBUTABLE TO THE PARTNERSHIP AS A RESULT OF IT BEING AN INVESTOR IN OTHER INVESTMENT ENTITIES.

CONFIDENTIAL    GCC – SEC 0000917

SECSAZ0000917

As a partnership, the Partnership is not itself subject to Federal income tax. The Partnership files an annual partnership information return with the Service which reports the results of operations. Each Partner is required to report separately on its income tax return its distributive share of the Partnership's net long-term capital gain or loss, net short-term capital gain or loss and all other items of ordinary income or loss. Each Partner is taxed on its distributive share of the Partnership's taxable income and gain regardless of whether it has received or will receive a distribution from the Partnership.

Allocation of Profits and Losses. Under the Partnership Agreement, the Partnership's net capital appreciation or net capital depreciation for each accounting period is allocated among the Partners and to their capital accounts without regard to the amount of income or loss actually recognized by the Partnership for Federal income tax purposes. The Partnership Agreement provides that items of income, deduction, gain, loss or credit actually recognized by the Partnership for each fiscal year generally are to be allocated for income tax purposes among the Partners pursuant to the principles of Regulations issued under Sections 704(b) and 704(c) of the Code.

Under the Partnership Agreement, the General Partner has the discretion to allocate income, gains, losses, deductions and credits to take into account the differences between income for tax purposes and for Partnership book purposes. There can be no assurance that, if the General Partner makes such a special allocation, the Service will accept such allocation. If such allocation is successfully challenged by the Service, the Partnership's gains allocable to the Partners would be increased.

Tax Elections; Returns; Tax Audits. The Code generally provides for optional adjustments to the basis of partnership property upon distributions of partnership property to a partner and transfers of partnership interests (including by reason of death) provided that a partnership election has been made pursuant to Section 754. Under the Partnership Agreement, the General Partner, in its sole discretion, may cause the Partnership to make or refrain from making such an election. Any such election, once made, cannot be revoked without the Service's consent. The actual effect of any such election may depend upon whether any Other Investment Entities also make such an election. As a result of the complexity and added expense of the tax accounting required to implement such an election, the General Partner presently does not intend to make such election.

The General Partner decides how to report the partnership items on the Partnership's tax returns, and all Partners are required under the Code to treat the items consistently on their own returns, unless they file a statement with the Service disclosing the inconsistency. Given the uncertainty and complexity of the tax laws, it is possible that the Service may not agree with the manner in which the Partnership's items have been reported. In the event the income tax returns of the Partnership are audited by the Service, the tax treatment of the Partnership's income and deductions generally is determined at the limited partnership level in a single proceeding rather than by individual audits of the Partners. The General Partner, designated as the "Tax Matters Partner", has considerable authority to make decisions affecting the tax treatment and procedural rights of all Partners. In addition, the Tax Matters Partner has the authority to bind certain Partners to settlement agreements and the right on behalf

9990439.8

39

CONFIDENTIAL

GCC – SEC 0000918

SECSAZ0000918

of all Partners to extend the statute of limitations relating to the Partners' tax liabilities with respect to Partnership items.

Mandatory Basis Adjustments.    Under new legislation, the Partnership is generally required to adjust its tax basis in its assets in respect of all Partners in cases of partnership distributions that result in a "substantial basis reduction" (i.e., in excess of $250,000) in respect of the partnership's property. The Partnership is also required to adjust its tax basis in its assets in respect of a transferee, in the case of a sale or exchange of an interest, or a transfer upon death, when there exists a "substantial built-in loss" (i.e., in excess of $250,000) in respect of partnership property immediately after the transfer. For this reason, the Partnership will require (i) a Partner who receives a distribution from the Partnership in connection with a complete withdrawal, (ii) a transferee of an Interest (including a transferee in case of death) and (iii) any other Partner in appropriate circumstances to provide the Partnership with information regarding its adjusted tax basis in its Interest.

Tax Consequences to a Withdrawing Limited Partner

A Limited Partner receiving a cash liquidating distribution from the Partnership, in connection with a complete withdrawal from the Partnership, generally will recognize capital gain or loss to the extent of the difference between the proceeds received by such Limited Partner and such Limited Partner's adjusted tax basis in its partnership interest. Such capital gain or loss will be short-term, long-term, or some combination of both, depending upon the timing of the Limited Partner's contributions to the Partnership. However, a withdrawing Limited Partner will recognize ordinary income to the extent such Limited Partner's allocable share of the Partnership's "unrealized receivables" exceeds the Limited Partner's basis in such unrealized receivables (as determined pursuant to the Regulations). For these purposes, accrued but untaxed market discount, if any, on securities held by the Partnership will be treated as an unrealized receivable, with respect to which a withdrawing Limited Partner would recognize ordinary income. A Limited Partner receiving a cash nonliquidating distribution will recognize income in a similar manner only to the extent that the amount of the distribution exceeds such Limited Partner's adjusted tax basis in its partnership interest.

