# EXHIBIT 60

## OUR APPROACH

### THE FIRM'S OBJECTIVES

We run our investment business with two primary objectives: avoid losses, and, only then, achieve for investors a superior, long-term risk-adjusted rate of return.

We strive for consistently positive rates of return. No strategy is superior to compounding, and doing so annually. Our first objective, therefore, is to control risk. In thirteen years, we have never had a down year.

### THE FIRM'S STRATEGY

We invest in special situations. We identify concrete, well-defined specific ideas, each of which unfolds according to its individual logic and proceeds to a predictable (in some cases, almost inexorable) conclusion. Each of our special situations contains its own investment "genetic code" which dictates its transformation, and, in the process, almost always commands the articulation of value. We assemble a basket of these ideas, and try to maintain a relatively low correlation between the ultimate outcome of this portfolio and the fate of the broad markets. At times, the character of the overall portfolio requires a stronger protective band of hedges, and at times a looser shield.

Our portfolio's largest concentration is in bankrupt and highly distressed securities. We speculate in a particularly fertile area: inherently profitable companies, with positive and attractive cash flows, which have nonetheless leveraged themselves up to levels of debt unsustainable by these cash flows. Thus, bankruptcy investing in the present period involves primarily the identification of good companies with highly inappropriate balance sheets whose restoration to fiscal prudence often articulates value to the holder of very distressed bonds. We believe we are practicing a form of value investing at a substantial discount.

We combine a financial analysis of a company's capital structure with a legal analysis of the rights and prerogatives of a bondholder at each level in the capital structure. Blending the financial and legal analysis is crucial. As we contemplate an investment, our financial flexibility is defined and limited by the legal remedies made available by specific covenants and under broader contract and bankruptcy law; simultaneously, our rights under the law are circumscribed by what is financially achievable. We cross-reference the legally permissible with the financially doable. When we find the fit we want, we invest.

**Confidential**                                                                                                                    GCC-P 0470411

THE FIRM'S PORTFOLIO

  Near the end of the year, approximately 70% of our portfolio was invested in the bankruptcy/distressed area.  Not included in this figure is some risk-arbitrage activity, in which, like bankruptcy investing, we attempt to invest in special situations with fixed reference points.  Approximately 5% of our portfolio was invested in lower-risk and lower-return strategies, less speculative and less profitable, that complement the larger portfolio concentration.  This area has been profitable, although less so than the distressed area.  Finally, about 10% of the portfolio is held in the form of stock shorts, market shorts and other hedges.  This area has effectively served as a hedge and has been quite unprofitable.

  The perpetual self-justification of the hedges, at current levels of stock market evaluation, and their dreary returns, remind us of a story placed in a small Russian Jewish shtetl, which we cannot resist telling.  The local community council decided to hire a poor person and pay him a pittance to sit at the town gate and be the first to greet the Messiah upon his arrival.  The man's friend came to see him and criticized him for taking such a low-paying position.  "It's quite true," the poor man replied, "the pay is very low.  But the work is steady and it's a job for life."

  For the last 18 months if not longer, our markets have been market by rapid-burst periods of very fast and very brutal changes.  These changes, involving high swings in investor sentiment, in perception of the economy, and in prices of equity and debt securities, have not been easy to anticipate.  Therefore, we prefer to run a portfolio which does not invest 100% of its funds (even unleveraged) in an inherently high-margin area, no matter how attractive.  We prefer to divert some funds into a lower-risk lower-reward area, and some into shorts, in order to create a unified entity whose overall return is attractive on a risk-adjusted basis.

  These jottings (we hope) effectively convey, first, how we analyze ideas to identify those kinds of investments we like, and second, how we put different investments together into an internally coherent portfolio.  Our methodology pursues one objective: to invest in high-risk high-margin ideas in a conservative style.  We want our returns to be generated by the margins inherent in the ideas we invest in; we want our risk to be controlled by the conservative style in which we run our portfolio.  Our historically low levels of leverage, and our diversification should help control our risk.

Confidential

SUMMARY

We are running a fully-invested portfolio holding: (1) primarily, a variety of interesting bonds, both very-distressed and higher quality; (2) less significantly, a number of hedged arbitrage positions; (3) complementary individual short positions and market hedges. We continue to prefer this basket of special situations to picking stocks or guessing markets, particularly at the present level of equity valuations.

Today, our portfolio is invested as follows:

| | |
|---|---|
| Bankrupt or Very Distressed Bonds | 70% |
| Risk Arbitrage | 15% |
| Higher Quality High-Yields | 5% |
| Short Stock Positions | 5% |
| Market Hedges | 5% |

CONCLUSION

Oscar Wilde once remarked that the only difference between a saint and a sinner is that every saint has a past and every sinner has a future. We hope we have a portfolio of terrific sinners.

J. Ezra Merkin
January, 1994