Page 1

```
 1   UNITED STATES BANKRUPTCY COURT
 2   SOUTHERN DISTRICT OF NEW YORK
 3
 4   - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
 5   SECURITIES INVESTOR
 6   PROTECTION CORPORATION,
 7              Plaintiff,
 8   v.                               Adv. Case No. 08-01789(SMB)
 9   BERNARD L. MADOFF
10   INVESTMENT SECURITIES,
11   LLC., ET AL.,
12              Defendants.
13   - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
14   IRVING H. PICARD, TRUSTEE
15   FOR THE LIQUIDATION OF
16   BERNARD L. MADOFF
17   INVESTMENT SECURITIES
18   LLC, AND BERNARD L.
19   MADOFF,
20              Plaintiff,
21          v.                        Adv. Case No. 10-04425(SMB)
22   MANUEL JAFFE,
23              Defendant.
24   - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
25
```

Page 2

1        U.S. Bankruptcy Court
2        One Bowling Green
3        New York, New York
4
5        November 18, 2015
6        10:01 AM
7
8
9   B E F O R E :
10  HON STUART M. BERNSTEIN
11  U.S. BANKRUPTCY JUDGE
12
13
14  Hearing re:  08-01789 - Trustee's Motion to Approve
15  Allocation and Sixth Interim Distribution
16
17  Hearing re:  10-04425 - Application of Becker & Poliakoff to
18  withdraw as counsel
19
20
21
22
23
24
25  Transcribed by:  Dawn South

```
 1   A P P E A R A N C E S :
 2   BAKER HOSTETLER
 3        Attorneys for the Trustee
 4        45 Rockefeller Plaza
 5        New York, NY 10111
 6
 7   BY:  SEANNA R. BROWN, ESQ.
 8        NICHOLAS J. CREMONA, ESQ.
 9
10   SIPC
11        Attorney for SIPC
12        1667 K. Street, N.W.
13        Suite 1000
14        Washington, D.C. 20006-1620
15
16   BY:  KEVIN H. BELL, ESQ.
17
18   BAKER & HOSTETLER
19        Attorney for the Trustee
20        811 Main Street
21        Suite 1100
22        Houston, TX 77002-6111
23
24   BY:  FARRELL A. HOCHMUTH, ESQ.
25
```

```
 1   BECKER & POLIAKOFF, LLP
 2        Attorney for the Defendant
 3        45 Broadway
 4        8th Floor
 5        New York, NY 10006
 6
 7   BY:  JULIE GORCHKOVA, ESQ.
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 5

1        P R O C E E D I N G S

2        MS. BROWN:  Good morning, Your Honor.

3        THE COURT:  Good morning.

4        MS. BROWN:  Seanna Brown upon behalf of Irving

5   Picard, Trustee.

6        This the return date of the trustee's motion for a

7   sixth interim allocation and distribution.  It's a very

8   important day in this proceeding as we propose to distribute

9   over a billion dollars, which is the second -- if approved

10  -- would be the second largest distribution in this

11  proceeding.  We received no objections to the trustee's

12  motion.

13       I know Your Honor is familiar with the papers, but

14  if I may briefly just run through some of the events that

15  got us to today's hearing?

16       THE COURT:  Go ahead.

17       MS. BROWN:  As you're aware the trustee maintained

18  a reserve for the time-based damages issue.  Judge Lifland

19  ruled in fall of 2013 that claimants were not entitled to

20  time-based damages, and the Second Circuit affirmed that

21  ruling in February of 2015.

22       In April the trustee filed his motion seeking to

23  release that reserve and distribute those monies to

24  claimants.

25       Following the filing of the trustee's motion

1   certain claimants filed a cert petition with the United

2   States Supreme Court on the Second Circuit's decision, which

3   led the trustee to adjourn this hearing several times.

4           On October 5th, 2015 the Supreme Court denied

5   cert, which paved the way for this hearing to go forward.

6           As we outline in our supplemental filing the

7   trustee seeks to distribute approximately 1.1 -- I'm sorry

8   -- $1.8 billion, which is a distribution percentage of

9   approximately 8.2 percent, and if approved it would bring

10  the total aggregate distributions to almost 57 percent.

11          There are 1,063 accounts that will participate in

12  this distribution, and 101 additional accounts will become

13  fully satisfied if this distribution is approved, which

14  brings the total number of totally fully satisfied accounts

15  to 1,264.

16          Including the SIPC advances and this sixth

17  distribution a total of $9.13 billion will have been

18  distributed to Madoff's victims.

19          It's an important day for the victims and it

20  represents real progress made by the trustee.  We would ask

21  that Your Honor approve the application.

