**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Jorian L. Rose
Amy E. Vanderwal
George Klidonas
Stephanie A. Ackerman

*Attorneys for Irving H. Picard, Trustee*
*for the Substantively Consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities LLC*
*and the Estate of Bernard L. Madoff*

Hearing Date: January 27, 2016
Hearing Time: 10:00 a.m. (EST)
Objections Due: January 5, 2016
Objection Time: 4:00 p.m. (EST)

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>             Plaintiff-Applicant,<br>  v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>             Defendant.<br>In re:<br><br>BERNARD L. MADOFF,<br><br>             Debtor. | Adv. Pro. No. 08-01789 (SMB)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |

**TRUSTEE'S SEVENTH OMNIBUS MOTION TO DISALLOW CLAIMS AND OVERRULE OBJECTIONS OF CLAIMANTS WHO HAVE NO NET EQUITY**

Irving H. Picard, trustee ("Trustee") for the substantively consolidated liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") and the estate of Bernard L. Madoff ("Madoff") (collectively, "Debtor"), by this combined motion and memorandum of law (the "Motion"), asks this Court to affirm his denial of certain customer claims ("Claims") and

1

overrule the related eighty-nine (8) objections ("Objections"). The Claims were filed by customers that either withdrew more than they deposited and are thus, in the parlance of this case, net winners, or that withdrew an equal amount to what was deposited or, in the parlance of this case, net zeros (the "Claimants"). The Claims and the Objections at issue in this Motion are listed on Exhibit A to Vineet Sehgal's Declaration in support of the Motion, in alphabetical order. Exhibit B to Vineet Sehgal's Declaration in support of this Motion lists the Claims and the related Objections by BLMIS account number, in alphanumeric order.

## PRELIMINARY STATEMENT

The Trustee, with the assistance of his professionals, has reviewed the Objections and submits that the Objections should be denied. Specifically, the Objections dispute the Trustee's methodology for calculating claims and assert that: (i) the Trustee's determination of net equity based on cash in/cash out (the "Net Investment Method") was improper; (ii) adjustments to net equity should be made to account for the length of time customers were invested with BLMIS (the "Time-Based Damages Adjustment") (the Net Investment Method and the Time-Based Damages Adjustment are collectively referred to as the "Net Equity Arguments"); and/or (iii) adjustments to net equity should be made to account for the Claimants' payments in compliance with the Internal Revenue Code (the "Tax-Based Adjustments"), described in greater detail below.

The courts have agreed with the Trustee's determination relating to the Net Investment Method[1] and the Time-Based Damages Adjustment,[2] and the United States Supreme Court has

---

[1] *In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d 229 (2d Cir. 2011).
[2] *In re Bernard L. Madoff Inv. Sec. LLC*, 779 F.3d 74 (2d Cir. 2015).

2

declined to address these issues.[3] Thus, the Net Equity Arguments have been finally decided and Claimants are not entitled to any adjustment to their net equity claim on these grounds. Moreover, the Court has rejected any Tax-Based Adjustments in other decisions and concluded that withdrawals of funds from BLMIS for tax purposes still qualify as withdrawals under the Net Investment Method. The Trustee has included within the scope of the Seventh Omnibus Motion, Objections that raise challenges to the Net Investment Method, Time-Based Damages Adjustment, and/or Tax-Based Adjustments and has excluded objections that raise: (i) the Trustee's calculation of inter-account transfers; (ii) profit withdrawal transactions; and (iii) fact-specific arguments relating to a customer.

## JURISDICTION

This Court has jurisdiction to consider this matter pursuant to §§ 78eee(b)(2) and 78eee(b)(4) of the Securities Investor Protection Act, 15 U.S.C. § 78aaa et seq., ("SIPA"),[4] and 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## BACKGROUND

The basic facts of the BLMIS fraud are widely known and have been recounted in numerous decisions. *See, e.g., In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d 229, 231 (2d Cir. 2011); *In re Beacon Assocs. Litig.*, 745 F. Supp. 2d 386, 393–94 (S.D.N.Y. 2010). On December 11, 2008, the Securities and Exchange Commission ("SEC") filed a complaint in the District Court against Madoff and BLMIS, captioned *SEC v. Madoff*, No. 1:08-cv-10791-LLS, 2008 WL 5197070 (S.D.N.Y. filed Dec. 11, 2008), alleging fraud through the investment advisor

