# EXHIBIT C

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

Case No: _____

PAMELA GOLDMAN and
A & G GOLDMAN PARTNERSHIP, individually
and on behalf of a class of similarly situated Plaintiffs,

vs.

CAPITAL GROWTH COMPANY;
DECISIONS, INC.;
FAVORITE FUNDS;
JA PRIMARY LIMITED PARTNERSHIP;
JA SPECIAL LIMITED PARTNERSHIP;
JAB PARTNERSHIP;
JEMW PARTNERSHIP;
JF PARTNERSHIP;
JFM INVESTMENT COMPANIES;
JLN PARTNERSHIP;
JMP LIMITED PARTNERSHIP;
JEFFRY M. PICOWER SPECIAL COMPANY;
JEFFRY M. PICOWER, P.C.;
THE PICOWER FOUNDATION; JOHN DOE TRUSTEES
OF THE PICOWER FOUNDATION;
THE PICOWER INSTITUTE OF MEDICAL RESEARCH;
THE TRUST F/B/O GABRIELLE H. PICOWER;
BARBARA PICOWER, individually, and as
Executor of the Estate of Jeffry M. Picower,
and as Trustee for the Picower Foundation
and for the Trust f/b/o Gabriel H. Picower.
_____/

**COMPLAINT-CLASS ACTION**

**Jury Trial Demanded**

      Plaintiffs, Pamela Goldman and A&G Goldman Partnership, through their undersigned

attorneys, on their own behalf and on behalf of a similarly situated class of plaintiffs

(collectively, "Plaintiffs"), hereby sue Defendants and allege the following based upon the

investigation by Plaintiffs' counsel, including a review of documents in the bankruptcy

proceeding concerning Bernard L. Madoff Investment Securities, LLC ("BLMIS"); documents in

the Securities Exchange Commission ("SEC") and criminal proceedings against Bernard L.

**EXHIBIT A**

Madoff ("Madoff"); and documents in the United States of America's (the "Government") civil forfeiture action (the "Civil Forfeiture Action") against Jeffry M. Picower ("Picower").

## INTRODUCTION AND SUMMARY OF CLAIMS

1.      For decades, Madoff and BLMIS engaged in one of the largest Ponzi schemes in history.  BLMIS was a broker-dealer ostensibly engaged in the business of buying and selling securities and custodying customer securities and cash balances.  In the course of the scheme, BLMIS sent monthly statements to its nearly 7,000 customers reflecting phony investments and phony profits.  Each such statement was a material misrepresentation since each misrepresented to customers, including Plaintiffs, that securities had been purchased and cash proceeds credited when there were no such purchases or cash credited.

2.      Madoff and BLMIS, however, did not act alone.  Picower knew that BLMIS was operating a fraud, and directly or indirectly controlled BLMIS for his own benefit.  Picower directly or indirectly caused BLMIS employees to book profitable fabricated securities transactions in accounts which he directly or indirectly owned that in fact never occurred. Picower knew that these false transactions (1) directly resulted in additional material misrepresentations to other BLMIS investors as to their account values and profits, and (2) required defalcation of funds from other BLMIS investors to pay Picower and his affiliates.

3.      Picower's control of BLMIS, combined with Picower's knowledge that other BLMIS customers would be defrauded as a result of the transactions that he directed, amounted to Picower making direct misrepresentations to those customers.  Picower's control of BLMIS was to the detriment of Plaintiffs, who were materially and intentionally deceived as to the true state of BLMIS's financial condition and the condition and value of Plaintiffs' accounts, as a

result of, and in reliance upon, false financial information created directly or indirectly by Picower.

4.      The Ponzi scheme could only succeed if investors did not know it existed.  The misrepresentations that Picower knowingly and intentionally caused to be made were calculated to give the appearance that BLMIS was a legitimate and profitable business, and that BLMIS customers were making steady profits in their accounts.  The misrepresentations ensured that the Ponzi scheme would continue, and that Picower would continue to reap the benefits from the scheme.   In short, Picower, through his direct or indirect control of BLMIS, was able to fraudulently induce Plaintiffs to invest and/or remain invested in BLMIS by the creation and dissemination of materially false information concerning Plaintiffs' accounts.

5.      In or about December 2008, the BLMIS Ponzi scheme collapsed when customer redemptions in the BLMIS Discretionary Trading Program overwhelmed the amount of money which was being placed in new BLMIS accounts. When the scheme collapsed, the recorded assets in the account statements of the *bona fide* investors totaled approximately $65 billion. However, there were virtually no funds available at BLMIS.  There were no securities, because all of the ostensible purchases of securities that had occurred during the life of the Ponzi scheme were fictitious.

