# EXHIBIT G

CLOSED,JMH

# U.S. District Court
## Southern District of Florida (West Palm Beach)
## CIVIL DOCKET FOR CASE #: 9:10-cv-80254-KLR

Marshall v. Jeffry M. Picower Estate et al       Date Filed: 02/17/2010
Assigned to: Senior Judge Kenneth L. Ryskamp      Date Terminated: 03/22/2011
Cause: 28:1332 Diversity                          Jury Demand: Plaintiff
                                                  Nature of Suit: 380 Personal Property:
                                                  Other
                                                  Jurisdiction: Diversity

**Plaintiff**

**Susanne Stone Marshall**              represented by   **Helen D. Chaitman**
                                                         Becker & Poliakoff, LLP
                                                         45 Broadway
                                                         New York, NY 10006
                                                         212-559-3322
                                                         Email: hchaitman@becker-
                                                         poliakoff.com
                                                         *ATTORNEY TO BE NOTICED*

                                                         **James Wallace Beasley , Jr.**
                                                         Beasley Hauser Kramer Leonard &
                                                         Galardi PA
                                                         505 S Flagler Drive
                                                         Suite 1500
                                                         West Palm Beach, FL 33401
                                                         561-835-0900
                                                         Fax: 835-0939
                                                         Email: stringer@beasleylaw.net
                                                         *ATTORNEY TO BE NOTICED*

                                                         **Lesley Guy Blackner**
                                                         Blackner Stone & Associates
                                                         123 Australian Avenue
                                                         Palm Beach, FL 33480
                                                         561-659-5754
                                                         Fax: 659-3184
                                                         Email: LBlackner@aol.com
                                                         *ATTORNEY TO BE NOTICED*

                                                         **Joseph George Galardi**
                                                         Beasley Kramer & Galardi PA
                                                         505 S Flagler Drive
                                                         Suite 1500

West Palm Beach, FL 33401
561-835-0900
Fax: 835-0939
Email: Galardi@beasleylaw.net
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Jeffry M. Picower Estate**
*through its Executor, William D. Zabel*

**Defendant**

**Barbara Picower**
*Individually and as Trustee for the*
*Picower Foundation and for the Trust*
*f/b/o Gabrielle H. Picower*

**Defendant**

**Capital Growth Company**

**Defendant**

**Decisions, Inc.**

**Defendant**

**Favorite Funds**

**Defendant**

**JA Primary Limited Partnership**

**Defendant**

**JA Special Limited Partnership**

**Defendant**

**JAB Partnership**

**Defendant**

**JEMW Partnership**

**Defendant**

**JF Partnership**

**Defendant**

**JFM Investment Companies**

**Defendant**

**JLN Partnership**

CM/ECF - Live Database - flsd        Page 3 of 5
08-01789-cgm    Doc 12290-7    Filed 12/18/15    Entered 12/18/15 17:44:48    Exhibit G
Pg 4 of 33

**Defendant**

**JMP Limited Partnership**

**Defendant**

**Jeffry M. Picower Special Company**

**Defendant**

**Jeffry M. Picower, P.C.**

**Defendant**

**The Picower Foundation**

**Defendant**

**The Picower Institute of Medical
Research**

**Defendant**

**The Trust**
*f/b/o Gabrielle H. Picower*

| Date Filed | # | Docket Text |
|---|---|---|
| 02/17/2010 | 1 | COMPLAINT - *Class Action* against Capital Growth Company, Decisions, Inc., Favorite Funds, JA Primary Limited Partnership, JA Special Limited Partnership, JAB Partnership, JEMW Partnership, JF Partnership, JFM Investment Companies, JLN Partnership, JMP Limited Partnership, Jeffry M. Picower Estate, Jeffry M. Picower Special Company, Jeffry M. Picower, P.C., Barbara Picower, The Picower Foundation, The Picower Institute of Medical Research, The Trust f/b/o Gabrielle H. Picower. Filing fee $ 350.00 receipt number 113C-2651576, filed by Susanne Stone Marshall. (Attachments: # 1 Civil Cover Sheet, # 2 Summon(s), # 3 Exhibit A, # 4 Exhibit B, # 5 Exhibit C, # 6 Exhibit D)(Galardi, Joseph) (Main Document 1 replaced on 2/17/2010) (vjk). (Entered: 02/17/2010) |
| 02/17/2010 | 2 | Clerks Notice of Judge Assignment on Electronic Case to Judge Daniel T. K. Hurley and Magistrate Judge James M. Hopkins (vjk) (Entered: 02/17/2010) |
| 02/17/2010 | 3 | Summons Issued as to Capital Growth Company, Decisions, Inc., Favorite Funds, JA Primary Limited Partnership, JA Special Limited Partnership, JAB Partnership, JEMW Partnership, JF Partnership, JFM Investment Companies, JLN Partnership, JMP Limited Partnership, Jeffry M. Picower Estate, Jeffry M. Picower Special Company, Jeffry M. Picower, P.C., Barbara Picower, The Picower Foundation, The Picower Institute of Medical Research, The Trust. (vjk) (Entered: 02/17/2010) |
| 02/26/2010 | 4 | ORDER TRANSFERRING CASE to Senior Judge Kenneth L. Ryskamp for all further proceedings, accepted and signed on 2/26/2010. Judge Daniel T. K. |

