# EXHIBIT I

Page 1

```
 1

 2   UNITED STATES BANKRUPTCY COURT

 3   SOUTHERN DISTRICT OF NEW YORK

 4   Adversary Case No. 08-01789-brl

 5   - - - - - - - - - - - - - - - - - - - - - - - -x

 6   SECURITIES INVESTOR PROTECTION CORPORATION,

 7                        Plaintiff,

 8             v.

 9   BERNARD L. MADOFF INVESTMENT SECURITIES, LLC,

10                        Defendant.

11   - - - - - - - - - - - - - - - - - - - - - - - -x

12

13             United States Bankruptcy Court

14             One Bowling Green

15             New York, New York

16

17             January 13, 2011

18             11:18 AM

19

20

21

22   B E F O R E:

23   HON. BURTON R. LIFLAND

24   U.S. BANKRUPTCY JUDGE

25
```

1

2    HEARING re Objection to Motion by Trustee to Approve Settlement

3    Agreement with Picower BLMIS Account Holders and Cross-Motion

4    to Adjourn Hearing and for Leave to Take Discovery filed by

5    Laurence May on behalf of Adele Fox. with hearing to be held on

6    1/13/2011 at 10:00 AM at Courtroom 623 (BRL) (Attachments: #

7    (1) Exhibit A - Fox Plaintiffs' Appellate Brief# (2) Exhibit

8    B - Fox Plaintiffs' Discovery Request).

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24    Transcribed by:  Pnina Eilberg

25

1

2    A P P E A R A N C E S :

3    BAKER & HOSTETLER LLP

4         Attorneys for Trustee

5         45 Rockefeller Plaza

6         New York, NY 10111

7

8    BY:   DAVID J. SHEEHAN, ESQ.

9

10

11   SECURITIES INVESTOR PROTECTION CORPORATION (SIPC)

12        805 15th Street N.W.

13        Suite 800

14        Washington, DC 20005

15

16   BY:   MS. JOSEPHINE WANG, ESQ.

17

18

19   BECKER & POLIAKOFF

20        Attorneys for Marshall Claimants and Other Claimants

21        45 Broadway

22        11th Floor

23        New York, NY 10006

24

25   BY:   HELEN DAVIS CHAITMAN, ESQ.

```
 1

 2   COLE, SCHOTZ, MEISEL, FORMAN & LEONARD, P.A.

 3        Attorneys for Adele Fox and Fox Plaintiff Class

 4        900 Third Avenue

 5        16th Floor

 6        New York, NY 10022

 7

 8   BY:   LAURENCE MAY, ESQ.

 9         JOHN H. DRUCKER, ESQ.

10

11

12   SCHULTE ROTH & ZABEL LLP

13        Attorneys for Picower BLMIS Account Holders

14        919 Third Avenue

15        New York, NY 10022

16

17   BY:   MARCY RESSLER HARRIS, ESQ.

18         WILLIAM D. ZABEL, ESQ.

19

20

21   SANDAK HENNESSEY & GRECO LLP

22        707 Summer Street

23        Stamford, CT 06901

24

25   BY:   MARC J. KURZMAN, ESQ.
```

1                    P R O C E E D I N G S

2          MR. SHEEHAN:  Good morning, Your Honor.  David Sheehan

3   with Baker Hostetler on behalf of Irving H. Picard, the Trustee

4   for Bernard L. Madoff Investment Securities LLC.

5          MS. WANG:  Good morning, Your Honor.  Josephine Wang

6   for the Securities Investor Protection Corporation.

7          MS. DAVIS CHAITMAN:  Good morning, Your Honor.  Helene

8   Davis Chaitman of Becker & Poliakoff on behalf of what we've

9   called the Marshall plaintiffs and other claimants whose claims

10  have not been allowed by the trustee.

11         MR. MAY:  Good morning, Your Honor.  Laurence May of

12  Cole Schotz, we represent Adele Fox and members of the Fox

13  plaintiff class.

14         MR. DRUCKER:  Good morning, Your Honor.  John Drucker,

15  also from Cole Schotz, also on behalf of the Fox plaintiffs.

16         MS. HARRIS:  Good morning.  Marcy Harris and William

17  Zabel from Schulte Roth & Zabel on behalf of the Picower

18  parties.

19         THE COURT:  All right.  Mr. Sheehan, it's your motion/

20         MR. SHEEHAN:  Thank you, Your Honor.

21         As Your Honor knows, this is the return date of a

22  motion made by the trustee, pursuant to Rule 9019, seeking the

23  approval of a settlement made with the defendant Picower in

24  connection with an adversary proceeding initiated in 2009.

25         The amount of the settlement is five billion dollars.

1   I think I should almost be able to sit down after saying that,

2   in terms of whether or not we've reached the lowest range of

3   reasonableness but I believe, in light of the objections that

4   have been filed; I'm required to make something of a record

5   here this morning, Your Honor.

6           As you know, there are only three objections, two of

7   them are very similar in nature and they suggest that we didn't

8   -- we took too much.  There's another objection that said we

9   took too little and echoing a rhyme that we're all very

10  familiar with, I think the trustee got it just right.

11          I think what we've done here today is an advance with

12  regard to the customers and claimants in this case that is

13  significant.  It is, indeed, a milestone and I'll get into that

14  in some detail later, Your Honor.

15          As Your Honor well knows, this is a not a hearing with

16  regard to the facts and the law.  Your Honor is not going to

17  address or decide those.  The issue is whether or not we have

18  indeed surpassed the lowest range of reasonableness and as I've

19  suggested I think we've far exceeded that.

20          Let me start first, if I may, with the background of

21  this matter and how it arrived here today.  As I've noted, Your

22  Honor, we started with a complaint some time ago; thereafter

23  there was a motion to dismiss to which we responded.  In that

24  complaint we initially alleged the amount due to be 6.7 billion

25  dollars and we went into some detail as to why we thought we

08-01789-smb  Doc 12290-8  Filed 12/18/15  Entered 12/18/15 17:44:48  Exhibit
SIPC V. BERNARD L. MADOFF INVESTMENT SECURITIES
Pg 8 of 44

Page 7

1   were entitled to receive that on behalf of the customers and

2   creditors of BLMIS.

3           Thereafter, during the course of further investigation

4   by the forensic accountants engaged in by the trustee, it was

5   determined that the full amount, full amount taken out by Mr.

6   Picower and related accounts that he had was 7.2 billion

7   dollars.

8           I should note at this point, Your Honor, that the

9   settlement today that we are offering to the Court, when

10  combined with the efforts that we, in concert with the U.S.

11  Attorney's office, will result in an overall settlement with

12  the Picowers for the entire amount of the money taken out by

13  Mr. Picower through those related accounts, 7.2 billion

14  dollars, all of which will be handled by Mr. Picard as the

15  trustee and as the special master for distribution to customers

16  in this case.

17          After those motions were filed subsequent negotiations

18  took place between the trustee's counsel and the counsel for

19  Mr. Picower.  Sadly and tragically Mr. Picower died during the

20  course of those negotiations but they continued.  And to say

21  that they were rough and tumble would be putting it mildly,

22  these are not easy issues and there are excellent attorneys on

23  both sides, I say that somewhat humbly but nonetheless.

