# EXHIBIT A

1    UNITED STATES BANKRUPTCY COURT

2    SOUTHERN DISTRICT OF NEW YORK

3    Case No. 09-01305-smb

4    - - - - - - - - - - - - - - - - - - - - - - - - - - - x

5    In the Matter of:

6

7    IRVING H. PICARD, TRUSTEE FOR THE LIQUIDATION OF B

8    V.

9    COHMAD SECURITIES CORPORATION

10

11    - - - - - - - - - - - - - - - - - - - - - - - - - - - x

12                    U.S. Bankruptcy Court

13                    One Bowling Green

14                    New York, NY    10004

15

16                    September 1, 2015

17                    10:28 AM

18

19    B E F O R E :

20    HON STUART M. BERNSTEIN

21    U.S. BANKRUPTCY JUDGE

22

23    Hearing re:   Motion to Quash Subpoena

24

25    Transcribed by:   Sonya Ledanski Hyde

```
 1    A P P E A R A N C E S :

 2

 3    BAKERHOSTETLER

 4        Attorney for Trustee

 5        45 Rockefeller Plaza

 6        New York, NY  10111

 7

 8    BY:  ESTERINA GIULIANI

 9        KARIN SCHOLZ JENSON

10

11    FOX ROTHSCHILD LLP

12        Attorney for defendant Jonathan Greenberg

13        100 Park Avenue, Suite 1500

14        New York, NY 10017

15

16    BY:  ERNEST E. BADWAY

17

18

19

20

21

22

23

24

25
```

```
1                    P R O C E E D I N G S
2              THE COURT:  Madoff? Go ahead.
3              MR. BADWAY:  Good morning, Your Honor, Ernest
4    Badway of the firm Fox Rothschild for the motion of
5    defendant Jonathan Greenberg, Your Honor.
6              MS. JENSON:  Karen Jenson, Baker & Hostetler, for
7    the Trustee, with Esterina Giuliani.
8              MS. GIULIANI:  Good morning.
9              MR. BADWAY:  Your Honor, we're back today.  Your
10   Honor put it over for two weeks to see if we could come to a
11   resolution.  So, we were unable to come to a resolution on
12   this matter.  I believe both parties have submitted papers
13   to the Court.
14             THE COURT:  I've received the letters, as well as
15   the underlying motions.
16             MR. BADWAY:  Unless the Court has any further
17   questions...
18             THE COURT:  Anything?
19             MS. JENSON:  Thank you, yes.  If I may, I would
20   like to describe the meet-and-confer process that we've had
21   over the past two weeks. It's, frankly, been quite
22   unproductive, despite that the Trustee has made two
23   proposals that we believe are squarely in line with the
24   dialogue that we had here on August 18th.  The first one is
25   that we would keep the bank records confidential.  The
```

1    second is a stipulation as to the transfers.  So, if I can

2    just walk through some of the chronology briefly?

3            THE COURT:  Go ahead.

4            MS. JENSON:  As you're aware from the Trustee's

5    opposition, the meet-and-confer process prior to the filing

6    of the motion was abruptly halted when Greenberg filed the

7    motion to quash about three hours after asking the Trustee

8    for the basis of seeking the records, before we had the

9    opportunity to respond.  So, after the August 18th hearing,

10   we received a proposal from Defendant Greenberg seeking --

11   proposing that he would seek two years of bank records from

12   the banks themselves and redact those records before turning

13   them over to the Trustee.

14           We believed that we heard at the hearing that the

15   Court believed we were entitled to at least a minimum of six

16   years, and then we explained the basis for our reasoning to

17   go beyond that period.  So, we waited to receive the

18   transcript before we continued with our negotiations with

19   Defendant Greenberg because we wanted to be certain that we

20   were following the Court's guidance and statements.  We

21   wanted to make sure that we saw in black-and-white what

22   counsel's position was on the subpoenaed records, as well as

23   on the stipulation itself.

