| | |
|---|---|
| **Baker & Hostetler LLP** | **Hearing Date: January 27, 2016 at 10:00 a.m.** |
| 45 Rockefeller Plaza | **Objections Due: January 20, 2016 at 5:00 p.m.** |
| New York, NY 10111 | |
| Telephone: (212) 589-4200 | |
| Facsimile: (212) 589-4201 | |

*Attorneys for Irving H. Picard, Trustee*
*for the Substantively Consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities LLC*
*and the Estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>              Plaintiff-Applicant,<br><br>    v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>              Defendant.<br>In re:<br><br>BERNARD L. MADOFF,<br><br>              Debtor. | Adv. Pro. No. 08-01789 (SMB)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>              Plaintiff,<br>    v.<br><br>VIZCAYA PARTNERS LIMITED, BANQUE JACOB SAFRA (GIBRALTAR) LTD, a/k/a BANK J SAFRA LIMITED, ASPHALIA FUND LIMITED, and ZEUS PARTNERS LIMITED,<br><br>              Defendants. | Adv. Pro. No. 09-01154 (SMB) |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, Plaintiff,<br>    v.<br><br>BANQUE J. SAFRA (SUISSE) SA f/k/a BANQUE JACOB SAFRA (SUISSE) SA,<br><br>              Defendant. | Adv. Pro. No. 11-01725 (SMB) |

| | |
|---|---|
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, Plaintiff,<br>v.<br>PICTET ET CIE,<br>                    Defendant. | Adv. Pro. No. 11-01724 (SMB) |

**MOTION FOR ENTRY OF AN ORDER PURSUANT TO SECTION 105(a) OF THE BANKRUPTCY CODE AND RULES 2002 AND 9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE APPROVING A SETTLEMENT AGREEMENT BY AND AMONG THE TRUSTEE, VIZCAYA PARTNERS LIMITED, BANK J. SAFRA SARASIN (GIBRALTAR) LTD. F/K/A BANQUE JACOB SAFRA (GIBRALTAR) LTD. AND BANK J. SAFRA (GIBRALTAR) LIMITED, ASPHALIA FUND LTD, ZEUS PARTNERS LIMITED, BANQUE J. SAFRA SARASIN SA F/K/A BANQUE J. SAFRA (SUISSE) SA AND BANQUE JACOB SAFRA (SUISSE) SA, AND PICTET ET CIE**

TO:   THE HONORABLE STUART M. BERNSTEIN
        UNITED STATES BANKRUPTCY JUDGE

Irving H. Picard (the "Trustee"), as trustee for the liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa-*lll* ("SIPA"), and the substantively consolidated estate of Bernard L. Madoff ("Madoff," and together with BLMIS, collectively, the "Debtors"), by and through his undersigned counsel, submits this motion (the "Motion") seeking entry of an order (the "Approval Order"), pursuant to section 105(a) of the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq.* (the "Bankruptcy Code"), and Rules 2002 and 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), approving settlement, the terms and conditions of which are set forth in an agreement (the "Agreement")[1] by and between the Trustee on the one hand, and Vizcaya Partners Limited ("Vizcaya"), Bank J. Safra Sarasin (Gibraltar) Ltd. f/k/a Banque Jacob Safra (Gibraltar) Ltd. and Bank J. Safra (Gibraltar) Limited ("Safra Gibraltar"),

---

[1] The form of Agreement is attached hereto as Exhibit "A."

2

Asphalia Fund Ltd. ("Asphalia"), Zeus Partners Limited ("Zeus"), Banque J. Safra Sarasin SA f/k/a Banque J. Safra (Suisse) SA and Banque Jacob Safra (Suisse) SA ("Safra Suisse"), and Banque Pictet et Cie SA f/k/a Pictet et Cie ("Pictet," and collectively with Vizcaya, Safra Gibraltar, Asphalia, Zeus, and Safra Suisse, the "Defendants"), on the other hand.  In support of the Motion, the Trustee represents as follows:

## PRELIMINARY STATEMENT

1. The Agreement represents a good faith, complete settlement of all disputes raised in this adversary proceeding between the Trustee and the Defendants.  The settlement will benefit the customer property fund by $24,950,000 and will increase the distribution to BLMIS customers with allowed claims.  The Trustee therefore respectfully requests that the Court approve this settlement.

