**Baker & Hostetler LLP**

45 Rockefeller Plaza

New York, New York 10111

Telephone: (212) 589-4200

Facsimile: (212) 589-4201

David J. Sheehan

Seanna R. Brown

Nicholas J. Cremona

Jorian L. Rose

Amy E. Vanderwal

George Klidonas

Stephanie A. Ackerman

Hearing Date:  February 24, 2016

Hearing Time:  10:00 AM (EST)

Objection Deadline:  February 1, 2016

*Attorneys for Irving H. Picard, Trustee for the*
*Substantively Consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities LLC*
*and the Estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>             Plaintiff-Applicant,<br><br>      v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>           Defendant. | Adv. Pro. No. 08-01789 (SMB)<br><br>SIPA Liquidation<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>           Debtor. | |

**TRUSTEE'S MOTION AND MEMORANDUM TO AFFIRM HIS DETERMINATIONS DENYING CLAIMS OF CLAIMANTS HOLDING INTERESTS IN BLACK RIVER ASSOCIATES LP, MOT FAMILY INVESTORS, LP, ROTHSCHILD FAMILY PARTNERSHIP, AND OSTRIN FAMILY PARTNERSHIP**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND ...................................................................................................................... 2

    A.    THE COMMENCEMENT OF THE SIPA PROCEEDING ................................. 2

    B.    THE PARTNERSHIPS' STRUCTURE, BLMIS ACCOUNTS, AND
        CLAIMS ............................................................................................................ 3

        1.    Black River Associates LP ...................................................................... 3

        2.    MOT Family Investors LP ...................................................................... 5

        3.    Rothschild Family Partnership ................................................................ 6

        4.    Ostrin Family Partnership ...................................................................... 8

    C.    THE BLMIS ACCOUNT RECORDS ................................................................ 9

    D.    THE CLAIMS ................................................................................................... 10

    E.    THE CUSTOMER DECISIONS ...................................................................... 11

        1.    The Initial Feeder Fund Motion .............................................................. 11

        2.    The ERISA Motion .................................................................................. 13

        3.    Other Customer Motions .......................................................................... 14

ARGUMENT ........................................................................................................................... 16

CONCLUSION ........................................................................................................................ 23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Adler, Coleman Clearing Corp.*,
    216 B.R. 719 (Bankr. S.D.N.Y. 1998) ...................................................................................17

*Alley v. Clark*,
    71 F. Supp. 521 (E.D.N.Y. 1947) ..........................................................................................19

*Aozora Bank Ltd. v. Sec. Inv'r Prot. Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*,
    480 B.R. 117 (S.D.N.Y. 2012) ...............................................................................................12

*Appleton v. First Nat'l Bank of Ohio*,
    62 F.3d 791 (6th Cir. 1995) ....................................................................................................17

*In re Beacon Assocs. Litig.*,
    745 F. Supp. 2d 386 (S.D.N.Y. 2010) ......................................................................................2

*In re Bernard L. Madoff Inv. Sec. LLC*,
    654 F.3d 229 (2d Cir. 2011) ........................................................................................ *passim*

*In re Bernard L. Madoff Inv. Sec. LLC*,
    No. 15-01151 (PAE), (S.D.N.Y. Jan. 14, 2016) ....................................................................23

*CarVal UK Ltd. v. Giddens (In re Lehman Bros., Inc.)*,
    791 F.3d 277 (2d Cir. 2015) ...................................................................................................17

*Crocker Nat'l Bank v. Perroton*,
    255 Cal. Rptr. 794 (Cal. App. 1st Dist. 1989) .......................................................................19

*Evans v. Galardi*,
    546 P.2d 313 (Cal. 1976) ........................................................................................................19

*In re Klein, Maus & Shire, Inc.*,
    301 B.R. 408 (Bankr. S.D.N.Y. 2003) ...................................................................................23

*Kruse v. Sec. Inv'r Prot. Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*,
    708 F.3d 422 (2d Cir. 2013) ...................................................................................................12

*Kruse v. Sec. Inv'r Prot. Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*,
    708 F.3d 422 (2d Cir. 2013) ........................................................................................ *passim*

*La Russo v. Paladino*,
    109 N.Y.S.2d 627 (N.Y. Sup. Ct. 1951) ...............................................................................20

*In re Lehman Bros. Inc.*,
    462 B.R. 53 (Bankr. S.D.N.Y. 2011) .....................................................................................17

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Mishkin v. Siclari (In re Adler, Coleman Clearing Corp.)*,
    277 B.R. 520 (Bankr. S.D.N.Y. 2002) .................................................................3, 23

*Newburger, Loeb & Co. v. Gross*,
    563 F.2d 1057 (2d Cir. 1977) ................................................................................19

*Sec. Inv'r Prot. Corp. v. 2427 Parent Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*,
    779 F.3d 74 (2d Cir. 2015) ...............................................................................20, 21

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff)*,
    515 B.R. 161 (Bankr. S.D.N.Y. 2014) .......................................................15, 19, 23

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff Inv. Sec. LLC)*,
    454 B.R. 285 (Bankr. S.D.N.Y. 2011) .............................................................12, 23

*Sec. Inv'r Prot. Corp. v. Jacqueline Green Rollover Account*,
    Nos. 12 Civ. 1039 (DLC), 12 Civ. 1139 (DLC), 2012 WL 3042986 (S.D.N.Y. July 25, 2012) ......................................................................................................14

*Sec. Inv'r Protec. Corp. v. Morgan, Kennedy & Co.*,
    533 F.2d 1314 (2d Cir. 1976) .......................................................13, 18, 19, 21

*SEC v. Madoff*,
    No. 1:08-cv-10791-LLS, 2008 WL 5197070 (S.D.N.Y. filed Dec. 11, 2008) .........................2

*Stafford v. Giddens (In re New Times Sec. Servs., Inc.)*,
    463 F.3d 125 (2d Cir. 2006) .......................................................................13, 17, 23

*Weisinger v. Rae*,
    188 N.Y.S.2d 10 (N.Y. Sup. Ct. 1959) .................................................................20

**Statutes**

15 U.S.C. § 78 *lll*(11) .............................................................................................21

15 U.S.C. § 78aaa *et seq.* ........................................................................................1

15 U.S.C. § 78eee(a)(4) ...........................................................................................2

15 U.S.C. § 78eee(b)(3) ...........................................................................................2

15 U.S.C. § 78eee(b)(4) ...........................................................................................2

15 U.S.C. § 78fff-1(a) ..............................................................................................2

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

15 U.S.C. § 78fff-2(b) ........................................................................................................18

15 U.S.C. § 78fff-3(a) ..........................................................................................................3

15 U.S.C. § 78*lll*(2) ...................................................................................................... *passim*

15 U.S.C. § 78*lll*(4) ..............................................................................................................3

15 U.S.C. § 78*lll*(11) ............................................................................................................3

