**WINDELS MARX LANE & MITTENDORF, LLP**
156 West 56th Street
New York, New York 10019
Tel: (212) 237-1000
Fax: (212) 262-1215
Howard L. Simon
Kim M. Longo
John J. Tepedino

*Special Counsel to Irving H. Picard, Trustee for the Substantively*
*Consolidated SIPA Liquidation of Bernard L. Madoff Investment*
*Securities LLC and the Estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>        Plaintiff-Applicant,<br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>        Defendant. | Adv. Pro. No. 08-01789 (SMB)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>        Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>        Plaintiff,<br>v.<br><br>STANLEY I. LEHRER, in his capacity as administrator of the Stanley I. Lehrer and Stuart M. Stein, J/T WROS; STUART M. STEIN, individually, and in his capacity as administrator of the Stanley I. Lehrer and Stuart M. Stein, J/T WROS; ARTHUR M. SISKIND; LINDA SOHN; NEAL M. GOLDMAN; ELAINE STEIN ROBERTS; ARTHUR J. FEIBUS; EUNICE CHERVONY LEHRER; TRUST U/T/A 8/20/90; EVELYN FISHER, individually, and in her capacity as Trustee for TRUST U/T/A 8/20/90; and | Adv. Pro. No. 10-05259 (SMB) |

| RONI L. STEIN,<br><br>                 Defendants. | |
|---|---|

## SECOND AMENDED COMPLAINT

Irving H. Picard (the "Trustee"), as trustee for the liquidation of the business of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa, *et seq*. ("SIPA"),[1] and the substantively consolidated estate of Bernard L. Madoff individually ("Madoff"), by and through his undersigned counsel, for his second amended complaint (the "Second Amended Complaint") against Stanley I. Lehrer ("Lehrer"), in his capacity as administrator of the Stanley I. Lehrer and Stuart M. Stein, J/T WROS, Stuart M. Stein ("Stein"), individually, and in his capacity as administrator of the Stanley I. Lehrer and Stuart M. Stein, J/T WROS, Arthur M. Siskind, Linda Sohn, Neal M. Goldman, Elaine Stein Roberts, Arthur J. Feibus, Eunice Chervony Lehrer, Trust u/t/a 8/20/90, Evelyn Fisher, individually, and in her capacity as trustee for Trust u/t/a 8/20/90, and Roni L. Stein (the "Defendants") states as follows:

## NATURE OF PROCEEDING

1.      This adversary proceeding arises from the massive Ponzi scheme perpetrated by Madoff. Over the course of the scheme, there were more than 8,000 client accounts at BLMIS. In early December 2008, BLMIS generated client account statements for its approximately 4,900 open client accounts. When added together, these statements purport to show that clients of BLMIS had approximately $65 billion invested with BLMIS. In reality, BLMIS had assets on hand worth a small fraction of that amount. On March 12, 2009, Madoff admitted to the

---

[1] For convenience, future reference to SIPA will not include "15 U.S.C."

2

Pg 3 of 17


fraudulent scheme and pled guilty to 11 felony counts, and was sentenced on June 29, 2009 to 150 years in prison.

2.     Defendants were beneficiaries of this Ponzi scheme. Since December 11, 2006, Defendants received the amount of $4,955,500.00 from BLMIS. The Trustee's investigation has revealed that this entire amount represented fictitious profits from the Ponzi scheme. Accordingly, the Trustee seeks avoidance of the Initial Transfers (as defined below) as they constitute nothing more than other people's money.

3.     Defendants Arthur M. Siskind, Linda Sohn, Neal M. Goldman, Elaine Stein Roberts, Arthur J. Feibus, Eunice Chervony Lehrer, Trust u/t/a 8/20/90, Evelyn Fisher, individually, and in her capacity as trustee for Trust u/t/a 8/20/90, and Roni L. Stein (the "Subsequent Transferee Defendants") received subsequent transfers of the avoidable transfers referenced herein.

