**CHAITMAN LLP**
Helen Davis Chaitman
465 Park Avenue
New York, New York 10022
(888) 759-1114
hchaitman@chaitmanllp.com

*Attorneys for Aaron Blecker*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>            Plaintiff-Applicant,<br><br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br>            Defendant. | Adv. Pro. No. 08-01789 (BRL)<br>SIPA LIQUIDATION<br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>            Debtor. | |

**AARON BLECKER'S REPLY MEMORANDUM OF LAW IN
FURTHER SUPPORT OF MOTION TO COMPEL
THE TRUSTEE TO ALLOW HIS SIPC CLAIM**

{00018303 3 }

**Preliminary Statement**

Aaron Blecker respectfully submits this reply memorandum in further support of his motion for an order compelling the Trustee to pay Mr. Blecker the $200,000 in SIPC insurance which he was entitled to receive in 2009.

**Argument**

The Court has before it the Declaration of Bernard L. Madoff which sets forth a set of facts with which no reasonable person could disagree: That, as an investment adviser, Mr. Madoff did not send checks to his customers (who had entrusted money to him to invest) unless they specifically asked that he do so. Furthermore, any such requests had to be in writing and Mr. Madoff retained such letters.

The Trustee cannot deny any of the statements in Mr. Madoff's declaration and, indeed, the Trustee has himself produced copies of letters from other customers asking for distributions and profit withdrawals. Indeed, his experts have relied upon such letters to "reconcile" the statements with what actually happened. In the case of the two Blecker accounts, one in the name of Aaron Blecker (1B0022) and the other in the name of Arthur Blecker and Sophie Blecker (1B0023), the Trustee's expert has admitted that the Trustee does not have a single record evidencing that the account holders received a dime on any of the profit withdrawal transactions reflected on their statements. See Exhs. 1 and 2 to the Reply Declaration of Helen Davis Chaitman containing attachments D. 17 and D. 18 to the Supplemental Expert Report of Lisa M. Collura dated December 17, 2015. These exhibits show "n/a" in the three "Reconciliation Results" columns where Collura listed documentary evidence supporting the profit withdrawals in the instances where such evidence exists.

{00018303 3 }            2

While the Trustee argues that Madoff's declaration is not credible, in this instance Madoff has taken a position which is obvious and credible and it is the Trustee who has taken a position that is incredible. The Trustee's own documents prove that, when Madoff's customers wanted withdrawals, they wrote letters to Madoff requesting those withdrawals and the Trustee has those letters. To take examples from documents produced by the Trustee, one customer (whose identity is concealed to protect her privacy) wrote to Madoff on August 19, 1994 stating:

> Please send to me at the above address the profits from the next transaction of my account with Madoff.

Chaitman Reply Decl. Exh. 3 (MADTBB01989184).

On October 20, 1994, that same customer wrote to Madoff:

> Please send to me at the above address the profits from the Next transaction of my account with Madoff.

Chaitman Reply Decl. Exh. 4 (MADTBB01989183).

On March 24, 1995, that same customer wrote to Madoff:

> Please discontinue withdrawing and sending to me the profits from transactions of my account with Madoff.

Chaitman Reply Decl. Exh. 5 (MADTBB01989181).

Similarly, another Madoff customer communicated with Madoff concerning the profit withdrawals, writing on January 3, 1995:

> The most recent checks received for both accounts was for Auto Desk. The Trust account's check was for $1,129.00; my H-1 was for $627.25. Yet, as best as I can follow the records, both seem to have bought the same 1,509 shares for the same 66 ½. Ergo, I do not understand.

Chaitman Reply Decl. Exh. 6 (AMF00189724).

This other customer also wrote to Madoff on April 6, 2007:

{00018303 3 }    3

> Please withdraw another $500,000 from my [redacted]
> Account and send the check to me . . .

Chaitman Reply Decl. Exh. 7 (AMF00189624).

