**Baker & Hostetler LLP**

45 Rockefeller Plaza
New York, NY 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee for the*
*Substantively Consolidated SIPA Liquidation of*
*Bernard L. Madoff Investment Securities LLC and*
*the estate of Bernard L. Madoff*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>　　　　Plaintiff-Applicant,<br><br>　　v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>　　　　Defendant. | No. 08-01789 (SMB)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>　　　　Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>FEDERICO CERETTI, *et al.*<br><br>　　　　Defendants. | Adv. Pro. No. 09-1161 (SMB) |

**TRUSTEE'S MEMORANDUM OF LAW IN SUPPORT OF THE TRUSTEE'S
APPLICATION BY ORDER TO SHOW CAUSE FOR ENTRY OF AN ORDER
COMPELLING DEFENDANTS KINGATE GLOBAL FUND, LTD. AND KINGATE
EURO FUND, LTD. TO PRODUCE DOCUMENTS**

## TABLE OF CONTENTS

                                                                                    **Page**

PRELIMINARY STATEMENT ............................................................................................1

BACKGROUND .............................................................................................................3

ARGUMENT ....................................................................................................................9

    I.     THE FUNDS POSSESS OR HAVE CUSTODY OF THE VOLUNTARY
          PRODUCTIONS AND THE BERMUDA PRODUCTIONS, AND THE
          FUNDS MUST PRODUCE THEM IN THEIR ENTIRETY. ...............................9

    II.    THE FUNDS ARE WITHHOLDING HUNDREDS OF THOUSANDS
          OF DOCUMENTS FROM PRODUCTION ON PURPORTED
          CONFIDENTIALITY GROUNDS BUT REFUSE TO REVIEW THOSE
          DOCUMENTS AND PRODUCE THEM IN ACCORDANCE WITH
          THE RULES AND THE LPO. ............................................................................10

    III.   THE FUNDS "CONTROL" ALL OF THE SERVICE PROVIDERS'
          DOCUMENTS THAT RELATE TO THE FUNDS, AND THE FUNDS
          MUST THEREFORE COLLECT AND PRODUCE ALL SUCH
          DOCUMENTS IN THIS PROCEEDING. ...........................................................12

         A.     The Funds engaged third-party service providers to manage,
                 administer, and perform all of the Funds' day-to-day business
                 activities. ...................................................................................................12

         B.     The Service Provider Agreements expressly convey to the Funds
                 the right to possess and control all documents created, received, or
                 maintained by the Service Providers that relate to the Funds. ..................14

         C.     Under Rule 34, the Funds "control" all documents that were
                 created, received, or maintained by the Service Providers during
                 the course of their service engagements, and the Funds must
                 collect and produce them in this proceeding. ...........................................16

         D.     General Objection # 21 should be stricken as to Requests ## 1-37
                 and ## 39-43, and the Funds should be directed to collect from
                 KML and FIM documents responsive to the Requests and produce
                 them to the Trustee. ..................................................................................18

CONCLUSION ...............................................................................................................22

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Am. Rock Salt Co. v. Norfolk S. Corp.*,
228 F.R.D. 426 (W.D.N.Y. 2004) ........................................................................ 16

*In re Bankers Trust Co.*,
61 F.3d 465 (6th Cir. 1995) ................................................................................... 9

*Cooper Indus., Inc. v. British Aerospace*,
102 F.R.D. 918 (S.D.N.Y. 1984) ................................................................... 16, 17

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
236 F.R.D. 177 (S.D.N.Y. 2006) ................................................................... 16, 17

*Golden Trade S.r.L. v. Lee Apparel Co.*,
143 F.R.D. 514 (S.D.N.Y. 1992) ................................................................... 16, 17

*M.L.C., Inc. v. N. Am. Philips Corp.*,
109 F.R.D. 134 (S.D.N.Y. 1986) ......................................................................... 16

*Mahon v. Rahn*
[1998] Q.B. 424 ................................................................................... 19, 20, 21

*Marc Rich & Co., A.G. v. United States*,
707 F.2d 663 (2d Cir. 1983) ................................................................................ 16

*In re NTL, Inc. Sec. Litig.*,
244 F.R.D. 179 (S.D.N.Y. 2007) ................................................................... 16, 17

*Prudential Assurance Co. v. Fountain Page, Ltd.*
[1991] 1 W.L.R. 756 (QB) .................................................................................. 20

*SEC v. Strauss*,
No. 09 Civ. 4150 (RMB)(HBP), 2009 WL 3459204 (S.D.N.Y. Oct. 28, 2009) .............. 16, 17

*Societe Internationale Pour Participations Industrielles et Commerciales, S.A. v.
Rogers*,
357 U.S. 197 (1958) ..................................................................................... 16, 21

*Societe Nationale Industrielle Aerospatiale v. United States District Court for the
Southern District of Iowa*,
482 U.S. 522 (1987) ............................................................................................ 10

*Taylor v. Director of the Serious Fraud Office*
[1999] 2 A.C. 177 (HL) ............................................................................... 19, 20

*United States v. Stein*,
488 F. Supp. 2d 350 (S.D.N.Y. 2007) .................................................................. 17

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

**Statutes**

Securities Investor Protection Act, 15 U.S.C. §§ 78aaa-*lll* ...........................................................1

**Rules**

Fed. R. Bankr. P. 7037 ...............................................................................................................1

Fed. R. Civ. P. 26 ..............................................................................................................4, 9, 22

Fed. R. Civ. P. 34 ...............................................................................................................*passim*

Fed. R. Civ. P. 37 ...............................................................................................................*passim*

Local Bankruptcy Rule 7007-1......................................................................................................4

Local Bankruptcy Rule 9077-1(a) ...............................................................................................1

Local Civil Rule 37.1 ....................................................................................................................4

**Other Authorities**

Restatement (Third) of the Foreign Relations Law of the United States § 442
(Am. Law. Inst. 1987) ......................................................................................................9, 10

Irving H. Picard, as trustee (the "Trustee") for the substantively consolidated liquidation

of the business of Bernard L. Madoff Investment Securities LLC ("BLMIS"), under the

Securities Investor Protection Act, 15 U.S.C. §§ 78aaa-*lll* ("SIPA"), and the estate of Bernard L.

Madoff ("Madoff"), by and through his undersigned counsel, respectfully submits this

Memorandum of Law in support of his application by order to show cause (the "Application")

under Rule 9077-1(a) of the Local Bankruptcy Rules for the Southern District of New York (the

"Local Bankruptcy Rules"), Rule 37 of the Federal Rules of Civil Procedure (the "Rules") (made

applicable by Rule 7037 of the Federal Rules of Bankruptcy Procedure), and paragraph 21 of the

Litigation Protective Order entered on June 6, 2011 (the "LPO"), for entry of an order

compelling the production of documents from defendants Kingate Global Fund, Ltd. ("Kingate

Global") and Kingate Euro Fund, Ltd. ("Kingate Euro," and with Kingate Global, the "Funds").

