# EXHIBIT K

# BakerHostetler

Baker & Hostetler LLP

45 Rockefeller Plaza
New York, NY 10111

T 212.589.4200
F 212.589.4201
www.bakerlaw.com

December 17, 2015

Geraldine E. Ponto
direct dial: 212.589.4690
gponto@bakerlaw.com

**BY E-MAIL**

Robert S. Loigman, Esq.
Quinn Emanuel Urquhart & Sullivan, LLP
51 Madison Avenue, 22nd Fl.
New York, NY 10010

Dear Bob:

This will follow up on our meet and confer session on December 15, 2015, to discuss our respective questions on the parties' responses and objections to one another's document requests and the limited document production the Funds made on that date. Below are questions that require answers to clarify the Funds' position on document discovery.

1. <u>Information in Ms. Weber's October 13 letter</u>

    (a)  The Funds have collected 139,800 documents in the Bermuda litigation.

    <u>Question</u>:

    It is our understanding that the joint liquidators are legally entitled to many, if not all, of the documents produced to you by the Bermuda action defendants. If this is the case, the collateral obligations restricting disclosure under Bermuda law do not apply. Did the joint liquidators for the Funds demand from their agents, which are the service providers in the Trustee's action, that property in their possession be turned over to the Funds under their statutory rights?

    (b)  PricewaterhouseCoopers voluntarily produced to the Funds three sets of documents

    <u>Questions</u>:

    i)   Why have the Funds not produced these documents to the Trustee?

    ii)  What is the basis for asserting that the third set of documents received from PwC is confidential?

Robert S. Loigman, Esq.
December 17, 2015
Page 2

    (c)    Certain of the Funds' former directors voluntarily produced 1,820 documents.

    Question:

    i)    We did not receive any of these documents in the December 15 production. On what basis are the Funds withholding these documents?

2.    Information in Ms. Weber's November 23, 2015 letter

    (a)    To identify confidential shareholder information, "the Funds and their English counsel ran searches of investor names, and iterations of investor names, across their population of relevant documents being stored electronically."

    Questions:

    i)    How many investor names were searched?

    ii)    What is the total number of shareholders in each of the Kingate Funds?

    iii)    What were the criteria under which "relevant" documents were selected?

    iv)    With respect to "documents being stored electronically," were the searches run on documents produced to the Funds in hard copy and uploaded into Ringtail as well as documents produced in ESI to the Funds?

    v)    Are there hard copy documents remaining that have not been uploaded into Ringtail and which, therefore, were not part of the search? If so, what is the plan for including them and when will that search be run?

    vi)    How are the Funds identifying shareholders whose holdings are held in street name?

    vii)    Were any investors names excluded from the search for any reason? For example, are the Kingate Funds withholding production of documents on the basis of protecting confidential shareholder information where those shareholders are known to the Trustee either (a) as a result of the FIM disclosure or (b) as a result of the class action lawsuit filed by shareholders in which they have voluntarily disclosed the information you define as "confidential shareholder information." If so, what is your basis for withholding documents on this basis? Below is a list of known shareholders:

        a.    Alvaro Castillo
        b.    Banca Arner S.A.
        c.    Criterium Capital Funds B.V.
        d.    BBF Trust
        e.    Andbanc

Robert S. Loigman, Esq.
December 17, 2015
Page 3

      f.    Eithan Ephrati
      g.    Wall Street Securities, S.A.
      h.    Silvana Worldwide Corp.
      i.    BG Valores, S.A.
      j.    Lucien Geldzahler
      k.    Jaques Lamac
      l.    Nitkey Holdings Corporation
      m.    FIM Funds invested in the Kingate Funds, including but not limited to Silver Shield Fund, NEOS Global Alternative Fund, Zephyr Low Volatility Fund, FIVE Balanced Fund, FIM Relative Value Fund, FIM Multi Strategy, Gotam Mid Low Volatility Fund, Bipielle Basket Mix, Victoria Global Fund, FDVG Low Volatility Fund, and FIM Long-Invest Fund

3. **Information provided by Mr. Loigman during the December 15, 2015 meet and confer**

    (a)    The Funds created categories of documents in their possession, custody and control and withheld those categories of documents that potentially have shareholder information.

        <u>Questions</u>:

        i)    What are the categories of documents the Funds created? Explain the basis for those categories.

        ii)    How many documents are in each category?

        iii)    Are the Funds withholding any category of documents in its entirety? If so, why?

    (b)    The Funds' application to the BVI court for sanction to produce documents to the Trustee was made on notice to investors in the Funds.

        <u>Questions</u>:

        i)    Did the list of investors served with the Funds' application to the BVI court match the list of investor names used in document searches?

        ii)    What is the deadline for responses, if any, to the Funds' application in the BVI court?

        iii)    Is the Funds' application to the BVI court a contested action?

        iv)    The Funds have refused to show the application to the Trustee's counsel on the ground that "documents filed in the BVI liquidation proceeding are confidential and under seal." The Trustee previously has been recognized in the BVI as a "Foreign Representative" entitled to the assistance of the BVI court. Did the Funds ask the BVI court whether it

Robert S. Loigman, Esq.
December 17, 2015
Page 4

      would be permissible to show the application to the Trustee, as the person responsible for the liquidation of BLMIS, against which the Funds filed customer claims?

v)   How do the Funds intend to satisfy their discovery obligations in the U.S. Bankruptcy Court if the BVI court denies their request?

vi)   Are the Funds proposing that they will be limited to the production made on December 15 (which constitutes approximately 6 percent of the documents described on page 3 of Ms. Weber's October 13 letter, not including the 139,800 documents outlined on page 4 of Ms. Weber's October 13 letter)?

Your cooperation and prompt response would be appreciated.

Sincerely,

*[signature]*

Geraldine E. Ponto

Copy:  Rex Lee
        Lindsay M. Weber
        David J. Sheehan
        Gonzalo S. Zeballos
        Karin S. Jenson
        Michelle R. Usitalo