# EXHIBIT L

**quinn emanuel** trial lawyers | new york

51 Madison Avenue, 22nd Floor, New York, New York 10010-1601 | TEL (212) 849-7000 | FAX (212) 849-7100

WRITER'S DIRECT DIAL NO.
**(212) 849-7277**

WRITER'S INTERNET ADDRESS
**lindsayweber@quinnemanuel.com**

December 23, 2015

**VIA E-MAIL**

Geraldine E. Ponto, Esq.
Baker & Hostetler LLP
45 Rockefeller Plaza
New York, NY 10111

Re:   *Picard v. Ceretti et al.*
      Adv. Pro No. 09-01161 (SMB)

Dear Gerry:

    We write in response to your letter of December 17, regarding the parties' December 15 meet and confer. For ease of reference, we address each topic below in the order in which it was outlined in your December 17 letter.

Information Provided in the Funds' October 13 Letter

    1.   *The Bermuda Productions*: Your December 17 letter correctly notes that the Funds have collected approximately 139,800 documents from defendants in the Bermuda action pursuant to an order of the Bermuda court. As you are aware, those documents are subject to an implied undertaking, which prevents the Funds from turning them over to the Trustee. In that regard, you ask whether the Funds have demanded from their agents property to which they are entitled under their statutory rights. As we have explained previously, the Funds did receive extensive discovery in the form of "voluntary productions" from various parties over the course of their liquidation proceedings. Indeed, approximately 45,000 documents produced by defendants in the Bermuda action are duplicative of documents that the Funds received on a voluntary basis. The Funds made their first production of documents from the voluntary productions to the Trustee on December 14, 2015, after conducting a review for confidential shareholder information. The Funds will produce the remainder of relevant documents from the voluntary productions if and when their applications to the BVI court are granted.

    2.   *The PwC Productions*: As described in our letter dated October 13, the Funds received three separate productions of documents from PricewaterhouseCoopers ("PwC"). In your December 17 letter, you inquire as to why these materials have not yet been produced. We address each set of documents below, in turn.

quinn emanuel urquhart & sullivan, llp
LOS ANGELES | SAN FRANCISCO | SILICON VALLEY | CHICAGO | WASHINGTON, DC | HOUSTON | LONDON | TOKYO | MANNHEIM | MOSCOW | HAMBURG | PARIS | MUNICH | SYDNEY | HONG KONG | BRUSSELS

Geraldine E. Ponto, Esq.
December 23, 2015

The Funds received a set of PwC documents in 2009 at the outset of their liquidation proceedings consisting primarily of engagement letters, audited financial statements, and representation letters. These documents have been loaded onto the Funds' electronic Ringtail system and were included in the population of documents searched by the Funds for confidential shareholder information. Documents from this set were not included in the Funds' most recent production, because they were identified by the Funds as risking disclosure of confidential shareholder information to the Trustee pursuant to the search criteria detailed below. As we mentioned at the December 18 Court conference, the Funds were over-inclusive in identifying materials potentially containing shareholder information to avoid any inadvertent disclosures. We recognize that these PwC materials are not likely to contain shareholder information, and are re-reviewing them to determine if they can be produced to the Trustee.

The Funds received a second set of PwC documents in 2012, pursuant to an order of the Bermuda court. Of these documents, approximately 266 have been identified by the Funds as relevant and have been loaded onto the Funds' Ringtail system for review. These documents are similarly being withheld by the Funds pending resolution of the Funds' BVI applications. As described in our October 13 letter, the balance of that production consists of working papers that are not relevant to the Trustee's claims. To the extent the Trustee believes such documents are relevant, please explain the basis for that assertion so that we can consider the issue.

The Funds received a third set of documents from PwC's US affiliate, PricewaterhouseCoopers LLP in 2014, pursuant to a section 1782 action initiated in the Southern District of New York. Those documents were produced to the Funds pursuant to the terms of a confidentiality agreement dated December 2, 2014. That agreement requires that the Funds provide PwC notice that its materials are subject to disclosure in the event such materials are to be produced. However, as noted in our October 13 letter, the Funds believe that these documents are unrelated to the Trustee's claims. As with the second set of PwC documents, please provide an explanation as to why the Trustee believes documents from PwC's US affiliate are relevant.

3.    *Productions From the Funds Former Directors*:  As noted in your December 17 letter, the Funds' former directors voluntarily produced approximately 1,820 documents to the Funds. Those documents were identified by the Funds as potentially risking the disclosure of confidential shareholder information to the Trustee, and therefore have not been produced.

Information Provided in the Funds' November 23 Letter

1.    *The Funds' Searches*:  Your December 17 letter requests additional information regarding several aspects of the Funds' efforts with respect to the identification of confidential shareholder information. To identify such information the Funds conducted a targeted search comprised of 899 shareholder names. The searches were run on hard copy documents uploaded into Ringtail, as well as on documents produced in ESI to the Funds. The Funds then reviewed documents that did not hit on the search for accuracy to ensure that they did not disclose confidential shareholder names. The total number of shareholders in Kingate Global is 1,237 and the total number of shareholders in Kingate Euro is 486. Individuals who worked for the Funds, but also invested in the Funds over the years, were excluded from the Funds' search for confidential

2

Geraldine E. Ponto, Esq.
December 23, 2015

shareholder information. This was done to prevent the search from hitting on documents that pertain solely to the business operations of the Funds.

