# EXHIBIT N

# Baker Hostetler

**Baker&Hostetler LLP**

45 Rockefeller Plaza
New York, NY 10111

T 212.589.4200
F 212.589.4201
www.bakerlaw.com

Geraldine E. Ponto
direct dial: 212.589.4690
gponto@bakerlaw.com

January 7, 2016

**BY E-MAIL**

Lindsay M. Weber, Esq.
Quinn Emanuel
51 Madison Avenue, 22nd Fl.
New York, NY 10010-1601

*Re:*   Picard v. Ceretti et al.
       *Adv. Pro. No. 09-01161 (SMB)*

Dear Lindsay:

Following up on our January 5, 2016 letter, below is the agenda of discussion points for our meet and confer next week.

While we will get into the details during our conference, there is a fundamental point of disagreement that must be resolved promptly. In your correspondence you have repeatedly stated that the Funds are withholding documents on the ground they are not relevant. It is undisputed that the Kingate Funds were created to invest exclusively with BLMIS. The Court during the December 18 status conference acknowledged the Funds act through their manager, its consultant, and the other service providers, and that all of their documents concerning the Funds are discoverable. All documents created for and by the Kingate Funds are relevant. Another persistent issue is that you have informed us you are still reviewing documents in the Funds' possession, with the review of some, such as PwC documents, begun only *since* the December 18 status conference with the Court. You have represented to us the Funds have had documents in their possession since as early as 2009. The Fourth Amended Complaint was filed on March 17, 2014. The Funds answered that complaint on September 30, 2015. More than three months have passed since then. These issues are causing unnecessary delay in document production to the Trustee and costly back and forth in which you ask us to explain the relevance of particular documents you have not described. We need your detailed confirmation on the status of your review of documents in responding to the Trustee's document requests. We need confirmation that you have begun redaction of confidential information, and we need a definite

Lindsay M. Weber, Esq.
January 7, 2016
Page 2

date for production of such documents regardless of what happens in a foreign court. If these issues cannot be resolved by the parties, we will seek intervention of the Court.

**MEET AND CONFER AGENDA**

1. The "Voluntary Production"

    a. Your December 23 letter indicates that the Trustee requested information concerning "*several aspects*" of the Funds' efforts with respect to the identification of confidential shareholder information." (emphasis added) To clarify, we need an explanation of *all aspects* of the process you employed in withholding documents from production to the Trustee. Please explain that process in detail.

    b. What is the definition of "confidential shareholder information" that you used in responding to the Trustee's document requests?

    c. Describe the Joint Liquidators' and their counsel's efforts to gather and produce documents responsive to each of the Trustee's requests for production, as required by Rule 34's concept of "control" as interpreted by Second Circuit courts and independent of the Voluntary and Bermuda Productions.

    d. Did you actually review each of the documents comprising the Voluntary Production beyond just running search terms?

    e. Explain the disparity between the number of documents in the Voluntary Production that you identified in your October 13 letter (approximately 284,000) and the number in your December 23 letter (approximately 260,000).

    f. Confirm that you categorically have eliminated from your search process and production to the Trustee 109,000 documents out of 260,000 documents. At what stage in the process did you eliminate the 109,000 documents from your review? What are the categories of documents that comprise this 109,000? Who were the producing third parties to the Funds of the documents comprising the 109,000 documents excluded? Your speculation about the "likelihood" that such documents contain confidential shareholder information is not a basis for categorically withholding these documents from production.

    g. Explain why you applied the shareholder search to only 170,000 of the 260,000 documents. Explain why 90,000 documents were not searched and have not been produced.

    h. Your December 23 letter indicates you used the same search terms in connection with the Trustee's document requests that you used in connection with the Bermuda action defendants' document requests to the Funds. Did you actually do

300378129.2

Lindsay M. Weber, Esq.
January 7, 2016
Page 3

        a separate search in connection with the U.S. litigation? Are you representing that you have relied upon discovery protocols defined in a foreign proceeding to satisfy your discovery obligations here?

    i.    The 1,820 "Director" documents are critical to the Trustee's claims in this litigation and should have been produced. Again, your speculation that such documents "potentially" contain confidential shareholder information is not a basis for categorically withholding these documents from production.

    j.    Your December 23 letter makes the following ambiguous statements:

        i.    "Individuals who worked for the Funds, but also invested in the Funds over the years, were excluded from the Funds' search for confidential shareholder information. This was done to prevent the search from hitting on documents that pertain solely to the business operations of the Funds."

        ii.    "As explained above, shareholder names were excluded where the shareholder also had substantial involvement in the operation of the Funds."

        When you state "worked for the Funds" in i) above, do you mean as employees? Who was included in that reference?

        When you state such individuals' names were excluded from the search for confidential shareholder information, do you mean you did not withhold from production to the Trustee documents containing those individuals' names?

        When you state that you excluded shareholder names if the shareholders "had substantial involvement in the operation of the Funds" in ii) above, are you equating "individuals who worked for the Funds" with "shareholders who had substantial involvement in the operation of the Funds"?

        Are any of these individuals shareholders who have voluntarily and publicly identified themselves in class action litigation or otherwise here or abroad?

