# EXHIBIT Y

## MANAGER AGREEMENT

### KINGATE EURO FUND, LTD.

**MANAGER AGREEMENT** (the "Agreement"), as of May 1, 2000 by and among KINGATE MANAGEMENT LIMITED, a company organized under the laws of Bermuda (the "Manager"), and KINGATE EURO FUND, LTD., a company organized under the laws of the British Virgin Islands (the "Fund").

### WITNESSETH:

WHEREAS, the Fund has been organized for the principal purpose of investing its assets pursuant to a strategy as more fully described in the Information Memorandum with respect to the Fund's Common Shares (the "Shares"), initially dated as of May 1, 2000, as the same may from time to time be amended and/or supplemented (the "Information Memorandum");

WHEREAS, the Fund may from time to time issue securities in addition to the Shares such as without limitation, common or preferred stock, interests, participations, rights, notes, derivative arrangements and property interests of all sorts (collectively, including the Shares, the "Securities" or individually a "Security"); and

WHEREAS, the Fund's Board of Directors (the "Directors") desires to continue to avail itself of the experience, advice and assistance of the Manager and others to whom the Manager may delegate all or part of its responsibilities hereunder, with respect to the investment of its assets and the performance of investment management, accounting, sales and marketing outside of the United States, administration, custodial, banking and other services on behalf of the Fund;

NOW, THEREFORE, in consideration of the mutual premises and covenants contained herein, the Manager and the Fund hereby agree as follows:

### PART 1. DEFINITIONS; SCOPE

All capitalized terms used herein and not otherwise defined herein shall have the meaning set forth in the Information Memorandum or if none, as set forth in the operative documents or subscription materials pursuant to which the particular Security was issued by the Fund (the "Operative Documents"). The parties intend that the scope of this

[615593-3]

Agreement be broad enough to cover all Securities issued by the Fund from time to time and that this Agreement be construed broadly in that regard.

## PART 2. INVESTMENT MANAGEMENT SERVICES

2.1  *Investment Program.*  Subject to the ultimate supervision of the Directors, and in accordance with the investment objectives, policies, guidelines and restrictions which are set forth in each Information Memorandum or Operative Documents or which are otherwise communicated to the Manager, the Manager shall develop, update and effect an overall investment strategy for the investment of the assets of the Fund as well as evaluate and select potential investments which are consistent with such strategy.

2.2  *Authority of the Manager.*  The Manager shall have full discretion and authority, without obtaining the Fund's prior approval, to implement the Investment Objective and investment program set forth in the Information Memorandum or Operative Documents and to manage the investment and reinvestment of the assets of the Fund in such manner as the Manager considers appropriate, market the Securities and otherwise act in connection with the directions of the Fund. In furtherance of the foregoing, the Fund hereby designates and appoints the Manager with full power and authority and without the need for further approval of the Fund (except as may be required by applicable law) to carry out the following with respect to the assets of the Fund:

(a)  subject to compliance with any applicable regulatory requirements, to effect purchases and sales (including short sales) of securities and other transactions relating to the management of the assets of the Fund, at all times consistent with the investment strategy as set out in the Information Memorandum or any Operative Documents;

(b)  to make loans, whether secured or unsecured, to any entity (other than an affiliate of the Manager) of any kind and on such terms and conditions as the Manager deems appropriate;

(c)  to make all decisions relating to the manner, method and timing of investment transactions, and to select brokers and dealers (including affiliates of the Manager) for the execution, clearance and settlement of any transactions;

(d)  to trade on margin, to borrow from banks, brokers or other financial institutions and to pledge assets of the Fund in connection therewith;

---

• In accordance with Information Memorandum, the Fund is authorized to invest following what is commonly known as a "split strike conversion" strategy by employing the services of an NASD registered broker dealer with expertise in such strategy.

