# EXHIBIT Z

1 July 04

**CO-MANAGER AGREEMENT** (this "Agreement"), dated as of ʌ, by and between **KINGATE MANAGEMENT LIMITED**, a company incorporated under the laws of Bermuda with offices located at 99 Front Street, Hamilton Bermuda HM 11 (the "Co-Manager" or sometimes "Co-Manager Kingate"), and **KINGATE GLOBAL FUND, LTD.** a company incorporated under the laws of the British Virgin Islands ("BVI") whose registered office is c/o Bison Financial Services Limited, Bison Court, PO Box 3460, Road Town, Tortola, British Virgin Islands (the "Fund").

## W I T N E S S E T H:

**WHEREAS**, the Fund seeks to obtain capital appreciation of its assets through the utilization of a non-traditional stock/options trading strategy as more fully described in its Amended and Restated Information Memorandum dated May 1, 2004, as the same may be supplemented, amended and restated from time to time (collectively the "Information Memorandum");

**WHEREAS**, the Fund previously appointed Co-Manager Kingate as Co-Manager to be responsible for certain investment management, administrative, and sales and marketing aspects of the Fund under the terms of a Co-Manager Agreement by and between the Fund, Co-Manager Kingate and Co-Manager Tremont, as the same may from time to time be amended and/or supplemented (the "Co-Manager Agreement"), and wish to supercede and replace such prior agreement with this Agreement and a similar agreement with Co-Manager Tremont ("Tremont Co-Manager Agreement"); and

**WHEREAS**, the Fund previously appointed Tremont (Bermuda) Limited ("Co-Manager Tremont") as Co-Manager to be responsible for certain investment management, administrative, sales and marketing aspects of the Fund under the terms of the Co-Manager Agreement; and

**WHEREAS**, Co-Manager Kingate and Co-Manager Tremont have performed their respective duties;

**WHEREAS**, the Fund, Co-Manager Kingate and Co-Manager Tremont wish to amend and restate their agreement in order to more precisely reflect each Co-Manager's activities to-date based on actual experience;

**WHEREAS**, this Agreement shall amend and restate the duties of Co-Manager Kingate;

715835.10

TSC 1958

Attorney Eyes Only

KING_DIL_000660
KGFSAC0000660

WHEREAS, a separate Agreement shall amend and restate the duties of Co-Manager Tremont, which agreement Co-Manager Kingate has acknowledged and recognized;

**NOW, THEREFORE,** in consideration of the mutual premises and covenants contained herein, the parties hereto agree as follows:

## PART I. SERVICES

*1.1    Provision of Services.*  In accordance with provisions of the Memorandum and Articles of Association of the Fund and the Information Memorandum, and under the ultimate supervision of the directors of the Fund (the "Directors") from time to time as provided therein, the Co-Manager shall be responsible for performing or obtaining the performance of, and is hereby authorized and empowered to perform, or obtain the performance of, all of the following duties and functions necessary or appropriate in connection with the management of the Fund:

    (a)    Providing investment management services as described in Part II of this Agreement;

    (b)    Providing administrative services as described in Part III of this Agreement; and

    (c)    Providing services as described in Part IV of this Agreement.

The Co-Manager may delegate all or part of such responsibilities pursuant to Section 2.2, 3.2, 4.6 and 5.9 below.

## PART II. INVESTMENT MANAGEMENT SERVICES

*2.1    Investment Program.*  Subject to the ultimate supervision of the Directors, and in accordance with the Memorandum and Articles of Association of the Fund, as well as the investment objectives, policies, guidelines and restrictions which are set forth in the Information Memorandum, or which are otherwise communicated to the Co-Manager, the Co-Manager shall effect the investment strategy for the investment of the assets of the Fund as well as evaluating and selecting potential investments which are consistent with such strategy. Included within this power are the following:

715835.10

TSC21958

Attorney Eyes Only

KING_DIL_000661
KGFSAC0000661

(a) Investing the Fund's assets in accordance with the Information Memorandum and managing the investment and reinvestment of the assets of the Fund in such manner as the Co-Manager considers appropriate;

(b) Undertaking all actions that may be necessary in the furtherance of the investment objectives of the Fund;

(c) Arranging for the retention of Bernard L. Madoff Investment Securities LLC, a New York based financial institution ("Madoff"), as the Fund's the investment adviser and broker dealer with regard to substantially all of the assets of the Fund;

(d) Investing directly any assets of the Fund that are not allocated to Madoff;

(e) Reviewing from time to time the activity of Madoff to ensure that it complies with the investment guidelines provided to it in accordance with the Information Memorandum.

