# EXHIBIT AA

MANAGEMENT AGREEMENT (this "Agreement"), dated as of January 1, 2006, by and between **KINGATE MANAGEMENT LIMITED**, a company incorporated under the laws of Bermuda with offices located at 99 Front Street, Hamilton HM11 Bermuda (the "Manager"), and **KINGATE GLOBAL FUND, LTD.**, a company incorporated under the laws of the British Virgin Islands (BVI) whose registered office is c/o Bison Financial Services Limited, Bison Court, PO Box 3460, Road Town, Tortola, British Virgin Islands (the "Fund").

## W I T N E S S E T H:

WHEREAS, the Fund seeks to obtain capital appreciation of its assets through the utilization of a non-traditional stock/options trading strategy as more fully described in its Amended and Restated Information Memorandum dated January 1, 2006, as the same may be supplemented, amended and restated from time to time (collectively the "Information Memorandum");

WHEREAS, the Fund wishes to engage the Manager and the Manager wishes to act as the manager of the Fund;

NOW, THEREFORE, in consideration of the mutual premises and covenants contained herein, the parties hereto agree as follows:

### PART I. SERVICES

*1.1   Provision of Services.*   In accordance with provisions of the Memorandum and Articles of Association of the Fund and the Information Memorandum, and under the ultimate supervision of the directors of the Fund (the "Directors") from time to time as provided therein, the Manager shall be responsible for performing or obtaining the performance of, and is hereby authorized and empowered to perform, or obtain the performance of, all of the following duties and functions necessary or appropriate in connection with the management of the Fund:

    (a)   Providing investment management services as described in Part II of this Agreement;

    (b)   Providing administrative services as described in Part III of this Agreement; and

    (c)   Providing services as described in Part IV of this Agreement.

The Manager may delegate all or part of such responsibilities pursuant to Section 2.2, 4.6 and 5.9 below.

### PART II. INVESTMENT MANAGEMENT SERVICES

*2.1   Investment Program.*   Subject to the ultimate supervision of the Directors, and in accordance with the Memorandum and Articles of Association of the Fund, as well as the

[766200-1]

KF230
CONFIDENTIAL

KGFSAA0000230

investment objectives, policies, guidelines and restrictions which are set forth in the Information Memorandum, or which are otherwise communicated to the Manager, the Manager shall effect the investment strategy for the investment of the assets of the Fund as well as evaluating and selecting potential investments which are consistent with such strategy. Included within this power will be managing the investment and reinvestment of the assets of the Fund, in each case in such manner as the Manager considers appropriate based upon the Manager's past practices.

2.2  *Custody.*  Portfolio securities and other financial assets of the Fund shall be maintained at all times in the custody of one or more banks, trust companies, brokerage firms or other financial institutions as shall have been approved for that purpose by the Manager. As of the date hereof, custody of substantially all of the Fund's assets is in custody with Bernard Madoff Investment Securities LLC, a New York financial institution ("Madoff"). The Manager has no custody of any of the Fund's assets.

## PART III. ADMINISTRATION

3.1  *Provision of Administrative Services for Fund.*  In accordance with the provisions of the Memorandum and Articles of Association of the Fund, and under the ultimate supervision of the Directors from time to time as provided therein, the Manager shall assist the Fund (in a manner consistent with existing practice) in the performance of certain of its administrative duties as may be agreed to by the parties from time to time.

## PART IV. SALE OF SHARES

4.1  *Marketing Generally.*  In accordance with provisions of the Memorandum and Articles of Association of the Fund and the Information Memorandum, and under the ultimate supervision of the Directors from time to time as provided therein, the Manager is hereby authorized and empowered to perform (or procure the performance of), all duties and functions in connection with the sale of any Shares of the Fund and advising the Fund on general matters affecting the marketing of the Shares, including from time to time advising the Fund's Directors concerning:

(a)  Subject, inter alia, to the provisions of Section 4.5(b), soliciting and introducing prospective investors in the Fund's Shares, either relying upon an exemption from registration as a broker dealer or by engaging the services of a broker dealer which may be an affiliate of the Manager; and

(b)  Maintaining regular contact and updating existing and prospective investors to keep them informed of investment results and other information with regard to the Fund.

