# EXHIBIT BB



# ADMINISTRATION AGREEMENT

**THIS AGREEMENT** is made the day of One Thousand Nine Hundred and Ninety Four

BETWEEN :

(1) **KINGATE GLOBAL FUND, LTD.**, a company incorporated under the laws of the British Virgin Islands whose registered office is at Craigmuir Chambers, P.O. Box 71, Road Town, Tortola, BVI (the "Company"); and

(2) **KINGATE MANAGEMENT LIMITED**, a company incorporated under the laws of Bermuda whose principal office is at Hemisphere House, 9 Church Street, Hamilton HM 11, Bermuda (the "Manager").

(3) **HEMISPHERE MANAGEMENT LIMITED**, a company incorporated under the laws of Bermuda whose principal office is at Hemisphere House, 9 Church Street, Hamilton HM 11, Bermuda (the "Administrator") of the third part.

WHEREBY IT IS AGREED AND DECLARED as follows :-

## 1. INTERPRETATION

1.1 In this Agreement the following words and expressions shall, where not inconsistent with the context, have the following meanings respectively:-

"Administration Fee" means the fee payable to the Administrator calculated in accordance with Clause 6.1;

"Articles" means the Memorandum and Articles of Association for the time being of the Company, any reference herein to an Article shall be taken to refer to the appropriate article unless otherwise specified;

"Auditors" means Coopers & Lybrand or any other auditor appointed as such by the Directors;

"Business Day" means any day on which the central banking systems of the U.S. and Bermuda are open and operating;

"Connected Person" of a company means and includes (a) any person or company beneficially owning, directly or indirectly, 20 per cent or more of the issued ordinary share capital of that company or able to exercise, directly or indirectly 20 per cent or more of the total votes in that company; (b) any person or company controlled by a person who or company which meets one or both of the descriptions given in (a); (c) any company 20 per cent or more of whose issued ordinary share capital is beneficially owned, directly or indirectly by that company and any Connected Person of that company (as defined in (a), (b) or (d) of this definition) taken together or any company 20 per cent or more of the total votes in which can be exercised, directly or indirectly, by that company and any such Connected Person thereof (as defined in (a), (b) or (d) of this definition taken together; (d) any employee, director or officer of that company or of any Connected Person of that company (as defined in (a), (b) or (c) of this definition); (e) any spouse, minor child or step-child of the persons referred to in (a), (b) and (d); and (f) any trustee of a trust, the beneficiaries of which are persons falling into (a), (b), (d) and (e);

"Custodian" means the body corporate acting in the capacity of custodian of the Investments for the time being;

"Directors" means the Directors of the Company from time to time;

"Dollars ($) and Cents" means US dollars and cents;

"Eligible Investor" means a person who is entitled to own Shares under the Articles;

"Investments" means all the assets and rights from time to time of the Company held in accordance with the Articles;

"Laws" means the laws of the Bermuda and any other applicable laws and regulations for the time being in force;

"Management Agreement" means the management agreement for the time being subsisting to which the Company and the Manager are parties and relating to the appointment and the duties of the Manager;

"Net Asset Value" means the net asset value of all the Shares calculated in accordance with Clause 4, as of the close of business on the last Business Day of each calendar month;

"Redemption Date" means the last Business Day of each calendar month;

"Secretary of the Company" means the person from time to time nominated by the Administrator and appointed by the Directors to act as the Secretary of the Company pursuant to Clause 3.7 of this Administration Agreement;

"Shares" means the Common Shares with an initial net price of $100;

"Subscription Date" means the first Business Day subsequent to the prior month end;

1.2 Any reference to the Company, the Manager or the Custodian includes a reference to its or their duly authorised agents or delegates.

1.3 References to Clauses are to Clauses of this Agreement.

1.4 The headings to the Clauses of this Agreement are for convenience only and shall not affect the construction or interpretation thereof.

1.5 Unless the context otherwise requires, words and expressions contained in this Agreement relating to the Company shall bear the same meaning as in the Articles of the Company PROVIDED THAT any alteration or amendment of either the Company's Articles shall not be effective for the purposes of this Agreement unless the party hereto affected (to the extent that its rights or duties hereunder are affected by such alteration or amendment) shall, by endorsement hereon or otherwise, have consented thereto.

