# EXHIBIT DD

# KINGATE EURO FUND, LTD.

- AND -

# KINGATE MANAGEMENT LIMITED

- AND -

# HEMISPHERE MANAGEMENT LIMITED

## ADMINISTRATION AGREEMENT
### Dated May 1, 2000

[613555-4]

Attorney Eyes Only

KING_DIL_000173
KGFSAC0000173

## ADMINISTRATION AGREEMENT
### (Kingate Euro Fund, Ltd.)

**THIS AGREEMENT** is made as of May 1st, 2000

AMONG:

(1) **KINGATE EURO FUND, LTD.**, a company incorporated under the laws of the British Virgin Islands whose registered office is at Bison Court, P.O. Box 3460, Road Town, Tortola, BVI (the "Company"); and

(2) **KINGATE MANAGEMENT LIMITED**, a company incorporated under the laws of Bermuda whose principal office is at 99 Front Street, Hamilton HM 11, Bermuda (the "Manager").

(3) **HEMISPHERE MANAGEMENT LIMITED**, a company incorporated under the laws of Bermuda whose principal office is at Hemisphere House, 9 Church Street, Hamilton HM 11, Bermuda (the "Administrator") of the third part.

WHEREBY IT IS AGREED AND DECLARED as follows :-

1. **INTERPRETATION**

1.1    In this Agreement the following words and expressions shall, where not inconsistent with the context, have the following meanings respectively:-

"Administration Fee" means the fee payable to the Administrator calculated in accordance with Clause 6.1 or as otherwise agreed by the parties, in writing;

"Articles" means the Memorandum and Articles of Association for the time being of the Company, as amended and restated from time to time; any reference herein to an Article shall be taken to refer to the appropriate article unless otherwise specified;

"Auditors" means PricewaterhouseCoopers or any other auditor appointed as such by the Directors;

"Business Day" means any day on which the central banking systems of the U.S., London and Bermuda are open and operating;

"Confidential Information" has the meaning ascribed to it Clause 14.4;

"Connected Person" of a company means and includes (a) any person or company beneficially owning, directly or indirectly, 20 per cent or more of the issued ordinary share capital of that company or able to exercise, directly or indirectly 20 per cent or more of the total votes in that company; (b) any person or company controlled by a person who or company which meets one or both of the descriptions given in (a); (c) any company 20 per cent or more of whose issued ordinary share capital is beneficially owned, directly or indirectly by that company and any Connected Person of that company (as defined in (a), (b) or (d) of this definition) taken together or any company 20 per cent or more of the total votes in which can be exercised, directly or indirectly, by that company and any such Connected Person thereof (as defined in (a), (b) or (d) of this definition taken together; (d) any employee, director or officer of that company or of any Connected Person of that company (as defined in (a), (b) or (c) of this definition); (e) any spouse, minor

613555 v4

child or step-child of the persons referred to in (a), (b) and (d); and (f) any trustee of a trust, the beneficiaries of which are persons falling into (a), (b), (d) and (e);

"Consultant" refers to the consultant retained by the Manager to provide advice to the Manager on such aspects of the Company's operational, administrative, accounting, legal, and marketing matters as may be required by the Manager and the Company (including advice on hedging the US Dollar to Euro currency exposure with regard to the assets of the Company);

"Custodian" means the body corporate acting in the capacity of custodian, if any, of the Investments for the time being;

"Directors" means the Directors of the Company from time to time, such Directors as of the date of execution of this Agreement are Charles D. Sebah, Christopher Wetherhill and Keith R. Bish;

"Dollars ($)" means U.S. dollars;

"Euro (€) and Cents" means euro and cents;

"Eligible Investor" means a person who is entitled to own Shares under the Articles;

"Investments" means all the assets and rights from time to time of the Company held in accordance with the Articles or the Memorandum;

"Laws" means the laws of the Bermuda and any other applicable laws and regulations for the time being in force, as the context requires;

"Management Agreement" means the management agreement for the time being subsisting to which the Company and the Manager are parties and relating to the appointment and the duties of the Manager;

"Memorandum" refers to the Company's Information Memorandum initially dated May 1, 2000, and includes any supplement, amendment and restatement thereof;

