# EXHIBIT FF

DATE 1 JUNE 2007

AMENDED AND RESTATED
ADMINISTRATION AGREEMENT

KINGATE EURO FUND, LTD.

- and -

KINGATE MANAGEMENT LIMITED

- and -

BISYS HEDGE FUND SERVICES LIMITED

BISYS Hedge Fund Services Limited
Hemisphere House
9 Church Street
Hamilton HM 11
Bermuda

Attorney Eyes Only

KING_DIL_000187
KGFSAC0000187

**DATE OF AGREEMENT: 1 JUNE 2007**

**PARTIES:**

1. KINGATE EURO FUND, LTD (the "Company") a company incorporated under the laws of the British Virgin Islands, whose registered office is located at Bison Court, P.O. Box 3460, Road Town, Tortola, British Virgin Islands;

2. KINGATE MANAGEMENT LIMITED (the "Manager") a company incorporated under the laws of Bermuda whose principal office is located at 99 Front Street, Hamilton HM 11, Bermuda; and

3. BISYS HEDGE FUND SERVICES LIMITED (the "Administrator") a limited company incorporated under the laws of Bermuda, whose registered office is at Hemisphere House, 9 Church Street, Hamilton HM 11, Bermuda.

**RECITALS:**

A. The Company wishes to appoint the Administrator to provide company secretarial, registrar and transfer agency, accounting and other administrative services as specified herein.

B. The Administrator has agreed to provide such services to the Company pursuant to the terms of this Agreement.

C. This Amended and Restated Administration Agreement shall supercede and replace in full all previous agreements between the parties regardimg the provision of administrative services by the Administrator to the Company.

**OPERATIVE PROVISIONS:**

**1.    DEFINITIONS**

1.1    The following words and expressions shall have the following meanings:

"Agreement": this Administration Agreement, as amended or restated from time to time

"Auditor":  the auditor of the Company from time to time.

"Articles":  the memorandum and articles of association of the Company as they may be amended from time to time.

"Directors":  the board of directors of the Company from time to time.

"Offering Memorandum": the current amended and restated information memorandum, listing particulars or other disclosure document utilized by the Company in connection with an offering of its Shares and all amendments to that document.

"Register":  the register of Shareholders.

"Shareholders":  the holders of Shares of the Company.

"Shares":  the common shares of the Company, as described in the Offering Memorandum.

Attorney Eyes Only

KING_DIL_000188
KGFSAC0000188

1.2    Words and expressions not otherwise defined in this Agreement shall bear the same meaning as in the Articles or Offering Memorandum as the context requires.

**2.    APPOINTMENT**

The Company hereby appoints the Administrator as administrator for the Company from the date of this Agreement and to provide the administrative services referred to in this Agreement.

**3.    PROVISION OF FACILITIES**

The Administrator shall provide and pay for an adequate staff and shall provide suitable office accommodation and other facilities for efficiently performing the functions set out in this Agreement, but the Company shall not be entitled to the exclusive use of any such accommodation or to the exclusive services of any member of such staff.

**4.    DUTIES OF THE ADMINISTRATOR**

During the continuance of this Agreement the Administrator shall perform the functions of an administrator to the Company as may be requested by the Company namely:

**4.1    Net Asset Value Calculation**

4.1.1  calculate and publish the net asset value per Share for each class of Shares issued by the Company and the subscription and redemption prices per Share for each class of Shares issued by the Company in accordance with the methodology contained within the Articles, the Offering Memorandum or as directed by the Directors from time to time utilising, whenever reasonably practicable, such independent pricing services as chosen by the Administrator from time to time;

4.1.2  oversee and review the calculation and payment of fees payable to the Administrator, the Manager and other service providers to the Company;

**4.2    Corporate Secretarial Services**

4.2.1  provide the services of an officer or employee of the Administrator or an affiliate thereof to act as secretary of the Company in accordance with the laws of the British Virgin Islands, as may be requested by the Company;

4.2.2  continue to permit Bison Court, P.O. Box 3460, Road Town, Tortola, British Virgin Islands to be the Company's registered office;

4.2.3  be responsible for maintaining the Register in accordance with the statutory provisions for the time being in force and the Articles;

4.2.4  take or procure that there are taken reasonable and proper precautions for the safe custody of the Register, any certificates of the Company held by the Administrator, and of all other documents held by it in performance of its duties in accordance with this Agreement.

