**EXHIBIT GG**

## **REGISTRAR AGREEMENT**

THIS AGREEMENT is made the /ˢᵗ day of May Two Thousand

BETWEEN:

(1) **KINGATE GLOBAL FUND, LTD.**, a company incorporated under the laws of the British Virgin Islands whose registered office is at Bison Court, P.O. Box 3460, Road Town, Tortola, BVI (the "Company"); and

(2) **KINGATE MANAGEMENT LIMITED**, a company incorporated under the laws of Bermuda whose principal office is at 99 Front Street, Hamilton HM 11, Bermuda (the "Manager").

(3) **HEMISPHERE MANAGEMENT LIMITED**, a company incorporated under the laws of Bermuda whose principal office is at Hemisphere House, 9 Church Street, Hamilton HM 11, Bermuda (the "Administrator") of the third part.

WHEREBY IT IS AGREED AND DECLARED as follows :-

1. INTERPRETATION

1.1  In this Agreement the following words and expressions shall, where not inconsistent with the context, have the following meanings respectively:-

"Registrar Fee" means the fee payable to the Administrator calculated in accordance with Clause 5.1;

"Articles" means the Memorandum and Articles of Association for the time being of the Company, any reference herein to an Article shall be taken to refer to the appropriate article unless otherwise specified;

"Auditors" means PricewaterhouseCoopers or any other auditor appointed as such by the Directors;

"Business Day" means any day on which the central banking systems of the U.S. and Bermuda are open and operating;

"Connected Person" of a company means and includes (a) any person or company beneficially owning, directly or indirectly, 20 per cent or more of the issued ordinary share capital of that company or able to exercise, directly or indirectly 20 per cent or more of the total votes in that company;  (b) any person or company controlled by a person who or company which meets one or both of the descriptions given in (a); (c) any company 20 per cent or more of whose issued ordinary share capital is beneficially owned, directly or indirectly by that company and any Connected Person of that company (as defined in (a), (b) or (d) of this definition) taken together or any company 20 per cent or more of the total votes in which can be exercised, directly or indirectly, by that company and any such Connected Person thereof (as defined in (a), (b) or (d) of this definition taken together;  (d) any employee, director or officer of that company or of any Connected Person of that company (as defined in (a), (b) or (c) of this definition); (e) any spouse, minor child or step-child of the persons referred to in (a), (b) and (d); and (f) any trustee of a trust, the beneficiaries of which are persons falling into (a), (b), (d) and (e);

"Custodian" means the body corporate acting in the capacity of custodian of the Investments for the time being;

"Directors" means the Directors of the Company from time to time;

"Dollars ($) and Cents" means U.S. dollars and cents;

"Eligible Investor" means a person who is entitled to own Shares under the Articles;

"Investments" means all the assets and rights from time to time of the Company held in accordance with the Articles;

"Laws" means the laws of Bermuda and any other applicable laws and regulations for the time being in force;

"Management Agreement" means the co-management agreement for the time being subsisting to which the Company, Tremont (Bermuda) Limited and the Manager are parties and relating to the appointment and the duties of the co-managers;

"Redemption Date" means the last Business Day of each calendar month;

KING_000008348

"Secretary of the Company" means the person from time to time nominated by the Administrator and appointed by the Directors to act as the Secretary of the Company pursuant to Clause 3.7 of this Administration Agreement;

"Shares" means the Common Shares of the Company offered at a price of net asset value per share;

"Share Register" means the official list of shareholders of the Company maintained in accordance with the laws of the British Virgin Islands;

"Share Transaction" means a subscription for shares, a redemption of shares, a transfer of shares or any other transaction requiring an entry or amendment to be made to the Share Register of the Company;

"Subscription Date" means the first Business Day of the month;

1.2     Any reference to the Company, the Manager or the Custodian includes a reference to its or their duly authorised agents or delegates.

1.3     References to Clauses are to Clauses of this Agreement.

1.4     The headings to the Clauses of this Agreement are for convenience only and shall not affect the construction or interpretation thereof.

1.5     Unless the context otherwise requires, words and expressions contained in this Agreement relating to the Company shall bear the same meaning as in the Articles of the Company PROVIDED THAT any alteration or amendment of either the Company's Articles shall not be effective for the purposes of this Agreement unless the party hereto affected (to the extent that its rights or duties hereunder are affected by such alteration or amendment) shall, by endorsement hereon or otherwise, have consented thereto.

