# EXHIBIT II



# HEMISPHERE MANAGEMENT LIMITED

He ere House, 9 Church Street
P.O. Box HM , Hamilton HM DX, Bermuda.
Telephone: (809) 295-9166
Telex: 3584 HML BA

*FATOR.*
*Factual*

Fax: (809) 292-6145

Sender's Name:   CHRISTOPHER WETHERHILL

Message For:    FRED T. BUSK III

Of:    295 6180

This is sheet no. 1 of THREE

Message transmitted on 22 February 1994

If all sheets of this transmission are not well received please call the sender as soon as possible.

DEAR MR. BUSK:

RE: KINGATE GLOBAL FUND, LTD.

PLEASE FIND ATTACHED THE REVISED FEE PROPOSAL FOR THE CAPTIONED COMPANY, DULY SIGNED BY MYSELF AS A DIRECTOR.

REGARDS,

KRS –

Signed Kingate Proposal for file –

FTB

FADSAC0060003



February 21, 1994

1. **INCEPTION FEE**

   A great deal of time is required when establishing a mutual fund. Officers of the Fund Administration Department are available to review offering memoranda, assist with preparation of Agreements, liaise with lawyers and accountants and generally to assist in the launch, subsequent issue or listing on an Exchange. This type of professional work will be charged out based on time and charges incurred subject to the following minimum :-

   Inception Fee                                                $ 2,000.00

2. **CUSTODIAN SERVICES**

   Our fee for Custodian services is comprised of three bases:

   A safe keeping charge of 10 basis points (0.10%) per annum of the gross asset value of the Fund calculated on each Valuation Day.

   Minimum Annual Custodian Fee                                  $10,000.00

   A transaction fee of 1/4 of 1% of the consideration of the trade subject to a maximum of $250 per trade.

   The right to recover all sub-custodian charges which will be charged directly to the fund.

1

FADSAC0060004



February 21, 1994

### 3. DIRECTORS' FEES

For each Officer provided by the Bank of Bermuda     $1,000.00 each

### 4. DISBURSEMENTS

All out-of-pocket expenses incurred on behalf of a fund or its management company are charged to the appropriate entity. These expenses include the cost of communications, postage, printing and out-of-pocket expenses involved in the course of our duties, e.g. Stamp Duty, correspondent bank charges, etc.



### 5. REVIEW PERIOD

It should be noted that these fees are usually subject to review after six months from incorporation of a new fund and annually thereafter.

Accepted by: _[signature]_

Date: 22/2/94

2

FADSAC0060005

DATED                                                                       , 1994
------------------------------------------

BETWEEN:

KINGATE GLOBAL FUND, LTD.

- and -

THE BANK OF BERMUDA LIMITED

-and-

KINGATE MANAGEMENT LIMITED

------------------------------------------
CUSTODIAN AGREEMENT
------------------------------------------

FADSAC0060006

**BIBLE**

## CUSTODIAN AGREEMENT

**THIS AGREEMENT** is made this 1st day of March One Thousand Nine Hundred and Ninety-Four **B E T W E E N  KINGATE GLOBAL FUND, LTD.** incorporated in and under the laws of the British Virgin Islands whose registered office is c/o HWR Services Limited, Craigmuir Chambers, P.O. Box 71, Road Town, Tortola, British Virgin Islands (hereinafter called the "Company") of the first part and **THE BANK OF BERMUDA LIMITED** whose registered office is at Bank of Bermuda Building aforesaid (hereinafter called the "Custodian") of the second part and **KINGATE MANAGEMENT LIMITED** whose registered office is at Hemisphere House, 9 Church Street, P.O. Box HM951, Hamilton HM DX, Bermuda of the third part.

W H E R E A S:-

(A)  The Company has as its principal object to carry on business as a mutual fund company and is desirous of being provided with custodian services.

(B)  The Manager has been or is about to be appointed by the Company to administer its affairs.

