**EXHIBIT JJ**

CTM403EM

## CUSTODIAN AGREEMENT

THIS AGREEMENT is made this /ST day of MAY   Two Thousand

BETWEEN

**KINGATE EURO FUND, LTD** a company incorporated in and under the laws of the British Virgin Islands whose registered office is at Bison Court, P.O. Box 3460, Road Town, Tortola, BVI (hereinafter called the "Company") of the first part; and

**THE BANK OF BERMUDA LIMITED** whose registered office is at Bank of Bermuda Building, 6 Front Street, Hamilton HM 11, Bermuda (hereinafter called the "Custodian") of the second part.

WHEREAS:-

(A)   The Company has as its principal object to carry on business as a mutual fund company and is desirous of being provided with custodian services.

(B)   The Investment Manager has been or is about to be appointed by the Company to administer its affairs.

(C)   The Custodian is willing to provide the Company with such custodial services on the terms and conditions hereinafter contained.

NOW IT IS HEREBY AGREED as follows:-

1.   **INTERPRETATION**

(A)   In this Agreement and in all amendments hereto the following words and expressions shall, where not inconsistent with the context, have the following meanings respectively:-

"Articles" shall mean the Memorandum and of Association of the Company for the time being in force.

"Securities" shall mean listed and unlisted equity and equity related securities including convertible bonds and warrants; shares or units in collective investment schemes; privatisation vouchers and coupons; debt securities including government and corporate issues and warrants or options thereon; bank deposits and certificates of deposit.

"Investment Manager" shall mean Kingate Management Limited or such other person as may from time to time be appointed Investment Manager by the Company.

"Proper Instructions" shall mean signed written instructions or facsimile or electronically transmitted instructions in respect of any of the matters referred to in this Agreement purported to

be signed (except in the case of electronically transmitted instructions) by one or more Directors of the Company or the Investment Manager or any other person or persons duly authorised to sign by the Board of Directors of the Company and in the case of electronically transmitted instructions in accordance with such authentication procedures as may be agreed by the Custodian, the Company and the Investment Manager from time to time. A certified copy of the resolution of the Board of Directors of the Company or the Investment Manager shall be conclusive evidence of the authority of any such person to act until the Custodian is in receipt of written notice to the contrary.

"Prospectus" shall mean the prospectus, explanatory memorandum, offering circular or other such document issued from time to time with respect to the offer of shares of the Company.

(B)  Unless the context otherwise requires words and expressions contained in this Agreement shall bear the same meaning as in the Articles of the Company  PROVIDED THAT  any alteration or amendment of the Articles shall not be effective for the purposes of this Agreement unless the Custodian shall have assented thereto.

(C)  Unless the context otherwise requires words importing the singular number shall include the plural and vice versa, words importing masculine gender shall include the feminine and words importing persons shall include firms and companies and vice versa.

(D)  The division of this Agreement into sections, clauses and sub-clauses and the insertion of headings are for convenience of reference only and shall not affect the construction or interpretation hereof.

2.  APPOINTMENT OF CUSTODIAN

The Company HEREBY APPOINTS the Custodian to be and the Custodian HEREBY AGREES to act as custodian of the Company in accordance with the Articles and the terms and conditions hereinafter contained from the date hereof. The Company agrees to deliver to the Custodian all Securities and cash owned by it, and all payments of income, payments of principal or capital distributions received by it with respect to the Securities.

3.  NAMES, TITLES AND SIGNATURES

(A)  Forthwith after execution of this Agreement the Company will certify and will procure the Investment Manager to certify to the Custodian the names and signatures of the persons authorised to sign any Proper Instructions and generally to give instructions hereunder to the Custodian and shall deliver or procure the delivery to the Custodian of a certified copy of a resolution of the respective Board of Directors of the Company and the Investment Manager containing any such authority and a certified copy of the Articles.

3

(B) The Company shall and shall procure that the Investment Manager shall promptly certify to the Custodian any changes that may be made from time to time in the persons so authorised.

4. DUTIES OF THE COMPANY

(A) The Company promptly shall provide the Custodian with any amendments to its Articles and Prospectus.

(B) The Company shall and shall procure that the Investment Manager will promptly deliver at the Custodian's request a schedule of cash and Securities comprised in the investment portfolio of the Company as at the date of the latest valuation of net assets of the Company showing the type and amount of each investment and its value determined in accordance with the provisions of the Articles and/or the Prospectus and giving details of all purchases and sales effected since the date of the last such schedule and such schedules shall be certified as complete and correct by a responsible officer of the Investment Manager.

