**EXHIBIT NN**

Dated  2ᵗ APRIL  2001


# KINGATE MANAGEMENT LIMITED

-and-

# FIM LIMITED

---

**Consulting Services Agreement**

**-relating to-**

**Kingate Global Fund, Ltd.**

---

FADSAC0054418

**THIS CONSULTING SERVICES AGREEMENT** is made this 2? day of April 2001

**BETWEEN:**

1.  **KINGATE MANAGEMENT LIMITED,** a limited company registered in Bermuda (under number EC-19184) and whose registered office is at 99 Front Street, Hamilton HM11, Bermuda (the "Co-Manager");

2.  **FIM LIMITED,** a limited company registered in England and Wales (under number 1536755) and whose registered office is at 62 Wilson Street, London EC2A 2BU ("FIM").

**WHEREAS:**

(A)  Kingate Global Fund, Ltd. (the "Company") is open-end investment company organized as an international business company in the British Virgin Islands ("B.V.I.").

(B)  By a Co-Manager Agreement dated November 1, 1994 between Company and the Co-Manager (the "Co-Manager Agreement") the Company has appointed the Co-Manager to provide it with investment management and other services in relation to the Company's assets and operations in accordance with the provisions of the Co-Manager Agreement.

(C)  Under the provisions of the Co-Manager Agreement the Co-Manager is authorised to appoint delegates to assist it in the discharge of its function under the Co-Manager Agreement.

(D)  By a Consulting Services Agreement dated November 1, 1994 as amended FIM has been appointed as consultant to the Co-Manager to provide consulting and other services to the Co-Manager.

(E)  The Co-Manager and FIM now wish to amend and restate the Consulting Services Agreement.

(F)  FIM is regulated in the conduct of investment business in the United Kingdom by the Investment Management Regulatory Organisation Limited ("IMRO") or its successor(s) or replacement(s).

(G)   This Agreement is in a form which complies with the Rules of IMRO on the basis
that the Co-Manager and the Company (which is an unregulated collective
investment scheme) are Non-Private Customers (as defined in the IMRO Rules).

**NOW IT IS HEREBY AGREED** as follows:

1.   **Definitions and Constructions**

(a)   Save where the context otherwise requires, terms and expressions defined for
the purposes of the Information Memorandum ("Information Memorandum")
and the rules of IMRO shall have the same meaning when used in this
Agreement.

(b)   "Information Memorandum" means the Information Memorandum of the
Company dated 1 May 2000 relating to the Shares of the Company as the
same may from time to time be amended or replaced. The term "Group
Company" when used in this agreement means any company within the
group comprising the Co-Manager and any subsidiaries, holding companies
and associated companies.

(c)   "IMRO" means the Investment Management Regulatory Organisation
Limited or its successor(s) or replacement(s).

(d)   "Operative Documents" means any and all documents which may be issued
by the Company in relation to the issue of securities (other than Shares) of the
Company.

(e)   "Shares" means the Participating Common Shares of the Company.

(f)   References to any statute, statutory enactment, rules and regulations shall be
references to such statutes, statutory instruments, rules or regulations as from
time to time amended, re-enacted, replaced or substituted.

2.   **Appointment of Consultant**

2.1  This Agreement shall be operative with effect on and from May 1, 2000 (the
"Effective Date").

2.2  FIM hereby agrees with the Co-Manager to act as a consultant to the Co-
Manager to provide such advice and recommendations as the Co-Manager

may from time to time require in connection with its management of the
Company's assets and in the implementation of the investment objectives and
policies of the Company in accordance with the provisions of the Co-Manager
Agreement. This Agreement waives FIM's formal duty of Best Execution as
defined by the rules of IMRO.

2.3 In providing consulting services to the Co-Manager pursuant to this
Agreement, FIM shall at all times have due regard to the need to comply with
the following requirements:-

(a) the investment objective, policy and powers of the Company as outlined
in the Information Memorandum and Operative Documents;

(b) any investment or other restrictions for the time being contained in the
Memorandum of Association of the Company or the Articles (each as
amended from time to time) or in the Information Memorandum and
Operative Documents;

(c) the provisions of the Co-Manager Agreement to which the Co-Manager
is subject in its provision of management services to the Company; and

(d) any other matter to which a prudent consultant should reasonably pay
regard in the proper discharge of its duties.

