# EXHIBIT PP

08-01789-cgm    Doc 12768-42    Filed 03/04/16    Entered 03/04/16 10:49:19    Exhibit PP
Pg 1 of 16

***756 Prudential Assurance Co. Ltd. v. Fountain Page Ltd. and Another**

Queen's Bench Division
22 November 1990

**[1991] 1 W.L.R. 756**

Hobhouse J.
1990 Nov. 14, 15; 22

### Analysis

Practice—Witness statements—Exchange before trial—Witness statements and expert's report directed to be served by plaintiffs on defendants—Action settled—Whether any restriction upon subsequent use of statements or report in relation to other proceedings—R.S.C., Ord. 38, rr. 2A, 37, 42

1

The plaintiffs commenced proceedings in the High Court against the first three defendants, and subsequently the fourth *757 defendants were joined as parties to the action. The court gave directions requiring the plaintiffs to serve on the defendants witness statements and an expert's report, pursuant to R.S.C., Ord. 38, rr. 2A and 37 respectively. The dispute was settled by the fourth defendants just before the trial, but their solicitors retained the witness statements and expert's report which had been served on them in accordance with those directions. Pursuant to letters of request issued by a Texan court in proceedings between two Texan companies and the fourth defendant and a related English company, witnesses were examined in London under R.S.C., Ord. 70. It emerged that documents disclosed to or served on the fourth defendants in the English action, including the witness statements and expert's report, had been disclosed to third parties and used in the Texas proceedings both in Texas and in the examination in London. The examiner required the fourth defendants to apply to the court for release from their implied undertaking not to use the documents other than for the proper conduct of the English action.

On summonses by the fourth defendants and the plaintiffs seeking, inter alia, the determination of the court as to whether the witness statements and expert's report were subject to any restriction on their use other than in the English proceedings:—

*Held*, that since a party had a right to choose the extent to which he would adduce evidence and was required to disclose it to other parties only if he proposed to adduce it at trial witness statements and experts' reports served pursuant to R.S.C., Ord. 38 or to directions given thereunder could not be said to be served under compulsion and were not protected by the implied undertaking to use documents disclosed under compulsion only for the proper conduct of the litigation in which they were disclosed; but that such an obligation would be implied where, on a true construction of the rules of court under which a document had been served on another party, any rights of confidentiality or privilege in the document had been reserved; that no such obligation could be implied in relation to an expert's report since Part IV of Order 38 had been made under the specific authority of section 2(3) of the Civil Evidence Act 1972, which authorised rules overriding rights of privilege against disclosure, and Ord. 38, r. 42 expressly provided in unqualified terms that the recipient of a report was entitled to use it in evidence; but that, since Ord. 38, r. 2A merely regulated procedure and rule 2A(8) expressly preserved rights of privilege, a party on whom a witness statement had been served pursuant to Ord. 38, r. 2A was subject to an implied obligation, owed to the court, not to put the statement in evidence save at the trial of the action in which it had been served and then only if the party who had served it elected to call that witness, and not to use it or allow it to be used for any purpose other than the proper conduct of that action or for any collateral or ulterior purpose; and that, accordingly, the fourth defendants' disclosure of the witness statements to third parties and the use of them in the Texan proceedings constituted a breach of that duty and would be restrained (post, pp. 769E–G, 770A–B, 772B–F, H–773F, 774G–775A).

Comfort Hotels Ltd. v. Wembley Stadium Ltd. [1988] 1 W.L.R. 872 and Rush & Tompkins Ltd. v. Greater London Council [1989] A.C. 1280, H.L.(E.) applied.

*Per curiam*. Breach of the implied obligation arising under Ord. 38, r. 2A amounts to a contempt of court. The court has power wholly or partially to release the recipient from the obligation. Circumstances under

which that relaxation could be **\*758** allowed without the consent of the serving party are hard to visualise, particularly where there was any risk that the statement might be used to the prejudice of the serving party (post, p. 775A–B).

**The following cases are referred to in the judgment:**

- Black & Decker Inc. v. Flymo Ltd. [1991] 1 W.L.R. 753
- Comfort Hotels Ltd. v. Wembley Stadium Ltd. [1988] 1 W.L.R. 872; [1988] 3 All E.R. 53
- Crest Homes Plc. v. Marks [1987] A.C. 829; [1987] 3 W.L.R. 293; [1987] 2 All E.R. 1074, H.L.(E.)
- Derby & Co. Ltd. v. Weldon (No. 2), The Times, 20 October 1988
- Derby & Co. Ltd. v. Weldon (No. 9) (unreported), 18 October 1990,
- Mummery J.; The Times, 9 November 1990; Court of Appeal (Civil Division) Transcript No. 878 of 1990, C.A.
- Distillers Co. (Biochemicals) Ltd. v. Times Newspapers Ltd. [1975] Q.B. 613; [1974] 3 W.L.R. 728; [1975] 1 All E.R. 41
- Fairfield-Mabey Ltd. v. Shell U.K. Ltd. [1989] 1 All E.R. 576
- Grosvenor Hotel, London (No. 2), In re [1965] Ch. 1210; [1964] 3 W.L.R. 992; [1964] 3 All E.R. 354, C.A.
- Home Office v. Harman [1983] 1 A.C. 280; [1982] 2 W.L.R. 338; [1982] 1 All E.R. 532, H.L.(E.)
- Riddick v. Thames Board Mills Ltd. [1977] Q.B. 881; [1977] 3 W.L.R. 63; [1977] 3 All E.R. 677, C.A.
- Rush & Tompkins Ltd. v. Greater London Council [1989] A.C. 1280; [1988] 3 W.L.R. 939; [1988] 3 All E.R. 737, H.L.(E.)
- Webster v. James Chapman & Co. [1989] 3 All E.R. 939

**The following additional cases, supplied by courtesy of counsel, were cited in argument:**

- Acrow (Automation) Ltd. v. Rex Chainbelt Inc. [1971] 1 W.L.R. 1676; [1971] 3 All E.R. 1175, C.A.
- Attorney-General v. Guardian Newspapers Ltd. (No. 2) [1990] 1 A.C. 109; [1988] 2 W.L.R. 805; [1988] 3 All E.R. 545, Scott J. and C.A.; [1990] 1 A.C. 109; [1988] 3 W.L.R. 776; [1988] 3 All E.R. 545, H.L.(E.)
- Bibby Bulk Carriers Ltd. v. Cansulex Ltd. [1989] Q.B. 155; [1989] 2 W.L.R. 182; [1988] 2 All E.R. 820
- Causton v. Mann Egerton (Johnsons) Ltd. [1974] 1 W.L.R. 162; [1974] 1 All E.R. 453, C.A.
- Esterhuysen v. Lonrho Plc. (unreported), 24 May 1989; Court of Appeal (Civil Division) Transcript No. 484 of 1989, C.A.
- F. (orse. A.) (A Minor) (Publication of Information), In re [1977] Fam. 58; [1976] 3 W.L.R. 307; [1976] 3 All E.R. 274; [1977] Fam. 58; [1976] 3 W.L.R. 813; [1977] 1 All E.R. 114, C.A.
- I.T.C. Film Distributors Ltd. v. Video Exchange Ltd. [1982] Ch. 431; [1982] 3 W.L.R. 125; [1982] 2 All E.R. 241
- Medway v. Doublelock Ltd. [1978] 1 W.L.R. 710; [1978] 1 All E.R. 1261
- Naylor v. Preston Area Health Authority [1987] 1 W.L.R. 958; [1987] 2 All E.R. 353, C.A.

