# EXHIBIT QQ

Mahon v Rahn (No.1), [1998] Q.B. 424 (1997)



**\*424 Mahon and Another v. Rahn and Others**

Image 1 within document in PDF format.

Court of Appeal
23 May 1997

**[1997] 3 W.L.R. 1230**

**[1998] Q.B. 424**

Staughton, Otton and Schiemann L.JJ.
1997 April 16, 17; May 23

**Analysis**

Practice—Discovery—Use of documents—Implied undertaking not to use for other purposes—Documents disclosed to plaintiffs as defendants in criminal proceedings and used in open court—Plaintiffs bringing libel action based on documents—Whether plaintiffs subject to implied undertaking not to use disclosed documents for purposes other than criminal proceedings without leave of court—Whether action abuse of process

A bank, acting as agent, placed an order with stockbrokers for the purchase of certain Canadian shares. In the course of subsequent investigations against the stockbrokers, the Serious Fraud Office ("S.F.O.") obtained from The Securities Association ("T.S.A.") a letter which had been sent to T.S.A. by the bank's lawyer enclosing documents relating to the share transaction. The S.F.O. instituted criminal proceedings for fraud against the plaintiffs, the managing director and a senior executive of the stockbrokers, in connection with their dealings with the bank. The letter was exhibited to prosecution witness statements which were disclosed by the S.F.O. to the plaintiffs before the trial and the letter was read in open court during the criminal proceedings. After their acquittal, the plaintiffs claimed damages for alleged libel published or caused to be published by the defendants, partners in the bank, in the letter to the T.S.A. The defendants applied to strike out the action as an abuse of process on the ground that the

documents sued on had been obtained by the plaintiffs by way of disclosure in criminal proceedings against them and were therefore subject to an implied undertaking that they would not be used in any other proceedings without the leave of the court. The judge granted the application.

On appeal by the plaintiffs: -

Held, allowing the appeal, that material disclosed by the prosecution to a defendant in criminal proceedings, whether obtained by compulsion or voluntarily, and whether used or unused in those proceedings, was not subject to any implied undertaking, analogous to that which existed in relation to material discovered in civil proceedings, that the defendant would not use the disclosed material in any other proceedings without the leave of the court; that, in any event, any such undertaking would cease to apply once the material had been read or referred to in open court in the course of criminal proceedings and had thus been used in those proceedings; and that, accordingly, it was no abuse of process for the plaintiffs to commence an action for libel in reliance upon the letter which had been disclosed to them by the prosecution in the criminal proceedings (post, pp. 447C-D, 448G-H, 449B-E, 450D-H, 451C, 452D, 453B, 457G-458A).

British Coal Corporation v. Dennis Rye Ltd. (No. 2) [1988] 1 W.L.R. 1113, C.A. and Ex parte Coventry Newspapers Ltd. [1993] Q.B. 278, C.A. considered.

Decision of Brooke J. reversed.

**\*425**

The following cases are referred to in the judgments:

- Bibby Bulk Carriers Ltd. v. Cansulex Ltd. [1989] Q.B. 155; [1989] 2 W.L.R. 182; [1988] 2 All E.R. 820
- British Coal Corporation v. Dennis Rye Ltd. (No. 2) [1988] 1 W.L.R. 1113; [1988] 3 All E.R. 816, C.A..
- Coventry Newspapers Ltd., Ex parte [1993] Q.B. 278; [1992] 3 W.L.R. 916; [1993] 1 All E.R. 86, C.A..
- Cunningham v. Essex County Council , The Times, 31 March 1997
- Dallison v. Caffery [1965] 1 Q.B. 348; [1964] 3 W.L.R. 385; [1964] 2 All E.R. 610, C.A..
- Derby & Co. Ltd. v. Weldon (No. 2) (1988) 132 S.J. 1755; The Times, 20 October 1988
- Derby & Co. Ltd. v. Weldon (Nos. 3 & 4), The Times, 15 November 1988

Mahon v Rahn (No.1), [1998] Q.B. 424 (1997)

• Distillers Co. (Biochemicals) Ltd. v. Times Newspapers Ltd. [1975] Q.B. 613; [1974] 3 W.L.R. 728; [1975] 1 All E.R. 41
• Evans v. London Hospital Medical College (University of London) [1981] 1 W.L.R. 184; [1981] 1 All E.R. 715
• Hasselblad (G.B.) Ltd. v. Orbinson [1985] Q.B. 475; [1985] 2 W.L.R. 1; [1985] 1 All E.R. 173, C.A..
• Home Office v. Harman [1983] 1 A.C. 280; [1982] 2 W.L.R. 338; [1982] 1 All E.R. 532, H.L.(E.).
• Kennedy v. Hilliard (1859) 10 I.C.L.R. 195
• McGrath v. Chief Constable of Lancashire Police (unreported), 3 April 1996, Forbes J.
• P. v. T. Ltd. [1997] 1 W.L.R. 1309; [1997] 4 All E.R. 200
• Practice Note (Criminal Evidence: Unused Material) [1982] 1 All E.R. 734; 74 Cr.App.R. 302
• Prudential Assurance Co. Ltd. v. Fountain Page Ltd. [1991] 1 W.L.R. 756; [1991] 3 All E.R. 878
• Reg. v. Keane [1994] 1 W.L.R. 746; [1994] 2 All E.R. 478, C.A..
• Reg. v. Secretary of State for the Home Department, Ex parte Fire Brigades Union [1995] 2 A.C. 513; [1995] 2 W.L.R. 464; [1995] 2 All E.R. 244, H.L.(E.).
• Reg. v. Ward (Judith) [1993] 1 W.L.R. 619; [1993] 2 All E.R. 577; 96 Cr.App.R. 1, C.A..
• Rex v. Bryant and Dickson (1946) 31 Cr.App.R. 146, C.C.A..
• Riddick v. Thames Board Mills Ltd. [1977] Q.B. 881; [1977] 3 W.L.R. 63; [1977] 3 All E.R. 677, C.A..
• Royal Aquarium and Winter Garden Society Ltd. v. Parkinson [1892] 1 Q.B. 431, C.A..
• Singh (Tejendra) v. Christie , The Times, 11 November 1993; sub nom.
• Tejendrasingh v. Metsons (unreported), 20 May 1994; Court of Appeal (Civil Division) Transcript No. 669 of 1994, C.A..
• Sybron Corporation v. Barclays Bank Plc. [1985] Ch. 299; [1984] 3 W.L.R. 1055
• Taylor v. Director of the Serious Fraud Office (unreported), 26 July 1996, Sir Michael Davies
• X. (Minors) v. Bedfordshire County Council [1995] 2 A.C. 633; [1995] 3 W.L.R. 152; [1995] 3 All E.R. 353, H.L.(E.).

The following additional cases were cited in argument:

• Bhimji v. Chatwani (No. 2) [1992] 1 W.L.R. 1158; [1992] 4 All E.R. 912
• Lincoln v. Daniels [1962] 1 Q.B. 237; [1961] 3 W.L.R. 866; [1961] 3 All E.R. 740, C.A..
• Marcel v. Commissioner of Police of the Metropolis [1992] Ch. 225; [1992] 2 W.L.R. 50; [1992] 1 All E.R. 72, C.A..
• Martin v. Watson [1996] A.C. 74; [1995] 3 W.L.R. 318; [1995] 3 All E.R. 559, H.L.(E.).
• Miller v. Scorey [1996] 1 W.L.R. 1122; [1996] 3 All E.R. 18

Appeal from Brooke J.

By a writ issued on 17 December 1993 the plaintiffs, Patrick Mahon and Andrew Leslie Kent, claimed against the defendants, Dr. Christian Rahn, Hans-Jakob Biederman, Martin Haab-Biedermann and Frank Bodmer, damages for libel published or caused to be published by the defendants in a letter dated 20 December 1990 and an injunction to restrain further publication of those or similar libels. By a summons dated 23 February 1996 the defendants applied for the action to be struck out as vexatious and an abuse of the process of the court, on the ground that the document sued on had been obtained by the plaintiffs by way of disclosure in criminal proceedings against them. On 19 June 1996 Brooke J. ordered that the action be struck out under R.S.C., Ord. 18, r. 19 and the inherent jurisdiction of the court as an abuse of the process, but granted the plaintiffs leave to appeal.

By a notice of appeal dated 8 July 1996 the plaintiffs appealed on the grounds, inter alia, that (1) the judge had been wrong to hold that the documents disclosed in the course of criminal proceedings by the prosecution to the defence were subject to an implied undertaking that they would not be used for any collateral purpose; (2) the analogy drawn by the judge between the admitted existence of such an implied undertaking in civil proceedings and the position in criminal proceedings was a false one because the rationale for the existence of the implied undertaking in civil proceedings, namely that the party to those proceedings had been compelled to produce documents which would otherwise have remained private and confidential, had no application to disclosure by the prosecution in the course of criminal proceedings; and (3) even if the judge had been correct in holding that the implied undertaking existed in the context of disclosure in criminal proceedings, any inhibition on using disclosed documents disappeared once the documents had been referred to in open court and so entered the public domain.

The facts are stated in the judgment of Otton L.J.

Mahon v Rahn (No.1), [1998] Q.B. 424 (1997)

*Charles Gray Q.C.* and *Victoria Sharp* for the plaintiffs. There is no implied undertaking, in criminal proceedings, in relation to documents or information disclosed to defendants, akin to that which exists in civil proceedings. In civil proceedings a party is subject to an implied undertaking not to use documents compulsorily disclosed on discovery for any collateral purpose. In criminal proceedings the principal rationale advanced for the existence of an implied undertaking preventing the use of such documents is the public interest in ensuring that those who supply information to the police or prosecuting authorities are not deterred from giving such information by the risk of proceedings being brought against them: see McGrath v. Chief Constable of Lancashire Police (unreported), 3 April 1996; Taylor v. Director of the Serious Fraud Office (unreported), 26 July 1996; British Coal Corporation v. Dennis Rye Ltd. (No. 2) [1988] 1 W.L.R. 1113, 1120; Ex parte Coventry Newspapers Ltd. [1993] Q.B. 278, **427** 291, 292 and Cunningham v. Essex County Council, The Times, 31 March 1997). [Reference was also made to Reg. v. Ward [1993] 1 W.L.R. 619; Reg. v. Keane [1994] 1 W.L.R. 746 and Archbold, Criminal Pleading, Evidence and Practice 1997, paras. 12-43, 12-54.]

The reasons for implying the undertaking in civil proceedings - confidentiality, compulsion and integrity of the discovery process - do not apply in the criminal context. [Reference was made to *Gatley on Libel and Slander,* 8th ed. (1981), pp. 159-162, 205, paras. 383-385, 484-485 and Lincoln v. Daniels [1962] 1 Q.B. 237.] There is, in any event, a strong countervailing public interest in not giving absolute protection to informants who maliciously make false statements to prosecuting authorities: see Martin v. Watson [1996] A.C. 74.

Even in civil proceedings, the voluntary use in court proceedings of documents disclosed under compulsion negates the implied undertaking: see Derby & Co. Ltd. v. Weldon (No. 2) (1988) 132 S.J. 1755; Marcel v. Commissioner of Police of the Metropolis [1992] Ch. 224, 256 and R.S.C., Ord 24, r. 14A. That is the position in criminal proceedings under section 17 of the Criminal Procedure and Investigations Act 1996: see Archbold, Criminal Pleading, Evidence and Practice 1997, para. 12-45 and Halsbury's Statutes, 4th ed. (1977 reissue), vol. 12, p. 1801. It would be wrong to read into the plain meaning of section 17(3) a further restriction on the use to which material disclosed and used in criminal proceedings may be put by the accused: see Singh

(Tejendra) v. Christie, The Times, 11 November 1993; Tejendrasingh v. Metsons (unreported), 20 May 1994; Court of Appeal (Civil Division) Transcript No. 669 of 1994 and Home Office v. Harman [1983] 1 A.C. 280.

