**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, <br><br> Plaintiff-Applicant, <br><br> v. <br><br> BERNARD L. MADOFF INVESTMENT SECURITIES LLC, <br><br> Defendant. | Adv. Pro. No. 08-01789 (SMB) <br><br> SIPA Liquidation <br><br> (Substantively Consolidated) |
| In re: <br> BERNARD L. MADOFF, <br><br> Debtor. | |

**MADOFF CUSTOMERS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR AN ORDER AUTHORIZING THE DEPOSITION OF BERNARD L. MADOFF**

 

**CHAITMAN LLP**
465 Park Avenue
New York, New York 10022
(908) 303-4568
Helen Davis Chaitman
Gregory M. Dexter
hchaitman@chaitmanllp.com
gdexter@chaitmanllp.com

*Attorneys for the Customers Listed on*
*Exhibit A to Notice of Motion*

{00019013 2 }

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ....................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................. 1

STATEMENT OF FACTS AND PROCEDURAL POSTURE ..................................................... 2

    I.     The Madoff liquidation ..................................................................................... 2

    II.    The Madoff declaration.................................................................................... 3

LEGAL STANDARD.................................................................................................................. 5

ARGUMENT............................................................................................................................... 5

    I.     Factual disputes about the ambiguous journal entries necessitate
          Madoff's deposition ......................................................................................... 6

    II.    Madoff's position is actually more credible than the Trustee's............................. 7

    III.   The Trustee lacks evidence to establish withdrawals ............................................ 8

    IV.   Other courts have granted leave to depose Madoff ............................................... 9

CONCLUSION............................................................................................................................ 9

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anwar v. Fairfield Greenwich Limited*,
   No. 09-cv-00118, ECF No. 1090 (Order, S.D.N.Y. March 15, 2013) ...................... 9

*Barella v. Vill. of Freeport*,
   296 F.R.D. 102 (E.D.N.Y. 2013) ............................................................................. 5

*In re Bernard L. Madoff Inv. Sec. LLC*,
   424 B.R. 122 (Bankr. S.D.N.Y. 2010) .................................................................... 7

*Oppenheimer Fund, Inc. v. Sanders*,
   437 U.S. 340 (1978) ................................................................................................ 5

*Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff Inv. Sec. LLC)*,
   654 F.3d 229 (2d Cir. 2013) .................................................................................... 7

*Williams ex rel. Williams v. Greenlee*,
   210 F.R.D. 577 (N.D. Tex. 2002) ............................................................................ 5

**Other Authorities**

Fed. R. Civ. P. 26 .............................................................................................................. 6

Fed. R. Civ. P. 26(b)(1) .................................................................................................... 5

Fed. R. Civ. P. 26(b)(2) .................................................................................................... 5

Fed. R. Civ. P. 30(a)(1)(2)(B) .......................................................................................... 5

Fed. R. Civ. P. 30(a)(2) .................................................................................................... 5

Fed. R. Civ. P. 30(a)(2)(B) ............................................................................................... 1

The Customers listed on Exhibit A hereto (the "Customers") respectfully submit this memorandum of law in support of their motion for an order authorizing the deposition of Bernard L. Madoff pursuant to Federal Rule of Civil Procedure 30(a)(2)(B) (the "Motion").

## PRELIMINARY STATEMENT

In the aftermath of the collapse of the largest financial fraud in history, numerous factual questions exist with respect to the meaning of certain ambiguous journal entries on the customer statements of Bernard L. Madoff Investment Securities, LLC ("BLMIS") that pre-date December 1998 – before Madoff initiated his "split-strike conversion" strategy. The Trustee has interpreted all ambiguous entries in such a way as to reduce the number of people to whom SIPC has to pay up to $500,000 in SIPC insurance – even where the Trustee has no evidence to support his interpretation of the ambiguities. At the recent argument on Aaron Blecker's motion, this Court asked the Trustee's counsel the most important question: "You're going through this exercise of getting experts. **Has anyone taken the deposition of a person who worked the Madoff Securities and might know what these profit withdrawals mean?"** (Transcript 13:5-8, February 24, 2016) (emphasis added). The Trustee's counsel answered that no one had. (*Id.* at 13:9).

We do not know whether, in fact, the Trustee spoke to former BLMIS employees and got answers that were inconsistent with SIPC's interests; or whether, in fact, he never spoke to former BLMIS employees. Either way, of course, the Trustee has breached his fiduciary duties to customers. Thus, the Trustee has asked this Court to affirm his denial of SIPC insurance in a factual vacuum, relying solely on utterly inadmissible expert testimony that is totally inappropriate to establish facts.

