**Baker & Hostetler LLP**

45 Rockefeller Plaza
New York, NY 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan, Esq.
Nicholas J. Cremona, Esq.
Edward J. Jacobs, Esq.
Karin S. Jenson, Esq.
Keith R. Murphy, Esq.

*Attorneys for Irving H. Picard, Trustee for the*
*Substantively Consolidated SIPA Liquidation of*
*Bernard L. Madoff Investment Securities LLC and*
*the Estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (SMB) |
| Plaintiff-Applicant, | SIPA LIQUIDATION |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and Bernard L. Madoff, | Adv. Pro. Nos.: 10-04292 (SMB) 10-04302 (SMB) 10-04321 (SMB) 10-04327 (SMB) |
| Plaintiff, | 10-04324 (SMB) 10-04328 (SMB) |
| v. | 10-04325 (SMB) |
| DEFENDANTS LISTED ON EXHIBIT A TO | 10-04314 (SMB) |

NOTICE OF MOTION,

|                | 10-04305 (SMB) |
|----------------|----------------|
|                | 10-04995 (SMB) |
| Defendants.    | 10-04898 (SMB) |

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS PURSUANT TO FED. R. CIV. P. 37(b), 41(b),
<u>AND CROSS-MOTION TO QUASH AND FOR A PROTECTIVE ORDER</u>**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................. 1

PROCEDURAL HISTORY ..................................................................................................... 4

ARGUMENT ..................................................................................................................... 15

Ten of the 11 Motions are Untimely ..................................................................................... 15

Five of the Motions are Defective Due to the Procedural Posture of Those Cases ...................... 16

Ten of the 11 Motions Fail to Allege Sufficient Facts to Warrant a Protective Order ................. 16

The Bank Records are Directly Relevant to Both the Trustee's Claims and the
Defendants' Affirmative Defenses ........................................................................................ 17

The Trustee is Entitled to Available Bank Records Even if They Implicate Unnamed
Potential Subsequent Transferees ........................................................................................ 21

The Defendants' Constitutional Right to Privacy is Not Implicated by the Subpoenas
and The Litigation Protective Order Moots Any Objections Based on Privacy or
Confidentiality Concerns .................................................................................................... 24

The Defendants are Not Entitled to Unilaterally Redact Discoverable Information ................... 26

CONCLUSION .................................................................................................................. 27

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Application of Chevron Corp.*,
736 F. Supp. 2d 773 (S.D.N.Y. 2010)......................................................................................22

*Arias-Zeballos v. Tan*,
2007 WL 210112 (S.D.N.Y. Jan. 25, 2007) ...........................................................................24

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
2006 WL 2642192 (S.D.N.Y. Sept. 13, 2006).........................................................................25

*Glatt v. Fox Searchlight Pictures, Inc.*,
2012 WL 2108220 (S.D.N.Y. June 11, 2012) .........................................................................25

*In re Glitnir Bankfi Hf.*,
2011 WL 3652764, (Bankr. S.D.N.Y. Aug. 19, 2011) ...........................................................25

*In re Global Crossing*,
385 B.R. 52 (Bankr. S.D.N.Y. 2008) ......................................................................................22

*Haber v. ASN 50th St., LLC*,
272 F.R.D. 377 (S.D.N.Y.) .....................................................................................................19

*Heller v. City of New York*,
No. 06 CV 2842, 2008 WL 2965474, (E.D.N.Y. Apr. 11, 2008)............................................22

*John Wiley & Sons, Inc. v. Book Dog Books, LLC*,
298 F.R.D. 184 (S.D.N.Y. 2014) .............................................................................................26

*Kirschner v. Klemons*,
2005 WL 1214330 (S.D.N.Y. May 19, 2005) .........................................................................20

*Koch v. Greenberg*,
2009 WL 2143634 (S.D.N.Y. 2009)........................................................................................20

*In re Livecchi*,
2014 WL 6668886 (W.D.N.Y. Nov. 20, 2014) .......................................................................18

*McVane v. Federal Deposit Ins. Corp.*,
44 F.3d 1136 (2d Cir. 1995).....................................................................................................24

*In re Nunez*,
2000 WL 655983 (E.D.N.Y. Mar. 17, 2000)...........................................................................17

*Olin Corp. v. Consol. Aluminum Corp.*,
    5 F.3d 10 (2d Cir.1993)..................................................................................16

*In re Penthouse Exec. Club Compensation Litig.*,
    2012 WL 1511772 (Bankr. S.D.N.Y. Apr. 30, 2012)............................................25

*Picard v. Chais*,
    445 B.R. 206 (Bankr. S.D.N.Y. 2011) ...............................................................17

*In re State Street Bank and Trust Co. Fixed Income Funds Inv. Litig.*,
    2009 WL 1026013 (S.D.N.Y. Apr. 8, 2009)..........................................................26

*Summers v. Weiderhold*,
    1998 WL 160830 (N.D.N.Y. Apr. 3, 1998) .........................................................16

*U.S. Nat'l Bank of Or. v. Indep. Ins. Agents of Am.*,
    508 U.S. 439 (1993)......................................................................................17

*U.S. v. Int'l Bus. Machines Corp.*,
    70 F.R.D. 700 (S.D.N.Y. 1976) .......................................................................15

*Warth v. Seldin*,
    422 U.S. 490 (1975)......................................................................................17

**Statutes**

15 U.S.C. §§ 78aaa ...........................................................................................1

**Rules**

Fed. R. Bankr. P. 7026(b)(1)................................................................................17

Fed. R. Civ. P. 26..............................................................................................15

Fed. R. Civ. P. 26(b)(1)..................................................................................17, 23

Fed. R. Civ. P. 37(b) ..........................................................................................1

Fed. R. Civ. P. 41(b) ..........................................................................................1

Fed. R. Civ. P. 45..............................................................................................15

Fed. R. Civ. P. 45(a)(4).......................................................................................5

Irving H. Picard, as trustee (the "Trustee") for the substantively consolidated liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS"), under the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa *et seq.* ("SIPA"), and the estate of Bernard L. Madoff ("Madoff"), by and through his undersigned counsel, hereby submits this Memorandum of Law in Opposition to Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 37(b), 41(b), and Cross-Motion to Quash and for a Protective Order (the "Motion(s).")

This Opposition addresses the identical Motions filed in 11 cases in which Defendants are represented by Helen Davis Chaitman: (i) *Picard v. Saren-Lawrence*, (ii) *Picard v. Alpern*, (iii) *Picard v. Barbanel*, (iv)(a) *Picard v. Joan Roman* and (iv)(b) *Picard v. Robert Roman* (collectively, "Romans"), (v) *Picard v. Roth*, (vi)(a) *Picard v. Shapiro Nominee*, (vi)(b) *Picard v. Shapiro Nominee 2*, (vi)(c) *Picard v. Shapiro Nominee 3* and (vi)(d) *Picard v. Shapiro Nominee 4* (collectively, the "Shapiro Nominee Cases"), and (vii)*Picard v. Trust U/Art Fourth O/W/O Israel Wilenitz, et al.* ("Wilenitz").

