**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Nicholas J. Cremona
Seanna R. Brown
Amy E. Vanderwal

*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>　　　　　Defendant. | Adv. Pro. No. 08-01789 (SMB)<br><br>SIPA Liquidation<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>　　　　　Debtor. | |

**TRUSTEE'S OBJECTION TO MADOFF CUSTOMERS' MOTION**
**FOR AN ORDER AUTHORIZING THE DEPOSITION OF BERNARD L. MADOFF**

Irving H. Picard, trustee ("Trustee") for the substantively consolidated liquidation of the business of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15 U.S.C. § 78aaa *et seq.* ("SIPA"),[1] and the estate of Bernard L. Madoff ("Madoff"), by and through his undersigned counsel, respectfully opposes the Madoff Customers' Motion for an Order Authorizing the Deposition of Bernard L. Madoff filed on March 9, 2016 ("Customers' Motion"), ECF No. 12799.

## PRELIMINARY STATEMENT

The Trustee has determined, after a review of the books and records of BLMIS in accordance with SIPA, that Profit Withdrawal Transactions[2] are debits from BLMIS customer accounts and accordingly reduce an account's net equity balance.  Certain customers now seek to challenge that determination and are looking to Madoff, the perpetrator of the largest Ponzi scheme in history, for support.

Madoff's credibility is highly questionable, and his testimony would be of little probative value where the Trustee's extensive review of the books and records provides compelling evidence of the nature of the Profit Withdrawal Transactions.  Counsel previously submitted a declaration from Madoff which previews for the Court the testimony that Madoff would presumably provide at a deposition. Containing barely one and a half pages of testimony, only a fraction of which touches on issues arguably in dispute in the Profit Withdrawal litigation, Madoff's declaration demonstrates why no deposition should be permitted.  It is devoid of any specific references to the Profit Withdrawal Transactions and it points to no specific evidence that contradicts the Trustee's treatment of them.  And though it speaks in broad terms about prior

---

[1] For convenience, future references to SIPA shall omit "15 U.S.C."

[2] All capitalized terms not otherwise defined herein shall have the meaning ascribed in the Trustee's Memorandum of Law in Support of Trustee's Motion Affirming Treatment of Profit Withdrawal Transactions, ECF No. 10661.

2

written authorization for customer withdrawals, those assertions are contradicted by the books and records of BLMIS. Madoff's testimony cannot add any credible information to these proceedings and does not outweigh the expense and difficulty of deposing him. For these reasons, his deposition should not be permitted.

Should the Court authorize such a deposition, however, the Trustee requests that the scope of the deposition be limited to issues directly relevant to the Profit Withdrawal proceedings and that any questioning relating to the late Jeffry Picower and related parties (the "Picower Parties") be specifically prohibited. Counsel for the movants, Ms. Chaitman, has already sought leave, from this and other courts, to take Madoff's deposition as part of her ongoing attempts to bring claims against the Picower Parties. Most recently, the district court denied her request to depose Madoff, holding that is was made for an improper purpose—to seek discovery to frame a complaint against the Picower Parties. The Madoff Declaration makes gratuitous references to Picower, notwithstanding the fact that Picower is not relevant to the Profit Withdrawal issue, which suggests that Ms. Chaitman intends to question Madoff about Picower. Counsel should not be permitted to use these proceedings to bolster her allegations against Picower for use in another matter and engage in an end-run around the district court's decision.

Finally, the Trustee notes that the Customers' Motion has been filed on behalf of various individuals who are not Participating Claimants, as that term is defined in the Profit Withdrawal litigation, including parties to the litigation against Picower. As such, the Trustee requests that any relief granted be limited to only the Participating Claimants.

**BACKGROUND**

Profit Withdrawal Transactions are a subset of transactions reflected on BLMIS customer statements. Based upon BLMIS's books and records, the Trustee determined that the Profit Withdrawal Transactions were distributions of purported profits, interest, or dividends sent to customers. For purposes of the net investment method, the Trustee treated the Profit Withdrawal Transactions as cash withdrawals, which reduced the net equity of each customer account.

