**Baker & Hostetler LLP**

45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Nicholas J. Cremona
Jorian L. Rose
Amy E. Vanderwal
George Klidonas
Stephanie A. Ackerman

*Attorneys for Irving H. Picard, Trustee for the*
*Substantively Consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities LLC*
*and the Estate of Bernard L. Madoff*

Hearing Date:  April 27, 2016
Hearing Time:  10:00 AM (EST)
Objection Deadline:  April 6, 2016

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (SMB) |
| Plaintiff-Applicant, | SIPA Liquidation |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |

## TRUSTEE'S MOTION AND MEMORANDUM TO AFFIRM HIS DETERMINATIONS DENYING CLAIMS OF CLAIMANTS HOLDING INTERESTS IN THE ARTICLE THIRD TRUST, PALMER FAMILY TRUST, MAGGIE FAUSTIN, ESTATE OF THEODORE SCHWARTZ, AND MILLER TRUST PARTNERSHIP

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ............................................................................... 1

BACKGROUND .................................................................................................... 2

    A.    THE COMMENCEMENT OF THE SIPA PROCEEDING ................................. 2

    B.    THE TRUSTS' STRUCTURE, BLMIS ACCOUNTS, AND CLAIMS............... 3

        1.    Article Third Trust ................................................................. 3

        2.    Palmer Family Trust .............................................................. 5

        3.    Maggie Faustin....................................................................... 6

        4.    Estate of Theodore Schwartz ................................................. 8

        5.    Miller Trust Partnership........................................................ 10

    C.    THE BLMIS ACCOUNT RECORDS................................................. 11

    D.    THE CLAIMS................................................................................ 12

    E.    THE CUSTOMER DECISIONS ...................................................... 12

        1.    The Initial Feeder Fund Motion............................................. 13

        2.    The ERISA Motion ................................................................. 14

        3.    Other Customer Motions......................................................... 15

ARGUMENT........................................................................................................ 17

CONCLUSION.................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Adler, Coleman Clearing Corp.*,
  216 B.R. 719 (Bankr. S.D.N.Y. 1998) ............................................................18

*Alley v. Clark*,
  71 F. Supp. 521 (E.D.N.Y. 1947) ..................................................................20

*Aozora Bank Ltd. v. Sec. Inv'r Prot. Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*,
  480 B.R. 117 (S.D.N.Y. 2012) .......................................................................13

*Appleton v. First Nat'l Bank of Ohio*,
  62 F.3d 791 (6th Cir. 1995) ...........................................................................18

*In re Beacon Assocs. Litig.*,
  745 F. Supp. 2d 386 (S.D.N.Y. 2010) ..............................................................2

*In re Bernard L. Madoff Inv. Sec. LLC*,
  654 F.3d 229 (2d Cir. 2011) ............................................................2, 14, 18, 20

*CarVal UK Ltd. v. Giddens (In re Lehman Bros., Inc.)*,
  791 F.3d 277 (2d Cir. 2015) ...........................................................................18

*Cohn v. U.S. Trust Co.*,
  512 N.Y.S.2d 37 (N.Y. App. Div. 1st Dept. 1987) ........................................20

*In re Klein, Maus & Shire, Inc.*,
  301 B.R. 408 (Bankr. S.D.N.Y. 2003) ............................................................24

*Kruse v. Sec. Inv'r Prot. Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*,
  708 F.3d 422 (2d Cir. 2013) ..................................................................... *passim*

*La Russo v. Paladino*,
  109 N.Y.S.2d 627 (N.Y. Sup. Ct. 1951) .........................................................21

*In re Lehman Bros. Inc.*,
  462 B.R. 53 (Bankr. S.D.N.Y. 2011) ..............................................................18

*Mishkin v. Siclari (In re Adler, Coleman Clearing Corp.)*,
  277 B.R. 520 (Bankr. S.D.N.Y. 2002) .........................................................3, 24

*Newburger, Loeb & Co. v. Gross*,
  563 F.2d 1057 (2d Cir. 1977) .........................................................................20

*Norwest Bank Minnesota, N.A. v. Ode*,
  615 N.W.2d 91 (Minn. App. 2000) .................................................................20

# TABLE OF AUTHORITIES
## (continued)

Page(s)

*Sec. Inv'r Prot. Corp. v. 2427 Parent Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*,
779 F.3d 74 (2d Cir. 2015)...................................................................................21, 22

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff)*,
515 B.R. 161 (Bankr. S.D.N.Y. 2014) ..........................................................16, 20, 23

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff Inv. Sec. LLC)*,
454 B.R. 285 (Bankr. S.D.N.Y. 2011) ...............................................................13, 24

*Sec. Inv'r Prot. Corp. v. Jacqueline Green Rollover Account*,
Nos. 12 Civ. 1039 (DLC), 12 Civ. 1139 (DLC), 2012 WL 3042986 (S.D.N.Y. July 25, 2012)...............................................................................................................15

*Sec. Inv'r Prot. Corp. v. Morgan, Kennedy & Co.*,
533 F.2d 1314 (2d Cir. 1976)........................................................................14, 19, 22

*SEC v. Madoff*,
No. 1:08-cv-10791-LLS, 2008 WL 5197070 (S.D.N.Y. filed Dec. 11, 2008) .........2

*Stafford v. Giddens (In re New Times Sec. Servs., Inc.)*,
463 F.3d 125 (2d Cir. 2006)...........................................................................13, 18, 23

*Weisinger v. Rae*,
188 N.Y.S.2d 10 (N.Y. Sup. Ct. 1959) ................................................................21

**Statutes**

11 U.S.C. § 502(d) .................................................................................................5

15 U.S.C. § 78aaa *et seq.* .....................................................................................1

15 U.S.C. § 78eee(a)(4) .........................................................................................2

15 U.S.C. § 78eee(b)(3) .........................................................................................2

15 U.S.C. § 78eee(b)(4) .........................................................................................2

15 U.S.C. § 78fff-1(a) ............................................................................................2

15 U.S.C. § 78fff-2(b) ...........................................................................................18

15 U.S.C. § 78fff-3(a) ............................................................................................3

15 U.S.C. § 78*lll*(2) ..............................................................................2, 15, 17, 18

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

15 U.S.C. § 78*lll*(4) ...................................................................................................2

15 U.S.C. § 78*lll*(11) ............................................................................................2, 21

CAL. CIV. PROC. CODE ANN. § 688 ..............................................................................20

Dodd-Frank Wall Street Reform and Consumer Protection Act. Pub. L. No. 111-
203, § 983(b), 124 Stat. 1931 (2010) ....................................................................18

MINN. STAT. ANN. § 501C.0809 ..................................................................................20

MINN. STAT. ANN. § 501C.0810 ..................................................................................20

N.Y. EST. POWERS & TRUSTS LAW § 7-2.1 ..................................................................20

N.Y. PARTNERSHIP LAW § 12 ......................................................................................20

N.Y. PARTNERSHIP LAW § 51(2)(a) ..............................................................................21

N.Y. PARTNERSHIP LAW § 51(2)(b) ..............................................................................21

S.D. CODIFIED LAWS § 55-1A-5 ..................................................................................20

**Rules**

Fed. R. Civ. P. 36(a)(3) ..................................................................................... *passim*

**Other Authorities**

1-12 *Collier on Bankruptcy* ¶ 12.12 (16th ed. 2012) ..................................................14

Irving H. Picard, as trustee ("Trustee") for the substantively consolidated liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15 U.S.C. § 78aaa *et seq.* ("SIPA"),[1] and the estate of Bernard L. Madoff ("Madoff"), respectfully submits this combined motion and memorandum of law (the "Motion") to affirm the denial of eighteen (18) claims filed by claimants (the "Objecting Claimants") who objected to the Trustee's determinations and who were Beneficiaries[2] in one of the following: Article Third Trust, Palmer Family Trust, Maggie Faustin,[3] Estate of Theodore Schwartz, and Miller Trust Partnership (collectively, the "Trusts").[4]  The Objecting Claimants are specifically identified in Exhibit 2 to the Declaration of Vineet Sehgal ("Sehgal Decl.") filed herewith.  This Motion is based upon the law set forth below as well as the facts set forth in the accompanying Sehgal Declaration and the declaration of Stephanie Ackerman ("Ackerman Decl.").

