**BAKER & HOSTETLER LLP**  
45 Rockefeller Plaza  
New York, New York  10111  
Telephone: (212) 589-4200  
Facsimile: (212) 589-4201  
David J. Sheehan  
Email: dsheehan@bakerlaw.com  
Eric R. Fish  
Email: efish@bakerlaw.com  
Esterina Giuliani  
Email: egiuliani@bakerlaw.com  
Keith R. Murphy  
Email: kmurphy@bakerlaw.com  

Hearing Date:  April 27, 2016 at 10:00 a.m.  
Objection Deadline:  April 20, 2016

*Attorneys for Irving H. Picard, Esq., Trustee*  
*for the Substantively Consolidated SIPA Liquidation*  
*of Bernard L. Madoff Investment Securities LLC*  
*and the Estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**  
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>  Plaintiff-Applicant<br>  v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>  Defendant.<br>In re:<br><br>BERNARD L. MADOFF,<br><br>  Debtor. | Adv. Pro. No. 08-01789 (SMB)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |

**MOTION FOR ENTRY OF ORDER PURSUANT TO SECTION 105(a)**  
**OF THE BANKRUPTCY CODE AND RULES 2002 AND 9019 OF THE**  
**FEDERAL RULES OF BANKRUPTCY PROCEDURE APPROVING**  
**A SETTLEMENT AGREEMENT BY AND BETWEEN THE TRUSTEE AND**  
**<u>SILVER CREEK LONG/SHORT HOLDINGS, L.L.C.</u>**

TO:  THE HONORABLE STUART M. BERNSTEIN
     UNITED STATES BANKRUPTCY JUDGE:

Irving H. Picard (the "Trustee"), as trustee for the liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15 U.S.C. §§ 78*aaa-lll* ("SIPA")[1] and the substantively consolidated Chapter 7 estate of Bernard L. Madoff ("Madoff," and together with BLMIS, the "Debtors"), by and through his undersigned counsel, submits this motion (the "Motion") seeking entry of an order, pursuant to section 105(a) of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), and Rules 2002 and 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), approving a settlement, the terms and conditions of which are set forth in the Release and Settlement Agreement (the "Agreement")[2] by and between the Trustee, on the one hand, and Silver Creek Long/Short Holdings, L.L.C. ("L/S Holdings"), on the other hand. In support of the Motion, the Trustee respectfully represents as follows:

## PRELIMINARY STATEMENT

1.   The Agreement represents a good faith settlement between the Trustee and L/S Holdings as to any and all disputes between them arising out of L/S Holdings' investments with the Rye Select Broad Market Fund, LP ("Broad Market Fund") and Rye Select Broad Market Prime Fund, LP ("Prime Fund)—both of which were BLMIS feeder funds. This pre-litigation settlement will benefit the customer property fund by $9 million and will increase the distribution to BLMIS customers with allowed claims without the need for potentially lengthy, costly, and complex litigation for which there is no guarantee of recovery. The Trustee therefore

---

[1] Further citations to SIPA will omit "15 U.S.C." and refer only to the relevant sections of SIPA.

[2] The form of Agreement is attached hereto as Exhibit "A."

2

respectfully requests that the Court approve this settlement.

## BACKGROUND

2. On December 11, 2008 (the "Filing Date"),[3] the Securities and Exchange Commission ("SEC") filed a complaint in the United States District Court for the Southern District of New York (the "District Court") against the Debtors (Case No. 08 CV 10791). The complaint alleged that the Debtors engaged in fraud through investment advisor activities of BLMIS.

3. On December 15, 2008, pursuant to section 78eee(a)(4)(A) of SIPA, the SEC consented to a combination of its own action with an application of the Securities Investor Protection Corporation ("SIPC"). Thereafter, pursuant to section 78eee(a)(3) of SIPA, SIPC filed an application in the District Court alleging, *inter alia*, that BLMIS was not able to meet its obligations to securities customers as they came due and, accordingly, its customers needed the protection afforded by SIPA.

