**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (SMB) |
| Plaintiff-Applicant, | SIPA LIQUIDATION |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | Adv. Pro. No. 10-04891 (SMB) |
| Plaintiff, | |
| v. | |
| ROBERT AUERBACH REVOCABLE TRUST DTD 6/29/05; | |
| JOYCE AUERBACH REVOCABLE TRUST DTD 6/29/05; and | |
| JOYCE C. AUERBACH, individually, as Trustee of the Robert Auerbach Revocable Trust dtd 6/29/05, as Trustee of the Joyce Auerbach Revocable Trust 6/29/05, and as Personal Representative of the Estate of Robert Auerbach, | |
| Defendants. | |

## <u>JOINT PRETRIAL ORDER</u>

Plaintiff Irving H. Picard (the "Trustee"), the trustee for the liquidation of Bernard L.

Madoff Investment Securities LLC ("BLMIS") and the substantively consolidated estate of

Bernard L. Madoff ("Madoff"), and defendants (i) Robert Auerbach Revocable Trust dtd 6/29/05, (ii) Joyce Auerbach Revocable Trust dtd 6/29/05, (iii) Joyce C. Auerbach, as Trustee of the Robert Auerbach Revocable Trust dtd 6/29/05 and as Trustee of the Joyce Auerbach Revocable Trust 6/29/05 (the "Initial Transferee Defendants"), and (iv) Joyce C. Auerbach, individually and as Personal Representative of the Estate of Robert Auerbach (the "Subsequent Transferee Defendant") (collectively, "Defendants," and together with the Trustee, the "Parties") have conferred among themselves and with the Court pursuant to Federal Rule of Civil Procedure 16, made applicable herein by Federal Rule of Bankruptcy Procedure 7016, and the following statements, directions, and stipulations are adopted as the Joint Pretrial Order herein ("Pretrial Order").

## I.    NATURE OF THE CASE

1.    This adversary proceeding arises from a Ponzi scheme perpetrated by Madoff through the investment advisory business of BLMIS (the "Investment Advisory" business). On December 11, 2008 (the "Filing Date"), Madoff was arrested by federal agents for violating numerous criminal securities statutes. On the same day, the United States Securities and Exchange Commission (the "SEC") filed a complaint in the United States District Court for the Southern District of New York (the "District Court") against BLMIS and Madoff. On December 15, 2008, the SEC consented to a combination of its own action with an application of the Securities Investor Protection Corporation ("SIPC"), the Trustee was appointed as trustee for the liquidation of the business of BLMIS under the Securities Investor Protection Act ("SIPA"), and the District Court removed the combined action (the "Liquidation Proceeding") to this Court.

2.    On December 2, 2010, the Trustee brought this adversary proceeding against Defendants to avoid and recover allegedly fraudulent transfers totaling $570,000 received by Defendants in their capacities as Initial and Subsequent Transferees respectfully in connection

with the Investment Advisory Account No. 1A0114 (the "Account").  On January 6, 2012, Defendants answered the Trustee's Complaint.

3.       On April 2, 2012, Defendants moved to withdraw the reference that had been made to this Court on several issues, including:  (i) whether they are entitled to protection under the safe harbor provision of 11 U.S.C. § 546(e) of the United States Bankruptcy Code ("Section 546(e)"[1]); (ii) whether the Trustee improperly seeks to avoid transfers that BLMIS made in satisfaction of antecedent debt owed by BLMIS to Defendants; and (iii) whether this Court has the constitutional and statutory authority to adjudicate the Trustee's avoidance claims against Defendants.  Through several consent orders entered by the District Court, Defendants' motion was consolidated with hundreds of other similar motions in order to allow the District Court to decide each of the issues described above on a consolidated basis.[2]

4.       On April 27, 2012, the District Court held that Section 546(e) applies to all consolidated adversary proceedings before it, and dismissed all claims asserted by the Trustee except those made pursuant to Section 548(a)(1)(A) and 550(a).  *Picard v. Greiff*, 476 B.R. 715 (S.D.N.Y. 2012) (the "Safe Harbor Decision").  On January 4, 2013, the District Court ruled on the *Stern v. Marshall* issue, and held that, with limited exceptions, the Bankruptcy Court generally lacks the authority to enter final judgment on the Trustee's avoidance actions.  *SIPC v. BLMIS*, 490 B.R. 46, 55 and 58 (S.D.N.Y. 2013) (the "*Stern v. Marshall* Decision").  In those actions, such as this action, where the Bankruptcy Court cannot enter final judgment, the District Court held that the Bankruptcy Court "nonetheless has the power to hear the [avoidance action]

---

[1] Further references to the United States Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.*, will be made in like fashion.

[2] *See* Order, *SIPC v.BLMIS*, No. 12 MC 115 (S.D.N.Y. April 13, 2012) (No. ECF 4) (relating to the *Stern v. Marshall* issue); Consent Order Granting Certification Pursuant to Fed. R. Civ. P. 54(b) for Entry of Final Judgment Dismissing Certain Claims and Actions, *SIPC v.BLMIS*, No. 12 MC 115 (S.D.N.Y. May 16, 2012) (ECF No. 109) (relating to the Section 546(e) issue); Order, *SIPC v.BLMIS*, No. 12 MC 115 (S.D.N.Y. May 16, 2012) (ECF No. 107) (relating to the antecedent debt issue).

in the first instance and recommend proposed findings of fact and conclusions of law" to the District Court. *SIPC v. BLMIS*, 490 B.R. 46, 58 (S.D.N.Y. 2013) (the "*Stern v. Marshall* Decision").[3]

5. After the Safe Harbor Decision, the Trustee's sole remaining claims against Defendants are Counts One and Seven of the Complaint. The Parties engaged in fact and expert discovery, which concluded in September 2015. On May 6, 2015, the parties conducted mediation before the Honorable Francis G. Conrad (U.S.B.J., Ret.) that was unsuccessful. On May 12, 2015, Judge Conrad issued his Final Report, finding that the Parties negotiated in good faith but were unable to reach a mutually satisfactory resolution of the disputed involved. A pretrial conference was held on February 24, 2016.

