**Baker & Hostetler LLP**

45 Rockefeller Plaza
New York, NY 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee for the*
*Substantively Consolidated SIPA Liquidation of*
*Bernard L. Madoff Investment Securities LLC and*
*the estate of Bernard L. Madoff*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, <br><br> Plaintiff-Applicant, <br><br> v. <br><br> BERNARD L. MADOFF INVESTMENT SECURITIES LLC, <br><br> Defendant. | No. 08-01789 (SMB) <br><br> SIPA LIQUIDATION <br><br> (Substantively Consolidated) |
| In re: <br><br> BERNARD L. MADOFF, <br><br> Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, <br><br> Plaintiff, <br><br> v. <br><br> FEDERICO CERETTI, *et al.* <br><br> Defendants. | Adv. Pro. No. 09-01161 (SMB) |

## MEMORANDUM OF LAW IN SUPPORT OF THE TRUSTEE'S MOTION TO COMPEL DEFENDANTS TO PRODUCE DOCUMENTS AND PARTICIPATE IN DISCOVERY

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ....................................................................................................2

BACKGROUND ...........................................................................................................................3

      A.     Relevant Factual Background and Procedural History...............................3

      B.     The Requests and the Funds' Responses.....................................................4

      C.     The Bermuda Discovery Proceedings ..........................................................6

      D.     The Bermuda Action Requests ....................................................................6

ARGUMENT .................................................................................................................................7

    I.     THE FUNDS POSSESS OR HAVE CUSTODY OF THE BERMUDA
           PRODUCTIONS, AND THE FUNDS MUST PRODUCE THEM IN
           THEIR ENTIRETY..........................................................................................7

    II.    THE COURT SHOULD ORDER THE BERMUDA NON-FUND
           DEFENDANTS TO PRODUCE THEIR RESPECTIVE BERMUDA
           PRODUCTIONS DIRECTLY TO THE TRUSTEE..............................................8

    III.   THE FUNDS "CONTROL" ALL OF THE SERVICE PROVIDERS'
           DOCUMENTS THAT RELATE TO THE FUNDS AND MUST
           COLLECT AND PRODUCE ALL SUCH DOCUMENTS IN THE U.S.
           PROCEEDING...............................................................................................9

      A.     The Funds engaged third-party service providers to manage,
               administer, and perform all of the Funds' day-to-day business
               activities...................................................................................................9

      B.     The Service Provider Agreements expressly convey to the Funds
               the right to possess and control all documents created, received, or
               maintained by the Service Providers that relate to the Funds. .................11

      C.     Under Rule 34, the Funds "control" all documents that were
               created, received, or maintained by the Service Providers during
               the course of their service engagements, and the Funds must
               collect and produce them in the U.S. Proceeding.....................................13

      D.     Bermuda law does not prohibit the Funds from collecting from the
               Service Providers all documents responsive to the Requests and
               producing them to the Trustee. .................................................................16

    IV.   THE FUNDS' OBJECTION TO PRODUCING DOCUMENTS
           CREATED AFTER THE COMMENCEMENT OF THE FUNDS'
            LIQUIDATIONS SHOULD BE OVERRULED. ..................................................19

## TABLE OF CONTENTS
### (continued)

**Page**

V.    THE COURT SHOULD ORDER THE NON-FUND DEFENDANTS TO
CONFER UNDER RULE 26(f). ...........................................................................19

CONCLUSION ..........................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Am. Rock Salt Co. v. Norfolk S. Corp.*,
   228 F.R.D. 426 (W.D.N.Y. 2004) ....................................................................... 13

*In re Bankers Trust Co.*,
   61 F.3d 465 (6th Cir. 1995) ............................................................................... 7

*Cooper Indus., Inc. v. British Aerospace*,
   102 F.R.D. 918 (S.D.N.Y. 1984) .......................................................... 13, 14, 15

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
   236 F.R.D. 177 (S.D.N.Y. 2006) .................................................................. 13, 14

*Golden Trade S.r.L. v. Lee Apparel Co.*,
   143 F.R.D. 514 (S.D.N.Y. 1992) .................................................................. 13, 14

*M.L.C., Inc. v. N. Am. Philips Corp.*,
   109 F.R.D. 134 (S.D.N.Y. 1986) ....................................................................... 13

*Mahon v. Rahn*
   [1998] Q.B. 424 ......................................................................................... 16, 17

*Marc Rich & Co., A.G. v. United States*,
   707 F.2d 663 (2d Cir. 1983) ........................................................................... 14

*In re NTL, Inc. Sec. Litig.*,
   244 F.R.D. 179 (S.D.N.Y. 2007) .................................................................. 13, 14

*Prudential Assurance Co. v. Fountain Page, Ltd.*
   [1991] 1 W.L.R. 756 (QB) ............................................................................... 17

*SEC v. Strauss*,
   No. 09 Civ. 4150 (RMB)(HBP), 2009 WL 3459204 (S.D.N.Y. Oct. 28, 2009) .............. 13, 14

*Societe Internationale Pour Participations Industrielles et Commerciales, S.A. v.
   Rogers*,
   357 U.S. 197 (1958) .................................................................................. 13, 18

*Societe Nationale Industrielle Aerospatiale v. United States District Court for the
   Southern District of Iowa*,
   482 U.S. 522 (1987) ....................................................................................... 8

*Taylor v. Director of the Serious Fraud Office*
   [1999] 2 A.C. 177 (HL) ............................................................................... 16, 17

*United States v. Stein*,
   488 F. Supp. 2d 350 (S.D.N.Y. 2007) ............................................................. 14

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

**Rules**

Fed. R. Bankr. P. 7037 ........................................................................................................... 1

Fed. R. Civ. P. 16 .................................................................................................................... 4

Fed. R. Civ. P. 26 ............................................................................................................ *passim*

Fed. R. Civ. P. 34 ............................................................................................................ *passim*

Fed. R. Civ. P. 37 .................................................................................................................... 1

Local Civil Rule 37.1 .............................................................................................................. 5

**Other Authorities**

Restatement (Third) of the Foreign Relations Law of the United States § 442
    (Am. Law. Inst. 1987) ...................................................................................................... 8

Irving H. Picard, as trustee (the "Trustee") for the substantively consolidated liquidation

of the business of Bernard L. Madoff Investment Securities LLC ("BLMIS"), under the

Securities Investor Protection Act, 15 U.S.C. §§ 78aaa-*lll* ("SIPA"), and the estate of Bernard L.

