# EXHIBIT J



Page 1

1   UNITED STATES BANKRUPTCY COURT

2   SOUTHERN DISTRICT OF NEW YORK

3   Adv. Case No. 08-01789-smb

4   - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

5   SECURITIES INVESTOR PROTECTION CORPORATION,

6                    Plaintiff.

7       v.

8   BERNARD L. MADOFF INVESTMENT SECURITIES LLC,

9                    Defendant.

10  - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

11  Adv. Case No. 10-04898-smb

12  - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

13  IRVING H. PICARD TRUSTEE FOR THE LIQUIDATION OF BERNARD L.

14  MADOFF INVESTMENT SECURITIES LLC,

15                   Plaintiff.

16           v.

17  SAREN-LAWRENCE,

18                   Defendant.

19  - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

20

21

22

23

24

25

Page 2

1    - - - - - - - - - - - - - - - - - - - - - - - - - - - x

2    Adv. Case No. 10-04324-smb

3    - - - - - - - - - - - - - - - - - - - - - - - - - - - x

4    IRVING H. PICARD TRUSTEE FOR THE LIQUIDATION OF BERNARD L.

5    MADOFF INVESTMENT SECURITIES LLC,

6                     Plaintiff.

7              v.

8    ROTH et al,

9                     Defendant.

10    - - - - - - - - - - - - - - - - - - - - - - - - - - - x

11

12                     U.S. Bankruptcy Court

13                     One Bowling Green

14                     New York, NY   10004

15

16                     March 23, 2016

17                     10:40 AM

18

19

20

21

22

23    B E F O R E :

24    HON STUART M. BERNSTEIN

25    U.S. BANKRUPTCY JUDGE

Page 3

1    Hearing re:  08-01789-smb Defendants' Motion to Quash

2    Subpoena, for Protective Order, and for Dismissal

3

4    Hearing re:  08-01789-smb Motion to take Deposition of

5    Bernard L. Madoff

6

7    Hearing re:  08-01789-smb Application of Temporary

8    Restraining Order and Stay of Enforcement of Subpoenas

9

10   Hearing re:  10-04898-smb Trustee's Motion to Compel Third

11   Party to Comply with Subpoena

12

13   Hearing re:  10-04324-smb Motion of Chaitman LLP to Withdraw

14   as Counsel to Barbara Roth

15

16

17

18

19

20

21

22

23

24

25   Transcribed by:  Sonya Ledanski Hyde

1    A P P E A R A N C E S :

2

3    CHAITMAN LLP

4         Attorney for Aaron Blecker; Helene Saren-Lawrence, et

5         al, Defendants

6         465 Park Avenue

7         New York, NY 10022

8

9    BY:  GREGORY M. DEXTER

10        HELEN CHAITMAN (TELEPHONICALLY)

11

12   BAKER & HOSTETLER LLP

13        Attorney for Irving H. Picard, Esq., Trustee for the

14        SIPA Liquidation of Bernard L. Madoff Investment

15        Securities LLC

16        45 Rockefeller Plaza

17        New York, NY 10111

18

19   BY:  DAVID J. SHEEHAN

20        RICHARD J. BERNARD

21        SEANNA R. BROWN

22        KARIN S. JENSON

23

24

25

**Page 5**

1    ZEICHNER ELLMAN & KRAUSE LLP

2         Attorney for Valley National Bank

3         1211 Avenue of the Americas

4         New York, NY 10036

5

6    BY:  BARRY J. GLICKMAN

7

8    SCHULTE ROTH & ZABEL LLP

9         Attorney for Picower Parties

10        919 Third Avenue

11        New York, NY 10022

12

13   BY:  MARCY RESSLER HARRIS

14        MICHAEL KWON

15

16   ALSO PRESENT TELEPHONICALLY:

17

18   KEVIN H. BELL

19

20

21

22

23

24

25

Page 6

1                P R O C E E D I N G S

2              THE COURT: Please be seated. Good morning. Madoff.

3              MR. SHEEHAN: Your Honor, if you have a preference,

4       we have two things this morning: the deposition of Mr.

5       Madoff, and we also have a continuation of the order to show

6       cause.

7              THE COURT: Yeah, I had --

8              MR. SHEEHAN: Well, there could be three things.

9              THE COURT: Well, actually I have three related

10      motions regarding the enforcement of the subpoenas. I have

11      the motion to withdraw as a lawyer for Barbara Roth, and I

12      also have the Madoff deposition. Why don't we do the

13      subpoenas first? Who represents the defendants?

14             MR. DEXTER: Good morning, Your Honor. Gregory

15      Dexter here, Chaitman, LLP. I represent the defendants in

16      this matter. I guess we'll proceed with our motion for a

17      protective order and motions quashed. Although this motion,

18      it really came before the Court by motion for the trustee to

19      compel Valley National Bank to comply with --

20             THE COURT: Well, your motion really covers 11

21      cases and his motion only covers one, and that motion

22      overlapped with your motion in that case, so why don't you

23      go ahead?

24             MR. DEXTER: Yes, Your Honor. As we state in our

25      brief, these subpoenas seek records that the defendants do

Page 7

1    not dispute. And the trustee has a position on that.

2            THE COURT: What do you mean the defendants don't

3    dispute?

4            MR. DEXTER: Well, if you look at the records that

5    the subpoenas are actually seeking, which are from 2006 to

6    2009, all of the defendants have substantially admitted

7    (indiscernible).

8            THE COURT: That is an incorrect statement. And

9    I'll deal with the subpoenas individually, but I will tell

10   you right now that with the possible exception of the

11   Wilentz case, there are substantial disputes reflected in

12   the responses to the request for admission.

13           MR. DEXTER: Well, Your Honor, I don't know how

14   you'd like to proceed. Would you like to go through each

15   one?

16           THE COURT: Tell me, you've made a motion, part of

17   your motion is the motion to dismiss the complaints in these

18   11 actions. Tell me why I should dismiss them.

19           MR. DEXTER: Well, the motion to dismiss is based

20   on the trustee's wrongful conduct, in essentially

21   representing that he would hold the subpoenas in advance,

22   providing the defendants an opportunity to answer the

23   request for admit, and when some of those defendants did

24   answer those requests to admit, the trustee nonetheless

25   proceeded, and then in other cases, where the defendants

1    didn't even have an opportunity to answer their requests for

2    admit, the trustee proceeded nonetheless.

3            THE COURT: But your motion is predicated on the

4    violation of a court order. You rely on Rules 37(b) and

5    41(b) of the Federal Rules of Civil Procedure. What's the

6    court order that was violated?

7            MR. DEXTER: The court order is that your ruling

8    from February 19th, in which you memorialized the trustee's

9    representation that he had made at an earlier hearing, which

10   was that the trustee would hold the subpoenas in advance, he

11   would provide the defendants an opportunity to admit their

12   request for admissions, and then we would determine whether

13   or not we would proceed or not.

14           THE COURT: But your motion is predicated on

15   letters sent the day before, isn't it? On February 18th, the

16   day before the order.

17           MR. DEXTER: The motion is predicated on a lot of

18   representations that were made, and we're all aware that

19   this is sort of a complicated procedural history.

20           THE COURT: I'll grant you that.

21           MR. DEXTER: So it wasn't just the fact that there

22   was a letter a day before a motion or anything like that.

23   But when you look at all these communications in context,

24   and you look at what they state, that these communications

25   are that the trustee was going to hold compliance in

Page 9

1    advance, provide the defendants a meaningful opportunity to

2    answer the questions --

3              THE COURT: Well, but in the case of Saren-

4    Lawrence, the responses to the requests for admissions had

5    already been served, so there was nothing to hold in advance

6    of that point, was there?

7              MR. DEXTER: Well, at that point, the trustee could

8    have said that we think these are insufficient for the

9    following reason, can you please clarify this? There are

10   procedures --

11             THE COURT: I don't think the trustee has to

12   negotiate the answers. This is the second set of responses

13   which you've served, and as I recall, colloquy, it was, that

14   the trustee would stand down for 30 days, if the answers

15   were admitted, fine, but if the trustee was dissatisfied

16   with the answers, the trustee could proceed. On their face,

17   the answers don't admit the transfers, do they?

18             MS. CHAITMAN: Your Honor, this is Helen Chaitman.

19   May I be heard on this issue?

20             THE COURT: No, Ms. Chaitman, you said that you

21   would listen, and if I had a question, I would ask you. I

22   don't entertain oral argument on the telephone on these

23   matters. Mr. Dexter is here and can answer the question.

24             MR. DEXTER: In Saren-Lawrence, the defendant

25   states that she does not dispute the transfers from 2001 to

Page 10

1    the present.

2              THE COURT: To the extent they're consistent with

3    the accountant's records, right?

4              MR. DEXTER: Right, because that's all she has

5    (indiscernible) --

6              THE COURT: So first of all, though, they're the

7    records she gave to the accountant, and secondly, that

8    requires the trustee to prove his case by proving what the

9    accountant's records show. What is the admission to in that

10   case? It's still a disputed issue.

11             MR. DEXTER: Well, the trustee either has those

12   records from the accountant, or will have those records --

13             THE COURT: Why doesn't she get those records and

14   either admit or deny the transfers? They're her records.

15   Didn't she give the accountant the information regarding

16   what she'd received, and what she deposited?

17             MR. DEXTER: Right, and to the extent that those

18   records are consistent with what the trustee has, she has so

19   indicated. And there are only three very minor areas of

20   dispute. And those disputes would be resolved by the

21   information that Valley National Bank has produced, or will

22   produce. Therefore, there is no dispute.

23             THE COURT: That's what you said.

24             MR. DEXTER: That is why I say, but the records

25   that Valley National has produced, or will produce, will

Page 11

1    resolve these very minor dispute in the Saren-Lawrence case.

2             THE COURT: What about the other cases?

3             MR. DEXTER: Okay, we can take it one by one. In

4    the Roman case, the defendants there do not dispute the

5    deposits and withdrawals, as evidenced by the trustee's

6    records from --

7             THE COURT: Yeah, but they denied the receipt of

8    the $150,000 withdrawal on April 2nd, 2007, and the $125,000

9    withdrawal on March 19th, 2008. So how can you say they

10   don't deny it?

11            MR. DEXTER: Your Honor, there are so many

12   documents at issue here. I don't have a copy of those. Could

13   you read that in context for me? Because it may be just that

14   they have a problem with a term of (indiscernible), which is

15   principal.

16            THE COURT: No, I understand the denial of the

17   characterization of certain things as principal. That's not

18   an issue that concerns me. But let me just see. I'm looking

19   at -- this is Robert Roman's answers. Number 16, admit that

20   the withdrawal from the account made on or about April 2,

21   2007 in the amount of $150,000 was received by Robert Roman.

22   Answer, denied, see Answer Number 15. Number 22, admit that

23   the withdrawal from the account made on or about March 19th,

24   2008, in the amount of $125,000 was received by Robert

25   Roman. Denied, see answer to Number 21. And then he also

Page 12

1    says --

2              MR. DEXTER: Could you explain what the answers are

3    of 15 and 21?

4              THE COURT: Just a minute, just a minute. Then he

5    also says, Request Number 27, admit that $410,000 in excess

6    of principal was withdrawn from the account between December

7    11, 2006 and December 11, 2008. Answer, denied. Then he said

8    the entire account consisted of principal, but then he said,

9    moreover, the trustee has failed to credit the responding

10   party with $140,000 made in deposits made into his account

11   in the period following December 11th, 2006. So you put

12   those into issue. You put the trustee's records into issue.

13   You're saying that the two most significant withdrawals were

14   never received, isn't that what it says?

15             MR. DEXTER: It's saying, please see Number 15, and

16   please see Number 21.

17             THE COURT: So what does that say?

18             MR. DEXTER: Your Honor, could you tell me? I'm not

19   sure, because quite honestly, I don't have that.

20             THE COURT: I think that's the defendant's theory,

21   that she doesn't receive money that she uses to pay taxes,

22   which I'm not quite sure I understand, but I'm --

23   particularly since I've been told they got refunds for these

24   taxes. But look, what else?

25             MR. DEXTER: With respect to the Romans?

Page 13

1          THE COURT: Next, which do you want to talk about

2     next?

3          MR. DEXTER: Well, Your Honor, I think that the

4     substance of their admissions is that they made everything

5     from 2008 in 2008. They're not going to admit loaded request

6     for admissions the trustee puts in. That would require the

7     Romans to accept certain terms of (indiscernible) that the

8     trustee knows are disputed, and the Romans can't really

9     admit to anything more than that.

10          THE COURT: Okay, but nobody says they have to

11     admit to something that they in good faith have to admit to.

12     But then if they can admit to it, it's a disputed issue, and

13     if it's the trustee's burden, the trustee will have to prove

14     it. But they specifically deny the receipt of the $150,000

15     and the $125,000.

16          MR. DEXTER: I don't think they do. I think they

17     dispute the way that it's characterized, because they have

18     admitted all deposits and withdrawals from 2000 to 2008.

19          THE COURT: Okay, but we're arguing -- but the

20     trustees said, admit you receive this money, and they say

21     no. And it's a withdrawal that's reflected on the trustee's

22     records.

23          MR. DEXTER: Right, admit that your received it for

24     the benefit of --

25          THE COURT: That's a different question. I didn't

Page 14

1    read you that question. That's another question that raises

2    a legal issue, whether you receive money that you use to pay

3    taxes. This is just a straight-out request for an admission

4    that you receive the money. Let's go on to other orders.

5            MR. DEXTER: Wilentz.

6            THE COURT: Wilentz, I had an issue with the

7    trustee on that one. When the trustee responds, but -- by

8    the way, with the exception of Saren-Lawrence, all of these

9    defendants have asserted a defense that I guess to the

10   extent they were required by law or contract to pay the

11   money over to a third party, they didn't receive it. Kind

12   of, I guess, a conduit type of a theory. So doesn't that put

13   all of the transfers out into question? As well as the

14   transfers in, I guess.

15           MR. DEXTER: Well, Your Honor, the rules of federal

16   procedure have never been that if you raise an affirmative

17   defense because you're required to raise it in answer,

18   otherwise it's waived, that the complaining party can

19   subpoena any record they want, and get evidence of anything

20   they want.

21           THE COURT: But why they can't get evidence related

22   to that affirmative defense? Nobody forced you to assert it?

23           MR. DEXTER: Well, the evidence that they are

24   seeking through these subpoenas would not be in any way

25   relevant or helpful to getting that information.

1          THE COURT: Why not? They know the universe of

2    outflows, and then they could ask the person in every case

3    what was the basis of the requirement to make that payment.

4    Were you holding it as a conduit? Were you an agent that

5    received it for somebody else? You've raised that issue.

6          MR. DEXTER: Well, if they get the financial

7    records, that's not going to give them the contract, that's

8    not going to --

9          THE COURT: Well, but then they can ask the person

10   about each withdrawal.

11         MR. DEXTER: But aren't there less burdensome ways

12   to do that?

13         THE COURT: I don't even know what that defense

14   means? What does it mean?

15         MR. DEXTER: It's our burden to prove that

16   affirmative defense. And if we don't produced the evidence

17   to establish that affirmative defense, it's going to be

18   dropped.

19         THE COURT: But if you do, what do we do? Stop the

20   trial at that point and now tell the trustee he can take

21   discovery?

22         MR. DEXTER: No, because throughout discovery, any

23   evidence that we're going to have to put on trial, we're

24   going to have to produce. So before we get to trial,

25   everyone's going to know whether we have the information to

Page 16

1    establish these affirmative defenses or not.

2              THE COURT: Look, you asserted in most cases,

3    something like 42 affirmative defenses. If you assert the

4    defense, it raises the issues are encompassed in the

5    defense, and discovery is appropriate in those issues.

6    Nobody forced you to raise those.

7              MR. DEXTER: Discovery is appropriate, and

8    throughout the course of discovery, we're going to produce

9    the documents that support those affirmative defenses. We

10   don't see why the trustee has to be granted the most

11   burdensome remedy possible for us to establish those

12   affirmative defenses.

13             THE COURT: How is that burdensome to you? You not

14   being asked to produce anything.

15             MR. DEXTER: It's going to reveal personal

16   financial records of the defendants, for 99 percent of the

17   transactions are not going to be relevant to this case at

18   all.

19             THE COURT: That may be true. We don't know that,

20   but the question is who in the first instance is going to

21   make that determination?

22             MR. DEXTER: Well, we think it should be a neutral

23   mediator.

24             THE COURT: Why a neutral mediator?

25             MR. DEXTER: Well, I mean, that would more

1    appropriately protect the defendants' confidentiality

2    interests. It would be exposed to thousands of people, it

3    wouldn't be exposed to the trustee's hundreds of attorneys.

4              THE COURT: BUT the trustee has agreed to hold it

5    in confidence, pursuant to the litigation protection order.

6    Yes, it'll be seen by the trustee's attorneys, but so what?

7    If you're going to show it to a third party, what's the

8    problem of showing it to the trustee under a promise of

9    confidentiality?

10              MR. DEXTER: Because once we produce these records

11   to the trustee, then they're going to use that information

12   to frame complaints against subsequent transfers.

13              THE COURT: It's a different issue.

14              MR. DEXTER: Well, it all comes together.

15              THE COURT: Just a minute. When Ms. Chaitman said

16   she was going to make this motion, I said that one of the

17   questions I had was if you even had standing to object to a

18   third-party subpoena on the basis that it was seeking

19   subsequent transfer information. Irrelevant information,

20   let's just call it that. And that's not addressed in the

21   motion.

22              MR. DEXTER: Well, there is standing to object when

23   a subpoena seeks the personal financial records.

24              THE COURT: I agree with you on that, but now

25   you're talking about something else. You're talking about

Page 18

1    subsequent transfers (indiscernible) before the Court. You

2    don't know who they are.

3            MR. DEXTER: It's clear that the defendants have

4    standing. At that point, can they take the argument further?

5    It's established they have standing, because these are

6    personal records.

7            THE COURT: What does the law say about a party's

8    standing to object to a third-party subpoena on grounds of

9    relevance? Isn't there Second Circuit authority on this?

10           MR. DEXTER: On grounds of relevance? I know that

11   the law says quite clearly that if the financial records are

12   subpoenaed, you have standing.

13           THE COURT: That's a different issue, that's a

14   privacy issue.

15           MR. DEXTER: Right, and that gives us standing.

16           THE COURT: You're talking, we started this by

17   talking about subsequent transfer.

18           MR. DEXTER: Right.

19           THE COURT: So what is your standing to object to

20   the discovery of subsequent transfer information, in this

21   context?

22           MR. DEXTER: As Ms. Chaitman has already state don

23   the record, and as I thought this Court was satisfied, we

24   represent some of those subsequent transferees. And to

25   protect --

1          THE COURT: We don't even know who they are.

2          MR. DEXTER: Well, I don't know how we could reveal

3   that information.

4          THE COURT: Then how do I know you represent them?

5          MR. DEXTER: Because we make the motion to dismiss,

6   which Your Honor granted.

7          THE COURT: There was only one case, I think, of

8   all of them, in which there was a subsequent transferee

9   issue, wasn't it? Which was one that?

10          MS. JENSON: Halpern, Your Honor.

11          THE COURT: Can I ask you something else?

12          MR. DEXTER: Certainly.

13          THE COURT: If the trustee couldn't get the

14   subsequent transferee as a matter of discovery, couldn't he

15   get it in a Rule 2004 examination?

16          MR. DEXTER: Your Honor, the trustee already had

17   that opportunity. The trustee could have waited in filing

18   these adversary proceedings. He could have obtained that

19   information in a 2004 proceeding.

20          THE COURT: So why can't he do it now?

21          MR. DEXTER: As I understand, Rule 2004 is his

22   opportunity to do that has passed, with the filing of the

23   adversary suit.

24          THE COURT: Under the pending proceeding rule,

25   that's only if can get the information as a matter of

1    discovery, to proceed the defendant's procedural rights. If

2    you're telling me that he can't get the discovery in the

3    proceeding, then the pending proceeding rule doesn't bar us

4    getting the discovery through 2004, does it?

5              MR. DEXTER: I would have to defer to Ms. Chaitman

6    on that one, if you would allow her, because being new to

7    this case, that's just not something that I know, quite

8    frankly.

9              THE COURT: Well, it's just a principle of law.

10   It's not nothing specific to do with this case. All right.

11   Anything else?

12             MR. DEXTER: Would you like to continue to proceed

13   with each individual represented?

14             THE COURT: Well, all right. Wilentz, we were

15   talking about Wilentz, and in Wilentz, I think Wilentz did

16   admit the two transfers. I'll deal with the trustee on that

17   one -- wait a minute. Let me see if I can find Wilentz. Oh,

18   all right. Wilentz admits to the transfers, and there were

19   no deposits, I think, during the relevant period. So we'll

20   deal with the trustee on that one on why he needs more

21   information. It may be because of the affirmative defenses,

22   I don't know. Can I ask you a question about the Shapiro

23   cases?

24             MR. DEXTER: Certainly.

25             THE COURT: And maybe the trustee has the answer.

Page 21

1    As I understand it, Mr. Shapiro is deceased?

2              MR. SHEEHAN: Yes. Yes, Your Honor.

3              THE COURT: Are the initial transferees Mr. Shapiro

4    individually, or some sort of entity in which he has an

5    interest. I'm just wondering what the status of those

6    proceedings are.

7              MR. SHEEHAN: I'm not as close to that as perhaps,

8    some of my colleagues are here, but as I understand it,

9    there are now new representatives being brought in to each -

10   - and they're all family members, Your Honor.

11             THE COURT: So what's the -- I know that you never

12   served request for admissions --

13             MR. SHEEHAN: No, we didn't.

14             THE COURT: Bin those cases. But you're seeking to

15   enforce the subpoenas in those cases.

16             MR. SHEEHAN: That's right.

17             MR. DEXTER: My understanding is that that's

18   actually reversed.

19             THE COURT: Well, I looked at your chart.

20             MR. SHEEHAN: I just got told that I was wrong.

21             THE COURT: According to the chart that I got from

22   Ms. Chaitman in connection with the TRO, no discovery was

23   served in the four Shapiro cases, and I did see a letter, a

24   February 18th letter which sought to enforce, compel

25   compliance with subpoena in those cases. What's the status

Page 22

1    of those cases, what's the status of discovery?

2              MR. SHEEHAN: I'm sorry, Your Honor. I was

3    listening to my colleague. I was right in my answer, by the

4    way. We have served subpoenas in Shapiro.

5              THE COURT: And you're insisting on compliance with

6    the subpoenas even though you haven't served requests for

7    admissions?

8              MR. SHEEHAN: Well, our position is, and the reason

9    I'm here today is for this reason. We're no longer serving

10   requests for admissions in Helen Chaitman cases, because

11   it's a waste of time. I don't have to serve request for

12   admissions. If Your Honor recalls, the reason we serve

13   requests for admissions goes back months. Your Honor

14   announced from this bench that these are strict viability

15   cases. Let's resolve these issues. We agree. We have served

16   requests for admission on literally hundreds of defendants,

17   and in many instances have achieved stipulations such as the

18   Cohen matter before Your Honor.

19             We've worked out with hundreds of counsel all of

20   these. This particular instance has turned into a series of

21   motions that Your Honor has been entertaining over the

22   period of three months. We're not advancing the cause of the

23   case or otherwise. We will no longer service. We will withdraw

24   all requests for admissions to Mrs. Chaitman's clients,

25   effective today, and she will never receive another request

Page 23

1    for admission with regard to any other clients. We will rely

2    upon the trustee's books and records.

3            And with regard to the subsequence, we will

4    indeed, as Your Honor has just queried counsel on, we intend

5    to use 2004 to get all the information you need. Every day

6    that goes by, records are disappearing. That' what counsel

7    is relying upon. Mrs. Chaitman even alluded to that at the

8    last hearing that she knows those records are disappearing.

9    So we need at this point, two things -- no more request for

10   admissions, we get 2004 exams with regard to all of the

11   banks so we can pursue, as we have every right to, under

12   550, subsequent transferees here. And I disagree,

13   respectfully, that Rule 26 shouldn't bar us. I think we

14   should be allowed under Rule 26.

15           THE COURT: No, no that's not the question. The

16   question is the representation was made that you wouldn't do

17   certain things before you had served requests for admission.

18   So what you're telling me now, is on a going forward basis,

19   you're withdrawing that (indiscernible).

