1  UNITED STATES BANKRUPTCY COURT

2  SOUTHERN DISTRICT OF NEW YORK

3  Adv. Case No. 08-01789

4  - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

5  In Re

6  BERNARD L. MADOFF,

7

8           Debtor.

9  - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

10 SECURITIES INVESTOR PROTECTION CORPORATION,

11

12              Plaintiff,

13        v.

14 BERNARD L. MADOFF INVESTMENT SECURITIES LLC,

15              Defendants.

16 - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

17

18              U.S. Bankruptcy Court

19              One Bowling Green

20              New York, NY  10004

21

22              April 5, 2016

23              10:01 AM - 10:15 AM

24

25

```
 1   B E F O R E :

 2   HON STUART M. BERNSTEIN

 3   U.S. BANKRUPTCY JUDGE

 4

 5

 6   Hearing re:   Trustee's Motion to Extend Discovery Deadline

 7   in Profit Withdrawal Proceeding

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25   Transcribed by:   Sonya Ledanski Hyde
```

```
 1   A P P E A R A N C E S :
 2
 3   BAKER & MCKENZIE LLP
 4        Attorney for Drs. Joel and Norman Blum
 5        815 Connecticut Avenue, NW
 6        Washington, DC 20006
 7
 8   BY:  RICHARD A. KIRBY
 9
10   BAKER HOSTETLER
11        Attorney for U.S. Trustee
12        45 Rockefeller Plaza
13        New York, NY 10111
14
15   BY:  SEANNA R. BROWN
16
17   APPEARING TELEPHONICALLY:
18   KEVIN H. BELL
19
20
21
22
23
24
25
```

1               P R O C E E D I N G S

2

3               MS. BROWN:  We've been before Your Honor a number

4    of times recently on the private withdrawal issue, so I

5    don't want to belabor the procedural history, because I

6    think Your Honor is familiar with it.

7               We are asking for a 90-day extension to permit

8    time for depositions of BLMIS employees on the profit

9    withdrawal issue.  Specifically, we think that Annette

10   Bongiorno and Ms. Crupi have information on that issue.  And

11   we'd also like to see if there are other employees that have

12   knowledge and can be deposed within that timeframe.  The

13   time would also be used to permit the deposition of Mr.

14   Madoff to go forward.

15              This is the Trustee's first request for an

16   extension, and we feel that the extension is reasonable

17   under the circumstances.  We request that Your Honor enter

18   the order.

19              THE COURT:  Do you really think that -- assuming

20   the convictions are affirmed, do you really think that

21   you're going to have final orders within 90 days?

22              MS. BROWN:  I'm sorry, we're going to have what?

23              THE COURT:  Do you think they'll really have final

24   orders?  I assume they'll file petitions for certiorari.

25              MS. BROWN:  One -- in speaking to counsel for Ms.

1  Bongiorno, he indicated that they were awaiting the Second

2  Circuit ruling and then --

3           THE COURT:  That was just argued.

4           MS. BROWN:  It was.  And then, after that time,

5  that she would be available for testimony.  So, that is what

6  our request was based on.

7           THE COURT:  All right.  Okay.

8           MS. BROWN:  Thank you, Your Honor.

9           MR. KIRBY:  Thank you, Your Honor.  Your Honor,

10 Richard Kirby, Baker & McKenzie, on behalf of Dr. Joel Blum

11 and Dr. Norman Blum.  Your Honor, this profit withdrawal

12 motion raises a difficult issue for our clients.  They filed

13 SIPA claims in 2009; they have never had a determination as

14 to their claim.  Last summer, the Trustee voluntarily

15 dismissed 502(d) claims with respect to their -- the

16 adversary proceeding, which had been brought against them.

17 And they -- it remains today no adjudication as to their

18 claim.

19          What we've been told, back in the spring of last

20 year, that their claims are wrapped up in this profit

21 withdrawal motion.  And a court -- the Trustee identified 10

22 family accounts that had some kind of profit withdrawal

23 issues associated with them.

