## RELEASE AND SETTLEMENT AGREEMENT

This Release and Settlement Agreement, dated as of March 16, 2016 ("Agreement") is made by and between Irving H. Picard, in his capacity as the trustee ("Trustee") for the liquidation proceedings under the Securities Investor Protection Act of 1970, as amended, 15 U.S.C. §§ 78aaa, et seq. ("SIPA") of Bernard L. Madoff Investment Securities LLC ("BLMIS") and the substantively consolidated Chapter 7 case of Bernard L. Madoff ("Madoff") pending before the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), and Silver Creek Long/Short Holdings, L.L.C. ("L/S Holdings"). The Trustee and L/S Holdings shall be hereinafter referred to individually as a "Party" and collectively as the "Parties."

## BACKGROUND

A.    BLMIS and its predecessor were registered broker-dealers and members of the Securities Investor Protection Corporation ("SIPC").

B.    On December 11, 2008 (the "Filing Date"), the Securities and Exchange Commission ("SEC") filed a complaint in the United States District Court for the Southern District of New York (the "District Court") against BLMIS and Madoff.

C.    On December 15, 2008, the District entered an order under SIPA, which, in pertinent part, appointed the Trustee for the liquidation of the business of BLMIS under section 5(b)(3) of SIPA and removed the case to the Bankruptcy Court under section 5(b)(4) of SIPA, where it is pending as Case No. 08-01789 (SMB) (the "SIPA Proceeding"). The Trustee is duly qualified to serve and act on behalf of the BLMIS estate (the "BLMIS Estate"). By Order dated June 9, 2009, the estate of Madoff was substantively consolidated with the BLMIS Estate.

D.    Under SIPA, the Trustee is charged with the responsibility to marshal and liquidate the assets of BLMIS for distribution to BLMIS customers and others in accordance with SIPA in satisfaction of allowed claims, including through the recovery of avoidable transfers such as preference payments and fraudulent transfers made by BLMIS.

E.    The Trustee's claims against transferees who received avoidable transfers from BLMIS arise under SIPA, including sections 78fff(b), 78fff-1(a) and 78fff-2(c)(3), sections 105(a), 541, 544, 547, 548, 550(a) and 551 of the Bankruptcy Code, the New York Debtor and Creditor Law § 270 et seq. (McKinney 2001) and other applicable laws.

F.    On December 7, 2010, the Trustee commenced an adversary proceeding in the Bankruptcy Court against Tremont Group Holdings, Inc. and related entities (Adv. Pro. No. 10-5310) (the "Tremont Lawsuit"), including the Rye Select Broad Market Fund, LP ("Broad Market Fund") and Rye Select Broad Market Prime Fund, LP ("Prime Fund"). The Tremont Lawsuit sought, *inter alia*, to avoid and recover all transfers from BLMIS made to the named defendants in the Tremont Lawsuit on the basis that the transfers were fraudulent.

G.    On September 22, 2011, the Bankruptcy Court approved a settlement in the Tremont Lawsuit, including a settlement of Trustee's claims against the Broad Market Fund and

Prime Fund (the "Tremont Settlement"). The Tremont Settlement was appealed, and the District Court entered an order dismissing the appeal on June 26, 2012. The District Court's order was then appealed to the Second Circuit, however, that appeal was subsequently withdrawn on or about October 25, 2012. The Tremont Settlement subsequently closed on or about November 6, 2012 pursuant to its terms.

      H.     The Tremont Settlement provides that the making of settlement payments by the Tremont settling defendants "shall not, and are not, intended to release, waive, prejudice, or limit Trustee's rights and ability to pursue any actions or claims . . . available to him against any non-party to the Agreement, including, but not limited to," a number of entities that includes L/S Holdings.

      I.     The Trustee asserts that he has claims pursuant to Section 550 of the Bankruptcy Code and/or other statutory and common law grounds against L/S Holdings and other entities, funds and/or individuals related to L/S Holdings (collectively, the "Silver Creek Parties"), as subsequent transferees of funds originating from BLMIS, based on transfers received from the Broad Market Fund ("Broad Market Fund Subsequent Transfers") and from the Prime Fund ("Prime Fund Subsequent Transfers").

      J.     In connection with this settlement, the Silver Creek Parties do not admit or concede, and expressly deny, the factual basis and legal validity of the Trustee's claims.

      K.     The Parties previously entered into a series of stipulations tolling the statute of limitations for claims that could be brought by Trustee.

      L.     The Parties have engaged in pre-litigation, arms-length discussions in an attempt to resolve the Trustee's claims and/or potential claims against the Silver Creek Parties prior to filing a complaint with the Bankruptcy Court. Such discussions have resulted in this Agreement.

