**Baker & Hostetler LLP**

45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Seanna R. Brown
Nicholas J. Cremona
Jorian L. Rose
Amy E. Vanderwal
Stephanie A. Ackerman

Hearing Date:  June 15, 2016
Hearing Time:  10:00 AM (EST)
Objection Deadline:  May 23, 2016

*Attorneys for Irving H. Picard, Trustee for the*
*Substantively Consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities LLC*
*and the Estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (SMB) |
| Plaintiff-Applicant, | SIPA Liquidation |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |

**TRUSTEE'S MOTION AND MEMORANDUM TO AFFIRM HIS DETERMINATIONS
DENYING CLAIMS OF CLAIMANTS HOLDING INTERESTS IN WILLIAM M.
PRESSMAN INC., WILLIAM PRESSMAN INC. ROLLOVER
ACCOUNT, AND AGL LIFE ASSURANCE COMPANY**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................... 1

BACKGROUND ............................................................................................... 2

    A.    THE COMMENCEMENT OF THE SIPA PROCEEDING ................................ 2

    B.    THE CORPORATIONS' STRUCTURE, BLMIS ACCOUNTS, AND
        CLAIMS ........................................................................................ 3

        1.    William M. Pressman Inc. ........................................................ 4

        2.    William Pressman Inc. Rollover ............................................... 6

        3.    AGL Life Assurance Company ................................................ 7

    C.    THE BLMIS ACCOUNT RECORDS ................................................. 8

    D.    THE CLAIMS ................................................................................ 9

    E.    THE CUSTOMER DECISIONS ....................................................... 10

        1.    The Initial Feeder Fund Motion ............................................. 10

        2.    The ERISA Motion ................................................................ 12

        3.    Other Customer Motions ........................................................ 13

ARGUMENT .................................................................................................. 15

CONCLUSION ............................................................................................... 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Adler, Coleman Clearing Corp.*,
  216 B.R. 719 (Bankr. S.D.N.Y. 1998) ...................................................................16

*Aozora Bank Ltd. v. Sec. Inv'r Prot. Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*,
  480 B.R. 117 (S.D.N.Y. 2012) ......................................................................10, 11

*Appleton v. First Nat'l Bank of Ohio*,
  62 F.3d 791 (6th Cir. 1995) ...............................................................................16

*In re Beacon Assocs. Litig.*,
  745 F. Supp. 2d 386 (S.D.N.Y. 2010) ..................................................................2

*In re Bernard L. Madoff Inv. Sec. LLC*,
  654 F.3d 229 (2d Cir. 2011) ........................................................................ *passim*

*In re Klein, Maus & Shire, Inc.*,
  301 B.R. 408 (Bankr. S.D.N.Y. 2003) ................................................................21

*Kruse v. Sec. Inv'r Prot. Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*,
  708 F.3d 422 (2d Cir. 2013) ........................................................................ *passim*

*In re Lehman Bros. Inc.*,
  462 B.R. 53 (Bankr. S.D.N.Y. 2011) ..................................................................15

*In re Lehman Bros., Inc.*,
  791 F.3d 277 (2d Cir. 2015) ...............................................................................16

*Mishkin v. Siclari (In re Adler, Coleman Clearing Corp.)*,
  277 B.R. 520 (Bankr. S.D.N.Y. 2002) ............................................................3, 21

*Sec. Inv'r Prot. Corp. v. 2427 Parent Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*,
  779 F.3d 74 (2d Cir. 2015) ................................................................................19

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff)*,
  515 B.R. 161 (Bankr. S.D.N.Y. 2014) ....................................................13, 17, 21

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff Inv. Sec. LLC)*,
  454 B.R. 285 (Bankr. S.D.N.Y. 2011) ....................................................10, 11, 21

## TABLE OF AUTHORITIES
### (continued)

Page(s)

*Sec. Inv'r Prot. Corp. v. Jacqueline Green Rollover Account,*
   Nos. 12 Civ. 1039 (DLC), 12 Civ. 1139 (DLC), 2012 WL 3042986 (S.D.N.Y.
   July 25, 2012) .......................................................................................................................12

*Sec. Inv'r Prot. Corp. v. Morgan, Kennedy & Co., Inc.,*
   533 F.2d 1314 (2d Cir. 1976) ..........................................................................12, 16, 17, 20

*SEC v. Madoff,*
   No. 1:08-cv-10791-LLS, 2008 WL 5197070 (S.D.N.Y. filed Dec. 11, 2008) .........................2

*Stafford v. Giddens (In re New Times Sec. Servs., Inc.),*
   463 F.3d 125 (2d Cir. 2006) ...............................................................................11, 15, 16, 21

**Statutes**

15 U.S.C. § 78aaa *et seq.* ............................................................................................................1

15 U.S.C. § 78eee(a)(4) ................................................................................................................2

15 U.S.C. § 78eee(b)(3) ................................................................................................................2

15 U.S.C. § 78eee(b)(4) ................................................................................................................2

15 U.S.C. § 78fff-1(a) ...................................................................................................................2

15 U.S.C. § 78fff-2(b) .................................................................................................................16

15 U.S.C. § 78fff-3(a) ...................................................................................................................3

15 U.S.C. § 78*lll*(2) .................................................................................................2, 3, 12, 15

15 U.S.C. § 78*lll*(4) ....................................................................................................................3

15 U.S.C. § 78*lll*(11) ............................................................................................................3, 19

Dodd-Frank Wall Street Reform and Consumer Protection Act. Pub. L. No. 111-
   203, § 983(b), 124 Stat. 1931 (2010) ................................................................................15

FLA. STAT. § 607.0302(3) ...........................................................................................................18

15 PA. STAT. § 1501 ....................................................................................................................18

15 PA. STAT. § 1502(a)(4) ...........................................................................................................18

15 PA. STAT. § 3102 ....................................................................................................................18

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

**Rules**

FED. R. CIV. P. 36 ..................................................................................................................8

FED. R. CIV. P. 36(a)(3) ......................................................................................................5, 20

**Other Authorities**

1–12 *Collier on Bankruptcy* ¶ 12.12 (16th ed. 2012) ..................................................................12

Irving H. Picard, as trustee ("Trustee") for the substantively consolidated liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15 U.S.C. § 78aaa *et seq.* ("SIPA"),[1] and the chapter 7 estate of Bernard L. Madoff ("Madoff"), respectfully submits this combined motion and memorandum of law (the "Motion") to affirm the denial of eighteen (18) claims filed by claimants (the "Objecting Claimants") who objected to the Trustee's determinations and who held interests in one of the following: William M. Pressman Inc. ("Pressman Inc."); William Pressman Inc. Rollover Account ("Pressman Rollover"); or AGL Life Assurance Company ("AGL"); (collectively, the "Corporations"). The Objecting Claimants are specifically identified in Exhibit 2 to the Declaration of Vineet Sehgal ("Sehgal Decl.") filed herewith. This Motion is based upon the law set forth below as well as the facts set forth in the accompanying Sehgal Declaration and the declaration of Stephanie Ackerman ("Ackerman Decl.").

