**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------------X
                                                    :

SECURITIES INVESTOR PROTECTION        :
CORPORATION,                              :

            Plaintiff,                    :   Adv. Pro. No. 08-1789 (SMB)

     v.                               :   SIPA LIQUIDATION

                                      :   (substantively consolidated)

BERNARD L. MADOFF INVESTMENT SECURITIES,  :
LLC                                    :
                                      :

           Defendant.                :

-------------------------------------------------------------------------X
                                      :

In re:                                    :

BERNARD MADOFF,                    :

            Debtor.                 :

-------------------------------------------------------------------------X
                                      :

IRVING H. PICARD, Trustee for the Liquidation of:    :
Bernard L. Madoff Investment Securities LLC,     :   Adv. No. 10-04311 (SMB)

                                      :

            Plaintiff,                  :

                                      :

     v.                               :

ANDREW H. COHEN,                :

                                      :

           Defendant.                :

-------------------------------------------------------------------------X

### PROPOSED INTERVENORS' OBJECTIONS TO PROPOSED RULING
### DENYING MOTION TO INTERVENE OR PARTICIPATE AS *AMICUS CURIAE*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..................................................................................7

FACTS AND PROCEDURAL HISTORY ...............................................................11

ARGUMENT ............................................................................................................13

1.    Under *Stern v Marshall*, the order denying Customer's motion and related
      Opinion constitute only proposed findings of fact and conclusions of law and
      therefore are subject to *de novo* review by the District Court..........................13

2.    Customers established the prerequisites for intervention as of right...............16

      a.    Customers established an "interest relating to the . . . transaction."....................17

      b.    A decision on "value" will, "as a practical matter," bind Customers
            under the doctrine of stare decisis.......................................................23

      c.    The existing party cannot adequately represent Customers' interests. ................27

3.    The Opinion wrongly declined to allow the alternative relief of permissive
      intervention. ..................................................................................................31

      a.    Customers have material interests in common with the subject of this
            adversary proceeding. .........................................................................33

      b.    Intervention will not result in undue delay or prejudice to any party –
            and the Trustee's claim of "prejudice" is just subterfuge for his
            apparent desire to litigate the "value" defense only against lone,
            underfunded adversaries.......................................................................33

      c.    Adequacy of current representation is not a dispositive factor in the
            context of permissive intervention.......................................................36

      d.    Customers' request for intervention is "timely.".................................37

4.    Alternatively, the Opinion incorrectly rejected Customers' request for leave to
      submit post-trial briefs as *amicus curiae*. ......................................................37

CONCLUSION.........................................................................................................39

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*B. Fernandez & Hnos., Inc. v. Kellogg USA, Inc.*,
  440 F.3d 541 (1st Cir. 2006) .................................................................................30

*Bayou Accredited Fund, LLC v. Redwood Growth Partners, L.P.*
  (*In re Bayou Group, LLC*),
  396 B.R. 810 (Bankr. S.D.N.Y. 2008) ........................................................... 17, 18

*Bernard L. Madoff Inv. Sec. LLC v. Ida Fishman Rev. Tr.*
  (*In re Bernard L. Madoff Inv. Sec. LLC*),
  773 F.3d 411 (2d Cir. 2014), *cert. denied*,
  135 S. Ct. 2858 (2015) ...................................................................... 22, 36, 38

*Brennan v. N.Y. City Bd. of Educ.*,
  260 F.3d 123 (2d Cir. 2001) ........................................................................ 20, 21

*Cage v. Smith* (*In re Smith*),
  521 B.R. 767 (Bankr. S.D. Tex. 2014).......................................................... 15, 16

*CBS, Inc. v. Snyder*,
  136 F.R.D. 364 (S.D.N.Y. 1991) ..........................................................................28

*Christian Bros. High Sch. Endowment v. Bayou No Leverage Fund, LLC*
  (*In re Bayou Group, LLC*),
  439 B.R. 284 (S.D.N.Y. 2010)...............................................................................18

*Citizens for an Orderly Energy Policy, Inc. v. County of Suffolk*,
  101 F.R.D. 497 (E.D.N.Y. 1984) ..........................................................................34

*Daggett v. Comm'n on Governmental Ethics & Election Practices*,
  172 F.3d 104 (1st Cir. 1999)..................................................................................23

*Glancy v. Taubman Ctrs., Inc.*,
  373 F.3d 656 (6th Cir. 2004) .................................................................................29

*Hartford Fire Ins. Co. v. Mitlof*,
  193 F.R.D. 154 (S.D.N.Y. 2000) ..........................................................................27

*Jam. Hosp. Med. Ctr., Inc. v. United Health Group, Inc.*,
  584 F. Supp. 2d 489 (E.D.N.Y. 2008).................................................................37

## TABLE OF AUTHORITIES (CONT'D)

**Page(s)**

*Jones v. Ford Motor Credit Co.*, No. 00 Civ. 8330 (RJH) (KNF),
  2004 U.S. Dist. LEXIS 13224
  (S.D.N.Y. July 13, 2004) ...................................................................34

*McNeill v. N.Y. City Hous. Auth.*,
  719 F. Supp. 233 (S.D.N.Y. 1989)..................................................33

*Md. Cas. Co. v. W.R. Grace & Co.*,
  No. 88 Civ. 4337, 1996...................................................................26

*N.J. Carpenters Health Fund v. Residential Capital, LLC*, No. 08 CV 5093 (HB),
  2010 U.S. Dist. LEXIS 135261 (S.D.N.Y. Dec. 21, 2010) ...............21, 22

*N.Y. Pub. Interest Research Group, Inc. v. Regents of Univ. of N.Y.*,
  516 F.2d 350 (2d Cir. 1975) ..................................................... 19, 20, 30

*Nat. Res. Def. Council v. N.Y. State Dep't of Envtl. Conserv.*,
  834 F.2d 60 (2d Cir. 1987) .......................................................28, 30

*Nat. Res. Def. Council v. U.S. Nuclear Regulatory Com.*,
  578 F.2d 1341 (10th Cir. 1978).......................................................23

*Neonatology Assocs. v. Comm'r*,
  293 F.3d 128 (3d Cir. 2002) ...........................................................38

*New Eng. Petrol. Corp. v. Fed. Energy Admin.*,
  71 F.R.D. 454 (S.D.N.Y. 1976) ......................................................28

*NFL Mgmt. Council v NFL Players' Ass'n*,
  No. 15-2081, slip op. (2d Cir. Mar. 15, 2016) ..................................21

*NML Capital, Ltd. v. Republic of Arg.*,
  727 F.3d 230 (2d Cir. 2013), *cert. denied*, 134 S. Ct. 2819 (2014) ......................................37

*Nuesse v. Camp*,
  385 F.2d 694 (D.C. Cir. 1967)....................................................20, 26

*Oneida Indian Nation of Wis. v. New York*,
  732 F.2d 261 (2d Cir. 1984) ......................................................26, 27

*Onondaga Indian Nation v. State of N.Y.*,
  No. 97-CV-445, 1997 WL 369389 (N.D.N.Y. June 24, 1997)............37

*In re Pandora Media, Inc.*,
  No. 41 Civ. 1395 (DLC), 2013 U.S. Dist. LEXIS 175800
  (S.D.N.Y. Dec. 13, 2013) ...............................................................22

## TABLE OF AUTHORITIES (CONT'D)

**Page(s)**

*Picard v. Ida Fishman Rev. Trust (In re Bernard L. Madoff Inv. Sec. LLC)*,
    No. 12-2557 (2d Cir.), ECF Nos. 305 ................................................................... 38

*Picard v. JPMorgan Chase Bank & Co. (In re Bernard L. Madoff Inv. Sec. LLC)*,
    721 F.3d 54 (2d Cir. 2013), cert. *denied, 134* S. Ct. 982 (2014) ........................... 36

*Provident Bank v. Cmty. Home Mortg. Corp.*,
    No. 02-cv-5219 (DRH/JO), 2005 WL 1801654 (E.D.N.Y. July 28, 2005) ........................... 32

*Sackman v. Liggett Group*,
    167 F.R.D. 6 (E.D.N.Y. 1996) ................................................................... 30

*Sec. Ins. Co. v. Schipporeit, Inc.*,
    69 F.3d 1377 (7th Cir. 1995) ................................................................ 34, 36

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
    499 B.R. 416 (S.D.N.Y. 2013) ................................................................... 12

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC*,
    531 B.R. 439 (Bankr. S.D.N.Y. 2015) ............................................................ 12

*Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC*,
    No. 12-mc-115 (JSR), mem. order (S.D.N.Y. Dec. 6, 2013) ................................... 12

*Securities Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
    No. 12 MC 115 (JSR), 2013 U.S. Dist. LEXIS 2517 (S.D.N.Y. Jan. 4, 2013) ................ 13

*Stern v. Marshall*,
    564 U.S. 462 (2011) ..................................................................... 13, 15, 35

*Stone v. First Union Corp.*,
    371 F.3d 1305 (11th Cir. 2004) .................................................................. 26

*Thomas v. Henderson*,
    297 F. Supp. 2d 1311 (S.D. Ala. 2003) ......................................................... 33

*Trbovich v. UMW*,
    404 U.S. 528 (1972) ........................................................................... 28

*U.S. Postal Serv. v. Brennan*,
    579 F.2d 188 (2d Cir. 1978) ................................................................. 33, 34

*United States v. Columbia Pictures Indus.*,
    88 F.R.D. 186 (S.D.N.Y. 1980) ................................................................. 36

