**FRESHFIELDS BRUCKHAUS DERINGER US LLP**
601 Lexington Avenue
New York, NY 10022
Timothy P. Harkness

*Attorneys for the Trust Defendants (as Defined)*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION<br><br>      Plaintiff-Applicant,<br><br>  v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC<br><br>      Defendant. | Adv. Pro. No. 08-01789 (SMB)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>      Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>      Plaintiff,<br><br>  v.<br><br>FEDERICO CERETTI *et al.*,<br><br>      Defendants. | Adv. Pro. No. 09-1161 |

## MEMORANDUM OF LAW IN OPPOSITION TO THE SIPA TRUSTEE'S
## MOTION TO COMPEL DEFENDANTS TO
## <u>PRODUCE DOCUMENTS AND PARTICIPATE IN DISCOVERY</u>

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................ 1

STATEMENT OF FACTS ............................................................................................... 5

    A.  The SIPA Trustee Sues the Kingate Funds—but not the Trust Defendants—in New York in 2009 .............................................................................................................. 5

    B.  The Funds Enter Liquidation in 2009 and Sue the Trust Defendants in Bermuda in 2010 .............................................................................................................................. 5

    C.  The SIPA Trustee Initiates Proceedings Against the Trust Defendants in the Southern District of New York in 2011 ...................................................................................... 6

    D.  The Trust Defendants Have Fully Briefed Why the Extraterritoriality Decision Dismisses the Adversary Proceeding Against Them ................................................ 8

    E.  Discovery Takes Place in Bermuda ...................................................................... 10

    F.  The Trustee Requests Extensive Discovery, Including Documents Obtained During the Bermuda Proceedings ...................................................................................... 11

ARGUMENT ................................................................................................................ 12

I.    THE TRUST DEFENDANTS CANNOT BE COMPELLED TO PARTICIPATE IN DISCOVERY BECAUSE THIS COURT LACKS PERSONAL JURISDICTION OVER THEM .............................................................................................................. 12

II.   THE MOTION SHOULD BE DENIED BECAUSE THE TRUST DEFENDANTS HAVE A VIABLE MOTION TO DISMISS PENDING AND EQUALLY VIABLE MOTIONS TO DISMISS YET TO BE MADE .................................................... 14

    A.  The Trust Defendants Have Made a Robust and Wholly Dispositive Motion to Dismiss, and Have Additional Grounds for Dismissal .......................................... 14

    B.  Participation in Discovery Would Impose a Significant Burden on the Trust Defendants ............................................................................................................ 16

    C.  The SIPA Trustee Will Not Be Prejudiced If Discovery Is Delayed .................... 17

III.  THE TRUST DEFENDANTS MAY NOT BE COMPELLED TO PRODUCE DOCUMENTS BECAUSE THE SIPA TRUSTEE HAS NOT EFFECTED SERVICE OF THE REQUESTS .......................................................................... 18

IV.  DEFERENCE SHOULD BE GIVEN TO THE IMPLIED UNDERTAKING OF CONFIDENTIALITY IN PLACE IN THE BERMUDA PROCEEDINGS ......... 19

V.   THE SIPA TRUSTEE SHOULD BE PROHIBITED FROM CIRCUMVENTING ESTABLISHED PROCEDURES FOR OBTAINING DISCOVERY FROM FOREIGN NON-PARTIES ...................................................................................... 20

CONCLUSION ............................................................................................................. 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alki Partners L.P., v. Vata Holding GMBH,*
769 F. Supp. 2d 478 (S.D.N.Y. 2011) ..................................................................................12

*Boelter v. Hearst Commc'ns, Inc.,*
No. 15 Civ. 03934, 2016 WL 361554 (S.D.N.Y. Jan. 28, 2016) ......................................14, 15

*CE Int'l Res. Holdings, LLC v. S.A. Minerals Ltd. P'ship,*
No. 12-CV-08087 (CM)(SN), 2013 WL 2661037 (S.D.N.Y. June 11, 2013)19, 20 BA_Cite_3F331C_00007

*Daimler AG v. Bauman,*
134 S. Ct. 746 (U.S. 2014) ..................................................................................................12

*Filus v. Lot Polish Airlines,*
907 F.2d 1328 (2d Cir. 1990) ...............................................................................................13

*Gandler v. Nazarov,*
No. 94 Civ. 2272 (CSH), 1994 WL 702004 (S.D.N.Y. Dec. 14, 1994) ............................14, 17

*Gucci America, Inc. v. Bank of China,*
768 F.3d 122 (2d Cir.2014) .................................................................................................13

*Hong Leong Fin. Ltd. (Singapore) v. Pinnacle Performance Ltd.,*
297 F.R.D. 69 (S.D.N.Y. 2013).........................................................................................14, 15

*Integrated Sys.and Power, Inc., v. Honeywell Int'l, Inc.,*
No. 09 Civ. 5874, 2009 WL 2777076 (Sept. 1, 2009) ...........................................................15

*Jazini v. Nissan Motor Co.,*
148 F.3d 181 (2d Cir. 1998) .................................................................................................13

*Laydon v. Mizuho Bank, Ltd.,*
No. 12 Civ. 3419 (GBD), 2015 WL 1515358 (S.D.N.Y. Mar. 31, 2015) ..............................13

*Linde v. Arab Bank, PLC,*
262 F.R.D. 136 (E.D.N.Y. 2009)..........................................................................................19

*Motorola Credit Corp. v. Uzan,*
No. 02 Civ. 666 JSR, 2015 WL 5613066, (S.D.N.Y. Sept. 9, 2015).......................................13

