Paul Hastings LLP
200 Park Avenue
New York, NY  10166
Telephone:  (212) 318-6000
Barry Sher
Jodi Kleinick
Mor Wetzler

*Attorneys for FIM Limited, FIM Advisers
LLP, Carlo Grosso and Federico Ceretti*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>         Plaintiff-Applicant,<br><br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>         Defendant. | NO. 08-01789 (BRL)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>         Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>         Plaintiff,<br><br>v.<br><br>FEDERICO CERETTI, CARLO GROSSO, KINGATE GLOBAL FUND, LTD., KINGATE EURO FUND, LTD., KINGATE MANAGEMENT, LIMITED, FIM ADVISERS LLP, FIM LIMITED, CITI HEDGE FUND SERVICES LIMITED, FIRST PENINSULA INDIVIDUALLY AND AS TRUSTEES OF THE ASHBY TRUST, THE ASHBY TRUST, ASHBY INVESTMENT SERVICES LIMITED | Adv. Pro. No. 09-1161 (SMB) |

INDIVIDUALLY AND AS TRUSTEES OF THE ASHBY TRUST, ALPINE TRUSTEES LIMITED INDIVIDUALLY AND AS TRUSTEES OF THE EL PRELA TRUST, PORT OF HERCULES LTD. INDIVIDUALLY AND AS TRUSTEE OF THE EL PRELA TRUST, EL PRELA TRUST, EL PRELA GROUP HOLDING SERVICES, ASHBY HOLDING SERVICES LIMITED, AND EL PRELA TRADING INVESTMENTS LIMITED AND HSBC BANK BERMUDA LIMITED,

Defendants.

**<u>MEMORANDUM OF LAW ON BEHALF OF FIM LIMITED, FIM ADVISERS, CARLO GROSSO AND FEDERICO CERETTI IN OPPOSITION TO THE TRUSTEE'S MOTION TO COMPEL</u>**

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................................. 1

STATEMENT OF FACTS ........................................................................................................... 2

ARGUMENT ................................................................................................................................. 5

    A.    The Trustee's Motion Should Be Denied Because It Is Procedurally Improper ............................................................................................. 5

    B.    The Trustee's Motion Should Be Denied Because Discovery of the FIM Defendants is Premature ................................................................................... 6

        1.    The Trustee Should Not Be Permitted to Take Party Discovery of the FIM Defendants Until After The Extraterritoriality Motion Is Decided ............................................. 7

        2.    The Trustee Should Not Be Permitted to Take Discovery of the FIM Defendants Absent a Finding of Personal Jurisdiction Over Them ................................................................... 9

    C.    The Trustee Should Not Be Permitted to Obtain the FIM Defendants' Documents From the Funds ................................................. 10

CONCLUSION ............................................................................................................................ 14

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Anti-Monopoly, Inc. v. Hasbro, Inc.*,
   No. 94CIV.2120(LMM)(AJP), 1996 WL 101277 (S.D.N.Y. Mar. 7, 1996) ............................ 9

*Cooper Indus., Inc. v. British Aerospace*,
   102 F.R.D. 918 (S.D.N.Y. 1984) ........................................................................................ 13

*Filus v. Lot Polish Airlines*,
   907 F.2d 1328 (2d Cir. 1990) ............................................................................................... 9

*Golden Trade S.r.L. v. Lee Apparel Co.*,
   143 F.R.D. 514 (S.D.N.Y. 1992) ........................................................................................ 13

*Grayson v. General Electric Co.*,
   No. 313CV1799WWEWIG, 2016 WL 1275027 (D. Conn. Apr. 1, 2016) .......................... 13

*Gucci Am., Inc. v. Bank of China*,
   768 F.3d 122 (2d Cir. 2014) ............................................................................................... 10

*Hong Leong Fin. Ltd. (Singapore) v. Pinnacle Performance Ltd.*,
   297 F.R.D. 69 (S.D.N.Y. 2013) ............................................................................................ 9

*Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*,
   513 B.R. 222 (S.D.N.Y. 2014) .................................................................................. 3, 8, 11

*Spencer Trask Software & Info. Servs., LLC v. RPost Int'l Ltd.*,
   206 F.R.D. 367 (S.D.N.Y. 2002) .......................................................................................... 9

