# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>Plaintiff-Applicant,<br><br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>Defendant. | NO. 08-01789 (BRL)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>Plaintiff,<br><br>v.<br><br>FEDERICO CERETTI, CARLO GROSSO, KINGATE GLOBAL FUND, LTD., KINGATE EURO FUND, LTD., KINGATE MANAGEMENT, LIMITED, FIM ADVISERS LLP, FIM LIMITED, CITI HEDGE FUND SERVICES LIMITED, FIRST PENINSULA INDIVIDUALLY AND AS TRUSTEES OF THE ASHBY TRUST, THE ASHBY TRUST, ASHBY INVESTMENT SERVICES LIMITED INDIVIDUALLY AND AS TRUSTEES OF THE ASHBY TRUST, ALPINE TRUSTEES LIMITED INDIVIDUALLY AND AS TRUSTEES OF THE EL PRELA TRUST, PORT OF HERCULES LTD. INDIVIDUALLY AND AS TRUSTEE OF THE EL PRELA TRUST, EL PRELA TRUST, EL PRELA GROUP HOLDING SERVICES, ASHBY HOLDING SERVICES LIMITED, AND EL PRELA TRADING INVESTMENTS LIMITED AND HSBC BANK BERMUDA LIMITED,<br><br>Defendants. | Adv. Pro. No. 09-1161 (SMB) |

LEGAL_US_E # 121809107.4

## DECLARATION OF SARAH-JANE HURRION

I, **SARAH-JANE HURRION**, of Harneys Bermuda Limited, Continental Building, 25 Church Street, Hamilton HM 12, Bermuda, declare under penalty of perjury as follows:

**Introductions and Qualifications**

1. I am the managing partner and head of the litigation department of the Bermuda law firm Harneys Bermuda Limited. I have been instructed by Paul Hastings LLP, the US counsel for FIM Limited, FIM Advisers, Carlo Grosso and Federico Ceretti (together, the "FIM Defendants") in the above-captioned adversary proceeding (the "US Action"), to express my opinion in relation to certain issues under Bermuda law.

2. I understand that this Declaration will be submitted on behalf of the FIM Defendants in opposition to the motion by Irving Picard (the "Trustee"), the Trustee of the Estate of Bernard L. Madoff Investment Securities ("BLMIS") to compel production of certain documents (the "FIM Defendants' Documents") produced by the FIM Defendants to Kingate Global Fund and Kingate Euro Fund (together, the "Kingate Funds") in discovery in an action brought by the Kingate Funds against the FIM Defendants and others in Bermuda (the "Bermuda Action"), which is more particularly described below. Specifically, I have been asked to express my opinion on the application of the "Implied Undertaking of Confidentiality" that applies to documents provided on discovery as a matter of Bermuda Law. I also submit this Declaration to provide this Court with certain communications exchanged by the parties to the Bermuda Action concerning the FIM Defendants' Documents.

3. I received an LLB and Masters of Jurisprudence from Oxford University, United Kingdom and subsequently attended the Inns of Court School of Law where I completed the Barristers' Vocational Course. I was called the Bar of England and Wales in 2001, the Bar of the Cayman Islands in 2006 and the Bar of Bermuda in

2

2011. I have over 15 years' experience in all aspects of commercial litigation and have specifically practiced such in the Bermudian context since being admitted to the Bar of Bermuda. I recently co-edited the Sweet & Maxwell publication *Bermuda Commercial Law*. I was also the attorney on record in the only reported Bermuda authority known to counsel that addresses the release of the Implied Undertaking of Confidentiality (as explained below).

4. Having regard to my training and practical experience as set out at paragraph 3 above, and in particular as respects litigation in Bermuda, I believe that I am competent to express an opinion on the substantive and procedural matters of Bermuda law with which this opinion is concerned.

5. I am aware of the common law duties of an expert giving evidence to a court and I make this declaration in accordance with the principles set out in The Ikarian Reefer [1993] FSR 563 and on the same basis that I would expect of an expert preparing a report or giving evidence in proceedings before the courts of Bermuda.

