**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (SMB) |
| Plaintiff-Applicant, | SIPA Liquidation |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |

**AFFIDAVIT OF VINEET SEHGAL IN SUPPORT OF THE TRUSTEE'S MOTION FOR AN ORDER APPROVING THE SEVENTH ALLOCATION OF PROPERTY TO THE FUND OF CUSTOMER PROPERTY AND AUTHORIZING SEVENTH INTERIM DISTRIBUTION TO CUSTOMERS**

CITY OF NEW YORK     )
                     )  ss:
STATE OF NEW YORK    )

Vineet Sehgal, being duly sworn, deposes and says:

1. I am a Managing Director at AlixPartners LLP ("AlixPartners"). I make this affidavit to transmit to the Court information relevant to the motion by Irving H. Picard, trustee (the "Trustee") for the liquidation of the business of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa *et seq.* ("SIPA"),[1] and the substantively consolidated estate of Bernard L. Madoff ("Madoff") (collectively, "Debtor"), for an Order Approving the Trustee's Seventh Allocation of Property to

---

[1] For convenience, subsequent references to sections of the Act shall follow the form: "SIPA § __."

1

the Fund of Customer Property and Authorizing Seventh Interim Distribution to Customers (the "Motion").

2.  AlixPartners has served as the Trustee's Claims Agent and as the accountant for the BLMIS estate since December of 2008 pursuant to SIPA § 78fff-1(a)(1). As the Claims Agent, AlixPartners was responsible for both mailing the notice of the liquidation and claim forms to potential claimants and causing the notice of the liquidation to be published. AlixPartners has also been responsible for processing all claims submitted to the Trustee and assisting the Trustee in reviewing each customer claim filed to determine whether the asserted claim amount agrees with the "net equity" for that account. In addition, as the accountants for the BLMIS estate, AlixPartners has assisted and continues to assist the Trustee in accounting for the assets of the BLMIS estate, including the cash and cash equivalents available to the Trustee.

3.  I have been actively involved in the liquidation of BLMIS and the claims process since December 2008 and have personal knowledge of the matters set forth herein.

## The Claims Process

4.  To date, the Trustee has received 16,519 customer claims. To date, the Trustee has determined 16,448 of those claims. The Trustee has allowed 2,597 claims and committed to pay approximately $836.633 million in funds advanced to him by SIPC. To date, the allowed claims total approximately $15.080 billion. The Trustee denied 13,432 claims, including 10,732 claims purporting to be customer claims but were in fact claims filed on behalf of third parties or indirect investors. Twelve other claims were filed that asserted no claim. Another 407 claims have been withdrawn.

5. Seventy-one claims (relating to 48 accounts)[2] are currently categorized as "deemed determined," meaning that the Trustee has instituted litigation against those claimants.

6. To date, the Trustee has received 427 timely and 22 untimely filed secured priority and unsecured non-priority general creditor claims totaling approximately $1.7 billion. The claimants include vendors, taxing authorities, employees, and customers filing claims on non-customer proof of claim forms. Of these 449 claims, 94 are general creditor claims and 49 are broker-dealer claims, which together total approximately $264.9 million of the $1.7 billion.

7. 2,085 docketed objections have been filed to the Trustee's claims determinations relating to 3,674 claims, which will be noticed for hearing as necessary. These 2,085 objections relate to 1,012 BLMIS accounts. 1,176 of the 2,085 docketed objections have been fully resolved.

---

[2] This includes two net winner accounts (3 claims) that will not be eligible to participate in the Trustee's interim distributions.

