# EXHIBIT A

## Proposed Amended Complaint

**WINDELS MARX LANE & MITTENDORF, LLP**
156 West 56th Street
New York, New York 10019
Tel: (212) 237-1000
Fax: (212) 262-1215
Howard L. Simon
Kim M. Longo
John J. Tepedino

*Special Counsel to Irving H. Picard, Trustee for the Substantively*
*Consolidated SIPA Liquidation of Bernard L. Madoff Investment*
*Securities LLC and the Estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>   Plaintiff-Applicant,<br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>   Defendant. | Adv. Pro. No. 08-01789 (SMB)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>   Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>   Plaintiff,<br>v.<br><br>ROGER RECHLER REVOCABLE TRUST, DENNIS SPRUNG, in his capacity as Trustee of the ROGER RECHLER REVOCABLE TRUST, and EVELYN RECHLER,<br><br>   Defendants. | Adv. Pro. No. 10-04474 (SMB) |

## AMENDED COMPLAINT

Irving H. Picard (the "Trustee"), as trustee for the liquidation of the business of

Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor

Protection Act, 15 U.S.C. §§ 78aaa, *et seq*. ("SIPA"),[1] and the substantively consolidated estate

of Bernard L. Madoff individually ("Madoff" and together with BLMIS, "Debtors"), by and

through his undersigned counsel, for his amended complaint (the "Amended Complaint") against

Roger Rechler Revocable Trust ("Rechler Trust"), Dennis Sprung, in his capacity as Trustee of

Rechler Trust (the "Trustee Defendant"), and Evelyn Rechler (collectively, "Defendants") states

as follows:

## NATURE OF PROCEEDING

1.      This adversary proceeding arises from the massive Ponzi scheme perpetrated by

Madoff.  Over the course of the scheme, there were more than 8,000 client accounts at BLMIS.

In early December 2008, BLMIS generated client account statements for its approximately 4,900

open client accounts.  When added together, these statements purport to show that clients of

BLMIS had approximately $65 billion invested with BLMIS.  In reality, BLMIS had assets on

hand worth a small fraction of that amount.  On March 12, 2009, Madoff admitted to the

fraudulent scheme and pled guilty to 11 felony counts, and was sentenced on June 29, 2009 to

150 years in prison.

2.      Upon information and belief, Roger Rechler ("Rechler") and his family

maintained personal relationships with Madoff family members.  Rechler was one of Madoff's

earliest investors, holding a BLMIS account, No. 1R0019, in his name since the mid-1980s (the

"Rechler Account").  For more than two decades, Rechler, his family members and entities

---

[1] For convenience, future reference to SIPA will not include "15 U.S.C."

owned and/or controlled by them, held 31 separate accounts at BLMIS, through which they invested approximately $51.5 million and received more than $48 million in fictitious profits from Madoff's Ponzi scheme.  Rechler passed away in March 2008 and is not a defendant in this action.

3.    Defendants were beneficiaries of this Ponzi scheme.  From December 11, 2006 and onward, BLMIS transferred out a total of $9,353,113.00 in connection with the Rechler Account, of which $9,028,901.00 was transferred to Rechler Trust in one lump sum in August 2008 (the "Initial Transfer").  Defendant Rechler Trust was settled by Rechler, who before his death served as trustee.  On July 31, 2008, Rechler's estate (the "Rechler Estate") was probated in the Surrogate's Court of the State of New York, County of Nassau (File No. 3501732) and letters testamentary were issued to the Trustee Defendant as executor on August 5, 2008.  The Rechler Account was then liquidated and the assets remaining in the account were by and large transferred by BLMIS to Rechler Trust in the form of the Initial Transfer defined above.

4.    The Trustee's investigation has revealed that the entire amount of the Initial Transfer represents fictitious profits from the Ponzi scheme.  Accordingly, the Trustee seeks avoidance of the Initial Transfer as it constitutes nothing more than other people's money.

5.    Defendant Evelyn Rechler received subsequent transfers of the avoidable transfer referenced herein.  The Trustee seeks recovery of these subsequent transfers.

## JURISDICTION AND VENUE

6.    This is an adversary proceeding commenced in this Court, in which the main underlying SIPA proceeding, No. 08-01789 (SMB) (the "SIPA Proceeding"), is pending.  The SIPA Proceeding was originally brought in the United States District Court for the Southern District of New York as *Securities Exchange Commission v. Bernard L. Madoff Investment Securities LLC et al.*, No. 08 CV 10791 (the "District Court Proceeding") and has been referred

to this Court.  This Court has jurisdiction over this adversary proceeding under 28 U.S.C.

§ 1334(b) and (e)(1), and 15 U.S.C. §§ 78eee(b)(2)(A) and (b)(4).

7.    This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (H) and (O).  The

Trustee consents to the entry of final orders or judgment by this Court if it is determined that

consent of the parties is required for this Court to enter final orders or judgment consistent with

Article III of the U.S. Constitution.

8.    Venue in this district is proper under 28 U.S.C. § 1409.

9.    This adversary proceeding is brought under sections 78fff(b) and 78fff-2(c)(3) of

SIPA, sections 105(a), 548(a), 550(a) and 551 of title 11 of the United States Code (the

"Bankruptcy Code"), and other applicable law.

## DEFENDANTS

10.    Upon information and belief, Defendant Rechler Trust is a trust that was formed

under the laws of the State of New York.  Rechler Trust's address is reported as c/o Proskauer

Rose LLP, 1585 Broadway, New York, New York 10036.

