**Baker & Hostetler LLP**

45 Rockefeller Plaza
New York, NY 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee for the*
*Substantively Consolidated SIPA Liquidation of*
*Bernard L. Madoff Investment Securities LLC and*
*the estate of Bernard L. Madoff*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | No. 08-01789 (SMB) |
| Plaintiff-Applicant, | SIPA LIQUIDATION |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | Adv. Pro. No. 09-01161 (SMB) |
| Plaintiff, | |
| v. | |
| FEDERICO CERETTI, *et al.* | |
| Defendants. | |

## REPLY MEMORANDUM OF LAW IN SUPPORT OF THE TRUSTEE'S MOTION TO COMPEL DEFENDANTS TO PRODUCE DOCUMENTS AND PARTICIPATE IN DISCOVERY

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................2

ARGUMENT .............................................................................................................4

I.     THE FUNDS' OBJECTIONS TO THE PRODUCTION OF THE
       BERMUDA PRODUCTIONS ARE UNSUSTAINABLE. ...................................4

       A.     The balance of *Aérospatiale* factors weighs heavily in favor of
              ordering the Funds to produce the Bermuda Productions to the
              Trustee..................................................................................................5

              1.     The Bermuda Productions are a critical source of evidence
                     relevant to the Trustee's claims .......................................................6

              2.     Vital interests of the United States in ensuring a full and
                     fair adjudication of the Trustee's claims and enforcing
                     SIPA's mandate that customer property be recovered and
                     distributed far outweigh the policy underpinning
                     Bermuda's implied undertaking.........................................................9

              3.     The Trustee has specifically targeted the Bermuda
                     Productions, which can be easily produced. ...................................11

              4.     The documents originated as a result of the Funds' and the
                     Non-Fund Defendants' activities in New York ..............................12

              5.     The Trustee can obtain the Bermuda Productions only from
                     the Funds or the Production Defendants, which have
                     refused to participate in discovery. .................................................13

       B.     The Funds "control" the documents within the Bermuda
              Productions and are obligated to obtain and produce them to the
              Trustee................................................................................................15

       C.     The Funds have no basis to withhold documents created after the
              date the Funds entered liquidation that are responsive, relevant,
              and not privileged. ...........................................................................20

II.    DISCOVERY HAS NEVER BEEN STAYED IN THIS CASE, AND NO
       NON-FUND DEFENDANT HAS MOVED FOR A STAY OF
       DISCOVERY.......................................................................................................22

       A.     Paragraph 14 of the ET Order does not stay discovery in this
              proceeding..........................................................................................22

       B.     Paragraphs 12, 13, and 15 of the ET Order do not stay discovery in
              this proceeding. .................................................................................22

**TABLE OF CONTENTS**
**(continued)**

**Page**

C.    The ET Decision does not stay discovery in this proceeding. ...................23

D.    The Rules entitle the Trustee to pursue discovery from the Non-Fund Defendants as parties. ......................................................................24

E.    The Non-Fund Defendants have not presented adequate grounds for the Court to stay, *sua sponte*, party discovery under the Rules. ..........25

    1.    The Non-Fund Defendants have not made the requisite "strong showing" that the Trustee's claims have no merit. ...........26

    2.    The Non-Fund Defendants will not suffer any undue burden if discovery were to move forward. ...................................29

    3.    The Non-Fund Defendants have failed to show that the Trustee will not suffer any prejudice if discovery is stayed against them. .................................................................................30

F.    The Court's ruling in *Luxalpha* to permit discovery of foreign defendants only through foreign discovery procedures should not apply to the circumstances presented in this proceeding. .........................31

CONCLUSION .....................................................................................................................32

## TABLE OF AUTHORITIES

**Page(s)**

### Cases

*Associated Provincial Picture Houses Ltd. v. Wednesbury Corp.*
  [1948] 1 K.B. 223 ....................................................................................................6

*Charvat v. NMP, LLC,*
  No. 2:09-CV-209, 2009 WL 3210379 (S.D. Ohio Sept. 30, 2009) .......................................29

*Chevron Corp. v. Donziger,*
  296 F.R.D. 168 (S.D.N.Y. 2013) ...........................................................................13

*In re Currency Conversion Fee Antitrust Litig.,*
  No. MDL 1409, 2002 WL 88278 (S.D.N.Y. Jan. 22, 2002)....................................................26

*Dietrich v. Bauer,*
  No. 95 Civ. 7051 (RWS), 2000 WL 1171132 (S.D.N.Y. Aug. 16, 2000).............................27

*Dunn v. Albany Med. Coll.,*
  No. 09-CV-1031LEK/DEP, 2010 WL 2326137 (N.D.N.Y. May 5, 2010),
  *report and recommendation adopted in part,* No. 1:09-CV-1031LEK/DEP,
  2010 WL 2326127 (N.D.N.Y. June 7, 2010)...........................................................30

*First Am. Corp. v. Price Waterhouse LLP,*
  988 F. Supp. 353 (S.D.N.Y. 1997) .......................................................................11

*Gucci Am., Inc. v. Curveal Fashion,*
  No. 09 Civ. 8458 (RJS)(THK), 2010 WL 808639 (S.D.N.Y. Mar. 8, 2010) ...................11, 12

*Hachette Distribution, Inc. v. Hudson Cnty. News Co.,*
  136 F.R.D. 356 (E.D.N.Y.1991) ..........................................................................26, 31

*Hollins v. U.S. Tennis Ass'n,*
  469 F. Supp. 2d 67 (E.D.N.Y. 2006) .....................................................................27, 29

*In re Horizon Cruises Litig.,*
  No. 94 CIV. 5270 (LMM), 1997 WL 762129 (S.D.N.Y. Dec. 10, 1997) ...........................31

*Howard v. Galesi,*
  107 F.R.D. 348 (S.D.N.Y. 1985) .........................................................................31

*Kassover v. UBS A.G.,*
  No. 08 Civ. 2753 (LMM)(KNF), 2008 WL 5395942 (S.D.N.Y. Dec. 19, 2008).............26, 30

*Linde v. Arab Bank, PLC,*
  706 F.3d 92 (2d Cir. 2013)................................................................................6

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Lithgow v. Edelmann*,
247 F.R.D. 61 (D. Conn. 2007).......................................................................................25, 27

*Mahon v. Rahn*
[1998] Q.B. 424 ..............................................................................................................10, 18

*Minpeco, S.A. v. Conticommodity Servs., Inc.*,
116 F.R.D. 517 (S.D.N.Y. 1987) .........................................................................................10

*Mirra v. Jordan*,
No. 15-CV-4100 (AT)(KNF), 2016 WL 889559 (S.D.N.Y. Feb. 29, 2016) ..........................27

*Moran v. Flaherty*,
No. 92 Civ. 3200, 1992 WL 276913 (S.D.N.Y. Sept. 25, 1992) ...........................................27

*NML Capital, Ltd. v. Republic of Argentina*,
No. 03-CV-8845, 2013 WL 491522 (S.D.N.Y. Feb. 8, 2013)...........................................9, 11

*Picard v. Ceretti (In re Madoff Sec.)*,
Adv. Pro. No. 09-01161 (SMB), 2015 WL 4734749 (Bankr. S.D.N.Y. Aug.
11, 2015) ...................................................................................................................7-8, 26, 27

*Prudential Assurance Co. v. Fountain Page, Ltd.*
[1991] 1 W.L.R. 756 (QB).................................................................................................10, 11

*Reino De Espana v. Am. Bureau of Shipping*,
No. 03 Civ. 3573 (LTS)(RLE), 2005 WL 1813017 (S.D.N.Y. Aug. 1, 2005) .........................9

*SEC v. Banca Della Svizzera Italiana*,
92 F.R.D. 111 (S.D.N.Y. 1981) ...........................................................................................10

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*,
513 B.R. 222 (S.D.N.Y. 2014)...............................................................................................23

*Société Internationale Pour Participations Industrielles et
Commerciales, S.A. v. Rogers*,
357 U.S. 197 (1958)................................................................................................................5

*Société Nationale Industrielle Aérospatiale v. U.S. District Court for the Southern
District of Iowa*,
482 U.S. 522 (1987)........................................................................................................ *passim*

*Tansey v. Cochlear Ltd.*,
No. 13-CV-4628 (SJF)(SIL), 2014 WL 4676588 (E.D.N.Y. Sept. 18, 2014) ....................9, 12

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Taylor v. Dir. of the Serious Fraud Office*
[1999] 2 A.C. 177 (HL) ...........................................................................................10

*Town of Union, N.Y. v. Travelers Indem. Co.*,
No. 89-CV-573, 1991 WL 64858 (N.D.N.Y. Apr. 26, 1991)..................................30

*Estate of Ungar v. Palestinian Auth.*,
400 F. Supp. 2d 541 (S.D.N.Y. 2005).....................................................................27

*United States v. First City Nat'l Bank*,
396 F.2d 897 (2d Cir. 1968)....................................................................................11

*In re Vivendi Universal, S.A., Sec. Litig.*,
618 F. Supp. 2d 335 (S.D.N.Y. 2009)........................................................................8

*Weiss v. Nat'l Westminster Bank, PLC*,
242 F.R.D. 33 (E.D.N.Y. 2007) ..............................................................................12

*Woods Building Svcs. v. Milton Keynes Council*
[2015] EWHC 2011 (TCC)........................................................................................6

*Wultz v. Bank of China Ltd.*,
942 F. Supp. 2d 452 (S.D.N.Y. 2013)......................................................................16

**Statutes**

15 U.S.C. §§ 78aaa-*lll*...............................................................................................1

28 U.S.C. § 1332.......................................................................................................29

**Rules**

Fed. R. Bankr. P. 7016-2............................................................................................24

Fed. R. Bankr. P. 7037.................................................................................................1

Fed. R. Civ. P. 12..................................................................................................3, 25

Fed. R. Civ. P. 26............................................................................1-2, 9, 13, 23-25

Fed. R. Civ. P. 34.......................................................................................17, 18, 20

Fed. R. Civ. P. 37.........................................................................................................1

N.Y. C.P.L.R. § 302..................................................................................................29

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

**Other Authorities**

Restatement (Third) of Foreign Relations Law § 442 (Am. Law. Inst. 1987) .........................6, 12

Irving H. Picard, as trustee (the "Trustee") for the substantively consolidated liquidation

of the business of Bernard L. Madoff Investment Securities LLC ("BLMIS"), under the

Securities Investor Protection Act, 15 U.S.C. §§ 78aaa-*lll* ("SIPA"), and the estate of Bernard L.

