**Baker & Hostetler LLP**

45 Rockefeller Plaza

New York, New York 10111

Telephone: (212) 589-4200

Facsimile: (212) 589-4201

David J. Sheehan

Seanna R. Brown

Nicholas J. Cremona

Jorian L. Rose

Amy E. Vanderwal

Stephanie A. Ackerman

Hearing Date:  July 27, 2016

Hearing Time:  10:00 AM (EST)

Objection Deadline:  July 13, 2016

*Attorneys for Irving H. Picard, Trustee for the*
*Substantively Consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities LLC*
*and the Estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (SMB) |
| Plaintiff-Applicant, | SIPA Liquidation |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |

**TRUSTEE'S MOTION AND MEMORANDUM TO AFFIRM HIS DETERMINATIONS DENYING CLAIMS OF CLAIMANTS HOLDING INTERESTS IN PALKO ASSOCIATES, GLORIA JAFFE INVESTMENT PARTNERSHIP, AND THE MILLER PARTNERSHIP**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ............................................................................ 1

BACKGROUND ............................................................................................... 2

    A.    THE COMMENCEMENT OF THE SIPA PROCEEDING ................................ 2

    B.    THE PARTNERSHIPS' STRUCTURE, BLMIS ACCOUNTS, AND
          CLAIMS ............................................................................................ 3

          1.    Palko Associates .................................................................... 4

          2.    Gloria Jaffe Investment Partnership........................................ 6

          3.    The Miller Partnership ........................................................... 8

    C.    THE BLMIS ACCOUNT RECORDS.............................................. 10

    D.    THE CLAIMS.................................................................................. 10

    E.    THE CUSTOMER DECISIONS ...................................................... 11

          1.    The Initial Feeder Fund Motion........................................... 11

          2.    The ERISA Motion .............................................................. 13

          3.    Other Customer Motions....................................................... 14

ARGUMENT.................................................................................................. 16

CONCLUSION................................................................................................ 23

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*In re Adler, Coleman Clearing Corp.*,
  216 B.R. 719 (Bankr. S.D.N.Y. 1998) ......................................................................17

*Aozora Bank Ltd. v. Sec. Inv'r Prot. Corp. (In re Bernard L. Madoff Inv. Sec.
  LLC)*,
  480 B.R. 117 (S.D.N.Y. 2012) ..........................................................................11, 12

*Appleton v. First Nat'l Bank of Ohio*,
  62 F.3d 791 (6th Cir. 1995) ....................................................................................17

*In re Beacon Assocs. Litig.*,
  745 F. Supp. 2d 386 (S.D.N.Y. 2010) .......................................................................2

*In re Bernard L. Madoff Inv. Sec. LLC*,
  654 F.3d 229 (2d Cir. 2011) ..............................................................2, 13, 17, 19

*In re Klein, Maus & Shire, Inc.*,
  301 B.R. 408 (Bankr. S.D.N.Y. 2003) ....................................................................22

*Kruse v. Sec. Inv'r Prot. Corp.*,
  708 F.3d 422 (2d Cir. 2013) ........................................................................... *passim*

*In re Lehman Bros. Inc.*,
  462 B.R. 53 (Bankr. S.D.N.Y. 2011) ......................................................................17

*In re Lehman Bros., Inc.*,
  791 F.3d 277 (2d Cir. 2015) ....................................................................................17

*Mishkin v. Siclari (In re Adler, Coleman Clearing Corp.)*,
  277 B.R. 520 (Bankr. S.D.N.Y. 2002) .................................................................3, 22

*Sec. Inv'r Prot. Corp. v. 2427 Parent Corp. (In re Bernard L. Madoff Inv. Sec.
  LLC)*,
  779 F.3d 74 (2d Cir. 2015) ......................................................................................20

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L.
  Madoff Inv. Sec. LLC)*,
  454 B.R. 285 (Bankr. S.D.N.Y. 2011) .........................................................11, 12, 22

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L.
  Madoff Inv. Sec. LLC)*,
  515 B.R. 161 (Bankr. S.D.N.Y. 2014) ...............................................14, 15, 19, 22

# TABLE OF AUTHORITIES
## (continued)

*Sec. Inv'r Prot. Corp. v. Jacqueline Green Rollover Account*,
  Nos. 12 Civ. 1039 (DLC), 12 Civ. 1139 (DLC), 2012 WL 3042986 (S.D.N.Y.
  July 25, 2012).........................................................................................................13, 14

*Sec. Inv'r Prot. Corp. v. Morgan, Kennedy & Co.*,
  533 F.2d 1314, 1318 (2d Cir. 1976)................................................13, 17, 18, 21

*SEC v. Madoff*,
  No. 1:08-cv-10791-LLS, 2008 WL 5197070 (S.D.N.Y. filed Dec. 11, 2008) .........................2

*Stafford v. Giddens (In re New Times Sec. Servs., Inc.)*,
  463 F.3d 125 (2d Cir. 2006)...............................................................12, 17, 22

## Statutes

15 U.S.C. § 78aaa *et seq.* .......................................................................................1

15 U.S.C. § 78eee(a)(4) ...........................................................................................2

15 U.S.C. § 78eee(b)(3) ...........................................................................................2

15 U.S.C. § 78eee(b)(4) ...........................................................................................2

15 U.S.C. § 78fff-1(a) ..............................................................................................2

15 U.S.C. § 78fff-2(b) ............................................................................................17

15 U.S.C. § 78fff-3(a) ..............................................................................................3

15 U.S.C. § 78*lll*(2)........................................................................................ *passim*

15 U.S.C. § 78*lll*(4).................................................................................................3

15 U.S.C. § 78*lll*(11)...........................................................................................3, 20

15 PA. STAT. § 8313(a) (West 2016) .....................................................................19

CAL. CORP. CODE § 16203 (West 2016) ...............................................................19

Dodd-Frank Wall Street Reform and Consumer Protection Act. Pub. L. No. 111-
  203, § 983(b), 124 Stat. 1931 (2010) .................................................................17

MINN. STAT. § 323A.0203 (West 2016) ................................................................19

## Rules

Fed. R. Civ. P. 36(a)(3).................................................................................5, 7, 9, 21

**TABLE OF AUTHORITIES**
**(continued)**

<u>Page(s)</u>

**Other Authorities**

1–12 *Collier on Bankruptcy* ¶ 12.12 (16th ed. 2012) ....................................................................13

Irving H. Picard, as trustee ("Trustee") for the substantively consolidated liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15 U.S.C. § 78aaa *et seq.* ("SIPA"),[1] and the chapter 7 estate of Bernard L. Madoff ("Madoff"), respectfully submits this combined motion and memorandum of law (the "Motion") to affirm the denial of six (6) claims filed by claimants (the "Objecting Claimants") who objected to the Trustee's determinations and who held interests in one of the following BLMIS account holders: Palko Associates, the Gloria Jaffe Investment Partnership, or the Miller Partnership (collectively, the "Partnerships"). The Objecting Claimants are specifically identified in Exhibit 2 to the Declaration of Vineet Sehgal ("Sehgal Decl.") filed herewith. This Motion is based upon the law set forth below as well as the facts set forth in the accompanying Sehgal Declaration and the Declaration of Stephanie Ackerman ("Ackerman Decl.").

