# EXHIBIT A



Page 1

1    U.S. BANKRUPTCY COURT

2    FOR THE SOUTHERN DISTRICT OF NEW YORK

3    Case No. 08-01789-SMB

4    - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

5    In the Matter of SECURITIES INVESTOR PROTECTION CORPORATION

6              Debtor.

7    - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

8

9                        United States Bankruptcy Court

10                       One Bowling Green

11                       New York, New York 10004

12

13                       June 20, 2016

14                       10:00 AM

15

16   B E F O R E:

17   HON. STUART M. BERNSTEIN

18   U.S. BANKRUPTCY JUDGE

19

20

21

22

23

24

25   ECRO:  J. PEREYRA

1    **HEARING RE Conference re: Annette Bongiorno Deposition**

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    **Transcribed by:  Mary Zajaczkowski**

Page 3

1   A P P E A R A N C E S :

2

3   BAKERHOSTETLER

4       Attorney for Irving Picard, Trustee

5       45 Rockefeller Plaza

6       New York, NY  10111

7   BY:   SEANNA BROWN, ESQ.

8

9   CHAITMAN LLP

10      Attorney for Russell L. Dusek, Carol Nelson,

11      Stanley Nelson, Russell Oasis,

12      RAR Entrepreneurial Fund, LTD

13      465 Park Avenue

14      New York, New York 10022

15  BY:   GREGORY M. DEXTER, ESQ.

16

17  BAKER & MCKENZIE

18      Attorney for Dr.'s Joel and Norman Blum

19      815 Connecticut Avenue, NW

20      Washington, DC 20006

21  BY:   RICHARD A. KIRBY, ESQ.

22

23

24

25

1              P R O C E E D I N G S

2         MS. BROWN:  Good morning, Your Honor.

3         THE COURT:  Good morning.

4         MS. BROWN:  Seanna Brown on behalf of Irving Picard,

5    Trustee.

6         Your Honor, we're here today because we received

7    several objections to rescheduling the deposition of Ms.

8    Annette Bongiorno.  And before we get to those objections, I'd

9    just like to briefly tell Your Honor why the testimony remains

10   relevant today and, if anything, it's even more relevant to

11   find the discovery that the Trustee has conducted so far.

12        The Trustee deposed four BLMIS witnesses, all of whom

13   testified that Ms. Bongiorno was their supervisor.  These

14   witnesses identified Ms. Bongiorno's handwriting on several key

15   documents including what we refer to as the spiral notebook.

16   This notebook is a book that details the checks that were out

17   of BLMIS.

18        This book contains the names of Mr. Blecker and the

19   Blum's, and several witnesses identified Ms. Bongiorno's

20   handwriting throughout this book; these witnesses also

21   identified Ms. Bongiorno's handwriting on several of the

22   account opening forms that were used internally at BLMIS.  And

23   on those forms is a notation for send or re-invest.  And what

24   we have discovered so far is that this dictates whether or not

25   the account was sent profits or the profits were re-invested.

Page 5

1           This form was filled out by BLMIS employees, including

2    Ms. Bongiorno, and is relevant to the profit withdrawal issue

3    at hand.  In particular, Mr. Blecker's -- one of Mr. Blecker's

4    account opening forms, a witness identified Ms. Bongiorno's

5    handwriting on that form and another witness identified her

6    handwriting on the account opening documents for Joel Blum.

7           THE COURT:  Did any of them testify about these PW

8    notations?

9           MS. BROWN:  They did, Your Honor.  The witnesses -- if

10   you want I can give you a brief summary.

11          THE COURT:  Yeah, I'm curious.

12          MS. BROWN:  So we deposed two of what we call the key

13   punch operators.  These were people that input data into the AS

14   400 System used by BLMIS to print those statements as well as

15   the checks.  So their knowledge was really based about how the

16   checks were created, how the information was stored in the AS

17   400, and information about checks being printed and mailed to

18   customers.  We also deposed Winifred Jackson who was an

19   assistant to JoAnn Crupi and Ms. Bongiorno, who also had

20   responsibilities relating to checks and other administrative

21   duties at BLMIS.

22          The fourth witness was a woman named Joanna Sala.  She

23   was what's referred to as an accounts manager.  She managed

24   convertible arbitrage accounts.  These are the types of

25   accounts that had profit withdrawal transactions in them and

1   she testified about the profit withdrawal notations, what they

2   meant, how checks were sent to customers, and how the

3   transactions were calculated on the statements.

4           THE COURT:  What did she say about what they meant?

5           MS. BROWN:  She said that the profit withdrawal

6   transactions as -- so to take a particular deal, there was a

7   purported, you know, buy of a security -- reported sale of a

8   security and a profit that was generated.  The profit is shown

9   on the statement as a PW with the name of the security in the

10  check in the transaction field.

11          She testified that those were checks that were sent to

12  customers and what the -- the reason why she testified to that

13  is because she said that the way the accounts were set up is

14  either they were set up as a send or re-invest account.  If it

15  was set up as a send account, the customers were sent their

16  profits automatically.  They did not need to write to BLMIS to

17  request their profits for each and every transaction that they

18  engaged in.  They would be sent those profits automatically.

19          If, on the other hand, a customer wanted a one-off

20  withdrawal, which would be denoted in the books and records as

21  a capital withdrawal -- this is what she testified to -- that

22  would need to be in writing and that would be maintained in the

23  customer files.

24          So the way that the account was set up is very

25  critical to the question before the Court.  And several of

Page 7

1    these witnesses testified that Ms. Bongiorno was involved in

2    setting up the accounts, that she directed them as to how to

3    set up the accounts and that she was a decision maker in that

4    regard.

5           So all of the testimony that we sought so far, Your

6    Honor, the four witnesses that I just outlined, each of them

7    have supported the Trustee's determination to treat proper

8    withdrawal transactions in the way that he did, and all the

9    testimony has been highly relevant to the questions before Your

10   Honor.  They have not been fishing expeditions and have not

11   been a wasted effort.  Nor do I believe that the testimony of

12   Ms. Bongiorno would be either a fishing expedition.

13          THE COURT:  One of the issues that's raised, I guess,

14   in Ms. Chaitman's letter is they knew or should have known that

15   Ms. Bongiorno might assert a Fifth Amendment privilege.

16          MS. BROWN:  Right.

17          THE COURT:  What's your response to that?

18          MS. BROWN:  My response to that, Your Honor, is we

19   have -- the only information I have is what her counsel

20   informed me of and her counsel informed me, you know, several

21   weeks prior to the deposition that she was going to testify.

22   And on that basis, we moved ahead with scheduling her

23   deposition.

24          As her deposition got closer the -- you know, the

25   agreement was executed by the Trustee, the settlement agreement

Page 8

1   by the Trustee, the U.S. Attorney; it was not executed by Ms.

2   Bongiorno and her husband Ruby.  Her counsel said that she may

3   still provide testimony even though it's not signed and on that

4   basis, with that deadline approaching the following week, the

5   Trustee had no choice but to go down there and see if she would

6   follow through on what she had previously said that she would

7   do.

8           THE COURT:  Did you discuss with the parties that she

9   may not testify; let's put this off until she signs the

10  settlement agreement?

11          MS. BROWN:  I did not do that, Your Honor, because I

12  was not told that until the Sunday when I was already down in

13  Florida that she may not testify based on the agreement.  And,

14  you know, with the arrangements with the prison it's not as

15  though we can just show-up on any day that works for everyone.

16  I highly doubt that if it came to be that Ms. Bongiorno said

17  that she was willing to provide testimony on July 8th that my

18  adversaries would have consented to me taking this deposition

19  now if I had not gone.

