Page 1

1   UNITED STATES BANKRUPTCY COURT

2   SOUTHERN DISTRICT OF NEW YORK

3   Case No. 08-01789-smb

4   Adv. Case No. 10-04446-smb

5   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

6   SECURITIES INVESTOR PROTECTION CORPORATION,

7            Plaintiff,

8       v.

9   BERNARD L. MADOFF INVESTMENT SECURITIES, et al.,

10           Defendants.

11  - - - - - - - - - - - - - - - - - - - - - - - - - - - x

12  IRVING H. PICARD TRUSTEE FOR THE LIQUIDATION OF BERNARD L.

13  MADOFF INVESTMENT SECURITIES LLC,

14           Plaintiff,

15      v.

16  TRUST UNDER AGREEMENT DATED 12/6/99 FOR THE BENEFIT OF

17  WALTER AND EUGENIE KISSINGER, ET AL.,

18           Defendants.

19  - - - - - - - - - - - - - - - - - - - - - - - - - - - x

20               U.S. Bankruptcy Court

21               One Bowling Green

22               New York, NY  10004

23               July 6, 2016

24               10:15 AM - 10:50 AM

25

Page 2

1   B E F O R E :

2   HON STUART M. BERNSTEIN

3   U.S. BANKRUPTCY JUDGE

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1    Hearing re:  Discovery Conference re Deposition of Aaron

2    Blecker for Profit Withdrawal Proceeding

3

4    Hearing re:  Discovery-Related Matters (applies to various

5    additional adversary proceedings as set forth in letters

6    dated 5/24/16 from Chaitman LLP)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Sonya Ledanski Hyde

Page 4

1    A P P E A R A N C E S :

2

3    CHAITMAN LLP

4         Attorney for Carol Nelson, Defendant

5         465 Park Avenue

6         New York, NY 10022

7

8    BY:  HELEN DAVIS CHAITMAN, ESQ.

9

10   BAKER & HOSTETLER, LLP

11        Attorney for the Debtor

12        45 Rockefeller Plaza

13        New York, NY 10111

14

15   BY:  EDWARD J. JACOBS

16        DAVID J. SHEEHAN

17

18

19

20

21

22

23

24

25

Page 5

```
  1                  P R O C E E D I N G S

  2              MR. SHEEHAN:  Good morning, Your Honor.  David

  3     Sheehan, for the trustee.  I'm here on the Blecker

  4     application.

  5              THE COURT:  Okay.  Well, let me hear from Ms.

  6     Chaitman first, because who wrote the first letter?

  7              MR. SHEEHAN:  Pardon, Your Honor?

  8              THE COURT:  Who wrote the first letter?  Oh, you

  9     wrote the first letter, I'll hear from you first.

 10              MS. CHAITMAN:  Shall I make my appearance now?

 11              THE COURT:  Yeah, sure.

 12              MS. CHAITMAN:  Okay.  Helen Davis Chaitman, on

 13     behalf of Aaron Blecker.

 14              MR. SHEEHAN:  Your Honor, what we seek to do here

 15     today is one that out of the ordinary course.  I must say I

 16     don't know why I'm here.  What we have here is a claimant

 17     who claims he didn't get a check.

 18              THE COURT:  Right.

 19              MR. SHEEHAN:  That's it, that's the evidence,

 20     that's all they have, they have nothing else.  He says "I

 21     didn't get it."

 22              THE COURT:  Okay, and you say he did.

 23              MR. SHEEHAN:  That's right.

 24              THE COURT:  So what's the purpose of taking his

 25     deposition?
```

Page 6

1              MR. SHEEHAN:  The purpose of taking his deposition

2        is his truthfulness is central to his entire case.

3              What we did is we did exactly what everyone else

4        would do.  Once it became clear, as Your Honor suggested,

5        and even reminded that more than once, that we should have

6        an inquiry into the facts behind this.  The trustee set this

7        up as a motion --

8              THE COURT:  The inquiry I suggested was more into

9        the general question of what VW meant.  Obviously, I guess

10       you're free to take discovery into every individual case in

11       which someone has asserted a claim that the trustee is

12       determined to disallow.

13             But the discovery we were talking about was not

14       individual discovery.  But I'm not aware of a discovery

15       deadline vis-à-vis claims determination.  So let's get off

16       the timing of it, and tell me what you think Mr. Blecker,

17       who has just turned 105 --

18             MR. SHEEHAN:  Correct.

19             THE COURT:  -- is going to testify to that he

20       hasn't already testified to.

21             MR. SHEEHAN:  I don't care if he's 25, 55, or 105.

22             THE COURT:  What do you think he's going to say

23       that he didn't say --

24             MR. SHEEHAN:  What he's going to say is he's going

25       to --

Page 7

```
 1              THE COURT:  Let me finish.

 2              MR. SHEEHAN:  I'm sorry, Your Honor.

 3              THE COURT:  What do you think he's going to say

 4   that he didn't say in his prior deposition?

 5              MR. SHEEHAN:  Well, he's going to answer questions

 6   that we didn't ask then.

 7              THE COURT:  Why didn't you ask them?

 8              MR. SHEEHAN:  Because it was a week after Your

 9   Honor suggested that we take it.  We hadn't done any

10   discovery, we had not done document demands, we had not done

11   interrogatories, we had not done request for admissions.

12              In those request for admissions and document

13   demands, he has contradicted statements he has made in

14   writing.

15              THE COURT:  Well, then you'll just show that at

16   the hearing, and maybe --

17              MR. SHEEHAN:  Your Honor, I'm suggesting that I

18   don't get to take this man's deposition before because he's

19   105?

20              THE COURT:  No.

21              MR. SHEEHAN:  There's no other reason not to allow

22   this.

23              THE COURT:  All right, all right.

24              MR. SHEEHAN:  Really isn't.

25              THE COURT:  Okay.
```

Page 8

1          MR. SHEEHAN:  He's contradicted himself.  He's

2     contradicted himself at the deposition.  He couldn't

3     remember the names of people at the deposition, but he

4     remembers whether he got a check or didn't get a check.  And

5     Your Honor's suggesting that this is not a fertile field for

6     a deposition?