Distributions of Property.    A partner's receipt of a distribution of property from a partnership is generally not taxable. However, under Section 731 of the Code, a distribution consisting of marketable securities generally is treated as a distribution of cash (rather than property) unless the distributing partnership is an "investment partnership" within the meaning of Section 731(c)(3)(C)(i) and the recipient is an "eligible partner" within the meaning of Section 731(c)(3)(C)(iii). The Partnership will determine at the appropriate time whether it qualifies as an "investment partnership." Assuming it so qualifies, if a Limited Partner is an "eligible partner", which term should include a Limited Partner whose contributions to the Partnership consisted solely of cash, the rule treating a distribution of property as a distribution of cash would not apply.

Tax Treatment of Partnership Investments

In General.    The Partnership expects to act as a trader, and not as a dealer, with respect to its securities transactions. A trader is a person who buys and sells securities for its

9990439.8                                        40

CONFIDENTIAL                              GCC – SEC 0000919

SECSAZ0000919

own account. A dealer, on the other hand, is a person who purchases securities for resale to customers rather than for investment or speculation. The Partnership has taken the position that its securities trading activity constitutes a trade or business for Federal income tax purposes. However, there can be no assurance that the Service will agree that the Partnership's securities activities will constitute trading rather than investing.

Generally, the gains and losses realized by a trader on the sale of securities are capital gains and losses. Capital gains and losses recognized by the Partnership may be long-term or short-term depending, in general, upon the length of time the Partnership maintains a particular investment position and, in some cases, upon the nature of the transaction. Property held for more than one year generally will be eligible for long-term capital gain or loss treatment. The application of certain rules relating to short sales, to so-called "straddle" and "wash sale" transactions and to Section 1256 Contracts (defined below) may serve to alter the treatment of the Partnership's securities positions.[1]

The Partnership may also realize ordinary income and losses with respect to its transactions. The Partnership may hold debt obligations with "original issue discount." In such case the Partnership would be required to include amounts in taxable income on a current basis even though receipt of such amounts may occur in a subsequent year.

The maximum ordinary income tax rate for individuals is 35%[2] and, in general, the maximum individual income tax rate for "Qualified Dividends"[3] and long-term capital gains is 15%[4] (unless the taxpayer elects to be taxed at ordinary rates – see "Limitation on Deductibility of Interest and Short Sale Expenses" below), although in all cases the actual rates may be higher due to the phase out of certain tax deductions, exemptions and credits. The excess of capital losses over capital gains may be offset against the ordinary income of an individual taxpayer, subject to an annual deduction limitation of $3,000. Capital losses of an individual taxpayer may generally be carried forward to succeeding tax years to offset capital gains and then ordinary income (subject to the $3,000 annual limitation). For corporate taxpayers, the maximum income tax rate is 35%. Capital losses of a corporate taxpayer may be offset only against capital gains, but unused capital losses may be carried back three years (subject to certain limitations) and carried forward five years.

There are a number of uncertainties in the Federal income tax law relating to debt restructuring. In general, a "significant modification" of a debt obligation acquired by the

---

[1] Generally, in the absence of Regulations requiring it, the Partnership will not treat positions held through different investment advisory agreements or Other Investment Entities as offsetting positions for purposes of the straddle rules.

[2] This rate is scheduled to increase to 39.6% in 2011.

[3] A "Qualified Dividend" is generally a dividend from certain domestic corporations, and from certain foreign corporations that are either eligible for the benefits of a comprehensive income tax treaty with the United States or are readily tradable on an established securities market in the United States. Shares must be held for certain holding periods in order for a dividend thereon to be a Qualified Dividend.

[4] The maximum individual long-term capital gains tax rate is 20% for sales or exchanges on or after January 1, 2009. The 15% maximum individual tax rate on Qualified Dividends is scheduled to expire on December 31, 2008.

9990439.8

41

CONFIDENTIAL

SECSAZ0000920

Partnership at a discount may be treated as a taxable event to the Partnership, with the resulting gain or loss measured by the difference between the principal amount of the debt after the modification and the Partnership's tax basis in such debt before the modification. However, other than for certain "safe harbor" modifications specified in Treasury Regulations, the determination of whether a modification is "significant" is based on all of the facts and circumstances. Therefore, it is possible that the Service could take the position that the restructuring of a debt obligation acquired by the Partnership at a discount amounts to a "significant modification" that should be treated as a taxable event even if the Partnership did not so treat the restructuring on its tax return.