22          THE COURT:  Is there anyone who wants to be heard

23  in connection with the application?

24          MR. BELL:  Yes, Your Honor.  Kevin Bell on behalf

25  of the Securities Investor Protection Corporation.

1          This is a monumental day for those of us who were
2    here 2,335 days ago with regard to since this case has
3    started and the skepticism that people had when the case
4    started that the distribution wouldn't get above five
5    percent.  To be at near 57 percent is a great achievement on
6    behalf of the trustee and Baker and Hostetler and all the
7    other law firms that served the trustee in this purpose.
8          So SIPC would -- you know, together with the SIPC
9    advances, as Ms. Brown has pointed out, we're over
10   $9.13 billion, so that any customer who had a claim that was
11   allowed for $1.1 million has been -- will be fully satisfied
12   upon the entry of an order and the trustee making this
13   distribution.
14         So this is a very significant day in the progress
15   of this case, and on behalf of SIPC, I would ask the Court
16   to enter the order.
17         THE COURT:  Is there anyone else who wants to be
18   heard?  The record should reflect there's no response.
19         I'll grant the application.  It's certainly in the
20   best interest of the creditors of the customers -- creditors
21   and customer estate.  So you can submit an order.
22         MS. BROWN:  Okay.  So thank you, Your Honor.
23         THE COURT:  Thank you.
24         Picard versus Jaffe.  Go ahead.
25         MS. GORCHKOVA:  Good morning, Your Honor, Julie

1   Gorchkova of Becker & Poliakoff, on behalf of the defendant,

2   Manuel Jaffe.  We're here on Becker & Poliakoff's motion to

3   be withdrawn as counsel.

4           Becker & Poliakoff was retained to represent

5   Mr. Jaffe in this adversary proceeding in 2011.  As with

6   many of our other elderly clients the primary contact for

7   Mr. Jaffe was his son, Phil Jaffe.

8           THE COURT:  Where did Mr. Jaffe live?

9           MS. GORCHKOVA:  The address that we have on file

10  is in Florida.

11          In July of 2015 the trustee brought to our

12  attention that they were -- that they found out that

13  Mr. Jaffe was deceased.  This was news to us, we tried to

14  reach out to Mr. Jaffe's son, who's our primary contact.

15          THE COURT:  Did your client -- do you send any

16  bills to your clients in the course of these cases?

17          MS. GORCHKOVA:  Yes.

18          THE COURT:  Did you sent a bill to Mr. Jaffe after

19  he died?

20          MS. GORCHKOVA:  Yes, the bills -- I'm not sure

21  when the last bill was sent, but I do know that the bills

22  were sent and that they were being paid.  And it didn't come

23  to our attention -- we were unable to contact Phil Jaffe

24  until July of 2015, and I tried to contact him again as

25  recent as two days ago, and he still hasn't responded.

1     I understand that the trustee's opposition to our
2  motion, you know, points out certain misstatements that --
3  for instance, it indicates that the trustee's counsel
4  consented.  I apologize, that was some sort of an oversight,
5  that must have carried over from a previous motion.
6  Nonetheless, you know, Mr. Jaffe is deceased and we don't
7  have a client that we can represent.
8           THE COURT:  Okay.  Thank you.
9           MS. GORCHKOVA:  Thank you, Your Honor.
10          MR. HOCHMUTH:  Good morning, Your Honor, Farrell
11 Hochmuth here on behalf of Irving Picard, Trustee.
12          Your Honor, the trustee's objection to the
13 withdrawal motion filed is on several bases.
14          First it is on the basis that the affidavit in
15 support of the motion to withdraw contains several
16 misstatements.
17          First of all, as noted by counsel, the trustee
18 never provided consent.  We had no indication that counsel
19 intended to withdrawal until we reviewed the motion to
20 withdraw.
21          THE COURT:  So what do you want them to file
22 another application?
23          MS. HOCHMUTH:  Your Honor, what we would ask is
24 that counsel not be permitted to withdraw in this case until
25 the proper parties are substituted in this action --

1                THE COURT:  And who does counsel represent?
2                MS. HOCHMUTH:  Counsel as of now represents I
3    would say the estate of Mr. Jaffe.
4                THE COURT:  They don't represent the estate.
5                MS. HOCHMUTH:  I'm sorry, Your Honor?
6                THE COURT:  They don't represent the estate.  The
7    administrator or the executor or executrix would select who
8    represents the estate.