---

[3] The Supreme Court denied claimants' petitions for writ of *certiorari*. *Velvel v. Picard*, 133 S. Ct. 25 (2012) (affirming net investment method); *Ryan v. Picard*, 133 S. Ct. 24 (2012) (same); *Peshkin v. Picard*, 136 S. Ct. 218 (U.S. Oct. 5, 2015) (rejecting adjustments for time-based damages).
[4] Subsequent references to SIPA shall omit "15 U.S.C."

activities of BLMIS. The SEC consented to the consolidation of its case with an application of the Securities Investor Protection Corporation ("SIPC"). Thereafter, SIPC filed an application under SIPA § 78eee(a)(4) alleging that because of its insolvency, BLMIS needed SIPA protection. The District Court appointed the Trustee under SIPA § 78eee(b)(3) and removed the proceeding to this Court under SIPA § 78eee(b)(4).

Under SIPA, the Trustee is responsible, among other things, for recovering and distributing customer property to a broker's customers, assessing claims, and liquidating other assets of the firm for the benefit of the estate and its creditors. A SIPA trustee has the general powers of a bankruptcy trustee, in addition to the powers granted by SIPA. SIPA § 78fff-1(a). The statutory framework for the satisfaction of customer claims in a SIPA liquidation proceeding provides that "customers," as defined in SIPA § 78*lll*(2), share pro rata in "customer property," defined in SIPA § 78*lll*(4), to the extent of their "net equity," defined in SIPA § 78*lll*(11).

For each customer with a valid net equity claim, if the customer's share of customer property does not make her whole, SIPC advances funds to the SIPA trustee up to the amount of the customer's net equity, not to exceed $500,000 (the amount applicable to this case). SIPA § 78fff-3(a). It is the customer's burden to demonstrate he or she is entitled to customer status. *Mishkin v. Siclari (In re Adler, Coleman Clearing Corp.)*, 277 B.R. 520, 557 (Bankr. S.D.N.Y. 2002) ("[I]t is well-established in the Second Circuit that a claimant bears the burden of proving that he or she is a 'customer' under SIPA.").

On December 23, 2008, this Court entered a Claims Procedures Order. See ECF No. 12. Pursuant to that order, the Trustee determines claims eligible for customer protection under SIPA, claimants may object to the Trustee's determination of a claim by filing an objection in this Court, and the Trustee requests a hearing date for the objection and notifies the objecting

4

claimant thereof. *Id.*

## NET EQUITY DECISION

Pursuant to section 78*lll*(11) of SIPA, "the term "net equity" means the"

> dollar amount of the account or accounts of a customer, to be determined by – (A) calculating the sum which would have been owed by the debtor to such customer if the debtor had liquidated, by sale or purchase on the filing date, all securities positions of such customer (other than customer name securities reclaimed by such customer); minus (B) any indebtedness of such customer to the debtor on the filing date.

Furthermore, section 78fff-2(b) of SIPA provides that the Trustee should make payments to customers based on "net equity" insofar as the amount owed to the customer is "ascertainable from the books and records of the debtor or [is] otherwise established to the satisfaction of the trustee."

On this basis, the Trustee determined that net equity claims should be calculated based upon the monies that customers deposited into their BLMIS accounts, minus any amounts they withdrew from their BLMIS accounts (the "Net Investment Method"). Some claimants argued that the Trustee was required to calculate net equity using the amounts shown on the November 30, 2008 customer statements (the "Last Customer Statement Method").

The Last Customer Statement Method was rejected and the Trustee's use of the Net Investment Method was upheld by this Court. *In re Bernard L. Madoff Inv. Sec. LLC*, 424 B.R. 122, 134-35 (Bankr. S.D.N.Y. 2010) *aff'd*, 654 F.3d 229 (2d Cir. 2011). The Bankruptcy Court certified an immediate appeal of its decision pursuant to 28 U.S.C. § 158(d)(2), which the United States Court of Appeals for the Second Circuit granted. *In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d 229, 234 (2d Cir. 2011). The Bankruptcy Court's decision was affirmed by the United States Court of Appeals for the Second Circuit. *Id.* at 235-36. On June 25, 2012, the United

5

States Supreme Court denied certiorari, and thus a final order has issued upholding the Trustee's use of the Net Investment Method. *Velvel v. Picard*, 133 S. Ct. 25 (2012); *Ryan v. Picard*, 133 S. Ct. 24 (2012).