6.      The net amount of investor cash that was defalcated in the Ponzi scheme was approximately $18 billion.  Of that amount, approximately 40%, or $7.2 billion, went into and remained in the pockets of Picower and his affiliates.  Approximately $800 million was stolen by Madoff and his affiliates and used for their own personal benefit.  Given Picower's knowledge of BLMIS's underlying fraud, the fact that Picower reaped most of the benefits of the Ponzi scheme is evidence that he was able to directly and indirectly exert control over BLMIS.

3

7.      On December 11, 2008, Madoff was arrested by federal agents and charged with criminal violation of the federal securities laws, including securities fraud, investment advisor fraud, and mail and wire fraud. On the same day, the SEC filed a complaint in the United States District Court for the Southern District of New York against Madoff and BLMIS, also alleging that Madoff and BLMIS had engaged in securities fraud.

8.      On December 15, 2008, the District Court appointed Irving H. Picard, Esq., as trustee ("Trustee") for the substantively consolidated liquidation of Madoff's estate and of BLMIS under the Securities and Investor Protection Action ("SIPA"). On March 10, 2009, the federal government filed an eleven count criminal information against Madoff in the case styled *United States v. Madoff*, 09-CR-213 (S.D.N.Y.). Two days later, Madoff plead guilty to all eleven counts, including Count I for securities fraud under § 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

9.      Picower and Madoff were the masterminds of this fraudulent scheme. They were partners in crime. Madoff was convicted of securities fraud; Picower avoided a similar fate by his death shortly after the collapse of the scheme.

10.     On May 12, 2009, the Trustee brought fraudulent conveyance claims against Picower and Defendant Barbara Picower, both individually and as representatives of various Picower BLMIS accounts ("Conveyance Defendants"). The Trustee settled with the Conveyance Defendants on December 17, 2010, and recovered the entire net amount that the Conveyance Defendants had withdrawn from BLMIS. The Trustee's claims were based entirely on the fraudulent transfer of funds from BLMIS to the Conveyance Defendants. The Trustee did not, and could not, assert claims against Conveyance Defendants for securities violations which caused damages to BLMIS investors.

11.     There is no basis in law or fact to contend that by agreeing to return to the Trustee the amount of the fraudulent transfers that they received, that Conveyance Defendants immunized themselves from damage claims of securities fraud by defrauded investors.

12.     This action only alleges control person liability against Defendants under Section 20(a).   As alleged in more detail herein, Picower controlled BLMIS for his own benefit to perpetuate the Ponzi scheme through misrepresentations he caused to be made to BLMIS investors and regulators. Picower also caused and controlled the concealment of the BLMIS Ponzi Scheme, thereby causing damages to purchasers and prospective purchasers of BLMIS securities.

13.     Unlike the Trustee's fraudulent conveyance claims, which did not require (and were resolved without) a finding that Picower and his affiliates had the ability to directly or indirectly control BLMIS, Plaintiffs allege here that Picower was a control person of BLMIS. Moreover, Plaintiffs are seeking damages for their actual losses due to the underlying securities fraud, which are distinct from the repayment of funds to the Trustee that Picower caused to be improperly withdrawn from BLMIS.

14.     For the reasons set forth above and in further detail herein, Picower directly or indirectly controlled BLMIS, and directly or indirectly induced and caused the acts and omissions constituting BLMIS's securities law violations.  Picower did not act in good faith. Defendants are responsible and liable for the actions and omissions of BLMIS.  Defendants are jointly and severally liable with BLMIS for the securities-based damages suffered by purchasers of BLMIS securities under Section 20(a) of the Exchange Act, 15 U.S.C. § 78t ("Section 20(a)"), which provides that:

> Every person who, directly or indirectly, controls any person liable under any provision of this title or of any rule or regulation thereunder shall also be liable

5

jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable . . . unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constitution the violation or cause of action.

## JURISDICTION AND VENUE

15.     The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b), 78t(a), and under Rule 10b-5 promulgated thereunder by the Securities and Exchange Commission ("SEC"), 17 C.F.R. §240.10b-5.

16.     This court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1337, and under § 27 of the Exchange Act, 15 U.S.C. §78aa.  At all relevant times the principal place of business of the Defendants was Palm Beach, Florida.  Substantial acts, if not all of the acts, committed in the furtherance of the control relationship occurred in the state of Florida.

17.     Venue is proper in this district pursuant to § 27 of the Exchange Act, 15 U.S.C. §78aa, 28 U.S.C. §1391(b), because the Defendants reside or are headquartered in this judicial district, and the acts and transactions alleged herein occurred in substantial part in this judicial district.

18.     In connection with the wrongs alleged herein, Defendants used the instrumentalities of interstate commerce, including the United States mails, interstate wire and telephone facilities, and the facilities of national securities markets.

## THE PARTIES

19.     Plaintiff Pamela Goldman is a resident of the State of New York.  Plaintiff brings this class action on behalf of herself and a putative class of persons similarly situated for damages and other relief arising from the Defendants' wrongful conduct described herein.