| | | Hurley no longer assigned to case. Signed by Judge Daniel T. K. Hurley on 2/25/2010. (jmd) (Entered: 03/01/2010) |
|---|---|---|
| 03/02/2010 | 5 | CERTIFICATION AND ORDER of Transfer to Magistrate Judge Ann E. Vitunac. Signed by Magistrate Judge James M. Hopkins on 3/2/2010. (tb) (Entered: 03/03/2010) |
| 03/12/2010 | 6 | NOTICE by Susanne Stone Marshall *Notice of Filing Waivers of Service of Process* (Galardi, Joseph) (Entered: 03/12/2010) |
| 03/15/2010 | 7 | AMENDED COMPLAINT, filed by Susanne Stone Marshall. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D)(Galardi, Joseph) (Entered: 03/15/2010) |
| 03/16/2010 | 8 | Unopposed MOTION for Extension of Time to File *Civil RICO Case Statement* by Susanne Stone Marshall. (Attachments: # 1 Text of Proposed Order Order Granting Plaintiff's Motion for Enlargement of Time to Serve Civil RICO Case Statement)(Galardi, Joseph) (Entered: 03/16/2010) |
| 03/19/2010 | 9 | Endorsed ORDER granting 8 Motion for Extension of Time to File. Plaintiff shallhave through and including March 25, 2010 to serve its Civil RICO Case Statement. Signed by Senior Judge Kenneth L. Ryskamp on 3/19/2010. (kdn) (Entered: 03/19/2010) |
| 03/22/2010 | 11 | MOTION for Limited Appearance, Consent to Designation and Request to Electronically Receive Notices of Electronic Filings for Helen D. Chaitman. Filing Fee $75.00. Receipt # 726954 (ra) (Entered: 03/25/2010) |
| 03/24/2010 | 10 | NOTICE by Susanne Stone Marshall *Notice of Filing Waivers of Service of Process* (Galardi, Joseph) (Entered: 03/24/2010) |
| 03/25/2010 | 12 | Statement of: *Plaintiff's Local Rule 12.1 Civil RICO Case* by Susanne Stone Marshall (Galardi, Joseph) (Entered: 03/25/2010) |
| 03/25/2010 | 13 | Endorsed ORDER granting 11 Motion for Limited Appearance, Consent to Designation and Request to Electronically Receive Notices of Electronic Filings. Signed by Senior Judge Kenneth L. Ryskamp on 3/25/2010. (kdn) (Entered: 03/25/2010) |
| 04/01/2010 | 14 | EMERGENCY MOTION for Temporary Restraining Order with incorporated memorandum of law by Susanne Stone Marshall. Responses due by 4/19/2010 (lbc) (Entered: 04/01/2010) |
| 04/01/2010 | 15 | ORDER denying 14 Motion for Temporary Restraining Order. Signed by Senior Judge Kenneth L. Ryskamp on 4/1/2010. (lk) (Entered: 04/01/2010) |
| 04/05/2010 | 16 | NOTICE by Susanne Stone Marshall *of Filing Order to Show Cause with Temporary Restraining Order* (Galardi, Joseph) (Entered: 04/05/2010) |
| 06/16/2010 | 17 | ORDER Requesting Status Update. Signed by Senior Judge Kenneth L. Ryskamp on 6/14/2010. (ls) (Entered: 06/16/2010) |
| 06/17/2010 | 18 | STATUS Update by Susanne Stone Marshall (Galardi, Joseph) Modified text on 6/18/2010 (asl). (Entered: 06/17/2010) |
| | | |

| 03/14/2011 | 19 | ORDER Requesting Status Update. Signed by Senior Judge Kenneth L. Ryskamp on 3/14/2011. (ral) (Entered: 03/15/2011) |
| 03/17/2011 | 20 | STATUS REPORT *Plaintiff's Status Update* by Susanne Stone Marshall (Galardi, Joseph) (Entered: 03/17/2011) |
| 03/22/2011 | 21 | Order Administratively Closing Case; The Clerk shall CLOSE this case and DENY any pending motionis as MOOT. Signed by Senior Judge Kenneth L. Ryskamp on 3/22/2011. (ral) (Entered: 03/23/2011) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 12/18/2015 10:25:20 | | | |
| **PACER Login:** | bh4790:3985680:3937940 | **Client Code:** | 095879.000001 |
| **Description:** | Docket Report | **Search Criteria:** | 9:10-cv-80254-KLR |
| **Billable Pages:** | 3 | **Cost:** | 0.30 |

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO. **10-80254-CIV-Hurley/Hopkins**

SUSANNE STONE MARSHALL, individually
and on behalf of a class of similarly situated,

      Plaintiffs,

v.

JEFFRY M. PICOWER ESTATE, through its
Executor, William D. Zabel;
BARBARA PICOWER, individually and as
Trustee for the Picower Foundation
and for the Trust f/b/o Gabriel H. Picower;
CAPITAL GROWTH COMPANY;
DECISIONS, INC.;
FAVORITE FUNDS;
JA PRIMARY LIMITED PARTNERSHIP;
JA SPECIAL LIMITED PARTNERSHIP;
JAB PARTNERSHIP;
JEMW PARTNERSHIP;
JF PARTNERSHIP;
JFM INVESTMENT COMPANIES;
JLN PARTNERSHIP;
JMP LIMITED PARTNERSHIP;
JEFFRY M. PICOWER SPECIAL COMPANY;
JEFFRY M. PICOWER, P.C.;
THE PICOWER FOUNDATION;
THE PICOWER INSTITUTE OF MEDICAL RESEARCH;
THE TRUST F/B/O GABRIELLE H. PICOWER.

_____/

FILED by **VK** D.C.
ELECTRONIC

**FEB. 17, 2010**

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

**COMPLAINT—CLASS ACTION**

**Jury Trial Demanded**

    Plaintiff Susanne Stone Marshall, through her undersigned attorneys, on her own behalf and on behalf of a similarly situated class of plaintiffs, hereby sues the Defendants. Upon knowledge, information and belief, and based upon investigation of counsel (including, *inter alia*, review of news accounts, account statements, publicly available documents, and court papers), Plaintiff alleges as follows:

## BACKGROUND AND SUMMARY OF CLAIMS

1.     This action arises from Defendants' participation in the now admitted massive Ponzi scheme that occurred under the direction of Bernard L. Madoff ("Madoff") and through Madoff's registered securities firm, Bernard L. Madoff Investment Securities Corporation LLC ("BLMIS").   Defendants were, as a group, the largest beneficiaries of the Ponzi scheme, converting and receiving billions of dollars from the accounts of innocent Madoff and BLMIS customers.

2.     BLMIS is currently insolvent and is being liquidated by Irving H. Picard, Esq. (the "Trustee") as Trustee for the liquidation of the business of BLMIS, under the Securities Investor Protection Act, 15 U.S.C. § 78aaa, *et seq.* ("SIPA"), in the bankruptcy proceedings styled *In re: Bernard L. Madoff Investments Securities LLC*, Case No. 08-01789 (BRL), pending in the United States Bankruptcy Court, Southern District of New York (the "SIPA Liquidation").

3.     The Trustee has commenced an adversary proceeding against the Picowers and their related entities named herein in the SIPA Liquidation (Adv. Pro. No. 09-1197) (the "Trustee's Complaint").   A copy of the Trustee's Complaint is attached as **Exhibit "A"**.   The Trustee seeks damages only on behalf of BLMIS customers who have filed recognized claims for recognized amounts in the SIPA Liquidation proceeding ("SIPA Payees").   The Trustee does not have standing to bring claims on behalf of parties other than SIPA Payees.   Of the 4,903 SIPA claims, the Trustee has allowed only 2,568 such claims.