24          We went ahead, as competent counsel which is part of

25  the 9019 inquiry and we did our job on both sides and we went

1   back and forth quite a bit.  In the spring of 2010 we had

2   arrived at a point where we were close.  We were at, as our

3   papers reflect, about 4.8 billion dollars.  And it was at or

4   around that time when the Fox Marshall folks first arrived in

5   the form of a complaint that they filed down in Florida seeking

6   to institute a class action against the Picowers, which Your

7   Honor has very much familiarity with as a result of the motion

8   that was then brought, which resulted in a preliminary

9   injunction of that action, which I will also get into later.

10          At or around that same time, Your Honor, we reached

11   out, because if you were going to expend this type of money in

12   a settlement what you're looking for as a third party is what?

13   Closure.  We're looking to end this.  If we're going to

14   reimburse the estate these kind of dollars you're looking for

15   that.

16          In connection with that goal, we reached out to the

17   Department of Justice the Southern District of New York who

18   clearly was involved in a very active and major investigation

19   and prosecution of claims against the Madoff enterprises and

20   discuss with them what we were doing.

21          It was at that time that we got together, as it were,

22   and worked together as a team and I think the public is well

23   aware, as Your Honor is today, of the outcome of that team

24   effort which resulted in ultimately the 4.8 becoming five and

25   the balance of the monies being forfeited, as it were, by the

08-01789-smb Doc 12290-0 Filed 12/18/15 Entered 12/19/15 17:44:48 Exhibit
08-01789-smb Doc 381 Filed 12/18/15 Entered 12/18/15 17:44:48 Main Document
Pg 9 of 44

1  United States Attorney's office.  Indeed, ultimately all the

2  money was forfeited and I will also get into that later.

3        So what we have, Your Honor, is this:  We have, I

4  think, all of the makings of a 9019 motion.  We have competent

5  counsel who have engaged in negotiations, issues that are not

6  without doubt.  By way of example, one raised by my adversaries

7  here this morning by way of objection, is that somehow they

8  think we should be limited to the six year period and somehow

9  only 2.4 billion dollars should be sought by the trustee.  That

10  by seeking five he somehow is seeking too much.  Respectfully

11  we disagree; we think they're wrong on both the law and the

12  facts.

13        The law provides, the discovery rule in the State of

14  New York, that we can go back beyond the six year period so

15  long as indeed there is an innocent investor who we can bring

16  forth and establish the fact that through their own efforts

17  they could not have found out about the fraud until December of

18  2008 when Mr. Madoff came forward.

19        We believe that there are literally dozens of innocent

20  investors and respectfully we've suggested that Fox and

21  Marshall would suggest that they were innocent and indeed would

22  fulfill the criteria required under that statute.

23        Needless to say, there was a risk associated with

24  that, not a lot of law on it.  We're very comfortable, as the

25  trustee's counsel, that we're right and we argued that back and

```
1    forth because the objectors are right, the six year number is

2    2.4 billion dollars.  The other 4.8 billion dollars goes back

3    to 1983.  The forensic accountants engaged in by the trustee

4    unraveled this fraud all the way back to its inception, beyond

5    1983.  And starting in 1983, coming forward, we then found the

6    7.2 billion dollars that made its way back and forth through

7    those accounts ultimately into the hands of Mr. Picower and

8    these related accounts.

9            Therefore, there was risk associated with going

10   forward but on the other hand there were other things

11   confronting the Picowers and in terms of how they wanted to

12   approach this and needless to say that give and take resulted

13   in the settlement that's before you today.  And I respectfully

14   submit, as I said at the outset, that we meet the criteria

15   established for 9019.

16           So what are those objections again?  One objection

17   was, as I suggested that the Serabians suggest that we got not

18   enough.  That if we got every cent that the Picowers put

19   through BLMIS we did not get enough.  That somehow we should

20   have pursued profits and pursued other tracing of all these

21   monies going back to 1983 and look for that as well.

22           First of all, it's a settlement.  I think the

23   settlement is an acknowledgement that you don't get everything

24   that you're looking for.  On the other hand, in this particular

25   instance, I would submit to Your Honor, that getting 7.2
```

08-01789-smb   Doc 12290-1   Filed 12/18/15   Entered 12/19/15 17:44:48   Exhibit
08-01789-smb   Doc 3818   Filed 04/11/16   Entered 04/11/16 17:56:08   Main Document
Pg 12 of 44

1    billion dollars is basically getting everything that we were

2    entitled to and going beyond that would have been beyond what

3    we were required to do and beyond what the trustee should be

4    doing in terms of working on behalf of the customers and

5    creditors.

6          So I believe that the Serabian objection is without

7    merit.  The objections of Fox and Marshall offer a little bit

8    more detail.  They suggest, as I've alluded to earlier, that

9    somehow we've asked for too much, that somehow we should not be

10   getting all of this money.  That only 2.4 billion dollars

11   should be given to the trustee to go to the benefit of, as we

12   put it, the net losers or those with allowed net equity claims.

13         They're, again, wrong on the law and wrong on the

14   facts.  Let me explain why I believe that to be so.  First of

15   all, we have to go back to the beginning, as it were Your

16   Honor, and we've done this more than once in this case but

17   somehow we seem to have to revisit it to bring discipline and

18   clear thinking to what we're talking about here.

19         What we're talking about is the SIPC statute or SIPA

20   and under SIPA, as Your Honor well knows, there is a priority

21   of claimants and that priority goes back to the Chandler Act,

22   and we've talked about this on the record before, of those

23   customers who have a positive net equity in their account at

24   the time of the demise of the brokerage house.

25         In this particular case, because we are dealing with a

08-01789-smb   Doc 12290-9   Filed 12/18/15   Entered 12/19/15 17:44:48   Exhibit
Document
SIPC v. BERNARD L. MADOFF INVESTMENT SECURITIES
Pg 12 of 44

1    Ponzi scheme, a fact that many people seem to want to forget

2    and suggest that there were earnings and profits when there

3    were none, nonetheless what we're dealing with is a Ponzi

4    scheme.  So in a Ponzi scheme what is left?  What are we trying

5    to get by virtue of going after these dollars?  We're trying to

6    get back other people's money and that's exactly what we were

7    trying to do here.

8         At this point I'd like to commend Barbara Picower

9    because what she recognized was after the fact, after this all

10   went down, when it became clear what Mr. Madoff was all about,

11   she stepped up and stepped up big time and gave to the trustee

12   and to the U.S. Attorney a total of 7.2 plus billion dollars,

13   every cent that the Picowers ever received out of this estate.

14        So why are they wrong then about the 2.4?  Well,

15   they're wrong because all those monies are other people's

16   money.  They are, in fact, the quintessence of customer

17   property.  There is nothing in this case, because it is a Ponzi

18   scheme, except customers' property.  There wasn't anything else

19   to be dealt with.

20        So what are we about here?  Is there -- are we here,

21   on behalf of the trustee as his counsel, only focusing upon

22   that priority claim?  Of course not.  Should we, therefore, be

23   limited to that aspect of the case?  Of course not.  Our job

24   here is to fulfill the claims of everyone who has filed a claim

25   in this proceeding.  Our goal, our goal and a worthy one, is

08-01789-smb Doc 12290-2 Filed 12/18/15 Entered 12/18/15 17:44:48 Exhibit
SIPC V. BERNARD L. MADOFF INVESTMENT SECURITIES Main Document
Pg 14 of 44

Page 13

1  not only to get the twenty billion dollars that is due to all

2  the net losers in this case, and I submit to Your Honor we've

3  made a fair start by combining all of the monies to a total of

4  almost ten billion dollars to date, but we go beyond that.