24           And then we made these two proposals that we

25   believed were squarely in line with what the Court had

1     contemplated.  The first one was to receive the bank records

2     and keep them confidential.  At the hearing, Your Honor

3     indicated that you were inclined to have the records go to

4     the Trustee, and we did propose that.  We agreed that we

5     would keep them in confidence and until any of the privacy

6     issues would be resolved.  And I think our proposal hit

7     those marks that the Court had contemplated.

8          We agreed to keep them out of our confidential

9     third-party data room until the privacy issues had been

10    resolved, even though we are under Court order to put such

11    documents in a data room.  And we made this proposal that

12    the documents could be designated confidential so long as

13    the information that relates to transfers itself was not

14    confidential, because--

15         THE COURT:  Transfers from Cohmad to Greenberg?

16         MS. JENSON:  Yes.  The -- paragraph 4E of the

17    litigation protective order says that information

18    identifying mediate or intermediate transfers from BLMIS and

19    the amounts, and the identity of the recipient, are not

20    confidential, expressly not confidential.

21         THE COURT:  Is -- does the complaint allege that

22    Mr. Greenberg got direct transfers from BLMIS as an

23    investor?

24         MS. JENSON:  He was an IA customer, yes.

25         THE COURT:  Okay.  Okay.

1          MS. JENSON:  And secondly, he also received

2     payments for his salary from BLMIS.

3          THE COURT:  No, I understand the subsequent

4     transfer argument --

5          MS. JENSON:  Yes, but --

6          THE COURT:  That he's a transferee of Cohmad.

7          MS. JENSON:  A portion of his -- a number of

8     years, his salary came directly from BLMIS, not through

9     Cohmad.

10          THE COURT:  Okay.

11          MS. JENSON:  And so, just big-picture on why this

12     proposal is a concession for the Trustee:  we -- you know,

13     I've described to the Court before our approach in

14     discovery, and these data rooms are --

15          THE COURT:  Let me just ask:  is there a time

16     limit on how far back?

17          MS. JENSON:  No.  We are seeking full history of

18     the transfers.

19          THE COURT:  Okay.

20          MS. JENSON:  I'm going to point you to a letter

21     that outlines the sources of information that we've put

22     before the Court before, and that's at ECF9628-3.

23          THE COURT:  Do you have a copy?

24          MS. JENSON:  We do have a copy.  May I?

25          THE COURT:  (indiscernible)

```
 1            MS. JENSON:  I'm sorry, it's not in your book.

 2    I'm sure it's not.  May I approach?  So, this letter was

 3    submitted in connection with the discovery dispute that we

 4    had in this case previously.  And it describes our approach

 5    to discovery.  It describes our data rooms.  It describes

 6    the volume of documents that we have and our proposals with

 7    regard to the defendants on how we search documents and how

 8    we produce documents.

 9            And the third-party data rooms are at the heart of

10    discovery in our case.  We actually prepared the motion to

11    establish the data rooms and then shared it with many of our

12    most vocal adversaries, many of the big -- counsel for the

13    big banks.  And we negotiated that motion over many, many,

14    many months before we actually filed a motion with the

15    Court.  And the motion was granted with no objections.

16            And the Court's order on that motion is very

17    detailed and describes all of the rules and regulations that

18    the Trustee is required to follow with regard to the data

19    rooms.  It's designed to save all the parties money and

20    reduce burden, reduce the costs associated with discovery.

21    And so, making these concessions with Defendant Greenberg

22    about the status of where his documents are going to go

23    undoes some of that cost-saving.

24            THE COURT:  Well, but here you're talking about

25    somebody's personal bank accounts.  There are corporate
```

1    defendants.  There are a lot of variations in terms of the

2    information you're getting and who gets to see it.

3            MS. JENSON:  Right.  But --

4            THE COURT:  If this were a corporate defendant, we

5    wouldn't even be having this conversation.