## BACKGROUND

*The Commencement of the BLMIS Liquidation Proceeding*

2. On December 11, 2008 (the "Filing Date"),[2] the Securities and Exchange Commission (the "Commission") filed a complaint in the United States District Court for the Southern District of New York (the "District Court") against the Debtors (Case No. 08 CV 10791).  In the complaint, the Commission alleged that the Debtors engaged in fraud through the investment adviser activities of BLMIS.

3. On December 15, 2008, pursuant to section 78eee(a)(4)(A) of SIPA, the Commission consented to a combination of its own action with an application of the Securities Investor Protection Corporation ("SIPC").  Thereafter, pursuant to section 78eee(a)(3) of SIPA,

---

[2] In this case, the Filing Date is the date on which the Commission commenced its suit against BLMIS, December 11, 2008, and a receiver was appointed for BLMIS.  *See* section 78*lll*(7)(B) of SIPA.

3

SIPC filed an application in the District Court alleging, inter alia, that BLMIS was not able to meet its obligations to securities customers as they came due and, accordingly, its customers needed the protection afforded by SIPA.

4. On that date, the District Court entered the Protective Decree, to which BLMIS consented, which, in pertinent part:

   (i) appointed the Trustee for the liquidation of the business of BLMIS pursuant to section 78eee(b)(3) of SIPA;

   (ii) appointed Baker & Hostetler LLP as counsel to the Trustee pursuant to section 78eee(b)(3) of SIPA; and

   (iii) removed the case to this Court pursuant to section 78eee(b)(4) of SIPA.

5. On April 13, 2009, an involuntary bankruptcy petition was filed against Madoff. On June 9, 2009, this Court entered an order substantively consolidating Madoff's Chapter 7 estate with the BLMIS SIPA proceeding.

*The Trustee's Claims Against the Defendants*

6. Vizcaya maintained an account with BLMIS with designated account no. 1FR083 ("Account"), which was opened on or around December 21, 2001. Over the life of its account with BLMIS, Vizcaya deposited more than $327 million with BLMIS.

7. In August 2008 and October 2008, Vizcaya withdrew a total of $180 million from the Account (the "Vizcaya Transfers"). At the time of BLMIS's collapse, Vizcaya had net equity of more than $147 million.

8. Zeus is a BVI company that invested exclusively with Vizcaya. Zeus received at least $103 million in subsequent transfers from Vizcaya.

4

9.      Asphalia is a Cayman Islands company whose sub-fund, Asphalia A, invested exclusively with Vizcaya. Asphalia received at least $67 million in subsequent transfers from Vizcaya.

10.     Safra Gibraltar, which became custodian to Vizcaya, Zeus, and Asphalia in 2005, is a Gibraltar bank that received subsequent transfers from Vizcaya, Zeus, and Asphalia.

11.     Safra Suisse is a Swiss private bank that received subsequent transfers from Vizcaya and Zeus, as well as other Madoff feeder funds, including Kingate Global Fund Ltd. ("Kingate Global"), Tremont Group Holdings, Inc. ("Tremont"), and Ariel Fund Ltd (together with Kingate Global and Tremont, the "Safra Suisse Subsequent Transfers").

12.     Pictet is a Swiss private bank that received subsequent transfers from Vizcaya and Asphalia, as well as other Madoff feeder funds Kingate Global, Kingate Euro Fund Ltd., Fairfield Sentry Limited, Fairfield Sigma Limited, Fairfield Lambda Limited, and Tremont (the "Pictet Subsequent Transfers").