CAL. CIV. PROC. CODE ANN. § 688 ......................................................................................19

CAL. CORP. CODE ANN. § 15901.04 .....................................................................................19

Dodd-Frank Wall Street Reform and Consumer Protection Act. Pub. L. No. 111-
203, § 983(b), 124 Stat. 1931 (2010) ........................................................................17

N.Y. PARTNERSHIP LAW § 12 ........................................................................................19, 20

N.Y. PARTNERSHIP LAW § 51(2)(a) ......................................................................................20

N.Y. PARTNERSHIP LAW § 51(2)(b) ......................................................................................20

**Rules**

Fed. R. Civ. P. 36(a)(3) ................................................................................................ *passim*

**Other Authorities**

1–12 *Collier on Bankruptcy* ¶ 12.12 ....................................................................................13

Irving H. Picard, as trustee ("Trustee") for the substantively consolidated liquidation of

Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor

Protection Act, 15 U.S.C. § 78aaa *et seq.* ("SIPA"),[1] and the estate of Bernard L. Madoff

("Madoff"), respectfully submits this combined motion and memorandum of law (the "Motion")

to affirm the denial of thirty-four (34) claims filed by claimants (the "Objecting Claimants") who

objected to the Trustee's determinations and who invested in or purchased partnership interests

in one of the following: Black River Associates LP (a New York limited partnership), as well as

MOT Family Investors LP, Rothschild Family Partnership, and Ostrin Family Partnership

(California limited partnerships) (all four collectively, the "Partnerships").  The Objecting

Claimants are specifically identified in Exhibit 2 to the Declaration of Vineet Sehgal ("Sehgal

Decl.") filed herewith.  This Motion is based upon the law set forth below as well as the facts set

forth in the accompanying Sehgal Declaration and the declaration of Stephanie Ackerman

("Ackerman Decl.").

## PRELIMINARY STATEMENT

The Objecting Claimants seek customer status in this SIPA proceeding, despite

acknowledging through discovery that they did not have accounts in their name and had no direct

financial relationship with BLMIS.  Instead, they invested in the Partnerships, each of which had

a BLMIS account, invested partnership assets with BLMIS, and filed its own claim with the

Trustee.  The case is governed by the Second Circuit decision *Kruse v. Sec. Inv'r Prot. Corp. (In

re Bernard L. Madoff Inv. Sec. LLC)*, 708 F.3d 422 (2d Cir. 2013) and the many related decisions

in this SIPA proceeding, referenced in Section E *infra*, involving the question of who is a

"customer" under SIPA.  The current Motion seeks to apply these decisions to the Objecting

---

[1] *See* 15 U.S.C. § 78aaa *et seq.* (West 2009).  For convenience, subsequent references to sections of the Securities
Investor Protection Act shall be denoted simply as "SIPA § __."

Claimants through entry of an order affirming the Trustee's denial of their claims as listed in

Exhibit 2 to the Declaration of Vineet Sehgal, disallowing their claims, and overruling the related

claims objections on the grounds that Claimants are not "customers" as such term is used at

SIPA § 78*lll*(2).[2]

## BACKGROUND

### A.      THE COMMENCEMENT OF THE SIPA PROCEEDING

The basic facts of the BLMIS fraud are widely known and have been recounted in

numerous decisions.  *See, e.g.*, *In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d 229, 231 (2d

Cir. 2011); *In re Beacon Assocs. Litig.*, 745 F. Supp. 2d 386, 393–94 (S.D.N.Y. 2010).   On

December 11, 2008, the Securities and Exchange Commission ("SEC") filed a complaint in the

District Court against Madoff and BLMIS, captioned *SEC v. Madoff*, No. 1:08-cv-10791-LLS,

2008 WL 5197070 (S.D.N.Y. filed Dec. 11, 2008), alleging fraud through the investment advisor

activities of BLMIS.  The SEC consented to the consolidation of its case with an application of

the Securities Investor Protection Corporation ("SIPC").   Thereafter, SIPC filed an application

under SIPA § 78eee(a)(4) alleging that because of its insolvency, BLMIS needed SIPA

protection.  The District Court appointed the Trustee under SIPA § 78eee(b)(3) and removed the

proceeding to this Court under SIPA § 78eee(b)(4).

Under SIPA, the Trustee is responsible, among other things, for recovering and

distributing customer property to a broker's customers, assessing claims, and liquidating other

assets of the firm for the benefit of the estate and its creditors.  A SIPA trustee has the general

powers of a bankruptcy trustee, in addition to the powers granted by SIPA.  SIPA § 78fff-1(a).

The statutory framework for the satisfaction of customer claims in a SIPA liquidation proceeding

---

[2] The Trustee reserves all other bases for objections to the claims that are the subject of the Motion.

provides that "customers," as defined in SIPA § 78*lll*(2), share pro rata in "customer property," as defined in SIPA § 78*lll*(4), to the extent of their "net equity," as defined in SIPA § 78*lll*(11). For each customer with a valid net equity claim, if the customer's share of customer property does not make her whole, SIPC advances funds to the SIPA trustee up to the amount of the customer's net equity, not to exceed $500,000 (the amount applicable to this case). SIPA § 78fff-3(a). It is the customer's burden to demonstrate he or she is entitled to customer status. *Mishkin v. Siclari (In re Adler, Coleman Clearing Corp.)*, 277 B.R. 520, 557 (Bankr. S.D.N.Y. 2002) ("[I]t is well-established in the Second Circuit that a claimant bears the burden of proving that he or she is a 'customer' under SIPA.").

On December 23, 2008, this Court entered a Claims Procedures Order. *See* ECF No. 12. Pursuant to that order, the Trustee determines claims eligible for customer protection under SIPA, claimants may object to the Trustee's determination of a claim by filing an objection in this Court, and the Trustee requests a hearing date for the objection and notifies the objecting claimant thereof. *Id.*

## B. THE PARTNERSHIPS' STRUCTURE, BLMIS ACCOUNTS, AND CLAIMS

The Objecting Claimants invested into one of the Partnerships. Twenty-one (21) claims were filed by partners of Black River Associates LP, three (3) claims were filed by partners of MOT Family Investors LP, six (6) claims were filed by partners of Rothschild Family Partners, and four (4) claims were filed by partners of Ostrin Family Partnership. *See* Sehgal Decl., Exs. 1-3. The claims of the Partnerships themselves are not at issue in this Motion.

### 1. Black River Associates LP

BLMIS Account No. 1CM795 is an account held in the name of Black River Associates. Sehgal Decl., Ex. 4, AMF00275081. Arnold A. Saltzman and Eric F. Saltzman represented to BLMIS that they were the general partners and that the partnership was located in New York.