## JURISDICTION AND VENUE

4.     This is an adversary proceeding commenced in this Court, in which the main underlying SIPA proceeding, No. 08-01789 (SMB) (the "SIPA Proceeding"), is pending. The SIPA Proceeding was originally brought in the United States District Court for the Southern District of New York as *Securities Exchange Commission v. Bernard L. Madoff Investment Securities LLC et al.*, No. 08 CV 10791 (the "District Court Proceeding") and has been referred to this Court. This Court has jurisdiction over this adversary proceeding under 28 U.S.C. § 1334(b) and (e)(1), and 15 U.S.C. §§ 78eee(b)(2)(A) and (b)(4).

5.     This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (H) and (O). The Trustee consents to the entry of final orders or judgment by this Court if it is determined that consent of the parties is required for this Court to enter final orders or judgment consistent with Article III of the U.S. Constitution.

6. Venue in this district is proper under 28 U.S.C. § 1409.

7. This adversary proceeding is brought under sections 78fff(b) and 78fff-2(c)(3) of SIPA, sections 105(a), 548(a), 550(a) and 551 of title 11 of the United States Code (the "Bankruptcy Code"), and other applicable law.

## DEFENDANTS

8. Upon information and belief, Defendant Stuart M. Stein maintains his residence in Ft. Lauderdale, Florida. Stein holds a BLMIS account with Lehrer as joint tenants with the right of survivorship in the name, "Stanley I. Lehrer and Stuart M. Stein, J/T WROS," (the "Joint Tenancy Account") with the account address reported as White Plains, New York. Stein is named in this Second Amended Complaint, individually, and in his capacity as administrator of the Joint Tenancy Account, as an initial transferee of fictitious profits from the Ponzi scheme.

9. Upon information and belief, Stanley I. Lehrer maintains his residence in Delray Beach, Florida. Lehrer holds a BLMIS account with Stein as joint tenants with the right of survivorship in the name, "Stanley I. Lehrer and Stuart M. Stein, J/T WROS," with the account address reported as White Plains, New York. Lehrer is named in this Second Amended Complaint solely in his capacity as administrator of the Joint Tenancy Account, and not individually.[2]

10. Upon information and belief, Subsequent Transferee Defendant Arthur M. Siskind maintains his residence in New York, New York.

11. Upon information and belief, Subsequent Transferee Defendant Linda Sohn maintains her residence in New York, New York.

---

[2] Lehrer was included in the Complaint filed in this adversary proceeding on December 6, 2010 as a defendant and initial transferee of fictitious profits in his individual capacity as well as in his capacity as an administrator. The Trustee's Amended Complaint filed on December 10, 2010 dismissed Lehrer as a defendant in his individual capacity.

4

12. Upon information and belief, Subsequent Transferee Defendant Neal M. Goldman maintains his residence in Brooklyn, New York.

13. Upon information and belief, Subsequent Transferee Defendant Elaine Stein Roberts maintains her residence in Delray Beach, Florida.

14. Upon information and belief, Subsequent Transferee Defendant Arthur J. Feibus maintains his residence in Mount Kisco, New York.

15. Upon information and belief, Subsequent Transferee Defendant Eunice Chervony Lehrer maintains her residence in Delray Beach, Florida.

16. Upon information and belief, Subsequent Transferee Defendant Trust u/t/a 8/20/90 is a trust established under the laws of the State of Illinois, with the address reported as Glencoe, Illinois. Upon further information and belief, Subsequent Transferee Defendant Evelyn Fisher is a trustee and the sole beneficiary of the trust.

17. Upon information and belief, Subsequent Transferee Defendant Evelyn Fisher maintains her residence in Glencoe, Illinois. Upon further information and belief, Evelyn Fisher is a trustee and the sole beneficiary of Subsequent Transferee Defendant Trust u/t/a 8/20/90.