The Trustee has scores of similar letters from those customers who received profit withdrawals. With respect to Mr. Blecker, however, the Trustee has no such document and, indeed, he has no evidence whatsoever that Mr. Blecker received any profit withdrawals. The Trustee has deprived Mr. Blecker of SIPC insurance on the theory that the ambiguous entries on Mr. Blecker's statements during the period from 1986 – 1997 indicating "CHECK [*e.g.,* AT&T]" and, on the same line, an entry "PW" indicate that Mr. Blecker received a check from Madoff for the specified amount. But these ambiguous entries are subject to another, much more credible, interpretation: Whenever a "PW" entry appeared on Mr. Blecker's statements, there was an indication of a stock split of the company in question. For example, on Mr. Blecker's March 31, 1995 statement, there is a "PW" for "CHECK ALUMINUM" and a notation "ALUMINUM COMPANY OF AMERICA 2 FOR 1 STOCK SPLIT." Chaitman Reply Decl. Exh. 8. Similarly, on Mr. Blecker's May 31, 1995 statement there is a "PW" for "CHECK HOME DEPOT" and, on the same page, there is a notation "HOME DEPOT INC SUB NT CONV." Chaitman Reply Dec. Exh. 9. This certainly would suggest to Mr. Blecker that he had to pay a small amount of money to obtain the additional shares.

The Trustee deposed Mr. Blecker and had a full opportunity to cross-examine him. See Chaitman Reply Decl. Exh. 10. Mr. Blecker has always insisted that he never – at any time – withdrew funds from any of his Madoff accounts. And the Trustee concedes that, but for the ambiguous "PW" entries during the period predating 1998, Mr. Blecker never withdrew any funds from any of his Madoff accounts. Yet, the Trustee

argues that the Court should accept the "PW" notation on Mr. Blecker's statements as proof that Mr. Blecker received the amounts indicated.

There are several reasons why the Trustee's position is untenable. First, the Trustee himself has repeatedly taken the position that Madoff's customer statements were totally fictitious. As the Second Circuit found:

> Madoff generated fictitious paper account statements and trading records in order to conceal the fact that he engaged in no trading activity whatsoever. Even though a customer's monthly account statement listed securities transactions purportedly executed during the reporting period and purported individual holdings in various Standard & Poor's 100 Index stocks as of the end of the reporting period, the statement did not reflect any actual trading or holdings of securities by Madoff on behalf of the customer.
>
> In fact, the Trustee's investigation revealed many occurrences where purported trades were outside the exchange's price range for the trade date." *In re Bernard L. Madoff*, 424 B.R. at 130. Other now revealed irregularities make it clear that "Madoff never executed his split-strike investment and hedging strategies, and could not possibly have done so." *Id.*

*Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff Inv. Sec. LLC),* 654 F.3d 229, 232 (2d Cir. 2013) (citing *In re Bernard L. Madoff Inv. Sec. LLC*, 424 B.R. 122, 130 (Bankr.S.D.N.Y.2010).

Thus, based upon the Trustee's own representations to the bankruptcy court and to the Second Circuit, there is no basis to credit any entry on a customer statement over Mr. Blecker's testimony and the lack of a single document proving that Mr. Blecker requested or received any withdrawals from his accounts.

Second, according to the Trustee, Madoff was operating a Ponzi scheme even in the 1980s. If the Trustee is correct, Madoff would have needed cash to pay redeeming

{00018303 3}                                         5

customers. He certainly would not have sent cash to customers, like Mr. Blecker, who never asked for it.

Third, Mr. Madoff's credibility is far greater than the Trustee's on the issue before the Court. It makes common sense that an investment advisor would not send profits to a customer unless the customer asked for them. There were no recorded phone lines in the 1980s and 1990s. Hence, an investment advisor would insist on obtaining a written request for withdrawals from a customer. Madoff swears that he kept such requests and the Trustee, in fact, has them.