## PRELIMINARY STATEMENT

Since the Trustee served his First Sets of Requests for Production of Documents and

Things (the "Requests") on the Funds almost five months ago, all means employed by the

Trustee for obtaining the Funds' production of documents to the Trustee and thereby facilitating

the progress of this litigation have reached a dead end.  It appears that no amount of cooperation

on the Trustee's part will be able to resolve the impasse consistent with the LPO and related

discovery orders entered by the Court.  To date, the Funds have produced only 7% of the

relevant documents in their possession, custody, or control and are admittedly withholding from

production no fewer than **329,332** documents.  According to the Funds, they have deferred

review, and withheld production, of the vast majority of those documents pending leave of courts

presiding over non-public proceedings in Bermuda and the BVI.

Of those withheld documents, the Funds have refused to produce no fewer than **235,332**

documents on confidentiality grounds under BVI law.  This violates the LPO—to which the

Funds agreed—and which expressly requires a producing party to produce confidential material subject to a confidentiality designation and the attendant protections afforded by the LPO.  The LPO neither allows a party to withhold from production any document that contains confidential material nor permits redaction of confidential material.  Yet the Funds are not only withholding documents that purportedly contain what they deem to be "confidential shareholder information" (such as shareholders' names and addresses), they are withholding categories of documents that *might* include documents that *might* contain "confidential shareholder information."

The Funds further claim that they cannot produce **94,000** relevant documents to the Trustee until they obtain permission to do so from the Bermuda court presiding over the Bermuda Action.[1]  Under Rule 34, the Funds have, at a minimum, the right to possession, custody, or control of documents that relate to the Funds' business activities and were created, received, or maintained by their service providers.  Apart from any documents produced to the Funds in the Bermuda Action, the Funds have not satisfied their burden of showing that they are unable to collect and produce to the Trustee all such original documents.

The Funds instead have delayed compliance with their document discovery obligations for over four months and have not provided the Trustee with a date certain for production. Continuing on this path effectively subordinates the Funds' obligations under applicable rules of this Court to determinations made by foreign courts concerning if, when, and under what circumstances the Funds may perform those obligations.

---

[1] The term "Bermuda Action" refers to the civil action commenced by Kingate Global Fund, Ltd. and Kingate Euro Fund, Ltd. against Kingate Management Limited, FIM Limited, FIM Advisers LLP, First Peninsula Trustees Limited (as Trustee of the Ashby Trust), Port of Hercules Trustees Limited (as Trustee of the El Prela Trust), Ashby Holding Services Limited, El Prela Group Holding Services Limited, Carlo Grosso, Federico Ceretti, Ashby Investment Services Limited, El Prela Trading Investments Limited, and Alpine Trustees Limited in the Supreme Court of Bermuda, Civil Jurisdiction, Commercial List, bearing the caption *Kingate Global Fund Ltd. v. Kingate Mgmt. Ltd.*, No. 2010:454.

The Funds have filed customer claims in this SIPA liquidation, seeking the benefits

afforded by federal law.  They sought the benefit of federal procedural rules when they asked the

Court to dismiss the Trustee's Fourth Amended Complaint and again when they unsuccessfully

sought an interlocutory appeal of this Court's decision on that motion.  The Funds have received

the benefit of Rule 34, specifically, by the Trustee's production of core account documents and

bank transfer documents, and by receiving access to data rooms containing almost 9 million

documents, of which the Funds to date have requested production of over 100,000 documents

they consider relevant to the claims or defenses in this proceeding.  The Funds cannot have it

both ways.  They cannot invoke and seek the benefits of federal law without satisfying the law's

demands.

Accordingly, the Court should direct the Funds to produce all documents responsive to

the Requests, subject to any confidential designations that the Funds assert in good faith under

the LPO, within thirty days of the date of the Court's order.  If the Funds fail to comply with the

Court's order, the Trustee asks that he be granted leave to move under Rule 37 for sanctions,

including the striking of the Funds' customer claims.

## BACKGROUND

The Trustee served the Requests on October 7, 2015.[2]  The Requests seek documents

concerning the Funds' formation and structure, contractual relationships, due diligence and

investment activity, financial and accounting records, subscriptions and redemptions, bank

accounts, and customer accounts and transfers, as well as documents concerning BLMIS, certain

specific individuals and entities, and investigations and litigation concerning the Funds.[3]  All

---

[2] Declaration of Anthony M. Gruppuso, Esq. in Support of the Trustee's Application by Order to Show Cause for Entry of an Order Compelling Defendants Kingate Global Fund, Ltd. and Kingate Euro Fund, Ltd. to Produce Documents ("Gruppuso Decl.") Ex. A.

[3] *Id.* Ex. A.

documents in the Funds' possession, custody, or control are relevant to the claims or defenses in this proceeding under Rule 26,[4] because the Funds existed solely for exclusive investment with BLMIS. Accordingly, the Requests demand the Funds produce all responsive documents in their possession, custody, or control.[5]

The Funds asserted twenty-one "General Objections" to the production of documents responsive to the Requests.[6] By "General Objection # 20," the Funds object to each of the Requests to the extent each seeks "information regarding specific shareholders in [the Funds], as production of such information may require the Joint Liquidators of [the Funds] to breach their obligations under BVI law and/or provisions included in agreements with shareholders."[7] Under "General Objection # 21," the Funds object to each of the Requests to the extent each seeks "information provided to [the Funds] by other defendants in this case in connection with [the Funds'] legal proceedings in Bermuda, as production of such information may require the Joint Liquidators of [the Funds] to breach their obligations under Bermuda law and/or agreements with these producing parties."[8]

During the meet-and-confer process,[9] the Trustee learned that the Funds obtained (outside of this adversary proceeding) no fewer than **399,530** documents—currently in their possession,

---

[4] Fed. R. Civ. P. 26(b)(1).

[5] Gruppuso Decl. Ex. A, Instructions ¶ 3.

[6] *Id.* Ex. B, at 2-5.

[7] *Id.* at 5.

[8] *Id.* The Trustee has submitted the Requests and the Funds' written responses and objections as Exhibit A and Exhibit B respectively to the Gruppuso Decl. To ensure compliance with Rule 37.1 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, the Trustee has also attached as Exhibit A to this Memorandum a chart setting forth verbatim the Requests and General Objections ## 20 and 21 at issue.