The Funds applied the shareholder search to just over 170,000 documents, constituting the vast majority of documents obtained through the voluntary productions (which totaled approximately 260,000). The documents searched were determined by applying a broad set of search terms, which are attached, and which were used by the Funds to establish the scope of their production in Bermuda. Given the breadth of the search terms used, documents excluded from the search are highly unlikely to relate to the Trustee's claims. We note that in the event the BVI court authorizes the production of shareholder information to the Trustee, the Funds will produce all 170,000 documents that contain the broad search terms, and remain open to discussing additional search terms to be applied to the Funds' document collections. As explained in more detail below, in certain circumstances the Funds identified specific categories of documents where the likelihood of disclosure of shareholder information exceeded fifty percent. Those categories of documents were pulled from the Funds' production in their entirety.

2. *Hard Copy Documents*: In your December 17 letter, you ask whether the Funds have any hard copy documents in their possession. As stated in our October 13 letter, the Funds received approximately 350 bankers boxes of documents in hard copy form from Citi Hedge. Approximately 130 boxes were subsequently uploaded onto the Funds' Ringtail system and have been included in the search for confidential shareholder information. The remaining bankers boxes are being held in storage in Bermuda at Bermuda Forwarders Ltd. Upon resolution of the applications made by Joint Liquidators to the BVI court, the Funds will make those boxes of documents available for inspection to the Trustee. In the meantime, we enclose with this letter an index of the Citi Hedge boxes, redacted to remove reference to identifying shareholder information.

3. *Identification of Shareholder Names*: The Funds know the names of their registered shareholders, but have not identified all instances in which shares are held by nominees (i.e., in street name). Known shareholder names were included in the search regardless of whether those names are also known to the Trustee. As explained above, shareholder names were excluded where the shareholder also had substantial involvement in the operations of the Funds.

Information Provided During the Parties' December 15 Meet and Confer

1. *The Funds Categorization of Documents*: In connection with their review of documents to be produced in the Bermuda action, the Funds created general document categories for purposes of tagging. Following the Court conference on December 18, you informed us that these document categories are included in the metadata of the Funds' initial production of documents to the Trustee. These designations are protected by the work product doctrine and were inadvertently produced. Pursuant to paragraph 14 of the Litigation Protective Order we request that you cease reviewing this material immediately, and delete or destroy that portion of the Funds' production that discloses the Funds' document categories within five days. We will provide you with a replacement production removing reference to this work product shortly.

3

Geraldine E. Ponto, Esq.
December 23, 2015

In any event, in reviewing documents for confidential shareholder information, the Funds identified documents within certain categories that had a high likelihood of containing confidential shareholder information. Given this high probability, these categories of documents were withheld from production in their entirety. Approximately 109,000 categorized documents were not included within the search performed by the Funds for materials subject to immediate production to the Trustee.

2.  *Service of the BVI Applications*:  In your letter, you ask whether the list of shareholders that received notice of the BVI applications match the list of names searched by the Funds. However, as explained above, certain shareholder names, particularly where the shareholder invested through nominees, remain unknown to the Joint Liquidators. The Joint Liquidators were therefore directed by the BVI court to serve shareholders (1) by email to the extent email addresses are known, (2) by notice on the Funds' website, and (3) by notification in four separate publications. The Funds expect that all steps to complete service of notice of the applications will have been taken by end of this week. Shareholders will then have 14 days to file responses to the Joint Liquidators' BVI applications. We note, however, that the Joint Liquidators expect that the BVI court will consider any objections made to the applications at the time of the hearing, even if those objections have not been formally filed by the objection deadline.

3.  *The Trustee's Request for the BVI Applications*: As we previously explained, filings in the BVI court relating to the Funds' liquidations are sealed and confidential. In your letter you ask whether the Funds have asked the BVI court if it will allow disclosure of the Funds' applications to the Trustee in his capacity as a "Foreign Representative." The Trustee, however, has been recognized as a "Foreign Representative" for a different liquidating estate. We therefore do not believe that the Trustee's status as a "Foreign Representative" provides any authority for the Funds to seek permission to share sealed information with him from the BVI court.

4.  *The Funds' Discovery in the Event the BVI Court Denies the Funds' Applications*: Finally, you ask us what the Funds intend to do in the event the BVI court denies the Funds request to produce confidential shareholder information to the Trustee. As an initial matter, we are hopeful that the applications will be granted and believe that the Funds have presented the BVI court with strong legal arguments in that respect. If the applications are not granted, we believe there may be other ways to produce information to the Trustee, including, for example, by reviewing all of the documents and redacting identifying shareholder information. In any event, the Funds are not, as you suggest, proposing that they be limited to the production made to the Trustee on December 14. As we have explained repeatedly, the Funds are diligently working towards producing all documents in their possession to the Trustee on a timely basis.

\*       \*       \*

Although we believe the Funds' prior production, which was the result of extensive searching, encompasses a substantial and useful collection of documents held by the Funds, we will undertake additional searches for materials not at risk of identifying confidential shareholder information. We are hopeful that the Funds' efforts will yield an additional population of responsive

4

Geraldine E. Ponto, Esq.
December 23, 2015

documents for immediate production to the Trustee.  We will endeavor to get any such productions to the Trustee in the near future.

Sincerely,

*[signature]*

Lindsay M. Weber

cc:   David J. Sheehan, Esq.
      Gonzalo Zeballos, Esq.
      Michelle Usitalo, Esq.
      Robert S. Loigman, Esq.
      Rex Lee, Esq.

5