2.    Relevance

    a.    Define "relevant documents" and "relevance" as you used those terms in responding to the Trustee's document requests.

    b.    Define "working papers" as you used the term in responding to the Trustee's document requests.

300378129.2

Lindsay M. Weber, Esq.
January 7, 2016
Page 4

> In our document requests we used the traditional meaning of "work papers" to include documentation of significant matters arising during audit activities as well as audit evidence obtained. Work papers also include detailed and up-to-date facts that both justify the auditors' conclusions as well as create a record of continuing significance to future audits.[1] The Trustee's view is that work papers are sources of valuable information. Moreover, they are considered relevant and produced in many types of cases—including in cases of alleged fraud.[2]

c. What types of documents were produced in the section 1782 action against the PwC US affiliate?

d. Explain why you deemed documents produced in the section 1782 action against PwC US as an affiliate of the Funds' auditor not relevant in their entirety, particularly in view of the fact that the Funds' sole business was with BLMIS. Confirm that you have reviewed each document in the PwC US document production in responding to the Trustee's document requests in this litigation.

e. Your December 23 letter states that the balance of the second set of PwC documents consists of working papers that are not relevant to the Trustee's claims, and the third set of PwC documents are unrelated to the Trustee's claims. You have refused to produce these documents, and have asked us to explain the relevance of these documents. We only have and, therefore, must rely upon your representations regarding these documents. Because you have not described the documents PwC produced that are in your possession, custody, or control, we cannot explain the relevance of each. As indicated above, however, any PwC documents in your possession that relate to the Kingate Funds are relevant. Presumably, they concern the Kingate Funds, or they would not have been produced to you. Work papers that relate to the formation and structure of the Kingate Funds would be responsive to section I of the Trustee's Requests for Production. Such papers may document or relate to contractual relationships to which the Kingate Funds were parties, as requested in section II of the Trustee's requests. These "work" or "working" papers would specifically contain or concern the accounting or recordation of the Kingate Funds' financial performance and activity, as requested in section IV of the requests, which explicitly ask for "related work papers" in Request No. 17, and "work papers" in Request No. 18. Finally, we requested all documents "concerning services provided to KGF by PricewaterhouseCoopers, including but not limited to all

---

[1] *See* the Association of Chartered Certified Accountants, *Audit Working Papers*.
[2] *In re Leslie Fay Companies, Inc. Securities Litigation*, 161 F.R.D. 274 (S.D.N.Y. 1995) (audit work papers not prepared "in anticipation of litigation" were not protected by work product privilege). George J. Coleman, *Common Discovery Disputes in Accountant-Liability Litigation*, Professional Liability Litigation, American Bar Association, Vol. 9 No. 2 (2013) ("Courts across the nation are allowing more discovery...it's a given that the accountant's work papers and time records for the engagement in question will be produced.").

Lindsay M. Weber, Esq.
January 7, 2016
Page 5

    Documents sent to or received from PricewaterhouseCoopers." This request should be read as including "work" or "working" papers. These documents will help us better understand the relevant, contemporaneous workings of the Kingate Funds during the time periods at issue as documented and considered by professionals whose papers are meant to clearly and objectively state the results of whatever test the auditor is undertaking or support the conclusions the auditor develops.

3.  Shareholder Names

  a.  The following statement in your December 23 letter is ambiguous:

    "The Funds applied the shareholder search to just over 170,000 documents. . . ." When you state "the shareholder search," do you mean you searched those documents for the 899 shareholder names?

  b.  Do you know the names of the 1,237 Kingate Global shareholders referenced in your December 23 letter? If not, how many Kingate Global shareholder names do you know?

  c.  Do you know the names of the 486 Kingate Euro shareholders referenced in your December 23 letter? If not, how many Kingate Euro shareholder names do you know?

  d.  You state that you do not know the names of every shareholder behind the nominees. In responding to the Trustee's document requests, did you withhold documents from production containing the names of nominees? Do the names of nominees fall within your definition of "confidential shareholder information"?

  e.  Explain your reason for withholding production of documents to the Trustee containing the names of shareholders already publicly disclosed to the world.

4.  Trustee's Recognition in BVI

The BVI Commercial Court has acknowledged that the Trustee "is a foreign representative duly authorised in a foreign proceeding within the meaning of section 466(1) of the [BVI] Insolvency Act, 2003. . . ." However, the larger point is that debate on this issue is unnecessary at this stage. It is certainly within the power of the Joint Liquidators to grant the Trustee the right to attend the January 26th hearing without the need for an application by the Trustee or leave of the BVI Court. If, as was represented by Quinn Emanuel before Judge Bernstein, it is the case that our interests are aligned as regards the application before the BVI Court, there is no reason to exclude the Trustee from the hearing on that application.

300378129.2

Lindsay M. Weber, Esq.
January 7, 2016
Page 6

We look forward to your responses. Please let us know as soon as possible which date next week you prefer for the conference.

Sincerely,

Geraldine E. Ponto

cc: Robert S. Loigman
    Rex Lee
    David J. Sheehan
    Gonzalo S. Zeballos
    Michelle R. Usitalo

300378129.2