[615593-3]

(e) to direct prime brokers and custodians to deliver funds or securities for the purpose of effecting transactions, and to instruct such entities to exercise or abstain from exercising any privilege or right attaching to such assets; and

(f) to make and execute, in the name and on behalf of the Fund, or in nominee accounts, all such documents (including, without limitation, customer agreements and other documents in connection with the establishment and maintenance of brokerage accounts) and to take all such other actions which the Manager considers necessary or advisable to carry out its investment management duties hereunder;

(g) to enter into one or more consulting arrangements with one or more consultants, who may be affiliated with the Manager (and upon whom the Manager shall be entitled to rely) in order to hedge the currency risk between the Euro and the U.S. Dollar, including without limitation, to cause the Fund to be a counterparty in one or more FX agreements intended to hedge such risk.; and

(h) to retain auditors consultants, experts and attorneys including such firms with whom the Manager (or any director of the Manager) is or may be affiliated, and

(i) all other actions as may be necessary or appropriate to further the offering and the Investment Objective and investment program as set forth in the Information Memorandum and administrative matters in connection therewith.

2.3   *Custody*.   Portfolio securities and other financial assets of the Fund shall be maintained at all times in the custody of one or more banks, prime brokers, trust companies, brokerage firms, investment advisers, brokers, dealers or other financial institutions as shall have been approved for that purpose by the Manager.

2.4   *Investments for the Accounts of Others*.   It is understood that the Manager and its affiliates hereof may effect investment transactions for their own account and for the accounts of other customers, and the Fund further understands and agrees that nothing herein shall restrict the ability of the Manager and its affiliates from engaging in any such transactions notwithstanding the fact that the Fund may have or may take a position of any kind; provided, however, that the Manager or its affiliates shall not without the consent of the Fund cause the Fund to purchase any asset from or sell any asset to the Manager or any of its affiliates or any other person or entity for which the Manager or its affiliates is acting, unless such transaction involves (i) the purchase or sale of a security listed on a recognized securities exchange and such transaction is effected at current market prices or (ii) the purchase or sale of an interest or share of a privately placed investment vehicle and such transaction is effected at a price determined by an independent third party or by the Administrator of such investment vehicle.

When the Manager deems the purchase or sale of securities to be in the best interests of the Fund and of other clients, the Manager may aggregate the securities to be

[615593-3]

KF245
CONFIDENTIAL

KGFSAA0000245

purchased or sold. In such event, allocation of the securities purchased or sold, as well as expenses incurred in the transaction, shall be made in a manner which the Manager considers to be the most equitable, and if all such orders cannot be filled at the same price, the Manager may cause the Fund and the Manager's other clients to pay or receive the average of the prices at which such orders were filled. Similarly, if an order on behalf of more than one client cannot be fully executed under prevailing market conditions, the Manager may allocate the securities purchased or sold among the different clients on a basis which the Manager considers equitable.

2.5     *Access to Information.* The Manager shall retain, for a period of at least five (5) years, copies of any documents generated or received by the Manager in the ordinary course of business pertaining to the financial condition of the Fund's assets or to the compensation payable to the Manager. At the request of the Fund, the Manager shall afford to the Fund's independent auditors reasonable access to such documents during customary business hours and shall permit the Fund's auditors to make copies thereof or extracts therefrom at the expense of the Fund.

2.6     *Delegation.* The provisions of this Part 2 relating to investment management may be delegated to one or more persons or entities (including an affiliate of the Manager) pursuant to Section 4.8 hereof. It is expected that investment management functions described in subsections 2.2(a), 2.2(c) and 2.2(e) will be assigned and delegated to Bernard L. Madoff Investment Securities, a New York based NASD registered broker-dealer. Upon a proper delegation, the Manager shall be relieved of any responsibility for the acts or omissions of such delegate.