*2.2 Authority of the Manager as to Investment Management.* The Co-Manager shall have full discretion and authority, without obtaining the Fund's prior approval, to manage the investment and reinvestment of the assets of the Fund in such manner as the Co-Manager considers appropriate including without limitation hiring such experts, agents and consultants to assist the Co-Manager in performing its duties hereunder as the Co-Manager deems appropriate based upon Co-Manager's past practices.

*2.3 Custody.* Portfolio securities and other financial assets of the Fund shall be maintained at all times in the custody of one or more banks, trust companies, brokerage firms or other financial institutions as shall have been approved for that purpose by Co-Manager Kingate. As of the date hereof, custody of substantially all of the Fund's assets is custody with Bernard Madoff Investment Securities LLC, a New York based financial institution ("Madoff"). The Co-Manager has no custody of any of the Fund's assets.

## PART III. ADMINISTRATIVE SERVICES

*3.1 Provision of Administrative Services for Fund.* In accordance with the provisions of the Memorandum and Articles of Association of the Fund, and under the ultimate supervision of

715835.10

TSC31958

Attorney Eyes Only

KING_DIL_000662
KGFSAC0000662

the Directors from time to time as provided therein, the Co-Manager shall be responsible for performing (or procuring the performance of) and is hereby authorized and empowered to perform (or procure the performance of) at the expense of the Fund, all duties and functions necessary or appropriate in connection with the administration of Fund, including:

(a) Undertaking all actions that may be necessary for the proper administration of the Fund;

(b) Arranging for the retention of BISYS Hedge Fund Services Limited, Hamilton, Bermuda, or such other Fund Administrator as the Co-Manager may deem appropriate;

(c) Supervising the Fund Administrator in all its functions;

(d) Arranging for the maintenance of an official register of Fund shares (the "Shares") issued, transferred, redeemed or canceled, arranging for the appointment of a registered agent in the BVI and arranging for the maintenance of the Fund's registered office and good standing as an international business company in the BVI;

(e) Reviewing the calculation of the Net Asset Value of the Fund's Shares on the part of the Fund Administrator;

(f) Verifying the calculation of the Management Fees charged to the Fund;

(g) Calculating the share of Management Fees payable to Co-Manager Tremont;

(h) Advising as to the payment of invoices payable by the Fund;

(i) Advising as to subscriptions, redemptions, and transfers of Fund Shares;

(j) Advising the Administrator as to whether or not subscription or redemption fees should be charged;

(k) Checking, to the extent reasonable, the accuracy of the Shareholders' register and reconciling nominees with final investors and, in this regard, assisting the Administrator in establishing the identity of the final investors;

(l) Ensuring that adequate procedures are undertaken by the Fund Administrator to comply with the USA PATRIOT Act and other anti-money laundering

715835.10

TSC41958

Attorney Eyes Only

KING_DIL_000663
KGFSAC0000663

laws;

(m) Ensuring that adequate procedures are undertaken by the Fund Administrator to ensure that every subscription, redemption, transfer comprises all the relevant documentation and enclosures;

(n) Advising the Fund with regard to instructions to the banks about receiving/paying out money to and from the Fund;

(o) Reviewing periodically the Fund's offering documents to ensure continued compliance with applicable laws and regulations;

(p) Overseeing the preparation of the Fund's interim and annual financial statements;

(q) Organizing, coordinating and facilitating the audit of the Fund;

(r) Maintaining contact with the Fund's legal advisers in Bermuda, the United States, the BVI and any other jurisdiction where the Fund may operate with a view towards advising the Fund on new legal and regulatory developments that may affect the structure of the Fund, its marketability, and its compliance with laws in general; and

(s) Maintaining contact with the regulatory authorities in Bermuda, the United States and the BVI and elsewhere as needed.