[766200-1]
{766200-1}{766200-1}                                   -2-

KF231
CONFIDENTIAL

KGFSAA0000231

    4.2    *Sale of Shares.* The Manager shall have sole authority to act in respect of the sale of any of the Fund's Shares. In this regard, the Manager, from time to time, shall seek to procure applications for the purchase of Shares by eligible investors, either directly or through securities dealers and other financial institutions selected by the Manager pursuant to Section 4.3 hereof ("authorized dealers"). Shares shall be offered at the subscription price and on the terms and conditions set forth herein and in the Information Memorandum. All applications shall be subject to acceptance by the Fund (it being understood that the Fund shall have the right to reject applications in its discretion). The Manager shall have no authority (i) to bind the Fund to accept any applications or (ii) to receive or accept on behalf of the Fund any funds or other property tendered as payment for Shares, such authority resting with the Fund and its Directors.

    4.3    *Authorized Dealers.*

    (a)    In addition to any powers the Manager may have under Section 5.9, hereof, the Manager may appoint consultants, agents, securities dealers and other financial institutions as authorized dealers to solicit applications to purchase Shares. Such authorized dealers must have full authority to act in the jurisdiction within which they conduct business. The Manager shall use reasonable efforts to ensure that any such authorized dealer shall conduct its solicitation activities in accordance with all of the conditions, restrictions and limitations applicable to the Manager's direct sales activities as set forth in this Agreement.

    (b)    The Manager may enter into compensation arrangements with authorized dealers as it sees fit and at no additional cost to the Fund.

    4.4    *Offering Materials.*

    (a)    The Manager shall deliver, or arrange for the delivery by any authorized dealer selected by the Manager, to each person to whom Shares are offered a copy of the Fund's most recently published Information Memorandum and a copy of the Fund's most recently published annual report.

    (b)    If any form of offering materials (including any form of advertisement or other solicitation materials calculated to result in an expression of interest in subscribing for Shares) concerning the Fund or its Shares other than the Information Memorandum is required or permitted to be given to any prospective investor under the laws of any jurisdiction in which Shares are offered by or through the Manager, the Manager agrees that any such document (i) shall be prepared and furnished in a commercially reasonable manner, in good faith and reliance on its advisors and consultants, (ii) shall not contain any information concerning the Fund or the Shares which is materially inconsistent with the Information Memorandum, and (iii) shall use reasonable efforts to comply in all respects with the laws of the jurisdiction in which it is furnished.

[766200-1]
[766200-1][766200-1]    -3-

KF232
CONFIDENTIAL

KGFSAA0000232

(c) The Manager acknowledges and agrees that no person is authorized to make any representations, whether written or oral, concerning the Fund and its Shares which are inconsistent with the Information Memorandum and that all offers of Shares shall be made in conformity with the terms and conditions set forth therein.

4.5    *Certain Legal Restrictions.*

(a) No Shares shall be offered by the Manager or any authorized dealer to any person who is not reasonably believed by the Manager or the authorized dealer to be an eligible investor as set forth in the Information Memorandum.

(b) The Shares and the Fund have not been and will not be registered or qualified for offer and sale under the applicable laws of any jurisdiction. Neither the Manager nor any authorized dealer shall (i) solicit any applications or otherwise extend any offers for the purchase of Shares, or (ii) deliver (or have in their possession for the purpose of delivery) the Information Memorandum or any other offering literature relating to the Fund or its Shares, to any person in any jurisdiction in which such solicitation or delivery would be unlawful. The Manager undertakes to comply with the foregoing representations in connection with its participation in the sale of Shares (including the appointment of any authorized dealers) during the term of this Agreement.

4.6    *Authority of the Manager as to the Sale of Any Shares.* The Manager shall have full discretion and authority, without obtaining the Fund's prior approval, to manage any sale of the Shares of the Fund in such manner as the Manager consider appropriate including without limitation hiring such experts, agents and consultants to assist the Manager in performing its duties hereunder as such Manager may deem appropriate.

### PART V. GENERAL PROVISIONS

The following general terms and conditions shall apply to the performance of the Manager's obligations as otherwise set forth herein:

5.1    *Net Asset Value.* As used in this Agreement, the Net Asset Value of the Fund and of the Shares shall have the meaning assigned to it in the Information Memorandum and shall be calculated as described in the Information Memorandum.