2. APPOINTMENT OF THE ADMINISTRATOR

The Manager HEREBY APPOINTS the Administrator and the Administrator shall act with effect from the date hereof as Administrator of the Company upon the terms hereinafter contained and in accordance with the Laws and the Articles of the Company until its appointment shall be terminated as hereinafter provided and the Administrator hereby accepts such appointment and agrees to assume the obligations to the Company and the Manager set forth herein.

3. FUNCTIONS, POWERS AND OBLIGATIONS OF THE ADMINISTRATOR

3.1 During the continuance of its appointment as Administrator of the Company, the Administrator shall (subject to the overall policy and supervision of the Directors and subject to Clause 3.8) have full power, authority and right to carry on the general administration of the Company.

3.2 The Administrator shall keep or cause to be kept on behalf of the Company at the Administrator's premises in Bermuda such books, records and statements as may be necessary to give a complete record of all transactions carried out by the Administrator on behalf of the Company and such other books, records and statements as may be required by the Laws, the Articles of the Company and shall permit the Company and its respective employees and agents and the Auditors and so far as required by the laws, the public to inspect such books, records and statements at all reasonable times.

3.3 The Administrator shall have and is hereby granted the authority, power and right for the account and in the name of the Company but subject to the supervision of the Directors and the Laws:-

3.3.1 to enter into, make and perform all contracts, agreements and other undertakings as may in the opinion of the Administrator be necessary or advisable or incidental to the carrying out of the objectives for this Agreement;

3.3.2 to apply to the relevant authorities for, and to obtain from such authorities, all confirmations or consents relating to the taxation status of the Company and all tax rebates and other payments which may be due to the Company from time to time and in connection therewith the Administrator shall have and is hereby granted the authority to disclose to any such relevant authorities such information in its possession regarding the Company or any of its affairs as may be necessary or required;

3.4 Without prejudice to the generality of the foregoing but subject always to Clause 3.8, the duties to be performed by the Administrator during the continuance of its appointment as Administrator in relation to the Company shall include:-

3.4.1 the general administration of the Company and its management as an investment company and receiving and dealing with applications, notices and correspondence on behalf of the Company;

3.4.2 the receipt of applications for the subscription, notices for the redemption and instruments of transfer of Shares and being responsible for the administration of the procedure to be followed for the issue, redemption and transfer of Shares;

3.4.3 the determination of the number of Shares to be issued by the Company as of each Subscription Date as a result of subscriptions received for Shares;

3.4.4 the calculation of the Net Asset Valuation (pursuant to Clause 4);

3.4.5 the calculation of the Subscription Price and the Redemption Price of the Shares at each Subscription and Redemption Date;

3.4.6 the calculation of the fees of the Manager;

3.4.7 keeping and arranging for safe-keeping of the records and accounts of the Company in such manner as will enable the Company to publish yearly the report and accounts of the Company expressed in Dollars;

3.4.8 preparing for the approval of the Directors the annual report and accounts of the Company in Dollars and such other reports, notices and documents as the Company may from time to time require and arranging for the despatch of the same;

3.4.9 the determination of whether or not a person is an Eligible Investor in relation to Shares and whether to invoke the compulsory redemption procedures laid down by the Articles in respect of any person suspected not to be such an Eligible Investor and generally determining whether or not a person should or should not be permitted to hold or continue to hold Shares having regard only to the relative provisions, restrictions and powers contained in the Articles;

3.4.10 the safe-keeping, preparation and forwarding to shareholders, or to the order of such shareholders,in the Company of all certificates, cheques, statements, notices and other documents which the Company is required to issue or serve in connection with the said documents;

3.4.11 instructing the Custodian by telefax within thirty days after the Redemption Date of the total amounts (if any) payable in respect of the redemption of Shares;

3.4.12 the deposit of the monies received in respect of each application for subscription of Shares into a separate subscription account in the name of the Company;

3.4.13 paying out of the subscription account referred to in Clause 3.4.12 introductory commission in accordance with authority granted by the Directors from time to time (but which may not exceed 5% of the aggregate subscription price of the Shares to be subscribed) to the persons who introduce subscribers for Shares;

3.5 The Administrator shall nominate an employee whenever requested to do so by the Directors, to be appointed by the Directors as the Secretary of the Company:-

3.5.1 to carry out on behalf of the Secretary of the Company all the duties and the functions of the Secretary of the Company including without prejudice to the generality of the foregoing:-

(a) the convening of the meetings of Directors in the name of the Secretary of the Company and taking of the minutes thereof; and

(b) the keeping and safe-keeping of the statutory books and records of the Company; and

(c) the delivery of all returns required by the laws of the British Virgin Islands the Laws or to any competent authority in the British Virgin Islands; and

(d) all duties properly to be performed by the Secretary of a company under the laws of the British Virgin Islands the Laws or the Articles of the Company.