"Net Asset Value" means the net asset value of all the Shares calculated in accordance with Clause 4, as of the close of business on the last Business Day of each calendar month, and in a manner consistent with the Memorandum;

"Redemption Date" means the last Business Day of each calendar month;

"Secretary of the Company" means the person from time to time nominated by the Administrator and appointed by the Directors to act as the Secretary of the Company pursuant to Clause 3.7 of this Administration Agreement;

"Shares" means the Common Shares issued by the Company;

"Subscription Date" means the first Business Day of the month;

1.2   Any reference to the Company, the Manager, Consultant or the Custodian includes a reference to its or their duly authorised agents or delegates.

1.3   References to Clauses are to Clauses of this Agreement.

1.4   The headings to the Clauses of this Agreement are for convenience only and shall not affect the construction or interpretation thereof.

Attorney Eyes Only

KING_DIL_000175
KGFSAC0000175

1.5   Unless the context otherwise requires, words and expressions contained in this Agreement relating to the Company shall bear the same meaning as in the Articles of the Company PROVIDED THAT any alteration or amendment of either the Company's Articles shall not be effective for the purposes of this Agreement unless the party hereto affected (to the extent that its rights or duties hereunder are affected by such alteration or amendment) shall, by endorsement hereon or otherwise, have consented thereto.

2.   APPOINTMENT OF THE ADMINISTRATOR

The Manager HEREBY APPOINTS the Administrator and the Administrator shall act with effect from the date hereof as Administrator of the Company upon the terms hereinafter contained and in accordance with the Laws and the Articles of the Company until its appointment shall be terminated as hereinafter provided and the Administrator hereby accepts such appointment and agrees to assume the obligations to the Company and the Manager set forth herein.

3.   FUNCTIONS, POWERS AND OBLIGATIONS OF THE ADMINISTRATOR

3.1   During the continuance of its appointment as Administrator of the Company, the Administrator shall (subject to the overall policy and supervision of the Directors and subject to Clause 3.8) have full power, authority and right to carry on the general administration of the Company.

3.2   The Administrator shall keep or cause to be kept on behalf of the Company at the Administrator's premises in Bermuda such books, records and statements as may be necessary to give a complete record of all transactions carried out by the Administrator on behalf of the Company and such other books, records and statements as may be required by the Laws, the Articles of the Company and shall permit the Company and its respective employees and agents and the Auditors and so far as required by the laws, the public to inspect such books, records and statements at all reasonable times.

3.3   The Administrator shall have and is hereby granted the authority, power and right for the account and in the name of the Company but subject to the supervision of the Directors and the Laws:-

   3.3.1   to enter into, make and perform all contracts, agreements and other undertakings as may in the opinion of the Administrator be necessary or advisable or incidental to the carrying out of the objectives for this Agreement;

   3.3.2   to apply to the relevant authorities for, and to obtain from such authorities, all confirmations or consents relating to the taxation status of the Company and all tax rebates and other payments which may be due to the Company from time to time and in connection therewith the Administrator shall have and is hereby granted the authority to disclose to any such relevant authorities such information in its possession regarding the Company or any of its affairs as may be necessary or required;

3.4   Without prejudice to the generality of the foregoing but subject always to Clause 3.8, the duties to be performed by the Administrator during the continuance of its appointment as Administrator in relation to the Company shall include:-

   3.4.1   the general administration of the Company and its management as an investment company and receiving and dealing with applications, notices and correspondence on behalf of the Company;

   3.4.2   the receipt of applications for the subscription, notices for the redemption and instruments of transfer of Shares and being responsible for the administration of the procedure to be followed for the issue, redemption and transfer of Shares;

[613555-4]

Attorney Eyes Only

KING_DIL_000176
KGFSAC0000176

3.4.3   the determination of the number of Shares to be issued by the Company as of each Subscription Date as a result of subscriptions received for Shares;

3.4.4   the calculation of the Net Asset Valuation (pursuant to Clause 4) and the Memorandum and co-ordinating with Consultants and agents of the Company and with the Manager with regard to is currency hedging activities and obtaining price quotes in a manner consistent with the Memorandum;