4.2.5  receive, record and deal with probates, letters of administration, powers of attorney, and other documents affecting the title of Shares or any dividends payable thereon in accordance with the Administrator's normal practice or in accordance with the written instructions of the Company;

Attorney Eyes Only

KING_DIL_000189
KGFSAC0000189

4.2.6    prepare and seal on behalf of the Company Share certificates in accordance with the provision of the Articles and the Offering Memorandum;

4.2.7    subject to any instructions to the contrary from the Company, ensure that the officer or employee of the Administrator or an affiliate thereof appointed as secretary of the Company from time to time (or, if appropriate a suitable alternate) shall organize and attend in person or by telephone at board meetings and general meetings of the Company held and prepare agendas, minutes and other documents required at or in connection with such meetings held in the British Virgin Islands or elsewhere;

4.2.8    effect all necessary registrations with governmental and similar agencies in the British Virgin Islands in order to maintain the good standing of the Company except for those filings undertaken by the registered office of the Company which shall be effected by the Administrator only where the Administrator provides a registered office to the Company pursuant to 4.2.2 above. For the sake of clarity it is agreed that the Administrator shall not be responsible for effecting any U.S. federal or state regulatory filings which may be required as a result of the offering of Shares by the Company

4.2.9    establish and maintain such bank accounts as may be necessary and take such action in relation thereto as may be authorized by the directors from time to time;

**4.3        Preparation of Financial Statements**

4.3.1    maintain the principal corporate records and books of account of the Company as required for the proper conduct of the financial affairs of the Company, provided however, that the corporate records and books of account held by the Company in the British Virgin Islands shall, in any event, be treated as the Company's principal corporate records and books of account;

4.3.2    at any time during the Administrator's business hours permit the Auditor and any duly appointed agent or representative of the Company, at the expense of the Company, to audit or inspect the Register, the financial records of the Company and any other documents or records kept by the Administrator under the terms of this Agreement and make available all such documents and records in its possession to the Auditor, agent or representative during business hours whenever reasonably required so to do and afford all such information, explanations and assistance as the Auditor, agent or representative may reasonably require;

4.3.3    reconcile accounting issues with the Company's Directors, officers, the Auditor or the Company's legal counsel;

4.3.4    prepare draft financial statements for presentation to the Auditors annually;

4.3.5    at the end of each fiscal year of the Company, arrange for the books and accounts of the Company to be audited and cause the auditors report to be delivered to the Directors, the shareholders, the Manager and such governmental or regulatory agencies as may be required by law;

**4.4        Shareholder Services**

4.4.1    process subscription and redemption requests in accordance with the provisions of the Articles and the Offering Memorandum and arrange for the issue, transfer, allotment,

Attorney Eyes Only

conversion and/or redemption of Shares and make any corresponding entries on the Register, provided that, in the performance of the foregoing, the Administrator shall:

(i)     established and will apply to the Company in the performance of its duties hereunder anti-money laundering practices and procedures (including staff training programmes) that comply with the requirements of the British Virgin Islands Anti-Money Laundering Code of Practice 1999 as the same may be amended from time to time.

(ii)    comply with any anti-money laundering or similar laws or regulations in British Virgin Islands, Bermuda or other jurisdictions that are applicable to the Company and the Administrator;

(iii)   review the Company's subscription documents provided by potential investors in the Company; and

(iv)    perform such Anti-Money Laundering Services as described in Section 4.5 hereto.