2.      APPOINTMENT OF THE ADMINISTRATOR

The Manager HEREBY APPOINTS the Administrator and the Administrator shall act with effect from the date hereof as Registrar and Transfer Agent of the Company upon the terms hereinafter contained and in accordance with the Laws and the Articles of the Company until its appointment shall be terminated as hereinafter provided and the Administrator hereby accepts such appointment and agrees to assume the obligations to the Company and the Manager set forth herein.

3.      FUNCTIONS, POWERS AND OBLIGATIONS OF THE REGISTRAR

Acting as Registrar of the Company including without prejudice to the generality of the foregoing:-

3.1     the provision of facilities for the certification of Shares and for the registration or the recording of the issue, redemption and transfer of shares;

3.2     the maintenance of a register for Shares (the "Register");

3.3     the registration of shareholders on the occasion of each issue and transfer of Shares which are in registered form and the cancellation of entries in the Register in respect of Shares redeemed;

3.4     the registration of probates, letters of administration, powers of attorney, certificates of death or marriage, stop notices and other instruments affecting the legal ownership of the Shares;

3.5     the cancellation of share certificates representing Shares which have been redeemed or transferred;

3.6     the preparation and authentication of share certificates (which shall be provided in blank by the Company) and the despatch to the persons entitled thereto or to the order of such persons or to their agent;

3.7     the retention for a period of six years from the date thereof of all application forms for the subscription of, written instructions for the redemption of and the instruments for the transfer of any Shares or other similar documents and for a period of six years from the date of cancellation, all share certificates which have been cancelled;

3.8     the preparation of lists of the holders of Shares for inclusion in any annual or other return required to be made by the Company;

3.9     the holding of the Register open for inspection in accordance with the Articles of the Company;

3.10    generally performing all such functions as are usually performed by registrars and doing all such acts and things as may be incidental to the above duties or any of them.

4.      CONTINUATION AND EXERCISE OF ADMINISTRATOR'S POWERS

4.1    The authorities herein contained are continuing ones and shall remain in full force and effect until revoked by termination of this Agreement as hereinafter provided, but such revocation shall not affect any liability in any way resulting from transactions initiated prior to such revocation.

4.2    The Administrator will at all times exercise and perform the powers, rights and duties (or any of them) conferred upon it by this Agreement, any supplemental agreement, or otherwise by the Directors within Bermuda (or such other place or places as the Directors may from time to time approve) and in particular (but without prejudice to the generality of the foregoing) will hold all meetings at which such powers, rights and duties (or any of them) are exercised or performed within Bermuda or any such other place or places as aforesaid and any decision taken or directions given by the Administrator will be taken and be given within Bermuda or such other place or places as aforesaid. The Administrator will not carry on in relation to the Company any business outside Bermuda (other than in any place or places as the Directors may from time to time approve for such purpose, such approval not to be unreasonably withheld) if by so doing the Administrator would cause the Company to become liable to pay any taxes which it would not otherwise be liable to pay.

5.    FEES OF THE ADMINISTRATOR

5.1    In consideration of the services to be undertaken by the Administrator hereunder the Administrator shall be entitled to receive from the Company a Registrar and Transfer Agent fee of $130 per each Share Transaction. The said fee shall be payable monthly in arrears.

5.2    In the event of any dispute arising as to the amount of the Administrator's fees hereunder, the same shall be referred to the Auditors for settlement, who shall be entitled to make such further or other adjustments as may in the circumstances appear to them to be appropriate and whose decision shall be regarded as the decision of an expert and not of an arbitrator and shall be binding and final upon the parties hereto.

6.    EXPENSES

6.1    Subject to Clause 6.2, the Administrator shall pay the expenses incurred by it in connection with the performance of its services hereunder unless the Manager otherwise agrees in any particular case.

6.2    The Company shall pay itself, or if paid by the Administrator, will reimburse the Administrator in respect of all out-of-pocket expenses incurred by it in the performance of its duties including (without limitation):-

   6.2.1    all expenses of and incidental to convening and holding Shareholders' and Directors' meetings of the Company;

   6.2.2    the cost of minute books and other documentation required by the Laws;

   6.2.3    all charges for postage, telephone, telex, telecopying, faxing and cable incurred by the Administrator in the proper performance of its duties hereunder.