(C)  The Manager is to select a number of investment managers who will be appointed by the Company from time to time to manage certain assets of the Company.

(D)  The Custodian is willing to provide the Company with such custodial services on the terms and conditions hereinafter contained.

NOW IT IS HEREBY AGREED as follows:-

1.  **INTERPRETATION**

(A)  In this Agreement and in all amendments hereto the following words and expressions shall, where not inconsistent with the context, have the following meanings respectively:-

"Bye-laws" shall mean the Memorandum of Association and the Bye-laws of the Company for the time being in force.

"Investment Advisors" shall mean the investment managers who shall be selected by the Manager to manage certain assets of the Company.

"Manager" shall mean Kingate Management Limited or such other person as may from time to time be appointed manager by the Company.

"Proper Instructions" shall mean written instructions from the Company or the Manager in respect of any of the matters referred to in this Agreement signed in the name of the Company or the Manager by such one or more Directors of the Company or the Manager as their respective Boards of Directors may from time to time have authorised, or any other person or persons duly authorised to sign by the Board of Directors of the Company or the Manager.

"Securities" shall mean listed and unlisted equity and equity related securities including convertible bonds and warrants; shares or units in collective investment schemes; debt securities including government and corporate issues and warrants or options thereon; bank deposits and certificates of deposit.

"Subsidiary" shall have the meaning assigned to it by Section 86 of the Companies Act 1981 or any amendment, modification or reenactment thereof.

(B)    Unless the context otherwise requires words and expressions contained in this Agreement shall bear the same meaning as in the Bye-laws of the Company PROVIDED THAT any alteration or amendment of the Bye-laws shall not be effective for the purposes of this Agreement unless the Custodian shall have assented thereto.

(C)    Unless the context otherwise requires words importing the singular number shall include the plural and vice versa, words importing masculine gender shall include the feminine and words importing persons shall include firms and companies and vice versa.

(D)    The division of this Agreement into sections, clauses and sub-clauses and the insertion of headings are for convenience of reference only and shall not affect the construction or interpretation hereof.

2.    APPOINTMENT OF CUSTODIAN

The Company HEREBY APPOINTS the Custodian to be and the Custodian HEREBY AGREES to act as custodian of the Company in accordance with the Bye-laws and the terms and conditions hereinafter contained from the date hereof. The Company agrees to deliver to the Custodian all Securities and cash owned by it, and all payments of income, payments of principal or capital distributions received by it with respect to the Securities.

3.    NAMES, TITLES AND SIGNATURES

(A)    Forthwith after execution of this Agreement the Company will certify and will procure the Manager to certify to the Custodian the names and signatures of the persons authorised to sign any Proper Instructions and generally to give instructions hereunder to the Custodian and shall deliver or procure the delivery to the Custodian of a certified copy of a resolution of the respective Board of Directors of the Company and the Manager containing any such authority and a certified copy of the Bye-laws.

(B)    The Company shall and shall procure that the Manager shall promptly certify to the Custodian any changes that may be made from time to time in the persons so authorised.

FADSAC0060008

4. **DUTIES OF THE COMPANY**

(A) The Company shall provide the Custodian with any amendments to its Bye-laws.

(B) The Company shall and shall procure that the Manager will deliver at the Custodian's request within five business days (or such other time as is agreed between the parties hereto) of each valuation of net assets of the Company a schedule of cash and Securities comprised in the investment portfolio of the Company as at the date of such valuation showing the type and amount of each investment and its value determined in accordance with the provisions of the Bye-laws for the purpose of ascertaining the subscription and redemption prices of a share of the Company and giving details of all purchases and sales effected since the date of the last such schedule and such schedules shall be certified as complete and correct by a responsible officer of the Manager.

(C) The Company shall and shall procure that the Manager will promptly deliver to the Custodian any management letter prepared by the Auditor of the Company.