(C) The Company shall procure that all sums representing subscription monies for shares are paid to the Custodian for the account of the Company upon issue.

(D) The Company shall and shall procure that the Investment Manager will promptly deliver to the Custodian any management letter prepared by the Auditor of the Company.

5. RECEIPT AND DISBURSEMENT OF CASH

(A) The Custodian shall open and maintain a separate bank account or bank accounts in its books in the name of the Company and, if requested by Proper Instructions and subject to applicable laws, a separate bank account or accounts in the name of the Custodian for the benefit of the Company outside Bermuda with such bank or banks and in such place or places as may from time to time be agreed between it and the Investment Manager. The Custodian shall hold in such bank account or bank accounts, subject to the provisions hereof, all cash received by it from or for the account of the Company. The Custodian shall make or procure the making of payments out of such account or accounts on behalf of the Company only:-

(a) upon the purchase of Securities for the account of the Company and, where market practices permit, subject to the delivery of such Securities to or to the order of the Custodian or anyone nominated by the Custodian in accordance with Clause 9 or in proper form for transfer;

[(b) for the redemption of shares of the Company pursuant to the Articles;]

(c) for the payment of interest and dividends by the Company or the payment by the Company of taxes, management, investment advisory, custodian, secretarial and registrar

FADSBB0000004

       and subscription and redemption agents fees or other operating expenses (including, without limitation thereto, fees for legal, accounting and auditing services, directors' remuneration, brokerage and commissions);

(d)     for payments in connection with the conversion, exchange or surrender of Securities owned or subscribed for on behalf of the Company held by or to be delivered to the Custodian;

(e)     for the transfer of cash from one bank account as aforesaid to another bank account as aforesaid or for deposit;

(f)     for payments in connection with insuring Securities or in providing for the safekeeping thereof otherwise than in the vault of the Custodian;

(g)     for payments of interest and payment of principal on all borrowing;

(h)     for payments in respect of initial or variation margin requirements relative to the operation of any accounts with brokers or other intermediaries;;

(i)     for payments in connection with any stock lending activities; and

(j)     for other proper corporate purposes.

Before making any such payment the Custodian shall receive (and may rely upon), in the case of a payment permitted under the terms of items (a) to (i) of this sub-clause Proper Instructions directing such payment, naming the person or persons to whom such payment is to be made and specifying the amount of, and the time by which, such payment is to be made and such other information as may be appropriate to allow the Custodian to effect the relevant payment in proper form, or, in the case of payment for a purpose permitted under the terms of item (j) of this sub-clause a copy of a resolution of the Board of Directors or of a Committee of the Board of Directors duly authorised and certified by two Directors of the Company setting forth the purpose for which such payment is to be made, declaring such purpose to be a proper corporate purpose, naming the person or persons to whom such payment is to be made stating the amount of, and the time by which, such payment is to be made and stating all relevant information as aforesaid.

(B)     The Custodian is hereby authorised to endorse and collect all cheques, drafts or other orders for the payment of money received by the Custodian for the account of the Company.

(C)     In connection with any transaction involving Securities held by or to be acquired for the Company, the Custodian may in its discretion (by automatic process or otherwise):-

    (i)     credit the Company on the contractual settlement date with the proceeds of any sale or exchange of Securities and may on or before the contractual settlement date transfer the relevant Securities to a separate custody account awaiting delivery; and

5

(ii)  debit the Company on the contractual settlement date with the purchase price of Securities purchased or acquired for the Company and may credit the Company on or before the contractual settlement date with the relevant Securities pending receipt of such Securities.

The Company hereby acknowledges that these procedures are of a strictly administrative nature and do not amount to an agreement by the Custodian to make loans and/or Securities available to the Company. The Custodian is authorised to reverse any such credit or debit referred to in this sub-clause

(D)  In respect of any transaction for which the Custodian determines not to credit the Company on the contractual settlement date, the proceeds from the sale or exchange of Securities will be credited to the Company as soon as practical after such proceeds are received and Securities acquired will be credited on the date of receipt of such Securities by the Custodian.