2.4 The Co-Manager undertakes to provide FIM with copies of the Information
Memorandum, Memorandum of Association, Articles of Association,
Operative Documents and the Co-Manager Agreement and all amendments
from time to time made thereto, promptly upon any such amendments being
made and to provide to FIM such information in the Co-Manager's
possession as FIM may reasonably request in relation to the Company or as
the Co-Manager may consider relevant to FIM in the discharge of its duties
hereunder, including, without limitation:-

(a) details of the sums available for investment and the money required to
meet redemptions or pay fees, dividends of expenses of the Company;

(b) any notices of meetings, reports, circulars and other communications
received or made by the Co-Manager in relation to the Company and the
Company's investments;

FADSAC0054421

(c) any proposed changes to the investment objectives, policies and restrictions of the Company; and

(d) details of any actions taken or not taken in relation to recommendations of FIM to the Company.

Without prejudice to its obligations under clause 2.3 above, FIM shall be entitled to rely on the authenticity and completeness of such documents.

2.5 FIM represents and warrants to the Co-Manager that it is a limited company duly registered under the laws of England and Wales having all necessary regulatory and other consents, including membership of IMRO or any successor organisation thereto, including the Financial Services Authority, and pursuant to the Investment Business Act 1998 of Bermuda to the extent FIM is carrying on investment business in or from within Bermuda by virtue of this Agreement or otherwise, and capacity to provide the services and discharge the duties of a consultant required of them under this Agreement.

3. **Consulting and Other Services**

Without prejudice to the generality of the provisions of clause 2 above, the consulting services and other services to be provided by FIM to the Co-Manager under the terms of this Agreement shall include, without limitation:-

(a) reviewing the Company's structure and operating procedures;

(b) preparing such analyses and reports as the Co-Manager and the Company may require, including such analyses and reports as may be required for use by the Co-Manager;

(c) providing the Co-Manager with assistance and support on such matters relating to investors relations as may be required by the Co-Manager and the Company;

(d) liaising directly with the Co-Manager on such matters relating to the Company's investment program as may be required to enable FIM to properly perform its duties hereunder; and

(e) in general, providing advice to and assisting the Co-Manager on such aspects of the Company's operational, administrative, accounting and legal matters as may be required by the Co-Manager and the Company.

4.    **Limitation on Authority**

4.1  FIM, acting as a consultant, shall not have the power or authority to enter into any transaction on behalf of, or in any way to bind, the Co-Manager or the Company.

4.2  In carrying out its duties hereunder, FIM shall comply with all instructions of the Co-Manager in connection therewith. Such instructions may be given by letter, by fax, by e-mail or by telephone (and the Co-Manager undertakes to confirm telephone instructions by fax, e-mail or in writing) by any director of the Co-Manager or by any other person authorised by a resolution of the directors of the Co-Manager (of which a copy, certified by any two such directors, shall have been supplied to FIM).

4.3  For the purposes of clause 4.2 and unless and until FIM shall receive written notice that any such person's authority has been revoked FIM may rely or act upon any instructions or communications which FIM believes, on reasonable grounds and in good faith, to have been given by or on behalf of any persons notified by the Co-Manager from time to time in accordance with clause 4.2 as being authorised to instruct FIM.

5.    **Delegation and Use of Agents**

FIM may not delegate or sub-contract any of its duties or services under this Agreement without the prior written consent of the Co-Manager provided that, in the event such delegation or sub-contracting is so permitted, FIM shall be relieved of any responsibility for the acts or omissions of such delegates except in circumstances where FIM shall be shown to have assumed responsibility for such acts or omissions.

6.    **Client Money**

FIM will not hold cash on behalf of the Company.

7.    **Custodial Services**

FIM will not be responsible for the provision of any safe custody services in relation to the Company.