SUMMONSES

By a writ issued on 21 February 1986 the plaintiffs, Prudential Assurance Co. Ltd., brought an action for damages for deceit and breach of duty against the first three defendants, Fountain Page Ltd., Adrian Thomas Fountain and Paul James Page. On 11 April 1986 the fourth defendant, Tozer Fountain Page Ltd., applied to be joined as defendants to the action and Bingham J. so ordered. On 20 June 1988 **\*759** the court gave directions pursuant to R.S.C., Ord. 38, r. 2A that the parties should serve witness statements on each other and pursuant to R.S.C., Ord. 38, rr. 36 and 37 that the plaintiffs should serve on the defendants a copy of the proposed evidence of their expert witness, Mr. Lawrence Todd. Pursuant to those directions, the plaintiffs served on the defendants five unsigned witness statements together with attached documents and the expert report of Mr. Todd. On 27 June 1988 the plaintiffs and the fourth defendants agreed to settle the action and judgment was entered and the proceedings stayed accordingly. The witness statements and expert report were retained by the fourth defendants' solicitors, Hewitt Wollacott Chown, and subsequently passed to their successor firm, Cameron Markby Hewitt. Proceedings having been commenced in February 1988 by two Texas insurance firms in the District Court of Harris County in the State of Texas against, inter alios, the fourth defendants and another English company belonging to the same group, Hinton Hill and Phillips Ltd., the Texas court issued letters of request under the Hague Convention of 1970 addressed to the High Court in London, pursuant to which witnesses were examined in London by an examiner appointed under the Evidence (Proceedings in Other

Jurisdictions) Act 1975 and R.S.C., Ord. 70. The defendants to those proceedings put in evidence and otherwise made use of documents disclosed in the 1986 proceedings, including documents attached to the witness statements served in those proceedings.

On 29 October 1990 the fourth defendants issued a summons in the 1986 action asking that they and Cameron Markby Hewitt be released from the implied undertaking arising in relation to documents which they had obtained on discovery in that action and that the court should rule that the other documents which they had used or disclosed in the Texas proceedings were not subject to any restriction on their use or disclosure arising from their having been obtained in the course of the 1986 action.

On 8 November 1990 the plaintiffs issued a summons in those proceedings seeking, inter alia, a ruling that the following four classes of documents were each subject to restrictions on their use, disregard of which amounted, or would amount, to a contempt of court: (1) any document disclosed by the plaintiffs upon discovery in the 1986 action, (2) any witness statement or document attached or appended thereto disclosed by the plaintiffs in the 1986 action pursuant to the order of the court made in that action, (3) any expert's report or document attached or appended thereto disclosed by the plaintiffs in the 1986 action pursuant to the order of the court in that action, and (4) any affidavit or exhibit thereto sworn on behalf of the plaintiffs in the 1986 action; and consequential relief including orders to prevent the inclusion of any of the relevant documents, or references to them, in the depositions to be remitted by the High Court to the Texas court pursuant to the letters of request issued by the Texas court.

By a writ issued on 9 November 1990 the plaintiffs commenced another action against Hinton Hill and Phillips Ltd. and their Texas attorneys, Kroll and Tract, claiming injunctive relief to restrain, inter alia, alleged breaches of confidence and direct and/or indirect contempt of court. The defendants to that action appeared by counsel on the hearing of the summonses.

The summonses were heard and the judge gave his ruling in chambers, for reasons to be given later in open court.

*760

The facts are stated in the judgment.

**Representation**

• Michael Collins Q.C. and Mark Templeman for the plaintiffs.
• Adrian Hamilton Q.C. and Richard Southern for the fourth defendants.
• Robert Webb Q.C. and Charlotte Jones for the defendants in the second action.

*Cur. adv. vult.*

HOBHOUSE J.

22 November. delivered the following judgment. These are my reasons for a ruling that I gave on 15 November concerning the status of certain witness statements and an expert's report that had been served under R.S.C., Ord. 38 in an action which was subsequently settled before trial. It raises the question whether there is any restriction upon the subsequent use of those statements and that report by the party on whom they were served, or by others, in relation to other proceedings. The summonses therefore raised an important question whether there is any restriction upon the subsequent use of such documents analogous to the restrictions that exist in relation to documents that are obtained on discovery.

The proceedings in which the documents were served and in which the summonses before me were issued was an action started in this court in 1986 by the Prudential Assurance Co. Ltd. ("the London plaintiffs"). Their solicitors were Ince & Co. The claims in the action were for damages for deceit and/or breach of duty, for declarations that certain purported open covers issued on behalf of the London plaintiffs were procured fraudulently and were void, and that the London plaintiffs were entitled to be indemnified in respect of various potential losses. There were four defendants, two individual and two corporate. The only substantial defences were those sought to be raised by the fourth defendants who were Tozer Fountain and Page Ltd., a firm of London insurance brokers that was, and is, a subsidiary of W. S. Moody (London) Ltd. The action was to be tried at the end of June 1988 but a few days before the plaintiffs and the fourth defendants agreed to settle the dispute between them and to compromise the claims made in the action. The terms of settlement dated 27 June included a provision for the fourth defendants to make a substantial payment to the plaintiffs in full and final settlement of their claims; it is not necessary or appropriate at present to refer further to the terms of settlement. On the same day judgment for damages to be assessed was entered in the action for the plaintiffs against the two personal

defendants with costs and all further proceedings in the action as between the plaintiffs and the fourth defendants were stayed upon the terms of the settlement between them.