*Patrick Moloney* for the defendants. The judgment of Brooke J. was correct for the reasons stated therein. [Reference was made to Taylor v. Director of the Serious Fraud Office, 26 July 1996; Prudential Assurance Co. Ltd. v. Fountain Page Ltd. [1991] 1 W.L.R. 756; Miller v. Scorey [1996] 1 W.L.R. 1122 and Bhimji v. Chatwani (No. 2) [1992] 1 W.L.R. 1158.]

It is an equitable principle of general application that where a person receives documents from another, by means of compulsory disclosure in particular legal proceedings, he is under a legal obligation, namely, an implied undertaking to the court, not to use them for any purpose other than the conduct of those proceedings in which they were disclosed, without the prior leave of the court: see Prudential Assurance Co. Ltd. v. Fountain Page Ltd. [1991] 1 W.L.R. 756, 764g-765e. The obligation exists for two reasons: (i) compulsory disclosure is an invasion of the rights of the party giving disclosure and should be kept within legitimate bounds (see Home Office v. Harman [1983] 1 A.C. 280, 308); (ii) if those giving disclosure were not so protected, there would be a real risk that they would be deterred from giving full and frank disclosure to the prejudice of the interests of justice: see Riddick v. Thames Board Mills Ltd. [1977] Q.B. 881, 896, 902, 912. The latter reason applies with greater force to criminal cases than it does to civil litigation.

The obligation of the Crown to give full disclosure in criminal proceedings necessitates the recognition of a parallel obligation relating to documents disclosed in criminal proceedings: see Ex parte Coventry Newspapers Ltd. [1993] Q.B. 278, 285-286; McGrath v. Chief Constable ofLancashire Police, 3 April 1996 and Taylor v. Director of the Serious Fraud Office, 26 July 1996. While it is correct that the narrow issue in the Ex parte Coventry case was a different one, namely whether public interest immunity operated to prevent disclosure, both the parties and the Court of Appeal unhesitatingly accepted that an implied undertaking existed not to use documents disclosed in a criminal appeal save for the purposes of the appeal without the leave of the court. This was persuasive authority of high value to which Brooke J. was entitled to give considerable weight.

Mahon v Rahn (No.1), [1998] Q.B. 424 (1997)

The implied undertaking does not cease once the document is read or referred to in open court, although the court has power to vary it. R.S.C., Ord. 24, r. 14A does not apply in criminal proceedings. Even in civil proceedings rule 14A permits publication of the document, rather than its use to found collateral actions: see Singh (Tejendra) v. Christie, The Times, 11 November 1993, and Tejendrasingh v. Metsons (unreported), 20 May 1994; Court of Appeal (Civil Division) Transcript No. 669 of 1994.

*Cur. adv. vult.*

**23 May. The following judgments were handed down**
Otton L.J.

This is an appeal from the order of Brooke J. made on 19 June 1996 in which he struck out the plaintiffs' action for libel pursuant to R.S.C., Ord. 18, r. 19 and the inherent jurisdiction of the court on the ground that it constitutes an abuse of process of the court.

**Background**

At all material times the plaintiffs were the managing director and the corporate development manager of T. C. Coombs, a firm of stockbrokers in the City of London. The defendants are the partners in a private Swiss Bank in Zurich known as Rahn and Bodmer Banquiers. In the late 1980s the bank, acting as agents, placed a purchase order with the stockbrokers for the purchase of shares in a Canadian company called Coastline Resources for Can.$5m. In September 1988 the bank paid Can.$3m. but did not pay the balance of Can.$2m. despite a number of requests from the stockbrokers. Towards the end of 1990 the stockbrokers came und er investigation by the Serious Fraud Office ("S.F.O.") and the bank furnished a number of documents to the S.F.O. at their request for the purposes of their inquiries. In late 1990 The Securities Association ("T.S.A.") also got in touch with the bank. On 20 December 1990 Dr. Paltzer, a partner in a Swiss law firm, wrote a letter to Mrs. Rose Wright of T.S.A. setting out information and enclosing documents which related to the dealings in connection with the Coastline shares. The letter stated:

"I rely on your assurances of complete confidentiality with respect to the following information and documentation provided to you by our client, Rahn and Bodmer, Zurich. Since Mr. M. Kaiser who was responsible for the T. C. Coombs-Coastline transaction is not with the bank any more, it is difficult for Rahn and Bodmer to piece together with certainty the relevant facts. Therefore, the following **\*429** outline is, to a large extent, based on presumptions and retrospective assessments of documents and information obtained by the bank. The bank does not warrant the accuracy and completeness of the following outlines. We, however, hope that the information and the documents we are providing to you will be helpful in your proceedings."

At the same time Dr. Paltzer wrote to the S.F.O. attaching a copy of that letter without the enclosures. The original letter was passed by T.S.A. to the S.F.O. under section 2 of the Criminal Justice Act 1987 in the course of criminal proceedings for fraud instituted by the S.F.O. against the plaintiffs in connection with their dealings with the bank.

The plaintiffs were duly arraigned at the Crown Court at Middlesex Guildhall on an indictment containing two counts of conspiracy to defraud against both plaintiffs and attempting dishonestly to obtain property by deception against the first plaintiff alone. Two days prior to the pre-trial review the S.F.O. disclosed to the defence a copy of the letter to T.S.A. The letter was produced as part of the exhibits to the witness statements. When giving evidence Ms Garlick of the S.F.O. produced the letter during her evidence in chief. It was read in open court and the plaintiffs' counsel cross-examined her and Dr. Rahn, the first defendant in the civil proceedings, upon it when he gave evidence. No application was made either on behalf of the defendants or the prosecution before, during or after the criminal trial for any order restricting the use for which the letter could be put. After several weeks, at the end of the prosecution case, counsel for the plaintiffs submitted that there was no case to answer. The submission was upheld by the trial judge and verdicts of not guilty were recorded against both plaintiffs.

The Securities and Futures Authority (the successor to T.S.A.) acknowledge that the S.F.O. did not seek or

Mahon v Rahn (No.1), [1998] Q.B. 424 (1997)

obtain the consent of Dr. Paltzer to disclose voluntarily to a third party his letter to Mrs. Wright. During the pre-trial procedures the prosecution made a claim of public interest immunity in respect of confidential information in the S.F.O.'s possession which included correspondence between Rahn and Bodmer and their legal adviser and T.S.A. No order was made in relation to "discovery" of correspondence between Rahn and Bodmer and T.S.A. In giving his ruling the trial judge said:

> "It is urged in favour of the immunity claim that disclosure would result in publication of sources of information and informants, which would inhibit the provision of a lot of such information in the future and so restrict the ability of the authority to discharge its duties - statutory duties - adequately. I ask myself: is immunity essentially necessary for the proper functioning of the public service which the authority is discharging? One must bear in mind that these documents are contemporary material (they were in some cases subsequent material) with the events which are complained of by both sides, and hence may prove of some value in helping the defence in seeking to ascertain the true attitudes and influences exerting themselves on the decisions and requirements of the Securities and Futures Authority. I therefore hold that in general (I am generalising because I have not seen the documents) documents in classes 1 to 4 *430 should be disclosed to the defence, but I would qualify that by saying that there may well be some instances where the document itself discloses a particularly sensitive source which perhaps ought not to be disclosed in the particular circumstances of the case. If agreement on any such document's disclosure cannot be reached by the parties, it may well be that the matter will have to be returned to the court and I will have to peruse the document and perhaps modify this decision in relation to that document."

**The proceedings**

The plaintiffs claim damages for libel published or caused to be published by the defendants in the letter sent to Rosalind Wright of T.S.A. It is the plaintiffs' case that the letter contained an entirely inaccurate and misleading account of the defendants' dealing with T. C. Coombs, that the defendants deliberately misled T.S.A. and the S.F.O. in order to avoid payment of Can.$2m. to T. C. Coombs and dishonestly withheld crucial documents from the T.S.A. and S.F.O. in order to allege that the entire agreement for the sale of the Coastline Resources shares was fraudulent. The action was started by writ issued on 17 December 1993 in which the plaintiffs claim damages for libel in the letter to T.S.A. The statement of claim was served on 8 December 1994. The defence served on 26 February 1996 includes a claim for qualified, but not absolute, privilege and an assertion that the plaintiffs' claim is vexatious and an abuse of process. The defendants issued a summons seeking to strike out the action on the grounds that the documents sued on were obtained by the plaintiffs by way of disclosure in criminal proceedings against them.

**The issues**

Before Brooke J. it was agreed between counsel that there were five issues. (1) Is there an implied undertaking in criminal discovery as there is in civil? (2) Does it apply to all documents disclosed by the Crown without regard to the question whether the Crown obtained them voluntarily or by compulsion? (3) Does it apply to documents disclosed by the Crown both as "used" and "unused" documents? (4) Does it continue to apply after the relevant document has been read or referred to in open court in the criminal proceedings? (5) If the undertaking continues to apply, and a libel action is commenced in breach of the undertaking, does the court have any discretion not to strike it out as an abuse of process?

It must be emphasised that from the outset it was common ground between the parties that the letter and documents in question were not disclosed subject to any undertaking of confidentiality. The judge answered all five questions in the affirmative and concluded:

> "It follows, therefore, that in the present case the undertaking continues to apply, and these

Mahon v Rahn (No.1), [1998] Q.B. 424 (1997)

proceedings have been commenced in breach of it. While I would not wish to lay down any absolute rule, I can see no reason in the present context why this court should be willing to entertain proceedings based on a document that the plaintiffs had no business to be using without the consent of the Crown Court: as Sir Nicolas Browne-Wilkinson V.-C. said in Derby& Co. Ltd. v. Weldon (No. 2) (1988) 132 S.J. 1755 its use in such circumstances would prima facie constitute a contempt of court. For these reasons, therefore, I am of the opinion that these proceedings constitute an abuse of this court and that they should be struck out on these grounds. Miss Sharp submitted that if I came to this conclusion innocent plaintiffs might be bereft of a remedy even though they had suffered grievously at the hands of a malicious complainant who for some technical reason could not be sued for damages for malicious prosecution notwithstanding the recent liberalising decision of the House of Lords in Martin v. Watson [1996] A.C. 74. It may be that in such circumstances the Crown Court might be willing to exercise its discretion in favour of varying the undertaking, on an application made in due time, in order to permit justice to be done, for reasons similar to those which influenced the Court of Appeal in Ex parte Coventry Newspapers Ltd. [1993] Q.B. 278. At all events there is nothing in my present judgment to deprive the Crown Court of the power to do justice, balancing all competing interests, along the lines advocated by the Court of Appeal in Marcel v. Commissioner of Police of the Metropolis [1992] Ch. 225."

The same five issues fall for consideration on this appeal.

**Issue 1: Is there an implied undertaking in criminal**

discovery as there is in civil?

Several matters need to be examined in order to decide this issue. (a) What is the scope of the implied undertaking which applies in civil proceedings? (b) What is the rationale for the existence of the implied undertaking in civil proceedings? (c) What authority exists as to the existence of such an implied undertaking in criminal proceedings? (d) What is the position in relation to discovery in criminal proceedings? (e) Is it appropriate to imply an undertaking in criminal proceedings by analogy with the implied undertaking which exists in civil proceedings?