The Customers respectfully ask this Court to order that they be permitted to depose Madoff because he undoubtedly has personal knowledge of precisely what an entry like "CHECK AT&T"

meant with a notation "PW" in another column. According to the Trustee's experts, there are 90,541 such transactions with a "PW" entry, purportedly "profit withdrawal." (*See* Trustee's Memorandum of Law in Support of Trustee's Motion Affirming Treatment of Profit Withdrawal Transactions, ECF No. 10661 at 11). While some of these "profit withdrawal" entries list a stock name, others omit the stock name and only state "CHECK." (*Id.* at 11-12). In addition, there are approximately 597 similar transactions that did not have a "PW" entry but instead "CW" (purportedly "cash withdrawal") or "JRNL" (purportedly "journal"), bringing the total number of entries at issue in this Motion to 91,138. The Trustee has treated all of the above entries as if they were the same – again without any factual basis. Madoff would be the best, and only, person to ask whether that is correct.

The Trustee has acknowledged that the profit withdrawal issue involves "evidentiary . . . issues . . . [that] should be addressed and fully vetted." (Trustee's Memorandum of Law in Opposition to Motion of Aaron Blecker to Compel the Trustee to Allow his SIPC Claim, ECF No. 12432 at 15). Therefore, the Trustee cannot have a legitimate objection to the Customers' taking Mr. Madoff's deposition.

## STATEMENT OF FACTS AND PROCEDURAL POSTURE

### I. The Madoff liquidation

The Madoff liquidation was filed in December 2008 and yet, to this day, the Trustee has never taken Madoff's sworn testimony. Currently serving a 150 year prison sentence, Mr. Madoff has no motivation to lie. Given the death of his lieutenant, Frank DePascali (whom the Trustee also did not depose), Mr. Madoff is the only living person who has personal knowledge of what he did with respect to the purported "profit withdrawals."

{00019013 2}    2

## II. The Madoff declaration

On November 17, 2015, Madoff signed a sworn declaration that flatly contradicts the Trustee's interpretation of the profit withdrawal entries in cases where the Trustee has no document from the Customers asking that profit withdrawals be sent to them. In that declaration, Madoff states:

> In the investment advisory business, stock brokers do not send checks to customer unless they specifically request a withdrawal. In fact, I cannot recall a single instance in my career where I sent a check to a customer that did not request it. Sometimes the requests would be for a quarterly payment of a fixed amount, like $25,000. Sometimes I would receive a request for a large withdrawal, such as $250,000. But I cannot ever recall sending a check to a customer who did not ask for a withdrawal.

(Declaration of Bernard L. Madoff, November 17, 2015, ¶ 2, ECF No. 12319-2).

Madoff further states that because there were no recorded phone lines in the 1980s and 1990s, he did not accept verbal instructions from customers. (*Id.* ¶ 3). Thus, according to Madoff's sworn declaration, if customers wanted withdrawals, "they had to specifically request them in writing and we retained copies of all such requests in our customer files." (*Id.*). Accordingly, "[i]f there are no such requests in our files, that indicates that the customer did not request any withdrawals and would not have received any checks." (*Id.*). The Trustee has produced, in some cases, letters from Customers asking for profit withdrawals. However, there are a large number of Customers who insist they never received profit withdrawals and from whom there is no documentary evidence suggesting they requested them. One such instance that illustrates this problem is in the case of Aaron Blecker ("Blecker").

Blecker is 104 years old. (*See* Declaration of Aaron Blecker, May 20, 2014, ECF No. 6761, ¶ 1). He opened a Madoff account in 1986. (*Id.* ¶ 2). He deposited $200,000 with Madoff and never withdrew any money. (*Id.* ¶¶ 2, 4, 14) ("No funds were ever withdrawn by me or my

{00019013 2}    3

wife from BLMIS . . . . indisputably . . . I never received the payments made to the various corporations shown as payees.") Over the life of his investment, he paid the Internal Revenue Service over approximately $900,000 on the capital gains that Madoff reported. (*Id.* ¶ 4). In 2009, he filed a SIPC claim with the Trustee for $2,625,435.95 representing the balance on his last statement from BLMIS. (*Id.* ¶ 6). He is still waiting for the Trustee to allow his claim for the $200,000 he invested (or according to the Trustee's experts, $586,585).

The Trustee continues to refuse to allow Blecker's claim on the pretext that Blecker had invested only $200,000 and had withdrawn, prior to 1998, $261,633.94. (*Id.* ¶ 7). All of the purported withdrawals to Blecker are in uneven amounts and are made out to third-party companies – not Blecker. (*See generally id.*) For example, one page of withdrawals shows transactions in 1984 and 1985 as being made out to third-party companies in the amounts of $5,654.50, $5,818.54, $11,085.00, $8,839.87, $10,403.43 (*Id.* ¶¶ 8-9) (listing all such odd-numbered transactions).