These are the same cases in which the Motions for Temporary Restraining Order and Stay of Enforcement of Subpoenas were filed on March 4, 2016 and argued on March 9, 2016.

## PRELIMINARY STATEMENT

The factual issues underlying the Trustee's avoidance actions are simple and straightforward. At their core, these cases concern whether or not a defendant received financial transfers from BLMIS above and beyond that defendant's principal investment. In these "strict liability" cases, there is no discovery more basic than the defendant's bank records, which provide additional confirmation of defendants' receipt of those transfers. The discovery the Trustee seeks through bank subpoenas is particularly appropriate in these 11 cases because,

despite numerous opportunities to stipulate to the underlying factual issues, Defendants dispute

the transfers and have raised affirmative defenses that implicate additional financial activities.

More recently, certain Defendants have, in both their discovery responses and requests to the

Trustee, called into question the accuracy of BLMIS's books and records.  This makes the bank

records relevant for the additional reason that, if Defendants intend to challenge the authenticity

and admissibility of BLMIS records, the Trustee may need corroborating evidence of their

accuracy.

   The Motions should be denied for the following reasons:

- With the exception of the Motion in *Wilenitz,* they are untimely in that they were filed
  after the time for compliance set forth in the subpoenas.  **Cases where the Motion is
  untimely are reflected in the first column of the following chart.**

- In 10 of the 11 cases, the Motions are in effect a request for advisory opinions because
  Defendants did not attempt to make any specific factual showing of why a protective
  order is warranted in any case other than in *Saren-Lawrence.*  The facts about Defendant
  Helene Saren-Lawrence's objection to the Trustee's subpoena to Valley National Bank
  were simply cut and pasted into the Motions in the 10 other cases.  Thus, in those 10
  cases, the Trustee has no information about why Defendants are seeking protection, other
  than presumably for generic concepts like privacy.  **Cases where the Motion is a
  request for an advisory opinion are reflected in the second column of the following
  chart.**

- They are wrought with other fatal procedural defects.  For example, in the four Shapiro
  Nominee Cases, the initial transferee, who is the same in all four cases, is deceased and
  the parties are in the process of substituting in a proper party in place of the decedent.  In
  *Roth*, defense counsel has moved to withdraw from the case because her client "has not
  responded to any of [defense counsel's] emails or phone calls."[1]  Given this statement,
  there is concern that defense counsel does not have the authority to bring the Motion on
  behalf of the *Roth* Defendant.  **Cases that have no active defendant are reflected in
  the third column of the following chart.**

---

[1] *Roth* Dkt. No. 57-1, Declaration of Helen Davis Chaitman in Support of Application to Withdraw as Counsel, at
¶ 7.

The following reflects the cases addressed above:

| Adversary Proceeding Name | Untimely (filed after subpoena compliance date) | Request for Advisory Opinion (no facts alleged) | No Active Defendant (deceased or motion to withdraw pending) |
|---|---|---|---|
| *Saren-Lawrence* | X | | |
| *Alpern* | X | X | |
| *Barbanel* | X | X | |
| *Joan Roman* | X | X | |
| *Robert Roman* | X | X | |
| *Roth* | X | X | X |
| *Shapiro Nominee* | X | X | X |
| *Shapiro Nominee 2* | X | X | X |
| *Shapiro Nominee 3* | X | X | X |
| *Shapiro Nominee 4* | X | X | X |
| *Wilenitz* | | X | |

In addition, there a number of other reasons to deny the Motions:

- The bank records are relevant. Defendants in all 11 cases raise the affirmative defense of setoff, which implicates bank records. And, in all but the *Shapiro Nominee* cases and *Roth*, where the Trustee's Requests for Admission ("RFAs") are on hold due the procedural defects described above, Defendants have either denied or made qualified admissions to the requests to admit the facts of the transfers.

- The Trustee is not on a "fishing expedition" for new evidence to amend complaints against subsequent transferees. As a threshold matter, Ms. Chaitman has not established that she represents these unnamed subsequent transferees or that they have standing to challenge the subpoenas on this basis. Further, as described below, the bank records are relevant and the Trustee is entitled to discovery even when it implicates unnamed subsequent transferees, because their identity is not confidential.

While the Trustee understands that anyone's financial records raise certain sensitivities regarding privacy, those concerns are adequately addressed by the protective order governing these cases that has been in place since 2011. Regardless, the critical inquiry is the relevance of the documents, which cannot be disputed here. The Trustee is entitled to a complete set of unredacted bank records for the subpoenaed period, as this Court has previously authorized in *Picard v. Cohmad*.

Accordingly, the Trustee respectfully requests that the Court deny the Motions and enter an order in the 11 cases in substantially the form that was entered in *Cohmad*. (*See Picard v. Cohmad Secs. Corp., et al.*, Adv. Pro. No. 09-01305 (SMB), Dkt. No. 347.)

## PROCEDURAL HISTORY APPLICABLE TO ALL 11 CASES

The Trustee filed the complaints against Defendants in these 11 cases in 2010 to recover fraudulent transfers made to them by BLMIS. In each of the 11 cases, Defendants deny virtually all of the Trustee's substantive allegations—including the facts regarding withdrawals from and deposits into the BLMIS account at issue, the calculations relied on by the Trustee, and how the funds withdrawn from the BLMIS account were used—and assert more than 45 affirmative defenses. These include not only a defense of setoff for taxes paid on BLMIS earnings, but also a defense against liability for a defendant who was required to pay any or all of the transfers to *any third party*. Those third parties are not identified in the answers. These affirmative defenses specifically state: [2]

> **Affirmative Defense #16**: Defendants are "entitled to a setoff, recoupment, and/or equitable adjustment because each year Defendant was required to pay taxes on the fictitious profits reported on, among other things, IRS Form 1099 and other information reported by BLMIS or Madoff to the Internal Revenue Service, state and/or local governmental taxing authorities."

---

[2] *See* Affirmative Defenses #16, 42 and 46 in each of the following: *Alpern* Dkt. No. 72; *Barbanel* Dkt. No. 49; *Joan Roman* Dkt. No. 52; *Robert Roman* Dkt. No. 51; *Roth* Dkt. No. 46; *Shapiro* Dkt. No. 43; and *Wilenitz* Dkt. No. 40. *See* Affirmative Defense #16, *Saren-Lawrence* Dkt. No. 30.

**Affirmative Defense #42:** "There can be no liability of any recipient of funds who, as a matter of law or contract, was required to transfer any portion of the funds to a third party."

**Affirmative Defense #46:** "The Trustee's claims are barred in whole or part for failure to properly credit Defendants with all of Defendants' deposits." [3]

The dispute at bar began nearly six months ago, on October 23, 2015, when the Trustee served RFAs regarding the transfers and Ms. Saren-Lawrence responded with blanket denials. (*See Saren-Lawrence* Dkt. No. 42, Ex. D.)  In early December 2015, the Trustee sent Defendant a proposed factual stipulation and declaration with a cover letter that specifically stated:

> Please notify us in no later than two weeks if Defendant will execute the Declaration.  <u>If Defendant executes the Declaration, we will not serve additional Rule 45 subpoenas on financial institutions related to relevant accounts.</u>[4]

Ms. Saren-Lawrence did not respond to the proposed fact stipulation and declaration.