The Profit Withdrawal litigation is the latest in a series of omnibus proceedings on issues concerning the Trustee's determination of net equity. On March 1, 2010, this Court upheld the Trustee's use of the net investment method to calculate net equity under SIPA. *See Sec. Inv'r Prot. Corp. v. BLMIS (In re BLMIS)*, 424 B.R. 122 (Bankr. S.D.N.Y. 2010). On direct appeal, the Second Circuit affirmed this Court's decision. *See In re BLMIS*, 654 F.3d 229 (2d Cir. 2011), *reh'g and reh'g en banc den.* (2d Cir. Nov. 8, 2011). The Supreme Court denied certiorari. 132 S. Ct. 2712 (2012), 133 S. Ct. 25 (2012), 133 St. Ct. 24 (2012).

Once the use of the net investment method was upheld, the Trustee instituted an omnibus procedure to seek this Court's approval for his treatment of inter-account transfers between two BLMIS accounts, where no new funds entered or left BLMIS.[3] During that litigation, counsel for Aaron Blecker argued that Profit Withdrawal Transactions were improperly treated as a reduction to his net equity.[4]

On December 8, 2014, this Court upheld the Trustee's treatment of inter-account

---

[3] *See* Motion for Order Scheduling Hearing on Trustee's Motion Affirming Application of Net Investment Method to Determination of Customer Transfers Between BLMIS Accounts, ECF No. 5728; Scheduling Order, ECF No. 6049; Trustee's Motion Affirming Application of Net Investment Method to Determination of Customer Transfers Between BLMIS Accounts, ECF No. 6084.

[4] *See* Customers' Memorandum of Law in Opposition to the Trustee's Method for Valuing Inter-Account Transfers 4-6, ECF No. 6708.

transfers because "increasing [Claimants'] net equity claims by giving them credit for the fictitious profits 'transferred' into their accounts contravenes the *Net Equity Decision*." *Sec. Inv'r Prot. Corp. v. BLMIS (In re Madoff)*, 522 B.R. 41, 47 (Bankr. S.D.N.Y. 2014). The Court did not address Mr. Blecker's specific argument regarding Profit Withdrawal Transactions in its ruling on inter-account transfers. *See generally id.* Mr. Blecker appealed this Court's decision on inter-account transfers, and the district court affirmed the decision. *Blecker v. Picard*, No. 15-cv-1236, 2016 WL 183492 (S.D.N.Y. Feb. 16, 2016). An appeal is now pending before the Second Circuit. *Blecker v. Picard*, 16-423 (2d Cir.).

Following the inter-account transfer litigation, the Trustee subsequently sought to implement an omnibus process to litigate the Profit Withdrawal issue. On June 25, 2015, this Court entered an order providing for a schedule for discovery and briefing of the Profit Withdrawal issue. *See* Order Establishing Schedule for Limited Discovery and Briefing on Profit Withdrawal Issue, ECF No. 10266 (the "Profit Withdrawal Scheduling Order").

Notwithstanding the fact that Mr. Blecker is a party to both the Profit Withdrawal litigation and the inter-account transfer appeal, on December 28, 2015, he filed a Motion to Compel the Trustee to Allow His SIPC Claim ("Motion to Compel"), ECF No. 12319. Mr. Blecker argued that the Trustee erred in treating the Profit Withdrawal Transactions in his BLMIS account as withdrawals because he never received any funds from BLMIS. *See* Motion to Compel at 2. In support of his argument, Mr. Blecker relied on a declaration from Madoff claiming that customers were required to request withdrawals from their accounts in writing and that all such requests were maintained in the BLMIS files. *See* Declaration of Bernard L. Madoff ("Madoff Decl."), ECF No. 12319, Ex. 2, ¶¶ 2, 3.

Despite being submitted in connection with Mr. Blecker's Motion to Compel, the Madoff Declaration contains two gratuitous references to Jeffry Picower. It states: "[p]ost 1990, I was put under enormous financial pressure by Jeffry Picower, who created the fraud I perpetrated and who was, by far, the primary beneficiary of the fraud. In order to raise money, I began to defraud my customers . . . ." Madoff Decl. ¶ 4. In the next paragraph, after asserting that the Trustee should take him at his word, Madoff states that the Trustee and the government have relied on Mr. DiPascali's testimony even though Mr. DiPascali was the person who "after Picower and me, bore most responsibility for the fraud we perpetrated." *Id.* ¶ 5.