## PRELIMINARY STATEMENT

The Objecting Claimants seek customer status in this SIPA proceeding, despite acknowledging through discovery that they did not have accounts in their name and had no direct financial relationship with BLMIS.  Instead, they were Beneficiaries of the Trusts, each of which had a BLMIS account, invested the Trust's assets with BLMIS, and filed its own claim with the Trustee.  The case is governed by the Second Circuit decision *Kruse v. Sec. Inv'r Prot. Corp. (In*

---

[1] *See* 15 U.S.C. § 78aaa *et seq.* (West 2009).  For convenience, subsequent references to sections of the Securities Investor Protection Act shall be denoted as "SIPA § __."

[2] The term "Beneficiaries" includes all remaindermen and beneficiaries of the Trusts.  In addition, for ease of reference it includes partners of the Miller Trust Partnership, who were originally beneficiaries of the predecessor entity, the Miller Living Trust.

[3] This account was previously owned by the Madeleine Faustin Joseph Trust but was later transferred over to Maggie Faustin.

[4] The Miller Trust Partnership was originally a trust but was later changed to a partnership.  Moreover, the Estate of Theodore Schwartz was in the name of Theodore Schwartz.  There is evidence that the estate later created a trust. For the purposes of this Motion, the Miller Trust Partnership and the Estate of Theodore Schwartz shall be included in the defined term "Trusts" for ease of reference.

*re Bernard L. Madoff Inv. Sec. LLC)*, 708 F.3d 422 (2d Cir. 2013) and the many related decisions in this SIPA proceeding, referenced in Section E *infra*, involving the question of who is a "customer" under SIPA. The current Motion seeks to apply these decisions to the Objecting Claimants through entry of an order affirming the Trustee's denial of their claims as listed in Exhibit 2 to the Declaration of Vineet Sehgal, disallowing their claims, and overruling the related claims objections on the grounds that Claimants are not "customers" as such term is used at SIPA § 78*lll*(2).[5]

## BACKGROUND

### A.   THE COMMENCEMENT OF THE SIPA PROCEEDING

The basic facts of the BLMIS fraud are widely known and have been recounted in numerous decisions. *See, e.g.*, *In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d 229, 231 (2d Cir. 2011); *In re Beacon Assocs. Litig.*, 745 F. Supp. 2d 386, 393–94 (S.D.N.Y. 2010).[6] Under SIPA, the Trustee is responsible, among other things, for recovering and distributing customer property to a broker's customers, assessing claims, and liquidating other assets of the firm for the benefit of the estate and its creditors. A SIPA trustee has the general powers of a bankruptcy trustee, in addition to the powers granted by SIPA. SIPA § 78fff-1(a). The statutory framework for the satisfaction of customer claims in a SIPA liquidation proceeding provides that "customers," as defined in SIPA § 78*lll*(2), share pro rata in "customer property," as defined in SIPA § 78*lll*(4), to the extent of their "net equity," as defined in SIPA § 78*lll*(11).

---

[5] The Trustee reserves all other bases for objections to the claims that are the subject of the Motion.

[6] On December 11, 2008, the Securities and Exchange Commission ("SEC") filed a complaint in the District Court against Madoff and BLMIS, captioned *SEC v. Madoff*, No. 1:08-cv-10791-LLS, 2008 WL 5197070 (S.D.N.Y. filed Dec. 11, 2008), alleging fraud through the investment advisor activities of BLMIS. The SEC consented to the consolidation of its case with an application of the Securities Investor Protection Corporation ("SIPC"). Thereafter, SIPC filed an application under SIPA § 78eee(a)(4) alleging that because of its insolvency, BLMIS needed SIPA protection. The District Court appointed the Trustee under SIPA § 78eee(b)(3) and removed the proceeding to this Court under SIPA § 78eee(b)(4).

For each customer with a valid net equity claim, if the customer's share of customer property does not make her whole, SIPC advances funds to the SIPA trustee up to the amount of the customer's net equity, not to exceed $500,000 (the amount applicable to this case).   SIPA § 78fff-3(a).  It is the customer's burden to demonstrate he or she is entitled to customer status. *Mishkin v. Siclari (In re Adler, Coleman Clearing Corp.)*, 277 B.R. 520, 557 (Bankr. S.D.N.Y. 2002) ("[I]t is well-established in the Second Circuit that a claimant bears the burden of proving that he or she is a 'customer' under SIPA.").

On December 23, 2008, this Court entered a Claims Procedures Order.  *See* ECF No. 12. Pursuant to that order, the Trustee determines claims eligible for customer protection under SIPA, claimants may object to the Trustee's determination of a claim by filing an objection in this Court, and the Trustee requests a hearing date for the objection and notifies the objecting claimant thereof.  *Id.*

## B.    THE TRUSTS' STRUCTURE, BLMIS ACCOUNTS, AND CLAIMS

The Objecting Claimants claim to be Beneficiaries of one of the Trusts.  One (1) claim was filed by an Objecting Claimant related to Article Third Trust, eleven (11) claims were filed by Objecting Claimants related to Palmer Family Trust, one (1) claim was filed by an Objecting Claimant related to Maggie Faustin, two (2) claims were filed by Objecting Claimants related to the Estate of Theodore Schwartz, and three (3) claims were filed by Objecting Claimants related to the Miller Trust Partnership.  *See* Sehgal Decl., Exs. 1-3.  The claims of the Trusts themselves are not at issue in this Motion.

### 1.    Article Third Trust

BLMIS Account No. 1A0137 is an account held in the name of Article Third Trust U/W Martin J. Joel Jr. Deceased.  Sehgal Decl., Ex. 4, AMF00148484.  Sylvia Ann Joel, Mr. Joel's wife, and Madoff were co-trustees.  Harvey Krauss of the law firm of Snow Becker Krauss PC

was designated as an alternate contact for the account.  Sehgal Decl., Ex. 4, AMF00148518.

Article Third Trust was generally treated as a New York trust created by Mr. Joel's Last Will and

Testament in New York.  *See generally*, ECF No. 3709.

Either Sylvia Joel or a representative from Snow Becker Krauss PC communicated

periodically with personnel at BLMIS in connection with BLMIS Account No. 1A0137.  Sehgal

Decl., Ex. 4, AMF00148486-509.  The Article Third Trust Objecting Claimants, *i.e.*, Patricia

Samuels and Amy Joel,[7] are not mentioned as customers in the BLMIS books and records for

purposes of BLMIS Account No. 1A0137.  Moreover, Patricia Samuels and Amy Joel admitted

that the Article Third Trust "held an account at Bernard L. Madoff Investment Securities LLC . .