4. On that date, the District Court entered the Protective Decree, to which BLMIS consented, which, in pertinent part:

   (i) removed the receiver and appointed the Trustee for the liquidation of the business of BLMIS pursuant to section 78eee(b)(3) of SIPA;
   (ii) appointed Baker & Hostetler LLP as counsel to the Trustee pursuant to section 78eee(b)(3) of SIPA; and
   (iii) removed the case to this Court pursuant to section 78eee(b)(4) of SIPA.

5. At a plea hearing on March 12, 2009 (the "Plea Hearing") in the criminal action filed against him by the United States Attorney's Office for the Southern District of New York,

---

[3] In this case, the Filing Date is the date on which the Securities and Exchange Commission commenced its suit against BLMIS, December 11, 2008, which resulted in the appointment of a receiver for the firm. *See* Section 78*lll*(7)(B) of SIPA.

3

Madoff pled guilty to an 11-count criminal information, which counts included securities fraud, money laundering, theft and embezzlement. At the Plea Hearing, Madoff admitted that he "operated a Ponzi scheme through the investment advisory side of [BLMIS]." (Plea Hr'g Tr. at 23:14-17.) On June 29, 2009, Madoff was sentenced to a term of imprisonment of 150 years.

6. On April 13, 2009, an involuntary bankruptcy petition was filed against Madoff. On June 9, 2009, this Court entered an order substantively consolidating the Chapter 7 estate of Madoff into the BLMIS SIPA proceeding.

## L/S HOLDINGS

7. L/S Holdings is a fund of funds managed by Silver Creek Capital Management, L.L.C. L/S Holdings had investments with the Broad Market Fund and Prime Fund beginning in 1994 and 1998, respectively, until 2004. Both the Broad Market Fund and Prime Fund—managed by Tremont Partners, Inc.—were BLMIS feeder funds.

8. The Agreement resolves any and all disputes arising out of redemptions received by L/S Holdings from the Broad Market Fund and Prime Fund, substantially all of which occurred in 2004.

## THE TREMONT SETTLEMENT

9. In December 2010, the Trustee brought an adversary proceeding against Tremont Partners, Inc., the Broad Market Fund, the Prime Fund, and a number of other domestic and foreign investment funds, their affiliates, executives, and parent corporations under the caption *Picard v. Tremont Group Holdings, Inc. et al.*, Adv. Pro. No. 10-05310 (the "Tremont Action"). The complaint brought in the Tremont Action alleged that the defendants knew or should have known of fraud at BLMIS and sought to avoid and recover initial transfers of customer property from BLMIS amounting to approximately $2.1 billion. (*See* Tremont Action,

4

ECF No. 4.)

10. As set forth in the complaint in the Tremont Action, the Broad Market Fund had a direct account with BLMIS (account number 1T0027). (*See* Tremont Action, ECF No. 4, ¶ 36.) The Prime Fund also had a direct account with BLMIS (account number 1C1260). (*See id.*, ¶ 38.) As also alleged in the Tremont Action, BLMIS transferred $252,000,000 to the Broad Market Fund during the six years prior to the Filing Date. (*See id.*, ¶ 271) BLMIS transferred $945,000,000 to the Prime Fund during the six years prior to the Filing Date. (*See id.*)

11. On September 22, 2011, the Bankruptcy Court approved a settlement between the Trustee and defendants named in the Tremont Action (collectively, the "Tremont Settling Defendants")—which include the Broad Market Fund and Prime Fund. Under the terms of the settlement agreement, the Tremont Settling Defendants collectively were to pay (and did pay) $1.025 billion for the benefit of the BLMIS estate. (*See* Tremont Action, ECF Nos. 17, 38.)