## II. BASIS FOR JURISDICTION, WHETHER THE CASE IS CORE OR NON-CORE, AND WHETHER THE BANKRUPTCY COURT MAY ENTER FINAL ORDER OR JUDGMENT

1. The Trustee commenced this adversary proceeding in this Court, before which the Liquidation Proceeding is also pending. This Court has jurisdiction over this adversary proceeding under 28 U.S.C. § 1334(b), 15 U.S.C. § 78eee(b)(2)(A) and (b)(4), and Order No. M 10-450 (S.D.N.Y. July 10, 1984), as amended by Amended Standing Order of Reference, No. M 10-468, 12 Misc. 0032 (S.D.N.Y. Jan. 31, 2012).

2. This Court lacks jurisdiction to adjudicate the Trustee's avoidance claim. Pursuant to the order of the District Court, the Court may hear this matter in the first instance and recommend proposed findings of fact and conclusions of law to the District Court.

## III. STIPULATED FACTS

The Parties hereby stipulate as follows:

---

[3] Moreover, the District Court "declined to withdraw the reference of these cases to the Bankruptcy Court 'for cause shown' before the Bankruptcy Court has issued appropriate findings of fact and conclusions of law." *Id.* at 58.

A.    **Ponzi Scheme**

1.    BLMIS was, at all times relevant to this adversary proceeding, registered with the

SEC as a broker-dealer under section 15(b) of the Securities Exchange Act of 1934, 15 U.S.C. §

78o(b), a member of the Financial Industry Regulatory Agency (formerly known as the National

Association of Securities Dealers). At all times relevant to this adversary proceeding, BLMIS

held itself out to customers (including Defendants) and prospective customers as being engaged

in the business of purchasing and selling securities for the accounts of its retail customers.

2.    BLMIS operated a Ponzi scheme out of its Investment Advisory Business. In his

plea allocution, Madoff admitted to running a Ponzi scheme through BLMIS. Attached hereto as

trial **Exhibit PX1** is a true and accurate copy of the Plea Allocution of Bernard L. Madoff at 1,

United States v. Madoff, No. 09-CR-213 (DC) (S.D.N.Y. Mar. 12, 2009).

3.    As set forth in the Declaration of Bruce G. Dubinsky, which incorporates and

includes the Expert Report of Bruce G. Dubinsky and its accompanying exhibits and which are

marked as trial **Exhibits PX2-A and PX2-B**: (i) fraud permeated BLMIS; (ii) BLMIS was

operating a Ponzi scheme through its Investment Advisory Business; and (iii) BLMIS was

insolvent from at least December 11, 2002 and all points after. The evidence establishing that

the Investment Advisory Business was a Ponzi scheme includes, but is not limited to, the

following: (i) BLMIS utilized customer monies to fund its operations, as well as to fund the

withdrawal of fictitious profits and principal for other customers; (ii) the Investment Advisory

Business was not generating any legitimate profits since no trading activity was taking place; (iii)

the Investment Advisory Business was not receiving legitimate financial support from the other

business units of BLMIS in amounts sufficient satisfy the cash requirement needs of the

Investment Advisory Business customer withdrawals; and (iv) the Investment Advisory Business

was not receiving any legitimate outside financial support vis-à-vis loans or otherwise. As a result, BLMIS made each of the Alleged Avoidable Transfers to Defendant during the Two-Year Period with the actual intent to hinder, delay, or defraud some or all of its then existing and/or future creditors within the meaning of Section 548(a)(1)(A).

4.      BLMIS received each deposit or entrustment of funds made to it by the clients of its Investment Advisory Business with the concealed intent not to apply such funds to the purchase of securities for the account of its clients.

**B.      Appointment of Trustee**

1.      On the Filing Date, Madoff was arrested for violating numerous federal criminal securities statutes.

2.      Contemporaneously, the SEC commenced proceedings against BLMIS and Madoff in the United States District Court for the Southern District of New York (the "District Court") in the Liquidation Proceeding.

3.      On December 15, 2008, the SEC consented to a combination of its own action with an application of SIPC pursuant to Section 78eee(a)(4)(A) of SIPA, 15 U.S.C. § 78aaa, et seq. Pursuant to section 78eee(a)(4)(B) of SIPA, SIPC filed an application in the District Court because BLMIS was not able to meet its obligations to securities customers as they became due and thus its customers needed the protections afforded by SIPA.

4.      On December 15, 2008, the District Court granted the SIPC application and entered an order pursuant to SIPA which, in relevant part: (i) appointed the Trustee the trustee for the liquidation of BLMIS pursuant to section 78eee(b)(3) of SIPA; (ii) appointed Baker & Hostetler LLP as counsel to the Trustee pursuant to section 78eee(b)(3) of SIPA; and (iii) removed the case to this Court pursuant to section 78eee(b)(4) of SIPA. Order, Liquidation Proceeding (Dec. 15, 2008) (ECF No. 1 in Adv. Pro. No. 08-01789 (SMB)).

5.      The Trustee has been found to be a disinterested party in these proceeding, and has been found to be duly qualified to serve and act on behalf of the estate of BLMIS.  *Id.*; Order of Disinterestedness of Trustee and Counsel to Trustee, Liquidation Proceeding (Feb. 4, 2009) (ECF No. 69).

C.      **BLMIS Account at Issue**

1.      In August 1999, Robert Auerbach opened Investment Advisory Account No. 1A0114 (again, the "Account") at BLMIS with a $2,000,000 deposit (the "Deposit").  Marked as trial **Exhibit PX3** are true and accurate copies of the Customer Agreement, Trading Authorization forms, and the Option Agreement executed by Robert Auerbach in connection with opening the Account.   Marked as trial **Exhibit PX4** is true and accurate copy of correspondence from Robert Auerbach to BLMIS regarding the Deposit.  The Deposit is further evidenced in **Exhibit PX5** (monthly customer statements), **Exhibit PX6-E** (portfolio management reports), and **Exhibit PX7** (account statements for JPMorgan Chase).  During the lifetime of the Account, this Deposit was the only deposit into the Account.