Madoff ("Madoff"), by and through his undersigned counsel, respectfully submits this

Memorandum of Law in support of his motion (the "Motion") under Rule 37 of the Federal

Rules of Civil Procedure (the "Rules") (made applicable by Rule 7037 of the Federal Rules of

Bankruptcy Procedure) for entry of an Order:  (i) compelling the production from defendants

Kingate Global Fund, Ltd. ("Kingate Global") and Kingate Euro Fund, Ltd. ("Kingate Euro,"

and with Kingate Global, the "Funds") and defendants Kingate Management Limited ("KML"),

defendants FIM Limited and FIM Advisers LLP (collectively, "FIM"), defendants Federico

Ceretti and Carlo Grosso, and defendants First Peninsula Trustees Limited, Port of Hercules

Trustees Limited, Alpine Trustees Limited, Ashby Holding Services Limited, Ashby Investment

Services Limited, El Prela Group Holding Services Limited, and El Prela Trading Investments

Limited (collectively, the "Trust Defendants" and with KML, FIM, Ceretti and Grosso, the

"Bermuda Non-Fund Defendants") of all documents produced or exchanged in discovery in the

Bermuda Action[1]; and (ii) requiring the Bermuda Non-Fund Defendants, defendants The Ashby

Trust and El Prela Trust (through their respective trustees), and defendants Citi Hedge Fund

Services Limited ("Citi Hedge") and HSBC Bank Bermuda Limited ("HSBC Bank Bermuda")[2]

to confer with the Funds and the Trustee in accordance with Rule 26(f) and participate in party

discovery in this proceeding.  The Bermuda Non-Fund Defendants, The Ashby Trust, El Prela

---

[1] The term "Bermuda Action" refers to the civil action commenced by the Funds against KML, FIM, the Trust Defendants, Carlo Grosso, and Federico Ceretti in the Supreme Court of Bermuda, Civil Jurisdiction, Commercial List, bearing the caption *Kingate Global Fund Ltd. v. Kingate Mgmt. Ltd.*, No. 2010:454.

[2] The Bermuda Non-Fund Defendants thus consist of all of the defendants in this proceeding, with the exception of the Funds, The Ashby Trust, El Prela Trust, Citi Hedge, and HSBC Bank Bermuda.

Trust, Citi Hedge, and HSBC Bank Bermuda will be referred to collectively as the "Non-Fund Defendants."

## PRELIMINARY STATEMENT

The Funds are withholding from production approximately 139,800 documents in their possession that they received from the Bermuda Non-Fund Defendants in discovery in the Bermuda Action (the "Bermuda Productions"). Those documents are discoverable and relevant to the claims and defenses raised in this proceeding. The Funds have informed this Court over the past several months that Bermuda law protects the Bermuda Productions from disclosure in this proceeding and that the Bermuda Non-Fund Defendants will not provide the Funds—outside of the Bermuda Action—with documents to which the Funds are contractually entitled. The Funds did not move for relief before this Court. In sealed proceedings in Bermuda, however, the Funds sought leave of the Bermuda court to produce the Bermuda Productions to the Trustee. The Bermuda Non-Fund Defendants objected to the Funds' application, and the Bermuda court has adjourned the hearing on the Funds' application until this Court decides this Motion. Under applicable federal law, the Trustee's discovery rights to all documents responsive to the Trustee's requests for production, including the Bermuda Productions, are plain. The Trustee seeks an order of this Court directing the production of those documents within ten days of entry of the Court's order.

The Trustee is also entitled to have the Bermuda Productions produced by the Bermuda Non-Fund Defendants, and he has served those parties with targeted requests for production under Rule 34. The Bermuda Non-Fund Defendants, however, refuse to comply. Indeed, each of the Non-Fund Defendants has refused to participate in any form of party discovery before this Court. By operation of the Rules no stay of discovery is in place, the Non-Fund Defendants have not moved for a stay, and no order of the Court operates as a stay in this proceeding.

2

Accordingly, the Court should order the Bermuda Non-Fund Defendants to produce immediately the Bermuda Productions in response to the Trustee's Rule 34 request and order the Non-Fund Defendants to confer as required by Rule 26(f) and participate in party discovery.

## BACKGROUND

### A.    Relevant Factual Background and Procedural History

In March 2014, the Trustee filed a Fourth Amended Complaint against the Funds and the Non-Fund Defendants seeking the avoidance and recovery of transfers exceeding $925 million (the "U.S. Proceeding").[3]  The parties thereafter stipulated to an adjournment of the initial pretrial conference as permitted by Court order.[4]  Four months later, the Funds moved to dismiss the Fourth Amended Complaint.[5]  In August 2015, the Court issued an order granting in part but substantially denying the Funds' motion.[6]  On September 30, 2015, the Funds answered and asserted affirmative defenses to the Fourth Amended Complaint.[7]

In December 2014, the Court entered the Order Concerning Further Proceedings on Extraterritoriality Motion and Trustee's Omnibus Motion for Leave to Replead and for Limited Discovery (the "ET Order").[8]  The ET Order governs procedures for this Court's consideration on remand of the effects of the District Court's Opinion and Order[9] on the extraterritorial application of 11 U.S.C. § 550 to the many adversary proceedings pending before this Court.

---

[3] ECF Doc. No. 100.

[4] ECF Doc. No. 101.

[5] ECF Doc. Nos. 111, 112.

[6] ECF Doc. No. 200.

[7] ECF Doc. No. 211.

[8] *Sec. Inv'r Prot. Corp. v. BLMIS*, No. 08-01789 (SMB), ECF Doc. No. 8800.  A copy of the ET Order is attached to the Declaration of Anthony M. Gruppuso, Esq. ("Gruppuso Decl.") as Exhibit A.

[9] *Sec. Inv'r Prot. Corp. v. BLMIS*, No. 12-mc-115 (JSR), ECF Doc. No. 551.

The Extraterritoriality Motion, to which the Non-Fund Defendants are parties, is currently under the Court's consideration.