20           MR. SHEEHAN: I am withdrawing that, because it got

21   perverted, from my perspective, to the point where that

22   became the issue, who did what when, as opposed to what

23   answers we got. And the answers we got, respectfully, as

24   Your Honor has found on (indiscernible) through the counsel

25   this morning were meaningless. So they're not helpful to us.

Page 24

1    We will go ahead and quite frankly, my intention is to move,

2    in all those cases, for summary judgment. I don't think she

3    has a valid defense to any of this. So we're going to

4    expedite these cases, at this point.

5            THE COURT: All right. Okay, all right. Ms.

6    Chaitman, I'll hear from you, since your name has come up in

7    that last discussion, if you want to say anything.

8            MS. CHAITMAN: Well, I would, Your Honor. Thank you

9    very much. First of all, it wasn't simply a representation

10   made in chambers, it was an agreement that was made in

11   chambers that was a tri-party agreement. You acknowledged

12   it, and I acknowledged it, and therefore it wasn't something

13   that the trustee in his whim, or in his convenience could

14   withdraw. And then I think the conference was on January

15   28th, and then on February 16th, I may have the date wrong,

16   but I think it was that date, in Court, and Your Honor on

17   the record said which procedures should be followed, which

18   was that the subpoena should be held in advance, until the

19   defendants were given an opportunity to admit or deny the

20   transcripts.

21           And that was an order that the Court entered,

22   orally, in Court, and the trustee then decided that it

23   wasn't applicable to the trustee. And now we hear that the

24   trustee is changing the Court's order, and I just don't

25   believe that the trustee has that power, Your Honor. I mean,

Page 25

1    certainly I don't think the Court would accept my coming in

2    and saying, "Well, Judge, you ordered something, but I've

3    changed my mind about it, and I'm not going to comply with

4    the order."

5            So that's number one, and number two, in the case

6    of Mr. Lawrence, specifically, this is a situation where

7    Valley National Bank has already produced all documents

8    reflecting transfers to and from Madoff. So if that were the

9    trustee's interest, he has it already. There is no dispute

10   that those documents have been produced. In addition, Valley

11   National Bank has no further records to clarify the three

12   exceptions that Ms. Saren-Lawrence had in her response to

13   the request to admit. So she basically conceded everything

14   of which there's documentary evidence within Valley National

15   Bank. And Jim Lawrence, who is my client, and who has

16   standing, because it's a joint account, and his bank records

17   have been subpoenaed, he certainly has standing to move to

18   quash that subpoena to the extent that it seeks documents

19   which have no relevance, other than to establishing whether

20   he was a subsequent transferee.

21           THE COURT: Ms. Chaitman, can I just interrupt you

22   about Mr. Lawrence, though?

23           MS. CHAITMAN: Sure.

24           THE COURT: Why wouldn't he be a subsequent

25   transferee when the money is being put into the joint

Page 26

1    account?

2           MS. CHAITMAN: Because if it was used by Helene to

3    support herself, it was used for her. The subsequent

4    transferee account, you'd have to trace how the money was

5    used. The thing is --

6           THE COURT: No, you don't. Couldn't he have written

7    a check on that account 0 the entire amount? Didn't he have

8    dominion and control of everything in the account? They both

9    did.

10          MS. CHAITMAN: Yes. He might not have used it. It's

11   a question of who actually received the money, it's not a

12   question of who had --

13          THE COURT: Aren't there cases that say a deposit

14   like that into a joint account renders the joint owner a

15   subsequent transferee?

16          MS. CHAITMAN: I'm not aware of any, Your Honor,

17   and I think that the issue here, what the trustee is doing

18   is quite extraordinary, and only exists in the context of

19   Ponzi scheme, where you go after people who receive the

20   money. And then it's a question of who actually enjoyed the

21   benefit of the money. And I think that's we're going to into

22   uncharted territory in the Second Circuit on this issue. But

23   focusing simply on the subsequent transferee issue,

24   certainly Mr. Lawrence has standing to object to the

25   subpoena of all his bank records, which has no purpose other

1    than to permit the trustee to take discovery to which he's

2    not entitled.

3             THE COURT: But aren't his bank records her bank

4    records, because they have a joint account? In order words

5    the trustee -- this is why I don't do this on the phone --

6    in other words, the trustee has not subpoenaed his personal

7    records, he subpoenaed her records, and she happens to have

8    a joint account with him.

9             MS. CHAITMAN: Right, but the trustee has gotten

10   everything from those records the trustee is legitimately

11   entitled to. And if the trustee is now saying he's going to

12   use Rule 2004 to take discovery which is not permissible

13   under the Federal Rules of Civil Procedure, that raises a

14   very, very interesting question, because I don't believe

15   that Rule 2004 can be used to circumvent the prohibitions

16   that have been announced from the United States Supreme

17   Court on. If Rule 2004 was appropriate --

18            THE COURT: What prohibition is that?

19            MS. CHAITMAN: The prohibition against taking

20   discovery to frame a complaint. The trustee had --

21            THE COURT: But that's exactly what Rule 2004 is

22   for.

23            MS. CHAITMAN: Yes, but once he files an adversary

24   proceeding, I do not believe he's entitled to take ex parte

25   discovery, and that's precisely what he's doing.

1          THE COURT: Well, it's an interesting question and

2     I don't have it before us, but I raised it, as to whether or

3     not the trustee could get 2004 discovery, on the theory that

4     the discovery would not violate the pending proceeding

5     ruling. I guess we can deal with that at a future date.

6          MS. CHAITMAN: But I think that we've come to a

7     point, Your Honor, where that issue has to be briefed and

8     determined, because I think --

9          THE COURT: Do you want me to treat his requests

10    also a pursuant to Rule 2004?

11         MS. CHAITMAN: Well, I'd like to have the

12    opportunity to brief it, Your Honor, because it hasn't been

13    raised before today, and we haven't briefed that issue.

14         THE COURT: Fair enough. Anything else?

15         MR. DEXTER: Would you like me to continue each

16    defendant here, Your Honor?

17         THE COURT: Sure. We talked about Wilentz, we've

18    talked about Saren-Lawrence, we've talked about Shapiro --

19    now let me go to Roth. What's the status of Roth? Have you

20    granted an extension of some sort?

21         MR. DEXTER: Can we just circle back to Shapiro for

22    a sec?

23         THE COURT: No, no.

24         MR. DEXTER: All right.

25         THE COURT: And is it an open-needed extension, or?

1           MR. SHEEHAN: Yes, because Roth is in the process,

2    obviously, Ms. Chaitman is both representing and withdrawing

3    at the same time.

4           THE COURT: Well, right now, she's representing

5    her.

6           MR. SHEEHAN: Yes, and in that context, we've

7    agreed, as we did the last time we were together, that we're

8    not going to do anything here until we have a resolution

9    here today. So yes, it's extended without date until such

10   time -- but in this case --

11          THE COURT: Why don't you do the same thing with

12   Shapiro, since Shapiro apparently is going to have new

13   representatives, and maybe new lawyers.

14          MR. SHEEHAN: Right. But what we're doing is we're

15   withdrawing all the requests for admissions. There's no need

16   for extensions. We're done. This is a waste of time.

17          THE COURT: So what extension are you granting in

18   Roth?

19          MR. SHEEHAN: Well, the Roth extension is that we

20   would not move forward on anything until such time as there

21   is a resolution here today. We wouldn't move to compel, we

22   wouldn't force the subpoenas, we wouldn't do any of those

23   things, given them an opportunity to answer the requests for

24   admissions. In this case they're without counsel, so they

25   can't really answer them, so obviously there's no pressure

1    on them. But the point of the matter is, Your Honor, that

2    there are no requests for admissions after today. And if I

3    could be heard for one minute?

4              THE COURT: Well, let me let Mr. Dexter finish --

5              MR. SHEEHAN: All right. Because there are a lot of

6    things said by Ms. Chaitman I disagree with.

7              THE COURT: All right.

8              MR. DEXTER: Just one thing on Shapiro. I think the

9    understanding has been very confusing as to what has been

10   served, what hasn't been served. Just so we're clear, the

11   trustee has served subpoenas, but not requests for admission

12   --

13             THE COURT: And he says he's not going to. He says

14   because this will all just cause more litigation, and it

15   hasn't produced everything, and it's a waste of time, and

16   it's getting expensive for everybody.

17             MR. DEXTER: So is he going to hold compliance for

18   the subpoenas in event?

19             THE COURT: No, no.

20             MR. DEXTER: He's going to proceed with the --

21             THE COURT: That's what he's saying.

22             MR. DEXTER: Well, of course we object to that,

23   Your Honor, because it totally contravenes the entire

24   understanding the parties had for the months of January

25   through February, leading up to this motion practice. But

Page 31

1   we'll put that objection on the record. And we think a court

2   order should be entered preventing the trustee from

3   proceeding with compliance with those subpoenas. He hasn't

4   provided an opportunity to answer requests of admissions. He

5   hasn't been able to, it's not his fault. But that proceeding

6   with the subpoenas, compliance with subpoenas entirely

7   contravenes the parties' understanding of the previous

8   months.

9          THE COURT: But the trustee is arguing that this

10  procedure that was set up that underlay the representation

11  just hasn't worked.

12         MR. DEXTER: Well, I mean, we disagree.

13         THE COURT: Okay, so if I agree that it hasn't

14  worked, do you think it's appropriate to simply let the

15  trustee go out and enforce the subpoenas, without serving

16  any further requests for admission? And if not, why not?

17         MR. DEXTER: Well, we don't think that the trustee

18  should be entitled to serve theses subpoenas at all. I mean,

19  they're seeking personal financial records that are highly

20  irrelevant, that are highly --

21         THE COURT: That's a different issue. That's an

22  objection to the subpoena. All I'm saying is you say that

23  the trustee should not be able to enforce any subpoenas in

24  the Shapiro cases, because the trustee has not yet served

25  the request for admission, and there was a representation

Page 32

1    that he would not seek to enforce the subpoenas until he did

2    so, and there was time to respond, right?

3            MR. DEXTER: Correct.

4            THE COURT: Okay. The trustee now tells me, and I

5    tend to agree, that this process has not worked. It hasn't

6    accomplished its purpose, because it's been just additional

7    litigation, letter-writing -- I have several motions before

8    me now, and the value of the responses is such that they

9    don't do anything. So why shouldn't the trustee, on that

10   basis -- and putting aside the privacy issue for a minute --

11   be permitted to seek the bank records?

12           MR. DEXTER: Because the Court's ruling on March

13   9th that the Shapiro temporary restraining order was denied

14   was based on the understanding that there was no outstanding

15   discovery, and that was moot, or whatever procedural way you

16   want to frame that, and now that's not true at all. And now

17   he's --

18           THE COURT: There is no outstanding discovery.

19           MR. DEXTER: Right, but there's is no outstanding

20   discovery, but there is no outstanding subpoena.

21           THE COURT: But there was no urgency at that point,

22   because the trustee said he would stand down.

23           MR. DEXTER: Right, and we think that a court order

24   should be entered that requires the trustee to stand down.

25   And I don't disagree that --

1              THE COURT: Well, in other words, that among other

2      things, says that the trustee is required to serve a request

3      for admission in every case.

4              MR. DEXTER: Well, I think we already have a court

5      order that says the trustee would serve a request for

6      admission, allow the defendants a chance to respond, and

7      would not proceed with enforcing compliance with subpoenas

8      until that happened. And now the trustee is saying, "No,

9      that really wasn't a court order, I could just change my

10     mind."

11             THE COURT: Well, maybe he's just asking, to the

12     extent it's a court order, to change it, because it just

13     hasn't worked. There's been a frustration of the bencher, in

14     commercial language.

15             MR. DEXTER: I would agree that this hasn't worked,

16     but not because we haven't provided substantive answers for

17     the relevant period, 2006-2008. We're not denying any of the

18     relevant transfers. And in the cases that we are denying the

19     relevant transfers, we will produce those records. There's

20     no reason why the trustee should have all of this

21     unnecessary personal financial information.

22             THE COURT: So you agree it hasn't worked? You just

23     said that. But it's the trustee's fault.

24             MR. DEXTER: The reason why it hasn't worked is

25     because the route has recanted his representations, changed

Page 34

1    his mind, used tactics that are intentionally designed to

2    deceive, and now when we do provide meaningful answers, the

3    trustee says, "No, they're not good enough, you have seven

4    days to comply with the subpoena."

5              THE COURT: Okay, so you're saying it hasn't worked

6    because of something the trustee did. Is that what you're

7    saying?

8              MR. DEXTER: Of the things that I just listed, yes.

9              THE COURT: If I agree with you that it hasn't

10   worked, but it's because of the quality of the answers that

11   the trustee has been getting, then would you agree that the

12   trustee should not be bothered with serving any further

13   requests for admission?

14             MR. DEXTER: Unless you look at these answers and

15   you say that yes, it's true, from 2006 to 2008,

16   (indiscernible).

17             THE COURT: You're not listening to me. I just

18   said, assume that I conclude that the answers don't advance

19   the case, they don't admit the transfers. Would you then

20   agree that the trustee should be released from this

21   procedure, which he agreed to follow, and not serve any more

22   requests for admission? I mean, I guess he's still free to

23   serve them, but you seem to agree that it hasn't worked.

24             MR. DEXTER: Your question, that's assuming that

25   you think the answers that we have provided are not

Page 35

1    sufficient.

2              THE COURT: Right, I'm allowed to ask hypothetical

3    questions. So if you assume that, then what's the purpose of

4    going on with this?

5              MR. DEXTER: Well, I mean, in the federal rule for

6    requests for admissions, there are remedies contained in

7    that rule, and if the trustee is not satisfied with certain

8    answers, he can seek remedies in that rule. That rule

9    doesn't say he could send a subpoena on all the defendants,

10   and get all their personal bank records.

11             THE COURT: All right. Is there anybody else you

12   haven't covered, that you want to cover?

13             MR. DEXTER: Halpern is another one.

14             THE COURT: Let me find Halpern.

15             MR. DEXTER: That's all right.

16             THE COURT: Okay, Halpern there are several

17   accounts, or at least two accounts. For Account Number

18   1S0324, all the withdrawals were denied. And for Account

19   Number 0118 -- I'm talking about the two-year period, now.

20   I'm sorry, which were the accounts that issued them? Let me

21   do this. I don't recall, in the 0118 account, were the

22   withdrawals denied?

23             MS. CHAITMAN: Your Honor, may I be heard on that?

24             THE COURT: If you know the answer to it, yeah.

25             MS. CHAITMAN: I think I do. There are three

Page 36

1    different trusts involved, and there are two trustees: one

2    trustee for one trust, and another trustee for two trusts.

3    The trustee for the respective trusts admitted the

4    transfers. The trustee who was not a trustee for the

5    specific trust lacked knowledge of any of the transfers, and

6    therefore denied them. But the knowledgeable trustee for

7    each trust admitted the transfers for, I don't remember the

8    precise period, but it was at least 10 years, and it

9    certainly encompassed the last two years.

10           THE COURT: I'm doing it by account, corresponding

11   to the accounts that were questioned in the trustee's

12   request for admission. In Account 0118, there was only

13   $13,266 withdrawn within the two years. There were no

14   deposits. And I think that the trustee admitted those, did

15   he not, or did she not?

16           MS. CHAITMAN: The relevant trustee admitted them,

17   Your Honor. I just don't remember which trust that is. I

18   don't remember the account number.

19           THE COURT: I think after they admitted them into

20   the other two, the withdrawals were denied, that's my

21   recollection. Let's see --

22           MS. CHAITMAN: But that's because there was only

23   one trustee for that trust.

24           THE COURT: They were certainly denied for the 0324

25   account. What about the 0086 account? Let's see. Oh, no, I

1    see that they were denied to the 0866 account. I'm looking

2    at the responses, 15 -- the receipt for the account, the

3    receipt of the transfers for those accounts were denied. All

4    right. That leaves Barbanel.

5            MR. DEXTER: Barbanel has records of deposits from

6    March 1999 on. Barbanel does not have any records of

7    withdrawals. Barbanel is willing to allow the trustee to

8    subpoena bank records to determine transfers to and from

9    Madoff within a relevant time period. And Barbanel has no

10   problem with that.

11           THE COURT: So he has no objection to the subpoena?

12           MR. DEXTER: Only if it's limited solely from

13   transfers to and from Madoff, not in an attempt to obtain

14   the entire universe of bank records.

15           THE COURT: I got it. All right. But he denies all

16   of the transfers which admissions are requested, in the

17   request for admissions?

18           MR. DEXTER: Just the withdrawals, because he

19   doesn't have records of that, so how could he admit.

20           THE COURT: I'm not arguing with you about that,

21   Mr. Dexter, I'm just saying he can't admit it, the trustee's

22   got to get the information somewhere else, right?

23           MR. DEXTER: Right, the trustee should get all the

24   relevant information, and not all entirely irrelevant

25   information.

1           THE COURT: Okay, and who decides what's relevant

2    and what's not relevant?

3           MR. DEXTER: Well, I mean, you look at the federal

4    rules. You look at Rule 26, and the Court makes the

5    determination. Is this really the best way to do this? Do we

6    really want to allow the trustee to obtain all of these

7    other records when there are numerous other discovery

8    devices that would allow the same relevant information

9    without the same intrusion?

10          THE COURT: Where else would the trustee get the

11   information regarding the withdrawals in the Barbanel case?

12   Can't ask Mr. Barbanel, because he doesn't know.

13          MR. DEXTER: Well, Mr. Barbanel could produce them,

14   why not?

15          THE COURT: So why didn't he just admit the

16   transfers, then?

17          MR. DEXTER: Because at the time, he didn't have

18   the information. If it was a matter of --

19          THE COURT: So why didn't he amend his answers?

20          MR. DEXTER: It's probably a practical issue when

21   you're dealing with, in some cases, 100 request for

22   admission served against one defendant, there's only so much

23   you can do. So anything that's relevant, Mr. Barbanel is

24   happy to not contest the trustee's subpoena of, and if it

25   would help things, he would do what he can to produce these

1    records. At this time, he doesn't have all the records that

2    would be required for him to admit the expansive requests

3    for admissions that the trustee has served on him.

4            THE COURT: All right. I think that covers all of

5    the cases in which subpoenas have been served. If you're

6    done, let me hear from the other side.

7            MR. DEXTER: Just one thing about the affirmative

8    defenses, and let's go back to the Saren-Lawrence case. In

9    that case, the only affirmative defense that's raised is the

10   tax records, affirmative defense. And as has been made clear

11   on the record, that defense on applies for taxes paid before

12   2003. The records sought in the subpoena are records in

13   2007, 2008, and 2009. So any records that would be produced

14   in response to that subpoena would shed no light whatsoever

15   on that affirmative defense.

16           THE COURT: Can I ask you a question, though? Why

17   did she deny receipt of the money that was apparently

18   withdrawn to pay taxes, when she got the refunds? How can

19   she assert that as a defense, if she got a refund for those

20   payments?

21           MR. DEXTER: Well, in that case, the affirmative

22   defense wouldn't apply.

23           THE COURT: But I've had this conversation with

24   Chaitman, I said, "Modify or withdraw the defense." It's

25   still out there.

Page 40

1              MR. DEXTER: Right, so I mean, that could be one

2      remedy. The Court could say, unless Saren-Lawrence modifies

3      that affirmative defense, then we will order compliance with

4      the subpoena.

5              THE COURT: But I've said that already. I said it

6      two months ago, I think.

7              MR. DEXTER: I mean, I think it's been clear on the

8      record that that affirmative defense only exists prior to

9      2003. But whether it says that in the answer or not --

10             THE COURT: That's what you tell me, the simplest

11     thing to do is just amend the answer.

12             MR. DEXTER:  All right.

13             THE COURT:  That would be -- that could be a

14     simple remedy to that.

15             MR. DEXTER:  Yeah.

16             THE COURT:  Let me hear from the trustee.  Thank

17     you.

18             MR. SHEEHAN:  Your Honor, I didn't come here today

19     to go through all this.  Quite frankly, I think her motion

20     is baseless.  There's been a lot of adjectives and adverbs

21     tossed towards the trustee.  I've no interest in going

22     through them.  I think they are groundless.  Ms. Chaitman

23     has no temerity whatsoever in personally attacking anyone

24     she feels like it and gets away with it.  So let's leave

25     that as it is.

1              On the other hand, there's been a suggestion here

2     that we've done something wrong.  If Your Honor wants to go

3     through each and every one of these, that's just not true.

4     And I'll just give one instance.  In January 27th, we're

5     sitting here and the so-called representation is made, that

6     somehow becomes an order of Your Honor, that we won't.  We

7     won't enforce the subpoena until we give them an opportunity

8     to be heard.

9              The day before, our colleagues at the -- never can

10    think of names --

11             THE COURT:  Mr. (indiscernible) office.

12             MR. SHEEHAN:  -- yes -- get served a subpoena.

13    Why?  That young woman was charged with contempt.

14    Cavalierly, Ms. Chaitman comes to this court and then

15    withdraws it.  This isn't TV.  You don't make an allegation

16    and say withdrawn and that's it.

17             This is what's going on here.  This is what has to

18    stop.  We don't agree with anything she has said about us.

19    We've done that nothing wrong.  While the press may be who

20    she's playing to, we don't.  We come to court.  We give you

21    our answers, and I think we've given you the answer to all

22    her objections in our papers.

23             Let's get to the Rule 26 fiasco that she's created

24    here.  There's no basis in law for anything that she's

25    saying.  To suggest to Your Honor that we can't make any

Page 42

1     discovery with regard to subsequence in the context of

2     initial transferee cases is baseless.  There's no case that

3     holds that.  She has none.

4           What she's doing is corrupting things.  Let's walk

5     through it.  In (indiscernible), we have to have a plausible

6     basis.  Your Honor's very familiar with that, right?  You

7     rule against us.  We say okay, how about discovery?  What

8     would Your Honor say to that?  I'm not going to allow

9     discovery.  You don't even have a plausible basis for your

10    complaint.  You can't get discovery.

11          That doesn't apply here, yet that's the echo that

12    we hear Ms. Chaitman.  Ms. Chaitman seems to think that

13    because in the omnibus case, she got one subsequent

14    dismissed, that therefore that means we get no discovery on

15    subsequents.

16          THE COURT:  How can you get discovery?  Putting

17    aside the avoidance litigation order, which I have a

18    question about, how do you get discovery in the adversary

19    proceeding into an issue that's not in the case.

20          MR. SHEEHAN:  Well, that's where I agree with Your

21    Honor about 2004.  But, but I think we get it before a jury

22    and after.  All right?  We get it before in 2004.  We get a

23    jury for this reason.  This reason is that who knows better,

24    and what records better reflect who the subsequent

25    transferee is than in that case?

Page 43

1           And there's nothing in the law that suggests we

2     have two weeks.  Colonial Gas doesn't got that far.  We

3     don't have to avoid the initial transfer, it would seem to

4     me, in order to wait and get discovery.

5           THE COURT:  I agree with you, and I've had that

6     case and Judge Rakoff had the issue where you don't have to

7     -- well, first to void the initial transfer--

8           MR. SHEEHAN:  Correct.

9           THE COURT:  --to sue the subsequent transferee,

10    but you haven't sued the subsequent transferee.

11          MR. SHEEHAN:  And that's the reason why 'cause we

12    don't know 'cause until we have this discovery, we don't

13    find out.  In the meantime, what Your Honor's allowing by

14    not letting us use Rule 26 or suggesting that or adopting

15    what Miss -- the records are disappearing.  Did -- Congress

16    intended that?  I don't think so.

17          When they gave us 550, they didn't say, oh, you

18    have to wait until you get the initial transferee, and that

19    gives all those initials a fast opportunity to destroy

20    records, get rid of them.  You'll never find them.  I don't

21    think that's what Congress was doing, all right?

22          What Congress gave us under Rule 26 is the ability

23    -- in this certainly germane to find out what they did.

24    Just take the example of the husband and the wife.  I was at

25    work at Crummy, Gibbons, and O'Neal, and Andrew B. Crummy

Page 44

1    told me the first place to look when you're dealing with a

2    fraudster is the wife or the husband.

3              Rule number one.

4              THE COURT:  You know what happened in the

5    (indiscernible) case.