24          So, we worked with the Trustee last summer and --

25 this long, long schedule, in which the Trustee had an ample

08-01789-cgm Doc 13159 Filed 04/22/16 Entered 04/25/16 08:57:55 Main Document
Pg 6 of 16

Page 6
```
 1   opportunity to interview Madoff employees or whoever it
 2   chose to; they obviously had years to do that in advance of
 3   bringing this motion.  And discovery -- we complied with all
 4   requirements in connection with discovery.  We produced
 5   declarations from our clients to the Trustee on the -- by
 6   the 32rd of February.
 7            And all of a sudden, they come in and they say
 8   they have to interview the Madoff employees.  It's kind of
 9   incredible to think that, at this late date, they --
10   something from a Madoff employee might shed some light on
11   something that they've been looking at and examining for
12   years and years.
13            THE COURT:  I think they looked at it just relying
14   on an expert.  And I had suggested at one of the conferences
15   that maybe there are people who have personal knowledge
16   about this who worked at BLMIS.  And that's how this
17   deposition of Madoff came up.
18            MR. KIRBY:  I understand.  And --
19            THE COURT:  Let me ask a practical question,
20   though.  I understand your argument, in part relating to
21   delay.  My understanding is that the Blums had participated
22   in the inter-account transfer litigation, I think as amicus
23   or something like that.
24            MR. KIRBY:  Correct.
25            THE COURT:  Putting aside this issue of discovery,
```

Veritext Legal Solutions
212-267-6868    www.veritext.com    516-608-2400

1    can their claims be adjudicated prior to the ultimate

2    resolution of this inter-account transfer issue?  I know

3    that there's an appeal to the Second Circuit on that.

4            MR. KIRBY:  Oh, absolutely, Your Honor.  The

5    Trustee has all -- I mean, we understand what the Trustee's

6    position is, that it -- what really is hung up is on this

7    profit withdrawal, because what they are doing is they are

8    taking as withdrawals from the client various of these

9    profit withdrawal transactions that took place both at their

10   parents' accounts and, for Dr. Blum, some of his own

11   accounts.

12           THE COURT:  So, but for the profit withdrawal,

13   you're not contesting the way the Trustee computed the

14   amount of the inter-account transfers and ultimately the net

15   equity?

16           MR. KIRBY:  Well, Your Honor, I think that

17   definitely -- that they would object to that as well.

18           THE COURT:  Yeah, well, but that's my point.  Your

19   -- their claims, their net equity claims, are really not

20   ripe for resolution until the net -- until the profit and --

21   not the profit withdrawal, the inter-account transfer issue

22   is finally resolved.

23           MR. KIRBY:  Well, I'm not sure that's exactly

24   right.  It -- the -- it hugely matters to them what the --

25   how the Trustee computes the profit withdrawals as well.  It

1    will affect not only the --

2              THE COURT:  Yeah.

3              MR. KIRBY:  I mean, assuming that the inter-

4    account transfer methodology is ultimately approved, it's

5    still going to affect what cash was in the account as --

6              THE COURT:  I understand that.  It's really a

7    question of timing that, even if the discovery is permitted,

8    it's not going to delay the ultimate resolution of your

9    clients' claims, and many other claims, because there are so

10   many contested issues of law that have been resolved at the

11   District Court level but have not been resolved at the

12   Circuit level and relate to the computation of the net

13   equity claim.

14             MR. KIRBY:  Well, in every other situation, the

15   Trustee has issued final determinations using his inter-

16   account transfer methodology to calculate the claim and

17   issue a claim determination.

18             THE COURT:  Right, but if somebody doesn't object

19   then they don't object.  I think, if your client objected --

20             MR. KIRBY:  Right.  But our clients never received

21   such a determination.  That's our point.  And so, what we've

22   been told -- first, we were --

23             THE COURT:  They never received a determination of

24   their claim?

25             MS. BROWN:  These particular claims were -- we had

```
 1   502(d) counts against these accounts when we still had the
 2   six-year fraudulent transfer claims.
 3            THE COURT:  Right.
 4            MS. BROWN:  We dismissed the 502(d) counts
 5   following the 546(e) ruling, and we have not yet determined
 6   the claims.  We have been in discussions with Mr. Kirby
 7   about the amount of the claims under the net equity
 8   methodology.  And Mr. Kirby has indicated that those amounts
 9   aren't satisfactory to his client, given the pendency of the
10   profit withdrawal issue.
11            THE COURT:  If satisfactory?
12            MS. BROWN:  What's that?
13            THE COURT:  I'm sorry, you said it was --
14            MS. BROWN:  They're not satisfactory.
15            THE COURT:  Well, I understand that.  But every
16   time we issue an object -- a determination, it's usually not
17   satisfactory to the claimant.
18            MS. BROWN:  Sure.
19            THE COURT:  So, why haven't you resolved their
20   claim?
21            MS. BROWN:  We had been in discussion -- they had
22   reached out to us on the potential of settling those claims.
23            THE COURT:  All right.
24            MS. BROWN:  But, if Mr. Kirby likes, we can issue
25   a determination, Your Honor, immediately.
```