      M.     The Parties now desire to settle any and all claims, potential claims, and disputes the Parties may have against each other with respect to the Broad Market Fund Subsequent Transfers and Prime Fund Subsequent Transfers without the expense, delay and uncertainty of litigation.

      **NOW, THEREFORE**, it is hereby **AGREED** by and between the Parties to the Agreement, for the good and valuable consideration set forth herein, the adequacy and sufficiency of which is recognized for all purposes, that:

      1.     Payment to Trustee. L/S Holdings shall pay or cause to be paid to the Trustee within ten (10) days of the Effective Date (as defined by paragraph 5) the sum of Nine Million United States Dollars ($9,000,000.00) (the "Settlement Payment") in full and final settlement and satisfaction of all claims or potential claims arising out of or related to the Broad Market Fund Subsequent Transfers and the Prime Fund Subsequent Transfers. The Settlement Payment may be made by: (i) wire transfer of immediately available funds to Trustee's account (subject to Trustee providing appropriate wire instructions), or (ii) bank or cashier's check made payable to "Irving H. Picard, Trustee for the liquidation of Bernard L. Madoff Investment Securities LLC,"

2

provided that satisfaction of Trustee's obligations hereunder shall be conditioned on the collection of such funds by Trustee.

2. **Release by the Trustee.** In consideration for the covenants and agreements in this Agreement and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, except with respect to the obligations, rights, and considerations arising under this Agreement, upon receipt of the Settlement Payment (the "Release Effectiveness Date"), the Trustee on behalf of himself, BLMIS, and its consolidated estates, shall release, acquit, and forever discharge L/S Holdings and its current and former affiliated entities, members, managing members, and individuals, including, but not limited to, Silver Creek Long/Short Partners, L.P., Silver Creek Capital Management, L.L.C., Eric Dillon, and each of their respective representatives, agents, family members, successors and/or assigns (as applicable) (collectively referred to herein as the "Silver Creek Released Parties"), from any and all past, present, or future claims or causes of action (including any suit, petition, demand, or other claim in law, equity, or arbitration) and from any and all allegations of liability or damages (including any allegation of duties, debts, reckonings, contracts, controversies, agreements, promises, damages, responsibilities, covenants, or accounts), of whatever kind, nature, or description, direct or indirect, in law, equity or arbitration, absolute or contingent, in tort, contract, statutory liability, or otherwise, based on strict liability, negligence, gross negligence, fraud, breach of fiduciary duty, or otherwise (including attorneys' fees, costs, or disbursements), known or unknown, existing as of the date of the Effective Date that are, have been, could have been, or might in the future be asserted by the Trustee against the Silver Creek Released Parties based on, arising out of, or in any way related to the Broad Market Fund Subsequent Transfers and Prime Fund Subsequent Transfers, except that the Trustee retains the right to enforce the terms and conditions of this Agreement.

3. **Release by L/S Holdings.** In consideration for the covenants and agreements in this Agreement and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, except with respect to the obligations, rights, and considerations arising under this Agreement, upon the Release Effectiveness Date, L/S Holdings, on behalf of itself and all other Silver Creek Released Parties, shall release, acquit, and forever discharge the Trustee and all his agents, representatives, attorneys, employees, and professionals, and BLMIS and its consolidated estate (collectively referred to herein as the "Trustee Released Parties"), from any and all past, present, or future claims or causes of action (including any suit, petition, demand, or other claim in law, equity, or arbitration) and from any and all allegations of liability or damages (including any allegation of duties, debts, reckonings, contracts, controversies, agreements, promises, damages, responsibilities, covenants, or accounts), of whatever kind, nature, or description, direct or indirect, in law, equity or arbitration, absolute or contingent, in tort, contract, statutory liability, or otherwise, based on strict liability, negligence, gross negligence, fraud, breach of fiduciary duty, or otherwise (including attorneys' fees, costs, or disbursements), known or unknown, existing as of the date of the Effective Date (as defined in paragraph 5) that are, have been, could have been, or might in the future be asserted by the Silver Creek Released Parties against the Trustee Released Parties based on, arising out of, or in any way related to BLMIS or Madoff, including the Broad Market Fund Subsequent Transfers and Prime Fund Subsequent Transfers, except that L/S Holdings retains the right to enforce the terms and conditions of this Agreement.