## PRELIMINARY STATEMENT

The Objecting Claimants seek customer status in this SIPA proceeding, despite the fact that they did not have accounts in their name and had no direct financial relationship with BLMIS. Instead, they invested in the Corporations, each of which had a BLMIS account, and invested corporate assets with BLMIS, and all but one of which filed its own claim with the Trustee.[2] The case is governed by the Second Circuit decision *Kruse et al. v. Sec. Inv'r Prot. Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*, 708 F.3d 422 (2d Cir. 2013) and the many related decisions in this SIPA proceeding, referenced in Section E *infra*, involving the question of who

---

[1] For convenience, subsequent references to sections of the Securities Investor Protection Act shall be denoted simply as "SIPA § __."

[2] Pressman Rollover did not file a direct claim with the Trustee. The Corporations have been grouped together in this Motion because the Trustee believes that they represent all of the remaining corporation BLMIS account holders of which a number of investors also claim "customer" status.

is a "customer" under SIPA.  The current Motion seeks to apply these decisions to the Objecting

Claimants through entry of an order affirming the Trustee's denial of their claims as listed in

Exhibit 2 to the Declaration of Vineet Sehgal, disallowing their claims, and overruling the related

claims objections on the grounds that Claimants are not "customers" as such term is used at

SIPA § 78*lll*(2).[3]

## BACKGROUND

### A.    THE COMMENCEMENT OF THE SIPA PROCEEDING

The basic facts of the BLMIS fraud are widely known and have been recounted in

numerous decisions.  *See, e.g.*, *In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d 229, 231 (2d

Cir. 2011); *In re Beacon Assocs. Litig.*, 745 F. Supp. 2d 386, 393–94 (S.D.N.Y. 2010).   On

December 11, 2008, the Securities and Exchange Commission ("SEC") filed a complaint in the

District Court against Madoff and BLMIS, captioned *SEC v. Madoff*, No. 1:08-cv-10791-LLS,

2008 WL 5197070 (S.D.N.Y. filed Dec. 11, 2008), alleging fraud through the investment advisor

activities of BLMIS.  The SEC consented to the consolidation of its case with an application of

the Securities Investor Protection Corporation ("SIPC").  Thereafter, SIPC filed an application

under SIPA § 78eee(a)(4) alleging that because of its insolvency, BLMIS needed SIPA

protection.  The District Court appointed the Trustee under SIPA § 78eee(b)(3) and removed the

proceeding to this Court under SIPA § 78eee(b)(4).

Under SIPA, the Trustee is responsible, among other things, for recovering and

distributing customer property to a broker's customers, assessing claims, and liquidating other

assets of the firm for the benefit of the estate and its creditors.  A SIPA trustee has the general

powers of a bankruptcy trustee, in addition to the powers granted by SIPA.  SIPA § 78fff-1(a).

---

[3] The Trustee reserves all other bases for objections to the claims that are the subject of the Motion.

The statutory framework for the satisfaction of customer claims in a SIPA liquidation proceeding provides that "customers," as defined in SIPA § 78*lll*(2), share pro rata in "customer property," defined in SIPA § 78*lll*(4), to the extent of their "net equity," defined in SIPA § 78*lll*(11).  For each customer with a valid net equity claim, if the customer's share of customer property does not make her whole, SIPC advances funds to the SIPA trustee up to the amount of the customer's net equity, not to exceed $500,000 (the amount applicable to this case).  SIPA § 78fff-3(a).  It is the customer's burden to demonstrate he or she is entitled to customer status.  *Mishkin v. Siclari (In re Adler, Coleman Clearing Corp.)*, 277 B.R. 520, 557 (Bankr. S.D.N.Y. 2002) ("[I]t is well-established in the Second Circuit that a claimant bears the burden of proving that he or she is a 'customer' under SIPA.").

On December 23, 2008, this Court entered a Claims Procedures Order.  *See* ECF No. 12.  Pursuant to that order, the Trustee determines claims eligible for customer protection under SIPA, claimants may object to the Trustee's determination of a claim by filing an objection in this Court, and the Trustee requests a hearing date for the objection and notifies the objecting claimant thereof.  *Id.*

## B.   THE CORPORATIONS' STRUCTURE, BLMIS ACCOUNTS, AND CLAIMS

The Objecting Claimants invested into one or more of the Corporations.  Six (6) claims were filed by Objecting Claimants with interests in Pressman Inc.; six (6) claims were filed by Objecting Claimants with interests in the Pressman Rollover account; and six (6) were filed by Objecting Claimants with interests in AGL.  *See* Sehgal Decl., ¶11, Ex. 2.  The claims of the Corporations themselves are not at issue in this Motion.  However, the motion does seek to overrule that portion of Pressman Inc.'s objection only insofar as it seeks customer status for the Objecting Claimants.

1.    **William M. Pressman Inc.**

BLMIS Account No. 1ZA733 is an account held in the name of William M. Pressman Inc., opened on or about January 13, 1993. Sehgal Decl., Ex. 4, AMF00035200. At the time the account was opened, William M. Pressman was the president and Marian C. Pressman was the treasurer/secretary. Sehgal Decl., Ex. 4, AMF00035211. At different times, Pressman Inc. maintained a mailing address in Delaware and Florida, but at all times was a Florida corporation. *See* Sehgal Decl., Ex. 4, AMF00035177, AMF00035191.

Over the life of account 1ZA733, virtually all of the correspondence between BLMIS and the accountholder was with the president, *i.e.*, William M. Pressman.[4] *See generally id.*; *see also* Sehgal Decl., Ex.4, AMF00035143-AMF00035196. None of the Pressman Inc. Objecting Claimants are identified in the customer file, or are mentioned as customers in the BLMIS books and records for purposes of BLMIS Account No. 1ZA733. *See generally*, Sehgal Decl., Ex. 4.