# TABLE OF AUTHORITIES (CONT'D)

**Page(s)**

*United States v. El-Gabrowny*,
844 F. Supp. 955 (S.D.N.Y. 1994) ........................................................................37

*United States v. Gotti*,
755 F. Supp. 1157 (E.D.N.Y. 1991) ......................................................................37

*United States v. Hooker Chems. & Plastics Corp.*,
749 F.2d 968 (2d Cir. 1984) ..........................................................................17, 20

*United States v. Oregon*,
839 F.2d 635 (9th Cir. 1988) ................................................................................26

*United States v. Ron Pair Enters.*,
489 U.S. 235 (1989). Accordingly, the Opinion ..................................................14

*Utahns for Better Transp. v. U.S. DOT*,
295 F.3d 1111 (10th Cir. 2002) ............................................................................23

**Statutes**

11 U.S.C. 548(d)(2)(A) ..............................................................................................24

28 U.S.C. § 157(c) ...............................................................................................15, 16

28 U.S.C. § 157(c)(2) .................................................................................................14

28 U.S.C. § 158(a) (2012) ..........................................................................................13

Bankruptcy Code Section 542 .............................................................................15, 16

Bankruptcy Code Section 546(e) ...................................................................34, 35, 38

Bankruptcy Code Section 548(c) ...........................................................7, 11, 24, 31

Securities Exchange Act of 1934 ...............................................................................25

**Other Authorities**

Bankruptcy Rule 9033(b) ...........................................................................................13

Fed. R. Bankr. P. 7024 ...............................................................................................16

Fed. R. Bankr. P. 7042 ...............................................................................................35

Fed. R. Civ. P. 12(b)(6) ..............................................................................................12

## TABLE OF AUTHORITIES (CONT'D)

**Page(s)**

Fed. R. Civ. P. 24 ................................................................................................ 16, 20

Fed. R. Civ. P. 24(a) ............................................................................................ 17, 22

Fed. R. Civ. P. 24(a)(2) ........................................................................................ *passim*

Fed. R. Civ. P. 24(b) ............................................................................................... 36

Fed. R. Civ. P. 24(b)(1)(B) ..................................................................................... 32

Fed. R. Civ. P. 24(b)(3) ........................................................................................... 33

Fed. R. Civ. P. 42 ................................................................................................... 35

18 MOORE'S FEDERAL PRAC. §134.02[2] (2016) ..................................................... 25

6 MOORE'S FEDERAL PRACTICE, § 24.03[c] (Matthew Bender 3d ed. 2016) .............. 17

7C Wright, Miller & Kane, FED. PRAC. & PROC., CIVIL 3D § 1908.1 (2007).............. 20

## PRELIMINARY STATEMENT

This Objection is submitted by good-faith former customers ("Customers") of the registered broker-dealer, Bernard L. Madoff Investment Securities LLC ("Madoff Securities"), which was run by the notorious fraudster, Bernard Madoff.  Customers sought to intervene in this adversary proceeding on a limited basis, as further described below.  Customers are named as defendants in 57 pending avoidance actions[1] brought by Irving H. Picard as the trustee liquidating the defunct Madoff Securities (the "Trustee").

Customers asserted defenses that raise legal issues identical to defenses interposed in this adversary proceeding, *Picard v. Cohen* ("*Cohen*").  Customers sought to intervene on a single critical common legal issue raised in *Cohen*:  the scope of the "value" defense under Bankruptcy Code Section 548(c) in a SIPA avoidance action.

The ultimate resolution of the "value" defense will affect not just the defendant in *Cohen*, but Customers and other similarly situated defendants in literally hundreds of still pending, functionally identical adversary proceedings.  Without intervention, Customers were denied the right to be heard before the bankruptcy court, and potentially at the appellate level, regarding the scope of these "value" defenses.  These defenses, once definitively decided, will likely set the controlling precedent for the hundreds of remaining avoidance cases.

Bankruptcy Judge Bernstein denied Customers' motion in its entirety.  As discussed in Section 1, below, the bankruptcy court's opinion, issued April 25, 2016 ("Opinion") constitutes only "proposed findings of fact and conclusions of law" under the jurisdictional statute, because *Cohen*, pursuant to a prior court order, is a "non-core" proceeding in which the bankruptcy court may not enter a final judgment.  Accordingly, the bankruptcy court lacked constitutional

---

[1] As of the time of the filing of the motion to intervene.  Presently, 50 of Customers' cases remain pending.

authority to enter a final order denying Customers' intervention motion, resulting in the bankruptcy court's conclusions being subject to *de novo* review by this Court. The proposed determination of the intervention issues should be rejected and intervention granted to customers on all questions relating to the "value" defenses raised in *Cohen*.

The bankruptcy court acknowledges in the Opinion that Customers' motion is "not your typical intervention motion." Opinion at 3. But the atypical nature of the Customers' proposed intervention – limited to only being heard on legal issues – militates toward granting intervention, not denying it.

The Opinion openly concedes that Customers do "not seek to augment the factual record," but only wish to argue the scope of the "value" defense – a pure legal issue. *Id*. Customers have consistently made clear that they sought no role whatsoever in the underlying *Cohen* trial (which proceeded as scheduled). They never sought to introduce evidence or witnesses. They agreed to conform (and did conform) to all timing and briefing deadlines established for the *Cohen* case. Customers' proposed intervention was limited to an issue admittedly common to all of the Trustee's actions against the Customers and hundreds of other transferees whose good faith is not challenged by the Trustee.

Customers seek to be heard on an issue that unquestionably directly and substantially affects their economic interests. However, Customers also believe that, as the parties that have been most involved in developing the "value" defenses, their briefing would assist the courts in analyzing these nuanced, complex legal defenses. The final determination of these issues will expedite the resolution of hundreds of pending cases, avoiding piecemeal litigation of defense issues that cut through the entire range of similar cases.

The bankruptcy court nonetheless rejected not just Customers' request for intervention of right, but also Customers' alternative request for intervention by permission or, at the very least, the request to file an *amicus* brief.

The Opinion concluded that Customers failed to show three necessary elements for intervention of right:  (1) an "interest relating to the . . . transaction that is the subject of the action"; (2) that an appellate decision on the "value" defense will, "as a practical matter," impede or impair Customers' ability to protect their interests; and (3) that the existing party cannot adequately represent Customer's interests.  Opinion at 10-20.

Each of these proposed rulings is wrong.  Customers have a direct economic "interest" in pursuing their "value" defenses – defenses that, if successful, would collectively save Customers up to $197 million.[2]  However, the Opinion adopts a cramped view of the "interest" that must be at stake, even though such a constricted reading is untenable under governing case law.  The Opinion fails to meaningfully explain away definitive precedent from the Second Circuit and elsewhere.  These cases find a sufficient "interest" where the proposed intervenors have a significant economic stake that would plainly be affected by a ruling in the case.  *See* Section 2(a), below.

The Opinion wrongly concludes that Customers "have also failed to demonstrate that the disposition of the *Cohen* matter may as a practical matter impede or impair [their] ability to protect [their] interest[s]. . . .  Opinion at 17.  But this part of the Opinion, comprising less than one page, states only that Customers previously were unsuccessful before the bankruptcy court and a District Judge.  The implication is that because those courts rejected Customers' defenses, there is no further need to analyze the effect of a final *Cohen* disposition on Customers.

---

[2] This amount reflects the total amount of the Trustee's demands as of the filing of the motion before the resolution of seven of Customers' adversary proceedings.

9

However, the Second Circuit has made clear that an intervention motion cannot be resolved by assessing the merits of the underlying substantive claim or defense that the intervenors seek to assert.

Furthermore, *Cohen* – and thus the full range of Customers' "value" defenses – will likely be finally resolved ultimately only at the Second Circuit level. The law in the Second Circuit, like others, is clear: the Rule 24(a)(2) requirement that "disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest" can be met by the intervenor's showing a significant *stare decisis* risk. The bankruptcy court itself acknowledged that the future appellate rulings in *Cohen* would, under *stare decisis*, dictate the result for all Customers raising similar defenses. *See* Section 2(b), below.

The Opinion also improperly concludes that the interests of Customers are adequately represented by Cohen's counsel. But the Opinion never even mentions the uncontroverted evidence presented in support of the intervention motion that Mr. Cohen lacks the wherewithal to finance what can be predicted to be an expensive appeal; has been employed only part-time; and has been unable to pay his counsel in full even for their relatively modest fees billed so far.

Mr. Cohen is being sued for about $1.1 million. Customers, by contrast, collectively have $197 million depending on the success or failure of these "value" defenses. Mr. Cohen, fighting alone, does not have the benefit of the economies of scale that the collective weight of the Customers can bring to bear on these complex issues. This factor is legally significant. The Opinion inappropriately discounts pertinent case law holding that an "asymmetry in the intensity of the interest" can, in and of itself, demonstrate that existing counsel cannot adequately represent the interests of the intervenors. *See* Section 2(c), below.

10

Finally, the Opinion improperly rejects Customers' alternative requests for relief –

intervention by permission or the leave to file an *amicus* brief – even though Customers plainly

meet the far less stringent standards for such relief.  *See* Sections 3 and 4, below.

## FACTS AND PROCEDURAL HISTORY[3]

Customers are defendants in 57 adversary proceedings brought by the Trustee.  The

complaints seek to avoid and recover some $197 million in account withdrawals paid to

Customers, made by Bernard L. Madoff Investment Securities, LLC ("Madoff Securities").

Schwed Decl. ¶ 4.