*Negrete v. Citibank, N.A.,*
No. 15 Civ. 7250, 2015 WL 8207466 (S.D.N.Y. Dec. 4, 2015) ............................................17

*Niv v. Hilton Hotels Corp.*,
No. 06-cv-7839, 2007 WL 510113 (S.D.N.Y. Feb. 15, 2007) ...................................17

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
No. 05-MD-1720 (JG)(JO), 2010 WL 3420517 (E.D.N.Y. Aug. 27, 2010) ...........................19

*Picture Patents, LLC v. Terra Holdings LLC*,
No. 07-cv-5465, 2008 WL 5099947 (S.D.N.Y. Dec. 3, 2008)...................................17

*Secs. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC*,
513 B.R. 222 (S.D.N.Y. 2014) ...................................................................8

*Secs. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC*,
No. 12-mc-0115 (JSR) (S.D.N.Y. June 7, 2012), ECF No. 167 ................................8

*Société Nationale Industrielle Aerospatiale v. United States*,
482 U.S. 522 (1987) ..............................................................................19

*In re Term Commodities Cotton Futures Litig.*,
No. 12 Civ. 5126, 2013 WL 1907738 (S.D.N.Y. May 8, 2013) ................................16

*Estate of Ungar v. Palestinian Auth.*,
400 F. Supp. 2d 541 (S.D.N.Y. 2005)......................................................12, 13

*Walden v. Fiore*,
134 S. Ct. 1115 (2014) .........................................................................13

*Whiteman v. Fed. Republic of Austria*,
No. 00 Civ. 8006 (SWK), 2002 WL 31368236 (S.D.N.Y. Oct. 9, 2002)................................13

**Statutes**

11 U.S.C. § 550(a)(2) ...........................................................................14

CPLR 302 .......................................................................................12

**Rules**

Fed. R. Bankr. 7012..........................................................................9 BA_Cite_3F331C_000085

Fed. R. Civ. P. 12 .............................................................................9

Fed. R. Civ. P. 26(d)(2)(b) .................................................................4, 18

Fed. R. Civ. P. 34.............................................................................11

Fed. R. Civ. P. 26(f)........................................................................3, 4, 18

**Other Authorities**

T. Markus Funk, *Mutual Legal Assistance Treaties and Letters Rogatory: A
Guide for Judges* 17–21 (Federal Judicial Center 2014) ..........................................................20

The Trust Defendants[1] submit this memorandum of law in opposition to the SIPA Trustee's[2] Motion to Compel Defendants to Produce Documents and Participate in Discovery (the "*Motion*"), ECF No. 252.  For the reasons that follow, the Motion should be denied.

## PRELIMINARY STATEMENT

Seven years after commencing this Adversary Proceeding, the SIPA Trustee now demands—with sudden urgency—that the Trust Defendants participate in wide-ranging, substantive discovery.  He makes this demand even though the Court lacks personal jurisdiction over the Trust Defendants; even though the Trust Defendants have, for years, maintained that the claims against them must be dismissed on a variety of grounds (and have a dispositive motion to dismiss pending *sub judice*); and even though the orderly management of all of the Madoff cases to which the SIPA Trustee has agreed has meant that the Trust Defendants have not yet had the opportunity to challenge the legal sufficiency of the SIPA Trustee's Fourth Amended Complaint  Mar. 17, 2014, ECF No. 5879 (the "*Complaint*," cited as "Compl.").  The Court should deny the Motion as premature and ill-founded.

Until now, the SIPA Trustee has been in no hurry to pursue his claims against the Trust Defendants.  In 2009, he sued Kingate Global Fund Limited and Kingate Euro Fund

---

[1] The Ashby Trust; El Prela Trust; Alpine Trustees Limited ("Alpine"), individually and as trustee of El Prela Trust; Port of Hercules Trustees Limited ("Port of Hercules"), individually and as trustee of El Prela Trust; First Peninsula Trustees Limited ("First Peninsula"), individually and as trustee of The Ashby Trust; El Prela Group Holding Services Limited ("El Prela Holding"), Ashby Holding Services Limited ("Ashby Holding"), Ashby Investment Services Limited ("Ashby Investment"), and El Prela Trading Investments Limited ("El Prela Trading").  The Ashby Trust and El Prela Trust are referred to together as the "Trusts." Alpine, Port of Hercules, and First Peninsula are referred to collectively as the "Trustees."

[2] The Complaint was filed by Irving Picard as trustee for the estate of Bernard L. Madoff Investment Services, Inc. ("BLMIS").  This Memorandum refers to Mr. Picard as the "SIPA Trustee."

Limited (the "*Funds*"), but the Original Complaint did not name a single Trust Defendant. The SIPA Trustee amended the Original Complaint twice over the next 18 months, but never once mentioned the Trust Defendants. In fact, he waited until 2011—after the Funds had instituted proceedings against the Trust Defendants in Bermuda ("the *Bermuda Proceedings*"), and after the SIPA Trustee had sued the Trust Defendants in London—to amend the Complaint to include claims against the Trust Defendants.

Now, after having amended the Complaint once again in 2014, the SIPA Trustee seeks to depart from the accepted procedural course, and sidestep the conventional method of determining the legal sufficiency of his complaint—a motion to dismiss—by proceeding directly to discovery. But even a cursory review of the Complaint demonstrates that it offers little more than vague conclusions and half-baked legal theories to support its claims against the Trust Defendants. The Complaint's allegations are not sufficient to state a claim against the Trust Defendants. They are, therefore, insufficient to subject the Trust Defendants to the expense and burden of wide-ranging, substantive discovery. The SIPA Trustee's Motion should be denied for at least five reasons.