*In re Term Commodities Cotton Futures Litig.*,
   No. 12 CIV. 5126 ALC KNF, 2013 WL 1907738 (S.D.N.Y. May 8, 2013) ........................ 9

*Estate of Ungar v. Palestinian Auth.*,
   400 F. Supp. 2d 541 (S.D.N.Y. 2005) ................................................................................ 10

**Other Authorities**

Convention on the Taking of Evidence Abroad in Civil or Commercial Matters,
   Mar. 18, 1970, 23 U.S.T. 2555 .......................................................................................... 10

Fed. R. Civ. P. 26(d)(2)(B) ........................................................................................................ 6

Fed. R. Civ. P. 34(a)(2)(A) ........................................................................................................ 6

Fed. R. Civ. P. 37(a)(1) ............................................................................................................. 6

Practice Commentary to Fed. R. Civ. Proc. 37 ................................................................................6

Defendants FIM Limited, FIM Advisers LLP (together with FIM Limited, "FIM"), Carlo Grosso and Federico Ceretti (collectively with FIM, the "FIM Defendants") respectfully submit this Memorandum of Law in Opposition to the Motion to Compel Defendants to Produce Documents and Participate in Discovery filed by Irving H. Picard, as trustee (the "Trustee") for the substantively consolidated liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS"). (Adv. Pro. Doc. 252 (the "Trustee's Motion")). The Trustee's Motion seeks an order (i) requiring the FIM Defendants to produce documents responsive to Request #3 of the Trustee's First Set of Requests for Production of Documents and Things (the "Document Requests") and (ii) requiring the FIM Defendants to confer with the Trustee and with Kingate Euro Fund, Ltd. and Kingate Global Fund Ltd. (together, the "Kingate Funds" or the "Funds") in accordance with Federal Rule of Civil Procedure 26(f), and participate in party discovery in this adversary proceeding. For the reasons stated below, the Trustee's Motion should be denied.

**PRELIMINARY STATEMENT**

The Trustee seeks to have this Court compel the production of documents based on requests he purported to serve on the FIM Defendants on the same day as he filed his motion, and force the FIM Defendants to participate in party discovery now. The Trustee's Motion should be denied. First, it violates the Federal Rules and this Court's local rules. Second, party discovery of the FIM Defendants and the other Non-Fund Defendants is premature. The FIM Defendants, along with hundreds of other defendants, are awaiting implementation of Judge Rakoff's decision on extraterritoriality, which determined that the Trustee has no right to assert claims seeking to avoid or recover alleged subsequent transfers made abroad by one foreign transferee to another, which any alleged transfer to any FIM Defendant would be. The District Court directed and this Court recognized that party discovery of foreign defendants who have moved to dismiss the complaints as against them on the basis of extraterritoriality should await the resolution of that motion in all 88 of the affected cases, and there is no party discovery

1

proceeding in those cases while the motion is *sub judice* before this Court. Even were this Court to conclude that the Trustee has a viable claim against any FIM Defendant, discovery would still be premature because the Trustee has not established personal jurisdiction in this Court over any of them, which is a pre-requisite to the Trustee's ability to obtain the discovery he seeks without complying with the laws applicable to discovery of foreign persons.

Moreover, the Trustee's attempt to make an end-run around the protections afforded to the FIM Defendants and obtain the FIM Defendants' documents indirectly from the Kingate Funds should be rejected. Any documents obtained by the Kingate Funds from the FIM Defendants pursuant to order of the Bermuda court (the "Bermuda Documents") were produced subject to the "Implied Undertaking of Confidentiality," which, as a matter of established Bermuda law, prohibits the Kingate Funds from using those documents for any purpose outside of the action pending in Bermuda. The Kingate Funds have no right under Bermuda law to turn over any of the Bermuda Documents to the Trustee in this action. Under principles of international comity, which Judge Rakoff held governed the Trustee's claims, this Court should not direct the Funds to breach their obligations under Bermuda law. Nor, contrary to the Trustee's assertions, do the Funds have any right to "collect anew" documents from the FIM Defendants under the auspices of the agreement that existed between FIM Advisers and KML over seven years ago. None of the FIM Defendants' documents are within the "custody" or "control" of the Funds, so the Funds cannot be compelled to gather documents from the FIM Defendants.