**Brief Outline of the Sources of Bermuda Law**

6. Bermuda law comprises statutory law passed by the legislature in Bermuda and assented to by the Governor of Bermuda, and the common law as established by the Supreme Court of Bermuda, the Court of Appeal for Bermuda and the Judicial Committee of the Privy Council sitting in London (Bermuda's highest appellate court).

7. The Supreme Court of Bermuda, a higher court of first instance with unlimited jurisdiction, would be the court in Bermuda to determine all commercial disputes valued at more than BMD25,000 (including any matters of civil procedure that may arise within such disputes).

8. In regards to the common law, Bermuda generally follows the law of England. The common law of Bermuda includes the principle of *stare decisis*, namely the doctrine

3

of precedent. Accordingly a judge of the Supreme Court of Bermuda will be bound to follow a relevant decision of the Court of Appeal for Bermuda and/or the Privy Council.

9. With respect to the Privy Council, which also serves as the highest appellate court for other common law jurisdictions outside of Bermuda, decisions will be binding on the Bermuda courts regardless of the jurisdiction from which the appeal is being heard (in circumstances where the common law or the statutory provisions in question are the same). This principle has been followed a number of times by both the Supreme Court and Court of Appeal for Bermuda (see Grayken v Grayken [2011] Bda LR 14 at paragraph 18 and PwC v Saad Investments Company Ltd [2013] Bda LR 82 at paragraph 6 as respects the Court of Appeal for Bermuda; see Re Saad Investments Co Ltd and Singularis Holdings Ltd [2013] Bda LR 28 at paragraph 27 and Mexico Infrastructure Finance LLC v Par-la-Ville Hotel and Residences Ltd [2015] Bda LR 56 at paragraph 46 as respects the Supreme Court of Bermuda).

10. Strictly speaking, first-instance decisions of the Supreme Court of Bermuda will not bind other first-instance judges in subsequent Supreme Court matters, but they will generally be followed unless there are pressing reasons to the contrary.

11. In the absence of any specific authority of a Bermuda Court on a matter, the Bermuda courts will consider the laws of England and Wales for guidance. Section 15 of the Supreme Court Act 1905 provides,

> *"[s]ubject to the provision of any Acts which have been passed in any way altering, amending or modifying the same, and of this Act, the common law, the doctrines of equity, and the Acts of Parliament of general application which were in force in England at the date when these Islands were settled, that is to say, on the 11th day of July 1612 shall be, and are hereby declared to be, in force within Bermuda".*

12. In particular the courts of Bermuda will consider decisions of the Supreme Court of the United Kingdom (formerly the Judicial Committee House of Lords) as highly

4

persuasive. The Supreme Court of the UK siting as the highest appellate Court for England and Wales, and the Privy Council sitting as the highest appellate Court for Bermuda, share common membership. The Court of Appeal for Bermuda has recognised and has accepted that, generally speaking, Bermuda Courts will accept decisions of the Supreme Court of the UK as binding in respect of common law matters (Crockwell v Haley [1993] Bda LR 7).

13. I am not aware of any instance where either the Supreme Court of Bermuda or the Court of Appeal for Bermuda has refused to follow a decision of the Supreme Court of the UK. The practical reality is that decisions of the English Court of Appeal and Supreme Court of the UK and also first instance decisions of other Divisional Courts of the High Courts of Justice in the UK are regularly cited to the Bermuda courts and are highly persuasive and invariably followed.

**Background Facts**

14. On 22 December 2010 the Kingate Funds commenced an action in the Supreme Court of Bermuda against Kingate Management Limited ("KML"), the FIM Defendants and Ashby Holding Services Limited, El Prela Group Holding Services Limited, First Peninsula Trustees Limited (as trustee of the Ashby Trust) and Port of Hercules Trustees Limited (as trustee of the El Prela Trust)(together, the "Initial Trust Defendants") captioned *Kingate Global Fund Limited (In Liquidation) and another v Kingate Management Limited (In Liquidation) 2010:454)*(the "Bermuda Action"). On 13 February 2012, pursuant to the order of the Honourable Mr Justice Hellman dated 9 February, the Kingate Funds joined Ashby Investment Services Limited, El Prela Trading Investments Limited and Alpine Trustees Limited (together, the "Joined Trust Defendants") as parties to the Bermuda Action (the Initial Trust Defendants and the Joined Trusts Defendants are together referred to as the "Trust Defendants").