## Recoveries by the Trustee

8. The Trustee previously filed six motions seeking entry of an order approving allocations of property to the fund of customer property (the "Customer Fund") and authorizing pro rata interim distributions of Customer Property, and this Court entered orders approving those motions:

| No. of Distribution | Date of Distribution | Amount Allocated | Amount Distributed | Percentage Distributed | ECF No. for Motion | ECF No. for Order |
|---|---|---|---|---|---|---|
| 1 | 10/05/2011 | $2.618 billion | $685.258 million | 4.602% | 4048 | 4217 |
| 2 | 09/19/2012 | $5.501 billion | $4.978 billion | 33.556% | 4930 | 4997 |
| 3 | 03/29/2013 | $1.198 billion | $696.277 million | 4.721% | 5230 | 5271 |
| 4 | 05/05/2014 | $477.504 million | $468.223 million | 3.180% | 6024 | 6340 |
| 5 | 02/06/2015 | $756.538 million[3] | $403.409 million | 2.743% | 8860 | 9014 |
| 6 | 12/04/15 | $345.472 million[4] | $1.209 billion[5] | 8.262% | 9807 and 11834 | 12066 |

9. The amounts previously distributed as outlined in each of the First through Sixth Allocation Motions change as additional accounts are determined. Below is a summary of the amounts allocated and distributed, as of May 25, 2016:

---

[3] The total amount allocated in the Fifth Allocation Motion was $704,395,951.58. Between the filing of that motion and the Fifth Interim Distribution date, an additional $52,142,279.87 was recovered and included in the numerator.

[4] This represents the amount allocated to the Customer Fund in the Supplemental Sixth Allocation and Sixth Interim Distribution Motion filed on October 20, 2015. The original Sixth Allocation and Sixth Interim Motion filed on April 15, 2015 did not allocate any additional recoveries to the Customer Fund; the Trustee simply re-allocated $1,448,717,625.26 of funds that had previously been allocated to the Customer Fund for the Time-Based Damages reserve.

[5] The amount distributed for the Sixth Interim Distribution is greater than the amount allocated due to the fact that the previously allocated Time-Based Damages Reserve was utilized in addition to new recoveries received subsequent to the Fifth Interim Distribution.

4

| No. | Amount Allocated | Reserve From Previous Allocations[6] | Amount Available for Distribution | Allocation for Allowed Claims[7] | Allocation for Deemed Determined Claims[8] | SIPC Subrogation | Other Reserves[9] |
|---|---|---|---|---|---|---|---|
| 1 | $2.618 billion | N/A | $2.618 billion | $685.258 million | $152.486 million | $8.723 million | $1.772 billion |
| 2 | $5.501 billion | $1.772 billion | $7.273 billion | $4.978 billion | $1.112 billion | $82.101 million | $1.101 billion |
| 3 | $1.198 billion | $1.101 billion | $2.299 billion | $696.277 million | $156.429 million | $15.650 million | $1.430 billion |
| 4 | $477.504 million | $1.430 billion | $1.908 billion | $468.223 million | $105.368 million | $11.321 million | $1.323 billion |
| 5 | $756.538 million[10] | $1.323 billion | $2.080 billion | $403.409 million | $90.888 million | $10.236 million | $1.575 billion |
| 6 | $345.472 million[11] | $1.575 billion | $1.921 billion | $1.209 billion | $273.758 million | $36.966 million | $400.885 million |

10. The Trustee has recovered approximately $247,012,857.10 since the Sixth Allocation and Sixth Interim Distribution as a result of preference settlements, litigation and pre-litigation settlements, interest income, and other miscellaneous recoveries.[12] Therefore, the Trustee seeks approval to allocate the full amount of these recoveries to the Customer Fund.

11. The more significant settlements that have been reached since the Sixth Allocation Motion were the Thybo and Vizcaya adversary proceedings, discussed below.

12. On November 17, 2015, this Court approved a $46.6 million settlement between the Trustee and Thybo Stable Funds Ltd. and Thybo Asset Management Limited (the "Thybo Funds"). *Picard v. Thybo Asset Management Limited, et al.*, Adv. Pro. No. 09-01365 (Bankr.