11.    Upon information and belief, Trustee Defendant Dennis Sprung maintains his

residence in New York, New York.  Upon information and belief, Trustee Defendant Dennis

Sprung has served or currently serves as a trustee of Defendant Rechler Trust and is named in

this Amended Complaint solely in his capacity as trustee, and not personally.

12.    Upon information and belief, Defendant Evelyn Rechler maintains her residence

in Mill Neck, New York.  Evelyn Rechler was Rechler's wife and is a beneficiary of the Rechler

Estate and Rechler Trust.

## BACKGROUND, THE TRUSTEE AND STANDING

13.    On December 11, 2008 (the "Filing Date"), Madoff was arrested by federal agents

for criminal violations of federal securities laws, including securities fraud, investment adviser

fraud, and mail and wire fraud. Contemporaneously, the Securities and Exchange Commission

("SEC") commenced the District Court Proceeding.

14.     On December 15, 2008, under SIPA § 78eee(a)(4)(A), the SEC consented to

combining its action with an application by the Securities Investor Protection Corporation

("SIPC"). Thereafter, under SIPA § 78eee(a)(4)(B), SIPC filed an application in the District

Court alleging, among other things, that BLMIS could not meet its obligations to securities

customers as they came due and its customers needed the protections afforded by SIPA.

15.     Also on December 15, 2008, Judge Stanton granted SIPC's application and

entered an order pursuant to SIPA, which, in pertinent part:

a.      appointed the Trustee for the liquidation of the business of BLMIS

pursuant to SIPA § 78eee(b)(3);

b.      appointed Baker & Hostetler LLP as counsel to the Trustee pursuant to

SIPA § 78eee(b)(3); and

c.      removed the case to this Court pursuant to SIPA § 78eee(b)(4).

16.     By orders dated December 23, 2008 and February 4, 2009, respectively, this

Court approved the Trustee's bond and found that the Trustee was a disinterested person.

Accordingly, the Trustee is duly qualified to serve and act on behalf of the estate.

17.     On April 13, 2009, an involuntary bankruptcy petition was filed against Madoff,

and on June 9, 2009, this Court substantively consolidated the chapter 7 estate of Madoff into the

SIPA Proceeding.

18.     On July 16, 2009, this Court entered an order granting the Trustee's motion to

retain Windels Marx Lane & Mittendorf, LLP as special counsel on behalf of the consolidated

estate, nunc pro tunc as of June 9, 2009.

19.     At a plea hearing on March 12, 2009, in the case captioned *United States v. Madoff*, Case No. 09-CR-213(DC), Madoff pleaded guilty to an 11-count criminal information filed against him by the United States Attorney for the Southern District of New York.  At the plea hearing, Madoff admitted he "operated a Ponzi scheme through the investment advisory side of [BLMIS]."

20.     At a plea hearing on August 11, 2009, in the case captioned *United States v. DiPascali*, Case No. 09-CR-764 (RJS), Frank DiPascali, a former BLMIS employee, pleaded guilty to a ten-count criminal information charging him with participating in and conspiring to perpetuate the Ponzi scheme.  DiPascali admitted that no purchases or sales of securities took place in connection with BLMIS customer accounts and that the Ponzi scheme had been ongoing at BLMIS since at least the 1980s.

21.     At a plea hearing on November 21, 2011, in the case captioned *United States v. Kugel*, Case No. 10-CR-228 (LTS), David Kugel, a former BLMIS trader and manager, pleaded guilty to a six-count criminal information charging him with securities fraud, falsifying the records of BLMIS, conspiracy, and bank fraud.  Kugel admitted to helping create false, backdated trades in BLMIS customer accounts beginning in the early 1970s.

22.     On March 24, 2014, Daniel Bonventre, Annette Bongiorno, Jo Ann Crupi, George Perez, and Jerome O'Hara were convicted of fraud and other crimes in connection with their participation in the Ponzi scheme as employees of BLMIS's investment advisory business ("IA Business").

23.     As the Trustee appointed under SIPA, the Trustee is charged with assessing claims, recovering and distributing customer property to BLMIS's customers holding allowed customer claims, and liquidating any remaining BLMIS assets for the benefit of the estate and its

6

creditors.  The Trustee is using his authority under SIPA and the Bankruptcy Code to avoid and recover payouts of fictitious profits and/or other transfers made by the Debtors to customers and others to the detriment of defrauded, innocent customers whose money was consumed by the Ponzi scheme.  Absent this and other recovery actions, the Trustee will be unable to satisfy the claims described in subparagraphs (A) through (D) of SIPA § 78fff-2(c)(1).

24.    Pursuant to SIPA § 78fff-1(a), the Trustee has the general powers of a bankruptcy trustee in a case under the Bankruptcy Code in addition to the powers granted by SIPA pursuant to SIPA § 78fff(b).  Chapters 1, 3, 5 and subchapters I and II of chapter 7 of the Bankruptcy Code apply to this proceeding to the extent consistent with SIPA pursuant to SIPA § 78fff(b).

25.    The Trustee has standing to bring the avoidance and recovery claims under SIPA § 78fff-1(a) and applicable provisions of the Bankruptcy Code, including 11 U.S.C. §§ 323(b) and 704(a)(1), because the Trustee has the power and authority to avoid and recover transfers under Bankruptcy Code sections 548, 550(a), and 551, and SIPA §§ 78fff-1(a) and 78fff-2(c)(3).