Madoff ("Madoff"), by and through the Trustee's undersigned counsel, respectfully submits this

Reply Memorandum of Law in further support of his motion (the "Motion") under Rule 37 of the

Federal Rules of Civil Procedure (the "Rules") (made applicable by Rule 7037 of the Federal

Rules of Bankruptcy Procedure) for entry of an Order:  (i) compelling the production from

defendants Kingate Global Fund, Ltd. ("Kingate Global") and Kingate Euro Fund, Ltd.

("Kingate Euro," and with Kingate Global, the "Funds"), and defendants Kingate Management

Limited ("KML"), FIM Limited and FIM Advisers LLP (collectively, "FIM"),  Federico Ceretti

and Carlo Grosso, and First Peninsula Trustees Limited, Port of Hercules Trustees Limited,

Alpine Trustees Limited, Ashby Holding Services Limited, Ashby Investment Services Limited,

El Prela Group Holding Services Limited, and El Prela Trading Investments Limited

(collectively, the "Trust Defendants" and with KML and FIM, the "Production Defendants")[1] of

all documents produced or exchanged in discovery in the Bermuda Action;[2] and (ii) requiring the

Production Defendants, and Ceretti and Grosso, The Ashby Trust and El Prela Trust (through

their respective trustees),  Citi Hedge Fund Services Limited ("Citi Hedge"), and HSBC Bank

Bermuda Limited ("HSBC Bank Bermuda") to confer with the Funds and the Trustee in

accordance with Rule 26(f) and participate in party discovery in this proceeding.  The Production

---

[1] The Production Defendants thus consist of all of the defendants in this proceeding, with the exception of the Funds, The Ashby Trust, El Prela Trust, Ceretti, Grosso, Citi Hedge, and HSBC Bank Bermuda.

[2] The term "Bermuda Action" refers to the civil action commenced by the Funds against KML, FIM, the Trust Defendants, Carlo Grosso, and Federico Ceretti (the "Bermuda Defendants") bearing the caption *Kingate Global Fund Limited v. Kingate Management Limited*, Supreme Court of Bermuda, Civil Jurisdiction (Commercial List) No. 454 of 2010.

Defendants, Ceretti, Grosso, The Ashby Trust, El Prela Trust, Citi Hedge, and HSBC Bank

Bermuda will be referred to collectively as the "Non-Fund Defendants."

## PRELIMINARY STATEMENT

Neither the Funds nor the Non-Fund Defendants challenge the relevance of the Bermuda

Productions to the Trustee's claims.  Yet the Funds refuse to produce them, claiming that

Bermuda law bars them from doing so, even though a Bermuda court deferred—to this Court—

questions concerning the Funds' discovery obligations to the Trustee.  The Funds make no

argument that should dissuade the Court from applying federal law to order the Funds to produce

the Bermuda Productions.  They give superficial treatment (at best) to the applicable factors

informing whether foreign law trumps discovery under the Rules.  When properly examined,

those factors reveal the primacy of federal law.  The Bermuda Productions are undeniably

critical to the Trustee's claims, the United States has superior interests at stake in the full and fair

adjudication of claims brought to enforce SIPA's protection of customer property and the

securities markets, and the Trustee can only obtain the Bermuda Productions from the defendants

through this Court's application of the Rules.  The Funds' position consequently reverts to

nothing more than a plea that the Court spare them the choice whether to violate Bermuda law by

immediate compliance with an order compelling them to produce the Bermuda Productions and

instead order *the Non-Fund Defendants* to produce those documents.  Even if the Funds had

moved for protective relief under Rule 26(c), which they eschewed, the availability of the

documents from the Non-Fund Defendants does not release the Funds from their obligations to

produce them under the Rules.

Not to be outdone, the Non-Fund Defendants also refuse to produce the Bermuda

Productions as part and parcel of a larger scheme to deny the Trustee as much discovery and

evidence as possible.  The Non-Fund Defendants do not suggest they do not have relevant

discovery to provide, in the form of the Bermuda Productions or otherwise. In fact, the Non-Fund Defendants do not object to the Court allowing the Trustee to pursue discovery under foreign law. The Non-Fund Defendants' plan is plain: they intend to use foreign law to block the Trustee's efforts to obtain important discovery material to the Trustee's claims that the Trustee would unquestionably obtain under the Rules.

To achieve that end, the Non-Fund Defendants first ask the Court to stay discovery against them under the Rules, even though none of them has filed a motion seeking that relief. Invoking the District Court's decision on extraterritoriality and this Court's ET Order,[3] the Non-Fund Defendants contend that there is an "implicit" stay of discovery in this proceeding pending the Court's consideration of the District Court's decision on remand. But the District Court did not even consider (let alone issue) a stay of merits discovery, in this or any proceeding, pending this Court's decision on extraterritoriality, and the plain language of the ET Order does not impose such a stay of discovery.

The Non-Fund Defendants couple their "implicit" stay argument with an informal request that the Court *sua sponte* stay discovery against them. The Non-Fund Defendants suggest that the Court will likely dismiss the Trustee's claims against them, by deciding the Extraterritoriality Motion in their favor. The Non-Fund Defendants also urge the Court to 'take them at their word' when they claim the Court will not exercise personal jurisdiction over them once the Non-Fund Defendants move to dismiss the Trustee's Fourth Amended Complaint under Rule 12(b)(2). And this unfounded confidence in success in future rulings of this Court, according to the Non-Fund Defendants, justifies halting discovery from those defendants under the Rules.

---

[3] Capitalized terms that are not separately defined have the meaning ascribed in the Trustee's moving brief.

A pending motion to dismiss (let alone a hypothetical one) is not, however, a sufficient basis for staying discovery. The Trustee would not presume to forecast how the Court will rule on the Extraterritoriality Motion. The Non-Fund Defendants are not entitled to affirmative relief on jurisdictional grounds on the Trustee's Motion, particularly when the Fourth Amended Complaint has survived dismissal on all avoidance and recovery counts.

It is not surprising that the Non-Fund Defendants seek to evade discovery under the Rules. They possess evidence that the Trustee cannot obtain elsewhere, and the Rules would plainly require the Non-Fund Defendants to disclose that evidence to the Trustee. The Trustee's case that the Non-Fund Defendants (and, by imputation, the Funds) knew of BLMIS's fraud will only get stronger as more evidence comes to light. The Non-Fund Defendants have determined that their best course is to seek the refuge of foreign discovery practice and hope that its restrictions and limitations diminish the totality of the Trustee's proofs. The Court should not sanction their tactics. The Non-Fund Defendants are parties to this proceeding until they are not. While they are parties, they should be subject to discovery under the Rules.

## ARGUMENT

## I.    THE FUNDS' OBJECTIONS TO THE PRODUCTION OF THE BERMUDA PRODUCTIONS ARE UNSUSTAINABLE.

The Funds first contend that the Trustee's Motion is "misdirected" and the Production Defendants should instead be compelled to produce the Bermuda Productions because they can do so without violating Bermuda law.[4] The Funds proclaim it "inequitable" and "wholly unnecessary" to require them to choose between violating an order of this Court directing them

---

[4] Kingate Funds' Mem. of Law in Opp'n to Trustee's Mot. to Compel Disc. ("Funds Opp'n Br.") 1-2, ECF No. 262. The Trustee is not concerned with who produces the documents, so long as all of the documents are, in fact, produced. Consequently, should the Court order the Production Defendants to produce the Bermuda Productions, then the Court need not order the Funds to produce those same documents.

to produce the Bermuda Productions and violating Bermuda's implied undertaking by complying

with such an order.[5]  The Funds seek to avoid making that choice but do not and cannot dispute

the Court's power to put the choice to them.  As the Supreme Court of the United States noted in

*Société Nationale Industrielle Aérospatiale v. U.S. District Court for the Southern District of*

*Iowa*, 482 U.S. 522 (1987) ("*Aérospatiale*"), it is well settled that federal courts possess the

power to order a party subject to the court's jurisdiction to produce evidence notwithstanding

that by making production, the party may violate foreign law.[6]  The standards discussed in

*Aérospatiale* inform the Court to exercise that power here and order the Funds to produce the

Bermuda Productions to the Trustee.[7]

>    **A.    The balance of *Aérospatiale* factors weighs heavily in favor of ordering the
>    Funds to produce the Bermuda Productions to the Trustee.**

To determine whether production of the Bermuda Productions is appropriate and

warranted notwithstanding any potential bar raised by Bermuda law, five factors must be

considered:  (1) the importance of the Bermuda Productions to the adjudication of the claims and

defenses presented in this proceeding; (2) the extent to which the Funds' noncompliance with the

Trustee's request for production would undermine important interests of the United States and

Bermuda; (3) the specificity of the Trustee's request for production at issue; (4) whether the

Bermuda Productions originated in the United States; and (5) the availability of alternative

---

[5] *Id.* at 2.