## PRELIMINARY STATEMENT

The Objecting Claimants seek customer status in this SIPA proceeding, despite the fact that they did not have accounts in their names and had no direct financial relationship with BLMIS. Instead, they invested in the Partnerships, each of which had a BLMIS account, invested partnership assets with BLMIS, and filed its own claim with the Trustee.[2] The case is governed by the Second Circuit decision *Kruse v. Sec. Inv'r Prot. Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*, 708 F.3d 422 (2d Cir. 2013) and the many related decisions in this SIPA proceeding, referenced in Section E *infra*, involving the question of who is a "customer" under SIPA. The current Motion seeks to apply these decisions to the Objecting Claimants through

---

[1] For convenience, subsequent references to sections of the Securities Investor Protection Act shall be denoted simply as "SIPA § __."

[2] The Partnerships have been grouped together in this Motion because the Trustee believes that they represent all of the remaining general partnership BLMIS account holders for which a number of investors or partners also claim "customer" status.

entry of an order affirming the Trustee's denial of their claims as listed in Exhibit 2 to the

Declaration of Vineet Sehgal, disallowing their claims, and overruling the related claims

objections on the grounds that Claimants are not "customers" as such term is used at SIPA §

78*lll*(2).[3]

## BACKGROUND

### A.    THE COMMENCEMENT OF THE SIPA PROCEEDING

The basic facts of the BLMIS fraud are widely known and have been recounted in

numerous decisions.  *See, e.g.*, *In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d 229, 231 (2d

Cir. 2011); *In re Beacon Assocs. Litig.*, 745 F. Supp. 2d 386, 393–94 (S.D.N.Y. 2010).   On

December 11, 2008, the Securities and Exchange Commission ("SEC") filed a complaint in the

District Court against Madoff and BLMIS, captioned *SEC v. Madoff*, No. 1:08-cv-10791-LLS,

2008 WL 5197070 (S.D.N.Y. filed Dec. 11, 2008), alleging fraud through the investment advisor

activities of BLMIS.   The SEC consented to the consolidation of its case with an application of

the Securities Investor Protection Corporation ("SIPC").   Thereafter, SIPC filed an application

under SIPA § 78eee(a)(4) alleging that because of its insolvency, BLMIS customers needed

SIPA protection.   The District Court appointed the Trustee under SIPA § 78eee(b)(3) and

removed the proceeding to this Court under SIPA § 78eee(b)(4).

Under SIPA, the Trustee is responsible, among other things, for recovering and

distributing customer property to a broker's customers, assessing claims, and liquidating other

assets of the firm for the benefit of the estate and its creditors.   A SIPA trustee has the general

powers of a bankruptcy trustee, in addition to the powers granted by SIPA.   SIPA § 78fff-1(a).

The statutory framework for the satisfaction of customer claims in a SIPA liquidation proceeding

---

[3] The Trustee reserves all other bases for objections to the claims that are the subject of the Motion.

provides that "customers," as defined in SIPA § 78*lll*(2), share pro rata in "customer property," defined in SIPA § 78*lll*(4), to the extent of their "net equity," defined in SIPA § 78*lll*(11).  For each customer with a valid net equity claim, if the customer's share of customer property does not make him or her whole, SIPC advances funds to the SIPA trustee up to the amount of the customer's net equity, not to exceed $500,000 (the amount applicable to this case).  SIPA § 78fff-3(a).  It is the customer's burden to demonstrate he or she is entitled to customer status.  *Mishkin v. Siclari (In re Adler, Coleman Clearing Corp.)*, 277 B.R. 520, 557 (Bankr. S.D.N.Y. 2002) ("[I]t is well-established in the Second Circuit that a claimant bears the burden of proving that he or she is a 'customer' under SIPA.").

On December 23, 2008, this Court entered a Claims Procedures Order.  *See* ECF No. 12.  Pursuant to that order, the Trustee determines claims eligible for customer protection under SIPA, claimants may object to the Trustee's determination of a claim by filing an objection in this Court, after which the Trustee requests a hearing date for the objection and notifies the objecting claimant thereof.  *Id.*

**B.      THE PARTNERSHIPS' STRUCTURE, BLMIS ACCOUNTS, AND CLAIMS**

The Objecting Claimants invested into one or more of the Partnerships.  One (1) claim was filed by an Objecting Claimant relating to Palko Associates; two (2) claims were filed by Objecting Claimants relating to the Gloria Jaffe Investment Partnership; and three (3) claims were filed by Objecting Claimants relating to The Miller Partnership.  *See* Sehgal Decl., ¶11, Ex. 2.  The claims of the Partnerships themselves are not at issue in this Motion.  However, the Motion does seek to overrule that portion of The Miller Partnership's objection only insofar as it seeks customer status for the Objecting Claimants.[4]

---

[4] *See* ECF No. 00576 (Oct. 27, 2009).  The Miller Partnership's claim, number 002285, is not at issue in this motion.