20          So in order to protect the Trustee's interest, we felt

21  that based on the representation from her counsel that the only

22  choice that we had was to proceed and see if Ms. Bongiorno

23  would indeed follow through on what she had said previously to

24  both myself -- well, through her counsel and Ms. Chaitman that

25  she intended to provide testimony.

Page 9

1          Your Honor, if I may just go back to why Ms.

2     Bongiorno's testimony is relevant.  You know, her counsel has

3     indeed confirmed that she has information on proper withdrawal

4     transactions and that is also confirmed by the deposition

5     testimony of the other witnesses.

6          Lastly, the reason why her testimony is even more

7     relevant is because counsel had been pursuing a line of

8     questioning in the depositions that have been taken so far

9     regarding Ms. Bongiorno specifically and her personal actions.

10    And on that basis, I think that we are entitled to explore that

11    line of questioning to the extent that they plan to raise it as

12    part of the arguments before Your Honor.

13          Turning to the objections that we have received, I

14    think I addressed the one from Ms. Chaitman.  The objections

15    from Mr. Kirby, you know, appear to be mostly based on cost.

16    Mr. Kirby didn't attend the deposition of Ms. Bongiorno on July

17    8th.

18          THE COURT:  Did anyone from his office.

19          MS. BROWN:  No, Your Honor.  The only person from his

20    office that -- I'm sorry.  The only person that attended other

21    then the Trustee and counsel for Ms. Bongiorno was Mr. Dexter

22    from Chaitman LLP.  Unless he plans to attend the next

23    deposition, it's not clear that he will have any cost

24    associated with the deposition.

25          As we indicated in our letter, the parties have been

1    working out a stipulation to try to modify the briefing

2    schedule and streamline it a bit for Your Honor.  And the

3    proposed date from Mr. Kirby for the Claimant's opposition

4    brief would be September 30th.  So if the deposition were

5    permitted to go forward on July 8th that would be sufficient

6    time for the parties to address any issues that arose in Ms.

7    Bongiorno's testimony on that date.

8            So on that basis, Your Honor, you know, given that she

9    has relevant testimony, her counsel has confirmed that she

10   will, in fact, provide testimony on the 8th and that there are

11   no further impediments remaining to her testimony in light of

12   the settlement agreement with the U.S. Attorney's Office.  We

13   would request that Your Honor permit the deposition to go

14   forward.

15           THE COURT:  How long do you think it's going to last?

16           MS. BROWN:  The deposition?

17           THE COURT:  Yeah.

18           MS. BROWN:  I anticipate that I would have somewhere

19   between like four hours of questioning, that's been the

20   approximate length of the depositions so far.

21           THE COURT:  Does the prison limit the amount of time

22   that you can have with her?

23           MS. BROWN:  They do.  We have been told that we need

24   to arrive by 8:00 a.m. and I think we need to finish, I

25   believe, either by three or four.

1          THE COURT:  Do you then get to continue the next day

2    if there isn't enough time?

3          MS. BROWN:  I did not raise that with them

4    specifically, but I anticipate that they would accommodate us.

5          THE COURT:  Okay.  All right.

6          MS. BROWN:  Thank you, Your Honor.

7          THE COURT:  Thank you.

8          MR. KIRBY:  Good morning, Your Honor.

9          THE COURT:  Good morning.

10         MR. KIRBY:  Richard Kirby on behalf of Dr.'s Joel and

11   Norman Blum.

12         We are here again on the Trustee's seemingly endless

13   search for what they claim to be the truth.  The facts are a

14   little different then they have outlined.  And I think it's

15   worth the Court focusing on that because of what their -- this

16   current effort that they're pursuing.  They don't have checks.

17   The ledgers that they talk about seem to have been long since

18   destroyed.  The problem they have is they can't prove that

19   these checks went out.

20         THE COURT:  That's really a question for trial, isn't

21   it?

22         MR. KIRBY:  Yes, but I think it does matter that what

23   the testimony of these people have been so far is they had a

24   system if there was a check to be written; the flunkies.  To be

25   blunt about it, these were persons who had no knowledge about

1    what the transactions were because that was something that they

2    was not involved.

3           What the Trustee's own experts have said is that these

4    transactions were entire fictitious.  The profits -- there were

5    no profits; that's what their expert has said.  The Trustee has

6    said that himself in the papers.

7           THE COURT:  No profits because there were no real

8    transactions --

9           MR. KIRBY:  Correct.

10          THE COURT:  -- or they didn't send out checks to

11   people.

12          MR. KIRBY:  Undoubtedly, they did send checks out, but

13   the problem is, is that my clients have said they never got

14   them.  They never received those checks.

15          THE COURT:  Okay.  But, you know, I'm not trying the

16   case.  I hear you, but I'm not going to try the case as a

17   discovery dispute.  I suppose if people came on and said every

18   PW means that a check went out, I can weigh that.

19          MR. KIRBY:  That's not what they said.

20          THE COURT:  Well, but I don't know what they were

21   saying, you know.

22          MR. KIRBY:  Okay.  Fair enough.  Let's get back to

23   this.  All right.

24          The Court set a deadline on September 13th -- I mean

25   on June 13th.  They have taken the testimony.  What they didn't

1    tell everybody was that they were in the process of trying to

2    buy Ms. Bongiorno's testimony through the settlement.

3           What they have stood up here today and said, as I

4    understand it, is she'll have relevant testimony to proffer

5    withdrawal transactions.  At this point, they ought to have

6    more of a proffer before we go forward.  What they -- they

7    don't really --

8           THE COURT:  But how can they proffer what she's going

9    to say until they ask her.

10          MR. KIRBY:  Well, certainly they -- their attorney

11   should make a proffer.  My goodness, if they were buying her

12   testimony, they wouldn't be buying a pig and a poke.  I assume

13   that they had some sense as to what she would say, but they

14   haven't said that.

15          They say they have relevant testimony.  Why would we -

16   - why put the parties through the additional burden of having

17   to have this extended and having to deal with whatever she says

18   if they can't make a proffer that would say that Ms. Bongiorno

19   knows exactly that the Blum's got certain checks.  She can't

20   say that and she won't know that.  And if she did, it would be

21   not even credible.  So she would know a process at best, but

22   she couldn't say that a specific check went out.

23          THE COURT:  But couldn't I infer -- if she testified

24   or if anybody testified to that, couldn't I infer that they

25   actually got the checks?

Page 14

1        MR. KIRBY:  No, I don't think so.

2        THE COURT:  Well, but that's a question for trial.

3        MR. KIRBY:  I understand that, but at this point where

4    she's already taken the Fifth Amendment once, now she said,

5    okay, we bought her testimony and now she's going to have

6    relevant testimony.  Now putting aside the credibility issue

7    that the Court will have to deal with if you do take into

8    account what she says, why put the parties through this

9    expense.  I mean, you know, we're already --

10       THE COURT:  Why is it an expense to you?  You didn't

11   even bother -- let me finish.  You didn't even bother to show

12   up at the first deposition.  So you saved that money.  Don't go

13   to the second deposition if you don't think it's worthwhile.

14       MR. KIRBY:  Your Honor, we have to make choices.

15       THE COURT:  Why didn't you go to the first one?

16       MR. KIRBY:  Because I've been cooperating with other

17   counsel to deal with it.

18       THE COURT:  All right.

19       MR. KIRBY:  Okay.  And that's a perfectly legitimate

20   reason not to impose the expense on it.

21       THE COURT:  I'm not arguing with it, but you're

22   talking about expense and you're not incurring any expense.

23       MR. KIRBY:  But it's not just -- it is an expense when

24   we have to review a deposition.  We have to deal with

25   additional facts.  The whole process was -- this was also

1   supposed to be done long ago.