7          THE COURT:  No, I'm not.  Let me hear from Ms.

8     Chaitman.

9          MS. CHAITMAN:  Your Honor, you had originally

10    suggested that we preserve his testimony.  We set a date for

11    the deposition.  The trustee's counsel was present.  He

12    chose not to ask any questions.  He didn't request to

13    continue the deposition.  The trustee's counsel never

14    requested to continue the deposition.

15         Mr. Blecker is now 105 years old.  The discovery,

16    with respect to the profit withdrawal issue, had closed and

17    it was extended simply based on Your Honor's urging that the

18    trustee speak to the Madoff employees who had handled the

19    profit withdrawal transactions.  That was the reason for the

20    extension of the discovery.  Normally, Your Honor --

21         THE COURT:  Well, but this really goes to his

22    individual claim determination.  There is this kind of

23    larger issue of what PW means, without regard, necessarily,

24    to any particular claimant, and I'm not going to hear

25    testimony at that hearing, claimants coming up and saying,

Page 9

1    "I didn't get anything."  I'll hear that, I guess, when the

2    time comes for the claim determination.

3            MS. CHAITMAN:  But the thing is, when you take a

4    deposition, your adversary has an obligation to come and ask

5    questions.  He can't wait three and half years later, and

6    all of a sudden think of a question.  And in addition, Your

7    Honor, we're dealing with a man who's 105 years old.  I

8    don't want him to die over this.

9            THE COURT:  Can I ask you a question?  There was

10   an exhibit marked at his deposition, a declaration.  What

11   declaration was that?  Do you remember?

12           MS. CHAITMAN:  It was the declaration that had

13   been filed with the Court a few days -- within a couple of

14   weeks before we argued, and Your Honor made the request that

15   his testimony be preserved.

16           THE COURT:  Was it the declaration that he signed

17   on April 29th, 2014?

18           MS. CHAITMAN:  I believe that it was, Your Honor.

19           THE COURT:  All right, thank you.  I'm not going

20   to permit you to take Mr. Blecker's deposition.

21           On April 19th, 2014, he submitted a declaration

22   which squarely put into issue the question of his profit

23   withdrawals, and whether he had ever received anything.

24   Over two months later -- what was the date of his

25   deposition?  More than two months later, you take his

Page 10

1    deposition, or you defend his deposition.

2          Ms. Chaitman takes it at my suggestion, because at

3    that time he was 103, to preserve his testimony.  He says,

4    "I didn't receive any withdrawals."

5          Now, you know, I mentioned the last time that

6    there are things about that testimony that scream a little

7    credibility, or credulity, but you had the opportunity to

8    take his deposition at the time.  He was 103, what were you

9    reserving questions for?

10          He's going to testify that he didn't receive

11   anything.  If you have any contrary evidence that he did,

12   you can bring it forward.  But there's no need --

13          MR. SHEEHAN:  Could I --?

14          THE COURT:  -- to take his deposition.  He's been

15   deposed, you had the opportunity to cross-examine him.  The

16   issue of what he withdrew was upfront in a declaration that

17   he submitted two months before, so you had all the

18   information you needed.  Anything else on this?

19          MR. SHEEHAN:  I object.

20          THE COURT:  Okay.

21          MR. SHEEHAN:  Your Honor --

22          THE COURT:  You can submit an order.  Next?

23          MS. CHAITMAN:  If you'd like, Your Honor, I can

24   start.  We're here on the ever-arising issue of the bank

25   subpoenas.

Page 11

1          THE COURT:  The never-ending, I would say.

2          MS. CHAITMAN:  Yes, you're right, the never-ending

3    issue.

4          When I was here before Your Honor in April, we had

5    a colloquy that wasn't on the calendar, but we had a

6    colloquy on the record, and Your Honor indicated that if the

7    defendants would submit an affidavit consenting to the years

8    on Exhibit B that were at issue in the subpoena, that --

9          THE COURT:  Are these the two-year or the three-

10   year subpoenas, all of them?

11         MS. CHAITMAN:  Well, this has what's happened, if

12   I may, just to explain it.

13         THE COURT:  Right.

14         MS. CHAITMAN:  Based on what Your Honor stated, I

15   then submitted for the then-pending subpoenas -- of course,

16   it's multiplied enormously.  For the then-pending subpoenas,

17   I submitted affidavits from each of my clients.  Some of

18   them said "We consent for five years to Exhibit B," some

19   said, "We consent for two years."  It varied.

20         THE COURT:  The question, though, vis-à-vis the

21   subpoenas, is a lot of them were two year; two year before

22   the petition and one year after.