Section 1256 Contracts. In the case of Section 1256 Contracts, the Code generally applies a "mark-to-market" system of taxing unrealized gains and losses on such contracts and otherwise provides for special rules of taxation. A Section 1256 Contract includes certain regulated futures contracts and certain other contracts. Under these rules, Section 1256 Contracts held by the Partnership at the end of each taxable year of the Partnership are treated for Federal income tax purposes as if they were sold by the Partnership for their fair market value on the last business day of such taxable year. The net gain or loss, if any, resulting from such deemed sales (known as "marking to market"), together with any gain or loss resulting from actual sales of Section 1256 Contracts, must be taken into account by the Partnership in computing its taxable income for such year. If a Section 1256 Contract held by the Partnership at the end of a taxable year is sold in the following year, the amount of any gain or loss realized on such sale will be adjusted to reflect the gain or loss previously taken into account under the "mark-to-market" rules.

With certain exceptions, capital gains and losses from such Section 1256 Contracts generally are characterized as short-term capital gains or losses to the extent of 40% thereof and as long-term capital gains or losses to the extent of 60% thereof. If an individual taxpayer incurs a net capital loss for a year, the portion thereof, if any, which consists of a net loss on Section 1256 Contracts may, at the election of the taxpayer, be carried back three years. Losses so carried back may be deducted only against net capital gain to the extent that such gain includes gains on Section 1256 Contracts. A Section 1256 Contract does not include any "securities futures contract" or any option on such a contract, other than a "dealer securities futures contract" (See "Certain Securities Futures Contracts").

Certain Securities Futures Contracts. Generally, a securities futures contract is a contract of sale for future delivery of a single security or a narrow-based security index. Any gain or loss from the sale or exchange of a securities futures contract (other than a "dealer securities futures contract") is treated as gain or loss from the sale or exchange of property that has the same character as the property to which the contract relates has (or would have) in the hands of the taxpayer. If the underlying security would be a capital asset in the taxpayer's hands, then gain or loss from the sale or exchange of the securities futures contract would be capital gain or loss. Capital gain or loss from the sale or exchange of a securities futures contract to sell property (i.e., the short side of a securities futures contract) generally will be short term capital gain or loss.

A "dealer securities futures contract" is treated as a Section 1256 Contract. A "dealer securities futures contract" is a securities futures contract, or an option to enter into such

9990439.8                                    42

CONFIDENTIAL                          GCC - SEC 0000921

a contract, that (1) is entered into by a dealer (or, in the case of an option, is purchased or granted by the dealer) in the normal course of its trade or business activity of dealing in the contracts and (2) is traded on a qualified board of trade or exchange.

Mixed Straddle Election. The Code allows a taxpayer to elect to offset gains and losses from positions which are part of a "mixed straddle." A "mixed straddle" is any straddle in which one or more but not all positions are Section 1256 Contracts. Pursuant to Temporary Regulations, the Partnership (and any Other Investment Entities) may be eligible to elect to establish one or more mixed straddle accounts for certain of its mixed straddle trading positions. The mixed straddle account rules require a daily "marking to market" of all open positions in the account and a daily netting of gains and losses from positions in the account. At the end of a taxable year, the annual net gains or losses from the mixed straddle account are recognized for tax purposes. The application of the Temporary Regulations' mixed straddle account rules is not entirely clear. Therefore, there is no assurance that a mixed straddle account election by the Partnership will be accepted by the Service.

Possible "Mark-to-Market" Election. To the extent that the Partnership is directly engaged in a trade or business as a trader in "securities," it may elect under Section 475 of the Code to "mark-to-market" the securities held in connection with such trade or business. Under such election, securities held by the Partnership at the end of each taxable year will be treated as if they were sold by the Partnership for their fair market value on the last day of such taxable year, and gains or losses recognized thereon will be treated as ordinary income or loss. Moreover, even if the Partnership determines that its securities activities will constitute trading rather than investing, there can be no assurance that the Service will agree, in which case the Partnership may not be able to mark-to-market its positions.

Short Sales. Gain or loss from a short sale of property is generally considered as capital gain or loss to the extent the property used to close the short sale constitutes a capital asset in the Partnership's hands. Except with respect to certain situations where the property used to close a short sale has a long-term holding period on the date the short sale is entered into, gains on short sales generally are short-term capital gains. A loss on a short sale will be treated as a long-term capital loss if, on the date of the short sale, "substantially identical property" has been held by the Partnership for more than one year. In addition, these rules may also terminate the running of the holding period of "substantially identical property" held by the Partnership.