9                MS. HOCHMUTH:  Your Honor, the trustee is in the
10   process of opening an estate as a creditor for Mr. Jaffe in
11   Minnesota.  Mr. Jaffe died in Minnesota.
12               THE COURT:  Is that where -- oh, he died in
13   Minnesota?
14               MS. HOCHMUTH:  He died in Minnesota, he has a
15   Minnesota certificate of death, and he also had property in
16   Minnesota.
17               THE COURT:  So why don't you just do that?  I
18   don't understand who Becker & Poliakoff represents if I
19   don't allow them to withdraw.
20               MS. HOCHMUTH:  Your Honor, we would ask that
21   Becker & Poliakoff assist us in getting the proper party
22   substituted before the court, and at that point the trustee
23   has no objection to them withdrawing.
24               THE COURT:  But what's their duty to do so?  In
25   other words, Mr. Jaffe died.

1                MS. HOCHMUTH:  Yes, Your Honor.

2                THE COURT:  Okay.  And I looked at the rules and I

3    don't see any obligation on the part of the attorney for the

4    deceased client to do anything other than make a statement

5    on the record, which obviously they should have made.  But

6    assuming they didn't know, you know, there's a statement in

7    the September 4th declaration of Ms. Chapman (ph) that

8    Mr. Jaffe is dead, and that starts the 90 days.

9                So why don't you just file a one-page motion to

10   substitute the estate, the motion will be adjourned

11   (indiscernible) and then you can go and substitute the

12   estate?

13               MS. HOCHMUTH:  Your Honor, we can't substitute the

14   estate now because it's not been opened.  Until as you noted

15   the personal representative for the estate is appointed by

16   the court in Minnesota --

17               THE COURT:  Right.  But you can still --

18               MS. HOCHMUTH:  -- we cannot substitute.

19               THE COURT:  Look, you have a 90-day window --

20               MS. HOCHMUTH:  Your Honor --

21               THE COURT:  Let me just finish.  If I treat

22   Ms. Chapman's September 4th declaration as the statement of

23   death under Rule 25 you have 90 days from September 4th, you

24   still have time, to file a motion to substitute.  I don't

25   understand why you can't file a motion to substitute now.  I

1   understand there may not be an estate yet or an estate
2   that's probated or a personal representative who's
3   appointed, but you've done all you can do under the rules.
4   And very often those kind of motions are extended until a
5   personal representative is appointed.  That's all.
6           MS. HOCHMUTH:  Your Honor we have in cases where
7   the estate has not been opened agreed with counsel to extend
8   the 90-day deadline.  Here I don't believe that the 90-day
9   deadline has begun to run, because until they provide us
10  with the name of the personal representative that we can
11  substitute --
12          THE COURT:  That's not what the rule says.  Look,
13  if you don't think it started to run, as I understand the
14  rule you could proceed and just get a judgment against
15  Mr. Jaffe and we'd probably bind this estate if no statement
16  is filed, if you don't believe that's in the statement.  If
17  that is the statement then you don't have to do anything,
18  just proceed and litigate the case.
19          MS. HOCHMUTH:  When the estate is -- would Your
20  Honor entertain a motion to substitute that when the estate
21  is opened at that point --
22          THE COURT:  Why don't you just make a motion.  I
23  don't think the opening of the estate is necessarily the
24  triggering event, I could be wrong, I think you just make a
25  motion to substitute under the rule.  Isn't that all you

1   have to do?
2           MS. HOCHMUTH:  Typically, Your Honor, we would
3   want the estate to be open and be a valid legal entity to
4   substitute.
5           THE COURT:  What happens if the estate is not open
6   in your words within the 90 days?
7           MS. HOCHMUTH:  Your Honor, in the past with
8   counsel we have stipulated to extend a 90-day deadline if an
9   estate is not open, because oftentimes it does take longer
10  than 90 days to get an estate open.  But here if counsel is
11  permitted to withdraw we don't have the ability to extend
12  that deadline.
13          THE COURT:  What's counsel's authority to
14  stipulate on behalf of an estate that you're telling me
15  hasn't even been formed?
16          MS. HOCHMUTH:  I think that they would be
17  stipulating on behalf of their client until that estate is
18  formed and substituted in the action.
19          THE COURT:  Their client is dead, they can't
20  stipulate on behalf of their client.
21          I think that there's a distinction between the
22  estate being created and a personal representative being
23  appointed or some application being made to the appropriate
24  probate court.  There's an estate.  Isn't that the successor
25  as a matter of law to the decedent?

1             MS. HOCHMUTH:  Not necessarily, Your Honor.  If
2    the decedent does not have assets that require a probate
3    estate then there are times when a probate estate is not
4    open.  In that case the proper party under the federal rules
5    is the beneficiary -- primary beneficiary of the deceased
6    person's assets.
7             THE COURT:  So why don't you join his son as a
8    defendant?