### **TIME-BASED DAMAGES DECISION**

Certain Claimants also filed Objections seeking to adjust the Trustee's net equity calculation to allow credit for Time-Based Damages. To address these Objections, following the United States Supreme Court decision denying *certiorari* on the Net Investment Method, the Trustee filed a motion seeking to affirm his determination that Time-Based Damages are inconsistent with SIPA and cannot be awarded. (ECF No. 5038) In response, claimants raised numerous theories, all of which sought some increase in their customer claims based upon the amount of time they invested with BLMIS. Most commonly, they sought an increase in their claims based on the time they were invested with BLMIS using the New York prejudgment rate of 9% per annum, lost opportunity cost damages, or the consumer price index to take inflation into account.[5]

The Bankruptcy Court upheld the Trustee's determination that no adjustment for Time-Based Damages Adjustment could be made under SIPA and ruled that, as a matter of law, SIPA did not permit Time-Based Damages to net equity. *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 496 B.R. 744, 754 (Bankr. S.D.N.Y. 2013).

The Bankruptcy Court certified an immediate appeal of its decision pursuant to 28 U.S.C. § 158(d)(2), which the Second Circuit granted. *In re Bernard L. Madoff Inv. Sec. LLC*, 779 F.3d at 78-79. The Second Circuit affirmed the Bankruptcy Court's decision, holding that SIPA did

---

[5] The Trustee is using "Time-Based Damages" as an umbrella term to describe all of these grounds.

not permit Time-Based Damages Adjustment to "net equity" claims for customer property and that such an adjustment would have gone beyond scope of SIPA's intended protections and was inconsistent with SIPA's statutory framework. *Id.*

On October 5, 2015, the United States Supreme Court denied certiorari, and thus a final order has been issued, upholding the Trustee's approach with respect to Time-Based Damages. *Peshkin v. Picard*, 136 S. Ct. 218 (2015).

## **TAX-BASED ADJUSTMENTS**

Certain Claimants have filed Objections seeking to adjust the Trustee's net equity calculation to allow for Tax-Based Adjustments. Specifically, Claimants argue that the Trustee should credit them for required payments they made to the Internal Revenue Service under the Internal Revenue Code or mandatory withdrawals they received in connection with their Individual Retirement Accounts. Objections were filed on behalf of several Claimants by Lax & Neville, LLP, arguing that the Trustee's position conflicts with the Internal Revenue Code:

> (a) Rev. Proc. 2009-20, issued by Commissioner Shulman on March 17, 2009, expressly recognizes the income earned by customers, on which they paid taxes annually. Yet, the Trustee has taken the position that the income earned by customers is not their money. (b) Rev. Proc. 2009-20 provides for a five-year carry-back of the theft loss. Yet, the Trustee has indicated that he intends to "claw back" income withdrawn by customers over the last six years. (c) Customers were required by law to take mandatory withdrawals from IRA accounts. Yet, the Trustee is deducting from SIPC insurance the mandatory withdrawals that customers took and paid taxes on.

*See, e.g.,* ECF No. 714. In addition, a number of Claimants argue that they should receive "credit" for income taxes paid on BLMIS distributions. *See, e.g.,* ECF No. 2014, at 10.

The Trustee has not provided Claimants with "credit" for payments of taxes to the Internal Revenue Service in connection with withdrawals made from their BLMIS accounts, nor

7

has the Trustee provided Claimants with "credit" for mandatory withdrawals arising from their Individual Retirement Accounts. Allowing for the Claimants' purported Tax-Based Adjustment would be inconsistent with SIPA as well as the net equity and time-based damages decisions.

The Claimants' arguments cannot succeed because they are inconsistent with the Net Equity Decision and other decisions in these proceedings. *First*, there is no authority giving the Claimants "credit" for any taxes paid on income earned from BLMIS withdrawals. *Second*, the Trustee's ability to "claw back" transfers does not affect the net equity analysis, especially where Claimants subject to this Motion are not the subject of an avoidance action by the Trustee. *Third*, there is no authority indicating that mandatory withdrawals from Individual Retirement Accounts or payment of income taxes should impact the Trustee's net equity analysis. To the contrary, case law on these three points supports the Trustee's position.

In fact, claims for Tax-Based Adjustments like those identified in the Objections have been considered and rejected in these proceedings. In the context of the inter-account transfer decision, this Court addressed the Tax-Based Adjustment issue. Specifically, this Court explained that although one of the inter-account transfer claimants argued that payment of taxes on account of the "gains" realized in her BLMIS account should be credited, "payment of taxes does not factor into the computation of fictitious profits." *Sec. Inv'r Protec. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 522 B.R. 41, 54 n.9 (Bankr. S.D.N.Y. 2014) (citing *Donell v. Kowell*, 533 F.3d 762, 778–79 (9th Cir.), *cert. denied*, 555 U.S. 1047, 129 S.Ct. 640, 172 L.Ed.2d 612 (2008)). And although arising in the context of a fraudulent transfer action, the *Donnell v. Kowell*, the Ninth Circuit further explained that if the court allowed for a value defense arising from tax payments, there would be unintended consequences: (i) other expenses besides tax payments would have to be credited; (ii) there would be complex problems of proof and tracing;

8

and (iii) equity does not permit an offset where a third party, the Internal Revenue Service, receives a benefit without any recourse to the other investors. 533 F.3d at 779.