20.     Plaintiff A & G Goldman Partnership is a New York partnership with its principal place of business in the State of New York.  Plaintiff brings this class action on behalf of itself and a putative class of persons similarly situated for damages and other relief arising from the Defendants' wrongful conduct described herein.

21.      Picower was a resident of Palm Beach, Florida, and Fairfield, Connecticut, prior to and at the time of his death on October 25, 2009.  Picower held an individual BLMIS account in the name of "Jeffry M. Picower," with an account address of 1410 South Ocean Boulevard, Palm Beach, Florida.  Picower was Chairman of the Board of Defendant Decisions Incorporated.

22.     Defendant Barbara Picower is the Executor of the Estate of Jeffry M. Picower, which is being probated in the State of New York.

23.     Defendant Barbara Picower is a person residing at 1410 South Ocean Boulevard, Palm Beach, Florida 33480.  Barbara Picower is Picower's surviving spouse.  Barbara Picower holds an individual account at BLMIS in the name "Barbara Picower," with the account address of 1410 South Ocean Boulevard, Palm Beach, Florida 33480, and Barbara Picower is trustee for Defendant Trust f/b/o Gabrielle H. Picower, an officer and/or director of Defendant Decisions Incorporated, and trustee and Executive Director of the Picower Foundation.

24.     Defendant Decisions Incorporated is a corporation organized under the laws of Delaware with a principal place of business at 950 Third Avenue, New York, New York 10022 and an alternate mailing address on its BLMIS account listed as 22 Saw Mill River Road, Hawthorne, New York, 10532.  The Decisions Incorporated office in Hawthorne was merely a store-front office through which little or no business was conducted, and Decisions Incorporated is a general partner of Defendants Capital Growth Company, JA Primary Limited Partnership,

7

JA Special Limited Partnership, JAB Partnership, JEMW Partnership, JF Partnership, JLN Partnership, JMP Limited Partnership and Jeffry M. Picower Special Co.

25.     Defendant Capital Growth Company purports to be a limited partnership with a mailing address for its BLMIS account listed at 22 Saw Mill River Road, Hawthorne, New York, 10532, care of Decisions Incorporated. Defendant Decisions Incorporated and/or Picower serve/served as General Partner or Director of Capital Growth Company, and Decisions Incorporated and Picower transact/transacted business through this entity.

26.     Defendant JA Primary Limited Partnership is a limited partnership organized under the laws of Delaware with a principal place of business at 25 Virginia Lane, Thornwood, New York 10594. Defendant Decisions Incorporated and/or Picower serves/served as General Partner or Director of JA Primary Partnership, and Decisions Incorporated, and/or Picower transact/transacted business through this entity.

27.     Defendant JA Special Limited Partnership is a limited partnership organized under the laws of Delaware with a principal place of business at 25 Virginia Lane, Thornwood, New York, New York 10594.  Defendant Decisions Incorporated and/or Picower serve/served as General Partner or Director of JA Special Limited Partnership, and Decisions Incorporated, and/or Picower transact/transacted business through this Defendant entity.

28.     Defendant JAB Partnership purports to be a limited partnership with a listed mailing address care of Decisions Incorporated at 22 Saw Mill River Road, Hawthorne, New York, 10532. Upon information and belief, Defendant Decisions Incorporated and/or Picower serve/served as General Partner or Director of JAB Partnership, and Decisions Incorporated, and/or Picower transact/transacted business through this Defendant entity.

29.     Defendant JEMW Partnership purports to be a limited partnership with a listed mailing address care of Decisions Incorporated at 22 Saw Mill River Road, Hawthorne, New York, 10532; and Defendant Decisions Incorporated and/or Picower serve/served as General Partner or Director of JEMW Partnership, and Decisions Incorporated, and/or Picower transact/transacted business through this Defendant entity.

30.     Defendant JF Partnership purports to be a limited partnership with a listed mailing address care of Decisions Incorporated at 22 Saw Mill River Road, Hawthorne, New York, 10532; and Defendant Decisions Incorporated and/or Picower serve/served as General Partner or Director of JF Partnership, and Decisions Incorporated, and/or Picower transact/transacted business through this Defendant entity.

31.     Defendant JFM Investment Company is an entity through which Decisions Incorporated, and/or Picower transact/transacted business, with a listed mailing address care of Decisions Incorporated at 22 Saw Mill River Road, Hawthorne, New York, 10532; and JFM Investment Company is a Limited Partner of Capital Growth Company, and Decisions Incorporated and/or Picower serve/served as General Partner or Director of JFM Investment Company.

32.     Defendant JLN Partnership is a limited partnership with a listed mailing address care of Decisions Incorporated at 22 Saw Mill River Road, Hawthorne, New York, 10532; and Decisions Incorporated and/or Picower serve/served as General Partner or Director of JLN Partnership, and Decisions Incorporated, and/or Picower transact/transacted business through this Defendant entity.