4.     The Plaintiff and class members are BLMIS account holders who had their SIPA claims disallowed in whole or in part or who have not filed SIPA claims with the Trustee, all of whom have independent claims against Defendants for, *inter alia*, conspiracy, unjust enrichment, conversion and violations of the Florida RICO statute that are separate and distinct from those

2

asserted by the Trustee, and that have not been, and cannot be, asserted by the Trustee.

5.       Jeffry M. Picower ("Picower") knew, and the other Defendants knew or should have known, that they were participating in and profiting from Madoff's fraudulent scheme because of the absurdly high rates of return that their accounts supposedly, but could not have legitimately, achieved.  These rates of return sometimes exceeded 100% annually, and were even as high as 950% per year. (Picower shall hereinafter be included in references to "Defendants").

6.       Defendants knew that their rates of return were dramatically higher than those that BLMIS reported to its "ordinary investors."  Defendants, and Picower specifically, were among a small group of Madoff investors with direct access to BLMIS's trading records. Defendants knew that their extra-ordinary returns were illegitimate and that BLMIS was running an illegitimate investment operation; Defendants could not have believed otherwise.

7.       In fact, relevant documents and information show that Picower and the Defendants directed BLMIS to prepare account statements for the Defendants reflecting not actual trading results but the rates of return Picower "wanted to achieve".  BLMIS complied with these directions, and the vast majority of the purported "profits" in the Defendants' accounts were not a result of the actual purchase and sale of securities.

8.       The Defendants' account records reflect, and Defendants were aware of, or should have been of, the fact that Madoff and BLMIS booked in their accounts fictional profits from fictional trading.   Upon information and belief, no purchases or sales of securities in the Defendants' BLMIS accounts ever actually occurred.  Upon information and belief, no purchases or sales of securities in the class members' BLMIS accounts ever actually occurred.

9.       Picower, the other Defendants, and their agents directly participated in the Madoff Ponzi scheme, and knew or should have known that the funds used to pay the Defendants'

fictional profits could have only come from the accounts of other BLMIS customers. Picower and Defendants converted the cash in other innocent BLMIS customer accounts for their own personal benefit with the acquiescence and assistance of Madoff and BLMIS.

## JURISDICTION AND VENUE

10.     Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(d)(2)(A) because: (1) the matter in controversy between the class members and Defendants exceeds $5,000,000 exclusive of interest, attorneys' fees, and costs, and (2) many of the class members are citizens of a State other than the States of citizenship of the Defendants. The actions complained of herein are violations of Florida's RICO statute and took place in part in Palm Beach County, Florida. Personal jurisdiction also exists under Florida's long arm statute.

11.     Venue is proper in the Southern District of Florida pursuant to 28 U.S.C. § 1391, because a substantial part of the events comprising Defendants' wrongful conduct giving rise to the claims alleged herein occurred in the Southern District of Florida. At the time of his death, Picower and his wife were residents of Palm Beach County, Florida, and his related-entity Defendants transact business in Palm Beach County, Florida. The main Defendants maintained their primary offices or residences in this district. Defendants have directly and indirectly made use of the means and instrumentalities of interstate commerce, or of the mails and wires, in connection with the transactions, acts, practices and courses of business alleged herein.

## THE PARTIES

12.     Plaintiff Susanne Stone Marshall is a citizen and resident of St. Augustine, Florida. The Trustee limited Marshall's claim in the SIPA Liquidation to $30,000. However, this is not the full amount of her loss, and the balance on Marshall's November 30, 2008 BLMIS account statement was approximately $205,000. Plaintiff brings this class action on behalf of

herself and a putative class of persons similarly situated for damages and other relief arising from the Defendants' wrongful conduct as described herein.

13.     Jeffry M. Picower ("Picower") was a resident of Palm Beach, Florida, and Fairfield, Connecticut, prior to and at the time of his death on October 25, 2009. Picower was a highly sophisticated investor, accountant and attorney who participated in the Madoff Ponzi scheme for over 20 years, knowing that he was participating in a fraud. Picower had vast experience in the purchase and sale of businesses, including health care and technology companies. He had also been personally responsible for managing hundreds of millions, if not billions, of dollars of assets, and he had developed uncommon sophistication in trading securities and evaluating returns therefrom. Upon information and belief, Picower was closely associated with Madoff, both in business and socially, for the last 30 years. Picower held an individual BLMIS account in the name of "Jeffry M. Picower," with an account address of 1410 South Ocean Boulevard, Palm Beach, Florida. Picower was a trustee of the Picower Foundation, and Chairman of the Board of Defendant Decisions Incorporated.

14.     Upon information and belief, Defendant William D. Zabel is the Executor of the Estate of Jeffry M. Picower, which is being probated in New York Surrogate's Court.

15.     Defendant Barbara Picower is a person residing at 1410 South Ocean Boulevard, Palm Beach, Florida 33480. Barbara Picower is Picower's surviving spouse. According to the Trustee, Barbara Picower holds an individual account at BLMIS in the name "Barbara Picower," with the account address of 1410 South Ocean Boulevard, Palm Beach, Florida 33480, and Barbara Picower is trustee for Defendant Trust f/b/o Gabrielle H. Picower, an officer and/or director of Defendant Decisions Incorporated, and trustee and Executive Director of the Picower Foundation.

16.     Defendant Decisions Incorporated is a corporation organized under the laws of Delaware with a principal place of business at 950 Third Avenue, New York, New York 10022 and an alternate mailing address on its BLMIS account listed as 22 Saw Mill River Road, Hawthorne, New York, 10532.  According to the Trustee, the Decisions Incorporated office in Hawthorne was merely a store-front office through which little or no business was conducted, and Decisions Incorporated is a general partner of Defendants Capital Growth Company, JA Primary Limited Partnership, JA Special Limited Partnership, JAB Partnership, JEMW Partnership, JF Partnership, JLN Partnership, JMP Limited Partnership and Jeffry M. Picower Special Co.

17.     Defendant Capital Growth Company purports to be a limited partnership with a mailing address for its BLMIS account listed at 22 Saw Mill River Road, Hawthorne, New York, 10532, care of Decisions Incorporated. According to the Trustee, Defendant Decisions Incorporated and/or Picower serve/served as General Partner or Director of Capital Growth Company, and Decisions Incorporated and Picower transact/transacted business through this entity.