5           Mr. Picard is not the trustee for just net losers or

6  those with allowed net equity claims.  He is the trustee for

7  BLMIS and all of the customers and creditors.  He indeed

8  represents Fox and Marshall who filed claims in this

9  proceeding.  Who, because they got more money than they put in,

10  do not have a right to priority but do have a claim and so does

11  everyone else who's a net winner and so does everyone else who

12  is a net looser.  All of them have a claim for fraud and all of

13  those are general creditors.

14           The goal here of this trustee is not just to get the

15  forty -- the twenty billion dollars back to satisfy that

16  priority and bring those people, those folks that are the net

17  losers, on a parody with the clients being represented by the

18  attorneys here today, the net winners.

19           We then have the net winners and net losers under the

20  priority of the statute together and they, in common, have

21  what?  Correctly stated about a forty-five billion dollar claim

22  and it is the goal of this trustee to get every cent of that

23  back.  He has filed claims here for ninety billion dollars and

24  it is our intention to not only recover the twenty billion

25  dollars that will satisfy all the net looser claims but in

08-01789-smb   Doc 12290-9   Filed 12/18/15   Entered 12/18/15 17:44:48   Exhibit
08-01789-smb   Doc 381   Filed 12/18/15   Entered 12/18/15 17:44:48   Main Document
Pg 15 of 44

1    addition to that as much money as we can to satisfy the claims

2    of all of the people here.

3         It's very, very important to understand that aspect of

4    the statute and to not isolate the trustee's efforts to those

5    of just net losers.  The fact that the Fox Marshall claimants

6    did not -- one of them did get allowed actually but is looking

7    for more because they want the fictitious statement, issue for

8    another day in the circuit, and the other is the denied claim

9    as a net winner but both of them, both of them, have, assuming

10   that the trustee's successful in that equity, valid, general

11   unsecured creditor claims that will ultimately come before this

12   Court with a measure of damages for which we will respond to

13   the extent that we've created a general statement.

14        So for them to suggest that somehow we should be

15   limited to 2.4 or somehow the six year period circumscribes the

16   activities of this trustee is dead wrong.  Wrong on the law and

17   wrong on the facts.

18        So where do we go from there?  We go to the fact that

19   the trustee, at this point, has available to him the ten

20   billion dollars and he's looking for the other ten, he's going

21   to pay the rest of that to the losers, doesn't in any way

22   derogate from the fact that these claimants do have claims and

23   will be dealt with here.  But not -- not to the derogation of

24   the net losers.

25        Let's follow through on the logic that is being

08-01789-smb   Doc 12290-2   Filed 12/18/15   Entered 12/19/15 17:44:48   Exhibit
08-01789-smb   Doc 381   Filed 12/18/15   SIPC v. BERNARD L. MADOFF INVESTMENT SECURITIES   Document
Pg 15 of 44

Page 15

 1  offered by Fox and Marshall.  Their suggestion is 2.4 should

 2  somehow just go to net losers and the balance should be

 3  available to who?  Net winners who, by definition, already have

 4  the money of the net losers.  That doesn't work in a Ponzi

 5  scheme.  Is that fair?  Is that equitable?  Is equity a quality

 6  in the bankruptcy court?  Of course it is, it is the foundation

 7  upon which this Court rests.  For them to suggest that somehow

 8  there should be a carve out of these monies and they should

 9  receive it when they're already sitting there with other

10  people's money as net winners when the net losers would not --

11  would not be made whole is totally inappropriate.  Conflicts

12  not just with the SIPA statute but with basic principals

13  underpinning the bankruptcy code.  How can that be permitted?

14  Of course it can't and quite frankly I don't think ultimately

15  that's what they're suggesting.

16          What they're suggesting is, is that somehow they

17  should be recognized.  They too were victimized here and to

18  that the trustee absolutely agrees.  Of course they were.

19  Everyone who relied upon those statements was defrauded, we're

20  not suggesting otherwise.  We're not suggesting that they don't

21  have a claim; it's just not a priority claim.  It's different.

22  It's a general unsecured claim.

23          And quite frankly, looking through that prism, Your

24  Honor, at the class action that exists down in Florida, that's

25  really not an appropriate class.  They're trying to represent

1   just net winners, overlooking the fact that the net losers are

2   not only behind those net winners because they didn't get all

3   their money back, but they too have what, fraud claims.  The

4   same fraud claims that they suggest they're advancing on behalf

5   of that class.  Of course that class hasn't been certified and

6   I would suggest to Your Honor, for the facts I've just

7   suggested to you, it would never be certified because they

8   don't represent all of the people who suffer as a result of

9   this fraud.  They're trying to represent a select -- carve them

10  out, reach out to them in a way that's inappropriate,

11  unsupported by fact and law.

12       The other aspect of their complaint here, Your Honor,

13  today which I'd like to go through very quickly, is the fact

14  that somehow our injunction is inappropriate.  Your Honor, I

15  think one of the -- rather than go through a lot of the law

16  that's been cited here I want to just briefly go to Judge

17  Bernstein's decision in Dreier which, I think quite frankly, is

18  a wonderful opinion with regard to the law.  It sets forth the

19  9019 principles and also the appropriateness of an injunction

20  with regard to a third party, as the Picower parties are.

21       And as Judge Bernstein teaches us, there are a couple

22  of elements that have to be in place here.  One is, is that

23  Your Honor has to have subject-matter jurisdiction.  I think

24  that's beyond cavil here but let's just walk through that.

25       Subject-matter jurisdiction not over the settlement

1    but over the claims that are being disputed here, the claims

2    that Fox and Marshall suggesting that they have that are

3    somehow "independent".  They've offered nothing other than

4    theories and causes of action but nothing to suggest how their

5    claims do not relate to or arise out of this proceeding.

6    Indeed, there's a critical nexus between their complaints, as

7    evidenced by the fact that what did they do when they filed

8    their complaint?  They copied that of the trustee practically

9    word for word.

10   What does that tell you?  What they're seeking to do

11   is go after the same property of the estate that must be

12   protected here by virtue of this injunction so that this cannot

13   be interfered with in terms of the proper administration of the

14   SIPA proceeding.  So subject-matter jurisdiction clearly vests

15   with Your Honor.

16   If we look at Metro Media, and Judge Bernstein did, it

17   talks about something that you do not have, third party

18   injunctions, unless you have uniqueness associated with the

19   endeavor.  Again, as I said at the outset Your Honor, I believe

20   this is a unique and quite frankly great day for the customers

21   of BLMIS.

22   The ability to achieve a settlement of this magnitude

23   resulting in all of the money being sought by the trustee,

24   together with the U.S. Attorney's office coming back to all the

25   customers.  I cannot think of a more unique setting where it

 1    would be more appropriate, more appropriate to do what?  Make

 2    sure that this settlement is approved and arrived at in a way

 3    that makes it work.