6            MS. JENSON:  Right.  So, the issue is that 4E of

7    the protective order, paragraph 4E says that information

8    relating to transfers is not confidential.  So, we are -- by

9    allowing him, allowing Greenberg, to designate these

10   documents confidential, we're dealing now with a sort of

11   tricky situation.  The document would be designated

12   confidential and therefore it would go in the confidential

13   third-party data room.  But there's information in it that

14   would be -- that the Trustee can freely use, as he should,

15   under 4E of the protective order.

16           So, this arrangement that we've proposed creates a

17   bit of an administrative burden for us.  And you can

18   imagine, if we had to do this with many, many, many

19   producing parties and many defendants, we would obviate the

20   need -- the cost savings.

21           THE COURT:  So what do you propose?

22           MS. JENSON:  I'm sorry?

23           THE COURT:  So what do you say?

24           MS. JENSON:  Let me describe the stipulation for

25   you as well.  I just want to note for the Court that this

1    proposal that we made with regard to the receipt of the

2    documents honored the issues regarding his privacy, but at

3    the same time was a concession given the third-party data

4    room orders.

5            THE COURT:  Why would anybody else want to look at

6    his bank records, other than the Trustee?

7            MS. JENSON:  I'm sorry?

8            THE COURT:  Why would anybody other than the

9    Trustee want to look at his bank records?

10            MS. JENSON:  The only -- the -- by court order,

11    these documents would go into the confidential third-party

12    data room.

13            THE COURT:  I understand that.  But that's an

14    order that can be changed for a specific situation.

15            MS. JENSON:  Yes.

16            THE COURT:  Just tell me why anybody else -- why

17    this has to be in any data room.  That's all.

18            MS. JENSON:  It is unlikely that any defendant in

19    any other adversary proceeding would develop search terms

20    that would hit on the defendant's documents, the bank

21    records.

22            THE COURT:  But why even have them in the data

23    room?

24            MS. JENSON:  It is -- there are specific

25    exclusions under the order on what documents should not be

1    included in the data room.  And bank records are not among

2    them.

3            THE COURT:  Okay.

4            MS. JENSON:  So, with regard to the second

5    proposal, which was the stipulation, we offered that, in

6    lieu of pursuing the subpoenaed records, we would prepare a

7    stipulation reflecting all of the transfers that we were

8    aware of that we would share in draft form with Defendant

9    Greenberg, which he would review for accuracy and

10   completeness, and we would -- that would eliminate the

11   defendant's concern about the privacy of information that

12   didn't relate to transfers.

13           We included in the stipulation that he is not

14   conceding liability.  He's not conceding that we are

15   entitled to avoid the transfers that are outlined in the

16   stipulation.

17           THE COURT:  This is in lieu of taking the records?

18           MS. JENSON:  In lieu of taking the records, yes,

19   Your Honor.  We sent the draft stipulation to Defendant

20   Greenberg on August 25th.  And we have a copy of it if Your

21   Honor would like to see it.  And despite representing to the

22   Court at the August 18th hearing that he would be willing to

23   enter into a stipulation, the defendant's response was that

24   the stipulation was unilaterally made up.  And he offered no

25   insight into the accuracy or the completeness of it.

1          Last week, we gave counsel our availability for a

2     meet-and-confer, and we wanted to attempt to resolve those

3     issues.  We wanted a good-faith response on our proposed

4     stipulation.  And he instead responded with another letter,

5     in writing, full of invective.

6          So, with regard to the time period, at the

7     hearing, the Court directed us to submit the decisions.  We

8     did in fact do that.

9          THE COURT:  I reviewed it.

10         MS. JENSON:  And Mr. Greenberg's response is

11    essentially that he doesn't agree.  And, you know, it is our

12    position that the fact that they are decisions, the Trustee

13    sufficiently pled these claims to allow us to recover

14    transfers from -- the full history of the transfers.  And

15    the fact that he doesn't agree with it or he doesn't like

16    the decision is not sufficient to withhold these

17    productions.