13.     On April 9, 2009 the Trustee commenced an adversary proceeding against Vizcaya and Safra Gibraltar. An amended complaint, filed on September 30, 2009, added Zeus, Asphalia, and Siam Capital Management Limited ("Siam") to the proceeding (the "Amended Complaint"). The Amended Complaint seeks to (a) avoid, preserve, and recover the Vizcaya Transfers under sections 547, 548, 550 and 551, of the Bankruptcy Code and SIPA § 78fff-2(c)(3) and recover subsequent transfers under Bankruptcy Code section 550(a) and SIPA § 78fff-2(c)(3).

14.     Vizcaya did not file a customer claim.

15.     In May and October 2009, the Gibraltar Court ordered that certain funds held in custody accounts at Safra Gibraltar for Zeus, Asphalia, and Vizcaya be placed in the custody of the Gibraltar Court.

5

16.     Safra Gibraltar answered the Amended Complaint on December 8, 2009.

17.     Vizcaya, Asphalia, Zeus, and Siam failed to appear.  On August 3, 2010, on the Trustee's motion, the Bankruptcy Court entered a default judgment for (i) $180 million against Vizcaya; (ii) $725,865 against Siam; (iii) $103 million against Zeus; and (iv) $67 million against Asphalia.

18.     On August 23, 2010, the Honorable Burton R. Lifland sent a letter to the Chief Justice of the Gibraltar Court seeking judicial assistance and the Gibraltar Court's "support to ensure the successful enforcement of the Default Judgment."  Judge Lifland requested that the Gibraltar Court repatriate to the U.S. Bankruptcy Court the funds previously paid into the Gibraltar Court.

19.     By stipulation dated November 23, 2010, the Trustee and Zeus agreed to vacate the default judgment against Zeus and further agreed that the approximately $61 million of Zeus funds held by the Gibraltar Court would be transferred to the United States Bankruptcy Court (the "Zeus Funds").  The Zeus Funds were received by the United States Bankruptcy Court on August 9, 2011.

20.     Siam is no longer a party to the proceeding following a settlement with the BLMIS Trustee.

21.     On April 7, 2011 the Trustee filed a complaint against Safra Suisse (the "Safra Suisse Complaint") seeking the recovery of $60,107,615 of Safra Suisse Subsequent Transfers. Safra Suisse answered the Safra Suisse Complaint on September 9, 2011.

22.     On April 7, 2011 the Trustee filed a complaint against Pictet (the "Pictet Complaint").  Pictet did not file an answer in response to the Pictet Complaint.

6

23. The Trustee also commenced three proceedings in the Supreme Court of Gibraltar. The first action was filed in July 2009 and seeks freezing orders, disclosures, turnover and enforcement of the default judgment ("Gibraltar Proceeding A"). The Trustee filed a second action against the Defendants, among others, advancing avoidance and constructive trust under Gibraltar law ("Gibraltar Proceeding B"). The third action was filed on November 25, 2014 against Vizcaya and Asphalia ("Gibraltar Proceeding C").

24. Some of the Defendants also maintain actions against the Trustee and each other. Vizcaya, Zeus, and Asphalia brought a proceeding against the Trustee in October 2009 ("Gibraltar Proceeding D") seeking entitlement to the Vizcaya Transfers and Safra Gibraltar filed a proceeding against Zeus, Asphalia, and others, to which the Trustee was named, seeking the payment into court of monies Safra Gibraltar held in accounts in the names of Zeus and Asphalia ("Gibraltar Proceedings E", and collectively with Gibraltar Proceeding A, Gibraltar Proceeding B, Gibraltar Proceeding C, Gibraltar Proceeding D, the "Gibraltar Proceedings").

25. The Defendants have disputed liability to the BLMIS estate for any and all alleged transfers they received directly or indirectly from BLMIS, including the Vizcaya Transfers, the Safra Suisse Subsequent Transfers and the Pictet Subsequent Transfers. Safra Gibraltar, Safra Suisse, Pictet, and Zeus joined a pending omnibus motion to dismiss arguing that the Trustee's case against them should be dismissed in light of the decision issued by Judge Rakoff in *SIPC v. Bernard L. Madoff Inv. Sec. LLC*, 513 B.R. 222 (S.D.N.Y. 2014).