3

*Id.*, AMF00275089.   Virtually all of the correspondence between BLMIS and Black River Associates regarding deposits and withdrawals was with Arnold and Eric Saltzman.   *See generally id.*, AMF00275082.   A letter sent from Eric Saltzman to the Trustee, as well as to the Court, after the fraud was revealed, concedes that Black River Associates was a limited partnership. *See* ECF No. 3571.[3]   Although Black River Associates indicated in its claim that BLMIS was aware of its partners, *see* Sehgal Decl., Ex. 5, MWPTAP00369697, there are no documents in the customer file listing the partners of Black River Associates, *see generally* Sehgal Decl., Ex. 4, AMF00275081.

None of the Black River Associates Objecting Claimants responded to discovery served on them by the Trustee.  By failing to respond to the requests for admissions, each of them admitted (among other things) that they did not have an account in their name at BLMIS, they never deposited cash or securities with BLMIS, did not receive investment statements, correspondence or tax statements from BLMIS, did not have any control, investment discretion or decision-making power over any investments at BLMIS, did not enter into any contacts with BLMIS, and their only relationship to BLMIS existed by way of their relationship to the Partnership. *See generally* Ackerman Decl. ¶¶ 14, 21 Ex. 8;[4] *see also* FED. R. CIV. P. 36(a)(3).

Black River Associates filed a customer claim for its account.  The Trustee allowed the claim in the amount of $8,966,598.45 and a determination letter was sent to Black River Associates allowing its customer claim. Sehgal Decl. ¶14.  To date, Black River Associates has received interim distributions totaling $5,616,699.74.

---

[3] The objection to the Trustee's determination was submitted by a Black River Associates partner, Marian Saltzman, but the letter accompanying the objection was drafted by Eric Saltzman, the general partner.

[4] Black River Associates  Requests for Admissions, Ackerman Decl., Ex. 9 (hereafter "Black River Associates RFA __").

### 2. __MOT Family Investors LP__

BLMIS Account No. 1M0083 is an account held in the name of the MOT Family Investors LP c/o Scott Porter and Jerome Porter. Sehgal Decl., Ex. 6, AMF00298203. Jerome K. Porter and Scott G. Porter signed a "Partnership Account Agreement" stating that the MOT Family Investors was a "duly organized partnership," and indicating that Jerome and Scott Porter were the general partners. *Id.*, AMF00298330. The BLMIS customer files reflect that virtually all transactions with BLMIS were undertaken by either Jerome or Scott Porter on behalf of MOT Family Investors. *See generally* Sehgal Decl., Ex. 6, AMF00298203.

Based upon documents provided by Joan B. Epstein in her claim to the Trustee, MOT Family Investors was a limited partnership. *See, e.g.,* Sehgal Decl., Ex. 7, MWPTAP00247585. For example, the Schedule K-1 specifically states that Mrs. Epstein was a "Limited partner or other LLC member" Of MOT Family Investors. *See id.*, MWPTAP00247623-653. MOT Family Investors was governed by its subscription agreement, Ackerman Decl., Ex. 5, MCMDP_00001778, and by California law. Under section 1 of the agreement, partners were purchasing an interest in MOT Family Investors, and not BLMIS directly. *See id.* The partners also irrevocably appointed the general partner with power of attorney over the assets and agreements relating to the MOT Family Investors. *See generally id.*, MCMDP_00001780.

Only three of The MOT Family Investors Objecting Claimants responded to discovery served by the Trustee: (i) Mrs. Rosalind Sabella Clark; (ii) Michael Epstein; and (iii) Joan B. Epstein. In responding to discovery, Mrs. Clark admitted that she believed that she was investing in MOT Family Investors and that their only relationship she had was with MOT Family Investors. *See* Ackerman Decl. Ex. 4, MCMDR_00000001. Mrs. Clark also admitted to receiving funds, investment statements, and tax statements from MOT Family Investors, and not from BLMIS. *See id.*, MCMDR_00000002. Checks from Mrs. Clark also reflect that payments

were made to and from MOT Family Investors, and not to and from BLMIS.  *See* Ackerman

Decl. Ex. 6, MCMDP_00000002-03, MCMDP_00000009-10.  Finally, Mrs. Clark explained that

a Wells Fargo account existed for MOT Family Investors in connection with the investment.  *See*

Ackerman Decl. Ex. 4, MCMDR_00000005.

The Epsteins explained in their responses to the Trustee's interrogatories that they wished

to invest their funds in their IRA in BLMIS and were referred to Scott Porter, who accepted them

as a "limited partner" in the MOT Family Investors.  *See* Ackerman Decl. Exs. 2, 3,

MCMDR_00000190, MCMDR_00000246.  When making investments, the Epsteins explained

that they would notify their custodian, who would then "rollover IRA money from another IRA

account" and transfer the funds to Scott Porter (*i.e.*, MOT Family Investors).  *See id.*  Likewise,

when the Epsteins wanted to withdraw funds, they would ask Scott Porter who, on behalf of

MOT Family Investors, would request a withdrawal from BLMIS and roll the funds over to the

custodian, who would in turn send a check to the Epsteins.  *See id.*[5]

MOT Family Investors filed a customer claim for its account.  The Trustee allowed the

claim in the amount of $14,146,108.10 and a determination letter was sent to MOT Family

Investors allowing its customer claim. Sehgal Decl. ¶14. To date, MOT Family Investors has

received interim distributions totaling $8,572,335.12.

### 3.    Rothschild Family Partnership

BLMIS Account No. 1ZA600 is an account held in the name of Rothschild Family

Partnership (formerly known as Henry and Ilse Rothschild J/T WROS).  Sehgal Decl., Ex. 8,

AMF00030211.  On September 20, 2002, Henry and Ilse Rothschild requested that BLMIS

---

[5] The Epsteins also had a direct account with BLMIS that is not implicated in this Motion.  The Epsteins indicated that they had an account with BLMIS that, in connection with their direct account, they spoke on the phone with Madoff and Frank DiPascali, and received funds from BLMIS, but these circumstances only related to their "cash account" with BLMIS, which was a separate account from the MOT Family Investors account.  Ackerman Decl. Exs. 2, 3, MCMDR_00000190, MCMDR_00000246.

change the name of the account from their name to the partnership's name. *Id.*, AMF00030255.

Ken Kreger, Frank D. Rothschild, and Nathan B. Johnson were listed as the general partners of

the Rothschild Family Partnership. *Id.*, AMF00030254. A W-9 form also shows that Rothschild

Family Partnership was held out as a partnership. *Id.*, AMF00030220. The BLMIS customer

files reflect that most transactions with BLMIS were undertaken by the general partners on

behalf of the Rothschild Family Partnership. *Id.*, AMF00030214.

The Rothschild Family Partnership was governed by its limited partnership agreement.

Sehgal Decl., Ex. 8, AMF00030228. The partnership was formed under California law. *Id.*,

AMF00030248. The purpose of the partnership was to own or invest in certain property, which

purportedly included the partnership's BLMIS account. *See generally id.*, AMF00030229.