18. Upon information and belief, Subsequent Defendant Roni L. Stein maintains her residence in Ft. Lauderdale, Florida.

## BACKGROUND, THE TRUSTEE AND STANDING

19. On December 11, 2008 (the "Filing Date"), Madoff was arrested by federal agents for criminal violations of federal securities laws, including securities fraud, investment adviser fraud, and mail and wire fraud. Contemporaneously, the Securities and Exchange Commission ("SEC") commenced the District Court Proceeding.

20. On December 15, 2008, under SIPA § 78eee(a)(4)(A), the SEC consented to combining its action with an application by the Securities Investor Protection Corporation

5

("SIPC"). Thereafter, under SIPA § 78eee(a)(4)(B), SIPC filed an application in the District Court alleging, among other things, that BLMIS could not meet its obligations to securities customers as they came due and its customers needed the protections afforded by SIPA.

21.  Also on December 15, 2008, Judge Stanton granted SIPC's application and entered an order pursuant to SIPA, which, in pertinent part:

    a.  appointed the Trustee for the liquidation of the business of BLMIS pursuant to SIPA § 78eee(b)(3);

    b.  appointed Baker & Hostetler LLP as counsel to the Trustee pursuant to SIPA § 78eee(b)(3); and

    c.  removed the case to this Court pursuant to SIPA § 78eee(b)(4).

22.  By orders dated December 23, 2008 and February 4, 2009, respectively, this Court approved the Trustee's bond and found that the Trustee was a disinterested person. Accordingly, the Trustee is duly qualified to serve and act on behalf of the estate.

23.  On April 13, 2009, an involuntary bankruptcy petition was filed against Madoff, and on June 9, 2009, this Court substantively consolidated the chapter 7 estate of Madoff into the SIPA Proceeding.

24.  On July 16, 2009, this Court entered an order granting the Trustee's motion to retain Windels Marx Lane & Mittendorf, LLP as special counsel on behalf of the consolidated estate, nunc pro tunc as of June 9, 2009.

25.  At a plea hearing on March 12, 2009, in the case captioned United States v. Madoff, Case No. 09-CR-213(DC), Madoff pleaded guilty to an 11-count criminal information filed against him by the United States Attorney for the Southern District of New York. At the plea

6

hearing, Madoff admitted he "operated a Ponzi scheme through the investment advisory side of [BLMIS]."

26. At a plea hearing on August 11, 2009, in the case captioned *United States v. DiPascali*, Case No. 09-CR-764 (RJS), Frank DiPascali, a former BLMIS employee, pleaded guilty to a ten-count criminal information charging him with participating in and conspiring to perpetuate the Ponzi scheme. DiPascali admitted that no purchases or sales of securities took place in connection with BLMIS customer accounts and that the Ponzi scheme had been ongoing at BLMIS since at least the 1980s.

27. At a plea hearing on November 21, 2011, in the case captioned *United States v. Kugel*, Case No. 10-CR-228 (LTS), David Kugel, a former BLMIS trader and manager, pleaded guilty to a six-count criminal information charging him with securities fraud, falsifying the records of BLMIS, conspiracy, and bank fraud. Kugel admitted to helping create false, backdated trades in BLMIS customer accounts beginning in the early 1970s.

28. On March 24, 2014, Daniel Bonventre, Annette Bongiorno, Jo Ann Crupi, George Perez, and Jerome O'Hara were convicted of fraud and other crimes in connection with their participation in the Ponzi scheme as employees of BLMIS's investment advisory business ("IA Business").

29. As the Trustee appointed under SIPA, the Trustee is charged with assessing claims, recovering and distributing customer property to BLMIS's customers holding allowed customer claims, and liquidating any remaining BLMIS assets for the benefit of the estate and its creditors. The Trustee is using his authority under SIPA and the Bankruptcy Code to avoid and recover payouts of fictitious profits and/or other transfers made by the Debtors to customers and others to the detriment of defrauded, innocent customers whose money was consumed by the

7

Ponzi scheme. Absent this and other recovery actions, the Trustee will be unable to satisfy the claims described in subparagraphs (A) through (D) of SIPA § 78fff-2(c)(1).