This is a situation where the truth and common sense compel the conclusion that, if Mr. Blecker had asked for profit withdrawals, the Trustee would have a letter proving this. He does not and Mr. Blecker is entitled to his $200,000 SIPC insurance with interest, in view of the Trustee's wrongful denial of a timely insurance payment to Mr. Blecker.

The Trustee argues that there is an "anomaly apparent from the face of Blecker's statements" because he invested $200,000 and 11 years later he had only $206,529." (Trustee's Mem. at 14). However, this is precisely what the statements show. And, aside from the fact that the statements are incomprehensible, the figures on which the Trustee relies are equally anomalous. According to the Trustee, Blecker deposited $100,000 into Account No. 1B0022 on September 22, 1986 and, by November 12, 1992 (slightly more than six years later), Blecker had drawn out $130,077. *See* Chaitman Decl. Exh. 11 (Greenblatt's "PW Impact Analysis" at 1). Therefore, according to the Trustee, Blecker had profited by $30,077 over six years or 5% per year. If Blecker had simply invested in

{00018303 3 }                                                    6

10-year treasury notes in 1986, he would have realized 9.19% per year for ten years. [1]
Thus, over the same six year period, he would have realized $55,140 if he had simply invested in ten-year treasury notes. This exceeded by $25,063 the amount he purportedly earned through his Madoff account. These are hardly the "too good to be true" returns that the Trustee touts were Madoff's returns.

Thus, we respectfully suggest that the Court must stick to the facts. And the irrefutable facts before the Court are the following:

1. Blecker deposited $200,000 into his Madoff Account # 1B0022.

2. Madoff did not send money to customers unless they requested specific amounts of money in writing and Madoff retained all such requests. Madoff Decl. ¶ 2.

3. Proving the veracity of Madoff's statement, the Trustee has written requests for profit withdrawals from customers. *E.g.,* Chaitman Decl. Exhs. 3 - 7.

4. **The Trustee does he have a single request from Blecker for any withdrawal for the entire period from 1986 – 2008.**

5. Blecker has consistently sworn, since 2009 when he filed his SIPC claim, that he never took any withdrawals from his Madoff account.

6. The Trustee does not contend that Mr. Blecker took any withdrawals after 1998. And the only ground on which he claims Mr. Blecker took withdrawals prior to 1998 is the "PW" entry on some of his statements.

7. Mr. Blecker was deposed and the Trustee had a full opportunity to cross-examine him.

These irrefutable facts compel the conclusion that Mr. Blecker never took any money out of his Madoff account. This is not an issue on which expert testimony is appropriate. The issue before the Court is one of pure fact. And the Trustee has no evidence that Mr. Blecker received the profit withdrawals indicated as "PW" on the

---

[1] http://www.multpl.com/10-year-treasury-rate/table/by-year

{00018303 3 }                              7

customer statements. This money could have been stolen by Madoff or one of his employees. The entries on the statement could be totally fictitious or they could have some other meaning. But Mr. Blecker never received this money and he is entitled to have his SIPC claim for $200,000 paid plus interest.

**The Trustee's arguments against consideration
now of Mr. Blecker's motion are baseless**

The Trustee argues that the Court should not consider Mr. Blecker's motion because he is an appellant in the appeal (now decided by Judge Englemayer) of this Court's decision upholding the Trustee's methodology for valuing inter-account transfers. But the issue appealed to Judge Englemayer was whether the Trustee was required to accept, at the face amount, every inter-account transfer that pre-dated the fraudulent transfer period. That issue has nothing whatsoever to do with the pure issue of fact before this Court: whether Mr. Blecker actually received the checks listed on his statements as, for example, "CHECK AT&T" with the annotation "PW."

The Trustee argues that the determination of Blecker's claim should await this Court's decision following the extended discovery and briefing schedule relating to the general determination of profit withdrawal entries. But it would be cruel to do so because of Mr. Blecker's age and because the Trustee will never be able to prove that Mr. Blecker received any of the purported profit withdrawals indicated on his statements in the 1980's and 1990's. The statistical analysis of the Trustee's mathematicians is no substitute for the simple evidence presented on this motion.