[9] To date, the Trustee has requested and participated in five conferences with the Funds' counsel beginning on October 1, 2015 and continuing into January 2016. True and complete copies of the correspondence exchanged and submitted during that process are attached as Exhibit C through Exhibit V to the Gruppuso Decl. As that correspondence shows, and as required by Rule 37(a)(1) and Local Bankruptcy Rule 7007-1(a), the Trustee's counsel has conferred with the Funds' counsel in an effort to obtain the discovery in dispute without the need for motion practice. Gruppuso Decl. ¶ 4.

custody, or control—relevant to the Trustee's claims or the Funds' defenses.  The Funds

collected no fewer than **259,730** documents from their service providers and others, without

formal demand and without the need for court order (the "Voluntary Productions"), as follows:

- From **Kingate Management Limited** ("KML"), **106,880** documents retrieved from its server, which has been imaged and preserved.[10]

- From **Citi Hedge Fund Services Limited**, approximately **17,115** documents in electronic form and approximately 350 bankers boxes of documents in paper form, amounting to no fewer than **79,975** documents.[11]

- From **FIM Advisers LLP** and **FIM Limited** (collectively, "FIM"), **53,493** documents.

- From the **Funds' directors**, **1,828** documents.

- From **HSBC Bank of Bermuda Limited** ("Bank of Bermuda"), **66** documents (some of which consist of years of the Funds' bank statements and are accordingly hundreds of pages in length).

- From **Tremont (Bermuda) Limited**, approximately **362** documents, and from **Bison Financial Services Limited**, **11** documents.[12]

In addition to those Voluntary Productions, the Funds informed the Trustee that the Funds

obtained approximately **139,800** documents through discovery of defendants sued in the

Bermuda Action (the "Bermuda Productions"), as follows:

- From **KML**, approximately 66,000 documents, of which approximately **43,000** documents were not part of KML's Voluntary Production.

- From **FIM**, approximately 47,000 documents, of which approximately, **24,200** documents were not part of FIM's Voluntary Production.

---

[10] KML's sole business activity was to serve as manager of the Funds.  Notably, the Funds did not maintain a server and thus communicated with their investors through KML and its server.

[11] Those 79,975 documents ostensibly represent the contents of 130 of the 350 bankers boxes.  *See* Gruppuso Decl. Ex. L, at 3.  The remaining 220 boxes could therefore contain upwards of 135,000 more documents.  And at this time, the Trustee does not know whether the documents received by the Funds from Citi Hedge Fund Services Limited constitute the entire universe of documents in its possession responsive to the Requests, and the Trustee also does not know whether those documents include any or all responsive documents that were created or received by Hemisphere Management Limited or BISYS Hedge Fund Services Limited, both of which preceded Citi Hedge Funds Services Limited as administrator of the Funds.  Thousands more responsive documents may therefore exist that are within the Funds' control.

[12] *See id.* Ex. D, at 2-4; *id.* Ex. P, at 1-2.

- From the **Trust Defendants**,[13] approximately **26,800**, none of which were part of the Voluntary Productions.[14]

The Funds therefore have in their possession, custody or control no fewer than **353,730** documents[15] that relate to the Funds' business affairs and the relationships between and among the Funds and the defendants in the Bermuda Action.

By General Objection # 20, the Funds assert that BVI law prohibits the production of any document that contains "confidential shareholder information," notwithstanding the protections afforded confidential material by the LPO. Of the no fewer than 259,730 documents comprising the Voluntary Productions, the Funds are withholding 235,332 documents from production under General Objection # 20,[16] even though they have not visually reviewed them for confidential information. Rather than perform such a review—a task common to civil litigation in this country—the Funds are withholding *whole categories* of documents from production because either (i) "more than fifty percent of a specific document category" hit on a shareholder-name search[17] or (ii) "other categories of documents, such as email communications, . . . *ran the risk*" of not being identified by a shareholder-name search as containing confidential shareholder information.[18] In addition to the 109,000 documents that the Funds are withholding under that protocol, the Funds are withholding the approximately 220 boxes of paper documents they

---

[13] The "Trust Defendants" are First Peninsula Trustees Limited, Port of Hercules Trustees Limited, Alpine Trustees Limited, The Ashby Trust, Ashby Holding Services Limited, Ashby Investment Services Limited, El Prela Trust, El Prela Group Holding Services Limited, and El Prela Trading Investments Limited.

[14] *Id.* Ex. D, at 4.

[15] This figure represents the Voluntary Productions (exclusive of the 220 remaining bankers boxes of paper documents received from Citi Hedge Fund Services Limited, which, as stated, could constitute upwards of 135,000 additional documents) plus those documents contained within the Bermuda Productions that the Funds have represented are not duplicative of documents contained within the Voluntary Productions.

[16] The Funds produced 17,335 documents on or about December 15, 2015, 4,728 documents on or about February 1, 2016, 135 documents on or about February 10, 2016, and 2,200 documents on or about February 18, 2016.

[17] The search conducted by the Funds included the names of shareholder nominees, who could not possibly have any expectation of confidentiality within the context of the Funds' liquidations.

[18] *See id.* Ex. P, at 2 (emphasis added).

possess, because those documents cannot be electronically searched and the Funds do not wish to undertake a manual review of them.[19]   The Funds' actions thus violate the LPO, which expressly requires production to the Trustee of all of those documents (subject to the Funds' good-faith designations of "Confidential Material" and the Funds' right to apply to the Court for measures more protective than those already established in the LPO for the handling and use of Confidential Material).

Instead of conducting a review and producing documents pursuant to Rule 34 and in compliance with the LPO, the Funds have applied to a BVI court for permission to produce to the Trustee documents purportedly containing Confidential Material.  The BVI court held a hearing on the Funds' application on January 26, 2016, at which time the BVI court set a briefing schedule and a second hearing date.  The Funds' counsel has represented to the Trustee that a second hearing was held before the BVI court on February 5, 2016, to permit the Funds to produce the "Voluntary Productions," in their entirety, to the Trustee.  On March 1, 2016, the Funds delivered to the Trustee a copy of an order (dated February 5, 2016, and entered February 26, 2016) and note of judgment (dated February 5, 2016) issued by the BVI court purportedly disposing of the Funds' application.  Although, by condition imposed by the Funds, the Trustee cannot share the order with the Court, the Trustee represents that the BVI court's decision is consistent with and supports the relief sought by the Trustee with this Application.[20] Accordingly, the Trustee asserts his rights under the LPO and challenges the Funds' assertion of General Objection # 20 to Requests ## 1-43.

---

[19] *See id.*

[20] Notwithstanding the BVI court's decision of February 5, 2016, on the Funds' application, the Funds have yet to provide the Trustee with a date certain for production of the Voluntary Productions.

By General Objection # 21, the Funds contend that "an implied undertaking" bars them from producing to the Trustee *any* of the 139,800 documents produced in discovery in the Bermuda Action.[21]  The burden of demonstrating that foreign law blocks the Funds' production of documents to the Trustee rests with the Funds, but they have not moved this Court for relief from their discovery obligations.  Only Request # 38 demands production of discovery exchanged in the Bermuda Action, and all of the documents produced in the Bermuda Action are responsive to one or more of the other forty-two Requests.[22]  The Funds, moreover, have the contractual right and practical ability to demand and obtain all documents produced by KML and FIM in the Bermuda Action independent of whether copies of those documents were included within the Bermuda Productions.  Instead of simply recognizing their rights to possess and control KML's and FIM's documents that relate to the Funds, the Funds have chosen to seek leave from their "implied undertaking" in the Bermuda court.[23]  Accordingly, the Trustee challenges the Funds' assertion of General Objection # 21 to Requests ## 1-37 and ## 39-43 and requests an order compelling the Funds to produce all documents responsive to those Requests.