### PART 3. PLACEMENT AND ADVISORY SERVICES

3.1     *Provision of Placement Duties and Advisory Services.* In accordance with the provisions of the Memorandum and Articles of Association of the Fund, as they may exist from time to time, and the Information Memorandum or Operative Documents, as the case may be, and under the ultimate supervision of the Directors, the Manager shall be responsible for performing (or procuring the performance of), and is hereby authorized and empowered to perform (or procure the performance of), all duties and functions necessary or appropriate in connection with the placement of the Securities outside of the United States and advising the Fund on general matters affecting its structure and operations, including from time to time advising the Directors concerning:

(a)     the suitability of the Fund's structure and operating procedures in light of the expectations of prospective investors;

(b)     steps which may be taken to enhance the marketability of the Fund's Securities and to improve investor relations;

(c)     the identification and evaluation of candidates to serve as Directors;

[615593-3]

KF246
CONFIDENTIAL

KGFSAA0000246

(e)  general economic and financial developments in international securities and capital markets affecting the Fund's investment program.

(f)  in general, all aspects relating to Fund's administration, accounting, legal and operational matters.

3.2  *Meetings of Directors.* At the request of the Directors and subject to reasonable prior notice, the Manager, at its own expense, shall each endeavor to make one of its executive officers available to attend the meetings of the Directors to report on the Manager's activities and on other matters pertaining to its engagement.

3.3  *Placement of the Securities.* The Manager shall act as the placement agent for the Securities outside of the United States. The Manager shall use its best efforts to procure applications for the purchase of Securities by eligible investors, either directly or through securities dealers and other financial institutions selected by the Manager pursuant to Section 3.4 hereof (the "authorized dealers"). The Securities shall be offered at the subscription price and on the terms and conditions set forth herein and in the Information Memorandum or Operative Documents. All applicants shall be subject to acceptance by the Fund (it being understood that the Fund shall have the right to reject applications or to receive or accept on behalf of the Fund any funds or other property tendered as payment for the Securities.)

3.4  *Authorized Dealers.*

(a)  The Manager may appoint securities dealers and other financial institutions as authorized dealers to solicit applications to purchase the Securities, one or more of whom may be affiliates of the Manager. The Manager shall use reasonable efforts to ensure that any such authorized dealer shall conduct solicitation activities in accordance with all of the conditions, restrictions and limitations applicable to the Manager's direct placement activities as set forth in this Agreement.

(b)  Upon request, the Manager shall promptly furnish to the Fund a copy of any written agreement with any authorized dealer relating to the solicitation of applications for the Securities.

3.5  *Offering Materials.*

(a)  The Manager shall deliver, or arrange for the delivery by any authorized dealer selected by the Manager, to each person to whom the Securities are offered a copy of the Fund's most recently published Information Memorandum or Operative Documents for the respective Security.

(b)  If any form of offering materials (including any form of advertisement or other solicitation materials calculated to result in an expression of

[615593-3]

KF247
CONFIDENTIAL

KGFSAA0000247

interest in subscribing for the Securities) concerning the Fund or the Securities other than the Information Memorandum or Operative Documents is required or permitted to be given to any prospective investor under the laws of any jurisdiction in which the Securities are offered by or through the Manager, the Manager agrees that any such document (i) shall not contain any information concerning the Fund or the Securities which is inconsistent with the Information Memorandum or Operative Documents, and (ii) shall comply in all respects with the laws of the jurisdiction in which it is furnished.

(c) The Manager acknowledges and agrees that no person is authorized to make any representations, whether written or oral, concerning the Fund and the Securities which are inconsistent with the Information Memorandum and that all offers of the Securities shall be made in conformity with the terms and conditions set forth therein.

3.6  *Certain Legal Restrictions.*

(a) None of the Securities shall be offered by the Manager or any authorized dealer to any person who is not reasonably believed by the Manager or the authorized dealer to be an Eligible Investor as set forth in each Information Memorandum or the Operative Documents. Furthermore, none of the Securities shall be offered or sold to any person to whom it would be illegal to offer or sell the Securities.