(t) In general, advising the Fund on all aspects related to Fund's administration, accounting, legal and operational matters based upon Co-Manager's past practices.

3.2    *Authority of the Manager as to Administration.*  The Co-Manager shall have full discretion and authority, without obtaining the Fund's prior approval, to administer the Fund in such manner as the Co-Manager considers appropriate including without limitation hiring such experts, agents and consultants to assist the Co-Manager in performing its duties hereunder as the Co-Manager deems appropriate.

## PART IV. ADVISORY SERVICES AND SALE OF SHARES

4.1    *Provision of Advisory Services and Sale of Shares.*  In accordance with provisions of the Memorandum and Articles of Association of the Fund and the Information Memorandum, and under the ultimate supervision of the Directors from time to time as provided therein, the Co-

715835.10

TSC51958

Attorney Eyes Only

KING_DIL_000664
KGFSAC0000664

Manager is hereby authorized and empowered to perform (or procure the performance of), all duties and functions in connection with sale of any Shares of the Fund and advising the Fund on general matters affecting the marketing of the Shares, including from time to time advising the Fund's Directors concerning:

(a) Subject, inter alia, to the provisions of Section 4.5(b), soliciting and introducing prospective investors in the Fund's Shares;

(b) Maintaining regular contact and updating existing and prospective investors to keep them informed of investment results and other information with regard to the Fund;

(c) Advising the Fund on steps that may be taken to enhance the marketability of the Fund's securities and to improve investor relations;

(d) Preparing marketing and other material;

(e) Sending marketing material and offering documents to investors and prospective investors;

(f) Organizing and supervising the publication of the Fund's Net Asset Value in newspapers and other media;

(g) Supervising the distribution lists to keep prospective and existing investors informed of developments with regard to the Fund;

(h) Appointing authorized dealers and sales agents to assist it in the sales of any Shares; and

(i) Generally, providing such services as may be required to place the Fund's shares and to maintain good investor relations.

4.2  *Sale of Shares.* The Co-Manager, together with Co-Manager Tremont, as the co-managers of the Fund, shall have sole authority to act in respect of the sale of any of the Fund's Shares. In this regard, the Co-Manager shall seek to procure applications for the purchase of Shares by eligible investors, either directly or through securities dealers and other financial institutions selected by the Co-Manager pursuant to Section 4.3 hereof ("authorized dealers"). Shares shall be offered at the subscription price and on the terms and conditions set forth herein and in the Information Memorandum. All applications shall be subject to acceptance by the Fund (it being

understood that the Fund shall have the right to reject applications in its discretion). The Co-Manager shall have no authority (i) to bind the Fund to accept any applications or (ii) to receive or accept on behalf of the Fund any funds or other property tendered as payment for Shares, such authority resting with the Fund and its Directors. In this regard, Co-Manager Kingate shall confer from time to time and coordinate in good faith with Co-Manager Tremont with regard to its activities in respect to the selling of any Shares.

*4.3    Authorized Dealers.*

        (a)    In addition to any powers the Co-Manager may have under Section 5.9, hereof, the Co-Manager may appoint consultants, agents, securities dealers and other financial institutions as authorized dealers to solicit applications to purchase Shares. Such authorized dealers must have full authority to act in the jurisdiction within which they conduct business. The Co-Manager shall use reasonable efforts to ensure that any such authorized dealer shall conduct its solicitation activities in accordance with all of the conditions, restrictions and limitations applicable to the Co-Manager's direct sales activities as set forth in this Agreement.

        (b)    The Co-Manager may enter into compensation arrangements with authorized dealers as it sees fit and at no additional cost to the Fund.

*4.4    Offering Materials.*

        (a)    The Co-Manager shall deliver, or arrange for the delivery by any authorized dealer selected by the Co-Manager, to each person to whom Shares are offered a copy of the Fund's most recently published Information Memorandum and a copy of the Fund's most recently published annual report.