5.2    *Monthly Management Fee; Other Fees.*

(a) For its services hereunder, the Manager shall be entitled, in the aggregate, to receive from the Fund a monthly management fee at an annual rate of one and one-half percent (1.5%) of the Net Asset Value of the Fund determined as of each Valuation Date of each calendar month. Such monthly management fee shall be shall payable as of the last business day of each

[766200-1]
[766200-1][766200-1]

-4-

KF233
CONFIDENTIAL

KGFSAA0000233

calendar month. As used herein, the term "Valuation Date" shall have the meaning assigned to it in the Information Memorandum.

(b)   Other fees, such as without limitation, up-front fees and exit fees, shall be retained by and belong to the Manager.

5.3   *Expenses.*

(a)   Unless otherwise agreed to by the Fund, the Manager shall bear all of its own costs and expenses incurred in the performance of its services provided pursuant to this Agreement, including those attributable to such office personnel, office space, office equipment and office services as may be required by the Manager.

(b)   The Fund shall bear all expenses incident to its organization, operations and business, including but not limited to (i) brokerage commissions and charges on portfolio fees on loans and debit balances, (ii) income taxes, withholding taxes, transfer taxes and other governmental charges and duties, (iii) fees of the Fund's legal advisers and independent auditors, (iv) directors, attorneys, audit and accounting fees and expenses, (v) the costs of maintaining the Fund's registered office in the BVI and Bermuda, if any, or anywhere else in the world, and (vi) the costs of printing and distributing the Fund's any offering documents, reports and notices to shareholders.

5.4   *Scope of Liabilities.*   Neither the Manager nor its directors, officers, shareholders and employees, shall be liable to the Fund or its Shareholders for any losses, damages, expenses or claims occasioned by any act or omission of the Manager or directors, officers, shareholders or employees in connection with the performance of its services hereunder, other than as a result of its own gross negligence, bad faith, or willful or reckless malfeasance, disregard of any of its obligations under this Agreement.

5.5   *Indemnification.*

(a)   The Fund shall indemnify the Manager, and its directors, officers, employees, servants, agents, delegates and shareholders (each an "Indemnified Party") and hold the Indemnified Parties harmless from and against any expense, loss, liability or damage arising out of any claim asserted or threatened to be asserted in connection with the Indemnified Party's serving or having served as such pursuant to this Agreement; provided, however, that no Indemnified Party shall be entitled to any such indemnification with respect to any expense, loss, liability or damage which was caused by the Indemnified Party's own gross negligence, bad faith, or willful or reckless malfeasance or disregard of any of its obligations under this Agreement.

(b)   The Manager shall indemnify the Fund against, and hold it harmless from, any expense, loss, liability or damage arising out of any claim asserted or threatened to be asserted

[766200-1]
[766200-1][766200-1]                    -5-

KF234
CONFIDENTIAL

KGFSAA0000234

by any third party as a consequence of any misstatement of any material fact or any other material misrepresentation concerning the Fund or its Shares by the Manager, other than arising out of a misstatement or representation authorized, approved or furnished by the Fund.

(c) In the event that either party hereto is or becomes a party to any action or proceeding in respect of which it may be entitled to seek indemnification hereunder ("indemnitee"), the indemnitee shall promptly notify the other party ("indemnitor") thereof. The indemnitor shall be entitled to participate in any such suit or proceeding and, to the extent that it may wish, to assume the defense thereof with counsel reasonably satisfactory to the indemnitee. After notice of an election by the indemnitor so to assume the defense thereof, the indemnitor will not be liable to the indemnitee hereunder for any legal or other expenses subsequently incurred by the indemnitee in connection with the defense thereof other than reasonable costs of investigation or reasonable legal expenses incurred as a result of (i) potential conflicts of interest between the indemnitee and indemnitor or (ii) the protection of proprietary or privacy interests of other clients of the indemnitee. The indemnitor shall advance to the indemnitee the reasonable costs and expenses of investigating and/or defending such claim, subject to receiving a written undertaking from the indemnitee to repay such amounts if and to the extent of any subsequent determination by a court or other tribunal of competent jurisdiction that the indemnitee was not entitled to indemnification hereunder.

(d) The indemnitor shall be liable hereunder for any settlement of any action or claim effected without its written consent thereto.

(e) Each Indemnified Party shall be entitled to reasonable advances with regard to alleged claims asserted and to attorney fees and expenses.

(f) The indemnity provided for hereunder is in addition to and without prejudice to any indemnity provided by law or contract.