3.6 The Administrator shall provide a place for receiving applications for Shares, notices of redemption of Shares, instruments of transfer of Shares, Share Certificates, correspondence relating to the subscription, redemption and transfer of Shares and providing a place where notices may be served on the Company.

3.7 The Administrator shall answer any questions of prospective or existing holders of Shares relating to the subscription, redemption or transfer of Shares.

3.8 The Administrator shall observe and comply with the Articles of the Company, the Laws and with the applicable provisions of any prospectus, explanatory memorandum or other such document relating to the Company distributed from time to time by or on behalf of the Company and all resolutions of the Directors of which it has notice and other lawful orders and directions given to it from time to time by the Directors, and all activities engaged in by the Administrator hereunder shall at all times be subject to the control of and review by the Directors.

3.9 The Administrator shall provide all necessary office facilities, equipment and personnel to enable it to carry out its functions hereunder and shall liaise with the Directors and the Directors of the Manager, as necessary for this purpose.

4. NET ASSET VALUE

4.1 Net Asset Valuations are determined by the Manager or the Administrator, in large part based upon information regarding the value of the Fund's portfolio assets provided by the Investment Advisors, as of the close of business on the last Business Day of each calendar month. The Fund generally seeks to have portfolio securities valued in accordance with the following guidelines.

4.2 Portfolio securities are valued at the last sale price reported on the principal securities exchange or market on which the securities are traded. In the absence of reported sales prices on the valuation date, portfolio positions generally are valued at the last reported bid quotation in the case of securities held long and at the last reported offer quotation in the case of securities sold short. In special circumstances in which the Administrator determines that market prices or quotations do not fairly represent the value of particular assets based on information provided by the applicable Investment Advisor, the Administrator is authorized to assign a value to such assets which differs from the market prices or quotations based on information provided by the applicable Investment Advisor.

4.3 Securities or other assets which are not readily marketable, including, illiquid direct investments of the Fund, generally are valued at the lesser of cost or market price, and may be subject to an additional discount upon the recommendation of the Administrator. If appraisals are available, references can be made to such appraisals. Shares of other investment funds will generally be valued at the Net Asset Value supplied by such funds, less any applicable redemption charges customarily imposed by such funds and less any provision for non-accrued management and performance fees. The value of assets are recorded at their fair value as determined in good faith by the Administrator or the Administrator in the absence of current quotations or if Administrator concludes that such quotations are not indicative of fair value by reason of illiquidity of a particular security or other factors.

4.4 In addition to special valuation calculations relating to illiquid securities, other special situations affecting the measurement of Net Asset Values may arise from time to time. Prospective investors should be aware that situations involving uncertainties as to the valuation of portfolio positions could have an adverse effect on the Fund's net assets if judgments regarding appropriate valuations made by the Administrator should prove incorrect. In the absence of bad faith or manifest error, the Net Asset Value calculations made by the Administrator are conclusive and binding on all shareholders.

4.5 There will be deducted from the total value of the Fund's assets all accrued debts and liabilities, including (i) fees of the Investment Advisors, the Manager, the Consultant and the Administrator earned or accrued but not yet paid, (ii) a provision for the annual performance fees of the Manager and the Investment Advisors measured as of the valuation date, (iii) monthly amortization of organization costs, (iv) an allowance for the Fund's estimated annual audit and legal fees, and (v) any contingencies for which reserves are determined to be required. Net Asset Valuations will be expressed in U.S. Dollars, and any items denominated in other currencies will be translated at prevailing exchange rates as determined by the Administrator.

5. CONTINUATION AND EXERCISE OF ADMINISTRATOR'S POWERS

5.1 The authorities herein contained are continuing ones and shall remain in full force and effect until revoked by termination of this Agreement as hereinafter provided, but such revocation shall not affect any liability in any way resulting from transactions initiated prior to such revocation.