3.4.5   the calculation of the Subscription Price and the Redemption Price of the Shares at each Subscription and Redemption Date;

3.4.6   the calculation of the fees of the Manager;

3.4.7   keeping and arranging for safe-keeping of the records and accounts of the Company in such manner as will enable the Company to publish yearly the report and accounts of the Company expressed in euro;

3.4.8   preparing for the approval of the Directors the annual report and accounts of the Company in euro and such other reports, notices and documents as the Company may from time to time require and arranging for the despatch of the same;

3.4.9   the determination of whether or not a person is an Eligible Investor in relation to Shares and whether to invoke the compulsory redemption procedures laid down by the Articles in respect of any person suspected not to be such an Eligible Investor, determining that the subscriber is not in violation of the applicable anti-money laundering laws, and generally determining whether or not a person should or should not be permitted to hold or continue to hold Shares having regard only to the relative provisions, restrictions and powers contained in the Articles;

3.4.10  the safe-keeping, preparation and forwarding to shareholders, or to the order of such shareholders, in the Company of all certificates, cheques, statements, notices and other documents which the Company is required to issue or serve in connection with the said documents;

3.4.11  instructing the Custodian by telefax within thirty days after the Redemption Date of the total amounts (if any) payable in respect of the redemption of Shares;

3.4.12  the deposit of the monies received in respect of each application for subscription of Shares into a separate subscription account in the name of the Company;

3.4.13  paying out of the subscription account referred to in Clause 3.4.12 introductory commissions in accordance with authority granted by the Directors from time to time (but which may not exceed 5% of the aggregate subscription price of the Shares to be subscribed) to the persons who introduce subscribers for Shares as determined by the Directors and collecting exit or redemption fees as the case may be;

3.5   The Administrator shall nominate an employee whenever requested to do so by the Directors, to be appointed by the Directors as the Secretary of the Company;

3.5.1   The Administrator shall carry out on behalf of the Secretary of the Company all the duties and the functions of the Secretary of the Company including without limiting the general nature of the foregoing:-

(a)   the convening of the meetings of Directors in the name of the Secretary of the Company and taking of the minutes thereof; and

(b)   the keeping and safe-keeping of the statutory books and records of the Company; and

Attorney Eyes Only

KING_DIL_000177
KGFSAC0000177

(c) the delivery of all returns required by the laws of the British Virgin Islands the Laws or to any competent authority in the British Virgin Islands; and

(d) all duties properly to be performed by the Secretary of a company under the laws of the British Virgin Islands the Laws or the Articles of the Company.

3.6 The Administrator shall provide a place for receiving applications for Shares, notices of redemption of Shares, instruments of transfer of Shares, Share Certificates, correspondence relating to the subscription, redemption and transfer of Shares and providing a place where notices may be served on the Company.

3.7 The Administrator shall answer any questions of prospective or existing holders of Shares relating to the subscription, redemption or transfer of Shares.

3.8 The Administrator shall observe and comply with the Articles of the Company, the Laws and with the applicable provisions of the Memorandum or other such document relating to the Company distributed from time to time by or on behalf of the Company, all resolutions of the Directors of which it has notice and other lawful orders and directions given to it from time to time by the Directors and all anti-money laundering provisions of law as are applicable from time to time. All activities engaged in by the Administrator hereunder shall at all times be subject to the control of and review by the Directors and agents appointed by the board for this purpose.

3.9 The Administrator shall provide all necessary office facilities, equipment and personnel to enable it to carry out its functions hereunder and shall liaise with the Directors and the Directors of the Manager, and others, as necessary for this purpose.

4. NET ASSET VALUE

4.1 The Net Asset Value of the Company and of each Share shall be calculated and computed in accordance with the Memorandum, as the same shall exist from time to time. An accurate copy of the definition of Net Asset Value as set forth in the Memorandum is attached hereto as an exhibit.

4.2 In the absence of bad faith or manifest error, the Net Asset Value calculations made by the Administrator shall be conclusive and binding on all shareholders.