4.4.2    send all circulars, notices of meetings, reports, financial statements and other written material to all persons entitled to receive the same under the Articles and the Offering Memorandum as the Company may require;

4.4.3    act as may be required by the Company from time to time, as proxy agent in connection with the holding of meetings of Shareholders, receive and tabulate votes cast by proxy and communicate to the Company the results of such tabulation accompanied by appropriate certificates;

4.4.4    use reasonable efforts to deal with and answer all correspondence from or on behalf of Shareholders relating to the Company;

**4.5     Anti-Money Laundering Services**

4.5.1    the Administrator represents to the Company that the Administrator is subject to the anti-money laundering laws and regulations of the jurisdiction of the Administrator ("the AML Regime") and has anti-money laundering policies and procedures in place that are compliant with the requirements of the AML Regime;

4.5.2    the Administrator will deliver to the Company, a true and correct copy of its anti-money laundering policies and procedures as amended from time to time. The Administrator represents to the Company that it is properly enforcing its anti-money laundering policies and procedures;

4.5.3    the Administrator has read the section titled "Representations and Covenants of the Investor" (or its equivalent) in the subscription documents of the Company and the Administrator shall take all reasonable steps to ensure that it does not accept or maintain subscription funds from investors who have failed to provide the U.S. Office of Foreign Asset Control ("OFAC") representations included in the subscription documents of the Company without conducting such enhanced due diligence as may be agreed between the Administrator and the Company from time to time;

Attorney Eyes Only

4.5.4    retain records for a period of five years after the termination of the appointment of the Administrator hereunder for any reason whatsoever all documentation related to the Shareholder;

4.5.5    maintain internal controls and communications for the ongoing monitoring of Shareholders in the Company to the extent practicable based on the information received by the Administrator in the regular discharge of the services, including searching on a periodic basis the list maintained by World Check (found at http://www.world-check.com) to ensure that the Shareholders are not identified by name on the said list;

4.5.6    provide to the Company or the Financial Services Commission ("FSC"), upon request, written evidence of its suitability to perform the AML Procedures on behalf of the Company;

4.5.7    provide identification information obtained and held with respect to the investors to the Company or FSC and to the British Virgin Islands financial reporting authority and/or other law enforcement authorities, upon lawful request;

4.5.8    provide the Company or its authorized agents, upon request, with information which they may reasonably require to satisfy themselves of the reliability of the Administrator's systems and procedures;

4.5.9    the Administrator reserves the right to engage such agents, in its absolute discretion, as it shall consider appropriate for the purposes of complying with its obligations pursuant to the AML Regime;

4.5.10   the Company and the Administrator understand and agree that, notwithstanding the ability of the Company to delegate the maintenance of the AML Procedures to the Administrator, the Company shall be ultimately responsible for ensuring that it is compliant with its own anti-money laundering obligations.

4.5.11   review the subscription agreement to ensure that investor has represented therein that he is not a senior foreign political figure, an immediate family member or close associate thereof or a foreign shell bank;

**4.6    Other Services**

4.6.1    establish and maintain such bank, brokerage, custodian and other accounts as may be necessary or advisable and do all such things and take such action in relation thereto as may be authorised by the Directors from time to time;

4.6.2    obtain approval from the Company for, and draw upon the bank account(s) of the Company to pay and discharge, all properly due, charged, and documented costs, expenses and liabilities of the Company due to the service providers to the Company;

**5.    RIGHTS OF THE ADMINISTRATOR**

The Administrator may:

5.1    at its own expense employ servants or agents in performance of its duties and the exercise of its rights under this Agreement;

Attorney Eyes Only

KING_DIL_000192
KGFSAC0000192

5.2     delegate its functions, powers, discretions, privileges and duties under this Agreement or any of them to any affiliate of the Administrator on such terms and conditions as it may deem appropriate and particularly to its British Virgin Islands affiliate, provided that such responsibility may not be delegated to the extent that they are to be performed by any person outside the British Virgin Islands if such responsibilities are required to be performed within the British Virgin Islands under British Virgin Islands law;

5.3     use one or more third parties to perform some or all of its obligations under this Agreement. The Administrator shall be fully responsible for the acts of such third parties and shall not be relieved of any of its responsibilities under this Agreement by virtue of the use of such third parties;

5.4     use the name of the Company and sign any necessary letters or other documents for and on behalf of the Company as Administrator of the Company in the performance of its duties under this Agreent;

5.5     provide a secretary or act as administrator for any other company, corporation or body of persons on such terms as may be arranged with such company, corporation or body of persons and shall not be deemed to be affected with notice of or to be under any duty to disclose to the Company any fact or thing which may come to the knowledge of the Administrator or any servant, agent or delegate of the Administrator in the course of so doing or in any manner whatever otherwise than in the course of carrying out the duties of administrator under this Agreement;