7.    SERVICES OF THE ADMINISTRATOR NOT TO BE EXCLUSIVE

The services of the Administrator to the Company hereunder are not to be deemed exclusive and the Administrator shall be free to render similar services to others so long as its services hereunder are not impaired thereby and to retain for its own use and benefit all fees or other monies payable thereby and the Administrator shall not be deemed to be affected with notice of or to be under any duty to disclose to the Company any fact or thing which comes to the notice of the Administrator or any servant or agent of the Administrator in the course of the Administrator rendering similar services to others or in the course of its business in any other capacity or in any manner whatsoever otherwise than in the course of carrying out its duties hereunder.

8.    INTERESTS IN THE ADMINISTRATOR OR THE COMPANY

8.1    It is understood that directors, officers, agents and shareholders of the Company and the Manager are or may be interested in the Administrator as directors, officers or shareholders or otherwise, that directors, officers, shareholders and any client of the Administrator are or may be interested in the Company as directors, officers, shareholders or otherwise and that the Administrator is or may be interested in the Company as shareholder or otherwise and it is hereby acknowledged that no person so interested shall be liable to account for any benefit to any other party by reason solely of such interest.

8.2    The Administrator or any client of the Administrator or any Connected Person of the Administrator or any holding company of the Administrator or any subsidiary of such holding company ("the interested party") may hold, acquire or dispose of any investments upon its own account notwithstanding that the same or similar investments may be held by or for the account of or otherwise connected with the Company and it is hereby acknowledged that no such interested party shall be liable to account for any benefit to any other party by reason solely of such interest.

8.3    Nothing herein contained shall prevent an interested party from selling Investments to or purchasing Investments from or vesting Investments in the Company or from contracting or entering into any financial, banking, currency or other transaction with the Company or any holders of Shares or the shareholders of any company or body any of whose securities are held by or for the account of or otherwise connected with the Company or from being interested in any such sale, vesting, contract or transaction and the interested party shall not be called upon to

KING_000008350

account in respect of any such contract or transaction or benefit derived therefrom provided that nothing herein contained shall permit any such sale or vesting or the entering into of any such contract or transaction as aforesaid with the Company unless such transaction is on the best terms reasonably obtainable.

9. **LIABILITY AND INDEMNITY**

9.1 The Administrator shall not be liable to the Company, or any holder of Shares or otherwise for any error of judgment or for any loss suffered by the Company or any such holder of Shares in connection with the subject matter of this Agreement howsoever any such loss may have occurred unless such loss arises from negligence, willful default, fraud or dishonesty, in the performance or non-performance by the Administrator of its obligations or duties.

9.2 The Administrator shall not be liable to the Manager or any shareholder of the Manager or otherwise for any loss suffered by the Manager or shareholder of the Manager in connection with the subject matter of this Agreement howsoever any such loss may have occurred unless such loss arises from negligence, willful default, fraud or dishonesty, in the performance or non-performance by the Administrator of its obligations or duties.

9.3 The Company hereby undertakes to hold harmless and indemnify the Manager and/or the Administrator against all actions proceedings claims costs demands and expenses which may be brought against suffered or incurred by the Manager and/or the Administrator by reason of their performance or non-performance of their duties to the Company under the terms of this Agreement including all legal professional and other expenses incurred by the Manager and/or the Administrator (except such as shall arise from negligence, willful default, fraud or dishonesty in the performance of such obligations or duties) and in particular (but without limitation) this protection and indemnity shall extend to any loss delay misdelivery or error in transmission of any telexed or telefaxed communication or as a result of acting upon any forged document or signature but not tax on the overall income or profits of the Manager or the Administrator.

9.4 The Administrator hereby undertakes to hold harmless and indemnify the Company or the Manager against all actions proceedings claims costs demands and expenses which may be brought against suffered or incurred by the Company or the Manager by reason of their performance or non-performance of their duties under the terms of this Agreement (other than due to negligence, willful default, fraud or dishonesty on the part of the Company or the Manager or persons designated by them) including all legal professional and other expenses incurred by the Company or the Manager or persons designated by them in the performance of their obligations or duties and including indemnity obligations owed by the Company or the Manager to persons designated by them (except such as shall arise from negligence, willful default, fraud or dishonesty in the performance of such obligations or duties) and in particular (but without limitation) this protection and indemnity shall extend to or any loss delay misdelivery or error in transmission of any telexed or telefaxed communication or as a result of acting upon any forged document or signature, but not tax on the overall income or profits of the Company or the Manager.