5. **RECEIPT AND DISBURSEMENT OF CASH**

(A) The Custodian shall open and maintain a bank account or bank accounts in its books in the name of the Company and, if requested by Proper Instructions and subject to applicable laws, a separate bank account or accounts in the name of the Custodian for the benefit of the Company outside Bermuda with such bank or banks and in such place or places as may from time to time be agreed between it and the Manager. The Custodian shall hold in such bank account or bank accounts, subject to the provisions hereof, all cash received by it from or for the account of the Company. The Custodian shall make or procure the making of payments or cash out of such account or accounts on behalf of the Company only:-

    (a) upon the purchase of Securities for the account of the Company and the delivery of such Securities to or to the order of the Custodian or anyone nominated by the Custodian in accordance with Clause 9 or in proper form for transfer;

    (b) for the redemption of shares of the Company pursuant to the Bye-laws;

    (c) for the payment of interest and dividends by the Company or the payment by the Company of taxes, management, custodian, secretarial and registrar and subscription and redemption agents fees or other operating expenses (including, without limitation thereto, fees for legal, accounting and auditing services, directors' remuneration, brokerage and commissions);

    (d) for payments in connection with the conversion, exchange or surrender of Securities owned or subscribed for on behalf of the Company held by or to be delivered to the Custodian;

FADSAC0060009

(e) for the transfer of cash from one bank account as aforesaid to another bank account as aforesaid or for deposit;

(f) for payments in connection with insuring Securities or in providing for the safekeeping thereof otherwise than in the vault of the Custodian;

(g) for payments of interest and payment of principal on all borrowing;

(h) for payments in connection with any margin calls;

(i) for payments in connection with any stock or other lender of Securities; and

(j) for other proper corporate purposes.

Before making any such payment the Custodian shall receive (and may rely upon), in the case of a payment permitted under the terms of items (a), (b), (c), (d), (e), (f), (g), (h) and (i) of this sub-clause Proper Instructions directing such payment, naming the person or persons to whom such payment is to be made and specifying the amount of, and the time by which, such payment is to be made and such other information as may be appropriate to allow the Custodian to effect the relevant payment in proper form, or, in the case of payment for a purpose permitted under the terms of item (j) of this sub-clause a copy of a resolution of the Board of Directors or of a Committee of the Board of Directors duly authorised certified by two Directors of the Company setting forth the purpose for which such payment is to be made, declaring such purpose to be a proper corporate purpose, naming the person or persons to whom such payment is to be made stating the amount of, and the time by which, such payment is to be made and stating all relevant information as aforesaid.

(B) The Custodian is hereby authorised to endorse and collect all cheques, drafts or other orders for the payment of money received by the Custodian for the account of the Company.

6. RECEIPT OF SECURITIES

(A) Except as provided in sub-clause (B) hereof, the Custodian shall record and hold in a separate account in its books all Securities received by it from time to time and shall arrange for all Securities to be deposited in the Custodian's vault or otherwise held by or to the order of the Custodian as it may think proper for the purpose of providing for the safekeeping thereof. Any expenses of whatever nature incurred by the Custodian in providing safe custody (other than in the vault of the Custodian) shall be payable by the Company.

(B) In connection with the trading activities of the Company and, in particular, the operation of various accounts to be managed by Investment Advisors, the Custodian shall upon receipt of Proper Instructions, open accounts with brokers or other intermediaries in its name on behalf of the Company or in the name of the Company and may make such arrangements concerning the trading authorisations

and other forms of authority with respect to such account or accounts as it deems advisable. The Custodian shall not be responsible for the safekeeping of Securities or cash deposited with or remaining in any such account or accounts and will not be liable for any loss occasioned by reason of the liquidation, bankruptcy or insolvency of such broker or other intermediary.