6.  RECEIPT OF SECURITIES

(A)  Except as provided in sub-clause (B) hereof, the Custodian shall record and hold in a separate account in its books all Securities received by it or to its order from time to time and shall arrange for all Securities to be deposited in the Custodian's vault or otherwise held by or to the order of the Custodian as it may think proper for the purpose of providing for the safekeeping thereof. Any expenses of whatever nature incurred by the Custodian in providing safe custody (other than in the vault of the Custodian) or in the settlement of securities transactions or the collection of dividends, interest or any other rights attaching to such Securities shall be payable by the Company.

(B)  The Custodian shall upon receipt of Proper Instructions, open accounts with brokers or other intermediaries in its name on behalf of the Company or in the name of the Company and may make such arrangements concerning the trading authorisations and other forms of authority with respect to such account or accounts as it deems advisable. The Custodian shall not be responsible for the safekeeping of Securities or cash deposited with or remaining in any such account or accounts and will not be liable for any loss occasioned by reason of the liquidation, bankruptcy or insolvency of such broker or other intermediary.

7  TRANSFER OF SECURITIES AND OTHER FUNCTIONS

FADSBB0000004

6

(A)     The Custodian shall transfer, exchange or deliver in the required form and manner Securities held by it hereunder only:-

    (a)    upon sales of such Securities for the account of the Company and where market practices permit receipt by the Custodian of payment therefor;

    (b)    when such Securities are called, redeemed or retired or otherwise become payable;

    (c)    for examination by any broker selling any such Securities in accordance with "street delivery" custom;

    (d)    in exchange for or upon conversion into other Securities alone or other Securities and cash pursuant to any plan or merger, consolidation, reorganisation, recapitalisation or readjustment or otherwise;

    (e)    upon conversion of such Securities pursuant to their terms into other Securities;

    (f)    upon exercise of subscription, purchase or other similar rights represented by such Securities;

    (g)    for the purpose of exchanging interim receipts or temporary securities for definitive securities;

    (h)    for the purpose of redeeming in kind shares of the Company;

    (i)    for collecting all income and other payments with respect to Securities;

    (j)    in connection with stock lending transactions entered into for the account of the Company;

    (k)    in connection with short sales entered into by the Company; and

    (l)    for other proper corporate purposes.

Except as provided in Clause 8, before making any such transfer, exchange or delivery the Custodian shall receive (and may rely upon) in the case of a matter permitted under the terms of items (a) to (k) of this sub-clause Proper Instructions directing such transfer, exchange or delivery, indicating the Securities in question, stating all relevant information to allow the Custodian to effect in the proper form and manner, as the case may be, such transfer, exchange or delivery or, in the case of a transfer, exchange or delivery permitted under the terms of item (l) of this sub-clause a copy of a resolution of the Board of Directors or a Committee of the Board of Directors duly authorised and certified by two Directors of the Company specifying the Securities in question, setting forth the purpose for which such transfer, exchange or delivery is to be made, declaring such purposes to be proper corporate purposes, naming the person or persons to whom transfer, exchange or delivery of such Securities shall be made and stating all relevant information as aforesaid.

(B)     Upon receipt of Proper Instructions, the Custodian shall (1) receive and retain confirmations or other documents evidencing the purchase or writing of an option by the Company; (2) deposit and maintain in a segregated account, either physically or by book-entry, Securities, cash or other assets in

connection with options transactions entered into by the Company; and (3) pay, release and/or transfer such Securities, cash or other assets only in accordance with a notice or other communication evidencing the expiration, termination or exercise of any such option furnished by the securities or options exchange on which such option is traded or such other organisation, party, broker or dealer as may be responsible for handling such options transactions.

(C) Upon receipt of Proper Instructions, the Custodian shall (1) receive and retain confirmations evidencing the purchase or sale of a futures contract or an option on a futures contract by the Company; (2) deposit and maintain in a segregated account for the benefit of any futures commission merchant, or pay to such futures commission merchant, Securities, cash or other assets designated by the Company as initial, maintenance or variation "margin" deposits intended to secure the Company's performance of its obligations under any futures contracts purchased or sold or any options on futures contracts written or purchased by the Company, in accordance with the provisions of any agreement or agreements among the Company, the Custodian and such futures commission merchant, designed to comply with the rules of any relevant regulatory body and/or any contract market, or any similar organisation or organisations, regarding such margin deposits; and (3) pay, release and/or transfer Securities, cash or other assets into or out of such margin accounts only in accordance with any such agreements or rules.