8.    **Valuations and Reports**

FIM will provide such assistance, information and reports as the Co-Manager and the Company's auditors may from time to time require in connection with the preparation of valuations in respect of the Company, the preparation by the Co-Manager of periodic reports for submission to the Company and the provision of annual, semi-annual and other reports for the benefit of Shareholders or prospective Shareholders of the Company whether these are published by the Company or the Co-Manager. FIM shall in addition provide such representative or representatives as the Co-Manager may from time to time request to attend board meetings of the Company with the Co-Manager and report to, and discuss with, the Directors of the Company the performance of the Company and other matters related to the management of the assets of the Company.

9.    **Investments**

FIM may provide investment advice to the Co-Manager with respect to investments in collective investment schemes within the meaning of Section 75 of the United Kingdom Financial Services Act 1986 ("FSA") which are or are not authorised or recognised under ss78, 86, 87, 88 FSA (whether or not FIM and/or its affiliates are concerned in the operation thereof) and Contingent Liability Transactions. Advice on Contingent Liability Transactions may extend to investments not traded on exchanges recognised under the FSA or designated by the United Kingdom Financial Services Authority. Advice may relate to transactions with counterparties or through intermediaries that do not owe a duty of Best Execution.

FIM may provide investment advice to the Co-Manager subject to FIM having all necessary regulatory and other consents pursuant to the Investment Business Act 1998 of Bermuda to the extent FIM is carrying on investment business in or from within Bermuda by virtue of this Agreement or otherwise.

FADSAC0054424

10.    **Potential Conflicts of Interest and Disclosures**

FIM may be involved in other financial, investment or professional activities which may be similar to, or in competition with, its activities for the Co-Manager with respect to the Company. FIM may effect transactions in which FIM, or its partners, officers, employees and directors, has, directly or indirectly, a material interest, which may involve a potential conflict with FIM's duty to the Co-Manager and the Company. FIM shall disclose such conflicts, but shall not be under any obligation to account to the Co-Manager or the Company for any profit, commission or remuneration earned or received in connection therewith. However, FIM shall at all times:-

(a)    Have due regard to its duties to the Co-Manager and the Company and, where a conflict arises, use all reasonable endeavours to ensure it is resolved fairly; and

(b)    Where FIM acts as consultant to other ventures similar in nature to the Co-Manager's and the Company's business, act fairly with respect to the Co-Manager and the Company.

11.    **Fees and Expenses**

Fees and expenses shall be as detailed in Schedule 1 to this Agreement, or as agreed from time to time between the parties.

12.    **Exclusivity**

12.1 The appointment of FIM by the Co-Manager hereunder shall not be deemed to be an exclusive appointment. FIM shall be free to render similar services to others as if FIM were not acting as consultant to the Co-Manager under the terms hereof for so long as its services hereunder shall not be impaired thereby.

12.2 While this Agreement is in force, and for as long as FIM acts as consultant to the Co-Manager to advise it on the business of the Company, the Co-Manager may not appoint another consultant to provide services similar to the services that FIM provides under the terms of this Agreement.

FADSAC0054425

**13.    Liability**

13.1 In the absence of gross negligence, fraud or wilful default on the part of FIM, or failure to comply with instructions of the Co-Manager pursuant to clause 4.2, its directors, officers, employees or agents, FIM shall not be liable to the Co-Manager or the Company for any act or omission in the course of, or in connection with, the services rendered by it hereunder or for any decline in the value of the assets of the Company or any loss whatsoever that may result to the Company or the Co-Manager.

13.2 The Co-Manager agrees to keep FIM, its partners, officers, employees and directors indemnified from and against all claims, costs, charges, liabilities and expenses incurred by them directly or indirectly from any act or omission in the course of or in connection with the services provided by FIM hereunder ("Claims and/or Liabilities") provided that such indemnity shall not apply to the extent that any such Claim and/or Liability is due to the failure to comply with instructions of the Co-Manager pursuant to clause 4.2 or the fraud, wilful default or gross negligence of FIM, its partners, officers, employees, directors or agents.