At earlier stages of the 1986 action there had been interlocutory proceedings including the grant of Mareva injunctions and the making of Anton Piller orders. Many affidavits had been sworn. Discovery had been given and documents inspected and copied. On 20 June 1988, while final preparations were still being made for the trial, the court gave further directions that the plaintiffs and the fourth defendants should serve on each other written statements of the oral evidence which they each intended to lead at the trial and for both parties to be at liberty to call expert evidence at the trial; it appears that the fourth defendants had already served an expert's report and accordingly the ***761** leave given to the plaintiffs to call an expert witness was on condition that they furnish a copy of his proposed evidence to the fourth defendants. Pursuant to these directions Ince & Co. served on Hewitt Wollacott Chown, who were at that time the fourth defendants solicitors, five unsigned statements of witnesses to which were attached substantial further documentation and an expert's report from a Mr. Lawrence Todd. In respect of the witness statements the direction was made under Ord. 38, r. 2A. In respect of the expert's report the direction was made under Ord. 38, rr. 36 and 37.

Because of the settlement of the action there was no trial. No documents were ever put in evidence in open court. Neither the witness statements nor the expert's report were referred to or put in evidence. However, the fourth defendants' solicitors retained the documents and they were subsequently handed over to their successor firm Cameron Markby Hewitt.

In February 1988 an action had been started in the District Court of Harris County in the State of Texas by two insurance businesses of that state claiming over U.S.$10 million damages for various alleged tortious interferences with contract and prospective business relations and negligent misrepresentation and infliction of emotional distress. Allegations of fraud were also made. The defendants in the Texas proceedings included the English fourth defendants and Hinton Hill and Phillips Ltd., another English company belonging to the same group. It appears that both those companies accepted the jurisdiction of the Texas court. Both were represented in those proceedings by a Texas firm of attorneys called Kroll and Tract. Hewitt Wollacott Chown and/or Cameron Markby Hewitt (whom I will from now on refer to simply as "the London solicitors") apparently supplied documentation which had come into existence in the 1986 action to Kroll and Tract ("the Texas attorneys") but not documents which had been solely obtained on discovery. Subsequently some of those documents were disclosed to the plaintiffs in the Texas action.

Further, within the last two months, letters of request under the Hague Convention of 1970 have been issued by the Texas court addressed to the High Court in London and pursuant to those letters of request witnesses have been and are being examined in London under the Evidence (Proceedings in Other Jurisdictions) Act 1975 and R.S.C., Ord. 70. These examinations are being conducted in London at the London offices of the Texas attorneys. During the course of these examinations the defendants have been putting in evidence and otherwise making use of various of the documents, including documents discovered in the 1986 action which had been attached to witness statements. As a result of this it has been pointed out to the London solicitors and the Texas attorneys that this conduct is at least to some extent clearly in breach of the implied undertakings that were given in the 1986 action and may involve further acts of contempt of the English courts. The examiner appointed by a master of the Queen's Bench Division to conduct the examinations in London has properly required the defendants to make an application to this court to be released from their undertakings before proceeding further with the examinations.

It has also emerged that the fourth defendants and the London solicitors have, or may have, committed contempt of court by parting with some of the documents in the United States and/or in using them there for the purposes of the Texas proceedings. Also, of more direct ***762** concern to the London plaintiffs, it has been stated by the defendants that notwithstanding the settlement of the 1986 action the defendants intend to try to join the London plaintiffs in the Texas action with a view to making claims against the London plaintiffs in that action.

In these circumstances the fourth defendants have issued a summons in the 1986 action asking that they and the London solicitors be released from the implied undertakings that they gave in that action in relation to documents obtained on discovery and that the court should rule that the other documents which they have used or disclosed in the Texas proceedings were not subject to any restriction arising from their having been obtained in the course of the 1986 action. The London

plaintiffs have countered with a summons of their own which asks for various heads of relief which, in essence, amount to an application for a ruling that four classes of documents are each covered by restrictions on their use, disregard of which amounts, or will amount, to a contempt of court, and for consequential injunctions and/or orders to prevent further breaches and remedy those that have already taken place. The London plaintiffs also asked for orders to prevent the inclusion of any of the relevant documents, or references to them, in the depositions that will in due course be remitted by the High Court back to the Texas court.

Further, the London plaintiffs have, shortly before this hearing, commenced another action ("the 1990 action") against Hinton, Hill and Phillips Ltd., that is to say the English registered company (associated with the fourth defendants) which is the primary defendant in the Texas action, and Kroll and Tract, that is to say the Texas attorneys, who also have a place of business within the jurisdiction of this court. In the writ in the 1990 action the London plaintiffs claim injunctive relief in respect of alleged breaches of confidence, direct and/or indirect contempt of court and alleged unlawful interference with the trade or business of the London plaintiffs. They have now asked, effectively ex parte, for interim injunctions against those defendants.

The proceedings before me have been in chambers and by agreement all potentially affected parties, including London lawyers appointed by the Texas plaintiffs, have been allowed to be present on the basis that this was clearly convenient and it was to be without prejudice to any right of the London plaintiffs to treat the relevant material as still confidential and subject to restriction (if that be its character which is, of course, in dispute). The proceedings in which I have given my ruling are the cross-applications in the 1986 action. I heard counsel for the London plaintiffs, Mr. Collins, and counsel for the fourth defendants and the London solicitors, Mr. Adrian Hamilton. I also invited Mr. Webb who was instructed on behalf of the 1990 defendants to address me on the question of law since his clients, although not technically bound, would clearly be affected by any ruling that I might make; in the event he considered it necessary to do little more than adopt the arguments of Mr. Hamilton. The Texas plaintiffs, although represented by counsel, did not seek to address me.

The cross-applications in the 1986 action involved two phases: first the determination as a matter of law what if any documents were subject to restriction and the nature and extent of that restriction, and second whether and if so to what extent and on what terms the fourth defendants and the London solicitors should be released from those restrictions and what injunctive or other relief the London plaintiffs should be granted against them. These reasons relate only to the ruling *763 that I gave in respect of the first phase. It involved a question of law which so far as counsel are aware has not previously been the subject of judicial decision and it is for that reason that I am now giving my reasons in open court. It should be stressed that I am in no way concerned with any matter of Texas law or procedure; those are matters for the Texas court. I am solely concerned with English law and with the incidents of proceedings within the jurisdiction of the English courts and with the duties owed under English law by persons who are subject to the jurisdiction of the English courts.

In the summons issued by the London plaintiffs, four categories of documents are conveniently set out: (1) any document disclosed by the London plaintiffs upon discovery in the 1986 action; (2) any witness statement or document attached or appended thereto disclosed by the London plaintiffs in the 1986 action pursuant to the order of the court made in that action; (3) any expert's report or document attached or appended thereto disclosed by the London plaintiffs in the 1986 action pursuant to the order of the court in that action; (4) any affidavit or exhibit thereto sworn on behalf of the London plaintiffs in the 1986 action.