**(a) What is the scope of the implied undertaking which applies in civil proceedings?**

In civil proceedings a party who obtains discovery may use the documents disclosed to him only for the proper purposes of conducting his own case, and there is an implied undertaking by him not to use them for any collateral or ulterior purpose - any misuse of the documents may be restrained by injunction or punished as a contempt. An action based on a misused document will, ordinarily, be dismissed as an abuse of process. The implied undertaking may, in exceptional circumstances and on the application of the party obtaining discovery be relaxed or modified by the court: see The Supreme Court Practice 1997, vol. 1, pp. 420-421, para. 24/1/3. In Prudential Assurance Co. Ltd. v. Fountain Page Ltd. [1991] 1 W.L.R. 756, 764-765, Hobhouse J. stated:

> "This undertaking is implied whether the court expressly requires it or not. The expression of the obligation as an implied undertaking given to the court derives from the historical origin of the principle. It is now in reality a legal obligation which arises by operation of law **432** by virtue of the circumstances under which the relevant person obtained the documents or information. However treating it as having the character of an implied undertaking continues to serve a useful purpose in that it confirms that the obligation is one which is owed to the court for the benefit of the parties, not one which is owed simply to the parties; likewise, it is an obligation which the court has the right to control and can modify or

Mahon v Rahn (No.1), [1998] Q.B. 424 (1997)

release a party from. It is an obligation which arises from legal process and therefore is within the control of the court, gives rise to direct sanctions which the court may impose (viz. contempt of court) and can be relieved or modified by an order of the court. It is thus a formulation of the obligation which has merit and convenience and enables it to be treated flexibly having regard to the circumstances of any particular case."

The implied undertaking does not apply to documents which have been voluntarily disclosed by a party in the course of interlocutory proceedings: see Derby & Co. Ltd. v. Weldon (No. 2) (1988) 132 S.J. 1755. In that case Sir Nicolas Browne-Wilkinson V.-C. stated:

"The voluntary disclosure of documents in the course of interlocutory proceedings by a party does not come within the rationale which is the basis of the implied undertaking relating to documents disclosed on discovery. In relation to documents voluntarily disclosed the court has not invaded the privacy of the party. The party has, for his own purposes in defending a case, decided himself to use the documents rather than maintain his privacy. It is the party who has destroyed the privacy of the document, not the plaintiff or the court . . . it is an unavoidable consequence of all litigation that a party who chooses to put in evidence, necessarily risks that such evidence becomes available to others. In my judgment the special protection given to documents disclosed under compulsion of discovery procedures does not apply to any wider class of documents."

However, once the document has been read to or by the court or referred to in open court, the matter is governed by R.S.C., Ord. 24, r. 14A, which was brought into force in order to reverse the effect of Home Office v. Harman [1983] 1 A.C. 280. R.S.C., Ord. 24, r. 14A provides:

"Any undertaking, whether express or implied, not to use a document for any purposes other than those of the proceedings in which it is disclosed shall cease to apply to such document after it has been read to or by the court, or referred to, in open court, unless the court for special reasons has otherwise ordered on the application of a party or of the person to whom the document belongs." See The Supreme Court Practice 1997, vol. 1, pp. 455-456, para. 24/14A/1.

Rule 14A was considered by Drake J. in Singh (Tejendra) v. Christie, The Times, 11 November 1993. In that case, a document which had been disclosed in discovery in an action and read in open court, was used as the basis for four subsequent defamation actions. The plaintiff relied upon rule 14A as releasing him from his undertaking. Drake J. stated:

"The apparent effect on the implied undertaking by a party to whom a document has been disclosed on discovery seems at first sight *433 clear enough: that is, that once the document has been read out or referred to in open court the party is completely freed from all restrictions and may use the document for any purpose whatsoever. That would include using the document as the basis for libel proceedings against strangers to the action in which the document was disclosed. It is a freedom which will apply unless, in accordance with a provision in the Order, the court for special reasons has otherwise ordered on the application of a party or of the person to whom the document belongs. This complete freedom would however amount to a much greater change in

Mahon v Rahn (No.1), [1998] Q.B. 424 (1997)

the law than seems to have been the intended purpose for which the rule was made. . . . I think that the intention of the makers of the rule was merely to avoid the absurdity of the situation which arose in Home Office v. Harman [1983] 1 A.C. 280. . . If the effect of rule 14A is limited to permitting the party subject to the undertaking to make known the contents of the disclosed documents, but does not have the effect of freeing him to use it for any other purpose, including bringing a libel action upon it, then the injustice of limiting the category of those who may apply under rule 14A would not arise. On the contrary, it would seem to me to explain and make sensible the provision that the application should be made only by the owner of the document, or a party to the action in which it is disclosed."

However, he recognised the danger of this limited approach:

"The difficulty I find in adopting that interpretation is that rule 14A expressly refers to any undertaking 'not to use a document for *any* purposes' - to which I give emphasis. It does not say 'any undertaking not to make public the contents of such a document.' But despite what I see as a considerable difficulty in interpreting this rule, I cannot find that the scope of rule 14A is such as to effect a fundamental change in the law and at the same time work a considerable injustice on anyone in the situation of six of the defendants in these actions."

Drake J. therefore held that the plaintiff could not use the document in question as the basis for the defamation actions.

An application for leave to appeal was refused sub nom.

Tejendrasingh v. Metsons (unreported), 20 May 1994; Court of Appeal (Civil Division) Transcript No. 669 of 1994, before Butler-Sloss L.J. and Sir Michael Kerr. Butler-Sloss L.J. stated:

"Quite clearly, rule 14A, which was brought into effect to get rid of what have been called the absurdities of the Home Office v. Harman situation, is not to be used to enable a litigant who obtains documents in one set of proceedings to use them as the foundation for a wholly different, completely separate set of proceedings, as in this case for defamation. It is not, as I say, a matter of confidentiality; it is a matter of the undertakings. The scope of rule 14A does not, in my view, give the applicant the right to start quite different sets of proceedings relying upon those attendance notes."

**\*434** The question of the exact scope of R.S.C., Ord. 24, r. 14A is not a matter which must be decided on the facts of this case which is concerned with the disclosure of documents in criminal proceedings. However, Drake J.'s narrow interpretation of rule 14A sits uneasily with the rule's wide wording. The decision must be read in the light of Sir Nicolas Browne-Wilkinson V.-C. in Derby & Co. Ltd. v. Weldon (No. 2), 132 S.J. 1755:

"I believe the purpose behind Ord. 24, r. 14A is to produce the result save in truly exceptional circumstances that once a document has been used and referred to in open court, it is a public document and no special undertaking continues."

The plaintiffs have sought to rely upon this dictum, applying it by analogy to criminal proceedings.

**(b) What is the rationale for the existence of the implied undertaking in civil proceedings?**

In Riddick v. Thames Board Mills Ltd. [1977] Q.B. 881, concerning the use of a memorandum disclosed in one

Mahon v Rahn (No.1), [1998] Q.B. 424 (1997)

action as the basis for a subsequent defamation action, the Court of Appeal held that a party who disclosed a document on discovery was entitled to the protection of the court against any use of it otherwise than in the action in which it was disclosed. In the interests of public policy and the proper administration of justice, the plaintiff was not entitled to use it as the basis for the subsequent defamation action: see also Prudential Assurance Co. Ltd. v. Fountain Page Ltd. [1991] 1 W.L.R. 756, 774e-g. Lord Denning M.R. stated, at p. 896:

> "The memorandum was obtained by compulsion. Compulsion is an invasion of a private right to keep one's documents to oneself. The public interest in privacy and confidence demands that this compulsion should not be pressed further than the course of justice requires. The courts should, therefore, not allow the other party - or anyone else - to use the documents for any ulterior or alien purpose. Otherwise the courts themselves would be doing injustice. Very often a party may disclose documents, such as inter-departmental memoranda, containing criticisms of other people or suggestions of negligence or misconduct. If these were permitted to found actions of libel, you would find that an order for discovery would be counter-productive. The inter-departmental memoranda would be lost or destroyed or said never to have existed. In order to encourage openness and fairness, the *public interest* requires that documents disclosed on discovery are not to be made use of except for the purposes of the action in which they are disclosed. They are not to be made a ground for comments in the newspapers, nor for bringing a libel action, or for any other alien purpose." (Emphasis added.)

Stephenson L.J. stated, at pp. 901-902:

> "the obligation is owed to the party who produces the document on discovery and to the court; that party

is entitled to the protection of the court against the use of the document otherwise than in the action in which it is disclosed; and that protection is necessary for the *proper administration of justice*; it is important to the public and in the public **\*435** interest that the protection should be enforced against anybody who makes improper use of it. . . ." (Emphasis added.)

He said, at pp. 902-903:

> "There may be cases in which a plaintiff would be justified in bringing an action on a document disclosed in an earlier action. I do not say that it could never be done without abusing the process of the court. But generally speaking it would be an *abuse of its process* and in the circumstances of this case the plaintiff's use of this memorandum is an improper use which the court should not countenance." (Emphasis added.)

In Home Office v. Harman [1983] 1 A.C. 280, concerning the disclosure of documents to the press which had been read in court at trial, the House of Lords held that the fact that the documents were read in open court did not bring the implied undertaking to an end. As referred to above, the effect of this decision was reversed by the R.S.C., Ord. 24, r. 14A. Even so it is illuminating to consider the reasoning. Lord Diplock stated, at p. 300:

> "The use of discovery involves an inroad, in the interests of achieving justice, upon the right of the individual to keep his own documents to himself; it is an inroad that calls for safeguards against abuse, and these the English legal system provides, in its own distinctive fashion, through its rules about abuse of process and contempt of court."

Mahon v Rahn (No.1), [1998] Q.B. 424 (1997)

Lord Keith of Kinkel stated, at p. 308:

> "Discovery constitutes a very serious invasion of the privacy and confidentiality of a litigant's affairs. It forms part of English legal procedure because the public interest in securing that justice is done between parties is considered to outweigh the private and public interest in the maintenance of confidentiality. But the process should not be allowed to place upon the litigant any harsher or more oppressive burden than is strictly required for the purpose of securing that justice is done. In so far as that must necessarily involve a certain degree of publicity being given to private documents, the result has to be accepted as part of the price of achieving justice. But the fact that a certain inevitable degree of publicity has been brought about does not, in my opinion, warrant the conclusion that the door should therefore be opened to widespread dissemination of the material by the other party or his legal advisers, for any ulterior purpose whatsoever, whether altruistic or aimed at financial gain."

In Derby & Co. Ltd. v. Weldon (No. 2), 132 S.J. 1755 Sir Nicolas Browne-Wilkinson V.-C. sought to update and rationalise the approach:

> "It will be helpful to state in outline the English law applicable to documents obtained on discovery in an action. The approach of English law is that discovery in the course of an action is an interference with the right of privacy which an individual would otherwise enjoy in relation to his own documents. As a result of the public interest in ensuring that all relevant information is before the court in adjudicating on the claim in the action, that right of privacy is invaded and the litigant is forced,

under compulsion by the process **\*436** of discovery, to disclose his private documents. But, such invasion of privacy being only for the purpose of enabling a proper trial of the action in which the discovery is given, the court is astute to prevent a document so obtained from being used for any other purpose. As a result the law is well established that the recipient of documents disclosed under compulsion of court proceedings holds those documents subject to an implied undertaking not, without the consent of the court, to disclose such documents to any third party or use the documents for any purpose other than the action in which they were disclosed."

In Prudential Assurance Co. Ltd. v. Fountain Page Ltd. [1991] 1 W.L.R. 756, Hobhouse J. continued the process and stated, at p. 765:

> "The rational basis for the rule is that where one party compels another, either by the enforcement of a rule of court or a specific order of the court, to disclose documents or information whether that other wishes to or not, the party obtaining the disclosure is given this power because the invasion of the other party's rights has to give way to the need to do justice between those parties in the pending litigation between them; it follows from this that the results of such compulsion should likewise be limited to the purpose for which the order was made, namely, the purposes of that litigation then before the court between those parties and not for any other litigation or matter or any collateral purpose: . . . It is also to be noted that this principle is independent of any question of confidentiality. The documents produced on discovery may or may not be confidential in character; the implied undertaking and the

Mahon v Rahn (No.1), [1998] Q.B. 424 (1997)

restriction upon the use that may be made of the documents or information by the party compelling their disclosure is independent of the actual character of the document or information. Confidentiality is relevant to the principle of privilege but not to the compulsion principle."