When Blecker demanded that the Trustee produce the front and back of the checks evidencing the alleged withdrawals, the Trustee claimed it was Blecker's burden to prove that he did not receive the checks and the Trustee had no obligation to produce them. (*See id.*); (*see also* ECF No. 12432 at 12) ("[I]t is the customer's burden to substantiate his claim under SIPA – not the other way around"). Blecker explained that he did not have bank records pre-dating 1998. (*See* Blecker Decl. ¶¶ 8-9). Ultimately, after litigation was instituted, the Trustee admitted that he did not have Madoff's cancelled checks predating 1998. When Blecker demanded that the Trustee produce letters from Blecker to Madoff requesting withdrawals in the 1980s and 1990s, the Trustee admitted that he has no such letters. The Trustee deposed Blecker and produced no document

from Blecker requesting that Madoff send checks to him. (*See generally* Deposition of Aaron Blecker, July 1, 2014, ECF No. 12324-1).

## LEGAL STANDARD

Leave of court is required to take the deposition of a deponent who is confined in prison. *See* Fed. R. Civ. P. 30(a)(1)(2)(B). Upon motion, the court "*must* grant leave to the extent consistent with Rule 26(b)(1) and (2)." Fed. R. Civ. P. 30(a)(2) (emphasis added). Federal Rule of Civil Procedure 26(b)(1) provides:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the burden or expenses of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). "'Relevance,' in turn, is 'construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'" *Barella v. Vill. of Freeport*, 296 F.R.D. 102, 105 (E.D.N.Y. 2013) (quoting *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351 (1978)).

Thus, a court "should grant leave to depose an incarcerated witness unless the objecting party shows that: (1) the deposition would be unreasonably cumulative or duplicative; (2) the party seeking the deposition has had ample opportunity to obtain the information sought; or (3) the burden or expense of the deposition outweighs its likely benefit." *See, e.g.*, *Williams ex rel. Williams v. Greenlee*, 210 F.R.D. 577, 578-79 (N.D. Tex. 2002).

## ARGUMENT

This Court should grant leave to depose Madoff in light of the obvious factual issues created by the Trustee's interpretation of tens of thousands of highly ambiguous journal entries. Although the Trustee has come up with one interpretation of the meaning of these journal entries,

{00019013 2}    5

which enriches SIPC at the Customers' expense, this interpretation is flatly contradicted by the sworn declarations of at least one Customer and of Madoff himself. Above all others, Madoff would be the most authoritative source in explaining the meaning of the entries.

I. **Factual disputes about the ambiguous journal entries necessitate Madoff's deposition**

Inquiry into disputed factual issues is plainly permitted – indeed, mandated – under the liberal scope of discovery afforded by Rule 26. Here, the Trustee takes the position that, even though he does not have requests from Customers, they be sent "profit withdrawals," and even though he has no cancelled checks proving that the Customers received "profit withdrawals," they nevertheless received them. Madoff's sworn testimony directly contradicts this interpretation because Madoff indicated that, as would be expected, he would not send a customer a withdrawal unless the withdrawal was requested by the customer in writing. (Madoff Decl. ¶ 2).

The Trustee's interpretation is also directly contradicted by Blecker, who has flatly stated on numerous occasions that he denies ever receiving the alleged profit withdrawals. (*See, e.g.*, Blecker Dep., ECF No. 12324-1 at 9:4-8) ("Unequivocally. Never received a dime. I never intended to withdraw. I always felt it was going to be my future investment forever, and it didn't turn out that way, unfortunately."); (*id.* at 11:9-14) ("I received no money. . . . All the money was in securities sold and remained in the bank account and Madoff handled it all. I never saw any of the funds."); (*id.* at 11:20-12:7) ("If I wanted to get money from Madoff . . . . I wouldn't have withdrawn a few dollars. I would have withdrawn substantial. All of those check were not to me. They were payments of securities that they purchased for my account."); (Blecker Decl., ECF No. 6761, ¶¶ 2, 4, 14) ("No funds were ever withdrawn by me or my wife from BLMIS . . . . indisputably . . . I never received the payments made to the various corporations shown as payees.")

{00019013 2}                                    6

Instead, the Trustee relies on his own interpretation of what the PW entries mean and asserts that the records of inflows and outflows are accurate even though the Trustee himself has repeatedly taken the position that Madoff's customer statements were totally fictitious, and even though his argument that the customer statements are riddled with fraud was accepted by the Second Circuit. *See Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff Inv. Sec. LLC),* 654 F.3d 229, 232 (2d Cir. 2013) (citing *In re Bernard L. Madoff Inv. Sec. LLC*, 424 B.R. 122, 130 (Bankr. S.D.N.Y. 2010)). Moreover, as incredible as it may seem, the Trustee, through Seanna Brown, asserts he has never discussed with any Madoff employees what the PW entries mean.