Subsequently, on January 6, 2016, the Trustee served a subpoena on Valley National Bank for records related to Ms. Saren-Lawrence's account for the period of December 1, 1992 through December 11, 2008.  The subpoena's return date was January 26, 2016.  *See Saren-Lawrence* Dkt. No. 50, Ex. A.  After receiving notice of the subpoena, Defendant requested a conference with the Court, noting that:

> [the Defendant] is not in a position to confirm the transfers between herself and Madoff for the life of her account because she does not have the records and, clearly, she cannot rely upon Madoff's records.

*Saren-Lawrence* Dkt. No. 40.

In January, in accordance with Federal Rule of Civil Procedure 45(a)(4), the Trustee gave Ms. Chaitman notice of intent to serve subpoenas in nine other cases at issue in these Motions,

---

[3] *See* Affirmative Defenses in each of the following: *Alpern* Dkt. No. 72; *Barbanel* Dkt. No. 49; *Joan Roman* Dkt. No. 52; *Robert Roman* Dkt. No. 51; *Roth* Dkt. No. 46; *Shapiro* Dkt. No. 43, *Shapiro Nominee 2* Dkt. No. 45; *Shapiro Nominee 3* Dkt. No. 46; *Shapiro Nominee 4* Dkt. No. 47, and *Wilenitz* Dkt. No. 40.  The *Saren-Lawrence* answer contains only Affirmative Defense No. 16.
[4] Letter from Mr. Hunt to Ms. Chaitman, Dec. 4, 2015, attached as Ex. A (emphasis added.)

and then served those subpoenas on January 26. [5]  On January 27, the parties appeared for the

*Saren-Lawrence* chambers conference, at which a number of events occurred, including:

- the Court ordered Defendant Saren-Lawrence to serve amended responses to the Trustee's RFAs, as well as responses to additional written discovery;
- the Court authorized Defendant Saren-Lawrence to file a motion for a protective order to prevent the bank from producing to the Trustee;
- the Trustee indicated that he would not pursue bank productions until after amended responses to RFAs were received.

The procedural evolution thereafter is the subject of several letters, transcripts, and

motions which the Trustee will not repeat here.  However, a few points are worth noting:

- the Court stated during the February 11 hearing that subpoenaed parties must, in the absence of a protective order, produce documents in response to Rule 45 subpoenas.  (*See* Disc. Conf. Hr'g Tr., Feb. 11, 2016, 14:2-15:16.)
- the Court stated on a number of occasions that the setoff defenses made the bank records relevant; [6]
- the Court declined to stay compliance with the subpoenas while Defendants' temporary restraining order was pending; (Order to Show Cause, Mar. 4, Dkt. No. 79)
- despite Ms. Chaitman's false accusations to the contrary, **the Trustee did not serve any subpoenas in the 11 cases** between the January 27 chambers conference and the February 11 conference in which the Court instructed the Trustee to proceed with the subpoenas.  (*See* Disc. Conf. Hr'g Tr., Feb. 11, 2016, 14:2-13.)

Several banks have already made document productions to the Trustee in response to the

subpoenas.  Specifically, Valley National Bank made a partial production consisting of a

redacted bank statement and copies of cancelled checks on January 25 in the *Saren-Lawrence*

case.  Citibank produced documents on February 25 in the *Joan Roman* and *Robert Roman* cases

and FirstBank produced documents to the Trustee on February 19 in the *Alpern* case.  Each of

---

[5] The only case of the 11 where the subpoenas were not served on January 26 is *Wilenitz,* which was served on February 12.

[6] Defense counsel raised with the Court at the February 11 hearing the possibility that her affirmative defense of setoff for taxes paid may not apply to taxes paid after 2003.  The Court responded, "as long as the defenses are out there, they're [the Trustee's counsel] entitled to take discovery" and further advised defense counsel "to withdraw – make clear and withdraw the claims for the tentative taxes applied after 2003 or whatever the date is."  *See* Disc. Conf. Hr'g Tr., Feb. 11, 2016, 9:10-10:7.  As of March 9, defense counsel still has not withdrawn or clarified any of her affirmative defenses and therefore, they remain at issue.

these productions occurred before the Motions were filed, although the Trustee has not reviewed the documents from Citibank or FirstBank, except to the extent necessary to determine that the documents relate to these Defendants, and will not review them until after the Motions are resolved.  More recently, certain of the Defendants here have called into question the accuracy of BLMIS's books and records in their discovery requests to the Trustee,[7] demanding that the Trustee produce all documents that confirm that BLMIS records are not "riddled with fraud." Ms. Chaitman has advised that those requests will be served upon the Trustee in each of her approximately 100 cases.  Similarly, multiple Defendants have responded to the Trustee's RFAs by stating that, "Responding Party did not retain contemporaneous records of deposits and withdrawals into and out of the Account and, since, as the Trustee's own experts have opined, Madoff's statements are permeated with fraud, Responding Party has no way in which to verify the transactions.").[8]

Defendants in six of the 11 cases at issue (all but the *Shapiro Nominee* and *Roth* cases) have served their responses to the Trustee's RFAs.[9]  As described more completely below, the responses provided, at best, a qualified admission by also averring that BLMIS records were riddled with errors, and averred that certain transfers made were for the sole benefit of taxing authorities.

The specific details with respect to each of the 11 cases are as follows:

---

[7] *See* Wilenitz Defendants' First Set of Document Demands and Interrogatories to the Trustee, attached as Ex. B (asking Trustee to list all "factual error[s] asserted by any . . . customer in their statements and produce all documents relating to such error," and requesting all reports and documents on which the Trustee bases his contention that the "customer statements were not 'riddled with fraud.'")

[8] *See* Wilenitz Trust Defendants' Responses and Objections to the Trustee's Requests for Admission, Mar. 3, 2016, attached as Ex. C; Berezin's Responses and Objections to the Trustee's Requests for Admission, Mar. 3, 2016, attached as Ex. D.

[9] Defendants' Responses and Objections to the Trustee's Requests for Admission, *Picard v. Barbanel*, Adv. Pro. No. 10-04321 (SMB), Feb. 25, 2016, attached as Ex. E.  Nearly identical responses to the Trustee's RFAs were also served in *Picard v. Alpern*, *Picard v. Joan Roman*, and *Picard v. Robert Roman*, attached as Exs. F, G, and H, respectively.

### *1.  Alpern*

**Summary:**  In addition to the denials in the Answer and the affirmative defenses described above, Defendants have responded to requests for admission in a manner, described more fully below, that does not resolve the facts of the transfers in the case, all of which means the bank records remain relevant.  Of the 11 cases, *Alpern* is the only case where a subsequent transferee was dismissed as a result of the Memorandum Decision Regarding Omnibus Motions to Dismiss.  *See* Dkt. No. 71.