The Trustee opposed the Motion to Compel because of Mr. Blecker's ongoing participation in the Profit Withdrawal proceedings as well as the inter-account transfer appeal. Trustee's Memorandum of Law in Opposition to Motion of Aaron Blecker to Compel the Trustee to Allow His SIPC Claim, ECF No. 12432. The Trustee also disputed the evidentiary value of the Madoff Declaration not only because is Madoff a convicted fraudster of historic proportions but also because the few allegedly probative statements in his Declaration are contradicted by the books and records of BLMIS. *Id.* at 17-18. Madoff suggests that the Trustee would have found individual written requests for each check sent by BLMIS because it was BLMIS practice to only send checks upon written request. Madoff Decl. ¶¶ 2-3. But as the Trustee previously pointed out, the books and records of BLMIS show numerous examples of withdrawals without any evidence of prior requests by customers. Trustee Opp'n at 17-18. This Court heard arguments on the Motion to Compel on February 24, 2016 and denied Mr. Blecker's motion. *See* Transcript of Hearing Regarding Motion to Allow Customer Claim of Aaron Blecker at 28:22 – 29:12; 30:10-21, attached hereto as Exhibit A. The Customers' Motion followed.

**ARGUMENT**

I.   **The Motion to Authorize Madoff's Deposition Should be Denied**

The Trustee's determination that the Profit Withdrawal Transactions represent payments to BLMIS customers is based on a thorough review of the BLMIS books and records. Further, that determination was made in accordance with Section 78fff-2(b) of SIPA, which provides that net equity claims will only be paid "insofar as such obligations are ascertainable from the books and records of the debtor or are otherwise established to the *satisfaction of the trustee*." (emphasis added). The Trustee's reliance on those books and records for the purposes of the "cash in/cash out" calculation has been repeatedly upheld. *See In re BLMIS*, 654 F.3d 229; *Blecker v. Picard (In re BLMIS)*, No. 15-cv-1236, 2016 WL 183492 (S.D.N.Y. Feb. 16, 2016); *In re Madoff*, 522 B.R. at 47. Given the statutory mandate that claims must be established to the satisfaction of the Trustee and the prior decisions of this and appellate courts on the Trustee's net equity determinations, it is not clear that any further evidence is required to affirm the Trustee's net equity determinations with regard to Profit Withdrawal Transactions. However, even if one were to go beyond BLMIS books and records, looking to Bernard Madoff for answers is a dubious exercise at best.

Based on the statements contained in the Madoff Declaration, it is far from clear what value Madoff's deposition would add to the Profit Withdrawal proceedings. As this Court observed, the Madoff Declaration makes no mention of Profit Withdrawal transactions. *See* Ex. A, 30:14-19. Instead, it makes a broad statement that "[Madoff] would not send a customer a withdrawal unless the withdrawal was requested by the customer in writing and we retained copies of all such requests in our customer files. If there are no such requests in our files, that

indicates that the customer did not request any withdrawals and would not have received any checks." Madoff Decl. ¶ 3.

But this statement is demonstrably inconsistent with the books and records of BLMIS *See* Trustee Opp'n at 17-18. The Trustee has identified numerous examples of cases where checks were sent and cashed by customers who had no documentation in their files requesting such withdrawals. *Id.* For example, account 1G0057 reflected a transaction for $394, denoted on the customer statement as "PW", and described as "Check Avon Products." The copy of the canceled check shows that it was endorsed by that BLMIS customer for this individual Profit Withdrawal Transaction. Yet there was no written request for this withdrawal in the customer file for 1G0057.[5] Similarly, account 1K0013 reflected a transaction for $454, denoted as "PW" and described as "Check Cardinal Health." The copy of the canceled check shows that is was endorsed by that BLMIS customer for this individual Profit Withdrawal Transaction. Yet there was no written request for this withdrawal in the customer file for 1K0013.[6]

In addition to being contradicted by the books and records of BLMIS, the Madoff Declaration does not contain any indication that Madoff personally maintained any of the files at issue or specifically directed the maintenance of any such records. Considering that Ms. Chaitman often touts her ability to contact Madoff, including recently to ABC News,[7] the Madoff Declaration is surprisingly light on information relevant to the Profit Withdrawal

---

[5] *See* Expert Report of Lisa M. Collura, Exhibit 7, CMID Number 189317, ECF No. 10664.