. under Account Number A0137" and that their only relationship to the BLMIS Account was by

virtue of being remaindermen of the Article Third Trust.  *See* ECF No. 3709, ¶1 ("Pursuant to the

terms of the [Last Will and Testament of Martin J. Joel, Jr.], Claimants are the remaindermen of

the Article [Third] Trust and therefore have an interest in Account Number A0137.").

None of the Article Third Trust Objecting Claimants responded to discovery served on

them by the Trustee.  By failing to respond to the requests for admissions, each of them admitted

(among other things) that they did not have an account in their name at BLMIS, they never

deposited cash or securities with BLMIS, did not receive investment statements, correspondence

or tax statements from BLMIS, did not have any control, investment discretion or decision-

making power over any investments at BLMIS, did not enter into any contacts with BLMIS, and

their only relationship to BLMIS existed by way of their relationship to the Trust.  *See generally*

Ackerman Decl. ¶¶ 12, 16, Ex. 5;[8] *see also* Fed. R. Civ. P. 36(a)(3).

---

[7] Patricia Samuels and Amy Joel are Martin Joel's daughters.

[8] Article Third Trust Requests for Admissions, Ackerman Decl., Ex. 4 (hereafter "Article Third Trust RFA __").

The Article Third Trust filed a proof of claim for the entire account. Although the amount of money that the Article Third Trust withdrew from the account was less than the amount that was deposited, making the account a net loser, the Article Third Trust claim is subject to section 502(d) of the Bankruptcy Code because there is a pending adversary proceeding for receipt of avoidable transfers. If and when the adversary proceeding is resolved, the Article Third Trust's claim will be finally determined by the Trustee and may be allowed, if appropriate.

### 2. Palmer Family Trust

BLMIS Account No. 1EM144 is an account held in the name of the Palmer Family Trust. Sehgal Decl., Ex. 6, AMF00093565. Boyer Palmer, as trustee of the Palmer Family Trust, opened the account on January 2, 1992. Sehgal Decl., Ex. 6, AMF00093663. According to the trust agreement, Fern C. Palmer, Christine Murray, Bruce Palmer and Boyer H. Palmer were trustees. Sehgal Decl., Ex. 6, AMF00093675. The trust agreement assigned and delivered assets to the trustees in their capacity and they were obligated to "safekeep and manage" those trust assets. *Id.* The trust agreement was governed by the laws of the State of Minnesota. Sehgal Decl., Ex. 6, AMF00093675-81. The BLMIS customer files reflect that virtually all transactions with BLMIS were undertaken by one of the trustees or designated representatives[9] on behalf of the Palmer Family Trust. *See, e.g.*, Sehgal Decl., Ex. 6, AMF00093661.

A number of Palmer Family Trust Objecting Claimants submitted claims with the Trustee, each explaining that their claim was submitted *as a beneficiary* of the Palmer Family

---

[9] Timothy P. Murray and Christine Murray executed transactions on behalf of Palmer Family Trust from December 1997 until August 1998. Sehgal Decl., Ex. 6, AMF00093641. Great Western Bank f/k/a Rushmore Bank & Trust executed transactions on behalf of Palmer Family Trust after August 1998. Sehgal Decl., Ex. 6, AMF00093630.

Trust. *See, e.g.,* Sehgal Decl., Ex. 8, MWPTAP00536657 (claim of Ryan P. Murray).[10]  Thus, the Objecting Claimants are Beneficiaries of the Palmer Family Trust.  *Id.*  They do not articulate, however, how they are customers of BLMIS.

None of the Palmer Family Trust Objecting Claimants responded to discovery served on them by the Trustee.  By failing to respond to the requests for admissions, each of them admitted (among other things) that they did not have an account in their name at BLMIS, they never deposited cash or securities with BLMIS, did not receive investment statements, correspondence or tax statements from BLMIS, did not have any control, investment discretion or decision-making power over any investments at BLMIS, did not enter into any contacts with BLMIS, and their only relationship to BLMIS existed by way of their relationship to the Trust.  *See generally* Ackerman Decl. ¶¶ 12, 16, Ex. 5;[11] *see also* Fed. R. Civ. P. 36(a)(3).

The Palmer Family Trust filed a proof of claim for the entire account.  The Trustee denied the claim in its entirety because based on the Trustee's analysis, the amount of money that the Palmer Family Trust withdrew from the account was greater than the amount that was deposited, making the account a "net winner."  Thus, a determination letter was sent to the Palmer Family Trust denying its customer claim.

### 3.    Maggie Faustin

BLMIS Account No. 1J0034 was opened on December 30, 1994 by Madeline Faustin Joseph.  Sehgal Decl., Ex. 9, AMF00196472.  On December 10, 1996, Madeleine gave her daughter, Maggie Faustin, power of attorney.  Sehgal Decl., Ex. 9, AMF00196457.  Through a trust agreement dated February 2, 1999, Madeleine Faustin Joseph granted certain property,

---

[10] The Palmer Family Trust Objecting Claimants indicated that although the trust began as a Minnesota trust, it was ultimately changed to a South Dakota trust. *See* ECF Nos. 2757, 3193, at 1.

[11] Palmer Family Trust Requests for Admissions, Ackerman Decl., Ex. 8 (hereafter "Palmer Family Trust RFA __").

including BLMIS Account No. 1J0034, to the Madeleine Faustin Joseph Trust, appointing herself and her daughter Maggie trustees. Sehgal Decl., Ex. 9, AMF00196460-63. Then, in December 1999, the name of BLMIS Account 1J0034 was again changed to Maggie Faustin.[12] Despite the name change, the trust appears to have remained in effect. The BLMIS customer files reflect that virtually all transactions with BLMIS were undertaken by Maggie Faustin. *See, e.g.*, Sehgal Decl., Ex. 9, AMF00196438.

In accordance with the trust agreement, upon Madeleine's death the corpus of the Madeleine Faustin Joseph Trust was to be divided into four equal shares, two of which were to be granted Maggie Faustin (50%) and the other two shares to Elsie Placide (25%) and Ronald Joseph (25%) (the "Maggie Faustin Objecting Claimants") each. Sehgal Decl., Ex. 9, AMF00196460. The trust was governed by the laws of the State of New York. Sehgal Decl., Ex. 9, AMF00196462.

In the Maggie Faustin Objecting Claimants' objection, they claim that Maggie Faustin had an account with BLMIS and that on February 25, 2004 Marie Elsie Joseph and Ronald Joseph sued Maggie Faustin for fraud, conversion, duress, undue influence, breach of contract, breach of fiduciary duty, and breach of trust.[13] *See* ECF No. 2842, at 1.

There is no evidence in the Maggie Faustin Objecting Claimants' submission that they are customers. Objecting Claimants rely on a settlement agreement by and among Ronald Joseph, Marie Elsie Joseph, and Maggie Faustin requiring the transfer of BLMIS Account No.

---

[12] *See* Seghal Decl., Ex. 9, AMF00196440.

[13] It appears that a lawsuit was commenced in Supreme Court Kings County against Maggie Faustin by Ronald Joseph and Elsie (the Maggie Faustin Objecting Claimants). Sehgal Decl., Ex. 9, AMF00196426. BLMIS was subpoenaed for documents and according to a letter dated July 28, 2004 to counsel for the Objecting Claimants, BLMIS complied by sending documents purportedly in connection with the Maggie Faustin account. Sehgal Decl., Ex. 9, AMF00196423. On September 29, 2004, counsel for Maggie Faustin Objecting Claimants informed BLMIS that the Supreme Court of Kings County had entered an order "freezing" all of Maggie Faustin's accounts. Sehgal Decl., Ex. 9, AMF00196387.