12. Because the Trustee compromised and did not recover the full amount of the initial transfers sought in the Tremont Action, the settlement agreement provided that the settlement payments made by the Tremont Settling Defendants "shall not, and are not, intended to release, waive, prejudice, or limit the Trustee's rights and ability to pursue any actions or claims . . . available to him against any non-party to the Agreement, including but not limited to," a number of entities that includes L/S Holdings. (*See* Tremont Action, ECF No. 17, Exh. A, ¶ 4.)

13. The Bankruptcy Court approved the Tremont settlement by Order Granting Trustee's Motion for Entry of Order Approving Agreement. (*See* Tremont Action, ECF No. 38.) On appeal from that Order, the District Court affirmed the Bankruptcy Court's order approving the settlement. *See In re Bernard L. Madoff Inv. Secs., LLC (Picard v. Tremont Group Holdings,*

5

*Inc.*), No. 11 CV 7330 GBD, 2012 WL 2497270 (S.D.N.Y. Jun. 27, 2012). A subsequent appeal to the Second Circuit was dismissed pursuant to a stipulation of the parties that was So Ordered on October 25, 2012. *See In re: Bernard L. Madoff Investment Securities LLC*, Docket No. 12-3052, ECF No. 56. The settlement closed on or about November 6, 2012.

## POTENTIAL CLAIMS

14. Prior to negotiating the Agreement, the Trustee conducted a comprehensive investigation of L/S Holdings' investments with the Broad Market Fund and Prime Fund, including a thorough review of documents obtained by the Trustee during his investigation into investments in the Broad Market Fund and the Prime Fund, including documents relating to investments by L/S Holdings. As a result, the Trustee has reviewed extensive information relevant to his potential claims against L/S Holdings.

15. The Trustee's investigation revealed that L/S Holdings redeemed substantially all of its investments from the Broad Market Fund and Prime Fund in 2004. The Broad Market Fund and the Prime Fund transferred a total of approximately $64.4 million to L/S Holdings between April and August 2004. The total amount of transfers from the Broad Market Fund and the Prime Fund to L/S Holdings within six years of the Filing Date is therefore approximately $64.4 million. L/S Holdings did not receive any transfers within two years of the Filing Date. Records also indicate that L/S Holdings redeemed approximately $28 million more during the six-year period prior to the Filing Date than it had invested in the Broad Market Fund and Prime Fund.

16. Based on his investigation and the allegations supporting his Tremont Action, the Trustee asserts that he has claims pursuant to Section 550 of the Bankruptcy Code and/or other statutory and common law grounds against L/S Holdings, as a subsequent transferee of funds

6

originating from BLMIS, based on the $64.4 million in redemptions L/S Holdings received from the Broad Market Fund and the Prime Fund in 2004.

17. L/S Holdings denies the factual and legal validity of the Trustee's claims and has asserted that it would move to dismiss any action filed against it by the Trustee. L/S Holdings denies that the Trustee can assert any claim for which any relief can be granted against L/S Holdings and related entities. Among other defenses, L/S Holdings asserts that the safe harbor provisions of Section 546(e) of the Bankruptcy Code would prevent the Trustee from recovering any amounts from it.

18. Since September 2012, the Trustee and L/S Holdings have entered into several agreements tolling the applicable statute of limitations for any potential action the Trustee could bring against L/S Holdings.

19. Pursuant to these agreements, the Supreme Court's order on June 22, 2015 denying the Trustee's writ of certiorari in the case of *Picard v. Ida Fishman Revocable Trust,* U.S. Supreme Court Case Number 14-1129, established the date on which the tolling period was going to conclude. The parties, however, agreed to toll the statute of limitations further and thereafter engaged in discussions that resulted in an agreed pre-litigation resolution that obviated the need for the Trustee to commence an adversary proceeding.

20. The parties engaged in arms-length and extensive negotiations concerning the claims and defenses over a period of several months.

21. After a thorough review and consideration of the relevant information, as well as a thorough and deliberate consideration of the uncertainty and risks of litigation—including risks specific to potential claims against L/S Holdings (as discussed more thoroughly below) and risks inherent in litigation generally—the Trustee, in the exercise of his business judgment, has determined that it is appropriate to amicably resolve this matter, rather than institute litigation.