2.      At and after the time Robert Auerbach made the Deposit, BLMIS intended to divert – and thereafter did divert – the deposited funds to purposes other than the purchase of securities for the account of Robert Auerbach or his successors as customer.

3.      In or about May 2004, Mr. Auerbach became incapacitated and his wife, Defendant Joyce C. Auerbach, obtained a Durable General Power of Attorney over her incapacitated husband.  Marked as trial **Exhibit PX8** is a true and accurate copy of the Durable General Power of Attorney.

4.      On May 19, 2004, Robert Auerbach and Joyce Auerbach sent a letter to BLMIS, instructing it to change the Account name to "Robert Auerbach and Joyce Auerbach Tenants-in-

Common."  Marked as trial **Exhibit PX9** is a true and accurate copy of correspondence from Robert Auerbach and Joyce Auerbach to BLMIS requesting an Account name change.

5.      From May 2004 through August 2005, the Account was held in the name of Robert Auerbach and Joyce Auerbach as tenants-in-common.

6.      On September 20, 2005, Joyce Auerbach, individually and as attorney in fact for Robert Auerbach, sent a letter to BLMIS, instructing it to change the Account name to "Robert Auerbach Revocable Trust dtd 6/29/05 (the "Robert Trust") and Joyce C. Auerbach Revocable Trust dtd 6/29/05 (the "Joyce Trust") Tenants-in-Common."  Marked as trial **Exhibit PX10** is a true and accurate copy of correspondence from Joyce Auerbach to BLMIS requesting an Account name change.

7.      From September 2005 through September 2008, the Account was held in the name of the Robert Trust and the Joyce Trust as tenants-in-common.

8.      BLMIS did not purchase or sell any securities for the Account.

9.      During the pendency of the Account, BLMIS issued monthly statements of account to the customer of record, confirmation statements reflecting each purported securities trade, and other periodic account reports or analysis.  Each account statement, each confirmation, and every other analysis or report prepared and issued by BLMIS was a deliberate fabrication by BLMIS, in as much as it had not engaged in the actual purchase or sale of securities for the Account.

10.      Every security which BLMIS reported on with respect to the Account, was a security traded on a national securities exchange, with publicly available quotations of trading prices.

D.     **Relationships among Defendants**

I.     The Robert Trust

1.     Robert Auerbach was the Grantor, and Joyce C. Auerbach is the Trustee, of the Robert Trust. Marked as trial **Exhibit PX11** is a true and accurate copy of the Robert Auerbach Revocable Trust Agreement dtd 6/29/05.

2.     As the Attorney-in-Fact for the Grantor of the Robert Trust and as Trustee of the Robert Trust, Joyce C. Auerbach had the power to "at any time, or from time to time, during the Grantor's life pay to or apply for the benefit of the Grantor so much of the net income and principal of the trust, up to the whole thereof, as the Grantor shall direct" or "as the Trustee, in her discretion, shall deem advisable." *Id*. at ¶ SECOND. Once Robert Auerbach was incapacitated, Joyce C. Auerbach also had the power to use the Robert Trust's assets to "provide for the comfortable maintenance, care and support of the Grantor, *and his spouse*, his daughter, KENDRA, or KENDRA's issue…" *Id*. at ¶ THIRD (emphasis added). As such, Joyce C. Auerbach had the power to withdraw funds from the Account to the Robert Trust and to control the flow of funds out of the Robert Trust for her use as well as the use of her husband.

II.     The Joyce Trust

3.     Joyce C. Auerbach is both the Grantor and Trustee of the Joyce Trust. Marked as trial **Exhibit PX12** is a true and accurate copy of the Joyce C. Auerbach Revocable Trust Agreement dtd 6/29/05.

4.     As the Grantor and Trustee of the Joyce Trust, Joyce C. Auerbach had the power to "at any time, or from time to time, during the Grantor's life pay to or apply for the benefit of the Grantor so much of the net income and principal of the trust, up to the whole thereof, as the Grantor shall direct" or "as the Trustee, in her discretion, shall deem advisable." *Id*. at ¶

SECOND.  As such, Joyce C. Auerbach had the power to withdraw funds from the Account to the Joyce Trust and to control the flow of funds out of the Joyce Trust.

      III.    <u>The Estate of Robert Auerbach</u>

     5.    Robert Auerbach died on May 13, 2015, during the pendency of the litigation. The Estate of Robert Auerbach was opened in the Surrogate's Court of New York, Court File No. 2015-2361.  Joyce C. Auerbach is the Personal Representative of the Estate of Robert Auerbach.  Marked as trial **Exhibit PX13** is a true and accurate copy of the Letters Testamentary issued to Joyce C. Auerbach and part of Robert Auerbach's Probate File.

     6.    On November 13, 2015, Defendant Joyce C. Auerbach, in her capacity as Personal Representative of the Estate of Robert Auerbach, was substituted into this adversary proceeding in place of her deceased husband, Robert Auerbach.  Marked as trial **Exhibit PX14** is a true and accurate copy of the So Ordered Stipulation and Order for Substitution of Defendant.

**E.**    **Transfers and Subsequent Transfers at Issue**

     1.    Between August 13, 1999 and December 11, 2008, Defendants wrote letters to BLMIS requesting twenty-five (25) withdrawals from the Account totaling $2,570,000 (the "Withdrawals").  Marked as trial **Exhibit PX15** are true and accurate copies of written requests signed by Defendants Robert Auerbach or Joyce Auerbach requesting each of the Withdrawals from BLMIS.  All but two of these Withdrawals are also evidenced by **Exhibit PX16**, true and correct copies of documents Defendants produced in conjunction with their Customer Claim No. 011098.

     2.    Defendants received monthly customer account statements from BLMIS, which accurately reflect the Deposit into and Withdrawals from the Account.  Marked as trial **Exhibit PX5** are true and accurate copies of all monthly customer statements for the Account.