In October 2015, prior to the initial pretrial conference,[10] the Trustee and the Funds conferred on several occasions and jointly submitted a Case Management Plan for the Court's consideration, which the Court "so ordered"[11] and is in effect to date. The Non-Fund Defendants have taken the position that they need not participate in Rule 26(f) or Rule 16 conferences, ostensibly because the Extraterritoriality Motion was and is still pending before the Court.

### B.    The Requests and the Funds' Responses

The Trustee served the Funds with requests for production under Rule 34 (the "Requests") on October 7, 2015.[12] The Requests seek documents concerning the Funds' formation and structure, contractual relationships, due diligence and investment activity, financial and accounting records, subscriptions and redemptions, bank accounts, and customer accounts and transfers, as well as documents concerning BLMIS, certain specific individuals and entities, and investigations and litigation concerning the Funds.[13] All documents in the Funds' possession, custody, or control that are responsive to the Requests are relevant to the claims or defenses in this proceeding under Rule 26,[14] because the Funds existed solely for exclusive investment with BLMIS.

The Funds asserted twenty-one "General Objections" to the production of documents responsive to the Requests.[15] Under "General Objection # 21," the Funds object to each of the

---

[10] ECF Doc. No. 197 (setting the conference for October 28, 2015).

[11] ECF Doc. No. 227. The "so ordered" Case Management Plan will be referred to as the "CMO."

[12] Gruppuso Decl. Ex. B.

[13] *Id.*

[14] *See* Fed. R. Civ. P. 26(b)(1).

[15] Gruppuso Decl. Ex. C, at 2-5.

Requests to the extent each seeks "information provided to [the Funds] by other defendants in this case in connection with [the Bermuda Action], as production of such information may require the Joint Liquidators of [the Funds] to breach their obligations under Bermuda law and/or agreements with these producing parties."[16]

During the meet-and-confer process, the Funds disclosed that they obtained approximately 139,800 documents through discovery in the Bermuda Action, as follows:  (i) from KML, approximately 66,000 documents; (ii) from FIM, approximately 47,000 documents; and (iii) from the Trust Defendants, approximately 26,800.[17]  By General Objection # 21, the Funds contend that "an implied undertaking" arising under Bermuda law bars them from producing to the Trustee *any* of those documents.[18]

Only Request # 38, however, demands production of discovery exchanged in the Bermuda Action, and all of the documents produced in the Bermuda Action are responsive to one or more of the other forty-two Requests.[19]  The Funds, moreover, have the contractual right and practical ability to demand and obtain all documents created or received by KML and FIM during their respective service engagements for the Funds, independent of whether copies of those documents were produced in discovery in the Bermuda Action.  The burden of demonstrating that Bermuda law blocks the Funds' production of documents to the Trustee rests with the Funds, but they have not moved this Court for relief from their discovery obligations.

---

[16] *Id.* at 5.  The Trustee has submitted the Requests and the Funds' written responses and objections as Exhibit B and Exhibit C respectively to the Gruppuso Decl.  To ensure compliance with Rule 37.1 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, the Trustee has also attached as Exhibit A to this Memorandum a chart setting forth verbatim the Requests and the Funds' General Objection # 21 at issue.

[17] *Id.* Ex. D, at 4.

[18] *See id.* Ex. E, at 1.

[19] The Funds' counsel confirmed to the Trustee's counsel during a conference call on December 15, 2015, that the Funds had asserted General Objection # 21 in response to each of the Requests and were withholding the entirety of the Bermuda Productions pursuant to it.

To date, the Funds have delayed compliance with their discovery obligations in the U.S.

Proceeding in favor of applying to the Bermuda court for relief from their "implied undertaking"

and for leave to produce the Bermuda Productions to the Trustee (the "Funds' application").

### C.    The Bermuda Discovery Proceedings

In November 2015, the Funds' application was filed, and the Bermuda court held a

hearing to address it.  Despite the need for expedition, as timely document production facilitated

depositions and other aspects of discovery in the U.S. Proceeding, the merits of the Funds'

application were not argued, and a second hearing date was set for March 17, 2016.

On that date, the Bermuda court heard argument concerning whether an adjournment of

the hearing was appropriate while the Trustee prosecuted a motion to compel discovery in this

Court.  The Funds asserted that the hearing should go forward, and the Bermuda Non-Fund

Defendants argued in favor of an adjournment.  Recognizing the Trustee's intent to move to

compel discovery from the Funds and the Bermuda Non-Fund Defendants in the U.S.

Proceeding, the Bermuda court reasoned that this Court's decision on the Trustee's motion

would be a material consideration to the Bermuda court's disposition of the Funds' application.

The Bermuda court thus adjourned the hearing on the discovery issues, without date.[20]

### D.    The Bermuda Action Requests

On April 15, 2016, the Trustee served requests for production under Rule 34 on the

Bermuda Non-Fund Defendants that, among other things, seek the production of all documents

produced in discovery in the Bermuda Action (the "Bermuda Action Requests").[21]  The Bermuda

---

[20] A copy of the Bermuda court's Interim Ruling on Plaintiff's Summons of 13th November 2015 is attached to the Gruppuso Decl. as Exhibit F.

[21] Bermuda Action Request #3 demands, "All Documents concerning discovery or fact-finding in the Bermuda Action, including, but not limited to, all Documents produced, all witness statements, and all other forms of written discovery."  Attached as Exhibit G to the Gruppuso Decl. are copies of the cover letter and the Bermuda Action

Non-Fund Defendants have informed the Trustee that they are not subject to discovery[22] and

have also objected in the Bermuda Action to the Funds' production of the Bermuda Productions

to the Trustee.  The Trustee does not expect the Bermuda Non-Fund Defendants to comply with

the Bermuda Action Requests absent order of this Court.

## ARGUMENT

**I.    THE FUNDS POSSESS OR HAVE CUSTODY OF THE BERMUDA
      PRODUCTIONS, AND THE FUNDS MUST PRODUCE THEM IN THEIR
      ENTIRETY.**

Under Rule 26 and Rule 34, a party must produce documents relevant to a party's claims

or defenses within the producing party's "possession, custody, or control."[23]  The Rule 34

standard is disjunctive, and only one of the conditions for production must therefore be satisfied.