6              MR. SHEEHAN:  Well, yes, I do.

7              THE COURT:  Okay.

8              MR. SHEEHAN:  But the bottom line is, is that

9    where else are you going to look?  It's a start, but there's

10   no reason in the world why I shouldn't be able to go there.

11   And, and this business of privacy that keeps popping up.

12             THE COURT:  Let's move off the subsequent

13   transferee issue 'cause I don't think that's standing to

14   raise it in the context of the motion (indiscernible).

15             MR. SHEEHAN:  I understand that, but I think we

16   need clarity to be able to go forward or you -- Your Honor,

17   you and I will be back here again and again--

18             THE COURT:  Well, maybe -- okay.

19             MR. SHEEHAN:  --as we were last week on trustee

20   compensation.

21             THE COURT:  You're not -- you are not gonna get it

22   today because I don't think they have standing to even raise

23   the issue.

24             MR. SHEEHAN:  Okay.

25             THE COURT:  So it's an academic discussion at this

1    point, and maybe you should just seek a Rule 2004 order,

2    which is designed to get information to come out -- to

3    commence adversary proceedings.

4            MR. SHEEHAN:  I will do that without conceding

5    that --

6            THE COURT:  All right, far enough.

7            MR. SHEEHAN:  -- we can't do it under Rule 26.

8            THE COURT:  Well, it's not teed up.  It's not teed

9    up today because these are third party banks' appearance.

10            MR. SHEEHAN:  Correct, I understand.  So in any

11    event, I think -- I am --

12            THE COURT:  So let's move on to the privacy

13    issues.

14            MR. DEXTER:  The privacy issue, I think, is -- has

15    been vexing the courthouse for years.  It isn't new.  That's

16    one we have protective orders.  We have highly confidential,

17    where only the attorneys can look.  We have confidential

18    where our staff and others can look.  This has been dealt

19    with for years and years and years, and, you know, the

20    heightened attention to it in this cyber world we live in

21    today seems to give it an added value, which I think

22    overstates the issue.

23            While we're really talking about here is that we

24    get access to this, just as Your Honor order, by the way --

25    you know, it seems like a century ago -- when we were in

1    here in Cohmad, and we had the same reaction.  And Mr.

2    Badway wanted to filter this stuff and mark it up and redact

3    it and do all kinds of things.  And Your Honor quite

4    correctly ordered no.  It goes to the trustee.  He's

5    operating under a protective order.  He is, yeah, a

6    fiduciary.  He's whatever.  He's an officer of the court.

7    He will abide by that order, and therefore, he gets access

8    to it.

9           The same thing should happen here.  There is no

10   privacy issue.  There is a privacy issue in the sense that

11   we need to -- not a privacy issue, I should say, that would

12   bar discovery.  There's a privacy issue that must be paid

13   attention to, and we have.  We've done it the right way, and

14   that should not bar us from going forward and getting all

15   these records so that we can do our job as trustee.

16           Thank you, Your Honor.

17           THE COURT:  All right.  I'll give you the last

18   word, Mr. Dexter.

19           MR. DEXTER:  If I could, just with respect to

20   Cohmad, that case is really not applicable to this dispute

21   because the movant in that case who was moving to quash the

22   subpoena was actually a defendant and actually was a

23   subsequent transferee in that case.  And in that case, the

24   trustee had already satisfied Rule 8 pleading standards.  In

25   this case, the Rule 8 pleading standards are not

Page 47

1   established, so that case does not apply.

2           THE COURT:  Well, but my sense was that Mr.

3   Sheehan was mentioning that in terms of how the privacy

4   issue was dealt with.

5           MR. DEXTER:  Right, and how the privacy issue was

6   dealt with, and that was an objection that was raised.  And

7   I'm not sure that Your Honor on a mostly ruled on the

8   privacy issue.  I would --

9           THE COURT:  Well, I essentially did by saying un-

10  redacted records would be turned over to the trustee and

11  they'd be held in confidence.

12          MR. DEXTER:  Well, if you look at the facts of

13  that case --

14          THE COURT:  And I mean, I think I also said that

15  the trustee should give, in that case, Mr. -- who is it

16  Greenberg, or...

17          MS. JENSON:  Mr. Greenberg.

18          THE COURT:  Mr. Greenberg's attorney the records

19  he got from the bank, and if there was a particular issue

20  regarding what should be redacted, they should discuss it,

21  but I would ultimately decide it rather than have a third

22  party decided.

23          MR. DEXTER:  The defendants in that case are not

24  entitled, I would think, to the same level of privacy is in

25  this case.  In that case, those are people that were working

Page 48

1    with Bernard Madoff to commit what they knew was a fraud.

2    In this case, we have --

3              THE COURT:  Well, they deny that.

4              MR. DEXTER:  In this case, we have people who are

5    entirely innocent investors, were the trustee is seeking all

6    their personal bank records.  In that case, you have someone

7    who is a known subsequent transferee, who's a known

8    defendant in the case --

9              THE COURT:  You keep -- you know, you keep

10   confusing the subsequent transferee issue with the privacy

11   issue.  They're two different issues.  And you may have --

12   you certainly have standing to raise the privacy issue.  I'm

13   not sure you have standing to raise the subsequent

14   transferee issue.

15             MR. DEXTER:  Well, that's something we can

16   certainly brief for the Court, but my --

17             THE COURT:  I don't need to brief it.  That's

18   before me now.  I need

19             MR. DEXTER:  But my point -- sorry, Your Honor.

20   Go on.

21             THE COURT:  If you didn't brief it at this point,

22   you know, what's further briefing gonna do?  That's the

23   issue raised by your motions, or the two issues raised by

24   your motions.

25             MR. DEXTER:  Well, we don't -- I don't think

1    anyone doubts that the defendants have the standings to

2    raise these issues, at least with respect to the

3    confidentiality.  The question becomes do they have a

4    standing to advance what is a clearly established principle

5    of law--

6              THE COURT:  Which, which principle is that?

7              MR. DEXTER:  It's the one that's been repeated ad

8    nauseam here.  It's that you cannot use discovery to frame a

9    complaint against subsequent transferees.

10              THE COURT:  Got it.  I think have a question for

11   Mr. Sheehan.

12              MR. SHEEHAN:  Yes, Your Honor.

13              THE COURT:  I noticed that you did not respond to

14   the aspect of the motion to dismiss the cases.

15              MR. SHEEHAN:  I think it's groundless.

16              THE COURT:  (indiscernible)

17              MR. SHEEHAN:  Well, I did -- I do now.

18              THE COURT:  All right.  Thank you. You can sit

19   down.  The defendants in 11 adversary proceedings

20   representative Chaitman, LLP, hereinafter Chaitman, have

21   moved among other things to dismiss the adversary

22   proceedings based on alleged violations of representations

23   made to the Court by the trustee that he would not seek to

24   compel compliance with a certain bank of subpoenas until 30

25   days after the trustee served request for admissions on the

Page 50

1    defendants or proposed stipulations of fact.  For the

2    reasons that follow, the motions to dismiss are denied.

3           The defendants are good faith transferees of

4    alleged fictitious profits.  The trustee commenced adversary

5    proceedings against the defendants to recover the fictitious

6    profits up to the amounts transferred within two years of

7    the December 11, 2008, filing date.

8           The trustee served subpoenas on the defendants'

9    banks seeking disclosure of information relating to deposits

10   and withdrawals during the three-year period beginning two

11   years before the filing date and ending on December 31,

12   2009.  The current dispute arises from the trustee's efforts

13   to enforce the bank subpoenas.

14          By chambers conference on January 27, 2016, the

15   trustee's attorney represented that while he had and would

16   serve subpoenas because of concerns about spoliation of

17   evidence, which had apparently occurred in one case, he

18   would not seek to enforce the subpoenas until 30 days after

19   he served either a proposed stipulation of facts or request

20   for admissions relating to the transfers at issue in the

21   adversary proceeding.  If the defendant admitted the

22   transfers, he would forgo enforcing the subpoena except to

23   the extent that the bank records were also relevant to an

24   affirmative defense asserted by the defendant.

25          The trustee's concession and certain actions

Page 51

1    attributed to Chaitman generated additional letter writing

2    to the Court and more litigation.  The trustee accused

3    Chaitman of contacting at least one bank to advise it not to

4    comply with the subpoena.

5          Chaitman in turn move to told one of the trustee's

6    attorneys in contempt for serving a subpoena the day before

7    the chambers conference.  Chaitman also accused the trustee

8    of misrepresenting that he had served request for admission

9    in adversary proceedings in which he had served subpoenas.

10          As a result, the Court held a conference on the

11   record on February 11th, 2016.  The Court reiterated the

12   prohibition against contacting the subpoenaed banks directly

13   and instant directed the parties to first meet and confer

14   and if necessary, raise any issues with the Court.

15          The Court further stated on the record that the

16   trustee was free to enforce the subpoenas in the absence if

17   a protective order "transcript of February 11, 2016, hearing

18   at 13", and if necessary, move to compel the compliance Id.

19   at 14.

20          Finally, the Court confirmed the trustee's

21   commitment that he would not seek to enforce any bank

22   subpoenas until 30 days after he delivered a proposed

23   stipulation of facts or requests for admission, Id. at 14 to

24   15.

25          On or about February 18th, the trustee wrote to

1   several of the banks regarding the subpoenas previously

2   served in the Alpern, Barbanel, Roth, Shapiro, and Saren-

3   Lawrence cases.  Each letter referred to the Court's

4   direction that the trustee could enforce the subpoena absent

5   a protective order and demand compliance by February 25.

6   See declaration of Helen Davis Chaitman dated February 26,

7   2016, Exhibit 3.

8           As of February 18, 2016, and with one exception,

9   the defendant's time to respond to previously served

10  requests for admission had not expired, and in fact, no

11  request for admission had been served in the four Shapiro

12  cases.  The one exception I mention was Saren-Lawrence, who

13  had served her initial responses to trustee's request for

14  admissions in December and had served amended responses on

15  February 3rd.

16          Furthermore, the trustee had not served any -- as

17  I mentioned, any requests for admission in the four

18  adversary proceedings relating to Shapiro, who is deceased,

19  although he served thank subpoenas in those cases and

20  insisted on compliance.

21          On February 26th, Chaitman moved, pursuant to

22  rules and 37(d) and 41(b) of the federal rules of civil

23  procedure, to dismiss the cases.  She argued that the

24  trustee had violated his own representations to the Court

25  and the Court's order of the February 11th hearing that he

Page 53

1    should -- that he would not insist on compliance with the

2    bank subpoenas before the defendants in the adversary

3    proceedings had the opportunity to either admit the facts

4    relating to the deposits and transfers in response to

5    requests for admissions.

6           The defendant's motions to dismiss suffer from

7    several fatal defects.  Rule 37(d) authorizes a Court to

8    impose sanctions against a party for its failure to comply

9    with an order compelling discovery.  Rules 41(b) authorize a

10   court to dismiss an action for failure to comply with a

11   court order.  Dismissal under Rule 41(b) is a drastic remedy

12   that is committed to the Court's discretion (indiscernible)

13   federal practice section 41.5[3] and [4] (3rd edition 2014).

14          Chaitman has not identified a court order that the

15   trustee supposedly violated.  The theory is that he violated

16   a representation, to wit that he would not enforce a

17   subpoena until 30 days after he served a proposed

18   stipulation of facts or request for admissions.

19          The defendants have not cited any authority

20   supporting a dismissal for violating representation, and if

21   the trustee have done so, the Court would follow the less

22   drastic approach of quashing the subpoena if it was

23   appropriate.

24          Next, the Romans and Wilentz have not produced

25   letters demanding compliance with the subpoenas in these

Page 54

1    cases -- in both cases.  Hence they fail to identify any

2    conduct that allegedly violated the direction of the Court.

3    In addition, as I mentioned, the defendant in Saren-Lawrence

4    served her amended responses on February 3rd, so any

5    prohibition or agreement regarding a stay of enforcement of

6    the subpoena had expired by February 18th.

7           In any case, the trustees insistence on compliance

8    with the bank subpoenas did not violate the Court's order

9    were justify a refusal of -- a dismissal of the adversary

10   proceedings.  At the February 11th hearing, the Court stated

11   that the banks were required to comply with the subpoenas,

12   to which they did not object on their own account absent a

13   protective order.

14          Hence the trustee was free to demand compliance,

15   and it was incumbent upon the defendants to move for a

16   protective order and/or to quash the subpoenas.

17   Nevertheless, the Court's statement on February 11th

18   appeared to be inconsistent with the trustee's

19   representation that he would not seek to enforce the

20   subpoenas until 30 days after he served a request for

21   admissions or after he received unsatisfactory responses.

22          Except for the Saren-Lawrence case, the

23   defendant's time to respond had not expired when the trustee

24   wrote his February 18th, 2016, letters demanding compliance

25   by the banks.  The Court's statement at the February 11th

Page 55

1    conference that the banks must comply with the subpoenas

2    absent a protective order was not intended to relieve the

3    trustee of the representation he had made to the Court.

4           Furthermore, it was not intended to relieve the

5    parties of the requirements memorialized in the order signed

6    on February 19th to meet and confer, seek a court conference

7    if they would not agree, refrain from contacting the banks

8    until any -- or refrain from contacting the banks until any

9    disputes were resolved.  In addition if a conference was

10   requested, the Court -- the order stayed dispute of

11   discovery pending a resolution of dispute.

12          Given the confusion, sanctions against the trustee

13   are not appropriate.  The defendants in Saren-Lawrence

14   Barbanel, Roman and Wilentz have served their responses, and

15   the trustee is not insisting on compliance pending the

16   disposition of the motions to quash what -- a protective

17   court order or a protective order.

18          Roth has not responded to the request for

19   admissions, and Chaitman is seeking to withdraw her --

20   withdraws her counsel.  The trustee has explained it wants

21   time to respond, although he has now was drawn the request

22   for admissions.  And as I mentioned, he hasn't even served

23   the request for admissions in the four Shapiro cases.

24          The Court we'll address have the various the

25   subpoenas to the extent it hasn't done, so in connection

Page 56

1   with the motions to quash, but will not dismiss the cases.

2   The defendants have moved to quash the bank subpoenas and

3   Mr. Lawrence has moved for protective order and to quash the

4   subpoena.  The trustee has agreed to await the determination

5   of the Court before seeking any further steps to compel

6   compliance with the bank subpoenas, and that is sufficient.

7   Accordingly, the motions to dismiss, pursuant to Rule 37(b)

8   and Rule 41(d) are denied.

9              Prior to turning to the specific subpoenas, the

10  Court will first address certain general issues that apply

11  to all or mostly all of the motions to quash and/or further

12  protective order.

13             First, the motions to quash are not untimely or

14  alternatively, the defendants have good cause -- have shown

15  good cause for not moving sooner.  The parties were required

16  to meet and confer and then seek a conference with the

17  Court, before filing formal discovery motions.  Strict

18  adherence to the timing requirements advocated by the

19  trustee would eviscerate the remedial purposes of the meet

20  and confer requirements.  The Court conducted several

21  conferences and it was only at the February 11th hearing

22  that it authorized the trustee to seek compliance with the

23  subpoenas in the absence of a protective order.

24             One week later, by letters dated February 18th,

25  the trustee insisted on compliance in many of the cases by

Page 57

1     February 25th, only one week after the letter.  His letters

2     dictated the timing of the motions and the defendants filed

3     a motion to quash the subpoenaed and for protective on

4     February 26th.

5            Second, the defendants cannot quash the subpoenas

6     on the basis that the bank disclosures might (indiscernible)

7     subsequent transfer (indiscernible) information.  They argue

8     that the information is irrelevant, either because the

9     complaint did not assert a subsequent transfer claim, or if

10    they did, the claim was dismissed.

11           Federal Rule of Civil Procedure 45(d)(3) sets

12    forth the grounds to quash or modify a subpoena.  It states,

13    in relevant part, that the Court must quash or modify

14    subpoena that, open quote, "requires disclosure of

15    privileged or other protected matter," period, end quote.

16    Open quote, "In the absence of a claim of privilege, a party

17    usually does not have standing to object to a subpoena

18    directed to a non-party witness," period, end quote.

19    Langford versus Chrysler Motors Corporation, 513 F.2d 1121,

20    1126, Second Circuit, 1975.

21           Accordingly, a party lacks standing to challenge

22    subpoenas issued to non-parties on grounds of relevancy or

23    undue burden.  Universitas Education, LLC versus Nova Group,

24    Inc., 2013 Westlaw 57892, 5, (SDNY January 4th, 2013)

25    (collecting cases).  The defendants, therefore, lack

1    standing to quash subpoenas because the bank records

2    contained irrelevant -- on the theory that the bank records

3    contained irrelevant subsequent transfer information.

4          Moreover, the defendants have put subsequent

5    transfers into issue through their affirmative defenses.

6    Every defendant asserted that he or she was entitled to a

7    (indiscernible) or equitable adjustment to the extent he or

8    she paid taxes on fictitious profits.  Judging from the

9    responses to the requests for admissions, several of the

10   defendants paid the taxes from the same accounts in which

11   they deposited their withdrawals from BLMIS.

12         The defendants contend that they are no longer

13   asserting this defense for any period after 2003, because

14   the government granted them relief, and refunded the part of

15   the tax payments attributable to the fictitious profits.

16   However, the defendants have not modified or withdrawn this

17   defense, despite the Court's admonition to do so.

18         More generally, every defendant, except for Saren-

19   Lawrence has asserted the defense that open quote, "there

20   can be no liability of any recipient of funds, who, as a

21   matter of law or contract was required to transfer any

22   portion of the fund to a third party," closed quote.  This

23   defense implies that these defendants intend to argue that

24   they lack dominion and control of some of the BLMIS

25   withdrawals that they subsequently transferred.

1              Third, the defendants have standing to object to

2      the third party subpoenas on privacy grounds, but bear the

3      burden of persuasion as to the parties seeking to quash the

4      subpoenas.  Concord Boat Corporation versus Brunswick, 169

5      FRD 44, 48, (SDNY, 1996).  While Courts have recognized that

6      an individual has a privacy interest in his personal

7      financial information, In Re: Glitnir, G-L-I-T-N-I-R, Bank

8      2011 Westlaw 3652764, 5 (Bankruptcy, SDNY, August 19, 2011)

9      (collecting cases), the right to privacy is not absolute,

10     open quote, "When a subpoena seeks the production of an

11     individual's personal financial information, the Court must

12     balance the relevance of the information sought against the

13     intrusion into the affected individual's privacy interest,"

14     period, closed quote, id.

15             Unlike the portion of the administrative subpoena

16     quashed in McWane versus FDIC. F.3d, 1127, (Second Circuit

17     1995), a case cited by the defendants, the trustee is

18     seeking the defendants own relevant personal financial

19     information.  McWane upheld the subpoenas to that extent.

20             The bank information is plainly relevant because

21     the trustee is seeking to recover transfers from BLMIS to

22     the defendants and the defendants presumably deposited the

23     transfers into their bank accounts.  Furthermore, the

24     information is not duplicative of the trustee's records,

25     because the defendants have challenged the accuracy of the

1    trustee's records.  If the defendants don't believe the

2    BLMIS records are accurate, I may not either.  In that case

3    the trustee may have to prove his case, through the

4    defendants' bank records.

5         Even if the defendant does not dispute the

6    accuracy of the BLMIS records, the defendants' refusal to

7    admit the transfers makes them a disputed fact the trustee

8    must prove through other evidence.  The trustee is entitled

9    to the bank information to prove the fact that the transfers

10   will meet the affirmative defenses.

11        The counterbalance against the relevancy of the

12   records is the defendants' general assertion of a right to

13   privacy in their financial records but nothing more.  Given

14   the importance of the bank records to the trustee's

15   fraudulent transfer claims, and the defendants' denial of

16   some or all of those transfers, they have failed to sustain

17   their burden to show that their general privacy concerns

18   outweigh the relevance of the bank information.  Moreover,

19   the trustee has agreed to treat the bank information as

20   confidential thus preventing their disclosure to the world

21   at large.

22        This conclusion also applies to the request for a

23   protective order filed by James Lawrence, the spouse of the

24   defendant Helene Saren-Lawrence.  The trustee did not

25   subpoena Mr. Lawrence's bank records, rather, he subpoenaed

Page 61

1    his wife's bank records at Valley National Bank, and Mr.

2    Lawrence and his wife are the joint owners of the account,

3    by their own choice.  Mr. Lawrence admits that his wife's

4    Madoff-related transfers, including the tax refunds relating

5    to liabilities she still seeks to offset, were deposited

6    into the joint account, declaration of James Lawrence, in

7    support of motion for a protective order, dated February 22,

8    2016 at Paragraph 3.

9           The defendant has not admitted to any of the

10   transfers from Madoff.  Her responses to the request for

11   admissions only admit to the transfers to the extent they

12   are consistent with the records subpoenaed from her

13   accountant.  This requires the trustee to prove the

14   transfers through the accountant's records, which

15   contravenes the very purpose of request for admission, and

16   is effectively a denial of the transfers.

17          Furthermore, Valley National's production of

18   records redacted only to show what it says -- what it

19   contends are only the Madoff-related transfers and

20   withdrawals, see id., is no substitute for an unredacted

21   production.  Redactions breed suspicion and may deprive the

22   reader of context, In Re:  State Street Bank and Trust

23   Company, Fixed Income Funds Investments Litigation, 2009,

24   Westlaw 1026013, 1 (SDNY April 8, 2009).  They are only

25   permissible to protect privileged, John Wiley and Sons, Inc.

Page 62

1     versus Book Dog Books, LLC, 298 FRD 184, 186 (SDNY 2014),

2     and the Court has concluded that the relevance of the

3     records outweighs any general privacy concerns.

4          The defendant's suggestion that they or a third

5     party redacted documents is therefore unacceptable.

6     Moreover, if the defendants are willing to show the records

7     to show the records to a neutral third party, there is no

8     reason why they shouldn't show them to the trustee who will

9     hold them in confidence.  If the defendants seek the

10    redaction of specific records turned over to the trustee,

11    the defendant can raise any redaction request based upon

12    privacy concerns directly with the Court.

13         Now with respect to the specific subpoenas, I've

14    already dealt with the subpoenas in Saren-Lawrence.  As I've

15    suggested, the admission to the transfers to the extent

16    they're consistent with Ms. Saren-Lawrence's accountant's

17    records is just not an admission at all, and as I said would

18    require the trustee, essentially, to put the accountant on

19    the stand, ask him about the records to prove the transfers.

20    That doesn't accomplish the purpose that the transfers were

21    intended to accomplish and for that reason, whatever the

22    trustee's representations were about holding off compliance,

23    the responses don't admit the transfers, so the trustee is

24    free to compel compliance with the subpoenas.

25         With respect to the Romans, in both cases I note

Page 63

1    that they denied transfers of $150,000 and $125,000, they

2    denied receipt of those transfers, they didn't simply deny

3    the transfers.  So they put those transfers in issue.

4    They've also stated that they did not receive credit for

5    $140,000 worth of deposits that they made so those deposits

6    are also at issue because they would obviously affect the

7    trustee's computation of fictitious profits and the amount

8    that he could ultimately recover.

9            In addition, like all the other defendants, except

10   for Saren-Lawrence, that have raised this affirmative

11   defense, that somehow money they got from BLMIS, that they

12   were required to transfer by contract or other -- or by law,

13   was not itself a receipt of money, puts the subsequent

14   transfers in issue.

15           With respect to Halpern, I noted that two of the

16   three accounts, all of the transfers were denied, but I

17   thought for one of the accounts all of the transfers were

18   admitted.

19           MAN:  We don't know.

20           THE COURT:  Well you're seeking to enforce

21   compliance with these subpoenas.  It's the -- I think it's

22   Account 324.  Or I'm sorry, one of them is -- no, no, no, I

23   take that back.  I see an answer to Question Number 76 that

24   the receipt of $43,096 was denied.  And also in response to

25   Request Number 81, the receipt of $63,259 was denied.  Also,

Page 64

1    the return of a check was denied.

2              Which of the Halpern -- were there any of the

3    Halpern accounts where the transfers were admitted, Mr.

4    Dexter?

5              MR. DEXTER:  Yes, the Halpern's admitted --

6              THE COURT:  Which one?

7              MR. DEXTER:  -- -- had a request for admission 78,

8    79, 82 --

9              THE COURT:  Let me see.  78, 79?  Which account is

10   that?