1       THE COURT: I mean, if you want, they'll issue a
2   determination, and you'll file an objection, I guess.
3       MR. KIRBY: Well, so, the -- we're -- what --
4   where we are today is we've been told that our claims
5   absorbed in this profit withdrawal. So, we've been -- our
6   client's been forced to participate in that.
7       THE COURT: Let me just say -- I understand. But
8   it sounds to me like the determination that they're going to
9   issue are going to be -- is going to be based on the inter-
10  account method that the Trustee has been following, to which
11  you object, and the profit withdrawal method, to which you
12  also object. So, I guess they can issue a determination,
13  but then you'll have to file a formal objection, if that's
14  what you want. I think that's a side issue.
15      MR. KIRBY: Right.
16      THE COURT: You know what the issues are.
17      MR. KIRBY: I understand what the issues are. But
18  the real issue is that what the Trustee is saying is, well -
19  - and at the -- I understand it's at the prompting of the
20  Court -- that maybe these Madoff employees might know
21  something. Okay? It's really a shot in the dark, really.
22      THE COURT: Somebody came up with that method of
23  bookkeeping.
24      MR. KIRBY: I understand. But what's curious
25  about this whole thing is that what the account statement

1    said -- now, understand that what we understand even the

2    Trustee is saying is all of these calculations on the

3    account statements, they were all fraudulent transactions.

4    But, for our clients, we understand that these were debits

5    against credits.  But the credits are very large for our

6    clients.  Each month, their credits were very large.

7             And so, from the clients' perspective, they know

8    what they received.  They know what -- but what they're not

9    -- what they're -- what's lost on them is how it's likely

10   that Annette Bongiorno is going to remember, "Oh, yeah, I

11   remember giving a check to Dr. Blum," when the record --

12   there's no request like that.  There are over 300

13   transactions in their accounts.  They would certainly

14   remember cashing 300-odd --

15             THE COURT:  I suspect that is -- the employees do

16   know about the profit withdrawal.  It's more of a general

17   sense of what it means.  I doubt that any -- regardless of

18   what it means, I doubt anybody's going to remember that a

19   check was issued to either of the Drs. Blum.  And it may be

20   that, at a trial, they'll say, "Look, we never got anything.

21   They don't have any records.  And, regardless of what the

22   Collura report says or the Greenblatt report says, you

23   shouldn't reduce our net equity by the amount of these

24   profit withdrawals," and they may believe you --

25             MR. KIRBY:  Right.

```
 1              THE COURT:  And conclude.  But this is really --
 2   we're just really at the discovery stage.  Ms. Chaitman and
 3   your -- you can participate.  You want to take the
 4   deposition of Mr. Madoff on this profit withdrawal issue,
 5   and only this profit withdrawal issue.  I understand that a
 6   proposed order has been settled.
 7              MS. BROWN:  Yes.
 8              THE COURT:  In that matter.  So, the matters
 9   aren't really ready to be resolved.  And if there's someone
10   who has personal knowledge of how BLMIS kept these records,
11   it would be helpful in understanding the issue.
12              MR. KIRBY:  All right.  Well, Your Honor, okay.
13   What -- as you pointed out, my understanding is the criminal
14   appeal was argued in the early -- last month, late last
15   month.
16              THE COURT:  I don't know; I'm still reading about
17   it in --
18              MR. KIRBY:  Okay.  Well, that's my understanding.
19              THE COURT:  All right.
20              MR. KIRBY:  And the likelihood that the Second
21   Circuit would issue a decision within the 90 days is
22   problematic, or --
23              THE COURT:  Well, that's why I raised it, and I
24   assume they'll seek review in the Supreme Court if they
25   lose.
```

Page 13

1           MR. KIRBY:  Exactly.  So, now, what's going to

2    happen in 90 days if the Circuit hasn't issued a decision?