4. <u>Unknown Claims</u>.  Unknown Claims shall mean any released claims pursuant to paragraphs 2 and 3 of the Agreement ("<u>Released Claims</u>") that the Parties do not know or suspect to exist in their favor at the time of giving the release in this Agreement that, if known by them, might have affected their settlement and release in this Agreement.  With respect to any and all released claims in paragraphs 2 and 3 of this Agreement, the Parties shall expressly waive or be deemed to have waived, the provisions, rights and benefits of California Civil Code section 1542 (to the extent it applies herein), which provides:

<u>A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.</u>

The Parties expressly waive, and shall be deemed to have waived, any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, or principle of common law or foreign law, that is similar, comparable, or equivalent in effect to California Civil Code section 1542.  The Trustee Released Parties and/or the Silver Creek Released Parties may hereafter discover facts in addition to or different from those that they now know or believe to be true with respect to the subject matter of the Released Claims, but the Parties shall expressly have and be deemed to have fully, finally, and forever settled and released any and all Released Claims, known or unknown, suspected or unsuspected, contingent or noncontingent, whether or not concealed or hidden, that now exist or heretofore have existed, upon any theory of law or equity now existing or coming into existence in the future, including conduct that is negligent, reckless, intentional, with or without malice, or a breach of any duty, law, or rule, without regard to the subsequent discovery or existence of such different or additional facts.  The Parties acknowledge and shall be deemed to have acknowledged that the foregoing waiver was separately bargained for and a key element of the settlement of which this release is a part.

5. <u>Court Approval; Effective Date; Termination</u>.  This Agreement is subject to, and shall become effective and binding on the Parties upon, the Bankruptcy Court's approval of this Agreement in the SIPA Proceeding by an order that is no longer subject to appeal, review, or rehearing ("<u>Effective Date</u>").  The Trustee shall use his reasonable efforts to obtain approval of the Agreement in the SIPA Proceeding as promptly as practicable after the date of this Agreement.  If this Agreement has not become effective as provided in this paragraph within 360 days after the date of this Agreement (or within such additional time as mutually agreed upon by the Parties), then (a) this Agreement (other than this paragraph) shall terminate and be void; (b) all of the statements, consents, and agreements contained in the Agreement (other than this paragraph) shall be void; and (c) neither the Trustee nor L/S Holdings may use or rely on any such statement, consent, or agreement in any public statement or litigation involving the SIPA Proceeding, or any case or proceeding relating to BLMIS, or Madoff.

4

6. <u>L/S Holdings' and Trustee's Authority</u>. L/S Holdings represents and warrants to the Trustee on behalf of itself and the other Silver Creek Released Parties that, as of the date hereof, it has the full power, authority, and legal right to execute and deliver, and to perform its obligations under, this Agreement and has taken all necessary action to authorize the execution, delivery, and performance of its obligations under this Agreement and the obligations of the other Silver Creek Released Parties with respect to Paragraphs 3 and 4 of this Agreement. The Trustee represents and warrants to L/S Holdings on behalf of himself and the other Trustee Released Parties that, as of the date hereof, and subject to the approval of the Bankruptcy Court as set forth in paragraph 5 above, he has the full power, authority, and legal right to execute and deliver, and to perform his obligations under, this Agreement and has taken all necessary action to authorize the execution, delivery, and performance of his respective obligations under this Agreement and the obligations of the other Trustee Released Parties with respect to Paragraphs 2 and 4 of this Agreement.

7. <u>Further Assurances</u>. The Parties shall execute and deliver any document or instrument reasonably requested by any of them after the date of this Agreement to effectuate the intent of this Agreement.

8. <u>Entire Agreement</u>. This Agreement constitutes the entire agreement and understanding between and among the Parties and supersedes all prior agreements, representations, and understandings concerning the subject matter hereof, with the exception of any past and future agreements between the Parties to toll the applicable statute of limitations.

9. <u>No Admission</u>. This Agreement and all negotiations, statements, and proceedings in connection therewith are not, will not be argued to be, and will not be deemed to be a presumption, concession, or admission by any Party of any fault, liability, or wrongdoing whatsoever. This Agreement may not be offered or received in evidence or otherwise referred to in any civil, criminal, or administrative action or proceeding as evidence of any fault, liability, or wrongdoing whatsoever.

10. <u>Amendment; Waiver</u>. This Agreement may not be terminated, amended or modified in any way except in a written instrument signed by all Parties. No waiver of any provision of this Agreement shall be deemed to constitute a waiver of any other provision hereof, whether or not similar, nor shall such waiver constitute a continuing waiver.

11. <u>Assignability</u>. No Party hereto may assign its rights under this Agreement without the prior written consent of each of the other Parties hereto.