Only two of the Pressman Inc. Objecting Claimants responded to discovery requests.[5] Ackerman Decl. ¶¶8-10, Exs.1-2. In those responses, Ms. Harriet Barbuto concedes that "[a]ll investments/deposits were given to William Pressman," that he alone had control over the account, and she had no direct contact with BLMIS. Ackerman Decl., Ex. 1. She further admits that the account is not titled in her name, she received no communication from BLMIS and never deposited or withdrew any cash or securities directly from BLMIS. Ackerman Decl., Ex. 1. Ms. Barbuto further admitted that Mr. Pressman provided all statements and accountings for her investment in Pressman Inc. and the account's funds were kept separate from her own.

---

[4] William Pressman wrote to the Trustee stating that the investors in Pressman Inc. were individual "customers of BLMIS" and that Madoff knew and approved of the relationship. Sehgal Decl., Ex. 22, MWPTAP00259232-233. Nonetheless, none of their names appeared in the customer file and the statements were addressed to Pressman Inc. *See* Sehgal Decl., Ex. 4.

[5] Three of the indirect claimants, Ellen Lev Trust (Claim No. 3836), Bea Laub Estate (Claim No. 3842), Ilene May (Claim No. 3844) withdrew their objections after receiving the Trustee's discovery. ECF Nos. 8740, 8238, 8143.

4

Ackerman Decl., Ex. 1 ("Quarterly letters and checks were received from William Pressman with an accounting for each period.").

Ms. Alice Jacobs also responded to the Trustee's discovery requests. Ms. Jacobs, like Ms. Barbuto, admitted that the subject BLMIS account was not titled in her name, that she did not have an account in her name, never received correspondence directly from BLMIS, never deposited cash or securities with BLMIS, did not receive investment statements in her name, did not receive tax statements from BLMIS in her name, never entered into any contracts in her name at BLMIS, did not have any control, investment discretion or decision-making power over any investments at BLMIS, and her only relationship to BLMIS existed by way of her relationship to the Corporation. Ackerman Decl., Ex. 2.

The remaining investors in Pressman Inc. failed to respond to the Trustee's discovery. By failing to respond to the requests for admissions, each of them made the above-mentioned admissions made by Ms. Barbuto and Ms. Jacobs. *See generally* Ackerman Decl., ¶¶8,15 Ex. 6;[6] *see also* Fed. R. Civ. P. 36(a)(3).

Pressman Inc. filed a customer claim for the entire account. The Trustee denied the claim in its entirety because based on the Trustee's analysis the amount of money that Pressman Inc. withdrew from the account was greater than the amount that was deposited, making the account a "net winner." Thus, a determination letter was sent to Pressman Inc. denying its customer claim.[7]

---

[6] The Pressman Inc. Requests for Admissions, Ackerman Decl., Ex.7 (hereafter, "Pressman Inc. RFA___").

[7] As stated above, the motion does not seek to disallow the claim of the account holder, Pressman, Inc., or seek to overrule the related objection to the denial of that claim. (the "Pressman Objection"), ECF No. 3535. However, the Pressman Objection was also filed on behalf of Objecting Claimants Alice Jacobs, Shirley Blank, Alice Weiner, Harriet Barbuto, Evy Rosenfeld, and Sherman Rosenfeld. This motion seeks to overrule only that portion of the Pressman Objection that seeks customer status for those Objecting Claimants.

2.    **William Pressman Inc. Rollover**

BLMIS Account No. 1ZA734 is an account held in the name of William Pressman Inc.

Rollover Account, opened on or about January 13, 1993.  Sehgal Decl., Ex. 9, AMF00035331.

According to the customer file, virtually all of the correspondence between BLMIS and the

accountholder was with the president of Pressman Inc., *i.e.*, William M. Pressman.  *See* Sehgal

Decl., Ex. 9, AMF00035215-AMF00035316.  Like Pressman Inc., the account opening

documents were signed by William M. Pressman as a representative of Pressman Inc. *Id.*

AMF00035317-335.  The Pressman Rollover account was not registered as a separate

corporation and the tax identification number listed on the Pressman Rollover account opening

documents and customer statements is the Pressman Inc. identification number.[8]  And, like

Pressman Inc., at certain times during the year, Pressman Rollover maintained addresses both in

Delaware and Florida.  *See, e.g.*, Sehgal Decl., Ex. 9, AMF00035276.

The Pressman Rollover account customer file is devoid of references to any of the

Objecting Claimants.  *See generally* Sehgal Decl., Ex. 9.  All correspondence with BLMIS on

behalf of the account was handled by William M. Pressman and all deposits, withdrawals, and

transfers were directed by Mr. Pressman.  *Id.*

Only one of Pressman Rollover Objecting Claimants, Debra Tamblyn, responded through

her counsel to the Trustee's discovery requests.  Ackerman Decl., Ex. 3.  In the cover letter to

her responses Ms. Tamblyn admits that she "made no direct investments with BLMIS." And that

[a]ny investments she made were through William Pressman Inc. [R]ollover."  Ackerman Decl.,

Ex. 3.  This statement is supported by Ms. Tamblyn's admissions that she did not have an

account in her name at BLMIS, never deposited cash or securities with BLMIS, never received

---

[8] Compare Sehgal Decl., Ex. 9, AMF00035311 to Sehgal Decl., Ex. 4, AMF00035202; *see also* Sehgal Decl. Ex. 5
MWPTAP00259246; Ex. 10, MWPTAP00583440.

investment statements, correspondence or tax statements from BLMIS, and that she had no control, investment discretion or decision-making power over any investments at BLMIS. *See* Ackerman Decl. Ex. 3.[9]

Pressman Rollover did not file a customer claim for the entire account.

### 3.    **AGL Life Assurance Company**

The accountholder of BLMIS Account 1A0160 is AGL Life Assurance Co. Separate Account VL 84. *See* Sehgal Decl., Ex. 13. AGL Life Assurance Company is a Pennsylvania Insurance Business Corporation.[10] The account opening documents, dated November 28, 2007, identify Kent C. Keim, Senior Vice President of Administration for AGL Life Assurance Company as the account contact. Sehgal Decl., Ex. 13, AMF00149191. All correspondence on behalf of 1A0160 was between representatives of AGL Life Assurance Company and BLMIS and referenced only AGL Life Assurance Co. Separate Account VL 84. Sehgal Decl., Ex. 13, AMF00149192, AMF00149194. There is no mention of the Objecting Claimants.