Like Andrew Cohen, the defendant in this adversary proceeding, Customers are "good

faith" defendants – that is, the Trustee has never alleged that any of them had any knowledge or

notice of the fraud perpetrated by Madoff Securities and its principal, Bernard Madoff.  *Id.* ¶ 5*;

see also* Second Revised Joint Pretrial Order (the "Pretrial Order") at 7 (Stipulated Facts), *Cohen*

Dkt. No. 60; *Madoff Securities* Master Dkt. No. 11715; Schwed Decl. ¶ 11, Ex. F.  Customers'

and Mr. Cohen's retail customer-broker relationships with Madoff Securities were functionally

identical.  Schwed Decl. ¶ 5.

Under Bankruptcy Code Section 548(c), good-faith defendants in fraudulent transfer

actions are entitled to assert a defense to the extent that they have provided "value" and acted in

good faith.  In all of the applicable cases, including those of *Cohen* and Customers, the Trustee

has conceded that good faith is not in issue, as a result of which only the value element of the

defense is in dispute.  *Id.*  However, the Trustee maintains that defendants are entitled to a

"value" defense only to the extent of the net nominal dollar amounts (the "principal") that they

deposited with Madoff Securities.  Customers (who typically deposited funds over the course of

---

[3] This Motion is accompanied by a declaration of Gregory Schwed of Loeb & Loeb LLP
dated May 9, 2016 (the "Schwed Decl."), counsel for certain Customers.

many years – sometimes decades – before they received payments from Madoff Securities) believe that the "value" defense affords far greater protection.

District Judge Rakoff withdrew the reference in 2012 to decide certain common issues surrounding the "value" defense in the context of Rule 12(b)(6) motions and ruled that a customer's "value" is limited to only the principal. *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 499 B.R. 416 (S.D.N.Y. 2013). Customers then sought, but were denied, certification of the issues decided by Judge Rakoff for an interlocutory appeal to the Second Circuit. *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC*, No. 12-mc-115 (JSR), mem. order (S.D.N.Y. Dec. 6, 2013) (ECF No. 508).

After the District Court returned the reference of various adversary proceedings to the bankruptcy court, some customers moved to dismiss the Trustee's complaints based, in part, on the "value" defense. The bankruptcy court denied that portion of the motion. *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC*, 531 B.R. 439 (Bankr. S.D.N.Y. 2015).

The Pretrial Order in the *Cohen* adversary proceeding was entered on the adversary and master docket sheet on October 9, 2015. *Cohen* Dkt. No. 60; *Madoff Securities* Master Dkt. No. No. 11715; Schwed Decl. ¶ 11, Ex. F. One of the "Issues to be Tried" was framed as: "The extent to which any transfers made by [Madoff Securities] to Mr. Cohen were made for value[.]" *Id*. § V(1). The amount at stake in *Cohen* is just over $1.1 million. *Id*. at p. 2.

After the Trustee refused to consent to their proposed intervention, Customers filed the motion to intervene in October 2015 (the "Motion"). Schwed Decl. ¶¶ 6-8, Exs. A-C. Bankruptcy Judge Bernstein, in the Opinion (a copy of which is attached to the Schwed Decl. at Ex. D), found that the Motion was timely, but denied all three forms of alternative relief that

12

Customers had requested:  intervention as of right; intervention by permission; and permission to file an *amicus curiae* brief.  Opinion, *passim*.

This submission constitutes Customers' written objections to the Opinion and the order giving effect to the Opinion (a copy of which is attached to the Schwed Decl. as Ex. E), as the bankruptcy court's proposed conclusions of law under Bankruptcy Rule 9033(b).[4]

## ARGUMENT

The decision in *Cohen* is likely to control the ultimate disposition of the scope of the "value" defenses in all of Customers' adversary proceedings, as well as hundreds of other Trustee lawsuits against similarly situated "good faith" former Madoff Securities customers.  In these circumstances, Customers should have the opportunity to be meaningfully heard, at all levels of the litigated dispute.

1.    **Under *Stern v Marshall*, the order denying Customer's motion and related Opinion constitute only proposed findings of fact and conclusions of law and therefore are subject to *de novo* review by the District Court.**

*Stern v. Marshall*, 564 U.S. 462 (2011), established that, absent consent of the parties, bankruptcy courts lack constitutional authority to enter final orders in "non-core" matters "for which litigants are constitutionally entitled to an Article III adjudication."  Matters that, under *Stern*, must be decided by Article III courts include all fraudulent transfer and avoidance lawsuits.  *Securities Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, No. 12 MC 115 (JSR), 2013 U.S. Dist. LEXIS 2517, at *53-54 (S.D.N.Y. Jan. 4, 2013) ("*Stern* precludes the Bankruptcy Court from finally deciding" Madoff avoidance actions.).

*Cohen*, in which the Trustee is suing to avoid payments to the customer as fraudulent transfers, is a proceeding in which the bankruptcy court, under *Stern*, cannot render final orders

---

[4] For protective purposes, Customers are also filing a conditional notice of appeal under 28 U.S.C. § 158(a) (2012).

13

or judgments.  *See* Pretrial Order (Schwed Decl. Ex. F), p.4 ("the Parties agree that although this

Court lacks jurisdiction to adjudicate the Trustee's avoidance claim, the Court may hear this

matter in the first instance and recommend proposed findings of fact and conclusions of law to

the District Court.").  The Pretrial Order was signed by the parties' counsel and approved by the

bankruptcy court.  *Id.*

Moreover, neither Mr. Cohen nor Customers have consented to the bankruptcy court's

jurisdiction to enter final orders in *Cohen* or the Customers' avoidance actions.  *See* Pretrial

Order, p. 4 ("Mr. Cohen does not consent to the jurisdiction of this Court to adjudicate and enter

final judgment in this proceeding."); *see also, e.g.*, Schwed Decl. ¶ 12, Ex. G (Answer of certain

Evenstad family customers), ¶ Adv. Proc. No. 10-4342 (Bankr. S.D.N.Y. Jan. 17, 2014) [Docket

No. 40] ("[t]he Defendant Parties . . . expressly do not consent to the entry of final orders or

judgments by the bankruptcy judge").

28 U.S.C. § 157(c)(2) provides that in non-core "proceedings," such as *Cohen*,

bankruptcy courts "<u>shall</u> submit proposed findings of fact and conclusions of law to the district

court, and any final order or judgment shall be entered by the district judge after considering the

bankruptcy judge's proposed findings and <u>conclusions and after **reviewing de novo** those</u>

<u>matters</u> to which any party has timely and specifically objected. [.]"  (Emphasis added.)

The clear statutory language is dispositive.  The Supreme Court has made clear that,

except in "rare cases," the "plain meaning of legislation should be conclusive[.]'"  *United States*

*v. Ron Pair Enters.*, 489 U.S. 235, 242 (1989).  Accordingly, the Opinion is subject to *de novo*

review by this Court.

While the Opinion is not styled as "proposed findings of fact and conclusions of law" and

the bankruptcy judge followed the opinion with an implementing "Order" denying Customers'

14

Motion (Schwed Decl. Ex. E), the bankruptcy court's self-designations of its rulings cannot change their underlying character or supersede the bankruptcy court's jurisdictional limitations, as imposed by *Stern* and 28 U.S.C. § 157(c). Moreover, Bankruptcy Judge Bernstein himself appeared to acknowledge that his decision on intervention would be only a proposed finding during a colloquy on the Customers' intervention Motion:

> THE COURT: But in this case I'm just going to report and recommend. It's not going to have any stare decisis effect. Objections can be filed in the District Court and which they novo review. [*sic*.] So there's no stare decisis effect.

> MR. SCHWED: But if we don't at least preserve our rights to intervene at the bankruptcy court level, there's a good chance that at the District Court level, let alone the Second Circuit level they'll say, sorry, you have to have preserved your rights at all level or you – levels or you waive it.

> THE COURT: So if I deny your motion, haven't you preserved your right? <u>Then you can seek to – for leave to intervene when, as and if there are objections and responses to it, proposed findings of fact and conclusions of law.</u>

*Picard v. Cohen,* Transcript of Proceedings Held on Sept. 30, 2015), at 18, lines 11-24 (ECF No. 81), attached as Schwed Decl., Ex. H (emphasis added).

*De novo* review is also supported by the only reported post-*Stern* decision known to Customers that conducted a *Stern* analysis relating to a motion to intervene. In *Cage v. Smith* (*In re Smith*), 521 B.R. 767, 773 (Bankr. S.D. Tex. 2014), the court considered "whether it ha[d] constitutional authority" to enter an order on a motion to intervene. The court looked to the nature of the action in which intervention was sought – in that case, an adversary proceeding seeking turnover of property from the defendant under Section 542 of the Bankruptcy Code. The court found that, although there was "some state law involved in the underlying dispute," resolution in the bankruptcy court was not prohibited by *Stern,* so it had authority to enter the order, not just proposed findings of fact and conclusions of law. *Id.*

15

Here, in contrast, *Cohen* unquestionably is a non-core proceeding that cannot be finally

determined by the bankruptcy court.  And the same "value" defenses raised by Mr. Cohen are

defenses in the adversary proceedings for which the Customers seek to intervene.  *Cage* thus

implies that where the underlying issue is non-core, the intervention necessarily follows the

characterization of the proceeding as a non-core matter.  *Cage* accordingly further supports the

conclusion that the bankruptcy court lacks constitutional authority to issue a final order denying

the motion to intervene.

The District Court's Amended Standing Order of Reference dated February 1, 2012 (No.

M10-468, 12 Misc. 00032 (S.D.N.Y. Feb. 1, 2012), expressly deals with a situation, as here, in

which a bankruptcy judge enters an order that he or she lacked constitutional authority to enter.