*First*, the Court may not compel the Trust Defendants to participate in discovery because this Court lacks personal jurisdiction over them. As non-U.S. entities governed by foreign law who are not alleged to have conducted any business in the United States, the Trust Defendants are beyond the jurisdictional reach of this Court, and the Complaint offers no allegations that would support a finding of specific jurisdiction over them. Absent allegations sufficient to establish this Court's jurisdiction over the Trust Defendants, there is no basis upon which to order discovery as to them—not

jurisdictional discovery, and certainly not the wide-ranging discovery that the SIPA Trustee now seeks.

*Second*, the Trust Defendants have submitted a robust and wholly dispositive explanation as to why the claims against them must be dismissed based on the extraterritorial nature of the transfers that the Trust Defendants are alleged to have received. This submission, which has been pending *sub judice* for six months, is not the only dispositive motion that the Trust Defendants could make. Indeed, as to the Trust Defendants, the Complaint fails as a matter of law in a number of critical respects. Because of the weakness of the Complaint against them, the Trust Defendants should be afforded an opportunity to assert their legal defenses before being subjected to the burdens of discovery.

*Third*, full-scale discovery of the kind contemplated by the Requests is procedurally improper at this stage. Following extensive negotiations among the parties, the Extraterritoriality Order set forth a schedule for deciding the pending motions to dismiss based on extraterritoriality, and made clear that the Court would first address the Extraterritoriality Issue before moving on to other issues. *See* Court's Order Concerning Further Proceedings on Extraterritoriality Motion and Trustee's Omnibus Motion for Leave to Replead and for Limited Discovery, ¶ 12, Dec. 10, 2014, ECF No. 8800 (the "*Extraterritoriality Order*"). The Extraterritoriality Order also denied the limited discovery that the Trustee sought at the time, deferring discovery until such time as the Court resolves the Extraterritoriality Motion. *Id*. at ¶ 14. This carefully crafted agreement should be preserved in the interest of procedural economy. In any event, the parties have not yet conferred in accordance with Rule 26(f). Because Federal Rule of

Civil Procedure 26(d)(2)(b) deems service of early discovery requests to be effected no earlier than at the parties' first Rule 26(f) conference, service of the Requests has not yet been effected and, therefore, the Trust Defendants may not be compelled to produce documents pursuant to those Requests.

*Fourth,* in considering those of the SIPA Trustee's Requests that call for production of documents obtained in the course of the Bermuda Proceedings, the Court should give deference to the Implied Undertaking to which the Funds and all of the defendants are subject under Bermuda law not to use those documents for any collateral or ulterior purpose. To do otherwise would disregard principles of international comity, a consideration that is particularly significant here, given the emphasis that Judge Rakoff placed on the need to uphold principles of international comity and defer to non-US proceedings when deciding whether actions should proceed against foreign parties such as the Trust Defendants.

*Fifth*, the SIPA Trustee should not be permitted to obtain documents from the Funds that he is not entitled to obtain from the Trust Defendants directly. If the Trust Defendants prevail on the Extraterritoriality Motion, and are dismissed from this case, then—given the absence of personal jurisdiction over them—the SIPA Trustee will be required to follow the appropriate procedures for seeking discovery from them as foreign non-parties: an application under the Convention on the Taking of Evidence in Civil or Commercial Matters (the "***Hague Convention***"), or the issuance of letters rogatory. He should not be permitted to circumvent these established procedures by seeking these documents from the Funds.

## STATEMENT OF FACTS

A.    **The SIPA Trustee Sues the Kingate Funds—but not the Trust Defendants—in New York in 2009**

On April 17, 2009, the SIPA Trustee initiated an adversary proceeding ("*Adversary Proceeding*") against the Funds, and certain service providers to the Funds, alleging that the defendants had known of, and profited from, the Madoff fraud. All of the defendants named in the SIPA Trustee's Complaint were non-U.S. entities organized under foreign law, with operations located outside the United States.[3]   As noted below, the Funds were heavily invested with BLMIS until the time of its collapse, and were effectively wiped out by the Madoff fraud. They are currently the subject of liquidation proceedings in the British Virgin Islands ("*BVI*") and Bermuda. *See* Decl. of Andrew Witts, Sept. 30, 2005, ECF No. 222 ("*Witts  Decl.*").

The Trustee's Original Complaint did not name any of the Trust Defendants. In the ensuing 15 months, the SIPA Trustee filed two amended complaints—the first on May 8, 2009, and the second on July 13, 2010. Neither of the amended complaints named any of the Trust Defendants. Like the Funds, the Trust Defendants are all non-U.S. entities, organized under foreign law, with operations located outside the United States. Compl. ¶¶ 54–58.[4]

B.    **The Funds Enter Liquidation in 2009 and Sue the Trust Defendants in Bermuda in 2010**

Shortly after the Trustee commenced proceedings against the Funds in the Southern District of New York, the Funds entered liquidation proceedings in the BVI and Bermuda. On June 4, 2009, the Eastern Caribbean Supreme Court of the High Court of

---

[3] *See* Compl. ¶¶ 2, 39, 41–42, 44, 46, 48–49, 50–52, 79–80, 93, 48.

[4] *See* Compl. ¶¶ 54, 57, 58, 63.

Justice of the BVI appointed Joint Liquidators for the Funds. Shortly thereafter, the Funds were put into liquidation in Bermuda, and the same Joint Liquidators were appointed there. On December 22, 2010, the Joint Liquidators initiated a suit against a number of Defendants, including some of the Trust Defendants, making claims based on retention of legal title, equitable proprietary claims and claims for recovery on grounds of unjust enrichment. They also made claims against the other (non-Trust) Defendants on grounds of breach of contract, tortious breach of duties of care, and negligent misstatement."[5] *See* Witts Decl., Exh. A (Statement of Claim, Jan. 20, 2011). On March 14, 2012, the Joint Liquidators added the remaining Trust Defendants—Ashby Investment, El Prela Trading and Alpine—as defendants. The Bermuda Proceedings concern the same pool of assets at issue in these proceedings, and they are well underway. Pleadings have closed, and discovery has been completed. A trial on certain preliminary issues was held in 2015. Subject to the outcome of any appeals, the remaining issues will go forward to full trial. *See* Witts Decl. ¶ 10.