## STATEMENT OF FACTS

The FIM Defendants are foreign entities and citizens who reside outside of the United States. (*See* Fourth Amended Complaint (the "Complaint" or "FAC"), Adv. Pro. Doc. 100 at ¶¶ 32, 33, 35, 49, 50, 51, 52, 110). The Trustee first named the FIM Defendants in this proceeding in June 2011 with the filing of his Third Amended Complaint (*see* Adv. Pro. Docs. 1, 5, 11 and

2

32).[1] On October 7, 2011, the FIM Defendants moved to withdraw the reference on multiple issues, including whether the Trustee had the right to assert claims seeking to recover alleged transfers that occurred extraterritorially. (Adv. Pro. Docs. 63-65). The District Court granted the motion to withdraw the reference on the extraterritoriality issue, and the FIM Defendants (along with various other defendants in these proceedings) moved to dismiss the Complaint as against them on the basis of extraterritoriality. On July 7, 2014, after extensive briefing and argument, Judge Rakoff granted the extraterritoriality motion, holding that the Trustee has no authority under Section 550(a)(2) of the Bankruptcy Code to attempt to recover "subsequent transfers received abroad by a foreign transferee from a foreign transferor" and that the Trustee's claims "are dismissed" to the extent that they seek to recover such foreign transfers. *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*, 513 B.R. 222, 232 (S.D.N.Y. 2014) (the "Extraterritoriality Decision").

In so holding, Judge Rakoff rejected the Trustee's arguments that he should be permitted to take discovery, concluding instead that "it is the Trustee's obligation to allege facts" that plausibly establish a domestic transfer without "additional fact-gathering." 513 B.R. at 232 n.4. Judge Rakoff then referred the matter to this Court to implement the Extraterritoriality Decision

On December 10, 2014, this Court issued the Order Concerning Further Proceedings on Extraterritoriality Motion and Trustee's Omnibus Motion for Leave to Replead and For Limited Discovery (the "Scheduling Order"). (Case No. 08-1789, Doc. 8800). The Trustee was not permitted to proceed with discovery on the issues of extraterritoriality or good faith, and all

---

[1] In April and August 2009, the Trustee served FIM (USA), Inc. ("FIM (USA)"), a subsidiary of FIM Advisers with subpoenas pursuant to Rule 2004. FIM (USA) produced approximately 1 million pages of documents to the Trustee in response to those subpoenas. Kleinick Decl. ¶ 13. In addition, from June 2010 through approximately September 2011, the FIM Defendants provided almost 40,000 documents to the Trustee pursuant to court order in connection with proceedings commenced by the Trustee against the FIM Defendants and others in the High Court of Justice, Queen's Bench Division, Commercial Court. (Adv. Pro. Doc. 164, Ex. 5 at ¶ 10).

3

defendants' time to respond to the operative complaints in their respective proceedings was stayed until after the Extraterritoriality Decision is implemented.

Pursuant to the Scheduling Order, all of the affected defendants, including the FIM Defendants, filed a Consolidated Supplemental Memorandum of Law in Support of the Transferee Defendants' Motion to Dismiss Based on Extraterritoriality (the "Extraterritoriality Motion"). That motion, which is designed to implement the Extraterritoriality Decision, was fully briefed to this Court and oral argument was held on December 16, 2015. As explained in the defendants' papers, the Complaint is devoid of allegations of a domestic transfer to any of the FIM Defendants, and under the holding by the District Court in its Extraterritoriality Decision, the claim in this proceeding against all four FIM Defendants is and must be dismissed. (*See* Adv. Pro. Docs. 158, 214, 216).