15. In the Bermuda Action, all parties were required to exchange certain discovery pursuant to the orders of the Honourable Mr Justice Hellman dated 13 March 2014 and 15 April 2014 (the "Bermuda Court Orders"). Copies of the Bermuda Court

5

Orders are attached hereto as Exhibit 1 and labelled SJH-1/1 – 35. In accordance with those orders, the Kingate Funds obtained document discovery from KML, the FIM Defendants and Trust Defendants on 1 December 2014 (the "Bermuda Discovery").

16. Under the terms of the Bermuda Court Orders, the parties to the Bermuda Action were required to exchange discovery and inspection simultaneously.

17. Discovery was provided by way of list pursuant to paragraph 1 of the order dated 13 March 2014 which provides that:

> "*1.    Subject to paragraphs 2 and 3 below, the parties shall by 4:00pm on 1 December 2014 each give discovery to the other parties by list by category and chronologically of documents in their possession, custody or power relating to matters in question in the action, that were generated at any time between 1 January 1994 and 4 June 2009 (the "**Period**")*" (see SJH-1/1).

18. Each party provided a list in the form prescribed by Order 24 Rule 5 of the Rules of the Supreme Court 1985. Under Rule 5 the parties were required to set out in detail: all documents that the party has in their *"possession custody or power ...relating to the matters in question in [the] action[1]"*; of those documents, the documents that the party objects to producing, stating the grounds of objection (usually legal privilege); and all relevant documents that the party had but no longer has in their possession, stating when they were last in the parties' possession and what happened to them.

19. The parties provided inspection pursuant to paragraph 4 of the order dated 13 March 2014 which provides that,

> "*4.    Discovery of all electronic documents shall be given in the form of the protocol agreed between the parties and annexed in Schedule 2 to this Order (or otherwise as agreed*

---

1. [1] *The determination of whether a document is considered relevant will be determined according to the principles established in* The Compagnie Financiere et Commerciale du Pacifique v The Peruvian Guano Company (1882) 11 QBD 55.

*between the parties and filed with the Court), save that paragraph 3.3 of that protocol shall not apply to the First Defendant without the First Defendant's agreement or further Court Order, for which purpose the parties are at liberty to apply"* (see SJH-1/2).

20. Paragraph 4 (and Schedule 2) provided for the parties to physically exchange hard drives containing each of the parties' discovery documents. KML produced approximately 65,000 documents; the FIM Defendants produced approximately 47,000 documents; and the Trust Defendants produced approximately 27,000 documents. The Kingate Funds, in exchange, produced approximately 160,000 documents.

**Implied Undertaking of Confidentiality as Matter of Bermuda Law**

21. As a matter of Bermuda law (derived from common law principles), parties that receive documents via the compulsive powers of the court do so on the basis that the receiving party accepts those documents subject to an implied undertaking of confidentiality not to use the documents for any ulterior or collateral purpose (the "Implied Undertaking of Confidentiality"). The position is set out in the Bermuda case of Re Lehman Re Ltd [2011] Bda LR 56 as follows:

> *"…a party obtaining discovery from his adversary is obligated to use the documents disclosed to him only for the proper purposes of conducting his own case, subject to an implied undertaking not to use any documents provided by way of discovery for any collateral or ulterior purpose"* (see Re Lehman at paragraph 30).

22. Re Lehman further defines 'collateral or ulterior purpose' as **any** use outside of the proceedings in which discovery was given:

> *"[w]hat constitutes a collateral or ulterior purpose appears clearly to be use of the documents otherwise than in the proceedings in which discovery was given…"* (see Re Lehman at paragraph 31).

23. Any use of documents by the non-producing party outside of the proceedings in which those documents were produced in discovery, including any attempt to produce

7

or use those documents in other proceedings, is a breach of the Implied Undertaking of Confidentiality.

24. It is common ground between the parties in Bermuda that use by the Funds of KML, the Trust Defendants' or the FIM Defendants' documents in the US would comprise collateral or ulterior use and thus a breach of the Implied Undertaking of Confidentiality.

25. A breach of the Implied Undertaking of Confidentiality constitutes a contempt of court.

26. There are only two ways that a party may be released from the Implied Undertaking of Confidentiality:

    1) By consent of the party providing discovery; or

    2) By order of the Bermuda court releasing the party in question.