---

[6] Reserve from Previous Allocations represents amounts that were reserved in prior allocations.
[7] Allocation for Allowed Claims represents the amount allocated for claims that have been allowed.
[8] Allocation for Deemed Determined Claims represents amounts allocated and reserved for claims that are currently in litigation with the Trustee.
[9] Other Reserves represents all funds that are reserved for various issues.
[10] The total amount allocated in the Fifth Allocation Motion was $704,395,951.58. Between the filing of that motion and the Fifth Interim Distribution date, an additional $52,142,279.87 was recovered and included in the numerator.
[11] This represents the amount allocated to the Customer Fund in the Supplemental Sixth Allocation and Sixth Interim Distribution Motion filed on October 20, 2015. The original Sixth Allocation and Sixth Interim Motion filed on April 15, 2015 did not allocate any additional recoveries to the Customer Fund; the Trustee simply re-allocated $1,448,717,625.26 of funds that had previously been allocated to the Customer Fund for the Time-Based Damages reserve.

5

S.D.N.Y.) (SMB) (ECF No. 96). Under the settlement, the Thybo Funds received an allowed claim in the amount of $186,061,402.31 and were therefore entitled to a catch-up distribution in the amount of $106,174,078.61 (which includes distributions one through six totaling 57.064% of the allowed claim). The Thybo Funds paid the $46.6 million by assigning to the Trustee: (i) the funds to be advanced by SIPC in the amount of $500,000 under the Thybo Funds' allowed customer claim, and (ii) $46.1 million of the $106,174,078.61 catch-up distribution owed to the Thybo Funds for their allowed customer claim.

13.   On January 26, 2016, this Court approved a $24.95 million settlement between the Trustee and Vizcaya Partners Limited, Bank J. Safra Sarasin (Gibraltar) Ltd., Bank J. Safra (Gibraltar) Ltd., Asphalia Fund, Ltd., Zeus Partners Limited, Banque J. Safra Sarasin (Suisse) SA, Banque Jacob Safra (Suisse) SA, and Pictet et Cie. *Picard v. Vizcaya Partners Limited, et al.,* Adv. Pro. No. 09-01154 (ECF No. 129); *Picard v. Banque J. Safra (Suisse) SA,* Adv. Pro. No. 11-01725 (ECF No. 73); *Picard v. Pictet et Cie,* Adv. Pro. No. 11-01724 (ECF No. 90). Under the settlement, $24,950,000 was paid to the Trustee from funds Zeus Partners had deposited with the Clerk of this Court.

14.   As reflected in the table in Paragraph 9, the amount reserved through the Sixth Interim Distribution is $400,885,268.23. This previously reserved amount, plus the $247,012,857.10 that the Trustee seeks to allocate in this Motion, constitutes the total amount available for distribution. Therefore, the total amount available for the Seventh Interim Distribution will be $647,898,125.33. Of this amount, $232,130,120.42 must be held in reserve for the non-preference related settlement payments for accounts with net equity clauses, as well as certain other settlements, leaving a total of $415,768,004.91 available for distribution.

---

[12] This $247,012,857.10 includes partial May 2016 recoveries in the amount of $13,202,393.55.

6

15. The Trustee will maintain a general reserve of $200,000,000.00. Thus, the amount available for the Seventh Interim Distribution will be $215,768,004.91.

16. The table below summarizes this calculation.

| Category | Amount |
|---|---|
| | |
| **SIPC 17 Receipts (April 30, 2016)** | **$11,130,742,308.37** |
| Additional Recoveries May 1 to May 20, 2016 | $13,202,393.55 |
| **Total Recoveries As of May 20, 2016** | **$11,143,944,701.92** |
| | |
| First Through Sixth Interim Distribution Deductions | |
|    Allowed Accounts | $8,440,255,995.25 |
|    Reserved For Deemed Determined Accounts | $1,890,793,847.02 |
|    SIPC Subrogation | $164,996,734.32 |
| | |
| **Amount Available for Seventh Interim Distribution** | **$647,898,125.33** |
| | |
| Current Reserves | |
|    General Reserve | $200,000,000.00 |
|    Settlements containing the net equity clause, as well as certain others settlements | $232,130,120.42 |
| | |
| **Amount Available for Seventh Interim Distribution After Reserves** | **$215,768,004.91** |

17. Of the $215,768,004.91 numerator, $171,015,590.21 will be distributed as part of the Seventh Interim Distribution to allowed accounts, and SIPC subrogation for allowed accounts in the amount of $5,858,580.36[13] will be released to SIPC. For deemed determined accounts, $38,866,907.03 will be reserved.