## THE PONZI SCHEME

26.    Madoff founded BLMIS in or about 1960 as a sole proprietorship.  On January 1, 2001, Madoff continued BLMIS as a sole member limited liability company under the laws of the State of New York, with BLMIS assuming the liabilities of the former sole proprietorship. BLMIS's ownership and control did not change since its formation in 1960.  During that time, BLMIS had been continually registered with the SEC, and remained a SIPC member since its formation in late 1970.  For most of its existence, BLMIS operated from its principal place of business at 885 Third Avenue, New York, New York.  Madoff, as founder, sole owner, chairman, and chief executive officer, operated BLMIS with several family members and other employees, including DiPascali and David Kugel, who pleaded guilty to helping Madoff carry out the fraudulent scheme.

27.    Beginning in the 1990s, Madoff outwardly ascribed the consistent investment success of BLMIS's IA Business to the "split-strike conversion" ("SSC") investment strategy. Madoff claimed his strategy would produce steady returns without the volatility in the stock market or other high return investment strategies. Madoff generally indicated that investors' funds would be invested in a basket of common stocks within the Standard & Poor's 100 Index ("S&P 100 Index"), which is a collection of the 100 largest publicly traded companies, as determined by Standard & Poor's Index Committee.  The basket of stocks was designed to correlate to the movement of the S&P 100 Index.  The second part of the SSC strategy involved purporting to sell call options and buy put options on the S&P 100 Index; this is commonly referred to as a "collar."  Madoff purported to purchase and sell option contracts to control the downside risk of price changes in the basket of stocks correlated to the performance of the S&P 100 Index.  All options relating to the companies within the S&P 100 Index, including options based upon the S&P 100 Index itself, clear through the Options Clearing Corporation ("OCC"). The OCC has no records showing that BLMIS's IA Business cleared any trades in any exchange-listed options.

28.    BLMIS commingled all of the funds received from IA Business investors in a single BLMIS account maintained at JPMorgan Chase Bank.

29.    Because Madoff claimed that he would carefully time purchases and sales to maximize value, customer funds would intermittently be out of the market.  During those times, Madoff claimed that the funds were invested in U.S. Treasury securities ("Treasury Bills") or mutual funds invested in Treasury Bills.  There is no record of BLMIS clearing a single purchase or sale of securities in connection with the SSC strategy at the Depository Trust & Clearing Corporation, the clearing house for such transactions, or any other trading platform on which

BLMIS could have traded securities. There are no other BLMIS records that demonstrate that BLMIS traded securities using the SSC strategy.

30. At their plea hearings, Madoff and DiPascali admitted that BLMIS purchased none of the securities listed on the IA Business customers' fraudulent statements.

31. Madoff operated the IA Business as a Ponzi scheme. The money received from IA Business customers was used primarily to make distributions to, or payments for, other customers. The falsified trades reflected in monthly account statements made it appear that the IA Business accounts included substantial gains on customers' principal investments. The Ponzi scheme collapsed in December 2008, when the requests for redemptions overwhelmed the flow of new investments with BLMIS's IA Business.

32. Since at least 1983, BLMIS financial reports filed with the SEC fraudulently omitted the existence of the billions of dollars of customer funds held by BLMIS.

33. BLMIS did not register as an investment adviser with the SEC until August 2006. At that time, BLMIS filed with the SEC a Form ADV (Uniform Application for Investment Adviser Registration) representing, among other things, that BLMIS had 23 customer accounts and assets under management of $11.7 billion. Thereafter, BLMIS filed a Form ADV annually with the SEC, the latest of which was filed in January 2008. It represented that BLMIS had 23 customer accounts with assets under management of $17.1 billion. In fact, at that time BLMIS had over 4,900 active customer accounts with a purported value of approximately $68 billion under management.

34. Contrary to standard practice in the investment advisory industry, BLMIS did not charge the IA Business customers a fee for investment advisory services. Madoff knew others that solicited investors for BLMIS, or, directly or indirectly, funded customer accounts, charged

9

hundreds of millions of dollars for investment advisory services attributed to BLMIS.  Instead of investment advisory fees, BLMIS purported to accept commissions for the purported trades, as reflected in the fraudulent IA Business customer statements.

35.    BLMIS's auditor was Friehling & Horowitz, CPA, P.C. ("Friehling & Horowitz"), a three-person accounting firm in Rockland County, New York.  Of the three employees at the firm, one employee was an administrative assistant and one was a semi-retired accountant living in Florida.  On or about November 3, 2009, David Friehling, the sole proprietor of Friehling & Horowitz, pleaded guilty to filing false audit reports for BLMIS and filing false tax returns for Madoff and others.

36.    At all relevant times, BLMIS was insolvent because (i) its assets were worth less than the value of its liabilities; (ii) it could not meet its obligations as they came due; and (iii) at the time of the transfers alleged herein, BLMIS was left with insufficient capital.

## THE TRANSFERS

37.    According to BLMIS's records, the Rechler Account was maintained with BLMIS, as set forth in the attached Exhibit A.  Upon information and belief, a Customer Agreement, an Option Agreement, and/or a Trading Authorization Limited to Purchases and Sales of Securities and Options (collectively, the "Rechler Account Agreements") for the Rechler Account were executed and delivered to BLMIS at BLMIS's headquarters at 885 Third Avenue, New York, New York.