[6] *Aérospatiale*, 482 U.S. at 544 n.29 (citing *Société Internationale Pour Participations Industrielles et Commerciales, S.A. v. Rogers*, 357 U.S. 197, 204-06 (1958)).

[7] Moreover, the specter of a Hobson's choice raised by the Funds is a false one—the Bermuda court made clear that it would be guided by this Court in deciding whether to grant relief from the implied undertaking.  Gruppuso Decl. Ex. F, ECF No. 254.

means for the Trustee to obtain the Bermuda Productions.[8]  Balancing those factors weighs

heavily in favor of ordering the Funds to produce the Bermuda Productions to the Trustee.

> 1.    *The Bermuda Productions are a critical source of evidence relevant to the Trustee's claims.*

According to the Funds, the Bermuda Productions consist of approximately 139,800

documents obtained by the Funds in discovery in the Bermuda Action,[9] with 66,000 documents

produced by KML, 47,000 documents produced by FIM, and 26,800 documents produced by the

Trust Defendants.  In the Bermuda Action, the Funds have sued the Bermuda Defendants to

recover the more than $370 million in management fees they paid to KML, which were

thereafter distributed to the Trust Defendants and Ceretti and Grosso.[10]  To prevail and recover

those moneys from the Bermuda Defendants, the Funds must prove that KML or the Funds'

administrators committed manifest error[11] or acted in bad faith, rendering obvious the mutual

---

[8] *See Aérospatiale*, 482 U.S. at 544 n.28 (1987); *Linde v. Arab Bank, PLC,* 706 F.3d 92, 109-10 (2d Cir. 2013); *see also* Restatement (Third) of Foreign Relations Law § 442(1)(c) (Am. Law. Inst. 1987) (identifying same factors).

[9] *See Order 24, Rule 1, Rules of the [Bermuda] Supreme Court 1985* ("After the close of pleadings in an action begun by writ there shall, subject to and in accordance with the provisions of this Order, be discovery by the parties to the action of the documents which are or have been in their possession, custody or power relating to matters in question in the action.").

[10] *See* Reply Declaration of Anthony M. Gruppuso ("Gruppuso Reply Decl.") Ex. A ¶¶ 17.1–17.3.  The Trustee notes that the Funds subsequently filed at least three "re-amended" statements of claim, but because the pleadings and the submissions in the Bermuda Action are not publicly available, the Trustee cannot cite to them.

[11] Manifest error has been described in English case law as an extremely high threshold of unreasonableness, "so unreasonable that it might almost be described as being done in bad faith." *Associated Provincial Picture Houses Ltd. v. Wednesbury Corp.* [1948] 1 K.B. 223 at 229 (cited to in *Woods Building Svcs. v. Milton Keynes Council* [2015] EWHC 2011 (TCC) [11]-[17] (affirming that manifest error is broadly equivalent to the standard of unreasonableness announced in *Wednesbury*)). A copy of *Woods Building Svcs.* is attached to the Reply Gruppuso Decl. as Exhibit D.

relevance of any evidence in the Bermuda Action to the Trustee's claims here.[12]  Indeed, it is
patently unfair that the Funds are free to use the pleadings and productions in this action to assist
their claims in the Bermuda Action, while seeking to deprive the Trustee of the reciprocal benefit
here.[13]

    In this proceeding, the Trustee seeks to recover the same moneys from the same parties.
The Trustee has pleaded claims to avoid and recover approximately $925 million in transfers
made by BLMIS to the Funds.  The Trustee also seeks to recover from KML more than $370
million in subsequent transfers it received in the form of purported management fees, and more
than $297 million in subsequent transfers from the Trust Defendants, Ceretti, and Grosso they
received in the form of purported shareholder distributions,[14] or other payments.  To prevail, the
Trustee must prove, among other things, that the Funds had actual knowledge of, or were
willfully blind to, the fact that BLMIS was not trading securities for the Funds' customer
accounts, and that the Non-Fund Defendants received customer property from the Funds.[15]

---

[12] The Bermuda court presiding over the Bermuda Action issued on September 25, 2015 a
Judgment on Preliminary Issues, a copy of which is attached as Exhibit B to the Gruppuso Reply
Decl.  The Bermuda court summarizes its holdings at pages 59-61.

[13] This Adversary Proceeding predates the Bermuda Action, thus there can be no complaint that
the Trustee seeks to use the Bermuda Productions as part of a "fishing expedition" to formulate a
new claim in a more favorable jurisdiction.  It is the obvious relevance of the Bermuda
Productions that drives the defendants in this case to oppose their production, not some genuine
conflict with foreign law.

[14] *See* Fourth Am. Compl. filed in this proceeding on March 17, 2014 ¶¶ 108-09, ECF No. 100.

[15] *Picard v. Ceretti (In re Madoff Sec.)* ("MTD Decision"), Adv. Pro. No. 09-01161 (SMB), 2015
WL 4734749, at *16 (Bankr. S.D.N.Y. Aug. 11, 2015) (concluding that the Trustee alleged facts
sufficient to plead imputation of the Non-Fund Defendants' acts and knowledge to the Funds).

Neither the Funds nor the Non-Fund Defendants contend that the Bermuda Productions are irrelevant or otherwise beyond the scope of discovery in this proceeding.[16] The Funds instead claim that the Bermuda Productions "are not vital to the litigation" because the Funds produced (or are in the process of producing) the Voluntary Productions to the Trustee.[17] This assertion is a *non sequitur*. The relevance or utility of the Voluntary Productions has no bearing whatsoever on the relevance or utility of the Bermuda Productions. The Funds concede that approximately 94,000 documents included within the Bermuda Productions are ***not*** duplicative of the Voluntary Productions.[18] The Trustee does not know what documents constitute the Bermuda Productions, but Bermuda law requires the disclosure of all documents relevant to the Bermuda Action,[19] and an additional 94,000 documents were produced. It is therefore reasonable to conclude that the Bermuda Productions contain critical evidence further proving that the Non-Fund Defendants had actual knowledge of, or were willfully blind to, BLMIS's fraud, and that their state of mind should be imputed to the Funds.[20]

---

[16] *See In re Vivendi Universal, S.A., Sec. Litig.*, 618 F. Supp. 2d 335, 343 (S.D.N.Y. 2009) (recognizing that the burden is on the producing party to show that the subject documents are not discoverable).

[17] The Funds' counsel has no foundation for such an argument, if it is true—as they represent— that they have not even reviewed the Bermuda Productions. Funds Opp'n Br. 7 n.6.

[18] Gruppuso Decl. Ex. D. The Funds' purported "belie[f]" that the Bermuda Productions made by KML and FIM "are largely duplicative" of the Voluntary Productions, *see* Funds Opp'n Br. 7 n.6, is contradicted by their representations to the Trustee that, in addition to the 26,800 documents produced by the Trust Defendants, 43,000 of the 66,000 documents produced by KML in the Bermuda Action and 24,200 of the 47,000 documents produced by FIM in the Bermuda Action are not duplicative of the Voluntary Productions. Gruppuso Decl. Ex. D.

[19] *See supra* note 9.

[20] MTD Decision, 2015 WL 4734749, at *13-14, *16 (concluding that the facts alleged by the Trustee adequately pleaded the Non-Fund Defendants' actual knowledge and imputation of it to the Funds).

The relevance and importance of the Bermuda Productions to the Trustee's claims is undisputed. The Funds have never argued otherwise, nor could they without fatally undermining their own claims in Bermuda. The Funds are obligated to produce all documents within their possession, custody, or control that are relevant under Rule 26(b)(1). That the Funds have produced a subset of such relevant documents does not permit them to withhold another subset of such relevant documents from production. This is particularly so where the Funds seek to recover moneys also claimed by the Trustee, which would ultimately be used by the Trustee to satisfy allowed customer claims, including, potentially, those of the Funds. The Funds would effectively be using evidence to recover assets that they have no intention of remitting to the BLMIS estate, while at the same time withholding from the Trustee that same evidence— evidence that is highly relevant to the adjudication of the Funds' claims against the BLMIS estate. This approach is both inequitable and unfair. This factor weighs heavily in favor of ordering production from the Funds.