1.    <u>**Palko Associates**</u>

BLMIS Account number 1CM563 is an account held in the name of Palko Associates opened on or about January 15, 1999. Sehgal Decl., Ex. 4, AMF00266235. The account opening documents were signed by Paul Kozloff as the general partner of Palko Associates. Sehgal Decl., Ex. 4, AMF00266273 – 280. Mr. Kozloff also signed a BLMIS "Partnership Account Agreement" confirming that Palko Associates was a "duly organized partnership" and attesting that Mr. Kozloff is the general partner. Sehgal Decl., Ex. 4, AMF00266280. The BLMIS customer file reflects that over the life of account 1CM563, virtually all of the correspondence between BLMIS and the accountholder was with Paul Kozloff, in his capacity as general partner.[5]  *See generally id.*

Palko Associates was a general partnership organized in the Commonwealth of Pennsylvania in 1986. Sehgal Decl., Ex. 4, AMF00266281. It was governed by its Partnership Agreement dated October 1, 1986, *id.*, and by Pennsylvania law.[6] According to Section 1 of the agreement, the partnership was formed "for the purpose of investment in marketable securities, bonds and other types of investments." *Id.* Under Section 6, "[a]n individual capital account [was] maintained for each partner," Sehgal Decl., Ex. 4, AMF00266282, based on their initial contribution as set forth in Exhibit A to the agreement, adjusted for deposits and withdrawals. *Id.*; Sehgal Decl., Ex. 4, AMF00266281. According to Section 4 of the partnership agreement, an "Executive Secretary" was to be elected annually by the partners who owned the majority of the partnership assets and initially, the partners elected Paul Kozloff. *Id.* As Executive Secretary, Mr. Kozloff had "physical possession of the books and records of the partnership, . . . [gave]

---

[5] Only one deposit sent to BLMIS on Palko Associates letterhead was sent by Robin S. Garl, an associate of Mr. Kozloff, all withdrawal requests were from Mr. Kozloff. *See* Sehgal Decl., Ex. 4, AMF00266249.

[6] The partnership agreement was amended on March 1, 1987 to add Northeastern Distributing Co., Inc. as a partner. No additional substantive changes were made to the agreement. *See* Sehgal Decl., Ex. 4, AMF00266288 – 291.

such notices to the partners as may, from time to time, be required or deemed advisable, and [performed] the necessary ministerial functions of the partnership. *Id.*

According to Section 7 of the agreement, "the net profits or net losses of the partnership shall be allocated or charged to the partners, as of each valuation date, in the ratios of their respective capital accounts on that date." Sehgal Decl., Ex. 4, AMF00266282. Section 11 of the agreement limits the ability of partners to sell or assign their interests in the partnership, enter into agreements on behalf of the partnership, borrow or loan money on behalf of the partnership, release any claim on behalf of the partnership, or otherwise act in any way to harm the partnership. Sehgal Decl., Ex. 4, AMF00266282 – 283. The Objecting Claimant, Carol A. Kozloff, is neither identified in the customer file, nor mentioned as a customer in the BLMIS books and records for purposes of BLMIS Account No. 1CM563. *See generally*, Sehgal Decl., Ex. 4.

The Palko Associates Objecting Claimant did not respond to the Trustee's discovery requests. By failing to respond to the requests for admissions, Ms. Kozloff admitted (among other things) that she did not have an account in her name at BLMIS, never deposited cash or securities with BLMIS, did not receive investment statements, correspondence or tax statements from BLMIS, did not have any control, investment discretion or decision-making power over any investments at BLMIS, and that her only relationship to BLMIS existed by way of her relationship to the partnership. *See generally* Ackerman Decl. ¶¶13, 14, Ex. 3; *see also* Fed. R. Civ. P. 36(a)(3).

Palko Associates filed a customer claim for the entire account. The Trustee settled a preferential payment lawsuit with Palko Associates and allowed its claim in part.[7]

---

[7] The adversary proceeding was captioned *Picard v. Palko Assoc.*, Adv. Pro. 10-05240(SMB). A settlement was reached and approved by this Court in August 2015. *See Picard v. Palko Assoc.*, ECF No. 15 (Aug. 12, 2015). As a

## 2.    Gloria Jaffe Investment Partnership

BLMIS Account No. 1EM091 is an account opened on or about July 29, 1992 in the name of Gloria S. Jaffe. Sehgal Decl., Ex. 7, AMF00090069-79. On September 22, 1993, Gloria S. Jaffe requested that the account name be changed to Gloria Jaffe Investment Partnership ("Jaffe Partnership") and completed additional account opening documents.[8] Sehgal Decl., Ex. 7, AMF00090059; AMF0009005965-67. The account opening documents were signed by Gloria S. Jaffe initially on her own behalf and then, after the name change, on behalf of the Jaffe Partnership. Sehgal Decl., Ex. 7, AMF00090065-79.

The Jaffe Partnership was a general partnership organized in the state of Minnesota in 1993. According to Section 4, "[t]he purpose of the Partnership shall be to place money in investments and share proportionately in accordance with their respective capital accounts all profits and losses associated with the mutual ownership of said account." Sehgal Decl., Ex. 7, AMF00090061. The Jaffe Partnership was governed by the laws of the State of Minnesota. Sehgal Decl., Ex. 7, Section 9, AMF00090064. Under Section 7.1(a) of the agreement, each partner had an "individual capital account" that "consist[ed] of the Partners' contribution of capital" increased to account for any additional contributions or profits and decreased by any withdrawals and/or "the Partner's share of any Partnership losses." Sehgal Decl., Ex. 7, AMF00090062. Pursuant to Section 7.3 of the agreement, "[e]ach partner's respective percentage interest in the profits and losses of the Partnership shall be maintained in accordance

---

result of that settlement, Palko Associates' customer claim was allowed in part and distributions have been made to Palko Associates.

[8] The partnership agreement states that the name of the partnership is the "Gloria Jaffe Investment Partnership." Sehgal Decl., Ex. 7, AMF00090061. Gloria S. Jaffe requested that BLMIS rename the account to Gloria Jaffe Investment Partnership. *Id.* at AMF00090059. However, BLMIS records identify the name as "Gloria S. Jaffe Investment Partnership." *Id.* at AMF00090065. To avoid confusion, this Motion uses the legal name of the entity, Gloria Jaffe Investment Partnership.

with his or her respective percentage ownership in the Partnership at any particular time." Sehgal Decl., Ex. 7, AMF00090063.

According to the BLMIS customer file, all but three requests for withdrawals from the Jaffe Partnership account were signed by Gloria S. Jaffe.  *See* Sehgal Decl., Ex. 7, AMF00090013-32.  Although the Objecting Claimants' names appear in the customer file for 1EM091 as investors or partners of the accountholder, it is clear that BLMIS required approval from Gloria S. Jaffe for any changes and all withdrawals from the account, including those requested by Objecting Claimants Collette Jaffe and Phillip Jaffe.  These withdrawals were requested in the form of a check and were sent to Gloria S. Jaffe as directed by a representative of the Partnership.  *See* Sehgal Decl., Ex. 7, AFM00090005; AFM00090028; AMF00090038.  While identified as partners of the Jaffe Partnership, the Jaffe Partnership Objecting Claimants' correspondence with BLMIS was strictly by and on behalf of their mother, Gloria S. Jaffe, and not to exercise control over the account for their own purposes.[9]

Neither of the Jaffe Partnership Objecting Claimants responded to the Trustee's discovery requests.  By failing to respond to the requests for admissions, the Objecting Claimants admitted (among other things) that they did not have an account in their name at BLMIS, they never deposited cash or securities with BLMIS, did not receive investments statements, correspondence or tax statements from BLMIS, they did not have any control, investment discretion or decision-making power over any investments at BLMIS, and that their only relationship to BLMIS existed by way of their relationship to the partnership.  *See generally* Ackerman Decl. ¶¶15-17, Exs. 4, 5; *see also* Fed. R. Civ. P. 36(a)(3).