2          Why -- you know, we're back to where we were when the

3   Trustee asked for an extension and I said -- I said to the

4   Court at that time this is -- you know, this is just going to

5   keep going on.

6          THE COURT:  Well, it's not going to keep going on.

7   We're talking about one last -- one final deposition.  Crupi

8   is, I take it, is not on the table.

9          MR. KIRBY:  Well, apparently she's taken the Fifth.

10          THE COURT:  She's just not going to testify.  All

11   right.

12          MR. KIRBY:  And my clients -- there is no evidence

13   that my clients dealt directly with her.  Both my clients said

14   they never dealt with Annette Bongiorno.  And because somebody

15   recognized some chicken scratch on a piece of paper as

16   Bongiorno's handwriting isn't enough to rebut that testimony.

17   So this is really a frolic that doesn't belong -- relate to my

18   clients.  It is for that reason that we are objecting.

19          THE COURT:  Thank you.

20          Mr. Dexter.

21          MR. DEXTER:  Good morning, Judge Bernstein.

22          THE COURT:  Good morning.

23          MR. DEXTER:  I'd like to make two points here today.

24   The first is that the Trustee's counsel and counsel for Ms.

25   Bongiorno were in discussions and they kept those discussions

1   shielded from counsel for the customers.  And those discussions

2   were about whether or not Ms. Bongiorno would testify.  And

3   without us having any information from the Trustee's counsel

4   that Ms. Bongiorno might not testify we traveled down to

5   Florida, incurred the expense, over $1,000 dollars paid for by

6   innocent victims of the Madoff fraud.

7          Now, throughout that period, Ms. Chaitman had

8   discussions with counsel for Ms. Bongiorno and while I was not

9   privy to those communications, I understand that counsel for

10  Ms. Bongiorno repeatedly assured Ms. Chaitman that Ms.

11  Bongiorno would testify.  So after incurring these expenses,

12  attending the deposition, we're there in Florida in a federal

13  prison and we're totally blindsided at that point and told that

14  Ms. Bongiorno would not testify.

15         As to the Trustee's point earlier about some of these

16  depositions being highly relevant, I think that's a little bit

17  dubious.  For example, one of the employees of Madoff who we

18  deposed didn't even know what a profit withdrawal was.  She

19  didn't even know what a PW notation was.

20         THE COURT:  Did any of the witnesses know what it was?

21         MR. DEXTER:  Some of them knew what it was.  Some of

22  them -- I mean --

23         THE COURT:  Well, if you're going to depose some

24  witnesses that don't know anything about, you know, the matter

25  at issue that happens inevitably.

Page 17

1          MR. DEXTER:  Right; right.

2          THE COURT:  That's why you depose more then one

3     witness.

4          MR. DEXTER:  Right.  But the point is that certain

5     witnesses have been deposed who don't know anything.  It's not

6     like this has been a narrowly tailored extension of discovery

7     and we're only taking depositions of witnesses with highly

8     probative information; we're not.  So because all this

9     information has been shielded from us and because we --

10          THE COURT:  Which information has been shielded from

11    you?

12          MR. DEXTER:  That Ms. Bongiorno had not signed the

13    settlement agreement with the Trustee and with the United

14    States Government when we incurred the cost, traveled down to

15    Florida and prepared ourselves to take the deposition.  None of

16    the --

17          THE COURT:  I thought the agreement with the

18    Government had been signed already.

19          MR. DEXTER:  It had been signed by all parties except

20    Ms. Bongiorno.  So she could have signed it prior to us

21    attending.

22          THE COURT:  Oh, okay.

23          MR. DEXTER:  She didn't sign it.  This was known by

24    the Trustee.  This was known by Ms. Bongiorno's counsel.  This

25    was withheld from us, and we get down there, and then it's not

Page 18

1   signed and she doesn't testify.  And now the answer that her

2   attorney -- the explanation her attorney gives is that the

3   settlement agreement wasn't signed so she couldn't testify.

4   She pled the Fifth, but they knew the settlement agreement

5   wasn't signed when we flew down there.  When I say they, I mean

6   the Trustee's counsel -- I mean counsel for Ms. Bongiorno.

7        So considering that SIPA requires prompt determination

8   of claims, we don't think its appropriate to have another

9   deposition that's going to further delay the resolution of

10  claims by innocent Madoff customers who are going to have to

11  needlessly incur additional cost to attend, yet, another

12  deposition in Florida for the witness who already was deposed,

13  and she chose not to testify.  She chose to assert her Fifth

14  Amendment.  Now, apparently after the Trustee has bought her

15  testimony, she's willing to testify and we don't think that's

16  appropriate.

17       Alternatively if Your Honor is not inclined to agree

18  with us, we request that our costs to attend the deposition in

19  Florida be paid for by the Trustee.  That is my first point.  I

20  started by saying I had two points.

21       The second is because Ms. Bongiorno's motive --

22  credibility and bias is highly relevant as those factors are

23  highly relevant of any witness.  We request that all records --

24  all communications between the Trustee's counsel and Ms.

25  Bongiorno's counsel be disclosed to us so we understand the

Page 19

1   full extent of the discussions pertaining to the settlement

2   agreement so that we can fully evaluate her credibility at the

3   time of trial and throughout depositions.

4           THE COURT:  I don't understand that.  Part of the deal

5   is that she cooperate.  You want to find out what her attorney

6   told the Trustee's attorney she would probably testify about?

7           MR. DEXTER:  Well, we certainly want to know that.

8           THE COURT:  Why isn't that work product?

9           MR. DEXTER:  I'm sorry?

10          THE COURT:  Why isn't that work product?

11          MR. DEXTER:  Well to the extent a privilege or work

12  product is claimed that should be logged and we should have a

13  basis for challenging that.

14          THE COURT:  Okay.

15          MR. DEXTER:  And that's all I have right now on the

16  issue currently before the Court.  Thank you, Your Honor.

17          THE COURT:  Thank you.

18          MS. BROWN:  Your Honor, I'll be very brief.  Your

19  Honor, we object to the characterization that the Trustee has

20  bought Ms. Bongiorno's testimony in this matter.

21          THE COURT:  I think -- look, I understand she's under

22  a duty to cooperate.  I know what that means.  It will just go

23  to the weight of her testimony.

24          MS. BROWN:  I agree.  As to the cost and the

25  characterization that this discovery had been very broad and

1   ranging, the Trustee made two motions: one to depose Ms.

2   Bongiorno and Ms. Crupi, which this Court granted, and Mr.

3   Kirby and Ms. Chaitman didn't object to those motions.  So the

4   time to object to that --

5       THE COURT:  Well, the cost issue is really -- you knew

6   the agreement hadn't been signed.  You didn't tell anybody and

7   everybody went down.  I know you said -- you suggested it would

8   be an active utility to have said to them why don't we delay it

9   until she signs the agreement.  You may be right, but at least

10  then you could have said I told them and they wouldn't agree so

11  we went down and hoped she would testify.  So why shouldn't you

12  have to pay the costs of going back to Florida?

13      MS. BROWN:  Your Honor, we were operating under what

14  her counsel told us.  What her counsel told us was that even

15  though the agreement wasn't signed, she may still testify.  He

16  flew down there on Sunday himself to.  I don't think he went

17  down there just to say that she's not going to testify.  So we

18  flew down there on that basis and things were moving very fast.

19  It's the night before the deposition and if I made a mistake in

20  not disclosing that on the Sunday evening, I apologize to the

21  Court and I apologize to my --

22      THE COURT:  Don't apologize to me.

23      MS. BROWN:  I was going to say and I apologize to my

24  adversary, but we were operating under the information that we

25  were given and I felt as though I made the best decision under

Page 21

1    the circumstances.  I don't have anything further, Your Honor.