23         MS. CHAITMAN:  Now they go from 1998.

24         THE COURT:  Okay.

25         MS. CHAITMAN:  They cover an entire period.

Page 12

1          THE COURT:  Fine.

2          MS. CHAITMAN:  So my understanding of what Your

3   Honor had ruled, and perhaps I've misunderstood, was that

4   for the years in which the clients acknowledged Exhibit B as

5   accurate, there can't be a bank subpoena served.

6          THE COURT:  Can I ask a question because it was

7   raised in one of the letters?  In acknowledging the

8   accuracy, did they also acknowledge that they received the

9   transfer?

10          MS. CHAITMAN:  Yes, there's deposits and

11   withdrawals.  It didn't say that, but I--

12          THE COURT:  Okay, would this be resolved -- this

13   part of it be resolved by you simply submitting consent

14   orders, assenting orders on the record that deems all of the

15   deposits to have been made, and all the withdrawals to have

16   been taken and received for the years that they agreed to?

17          MR. JACOBS:  I don't believe --

18          THE COURT:  I know there are other issues, but

19   let's deal with that one first.

20          MR. JACOBS:  Right.  There are -- it's not an easy

21   answer, Your Honor, because it's unclear -- it's clear that

22   the defendant is not acknowledging receipt of the two-year

23   transfers, which is an issue -- a disputed issue of

24   discovery.

25          THE COURT:  But if they're acknowledging that

Page 13

1    they've received --

2              MR. JACOBS:  The affidavits only acknowledge that

3    for a certain specified year that the customer statements

4    are accurate.  I, Your Honor, don't know what that means.  I

5    don't know if that means the defendants received the

6    transfers, they made the deposits --

7              THE COURT:  But that's why I'm asking the question

8    on this issue.  Maybe this can just be resolved with an

9    order that says that for the period they admit -- I'm just

10   looking at Russell Oasis, he admits that from 2000 on,

11   Exhibit B is accurate.

12             Can this part of it simply be resolved by an order

13   that says that the deposits and withdrawals that appear on

14   the statement, this particular occasion, 2000 on are deemed

15   to be -- the deposits have deemed to have been made to BLMIS

16   and the withdrawals are deemed to have been taken and

17   received by the defendant.  And that's all it says.

18             MR. JACOBS:  Unfortunately, it's not that simple,

19   Your Honor --

20             THE COURT:  Why not?

21             MR. JACOBS:  Because many of the customer

22   statements also have inter-account transfers, for example,

23   which our allegation is there weren't actually deposits nor

24   withdrawals, it was a fictional bookkeeping entry.

25             THE COURT:  I understand that.  But you're not

1    suing based on inter-account transfers.

2            MR. JACOBS:  Well, the inter-account transfer,

3    depending on how we treated the principal cash balance of

4    the related account, can affect the net equity calculation

5    of the sued-upon account.  So it's very relevant to whether

6    --

7            THE COURT:  I don't know how they could admit

8    that.  That's a third party transferring -- for all they

9    know, a third party makes a transfer to the account.

10           MR. JACOBS:  Right.  But Your Honor, Ms. Chaitman

11   is submitting on behalf of her client's very loose language

12   that talks about the accuracy of statements that could later

13   be interpreted to, you know, as a gotcha, well, you know,

14   you have to now -- you have to now live with our contention

15   that there was a $3 million inter-account transfer made to

16   this account, contrary to our Exhibit B in our complaint,

17   contrary to our allegations in the complaint, and contrary

18   to our principal cash balance.

19           So the issue is the defendant, in our view, needs

20   to say that the Exhibit B attached to the trustee's

21   complaint is 100 percent accurate and correct, both with

22   respect to all of the deposits and withdrawals, and with

23   respect to the trustee's calculation of the principal cash

24   balance, and with respect to the defendant's receipt of the

25   two-year transfers that were allowed to recover under the

Page 15

1    relevant law.

2            None of these affidavits come even close to doing

3    that, so we believe we have an absolute right to this

4    discovery, and this isn't even taking into account the issue

5    of the affirmative defenses, which none of Ms. Chaitman's

6    clients have --

7            THE COURT:  Stop.  How would any of these

8    defendants' banks have records of transfers from one BLMIS

9    account to another BLMIS account?

10           MR. JACOBS:  They wouldn't because -- they

11   wouldn't.  And I'm not saying that we're seeking that

12   discovery from the banks, but it would show that there was

13   never any deposit made from the defendant, that's for

14   example.

15           THE COURT:  But I recall that -- I don't have the

16   statements in front of me -- you had specific columns that

17   showed deposits and withdrawals and I know that there are

18   notations regarding inter-account transfers.

19           MR. JACOBS:  Right.

20           THE COURT:  But I don't know how you insist that a

21   defendant admit that an inter-account transfer occurred or

22   that the real value of that transfer was in some amount.

23           MR. JACOBS:  I'm not asking, I'm not saying in

24   every situation that the bank needs to do that.

25           THE COURT:  But it's not nothing to do with the

Page 16

1    bank discovery.  We're talking about bank discovery.

2              MR. JACOBS:  Okay.  But what you're proposing --

3    what you -- forgive me if I misunderstood what you proposed.

4    I understood your proposal to be if there were an order

5    testifying to the accuracy of the customer statements, that

6    should be suffice -- that would theoretically be sufficient,

7    and I'm responding to Your Honor's question by saying it's

8    not because the customer statements are -- don't just

9    reflect deposits and withdrawals.