Gain or loss on a short sale will generally not be realized until such time that the short sale is closed. However, if the Partnership holds a short sale position with respect to stock, certain debt obligations or partnership interests that has appreciated in value and then acquires property that is the same as or substantially identical to the property sold short, the Partnership generally will recognize gain on the date it acquires such property as if the short sale were closed on such date with such property. Similarly, if the Partnership holds an appreciated financial position with respect to stock, certain debt obligations, or partnership interests and then enters into a short sale with respect to the same or substantially identical property, the Partnership generally will recognize gain as if the appreciated financial position were sold at its fair market value on the date it enters into the short sale. The subsequent holding period for any appreciated financial position that is subject to these constructive sale rules will be determined as if such position were acquired on the date of the constructive sale.

99904439.3                                    43

CONFIDENTIAL                          GCC - SEC 0000922

Effect of Straddle Rules on Limited Partners' Securities Positions. The Service may treat certain positions in securities held (directly or indirectly) by a Partner and its indirect interest in similar securities held by the Partnership as "straddles" for Federal income tax purposes. Investors should consult their tax advisors regarding the application of the "straddle" rules to their investment in the Partnership.[5]

Limitation on Deductibility of Interest and Short Sale Expenses. For noncorporate taxpayers, Section 163(d) of the Code limits the deduction for "investment interest" (i.e., interest or short sale expenses for "indebtedness properly allocable to property held for investment"). Investment interest is not deductible in the current year to the extent that it exceeds the taxpayer's "net investment income," consisting of net gain and ordinary income derived from investments in the current year less certain directly connected expenses (other than interest or short sale expenses). For this purpose, Qualified Dividends and long-term capital gains are excluded from net investment income unless the taxpayer elects to pay tax on such amounts at ordinary income tax rates.

For purposes of this provision, the Partnership's activities (other than certain activities that are treated as "passive activities" under Section 469 of the Code) will be treated as giving rise to investment income for a Limited Partner, and the investment interest limitation would apply to a noncorporate Limited Partner's share of the interest and short sale expenses attributable to the Partnership's operation. In such case, a noncorporate Limited Partner would be denied a deduction for all or part of that portion of its distributive share of the Partnership's ordinary losses attributable to interest and short sale expenses unless it had sufficient investment income from all sources including the Partnership. A Limited Partner that could not deduct losses currently as a result of the application of Section 163(d) would be entitled to carry forward such losses to future years, subject to the same limitation. The investment interest limitation would also apply to interest paid by a noncorporate Limited Partner on money borrowed to finance its investment in the Partnership. Potential investors are advised to consult with their own tax advisers with respect to the application of the investment interest limitation in their particular tax situations.

For each taxable year, Section 1277 of the Code limits the deduction of the portion of any interest expense on indebtedness incurred by a taxpayer to purchase or carry a security with market discount which exceeds the amount of interest (including original issue discount) includible in the taxpayer's gross income for such taxable year with respect to such security ("Net Interest Expense"). In any taxable year in which the taxpayer has Net Interest Expense with respect to a particular security, such Net Interest Expense is not deductible except to the extent that it exceeds the amount of market discount which accrued on the security during the portion of the taxable year during which the taxpayer held the security. Net Interest Expense which cannot be deducted in a particular taxable year under the rules described above can be carried forward and deducted in the year in which the taxpayer disposes of the security. Alternatively, at the taxpayer's election, such Net Interest Expense can be carried forward and

---

[5]  The Partnership will not generally be in a position to furnish to Partners information regarding the securities positions of the Other Investment Entities which would permit a Partner to determine whether its transactions in securities, which are also held by such Other Investment Entities, should be treated as offsetting positions for purposes of the straddle rules.

CONFIDENTIAL                              GCC - SEC 0000923

SECSAZ0000923

deducted in a year prior to the disposition of the security, if any, in which the taxpayer has net interest income from the security.

Section 1277 would apply to a Limited Partner's share of the Partnership's Net Interest Expense attributable to a security held by the Partnership with market discount. In such case, a Limited Partner would be denied a current deduction for all or part of that portion of its distributive share of the Partnership's ordinary losses attributable to such Net Interest Expense and such losses would be carried forward to future years, in each case as described above. Although no guidance has been issued regarding the manner in which an election to deduct previously disallowed Net Interest Expense in a year prior to the year in which a bond is disposed of should be made, it appears that such an election would be made by the Partnership rather than by the Limited Partner. Section 1277 would also apply to the portion of interest paid by a Limited Partner on money borrowed to finance its investment in the Partnership to the extent such interest was allocable to securities held by the Partnership with market discount.