9             MS. HOCHMUTH:  At this point, Your Honor, we
10   aren't aware if the son or -- there is also a surviving
11   spouse, is the primary beneficiary.
12            THE COURT:  Well the problem is I don't -- I mean
13   they don't want to stipulate, I'm telling you I'm not sure
14   they can stipulate, that's a separate issue.  If you don't
15   think that what Ms. Chapman filed was a statement of death
16   then I guess you can proceed with the action.
17            I think the simplest thing is for you to file a
18   statement of death and make clear that the 90 days start to
19   run.  Because if it's not a statement of death and they're
20   right you're still in the case and you have to represent a
21   client as strange as that may sound because they can proceed
22   against the client until a statement of death is filed.
23            So file a statement of death, that'll start your
24   90 days.  I'll adjourn the motion.  I'll adjourn it to some
25   time before the 90th day, which is around December 4th I

1  guess.  So, I'll adjourn it for a week.  File the statement
2  of death, and you know, that's it.
3         I just don't know of any authority to compel them
4  to continue to represent someone who's dead simply because
5  you can't -- you know, there's no estate.
6         MS. HOCHMUTH:  We have several cases, Your Honor,
7  where decedent -- where defendants have died and their
8  attorneys have worked with us to get the proper party
9  substituted.
10        THE COURT:  I understand that, but are you
11 prepared to -- what are you -- have you given them all the
12 information you have?
13        MS. GORCHKOVA:  I'm sorry, Your Honor, that's
14 exactly just the one point that I wanted to make was that
15 it's not that we're not cooperating, and as you know in the
16 past in other cases where our clients have died we have
17 cooperated with the (indiscernible).  And to the extent we
18 have information we provided it.
19        But we've asked Mr. Jaffe's son for that
20 information, he hasn't responded.  I can't provide you with
21 information that I don't have.
22        THE COURT:  Why don't you take a deposition of
23 Mr. Jaffe's son?
24        MS. HOCHMUTH:  We may need to do that, Your Honor.
25        THE COURT:  He's probably the one who knows --

1    who's in the best position to know if there were

2    beneficiaries or, you know, whether he's got siblings, I

3    don't know.

4               MS. HOCHMUTH:  I suspect when -- there's a hearing

5    currently scheduled on December 14th in the Minnesota

6    probate court, I suspect we will hear from Mr. Jaffe before

7    that hearing.  Hopefully at that hearing either Mr. Jaffe or

8    another independent personal representative will be

9    appointed.  We will have an estate at that time that we can

10   then move to substitute.

11              THE COURT:  And you think I can extend the 90 days

12   without anybody's consent?

13              MS. HOCHMUTH:  Your Honor, we have typically done

14   this with counsel as a stipulation to extend the 90-day

15   deadline.

16              THE COURT:  I understand that.

17              MS. HOCHMUTH:  But yes, Your Honor, I believe you

18   have the authority to extend the deadline to allow a probate

19   estate to be open that could be substituted in.

20              THE COURT:  Look, I'll adjourn this until

21   December 1, but file your statement of death on the record

22   so there's no question, and then you can figure out what to

23   do, but I just don't know how I can keep them in the case if

24   their client is dead and they don't represent the estate.

25   All right.

```
 1              MS. HOCHMUTH:  Thank you, Your Honor.
 2              THE COURT:  Okay.  And if you want to write me a
 3   letter before that explaining that I have authority to
 4   extend the 90 days I'm happy to read it, without their
 5   consent obviously.
 6              MS. HOCHMUTH:  Thank you, Your Honor.
 7              THE COURT:  All right?
 8       (Whereupon these proceedings were concluded at 10:15
 9   AM)
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

|   |   |
|---|---|
| 1 | **I N D E X** |
| 2 |   |
| 3 | **RULINGS** |
| 4 | **PAGE** |
| 5 | **Trustee's Motion to Approve Allocation and Sixth** |
| 6 | **Interim Distribution**                                            **7** |

Page 19

```
1              C E R T I F I C A T I O N
2
3    I, Dawn South, certify that the foregoing transcript is a
4    true and accurate record of the proceedings.
5    Dawn South    Digitally signed by Dawn South
                   DN: cn=Dawn South, o, ou,
                   email=digital1@veritext.com, c=US
                   Date: 2015.11.19 15:46:00 -05'00'
6    _____
7    Dawn South
8    AAERT Certified Electronic Transcriber CET**D-408
9
10
11
12   Date:   November 18, 2015
13
14
15
16
17
18
19
20
21
22   Veritext Legal Solutions
23   330 Old Country Road
24   Suite 300
25   Mineola, NY 11501
```