Similarly, this Court has addressed the issue of whether the Trustee can avoid transfers made by BLMIS to defendants resulting from mandatory withdrawals in connection with their Individual Retirement Accounts as required by the Internal Revenue Code. *Sec. Inv'r Protec. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 476 B.R. 715, 729 (S.D.N.Y. 2012), supplemented (May 15, 2012), *aff'd sub nom. In re Bernard L. Madoff Inv. Sec. LLC*, 773 F.3d 411 (2d Cir. 2014). The Court held that although defendants were required to receive payments from BLMIS as a result of the rules imposed by the Internal Revenue Code for Individual Retirement Accounts, the Trustee was still allowed to avoid the transfers because the benefit inured to the recipient and not value was given to BLMIS. *Id.* Similar to the argument that Claimants are not credited for withdrawals used to pay taxes, claimants should not receive credit for mandatory withdrawals for Individual Retirement Accounts. *See Sec. Inv'r Protec. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 499 B.R. 416, 424 (S.D.N.Y. 2013) ("More fundamentally, the definition of net equity and the definition of claims that can provide 'value' to the customer property estate are inherently intertwined where the customer property estate is created as a priority estate intended to compensate customers only for their net-equity claims.").

## RELIEF REQUESTED

By this Motion, the Trustee seeks to have the Court affirm the Trustee's determination of the Claims in accordance with the Net Investment Method and without a Time-Based Damages Adjustment or Tax-Based Adjustment. Claimants are identified on Exhibit A (by Objection party name) and Exhibit B (by BLMIS account number) to the Sehgal Declaration under the heading "*Claims and Objections to be Finally Determined and Overruled*" (collectively, the

9

"Claims and Objections").

Upon review of the accounts underlying the Claims, the Trustee allowed the Claimants' claims up to the value of their net equity, in accordance with the Net Investment Method and without a Time-Based Damages Adjustment or Tax-Based Adjustment, under SIPA § 78*lll*(11). The Trustee, with the assistance of his professionals, reviewed each of the Objections to determine the basis for disputing the Trustee's determination. Each Objection challenged the Net Investment Method or sought a Time-Based Damages Adjustment or a Tax-Based Adjustment. Because these issues have been determined, there is no remaining basis on which to object. The Trustee's calculation of the Claims should be affirmed and the Objections should be overruled.

## NOTICE

Notice of this motion has been provided by U.S. mail, postage prepaid, or email to (i) all Claimants listed on Exhibit A to the Sehgal Declaration attached hereto (and their counsel) whose objections are pending before this Court; (ii) all parties included in the Master Service List as defined in the Order Establishing Notice Procedures (ECF No. 4560); (iii) all parties that have filed a notice of appearance in this case; (iv) the SEC; (v) the IRS; (vi) the United States Attorney for the Southern District of New York; and (vii) SIPC, pursuant to the Order Establishing Notice Procedures (ECF No. 4560). The Trustee submits that no other or further notice is required. In addition, the Trustee's pleadings filed in accordance with the schedule outlined above will be posted to the Trustee's website www.madofftrustee.com and are accessible, without charge, from that site.

No previous request for the relief sought herein has been made by the Trustee to this or any other Court.

## **CONCLUSION**

**WHEREFORE** the Trustee respectfully requests entry of an order granting the relief requested herein and such other and further relief as is just.

Dated: New York, New York  
      December 11, 2015

Respectfully submitted,

*/s/ David J. Sheehan*  
David J. Sheehan  
Email: dsheehan@bakerlaw.com  
Jorian L. Rose  
Email: jrose@bakerlaw.com  
Amy E. Vanderwal  
Email : avanderwal@bakerlaw.com  
George Klidonas  
Email : gklidonas@bakerlaw.com  
Stephanie A. Ackerman  
Email: sackerman@bakerlaw.com  
**Baker & Hostetler LLP**  
45 Rockefeller Plaza  
New York, New York  10111  
Tel: (212) 589-4200  
Fax: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Estate of Bernard L. Madoff*