33.     Defendant JMP Limited Partnership is a limited partnership organized under the laws of Delaware, with a principal place of business at 25 Virginia Lane, Thornwood, New York

9

10594.  Decisions Incorporated and/or Picower serve/served as General Partner or Director of JMP Partnership, and Decisions Incorporated, and/or Picower transact/transacted business through this Defendant entity.

34.     Defendant Jeffry M. Picower Special Co. is an entity through which Decisions Incorporated, and/or Picower transact/transacted business, with a mailing address care of Decisions Incorporated at 22 Saw Mill River Road, Hawthorne, New York, 10532; and Decisions Incorporated and/or Picower serve/served as General Partner or Director of Jeffry M. Picower Special Co.

35.     Defendant Favorite Funds is an entity through which Picower transacted business, with a listed mailing address care of Decisions Incorporated at 22 Saw Mill River Road, Hawthorne, New York, 10532, and Decisions Incorporated and/or Picower serve/served as General Partner or Director of Favorite Funds.

36.     Defendant Jeffry M. Picower P.C. purports to be a limited partnership with a listed mailing address at 25 Virginia Lane, Thornwood, New York, New York 10594, and Decisions Incorporated and/or Picower serve/served as General Partner or Director of Jeffry M. Picower P.C., and Decisions Incorporated, and/or Picower transact/transacted business through this defendant entity.

37.     Defendant Picower Foundation is a trust organized for charitable purposes with Picower listed as donor, and Picower and Barbara Picower, among others, listed as Trustees during the relevant time period. Picower Foundation's addresses are reported as 1410 South Ocean Boulevard, Palm Beach, Florida 33480 and 9 West 57th Street, Suite 3800, New York, New York 10019.

38.     Defendants John Doe Trustees of the Picower Foundation were the Trustees of the Picower Foundation during the statute of limitations period.

39.     Defendant Picower Institute for Medical Research is a nonprofit entity organized under the laws of New York, with a principal place of business at 350 Community Drive, Manhasset, New York 11030.

40.     Defendant Trust f/b/o Gabrielle H. Picower is a trust established for beneficiary Gabrielle H. Picower, who is the daughter of Picower and Barbara Picower, with Defendant Barbara Picower listed as trustee, and the trust's BLMIS account address reported as 1410 South Ocean Boulevard, Palm Beach, Florida 33480.

41.     On information and belief, the Picower Entity Defendants were dominated, controlled and used as a mere instrumentality of Picower to advance his interests in, and to control BLMIS and the Madoff Ponzi scheme.  Thus, the Picower Entity Defendants are the alter egos of Jeffry Picower and of each other, and are jointly and severally liable for wrongful conduct committed by one or more of them, as detailed herein.

## PRIMARY SECURITIES LAW VIOLATION

### BLMIS Committed Securities Fraud

42.     BLMIS is a New York Limited Liability Company that was wholly owned by Madoff.  BLMIS was founded in 1959, and operated from its principle place of business at 885 Third Avenue, New York, NY.  Madoff was Founder, Chairman, Chief Executive Officer, and sole shareholder.  BLMIS was registered with the SEC as a Securities Broker Dealer under Section 15 of the Exchange Act.

43.     BLMIS typically obtained account documentation from its customers which gave BLMIS a power of attorney and complete discretion over trading in the relevant BLMIS

accounts. BLMIS falsely described its trading strategy to customers as involving a complicated option strategy which generated consistent returns. BLMIS in fact operated a Ponzi scheme.

44.     BLMIS falsely represented to all class members that it maintained a program of commingled options and stock trading which were securities and investment contracts under the Exchange Act (the "BLMIS Discretionary Trading Program"). Customer "participation" therein involved the purchase and sale of securities.

45.     BLMIS falsely represented to class members that they had purchased securities through BLMIS. Each class member received monthly statements purportedly reflecting the securities in their account, the trading activity during the month, and the profits earned over the relevant time period. The monthly statements for customer accounts depicted consistent profits on a monthly basis and rarely, if ever, showed loses.

46.     The transactions reported on these statements were a fabrication. The securities transactions described in the monthly statements never occurred, and the profits and securities positions reported were entirely fictitious. Madoff admitted at his plea hearing that he had never purchased any of the securities in BLMIS customer accounts. Except for isolated individual transactions, there is no record of BLMIS having purchased or sold any securities in BLMIS customer accounts.

47.     The BLMIS Ponzi scheme also involved the preparation and publication of false BLMIS audit reports prepared by Friehlich and Horowitz, a three person accounting firm in Rockland County, New York. BLMIS provided these financial reports to regulators and investors in the BLMIS Discretionary Trading Program for the purpose of their reliance thereon. The accounting reports falsely reported that Madoff was effecting customer transactions and that BLMIS was profitable and was generating profits in customer accounts.