18.     Defendant JA Primary Limited Partnership is a limited partnership organized under the laws of Delaware with a principal place of business at 25 Virginia Lane, Thornwood, New York 10594. According to the Trustee, Defendant Decisions Incorporated and/or Picower serves/served as General Partner or Director of JA Primary Partnership, and Decisions Incorporated, and/or Picower transact/transacted business through this entity.

19.     Defendant JA Special Limited Partnership is a limited partnership organized under the laws of Delaware with a principal place of business at 25 Virginia Lane, Thornwood, New York, New York 10594.  According to the Trustee, Defendant Decisions Incorporated

6 of 27

and/or Picower serve/served as General Partner or Director of JA Special Limited Partnership, and Decisions Incorporated, and/or Picower transact/transacted business through this Defendant entity.

20.     According to the Trustee, Defendant JAB Partnership purports to be a limited partnership with a listed mailing address care of Decisions Incorporated at 22 Saw Mill River Road, Hawthorne, New York, 10532. Upon information and belief, Defendant Decisions Incorporated and/or Picower serve/served as General Partner or Director of JAB Partnership, and Decisions Incorporated, and/or Picower transact/transacted business through this Defendant entity.

21.     According to the Trustee, Defendant JEMW Partnership purports to be a limited partnership with a listed mailing address care of Decisions Incorporated at 22 Saw Mill River Road, Hawthorne, New York, 10532; and Defendant Decisions Incorporated and/or Picower serve/served as General Partner or Director of JEMW Partnership, and Decisions Incorporated, and/or Picower transact/transacted business through this Defendant entity.

22.     According to the Trustee, Defendant JF Partnership purports to be a limited partnership with a listed mailing address care of Decisions Incorporated at 22 Saw Mill River Road, Hawthorne, New York, 10532; and Defendant Decisions Incorporated and/or Picower serve/served as General Partner or Director of JF Partnership, and Decisions Incorporated, and/or Picower transact/transacted business through this Defendant entity.

23.     According to the Trustee, Defendant JFM Investment Company is an entity through which Decisions Incorporated, and/or Picower transact/transacted business, with a listed mailing address care of Decisions Incorporated at 22 Saw Mill River Road, Hawthorne, New York, 10532; and JFM Investment Company is a Limited Partner of Capital Growth Company,

7

and Decisions Incorporated and/or Picower serve/served as General Partner or Director of JFM Investment Company.

24.     According to the Trustee, Defendant JLN Partnership is a limited partnership with a listed mailing address care of Decisions Incorporated at 22 Saw Mill River Road, Hawthorne, New York, 10532; and Decisions Incorporated and/or Picower serve/served as General Partner or Director of JLN Partnership, and Decisions Incorporated, and/or Picower transact/transacted business through this Defendant entity.

25.     Defendant JMP Limited Partnership is a limited partnership organized under the laws of Delaware, with a principal place of business at 25 Virginia Lane, Thornwood, New York 10594.   According to the Trustee, Decisions Incorporated and/or Picower serve/served as General Partner or Director of JMP Partnership, and Decisions Incorporated, and/or Picower transact/transacted business through this Defendant entity.

26.     According to the Trustee, Defendant Jeffry M. Picower Special Co. is an entity through which Decisions Incorporated, and/or Picower transact/transacted business, with a mailing address care of Decisions Incorporated at 22 Saw Mill River Road, Hawthorne, New York, 10532; and Decisions Incorporated and/or Picower serve/served as General Partner or Director of Jeffry M. Picower Special Co.

27.     According to the Trustee, Defendant Favorite Funds is an entity through which Picower transacted business, with a listed mailing address care of Decisions Incorporated at 22 Saw Mill River Road, Hawthorne, New York, 10532, and Decisions Incorporated and/or Picower serve/served as General Partner or Director of Favorite Funds.

28.     According to the Trustee, Defendant Jeffry M. Picower P.C. purports to be a limited partnership with a listed mailing address at 25 Virginia Lane, Thornwood, New York,

8

New York 10594, and Decisions Incorporated and/or Picower serve/served as General Partner or Director of Jeffry M. Picower P.C., and Decisions Incorporated, and/or Picower transact/transacted business through this defendant entity.

29.     Defendant Picower Foundation is a trust organized for charitable purposes with Picower listed as donor, and Picower and Barbara Picower, among others, listed as Trustees during the relevant time period. Picower Foundation's addresses are reported as 1410 South Ocean Boulevard, Palm Beach, Florida 33480 and 9 West 57th Street, Suite 3800, New York, New York 10019.

30.     According to the Trustee, Defendant Picower Institute for Medical Research is a nonprofit entity organized under the laws of New York, with a principal place of business at 350 Community Drive, Manhasset, New York 11030.

31.     According to the Trustee, Defendant Trust f/b/o Gabrielle H. Picower is a trust established for beneficiary Gabrielle H. Picower, who is the daughter of Picower and Barbara Picower, with Defendant Barbara Picower listed as trustee, and the trust's BLMIS account address reported as 1410 South Ocean Boulevard, Palm Beach, Florida 33480.

32.     On information and belief, the Defendants listed in paragraphs 16 through 30 (collectively the "Picower Entity Defendants") were dominated, controlled and used as a mere instrumentality of Picower to advance his interests in, and to participate in, the Madoff Ponzi scheme. Thus, the Picower Entity Defendants are the alter egos of Picower and of each other.

### THE MADOFF PONZI SCHEME AND
### DEFENDANTS' PARTICIPATION IN THE FRAUD

33.     Shortly before his December 11, 2008 arrest, Madoff confessed that he had been conducting a Ponzi scheme through BLMIS for many years, and he estimated BLMIS' liabilities to be approximately $50 billion.

9

34.     On March 10, 2009, the federal government filed an eleven-count information against Madoff in the criminal case styled *U.S. v. Madoff*, CV-No 09-CR-213 (S.D.N.Y), which is attached as "**Exhibit B**" hereto.

35.     At a plea hearing on March 12, 2009 in Madoff pled guilty to the eleven-count criminal information and admitted under oath that he "operated a Ponzi scheme through. . . [BLMIS]." Madoff also admitted that "[a]s I engaged in my fraud, I knew what I was doing (was) wrong, indeed criminal." *See* **Exhibit "C"** hereto.

36.     Madoff also admitted that, during the relevant time period, he never actually invested any of the funds he received from BLMIS customers, instead depositing the funds into a bank account. Madoff never actually purchased and sold securities in BLMIS customer accounts, instead using client funds simply to pay other, different, clients' purported returns and redemption of principal.