 4           And one of the things that Ms. Picower is entitled to

 5    and is also taught to us by Judge Bernstein and Judge, for some

 6    reason my colleagues seem to think that Judge Batts (ph.) I'm

 7    looking at wrong opinion -- I'm looking at the right opinion.

 8    What Judge Bernstein suggested in there was that you can give a

 9    third party the benefit of that injunction, why?  Because if

10    they're going to step up in a way and make a significant, and

11    in this case very significant, contribution for the benefit of

12    the estate they should get the benefit of an injunction to make

13    sure that third parties don't come after them.

14           Now my colleagues have suggested that our injunction

15    is somehow too broad, too indefinite, too vague.  Indeed that

16    was part of the problem in Dreier and again Judge Bernstein

17    gave us guidance and instructions on how to deal with that.

18    And what he suggested was is that the best way to deal with

19    that is to make sure that that injunction relates only to what?

20    Claims that belong to the trustee, claims that are derivative.

21           And Your Honor, I just impose upon you for one more

22    moment here to read into the record, because I think it is

23    significant, the injunction that we're seeking to achieve here.

24    And this injunction would apply as follows:  "To any BLMIS

25    customer or creditor of the BLMIS estate who filed or could

08-01789-smb   Doc 12290-2   Filed 12/18/15   Entered 12/18/15 17:44:48   Exhibit
08-01789-smb   Doc 9819   Filed 04/13/15   Entered 04/13/15 16:56:16   Main Document
Pg 19 of 44
Pg 20 of 45

SIPC v. BERNARD L. MADOFF INVESTMENT SECURITIES

Page 19

```
 1     have filed a claim in the liquidation, anyone acting on their

 2     behalf or in concert or in participation with them or anyone

 3     whose claim in any way arises from or is related to," words

 4     right out of the statute, "to BLMIS or the Madoff PONZI scheme

 5     is hereby permanently enjoined from asserting any claim against

 6     the Picower BLMIS account holders or the Picower releasees that

 7     is duplicative or derivative of the claims brought by the

 8     trustee or which could have been brought by the trustee against

 9     the Picower BLMIS account holders or the Picower releasees".

10            Your Honor, I think we've taken the teaching of Judge

11     Bernstein to heart.  We indeed limit our injunction to

12     derivative claims, that which could have been brought by the

13     trustee.  What's missing here isn't clarity.  Clarity is self

14     evident.  What's missing here is any offer by our adversaries

15     here to suggest that they do have an independent claim.

16     Everything they speak of is derivative of and arises out of the

17     Ponzi scheme of Mr. Madoff, that's clear.  There's no privity

18     between Mr. Picower or any of his entities and any of these

19     parties.  Their relationship to him orbits around necessarily

20     the Madoff PONZI scheme, that's all it does.  The same dollars

21     that they're looking for are the same dollars that are now

22     being paid in to this estate.

23            Your Honor, in light of this I respectfully submit

24     that both of these objections should be overruled and that the

25     9019 should be approved.
```

1          One last thought, Your Honor.  Certainly under these

2    circumstances there's absolutely no need for discovery here

3    today.

4          Thank you.

5          MS. WANG:  Josephine Wang for the Securities Investor

6    Protection Corporation.

7          I'll keep my comments very brief, Your Honor.  Our

8    position is fully set out in the brief that SIPC has filed.  We

9    support the motion of the trustee.  We commend the trustee and

10   its counsel on the result that they have achieved.  If the

11   Court approves the settlement agreement it will benefit

12   thousands of Madoff investors.

13         Because we believe that the settlement is very

14   positive, we're extremely disappointed in the objections that

15   have been filed.  We believe that the Serabians have failed to

16   appreciate the standards for approving a settlement.  Those

17   standards are clearly met here.

18         We also believe that the Fox Marshall objections are

19   without merit.  Basically they rest on two grounds, one that

20   the proposed injunction is too broad, in fact the parties can't

21   confer jurisdiction on the Court that it doesn't have and the

22   parties don't presume to do that.  The injunction is clear on

23   its face, the Court plainly has jurisdiction to enter it.  It's

24   limited to those suits that the trustee brought or the trustee

25   could have brought.

08-01789-smb    Doc 12290    Filed 12/18/15    Entered 12/19/15 17:44:48    Exhibit
                                                    Pg 22 of 44
08-01789-smb    Doc 381    Filed in USCA-PR ON 12/18/15    Main Document
SIPC v. BERNARD L. MADOFF INVESTMENT SECURITIES

Page 21

1          The other basis for their injunction or for their

2     objection rather is that the trustee is getting too much money,

3     that the entire five billion dollars is not customer property.

4     That's not the issue before the Court today, whether it is or

5     is not customer property but if the issue were before the Court

6     plainly it is customer property.

7          It's now well known today that what Bernard Madoff was

8     running was a Ponzi scheme and what that means is that the

9     money that was paid to investors represents other investors'

10    money.

11         Converted customer property is clearly within the

12    definition of customer property under the Securities Investor

13    Protection Act.  Barbara Picower is doing the right thing.

14    She's returning what is now well known to have been stolen

15    customer property to the estate.  We wish that the same thing

16    could be said of the -- or by Fox Marshall in the objections

17    that they filed.

18         It's important to remember that they have filed claims

19    in the SIPA proceeding.  They are claimants.  They have gotten

20    back their principal in the case.  Ms. Marshall has gotten back

21    her principal in the SIPA liquidation but she's looking for

22    fake profits and that's why she has filed the Florida action.

23         Ms. Fox, while the firm was doing business, got 1.2

24    million dollars from the firm in fake profits.  But she's

25    looking for more fake profits and that's why she has brought

08-01789-smb  Doc 12290-9  Filed 12/18/15  Entered 12/18/15 17:44:48  Exhibit
08-01789-smb  Doc 3819  Filed 02/13/14  Entered 02/13/14 16:58:42  Main Document
Pg 22 of 44

SIPC v. BERNARD L. MADOFF INVESTMENT SECURITIES

Page 22

1    her Florida suit.

2         But that's not the point of this SIPA proceeding,

3    because it's important to remember that what Ms. Fox has

4    gotten, what Fox Marshall are looking for are fake profits.

5    They are other investors' money.

6         This settlement has the potential to return to these

7    people whose money has been stolen who have not recovered their

8    principal.  And yet, Fox Marshall would seek to prevent them.

9    They would seek to; instead, obtain more fake profits for

10   themselves at the expense of investors who have yet to recover

11   their principal.

12        We submit that that is not the right outcome.  We

13   respectfully submit that the trustee's motion to approve the

14   settlement agreement should be granted.

15        Thank you, Your Honor.

16        MR. MAY:  Good morning, Your Honor.  Laurence May of

17   Cole Schotz on behalf of the Fox plaintiffs and Adele Fox.

18        Your Honor, I want to confine my remarks today to one

19   issue and that is the issue of the injunction.  With respect to

20   the other issues, we're prepared to rest on the papers that we

21   filed in connection with this application and so I want to just

22   focus on the injunction, if  may.

23        The main issue with respect to this injunction is a

24   pretty simple one.  It can be, sort of, answered by a yes or

25   no.

1    THE COURT:  So you don't think that the settlement is

2    too much?

3    MR. MAY:  I'm resting on our papers.  We --

4    whatever -- we said in our papers we thought the settlement was

5    inappropriate and I'd like to address the injunction.