18         So, we actually have two alternatives in terms of

19    an order from the Court.  The first would be to direct the

20    defendant to identify inaccuracies and examine for

21    completeness the draft stipulation, and respond to the

22    Trustee by a certain date.  And if the defendant would be

23    willing and elect to enter into the good-faith negotiations

24    with us over the stipulation, we would be happy to direct

25    the banks to hold the productions in abeyance as to

1       Greenberg, as to Defendant Greenberg, until we get a signed

2       stipulation.

3               And then our second proposal is to direct the

4       banks to produce the documents in accordance with our

5       proposal that we made on August 21st, which is the documents

6       would be designated confidential, the transfer information

7       within them would not be confidential, the documents would

8       not go into a data room until we resolved the

9       confidentiality issues.

10              And, under either scenario, we would ask that the

11      Court find that the Trustee is entitled to recover records

12      for the full history, going back beyond the six years, and

13      deny the motion to quash.  The subpoena relates to other

14      defendants as well.  We're seeking accounts from other

15      defendants in these subpoenas, and the banks are holding up

16      those productions while this motion is pending.

17              THE COURT:  Okay.  Thank you.

18              MS. JENSON:  Thank you, Your Honor.

19              THE COURT:  Mr. Badway?

20              MR. BADWAY:  Your Honor, with all due respect to

21      counsel, I'm surprised she went there.  Your Honor, we filed

22      our motion after they told us they were entitled to seek all

23      of the records without any further discussion.  That's how

24      far this goes back.

25              Judge, they decide what's true and what's

1    accurate, and then come before this Court and make these

2    claims.  When Your Honor looked at those cases, and when we

3    pointed it out, and when Your Honor talked about six years'

4    worth of documents, it was based upon their representations

5    that those cases said they were entitled to 16 years' worth

6    of records.  That's not what those cases said, Judge.  Those

7    cases never said that.  It gave them a right to bring this

8    claim.  And I know the Court --

9              THE COURT:  Can I ask you a question, though?

10             MR. BADWAY:  Sure.  Yes, Your Honor.

11             THE COURT:  If they are entitled to recover

12   transfers to Cohmad going back 16 years, because Judge

13   Lifland didn't dismiss that claim, are they entitled to

14   information related to transfers going back 16 years?

15             MR. BADWAY:  No, Judge, that's not --

16             THE COURT:  why not?

17             MR. BADWAY:  That's not what Judge Lifland said in

18   that decision.  Judge Lifland gave them the opportunity --

19   this is what I said before, Your Honor, and you sort of

20   stopped me when I first made my argument when we were here

21   two weeks ago.  They're putting the cart before the horse.

22   Okay?

23             THE COURT:  What do you mean?

24             MR. BADWAY:  What they're doing, Your Honor, is

25   they're claiming Judge Lifland said they're right, they can

1    go forward, and they can find all the subsequent transfers

2    down the road from all of these bank records from -- not

3    only from my client, but also the other defendants in these

4    cases.  All Judge Lifland said is -- he specifically said,

5    "I'm not saying they're right or wrong, but I'm going to let

6    them pursue this claim to prove it."  To prove it.  They

7    haven't demonstrated intentions.  And I want to clarify --

8             THE COURT:  Are you saying that first we have to

9    try the case against Cohmad and then have a second trial

10   relating to what Cohmad did with the money?

11            MR. BADWAY:  It's not Cohmad did with the money,

12   it's my client did with the money.

13            THE COURT:  No, no, they're not asking for those

14   transfers.

15            MR. BADWAY:  Judge, they already know those

16   transfers.  Those records are in their possessions.  They

17   have Cohmad's records.

18            THE COURT:  Well --

19            MR. BADWAY:  They have Cohmad's records dating

20   back for as long as the records are in existence.  And you

21   know --

22            THE COURT:  But apparently you're not willing to

23   stipulate to it.  So, they don't -- so, what they have is

24   disputed.