## SETTLEMENT DISCUSSIONS AND MEDIATION

26. During the past several years, the Parties, through their respective counsel, have engaged in multiple good faith discussions aimed at resolving the Trustee's claims without success.

7

27.     In May 2015, the Parties voluntarily entered a confidential mediation.  In July 2015, the Parties agreed to mediation protocols and selected a mediator (the "Mediator").  Since then, the Parties have actively engaged in mediation, including exchanging initial and reply mediation statements, conducting numerous in-person and telephonic meetings with the Mediator, and submitting various supplemental materials to the Mediator.  Through the mediation process, the Parties recognized the cost and risk associated with the continuing this adversary proceeding and have decided to settle to avoid the delay, expense, and uncertainties of litigation in the United States and Gibraltar, and were able to reach a compromise.

### OVERVIEW OF THE AGREEMENT

28.     The principal terms and conditions of the Agreement are generally as follows (as stated above, the Agreement is attached as Exhibit "A" and should be reviewed for a complete account of its terms):[3]

    a.  At the Closing, Defendants shall pay or cause to be paid to the Trustee, Twenty-Four Million Nine Hundred Fifty Thousand dollars (the "Settlement Payment"), subject to the release of a sufficient amount of the Zeus Funds to make such payment.

    b.  None of the Defendants, including Vizcaya, shall be entitled to any distributions from the BLMIS Estate and shall not seek allowance of a customer claim or any other claim under section 502(h) of the Bankruptcy Code.

    c.  The Trustee will release, acquit, and absolutely discharge the Defendants on the specific terms set forth in the Agreement.

---

[3] Terms not otherwise defined hall have the meaning ascribed to them in the Agreement.

8

    d.    The Defendants will release, acquit, and absolutely discharge the Trustee and BLMIS and its consolidated estate on the specific terms set forth in the Agreement.

    e.    The Trustee shall seek this Court's approval of the Agreement.

    f.    The Gibraltar Proceedings will be dismissed and the funds held by the Gibraltar Court released in accordance with the terms of the Agreement.

    g.    At the Closing, the Trustee shall submit to this Court an order releasing the Zeus Funds as provided in the Agreement and a stipulation requesting the dismissal of this adversary proceeding.

## RELIEF REQUESTED

29. By this Motion, the Trustee respectfully requests that the Court enter an order substantially in the form of the proposed Order attached as Exhibit "B" approving the Agreement.

## LEGAL BASIS

30. Bankruptcy Rule 9019(a) states, in pertinent part, that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Courts have held that in order to approve a settlement or compromise under Bankruptcy Rule 9019(a), a bankruptcy court should find that the compromise proposed is fair and equitable, reasonable, and in the best interests of a debtor's estate. *In re Ionosphere Clubs, Inc.*, 156 BR 414, 426 (S.D.N.Y. 1993), *aff'd*, 17 F.3d 600 (2d Cir. 1994) (citing *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968)).

31. The Second Circuit has stated that a bankruptcy court, in determining whether to approve a compromise, should not decide the numerous questions of law and fact raised by the compromise, but rather should "canvass the issues and see whether the settlement 'fall[s] below

the lowest point in the range of reasonableness.'" *Liu v. Silverman (In re Liu)*, No. 98-5027, 1998 U.S. App. LEXIS 31698, at *3 (2d Cir. Dec. 18, 1998) (quoting *In re W.T. Grant Co.*, 699 F.2d 599, 608 (2d Cir. 1983)); *see also Masonic Hall & Asylum Fund v. Official Comm. Of Unsecured Creditors (In re Refco, Inc.),* No. 05-6006, 2006 U.S. Dist. LEXIS 85691, at *21-22 (S.D.N.Y. Nov. 16, 2006); *In re Ionosphere Clubs*, 156 B.R. at 426. The "court need not conduct a 'mini-trial' to determine the merits of the underlying litigation." *In re Purified Down Prods. Corp.*, 150 B.R. 519, 522 (S.D.N.Y. 1993).