Each partner had rights to its own "Capital Account" and the account increased based upon

contributions and decreased based upon distributions. *Id.*, AMF00030230. Likewise, each

partner's partnership interest was limited to the partner's proportionate share of profits, losses,

cash distributions or other economic rights. *Id.*, AMF00030231. Only the general partners and

not the limited partners possessed the power to act on behalf of the Rothschild Family

Partnership. *See id.*, AMF00030235. In fact, the agreement prohibited the limited partners from,

among other things, controlling the business affairs of the partnership. *Id.*, AMF00030239.

Likewise, the partners also agreed to appoint Kenneth Kreger as attorney-in-fact for the

partnership. *Id.*, AMF00030246.

None of the Rothschild Family Partnership Objecting Claimants responded to discovery

served by the Trustee. By failing to respond to the requests for admissions, each of them

admitted (among other things) that they did not have an account in their name at BLMIS, they

never deposited cash or securities with BLMIS, did not receive investment statements,

correspondence or tax statements from BLMIS, did not have any control, investment discretion or decision-making power over any investments at BLMIS, did not enter into any contacts with BLMIS, and their only relationship to BLMIS existed by way of their relationship to the Partnership. *See generally* Ackerman Decl. ¶¶ 14, 21 Ex. 8;[6] *see also* Fed. R. Civ. P. 36(a)(3).

Rothschild Family Partnership filed a customer claim for its account. The Trustee allowed the claim in the amount of $14,142,792.28 and a determination letter was sent to Rothschild Family Partnership allowing its customer claim. Sehgal Decl. ¶14. To date, Rothschild Family Partnership has received interim distributions, totaling $8,570,442.98.

### 4.    Ostrin Family Partnership

BLMIS Account No. 1ZB511 is an account held in the name of Ostrin Family Partnership. Sehgal Decl., Ex. 9, AMF00066576. Richard M. Glantz and Jerry Ostrin were listed as the general partners of the Ostrin Family Partnership. *Id.*, AMF00066605. The BLMIS customer files reflect that virtually all transactions with BLMIS were undertaken by Mr. Glantz on behalf of the Ostrin Family Partnership. *Id.*, AMF00066577.

The Ostrin Family Partnership was governed by its limited partnership agreement. Sehgal Decl., Ex. 9, AMF00066611. The partnership was formed under California law. *Id.* Each partner received units in the partnership in exchange for their respective investment *in the partnership*. *Id.*, AMF00066616. Only the general partners and not the limited partners possessed the power to act on behalf of the Ostrin Family Partnership. *See id.*, AMF00066625. The agreement prohibited the limited partners from participating in the management of the partnership, transacting any business, or acting on the partnership's behalf. *Id.*, AMF00066625.

---

[6] Rothschild Family Partnership Requests for Admissions, Ackerman Decl., Ex. 10 (hereafter "Rothschild Family Partnership RFA __").

Likewise, the partners also appointed the general partners as attorney-in-fact for the partnership. *Id.*, AMF00066632.

None of the Ostrin Family Partnership Objecting Claimants responded to discovery. By failing to respond to the requests for admissions, each of them admitted (among other things) that they did not have an account in their name at BLMIS, they never deposited cash or securities with BLMIS, did not receive investment statements, correspondence or tax statements from BLMIS, did not have any control, investment discretion or decision-making power over any investments at BLMIS, did not enter into any contacts with BLMIS, and their only relationship to BLMIS existed by way of their relationship to the Partnership. *See generally* Ackerman Decl. Ex. ¶¶ 14, 21 Ex. 8;[7] *see also* FED. R. CIV. P. 36(a)(3).

The Ostrin Family Partnership filed a customer claim for its account. The Trustee allowed the claim in the amount of $2,681,500.00 and a determination letter was sent to the Ostrin Family Partnership allowing its customer claim. Sehgal Decl. ¶14. To date, Ostrin Family Partnership has received interim distributions, totaling $2,030,171.17.

*     *     *     *     *     *

As discussed *infra*, by California and New York law, the Partnerships were treated as entities that owned their own property. Each had a BLMIS account in its name, according to the books and records of BLMIS and entrusted its property to BLMIS for the purposes of purchasing securities. None of the Partnerships was a bank, broker, or dealer.

## C.    THE BLMIS ACCOUNT RECORDS

The Partnerships each maintained an account in its own name (each, an "Account" and collectively, the "Accounts") with BLMIS. The Objecting Claimants did not. The records of

---

[7] Ostrin Family Partnership Requests for Admissions, Ackerman Decl., Ex. 11 (hereafter "Ostrin Family Partnership RFA __").

BLMIS reflect money deposited or withdrawn by and on behalf of the Partnerships, and not by the Objecting Claimants individually. *See* Sehgal Decl., Exs. 4, 6, 8, 9. Almost all of the Objecting Claimants admit that BLMIS sent account statements and related communications to the Partnerships, not the Objecting Claimants.[8] The BLMIS customer files for these Accounts do not reference the particular interests held by Objecting Claimants in the Partnerships. *See id.*

Because the Partnerships each maintained an Account at BLMIS, and made deposits into and withdrawals from that Account, the books and records of BLMIS reflect the amounts owing and owed by the BLMIS estate for that Account. The books and records of BLMIS do not, in contrast, reflect deposits or withdrawals directly to or from BLMIS by the individual Objecting Claimants with regard to any Partnership's BLMIS Account. They also do not show what amounts individual Objecting Claimants invested in, or withdrew from, the Partnerships. *See* Sehgal Decl. Exs. 4, 6, 8, 9. It was each Partnership that had the right to demand, on behalf of the Partnership, return of the Partnership property entrusted to its Account, and each Partnership that is accordingly entitled to a customer claim to the extent of its net equity.

## D.    **THE CLAIMS**

The claims at issue in this Motion involve investments in the Partnerships. Sehgal Decl. Exs. 1-3. The Objecting Claimants, the thirty-four (34) claims filed by them, and the objections to determination of those claims, are specifically identified in Exhibits 2 and 3 to the Sehgal Declaration. The Trustee denied their claims because they lacked BLMIS accounts and they were not customers of BLMIS. Collectively, the Objecting Claimants filed thirty-three (33) docketed objections to the Trustee's determination of their claims. Sehgal Decl. Exs. 1-3. This

---

[8] The Epsteins indicated that they received investments statements from BLMIS in their names, but it is likely that they are referring to the account that they in fact *did* open in their names, and not in connection with MOT Family Investors. Ackerman Decl. Exs. 3, 4, MCMDR_00000190, MCMDR_00000246.

Motion addresses all objections regarding the specified claims by Objecting Claimants who are identified on Exhibit 2 of the Sehgal Declaration.

Since receiving the thirty-three (33) docketed objections to the claims determinations, the Trustee served discovery on each of the Objecting Claimants seeking to determine their basis for claiming customer status, and inquiring into deposits, payments, communications, account openings, and their relationship with the account holder. Few of the Objecting Claimants responded, and those who did provided no persuasive evidence of their entitlement to customer status under SIPA. *See* Ackerman Decl., ¶14, Exs. 2-6, 8.