30. Pursuant to SIPA § 78fff-1(a), the Trustee has the general powers of a bankruptcy trustee in a case under the Bankruptcy Code in addition to the powers granted by SIPA pursuant to SIPA § 78fff(b). Chapters 1, 3, 5 and subchapters I and II of chapter 7 of the Bankruptcy Code apply to this proceeding to the extent consistent with SIPA pursuant to SIPA § 78fff(b).

31. The Trustee has standing to bring the avoidance and recovery claims under SIPA § 78fff-1(a) and applicable provisions of the Bankruptcy Code, including 11 U.S.C. §§ 323(b), 544, and 704(a)(1), because the Trustee has the power and authority to avoid and recover transfers under Bankruptcy Code sections 544, 547, 548, 550(a), and 551, and SIPA §§ 78fff-1(a) and 78fff-2(c)(3).

## THE PONZI SCHEME

32. Madoff founded BLMIS in or about 1960 as a sole proprietorship. On January 1, 2001, Madoff continued BLMIS as a sole member limited liability company under the laws of the State of New York, with BLMIS assuming the liabilities of the former sole proprietorship. BLMIS's ownership and control did not change since its formation in 1960. During that time, BLMIS had been continually registered with the SEC, and remained a SIPC member since its formation in late 1970. For most of its existence, BLMIS operated from its principal place of business at 885 Third Avenue, New York, New York. Madoff, as founder, sole owner, chairman, and chief executive officer, operated BLMIS with several family members and other employees, including DiPascali and David Kugel, who pleaded guilty to helping Madoff carry out the fraudulent scheme.

33. Beginning in the 1990s, Madoff outwardly ascribed the consistent investment success of BLMIS's IA Business to the "split-strike conversion" ("SSC") investment strategy.

8

Madoff claimed his strategy would produce steady returns without the volatility in the stock market or other high return investment strategies. Madoff generally indicated that investors' funds would be invested in a basket of common stocks within the Standard & Poor's 100 Index ("S&P 100 Index"), which is a collection of the 100 largest publicly traded companies, as determined by Standard & Poor's Index Committee. The basket of stocks was designed to correlate to the movement of the S&P 100 Index. The second part of the SSC strategy involved purporting to sell call options and buy put options on the S&P 100 Index; this is commonly referred to as a "collar." Madoff purported to purchase and sell option contracts to control the downside risk of price changes in the basket of stocks correlated to the performance of the S&P 100 Index. All options relating to the companies within the S&P 100 Index, including options based upon the S&P 100 Index itself, clear through the Options Clearing Corporation ("OCC"). The OCC has no records showing that BLMIS's IA Business cleared any trades in any exchange-listed options.

34. BLMIS commingled all of the funds received from IA Business investors in a single BLMIS account maintained at JPMorgan Chase Bank.

35. Because Madoff claimed that he would carefully time purchases and sales to maximize value, customer funds would intermittently be out of the market. During those times, Madoff claimed that the funds were invested in U.S. Treasury securities ("Treasury Bills") or mutual funds invested in Treasury Bills. There is no record of BLMIS clearing a single purchase or sale of securities in connection with the SSC strategy at the Depository Trust & Clearing Corporation, the clearing house for such transactions, or any other trading platform on which BLMIS could have traded securities. There are no other BLMIS records that demonstrate that BLMIS traded securities using the SSC strategy.

9

36. At their plea hearings, Madoff and DiPascali admitted that BLMIS purchased none of the securities listed on the IA Business customers' fraudulent statements.

37. Madoff operated the IA Business as a Ponzi scheme. The money received from IA Business customers was used primarily to make distributions to, or payments for, other customers. The falsified trades reflected in monthly account statements made it appear that the IA Business accounts included substantial gains on customers' principal investments. The Ponzi scheme collapsed in December 2008, when the requests for redemptions overwhelmed the flow of new investments with BLMIS's IA Business.

38. Since at least 1983, BLMIS financial reports filed with the SEC fraudulently omitted the existence of the billions of dollars of customer funds held by BLMIS.