In the seminal case of *People v. Risley,* 214 N.Y. 75 (1915), the New York Court of Appeals held that expert testimony based on mathematical probabilities could not be used to establish an historical fact. In *Risley,* the expert testimony that the Court of

Appeals found unacceptable involved the mathematical probability that the defendant's typewriter was used to create a particular document, even though the expert opined that the chances were one in four thousand million. *Id.* at 84-87. Similarly, in *Hollander v. American Cyanamid Co.,* 172 F. 3d 192 (2d Cir. 1999), *abrogated on other grounds by Schnabel v. Abramson*, 232 F.3d 83 (2d Cir. 2000), the Second Circuit held that the district court did not abuse its discretion in holding that statistical evidence was not probative of age discrimination.

In *People v. Collins,* 438 P.2d 33 (Cal. 1968), the California Supreme Court reversed a conviction where the prosecutor relied upon evidence that there was, according to mathematical probability, only one chance in 12 million that the defendants were innocent. The court wrote that the "'trial by mathematics' so distorted the role of the jury and so disadvantaged counsel for the defense as to constitute in itself a miscarriage of justice. *Id.* at 41. *Collins* has been cited with approval by numerous courts. *E.g., Ege v. Yukins,* 380 F. Supp. 2d 852, 877 (2005) (listing numerous cases and granting writ of habeas corpus where conviction was based upon statistical evidence)), , *aff'd in part, rev'd in part*, 485 F. 3d 364 (6th Cir. 2007).

In *United States v. Shonubi,* 103 F. 3d 1085 (2d Cir. 1997), the Second Circuit vacated a criminal sentence for drug trafficking where the district court relied upon statistical evidence to estimate the total quantity of drugs trafficked by the defendant. The Second Circuit held that statistical evidence of general drug smuggling did not equate to "specific evidence" with respect to that particular defendant. *Id.*; *see also Presser v. Key Food Stores Co-op, Inc.,* 24 IER Cases 1596 (E.D.N.Y. July 25, 2006) (court found plaintiff's statistical evidence to prove age discrimination was "demonstrably unsound"), *aff'd* 316 Fed. Appx. 9 (2d Cir. 2009); *Campbell v. Bd. of Ed.,*

310 F. Supp. 94, 105 (E.D.N.Y. 1970) (motion to enjoin elections for local school boards denied because the "computations offered at the trial were . . . not based upon any model demonstrably reflective of a real situation").

Thus, there is on basis to delay resolution of Mr. Blecker's right to be paid his SIPC insurance based on the schedule for the Trustee's profit withdrawal litigation.

## Conclusion

Mr. Blecker is 104 years old. He never took a single withdrawal out of his Madoff account. He is entitled to SIPC insurance of $200,000 plus interest from 2009. We ask that the Court order the Trustee to pay this money to Mr. Blecker.

Dated:  New York, New York
        February 10, 2016

**CHAITMAN LLP**

By: */s/ Helen Davis Chaitman*
Helen Davis Chaitman
465 Park Avenue
New York, New York 10022
(888) 759-1114
hchaitman@chaitmanllp.com

*Attorneys for Aaron Blecker*

## CERTIFICATE OF SERVICE

I, Helen Davis Chaitman, hereby certify that I caused a true and correct copy of the foregoing document with exhibits to be served upon the parties in this action who receive electronic service through CM/ECF and by electronic mail.

> BAKER & HOSTETLER
> David J. Sheehan
> 45 Rockefeller Plaza
> New York, NY 10111
> dsheehan@bakerlaw.com
>
> Kevin H. Bell, Esq.
> Securities Investor Protection Corporation
> 8005 Fifteenth Street, NW, Suite 800
> Washington, DC 20005
> kbell@sipc.org

I certify under penalty of perjury that the foregoing is true and correct.

Dated:   New York, New York
         February 10, 2016                    */s/ Helen Davis Chaitman*