---

[21] *See* Gruppuso Decl. Ex. L, at 1.

[22] The Funds' counsel confirmed to the Trustee's counsel during a conference call on December 15, 2015, that the Funds had asserted General Objection # 21 in response to each of the Requests and were withholding all of the documents produced in the Bermuda Action pursuant to it.

[23] On November 24, 2015, the Bermuda court held a hearing to address, among other things, the Funds' request to disclose to the Trustee all documents the Funds obtained through discovery from defendants in the Bermuda Action. The Funds purportedly advised the Bermuda court of the need for expedition, as timely document production facilitated depositions and other aspects of discovery in this proceeding.  Notwithstanding the need for urgency, the Bermuda court set a hearing date of March 17, 2016, for the Funds' application.  When the Bermuda court may rule on the Funds' application is unknown.

# ARGUMENT

## I.    THE FUNDS POSSESS OR HAVE CUSTODY OF THE VOLUNTARY PRODUCTIONS AND THE BERMUDA PRODUCTIONS, AND THE FUNDS MUST PRODUCE THEM IN THEIR ENTIRETY.

Under Rule 26 and Rule 34, a party must produce documents relevant to a party's claims or defenses within the producing party's "possession, custody, or control."[24]   The Rule 34 standard is disjunctive, and only one of the conditions for production must therefore be satisfied. Here, the Funds do not dispute that they have possession of both the Voluntary Productions and the Bermuda Productions.  The Funds object to production of the Voluntary Productions on third-party confidentiality grounds arising under BVI law, and their objection to production of the Bermuda Productions relies on an implicit lack of control arising under Bermuda law prohibiting disclosure of documents received in discovery in Bermuda litigation.  Because the elements of possession and custody are satisfied as to both the Voluntary Productions and the Bermuda Productions, and because each set of documents is relevant and responsive to the Requests,[25] both must be produced.[26]  Whatever limitations the Funds contend that BVI law and Bermuda law place on discovery of the Voluntary Productions and the Bermuda Productions are irrelevant and do not overcome the Funds' obligations under the Rules.[27]

---

[24] Fed. R. Civ. P. 34(a)(1).

[25] Gruppuso Decl. Ex. A, at 18 ¶ 38.

[26] *See In re Bankers Trust Co.*, 61 F.3d 465, 469-471 (6th Cir. 1995) (affirming order directing defendant bank to produce documents, which were received from Federal Reserve Board and were in bank's actual physical possession, and reasoning that "parties in possession of documents forwarded to them by a federal agency have 'possession, custody or control' within the meaning of Rule 34, notwithstanding the fact that the agency by regulation retains ownership and restricts disclosure").

[27] The Funds may argue that section 442(1)(c) of the Restatement (Third) of the Foreign Relations Law of the United States, which prescribes several factors for a court to consider when determining whether to order a litigant to produce documents or information located abroad, applies here and leads to the conclusion that a discovery order is unwarranted.  Restatement (Third) of the Foreign Relations Law of the United States § 442(1)(c) (Am. Law. Inst. 1987) ("In deciding whether to issue an order directing production of information located abroad . . . .").  Those factors are:  "the importance to the investigation or litigation of the documents or other information requested; the degree of specificity of the request; whether the information originated in the United States; the availability of alternative means of securing the information; and the extent to which noncompliance with the request would undermine important interests of the United States, or compliance with the request would undermine important

## II. THE FUNDS ARE WITHHOLDING HUNDREDS OF THOUSANDS OF DOCUMENTS FROM PRODUCTION ON PURPORTED CONFIDENTIALITY GROUNDS BUT REFUSE TO REVIEW THOSE DOCUMENTS AND PRODUCE THEM IN ACCORDANCE WITH THE RULES AND THE LPO.

The LPO governs the production and handling of confidential information in this adversary proceeding.[28]  Paragraph 2(a) defines "Confidential Material" as material that "contains trade secret or other confidential research, development, or commercial information; personal identifying information; or other information the disclosure of which would breach a legal or contractual obligation . . . ."  The Funds' General Objection # 20 objects to the production of what the Funds refer to as "confidential shareholder information," which the Funds have described to include personal identifying information of shareholders (i.e., names, addresses, phone numbers and other contact information) and disclosure of which the Funds contend would breach the Funds' obligations under BVI law.[29]  Thus, the LPO's definition of Confidential Material squarely includes the "confidential shareholder information" that the Funds contend supports their wholesale withholding of documents from production.

The Funds are not, however, complying with the LPO's mandates concerning the production of Confidential Material.  The Funds first have refused to accept and abide by paragraph 4(e) of the LPO, which excepts from Confidential Material "information sufficient to

---

interests of the state where the information is located."  Restatement (Third) of the Foreign Relations Law of the United States § 442(1)(c); *see also Societe Nationale Industrielle Aerospatiale v. United States District Court for the Southern District of Iow*a, 482 U.S. 522, 544 & n.28 (1987). Section 442(1)(c) does not, however, apply in this case because the Voluntary Productions and the Bermuda Productions are not "located abroad."  The Funds' counsel has advised that the Voluntary Productions and the Bermuda Productions are stored electronically in a database accessible to the Funds' counsel.  The Trustee has asked the Funds on several occasions to disclose the physical location of those documents, but they have refused.  The Trustee believes that for purposes of section 442(1)(c), the Voluntary Productions and the Bermuda Productions are located within the United States.  Indeed, the Funds' counsel has accessed the Voluntary Productions, and produced constituent documents, from their offices in New York.

[28] *See* Gruppuso Decl. Ex. W, at 14 ¶19 ("All designations of material as Confidential made after the date of the entry of this Order shall be controlled by this Order.").

[29] Such information is relevant and responsive to the Requests because the Funds' shareholders were immediate transferees of the Funds and because the shareholders may have information relevant to the Trustee's claims.

identify an individual or entity . . . as an immediate or mediate transferee of a BLMIS customer,"

which information is among the "confidential shareholder information" the Funds are

withholding.[30]   Even if such "confidential shareholder information" were Confidential Material,

the Funds would still have to produce it.   Under paragraph 5 of the LPO, the Funds must

designate Confidential Material "in good faith and not for the purpose of delaying or obstructing

the ability of any other party to investigate the facts of this controversy or prepare for litigation."

Once designated, the Funds must produce the Confidential Material to the Trustee and the other

defendants pursuant to paragraphs 10 and 11 of the LPO.   Paragraph 10 permits disclosure of

Confidential Material to certain defined groups, which include the parties and their counsel in the

adversary proceeding in which the Confidential Material is produced,[31] and paragraph 11

unequivocally states that neither the Trustee nor any other party in this proceeding is precluded

from using Confidential Material for purposes of the prosecution of claims and defenses.   To

safeguard the confidentiality of the information, paragraph 15 directs that, for purposes of filing

with the Court, designated Confidential Material be submitted under seal according to specific

procedures.