(b) The Securities and the Fund have not been and will not be registered or qualified for offer and sale under the applicable laws of any jurisdiction governing the offer or sale of investment company Securities or other securities. Neither the Manager nor any authorized dealer shall (i) solicit any applications or otherwise extend any offers for the purchase of the Securities, or (ii) deliver (or have in their possession for the purpose of delivery) the Information Memorandum or Operative Documents or any other offering literature relating to the Fund or the Securities, to any person in any jurisdiction in which such solicitation or delivery would be unlawful. The Manager represents to the Fund that it has informed itself as to the applicable legal restrictions governing the offer and sale of the Securities under the laws of any jurisdiction in which it intends to place share applications and that based on the methods of placement contemplated by the Manager, the sale of the Securities by the Fund to any person in any such jurisdiction will not be in violation of any applicable laws by reason of the activities of the Manager. The Manager undertakes to comply with the foregoing representations in connection with its placement activities (including the appointment of any authorized dealers) during the term of this Agreement.

3.7  *Delegation.* The provisions of this Part 3 may be delegated to one or more persons or entities (including an affiliate of the Manager) pursuant to Section 4.8 hereof.

3.8  *Consultants.* The Manager is authorized to engage consultants and other advisors to assist them in connection with their duties hereunder. The Fund agrees to such an arrangement and will incur the reasonable expenses thereof.

[615593-3]

KF248
CONFIDENTIAL

KGFSAA0000248

## PART 4. GENERAL PROVISIONS

The following general terms and conditions shall apply to the performance of the Manager's obligations as set forth in Parts 2 and 3 above:

4. *Compensation.*

(a) <u>Management Fee</u>. The Manager shall be entitled to a fixed monthly asset based fee (the "Management Fee") with respect to any Securities as such fee is defined and described in the Information Memorandum or the Operative Documents.

(b) <u>Administration Fee</u>. The Manager shall be entitled to a fixed monthly asset based fee (the "Administration Fee") with respect to any Securities as such fee is defined and described in the Information Memorandum or the Operative Documents.

(c) <u>Performance Fees</u>. The Share class presently outstanding as of the date of this Agreement is without a performance fee arrangement. In the event that Securities are issued by the Fund with a performance fee or incentive fee attached, then the parties will deal with such fee by separate agreement.

(d) <u>Other Benefits</u>. The Manager shall be entitled to receive other benefits (including redemption fees) that may be derived in connection with the issuance of Securities. ("Other Benefits")

(e) <u>Agents</u>. The Fund may pay a fee to third parties that introduce investors to the Fund and enter into compensation arrangements with such third parties.

(f) In the event that this Agreement is terminated, the Management Fee, the Administration Fee, any performance fee and Other Benefits will be computed as of such termination date.

(g) The Fund acknowledges that if a performance fee is attached to a Security issued by the Fund, the performance fee may create an incentive for the Manager to make investments that are riskier or more or less speculative than would be the case in the absence of a fee based on the performance of such Security. In addition, the performance fee shall be based on unrealized, as well as realized, appreciation and depreciation of the investments relating to such Security of the Fund.

4.2 *Expenses.*

(a) Except as otherwise provided below, the Manager shall bear all of its own costs and expenses incurred in the performance of its services provided pursuant

[615593-3]

KF249
CONFIDENTIAL

KGFSAA0000249

to this Agreement as well as those attributable to the fees payable to delegates of and consultants to the Manager appointed pursuant to Sections 4.8 and 4.9 respectively.

(b) The Manager shall be reimbursed for all fees, costs and expenses incurred in connection with the performance of any services required or permitted to be procured for the Fund by the Manager pursuant to this Agreement including, but not limited to, all expenses related to trading the assets of the Fund (i.e., interest on margin borrowing, custodial fees, brokerage commissions, bank service fees and interest on loan and debit balances).

(c) Except as set forth above, the Fund shall bear all expenses incident to its organization, operations and business, including (i) brokerage commissions and charges on portfolio transactions, (ii) fees and charges of custodians and clearing agencies, (iii) interest and commitment fees on loans and debit balances, (iv) withholding taxes, transfer taxes and other governmental charges and duties, (v) fees of the Fund's legal advisors and independent auditors, (vi) Directors' fees and expenses, (vii) the costs of maintaining the Fund's registered office in the British Virgin Islands and elsewhere, and (viii) the costs of printing and distributing any offering documents, reports and notices to shareholders or prospective investors.