        (b)    If any form of offering materials (including any form of advertisement or other solicitation materials calculated to result in an expression of interest in subscribing for Shares) concerning the Fund or its Shares other than the Information Memorandum is required or permitted to be given to any prospective investor under the laws of any jurisdiction in which Shares are offered by or through the Co-Manager, the Co-Manager agrees that any such document (i) shall be prepared and furnished in a commercially reasonable manner, in good faith and reliance on its advisors and consultants, (ii) shall not contain any information concerning the Fund or the Shares which is materially inconsistent with the Information Memorandum, and (iii) shall use reasonable efforts to comply in all respects with the laws of the jurisdiction in which it is furnished.

715835.10

TSC 31958

Attorney Eyes Only

KING_DIL_000666
KGFSAC0000666

(c) The Co-Manager acknowledges and agrees that no person is authorized to make any representations, whether written or oral, concerning the Fund and its Shares which are inconsistent with the Information Memorandum and that all offers of Shares shall be made in conformity with the terms and conditions set forth therein.

*4.5  Certain Legal Restrictions.*

(a) No Shares shall be offered by the Co-Manager or any authorized dealer to any person who is not reasonably believed by the Co-Manager or the authorized dealer to be an eligible investor as set forth in the Information Memorandum.

(b) The Shares and the Fund have not been and will not be registered or qualified for offer and sale under the applicable laws of any jurisdiction. Neither the Co-Manager nor any authorized dealer shall (i) solicit any applications or otherwise extend any offers for the purchase of Shares, or (ii) deliver (or have in their possession for the purpose of delivery) the Information Memorandum or any other offering literature relating to the Fund or its Shares, to any person in any jurisdiction in which such solicitation or delivery would be unlawful. The Co-Manager undertakes to comply with the foregoing representations in connection with its participation in the sale of Shares (including the appointment of any authorized dealers) during the term of this Agreement.

*4.6  Authority of the Manager as to the Sale of Any Shares.* The Co-Manager Tremont and Co-Manager Kingate, as they may agree from time to time, shall have full discretion and authority, without obtaining the Fund's prior approval, to manage any sale of the Shares of the Fund in such manner as the Co-Managers consider appropriate including without limitation hiring such experts, agents and consultants to assist each Co-Manager in performing its duties as such Co-Managers deem appropriate.

## PART V. GENERAL PROVISIONS

The following general terms and conditions shall apply to the performance of the Co-Manager's obligations as otherwise set forth herein:

*5.1  Net Asset Value.* As used in this Agreement, the Net Asset Value of the Fund and of the Shares shall have the meaning assigned to it in the Information Memorandum and shall be calculated as described in the Information Memorandum.

*5.2  Monthly Management Fee; Other Fees.*

715835.10

TSC81958

Attorney Eyes Only

KING_DIL_000667
KGFSAC0000667

(a)     For its services hereunder, Co-Manager Kingate and Co-Manager Tremont shall be entitled, in the aggregate, to receive from the Fund a monthly management fee at an annual rate of one and one-half percent (1.5%) of the Net Asset Value of the Fund determined as of each Valuation Date of each calendar month. Such fee shall be divided between Co-Manager Kingate and Co-Manager Tremont as they agree from time to time by separate agreement. Such monthly management fee shall be shall payable as of the last business day of each calendar month. As used herein, the term "Valuation Date" shall have the meaning assigned to it in the Information Memorandum.

(b)     Other fees, such as without limitation, up-front fees and exit fees, shall be retained by and belong to the Co-Manager.

5.3     *Expenses.*

(a)     Unless otherwise agreed to by the Fund, the Co-Manager shall bear all of its own costs and expenses incurred in the performance of its services provided pursuant to this Agreement, including those attributable to such office personnel, office space, office equipment and office services as may be required by the Co-Manager.

(b)     The Fund shall bear all expenses incident to its organization, operations and business, including but not limited to (i) brokerage commissions and charges on portfolio fees on loans and debit balances, (ii) income taxes, withholding taxes, transfer taxes and other governmental charges and duties, (iii) fees of the Fund's legal advisers and independent auditors, (iv) directors, attorneys, audit and accounting fees and expenses, (v) the costs of maintaining the Fund's registered office in the BVI and Bermuda, if any, or anywhere else in the world, and (vi) the costs of printing and distributing the Fund's any offering documents, reports and notices to shareholders.