5.6 *Independent Contractor.* For all purposes of this Agreement, the Manager shall be an independent contractor and not an employee or dependent agent of the Fund; nor shall anything herein be construed as making the Fund a partner or co-venturer with the Manager or any of its affiliates. Any court or authority is requested to interpret the provisions of this Agreement recognizing that the foregoing is the firm intention of the parties even to the extent of amending or revising that portion of the Agreement that might lead to a contrary construction. Except as provided in this Agreement, the Manager shall have no authority to bind, obligate or represent the Fund.

5.7 *Information Concerning Activities; Records and Access; Confidentiality.*

(a) The Manager shall provide to the Fund from time to time and on request information regarding the activities (i) conducted by the Manager since the inception of this Agreement or since the most recent date on which the Manager provided information to the Fund

[766200-1]
[766200-1][766200-1]                        -6-

KF235
CONFIDENTIAL

KGFSAA0000235

regarding the activities of the Manager and (ii) proposed to be conducted by the Manager. The Manager shall furnish information concerning the Manager and any authorized dealers and concerning the activities undertaken by them for the Fund as the Fund may reasonably request.

(b) The Manager shall retain for a period of at least five (5) years copies of any documents generated or received by the Manager in the ordinary course of business pertaining to the financial condition of the Fund's assets or to the compensation payable to the Manager. At the request of the Fund, the Manager shall afford to the Fund's independent auditors reasonable access to documents pertaining to the Fund's activities during customary business hours and shall permit such auditors to make copies thereof or extracts therefrom at the expense of the requesting party.

(c) Neither of the parties hereto shall (except under compulsion of law) either before or after the termination of this Agreement disclose to any person not authorised by the relevant party to receive the same any confidential information relating to such party or to the affairs of such party of which the party disclosing the same shall have become possessed during the period of this Agreement and each party shall use all reasonable endeavours to prevent any such disclosure as aforesaid.

5.8    *Term, Termination and Renewal.*

(a) This Agreement (as restated and amended hereby) shall have a term ending on December 31, 2007 and will be automatically renewed for successive one-year periods, subject to termination by either party in accordance with this section.

(b) The Manager shall be entitled to resign its appointment hereunder:

(i) by giving not less than one years' notice in writing to the Fund to expire at the end of a calendar month;

(ii) at any time if the Fund shall go into liquidation or be unable to pay its debts or commit any act of bankruptcy or if a receiver is appointed of any of the assets of the Fund or if some event having an equivalent effect; or

(iii) at any time if the Fund shall commit any material breach of its obligations under this Agreement and (if such breach shall be capable of remedy) shall fail within thirty (30) days of receipt of notice served by the Manager requiring it so to do to make good such breach.

(c) The Fund may terminate the appointment of the Manager as follows:

(i) by giving no less than one years' notice in writing to the Manager to expire at the end of a calendar month;

[766200-1]
[766200-1][766200-1]

-7-

KF236
CONFIDENTIAL

KGFSAA0000236

      (ii) if the Manager goes into liquidation or is unable to pay its debts or commits any act of bankruptcy or if a receiver is appointed of any of the assets of the Manager or if some event having an equivalent effect occurs; or

      (iii) if the Manager shall commit any material breach of its obligations under this Agreement and (if such breach shall be capable of remedy) shall fail within thirty (30) days of receipt of notice served by the Fund requiring it so to do to make good such breach.

  (d) Upon termination of the appointment of the Manager, the Manager shall be entitled to receive the fees and compensation as provided hereunder but shall not be entitled to compensation in respect of such termination; and the Manager shall deliver or procure to be delivered to the Fund or successor manager, or as it shall direct, all books of account, records, other registers, correspondence, and documents relating to the affairs of or belonging to the Fund in the possession of or under the control of the Manager.

  (e) Upon termination of this Agreement for any reason (or for no reason) the following provisions shall survive: Sections: 5.3 (to the extent of unpaid expenses); 5.4; 5.5; 5.7; 5.12; 5.17; 5.20 and 5.21.

  5.9 *Delegation.*

  (a) The Manager shall be authorized to delegate as appropriate, or in its discretion, any of the duties or obligations hereunder to one or more other persons or entities, whether affiliated with or independent of the Manager.