5.2 The Administrator will at all times exercise and perform the powers, rights and duties (or any of them) conferred upon it by this Agreement, any supplemental agreement, or otherwise by the Directors within Bermuda (or such other place or places as the Directors may from time to time approve) and in particular (but without prejudice to the generality of the foregoing) will hold all meetings at which such powers, rights and duties (or any of them) are exercised or performed within Bermuda or any such other place or places as aforesaid and any decision taken or directions given by the Administrator will be taken and be given within Bermuda or such other place or places as

aforesaid. The Administrator will not carry on in relation to the Company any business outside Bermuda (other than in any place or places as the Directors may from time to time approve for such purpose, such approval not to be unreasonably withheld) if by so doing the Administrator would cause the Company to become liable to pay any taxes which it would not otherwise be liable to pay.

6. FEES OF THE ADMINISTRATOR

6.1 In consideration of the services to be undertaken by the Administrator hereunder (including the provision of an employee to act as the Secretary of the Company under Clause 3.5) the Administrator shall be entitled to receive from the Company an Administration Fee payable monthly in arrears calculated on the basis of the amount of time spent in fulfilling its obligations under this Agreement at its hourly charge-out rate during each month subject to any separate agreement made between the Company and the Administrator as to a fixed annual fee.

6.2 If this Agreement shall terminate otherwise than on a monthly Redemption Date the Administrator shall be entitled to receive on the next Redemption Date an Administration Fee for services rendered until the date of termination.

6.3 In the event of any dispute arising as to the amount of the Administrator's fees hereunder, the same shall be referred to the Auditors for settlement, who shall be entitled to make such further or other adjustments as may in the circumstances appear to them to be appropriate and whose decision shall be regarded as the decision of an expert and not of an arbitrator and shall be binding and final upon the parties hereto.

7. EXPENSES

7.1 Subject to Clause 7.2, the Administrator shall pay the expenses incurred by it in connection with the performance of its services hereunder unless the Manager otherwise agrees in any particular case.

7.2 The Company shall pay itself, or if paid by the Administrator, will reimburse the Administrator in respect of all out-of-pocket expenses incurred by it in the performance of its duties including (without limitation):-

7.2.1 all expenses of every nature of or incidental to deposits of cash made on behalf of the Company;

7.2.2 all taxes and corporate fees payable by the Company to any Government or other authority or to any agency of such Government or authority whether in the British Virgin Islands or elsewhere;

7.2.3 all fees and expenses incurred in relation to the incorporation and initial organisation of the Company.

7.2.4 all audit fees of the Company and legal expenses in connection with the Company's corporate existence, corporate and financial structure and all other professional and other charges in respect of services rendered at the request of the Directors of the Company;

7.2.5 all expenses of and incidental to convening and holding Shareholders' and Directors' meetings of the Company;

7.2.6 the cost of minute books and other documentation required by the Laws;

7.2.7 all charges for postage, telephone, telex, telecopying, faxing and cable incurred by the Administrator in the proper performance of its duties hereunder.

8. SERVICES OF THE ADMINISTRATOR NOT TO BE EXCLUSIVE

The services of the Administrator to the Company hereunder are not to be deemed exclusive and the Administrator shall be free to render similar services to others so long as its services hereunder are not impaired thereby and to retain for its own use and benefit all fees or other monies payable thereby and the Administrator shall not be deemed to be affected with notice of or to be under any duty to disclose to the Company any fact or thing which comes to the notice of the Administrator or any servant or agent of the Administrator in the course of the Administrator rendering similar services to others or in the course of its business in any other capacity or in any manner whatsoever otherwise than in the course of carrying out its duties hereunder.