5. CONTINUATION AND EXERCISE OF ADMINISTRATOR'S POWERS

5.1 The authorities herein contained are continuing ones and shall remain in full force and effect until revoked by termination of this Agreement as hereinafter provided, but such revocation shall not affect any liability in any way resulting from transactions initiated prior to such revocation.

5.2 The Administrator will at all times exercise and perform the powers, rights and duties (or any of them) conferred upon it by this Agreement, any supplemental agreement, or otherwise by the Directors within Bermuda (or such other place or places as the Directors may from time to time approve) and in particular (but without prejudice to the generality of the foregoing) will hold all meetings at which such powers, rights and duties (or any of them) are exercised or performed within Bermuda or any such other place or places as aforesaid and any decision taken or directions given by the Administrator will be taken and be given within Bermuda or such other place or places as aforesaid. The Administrator will not carry on in relation to the Company any business outside Bermuda (other than in any place or places as the Directors may from time to time approve for such purpose, such approval not to be unreasonably withheld) if by so doing the Administrator would cause the Company to become liable to pay any taxes which it would not otherwise be liable to pay.

5.3 The Administrator shall at all times make all reasonable efforts to ensure that, through maintenance of appropriate back-up records offsite in a secure location, readily accessible to the Administrator, the period of time

[613555-4]

Attorney Eyes Only

KING_DIL_000178
KGFSAC0000178

during which the Administrator is unable to carry out its duties in accordance with this agreement shall be brought to an end as soon as reasonably possible.

5.4  All records relating to the Company shall be maintained by the Administrator for at least five (5) years and upon reasonable notice the Company shall have access to them, during reasonable business hours. Access shall include access to duly authorised representatives of the Company, as the case may be.

6.  **FEES OF THE ADMINISTRATOR**

6.1  In consideration of the services to be undertaken by the Administrator hereunder (including the provision of an employee to act as the Secretary of the Company under Clause 3.5) the Administrator shall be entitled to receive from the Company a fee of $12,500 per month. The said fee shall be payable monthly in advance. The Company shall also pay (a) a one time set-up fee to the Administrator of $5,000 payable on May 1, 2000 and (b) a per transaction fee of $130 per transaction for every subscription for and redemption of Shares. All payments under this Agreement may be effected by paying the Euro equivalent as of the date of payment These fees shall be reviewed by the Company, the Manager and the Administrator on December 1, 2000 and annually thereafter.

6.2  If this Agreement shall terminate otherwise than on a monthly Redemption Date the Administrator shall be entitled to receive on the next Redemption Date an Administration Fee for services rendered until the date of termination.

6.3  In the event of any dispute arising as to the amount of the Administrator's fees hereunder, the same shall be referred to the Auditors for settlement, who shall be entitled to make such further or other adjustments as may in the circumstances appear to them to be appropriate and whose decision shall be regarded as the decision of an expert and not of an arbitrator and shall be binding and final upon the parties hereto.

7.  **EXPENSES**

7.1  Subject to Clause 7.2, the Administrator shall pay the expenses incurred by it in connection with the performance of its services hereunder unless the Manager otherwise agrees in any particular case.

7.2  The Company shall pay itself, or if paid by the Administrator, will reimburse the Administrator in respect of all out-of-pocket expenses incurred by it in the performance of its duties including (without limitation):

  7.2.1  all expenses of every nature of or incidental to deposits of cash made on behalf of the Company;

  7.2.2  all taxes and corporate fees payable by the Company to any Government or other authority or to any agency of such Government or authority whether in the British Virgin Islands or elsewhere;

  7.2.3  all fees and expenses incurred in relation to the incorporation and initial organisation of the Company.

  7.2.4  all audit fees of the Company and legal expenses in connection with the Company's corporate existence, corporate and financial structure and all other professional and other charges in respect of services rendered at the request of the Directors of the Company;

  7.2.5  all expenses of and incidental to convening and holding Shareholders' and Directors' meetings of the Company;

  7.2.6  the cost of minute books and other documentation required by the Laws;

  7.2.7  all charges for postage, telephone, telex, telecopying, faxing and cable incurred by the Administrator in the proper performance of its duties hereunder.