6.     **POWERS RETAINED BY DIRECTORS**

In the performance of its duties under this Agreement the Administrator shall at all times be subject to all of the following powers retained by the Directors:

6.1     with the consent of the Administrator, to define and modify the scope of the Administrator's duties under this Agreement, provided that any amendment to this Agreement shall be in writing and signed by the parties hereto;

6.2     to establish and apply benchmarks for measuring the quality of the Administrator's performance under this Agreement;

6.3     to request and promptly receive reports concerning the nature and quality of the services performed by the Administrator under this Agreement;

6.4     to evaluate the systems and controls utilised by the Administrator in performing its services hereunder; and

6.5     to exercise such other powers and take such other actions as may be deemed necessary to perform their duties as directors, provided however, the Directors shall not have the power to supervise or control the operations of the Administrator in the performance of its duties other than as provided above.

7.     **REMUNERATION OF THE ADMINISTRATOR**

7.1     The Administrator shall be paid by the Company, by way of remuneration for its services under this Agreement, fees at such rates as may be agreed in writing from time to time between the Company and the Administrator. The initial fees payable by the Company to the Administrator are as set out in the attached Fee Schedule.

Attorney Eyes Only

KING_DIL_000193
KGFSAC0000193

7.2     The Administrator shall also be entitled to receive from the Company an amount equal to all out of pocket expenses properly incurred by the Administrator in carrying out its duties under this Agreement upon receipt by the Company (if requested) of appropriate and reasonable supporting documentation.

7.3     Administration fees payable by the Company to the Administrator under this Agreement shall be paid in United States Dollars monthly in arrears. All other fees specified in the Fee Schedule attached hereto shall be payable in United States Dollars when invoiced.

**8.     DUTIES OF THE COMPANY**

The Company shall:

8.1     with all reasonable expedition approve or disapprove transfers submitted to it by the Administrator;

8.2     after the commencement of and during the continuance of this Agreement not itself prepare or instruct any other person to prepare or issue any certificates or accept for registration any transfer of any Shares of the Company and on receipt of any document affecting the title to the Shares of the Company will immediately forward the same to the Administrator;

8.3     retain for a period of five years after the termination of the appointment of the Administrator hereunder for any reason whatsoever all cancelled certificates and transfer forms lodged during the period of such appointment; and

8.4     deliver or cause to be delivered from time to time to the Administrator proper certified or authenticated copies of its Articles and all amendments thereto and of such other documents and information as may be necessary for the Administrator to perform its duties under this Agreement.

**9.     TERMINATION**

9.1     This Agreement may be terminated at any time by either party provided that at least ninty (90) days written notice has been given to the other party to this Agreement. The obligations of the Company pursuant to Clause 10.5 shall survive the termination of this Agreement and shall continue in full force and effect for the benefit of the Administrator and other parties named therein.

9.2     The appointment of the Administrator shall terminate immediately if (a) a secured party takes possession or a receiver, manager or other similar officer is appointed, of the whole or in part of the undertaking, assets and revenues of the Administrator, (b) the Administrator admits in writing its insolvency or inability to pay its debts as they fall due, (c) an administrator or liquidator of the Administrator or the whole or any part of the undertaking, assets and revenues of the Administrator is appointed (or application for any such appointment is made), (d) the Administrator takes any action for a readjustment or deferment of any of its obligations or makes a general assignment, or an arrangement, or composition, with, or for the benefit of, its creditors or declares a moratorium in respect of any of its indebtedness, (e) an order is made or an effective resolution is passed for the winding up of the Administrator or (f) any event occurs which has an analogous effect of any of the foregoing; whereupon the Company shall appoint a successor as Administrator acceptable to it to take effect immediately upon such termination.

9.3     Upon the resignation or any termination of the appointment of the Administrator, the Administrator shall be released and discharged from all its obligations under this Agreement (but shall not be released from its liabilities relating to its duties under this Agreement prior to resignation or termination) except for those contained in clauses 13 and 14 hereof.