9.5 The Manager hereby undertakes to hold harmless and indemnify the Company or the Administrator against all actions proceedings claims costs demands and expenses which may be brought against suffered or incurred by the Company or the Administrator by reason of their performance or non-performance of their duties under the terms of this Agreement (other than due to negligence, willful default, fraud or dishonesty on the part of the Company or the Administrator or persons designated by them) including all legal professional and other expenses incurred by the Company or the Administrator or persons designated by them in the performance of their obligations or duties and including indemnity obligations owed by the Company or the Administrator to persons designated by them (except such as shall arise from negligence, willful default, fraud or dishonesty in the performance of such obligations or duties) and in particular (but without limitation) this protection and indemnity shall extend to or any loss delay misdelivery or error in transmission of any telexed or telefaxed communication or as a result of acting upon any forged document or signature, but not tax on the overall income or profits of the Company or the Administrator.

9.6 Notwithstanding any other provision of this Agreement, the Administrator shall not be liable to the Company, any holder of Shares or otherwise for any taxation assessed upon or payable by the Company wheresoever the same may be assessed or imposed and whether directly or indirectly except for such taxation or shall be attributable to negligence, willful default, fraud or dishonesty in the performance or non-performance by the Administrator of its obligations or duties. The Company shall indemnify and keep indemnified the Administrator from and against all taxes not attributable to negligence, willful default, fraud or dishonesty as aforesaid (wheresoever and by whomsoever imposed) on profits or gains of the Company which may be assessed upon or become payable by the Administrator and against all costs claims demands actions and proceedings in connection therewith.

9.7 For the avoidance of doubt it is hereby agreed and declared that reference to the Administrator in this Clause shall be deemed to include references to the officers and servants of the Administrator.

9.8 Any indemnity expressly given to the Company or the Manager or the Administrator in this Agreement is in addition to and without prejudice to any indemnity provided by the Laws.

10. **DELEGATION AND ASSIGNMENT**

10.1 The Administrator shall have full power to delegate the whole or any part of its functions hereunder to any person firm or company with the approval of the Board of Directors. The Administrator shall (unless the Directors shall otherwise agree in any particular case) exercise its power of delegation only on terms which include a provision binding on the Appointee in terms similar in all respects to this Agreement.

KING_000008351

10.2    Neither the responsibilities nor liabilities under this Agreement can be assigned by the Administrator without the approval of the Board of Directors.

11.    LEGAL ACTION BY THE ADMINISTRATOR

The Administrator shall not be required to take any legal action unless fully indemnified to its reasonable satisfaction for all costs and liabilities that may be incurred or suffered by the Administrator and not attributable to its negligence, willful default, fraud or dishonesty in the performance or non-performance of its obligations or duties and if the Company requires the Administrator to take any action of whatsoever nature which in the reasonable opinion of the Administrator might make the Administrator liable for the payment of money or liable in any other way the Administrator shall be and be kept indemnified in any reasonable amount and form satisfactory to the Administrator as a prerequisite to taking action.

12.    RESIGNATION AND TERMINATION

12.1    The Administrator shall be entitled to resign its appointment hereunder:-

12.1.1    by giving no less than three months' notice in writing to the Manager to expire at any time;

12.1.2    at any time if the Company shall go into liquidation (except a voluntary liquidation for the purpose of reconstruction or amalgamation upon terms previously approved in writing by the Administrator) or be unable to pay its debts or commit any act of bankruptcy under the laws of the British West Indies or if a receiver is appointed of any of the assets of the Company or if some event having an equivalent effect occurs;

12.1.3    at any time if the Company shall commit any material breach of its obligations under this Agreement and (if such breach shall be capable of remedy) shall fail within thirty days of receipt of notice served by the Administrator requiring it so to do to make good such breach;

12.1.4    at any time if the present Manager shall cease to be the Manager of the Company for any reason.

12.2    The appointment of the Administrator may be terminated as hereunder:-

12.2.1    The Manager may terminate the appointment of the Administrator as Administrator of the Company by giving not less than three months' notice in writing to the administrator to expire at any time.

12.2.2    The Manager may terminate the appointment of the Administrator at any time by giving notice in writing to the Administrator in any of the following events:-

12.2.2.1    If the Administrator goes into liquidation (except a voluntary liquidation for the purpose of reconstruction or amalgamation upon terms previously approved in writing by the Company) or is unable to pay its debts or commits any act of bankruptcy under the laws of Bermuda or if a receiver is appointed of any of the assets of the Administrator or if some event having an equivalent effect occurs;

12.2.2.2    If the Administrator shall commit any material breach of its obligations under this Agreement and (if such breach shall be capable of remedy) shall fail within thirty days of receipt of notice served by the Company requiring it so to do to make good such breach;

12.2.2.3    If the Administrator ceases to be permitted to act as such under the Laws.

12.3    The appointment of the Administrator shall automatically terminate forthwith if the Administrator shall become or be deemed to become resident for tax purposes or carry on business within the United States or the United Kingdom or shall carry on any business elsewhere outside Bermuda and Cayman Islands (other than in any place or places as may from time to time be approved by the Directors for such purpose, such approval not to be unreasonably withheld) in circumstances which cause the Company to become liable to pay any taxes which it would not otherwise be liable to pay.