7.  **TRANSFER OF SECURITIES AND OTHER FUNCTIONS**

(A) The Custodian shall transfer, exchange or deliver in the required form and manner Securities held by it hereunder only:-

- (a) upon sales of such Securities for the account of the Company and receipt by the Custodian of payment therefor;

- (b) when such Securities are called, redeemed or retired or otherwise become payable;

- (c) for examination by any broker selling any such Securities in accordance with "street delivery" custom;

- (d) in exchange for or upon conversion into other Securities alone or other Securities and cash pursuant to any plan or merger, consolidation, reorganisation, recapitalisation or readjustment or otherwise;

- (e) upon conversion of such Securities pursuant to their terms into other Securities;

- (f) upon exercise of subscription, purchase or other similar rights represented by such Securities;

- (g) for the purpose of exchanging interim receipts or temporary securities for definitive securities;

- (h) for the purpose of redeeming in kind shares of the Company;

- (i) for collecting all income and other payments with respect to Securities;

- (j) in connection with stock lending transactions entered into for the account of the Company;

- (k) in connection with short sales entered into by the Company; and

- (l) for other proper corporate purposes.

Except as provided in Clause 8, before making any such transfer, exchange or delivery the Custodian shall receive (and may rely upon) in the case of a matter permitted under the terms of items (a), (b), (c), (d), (e), (f), (g), (h), (i), (j) and (k) of this sub-clause Proper Instructions directing such transfer, exchange or delivery, indicating the Securities in question, stating all relevant information to allow the Custodian to effect in the proper form and manner, as the case may be, such transfer, exchange or delivery or, in the case of a transfer, exchange or delivery permitted under the terms of item (l) of this

FADSAC0060011

sub-clause a copy of a resolution of the Board of Directors or a Committee of the Board of Directors duly authorised certified by two Directors of the Company specifying the Securities in question, setting forth the purpose for which such transfer, exchange or delivery is to be made, declaring such purposes to be proper corporate purposes, naming the person or persons to whom transfer, exchange or delivery of such Securities shall be made and stating all relevant information as aforesaid.

(B)   Upon receipt of Proper Instructions, the Custodian shall (1) receive and retain confirmations or other documents evidencing the purchase or writing of an option by the Company; (2) deposit and maintain in a segregated account, either physically or by book-entry, Securities, cash or other assets in connection with options transactions entered into by the Company; and (3) pay, release and/or transfer such Securities, cash or other assets only in accordance with a notice or other communication evidencing the expiration, termination or exercise of any such option furnished by the Securities or options exchange on which such option is traded or such other organisation, party, broker or dealer as may be responsible for handling such options transactions.

(C)   Upon receipt of Proper Instructions, the Custodian shall (1) receive and retain confirmations evidencing the purchase or sale of a futures contract or an option on a futures contract by the Company; (2) deposit and maintain in a segregated account for the benefit of any futures commission merchant, or pay to such futures commission merchant, Securities, cash or other assets designated by the Company as initial, maintenance or variation "margin" deposits intended to secure the Company's performance of its obligations under any futures contracts purchased or sold or any options on futures contracts written or purchased by the Company, in accordance with the provisions of any agreement or agreements among the Company, the Custodian and such futures commission merchant, designed to comply with the rules of any relevant regulatory body and/or any contract market, or any similar organisation or organisations, regarding such margin deposits; and (3) pay, release and/or transfer Securities, cash or other assets into or out of such margin accounts only in accordance with any such agreements or rules.

(D)   Upon receipt of Proper Instructions, the Custodian shall deliver Securities of the Company to lenders or their agents, or otherwise establish a segregated account as agreed to by the Company and the Custodian, as collateral for borrowings effected by the Company, but only against receipt of the amounts borrowed.

(E)   Upon receipt of Proper Instructions, the Custodian shall enter into foreign exchange contracts or options to purchase and sell foreign currencies for spot and future delivery on behalf and for the account of the Company with such currency brokers or financial institutions as may be specified pursuant to Proper Instructions. The Custodian shall be responsible for the transmission of cash and instructions to

and from the currency broker or financial institution with which the contract or option is made, the safekeeping of all certificates and other documents and agreements evidencing or relating to such foreign exchange transactions and the maintenance of proper records with respect thereto.