(D) Upon receipt of Proper Instructions, the Custodian shall deliver Securities of the Company to lenders or their agents, or otherwise establish a segregated account as agreed to by the Company and the Custodian, as collateral for borrowings effected by the Company, but only against receipt of the amounts borrowed.

(E) Upon receipt of Proper Instructions, the Custodian shall enter into foreign exchange contracts or options to purchase and sell foreign currencies for spot and future delivery on behalf and for the account of the Company with such currency brokers or financial institutions as may be specified pursuant to Proper Instructions. The Custodian shall be responsible for the transmission of cash and instructions to and from the currency broker or financial institution with which the contract or option is made, the safekeeping of all certificates and other documents and agreements evidencing or relating to such foreign exchange transactions and the maintenance of proper records with respect thereto.

(F) Upon receipt of Proper Instructions, the Custodian shall establish and maintain on its books a segregated account or accounts for and on behalf of the Company, into which account or accounts may be transferred cash and/or Securities or other assets of the Company, including Securities maintained by the Custodian in a book-entry system or foreign depository, said account to be maintained for such purposes as set forth in such Proper Instructions.

08-01789-cgm   Doc 12768-36   Filed 03/04/16   Entered 03/04/16 10:49:19   Exhibit JJ
Pg 9 of 20

8. **THE CUSTODIAN'S ACTS WITHOUT INSTRUCTIONS**

Unless and until the Custodian receives Proper Instructions to the contrary, the Custodian shall:-

(a)   present for payment all Securities which are called, redeemed or retired or otherwise become payable and all coupons and other income items held by it for the account of the Company which call for payment upon presentation;

(b)   hold for the account of the Company hereunder all stock dividends, rights and similar securities issued with respect to any Securities held by it hereunder; and

(c)   exchange interim receipts or temporary securities for definitive securities.

9.   REGISTRATION OF SECURITIES

(A)   The Custodian shall register all Securities in respect of which registration shall be necessary in order to perfect the transfer thereof or title thereto as soon as practicable after receipt of the necessary documents by the Custodian, in the name of the Company, the Custodian or its nominee or in such other name as the Custodian deems proper as provided in this Clause. The Custodian shall hold the Securities of the Company: (1) by physical possession of the certificates or other instruments representing such Securities including privatisation vouchers or coupons and registry extracts in registered or bearer form, or the broker's receipts or confirmations for futures contracts, options and similar investments, or (2) in book entry form in a depository or clearing system (including Euroclear, Cedel and Depository Trust Company) (each a "Securities System"). The Custodian shall identify Securities held by it hereunder as being held for the account of the Company and shall require each agent, sub-custodian and delegate (referred to in Clause 15(B)) to identify Securities held by such agent, sub-custodian and delegate as being held by it, as custodian or fiduciary, for the account of the Custodian or the Company. Any expenses of whatever nature incurred by the Custodian in effecting such registration shall be payable by the Company.

(B)   The Company shall from time to time furnish to the Custodian appropriate instruments to enable the Custodian to hold or deliver in proper form for transfer or to register as provided in sub-clause (A) of this Clause any Securities belonging to the Company.

(C)   The Custodian shall keep or cause to be kept such books, records and statements as may be necessary to give a complete record of all cash and Securities held and transactions carried out by it on behalf of the Company and shall permit the Company and its duly authorised agent(s) or delegate(s) to inspect such books, records and statements at any time during normal business hours on giving reasonable notice to the Custodian.

10.   VOTING AND OTHER ACTION

9

(A) The Custodian shall deliver, or cause to be delivered, to the Company or to such other person as the Company may from time to time direct copies of all notices, proxies and proxy-soliciting materials received by it and shall use reasonable endeavours to deliver or cause to be delivered to the Company copies of all such matierals received by its nominee or agent appointed hereunder in relation to any of the Securities held by any of them for the account of the Company. The Custodian shall not, and shall procure that no delegate, agent or nominee of the Custodian shall, vote in respect of any of the Securities held by any of them for the account of the Company, except in accordance with Proper Instructions. The Custodian shall promptly deliver, or cause to be delivered, to the Company all other documents and payments received by it or its nominee or agent affecting or relating to the Securities held by it or its nominee or agent.

(B) The Company shall not and shall procure that the Investment Manager shall not exercise the Company's power to borrow without prior notice to the Custodian.