**14.    Termination**

14.1 This Agreement and the appointment of FIM hereunder shall continue until 31 December 2002. Thereafter, this Agreement shall be automatically renewed for successive one year periods, subject to termination as of the close of each calendar month by either the Co-Manager or FIM giving to the other party not less than six months' written notice (or such shorter notice as the parties may agree to accept).

14.2 Without prejudice to the accrued rights and provisions intended to survive termination, this Agreement may be terminated forthwith by written notice given by the Co-Manager or FIM to the other party if:-

(a)  the other party shall commit any material breach of its obligations under this Agreement and shall fail to make good such breach within thirty days after receipt of notice from the other party requiring it so to do;

(b) the other party becomes insolvent or goes into liquidation (except a voluntary liquidation for the purposes of a reconstruction, amalgamation or merger upon terms previously approved in writing by the other party, such consent not to be unreasonably withheld or delayed) or if a receiver or administrator is appointed over all or any of its assets;

(c) the Co-Manager shall cease to be the co-manager of the Company; and

(d) FIM shall cease to be authorised by IMRO to provide its services under the terms of this Agreement.

14.3 Upon termination of this Agreement, FIM shall deliver to the Co-Manager or to such other person or corporation as the Co-Manager shall in writing direct, all books of account, correspondence and records or other documents which are in its power and/or possession, belonging to or relating to the Company.

14.4 On termination of this Agreement FIM shall be entitled to payment of its fees and expenses as referred to in clause 11 pro rata to the date of the termination and any additional expenses necessarily realised in settling or concluding outstanding obligations.

14.5 Termination of this Agreement shall operate without prejudice to any rights which either party may have against the other in relation to any antecedent breach by the other of any provision of this Agreement.

14.6 In the event of termination of this Agreement, all pending trades and transactions shall be settled in the ordinary course and consistent with existing trade practices.

15. **Confidentiality**

Each party shall at all times keep confidential, confidential information acquired in consequence of its services under this Agreement except information which it is bound to disclose under compulsion of law or compulsion of regulatory agencies to whose jurisdiction it is subject. This clause shall survive the termination of this Agreement.

16.    **Notices**

Any instructions, notices, demands, acknowledgements or requests to be given by either of the parties hereunder shall, subject to any express provision of this Agreement, be given in writing in the English language (and may be delivered in person or sent by fax, e-mail or recorded delivery post) to the other party at the following address or any address subsequently notified by the relevant party to the other:-

|  |  |
|---|---|
| **To FIM:** | FIM Limited<br>25-28 Old Burlington Street<br>London W1X 1LB<br>Attention: Carlo Grosso<br>Fax: (+ 44 20) 7494 1981 |
| **To the Co-Manager:** | Kingate Management Limited<br>99 Front Street<br>Hamilton HM11<br>Bermuda<br>Attention: Christopher Wetherhill<br>Fax: (+ 1 441) 296 6775 |

Notice given in person shall be effective when delivered.  Notice given by fax or e-mail shall be deemed to have been given contemporaneously unless delivered outside normal business hours in which case it shall be deemed to have been received at the next time after delivery when normal business hours commence.  Notice given by recorded delivery shall be deemed to have been given seventy-two hours after posting.  Evidence that the notice was properly addressed and sent by recorded delivery shall be conclusive evidence of posting.

17.    **Assignment**

Neither the benefit nor the burden of this Agreement shall be assigned by any party.

18.    **Independent Contractor**

In the performance of its duties hereunder, FIM shall be an independent contractor and not an employee or agent of the Co-Manager or the Company.

FADSAC0054428

19.    **Complaints**

FIM has in operation a written complaints procedure in accordance with the rules of IMRO for the effective consideration and proper handling of complaints from customers. The Co-Manager has the right to complain directly to FIM concerning the services rendered by FIM under the terms of the Agreement.  FIM shall address to the Co-Manager a written reply within ten (10) days of receipt of such complaint, and the complaint shall be considered as settled if the Co-Manager does not indicate otherwise within one (1) month of receipt of such reply.  If within two (2) months after the complaint is made, it has not been resolved to the satisfaction of the Co-Manager, the complaint shall be notified to IMRO by FIM.