The argument before me involved only the second and the third of these categories. There was no argument about the first category, documents obtained on discovery, because the defendants and the London solicitors accepted that the implied undertaking applied to those documents. As regards the fourth category, affidavits and exhibits, sworn on behalf of the London plaintiffs, it was accepted by the London plaintiffs that these were only subject to a restriction if they were covered by the compulsion principle. On this basis it was accepted by both sides that only one affidavit, together with its exhibits, was the subject of any implied undertaking and that all the remaining affidavits and exhibits were subject to no relevant restrictions.

The documents coming into the second category are the five unsigned witness statements. Their length was between four and 16 pages long and documents were attached to three of them (in one case 94 pages of attached documents). No Civil Evidence Act notices had at any time been served in respect of any of those

statements or documents so the only rule of court which is applicable to the order for their service was Ord. 38, r. 2A. No argument was advanced which was based upon the actual contents of these statements nor upon the actual documents which were attached to them although, by way of illustration of the London plaintiffs' arguments it was pointed out that such documents would almost certainly consist of documents which had been disclosed by one of the parties to the litigation, not necessarily the party serving the statement, or if they were documents not previously disclosed would be documents which had been privileged; similarly the statement itself would probably refer to disclosed or other documents whether or not they were annexed and might refer to transactions which were otherwise covered by some category of privilege. However I was asked to give my ruling as a matter of principle and I was not actually referred to any of the statements or annexures.

The position was the same with regard to the single expert statement which was involved, that of Mr. Lawrence Todd. This may be because Mr. Todd is now acting, apparently without the objection of any relevant party, as the expert witness for the Texas plaintiffs in the Texas proceedings (which lends a certain artificiality to the London plaintiffs' ***764** present objections). I have assumed accordingly that the statement is a statement which contains expressions of opinion and is properly categorised as a written report containing the substance of the opinion evidence which he was to give as an expert witness at the trial of the 1986 action had that trial taken place. I mention this since it is a commonplace experience that so-called experts' reports are not so confined and frequently refer to many other matters which may or may not correspond to the evidence at the trial and that expert reports often include matters which are on the one hand evidence to be given by a factual witness or on the other hand are not admissible in evidence at all. I have not had to consider any such complication and if such matters be legally relevant they will have to be argued and decided in another case: see the discussion in Phipson on Evidence, 14th ed. (1990), at pp. 529–530.

Although the first and fourth categories were no longer in dispute before me each side advanced arguments in support of their arguments concerning the status of statements and reports which were based upon the authorities which govern the question of the restriction of the use of documents obtained on discovery and affidavits. In respect of both documents disclosed on discovery and affidavits the relevant principle is expressed in terms of an implied undertaking arising from the compulsion of a court order requiring the opposite party, whether he wishes to or not, to disclose documentary or factual material. In the leading case, Riddick v. Thames Board Mills Ltd. [1977] Q.B. 881, 896, Lord Denning M.R. adopted the statement in *Bray on Discovery*, 1st ed. (1885), p. 238:

> "A party who has obtained access to his adversary's documents under an order for production has no right to make their contents public or communicate them to any stranger to the suit … nor to use them or copies of them for any collateral object … If necessary an undertaking to that effect will be made a condition of granting an order …"

In Crest Homes Plc. v. Marks [1987] A.C. 829, 853, Lord Oliver of Aylmerton said:

> "a solicitor who, in the course of discovery in an action, obtains possession of copies of documents belonging to his client's adversary gives an implied undertaking to the court not to use that material nor to allow it to be used for any purpose other than the proper conduct of that action on behalf of his client … It must not be used for any 'collateral or ulterior' purpose …"

This undertaking is implied whether the court expressly requires it or not. The expression of the obligation as an implied undertaking given to the court derives from the historical origin of the principle. It is now in reality a legal obligation which arises by operation of law by virtue of the circumstances under which the relevant person obtained the documents or information. However treating it as having the character of an implied undertaking continues to serve a useful purpose in that it confirms that the obligation is one which is owed to the court for the benefit of the parties, not one which is owed simply to the parties; likewise, it is an obligation which the court has the right to control and can modify or release a party from. It is an obligation

which arises from legal process and therefore is within the control of the court, gives rise *765 to direct sanctions which the court may impose (viz. contempt of court) and can be relieved or modified by an order of the court. It is thus a formulation of the obligation which has merit and convenience and enables it to be treated flexibly having regard to circumstances of any particular case. Treating the duty as one which is owed to the court and breach of which is contempt of court also involves the principle that such contempts of court can be restrained by injunction and that any person who knowingly aids a contempt or does acts which are inconsistent with the undertaking is himself in contempt and liable to sanctions: see Distillers Co. (Biochemicals) Ltd. v. Times Newspapers Ltd. [1975] Q.B. 613.

The rational basis for the rule is that where one party compels another, either by the enforcement of a rule of court or a specific order of the court, to disclose documents or information whether that other wishes to or not, the party obtaining the disclosure is given this power because the invasion of the other party's rights has to give way to the need to do justice between those parties in the pending litigation between them; it follows from this that the results of such compulsion should likewise be limited to the purpose for which the order was made, namely, the purposes of that litigation then before the court between those parties and not for any other litigation or matter or any collateral purpose: see, for example, *per* Lord Keith of Kinkel in Home Office v. Harman [1983] 1 A.C. 280, 308.

It is also to be noted that this principle is independent of any question of confidentiality. The documents produced on discovery may or may not be confidential in character; the implied undertaking and the restriction upon the use that may be made of the documents or information by the party compelling their disclosure is independent of the actual character of the document or information. Confidentiality is relevant to the principle of privilege but not to the compulsion principle.

It was argued before me that the compulsion principle is not simply confined to orders which require the disclosure of documents or information. In litigation a party may be subjected to orders or rules of procedure which require him to do various things or take various steps in the action. It was argued that whenever a party was in this position he was acting under a compulsion which brought the implied undertaking into force. This argument can be attractively developed. It is said that many things in actions are done because a party is ordered or otherwise required to do them. They are required to deliver pleadings, swear and lodge affidavits, call witnesses, or, in the present context, serve advance copies of the evidence upon which he proposes to rely at the trial. In all these situations the practical sanction is similar to that which arises from a failure to give discovery or respond to other orders. The primary sanction that the court imposes is to strike out the claim or the defence. If a party fails to deliver a pleading or to lodge or adduce evidence he will fail to protect his rights and the other party's claims or defences will prevail. The outcome for the litigant is in practical terms the same. However in legal terms this is not correct. There is distinction between orders, the breach of which is a contempt court and those orders or rules which merely give rise to a default. The principle of compulsion applies to the former category only. This has been made clear in a number of cases.