It is therefore apparent that the rationale for the existence of the implied undertaking in civil proceedings is based upon: (1) the "compulsion principle" - the discovery process compels a party to disclose documents or information whether he wishes to or not, and is therefore an invasion of his privacy. A litigant's rights give way to the need to do justice between the parties. Confidentiality is irrelevant. Voluntary disclosure does not attract the undertaking. (2) the "full and frank disclosure principle" - it follows from the compulsion principle that the invasion of a litigant's rights is counterbalanced by the limitation placed on the use to which the documents or information may be put, in order to encourage full and frank disclosure. This is achieved by the implied undertaking by the recipient to the court, not to the other party or any third party.

**(c) What authority exists as to the existence of such an implied undertaking in criminal proceedings?**

Brooke J.'s attention was drawn by counsel to the three cases where the issue of whether there was an implied undertaking in criminal proceedings had been raised: see British Coal Corporation v. Dennis Rye Ltd. (No. 2) **437 [1988] 1 W.L.R. 1113; Ex parte Coventry Newspapers Ltd. [1993] Q.B. 278 and McGrath v. Chief Constable of Lancashire Police (unreported), 3 April 1996.

In the British Coal Corporation case [1988] 1 W.L.R. 1113, documents created for the purpose of certain civil proceedings between the plaintiff and the defendants were handed to the police to assist with an investigation as a result of which criminal charges were brought against the defendants. Pursuant to the Attorney-General's Guidelines on the Disclosure of Information to the Defence issued in December 1981 and set out in Practice Note (Criminal Evidence: Unused Material) [1982] 1 All E.R. 734, the documents were supplied to the defendants

by the police prior to the criminal trial. In the course of the criminal trial the judge ordered that the plaintiff disclose to the defendants further documents relevant to the criminal proceedings. The plaintiff thereupon disclosed those documents and others which were not directly relevant to those proceedings. All the documents disclosed in the course of the trial had been created for the purpose of the civil proceedings. The defendants were acquitted and the plaintiff applied in the civil proceedings for the return of all the documents. The matter came before the Court of Appeal.

One of the grounds upon which the plaintiff based its claim was that, as the documents had been disclosed in the course of the criminal proceedings the defendants were bound by an implied undertaking not to make any use of them for a collateral purpose: see the British Coal Corporation case [1988] 1 W.L.R. 1113, 1119-1120. The court was referred to Distillers Co. (Biochemicals) Ltd. v. Times Newspapers Ltd. [1975] Q.B. 613, Riddick v. Thames Board Mills Ltd. [1977] Q.B. 881 and Home Office v. Harman [1983] 1 A.C. 280. Neill L.J. identified the issue but declined to rule upon it, at p. 1120:

"These authorities show that where discovery is made in civil proceedings the party to whom disclosure is made is bound by an implied undertaking not to use the documents disclosed for any collateral purpose. Such a collateral purpose would include the use of the disclosed documents in other proceedings. We were also referred to the recent amendment to the Rules of the Supreme Court, effected by Ord. 24, r. 14A. Basing itself on the existence of this implied undertaking in civil proceedings, the plaintiff argued that where documents are disclosed to the police for the purpose of the investigation of a possible criminal offence, and then made available to the defence in subsequent criminal proceedings in accordance with the practice authorised by the Attorney-General in the guidelines issued in December 1981, or are disclosed to the defence in the course of a criminal trial either by an order of the court or otherwise, the defendants to whom the documents are disclosed are bound by an implied undertaking analogous to

Mahon v Rahn (No.1), [1998] Q.B. 424 (1997)

that which exists in a civil action. In view, however, of the clear conclusion which I have reached on the question of legal professional privilege, I do not find it necessary to reach any decision on this aspect of the case." (Emphasis added.)

The court did not have to decide the issue. Note that in any event, on the facts of that case, any order for delivery up of the documents disclosed **438** in the criminal proceedings would be pointless because, as Neill L.J. pointed out at p. 1120g-h, if the documents were no longer privileged, the same documents would have to be disclosed in the course of the ordinary discovery in the present action.

The second case, Ex parte Coventry Newspapers Ltd. [1993] Q.B. 278, concerned alleged malpractice by the West Midlands Police. B. had been convicted of unlawful wounding and his appeal against conviction was dismissed. The case was again referred to the Court of Appeal. The Court of Appeal (Criminal Division) ordered disclosure to B., for use on the hearing of the reference, of certain documents in the possession of the Police Complaints Authority ("P.C.A.") as a result of an investigation, on an implied undertaking not to use the disclosed documents otherwise than for the purposes of pursuing his criminal appeal on the reference, assurances having been given to informants that statements would not ordinarily be used otherwise than for the investigation of the complaint or for any criminal or disciplinary proceedings which might follow. The disclosed documents proved vital to the presentation of B.'s case, his appeal was allowed and his conviction was quashed. The applicants, Coventry Newspapers Ltd. ("C.N.L.") were the proprietors of a newspaper who were being sued for libel by two of the Serious Crime Squad officers. The applicants applied to the Court of Appeal (Criminal Division) to whom the implied undertaking had been given by B., to vary the undertaking to permit B. to disclose to them the authority's documents to enable them to plead justification in the libel action.

The Court of Appeal in the Coventry Newspapers Ltd. case was therefore not dealing with the question of whether such an implied undertaking existed in criminal proceedings, but whether such an implied undertaking

should be varied. Nevertheless, it appeared from the judgment of Lord Taylor of Gosforth C.J., at p. 285, that such an implied undertaking was assumed to exist:

"it is an application at the suit of . . . a third party for the court to release the appellant from his implied undertaking pursuant to which discovery of the P.C.A. documents was given under the court's order . . . But for such proposed order the appellant would clearly be unable to hand over the documents: he would be subject to an implied undertaking, analogous to that arising on discovery in civil proceedings, not to use the disclosed documents otherwise than for the purposes for which discovery was given, here the pursuance of the criminal appeal which is now, of course, successfully concluded. P.C.A. assert the undertaking and C.N.L. acknowledge it. What is in issue here is whether it should now be varied." (Emphasis added.)

Lord Taylor of Gosforth C.J. also referred, at p. 285h, to: "a public interest underlying the implication of the undertaking in the first place . . ." and accepted that the Court of Appeal (Criminal Division) alone, being the court to whom the implied undertaking was given, had power to vary it: see p. 286a-b. Lord Taylor of Gosforth C.J., at p. 286c-d, viewed the extent of the public disclosure of the documents as "but one of the considerations in play" and not the most material one in the circumstances of the case. The question of public disclosure was argued **439** first, in relation to the issue of public interest immunity and secondly, in relation to the implied undertaking.

On the public interest immunity issue it was contended, at p. 289f-h, that the documents had been "read to or by the court, or referred to, in open court" within the meaning of R.S.C., Ord. 24, r. 14A. Reliance was placed on the judgment of Sir Nicolas Browne-Wilkinson V.-C. in Derby & Co. Ltd. v. Weldon (No. 2), 132 S.J. 1755 and Derby & Co. Ltd. v. Weldon (Nos. 3 & 4), The Times, 15 November 1988. It was submitted that, inviting analogy first between discovery in civil and in criminal proceedings, and then between the implied undertaking on the one hand and public interest immunity on the other,

Mahon v Rahn (No.1), [1998] Q.B. 424 (1997)

that the court should conclude that the immunity too had lapsed: that there no longer remained any public interest in withholding the documents from further dissemination.

The court rejected that submission, at p. 290:

> "This submission appears to us unsound on several grounds. First, because rule 14A in any event expressly provides for the court to order otherwise if appropriate. More fundamentally, however, because the suggested analogy at once breaks down when it is recognised that the public interest immunity presently in question is not, or at least not principally, confidentiality-based. Rather, as was pointed out in Makanjuola v. Commissioner of Police of the Metropolis [1992] 3 All E.R. 617, it is intended to reassure informants that their statements will only be used for the investigation of complaints and for such criminal or disciplinary proceedings as directly follow. It is accordingly unnecessary to address the fine points of interpretation which rule 14A undoubtedly raises in the context of civil discovery for, even if Mr. Browne's arguments upon them are correct, that cannot avail him here."

On the issue of the implied undertaking, Lord Taylor of Gosforth C.J. stated, at p. 291:

> "It is the argument founded upon analogy with R.S.C., Ord. 24, r. 14A and it seems to us in this context a little stronger. The reason is this. Rule 14A appears clearly to postulate confidentiality as the central consideration underlying the implication of the undertaking in the first place. Once that confidentiality is dissipated by the use of the documents in open court, prima facie the undertaking lapses. But the argument still cannot carry Mr. Browne all the way. Because even if the element of confidentiality in the

documents is entirely lost, the rule nevertheless clearly caters to other considerations: it expressly empowers the court 'for special reasons' to order the undertaking to continue. Even, therefore, were the rule 14A analogy exact, the future of this undertaking remains in the court's discretion."

Counsel for the P.C.A. submitted that only very exceptionally should the implied undertaking be varied to permit disclosed documents to be used for ulterior purposes, not least when the application was made by a third party and for the purposes of proceedings wholly unconnected with those in which discovery was ordered. It was contended that the "fortuitous intervention of a criminal appeal" during the course of the libel action, **\*440** should not persuade the court to depart from its strict approach to implied undertakings.

The court dealt with that submission by drawing a distinction between an undertaking given in civil as opposed to criminal proceedings. Lord Taylor of Gosforth C.J. said, at p. 291:

> "Mr. Richard's argument would, we accept, be formidable indeed had the implied undertaking with which we are concerned been one given in the usual way in civil proceedings. Certainly nothing that we decide in the present case is intended in the least degree to diminish the high importance rightly recognised to attach to the concept of the implied undertaking as a necessary way of underpinning the integrity of the discovery process. But characterisations of discovery such as that of Lord Keith of Kinkel in Home Office v. Harman [1983] 1 A.C. 280, 308b, as 'a very serious invasion of the privacy and confidentiality of a litigant's affairs,' although of the clearest application to discovery given in private civil litigation, appear to us altogether less obviously apt in relation to an order such as that made by this court in the appellant's appeal.

Mahon v Rahn (No.1), [1998] Q.B. 424 (1997)

Orders for discovery rarely are made in criminal appeals and, when made, generally go, if not to the prosecution, then, as here, to a statutory body. Such bodies surely need little in the way of encouragement before making full and frank disclosure. In short, we have reached the conclusion that the public interest underlying this particular implied undertaking adds little, if anything, to that giving rise to the basic immunity claim attaching to these documents. If that immunity ought properly to be overridden in light of the countervailing public interest arising, then in our view that countervailing interest will outweigh too such limited value as still attaches to the implied undertaking." (Emphasis added.)

Having considered the question of public interest immunity, the Court of Appeal ordered that the undertaking should be varied to permit disclosure of the documents which were incorporated in B.'s appeal bundle, with the applicants undertaking to use the documents only for the purposes of defending the libel proceedings. In doing so Lord Taylor of Gosforth C.J. noted, at p. 292f-g, that the reassurance given to police complainants expressly admitted of exceptions and that it was:

> "a different case from those in which disclosure of this class of document is generally sought. The documents here are proposed for use not as a sword but as a shield; this is hardly a floodgate situation."

In the circumstances of the case it seemed to the court, at pp. 292-293:

> "nothing short of absurd to suppose that those who co-operated in this investigation - largely other police officers and court officials - will regret that co-operation, or that future generations of potential witnesses will

withhold it, were this court now to release the documents to C.N.L. to enable them to defeat if they can an allegedly corrupt claim in damages."