Madoff directed the work of employees and undoubtedly knows whether the Customers, like Blecker, who never requested withdrawal, even received a profit withdrawal. His deposition is appropriate to elucidate these issues.

## II. Madoff's position is actually more credible than the Trustee's

While the merits of respective factual positions are not necessarily at issue in this Motion, if Madoff's position is more credible than the Trustee's, then that would cast great doubt on the Trustee's interpretation and would suggest that Madoff should be deposed. This is exactly the case here: Madoff's explanation is far more credible than the Trustee's for several reasons.

First, it is implausible to believe that any investment advisor would send funds to a customer without specific instructions to do so. (*Accord* Madoff Decl. ¶ 2). In the 1980s and 1990s, there were no recorded phone lines; any investment advisor would have insisted upon a written request for a withdrawal. Thus, if the Customers had requested withdrawals, the Trustee would have the original letters requesting any such withdrawal.

<u>Second</u>, according to the Trustee, Madoff was operating a Ponzi scheme even in the 1980s. If the Trustee is correct, Madoff would have needed cash to pay redeeming customers. He certainly would not have sent cash to customers, like Blecker, who never asked for it.

<u>Third</u>, Madoff's interpretation is supported by Blecker's sworn testimony, in which he denied ever asking for withdrawals.

<u>Fourth</u>, whenever a "PW" entry appeared on Blecker's statements, there was an indication of a stock split of the company in question. For example, on Blecker's March 31, 1995 statement, there is a "PW" for "CHECK ALUMINUM" and a notation "ALUMINUM COMPANY OF AMERICA 2 FOR 1 STOCK SPLIT." (Reply Declaration of Helen Davis Chaitman in Further Support of Motion to Compel the Trustee to Allow Aaron Blecker's SIPC Claim, ECF No. 12629-8). Similarly, on Mr. Blecker's May 31, 1995 statement there is a "PW" for "CHECK HOME DEPOT" and, on the same page, there is a notation "HOME DEPOT INC SUB NT CONV." (*Id.*, ECF No. 12629-9). This certainly would suggest that Blecker had to pay a small amount of money to obtain the additional shares.

### III. The Trustee lacks evidence to establish withdrawals

The Trustee has scores of letters from customers who actually did ask for withdrawals. (*See* ECF No. 12628) (listing several examples). It is highly questionable, then, that, as the Trustee argues, certain Customers received checks even though they never requested them.

On numerous occasions, the Trustee has argued, often at length, that the burden of proving that the profit withdrawal transactions were not actually outflows from the Customers' accounts is on the Customers, not the Trustee. (*See, e.g.*, ECF No. 10661 at 22-26) (devoting nearly four pages of briefing to this point). It is certainly regrettable that the Trustee would adopt a position that enriches SIPC at the Customers' expense and is factually insupportable. However, since the

{00019013 2}    8

Trustee has taken such a position, then surely the Customers should be permitted to depose Madoff – the only person with personal knowledge concerning the entries.

### IV. Other courts have granted leave to depose Madoff

Several other courts have recognized a litigant's right to depose Mr. Madoff. *See, e.g., Anwar v. Fairfield Greenwich Limited*, No. 09-cv-00118, ECF No. 1090, (Order, S.D.N.Y. March 15, 2013) (granting motion for leave to depose Madoff); *In re Optimal U.S. Litigation*, No. l0-cv-04095, ECF No. 159 (Order, S.D.N.Y. Jul. 3, 2012) (Scheindlin, J.) (same); *Retirement Program of Employees of the Town of Fairfield v. Madoff*, No. FST-CV-095-0 11561-S, Document Nos. 311.86, 312.86 (Order, Conn. Super. Ct. Mar. 28, 2012) (same); *see also Retirement Program*, Document No. 330.86 (Order, Conn. Super. Ct. Apr. 12, 2012) (same with respect to Frank DiPascali, Jr.). This Court should do the same here, allowing the Customers to question Mr. Madoff concerning the "PW" entries.

### CONCLUSION

The Customers' motion to depose Bernard L. Madoff should be granted.

Dated: New York, New York
March 9, 2016

**CHAITMAN LLP**

By: /s/ *Helen Davis Chaitman*
Helen Davis Chaitman
Gregory M. Dexter
465 Park Avenue
New York, New York 10022
Phone & Fax: 888-759-1114
hchaitman@chaitmanllp.com
gdexter@chaitmanllp.com

*Attorneys for the Customers listed on Exhibit A to Notice of Motion*