**Number of subpoenas at issue:**  6[10]

**Date served:** January 26

**RFAs served:** February 10

**RFA responses served:** February 22[11]

> **Substance of RFA responses:**  With respect to the withdrawals from the BLMIS accounts, Defendants denied nearly every RFA.  And, although in response to RFA No. 1 Defendants claimed to have records of the transactions involving certain BLMIS accounts "for the period from 2006 through 2008," in other responses Defendants denied withdrawals within that time period because defendants purported to "have no basis to admit this allegation."  *See, e.g., id.* at ¶¶ 14–36, 39-57.  When asked to admit that certain specific transfers were made to or for the benefit of the Defendant Trust, Defendants responded, "Denied.  To the extent that federal and state taxes were paid on the reported gains in the account, the taxing authorities were the sole beneficiaries."  *See, e.g., id.* at ¶¶ 75-76, 80-81, 86-87.

**Compliance date on the subpoenas:** February 25

---

[10] Attached as Ex. I.
[11] *See* Ex. F.

**Date Motion for Protective Order filed:** February 26

**Status:**  FirstBank produced documents to the Trustee on February 19.  PNC Bank indicated that it could not locate any responsive documents.  JPMorgan Chase sent the Trustee its standard objections and agreed to preserve responsive documents until it received further instruction.  The remaining subpoenaed banks, Capital One Bank, HSBC USA, and Wells Fargo Bank, sought, and were granted, extensions of time to respond to the subpoenas.  The Trustee has not yet reviewed the documents received from FirstBank, except to the extent necessary to confirm that they relate to Defendants, and sent a copy of the documents to Defendants' counsel on March 1.

### *2.  Barbanel*

**Summary:**  In addition to the denials in the Answer and the affirmative defenses described above, Defendants have responded to RFAs in a manner, described more fully below, that does not resolve the facts of the transfers in the case, all of which means the bank records remain relevant.

**Number subpoenas at issue:**  2 [12]

**Date served:** January 26

**RFAs served:** February 12

**RFA responses served:** February 25 [13]

**Substance of RFA responses:**  Defendants denied virtually all of the Trustee's RFAs regarding transactions involving the BLMIS accounts at issue. With respect to the withdrawals from the BLMIS accounts, Defendants denied each RFA on the universal basis that, "To the extent that federal and state taxes were paid, the taxing authorities were the sole beneficiaries."  *See id.* at ¶¶ 14-27, 29-31, 33-36.  And even though

[12] Attached as Ex. J.
[13] *See* Ex. E.

Defendants claimed to have records of the transactions involving their deposits into the BLMIS account "from March 4, 1999 on," (*id.* at ¶ 1), Defendants nevertheless took the position that they did not have any records of withdrawals for any time period.

**Compliance date on the subpoenas:** February 25

**Date Motion for Protective Order filed:** February 26

**Status:**  Both banks at issue in *Barbanel*, Bank of America and HSBC, sought, and were granted, extensions of time to respond to the subpoenas until after the Motions are resolved on March 23.

### *3.  Roman[14]*

**Summary:**  In addition to the denials in the Answer and the affirmative defenses described above, Defendants have responded to the RFAs in a manner, described more fully below, that does not resolve the facts of the transfers in the case, all of which means the bank records remain relevant.

**Number of subpoenas at issue:**  1[15]

**Date served:** January 26

**RFAs served:** February 12

**RFA responses served:** February 24 [16]

**Substance of RFA responses:**  With respect to the withdrawals from the BLMIS accounts, Defendants denied each RFA on the universal basis that "To the extent that federal and state taxes were paid, the taxing authorities were the sole beneficiaries."  *See, e.g., id.* at ¶¶ 6, 14-27, 29-31, 33-37.  And even though Defendants agreed that "[d]eposits and withdrawals from December 1, 2000 through September 22, 2008 are

---

[14] Separate complaints were filed against Robert Roman (Adv. Pro. No. 10-04292) and Joan Roman (Adv. Pro. No. 10-04302).  But because their answers and discovery responses are nearly identical, and because subpoenas were served on the same bank in both proceedings, this section refers only to the docket in the Robert Roman proceeding.

[15] Attached as Ex. K.

[16] Attached as Exs. G, H.

accurate," they nevertheless denied withdrawals made within that timeframe. *See id.* at ¶¶ 15-16, 21-22.

**Compliance date on the subpoenas:** February 25

**Date Motion for Protective Order filed:** February 26

**Status:** Citibank produced documents in response to the Trustee's subpoena on February 24. The Trustee has not yet reviewed the documents, except to verify that the documents relate to Defendants, and sent a copy of them to Defendants' counsel on March 1.

## *4. Roth*

**Summary:**  On February 23, Defendants' counsel filed an application to withdraw as defense counsel.[17] In support, Ms. Chaitman avers that she has "found it impossible to communicate with Defendant Barbara Roth, who has not responded to any of my emails or phone calls." [18]  According to Ms. Chaitman, "[u]nder the circumstances, it is impossible for me to continue to represent the Defendants in this action."[19]  Notwithstanding these "impossibilities," and apparently without any communication with her client, Ms. Chaitman has continued to file motions on Ms. Roth's behalf, including the instant Motion and a Motion for Temporary Restraining Order and Stay of Enforcement of Subpoenas. [20]

In conjunction with her request to withdraw as counsel, Ms. Chaitman requested an extension of time to respond to the Trustee's RFAs, presently due March 14.  The Trustee agreed not to oppose Ms. Chaitman's application to withdraw "provided that you withdraw the Motion to Dismiss and Motion to Quash and for Protective Order filed in this case."[21] The Trustee stated further, "provided we have an agreement, the Trustee is willing to grant your request for an

---

[17] Dkt. No. 57.
[18] Dkt. No. 57-1, Declaration of Helen Davis Chaitman in Support of Application to Withdraw as Counsel, at ¶ 7.
[19] *Id.* at ¶ 8.
[20] *See* Dkt. Nos. 58-60, 63-66.
[21] Dkt. Nos. 58-60.

extension of time for Barbara Roth to respond to the Trustee's requests for admissions," and asked how much additional time Ms. Roth required.  Ms. Chaitman ignored the Trustee's condition that she withdraw the Motion and instead asked the Trustee "wait to hear from [Ms. Roth's] new counsel."  The Trustee requested that Ms. Chaitman clarify her intention as to withdrawing this Motion as it concerns the Roth Defendants, and she stated that she could not. Nevertheless, the Trustee has agreed to extend the deadline for Defendant Roth to respond to the RFAs.

**Number of subpoenas at issue:**  2 [22]

**Date served:** January 26

**RFAs served:** February 12

**Compliance date on the subpoenas:** February 25

**Date Motion for Protective Order filed:** February 26

**Status:**  Bank of America requested, and the Trustee granted, an extension of time to produce responsive documents until March 14.  The deadline is being further extended until after the March 23 hearing.   JP Morgan Chase agreed to preserve responsive documents pending further instruction.

### 5.  *Saren-Lawrence*

**Summary**:  In addition to the denials in the Amended Answer and the affirmative defenses, as well as the facts specific to *Saren-Lawrence* as described above, Defendant has responded to the Trustee's RFAs in a manner, described more fully below, that does not resolve the facts of the transfers in the case, all of which means the bank records remain relevant.