[6] *See* Expert Report of Lisa M. Collura, Exhibit 7, CMID Number 197562, ECF No. 10664.

[7] *See* Transcript of January 22, 2015 Teleconference at 13:23–25, *In re Marshall*, 15-MC-0001 (D. Del.) (Fox Plaintiffs' counsel representing to Delaware District Court that he has interviewed Madoff); *see also* HELEN DAVIS CHAITMAN & LANCE GOTTHOFFER, JPMADOFF: THE UNHOLY ALLIANCE BETWEEN AMERICA'S BIGGEST BANK AND AMERICA'S BIGGEST CROOK, Ch. 2 http://jpmadoff.com (last visited Dec. 18, 2015) (stating Fox Plaintiffs' counsel has had "numerous" telephone conversations with Madoff); ABC News, *The Madoff Victim Who Talks to Bernie in Jail*, http://abcnews.go.com/Business/video/madoff-victim-talks-bernie-jail-36634538 (last visited Mar. 16, 2016) (stating Fox Plaintiffs' counsel has had phone calls with Madoff over the last six years).

8

proceeding, or any proceeding for that matter. Given this apparent access, if Madoff had something relevant to say about Profit Withdrawal Transactions, he would have said it by now.

As this Court has already recognized, "given that he is a convicted fraudster, Madoff's testimony likely lacks credibility." *Sec. Inv'r Prot. Corp. v. BLMIS (In re Madoff)*, 496 B.R. 713, 723 (Bankr. S.D.N.Y. 2013), *aff'd sub. nom. In re BLMIS*, No. 13-cv-4332 (ALC), 2014 WL 1302660 (S.D.N.Y. Mar. 31, 2014) (denying request to compel Madoff to testify because there would be "little, if any, probative value" to his testimony) (citing Fed. R. Evid. 609(a)(2)). The movants cannot meet the requirements of Federal Rule of Civil Procedure 26(b) because the burdens of obtaining Madoff's deposition are outweighed by any benefits. *Braham v. Lantz*, No. 3:08CV1564 DFM, 2011 WL 4809032 *1 (D. Conn. Oct. 11, 2011) ("In determining whether to limit the extent of discovery, the court weighs the probative value of proposed discovery against its potential burden."); *see also Dongguk Univ. v. Yale Univ.*, 270 F.R.D. 70, 73 (D. Conn. 2010) ("[T]he court will consider the specific facts of the case to make a common sense decision about whether or not the discovery in question goes too far."). Accordingly, the Customers' Motion should be denied.

## II. If the Deposition is Authorized, its Scope Should be Strictly Limited to Profit Withdrawal Issues

Although the Customers' Motion seeks to question Madoff concerning the Profit Withdrawal entries, the Trustee has a good faith concern that if the deposition of Madoff is permitted to go forward, Ms. Chaitman will improperly use it as a vehicle to elicit testimony from Madoff for use in other proceedings to which she is plainly not entitled under a prior court order. Specifically, the Madoff Declaration suggests that Ms. Chaitman seeks Madoff's deposition, at least in part, to further her attempts to bring claims against the Picower Parties. Ms. Chaitman previously sought to depose Madoff concerning the Picower Parties numerous

9

times in order to frame a complaint against them. All of those requests to depose Madoff were denied, most recently by the district court. *Marshall v. Madoff*, No. 15-mc-56 (JGK), 2015 WL 2183939, at *3 (S.D.N.Y. May 11, 2015). This Court should not permit Madoff's deposition on the Profit Withdrawal issue to become an end-run around the numerous prior court orders that barred Ms. Chaitman from deposing Madoff on matters relating to the Picower Parties.