1J0034 to Ronald Joseph and Marie Elsie Joseph as of May 10, 2010, eighteen months after the Filing Date.  Ackerman Decl., Ex. 3, MCMDP_00000694.  Neither their objections, nor their responses to the Trustee's discovery requests include any evidence that they had any control over the account prior to the Filing Date and the customer file for BLMIS Account 1J0034 reflects that nearly all transactions with BLMIS were undertaken by Maggie Faustin.  Sehgal Decl., Ex. 9, AMF00196438.

In their response to the Trustee's Requests for Admission, the Objecting Claimants admit only that they were "beneficiaries of a trust and the funds of the trust [were] held at BLMIS" and that the grantor received the correspondence, investment statements, and tax statements from BLMIS.  *See generally* Ackerman Decl. ¶¶ 12, 13, Ex. 2.[14]

The Maggie Faustin account filed a proof of claim for the entire account.  The Trustee denied the claim in its entirety because, based on the Trustee's analysis, the amount of money that the Maggie Faustin account withdrew from the account was greater than the amount that was deposited, making the account a "net winner."  Thus, a determination letter was sent, denying the customer claim.

### 4.    Estate of Theodore Schwartz

BLMIS Account No. 1S0286 is an account held in the name of Theodore Schwartz. Sehgal Decl., Ex. 11, AMF00210951.  Theodore Schwartz died on or about April 10, 1999. Sehgal Decl., Ex. 11, AMF00210984.  A copy of Theodore Schwartz's Last Will and Testament was included in the BLMIS books and records.  Sehgal Decl., Ex. 11, AMF00210989-96. Michael Goldstein, Theodore Schwartz's stepson, was the executor and conducted transactions on behalf of the account.  Sehgal Decl., Ex. 11, AMF00210953-79; *see also* Sehgal Decl., Ex.

---

[14] Maggie Faustin Requests for Admissions, Ackerman Decl., Ex. 2 (hereafter "Maggie Faustin RFA __").

11, AMF00210991.  Leonard P. Schwartz, Theodore Schwartz's son, was to be the successor

executor-trustee ("Theodore Schwartz Objecting Claimant").  Sehgal Decl., Ex. 11,

AMF00210991.  Leonard indicated in his objection that he was "not a customer because the

account was in [his] father's name" but that it was his father's intent that he receive the balance

of his estate (purportedly through a trust).  *See* ECF No. 3232, 3233.  Theodore Schwartz's Last

Will and Testament appears to have been governed by the laws of the State of New York.

Sehgal Decl., Ex. 11, AMF00210990-96.

Leonard P. Schwartz did not respond to discovery.  By failing to respond to the requests

for admissions, Leonard P. Schwartz admitted (among other things) that he did not have an

account in his name at BLMIS, he never deposited cash or securities with BLMIS, did not

receive investment statements, correspondence or tax statements from BLMIS, did not have any

control, investment discretion or decision-making power over any investments at BLMIS, did not

enter into any contacts with BLMIS, and his only relationship to BLMIS existed by way of his

relationship to the Estate of Theodore Schwartz.  *See generally* Ackerman Decl. ¶¶ 12, 16, Ex.

5;[15] *see also* Fed. R. Civ. P. 36(a)(3).

The Estate of Theodore Schwartz filed a proof of claim for the entire account.  The

Trustee denied the claim in its entirety because based on the Trustee's analysis, the amount of

money that the Estate of Theodore Schwartz withdrew from the account was greater than the

amount that was deposited, making the account a "net winner."  Thus, a determination letter was

sent to the Estate of Theodore Schwartz denying its customer claim.

---

[15] Estate of Theodore Schwartz Requests for Admissions, Ackerman Decl., Ex. 7 (hereafter "Estate of Theodore Schwartz Partnership RFA __").

5.    **Miller Trust Partnership**

BLMIS Account No. 1ZA260 is an account that was opened by Martin Miller and Alice

G. Miller on December 14, 1992 as trustees and settlors of the Miller Living Trust. Sehgal Decl.,

Ex. 13, AMF00006964-71.   The first and last page of the Miller Living Trust agreement was

included in the BLMIS books and records, which reflects that Martin Miller and Alice G. Miller

were, in fact, the settlors and trustees of the trust.  Sehgal Decl., Ex. 13, AMF00006960-61.   A

letter to BLMIS dated November 27, 1997 indicated that Mrs. Miller passed away and that the

account would change to a partnership account.   Sehgal Decl., Ex. 13, AMF00006938.   On

December 24, 1999, Martin Miller changed the account name to the Miller Trust Partnership.

The partnership was governed by California state law.  *See* ECF No. 3140, at 2.   Mr. Miller's

son, Steve Miller, took over day-to-day management of the account.  The Schedule K-1 filed by

a number of the partners indicated in their claims to the Trustee that the Miller Trust Partnership

is   a   general   partnership.    *See, e.g.,*   Sehgal   Decl.,   Ex.   15,   MWPTAP00465053-

MWPTAP00465055.[16]   The  Miller Trust Partnership Objecting Claimants did not articulate in

their objections how they are customers of BLMIS other than being beneficiaries of the Miller

Living Trust or partners of the Miller Trust Partnership.  *See* ECF Nos. 688, 3140.

None of the Miller Trust Partnership Objecting Claimants responded to discovery.  By

failing to respond to the requests for admissions, each of them admitted (among other things) that

they did not have an account in their name at BLMIS, they never deposited cash or securities

with BLMIS, did not receive investment statements, correspondence or tax statements from

BLMIS, did not have any control, investment discretion or decision-making power over any

---

[16] Under the terms of the customer agreements, the BLMIS account was governed by the laws of the State of New York. Sehgal Decl., Ex. 13, AMF00006968.  The partnership was governed by the laws of the State of California. Sehgal Decl., Ex. 13, AMF00006947.

investments at BLMIS, did not enter into any contacts with BLMIS, and their only relationship to BLMIS existed by way of their relationship to the Trust. *See generally* Ackerman Decl. Ex. ¶¶ 12, 16, Ex. 5;[17] *see also* Fed. R. Civ. P. 36(a)(3).

The Miller Trust Partnership filed a customer claim for its account. The Trustee allowed the claim in the amount of $185,000.00 and a determination letter was sent to the Miller Trust Partnership allowing its customer claim. The Miller Trust Partnership has been fully satisfied.

## C.    THE BLMIS ACCOUNT RECORDS

The Trusts each maintained an account in its own name (each, an "Account" and collectively, the "Accounts") with BLMIS. The Objecting Claimants did not.[18] The records of BLMIS reflect money deposited or withdrawn by and on behalf of the Trusts, and not by the Objecting Claimants individually. *See* Sehgal Decl., Exs. 4, 6, 9, 11, 13. Almost all of the Objecting Claimants admit that BLMIS sent account statements and related communications to the Trusts, not the Objecting Claimants.[19] The BLMIS customer files for these Accounts do not reference the particular interests held by Objecting Claimants in the Trusts. *See id.*

Because the Trusts each maintained an Account at BLMIS, and made deposits into and withdrawals from that Account, the books and records of BLMIS reflect the amounts owing and owed by the BLMIS estate for that Account. The books and records of BLMIS do not, in contrast, reflect deposits or withdrawals directly to or from BLMIS by the individual Objecting

---

[17] Miller Trust Partnership Requests for Admissions, Ackerman Decl., Ex. 6 (hereafter "Miller Trust Partnership RFA __").