## OVERVIEW OF THE AGREEMENT

22. The principal terms of the Agreement are as follows:

- L/S Holdings will pay or cause to be paid $9,000,000 to the Trustee for the benefit of the Fund of Customer Property within ten (10) days of the receipt of an order approving the Agreement that is no longer subject to appeal, review, or rehearing.

- The Trustee will release, acquit, and forever discharge L/S Holdings (and related entities) on the specific terms set forth in the Agreement.

- L/S Holdings (on behalf of itself and related entities) will release, acquit, and forever discharge the Trustee and all his agents and BLMIS and its consolidated estate on the specific terms set forth in the Agreement.

## RELIEF REQUESTED

23. By this Motion, the Trustee respectfully requests that the Court enter an order substantially in the form of the proposed Order attached hereto as Exhibit "B" approving the Agreement.

## LEGAL BASIS

24. Bankruptcy Rule 9019(a) provides, in pertinent part, that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Courts have held that in order to approve a settlement or compromise under Bankruptcy Rule

8

9019(a), a bankruptcy court should find that the compromise proposed is fair and equitable, reasonable, and in the best interests of a debtor's estate. *In re Ionosphere Clubs, Inc.*, 156 B.R. 414, 426 (S.D.N.Y. 1993), *aff'd*, 17 F.3d 600 (2d Cir. 1994) (citing *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968)).

25. The Second Circuit has stated that a bankruptcy court, in determining whether to approve a compromise, should not decide the numerous questions of law and fact raised by the compromise, but rather should "canvass the issues and see whether the settlement 'fall[s] below the lowest point in the range of reasonableness.'" *Liu v. Silverman (In re Liu)*, 1998 U.S. App. LEXIS 31698, at *3 (2d Cir. Dec. 18, 1998) (quoting *In re W.T. Grant Co.*, 699 F.2d 599, 608 (2d Cir. 1983)); *see also Masonic Hall & Asylum Fund v. Official Comm. of Unsecured Creditors (In re Refco, Inc.)*, 2006 U.S. Dist. LEXIS 85691, at *21-22 (S.D.N.Y. Nov. 16, 2006); *In re Ionosphere Clubs*, 156 B.R. at 426. "[T]he court need not conduct a 'mini-trial' to determine the merits of the underlying litigation." *In re Purified Down Prods. Corp.*, 150 B.R. 519, 522 (S.D.N.Y. 1993).

26. In deciding whether a particular compromise falls within the "range of reasonableness," courts consider the following factors:

  (i)  the probability of success in the litigation;
  (ii)  the difficulties associated with collection;
  (iii)  the complexity of the litigation, and the attendant expense, inconvenience, and delay; and
  (iv)  the paramount interests of the creditors (or in this case, customers).

*In re Refco, Inc.,* 2006 U.S. Dist. LEXIS 85691 at *22; *Nellis v. Shugrue*, 165 B.R. 115, 122 (S.D.N.Y. 1994) (citing *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 292 (2d Cir. 1992), *cert. dismissed*, 506 U.S. 1088 (1993)).

27. The bankruptcy court may credit and consider the opinions of the trustee or debtor

9

and their counsel in determining whether a settlement is fair and equitable. *See In re Purified Down Prods.*, 150 B.R. at 522; *In re Drexel Burnham Lambert Grp.*, 134 B.R. at 505. Even though the Court has discretion to approve settlements and must independently evaluate the reasonableness of the settlement, *In re Rosenberg*, 419 B.R. 532, 536 (Bankr. E.D.N.Y. 2009), the business judgment of the trustee and his counsel should be considered in determining whether a settlement is fair and equitable. *In re Chemtura Corp.*, 439 B.R. at 594. The competency and experience of counsel supporting the settlement may also be considered. *Nellis*, 165 B.R. at 122. Finally, the court should be mindful of the principle that "the law favors compromise." *In re Drexel Burnham Lambert Grp.*, 134 B.R. at 505 (quoting *In re Blair*, 538 F.2d 849, 851 (9th Cir. 1976)).