3.      Of the Withdrawals, Defendants withdrew a total of $570,000 in excess of principal, representing fictitious profits (the "Avoidable Transfers"), and all of these Withdrawals took place within the two-year period prior to December 11, 2008 (the "Two-Year Period"). The last monthly account statement for the Account, dated November 30, 2008, lists the market value of securities for stocks long as $2,311,012.71, and the market value of securities for options long as $80,850.00 and short as $114,170.00-. True and correct copies of the last monthly account statements dated November 30, 2008 are on pages 12-18 of trial **Exhibit PX16.** All Withdrawals are accurately reflected on the monthly account statements for the Account, marked as trial **Exhibit PX5**. Moreover, the Declaration of Matthew B. Greenblatt and its accompanying exhibits, which are marked as trial **Exhibits PX6-A through PX6-H**, confirm the dates and amounts of the Deposit and Withdrawals, as well as the Trustee's calculation of the Avoidable Transfers.

4.      During the Two-Year Period, Defendants made nine (9) cash withdrawals from the Account totaling $870,000, of which $570,000 represent the fictitious profits, defined above as the Avoidable Transfers. Marked as trial **Exhibits PX7, PX17, and PX18** are true and accurate copies of BLMIS bank records reflecting each of the Withdrawals.

5.      During the Two-Year Period, Defendants received all Withdrawals into their account XXXXX6847 held at Pershing, LLC (the "Pershing Account") through their accounts managed by investment advisor Family Management Corporation (the "FMC Accounts"). Marked as **Exhibit PX19** is a true and correct copy of Defendants' Stipulation as to Transfers. Marked as trial **Exhibit PX20** are true and accurate copies of the monthly bank statements and other records relating to the Pershing Account confirming the deposit of the Withdrawals into the Pershing Account. Marked as trial **Exhibit PX21** are true and accurate copies of the account

statements relating to the FMC Accounts produced by Defendants.

6.     Defendants further stipulate that they transferred funds from their FMC Accounts to various accounts held by Defendants Robert Auerbach and Joyce C. Auerbach, as well as the Robert Auerbach Insurance Trust and the Joyce Auerbach Insurance Trust #1.  *See* **Exhibit PX19**.

7.     The Declaration of Lisa M. Collura and its exhibits, which are marked as trial **Exhibit PX22-A through PX22-D**, confirm the Deposits and Withdrawals reflected in the monthly account statements actually took place as evidenced by, and reconciled through a review of, BLMIS bank records as well as the opinion reached by Ms. Collura therefrom.

8.     The voluminous BLMIS books and records, along with certain third-party data, which were referenced in the Declarations and Expert Reports of Mr. Dubinsky, Mr. Greenblatt, and Ms. Collura, were loaded into multiple Microsoft SQL Server Databases (the "SQL Databases"). The SQL Databases are marked as trial **Exhibit 23**.

9.     As established by the analysis and findings set forth in the Collura Declaration, BLMIS used monies deposited by its customers to satisfy redemptions requested by other customers.  Each of the Alleged Avoidable Transfers constituted a transfer of an interest of BLMIS in property within the meaning of Section 101(54) of the Bankruptcy Code and pursuant to Section 78fff-2(c)(3) of SIPA.

10.     The Parties stipulate that the testimony set forth in the Dubinsky Declaration (**Exhibit PX2-A**), the Greenblatt Declaration (**Exhibit PX6-A**), and the Collura Declaration (**Exhibit PX22-A**) is deemed admitted.  The Parties further stipulate that Bruce G. Dubinsky, Matthew W. Greenblatt, and Lisa M. Collura qualify as expert witnesses under Federal Rule of Evidence 702 and other applicable law.

## IV.    PARTIES' CONTENTIONS

### A.    The Trustee's Contentions

1.    This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (H), and (O).

2.    BLMIS made each of the Alleged Avoidable Transfers to Defendants during the Two-Year Period with the actual intent to hinder, delay, or defraud some or all of its then existing and/or future creditors within the meaning of Section 548(a)(1)(A).

3.    Based on orders entered in the Liquidation Proceeding as well as the Stipulated Facts, the Trustee has standing and authority to avoid and recover the Alleged Avoidable Transfers.

4.    Based on the Stipulated Facts, each of the Alleged Avoidable Transfers made within the Two-Year Period should be found avoidable pursuant to Section 548(a)(1)(A).

5.    Defendants did not provide any value, within the meaning of Section 548(c), in return for any of the Alleged Avoidable Transfers, because each Alleged Avoidable Transfer consisted of fictitious profits from the Ponzi scheme and therefore was nothing more than the money of other BLMIS customers. *See SIPC v. BLMIS*, 499 B.R. 416, 425-26 (S.D.N.Y. 2013); Memorandum Decision Regarding Omnibus Motion to Dismiss, *SIPC v. BLMIS*, Adv. Pro. No. 08-01789 (SMB), 2015 WL 3465752, at *14-21(Bankr. S.D.N.Y. June 2, 2015).

6.    Pursuant to Section 550(a), the Trustee is entitled to recover the Alleged Avoidable Transfers, or the value thereof, from Defendants the Robert Trust, the Joyce Trust, and Joyce C. Auerbach, as Trustee of the Robert Trust and as Trustee of the Joyce Trust.

7.    Pursuant to Section 550(a), the Trustee is entitled to recover the Alleged Avoidable Transfers, or the value thereof, from Subsequent Transferee Defendant Joyce C. Auerbach, individually and in her capacity as the Personal Representative of the Estate of Robert Auerbach.

8.     The Trustee has not alleged Defendants' bad faith.   Defendants' contentions
(Section IV(B)(a) below) related to their good faith and use of BLMIS funds are, in part,
irrelevant and not supported by the evidence.

9.     Defendants' contentions (Section IV(B)(b) below) related to alleged value given
and the alleged prejudgment interest rate for their purported fraud claim are actually
counterclaims or affirmative defenses that, to the extent valid, would be asserted against the
general unsecured estate, have not been properly pleaded, and should not be tried as part of of
this claw back action brought by the Trustee under SIPA.   Moreover, to the extent that
Defendants contentions in this section implicate *SIPC v. BLMIS*, 499 B.R. 416, 423 (S.D.N.Y.
2013) (the "Antecedent Debt Decision"), they should not be reargued here.