Here, the Funds do not dispute that they have possession and custody of the Bermuda

Productions.  The Funds' objection to production of the Bermuda Productions relies on an

implicit lack of control arising under Bermuda law prohibiting disclosure of documents received

in discovery in Bermuda litigation.  Because the elements of possession and custody are satisfied

as to the Bermuda Productions, and because all constituent documents are relevant and

responsive to the Requests,[24] the Bermuda Productions must be produced in their entirety.[25]

Limitations that Bermuda law may place on production to the Trustee of the Bermuda

Productions are irrelevant and do not overcome the Funds' obligations under the Rules

---

Requests as served on KML.  The same four requests for production were served on the other Bermuda Non-Fund Defendants.

[22] Gruppuso Decl. Ex. H.

[23] Fed. R. Civ. P. 34(a)(1).

[24] Gruppuso Decl. Ex. B, at 18 ¶ 38.

[25] *See In re Bankers Trust Co.*, 61 F.3d 465, 469-71 (6th Cir. 1995) (affirming order directing defendant bank to produce documents, which were received from Federal Reserve Board and were in bank's actual physical possession, and reasoning that "parties in possession of documents forwarded to them by a federal agency have 'possession, custody or control' within the meaning of Rule 34, notwithstanding the fact that the agency by regulation retains ownership and restricts disclosure").

applicable in the U.S. Proceeding.[26]  The Court should strike General Objection #21 and order

the Funds to produce documents responsive to each of the Requests.

## II.    THE COURT SHOULD ORDER THE BERMUDA NON-FUND DEFENDANTS TO PRODUCE THEIR RESPECTIVE BERMUDA PRODUCTIONS DIRECTLY TO THE TRUSTEE.

The Bermuda Non-Fund Defendants have opposed the Funds' application before the

Bermuda court for leave from the implied undertaking to produce the Bermuda Productions to

the Trustee.  The Bermuda Productions are relevant to the claims presented in the U.S.

Proceeding.  The Bermuda Non-Fund Defendants are parties who have moved to dismiss the

Trustee's claims under Rule 12 and who thereafter did not participate in the Rule 26(f)

conferences between the Funds and the Trustee.  The Rules do not, however, provide for an

automatic stay of discovery while a dispositive motion is pending decision before a federal court,

and the Bermuda Non-Fund Defendants have not moved for a protective order barring discovery

against them until their motion to dismiss (i.e., the Extraterritoriality Motion) is decided.  The

Trustee requests that the Court order the Bermuda Non-Fund Defendants to comply immediately

---

[26] The Funds may argue that section 442(1)(c) of the Restatement (Third) of the Foreign Relations Law of the United States, which prescribes several factors for a court to consider when determining whether to order a litigant to produce documents or information located abroad, applies here and leads to the conclusion that a discovery order is unwarranted.  Restatement (Third) of the Foreign Relations Law of the United States § 442(1)(c) (Am. Law. Inst. 1987) ("In deciding whether to issue an order directing production of information located abroad . . . .").  Those factors are:  "the importance to the investigation or litigation of the documents or other information requested; the degree of specificity of the request; whether the information originated in the United States; the availability of alternative means of securing the information; and the extent to which noncompliance with the request would undermine important interests of the United States, or compliance with the request would undermine important interests of the state where the information is located."  Restatement (Third) of the Foreign Relations Law of the United States § 442(1)(c); *see also Societe Nationale Industrielle Aerospatiale v. United States District Court for the Southern District of Iowa*, 482 U.S. 522, 544 & n.28 (1987).  Section 442(1)(c) does not, however, apply in this case because the Bermuda Productions are not "located abroad."  The Funds' counsel has advised that the Bermuda Productions are stored electronically in a database accessible to the Funds' counsel.  The Trustee has asked the Funds on several occasions to disclose the physical location of those documents, but they have refused.  The Trustee believes that for purposes of section 442(1)(c), the Bermuda Productions are located within the United States.  Even if the Bermuda Productions were located abroad, the balance of the applicable factors would weigh heavily in favor of production of the documents to the Trustee.

with Request # 3 of the Bermuda Action Requests and produce all documents responsive to it

within seven days.[27]

## III.    THE FUNDS "CONTROL" ALL OF THE SERVICE PROVIDERS' DOCUMENTS THAT RELATE TO THE FUNDS AND MUST COLLECT AND PRODUCE ALL SUCH DOCUMENTS IN THE U.S. PROCEEDING.

With this Motion, the Trustee seeks more than simply discovery of the Bermuda

Productions.  The Funds must collect and produce all relevant documents responsive to each of

the Requests.  With General Objection #21 stricken, the Funds will satisfy Request #38 by

producing the Bermuda Productions.[28]  Producing the Bermuda Productions may be insufficient,

however, to satisfy the Funds' obligations to produce all documents responsive to Requests ##1-

37 and ##39-43.  Because the Funds "control" within the meaning of Rule 34 all documents

created, received, or maintained by their Service Providers,[29] the Funds are obligated to collect

and produce all such relevant and responsive documents to comply with the Requests.

### A.    The Funds engaged third-party service providers to manage, administer, and perform all of the Funds' day-to-day business activities.

The Funds had boards of directors but no employees.  Accordingly, through a series of

agreements, the Funds delegated to affiliated service providers the duty to conduct all of the

Funds' day-to-day business activities.  KML served as the Funds' manager; FIM served as

consultant to KML and distributor for the Funds; Citi Hedge and its predecessors Hemisphere

Management Limited and BISYS Hedge Fund Services Limited (collectively, the

---

[27] The Trustee expects the Bermuda Non-Fund Defendants to maintain their position that they need not participate in discovery while the Extraterritoriality Motion is pending and that they consequently will refuse to comply with the Bermuda Action Requests.  Should, however, the Bermuda Non-Fund Defendants fully comply with the Bermuda Action Requests prior to the hearing on this Motion on May 18, 2016, the Trustee will withdraw this Motion to the extent it seeks the production of the Bermuda Productions from the Bermuda Non-Fund Defendants.  That time-table provides the Bermuda Non-Fund Defendants with more than the general thirty-day response period set forth in Rule 34(b)(2)(A).

[28] Gruppuso Decl. Ex. B, Request No. 38.

[29] *See infra* pp. 9-10 & note 30 (defining "Service Providers").