11             MR. DEXTER:  I'm not sure which account that is.

12             THE COURT:  Let me just see.  It's Account 324,

13   but they denied several of the receipts and they denied the

14   receipt of the -- or the returned check.

15             So -- and they've also asserted that defense that

16   I mentioned about receiving money as a conduit or in trust

17   on some theory that it doesn't count as a receipt.  So I'll

18   compel compliance with those subpoenas.

19             What about Barbanel?  I thought I said Barbanel

20   had denied all the receipts and I think you told me he

21   didn't have any other records?  Is that -- is he the one?

22             MR. DEXTER:  On the withdrawals, correct?

23             THE COURT:  Oh, he was -- okay.  So I'll compel

24   compliance with those subpoenas.

25             Now with Wilentz, and I know he has this

Page 65

1    affirmative defense, like everybody else, but he's admitted

2    the receipt of the money and there were no deposits during

3    the two-year period.  So why do you need his or its bank

4    records?  There are two accounts, I think.  One received

5    $130,000, one received $150,000 and he's admitted that.

6             MS. JENSON:  Your Honor, these are the responses

7    where the defendant is also challenging the accuracy of the

8    BLMIS bank records.

9             THE COURT:  But you only -- I know.  And that goes

10   back to whenever the account was opened.  But you're only

11   asking about that two or three-year period.

12            MS. JENSON:  Right.

13            THE COURT:  And he's admitted that.

14            MS. JENSON:  And --

15            THE COURT:  And there's nothing that the bank will

16   produce, in response to the subpoenas that's relevant to the

17   -- these other transfers, which go to computing the

18   fictitious profits.

19            MS. JENSON:  Your Honor, if I may propose a

20   solution to this.  We learned, during preparing for the

21   argument, that in their claim submission to the trustee, the

22   Wilentz defendants stated that they have all of their bank

23   records going back to the relevant time period, and they

24   match the BLMIS records.  And so we would be satisfied with

25   the production of the defendant's records.

Page 66

1              THE COURT:  Is that acceptable, Mr. Dexter?

2              MR. DEXTER:  I'm not sure I understand that

3      solution.  Satisfied with --

4              THE COURT:  In other words, they're going to

5      withdraw the subpoena to the bank on the condition that the

6      defendant produce all his bank records.  Because they

7      understand that he has all the bank records going back, I

8      guess, to the beginning of the account?

9              MS. JENSON:  That's what she states in her claim

10     submission.

11             MR. DEXTER:  Well we have no problems reducing

12     whatever she has.  I'm not familiar with that claim

13     submission, so I can't --

14             THE COURT:  Why don't we hold that one in

15     abeyance.  I won't compel compliance for this -- at this

16     point.  We can adjourn it for 30 days, if you want, to see

17     if you get the bank records.  And I -- but from what you're

18     telling me is if you get all the bank records from -- is it

19     a him or a her?

20             MS. JENSON:  It's a her.

21             THE COURT:  A her.  If you get all the bank

22     records from her, then you don't need to go forward with the

23     -- to get the same bank records from the bank.

24             MS. JENSON:  Obviously she has a more complete set

25     than the bank might.

1           THE COURT:  Okay.  And these are going to be

2    unredacted records that are going to be produced.

3           MS. JENSON:  Thank you.

4           THE COURT:  Let's just bear that one in mind and

5    we'll hold that one aside.

6           MR. SHEEHAN:  Yes, Your Honor.

7           THE COURT:  Now with respect to Shapiro -- let me

8    deal with Roth first.  You told me you're withdrawing your

9    request for admissions in Roth and you're not going to serve

10   request for admission in Shapiro.  There may be other

11   problems that delay the Shapiro case, I don't know, from

12   going forward.  And so that in essence you're saying

13   whatever you represented in the past that hasn't worked for

14   the reasons we've discussed, and on a going forward basis,

15   you're not going to waste time or money sending requests for

16   admissions because we'll be back in court fighting over that

17   objection.

18           MR. SHEEHAN:  Yes, Your Honor, with one footnote.

19   Got to have one.  Is that in both instances, Roth and

20   Shapiro, new counsel are coming on board.  All right?  New

21   counsel who -- one is -- I know we've worked with before.

22           THE COURT:  Well do you want to adjourn those?

23           MR. SHEEHAN:  Yeah, I would like to actually

24   adjourn those until new counsel is on board --

25           THE COURT:  Okay.

Page 68

```
 1              MR. SHEEHAN:  -- and then we --

 2              THE COURT:  And then --

 3              MR. SHEEHAN:  -- can perhaps resolve it with

 4      counsel and then inform Your Honor.

 5              THE COURT:  Who's the new counsel in Roth?

 6              MR. SHEEHAN:  It's -- I don't know Roth, but --

 7              MS. JENSON:  I'm sorry --

 8              MR. SHEEHAN:  -- I think in Shapiro -- do we know?

 9              MS. JENSON:  We don't have counsel on Roth.  We

10      actually received a phone call from the defendant, Roth,

11      yesterday.  She is expecting -- she is under the impression

12      that the motion to withdraw has already been granted.

13      That's on your docket for today.  And we will call her back

14      after that motion to withdraw is granted.

15              THE COURT:  Well if it's -- my question is, if

16      it's granted, and I don't have a problem with granting it, I

17      didn't want to do it before today and affect the timing of

18      the resolution of all these issues.

19              MR. SHEEHAN:  Right.

20              THE COURT:  But if it's granted, what do you

21      propose to do with respect to the subpoena in the Roth case?

22              MR. SHEEHAN:  Is to talk to the new counsel and

23      see what we could work out there.

24              THE COURT:  All right.

25              MR. SHEEHAN:  And if we could work something out,
```

1     then as we have, as I said earlier, with many other counsel,

2     we may or may not need to subpoena.  And the same thing may

3     be true with Shapiro.

4              THE COURT:  All right.  Do you have any objection

5     then to adjourning the issue of compliance in Wilentz, the

6     four Shapiro cases and Roth for 30 days to see if this can

7     be worked out?

8              MR. SHEEHAN:  No problem, Your Honor.

9              THE COURT:  Okay.  Provided that the banks are on

10    notice to maintain records, so just -- it's being adjourned

11    and you can provide for that.

12             MR. SHEEHAN:  Yes, Your Honor.

13             THE COURT:  And then I'll grant -- Ms. Chaitman,

14    I'll grant your motion on that basis to withdraw in Roth.

15    And you can submit an order to that effect.  Okay?  I guess

16    she's gone.

17             Mr. Dexter, you can submit an order for your firm

18    withdrawing in Roth.  I'll grant that motion.

19             MR. DEXTER:  Yes, Your Honor.

20             THE COURT:  All right.  Then with respect to the

21    Roman cases, Barbanel, Halpern and Saren-Lawrence, I'm

22    granting -- I'm denying the motions to quash the subpoenas

23    and the motions for a protective order and directing

24    compliance, subject to the requirement that the documents

25    produced by the banks be held in confidence pursuant to the

Page 70

1    -- I think it's the litigation protective order of June 6th,

2    2011.  All right?

3              MR. SHEEHAN:  Yes, Your Honor.

4              THE COURT:  With respect to the -- well, let's say

5    that with respect to the motions in Roth, Shapiro and

6    Wilentz, they'll be adjourned for a period of 30 days and

7    we'll use that as a reporting date.  When is the other date

8    in late April when you're supposed to come back?

9              THE CLERK:  25th.

10             THE COURT:  the 25th?

11             MAN:  27th.

12             THE COURT:  22nd?

13             MR. SHEEHAN:  27th, Your Honor, I believe.

14             THE COURT:  Okay.  Fine.  Why don't we adjourn

15   those motions to that date, for conference purposes, advise

16   the banks they're to hold on to their records, because --

17             MR. SHEEHAN:  We will do that.  And

18   (indiscernible) --

19             THE COURT:  -- the matters are not resolved.

20             MR. SHEEHAN:  Absolutely, Your Honor.

21             THE COURT:  All right. Anything else?  Oh, we have

22   the Madoff deposition.

23             MS. JENSON:  And I'm sorry, just so the record's

24   clear, the motion to compel Valley National Bank to produce

25   I --

```
 1              THE COURT:  Yes.

 2              MS. JENSON:  -- understand that to be granted?

 3              THE COURT:  Yes.  And the motions to dismiss are

 4    denied.

 5              MS. JENSON:  Thank you.

 6              MR. GLICKMAN:  Your Honor, may I?

 7              THE COURT:  Yes, sir.

 8              MR. GLICKMAN:  Barry Glickman on behalf of Valley

 9    National Bank.  Just one question in the context of the

10    compliance.  I understand that there is a protective order

11    in place.  Should we mark these documents as produced

12    consistent with that confidentiality order?

13              MR. SHEEHAN:  That would be fine, Your Honor.

14              THE COURT:  Okay.  Very good.  And if you --

15              MR. GLICKMAN:  Sure.

16              THE COURT:  -- can't work it out, then you can

17    come back.

18              MR. GLICKMAN:  And is there a time frame on that?

19              THE COURT:  Well, you -- how long is it going to

20    take you to produce the record?

21              MR. GLICKMAN:  If we could ten days, I'd

22    appreciate that.

23              MR. SHEEHAN:  Done.

24              THE COURT:  It's been going on for eight years --

25    six years, really.  All right.
```

Page 72

```
 1              MR. GLICKMAN:  We can six months?

 2              THE COURT:  No.

 3              MR. SHEEHAN:  Thank you, Judge.

 4              MS. JENSON:  Thank you, Your Honor.

 5              THE COURT:  All right.  Now --

 6              MR. DEXTER:  Your Honor, one thing, if I may --

 7              THE COURT:  Sure.

 8              MR. DEXTER:  -- before we proceed to the next

 9     motion?  As you did in Cohmad, will you grant leave to

10     appeal this?

11              THE COURT:  Well I can't grant leave to appeal,

12     only the District Court can grant leave to appeal.

13              MR. DEXTER:  Will you allow a stay so we can seek

14     (indiscernible)?

15              THE COURT:  I'll grant you a 14-day stay.

16              MR. DEXTER:  Thank you, Your Honor.

17              THE COURT:  And apprise Mr. Glickman.

18              MR. GLICKMAN:  Okay.

19              THE COURT:  I'll grant you a 14-day stay, you can

20     put that in the order.  Not a stay on the dismissed -- on

21     the motion to dismiss.  Let Mr. Glickman know --

22              MR. DEXTER:  Thank you, Your Honor.

23              THE COURT:  -- he'll send you a copy of the order.

24              MR. SHEEHAN:  But tell him he's got 14 days.

25              THE COURT:  Pardon?
```

1          MR. SHEEHAN:  Oh, I'm sorry.  I said --

2          THE COURT:  Get me the order today, it'll be the

3    14 days from the date of the entry of order of stay, then it

4    is up to the District Court if it wants to entertain the

5    matter.

6          MR. SHEEHAN:  Absolutely, Your Honor.

7          THE COURT:  How is the Cohmad matter settled?  Is

8    the Cohmad matter still pending?

9          MR. SHEEHAN:  Yeah, well what happened was is that

10   there was an attempt to appeal by Mr. Badway and we resolved

11   and it we turned over the bank records in compliance with

12   Your Honor's order.

13         THE COURT:  Oh, all right.  Okay.  Could I have

14   the Madoff deposition (indiscernible).

15         All right.  The last matter I have on the calendar

16   is the motion to conduct the deposition of Mr. Madoff with

17   respect to the profit withdrawal issue.

18         MR. DEXTER:  Yes, Your Honor.  This is the

19   customers' motion.  As we've laid it out in our briefs,

20   under the trustee shall conduct examinations by deposition

21   or otherwise, of the debtor, for some reason that has not

22   occurred in this case.

23         THE COURT:  And maybe the trustees has made the

24   determination he's not going to believe what he says?

25         MR. DEXTER:  It seems that the trustee has made a

Page 74

1      lot of determinations by himself.  This Court has

2      acknowledged that Mr. Madoff would be the most authoritative

3      source of information.

4              THE COURT:  I never said that.  I never said that.

5      I said that I thought that there must be people who worked

6      for Madoff, and made these entries, that would know what

7      they meant.  You really think Mr. Madoff made these entries?

8              MR. DEXTER:  He would certainly be a good

9      individual to ask, as to who would have information about

10     them.

11             THE COURT:  Okay.

12             MR. DEXTER:  Do I think Mr. Madoff would have

13     information about these entries?  Probably.  There's one way

14     to find out, and that's to have a deposition conducted.

15             THE COURT:  One of the concerns, and this may be

16     the only concern, I don't know, is that the deposition will

17     not be limited to the profit withdrawal issue.  And

18     specifically, we could get into the issue of Mr. Picower.

19     And the reason why -- the reason for that is in the

20     declaration put in in the Aaron Blecker matter there was a

21     paragraph relating to Mr. Picower that had nothing to do

22     with Mr. Blecker's particular dispute.  So how do we prevent

23     that, if Mr. Madoff is deposed?

24             MR. DEXTER:  I'm sorry, Your Honor.  So you're

25     acknowledging that you're going to proceed with granting

Page 75

1    leave to depose --

2              THE COURT:  I'm asking you a question. I'm asking

3    you another hypothetical question.  If I agree that you

4    should be entitled to take the deposition, what's to prevent

5    you from asking or eliciting information relating, not only

6    to Picower, but to other matters affecting cases in which

7    the parties won't be present at the deposition?

8              MR. DEXTER:  Well all you have to do is limit --

9    is enter an order limiting testimony to that scope.  And the

10   customers have no intent, whatsoever, to seek any

11   information related to Mr. Picower.  The fact that there was

12   information about him on the same declaration is just sort

13   of a practical matter, when you're dealing with someone

14   who's in jail and you can only get one declaration, that's

15   totally overblown and quite frankly irrelevant.  Because --

16             THE COURT:  Well it was irrelevant when you put it

17   into the Blecker --

18             MR. DEXTER:  Well that --

19             THE COURT:  -- you interjected it in the Blecker

20   matter.  Why'd you do that?

21             MR. DEXTER:  It's just that there's one

22   declaration.

23             THE COURT:  But the --

24             MR. DEXTER:  Mr. Madoff has signed one

25   declaration.  It happens to have things in it that aren't

Page 76

1    necessarily related to this motion.

2              THE COURT:  Okay.

3              MR. DEXTER:  You know, it's not -- there's nothing

4    to make of that, at all.

5              THE COURT:  You think not?

6              MR. DEXTER:  I don't think so.

7              THE COURT:  All right.  Let me hear from the other

8    side.

9              MS. BROWN:  Good morning, Your Honor.  Seanna

10   Brown on behalf of the trustee.

11             Your Honor, let me start with the second issue

12   about whether or not the deposition should be limited.  I

13   just want to follow up on one thing that counsel just said,

14   which is they have no intention of asking any questions

15   regarding the Picower Parties.

16             And Judge Cottle has ruled that Ms. Chaitman is

17   not entitled to that relief, she should not be using this

18   proceeding as an end run around that order.  And if they

19   have no intention of asking any questions about that, they

20   should consent to the relief that the trustee and the

21   Picower Parties are seeking --

22             THE COURT:  Any objection?

23             MS. BROWN:  -- in the limiting order.

24             THE COURT:  Any objection to the limiting language

25   in the -- that they propose?

1          MR. DEXTER:  Where is that language?  I would need

2    to review that language specifically.  We have no objections

3    to generally limiting the scope.  I'd have to look at the

4    specific language.

5          MS. BROWN:  I can provide a summary of what --

6          THE COURT:  Go ahead.

7          MS. BROWN:  -- relief we sought.  The first one is

8    that Madoff cannot give testimony about the Picower Parties.

9    The second point is that Ms. Chaitman cannot question him on

10   the Picower Parties.  The third point is that the transcript

11   cannot be used in any way until appropriate redactions are

12   made to the extent improper questions are posed, or

13   testimony is given.  And the fourth is that the transcript

14   can only be used in the context of the profit withdrawal

15   proceeding, and not against the Picower Parties or in any

16   other matter in which Ms. Chaitman -- or any other matter.

17          THE COURT:  Any objection to those conditions?

18          MR. DEXTER:  This should really be something for

19   Ms. Chaitman to address --

20          THE COURT:  Well, no, no.

21          MR. DEXTER:  -- if she's on the line.

22          THE COURT:  This has been -- Ms. Chaitman are you

23   on the line?  Gone.  She's in Barcelona.

24          You know, this issue was coming up today and my

25   sense in the reply brief was that the conditions were

Page 78

1    agreeable.

2              MR. DEXTER:  The conditions are agreeable, that

3    are consistent with that -- what is proposed.  What I would

4    propose is that if Your Honor is inclined to grant leave to

5    depose Bernard Madoff, customers' consent to limits --

6    limitations on the scope consistent with the spirit of

7    what's been proposed.  And then we could have a few days to

8    just sort of iron that out.

9              THE COURT:  Iron what out?  Any order that I enter

10   would have those limitations in it.

11             MR. DEXTER:  Well in that case, there -- our

12   objection would be futile and --

13             THE COURT:  (indiscernible) --

14             MR. DEXTER:  -- we'll allow you to enter that

15   order.

16             THE COURT:  But I want to resolve this before I

17   enter the order, if I do enter the order.  If it can't be

18   resolved, I won't enter the order.

19             Look at the conclusion in the trustee's objection,

20   which sets forth five conditions which I think are the same

21   five conditions of the Picower Parties' requests?

22             MS. RESSLER HARRIS:  I think there may be a few

23   additional ones in the Picower Parties, so --

24             THE COURT:  Well maybe we ought to turn to the

25   Picower Parties, we'll see.

        1              MR. DEXTER:  This is in the Picower Pretty arties'

        2     response?

        3              MS. RESSLER HARRIS:  Yes.

        4              MR. DEXTER:  Yeah, now I'm looking at.  Okay.

        5              MS. RESSLER HARRIS:  It's on Page 11 of the

        6     Picower --

        7              THE COURT:  Yeah.

        8              MS. RESSLER HARRIS:  -- Parties' response.

        9              THE COURT:  There seem to be seven conditions

       10     instead of five.  It's a little more specific about

       11     inquiries about Picower.

       12              MS. RESSLER HARRIS:  That's right.  They're the

       13     same ones that the trustee's counsel just --

       14              THE COURT:  Well --

       15              MS. RESSLER HARRIS:  -- identified.  And then in

       16     addition, we want to make sure that we -- that the Picower

       17     counsel has the opportunity to review a transcript that's

       18     been marked confidential, to make sure that there has been

       19     compliance before any use of the deposition -- of the

       20     transcript can be made.

       21              And we want to make sure that neither the Chaitman

       22     parties nor any parties ever can use the transcript in any

       23     action to be brought against the Picower Parties or their

       24     agencies.

       25              And finally --

Page 80

1              THE COURT:  Are you proposing the transcript first

2     be filed under seal and then parties -- particularly the

3     Picower Parties, because it's really their issue, although I

4     suppose --

5              MS. RESSLER HARRIS:  I think it's the trustee's --

6              THE COURT:  -- although I suppose questions could

7     be asked about a lot of cases --

8              MS.  BROWN:  Yes.

9              THE COURT:  -- and counsel for those parties would

10    not be present.  Oh, before I forget.  I think that there's

11    one other law firm involved in profit withdrawal issue.

12             MS. BROWN:  There is.  Your Honor, it's --

13             THE COURT:  Mr. Kirby?

14             MS. BROWN:  -- it's Baker and McKenzie, Richard

15    Kirby.

16             THE COURT:  So he would be entitled, since you

17    would presume -- or somebody might use that transcript

18    against his clients, wouldn't he be entitled to participate

19    in this --

20             MS. BROWN:  We have no objection to --

21             THE COURT:  -- or at least invited?

22             MS. BROWN:  -- Mr. Kirby attending the deposition,

23    seeing as he is participating in the profit withdrawal

24    proceeding.

25             THE COURT:  All right.  Subject to the same

Page 81

1    limitations.

2              MS. BROWN:  Yes, Your Honor.

3              THE COURT:  All right.  The Court -- let's keep

4    that one in mind.

5              MS. RESSLER HARRIS:  And then Your Honor, we also

6    want part of the limiting order, if there is one, to direct

7    that any violations of the limiting order would result in

8    sanctions, because --

9              THE COURT:  That's self-evident, but it could be

10   in the order.

11             MS. RESSLER HARRIS:  Okay.

12             THE COURT:  Now do you propose to take this

13   deposition by telephone?  It seems to me it's going to be a

14   short deposition.

15             MR. DEXTER:  No, we'd like to take it in North

16   Carolina at the penitentiary.

17             THE COURT:  Okay.

18             MS. BROWN:  Your Honor, I still do want to be

19   heard on why the deposition shouldn't go forward at all.

20             THE COURT:  Go ahead.  Go ahead.

21             MS. BROWN:  We don't feel that the deposition

22   should be permitted because Madoff's declaration revealed

23   that he doesn't have personal knowledge about the profit

24   withdrawal transactions.

25             THE COURT:  So then it will be even a short

Page 82

```
 1   deposition.

 2            MS. BROWN:  True.  But we don't think that he's

 3   shown that he has a -- personal knowledge about these

 4   issues.  So we don't think his deposition should be

 5   permitted.

 6            THE COURT:  But how do you know unless you ask

 7   him?

 8            MS. BROWN:  I think his declaration --

 9            THE COURT:  In other words --

10            MS. BROWN:  -- is reveal --

11            THE COURT:  -- if this weren't Madoff and he

12   wasn't in prison, if you wanted to know what somebody knew,

13   you'd establish a foundation to find out what he knew.

14            MS. BROWN:  Yes, Your Honor.

15            THE COURT:  And I realize that the declaration

16   submitted in the Blecker matter didn't mention profit

17   withdrawals at all.  All Mr. Madoff said was that if

18   somebody was going to request a withdrawal, they would write

19   a letter, I wouldn't send them money without it.

20            MS. BROWN:  And --

21            THE COURT:  Now I suppose that somebody could say,

22   don't reinvest my dividends, don't send them to me, which is

23   what the theory of the profit withdrawals were, that they

24   were just sending the dividends from the fictitious

25   transactions.
```

Page 83

1          MS. BROWN:  Yes, Your Honor.

2          THE COURT:  But that's really a question, I guess,

3    late at the end of the day.

4          MS. BROWN:  Okay.

5          THE COURT:  In other words, if he testifies, look,

6    I don't know anything about profit withdrawals, but I know

7    that in the absence of the record request, we wouldn't send

8    any money (indiscernible) in that business, you know, take

9    it for what it's worth.  But we don't know what he knows.

10          MS. BROWN:  Yeah, we just feel that his testimony

11    is specifically contradicted by the books and records that

12    we have.

13          THE COURT:  Doesn't that go to the weigh, though?

14          MS. BROWN:  It might go to the weight.

15          And then the second issue I wanted to raise is,

16    that within his declaration he does testify to general

17    broker dealer practices, which I would submit he's not an

18    appropriate witness to discuss general broker dealer

19    practices in the industry.

20          So for those reasons we don't think his deposition

21    should go forward.

22          THE COURT:  I guess that would go to the weight

23    also.  So very specifically, I assume he -- well maybe he

24    could or could not testify, of his own knowledge, that BLMIS

25    would not send money to anybody unless they first requested

1      it.

2              MS. BROWN:  To the extent he has that knowledge.

3      We think that there are other employees that were involved

4      in the day to day workings of sending checks to customers,

5      sending payments to customers, creating fictitious entries.

6      And we think they would be the most -- the employees that --

7              THE COURT:  Yeah, but --

8              MS. BROWN:  -- are the most knowledgeable.

9              THE COURT:  -- from what I saw from your motion to

10     extend the schedule, those people are also convicted felons

11     who are in prison.  So --

12             MS. BROWN:  They are.  But there -- the difference

13     between Mr. Madoff and those employees, in addition to just

14     the one that's obvious on its face, that Mr. Madoff is on

15     one end of the spectrum and these employees are on another,

16     is that these employees were actually working day to day

17     with these payments and these transactions.

18             THE COURT:  I don't necessarily disagree with you

19     that they're better -- they will be more knowledgeable

20     witnesses, but I can't say that Mr. Madoff doesn't know

21     anything about this.

22             MS. BROWN:  Okay.  Your Honor, well then we would

23     request that you enter the limiting order that we've

24     outlined here today.