3    They're going to come back here and say, "Well, we need more

4    time"?  And what happens if they do petition for cert?  They

5    have nothing to lose.

6           THE COURT:  What's your response to that?

7           MS. BROWN:  I mean, I think that --

8           THE COURT:  Is 90 days a hard deadline?

9           MS. BROWN:  I don't want to commit today to not

10   seeking any further extensions.  But Your Honor might decide

11   at that point that it's gone on long enough, we've given you

12   an opportunity, and it's not happening.  So, I mean, I think

13   that day has yet to come.  But we -- the one point I do want

14   to make is that we have not had access to these employees

15   for the last seven and a half years.

16          THE COURT:  Well, but you can -- the point that

17   Mr. Kirby made is you could have -- certainly you could have

18   taken their depositions or sought to take their depositions

19   since last summer.  I suspect they wouldn't have spoken to

20   you.

21          MS. BROWN:  No.  And it just --

22          THE COURT:  And that's part of the problem.  And I

23   -- you know, I understand part of what you're saying, Mr.

24   Kirby, in, putting Madoff aside, these employees are not

25   going to talk, if ever, until their convictions are final.

1          MR. KIRBY:  Well, I don't -- just don't want to

2  have an open-ended extension where, in 90 days, they say,

3  "Well, it's -- the Circuit hasn't issued the decision, or

4  there's going to be a petition for cert."  I can't imagine

5  that -- why they would forego a petition for cert.  And

6  while that cert --

7          THE COURT:  I can't either.

8          MR. KIRBY:  And so, what I see is an open-ended.

9  We've said, "Look, if somebodies, in their infinite wisdom,

10 want to take Bernie Madoff's deposition, I'm willing to

11 leave the record open for that purpose."  But to leave it

12 open for something as speculative as this, and then

13 recognizing that that may be 90 days or 180 days or so

14 forth, that just sort of delays and delays.  And there's a

15 great cost to our clients of that delay.

16         THE COURT:  Okay, but then I come back to the

17 inter-account transfer issue.  That's going to hold it up

18 also.

19         MR. KIRBY:  Well, if our clients choose to pursue

20 that issue, yes, okay?

21         THE COURT:  Well, what -- fair enough.  Why don't

22 you serve them with the determination?  And see if he

23 objects based on the inter-account transfer calculations.

24         MS. BROWN:  I will do so, Your Honor.

25         THE COURT:  I'm sure he will. All right.  So,

```
 1   look, I'm inclined to grant it for 90 days.  I hear what
 2   you're saying, Mr. Kirby.  I'm not sure that the convictions
 3   are going to be resolved within 90 days.  On the other hand,
 4   Madoff may have been deposed and shed light on this, and the
 5   depositions may become unnecessary.
 6            MR. KIRBY:  And if, Your Honor -- I'm speculating,
 7   but it -- if Ms. Chaitman were to withdraw the dep -- her
 8   request for the deposition of Mr. Madoff?
 9            THE COURT:  You're asking me to speculate.
10            MR. KIRBY:  I'm -- yes, Your Honor.  Let's assume
11   that, okay?  Is there any reason to keep this record open?
12            THE COURT:  If, as, and when that event occurs,
13   we'll address it.
14            MR. KIRBY:  Okay.  Fair enough.
15            THE COURT:  Okay.  Thank you.
16            MS. BROWN:  Thank you, Your Honor.
17            THE COURT:  (indiscernible)
18
19            (Whereupon these proceedings were concluded at
20   10:14 PM)
21
22
23
24
25
```

1           C E R T I F I C A T I O N

2

3       I, Sonya Ledanski Hyde, certified that the foregoing

4   transcript is a true and accurate record of the proceedings.

5

6   Sonya Ledanski Hyde
    Digitally signed by Sonya Ledanski Hyde
    DN: cn=Sonya Ledanski Hyde, o, ou, email=digital1@veritext.com, c=US
    Date: 2016.04.22 16:23:48 -04'00'

7

8   **Sonya Ledanski Hyde**

9

10

11

12

13

14

15

16

17

18

19

20  **Veritext Legal Solutions**

21  **330 Old Country Road**

22  **Suite 300**

23  **Mineola, NY 11501**

24

25  **Date:  April 5, 2016**