12. <u>Successors Bound</u>. This Agreement shall be binding upon, and inure to the benefit of, each of the Parties and their successors and permitted assigns.

13. <u>No Third Party Beneficiary</u>. Except as otherwise reflected herein, the Parties do not intend to confer any benefit by or under this Agreement upon any person or entity other than the Parties hereto and their respective successors and permitted assigns.

14. <u>Applicable Law</u>. This Agreement shall be construed and enforced in accordance with the laws of the State of New York, without regard to its conflict of laws provisions.

15. <u>Exclusive Jurisdiction</u>. The Parties agree that the Bankruptcy Court shall have exclusive jurisdiction over any and all disputes between or among the Parties, whether in law or equity, arising out of or relating to this Agreement, or any provision thereof, and the Parties hereby consent to and submit to the jurisdiction of the Bankruptcy Court for any such action. In the event the SIPA proceeding is closed by a final decree and not reopened, the Parties agree that any dispute arising out of this Agreement, or any provision thereof, may be brought in the United States District Court for the Southern District of New York.

16. <u>Expenses</u>. Each Party shall bear its respective expenses relating to or arising out this Agreement, including, but not limited to, fees for attorneys, experts, consultants, accountants and other advisors.

17. <u>Captions and Rules of Construction</u>. The captions in this Agreement are inserted only as a matter of convenience and for reference and do not define, limit, or describe the scope of this Agreement or the scope or content of any of its provisions. Any reference in this Agreement to a paragraph is to a paragraph of this Agreement. "Includes" and "including" are not limiting.

18. <u>Counterparts, Electronic Copy of Signatures</u>. This Agreement may be executed and delivered in any number of counterparts, each of which when so executed and delivered shall be deemed to be an original and all of which shall constitute one and the same document. The Parties may evidence their execution of this Agreement by delivery to the other Parties of scanned or faxed copies of their signatures with the same effect as the delivery of an original signature.

19. <u>Negotiated Agreement</u>. This Agreement has been fully negotiated by the Parties. Each Party acknowledges and agrees that this Agreement has been drafted jointly, and the rule that ambiguities in an agreement or contract may be construed against the drafter shall not apply in the construction or interpretation of this Agreement.

20. <u>Severability</u>. In the event that any term or provision of this Agreement or any application thereof is deemed to be invalid or unenforceable, the remainder of this Agreement and any other application of such term or provision shall not be affected thereby.

21. <u>Notices</u>. Any notices under this Agreement shall be in writing, shall be effective when received and may be delivered only by hand, by overnight delivery service, by fax, or by electronic transmission to:

| If to the Trustee: | If to L/S Holdings, c/o: |
|---|---|
| Irving H. Picard<br>Baker & Hostetler LLP<br>45 Rockefeller Plaza<br>New York, New York 10111<br>Facsimile: (212) 589-4201<br>E-mail: ipicard@bakerlaw.com | Dana M. Seshens<br>Davis, Polk & Wardwell LLP<br>450 Lexington Avenue<br>New York, New York 10017<br>Facsimile: (212) 701-5855<br>Email: dana.seshens@davispolk.com |
| with copies to:<br>Eric R. Fish<br>Baker & Hostetler LLP<br>45 Rockefeller Plaza<br>New York, New York 10111<br>Facsimile: (212) 589-4201<br>E-mail: efish@bakerlaw.com | |

*[SIGNATURE PAGES TO FOLLOW]*

**IN WITNESS WHEREOF**, each Party has caused this Agreement to be duly executed and delivered as of the date set forth above.

_____
IRVING H. PICARD,
AS TRUSTEE FOR THE LIQUIDATION
PROCEEDINGS OF BERNARD L.
MADOFF INVESTMENT SECURITIES
LLC AND THE SUBSTANTIVELY
CONSOLIDATED BANKRUPTCY CASE
OF BERNARD L. MADOFF

Sworn and subscribed before me this
21st day of March, 2016.

_____
Notary Public

[TRUSTEE SIGNATURE PAGE TO SETTLEMENT AGREEMENT]

SONYA M. GRAHAM
Notary Public, State of New York
No. 01GR6133214
Qualified in Westchester County
Commission Expires: 9/12/20 17

SILVER CREEK LONG/SHORT
HOLDINGS, L.L.C.

By: _____
Name: Eric E. Dillon
Title: Manager of Silver Creek Capital Management LLC,
its Manager

Sworn and subscribed before me this
17th day of March, 2016.

_____
Notary Public Karen R. Stanley

[SILVER CREEK LONG/SHORT HOLDINGS, L.L.C.
SIGNATURE PAGE TO SETTLEMENT AGREEMENT]

9