AGL filed a customer claim for the entire account. The Trustee denied the claim in its entirety because based on the Trustee's analysis, the amount of money that AGL withdrew from the account was greater than the amount that was deposited, making the account a "net winner." Thus, a determination letter was sent to AGL denying its customer claim.[11]

AGL also filed claims on behalf of each of the AGL Objecting Claimants, six individual policies that AGL asserts are each entitled to a pre-determined "percentage interest" in AGL's

---

[9] Pressman Inc. Rollover Requests for Admissions, Ackerman Decl., Ex.    (hereafter, "Pressman Rollover. RFA___").

[10] According to a recent entity search with the Pennsylvania Secretary of State, AGL Life Assurance Company changed its name to Lombard International Life Assurance Company in or around October 2015. Ackerman Decl., Ex. 12.

[11] Subsequently, AGL filed an objection in response to the Trustee's determination denying its claim. AGL's direct claim and objection are not at issue in this motion.

Separate Account VL 84. Sehgal Decl., Exs. 15-20; (AGL Life Assurance Co. Separate Account VL 84FBO VL300723, VL300724, VL300725, VL300726, VL300727, and VL300728). In its customer claim for the entire account, AGL admits that only Separate Account VL84 "had a direct account with BLMIS" and that "separate claims [were] also . . . filed for those assets comprising . . . Separate Account VL84." Sehgal Decl., Ex. 14, MWPTAP00529281.

The Trustee served AGL on behalf of the Objecting Claimants with discovery. The Objecting Claimants objected to the Trustee's discovery as duplicative of discovery that would be served as part of the Trustee's ongoing adversary proceeding against AGL.[12]

*          *          *          *          *          *

As discussed *infra*, under both Florida and Pennsylvania law, the Corporations were treated as entities that owned their own property. Each had a BLMIS account in its name according to the books and records of BLMIS and entrusted its property to BLMIS for the purposes of purchasing securities. None of the Corporations was a bank, broker, or dealer.

## C.    THE BLMIS ACCOUNT RECORDS

The Corporations each maintained an account in its own name (the "Accounts," and each, an "Account") with BLMIS. The Objecting Claimants did not. Sehgal Decl., ¶33, Exs. 1-3. The records of BLMIS reflect money deposited or withdrawn by and on behalf of the Corporations,

---

[12] Specifically, by letter dated September 5, 2014, AGL objected to the Trustee's discovery requests because the information sought was "encompassed within pending litigation instituted by [our] firm . . . on behalf of the Trustee" and the Trustee may not use the "'Claimants' pending objections . . . as a means to obtain discovery relevant to the adversary proceeding." Ackerman Decl., Ex. 11; *see also* Picard v. Conn. Gen. Life Ins. Co., et al., Adv. Pro. No. 10-04979 (S.D.N.Y.).

The letter also states that AGL objects to the requests on the grounds that they (1) seek matter that is not reasonably calculated to lead to the discovery of admissible evidence; and are (2) overbroad and unduly burdensome. *Id.* Further, "AGL asserts that it "will vigorously contest any assertion by the Trustee that AGL's position in any way bars or limits AGL's ability to participate in future claims objections proceedings." *Id.* In light of ongoing settlement discussions, the Trustee did not seek to compel AGL to respond to the requests pursuant to Fed. R. Civ. P. 36. As such, the Trustee's motion as to the AGL Objecting Claimants is based on documents produced through the claims and objection process. If the AGL Objecting Claimants wish to provide discovery now, the Trustee would not object to an adjournment to allow discovery to proceed.

8

and not by the Objecting Claimants individually.  *See* Sehgal Decl., Exs. 4,9,13.  All of the

Objecting Claimants except AGL admit that BLMIS sent Account statements and related

communications to the Corporations, not the Objecting Claimants.  The BLMIS customer files

for these Accounts do not reference the particular interests held by Objecting Claimants in the

Corporations.  *See id.*

Because the Corporations each maintained an Account at BLMIS, and made deposits into

and withdrawals from that Account, the books and records of BLMIS reflect the amounts owing

and owed by the BLMIS estate for that Account.  The books and records of BLMIS do not, in

contrast, reflect deposits or withdrawals directly to or from BLMIS by the individual Objecting

Claimants with regard to any Corporation's BLMIS Account.  They also do not show what

amounts individual Objecting Claimants invested in, or withdrew from, the Corporations.  *See id.*

It was each Corporation that had the right to demand, on behalf of the Corporation, return of the

property entrusted to its Account, and each Corporation that is accordingly entitled to a customer

claim to the extent of its net equity.

## D.    <u>THE CLAIMS</u>

The claims at issue in this Motion involve interests in the Corporations.  Sehgal Decl. ¶¶8

-12, Exs. 1-3.  The Objecting Claimants, the eighteen (18) claims filed by them, and the

objections to determination of those claims, are specifically identified in Exhibits 2 and 3 to the

Sehgal Declaration.  The Trustee denied their claims because they lacked BLMIS accounts and

were not customers of BLMIS.  Sehgal Decl. ¶¶13-15.  Collectively, the Objecting Claimants

filed four (4) docketed objections to the Trustee's determination of their claims.  Sehgal Decl.

¶¶8-12, Exs. 1-3.  This Motion addresses all objections to the determination of the specified

claims by Objecting Claimants who are identified on Exhibit 2 of the Sehgal Decl.

9

Since receiving the four (4) docketed objections to the claims determinations, the Trustee served discovery on each of the Objecting Claimants seeking to determine their basis for claiming customer status, and inquiring into deposits, payments, communications, account openings, and their relationship with the account holder. Few of the Objecting Claimants responded, and even those that did provided no persuasive evidence of their entitlement to customer status under SIPA. *See* Ackerman Decl. ¶¶8, 13, 14; Exs. 4,5,6.

## E.    <u>THE CUSTOMER DECISIONS</u>

There have been twelve prior decisions in this proceeding dealing with whether investors in BLMIS accountholders could be treated as "customers" under SIPA; all of the decisions said they could not.