It provides that the "district court may treat any order of the bankruptcy court as proposed

findings of fact and conclusions of law in the event the district court concludes that the

bankruptcy judge could not have entered a final order."  *Id.*

Accordingly, the Opinion and its accompanying order are only proposed findings of fact

and conclusions of law, subject to *de novo* review by the District Court under 28 U.S.C. § 157(c).

**2.**      <u>**Customers established the prerequisites for intervention as of right.**</u>

Rule 24 (made applicable by Fed. R. Bankr. P. 7024) provides, in pertinent part:

> <u>Intervention of Right</u>.  On timely motion, the court **must** permit anyone to
> intervene who:  . . . (2) claims an interest relating to the property or transaction
> that is the subject of the action, and is so situated that disposing of the action may
> as a practical matter impair or impede the movant's ability to protect its interest,
> unless existing parties adequately represent that interest.

(Emphasis added).

All three Rule 24(a)(2) criteria (sufficient interest; practical impairment of moving

party's ability to protect interest; and inadequacy of current representation) "address the same

basic question:  Will denial of intervention have a significant enough effect on the movant?"

6 MOORE'S FEDERAL PRACTICE, § 24.03[c] (Matthew Bender 3d ed. 2016).  The answer here is

unquestionably "yes."  Customers' interest in the "value" defense is concrete and substantial.

The determination of the scope of the defense by a final judgment involves a potential swing of

nearly $200 million.  The entire burden of these complex arguments should not be carried by a

financially stressed, lone defendant with only a relatively small amount at stake.

The Second Circuit recognizes that the elements of a Rule 24(a) inquiry should be

considered flexibly:  "[t]he various components of the Rule are not bright lines, but ranges . . . .

Application of the Rule requires that its components be read not discretely, but together.  A

showing that a very strong interest exists may warrant intervention upon a lesser showing of

impairment or inadequacy of representation."  *United States v. Hooker Chems. & Plastics Corp.,*

*749* F.2d 968, 983 (2d Cir. 1984).

**a.**        **Customers established an "interest relating to the . . . transaction."**

The Opinion improperly concluded that Customers lack one of the prerequisites for

intervention as of right:  an "interest relating to the . . . transaction."  The bankruptcy court based

its conclusion on a flawed hypothetical and a misreading of the relevant case law.

The Opinion warns:  "If stare decisis were the sole criteria under Rule 24(a)(2), there

would be an intervention free-for-all.  Any person whose interests might be impaired or impeded

by an adverse decision in an unrelated litigation could intervene as of right."  Opinion at 11-12.

The Opinion then cites an earlier Ponzi-scheme case, *In re Bayou Group*, claiming that "under

their theory of Rule 24(a), [Customers] would have the absolute right to intervene" in that case

as well.

17

The problem with this argument is apparent from the very facts of the *Bayou* case.[5]  The

*Bayou* avoidance lawsuits had a different focus.  The trustee in *Bayou* claimed that, unlike Mr.

Cohen (and the Customers) here, most of the institutional defendants lacked sufficient "good

faith" to retain even the principal component of their redemptions.  *See, e.g.*, *Bayou Accredited*

*Fund, LLC v. Redwood Growth Partners, L.P.* (*In re Bayou Group, LLC*), 396 B.R. 810, 844

(Bankr. S.D.N.Y. 2008), *aff'd in part and rev'd in part on other grounds sub nom.  Christian*

*Bros. High Sch. Endowment v. Bayou No Leverage Fund, LLC* (*In re Bayou Group, LLC*), 439

B.R. 284 (S.D.N.Y. 2010) ("The 'value' condition of the 548(c) defense is not in issue in these

proceedings. . . .  The good faith condition of the 548(c) defense is hotly contested as a matter of

fact[.]").  Unlike the value issues at play here, the "good faith" issues in *Bayou* were highly fact-

specific and unique to each defendant.  That issue is entirely irrelevant for Cohen and the

Customers, whom the Trustee concedes to have acted in good faith, and the value issues here are

substantially identical for all defendants.  Schwed Decl. ¶ 4.

Finally, the baseline assumption of the Opinion's hypothetical is flawed.  If a case were

pending that would substantially and directly affected an entity's demonstrable economic

interests through *stare decisis* – and the existing representation was inadequate to protect its

interests – it makes perfect sense that the entity <u>would</u> have the right to intervene.  The

circumstances supporting intervention would be particularly compelling in a case such as this

---

[5] The Opinion's hypothetical is inapposite because the *Bayou* case has been concluded for years, the final significant appeal having been disposed of in 2010 (as reflected in the *Bayou* case citations on page 12 of the Opinion).  *See also* ECF 1481 (order signed on December 29, 2014 granting application for final decree closing case).  Accordingly, the threat of Customers seeking to intervene in *Bayou* is illusory.

Furthermore, unlike the *Cohen* case, the institutional defendants in *Bayou* were collectively sued for tens of millions of dollars.  They had every incentive to spare no expense in mounting their defense.  *See* Section 2(c), below (case law holding that significant "asymmetry" in amounts at stake can make difference in Rule 24(a)(2) "adequate representation" analysis).

one, where Customers seek only limited involvement.  Customers asked for no participation in or

disruption of the trial, seeking only to be heard on purely legal issues – submissions that could

assist a court in accessing the strongest and most comprehensive arguments on issues of common

significance in hundreds of open lawsuits.

This type of "interest" was precisely what was at issue in the seminal case of *N.Y. Pub.

Interest Research Group, Inc. v. Regents of Univ. of N.Y.*, 516 F.2d 350 (2d Cir. 1975)

("Regents").  The proposed intervenors were a pharmaceutical trade group and three individual

pharmacists.  The plaintiffs were consumers who were asking the court to enjoin state regulators

from enforcing a ban on the advertising of prescription drug prices.  Even though the express

purpose of the ban was to regulate "unprofessional conduct in the practice of pharmacy," the

Court held that the economic interest of the proposed intervenors constituted a sufficient ground

for intervention of right:  "There can be little doubt that the challenged prohibition against

advertising the price of prescription drugs . . . affects the economic interests of members of the

pharmacy profession."  *Id.* at 351-52.

The Opinion mentions *Regents*, but fails to even address its holding and reasoning.

Opinion at 14-15.  *Regents* actually is dispositive on the nature of the "interest" required for

intervention of right.  The trade association that was allowed to intervene had no "property" or

other definable interest in an unrelated litigation brought by a consumer-advocacy group seeking

transparency in drug pricing.  Even so, the Second Circuit held that the interest of the trade

association in furthering its members' political and economic agenda was sufficient to meet Rule

24(a)(2)'s requirement that the proposed intervenor have "an interest relating to the property or

transaction that is the subject of the action."

The *Regents* rationale – which the bankruptcy court ignored – applies here *a fortiori*.

Customers' economic interest in vindicating their "value" defenses is real and immediate. These

defenses will be decided in *Cohen,* with or without Customers' involvement. An adverse ruling

in *Cohen* no doubt will be invoked by the Trustee against every other innocent customer

defendant. Customers seek to protect themselves, particularly on appeal, by advocating in

support of defenses that could protect them from what Customers believe is unjust, massive

financial exposure in these claw-back cases. To put it in terms of *Regents*, "there can be little

doubt" that the success or failure of these defenses "affects the economic interests" of the

Customers. *Id. See also* Section 2(b), below (analyzing judicial recognition of *stare decisis*

effect as sufficient "impairment" of interest).

*Regents* fully comports with the language and intent of Rule 24. Shortly after the 1966

liberalization of Rule 24, the District of Columbia Circuit observed that "the 'interest' test is

primarily a practical guide to disposing of lawsuits by involving as many apparently concerned

persons as is compatible with efficiency and due process." *Nuesse v. Camp*, 385 F.2d 694, 700

(D.C. Cir. 1967) (emphasis added) (cited with approval in 7C Wright, Miller & Kane, FED.

PRAC. & PROC., CIVIL 3D § 1908.1, at 333-34 (2007). The Second Circuit concurs in this broad,

practical approach: "The 1966 amendments focused on abandoning formalistic restrictions in

favor of 'practical considerations' to allow courts to reach pragmatic solutions to intervention

problems." *Hooker, supra*, 749 F.2d at 983 (citations omitted).

*Regents* was followed by *Brennan v. N.Y. City Bd. of Educ.*, 260 F.3d 123 (2d Cir. 2001),

which reaches a similar conclusion as to the nature of the required "interest." The proposed

intervenors were white custodians who sought to intervene at the settlement agreement stage of

an employment discrimination lawsuit brought by the federal government against the New York

20

City Board of Education.  The custodians claimed intervention was necessary to protect their seniority rights.

The Second Circuit initially observed that "[u]nder New York law, [the proposed intervenors] have no property or other protectable legal interest in their status as provisional Custodian Engineers."  *Id.* at 130.  Despite this lack of "protectable legal interest," the Court reversed the denial of intervention as of right, finding that the proposed intervenors possessed the requisite "interest" in the litigation.  The Court reasoned that, among other things, "the exercise of seniority rights has a domino effect" on other employees, even if "[t]he effects of the loss of relative seniority are not easily forecast and may not even be perceived as they happen."  *Id.* at 132.