C.    **The SIPA Trustee Initiates Proceedings Against the Trust Defendants in the Southern District of New York in 2011**

On May 20, 2011—some two years after the commencement of liquidation proceedings in Bermuda and the filing of this Adversary Proceeding—the SIPA Trustee amended his complaint in these proceedings to add various claims against the Trust Defendants. The Trusts are non-U.S. trust entities that are alleged to have, during the period relevant to the Complaint, jointly owned KML.[6] The Trustees are non-U.S.

---

[5] The following Defendants were named in the December 22, 2010 Complaint: KML, FIM, First Peninsula (as Trustee of The Ashby Trust), Port of Hercules (as Trustee of El Prela Trust), Ashby Holding, El Prela Holding, Carlo Grosso, and Federico Ceretti.

[6] For the purposes of this Motion only, the Trust Defendants rely on the facts as pleaded in the Fourth Amended Complaint without conceding their accuracy. El Prela Trust and Ashby Trust were both formed

entities which are not alleged to have had any ownership stake in KML, nor are they alleged to have received any subsequent transfers for their own benefit. [7]

The Fourth Amended Complaint, which was filed on March 17, 2014, nearly three years after the Third Amended Complaint which first named the Trust Defendants, asserts claims against the Trust Defendants as putative subsequent transferees of BLMIS funds. Of the Fourth Amended Complaint's 12 counts, only one is addressed to the Trust Defendants. Compl. ¶¶ 317–21. The Fourth Amended Complaint does not allege that the Trust Defendants had knowledge of the BLMIS fraud or that they acted in bad faith. It does not allege with requisite specificity how, when, why, or from whom the Trust Defendants received purported subsequent transfers. It does not allege that the Trust Defendants had any contact with Madoff, or any involvement in the management of KML or the Funds.

The Fourth Amended Complaint makes nothing but vague and conclusory jurisdictional allegations as to the Trust Defendants. At paragraph 81, for example, the SIPA Trustee provides a rote recitation of the elements of the New York jurisdictional

---

in 1994 under the laws of the Island of Jersey; both are now governed by BVI law. Compl. ¶ 54. Grosso and certain of his family members are the beneficiaries of Ashby Trust. *Id.* ¶ 63. Ceretti and certain of his family members are the beneficiaries of El Prela Trust. *Id.* ¶ 54.

Ashby Holdings, Ashby Investment, El Prela Holding and El Prela Trading are organized under the laws of the BVI with principal places of business in Tortola, BVI. They are administered from Monaco. El Prela Group and El Prela Trading are wholly owned by El Prela Trust. *Id.* ¶ 59. Ashby Holdings and Ashby Investment are both wholly owned by Ashby Trust. *Id.* ¶ 67.

Until 2008, El Prela Trust owned 50% of KML; since that time, El Prela Group has owned that 50% stake in KML. *Id.* ¶ 59. Until 2008, Ashby Trust owned 50% of KML; since that time, Ashby Holdings has owned that 50% stake in KML. *Id.*

[7] Alpine and First Peninsula are incorporated under the laws of Liberia, with registered places of business in Monrovia, Liberia. *Id.* ¶ 57. Port of Hercules is incorporated under the laws of the BVI, with a registered place of business in Tortola, BVI. *Id.* ¶ 58. First Peninsula acts as trustee to Ashby Trust. *Id.* ¶ 66. Alpine acted as trustee to El Prela Trust from 1994 to 2006. *Id.* ¶ 57. Port of Hercules has acted as trustee to El Prela Trust from 2006 to the present. *Id.* Port of Hercules, Alpine and First Peninsula are wholly independent and are not alleged to be owned or controlled by Ceretti or Grosso. *Id.* ¶ 71.

statute as against all defendants. Compl. ¶ 81; *see also* discussion *infra* at 12–13. Elsewhere, the SIPA Trustee alleges that the Trust Defendants "routinely received funds originating from New York", without providing any specific details. Compl. ¶ 86.

### D. The Trust Defendants Have Fully Briefed Why the Extraterritoriality Decision Dismisses the Adversary Proceeding Against Them

On June 7, 2012, Judge Rakoff granted motions by certain Transferee Defendants, including the Trust Defendants, to withdraw the reference to determine certain issues relating to the extraterritorial application of SIPA and the Bankruptcy Code (the "***Extraterritoriality Issue***"). *Secs. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC*, No. 12-mc-0115 (JSR) (S.D.N.Y. June 7, 2012), ECF No. 167. The Order established procedures for consolidated briefing on the Extraterritoriality Issue. *Id*.