The Kingate Funds have been in liquidation in Bermuda and the BVI since 2009. FAC ¶ 43. On December 22, 2010, over six months before the Trustee added the FIM Defendants in this proceeding, the Kingate Funds' liquidators brought an action in Bermuda (the "Bermuda Action") against Kingate Management Limited ("KML"), the FIM Defendants, certain of the Trust Defendants[2] and others seeking the same relief on behalf of the Kingate Funds as the Trustee seeks against those defendants in this proceeding. Pursuant to a court order in Bermuda, the FIM Defendants and others produced documents during discovery in the Bermuda Action subject to an implied undertaking of confidentiality (the "Implied Undertaking of Confidentiality") that the documents could not be used by any party to the Bermuda Action for

---

[2] The Kingate Funds initially included as defendants Ashby Holding Services Limited and El Prela Group Holding Services Limited, First Peninsula Trustees Limited (as trustee of the Ashby Trust) and Port of Hercules Trustees Limited (as trustee of the El Prela Trust) (together, the "Initial Trust Defendants"). On February 13, 2012, the Kingate Funds added Ashby Investment Services Limited, El Prela Trading Investments Limited and Alpine Trustees Limited (together, the "Joined Trust Defendants") as parties to the Bermuda Action (collectively, the "Trust Defendants").

4

any purpose outside of that action. (Declaration of Sarah-Jane Hurrion dated May 19, 2016 (the "Hurrion Decl.") at ¶¶ 14-21 and Ex. 1 at SJH 1/1-35). Although the Kingate Funds applied to the Bermuda court to lift the Implied Undertaking of Confidentiality, the Bermuda court has not done so and the Kingate Funds therefore are not at liberty to disclose to the Trustee in this proceeding the Bermuda Documents the Kingate Funds received from the FIM Defendants in the Bermuda Action. (Hurrion Decl. at ¶¶ 37-39 and Ex. 1 at SJH 1/36-43). The FIM Defendants' Bermuda Documents have not been shared with U.S. counsel for the Funds in this action, nor have they been provided to counsel to the FIM Defendants in this action. (Hurrion Decl. at ¶ 41 and Ex. 1 at SJH 1/44-46; Declaration of Jodi Kleinick dated May 20, 2016 (the "Kleinick Decl.") at ¶ 2).

On February 10, 2016, the Trustee sent a letter to the FIM Defendants and the other non-Fund Defendants requesting that they consent to proceed to party discovery even though the Court had not yet decided the Extraterritoriality Motion. (Kleinick Decl. Ex. 1). On February 19, 2016, the non-Fund Defendants responded to the Trustee, explaining that party discovery should not proceed until after the Extraterritoriality Motion was decided and after the Court determined whether there was personal jurisdiction over any of the defendants. (Kleinick Decl. Ex. 2). The Trustee did not respond to that letter, nor did he attempt to confer with the FIM Defendants or seek any conference with the Court. (Kleinick Decl. ¶ 4). Instead, on April 15, 2016, the Trustee simultaneously purported to serve the FIM Defendants with document requests and the Trustee's Motion. (Adv. Pro. Docs. 252-254).

**ARGUMENT**

A.   <u>The Trustee's Motion Should Be Denied Because It Is Procedurally Improper</u>

As a preliminary matter, the Trustee's Motion should be denied because the Trustee failed to comply with this Court's rules or the Federal Rules. First, the Trustee failed to satisfy any of the requirements of Rule 26. The Trustee was aware that the FIM Defendants (and the

5

other Non-Fund Defendants) maintain that party discovery of the Non-Fund Defendants should await the implementation of the Extraterritoriality Decision. The Trustee did not confer with any of the Non-Fund Defendants to resolve this dispute, and did not wait until after a Rule 26(f) conference. Instead, the Trustee simply proceeded to simultaneously serve the Document Requests and the Trustee's Motion. However, Rule 26(d) prohibits a party from seeking discovery until after the parties have conferred on a discovery plan and a Rule 26(f) conference is held. Under Rule 26(d)(2)(B), any "early Rule 34 request" is not deemed to be served until the Rule 26(f) conference.

The Trustee also ignored the requirements of Rule 37. Rule 34(a)(2)(A) provides that a party to whom the discovery is requested need not respond to the request until 30 days after the Rule 26(f) conference. Rule 37 does not permit the Trustee to move to compel discovery before the time to respond to the requested discovery has run, let alone without conferring to attempt to resolve the dispute in good faith and without filing the certification required under Rule 37(a)(1) and Local Rule 7007-1(b) attesting that he has done so. For these reasons alone, the Trustee's Motion should be denied.