27. The FIM Defendants, and the rest of the defendants to the Bermuda Action, have not consented to the Kingate Funds being released from the Implied Undertaking of Confidentiality. Accordingly the Kingate Funds cannot disclose the Bermuda Discovery in this proceeding absent an order of the Bermuda Court releasing them from the Implied Undertaking of Confidentiality. No such order has been granted by the Bermuda Court.

**Legal Principles on which the Court will Release the Implied Undertaking**

28. There is relatively little Bermuda case law on the release of the implied undertaking. As such the Bermuda courts will be guided by highly persuasive English case law on the matter.

*Heavy Burden on Applicant*

29. Once it has been established that the documents in question are protected by the Implied Undertaking of Confidentiality, the burden will lay with the applicant (in this case the Kingate Funds) to satisfy the Bermuda court that the undertaking should be released (see Crest Homes plc v Marks and others [1987] 1 AC 829 at 859; see Re Lehman at paragraph 21).

30. It has been established that this burden is a heavy one and should not be discharged lightly due to the critical importance of maintaining the integrity of the discovery process. In Crest Homes, Lord Oliver, sitting in the House of Lords, further stated that,

> "Mr. Morritt, however, on behalf of the corporate appellants, has rightly drawn attention to the importance, stressed in Home Office v Harman [1983] 1 A.C. 280, of preserving the implied undertaking. It should not be relaxed, it is said, as a matter of public policy, for otherwise litigants may be deterred from making full and frank disclosure" (see Crest Holmes at 857).

31. In the unreported decision of Eagle Star Insurance Co. Ltd. v Arab Bank plc (25 February 1991), Hobhouse J held that,

> "to release a party from their undertaking is not something to be done lightly. That is implicitly stressed in the Crest Homes case and has also been stressed by Hirst J, in another case that was cited. There have to be really substantial grounds which take the case into a special category to show that there should be some waiver or qualification of the undertaking" (see Eagle Star Insurance at page 6).

*Circumstances Governing the Release or Modification of the Implied Undertaking*

32. In Crest Homes the House of Lords, having reviewed the previous authorities on the release of the implied undertaking, established that,

> "[previous case law] illustrate[s] no general principle beyond this, that the court will not release or modify the implied undertaking given on discovery save in special circumstances and where the

9

*release or modification will not occasion injustice to the person giving discovery"* (see <u>Crest Holmes</u> at 860).

33. The burden on the Kingate Funds therefore is to establish firstly, that special circumstances exist, **and** secondly that the disclosure of the Bermuda Discovery by the Kingate Funds to the Trustee in this US Action will not prejudice the FIM Defendants (as respects the FIM Defendants' Documents) or the other disclosing parties.

34. The determination of whether i) special circumstances exist, and ii) a release from the undertaking may cause injustice, is an inherently fact specific analysis and will be informed by the circumstances of this particular case (see <u>Crest Homes</u> at 860).

35. In <u>Bourns Inc v Raychem Corp and others</u> [1999] 3 All ER 154 the English Court of Appeal had to decide *inter alia* whether to release a party from the Implied Undertaking of Confidentiality in respect of documents that were produced during taxation[2] so that they could subsequently be disclosed in separate proceedings which were also underway in the US. Bourns provided documents during the taxation process and Raychem sought permission to subsequently use those documents in the US proceedings.

36. After firstly deciding that the Implied Undertaking of Confidentiality applied to the documents produced by Bourns during taxation, the Court of Appeal refused to allow subsequent disclosure in the US proceedings and held that,

> *"to relieve Raychem [from the Implied Undertaking of Confidentiality] could deter other parties from making full discovery. To free documents disclosed under a discovery procedure, so as to enable them to be used to impugn the action of the party making disclosure and its witnesses in a foreign country is not inductive to compliance with the obligation to make full disclosure in this country. That obligation is, I believe, the primary reason for the implied undertaking and it would not be right in this case to take any step which would tend to deter compliance with it.*

---

[2] 'Taxation' is the process by which the Taxing Master assesses and reviews the costs claimed by a party who has been awarded their costs of litigation for the purpose of determining the level of costs payable by the paying party.