### The Net Investment Method Denominator

18. The Trustee's Net Investment Method Denominator is the allowed amount of all accounts that have an allowed claim plus the net cash balance for all accounts into which more funds were deposited than withdrawn for which a claim has been filed, but not yet allowed. As

---

[13] An additional $14,261.00 of SIPC subrogation associated with the Seventh Interim Distribution for accounts that have not returned the necessary paperwork required to receive their SIPC advance will be held in reserve.

7

of May 26, 2016, the Trustee's Net Investment Method denominator is $18,393,464,489.04. This number is subject to change as additional accounts are determined.

### Interim Calculation of *Pro Rata* Share Distribution of Customer Fund

19. As set forth above, the total amount available for the Seventh Interim Distribution will be $647,898,125.33. Of that amount, $215,768,004.91 is available for distribution (the "Net Customer Fund"). The difference between those amounts—$432,130,120.42—represents the general reserve, reserves for deemed determined accounts, and reserves related to the net equity clause, as well as certain other settlements.

20. The Denominator is $18,393,464,489.04. To determine the percentage of each allowed customer net equity claim that can be satisfied from the Customer Fund, the Net Customer Fund is divided by the Denominator, resulting in the following percentage:

$$\frac{\$215{,}768{,}004.91 \text{ (Net Customer Fund)}}{\$18{,}393{,}464{,}489.04 \text{ (Denominator)}} = 1.173\%$$

21. A total of 972 accounts will receive a distribution of approximately 1.173% of their net equity claims, unless the account becomes fully satisfied. Of these 972 accounts (relating to 1,132 claims), 13 accounts (relating to 16 claims) will become fully satisfied, bringing the total of fully satisfied account holders to 1,289 (all accounts with a net equity of up to $1,196,453.95). 959 accounts will remain partially satisfied and will be entitled to participate in future distributions.

22. An additional 46 accounts[14] (relating to 68 claims) that are currently "deemed determined" could receive a distribution if and when the status of their claims moves from "deemed determined" to allowed. Twenty-two of the 46 accounts would be fully satisfied by the

---

[14] This does not include two net winner accounts (3 claims) that will not be eligible to participate in the Trustee's interim distributions.

SIPC advance. The remaining 24 accounts would receive both a SIPC advance and a distribution in accordance with the Trustee's Motion and his earlier distribution motions. Six of the remaining 24 accounts would be fully satisfied by the First through Seventh Interim Distributions.

23. Upon approval of the Motion, each customer's ratable share of the Net Customer Fund should be no less than 58.237% of the customer's net equity claim, which includes the proposed 1.173% customers will receive upon the approval of the Seventh Allocation and Seventh Interim Distribution, the 4.602% customers received subject to the First Allocation and First Interim Distribution, the 33.556% customers received subject to the Second Allocation and Second Interim Distribution, the 4.721% customers received subject to the Third Allocation and Third Interim Distribution, the 3.180% customers received subject to the Fourth Allocation and Fourth Interim Distribution, the 2.743% customers received subject to the Fifth Allocation and Fifth Interim Distribution, and the 8.262% customers received subject to the Sixth Allocation and Sixth Interim Distribution.[15]

By: */s/ Vineet Sehgal*
Vineet Sehgal

City of New York
State of New York

Subscribed and sworn to me (or affirmed) before me, Sharyn P. Doyle, Notary Public, on this 26th day of May, 2016 by Vineet Sehgal, proved to me on the basis of satisfactory evidence to be the person who appeared before me.

WITNESS my hand and official seal.

*/s/ Sharyn P. Doyle*
Sharyn P. Doyle, Notary Public
Qualified in New York
*Commission Expires: November 13, 2017*

---

[15] Each customer's ratable share may be less than 58.237% for those BLMIS accounts that are fully satisfied.