38.    The Rechler Account Agreements were to be performed in New York, New York through securities trading activities that would take place in New York, New York.  The Rechler Account was held in New York, New York, and Rechler sent funds to BLMIS and/or to BLMIS's account at JPMorgan Chase & Co., Account #xxxxxxxxxxx1703 (the "BLMIS Bank

Account") in New York, New York for application to the Rechler Account and the purported

conducting of trading activities.  Between the date the Recher Account was opened and the

Filing Date, Rechler made deposits to BLMIS through checks and/or wire transfers into the

BLMIS Bank Account and/or received inter-account transfers from other BLMIS accounts.

39.      During the two years prior to the Filing Date, BLMIS made transfers to Rechler

Trust, Rechler and the Rechler Estate totaling at least $9,353,113.00 in fictitious profits from the

Ponzi scheme.  Of this amount, $9,028,901.00 was transferred in one lump sum to Defendant

Rechler Trust on or about August 29, 2008 (as defined above, the "Initial Transfer"), following the

liquidation of the Rechler Account.  The remaining amounts were transferred in payments by

BLMIS to Rechler ($315,000.00) and the Rechler Estate ($9,212.00).

40.      The Initial Transfer constitutes non-existent profits supposedly earned in the

Rechler Account, but, in reality, it was other people's money.  The Initial Transfer is set forth in

Column 9 of Exhibit B attached hereto.  The Initial Transfer is avoidable and recoverable under

sections 548(a), 550(a)(1) and 551 of the Bankruptcy Code and applicable provisions of SIPA,

particularly SIPA section 78fff-2(c)(3).

41.      At least $3,300,000.00 of the Initial Transfer was subsequently transferred from

Rechler Trust to Evelyn Rechler (the "Subsequent Transfers").  A chart setting forth the dates on

which the Subsequent Transfers occurred and the amounts received by Evelyn Rechler is

attached hereto as Exhibit C.

42.      The Subsequent Transfers being sought by the Trustee, or the value thereof, are

recoverable from Evelyn Rechler pursuant to § 550(a) of the Bankruptcy Code.

43.     The Trustee's discovery and investigation is ongoing, and the Trustee reserves the right to:  (i) supplement the information on the Initial Transfer, Subsequent Transfers, and any additional transfers; and (ii) seek avoidance and recovery of such transfers.

44.     To the extent that any of the avoidance and/or recovery counts may be inconsistent with each other, they are to be treated as being pled in the alternative.

**COUNT ONE**
**FRAUDULENT TRANSFER – 11 U.S.C. §§ 105(a), 548(a)(1)(A), 550(a) AND 551**

45.     To the extent applicable, the Trustee incorporates by reference the allegations contained in the previous paragraphs of this Amended Complaint as if fully rewritten herein.

46.     The Initial Transfer was made on or within two years before the Filing Date.

47.     The Initial Transfer constituted a transfer of an interest of BLMIS in property within the meaning of section 101(54) of the Bankruptcy Code and pursuant to section 78fff-2(c)(3) of SIPA.

48.     The Initial Transfer was made by BLMIS with the actual intent to hinder, delay or defraud some or all of BLMIS's then existing and/or future creditors.

49.     The Initial Transfer constitutes a fraudulent transfer avoidable by the Trustee pursuant to section 548(a)(1)(A) of the Bankruptcy Code and recoverable pursuant to section 550(a) of the Bankruptcy Code and section 78fff-2(c)(3) of SIPA.

50.     As a result of the foregoing, pursuant to sections 105(a), 548(a)(1)(A), 550(a), and 551 of the Bankruptcy Code and section 78fff-2(c)(3) of SIPA, the Trustee is entitled to a judgment:  (a) avoiding and preserving the Initial Transfer; (b) directing that the Initial Transfer be set aside; (c) recovering the Initial Transfer, or the value thereof, from Rechler Trust for the benefit of the BLMIS estate; (d) directing the Trustee Defendant to surrender and transfer or to otherwise facilitate the surrender and transfer of such avoided Initial Transfer from Rechler Trust

to the Trustee for the benefit of the estate of BLMIS; and (e) awarding any other relief the Court

deems just and appropriate.

**COUNT TWO**
**RECOVERY OF SUBSEQUENT TRANSFERS – 11 U.S.C. §§ 105(a), 548, 550(a)**
**AND 551**

51.    To the extent applicable, the Trustee incorporates by reference the allegations

contained in the previous paragraphs of this Amended Complaint as if fully rewritten herein.

52.    Each of the Subsequent Transfers is recoverable from Evelyn Rechler under

section 550(a) of the Bankruptcy Code and section 78fff-2(c)(3) of SIPA.

53.    Evelyn Rechler is an immediate or mediate transferee of the Subsequent Transfers

from Rechler Trust.

54.    As a result of the foregoing, pursuant to sections 105(a) and 550(a) of the

Bankruptcy Code and section 78fff-2(c)(3) of SIPA, the Trustee is entitled to a judgment:

(a) recovering the Subsequent Transfers, or the value thereof, from Evelyn Rechler for the

benefit of the BLMIS estate; and (b) awarding any other relief the Court deems just and

appropriate.