2.    *Vital interests of the United States in ensuring a full and fair adjudication of the Trustee's claims and enforcing SIPA's mandate that customer property be recovered and distributed far outweigh the policy underpinning Bermuda's implied undertaking.*

The Bermuda Productions comprise 139,800 documents that the Trustee believes have significant probative value in this proceeding.[21] The Ponzi scheme perpetuated by Madoff was the largest financial fraud in United States history. U.S. courts expressly recognize that the enforcement of statutory schemes to ensure the integrity of the U.S. financial markets vindicates

---

[21] *See Tansey v. Cochlear Ltd.*, No. 13-CV-4628 (SJF)(SIL), 2014 WL 4676588, at *4 (E.D.N.Y. Sept. 18, 2014); *NML Capital, Ltd. v. Republic of Argentina*, No. 03-CV-8845, 2013 WL 491522, at *10 (S.D.N.Y. Feb. 8, 2013); *Reino De Espana v. Am. Bureau of Shipping*, No. 03 Civ. 3573 (LTS)(RLE), 2005 WL 1813017, at *4 (S.D.N.Y. Aug. 1, 2005).

an important national interest.[22]  U.S. courts have further recognized the U.S.'s "vital national interest in maintaining the integrity of the securities markets against violations committed and/or aided and assisted by parties located abroad."[23]  This proceeding, in which the Trustee seeks to recover $925 million in fraudulent transfers and subordinate the Funds' customer claims totaling approximately $800 million falls squarely within the national interests sought to be protected by SIPA.

The significance of the Bermuda policy interests at issue pales in comparison.  Bermuda law does not purport to protect the Funds or the Non-Fund Defendants from pre-trial discovery in this proceeding or one brought in a Bermuda court (as the Bermuda Productions themselves result from pre-trial discovery in the Bermuda Action).  The implied undertaking—which is the sole principle of Bermuda law at issue (presuming for the sake of argument that it applies)—is a creature of Bermuda common law that balances the producing party's right to keep its own documents private with the public interest in a full and fair adjudication of claims and defenses asserted in the Bermuda litigation by limiting the use of documents exchanged in discovery there.[24]  The implied undertaking is not absolute, as "it is an obligation which the court has the

---

[22] *See, e.g., Minpeco, S.A. v. Conticommodity Servs., Inc.*, 116 F.R.D. 517, 523 (S.D.N.Y. 1987) ("The United States has a strong national interest in enforcing its antitrust and commodities fraud laws . . . to ensure the integrity of its financial markets.").

[23] *SEC v. Banca Della Svizzera Italiana*, 92 F.R.D. 111, 112 (S.D.N.Y. 1981).  "It would be a travesty of justice to permit a foreign company to invade American markets, violate American laws if they were indeed violated, withdraw profits and resist accountability for itself and its principals for the illegality by claiming their anonymity under foreign law."  *Id.* at 119 (compelling Swiss corporation, which transacted purchases on American securities exchanges, to make discovery concerning undisclosed principals, even though disclosure might subject it to criminal liability in Switzerland).

[24] *See Taylor v. Dir. of the Serious Fraud Office* [1999] 2 A.C. 177 (HL) 207-08; *Mahon v. Rahn* [1998] Q.B. 424 at 436; *Prudential Assurance Co. v. Fountain Page, Ltd.* [1991] 1 W.L.R. 756 (QB) 765 (observing, further, that the implied undertaking is "independent of any question of confidentiality" and "the actual character of the document or information").

right to control and can modify or release a party from."[25]  Although Bermuda's interest in

protecting the privacy rights of its citizens in litigation may be appreciable,[26] the judicial

recognition of flexibility in enforcing the implied undertaking substantially diminishes its

importance under *Aérospatiale*.[27]  Indeed, the Bermuda court presiding over the Bermuda Action

has recognized the primacy of U.S. law and this Court's jurisdiction over matters of discovery in

this proceeding, by initially deferring to this Court on the question whether the Bermuda

Productions should be produced here.[28]

The United States interests are substantially stronger than those of Bermuda, and this

factor thus heavily favors ordering the Funds to produce the Bermuda Productions.

   3.  *The Trustee has specifically targeted the Bermuda Productions, which can*
       *be easily produced.*

Request # 38 demands, "All Documents concerning any civil, criminal, or other legal

proceedings . . . including but not limited to the Bermuda Action . . . including but not limited to

. . . Documents and discovery produced . . . ."[29]  The request specifically demands all documents

produced in discovery in the Bermuda Action, which have previously been collected and turned

over to the Funds.  As discussed above, as a matter of law, *Aérospatiale* defeats the Funds'

argument that producing the Bermuda Productions would be burdensome because it exposes the

---

[25] *Prudential Assurance Co.* [1991] 1 W.L.R. at 764-65 ("It is thus a formulation of the obligation which has merit and convenience and enables it to be treated flexibly having regard to circumstances of any particular case.").

[26] *See NML Capital*, 2013 WL 491522, at *10.

[27] *First Am. Corp. v. Price Waterhouse LLP*, 988 F. Supp. 353, 365 (S.D.N.Y. 1997); *Gucci Am., Inc. v. Curveal Fashion*, No. 09 Civ. 8458 (RJS)(THK), 2010 WL 808639, at *6 (S.D.N.Y. Mar. 8, 2010) (citing *United States v. First City Nat'l Bank*, 396 F.2d 897, 902 (2d Cir. 1968)).

[28] Gruppuso Decl. Ex. F.

[29] Gruppuso Decl. Ex. B.

Funds to the possible violation of foreign law.[30]  That alone is not a basis under *Aérospatiale* to

protect a party from discovery obligations imposed by the Rules.  And there is no exception

under the Rules to the Funds' obligation to produce relevant documents because only their

foreign counsel, as opposed to their U.S. counsel, has reviewed them.[31]

These factors heavily favor ordering the Funds to produce the Bermuda Productions to

the Trustee.

> 4. *The documents originated as a result of the Funds' and the Non-Fund
> Defendants' activities in New York.*

The Bermuda Productions consist of documents that exist because the Funds and the

Non-Fund Defendants voluntarily chose to engage in business activities with BLMIS in New

York.  The Funds' sole business was the investment in BLMIS in New York.  KML's sole

business was the management of those investments in New York.  And the actions of the Non-

Fund Defendants that are at issue in both this proceeding and the Bermuda Action, and the

creation of most if not all of the documents in the Bermuda Productions, would not have

occurred but for these business activities in New York.  This factor thus weighs in favor of

production.[32]

---

[30] Funds Opp'n Br. 5.

[31] *Id.* at 7 n.6.

[32] The location of the documents may also be relevant to the Court's analysis.  *See* Restatement
(Third) of Foreign Relations Law § 442(1)(c) (Am. Law Inst. 1987) (guiding decision to order
production of "information located abroad").  The Funds have not submitted any evidence
concerning the location of the Bermuda Productions.  In any event, even if the Bermuda
Productions were physically located in a foreign jurisdiction, it should not be considered
significant.  *See, e.g., Weiss v. Nat'l Westminster Bank*, *PLC*, 242 F.R.D. 33, 43, 56 (E.D.N.Y.
2007) (requiring disclosure of information originating in the United Kingdom despite the
prohibition of such disclosure under U.K. law); *Gucci Am.*, 2010 WL 808639, at *3, *8
(requiring disclosure of information originating in Malaysia despite the prohibition of such
disclosure under Malaysian law).  The location of documents is of much less importance today
than it was nearly 30 years ago when announced in *Aérospatiale*, as documents can today be
moved electronically with ease and cost efficiency from one part of the world to another.  *Tansey*

> 5.    *The Trustee can obtain the Bermuda Productions only from the Funds or the Production Defendants, which have refused to participate in discovery.*

The Trustee cannot obtain the Bermuda Productions through any means other than discovery from either the Funds or the Production Defendants.[33]  The Trustee need not, as the Funds suggest, pursue the Bermuda Productions only from the Production Defendants, on the basis that they are the "far more appropriate" source of that discovery.[34]  The Funds possess the Bermuda Productions, the Funds are subject to discovery under the Rules, and the Court has the power to order the Funds to produce these documents to the Trustee.  The Rules generally permit a litigant to pursue discovery in whatever sequence and from whichever party it chooses.  The Funds identified the documents they had in their possession, custody, or control concerning Madoff and BLMIS as the Voluntary Productions and the Bermuda Productions, and the Trustee sought production of those documents from the Funds.  The Funds have not sought a protective order limiting the Trustee's discovery rights concerning such documents.[35]

Regardless, the Trustee is not concerned with who produces the documents, so long as all of the documents are, in fact, produced.  Consequently, should the Court order the Production Defendants to produce the Bermuda Productions, then the Court need not order the Funds to produce those same documents.  But should the Court deny the Trustee's request to compel the

---

*v. Cochlear Ltd.*, No. 13-CV-4628 (SJF)(SIL), 2014 WL 4676588, at *3 (E.D.N.Y. Sept. 18, 2014).  And the location and origination of documents is outweighed by the fifth factor, a party's inability to otherwise obtain the requested information through viable alternative means. *Chevron Corp. v. Donziger*, 296 F.R.D. 168, 206 (S.D.N.Y. 2013).

[33] The Funds apparently do not object to production of the Bermuda Productions by the Production Defendants.  Funds Opp'n Br. 8 ("[I]f any party should be required to produce the documents, it should be [the Production Defendants].").

[34] *Id.*

[35] *See* Fed. R. Civ. P. 26(b)(2).

Production Defendants to produce the Bermuda Productions and instead direct the Trustee to pursue those documents abroad, then this fifth factor becomes relevant.