---

[9] On or around November 20, 2007, North Shore Mortgage and Financial Services requested account verification on behalf of Collette Jaffe.  BLMIS notations show that approval by Gloria Jaffe was required and granted prior to BLMIS's response.  Sehgal Decl., Ex. 7, AMF00090049-50.

The Jaffe Partnership filed a claim for the entire account.  The Trustee denied the claim in its entirety because the amount of money that the Jaffe Partnership withdrew from the account was greater than the amount that was deposited, making the account a "net winner."  Thus, a determination letter was sent to the Jaffe Partnership denying its customer claim.[10]

### 3.    <u>The Miller Partnership</u>

The accountholder of BLMIS Account 1ZA977 is The Miller Partnership.  *See* Sehgal Decl., Ex. 11, AMF00025960.  Prior to January 1, 1998, the account was held in the name of "Danessa Miller as Trustee for the EDM Trust #1 Dated September 3, 1992" at which time, Ms. Miller requested that BLMIS change her "individual" account to a "partnership" account.  Sehgal Decl., Ex. 11, AMF0025960.  Ms. Miller signed the BLMIS Partnership Account Agreement as General Partner of The Miller Partnership. *Id.*, AMF00025954.   She also identified Steven F. Miller as a general partner on this agreement. *Id.*

The BLMIS customer file for 1ZA977 shows that all correspondence on behalf of the Miller Partnership was between Danessa Miller or Steven Miller and BLMIS in their capacities as general partners.  *See, e.g.*, Sehgal Decl., Ex. 11, AMF00025943; AMF00025945.  Although the Miller Partnership did not produce any governance documents to the Trustee, Ms. Miller represented to BLMIS that it is a California partnership and provided a federal tax identification number for The Miller Partnership.  Sehgal Decl., Ex. 11, AMF00025960. Furthermore, the Miller Partnership selected California as the choice of law in the BLMIS customer agreement. Sehgal Decl., Ex. 11, AMF00025957-59.

---

[10] Objection docket 3170 was filed on behalf of the Jaffe Partnership as well as the Objecting Claimants ("Jaffe Partnership Objection").   The Motion seeks to overrule Jaffe Partnership Objection only insofar as it seeks customer status for the Objecting Claimants.  The remainder of the Jaffe Partnership Objection will be addressed in a future motion.

None of the Miller Partnership Objecting Claimants responded to the Trustee's discovery requests. By failing to respond to the requests for admissions, the Miller Partnership Objecting Claimants admitted (among other things) that they did not have an account in their name at BLMIS, they never deposited cash or securities with BLMIS, did not receive investments statements, correspondence or tax statements from BLMIS in his/her or its name, they did not have any control, investment discretion or decision-making power over any investments at BLMIS, and that their only relationship to and correspondence with BLMIS existed by way of their relationship to the partnership. *See generally* Ackerman Decl. ¶¶18-21, Exs. 6-8; *see also* Fed. R. Civ. P. 36(a)(3).

The Miller Partnership filed a customer claim for the entire account. The Trustee denied the claim in its entirety because based on the Trustee's analysis, the amount of money that the Miller Partnership withdrew from the account was greater than the amount that was deposited, making the account a "net winner." Thus, a determination letter was sent to the Miller Partnership denying its customer claim.[11]

\*          \*          \*          \*          \*          \*

As discussed *infra*, under Pennsylvania, California and Minnesota law, the Partnerships were treated as entities that owned their own property. Each had a BLMIS account in its name according to the books and records of BLMIS and entrusted its property to BLMIS for the purposes of purchasing securities. None of the Partnerships was a bank, broker, or dealer. Each of the Partnerships filed its own claim with the Trustee.

---

[11] As stated above, the Motion does not seek to disallow the claim of the account holder, the Miller Partnership, or seek to overrule the objection to the denial of that claim. (the "Miller Partnership Objection"), ECF No. 0576. However, the Miller Partnership Objection was also filed on behalf of Objecting Claimants EDM Trust #1 dated September 3, 1992, Steven F. Miller, and Danessa Miller. This motion seeks to overrule only that portion of the Miller Partnership Objection that seeks customer status for those Objecting Claimants. The remainder of the objection will be addressed in a future motion.

C.    **THE BLMIS ACCOUNT RECORDS**

The Partnerships each maintained an account in its own name (the "Accounts," and each, an "Account") with BLMIS.  The Objecting Claimants did not.  Sehgal Decl., ¶9, Exs. 1-3.  The records of BLMIS reflect money deposited or withdrawn by and on behalf of the Partnerships, and not by the Objecting Claimants individually.  *See* Sehgal Decl., ¶¶ 16, 19, 23, Exs. 4, 7, 11. All of the Objecting Claimants admit that BLMIS sent Account statements and related communications to the Partnerships, not the Objecting Claimants.

Because the Partnerships each maintained an Account at BLMIS, and made deposits into and withdrawals from that Account, the books and records of BLMIS reflect the amounts owing and owed by the BLMIS estate for that Account.  The books and records of BLMIS do not, in contrast, reflect deposits or withdrawals directly to or from BLMIS by the individual Objecting Claimants with regard to any Partnership's BLMIS Account.  They also do not show what amounts individual Objecting Claimants invested in, or withdrew from, the Partnerships.  *See id.* It was each Partnership that had the right to demand, on behalf of the Partnership, return of the property entrusted to BLMIS for its Account, and each Partnership that is accordingly entitled to a customer claim to the extent of its net equity.

D.    **THE CLAIMS**

The claims at issue in this Motion involve interests in the Partnerships.  Sehgal Decl. ¶¶9-12, Exs. 1-3.  The Objecting Claimants, the six (6) claims filed by them, and the objections to determination of those claims, are specifically identified in Exhibits 2 and 3 to the Sehgal Declaration.  The Trustee denied their claims because they lacked BLMIS accounts and were not customers of BLMIS.  Sehgal Decl. ¶¶11. 14, 15.  Collectively, the Objecting Claimants filed three (3) docketed objections to the Trustee's determination of their claims.  Sehgal Decl. ¶¶9 -

12, Exs. 1-3.[12]  This Motion addresses all objections to the determination of the specified claims

by Objecting Claimants who are identified on Exhibit 2 of the Sehgal Declaration.