2            THE COURT:  What about the request for communications?

3            MS. BROWN:  I don't think there's been any basis to

4    establish that that's a proper request.  They're challenging

5    whether or not Ms. Bongiorno's deposition should go forward.

6    They are saying that she doesn't have relevant information and

7    when you ask Mr. Dexter what he should be entitled to, he said

8    that she should be entitled to the communications about whether

9    or not she's going to give relevant testimony; well her counsel

10   has confirmed that and should be able to discover that at the

11   deposition itself.  There's no basis to obtain communications

12   between counsel for that.

13           THE COURT:  Okay.  Thank you.

14           MS. BROWN:  Thank you, Your Honor.

15           MR. DEXTER:  Your Honor, if I may make one very quick

16   point about --

17           THE COURT:  Very quickly.

18           MR. DEXTER:  It's not just that we want the relevant

19   information.  We also want information that's relevant to Ms.

20   Bongiorno's credibility.  So there are two reasons why we want

21   those communications.  That's all I have on that.

22           THE COURT:  Okay.  Thank you.

23           There are really three or four issues that are being

24   raised in the context of this discovery dispute.  The first is

25   that she has no relevant information to give and that's what

Page 22

1   Mr. Kirby was arguing.  I don't know how I can pre-judge that

2   she has no relevant information to give when she was identified

3   by other witnesses as someone who might have relevant

4   information on this PW issue, and her own counsel said that she

5   might have -- that she has relevant information.  You know if

6   she doesn't, it's going to be a short deposition, I guess.

7   That's the answer, but I can't pre-judge what she has to say.

8           In terms of buying her testimony, I can read the

9   cooperation agreement.  I know what it means.  And you can make

10  that argument.  I don't see any basis to authorize the

11  disclosure of communications between Trustee's counsel and Ms.

12  Bongiorno's counsel; certainly not in a letter request the way

13  it's posed.  But in any event, you know, the question is what

14  does she know.  And -- well, I don't know the basis on which

15  she would be entitled to communications between counsel or a

16  would be deposition taker and a would be deponent

17  representative regarding her testimony.

18          The thing that bothers me is the fact that the Trustee

19  didn't say, you know, she hasn't signed the agreement.  Counsel

20  tells me that there's a possibility or that counsel has

21  represented that she will testify, but she hasn't signed the

22  agreement, which requires her cooperation and I just don't know

23  why you didn't tell him that.  Then discuss possibly an

24  adjournment and then if there's no adjournment, obviously,

25  you're in a better position to argue that well when we went

1    down there and took our chances because they wouldn't agree to

2    adjournment.

3         On the other hand, you know, the Trustee went down

4    there, had a reasonable basis to believe that she would testify

5    even though she hadn't signed the cooperation agreement.  The

6    time was running on the discovery.  While it's a close

7    question, I'm not inclined to require the Trustee to pay the

8    cost of going back to Florida.  So I'll permit the deposition

9    to go forward.  This is it though.

10        MS. BROWN:  I understand, Your Honor.

11        THE COURT:  Don't come back in a month and tell me now

12   Ms. Crupi is willing to testify.  And I know I started this

13   whole thing, but, you know, let's see what these witnesses have

14   to say about this rather than have an expert, or in addition to

15   what an expert has to say, tell us what these withdrawal's

16   mean.

17        And I understand your argument, Mr. Kirby, that your

18   clients are going to say we never requested anything and we

19   never got anything.  At the end of the day, that may be the

20   most probative evidence.  But I'm just not going to try a

21   discovery dispute.  I can't do that.  I have to hear all the

22   evidence.

23        It's unfortunate that these costs have to be incurred,

24   but it's an issue that involves a lot of -- you know, a lot of

25   customers, not just yours.  We're trying to manage this case

Page 24

1   the best we can to deal with this issue on an omnibus basis as

2   we dealt with many issues on an omnibus basis.

3          So on that basis, you can go down and take her

4   deposition.  Is it set for July 8th or do you have to set it up

5   with the prison?

6          MS. BROWN:  Your Honor, we're in the process of

7   confirming that date with the prison officials.  We sent them

8   the required paperwork and we're waiting to hear back, which I

9   was planning to do this afternoon as soon as I had a decision

10  from Your Honor.

11         THE COURT:  How long did Mr. Madoff's deposition take?

12         MS. BROWN:  Mr. Madoff's deposition began around 9:00

13  a.m. and was concluded by noon.

14         THE COURT:  Because he didn't have much to say.

15         MR. DEXTER:  Actually, Your Honor --

16         THE COURT:  On this issue.

17         MR. DEXTER:  If I may, Your Honor --

18         THE COURT:  Well, it's supposed to be confidential.

19  That's my understanding, right, of the transcript?

20         MS. BROWN:  Yes, Your Honor.

21         MR. DEXTER:  Can we go off the record then for a

22  second, if that's all right?

23         THE COURT:  All right.  Well that's fine.  You can

24  turn off the record.  There's nobody else here.

25         MR. DEXTER:  On that issue -- can I proceed?

Page 25

1           THE COURT:  Sure.

2           MR. DEXTER:  If Your Honor could sort of memorialize

3   what your understanding is.

4           THE COURT:  I don't even know if I could.  Why don't

5   we have Ms. Brown say what she has to say and you can yea or

6   nay.

7           (Recess taken at 10:28 a.m.)

8           (Proceedings resume at 10:10:40:42 a.m.)

9           MS. BROWN:  Thank you, Judge, we have been discussing

10  off the record whether or not Chaitman LLP will be permitted to

11  file a motion to take Mr. Madoff's deposition on the date of

12  when the Ponzi scheme started.  And the Trustee will,

13  obviously, reserve all of its rights to respond to that motion,

14  if it is filed.  But the Trustee would request that Chaitman

15  LLP or any other law firm that joins in that motion to depose

16  Madoff identified by account number, the accounts that have

17  account activity that predates 1992 --

18          THE COURT:  January 1st, 1992.

19          MS. BROWN:  January 1st, 1992 that would be impacted

20  by any such testimony from Mr. Madoff.

21          MR. DEXTER:  And to clarify that the motion is not to

22  take testimony limited only to when the Ponzi scheme began,

23  that's one example of certain relevant issues that we'd like to

24  take a deposition to inquire into.  And when we make the

25  motion, as Your Honor instructed, we will set forth the areas

Page 26

1    of inquiry that we would like to --

2          THE COURT:  And why it's relevant to the case.  For

3    example, you told me -- you said one of the areas relates to

4    the maintenance of the accounts and other -- and when the Ponzi

5    scheme began.  I don't know what that means in terms of an

6    innocent investor or a lawsuit.  So you're going to have to

7    explain to me what the relevance is.  All right.

8          MR. DEXTER:  Understood, Your Honor.

9          THE COURT:  All right.  Fair enough.

10         Thank you very much.

11         MR. DEXTER:  Thank you.

12         THE COURT:  Have a happy July 4th.

13         MS. BROWN:  Thank you, Your Honor, you too.

14         THE COURT:  Thank you.  Please apologize to Mr. Bell,

15    but we don't know who's sitting there.

16       (Proceedings concluded at 10:42 A.M.)

17

18

19

20

21

22

23

24

25

1                        I N D E X

2                          RULINGS

3    DESCRIPTION                                    PAGE

4    HEARING RE Conference re Annette Bongiorno        23

5    Deposition

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                        CERTIFICATION

2              I, Mary Zajaczkowski, certify that the foregoing is a

3      correct transcript from the official electronic sound recording

4      of the proceedings in the above-entitled matter.