10             THE COURT:  All right.  So what's the defendant's

11   position -- You know, for instance, let me go back to Mr.

12   Oasis's affidavit or declaration.  He says, "I stipulate the

13   deposits and with withdrawals from 2000 are as represented

14   in Exhibit B."  Does that include the trustee's valuation of

15   inter-account transfers?  I don't know if there's one in

16   that case

17             MS. CHAITMAN:  There aren't any inter-account

18   transfers in that particular account, and the inter-account

19   transfers are generally much earlier, and anyone would have

20   bank records.

21             THE COURT:  Okay.

22             MS. CHAITMAN:  If we're focusing simply on the

23   bank records, what I thought we were trying to do -- and if

24   my wording wasn't satisfactory, the trustee could have

25   suggested something differently -- but I'm not consenting to

Page 17

1    judgment against the client.

2              THE COURT:  Right.

3              MS. CHAITMAN:  I'm simply saying that for whatever

4    period each affidavit deals with, you're not entitled to the

5    bank records, because there's no factual issue as to those

6    deposits and withdrawals.

7              THE COURT:  But do they also consent, for the

8    period they agree, that the inter-account transfers, as

9    reflected, are accurately reflected?

10             MS. CHAITMAN:  No, they can't do that, because the

11   transferor account was a different person, and they have no

12   knowledge of it.

13             MR. JACOBS:  But, so --

14             THE COURT:  Stop.  So, when Mr. Oasis, for

15   example, or some of the others, agree that the deposits are

16   accurately reflected, that does not include inter-account

17   transfers.

18             MS. CHAITMAN:  But there are no inter-account

19   transfers.

20             THE COURT:  Well, that's what I'm asking you.

21             MS. CHAITMAN:  But for this period, Your Honor,

22   that's what I'm saying, there are very few inter-account

23   transfers --

24             THE COURT:  Okay.

25             MS. CHAITMAN:  -- for the -- we're talking about

Page 18

1    the last several years of Madoff's operation.

2            THE COURT:  All right.  Let me rephrase what I

3    said.  During the period that they agree that the records

4    accurately reflect the deposits and the withdrawals, does

5    that agreement include any inter-account transfers during

6    that period?

7            MS. CHAITMAN:  I don't have every affidavit in my

8    mind, but I do not believe that it does, because it's only

9    the last two to four years, except Mr. Oasis went back to

10   2000.

11           THE COURT:   All right.

12           MS. CHAITMAN:  But I don't believe that there are

13   inter-account transfers within this period, and I don't

14   think the bank subpoenas would reveal any evidence of an

15   inter-account transfer.

16           THE COURT:  That, I agree.  I agree.  Look, what I

17   said repeatedly was that if they would agree that they got

18   the withdrawals -- I was focusing on withdrawals, but I

19   guess made the deposits that are indicated, certainly for

20   the periods covered by the subpoena, and I understand that

21   the subpoenas are now reaching -- going farther back, that

22   they don't have to produce bank records just on that issue

23   if they admit that they've got the deposits and the

24   withdrawals.  I realize that there are affirmative defenses

25   and things like that.

1          MR. JACOBS:  Right.

2          THE COURT:  We'll address that in a minute.  But

3    it seems to me, for what the bank subpoenas were looking

4    for, if they admit that the deposits and the withdrawals

5    during the period they acknowledge are accurate, subject to

6    possible exceptions for inter-account transfers, which I

7    didn't expect them to be in a position to admit, then that

8    satisfies that aspect of the bank subpoena.

9          MR. JACOBS:  Well, Your Honor, from our

10   perspective we don't -- legally our position is we don't

11   need the bank records to prove any aspect of our case.  The

12   BLMIS records we have and that we produced to Ms. Chaitman

13   in every single one of these cases together, as verified by

14   the JP Morgan account records for BLMIS accounts, which show

15   the account balance activity --

16         THE COURT:  You're sure going through a lot of

17   effort to get the records if you don't need them.

18         MR. JACOBS:  Well, Your Honor, Ms. Chaitman is

19   contesting the accuracy of our records.  And Your Honor has

20   not yet ruled on whether our proofs are sufficient.  So we

21   would be committing malpractice if we didn't aggressively

22   pursue, given Ms. Chaitman's challenge to our records, the

23   bank records from the defendant, which I might add, the

24   defendant's had an obligation to preserve at a minimum, when

25   they filed their claims back in 2009 and most of them did.

```
 1              So I'm not saying we're going to get life of the

 2    account bank subpoena bank records for each defendant in

 3    every single case.  Most of the banks are telling us they

 4    only have some limited subset of those documents for the

 5    life of the account.  But I'm entitled to at least try.

 6    Because if I can't get them, I also have a potential

 7    spoliation argument that, in a worst-case scenario, I'm

 8    entitled to make, because that may entitle me to an adverse

 9    inference as to the defendant's challenge to my proofs.

10              THE COURT:  I think we're talking about two

11    different things.

12              MR. JACOBS:  Okay.

13              THE COURT:  Ms. Chaitman says, and this can be

14    embodied in an order in each case, a brief order, which you

15    can send on notice, or submit a consent order, that the

16    client -- I'm sorry, the defendant acknowledges that the

17    deposits listed in whatever column it was, and the

18    withdrawals listed in whatever column it is, for the years

19    that they're willing to admit, were actually made, in the

20    case of deposits, or withdrawals were made and received for

21    the years -- you know, you're not going to get an agreement

22    about inter-account transfers, and there's nothing in the

23    bank records.

24              MR. JACOBS:  I'm not asking for one, Your Honor, I

25    only based --
```

Page 21

1            THE COURT:  So why doesn't that resolve the bank

2    subpoena issue as to these people?