Deductibility of Partnership Investment Expenditures and Certain Other Expenditures. Investment expenses (e.g., investment advisory fees) of an individual, trust or estate are deductible only to the extent they exceed 2% of adjusted gross income.[4] In addition, the Code further restricts the ability of an individual with an adjusted gross income in excess of a specified amount (for 2006, $150,500 or $75,250 for a married person filing a separate return) to deduct such investment expenses. Under such provision, there is a limitation on the deductibility of investment expenses in excess of 2% of adjusted gross income to the extent such excess expenses (along with certain other itemized deductions) exceed the lesser of (i) 3% of the excess of the individual's adjusted gross income over the specified amount or (ii) 80% of the amount of certain itemized deductions otherwise allowable for the taxable year.[7] Moreover, such investment expenses are miscellaneous itemized deductions which are not deductible by a noncorporate taxpayer in calculating its alternative minimum tax liability.

Pursuant to Temporary Regulations issued by the Treasury Department, these limitations on deductibility should not apply to a noncorporate Limited Partner's share of the expenses of the Partnership to the extent the Partnership is engaged, as it expects to be, in a trade or business within the meaning of the Code. These limitations will apply, however, to a noncorporate Limited Partner's share of the investment expenses of the Partnership (including the Management Fee, payments made on certain derivative instruments (if any) and any fee payable to the managers of Other Investment Entities), to the extent such expenses are allocable to Other Investment Entities that are not in a trade or business within the meaning of the Code. The

---

[4]    However, Section 67(e) of the Code provides that, in the case of a trust or an estate, such limitation does not apply to deductions or costs which are paid or incurred in connection with the administration of the estate or trust and would not have been incurred if the property were not held in such trust or estate. There is a disagreement among three Federal Courts of Appeals on the question of whether the investment advisory fees incurred by a trust are exempt (under Section 67(e)) from the 2% of adjusted gross income floor on deductibility. Limited Partners that are trusts or estates should consult their tax advisors as to the applicability of these cases to the investment expenses that are allocated to them.

[7]    Under recently enacted legislation, the latter limitation on itemized deductions has been reduced starting in calendar year 2006, will be further reduced starting in 2008, and will be completely eliminated in 2010. However, this legislation contains a "sunset" provision that will result in the limitation on itemized deductions being restored in 2011.

5990439.8                                45

CONFIDENTIAL

GCC — SEC 0000924

SECSAZ0000924

Partnership intends to treat its expenses attributable to the Other Investment Entities that are engaged in trade or business within the meaning of the Code or to the trading activity of the Partnership as not being subject to the foregoing limitations on deductibility, although there can be no assurance that the Service may not treat such expenses as investment expenses which are subject to the limitations.

The consequences of these limitations will vary depending upon the particular tax situation of each taxpayer. Accordingly, noncorporate Limited Partners should consult their tax advisers with respect to the application of these limitations.

A Limited Partner will not be allowed to deduct syndication expenses attributable to the acquisition of an Interest paid by such Limited Partner or the Partnership. Any such amounts will be included in the Limited Partner's adjusted tax basis for its Interest.

Recently enacted legislation includes a provision (adding a new Section 470 of the Code) which may defer certain deductions of the Partnership to the extent any direct or indirect investors of the Partnership are tax exempt persons, non-U.S. persons, and any domestic government organizations or instrumentalities thereof. If applicable, this provision could have an adverse effect on taxable investors in the Partnership. There is some uncertainty regarding the scope of the new provision and its applicability to the Partnership, which may be addressed in future guidance or legislation. Investors should consult their tax advisors regarding the consequences of this new provision with respect to an investment in the Partnership.

Application of Rules for Income and Losses from Passive Activities. The Code restricts the deductibility of losses from a "passive activity" against certain income which is not derived from a passive activity. This restriction applies to individuals, personal service corporations and certain closely held corporations. Pursuant to Temporary Regulations issued by the Treasury Department, income or loss from the Partnership's securities investment and trading activity generally will not constitute income or loss from a passive activity. Therefore, passive losses from other sources generally could not be deducted against a Limited Partner's share of such income and gain from the Partnership. Income or loss attributable to certain activities of the Partnership, including investments in partnerships engaged in certain trades or businesses, certain private claims or certain fundings of reorganization plans may constitute passive activity income or loss.