12

48.     It is beyond dispute that BLMIS engaged in the largest Ponzi scheme in U.S. history.  The net amount of *bona fide* net customer assets invested in the BLMIS scheme was approximately $18 billion.  BLMIS violated Section 10(b) of the Exchange Act and Rule 10b-5. Madoff pleaded guilty to criminal securities fraud under Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.  During the Ponzi scheme, Madoff and his family defalcated at least $800 million of *bona fide* customer assets.

49.     BLMIS is currently subject to a federal bankruptcy proceeding, and thus cannot be named as a defendant in this action.

### BLMIS Violated Section 10(b) of the Exchange Act and Rule 10b-5

50.     BLMIS carried out a plan, scheme and course of conduct which was intended to and, did: (i) cause brokerage customers of BLMIS and investors in the BLMIS Discretionary Trading Program to entrust securities and cash for safe-keeping with BLMIS; and (ii) misappropriate the assets of BLMIS customers who purchased securities sold by or issued by BLMIS in connection with the BLMIS Discretionary Trading Program, as alleged herein.  In furtherance of this unlawful scheme, plan, and course of conduct, BLMIS and its agents, including Madoff, took the actions set forth herein.  As a result, Plaintiffs and the other members of the Class suffered damages in connection with the undisclosed and unauthorized theft of their securities, cash assets and the misappropriation of the proceeds thereof, as alleged above.

51.     BLMIS (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of materials fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon brokerage customers who entrusted assets to BLMIS and

who purchased securities issued by BLMIS in violation of Section 10(b) of the Exchange Act and Rule 10b-5.

52.     As part of and in furtherance of this conduct, BLMIS engaged in an ongoing scheme to misappropriate funds which constituted the proceeds of sales of customers' securities.

53.     BLMIS directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to misappropriate funds which constituted the proceeds of sales of securities (or the securities themselves or cash) held by BLMIS as securities custodian and broker for Plaintiffs and the Class members.

54.     BLMIS made untrue statements of material fact and/or omitted to state material facts necessary to make its statements not misleading, and employed devices, schemes and artifices to defraud, and engaged in acts, practices, and a course of conduct in an effort to mislead and misappropriate the assets of BLMIS brokerage customers and participants in the BLMIS Discretionary Trading Program.  Such misconduct included the making of, or the participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about BLMIS and the BLMIS Discretionary Trading Program, its financial performance and its business operations in the light of the circumstances under which they were made, not misleading, and which included engaging in manipulative and deceptive transactions, practices and courses of business which operated as a fraud and deceit upon the customers of BLMIS and participants in the BLMIS Discretionary Trading Program, including the surreptitious and unauthorized theft of customer assets and securities.

55.     BLMIS had actual knowledge of the misrepresentations and omissions of material facts set forth herein.   BLMIS's material misrepresentations and/or omissions were done knowingly for the purpose and effect of inflating BLMIS's financial results.   At all relevant times, BLMIS was aware of the dissemination of artificially inflated financial information to the investing public which it knew was materially false and misleading.

56.     At the time of the misrepresentations, omissions and manipulative and deceptive conduct, Plaintiffs and other members of the Class were ignorant of their falsity and believed them to be true, and they were ignorant of the manipulative and deceptive conduct complained of herein.   If Plaintiffs and the other members of the Class had known the truth regarding BLMIS's materially false statements and deceptive and manipulative conduct alleged above, which were not disclosed, Plaintiffs and other members of the Class would not have entrusted their assets to BLMIS or purchased what they were led to believe were BLMIS securities.

57.     As a direct and proximate result of BLMIS's wrongful, manipulative, and deceptive conduct, including the dissemination of the materially false and misleading information set forth above, Plaintiffs and the other members of the Class suffered damages by overpaying for the BLMIS securities As a result of the manipulative and deceptive conduct and, Plaintiffs and the Class members suffered damages.

58.     By virtue of the foregoing, BLMIS violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

### DEFENDANTS ARE CONTROL PERSONS UNDER SECTION 20(a)

### This Action Is Distinct From the Trustee's Fraudulent Conveyance Actions

59.     Each Defendant is an entity or individual operating as part of a control group of BLMIS.   Defendants are commonly controlled or were commonly controlled by Jeffry M. Picower.

15

60.     The Trustee has alleged in his adversary action against Defendants that the Defendants received at least $7.2 billion from BLMIS, net of their investments. Those funds have now been recovered by the Trustee and the Government, and Plaintiffs do not seek the recovery of any fraudulently transferred funds in this action. Instead, Plaintiffs seek damages against Defendants resulting from their reliance upon misrepresentations made by BLMIS and fraud committed by BLMIS, under the direct or indirect control of Picower.

61.     The Trustee's fraudulent conveyance action did not require allegations that Picower exercised control over BLMIS. The allegations set forth in more detail herein describe Picower's direct and indirect control over BLMIS's securities violations.