37.     According to the Trustee, as of December 11, 2008, BLMIS had 4,903 accounts with a purported stated value of $64.8 billion as of November 30, 2008.

38.     According to the Trustee, BLMIS made payments and other transfers to the Defendants totaling over $7.2 billion more than Defendants deposited, including $6.7 billion from 1995 to 2008. A schedule of theses transfers, which are attached as Exhibit B to the Trustee's Complaint, are attached separately as **Exhibit "D"** hereto.

39.     Picower, Barbara Picower, and each of the Picower Entity Defendants knowingly and actively participated in the Madoff/BLMIS scheme, and they at all relevant times had actual knowledge or recklessly and consciously avoided the fact that the holdings and profits reported in their BLMIS accounts were false and not a result of legitimate or actual purchases and sales of securities.

40.     Defendants knew, recklessly and consciously avoided, or should have known that the annual returns in their BLMIS accounts were fabricated, as were the underlying securities transactions which purportedly generated these returns.

41.     The Trustee's Complaint describes the Defendants' outright theft of cash through BLMIS, which cash Defendants knew could have only belonged to other innocent Madoff and BLMIS customers.

42.     Picower and the other Defendants could not have been unaware of the fact that they were profiting from fraudulent transactions. Picower purported to follow a "buy and hold" strategy in Defendants' BLMIS accounts, whereby they "bought" stock (typically large cap stock) at its annual low trading prices, and then purportedly sold the stock to generate profits.

43.     The Defendants' "buy and hold strategy" purportedly generated extraordinary and implausibly high annual rates of return. For example, two of the BLMIS accounts controlled by Picower generated annual rates of return of over 100% for four consecutive years from 1996 through 1999. According to the Trustee: "Between 1996 and 2007 defendants 24 regular trading accounts enjoyed 14 instances of supposed annual returns of more than 100%. . . ." During this time period the annual rates of return for certain of Defendants' accounts ranged from 120% to over 550%. Other Defendant accounts had documented earnings of almost 1000%.

44.     Defendants could not have believed that Madoff "beat the market" by such vast amounts on an annualized basis through legitimate "buy and hold" trading. The documentation and trading records available show that Picower and the other Defendants did not participate in the "options trading" strategy that comprised the core of Madoff's money management business. Madoff and BLMIS had no professed or actual expertise or ability to select appropriate large cap stocks for Picower and the other Defendant accounts. Madoff, with a small staff who had no

particularized experience in "buy and hold" trading, never held himself out as a "stock picker."

45.     On the contrary, Picower and the other Defendants knew [recklessly/consciously avoided] that the extra-ordinary returns being generated in their BLMIS accounts were far in excess of what can be achieved by legitimate "buy and hold" trading, or by any other legitimate strategy.

46.     Other trading in Defendants' accounts was obviously fabricated.  For example, as stated in the Trustee's Complaint, in 2000 several of the Defendants' trading accounts reported negative annual rates of return from negative 74% to negative 779%.

47.     Defendants knew or should have known that the account documents and statements that reflected fictitious trades and returns were patently false.

48.     In fact, upon information and belief, Picower and the other Defendants, with the assistance of Picower's associate April C. Freilich ("Freilich"),[1] directed fictitious and backdated trades, with the consent of Madoff, BLMIS and their agents, to manufacture profits and losses in accordance with an overall fraudulent trading strategy developed by Picower.

### The Decisions Incorporated Account

49.     The several BLMIS accounts of Defendant Decisions Incorporated, which was controlled by Picower, provide concrete examples of the obviously fictitious profits Defendants received as a result of their participation in the Ponzi scheme.

50.     These accounts were a primary source of Defendants' cash withdrawals from BLMIS during the relevant time period, yet the accounts reflected virtually no trading activity and very few purported securities positions.

---

[1] Freilich is an officer and/or director of Decisions Incorporated and a limited partner of Defendants Capital Growth Company, JA Special Limited Partnership, JAB Partnership, JEMW Partnership, JF Partnership, and JLN Partnership.  Freilich is also a close personal friend and business associate of Picower's who carried out his directions in connection with Defendants' participation in the BLMIS scheme.  Freilich was close enough to Picower to receive $10 million in his recently probated will.

12

51. Nevertheless, Picower and Freilich signed distribution requests and directed cash "withdrawals" from this account ranging from $50 million to $150 million five or more times per year from 1995 through 2007, for a total of $5,771,339,795.

52. Picower and Freilich directed the withdrawals from the Decisions Incorporated account even though the account maintained a large negative cash balance of more than $6 billion and there was not enough cash in the account to cover the withdrawals.

53. At the time of each withdrawal, Picower and the other Defendants, along with Madoff and BLMIS, knew the withdrawn funds could only be the property of other Madoff customers, including the Plaintiff and the class members.

### Defendants and BLMIS Backdated Purported Transactions to Create Fictitious Profits

54. That Picower, the other Defendants, and Madoff and BLMIS actively conspired to steal the funds of the Plaintiff and the class members is also evidenced by the fact that many purported trades in the Defendants' accounts were back dated. Picower purportedly "sold" positions on a fabricated earlier date to generate phony profits.

55. For example, as stated in the Trustee's Complaint, on or about April 24, 2006, Decisions Incorporated opened a new account with BLMIS known as the "Decisions Incorporated 6" ("Decisions 6") account by a wire transfer on April 18, 2006 of $125 million.

56. Picower instructed BLMIS to backdate trades in this account to January 2006, which was before the Decisions 6 account was even opened.

57. As a result of the fabrication/backdating of trades, the purported net value of securities in the Decisions 6 account by the end of April 2006 had increased by almost $40 million, for a return of 30% in less than two weeks of "purported trading".

58. Picower's scheme to backdate trades in Decisions 6 was designed to generate

13

phony paper profits in the account by picking stocks which had appreciated on a "hindsight basis," and represented part of a continuous pattern of false generation of profits which enabled Picower and the Defendants to pilfer other BLMIS customer accounts for actual cash based upon phony booked profits.

59.     As demonstrated in the Trustee's Complaint, BLMIS records indicate that Picower, Freilich and Madoff employees discussed and clearly understood that the trades in the various Defendants' accounts were being backdated for the purpose of generating phony profits.