6    THE COURT:  You're not opining, at this point, orally

7    that the settlement is too much.

8    MR. MAY:  Yes, we are.

9    THE COURT:  You spent an awful lot of your paperwork

10    doing that.

11    MR. MAY:  We spent a portion of it.

12    THE COURT:  Well, I spent a good part of the night

13    dealing with it and I'm surprised you're not dealing with it

14    not but go ahead.

15    MR. MAY:  Okay.  So let me address the injunction

16    then, if I may.

17    THE COURT:  Go ahead.

18    MR. MAY:  And as I said, I think the issue with

19    respect to the injunction is a simple one and could, sort of,

20    be answered in a yes or no way and it simply is this:  Your

21    Honor entered a decision in an order in May of 2010 in which

22    the Court held and ruled that the lawsuit that our clients had

23    commenced in Florida, the class action lawsuit, was to be

24    preliminarily enjoined on the grounds that the actions and the

25    causes of action set forth in that lawsuit were property of the

08-01789-smb    Doc 12290-4    Filed 12/18/15    Entered 12/18/15 17:44:48    Exhibit
08-01789-smb    Doc 3815    Filed 02/11/11    SIPC v. BERNARD L. MADOFF INVESTMENT SECURITIES LLC    Main Document
Pg 24 of 44
Pg 25 of 44

1   estate and that the commencement of that action was void ab

2   initio for that reason.  That decision has been appealed to the

3   district court.  It has been fully briefed and it's now before

4   Judge Codel (ph.).

5           The issue that we wanted to know and that we still

6   don't have clarity on is this, is if the District Court or the

7   Court of Appeals should determine that this Court was incorrect

8   in its analysis and that the claims that we asserted in the

9   Florida action are not property of the estate and that they

10  belong to our clients, if that should be the determination then

11  it is our view that the injunction here -- whatever injunction

12  here is entered today would not and should not prevent us from

13  pursuing that suit under those circumstances.

14          I do not know, based upon the pleadings, based upon

15  the proposed orders and based upon the remarks of counsel

16  today, whether in fact that is what's intended.  For example,

17  without going into the pleadings and I'll go into those in a

18  moment, but last night at 8 o'clock the trustee filed a new

19  proposed order in connection with this application.

20          In the proposed order the trustee added a provision

21  that said, "Ordered based on the record before the Court, Fox

22  and Marshall whose claims against the Picower entities have

23  previously been preliminarily enjoined by this Court as

24  duplicative and derivative are and shall be bound by the

25  permanent injunction granted hereby".

08-01789-smb    Doc 12290-2    Filed 12/18/15    Entered 12/18/15 17:44:48    Exhibit
Pg 25 of 44

 1          I do not understand the consequence of that particular

 2    provision if in fact it is determined by the Court and the

 3    District Court or the Court of Appeals if this matter should be

 4    appealed to a higher court, that if our claims are not property

 5    of the estate, whether this injunction purports to stop us from

 6    pursuing those claims.

 7          If it does, this injunction is a classic third party

 8    injunction and under the circumstances of this case, as set

 9    forth in our papers, is an injunction which is improper and

10    should be granted.

11          If the injunction is intended solely to prevent us

12    from pursuing claims that we do not have, as determined by the

13    appeal, then we understand that and we don't have a quarrel

14    with that injunction.  But we do not think -- we do not know at

15    this point whether that's in fact what is intended by the

16    language of this injunction.

17          And Your Honor, in the pleadings and particularly in

18    the reply papers that were filed in this case by the trustee

19    there is sufficient indications in those reply papers to say

20    that the injunction that is intended here is far broader than

21    the injunction that the remarks at times indicate but at other

22    times do not indicate.

23          For example, in his reply papers the trustee says at

24    page 10, "Given the ruling of the Court," that's the ruling of

25    May of 2010, "there can be no question that Fox and Marshall

08-01789-smb    Doc 12290-2    Filed 12/18/15    Entered 12/19/15 17:44:48    Exhibit
08-01789-smb    Doc 3818    Filed 12/18/15    Entered 12/19/15 17:44:48    Main Document
SIPC v. BERNARD L. MADOFF INVESTMENT SECURITIES
Pg 20 of 44

1    would be permanently barred by the proposed injunction and they

2    will have to appeal the injunction if they are unhappy with the

3    result."

4          To me, that sounds like an injunction which is a broad

5    injunction, that it is not tethered to or in any way related to

6    the determination by the District Court or the Court of Appeals

7    as to who may own these claims and if that's in fact the case,

8    we believe it's an improper injunction.

9          One more point with respect to this proposed order,

10   and that is that there is a new provision added into the

11   proposed order which states, as a conclusion of law, and it may

12   be a combination of finding of fact or a conclusion of law, but

13   in any event the conclusion is that the Court has jurisdiction

14   to consider this matter and to consider the permanent

15   injunction.

16         Your Honor, we disagree with that statement for the

17   following reason; there is an appeal pending with respect to

18   the same issues which are covered by that injunction and that

19   is was the preliminary injunction proper and are the claims

20   that this Court found to be property of the estate in fact

21   property of the estate.  Those two issues are squarely before

22   the District Court and under well established law when there's

23   an appeal pending, an appeal has been made from a particular

24   issue, it divests the Bankruptcy Court of jurisdiction over

25   those issues.  So we don't believe that that's an appropriate

08-01789-smb    Doc 12290-9    Filed 12/18/15    Entered 12/18/15 17:44:48    Exhibit
SIPC v. BERNARD L. MADOFF INVESTMENT SECURITIES
Pg 28 of 44

Page 27

1    finding under the circumstances, at least as it applies to our

2    clients.

3          Your Honor, to the extent that this injunction is

4    intended to enjoin us from pursuing our own claims and claims

5    which are not property of the estate, it fails to meet all of

6    the requirements for third party injunctions as set forth in

7    Metro Media, as set forth in Johns Manville III and even

8    notwithstanding counsel's statements seemingly to the contrary

9    as Judge Bernstein ruled in Dreier.

10         Third party injunctions are rarely granted.  They are

11   granted primarily, if not exclusively, in Chapter 11 cases.

12   The Second Circuit has warned in Metro Media that they are to

13   be granted only under very unique circumstances.  They also

14   warned and said that making a financial contribution to a

15   particular matter is not in and of itself a sufficient basis

16   for a third party injunction.  And in Manville the Second

17   Circuit squarely held that to the extent that property of the

18   estate is not directly affected, then there is no basis and no

19   jurisdiction for a third party injunction.

20         Now let's look at it in this case.  The agreement that

21   was signed by the trustee, with the Picower defendants,

22   provides, among other things, that the agreement is affective

23   as between the parties if the forfeiture order in the District

24   Court is approved and there is no appeal from that order.  And

25   my understanding is that the time to appeal from that order

1   runs on Monday.  No appeals have been filed and I think it's a

2   fair observation to say that probably none will be filed from

3   that order.

4          That being the case, this agreement is effective

5   regardless as to whether this Court approves this 9019

6   application or not.  The money that's the subject of the

7   settlement has already been put into an escrow account and when

8   that order becomes final that money will not go back to the

9   Picower defendants and the trustee has said that numerous

10  times.