25            MR. BADWAY:  Judge, what I'm not willing to

1    stipulate to is they're not entitled to records that go back

2    16 years.  That's what they're not entitled to.  Judge, even

3    if they prove --

4          THE COURT:  Let me ask you a question.

5          MR. BADWAY:  Sure.

6          THE COURT:  As Judge -- under Judge Lifland's

7    decision, at least based upon the claim that's asserted,

8    they have the right to seek to avoid an initial transfer to

9    Cohmad made in 1991.  That's asserted.  Isn't that so?

10         MR. BADWAY:  I think they said 1993,

11   (indiscernible) --

12         THE COURT:  Whatever (indiscernible) goes back.

13         MR. BADWAY:  That is their allegation, Your Honor.

14         THE COURT:  All right, and it's been upheld

15   against the motion to dismiss by Cohmad.

16         MR. BADWAY:  I think what the -- I think what

17   Judge Lifland said, Judge, is he was going to give them the

18   opportunity to prove that they were entitled to that.

19         THE COURT:  But what's the difference between that

20   and denying the motion to dismiss that claim?

21         MR. BADWAY:  I think, Judge -- I think the point

22   is that, in the -- under the liberal pleading standards that

23   we have in the Second Circuit, Your Honor, basically you can

24   file any claim that you want -- almost any claim --

25         THE COURT:  That's absolutely false under the

1    pleading standards.

2            MR. BADWAY:  Judge --

3            THE COURT:  (indiscernible) the 12 million

4    (indiscernible).

5            MR. BADWAY:  Well, but, Your Honor, but, Your

6    Honor, in this -- well, Judge, that's the other thing, too.

7    If we're talking about that type of thing under Twombly and

8    we're talking about those type of cases, they haven't proven

9    far the particularity in this particular setting.

10           THE COURT:  But I don't have a motion to dismiss

11   for (indiscernible).

12           MR. BADWAY:  I know that, Judge.

13           THE COURT:  There's been a discovery issue

14   regarding claims that are validly in the case.

15           MR. BADWAY:  Right, Judge.  They may be validly in

16   the case, Judge, but, you know, Judge, from a practical

17   point of view, I just want to say, practical point of view,

18   banks only keep records for 10 years.

19           THE COURT:  Well then they look at the records.

20           MR. BADWAY:  Exactly.  And in terms of these

21   records, they only go back 2005.  And what I proposed to

22   them, Judge -- the first thing I asked them was:  what's

23   their basis for asking for all of the records dating back 16

24   years?

25           THE COURT:  I just told you what it was.

1          MR. BADWAY:  I know that, Judge.  But what I'm

2    saying is that's not what the cases say.  They're claiming

3    that the cases say -- but when Your Honor --

4          THE COURT:  They're talk -- look, stop.  Judge

5    Lifland dealt with the motion to dismiss.  He said they had

6    asserted a claim for transfers that were made in 1993 in the

7    course of actual fraud.  If they can avoid those transfers,

8    then they can recover the transfers from Cohmad if there

9    were any subsequent transferee, i.e. Greenberg, who was paid

10   by Cohmad, putting aside the transfers directly from BLMIS

11   to Greenberg, which is a different story.

12         If they can recover those transfers from Cohmad,

13   they're entitled to see whether Cohmad transferred that

14   money to Greenberg, because then they can recover it from

15   Greenberg.  So.

16         MR. BADWAY:  Part of what I'm trying to do, Judge,

17   is I'm trying to parse this out, because, as I said when I

18   sat before this Court before, two weeks ago, I said I

19   wouldn't have a problem with stipulating to what my client

20   received from Cohmad.  The problem was -- is that's not only

21   what the stipulation dealt with.

22         THE COURT:  What else are they seeking?

23         MR. BADWAY:  Excuse me?

24         THE COURT:  What else are they seeking through the

25   stipulation, or asking you to stipulate?

 1          MR. BADWAY:  What they're seeking -- yeah, they're

 2     still seeking the bank records, Judge, from -- and they're

 3     still seeking 16 years' worth of material.