32.    In deciding whether a particular compromise falls within the "range of reasonableness," courts consider the following factors:

   a.    the probability of success in the litigation;
   b.    the difficulties associated with collection;
   c.    the complexity of the litigation, and the attendant expense, inconvenience, and delay; and
   d.    the paramount interests of the creditor (or in this case, customers).

*In re Refco, Inc.*, 2006 U.S. Dist. LEXIS 85691 at *22; *Nellis v. Shugrue*, 165 B.R. 115, 122 (S.D.N.Y. 1994) (citing *In re Drexel Burnham Lambert Grp.*, 960 F.2d 285, 292 (2d Cir. 1992), *cert. denied*, 506 U.S. 1088 (1993)).

33.    The bankruptcy court may credit and consider the opinions of the trustee or debtor and their counsel in determining whether a settlement is fair and equitable. *See In re Purified Down Prods.*, 150 B.R. at 522; *In re Drexel Burnham Lambert Grp.,* 134 B.R. at 505. Even though the court has discretion to approve settlements and must independently evaluate the reasonableness of the settlement, *In re Rosenberg*, 419 B.R. 532,536 (Bankr. E.D.N.Y. 2009), the business judgment of the trustee and his counsel should be considered in determining whether a settlement is fair and equitable. *In re Chemtura Corp.*, 439 B.R. 561, 594 (Bankr. S.D.N.Y. 2010). The competency and experience of counsel supporting the settlement may also

be considered. *Nellis*, 165 B.R. at 122. Finally, the court should be mindful of the principle that "the law favors compromise." *In re Drexel Burnham Lambert Grp.*, 134 B.R. at 505 (quoting *In re Blair*, 538 F.2d 849, 851 (9th Cir. 1976)).

34.     The Agreement furthers the interests of BLMIS customers by adding $24,950,000 to the customer property fund and waiving any claim of right to Vizcaya's potential $140 million net equity claim. The Agreement also resolves all claims among the Parties in this adversary proceeding and the Gibraltar Proceedings and avoids the cost and delay of what could otherwise be lengthy and contentious litigation. (Declaration of the Trustee in Support of the Motion (the "Picard Declaration") attached here as Exhibit "C").

## CONCLUSION

35.     In sum, the Trustee submits that the Agreement should be approved to avoid lengthy, burdensome, and expensive litigation and because it represents a fair and reasonable compromise of the Trustee's claims. Because the Agreement is well within the "range of reasonableness" and confers a benefit on the estate, the Trustee respectfully requests that the Court enter an Order approving the Agreement.

## NOTICE

36.     In accordance with Bankruptcy Rules 2002 and 9019, notice of this Motion has been given to (a) SIPC; (b) Anthony L. Paccione, Katten Muchin Rosenman LLP, 575 Madison Avenue, New York, New York 10022; (c) Jeffrey T. Scott, Sullivan & Cromwell LLP, 125 Broad Street, New York, New York 10004; and (d) Joseph P. Moodhe, Debevoise & Plimpton LLP, 919 Third Avenue, New York, New York 10022. Notice of this Motion will also be provided via email and/or U.S. Mail to all persons who have filed notices of appearance in the BLMIS proceeding and to all defendants in this adversary proceeding pursuant to the Order

Establishing Notice Procedures and Limiting Notice, ECF No. 4560. The Trustee submits that no other or further notice is required.

**WHEREFORE**, the Trustee respectfully requests entry of an Order substantially in the form of Exhibit "B" granting the relief requested in the Motion.

Dated: December 31, 2015
      New York, New York

Respectfully submitted,

By:   */s/ Oren J. Warshavsky*
**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
Oren J. Warshavsky
Email: owarshavsky@bakerlaw.com
Gonzalo S. Zeballos
Email: gzeballos@bakerlaw.com
Robertson D. Beckerlegge
Email: rbeckerlegge@bakerlaw.com

*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Estate of Bernard L. Madoff*