E.     **THE CUSTOMER DECISIONS**

There have been twelve prior decisions in this proceeding dealing with whether investors in BLMIS accountholders could be treated as "customers" under SIPA; all of the decisions said they could not.

        1.     **The Initial Feeder Fund Motion**

The Trustee's first motion regarding the definition of "customer" under SIPA was the Trustee's Motion To Affirm Trustee's Determinations Denying Claims of Claimants Without BLMIS Accounts In Their Names, Namely, Investors in Feeder Funds, filed on June 11, 2010, ECF No. 2416 (the "Initial Feeder Fund Motion"). On June 28, 2011, this Court issued its memorandum decision and order affirming the Trustee's denial of the claims. *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff Inv. Sec. LLC),* 454 B.R. 285 (Bankr. S.D.N.Y. 2011), *aff'd sub nom. Aozora Bank Ltd. v. Sec. Inv'r Prot. Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*, 480 B.R. 117 (S.D.N.Y. 2012), *aff'd sub nom. Kruse v. Sec. Inv'r Prot. Corp. (In re Bernard L. Madoff Inv. Sec. LLC),* 708 F.3d 422 (2d Cir. 2013).

The Court found that, in light of the plain language of SIPA and relevant case law, the claimants in the Initial Feeder Fund Motion did not qualify as "customers" under SIPA. *Sec.*

11

*Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff Inv. Sec. LLC)*, 454 B.R. at 290.  The Court held that the claimants invested in, not through, those feeder funds, and had no individual accounts at BLMIS.  *Id.* at 297.  It was the feeder funds that entrusted their monies with BLMIS for the purpose of trading or investing in securities—the touchstone of "customer" status—whereas the claimants purchased interests in the feeder funds.  *Id.* at 299. The Court held that absent a direct relationship with BLMIS, the claimants sought a definition of "customer" that stretched the term beyond its limits.  *Id.* at 302.

After the District Court affirmed, *Aozora Bank Ltd.*, 480 B.R. 117 (S.D.N.Y. 2012), the claimants appealed to the Second Circuit, which also affirmed.  The Second Circuit confirmed that "[j]udicial interpretations of 'customer' status support a narrow interpretation of the SIPA's provisions."  *Kruse v. Sec. Inv'r Prot. Corp.*, 708 F.3d at 426 (quoting *Stafford v. Giddens (In re New Times Sec. Servs., Inc.)*, 463 F.3d 125, 127 (2d Cir. 2006)), explaining that "the critical aspect of the 'customer' definition" was "the entrustment of cash or securities to the broker-dealer for the purposes of trading securities."  *Kruse*, 708 F.3d at 426 (citing *In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d at 236).  The claimants failed to meet this fundamental requirement because the money sent to BLMIS belonged to the accountholders, not to the individual claimants, and the individual claimants therefore failed to establish that they had entrusted cash or securities to BLMIS.  *Id.* at 427.  The Second Circuit also found that the individual claimants did not exhibit other indicia of customer status in their dealings (or lack of dealings) with BLMIS, including that they did not exert any control over the accounts at issue and that they were not reflected in BLMIS records.  *Id.* at 426-27.

The Second Circuit held that the interests "sold by the Feeder Funds to investors . . . did not confer an ownership interest in money that the Feeder Funds ultimately invested in BLMIS."

12

Thus, "regardless of their intent, appellants never entrusted their cash or securities to BLMIS and, thus, fail to satisfy this 'critical aspect of the "customer" definition.'" *In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d at 236 (internal quotation marks omitted); *see Sec. Inv'r Protec. Corp. v. Morgan, Kennedy & Co.*, 533 F.2d 1314, 1318 (2d Cir. 1976); *see also Kruse,* 708 F.3d at 427-28 (citing 1–12 *Collier on Bankruptcy* ¶ 12.12 (16th ed. 2012) ("[A] claimant will not be entitled to customer protection under SIPA unless the debtor actually receives the claimant's cash or securities; the debtor must actually have come into possession or control.")).

### 2.    The ERISA Motion

While the appeals of the Feeder Fund Decision were pending, the Trustee also filed a motion to address arguments that were raised by claimants without BLMIS accounts who were benefit plans or benefit plan participants and who sought to use the Employee Retirement Income Security Act ("ERISA") as a basis for determining their customer status.[9]  *See* ECF No. 4521.  The District Court withdrew the reference and granted the motion.

The District Court noted that the first two of the three ways to qualify as a "customer" under SIPA § 78*lll*(2), "presume that a customer must have a securities account with the debtor," and that the claimants also did not qualify under the third method of having "deposited cash with the debtor for the purpose of purchasing securities."  *Sec. Inv'r Prot. Corp. v. Jacqueline Green Rollover Account*, Nos. 12 Civ. 1039 (DLC), 12 Civ. 1139 (DLC), 2012 WL 3042986 *3 (S.D.N.Y. July 25, 2012).  That was so because none of the claimants "owned any cash deposited with BLMIS.  Rather, . . . in each case this cash was owned by the third-party entity in which the claimant invested, and which had a BLMIS account in its name." *Id.* at *5.  The District Court

---

[9] Prior to the hearing on the Initial Feeder Fund Motion, the Court had removed from the scope of the motion the question of whether ERISA affects "customer" status under SIPA.

also rejected arguments that fiduciary responsibilities could suffice to create a "customer"

relationship. *Id*. at *12.

###    3.    Other Customer Motions

Further SIPA "customer" motions followed, each of which was determined in favor of

the Trustee.  On August 21, 2013, the Court issued its Bench Memorandum Granting Trustee's

Second Motion to Affirm Trustee's Determinations Denying Claims of Claimants Who Invested

in Certain Feeder Funds and Did Not Have BLMIS Accounts in Their Names, ECF No. 5450

("the Second Feeder Fund Decision").  Noting that prior decisions established that the burden is

on the claimant to established that he is a "customer" entitled to SIPA protection, and that such

showing is not easily met, this Court concluded that the claimants had failed to establish their

"customer" status.  The Court noted that "they had no securities accounts at BLMIS, were not

known to BLMIS, lacked privity and any financial relationship with BLMIS, lacked property

interest in any feeder fund account assets at BLMIS, entrusted no cash or securities to BLMIS,

had no investment discretion over feeder fund assets invested with BLMIS, received no accounts

statements or other communications from BLMIS and had no transactions reflected on the books

and records at BLMIS."  Second Feeder Fund Decision at 4.