39. BLMIS did not register as an investment adviser with the SEC until August 2006. At that time, BLMIS filed with the SEC a Form ADV (Uniform Application for Investment Adviser Registration) representing, among other things, that BLMIS had 23 customer accounts and assets under management of $11.7 billion. Thereafter, BLMIS filed a Form ADV annually with the SEC, the latest of which was filed in January 2008. It represented that BLMIS had 23 customer accounts with assets under management of $17.1 billion. In fact, at that time BLMIS had over 4,900 active customer accounts with a purported value of approximately $68 billion under management.

40. Contrary to standard practice in the investment advisory industry, BLMIS did not charge the IA Business customers a fee for investment advisory services. Madoff knew others that solicited investors for BLMIS, or, directly or indirectly, funded customer accounts, charged hundreds of millions of dollars for investment advisory services attributed to BLMIS. Instead of

10

investment advisory fees, BLMIS purported to accept commissions for the purported trades, as reflected in the fraudulent IA Business customer statements.

41. BLMIS's auditor was Friehling & Horowitz, CPA, P.C. ("Friehling & Horowitz"), a three-person accounting firm in Rockland County, New York. Of the three employees at the firm, one employee was an administrative assistant and one was a semi-retired accountant living in Florida. On or about November 3, 2009, David Friehling, the sole proprietor of Friehling & Horowitz, pleaded guilty to filing false audit reports for BLMIS and filing false tax returns for Madoff and others.

42. At all relevant times, BLMIS was insolvent because (i) its assets were worth less than the value of its liabilities; (ii) it could not meet its obligations as they came due; and (iii) at the time of the transfers alleged herein, BLMIS was left with insufficient capital.

## THE TRANSFERS

43. According to BLMIS's records, the Joint Tenancy Account (No. 1L0013) was maintained with BLMIS, as set forth in the attached Exhibit A. The Joint Tenancy Account was first established in or about January 1978 by Howard M. Squadron ("Squadron") and Allen A. Stein as joint tenants with the right of survivorship. Following Allen A. Stein's death on November 8, 1988, ownership of the Joint Tenancy Account changed to Squadron and Stanley I. Lehrer as joint tenants with the right of survivorship. On or about April 21, 1992, ownership of the Joint Tenancy Account was changed to Stanley I. Lehrer and Stuart M. Stein, as joint tenants with the right of survivorship, and the named account holder was amended to "Stanley I. Lehrer and Stuart M. Stein, J/T WROS."

44. Upon information and belief, a Customer Agreement, an Option Agreement, and/or a Trading Authorization Limited to Purchases and Sales of Securities and Options

11

(collectively, the "Account Agreements") were executed and delivered to BLMIS at BLMIS's headquarters located at 885 Third Avenue, New York, New York.

45.     The Joint Tenancy Account Agreements were to be performed in New York, New York through securities trading activities that would take place in New York, New York. The Joint Tenancy Account was held in New York, New York, and funds were sent to BLMIS and/or to BLMIS's account at JPMorgan Chase & Co., Account #xxxxxxxxxxx1703 (the "BLMIS Bank Account") in New York, New York for application to the Joint Tenancy Account and the purported conducting of trading activities. Between the date the Joint Tenancy Account was opened and the Filing Date, deposits were made to BLMIS through checks and/or wire transfers into the BLMIS Bank Account, and/or the Joint Tenancy Account received inter-account transfers from other BLMIS accounts.

46.     During the two years prior to the Filing Date, BLMIS made transfers to Lehrer and Stein (the "Initial Transfers") by depositing funds into their joint account at Bank of America, Account #xxxxxx2231 (the "Lehrer Stein Joint Bank Account"), totaling at least $4,955,500.00 in fictitious profits from the Ponzi scheme. The Initial Transfers are set forth in Column 9 of Exhibit B attached hereto. The Initial Transfers constitute non-existent profits supposedly earned in the Joint Tenancy Account, but, in reality, they were other people's money. The Initial Transfers are avoidable and recoverable under sections 548(a), 550(a)(1) and 551 of the Bankruptcy Code and applicable provisions of SIPA, particularly SIPA section 78fff-2(c)(3).