   In violation of Rule 34 and the LPO, the Funds are withholding no fewer than **235,332**

documents from production on the basis of confidentiality before visually reviewing and

---

[30] *See* Gruppuso Decl. Ex. W.   Pointing to paragraph 4(e), the Trustee has asserted that such information is not
Confidential Material entitled to protection under the LPO.   But in an effort to avoid litigating the issue, the Trustee
offered to consent to the designation of the Funds' "confidential shareholder information" as Confidential Material
under the LPO, on the condition that the Trustee could use such information covered by paragraph 4(e) without
restriction and otherwise with a full reservation of all rights conferred by the LPO.   *See id.* Ex. Q.

[31] Specifically, the LPO permits disclosure of Confidential Material to:  (1) the Court, Court personnel assisting the
Court, and stenographers or other persons involved in taking or transcribing testimony; (2) the producing or
receiving parties in the adversary proceeding in which the Confidential Material was produced, officers and
employees of the respective parties responsible for the parties' participation in the adversary proceeding, counsel
representing the respective parties in the adversary proceeding, and the litigation assistants, paralegals, secretarial or
other clerical personnel, and agents of counsel; (3) authors and recipients of the designated Confidential Material;
(4) SIPC; (5) witnesses and their counsel at deposition in an adversary proceeding or Rule 2004 examination; and
(6) others as permitted by Court order or agreement of the parties.

determining that the documents contain Confidential Material. The Funds have instead simply run a shareholder-name search across only electronically stored documents, eliminating whole categories of documents from production because (i) they are stored in paper form, (ii) more than 50% of the documents within a category *might* contain "confidential shareholder information," or (iii) a category of documents was susceptible to "the risk" that a shareholder-name search was ineffective to identify "confidential shareholder information."[32] The LPO prohibits the Funds from withholding from production *any* document that contains Confidential Material, let alone withholding entire *categories* of documents on speculation that the categories *might* include documents that *might* contain "confidential shareholder information," which itself is excluded by paragraph 4(e) from the LPO's definition of Confidential Material. Rule 34 and the LPO require the Funds to produce to the Trustee all documents within the Voluntary Productions that are responsive to the Requests, designating documents as Confidential Material when a good-faith basis exists for doing so. Rule 37 and paragraph 21 of the LPO[33] entitle the Trustee to an order compelling the Funds to do so.

## III.    THE FUNDS "CONTROL" ALL OF THE SERVICE PROVIDERS' DOCUMENTS THAT RELATE TO THE FUNDS, AND THE FUNDS MUST THEREFORE COLLECT AND PRODUCE ALL SUCH DOCUMENTS IN THIS PROCEEDING.

### A.    The Funds engaged third-party service providers to manage, administer, and perform all of the Funds' day-to-day business activities.

The Funds had boards of directors but no employees. Accordingly, through a series of agreements, the Funds delegated to affiliated services providers the duty to conduct all of the Funds' day-to-day business activities. KML served as the Funds' manager; FIM served as

---

[32] *See* Gruppuso Decl. Ex. P, at 2.

[33] Paragraph 21 provides, "In the event anyone shall violate, or threaten to violate, any terms of this Order, any party having standing may apply to this Court, consistent with the Local Bankruptcy Rules of this Court, to obtain injunctive relief against any such person or entity."

consultant to KML and distributor for the Funds; Hemisphere Management Limited, BISYS

Hedge Fund Services Limited, and Citi Hedge Fund Services Limited (collectively, the

"Administrators") served as the Funds' administrator and registrar; and Bank of Bermuda served

as the Funds' custodian.[34]

Those "Service Provider Agreements"[35] created a structure that held KML responsible

for implementing the Funds' investment strategy, performing all duties and functions necessary

to the administration of the Funds, and marketing and selling shares in the Funds.  KML had the

right to delegate those responsibilities, and it did so.  The Administrators became responsible for

carrying on the general administration of the Funds, including calculating and publishing the

Funds' net asset value, calculating fees due the Service Providers, providing a corporate

secretary, maintaining the corporate register, maintaining the principal corporate records and

books of account, preparing draft financial statements, arranging for an annual audit of the

Funds, processing all subscription and redemption requests, answering all correspondence with

shareholders, and establishing and maintaining the Funds' bank, brokerage, and custodian

accounts.  As custodian, Bank of Bermuda became responsible for the custody of securities and

cash owned by the Funds, maintaining bank accounts on behalf of the Funds, disbursing cash

(for example, to pay service provider fees and shareholder redemptions), transferring securities

as instructed, and performing all functions necessary to the issuance, subscription, redemption,

and transfer of the Funds' shares.  And as consultant and distributor, FIM handled all aspects of

marketing the Funds to potential investors and provided consulting services to KML on all

---

[34] KML, the Administrators, FIM, and Bank of Bermuda will collectively be referred to as the "Service Providers."

[35] The term Service Provider Agreements refers to the agreements between the Funds and their Service Providers, which the Trustee has described on the attached Exhibit C and has submitted to the Court as Exhibit X through Exhibit OO of the Gruppuso Decl.

matters relating to the Funds' investments, including presenting to the Funds' directors on the

status of the Funds' performance.[36]

    With that service-provider structure, the Funds outsourced all day-to-day aspects of their

business affairs.  Although the Service Providers effectively operated the Funds (under the

constant, day-to-day supervision of KML and its principals, defendants Federico Ceretti and

Carlo Grosso), it was understood and agreed that the records relating to the Funds' business

affairs belonged to the Funds, not the Service Providers.

> **B.**    **The Service Provider Agreements expressly convey to the Funds the right to possess and control all documents created, received, or maintained by the Service Providers that relate to the Funds.**

    Because the Service Providers administered all of the Funds' business activities, the

Service Providers created, received, and maintained all of the Funds' documents.  Accordingly,

the Service Provider Agreements expressly recognized the Funds' rights in those documents.[37]

For example, the Management Agreement dated as of January 1, 2006 between KML and

Kingate Global provides:

> Upon termination of the appointment of the Manager, . . . the Manager shall deliver or procure to be delivered to the Fund or successor manager, or as it shall direct, all books of account, records, other registers, correspondence, and documents relating to the affairs of or belonging to the Fund in the possession of or under the control of the Manager.[38]

---

[36] Attached to this Memorandum as Exhibit B are a series of charts quoting directly from the various agreements between the Funds and the Service Providers showing in detail the broad responsibilities the Service Providers collectively possessed to operate the Funds' business.

[37] The Trustee has culled each of the pertinent contractual provisions from the Service Provider Agreements and compiled them in a chart attached as Exhibit C.