4.3 *Scope of Liabilities.* The Manager (and any officer or director of the Manager) shall not be liable to the Fund or its Security holders for any error of judgment or for any loss suffered by the Fund or its Security holders in connection with its services in the absence of gross negligence, willful default, fraud, or dishonesty in the performance or non-performance of their obligations or duties.

4.4 *Indemnification.*

(a) The Fund shall indemnify the Manager (which shall include solely for purposes of this Section 4.4, the Manager's directors, officers, employees, members and shareholders) and hold the Manager harmless from and against any expense (including without limitation legal fees and expenses), loss, liability or damage arising out of any claim asserted or threatened to be asserted in connection with the Manager serving or having served in good faith pursuant to this Agreement; provided, however, that the Manager shall not be entitled to any such indemnification with respect to any expense, loss, liability or damage which was caused by such Manager's own gross negligence, bad faith, breach of fiduciary duty, willful or reckless malfeasance or disregard of any of its obligations under this Agreement and such indemnification shall only be to the extent legally permissible under and by virtue of the laws of the jurisdiction in which Securities are offered or placed.

The indemnification provisions set forth in this Section shall not be construed as limiting in any way the provisions of Section 4.1(e).

[615593-3]

KF250
CONFIDENTIAL

KGFSAA0000250

(b) The Manager shall indemnify the Fund against, and hold it harmless from, any expense, loss, liability or damage arising out of any claim asserted or threatened to be asserted by any third party as a consequence of any misstatement of any material fact or any other material misrepresentation concerning the Fund or the Securities by the Manager (other than any misstatement or misrepresentation contained in any document approved by the Fund).

(c) In the event that either party hereto is or becomes a party to any action or proceeding in respect of which it may be entitled to seek indemnification hereunder or under Section 4.1 (the "indemnitee") the indemnitee shall promptly notify the other party (the "indemnitor") thereof. The indemnitor shall be entitled to participate in any such suit or proceeding and, to the extent that it may wish, to assume the defense thereof with counsel reasonably satisfactory to the indemnitee. After notice of an election by the indemnitor so to assume the defense thereof, the indemnitor will not be liable to the indemnitee hereunder for any legal or other expenses subsequently incurred by the indemnitee in connection with the defense thereof other than reasonable costs of investigation or reasonable legal expenses incurred as a result of (i) potential conflicts of interest between the indemnitee and indemnitor or (ii) the protection of proprietary or privacy interests of other clients of the indemnitee. The indemnitor shall advance to the indemnitee the reasonable costs and expenses of investigating and/or defending such claim, subject to receiving a written undertaking from the indemnitee to repay such amounts if and to the extent of any subsequent determination by a court or other tribunal of competent jurisdiction that the indemnitee was not entitled to indemnification hereunder.

(d) The indemnitor shall not be liable hereunder for any settlement of any action or claim effected without its prior written consent thereto.

4.5 *Independent Contractor.* For all purposes of this Agreement, the Manager shall be an independent contractor and shall not be deemed an employee or agent of the Fund; nor shall anything herein (notwithstanding Section 2.2 hereof) be construed as making the Fund a partner or co-venturer with the Manager or any of its affiliates.

4.6 *Information Concerning Activities.* The Manager shall provide to the Fund from time to time and on request, information regarding the activities (i) conducted by the Manager since the inception of this Agreement or since the most recent date on which the Manager provided information to the Fund regarding the activities of the Manager and (ii) proposed to be conducted by the Manager. The Manager shall furnish information concerning the Manager and any authorized dealers and concerning the activities undertaken by it for the Fund as the Fund may reasonably request.

4.7 *Term, Termination and Renewal.* The initial term of this Agreement commenced as of May 1, 2000 and shall continue until December 31, 2002. Thereafter, this Agreement will be automatically renewed for successive one-year periods, subject to termination as of December 31, 2002 or the close of any calendar month thereafter by

[615593-3]

KF251
CONFIDENTIAL

KGFSAA0000251

either party upon not less than one hundred twenty (120) days' prior written notice to the other party. In the event of termination, the provisions of Section 2.5 and Part 4 shall survive.