5.4     *Scope of Liabilities.* Neither the Co-Manager nor its directors, officers, shareholders and employees, shall be liable to the Fund or its Shareholders for any losses, damages, expenses or claims occasioned by any act or omission of the Co-Manager or directors, officers, shareholders or employees in connection with the performance of its services hereunder, other than as a result of its own gross negligence, bad faith, or willful or reckless malfeasance, disregard of any of its obligations under this Agreement.

5.5     *Indemnification.*

(a)     The Fund shall indemnify the Co-Manager, and its directors, officers, employees, servants, agents, delegates and shareholders (each an "Indemnified Party") and hold the

715835.10

TSC91958

Attorney Eyes Only

KING_DIL_000668
KGFSAC0000668

Indemnified Parties harmless from and against any expense, loss, liability or damage arising out of any claim asserted or threatened to be asserted in connection with the Indemnified Party's serving or having served as such pursuant to this Agreement; provided, however, that no Indemnified Party shall be entitled to any such indemnification with respect to any expense, loss, liability or damage which was caused by the Indemnified Party's own gross negligence, bad faith, or willful or reckless malfeasance or disregard of any of its obligations under this Agreement.

(b)   The Co-Manager shall indemnify the Fund against, and hold it harmless from, any expense, loss, liability or damage arising out of any claim asserted or threatened to be asserted by any third party as a consequence of any misstatement of any material fact or any other material misrepresentation concerning the Fund or its Shares by the Co-Manager, other than arising out of a misstatement or representation authorized, approved or furnished by the Fund.

(c)   In the event that either party hereto is or becomes a party to any action or proceeding in respect of which it may be entitled to seek indemnification hereunder ("indemnitee"), the indemnitee shall promptly notify the other party ("indemnitor") thereof. The indemnitor shall be entitled to participate in any such suit or proceeding and, to the extent that it may wish, to assume the defense thereof with counsel reasonably satisfactory to the indemnitee. After notice of an election by the indemnitor so to assume the defense thereof, the indemnitor will not be liable to the indemnitee hereunder for any legal or other expenses subsequently incurred by the indemnitee in connection with the defense thereof other than reasonable costs of investigation or reasonable legal expenses incurred as a result of (i) potential conflicts of interest between the indemnitee and indemnitor or (ii) the protection of proprietary or privacy interests of other clients of the indemnitee. The indemnitor shall advance to the indemnitee the reasonable costs and expenses of investigating and/or defending such claim, subject to receiving a written undertaking from the indemnitee to repay such amounts if and to the extent of any subsequent determination by a court or other tribunal of competent jurisdiction that the indemnitee was not entitled to indemnification hereunder.

(d)   The indemnitor shall be liable hereunder for any settlement of any action or claim effected without its written consent thereto.

(e)   Each Indemnified Party shall be entitled to reasonable advances with regard to alleged claims asserted and to attorney fees and expenses.

(f)   The indemnity provided for hereunder is in addition to and without prejudice to any indemnity provided by law or contract.

5.6   *Independent Contractor.*   For all purposes of this Agreement, the Co-Manager shall be an independent contractor and not an employee or dependent agent of the Fund; nor shall

715835.10

TSQ-0258

Attorney Eyes Only

KING_DIL_000669
KGFSAC0000669

anything herein be construed as making the Fund a partner or co-venturer with the Co-Manager or any of its affiliates. Any court or authority is requested to interpret the provisions of this Agreement recognizing that the foregoing is the firm intention of the parties even to the extent of amending or revising that portion of the Agreement that might lead to a contrary construction. Except as provided in this Agreement, the Co-Manager shall have no authority to bind, obligate or represent the Fund.