  (b) In the event of any such delegation of duties or obligations hereunder pursuant to any agreement consented to in writing by the Fund, the Manager shall be relieved and discharged of its obligations to perform the services so delegated other than the continuing obligation (subject at all times to the standard of care set forth in Section 5.4 hereof) to take reasonable measures to (i) ascertain the competence of the delegatee to perform the services so delegated, (ii) monitor generally the faithful performance by the delegatee of the duties specified in the relevant delegation agreement, (iii) coordinate such performance with the performance of the other services contemplated hereunder, and (iv) perform or procure the future performance of the delegated services in the event of the expiration or termination of any such agreement with such delegatee. Notwithstanding any other provisions of this Agreement, following the Fund's consent to any such delegation agreement, the Manager shall not incur any liability hereunder to the Fund pursuant to Section 5.4 hereof for any acts or omissions of such delegate and shall remain entitled to indemnification as provided in Section 5.5 hereof.

  (c) The Fund acknowledges its understanding that the Manager proposes to

[766200-1]
[766200-1][766200-1]    -8-

KF237
CONFIDENTIAL

KGFSAA0000237

08-01789-cgm    Doc 12768-27    Filed 03/04/16    Entered 03/04/16 10:49:19    Exhibit AA
Pg 10 of 14

enter into delegation agreements pursuant to Section 5.9(b) hereof with respect to certain of the services contemplated by this Agreement, and agrees that whenever the Fund's consent to such agreements is requested by the Manager, such consent shall not be withheld without reasonable cause.

(d) For the avoidance of doubt, the Manager has delegated responsibilities as follows, which have the consent of the Fund's Directors:

i. To Madoff, investment advisory activities and custody services;

ii. To BISYS Hedge Fund Services Limited, Hamilton, Bermuda, as to administrative services; and

iii. To Bank of Bermuda with respect to banking matters.

*5.10 Modification; Waiver.* Except as otherwise expressly provided herein, this Agreement shall not be amended, nor shall any provision of this Agreement be considered modified or waived, unless evidenced by a writing signed by the party to be charged with such amendment, waiver or modification.

*5.11 Binding Effect; Assignment.* This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors, but the rights and obligations hereunder shall not be assignable, transferable or delegable without the written consent of the other party hereto except as provided in Section 5.9 hereof and any attempted assignment, transfer or delegation thereof without such consent except as provided in Section 5.9 hereof shall be void.

*5.12 Governing Law.* This Agreement shall be governed by and construed in accordance with the substantive laws of Bermuda, applicable to contracts made and entirely to be performed therein. The parties hereby irrevocably submit to the non-exclusive jurisdiction of the courts of Bermuda for the settlement of any dispute or difference arising between the parties hereto.

*5.13 Definition; Headings.* Terms used herein which are not otherwise defined herein shall have the meanings set forth in the Information Memorandum. Headings and titles are for ease of reference only and shall be given no substantive effect.

*5.14 Services Non-Exclusive.* The services of the Manager to the Fund hereunder are not to be deemed exclusive and the Manager shall be free to render similar services to others so long as its services hereunder are not impaired thereby and to retain for its own use and benefit all fees or other monies payable thereby and the Manager shall not be deemed to be affected with notice of or to be under any duty to disclose to the Fund any fact or thing which comes to the notice of the Manager or any servant or agent of the Managers in the course of the Manager rendering similar services to others or in the course of its business in any other capacity or in any manner whatsoever

[766200-1]
[766200-1][766200-1]                            -9-

KF238
CONFIDENTIAL

KGFSAA0000238

otherwise than in the course of carrying out its duties hereunder.

5.15 *Counterparts.* This Agreement may be signed in any number of counterparts. Any single counterpart or a set of counterparts signed, in either case, by the parties hereto, shall constitute a full and original agreement for all purposes.

5.16 *Interest of Fund in Manager and Manager in Fund.*

(a) It is understood that directors, officers, agents and shareholders of the Fund are or may be interested in the Manager as directors, officers, or shareholders or otherwise, that directors, officers, shareholders, agents and any client of the Manager are or may be interested in the Fund as directors, officers, shareholders of otherwise and that the Manager is or may be interested in the Fund as shareholder or otherwise and it is hereby acknowledged that no person so interested shall be liable to account for any benefit to any other party by reason solely of such interest.