9. INTERESTS IN THE ADMINISTRATOR OR THE COMPANY

9.1 It is understood that directors, officers, agents and shareholders of the Company and the Manager are or may be interested in the Administrator as directors, officers or shareholders or otherwise, that directors, officers, shareholders and any client of the Administrator are or may be

11.5 The Manager hereby undertakes to hold harmless and indemnify the Company or the Administrator against all actions proceedings claims costs demands and expenses which may be brought against suffered or incurred by the Company or the Administrator by reason of their performance or non-performance of their duties under the terms of this Agreement (other than due to negligence, willful default, fraud or dishonesty on the part of the Company or the Administrator or persons designated by them) including all legal professional and other expenses incurred by the Company or the Administrator or persons designated by them in the performance of their obligations or duties and including indemnity obligations owed by the Company or the Administrator to persons designated by them (except such as shall arise from negligence, willful default, fraud or dishonest in the performance of such obligations or duties) and in particular (but without limitation) this protection and indemnity shall extend to or any loss delay misdelivery or error in transmission of any telexed or telefaxed communication or as a result of acting upon any forged document or signature, but not tax on the overall income or profits of the Company or the Administrator.

11.6 Notwithstanding any other provision of this Agreement, the Administrator shall not be liable to the Company, any holder of Shares or otherwise for any taxation assessed upon or payable by the Company wheresoever the same may be assessed or imposed and whether directly or indirectly except for such taxation or shall be attributable to negligence, willful default, fraud or dishonesty in the performance or non-performance by the Administrator of its obligations or duties. The Company shall indemnify and keep indemnified the Administrator from and against all taxes not attributable to negligence, willful default, fraud or dishonesty as aforesaid (wheresoever and by whomsoever imposed) on profits or gains of the Company which may be assessed upon or become payable by the Administrator and against all costs claims demands actions and proceedings in connection therewith.

11.7 For the avoidance of doubt it is hereby agreed and declared that reference to the Administrator in this Clause shall be deemed to include references to the officers and servants of the Administrator.

11.8 Any indemnity expressly given to the Company or the Manager or the Administrator in this Agreement is in addition to and without prejudice to any indemnity provided by the Laws.

12. <u>LEGAL ACTION BY THE ADMINISTRATOR</u>

The Administrator shall not be required to take any legal action unless fully indemnified to its reasonable satisfaction for all costs and liabilities that may be incurred or suffered by the Administrator and not attributable to its negligence, willful default, fraud or dishonesty in the performance or non-performance of its obligations or duties and if the Company requires the Administrator to take any action of whatsoever nature which in the reasonable opinion of the Administrator might make the Administrator liable for the payment of money or liable in any other way the Administrator shall be and be kept indemnified in any reasonable amount and form satisfactory to the Administrator as a prerequisite to taking action.

13. <u>RESIGNATION AND TERMINATION</u>

13.1 The Administrator shall be entitled to resign its appointment hereunder:-

13.1.1 by giving no less than three months' notice in writing to the Manager to expire at any time;

13.1.2 at any time if the Company shall go into liquidation (except a voluntary liquidation for the purpose of reconstruction or amalgamation upon terms previously approved in writing by the Administrator) or be unable to pay its debts or commit any act of bankruptcy under the laws of the British West Indies or if a receiver is appointed of any of the assets of the Company or if some event having an equivalent effect occurs;

13.1.3 at any time if the Company shall commit any material breach of its obligations under this Agreement and (if such breach shall be capable of remedy) shall fail within thirty days of receipt of notice served by the Administrator requiring it so to do to make good such breach;

13.1.4 at any time if the present Manager shall cease to be the Manager of the Company for any reason.

13.2 The appointment of the Administrator may be terminated as hereunder:-

13.2.1 The Manager may terminate the appointment of the Administrator as Administrator of the Company by giving not less than three months' notice in writing to the administrator to expire at any time.

13.2.2 The Manager may terminate the appointment of the Administrator at any time by giving notice in writing to the Administrator in any of the following events:-

13.2.2.1 If the Administrator goes into liquidation (except a voluntary liquidation for the purpose of reconstruction or amalgamation upon terms previously approved in writing by the Company) or is unable to pay its debts or commits any act of bankruptcy under the laws of Bermuda or if a receiver is appointed of any of the assets of the Administrator or if some event having an equivalent effect occurs;

13.2.2.2 If the Administrator shall commit any material breach of its obligations under this Agreement and (if such breach shall be capable of remedy) shall fail within thirty days of receipt of notice served by the Company requiring it so to do to make good such breach;

13.2.2.3 If the Administrator ceases to be permitted to act as such under the Laws.

13.3 The appointment of the Administrator shall automatically terminate forthwith if the Administrator shall become or be deemed to become resident for tax purposes or carry on business within the United States or the United Kingdom or shall carry on any business elsewhere outside Bermuda and Cayman Islands (other than in any place or places as may from time to time be approved by the Directors for such purpose, such approval not to be unreasonably withheld) in circumstances which cause the Company to become liable to pay any taxes which it would not otherwise be liable to pay.