Attorney Eyes Only

KING_DIL_000179
KGFSAC0000179

8. SERVICES OF THE ADMINISTRATOR NOT TO BE EXCLUSIVE

The services of the Administrator to the Company hereunder are not to be deemed exclusive and the Administrator shall be free to render similar services to others so long as its services hereunder are not impaired thereby and to retain for its own use and benefit all fees or other monies payable thereby and the Administrator shall not be deemed to be affected with notice of or to be under any duty to disclose to the Company any fact or thing which comes to the notice of the Administrator or any servant or agent of the Administrator in the course of the Administrator rendering similar services to others or in the course of its business in any other capacity or in any manner whatsoever otherwise than in the course of carrying out its duties hereunder.

9. INTERESTS IN THE ADMINISTRATOR OR THE COMPANY

9.1   It is understood that directors, officers, agents and shareholders of the Company and the Manager are or may be interested in the Administrator as directors, officers or shareholders or otherwise, that directors, officers, shareholders and any client of the Administrator are or may be interested in the Company as directors, officers, shareholders or otherwise and that the Administrator is or may be interested in the Company as shareholder or otherwise and it is hereby acknowledged that no person so interested shall be liable to account for any benefit to any other party by reason solely of such interest.

9.2   The Administrator or any client of the Administrator or any Connected Person of the Administrator or any holding company of the Administrator or any subsidiary of such holding company ("the interested party") may hold, acquire or dispose of any investments upon its own account notwithstanding that the same or similar investments may be held by or for the account of or otherwise connected with the Company and it is hereby acknowledged that no such interested party shall be liable to account for any benefit to any other party by reason solely of such interest.

9.3   Any transaction between the Administrator or Connected Person (directly or indirectly), on the one hand, and the Company on the other shall not be effective without the prior written consent of the Directors as to that particular transaction after a full and fair disclosure of all of the facts and circumstances surrounding such transaction.

10. DELEGATION AND ASSIGNMENT

10.1   The Administrator shall have full power to delegate the whole or any part of its functions hereunder to any person firm or company subject to the prior written approval of the Directors. The Administrator shall (unless the Directors shall otherwise agree in any particular case) exercise its power of delegation only on terms which include a provision binding on such delegate in terms similar in all respects to this Agreement. The Administrator in such cases shall remain responsible for the acts of the delegate.

10.2   Neither the responsibilities nor liabilities under this Agreement can be assigned by the Administrator without the approval of the Board of Directors.

11. LIABILITY AND INDEMNITY

11.1   The Administrator shall not be liable to the Company, or any holder of Shares or otherwise for any error of judgement or for any loss suffered by the Company or any such holder of Shares in connection with the subject matter of this Agreement howsoever any such loss may have occurred unless such loss arises from negligence, wilful default, fraud or dishonesty, in the performance or non-performance by the Administrator of its obligations or duties.

11.2   The Administrator shall not be liable to the Manager or any shareholder of the Manager or otherwise for any loss suffered by the Manager or shareholder of the Manager in connection with the subject matter of this Agreement howsoever any such loss may have occurred unless such loss arises from negligence, wilful default, fraud or dishonesty, in the performance or non-performance by the Administrator of its obligations or duties.

[613555-4]

Attorney Eyes Only

KING_DIL_000180
KGFSAC0000180

11.3    The Company hereby undertakes to hold harmless and indemnify the Manager and the Administrator against all actions proceedings claims costs demands and expenses (including legal fees and costs) which may be brought against suffered or incurred by the Manager and/or the Administrator by reason of their performance or non-performance of their duties to the Company under the terms of this Agreement including all legal professional and other expenses incurred by the Manager and/or the Administrator (except such as shall arise from negligence, wilful default, fraud or dishonesty in the performance of such obligations or duties) and in particular (but without limitation) this protection and indemnity shall extend to any loss delay misdelivery or error in transmission of any telexed or telefaxed communication or as a result of acting upon any forged document or signature but not tax on the overall income or profits of the Manager or the Administrator.