Attorney Eyes Only

**10.    RESPONSIBILITY OF ADMINISTRATOR AND INDEMNITY BY COMPANY**

10.1    For the purpose of this Section 10, the term "Administrator" or any reference thereto shall be deemed to include each and any of the Administrator, its directors, officers, employees, agents, delegates or affiliates. Each person included within the term "Administrator" is entitled to the benefit of the agreements and indemnities contained in this Section 10 and may enforce the provisions of, and the rights, agreements and indemnities provided under, this Section 10 on behalf of any person included within the term "Administrator".

10.2    The Administrator shall not incur liability by refusing in good faith to perform any duty or obligation herein which in its reasonable judgment is improper or unauthorised provided that in performing its duties and obligations pursuant to this Agreement it shall not be required at any time to do or procure the doing of anything contrary to, or in breach of, or which constitutes any offence under, any applicable law or regulation then in force.

10.3    The Administrator shall not, in the absence of gross negligence, willful default or fraud on its part be liable to the Company or to any Shareholder for any act or omission, in the course of, or in connection with, the services rendered by it under this Agreement or for any loss or damage which the Company may sustain or suffer as the result of, or in the course of, the discharge by the Administrator of its duties under or pursuant to this Agreement.

10.4    The Administrator shall not be responsible for the loss or damage to any documents or property of the Company in the possession of the Administrator or for any failure to fulfil its duties hereunder, if such loss, damage or failure shall be caused by or directly or indirectly be due to war, enemy action, the act of government or other competent authority, riots, civil disturbance, rebellion, storm, tempest, accident, fire, strike, explosion or lock-out or any occurrence or event beyond the control of the Administrator.

10.5    The Company agrees to indemnify the Administrator from and against any and all liabilities, obligations, losses, damages, penalties, actions, judgments, suits, costs, expenses or disbursements of any kind or nature whatsoever (other than those resulting from the gross negligence, willful default or fraud on the part of the Administrator) which may be imposed on, incurred by, or asserted against the Administrator in performing its obligations or duties hereunder.

10.6    To the extent that the Administrator relies on information supplied by the Manager or any brokers or other financial intermediaries engaged by the Company in connection with performing its obligations hereunder, the Administrator's liability for the accuracy of any calculations utilising such information is limited to the accuracy of its own computations. The Administrator is not liable for the accuracy of the underlying data provided to it.

10.7    The Company acknowledges the Administrator shall have no discretionary authority or control with respect to the management or disposition of financial instruments held by the Company and shall not be required to undertake any action that could possibly characterize the Administrator as a fiduciary, as defined in Section 3(21) of the U.S. Employee Retirement Income Security Act of 1974, as amended ("ERISA"), of any "employee benefit plan" (within the meaning of Section 3(3) of ERISA) or "plan" (within the meaning of Section 4975 (e)(1) of the U.S. Internal Revenue Code of 1986, as amended) whose assets are comprised in the Company, directly or indirectly.

**11.    FRAUD**

In the absence of gross negligence, or willful default and provided that the directors, officers, employees, agents, delegates or affiliates of the Administrator are not parties to any fraud, the Administrator shall not be responsible to the Company for any action taken by the Administrator upon the faith of any forged or fraudulent document in any case where, had the document not been

Attorney Eyes Only

forged or fraudulent, the action taken by the Administrator would have been the normal and reasonable action to be taken.

**12.  REPUTATION**

Except for acts incidental to the enforcement of its rights pursuant to this Agreement, neither party to this Agreement may do or commit any act or matter or thing which would or might prejudice or bring into disrepute in any manner the business or reputation of either of the parties or any director of any such party.

**13.  CONFIDENTIALITY**

Neither of the parties to this Agreement shall, unless compelled so to do by any court of competent jurisdiction or any governmental or regulatory body, either before or after the termination of this Agreement, disclose any information relating to the other party without the prior written consent of the other party unless such information is already in the public domain other than as a result of a breach of this clause. It is agreed that such consent shall be deemed to have been given in the case of disclosure to a party's professional advisers, directors, officers, employees, agents or delegates for the purpose of the proper and effective carrying on of this Agreement.

**14.  DELIVERY OF DOCUMENTS**

14.1    Upon the termination of this Agreement the Administrator shall, subject to clause 14.2, hand over to the Company the Register and all other documents in the possession of the Administrator in its capacity as Administrator or in relation to the functions assigned to it hereunder.