12.4    On termination of the appointment of the Administrator under the provisions of this Clause the Administrator shall be entitled to receive the fees referred to in Clause 5.1 but shall not be entitled to compensation in respect of such termination; and the Administrator shall deliver or procure to be delivered to the Company, or as it shall direct, all books of accounts, records, other registered correspondence, documents and assets relating to the affairs of or belonging to the Company in the possession of or under the control of the Administrator and shall take all necessary steps to vest in the Company or any new Administrator any assets previously held in the name of or to the order of the Administrator on behalf of the Company and shall not be entitled to any lien in respect of any of the foregoing.

13.    CONFIDENTIALITY AND REPUTATION

13.1    None of the parties hereto shall (except under compulsion of law or in accordance with the Laws) either before or after the termination of this Agreement disclose to any person not authorised by the relevant party to receive the same any confidential information relating to any other party or to the affairs of such party of which the party disclosing the same shall have become possessed during the period of this Agreement and each party shall use all reasonable endeavours to prevent any such disclosure as aforesaid.

KING_000008352

13.2 No party shall do or suffer any act or matter or thing which would or might prejudice or bring into disrepute the business or reputation of any other party.

14. MISCELLANEOUS PROVISIONS

14.1 No failure on the part of any party to exercise, and no delay on the part of any party in exercising, any right or remedy under this Agreement will operate as a waiver thereof nor will any single or partial exercise of any right or remedy preclude any other or further exercise thereof or the exercise of any other right or remedy. The rights and remedies provided in this Agreement are cumulative and not exclusive of any rights or remedies provided by law.

14.2 Any provision of this Agreement may be amended only if the parties so agree in writing.

14.3 The illegality, invalidity or unenforceability of any provision of this Agreement under the law of any jurisdiction shall not affect its legality, validity or enforceability under the law of any other jurisdiction or the legality, validity or enforceability of any other provision.

14.4 The Company shall not use the Administrator's name in any document or other publicity material without the prior consent of the Administrator (such consent not to be unreasonably withheld or delayed) which consent may be given generally in respect of agreed wording to be included in an agreed list of documents.

14.5 Except to the extent that the Laws admit variations by contract and are so varied by the terms of this Agreement, the powers, duties, rights and obligations of the parties under this Agreement shall be overridden by, and to the extent that they may conflict, be subject to, the Laws.

14.6 The Administrator will not cause or take any action as a consequence of which, the Company or the Manager will become the subject of United States or United Kingdom taxation.

15. NOTICES

Any notice given hereunder shall be in writing and shall be served by hand at or by being sent by prepaid airmail post to the registered office for the time being of the addressee and any such notice shall if so posted be deemed to be served seven days after posting. Evidence that the notice was properly addressed stamped and put into the post shall be conclusive evidence of posting.

16. LAW OF THE CONTRACT

16.1 This Agreement shall be governed by and construed in accordance with the Laws of Bermuda.

16.2 The Company, the Manager and the Administrator hereby irrevocably submits to the non-exclusive jurisdiction of the courts of Bermuda for the settlement of any dispute or difference arising between the parties hereto.

16.3 The Manager hereby irrevocably appoints the Administrator as its authorised agent to accept and acknowledge on its behalf service of any and all notices which may be served at any time by any person (other than the Administrator) on the Company.

IN WITNESS WHEREOF this Agreement has been entered into the day and year first above written.

KING_000008353

SIGNED by                      )
for and on behalf of           )
                               )
KINGATE GLOBAL FUND, LTD.      )      *[signature]*
                               )
in the presence of:-           )

*[signature: Kenneth H Humphries]*

SIGNED by                      )
for and on behalf of           )
                               )
KINGATE MANAGEMENT LIMITED     )      *[signature]*
                               )
in the presence of:-           )

*[signature: Kenneth H. Humphries]*

SIGNED by                      )
for and on behalf of           )
                               )
HEMISPHERE MANAGEMENT LIMITED  )      *[signature]*
                               )
in the presence of:-           )

KING_000008354