(F)    Upon receipt of Proper Instructions, the Custodian shall establish and maintain on its books a segregated account or accounts for and on behalf of the Company, into which account or accounts may be transferred cash and/or Securities or other assets of the Company, including Securities maintained by the Custodian in a book-entry system or foreign depository, said account to be maintained for such purposes as set forth in such Proper Instructions.

8.    THE CUSTODIAN'S ACTS WITHOUT INSTRUCTIONS

Unless and until the Custodian receives Proper Instructions to the contrary, the Custodian shall:-

(a)    present for payment all Securities which are called, redeemed or retired or otherwise become payable and all coupons and other income items held by it for the account of the Company which call for payment upon presentation;

(b)    hold for the account of the Company hereunder all stock dividends, rights and similar securities issued with respect to any Securities held by it hereunder; and

(c)    exchange interim receipts or temporary securities for definitive securities.

In addition, the Custodian shall use reasonable endeavours to sell, if there shall be a satisfactory market therefor, all subscription and other rights issued with respect to Securities held by the Custodian and with respect to which it shall not have received Proper Instructions to the contrary within a reasonable time prior to the expiration of such rights.

9.    REGISTRATION OF SECURITIES

(A)    The Custodian shall register all Securities in respect of which registration shall be necessary in order to perfect the transfer thereof or title thereto as soon as practicable after receipt of the necessary documents by the Custodian, in the name of the Custodian or its nominee as provided in this Clause. The Custodian shall hold the Securities of the Company: (1) by physical possession of the certificates or other instruments representing such Securities in registered or bearer form, or the broker's receipts or confirmations for futures contracts, options and similar investments, or (2) in book entry form by a foreign depository. The Custodian shall identify Securities held by it hereunder as being held for the account of the Company and shall require each agent, sub-custodian and delegate (referred to in Clause 16(B)) to identify Securities held by such agent, sub-custodian and delegate as being held by it, as custodian or

FADSAC0060013

fiduciary, for the account of the Custodian. Any expenses of whatever nature incurred by the Custodian in effecting such registration shall be payable by the Company.

(B)  The Company shall from time to time furnish to the Custodian appropriate instruments to enable the Custodian to hold or deliver in proper form for transfer or to register as provided in sub-clause (A) of this Clause any Securities belonging to the Company.

(C)  The Custodian shall keep or cause to be kept such books, records and statements as may be necessary to give a complete record of all cash and Securities held and transactions carried out by it on behalf of the Company and shall permit the Company and its duly authorised agent(s) or delegate(s) to inspect such books, records and statements at any time during normal business hours on giving reasonable notice to the Custodian.

10.  <u>VOTING AND OTHER ACTION</u>

(A)  The Custodian shall deliver, or cause to be delivered, to the Company copies of all notices, proxies and proxy-soliciting materials received by it or its nominee or agent appointed hereunder in relation to any of the Securities held by any of them for the account of the Company. The Custodian shall not, and shall procure that no nominee of the Custodian shall, vote in respect of any of the Securities held by any of them for the account of the Company, except in accordance with Proper Instructions. The Custodian shall promptly deliver, or cause to be delivered, to the Company all other documents and payments received by it or its nominee or agent affecting or relating to the Securities held by it or its nominee or agent.

(B)  The Company shall not and shall procure that the Manager shall not exercise the Company's power to borrow without notice to the Custodian.

(C)  The Company shall not and shall procure that the Manager shall not enter into underwriting or sub-underwriting contracts in relation to the subscription or purchase of Securities without the prior notification of the Custodian and all commissions and fees payable under such contracts and all Securities acquired thereby shall form part of the assets of the Company.