(C) The Company shall not and shall procure that the Investment Manager shall not enter into underwriting or sub-underwriting contracts in relation to the subscription or purchase of Securities without the prior notification of the Custodian and all commissions and fees payable under such contracts and all Securities acquired thereby shall form part of the assets of the Company.

(D) The Custodian shall take no action with regard to any subscription and other rights issued with respect to Securities held by the Custodian Provided that the Custodian will notify the Company of such subscription or other rights and will undertake to act upon Proper Instructions received within a reasonable time prior to the expiration of such rights.

11  TAXES

(A) The Company shall pay or reimburse the Custodian from time to time on demand for any transfer taxes payable upon transfers, exchanges or deliveries of Securities made hereunder.

(B) The Custodian shall execute such ownership and other certificates and affidavits as may be requested by Proper Instructions from time to time for fiscal, tax and other purposes in connection with Securities held by it under this Agreement and shall make such applications and reports as may be requested by Proper Instructions from time to time to the competent Bermuda and other authorities in order to apply for or secure any tax or other privileges and benefits to which the Company is or may be entitled in connection with such Securities. The Custodian shall be entitled to refuse to execute such ownership and other certificates and affidavits referred to above if, in the opinion of the Custodian, personal liability may be incurred by the Custodian pursuant to such execution.

10

12. <u>BANKING FACILITIES</u>

(A)  During the continuance of its appointment, the Custodian or an affiliated company of the Custodian shall provide banking facilities for the Company and, where any cash at the request of the Investment Manager is placed on deposit with the Custodian or an affiliated company of the Custodian in their capacity as a banker, interest shall be allowed thereon in accordance with normal banking practice and as previously agreed with the Investment Manager, but subject thereto there shall be no further liability to pay interest on cash.

(B)  In the event that the Company shall make any arrangements for borrowing or overdraft facilities with the Custodian or any affiliated company of the Custodian, such company shall be entitled to retain for its own use and benefit all profits and advantages which may be derived therefrom.

(C)  In the event that the Company incurs an unauthorised overdraft with the Custodian or any affiliated company of the Custodian or if, as a result of settlement delays, electronic payment failures or other similar circumstances, a credit facility is made available to the Company without completion of the customary credit documents, the Custodian shall have a lien over all assets of the Company held in any account whatsoever by or to the order of the Custodian and the Custodian shall be entitled to set-off any and all claims it or any affiliate of the Custodian has on the Company against any counterclaim of the Company on the Custodian.

13. <u>DEALING BY CUSTODIAN</u>

(A)  Nothing herein contained shall prevent the Custodian or any affiliated company of the Custodian from becoming the owner of shares in the Company and holding, disposing or otherwise dealing with the same rights which any of them would have had if the Custodian were not a party to this Agreement; and the Custodian or any affiliated company of the Custodian may buy, hold and deal in any Securities upon their individual accounts or for the accounts of their own customers notwithstanding that such Securities or similar Securities may be held by or for the account of the Company.

(B)  Nothing herein contained shall prevent the Custodian or any affiliated company of the Custodian from contracting or entering into any financial, banking or other transactions with the Company or any shareholder of the Company and the Custodian or any affiliated company of the Custodian may be interested in any such contract or transaction and shall not be accountable for any profit arising therefrom.

14. REMUNERATION <u>**OF THE CUSTODIAN**</u>

(A)   The Custodian shall be paid by way of remuneration for its services pursuant to this Agreement fees at such rates and at such times as may be agreed from time to time between the Company and the Custodian. Such fees shall be paid in United States Dollars.

(B)   The Company will reimburse the Custodian in addition to the fees referred to in sub-clause (A) of this Clause for all out-of-pocket expenses properly incurred by the Custodian in carrying out its duties hereunder.

15.   CONCERNING THE CUSTODIAN

(A)   The Custodian shall not be required to take any legal action unless fully indemnified to its reasonable satisfaction for costs and liabilities by the Company and if the Company requires the Custodian as custodian to take any action which in the opinion of the Custodian might make the Custodian liable for the payment of money or liable in any other way the Custodian shall be kept indemnified by the Company in any reasonable form as a pre-requisite to taking such action.