20.    **Entire Agreement**

This Agreement sets forth the entire agreement of the parties relating to the subject matter hereof.

21.    **Waiver**

The failure by any party to enforce at any time or for any period any one or more of the provisions of this Agreement shall not be a waiver of any one or more of them or of the right at any time thereafter to enforce all or any of them.

22.    **Invalidity**

If any provision of this Agreement is or becomes invalid or contravenes any applicable law, the remaining provisions shall remain in full force and effect.

23.    **Amendments**

This Agreement may only be amended in writing by the parties. No amendments of the Articles of Association of the Company shall be effective for the purposes of this Agreement unless FIM has been notified thereof.

24.    **Counterparts**

This Agreement may be executed in one or more counterparts all of which taken together shall be deemed to constitute one and the same agreement.

25.  **Governing Law**

This Agreement will be governed by and construed in accordance with Bermuda law.  Bermuda courts are to have non-exclusive jurisdiction to settle any disputes or claims which may arise out of or in connection with this Agreement for which purposes all parties agree to submit to the jurisdiction of Bermuda courts. Nothing contained in this clause shall limit the right of any party to take court proceedings against any other party or parties in any other court of competent jurisdiction, nor shall the taking of court proceedings in one or more jurisdictions preclude the taking of court proceedings in any other jurisdiction, whether concurrently or not, to the extent permitted by the law of that other jurisdiction.

\* \* \* \* \* \* \* \* \* \*

FADSAC0054430

## SCHEDULE 1

### Fees and Expenses

**Consultancy Fee.**

In consideration for its services, from the Effective Date of this Agreement, FIM shall be due a fixed monthly fee from the Co-Manager in respect of each calendar month falling within the term of the Agreement, equal to USD 30,000.00 (thirty thousand US dollars) (the "Consultancy Fee").

The Consultancy Fee is payable in arrears as of the last Business Day of each calendar month.

The Consultancy Fee shall be subject to review on May 1, 2001.

**Payment of Fees.**

The Consultancy Fee is payable by the Co-Manager to FIM within ten (10) days after becoming due.

The Co-Manager may arrange to have the Company make payments directly to FIM for administrative convenience.

In the event that this Agreement is terminated, the Consultancy Fee shall be calculated as of such termination date. No additional remuneration shall be due to FIM, except that FIM shall be entitled to the reimbursement of reasonable additional expenses necessarily incurred in settling or concluding outstanding obligations.

The Consultancy Fee payable under this Agreement are payable exclusive of any Value Added Tax (if applicable).

**Other Costs and Expenses**

Unless otherwise agreed to by the Co-Manager and FIM, FIM shall bear all of its own costs and expenses incurred in the performance of the services provided pursuant to the Agreement, including those attributable to such office personnel, office space, office equipment and office services as may be required by FIM.

* * * * * * * * *

IN WITNESS whereof the parties hereto have caused this Agreement to be executed as of the day and year first above written.

SIGNED by                                    )
                                             )
       CWETHERHILL                           )
                                             )
for and on behalf of                         )
**KINGATE**                                  )
**MANAGEMENT LIMITED**                       )


SIGNED by                                    )
       C. GROSSO                             )
                                             )
for and on behalf of                         )
**FIM LIMITED**                              )

FADSAC0054432

# Deed of Novation

between

## Kingate Management Limited
as the Continuing Party

## FIM Limited
as the Outgoing Party

and

## FIM Advisers LLP
as the Incoming Party

relating to

**the assumption of obligations and benefits by FIM Advisers LLP of a consulting services agreement relating to Kingate Global Fund, Ltd – USD Shares**

Attorney Eyes Only

# CONTENTS

1.    Interpretation .................................................................................................... 1

2.    Novation............................................................................................................. 1