At one of the interlocutory stages of the Derby & Co. Ltd. v. Weldon litigation, which it is convenient to call Derby & Co. Ltd. v. Weldon (No. 2) The Times, 20 October 1988, Sir Nicolas Browne-Wilkinson V.-C. gave an interlocutory ruling in a situation which was very similar to that which is raised in the present proceedings. He was asked to rule upon the restriction that applied to certain classes of documents which had been produced in that action. The reason why he was asked to give that ruling was because one of the defendants had been sued by another person in the courts of New York and the New York plaintiff had obtained subpoenas from the New York court requiring the plaintiffs in the London proceedings to produce those documents in New York. The relevant documents fell into four categories: first, documents which the plaintiffs had produced on discovery or themselves put in evidence; second, affidavits and exhibits which the defendants in London had put in evidence in the course of interlocutory proceedings, third, documents exhibited to an affidavit voluntarily sworn by one of the defendants but only produced to the plaintiffs pursaunt to the Chancery master's order to provide inspection of documents referred to in an affidavit; fourth, affidavits and exhibits sworn by the defendants under compulsion of court orders for discovery in support of orders for Mareva relief.

The first of these categories presented no problems; they were the English plaintiff's own documents and the fact that they had produced or used them in the Chancery proceedings was irrelevant and gave rise to no restriction upon their use by the plaintiffs. The fourth category was covered by the compulsion principle except that some of the affidavits had originally been sworn as result of an order of the

Chancery judge but were subsequently put in evidence before the Court of Appeal and referred to, directly or indirectly, in open court; under Ord. 24, r. 14A, those affidavits, etc. were therefore no longer subject to any restriction. By contrast the affidavits which were only brought into existence by reason of orders that the Court of Appeal itself made and had not thereafter been referred to or used in open court were, and remained, subject to a restriction.

With regard to the second cagtegory, that is to say affidavits which were in the possession of the English plaintiffs because they had been sworn and put in evidence in the Chancery proceedings by the English defendants when they were seeking to resist *Mareva* injunctions, Sir Nicholas Browne-Wilkinson V.-C. commented: "the fact of the matter is that the defendants chose that course themselves and voluntarily disclosed the information and documents contained in their affidavit." He referred to the submission of the defendants' counsel that:

> "even though the documents were not disclosed under compulsion of a court order or court procedure, there is an implied obligation … not to disclose those documents at least until they have been used in open court."

He continued:

> "I reject that submission without any hesitation. There is no trace of the existence of any such obligation in any authority. Indeed the whole development of the law relating to the implied undertaking affecting documents disclosed on discovery would have been quite unnecessary had any such general principle … existed in English law. The voluntary disclosure of documents in the course of interlocutory proceedings by a party does not come within the rationale which is the basis of the implied undertaking relating to *767 documents disclosed on discovery. In relation to documents voluntarily disclosed the court has not invaded the privacy of the party. The party has, for his own purposes in defending a case, decided himself to use the documents rather than maintain his privacy. It is the party who has destroyed the privacy of the document, not the plaintiff or the court … It is true as [counsel] says that apart from litigation the defendants would not have disclosed the documents. They had the unhappy choice of deciding whether to defend the proceedings at that stage, maintaining that privacy, or to put in the documents. But it is an unavoidable consequence of all litigation that a party who chooses to put in evidence, necessarily risks such evidence becoming available to others. In my judgment the special protection given to documents disclosed under compulsion of discovery procedures does not apply to any wider class of documents. If [counsel] were right, I can see no logical step short of holding that all documents produced in litigation (whether voluntarily or involuntarily and whether at an interlocutory stage or later) remain confidential to the parties unless and until used in open court. That is not a result I will be prepared to reach unless compelled to do so by authority and, as I have said, there is none."

The Vice-Chancellor also had to deal with a further argument which was based upon an allegation that there was a private law duty of confidence owed by parties to litigation not to disclose such material to third parties even though there was no implied undertaking or notwithstanding that any implied undertaking had ceased to be applicable because of the subsequent use of the relevant documents in open court. He rejected that argument. There was no basis for any such private law duty of confidence; even if there were, he said, "such duty can only be implied from the circumstances of the case." He continued:

> "Such private duty of confidence cannot, in my judgment, be wider

than that imposed by the implied undertaking. It seems to me impossible to imply a wider private duty since to do so would be to have two parallel but different obligations, but arising by implication from the same circumstances. That is a concept which I have never previously come across."

It is clear that where documents are produced in the course of legal proceedings, or information provided, the further use of that material must be governed by the legal principles or rules of court which relate to the use of such material and not by any private law rights. It is of course an a fortiori position where there were no antecedent private law rights in respect of that material; the use of material in litigation cannot itself give rise to that class of right. The remedies that arise, if at all, arise from the duty owed by the relevant person to the court and the capacity of a person with an interest in the enforcement of those rights to obtain further orders from the court against persons directly or indirectly involved in breaches of that duty.

With regard to the third category of documents that he had to consider, that is to say documents which a party was required to produce because they had been referred to in a voluntary affidavit, the Vice-Chancellor said that the source or the obligation to produce those documents was the voluntary affidavit and that therefore the subsequent *768 order of the court was merely the recognition of an obligation which the party had already voluntarily accepted. Such documents were subject to no relevant restriction.

This approach to the distinction between what is produced by a party under compulsion and what is produced voluntarily has since been re-affirmed in connection with witness statements and experts reports exchanged under Order 38. In Comfort Hotels Ltd. v. Wembley Stadium Ltd. [1988] 1 W.L.R. 872 Hoffmann J. was concerned with a challenge to the validity of Ord. 38, r. 2A and its relationship to the right of privilege. I will have to refer again to this authority later on and it is therefore convenient to set out quite fully the context in which the point arose. Rule 2 A was introduced by a statutory instrument made by the Supreme Court Rules Committee under their general power in section 84(1) of the Supreme Court Act 1981:

"Rules of court may be made for the purpose of regulating and prescribing the practice and procedure to be followed in the Supreme Court." This meant that, in the words of Lord Denning M.R. in In re Grosvenor Hotel, London (No. 2) [1965] Ch. 1210, 1243, the rule must be confined to regulating and prescribing procedure and cannot alter the rules of evidence for the ordinary law of the land. Therefore counsel argued before Hoffmann J. that a direction under rule 2A would infringe the rights of privilege to refuse to disclose documents or information which fall within the scope of such privilege. Hoffmann J. continued [1988] 1 W.L.R. 872, 877–878:

"Ord. 38, r. 2A has the effect of empowering the court to make it a condition of a party's ability to lead oral evidence at the trial that he should have given prior notice of such evidence in the form of a written statement served on the other parties. It does not mean that he cannot be compelled to disclose any document or information. Anything which he does not wish to disclose he may still keep to himself. It is only if he wants to disclose the information by way of evidence at the trial that he may now be required as a pre-condition to disclose it in written form in advance. What the rule therefore does is to advance the moment at which a party must examine the information he has gathered for the purposes of the trial and decide what he is going to use and what he is going to withold … In my judgment, therefore, the privilege which is preserved by Ord. 38, r. 2A(8) is not infringed by a requirement for the service of statements under sub-rule (2), nor does the making of the rule override the privilege. In my view the privilege remains intact and the rule merely regulates the practice and procedure of the court relating to the way in which oral evidence may be given."