However it should be noted that Lord Taylor C.J. had reservations about whether the Criminal Division of the Court of Appeal was the most **\*441** suitable tribunal to deal with the case. He referred to the "very special facts of the case" and stated, at p. 286e: "This is not a case where we need decide difficult questions of law or lay down principles of general application." It was for that reason that Brooke J. found the case of limited assistance.

The defendants accept that the narrow issue in Ex parte Coventry Newspapers Ltd. [1993] Q.B. 278 was a different one, namely, whether public interest immunity operated to prevent disclosure, but rely upon the fact that both parties in that case together with the court unhesitatingly accepted that an implied undertaking existed: see per Lord Taylor of Gosforth C.J., at p. 285e-f. The defendants contend that this was "persuasive authority of high value" to which the judge was entitled to give considerable weight.

The third case was McGrath v. Chief Constable of Lancashire Police (unreported), 3 April 1996, a decision of Forbes J. which concerned two applications by Mr. McGrath regarding his proposed use in civil proceedings of certain documents which formed part of the documentation served upon him by the Crown Prosecution Service ("C.P.S.") for the purpose of his criminal prosecution on various charges of fraud. The documents fell into two classes: (1) witness statements and exhibits served by the C.P.S. as part of the prosecution's case and upon which the prosecution intended to rely - "used material;" and (2) witness statements and other material upon which the prosecution did not intend to rely in order to advance the criminal proceedings and which had been served on Mr. McGrath pursuant to the Attorney-General's Guidelines on the Disclosure of Information to the Defence, Practice Note (Criminal Evidence: Unused Material) [1982] 1 All E.R. 734.

In relation to the unused material, the Chief Constable of Lancashire had sought an injunction against Mr. McGrath in July 1995 to restrain his proposed use of the unused material in intended libel proceedings on the basis that it

Mahon v Rahn (No.1), [1998] Q.B. 424 (1997)

was subject to an implied undertaking that it was to be used only for the purpose of defending the criminal charges. The chief constable withdrew that action upon Mr. McGrath giving an undertaking to Morrison J. on 19 July 1995. Before Forbes J. Mr. McGrath sought a release from the express and implied undertakings to which the unused material was accepted to be subject. Therefore the only issue before the court was whether such a release should be granted.

Forbes J. stated:

> "in both the proceedings in July 1995 and in those before me, it was accepted on behalf of Mr. McGrath, in the light of the decision of the Court of Appeal in Ex parte Coventry Newspapers Ltd. [1993] Q.B. 278, that where 'unused material' has been served pursuant to an order of the court, it is subject to the implied undertaking alleged: . . . On behalf of Mr. McGrath, Mr. Bloom therefore accepted that, given the legally enforceable nature of the obligation to disclose 'unused material to the defence, the unused material in this case was subject to the implied undertaking . . ."

In relation to the used material, Mr. McGrath sought a declaration that certain of the documents forming part of the used material were not **\*442** subject to any implied undertaking that they could only be used by Mr. McGrath in the defence of the relevant criminal charges, or alternatively a release from any such implied undertaking. It was therefore an issue before the court whether witness statements and other documentary exhibits served on a defendant as part of the prosecution case were subject to an implied undertaking that the documents would be used solely for the purposes of those criminal proceedings.

On this issue, Forbes J. considered Ex parte Coventry Newspapers Ltd. [1993] Q.B. 278 and noted that the documents in question in that case were not the statements and exhibits which had been served on B. as part of the prosecution's case against him in the original criminal proceedings and said:

> "In my judgment, it is clear that the documents in question were held to be subject to an implied undertaking by B. to the court that he would not use those documents otherwise than for the purposes for which discovery had been given - namely the pursuance of the criminal appeal: . . ."

Counsel for Mr. McGrath submitted that an analysis of the nature and reasons for the analogous implied undertaking in civil proceedings showed that the reasons for such an implied undertaking did not apply in the case of used material in criminal proceedings and contended that the essence of the implied undertaking in civil proceedings was the compulsory nature of the process of discovery, involving a serious interference with the right of privacy. It was submitted that the documents served by the prosecution as part of the evidence upon which it would rely in the criminal proceedings ("the used material") were not served under compulsion and there was no invasion of privacy. He did accept that the prosecution's obligation to disclose its evidence in advance of trial was compulsory in nature.

However, Forbes J. was unpersuaded by these submissions. He said:

> "The compulsion, to which the prosecution is subject, to disclose its case in advance of a trial on indictment, does not arise as a mere incident of the burden and standard of proof which must be met by the prosecution in criminal proceedings. If that were the case, the compulsion would apply also to all summary trials in the vast majority of which there is no advance disclosure by the prosecution of the evidence upon which it intends to rely. In my opinion, the compulsion on the prosecution to disclose its case to a defendant in advance of trial on indictment is a direct consequence of the decision to prosecute the alleged offender on indictment, following investigation of an alleged offence by

Mahon v Rahn (No.1), [1998] Q.B. 424 (1997)

the appropriate authorities. . . . The vast majority of those who supply information to the police expect and are entitled to expect that the information will only be used for the purposes of the investigation and resulting criminal proceedings. For all other purposes the information is, in effect, treated as private. In the present case therefore, I am satisfied that the C.P.S. did act under compulsion of law in serving the witness statements and other documents upon which the prosecution relied in support of the criminal proceedings brought against Mr. McGrath (i.e. the 'used material'). Accordingly, for those reasons, I reject the fundamental and principal submission by which Mr. Bloom **443** sought to persuade me that 'used material' in criminal proceedings is not subject to the alleged implied undertaking, in contrast to the position which he accepts applies to 'unused material.' In my opinion, the position relating to the disclosure of 'used material' in criminal proceedings is as analogous to the process of discovery in civil proceedings as that of 'unused material.' " (Emphasis added.)

It was submitted that there was a public interest in ensuring that any documents or witness statements obtained by the police in the course of investigating crime would only be used for the purposes of the resulting criminal proceedings, if any, and that such a restriction on the use of documents was needed to reassure informants and to secure their confidence and co-operation. Without such reassurance the public interest in the proper and successful prosecution of crime would suffer. Forbes J. stated:

"These are compelling submissions and, in my judgment, they are correct. I am satisfied that the implied undertaking, which was recognised in Ex parte Coventry Newspapers Ltd. [1993] Q.B. 278, is one which

attaches to all the documents disclosed by the prosecution for the purposes of the criminal proceedings - whether the documents, in the event, are 'used' or 'unused' material. Lord Taylor of Gosforth C.J. made it clear in Ex parte Coventry Newspapers Ltd., at p. 291, that there is a public interest underlying the implied undertaking and that, for all practical purposes, that public interest is coextensive with the public interest in protecting the documents in question from disclosure - a public interest immunity which was then thought to subsist in the documents which were the subject matter of that judgment. It should be noted that the House of Lords has since made it clear that there is no public interest immunity attaching to the class of documents which the court was considering in Ex parte Coventry Newspapers Ltd.: see Reg. v. Chief Constable of West Midlands Police, Ex parte Wiley [1995] 1 A.C. 274. However, I am satisfied that the decision in Ex parte Wiley does not affect the material and relevant reasoning and judgment of the Court of Appeal in Ex parte Coventry Newspapers Ltd. [1993] Q.B. 278 which decision is binding upon me. In my opinion, that decision establishes that the underlying public interest, which is served by the imposition of the implied undertaking, is the same as the public interest which was then thought to justify the immunity from disclosure of the relevant class of documents. The public interest is defined as one which is *not* based on confidentiality but rather on the need to 'reassure informants that their statements will only be used for the investigation of complaints and for such criminal or disciplinary proceedings as directly follow:' see *per* Lord Taylor of Gosforth C.J., at p. 290b."

Forbes J. then went on to consider whether Mr. McGrath should be released from the implied undertaking which

Mahon v Rahn (No.1), [1998] Q.B. 424 (1997)

applied to both the "used" and the "unused material" and from the express undertaking which he gave to the court on 19 July 1995 in respect of the "unused material:"

> "it will only be in very exceptional or very unusual circumstances that the court will be prepared to grant the necessary release or variation **444** in the implied undertaking to enable the documents in question to be used in bringing and maintaining civil proceedings."

The facts of that case were, in the judgment of Forbes J., "sufficiently exceptional or unusual" to justify granting a variation of the relevant undertakings.

Brooke J. stated that he saw the force in the submission that if a complainant gave information voluntarily which turned out to be untrue he or she ought to be prosecuted by the police for wasting police time or perverting the course of justice, but he stated that even if Forbes J. went a little too far in the following passage:

> "The vast majority of those who supply information to the police expect and are entitled to expect that the information will only be used for the purposes of the investigation and resulting criminal proceedings. For *all* other purposes the information is, in effect, treated as private." (Emphasis added.)

That did not detract from the main thrust of what Forbes J. had to say in that passage with which Brooke J. agreed.

Having considered the above cases, Brooke J. held that an implied undertaking did exist in criminal proceedings. He based his reasoning on the analogy of the implied undertaking which exists in civil proceedings and could see "no good reason why the same principles should not apply to documents disclosed under compulsion in criminal proceedings . . ." He said:

> "The Crown Court is also a superior court of record: see section 45 of the

Supreme Court Act 1981; and I can see no good reason why the same principles should not apply to documents disclosed under compulsion in criminal proceedings. I am therefore not at all surprised that the very experienced counsel who appeared in Ex parte Coventry Newspapers Ltd. [1993] Q.B. 278 and McGrath v. Chief Constable of Lancashire made the concessions they did. In my judgment they were correct to do so as a matter of law."

The attention of this court has been drawn to Taylor v. Director of the Serious Fraud Office (unreported), 26 July 1996 - a decision of Sir Michael Davies given in chambers, but to be treated as having been given in open court, which was given after Brooke J. had given judgment in this case.

In Taylor's case the defendants sought to strike out a defamation action which was based on documents which had been disclosed by the Crown as *unused* material to two men who were defendants in a fraud prosecution. The documents were then disclosed to the plaintiff by solicitors for one of the defendants in the criminal proceedings. The documents had not been read out or referred to at the criminal trial, and were prima facie confidential and private. It was argued that there was no implied undertaking in criminal proceedings equivalent to that which applied in civil proceedings. Sir Michael Davies held that it was a breach of the implied undertaking to use the documents and struck out the action. He referred to Ex parte Coventry Newspapers Ltd. [1993] Q.B. 278 and said: "To some extent, that case is, for our purposes, clouded by the fact that public interest immunity played a substantial part in the argument **445** and decision, and it does not have any part to play here." And, to the statement by Lord Taylor of Gosforth C.J. that it was not a case where it was necessary to lay down principles of general application, he said: "But so trenchant is the judgment here, I do not think that comment prevents it from being of very considerable importance in this case."

Counsel for the plaintiff in Taylor's case argued that in Ex parte Coventry Newspapers Ltd. counsel should not have

conceded that the same considerations applied to implied undertakings in criminal as civil proceedings and that the judgment of the Court of Appeal was coloured by that concession. Sir Michael Davies indicated that he was not as persuaded that such a "watering down" was justified: he then referred to McGrath v. Chief Constable of Lancashire Police, 3 April 1996 and the judgment of Brooke J. in this case and stated:

> "What makes what Forbes J. said much stronger is the fact that he justifies the implied undertaking because it has the effect in criminal cases of enabling the court to control the use to which the documents can be put. That seems to me a fundamental matter of public policy. Here are documents which may contain, and very often do if a situation like this arises, and do here, matters which are sensitive, and perhaps more important for our purposes, contain matters which are potentially defamatory. . . . It does not seem to me to be in the interests of the public that in circumstances like this there should be opened up the possibility of countless, and I use the word deliberately, defamation cases arising from a situation like the present."

He struck out the action.