**Number of subpoenas at issue:**  1 [23]

---

[22] Attached as Ex. L.
[23] *See Saren-Lawrence* Dkt. No. 50, Ex. A.

**Date served:** January 6

**RFAs served:** October 23, 2015

**RFA responses served:** December 10, 2015, February 3 (amended responses) [24]

> **Substance of RFA responses:** With respect to the withdrawals from the BLMIS accounts, in the amended responses to RFAs, Defendant provided qualified denials stating, "Admitted to the extent that Exhibit B covers the period from January 1, 2001 through December 11, 2008, and is consistent with the records produced by Friedman LLP; otherwise denied because Responding Party has no basis on which to admit and she leaves the Trustee to his proofs." Amended Responses, at ¶¶ 2-5, 10-11. In response to other requests, Defendant provided complete denials by stating, "Denied because Responding Party has no basis on which to admit and she leaves the Trustee to his proofs. *See, e.g., id.* at ¶ 6.

**Compliance date on the subpoenas:** January 27

**Date Motion for Protective Order filed:** February 25

**Status:** Valley National Bank made a partial production consisting of a redacted bank statement and copies of cancelled checks on January 25. Valley National Bank is the subject of a motion to compel filed by the Trustee (Dkt. Nos. 57-58) for a complete, unredacted production made directly from the bank to the Trustee. Compliance with this subpoena has been stayed pending the outcome of this Motion and the Trustee's motion to compel, both of which are scheduled for hearing on March 23.

---

[24] *See Saren-Lawrence* Dkt. No. 51-2.

## *6-10.  Shapiro Nominees* [25]

**Summary:**  With respect to the four Shapiro Nominee cases, the initial transferee, David Shapiro, has died.  There are no subsequent transferee Defendants in the cases. The Trustee is in the process of substituting in the proper party in place of the decedent. Thus, no RFAs have been served in these cases.

**Number of subpoenas at issue:**  3 [26]

**Date served:** January 26

**Compliance date on the subpoenas:** February 25

**Date Motion for Protective Order filed:** February 26

**Status:**  Wells Fargo and Bank of America requested, and the Trustee granted, extensions of time to produce responsive documents until March 10 and March 14, respectively. The deadline is being further extended until after the March 23 hearing.   JP Morgan Chase agreed to preserve responsive documents pending further instruction.

## *11.  Wilenitz*

**Summary:**  Of the 11 cases, this is the sole case where the Motion for Protective Order was filed before the compliance date for the subpoena.  However, in addition to the denials in the Answer and the affirmative defenses described above, Defendants have responded to RFAs in a manner, described more fully below, that does not resolve the facts of the transfers in the case, all of which means the bank records remain relevant.

**Number of subpoenas at issue:**  1 [27]

**Date served:** February 12

---

[25] There are four separate cases involving Shapiro Nominee accounts: *David Shapiro Nominee* (Adv. Pro. No. 10-04328); *David Shapiro Nominee 2* (Adv. Pro. No. 10-04325); *David Shapiro Nominee 3* (Adv. Pro. No. 10-04314); and *David Shapiro Nominee 4* (Adv. Pro. No. 10-04305).  Because the answers and subpoenaed banks are nearly identical in all cases, this section refers only to the docket for the initial Shapiro Nominee, Adv. Pro. No. 10-04328.
[26] Attached as Ex. M.
[27] Attached as Ex. N.

**Compliance date on the subpoena:** March 25

**RFAs served:** February 8

**RFA responses served:** March 3 [28]

      **Substance of RFA responses:** Defendants qualified all of the Trustee's RFAs pertaining to withdrawals with the following language: "Responding Party did not retain contemporaneous records of deposits and withdrawals into and out of the Account and, since, as the Trustee's own experts have opined, Madoff's statements are permeated with fraud, Responding Party has no way in which to verify the transactions." [29]   Although Defendants admitted to withdrawing a small fraction of the transfers alleged, these admissions are yet another example of equivocal responses.

**Date Motion for Protective Order filed:** February 26

**Status:**   The return date on the subpoena to Citibank is not until March 25, and thus, no documents have been produced at this time.

## ARGUMENT

      The Motions should be denied because, in addition to be being untimely, there is no valid basis upon which the discovery should be denied.  The subpoenaed records are plainly discoverable pursuant to Federal Rules of Civil Procedure 26 and 45 and the relevant Orders of this Court.

## I.      TEN OF THE 11 MOTIONS ARE UNTIMELY

      Defendants failed to file the Motions consistent with Rule 45's express timeliness requirement.  Under Rule 45(d)(A), a motion to quash or modify a subpoena is untimely if the movant fails to file the motion "before the time set for compliance in the subpoena."  *U.S. v. Int'l*

---

[28] *See* Exs. C, D.
[29] *See id.*

*Bus. Machines Corp.*, 70 F.R.D. 700, 702 (S.D.N.Y. 1976).  This Court observed this

requirement in the March 1 hearing in *Saren-Lawrence:* "If you made the motions returnable

after the compliance date, they're just too late, aren't they."  (*See* Disc. Conf. Hr'g Tr., Mar. 1,

20:20-22.)  As reflected in the cases summaries above, with the exception of the subpoena in

*Wilenitz*, the Motions were all filed after the compliance date set on the subpoenas, and therefore

they are untimely.  This fact alone warrants the denial of the Motions with respect to all cases

except *Wilenitz*.

**II.      FIVE OF THE MOTIONS ARE DEFECTIVE DUE TO THE PROCEDURAL
         POSTURE OF THOSE CASES**

In the Shapiro Nominee cases, the Defendant has died.  Thus, the case cannot continue

until the estate is substituted.  *Summers v. Weiderhold*, No. 96-CV-1291 (RSP/GJD), 1998 WL

160830, at *3 (N.D.N.Y. Apr. 3, 1998) ("the case may proceed against a representative of the

deceased party if proper substitution is achieved".)  In the *Roth* case, Ms. Chaitman has moved to

withdraw as counsel and she admits in her supporting declaration that she has not had contact

with her client.  The Motions in these five cases should be denied for these procedural defects.

**III.     TEN OF THE 11 MOTIONS MAIL TO ALLEGE SUFFICIENT FACTS TO
         WARRANT A PROTECTIVE ORDER**

The facts supporting the Motion for a protective order from *Saren-Lawrence* have been

cut and pasted into the other 10 cases.  The Defendants have failed to make a particularized

showing of why a protective order is warranted in those 10 cases.  The Trustee is entitled to

know the legal basis--other than generalized assertions of privacy that are resolved by means of

the June 6, 2011 Litigation Protective Order in place – that Defendants seek the order.  This

failure to make an adequate factual is tantamount to Ms. Chaitman seeking an advisory opinion

that the subpoenas should be quashed — which is categorically barred by Article III of the U.S.