In *Marshall v. Capital Growth Co.*, plaintiffs Adele Fox and others who purport to represent a class (the "Fox Plaintiffs"), are seeking – for the third time – to bring federal securities law and common law claims against the Picower Parties on the theory that Picower was an alleged "control person" of BLMIS. Adv. Pro. No. 15-01293 (SMB) (Bankr. S.D.N.Y.) ("*Fox III*"), ECF No. 1. The Fox Plaintiffs are represented by the same counsel as the moving Customers. The Fox Plaintiffs allege that Picower controlled the BLMIS fraud by, among other things, lending money to BLMIS during liquidity crises and serving as a counterparty to purported options trades, all so that Picower could reap enormous financial benefits from the fraud. Declaration of Helen Davis Chaitman in Support of Plaintiffs' Motion for Declaratory Judgment, Ex. A ("Fox III Complaint"), *Marshall v. Capital Growth Co.*, Adv. Pro. No. 15-01293 (SMB) (Bankr. S.D.N.Y. Nov. 9, 2015), ECF No. 19. The Fox III Complaint violates a permanent injunction the Trustee obtained as part of his settlement with the Picower Parties ("Permanent Injunction"), and the Trustee has opposed the Fox Plaintiffs' continued efforts to circumvent the Permanent Injunction.[8]

---

[8] Oral argument has been heard in the *Marshall* matter and the parties are awaiting a decision. *See* Transcript Regarding Hearing Held on Feb. 11, 2016, *Marshall v. Capital Growth Co.*, Adv. Pro. No. 15-01293 (SMB) (Bankr. S.D.N.Y.), ECF No. 45. This Court, however, has recently enforced the Permanent Injunction against a substantially identical claim brought by another set of putative class plaintiffs. *Picard v. A & G Goldman P'ship*, Adv. Pro. No. 14-02407 (SMB), 2016 WL 625076, at *1 (Bankr. S.D.N.Y. Feb. 17, 2016).

In replying to the Trustee's opposition, the Fox Plaintiffs relied on the Madoff Declaration filed in connection with Mr. Blecker's Motion to Compel, which contained the two gratuitous references to Picower. Madoff Decl. ¶¶ 4, 5. The references to Picower in the Madoff Declaration have nothing whatsoever to do with the Profit Withdrawal litigation. Given the reliance by the Fox Plaintiffs on the Madoff Declaration, it is reasonable to infer that if Madoff's deposition is permitted, in the absence of a limiting order, counsel for the Customers will try to elicit testimony from Madoff to bolster the Fox III Complaint or a future complaint against the Picower Parties on behalf of the Fox Plaintiffs.

Permitting counsel for the Customers to do so would be entirely improper. First, testimony about Picower is irrelevant to the Profit Withdrawal litigation. Picower was an accountholder at BLMIS; he did not work at BLMIS and he did not maintain BLMIS books and records. Indeed, there is not a single reference to Picower or the Picower Parties in the Profit Withdrawal briefing.[9] Even the Madoff Declaration draws no connection between the Picower Parties and the Profit Withdrawal issue.

Second, the district court has already denied counsel's request to depose Madoff for testimony concerning the Picower Parties. *Marshall v. Madoff*, No. 15-mc-56 (JGK), 2015 WL 2183939, at *3 (S.D.N.Y. May 11, 2015). In *Marshall*, the Fox Plaintiffs petitioned under Federal Rule of Civil Procedure 27 for a pre-complaint deposition of Madoff about Picower's

---

[9] *See* Aaron Blecker's Memorandum of Law in Support of Motion To Compel the Trustee To Allow His SIPC Claim, *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff)*, Adv. Pro. No. 08-01789 (Bankr. S.D.N.Y. filed Dec. 28, 2015), ECF No. 12319; Trustee's Memorandum of Law in Opposition to Motion of Aaron Blecker To Compel the Trustee To Allow His SIPC Claim, *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff)*, Adv. Pro. No. 08-01789 (Bankr. S.D.N.Y. filed Jan. 13, 2016), ECF No. 12432; Memorandum of Law of the Securities Investor Protection Corporation in Support of Trustee's Opposition to Motion of Aaron Blecker To Compel the Trustee To Allow SIPC Claim, *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff)*, Adv. Pro. No. 08-01789 (Bankr. S.D.N.Y. filed Jan. 14, 2016), ECF No. 12438; Aaron Blecker's Reply Memorandum of Law in Further Support of Motion To Compel the Trustee To Allow His SIPC Claim, *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff)*, Adv. Pro. No. 08-01789 (Bankr. S.D.N.Y. filed Feb. 10, 2016), ECF No. 12628.