[18] Although some Objecting Claimants may have had a BLMIS account in their name, those accounts are not the subject of this Motion.

[19] Although the Maggie Faustin Objecting Claimants indicate in their discovery responses that they received correspondence, investment statements, and tax statements directly from BLMIS, *see* Maggie Faustin RFA 3, 8, 9, there is no indication in the books and records they received any such documents contemporaneous to their investment. Instead, it appears that BLMIS produced documents to the Maggie Faustin Objecting Claimants only after a subpoena was served on or about October 21, 2005 in connection with litigation between the Maggie Faustin Objecting Claimants and Maggie Faustin. Sehgal Decl., Ex. 9, AMF00196426.

Claimants with regard to any Trust's BLMIS Account.  They also do not show what amounts individual Objecting Claimants invested in, or withdrew from, the Trusts.  *See* Sehgal Decl. Exs. 4, 6, 9, 11, 13.  It was each Trust that had the right to demand, on behalf of the Trust, return of the Trust property entrusted to its Account, and each Trust that is accordingly entitled to a customer claim to the extent of its net equity.

## D.    THE CLAIMS

The claims at issue in this Motion involve investments in the Trusts.  Sehgal Decl. Exs. 1-3. The Objecting Claimants, the eighteen (18) claims filed by them, and the objections to determination of those claims, are specifically identified in Exhibits 2 and 3 to the Sehgal Declaration.  The Trustee denied their claims because they lacked BLMIS accounts and they were not customers of BLMIS.  Collectively, the Objecting Claimants filed seven (7) docketed objections to the Trustee's determination of their claims.  Sehgal Decl. Exs. 1-3. This Motion addresses all objections regarding the specified claims by Objecting Claimants who are identified on Exhibit 2 of the Sehgal Declaration.

Since receiving the seven (7) docketed objections to the claims determinations, the Trustee served discovery on each of the Objecting Claimants seeking to determine their basis for claiming customer status, and inquiring into deposits, payments, communications, account openings, and their relationship with the account holder.  Only the Maggie Faustin Objecting Claimants responded, and provided no persuasive evidence of their entitlement to customer status under SIPA.  *See* Ackerman Decl., ¶12, Exs. 2-5.

## E.    THE CUSTOMER DECISIONS

There have been a plethora of prior decisions in this proceeding dealing with whether investors in BLMIS accountholders could be treated as "customers" under SIPA; all of the decisions said they could not.

1.    **The Initial Feeder Fund Motion**

The Trustee's first motion regarding the definition of "customer" under SIPA was the Trustee's Motion To Affirm Trustee's Determinations Denying Claims of Claimants Without BLMIS Accounts In Their Names, Namely, Investors in Feeder Funds, filed on June 11, 2010, ECF No. 2416 (the "Initial Feeder Fund Motion").    On June 28, 2011, this Court issued its memorandum decision and order affirming the Trustee's denial of the claims.    *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff Inv. Sec. LLC),* 454 B.R. 285 (Bankr. S.D.N.Y. 2011), *aff'd sub nom. Aozora Bank Ltd. v. Sec. Inv'r Prot. Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*, 480 B.R. 117 (S.D.N.Y. 2012), *aff'd sub nom. Kruse v. Sec. Inv'r Prot. Corp. (In re Bernard L. Madoff Inv. Sec. LLC),* 708 F.3d 422 (2d Cir. 2013).

The Court found that, in light of the plain language of SIPA and relevant case law, the claimants in the Initial Feeder Fund Motion did not qualify as "customers" under SIPA.    *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff Inv. Sec. LLC),* 454 B.R. at 290.    The Court held that the claimants invested in, not through, those feeder funds, and had no individual accounts at BLMIS.    *Id.* at 297.    It was the feeder funds that entrusted their monies with BLMIS for the purpose of trading or investing in securities—the touchstone of "customer" status—whereas the claimants purchased interests in the feeder funds.    *Id.* at 299. The Court held that absent a direct relationship with BLMIS, the claimants sought a definition of "customer" that stretched the term beyond its limits.    *Id.* at 302.

After the District Court affirmed, *Aozora Bank Ltd.*, 480 B.R. 117 (S.D.N.Y. 2012), the claimants appealed to the Second Circuit, which also affirmed.    The Second Circuit confirmed that "[j]udicial interpretations of 'customer' status support a narrow interpretation of the SIPA's provisions."    *Kruse v. Sec. Inv'r Prot. Corp.*, 708 F.3d at 426 (quoting *Stafford v. Giddens (In re New Times Sec. Servs., Inc.)*, 463 F.3d 125, 127 (2d Cir. 2006)), explaining that "the critical

aspect of the 'customer' definition" was "the entrustment of cash or securities to the broker-dealer for the purposes of trading securities." *Kruse*, 708 F.3d at 426 (citing *In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d at 236). The claimants failed to meet this fundamental requirement because the money sent to BLMIS belonged to the accountholders, not to the individual claimants, and the individual claimants therefore failed to establish that they had entrusted cash or securities to BLMIS. *Id.* at 427. The Second Circuit also found that the individual claimants did not exhibit other indicia of customer status in their dealings (or lack of dealings) with BLMIS, including that they did not exert any control over the accounts at issue and that they were not reflected in BLMIS records. *Id.* at 426-27.

The Second Circuit held that the interests "sold by the Feeder Funds to investors . . . did not confer an ownership interest in money that the Feeder Funds ultimately invested in BLMIS." Thus, "regardless of their intent, appellants never entrusted their cash or securities to BLMIS and, thus, fail to satisfy this 'critical aspect of the "customer" definition.'" *In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d at 236 (internal quotation marks omitted); *see Sec. Inv'r Prot. Corp. v. Morgan, Kennedy & Co.*, 533 F.2d 1314, 1318 (2d Cir. 1976); *see also Kruse*, 708 F.3d at 427-28 (citing 1–12 *Collier on Bankruptcy* ¶ 12.12 (16th ed. 2012) ("[A] claimant will not be entitled to customer protection under SIPA unless the debtor actually receives the claimant's cash or securities; the debtor must actually have come into possession or control.")).

## 2.    The ERISA Motion

While the appeals of the Feeder Fund Decision were pending, the Trustee also filed a motion to address arguments that were raised by claimants without BLMIS accounts who were benefit plans or benefit plan participants and who sought to use the Employee Retirement

Income Security Act ("ERISA") as a basis for determining their customer status.[20]  *See* ECF No.

4521.  The District Court withdrew the reference and granted the motion.

The District Court noted that the first two of the three ways to qualify as a "customer"

under SIPA § 78*lll*(2), "presume that a customer must have a securities account with the debtor,"

and that the claimants also did not qualify under the third method of having "deposited cash with

the debtor for the purpose of purchasing securities."  *Sec. Inv'r Prot. Corp. v. Jacqueline Green*

*Rollover Account*, Nos. 12 Civ. 1039 (DLC), 12 Civ. 1139 (DLC), 2012 WL 3042986 *3

(S.D.N.Y. July 25, 2012).  That was so because none of the claimants "owned any cash deposited

with BLMIS.  Rather, . . . in each case this cash was owned by the third-party entity in which the

claimant invested, and which had a BLMIS account in its name." *Id.* at *5.  The District Court

also rejected arguments that fiduciary responsibilities could suffice to create a "customer"

relationship.  *Id*. at *12.