28.    The Agreement falls well above the lowest point in the range of reasonableness. The Agreement furthers the interest of BLMIS customers by recovering $9 million without allowing any additional claims against the BLMIS estate. The Agreement resolves all potential claims between the Trustee and L/S Holdings (and certain related entities) with respect to the transfers L/S Holdings may have received from the Broad Market Fund and the Prime Fund. The Agreement also avoids the cost and delay of what could otherwise be lengthy, contentious, and uncertain litigation involving complex issues—including issues related to Section 546(e) and the alleged knowledge of L/S Holdings. (Affidavit of the Trustee in Support of the Motion (the "Picard Affidavit")). A true and accurate copy of the Picard Affidavit is attached hereto as Exhibit "C").

29.    Had the Trustee filed a complaint, he would have had to overcome a motion to dismiss at the initial stage of the litigation. Among other defenses, L/S Holdings indicated that it would move to dismiss the entirety of any complaint against it, based on Section 546(e) of the

10

Bankruptcy Code, because all of the transfers at issue took place beyond two years of the Filing Date.  Therefore, L/S Holdings contends that as a threshold issue, the Trustee would have to overcome the "actual knowledge" standard of pleading in order to bring any claims against it, which L/S Holdings contends the Trustee could not do.  *See SIPC v. BLMIS*, No. 12 Misc. 115 (JSR), 2013 WL 1609154, at *4 (S.D.N.Y. Apr. 15, 2013).

30. If the Trustee were successful in overcoming an anticipated motion to dismiss, the ensuing litigation would then likely be complex and contentious.  Indeed, the litigation would involve a lengthy discovery period, an inevitable summary judgment motion, and then trial if the case were to survive summary judgment.

31. In contrast, the Agreement furthers the interests of BLMIS customers by immediately adding $9 million to the Fund of Customer Property, without allowing any claims against the estate in connection with such payments.

## **CONCLUSION**

32. In sum, the Trustee believes that the terms of the Agreement fall well above the lowest point in the range of reasonableness.  The Agreement will bring an additional $9 million to the Fund of Customer Property and resolves all potential claims related to L/S Holdings' investments in the Broad Market Fund and the Prime Fund.  It also avoids litigation that may be lengthy, burdensome, risky, and expensive.  The Trustee further believes that the Agreement represents a fair and reasonable compromise of the Trustee's claims that greatly benefits the estate and the customers of BLMIS.  Because the Agreement is well within the "range of reasonableness" and confers a substantial benefit on the estate, the Trustee respectfully requests that the Court enter an Order approving the Agreement.

11

## NOTICE

33.     In accordance with Bankruptcy Rules 2002 and 9019, notice of this Motion has been given to (i) SIPC; (ii) the SEC; (iii) the Internal Revenue Service; (iv) the United States Attorney for the Southern District of New York, and (v) Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, New York 10017, Attn: Dana M. Seshens.  The Trustee also has provided notice to all parties who have entered an appearance through the ECF Filing System and to all interested parties by email or regular U.S. Mail.

WHEREFORE, the Trustee respectfully requests entry of an Order substantially in the form of Exhibit "B" granting the relief requested in the Motion.

Respectfully submitted,

Dated:  New York, New York
         March 25, 2016

**BAKER & HOSTETLER LLP**

By: */s/ Eric Fish*
    David J. Sheehan
    Email: dsheehan@bakerlaw.com
    Eric R. Fish
    Email: efish@bakerlaw.com
    Esterina Giuliani
    Email: egiuliani@bakerlaw.com
    Keith R. Murphy
    Email: kmurphy@bakerlaw.com

45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Estate of Bernard L. Madoff*