10.     Defendants' contention (Section IV(B)(c) below) that the Trustees' claims should
be dismissed because the Alleged Avoidable Transfers were in satisfaction of an antecedent debt
has already been decided under the Antecedent Debt Decision and should not be reargued at trial.

11.     Defendants' suggestion (Section IV(B)(d) below) that the Court should decide the
applicable rate of prejudgment interest prior to trial is inappropriate and seeks an advisory
opinion.   The rate of interest asserted should be based on the facts underlying the judgment and
the applicable statutory bases for assessing it.

**B.**    **Defendants' Contentions**

**a)**    **Defendants' good faith and use of BLMIS Funds.**

1.     Defendants were unaware of BLMIS's actual conduct and, instead, believed that
BLMIS was engaged in the legitimate business of purchasing and selling securities for its
customers' accounts (including the Account), that each confirmation that each account
statements reflected the true status of the Account at the end of each calendar month.

2.     Every trade of securities reported by BLMIS to the Defendants quoted a price for the trade consistent with publicly reported trading prices for that security on that date.

3.     At all times relevant to this adversary proceeding, as a registered stockbroker purporting to engage in the retail business of purchasing and selling securities for the accounts of its customers, BLMIS was subject to certain applicable duties, requirements and responsibilities imposed on it under the Securities Exchange Act of 1934 (and rules promulgated thereunder), the rules of the Financial Industry Regulatory Authority (formerly the National Association of Securities Dealers) and Article 8 of the New York Uniform Commercial Code., including without limitation, Article 8, Part 5, of the NY UCC,  15 U.S.C. § 78j(b),  SEC Rules 10b-5 and 10b-10;  17 C.F.R. §§ 240.10b-5  240.10b-10; FINRA Rule 2232 ; Former NASD Rule 2340, Exchange Act Rel. No. 34-34962, 59 Fed. Reg. 59,612, 59,614 (Nov. 10, 1994) ); NYSE Rule 409, and any requirements on brokers imposed under the SEC rules promulgated under the Sec. Exch. Act of 1934, as amended, by FINRA or by the NASD.

4.     None of the Defendants had any knowledge at any time before December 11, 2008, of BLMIS fraudulent intentions or the fraudulent nature of its activities in dealing with the Defendants or others.   Each of the Defendants acted in good faith in receiving any Alleged Avoidable Transfer or a subsequent transfer from such Alleged Avoidable Transfer and, therefore, is an "innocent" transferee.

5.     As a result of a stroke in 2001, subsequent strokes, severe diabetes, and coronary disease, Robert Auerbach required constant care throughout the following years.  Since 2007, Robert Auerbach was almost entirely non-communicative, and required 24 hour care in the Auerbach's apartment at enormous medical and care expense.  The withdrawal of funds from the BLMIS account to a large extent funded Robert's care.

b)      **Value Given to BLMIS by Defendants.**

1.      Under the Account Agreements and under applicable non-bankruptcy law, including the Securities Exchange Act of 1934 (and rules promulgated thereunder), Article 8 of the New York Uniform Commercial Code, and the rules of FINRA, BLMIS was obligated to the customer Defendants to, among other things, deal with it honestly and in good faith, to segregate the funds deposited with BLMIS for the purpose of purchasing or selling securities for the Account, to report the actual status of the Account.

2.      In issuing its monthly account statements, BLMIS became obligated to the customer Defendants for the value of the securities positions stated on each statement.  In issuing confirmation statements, BLMIS became obligated to acquire the securities shown to be purchased for the prices shown to be paid, and obligated to sell the securities shown to be sold for the prices sold.  The Customer Agreement between BLMIS and the Account holders expressly provides: "8. CONFIRMATIONS AND STATEMENTS Confirmations of transactions and statements for the Customer's Account(s) shall be binding upon the Customer if the Customer does not object, in writing, within ten days after receipt by the Customer." **Exhibit PX3**. As a matter of law, those confirmations and statements were binding on BLMIS when issued.

3.      Based on the transactions shown, and the profits purported to have been made and shown on the confirmation statements and the monthly account statements and annual reports by BLMIS reflecting the same data, the defendants prepared and filed their tax returns and paid taxes.  On the basis of the confirmation statements and monthly account statements, and annual reports, and the obligations of BLMIS reflected therein, the Initial Transferee Defendants choose to maintain their accounts with BLMIS rather than withdraw their funds from those accounts.

4.      BLMIS committed a fraud upon Defendants each time it (i) received and diverted

the Deposit to purposes other than the purchase and sale of securities for the Account; (ii) failing to engage in the purchase and sale of securities for the account, and (iii) issued false monthly account statements to the customer Defendants.

5.      The contractual and legal obligations incurred by BLMIS to Defendants, and the duties and responsibilities to which BLMIS was bound as a stockbroker in its dealings with the Defendants, existed at and before the date of each Alleged Avoidable Transfer.

6.      Each Alleged Avoidable Transfer by BLMIS was made on account of the obligations incurred by, and/or owed by, BLMIS to its customer, and the duties and responsibilities imposed by law and contract upon BLMIS in its dealing with its customer, at or as of the time of each such transfer.

7.      Each Alleged Avoidable Transfer by BLMIS constituted value on account of the obligations incurred by, and/or owed by, BLMIS to its customer, and the duties and responsibilities imposed by law and contract upon BLMIS in its dealings with its customer and, accordingly, is not subject to avoidance and recovery to the full extent of such value.

8.      BLMIS procured the Account Agreements from the customer Defendant by fraudulent means and with a fraudulent intent.

9.      As a matter of contract law, and Section 29(b) of the 1934 Act, on the date of the each of the Alleged Avoidable Transfers, the holders of the Account had a claim against BLMIS for the value of the Account on the last monthly statement

10.     Alternatively, the holder of the Account has a claim against BLMIS for the amount shown as the value of the Account on November 30, 2008, $2,277,692.71 plus 9% simple interest from November 30, 2008 or $3,917,631.44.