"Administrators") served as the Funds' administrator and registrar; and HSBC Bank Bermuda

(formerly known as Bank of Bermuda Limited) served as the Funds' custodian.[30]

The "Service Provider Agreements"[31] created a structure that held KML responsible for

implementing the Funds' investment strategy, performing all duties and functions necessary to

the administration of the Funds, and marketing and selling shares in the Funds.  KML had the

right to delegate those responsibilities, and it did so.  The Administrators became responsible for

carrying on the general administration of the Funds, including calculating and publishing the

Funds' net asset value, calculating fees due the Service Providers, providing a corporate

secretary, maintaining the corporate register, maintaining the principal corporate records and

books of account, preparing draft financial statements, arranging for an annual audit of the

Funds, processing all subscription and redemption requests, answering all correspondence with

shareholders, and establishing and maintaining the Funds' bank, brokerage, and custodian

accounts.  As custodian, HSBC Bank Bermuda became responsible for the custody of securities

and cash owned by the Funds, maintaining bank accounts on behalf of the Funds, disbursing cash

(for example, to pay Service Provider fees and shareholder redemptions), and performing all

functions necessary to the issuance, subscription, redemption, and transfer of the Funds' shares.

And as consultant and distributor, FIM handled all aspects of marketing the Funds to potential

investors and provided consulting services to KML on all matters relating to the Funds'

---

[30] KML, the Administrators, FIM, and HSBC Bank Bermuda will collectively be referred to as the "Service Providers."

[31] The term Service Provider Agreements refers to the agreements between the Funds and their Service Providers, which the Trustee has described on the attached Exhibit C and has submitted to the Court as Exhibit I through Exhibit Z of the Gruppuso Decl.

investments, including presentations to the Funds' directors on the status of the Funds'

performance.[32]

  With that structure, the Funds outsourced all day-to-day aspects of their business affairs.

Although the Service Providers effectively operated the Funds (under the day-to-day supervision

of KML and its principals Ceretti and Grosso), it was understood and agreed that the records

relating to the Funds' business belonged to the Funds, not the Service Providers.

**B. The Service Provider Agreements expressly convey to the Funds the right to possess and control all documents created, received, or maintained by the Service Providers that relate to the Funds.**

  Because the Service Providers administered all of the Funds' business activities, the

Service Providers created, received, and maintained all of the Funds' documents.  The Service

Provider Agreements expressly recognized the Funds' rights in those documents.[33]  For example,

the Management Agreement dated as of January 1, 2006 between KML and Kingate Global

provides:

> Upon termination of the appointment of the Manager, . . . the Manager shall deliver or procure to be delivered to the Fund or successor manager, or as it shall direct, all books of account, records, other registers, correspondence, and documents relating to the affairs of or belonging to the Fund in the possession of or under the control of the Manager.[34]

---

[32] Attached to this Memorandum as Exhibit B are a series of charts quoting directly from the various agreements between the Funds and the Service Providers showing in detail the broad responsibilities the Service Providers collectively possessed to operate the Funds' business.

[33] The Trustee has culled each of the pertinent contractual provisions from the Service Provider Agreements and compiled them in a chart attached to this Memorandum as Exhibit C.

[34] *See* Exhibit C (reciting from clause 5.8(d) of the January 2006 KGF Management Agreement, as defined therein). *See also id.* (reciting from clause 13.4 of the 1994 KGF Manager Agreement, as defined therein, and from clause 5.8(d) of the July 2004 KGF Co-Manager Agreement, as defined therein).

The Funds' administration,[35] registrar,[36] and distribution[37] agreements all conferred identical rights upon the Funds. The consulting services agreements between KML and FIM likewise obligated FIM to deliver to KML all such documents, and the Funds' rights to obtain FIM's documents thus flow through their rights to obtain documents from KML.[38] The Manager Agreement dated May 1, 2000 between KML and Kingate Euro and the custodian agreements between the Funds and HSBC Bank Bermuda used different language to confer the Funds' rights to obtain documents and information. Although those agreements did not mandate delivery to the Funds of documents created and received during the service engagements, they obligated KML and HSBC Bank Bermuda to make such documents available to the Funds upon request.[39]

Those express contractual provisions establish the Funds' right to possess, have custody of, and control all documents that the Service Providers may have created, received, or maintained relating to the Funds.

---

[35] *See id.* (reciting from clause 13.4 of the 1994 Administration Agreement, as defined therein, from clause 13.4 of the 2000 Administration Agreements, as defined therein, and from clause 14.1 of the 2007 Administration Agreements, as defined therein).

[36] *See id.* (reciting from clause 12.4 of the 2000 Registrar Agreements, as defined therein).

[37] *See id.* (reciting from clause 8.3 of the 2001 Distribution Agreements, as defined therein).

[38] *See id.* (reciting from clause 7 of the 1995 Consulting Services Agreement, as defined therein, and from clause 14.3 of the 2001 Consulting Services Agreements, as defined therein).

[39] *See id.* (reciting from clause 4.6 of the May 2000 KEF Manager Agreement, as defined therein, which required KML to deliver to Kingate Euro, upon its request, "information regarding the activities (i) conducted by [KML] since the inception of this Agreement . . . and (ii) proposed to be conducted by [KML]"); *id.* (reciting from clause 2.5 of the May 2000 KEF Manager Agreement, as defined therein, which required KML to maintain and preserve all documents "generated or received by [KML] in the ordinary course of business pertaining to the financial condition of [Kingate Euro] or to the compensation payable to [KML]," which Kingate Euro's auditors were permitted to review and copy ); *id.* (reciting from clause 9(C) and clause 19(B) of the March 1994 Custodian Agreement, as defined therein, which required HSBC Bank Bermuda to permit Kingate Global to inspect all books, records, and statements maintained by HSBC Bank Bermuda on Kingate Global's behalf and to deliver to Kingate Global upon termination of the custodian engagement "any . . . property" of Kingate Global in HSBC Bank Bermuda's custody, and from clause 9(C), 18(B), and 21 of the May 2000 Custodian Agreement, as defined therein, which provided for such right of inspection and obligation to deliver property, as well as authorizing HSBC Bank Bermuda "to maintain all accounts, corporate books and other documents relating to the [Funds] or [their] affairs . . . and to produce at any time during the course of legal proceedings" such documents).