25             THE COURT:  Yeah, I don't -- look, I'm going to

1    grant the motion.  I think the information is certainly

2    relevant to the case.  There are something like 91,000 of

3    these profit withdrawals in the records.  And I read both

4    experts' reports, Calura and Greenblatt.  It's a significant

5    issue.  The trustee has attempted to reconstruct what

6    occurred, and to a large extent, extrapolate the results of

7    the more recent records to earlier periods, which I guess is

8    the problem.  You wouldn't even be having this discussion if

9    we were just talking about this last ten years, I don't

10   know.  But for instance, in Mr. Blecker's case, all of his

11   deposits and supposedly withdrawals occurred more than ten

12   years ago when there were apparently no bank records.

13            MS. BROWN:  That's correct, Your Honor.

14            THE COURT:  So I'll allow it, consistent with the

15   limiting provisions which are in the Picower opposition and

16   I'll further direct that the transcript be held

17   confidentially for some period of time --

18            MS. BROWN:  Okay.

19            THE COURT:  -- since there's a lot of public

20   interest, I guess in this.  Some period of time to make --

21   to give the parties an opportunity to make redaction

22   requests.

23            MS. RESSLER HARRIS:  Yes.

24            THE COURT:  Let's say 30 days after it's received

25   or actually I think ECM -- ECF gives you 90 days, doesn't

Page 86

1    it?

2              MS. RESSLER HARRIS:  I --

3              MS. BROWN:  I believe so.

4              THE COURT:  How will that interfere with the

5    progress of the litigation on this issue, if it's a full 90

6    days?

7              MS. BROWN:  The profit withdrawal issue?

8              THE COURT:  No, let's split the difference, let's

9    make it 60 days.

10             MS. RESSLER HARRIS:  Can -- Your Honor, can we say

11   that or until the issues are resolved by the Court?  Because

12   if the 30-day period expires, but the issues about

13   confidentiality or redaction haven't been addressed --

14             THE COURT:  Oh, yes.  The later of --

15             MS. RESSLER HARRIS:  Yes.

16             THE COURT:  -- provided that a redaction request

17   is made within 30 days, then the matter will remain

18   confidential until those issues are resolved, certainly.

19             MS. RESSLER HARRIS:  And those requests should be

20   made to the Court under seal, I assume.  Otherwise you

21   defeat the purpose of the confidentiality.

22             THE COURT:  I see.  Yeah.  Any objection to that,

23   Mr. Dexter?  Well how -- the other side has to know also,

24   because they have to be able to respond.

25             MS. RESSLER HARRIS:  They would be privy to the

Page 87

1    motion, but they would be subject to the same

2    confidentiality and sealing requirements.

3            THE COURT:  All right.  What if you do this, why

4    don't you settle a proposed order, a notice with the various

5    restrictions, limitations we've discussed and that'll give

6    Ms. Chaitman and Mr. Dexter an opportunity to respond.  If

7    there are any disputes, then we can work them out.

8            MS. BROWN:  And so just to clarify, the redaction

9    request needs to be made within 30 days?

10           THE COURT:  No, I said 60.  I was laboring between

11   90 and 30, so I made it 60.  Requests have to be made within

12   60 days and then the transcript will continue to remain

13   confidential, pending the resolution of those redaction

14   requests.  The redaction requests will be filed under seal,

15   but they will be shared with counsel who will hold them in

16   confidence until -- you know, and then you deal with how

17   those requests, when, ands and if the requests are resolved.

18           MS. BROWN:  Okay.

19           THE COURT:  All right?

20           MS. BROWN:  Thank you, Your Honor.

21           THE COURT:  Okay.  Anything else?

22           MS. RESSLER HARRIS:  Thank you.

23           MR. DEXTER:  Just so we're clear.  A settlement of

24   a proposed order is going to be circulated to determine the

25   -- all the terms that we've just set?

Page 88

1          THE COURT:  You better settle it because they're

2    not in a hurry to have the deposition taken.

3          MR. DEXTER:  No, but I'm not clear on whether you

4    ruled that the limiting orders proposed have been entered,

5    or whether that's going to be something that we're going to

6    have an opportunity --

7          THE COURT:  No, no.

8          MR. DEXTER:  -- to respond to.

9          THE COURT:  There are going to be the limitations,

10   consistent with what the Picower Parties proposed, since I

11   think they were broader than what the trustee proposed.  And

12   they're the ones who really had the ax to grind on this one.

13   If you object to the phraseology, they put something in,

14   you'll certainly have an opportunity to object.  But my

15   understanding, from you reply, is that you didn't really

16   object to the limitations that were proposed, anyway.

17         MR. DEXTER:  All right. If we could, maybe may I

18   propose we have an opportunity to submit a reply to the

19   scope as proposed and it could just be --

20         THE COURT:  No, I just ruled --

21         MR. DEXTER:  -- decided on (indiscernible)?

22         THE COURT:  -- I just ruled on it.

23         MR. DEXTER:  Okay.

24         THE COURT:  You had the opportunity.  You -- did

25   you read your papers?

 1                    MR. DEXTER:  Yes.  And --

 2                    THE COURT:  And all your -- will you please number

 3     your pages when you submit your pleadings.  You didn't

 4     number the briefs in the -- on the motion to compel.

 5                    MS. BROWN:  Yes, Your Honor.

 6                    Your Honor, I just want to clarify, the Picower

 7     Parties and the trustee can settle the order or --

 8                    THE COURT:  If you want.

 9                    MS. BROWN:  Okay.

10                    THE COURT:  If the order's never signed then --

11                    MS. BROWN:  It was a little unclear to us.

12                    THE COURT:  -- it's not going to be --

13                    MS. BROWN:  All right.

14                    THE COURT:  -- anybody can settle the order, I

15     just thought that --

16                    MS. RESSLER HARRIS:  We can do that.

17                    MS. BROWN:  Your Honor, we're happy to settle the

18     order.

19                    THE COURT:  Okay.

20                    MS. RESSLER HARRIS:  Yes.  We'll work together.

21                    THE COURT:  All right.  Let me just -- remember

22     that Mr. Kirby can participate.

23                    MS. BROWN:  Yes, Your Honor.

24                    THE COURT:  You know what bothers me about the

25     response, looking at it again, the reply, after you accuse

Page 90

1    the Picower Parties of paranoia, notwithstanding Mr. -- the

2    declaration submitted in the Blecker case, which included

3    information about Picower, the last paragraph says, in any

4    event, you respectfully asked the Court to set the

5    limitations on the deposition of Madoff, bearing in mind the

6    relevance of his testimony to many of the adversary

7    proceedings and the practical difficulties of deposing him

8    while he's in prison.  How can you use this deposition in

9    adversary proceedings if the other parties to the adversary

10   proceedings are not -- may not be present?

11            MR. DEXTER:  Well in some cases the parties are

12   the same.

13            THE COURT:  Well to the extent they're the same,

14   then they're present.

15            MR. DEXTER:  I think the point is that we should

16   just take a couple days to clarify what exactly the scope

17   is.  And the point here is that if we're going down there,

18   if we're going to North Carolina, it should be clear what

19   exactly the scope is.

20            THE COURT:  Let me ask -- let me raise a different

21   issue, or a related issue.  Let's suppose that in course of

22   this profit withdrawal limitation I conclude you're wrong,

23   where you haven't proved what you say you're going to prove.

24   Couldn't that be used in subsequent transfer -- not -- in

25   fraudulent transfer litigation against you to require you to

1    recompute the amount of principle that was withdrawn?

2              MS. BROWN:  I mean it would be --

3              THE COURT:  In other words it would -- the profit

4    withdrawal issue has ramifications beyond the claim

5    allowance procedures, because I assume that the trustee

6    followed the same procedure with respect to adversary

7    proceedings where he's seeking to recover either fictitious

8    profits or all the principle.

9              MS. BROWN:  Yes, Your Honor.  I mean we've always

10   described it as two sides of the same coin.  The way that

11   you reach each calculation is based on the same --

12             THE COURT:  I'm not so sure --

13             MS. BROWN:  -- transaction.

14             THE COURT:  -- it is.  I'll tell you why.  And I

15   raised this before.  There may be a difference between the

16   trustee's computing withdrawals for the purpose of SIPA,

17   where he has to be personally satisfied from the books and

18   records and the way of computing withdrawals and fraudulent

19   transaction litigation which SIPA has nothing to do with,

20   it's just a fraudulent transfer case.

21             MS. BROWN:  Your Honor, I think that goes to the

22   -- whose burden it is.  I don't think it goes to the actual

23   calculation.  And under SIPA it's the customer's burden to

24   substantiate their claims, similar to any preferred status

25   in any bankruptcy.

1              THE COURT:  I guess I'm raising a different issue.

2              MS. BROWN:  Okay.

3              THE COURT:  Suppose the trustee says, you know

4     what, I just don't believe Madoff, I don't believe

5     Bongiorno, depending on what she says about this, or Crupi,

6     depending on what she says about this, I believe my expert.

7     And based on my expert's analysis and the extrapolation of

8     that analysis, I believe that PW represents an actual

9     withdrawal from the account.

10             Is that enough, even if I think that maybe Madoff,

11    let's use an example, Bongiorno and Crupi are right, in

12    other words, as long as the trustee reasonably relies on the

13    information he has, does it matter if he's right?  Because

14    he would have to be in a fraudulent transfer litigation

15    where his reasonable reliance is (indiscernible) really an

16    issue.

17             MS. BROWN:  Well I think the Second Circuit case

18    law on the trustee's duties and obligations gives the

19    trustee some -- wide latitude in determining that equity,

20    and it may not be the same burden in a fraudulent transfer

21    action.  But I do think that goes to burdens and not the

22    underlying calculation.

23             THE COURT:  I'm not so sure, but we'll see.

24             All right.  You can settle an order.

25             MS. BROWN:  Thank you, Your Honor.

Page 93

1            MS. RESSLER HARRIS:  Thank you.

2            THE COURT:  Thank you.

3            MR. DEXTER:  Thank you, Your Honor.

4            (Whereupon these proceedings were concluded at

5    12:49 PM)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                          I N D E X

2

3                            RULINGS

4                                              Page        Line

5

6    Motions to Dismiss are Denied.              71         3-4

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 95

1                    C E R T I F I C A T I O N

2

3       I, Sonya Ledanski Hyde, certified that the foregoing

4       transcript is a true and accurate record of the proceedings.

5       Sonya                  Digitally signed by Sonya Ledanski
                               Hyde
6       Ledanski Hyde          DN: cn=Sonya Ledanski Hyde,
                               o=Veritext, ou,
7                              email=digital@veritext.com, c=US
                               Date: 2016.03.24 11:01:08 -04'00'

8       Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20      Veritext Legal Solutions

21      330 Old Country Road

22      Suite 300

23      Mineola, NY 11501

24

25      Date:  March 23, 2016

**&**

**&**   4:12 5:1,8

**0**

**0086**   36:25
**0118**   35:19,21 36:12
**0324**   36:24
**08-01789**   1:3 3:1,4 3:7
**0866**   37:1

**1**

**1**   61:24
**10**   36:8
**10-04324**   2:2 3:13
**10-04898**   1:11 3:10
**100**   38:21
**10004**   2:14
**10022**   4:7 5:11
**10036**   5:4
**10111**   4:17
**1026013**   61:24
**10:40**   2:17
**11**   6:20 7:18 12:7,7 49:19 50:7 51:17 79:5
**1121**   57:19
**1126**   57:20
**1127**   59:16
**11501**   95:23
**11th**   12:11 51:11 52:25 54:10,17,25 56:21
**1211**   5:3
**125,000**   11:8,24 13:15 63:1
**12:49**   93:5
**13**   51:18
**13,266**   36:13
**130,000**   65:5
**14**   51:19,23 72:15 72:19,24 73:3
**140,000**   12:10 63:5
**15**   11:22 12:3,15 37:2 51:24
**150,000**   11:8,21 13:14 63:1 65:5

**16**   11:19
**169**   59:4
**16th**   24:15
**18**   52:8
**184**   62:1
**186**   62:1
**18th**   8:15 21:24 51:25 54:6,24 56:24
**19**   59:8
**1975**   57:20
**1995**   59:17
**1996**   59:5
**1999**   37:6
**19th**   8:8 11:9,23 55:6
**1s0324**   35:18

**2**

**2**   11:20
**2000**   13:18
**2001**   9:25
**2003**   39:12 40:9 58:13
**2004**   19:15,19,21 20:4 23:5,10 27:12 27:15,17,21 28:3,10 42:21,22 45:1
**2006**   7:5 12:7,11 34:15
**2006-2008**   33:17
**2007**   11:8,21 39:13
**2008**   11:9,24 12:7 13:5,5,18 34:15 39:13 50:7
**2009**   7:6 39:13 50:12 61:23,24
**2011**   59:8,8 70:2
**2013**   57:24,24
**2014**   53:13 62:1
**2016**   2:16 50:14 51:11,17 52:7,8 54:24 61:8 95:25
**21**   11:25 12:3,16
**22**   11:22 61:7
**22nd**   70:12
**23**   2:16 95:25
**25**   52:5

**25th**   57:1 70:9,10
**26**   23:13,14 38:4 41:23 43:14,22 45:7 52:6
**26th**   52:21 57:4
**27**   12:5 50:14
**27th**   41:4 70:11,13
**28th**   24:15
**298**   62:1
**2nd**   11:8

**3**

**3**   52:7 53:13 57:11 61:8
**3-4**   94:6
**30**   9:14 49:24 50:18 51:22 53:17 54:20 66:16 69:6 70:6 85:24 86:12,17 87:9 87:11
**300**   95:22
**31**   50:11
**324**   63:22 64:12
**330**   95:21
**3652764**   59:8
**37**   8:4 52:22 53:7 56:7
**3rd**   52:15 53:13 54:4

**4**

**4**   53:13
**41**   8:5 52:22 53:9,11 56:8
**41.5**   53:13
**410,000**   12:5
**42**   16:3
**43,096**   63:24
**44**   59:5
**45**   4:16 57:11
**465**   4:6
**48**   59:5
**4th**   57:24

**5**

**5**   57:24 59:8
**513**   57:19
**550**   23:12 43:17

**57892**   57:24

**6**

**60**   86:9 87:10,11,12
**63,259**   63:25
**6th**   70:1

**7**

**71**   94:6
**76**   63:23
**78**   64:7,9
**79**   64:8,9

**8**

**8**   46:24,25 61:24
**81**   63:25
**82**   64:8

**9**

**90**   85:25 86:5 87:11
**91,000**   85:2
**919**   5:10
**99**   16:16
**9th**   32:13

**a**

**aaron**   4:4 74:20
**abeyance**   66:15
**abide**   46:7
**ability**   43:22
**able**   31:5,23 44:10 44:16 86:24
**absence**   51:16 56:23 57:16 83:7
**absent**   52:4 54:12 55:2
**absolute**   59:9
**absolutely**   70:20 73:6
**academic**   44:25
**accept**   13:7 25:1
**acceptable**   66:1
**access**   45:24 46:7
**accomplish**   62:20 62:21
**accomplished**   32:6
**account**   11:20,23 12:6,8,10 25:16 26:1,4,7,8,14 27:4,8 35:17,18,21 36:10

36:12,18,25,25 37:1
37:2 54:12 61:2,6
63:22 64:9,11,12
65:10 66:8 92:7
**accountant** 10:7,12
10:15 61:13 62:18
**accountant's** 10:3,9
61:14 62:16
**accounts** 35:17,17
35:20 36:11 37:3
58:10 59:23 63:16
63:17 64:3 65:4
**accuracy** 59:25
60:6 65:7
**accurate** 60:2 95:4
**accuse** 89:25
**accused** 51:2,7
**achieved** 22:17
**acknowledged**
24:11,12 74:2
**acknowledging**
74:25
**action** 53:10 79:23
92:21
**actions** 7:18 50:25
**actual** 91:22 92:8
**ad** 49:7
**added** 45:21
**addition** 25:10 54:3
55:9 63:9 79:16
84:13
**additional** 32:6
51:1 78:23
**address** 55:24 56:10
77:19
**addressed** 17:20
86:13
**adherence** 56:18
**adjectives** 40:20
**adjourn** 66:16
67:22,24 70:14
**adjourned** 69:10
70:6
**adjourning** 69:5
**adjustment** 58:7
**administrative**
59:15

**admission** 7:12 10:9
14:3 22:16 23:1,17
30:11 31:16,25 33:3
33:6 34:13,22 36:12
38:22 51:8,23 52:10
52:11,17 61:15
62:15,17 64:7 67:10
**admissions** 8:12 9:4
13:4,6 21:12 22:7
22:10,12,13,24
23:10 29:15,24 30:2
31:4 35:6 37:16,17
39:3 49:25 50:20
52:14 53:5,18 54:21
55:19,22,23 58:9
61:11 67:9,16
**admit** 7:23,24 8:2
8:11 9:17 10:14
11:19,22 12:5 13:5
13:9,11,11,12,20,23
20:16 24:19 25:13
34:19 37:19,21
38:15 39:2 53:3
60:7 61:11 62:23
**admits** 20:18 61:3
**admitted** 7:6 9:15
13:18 36:3,7,14,16
36:19 50:21 61:9
63:18 64:3,5 65:1,5
65:13
**admonition** 58:17
**adopting** 43:14
**adv** 1:3,11 2:2
**advance** 7:21 8:10
9:1,5 24:18 34:18
49:4
**advancing** 22:22
**adverbs** 40:20
**adversary** 19:18,23
27:23 42:18 45:3
49:19,21 50:4,21
51:9 52:18 53:2
54:9 90:6,9,9 91:6
**advise** 51:3 70:15
**advocated** 56:18
**affect** 63:6 68:17

**affirmative** 14:16
14:22 15:16,17 16:1
16:3,9,12 20:21
39:7,9,10,15,21
40:3,8 50:24 58:5
60:10 63:10 65:1
**agencies** 79:24
**agent** 15:4
**ago** 40:6 45:25
85:12
**agree** 17:24 22:15
31:13 32:5 33:15,22
34:9,11,20,23 41:18
42:20 43:5 55:7
75:3
**agreeable** 78:1,2
**agreed** 17:4 29:7
34:21 56:4 60:19
**agreement** 24:10,11
54:5
**ahead** 6:23 24:1
77:6 81:20,20
**al** 2:8 4:5
**allegation** 41:15
**alleged** 49:22 50:4
**allegedly** 54:2
**allow** 20:6 33:6
37:7 38:6,8 42:8
72:13 78:14 85:14
**allowance** 91:5
**allowed** 23:14 35:2
**allowing** 43:13
**alluded** 23:7
**alpern** 52:2
**alternatively** 56:14
**amend** 38:19 40:11
**amended** 52:14
54:4
**americas** 5:3
**amount** 11:21,24
26:7 63:7 91:1
**amounts** 50:6
**analysis** 92:7,8
**andrew** 43:25
**ands** 87:17
**announced** 22:14
27:16

**affirmative** 14:16

**answer** 7:22,24 8:1
9:2,23 11:22,22,25
12:7 14:17 20:25
22:3 29:23,25 31:4
35:24 40:9,11 41:21
63:23
**answers** 9:12,14,16
9:17 11:19 12:2
23:23,23 33:16 34:2
34:10,14,18,25 35:8
38:19 41:21
**anybody** 35:11
83:25 89:14
**anyway** 88:16
**apparently** 29:12
39:17 50:17 85:12
**appeal** 72:10,11,12
73:10
**appearance** 45:9
**appeared** 54:18
**applicable** 24:23
46:20
**application** 3:7
**applies** 39:11 60:22
**apply** 39:22 42:11
47:1 56:10
**appreciate** 71:22
**apprise** 72:17
**approach** 53:22
**appropriate** 16:5,7
27:17 31:14 53:23
55:13 77:11 83:18
**appropriately** 17:1
**april** 11:8,20 61:24
70:8
**areas** 10:19
**aren't** 15:11 27:3
**argue** 57:7 58:23
**argued** 52:23
**arguing** 13:19 31:9
37:20
**argument** 9:22 18:4
65:21
**arises** 50:12
**arties** 79:1
**aside** 32:10 42:17
67:5

**asked** 16:14 80:7
90:4
**asking** 33:11 65:11
75:2,2,5 76:14,19
**aspect** 49:14
**assert** 14:22 16:3
39:19 57:9
**asserted** 14:9 16:2
50:24 58:6,19 64:15
**asserting** 58:13
**assertion** 60:12
**assume** 34:18 35:3
83:23 86:20 91:5
**assuming** 34:24
**attacking** 40:23
**attempt** 37:13
73:10
**attempted** 85:5
**attending** 80:22
**attention** 45:20
46:13
**attorney** 4:4,13 5:2
5:9 47:18 50:15
**attorneys** 17:3,6
45:17 51:6
**attributable** 58:15
**attributed** 51:1
**august** 59:8
**authoritative** 74:2
**authority** 18:9
53:19
**authorize** 53:9
**authorized** 56:22
**authorizes** 53:7
**avenue** 4:6 5:3,10
**avoid** 43:3
**avoidance** 42:17
**await** 56:4
**aware** 8:18 26:16
**ax** 88:12

**b**

**b** 2:23 8:4,5 43:25
52:22 53:9,11 56:7
**back** 22:13 28:21
39:8 44:17 63:23
65:10,23 66:7 67:16
68:13 70:8 71:17

**badway** 46:2 73:10
**baker** 4:12 80:14
**balance** 59:12
**bank** 5:2 6:19 10:21
25:7,11,15,16 26:25
27:3,3 32:11 35:10
37:8,14 47:19 48:6
49:24 50:13,23 51:3
51:21 53:2 54:8
56:2,6 57:6 58:1,2
59:7,20,23 60:4,9
60:14,18,19,25 61:1
61:1,22 65:3,8,15
65:22 66:5,6,7,17
66:18,21,23,23,25
70:24 71:9 73:11
85:12
**bankruptcy** 1:1
2:12,25 59:8 91:25
**banks** 23:11 45:9
50:9 51:12 52:1
54:11,25 55:1,7,8
69:9,25 70:16
**bar** 20:3 23:13
46:12,14
**barbanel** 37:4,5,6,7
37:9 38:11,12,13,23
52:2 55:14 64:19,19
69:21
**barbara** 3:14 6:11
**barcelona** 77:23
**barry** 5:6 71:8
**based** 7:19 32:14
49:22 62:11 91:11
92:7
**baseless** 40:20 42:2
**basically** 25:13
**basis** 15:3 17:18
23:18 32:10 41:24
42:6,9 57:6 67:14
69:14
**bear** 59:2 67:4
**bearing** 90:5
**beginning** 50:10
66:8
**behalf** 71:8 76:10

**believe** 24:25 27:14
27:24 60:1 70:13
73:24 86:3 92:4,4,6
92:8
**bell** 5:18
**bench** 22:14
**bencher** 33:13
**benefit** 13:24 26:21
**bernard** 1:8,13 2:4
3:5 4:14,20 48:1
78:5
**bernstein** 2:24
**best** 38:5
**better** 42:23,24
84:19 88:1
**beyond** 91:4
**bin** 21:14
**blecker** 4:4 74:20
75:17,19 82:16 90:2
**blecker's** 74:22
85:10
**blmis** 58:11,24
59:21 60:2,6 63:11
65:8,24 83:24
**board** 67:20,24
**boat** 59:4
**bongiorno** 92:5,11
**book** 62:1
**books** 23:2 62:1
83:11 91:17
**bothered** 34:12
**bothers** 89:24
**bottom** 44:8
**bowling** 2:13
**breed** 61:21
**brief** 6:25 28:12
48:16,17,21 77:25
**briefed** 28:7,13
**briefing** 48:22
**briefs** 73:19 89:4
**broader** 88:11
**broker** 83:17,18
**brought** 21:9 79:23
**brown** 4:21 76:9,10
76:23 77:5,7 80:8
80:12,14,20,22 81:2
81:18,21 82:2,8,10

82:14,20 83:1,4,10
83:14 84:2,8,12,22
85:13,18 86:3,7
87:8,18,20 89:5,9
89:11,13,17,23 91:2
91:9,13,21 92:2,17
92:25
**brunswick** 59:4
**burden** 13:13 15:15
57:23 59:3 60:17
91:22,23 92:20
**burdens** 92:21
**burdensome** 15:11
16:11,13
**business** 44:11 83:8