### 1.    <u>The Initial Feeder Fund Motion</u>

The Trustee's first motion regarding the definition of "customer" under SIPA was the Trustee's Motion To Affirm Trustee's Determinations Denying Claims of Claimants Without BLMIS Accounts In Their Names, Namely, Investors in Feeder Funds, filed on June 11, 2010, ECF No. 2416 (the "Initial Feeder Fund Motion"). On June 28, 2011, this Court issued its memorandum decision and order affirming the Trustee's denial of the claims. *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff),* 454 B.R. 285 (Bankr. S.D.N.Y. 2011), *aff'd sub nom. Aozora Bank Ltd. v. Sec. Inv'r Prot. Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*, 480 B.R. 117 (S.D.N.Y. 2012), *aff'd sub nom. Kruse v. Sec. Inv'r Prot. Corp.*, 708 F.3d 422 (2d Cir. 2013).

The Court found that, in light of the plain language of SIPA and relevant case law, the claimants in the Initial Feeder Fund Motion did not qualify as "customers" under SIPA. *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff Inv. Sec. LLC),* 454 B.R. at 290. The Court held that the claimants invested in, not through, those feeder funds,

and had no individual accounts at BLMIS. *Id.* at 297. It was the feeder funds that entrusted their monies with BLMIS for the purpose of trading or investing in securities—the touchstone of "customer" status—whereas the claimants purchased interests in the feeder funds. *Id.* at 299. The Court held that absent a direct relationship with BLMIS, the claimants sought a definition of "customer" that stretched the term beyond its limits. *Id.* at 302.

After the District Court affirmed, *Aozora Bank Ltd.*, 480 B.R. 117 (S.D.N.Y. 2012), the claimants appealed to the Second Circuit, which also affirmed. The Second Circuit confirmed that "[j]udicial interpretations of 'customer' status support a narrow interpretation of the SIPA's provisions." *Kruse*, 708 F.3d at 426 (quoting *Stafford et al. v. Giddens (In re New Times Sec. Servs., Inc.)*, 463 F.3d 125, 127 (2d Cir. 2006) (explaining that "the critical aspect of the 'customer' definition" was "the entrustment of cash or securities to the broker-dealer for the purposes of trading securities.")) *Kruse*, 708 F.3d at 426 (quoting *In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d at 236). The claimants failed to meet this fundamental requirement because the money sent to BLMIS belonged to the accountholders, not to the individual claimants, and the individual claimants therefore failed to establish that they had entrusted cash or securities to BLMIS. *Kruse*, 708 F.3d at 426–27. The Second Circuit also found that the individual claimants did not exhibit other indicia of customer status in their dealings (or lack of dealings) with BLMIS, including that they did not exert any control over the accounts at issue and that they were not reflected in BLMIS records. *Id.*

The Second Circuit held that the interests "sold by the Feeder Funds to investors . . . did not confer an ownership interest in money that the Feeder Funds ultimately invested in BLMIS." Thus, "regardless of their intent, appellants never entrusted *their* cash or securities to BLMIS and, thus, fail to satisfy this 'critical aspect of the "customer" definition.'" *Id.* (quoting *In re*

*Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d at 236 (internal quotation marks omitted)); *see*

*Morgan, Kennedy*, 533 F.2d at 1314, 1318; *see also Kruse*, 708 F.3d at 427-28 (citing 1–12

*Collier on Bankruptcy* ¶ 12.12 (16th ed. 2012) ("[A] claimant will not be entitled to customer

protection under SIPA unless the debtor actually receives the claimant's cash or securities; the

debtor must actually have come into possession or control.")).

### 2.    The ERISA Motion

While the appeals of the Feeder Fund Decision were pending, the Trustee also filed a

motion (the "ERISA Motion") to address arguments that were raised by claimants without

BLMIS accounts who were benefit plans or benefit plan participants and who sought to use the

Employee Retirement Income Security Act ("ERISA") as a basis for determining their customer

status.[13]  *See* ECF No. 4521.  The District Court withdrew the reference and granted the motion.

The District Court noted that the first two of the three ways to qualify as a "customer"

under SIPA § 78*lll*(2), "presume that a customer must have a securities account with the debtor,"

and that the claimants also did not qualify under the third method of having "deposited cash with

the debtor for the purpose of purchasing securities."  *Sec. Inv'r Prot. Corp. v. Jacqueline Green

Rollover Account*, Nos. 12 Civ. 1039 (DLC), 12 Civ. 1139 (DLC), 2012 WL 3042986 *3

(S.D.N.Y. July 25, 2012).  That was so because none of the claimants "owned any cash deposited

with BLMIS.  Rather, . . . in each case this cash was owned by the third-party entity in which the

claimant invested, and which had a BLMIS account in its name." *Id.* at *5.  The District Court

also rejected arguments that fiduciary responsibilities could suffice to create a "customer"

relationship.  *Id*. at *12.

---

[13] Prior to the hearing on the Initial Feeder Fund Motion, the Court had removed from the scope of the motion the
question of whether ERISA affects "customer" status under SIPA.

### 3.    <u>Other Customer Motions</u>

Further SIPA "customer" motions followed, each of which was determined in favor of the Trustee.  On August 21, 2013, the Court issued its Bench Memorandum Granting Trustee's Second Motion to Affirm Trustee's Determinations Denying Claims of Claimants Who Invested in Certain Feeder Funds and Did Not Have BLMIS Accounts in Their Names.  *See* ECF No. 5450 ("the Second Feeder Fund Decision").   Noting that prior decisions established that the burden is on the claimant to established that he is a "customer" entitled to SIPA protection, and that such showing is not easily met, this Court concluded that the claimants had failed to establish their "customer" status.   The Court noted that "they had no securities accounts at BLMIS, were not known to BLMIS, lacked privity and any financial relationship with BLMIS." They further "lacked property interest in any feeder fund account assets at BLMIS, entrusted no cash or securities to BLMIS, had no investment discretion over feeder fund assets invested with BLMIS, received no accounts statements or other communications from BLMIS and had no transactions reflected on the books and records at BLMIS."  Second Feeder Fund Decision at 4.

On August 22, 2014, this Court issued its Memorandum Decision Granting Motion To Affirm Trustee's Determinations Denying Claims Of Claimants Who Invested In Certain ERISA Plans.  *See generally Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff)*, 515 B.R. 161 (Bankr. S.D.N.Y. 2014) ("ERISA Claimant Decision").  Again holding that the burden is on the claimant to establish that he is a customer, this Court concluded that a claimant who wished to qualify as a person who has deposited cash with the debtor for the purposes of purchasing securities must show that she entrusted her "own assets directly through an account maintained in her own name rather than indirectly through a fund that then entrusted the fund's assets through an account maintained in the fund's name."  *Id.* at 168 (internal citations omitted).  This Court further noted that "not every victim of a broker-dealer's fraud is a

'customer,'" and that even the fact that a claimant exercised some control over her own investments in the fund or the fund's investments in BLMIS was not sufficient to meet "the narrow definition of customer under SIPA." *Id.* at 166, 168.