In sum, the *Brennan* Court found that a relatively attenuated effect on employment seniority – a potential "domino effect" that is "not easily forecast" – was sufficient to confer a protectable "interest" on the custodians.  Here, the effect of a final ruling in *Cohen* on the "value" defense is far more direct.  It would unquestionably have an immediate and substantial impact on Customers' economic "interests," because Customers would either have defenses worth up to $197 million, or they would not.[6]

District courts in this district similarly construe the "interest" requirement in the flexible manner indicated by the language and policy of the rule.  For example, *N.J. Carpenters Health Fund v. Residential Capital, LLC, No. 08 CV 5093 (HB), 2010 U.S. Dist. LEXIS 135261, at *12-15 (S.D.N.Y. Dec. 21, 2010)*, was a class action asserting securities law violations for a series of

---

[6] Unlike the proposed intervenor in the Tom Brady/"Deflategate" case, Customers here show far more than an "academic" interest in intervention.  *See NFL Mgmt. Council v NFL Players' Ass'n*, No. 15-2081, slip op. at 5 n.1(2d Cir. Mar. 15, 2016).

offerings of mortgage-backed securities. The proposed intervenors had purchased offerings that were no longer part of the case.

The defendant opposed intervention, claiming that "the offerings in which Intervenors have an interest are no longer the subject of this litigation." *Id.* at *12. The Court rejected this argument "because it would read the rule to require an interest in the property or transaction that is the subject of the action . . . [while] the language requires a movant merely to claim an interest relating to the property or transaction." *Id.* at *13 *(emphasis in original).*[7]

Rejecting "an interpretation as narrow as Defendants would have it," the Court found that the proposed intervenors had a cognizable "interest" under Rule 24(a)(2) because their purchases "were made pursuant to offering documents that were common to the offerings" already in the case. *Id.* at *14. The Court concluded that "[t]he Intervenors' interest will be impaired by any disposition of this action that includes findings that affect their claims. Any disposition on the merits would inevitably affect their claims since they arise from the same course of conduct and assert the same legal theories as the current plaintiffs." *Id. at *15.*

To the same effect is *In re Pandora Media, Inc.*, No. 41 Civ. 1395 (DLC), 2013 U.S. Dist. LEXIS 175800 (S.D.N.Y. Dec. 13, 2013). There, the court allowed music publishers to intervene as of right in lawsuit between ASCAP and a streaming music service. The Court found as a sufficient interest "a financial interest, like the Publishers' interest in avoiding ASCAP licensing fees."

---

[7] *Bernard L. Madoff Inv. Sec. LLC v. Ida Fishman Rev. Tr.* (*In re Bernard L. Madoff Inv. Sec. LLC*), 773 F.3d 411, 419 (2d Cir. 2014), *cert. denied*, 135 S. Ct. 2858 (2015), similarly held that the statutory phrase "related to" a securities contract was framed "quite expansively." The language therefore included a wide range of agreements "related to" (and not limited to) the specific forms of securities contract enumerated in the statute. The *N.J. Carpenters Health Fund* court used the same interpretive approach, giving a natural reading to Rule 24(a)'s broad language (requiring the intervenor to show only "an interest <u>relating to</u> the . . . transaction that is the subject of the action.") (emphasis added).

This practical approach to evaluating the requisite "interest" has also been endorsed by other Circuits. For example, in *Utahns for Better Transp. v. U.S. DOT*, 295 F.3d 1111 (10th Cir. 2002), the Tenth Circuit allowed a trade association to intervene in an action brought by the Sierra Club against various federal agencies and officials. The Sierra Club sought an order vacating the approval of certain transportation plans. Members of the trade association claimed they had existing contracts, pending bids and future prospects that would be adversely affected by the requested relief. *Id.* at 1113.

The trade association and its members would not have been technically bound by an adverse ruling in a case that they were not parties to. Nonetheless, the Court ruled that the "threat of economic injury from the outcome of litigation undoubtedly gives a petitioner the requisite interest." *Utahns for Better Transp.*, 295 F.3d at 1115; *see also Daggett v. Comm'n on Governmental Ethics & Election Practices, 1*72 F.3d 104 (1st Cir. 1999) (prospective political candidates seeking government funding for their campaigns had sufficient "interest" to intervene as of right in lawsuit challenging public-funding statute); *Nat. Res. Def. Council v. U.S. Nuclear Regulatory Com.*, 578 F.2d 1341, 1346 (10th Cir. 1978) (potential licensees for the operation of uranium mills allowed to intervene in lawsuit brought by the NRDC to require environmental impact statements, prior to issuance of any licenses, because of "profound effect" on the would-be intervenors of any such requirement).

In short, Customers plainly possess an "interest" in the outcome of *Cohen* case that is sufficiently direct and substantial to qualify as an element for intervention of right.

**b.    A decision on "value" will, "as a practical matter,"
bind Customers under the doctrine of *stare decisis*.**

The Opinion improperly concludes that Customers "have also failed to demonstrate that the disposition of the *Cohen* matter 'may as a practical matter impede or impair [their] ability to

23

protect [their] interest[s]'" Opinion at 17.  However, the Opinion spends less than one page on this point, possibly because it is beyond reasonable debate that any final appellate resolution of *Cohen* will almost certainly be dispositive on the "value" defense across the spectrum of cases pending against innocent Madoff Securities customers.

As contemplated by Rule 24(a)(2), Customers are very much "so situated that [an adverse result on "value"] may as a practical matter impair or impede the movant's ability to protect its interest."  A final judicial determination on these issues from the Second Circuit would functionally bind all good-faith defendants.  The essential facts in the good-faith suits are largely the same:  a customer deposited funds with Madoff Securities before the bankruptcy, and, with no knowledge of the fraud, withdrew a larger nominal amount – sometimes years or decades later.  The Trustee seeks recovery of the difference between the customers' good faith deposits and good faith withdrawals.

The basic legal arguments supporting the "value" defense for good faith customers are identical:  the statute permits them to retain any value shown – regardless of whether that value exceeds the principal deposited with the broker.  That value may be demonstrated by contract or tort claims under applicable non-bankruptcy law.  The Trustee's assertion that Customers may not retain so-called "fictitious profits" lacks any statutory foundation and is contradicted by the statute.  Specifically, (i) all transfers constituted value "to the extent that[a] transferee . . . gave value to the debtor in exchange for such transfer or obligation" (11 U.S.C. § 548(c)) or satisfied "present or antecedent debts" (11 U.S.C. 548(d)(2)(A)); (ii) all Customer claims against the broker at the time of each transfer constituted value, including contemporaneous contract and tort claims available under substantive law; (iii) cases engrafting a Ponzi scheme limitation to the "value" defense have no applicability in a case involving claims by a customer of a registered

24

broker-dealer and in any event are distinguishable; (iv) there is no SIPA exception to the value

defense because SIPA borrows the Bankruptcy Code's avoidance remedy, including its

limitations; (v) SIPA is part of the Securities Exchange Act of 1934 and the 1934 Act in Section

28(a) preserves all state law rights and remedies, and in Section 29(b) expressly permits a

defrauded victim to enforce his contractual rights even where the contract was obtained by fraud;

and (vi) if the Trustee believes a debtor's contractual obligation defrauds creditors, he must

formally avoid such obligations under his avoidance powers, something he has elected not to do.

Finally, the value defense also permits a customer to receive a return of the property deposited

with the broker, which can only be meaningfully measured against the challenged transfer by

using inflation-adjusted or "constant" dollars or otherwise to account for time-value-of-money

principles.

        If the "value" issues in this adversary proceeding are finally decided on appeal, any such

ruling would, "as a practical matter" (to use the language of the Rule), be dispositive on the

"value" defenses for all defendants in the hundreds of separate cases brought by the Trustee.  As

noted above in Section 1, the bankruptcy court itself recognized this *stare decisis* reality.  *See* Tr.

at 18, lines 11-24. ECF 81, Schwed Decl., Ex. H.

        The Trustee, as plaintiff in control of his many cases, is guaranteed a seat at the table in

this Court and the Second Circuit.  By contrast, Customers, who have nearly $200 million at

stake from such a determination, will have no voice – unless intervention is granted.

        The effect on the Customers need not rise to the level of formal issue or claim preclusion.

Rather, it is sufficient if the proposed intervenor would be prejudiced by the rule of *stare decisis*:

the black-letter rule that federal trial-level "courts in a circuit owe obedience to a decision of the

court of appeals in that circuit."  18 MOORE'S FEDERAL PRAC. §134.02[2] (2016) (citing cases).

25

The Second Circuit rule that *stare decisis* is sufficient to support intervention as of right is made clear in the leading case of *Oneida Indian Nation of Wis. v. New York*, 732 F.2d 261, 265 (2d Cir. 1984) ("Oneida").  Even when a pending action may not directly bind a proposed intervenor, intervention as of right is required if "there is a substantial likelihood that the claims and interests of the proposed intervenors . . . may be adversely affected at least by principles of stare decisis, arising out of the final judgment to be entered in this case."  The circumstances of this proceeding easily meet that standard.

Other courts confirm that a potentially significant *stare decisis* effect of a ruling on the proposed intervenor's economic interests is, in itself, enough to support intervention of right. *See, e.g.*, *Md. Cas. Co. v. W.R. Grace & Co., No*. 88 Civ. 4337, 1996 LEXIS 868, at *7 (S.D.N.Y. Jan. 30, 1996) (inquiry into impairment of interest looks to "the practical disadvantage suffered, and does not require the would-be intervenor to go so far as to show that res judicata principles would affect any later suit they might bring."); *Stone v. First Union Corp.*, 371 F.3d 1305, 1310 (11th Cir. 2004) (a decision on similar claims of ADEA violations (even where non-binding) "would have significant persuasive effects . . . [that] are sufficiently significant to warrant intervention."); *United States v. Oregon*, 839 F.2d 635, 638-39 (9th Cir. 1988) (granting intervention where the determination of common issues "when upheld by an appellate ruling will have a persuasive stare decisis effect in any parallel or subsequent litigation [which] . . . is an important consideration in determining the extent to which an applicant's interest may be impaired."); *Nuesse v. Camp*, 385 F.2d 694, 701-02 (D.C. Cir. 1967) (granting intervention as of right, where, even though the proposed intervenor technically would not "be precluded by res judicata from relitigating this question if an unfavorable answer is rendered in his absence . . . the first judicial treatment of this question, would receive great weight" and an unfavorable appellate

ruling would hamper him "in seeking to vindicate his approach in another court."); *Hartford Fire Ins. Co. v. Mitlof*, 193 F.R.D. 154, 162 (S.D.N.Y. 2000) (while stare decisis "will not support intervention as of right in all cases, it does so here, where as a practical matter, [the secondary insurer's] interests will be impaired by a judgment in [the primary insurer's] favor.").