On July 7, 2014, Judge Rakoff entered an Opinion and Order in which he decided the Defendants' consolidated motion to dismiss, *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC*, 513 B.R. 222 (S.D.N.Y. 2014) (the "***Extraterritoriality Decision***"). Judge Rakoff held that "section 550(a) does not apply extraterritorially to allow for the recovery of subsequent transfers received abroad by a foreign transferee from a foreign transferor. Therefore, the SIPA Trustee's recovery claims are dismissed to the extent that they seek to recover purely foreign transfers." *Id*. at 232. Rejecting the SIPA Trustee's assertion that dismissal was premature, and that additional fact-gathering was needed to determine the location of the transfers, Judge Rakoff held that:

> [I]t is the [SIPA] Trustee's obligation to allege 'facts giving rise to the plausible inference that' the transfer occurred 'within the United States.' *Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60, 69 (2d Cir. 2012). Here, to the extent that the [SIPA] Trustee's complaints allege that both the transferor and the transferee reside outside of

> the United States, there is no plausible inference that the transfer occurred domestically. Therefore, unless the [SIPA] Trustee can put forth specific facts suggesting a domestic transfer, his recovery actions seeking foreign transfers should be dismissed. *Id*. at 232 n.4.

Judge Rakoff also concluded that, "in the alternative, . . . even if the presumption against extraterritoriality were rebutted, the SIPA Trustee's use of section 550(a) to reach these foreign transfers would be precluded by concerns of international comity." *Id*. at 231. He explained that where transferors, such as Fairfield Sentry Limited and Harley International (Cayman) Limited, are involved in liquidation proceedings in their home countries (the BVI and Cayman Islands respectively), those jurisdictions have a "greater interest in applying their own laws." *Id*. at 232. Lastly, Judge Rakoff remanded the adversary proceedings to this Court "for further proceedings consistent with this Opinion and Order." *Id*.

On December 10, 2014, this Court issued the Extraterritoriality Order,[8] which set out a schedule for consolidated briefing of the Extraterritoriality Issue, and provided that the time for Defendants—including the Trust Defendants—to respond to the Trustee's complaints would be extended pending the Court's resolution of the Extraterritoriality Issue. Prior to the issuance of the Extraterritoriality Order, the defendants in this action collectively entered into a series of stipulations with the Trustee, extending their time to respond to the Fourth Amended Complaint. *See, e.g.*, Stipulation Extending Time to Respond to Fourth Am. Compl. and Setting Date for Pre-trial Conference, April 1, 2014.

---

[8]     The Extraterritoriality Order expressly preserved all objections and defenses of the parties, including jurisdictional defenses. *See* ¶ 17 ("Without limitation, nothing in this Order . . . shall limit, restrict, or impair any defense, right or argument that has been raised or could be raised by any defendant in a motion to dismiss under Fed. R. Civ. P. 12 or Fed. R. Bankr. 7012 . . . including, without limitation, all defenses based on lack of personal jurisdiction. . . . ")

The last such stipulation in which the Funds participated explicitly referenced the Extraterritoriality Motion, and contemplated further extensions. *Id.*

Pursuant to the Extraterritoriality Order, the parties engaged in consolidated briefing on the issue, *see* Transferee Defendants' Consolidated Supplemental Motion to Dismiss Based on Extraterritoriality, ECF No. 158 (Dec. 31, 2014) (the "***Extraterritoriality Motion***"), and a hearing was held before this Court on December 16, 2015.  The Extraterritoriality Motion is currently pending.

### E.    Discovery Takes Place in Bermuda

The parties to the Bermuda Proceedings exchanged discovery in 2014.  The parties exchanged a substantial volume of data.  The Trust Defendants disclosed approximately 27,000 documents.  *See* Motion 5.  As the SIPA Trustee acknowledges, under Bermuda law, the Funds (and all other parties to the Bermuda Proceedings, including the Trust Defendants) are subject to an "implied undertaking" not to use documents obtained in the discovery process for any collateral or ulterior purpose (the "***Implied Undertaking***").  Motion 16–17.  The Trust Defendants therefore provided discovery to the Funds with the legitimate expectation that those documents would only be used in the Bermuda Proceedings.  Likewise, the Trust Defendants are prohibited, pursuant to the Implied Undertaking, from using documents obtained from other parties in the course of discovery in the Bermuda Proceedings outside those proceedings.

F.    **The Trustee Requests Extensive Discovery, Including Documents Obtained During the Bermuda Proceedings**

In October 2015, after the Court denied in part the Funds' Motion to Dismiss, the Trustee and the Funds jointly submitted a Case Management Plan that was duly "so ordered" by the Court.  The SIPA Trustee then proceeded to serve the Funds with Requests for Production under Federal Rule of Civil Procedure 34, seeking an extensive range of vaguely defined documents, among them, "all documents concerning the Bermuda Action, including, but not limited to, all correspondence exchanged between the parties thereto"; all pleadings, motions, orders, rulings, opinions, transcripts and judgments submitted and issued in the Bermuda Proceedings; and all documents concerning "discovery or fact-finding" in those proceedings—a category which, based on the SIPA Trustee's own estimate, includes some 139,800 documents exchanged among the parties, *see* Motion at 5, and all witness statements and other forms of written discovery exchanged among the parties.  On April 15, 2016, the SIPA Trustee simultaneously served on the Trust Defendants a request for the production of documents and the Motion to Compel.  Motion 2–3.

On November 6, 2015, following receipt of the SIPA Trustee's discovery requests related to this action, *see* Motion 4–5, the Funds filed an application before the Bermuda Court (the ***"Funds' Application"***) seeking release from their Implied Undertaking, and for leave to produce documents produced and obtained in the proceedings to the SIPA Trustee.

## ARGUMENT

I.    **THE TRUST DEFENDANTS CANNOT BE COMPELLED TO
      PARTICIPATE IN DISCOVERY BECAUSE THIS COURT LACKS
      PERSONAL JURISDICTION OVER THEM**

The Court may not compel the Trust Defendants to produce documents or to participate in discovery because it lacks personal jurisdiction over them. *See Estate of Ungar v. Palestinian Auth.,* 400 F. Supp. 2d 541, 549 (S.D.N.Y. 2005) ("If [plaintiffs] cannot make out a prima facie case for personal jurisdiction, they cannot take discovery—even jurisdictional discovery—from a foreign corporation.")