      B.      The Trustee's Motion Should Be Denied Because Discovery of the FIM Defendants is Premature

In addition to these procedural deficiencies, the Trustee's Motion should be denied because no party discovery of the FIM Defendants should take place before the Extraterritoriality Motion is decided by this Court. The Extraterritoriality Motion is a dispositive motion which should result in the dismissal of all four FIM Defendants from this case. None of these foreign defendants should be compelled to participate in costly and burdensome party discovery in those circumstances. Moreover, regardless of the outcome of the Extraterritoriality Motion, the Trustee should not be permitted to seek either party or non-party discovery from the FIM

6

Defendants unless this Court determines that there is personal jurisdiction over them. Until such time, the Trustee must either wait to obtain additional discovery from the FIM Defendants or proceed by way of appropriate third-party letters of request issued pursuant to the Hague Convention on the Taking of Evidence Abroad and/or the discovery laws of the defendants' jurisdictions of incorporation or citizenship.

1. *The Trustee Should Not Be Permitted to Take Party Discovery of the FIM Defendants Until After The Extraterritoriality Motion Is Decided*

This Court's Scheduling Order dictates an orderly procedure for all 88 adversary proceedings in which the defendants have moved to dismiss the complaints against them based on extraterritoriality:

> Further proceedings on the Trustee's Motion insofar as it seeks (a) limited discovery, (b) leave to amend the complaints in the proceedings listed in Exhibits A and B to add allegations relevant to the good faith issue, and/or (c) leave to amend the complaints to add allegations relevant to the extraterritoriality issue in proceedings listed on Exhibit C but not listed in Exhibits A or B shall be scheduled by the Court *following the decision* on the Extraterritoriality Motion.

(Scheduling Order ¶ 14 (emphasis added)). In issuing the Scheduling Order, this Court recognized that it would be inefficient to proceed with discovery while the Extraterritoriality Motion is pending. Paragraph 12 of the Scheduling Order accordingly sets the time "for all defendants in any of the adversary proceedings [at issue] to respond to the complaints,"– and, by implication, any discovery – to "after the Court decides whether any counts or the respective complaints or portions thereof should be dismissed."

The District Court made clear that the Trustee was not entitled to discovery from the defendants who moved to dismiss on the basis of extraterritoriality before the Extraterritoriality Decision is implemented and thus until the Extraterritoriality Motion is decided. In issuing the Extraterritoriality Decision, Judge Rakoff rejected the Trustee's arguments that he was entitled to "additional fact gathering" and held instead that the Trustee had the "obligation" – without the aid of discovery – to put forth specific facts demonstrating that he has a viable claim against each

7

defendant. *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 513 B.R. at 232 n.4. In returning this proceeding to this Court to implement the Extraterritoriality Decision, Judge Rakoff recognized that extraterritoriality is a critical "gatekeeping" issue that must be decided before there are any further proceedings against the affected foreign defendants.

Granting the Trustee's Motion and allowing party discovery to proceed against the FIM Defendants before the Extraterritoriality Motion is decided would be inconsistent with paragraphs 12 and 14 of the Scheduling Order and with Judge Rakoff's directives in the Extraterritoriality Decision. Nor is there any reason to reverse this sensible and orderly procedure. The Trustee does not argue that he will be unfairly prejudiced if discovery does not commence as to the FIM Defendants before the Extraterritoriality Decision is implemented – nor could he. No discovery is proceeding in any of the other 88 cases subject to the Scheduling Order; all of the parties in these proceedings are awaiting this Court's decision to make their additional Rule 12 motions. Given the strength of the Extraterritoriality Motion as applied to the FIM Defendants, there is no justification for subjecting the FIM Defendants to extensive party discovery now.[3] Rather, discovery against the FIM Defendants should be postponed until after