*Mr Bloch argued with passion that a failure to lift the implied undertaking would result in interference with the US court proceedings. It followed that comity required the undertaking to be lifted. He submitted that the undertaking both interfered with the US court proceedings and the US lawyers' duties to the court…*

*If that submission be right, then I can see no reason why the undertaking would not be relieved in a substantial number of cases where there were proceedings in this country and in countries where discovery was not available or it was alleged that discovery had not been completed. The whole purpose of the implied undertaking would be impugned if that was to happen. Further, the submission is based on the fallacy that the order of this court is the cause of and constitutes interference with the US proceedings. It does not. The US court can make such orders as it thinks fit without infringing the injunction [sought by Bourns to ensure Raychem abided by the Implied Undertaking of Confidentiality]. The injunction only confines use of the documents to the proceedings in which they were disclosed. If they are disclosed in other proceedings, the injunction will not impinge on their use. I agree that US law and practice are best left to the US courts. But that does not mean that the implied undertaking, which is imposed to encourage compliance with the obligation to make full disclosure on discovery, should be lifted so as to enable documents disclosed to be used as ammunition for an application in the US proceedings. The practice and procedure of US courts are sophisticated and are capable of doing justice between the parties."* (see Bourns at 171).

## Kingate Funds' Application in the Supreme Court of Bermuda to be released from the Implied Undertaking of Confidentiality

37. The Kingate Funds made an application to the Supreme Court of Bermuda seeking an order of the court that they be released from the Implied Undertaking of Confidentiality. On 13 November 2015 the Kingate Funds made said application by way of summons filed in the Supreme Court of Bermuda. A copy of the summons is attached hereto as Exhibit 1 and labelled "SJH-1/36 – 38." That application was heard on 17 March 2016.

38. At the 17 March 2016 hearing, The Honourable Mr Justice Hellman did not grant the Kingate Funds application. Instead, he adjourned the hearing of the Kingate Funds' application to a date to be determined in the future without hearing the application on

its merits. A copy of the order made at that hearing is attached hereto as Exhibit 1 and labelled "SJH-1/39 – 40." The Honourable Mr Justice Hellman subsequently issued an interim ruling setting out the grounds on which the adjournment was granted. A copy of that ruling is attached hereto as Exhibit 1 and labelled "SJH-1/41 – 43."

39. By way of summary, the Kingate Funds remain subject to the Implied Undertaking of Confidentiality in respect of the Bermuda Discovery. They do not have the consent of the FIM Defendants to produce the FIM Defendants' Documents to the Trustee in this US Action (nor, I understand, do they have the consent of KML or the Trust Defendants to produce the documents those parties produced to the Kingate Funds in the Bermuda Action to the Trustee in this US Action). Accordingly, the Kingate Funds have no legal right under Bermuda law to produce the FIM Defendants' Documents or the other Bermuda defendants' documents to the Trustee in response to the Trustee's document requests directed to the Kingate Funds in this US Action.

40. As a matter of Bermuda law the Implied Undertaking of Confidentiality is of critical importance in maintaining the integrity of the Bermuda discovery process. It is only in situations in which the applicant establishes special circumstances and where the release or modification will not occasion injustice to the person giving discovery that the Bermuda Court would grant such an application.

**The Trustee's Assertions That the FIM Defendants' Documents Are Present in the United States**

41. I understand that the Trustee has asserted that section 442(1)(c) of the Restatement (Third) of the Foreign Relations Law of the US supposedly does not apply to the Bermuda Discovery because it is stored by the Kingate Funds on a database within the United States. I do not believe this to be the case. Attached as Exhibit 1 and labelled "SJH-1/44 – 46" is a letter to Bermuda counsel for the Kingate Funds requesting confirmation that the Bermuda Discovery was not made available to counsel for the Kingate Funds in the US or otherwise stored on a database accessible

12

to US counsel, and the Kingate Funds' response confirming that the Bermuda Discovery remains outside the US. Nor have the FIM Defendants' Documents been made available to counsel for the FIM Defendants in this action.

I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct and this Declaration was executed on 19 May 2016 at Continental Building, 25 Church Street, Hamilton HM 12, Bermuda.

_____
Sarah-Jane Hurrion