**WHEREFORE**, the Trustee respectfully requests that this Court enter judgment

in favor of the Trustee as follows:

i.    On the First Claim for Relief, pursuant to sections 105(a), 548(a)(1)(A), 550(a)

and 551 of the Bankruptcy Code and section 78fff-2(c)(3) of SIPA, judgment:  (a) avoiding and

preserving the Initial Transfer; (b) directing that the Initial Transfer be set aside; (c) recovering

the Initial Transfer, or the value thereof, from Rechler Trust for the benefit of the BLMIS estate;

(d) directing the Trustee Defendant to surrender and transfer or to otherwise facilitate the

surrender and transfer of such avoided Initial Transfer from Rechler Trust to the Trustee for the

benefit of the estate of BLMIS; and (e) awarding any other relief the Court deems just and appropriate;

      ii.      On the Second Claim for Relief, pursuant to sections 105(a) and 550(a) of the Bankruptcy Code and section 78fff-2(c)(3) of SIPA, judgment: (a) recovering the Subsequent Transfers, or the value thereof, from Evelyn Rechler for the benefit of the BLMIS estate; and (b) awarding any other relief the Court deems just and appropriate.

      iii.     On all Claims for Relief, impressing all Defendants' property, or the proceeds, product and offspring of such property, with an equitable lien and/or a constructive trust in favor of the Trustee for the benefit of the estate, to the extent that the Initial Transfer or Subsequent Transfers were used, in whole or in part, to purchase, improve and/or maintain such property;

      iv.     On all Claims for Relief, establishing a constructive trust over the Initial Transfer and Subsequent Transfers and their proceeds, product and offspring in favor of the Trustee for the benefit of the estate;

      v.      On all Claims for Relief, pursuant to federal common law and/or N.Y. CPLR 5001 and 5004, as applicable, awarding the Trustee prejudgment interest from the date on which the Initial Transfer was received;

      vi.     On all Claims for Relief, awarding the Trustee all applicable interest, costs, and disbursements in this proceeding; and

      vii.    Granting the Trustee such other, further, and different relief as the Court deems just, proper and equitable.

Dated: New York, New York
      May 31, 2016

By: /s/ Howard L. Simon

Howard L. Simon (hsimon@windelsmarx.com)
Kim M. Longo (klongo@windelsmarx.com)
John J. Tepedino (jtepedino@windelsmarx.com)
Windels Marx Lane & Mittendorf LLP
156 West 56th Street
New York, New York 10019
Tel:  (212) 237-1000
Fax: (212) 262-1215

*Special Counsel for Irving H. Picard, Trustee for the
Substantively Consolidated SIPA Liquidation of
Bernard L. Madoff Investment Securities LLC and the
Estate of Bernard L. Madoff*

Exhibit A

| BLMIS Account Name | BLMIS Account Number |
|---|---|
| ROGER RECHLER | 1R0019 |