The Non-Fund Defendants argue that the Trustee should be obligated to pursue discovery abroad, rather than pursuant to the authority of this Court. But this would be tantamount to denying the Trustee's discovery demands. If the Trustee were to proceed via letters rogatory,[36] Bermuda law would apply to that request. As the defendants have been at pains to point out, Bermuda law does not allow this disclosure absent a waiver from the parties, or absent a court order mandating disclosure. That waiver, of course, will not be forthcoming. And the Bermuda court has indicated that it will be guided in its decision whether to order disclosure by this Court's decision on this Motion.[37] An order denying this Motion and sending the Trustee to Bermuda would almost certainly be taken as a signal by the Bermuda court to decline to authorize the release of the Bermuda Productions.[38] The Trustee would thus be deprived of access to the Bermuda Productions—which no one disputes are highly relevant to this action— without the benefit of the *Aérospatiale* balancing test, which fairly considers the interests of all sides to this dispute. Because the Bermuda court, which has heard the arguments of all sides in this dispute (except, notably, the Trustee), has indicated that it will allow the disclosure of the

---

[36] Bermuda is not a signatory to the Convention on the Taking of Evidence Abroad in Civil or Commercial Matters ("Hague Convention"), 23 U.S.T. 2555 (Mar. 18, 1970).

[37] Gruppuso Decl. Ex. F.

[38] Ordering the Trustee to proceed pursuant to the Hague Convention against defendants in the United Kingdom would yield the same unfair result. Under Article 11 of the Hague Convention, a person may refuse to provide evidence insofar as he or she "has a privilege or duty to refuse to give the evidence – (a) under the law of the State of execution. . . ." *See* Hague Convention at Article 11(a).

Bermuda Production if so guided by this Court,[39] Defendants should not be heard to complain

that they would in any way be prejudiced by the issuance of such an order.

Foreign discovery practice against the Non-Fund Defendants is not a viable alternative

means for the Trustee to obtain the Bermuda Productions.  If the Court were to conclude that the

Production Defendants are not subject to discovery now under the Rules and are not required to

produce the Bermuda Productions, then this factor applies and weighs heavily in favor of

ordering the Funds to produce those documents.

In sum, the Bermuda Productions are relevant and material to the Trustee's proofs.

Without those documents, the Trustee's claims will not be fully and fairly adjudicated, the public

policy underpinnings of SIPA and the Bankruptcy Code would be frustrated, and the customer

property estate could suffer a significant negative impact.  Balanced against the harm to those

interests of the United States, there would be little if any harm to the waivable, flexible common

law principle of the implied undertaking.  The Funds can easily produce the Bermuda

Productions to the Trustee without hardship or undue burden.  If the Trustee cannot obtain the

Bermuda Productions from the Funds or the Production Defendants under the Rules, no adequate

alternative means exists for obtaining those documents.  The totality of these *Aérospatiale*

factors strongly favor production of the Bermuda Productions, and the Court should order the

Funds to do so.

> **B.    The Funds "control" the documents within the Bermuda Productions and
> are obligated to obtain and produce them to the Trustee.**

The Trustee has shown that the Funds control the documents relating to their business

activities that were created, received, and maintained by their Service Providers[40] and the Funds

---

[39] Gruppuso Decl. Ex. F.

are not restricted by the implied undertaking from separately obtaining those documents from the

Service Providers and producing them.  The Funds and the Non-Fund Defendants raise four

central arguments in an attempt to counter that showing. [41]  None of those arguments is

persuasive.

First, the Funds argue that because they previously requested and obtained documents

from the Service Providers that "relate to the Funds," and because the Funds have produced or

are in the process of producing those documents (i.e., the Voluntary Productions) to the Trustee,

the Funds have no obligation to collect any other relevant documents that are within their

control.[42]  According to the Funds, their rights under the Service Provider Agreements would

"provide no more" than what was obtained initially.  The Funds do not, however, explain how or

why 67,200 documents produced by KML and FIM in discovery in the Bermuda Action were *not*

part of the Voluntary Productions.  Those 67,200 documents must "relate to the Funds," because

they are relevant to the claims and issues presented in the Bermuda Action, which encompass the

Funds' sole business, which was investing with BLMIS, the Funds' relationships with the Non-

Fund Defendants, which profited from the Funds' relationship with BLMIS, and the Non-Fund

Defendants' performance of their obligations to the Kingate Enterprise[43] that enabled the Funds

---

[40] As defined in the Trustee's moving brief, the Service Providers are KML, Citi Hedge (and its predecessors Hemisphere Management Limited and BISYS Hedge Fund Services Limited), FIM, and HSBC Bank Bermuda.

[41] *See Wultz v. Bank of China Ltd.*, 942 F. Supp. 2d 452, 460 (S.D.N.Y. 2013) ("The party objecting to a discovery motion based on foreign law bears the burden of demonstrating that such law actually bars the production or testimony at issue.").

[42] Funds Opp'n Br. 11-12.

[43] This term was defined in the Trustee's Addendum filed in this proceeding to his main brief in opposition to the pending consolidated motions to dismiss filed by the Non-Fund Defendants on extraterritorial grounds.  Trustee's Suppl. Mem. of Law in Opp'n to Certain Defs.' Mot. to Dismiss Based on Extraterritoriality & in Further Supp. of Trustee's Mot. for Leave to Amend Compls., at 5-6, ECF No. 195.

to continue in business for well over a decade.  Again, the Funds are obligated under the Rules to produce all relevant documents in their possession, custody, or control to the Trustee.  Producing only *some* of the relevant documents in their possession does not suffice.[44]

Second, the Funds assert that they cannot obtain documents from the Service Providers without legal process.[45]  That assertion contradicts many representations made by the Funds to the Trustee that the Voluntary Productions were provided "voluntarily" by the Production Defendants and others without the need to resort to legal process to get them (in contrast to the Bermuda Productions, which were produced in the Bermuda Action).[46]  If, however, as the Funds now know, the Voluntary Productions were deficient, the liquidators for the Funds should have statutory authority to obtain the 67,200 documents missing from the Voluntary Productions and produce those missing documents to the Trustee.  The Funds cannot evade their discovery obligations in this proceeding under the Rules by simply denying their rights as the document owners to obtain them, or by the liquidators denying their statutory authority to obtain and produce the documents, leaving discovery here at a standstill.

Third, the Funds inaccurately characterize the Trustee's argument that the Funds control, for purposes of Rule 34, the Service Providers' documents that relate to the Funds as seeking to require them to "take possession of" and "commandeer" the Service Providers' servers and

---

[44] That the Production Defendants have not consented to a review of the Bermuda Productions by the Funds' counsel in this proceeding does not, as the Funds suggest, *see* Funds Opp'n Br. 1, 7, excuse the Funds from exercising their right under the Service Provider Agreements or the liquidators' powers under BVI law to obtain all documents that are part of the Bermuda Productions.  The Funds' Bermuda counsel presumably has reviewed the Bermuda Productions and relied upon them in the trial there on preliminary issues.  It is not the Trustee's obligation to explain to the Funds' how best to comply with their obligations under the Rules.

[45] Funds Opp'n Br. 13 n.13.

[46] *See, e.g.*, Gruppuso Decl. Ex. D.

document systems.[47]  Bermuda law does not restrict the Funds from using or disclosing their

own documents for any purpose, including in connection with other litigation.[48]  For example, by

letter to KML, the Funds' liquidators founded their request for "all of the records held by

[KML], insofar as they relate to the Funds" on their stated "power to require any person who has

been involved in the promotion or formation of the Funds or any person who has been employed

by the Funds under a contract for services, to provide them with such information concerning the

Funds . . . as they reasonably require."[49]  Within days of their appointment, the Funds'

liquidators purported to exercise control over all documents relating to the Funds in the

respective possession of Citi Hedge and HSBC Bank Bermuda, instructing those entities to

secure and hold all such documents "to the order of" the liquidators.[50]  The Funds have thus

acknowledged and sought to exercise a right and authority over documents in the physical

possession of the Service Providers, which is sufficient to establish the Funds' control under

Rule 34.

        The Funds are obligated to produce all documents within their possession, custody, or

control that are relevant and responsive to the Requests.  The Funds collected the Voluntary

Productions and received the Bermuda Productions years before the Trustee served the Requests.

---

[47] *See* Funds Opp'n Br. 11, 13.

[48] *Mahon v. Rahn* [1998] Q.B. 424 at 432, 453 (instructing that "a civil litigant is . . . forbidden only to use the documents disclosed on discovery by his opponent and the information in them; he remains free to sue in another action on the basis of information which he has obtained from another source," recognizing that the "special protection" afforded by the implied undertaking extends only "to documents disclosed under compulsion of discovery" and "does not apply to any wider class of documents," and observing that the implied undertaking does not apply to documents that a party chooses to disclose voluntarily in support of the party's claims or defenses) (internal quotation marks and citation omitted).

[49] Decl. of Robert Loigman in Supp. of the Kingate Funds' Opp'n to Trustee's Mot. to Compel Disc. ("Loigman Decl.") Ex. 7.

[50] *Id.* Exs. 8-10.

The Funds apparently have not attempted to collect any relevant, responsive documents since

service of the Requests.  Instead, the Funds have sought permission from foreign courts to

produce documents previously collected.  The Trustee does not concede that production of the

Voluntary Productions and the Bermuda Productions would satisfy the Funds' obligations under

the Requests.  The Funds' collection of the Voluntary Productions was plainly incomplete, as

KML and FIM subsequently produced an additional 67,200 documents relating to the Funds.[51]

The Funds state that they worked with the Service Providers to "negotiate[] search parameters

for electronic documents, identif[y] hard copy documents for collection and otherwise agree[] on

a reasonable scope of production of documents 'relating to the Funds.'"[52]  The Trustee was not

party to those communications and discovery efforts and has had no discovery concerning them.