Since receiving the three (3) docketed objections to the claims determinations, the

Trustee served discovery requests on each of the Objecting Claimants seeking to determine their

basis for claiming customer status, and inquiring into deposits, payments, communications,

account openings, and their relationship with the account holder.   None of the Objecting

Claimants responded.  *See* Ackerman Decl. ¶¶8, 13, 14.

## E.    THE CUSTOMER DECISIONS

There have been thirteen prior decisions in this proceeding dealing with whether

investors in BLMIS accountholders could be treated as "customers" under SIPA; all of the

decisions said they could not.

### 1.    The Initial Feeder Fund Motion

The Trustee's first motion regarding the definition of "customer" under SIPA was the

Trustee's Motion To Affirm Trustee's Determinations Denying Claims of Claimants Without

BLMIS Accounts In Their Names, Namely, Investors in Feeder Funds, filed on June 11, 2010,

ECF No. 2416 (the "Initial Feeder Fund Motion").   On June 28, 2011, this Court issued its

memorandum decision and order affirming the Trustee's denial of the claims.  *Sec. Inv'r Prot.*

*Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff Inv. Sec. LLC)*, 454 B.R. 285

(Bankr. S.D.N.Y. 2011), *aff'd sub nom. Aozora Bank Ltd. v. Sec. Inv'r Prot. Corp. (In re*

*Bernard L. Madoff Inv. Sec. LLC)*, 480 B.R. 117 (S.D.N.Y. 2012), *aff'd sub nom. Kruse v. Sec.*

*Inv'r Prot. Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*, 708 F.3d 422 (2d Cir. 2013).

---

[12] As explained *supra*, this Motion seeks to also resolve that portion of the Miller Partnership's Objection insofar as
it seeks customer status for the Miller Partnership Objecting Claimants.

The Court found that, in light of the plain language of SIPA and relevant case law, the claimants in the Initial Feeder Fund Motion did not qualify as "customers" under SIPA. *In re Bernard L. Madoff Inv. Sec. LLC*, 454 B.R. at 290. The Court held that the claimants invested in, not through, those feeder funds, and had no individual accounts at BLMIS. *Id.* at 297. It was the feeder funds that entrusted their monies with BLMIS for the purpose of trading or investing in securities—the touchstone of "customer" status—whereas the claimants purchased interests in the feeder funds. *Id.* at 299. The Court held that absent a direct relationship with BLMIS, the claimants sought a definition of "customer" that stretched the term beyond its limits. *Id.* at 302.

After the District Court affirmed, *Aozora Bank Ltd.*, 480 B.R. 117 (S.D.N.Y. 2012), the claimants appealed to the Second Circuit, which also affirmed. The Second Circuit confirmed that "[j]udicial interpretations of 'customer' status support a narrow interpretation of the SIPA's provisions." *Kruse*, 708 F.3d at 426 (quoting *Stafford v. Giddens (In re New Times Sec. Servs., Inc.)*, 463 F.3d 125, 127 (2d Cir. 2006) (explaining that "the critical aspect of the 'customer' definition" was "the entrustment of cash or securities to the broker-dealer for the purposes of trading securities.")). The claimants failed to meet this fundamental requirement because the money sent to BLMIS belonged to the accountholders, not to the individual claimants, and the individual claimants therefore failed to establish that they had entrusted cash or securities to BLMIS. *Kruse*, 708 F.3d at 426–27. The Second Circuit also found that the individual claimants did not exhibit other indicia of customer status in their dealings (or lack of dealings) with BLMIS, including that they did not exert any control over the accounts at issue and that they were not reflected in BLMIS records. *Id.*

The Second Circuit held that the interests "sold by the Feeder Funds to investors . . . did not confer an ownership interest in money that the Feeder Funds ultimately invested in BLMIS."

*Id.* at 427.  Thus, "regardless of their intent, appellants never entrusted *their* cash or securities to

BLMIS and, thus, fail to satisfy this 'critical aspect of the "customer" definition.'"  *Id.* (quoting

*In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d at 236 (internal quotation marks omitted)); *see*

*Sec. Inv'r Prot. Corp. v. Morgan, Kennedy & Co.*, 533 F.2d 1314, 1318 (2d Cir. 1976) ("*Morgan*

*Kennedy*"); *see also Kruse*, 708 F.3d at 427-28 (citing 1–12 *Collier on Bankruptcy* ¶ 12.12 (16th

ed. 2012) ("[A] claimant will not be entitled to customer protection under SIPA unless the debtor

actually receives the claimant's cash or securities; the debtor must actually have come into

possession or control.")).

### 2.   **The ERISA Motion**

While the appeals of the Feeder Fund Decision were pending, the Trustee also filed a

motion to address arguments that were raised by claimants without BLMIS accounts who were

benefit plans or benefit plan participants and who sought to use the Employee Retirement

Income Security Act ("ERISA") as a basis for determining their customer status.[13]  *See* ECF No.

4521.  The District Court withdrew the reference and granted the motion.

The District Court noted that the first two of the three ways to qualify as a "customer"

under SIPA § 78*lll*(2), "presume that a customer must have a securities account with the debtor,"

and that the ERISA claimants also did not qualify under the third method of having "deposited

cash with the debtor for the purpose of purchasing securities."  *Sec. Inv'r Prot. Corp. v.*

*Jacqueline Green Rollover Account*, Nos. 12 Civ. 1039 (DLC), 12 Civ. 1139 (DLC), 2012 WL

3042986 *3 (S.D.N.Y. July 25, 2012).  That was so because none of the claimants "owned any

cash deposited with BLMIS.  Rather, . . . in each case this cash was owned by the third-party

entity in which the claimant invested, and which had a BLMIS account in its name."  *Id.* at *5.

---

[13] Prior to the hearing on the Initial Feeder Fund Motion, the Court had removed from the scope of the motion the
question of whether ERISA affects "customer" status under SIPA.

The District Court also rejected arguments that fiduciary responsibilities could suffice to create a "customer" relationship. *Id*. at *12.