5

6      AAERT Certified Electronic Transcriber CET-531

7      Mary Zajaczkowski

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22     Veritext

23     330 Old Country Road

24     Suite 300

25     Mineola, NY  11501

**[& - briefly]**                                                                 Page 1

### &

**&**   3:17

### 0

**08-01789**   1:3

### 1

**1,000**   16:5
**10004**   1:11
**10022**   3:14
**10111**   3:6
**10:00**   1:14
**10:10:40:42**   25:8
**10:28**   25:7
**10:42**   26:16
**11501**   28:25
**13th**   12:24,25
**1992**   25:17,18,19
**1st**   25:18,19

### 2

**20**   1:13
**20006**   3:20
**2016**   1:13
**23**   27:4

### 3

**300**   28:24
**30th**   10:4
**330**   28:23

### 4

**400**   5:14,17
**45**   3:5
**465**   3:13
**4th**   26:12

### 5

**531**   28:6

### 8

**815**   3:19
**8:00**   10:24
**8th**   8:17 9:17 10:5
  10:10 24:4

### a

**a.m.**   10:24 24:13
  25:7,8 26:16
**aaert**   28:6

**able**   21:10
**accommodate**   11:4
**account**   4:22,25 5:4
  5:6 6:14,15,24 14:8
  25:16,17
**accounts**   5:23,24,25
  6:13 7:2,3 25:16
  26:4
**actions**   9:9
**active**   20:8
**activity**   25:17
**addition**   23:14
**additional**   13:16
  14:25 18:11
**address**   10:6
**addressed**   9:14
**adjournment**   22:24
  22:24 23:2
**administrative**   5:20
**adversaries**   8:18
**adversary**   20:24
**afternoon**   24:9
**ago**   15:1
**agree**   18:17 19:24
  20:10 23:1
**agreement**   7:25,25
  8:10,13 10:12 17:13
  17:17 18:3,4 19:2
  20:6,9,15 22:9,19
  22:22 23:5
**ahead**   7:22
**alternatively**   18:17
**amendment**   7:15
  14:4 18:14
**amount**   10:21
**annette**   2:1 4:8
  15:14 27:4
**answer**   18:1 22:7
**anticipate**   10:18
  11:4
**anybody**   13:24 20:6
**apologize**   20:20,21
  20:22,23 26:14
**apparently**   15:9
  18:14
**appear**   9:15

**approaching**   8:4
**appropriate**   18:8
  18:16
**approximate**   10:20
**arbitrage**   5:24
**areas**   25:25 26:3
**argue**   22:25
**arguing**   14:21 22:1
**argument**   22:10
  23:17
**arguments**   9:12
**arose**   10:6
**arrangements**   8:14
**arrive**   10:24
**aside**   14:6
**asked**   15:3
**assert**   7:15 18:13
**assistant**   5:19
**associated**   9:24
**assume**   13:12
**assured**   16:10
**attend**   9:16,22
  18:11,18
**attended**   9:20
**attending**   16:12
  17:21
**attorney**   3:4,10,18
  8:1 13:10 18:2,2
  19:5,6
**attorney's**   10:12
**authorize**   22:10
**automatically**   6:16
  6:18
**avenue**   3:13,19

### b

**b**   1:16
**back**   9:1 12:22 15:2
  20:12 23:8,11 24:8
**baker**   3:17
**bakerhostetler**   3:3
**bankruptcy**   1:1,9
  1:18
**based**   5:15 8:13,21
  9:15
**basis**   7:22 8:4 9:10
  10:8 19:13 20:18
  21:3,11 22:10,14

  23:4 24:1,2,3
**began**   24:12 25:22
  26:5
**behalf**   4:4 11:10
**believe**   7:11 10:25
  23:4
**bell**   26:14
**belong**   15:17
**bernstein**   1:17
  15:21
**best**   13:21 20:25
  24:1
**better**   22:25
**bias**   18:22
**bit**   10:2 16:16
**blecker**   4:18
**blecker's**   5:3,3
**blindsided**   16:13
**blmis**   4:12,17,22
  5:1,14,21 6:16
**blum**   3:18 5:6 11:11
**blum's**   4:19 13:19
**blunt**   11:25
**bongiorno**   2:1 4:8
  4:13 5:2,19 7:1,12
  7:15 8:2,16,22 9:9
  9:16,21 13:18 15:14
  15:25 16:2,4,8,10
  16:11,14 17:12,20
  18:6 20:2 27:4
**bongiorno's**   4:14
  4:19,21 5:4 9:2
  10:7 13:2 15:16
  17:24 18:21,25
  19:20 21:5,20 22:12
**book**   4:16,18,20
**books**   6:20
**bother**   14:11,11
**bothers**   22:18
**bought**   14:5 18:14
  19:20
**bowling**   1:10
**brief**   5:10 10:4
  19:18
**briefing**   10:1
**briefly**   4:9

**broad** 19:25
**brown** 3:7 4:2,4,4
  5:9,12 6:5 7:16,18
  8:11 9:19 10:16,18
  10:23 11:3,6 19:18
  19:24 20:13,23 21:3
  21:14 23:10 24:6,12
  24:20 25:5,9,19
  26:13
**burden** 13:16
**buy** 6:7 13:2
**buying** 13:11,12
  22:8

### c

**c** 3:1 4:1
**calculated** 6:3
**call** 5:12
**can't** 11:18 13:18
  13:19 22:7 23:21
**capital** 6:21
**carol** 3:10
**case** 1:3 12:16,16
  23:25 26:2
**certain** 13:19 17:4
  25:23
**certainly** 13:10 19:7
  22:12
**certification** 28:1
**certified** 28:6
**certify** 28:2
**cet** 28:6
**chaitman** 3:9 8:24
  9:14,22 16:7,10
  20:3 25:10,14
**chaitman's** 7:14
**challenging** 19:13
  21:4
**chances** 23:1
**characterization**
  19:19,25
**check** 6:10 11:24
  12:18 13:22
**checks** 4:16 5:15,16
  5:17,20 6:2,11
  11:16,19 12:10,12
  12:14 13:19,25

**chicken** 15:15
**choice** 8:5,22
**choices** 14:14
**chose** 18:13,13
**circumstances** 21:1
**claim** 11:13
**claimant's** 10:3
**claimed** 19:12
**claims** 18:8,10
**clarify** 25:21
**clear** 9:23
**clients** 12:13 15:12
  15:13,18,18 23:18
**close** 23:6
**closer** 7:24
**come** 23:11
**communications**
  16:9 18:24 21:2,8
  21:11,21 22:11,15
**concluded** 24:13
  26:16
**conducted** 4:11
**conference** 2:1 27:4
**confidential** 24:18
**confirmed** 9:3,4
  10:9 21:10
**confirming** 24:7
**connecticut** 3:19
**consented** 8:18
**considering** 18:7
**contains** 4:18
**context** 21:24
**continue** 11:1
**convertible** 5:24
**cooperate** 19:5,22
**cooperating** 14:16
**cooperation** 22:9,22
  23:5
**corporation** 1:5
**correct** 12:9 28:3
**cost** 9:15,23 17:14
  18:11 19:24 20:5
  23:8
**costs** 18:18 20:12
  23:23
**couldn't** 13:22,23
  13:24 18:3

**counsel** 7:19,20 8:2
  8:21,24 9:2,7,21
  10:9 14:17 15:24,24
  16:1,3,8,9 17:24
  18:6,6,24,25 20:14
  20:14 21:9,12 22:4
  22:11,12,15,19,20
**country** 28:23
**court** 1:1,9 4:3 5:7
  5:11 6:4,25 7:13,17
  8:8 9:18 10:15,17
  10:21 11:1,5,7,9,15
  11:20 12:7,10,15,20
  12:24 13:8,23 14:2
  14:7,10,15,18,21
  15:4,6,10,19,22
  16:20,23 17:2,10,17
  17:22 19:4,8,10,14
  19:16,17,21 20:2,5
  20:21,22 21:2,13,17
  21:22 23:11 24:11
  24:14,16,18,23 25:1
  25:4,18 26:2,9,12
  26:14
**created** 5:16
**credibility** 14:6
  18:22 19:2 21:20
**credible** 13:21
**critical** 6:25
**crupi** 5:19 15:7
  20:2 23:12
**curious** 5:11
**current** 11:16
**currently** 19:16
**customer** 6:19,23
**customers** 5:18 6:2
  6:12,15 16:1 18:10
  23:25