3            MR. JACOBS:  Because it's still -- I guess if it's

4    worded correctly, the defendant would also admit receipt of

5    the relevant withdrawals.  But also --

6            THE COURT:  But she's prepared to do that, or I'll

7    sign an order to that effect, unless she tells me she --

8            MR. JACOBS:  Well, Your Honor, you've invited that

9    --

10           MS. CHAITMAN:  We've been doing that, Your Honor,

11   for specific years.

12           THE COURT:  Well, you know, I remember some of the

13   responses to the requests for admission.  You said that

14   withdrawals were made, but you didn't receive them and that

15   --

16           MS. CHAITMAN:  But since then we've been giving

17   affidavits for different years, depending on the client.

18           MR. JACOBS:  The affidavits don't go anywhere near

19   that bar of what Your Honor just suggested.

20           THE COURT:  But I just said I would enter an order

21   that said that, unless Ms. Chaitman says, "No, I don't

22   agree," and then we can return to the bank subpoenas.

23           MS. CHAITMAN:  No, I do agree.  I do --

24           THE COURT:  All right, fine.  So in each of these

25   cases, submit an order, proposed order or settle a proposed

Page 22

1   order, if Ms. Chaitman won't consent, to the effect that the

2   defendant admits that the deposits reflected in such-and-

3   such account for such-and-such years is accurate, and that

4   the withdrawals, which she admits they received, are

5   accurate for such-and-such year.

6            MS. CHAITMAN:  Can we do this in all of my cases?

7   It's 94 separate cases.  I have the same issue in every

8   case.

9            THE COURT:  Well, if it's the same issue, and

10  you're willing to admit that the deposits were made, your

11  receipts were received, other than this possible inter-

12  account transfer issue, why doesn't that solve everything?

13           MS. CHAITMAN:  And then the trustee would not be

14  permitted to subpoena bank records.

15           THE COURT:  Well, wait, you'd still have an issue

16  of the bank records for the defenses.  But that's something,

17  that's easier to deal with.

18           MR. JACOBS:  Your Honor, we're willing to

19  entertain an order on a case-by-case level, because every

20  case is different, but Ms. Chaitman has asked for this order

21  prospectively.

22           THE COURT:  I'm not going to sign a blanket order.

23  Why don't you do this?  Why don't you provide the proposed

24  orders to Ms. Chaitman, three cases which trigger this

25  issue.

Page 23

1          MR. JACOBS:  I believe there were six, Your Honor.

2          THE COURT:  Whatever the number was.  I don't

3    know, I'm looking at three exhibits, I thought.  Okay,

4    whatever the number is.  I mean, I guess you can do it  in

5    one if they're all the same.  And if you can agree on the

6    language, fine.  If not, you'll come back, we'll figure out

7    the language, and I'll just sign the orders for all the

8    cases.

9          MR. JACOBS:  Your Honor, I would normally be very

10   happy to do that.  My only reservation is that we have

11   already been doing this with Ms. Chaitman for over six

12   months, we've provided --

13         THE COURT:  I said I would sign an order, though.

14   She has to object to a specific order.

15         MR. JACOBS:  Okay, so we will prepare that order.

16         THE COURT:  And if the objection is such that it

17   doesn't sound like the defendant is really admitting

18   anything, which is what this is about --

19         MR. JACOBS:  Right.

20         THE COURT:  Then we'll go back to the subpoenas,

21   that's all.

22         MR. JACOBS:  Okay.

23         MS. CHAITMAN:  But Judge, the whole purpose in

24   this exercise is because we believe that the trustee has

25   been subpoenaing the bank records in order to identify

Page 24

1    subsequent transferees.  So if we have this procedure, and

2    then Your Honor nevertheless gives the trustee the right to

3    subpoena and to use bank records for the years that are

4    covered by the stipulation, then we've accomplished nothing.

5             THE COURT:  Why would I do that, except for the

6    possibility of defenses, why would I do that?

7             MS. CHAITMAN:  Well, but I think we need to iron

8    out what defenses would require production of the subpoenas

9    because otherwise, why would we --

10            THE COURT:  They're your defenses, and the simple

11   thing is you, the bank will produce or you'll have to get

12   the documents from the bank, and produce all documents

13   relevant to your defenses, and if you don't produce them,

14   you can't use them, that's all.  That's an easier one.

15            MR. JACOBS:  And may I include that language in

16   the order?

17            THE COURT:  Pardon?

18            MR. JACOBS:  And may I include that inclusionary

19   language in the order, Your Honor, that states that to the

20   extent bank records are produced, the information contained

21   therein --

22            THE COURT:  (Indiscernible)

23            MR. JACOBS:  -- concerned any offset or tax

24   payment can't be --

25            THE COURT:  In the first instance, the bank

Page 25

1    records should be turned over to Ms. Chaitman.  Because now

2    you're talking about her affirmative defenses and she has

3    the obligation.

4              MR. JACOBS:  Right.

5              THE COURT:  And she should then produce any bank

6    records that relate to any of her defenses.  And if she

7    doesn't produce them, you can't use them.

8              MS. CHAITMAN:  I have no problem with that.  All

9    right, I have no problem with that.