Application of Basis and "At Risk" Limitations on Deductions. The amount of any loss of the Partnership that a Limited Partner is entitled to include in its income tax return is limited to its adjusted tax basis in its Interest as of the end of the Partnership's taxable year in which such loss occurred. Generally, a Limited Partner's adjusted tax basis for its Interest is equal to the amount paid for such Interest, increased by the sum of (i) its share of the Partnership's liabilities, as determined for Federal income tax purposes, and (ii) its distributive share of the Partnership's realized income and gains, and decreased (but not below zero) by the sum of (i) distributions (including decreases in its share of Partnership liabilities) made by the Partnership to such Limited Partner and (ii) such Limited Partner's distributive share of the Partnership's realized losses and expenses.

CONFIDENTIAL                                    GCC  -  SEC  0000925

SECSAZ0000925

Similarly, a Limited Partner that is subject to the "at risk" limitations (generally, non-corporate taxpayers and closely held corporations) may not deduct losses of the Partnership to the extent that they exceed the amount such Limited Partner has "at risk" with respect to its Interest at the end of the year. The amount that a Limited Partner has "at risk" will generally be the same as its adjusted basis as described above, except that it will generally not include any amount attributable to liabilities of the Partnership or any amount borrowed by the Limited Partner on a non-recourse basis.

Losses denied under the basis or "at risk" limitations are suspended and may be carried forward in subsequent taxable years, subject to these and other applicable limitations.

"Phantom Income" From Partnership Investments. Pursuant to various "anti-deferral" provisions of the Code (the "Subpart F" and "passive foreign investment company" provisions), investments (if any) by the Partnership in certain foreign corporations may cause a Limited Partner to (i) recognize taxable income prior to the Partnership's receipt of distributable proceeds, (ii) pay an interest charge on receipts that are deemed as having been deferred or (iii) recognize ordinary income that, but for the "anti-deferral" provisions, would have been treated as long-term or short-term capital gain.

### Foreign Taxes

It is possible that certain dividends and interest directly or indirectly received by the Partnership from sources within foreign countries will be subject to withholding taxes imposed by such countries. In addition, the Partnership or the Other Investment Entities may also be subject to capital gains taxes in some of the foreign countries where they purchase and sell securities. Tax treaties between certain countries and the United States may reduce or eliminate such taxes. It is impossible to predict in advance the rate of foreign tax the Partnership will directly or indirectly pay since the amount of the Partnership's assets to be invested in various countries is not known.

The Limited Partners will be informed by the Partnership as to their proportionate share of the foreign taxes paid by the Partnership or the Other Investment Entities, which they will be required to include in their income. The Limited Partners generally will be entitled to claim either a credit (subject, however, to various limitations on foreign tax credits) or, if they itemize their deductions, a deduction (subject to the limitations generally applicable to deductions) for their share of such foreign taxes in computing their Federal income taxes.

### Tax Shelter Reporting Requirements

The Regulations require the Partnership to complete and file Form 8886 ("Reportable Transaction Disclosure Statement") with its tax return for any taxable year in which the Partnership participates in a "reportable transaction." Additionally, each Partner treated as participating in a reportable transaction of the Partnership is generally required to file Form 8886 with its tax return. The Partnership and any such Partner, respectively, must also submit a copy of the completed form with the Service's Office of Tax Shelter Analysis. The Partnership intends to notify the Partners that it believes (based on information available to the Partnership) are required to report a transaction of the Partnership or the Other Investment Entities, and

CONFIDENTIAL

GCC - SEC 0000926

SECSAZ0000926

intends to provide such Limited Partners with any available information needed to complete and submit Form 8886 with respect to the transactions of the Partnership and the Other Investment Entities. In certain situations, there may also be a requirement that a list be maintained of persons participating in such reportable transactions, which could be made available to the Service at its request.

A Partner's recognition of a loss upon its disposition of an interest in the Partnership could also constitute a "reportable transaction" for such Partner requiring such Partner to file Form 8886.

Under new legislation, a significant penalty is imposed on taxpayers who participate in a "reportable transaction" and fail to make the required disclosure. The penalty is generally $10,000 for natural persons and $50,000 for other persons (increased to $100,000 and $200,000, respectively, if the reportable transaction is a "listed" transaction). Investors should consult with their own advisors concerning the application of these reporting obligations to their specific situations.

<u>State and Local Taxation</u>

In addition to the Federal income tax consequences described above, prospective investors should consider potential state and local tax consequences of an investment in the Partnership. State and local laws often differ from Federal income tax laws with respect to the treatment of specific items of income, gain, loss, deduction and credit. A Partner's distributive share of the taxable income or loss of the Partnership generally will be required to be included in determining its reportable income for state and local tax purposes in the jurisdiction in which it is a resident. A partnership in which the Partnership acquires an interest may conduct business in a jurisdiction which will subject to tax a Partner's share of the partnership's income from that business and may cause Partners to file tax returns in those jurisdictions. Prospective investors should consult their tax advisers with respect to the availability of a credit for such tax in the jurisdiction in which that Partner is a resident.