62.     Pursuant to Section 20(a), Defendants are jointly and severally liable to the same extent as BLMIS itself for Plaintiffs' damages, which are sought to be recovered from other assets of Defendants, and not the funds recovered by the Trustee through his fraudulent conveyance claims.

### Picower controlled BLMIS, and knowingly induced BLMIS's securities fraud

63.     Picower was a highly sophisticated investor, accountant, and attorney. Picower was closely associated with Madoff, both in business and socially, for decades, and lived close to Madoff in Palm Beach. Madoff served as a trustee for the Picower Institute for Medical Research. Picower "invested" with BLMIS since at least the 1980s.

64.     Through his close relationship with Madoff, Picower was aware of the BLMIS fraud. In interviews with author Diana Henriquez, Madoff admitted that Picower knew of the existence of the BLMIS scheme and actively participated in it for over 20 years, knowing that he was participating in a fraud. Picower became a control person of BLMIS for his own benefit at least by December 1, 1995, when he started to directly or indirectly induce and cause BLMIS to make misrepresentations to other customers.

16

65.     Picower caused BLMIS to book phony transactions with phony profits in his accounts.  From time to time, Picower withdrew these phony profits from his BLMIS account. These withdrawals were actually funded with cash from other BLMIS customers.  Picower knew that BLMIS did not, and could not, truthfully report to customers the unauthorized transfer of customer assets to Picower and maintain the Ponzi scheme.  Picower knew and intended that each phony recording of a fictitious profitable transaction in his accounts resulted directly in the recording of false transactions and false asset values in the accounts of other BLMIS customers because these customer accounts did not reflect the resulting cash transfer from their accounts to Picower.

66.     As a result of Picower's control, the account records of other BLMIS customers falsely overstated the assets therein and their investment performance.  BLMIS customers consequently unknowingly overpaid for BLMIS securities.

67.     As a result of Picower's control, he caused BLMIS to present Plaintiffs with false and misleading information (i.e., inflated account values), in order to induce those investors to remain invested in BLMIS and to continue to attract new investments in BLMIS.  If Plaintiffs had been provided with accurate information, they would have attempted to protect the value of their investments, and the Ponzi scheme would have collapsed.

68.     Picower's direction of fraudulent misrepresentations with respect to his own accounts, coupled with his knowledge and intent that BLMIS would necessarily create corresponding false entries in other BLMIS customer accounts, made Picower jointly and severally liable for BLMIS's misrepresentations.  Picower's direction of false trading activity and the preparation of false trading records over a multi-year period show control of the specific fraudulent activity which constituted the underlying Ponzi scheme and the underlying violations

17

of Section 10(b) and Rule 10b-5 engaged in by BLMIS. Picower's wrongful conduct is exactly the evil that Section 20(a) was enacted to remedy.

69.     BLMIS employees regularly carried out Picower's fraudulent trading instructions by fabricating and back dating trades in Picower's accounts to generate phony paper profits. By way of example, on or about December 29, 2005, Picower's assistant April Friehlich, acting on behalf of the Defendants, faxed BLMIS a letter signed by Picower that directed BLMIS to "realize" a gain of $50 million in the Picower accounts. Upon direction from Picower and Friehlich, BLMIS falsified records so that it would appear that BLMIS sold large amounts of stock in Agilent Technologies and Intel Corporation in various Defendant accounts on a back dated basis. Friehlich directed the fictitious sale of large amounts of these purported securities on or about December 29, 2005, requesting that the sales be "booked" to take place on an earlier date, *i.e.*, December 8 or 9. BLMIS backdated the trades at Picower's direction and on Picower's behalf for the purpose of generating phony paper profits of approximately $46.3 million, which made up most of Picower's requested $50 million distribution. Picower knew that in order to maintain the Ponzi scheme, Picower's phony $46.3 million paper profit necessitated the creation of corresponding phony account records in other BLMIS customer accounts.

70.     Similarly, on or about April 24, 2006, Defendant Decisions Incorporated opened a new account with BLMIS known as the "Decisions, Inc. 6" account. This account was opened with a wire transfer of $125 million. Defendants instructed BLMIS to back date trades in this account to January 2006, which was four months prior to the date the account was actually opened. BLMIS employees carried out Defendants' direct instructions and fabricated and back dated trades in the "Decisions, Inc. 6" account. This resulted in the net value of the account increasing by almost $40 million, or 30%, in less than two weeks after it opened. Defendants

also directed and orchestrated the preparation of false statements in May 2007, which reflected millions of dollars in securities transactions which reportedly took place in earlier in 2007, but which in fact did not take place at all.