60.     For example, according to the Trustee's Complaint, on May 18, 2007, Freilich indicated that the Foundation needed "$20 mil in gains" for January and February and "want[ed] 18% for year[] 07 appreciation," but that she had to check the numbers "with Jeff." Upon information and belief, "Jeff" is Picower. Five days later on May 23, 2007, and presumably after consulting with Picower, Freilich told BLMIS that the numbers she provided earlier were wrong, and the Foundation "needs only $12.3 mil [in gains] for" January and February 2007.

61.     Also, on or about December 22, 2005, Picower and/or Freilich faxed a letter to BLMIS that was signed by Picower, bearing an earlier date of December 1, 2005. This letter directed the sale of specific positions in four of Defendants' accounts. However, the actual underlying transactions could not have taken place in early December, 2005, as the positions sold remained in the Picower account through late December of 2005.

62.     On or around December 29, 2005, Freilich, acting on Picower's behalf, faxed BLMIS a letter signed by Picower, that directed BLMIS to realize a gain of $50 million. Upon instruction from Picower and/or Freilich, BLMIS "sold" large amounts of Agilent Technologies and Intel Corporation stock in various Defendant accounts on a backdated basis. Freilich directed the sale of large amounts of these purported securities on or about December 29, 2005,

14

requesting that the sales be booked to take place on an earlier date, *i.e.*, December 8th or 9th. These trades were backdated by Picower and BLMIS for the purpose of generating phony "paper" profits of approximately $46.3 million, making up most of Picower's requested $50 million gain.

63.     Also according to the Trustee, Picower and BLMIS backdated other purported securities transactions during December 2005, including purported purchases on margin of Google, Diamond Offshore Drilling, Inc., and Burlington Resources, Inc. across several of Defendants' accounts, which resulted in a purported gain for Picower of almost $80 million. These purchases purportedly occurred between January 12 and 20, 2005, but they were entirely fictitious, as the transactions were first reflected 11 months later in Defendants' December 2005 BLMIS account statements.

64.     Defendants and Madoff and BLMIS were aware of the false nature of these transactions and their purpose, which was to generate fictitious profits for Picower and allow him to withdraw cash which came from other BLMIS customer accounts, including those of the Plaintiff and the class members.

**The Picower Foundation Account Reveals Fabricated Securities Transactions**

65.     The publicly available Form 990 Income Tax Returns for the Picower Foundation demonstrate that Picower and BLMIS were engaged in fraudulent and/ or anomalous trading for the purpose of generating false profits in the Picower Foundation account, enabling Picower to withdraw fictitious profits from this and the other Defendant accounts controlled by Picower. These cash withdrawals were effected by taking cash from other customer accounts of BLMIS.

66.     For example, the Picower Foundation's 2007 income tax return reflects a holding of 328,830 shares of Oracle Corporation stock that was purportedly purchased on December 3,

15

2001. No such holdings are disclosed in the Picower Foundation's tax return filings for 2001 through 2005. In fact, the securities were never actually purchased according to Picower's own documentation, but simply fictitiously added to the account in the 2007 return. This had the effect of increasing the Picower Foundation's portfolio value by $7.5 million.

67.    The Picower Foundation's 2005 tax return reflects suspicious and inexplicably large portfolio gains in absolute and relevant terms based upon a small number of stocks. During 2005, the Picower Foundation did not sell any securities in its portfolio and made only four purchases. Nevertheless the portfolio purportedly grew significantly from the gains posted in less than six months in connection with the purchases of Amazon, Apple, Burlington, and Google, amounting to $141.3 million in the aggregate during this period. All four purchases were purportedly made on the same date, July 14, 2005. The unrealized annualized gain from these purchases was almost 100%, which is inordinately and unrealistically high in relation to the annual gain on the S&P 500 Index during this annual period, which was only 5%. These trades were likely backdated, consistent with the Defendants' and BLMIS's pattern of backdating trades to generate fictitious profits.

68.    The Picower Foundation's 2004 tax return reflects Picower Foundation portfolio holdings in Eagle Materials Inc. of 12,853 common shares and 43,215 class B shares that were purportedly purchased November 28, 2001. But no such holdings are disclosed in the Picower Foundation's tax returns for 2001 through 2003. The mysterious appearance on the 2004 return had the effect of increasing the value of the Picower Foundation portfolio by almost $5 million.

69.    The Picower Foundation's 2003 return reflects a holding in Cavco Industries, Inc. of 14,500 shares that were purportedly purchased November 28, 2001, which was the same date as the purported purchase of the Eagle Materials shares noted above. However, no such holding

16

was disclosed in the 2001 or 2002 tax returns for the Foundation. This fictitious holding had the effect of increasing the value of the Picower portfolio.

70. The Picower Foundation's 2002 return reflects a holding in Carmax of 170,436 shares that were purportedly purchased on the same date, November 28, 2001, as were the undocumented Cavco and Eagle Materials purchases described above. But no such holding is disclosed in the 2001 or 2002 Picower Foundation returns. This phony transaction had the effect of increasing the value of the Picower portfolio by $3 million.

71. The Picower Foundation's 2000 return reflects incredibly large portfolio gains in absolute and relative terms demonstrating backdated trading. During 2000, the Picower Foundation realized a gain on the purported sale of securities of $286.8 million on a book value of only $20.1 million, representing a staggering total return of 1,426.9%. The securities sold were purportedly held for a six year period on average. Thus, this return is equal to a compound annual average return of almost 56%, which vastly exceeds the annualized return for any other un-leveraged stock transaction by any other known market participant. This rate of return also is demonstrably false and contrasts sharply and unrealistically with the compound average annual return of the S&P 500 Index during this period of only approximately 15%.

72. The factual allegations set forth above demonstrate a consistent pattern of fraudulent activity, the result of which was that the Defedants' accounts generated tremendous apparent but false profits, which Defendants then withdrew from their BLMIS accounts with the consent of Madoff and BLMIS. In many instances, BLMIS, Picower and the Defendants simply manufactured positions in their respective accounts for the purpose of allowing Picower to "sell" the manufactured positions and withdraw cash based upon a phony sale.

73. As a result of the foregoing conduct, Defendants participated in and profited from

the fraud on other BLMIS customers, and the Defendants converted the cash (there were no securities) of other BLMIS account holders to pay themselves these fictitious profits.

## CLASS ACTION ALLEGATIONS

74.    Plaintiff brings this action as a class action pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure.  The definition of the Plaintiff class in this action is: all SIPA Payees, but only with respect to claims, or portions thereof, not assigned to the Trustee. (the "Class").  The Class does not included Defendants herein.