11         The agreement also says that once that event happens

12  then the releases are exchanged between the parties.  And once

13  the releases are exchanged between the parties then the trustee

14  gives up all claims that he has, in his own capacity, as

15  against the Picower defendants.  Which mean -- which means that

16  they no longer have an interest in any residual monies or funds

17  that remain with the Picower defendants which means that there

18  is absolutely no impact on this estate with respect to the

19  pursuit of independent claims against the Picower defendants in

20  connection with what we believe to be our independent right and

21  our independent claims which we hope will be validated by the

22  appellate court but, you know, we'll have to see on that.

23         So for all of those reasons, Your Honor, we think that

24  to the extent that this injunction purports to enjoin

25  independent claims, claims that are not property of the estate,

1    it's improper.  If this injunction, and we propose language in

2    our papers as to what would make sense, if the injunction is in

3    fact intended only to enjoin us from pursuing claims if it's

4    determined that we don't own those claims, well, you know,

5    that's an obvious one.  If we don't own the claims we can't

6    pursue them anyway and an injunction is not really needed.  But

7    if that's all that's intended here, we can understand that.

8    But if something more is intended here, and based upon the

9    language of the injunction, the language of the proposed order

10   and the allegations and the statements that have been made in

11   the pleadings, that is not a certainty.

12          So for that reason we have -- we are asking for

13   specific language to understand where we stand.  If we can't

14   get that language and this issue remains vague such that

15   someone in a subsequent proceeding could claim either that

16   we're in contempt or that we are prohibited from pursuing these

17   claims because they are subject to a permanent injunction,

18   we'll have to exercise remedies in that case.

19          THE COURT:  What do you mean by that?

20          MR. MAY:  Well, we'd have to appeal.

21          THE COURT:  Well, why don't you come out and say it.

22          MR. MAY:  Okay.  I just did.  Sorry about that.

23          THE COURT:  All right.

24          MR. MAY:  So, you know, but we don't think that's

25   necessarily how this thing should go.

1    THE COURT:  Of course that would put a halt to a

2    distribution of some 7.2 billion dollars.

3    MR. MAY:  It's --

4    THE COURT:  That's a very, very careful thing you

5    would have to think about before --

6    MR. MAY:  I'm sorry, Your Honor.  I don't hear you.

7    THE COURT:  I think we're talking about a lot of

8    money, a lot of impact on a lot of people with delay.

9    I just want to point out that there --

10   MR. MAY:  Our appeal --

11   THE COURT:  May I finish?  I have allowed you to talk

12   without saying anything.

13   MR. MAY:  I apologize.

14   THE COURT:  Although I disagree with a lot of the

15   points that you made, but that's beside the point.

16   THE COURT:  Although I disagree with a lot of the

17   points that you made, but that's beside the point.

18   Clearly there's been undue delay here and the Court is

19   concerned over the fact that this delay has also foisted the

20   possibility and probability and the actuality of victims being

21   made victims again based upon the delay that's here.  And I'm

22   speaking specifically now of the fact that vultures are making

23   offers to purchase claims based upon delay and those offers

24   have caused victims to cash in for very de minimis amounts in

25   the face of the expectation of a rather large recovery here.

Page 31

1      All I'm expressing is that should there be further

2  appeals you must take into account the effect of those delays.

3  Thank you Mr. May.

4      MR. MAY:  Thank you, Your Honor.

5      MS. CHAITMAN:  Good morning, Your Honor.  I just want

6  to make one point.  The settlement is not conditioned upon the

7  entry of the injunction.  And I think that makes this case

8  unique because the 7.2 billion dollars has been forfeited and

9  would be available for distribution to creditors regardless of

10  whether this Court enters the injunction.

11      This is not the situation that Your Honor was faced

12  with last spring because at that point Mr. Sheehan indicated to

13  the Court that he would be coming back and asking for a

14  permanent injunction because he believed it was necessary in

15  order to consummate the settlement.  That's not where we are

16  now.  The money is in a bank ready to be distributed regardless

17  of whether this Court enters an injunction.

18      We believe the injunction is overbroad and improper.

19  We believe the Court does not have jurisdiction to enter it but

20  there's no need to enter the injunction.  The estate cannot

21  show injury, no less irreparable injury, because regardless of

22  whether Your Honor enters the injunction the money is there to

23  distribute to creditors.  The only problem is if Your Honor

24  enters the injunction we have no alternative but to appeal it

25  and that delays the distribution to creditors.  We have no

08-01789-smb Doc 11290-9 Filed 12/18/15 Entered 12/19/15 17:44:48 Exhibit
08-01789-smb Doc 3818 Filed 12/18/15 Enter 12/14 Main Document
Pg 32 of 44

SIPC v. BERNARD L. MADOFF INVESTMENT SECURITIES

Page 32

1    interest in delaying distribution to creditors.  And the Court

2    and the trustee should have no interest in protecting Mr.

3    Picower's entities from the liability that Mr. Picower created

4    as a result of his heinous crimes.

5        So on behalf of the 46.8 billion dollars of investor

6    losses that Mr. Picard does not represent --

7        THE COURT:  You used the term heinous crimes, that's a

8    rather inflammatory statement.  The Justice Department is

9    already involved here, you recognize that?

10       MS. CHAITMAN:  I'm concluding heinous crimes, Your

11   Honor, based on the allegations that the trustee has made which

12   I accept for this purpose.  He has alleged that Mr. Picower was

13   the coconspirator of Mr. Madoff and he outlined in his

14   complaint incident after incident --

15       THE COURT:  That's not necessarily an attribution of

16   committing a heinous crime.  I think you're rhetoric comports

17   with the rhetoric of the day and you might want to tone it

18   down.

19       MS. CHAITMAN:  Your Honor, on behalf of the victims

20   that I represent the devastation that has been caused by this

21   scheme is truly heinous, it has --

22       THE COURT:  Mr. Madoff is in jail for that.

23       MS. CHAITMAN:  And Mr. Picower is being asked to be

24   relieved of any liability to all of my clients despite the

25   devastation he caused destroying generations of wealth, Your

08-01789-smb   Doc 12290-2   Filed 12/18/15   Entered 12/18/15 17:44:48   Exhibit
Document   Pg 33 of 44

08-01789-smb   Doc 12290-2   Filed 12/18/15   Entered 12/18/15 17:44:48   Exhibit
Document   Pg 33 of 44

SIPC v. BERNARD L. MADOFF INVESTMENT SECURITIES

Page 33

```
 1   Honor.  And Mr. Picard is asking you to shield his entities

 2   from liability for the personal claims that these people have

 3   suffered.  Thank you.

 4        THE COURT:  Mr. Sheehan?

 5        MR. SHEEHAN:  I do have a couple comments, Your Honor.

 6   But there is a third party here who does want to be heard in

 7   support of the application, Your Honor, with permission.  It's

 8   a --

 9        THE COURT:  Sure.

10        MR. SHEEHAN:  Mr. Kurzman who's representing

11   orthopedic specialists who has a pension plan that filed a

12   claim in the case.

13        MR. KURZMAN:  Good morning, Marc Kurzman from Sandak

14   Hennessey & Greco, Stamford Connecticut.

15        What Mr. Sheehan said is not exactly accurate.  I

16   don't represent the plan I represent the 117 participants in

17   the Orthopedic Specialty Group Plan, a pension plan that was

18   created back in the 1970's for the employees of the Orthopedic

19   Specialty Group which is a Fairfield, Connecticut orthopedic

20   practice -- large Connecticut orthopedic practice.

21        The OSG Plan participants, my clients Your Honor,

22   include doctors, nurses, x-ray technicians, clerical support

23   staff, folks who invested their entire retirement savings in

24   BLMIS and were in many cases, Your Honor, financially wiped out

25   by the Madoff fraud.  The participants in the OSG Plan, Your
```

VERITEXT REPORTING COMPANY

212-267-6868          www.veritext.com          516-608-2400

1   Honor, my clients, include Dr. Henry Backe, a partner in the

2   OSG practice who has testified before the Senate Banking

3   Committee on the injustice of denying SIPC coverage to innocent

4   people who, like the OSG Plan participants, invested in BLMIS

5   through a federally sanction ERISA plan and were as victimized

6   by the Madoff fraud as those who held so-called direct claims

7   with BLMIS.