 4          THE COURT:  But I thought that they had a list of

 5     transfers -- or I thought I was told that they wanted you to

 6     stipulate to certain transfers.  And if you stipulated to

 7     that, they wouldn't seek the bank records.  Isn't that what

 8     I was told?

 9          MS. JENSON:  That's correct, Your Honor.

10          MR. BADWAY:  If that's -- Judge, if that's

11     correct, then, Judge, if we can arrive at a stipulation

12     where all the stipulation says, Judge, is the transfers that

13     went from Cohmad to my client, I'm willing to stipulate that

14     the --

15          THE COURT:  Well, that's not (indiscernible)

16     transfer directly to BLMIS.

17          MR. BADWAY:  The problem is that's factually

18     inaccurate, Your Honor.  My client --

19          THE COURT:  Well, then, don't stipulate to it and

20     they'll get the bank records.

21          MR. BADWAY:  Yeah --

22          THE COURT:  We're back to where we started.

23          MR. BADWAY:  No, no.  But, no, no, Judge, my

24     client didn't have an account at BLMIS.

25          THE COURT:  I thought I saw evidence that he had

1    an account.

2              MR. BADWAY:  No, Judge.  The problem --

3              THE COURT:  Is it alleged that he had an account?

4              MS. JENSON:  Yes.

5              THE COURT:  All right.

6              MS. JENSON:  It is, in fact.

7              THE COURT:  In the absence of a dismissal of that

8    claim, or a motion to dismiss or a motion for summary

9    judgment --

10             MR. BADWAY:  Motion for summary judgment.

11             THE COURT:  They're entitled to the discovery.  I

12   just -- you know, I don't understand the position.  If you

13   stipulate to the transfers from Cohmad, that's fine.  But if

14   there's a dispute regarding the transfers your client got

15   directly from BLMIS, either because he had an account or

16   because he was paid by BLMIS, then they'll get the records

17   and we'll have a trial (indiscernible).

18             MR. BADWAY:  But, Your Honor, what I would be

19   willing to stipulate to -- because BLMIS -- what they're

20   suggesting is he didn't have an account with them.  He was

21   paid by BLMIS for his work.  This was before --

22             THE COURT:  I thought -- just I thought he had an

23   account.

24             MS. JENSON:  There are two sources of transfers

25   from BLMIS to Defendant Greenberg.  The first is in

1    connection with his IA account.  The second is that, for a

2    period of time, Cohmad relied on BLMIS to make payments to

3    its registered representatives directly.

4           THE COURT:  I understand that.  But did he get any

5    transfers from his own account within the two years, or six

6    -- I guess two years for him?  Unless you're alleging that

7    he's a bad-faith transfer (indiscernible).

8           MS. JENSON:  We are alleging he's a bad-faith

9    transfer.

10          THE COURT:  All right.  So, it's transfers from

11   his account within six years.

12          MS. JENSON:  It would be from the full history,

13   the full history.

14          THE COURT:  The whole history, all right.  See, I

15   think we're back in the same problem, because there's two

16   aspects to this case.  Even if you could stipulate to the

17   transfers by Cohmad directly to the debtor -- I'm sorry,

18   directly to Greenberg, there's still this issue of transfers

19   by BLMIS to Greenberg.

20          MR. BADWAY:  Well, actually, part of that is

21   actually taken -- they actually do agree that part of it was

22   because Cohmad was having BLMIS pay its brokers directly.

23   So, that's --

24          THE COURT:  Well, for whatever reason, it's a

25   transfer.

1          MR. BADWAY:  Right.  No, no, no, but we can

2    stipulate to that, too.  It's just as if Cohmad were paying

3    them.

4          THE COURT:  Well, no, it may not -- then he's an

5    initial transferee, or he may be an initial transferee.  It

6    depends if (indiscernible) became an obligation of Cohmad to

7    (indiscernible).  I just don't know if there's an area of

8    agreement for that.  I can't tell.  I'm hearing two

9    different things.

10          MR. BADWAY:  Judge, one other thing, too, Judge.

11    We had nothing to do with this confidentiality agreement

12    that they worked out with other parties.