On August 22, 2014, this Court issued its Memorandum Decision Granting Motion to

Affirm Trustee's Determinations Denying Claims of Claimants Who Invested in Certain ERISA

Plans.  *See generally Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L.*

*Madoff)*, 515 B.R. 161 (Bankr. S.D.N.Y. 2014) ("ERISA Claimant Decision").  Again holding

that the burden is on the claimant to establish that he is a customer, this Court concluded that a

claimant who wished to qualify as a person who has deposited cash with the debtor for the

purposes of purchasing securities must show that she entrusted her "own assets directly through

an account maintained in her own name rather than indirectly through a fund that then entrusted

the fund's assets through an account maintained in the fund's name." *Id.* at 168 (internal citations omitted). This Court further noted that "not every victim of a broker-dealer's fraud is a "customer" and that even the fact that a claimant exercised some control over her own investments in the fund or the fund's investments in BLMIS was not sufficient to meet "the narrow definition of customer under SIPA." *Id.*

On February 25, 2015, this Court read into the record a decision granting Trustee's Motion and Memorandum to Affirm His Determinations Denying Claims of Claimants Holding Interests in S&P or P&S Associates, General Partnerships ("S&P Decision"). This Court explained that the indicia of customer status are: (i) a direct financial relationship with BLMIS; (ii) a property interest in the funds invested directly with BLMIS; (iii) securities accounts with BLMIS; (iv) control over the account holders' investments with BLMIS; and (v) identification of the alleged customer in BLMIS's books and records. Hr'g. Transcript, *S&P Decision*, at p. 30, Ackerman Decl. Ex. 13. The Court held that the objecting partners failed to sustain their burden of proving that they are customers of BLMIS and an order granting the Trustee's motion was entered. *Id.* at 36; *see also* ECF No. 9450. Since the S&P Decision, there have been six more unopposed motions to the Trustee's determination each of which was granted by the Court.[10]

---

[10] *See* Order Approving Trustee's Motion To Affirm His Determinations Denying Claims of Claimants Holding Interests In Peerstate Equity Fund, L.P., ECF No. 9883 (Apr. 27, 2015); *see* Order Approving Trustee's Motion And To Affirm His Determinations Denying Claims Of Claimants Holding Interests In The Lazarus-Schy Family Partnership, The Schy Family Partnership, Or The Lazarus Investment Group, ECF No. 10010 (May 18, 2015); Order Approving Trustees Motion To Affirm His Determinations Denying Claims Of Claimants Holding Interests In Epic Ventures, LLC, ECF No. 10267 (June 25, 2015); Order Approving Trustees Motion To Affirm His Determinations Denying Claims Of Claimants Holding Interests Partners Investment Co., Northeast Investment Club, And Martin R. Harnick & Steven P. Norton, Partners, ECF No. 10894 (July 29, 2015); Order Approving Trustees Motion To Affirm His Determinations Denying Claims Of Claimants Holding Interests The Whitman Partnership, The Lucky Company, The Petito Investment Group, And The Harwood Family Partnership, ECF No. 11145 (August 26, 2015); Order Approving Trustees Motion To Affirm His Determinations Denying Claims Of Claimants Holding Interests 1973 Masters Vacation Fund, Bull Market Fund, And Strattham Partners, ECF No. 11920 (October 29, 2015)..

## ARGUMENT

To be a "customer" under SIPA, an investor must have "a claim on account of securities received, acquired, or held by the debtor in the ordinary course of its business as a broker or dealer from or for the securities accounts of such person," including "any person who has deposited cash with the debtor for the purpose of purchasing securities." SIPA § 78*lll*(2).[11]  Thus, to be a "customer" an investor must have entrusted cash or securities with the debtor for the purpose of trading or investing in securities.  In *Kruse*, the Second Circuit found that investors who bought interests in a limited partnership that invested partnership funds via the partnership's own BLMIS account "never entrusted *their* cash or securities to BLMIS and, thus, fail to satisfy this 'critical aspect of the "customer" definition'" regardless of their intent.  708 F.3d at 427 (citing *In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d at 236).  Similarly, the Second Circuit in *In re New Times Securities. Services, Inc.* held that "the critical aspect of the 'customer' definition is the entrustment of cash or securities to the broker-dealer for the purposes of trading

---

[11] The definition applicable to this SIPA proceeding is:

   (2) CUSTOMER

   The term "customer" of a debtor means any person (including any person with whom the debtor deals as principal or agent) who has a claim on account of securities received, acquired, or held by the debtor in the ordinary course of its business as a broker or dealer from or for the securities accounts of such person for safekeeping, with a view to sale, to cover consummated sales, pursuant to purchases, as collateral security, or for purposes of effecting transfer. The term "customer" includes any person who has a claim against the debtor arising out of sales or conversions of such securities, and any person who has deposited cash with the debtor for the  purpose of purchasing securities, but does not include—

   (A) any person to the extent that the claim of such  person arises out of transactions with a foreign subsidiary of a member of SIPC; or

   (B) any person to the extent that such person has a claim for cash or securities which by contract, agreement, or understanding, or by operation of law, is part of the capital of the debtor, or is subordinated to the claims of any or all creditors of the debtor, notwithstanding that some ground exists for declaring such contract, agreement, or understanding void or voidable in a suit between the claimant and the debtor.

SIPA § 78*lll*(2), *see* 15 U.S.C. § 78*lll*(2)  (West 2009). After the start of this case, the "customer" definition was slightly reorganized and amended in a manner irrelevant to the present issues by the Dodd-Frank Wall Street Reform and Consumer Protection Act. Pub. L. No. 111-203, § 983(b), 124 Stat. 1931 (2010); *see also In re Lehman Bros. Inc.*, 462 B.R. 53, n.9 (Bankr. S.D.N.Y. 2011).

securities." 463 F.3d at 128 (quoting *Appleton v. First Nat'l Bank of Ohio,* 62 F.3d 791, 801 (6th

Cir. 1995)); *see also In re Adler, Coleman Clearing Corp.*, 216 B.R. 719, 724-25 (Bankr.

S.D.N.Y. 1998) ("The term [customer] refers to those who entrust cash or securities to broker-

dealers for the purpose of trading and investing in the securities market."). The Second Circuit

recently further upheld this principle in *CarVal UK Ltd. v. Giddens (In re Lehman Bros., Inc.)*,

791 F.3d 277 (2d Cir. 2015), concluding that the "critical aspect of the 'customer' definition is

the entrustment of cash or securities to the broker-dealer for the purposes of trading securities."

*Id.* at *4 (quoting *In re Bernard L. Madoff Inv. Secs. LLC*, 654 F.3d at 236). The Trustee is

responsible for discharging obligations of the debtor to customers with such claims "insofar as

such obligations are ascertainable from the books and records of the debtor or are otherwise

established to the satisfaction of the trustee." SIPA § 78fff-2(b).

The Objecting Claimants' investments in the Partnerships do not meet the requirements

for "customer" status outlined in the seminal Second Circuit decision *Sec. Inv'r Protec. Corp. v.