47.     At least $4,822,500.00 of the Initial Transfers was subsequently transferred from the Lehrer Stein Joint Bank Account to (i) Lehrer, (ii) Stein and Subsequent Transferee Defendant Roni L. Stein, jointly, and (iii) Subsequent Transferee Defendants Arthur M. Siskind, Linda Sohn, Neal M. Goldman, and Elaine Stein Roberts.

12

48. Of this $4,822,500.00, the Trustee seeks recovery of the following transfers (together, the "Subsequent Transfers") totaling $3,170,500.00:

- $900,000.00 subsequently transferred from the Lehrer Stein Joint Bank Account to Roni L. Stein (jointly with Stein), of which $215,000.00 was further subsequently transferred to Arthur J. Feibus;

- $100,000.00 subsequently transferred from the Lehrer Stein Joint Bank Account to Arthur M. Siskind;

- $370,000.00 subsequently transferred from the Lehrer Stein Joint Bank Account to Linda Sohn;

- $107,500.00 subsequently transferred from the Lehrer Stein Joint Bank Account to Neal M. Goldman;

- $1,125,000.00 subsequently transferred from the Lehrer Stein Joint Bank Account to Elaine Stein Roberts;

- $128,000.00 subsequently transferred from the Lehrer Stein Joint Bank Account to Lehrer, which was further subsequently transferred to Eunice Chervony Lehrer; and

- $440,000.00 subsequently transferred from the Lehrer Stein Joint Bank Account to Lehrer, which was further subsequently transferred to Trust u/t/a 8/20/90, of which Evelyn Fisher is sole beneficiary.

Charts setting forth the dates on which the Subsequent Transfers occurred and the amount received by each of the above Subsequent Transferee Defendants are attached hereto as Exhibit C through Exhibit K.

49. The Subsequent Transfers being sought by the Trustee, or the value thereof, are recoverable from the Subsequent Transferee Defendants pursuant to § 550(a) of the Bankruptcy Code.

50. Lehrer and Stein, as administrators of the Joint Tenancy Account (the "Administrator Defendants"), filed a customer claim with the Trustee on or about February 26, 2009, which claim was denied on or about July 1, 2010 (the "Determination"). The Administrator Defendants did not file an objection to the Determination with the Court.

13

51. The Trustee's discovery and investigation is ongoing, and the Trustee reserves the right to: (i) supplement the information on the Initial Transfers, Subsequent Transfers, and any additional transfers; and (ii) seek avoidance and recovery of such transfers.

52. To the extent that any of the avoidance and/or recovery counts may be inconsistent with each other, they are to be treated as being pled in the alternative.

## COUNT ONE
## FRAUDULENT TRANSFER – 11 U.S.C. §§ 105(a), 548(a)(1)(A), 550(a) AND 551

53. To the extent applicable, the Trustee incorporates by reference the allegations contained in the previous paragraphs of this Second Amended Complaint as if fully rewritten herein.

54. Each of the Initial Transfers was made on or within two years before the Filing Date.

55. Each of the Initial Transfers constituted a transfer of an interest of BLMIS in property within the meaning of section 101(54) of the Bankruptcy Code and pursuant to section 78fff-2(c)(3) of SIPA.

56. Each of the Initial Transfers was made by BLMIS with the actual intent to hinder, delay or defraud some or all of BLMIS's then existing and/or future creditors.

57. Each of the Initial Transfers constitutes a fraudulent transfer avoidable by the Trustee pursuant to section 548(a)(1)(A) of the Bankruptcy Code and recoverable pursuant to section 550(a) of the Bankruptcy Code and section 78fff-2(c)(3) of SIPA.