[38] *See* Exhibit C (reciting from clause 5.8(d) of the January 2006 KGF Management Agreement, as defined therein). *See also id.* (reciting from clause 13.4 of the 1994 KGF Manager Agreement, as defined therein, and from clause 5.8(d) of the July 2004 KGF Co-Manager Agreement, as defined therein).

The Funds' administration,[39] registrar,[40] and distribution[41] agreements all conferred identical

rights upon the Funds.  The consulting services agreements between KML and FIM likewise

obligated FIM to deliver to KML all such documents, and the Funds' rights to obtain FIM's

documents thus flow through their rights to obtain documents from KML.[42]  The Manager

Agreement dated May 1, 2000 between KML and Kingate Euro and the custodian agreements

between the Funds and Bank of Bermuda used different language to confer the Funds' rights to

obtain documents and information.  Although those agreements did not mandate delivery to the

Funds of documents created and received during the service engagements, they obligated KML

and Bank of Bermuda to make such documents available to the Funds upon request.[43]

Those express contractual provisions demonstrate the Funds' right to possess, have

custody of, and control all documents that the Service Providers may have created or received

relating to the Funds.

---

[39] *See id.* (reciting from clause 13.4 of the 1994 Administration Agreement, as defined therein, from clause 13.4 of the 2000 Administration Agreements, as defined therein, and from clause 14.1 of the 2007 Administration Agreements, as defined therein).

[40] *See id.* (reciting from clause 12.4 of the 2000 Registrar Agreements, as defined therein).

[41] *See id.* (reciting from clause 8.3 of the 2001 Distribution Agreements, as defined therein).

[42] *See id.* (reciting from clause 7 of the 1995 Consulting Services Agreement, as defined therein, and from clause 14.3 of the 2001 Consulting Services Agreements, as defined therein).

[43] *See id.* (reciting from clause 4.6 of the May 2000 KEF Manager Agreement, as defined therein, which required KML to deliver to Kingate Euro, upon its request, "information regarding the activities (i) conducted by [KML] since the inception of this Agreement . . . and (ii) proposed to be conducted by [KML]"); *id.* (reciting from clause 2.5 of the May 2000 KEF Manager Agreement, as defined therein, which required KML to maintain and preserve all documents "generated or received by [KML] in the ordinary course of business pertaining to the financial condition of [Kingate Euro] or to the compensation payable to [KML]," which Kingate Euro's auditors were permitted to review and copy ); *id.* (reciting from clause 9(C) and clause 19(B) of the March 1994 Custodian Agreement, as defined therein, which required Bank of Bermuda to permit Kingate Global to inspect all books, records, and statements maintained by Bank of Bermuda on Kingate Global's behalf and to deliver to Kingate Global upon termination of the custodian engagement "any . . . property" of Kingate Global in Bank of Bermuda's custody, and from clause 9(C), 18(B), and 21 of the May 2000 Custodian Agreement, as defined therein, which provided for such right of inspection and obligation to deliver property, as well as authorizing Bank of Bermuda "to maintain all accounts, corporate books and other documents relating to the [Funds] or [their] affairs . . . and to produce at any time during the course of legal proceedings" such documents).

### C. Under Rule 34, the Funds "control" all documents that were created, received, or maintained by the Service Providers during the course of their service engagements, and the Funds must collect and produce them in this proceeding.

The Trustee is entitled to documents that are relevant and are responsive to the Requests that are in the "possession, custody or control" of the Funds.[44] Whether the Funds "control" documents—and thus have an obligation to collect and produce them under Rule 34—is to be viewed broadly.[45] The Funds need not have "legal ownership or actual physical possession" of documents to be said to "control" them for purposes of production. Although ownership or possession will trigger the obligation to produce, should the Funds have "the right, authority, or practical ability to obtain" documents, then the Funds "control" those documents as a matter of law.[46] To find that the Funds have the "practical ability" to obtain documents that it must collect and produce, the Funds need only have access to documents and a mechanism for obtaining them.[47] The Funds control documents wherever they may be located, because "the test for production of documents is control, not location."[48]

---

[44] Fed. R. Civ. P. 34(a)(1). That disclosure to the Trustee of the Bermuda Productions might violate an implied undertaking in contravention of Bermuda common law does not preclude a finding that the Bermuda Productions are within the Funds' control. *See Societe Internationale Pour Participations Industrielles et Commerciales, S.A. v. Rogers*, 357 U.S. 197, 204-06 (1958) (concluding that the responding party controlled documents under Rule 34, notwithstanding that foreign law provided criminal penalties for disclosure of the documents sought).

[45] *SEC v. Strauss*, No. 09 Civ. 4150 (RMB)(HBP), 2009 WL 3459204, at *7 (S.D.N.Y. Oct. 28, 2009) ("Control is construed broadly."); *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 236 F.R.D. 177, 180 (S.D.N.Y. 2006) ("The concept of control has been construed broadly.").

[46] *In re NTL, Inc. Sec. Litig.*, 244 F.R.D. 179, 195 (S.D.N.Y. 2007); *see also Strauss*, 2009 WL 3459204 at *7 (recognizing that a party "has control over material that it has the practical ability to obtain" or "that it has the legal right to obtain"); *In re Flag Telecom*, 236 F.R.D. at 180 ("If the producing party has the legal right or the practical ability to obtain the documents, then it is deemed to have control, even if the documents are actually in the possession of a non-party."); *Golden Trade S.r.L. v. Lee Apparel Co.*, 143 F.R.D. 514, 525 (S.D.N.Y. 1992); *M.L.C., Inc. v. N. Am. Philips Corp.*, 109 F.R.D. 134, 136 (S.D.N.Y. 1986) ("Control includes the legal right of the producing party to obtain documents from another source upon demand.").

[47] *See Cooper Indus., Inc. v. British Aerospace*, 102 F.R.D. 918, 919-20 & n.2 (S.D.N.Y. 1984) (announcing that "documents and records that a corporation requires in the normal course of its business are presumed to be in its control unless the corporation proves otherwise"); *see also Am. Rock Salt Co. v. Norfolk S. Corp.*, 228 F.R.D. 426, 457 (W.D.N.Y. 2004) ("[D]ocuments held by a party's agent are deemed to be in a party's control.").

[48] *Marc Rich & Co., A.G. v. United States*, 707 F.2d 663, 667 (2d Cir. 1983); *In re NTL*, 244 F.R.D. at 195 ("The test for the production of documents is control, not location. Documents may be within the control of a party even if

There can be no reasonable dispute that the Funds control all documents relating to their

affairs that were created or received by KML, the Administrators, Bank of Bermuda, and FIM

during the course of their engagements.  The Service Provider Agreements expressly provide the

Funds with the legal right to obtain all such documents,[49] because they either require delivery of

actual physical possession of such documents to the Funds upon termination of the engagement[50]

or permit access to such documents at the Funds' request.[51]

The Funds, furthermore, had (and have) "the practical ability to obtain" such documents

from the Service Providers.  The Funds, in fact, received and possess the Voluntary Productions

upon request to the Service Providers without formal legal action.[52]  All of the documents at

issue were created, received or maintained for the sole purpose of operating the Funds and

conducting the Funds' business affairs.  And the Funds by definition had access and the practical

ability to obtain them during the ordinary course of business.[53]  In addition to access necessary

for business purposes, the Funds' access to the Service Providers' documents was facilitated by

---

they are located abroad."); *In re Flag Telecom*, 236 F.R.D. at 182 ("[A] discovery demand is proper under Rule 34 when it is served on a party to the action for documents within their custody or control regardless of where the documents are located."); *Cooper Indus.*, 102 F.R.D. at 920 ("The fact that the [demanded] documents are situated in a foreign country does not bar their discovery.").