4.8   *Delegation.*

(a)   The Manager shall be authorized to delegate as appropriate, in its discretion, any of the duties or obligations imposed upon it hereunder to one or more other persons or entities, whether affiliated with or independent of the Manager.

(b)   In the event of any such delegation of duties or obligations hereunder pursuant to any agreement consented to in writing by the Fund, the Manager shall be relieved and discharged of its obligations to perform the services so delegated other than the continuing obligation (subject at all times to the standard of care set forth in Section 4.3 hereof) to take reasonable measures to ascertain the competence of the delegate to perform the services so delegated. Notwithstanding any other provision of this Agreement, following the Fund's consent to any such delegation agreement, the Manager shall not incur any liability hereunder to the Fund pursuant to Section 4.3 hereof for any acts or omissions of such delegate and shall remain entitled to indemnification as provided in Section 4.4 hereof.

(c)   Whenever the Fund's consent to delegation is requested by the Manager, such consent shall not be withheld without reasonable cause.

(d)   The Manager may arrange for compensation payable to any person or entity to which duties are delegated hereunder to be made directly from the Fund out of fees otherwise payable to the Manager.

4.9   *Consultants.* The Manager is authorized to engage, and are authorized to delegate the authority to engage, consultants and other advisors to assist it or its delegates in connection with its or their duties hereunder. The Fund agrees to such arrangements and will, upon prior agreement in writing, incur, or provide reimbursement for, the reasonable expenses thereof.

4.10   *Modification; Waiver.* Except as otherwise expressly provided herein, this Agreement shall not be amended, nor shall any provision of this Agreement be considered modified or waived, unless evidenced in writing and signed by the party to be charged with such amendment, waiver or modification.

4.11   *Notice.* Notices by one party to the other shall be made by facsimile, certified mail return receipt requested, or by recognized private courier (e.g., Federal Express, Airborne Express, etc.) at the usual business location of such other party.

4.12   *Binding Effect; Assignment.* This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors, and in the case of

[615593-3]

KF252
CONFIDENTIAL

KGFSAA0000252

an individual, his heirs and estate, but the rights and obligations hereunder shall not be assignable, transferable or delegable without the written consent of the other party hereto except as provided in Section 4.8 hereof and any attempted assignment, transfer or delegation thereof without such consent except as provided in Sections 2.6, 3.7 and 4.8 hereof shall be void.

4.13   *Governing Law.*   This Agreement shall be governed by and construed in accordance with the substantive laws of Bermuda applicable to contracts made and entirely to be performed therein.

4.14   *Counterparts.*   This Agreement may be signed in any number of counter-parts. Any single counterpart or a set of counterparts signed in either case by the parties hereto, shall constitute a full and original Agreement for all purposes.

4.15   *No Third Party Beneficiaries.*   Except as otherwise expressly provided for herein, the provisions hereof are for the sole benefit of the parties hereto and their successors and assigns (heirs and estates, as the case may be) and shall not be construed as containing, and are not intended to confer, any rights remedies or other benefits on any other persons.

IN WITNESS WHEREOF, the parties have executed and delivered this Agreement as a deed as of the day and year first above written.

[615593-3]

KF253
CONFIDENTIAL

KGFSAA0000253

IN WITNESS WHEREOF, the parties have executed and delivered this Agreement as a deed as of the day and year first above written.

                    KINGATE MANAGEMENT LIMITED
                    (The Manager)

Acting By: _____[signature]_____
           Name: [illegible]
           Title: Director
In the Presence of: Kenneth H. Sidamon-[illegible]
                    Witness


                    KINGATE EURO FUND LIMITED
                    (The Fund)

Acting By: _____[signature]_____
           Name: [illegible]
           Title: Director
In the Presence of: Kenneth H. Sidamon-[illegible]
                    Witness

[615593-3]

KF254
CONFIDENTIAL

KGFSAA0000254