5.7   *Information Concerning Activities; Records and Access; Confidentiality.*

(a)   The Co-Manager shall provide to the Fund from time to time and on request information regarding the activities (i) conducted by the Co-Manager since the inception of this Agreement or since the most recent date on which the Co-Manager provided information to the Fund regarding the activities of the Co-Manager and (ii) proposed to be conducted by the Co-Manager. The Co-Manager shall furnish information concerning the Co-Manager and any authorized dealers and concerning the activities undertaken by them for the Fund as the Fund may reasonably request.

(b)   The Co-Manager shall retain for a period of at least five (5) years copies of any documents generated or received by the Co-Manager in the ordinary course of business pertaining to the financial condition of the Fund's assets or to the compensation payable to the Co-Manager. At the request of the Fund, the Co-Manager shall afford to the Fund's independent auditors reasonable access to documents pertaining to the Fund's activities during customary business hours and shall permit such auditors to make copies thereof or extracts therefrom at the expense of the requesting party.

(c)   Neither of the parties hereto shall (except under compulsion of law) either before or after the termination of this Agreement disclose to any person not authorised by the relevant party to receive the same any confidential information relating to such party or to the affairs of such party of which the party disclosing the same shall have become possessed during the period of this Agreement and each party shall use all reasonable endeavours to prevent any such disclosure as aforesaid.

5.8   *Term, Termination and Renewal.*

(a)   This Agreement (as restated and amended hereby) shall have a term expiring on December 31, 2004 and will be automatically renewed for successive one-year periods, subject to termination by either party in accordance with this section.

(b)   The Co-Manager shall be entitled to resign its appointment

715835.10

TSQ-81958

Attorney Eyes Only

KING_DIL_000670
KGFSAC0000670

hereunder:-

    (i) by giving not less than one years' notice in writing to the Fund to expire at the end of a calendar month;

    (ii) at any time if the Fund shall go into liquidation or be unable to pay its debts or commit any act of bankruptcy or if a receiver is appointed of any of the assets of the Fund or if some event having an equivalent effect;

    (iii) at any time if the Fund shall commit any material breach of its obligations under this Agreement and (if such breach shall be capable of remedy) shall fail within thirty days of receipt of notice served by the Co-Manager requiring it so to do to make good such breach;

    (c) The Fund may terminate the appointment of the Co-Manager as follows:

    (i) by giving no less than one years' notice in writing to the Co-Manager to expire at the end of a calendar month;

    (ii) if the Co-Manager goes into liquidation or is unable to pay its debts or commits any act of bankruptcy or if a receiver is appointed of any of the assets of the Co-Manager or if some event having an equivalent effect occurs;

    (iii) if the Co-Manager shall commit any material breach of its obligations under this Agreement and (if such breach shall be capable of remedy) shall fail within thirty days of receipt of notice served by the Fund requiring it so to do to make good such breach;

(d) Upon termination of the appointment of the Co-Manager, the Co-Manager shall be entitled to receive the fees and compensation as provided hereunder but shall not be entitled to compensation in respect of such termination; and the Co-Manager shall deliver or procure to be delivered to the Fund or successor manager, or as it shall direct, all books of account, records, other registers, correspondence, and documents relating to the affairs of or belonging to the Fund in the possession of or under the control of the Co-Manager.

    (e) Upon termination of this Agreement for any reason (or for no reason) the following provisions shall survive: Sections: 5.3 (to the extent of unpaid expenses); 5.4; 5.5; 5.7; 5.12; 5.17; 5.20 and 5.21.

715835.10

TSQ-52258

Attorney Eyes Only

KING_DIL_000671
KGFSAC0000671

*5.9    Delegation.*

(a)    The Co-Manager shall be authorized to delegate as appropriate, or in its discretion, any of the duties or obligations hereunder to one or more other persons or entities, whether affiliated with or independent of the Co-Manager.

(b)    In the event of any such delegation of duties or obligations hereunder pursuant to any agreement consented to in writing by the Fund, the Co-Manager shall be relieved and discharged of its obligations to perform the services so delegated other than the continuing obligation (subject at all times to the standard of care set forth in Section 5.4 hereof) to take reasonable measures to (i) ascertain the competence of the delegatee to perform the services so delegated, (ii) monitor generally the faithful performance by the delegatee of the duties specified in the relevant delegation agreement, (iii) coordinate such performance with the performance of the other services contemplated hereunder, and (iv) perform or procure the future performance of the delegated services in the event of the expiration or termination of any such agreement with such delegatee. Notwithstanding any other provisions of this Agreement, following the Fund's consent to any such delegation agreement, the Co-Manager shall not incur any liability hereunder to the Fund pursuant to Section 5.4 hereof for any acts or omissions of such delegate and shall remain entitled to indemnification as provided in Section 5.5 hereof.