(b) The Manager or any client of the Manager or any Connected Person[1] of the Manager or any holding company of the Manager or any subsidiary of such holding company (the "interested party") may hold, acquire or dispose of any investments upon its own account notwithstanding that the same or similar Investments may be held by or for the account of or otherwise connected with the Fund and it is hereby acknowledged that no such interested party shall be liable to account for any benefit to any other party by reason solely of such interest.

5.17 *Legal Action by the Manager.* The Manager shall not be required to take any legal action on behalf of the Fund unless fully indemnified to its reasonable satisfaction for all costs and liabilities that may be incurred or suffered by the Manager in connection therewith.

5.18 *Notices to Parties; Meetings of Directors.*

(a) Any notice given hereunder shall be in writing and shall be served by hand at or by being sent by prepaid airmail post to the registered office for the time being of the addressee and any such notice shall if so posted be deemed to be served seven (7) days after posting. Evidence that the notice was properly addressed stamped and put into the post shall be

---

[1] The term "Connected Person" of a company means and includes (a) any person or company beneficially owning, directly or indirectly, 20 per cent or more of the issued ordinary share capital of that company or able to exercise, directly or indirectly 20 per cent or more of the total votes in that company; (b) any person or company controlled by a person who or company which meets one or both of the descriptions given in (a); (c) any company 20 per cent or more of whose issued ordinary share capital is beneficially owned, directly or indirectly by that company and any Connected Person of that company (as defined in (a), (b) or (d) of this definition) taken together or any company 20 per cent or more of the total votes in which can be exercised, directly or indirectly, by that company and any such Connected Person thereof (as defined in (a), (b) or (d) of this definition taken together; (d) any employee, director or officer of that company or of any Connected Person of that company (as defined in (a), (b) or (c) of this definition); (e) any spouse, minor child or step-child of the persons referred to in (a), (b) and (d); and (f) any trustee of a trust, the beneficiaries of which are persons falling into (a), (b), (d) and (e).

[766200-1]
[766200-1][766200-1] -10-

KF239
CONFIDENTIAL

KGFSAA0000239

conclusive evidence of posting. Notice may also be given by e-mail and by fax transmission at the usual addresses on file with the Manager with regard to such party. Notice given by fax or e-mail shall be deemed to have been given contemporaneously unless delivered outside normal business hours in which case it shall be deemed to have been received at the next time after delivery when normal business hours commence.

(b)    At the request of the Directors and subject to reasonable prior notice, the Manager, at its own expense, shall endeavor to make one of its executive officers available to attend the meetings of the Directors to report on the Manager's activities and on other matters pertaining to its engagement.

5.19    *Severability.* The illegality, invalidity or unenforceability of any provision of this Agreement under the law of any jurisdiction shall not affect its legality, validity or enforceability under the law of any other jurisdiction nor the legality, validity or enforceability of any other provision.

5.20 *Authority.* Each of the parties to this Agreement hereby represents that it is duly authorized and empowered to execute, deliver and perform this Agreement and that such action does not conflict with or violate any provision of law, rule or regulation, contract, deed of trust, or other instrument to which it is a party or to which any of its property is subject, and that this Agreement is a valid and binding obligation enforceable in accordance with its terms.

5.21 *Entire Agreement.* This Agreement sets forth the entire agreement between the parties with respect to matters contained herein and therein and hereby supercedes and replaces in its entirety the previous agreement among the parties with respect to management of the Fund.

[766200-1]
[766200-1][766200-1]                            -11-

KF240
CONFIDENTIAL

KGFSAA0000240

IN WITNESS WHEREOF, the parties have executed this amended and restated Agreement as of the day and year first above written.

**KINGATE GLOBAL FUND LTD.**

By: _____
   Name:
   Title:  Director

**KINGATE MANAGEMENT LIMITED**

By: *[signature]*
   Name: CHETWYNN [illegible]
   Title: D. [illegible]

[766200-1]
[766200-1][766200-1]

-12-

KF241
CONFIDENTIAL

KGFSAA0000241

IN WITNESS WHEREOF, the parties have executed this amended and restated Agreement as of the day and year first above written.

KINGATE GLOBAL FUND LTD.

By: *[signature]*
Name: GRAHAM COOK
Title: Director

KINGATE MANAGEMENT LIMITED

By: _____
Name:
Title:

{766200-1}
{766200-1}{766200-1}

-12-

KF242
CONFIDENTIAL

KGFSAA0000242