13.4 On termination of the appointment of the Administrator under the provisions of this Clause the Administrator shall be entitled to receive the fees referred to in Clause 6.2 but shall not be entitled to compensation in respect of such termination; and the Administrator shall deliver or procure to be delivered to the Company, or as it shall direct, all books of accounts, records, other registered correspondence, documents and assets relating to the affairs of or belonging to the Company in the possession of or under the control of the Administrator and shall take all necessary steps to vest in the Company or any new Administrator any assets previously held in the name of or to the order of the Administrator on behalf of the Company and shall not be entitled to any lien in respect of any of the foregoing.

14. CONFIDENTIALITY AND REPUTATION

14.1 None of the parties hereto shall (except under compulsion of law or in accordance with the Laws) either before or after the termination of this Agreement disclose to any person not authorised by the relevant party to receive the same any confidential information relating to any other party or to the affairs of such party of which the party disclosing the same shall have become possessed during the period of this Agreement and each party shall use all reasonable endeavours to prevent any such disclosure as aforesaid.

14.2 No party shall do or suffer any act or matter or thing which would or might prejudice or bring into disrepute the business or reputation of any other party.

15. MISCELLANEOUS PROVISIONS

15.1 No failure on the part of any party to exercise, and no delay on the part of any party in exercising, any right or remedy under this Agreement will operate as a waiver thereof nor will any single or partial exercise of any right or remedy preclude any other or further exercise thereof or the exercise of any other right or remedy. The rights and remedies provided in this Agreement are cumulative and not exclusive of any rights or remedies provided by law.

15.2 Any provision of this Agreement may be amended only if the parties so agree in writing.

15.3 The illegality, invalidity or unenforceability of any provision of this Agreement under the law of any jurisdiction shall not affect its legality, validity or enforceability under the law of any other jurisdiction or the legality, validity or enforceability of any other provision.

15.4 The Company shall not use the Administrator's name in any document or other publicity material without the prior consent of the Administrator (such consent not to be unreasonably withheld or delayed) which consent may be given generally in respect of agreed wording to be included in an agreed list of documents.

15.5 Except to the extent that the Laws admit variations by contract and are so varied by the terms of this Agreement, the powers, duties, rights and obligations of the parties under this Agreement shall be overridden by, and to the extent that they may conflict, be subject to, the Laws.

15.6 The Administrator will not cause or take any action as a consequence of which, the Company or the Manager will become the subject of United States or United Kingdom taxation.

16. NOTICES

Any notice given hereunder shall be in writing and shall be served by hand at or by being sent by prepaid airmail post to the registered office for the time being of the addressee and any such notice shall if so posted be deemed to be served seven days after posting. Evidence that the notice was properly addressed stamped and put into the post shall be conclusive evidence of posting.

17. LAW OF THE CONTRACT

17.1 This Agreement shall be governed by and construed in accordance with the Laws of Bermuda.

17.2 The Company, the Manager and the Administrator hereby irrevocably submits to the non-exclusive jurisdiction of the courts of Bermuda for the settlement of any dispute or difference arising between the parties hereto.

17.3 The Manager hereby irrevocably appoints the Administrator as its authorised agent to accept and acknowledge on its behalf service of any and all notices which may be served at any time by any person (other than the Administrator) on the Company.

**IN WITNESS WHEREOF** this Agreement has been entered into the day and year first above written.

SIGNED by KEITH R. BISH )
for and on behalf of )
KINGATE GLOBAL FUND, LTD. )
in the presence of:- )

SIGNED by )
for and on behalf of )
KINGATE MANAGEMENT LIMITED )
in the presence of:- )

SIGNED by )
for and on behalf of )
HEMISPHERE MANAGEMENT LIMITED)
in the presence of:- )

DATED 1994

**KINGATE GLOBAL FUND, LTD.**

**- AND -**

**KINGATE MANAGEMENT LIMITED**

**- AND -**

**HEMISPHERE MANAGEMENT LIMITED**

---

# ADMINISTRATION AGREEMENT

---

**FIRST AMENDMENT TO THE KINGATE GLOBAL FUND, LTD. ADMINISTRATION AGREEMENT**

FIRST AMENDMENT (the "First Amendment"), dated as of March 1, 1995, to the Administration Agreement of Kingate Global Fund, Ltd. (the "Fund") dated as of November 1994 (the "Administration Agreement") by and between the Fund, Kingate Management Limited (the "Manager") and Hemisphere Management Limited (the "Administrator").