11.4    The Administrator hereby undertakes to hold harmless and indemnify the Company and the Manager against all actions proceedings claims costs demands and expenses (including all legal professional and other expenses but not tax on the overall income or profits of the Company or the Manager) which may be brought against suffered or incurred by the Company or the Manager as a direct result of negligence, wilful default, fraud or dishonesty in carrying out their duties under this agreement on the part of the Administrator its directors, officers, employees or delegates.

> 11.4.1 For the avoidance of doubt this indemnity shall extend to any loss suffered by the Company or the Manager resulting from delay misdelivery or error in transmission of any telexed or telefaxed communication by the Administrator by reason of negligence, wilful default, fraud or dishonesty on the part of the Administrator or as a result of the Administrator acting upon any forged document or signature (other than where the Administrator reasonably believed the relevant forged document or signature to be authentic).

11.5    The Manager hereby undertakes to hold harmless and indemnify the Company or the Administrator against all actions proceedings claims costs demands and expenses which may be brought against suffered or incurred by the Company or the Administrator by reason of their performance or non-performance of their duties under the terms of this Agreement (other than due to negligence, wilful default, fraud or dishonesty on the part of the Company or the Administrator or persons designated by them) including all legal professional and other expenses incurred by the Company or the Administrator or persons designated by them in the performance of their obligations or duties and including indemnity obligations owed by the Company or the Administrator to persons designated by them (except such as shall arise from negligence, wilful default, fraud or dishonest in the performance of such obligations or duties) and in particular (but without limitation) this protection and indemnity shall extend to or any loss delay misdelivery or error in transmission of any telexed or telefaxed communication or as a result of acting upon any forged document or signature, but not tax on the overall income or profits of the Company or the Administrator.

11.6    Notwithstanding any other provision of this Agreement, the Administrator shall not be liable to the Company, any holder of Shares or otherwise for any taxation assessed upon or payable by the Company wheresoever the same may be assessed or imposed and whether directly or indirectly except for such taxation or shall be attributable to negligence, wilful default, fraud or dishonesty in the performance or non-performance by the Administrator of its obligations or duties.

11.7    For the avoidance of doubt it is hereby agreed and declared that reference to the Administrator in this Clause shall be deemed to include references to the officers and servants of the Administrator.

12.    <u>LEGAL ACTION BY THE ADMINISTRATOR</u>

The Administrator shall not be required to take any legal action unless fully indemnified to its reasonable satisfaction for all costs and liabilities that may be incurred or suffered by the Administrator and not attributable to its negligence, wilful default, fraud or dishonesty in the performance or non-performance of its obligations or duties and if the Company requires the Administrator to take any action of whatsoever nature which in the reasonable opinion of the Administrator might make the Administrator liable for the payment of money or liable in any other way the Administrator shall be and be kept indemnified in any reasonable amount and form satisfactory to the Administrator as a prerequisite to taking action.

Attorney Eyes Only

KING_DIL_000181
KGFSAC0000181

13. **RESIGNATION AND TERMINATION**

13.1 The Administrator shall be entitled to resign its appointment hereunder:-

3.1.1 by giving no less than three months' notice in writing to the Manager to expire at any time;

13.1.2 at any time if the Company shall go into liquidation (except a voluntary liquidation for the purpose of reconstruction or amalgamation upon terms previously approved in writing by the Administrator) or be unable to pay its debts or commit any act of bankruptcy under the laws of the British West Indies or if a receiver is appointed of any of the assets of the Company or if some event having an equivalent effect occurs;

13.1.3 at any time if the Company shall commit any material breach of its obligations under this Agreement and (if such breach shall be capable of remedy) shall fail within thirty days of receipt of notice served by the Administrator requiring it so to do to make good such breach;

3.1.4 at any time if the present Manager shall cease to be the Manager of the Company for any reason.

13.2 The appointment of the Administrator may be terminated as hereunder:-

13.2.1 The Manager may terminate the appointment of the Administrator as Administrator of the Company by giving not less than three months' notice in writing to the administrator to expire at any time.

13.2.2 The Manager may terminate the appointment of the Administrator at any time by giving notice in writing to the Administrator in any of the following events:-

13.2.2.1 If the Administrator goes into liquidation (except a voluntary liquidation for the purpose of reconstruction or amalgamation upon terms previously approved in writing by the Company) or is unable to pay its debts or commits any act of bankruptcy under the laws of Bermuda or if a receiver is appointed of any of the assets of the Administrator or if some event having an equivalent effect occurs;

13.2.2.2 If the Administrator shall commit any material breach of its obligations under this Agreement and (if such breach shall be capable of remedy) shall fail within thirty days of receipt of notice served by the Company requiring it so to do to make good such breach;

13.2.2.3 If the Administrator ceases to be permitted to act as such under the Laws.

13.3 The appointment of the Administrator shall automatically terminate forthwith if the Administrator shall become or be deemed to become resident for tax purposes or carry on business within the United States or the United Kingdom or shall carry on any business elsewhere outside Bermuda and Cayman Islands (other than in any place or places as may from time to time be approved by the Directors for such purpose, such approval not to be unreasonably withheld) in circumstances which cause the Company to become liable to pay any taxes which it would not otherwise be liable to pay.

13.4 On termination of the appointment of the Administrator under the provisions of this Clause the Administrator shall be entitled to receive the fees referred to in Clause 6.2 but shall not be entitled to compensation in respect of such termination; and the Administrator shall deliver or procure to be delivered to the Company, or as it shall direct, all books of accounts, records, other registered correspondence, documents and assets relating to the affairs of or belonging to the Company in the possession of or under the control of the Administrator, shall take all necessary steps to vest in the Company or any new Administrator any assets previously held in the name of or to the order of the Administrator on behalf of the Company and shall cooperate fully and in good faith with transferring information and data about the Company, and shall not be entitled to any lien in respect of any of the foregoing. On termination, all Confidential Information shall be returned to the Company promptly. The Administrator shall be permitted to maintain copies of the Confidential Information for its own records but shall not be permitted to disclose such copies of the Confidential Information save in response to the Order of a Court of competent

[613555-4]

Attorney Eyes Only

KING_DIL_000182
KGFSAC0000182

jurisdiction or regulatory authority, upon prior written notice to the Company to give it an opportunity to object, or to the Administrator's own legal counsel and other advisers on a strictly confidential basis. The Administrator shall otherwise seek to ensure that the confidentiality of the Confidential Information is maintained.

14. <u>CONFIDENTIALITY AND REPUTATION</u>

14.1 The Administrator acknowledges and agrees that the Confidential Information constitutes a valuable property right of the Company, the Manager and Consultant. The Administrator shall not (except under compulsion of law and subject to the provisions below) either before or after the termination of this Agreement disclose to any person not authorised by the relevant party to receive the same any Confidential Information relating to the Company, Manager or Consultant, as the case may be, to which the Administrator same shall become possessed pursuant to this Agreement or before or after the term of this Agreement and the Administrator agrees to use all accessible means to maintain its secrecy.

Accordingly, the Administrator hereby confirms that it will use its best efforts and take appropriate steps to ensure that all such Confidential Information that comes (or has come) into the Administrator's possession will be held strictly confidential and secret. The Administrator understands that this Agreement extends to its employees and agents and to others who may come into possession of the Confidential Information and that it will take appropriate steps to insure compliance with the terms hereof. Further, the Administrator agrees that (a) this provision will survive the termination of the Agreement, and (b) that it will return all Confidential Information, including without limitation, any and all copies made thereof, to the Company or Manager as the case may be.

Notwithstanding the foregoing, the Company understands that the Administrator may be required to disclose Confidential Information in response to proper governmental request or order. However, the Administrator agrees that it will promptly and timely notify in writing the Company and the Manager in the event of any such request or order before any such disclosure of Confidential Information is made.

The Administrator, Company, and Manager and their respective affiliates agree that all provisions of this Agreement, and all dealings with the Administrator, Company and Manager or Consultant and affiliates (as the case my be) concerning the performance of its obligations hereunder are also strictly confidential.

14.2 No party shall do or suffer any act or matter or thing which would or might prejudice or bring into disrepute the business or reputation of any other party.

14.3 The Administrator will not make any press releases, public statement or publish any notice in any publication (computer based or otherwise) referring the Company or the Manager or Consultant without the prior written consent of the Directors.

14.4 The term "Confidential Information" shall mean any and all information, documents and disclosures (whether written, magnetic or oral) of any kind whatsoever regarding the Company and/or the Company's business strategies and/or dealings with third parties, including, without limitation, the identities of investors in any jurisdiction, all business plans, marketing plans, product information and/or plans, statistical data and possible products, whether derivative or otherwise, term sheets, contracts, proposals, data, designs, drawings, analyses, interpretations, reports, forecasts, financial projections, agreements, and/or any analyses, compilations, memoranda and/or other documents, whether prepared by the Administrator, the Company, the Manager or others, which contain, reflect or include the subject matter of the Confidential Information. This definition shall be construed broadly recognising the importance of Confidential Information to the Company and the Manager.

15. <u>MISCELLANEOUS PROVISIONS</u>

15.1 No failure on the part of any party to exercise, and no delay on the part of any party in exercising, any right or remedy under this Agreement will operate as a waiver thereof nor will any single or partial exercise of any right or

remedy preclude any other or further exercise thereof or the exercise of any other right or remedy. The rights and remedies provided in this Agreement are cumulative and not exclusive of any rights or remedies provided by law.

15.2    Any provision of this Agreement may be amended only if the parties so agree in writing.

15.3    The illegality, invalidity or unenforceability of any provision of this Agreement under the law of any jurisdiction shall not affect its legality, validity or enforceability under the law of any other jurisdiction or the legality, validity or enforceability of any other provision.

15.4    The Company shall not use the Administrator's name in any document or other publicity material without the prior consent of the Administrator (such consent not to be unreasonably withheld or delayed) which consent may be given generally in respect of agreed wording to be included in an agreed list of documents.

15.5    Except to the extent that the Laws admit variations by contract and are so varied by the terms of this Agreement, the powers, duties, rights and obligations of the parties under this Agreement shall be overridden by, and to the extent that they may conflict, be subject to, the Laws.

15.6    The Administrator will not cause or take any action as a consequence of which, the Company or the Manager will become the subject of United States or United Kingdom taxation.

15.7    This Agreement supersedes all prior agreements relating to the administration of the Company by the Administrator.

15.8    The Consultant shall be a third party beneficiary of this Agreement as the context requires but shall not be deemed a party hereof.

16.    NOTICES

Any notice given hereunder shall be in writing and shall be served by hand at or by being sent by prepaid airmail post to the registered office for the time being of the addressee and any such notice shall if so posted be deemed to be served seven days after posting. Evidence that the notice was properly addressed stamped and put into the post shall be conclusive evidence of posting.

17.    LAW OF THE CONTRACT

17.1    This Agreement shall be governed by and construed in accordance with the Laws of Bermuda with reference to Bermuda's conflicts of laws provisions.

17.2    The Company, the Manager and the Administrator hereby irrevocably submits to the non-exclusive jurisdiction of the courts of Bermuda for the settlement of any dispute or difference arising between the parties hereto.

17.3    The Manager hereby irrevocably appoints the Administrator as its authorised agent to accept and acknowledge on its behalf service of any and all notices which may be served at any time by any person (other than the Administrator) on the Company provided that a copy of such service or notices, especially if adverse to the interest of the Company (or the Manager) be promptly, and in a timely manner under the circumstances, be delivered to the Board and the Manager.

[613555-4]

Attorney Eyes Only

KING_DIL_000184
KGFSAC0000184

**IN WITNESS WHEREOF** this Agreement has been entered into the day and year first above written.

SIGNED by  )
for and on behalf of  )
KINGATE EURO FUND, LTD.  )     *[signature]*
in the presence of:-  )

*Kenneth H. [signature]*

SIGNED by  )
for and on behalf of  )
KINGATE MANAGEMENT LIMITED  )     *[signature]*
in the presence of:-  )

*Kenneth H. [signature]*

SIGNED by  )
for and on behalf of  )     *[signature]*
HEMISPHERE MANAGEMENT LIMITED  )
in the presence of:-  )

Attorney Eyes Only

KING_DIL_000185
KGFSAC0000185