14.2    The Administrator shall not be required to make any delivery of documents under clause 14.1 until full payment shall have been made to the Administrator by the Company of its fees, compensation, costs and expenses due to it under the provisions of this Agreement.

**15.  NOTICES**

Any notice, instruction or other instrument required or permitted to be given under this Agreement may be delivered in person or delivered by prepaid registered mail or by fax to the parties at the addresses set out in this document or such other address as may be notified in the manner provided hereunder by either party from time to time.

Unless shown to have been received earlier, such notice, instruction or other instrument shall be deemed to have been delivered, in the case of personal delivery, at the time it is left at the premises of the party, in the case of a registered letter at the expiration of five (5) business days after posting, and, in the case of fax, one hour after sending; provided that if any document is sent by fax outside normal business hours it shall be deemed to have been received at the next time after delivery when normal business hours commence.  Evidence that the notice, instruction or other instrument was properly addressed, stamped and put into the post shall be conclusive evidence of posting.

**16.  SEVERABILITY**

It is hereby agreed that, in the event any particular provision or provisions of this Agreement are determined to be unenforceable or void by a court of competent jurisdiction, such provision or provisions shall be deemed to be severable and such determination shall solely affect such provision or provisions and shall not, in itself, impair or render void or unenforceable the remaining provisions of this Agreement.

Attorney Eyes Only

KING_DIL_000196
KGFSAC0000196

17.    **ASSIGNMENT**

Except as provided in Clause 5.2, neither the benefit nor the burden of this Agreement shall be assigned by either party save with the consent of the other party to this Agreement. Notwithstanding the foregoing, in the event of a transfer of fifty percent (50%) or more of the ownership of the voting stock of the Administrator within any ninety day (90) period ("Change of Ownership"), this Agreement shall be binding upon, and shall inure to the benefit of, the Administrator's successor following any such Change of Ownership.

18.    **PROPER LAW**

This Agreement shall be governed by and construed in accordance with the laws of the British Virgin Islands.

19.    **COUNTERPARTS**

This Agreement may be executed in one or more counterparts all of which taken together shall be deemed to constitute one and the same instrument.

Attorney Eyes Only

KING_DIL_000197
KGFSAC0000197

Signed as an agreement on behalf of the parties on the date set out in this document.

SIGNED BY                                    )
duly authorised                              )
for and on behalf of                         )
KINGATE EURO FUND, LTD                       )
                                             )    _____
in the presence of:                          )    *signature*
                                             )


SIGNED BY                                    )
duly authorised                              )
for and on behalf of                         )
KINGATE MANAGEMENT LIMITED                   )
                                             )    _____
in the presence of:                               *signature*


SIGNED BY                                    )
duly authorised                              )
for and on behalf of                         )
BISYS HEDGE FUND SERVICES                    )
LIMITED                                      )    _____
                                             )    *signature*
in the presence of:                          )

Attorney Eyes Only

## FEE SCHEDULE

For the purposes of this Fee Schedule "Combined Net Assets" shall mean the aggregate combined net assets of the Kingate Funds (as defined below) before deduction for accrued performance fees at the end of the prior month adjusted for subscriptions and redemptions at the start of the current month.

Fund Administration (including accounting and investor record keeping):

(a) On the first $2 billion of Combined
    Net Assets of the Kingate Funds          3 basis points (.03%) of Combined Net Assets per annum

(b) On Combined Net Assets of the Kingate
    Funds over $2 billion                    2 basis points (.02%) of Combined Net Assets per annum

"Kingate Funds" shall mean as of the date of this agreement the Company and Kingate Global Fund, Ltd together.


Additionally, the Administrator shall charge its monthly out of pocket expenses (including communications, postage, printing, etc.) as they are incurred. The Administrator's fees are billed monthly and payable upon receipt. The Administrator's fees are reviewed following an initial period of six months and annually thereafter.

If at such point the service requirements are materially changed from the original assumptions the Administrator reserves the right to renegotiate these fees.

This fee schedule assumes that the Administrator will perform 12 official valuations per annum. To the extent the Company requires a second valuation in a month an additional charge of $3,000 will be assessed.


_____    Initial here to Accept

Attorney Eyes Only

KING_DIL_000199
KGFSAC0000199