11.  <u>TAXES</u>

(A)  The Company shall pay or reimburse the Custodian from time to time on demand for any transfer taxes payable upon transfers, exchanges or deliveries of Securities made hereunder.

(B)  The Custodian shall execute such ownership and other certificates and affidavits as may be requested by Proper Instructions from time to time for fiscal tax and other purposes in connection with

08-01789-cgm    Doc 12768-35    Filed 03/04/16    Entered 03/04/16 10:49:19    Exhibit II
Pg 14 of 20

- 9 -
Securities held by it under this Agreement and shall make such applications and reports as may be requested by Proper Instructions from time to time to the competent Bermuda and other authorities in order to apply for or secure any tax or other privileges and benefits to which the Company is or may be entitled in connection with such Securities.

12.  BANKING FACILITIES

(A)  During the continuance of its appointment, the Custodian shall provide banking facilities for the Company and, where any cash at the request of the Manager is placed on deposit with the Custodian in the latter's capacity as a banker, interest shall be allowed thereon in accordance with normal banking practice and as previously agreed with the Manager, but subject thereto the Custodian shall not be bound to pay interest on any cash (whether on current or deposit account) in respect of which the Custodian is indebted to the Company.

(B)  In the event that the Company shall make any arrangements for borrowing or overdraft facilities with the Custodian or any affiliated company of the Custodian, such company shall be entitled to retain for its own use and benefit all profits and advantages which may be derived therefrom.

13.  DEALING BY CUSTODIAN

(A)  Nothing herein contained shall prevent the Custodian from becoming the owner of shares in the Company and holding, disposing or otherwise dealing with the same rights which it would have had if the Custodian were not a party to this Agreement; and the Custodian may buy, hold and deal in any Securities upon its individual account or for the accounts of its own customers notwithstanding that such Securities or similar Securities may be held by or for the account of the Company.

(B)  Nothing herein contained shall prevent the Custodian from contracting or entering into any financial, banking or other transactions with the Company or any shareholder of the Company and the Custodian may be interested in any such contract or transaction and shall not be accountable for any profit arising therefrom.

14.  REMUNERATION OF THE CUSTODIAN

(A)  The Custodian shall be paid by way of remuneration for its services pursuant to this Agreement fees at such rates and at such times as may be agreed from time to time between the Company and the Custodian. Such fees shall be paid in Bermuda in United States Dollars.

(B) The Company will reimburse the Custodian in addition to the fees referred to in sub-clause (A) of this Clause for all out-of-pocket expenses properly incurred by the Custodian in carrying out its duties hereunder.

15. <u>CONCERNING THE CUSTODIAN</u>

(A) The Custodian shall not be required to take any legal action unless fully indemnified to its reasonable satisfaction for costs and liabilities by the Company and if the Company requires the Custodian as custodian to take any action which in the opinion of the Custodian might make the Custodian liable for the payment of money or liable in any other way the Custodian shall be kept indemnified by the Company in any reasonable form as a pre-requisite to taking such action.

(B) In performing its duties hereunder the Custodian may appoint such agents, sub-custodians and delegates as it might think fit to perform in whole or in part any of its duties and discretions (including in such appointment powers of sub-delegation) PROVIDED ALWAYS that notice of any such appointment shall promptly be given by the Custodian to the Company and that notwithstanding any such appointment the Custodian will at all times remain responsible to the Company for any acts or omissions of any such person or persons howsoever appointed as if such acts or omissions were those of the Custodian, but will not be liable for any loss occasioned by reason only of the liquidation, bankruptcy or insolvency of such person. The fees and other remuneration of any agent or delegate appointed by the Custodian shall be paid by the Custodian (except any fees or other remuneration as referred to in Clause 6 hereof) but any fees and other remuneration of sub-custodians shall be paid by the Company.

(C) The Custodian shall deliver to the Manager from time to time at such reasonable intervals as the Manager may require a full account of all receipts and payments made and other action taken by the Custodian pursuant to this Agreement since the date of the last preceding such account together with a list as at the date of such account of all Securities and cash or other indebtedness or obligations held by the Custodian or its agent for or on behalf of the Company or otherwise pursuant to the terms hereof.

(D) The Company as sole beneficial owner of all Securities delivered or to be delivered to the Custodian or its nominee hereunder hereby indemnifies and holds harmless the Custodian from and against all proper costs and expenses and liabilities resulting from the fact that such Securities are registered in the name of the Custodian or its nominee.

(E) The Custodian shall not, in the absence of gross negligence or wilful breach of duty on the part of the Custodian or any agent, delegate or sub-custodian, be liable to the Company or to any shareholder of the Company for any act or omission in the course of or in connection with the services

rendered by it hereunder or for any loss or damage which the Company may sustain or suffer as a result or in the course of the discharge by the Custodian of its duties hereunder or pursuant hereto. In particular, 1) the Company agrees that the Custodian shall be under no liability for any loss or damage caused by unauthorised use or forging of any authorised signature provided that in any such case the Custodian shall have properly investigated such signature in accordance with approved banking practice and by reference to any certified specimen signatures previously delivered to the Custodian by or on behalf of the Company pursuant to Clause 3 or shall have made such other investigations as may have been agreed from time to time in writing between the Manager on behalf of the Company and the Custodian and 2) the Custodian shall not incur any liability by reason of any loss which a shareholder of the Company may suffer by reason of any depletion in the value of net assets of the Company which may result from any borrowing or overdraft facilities made hereunder. The Company agrees to indemnify the Custodian from and against any and all liabilities, obligations, losses, damages, penalties, actions, judgments, suits, costs, expenses or disbursements of any kind or nature whatsoever (other than those resulting from the gross negligence or wilful breach of duty on the part of the Custodian or any agent appointed by it) which may be imposed on, incurred by or asserted against the Custodian in performing its obligations or duties hereunder.

(F) The Custodian shall be under no duty to supervise compliance with restrictions on the investment powers of the Company or to take any action other than as specified in this Agreement with respect to any Securities or cash of the Company held by the Custodian hereunder. The Custodian shall be entitled to receive and act upon any advice of counsel and shall be without liability for any action taken or thing done in good faith in reliance upon such advice.

16.   REFUSAL TO ACT

The Custodian shall be entitled (subject to notice having been given to the Manager) to refuse to effect any investment, realisation or other transaction required to be carried out by it on behalf of the Company pursuant to this Agreement if in the opinion of the Custodian, 1) there are reasonable grounds for estimating that liabilities to be incurred in the case of such investment, realisation or other transaction may not be adequately covered by the assets of the Company held immediately prior to the time that such investment, realisation or other transaction is required to be effected or 2) personal liability may be incurred by the Custodian pursuant to such investment, realisation or other transaction PROVIDED ALWAYS that the foregoing (save as aforesaid) shall not absolve the Custodian from performing the obligations expressly assumed by it under this Agreement.

17. APPROVAL OF PUBLICATIONS

The Company shall deliver to the Custodian for approval prior to issue thereof a copy of all statements, notices, circulars and advertisements to be issued on behalf of or relating to the Company in which the name or any reference to the Custodian shall or will appear and any such publication not approved by the Custodian shall not be published by or on behalf of the Company and the Company hereby undertakes that no such statement, notice, circular or advertisement will be published and that no moneys will be raised nor any shares of the Company issued unless and until all necessary consents and permissions of whatever jurisdiction have been obtained in connection therewith.

18. CONFIDENTIALITY

Neither party hereto shall unless compelled so to do by any court of competent jurisdiction either before or after the termination of this Agreement disclose to any person not authorised by the relevant party to receive the same any information relating to such party or to the affairs of such party of which the party disclosing the same shall have become possessed during the period of this Agreement and each party shall use its best endeavours to prevent any such disclosure as aforesaid.

19. TERMINATION

(A)    This Agreement and the appointment of the Custodian hereunder shall continue in force until terminated by either the Company or the Custodian giving to the other not less than sixty days' notice in writing (or such shorter notice as such other party may agree to accept) expiring at any time provided that either the Company or the Custodian may forthwith terminate this Agreement by notice taking immediate or subsequent effect if:-

    (a)    the Custodian or the Company respectively has broken or is in breach of any of the terms of this Agreement and shall not have remedied such breach within thirty days after service of notice requiring the same to be remedied; or

    (b)    the Custodian or the Company respectively shall go into liquidation (except a voluntary liquidation for the purpose of reconstruction or amalgamation on terms previously approved in writing by the other party).

(B)    Upon the termination of this Agreement the Custodian shall deliver the Securities, cash and any other property of the Company in its custody hereunder to such person as the Company may nominate; provided, however, that the Custodian shall not be required to make any such delivery or payment until full payment shall have been made by the Company of all liabilities constituting a charge on or against the properties held by the Custodian or on or against the Custodian, and until full

payment shall have been made to the Custodian of all its fees, compensation, costs and expenses due to it under the provisions of this Agreement.

20. **NOTICES**

Any notice, instruction or other instrument required or permitted to be given hereunder may be delivered in person to the offices of the parties as set forth herein during normal business hours, or delivered prepaid registered mail or by telex, cable or telecopy to the parties at the following addresses or such other address as may be notified by either party from time to time.

TO THE COMPANY:	KINGATE GLOBAL FUND, LTD.
c/o Hemisphere Management Limited
Hemisphere House
9 Church Street
P.O. Box HM 951
Hamilton HM DX
Bermuda

Attention:    Christopher Wetherhill

Telex:
Cable:
Telecopy:    809-292-6145

TO THE CUSTODIAN:	THE BANK OF BERMUDA LIMITED
6 Front Street
Hamilton HM 11
Bermuda

Attention: Senior Manager, Corporate Trust

Telex: 3358 MIL B BA
Cable: Banco Bermuda
Telecopy: 809-295-6180

TO THE MANAGER:	KINGATE MANAGEMENT LIMITED
c/o Hemisphere Management Limited
Hemisphere House
9 Church Street
P.O. Box HM 951
Hamilton HM DX
Bermuda

Attention:    Christopher Wetherhill

Telex:
Cable:
Telecopy:    809-292-6145

Such notice, instruction or other instrument shall be deemed to have been served in the case of a registered letter at the expiration of five business days after posting, in the case of cable twenty'four hours after despatch and, in the case of telex, immediately on despatch and if delivered outside normal business hours it shall be deemed to have been received at the next time after delivery when normal business hours commence and in the case of cable, telex or telecopy on the business day after the receipt thereof. Evidence that the notice was properly addressed, stamped and put into the post shall be conclusive evidence of posting.

21.  ASSIGNMENT

This Agreement may not be assigned by the Custodian without the consent of the Company, authorised or approved by a resolution of its Board of Directors.

22.  PROPER LAW

This Agreement shall be governed by and construed in accordance with the laws of Bermuda.

AS WITNESS the hands of the duly authorised signatories of the parties hereto as of the day and year first above written.

SIGNED BY D.T. SMITH         )
and      K. SIGGINS          )
for and on behalf of THE BANK OF )
BERMUDA LIMITED              )
in the presence of:          )

FADSAC0060020

- 15 -

SIGNED BY KEITH R. BISH )
and )
for and on behalf of KINGATE )
GLOBAL FUND, LTD. )
)
in the presence of: )

_____

SIGNED BY MARGARET EVERY )
and MADELIN REAPE )
for and on behalf of )
KINGATE MANAGEMENT LIMITED )
)
in the presence of: )

_____

_____

FADSAC0060021