(B)   In performing its duties hereunder the Custodian may with the consent of the Board of Directors and at the expense of the Company appoint such agents, sub-custodians and delegates as may be necessary to perform in whole or in part any of the duties and discretions of the Custodian (including in such appointment powers of sub-delegation) . Subject to the provisions of this sub-clause, the Custodian will remain responsible to the Company for any acts or omissions of any such person or persons howsoever appointed as if such acts or omissions were those of the Custodian. The Custodian shall not, howsoever, be liable for any acts or omissions of any agent, sub-custodian or delegate appointed pursuant to this sub-clause in relation to markets considered by the Custodian to be emerging markets or where in the Custodian's opinion the risks associated with any particular market are unacceptable (hereinafter referred to as "Emerging Markets") and in each such case the Custodian shall have notified the Company in writing of such market or markets. The current list of Emerging Markets is attached as Annex 1 to this Agreement and the Custodian may from time to time amend such list by written notice to the Company. Notwithstanding any such appointment the Custodian will not be responsible for any losses suffered by the Company by reason only of the liquidation, bankruptcy or insolvency of any agent, sub-custodian or delegate howsoever appointed. Any broker or other intermediary appointed pursuant to Clause 6 (B) and any Securities System utilized pursuant to Clause 9 (A) hereof shall not be an agent, sub-custodian or delegate for the purposes hereof and the Custodian shall not be liable for the acts or omissions or any loss directly or indirectly caused by any such person. The fees and other remuneration of any agent, sub-custodian or delegate appointed by the Custodian pursuant hereto (including any fees or other renumeration as referred to in Clause 6 hereof) shall be paid by the Company.

12

(C) All Securities which the Custodian or any of its agents, sub-custodians or delegates may hold from time to time on behalf of the Company in accordance with the terms and conditions hereof shall be subject to a general lien and security interest and the Custodian shall have power to withhold and/or sell such Securities for the discharge of the Company's obligations to the Custodian or any of its agents, sub-custodians or delegates.

(D) The Custodian shall deliver to the Investment Manager from time to time at such reasonable intervals as the Investment Manager may require a full account of all receipts and payments made and other action taken by the Custodian pursuant to this Agreement since the date of the last preceding such account together with a list as at the date of such account of all Securities and cash or other indebtedness or obligations held by the Custodian or its agent for or on behalf of the Company or otherwise pursuant to the terms hereof.

(E) The Company as sole beneficial owner of all Securities delivered or to be delivered to the Custodian or its nominee hereunder hereby indemnifies and holds harmless the Custodian from and against all proper costs and expenses and liabilities resulting from the fact that such Securities are registered in the name of the Custodian or its nominee.

(F) The Custodian shall not, in the absence of gross negligence or wilful default on the part of the Custodian, be liable to the Company or to any shareholder of the Company for any act or omission in the course of or in connection with the services rendered by it hereunder or for any loss or damage which the Company may sustain or suffer as a result or in the course of the discharge by the Custodian of its duties hereunder or pursuant hereto. In particular, but not without limiting the generality of the foregoing, the Custodian shall be under no liability in respect of:-

(i) any loss or damage caused by unauthorised use or forging of any authorised signature provided that in any such case the Custodian shall have properly investigated such signature in accordance with approved banking practice and by reference to any certified specimen signatures previously delivered to the Custodian by or on behalf of the Company pursuant to Clause 3 or shall have made such other investigations as may have been agreed from time to time in writing between the Investment Manager on behalf of the Company and the Custodian;

(ii) any loss which a shareholder of the Company may suffer by reason of any depletion in the value of net assets of the Company which may result from any borrowing or overdraft facilities made hereunder; or

13

(iii) any loss or damage which the Company or any shareholder of the Company may suffer as a result of Securities or other property of the Company being delivered to and held by a lender pursuant to any borrowing facility arranged by the Company or the Investment Manager.

The Company agrees to indemnify the Custodian from and against any and all liabilities, obligations, losses, damages, penalties, actions, judgments, suits, costs, expenses or disbursements of any kind or nature whatsoever (other than those resulting from the gross negligence or wilful default on the part of the Custodian or any agent, delegate or sub-custodian appointed by it and for which it would be liable as provided in sub-clause (B) of this Clause) which may be imposed on, incurred by or asserted against the Custodian in performing its obligations or duties hereunder.

(G) In any case where the Custodian may be held to be liable hereunder, its liability shall be limited to the loss suffered as a direct and reasonably foreseeable consequence of the Custodian's or its directors', officer's or employee's negligence or wilful default.

(H) The Custodian shall not be responsible for the loss or damage to any documents or other property of the Company or for any failure to fulfil its duties hereunder if such loss, damage or failure shall be caused by or directly or indirectly due to war, enemy action, the act of government or other competent authority, or if any investment exchange or clearing house, riots, civil disturbance, rebellion, storm, tempest, accident, fire, strike, explosion, or lock-out or the breakdown, failure or malfunction of any telecommunication or computer service or any occurrence or event beyond the control of the Custodian.

(I) The Custodian shall be under no duty to supervise compliance with restrictions on the investment powers of the Company or to take any action other than as specified in this Agreement with respect to any Securities or cash of the Company held by the Custodian hereunder. The Custodian shall be entitled to receive and act upon any advice of counsel and shall be without liability for any action taken or thing done in good faith in reliance upon such advice.

(J) Where any Proper Instructions or notices are given by way of facsimile transmission, the fact that a transmission report produced by the originator of such transmission discloses that the transmission was sent shall not be sufficient proof of receipt by the Custodian. The Company agrees to indemnify the Custodian from and against any and all actions, losses, costs, charges, expenses and demands of any and every kind which may at any time hereafter be incurred by the Custodian in consequence of accepting and acting upon such Proper Instruction or notices given by facsimile transmission whether or not such instructions were given by the Company or any other person duly authorised to give such instructions.

FADSBB0000004

16. REFUSAL TO ACT

The Custodian shall be entitled (subject to notice having been given to the Investment Manager) to refuse to effect any investment, realisation or other transaction required to be carried out by it on behalf of the Company pursuant to this Agreement if in the opinion of the Custodian, 1) there are reasonable grounds for estimating that liabilities to be incurred in the case of such investment, realisation or other transaction may not be adequately covered by the assets of the Company held immediately prior to the time that such investment, realisation or other transaction is required to be effected or 2) personal liability may be incurred by the Custodian pursuant to such investment, realisation or other transaction PROVIDED ALWAYS that the foregoing (save as aforesaid) shall not absolve the Custodian from performing the obligations expressly assumed by it under this Agreement.

17. APPROVAL OF PUBLICATIONS

The Company shall deliver to the Custodian for approval prior to issue thereof a copy of all statements, notices, circulars and advertisements to be issued on behalf of or relating to the Company in which the name or any reference to the Custodian shall or will appear and any such publication not approved by the Custodian shall not be published by or on behalf of the Company and the Company hereby undertakes that no such statement, notice, circular or advertisement will be published and that no moneys will be raised nor any shares, warrants or other securities of the Company issued unless and until all necessary consents and permissions of whatever jurisdiction have been obtained in connection therewith.

18. TERMINATION

(A) This Agreement and the appointment of the Custodian hereunder shall continue in force until terminated by either the Company or the Custodian giving to the other not less than sixty days' notice in writing (or such shorter notice as such other party may agree to accept) expiring at any time provided that either the Company or the Custodian may forthwith terminate this Agreement by notice taking immediate or subsequent effect if:-

 (a) the Custodian or the Company respectively has broken or is in breach of any of the terms of this Agreement and shall not have remedied such breach within thirty days after service of notice requiring the same to be remedied; or

 (b) the Custodian or the Company respectively shall go into liquidation (except a voluntary liquidation for the purpose of reconstruction or amalgamation on terms previously approved in writing by the other party).

15

(B)     Upon the termination of this Agreement the Custodian shall deliver the Securities, cash and any other property of the Company in its custody hereunder to such person as the Company may nominate; provided, however, that the Custodian shall not be required to make any such delivery or payment until full payment shall have been made by the Company of all liabilities constituting a charge on or against the properties held by the Custodian or on or against the Custodian, and until full payment shall have been made to the Custodian of all its fees, compensation, costs and expenses due to it under the provisions of this Agreement.

(C)     Termination of this Agreement shall be without prejudice to any claims or rights which either of the parties hereto may have by reason of any breach of the other party's obligations and, without prejudice to the generality of the foregoing, any indemnity provisions and provisions limiting the liabilities of either party shall survive termination of this Agreement.

19.    <u>NOTICES</u>

Any notice, instruction or other instrument required or permitted to be given hereunder may be delivered in person to the offices of the parties as set forth herein during normal business hours, or delivered prepaid registered mail or by facsimile to the parties at the following addresses or such other address as may be notified by either party from time to time.

TO THE COMPANY:    **KINGATE EURO FUND, LTD**
C/o Hemisphere Management Limited
Hemisphere House
9 Church Street
Hamilton, HM 11
Bermuda

Attention: Rich Vickers

Facsimile: 441-296-5641

TO THE CUSTODIAN:    **THE BANK OF BERMUDA LIMITED**
6 Front Street
Hamilton HM 11
Bermuda

Attention: Senior Vice President, Global Fund Services

Facsimile: 441-299-6565

FADSBB0000004

Such notice, instruction or other instrument shall be deemed to have been served in the case of personal delivery at the time of delivery in the case of a registered letter at the expiration of five business days after posting and, in the case of facsimile, immediately on despatch and if delivered outside normal business hours it shall be deemed to have been received at the next time after delivery when normal business hours commence . Evidence that the notice was properly addressed, stamped and put into the post shall be conclusive evidence of posting.

### 20. CONFIDENTIALITY AND REPUTATION

(A)    Neither party hereto shall unless compelled so to do by any statute, court of competent jurisdiction or other regulatory authority either before or after the termination of this Agreement disclose to any person not authorised by the relevant party to receive the same any information relating to such party or to the affairs of such party of which the party disclosing the same shall have become possessed during the period of this Agreement and each party shall use its best endeavours to prevent any such disclosure as aforesaid.

(B)    Neither party hereto shall do or commit any act or matter or thing which would or might prejudice or bring into disrepute in any manner the business or reputation of either of the parties or any Director of any such party.

### 21    RIGHT TO USE DATA PROCESSING RECORDS

The Custodian is authorised to maintain all accounts, corporate books and other documents relating to the Company or its affairs on computer records and to produce at any time during the course of legal proceedings, copies or reproductions of these documents made by photographic, photostatic or data processing procedures as juridical proof thereof.

### 22.    ASSIGNMENT

This Agreement may not be assigned by the Custodian without the consent of the Company, authorised or approved by a resolution of its Board of Directors.

### 23.    TELEPHONE RECORDING

The Custodian may record all telephone conversations between the Company and the Custodian or between any Shareholder or other person and the Custodian in relation to the affairs of the Company

FADSBB0000004

and such tape recordings may be submitted evidence any proceedi ela to th Agreement

24  AMENDMENT

or ision of Agree may be iended otherwise than by an instru writing igned by both parties hera

COUNTERPART

Thi Agreemen may be executed ny her of lerp its and the iffe ent parties ito on separa counterparts each of hich after ited and delivered hall stitute orig and such iterparts together stitute the same Instru

26  SEVERANCE

any provision her shall be ined to be oid uren f neable hole for reason whatsoever such invalidity forcea lity not affect th ng pai th eof tained within thi Ag ent and ich void rier forceable provision he ied to be le ny oth provi part thereof ein contained

PROPER LAW

Thi Agreem shi be governed by strued accord with the of Bermuda and each of the parties herein submit to the clusi sdiction of the Bermuda

AS WITNESS the hands of the duly authorised signatories of the parties hereto as of the day and year first above written.

SIGNED BY                                          )
for and on behalf of **KINGATE EURO**  )
**FUND, LTD**                                      )
in the presence of:                                )

_Kenneth H Sitarachaba_                _[signature]_

SIGNED BY Anthony Riker
and Guy Kelly                                      )
for and on behalf of **THE BANK OF**   )
**BERMUDA LIMITED**
in the presence of:

_[signature]_                         _[signature] AR_
                                      _Guy W Kelly KJ_

FADSBB0000004

## ANNEX 1

As of the date of this Agreement, the following represents a list of Emerging Markets (as defined in the sub-clause (B) of Clause 15 of the Custodian Agreement):-

    Bangladesh
    Bahrain
    Botswana
    Bulgaria
    Chile
    Colombia
    Costa Rica
    Croatia
    Czech Republic
    Ecuador
    Estonia
    Ghana
    Indonesia
    Ivory Coast
    Jamaica
    Jordan
    Kazakhstan
    Kenya
    Latvia
    Lebanon
    Lithuania
    Morocco
    Newly established countries, formerly part of the USSR
    Oman
    Palestine
    Panama
    Romania
    Russian Federation
    Slovakia
    Slovenia
    Tunisia
    Ukraine
    Venezuela
    Vietnam
    Zambia
    Zimbabwe