3.    Confirmation of terms ...................................................................................... 2

4.    Limitation Periods............................................................................................. 2

5.    Governing Law ................................................................................................... 2

Attorney Eyes Only

**THIS DEED OF NOVATION** is dated        29th July 2005 and made

**BETWEEN:**

(1)    **KINGATE MANAGEMENT LIMITED**, (the "Continuing Party"), a limited liability company incorporated in Bermuda and having its registered office at 99 Front Street, Hamilton HM 11, Bermuda; and

(2)    **FIM LIMITED**, (the "Outgoing Party"), a limited liability company registered in England and Wales and having its registered office at 20 St James's Street, London, SW1A 1ES, England; and

(3)    **FIM ADVISERS LLP**, (the "Incoming Party"), a limited liability partnership registered in England and Wales and having its registered office at 20 St James's Street, London, SW1A 1ES, England.

**Background:**

(A)    This Agreement is supplemental to the Original Agreement.

(B)    The parties hereto have agreed that with effect from the effective date the Outgoing Party shall cease to be a party to the Original Agreement and that the Incoming Party shall become a party thereto in place of the Outgoing Party and accordingly the Outgoing Party shall be released and discharged from the Original Agreement upon the terms and to the extent set out in this Agreement.

**THE PARTIES AGREE THAT:**

1.    **Interpretation**

In this Agreement:

"Original Agreement" means the Consulting Services Agreement dated 23rd April 2001 (as amended on June 7th 2001) made between the Continuing Party and the Outgoing Party.

"Effective Date" means 1st August 2005.

2.    **Novation**

2.1    **Substitution of parties**

(A)    The Incoming Party hereby undertakes to the Continuing Party to perform the Original Agreement and be bound by the terms thereof in every way as if the Incoming Party was, with effect from the Effective Date, a party to the Original Agreement in place of the Outgoing Party.

(B)    The Continuing Party hereby releases and discharges the Outgoing Party from all obligations and liabilities of the Outgoing Party under the Original Agreement becoming due to be performed or satisfied on or after the Effective Date and all claims and demands whatsoever in respect thereof and accepts the performance thereof by the Incoming Party in place of performance by the Outgoing Party and hereby undertakes to the Incoming Party, with effect from the Effective Date, to

LN: 1CFD8C8

1

Attorney Eyes Only

KING_DIL_000723
KGFSAC0000723

perform the Original Agreement and be bound by the terms thereof in every way as if the Incoming Party was a party to the Original Agreement in place of the Outgoing Party.

**2.2    Surviving obligations**

The Incoming Party shall be liable to the Continuing Party in respect of the respective obligations and liabilities of the Outgoing Party under the Original Agreement becoming due to be performed or satisfied prior to the Effective Date and all claims and demands in respect thereof in all respects as if this Agreement had not been made and the Incoming Party was a party to the Original Agreement in place of the Outgoing Party.

**3.    Confirmation of terms**

The Continuing Party and the Incoming Party hereby confirm the terms of the Original Agreement with the exception only of the substitution of parties hereby effected.

**4.    Limitation Periods**

Nothing in this Agreement shall have the effect of extending any limitation period set out in, or applicable to, the Original Agreement and nothing in this Agreement shall operate to enable any claims to be brought against the Incoming Party whether in tort, contract or otherwise which, but for this Agreement, would be statute barred if made against the Outgoing Party.

**5.    Governing Law**

This Agreement shall be governed by and construed in accordance with the laws of England and the parties hereto hereby submit to the non-exclusive jurisdiction of the English Courts.

IN WITNESS whereof this Deed of Novation has been executed as a deed by the parties hereto the day and year first above written.

LN: 1D5F403

2

Attorney Eyes Only

EXECUTED AS A DEED by
KINGATE MANAGEMENT LIMITED acting by:


Director


EXECUTED AS A DEED by
FIM LIMITED acting by:


Director


EXECUTED AS A DEED by
FIM ADVISERS LLP
acting by:


Member


LN: 1D5F403

3

Attorney Eyes Only

KING_DIL_000725
KGFSAC0000725