The other case is Derby & Co. Ltd. v. Weldon (No. 9) (unreported), 18 October 1990, Mummery J.; The Times, 9 November 1990; Court of Appeal (Civil Division) Transcript No. 878 of 1990. The application with which the courts were there concerned was an application by the plaintiffs that the defendants should be required to deliver an expert's report on a particular topic even though those defendants did not propose to lead any expert evidence upon that topic at the trial. There had previously been a direction by the court under Ord. 38, r. 37 for the exchange of experts' reports on a number of topics and the plaintiffs were proposing to call evidence on all of them. Both Mummery J. and the Court of Appeal decided that the effect of Part IV of Order 38 and any direction given thereunder was not to impose any requirement on a **\*769** party to serve an expert's report whether or not he proposed to lead any expert evidence; all it did was to impose a condition with which he must comply if he did intend to lead such evidence. Therefore the application was mistaken. Comfort Hotels Ltd. v. Wembley Stadium Ltd. [1988] 1 W.L.R. 872 was cited and both Mummery J. and Dillon L.J. in the Court of Appeal followed and adopted what Hoffmann J. had said. Dillon L.J. referred to the fact that proofs of evidence and reports obtained by solicitors for the purposes of legal proceedings are privileged and continued:

> "As I see it, the provisions in Part IV, and in particular rule 36, and the other rules which I have mentioned, do not have the direct effect of overriding the privilege. What they do is to empower the court to make it a condition of a party's ability to adduce expert evidence at the trial that he should have given prior notice of such evidence in the form of a written statement served on the other parties. That is in line with the view taken under Ord. 38, r. 2A by Hoffmann J. in Comfort Hotels Ltd. v. Wembley Stadium Ltd. [1988] 1 W.L.R. 872, 877H. Hoffmann J. went on: 'It does not mean that he can be compelled to disclose any document or information.' It may be that he can be compelled to disclose any document referred to by his expert in the expert's report and in effect incorporated in the report, but that is not this case. What is wanted by the plaintiffs is, if it exists, the report prepard by [the defendants' expert] on the alternative initial conspiracy, or alternatively that such a report should be prepared and disclosed … The way, as I see it, the procedure works is that the party can choose whether or not to call his expert. His expert's report, until disclosed, is privileged. When it is disclosed it loses the privilege …"

From these authorities it is clear that there is no blanket restriction on the use of documents and information acquired in the course of litigation. Prima facie there is no restriction. The compulsion exception is confined to documents and information which a party is compelled, without any choice, to disclose. Where a party has a right to chose the extent to which he will adduce evidence or deploy other material, then there is no compulsion even though a consequence of such choice is that he will have to disclose material to other parties. On the authority of the Comfort Hotels case and Derby & Co. Ltd. v. Weldon (No. 9), witness statements and experts' reports served pursuant to the provisions of Order 38 or directions given thereunder are not served under compulsion and are not protected by the duties or undertakings which the court implies where there is compulsion.

It follows that if the London plaintiffs are to succeed before me upon their application that a restriction should be recognised on the right of the fourth defendants and the London solicitors to use the seven witness statements and the expert report which are in dispute before me, the London plaintiffs must make out some basis of restriction which does not depend upon the principle of compulsion. To do this they invoke the privilege in the documents which existed prior to their service on the fourth defendants, which privilege derived in part from their confidential character (see Fairfield-Mabey Ltd. v. Shell U.K. Ltd [1989] 1 All E.R. 576), and rely upon the provisions of Order 38 which they say either confirm that that privilege has only been waived to a limited extent, or conditionally, or alternatively that Order 38 does not debar them from **\*770** continuing to assert that privilege. The London plaintiffs say therefore that the court should recognise those continuing rights of privilege and allow them

either to enforce rights of confidentiality in respect of those documents or to ask the court to rule that the fourth defendants and the London solicitors are under a duty to the court which restricts the use that may be made of those documents.

I accept the submission of Mr. Hamilton that if the London plaintiffs are to succeed on this line of argument it must be by the demonstration of a duty owed to the court, analogous to that owed under the implied undertaking, which derives from the circumstances of the case and in particular as a matter of implication from the relevant rules of court. I consider that this is not only correct in principle but is also in accordance with what was decided by Sir Nicolas Browne-Wilkinson V.-C. in Derby & Co. Ltd. v. Weldon (No. 2) The Times, 20 October 1988. Prima facie, the use of documents and information in litigation is inconsistent with any such restriction or the reservation of any private law right. However such restrictions are capable of existing and where they do they derive from rules of procedure or principles of law recognised by the courts as being incidents of such procedure.

There is no conceptual difficulty about the reservation of rights of confidentiality or privilege notwithstanding that a document or piece of information has been communicated to another. One can take three examples to illustrate this.

First, in private law the concept of breach of confidence is well recognised. It has as its basis a situation where an owner of confidential information parts with it to another on the terms, or in circumstances, which impose a duty of confidence on that other and restrict the use that that other may make of the information. So although that other has gained possession of the confidential information, the original owner has not lost his rights over that informaiton and he can invoke legal and equitable remedies to enforce his rights.

A second example can be found in R.S.C., Ord. 27, r. 2. That rule permits a party to litigation to serve on another a notice requiring that other to admit, for the purpose of that cause or matter only, certain facts. The other party may of course refuse to make any admission but, if he does make an admission, sub-rule (2) of the rule applies. This provides:

> "An admission made in compliance with a notice under this rule shall not be used against the party by whom it was made in any cause or matter other than the cause or matter for the purpose of which it was made or in favour of any person other than the person by whom the notice was given …"

This is an example of where the rules of court make express provision that, notwithstanding that the party making the admission is acting entirely voluntarily, the admission made is subject to specific restrictions (analogous to those which arise from the implied undertaking) preventing its use otherwise than in the litigation in which it was made. The rationale is not based upon any principle of compulsion but upon the recognition of the benefits that will flow for the administration of justice in facilitating such admissions and the fact that the procedure in a case is, and should be, directed to the achievement of justice in that particular case.

\*771

The third example, which is perhaps the most pertinent, is the situation which arises from without prejudice communications. Here again the rationale is similar. It is the policy of the law to permit, and indeed encourage, confidential negotiations to take place to further the settlement of disputes and the law accordingly recognises that there shall be a restriction upon the use that can be made by the recipient of any such communication. The recent decision of the House of Lords inRush & Tompkins Ltd. v. Greater London Council [1989] A.C. 1280 establishes the wide ambit of the restriction that arises from communications being without prejudice. The restriction affects not only the party who received the communication but also any other party and the principle "once privileged always privileged" will apply to subsequent litigation as well as the actual litigation in relation to which the without prejudice communication was made.

The rule is described in the Rush & Tompkins case as one of the admissibility of evidence but this, as the decision in that case demonstrates, does not cover the full scope of the rule. Also, the without prejudice communication is, ex hypothesi, a communication which, were it not privileged, would be admissible in evidence; typically it will be an admission against the interest of the party making it. It would be admissible and relevant evidence were it not for the fact that there is a restriction upon the use that the recipient of the communication, or any other person, can make of that piece of evidence. The restriction includes the embargo

upon putting it in evidence. The scope of the rule is wider because it includes a right not to reveal the communications to others, which was the actual point of decision in the Rush & Tompkins case; they set aside an order that had been made by the Court of Appeal that discovery of the documents should be given to other parties in the aciton.

The without prejudice principle is normally referred to as a head of privilege. However, as between the parties to a without prejudice communication, it is privilege in a rather different sense from that which is normally used when talking about discovery — hence the use of the word "admissibility" in the Rush & Tompkins case. In Webster v. James Chapman & Co. [1989] 3 All E.R. 939, Scott J. considered the relationship confidentiality and privilege. In the course of his judgment he said, at pp.943–944:

> "I think it is important to notice the different principles on which protection of confidential documents on the one hand and privileged documents on the other hand are based. Once a privileged document or a copy of a privileged document passes into the hands of some other party to the action, prima facie the benefit of the privilege is lost: the party who has obtained the document has in his hands evidence which, pursuant to the principle in Calcraft v. Guest [1898] 1 Q.B. 759, can be used at the trial. But it will almost invariably be the case that the privileged document will also be a confidential document and, as such, eligible for protection against unauthorised disclosure or use. The reverse is not true. There are a variety of types of confidential information which have nothing whatever to do with legal privilege; but I cannot envisage a case of legal privilege attaching to documents which did not contain confidential material."

Scott J. is referring to the privilege against being required to disclose a documemt. Accordingly once the document has passed into the possession *772 of another the privilege lacks subject matter. But where one is dealing with a privilege which can be treated as analogous to the privilege that attaches to without prejudice communications then it can be seen that the fact that relevant material has been disclosed to another party is not the moment at which the right ceases to exist but is the moment at which it comes into existence. If the analogy is apt the communication of a witness statement or a report to another party, although it may be the moment at which the waiver of the privilege against disclosure occurs, may be the moment when a right to restrict the use that can be made of the document arises.

The question therefore is whether there is such an analogoy and what is the correct inference to be drawn from the respective provisions of Order 38. The Court of Appeal in Derby & Co. Ltd. v. Weldon (No. 9) Court of Appeal (Civil Division) Transcript No. 878 of 1990 was not concerned with this point at all and it was not to this question that Dillon L.J. was addressing his observations.

There is no necessary reason why the same inferences should be drawn from Part IV of Order 38 and rule 2A of that Order. The rules in Part IV of Order 38 were made under the specific statutory authority that was given by section 2(3) of the Civil Evidence Act 1972. The subsection opens with the words:

> "Notwithstanding any enactment or rule of law by virtue of which documents prepared for the purpose of pending or contemplated civil proceedings or in connection with the obtaining or giving of legal advice are in certain circumstances privileged from disclosure, provision may be made by rules of court …"

The rules which were made were therefore rules which could override rights of privilege against disclosure. Further in rule 42 it is expressly provided: "A party to any cause or matter may put in evidence any expert report disclosed to him by any other party in accordance with this part of this Order." This rule therefore expressly states that the recipient of a report is entitled to use it; further that entitlement is expressed in unqualified terms which obviously contemplate use at the trial in the instant ligitation but is not in terms restricted to such use.

It can be commented that note 38/42/1 in *The Supreme Court Practice 1991* says, among other things: "This rule, however, does not apply to an expert report disclosed voluntarily by one party to another, unless the parties have agreed to put in that report in evidence." No authority is cited for this statement. In one sense it is a truism because the rule relates to reports disclosed in accordance with Part IV of Order 38. But if the note is saying more than that it clearly states the position the wrong way round. If one party supplies a report to another without any qualification that other party is at liberty to make such use of it as it may think fit including putting it in evidence, for what it is worth, as an admission made by the other party. If the report was supplied on a without prejudice basis in a context where the court will recognise the communication as having that character then the recipient is not at liberty to use the report or put it in evidence.

Rule 2A, as already pointed out in the citation from Comfort Hotels Ltd. v. Wembley Stadium Ltd. [1988] 1 W.L.R. 872, had a different statutory basis. It was later in date than Part IV of Order 38 and was not based upon any statutory authority additional to that which permits the regulation of procedure. Further, as a matter of major caution, this **773** is made clear by the express statement in sub-rule (8) of rule 2A: "Nothing in this rule shall deprive any party of his right to treat any communication as privileged or make admissible evidence otherwise inadmissible." The contrast between this wording and the opening words of section 2(3) of the Act of 1972 needs no elaboration. Sub-rule (8) is widely drafted and its wording remarkably pertinent to the present argument. But the intent of rule 2A is further emphasised by sub-rule (4) which, save where the Civil Evidence Act 1968 and 1972 apply, provides that where the party serving a statement "does not call the witness to whose evidence it relates no other party may put the statement in evidence at the trial." Here again the contrast is obvious: there is a restriction on the use which any other party may make of the witness statement that has been served.

I consider that the inferences to be drawn from reading these two parts of Order 38 both separately and, more strikingly, together are that in respect of experts' reports there is to be no restriction and in respect of witness statements there is to be a restriction which, subject to sub-rule (4), preserves a privilege in the document.

With regard to experts' reports served pursuant to an order under Part IV of the Order (leaving on one side the potential complications to which I referred at an earlier stage in this judgment) the inference which I draw takes into account both the basic legal position that documents and information that are disclosed voluntarily are not subject to any restriction as to their use and the unqualified liberty that is given by rule 42. There is no implied restriction or undertaking.

Under rule 2A the inference to be drawn is, in my judgment, different but equally clear. I infer that the receiving party is not to be allowed to put the statement in evidence save at the trial (if there is one) or the aciton in which the statement has been served and then only if the serving party elects to call the relevant witness at that trial; and that, apart from this, the receiving party and his solicitor may not use the material nor allow it to be used for any purpose other than the proper conduct of that action on behalf of the receiving party and may not use it or allow it to be used for any collateral or ulterior purpose. It follows from this that the solicitor and his client may not supply the material to any other person (until it has passed into the public domain and is covered by Ord. 24, r. 14A) save for the purposes of the action in which it was served and the serving party may ask the court to prevent any breach of this obligation.

The only argument to the contrary which was advanced on the wording of the rule was that sub-rule (4) uses the phrase "put in evidence at the trial." Mr. Hamilton argued that this was the extent to the restriction and that the statement could be used without restriction at any other time and could for instance be used and put in evidence in subsequent litigation. This is an absurdity. The recipient was debarred from using the statement at the trial of the action (say, because the serving party elected not to call the witness); but, it is said, the completion of that litigation releases the recipient from any restriction and he can use the document at a later trial without restriction even between the same parties or he can give it to another to use against the serving party. This submission only has to be formulated for it to be seen that it is unacceptable both as a matter of common sense, legal policy, and as a matter of the intent of the rule. The testing of Mr. **774** Hamilton's argument by reference to this example also demonstrates the irresistibility of the inference which I have accepted.

In my judgment when a statement is served pursuant to a direction given under Ord. 38, r. 2A and the witness to whose evidence that statement relates is never called by that party to give evidence (whether it be because the trial never takes place or for any other reason) that

statement remains a privileged documents in the same way as a without prejudice communication remains privileged. The party serving the statement may not be compelled to disclose the statement to any other person and is entitled to prevent any other person using that statement without his consent and, in particular, using it in evidence against the person who originally served the statement. This was what was decided by the House of Lords in Rush & Tompkins Ltd. v. Greater London Council [1989] A.C. 1280 in relation to without prejudice communications and I consider that the same applies to witness statements served under rule 2A.

The policy reflected in the rule is simply procedural. Its purpose is stated in sub-rule (2) to be "disposing fairly and expeditiously of the cause or matter and saving costs." It is related to the instant litigation alone. Later paragraphs of the rule cover matters of obvious relevance to the trial, and its preparation, in that action. A secondary purpose must also be to encourage and facilitate the making of admissions and settlements. If one party can see the evidence that the other party has and has also to disclose its own, this exchange of information may enable disputes to be resolved in a manner that is exactly parallel to that which often occurs in without prejudice negotiations. Costs are saved if trials are rendered unnecessary or appropriate admissions are made. The policy of the law which protects without prejudice communications should apply to protect the confidentiality of statements that are exchanged but not used under rule 2A. Similarly, the example of Riddick v. Thames Board Mills Ltd. [1977] Q.B. 881 illustrates another danger of not recognising a restriction. A statement may contain possibly defamatory statements; if an unused statement is not to be treated as privileged from disclosure to third parties or being used in evidence, obvious difficulties can arise. Accordingly there are good reasons of policy arising from the rule that reinforce the analogy with the treatment of documents obtained on discovery and communications without prejudice. Likewise, there are good policy reasons for imposing similar restrictions. There is therefore no basis for declining to give effect to the inference to be drawn from the rule itself.

I consider that the rights of the London plaintiffs arise by inference from the terms of rule 2A and from the confidential and privileged character of the statement prior to the time at which it was served. I consider that it is therefore a rule of law that, unless the London plaintiffs have relinquished their rights to restrict the use of the document by some further waiver or consent (which is not alleged has happened in the present case),

the fourth defendants and the London solicitors were under the duty which I have formulated above. Their supplying the statements to the Texas attorneys and to other parties in the Texas proceedings and their use of the documents in and for the purposes of the Texas proceedings was a breach of that duty.

It may be thought desirable to express the duty as an implied undertaking to the court. But, whether it is so expressed or not, it is in my judgment a duty that is owed to the court and which can be **\*775** enforced by the court at the instance of the English plaintiffs. Breach of the duty amounts to a contempt of court, which may be trivial or serious depending upon the circumstances. The court has the power wholly or partially to release the recipient from the duty, or undertaking, and to permit use to be made of the documents nevertheless. Circumstances under which that relaxation would be allowed without the consent of the serving party are hard to visualise, particularly where there was any risk that the statement might be used directly or indirectly to the prejudice of the serving party. (This is, of course, always subject to any overriding principle of public policy.)

For these reasons I ruled that there was no restriction affecting the expert's report and that no contempt of court had been committed. As regards the witness statements I ruled that they were subject to a restriction which had been broken and which should at the least on an interim basis be restrained.

Since preparing these reasons, I have seen a note of a decision of Hoffmann J. on an interlocutory motion in a patent action, Black & Decker Inc. v. Flymo Ltd. [1991] 1 W.L.R. 753 and have obtained a transcript. He was concerned with a question whether a witness statement served under Ord. 38, r. 2A could be referred to on an interlocutory application for further discovery prior to the trial of the action; he held that it could. No question of the use of the statement in other later proceedings was involved. He referred to the fact that privilege from disclosure ceases to be relevant once the document has been disclosed and cited what he had said in Comfort Hotels Ltd. v. Wembley Stadium Ltd. [1988] 1 W.L.R. 872. His decision is not contrary to that which I have reached in the present matter or what I have said in these reasons.

**Representation**

•Solicitors: Ince & Co.; Cameron Markby Hewitt; More Fisher Brown.

**Appendix A**

Page 786G, line 42: Please note that Derby & Co. Ltd. v. Weldon (No.9) (unreported), 18 October 1990, Mummery J.; The Times, 9 November 1990; Court of Appeal (Civil Division) Transcript No.878 of 1990 does npt call for report in the Weekly Law Reports and should not be confused with the case of that name reported at [1991] 1 W.L.R. 652; [1991] 2 All E.R. 901.

Footnotes

[1]  R.S.C., Ord. 38, r. 2A(2): "At any stage in any cause or matter, the court may, if it thinks fit for the purpose of disposing fairly and expeditiously of the cause or matter and saving costs, direct any party to serve on the other parties, on such terms as the court shall think just, written statements of the oral evidence which the party intends to lead on any issues of fact to be decided at the trial." R. 2A(8): see post, p. 773A. R. 37(1) "where in any cause or matter an application is made … in respect of oral expert evidence, then, unless the court considers that there are special reasons for not doing so, it shall direct that the substance of the evidence be disclosed in the form of a written report or reports … "R. 42: see post, p. 772E.

[1991] 1 W.L.R. 756

(c) Incorporated Council of Law Reporting for England & Wales

© 2016 Sweet & Maxwell