In summary, those decisions seem to recognise the necessity of an implied undertaking in criminal proceedings. In the British Coal Corporation case [1988] 1 W.L.R. 1113, it was unnecessary for the court to decide whether an implied undertaking existed. In Ex parte Coventry Newspapers Ltd. [1993] Q.B. 278, the existence of an implied undertaking was assumed and the only issue before the court was its variation. McGrath's case, 3 April 1996 did decide that an implied undertaking applied to the "used" material as defined in that case. Forbes J. declined to draw a distinction between "used" and "unused" material. In Taylor's case, 26 July 1996 the documents in question had not been read or referred to in open court. The rationale advanced in those authorities is that an implied undertaking is necessary in criminal proceedings to reassure and thus not deter informers, and the fear of a flood of defamation actions.

**(d) What is the position in relation to discovery in criminal proceedings?**

In criminal proceedings, the law relating to the disclosure of documents has been a mixture of common law and statute. Historically the prosecution's duty to disclose unused material to the defence was first formulated in Rex v. Bryant and Dickson (1946) 31 Cr.App.R. 146 and extended in Dallison v. Caffery [1965] 1 Q.B. 348. The Attorney - General's Guidelines (Disclosure of Information to the Defence in cases to be tried on Indictment) were then issued in December 1981: see Practice Note (Criminal Evidence: Unused Material) [1982] 1 All E.R. 734. However those guidelines have now been largely superseded by subsequent cases: **\*446** see for example Reg. v. Ward (Judith) [1993] 1 W.L.R. 619, Reg. v. Keane [1994] 1 W.L.R. 746 and Archbold, Criminal Pleading, Evidence & Practice 1997, paras. 12-46-12-54.

In criminal proceedings there is no duty of disclosure on third parties, although the concept of what constitutes the prosecution has gradually been extended: see Archbold, Criminal Pleading, Evidence & Practice 1997, paras. 12-45 and 12-48 (failure to disclose did not result in prejudice.)

The Criminal Procedure and Investigations Act 1996 establishes a general regime of disclosure by both prosecution and defence, replacing the common law rules as to disclosure in their entirety and being supplementary to the other statutory rules as to disclosure: see Archbold, Criminal Pleading, Evidence & Practice 1997, pp. 1210-1211, para. 12-45. The Act of 1996 has received the royal assent and section 17 came into force on 1 April 1997, after Brooke J.'s decision.

Although Brooke J.'s decision predates the Act of 1996, it is interesting to note the following provisions of section 17 which deal with the confidentiality of disclosed information. (1) Section 17(1) provides that if an accused is given or allowed to inspect a document under certain specified sections of the Act then, subject to sections 17(2) to (4), he must not use or disclose it or any information recorded in it. (2) Section 17(2) provides that the document may be used or disclosed by the accused in connection with the proceedings for whose purposes he was given the document or allowed to inspect it. (3) Section 17(3) makes an exception from the prohibition

against use or disclosure to the extent that a document has been displayed to the public in open court or to the extent that information has been communicated to the public in open court. It provides: "The accused may use or disclose - (a) the object to the extent that it has been displayed to the public in open court, or (b) the information to the extent that it has been communicated to the public in open court; . . ." (4) Section 17(4) to (6) provides a mechanism by which the accused may apply to the court for permission to use or disclose the document or information. The prosecutor or a person claiming to have an interest in the document or information may apply to the court to be heard on the application.

The commentary on section 17 in Halsbury's Statutes of England and Wales, 4th ed., vol. 12 (1997 reissue), p. 1801 is as follows:

> "This section is intended to protect *unused* material disclosed to the defence under this Part by requiring it to be treated confidentially. Such material may contain sensitive or potentially embarrassing information about individuals which could be used to harass witnesses or for blackmail. The type of situation that this section is intended to prevent is where, for example, unused material given to the defendant is circulated in prisons or disclosed in the press; the effect of this section is that an accused will, subject to the permission of the court, be able to use disclosed unused material only to prepare his defence or an appeal . . . Note that only unused material is protected by this section; the Government considered that it would be 'inappropriate' to place a special duty of confidentiality on the accused in respect of material that has been disclosed to the defence and will therefore be used in open court." (Emphasis added.)

**\*447** It is a contempt of court for a person knowingly to use or disclose a document or information recorded in it if the use or disclosure is in contravention of section 17: see section 18(1).

As I read the Act of 1996 its significance to the facts of this case is that (a) section 17 appears only to concern the disclosure of unused material - there appears to be no statutory restriction on the use of used material; (b) section 17(3) recognises, as R.S.C., Ord. 24, r. 14A does in civil proceedings, that the relevant undertaking does not apply where the documents or information have been displayed or communicated to the public in open court; and (c) section 17(6) provides a mechanism whereby the prosecutor or a person claiming to have an interest in the document or information may apply to be heard by the court where the accused has made an application under section 17(4). Given that the undertaking does not apply where the circumstances specified in section 17(3) arise, there would appear to be no statutory mechanism whereby a prosecutor or a person claiming an interest can make an application to the court seeking an order restricting the use of the document in question in the absence of an application having been made by the accused under section 17(4). This contrasts with the position under R.S.C., Ord. 24, r. 14A.

I have come to the conclusion that in the absence of a public interest immunity ruling to the contrary there never has been a fetter on the subsequent use of documents which have been "used" in the criminal process and the Act of 1996 confirms this.

**(e) Is it appropriate to apply an implied undertaking in criminal proceedings by analogy with the implied undertaking which exists in civil proceedings?**

**The argument**

The plaintiffs, in essence, submit that the analogy between criminal and civil proceedings is unconvincing; the position of the prosecution in a criminal case is not comparable with that of a plaintiff or a defendant in civil proceedings. In criminal cases, the prosecuting authority is under a strict and well-defined common law duty of disclosure. Such an authority is not a party to the dispute, is not, generally, the owner or author of the documents disclosed but is an independent public body acting in the interests of justice. That common law duty is converted into a statutory duty by section 3 of the Act of 1996. The plaintiffs reject the notion that the imposition of an implied undertaking is necessary on strong public policy grounds since otherwise prosecuting authorities would be deterred from strictly complying with their legal obligations of frank disclosure to the criminal defence solicitors. The reasons for implying the undertaking in civil proceedings are, submit the plaintiffs, not relevant in

Mahon v Rahn (No.1), [1998] Q.B. 424 (1997)

the criminal context. If those rationales have no application, or rarely apply, to criminal proceedings then the court should not imply the undertaking in criminal proceedings.

It is the defendants' case that it is an equitable principle of general application that where a person receives documents from another by means of compulsory disclosure in particular legal proceedings, he is under a legal obligation not to use them for any purpose other than the conduct **\*448** of those proceedings in which they were disclosed without the prior leave of the court under whose authority the documents were disclosed. The defendants submit that the argument that the reason in Riddick v. Thames Board Mills Ltd. [1977] Q.B. 881 for the existence of the implied undertaking in civil proceedings applies with even greater force to criminal cases and to the protection of informants from suit, than it does in civil litigation, is in order to protect informers.

**Conclusion**

I can find no basis for an implied undertaking in criminal proceedings on the grounds of privacy and confidentiality. It is foreseeable that any letter which is sent to a disciplinary body, if it is acted upon, will not preserve the anonymity of its source or the identity of the informant merely by an assertion of confidentiality. I note that in P. v. T. Ltd. [1997] 1 W.L.R. 1309, Sir Richard Scott V.-C. ordered disclosure of precise details of allegations made against a plaintiff which formed the basis for his dismissal by his former employers and disclosure of the identity of the complainant who made the allegations. He further ordered that the plaintiff was at liberty to use the documents and information so provided in an action against the unidentified informant in order to clear his name.

In the present case no confidentiality arises. This was conceded before the trial judge and before this court. On close perusal of the contemporaneous correspondence it is evident that the issues of confidentiality raised by the defendants and their lawyers related to the bank's obligations to their clients under Swiss law. No confidentiality could have been sought or given in respect of the letter or its enclosures. Accordingly it would have been impossible to restrict further use of it to the criminal proceedings on the basis of confidentiality. As Mr. Gray put it: the confidentiality of the letter, if it ever existed, evaporated in the course of the criminal trial.

Although the Act of 1996 was not in force when the matter was before Brooke J. it provides some indication of the intention of the legislature on confidentiality of documents in the criminal law process. It establishes a general regime of disclosure by the Crown and the defence enhancing the common law position. The effect of section 17 is to draw a distinction between used and unused material and to protect unused material by requiring it to be treated confidentially. Thus if a document is displayed in open court, or the information within it has been communicated to the public in open court, no such restriction applies, and the document may be used or disclosed by the accused without restriction. Parliament evidently considered it inappropriate to attach confidentiality in respect of material that has been disclosed to the defence and will be, or has been, used in open court.

Consequently I can discern no overriding public policy argument for the restriction of material disclosed during criminal proceedings and used in open court. I can find no justification for this court to proceed on the basis that prior to the Act of 1996 any restriction existed in relation to used material other than public interest immunity. I do not accept that section 17 should be construed so as to prevent the use of documents or information in the public domain to found an action for libel. In so **\*449** concluding I am not deflected by decisions or dicta based on R.S.C., Ord. 24, r. 14A which suggests that libel actions should be treated differently: see Singh (Tejendra) v. Christie, The Times, 11 November 1993 and Taylor v. Director of the Serious Fraud Office, 26 July 1996. I prefer the reasoning of Sir Nicolas Browne-Wilkinson V.-C. that Ord. 24, r. 14A has the effect that, save in exceptional circumstances, once a document has been used and referred to in open court it is a public document and no special undertaking continues: see Derby & Co. Ltd. v. Weldon (No. 2), 132 S.J. 1755.

Accordingly, in my view exceptional or special circumstances in the criminal context can exist but should be confined to matters of public interest immunity, and absolute privilege. I do not regard the position of the Crown in a criminal case as analogous to that of a party in civil proceedings. The former is bound by a strict common law, and now statutory, duty to disclose documents of which the body is rarely the author or owner. Such documents are often obtained by compulsion. The disclosure must be in the interests of justice so that the accused knows the nature of the case against him, and so that he has access to documents which

Mahon v Rahn (No.1), [1998] Q.B. 424 (1997)

might assist his case. I am unable to accept that public policy requires a duty on an accused not to use disclosed documents for any purpose other than the criminal proceedings on the ground that the Crown would be deterred from complying with their obligations of full disclosure in the interests of justice. The common law duty ensured that this did not happen; it is now a statutory duty.

The principle in Riddick v. Thames Board Mills Ltd. [1977] Q.B. 881 is firmly established in the civil law and there is clearly good reason for ensuring that private parties in litigation are not discouraged from making full and proper discovery. In my judgment, the reasons of public policy, proper administration of civil justice and abuse of civil process have no relevance in the criminal sphere where the rules of disclosure are for different purposes and now have statutory force.

To my mind, the defendants' most impressive argument is that without an implied undertaking informants would be exposed to the risk of proceedings based on such documents and so would be discouraged from coming forward. As Forbes J. aptly put it in McGrath v. Chief Constable of Lancashire Police, 3 April 1996:

> "The vast majority of those who supply information to the police expect and are entitled to expect that the information will only be used for the purpose of the investigation and resulting criminal proceedings. For all other purposes the information is, in effect, treated as private."

It is said that there is an overriding public interest in protecting informants, witnesses and their sources.

I accept that there is a public interest in protecting informants. The police rely heavily upon information and intelligence provided by individuals close to criminals. Unless there is protection for informants many criminals would not be brought to justice. However I doubt that public policy recognises or requires a protection which is comprehensive as the defendants claim. There is no blanket protection for material disclosed in criminal proceedings. In a subsequent libel suit a distinction is drawn between publications in the preliminary stages and those in the course of, **\*450** or sufficiently proximate to,

the judicial process. The former are subject to qualified privilege; the latter are covered by absolute privilege.

Those who have absolute privilege are immune from suit "although the words written or spoken were written or spoken maliciously, without any justification or excuse, and from personal ill-will and anger against the party defamed:" see per Lopes L.J. in Royal Aquarium and Summer and Winter Garden Society Ltd. v. Parkinson [1892] 1 Q.B. 431, 451 and Gatley on Libel and Slander, 8th ed. (1981), p. 160, paras. 384 et seq. "This rule of law . . . is founded on public policy which requires that a . . . witness in giving evidence, oral or written, in a court of justice, shall do so with his mind uninfluenced by the fear of an action for defamation or a prosecution for libel:" see per Pigot C.B. in Kennedy v. Hilliard (1859) 10 I.C.L.R. 195, 209. I recognise however that informants are more likely to participate in the preliminary stages, and are less likely to give evidence and thus are unlikely to benefit from absolute privilege. Those who volunteer information enjoy only qualified immunity from proceedings in libel. But if the informants are honest their protection is complete. If "malicious, without justification or excuse or from personal ill-will" their protection is forfeit: see Gatley on Libel and Slander, paras. 384 et seq. The informant is not bereft of all protection. In exceptional cases of particular sensitivity where there is a legitimate reason for protecting the anonymity of the source that object can still be achieved by making a claim for public interest immunity, if necessary, by an ex parte application in camera. In the present case the Crown made an application but the trial judge rejected it.

Accordingly, I am of the view that there is no compelling reason for the implied undertaking on the ground that its absence will deter informants from coming forward. The honest have nothing to fear. The anonymity of those in peril can be protected. It is in the interests of justice that the dishonest should be deterred from disseminating calumny and perverting the course of justice. Thus, in practice, there is only a small risk to informants and it is hardly a floodgates situation. Moreover as a matter of public policy a person who is the victim of malicious false statements to regulatory bodies who wish "to put the record straight" should not be met by blanket protection of the kind advocated by the defendants. Qualified privilege is sufficient protection leaving the victim plaintiff to prove malice.

I venture to suggest that this analysis and approach does have the merit of conforming with article 6 of the

Mahon v Rahn (No.1), [1998] Q.B. 424 (1997)

Convention for the Protection of Human Rights and Fundamental Freedoms (1953) (Cmd. 8969), which provides: "In the determination of his civil rights and obligations . . . everyone is entitled to a fair and public hearing within a reasonable time by an independent and impartial tribunal established by law."

Accordingly, I have come to the conclusion that it is not appropriate to imply an undertaking in criminal proceedings by analogy with the implied undertaking which exists in civil proceedings. It must follow that I must respectfully dissent from the conclusion of Brooke J. on the first issue when he found that an implied undertaking did exist.

**\*451** Issue 2: Does the implied undertaking apply to all documents disclosed by the Crown without regard to the question whether the Crown obtained them voluntarily or by compulsion?

If my analysis and conclusions are correct then the issue does not arise. If I am wrong then Brooke J. would be correct when he said:

> "it applies to all documents disclosed by the Crown without regard to the question whether the Crown obtained them voluntarily or by compulsion. In my judgment the courts would be doing a disservice to those engaged in the investigation of crime if they had to warn would be informants that less protection would be afforded to written information they supplied voluntarily, and in consequence, in fairness to their informants, they always had to have recourse to compulsory powers."

I would have to concede that an implied undertaking should apply to all documents regardless of whether they were obtained voluntarily or by compulsion. A prosecuting authority who discloses documents pursuant to its common law, and now statutory, obligations is not in the same position as a party to civil proceedings who voluntarily discloses documents at an interlocutory stage as was done in Derby & Co. Ltd. v. Weldon (No. 2), 132 S.J. 1755. If one recognises the underlying rationale of

reassuring and not deterring informants, there is no logical reason for distinguishing between the means by which the documents were obtained. If such a distinction were recognised it might well be detrimental to the administration of justice, as it would discourage informers from volunteering information.

**Issue 3: Does it apply to documents disclosed by the Crown both as used" and unused" documents?**

If I am correct the issue does not arise. If I am wrong then I would still dissent from the conclusion of Brooke J., that the undertaking applied to both "used" and "unused" documents. This was based on his concurrence with the reasoning of Forbes J. in McGrath v. Chief Constable of Lancashire Police, 3 April 1996. As I read the Act of 1996 there is an implied distinction between used and unused material. If there is an undertaking it can only apply to unused material until the court releases the embargo. The undertaking could and should not attach to used material, particularly when the information and the identity of the informant were in the public domain, except where public interest immunity considerations arise.

**Issue 4: Does it continue to apply after the relevant document has been read or referred to in open court in the criminal proceedings?**

If I am correct the issue does not arise. If I am wrong, then I would be inclined to the view that the undertaking does continue to apply for so long as it remains unused and the court has made no order. Conversely I am satisfied that the undertaking would not continue to apply after it **\*452** has been used, subject to public interest immunity considerations. It follows that I must dissent from the conclusion of Brooke J.:

> "In my judgment, therefore, even after documents have been read in open court, the court to whom the undertaking was given is still entitled to exercise control in this regard, and an application would have to be made to the court for the variation of the undertaking to permit their use in other proceedings."

WESTLAW    © 2016 Thomson Reuters.

Mahon v Rahn (No.1), [1998] Q.B. 424 (1997)

I prefer: (1) the reasoning and approach in civil proceedings: see R.S.C., Ord. 24, r. 14A and Derby & Co. Ltd. v. Weldon (No. 2), 132 S.J. 1755, but excluding Singh (Tejendra) v. Christie, The Times, 11 November 1993; (2) the rationale of section 17 of the Act of 1996; (3) an approach rooted in common sense that there should be no impediment on the use of information which is in the public domain subject to the very rare invocation of public interest immunity; and (4) the basic concept encapsulated in article 6 of the Convention for the Protection of Human Rights and Fundamental Freedoms (1953).

**Issue 5: If the undertaking continues to apply, and a libel action is commenced in breach of the undertaking, does the court have any discretion not to strike it out as an abuse of process?**

If I am correct and no undertaking exists it would not be an abuse of process to commence a libel action. If I am wrong then I am inclined to the view that if the publication is based on used material there would be no abuse of process and no discretion to strike it out on this ground. If it is based on unused material it would be a contempt of court and an abuse of process to commence an action. The court within its inherent jurisdiction and under R.S.C., Ord. 18, r. 19 would have power to strike it out on this ground. However I would not regard this power as absolute and the court, Crown Court or civil, has a discretion to vary the undertaking, on an application made in due time, to permit an aggrieved plaintiff to remedy an injustice he has suffered at the hands of the unscrupulous.

If this court were to exercise its discretion I would accede to the plaintiffs' argument, as set out in counsel's skeleton argument, that: "[they] became aware, without any impropriety on their part, of a document which on their case is seriously libellous of them and highly damaging. This being a strike-out application the facts pleaded in the statement of claim must be assumed to be true . . . there is clear reason to suppose that a major wrong has been done to the plaintiffs . . . and [they] should be able to obtain redress for the wrong done to them."

In my judgment at this stage of the civil process the balance of competing public interests comes down in favour of the plaintiffs.

I wish to add a postscript based on authority which was not cited before this court. Earlier I drew a distinction between statements made during the actual proceedings - attracting absolute privilege - and statements made in the preliminary stages of investigation - attracting qualified privilege. On the basis of Hasselblad (G.B.) Ltd. v. Orbinson [1985] Q.B. 475, 504b-e, Evans v. London Hospital Medicial College (University of London) [1981] 1 W.L.R. 184, 191f-h, *per* Drake J., X (Minors) v. Bedfordshire County Council [1995] 2 A.C. 633, 755e-f, and **\*453** *Phipson on Evidence*, 14th ed. (1990), pp. 149-152, para. 9-14, it would appear at least arguable that the defendants in this case could raise the defence of absolute immunity. However, this has not been pleaded, nor was the point argued below or before this court. Thus it would not be appropriate for this court to maintain Brooke J.'s decision to strike out on this ground.

I would therefore allow the appeal and reinstate the action.


Schiemann L.J.


I agree.


Staughton L.J.


**The rule in civil proceedings**

Documents disclosed by one party to another in civil proceedings, as part of the process of discovery, may not be used for other purposes without leave of the court. One should notice three limitations on the rule. First, it does not apply to documents disclosed voluntarily by one party in interlocutory proceedings: see Derby & Co. Ltd. v. Weldon (No. 2), 132 S.J. 1755, where Sir Nicolas Browne-Wilkinson V.-C. said: "The voluntary disclosure of documents in the course of interlocutory proceedings by a party does not come within the rationale which is the basis of the implied undertaking relating to documents disclosed on discovery."

Secondly, so far as the cases show the rule applies only to the parties to the proceedings in which the documents are disclosed, and to those, such as Miss Harman, the solicitor, who have access to the documents on their behalf: see the hypothetical example given by Lord Diplock in Home Office v. Harman [1983] 1 A.C. 280, 305, and Lord Roskill, at p. 322: "a party to whom discovery has been made is in relation to his opponent's

Mahon v Rahn (No.1), [1998] Q.B. 424 (1997)

documents at a great advantage in comparison with the rest of the world." A stranger who happens to be in court is not deemed to have given an implied undertaking. He is free to make such use as he pleases of the information which is publicly imparted to the rest of the world, subject of course to the general law for example in relation to defamation.

Thirdly, a civil litigant is, as it seems to me, forbidden only to use the documents disclosed on discovery by his opponent and the information in them; he remains free to sue in another action on the basis of information which he has obtained from another source. Authority for the first part of the proposition is said to be found in Sybron Corporation v. Barclays Bank Plc. [1985] Ch. 299. The second part is supported, so far as I am aware, only by common sense. It cannot be the law that a litigant, having from the start information and evidence which would enable him to bring an action against another, becomes disqualified from using it if that information and that evidence are later disclosed to him on discovery in another action to which he is a party.

The implied undertaking in civil proceedings is thus a somewhat unusual creature. It is imposed not by statute or a rule of court but by the common law; it is carefully tailored as a remedy for the intrusion on a litigant's privacy; and although described as an implied undertaking it is a rule which neither party can unilaterally disclaim. The origin and true *454 nature of the rule are, if I may say so, well described by Hobhouse J. in Prudential Assurance Co. Ltd. v. Fountain Page Ltd. [1991] 1 W.L.R. 756, 764-765:

> "This undertaking is implied whether the court expressly requires it or not. The expression of the obligation as an implied undertaking given to the court derives from the historical origin of the principle. It is now in reality a legal obligation which arises by operation of law by virtue of the circumstances under which the relevant person obtained the documents or information. However treating it as having the character of an implied undertaking continues to serve a useful purpose in that it confirms that the obligation is one which is owed to the court for the benefit of the parties, not one which is owed simply to the parties; likewise,

it is an obligation which the court has the right to control and can modify or release a party from. It is an obligation which arises from legal process and therefore is within the control of the court, gives rise to direct sanctions which the court may impose (viz. contempt of court) and can be relieved or modified by an order of the court. It is thus a formulation of the obligation which has merit and convenience and enables it to be treated flexibly having regard to circumstances of any particular case. Treating the duty as one which is owed to the court and breach of which is contempt of court also involves the principle that such contempts of court can be restrained by injunction and that any person who knowingly aids a contempt or does acts which are inconsistent with the undertaking is himself in contempt and liable to sanctions: see Distillers Co. (Biochemicals) Ltd. v. Times Newspapers Ltd. [1975] Q.B. 613."

An implied obligation which the parties cannot contract out of is not a creature wholly unknown to the law; see for example the implied terms in section 8 of the Hire Purchase Act 1938. It is, as Hobhouse J. said, in reality an obligation imposed by law.

### R.S.C., Ord. 24, r. 14A

Although this rule does not, in my opinion, apply to criminal proceedings in the Crown Court, we ought to consider it when deciding whether the common law rule for civil proceedings should also apply in crime. The rule provides:

> "Any undertaking whether express or implied not to use a document for any purposes other than those of proceedings in which it is disclosed, shall cease to apply to such document after it has been read to or by the court, or referred to, in open court

Mahon v Rahn (No.1), [1998] Q.B. 424 (1997)

unless the court for special reasons has otherwise ordered on the application of a party or of the person to whom the document belongs."

This rule came into force in 1987.

There can be little doubt that the rule resulted from the settlement that was reached of Miss Harman's application to the European Commission **\*455** of Human Rights against the United Kingdom, quoted by Hirst J. in Bibby Bulk Carriers Ltd. v. Cansulex Ltd. [1989] Q.B. 155, 159:

"The Government are prepared to undertake to seek to change the law so that it will no longer be a contempt of court to make public material contained in documents compulsorily disclosed in civil proceedings, once those documents have been read out in open court. The substance of the change would be that where a document or part of a document so disclosed to a party in civil proceedings has been read out in open court, the implied undertaking given by the person to whom such disclosure has been made not to use the document for any purpose other than the proper conduct of his own case should not prevent his using that document for the purpose of his making the contents of the document, of that part of it, as the case may be, known to any person. This change would not apply in the case of a document, or part of a document, which was the subject of an order of the court preventing its disclosure otherwise than to the parties to the action."

There remains a question whether Ord. 24, r. 14A reproduces exactly what the United Kingdom undertook to do, or whether it goes a good deal further than that.

That question was decided by Drake J. in Singh (Tejendra) v. Christie, The Times, 11 November 1993 and on appeal by Butler-Sloss L.J. and Sir Michael Kerr in this court in Tejendrasingh v. Metsons, 20 May 1994. It was held that the effect of the rule was limited to allowing the party subject to the undertaking to make known the contents of the documents; it did not have the effect of freeing him to use it for any other purpose, including bringing a libel action upon it. I have to say with great respect to two distinguished colleagues, that the decision in Singh's case is not binding upon us (see *The Supreme Court Practice 1997*, p. 948, para. 59/1/61) and ought not to be followed. It was made in a series of applications for an extension of time and leave to appeal all of which were refused. The applicant was a litigant in person of whose litigation it was said "These cases do not deserve to be heard" and who was warned that he was in danger of being held to be a vexatious litigant. The court was not, so far as I can tell, referred to the decision of Sir Nicolas Browne-Wilkinson V.-C. in Derby & Co. Ltd. v. Weldon (No. 2), 132 S.J. 1755, where it was held, if indeed it was disputed, that Ord. 24, r. 14A enabled documents to be disclosed in other proceedings if the condition laid down by the rule was fulfilled. In *Style & Hollander's Documentary Evidence*, 5th ed. (1995), p. 272 it is said that, when rule 14A applies, "The holder of the document is then completely freed from all restrictions and can use the document for any purpose whatsoever." It is then suggested that the decision of Drake J. in Singh (Tejendra) v. Christie, The Times, 11 November 1993 was incorrect. To the same effect is Matthews and Malek, Discovery (1992), pp. 260-261, paras. 12.22-12.23.

**Criminal proceedings**

Against that background, I turn to consider what the rule is in criminal proceedings in the Crown Court. At the start I would emphasise that we **\*456** are dealing in this case with a document which was disclosed to the plaintiffs because it formed part of the material which the prosecution wished to put before the court. It was exhibited to the witness statement of an official of the Serious Fraud Office. That it may or may not have done much to forward the prosecution case is immaterial. What is more, the document was read or referred to in open court, in evidence in chief and cross-examination. It certainly entered the public domain.

Anyone who wishes to prosecute someone in the Crown Court is obliged to disclose his witness statements and exhibits as part of the prosecution process. Despite inquiries, counsel were unable to tell us the source of that

Mahon v Rahn (No.1), [1998] Q.B. 424 (1997)

obligation; perhaps it is too well known to be readily available. In a sense, I suppose, the prosecutor is subject to compulsion, since his duty is to prosecute: and if he does not disclose his witness statements and exhibits he cannot discharge that duty. But clearly it is a considerable stretching of language to say that the prosecutor's privacy is thereby invaded, which is commonly the justification for the rule in civil proceedings.

The leading case on the topic under this head is *Ex parte Coventry Newspapers Ltd.* [1993] Q.B. 278. There the Criminal Division of this court had ordered disclosure to an appellant and his advisers of documents assembled by the Police Complaints Authority; and the publishers of the "Coventry Evening Telegraph" applied to the court for the appellant to be released from his implied undertaking not to disclose the documents to anyone else. The publishers wished, with the appellant's consent, to use the documents in defending a libel action which police officers had brought against them. It was thus common ground that there was an implied undertaking by an appellant to whom documents were disclosed by an order of the Court of Appeal (Criminal Division). Lord Taylor of Gosforth C.J. said as much, at p. 285:

> "In form it is an application at the suit of C.N.L. as a third party for the court to release the appellant from his implied undertaking pursuant to which discovery of the P.C.A. documents was given under the court's order of 9 July 1991 - released that is to the extent of permitting him to disclose the documents to C.N.L., they for their part undertaking to the court to hold them for the strictly limited purpose of defending the libel proceedings brought against them by Woodly and Clifford. But for such proposed order the appellant would clearly be unable to hand over the documents: he would be subject to an implied undertaking, analogous to that arising on discovery in civil proceedings, not to use the disclosed documents otherwise than for the purposes for which discovery was given, here the pursuance of the criminal appeal which is now, of course, successfully concluded. P.C.A. assert the undertaking and C.N.L. acknowledge it. What is in issue here is whether it should now be

varied."

Lord Taylor of Gosforth C.J. referred to an argument based on an analogy with Ord. 24, r. 14A and said, at p. 291, that "Once . . . confidentiality is **457** dissipated by the use of the documents in open court, prima facie the undertaking lapses." He continued:

> "Mr. Richard's argument would, we accept, be formidable indeed had the implied undertaking with which we are concerned been one given in the usual way in civil proceedings. Certainly nothing that we decide in the present case is intended in the least degree to diminish the high importance rightly recognised to attach to the concept of the implied undertaking as a necessary way of underpinning the integrity of the discovery process. But characterisations of discovery such as that of Lord Keith of Kinkel in *Home Office v. Harman* [1983] 1 A.C. 280, 308b, as 'a very serious invasion of the privacy and confidentiality of a litigant's affairs,' although of the clearest application to discovery given in private civil litigation, appear to us altogether less obviously apt in relation to an order such as that made by this court in the appellant's appeal. Orders for discovery rarely are made in criminal appeals and, when made, generally go, if not to the prosecution, then, as here, to a statutory body. Such bodies surely need little in the way of encouragement before making full and frank disclosure."

That supports the view which I have already expressed, that invasion of privacy is not exactly how one would characterise the obligation of a prosecutor to disclose his witness statements and exhibits. Whether it is apt to describe the prosecutor's obligation to disclose unused material is or may be another question. It is not what we have to decide today.

Mahon v Rahn (No.1), [1998] Q.B. 424 (1997)

In McGrath v. Chief Constable of Lancashire Police, 3 April 1996, the defendant on a criminal charge was served both with witness statements and exhibits which the prosecution intended to use as part of their case, and also with unused material. He applied for a declaration that he was entitled to make use of the first class of material in a civil action, and for leave to use the second class of material also. Forbes J. held that the used material was subject to an implied undertaking, in the same way as it was conceded that the unused material was. He supported this conclusion by reference to the judgment in the Coventry Newspapers Ltd. case [1993] Q.B. 278. For my part, I cannot agree that the Coventry Newspapers Ltd. decision necessarily applies to a case where there has been no specific order for disclosure of documents; and if it does apply to the disclosure of unused material without an order, I do not accept that it applies to documents disclosed as part of the prosecution case.

Taylor v. Director of the Serious Fraud Office (unreported), 26 July 1996 was concerned with unused material, which had not been read out or referred to in the criminal trial. Sir Michael Davies ordered a libel action based upon it to be struck out.

In Cunningham v. Essex County Council, The Times, 31 March 1997, Judge Rivlin Q.C. followed the decision of Brooke J. in the present case.

Despite this impressive concurrence of opinion among judges at first instance, I do not consider that the defendant in a criminal trial is under any implied undertaking as to the use of material disclosed to him as part of the prosecution case, whether or not it is read out or referred to in open court. It was not in my judgment an invasion of privacy which caused that material to be disclosed. That seems to me to be what Lord *458 Taylor of Gosforth C.J. was saying in the Coventry Newspapers Ltd. case [1993] Q.B. 278, and I agree with it.

There is one further source which lends strong support for that conclusion. It is the Criminal Procedure and Investigations Act 1996. Section 17 provides:

"(1) If the accused is given or allowed to inspect a document or other object under - (a) section 3, 4, 7, 9, 14 or 15, or (b) an order under section 8, then, subject to subsections (2) to (4), he must not use or disclose it or any information recorded in it. (2) The accused may use or disclose the object or information - (a) in connection with the proceedings for whose purposes he was given the object or allowed to inspect it, (b) with a view to the taking of further criminal proceedings (for instance, by way of appeal) with regard to the matter giving rise to the proceedings mentioned in paragraph (a), or (c) in connection with the proceedings first mentioned in paragraph (b). (3) The accused may use or disclose - (a) the object to the extent that it has been displayed to the public in open court, or (b) the information to the extent that it has been communicated to the public in open court; but the preceding provisions of this subsection do not apply if the object is displayed or the information is communicated in proceedings to deal with a contempt of court under section 18. (4) If - (a) the accused applies to the court for an order granting permission to use or disclose the object or information, and (b) the court makes such an order, the accused may use or disclose the object or information for the purpose and to the extent specified by the court."

The important point to my mind is that none of the sections referred to in section 17(1)(a) deals with the disclosure of witness statements and exhibits which are part of the prosecution case. They are all concerned with disclosure of unused material. Why the omission? Does it mean that subsection (3), which licenses use of material that has been read in open court, applies to the compulsorily disclosed unused material but not to that which was part of the prosecution's case? Such a result would be bizarre. The true answer must be that there is no need to make provision for the release of material in the prosecution case, as it is not subject to any implied undertaking against disclosure in the first place.

Mahon v Rahn (No.1), [1998] Q.B. 424 (1997)

Section 17 came into force on 1 April 1997. But it has been available as a guide to what Parliament thought the existing law to be since it was enacted on 4 July 1996: compare Reg. v. Secretary of State for the Home Department, Ex parte Fire Brigades Union [1995] 2 A.C. 513.

If I understood him correctly, Mr. Moloney argued that the present appeal could be decided on the narrow ground of abuse of process. It was submitted that, even if there was no implied undertaking, no breach, no contempt of court, still it was an abuse of process to use the document in question in the present action. I say only that I can detect no support whatever for such doctrine.

I would allow this appeal. The defendants must rely on the protection afforded to them, where appropriate, by absolute or qualified privilege in defamation proceedings. Otton L.J. in his penultimate paragraph has **459** referred to cases which elucidate the privilege that is available to witnesses. We heard no argument on that topic, but clearly it may well be relevant if this action proceeds further. I agree that we should not rule upon it at the present stage. It is not pleaded, the full facts may not be known, and we would have to recall the parties for further argument. It must be considered, if at all, on some other occasion.

**Representation**
Solicitors: Sheridans; Bircham & Co.

Appeal allowed with costs. Leave to appeal refused.
([Reported by Isobel Collins, Barrister] )

(c) Incorporated Council of Law Reporting for England & Wales

© 2016 Sweet & Maxwell
[1998] Q.B. 424