Constitution.  U.S. Const. Art. III, § 2, cl. 1.  *See Olin Corp. v. Consol. Aluminum Corp.*, 5 F.3d

10, 17 (2d Cir.1993). "A federal court may only resolve actual cases or controversies and lacks

the power to render advisory opinions on hypothetical or academic disputes." *U.S. Nat'l Bank of

Or. v. Indep. Ins. Agents of Am.*, 508 U.S. 439, 446 (1993). The moving party has to have

"suffered some threatened or actual injury resulting from the putatively illegal action," that

requires the federal court's adjudication. *Warth v. Seldin*, 422 U.S. 490, 499 (1975). *See also In

re Nunez*, No. 98-CV-7077 (CBA), 2000 WL 655983, at *6 (E.D.N.Y. Mar. 17, 2000) (vacating

bankruptcy court decision as an improper advisory opinion that was based on "an inadequate

factual record").

The Motions in all but *Saren-Lawrence* should be dismissed for this reason.

## IV.    THE BANK RECORDS ARE DIRECTLY RELEVANT TO BOTH THE TRUSTEE'S CLAIMS AND THE DEFENDANTS' AFFIRMATIVE DEFENSES

The Motions should further be denied on the merits. The scope of discovery is set forth

in Rule 26(b)(1) of the Federal Rules of Civil Procedure, made applicable to this adversary

proceeding through Federal Rule of Bankruptcy Procedure 7026(b)(1). That Rule states, unless

otherwise limited by court order:

> Parties may obtain discovery regarding any nonprivileged matter
> that is relevant to any party's claim or defense and proportional to
> the needs of the case, considering the importance of the issues at
> stake in the action, the amount in controversy, the parties' relative
> access to relevant information, the parties' resources, the
> importance of the discovery in resolving the issues, and whether
> the burden or expense of the proposed discovery outweighs its
> likely benefit. Information within this scope of discovery need not
> be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

Courts have recognized that a trustee in an avoidance action has a particular need for

discovery into the specifics of the transfers at issue. *See Picard v. Chais*, 445 B.R. 206, 236

(Bankr. S.D.N.Y. 2011) (stating that the Trustee "is an outsider to these transactions and will

need discovery to identify the specific [transfers] . . . by date, amount and the manner in which

they were effected"); *In re Livecchi*, Adv. Pro. No. 11-02027, 2014 WL 6668886, at *4, 12

(W.D.N.Y. Nov. 20, 2014) (noting that the bankruptcy trustee evidenced transfers to defendants

through bank records obtained by issuing third-party subpoenas).  Indeed, this Court has already

ruled that a defendant's unredacted bank records are discoverable.  *See Cohmad Secs. Corp.*,

Dkt. No. 349 (ordering unredacted documents produced to the Trustee under a promise of

confidentiality).  Accordingly, there can be no doubt that the bank records are, as a preliminary

matter, relevant to the Trustee's claims.

      Nor are the bank records cumulative or duplicative of any discovery the Trustee has

already obtained.  To the contrary, in six of the cases (all but *Roth* and the *Shapiro Nominee*

cases), the bank records are relevant precisely because Defendants have neither provided

unqualified admissions to the transfers at issue nor withdrawn the affirmative defenses that

directly implicate the bank records.  As this Court has recognized in *Saren-Lawrence,* Ms. Saren-

Lawrence's operative pleadings and amended discovery responses reflect that she continues to

dispute the dates and amounts of the transfers that she received from BLMIS.  *See* Dkt. Nos. 30,

51, Ex. B.  Defendant's claim that she does not dispute the Trustee's allegations, and that the

subpoenas are therefore duplicative of her purported admissions, is simply false.

      For example, in her amended response to the Trustee's request for admission that, "over

the life of the Account, $1,608,000 was withdrawn from the Account," Ms. Saren-Lawrence

stands on a denial because, in her words, she "has no basis on which to admit and she leaves the

Trustee to his proofs."  *See id.* at ¶ 6.  Furthermore, in those instances where Defendant "admits"

the Trustee's requests, she does so only to the extent the response is consistent with certain

records produced by her accountant (*see id.* at ¶¶ 2-5, 10-11), and often includes a statement

immediately following that notes the various ways in which her accountant's records conflict

with BLMIS records.  *See id.* at ¶¶ 2, 4.

The inconsistencies and vagaries permeate the responses to RFAs in those six cases

where, as noted above, Defendants claim they have no transfer-related documents of their

own[30] and assert that the Trustee can prove the transfers through BLMIS records on the one

hand, and that they cannot rely on BLMIS records on the other.  *Compare* Chaitman Decl., ¶ 11,

Feb. 8, 2016, *Saren-Lawrence*, Dkt. No. 48 ("[T]he Trustee can prove every transfer to and from

Madoff by every defendant through his own records") *with* Dkt. No. 41 ("The defendant is not in

a position to confirm the transfers between herself and Madoff for the life of her account because

she does not have the records and, clearly, she cannot rely upon Madoff's records.").  These

positions are irreconcilable.  Defendant cannot insist that the Trustee has adequate records and

simultaneously dismiss those same records as unreliable.  In each of the 11 cases, Defendants

have been provided with all of the records relevant to their account, including customer

statements and BLMIS bank records.  If Defendants do not dispute the accuracy of the transfers

reflected therein, they can and should simply admit the transfers.

In support of their position that the bank records are duplicative and cumulative of her

prior discovery responses, Defendant relies on cases where the discovery sought was actually

irrelevant and/or duplicative of other requests—neither of which is the case here.  *See Haber v.

ASN 50th St., LLC*, 272 F.R.D. 377, 382 (S.D.N.Y.) (concluding that the "[d]efendants' social

security and bank account numbers . . . have no relation to the issue of whether Defendants

---

[30] In *Saren-Lawrence,* Defendant submitted an Affidavit as to Non-Retention of Madoff Records, which is inadequate.  (*See* Dkt. No. 51, Ex. C.)  The Affidavit fails to explain the disposition of documents attached to Claim No. 000950 filed by Defendant on January 26, 2009, including why those documents were not produced by her accountant in response to the Trustee's subpoena.  Nor does it provide an explanation as to why Defendant did not instruct her accountant or her financial institutions, including Valley National Bank, to preserve records relevant to this case.

illegally commenced the landlord/tenant proceeding to evict Haber from his residence because he is African–American"); *Koch v. Greenberg*, 2009 WL 2143634, *3-6 (S.D.N.Y. 2009) (requests were either irrelevant to any claim or defense or actually duplicative of other requests); *Kirschner v. Klemons*, 2005 WL 1214330 (S.D.N.Y. May 19, 2005) (same).

Moreover, the bank records are not only relevant to the Trustee's claims, but they are also relevant to the defenses raised. For example, Defendants in all 11 cases aver that they are "entitled to setoff, recoupment, and/or equitable adjustment because each year Defendant was required to pay taxes on the fictitious profits reported on, among other things, IRS Form 1099 and other information reported by BLMIS or Madoff to the Internal Revenue Service, state and/or local governmental taxing authorities."[31] While Defendants maintain that this defense concerns alleged setoff rights on certain taxes paid to the Internal Revenue Service, the Court itself noted with respect to Defendant Saren-Lawrence that she had failed to provide any factual basis for this defense either in her Amended Answer or in any of her discovery responses. *See* Disc. Conf. Hr'g Tr., Feb. 11, 2016, 7-9. Accordingly, unless or until Defendants withdraw this and related affirmative defenses with prejudice, the Trustee is entitled to test whether the Defendants made any payments to BLMIS, the Internal Revenue Service or other taxing authority, or any other party that may be claimed as a setoff to the transfers the Trustee seeks to avoid.

Likewise, in ten of the 11 cases, Defendants have asserted the affirmative defense that "[T]there can be no liability of any recipient of funds who, as a matter of law or contract, was required to transfer any portion of the funds to a third party."[32] If Defendants disclaim liability because they may have transferred funds to unspecified third parties, the Trustee is entitled to

---

[31] *See* fn. 2, *infra* for citations.
[32] *See* fn. 2, *infra* for citations.

discovery into these payments.  As with payments made to taxing authorities, information

surrounding funds that may have been transferred to third parties by operation of law or contract

is uniquely in the Defendants' control.  Therefore, it would be improper for Defendants to

maintain the defense but at the same time, deny the Trustee basic discovery concerning its

factual underpinnings, such as the subpoenaed bank records.

In addition, Defendants in the *Wilenitz* case recently served discovery requests on the

Trustee on March 8, which called into question the accuracy of BLMIS's books and records,

which only serves to further illustrate the point that the bank records are discoverable.  For

example, Defendants asked the Trustee to list all "factual error[s] asserted by any . . . customer in

their statements and produce all documents relating to such error."[33]  Similarly, Defendants

requested that the Trustee "produce all reports and documents" on which the Trustee bases his

contention that the "customer statements were not 'riddled with fraud.'"[34]  By calling into

question the accuracy of the BLMIS books and records and refusing to admit to the transfers,

Defendants leave the Trustee with no choice other than to obtain corroborating evidence—such

as bank records—to support his claims and refute Defendants' defenses.

## V.    THE TRUSTEE IS ENTITLED TO AVAILABLE BANK RECORDS EVEN IF THEY IMPLICATE UNNAMED POTENTIAL SUBSEQUENT TRANSFEREES

Defendants argue that the Trustee is attempting "an end-run around Rule 8's pleading

standards" by seeking bank records that may reveal subsequent transfers "in order to frame a

complaint against subsequent transferees."  D. Mem. at 3, 6.  However, the discovery sought by

the Trustee is directly related to his adversary proceedings to avoid and recover fraudulent

transfers.  Bank records are the most basic form of third-party discovery available to a trustee.

---

[33] Ex. B.
[34] *Id.*

Defendants must demonstrate far more to ask this Court to blind the Trustee here from this basic discovery.

A threshold inquiry in assessing the Defendants' argument is whether those unnamed subsequent transferees have standing to make this argument or are clients of Ms. Chaitman. Other than a blanket and summary statement to the Court during the Order to Show Cause hearing on March 9, the Trustee has no information to evaluate this issue given that Ms. Chaitman has not provided details or declarations in support of this argument, or filed a motion to intervene on behalf of those unnamed subsequent transferees. Presumably she will not, because doing so will reveal their identities. *See Heller v. City of New York*, No. 06 CV 2842 (NG), 2008 WL 2965474, at *5 (E.D.N.Y. Apr. 11, 2008) report and recommendation adopted, No. 06 CV 2842 NG (CLP), 2008 WL 2966187 (E.D.N.Y. Aug. 1, 2008) (party lacked standing to request a protective order seeking to protect the interests of a non-party); *In re Application of Chevron Corp.*, 736 F. Supp. 2d 773, 779 n.20 (S.D.N.Y. 2010) ("In the absence of a claim of privilege, a party usually does not have standing to object to a subpoena directed to a non-party witness.").

Even if Ms. Chaitman could establish her representation and standing, given the relevance of the documents as confirmed above, there is no basis to deny the Trustee these bank records simply because they may collaterally reveal a subsequent transferee. There is no requirement that a trustee obtain a judgment of avoidance of initial transfers before he can recover those transTo the contrary, a bankruptcy trustee is expressly entitled to obtain discovery to trace the flow of funds and bring "a suit against the apparent transferees early enough to permit" him "*to learn in discovery…the ultimate beneficiaries of avoidable transfers.*" *In re Global Crossing*, 385 B.R. 52 at 83 n.108 (Bankr. S.D.N.Y. 2008) (italics added). The fact that

he may one day file a lawsuit against those ultimate beneficiaries does not shield their identities

and render them undiscoverable.

Beyond a basic right to obtain bank records relating to transfers, the Trustee is entitled to

discover the identities of subsequent transferees pursuant to two Orders of this Court.  First, the

Avoidance Procedures Order applicable to all 11 of these cases expressly recognize and

contemplate that the Trustee is entitled to discovery of (i) the identity of other persons or entities

that may be liable for the transfers at issue, whether as subsequent transferees or for some other

reason." (emphasis added) [Dkt. 3141, at 4.G.]  In connection with this provision, the Court has

asked whether the statement in this section that discovery is limited to discoverable matters in

accordance with Rule 26(b)(1) serves to cap discovery as to *existing* claims or defenses, which

would therefore preclude discovery that relates to future claims against unnamed subsequent

transferees yet to be sued.  The answer is that it does not.  If it did, the paragraph would be

internally contradictory.  The Avoidance Procedures govern certain of the Trustee's cases against

BLMIS customers.  The Trustee already knew the identity of those customers because they were

director customers and transferees and thus known defendants, and so the reference to the

Trustee's ability to take discovery "of other persons or entities that may be liable for the transfers

at issue" would be absolutely pointless if it was not contemplated that the Trustee would learn

the identities of undiscovered transferees during discovery in the cases filed against the

customers.  Further, paragraph 4.A states that the Federal Rules apply *"unless otherwise*

*provided herein"* in the Avoidance Procedures Order.   Here, it is expressly *provided herein* that

the Trustee is entitled to discovery that may reveal the identity of subsequent transferees.

The second Order mandating that a defendant is not permitted to conceal the identity of

the recipients of money that originated with BLMIS is the June 6, 2011 Litigation Protective

Order.  Paragraph 4(e) of that order expressly states that the identity of subsequent transferees

and subsequent transfers is not confidential.   But one reason why Defendants seek to preclude

the Trustee from obtaining their bank records is to conceal the identities of those who received

the money so the Trustee cannot sue those recipients.  Even if that was the Trustee's primary

motivation for seeking the bank records – which, as explained above, it is not, given their

relevance – that reason is not sufficient to withhold the records.  The Defendants have set forth

no basis to claim that an individual's identify is a protectable piece of information under any

rule.

VI.    **THE DEFENDANTS' CONSTITUTIONAL RIGHT TO PRIVACY IS NOT IMPLICATED BY THE SUBPOENAS AND THE LITIGATION PROTECTIVE ORDER MOOTS ANY OBJECTIONS BASED ON PRIVACY OR CONFIDENTIALITY CONCERNS**

Defendants assert that the production of her bank records would violate her

"constitutionally protected privacy rights" and cite a number of cases purportedly in support of

that assertion.  D. Mem. at 7.  Defendants' arguments are misplaced as is their application of the

case law.  In *McVane v. Federal Deposit Ins. Corp.*, 44 F.3d 1136, 1137-38 (2d Cir. 1995), the

court addressed constitutional privacy concerns implicated by an administrative subpoena served

by a federal agency—which this Court has already recognized SIPC is not.  *See* Mem. Dec.

Regarding Omnibus Motions to Dismiss, Dkt. No. 71, at 25 ("As noted, SIPC is not a

government agency; it is a not-for-profit corporation whose members include brokers and

dealers.").  Even then, the *McVane* court granted the motion to quash because it sought financial

records of the subpoena target's family members, and the government agency failed to establish

a need for those records.  *Id.* at 1138-39.  As such, Defendants' constitutional argument does not

apply here.

Rather, as Defendants' own case law demonstrates, the key factor in the analysis is whether the discovery at issue is relevant, and if so, to what extent.  In *Arias-Zeballos v. Tan*, 2007 WL 210112, *1 (S.D.N.Y. Jan. 25, 2007), the court granted the defendant's motion to quash the subpoena targeting her bank records precisely because "they target[ed] matters that [were] stricken from the plaintiff's complaint" and were therefore not relevant to any of plaintiff's claims.  The balance of Defendants' cases involve virtually identical circumstances and findings.  *See In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 2006 WL 2642192, *2 (S.D.N.Y. Sept. 13, 2006) (quashing subpoenas because records sought were irrelevant); *In re Glitnir Bankfi Hf.*, 2011 WL 3652764, at *5 (Bankr. S.D.N.Y. Aug. 19, 2011) (concluding that Rule 2004 subpoenas were "for the most part, a fishing expedition into the Movant's private financial records with little or any relevance to the Movant's 'acts, conduct, or property or to the liabilities or financial condition of the debtor,'" as required by the rule).   Indeed, Defendants fail to cite a single case where a court quashed a subpoena that targeted highly relevant discovery, as the Trustee's subpoenas do here.

While the Trustee is certainly sensitive to all parties' privacy and confidentiality concerns, those concerns should be assuaged by the June 6, 2011 Litigation Protective Order ("LPO") that governs this action.  By its terms, the LPO prohibits the disclosure of confidential material to any person or entity other than the Court, the parties, their agents, and any relevant witnesses.  *See* LPO at ¶ 10.  Under such circumstances, courts routinely hold that protective orders provide the litigants with adequate privacy protection.  *See, e.g., In re Penthouse Exec. Club Compensation Litig.*, No. 10 CV 1145, 2012 WL 1511772, *1 (Bankr. S.D.N.Y. Apr. 30, 2012) ("The Court finds that the production of unredacted spreadsheets is neither unduly burdensome nor unreasonably duplicative, and that any concerns about the sensitivity of the

information are sufficiently addressed by the Protective Order."); *Glatt v. Fox Searchlight Pictures, Inc.*, No. 11 Civ. 6784 2012 WL 2108220, at *3 (S.D.N.Y. June 11, 2012) ("And any concerns about the sensitivity of this information are addressed by the Stipulation and Confidentiality Order . . ."). The Court should reach the same conclusion here.[35]

## VII. THE DEFENDANTS ARE NOT ENTITLED TO UNILATERALLY REDACT DISCOVERABLE INFORMATION

Defendants' position that they or a third party should be permitted to redact what they or the appointed reviewer determine to be irrelevant information contained in the bank records is improper and unsupported by the case law. Courts generally prohibit redactions for non-responsiveness or irrelevance. *See, e.g., John Wiley & Sons, Inc. v. Book Dog Books, LLC*, 298 F.R.D. 184, 186 (S.D.N.Y. 2014) ("redactions of portions of a document are normally impermissible unless the redactions are based on a legal privilege"); *see also In re State Street Bank and Trust Co. Fixed Income Funds Inv. Litig.*, 2009 WL 1026013, at *1 (S.D.N.Y. Apr. 8, 2009) (directing parties not to "redact any portion of a document on the ground that the portion is non-responsive and irrelevant" because such redactions "breed suspicions" and "may deprive the reader of context"). This Court itself has already rejected the production of redacted third-party bank records. *See Cohmad Secs. Corp.*, Dkt. No. 349 (ordering unredacted documents produced to the Trustee under a promise of confidentiality). As the cases make clear, redactions are frowned upon precisely because the receiving party cannot challenge those determinations.

Nothing in the record justifies departing from this rule. To the contrary, in *Saren-Lawrence*, the difficulty in obtaining Defendant's bank records provides additional reasons to

---

[35] While evidence of relevant transfers is not confidential pursuant to the express language of paragraph 4(e) of the LPO, the Trustee is nonetheless sensitive to the fact that, for any litigant, financial records may reflect sensitive and private information. Accordingly, the Trustee is willing to accept the subpoenaed production as designated "Confidential" pursuant to the LPO, which would prevent the public disclosure of any information contained therein, provided that the Trustee is free to use as not confidential and without restriction the material in the documents that falls within paragraph 4(e).

require the production of the un-redacted bank records.   For example, in an email to Valley

National Bank, defense counsel claimed that "[i]n the case of Valley National Bank, I am

informed that there are no transfers to and from Madoff.  Therefore, upon receiving such a

representation from the Bank, you are not entitled to any documents in response to your

subpoena."  *See* Trustee's Motion to Compel, Dkt. No. 58, Ex. F.  This assertion was quickly

refuted by the bank itself, which responded that it had indeed located records showing such

transfers.  *See* Dkt. No. 45, Ex. A. The Trustee does not believe that defense counsel's unilateral

censorship of potentially relevant information is appropriate or reliable.

Nor would those redactions be any more appropriate if they were done by a third party.

The Trustee, as the plaintiff in these adversary proceedings, is entitled to make his own relevance

determinations, with the Court being the final arbiter.  This requires full and unfettered access to

the bank records so the Trustee can trace the full universe of the relevant transfers in and out of

Defendants' bank accounts.  Without such access, the Trustee would be prejudiced in his ability

to confirm, test, or refute the factual basis underlying the claims and defenses in these cases.  The

Trustee respectfully requests that the Court rule accordingly.

## CONCLUSION

For the foregoing reasons, the Trustee respectfully requests that the Court deny the

Motions in full.

Dated: March 9, 2016
New York, NY

**BAKER & HOSTETLER LLP**

By:     */s/ Karin S. Jenson*
       David J. Sheehan, Esq.
       Email:  dsheehan@bakerlaw.com
       Nicholas J. Cremona, Esq.
       Email: ncremona@bakerlaw.com
       Edward J. Jacobs, Esq.
       Email: ejacobs@bakerlaw.com
       Karin S. Jenson, Esq.
       Email: kjenson@bakerlaw.com
       Keith R. Murphy, Esq.
       Email:  kmurphy@bakerlaw.com
       45 Rockefeller Plaza
       New York, NY 10111
       Telephone: (212) 589-4200
       Facsimile: (212) 589-4201

       *Attorneys for Irving H. Picard, Trustee for*
       *the Substantively Consolidated SIPA*
       *Liquidation of Bernard L. Madoff*
       *Investment Securities LLC and the Estate*
       *of Bernard L. Madoff*