alleged involvement in the fraud. *Id.* at *1. The Fox Plaintiffs sought Madoff's testimony about Picower in several broad areas, including "detailed facts of Picower's knowledge of and participation in Madoff's fraud, and Picower's control over Madoff's decision-making, including actions that were taken by Picower to ensure that the fraud continued." Verified Petition Under Fed. R. Civ. P. 27(a) To Perpetuate Testimony Before Action ¶ 16(a), *Marshall v. Madoff*, No. 15-mc-56 (JGK) (S.D.N.Y. transferred on Mar. 4, 2015), ECF No. 1.[10]

In denying the request, Judge Koeltl found that the Fox Plaintiffs "appear to be bringing this petition for an improper purpose—namely, to seek discovery to frame their third amended complaint in the Florida Action." *Marshall*, 2015 WL 2183939, at *1, *3. The court held that the Fox Plaintiffs may not take Madoff's deposition in order to attempt to frame a complaint to survive the Permanent Injunction.[11] *Id.* This Court should not now allow counsel for the Fox Plaintiffs to circumvent the district court's clear ruling by permitting Madoff's deposition on anything related to the Picower Parties.

That Ms. Chaitman intends to use the Profit Withdrawal litigation as an opportunity to depose Madoff on issues related to matters other than Profit Withdrawal Transactions is also supported by the fact that she is seeking to depose Madoff on behalf of all her clients, rather than only those that are impacted by the Profit Withdrawal issue. *See* Notice of Motion for an Order Authorizing the Deposition of Bernard L. Madoff, Ex. A, ECF No. 12799. Under the Profit Withdrawal Scheduling Order, only those parties that filed customer claims and have Profit

---

[10] It also sought testimony about "the history of Madoff's financial dealings with Picower," ¶ 16(b); "the pressure Picower put on Madoff to make Madoff cover certain positions," ¶ 16(c); "the increasing financial demands that Picower made of Madoff," ¶ 16(d); "the reaction of Picower when Madoff told him he could not continue to meet Picower's demands," ¶ 16(e); "Picower's own solicitation of customers for Madoff," ¶ 16(f); "Picower's sham loans to Madoff," ¶ 16(g); and "Picower's illegal operation of the Picower Foundation," ¶ 16(h).

[11] Ms. Chaitman also attempted previously to obtain Madoff's deposition under Rule 27 in the United States District Court for the Middle District of Florida. Her motion was denied. (Order at 13, *Dusek v. JP Morgan Chase & Co.*, Case No. 2:14-cv-00184-JEM-CM (M.D. Fla. Jan. 21, 2015.); *See also Marshall*, 2015 WL 2183939, at *3 n.3.

Withdrawal Transactions in their accounts or in accounts from which they received inter-account transfers may participate in the Profit Withdrawal proceedings ("Participating Claimants"). The Customers' Motion indicates it was filed on behalf of 587 parties. Of these, only 61 are Participating Claimants in the Profit Withdrawal litigation.[12]

Given the procedural history of Ms. Chaitman's repeated efforts over the years to obtain discovery with respect to the Picower Parties, the Trustee respectfully requests that, if the Court grants the motion, necessary safeguards are put into place to preclude Ms. Chaitman from eliciting testimony to which she is not entitled. This relief is particularly appropriate because the deposition will be taken at a correctional facility and the Trustee may have limited recourse if improper questions are posed or inappropriate testimony is offered.

Specifically, the Trustee respectfully requests that this Court order that: (i) Madoff shall receive an instruction that his answers must be limited to only the issues raised in the Profit Withdrawal briefing and litigation; (ii) any questioning shall be limited to only the issues raised in the Profit Withdrawal briefing and litigation; (iii) any questions or answers related to the Picower Parties shall be prohibited; (iv) the transcript from the deposition shall not be used or disclosed in any manner until reviewed and, if necessary, redactions are made to improper questions or testimony about Picower, the Picower Parties, or their agents; and (v) use of the

---

[12] Aaron Blecker; Accu-Plan Employees Profit Sharing; Adele Fox; Adele Shapiro; Alvin E. Shulman; Alvin E. Shulman Pourover Trust; Barbara Engel; Barbara Kotlikoff Harman; Benjamin T. Heller; Benjamin T. Heller Irrevocable Trust; Beth P. Feldman; Carol Fisher; Carolyn Frucht; Chalek Associates LLC; David Shapiro; David Shapiro Nominee; David Shapiro Nominee 2; David Shapiro Nominee 3; David Shapiro Nominee 4; Deborah Shapiro; Doron A. Tavlin; Doron Tavlin Trust U/A 2/4/91; Edwin Michalove; Estate of Florence W. Shulman; Evelyn Berezin Wilenitz; Florence Shulman Pourover Trust; Frieda Freshman; Frieda Freshman Revocable Trust DTD 12/31/92; Frieda Low; Gary M. Low; Gloria Albert Sandler; Gunther K. Unflat; Howard Frucht; Howard M. Schupak; Laura Ann Smith; Laura Ann Smith Revocable Living Trust; Lawrence J. Ryan; Lilliam M. Sage; Margaret Unflat; Maurice Sandler; Mitchel Chalek; Morton J. Chalek; Nicholas Sedgwick; Robert Low; Robert Sedgwick; Roberta Schwartz; Roberta Schwartz Trust; Rona Mast; Ryan Tavlin; Sage Associates; Sage Realty; Sandy Sandler; The Gloria Albert Sandler and Maurice Sandler Revocable Living Trust; The Harnick Brothers Partnership; The Lawrence J. Ryan and Theresa R. Ryan Revocable Living Trust; The Lawrence J. Ryan By-Pass Trust Under Declaration of Trust Dated 11/20/1991; Theresa R. Ryan; Trust for the Benefit of Ryan Tavlin; Trust U/ART fourth O/W/O Israel Wilenitz; Walter Freshman Revocable Trust A; Walter Freshman Revocable Trust DTD 12/31/92.

13

deposition transcript shall be limited to the Profit Withdrawal litigation only and may not be used in any other proceedings, including any pending or future claims against the Picower Parties. Additionally, should the Court grant the motion, the Trustee respectfully reserves his right to attend the deposition and cross-examine Madoff.

## CONCLUSION

The Trustee respectfully requests that the Court deny the Motion. In the alternative, if the motion is granted, the Trustee respectfully requests that this Court order that: (i) Madoff shall receive an instruction that the scope of his testimony shall be limited to only the issues raised in the Profit Withdrawal briefing and litigation; (ii) any questioning shall be limited to only the issues raised in the Profit Withdrawal briefing and litigation; (iii) any questioning related to the Picower Parties shall be prohibited; (iv) the transcript from the deposition shall not be used or disclosed in any manner until reviewed and, if necessary, redactions are made to improper questions or testimony about Picower, the Picower Parties, or their agents; and (v) use of the deposition transcript shall be limited to the Profit Withdrawal litigation only and may not be used in any other proceedings, including any pending or future claims against the Picower Parties. Additionally, should the Court grant the motion, the Trustee respectfully reserves his right to attend the deposition and cross-examine Madoff.

Dated: New York, New York  
       March 16, 2016

Respectfully submitted,

BAKER & HOSTETLER LLP

By:  */s/ David J. Sheehan*  
     David J. Sheehan  
     dsheehan@bakerlaw.com  
     Nicholas J. Cremona  
     ncremona@bakerlaw.com

Seanna R. Brown
sbrown@bakerlaw.com
Amy E. Vanderwal
avanderwal@bakerlaw.com
45 Rockefeller Plaza
14th Floor
New York, NY 10111
Telephone: 212.589.4200
Facsimile: 212.589.4201

*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Estate of Bernard L. Madoff*

15