### 3.    <u>Other Customer Motions</u>

Further SIPA "customer" motions followed, each of which was determined in favor of

the Trustee.  On August 21, 2013, the Court issued its Bench Memorandum Granting Trustee's

Second Motion to Affirm Trustee's Determinations Denying Claims of Claimants Who Invested

in Certain Feeder Funds and Did Not Have BLMIS Accounts in Their Names, ECF No. 5450

("the Second Feeder Fund Decision").  Noting that prior decisions established that the burden is

on the claimant to established that he is a "customer" entitled to SIPA protection, and that such

showing is not easily met, this Court concluded that the claimants had failed to establish their

"customer" status.  The Court noted that "they had no securities accounts at BLMIS, were not

known to BLMIS, lacked privity and any financial relationship with BLMIS, lacked property

---

[20] Prior to the hearing on the Initial Feeder Fund Motion, the Court had removed from the scope of the motion the
question of whether ERISA affects "customer" status under SIPA.

interest in any feeder fund account assets at BLMIS, entrusted no cash or securities to BLMIS, had no investment discretion over feeder fund assets invested with BLMIS, received no accounts statements or other communications from BLMIS and had no transactions reflected on the books and records at BLMIS." Second Feeder Fund Decision at 4.

On August 22, 2014, this Court issued its Memorandum Decision Granting Motion to Affirm Trustee's Determinations Denying Claims of Claimants Who Invested in Certain ERISA Plans. *See generally Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff)*, 515 B.R. 161 (Bankr. S.D.N.Y. 2014) ("ERISA Claimant Decision"). Again holding that the burden is on the claimant to establish that he is a customer, this Court concluded that a claimant who wished to qualify as a person who has deposited cash with the debtor for the purposes of purchasing securities must show that she entrusted her "own assets directly through an account maintained in her own name rather than indirectly through a fund that then entrusted the fund's assets through an account maintained in the fund's name." *Id.* at 168 (internal citations omitted). This Court further noted that "not every victim of a broker-dealer's fraud is a "customer" and that even the fact that a claimant exercised some control over her own investments in the fund or the fund's investments in BLMIS was not sufficient to meet "the narrow definition of customer under SIPA." *Id.*

On February 25, 2015, this Court read into the record a decision granting Trustee's Motion and Memorandum to Affirm His Determinations Denying Claims of Claimants Holding Interests in S&P or P&S Associates, General Partnerships ("S&P Decision"). This Court explained that the indicia of customer status are: (i) a direct financial relationship with BLMIS; (ii) a property interest in the funds invested directly with BLMIS; (iii) securities accounts with BLMIS; (iv) control over the account holders' investments with BLMIS; and (v) identification of

16

the alleged customer in BLMIS's books and records.  Hr'g. Transcript, *S&P Decision*, at p. 30,

Ackerman Decl. Ex. 11.  The Court held that the objecting partners failed to sustain their burden

of proving that they are customers of BLMIS and an order granting the Trustee's motion was

entered.  *Id.* at 36; *see also* ECF No. 9450.  Since the S&P Decision, there have been numerous

more motions to the Trustee's determination each of which was granted by the Court.[21]

## ARGUMENT

To be a "customer" under SIPA, an investor must have "a claim on account of securities

received, acquired, or held by the debtor in the ordinary course of its business as a broker or

dealer from or for the securities accounts of such person," including "any person who has

deposited cash with the debtor for the purpose of purchasing securities." SIPA § 78*lll*(2).[22]  Thus,

---

[21] *See* Order Approving Trustee's Motion To Affirm His Determinations Denying Claims of Claimants Holding Interests In Peerstate Equity Fund, L.P., ECF No. 9883 (Apr. 27, 2015); *see* Order Approving Trustee's Motion And To Affirm His Determinations Denying Claims Of Claimants Holding Interests In The Lazarus-Schy Family Partnership, The Schy Family Partnership, Or The Lazarus Investment Group, ECF No. 10010 (May 18, 2015); Order Approving Trustees Motion To Affirm His Determinations Denying Claims Of Claimants Holding Interests In Epic Ventures, LLC, ECF No. 10267 (June 25, 2015); Order Approving Trustees Motion To Affirm His Determinations Denying Claims Of Claimants Holding Interests Partners Investment Co., Northeast Investment Club, And Martin R. Harnick & Steven P. Norton, Partners, ECF No. 10894 (July 29, 2015); Order Approving Trustees Motion To Affirm His Determinations Denying Claims Of Claimants Holding Interests The Whitman Partnership, The Lucky Company, The Petito Investment Group, And The Harwood Family Partnership, ECF No. 11145 (Aug. 26, 2015); Order Approving Trustees Motion To Affirm His Determinations Denying Claims Of Claimants Holding Interests 1973 Masters Vacation Fund, Bull Market Fund, And Strattham Partners, ECF No. 11920 (Oct. 29, 2015); Order Approving Trustees Motion To Affirm His Determinations Denying Claims Of Claimants Holding Interests in Black River Associates LP, MOT Family Investors, LP, Rothschild Family Partnership, and Ostrin Family Partnership, ECF No. 12757 (Mar. 3, 2016).

[22] The definition applicable to this SIPA proceeding is:

(2) CUSTOMER

The term "customer" of a debtor means any person (including any person with whom the debtor deals as principal or agent) who has a claim on account of securities received, acquired, or held by the debtor in the ordinary course of its business as a broker or dealer from or for the securities accounts of such person for safekeeping, with a view to sale, to cover consummated sales, pursuant to purchases, as collateral security, or for purposes of effecting transfer. The term "customer" includes any person who has a claim against the debtor arising out of sales or conversions of such securities, and any person who has deposited cash with the debtor for the  purpose of purchasing securities, but does not include—

(A) any person to the extent that the claim of such  person arises out of transactions with a foreign subsidiary of a member of SIPC; or

to be a "customer" an investor must have entrusted cash or securities with the debtor for the purpose of trading or investing in securities.  In *Kruse*, the Second Circuit found that investors who bought interests in a limited partnership that invested partnership funds via the partnership's own BLMIS account "never entrusted *their* cash or securities to BLMIS and, thus, fail[ed] to satisfy this 'critical aspect of the "customer" definition'" regardless of their intent.  708 F.3d at 427 (citing *In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d at 236).  Similarly, the Second Circuit in *In re New Times* held that "the critical aspect of the 'customer' definition is the entrustment of cash or securities to the broker-dealer for the purposes of trading securities."  463 F.3d at 128 (quoting *Appleton v. First Nat'l Bank of Ohio*, 62 F.3d 791, 801 (6th Cir. 1995)); *see also In re Adler, Coleman Clearing Corp.*, 216 B.R. 719, 724-25 (Bankr. S.D.N.Y. 1998) ("The term [customer] refers to those who entrust cash or securities to broker-dealers for the purpose of trading and investing in the securities market.").  The Second Circuit recently further upheld this principle in *CarVal UK Ltd. v. Giddens (In re Lehman Bros., Inc.)*, 791 F.3d 277 (2d Cir. 2015), concluding that the "critical aspect of the 'customer' definition is the entrustment of cash or securities to the broker-dealer for the purposes of trading securities."  *Id.* at 282 (quoting *In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d at 236).  The Trustee is responsible for discharging obligations of the debtor to customers with such claims "insofar as such obligations are ascertainable from the books and records of the debtor or are otherwise established to the satisfaction of the trustee."  SIPA § 78fff-2(b).

---

(B) any person to the extent that such person has a claim for cash or securities which by contract, agreement, or understanding, or by operation of law, is part of the capital of the debtor, or is subordinated to the claims of any or all creditors of the debtor, notwithstanding that some ground exists for declaring such contract, agreement, or understanding void or voidable in a suit between the claimant and the debtor.

SIPA § 78*lll*(2); *see* 15 U.S.C. § 78*lll*(2) (West 2009). After the start of this case, the "customer" definition was slightly reorganized and amended in a manner irrelevant to the present issues by the Dodd-Frank Wall Street Reform and Consumer Protection Act. Pub. L. No. 111-203, § 983(b), 124 Stat. 1931 (2010); *see also In re Lehman Bros. Inc.*, 462 B.R. 53, n.9 (Bankr. S.D.N.Y. 2011).

The Objecting Claimants' investments in the Trusts do not meet the requirements for "customer" status outlined in the seminal Second Circuit decision *Morgan, Kennedy* and reaffirmed in *Kruse*, 708 F.3d at 427. In *Morgan Kennedy*, the Second Circuit rejected the argument that the beneficial owners of the account holder were the "customers" under SIPA, citing the facts that: (1) title to the trust assets was held by the account holder, not the beneficiaries; (2) the securities account with the debtor was in the name of the account holder, not the beneficiaries; (3) the account holder had the exclusive power to entrust the assets to the debtor; (4) the beneficiaries were unknown to the broker; and (5) the beneficiaries had no legal capacity in which they could deal with the debtor. 533 F.2d at 1318.

The Objecting Claimants' circumstances are little different than those of the claimants in *Morgan Kennedy*, and do not show the hallmarks of customer status discussed in the *S&P Decision*. Hr'g. Transcript, *S&P Decision*, at p. 30, Ackerman Decl. Ex. 11. To the extent the Objecting Claimants invested indirectly with BLMIS, they entrusted their money to the Trusts, not BLMIS. The Objecting Claimants lacked a direct financial relationship with BLMIS. The money entrusted to BLMIS was the property of the Trusts, not the Objecting Claimants. The BLMIS Accounts were in the names of the Trusts, not in the individual names of Objecting Claimants.

The individual interests of Objecting Claimants were not identified in BLMIS' books and records. The representatives who dealt with BLMIS were like the trustees who acted for the trust account in *Morgan Kennedy*, and were no more customers in their individual capacity than the trustees were. 533 F.2d at 1318, 1320-21 (notwithstanding that the trust account was in the name of the trustees, "[a]ny suggestion that each of the three Trustees has a separate customer claim against the debtor is untenable" because the Trustees together managed for the trust, "which was

19

the true customer of the broker-dealer . . . ."; similarly, noting that under the SIPA Rules, individual coverage for multiple people who each own some portion of, or interest in, an account is "explicitly forbidden".).

Only the Trusts, not the Objecting Claimants, entrusted their cash or securities to BLMIS, and the Objecting Claimants thus fail to satisfy this "critical aspect of the 'customer' definition." *Kruse*, 708 F.3d at 426-27 (citing *In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d at 236); *accord ERISA Claimant Decision,* 515 B.R. at 169. Whether the Objecting Claimants intended the Trusts to invest with BLMIS is irrelevant under SIPA. *See Kruse*, 708 F.3d at 426-27; *ERISA Claimant Decision*, 515 B.R. at 169-70.

The funds that the Objecting Claimants contributed to the Trusts, if any, and anything that the Trusts purchased with those funds, belongs to the relevant Trust and not to the Objecting Claimants. Under the relevant states' laws, the Trusts' BLMIS accounts were property of the Trusts and not the Objecting Claimants.[23]

In addition, under California partnership law, the Objecting Claimants did not have any property rights in the BLMIS account.[24] Like the objecting claimants dealt with by prior

---

[23] N.Y. EST. POWERS & TRUSTS LAW § 7-2.1 (explaining that "an express trust vests in the trustee the legal estate, subject only to the execution of the trust, and the beneficiary does not take any legal estate in the property but may enforce the trust"); *see also Cohn v. U.S. Trust Co.*, 512 N.Y.S.2d 37, 37 (N.Y. App. Div. 1st Dept. 1987) (explaining that "beneficiaries of a trust do not take a legal estate in the trust property"); *see also Norwest Bank Minnesota, N.A. v. Ode*, 615 N.W.2d 91, 95 (Minn. App. 2000) (analyzing Minnesota law and explaining that "[a]t law a trustee is regarded as owner of the trust property with 'all the rights and subject to all the liabilities of ownership.'") (citations omitted); *see also* MINN. STAT. ANN. § 501C.0810 ("A trustee shall keep trust property separate from the trustee's own property."); MINN. STAT. ANN. § 501C.0809 ("A trustee shall take reasonable steps to take control of and protect the trust property . . . ."); S.D. CODIFIED LAWS § 55-1A-5 ("A trustee may collect, hold, and retain trust assets until, in his judgment, disposition of the assets should be made, without regard to any effect the retention may have upon the diversification of the trust estate. Trust property may be retained even though it includes an asset in which its trustee is personally interested.").

[24] *See* CAL. CIV. PROC. CODE ANN. § 688. As discussed above, the Miller Living Trust changed to the Miller Trust Partnership. "[A] limited partner has no property right in the partnership assets." *Alley v. Clark*, 71 F. Supp. 521, 526 (E.D.N.Y. 1947); *see also Newburger, Loeb & Co. v. Gross*, 563 F.2d 1057, 1076 (2d Cir. 1977) (explaining that limited partners have no property right in the partnership assets). "All property originally brought into the partnership stock or subsequently acquired . . . on account of the partnership is partnership property" and allowing for title, even of real property, to be acquired and passed in the partnership name. N.Y. PARTNERSHIP LAW § 12; *see*

customer opinions, the Objecting Claimants do not individually own the assets that the Trusts invested with BLMIS. Instead, the assets are collectively owned by the Trusts themselves.

It was the Trusts, not the Objecting Claimants that entrusted assets to BLMIS for the purpose of purchasing securities. Each Trust, through its representative, had the right to direct the investment of those assets on behalf of the Trust, and to withdraw property from its Account on behalf of the Trust. Each Trust, not the Objecting Claimants, was the customer for its respective Account under SIPA.

Because BLMIS did not perform a custodial function on behalf of the individual Objecting Claimants, the Objecting Claimants have neither "customer" claims nor individual net equity. The purpose of SIPA, a statute intended to deal with broker insolvency, is "to expedite the return of customer property" by "protecting the *custody* function of brokers," according to a recent Second Circuit decision that declined to permit interest or time-based damages for customer claims under SIPA. *Sec. Inv'r Prot. Corp. v. 2427 Parent Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*, 779 F.3d 74, 80 (2d Cir. 2015). Customers share in the fund of customer property ratably, according to each customer's "net equity." *Id.* at 77, 81. The definition of net equity is limited by the fundamental SIPA design "to return customer property to customers," *id.* at 77, whether in cash or in actual securities. *Id.* at 80.[25]

---

*also* N.Y. PARTNERSHIP LAW § 51(2)(a) ("A partner, subject to . . . any agreement between the partners, has an equal right with his partners to possess specific partnership property for partnership purposes; but he has no right to possess such property for any other purpose without the consent of his partners."); N.Y. PARTNERSHIP LAW § 51(2)(b) ("A partner's right in specific partnership property is not assignable except in connection with the assignment of the rights of all the partners in the same property."); *see also La Russo v. Paladino*, 109 N.Y.S.2d 627, 630 (N.Y. Sup. Ct. 1951) ("[A] partner has no personal right in any specific partnership property" and on the partnership's dissolution by the death of a partner, "the only property right which the survivor of such partner possesses is a claim for an accounting."), *Weisinger v. Rae*, 188 N.Y.S.2d 10, 19-20 (N.Y. Sup. Ct. 1959) ("A partner has no personal right in any specific partnership property," therefore, "partnership property is not subject to attachment or levy by a creditor of an individual partner.").

[25] The definition of Net Equity at SIPA § 78 *lll*(11) begins, "The term 'net equity' means the dollar amount of the account or accounts of a customer, to be determined by—

The Second Circuit stated in *2427 Parent Corp.*, "[w]e . . . previously concluded that in [the BLMIS] case net equity . . . should be determined based on customers' actual deposits and withdrawals.  These deposits, net withdrawals, constitute customer property here."  *Id.* at 81 (citations omitted).  The books and records of BLMIS show that Objecting Claimants made no individual deposits in or withdrawals from BLMIS, and those who interacted with BLMIS as to the Accounts did so solely on the Trusts' behalf.  Sehgal Decl., Exs. 4, 6, 8, 9.  The Objecting Claimants accordingly have no net equity and are not "customers" within the meaning of SIPA.

Each of the Objecting Claimants was served with requests for admission, interrogatories, and requests for production.  With the exception of the Maggie Faustin Objecting Claimants, none of the Objecting Claimants responded.  Those Objecting Claimants who failed to respond to the requests for admission admitted them.  Fed. R. Civ. P. 36(a)(3).  The admissions, both deemed and actual, show that Objecting Claimants lack any relationship with BLMIS that fits the *Morgan Kennedy* criteria and that their claims of "customer" status are baseless.  They admitted that: (i) the relevant Account was not titled in their name;[26] (ii) that they never received correspondence, investment statements, or tax statements in their names from BLMIS in connection with the Trust;[27] (iii) that they never paid cash directly to BLMIS for credit to an account in their names;[28] (iv) never deposited securities directly with BLMIS;[29] (v) that they

---

(A) Calculating the sum which would have been owed by the debtor to such customer if the debtor had liquidated . . . on the filing date, all securities positions of such customer . . . ."

[26] *See, e.g.,* Article Third Trust RFA 1-2; Palmer Family Trust RFA 1-2; Theodore Schwartz RFA 1-2; Miller Trust Partnership RFA 1-2.

[27] *See, e.g.,* Article Third Trust RFA 3, 8-9; Palmer Family Trust RFA 3, 8-9; Theodore Schwartz RFA 3, 8-9; Miller Trust Partnership RFA 3, 8-9.

[28] *See, e.g.,* Article Third Trust RFA 4; Palmer Family Trust RFA 5; Theodore Schwartz RFA 5; Miller Trust Partnership RFA 5.

[29] *See, e.g.,* Article Third Trust RFA 5; Palmer Family Trust RFA 4; Theodore Schwartz RFA 4; Miller Trust Partnership RFA 4.

never directly withdrew or received funds from BLMIS;[30] (vi) that their only relationship to BLMIS existed by way of their relationship to the Account holder;[31] (vii) that they never entered into any contracts in their names with BLMIS;[32] and (viii) that they did not have any control, investment discretion or decision-making power over any investment assets at BLMIS.[33]

Only the Maggie Faustin Objecting Claimants responded. Ronald Joseph and Marie Elsie Joseph repeatedly assert in their response to requests for admission "that they are beneficiaries of a trust and the funds of the trust are held at BLMIS." *See* Ackerman Decl. Ex. 2, MCMDR_00000052-MCMDR_00000053. Yet, there is no indication in their production or responses to the Trustee's discovery that they were considered customers according to BLMIS's books and records. Although the Maggie Faustin Objecting Claimants indicate that they received correspondence, tax statements, and account statements, it appears that the Maggie Faustin Objecting Claimants received these documents in the context of a litigation with Maggie Faustin, and not in the context of the ordinary course of the Maggie Faustin account.

As the Second Circuit has explained, "[j]udicial interpretations of 'customer' status support a narrow interpretation of the SIPA's provisions." *Kruse*, 708 F.3d at 426 (citing *In re New Times Sec. Servs., Inc.,* 463 F.3d at 127). Customer status under SIPA is narrowly construed and is the burden of the claimant to establish. *See ERISA Claimant Decision,* 515 B.R. at 166 ("The burden is on the claimant to establish he is a 'customer' entitled to SIPA protection,

---

[30] *See, e.g.,* Article Third Trust RFA 6-7; Palmer Family Trust RFA 6-7; Theodore Schwartz RFA 6-7; Miller Trust Partnership RFA 6-7.

[31] *See, e.g.,* Article Third Trust RFA 11; Palmer Family Trust RFA 11; Theodore Schwartz RFA 11; Miller Trust Partnership RFA 11.

[32] . *See, e.g.,* Article Third Trust RFA 10; Palmer Family Trust RFA 10; Theodore Schwartz RFA 10; Miller Trust Partnership RFA 10.

[33] *See, e.g.,* Article Third Trust RFA 12; Palmer Family Trust RFA 12; Theodore Schwartz RFA 12; Miller Trust Partnership RFA 12.

and such a showing 'is not easily met.'"); *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 454 B.R. at 294 (citing *In re Klein, Maus & Shire, Inc.*, 301 B.R. 408, 418 (Bankr. S.D.N.Y. 2003)); *see also Mishkin v. Siclari (In re Adler, Coleman Clearing Corp.)*, 277 B.R. 520, 557 (Bankr. S.D.N.Y. 2002) ("[I]it is well-established in the Second Circuit that a claimant bears the burden of proving that he or she is a 'customer' under SIPA.").   The Objecting Claimants have not met this burden. Thus, under Second Circuit precedent, the Objecting Claimants are not SIPA customers.

*Intentionally Left Blank.*

## **CONCLUSION**

For all of the foregoing reasons, the Court should affirm the Trustee's determination denying the claims of the Objecting Claimants, overrule their objections, expunge the claims, and grant such other and further relief as the Court deems just and proper.

Dated: New York, New York
       March 21, 2016

Respectfully submitted,

*/s/ David J. Sheehan*
David J. Sheehan
Email: dsheehan@bakerlaw.com
Nicholas J. Cremona
Email: ncremona@bakerlaw.com
Jorian L. Rose
Email: jrose@bakerlaw.com
Amy E. Vanderwal
Email : avanderwal@bakerlaw.com
George Klidonas
Email : gklidonas@bakerlaw.com
Stephanie A. Ackerman
Email : sackerman@bakerlaw.com
**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, New York  10111
Tel: (212) 589-4200
Fax: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee for the
Substantively Consolidated SIPA Liquidation
of Bernard L. Madoff Investment Securities LLC
and the Estate of Bernard L. Madoff*