11.     As a matter of state fraud law, on the date of the Alleged Avoidable Transfers, the

holders of the Account had a claim BLMIS, in the amount of $2,000,000 plus, as a matter of law under C.P.L.R. § 5001, in the amount of 9% per annum from 1999 through the present, less all withdrawals for a total claim in an amount to be proven at trial but no less than $2,490,000.

12.    Defendants are also entitled to punitive damages in the amount of no less than treble the amount of compensatory damages.

13.    Any findings regarding the absence of "value" or "antecedent debt" to support the withdrawals of funds from BLMIS by the Defendants relate solely to the Customer Property Estate and shall have no bearing upon any claims which may be made against the General Estate in any subsequent proceeding.

14.    In the Antecedent Debt Decision, the Court held that for the purpose of evaluating whether a customer has "good faith and for value" affirmative defense under § 548(c), to an avoidance action brought under § 548(a) the value of the customer's account in excess of the "net equity" cannot support a claim against the Customer Property Estate.  While Defendants recognize that finding is law of the case in this proceeding before this Court, Defendants wish to preserve their right to challenge that ruling on any available ground and to appeal that District Court decision to the Second Circuit and the Supreme Court.

### c)    The Alleged Two Year Transfers are not avoidable.

1.    Based on the Stipulated Facts, each of the Alleged Avoidable Transfers to the Initial Transferees made within the Two-Year Period should be found not to be avoidable pursuant to Section 548(a)(1)(A), because the Initial Transferee Defendants did provide value, within the meaning of Section 548(c).  The Alleged Avoidable Transfers were in satisfaction of an antecedent debt (with debt as defined in 11 U.S.C. § 101(12)) on claims (as defined in 11 U.S.C. § 101(5)) against BLMIS and Bernard L. Madoff, based on contract, and Federal and State substantive law.  While some of those claims are based on the obligations of BLMIS

referred to above (the "Obligations"), other claims, with equal validity and in amounts greater than the amount of the Alleged Avoidable Transfers, are not. The Trustee has no power to avoid transfers made in satisfaction of claims defined in 11 U.S.C. § 101(5). See 15 U.S.C. § 78fff-1(a); *Picard v. JPMorgan Chase & Co. (In re Bernard L. Madoff Inv. Secs. LLC),* 721 F.3d 54, 76 (2d Cir. 2013).

2.     Pursuant to Section 550(a)(1), the Trustee is not entitled to recover the Alleged Avoidable Transfers, or the value thereof, from Defendants the Robert Trust, the Joyce Trust, and Joyce C. Auerbach, as Trustee of the Robert Trust and as Trustee of the Joyce Trust, because such transfers are not avoidable under Section 548.

3.     Pursuant to Section 550(a)(2), the Trustee is not entitled to recover the Challenged Transfers, or the value thereof, from Subsequent Transferee Defendant Joyce C. Auerbach, individually and in her capacity as the Personal Representative of the Estate of Robert Auerbach, because the Alleged Avoidable Transfers are not avoidable under Section 548, and the Trustee cannot meet his burden to prove that the transaction was not "for value" as defined in Sections 550 (b), 101(12), and 101(5).

4.     The Deposits into and Withdrawals from the Account should be adjusted using the Bureau of Labor Statistics consumer price index to reflect the value of those transactions in constant dollars. Unless that adjustment is made, the Trustee would receive more than the loss to the Estate. Defendant contends that increases in the consumer price index reported by the United States Bureau of Labor Statistics are evidence of the increase in the value of the amounts deposited by the holders of the Account in BLMIS as adjusted for inflation.

   d)     **The Court should address before trial whether interest will be awarded on the judgment and, if so, in what amount.**

1.     The Trustee has requested pre-judgment interest on the amounts of any transfers

which the Trustee successfully avoids.  As the Court is well aware, the award of interest at all, the rate of interest and the starting date for interest running are all matters left to the Court's discretion  *In re Palermo,* 739 F.3d 99, 107 (2d Cir. 2014).  Defendants believe that in this case, asking to have pre-judgment interest assessed against innocent victims of BLMIS whom the Trustee himself has conceded acted with not a shred of bad faith would be highly inequitable.  That inequity is particularly great in this case given the length of time between the transfers at issue and the Trustee's ability to proceed to trial.  Nonetheless, uncertainty surrounding that issue can materially affect Defendant's willingness settle rather than proceed to trial.

2.     Defendants recognize the limitations on this Court's ability to constrain the District Court's exercise of its discretion, but we believe that it would be fair and helpful to have the issue of interest addressed by this Court prior to the trial.

## V.    ISSUES TO BE TRIED

a)     **The Trustee's Issues**.

The Trustee anticipates that the following issues will be tried before this Court:

1.     Whether the Alleged Avoidable Transfers made by BLMIS to Defendants during the Two-Year Period are avoidable pursuant to Section 548(a)(1)(A);

2.     Whether the Trustee is entitled to recover the Alleged Avoidable Transfers, or the value thereof, from Defendants pursuant to Section 550(a); and

3.     Whether the Trustee is entitled to recover the Alleged Avoidable Transfers, or the value thereof, from Subsequent Transferee Defendant Joyce C. Auerbach, individually and in her capacity as the Personal Representative of the Estate of Robert Auerbach pursuant to Section 550(a).

b)     **Defendants' Issues.**

Defendants anticipate that the issues raised by this proceeding can be resolved without testimony or the need for the submission of Plaintiff's or Defendant's trial exhibits. Defendants anticipate that the following issues will be tried before this Court:

1.    The issues to be tried as set forth in the Trustee's Issues.

2.    Whether any amounts the Trustee is entitled to recover should be reduced to reflect the Deposits into and Withdrawals from the Account all in constant dollars.

## VI.    THE TRUSTEE'S ANTICIPATED TRIAL EXHIBITS

The Trustee offers the following exhibits, which have been incorporated into the Stipulated Facts in Section III above:

| | |
|---|---|
| PX1. | Plea Allocution of Bernard L. Madoff at 1, United States v. Madoff, No. 09-CR-213 (DC) (S.D.N.Y. Mar. 12, 2009). |
| PX2-A. | The Declaration of Bruce G. Dubinsky (which incorporates and includes the Expert Report of Bruce B. Dubinsky and attachments thereto); |
| PX2-B. | Representative exhibits anticipated to be used for Bruce G. Dubinsky's testimony at the Trustees' case-in-chief (*in electronic format only*); |
| PX2-C. | Documents cited in the Expert Report of Bruce G. Dubinsky (*in electronic format only*); |
| PX3. | Customer agreements, trading authorizations, and options agreements between BLMIS and Defendants relating to the Account (account file maintained by BLMIS for the Account); |
| PX4. | August 9, 1999 Correspondence from Robert Auerbach to BLMIS regarding initial Deposit into the Account; |
| PX5. | Monthly customer statements for the Account from August 1999 through November 2008 (books and records maintained by BLMIS relating to its Investment Advisory business); |
| PX6-A. | Declaration of Matthew B. Greenblatt; |
| PX6-B. | Representative exhibits anticipated to be used for Matthew B. Greenblatt's testimony at the Trustees' case-in-chief (*in electronic format only*); |
| PX6-C. | Attachments to the Declaration of Matthew B. Greenblatt (*in electronic format only*); |

| PX6-D. | Customer Statements for all BLMIS Accounts (*in electronic format only*); |
|---|---|
| PX6-E. | Portfolio Management Reports for all BLMIS Accounts (*in electronic format only*); |
| PX6-F. | BLMIS Spiral Notebooks (*in electronic format only*); |
| PX6-G. | BLMIS General Ledgers (*in electronic format only*); |
| PX6-H. | BLMIS Settled Cash Data (*in electronic format only*); |
| PX7. | Account statements for JPMorgan Chase account no. xxxxx1703 evidencing funds transferred by Defendants by check or wire transfer to BLMIS for investment in the Account and/or Defendants' withdrawal of funds from the Account by wire transfer (records produced by JPMorgan Chase in the Liquidation Proceeding; books and records maintained by BLMIS relating to its Investment Advisory business); |
| PX8. | May 20, 2004 Durable General Power of Attorney; |
| PX9. | May 19, 2004 Correspondence from Robert Auerbach and Joyce Auerbach to BLMIS requesting Account name change; |
| PX10. | September 20, 2005 Correspondence from Robert Auerbach and Joyce Auerbach to BLMIS requesting Account name change; |
| PX11. | Robert Auerbach Revocable Trust Agreement dtd 6/29/05; |
| PX12. | Joyce C. Auerbach Revocable Trust Agreement dtd 6/29/05; |
| PX13. | Letters Testamentary Issued to Joyce C. Auerbach and found in Robert Auerbach's Probate File. |
| PX14. | So Ordered Stipulation and Order for Substitution of Defendant Robert Auerbach. |
| PX15. | Written requests made by Defendants to withdraw funds from the Account (account file maintained by BLMIS for the Account); |
| PX16. | Documents produced by Defendants in conjunction with their Customer Claim No. 011098; |
| PX17. | Cancelled checks from JPMorgan Chase account no. xxxxxxxxxx1509 relating to the Account (records produced by JPMorgan Chase in the Liquidation Proceeding); |
| PX18. | Cancelled checks from JPMorgan Chase Bank N.A. ("JPMorgan Chase") account no. xxxxxxxxxx1509 relating to the Account (books and records maintained by BLMIS relating to its Investment Advisory business); |

| PX19. | Stipulation as to Transfers; |
|---|---|
| PX20. | Account Statements from Pershing, LLC account nos. xxxxx6847 and xxxxx3195 evidencing Defendants' receipt of the Withdrawals (records produced by Pershing, LLC in this proceeding); |
| PX21. | Account Statements from Family Management Corporation account nos. xx0114 and xx6847 evidencing Defendants' receipt of the Withdrawals (records produced by Defendants in this proceeding); |
| PX22-A. | Declaration of Lisa M. Collura; |
| PX22-B. | Representative exhibits anticipated to be used for Lisa M. Collura's testimony at the Trustees' case-in-chief (*in electronic format only*); |
| PX22-C. | Attachments to the Declaration of Lisa M. Collura (*in electronic format only*); |
| PX22-D. | BLMIS Global Bank Account Records (statements, deposit slips, cancelled checks, and wire file) (*in electronic format only*); and |
| PX23. | SQL Databases (*in electronic format only*). |

## VII.    DEFENDANTS' ANTICIPATED TRIAL EXHIBITS

Defendants anticipate offering the following exhibits if the stipulated evidence does not fully address the need for evidence:

| DXA. | Illustrative Confirmation Statements from BLMIS to Defendants; |
|---|---|
| DXB. | Documents Showing Stock Index Gains from 1999 through 2008; and |
| DXC. | Documents Showing Performance of Alternative Investments. |

## VIII.    STIPULATIONS AND OBJECTIONS REGARDING TRIAL EXHIBITS

1. Except for the testimonial trial **Exhibits PX2-A, PX6-A, and PX22-A** (addressed in Section IX below), the Parties stipulate to the authenticity and admissibility, respectively, under Federal Rules of Evidence 901 and 803(6), of all of the Trustee's trial exhibits identified in Section VI above.

2.      The Parties expect to stipulate to the authenticity and admissibility, respectively, under Federal Rules of Evidence 901 and 803(6), of all of the Defendants' trial Exhibits identified in Section VII above after Defendants have shared their exhibits with Plaintiff.

## IX.      THE TRUSTEE'S EXPERT WITNESS TESTIMONY

1.      The Parties stipulate that Matthew B. Greenblatt, Lisa M. Collura, and Bruce G. Dubinsky qualify as expert witnesses under Federal Rule of Evidence 702 and other applicable law.

2.      The Parties expect to stipulate that the testimony set forth in the Dubinsky Declaration (**Exhibit PX2-A**), the Greenblatt Declaration (**Exhibit PX6-A**), and the Collura Declaration (**Exhibit PX22-A**) is admissible testimony in the Trustee's case-in-chief, and request that the Court admit such testimony at the final pretrial hearing.

3.      The Trustee will also make these witnesses available for the Defendants' examination at trial on the following topics:

   a.      Lisa M. Collura, who testifies on the subject of the analysis she performed regarding the Trustee's proof of transfers to Defendants as set forth in her expert report dated May 26, 2015;

   b.      Bruce G. Dubinsky, who testifies regarding the Trustee's proof of the Ponzi scheme, BLMIS's insolvency, and other issues as set forth in his expert report dated August 20, 2013; and

   d.      Matthew B. Greenblatt, who testifies regarding (a) the Trustee's methodology for his principal balance calculations for all BLMIS investment advisory accounts as set forth in his expert report dated November 15, 2012, and (b) the principal balance calculation as applied to the Account as set forth in his expert report dated May 26, 2015.

## X.      THE TRUSTEE'S NON-EXPERT WITNESS

1.      During his direct case-in-chief, the Trustee may call the following witness:

   a.      Defendant Joyce C. Auerbach, individually, as Trustee of the Robert Auerbach Revocable Trust dtd 6/29/05, as Trustee of the Joyce Auerbach Revocable Trust 6/29/05, and as Personal Representative of the Estate of

Robert Auerbach, who will testify as to the Transfers in connection with the Account.

### XI.    DEFENDANTS' EXPERT WITNESSES

1.      Defendants will not call any expert witnesses on their case-in-chief at trial.

### XII.    DEFENDANTS' NON-EXPERT WITNESSES

1.      During their case-in-chief, Defendants may call the following witness(es):

      a.      Joyce C. Auerbach;

      b.      Seymour Zises;

      c.      Lisa M. Collura;

      d.      Bruce G. Dubinsky;

      e.      Matthew B. Greenblatt; and

      f.      Irving H. Picard, Trustee.

2.      The Trustee intends to object to calling Messrs. Dubinsky and Greenblatt and Ms. Collura in any capacity other than experts.  The Trustee also intends to object to any attempt to call Mr. Picard as a trial witness, which the Court has ordered is not permitted under the November 10, 2010 Order (1) Establishing Litigation Case Management Procedures for Avoidance Actions and (2) Amending the February 16, 2010 Protective Order.  Section 4(H) of Exhibit A to the Order provides, "Depositions of the Trustee are prohibited absent an order issued by this Court upon a showing of good cause."

### XIII.    OPENING STATEMENTS/CLOSING ARGUMENTS/POST-TRIAL BRIEFING

1.      If an evidentiary hearing is required, the Parties request the opportunity for brief opening statements as well as closing arguments, which would follow the Court's acceptance of the stipulations in this Pretrial Order, the admission into evidence of the trial exhibits and declarations, and any other proceedings the Court deems necessary.  As to any legal issues raised

in connection with the trial, the Parties request the opportunity to brief those issues after the conclusion of the trial.

## XIV.    RELIEF SOUGHT BY THE TRUSTEE

1.      The Trustee seeks to avoid and recover from Defendants $570,000.00 in Alleged Avoidable Transfers, or the value thereof, pursuant to, *inter alia*, §§ 548(a)(1)(A), 550(a) and 551 of the Bankruptcy Code and various provisions of SIPA, including § 78fff-2(c)(3).  Based on the facts and circumstances in this Adversary Proceeding, the Trustee withdraws his request for an award of prejudgment interest with respect to the Alleged Avoidable Transfers.  The Trustee still seeks such other and further relief as the Court deems just, proper, and equitable.

## XV.    ESTIMATED TIME OF TRIAL

1.      Given the stipulations as set forth in this Pretrial Order, the Parties do not anticipate the trial to take more than two days.  The Trustee's witnesses are available to attend a trial in Summer 2016.  Defendants prefer to try the case in Fall 2016.

2.      The Court hereby schedules the trial of this matter to commence at 10:00 a.m. on **August 3ʳᵈ**, 2016. ~~and continue over the course of two days, including~~ ~~_____ ____, if necessary.~~

Dated: April 12, 2016
     New York, New York

**BAKER & HOSTETLER LLP**

By: /s/ Nicholas J. Cremona
45 Rockefeller Plaza
New York, New York 10111
Telephone:  212.589.4200
Facsimile:  212.589.4201
David J. Sheehan
Email:  dsheehan@bakerlaw.com
Nicholas J. Cremona

**FOLKENFLIK & MCGERITY LLP**

By: /s/ *Max Folkenflik*
1500 Broadway, 21st Floor
New York, New York 10036
Telephone:  212.757.0400
Facsimile:  212.757.2010
Max Folkenflik
Email:  max@fmlaw.net

Email:  ncremona@bakerlaw.com

and

811 Main Street, Suite 1100
Houston, Texas 77002
Telephone:  713.646.1346
Facsimile:  713.751.1717
Dean D. Hunt
Email:  dhunt@bakerlaw.com

*Attorneys for Plaintiff Irving H. Picard,*
*Trustee for the liquidation of Bernard L.*
*Madoff Investment Securities LLC and the*
*consolidated estate of Bernard L. Madoff*

*Attorneys for Defendants Robert Auerbach*
*Revocable Trust dtd 6/29/05, Joyce Auerbach*
*Revocable Trust 6/29/05, and Joyce C.*
*Auerbach, individually, as Trustee of the*
*Robert Auerbach Revocable Trust dtd 6/29/05,*
*as Trustee of the Joyce Auerbach Revocable*
*Trust 6/29/05, and as Personal Representative*
*of the Estate of Robert Auerbach*

SO ORDERED:

Dated: __**April 14, 2016**__
New York, New York

**/s/ STUART M. BERNSTEIN**_____
HONORABLE STUART M. BERNSTEIN
UNITED STATES BANKRUPTCY JUDGE