**C.    Under Rule 34, the Funds "control" all documents that were created, received, or maintained by the Service Providers during the course of their service engagements, and the Funds must collect and produce them in the U.S. Proceeding.**

The Trustee is entitled to documents that are relevant and are responsive to the Requests

that are in the "possession, custody or control" of the Funds.[40]  Whether the Funds "control"

documents—and thus have an obligation to collect and produce them under Rule 34—is to be

viewed broadly.[41]  The Funds need not have "legal ownership or actual physical possession" of

documents to "control" them for purposes of production.  Although ownership or possession will

trigger the obligation to produce, "the right, authority, or practical ability to obtain" documents

will also establish the Funds' control of them as a matter of law.[42]  To find that the Funds have

the "practical ability" to obtain documents that it must collect and produce, the Funds need only

have access to documents and a mechanism for obtaining them.[43]  The Funds control documents

---

[40] Fed. R. Civ. P. 34(a)(1).  That disclosure to the Trustee of the Bermuda Productions might violate an implied undertaking in contravention of Bermuda common law does not preclude a finding that the Bermuda Productions are within the Funds' control.  *See Societe Internationale Pour Participations Industrielles et Commerciales, S.A. v. Rogers*, 357 U.S. 197, 204-06 (1958) (concluding that the responding party controlled documents under Rule 34, notwithstanding that foreign law provided criminal penalties for disclosure of the documents sought).

[41] *SEC v. Strauss*, No. 09 Civ. 4150 (RMB)(HBP), 2009 WL 3459204, at *7 (S.D.N.Y. Oct. 28, 2009) ("Control is construed broadly."); *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 236 F.R.D. 177, 180 (S.D.N.Y. 2006) ("The concept of control has been construed broadly.").

[42] *In re NTL, Inc. Sec. Litig.*, 244 F.R.D. 179, 195 (S.D.N.Y. 2007); *see also Strauss*, 2009 WL 3459204 at *7 (recognizing that a party "has control over material that it has the practical ability to obtain" or "that it has the legal right to obtain"); *In re Flag Telecom*, 236 F.R.D. at 180 ("If the producing party has the legal right or the practical ability to obtain the documents, then it is deemed to have control, even if the documents are actually in the possession of a non-party."); *Golden Trade S.r.L. v. Lee Apparel Co.*, 143 F.R.D. 514, 525 (S.D.N.Y. 1992); *M.L.C., Inc. v. N. Am. Philips Corp.*, 109 F.R.D. 134, 136 (S.D.N.Y. 1986) ("Control includes the legal right of the producing party to obtain documents from another source upon demand.").

[43] *See Cooper Indus., Inc. v. British Aerospace*, 102 F.R.D. 918, 919-20 & n.2 (S.D.N.Y. 1984) (announcing that "documents and records that a corporation requires in the normal course of its business are presumed to be in its control unless the corporation proves otherwise"); *see also Am. Rock Salt Co. v. Norfolk S. Corp.*, 228 F.R.D. 426, 457 (W.D.N.Y. 2004) ("[D]ocuments held by a party's agent are deemed to be in a party's control.").

wherever they may be located, because "the test for production of documents is control, not location."[44]

There can be no reasonable dispute that the Funds control all documents relating to their affairs that were created, received, or maintained by KML, the Administrators, HSBC Bank Bermuda, and FIM during the course of their engagements. The Service Provider Agreements expressly provide the Funds with the legal right to obtain all such documents,[45] because they either require delivery of actual physical possession of such documents to the Funds upon termination of the engagement[46] or permit access to such documents at the Funds' request.[47]

The Funds, furthermore, had (and have) "the practical ability to obtain" such documents from the Service Providers and have received documents upon request to the Service Providers without formal legal action.[48] All of the documents at issue were created, received, or maintained for the sole purpose of operating the Funds and conducting the Funds' business with

---

[44] *Marc Rich & Co., A.G. v. United States*, 707 F.2d 663, 667 (2d Cir. 1983); *In re NTL,* 244 F.R.D. at 195 ("The test for the production of documents is control, not location. Documents may be within the control of a party even if they are located abroad."); *In re Flag Telecom*, 236 F.R.D. at 182 ("[A] discovery demand is proper under Rule 34 when it is served on a party to the action for documents within their custody or control regardless of where the documents are located."); *Cooper Indus.*, 102 F.R.D. at 920 ("The fact that the [demanded] documents are situated in a foreign country does not bar their discovery.").

[45] *Strauss*, 2009 WL 3459204 at *8 (finding that party had legal right to obtain documents because contract with third-party possessor permitted party to access and obtain those documents) (citing *United States v. Stein*, 488 F. Supp. 2d 350, 363 (S.D.N.Y. 2007) (observing that the meaning of "control" is the same whether raised under Rule 34, Rule 45, or Fed. Crim. R. Proc. 16, and concluding that government had legal right to obtain documents because a third party was obligated by agreement to provide government with documents on request), and *In re NTL,* 244 F.R.D. at 195-96 (actual possessor of documents was bound by contract with party to make documents available to party)); *Golden Trade,* 143 F.R.D. at 525 (finding that party had practical ability and legal right to obtain documents from non-party based on contractual provision obligating non-party to use "best efforts . . . to give . . . all reasonably requested assistance and information necessary to proceed with a suit for infringement" of licensed patent).

[46] *See supra* notes 34-38.

[47] *See supra* note 39.

[48] *Cf. Golden Trade,* 143 F.R.D. at 525 (relying on third party's track record of cooperating with party in conduct of discovery, including producing documents to that party, as required by contractual provision requiring third party to provide party with "all reasonably requested assistance and information necessary" for party to proceed with an action for patent infringement).

BLMIS. And the Funds by definition had access and the practical ability to obtain them during the ordinary course of business.[49]

In addition to access necessary for business purposes, the Funds' access to the Service Providers' documents was facilitated by overlapping management, which effectively consolidated power over the Funds and the Service Providers in the hands of a small group of individuals, headed by Ceretti and Grosso. Two trusts established for the respective benefit of Ceretti and Grosso each owned 50% of KML (with each trust receiving approximately $150 million in management fees paid to KML by the Funds), and Ceretti and Grosso each owned 50% of FIM and served as FIM's executive officers. Christopher Wetherhill was president and chief executive officer of the holding company for Hemisphere Management Limited (the Funds' first Administrator), served as president and director of KML from inception, and served as a director of both Kingate Global and Kingate Euro from inception. At one time, Shazieh Salahuddin served as a director of KML and was a senior employee of FIM. Phillip Evans served as director of KML from at least May 2000, while at the same time acting as Trust Manager (Partner) with Moore Stephens Services SAM, through which the Trust Defendants were established and governed. This affiliation between the Funds and the Service Providers further supports a finding of control over the Service Providers' documents.[50]

The Court should therefore find that the Funds have control, within the meaning of Rule 34, of documents responsive to the Requests that were created, received, or maintained by the Service Providers, wherever those documents may be located.

---

[49] *See Cooper Indus.,* 102 F.R.D. at 919-20 & n.2 (announcing that "documents and records that a corporation requires in the normal course of its business are presumed to be in its control unless the corporation proves otherwise" and finding that defendant controlled documents in possession of its foreign affiliate because defendant had access to the documents in the course of its day-to-day business).

[50] *See id.*

**D.    Bermuda law does not prohibit the Funds from collecting from the Service Providers all documents responsive to the Requests and producing them to the Trustee.**

Because the Funds control all documents relating to their business affairs that were created, received, or maintained by the Service Providers in the course of their performance of their obligations under the Service Provider Agreements, the Funds and their counsel are obligated under Rule 34 to collect all such relevant, responsive documents—wherever they are located—and produce them to the Trustee.  But the Funds do not accept that premise and contend instead that their Rule 34 obligations begin and end with whether they obtain leave to produce the Bermuda Productions to the Trustee.  That contention reflects a misunderstanding of the meaning of control under Rule 34 and the effect of Bermuda law, and a consequent mistaken belief that their Rule 34 obligations are subject to instruction from the Bermuda court.

According to the Funds, preventing them from producing to the Trustee documents in the Service Providers' respective possession is an implied undertaking arising under Bermuda law: when one party to a Bermuda civil action is compelled to produce documents to another party, the receiving party is subject to an implied undertaking not to use such documents for any purpose other than the prosecution and defense of the claims and defenses in that civil action.[51] The implied undertaking balances the producing party's right to keep its own documents private with the public interest in a full and fair adjudication of claims and defenses asserted in

---

[51] *Taylor v. Dir. of the Serious Fraud Office* [1999] 2 A.C. 177 (HL) 207 ("A solicitor or litigant who receives documents by way of discovery is treated as if he had given an undertaking not to use them for any purpose other than the conduct of the litigation."); *Mahon v. Rahn* [1998] Q.B. 424 at 431, 434, 436 (stating that "[i]n civil proceedings a party who obtains discovery may use the documents disclosed to him only for the proper purposes of conducting his own case, and there is an implied undertaking by him not to use them for any collateral or ulterior purpose," declaring that "the law is well established that a recipient of documents disclosed under compulsion of Court proceedings holds those documents subject to an implied undertaking not, without consent of the Court, to disclose such documents to any third party or use the documents for any purpose other than the action in which they were disclosed," and explaining that "[c]ompulsion is an invasion of a private right to keep one's documents to oneself").

litigation.[52]  Bermuda law does not, however, restrict the producing party's use of its own

documents (copies of which it may have produced in discovery in Bermuda litigation) and does

not prohibit a party from using documents under its control to defend its rights in any other

proceeding. [53]  The Funds have not referenced any principle of Bermuda law that would prohibit

them from collecting, reviewing, and producing documents under their control that may be

located in Bermuda and are responsive to the Requests.

Bermuda law simply does not restrict or qualify the Funds' obligations under Rule 34.

Because the Service Providers do not have any right to keep from disclosure documents in their

possession that were created, received, or maintained in the course of administering the Funds'

business affairs—because the Funds have the superior right to control the documents and the

privacy of them—the primary rationale for the implied undertaking is absent.  The Bermuda

Productions, furthermore, are comprised of digital or paper *copies* of documents.  Although an

implied undertaking under Bermuda law may protect that set of copies, the documents as they

exist in other forms and locations are not so protected.[54]  Under Rule 34, the Funds control the

*originals* of all relevant documents in the possession, custody, or control of the Service

---

[52] *See Taylor v. Dir. of the Serious Fraud Office* [1999] 2 A.C. 177 (HL) 207-08; *Mahon v. Rahn* [1998] Q.B. 424 at 436; *Prudential Assurance Co. v. Fountain Page, Ltd.* [1991] 1 W.L.R. 756 (QB) 765 (observing, further, that the implied undertaking is "independent of any question of confidentiality" and "the actual character of the document or information").  For the Court's convenience, copies of *Prudential Assurance*, *Mahon*, and *Taylor* are attached to the Gruppuso Declaration as Exhibits AA, BB, and CC, respectively.

[53] *Mahon v. Rahn* [1998] Q.B. 424 at 432, 453 (instructing that "a civil litigant is . . . forbidden only to use the documents disclosed on discovery by his opponent and the information in them; he remains free to sue in another action on the basis of information which he has obtained from another source," recognizing that the "special protection" afforded by the implied undertaking extends only "to documents disclosed under compulsion of discovery" and "does not apply to any wider class of documents," and observing that the implied undertaking does not apply to documents that a party chooses to disclose voluntarily in support of the party's claims or defenses) (internal quotations and citation omitted).

[54] *See Mahon v. Rahn* [1998] Q.B. 424 at 453 ("It cannot be the law that a litigant, having from the start information and evidence which would enable him to bring an action against another, becomes disqualified from using it if that information and that evidence are later disclosed to him on discovery in another action to which he is a party.").

Providers.[55]  Bermuda law does not restrict the Funds' exercise of control over their original

documents and does not bar the Funds from collecting and producing copies of those same

documents outside of the Bermuda Action.

For example, KML's server—which was the Funds' *de facto* server—has been imaged

and preserved.  Because the Funds control the documents on that server under Rule 34, the Funds

must review the server in its entirety and produce from it documents responsive to the Requests,

as well as any responsive paper documents that KML may possess.  The same is true for

electronic and paper documents that FIM created or received when providing consulting and

distribution services for the Funds.

The Funds' Rule 34 obligations would exist if the Bermuda Productions did not exist, and

the existence of the Bermuda Productions cannot supersede their Rule 34 obligations.  If

discovery in the Bermuda Action lagged behind discovery in this proceeding and thus no

Bermuda Productions existed, Rule 34 would require the Funds to obtain from the Service

Providers all documents responsive to the Requests.  The timing of discovery in a foreign

proceeding in which the Trustee is not a party cannot prejudice rights conferred by Rule 34.

Because the Funds control the relevant documents created, received, or maintained by the

Service Providers during the course of their engagements with the Funds, and because Bermuda

law does not restrict the Funds' rights to control the privacy of their own documents, the Funds

must collect from the Service Providers and produce to the Trustee all relevant and responsive

documents.

---

[55] *See Societe Internationale Pour Participations Industrielles et Commerciales, S.A. v. Rogers*, 357 U.S. 197, 204-06 (1958) (concluding that the responding party controlled documents under Rule 34, notwithstanding that foreign law provided criminal penalties for disclosure of the documents sought).

## IV. THE FUNDS' OBJECTION TO PRODUCING DOCUMENTS CREATED AFTER THE COMMENCEMENT OF THE FUNDS' LIQUIDATIONS SHOULD BE OVERRULED.

The Funds have refused to produce documents dated after May 9, 2009, the date the Funds' liquidation proceedings commenced, reasoning that the Trustee has imposed a similar limitation on his production of documents.[56]  The Funds are incorrect.  The Trustee has stated that documents prepared or received by him or his professionals after the date of his appointment will not be subject to discovery, *only if* the documents are irrelevant or are protected by a privilege or other protection from disclosure.[57]  Sustaining the date restriction advanced by the Funds would create an arbitrary, temporal impediment to the discoverability of documents.  If the Funds came into possession of documents after May 9, 2009, that are not privileged and are relevant to the claims and defenses raised in the U.S. Proceeding, then those documents are discoverable under the Rules.  The Funds' objection should therefore be overruled, and the Funds should be ordered to produce relevant, non-privileged documents irrespective of the date on which the document was created or received by the Funds.

## V. THE COURT SHOULD ORDER THE NON-FUND DEFENDANTS TO CONFER UNDER RULE 26(f).

The Non-Fund Defendants may assert that paragraph 12 of the ET Order stays discovery,[58] but paragraph 12 does not concern discovery at all and does not even contain the word "discovery" (or the word "stay").  Paragraph 12 simply provides,

> The time for all defendants in any of the adversary proceedings listed on Exhibits A or B to respond to the complaints is extended to 30 days after the Court decides whether any counts of the

---

[56] Gruppuso Decl. Ex. DD.

[57] *Id.* Ex. EE.

[58] This position was discussed at the discovery conference before the Court held on March 7, 2016, at which the Court instructed the Trustee to file a motion to compel the Funds and the Non-Fund Defendants to produce documents to the Trustee.

> respective complaints or portions thereof should be dismissed
> pursuant to the Extraterritoriality Motion, subject to the additional
> extensions specified in paragraphs 13 and 15 below.[59]

The filing of an answer is not a prerequisite for the commencement of discovery in an adversary proceeding.[60] By its plain terms, therefore, paragraph 12 does not stay discovery against the Non-Fund Defendants. Because discovery is not stayed in this proceeding against the Non-Fund Defendants, and because the Non-Fund Defendants did not participate in the Rule 26(f) conferences held in October 2015 between the Trustee and the Funds, the Trustee requests the Court order the Non-Fund Defendants to confer with the Trustee and the Funds as required by Rule 26(f) and submit, jointly with the Trustee and the Funds, a Second Case Management Plan that, if acceptable to and ordered by the Court, would supersede the CMO.[61]

## CONCLUSION

The Funds and the Bermuda Non-Fund Defendants possess the Bermuda Productions (all of which are relevant), and Bermuda law does not protect them from disclosure. The Funds and the Bermuda Non-Fund Defendants must, therefore, produce the Bermuda Productions under Rule 34 in response to Request # 38 and Bermuda Action Request # 3, respectively. Because the Funds control all documents created, received, or maintained by the Service Providers in the course of performing services for the Funds, the Funds have a separate obligation under Rule 34

---

[59] Gruppuso Decl. Ex. A, ¶ 12. Paragraph 13 (extending a defendant's time to respond to the complaint to 30 days from the date of an order denying the Trustee's motion to file an amended complaint adding allegations pertaining to extraterritoriality or from the date of filing said amended complaint), Paragraph 14 (effectively staying further proceedings on the Trustee's motion for limited discovery and leave to file amended complaints adding allegations pertaining to extraterritoriality or good faith until decision on the Extraterritoriality Motion), and Paragraph 15 (extending a defendant's time to respond to the complaint to 30 days from the date of an order denying the Trustee's motion to file an amended complaint adding allegations pertaining to issues other than extraterritoriality or from the date of filing said amended complaint) of the ET Order are not applicable to the U.S. Proceeding, in which the Trustee did not request leave to file an amended complaint or limited discovery on any issue.

[60] *See* Fed. R. Civ. P. 26(d)(1).

[61] The Trustee delivered a proposed stipulation and order to the Non-Fund Defendants that would have scheduled a pre-trial conference to be attended by all parties and established dates by which the parties would be required to confer under Rule 26(f). Gruppuso Decl. Ex. FF. The Non-Fund Defendants rejected the Trustee's proposal. *Id.* Ex. H.

20

to collect from the Service Providers and produce to the Trustee all documents responsive to

Requests ## 1-37 and ## 39-43.  Lastly, because there is no stay of discovery in place, the

Trustee requests that the Court order the Non-Fund Defendants to confer within 30 days with the

Trustee and the Funds in accordance with Rule 26(f).


Date:  April 15, 2016
     New York, New York

                    **BAKER & HOSTETLER LLP**

            By: */s/ David J. Sheehan*
               45 Rockefeller Plaza
               New York, New York 10111
               Telephone: (212) 589-4200
               Facsimile: (212) 589-4201
               David J. Sheehan
               Email: dsheehan@bakerlaw.com
               Geraldine E. Ponto
               Email:  gponto@bakerlaw.com
               Gonzalo S. Zeballos
               Email:  gzeballos@bakerlaw.com
               Anthony M. Gruppuso
               Email:  agruppuso@bakerlaw.com
               Marshall Mattera
               Email:  mmattera@bakerlaw.com

               *Attorneys for Irving H. Picard, Trustee for the*
               *substantively consolidated SIPA Liquidation of*
               *Bernard L. Madoff Investment Securities LLC*
               *and the estate of Bernard L. Madoff*