**c**

**c** 4:1 6:1 95:1,1
**calculation** 91:11
91:23 92:22
**calendar** 73:15
**call** 17:20 68:10,13
**called** 41:5
**calura** 85:4
**carolina** 81:16
90:18
**case** 1:3,11 2:2 6:22
7:11 9:3 10:8,10
11:1,4 15:2 16:17
19:7 20:7,10 22:23
25:5 29:10,24 33:3
34:19 38:11 39:8,9
39:21 42:2,13,19,25
43:6 44:5 46:20,21
46:23,23,25 47:1,13
47:15,23,25,25 48:2
48:4,6,8 50:17 54:7
54:22 59:17 60:2,3
67:11 68:21 73:22
78:11 85:2,10 90:2
91:20 92:17
**cases** 6:21 7:25 11:2
16:2 20:23 21:14,15
21:23,25 22:1,10,15
24:2,4 26:13 31:24
33:18 38:21 39:5
42:2 49:14 52:3,12
52:19,23 54:1,1

55:23 56:1,25 57:25
59:9 62:25 69:6,21
75:6 80:7 90:11
**cause** 6:6 22:22
30:14 43:11,12
44:13 56:14,15
**cavalierly** 41:14
**century** 45:25
**certain** 11:17 13:7
23:17 35:17 49:24
50:25 56:10
**certainly** 19:12
20:24 25:1,17 26:24
36:9,24 43:23 48:12
48:16 74:8 85:1
86:18 88:14
**certified** 95:3
**chaitman** 3:13 4:3
4:10 6:15 9:18,18
9:20 17:15 18:22
20:5 21:22 22:10
23:7 24:6,8 25:21
25:23 26:2,10,16
27:9,19,23 28:6,11
29:2 30:6 35:23,25
36:16,22 39:24
40:22 41:14 42:12
42:12 49:20,20 51:1
51:3,5,7 52:6,21
53:14 55:19 69:13
76:16 77:9,16,19,22
79:21 87:6
**chaitman's** 22:24
**challenge** 57:21
**challenged** 59:25
**challenging** 65:7
**chambers** 24:10,11
50:14 51:7
**chance** 33:6
**change** 33:9,12
**changed** 25:3 33:25
**changing** 24:24
**characterization**
11:17
**characterized** 13:17
**charged** 41:13

**chart** 21:19,21
**check** 26:7 64:1,14
**checks** 84:4
**choice** 61:3
**chrysler** 57:19
**circle** 28:21
**circuit** 18:9 26:22
57:20 59:16 92:17
**circulated** 87:24
**circumvent** 27:15
**cited** 53:19 59:17
**civil** 8:5 27:13
52:22 57:11
**claim** 57:9,10,16
65:21 66:9,12 91:4
**claims** 60:15 91:24
**clarify** 9:9 25:11
87:8 89:6 90:16
**clarity** 44:16
**clear** 18:3 30:10
39:10 40:7 70:24
87:23 88:3 90:18
**clearly** 18:11 49:4
**clerk** 70:9
**client** 25:15
**clients** 22:24 23:1
80:18
**close** 21:7
**closed** 58:22 59:14
**cohen** 22:18
**cohmad** 46:1,20
72:9 73:7,8
**coin** 91:10
**colleague** 22:3
**colleagues** 21:8
41:9
**collecting** 57:25
59:9
**colloquy** 9:13
**colonial** 43:2
**come** 24:6 28:6
40:18 41:20 45:2
70:8 71:17
**comes** 17:14 41:14
**coming** 25:1 67:20
77:24

**commence** 45:3
**commenced** 50:4
**commercial** 33:14
**commit** 48:1
**commitment** 51:21
**committed** 53:12
**communications**
8:23,24
**company** 61:23
**compel** 3:10 6:19
21:24 29:21 49:24
51:18 56:5 62:24
64:18,23 66:15
70:24 89:4
**compelling** 53:9
**compensation**
44:20
**complaining** 14:18
**complaint** 27:20
42:10 49:9 57:9
**complaints** 7:17
17:12
**complete** 66:24
**compliance** 8:25
21:25 22:5 30:17
31:3,6 33:7 40:3
49:24 51:18 52:5,20
53:1,25 54:7,14,24
55:15 56:6,22,25
62:22,24 63:21
64:18,24 66:15 69:5
69:24 71:10 73:11
79:19
**complicated** 8:19
**comply** 3:11 6:19
25:3 34:4 51:4 53:8
53:10 54:11 55:1
**computation** 63:7
**computing** 65:17
91:16,18
**conceded** 25:13
**conceding** 45:4
**concern** 74:16
**concerns** 11:18
50:16 60:17 62:3,12
74:15

**concession** 50:25
**conclude** 34:18
90:22
**concluded** 62:2
93:4
**conclusion** 60:22
78:19
**concord** 59:4
**condition** 66:5
**conditions** 77:17,25
78:2,20,21 79:9
**conduct** 7:20 54:2
73:16,20
**conducted** 56:20
74:14
**conduit** 14:12 15:4
64:16
**confer** 51:13 55:6
56:16,20
**conference** 24:14
50:14 51:7,10 55:1
55:6,9 56:16 70:15
**conferences** 56:21
**confidence** 17:5
47:11 62:9 69:25
87:16
**confidential** 45:16
45:17 60:20 79:18
86:18 87:13
**confidentiality** 17:1
17:9 49:3 71:12
86:13,21 87:2
**confidentially**
85:17
**confirmed** 51:20
**confusing** 30:9
48:10
**confusion** 55:12
**congress** 43:15,21
43:22
**connection** 21:22
55:25
**consent** 76:20 78:5
**consisted** 12:8
**consistent** 10:2,18
61:12 62:16 71:12
78:3,6 85:14 88:10

**contacting** 51:3,12
55:7,8
**contained** 35:6 58:2
58:3
**contempt** 41:13
51:6
**contend** 58:12
**contends** 61:19
**contest** 38:24
**context** 8:23 11:13
18:21 26:18 29:6
42:1 44:14 61:22
71:9 77:14
**continuation** 6:5
**continue** 20:12
28:15 87:12
**contract** 14:10 15:7
58:21 63:12
**contradicted** 83:11
**contravenes** 30:23
31:7 61:15
**control** 26:8 58:24
**convenience** 24:13
**conversation** 39:23
**convicted** 84:10
**copy** 11:12 72:23
**corporation** 1:5
57:19 59:4
**correct** 32:3 43:8
45:10 64:22 85:13
**correctly** 46:4
**corresponding**
36:10
**corrupting** 42:4
**cottle** 76:16
**counsel** 3:14 22:19
23:4,6,24 29:24
55:20 67:20,21,24
68:4,5,9,22 69:1
76:13 79:13,17 80:9
87:15
**count** 64:17
**counterbalance**
60:11
**country** 95:21
**couple** 90:16

**course** 16:8 30:22
90:21
**court** 1:1 2:12 6:2,7
6:9,18,20 7:2,8,16
8:3,4,6,7,14,20 9:3
9:11,20 10:2,6,13
10:23 11:2,7,16
12:4,17,20 13:1,10
13:19,25 14:6,21
15:1,9,13,19 16:2
16:13,19,24 17:4,13
17:15,24 18:1,7,13
18:16,19,23 19:1,4
19:7,11,13,20,24
20:9,14,25 21:3,11
21:14,19,21 22:5
23:15 24:5,16,21,22
25:1,21,24 26:6,13
27:3,17,18,21 28:1
28:9,14,17,23,25
29:4,11,17 30:4,7
30:13,19,21 31:1,9
31:13,21 32:4,18,21
32:23 33:1,4,9,11
33:12,22 34:5,9,17
35:2,11,14,16,24
36:10,19,24 37:11
37:15,20 38:1,4,10
38:15,19 39:4,16,23
40:2,5,10,13,16
41:11,14,20 42:16
43:5,9 44:4,7,12,18
44:21,25 45:6,8,12
46:6,17 47:2,9,14
47:18 48:3,9,16,17
48:21 49:6,10,13,16
49:18,23 51:2,10,11
51:14,15,20 52:24
53:7,10,11,14,21
54:2,10 55:3,6,10
55:17,24 56:5,10,17
56:20 57:13 59:11
62:2,12 63:20 64:6
64:9,12,23 65:9,13
65:15 66:1,4,14,21
67:1,4,7,16,22,25
68:2,5,15,20,24

69:4,9,13,20 70:4
70:10,12,14,19,21
71:1,3,7,14,16,19
71:24 72:2,5,7,11
72:12,15,17,19,23
72:25 73:2,4,7,13
73:23 74:1,4,11,15
75:2,16,19,23 76:2
76:5,7,22,24 77:6
77:17,20,22 78:9,13
78:16,24 79:7,9,14
80:1,6,9,13,16,21
80:25 81:3,3,9,12
81:17,20,25 82:6,9
82:11,15,21 83:2,5
83:13,22 84:7,9,18
84:25 85:14,19,24
86:4,8,11,14,16,20
86:22 87:3,10,19,21
88:1,7,9,20,22,24
89:2,8,10,12,14,19
89:21,24 90:4,13,20
91:3,12,14 92:1,3
92:23 93:2
**court's** 24:24 32:12
52:3,25 53:12 54:8
54:17,25 58:17
**courthouse** 45:15
**courts** 59:5
**cover** 35:12
**covered** 35:12
**covers** 6:20,21 39:4
**created** 41:23
**creating** 84:5
**credit** 12:9 63:4
**crummy** 43:25,25
**crupi** 92:5,11
**current** 50:12
**customer's** 91:23
**customers** 73:19
75:10 78:5 84:4,5
**cyber** 45:20

**d**

**d** 6:1 52:22 53:7
56:8 57:11 94:1
**date** 24:15,16 28:5
29:9 50:7,11 70:7,7

70:15 73:3 95:25
**dated** 52:6 56:24
61:7
**david** 4:19
**davis** 52:6
**day** 8:15,16,22 23:5
41:9 51:6 72:15,19
83:3 84:4,4,16,16
86:12
**days** 9:14 34:4
49:25 50:18 51:22
53:17 54:20 66:16
69:6 70:6 71:21
72:24 73:3 78:7
85:24,25 86:6,9,17
87:9,12 90:16
**deal** 7:9 20:16,20
28:5 67:8 87:16
**dealer** 83:17,18
**dealing** 38:21 44:1
75:13
**dealt** 45:18 47:4,6
62:14
**debtor** 73:21
**deceased** 21:1 52:18
**deceive** 34:2
**december** 12:6,7,11
50:7,11 52:14
**decide** 47:21
**decided** 24:22 47:22
88:21
**decides** 38:1
**declaration** 52:6
61:6 74:20 75:12,14
75:22,25 81:22 82:8
82:15 83:16 90:2
**defeat** 86:21
**defects** 53:7
**defendant** 1:9,18
2:9 9:24 28:16
38:22 46:22 48:8
50:21,24 54:3 58:6
58:18 60:5,24 61:9
62:11 65:7 66:6
68:10
**defendant's** 12:20
20:1 52:9 53:6

54:23 62:4 65:25

**defendants** 3:1 4:5
6:13,15,25 7:2,6,22
7:23,25 8:11 9:1
11:4 14:9 16:16
17:1 18:3 22:16
24:19 33:6 35:9
47:23 49:1,19 50:1
50:3,5,8 53:2,19
54:15 55:13 56:2,14
57:2,5,25 58:4,10
58:12,16,23 59:1,17
59:18,22,22,25 60:1
60:4,6,12,15 62:6,9
63:9 65:22

**defense** 14:9,17,22
15:13,16,17 16:4,5
24:3 39:9,10,11,15
39:19,22,24 40:3,8
50:24 58:13,17,19
58:23 63:11 64:15
65:1

**defenses** 16:1,3,9,12
20:21 39:8 58:5
60:10

**defer** 20:5

**delay** 67:11

**delivered** 51:22

**demand** 52:5 54:14

**demanding** 53:25
54:24

**denial** 11:16 60:15
61:16

**denied** 11:7,22,25
12:7 32:13 35:18,22
36:6,20,24 37:1,3
50:2 56:8 63:1,2,16
63:24,25 64:1,13,13
64:20 71:4 94:6

**denies** 37:15

**deny** 10:14 11:10
13:14 24:19 39:17
48:3 63:2

**denying** 33:17,18
69:22

**depending** 92:5,6

**depose** 75:1 78:5

**deposed** 74:23

**deposing** 90:7

**deposit** 26:13

**deposited** 10:16
58:11 59:22 61:5

**deposition** 3:4 6:4
6:12 70:22 73:14,16
73:20 74:14,16 75:4
75:7 76:12 79:19
80:22 81:13,14,19
81:21 82:1,4 83:20
88:2 90:5,8

**deposits** 11:5 12:10
13:18 20:19 36:14
37:5 50:9 53:4 63:5
63:5 65:2 85:11

**deprive** 61:21

**described** 91:10

**designed** 34:1 45:2

**despite** 58:17

**destroy** 43:19

**determination**
16:21 38:5 56:4
73:24

**determinations**
74:1

**determine** 8:12
37:8 87:24

**determined** 28:8

**determining** 92:19

**devices** 38:8

**dexter** 4:9 6:14,15
6:24 7:4,13,19 8:7
8:17,21 9:7,23,24
10:4,11,17,24 11:3
11:11 12:2,15,18,25
13:3,16,23 14:5,15
14:23 15:6,11,15,22
16:7,15,22,25 17:10
17:14,22 18:3,10,15
18:18,22 19:2,5,12
19:16,21 20:5,12,24
21:17 28:15,21,24
30:4,8,17,20,22
31:12,17 32:3,12,19
32:23 33:4,15,24

34:8,14,24 35:5,13
35:15 37:5,12,18,21
37:23 38:3,13,17,20
39:7,21 40:1,7,12
40:15 45:14 46:18
46:19 47:5,12,23
48:4,15,19,25 49:7
64:4,5,7,11,22 66:1
66:2,11 69:17,19
72:6,8,13,16,22
73:18,25 74:8,12,24
75:8,18,21,24 76:3
76:6 77:1,18,21
78:2,11,14 79:1,4
81:15 86:23 87:6,23
88:3,8,17,21,23
89:1 90:11,15 93:3

**dictated** 57:2

**difference** 84:12
86:8 91:15

**different** 13:25
17:13 18:13 31:21
36:1 48:11 90:20
92:1

**difficulties** 90:7

**direct** 81:6 85:16

**directed** 51:13
57:18

**directing** 69:23

**direction** 52:4 54:2

**directly** 51:12 62:12

**disagree** 23:12 30:6
31:12 32:25 84:18

**disappearing** 23:6,8
43:15

**disclosure** 50:9
57:14 60:20

**disclosures** 57:6

**discovery** 15:21,22
16:5,7,8 18:20
19:14 20:1,2,4
21:22 22:1 27:1,12
27:20,25 28:3,4
32:15,18,20 38:7
42:1,7,9,10,14,16
42:18 43:4,12 46:12
49:8 53:9 55:11

56:17

**discretion** 53:12

**discuss** 47:20 83:18

**discussed** 67:14
87:5

**discussion** 24:7
44:25 85:8

**dismiss** 7:17,18,19
19:5 49:14,21 50:2
52:23 53:6,10 56:1
56:7 71:3 72:21
94:6

**dismissal** 3:2 53:11
53:20 54:9

**dismissed** 42:14
57:10 72:20

**disposition** 55:16

**dispute** 7:1,3 9:25
10:20,22 11:1,4
13:17 25:9 46:20
50:12 55:10,11 60:5
74:22

**disputed** 10:10 13:8
13:12 60:7

**disputes** 7:11 10:20
55:9 87:7

**dissatisfied** 9:15

**district** 1:2 72:12
73:4

**dividends** 82:22,24

**docket** 68:13

**documentary** 25:14

**documents** 11:12
16:9 25:7,10,18
62:5 69:24 71:11

**dog** 62:1

**doing** 26:17 27:25
29:14 36:10 42:4
43:21

**dominion** 26:8
58:24

**don** 18:22

**doubts** 49:1

**drastic** 53:11,22

**drawn** 55:21

**dropped** 15:18

[duplicative - fixed]                                                                                    Page 7

**duplicative** 59:24
**duties** 92:18

**e**

**e** 2:23,23 4:1,1 6:1,1
  94:1 95:1
**earlier** 8:9 69:1
  85:7
**ecf** 85:25
**echo** 42:11
**ecm** 85:25
**edition** 53:13
**education** 57:23
**effect** 69:15
**effective** 22:25
**effectively** 61:16
**efforts** 50:12
**eight** 71:24
**either** 10:11,14
  50:19 53:3 57:8
  60:2 91:7
**eliciting** 75:5
**ellman** 5:1
**employees** 84:3,6
  84:13,15,16
**encompassed** 16:4
  36:9
**enforce** 21:15,24
  31:15,23 32:1 41:7
  50:13,18 51:16,21
  52:4 53:16 54:19
  63:20
**enforcement** 3:8
  6:10 54:5
**enforcing** 33:7
  50:22
**enjoyed** 26:20
**enter** 75:9 78:9,14
  78:17,17,18 84:23
**entered** 24:21 31:2
  32:24 88:4
**entertain** 9:22 73:4
**entertaining** 22:21
**entire** 12:8 26:7
  30:23 37:14
**entirely** 31:6 37:24
  48:5

**entitled** 27:2,11,24
  31:18 47:24 58:6
  60:8 75:4 76:17
  80:16,18
**entity** 21:4
**entries** 74:6,7,13
  84:5
**entry** 73:3
**equitable** 58:7
**equity** 92:19
**esq** 4:13
**essence** 67:12
**essentially** 7:20
  47:9 62:18
**establish** 15:17 16:1
  16:11 82:13
**established** 18:5
  47:1 49:4
**establishing** 25:19
**et** 2:8 4:4
**event** 30:18 45:11
  90:4
**everybody** 30:16
  65:1
**everyone's** 15:25
**evidence** 14:19,21
  14:23 15:16,23
  25:14 50:17 60:8
**evidenced** 11:5
**evident** 81:9
**eviscerate** 56:19
**ex** 27:24
**exactly** 27:21 90:16
  90:19
**examination** 19:15
**examinations** 73:20
**example** 43:24
  92:11
**exams** 23:10
**exception** 7:10 14:8
  52:8,12
**exceptions** 25:12
**excess** 12:5
**exhibit** 52:7
**exists** 26:18 40:8
**expansive** 39:2

**expecting** 68:11
**expedite** 24:4
**expensive** 30:16
**expert** 92:6
**expert's** 92:7
**experts** 85:4
**expired** 52:10 54:6
  54:23
**expires** 86:12
**explain** 12:2
**explained** 55:20
**exposed** 17:2,3
**extend** 84:10
**extended** 29:9
**extension** 28:20,25
  29:17,19
**extensions** 29:16
**extent** 10:2,17
  14:10 25:18 33:12
  50:23 55:25 58:7
  59:19 61:11 62:15
  77:12 84:2 85:6
  90:13
**extraordinary**
  26:18
**extrapolate** 85:6
**extrapolation** 92:7

**f**

**f** 2:23 95:1
**f.2d** 57:19
**f.3d** 59:16
**face** 9:16 84:14
**fact** 8:21 50:1 52:10
  60:7,9 75:11
**facts** 47:12 50:19
  51:23 53:3,18
**fail** 54:1
**failed** 12:9 60:16
**failure** 53:8,10
**fair** 28:14
**faith** 13:11 50:3
**familiar** 42:6 66:12
**family** 21:10
**far** 43:2 45:6
**fast** 43:19
**fatal** 53:7

**fault** 31:5 33:23
**fdic** 59:16
**february** 8:8,15
  21:24 24:15 30:25
  51:11,17,25 52:5,6
  52:8,15,21,25 54:4
  54:6,10,17,24,25
  55:6 56:21,24 57:1
  57:4 61:7
**federal** 8:5 14:15
  27:13 35:5 38:3
  52:22 53:13 57:11
**feel** 81:21 83:10
**feels** 40:24
**felons** 84:10
**fiasco** 41:23
**fictitious** 50:4,5
  58:8,15 63:7 65:18
  82:24 84:5 91:7
**fiduciary** 46:6
**fighting** 67:16
**filed** 57:2 60:23
  80:2 87:14
**files** 27:23
**filing** 19:17,22 50:7
  50:11 56:17
**filter** 46:2
**finally** 51:20 79:25
**financial** 15:6 16:16
  17:23 18:11 31:19
  33:21 59:7,11,18
  60:13
**find** 20:17 35:14
  43:13,20,23 74:14
  82:13
**fine** 9:15 70:14
  71:13
**finish** 30:4
**firm** 69:17 80:11
**first** 6:13 10:6
  16:20 24:9 43:7
  44:1 51:13 56:10,13
  67:8 77:7 80:1
  83:25
**five** 78:20,21 79:10
**fixed** 61:23

**g**

**focusing** 26:23
**follow** 34:21 50:2
53:21 76:13
**followed** 24:17 91:6
**following** 9:9 12:11
**footnote** 67:18
**force** 29:22
**forced** 14:22 16:6
**foregoing** 95:3
**forget** 80:10
**forgo** 50:22
**formal** 56:17
**forth** 57:12 78:20
**forward** 23:18
29:20 44:16 46:14
66:22 67:12,14
81:19 83:21
**found** 23:24
**foundation** 82:13
**four** 21:23 52:11,17
55:23 69:6
**fourth** 77:13
**frame** 17:12 27:20
32:16 49:8 71:18
**frankly** 20:8 24:1
40:19 75:15
**fraud** 48:1
**fraudster** 44:2
**fraudulent** 60:15
90:25 91:18,20
92:14,20
**frd** 59:5 62:1
**free** 34:22 51:16
54:14 62:24
**frustration** 33:13
**full** 86:5
**fund** 58:22
**funds** 58:20 61:23
**further** 18:4 25:11
31:16 34:12 48:22
51:15 56:5,11 85:16
**furthermore** 52:16
55:4 59:23 61:17
**futile** 78:12
**future** 28:5

**g** 6:1 59:7
**gas** 43:2
**general** 56:10 60:12
60:17 62:3 83:16,18
**generally** 58:18
77:3
**generated** 51:1
**germane** 43:23
**getting** 14:25 20:4
30:16 34:11 46:14
**gibbons** 43:25
**give** 10:15 15:7 41:4
41:7,20 45:21 46:17
47:15 77:8 85:21
87:5
**given** 24:19 29:23
41:21 55:12 60:13
77:13
**gives** 18:15 43:19
85:25 92:18
**glickman** 5:6 71:6,8
71:8,15,18,21 72:1
72:17,18,21
**glitnir** 59:7
**go** 6:23 7:14 14:4
24:1 26:19 28:19
31:15 39:8 40:19
41:2 44:10,16 48:20
65:17 66:22 77:6
81:19,20,20 83:13
83:14,21,22
**goes** 22:13 23:6
46:4 65:9 91:21,22
92:21
**going** 8:25 13:5
15:7,8,17,23,24,25
16:8,15,17,20 17:7
17:11,16 23:18 24:3
25:3 26:21 27:11
29:8,12 30:13,17,20
35:4 40:21 41:17
42:8 44:9 46:14
65:23 66:4,7 67:1,2
67:9,12,14,15 71:19
71:24 73:24 74:25
81:13 82:18 84:25

87:24 88:5,5,9
89:12 90:17,18,23
**gonna** 44:21 48:22
**good** 6:2,14 13:11
34:3 50:3 56:14,15
71:14 74:8 76:9
**gotten** 27:9
**government** 58:14
**grant** 8:20 69:13,14
69:18 72:9,11,12,15
72:19 78:4 85:1
**granted** 16:10 19:6
28:20 58:14 68:12
68:14,16,20 71:2
**granting** 29:17
68:16 69:22 74:25
**green** 2:13
**greenberg** 47:16,17
**greenberg's** 47:18
**greenblatt** 85:4
**gregory** 4:9 6:14
**grind** 88:12
**groundless** 40:22
49:15
**grounds** 18:8,10
57:12,22 59:2
**group** 57:23
**guess** 6:16 14:9,12
14:14 28:5 34:22
66:8 69:15 83:2,22
85:7,20 92:1

**h**

**h** 1:13 2:4 4:13 5:18
**halpern** 19:10
35:13,14,16 63:15
64:2,3 69:21
**halpern's** 64:5
**hand** 41:1
**happen** 46:9
**happened** 33:8 44:4
73:9
**happens** 27:7 75:25
**happy** 38:24 89:17
**harris** 5:13 78:22
79:3,5,8,12,15 80:5
81:5,11 85:23 86:2
86:10,15,19,25

87:22 89:16,20 93:1
**he'll** 72:23
**hear** 24:6,23 39:6
40:16 42:12 76:7
**heard** 9:19 30:3
35:23 41:8 81:19
**hearing** 3:1,4,7,10
3:13 8:9 23:8 51:17
52:25 54:10 56:21
**heightened** 45:20
**held** 24:18 47:11
51:10 69:25 85:16
**helen** 4:10 9:18
22:10 52:6
**helene** 4:4 26:2
60:24
**help** 38:25
**helpful** 14:25 23:25
**hereinafter** 49:20
**highly** 31:19,20
45:16
**history** 8:19
**hold** 7:21 8:10,25
9:5 17:4 30:17 62:9
66:14 67:5 70:16
87:15
**holding** 15:4 62:22
**holds** 42:3
**hon** 2:24
**honestly** 12:19
**honor** 6:3,14,24
7:13 9:18 11:11
12:18 13:3 14:15
19:6,10,16 21:2,10
22:2,12,13,18,21
23:4,24 24:8,16,25
26:16 28:7,12,16
30:1,23 35:23 36:17
40:18 41:2,6,25
42:8,21 44:16 45:24
46:3,16 47:7 48:19
49:12 65:6,19 67:6
67:18 68:4 69:8,12
69:19 70:3,13,20
71:6,13 72:4,6,16
72:22 73:6,18 74:24
76:9,11 78:4 80:12

81:2,5,18 82:14
83:1 84:22 85:13
86:10 87:20 89:5,6
89:17,23 91:9,21
92:25 93:3
**honor's** 42:6 43:13
73:12
**hostetler** 4:12
**hundreds** 17:3
22:16,19
**hurry** 88:2
**husband** 43:24 44:2
**hyde** 3:25 95:3,8
**hypothetical** 35:2
75:3

**i**

**identified** 53:14
79:15
**identify** 54:1
**implies** 58:23
**importance** 60:14
**impose** 53:8
**impression** 68:11
**improper** 77:12
**inclined** 78:4
**included** 90:2
**including** 61:4
**income** 61:23
**inconsistent** 54:18
**incorrect** 7:8
**incumbent** 54:15
**indicated** 10:19
**indiscernible** 7:7
10:5 11:14 13:7
18:1 23:19,24 34:16
41:11 42:5 44:5,14
49:16 53:12 57:6,7
58:7 70:18 72:14
73:14 78:13 83:8
88:21 92:15
**individual** 20:13
59:6 74:9
**individual's** 59:11
59:13
**individually** 7:9
21:4

**industry** 83:19
**inform** 68:4
**information** 10:15
10:21 14:25 15:25
17:11,19,19 18:20
19:3,19,25 20:21
23:5 33:21 37:22,24
37:25 38:8,11,18
45:2 50:9 57:7,8
58:3 59:7,11,12,19
59:20,24 60:9,18,19
74:3,9,13 75:5,11
75:12 85:1 90:3
92:13
**initial** 21:3 42:2
43:3,7,18 52:13
**initials** 43:19
**innocent** 48:5
**inquiries** 79:11
**insist** 53:1
**insisted** 52:20 56:25
**insistence** 54:7
**insisting** 22:5 55:15
**instance** 16:20
22:20 41:4 85:10
**instances** 22:17
67:19
**instant** 51:13
**insufficient** 9:8
**intend** 23:4 58:23
**intended** 43:16 55:2
55:4 62:21
**intent** 75:10
**intention** 24:1
76:14,19
**intentionally** 34:1
**interest** 21:5 25:9
40:21 59:6,13 85:20
**interesting** 27:14
28:1
**interests** 17:2
**interfere** 86:4
**interjected** 75:19
**interrupt** 25:21
**intrusion** 38:9
59:13

**investment** 1:8,14
2:5 4:14
**investments** 61:23
**investor** 1:5
**investors** 48:5
**invited** 80:21
**involved** 36:1 80:11
84:3
**iron** 78:8,9
**irrelevant** 17:19
31:20 37:24 57:8
58:2,3 75:15,16
**irving** 1:13 2:4 4:13
**issue** 9:19 10:10
11:12,18 12:12,12
13:12 14:2,6 15:5
17:13 18:13,14 19:9
23:22 26:17,22,23
28:7,13 31:21 32:10
38:20 42:19 43:6
44:13,23 45:14,22
46:10,10,11,12 47:4
47:5,8,19 48:10,11
48:12,14,23 50:20
58:5 63:3,6,14 69:5
73:17 74:17,18
76:11 77:24 80:3,11
83:15 85:5 86:5,7
90:21,21 91:4 92:1
92:16
**issued** 35:20 57:22
**issues** 16:4,5 22:15
45:13 48:11,23 49:2
51:14 56:10 68:18
82:4 86:11,12,18
**it'll** 17:6 73:2

**j**

**j** 4:19,20 5:6
**jail** 75:14
**james** 60:23 61:6
**january** 24:14
30:24 41:4 50:14
57:24
**jenson** 4:22 19:10
47:17 65:6,12,14,19
66:9,20,24 67:3
68:7,9 70:23 71:2,5

72:4
**jim** 25:15
**job** 46:15
**john** 61:25
**joint** 25:16,25 26:14
26:14 27:4,8 61:2,6
**judge** 2:25 25:2
43:6 72:3 76:16
**judging** 58:8
**judgment** 24:2
**june** 70:1
**jury** 42:21,23
**justify** 54:9

**k**

**karin** 4:22
**keep** 48:9,9 81:3
**keeps** 44:11
**kevin** 5:18
**kind** 14:11
**kinds** 46:3
**kirby** 80:13,15,22
89:22
**knew** 48:1 82:12,13
**know** 7:13 15:1,13
15:25 16:19 18:2,10
19:1,2,4 20:7,22
21:11 35:24 38:12
43:12 44:4 45:19,25
48:9,22 63:19 64:25
65:9 67:11,21 68:6
68:8 72:21 74:6,16
76:3 77:24 82:6,12
83:6,6,8,9 84:20
85:10 86:23 87:16
89:24 92:3
**knowledge** 36:5
81:23 82:3 83:24
84:2
**knowledgeable**
36:6 84:8,19
**known** 48:7,7
**knows** 13:8 23:8
42:23 83:9
**krause** 5:1
**kwon** 5:14

| l | | m | |
|---|---|---|---|
| **l** 1:8,13 2:4 3:5 4:14 59:7 | **liabilities** 61:5 | **m** 2:24 4:9 | **mention** 52:12 82:16 |

**l**

**l** 1:8,13 2:4 3:5 4:14 59:7
**laboring** 87:10
**lack** 57:25 58:24
**lacked** 36:5
**lacks** 57:21
**laid** 73:19
**langford** 57:19
**language** 33:14 76:24 77:1,2,4
**large** 60:21 85:6
**late** 70:8 83:3
**latitude** 92:19
**law** 14:10 18:7,11 20:9 41:24 43:1 49:5 58:21 63:12 80:11 92:18
**lawrence** 1:17 4:4 9:4,24 11:1 14:8 25:6,12,15,22 26:24 28:18 39:8 40:2 52:3,12 54:3,22 55:13 56:3 58:19 60:23,24 61:2,3,6 62:14 63:10 69:21
**lawrence's** 60:25 62:16
**lawyer** 6:11
**lawyers** 29:13
**leading** 30:25
**learned** 65:20
**leave** 40:24 72:9,11 72:12 75:1 78:4
**leaves** 37:4
**ledanski** 3:25 95:3 95:8
**legal** 14:2 95:20
**legitimately** 27:10
**letter** 8:22 21:23,24 32:7 51:1 52:3 57:1 82:19
**letters** 8:15 53:25 54:24 56:24 57:1
**letting** 43:14
**level** 47:24

**liabilities** 61:5
**liability** 58:20
**light** 39:14
**limit** 75:8
**limitation** 90:22
**limitations** 78:6,10 81:1 87:5 88:9,16 90:5
**limited** 37:12 74:11 76:12
**limiting** 75:9 76:23 76:24 77:3 81:6,7 84:23 85:15 88:4
**limits** 78:5
**line** 44:8 77:21,23 94:4
**liquidation** 1:13 2:4 4:14
**listed** 34:8
**listen** 9:21
**listening** 22:3 34:17
**literally** 22:16
**litigation** 17:5 30:14 32:7 42:17 51:2 61:23 70:1 86:5 90:25 91:19 92:14
**little** 79:10 89:11
**live** 45:20
**llc** 1:8,14 2:5 4:15 57:23 62:1
**llp** 3:13 4:3,12 5:1,8 6:15 49:20
**loaded** 13:5
**long** 71:19 92:12
**longer** 22:9,23 58:12
**look** 7:4 8:23,24 12:24 16:2 34:14 38:3,4 44:1,9 45:17 45:18 47:12 77:3 78:19 83:5 84:25
**looked** 21:19
**looking** 11:18 37:1 79:4 89:25
**lot** 8:17 30:5 40:20 74:1 80:7 85:19

**m**

**m** 2:24 4:9
**madoff** 1:8,14 2:5 3:5 4:14 6:2,5,12 25:8 37:9,13 48:1 61:4,10,19 70:22 73:14,16 74:2,6,7 74:12,23 75:24 77:8 78:5 82:11,17 84:13 84:14,20 90:5 92:4 92:10
**madoff's** 81:22
**maintain** 69:10
**man** 63:19 70:11
**march** 2:16 11:9,23 32:12 37:6 95:25
**marcy** 5:13
**mark** 46:2 71:11
**marked** 79:18
**match** 65:24
**matter** 6:16 19:14 19:25 22:18 30:1 38:18 57:15 58:21 73:5,7,8,15 74:20 75:13,20 77:16,16 82:16 86:17 92:13
**matters** 9:23 70:19 75:6
**mckenzie** 80:14
**mcwane** 59:16,19
**mean** 7:2 15:14 16:25 24:25 31:12 31:18 34:22 35:5 38:3 40:1,7 47:14 91:2,9
**meaningful** 9:1 34:2
**meaningless** 23:25
**means** 15:14 42:14
**meant** 74:7
**mediator** 16:23,24
**meet** 51:13 55:6 56:16,19 60:10
**members** 21:10
**memorialized** 8:8 55:5

**mention** 52:12 82:16
**mentioned** 52:17 54:3 55:22 64:16
**mentioning** 47:17
**michael** 5:14
**mind** 25:3 33:10 34:1 67:4 81:4 90:5
**mineola** 95:23
**minor** 10:19 11:1
**minute** 12:4,4 17:15 20:17 30:3 32:10
**misrepresenting** 51:8
**modified** 58:16
**modifies** 40:2
**modify** 39:24 57:12 57:13
**money** 12:21 13:20 14:2,4,11 25:25 26:4,11,20,21 39:17 63:11,13 64:16 65:2 67:15 82:19 83:8,25
**months** 22:13,22 30:24 31:8 40:6 72:1
**moot** 32:15
**morning** 6:2,4,14 23:25 76:9
**motion** 3:1,4,10,13 6:11,16,17,18,20,21 6:21,22 7:16,17,17 7:19 8:3,14,17,22 17:16,21 19:5 30:25 40:19 44:14 49:14 57:3 61:7 68:12,14 69:14,18 70:24 72:9 72:21 73:16,19 76:1 84:9 85:1 87:1 89:4
**motions** 6:10,17 22:21 32:7 48:23,24 50:2 53:6 55:16 56:1,7,11,13,17 57:2 69:22,23 70:5 70:15 71:3 94:6
**motors** 57:19

movant 46:21
move 24:1 25:17
  29:20,21 44:12
  45:12 51:5,18 54:15
moved 49:21 52:21
  56:2,3
moving 46:21 56:15

**n**

n 4:1 6:1 59:7 94:1
  95:1
name 24:6
names 41:10
national 5:2 6:19
  10:21,25 25:7,11,14
  61:1 70:24 71:9
national's 61:17
nauseam 49:8
necessarily 76:1
  84:18
necessary 51:14,18
need 23:5,9 29:15
  44:16 46:11 48:17
  48:18 65:3 66:22
  69:2 77:1
needed 28:25
needs 20:20 87:9
negotiate 9:12
neither 79:21
neutral 16:22,24
  62:7
never 12:14 14:16
  21:11 22:25 41:9
  43:20 74:4,4 89:10
nevertheless 54:17
new 1:2 2:14 4:7,17
  5:4,11 20:6 21:9
  29:12,13 45:15
  67:20,20,24 68:5,22
non 57:18,22
north 81:15 90:18
note 62:25
noted 63:15
notice 69:10 87:4
noticed 49:13
notwithstanding
  90:1

nova 57:23
number 11:19,22
  11:22,25 12:5,15,16
  25:5,5 35:17,19
  36:18 44:3 63:23,25
  89:2,4
numerous 38:7
ny 2:14 4:7,17 5:4
  5:11 95:23

**o**

o 2:23 6:1 95:1
o'neal 43:25
object 17:17,22
  18:8,19 26:24 30:22
  54:12 57:17 59:1
  88:13,14,16
objection 31:1,22
  37:11 47:6 67:17
  69:4 76:22,24 77:17
  78:12,19 80:20
  86:22
objections 41:22
  77:2
obligations 92:18
obtain 37:13 38:6
obtained 19:18
obvious 84:14
obviously 29:2,25
  63:6 66:24
occurred 50:17
  73:22 85:6,11
office 41:11
officer 46:6
offset 61:5
oh 20:17 36:25
  43:17 64:23 70:21
  73:1,13 80:10 86:14
okay 11:3 13:10,19
  24:5 31:13 32:4
  34:5 35:16 38:1
  42:7 44:7,18,24
  64:23 67:1,25 69:9
  69:15 70:14 71:14
  72:18 73:13 74:11
  76:2 79:4 81:11,17
  83:4 84:22 85:18
  87:18,21 88:23 89:9

89:19 92:2
old 95:21
omnibus 42:13
once 17:10 27:23
ones 78:23 79:13
  88:12
open 28:25 57:14
  57:16 58:19 59:10
opened 65:10
operating 46:5
opportunity 7:22
  8:1,11 9:1 19:17,22
  24:19 28:12 29:23
  31:4 41:7 43:19
  53:3 79:17 85:21
  87:6 88:6,14,18,24
opposed 23:22
opposition 85:15
oral 9:22
orally 24:22
order 3:2,8 6:5,17
  8:4,6,7,16 17:5
  24:21,24 25:4 27:4
  31:2 32:13,23 33:5
  33:9,12 40:3 41:6
  42:17 43:4 45:1,24
  46:5,7 51:17 52:5
  52:25 53:9,11,14
  54:8,13,16 55:2,5
  55:10,17,17 56:3,12
  56:23 60:23 61:7
  69:15,17,23 70:1
  71:10,12 72:20,23
  73:2,3,12 75:9
  76:18,23 78:9,15,17
  78:17,18 81:6,7,10
  84:23 87:4,24 89:7
  89:14,18 92:24
order's 89:10
ordered 25:2 46:4
orders 14:4 45:16
  88:4
ought 78:24
outflows 15:2
outlined 84:24
outstanding 32:14
  32:18,19,20

outweigh 60:18
outweighs 62:3
overblown 75:15
overlapped 6:22
overstates 45:22
owner 26:14
owners 61:2

**p**

p 4:1,1 6:1
page 79:5 94:4
pages 89:3
paid 39:11 46:12
  58:8,10
papers 41:22 88:25
paragraph 61:8
  74:21 90:3
paranoia 90:1
pardon 72:25
park 4:6
part 7:16 57:13
  58:14 81:6
parte 27:24
participate 80:18
  89:22
participating 80:23
particular 22:20
  47:19 74:22
particularly 12:23
  80:2
parties 5:9 30:24
  31:7 51:13 55:5
  56:15 57:22 59:3
  75:7 76:15,21 77:8
  77:10,15 78:21,23
  78:25 79:8,22,22,23
  80:2,3,9 85:21
  88:10 89:7 90:1,9
  90:11
party 3:11 12:10
  14:11,18 17:7,18
  18:8 24:11 45:9
  47:22 53:8 57:16,18
  57:21 58:22 59:2
  62:5,7
party's 18:7
passed 19:22

**pay** 12:21 14:2,10 39:18
**payment** 15:3
**payments** 39:20 58:15 84:5,17
**pending** 19:24 20:3 28:4 55:11,15 73:8 87:13
**penitentiary** 81:16
**people** 17:2 26:19 47:25 48:4 74:5 84:10
**percent** 16:16
**period** 12:11 20:19 22:22 33:17 35:19 36:8 37:9 50:10 57:15,18 58:13 59:14 65:3,11,23 70:6 85:17,20 86:12
**periods** 85:7
**permissible** 27:12 61:25
**permit** 27:1
**permitted** 32:11 81:22 82:5
**person** 15:2,9
**personal** 16:15 17:23 18:6 27:6 31:19 33:21 35:10 48:6 59:6,11,18 81:23 82:3
**personally** 40:23 91:17
**perspective** 23:21
**persuasion** 59:3
**perverted** 23:21
**phone** 27:5 68:10
**phraseology** 88:13
**picard** 1:13 2:4 4:13
**picower** 5:9 74:18 74:21 75:6,11 76:15 76:21 77:8,10,15 78:21,23,25 79:1,6 79:11,16,23 80:3 85:15 88:10 89:6 90:1,3

**place** 44:1 71:11
**plainly** 59:20
**plaintiff** 1:6,15 2:6
**plausible** 42:5,9
**playing** 41:20
**plaza** 4:16
**pleading** 46:24,25
**pleadings** 89:3
**please** 6:2 9:9 12:15 12:16 89:2
**pm** 93:5
**point** 9:6,7 15:20 18:4 23:9,21 24:4 28:7 30:1 32:21 45:1 48:19,21 66:16 77:9,10 90:15,17
**ponzi** 26:19
**popping** 44:11
**portion** 58:22 59:15
**posed** 77:12
**position** 7:1 22:8
**possible** 7:10 16:11
**power** 24:25
**practical** 38:20 75:13 90:7
**practice** 30:25 53:13
**practices** 83:17,19
**precise** 36:8
**precisely** 27:25
**predicated** 8:3,14 8:17
**preference** 6:3
**preferred** 91:24
**preparing** 65:20
**present** 5:16 10:1 75:7 80:10 90:10,14
**press** 41:19
**pressure** 29:25
**presumably** 59:22
**presume** 80:17
**pretty** 79:1
**prevent** 74:22 75:4
**preventing** 31:2 60:20
**previous** 31:7

**previously** 52:1,9
**principal** 11:15,17 12:6,8
**principle** 20:9 49:4 49:6 91:1,8
**prior** 40:8 56:9
**prison** 82:12 84:11 90:8
**privacy** 18:14 32:10 44:11 45:12,14 46:10,10,11,12 47:3 47:5,8,24 48:10,12 59:2,6,9,13 60:13 60:17 62:3,12
**privilege** 57:16
**privileged** 57:15 61:25
**privy** 86:25
**probably** 38:20 74:13
**problem** 11:14 17:8 37:10 68:16 69:8 85:8
**problems** 66:11 67:11
**procedural** 8:19 20:1 32:15
**procedure** 8:5 14:16 27:13 31:10 34:21 52:23 57:11 91:6
**procedures** 9:10 24:17 91:5
**proceed** 6:16 7:14 8:13 9:16 20:1,12 30:20 33:7 72:8 74:25
**proceeded** 7:25 8:2
**proceeding** 19:19 19:24 20:3,3 27:24 28:4 31:3,5 42:19 50:21 76:18 77:15 80:24
**proceedings** 19:18 21:6 45:3 49:19,22 50:5 51:9 52:18 53:3 54:10 90:7,9

**previously** (cont.)
90:10 91:7 93:4 95:4
**process** 29:1 32:5
**produce** 10:22,25 15:24 16:8,14 17:10 33:19 38:13,25 65:16 66:6 70:24 71:20
**produced** 10:21,25 15:16 25:7,10 30:15 39:13 53:24 67:2 69:25 71:11
**production** 59:10 61:17,21 65:25
**profit** 73:17 74:17 77:14 80:11,23 81:23 82:16,23 83:6 85:3 86:7 90:22 91:3
**profits** 50:4,6 58:8 58:15 63:7 65:18 91:8
**progress** 86:5
**prohibition** 27:18 27:19 51:12 54:5
**prohibitions** 27:15
**promise** 17:8
**propose** 65:19 68:21 76:25 78:4 81:12 88:18
**proposed** 50:1,19 51:22 53:17 78:3,7 87:4,24 88:4,10,11 88:16,19
**proposing** 80:1
**protect** 17:1 18:25 61:25
**protected** 57:15
**protection** 1:5 17:5
**protective** 3:2 6:17 45:16 46:5 51:17 52:5 54:13,16 55:2 55:16,17 56:3,12,23 57:3 60:23 61:7 69:23 70:1 71:10
**prove** 10:8 13:13 15:15 60:3,8,9

questioned 36:11
questions 9:2 17:17
35:3 76:14,19 77:12
80:6
quite 12:19,22
18:11 20:7 24:1
26:18 40:19 46:3
75:15
quote 57:14,15,16
57:18 58:19,22
59:10,14

**r**

r 2:23 4:1,21 6:1
59:7 95:1
raise 14:16,17 16:6
44:14,22 48:12,13
49:2 51:14 62:11
83:15 90:20
raised 15:5 28:2,13
39:9 47:6 48:23,23
63:10 91:15
raises 14:1 16:4
27:13
raising 92:1
rakoff 43:6
ramifications 91:4
reach 91:11
reaction 46:1
read 11:13 14:1
85:3 88:25
reader 61:22
realize 82:15
really 6:18,20 13:8
29:25 33:9 38:5,6
45:23 46:20 71:25
74:7 77:18 80:3
83:2 88:12,15 92:15
reason 9:9 22:8,9
22:12 33:20,24
42:23,23 43:11
44:10 62:8,21 73:21
74:19,19
reasonable 92:15
reasonably 92:12
reasons 50:2 67:14
83:20

61:13 62:19 90:23
proved 90:23
provide 8:11 9:1
34:2 69:11 77:5
provided 31:4
33:16 34:25 69:9
86:16
providing 7:22
proving 10:8
provisions 85:15
public 85:19
purpose 26:25 32:6
35:3 61:15 62:20
86:21 91:16
purposes 56:19
70:15
pursuant 17:5
28:10 52:21 56:7
69:25
pursue 23:11
put 12:11,12 14:12
15:23 25:25 31:1
58:4 62:18 63:3
72:20 74:20 75:16
88:13
puts 13:6 63:13
putting 32:10 42:16
pw 92:8

**q**

quality 34:10
quash 3:1 25:18
46:21 54:16 55:16
56:1,2,3,11,13 57:3
57:5,12,13 58:1
59:3 69:22
quashed 6:17 59:16
quashing 53:22
queried 23:4
question 9:21,23
13:25 14:1,1,13
16:20 20:22 23:15
23:16 26:11,12,20
27:14 28:1 34:24
39:16 42:18 49:3,10
63:23 68:15 71:9
75:2,3 77:9 83:2

recall 9:13 35:21
recalls 22:12
recanted 33:25
receipt 11:7 13:14
37:2,3 39:17 63:2
63:13,24,25 64:14
64:17 65:2
receipts 64:13,20
receive 12:21 13:20
14:2,4,11 22:25
26:19 63:4
received 10:16
11:21,24 12:14
13:23 15:5 26:11
54:21 65:4,5 68:10
85:24
receiving 64:16
recipient 58:20
recognized 59:5
recollection 36:21
recompute 91:1
reconstruct 85:5
record 14:19 18:23
24:17 31:1 39:11
40:8 51:11,15 71:20
83:7 95:4
record's 70:23
records 6:25 7:4
10:3,7,9,12,12,13
10:14,18,24 11:6
12:12 13:22 15:7
16:16 17:10,23 18:6
18:11 23:2,6,8
25:11,16 26:25 27:3
27:4,7,7,10 31:19
32:11 33:19 35:10
37:5,6,8,14,19 38:7
39:1,1,10,12,12,13
42:24 43:15,20
46:15 47:10,18 48:6
50:23 58:1,2 59:24
60:1,2,4,6,12,13,14
60:25 61:1,12,14,18
62:3,6,7,10,17,19
64:21 65:4,8,23,24
65:25 66:6,7,17,18
66:22,23 67:2 69:10

70:16 73:11 83:11
85:3,7,12 91:18
recover 50:5 59:21
63:8 91:7
redact 46:2
redacted 47:10,20
61:18 62:5
redaction 62:10,11
85:21 86:13,16 87:8
87:13,14
redactions 61:21
77:11
reducing 66:11
referred 52:3
reflect 42:24
reflected 7:11 13:21
reflecting 25:8
refrain 55:7,8
refund 39:19
refunded 58:14
refunds 12:23 39:18
61:4
refusal 54:9 60:6
regard 23:1,3,10
42:1
regarding 6:10
10:15 38:11 47:20
52:1 54:5 76:15
reinvest 82:22
reiterated 51:11
related 6:9 14:21
61:4,19 75:11 76:1
90:21
relating 50:9,20
52:18 53:4 61:4
74:21 75:5
released 34:20
relevance 18:9,10
25:19 59:12 60:18
62:2 90:6
relevancy 57:22
60:11
relevant 14:25
16:17 20:19 33:17
33:18,19 36:16 37:9
37:24 38:1,2,8,23
50:23 57:13 59:18

59:20 65:16,23 85:2
**reliance** 92:15
**relief** 58:14 76:17
  76:20 77:7
**relies** 92:12
**relieve** 55:2,4
**rely** 8:4 23:1
**relying** 23:7
**remain** 86:17 87:12
**remedial** 56:19
**remedies** 35:6,8
**remedy** 16:11 40:2
  40:14 53:11
**remember** 36:7,17
  36:18 89:21
**renders** 26:14
**repeated** 49:7
**reply** 77:25 88:15
  88:18 89:25
**reporting** 70:7
**reports** 85:4
**represent** 6:15
  18:24 19:4
**representation** 8:9
  23:16 24:9 31:10,25
  41:5 53:16,20 54:19
  55:3
**representations**
  8:18 33:25 49:22
  52:24 62:22
**representative**
  49:20
**representatives**
  21:9 29:13
**represented** 20:13
  50:15 67:13
**representing** 7:21
  29:2,4
**represents** 6:13
  92:8
**request** 7:12,23
  8:12 12:5 13:5 14:3
  21:12 22:11,25 23:9
  25:13 31:25 33:2,5
  36:12 37:17 38:21
  49:25 50:19 51:8
  52:11,13 53:18

54:20 55:18,21,23
  60:22 61:10,15
  62:11 63:25 64:7
  67:9,10 82:18 83:7
  84:23 86:16 87:9
**requested** 37:16
  55:10 83:25
**requests** 7:24 8:1
  9:4 22:6,10,13,16
  22:24 23:17 28:9
  29:15,23 30:2,11
  31:4,16 34:13,22
  35:6 39:2 51:23
  52:10,17 53:5 58:9
  67:15 78:21 85:22
  86:19 87:11,14,14
  87:17,17
**require** 13:6 62:18
  90:25
**required** 14:10,17
  33:2 39:2 54:11
  56:15 58:21 63:12
**requirement** 15:3
  69:24
**requirements** 55:5
  56:18,20 87:2
**requires** 10:8 32:24
  57:14 61:13
**resolution** 29:8,21
  55:11 68:18 87:13
**resolve** 11:1 22:15
  68:3 78:16
**resolved** 10:20 55:9
  70:19 73:10 78:18
  86:11,18 87:17
**respect** 12:25 46:19
  49:2 62:13,25 63:15
  67:7 68:21 69:20
  70:4,5 73:17 91:6
**respectfully** 23:13
  23:23 90:4
**respective** 36:3
**respond** 32:2 33:6
  49:13 52:9 54:23
  55:21 86:24 87:6
  88:8

**responded** 55:18
**responding** 12:9
**responds** 14:7
**response** 25:12
  39:14 53:4 63:24
  65:16 79:2,8 89:25
**responses** 7:12 9:4
  9:12 32:8 37:2
  52:13,14 54:4,21
  55:14 58:9 61:10
  62:23 65:6
**ressler** 5:13 78:22
  79:3,5,8,12,15 80:5
  81:5,11 85:23 86:2
  86:10,15,19,25
  87:22 89:16,20 93:1
**restraining** 3:8
  32:13
**restrictions** 87:5
**result** 51:10 81:7
**results** 85:6
**return** 64:1
**returned** 64:14
**reveal** 16:15 19:2
  82:10
**revealed** 81:22
**reversed** 21:18
**review** 77:2 79:17
**richard** 4:20 80:14
**rid** 43:20
**right** 7:10 10:3,4,17
  13:23 18:15,18
  20:10,14,18 21:16
  22:3 23:11 24:5,5
  27:9 28:24 29:4,14
  30:5,7 32:2,19,23
  35:2,11,15 37:4,15
  37:22,23 39:4 40:1
  40:12 42:6,22 43:21
  45:6 46:13,17 47:5
  49:18 59:9 60:12
  65:12 67:20 68:19
  68:24 69:4,20 70:2
  70:21 71:25 72:5
  73:13,15 76:7 79:12
  80:25 81:3 87:3,19
  88:17 89:13,21

92:11,13,24
**rights** 20:1
**road** 95:21
**robert** 11:19,21,24
**rockefeller** 4:16
**roman** 11:4,21,25
  55:14 69:21
**roman's** 11:19
**romans** 12:25 13:7
  13:8 53:24 62:25
**roth** 2:8 3:14 5:8
  6:11 28:19,19 29:1
  29:18,19 52:2 55:18
  67:8,9,19 68:5,6,9
  68:10,21 69:6,14,18
  70:5
**route** 33:25
**rule** 19:15,21,24
  20:3 23:13,14 27:12
  27:15,17,21 28:10
  35:5,7,8,8 38:4
  41:23 42:7 43:14,22
  44:3 45:1,7 46:24
  46:25 53:7,11 56:7
  56:8 57:11
**ruled** 47:7 76:16
  88:4,20,22
**rules** 8:4,5 14:15
  27:13 38:4 52:22,22
  53:9
**ruling** 8:7 28:5
  32:12
**rulings** 94:3
**run** 76:18

---

**s**

**s** 4:1,22 6:1
**sanctions** 53:8
  55:12 81:8
**saren** 1:17 4:4 9:3
  9:24 11:1 14:8
  25:12 28:18 39:8
  40:2 52:2,12 54:3
  54:22 55:13 58:18
  60:24 62:14,16
  63:10 69:21
**satisfied** 18:23 35:7
  46:24 65:24 66:3

91:17
saw 84:9
saying 12:13,15
25:2 27:11 30:21
31:22 33:8 34:5,7
37:21 41:25 47:9
67:12
says 12:1,5,14 13:10
18:11 30:13,13 33:2
33:5 34:3 40:9
61:18 73:24 90:3
92:3,5,6
schedule 84:10
scheme 26:19
schulte 5:8
scope 75:9 77:3
78:6 88:19 90:16,19
sdny 57:24 59:5,8
61:24 62:1
seal 80:2 86:20
87:14
sealing 87:2
seanna 4:21 76:9
seated 6:2
sec 28:22
second 9:12 18:9
26:22 57:5,20 59:16
76:11 77:9 83:15
92:17
secondly 10:7
section 53:13
securities 1:5,8,14
2:5 4:15
see 11:18,22,25
12:15,16 16:10
20:17 21:23 36:21
36:25 37:1 52:6
61:20 63:23 64:9,12
66:16 68:23 69:6
78:25 86:22 92:23
seeing 80:23
seek 6:25 32:1,11
35:8 45:1 49:23
50:18 51:21 54:19
55:6 56:16,22 62:9
72:13 75:10

seeking 7:5 14:24
17:18 21:14 31:19
48:5 50:9 55:19
56:5 59:3,18,21
63:20 76:21 91:7
seeks 17:23 25:18
59:10 61:5
seen 17:6
self 81:9
send 35:9 72:23
82:19,22 83:7,25
sending 67:15 82:24
84:4,5
sense 46:10 47:2
77:25
sent 8:15
series 22:20
serve 22:11,12
31:18 33:2,5 34:21
34:23 50:16 67:9
served 9:5,13 21:12
21:23 22:4,6,15
23:17 30:10,10,11
31:24 38:22 39:3,5
41:12 49:25 50:8,19
51:8,9 52:2,9,11,13
52:14,16,19 53:17
54:4,20 55:14,22
service 22:23
serving 22:9 31:15
34:12 51:6
set 9:12 31:10 66:24
87:25 90:4
sets 57:11 78:20
settle 87:4 88:1 89:7
89:14,17 92:24
settled 73:7
settlement 87:23
seven 34:3 79:9
shapiro 20:22 21:1
21:3,23 22:4 28:18
28:21 29:12,12 30:8
31:24 32:13 52:2,11
52:18 55:23 67:7,10
67:11,20 68:8 69:3
69:6 70:5

shared 87:15
she'd 10:16
shed 39:14
sheehan 4:19 6:3,8
21:2,7,13,16,20
22:2,8 23:20 29:1,6
29:14,19 30:5 40:18
41:12 42:20 43:8,11
44:6,8,15,19,24
45:4,7,10 47:3
49:11,12,15,17 67:6
67:18,23 68:1,3,6,8
68:19,22,25 69:8,12
70:3,13,17,20 71:13
71:23 72:3,24 73:1
73:6,9
short 81:14,25
show 6:5 10:9 17:7
60:17 61:18 62:6,7
62:8
showing 17:8
shown 56:14 82:3
side 39:6 76:8 86:23
sides 91:10
signed 55:5 75:24
89:10
significant 12:13
85:4
similar 91:24
simple 40:14
simplest 40:10
simply 24:9 26:23
31:14 63:2
sipa 4:14 91:16,19
91:23
sir 71:7
sit 49:18
sitting 41:5
situation 25:6
six 71:25 72:1
smb 1:3,11 2:2 3:1
3:4,7,10,13
solely 37:12
solution 65:20 66:3
solutions 95:20
somebody 15:5
80:17 82:12,18,21

sons 61:25
sonya 3:25 95:3,8
sooner 56:15
sorry 22:2 35:20
48:19 63:22 68:7
70:23 73:1 74:24
sort 8:19 21:4 28:20
75:12 78:8
sought 21:24 39:12
59:12 77:7
source 74:3
southern 1:2
specific 20:10 36:5
56:9 62:10,13 77:4
79:10
specifically 13:14
25:6 74:18 77:2
83:11,23
spectrum 84:15
spirit 78:6
split 86:8
spoliation 50:16
spouse 60:23
staff 45:18
stand 9:14 32:22,24
62:19
standards 46:24,25
standing 17:17,22
18:4,5,8,12,15,19
25:16,17 26:24
44:13,22 48:12,13
49:4 57:17,21 58:1
59:1
standings 49:1
start 44:9 76:11
started 18:16
state 6:24 8:24
18:22 61:22
stated 51:15 54:10
63:4 65:22
statement 7:8 54:17
54:25
states 1:1 9:25
27:16 57:12 66:9
status 21:5,25 22:1
28:19 91:24

**stay** 3:8 54:5 72:13
72:15,19,20 73:3
**stayed** 55:10
**steps** 56:5
**stipulation** 50:19
51:23 53:18
**stipulations** 22:17
50:1
**stop** 15:19 41:18
**straight** 14:3
**street** 61:22
**strict** 22:14 56:17
**stuart** 2:24
**stuff** 46:2
**subject** 69:24 80:25
87:1
**submission** 65:21
66:10,13
**submit** 69:15,17
83:17 88:18 89:3
**submitted** 82:16
90:2
**subpoena** 3:2,11
14:19 17:18,23 18:8
21:25 24:18 25:18
26:25 31:22 32:20
34:4 35:9 37:8,11
38:24 39:12,14 40:4
41:7,12 46:22 50:22
51:4,6 52:4 53:17
53:22 54:6 56:4
57:12,14,17 59:10
59:15 60:25 66:5
68:21 69:2
**subpoenaed** 18:12
25:17 27:6,7 51:12
57:3 60:25 61:12
**subpoenas** 3:8 6:10
6:13,25 7:5,9,21
8:10 14:24 21:15
22:4,6 29:22 30:11
30:18 31:3,6,6,15
31:18,23 32:1 33:7
39:5 49:24 50:8,13
50:16,18 51:9,16,22
52:1,19 53:2,25
54:8,11,16,20 55:1

55:25 56:2,6,9,23
57:5,22 58:1 59:2,4
59:19 62:13,14,24
63:21 64:18,24
65:16 69:22
**subsequence** 23:3
42:1
**subsequent** 17:12
17:19 18:1,17,20,24
19:8,14 23:12 25:20
25:24 26:3,15,23
42:13,24 43:9,10
44:12 46:23 48:7,10
48:13 49:9 57:7,9
58:3,4 63:13 90:24
**subsequently** 58:25
**subsequents** 42:15
**substance** 13:4
**substantial** 7:11
**substantially** 7:6
**substantiate** 91:24
**substantive** 33:16
**substitute** 61:20
**sue** 43:9
**sued** 43:10
**suffer** 53:6
**sufficient** 35:1 56:6
**suggest** 41:25
**suggested** 62:15
**suggesting** 43:14
**suggestion** 41:1
62:4
**suggests** 43:1
**suit** 19:23
**suite** 95:22
**summary** 24:2 77:5
**support** 16:9 26:3
61:7
**supporting** 53:20
**suppose** 80:4,6
82:21 90:21 92:3
**supposed** 70:8
**supposedly** 53:15
85:11
**supreme** 27:16
**sure** 12:19,22 25:23
28:17 47:7 48:13

64:11 66:2 71:15
72:7 79:16,18,21
91:12 92:23
**suspicion** 61:21
**sustain** 60:16

**t**

**t** 59:7 95:1,1
**tactics** 34:1
**take** 3:4 11:3 15:20
18:4 27:1,12,24
43:24 63:23 71:20
75:4 81:12,15 83:8
90:16
**taken** 88:2
**talk** 13:1 68:22
**talked** 28:17,18,18
**talking** 17:25,25
18:16,17 20:15
35:19 45:23 85:9
**tax** 39:10 58:15
61:4
**taxes** 12:21,24 14:3
39:11,18 58:8,10
**teed** 45:8,8
**telephone** 9:22
81:13
**telephonically** 4:10
5:16
**tell** 7:9,16,18 12:18
15:20 40:10 72:24
91:14
**telling** 20:2 23:18
66:18
**tells** 32:4
**temerity** 40:23
**temporary** 3:7
32:13
**ten** 71:21 85:9,11
**tend** 32:5
**term** 11:14
**terms** 13:7 47:3
87:25
**territory** 26:22
**testifies** 83:5
**testify** 83:16,24
**testimony** 75:9 77:8
77:13 83:10 90:6

**thank** 24:8 40:16
46:16 49:18 52:19
67:3 71:5 72:3,4,16
72:22 87:20,22
92:25 93:1,2,3
**theory** 12:20 14:12
28:3 53:15 58:2
64:17 82:23
**theses** 31:18
**thing** 26:5 29:11
30:8 39:7 40:11
46:9 69:2 72:6
76:13
**things** 6:4,8 11:17
23:9,17 29:23 30:6
33:2 34:8 38:25
42:4 46:3 49:21
75:25
**think** 9:8,11 12:20
13:3,16,16 16:22
19:7 20:15,19 23:13
24:2,14,16 25:1
26:17,21 28:6,8
30:8 31:1,14,17
32:23 33:4 34:25
35:25 36:14,19 39:4
40:6,7,19,22 41:10
41:21 42:12,21
43:16,21 44:13,15
44:22 45:11,14,21
47:14,24 48:25
49:10,15 63:21
64:20 65:4 68:8
70:1 74:7,12 76:5,6
78:20,22 80:5,10
82:2,4,8 83:20 84:3
84:6 85:1,25 88:11
90:15 91:21,22
92:10,17,21
**third** 3:10 5:10
14:11 17:7,18 18:8
45:9 47:21 58:22
59:1,2 62:4,7 77:10
**thought** 18:23
63:17 64:19 74:5
89:15

**thousands** 17:2

**three** 6:8,9 10:19
22:22 25:11 35:25
50:10 63:16 65:11

**time** 22:11 29:3,7
29:10,16,20 30:15
32:2 37:9 38:17
39:1 52:9 54:23
55:21 65:23 67:15
71:18 85:17,20

**timing** 56:18 57:2
68:17

**today** 22:9,25 28:13
29:9,21 30:2 40:18
44:22 45:9,21 68:13
68:17 73:2 77:24
84:24

**told** 12:23 21:20
44:1 51:5 64:20
67:8

**tossed** 40:21

**totally** 30:23 75:15

**trace** 26:4

**transaction** 91:13
91:19

**transactions** 16:17
81:24 82:25 84:17

**transcribed** 3:25

**transcript** 51:17
77:10,13 79:17,20
79:22 80:1,17 85:16
87:12 95:4

**transcripts** 24:20

**transfer** 17:19
18:17,20 43:3,7
57:7,9 58:3,21
60:15 63:12 90:24
90:25 91:20 92:14
92:20

**transferee** 19:8,14
25:20,25 26:4,15,23
42:2,25 43:9,10,18
44:13 46:23 48:7,10
48:14

**transferees** 18:24
21:3 23:12 49:9
50:3

**transferred** 50:6
58:25

**transfers** 9:17,25
10:14 14:13,14
17:12 18:1 20:16,18
25:8 33:18,19 34:19
36:4,5,7 37:3,8,13
37:16 38:16 50:20
50:22 53:4 58:5
59:21,23 60:7,9,16
61:4,10,11,14,16,19
62:15,19,20,23 63:1
63:2,3,3,14,16,17
64:3 65:17

**treat** 28:9 60:19

**tri** 24:11

**trial** 15:20,23,24

**tro** 21:22

**true** 16:19 32:16
34:15 41:3 69:3
82:2 95:4

**trust** 36:2,5,7,17,23
61:22 64:16

**trustee** 1:13 2:4
4:13 6:18 7:1,24
8:2,10,25 9:7,11,14
9:15,16 10:8,11,18
12:9 13:6,8,13 14:7
14:7 15:20 16:10
17:4,8,11 19:13,16
19:17 20:16,20,25
24:13,22,23,24,25
26:17 27:1,5,6,9,10
27:11,20 28:3 30:11
31:2,9,15,17,23,24
32:4,9,22,24 33:2,5
33:8,20 34:3,6,11
34:12,20 35:7 36:2
36:2,3,4,4,6,14,16
36:23 37:7,23 38:6
38:10 39:3 40:16,21
44:19 46:4,15,24
47:10,15 48:5 49:23
49:25 50:4,8 51:2,7
51:16,25 52:4,16,24
53:15,21 54:14,23
55:3,12,15,20 56:4

56:19,22,25 59:17
59:21 60:3,7,8,19
60:24 61:13 62:8,10
62:18,23 65:21
73:20,25 76:10,20
85:5 88:11 89:7
91:5 92:3,12,19

**trustee's** 3:10 7:20
8:8 11:5 12:12
13:13,21 17:3,6
23:2 25:9 33:23
36:11 37:21 38:24
50:12,15,25 51:5,20
52:13 54:18 59:24
60:1,14 62:22 63:7
78:19 79:13 80:5
91:16 92:18

**trustees** 13:20 36:1
54:7 73:23

**trusts** 36:1,2,3

**turn** 51:5 78:24

**turned** 22:20 47:10
62:10 73:11

**turning** 56:9

**tv** 41:15

**two** 6:4 12:13 20:16
23:9 25:5 35:17,19
36:1,2,9,13,20 40:6
43:2 48:11,23 50:6
50:10 63:15 65:3,4
65:11 91:10

**type** 14:12

**u**

**u.s.** 2:12,25

**ultimately** 47:21
63:8

**un** 47:9

**unacceptable** 62:5

**uncharted** 26:22

**unclear** 89:11

**underlay** 31:10

**underlying** 92:22

**understand** 11:16
12:22 19:21 21:1,8
44:15 45:10 66:2,7
71:2,10

**understanding** 21:17 30:9,24 31:7
32:14 88:15

**undue** 57:23

**united** 1:1 27:16

**universe** 15:1 37:14

**universitas** 57:23

**unnecessary** 33:21

**unredacted** 61:20
67:2

**unsatisfactory**
54:21

**untimely** 56:13

**upheld** 59:19

**urgency** 32:21

**use** 14:2 17:11 23:5
27:12 43:14 49:8
70:7 79:19,22 80:17
90:8 92:11

**uses** 12:21

**usually** 57:17

**v**

**v** 1:7,16 2:7

**valid** 24:3

**valley** 5:2 6:19
10:21,25 25:7,10,14
61:1,17 70:24 71:8

**value** 32:8 45:21

**various** 55:24 87:4

**veritext** 95:20

**versus** 57:19,23
59:4,16 62:1

**vexing** 45:15

**viability** 22:14

**violate** 28:4 54:8

**violated** 8:6 52:24
53:15,15 54:2

**violating** 53:20

**violation** 8:4

**violations** 49:22
81:7

**void** 43:7

**w**

**wait** 20:17 43:4,18

**waited** 19:17

**waived**  14:18
**walk**  42:4
**want**  13:1 14:19,20
  24:7 28:9 32:16
  35:12 38:6 66:16
  67:22 68:17 76:13
  78:16 79:16,21 81:6
  81:18 89:6,8
**wanted**  46:2 82:12
  83:15
**wants**  41:2 55:20
  73:4
**waste**  22:11 29:16
  30:15 67:15
**way**  13:17 14:8,24
  22:4 32:15 38:5
  45:24 46:13 74:13
  77:11 91:10,18
**ways**  15:11
**we've**  22:19 28:6,17
  28:18 29:6 41:2,19
  41:21 46:13 67:14
  67:21 73:19 84:23
  87:5,25 91:9
**week**  44:19 56:24
  57:1
**weeks**  43:2
**weigh**  83:13
**weight**  83:14,22
**westlaw**  57:24 59:8
  61:24
**whatsoever**  39:14
  40:23 75:10
**whim**  24:13
**why'd**  75:20
**wide**  92:19
**wife**  43:24 44:2
  61:2
**wife's**  61:1,3
**wilentz**  7:11 14:5,6
  20:14,15,15,15,17
  20:18 28:17 53:24
  55:14 64:25 65:22
  69:5 70:6
**wiley**  61:25
**willing**  37:7 62:6

**wit**  53:16
**withdraw**  3:13 6:11
  22:23 24:14 39:24
  55:19 66:5 68:12,14
  69:14
**withdrawal**  11:8,9
  11:20,23 13:21
  15:10 73:17 74:17
  77:14 80:11,23
  81:24 82:18 86:7
  90:22 91:4 92:9
**withdrawals**  11:5
  12:13 13:18 35:18
  35:22 36:20 37:7,18
  38:11 50:10 58:11
  58:25 61:20 64:22
  82:17,23 83:6 85:3
  85:11 91:16,18
**withdrawing**  23:19
  23:20 29:2,15 67:8
  69:18
**withdrawn**  12:6
  36:13 39:18 41:16
  58:16 91:1
**withdraws**  41:15
  55:20
**witness**  57:18 83:18
**witnesses**  84:20
**woman**  41:13
**wondering**  21:5
**word**  46:18
**words**  27:4,6 33:1
  66:4 82:9 83:5 91:3
  92:12
**work**  43:25 68:23
  68:25 71:16 87:7
  89:20
**worked**  22:19 31:11
  31:14 32:5 33:13,15
  33:22,24 34:5,10,23
  67:13,21 69:7 74:5
**working**  47:25
  84:16
**workings**  84:4
**world**  44:10 45:20
  60:20

**worth**  63:5 83:9
**write**  82:18
**writing**  32:7 51:1
**written**  26:6
**wrong**  21:20 24:15
  41:2,19 90:22
**wrongful**  7:20
**wrote**  51:25 54:24

**x**

**x**  1:4,10,12,19 2:1,3
  2:10 94:1

**y**

**yeah**  6:7 11:7 35:24
  40:15 46:5 67:23
  73:9 79:4,7 83:10
  84:7,25 86:22
**year**  35:19 50:10
  65:3,11
**years**  36:8,9,13
  45:15,19,19,19 50:6
  50:11 71:24,25 85:9
  85:12
**yesterday**  68:11
**york**  1:2 2:14 4:7,17
  5:4,11
**young**  41:13

**z**

**zabel**  5:8
**zeichner**  5:1