On February 25, 2015, this Court read into the record a decision ("S&P Decision") granting Trustee's Motion And Memorandum To Affirm His Determinations Denying Claims Of Claimants Holding Interests In S&P or P&S Associates, General Partnerships.   This Court explained that the indicia of customer status are: (i) a direct financial relationship with BLMIS; (ii) a property interest in the funds invested directly with BLMIS; (iii) securities accounts with BLMIS; (iv) control over the account holders' investments with BLMIS; and (v) identification of the alleged customer in BLMIS's books and records.  Hr'g. Transcript, *S&P Decision*, at p. 30, Ackerman Decl. Ex. 10.  The Court held that the objecting partners failed to sustain their burden of proving that they are customers of BLMIS and an order granting the Trustee's motion was entered.  *Id.* at 36; *see also* ECF No. 9450.  Since the S&P Decision, there have been eight motions to affirm the Trustee's determinations, each of which was granted by the Court.[14]

---

[14] *See* Order Approving Trustee's Motion To Affirm His Determinations Denying Claims of Claimants Holding Interests In Peerstate Equity Fund, L.P., ECF No. 9883 (Apr. 27, 2015); Order Approving Trustee's Motion And To Affirm His Determinations Denying Claims Of Claimants Holding Interests In The Lazarus-Schy Family Partnership, The Schy Family Partnership, Or The Lazarus Investment Group, ECF No. 10010 (May 18, 2015); Order Approving Trustee's Motion To Affirm His Determinations Denying Claims Of Claimants Holding Interests In Epic Ventures, LLC, ECF No. 10267 (June 25, 2015); Order Approving Trustee's Motion To Affirm His Determinations Denying Claims Of Claimants Holding Interests Partners Investment Co., Northeast Investment Club, And Martin R. Harnick & Steven P. Norton, Partners, ECF No. 10894 (July 29, 2015); Order Approving Trustee's Motion To Affirm His Determinations Denying Claims Of Claimants Holding Interests The Whitman Partnership, The Lucky Company, The Petito Investment Group, And The Harwood Family Partnership, ECF No. 11145 (Aug. 26, 2015); Order Approving Trustee's Motion To Affirm His Determinations Denying Claims Of Claimants Holding Interests 1973 Masters Vacation Fund, Bull Market Fund, And Strattham Partners, ECF No. 11920 (Oct. 29, 2015); Order Approving Trustee's Motion To Affirm His Determinations Denying Claims Of Claimants Holding Interests in Black River Associates LP, MOT Family Investors, LP, Rothschild Family Partnership, and Ostrin Family Partnership, ECF No. 12757 (Mar. 3, 2016); Order Approving Trustee's Motion To Affirm His Determinations Denying Claims Of Claimants Holding Interests in the Article Third Trust, Palmer Family Trust, Maggie Faustin, Estate of Theodore Schwartz, and Miller Trust Partnership, ECF No. 13172 (Apr. 26, 2016).

# ARGUMENT

To be a "customer" under SIPA, an investor must have "a claim on account of securities received, acquired, or held by the debtor in the ordinary course of its business as a broker or dealer from or for the securities accounts of such person," including "any person who has deposited cash with the debtor for the purpose of purchasing securities." SIPA § 78*lll*(2).[15] Thus, to be a "customer" an investor must have entrusted cash or securities with the debtor for

---

[15] The definition applicable to this SIPA proceeding is:

>    (2) Customer
>
>        (A) In General
>
>        The term "customer" of a debtor means any person (including any person with whom the debtor deals as principal or agent) who has a claim on account of securities received, acquired, or held by the debtor in the ordinary course of its business as a broker or dealer from or for the securities accounts of such person for safekeeping, with a view to sale, to cover consummated sales, pursuant to purchases, as collateral security, or for purposes of effecting transfer.
>
>        (B) Included persons
>
>        The term "customer" includes—
>
>            (i) any person who has deposited cash with the debtor for the purpose of purchasing securities; [and]
>
>            (iii) any person who has a claim against the debtor arising out of sales or conversions of such securities, and any person who has deposited cash with the debtor for the purpose of purchasing securities, but does not include—
>
>        (C) Excluded persons
>
>        The term "customer" does not include any person, to the extent that—
>
>            (i) the claim of such person arises out of transactions with a foreign subsidiary of a member of SIPC; or
>
>            (ii) such person has a claim for cash or securities which by contract, agreement, or understanding, or by operation of law, is part of the capital of the debtor, or is subordinated to the claims of any or all creditors of the debtor, notwithstanding that some ground exists for declaring such contract, agreement, or understanding void or voidable in a suit between the claimant and the debtor.

SIPA § 78*lll*(2). After the start of this case, the "customer" definition was slightly reorganized and amended in a manner irrelevant to the present issues by the Dodd-Frank Wall Street Reform and Consumer Protection Act. Pub. L. No. 111-203, § 983(b), 124 Stat. 1931 (2010); *see In re Lehman Bros. Inc.*, 462 B.R. 53, 61 n.9 (Bankr. S.D.N.Y. 2011).

the purpose of trading or investing in securities. In *Kruse*, the Second Circuit found that investors who bought interests in a limited partnership that invested partnership funds via the partnership's own BLMIS account "never entrusted *their* cash or securities to BLMIS and, thus, fail to satisfy this 'critical aspect of the "customer" definition'" regardless of their intent. 708 F.3d at 427 (quoting *In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d at 236). Similarly, the Second Circuit in *In re New Times Securities Services, Inc.* held that "[t]he critical aspect of the 'customer' definition is the entrustment of cash or securities to the broker-dealer for the purposes of trading securities." 463 F.3d at 128 (quoting *Appleton v. First Nat'l Bank of Ohio,* 62 F.3d 791, 801 (6th Cir. 1995)); *see also In re Adler, Coleman Clearing Corp.*, 216 B.R. 719, 724-25 (Bankr. S.D.N.Y. 1998) ("The term [customer] refers to those who entrust cash or securities to broker-dealers for the purpose of trading and investing in the securities market."). The Second Circuit recently further upheld this principle in *In re Lehman Bros., Inc.*, 791 F.3d 277 (2d Cir. 2015), concluding that the "critical aspect of the 'customer' definition is the entrustment of cash or securities to the broker-dealer for the purposes of trading securities." *Id.* at *282 (quoting *In re Bernard L. Madoff Inv. Secs. LLC*, 654 F.3d at 236). The Trustee is responsible for discharging obligations of the debtor to customers with such claims "insofar as such obligations are ascertainable from the books and records of the debtor or are otherwise established to the satisfaction of the trustee." SIPA § 78fff-2(b).

The Objecting Claimants' investments in the Corporations do not meet the requirements for "customer" status outlined in the seminal Second Circuit decision *Morgan, Kennedy*, 533 F.2d at 1318, and reaffirmed in *Kruse*, 708 F.3d at 427. In *Morgan Kennedy*, the Second Circuit rejected the argument that the beneficial owners of the account holder were the "customers" under SIPA, citing the facts that: (1) title to the trust assets was held by the account holder, not

the beneficiaries; (2) the securities account with the debtor was in the name of the account

holder, not the beneficiaries; (3) the account holder had the exclusive power to entrust the assets

to the debtor; (4) the beneficiaries were unknown to the broker; and (5) the beneficiaries had no

legal capacity in which they could deal with the debtor.  533 F.2d at 1318.

The Objecting Claimants' circumstances are little different than those of the claimants in

*Morgan Kennedy*, and do not exhibit the hallmarks of customer status discussed in this Court's

*S&P* decision.  Hr'g. Transcript, *S&P Decision*, at 30, Ackerman Decl. Ex. 10.  The Objecting

Claimants entrusted their money to the Corporations, not to BLMIS.  The Objecting Claimants

lacked a direct financial relationship with BLMIS.  The money entrusted to BLMIS was the

property of the Corporations, not the Objecting Claimants.  The BLMIS Accounts were in the

names of the Corporations, not in the individual names of Objecting Claimants.

The individual interests of Objecting Claimants were not identified in BLMIS' books and

records, and most of their names did not appear in the customer files.[16]  The corporate

representatives who dealt with BLMIS were like the trustees who acted for the trust account in

*Morgan Kennedy*, and were no more customers in their individual capacity than the trustees

were.  *Morgan Kennedy*, 533 F.2d at 1318, 1320-21 (notwithstanding that the trust account was

in the name of the trustees, "[a]ny suggestion that each of the three Trustees has a separate

customer claim against the debtor is untenable" because the Trustees together managed for the

trust, "which was the true customer of the broker-dealer . . . ."; similarly, noting that under the

SIPA Rules, individual coverage for multiple people who each own some portion of, or interest

in, an account is "explicitly forbidden".)

---

[16] William Pressman, whose name appears in the books and records of BLMIS as the representative for both
Pressman Inc. and Pressman Rollover filed a claim and objection on his own behalf related to account 1ZA734.
Sehgal Decl., Ex. 11.

Only the Corporations, not the Objecting Claimants, entrusted their cash or securities to BLMIS, and the Objecting Claimants thus fail to satisfy this "critical aspect of the 'customer' definition." *Kruse*, 708 F.3d at 426-27 (citing *In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d at 236); *accord ERISA Claimant Decision,* 515 B.R. at 169. Whether the Objecting Claimants intended the Corporations to invest with BLMIS is irrelevant under SIPA. *See Kruse*, 708 F.3d at 426-27; *ERISA Claimant Decision*, 515 B.R. at 169-70. The funds that the Objecting Claimants contributed to the Corporations, and anything that the Corporations purchased with those funds, belongs to the relevant Corporation and not to the Objecting Claimants.

Under both Pennsylvania and Florida state law, corporations are legal entities with all the attendant legal rights of an individual, including the right to own property. *See* FLA. STAT. § 607.0302(3) ("every corporation has perpetual duration and succession in its corporate name and has the same powers as an individual to do all things necessary or convenient to carry out its business and affairs, including without limitation power: (3) To hold, improve, use, and otherwise deal with real or personal property . . . ."); 15 PA. STAT. § 1501 (". . . a business corporation shall have the legal capacity of natural persons to act."); *see also* 15 PA. STAT. § 1502(a)(4) ("[E]very business corporation shall have power: (4) To acquire, own and utilize any real or personal property, or any interest therein, wherever situated.").[17] Like the objecting claimants dealt with by prior customer opinions, the Objecting Claimants do not individually own the assets that the Corporations invested with BLMIS. Instead, the assets are collectively owned by the Corporations themselves.

---

[17] AGL is registered with the state of Pennsylvania as an "insurance corporation." Under Pennsylvania corporate law, an "insurance corporation" is a "business corporation that is engaged in the business of writing insurance or reinsurance as principal and as such is subject to the regulation by the [Pennsylvania] Insurance Department." 15 PA. STAT. § 3102. As such, an insurance corporation enjoys the same rights to own property as a general business under 15 PA. STAT. § 1502(a)(4).

It was the Corporations, not the Objecting Claimants, that entrusted assets to BLMIS for the purpose of purchasing securities.  Each Corporation, through its corporate representative, had the right to direct the investment of those assets on behalf of the Corporation, and to withdraw property from its Account on behalf of the Corporation.  Each Corporation, not the Objecting Claimants, was the customer for its respective Account under SIPA.

Because BLMIS did not perform a custodial function on behalf of the individual Objecting Claimants, the Objecting Claimants have neither "customer" claims nor individual net equity. The purpose of SIPA, a statute intended to deal with broker insolvency, is "to expedite the return of customer property" by "protecting the *custody* function of brokers," according to a recent Second Circuit decision that declined to permit interest or time-based damages for customer claims under SIPA.  *Sec. Inv'r Prot. Corp. v. 2427 Parent Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*, 779 F.3d 74, 80 (2d Cir. 2015).  Customers share in the fund of customer property ratably, according to each customer's "net equity." *Id*. at 77, 81.  The definition of net equity is limited by the fundamental SIPA design "to return customer property to customers," *id.* at 77, whether in cash or in actual securities. *Id*. at 80.[18]

The Second Circuit stated in *2427 Parent Corp.*, "[w]e . . . previously concluded that in [the BLMIS] case net equity . . . should be determined based on customers' actual deposits and withdrawals.  These deposits, net withdrawals, constitute customer property here." *Id*. at 81 (citations omitted).  The books and records of BLMIS show that Objecting Claimants made no individual deposits in or withdrawals from BLMIS, and those who interacted with BLMIS as to

---

[18] The definition of "net equity" at SIPA § 78*lll*(11) begins, "The term 'net equity' means the dollar amount of the account or accounts of a customer, to be determined by—

(A) Calculating the sum which would have been owed by the debtor to such customer if the debtor had liquidated . . . on the filing date—(i) all securities positions of such customer . . . ."

19

the Accounts did so solely on the Corporations' behalf.    Sehgal Decl., Exs. 4,9,13.    The

Objecting Claimants accordingly have no net equity and are not "customers" within the meaning

of SIPA.

Each of the Objecting Claimants was served with requests for admission, interrogatories,

and requests for production.    Two of the Pressman Inc. Objecting Claimants responded and only

one of the Pressman Rollover Objecting Claimants responded.    Those Objecting Claimants, other

than the AGL Objecting Claimants,[19] who failed to respond to the requests for admission

admitted them.    FED. R. CIV. P. 36(a)(3).    The admissions, both deemed and actual, show that

Objecting Claimants lack any relationship with BLMIS that fits the *Morgan Kennedy* criteria and

that their claims of "customer" status are baseless.    They admitted that: (i) the relevant Account

was not titled in their name;[20] (ii) that they never received investment statements or tax

statements in their names from BLMIS;[21] (iii) that they never paid cash directly to BLMIS for

credit to an account in their names;[22] (iv) never deposited securities directly with BLMIS;[23] (v)

that they never directly withdrew or received funds from BLMIS;[24] (vi) that their only

relationship to BLMIS existed by way of their relationship to the Account holder;[25] (vii) that

they never entered into any contracts in their names with BLMIS;[26] and (viii) that they did not

---

[19] The six AGL Objecting Claimants objected to and refused to provide responses to the discovery requests served by the Trustee.  *See supra* note 10.

[20] Pressman Inc. RFA¶¶1,2; Pressman Rollover RFA¶¶1,2; Pressman Rollover RFAType 2 ¶¶1,2.

[21] Pressman Inc. RFA¶¶ 3,8,9; Pressman Rollover RFA¶¶3,8,9; Pressman Rollover RFAType 2 ¶¶ 6,7.

[22] Pressman Inc. RFA¶5; Pressman Rollover RFA¶5; Pressman Rollover RFAType 2 ¶4.

[23] Pressman Inc. RFA¶4; Pressman Rollover RFA¶4; Pressman Rollover RFAType 2 ¶3.

[24] Pressman Inc. RFA¶¶6,7; Pressman Rollover RFA¶¶6,7; Pressman Rollover RFAType 2 ¶5.

[25] Pressman Inc. RFA¶11; Pressman Rollover RFA¶11; Pressman Rollover RFAType 2 ¶8.

[26] Pressman Inc. RFA¶10; Pressman Rollover RFA¶10.

have any control, investment discretion or decision-making power over any investment assets at BLMIS.[27]

The six AGL Objecting Claimants objected to the Trustee's discovery requests on various grounds.  However, the six AGL Objecting Claimants do not appear in the books and records of BLMIS, and the documentation submitted in support of their claims and objections lacks any evidence to prove their customer status. *See e.g.*, Sehgal Decl., Exs. 13-20.  In fact, AGL concedes that the six AGL Objecting Claimants are in fact, not customers.  "*Note that AGL Life Assurance Company Separate Account VL84 had a direct account with BLMIS.  Separate claims are also being filed for those assets comprising AGL Life Assurance Company Separate Account VL84 in order to preserve the rights of such claimants.*"  Sehgal Decl., Ex. 14 (emphasis added). AGL further concedes in its objection on behalf of the six Objecting Claimants that under SIPA and current law, customer status is limited to direct account holders.

> To the extent that the term "customer" is defined differently under SIPA, is determined to include claimants other than those that had a direct customer account, or the application of the "customer" definition is determined to include claimants other than those that had a direct customer account with BLMIS, Claimants hereby request to be treated as all other similarly situated customer claimants in any final order or decision with respect to the treatment of customer claimants of BLMIS.[28]

As such, the six AGL Objecting Claimants have provided no evidence to support a finding of customer status, and have conceded that they are not customers.

As the Second Circuit has explained, "[j]udicial interpretations of 'customer' status support a narrow interpretation of the SIPA's provisions." *Kruse*, 708 F.3d at 426 (citing *In re New Times Sec. Servs., Inc.,* 463 F.3d at 127).  Customer status under SIPA is narrowly

---

[27] Pressman Inc. RFA¶12; Pressman Rollover RFA¶12; Pressman Rollover RFAType 2 ¶9.

[28] ECF No. 3191.

construed and is the burden of the claimant to establish. *See ERISA Claimant Decision,* 515 B.R. at 166 ("The burden is on the claimant to establish he is a 'customer' entitled to SIPA protection, and such a showing 'is not easily met.'"); *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 454 B.R. at 294 (citing *In re Klein, Maus & Shire, Inc.*, 301 B.R. 408, 418 (Bankr. S.D.N.Y. 2003)); *see also Mishkin v. Siclari (In re Adler, Coleman Clearing Corp.)*, 277 B.R. 520, 557 (Bankr. S.D.N.Y. 2002) ("[I]it is well-established in the Second Circuit that a claimant bears the burden of proving that he or she is a 'customer' under SIPA."). The six AGL Objecting Claimants have not met this burden. Thus, under Second Circuit precedent, the six AGL Objecting Claimants are not SIPA customers.

## CONCLUSION

For all of the foregoing reasons, the Court should affirm the Trustee's determination denying the claims of the eighteen Objecting Claimants, overrule their objections, expunge the claims, and grant such other and further relief as the Court deems just and proper.

Dated: New York, New York
May 5, 2016

Respectfully submitted,

*/s/ David J. Sheehan*

David J. Sheehan
Email: dsheehan@bakerlaw.com
Seanna R. Brown
Email: sbrown@bakerlaw.com
Nicholas J. Cremona
Email: ncremona@bakerlaw.com
Jorian L. Rose
Email: jrose@bakerlaw.com
Amy E. Vanderwal
Email : avanderwal@bakerlaw.com
Stephanie A. Ackerman
Email : sackerman@bakerlaw.com
**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, New York  10111
Tel: (212) 589-4200
Fax: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee for the*
*Substantively Consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities LLC*
*and the Estate of Bernard L. Madoff*