If and when the Second Circuit is called upon to rule on these issues, it will essentially be "game over."  Once the Second Circuit has decided the merits of the "value" defenses raised in *Cohen*, bankruptcy and District Courts will be compelled to follow along.  And once the Second Circuit has ruled, it would be highly unlikely to reverse itself on the same or closely related issues when Customers finally have the opportunity to reach the Second Circuit in their own cases, perhaps years from now.  The functional result would be to strip Customers of a right afforded all litigants:  the right seek to redress on appeal.

Finally, to extent the bankruptcy court's belief that the Customers' "value" defenses lack merit tacitly informed its decision to deny intervention, it counters an explicit Second Circuit directive.  The *Oneida* Court made clear that "except for allegations frivolous on their face, an application to intervene cannot be resolved by reference to the ultimate merits of the claims which the intervenor wishes to assert following intervention."  *Oneida Indian Nation of Wis.*, 732 F.2d at 265.

> c.    **The existing party cannot adequately represent Customers' interests.**

Although the Opinion concedes that "the burden of showing such an inadequacy [in existing representation] is minimal," the Opinion nonetheless wrongly concludes that the Customers "have failed to show that their own interests are inadequately represented."  Opinion at 18, 20.  The Opinion rests on a "presumption of adequate representation by the party already in the action" where "there is an identity of interest."  Opinion at 19.  However, the Opinion

gives little or no weight to an important caveat to this presumption: that the existing party must

have "sufficient motivation to litigate vigorously and to present all colorable contentions." *Nat.*

*Res. Def. Council v. N.Y. State Dep't of Envtl. Conserv.*, 834 F.2d 60, 62 (2d Cir. 1987). While

Mr. Cohen's attorneys are competent, the Opinion ignores the undisputed evidence on the record

(detailed below) that Mr. Cohen is simply not in a position to fund an adequate appeal to the

Second Circuit on the full range of complex "value" issues.

　　The Supreme Court has set the interpretive guidelines: "The requirement of the Rule

[intervention of right] is satisfied if the applicant shows that the representation of his interest

'may be' inadequate; and the burden of making that showing should be treated as minimal."

*Trbovich v. UMW*, 404 U.S. 528, 538 n.10 (1972) (emphasis added); *accord New Eng. Petrol.*

*Corp. v. Fed. Energy Admin.*, 71 F.R.D. 454, 458 (S.D.N.Y. 1976); *see also CBS, Inc. v. Snyder*,

136 F.R.D. 364, 368 (S.D.N.Y. 1991) ("The burden of persuasion to demonstrate adequacy of

representation falls on the party opposing intervention.") (citations omitted).

　　Here, the "existing part[y]" cannot "adequately represent" Customers' interests as

contemplated by Rule 24(a)(2). This is in no way impugns the competence or diligence of Mr.

Cohen's counsel. Rather, it is a practical recognition of the realities of shouldering the burden of

a complex appeal on which the fates of hundreds of others depend, while representing a private

individual of modest means, in a smaller-stakes case.

　　At the September 30, 2015 preliminary conference on Customers' intervention request,

counsel for Mr. Cohen indicated that he would welcome Customers' intervention. He stated that

the litigation of these complex "value" legal issues (through appeal, if necessary) would be

inordinately expensive for Mr. Cohen, who has limited means. Schwed Decl. Ex. H (Tr. at 22,

lines 20-23) ("He [Mr. Cohen] doesn't have the wherewithal and we don't have the wherewithal

to spend a quarter of million dollars or something in that range from here on in all the way up to the Second Circuit."). Moreover, Mr. Cohen, for the last few years has been employed only part-time. *Id.* at 22, lines 17-19. He has been unable to pay his counsel even the modest $25,000 fee he was charged for their representation of him to that date, in the pretrial phases over the last several years. *Id.* at 21, line 22-24, line 9.

Moreover, the undisputed trial record also shows that after leaving Madoff Securities and moving to Virginia, Mr. Cohen's income (including wages, salary and non-Madoff Securities interest and dividends) never exceeded $45,000 a year. DX7, Ex. FF (Schwed Decl. Ex. 7); DX1, p. 8 (Schwed Decl. Ex. I); DX2, p.10 (Schwed Decl. Ex. J); DX3, p.11 (Schwed Decl. Ex. K); DX4, p. 6 (Schwed Decl. Ex. L); DX5, p. 9 (Schwed Decl. Ex. M); DX7, Ex. A, p. 16 (Schwed Decl. Ex. N). Schwed Decl., All this time, Mr. Cohen was also supporting his wife and two minor children. DX1, p. 8. (Schwed Decl. Ex. I).

In short, it is doubtful that Mr. Cohen has the current means to finance his own defense, let alone adequately represent Customers being sued for nearly $200 million in a multi-forum presentation and appeal on these complex issues.

In addition, the vast quantitative differences in the amounts demanded from Mr. Cohen ($1.1 million) and Customers (nearly $200 million) are legally significant. For example, in *Glancy v. Taubman Ctrs., Inc.*, 373 F.3d 656, 675 (6th Cir. 2004), the Court ruled that an existing party did not "adequately represent" the absentee because, among other things, while the existing party "would have a similar interest in fighting any action to invalidate the stock . . . the intensity of that interest differs from [the absentee], as [the absentee] controls [500] times more shares." The Court went on to observe: "Courts have held that <u>asymmetry in the intensity of the interest can prevent a named party from representing the interests of the absentee."</u> *Glancy*, 373

29

F.3d at 675 (emphasis added); *see also B. Fernandez & Hnos., Inc. v. Kellogg USA, Inc.,* 440

F.3d 541, 546 (1st Cir. 2006); ("One way for the intervenor to show inadequate representation is

to demonstrate that its interests are sufficiently different in kind <u>or degree</u> from those of the

named party.") (emphasis added).

The Opinion incorrectly discounts these authorities because they are from "outside the

Second Circuit."  But their rationales are compelling and consistent with the Second Circuit

requirement that the existing party must have "sufficient motivation to litigate vigorously and to

present all colorable contentions."  *NRDC v. New York State Dep't of Environmental*

*Conservation, supra*, 834 F.2d at 62; *see also Regents, supra,*, 516 F.2d at 352 (2d Cir. 1975) (in

allowing pharmacists to intervene:  "we are satisfied that there is a likelihood that the

pharmacists will make a more vigorous presentation of the economic side of the argument than

would [the existing party]"); *see also Sackman v. Liggett Grou*p, 167 F.R.D. 6, 22 (E.D.N.Y.

1996) (interests of four major tobacco companies not adequately represented by existing

defendant tobacco company because, among other things, defendant tobacco company "may

have a somewhat different agenda with respect with litigation tactics than the other tobacco

companies" and concerns about the defendant tobacco company's "new counsel's ability to

mount an adequate defense.").

Apart from the economic factors inhibiting a comprehensive exposition by Mr. Cohen's

counsel, it would be inappropriate and unfair to insist that Mr. Cohen's counsel frame and fully

explicate Customers' defense theories and arguments.  Mr. Cohen is not a class representative.

His counsel will do precisely what attorneys should do:  represent Mr. Cohen and his interests.

But if those interests diverge from the interests of Customers, Mr. Cohen's lawyers will be duty-

bound to do what is best for Mr. Cohen, without regard to the interests of anyone else.  So while

the interests of Customers and Mr. Cohen currently align, litigation goals and tactics can change.

Any such concerns can be eliminated, in advance, by allowing Customers' limited intervention at

this stage of the proceeding for the limited purposes of being heard on the legal issues involving

the "value" defenses of Section 548(c).

3.    **The Opinion wrongly declined to allow
      the alternative relief of permissive intervention.**

The Opinion's main rationale for rejecting the alternative relief of intervention by

permission is:  "The [customers] have had several opportunities to present their antecedent

debt/value arguments, those arguments have been rejected, and hearing them again will not add

value to the disposition of antecedent debt/value defense in this Court."  Opinion at 21-22.  *See

also* Opinion at 4-6 (detailing prior efforts by Customers to obtain redress in the bankruptcy

court and before District Judge Rakoff).

Judge Bernstein, in the Opinion, suggests that Customers' attempt to intervene was just a

sly legal stratagem, claiming that Customers allegedly "want to bypass their own cases, intervene

in Cohen's adversary proceeding and appeal an adverse final judgment to the Second Circuit."

Opinion at 6.  This rationale is misplaced.  The Trustee controls his litigation agenda, not

Customers.  The Trustee, not Customers, established the litigation procedures governing these

cases.  Customers seek to intervene in *Cohen* because the Trustee has pushed this relatively

small-stakes case to the front of the line.  It will be the first of the hundreds of cases in which

these critical "value" defense issues will be presented – and it is the one that on which the scope

of the value defense will be decided by the appellate courts.

Customers would have preferred that one of their cases, on a record that they had

developed, be the first to go up on appeal.  But their hand has been forced by the Trustee.

Customers' attempts to be heard are purely defensive.

31

The Customer group's counsel have now worked together for years in the Madoff

Securities proceedings with the complex "value" defense issues.  Customers took the lead on this

issue at the District Court level before Judge Rakoff, and at the bankruptcy court level before

Judges Lifland and Bernstein.  If Customers are denied intervention, these essential defenses will

be decided at the appellate level without the input of the very parties who have the most detailed

knowledge of the intricacies of these defenses.  That would disserve the interests not just of

Customers and Mr. Cohen, but (Customers submit) also the courts that will be called upon to

decide the issues.

It is also irrelevant that Customers have had opportunities to litigate certain facets of the

"value" issues before the bankruptcy court and one District Judge.  The whole point – which

Customers made clear at all stages – is that issues of this magnitude will almost certainly end up

being decided by the Second Circuit, and could well reach the Supreme Court.  So the Opinion's

apparent complaint about Customers' previous chances to litigate this issue is entirely off the

point.  Customers need a chance to litigate the "value" defense on appeal, where that defense

ultimately will be resolved.  Otherwise, their technical right to appeal in their own cases, much

later, will be meaningless.

In any event, the standards for permissive intervention are flexible.  Permissive

intervention is appropriate where the movant "has a claim or defense that shares with the main

action a common question of law or fact."  Rule 24(b)(1)(B); *see also Provident Bank v. Cmty.*

*Home Mortg. Corp.*, No. 02-cv-5219 (DRH/JO), 2005 WL 1801654, at *10 (E.D.N.Y. July 28,

2005) (permissive intervention warranted when common questions of law and fact arose from

the same underlying fraud).  Other relevant factors include whether intervenors' "interests are

adequately represented by the other parties, and whether parties seeking intervention will

32

significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented."  *U.S. Postal Serv. v. Brennan*, 579 F.2d 188, 191-92 (2d Cir. 1978) (internal quotation marks and citation omitted).

Customers easily meet these criteria.  As a matter of sound judicial discretion, permissive intervention should accordingly be allowed here.

### a.     Customers have material interests in common with the subject of this adversary proceeding.

As detailed above, Customers raise significant legal questions that are identical to or otherwise significantly implicated by those presented in this adversary proceeding:  the scope and extent of the "value" defense.  Where, as here, a final judicial ruling in Mr. Cohen's case will, as a practical matter, adjudicate the legal principles that will determine Customers' rights, intervention should be permitted.  *See McNeill v. N.Y. City Hous. Auth.*, 719 F. Supp. 233, 250 (S.D.N.Y. 1989) (allowing permissive intervention where the intervenors' legal interests were common to the ones raised by the parties, and the issues did not turn on individual facts and circumstances).

### b.     Intervention will not result in undue delay or prejudice to any party – and the Trustee's claim of "prejudice" is just subterfuge for his apparent desire to litigate the "value" defense only against lone, underfunded adversaries.

Under Rule 24(b)(3), "the court must consider whether the intervention will unduly delay or prejudice adjudication of the original parties' rights."  Here, no delay or prejudice would result from Customers' intervention.

The Opinion did not – and could not – identify any legitimate additional burden, either in cost or delay that could result from Customers' limited-scope intervention.  Customers sought no delay in the *Cohen* trial, which unfolded precisely in accordance with the court-approved schedule.  *See Thomas v. Henderso*n, 297 F. Supp. 2d 1311, 1326 (S.D. Ala. 2003) (allowing

insurance company to intervene for the "limited purpose" of submitting special jury

interrogatories, where insurance company would not participate in the trial and the intervention

would require no additional discovery or delay the trial).  The appellate process likewise would

not be delayed by intervention; Customers would be bound by applicable deadlines.

Even if there were a risk of some delay from intervention (which would not be the case

here), the Second Circuit emphasizes that "[t]he principal consideration set forth in the Rule is

whether the intervention will <u>unduly</u> delay or prejudice the adjudication of the rights of the

original parties."  *U.S. Postal Serv.*, 579 F.2d at 191-92 (internal quotation marks omitted;

emphasis added); *Citizens for an Orderly Energy Policy, Inc. v. County of Suffolk*, 101 F.R.D.

497, 502-03 (E.D.N.Y. 1984) (even if additional parties took additional time, permissive

intervention is proper if the resulting delay will not be undue) (citing 7C Wright, Miller & Kane,

Fed. Prac. & Proc., Civil 3d § 1913); *see also Jones v. Ford Motor Credit Co.*, No. 00 Civ. 8330

(RJH) (KNF), 2004 U.S. Dist. LEXIS 13224, at *6 (S.D.N.Y. July 13, 2004) (finding that despite

delay, "efficiency is best served" by allowing intervention).

Far from delaying matters here, intervention would further the interests of judicial

management and litigation efficiency.  *See Sec. Ins. Co. v. Schipporeit, Inc.*, 69 F.3d 1377, 1381

(7th Cir. 1995) ("[T]he most obvious benefits of intervention in general are efficiency and

consistency that result from resolving related issues in a single proceeding.").  The Trustee had

little problem with – and in fact encouraged – consolidated briefing on <u>seven</u> issues in the

Madoff Securities liquidation, including:  (i) the Trustee's standing; (ii) the applicability of

Bankruptcy Code Section 546(e); (iii) the calculation of net equity; (iv) the treatment of inter-

account transfer issues; (v) the effect of extraterritoriality on the Trustee's avoidance claims; (vi)

the jurisdiction of the Bankruptcy Court after *Stern v. Marshall*; and (vii) the previous contested proceedings on "value" before Judge Rakoff and the bankruptcy court.  Schwed Decl. ¶ 14.

Moreover, when the District Court's application of Section 546(e) of the Bankruptcy Code significantly reduced the scope of the Trustee's potential reach-back for clawbacks from six years (under New York law) to two years (under the Bankruptcy Code), the Trustee readily consolidated all affected cases – those decided by Judge Rakoff and others that involved the very same issue – for consolidated appellate determination in the Second Circuit.  There is no principled (or valid) reason for a different result here.

It is odd that the Trustee and the bankruptcy court would not welcome Customers' intervention.  If intervention were permitted, the defendants in all 57 of Customers' adversary proceedings would be bound by the ultimate appellate results, as would the Trustee.  And if the Trustee ultimately were to lose on appeal, those remaining clawback cases would, effectively, come to an end, sparing the courts' resources to address other matters.

In other words, as a matter of sound judicial administration, it makes sense for these issues to be joined.  At the beginning of the Madoff Securities liquidation, the Trustee elected to sue nearly 1,000 good-faith defendants in separate adversary proceedings.  The Trustee no doubt could have asked the bankruptcy court to adopt a customized, consolidated approach, along the lines of multidistrict litigation or class-action procedures.  *See, e.g.*, Fed. R. Civ. P. 42 (made applicable by Fed. R. Bankr. P. 7042).  Instead, the Trustee elected to proceed in this "divide and conquer" way.  Unfortunately, the Opinion rewards the Trustee by allowing him to parlay his inherent procedural advantage into a *de facto* muzzle on some of his most vigorous adversaries.

No doubt the Trustee would rather face only the opposition of a single underfunded defendant.  The Trustee has suffered some earlier significant appellate losses, including one that

eliminated nearly $2 billion in potential clawback claims, at the hands of members of the

Customer group.[8]  Presumably, the Trustee would prefer to litigate the "value" defense issues

against an opponent with only a limited ability to mount a full-scale defense, rather than against

the group that developed these defenses; prevailed against the Trustee in an earlier high-stakes

appeal; and has the financial wherewithal and motivation to pursue the defenses vigorously.  But

the Trustee's wishes are not dispositive.

Courts have the perspective to see through such tactics.  For example, the Seventh

Circuit, in granting an intervention of right over the opposition of an insurance company, wryly

observed:  "[The insurance company] opposed LaSalle's petition to intervene because it wanted

a quick, unopposed adjudication . . . . It wanted to play the Washington Generals and get out of

town with a quick win.  The district court wisely allowed a more worthy opponent to get into and

onto the court."[9]  *Sec. Ins. Co.*, 69 F.3d at 1381.

> **c.    Adequacy of current representation is not a dispositive
> factor in the context of permissive intervention.**

As previously discussed, Mr. Cohen cannot adequately represent the interests of the

Customers on the "value" issue.  While this factor is a prerequisite for intervention of right under

Rule 24(a)(2), it is only one of the considerations for permissive intervention.  *See* Rule 24(b)

(no mention of adequacy of representation); *United States v. Columbia Pictures Indus.*, 88

F.R.D. 186, 189 (S.D.N.Y. 1980) (reliance on adequate representation "seems inappropriate" for

---

[8] *Bernard L. Madoff Inv. Sec. LLC*, 773 F.3d 411*; see also Picard v. JPMorgan Chase Bank & Co. (In re Bernard L. Madoff Inv. Sec. LLC)*, 721 F.3d 54 (2d Cir. 2013), cert. *denied, 134* S. Ct. 982 (2014) (rejecting Trustee's attempt to pursue common law claims to hold banks responsible for Madoff's fraud).

[9] The Washington Generals "were an American exhibition basketball team best known for their spectacular losing streak in exhibition games against the Harlem Globetrotters." https://en.wikipedia.org/wiki/Washington_Generals.

36

permissive representation).  In short, even if the Court finds that Mr. Cohen can adequately

represent Customer interests, permissive intervention would still be appropriate.

### d.     <u>Customers' request for intervention is "timely."</u>

Any request for intervention must be "timely."  The Opinion correctly holds that

Customers met this requirement.  Opinion at 7-10.

### 4.     <u>Alternatively, the Opinion incorrectly rejected Customers' request for leave to submit post-trial briefs as amicus curiae.</u>

As if denial of any intervention by Customers were not enough, the Opinion denies even

the limited alternative relief of filing an *amicus* brief.  Opinion at 22-23.  Although, as detailed

above, intervention is the appropriate mechanism here, the submission of a Customer brief as

*amici* should have been permitted.  *See NML Capital, Ltd. v. Republic of Arg*., 727 F.3d 230,

239-40 (2d Cir. 2013), *cert. denied*, 134 S. Ct. 2819 (2014) (denying intervention, but

considering movants' submissions as being from amici curiae); *United States v. El-Gabrowny*,

844 F. Supp. 955, 957 n.1 (S.D.N.Y. 1994) (amicus briefs allowed when "they are of aid to the

court and offer insights not available from the parties").  While there is no single standard for

obtaining leave to file an *amicus* brief in the district or bankruptcy courts, courts generally have

broad inherent discretion and authority to permit or deny an appearance as *amicus curiae* in any

particular matter.  *Onondaga Indian Nation v. State of N.Y.*, No. 97-CV-445, 1997 WL 369389,

at *2 (N.D.N.Y. June 24, 1997); *Jam. Hosp. Med. Ctr., Inc. v. United Health Group, Inc.*, 584 F.

Supp. 2d 489, 497 (E.D.N.Y. 2008) (discussing broad discretion for granting amicus

participation).

*Amicus curiae* briefs serve the function, among others, of "provid[ing] supplementary

assistance to existing counsel and insuring a complete and plenary presentation of difficult issues

so that the court may reach a proper decision."  *United States v. Gotti*, 755 F. Supp. 1157, 1158

(E.D.N.Y. 1991).  Pecuniary interest is no bar to participation as *amici*, and the granting of leave

does not turn on the adequacy of representation of the principal parties.  *Neonatology Assocs. v.*

*Comm'r*, 293 F.3d 128, 131-32 (3d Cir. 2002).

Here, however, the bankruptcy court concluded that Customers' position as litigants

arguing a position directly adverse to the Trustee on the very same issues in dispute in *Cohen*

rendered them unfit to be *amici*.  This narrow view of the status and role of an *amicus*

submission departs from the example set by the Second Circuit in earlier appellate proceedings

in the Madoff Securities liquidation.  In the *Fishman* appeal – which involved the application of

Section 546(e) to limit the reach-back period to which the Trustee could assert his avoidance

claims against retail securities customers (including the Customers here) – the Second Circuit

accepted an *amicus* brief filed by a group of financial institutions who, although they were

alleged by the Trustee to have acted in bad faith (unlike the appellant innocent customers), also

asserted that Section 546(e) limited the Trustee's claims in the institutions' cases.  Thus, those

institutions, too, would have been likely benefitted at a later stage of their proceedings by a

favorable appellate ruling on the application of Section 546(e).

As here, the Trustee opposed the institutions' filing of an *amicus* brief.  However, the

Second Circuit granted leave and accepted the submission.  *See Picard v. Ida Fishman Rev. Trust*

*(In re Bernard L. Madoff Inv. Sec. LLC)*, No. 12-2557 (2d Cir.), ECF Nos. 305 (motion of

financial institutions for leave to file an *amicus* brief), 343 (order granting motion).

In sum, as alternative relief, the bankruptcy court should have accepted Customers' brief

on the value defense in the capacity as *amici curiae*.

## CONCLUSION

For the above reasons, Customers respectfully request that (i) the Opinion's proposed findings of fact and conclusions of law be rejected, and (ii) Customers be allowed to intervene as of right or, alternatively, by permission. If both forms of intervention are denied, then they should be permitted to participate through the submission of a consolidated brief as *amici curiae*.

Dated:  May 9, 2016

Respectfully submitted[10],

LOEB & LOEB LLP

By:  /s/  Gregory Schwed
    Gregory Schwed
    Daniel B. Besikof
    Bethany D. Simmons
    345 Park Avenue
    New York, New York 10154
    Tel: (212) 407-4000
    Email:gschwed@loeb.com

BAKER & MCKENZIE LLP

By:  /s/ Richard A. Kirby
    Richard A. Kirby
    Laura K. Clinton
    815 Connecticut Avenue, N.W.
    Washington, District of Columbia 20006
    Tel:  (202) 452-7020
    Email:  richard.kirby@bakermckenzie.com

MILBERG LLP

By:  /s/ Matthew A. Kupillas
    Matthew A. Kupillas
    One Pennsylvania Plaza 49th Floor
    New York, New York  10119
    Tel:  (212) 613-5697
    Email:  mkupillas@milberg.com

DENTONS US LLP

By:  /s/ Carole Neville
    Carole Neville
    1221 Avenue of the Americas
    New York, New York  10020-1089
    Tel: (212) 768-6889
    Email: carole.neville@dentons.com

PRYOR CASHMAN LLP

By:  /s/ Richard Levy, Jr.
    Richard Levy, Jr.
    7 Times Square
    New York, NY  10036.
    Tel: (212) 421-4100
    Email:  rlevy@pryorcashman.com

---

[10] *See* Schedule 1 for list of clients.

## Schedule 1

### LOEB & LOEB LLP

| Case Name | Adv. Proc. No. |
|---|---|
| Picard v. Kenneth Evenstad Trust, et al. | 10-4342-SMB |
| Picard v. Kenneth Evenstad Trust, et al. | 10-4933-SMB |
| Picard v. Mark Evenstad Trust, et al. | 10-4512-SMB |
| Picard v. MBE Preferred Ltd Partnership, et al. | 10-4952-SMB |
| Picard v. Serene Warren Trust, et al. | 10-4514-SMB |
| Picard v. SEW Preferred Ltd Partnership, et al. | 10-4945-SMB |

### BAKER & MCKENZIE

| Case Name: | Adv. Proc. No. |
|---|---|
| Picard v. Lanx | 10-4384-SMB |
| Picard v. Lowery | 10-4387-SMB |
| Picard v. South Ferry | 10-4488-SMB |
| Picard v. South Ferry | 10-4350-SMB |
| Picard v. ZWD | 10-4374-SMB |

### MILBERG LLP

| Case Name: | Adv. Proc. No. |
|---|---|
| Picard v. Gary Albert | 10-4966-SMB |
| Picard v. Aspen Fine Arts Co. | 10-4335-SMB |
| Picard v. Gerald Blumenthal | 10-4582-SMB |
| Picard v. Norton A. Eisenberg | 10-4576-SMB |
| Picard v. The Estate of Ira S. Rosenberg, et al. | 10-4978-SMB |
| Picard v. P. Charles Gabriele | 10-4724-SMB |
| Picard v. Stephen R. Goldenberg | 10-4946-SMB |
| Picard v. The Joseph S. Popkin Revocable Trust, et al. | 10-4712-SMB |
| Picard v. Potamkin Family Foundation I, Inc. | 10-5069-SMB |
| Picard v. Mitchell Ross | 10-4723-SMB |
| Picard v. Harold A. Thau | 10-4951-SMB |
| Picard v. The William M. Woessner Family Trust, et al. | 10-4741-SMB |

### PRYOR CASHMAN LLP

| Case Name: | Adv. Proc. No. |
|---|---|
| Picard v. Patrice M. Auld, et al. | 10-4343-SMB |
| Picard v. Bernard Marden Profit Sharing Plan, et al. | 10-5429-SMB |
| Picard v. Abraham J. Goldberg, et al. | 10-5439-SMB |
| Picard v. Charlotte Marden Irrevocable Trust, et al. | 10-5118-SMB |
| Picard v. James P. Marden, et al. | 10-4341-SMB |
| Picard v. Marden Family Limited Partnership, et al. | 10-4348-SMB |
| Picard v. Murray Pergament Trust, et al. | 10-5194-SMB |
| Picard v. Stanley Plesent | 10-4375-SMB |

**DENTONS US LLP**

| Case Name: | Adv. Proc. No. |
|---|---|
| Picard v. Alvin Gindel Revocable Trust, et al. | 10-4925-SMB |
| Picard v. America-Israel Cultural Foundation | 10-5058-SMB |
| Picard v. BAM L.P., et al. | 10-4401-SMB |
| Picard v. Barbara Berdon | 10-4415-SMB |
| Picard v. Eugene J. Ribakoff 2006 Trust, et al. | 10-5085-SMB |
| Picard v. Laura E. Guggenheimer Cole | 10-4882-SMB |
| Picard v. Sidney Cole | 10-4672-SMB |
| Picard v. The Federica Ripley French Revocable Trust, et al. | 10-5424-SMB |
| Picard v. James Greiff | 10-4357-SMB |
| Picard v. Harold Hein | 10-4861-SMB |
| Picard v. Toby T. Hobish, et al. | 10-5236-SMB |
| Picard v. Lapin Children LLC | 10-5209-SMB |
| Picard v. David Markin, et al. | 10-5224-SMB |
| Picard v. Stanley Miller | 10-4921-SMB |
| Picard v. Neil Reger Profit Sharing Keogh, et al. | 10-5424-SMB |
| Picard v. Norma Shapiro Revocable Declaration of Trust under Agreement Dated 9/16/2008 | 10-4486-SMB |
| Picard v. Rose Gindel Trust, et al. | 10-4401-SMB |
| Picard v. S&L Partnership, et al. | 10-4702-SMB |
| Picard v. Barry Weisfeld | 10-4332-SMB |