The SIPA Trustee's Complaint contains no allegations that would support a finding of general jurisdiction over the Trust Defendants. Nor could it. As the Complaint acknowledges, all of the Trust Defendants are foreign entities governed by foreign law whose operations are located outside the United States. Compl. ¶¶ 54–58, 64–70. Accordingly, none is alleged to have operations, to do business, to own property, or to have any other connection to the United States that could form the basis for general jurisdiction. *See Daimler AG v. Bauman,* 134 S. Ct. 746, 760–61 (U.S. 2014) (to be subject to general jurisdiction, a party's affiliations with the forum must be "so continuous and systematic as to render it essentially at home in the forum State.") (citing *Goodyear Tires Ops. v. Brown,* 564 U.S. 915, 919 (2011)) (internal quotations omitted).

Nor do the Complaint's allegations support a finding of specific jurisdiction. The Complaint recites the elements of specific jurisdiction under CPLR 302 and alleges them—generically—as to all defendants. Compl. ¶ 81. But conclusions of this kind carry no legal significance in the jurisdictional analysis. *See Alki Partners L.P., v. Vata Holding GMBH,* 769 F. Supp. 2d 478, 492 (S.D.N.Y. 2011) (mere recitation of the legal elements of a claim is insufficient to survive a motion to dismiss) (citing *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544 (2007)). The handful of conclusory allegations that are addressed to the Trust Defendants' domestic contacts are entirely unavailing. *See Walden v. Fiore*, 134 S. Ct. 1115 (2014).

The Trust Defendants should not be required to engage in the discovery the SIPA Trustee seeks in circumstances where—as here—the Court lacks personal jurisdiction over them. *See Filus v. Lot Polish Airlines,* 907 F.2d 1328, 1332 (2d Cir. 1990) ("[U]ntil she has shown a reasonable basis for assuming jurisdiction, [plaintiff] is not entitled to any other discovery [besides jurisdictional discovery].") The Complaint's meager jurisdictional allegations would not even entitle the SIPA Trustee to narrow jurisdictional discovery, much less the sort of wide-ranging substantive discovery contemplated by the Requests. *See Estate of Ungar v. Palestinian Auth.,* 400 F. Supp. 2d 541, 549 (S.D.N.Y. 2005) ("If [plaintiffs] cannot make out a prima facie case for personal jurisdiction, they cannot take discovery—even jurisdictional discovery—from a foreign corporation."); *Jazini v. Nissan Motor Co.,* 148 F.3d 181, 184 (2d Cir. 1998); *Laydon v. Mizuho Bank, Ltd.,* No. 12 Civ. 3419 (GBD), 2015 WL 1515358 at *7 (S.D.N.Y. Mar. 31, 2015) (denying plaintiff's motion for jurisdictional discovery because plaintiff had "not made out a prima facie case of [personal] jurisdiction"); *see also Whiteman v. Fed. Republic of Austria*, No. 00 Civ. 8006 (SWK), 2002 WL 31368236 (S.D.N.Y. Oct. 9, 2002); *Gucci America, Inc. v. Bank of China*, 768 F.3d 122, 141 (2d Cir.2014) (a court "must have personal jurisdiction over a nonparty in order to compel it to comply with a valid discovery request"); *Motorola Credit Corp. v. Uzan*, No. 02 CIV. 666 JSR, 2015 WL 5613066, at *1–2 (S.D.N.Y. Sept. 9, 2015) (same).

## II.    THE MOTION SHOULD BE DENIED BECAUSE THE TRUST DEFENDANTS HAVE A VIABLE MOTION TO DISMISS PENDING AND EQUALLY VIABLE MOTIONS TO DISMISS YET TO BE MADE

The Trust Defendants have submitted a dispositive motion that, if granted in its entirety, will result in their dismissal from this case.  They should not be compelled to participate in costly and burdensome discovery in proceedings from which they may soon be dismissed.

"It is well-settled that a district court has discretion to halt discovery pending its decision on a motion to dismiss."  *Gandler v. Nazarov*, No. 94 Civ. 2272 (CSH), 1994 WL 702004 at *4 (S.D.N.Y. Dec. 14, 1994).  Courts consider three factors in determining whether to do so:  "(1) [the] breadth of discovery sought, (2) any prejudice that would result, and (3) the strength of the motion."  *Hong Leong Fin. Ltd. (Singapore) v. Pinnacle Performance Ltd.*, 297 F.R.D. 69, 72 (S.D.N.Y. 2013) (citation omitted).  All of these factors strongly favor delaying discovery until such time as the Extraterritoriality Motion is resolved.

### A.    The Trust Defendants Have Made a Robust and Wholly Dispositive Motion to Dismiss, and Have Additional Grounds for Dismissal

Postponing discovery until motions to dismiss are decided is warranted where a motion to dismiss "is potentially dispositive, and appears to be not unfounded in the law."  *Gandler*, 1994 WL 702004, at *4;  *see also Boelter v. Hearst Commc'ns, Inc.*, No. 15 Civ. 03934, 2016 WL 361554, at *5 (S.D.N.Y. Jan. 28, 2016) (applying *Gandler* and granting a stay of discovery pending resolution of defendant's motion to dismiss).

The Trust Defendants' moved to dismiss because the transfers they allegedly received were entirely extraterritorial in nature.  The Complaint provides no basis for the SIPA Trustee's claims under section 550(a)(2) of the Bankruptcy Code, 11 U.S.C. §

550(a)(2), which does not apply to subsequent transfers made by a foreign transferor to a foreign transferee outside the United States. *See* Trust Defendants' Reply in Support of the Consolidated Supplemental Motion to Dismiss Based on Extraterritoriality, Sept. 30, 2015, ECF No. 221. Based on Judge Rakoff's July 2014 Extraterritoriality Decision, the Extraterritoriality Motion presents a substantial argument and strong showing that warrants delaying discovery pending a final decision. *See Hong Leong Fin. Ltd. (Singapore) v. Pinnacle Performance Ltd.*, 297 F.R.D. 69, 74 (S.D.N.Y. 2013) (staying discovery where "the strength of defendants' motion to dismiss tips strongly in favor of granting a protective order staying discovery."); *Integrated Sys. and Power, Inc., v. Honeywell Int'l, Inc.*, No. 09 Civ. 5874, 2009 WL 2777076, at *1–2 (Sept. 1, 2009) ("While the Court cannot predict the outcome of the pending motion to dismiss, after an initial review, the Court notes that . . . the motion appears not to be unfounded in the law.") (internal quotations omitted).

Extraterritoriality is not the only viable ground for dismissal available to the Trust Defendants in this case. The Complaint suffers from a number of other defects that warrant dismissal as a matter of law, including that it names defendants over which this Court lacks personal jurisdiction, s*ee supra*, Section I. It would be inefficient and costly to require the Trust Defendants to engage in burdensome, substantive discovery in advance of having the opportunity to make these potentially dispositive motions. *See Boelter v. Hearst Commc'ns, Inc.*, No. 15 Civ. 03934, 2016 WL 361554, at *5 (S.D.N.Y. Jan. 28, 2016) ("[A]n initial review of the arguments presented in its support suggest that none are frivolous and, because succeeding on each argument alone may warrant

dismissal of Plaintiff's entire complaint, ordering discovery to proceed at this time would result in an excessive burden on Defendant.").

**B.    Participation in Discovery Would Impose a Significant Burden on the Trust Defendants**

The SIPA Trustee is demanding a range of vaguely defined documents relating to the Bermuda Proceedings, including "all documents related to the Bermuda Action", including but not limited to any correspondence referring or related to the Bermuda Proceedings, and all documents "related to discovery or fact-finding".[9]    In the SIPA Trustee's own estimate, the number of documents *produced* in the Bermuda Proceedings totals 139,800.  But as framed, the Requests call for numerous categories of documents that may never have been produced in Bermuda.  In any event, the fact that some portion of the documents sought may have been produced in Bermuda is of no moment.  The collection, review and production of those documents would still be time-consuming and costly, because the Trust Defendants' counsel would be required to undertake a comprehensive review for privilege and confidentiality under U.S. law, and, presumably subject to final agreement on the scope of the Requests, non-responsive information.  *See In re Term Commodities Cotton Futures Litig.,* No. 12 Civ. 5126, 2013 WL 1907738 at *6–7 (S.D.N.Y. May 8, 2013) (Fox, Mag. J.) (production of documents already produced to the CFTC would place a significant burden on defendants because, *inter alia,* production would require review for privilege and commercially sensitive information). This amounts to a significant burden at this stage of the proceedings, and "[i]f defendants' dismissal motions prove meritorious, the burden of litigating the discovery issues will have been for nothing and defendants will have suffered the burden of

---

[9] *See* Requests at 7–8.

unnecessary legal fees." *Picture Patents, LLC v. Terra Holdings LLC*, No. 07-cv-5465, 2008 WL 5099947, at *3 (S.D.N.Y. Dec. 3, 2008); see also *Niv v. Hilton Hotels Corp.*, No. 06-cv-7839, 2007 WL 510113, at *2 (S.D.N.Y. Feb. 15, 2007) ("[I]f the motion is granted, this burden [of responding to the discovery requests] will likely have served little purpose.").

### C.    The SIPA Trustee Will Not Be Prejudiced If Discovery Is Delayed

The SIPA Trustee has not attempted to allege—much less evidenced—any unfair prejudice that would result if discovery were to follow the usual course in this case.   This failure alone suggests that discovery should not be permitted to proceed at this stage. *See, e.g., Gandler v. Nazarov*, No. 94 Civ. 2272 (CSH), 1994 WS 702004, *4 (S.D.N.Y. Dec. 14, 1994) (staying all discovery because "plaintiffs have not presented any evidence to suggest that they will be unfairly prejudiced by a stay"); *Negrete v. Citibank, N.A.,* No. 15 Civ. 7250, 2015 WL 8207466 at *2 (S.D.N.Y. Dec. 4, 2015) (staying discovery because "[p]laintiffs cannot identify any prejudice that they would suffer from the imposition of a stay").  There is no allegation that the documents requested will not be available following the Court's resolution of the Extraterritoriality Motion, or, for that matter, that information regarding transactions that allegedly took place nearly a decade ago will be any more or less accessible after the ruling on that Motion.  The SIPA Trustee has simply failed to allege that any prejudice would result if discovery follows the ordinary course in this case.

In any event, it is doubtful that any prejudice could be shown.  The SIPA Trustee has repeatedly failed to object to the effective stay of discovery that has been in place in this case for over a year.  In fact, prior to interposing his Requests on April 15, 2016, the SIPA Trustee has not once requested that the Trust Defendants produce documents.

Though the Trustee broached the issue of discovery on February 10, 2016, requesting that the Non-Fund Defendants, including the Trust Defendants, confer with the Trustee under Rule 26(f) to begin the discovery process, *see* Grupposo Decl., Exh. FF, he apparently did not consider the matter urgent, and made no further attempt to address it with the Trust Defendants until over two months had passed. This inaction belies any claim that a delay of discovery would occasion unfair prejudice now.

III.    **THE TRUST DEFENDANTS MAY NOT BE COMPELLED TO PRODUCE DOCUMENTS BECAUSE THE SIPA TRUSTEE HAS NOT EFFECTED SERVICE OF THE REQUESTS**

The SIPA Trustee's motion to compel the production of documents is not only ill-founded, it is premature. Federal Rule of Civil Procedure 26(d)(2)(b), which addresses early discovery requests of the kind at issue here, permits a party to "deliver" discovery requests to another party 21 days after the complaint and summons have been served upon that party. But the Rule makes it clear that service of such requests is not effected until such time as the parties hold their first conference in accordance with Rule 26(f). To date, the SIPA Trustee has not conferred with the Trust Defendants in accordance with Rule 26(f). Accordingly, although the SIPA Trustee may have taken steps to "deliver" the Requests, those Requests have not yet been served upon the Trust Defendants, and, therefore, the Trust Defendants may not yet be compelled to produce documents purpose to the Requests.

08-01789-cgm    Doc 13377    Filed 05/20/16    Entered 05/20/16 15:55:00    Main Document
Pg 24 of 26

## IV.    DEFERENCE SHOULD BE GIVEN TO THE IMPLIED UNDERTAKING OF CONFIDENTIALITY IN PLACE IN THE BERMUDA PROCEEDINGS

In considering the Trustee's Motion to Compel the Funds to produce documents obtained during discovery in the Bermuda Proceedings, due regard should be given to the Implied Undertaking—to which both the Funds and the Trust Defendants are subject— not to use those documents for any collateral or ulterior purpose.  To do otherwise would accord insufficient deference to the courts of Bermuda and would disregard principles of international comity. *See Société Nationale Industrielle Aerospatiale v. United States*, 482 U.S. 522, 546 (1987) ("American courts, in supervising pretrial proceedings, should exercise special vigilance to protect foreign litigants from the danger that unnecessary, or unduly burdensome, discovery may place them in a disadvantageous position."); *CE Int'l Res. Holdings, LLC v. S.A. Minerals Ltd. P'ship*, No. 12-CV-08087 (CM)(SN), 2013 WL 2661037, at *8–18 (S.D.N.Y. June 11, 2013) (precluding plaintiff's document production requests where production would have required violation of Singaporean confidentiality law:  "Under the principles of international comity, a New York court should not encroach upon another nation's sovereignty by requiring citizens to take actions within their home country that would contravene that country's laws."); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, No. 05-MD-1720 (JG)(JO), 2010 WL 3420517 (E.D.N.Y. Aug. 27, 2010) (denying U.S. discovery of otherwise relevant documents based on comity considerations where disclosure would have disturbed the confidentiality of related European proceedings); *Linde v. Arab Bank, PLC*, 262 F.R.D. 136, 147–53 (E.D.N.Y. 2009) (denying discovery request that would entail violation of Israeli banking confidentiality laws).  Such considerations of deference and comity are especially pressing here, given that Judge Rakoff, in issuing his Extraterritoriality

Decision, specifically held that this Court should apply principles of international comity and defer to non-US proceedings when deciding whether actions should proceed against foreign parties like the Trust Defendants.  Extraterritoriality Decision at 231–32.

**V.      THE SIPA TRUSTEE SHOULD BE PROHIBITED FROM CIRCUMVENTING ESTABLISHED PROCEDURES FOR OBTAINING DISCOVERY FROM FOREIGN NON-PARTIES**

The SIPA Trustee is attempting to obtain premature discovery of the Trust Defendants' documents from the Funds even though, for the reasons outlined *supra* at Sections I–III, he is precluded from obtaining those same documents from the Trust Defendants directly.  In doing so, he is effectively circumventing established limitations on the exercise of personal jurisdiction over foreign defendants, and the proper procedures that must be followed when seeking to obtain documents from a foreign non-party.  If the Trust Defendants prevail on the Extraterritoriality Motion, and are dismissed from this case, then—given the absence of personal jurisdiction over them—the SIPA Trustee will be required to follow the appropriate procedures for seeking discovery from them as foreign non-parties:  an application under the Hague Convention, or the issuance of letters rogatory.  *See* Convention on the Taking of Evidence Abroad in Civil or Commercial Matters, Mar. 18, 1970, 23 U.S.T. 2555; T. Markus Funk, *Mutual Legal Assistance Treaties and Letters Rogatory: A Guide for Judges* 17–21 (Federal Judicial Center 2014).  Such procedures implicate complex considerations of foreign law and international comity.  *See CE Int'l Res. Holdings, LLC v. S.A. Minerals Ltd. P'ship*, No. 12-CV-08087 (CM)(SN), 2013 WL 2661037, at *10–13 (S.D.N.Y. June 11, 2013) (describing the process for seeking document production through the Hague Convention); Funk, supra at 18–20 (describing the letters rogatory process).  The SIPA Trustee should

not be permitted to circumvent these established procedures by compelling production of

the Trust Defendants' documents from the Funds.

## CONCLUSION

For the foregoing reasons, the Court should deny the SIPA Trustee's Motion as to

the Trust Defendants and grant such other relief as may be just and proper.

Dated:  May 20, 2016              Respectfully submitted,
        New York, NY


                        **FRESHFIELDS BRUCKHAUS DERINGER US LLP**



                         */s/ Timothy P. Harkness*
                        Timothy P. Harkness
                        FRESHFIELDS BRUCKHAUS DERINGER US LLP
                        601 Lexington Avenue
                        New York, NY 10022
                        Phone:  (212) 277-4000
                        Fax:  (212) 277-4001
                        timothy.harkness@freshfields.com
                        *Attorney for the Trust Defendants*