---

[3] Although the Trustee has elected to begin discovery of the Kingate Funds, that decision should have no bearing on whether the Trustee should be permitted to seek party discovery of the FIM Defendants now. Indeed, the scheduling order agreed to by the Trustee and the Funds in this proceeding gives those parties until September 15, 2016 to serve document requests, and the dates for other discovery extend well into 2017. (Adv. Pro. Doc. 227). The Trustee therefore has at least four more months, absent any extensions of that schedule, to serve his document requests assuming *arguendo* that the dates in that scheduling order can be applied to the FIM Defendants. In the interim, the Trustee has already received extensive discovery (well over 1 million pages) from the FIM Defendants in response to the Rule 2004 subpoena he served on FIM (USA) and pursuant to the discovery order issued by the U.K. court directed to FIM Limited and FIM Advisers. (Adv. Pro. Doc. 214, p. 3 n.5; Kleinick Decl. ¶ 13; Adv. Pro. Doc. 164, Ex. 5 at ¶ 10). To the extent that the Trustee requires additional discovery from the FIM Defendants, there is no reason why such discovery cannot await the determination of the Extraterritoriality Motion.

8

the Extraterritoriality Motion is decided in accordance with Judge Rakoff's directives. *See Spencer Trask Software & Info. Servs., LLC v. RPost Int'l Ltd.*, 206 F.R.D. 367, 368 (S.D.N.Y. 2002) (staying discovery pending outcome of motion to dismiss). *See also In re Term Commodities Cotton Futures Litig.*, No. 12 CIV. 5126 ALC KNF, 2013 WL 1907738, at *5 (S.D.N.Y. May 8, 2013); *Anti-Monopoly, Inc. v. Hasbro, Inc.*, No. 94CIV.2120(LMM)(AJP), 1996 WL 101277, at *3 (S.D.N.Y. Mar. 7, 1996).

2. *The Trustee Should Not Be Permitted to Take Discovery of the FIM Defendants Absent a Finding of Personal Jurisdiction Over Them*

The FIM Defendants advised the Trustee that one or more of the FIM Defendants -- all foreign entities or individuals -- intend to move to dismiss the Complaint on personal jurisdiction grounds and expressly reserved their right to do so. (Kleinick Decl. Ex. 2). As the cases in the briefs being simultaneously filed by KML, the Trust Defendants, Citi Hedge Fund Services Ltd. and HSBC Bank Bermuda Limited in opposition to the Trustee's Motion make clear, the merits of the FIM Defendants' personal jurisdiction arguments are particularly strong and, therefore, the Trustee should not be permitted to proceed with party discovery of any FIM Defendant absent this Court's finding of personal jurisdiction over that defendant. *See, e.g, Hong Leong Fin. Ltd. (Singapore) v. Pinnacle Performance Ltd.*, 297 F.R.D. 69, 75 (S.D.N.Y. 2013) (staying discovery pending determination of motion to dismiss because court has an obligation to refrain from proceeding with merits discovery where it may lack subject matter jurisdiction); *Filus v. Lot Polish Airlines*, 907 F.2d 1328, 1332 (2d Cir. 1990) ("[U]ntil she has shown a reasonable basis for assuming jurisdiction, [plaintiff] is not entitled to any other discovery [besides jurisdictional discovery]").

Moreover, should the Court grant the Extraterritoriality Motion as to the FIM Defendants, even third-party discovery under the Rules cannot be taken of them without this Court's finding of personal jurisdiction. *Estate of Ungar v. Palestinian Auth.*, 400 F. Supp. 2d 541, 549 (S.D.N.Y. 2005) ("If [plaintiffs] cannot make out a prima facie case for personal jurisdiction,

9

they cannot take discovery – even jurisdictional discovery – from a foreign corporation."). *See also Gucci Am., Inc. v. Bank of China*, 768 F.3d 122, 141 (2d Cir. 2014). Without a finding of personal jurisdiction over the FIM Defendants, the Trustee must follow established procedures for seeking discovery from them as foreign non-parties—an application under the Hague Convention, or the issuance of letters rogatory. *See* Convention on the Taking of Evidence Abroad in Civil or Commercial Matters, Mar. 18, 1970, 23 U.S.T. 2555.

Simply put, the Trustee's effort to obtain discovery from the FIM Defendants is procedurally improper and premature, and the Trustee's Motion should therefore be denied.

### C.     The Trustee Should Not Be Permitted to Obtain the FIM Defendants' Documents From the Funds

The Trustee seeks to make an end-run around the protections afforded to the FIM Defendants by arguing that he is entitled to (a) obtain the documents produced by the FIM Defendants to the Funds in the Bermuda Action directly from the Funds; or (b) require that the Funds collect all documents in the FIM Defendants' possession relating to the Funds under the auspices of the various agreements between the parties and then turn them over to the Trustee. Both these arguments fail.

First, the Bermuda Documents produced by the FIM Defendants to the Funds in the Bermuda Action are subject to the Implied Undertaking of Confidentiality, which prohibits the Funds from using those documents for any purpose whatsoever outside the context of the Bermuda Action absent (a) consent of the FIM Defendants; or (b) leave of the Bermuda court. (Hurrion Decl. ¶¶ 15-36 and Ex.1 at SJH 1/1-35). The FIM Defendants have not granted consent for the Funds to turn over their documents to the Trustee, their adversary in this action. Nor has the Bermuda court lifted the Implied Undertaking of Confidentiality to permit the Funds to do so. (Hurrion Decl. ¶¶ 37-39 and Ex. 1 at SJH 1/36-43). Accordingly, the Funds cannot produce the FIM Defendants' Bermuda Documents to the Trustee without violating Bermuda law and their obligations to the Bermuda court. (Hurrion Decl. ¶¶ 25, 39).

10

The Implied Undertaking of Confidentiality is a well-established principle under Bermuda law and of critical importance in maintaining the integrity of the Bermuda discovery process. (Hurrion Decl. ¶¶ 21-36, 40). As explained in the memoranda of law being simultaneously submitted by KML and the Trust Defendants in opposition to the Trustee's Motion, to disregard the Implied Undertaking of Confidentiality and allow the Funds to produce the FIM Defendants' Bermuda Documents to the Trustee would accord insufficient deference to the courts of Bermuda and would disregard principles of international comity.[4] Such deference to the Bermuda court and Bermuda law is particularly appropriate here: in issuing the Extraterritoriality Decision, Judge Rakoff held that the Trustee's claims against the various defendants should be dismissed on the alternative ground of international comity, noting that his determination was particularly appropriate where the foreign defendants are involved in foreign proceedings (as the FIM Defendants are here) because "these foreign jurisdictions have a greater interest in applying their own laws than does the United States." 513 B.R. at 232. In light of the Implied Undertaking of Confidentiality and the pendency of the Bermuda Action, the Funds should not be forced (or even allowed) to produce the FIM Defendants' Documents to the Trustee.

Second, irrespective of the Implied Undertaking of Confidentiality, the Funds should not be compelled to "collect anew" documents from the FIM Defendants to turn over to the Trustee under the auspices of the agreements to which FIM Advisers was party over eight years ago. In December 2008, when BLMIS filed for bankruptcy, the operative agreement to which any FIM Defendant was party was the Consulting Services Agreement dated July 29, 2005 between FIM

---

[4] The Trustee asserts that principles of international comity as set out in the Restatement (Third) of the Foreign Relations Law of the United States should not apply because the FIM Defendants' Documents are supposedly located in the United States. That simply is not true. Bermuda Counsel for the Funds confirmed that the FIM Defendants' Bermuda Documents have not been made available to their U.S. counsel in these proceedings and are not located in the U.S. Those documents have also not been made available to counsel for the FIM Defendants in this proceeding. (Hurrion Decl. ¶ 41 and Ex. 1 at SJH 1/44-46; Kleinick Decl. ¶ 2).

Advisers, on the one hand, and KML, on the other, having an effective date as of August 1, 2005 (the "CSAs"). (Kleinick Decl. ¶¶ 5-6 and Exs. 3-8).[5] The CSAs, which are governed by Bermuda law, do not automatically entitle even KML (which is a party to the agreement) to obtain documents from the FIM Defendants, let alone give the Kingate Funds the right to do so. Instead, the CSAs require that KML provide written notice of termination of the CSA in accordance with the agreement under specified circumstances, and only then would FIM Advisers be required to deliver to KML any "books of account, correspondence and records or other documents which are [at that time] in its power and/or possession, belonging to or relating to the Funds." (Kleinick Decl. Exs. 3-4 at ¶ 14).

At no point did KML ever terminate the CSAs, let alone request that FIM Advisers deliver documents pursuant to the termination provisions of those agreements. The reason for that is clear: these provisions were intended to come into effect under circumstances where the business of the Funds was ongoing but the relationship between KML and FIM Advisers had ended. That is not the case here, and none of the cases cited by the Trustee – all of which apply New York and not Bermuda law -- hold that the Kingate Funds have the right to seek these documents from FIM Advisers or that they are somehow within the "control" of a litigation adversary.[6] *See Grayson v. General Electric Co.*, No. 313CV1799WWEWIG, 2016 WL

---

[5] Effective as of May 1, 2000, FIM Limited was a "Consultant" to KML with respect to the Kingate Funds pursuant to separate consulting services agreements (one for each Fund), both dated April 23, 2001 and both amended on June 7, 2001. (Kleinick Decl. Exs. 3-4 at § 2.1; Kleinick Decl. Exs. 5-6). There were no further amendments to these CSAs. (Kleinick Decl. ¶ 5). Effective August 1, 2005, pursuant to deeds of novation (the "Deeds of Novation"), FIM Advisers was engaged as Consultant to KML in place of FIM Limited with respect to both Funds, "releasing and discharging" FIM Limited of any further obligations under the CSAs and of all liability thereunder. (Kleinick Decl. Exs. 3-4 at § 2.1). The Deeds of Novation made clear that FIM Advisers would be named party to the CSAs for both Funds under the same terms as contained in the CSAs. (*Id.* at § 3).

[6] The cases relied on by the Trustee all involve documents belonging to a legal affiliate or a party in an ongoing, current business or contractual relationship. Not a single one involves documents belonging to an unrelated third party whose business relationship has long since [Footnote continued on next page]

12

1275027, at *2 (D. Conn. Apr. 1, 2016) (contractual relationship insufficient to show "control" over third party's documents). Moreover, the CSAs expressly provide that FIM is an "independent contractor" and not an "agent" of either KML or the Funds (Kleinick Decl. Exs. 3-4 at § 18), which undercuts any argument that even KML has "control" over the FIM Defendants' documents. *Grayson*, 2016 WL 1275027, at *2 (rejecting claim of control where there was no agency relationship between parties). The Trustee's assertions that the Funds somehow have the right to collect documents from the FIM Defendants because they acted as "agents" must be rejected. Again, to the extent that the Trustee seeks additional discovery of the FIM Defendants before the Extraterritoriality Motion is decided and before jurisdiction is established over them, he must abide by the rules for obtaining non-party discovery from a foreign defendant. He has not done so, and his effort to bypass those procedures should be rejected.

---

[Footnote continued from previous page]
ended and is currently an adversary in litigation. *See, e.g., Cooper Indus., Inc. v. British Aerospace*, 102 F.R.D. 918, 919-20 (S.D.N.Y. 1984) (finding control by parent over subsidiary's documents); *Golden Trade S.r.L. v. Lee Apparel Co.*, 143 F.R.D. 514, 525 (S.D.N.Y. 1992) (finding control over non-adversarial party subject to ongoing contractual obligation requiring support in case of litigation). Neither of those situations is present here. The parties are adversaries in litigation who not only have no ongoing business relationship but are all out of business and have not performed under any contract for over seven years. None of the cases cited by the Trustee can support the conclusion that the Funds somehow "control" the FIM Defendants' documents *Cf. Cooper Indus.*, 102 F.R.D. at 919 (finding control where "[t]he documents plaintiff seeks all relate to the planes that defendant **works with every day**.") (emphasis added).

13

## CONCLUSION

For the foregoing reasons, the Trustee's Motion should be denied, together with such other and further relief as the Court deems appropriate.

Dated: New York, New York
May 20, 2016

PAUL HASTINGS LLP

By: /s/ Jodi Kleinick
Barry Sher
Jodi Kleinick
Mor Wetzler

200 Park Avenue
New York, NY 10166
Telephone: (212) 318-6000

*Attorneys for Defendants FIM Limited, FIM Advisers LLP, Carlo Grosso and Federico Ceretti*

LEGAL_US_E # 121701114

14