MADC1059_00000001

**BLMIS ACCOUNT NO. 1R0019 (FORMERLY 101829) - ROGER RECHLER**

| Column 1 | Column 2 | Column 3 | Column 4 | Column 5 | Column 6 | Column 7 | Column 8 | Column 9 | Column 10 |
|---|---|---|---|---|---|---|---|---|---|
| Date | Transaction Description | Amount as Reported in Customer Statement | Deposits | Withdrawals | Transfers In | Transfers Out | Balance of Principal | 2-Year Fraudulent Transfers | 2-Year Principal Transfers |
| 5/20/1985 | CHECK | 333,690 | 333,690 | - | | | 333,690 | - | - |
| 8/1/1991 | TRAN FROM NORTH SHORE 10140530 (1N0007) | 3,000,000 [1] | - | - | 1,924,975 | - | 2,258,665 | - | - |
| 8/29/1991 | CHECK | (350,000) | - | (350,000) | - | - | 1,908,665 | - | - |
| 10/1/1991 | CHECK | (700,000) | - | (700,000) | - | - | 1,208,665 | - | - |
| 3/2/1992 | CHECK | (25,000) | - | (25,000) | - | - | 1,183,665 | - | - |
| 4/1/1992 | CHECK | (25,000) | - | (25,000) | - | - | 1,158,665 | - | - |
| 5/1/1992 | CHECK | (25,000) | - | (25,000) | - | - | 1,133,665 | - | - |
| 6/1/1992 | CHECK | (25,000) | - | (25,000) | - | - | 1,108,665 | - | - |
| 7/1/1992 | CHECK | (25,000) | - | (25,000) | - | - | 1,083,665 | - | - |
| 7/15/1992 | CHECK | 1,321,970 | 1,321,970 | - | - | - | 2,405,635 | - | - |
| 8/3/1992 | CHECK | (25,000) | - | (25,000) | - | - | 2,380,635 | - | - |
| 9/1/1992 | CHECK | (25,000) | - | (25,000) | - | - | 2,355,635 | - | - |
| 9/9/1992 | CHECK | (250,000) | - | (250,000) | - | - | 2,105,635 | - | - |
| 10/1/1992 | CHECK | (25,000) | - | (25,000) | - | - | 2,080,635 | - | - |
| 11/2/1992 | CHECK | (25,000) | - | (25,000) | - | - | 2,055,635 | - | - |
| 12/1/1992 | CHECK | (25,000) | - | (25,000) | - | - | 2,030,635 | - | - |
| 1/4/1993 | CHECK | (25,000) | - | (25,000) | - | - | 2,005,635 | - | - |
| 1/26/1993 | CHECK | (200,000) | - | (200,000) | - | - | 1,805,635 | - | - |
| 2/1/1993 | CHECK | (25,000) | - | (25,000) | - | - | 1,780,635 | - | - |
| 3/1/1993 | CHECK | (25,000) | - | (25,000) | - | - | 1,755,635 | - | - |
| 4/1/1993 | CHECK | (25,000) | - | (25,000) | - | - | 1,730,635 | - | - |
| 5/3/1993 | CHECK | (25,000) | - | (25,000) | - | - | 1,705,635 | - | - |
| 6/1/1993 | CHECK | (25,000) | - | (25,000) | - | - | 1,680,635 | - | - |
| 7/1/1993 | CHECK | (25,000) | - | (25,000) | - | - | 1,655,635 | - | - |
| 8/2/1993 | CHECK | (25,000) | - | (25,000) | - | - | 1,630,635 | - | - |
| 9/1/1993 | CHECK | (25,000) | - | (25,000) | - | - | 1,605,635 | - | - |
| 10/1/1993 | CHECK | (25,000) | - | (25,000) | - | - | 1,580,635 | - | - |
| 10/22/1993 | CHECK | (200,000) | - | (200,000) | - | - | 1,380,635 | - | - |
| 11/1/1993 | CHECK | (25,000) | - | (25,000) | - | - | 1,355,635 | - | - |
| 12/1/1993 | CHECK | (25,000) | - | (25,000) | - | - | 1,330,635 | - | - |
| 12/23/1993 | CHECK | (250,000) | - | (250,000) | - | - | 1,080,635 | - | - |
| 1/3/1994 | CHECK | (25,000) | - | (25,000) | - | - | 1,055,635 | - | - |
| 2/1/1994 | CHECK | (25,000) | - | (25,000) | - | - | 1,030,635 | - | - |
| 3/1/1994 | CHECK | (25,000) | - | (25,000) | - | - | 1,005,635 | - | - |
| 3/3/1994 | CHECK | (250,000) | - | (250,000) | - | - | 755,635 | - | - |
| 4/4/1994 | CHECK | (25,000) | - | (25,000) | - | - | 730,635 | - | - |
| 5/2/1994 | CHECK | (25,000) | - | (25,000) | - | - | 705,635 | - | - |
| 5/13/1994 | CHECK | (200,000) | - | (200,000) | - | - | 505,635 | - | - |
| 6/1/1994 | CHECK | (25,000) | - | (25,000) | - | - | 480,635 | - | - |
| 7/1/1994 | CHECK | (25,000) | - | (25,000) | - | - | 455,635 | - | - |
| 7/5/1994 | CHECK | (300,000) | - | (300,000) | - | - | 155,635 | - | - |
| 8/1/1994 | CHECK | (25,000) | - | (25,000) | - | - | 130,635 | - | - |
| 8/22/1994 | CHECK | (200,000) | - | (200,000) | - | - | (69,365) | - | - |
| 9/1/1994 | CHECK | (25,000) | - | (25,000) | - | - | (94,365) | - | - |
| 10/3/1994 | CHECK | (25,000) | - | (25,000) | - | - | (119,365) | - | - |
| 10/26/1994 | CHECK | (250,000) | - | (250,000) | - | - | (369,365) | - | - |
| 11/1/1994 | CHECK | (25,000) | - | (25,000) | - | - | (394,365) | - | - |
| 12/1/1994 | CHECK | (25,000) | - | (25,000) | - | - | (419,365) | - | - |

MADC1059_00000002

Exhibit B

BLMIS ACCOUNT NO. 1R0019 (FORMERLY 101829) - ROGER RECHLER

| | | Column 1 | Column 2 | Column 3 | Column 4 | Column 5 | Column 6 | Column 7 | Column 8 | Column 9 | Column 10 |
|---|---|---|---|---|---|---|---|---|---|---|---|

| Date | Transaction Description | Amount as Reported in Customer Statement | Deposits | Withdrawals | Transfers In | Transfers Out | Balance of Principal | 2-Year Fraudulent Transfers | 2-Year Principal Transfers |
|---|---|---|---|---|---|---|---|---|---|
| 1/3/1995 | CHECK | (25,000) | - | (25,000) | - | - | (444,365) | - | - |
| 2/1/1995 | CHECK | (25,000) | - | (25,000) | - | - | (469,365) | - | - |
| 2/14/1995 | CHECK | (250,000) | - | (250,000) | - | - | (719,365) | - | - |
| 3/1/1995 | CHECK | (25,000) | - | (25,000) | - | - | (744,365) | - | - |
| 4/3/1995 | CHECK | (25,000) | - | (25,000) | - | - | (769,365) | - | - |
| 5/1/1995 | CHECK | (25,000) | - | (25,000) | - | - | (794,365) | - | - |
| 6/1/1995 | CHECK | (25,000) | - | (25,000) | - | - | (819,365) | - | - |
| 7/3/1995 | CHECK | (25,000) | - | (25,000) | - | - | (844,365) | - | - |
| 7/28/1995 | CHECK | (200,000) | - | (200,000) | - | - | (1,044,365) | - | - |
| 8/1/1995 | CHECK | (25,000) | - | (25,000) | - | - | (1,069,365) | - | - |
| 9/1/1995 | CHECK | (25,000) | - | (25,000) | - | - | (1,094,365) | - | - |
| 10/2/1995 | CHECK | (25,000) | - | (25,000) | - | - | (1,119,365) | - | - |
| 11/1/1995 | CHECK | (25,000) | - | (25,000) | - | - | (1,144,365) | - | - |
| 12/1/1995 | CHECK | (25,000) | - | (25,000) | - | - | (1,169,365) | - | - |
| 12/14/1995 | CHECK | (200,000) | - | (200,000) | - | - | (1,369,365) | - | - |
| 1/2/1996 | CHECK | (25,000) | - | (25,000) | - | - | (1,394,365) | - | - |
| 2/1/1996 | CHECK | (25,000) | - | (25,000) | - | - | (1,419,365) | - | - |
| 3/1/1996 | CHECK | (25,000) | - | (25,000) | - | - | (1,444,365) | - | - |
| 4/1/1996 | CHECK | (25,000) | - | (25,000) | - | - | (1,469,365) | - | - |
| 5/1/1996 | CHECK | (25,000) | - | (25,000) | - | - | (1,494,365) | - | - |
| 6/3/1996 | CHECK | (25,000) | - | (25,000) | - | - | (1,519,365) | - | - |
| 7/1/1996 | CHECK | (25,000) | - | (25,000) | - | - | (1,544,365) | - | - |
| 7/8/1996 | CHECK WIRE | (300,000) | - | (300,000) | - | - | (1,844,365) | - | - |
| 8/1/1996 | CHECK | (25,000) | - | (25,000) | - | - | (1,869,365) | - | - |
| 9/3/1996 | CHECK | (25,000) | - | (25,000) | - | - | (1,894,365) | - | - |
| 10/1/1996 | CHECK | (25,000) | - | (25,000) | - | - | (1,919,365) | - | - |
| 11/1/1996 | CHECK | (25,000) | - | (25,000) | - | - | (1,944,365) | - | - |
| 12/2/1996 | CHECK | (25,000) | - | (25,000) | - | - | (1,969,365) | - | - |
| 1/2/1997 | CHECK | (25,000) | - | (25,000) | - | - | (1,994,365) | - | - |
| 2/3/1997 | CHECK | (25,000) | - | (25,000) | - | - | (2,019,365) | - | - |
| 3/3/1997 | CHECK | (25,000) | - | (25,000) | - | - | (2,044,365) | - | - |
| 4/1/1997 | CHECK | (25,000) | - | (25,000) | - | - | (2,069,365) | - | - |
| 5/1/1997 | CHECK | (25,000) | - | (25,000) | - | - | (2,094,365) | - | - |
| 6/2/1997 | CHECK | (25,000) | - | (25,000) | - | - | (2,119,365) | - | - |
| 6/13/1997 | CHECK | (250,000) | - | (250,000) | - | - | (2,369,365) | - | - |
| 7/1/1997 | CHECK | (25,000) | - | (25,000) | - | - | (2,394,365) | - | - |
| 8/1/1997 | CHECK | (25,000) | - | (25,000) | - | - | (2,419,365) | - | - |
| 9/2/1997 | CHECK | (25,000) | - | (25,000) | - | - | (2,444,365) | - | - |
| 10/1/1997 | CHECK | (25,000) | - | (25,000) | - | - | (2,469,365) | - | - |
| 11/3/1997 | CHECK | (25,000) | - | (25,000) | - | - | (2,494,365) | - | - |
| 12/1/1997 | CHECK | (25,000) | - | (25,000) | - | - | (2,519,365) | - | - |
| 1/2/1998 | CHECK | (25,000) | - | (25,000) | - | - | (2,544,365) | - | - |
| 1/14/1998 | CHECK | (250,000) | - | (250,000) | - | - | (2,794,365) | - | - |
| 2/2/1998 | CHECK | (25,000) | - | (25,000) | - | - | (2,819,365) | - | - |
| 3/2/1998 | CHECK | (25,000) | - | (25,000) | - | - | (2,844,365) | - | - |
| 4/1/1998 | CHECK | (25,000) | - | (25,000) | - | - | (2,869,365) | - | - |
| 4/13/1998 | CHECK WIRE | (1,000,000) | - | (1,000,000) | - | - | (3,869,365) | - | - |
| 5/1/1998 | CHECK | (25,000) | - | (25,000) | - | - | (3,894,365) | - | - |
| 6/1/1998 | CHECK | (25,000) | - | (25,000) | - | - | (3,919,365) | - | - |

MADC1059_00000003

**BLMIS ACCOUNT NO. 1R0019 (FORMERLY 101829) - ROGER RECHLER**

| Column 1 | Column 2 | Column 3 | Column 4 | Column 5 | Column 6 | Column 7 | Column 8 | Column 9 | Column 10 |
|---|---|---|---|---|---|---|---|---|---|
| Date | Transaction Description | Amount as Reported in Customer Statement | Deposits | Withdrawals | Transfers In | Transfers Out | Balance of Principal | 2-Year Fraudulent Transfers | 2-Year Principal Transfers |
| 7/1/1998 | CHECK | (25,000) | - | (25,000) | - | - | (3,944,365) | - | - |
| 8/3/1998 | CHECK | (25,000) | - | (25,000) | - | - | (3,969,365) | - | - |
| 9/1/1998 | CHECK | (25,000) | - | (25,000) | - | - | (3,994,365) | - | - |
| 10/1/1998 | CHECK | (25,000) | - | (25,000) | - | - | (4,019,365) | - | - |
| 11/2/1998 | CHECK | (25,000) | - | (25,000) | - | - | (4,044,365) | - | - |
| 12/1/1998 | CHECK | (25,000) | - | (25,000) | - | - | (4,069,365) | - | - |
| 1/4/1999 | CHECK | (25,000) | - | (25,000) | - | - | (4,094,365) | - | - |
| 2/1/1999 | CHECK | (25,000) | - | (25,000) | - | - | (4,119,365) | - | - |
| 3/1/1999 | CHECK | (25,000) | - | (25,000) | - | - | (4,144,365) | - | - |
| 4/1/1999 | CHECK | (25,000) | - | (25,000) | - | - | (4,169,365) | - | - |
| 4/21/1999 | CHECK | (250,000) | - | (250,000) | - | - | (4,419,365) | - | - |
| 5/3/1999 | CHECK | (25,000) | - | (25,000) | - | - | (4,444,365) | - | - |
| 6/1/1999 | CHECK | (25,000) | - | (25,000) | - | - | (4,469,365) | - | - |
| 7/1/1999 | CHECK | (25,000) | - | (25,000) | - | - | (4,494,365) | - | - |
| 7/7/1999 | CHECK | (200,000) | - | (200,000) | - | - | (4,694,365) | - | - |
| 8/2/1999 | CHECK | (25,000) | - | (25,000) | - | - | (4,719,365) | - | - |
| 9/1/1999 | CHECK | (25,000) | - | (25,000) | - | - | (4,744,365) | - | - |
| 10/1/1999 | CHECK | (25,000) | - | (25,000) | - | - | (4,769,365) | - | - |
| 11/1/1999 | CHECK | (25,000) | - | (25,000) | - | - | (4,794,365) | - | - |
| 12/1/1999 | CHECK | (25,000) | - | (25,000) | - | - | (4,819,365) | - | - |
| 1/3/2000 | CHECK | (25,000) | - | (25,000) | - | - | (4,844,365) | - | - |
| 2/1/2000 | CHECK | (25,000) | - | (25,000) | - | - | (4,869,365) | - | - |
| 3/1/2000 | CHECK | (25,000) | - | (25,000) | - | - | (4,894,365) | - | - |
| 4/3/2000 | CHECK | (25,000) | - | (25,000) | - | - | (4,919,365) | - | - |
| 5/1/2000 | CHECK | (25,000) | - | (25,000) | - | - | (4,944,365) | - | - |
| 6/1/2000 | CHECK | (25,000) | - | (25,000) | - | - | (4,969,365) | - | - |
| 7/3/2000 | CHECK | (25,000) | - | (25,000) | - | - | (4,994,365) | - | - |
| 7/11/2000 | CHECK | (250,000) | - | (250,000) | - | - | (5,244,365) | - | - |
| 8/1/2000 | CHECK | (25,000) | - | (25,000) | - | - | (5,269,365) | - | - |
| 9/1/2000 | CHECK | (25,000) | - | (25,000) | - | - | (5,294,365) | - | - |
| 9/8/2000 | CHECK | (350,000) | - | (350,000) | - | - | (5,644,365) | - | - |
| 10/4/2000 | CHECK | (350,000) | - | (350,000) | - | - | (5,994,365) | - | - |
| 9/27/2001 | CHECK | (200,000) | - | (200,000) | - | - | (6,194,365) | - | - |
| 12/13/2001 | CHECK | (200,000) | - | (200,000) | - | - | (6,394,365) | - | - |
| 2/20/2003 | CHECK WIRE | 3,000,000 | 3,000,000 | - | - | - | (3,394,365) | - | - |
| 1/3/2007 | CHECK | (315,000) | - | (315,000) | - | - | (3,709,365) | (315,000) | - |
| 8/29/2008 | CHECK WIRE | (9,040,977) | - | (9,040,977) | - | - | (12,750,342) | - | - |
| 8/29/2008 | CANCEL WIRE AMOUNT | 9,040,977 | - | 9,040,977 | - | - | (3,709,365) | - | - |
| 8/29/2008 | CHECK WIRE | (9,028,901) | - | (9,028,901) | - | - | (12,738,266) | (9,028,901) | - |
| 9/16/2008 | CHECK | (9,212) | - | (9,212) | - | - | (12,747,478) | (9,212) | - |
| | Total: | $ 4,655,660 | $ (19,328,113) | $ 1,924,975 | $    - | $    - | $ (12,747,478) | $ (9,353,113) | $    - |

[1] Although BLMIS Customer Statements reflect that a larger transfer was made into the account on this date, a portion of the "transferred" funds consisted of fictitious profits which were never achieved and thus could not have been transferred. Accordingly, only the principal remaining in the originating account was transferred into this account on this date.

MADC1059_00000004

## SUBSEQUENT TRANSFERS TO EVELYN RECHLER FROM RECHLER TRUST

| Column 1 | Column 2 |
|----------|----------|
| **Date** | **Amount** |
| 10/16/2008 | (150,000) |
| 12/1/2008 | (150,000) |
| 1/2/2009 | (150,000) |
| 2/2/2009 | (150,000) |
| 3/2/2009 | (150,000) |
| 4/1/2009 | (150,000) |
| 5/1/2009 | (150,000) |
| 6/1/2009 | (150,000) |
| 7/1/2009 | (150,000) |
| 8/3/2009 | (150,000) |
| 9/1/2009 | (150,000) |
| 10/1/2009 | (150,000) |
| 11/2/2009 | (150,000) |
| 12/1/2009 | (150,000) |
| 1/4/2010 | (150,000) |
| 2/1/2010 | (150,000) |
| 3/1/2010 | (150,000) |
| 4/1/2010 | (150,000) |
| 5/3/2010 | (150,000) |
| 6/1/2010 | (150,000) |
| 7/1/2010 | (150,000) |
| 8/2/2010 | (150,000) |
| | $    (3,300,000) |

MADC1059_00000005