The Trustee therefore has had no insight into the identity of relevant custodians, the location and

types of repositories, and the search for and review of relevant documents and electronically

stored information.

    Lastly, the Funds and the Non-Fund Defendants contend that the Funds' rights to

documents maintained by the Service Providers relating to the Funds arise only upon termination

of the Service Provider Agreements, which, in their view, has not occurred.  Nearly all of the

agreements, however, identified a party's liquidation as an appropriate circumstance for

termination[53] and thus acknowledge the Funds as the rightful owners of the documents and

---

[51] This begs the question how the Funds' counsel in this proceeding can represent to the Court
that through the Voluntary Productions, "the Trustee will already receive all documents to which
the Funds were possibly entitled under their agreements with the Service Providers."  Funds
Opp'n Br. 12.  That the Funds' counsel has purportedly not even seen the additional 67,200
documents casts more skepticism on the basis for, and accuracy of, counsel's representation.

[52] *Id.*

[53] Gruppuso Decl. Ex. I § 13 (providing for termination if the Fund or KML entered liquidation),
Ex. K § 5.8 (same), Ex. L § 5.8 (same), Ex. M § 13 (providing for termination if the Fund
entered liquidation or if KML ceased acting as Manager of the Fund), Ex. N § 13 (same), Ex. O

implicitly recognize the rights of a liquidator of the Funds to demand and obtain documents from

the Service Providers.  The Funds' and the Non-Fund Defendants' arguments regarding the

Service Provider Agreements are pointless.  By invoking the termination provision as an excuse

for why they cannot produce the documents, they—not the Trustee[54]—imply the agreements are

enforceable today by or against the Funds' liquidators.

The Funds control the documents, regardless of whether they were physically being held

by the Service Providers, and must collect and produce all responsive, relevant documents.  The

Funds have not sought a protective order limiting the scope of their Rule 34 discovery

obligations.  The Court should direct the Funds to comply with Rule 34 and specifically order the

Funds to collect from KML and FIM the 67,200 documents that were not part of the Voluntary

Productions and produce them to the Trustee.[55]

### C.   The Funds have no basis to withhold documents created after the date the Funds entered liquidation that are responsive, relevant, and not privileged.

The Funds argue that they should not be ordered "to produce documents created after

May 9, 2009, the date on which the Funds entered liquidation,"[56] because the Trustee has

allegedly "refused to search for or produce documents prepared after December 11, 2008, the

day Bernie Madoff was arrested."[57]  The Funds' stance that they are taking the same position as

---

§ 13 (same), Ex. R § 12 (same), Ex. S § 12 (same), Ex. T § 19 (providing for termination if the Fund entered liquidation), Ex. U § 18 (same), Ex. V § 8 (same), Ex. W § 8 (same), Ex. X § 7 (providing for termination if the Fund, KML, or FIM entered liquidation), Ex. Y § 14 (providing for termination if KML or FIM entered liquidation), Ex. Z (same).

[54] Funds Opp'n Br. 13 n.13.

[55] Collection and production are not proscribed by any foreign law, and the Court can therefore issue such an order without application of the *Aérospatiale* balancing test.

[56] Funds Opp'n Br. at 16.

[57] *Id.* at 17 (emphasis omitted).

the Trustee is flawed because the Funds blatantly misstate the Trustee's position.  The Trustee

made the following objection to the Funds' requests for production:

> **Materials Prepared Post-December 11, 2008:**  The Trustee will
> not produce or log Documents prepared by and/or received by him,
> his counsel, his professionals and/or other agents from on or after
> December 11, 2008 *that are not relevant and/or are protected by
> the attorney work product doctrine, the attorney-client privilege,
> and/or any other applicable privileges or protections.*[58]

The Trustee has agreed to produce and has produced relevant and non-privileged documents

prepared or received by him after December 11, 2008.  For example, the Trustee has produced an

email dated December 12, 2008, authored by Eric Lazear, then FIM's Head of Operational Due

Diligence, in which Lazear stated that he believed BLMIS was a "scam" and that he had emailed

Grosso "all the details" to support his beliefs before Madoff confessed.[59]  He also recounts in the

email that he told Grosso that if Grosso did not own FIM and the Kingate Funds, Lazear would

have vetoed any investment with BLMIS.[60]  Under the Funds' argument for a hard cut-off date

for discoverability, the Lazear email, and any follow-up emails, would remain undisclosed.

There can be no dispute concerning the relevance of the Lazear email, and there could be

myriad such documents prepared after the Funds' entered liquidation that reflect actual

knowledge of or willful blindness to BLMIS's fraud before Madoff's arrest.  The Funds thus

object to being held to the same discovery standard as the Trustee, and with this Motion, the

Trustee simply asks the Court to strike the Funds' groundless objection.

---

[58] Loigman Decl. Ex. 12, at 5 (emphasis added).

[59] Gruppuso Reply Decl. Ex. C.

[60] *Id.*

## II. DISCOVERY HAS NEVER BEEN STAYED IN THIS CASE, AND NO NON-FUND DEFENDANT HAS MOVED FOR A STAY OF DISCOVERY.

### A. Paragraph 14 of the ET Order does not stay discovery in this proceeding.

The Non-Fund Defendants contend that paragraph 14 of the ET Order establishes a schedule for the litigation of this proceeding.  Paragraph 14, however, has no effect here.  Paragraph 14 concerns further proceedings on the Trustee's motion for limited discovery and leave to file amended complaints adding allegations pertinent to extraterritoriality or good faith.  The Trustee did not seek any such relief in connection with this proceeding, a fact that the Non-Fund Defendants do not dispute.[61]  The factual allegations of the Fourth Amended Complaint were sufficient to plead, through the acts and knowledge of the Non-Fund Defendants, the Funds' actual knowledge that BLMIS was not trading securities for the Funds' accounts.[62]  There is no basis to argue or conclude that paragraph 14 stays discovery against the Non-Fund Defendants.

### B. Paragraphs 12, 13, and 15 of the ET Order do not stay discovery in this proceeding.

The Non-Fund Defendants also suggest that paragraphs 12, 13, and 15 of the ET Order bar the Trustee from seeking discovery against them.  But as the Trustee demonstrated in his moving brief, those paragraphs only address the time for the defendants in certain identified adversary proceedings to respond to the Trustee's complaints in those proceedings.  This proceeding is not identified in Exhibit C to the ET Order as one in which the Trustee seeks

---

[61] *See* ET Order, Ex. C (showing that this proceeding was not listed as an adversary proceeding in which the Trustee sought leave to file an amended complaint or obtain discovery in connection with the filing of an amended complaint), Gruppuso Decl. Ex. A.

[62] *See generally* Fourth Am. Compl. ¶¶ 93-261.

discovery to amend the complaint,[63] another fact that the Non-Fund Defendants do not dispute.

Paragraphs 12, 13, and 15 therefore have no effect here, and there is no basis to argue or

conclude that those paragraphs stay discovery against the Non-Fund Defendants.[64]

### C.    The ET Decision does not stay discovery in this proceeding.

The Non-Fund Defendants next suggest that the District Court implicitly instructed this

Court to stay merits discovery as to all defendants that moved to dismiss on extraterritoriality

grounds.[65]  The Extraterritoriality Motion did not, however, seek a stay of merits discovery as to

all defendants that were party to the motion; the issue, therefore, was not briefed by the parties to

the motion.  The District Court never directed that merits discovery be stayed against any

defendant in any adversary proceeding pending this Court's consideration of the

Extraterritoriality Decision on remand.  And the District Court never ruled that the Trustee was

barred from obtaining merits discovery against defendants like the Non-Fund Defendants, as to

which the Trustee has pleaded facts imputing their acts and knowledge to the Funds to establish

the Funds' actual knowledge.  The District Court's one mention of discovery came in the context

of instructing that the Trustee would have to plead facts as then known to plead plausibly the

existence of domestic transfers.[66]  There is no basis to infer from that conclusion that the District

---

[63] *See* ET Order ¶ 4 & Ex. C (showing that this proceeding was not listed as an adversary proceeding in which the Trustee seeks discovery to amend), Gruppuso Decl. Ex. A.

[64] And even if it were to have effect here, the filing of an answer is not a prerequisite for commencing discovery.  *See* Fed. R. Civ. P. 26(d)(1).

[65] *See* Mem. of Law on Behalf of FIM Limited, FIM Advisers, Carlo Grosso & Federico Ceretti in Opp'n to Trustee's Mot. to Compel 7-9, ECF No. 259; Def. Kingate Management Limited's Mem. of Law in Opp'n to Trustee's Mot. to Compel Defs. to Produce Docs. & Participate in Disc. 2-4, ECF No. 265; Mem. of Law in Opp'n to SIPA Trustee's Mot. to Compel Defs. to Produce Docs. & Participate in Disc. 8-10, ECF No. 264; Mem. of Law in Opp'n to Trustee's Mot. to Compel Defs. to Participate in Disc. 3-4, ECF No. 258.

[66] *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*, 513 B.R. 222, 232 n.4 (S.D.N.Y. 2014).

Court intended to emplace a stay of merits discovery across 88 adversary proceedings—without allowing any party to be heard on the issue and without allowing this Court the opportunity to manage those proceedings based on their respective factual and procedural circumstances.

### D.    The Rules entitle the Trustee to pursue discovery from the Non-Fund Defendants as parties.

Neither the ET Order nor the ET Decision stays merits discovery in this proceeding. None of the Non-Fund Defendants has moved to stay discovery against them. The Non-Fund Defendants flatly rejected the Trustee's proposed stipulation to be so ordered that would have allowed discovery to commence as to them.[67]  The Trustee's Motion should be decided solely on the basis of the Trustee's rights under the Rules to proceed with discovery. In that regard, Local Bankruptcy Rule 7016-2 mandates an initial pretrial conference in all adversary proceedings. By operation of Rule 26(f), scheduling the conference sets a deadline for the parties to confer in accordance with Rule 26(f), following which the parties have the right under Rule 26(d)(1) to seek discovery from any other party.

Setting aside the obvious—that the Trustee wishes to pursue discovery to obtain evidence supporting his claims and to prepare his claims for summary judgment and trial—the Trustee has no burden to justify his desire or need to proceed with discovery against the Non-Fund Defendants. The Rules grant the Trustee *the right* to discovery. In the absence of any formal request for relief from those Rules, the Court should abide them, schedule a Rule 26(f) conference, and order the Non-Fund Defendants to attend.

---

[67] This Motion is not, as the Non-Fund Defendants contend, improper or premature because the Trustee did not confer with the Non-Fund Defendants following their rejection of the Trustee's proposal. That rejection was unequivocal and any conference would have been futile and unproductive.

**E.    The Non-Fund Defendants have not presented adequate grounds for the Court to stay, *sua sponte*, party discovery under the Rules.**

The Non-Fund Defendants essentially argue that the Court should order *sua sponte* a modified stay of discovery, asking the Court to shield them from discovery under the Rules as parties and require the Trustee to seek discovery from them under applicable foreign law.  The Non-Fund Defendants primarily rest their request for a stay on a stated intention to move to dismiss the Trustee's claims for lack of personal jurisdiction.  The Non-Fund Defendants have not, however, made any formal request for relief from this Court.  They have neither moved to dismiss for lack of personal jurisdiction under Rule 12(b)(2), which they have had years to prepare and file, nor moved for a stay of discovery under Rule 26(c).  The Non-Fund Defendants cannot escape their discovery obligations under the Rules based solely on a stated intention to— at some point in the future—file a dispositive motion under Rule 12(b)(2).[68]  If that were the law, a defendant could simply tell the plaintiff that it intended to so move and automatically obtain indefinite relief from discovery.  This Court should reject the Non-Fund Defendants' argument as procedurally improper and refuse to consider a *sua sponte* stay of discovery.

If the Non-Fund Defendants had moved to stay discovery, they would have had to make a "strong showing" that the Trustee's claims have no merit, demonstrate that they would be unduly burdened if discovery were not stayed, and show that the Trustee would not suffer any prejudice if discovery were stayed.[69]  Although the point is ancillary, to complete and balance the record on this issue, the Non-Fund Defendants have not presented any grounds that constitute good cause for a stay.

---

[68] *See Lithgow v. Edelmann*, 247 F.R.D. 61, 63 (D. Conn. 2007) (finding good cause did not exist to warrant a stay of all discovery pending ruling on defendant's anticipated motion to dismiss plaintiff's action).

[69] *See id.*

1.    *The Non-Fund Defendants have not made the requisite "strong showing" that the Trustee's claims have no merit.*

The Court denied the Funds' motion to dismiss the Trustee's claims to avoid and recover transfers made to the Funds and for equitable subordination of the Funds' customer claims. At the heart of the Court's decision was its conclusions that the Fourth Amended Complaint plausibly pleaded the Non-Fund Defendants had "actual knowledge" that Madoff was a fraud and that this knowledge should be imputed to the Funds.[70]  Discovery from the Non-Fund Defendants is critical to the Trustee's ongoing prosecution of his claims against the Funds, which is reason alone for allowing party discovery against the Non-Fund Defendants.[71]

The Non-Fund Defendants have not, moreover, shown that their likelihood of success on prospective motions to dismiss for lack of personal jurisdiction is so substantial that the Court

---

[70] *See* MTD Decision, 2015 WL 4734749, at *13-16 ("The FAC plausibly alleges that the Non-Fund Defendants, particularly Ceretti and Grosso, knew that Madoff was not engaging in the securities transactions he reported, and that many of the entries in the statements and trade confirmations depicted trades that could not have taken place."), *15 ("The Non-Fund Defendants were agents of the Kingate Funds, and their dealings with BLMIS and Madoff on the Funds' behalf fell within the scope of their duties. Ceretti and Grosso created the Funds to invest exclusively with BLMIS and created the Management Defendants to manage the Kingate Funds."), *16 ("The Funds were formed to raise money from shareholders to invest in BLMIS. The BLMIS investments were the focus of the Non-Fund Defendants' activities alleged in the FAC."), *16 ("The Funds were essentially conduits when it came to the management fees."), *35 ("Accordingly the Court concludes that the FAC pleads sufficient facts to permit imputation of the Non-Fund Defendants' knowledge to the Funds.").

[71] *See Kassover v. UBS A.G.*, No. 08 Civ. 2753 (LMM)(KNF), 2008 WL 5395942, at *4 (S.D.N.Y. Dec. 19, 2008) (concluding that "strong showing" of lack of merit was not made, and a stay of discovery was not warranted, when movant could not show that all claims lacked merit) (citing *In re Currency Conversion Fee Antitrust Litig.*, No. MDL 1409, 2002 WL 88278, at *2 (S.D.N.Y. Jan. 22, 2002) (denying motion to stay discovery when defendants did not show that motion to dismiss would dispose of all claims alleged)); *Hachette Distribution, Inc. v. Hudson Cnty. News Co.*, 136 F.R.D. 356, 359 (E.D.N.Y.1991) (concluding that discovery should proceed against moving defendants because, even if their motions to dismiss were granted, the defendants were important witnesses from whom the plaintiff would seek discovery as parties or non-parties).

should treat them now as non-parties for purposes of discovery.[72]  The Non-Fund Defendants do

not point to any deficiencies in the Trustee's general allegations of personal jurisdiction.[73]  And

this Court has already recognized that the "Non-Fund Defendants were agents of the Kingate

Funds,"[74] the purported "BLMIS investments were the focus of the Non-Fund Defendants'

---

[72] The Non-Fund Defendants do not object to the Trustee's pursuit of discovery under foreign law. Should the Non-Fund Defendants be dismissed on extraterritoriality grounds, they would still be subject to non-party discovery under the federal rules if the Court finds it has personal jurisdiction over them. *See, e.g., Dietrich v. Bauer*, No. 95 Civ. 7051 (RWS), 2000 WL 1171132, at *4-5 (S.D.N.Y. Aug. 16, 2000) (concluding that foreign non-party was subject to discovery under federal rules because court could exercise personal jurisdiction over non-party, stating, "[t]he discovery procedures provided by the Hague Convention . . . are neither the exclusive nor even, necessarily, the first means for obtaining discovery from a foreign entity, as compared with the Federal Rules of Civil Procedure"). For purposes of this motion, therefore, the Court need not weigh the relative strengths of the parties' respective arguments on the Extraterritoriality Motion. That said, the pendency of the Extraterritoriality Motion is not itself a sufficient ground to stay discovery. *See Mirra v. Jordan*, No. 15-CV-4100 (AT)(KNF), 2016 WL 889559, at *2 (S.D.N.Y. Feb. 29, 2016); *Lithgow*, 247 F.R.D. at 63; *Moran v. Flaherty*, No. 92 Civ. 3200, 1992 WL 276913, at *1 (S.D.N.Y. Sept. 25, 1992) ("[D]iscovery should not be routinely stayed simply on the basis that a motion to dismiss has been filed."). The Trustee believes that his arguments are strong and that the best that can be said for the Non-Fund Defendants is that the relative strengths and weaknesses of each party's arguments are equal, which is an insufficient basis for staying party discovery. *Hollins v. U.S. Tennis Ass'n*, 469 F. Supp. 2d 67, 78-79 (E.D.N.Y. 2006) (denying Defendants motion to stay discovery despite "a colorable showing raising doubts as the viability of the plaintiffs' complaint" because "a stay…would unduly impede the progress of the lawsuit").

[73] *See* Fourth Am. Compl. ¶¶ 81-92. The Non-Fund Defendants repeatedly cite to *Estate of Ungar v. Palestinian Auth.*, 400 F. Supp. 2d 541 (S.D.N.Y. 2005) for the false assertion that the Trustee must somehow make a prima facie case for personal jurisdiction *prior* to taking *any* discovery. This is simply false. First, the case involves a *non-party* seeking to quash a third-party subpoena. Second, the facts of *Ungar* could not be further from this action as it involves individuals killed in a terrorist attack in Israel and their estate suing foreign entities under the *Anti-Terrorism Act*. Next, the Court in *Ungar* looks to whether the personal jurisdiction exists with regard to civil judgments through ancillary enforcement proceedings under Rules 69 and 45 as to non-parties, which is completely inapplicable here. And finally, the Court makes clear— and the Non-Fund Defendants purposefully omit—that "[i]f the court chooses not to conduct a full-blown evidentiary hearing on the motion the plaintiff *need only* make a prima facie showing of jurisdiction through its own affidavits and supporting materials…The Court will 'construe jurisdictional allegations liberally.'" *Id.* at 549 (internal citations omitted) (emphasis added).

[74] MTD Decision, 2015 WL 4734749, at *15.

activities,"[75] and their "dealings with BLMIS . . . fell within the scope of their duties."[76]  The

Court further has observed that the Non-Fund Defendants sought and made exclusive

investments with BLMIS in New York[77] in connection with a strategy purportedly based on the

purchase and sale of securities listed on U.S. exchanges,[78] caused hundreds of millions of dollars

of cash to be delivered to accounts in New York to be invested by BLMIS at its sole discretion,[79]

and obtained through the Funds as conduits for the transfer of hundreds of millions of dollars in

management fees based upon their calculation of the net asset values of the Funds' customer

accounts,[80] which the Non-Fund Defendants created and were contractually obligated to

administer and monitor.[81]  This Court refused to dismiss the Trustee's Fourth Amended

Complaint in which he alleged that "the Non-Fund Defendants, particularly Ceretti and Grosso,

knew that Madoff was not engaging in the securities transactions he reported."[82]  The Non-Fund

Defendants' alleged knowledge of the largest financial fraud in history (operated out of BLMIS's

New York offices) and their actions to support it and profit from it more than satisfy the

---

[75] *Id.* at *16.

[76] *Id.* at *15.

[77] *Id.* at *15-16.

[78] *Id.* at *1.

[79] *Id.* at *8.

[80] *Id.* at *15-16, *35.

[81] *Id.* at *6.

[82] *Id.* at *6-9, *13.

requirements for the exercise of personal jurisdiction under New York's long-arm statute[83] and

federal law.[84]

> ### 2.    *The Non-Fund Defendants will not suffer any undue burden if discovery were to move forward.*

Regardless of what the Non-Fund Defendants may or may not be able to prove later, they

are parties to the case now and thus subject to this Court's jurisdiction until they prove

otherwise.  The Non-Fund Defendants are necessary and critical witnesses to the Trustee's

claims.  Because discovery from the Non-Fund Defendants is central to this case, denying the

Trustee's Motion would not spare "any resources in the long run, but would delay the ultimate

resolution of the case in this Court."[85]  It would be judicially more efficient for the Court to

compel discovery now from the Non-Fund Defendants, regardless of any prospective motions

they might file.[86]

---

[83] *See* N.Y. C.P.L.R. § 302(a) (conferring personal jurisdiction if the defendant or an agent of the defendant (1) transacted business in New York, (2) committed a tortious act within in New York, or (3) committed a tortious act outside of New York while reasonably suspecting effects in New York and deriving substantial revenue from international commerce).

[84] *See* 28 U.S.C. § 1332(a).  KML, FIM Grosso, Ceretti, and Citi Hedge are also defendants in a class action suit brought in the District Court that arises out of their same activities that made them defendants in this case.  They conceded to the District Court's exercise of personal jurisdiction over them when they filed substantive motions to dismiss and did not challenge personal jurisdiction.

[85] *Charvat v. NMP, LLC*, No. 2:09-CV-209, 2009 WL 3210379, at *2 (S.D. Ohio Sept. 30, 2009).

[86] *Hollins v. U.S. Tennis Ass'n*, 469 F. Supp. 2d 67, 79 (E.D.N.Y. 2006) ("Given the allegations in the complaints, the moving defendants are important witnesses in this case.  Even assuming the moving defendants are dismissed, it is likely that the plaintiffs will continue to conduct discovery regarding these defendants as non-parties.  Although the moving defendants correctly note that non-party discovery involves different mechanisms to ensure compliance, the absence of a stay would not create an undue burden on the moving defendants.  Discovery of the moving defendants is inevitable regardless of the outcome of their motion to dismiss.") (internal citations omitted).

The documents that the Trustee now seeks from the Non-Fund Defendants have previously been gathered and produced. According to the Funds' representations, KML, FIM, and the Trust Defendants gathered and produced 139,800 documents that constitute the Bermuda Productions. Similarly, KML's server—which operated as the Funds' de facto server—has been taken into custody and safely stored. Production of the data stored on it will be relatively straightforward.[87]

        3.      *The Non-Fund Defendants have failed to show that the Trustee will not suffer any prejudice if discovery is stayed against them.*

The Court's rulings concerning imputation of the Non-Fund Defendants' actual knowledge to the Funds established the Trustee's right to take discovery from the Non-Fund Defendants. A stay of discovery against the Non-Fund Defendants thus frustrates and prejudices the Trustee's discovery rights. Denying the Trustee his rights to obtain discovery from the Non-Fund Defendants under the Rules would substantially hinder and delay the progress of this proceeding, as the estimated time frame for discovery under foreign law, is four to six months. Proceeding with discovery under foreign law could also hinder an effective trial on the issues by the loss of key witnesses during the inevitable delays,[88] and the Non-Fund Defendants' ability to keep relevant information and documents from the Trustee. More delay and more maneuvering

---

[87] *Kassover v. UBS A.G.*, No. 08 Civ. 2753 (LMM)(KNF), 2008 WL 5395942, at *4 (S.D.N.Y. Dec. 19, 2008) (finding that defendant would not be burdened by producing to plaintiffs documents that had previously been gathered and produced).

[88] *See Town of Union, N.Y. v. Travelers Indem. Co.*, No. 89-CV-573, 1991 WL 64858, at *3 (N.D.N.Y. Apr. 26, 1991) (denying motion to stay discovery because essential facts "may become forever unavailable due to the passage of time"); *Dunn v. Albany Med. Coll.*, No. 09-CV-1031LEK/DEP, 2010 WL 2326137, at *7 (N.D.N.Y. May 5, 2010), *report and recommendation adopted in part*, No. 1:09-CV-1031LEK/DEP, 2010 WL 2326127 (N.D.N.Y. June 7, 2010) (denying stay because "considerable prejudice" would result, "given the passage of time since alleged events occurred," and such consideration "was sufficient to trump any other countervailing factors weighing in favor of a stay.").

about foreign law is not what this proceeding needs.  There is simply no sound reason to further

delay discovery.[89]

> **F.**    **The Court's ruling in *Luxalpha* to permit discovery of foreign defendants only through foreign discovery procedures should not apply to the circumstances presented in this proceeding.**

The Non-Fund Defendants suggest that the Court should follow its ruling in *Picard v.*

*UBS AG*, Adv. Pro. No. 10-04285 (SMB) ("*Luxalpha*") permitting the Trustee to pursue

discovery against the foreign defendants under the Hague Convention and applicable foreign

law, but not the Rules, while dispositive motion practice proceeds before the Court.  This

proceeding is different from *Luxalpha*.  Here, the Court has already denied the Funds' motion to

dismiss the Trustee's avoidance and recovery claims.  The Court has already ruled that the

Trustee has plausibly pleaded facts showing that the Non-Fund Defendants knew that BLMIS

was not trading securities for the Funds' accounts.  Unlike *Luxalpha*, the initial transfers made to

the Funds have survived a motion to dismiss.  And unlike *Luxalpha*, the Non-Fund Defendants

have already provided discovery relevant to the Trustee's claims in the Bermuda Action.

---

[89] *See Hachette Distribution, Inc. v. Hudson Cnty. News Co.*, 136 F.R.D. 356, 359
(E.D.N.Y.1991) (denying motion to stay discovery where fewer than all defendants moved to
dismiss because even if some defendants were dismissed, they would still be "at the very least,
material witnesses"); *Howard v. Galesi*, 107 F.R.D. 348 (S.D.N.Y. 1985) (denying motion to
stay discovery while motions to dismiss remain pending); *In re Horizon Cruises Litig.*, No. 94
CIV. 5270 (LMM), 1997 WL 762129, at *2 (S.D.N.Y. Dec. 10, 1997) ("it [is] obvious that, even
though [defendant] has a [personal jurisdiction] motion pending under . . . 12(b), the Court has
discretion to require substantive discovery until the personal jurisdiction issue is resolved").

## CONCLUSION

For all these reasons, and based upon the authorities cited above and in the Trustee's

moving brief, the Court should grant the Trustee's Motion.

Date:  May 31, 2016                                   **BAKER & HOSTETLER LLP**
       New York, New York

                                          By: */s/ David J. Sheehan*
                                              45 Rockefeller Plaza
                                              New York, New York 10111
                                              Telephone: (212) 589-4200
                                              Facsimile: (212) 589-4201
                                              David J. Sheehan
                                              Email: dsheehan@bakerlaw.com
                                              Geraldine E. Ponto
                                              Email:  gponto@bakerlaw.com
                                              Gonzalo S. Zeballos
                                              Email:  gzeballos@bakerlaw.com
                                              Anthony M. Gruppuso
                                              Email:  agruppuso@bakerlaw.com
                                              Marshall Mattera
                                              Email:  mmattera@bakerlaw.com

                                              *Attorneys for Irving H. Picard, Trustee for the
                                              substantively consolidated SIPA Liquidation of
                                              Bernard L. Madoff Investment Securities LLC
                                              and the estate of Bernard L. Madoff*