### 3.    **Other Customer Motions**

Additional SIPA "customer" motions followed, each of which was determined in favor of the Trustee.  On August 21, 2013, the Bankruptcy Court issued its Bench Memorandum Granting Trustee's Second Motion to Affirm Trustee's Determinations Denying Claims of Claimants Who Invested in Certain Feeder Funds and Did Not Have BLMIS Accounts in Their Names.  *See* ECF No. 5450 ("the Second Feeder Fund Decision").  Noting that prior decisions established that the burden is on the claimant to establish that he is a "customer" entitled to SIPA protection, and that such showing is not easily met, this Court concluded that the claimants had failed to establish their "customer" status.  The Bankruptcy Court noted that "they had no securities accounts at BLMIS, were not known to BLMIS, lacked privity and any financial relationship with BLMIS." They further "lacked property interest in any feeder fund account assets at BLMIS, entrusted no cash or securities to BLMIS, had no investment discretion over feeder fund assets invested with BLMIS, received no accounts statements or other communications from BLMIS and had no transactions reflected on the books and records at BLMIS."  Second Feeder Fund Decision at 4.

On August 22, 2014, this Court issued its Memorandum Decision Granting Motion To Affirm Trustee's Determinations Denying Claims Of Claimants Who Invested In Certain ERISA Plans.  *See generally Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff Inv. Sec. LLC)*, 515 B.R. 161 (Bankr. S.D.N.Y. 2014) ("ERISA Claimant Decision"). Again holding that the burden is on the claimant to establish that he is a customer, this Court concluded that a claimant who wished to qualify as a person who has deposited cash with the debtor for the purposes of purchasing securities must show that she entrusted her "own assets directly through an account maintained in her own name rather than indirectly through a fund

that then entrusted the fund's assets through an account maintained in the fund's name." *Id.* at 168 (internal citations omitted). This Court further noted that "not every victim of a broker-dealer's fraud is a 'customer,'" and that even the fact that a claimant exercised some control over her own investments in the fund or the fund's investments in BLMIS was not sufficient to meet "the narrow definition of customer under SIPA." *Id.* at 166, 168.

On February 25, 2015, this Court read into the record a decision granting the Trustee's Motion And Memorandum To Affirm His Determinations Denying Claims Of Claimants Holding Interests In S&P or P&S Associates, General Partnerships ("S&P Decision"). This Court explained that the indicia of customer status are: (i) a direct financial relationship with BLMIS; (ii) a property interest in the funds invested directly with BLMIS; (iii) securities accounts with BLMIS; (iv) control over the account holders' investments with BLMIS; and (v) identification of the alleged customer in BLMIS's books and records. Hr'g. Transcript, *S&P Decision*, at p. 30, Ackerman Decl. Ex. 9, ECF No. 8734. The Court held that the objecting partners failed to sustain their burden of proving that they are customers of BLMIS and an order granting the Trustee's motion was entered. *Id.* at 36; *see also* ECF No. 9450. Since the S&P Decision, there have been nine motions to affirm the Trustee's determinations, each of which was granted by the Court.[14]

---

[14] *See* Order Approving Trustee's Motion To Affirm His Determinations Denying Claims of Claimants Holding Interests In Peerstate Equity Fund, L.P., ECF No. 9883 (Apr. 27, 2015); Order Approving Trustee's Motion And To Affirm His Determinations Denying Claims Of Claimants Holding Interests In The Lazarus-Schy Family Partnership, The Schy Family Partnership, Or The Lazarus Investment Group, ECF No. 10010 (May 18, 2015); Order Approving Trustee's Motion To Affirm His Determinations Denying Claims Of Claimants Holding Interests In Epic Ventures, LLC, ECF No. 10267 (June 25, 2015); Order Approving Trustee's Motion To Affirm His Determinations Denying Claims Of Claimants Holding Interests Partners Investment Co., Northeast Investment Club, And Martin R. Harnick & Steven P. Norton, Partners, ECF No. 10894 (July 29, 2015); Order Approving Trustee's Motion To Affirm His Determinations Denying Claims Of Claimants Holding Interests The Whitman Partnership, The Lucky Company, The Petito Investment Group, And The Harwood Family Partnership, ECF No. 11145 (Aug. 26, 2015); Order Approving Trustee's Motion To Affirm His Determinations Denying Claims Of Claimants Holding Interests 1973 Masters Vacation Fund, Bull Market Fund, And Strattham Partners, ECF No. 11920 (Oct. 29, 2015); Order Approving Trustee's Motion To Affirm His Determinations Denying Claims Of Claimants Holding Interests in Black River Associates LP, MOT Family Investors, LP, Rothschild Family

## ARGUMENT

To be a "customer" under SIPA, an investor must have "a claim on account of securities received, acquired, or held by the debtor in the ordinary course of its business as a broker or dealer from or for the securities accounts of such person," including "any person who has deposited cash with the debtor for the purpose of purchasing securities." SIPA § 78*lll*(2).[15]

---

Partnership, and Ostrin Family Partnership, ECF No. 12757 (Mar. 3, 2016); Order Approving Trustee's Motion To Affirm His Determinations Denying Claims Of Claimants Holding Interests in the Article Third Trust, Palmer Family Trust, Maggie Faustin, Estate of Theodore Schwartz, and Miller Trust Partnership, ECF No. 13172 (Apr. 26, 2016); and Order Approving Trustee's Motion To Affirm His Determinations Denying Claims Of Claimants Holding Interests in William M. Pressman, Inc., William Pressman, Inc. Rollover Account, and AGL Life Assurance Company, ECF No. 13466 (June 7, 2016).

[15] The definition applicable to this SIPA proceeding is:

(2) Customer

(A) In General

The term "customer" of a debtor means any person (including any person with whom the debtor deals as principal or agent) who has a claim on account of securities received, acquired, or held by the debtor in the ordinary course of its business as a broker or dealer from or for the securities accounts of such person for safekeeping, with a view to sale, to cover consummated sales, pursuant to purchases, as collateral security, or for purposes of effecting transfer.

(B) Included persons

The term "customer" includes—

(i) any person who has deposited cash with the debtor for the purpose of purchasing securities; [and]

(iii) any person who has a claim against the debtor arising out of sales or conversions of such securities, and any person who has deposited cash with the debtor for the purpose of purchasing securities, but does not include—

(C) Excluded persons

The term "customer" does not include any person, to the extent that—

(i) the claim of such person arises out of transactions with a foreign subsidiary of a member of SIPC; or

(ii) such person has a claim for cash or securities which by contract, agreement, or understanding, or by operation of law, is part of the capital of the debtor, or is subordinated to the claims of any or all creditors of the debtor, notwithstanding that some ground exists for declaring such contract, agreement, or understanding void or voidable in a suit between the claimant and the debtor.

Thus, to be a "customer" an investor must have entrusted cash or securities with the debtor for the purpose of trading or investing in securities.   In *Kruse*, the Second Circuit found that investors who bought interests in a limited partnership that invested partnership funds via the partnership's own BLMIS account "never entrusted *their* cash or securities to BLMIS and, thus, fail to satisfy this 'critical aspect of the "customer" definition'" regardless of their intent.   708 F.3d at 427 (quoting *In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d at 236).   Similarly, the Second Circuit in *In re New Times Securities Services* held that "[t]he critical aspect of the 'customer' definition is the entrustment of cash or securities to the broker-dealer for the purposes of trading securities."   463 F.3d at 128 (quoting *Appleton v. First Nat'l Bank of Ohio*, 62 F.3d 791, 801 (6th Cir. 1995)); *see also In re Adler, Coleman Clearing Corp.*, 216 B.R. 719, 724-25 (Bankr. S.D.N.Y. 1998) ("The term [customer] refers to those who entrust cash or securities to broker-dealers for the purpose of trading and investing in the securities market.").   The Second Circuit recently further upheld this principle in *In re Lehman Bros., Inc.*, 791 F.3d 277 (2d Cir. 2015), concluding that the "critical aspect of the 'customer' definition is the entrustment of cash or securities to the broker-dealer for the purposes of trading securities."   *Id.* at 282 (quoting *In re Bernard L. Madoff Inv. Secs. LLC*, 654 F.3d at 236).   The Trustee is responsible for discharging obligations of the debtor to customers with such claims "insofar as such obligations are ascertainable from the books and records of the debtor or are otherwise established to the satisfaction of the trustee."   SIPA § 78fff-2(b).

The Objecting Claimants' investments in the Partnerships do not meet the requirements for "customer" status outlined in the seminal Second Circuit decision *Morgan Kennedy*, 533 F.2d

---

SIPA § 78*lll*(2).  After the start of this case, the "customer" definition was slightly reorganized and amended in a manner irrelevant to the present issues by the Dodd-Frank Wall Street Reform and Consumer Protection Act. Pub. L. No. 111-203, § 983(b), 124 Stat. 1931 (2010); *see In re Lehman Bros. Inc.*, 462 B.R. 53, 61 n.9 (Bankr. S.D.N.Y. 2011).

at 1318, and reaffirmed in *Kruse*, 708 F.3d at 427.   In *Morgan Kennedy*, the Second Circuit

rejected the argument that the beneficial owners of the account holder were the "customers"

under SIPA, citing the facts that: (1) title to the trust assets was held by the account holder, not

the beneficiaries; (2) the securities account with the debtor was in the name of the account

holder, not the beneficiaries; (3) the account holder had the exclusive power to entrust the assets

to the debtor; (4) the beneficiaries were unknown to the broker; and (5) the beneficiaries had no

legal capacity in which they could deal with the debtor.  533 F.2d at 1318.

The Objecting Claimants' circumstances are little different than those of the claimants in

*Morgan Kennedy*, and do not exhibit the hallmarks of customer status discussed in this Court's

*S&P* decision.  Hr'g. Transcript, *S&P Decision*, at 30, Ackerman Decl. Ex.9.  The Objecting

Claimants entrusted their money to the Partnerships, not to BLMIS.  The Objecting Claimants

lacked a direct financial relationship with BLMIS.  The money entrusted to BLMIS was the

property of the Partnerships, not the Objecting Claimants.  The BLMIS Accounts were in the

names of the Partnerships, not in the individual names of Objecting Claimants.

The individual interests of Objecting Claimants in each account were not identified in

BLMIS' books and records, and most of their names did not appear in the customer files.[16]  The

corporate representatives who dealt with BLMIS were like the trustees who acted for the trust

account in *Morgan Kennedy*, and were no more customers in their individual capacity than the

trustees were.  *Morgan Kennedy*, 533 F.2d at 1318, 1320-21 (notwithstanding that the trust

account was in the name of the trustees, "[a]ny suggestion that each of the three Trustees has a

---

[16] A list of partners in Palko Associates was appended as Exhibit A to the partnership agreement found in the
BLMIS customer file for 1CM563, however, the Palko Associates Objecting Claimant is not listed.  Sehgal Decl.,
Ex.4, AMF00266291.  The agreement also identifies the ownership percentage for each partner in the partnership,
but does not specifically set forth the percentage ownership for each partner in the BLMIS account. *Id.*
Furthermore, the Jaffe Objecting Claimants appear in the books and records acting on behalf of the general partner,
Gloria S. Jaffe.

separate customer claim against the debtor is untenable" because the Trustees together managed

the trust, "which was the true customer of the broker-dealer . . . ."; similarly, noting that under

the SIPA Rules, individual coverage for multiple people who each own some portion of, or

interest in, an account is "explicitly forbidden".)

Only the Partnerships, not the Objecting Claimants, entrusted their cash or securities to

BLMIS, and the Objecting Claimants thus fail to satisfy this "critical aspect of the 'customer'

definition." *Kruse*, 708 F.3d at 426-27 (citing *In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d

at 236); *accord ERISA Claimant Decision,* 515 B.R. at 169. Whether the Objecting Claimants

intended the Partnerships to invest with BLMIS is irrelevant under SIPA. *See Kruse*, 708 F.3d at

426-27; *ERISA Claimant Decision*, 515 B.R. at 169-70.

The funds that the Objecting Claimants contributed to the Partnerships, and anything that

the Partnerships purchased with those funds, belongs to the relevant Partnership and not to the

Objecting Claimants. Pursuant to the state laws governing the Partnerships, partnership property

belongs to the partnership alone and not to the individual partners. *See* MINN. STAT. §

323A.0203 (West 2016) ("Property acquired by a partnership is property of the partnership and

not of the partners individually."); 15 PA. STAT. § 8313(a) (West 2016) ("(a) . . . All property

originally brought into the partnership stock or subsequently acquired, by purchase or otherwise,

on account of the partnership is partnership property. (b) . . . Unless the contrary intention

appears, property acquired with partnership funds is partnership property.); CAL. CORP. CODE §

16203 (West 2016). ("Property acquired by a partnership is property of the partnership and not of

the partners individually.") Like the objecting claimants dealt with by prior Customer Opinions,

the Objecting Claimants do not individually own the assets that the Partnerships invested with

BLMIS. Instead, the assets are collectively owned by the Partnerships themselves.

It was the Partnerships, not the Objecting Claimants, which entrusted assets to BLMIS for the purpose of purchasing securities. Each Partnership, through its management, had the right to direct the investment of those assets on behalf of the Partnership, and to withdraw property from its Account on behalf of the Partnership. Each Partnership, not the Objecting Claimants, was the customer for its respective Account under SIPA.

Because BLMIS did not perform a custodial function on behalf of the individual Objecting Claimants, the Objecting Claimants have neither "customer" claims nor individual net equity. The purpose of SIPA, a statute intended to deal with broker insolvency, is "to expedite the return of customer property" by "protecting the *custody* function of brokers," according to a recent Second Circuit decision that declined to permit interest or time-based damages for customer claims under SIPA. *Sec. Inv'r Prot. Corp. v. 2427 Parent Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*, 779 F.3d 74, 80 (2d Cir. 2015). Customers share in the fund of customer property ratably, according to each customer's "net equity." *Id.* at 77, 81. The definition of net equity is limited by the fundamental SIPA design "to return customer property to customers," *id.* at 77, whether in cash or in actual securities. *Id.* at 80.[17]

The Second Circuit stated in *2427 Parent Corp.*, "[w]e . . . previously concluded that in [the BLMIS] case net equity . . . should be determined based on customers' actual deposits and withdrawals. These deposits, net withdrawals, constitute customer property here." *Id.* at 81 (citations omitted). The books and records of BLMIS show that Objecting Claimants made no individual deposits into or withdrawals from BLMIS, and those who interacted with BLMIS as

---

[17] The definition of "net equity" at SIPA § 78*lll*(11) begins, "The term 'net equity' means the dollar amount of the account or accounts of a customer, to be determined by—

    (A) Calculating the sum which would have been owed by the debtor to such customer if the debtor had liquidated . . . on the filing date—(i) all securities positions of such customer . . . ."

to the Accounts did so solely on the Partnerships' or general partner's behalf. Sehgal Decl., Exs. 4, 7, 11. The Objecting Claimants accordingly have no net equity and are not "customers" within the meaning of SIPA.

Each of the Objecting Claimants was served with requests for admission, interrogatories, and requests for production. None of the Objecting Claimants responded. By failing to respond to the requests for admission, the Objecting Claimants admitted them. FED. R. CIV. P. 36(a)(3). These admissions show that Objecting Claimants lack any relationship with BLMIS that fits the *Morgan Kennedy* criteria and that their claims of "customer" status are baseless. They admitted that: (i) the relevant Account was not titled in their name;[18] (ii) that they never received investment statements or tax statements in their names from BLMIS;[19] (iii) that they never paid cash directly to BLMIS for credit to an account in their names;[20] (iv) never deposited securities directly with BLMIS;[21] (v) that they never directly withdrew or received funds from BLMIS;[22] (vi) that their only relationship to BLMIS existed by way of their relationship to the Account holder;[23] (vii) that they never entered into any contracts in their names with BLMIS;[24] and (viii) that they did not have any control, investment discretion or decision-making power over any investment assets at BLMIS.[25]

---

[18] Ackerman Decl., Ex. 3, ¶¶ 1,2; Ackerman Decl., Exs. 4, 5, ¶¶1,2; Ackerman Decl., Exs. 6, 7, 8, ¶¶1,2.

[19] Ackerman Decl., Ex. 3, ¶¶ 3,8,9; Ackerman Decl., Exs. 4, 5, ¶¶3,8,9; Ackerman Decl., Exs. 6, 7, 8, ¶¶ 6,7.

[20] Ackerman Decl., Ex. 3, ¶5; Ackerman Decl., Exs. 4, 5, ¶5; Ackerman Decl., Exs. 6, 7, 8, ¶5.

[21] Ackerman Decl., Ex. 3, ¶4; Ackerman Decl., Exs. 4, 5, ¶4; Ackerman Decl., Exs. 6, 7, 8, ¶4.

[22] Ackerman Decl., Ex. 3, ¶¶6,7; Ackerman Decl., Exs. 4, 5, ¶¶6,7; Ackerman Decl., Exs. 6, 7, 8, ¶¶6,7.

[23] Ackerman Decl., Ex. 3, ¶12; Ackerman Decl., Exs. 4, 5, ¶11; Ackerman Decl., Exs. 6, 7, 8, ¶11.

[24] Ackerman Decl., Ex. 3, ¶10; Ackerman Decl., Exs. 4, 5, ¶10; Ackerman Decl., Exs. 6, 7, 8, ¶10.

[25] Ackerman Decl., Ex. 3, 10; Ackerman Decl., Exs. 4, 5, ¶10; Ackerman Decl., Exs. 6, 7, 8, ¶10.

As the Second Circuit has explained, "[j]udicial interpretations of 'customer' status support a narrow interpretation of the SIPA's provisions." *Kruse*, 708 F.3d at 426 (citing *In re New Times Sec. Servs., Inc.,* 463 F.3d at 127). Customer status under SIPA is narrowly construed and is the burden of the claimant to establish. *See ERISA Claimant Decision,* 515 B.R. at 166 ("The burden is on the claimant to establish he is a 'customer' entitled to SIPA protection, and such a showing 'is not easily met.'"); *In re Bernard L. Madoff Inv. Sec. LLC*, 454 B.R. at 294 (citing *In re Klein, Maus & Shire, Inc.*, 301 B.R. 408, 418 (Bankr. S.D.N.Y. 2003)); *see also Mishkin v. Siclari (In re Adler, Coleman Clearing Corp.)*, 277 B.R. 520, 557 (Bankr. S.D.N.Y. 2002) ("[I]it is well-established in the Second Circuit that a claimant bears the burden of proving that he or she is a 'customer' under SIPA."). The Objecting Claimants have not met this burden. Thus, under Second Circuit precedent, the Objecting Claimants are not SIPA customers.

*[INTENTIONALLY LEFT BLANK]*

## CONCLUSION

For all of the foregoing reasons, the Court should affirm the Trustee's determination denying the claims of the six Objecting Claimants, overrule their objections, overrule the portion of The Miller Partnership objection related to the customer status of its partners, expunge the Objecting Claimants' claims, and grant such other and further relief as the Court deems just and proper.

Dated: New York, New York
      June 22, 2016

Respectfully submitted,

*/s/ David J. Sheehan*
David J. Sheehan
Email: dsheehan@bakerlaw.com
Seanna R. Brown
Email: sbrown@bakerlaw.com
Nicholas J. Cremona
Email: ncremona@bakerlaw.com
Jorian L. Rose
Email: jrose@bakerlaw.com
Amy E. Vanderwal
Email : avanderwal@bakerlaw.com
Stephanie A. Ackerman
Email : sackerman@bakerlaw.com
**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, New York  10111
Tel: (212) 589-4200
Fax: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Estate of Bernard L. Madoff*