### d

**d** 4:1 27:1
**data** 5:13
**date** 10:3,7 24:7
  25:11
**day** 8:15 11:1 23:19
**dc** 3:20
**deadline** 8:4 12:24

**deal** 6:6 13:17 14:7
  14:17,24 19:4 24:1
**dealt** 15:13,14 24:2
**debtor** 1:6
**decision** 7:3 20:25
  24:9
**delay** 18:9 20:8
**denoted** 6:20
**deponent** 22:16
**depose** 16:23 17:2
  20:1 25:15
**deposed** 4:12 5:12
  5:18 16:18 17:5
  18:12
**deposition** 2:1 4:7
  7:21,23,24 8:18 9:4
  9:16,23,24 10:4,13
  10:16 14:12,13,24
  15:7 16:12 17:15
  18:9,12,18 20:19
  21:5,11 22:6,16
  23:8 24:4,11,12
  25:11,24 27:5
**depositions** 9:8
  10:20 16:16 17:7
  19:3
**description** 27:3
**destroyed** 11:18
**details** 4:16
**determination** 7:7
  18:7
**dexter** 3:15 9:21
  15:20,21,23 16:21
  17:1,4,12,19,23
  19:7,9,11,15 21:7
  21:15,18 24:15,17
  24:21,25 25:2,21
  26:8,11
**dictates** 4:24
**didn't** 9:16 12:10
  12:25 14:10,11,15
  16:18,19 17:23 20:3
  20:6 22:19,23 24:14
**different** 11:14
**directed** 7:2
**directly** 15:13

disclosed 18:25
disclosing 20:20
disclosure 22:11
discover 21:10
discovered 4:24
discovery 4:11
  12:17 17:6 19:25
  21:24 23:6,21
discuss 8:8 22:23
discussing 25:9
discussions 15:25
  15:25 16:1,8 19:1
dispute 12:17 21:24
  23:21
district 1:2
documents 4:15 5:6
doesn't 15:17 18:1
  21:6 22:6
dollars 16:5
don't 11:16 12:20
  13:7 14:1,12,13
  16:24 17:5 18:8,15
  19:4 20:8,16,22
  21:1,3 22:1,10,14
  22:22 23:11 25:4,4
  26:5,15
doubt 8:16
dr.'s 3:18 11:10
dubious 16:17
dusek 3:10
duties 5:21
duty 19:22

**e**

e 1:16,16 3:1,1 4:1,1
  27:1
earlier 16:15
ecro 1:25
effort 7:11 11:16
either 6:14 7:12
  10:25
electronic 28:3,6
employees 5:1
  16:17
endless 11:12
engaged 6:18
entire 12:4

entitled 9:10 21:7,8
  22:15 28:4
entrepreneurial
  3:12
esq 3:7,15,21
establish 21:4
evaluate 19:2
evening 20:20
event 22:13
everybody 13:1
  20:7
evidence 15:12
  23:20,22
exactly 13:19
example 16:17
  25:23 26:3
executed 7:25 8:1
expedition 7:12
expeditions 7:10
expense 14:9,10,20
  14:22,22,23 16:5
expenses 16:11
expert 12:5 23:14
  23:15
experts 12:3
explain 26:7
explanation 18:2
explore 9:10
extended 13:17
extension 15:3 17:6
extent 9:11 19:1,11

**f**

f 1:16
fact 10:10 22:18
factors 18:22
facts 11:13 14:25
fair 12:22 26:9
far 4:11,24 7:5 9:8
  10:20 11:23
fast 20:18
federal 16:12
felt 8:20 20:25
fictitious 12:4
field 6:10
fifth 7:15 14:4 15:9
  18:4,13

file 25:11
filed 25:14
files 6:23
filled 5:1
final 15:7
find 4:11 19:5
fine 24:23
finish 10:24 14:11
firm 25:15
first 14:12,15 15:24
  18:19 21:24
fishing 7:10,12
flew 18:5 20:16,18
florida 8:13 16:5,12
  17:15 18:12,19
  20:12 23:8
flunkies 11:24
focusing 11:15
follow 8:6,23
following 8:4
foregoing 28:2
form 5:1,5
forms 4:22,23 5:4
forth 25:25
forward 10:5,14
  13:6 21:5 23:9
four 4:12 7:6 10:19
  10:25 21:23
fourth 5:22
fraud 16:6
frolic 15:17
full 19:1
fully 19:2
fund 3:12
further 10:11 18:9
  21:1

**g**

g 4:1
generated 6:8
give 5:10 21:9,25
  22:2
given 10:8 20:25
gives 18:2
go 8:5 9:1 10:5,13
  13:6 14:12,15 19:22
  21:5 23:9 24:3,21

going 7:21 10:15
  12:16 13:8 14:5
  15:4,5,6,6,10 16:23
  18:9,10 20:12,17,23
  21:9 22:6 23:8,18
  23:20 26:6
good 4:2,3 11:8,9
  15:21,22
goodness 13:11
government 17:14
  17:18
granted 20:2
green 1:10
gregory 3:15
guess 7:13 22:6

**h**

hadn't 20:6 23:3
hand 5:3 6:19 23:3
handwriting 4:14
  4:20,21 5:5,6 15:16
happens 16:25
happy 26:12
hasn't 22:19,21
haven't 13:14
hear 12:16 23:21
  24:8
hearing 2:1 27:4
highly 7:9 8:16
  16:16 17:7 18:22,23
hon 1:17
honor 4:2,6,9 5:9
  7:6,10,18 8:11 9:1
  9:12,19 10:2,8,13
  11:6,8 14:14 18:17
  19:16,18,19 20:13
  21:1,14,15 23:10
  24:6,10,15,17,20
  25:2,25 26:8,13
hoped 20:11
hours 10:19
husband 8:2

**i**

identified 4:14,19
  4:21 5:4,5 22:2
  25:16

**impacted**  25:19
**impediments**  10:11
**impose**  14:20
**inclined**  18:17 23:7
**including**  4:15 5:1
**incur**  18:11
**incurred**  16:5 17:14
  23:23
**incurring**  14:22
  16:11
**indicated**  9:25
**inevitably**  16:25
**infer**  13:23,24
**information**  5:16
  5:17 7:19 9:3 16:3
  17:8,9,10 20:24
  21:6,19,19,25 22:2
  22:4,5
**informed**  7:20,20
**innocent**  16:6 18:10
  26:6
**input**  5:13
**inquire**  25:24
**inquiry**  26:1
**instructed**  25:25
**intended**  8:25
**interest**  8:20
**internally**  4:22
**invest**  4:23 6:14
**invested**  4:25
**investor**  1:5 26:6
**involved**  7:1 12:2
**involves**  23:24
**irving**  3:4 4:4
**isn't**  11:2,20 15:16
  19:8,10
**issue**  5:2 14:6 16:25
  19:16 20:5 22:4
  23:24 24:1,16,25
**issues**  7:13 10:6
  21:23 24:2 25:23
**it's**  4:10 8:3,14 9:23
  10:15 11:14 14:13
  14:23 15:6 17:5,25
  20:19 21:18 22:6,13
  23:6,23,24 24:18
  26:2

**j**

**i'd**  4:8 15:23
**i'll**  19:18 23:8
**i'm**  5:11 9:20 12:15
  12:16 14:21 19:9
  23:7,20
**i've**  14:16

**j**

**j**  1:25
**jackson**  5:18
**january**  25:18,19
**joann**  5:19
**joanna**  5:22
**joel**  3:18 5:6 11:10
**joins**  25:15
**judge**  1:18 15:21
  22:1,7 25:9
**july**  8:17 9:16 10:5
  24:4 26:12
**june**  1:13 12:25

**k**

**keep**  15:5,6
**kept**  15:25
**key**  4:14 5:12
**kirby**  3:21 9:15,16
  10:3 11:8,10,10,22
  12:9,12,19,22 13:10
  14:1,3,14,16,19,23
  15:9,12 20:3 22:1
  23:17
**knew**  7:14 16:21
  18:4 20:5
**know**  6:7 7:20,24
  8:14 9:2,15 10:8
  12:15,20,21 13:20
  13:21 14:9 15:2,4
  16:18,19,20,24,24
  17:5 19:7,22 20:7
  22:1,5,9,13,14,14
  22:19,22 23:3,12,13
  23:24 25:4 26:5,15
**knowledge**  5:15
  11:25
**known**  7:14 17:23
  17:24
**knows**  13:19

**l**

**l**  3:10
**lastly**  9:6
**law**  25:15
**lawsuit**  26:6
**ledgers**  11:17
**legitimate**  14:19
**length**  10:20
**letter**  7:14 9:25
  22:12
**let's**  8:9 12:22
  23:13
**light**  10:11
**limit**  10:21
**limited**  25:22
**line**  9:7,11
**little**  11:14 16:16
**llp**  3:9 9:22 25:10
  25:15
**logged**  19:12
**long**  10:15 11:17
  15:1 24:11
**look**  19:21
**lot**  23:24,24

**m**

**m**  1:17 3:15
**madoff**  16:6,17
  18:10 25:16,20
**madoff's**  24:11,12
  25:11
**mailed**  5:17
**maintained**  6:22
**maintenance**  26:4
**maker**  7:3
**manage**  23:25
**managed**  5:23
**manager**  5:23
**mary**  2:25 28:2,7
**matter**  1:5 11:22
  16:24 19:20 28:4
**mckenzie**  3:17
**mean**  12:24 14:9
  16:22 18:5,6 23:16
**means**  12:18 19:22
  22:9 26:5

**meant**  6:2,4
**memorialize**  25:2
**mineola**  28:25
**mistake**  20:19
**modify**  10:1
**money**  14:12
**month**  23:11
**morning**  4:2,3 11:8
  11:9 15:21,22
**motion**  25:11,13,15
  25:21,25
**motions**  20:1,3
**motive**  18:21
**moved**  7:22
**moving**  20:18

**n**

**n**  3:1 4:1 27:1
**name**  6:9
**named**  5:22
**names**  4:18
**narrowly**  17:6
**nay**  25:6
**need**  6:16,22 10:23
  10:24
**needlessly**  18:11
**nelson**  3:10,11
**never**  12:13,14
  15:14 23:18,19
**new**  1:2,11,11 3:6
  3:14,14
**night**  20:19
**noon**  24:13
**norman**  3:18 11:11
**notation**  4:23 16:19
**notations**  5:8 6:1
**notebook**  4:15,16
**number**  25:16
**nw**  3:19
**ny**  3:6 28:25

**o**

**o**  1:16 4:1
**oasis**  3:11
**object**  19:19 20:3,4
**objecting**  15:18
**objections**  4:7,8
  9:13,14

**obtain** 21:11
**obviously** 22:24
  25:13
**office** 9:18,20 10:12
**official** 28:3
**officials** 24:7
**oh** 17:22
**okay** 11:5 12:15,22
  14:5,19 17:22 19:14
  21:13,22
**old** 28:23
**omnibus** 24:1,2
**once** 14:4
**opening** 4:22 5:4,6
**operating** 20:13,24
**operators** 5:13
**opposition** 10:3
**order** 8:20
**ought** 13:5
**outlined** 7:6 11:14

**p**

**p** 3:1,1 4:1
**page** 27:3
**paid** 16:5 18:19
**paper** 15:15
**papers** 12:6
**paperwork** 24:8
**park** 3:13
**part** 9:12 19:4
**particular** 5:3 6:6
**parties** 8:8 9:25
  10:6 13:16 14:8
  17:19
**pay** 20:12 23:7
**people** 5:13 11:23
  12:11,17
**pereyra** 1:25
**perfectly** 14:19
**period** 16:7
**permit** 10:13 23:8
**permitted** 10:5
  25:10
**person** 9:19,20
**personal** 9:9
**persons** 11:25
**pertaining** 19:1

**picard** 3:4 4:4
**piece** 15:15
**pig** 13:12
**plan** 9:11
**planning** 24:9
**plans** 9:22
**plaza** 3:5
**please** 26:14
**pled** 18:4
**point** 13:5 14:3
  16:13,15 17:4 18:19
  21:16
**points** 15:23 18:20
**poke** 13:12
**ponzi** 25:12,22 26:4
**posed** 22:13
**position** 22:25
**possibility** 22:20
**possibly** 22:23
**pre** 22:1,7
**predates** 25:17
**prepared** 17:15
**previously** 8:6,23
**print** 5:14
**printed** 5:17
**prior** 7:21 17:20
**prison** 8:14 10:21
  16:13 24:5,7
**privilege** 7:15 19:11
**privy** 16:9
**probably** 19:6
**probative** 17:8
  23:20
**problem** 11:18
  12:13
**proceed** 8:22 24:25
**proceedings** 25:8
  26:16 28:4
**process** 13:1,21
  14:25 24:6
**product** 19:8,10,12
**proffer** 13:4,6,8,11
  13:18
**profit** 5:2,25 6:1,5,8
  6:8 16:18
**profits** 4:25,25 6:16
  6:17,18 12:4,5,7

**prompt** 18:7
**proper** 7:7 9:3 21:4
**proposed** 10:3
**protect** 8:20
**protection** 1:5
**prove** 11:18
**provide** 8:3,17,25
  10:10
**punch** 5:13
**purported** 6:7
**pursuing** 9:7 11:16
**put** 8:9 13:16 14:8
**putting** 14:6
**pw** 5:7 6:9 12:18
  16:19 22:4

**q**

**question** 6:25 11:20
  14:2 22:13 23:7
**questioning** 9:8,11
  10:19
**questions** 7:9
**quick** 21:15
**quickly** 21:17

**r**

**r** 1:16 3:1 4:1
**raise** 9:11 11:3
**raised** 7:13 21:24
**ranging** 20:1
**rar** 3:12
**read** 22:8
**real** 12:7
**really** 5:15 11:20
  13:7 15:17 20:5
  21:23
**reason** 6:12 9:6
  14:20 15:18
**reasonable** 23:4
**reasons** 21:20
**rebut** 15:16
**received** 4:6 9:13
  12:14
**recess** 25:7
**recognized** 15:15
**record** 24:21,24
  25:10

**recording** 28:3
**records** 6:20 18:23
**refer** 4:15
**referred** 5:23
**regard** 7:4
**regarding** 9:9 22:17
**relate** 15:17
**relates** 26:3
**relating** 5:20
**relevance** 26:7
**relevant** 4:10,10 5:2
  7:9 9:2,7 10:9 13:4
  13:15 14:6 16:16
  18:22,23 21:6,9,18
  21:19,25 22:2,3,5
  25:23 26:2
**remaining** 10:11
**remains** 4:9
**repeatedly** 16:10
**reported** 6:7
**representation** 8:21
**representative**
  22:17
**represented** 22:21
**request** 6:17 10:13
  18:18,23 21:2,4
  22:12 25:14
**requested** 23:18
**require** 23:7
**required** 24:8
**requires** 18:7 22:22
**rescheduling** 4:7
**reserve** 25:13
**resolution** 18:9
**respond** 25:13
**response** 7:17,18
**responsibilities**
  5:20
**resume** 25:8
**review** 14:24
**richard** 3:21 11:10
**right** 7:16 11:5
  12:23 14:18 15:11
  17:1,1,4 19:15 20:9
  24:19,22,23 26:7,9
**rights** 25:13

**road** 28:23
**rockefeller** 3:5
**ruby** 8:2
**rulings** 27:2
**running** 23:6
**russell** 3:10,11

**s**

**s** 3:1 4:1
**sala** 5:22
**sale** 6:7
**saved** 14:12
**saying** 12:21 18:20
 21:6
**says** 13:17 14:8
**schedule** 10:2
**scheduling** 7:22
**scheme** 25:12,22
 26:5
**scratch** 15:15
**seanna** 3:7 4:4
**search** 11:13
**second** 14:13 18:21
 24:22
**securities** 1:5
**security** 6:7,8,9
**see** 8:5,22 22:10
 23:13
**seemingly** 11:12
**send** 4:23 6:14,15
 12:10,12
**sense** 13:13
**sent** 4:25 6:2,11,15
 6:18 24:7
**september** 10:4
 12:24
**set** 6:13,14,15,24
 7:3 12:24 24:4,4
 25:25
**setting** 7:2
**settlement** 7:25
 8:10 10:12 13:2
 17:13 18:3,4 19:1
**she'll** 13:4
**she's** 13:8 14:4,5
 15:9,10 18:15 19:21
 20:17 21:9

**shielded** 16:1 17:9
 17:10
**short** 22:6
**shouldn't** 20:11
**show** 8:15 14:11
**shown** 6:8
**sign** 17:23
**signed** 8:3 17:12,18
 17:19,20 18:1,3,5
 20:6,15 22:19,21
 23:5
**signs** 8:9 20:9
**sipa** 18:7
**sitting** 26:15
**smb** 1:3
**somebody** 15:14
**soon** 24:9
**sorry** 9:20 19:9
**sort** 25:2
**sought** 7:5
**sound** 28:3
**southern** 1:2
**specific** 13:22
**specifically** 9:9 11:4
**spiral** 4:15
**stanley** 3:11
**started** 18:20 23:12
 25:12
**statement** 6:9
**statements** 5:14 6:3
**states** 1:9 17:14
**stipulation** 10:1
**stood** 13:3
**stored** 5:16
**streamline** 10:2
**stuart** 1:17
**sufficient** 10:5
**suggested** 20:7
**suite** 28:24
**summary** 5:10
**sunday** 8:12 20:16
 20:20
**supervisor** 4:13
**supported** 7:7
**suppose** 12:17
**supposed** 15:1
 24:18

**sure** 25:1
**system** 5:14 11:24

**t**

**table** 15:8
**tailored** 17:6
**take** 6:6 14:7 15:8
 17:15 24:3,11 25:11
 25:22,24
**taken** 9:8 12:25
 14:4 15:9 25:7
**taker** 22:16
**talk** 11:17
**talking** 14:22 15:7
**tell** 4:9 13:1 20:6
 22:23 23:11,15
**tells** 22:20
**terms** 22:8 26:5
**testified** 4:13 6:1,11
 6:12,21 7:1 13:23
 13:24
**testify** 5:7 7:21 8:9
 8:13 15:10 16:2,4
 16:11,14 18:1,3,13
 18:15 19:6 20:11,15
 20:17 22:21 23:4,12
**testimony** 4:9 7:5,9
 7:11 8:3,17,25 9:2,5
 9:6 10:7,9,10,11
 11:23 12:25 13:2,4
 13:12,15 14:5,6
 15:16 18:15 19:20
 19:23 21:9 22:8,17
 25:20,22
**thank** 11:6,7 15:19
 19:16,17 21:13,14
 21:22 25:9 26:10,11
 26:13,14
**that's** 7:13 10:19
 11:20 12:5,19 14:2
 14:19 16:16 17:2
 18:9,15 19:15 21:4
 21:19,21,25 22:7
 24:19,22,23 25:23
**there's** 21:3,11
 22:20,24 24:24
**they're** 11:16 21:4

**thing** 22:18 23:13
**things** 20:18
**think** 9:10,14 10:15
 10:24 11:14,22 14:1
 14:13 16:16 18:8,15
 19:21 20:16 21:3
**thought** 17:17
**three** 10:25 21:23
**time** 10:6,21 11:2
 15:4 19:3 20:4 23:6
**today** 4:6,10 13:3
 15:23
**told** 8:12 10:23
 16:13 19:6 20:10,14
 20:14 26:3
**totally** 16:13
**transaction** 6:10,17
**transactions** 5:25
 6:3,6 7:8 9:4 12:1,4
 12:8 13:5
**transcribed** 2:25
**transcriber** 28:6
**transcript** 24:19
 28:3
**traveled** 16:4 17:14
**treat** 7:7
**trial** 11:20 14:2
 19:3
**trustee** 3:4 4:5,11
 4:12 7:25 8:1,5
 9:21 12:5 15:3
 17:13,24 18:14,19
 19:19 20:1 22:18
 23:3,7 25:12,14
**trustee's** 7:7 8:20
 11:12 12:3 15:24
 16:3,15 18:6,24
 19:6 22:11
**truth** 11:13
**try** 10:1 12:16
 23:20
**trying** 12:15 13:1
 23:25
**turn** 24:24
**turning** 9:13
**two** 5:12 15:23
 18:20 20:1 21:20

**types**  5:24

**u**

**u.s.**  1:1,18 8:1 10:12
**understand**  13:4
   14:3 16:9 18:25
   19:4,21 23:10,17
**understanding**
   24:19 25:3
**understood**  26:8
**undoubtedly**  12:12
**unfortunate**  23:23
**united**  1:9 17:13
**utility**  20:8

**v**

**veritext**  28:22
**victims**  16:6

**w**

**waiting**  24:8
**want**  5:10 19:5,7
   21:18,19,20
**wanted**  6:19
**washington**  3:20
**wasn't**  18:3,5 20:15
**wasted**  7:11
**way**  6:13,24 7:8
   22:12
**week**  8:4
**weeks**  7:21
**weigh**  12:18
**weight**  19:23
**went**  11:19 12:18
   13:22 20:7,11,16
   22:25 23:3
**we'd**  25:23
**we're**  4:6 14:9 15:2
   15:7 16:12,13 17:7
   17:8 23:25 24:6,8
**what's**  5:23 7:17
**who's**  26:15
**willing**  8:17 18:15
   23:12
**winifred**  5:18
**withdrawal**  5:2,25
   6:1,5,20,21 7:8 9:3
   13:5 16:18

**withdrawal's**  23:15
**withheld**  17:25
**witness**  5:4,5,22
   17:3 18:12,23
**witnesses**  4:12,14
   4:19,20 5:9 7:1,6
   9:5 16:20,24 17:5,7
   22:3 23:13
**woman**  5:22
**won't**  13:20
**work**  19:8,10,11
**working**  10:1
**works**  8:15
**worth**  11:15
**worthwhile**  14:13
**wouldn't**  13:12
   20:10 23:1
**write**  6:16
**writing**  6:22
**written**  11:24

**x**

**x**  1:4,7 27:1

**y**

**yea**  25:5
**yeah**  5:11 10:17
**york**  1:2,11,11 3:6
   3:14,14
**you're**  14:21,22
   16:23 22:25 26:6

**z**

**zajaczkowski**  2:25
   28:2,7