10             MR. JACOBS:  It still makes me a little bit

11   uncomfortable, respectfully, Your Honor, because the bank

12   records are just one form of evidence that Ms. Chaitman

13   could be using to pursue --

14             THE COURT:  But we're talking about bank

15   subpoenas.  This just relates to the bank subpoenas.  If the

16   defendants individually have other records, that doesn't --

17             MR. JACOBS:  Right, but for example, if Ms.

18   Chaitman is submitting an affidavit from a tax preparer that

19   certain tax payments were made in 2007, I'm entitled to the

20   bank records that would show those funds leaving that

21   defendant's account.  That's just one example where that

22   would put back into play the relevancy of those records.

23             THE COURT:  But she's got to turn that over.  If

24   she doesn't turn over records showing that taxes were paid,

25   how is she going to prove taxes were paid?

Page 26

1          MR. JACOBS:  Right, but there are many forms of

2     proof that a defendant could submit.  They could submit an

3     affidavit from a tax preparer that says, "I caused this to

4     be paid."  And I would be entitled to test that with an

5     actual bank record from a financial institution showing that

6     payment.

7          THE COURT:  But it doesn't give you a bank record

8     showing that the defendant, that, in your example, paid the

9     taxes, I suppose it's possible the accountant paid the

10    taxes, although no accountant is going to do that, so she'll

11    be precluded from using bank records to show she paid the

12    taxes.  How else is she going to do it, unless somebody else

13    paid the taxes?  I mean, I suppose you could have a husband

14    and wife with separate accounts, and the other spouse could

15    pay the taxes.

16         MR. JACOBS:  But there, you know, I'm just noting,

17    there are many forms of evidence.  There is oral testimony,

18    there are other witnesses, and --

19         THE COURT:  I am not foreclosing other discovery.

20    I'm just saying, this is to resolve this recurring issue

21    with bank subpoenas.  It's not precluding you from any other

22    evidence, it just deals with the bank records.

23         MR. JACOBS:  No, I understand, but I'm saying that

24    the bank records specifically would be our way of combatting

25    other evidence from a third-party witness, a tax preparer,

Page 27

1    other documentation.

2              THE COURT:  Why don't you give me a specific

3    example of how you think you're prejudiced by this

4    procedure.

5              MR. JACOBS:  I just -- I can only give you a

6    theoretical example and I just named one.  So a tax preparer

7    at trial gets on the stand and orally testifies that he

8    caused the defendant to pay in taxes X sum of money in 2007.

9              THE COURT:  And the defendant hasn't produced any

10   evidence from banks of that payment?

11             MR. JACOBS:  Right.

12             THE COURT:  At least from banks through the

13   subpoena.

14             MR. JACOBS:  Right, or maybe the tax preparer has

15   documents.

16             THE COURT:  So you think I'm going to believe that

17   hey paid it if there's no evidence that they paid it?

18             MR. JACOBS:  Well, I can't -- I don't presume to

19   predict what Your Honor would do in that circumstance, but

20   all I'm saying is from a Rule 26 perspective, I would be --

21             THE COURT:  They would be precluding from using

22   bank records that they don't produce, in response to the

23   subpoena.

24             MR. JACOBS:  Right.  But I would also be precluded

25   from using the bank records to rebut that evidence, is what

Page 28

1    I'm saying.

2            MS. CHAITMAN:  Your Honor, can I make this very

3    simple?

4            THE COURT:  Sure.

5            MS. CHAITMAN:  To my knowledge, I may be wrong,

6    and Mr. Epstein can correct me, Mr. Edwards -- I don't

7    believe that the bank records go back more than four to five

8    years.

9            THE COURT:  Right, they have to go back to 2003.

10           MS. CHAITMAN:  So virtually every client -- maybe

11   there are some exceptions -- but virtually every client got

12   a tax refund for the years 2003 through 2007.  So they would

13   have in 2009 received a check from the IRS.  Nobody's

14   claiming that they paid taxes that weren't recovered for

15   that period of time.

16           THE COURT:  Do you have a problem with that being

17   in the order that you withdraw any defenses to the extent

18   you say that you are entitled to an offset for taxes paid

19   between tax year --

20           MS. CHAITMAN:  Yeah, from 2003 on.

21           THE COURT:  All right, put that in the order.

22           MS. CHAITMAN:  And there are no bank records for

23   that period -- for prior periods.  You know what I mean?

24   It's --

25           MR. JACOBS:  But, Your Honor, this is not true.

Page 29

1    Ms. Chaitman is submitting responses in discovery that say

2    exactly the opposite; that tax payments were made for every

3    applicable year that the account was open.

4           THE COURT:  But then they got refunds, I thought

5    there was some sort of tax (indiscernible) --

6           MS. CHAITMAN:  What I'm saying is that the banks

7    won't have the records for 1994.  They --

8           MR. JACOBS:  Respectfully, Your Honor, I don't

9    believe the solution to this issue is for me to have to

10   forgo discovery rights.  I believe the solution is for Ms.

11   Chaitman to withdraw or amend her affirmative defense to

12   clearly state what she means by it.  Because otherwise, I'm

13   forgoing discovery to which I'm entitled to under both Rule

14   45 and Rule 26, and it does tie our hands behind our back

15   when Ms. Chaitman later comes out with proofs or evidence

16   that we're not able to use that discovery we were precluded

17   from.

18          THE COURT:  But she can't do it from the bank

19   accounts.  If she doesn't produce -- I don't understand the

20   difficulty.  Maybe I'm missing something.  If she doesn't

21   produce a check or a wire, whatever, that she paid the taxes

22   -- I'm sorry, not she, but the client paid the taxes -- then

23   the defense will fail.

24          MR. JACOBS:  But I still would be entitled --

25          THE COURT:  Unless it was paid from an account

Page 30

1    that she never subpoenaed, or it was paid by a third party,

2    as indicated in a husband-wife situation, where there were

3    separate accounts.

4            MR. JACOBS:  Right.  I understand, Your Honor, but

5    I can only reiterate my example where there's oral

6    testimony, there's other documentation that payments were

7    made that aren't the bank records, that the bank records may

8    contradict.

9            THE COURT:  You know, I don't know how many times

10   I can say this.  We're just talking about the bank records.

11   I am not talking about other evidence.  If you want to take

12   the deposition, if you want to serve document demand, all

13   documents relating to the affirmative defenses, whatever

14   they are, then do that.  But this is just with respect to

15   the bank subpoenas.

16           MR. JACOBS:  I apologize, Your Honor, I'm not

17   making myself clear.

18           THE COURT:  You are making yourself clear.

19           MR. JACOBS:  I'm only talking about the bank

20   records, my --

21           THE COURT:  We're just talking at cross-purposes.

22   I'm not issuing a broad discovery rule for all discovery in

23   this case.  It's just about the bank subpoenas.

24           MR. JACOBS:  Respectfully, Your Honor, the bank

25   subpoenas are the most relevant evidence in all of these

Page 31

1    cases, which are about financial transfers.  So I'm only

2    talking about the bank subpoenas as well, and I'm saying if

3    there's an order precluding me from obtaining them, and

4    proof is later put on that payments were made or other

5    disputes concerning any of our obligations, we will be

6    foreclosed from using those bank records to (indiscernible)

7    our case.

8            THE COURT:  But why would the bank records show --

9    if I'm saying she's precluded from using them and she

10   doesn't turn them over?

11           MR. JACOBS:  Well, I'm saying if an accountant

12   gets on the stand and says there's was a $1 million payment,

13   I won't be able to have the bank records to show that that's

14   not true.  That's the example that I was trying to make.

15           THE COURT:  If he says -- if the accountant says a

16   $1 million payment was made, and a defendant is unable or

17   precluded from producing a record showing that payment, do

18   you think I'm going to believe that that payment was made?

19           MR. JACOBS:  I would hope you wouldn't, Your

20   Honor, but to protect our rights, I have to prepare for that

21   possible eventuality, because I can't predict every --

22           THE COURT:  So what is it that you propose?

23           MR. JACOBS:  I think that I -- what I've said from

24   the very first chambers conference we had in January, Your

25   Honor, if the defendant admits to our Exhibit B, the

1    accuracy of our Exhibit B, which includes the principal cash

2    balance of the account, in addition they admit to receipt of

3    the two-year transfers, and in addition, they withdraw or

4    amend their affirmative defenses, we will withdraw or

5    refrain from serving any bank subpoenas in that case.

6              THE COURT:  You're going to have to show me --

7              MR. JACOBS:  And that also, I believe, is squarely

8    on point with Your Honor's bench ruling from March 23rd on

9    the motions to quash.

10             THE COURT:  But I don't under -- I guess what I

11   don't understand is if I'm precluding them from using bank

12   records that they don't produce to support an affirmative

13   defense, where does that leave you?  I mean, why is that

14   result not favorable?

15             MR. JACOBS:  Because I'm submitting, respectfully,

16   that I'm entitled to the bank records to defend the

17   affirmative defense.  Apart from their affirmative

18   obligation, they do have the affirmative obligation to prove

19   their affirmative defense.  I'm still entitled to seek

20   discovery on any facts or evidence that I believe will rebut

21   that affirmative defense.

22             So that's why, apart from whether they decide to

23   produce bank statements or not, I'm still entitled, from a

24   discovery perspective, to those statements, because I can

25   anticipate that someone might get on the stand and say, "I

Page 33

1    paid $1 million in taxes on June 12th, 2007."  I would want

2    the bank records to prove or deny that.

3              THE COURT:  So if the order that we've been

4    talking about said to the extent records are not produced,

5    they will be deemed not to support the defense, is that --

6              MR. JACOBS:  That would help.

7              THE COURT:  All right, any objection to that?

8              MS. CHAITMAN:  No.

9              THE COURT:  All right, why don't you draft it, and

10   make it simple.

11             MR. JACOBS:  Okay.

12             MS. CHAITMAN:  Your Honor, this motion was brought

13   at a time when subpoenas were served in six cases.  They've

14   now been served in maybe three.

15             THE COURT:  It's the same procedure.

16             MS. CHAITMAN:  Can we agree that it will apply to

17   everyone?

18             THE COURT:  Well, you know, I -- for that matter,

19   I don't have the complaints before me, but --

20             MS. CHAITMAN:  They're all the same.

21             THE COURT:  They're going to be resolved along the

22   same line.  You know, and I know the devil is in the

23   details, and sometimes what sounds like you're agreeing to

24   here, when you go and read it, at least I remember the

25   responses to all submissions that weren't quite as broad as

Page 34

1    had been represented to me.  If an order says straight up, I

2    agree to basically the trustee's record, putting aside --

3                MS. CHAITMAN:  To the accuracy of Exhibit B,

4    right.

5                THE COURT:  -- for a period of time, then they

6    can't get the bank records for that period of time, if it's

7    a short period.

8                Somebody says, "I can only agree to the last six

9    months," and the bank has records going back earlier, they

10   can get those.  We have this affirmative defense issue,

11   which I hope we've resolved.  But I don't see why you can't

12   follow the same procedure in every case.

13               MS. CHAITMAN:  Okay, it just --

14               THE COURT:  How about a separate order in each

15   case?

16               MR. JACOBS:  Thank you, Your Honor.

17               THE COURT:  Because you can't -- all of these

18   cases are different, they all have nuances, some are going

19   to have inter-account transfers, I'm assuming, during that

20   period that they're admitting the accuracy.  Just deal with

21   it on a case-by-case basis.

22               MS. CHAITMAN:  okay.

23               MR. JACOBS:  Your Honor, we've already undertaken

24   very similar efforts.  We've offered Ms. Chaitman fact

25   transfer stipulations, none of which she's agreed to.

1              THE COURT:  I know.

2              MR. JACOBS:  The very simple, straightforward way

3      proposed simple admissions to -- broken down by -- to the

4      discrete detail of every transfer and request for

5      admissions, that was not agreed to.

6              We will endeavor to put together a simple proposed

7      order, but it will have to cover all of the issues that we

8      talked about today, and I unfortunately am not optimistic

9      that we won't be back before you in short order fighting

10     about that order, because Ms. Chaitman just has not

11     cooperated with us as to the factual issues in these cases.

12             THE COURT:  When can you send your draft order?

13             MR. JACOBS:  We could do, for the six cases where

14     Ms. Chaitman's clients have submitted an affidavit, I would

15     propose we start with those and I think that we could put

16     those together in a week's time.  It's kind of a weird,

17     strange time right now.  A lot of people are out because of

18     the holiday, and I don't want to impose any burdens on

19     people who have time off, so two weeks would be better, but

20     certainly no longer than that.

21             Then the other issue is that going forward, a lot

22     of fact discovery has closed in a lot of Ms. Chaitman's

23     cases, and we're not going to retroactively agree to this

24     type of order in those cases.  She's free to admit to

25     disputed factual issues if she wishes, but I don't know why

1   that burden should be on us to have to facilitate that when

2   we already have tried RFAs and fact transfer stipulations.

3          THE COURT:  All I'm suggesting is why don't you

4   come up with a form of the order --

5          MR. JACOBS:  Right.

6          THE COURT:  -- there may be some tinkering in the

7   different cases, but come up with a form of an order.  It

8   will apply to each of the cases which seems to solve the

9   bank discovery issue.

10         MR. JACOBS:  Right.

11         THE COURT:  And if she doesn't agree --

12         MR. JACOBS:   I should be --

13         THE COURT:  -- depending on what the reason for

14   the disagreement is, maybe get the bank records.

15         MR. JACOBS:  I should be in a position to submit

16   that -- to file that with the Court within a week's time, if

17   that's acceptable to the Court.

18         THE COURT:  Why don't you provide it to Ms.

19   Chaitman?

20         MR. JACOBS:  Okay.

21         THE COURT:  Today's the 6th, by the 13th, that's a

22   week from today.

23         MR. JACOBS:  Okay.

24         THE COURT:  Ms. Chaitman, return it -- how long

25   will you need with the order?  We're talking about six

Page 37

1   cases.

2            MS. CHAITMAN:  24 hours.

3            THE COURT:  All right, so provide your response by

4   Friday, July 15th, that's 48 hours, and provide a blacklined

5   copy.

6            MS. CHAITMAN:  Sure.

7            THE COURT:  And I'll schedule another hearing on

8   this, if necessary, for July 20th, two weeks from today.

9            MR. JACOBS:  Okay.  And if we are -- hopefully we

10  can reach an agreement, but if we aren't able to reach an

11  agreement, would you like us to file --

12           THE COURT:  I don't need anymore.  I just have to

13  look at the orders.  Just remember we're talking about the

14  bank subpoenas, not some overly-broad order relating to all

15  the discovery in the case.

16           MR. JACOBS:  Okay.

17           MS. CHAITMAN:  I just want to clarify one thing.

18  Mr. Edwards said, you know, I've been unreasonable in

19  negotiating this.  What the trustee's counsel has asked for

20  is an admission that Exhibit B is accurate from 1980 on.

21  I'm not in a position to do that.  That was never the issue,

22  Your Honor.

23           THE COURT:  I understand.

24           MS. CHAITMAN:  Thank you.

25           THE COURT:  Okay.  Thank you, thank you.

Page 38

1                 (Whereupon these proceedings were concluded at

2       10:50 AM)

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 39

1                     C E R T I F I C A T I O N

2

3        I, Sonya Ledanski Hyde, certified that the foregoing

4        transcript is a true and accurate record of the proceedings.

5        Sonya                    Digitally signed by Sonya Ledanski Hyde
                                  DN: cn=Sonya Ledanski Hyde,
6                                 o=Veritext, ou,
         Ledanski Hyde            email=digital@veritext.com, c=US
7                                 Date: 2016.07.08 10:25:49 -04'00'

8        Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20       Veritext Legal Solutions

21       330 Old Country Road

22       Suite 300

23       Mineola, NY 11501

24

25       Date:  July 8, 2016