One or more states may impose reporting requirements on the Partnership and/or its Partners in a manner similar to that described above in "Tax Shelter Reporting Requirements." Investors should consult with their own advisors as to the applicability of such rules in jurisdictions which may require or impose a filing requirement.

The Partnership should not be subject to the New York City unincorporated business tax, which is not imposed on a partnership which purchases and sells securities for its "own account." (This exemption may not be applicable to the extent a partnership in which the Partnership invests, directly or through an Other Investment Entity, conducts a business in New York City.) By reason of a similar "own account" exemption, it is also expected that a nonresident individual Partner should not be subject to New York State personal income tax with respect to his share of income or gain realized directly by the Partnership.

Individual Limited Partners who are residents of New York State and New York City should be aware that the New York State and New York City personal income tax laws limit the deductibility of itemized deductions and interest expense for individual taxpayers at

9990439.8                                    48

SECSAZ0000927

certain income levels. However, as described above, the Partnership expects to be in a trade or business within the meaning of the Code. Accordingly, although there can be no assurance, the foregoing limitations should not apply to a Limited Partner's share of any of the Partnership's expenses.

For purposes of the New York State corporate franchise tax and the New York City general corporation tax, a corporation generally is treated as doing business in New York State and New York City, respectively, and is subject to such corporate taxes as a result of the ownership of a partnership interest in a partnership which does business in New York State and New York City, respectively.[8] Each of the New York State and New York City corporate taxes are imposed, in part, on the corporation's taxable income or capital allocable to the relevant jurisdiction by application of the appropriate allocation percentages. Moreover, a non-New York corporation which does business in New York State may be subject to a New York State license fee. A corporation which is subject to New York State corporate franchise tax solely as a result of being a limited partner in a New York partnership may, under certain circumstances, elect to compute its New York State corporate franchise tax by taking into account only its distributive share of such partnership's income and loss. There is currently no similar provision in effect for purposes of the New York City general corporation tax.

Regulations under both the New York State corporate franchise tax and New York City general corporation tax, however, provide an exception to this general rule in the case of a "portfolio investment partnership," which is defined, generally, as a partnership which meets the gross income requirements of Section 851(b)(2) of the Code. New York State (but not New York City) has adopted regulations that also include income and gains from commodity transactions described in Section 864(b)(2)(B)(iii) as qualifying gross income for this purpose. The qualification of the Partnership as a "portfolio investment partnership" with respect to its investments through advisory accounts and Other Investment Entities must be determined on an annual basis and, with respect to a taxable year, the Partnership and/or one or more Other Investment Entities may not qualify as portfolio investment partnerships. Therefore, a corporate limited partner may be treated as doing business in New York State and New York City as a result of its interest in the Partnership or its indirect interest in nonqualifying Other Investment Entities.

New York State has enacted legislation that imposes a quarterly withholding obligation on certain partnerships with respect to partners that are individual non-New York residents or corporations (other than "S" corporations). Accordingly, the Partnership may be required to withhold on the distributive shares of New York source partnership income allocable to such partners to the extent such income is not derived from trading in securities for the Partnership's or the Other Investment Entities' own account.

Each prospective Partner should consult its tax adviser with regard to the New York State and New York City tax consequences of an investment in the Partnership.

---

[8] New York State (but not New York City) generally exempts from corporate franchise tax a non-New York corporation which (i) does not actually or constructively own a 1% or greater limited partnership interest in a partnership doing business in New York and (ii) has a tax basis in such limited partnership interest not greater than $1 million.

9990439.8                                                    49

## ANTI-MONEY LAUNDERING REGULATIONS

As part of the Partnership's responsibility for the prevention of money laundering, the Administrator, the General Partner and his affiliates may require a detailed verification of a Limited Partner's identity, any beneficial owner underlying the account and the source of the payment.

The General Partner or the Administrator reserves the right to request such information as is necessary to verify the identity of a subscriber and the underlying beneficial owner of a subscriber's or a Limited Partner's Interest in the Partnership. In the event of delay or failure by the subscriber or Limited Partner to produce any information required for verification purposes, the General Partner may refuse to accept a subscription or may cause the withdrawal of any such Limited Partner from the Partnership. The General Partner, by written notice to any Limited Partner, may suspend the withdrawal rights of such Limited Partner if the General Partner reasonably deems it necessary to do so to comply with anti-money laundering regulations applicable to the Partnership, the General Partner or any of the Partnership's other service providers.

Each subscriber and Limited Partner will be required to make such representations to the Partnership as the Partnership, the General Partner and the Administrator will require in connection with such anti-money laundering programs, including, without limitation, representations to the Partnership that such subscriber or Limited Partner is not a prohibited country, territory, individual or entity listed on the U.S. Department of Treasury's Office of Foreign Assets Control ("OFAC") website and that it is not directly or indirectly affiliated with, any country, territory, individual or entity named on an OFAC list or prohibited by any OFAC sanctions programs. Such Limited Partner will also represent to the Partnership that amounts contributed by it to the Partnership were not directly or indirectly derived from activities that may contravene Federal, state or international laws and regulations, including anti-money laundering laws and regulations.

## LIMITATIONS ON TRANSFERABILITY; SUITABILITY REQUIREMENTS

Each purchaser of an Interest must bear the economic risk of the investment for an extended period of time (subject to a limited right to withdraw capital from the Partnership or to transfer or assign Interests in the Partnership) because the Interests have not been registered under the Securities Act of 1933, as amended (the "Securities Act"), and, therefore, cannot be sold unless they are subsequently registered under the Securities Act or an exemption from such registration is available. It is not contemplated that any such registration will ever be effected, or that certain exemptions provided by rules promulgated under the Securities Act (such as Rule 144) will ever be available. The foregoing restrictions on transferability must be regarded as substantial.

Each purchaser of an Interest is required to represent that the Interest is being acquired for its own account, for investment and not with a view to resale or distribution. The Interests are suitable investments only for sophisticated investors for whom an investment in the Partnership does not constitute a complete investment program and who fully understand, are willing to assume and who have the financial resources necessary to withstand, the risks involved in the Partnership's specialized investment program and to bear the potential loss of their entire investment in the Interests.

9990439.8                                50

CONFIDENTIAL                                        GCC – SEC 0000929

SECSAZ0000929

Investors in the Partnership must be "accredited investors" as defined in Rule 501 under the Securities Act, "qualified purchasers" as such term is defined in Section 2(a)(51) of the Company Act and must meet other suitability requirements.

Each prospective purchaser is urged to consult with its own advisors to determine the suitability of an investment in the Interests, and the relationship of such an investment to the purchaser's overall investment program and financial and tax position. Each purchaser of an Interest is required to further represent that, after all necessary advice and analysis, its investment in an Interest is suitable and appropriate in light of the foregoing considerations. Prior to any subscription of Interests, each prospective purchaser must represent in writing, by completing and signing the subscription documents, that it meets the suitability standards referred to in this Confidential Offering Memorandum. The General Partner has the right to reject a subscription for any reason or for no reason.

Interests may not be purchased by nonresident aliens, foreign corporations, foreign Partnership, foreign trusts or foreign estates, all as defined in the Internal Revenue Code of 1986, as amended or by U.S. tax-exempt investors. Foreign investors and U.S. tax-exempt investors may be eligible to invest in the Offshore Fund that has a substantially similar investment program to that of the Partnership.

## COUNSEL

Schulte Roth & Zabel LLP, 919 Third Avenue, New York, New York 10022, acts as counsel to the Partnership in connection with this offering of Interests. Schulte Roth & Zabel LLP also acts as counsel to the General Partner and his affiliates. In connection with the Partnership's offering of Interests and subsequent advice to the Partnership, the General Partner and his affiliates, Schulte Roth & Zabel LLP will not be representing the Limited Partners of the Partnership. No independent counsel has been retained to represent the Limited Partners of the Partnership.

## AUDITOR; REPORTS

BDO Seidman, LLP serves as the Partnership's auditor. The Partnership will provide to the Limited Partners unaudited financial statements within 35 days after the end of each calendar quarter (other than the last) and will furnish to them annual audited financial statements within 90 days after year end, and tax information as soon thereafter as practicable. Certain Limited Partners may have access to certain information regarding the Partnership that may not be available to other Limited Partners. Such Limited Partners may make investment decisions with respect to their investment in the Partnership based on such information.

## SUBSCRIPTION FOR INTERESTS

Persons interested in subscribing for Interests will be furnished with, and will be required to complete and return to the General Partner, subscription documents and other certain documents.

CONFIDENTIAL                        GCC - SEC 0000930

SECSAZ0000930

## ADDITIONAL INFORMATION

Representatives of the General Partner are available for a discussion of the terms and conditions of this offering and will provide any additional information, to the extent they possess it or can acquire it without unreasonable effort or expense, necessary to verify the information contained in this Confidential Offering Memorandum.

59904139.8                    52

CONFIDENTIAL                    GCC - SEC 0000931

SECSAZ0000931