71.     The fraudulent transactions directed by Picower also directly resulted in the falsification of BLMIS's financial statements provided to regulators. Each month, BLMIS prepared and filed a Financial and Operational Combined Uniform Single ("FOCUS") report with the Financial Industry Regulatory Authority, Inc. ("FINRA"), the self-regulatory organization that regulates broker-dealers. BLMIS's FOCUS reports materially misstated its financial condition by failing to account properly for Picower's phony trades and for the overstated value of other customers' accounts. Picower's ability to direct the creation and dissemination of false and misleading trading documentation which he knew would be incorporated in financial disclosures made by BLMIS, a highly regulated broker and investment advisor, shows that Picower exercised direct and indirect control over the day-to-day operations of BLMIS and specifically over the trading activity that constituted a violation of the securities laws.

72.     Picower's control of BLMIS was not limited to the false documentation and concealment of phony trades and the direction of misreporting in customer accounts. Picower directly or indirectly exerted control over the benefits of the BLMIS Ponzi scheme and the cash assets held in customer accounts by BLMIS.

73.     For example, Picower directed BLMIS to make a margin "loan" of approximately *$6 billion* to Defendant Decisions Incorporated, even though the account had no trading activity or cash or securities to support such borrowing.

19

74.    Borrowing in a brokerage account is regulated by margin rules established by the Federal Reserve System and by the New York Stock Exchange.  These rules limit the amount that an account holder can borrow from his or her securities account based upon the value of securities that can be used as collateral for the loan.  The Decisions Incorporated account reflects virtually no trading activity and virtually no securities positions or other collateral for loans from this account.  Picower was able to direct BLMIS to violate the margin rules and "loan" almost $6 billion in the Decisions Incorporated account without any collateral.

75.    Picower knew at all times that this $6 billion credit was actually a transfer from the accounts of other BLMIS customers that was never recorded in those accounts.

76.    Along with the other evidence outlined herein, Picower's control over the benefits derived from BLMIS's fraudulent misrepresentations to other investors (which eventually amounted to $7.2 billion, constituting approximately 40% of the net cash from the Ponzi scheme and more than _seven times_ what Madoff stole) is overwhelming evidence that Picower controlled BLMIS within the meaning of Section 20(a).

77.    The volume, pattern and practice of Picower's control over the fraudulent documentation of underlying transactions at BLMIS, including the direction of false reporting of customer assets and returns in monthly statements to Plaintiffs, as well as Picower's direct or indirect control over the benefits of the Ponzi scheme, establishes Picower's "control person" liability under Section 20(a), for which Defendants are liable.

## CLASS ACTION ALLEGATIONS

78.    Plaintiffs bring this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3).  The definition of the Plaintiff Class in this action is: (1) all brokerage customers of BLMIS who entrusted securities or cash to BLMIS between December 1,

1995, the approximate date that Picower first became a control person of BLMIS, and December 15, 2008, the date that BLMIS entered into SIPA liquidation ("Class Period"), and who at such time granted to BLMIS or its employees or agents trading authority or discretion with respect to assets in such brokerage accounts for trading in the BLMIS Discretionary Trading Program; and (2) who have not received the full reported account value of their BLMIS account(s) as of the date of the BLMIS bankruptcy/SIPC liquidation (the "Class"). The Class excludes the Defendants named herein, members of the Madoff family, BLMIS employees, and any of their affiliates or controlled entities.

79. The Class meets the requirements for class certification under Rule 23(a) of the Federal Rules of Civil Procedure.

    a. *Numerosity.* The members of the Class are so numerous that joinder of all members is impracticable. Based on disclosures made by the SIPA Trustee the Class has thousands of members. Class members may be identified from records maintained by BLMIS and the SIPA Trustee. The members of the Class may be notified of the pendency of this action by mail or otherwise using a form of notice similar to that customarily used in securities class actions.

    b. *Commonality.* Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members of the Class. Among the questions of law and fact common to the Class are whether the Federal Securities Laws (specifically §20(a) of the Exchange Act) were violated by Picower as alleged herein, whether members of the Class have sustained damages as a result thereof, and if so, the proper measure of such damages.

     c.    *Typicality.* Plaintiffs' claims are typical of the claims of members of the Class as all members of the Class were similarly affected by Picower's wrongful conduct in violation of federal law as alleged herein.

     d.    *Adequacy.* Plaintiffs will fairly and adequately represent and protect the interest of the members of the Class. Plaintiffs have retained competent and experienced counsel in class and securities litigation.

80.    This class action also meets the requirements of Federal Rule of Civil Procedure 23(b)(3). The common issues outlined herein predominate over any individual issues in the case. A class action is superior to all other available methods of the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually address the wrongs done to them. There will be no difficulty in the management of this action as a class action.

81.    The allegations herein are based on the damage inflicted directly upon the Class members through the fraudulent and deceptive reporting directed or perpetrated by Defendants with the intention that the Class members would rely upon those representations to their detriment. The Class members did in fact rely upon these misrepresentations and/or omissions of material fact.

## TOLLING THE STATUTE OF LIMITATIONS

82.    Any applicable statute of limitations with respect to Plaintiffs' claims has been tolled since no later than February 16, 2010, by the filing of the class action complaint against all of the Defendants named here in the action captioned *Susanne Stone Marshall, Individually and*

*On Behalf of a Class of Similarly Situated v. Barbara Picower, Individually, and as Executor of the Estate Of Jeffry M. Picower, et al.,* case no. 10-80252-CV-Ryskamp/Vitunac (S.D. Fla.). *See American Pipe and Construction Company v. Utah*, 414 U.S. 538, 552 (1974); *In re World Comm Securities Litigation*, 496 F.3d 245 (2d Cir. 2007).

<u>COUNT I</u>

<u>VIOLATIONS OF SECTION 20(a) OF THE EXCHANGE
ACT AS AGAINST THE PICOWER DEFENDANTS</u>

83.     Plaintiffs repeat and re-allege each and every allegation contained above as if fully set forth herein.

84.     BLMIS violated Section 10(b) of the Exchange Act and Rule 10b-5 by its acts and omissions and by engaging in a massive Ponzi scheme.

85.     At all relevant times, Defendants were dominated, controlled and used as a mere instrumentality of Jeffry M. Picower.

86.     Pursuant to Section 20(a), Picower is jointly and severally liable to the same extent as BLMIS itself for BLMIS's violations of Section 10(b) of the Exchange Act and Rule 10b-5.

87.     Defendants acted collectively and in concert as a control group of BLMIS within the meaning of Section 20(a) of the Exchange Act as alleged herein.

88.     Picower had the power to directly or indirectly control, and did in fact control, the overall decision-making at BLMIS, the record keeping for their account and other customers' accounts at BLMIS, and the false recording of securities transactions and cash transfers in and from all customer accounts at BLMIS, including those of the Class members.

89.     Picower had the power to directly or indirectly control, and did in fact control, the flow of funds and securities in and out of BLMIS and customer accounts at BLMIS, even when

this flow of funds and assets did not correspond to actual trading activity, resulting in the overstatement of the value of the Class members' customer accounts at BLMIS.

90.     Picower actively communicated and agreed with Madoff and other BLMIS personnel to perpetuate the fraud.  Picower had a close relationship with Madoff and BLMIS, and directly or indirectly ensured that Madoff and BLMIS concealed the scheme from other BLMIS customers.  Picower directly or indirectly induced BLMIS's misleading statements to others. These misrepresentations induced BLMIS customers to pay BLMIS for non-existent securities.

91.     Picower had intimate knowledge and involvement in the operations, record keeping, and financial management of BLMIS.   Picower directly or indirectly induced the material misrepresentations and omissions giving rise to the securities violations alleged herein.

92.     Picower knew and intended that material misrepresentations and omissions would be communicated to other investors, including Plaintiffs.  Picower directly or indirectly induced BLMIS to conceal the fraud from BLMIS customers and regulators.  Picower and Defendants also profited from the BLMIS scheme, and did in fact materially benefit from Picower's direct or indirect control of BLMIS's violations of Section 10(b) and SEC Rule 10b-5.

93.     Pursuant to Section 20(a), Picower's control of BLMIS, and Picower's domination and control of Defendants, Defendants are jointly and severally liable as a control group to the same extent as BLMIS itself for Plaintiffs' damages, which are sought to be recovered from other assets of Defendants, and not the funds recovered by the Trustee through his fraudulent conveyance claims.

94.     As a direct and proximate result of BLMIS's securities violations, Plaintiffs and other members of the Class have suffered damages.

WHEREFORE, Plaintiffs pray for relief and judgment against the Defendants as follows:

A.    Determining that this action is a proper class action;

B.    designating Plaintiffs as class representatives under Rule 23 of the Federal Rules of Civil Procedure and Plaintiffs' counsel as class counsel;

C.    awarding compensatory damages in favor of Plaintiffs and other Class members against all of the Defendants jointly and severally, for all securities based damages sustained as a result of Defendants' wrongdoing in an amount to be proven at trial, including interest;

D.    awarding Plaintiffs and the Class the reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

E.    such other and further relief as the Court may deem just and proper.

DATED: this ____ day of _____, 2014, by:

By:    DRAFT _____
James W. Beasley, Jr.
beasley@beasleylaw.net
Florida Bar No. 145750
Joseph G. Galardi
galardi@beasleylaw.net
Florida Bar No. 180572
BEASLEY HAUSER KRAMER
& GALARDI, P.A.
505 South Flagler Drive, Suite 1500
West Palm Beach, Florida 33401
Tel: (561) 835-0900
Fax: (561) 835-0939

*and*

DRAFT _____
Lesley Blackner, Esq.
lblackner@aol.com
Florida Bar No. 654043
BLACKNER, STONE & ASSOCIATES

25

123 Australian Avenue
Palm Beach, FL  33480
Tel: (561) 659-5754
Fax: (561) 659-3184

*Co-counsel for Plaintiffs and the Class*