75.    The class meets the requirements for class certification under Rule 23(a) of the Federal Rules of Civil Procedure.

    a.    *Numerosity*.  The Class consists of at least several thousand BLMIS account holders who are members of the Class as defined in paragraph 74 above.    The exact number of class members is currently unknown to the Plaintiff, and can only be ascertained through appropriate discovery.  This number is so numerous that joinder of all members of the Class is impracticable.  The members of the Class reside throughout the United States.

    b.    *Commonality*.  There are questions of law and fact which are common to the representative party and each member of the class including: (i) whether, and to what extent the Defendants participated in the Madoff Ponzi scheme and conspired with BLMIS and Madoff; (ii) whether Defendants converted the funds of other BLMIS account holders; (iii) the extent to which Defendants were unjustly enriched as a result of their participation in the Ponzi scheme; (iv) whether the Defendants violated the Florida Civil Remedies for Criminal Practices Act Chapter 772, Florida Statutes, ("Florida RICO") by acting in

18 of 27

concert with BLMIS to convert the cash of the members of the class; (v) whether Plaintiff and the class members have sustained damages as a result of Defendants' conduct, and the proper measure of such damages; (vi) whether Plaintiff and the class members are entitled to an award of punitive damages or other exemplary damages against Defendants.

c. *Typicality.* Plaintiff's claims are typical of each of those of the class members. Plaintiff maintained a BLMIS account, and is a SIPA Payee who has not assigned her claim, or a portion of her claim, to the Trustee, thereby having suffered the same type of injury as did other class members.

d. *Adequacy*: Plaintiff will fairly and adequately represent and protect the interest of the Class and has no interest antagonistic to those of the other class members. Plaintiff has retained experienced counsel competent in litigation involving the claims at issue and in class litigation.

76. This class also meets the requirements of Rule 23(b)(3) of the Federal Rules of Civil Procedure. The common issues outlined herein predominate over any individual issues in this case. A class action is superior to all other available means for the fair and efficient adjudication of this controversy because: (1) it is economically impracticable for class members to prosecute individual actions against Defendants; (2) Plaintiff is aware of no other litigation seeking to recover on the claims asserted herein against Defendants; (3) it is desirable to concentrate these claims against Defendants in a single forum so as to avoid varying and disparate results; and (4) there is no difficulty likely to be encountered in the management of this case as a class action.

## COUNT I
## CIVIL CONSPIRACY

77.    Plaintiff re-asserts the allegations in paragraphs 1 through 76 as if fully set forth herein.

78.    Madoff has pled guilty to an eleven-count criminal information and admitted that he operated a fraudulent Ponzi scheme through BLMIS.

79.    Defendants, on the one hand, agreed with Madoff and BLMIS, on the other hand, to unlawfully divert and convert the cash of other innocent BLMIS account holders, including Plaintiff and the class members, for the benefit of the Defendants and Madoff and BLMIS.

80.    Defendants engaged in overt acts in furtherance of the conspiracy as set forth above, which included: (a) participating in and directing the preparation of false documentation; (b) recording fictional profits in their respective BLMIS accounts; and (c) withdrawing such fictional profits knowing that they were the funds of other BLMIS account holders.

81.    Defendants committed additional overt acts in pursuance of the conspiracy by concealing the true state of affairs from the IRS, securities regulators and other customers of BLMIS, by, *inter alia*, filing false statements in connection with their tax returns that purported to show trading in Defendants' accounts which in fact did not occur.

82.    As a result of Defendants' conduct, Plaintiff and the Class have suffered financial injury and damages, which include, but are not limited to, lost investment principal, income and returns on their bona fide cash investments at BLMIS, and tax payments made in connection with reported but non-existent trading profits.

WHEREFORE, Plaintiff requests judgment in her favor against Defendants for compensatory damages, prejudgment interest, punitive damages, and such other and further relief as is just and proper.

## COUNT II
## CONVERSION

83.     Plaintiff re-asserts the allegations contained in paragraphs 1 through 76 above as if fully set forth herein.

84.     Plaintiff and the class members were in possession of valuable property, including the cash in their BLMIS accounts.

85.     Defendants, through improper means, have obtained the use of the property of the Plaintiff and the class members, and have wrongfully deprived the Plaintiff and the class members of the right to possess, and the use of, their property for a permanent or indefinite term.

86.     Plaintiff and the class members have suffered damages as a result of Defendants' conduct, which include, but not limited to, lost investment principal, income and returns on their bona fide cash investments at BLMIS, and tax payments made in connection with reported but non-existent trading profits.

87.     Defendants had the specific intent to harm the Plaintiff and the class members.

WHEREFORE, Plaintiff requests judgment in their favor against Defendants for compensatory damages, prejudgment interest, punitive damages, and such other and further relief as is just and proper.

## COUNT III
## UNJUST ENRICHMENT

88.     Plaintiff re-asserts the allegations in paragraphs 1 through 76 as if fully set forth herein.

89.     Defendants have benefited from their unlawful acts and conspiracy through the overpayment of proceeds from securities purportedly purchased and sold in their BLMIS accounts.

90.     Defendants improperly received funds from Plaintiff and the class members as a result of the deliberate misstatement of their BLMIS account holdings and the false profits generated in such accounts.

91.     It would be inequitable for Defendants to be permitted to retain the benefit of their wrongful conduct.

92.     The Plaintiff and the class members are entitled to the establishment of a constructive trust consisting of the ill gotten gains received by Defendants, to be disgorged or otherwise paid to the class members.

WHEREFORE, Plaintiff requests judgment in her favor and against each Defendant for disgorgement/restitution, punitive damages, and such other and further relief as is just and proper.

## COUNT IV
## CONSPIRACY TO VIOLATE THE FLORIDA CIVIL REMEDIES
## FOR CRIMINAL PRACTICES ACT (FLORIDA RICO)

93.     Plaintiff re-asserts the allegations in paragraphs 1 through 76 as if fully set forth herein.

### Underlying BLMIS Enterprise

94.     Plaintiff and the class members are "persons" within the meaning of § 772.104, Florida Statutes. Madoff, BLMIS and Defendants are "persons" with the meaning of § 772.103, Florida Statutes.

95.     Under § 772.102(3), Florida Statutes, an "enterprise" is defined as "any individual, sole proprietorship, partnership, corporation, business trust, union chartered under the laws of the state, or any other legal entity or any unchartered union, association, or group of individuals associated in fact although not a legal entity; and the term includes illicit as well as

licit enterprises . . . ." BLMIS constituted such an enterprise.

96.     Madoff, with criminal intent, operated the enterprise through a pattern of criminal activity though the enterprise as defined by § 772.103(1) and 772.103(2), Florida Statutes, and he has participated in the conduct of, or is otherwise in control of, and operated the enterprise by participating in and documenting phony, profitable transactions in Defendants' BLMIS accounts.

97.     The enterprise has an ascertainable structure and hierarchy that set it apart from the mere commission of the predicate acts (specified below), and that form a pattern of racketeering activity in which Madoff actively engaged.

**Predicate Act of Underlying RICO Violation**

98.     Section 772.102(a)22, Florida Statutes, specifies that "criminal activity" includes any act indictable under Chapter 817 of the Florida Criminal Code (relating to fraudulent practices, false pretenses, and fraud generally).

99.     Section 772.1029(b), Florida Statutes, specifies that "criminal activity" includes any conduct subject to indictment or information listed in the federal RICO statute, 18 U.S.C. § 1961(1), which includes Title 18 section 1341 (relating to mail fraud) and section 1343 (relating to wire fraud).

100.     Madoff has admitted to criminal activity demonstrating a systematic ongoing course of criminal conduct with the intent to defraud the BLMIS customers, including the Plaintiff and the class members, based on the following predicate acts: (a) a scheme to defraud and obtain property with the intent to obtain property by false or fraudulent pretenses, representations or promises as well as by unlawful misrepresentations in violation of § 817.034(4), Florida Statutes; (b) federal mail fraud; (c) federal wire fraud.

## Pattern of Racketeering Activity

101.    As set out above, Madoff has engaged in a "pattern of criminal activity" as defined under § 772.102(4), Florida Statutes, by committing at least two acts of criminal activity indictable as violations of Chapter 817, Florida Statues, and mail and wire fraud within the past five years.

102.    Each predicate act was related and had as its purpose the criminal diversion of funds from customer accounts at BLMIS in connection with a conspiracy being conducted by BLMIS and Madoff.

103.    This conduct did not arise out of single contract or transaction, but was a pervasive scheme that injured class members over many years.  Each predicate act was related, had a similar purpose, involved the same or similar participants and method of commission, had similar results, and impacted the class member victims in a similar fashion.

104.    The predicate acts specified above which Madoff committed, and which Defendants conspired to commit, were related to each other in furtherance of the scheme implemented by the enterprise.  These acts were committed over a long period of time from at least 1995 through December 2008.

## Defendants' Conspiracy to Commit RICO Violations

105.    "Criminal activity" includes not only direct commissions of predicate acts, but also conspiracies and solicitations to commit predicate acts under § 772.102(1), Florida Statutes.

106.    At all relevant times, Defendants agreed and conspired to participate, directly and indirectly, in the scheme described above through a pattern of racketeering activity in violation of § 772.103(4).

107.    At all times the Defendants knew that BLMIS and Madoff were conspiring with

24

them with the objective of diverting and converting money from other BLMIS customer accounts for the benefit of Defendants.

108. The Defendants knew that BLMIS and Madoff were engaged in the misrepresentations and omissions and fraudulent conduct described in Exhibits B and C hereto, rendering Defendants liable for conspiracy to commit the criminal acts set forth therein.

109. Defendants conspired to commit violations of § 772.103, Florida Statutes, as alleged in paragraphs 49 through 73 above.

110. The Defendants committed and/or caused to be committed a series of overt acts in furtherance of the conspiracy alleged herein to effect the objectives of the scheme described above, including the acts alleged in paragraphs 54 through 73 above.

111. By directly instructing Madoff and BLMIS employees to book such phony transactions which generated phony profits, among other things, the Defendants controlled and enabled the fraud to convert the funds of other innocent BLMIS account holders.

112. Plaintiff, and the class members, have been injured as a result of Defendants' Florida RICO violation, which injury includes the loss of investment principal, profits and returns on their bona fide cash investment at BLMIS, and tax payments made in connection with reported but non-existent trading profits.

WHEREFORE, Plaintiff and the class members request entry of judgment in their favor and against Defendants jointly and severally for compensatory damages, as tripled pursuant to § 772.104(1), Florida Statutes, as well as the attorneys fees and court costs authorized under § 772.104(1), Florida Statutes, and such further relief as this court deems just and proper.

## CLAIM FOR PUNITIVE DAMAGES

113.    Defendants had actual knowledge of the wrongfulness of their conduct and the high probability of injury and damage to the class. Defendants disregarded that knowledge intentionally and recklessly in pursuing their wrongful, deceitful, deceptive and illegal conduct.

114.    As a direct and proximate result of Defendants' fraudulent, willful and reckless misconduct, the Plaintiff asserts a claim for punitive damages for each cause of action herein for which such damages are allowable under Florida law, in an amount to be determined by a jury.

## CLAIM FOR RELIEF

Plaintiff seeks the following relief from this Court: (a) a judgment in the favor of plaintiffs in the class against Defendants on the claims specified in this Complaint; (b) an award of compensatory damages; (c) triple the amount of actual damages incurred for those claims which tripling of damages is authorized; (d) an equitable accounting and imposition of constructive trust on Defendants assets; (e) disgorgement of Defendants' ill gotten gains or restitution of the payments and property received by Defendants; (f) attorneys fees pursuant to §772.104(1), Florida Statutes, (g) punitive damages for those claims where such damages are authorized; (h) prejudgment interest; (i) fees, court costs and expenses of this litigation; (j) all other relief that the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

DATED: this 17th day of February, 2010, by:

BEASLEY HAUSER KRAMER
LEONARD & GALARDI, P.A.
505 South Flagler Drive, Suite 1500
West Palm Beach, Florida 33401
Telephone: (561) 835-0900
Facsimile: (561) 835-0939
galardi@beasleylaw.net
*Attorneys for Plaintiff and the Class*

By: _____
James W. Beasley, Jr.
Florida Bar No. 145750
Joseph G. Galardi
Florida Bar No. 180572

-and-

Lesley Blackner, Esquire
Florida Bar No. 654043
BLACKNER, STONE & ASSOCIATES
123 Australian Avenue
Palm Beach, FL 33480
(561)659-5754
(561)659-3184 (fax)
lblackner@aol.com
*Co-counsel for Plaintiff and the Class*

Helen Davis Chaitman
New York Bar No. 1236678
BECKER & POLIAKOFF
45 Broadway 11th Floor
New York, NY 10006
(212) 599-3322
(212) 557-0295 (fax)
*Co-counsel for Plaintiff and the Class*