8          The trustee has approved the claim of the plan, Your

9   Honor, but has denied the individual claims filed on behalf of

10  all of my clients and I filed objections to that denial.  I am

11  hopeful, Your Honor, that through further exploration of the

12  facts with the trustee or if need be ultimately a ruling by

13  this Court the OSG Plan participants will be afforded customer

14  status and SIPC coverage which, you know, despite the best

15  projections of the trustee is something that we believe would

16  be required in order to compensate my clients for their losses.

17         Nevertheless, Your Honor, I am here today to advise

18  the Court that I, as counsel to the OSG Plan participants and

19  Dr. Backe, are completely supportive of the settlement that the

20  trustee reached with the Picower defendants.  We view the

21  settlement as serving a very -- as one that will serve a very

22  important source of recovery for the most seriously impacted

23  victims of the Madoff fraud, namely the so-called net losers,

24  the term that I know we're using in this case, which include

25  all of my 117 clients, Your Honor.

08-01789-smb    Doc 12290    Filed 12/18/15    Entered 12/18/15 17:44:48    Exhibit
08-01789-smb    Doc 9818    Filed 04/13/15    Entered 04/13/15 17:56    Main Document
SIPC V. BERNARD L MADOFF INVESTMENT SECURITIES
Pg 35 of 44

Page 35

1          The settlement will clearly allow the trustee to take

2     a significant step in compensating the net losers for their

3     financial loss.  You alluded, Your Honor, in your remarks to

4     the delay issue and that, of course, has been the major concern

5     of my clients, folks that had planned to retire, middleclass

6     folks, clerical people, x-ray technicians that now can't do

7     that because they no longer have a retirement savings.  So

8     anything that can be done to expedite any payment to the net

9     losers is extraordinarily helpful to my clients and to the

10    class of which they're a part, the net losers.  So I would urge

11    Your Honor to approve this settlement has been proposed by the

12    trustee in this motion.  Thank you very much for your time,

13    Your Honor.

14          THE COURT:  Thank you sir.

15          MR. SHEEHAN:  Your Honor I'll be very brief, just

16    point by point.

17          I don't know how we could be more clear with our

18    intent, the order is perfectly clear.  I don't know what the

19    confusion is.  I think they're looking for something they're

20    not entitled to and that is that somehow they should be carved

21    out.  They haven't established a record for that which leads to

22    the order that we did submit last night and why we think it is

23    appropriate.  Even the language being alluded to by my

24    adversary in this sense, that if we had this hearing today on

25    the 9019 in the full record and nothing was presented to Your

 1    Honor, this is our position, that would change Your Honor's

 2    view of the so-called independent claims that exist in the

 3    hands of Fox and Marshall.  Well then that's something that the

 4    Appellate Court should be aware of and it should be in the

 5    order.  But nothing's changed.  They weren't independent then,

 6    they're not independent now and therefore they should be

 7    enjoined.  So that's a finding I think is totally appropriate,

 8    it serves judicial efficiency in the sense that Your Honor is

 9    advising the Court of your findings here and even though

10    there's been a record here today that record shows nothing,

11    nothing in support of their position of independence.

12            Two other points --

13            THE COURT:  Well on that point, Mr. Sheehan --

14            MR. SHEEHAN:  Sure.

15            THE COURT:  -- I agree with your reading of the

16    language and the central decretal paragraph that duplicative

17    and derivative claims being brought by the trustee are those

18    that are barred.  I don't know why you need the second decretal

19    paragraph that speaks specifically to Fox and Marshall.  They

20    are subsumed in the prior injunctive paragraph.

21            MR. SHEEHAN:  Your Honor, if Your Honor reads it that

22    way, that's fine with us, we just thought it was good.  As I

23    said, more judicial efficiency than anything else, make it

24    clear that no mat --

25            THE COURT:  I think it is clear.

08-01789-smb Doc 12290-2 Filed 12/18/15 Entered 12/18/15 17:44:48 Exhibit
08-01789-smb Doc 8815 Pg 37 of 44 Filed 03/13/15 Entered 03/13/15 17:56:43 Main Document
Pg 37 of 44

SIPC v. BERNARD L. MADOFF INVESTMENT SECURITIES

Page 37

     1          MR. SHEEHAN:  Okay, fine Your Honor.

     2          THE COURT:  You state very clearly and I will state

     3    very clearly if I approve this that there will be a permanent

     4    injunction from asserting any claims against the Picower BLMIS

     5    accounts or the Picower releases that is duplicative or

     6    derivative of the claims brought by the trustee.  And that's

     7    exactly the same thing as what's in the next paragraph which

     8    targets specifically Fox and Marshall.  I don't see that

     9    there's a need to have that extra paragraph when it's already

    10    covered --

    11          MR. SHEEHAN:  Your Honor --

    12          THE COURT:  -- in the prior paragraph.

    13          MR. SHEEHAN:  -- I agree with you a hundred percent.

    14    The --

    15          THE COURT:  Well I understand that too.

    16          MR. SHEEHAN:  You know, I've learned a few things

    17    standing at this podium over the years and one of them is to

    18    always agree with the judge.

    19          The last point I was going to make, Your Honor, is

    20    this, and that's when Ms. Jabin (ph.) said it's not necessary.

    21    I don't know if that's the standard to begin with under Judge

    22    Bernstein's wisdom or that of any other court addressing third

    23    party injunctions.

    24          What is important is this, is that that is an

    25    incentive for Barbara Picower to come forward here and to make

08-01789-smb Doc 12290-9 Filed 12/18/15 Entered 12/18/15 17:44:48 Exhibit I
08-01789-smb Doc 3815 Filed 04/11/11 SIPC v. BERNARD L. MADOFF INVESTMENT SECURITIES Main Document
Pg 39 of 44

1    the gesture that she's made, an incredible gesture, of coming

2    up with all this money.  And therefore it's something that

3    she's entitled to look to as part of the bargain.  And it's a

4    fair exchange that the estate receives all the money that it

5    does.  Whether it's necessary or not is not the standard, the

6    fact is, is that is it appropriate?  And we believe under all

7    the circumstances here that indeed it is appropriate.

8        And one last point because of the point made by Ms.

9    Jabin, she does not, I repeat, she does not represent forty-

10   four million dollars.  Fox and Marshall are not class

11   representatives and unless she's representing all of the net

12   winners and she's representing all of the net losers, which she

13   is not the trustee is.  The trustee represents every one of us.

14       THE COURT:  But she is representing some on both

15   sides.

16       MR. SHEEHAN:  She is that is true.  She's wearing two

17   hats, I agree with that.  But the point is, is that she is not

18   a Court appointed fiduciary as Mr. Picard is, mandated by

19   statute to represent each and every customer and creditor in

20   this case.  He is indeed the uber-customer, he represents every

21   one of them and that's exactly what we're going to do in this

22   case is do our very best to satisfy every customer, winner,

23   loser, all of them.  Thank you, Your Honor.

24       THE COURT:  Thank you all.

25       MR. MAY:  Just two seconds, Your Honor, if I may.

08-01789-smb   Doc 12290-8   Filed 12/18/15   Entered 12/18/15 17:44:48   Exhibit
08-01789-smb   Doc 3818   Filed 04/24/13   Entered 04/24/13 16:56:04   Main Document
SIPC v. BERNARD L. MADOFF INVESTMENT SECURITIES
Pg 39 of 44

1           THE COURT:  You're being timed.

2           MR. MAY:  Well, okay.  In that case five minutes.

3           I respect and appreciate some of the clarifications

4    but one of the issues we've always had is this word duplicative

5    as well.  And that is, there is no doubt that the claims that

6    we are asserting in the Florida action relate to and arise out

7    of the BLMIS Ponzi scheme in a broad sense.

8           I don't know if anyone would interpret that to mean

9    that somehow our claims are duplicative, we do not believe they

10   are.  But that language is somehow troubling to us because it

11   creates the possibilities down the road that people will argue

12   about that issue.  And we don't want to argue about the issue.

13          What we had proposed and what we thought was clear and

14   understandable for everyone is that simply if the Appellate

15   Court would decide that our claims belong to us and not to the

16   estate then we're free to pursue them.  That's what we're

17   asking for.  I don't understand why that is such a big issue at

18   this point and why the trustee can't come out and say I agree

19   with that.  That way we don't have to worry about whether a

20   particular second injunction somehow intrudes upon or expands

21   what happened on the preliminary injunction motion.  And so for

22   that reason we would hope that language could be crafted that

23   would satisfy that issue.  Thank you.

24          THE COURT:  Thank you.  Anybody else want to be heard?

25   I think there's no need to have any further clarification, any

08-01789-smb   Doc 12290-6   Filed 12/18/15   Entered 12/19/15 17:44:48   Exhibit
08-01789-smb   Doc 12290-6   Filed 12/18/15   Entered 12/19/15 17:44:48   Main Document
SIPC v. BERNARD L. MADOFF INVESTMENT SECURITIES
Pg 40 of 44

Page 40

1   language.  It is very clear, especially with respect to the

2   objectors before me, that I can almost never satisfy their

3   positions and therefore there's always the threat of an

4   Appellate review, which I welcome.  It's just that I'm

5   concerned about the broader grouping of people who are impacted

6   by everything that goes on here.

7        With respect to the three objections, I'm overruling

8   them I find them without merit.  And I will take a little bit

9   of a position of Mr. May and not go into every last detail of

10  all the papers that were before me.  I have gone through

11  everything.  I've read all of the arguments; I fully understand

12  and comprehend the positions of the parties.  I do find that

13  the omnibus reply to these objections sets forth with a

14  rational and clear persuasive basis for the grant of all of the

15  relief that's requested.

16       In essence I find the basis for each of the three

17  objections have been effectively rebutted in the reply.  And

18  more than that from this morning's record and hearing it is

19  clear to this Court that has jurisdiction both under all the

20  trilogy of cases, Drier, Manville, Metromedia.

21       The purpose and the need for the injunction is quite

22  clear.  The injunction is narrow.  It deals with duplicative

23  and parallel claims of the trustee.  Indeed there has never

24  been any showing of any privities between the objectors and the

25  Picower estate.  Clearly there are many, many other targets for

08-01789-smb    Doc 12290-1    Filed 12/18/15    Entered 12/18/15 17:44:48    Exhibit 1
08-01789-smb    Doc 381    Filed 12/18/15    Entered 12/18/15 17:44:56    Main Document
Pg 42 of 44

1    the trustee's activities in bringing funds back into the

2    estate.  The trustee's point and SIPC's point that the trustee

3    represents all of the Madoff victims including those that are

4    net winners and net losers; it's just a question of the

5    priority.  And you cannot expect any settlor to make a

6    settlement with a potential possibility of being sued twice

7    over the same causes of action and claims.

8            Accordingly with the one exception I am prepared to

9    approve the settlement order with the injunction but I do not

10    see the need for the extra belt and suspenders of the paragraph

11    that specifically names Fox and Marshall.  It is clear, to the

12    extent that they have the kinds of claims described here then

13    they would be enjoined.  To the extent they don't then that's

14    another matter.  That as Justice Sotomayor has said, is

15    something they can put into their own calculus and strategy

16    when they want to do any further planning.

17            The application is approved, Mr. Sheehan.

18            MR. SHEEHAN:  Thank you, Your Honor.  Your Honor, I do

19    have the order here but it has that paragraph in it.  I can

20    clean it up and get it back down to your --

21            THE COURT:  You should excise that particular

22    paragraph --

23            MR. SHEEHAN:  I will have it to you this afternoon.

24            THE COURT:  -- which I think is just redundant and

25    that's all.

08-01789-smb   Doc 12290-2   Filed 12/18/15   Entered 12/19/15 17:44:48   Exhibit I
08-01789-smb   Doc 3818-1   Filed 03/14/15   Entered 03/14/15 15:56:27   Main Document
Pg 32 of 44

1          MR. SHEEHAN:  Yes, Your Honor, absolutely.  Thank you,

2     Your Honor.

3          THE COURT:  Thank you all.

4          MR. SHEEHAN:  Thank you very much.

5          MS. CHAITMAN:  Thank you, Your Honor.

6       (Whereupon these proceedings were concluded at 12:23 PM)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2                           I N D E X

3

4                          R U L I N G S

5   DESCRIPTION                              PAGE LINE

6   Motion for Settlement Order with          41    17

7   Injunction -Approved with Noted Change

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

08-01789-smb   Doc 12290-9   Filed 12/18/15   Entered 12/18/15 17:44:48   Exhibit
Pg 45 of 45
08-01789-smb   Doc 3818   Filed 01/14/11   Entered 02/01/11 11:47:56   Main Document
Pg 44 of 44

Page 44

 1

 2                    C E R T I F I C A T I O N

 3

 4   I, Pnina Eilberg, certify that the foregoing transcript is a

 5   true and accurate record of the proceedings.

 6        **Pnina Eilberg**   Digitally signed by Pnina Eilberg
                              DN: cn=Pnina Eilberg, o, ou,
 7   _____ email=digital1@veritext.com, c=US
                              Date: 2011.01.14 10:42:12 -05'00'

 8   PNINA EILBERG (CET**D-488)

 9   AAERT Certified Electronic Transcriber

10

11

12   Veritext

13   200 Old Country Road

14   Suite 580

15   Mineola, New York 11501

16

17   Date:  January 14, 2011

18

19

20

21

22

23

24

25