13          THE COURT:  Did you receive notice of it?

14          MR. BADWAY:  Judge, we were presented to it just

15    like everybody else was presented to it.

16          THE COURT:  Well, as I said, I'm --

17          MR. BADWAY:  That's what I'm saying, Judge.

18          THE COURT:  When you're dealing with personal bank

19    records, I'm less concerned with a general order of

20    confidentiality within these specific records.  It sounds to

21    me like this issue is unresolved because I'm hearing two

22    different things.  And, as I said the last time, I will

23    direct or I will permit the Trustee to enforce the subpoena

24    over all the documents in confidence, except that any

25    records relating to transfers, either by BLMIS or Cohmad, to

1    Mr. Greenberg will not be confidential.

2         Mechanically, how to deal with that, whether you

3    redact the bank statements (indiscernible) the transfer

4    records or direct deposits, however it was done, at least

5    (indiscernible) --

6         MR. BADWAY:  Your Honor?  Your Honor, may I be

7    heard on that point before you make that ruling?

8         THE COURT:  I've just made it.

9         MR. BADWAY:  Well, Judge, if I could ask you then

10    to reconsider it?

11         THE COURT:  Is this a motion for reargument?

12         MR. BADWAY:  Reargument, reconsideration, however

13    you want to do it, Your Honor?

14         THE COURT:  Go ahead.

15         MR. BADWAY:  Have the records produced to me, and

16    I'll do the redacting?

17         THE COURT:  No.  I said that, in the absence of an

18    agreement, I would have them produced to the Trustee and

19    held under a promise of confidentiality.

20         MR. BADWAY:  Your Honor --

21         THE COURT:  And then the Trustee will identify,

22    presumably, the records he wants to use or he intends to use

23    the records. It's up to them.  You can provide redacted

24    copies to Mr. Badway, so then they'll (indiscernible) you

25    intend to do.  And you can give the balance of the records

1    to Mr. Badway or you can destroy them or do whatever you

2    agree with.

3              MR. BADWAY:  Your Honor, then I ask, with all due

4    respect to the Court, that you stay your ruling so I may

5    appeal it to the District Court.

6              THE COURT:  I'll grant you a 14-day stay.

7              MR. BADWAY:  Thank you, Your Honor.

8              THE COURT:  All right.  But submit an order today.

9              MS. JENSON:  Yes, Your Honor.  Thank you.  One --

10   just one clarification.  I want to make it clear that the

11   1993 date in the subpoenas is independent of Judge Lifland's

12   order.  And I think there was some conflation there of the

13   two, and I just--

14             THE COURT:  Well, the 1990 -- as I understand it,

15   Judge Lifland ruled that you could recover -- avoid and

16   recover initial transfers to Cohmad beyond the six-year

17   limit based on the discovery rule.  At least, you've pled

18   that.  My view of the law is, if you can do that, once you

19   can avoid the transfers, then you can recover them from any

20   subsequent transferee.  And the argument is that Mr.

21   Greenberg is a subsequent transferee of the avoided Cohmad

22   transfers that were made in 1993, and that's the

23   justification for the records.  Am I missing something?

24             MS. JENSON:  No.  Okay.  No, no, Your Honor, thank

25   you.

1               THE COURT:  All right.  Thank you.  Submit an

2    order.

3               MS. JENSON:  Thank you.

4               MR. BADWAY:  Thank you, Your Honor.

5          (Whereupon these proceedings were concluded at 10:51

6    AM)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                          I N D E X

 2

 3                          RULINGS

 4                                          Page      Line

 5      Trustee directed to enforce the subpoena    21        23

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1              C E R T I F I C A T I O N

 2

 3    I, Sonya Ledanski Hyde, certified that the foregoing

 4    transcript is a true and accurate record of the proceedings.

 5

 6

 7

 8    Sonya Ledanski Hyde

 9

10

11

12

13

14

15

16

17

18

19

20    Veritext Legal Solutions

21    330 Old Country Road

22    Suite 300

23    Mineola, NY 11501

24

25    Date:   September 3, 2015
```