Morgan, Kennedy & Co.*, 533 F.2d 1314, 1318 (2d Cir. 1976), and reaffirmed in *Kruse*, 708 F.3d

at 427. In *Morgan Kennedy*, the Second Circuit rejected the argument that the beneficial owners

of the account holder were the "customers" under SIPA, citing the facts that: (1) title to the trust

assets was held by the account holder, not the beneficiaries; (2) the securities account with the

debtor was in the name of the account holder, not the beneficiaries; (3) the account holder had

the exclusive power to entrust the assets to the debtor; (4) the beneficiaries were unknown to the

broker; and (5) the beneficiaries had no legal capacity in which they could deal with the debtor.

533 F.2d at 1318.

The Objecting Claimants' circumstances are little different than those of the claimants in

*Morgan Kennedy*, and do not show the hallmarks of customer status discussed in *S&P Decision*.

Hr'g. Transcript, *S&P Decision*, at p. 30, Ackerman Decl. Ex. 13. The Objecting Claimants entrusted their money to the Partnerships, not BLMIS. The Objecting Claimants lacked a direct financial relationship with BLMIS. The money entrusted to BLMIS was the property of the Partnerships, not the Objecting Claimants. The BLMIS Accounts were in the names of the Partnerships, not in the individual names of Objecting Claimants.

The individual interests of Objecting Claimants were not identified in BLMIS' books and records. The general partners who dealt with BLMIS were like the trustees who acted for the trust account in *Morgan Kennedy*, and were no more customers in their individual capacity than the trustees were. *Morgan Kennedy,* 533 F.2d at 1318, 1320-21 (notwithstanding that the trust account was in the name of the trustees, "[a]ny suggestion that each of the three Trustees has a separate customer claim against the debtor is untenable" because the Trustees together managed for the trust, "which was the true customer of the broker-dealer . . . ."; similarly, noting that under the SIPA Rules, individual coverage for multiple people who each own some portion of, or interest in, an account is "explicitly forbidden".).

Only the Partnerships, not the Objecting Claimants, entrusted their cash or securities to BLMIS, and the Objecting Claimants thus fail to satisfy this "critical aspect of the 'customer' definition." *Kruse*, 708 F.3d at 426-27 (citing *In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d at 236); *accord ERISA Claimant Decision,* 515 B.R. at 169. Whether the Objecting Claimants intended the Partnerships to invest with BLMIS is irrelevant under SIPA. *See Kruse*, 708 F.3d at 426-27; *ERISA Claimant Decision*, 515 B.R. at 169-70. The funds that the Objecting Claimants contributed to the Partnerships, and anything that the Partnerships purchased with those funds, belongs to the relevant Partnership and not to the Objecting Claimants. *See* CAL. CIV. PROC.

CODE ANN. § 688;[12] *see also* N.Y. PARTNERSHIP LAW § 12.[13]  Like the objecting claimants dealt

with by prior customer opinions, the Objecting Claimants do not individually own the assets that

the Partnerships invested with BLMIS.  Instead, the assets are collectively owned by the

Partnerships themselves.

It was the Partnerships, not the Objecting Claimants, that entrusted assets to BLMIS for

the purpose of purchasing securities.  Each Partnership, through its management, had the right to

direct the investment of those assets on behalf of the Partnership, and to withdraw property from

its Account on behalf of the Partnership.  Each Partnership, not the Objecting Claimants, was the

customer for its respective Account under SIPA.

Because BLMIS did not perform a custodial function on behalf of the individual

Objecting Claimants, the Objecting Claimants have neither "customer" claims nor individual net

equity. The purpose of SIPA, a statute intended to deal with broker insolvency, is "to expedite

the return of customer property" by "protecting the *custody* function of brokers," according to a

---

[12] A limited partnership is an entity distinct from its partners. CAL. CORP. CODE ANN. § 15901.04 (West).  Although the Uniform Limited Partnership Act of 2008 repealed the prior partnership law for all partnerships formed on or after January 1, 2008, the Partnerships at issue were all formed prior to 2008.  Thus, under the Act's predecessor, a "limited partner has no interest in the partnership property by virtue of his status as a limited partner." *Evans v. Galardi*, 546 P.2d 313, 319 (Cal. 1976) (citing CAL. CIV. PROC. CODE ANN. § 688 (West)); *see also Crocker Nat'l Bank v. Perroton*, 255 Cal. Rptr. 794, 797 (Cal. App. 1st Dist. 1989).

[13] "[A] limited partner has no property right in the partnership assets." *Alley v. Clark*, 71 F. Supp. 521, 526 (E.D.N.Y. 1947); *see also Newburger, Loeb & Co. v. Gross*, 563 F.2d 1057, 1076 (2d Cir. 1977) (explaining that limited partners have no property right in the partnership assets).  "All property originally brought into the partnership stock or subsequently acquired . . . on account of the partnership is partnership property" and allowing for title, even of real property, to be acquired and passed in the partnership name.  N.Y. PARTNERSHIP LAW § 12; *see also* N.Y. PARTNERSHIP LAW § 51(2)(a) ("A partner, subject to . . . any agreement between the partners, has an equal right with his partners to possess specific partnership property for partnership purposes; but he has no right to possess such property for any other purpose without the consent of his partners."); N.Y. PARTNERSHIP LAW § 51(2)(b) ("A partner's right in specific partnership property is not assignable except in connection with the assignment of the rights of all the partners in the same property."); *see also La Russo v. Paladino*, 109 N.Y.S.2d 627, 630 (N.Y. Sup. Ct. 1951) ("[A] partner has no personal right in any specific partnership property" and on the partnership's dissolution by the death of a partner, "the only property right which the survivor of such partner possesses is a claim for an accounting."), *Weisinger v. Rae*, 188 N.Y.S.2d 10, 19-20 (N.Y. Sup. Ct. 1959) ("A partner has no personal right in any specific partnership property," therefore, "partnership property is not subject to attachment or levy by a creditor of an individual partner.").

recent Second Circuit decision that declined to permit interest or time-based damages for customer claims under SIPA. *Sec. Inv'r Prot. Corp. v. 2427 Parent Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*, 779 F.3d 74, 80 (2d Cir. 2015). Customers share in the fund of customer property ratably, according to each customer's "net equity." *Id*. at 77, 81. The definition of net equity is limited by the fundamental SIPA design "to return customer property to customers," *id*. at 77, whether in cash or in actual securities. *Id*. at 80.[14]

The Second Circuit stated in *2427 Parent Corp.*, "[w]e . . . previously concluded that in [the BLMIS] case net equity . . . should be determined based on customers' actual deposits and withdrawals. These deposits, net withdrawals, constitute customer property here." *Id*. at 81 (citations omitted). The books and records of BLMIS show that Objecting Claimants made no individual deposits in or withdrawals from BLMIS, and those who interacted with BLMIS as to the Accounts did so solely on the Partnerships' behalf. Sehgal Decl., Exs. 4, 6, 8, 9. The Objecting Claimants accordingly have no net equity and are not "customers" within the meaning of SIPA.

Each of the Objecting Claimants was served with requests for admission, interrogatories, and requests for production. With the exception of Mrs. Clark and the Epsteins, none of the Objecting Claimants responded. Those Objecting Claimants who failed to respond to the requests for admission admitted them. FED. R. CIV. P. 36(a)(3). The admissions, both deemed and actual, show that Objecting Claimants lack any relationship with BLMIS that fits the *Morgan Kennedy* criteria and that their claims of "customer" status are baseless. They admitted

---

[14] The definition of Net Equity at SIPA § 78 *lll*(11) begins, "The term 'net equity' means the dollar amount of the account or accounts of a customer, to be determined by—

    (A) Calculating the sum which would have been owed by the debtor to such customer if the debtor had liquidated . . . on the filing date, all securities positions of such customer . . . ."

that: (i) the relevant Account was not titled in their name;[15] (ii) that they never received correspondence, investment statements, or tax statements in their names from BLMIS in connection with the Partnership;[16] (iii) that they never paid cash directly to BLMIS for credit to an account in their names;[17] (iv) never deposited securities directly with BLMIS;[18] (v) that they never directly withdrew or received funds from BLMIS;[19] (vi) that their only relationship to BLMIS existed by way of their relationship to the Account holder;[20] (vii) that they never entered into any contracts in their names with BLMIS;[21] and (viii) that they did not have any control, investment discretion or decision-making power over any investment assets at BLMIS.[22]

The three MOT Family Investors Objecting Claimants responded. Mrs. Clark responded to the Trustee's discovery and admitted to the above requests for admission as well. Mrs. Clark also indicated that she thought she "was investing in MOT." Ackerman Decl. Ex. 4, MCMDR_00000001-02. Mrs. Clark further explains in her responses to the interrogatories that

---

[15] *See, e.g.,* Black River Associates RFA 1-2; Rothschild Family Partnership RFA 1-2; Ostrin Family Partnership RFA 1-2. *See also* MOT Family Investors Requests for Admissions 1-2, Ackerman Decl., Exs. 2, 3 (hereafter "MOT Family Investors RFA __").

[16] *See, e.g.,* Black River Associates RFA 3, 8-9; MOT Family Investors RFA 3, 9-10; Rothschild Family Partnership RFA 3, 8-9; Ostrin Family Partnership RFA 3, 8-9.

[17] *See, e.g.,* Black River Associates RFA 4; MOT Family Investors RFA 4; Rothschild Family Partnership RFA 4; Ostrin Family Partnership RFA 5.

[18] *See, e.g.,* Black River Associates RFA 5; MOT Family Investors RFA 5; Rothschild Family Partnership RFA 5; Ostrin Family Partnership RFA 4.

[19] *See, e.g.,* Black River Associates RFA 6-7; MOT Family Investors RFA 6-7; Rothschild Family Partnership RFA 6-7; Ostrin Family Partnership RFA 6-7.

[20] *See, e.g.,* Black River Associates RFA 11; MOT Family Investors RFA 12; Rothschild Family Partnership RFA 11; Ostrin Family Partnership RFA 11.

[21] . *See, e.g.,* Black River Associates RFA 10; MOT Family Investors RFA 11; Rothschild Family Partnership RFA 10; Ostrin Family Partnership RFA 10.

[22] *See, e.g.,* Black River Associates RFA 12; MOT Family Investors RFA 13; Rothschild Family Partnership RFA 12; Ostrin Family Partnership RFA 12.

she received statements from MOT and not from BLMIS—in fact, she was unaware of her investment with BLMIS. *See id.*, MCMDR_00000003-05. Michael and Joan B. Epstein, on the other hand, did not admit to all of the requests for admission. They admitted to the following: (i) the BLMIS account that is the subject of the objection was not titled in their names; (ii) they never received correspondence from BLMIS; (iii) they never deposited securities or withdrew funds directly with BLMIS; (iv) they never made a payment of cash directly to BLMIS for credit to an account in their name; (v) the funds they received were transmitted from a custodian; (vi) they did not receive tax statements; (vii) MOT Family Investors had its own bank account; and (viii) they are limited partners. Ackerman Decl. Exs. 2, 3, MCMDR_00000187-89, MCMDR_00000243-44. The Epsteins denied the other requests for admission but it appears that those responses were attributed to the BLMIS account that they *did* have in their names, and not MOT Family Investors. *Id.*[23]

As the Second Circuit has explained, "[j]udicial interpretations of 'customer' status support a narrow interpretation of the SIPA's provisions." *Kruse*, 708 F.3d at 426 (citing *In re New Times Sec. Servs., Inc.,* 463 F.3d at 127). Customer status under SIPA is narrowly construed and is the burden of the claimant to establish. *See ERISA Claimant Decision,* 515 B.R. at 166 ("The burden is on the claimant to establish he is a 'customer' entitled to SIPA protection, and such a showing 'is not easily met.'"); *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 454 B.R. at 294 (citing *In re Klein, Maus & Shire, Inc.*, 301 B.R. 408, 418 (Bankr. S.D.N.Y. 2003)); *see also Mishkin v. Siclari (In re Adler, Coleman Clearing Corp.)*, 277 B.R. 520, 557 (Bankr. S.D.N.Y. 2002) ("[I]it is well-established in the Second Circuit that a claimant

---

[23] The fact that the Epsteins had their own account does not mean that they are customers of the MOT Family Investors. *See* Ackerman Ex. 14, *In re Bernard L. Madoff Inv. Sec. LLC*, No. 15-01151 (PAE), at 33 (S.D.N.Y. Jan. 14, 2016) (order affirming the Inter-Account Transfer Decision).

bears the burden of proving that he or she is a 'customer' under SIPA."). The Objecting

Claimants have not met this burden. Thus, under Second Circuit precedent, the Objecting

Claimants are not SIPA customers.

## CONCLUSION

For all of the foregoing reasons, the Court should affirm the Trustee's determination

denying the claims of the Objecting Claimants, overrule their objections, expunge the claims,

and grant such other and further relief as the Court deems just and proper.


Dated: New York, New York              Respectfully submitted,
      January 15, 2016


                              */s/ David J. Sheehan*
                              David J. Sheehan
                              Email: dsheehan@bakerlaw.com
                              Seanna R. Brown
                              Email: sbrown@bakerlaw.com
                              Nicholas J. Cremona
                              Email: ncremona@bakerlaw.com
                              Jorian L. Rose
                              Email: jrose@bakerlaw.com
                              Amy E. Vanderwal
                              Email : avanderwal@bakerlaw.com
                              George Klidonas
                              Email : gklidonas@bakerlaw.com
                              Stephanie A. Ackerman
                              Email : sackerman@bakerlaw.com
                              **Baker & Hostetler LLP**
                              45 Rockefeller Plaza
                              New York, New York  10111
                              Tel: (212) 589-4200
                              Fax: (212) 589-4201


                              *Attorneys for Irving H. Picard, Trustee for the*
                              *Substantively Consolidated SIPA Liquidation*
                              *of Bernard L. Madoff Investment Securities LLC*
                              *and the Estate of Bernard L. Madoff*