58. As a result of the foregoing, pursuant to sections 105(a), 548(a)(1)(A), 550(a), and 551 of the Bankruptcy Code and section 78fff-2(c)(3) of SIPA, the Trustee is entitled to a judgment: (a) avoiding and preserving the Initial Transfers; (b) directing that the Initial Transfers be set aside; (c) recovering the Initial Transfers, or the value thereof, from Stein for the

benefit of the BLMIS estate; and (d) awarding any other relief the Court deems just and appropriate.

## COUNT TWO
## RECOVERY OF SUBSEQUENT TRANSFERS – 11 U.S.C. §§ 105(a), 548, 550(a) AND 551

59. To the extent applicable, the Trustee incorporates by reference the allegations contained in the previous paragraphs of this Second Amended Complaint as if fully rewritten herein.

60. Each of the Subsequent Transfers is recoverable from the Subsequent Transferee Defendants under section 550(a) of the Bankruptcy Code and section 78fff-2(c)(3) of SIPA.

61. Each of the Subsequent Transfers was made directly or indirectly by Lehrer and/or Stein to the Subsequent Transferee Defendants.

62. The Subsequent Transferee Defendants are immediate or mediate transferees of the Subsequent Transfers from Lehrer and/or Stein.

63. As a result of the foregoing, pursuant to sections 105(a) and 550(a) of the Bankruptcy Code and section 78fff-2(c)(3) of SIPA, the Trustee is entitled to a judgment against the Subsequent Transferee Defendants: (a) recovering the Subsequent Transfers, or the value thereof, from the Subsequent Transferee Defendants for the benefit of the BLMIS estate; and (b) awarding any other relief the Court deems just and appropriate.

**WHEREFORE**, the Trustee respectfully requests that this Court enter judgment in favor of the Trustee as follows:

i. On the First Claim for Relief, pursuant to sections 105(a), 548(a)(1)(A), 550(a) and 551 of the Bankruptcy Code and section 78fff-2(c)(3) of SIPA, judgment: (a) avoiding and preserving the Initial Transfers; (b) directing that the Initial Transfers be set aside; (c) recovering

the Initial Transfers, or the value thereof, from Stein for the benefit of the BLMIS estate; and (d) awarding any other relief the Court deems just and appropriate;

        ii.       On the Second Claim for Relief, pursuant to sections 105(a) and 550(a) of the Bankruptcy Code and section 78fff-2(c)(3) of SIPA, judgment against the Subsequent Transferee Defendants: (a) recovering the Subsequent Transfers, or the value thereof, from the Subsequent Transferee Defendants for the benefit of the BLMIS estate; and (b) awarding any other relief the Court deems just and appropriate.

        iii.       On all Claims for Relief, impressing all Defendants' property, or the proceeds, product and offspring of such property, with an equitable lien and/or a constructive trust in favor of the Trustee for the benefit of the estate, to the extent that the Initial Transfers or Subsequent Transfers were used, in whole or in part, to purchase, improve and/or maintain such property;

        iv.       On all Claims for Relief, establishing a constructive trust over all Initial Transfers and Subsequent Transfers and their proceeds, product and offspring in favor of the Trustee for the benefit of the estate;

        v.       On all Claims for Relief, pursuant to federal common law and/or N.Y. CPLR 5001 and 5004, as applicable, awarding the Trustee prejudgment interest from the date on which the Initial Transfers were received;

        vi.       On all Claims for Relief, awarding the Trustee all applicable interest, costs, and disbursements in this proceeding; and

        vii.       Granting the Trustee such other, further, and different relief as the Court deems just, proper and equitable.

| | |
|---|---|
| Dated: New York, New York<br>February 1, 2016 | By: /s/ Howard L. Simon<br>Howard L. Simon (hsimon@windelsmarx.com)<br>Kim M. Longo (klongo@windelsmarx.com)<br>John J. Tepedino (jtepedino@windelsmarx.com)<br>Windels Marx Lane & Mittendorf LLP<br>156 West 56th Street<br>New York, New York 10019<br>Tel: (212) 237-1000<br>Fax: (212) 262-1215<br><br>*Special Counsel for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Estate of Bernard L. Madoff* |

17