[49] *Strauss*, 2009 WL 3459204 at *8 (finding that party had legal right to obtain documents because contract with third-party possessor permitted party to access and obtain those documents) (citing *United States v. Stein*, 488 F. Supp. 2d 350, 363 (S.D.N.Y. 2007) (observing that the meaning of "control" is the same whether raised under Rule 34, Rule 45, or Fed. Crim. R. Proc. 16, and concluding that government had legal right to obtain documents because a third party was obligated by agreement to provide government with documents on request) and *In re NTL,* 244 F.R.D. at 195-96 (actual possessor of documents was bound by contract with party to make documents available to party)); *Golden Trade,* 143 F.R.D. at 525 (finding that party had practical ability and legal right to obtain documents from non-party based on contractual provision obligating non-party to use "best efforts . . . to give . . . all reasonably requested assistance and information necessary to proceed with a suit for infringement" of licensed patent).

[50] *See supra* notes 38-42.

[51] *See supra* note 43.

[52] *Cf. Golden Trade,* 143 F.R.D. at 525 (relying on third party's track record of cooperating with party in conduct of discovery, including producing documents to that party, as required by contractual provision requiring third party to provide party with "all reasonably requested assistance and information necessary" for party to proceed with an action for patent infringement).

[53] *See Cooper Indus.,* 102 F.R.D. at 919-20 & n.2 (announcing that "documents and records that a corporation requires in the normal course of its business are presumed to be in its control unless the corporation proves otherwise" and finding that defendant controlled documents in possession of its foreign affiliate because defendant had access to the documents in the course of its day-to-day business).

overlapping management, which effectively consolidated power over the Funds and the Service

Providers in the hands of a small group of individuals, headed by defendants Ceretti and Grosso.

Two trusts established for the respective benefit of Ceretti and Grosso each owned 50% of KML

(with each trust receiving approximately $150 million in management fees paid to KML by the

Funds), and Ceretti and Grosso each owned 50% of FIM and served as FIM's executive officers.

Christopher Wetherhill was president and chief executive officer of the holding company for

Hemisphere Management Limited (the Funds' first Administrator), served as president and

director of KML from inception, and served as a director of both Kingate Global and Kingate

Euro from inception.  At one time, Shazieh Salahuddin served both as a director of KML and a

senior employee of FIM.  Phillip Evans served as director of KML from at least May 2000, while

at the same time acting as Trust Manager (Partner) with Moore Stephens Services SAM, through

which the Trust Defendants were established and governed.  This affiliation between the Funds

and the Service Providers further supports a finding of control over the Service Providers'

documents.[54]

The Court should therefore find that the Funds have control, within the meaning of Rule

34, over documents responsive to the Requests that were created or received by the Service

Providers, wherever those documents may be located.

> **D.    General Objection # 21 should be stricken as to Requests ## 1-37 and ## 39-43, and the Funds should be directed to collect from KML and FIM documents responsive to the Requests and produce them to the Trustee.[55]**

Because the Funds control all documents relating to their business affairs that were

created, received, or maintained by the Service Providers in the course of their performance of

---

[54] *See Cooper Indus.,* 102 F.R.D. at 919-20 & n.2.

[55] The Trustee does not contend that the originals of the documents produced by the Trust Defendants (who were not Service Providers to the Funds) as part of their Bermuda Productions are within the Funds' control for purposes of this argument.

their obligations under the Service Provider Agreements, the Funds and their counsel are

obligated under Rule 34 to collect all such relevant documents—wherever they are located—and

produce to the Trustee all documents responsive to the Requests. The Funds contend, however,

that they control only the *copies* of documents they received through the Bermuda Productions

and that Bermuda law precludes them from providing the Trustee with copies of those copies.

The Funds' and their counsel's position reflects a misunderstanding of the meaning of control

under Rule 34 and the effect of Bermuda law, and a consequent mistaken belief that their Rule

34 obligations are subject to permission from the Bermuda court.

The Funds and the Bermuda Action defendants, as parties to litigation in Bermuda, had

an obligation to collect and produce all documents relevant to the claims or defenses presented.

Accordingly, KML and FIM respectively identified relevant documents in their possession, and

each produced copies of those documents to the Funds.[56] Under Bermuda law, when one party

to a Bermuda civil action is compelled to produce documents to another party, the receiving

party is subject to an implied undertaking not to use such documents for any purpose other than

the prosecution and defense of the claims and defenses in that civil action.[57] The implied

undertaking thus balances the producing party's right to keep its own documents private, with

---

[56] KML may have done so by way of producing its server—which was the Funds' *de facto* server—so that the Funds could identify and copy documents through word searches.

[57] *Taylor v. Director of the Serious Fraud Office* [1999] 2 A.C. 177 (HL) 207 ("A solicitor or litigant who receives documents by way of discovery is treated as if he had given an undertaking not to use them for any purpose other than the conduct of the litigation."); *Mahon v. Rahn* [1998] Q.B. 424 at 431, 434, 436 (stating that "[i]n civil proceedings a party who obtains discovery may use the documents disclosed to him only for the proper purposes of conducting his own case, and there is an implied undertaking by him not to use them for any collateral or ulterior purpose," declaring that "the law is well established that a recipient of documents disclosed under compulsion of Court proceedings holds those documents subject to an implied undertaking not, without consent of the Court, to disclose such documents to any third party or use the documents for any purpose other than the action in which they were disclosed," and explaining that "[c]ompulsion is an invasion of a private right to keep one's documents to oneself").

the public interest in a full and fair adjudication of claims and defenses asserted in litigation;[58]

the implied undertaking is thus "independent of any question of confidentiality" and "the actual

character of the document or information."[59]  Bermuda law does not, however, restrict the

producing party's use of its own documents, copies of which it may have produced.[60]  Bermuda

law does not, therefore, prohibit a party from using documents under its control to defend its

rights in any other proceeding, and the Funds have not referenced any principle of Bermuda law

that would prohibit them from collecting, reviewing, and producing documents that may be

located in Bermuda and are responsive to those Requests.

The principles of Bermuda law, when viewed in the context of the procedural history

here, do not restrict or qualify the Funds' obligations under Rule 34.  First, because neither KML

nor FIM has any right to keep private documents in their possession that were created or received

in the course of administering the Funds' business affairs—because the Funds have the superior

right to control the documents and the privacy of them—the primary rationale for the implied

---

[58] *See Taylor v. Director of the Serious Fraud Office* [1999] 2 A.C. 177 (HL) 207-08 ("[T]he undertaking is in reality an obligation imposed by operation of law by virtue of the circumstances in which the document or information is obtained. . . .  The implied undertaking in civil proceedings is designed to limit the invasion of privacy and confidentiality caused by compulsory disclosure of documents in litigation.  It is generated by the circumstances in which the documents have been disclosed, irrespective of their contents. . . .  [T]he undertaking may be varied or released by the courts if the interests of justice so require and, unless the court otherwise orders, ceases to apply when the documents have been read to or by the court, or referred to, in proceedings in open court."); *Mahon v. Rahn* [1998] Q.B. 424 at 436 (identifying the two rationales for the implied undertaking in civil proceedings as the "compulsion principle" and the "full and frank disclosure principle") (internal quotations and citation omitted); *Prudential Assurance Co. v. Fountain Page, Ltd.* [1991] 1 W.L.R. 756 (QB) 765 ("The rational basis for the rule is that where one party compels another, either by the enforcement of a rule of court or a specific order of the court, to disclose documents or information whether that other wishes to or not, the party obtaining the disclosure is given this power because the invasion of the other party's rights has to give way to the need to do justice between those parties in the pending litigation between them  . . . .").

[59] *Prudential Assurance Co. v. Fountain Page, Ltd.* [1991] 1 W.L.R. 756 (QB) 765.

[60] *Mahon v. Rahn* [1998] Q.B. 424 at 432, 453 (instructing that "a civil litigant is . . . forbidden only to use the documents disclosed on discovery by his opponent and the information in them; he remains free to sue in another action on the basis of information which he has obtained from another source" and recognizing that the "special protection" afforded by the implied undertaking extends only "to documents disclosed under compulsion of discovery" and "does not apply to any wider class of documents" and observing that the implied undertaking does not apply to documents that a party chooses to disclose voluntarily in support of the party's claims or defenses) (internal quotations and citation omitted).

undertaking is absent.  Second, the Bermuda Productions are comprised of digital or paper *copies*

of documents.  Although an implied undertaking under Bermuda law may protect that set of

copies, the documents as they exist in other forms and locations are not so protected.[61]  Under

Rule 34, the Funds control the *originals* of all relevant documents in the possession, custody, or

control of the Service Providers.[62]  Bermuda law only prohibits disclosure of the *copies* produced

by KML and FIM in the Bermuda Action.  Bermuda law does not restrict the Funds' exercise of

control over those original documents and does not bar the Funds from collecting and producing

copies of those same documents outside of the Bermuda Action.[63]  That a copy of an electronic

or a paper document within the Funds' control under Rule 34 may have been exchanged in

discovery in the Bermuda Action subject to an implied undertaking arising under Bermuda law

thus does not eradicate the Funds' rights to exercise control over, and obtain another copy of, the

document for production to the Trustee.[64]

Because the Funds control the relevant documents created, received, or maintained by the

Service Providers during the course of their engagements with the Funds, the Funds must collect

and produce all responsive documents under Rule 34.  The Trustee is aware of no fewer than

**67,200** documents that were produced by KML and FIM in the Bermuda Action that are not

---

[61] *See Mahon v. Rahn* [1998] Q.B. 424 at 453 ("It cannot be the law that a litigant, having from the start information and evidence which would enable him to bring an action against another, becomes disqualified from using it if that information and that evidence are later disclosed to him on discovery in another action to which he is a party.").

[62] *See Societe Internationale Pour Participations Industrielles et Commerciales, S.A. v. Rogers*, 357 U.S. 197, 204-06 (1958) (concluding that the responding party controlled documents under Rule 34, notwithstanding that foreign law provided criminal penalties for disclosure of the documents sought).

[63] Indeed, the Funds' Rule 34 obligations would exist if the Bermuda Productions did not exist, and the existence of the Bermuda Productions cannot supersede their Rule 34 obligations.  If discovery in the Bermuda Action lagged behind discovery in this proceeding and thus no Bermuda Productions existed, Rule 34 would require the Funds to obtain from the Service Providers all documents responsive to the Requests.  The timing of discovery in a foreign proceeding in which the Trustee is not a party cannot prejudice rights conferred by Rule 34.

[64] The documents contained within the Bermuda Productions exist in their original form.  For example, KML's server has been imaged and preserved.  Because the Funds control the documents on that server under Rule 34, the Funds must review the server in its entirety and produce from it documents responsive to the Requests, as well as any responsive paper documents that KML may possess.  The same is true for electronic and paper documents that FIM created or received when providing consulting and distribution services for the Funds.

duplicative of documents collected by the Funds as part of the Voluntary Productions. Should

the Court not order the Funds to produce those documents as part of the Bermuda Productions

that they currently possess and have in their custody, Rule 34 requires the Funds to obtain

separate copies of those documents from KML and FIM, as well as separate copies of any other

responsive documents that KML, FIM, or any other Service Provider may have in their

possession, custody, or control.

## CONCLUSION

Because the LPO governs discovery in this proceeding, and because the LPO requires the

Funds to produce all responsive documents to the Trustee, subject to confidentiality designation

and the LPO's attendant protections, General Objection # 20 must be stricken and the Funds

ordered to produce the Voluntary Productions. Because the Funds control all documents created,

generated, or maintained by the Service Providers in the course of performing services for the

Funds, and because the Funds' use of those documents is not restricted by Bermuda law, General

Objection # 21 should be stricken as to Requests ## 1-37 and ## 39-43. As required by Rule 26

and Rule 34, the Funds must collect from the Service Providers and produce to the Trustee all

documents responsive to those Requests. For those reasons and the reasons set forth above, the

Trustee respectfully requests that the Court enter an order compelling the Funds to comply with

the Requests within 30 days. Should the Funds fail to comply within that time period, the

Trustee respectfully requests leave to seek sanctions for such failure under Rule 37, including

striking of the Funds' customer claims.

Date:  March 2, 2016
       New York, New York

**BAKER & HOSTETLER LLP**

By: /s/ David J. Sheehan

    45 Rockefeller Plaza
    New York, New York 10111
    Telephone: (212) 589-4200
    Facsimile: (212) 589-4201
    David J. Sheehan
    Email: dsheehan@bakerlaw.com
    Geraldine E. Ponto
    Email:  gponto@bakerlaw.com
    Gonzalo S. Zeballos
    Email:  gzeballos@bakerlaw.com
    Anthony M. Gruppuso
    Email:  agruppuso@bakerlaw.com
    Michelle Usitalo
    Email:  musitalo@bakerlaw.com

*Attorneys for Irving H. Picard, Trustee for the
substantively consolidated SIPA Liquidation of
Bernard L. Madoff Investment Securities LLC
and the estate of Bernard L. Madoff*