(c)    The Fund acknowledges its understanding that the Co-Manager proposes to enter into delegation agreements pursuant to Section 5.9(b) hereof with respect to certain of the services contemplated by this Agreement, and agrees that whenever the Fund's consent to such agreements is requested by the Co-Manager, such consent shall not be withheld without reasonable cause.

(d)    For the avoidance of doubt, the Co-Manager has delegated responsibilities as follows, which have the consent of the Fund's Directors:

i. To Madoff, investment advisory activities and custody services.

ii. To BISYS Hedge Fund Services Limited, Hamilton, Bermuda, as to administrative services.

iii. To Bank of Bermuda with respect to banking matters.

(e)    Certain responsibilities are vested in Co-Manager Tremont by separate agreement between Co-Manager Tremont and the Fund. The parties hereto shall cooperate with

715835.10

TSQ-8258

Attorney Eyes Only

KING_DIL_000672
KGFSAC0000672

Co-Manager Tremont.

*5.10 Modification; Waiver.* Except as otherwise expressly provided herein, this Agreement shall not be amended, nor shall any provision of this Agreement be considered modified or waived, unless evidenced by a writing signed by the party to be charged with such amendment, waiver or modification.

*5.11 Binding Effect; Assignment.* This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors, but the rights and obligations hereunder shall not be assignable, transferable or delegable without the written consent of the other party hereto except as provided in Section 5.9 hereof and any attempted assignment, transfer or delegation thereof without such consent except as provided in Section 5.9 hereof shall be void.

*5.12 Governing Law.* This Agreement shall be governed by and construed in accordance with the substantive laws of Bermuda, applicable to contracts made and entirely to be performed therein. The parties hereby irrevocably submit to the non-exclusive jurisdiction of the courts of Bermuda for the settlement of any dispute or difference arising between the parties hereto.

*5.13 Definition; Headings.* Terms used herein which are not otherwise defined herein shall have the meanings set forth in the Information Memorandum. Headings and titles are for ease of reference only and shall be given no substantive effect.

5.14    Services Non-Exclusive. The services of the Co-Manager to the Fund hereunder are not to be deemed exclusive and the Co-Manager shall be free to render similar services to others so long as its services hereunder are not impaired thereby and to retain for its own use and benefit all fees or other monies payable thereby and the Co-Manager shall not be deemed to be affected with notice of or to be under any duty to disclose to the Fund any fact or thing which comes to the notice of the Co-Manager or any servant or agent of the Co-Managers in the course of the Co-Manager rendering similar services to others or in the course of its business in any other capacity or in any manner whatsoever otherwise than in the course of carrying out its duties hereunder.

*5.15 Counterparts.* This Agreement may be signed in any number of counterparts. Any single counterpart or a set of counterparts signed, in either case, by the parties hereto, shall constitute a full and original agreement for all purposes.

*5.16 Interest of Fund. In Co-Manager and Co-Manager in Fund.*

(a)    It is understood that directors, officers, agents and shareholders of the Fund are or may be interested in the Co-Manager as directors, officers, or shareholders or otherwise, that

715835.10

TSQ-21258

Attorney Eyes Only

KING_DIL_000673
KGFSAC0000673

directors, officers, shareholders, agents and any client of the Co-Manager are or may be interested in the Fund as directors, officers, shareholders of otherwise and that the Co-Manager is or may be interested in the Fund as shareholder or otherwise and it is hereby acknowledged that no person so interested shall be liable to account for any benefit to any other party by reason solely of such interest.

(b)   The Co-Manager or any client of the Co-Manager or any Connected Person (as defined in the footnote to this section [1]) of the Co-Manager or any holding company of the Co-Manager or any subsidiary of such holding company ("the interested party") may hold, acquire or dispose of any investments upon its own account notwithstanding that the same or similar Investments may be held by or for the account of or otherwise connected with the Fund and it is hereby acknowledged that no such interested party shall be liable to account for any benefit to any other party by reason solely of such interest.

*5.17 Legal Action by the Co-Manager.* The Co-Manager shall not be required to take any legal action on behalf of the Fund unless fully indemnified to its reasonable satisfaction for all costs and liabilities that may be incurred or suffered by the Co-Manager in connection therewith.

*5.18 Notices to Parties; Meetings of Directors.*

(a)   Any notice given hereunder shall be in writing and shall be served by hand at or by being sent by prepaid airmail post to the registered office for the time being of the addressee and any such notice shall if so posted be deemed to be served seven days after posting. Evidence that the notice was properly addressed stamped and put into the post shall be conclusive evidence of posting. Notice may also be given by e-mail and by fax transmission at the usual addresses on file with the Co-Manager with regard to such party. Notice given by fax or e-mail shall be deemed to have been given contemporaneously unless delivered outside normal business hours in which case it shall be deemed to have been received at the next time after delivery when normal business hours commence.

---

[1] The term "Connected Person" of a company (such as the Co-Manager) means and includes (a) any person or company beneficially owning, directly or indirectly, 20 per cent or more of the issued ordinary share capital of that company or able to exercise, directly or indirectly 20 per cent or more of the total votes in that company; (b) any person or company controlled by a person who or company which meets one or both of the descriptions given in (a); (c) any company 20 per cent or more of whose issued ordinary share capital is beneficially owned, directly or indirectly by that company and any Connected Person of that company (as defined in (a), (b) or (d) of this definition) taken together or any company 20 per cent or more of the total votes in which can be exercised, directly or indirectly, by that company and any such Connected Person thereof (as defined in (a), (b) or (d) of this definition taken together; (d) any employee, director or officer of that company or of any Connected Person of that company (as defined in (a), (b) or (c) of this definition); (e) any spouse, minor child or step-child of the persons referred to in (a), (b) and (d); and (f) any trustee of a trust, the beneficiaries of which are persons falling into (a), (b), (d) and (e).

715835.10

TSQ-5258

Attorney Eyes Only

KING_DIL_000674
KGFSAC0000674

(b)    At the request of the Directors and subject to reasonable prior notice, the Co-Manager, at its own expense, shall endeavor to make one of its executive officers available to attend the meetings of the Directors to report on the Co-Manager's activities and on other matters pertaining to its engagement.

*5.19  Severability.* The illegality, invalidity or unenforceability of any provision of this Agreement under the law of any jurisdiction shall not affect its legality, validity or enforceability under the law of any other jurisdiction nor the legality, validity or enforceability of any other provision.

*5.20 Authority.* Each of the parties to this Agreement hereby represents that it is duly authorized and empowered to execute, deliver and perform this Agreement and that such action does not conflict with or violate any provision of law, rule or regulation, contract, deed of trust, or other instrument to which it is a party or to which any of its property is subject, and that this Agreement is a valid and binding obligation enforceable in accordance with its terms.

*5.21 Entire Agreement.* This Agreement and the Tremont Co-Manager Agreement set forth the entire agreement between the parties with respect to matters contained herein and therein and hereby supercede and replace in its entirety the previous agreement (except surviving provisions) among the parties with respect to co-management of the Fund.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the day and year first above written.

715835.10

TSQ-0258

Attorney Eyes Only

KING_DIL_000675
KGFSAC0000675

**KINGATE MANAGEMENT LIMITED**

By: _/s/ illegible_
Name: MICHAEL TANNENBAUM
Title: Director

**KINGATE GLOBAL FUND LTD.**

By: _/s/ illegible_
Name: [illegible]
Title: Director

This Agreement acknowledged
and recognized:

Tremont (Bermuda) Limited

By: _/s/ illegible_
Name: Suzanne J. Hammond
Title: Director

715835.10

TSQ-57258

Attorney Eyes Only

KING_DIL_000676
KGFSAC0000676