WITNESSETH:

WHEREAS, the Fund, pursuant to an Information Memorandum dated as of November 1994, offered common shares of the Fund (the "Common Shares") and simultaneously executed the Administration Agreement; and

WHEREAS, as of March 1, 1995, the directors and members of the Fund approved a recapitalization of the Fund (the "Recapitalization") which involved a redesignation of the Common Shares as Class A Shares ("Class A Shares") and an issuance of a new class of common shares, Class B Shares ("Class B Shares"); and

WHEREAS, in order to effect the Recapitalization, the Fund, pursuant to a Supplement to the Information Memorandum dated as of March 1, 1995, redesignated the Common Shares as Class A Shares (the "Class A Shares Supplement"); and

WHEREAS, in order to further effect the Recapitalization, the Fund, pursuant to an Information Memorandum dated as of March 1, 1995, offered the new Class B Shares (the "Class B Shares Information Memorandum"); and

WHEREAS, in order to effect the provisions of the Class A Shares Supplement, the Fund wishes to amend the Administration Agreement by executing this First Amendment.

NOW, THEREFORE, in consideration of the mutual promises and covenants contained herein, the parties hereby agree as follows:

1. Definitions

Unless otherwise defined herein, terms defined in the Administration Agreement hereby shall have such defined meanings when used herein.

2. Amendment

(i) Section 1.1 of the Administration Agreement is hereby amended by deleting the definition of "Shares" and adding the following new definition:

> "Shares" means the Class A Common Shares (the "Class A Shares") which were initially offered as Common Shares pursuant to the Fund's Information Memorandum dated as of November 1994 and redesignated as Class A Shares pursuant to the Fund's Class A Shares Supplement to the Information Memorandum dated as of March 1, 1995 and Class B Common Shares (the "Class B Shares"), which were offered pursuant to a separate Information Memorandum dated March 1, 1995. All references in this Agreement refer to Class A and B Shares. The Administration Fee and costs directly attributable to a particular class of shares will be attributed to that class. The Administration Fee and costs not directly attributable to a particular class of shares will be attributed to both classes of shares based upon the pro rata value of the issued and outstanding shares.

3. Effective Date

This First Amendment shall be effective as of the date first written above. Except as expressly set forth herein, all of the terms and conditions of the Administration Agreement shall remain unchanged and shall continue in full force and effect and are hereby ratified and confirmed.

4. Counterparts

This First Amendment may be executed in any number of counterparts, each of which shall be an original, with the same effect as if the signatures thereto and hereto were upon the same instrument.

5. Governing Law

This First Amendment and the underlying Agreement shall hereafter be governed by and construed in accordance with the substantive laws of the Bermuda applicable to contracts made and entirely performed therein, without regard to principles of conflicts of law.

IN WITNESS WHEREOF, the parties hereto have signed this First Amendment to be duly executed and delivered as of the date and year first written above.

KINGATE GLOBAL FUND, LTD.

By: ______________________________ K
Name: Christopher Wetherhill
Title: Director

KINGATE MANAGEMENT LIMITED
(the "Manager")

By: ______________________________
Name: Margaret Every
Title: Director

HEMISPHERE MANAGEMENT LIMITED
(the "Administrator")

By: ______________________________
Name: M. Keale
Title: Director

IN WITNESS WHEREOF, the parties hereto have signed this First Amendment to be duly executed and delivered as of the date and year first written above.

KINGATE GLOBAL FUND, LTD.

By: ______________________
Name: Christopher Wetherhill
Title: Director

KINGATE MANAGEMENT LIMITED
(the "Manager")

By: ______________________
Name:
Title:

HEMISPHERE MANAGEMENT LIMITED
(the "Administrator")

By: ______________________
Name:
Title: