```
 1  UNITED STATES BANKRUPTCY COURT

 2  SOUTHERN DISTRICT OF NEW YORK

 3  - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

 4  SECURITIES INVESTOR

 5  PROTECTION CORPORATION,

 6              Plaintiff,

 7  v.                              Adv. Case No. 08-01789(SMB)

 8  BERNARD L. MADOFF

 9  INVESTMENT SECURITIES

10  LLC,

11              Defendant.

12  - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

13              U.S. Bankruptcy Court

14              One Bowling Green

15              New York, New York

16

17              August 11, 2016

18              10:23 AM

19

20

21  B E F O R E :

22  HON STUART M. BERNSTEIN

23  U.S. BANKRUPTCY JUDGE

24

25
```

1  Hearing re:   Conference re Profit Withdrawal Proceeding

25  Transcribed by:  Dawn South

```
 1   A P P E A R A N C E S :
 2   BAKER HOSTETLER
 3        Attorney for the Trustee
 4        45 Rockefeller Plaza
 5        New York, NY 10111
 6
 7   BY:   SEANNA R. BROWN, ESQ.
 8
 9   BAKER & MCKENZIE LLP
10        Attorney for Joel and Norman Blum
11        815 Connecticut Avenue, NW
12        Washington, DC 2006-4078
13
14   BY:   RICHARD A. KIRBY, ESQ.
15
16   SCHULTE ROTH & ZABEL LLP
17   919 Third Avenue
18        New York, NY 10022
19
20   BY:   MARCY RESSLER HARRIS, ESQ.
21
22
23
24
25
```

1  CHAITMAN LLP
2       465 Park Avenue
3       New York, NY 10022
4
5  BY:  GREGORY M. DEXTER, ESQ.

1                     P R O C E E D I N G S

2              THE COURT:  Please be seated.  Madoff.  I have

3     other matters.

4              UNIDENTIFIED SPEAKER:  Sorry, Your Honor.

5              MS. BROWN:  Good morning, Your Honor.  Seanna

6     Brown on behalf of the trustee.

7              Your Honor, the issue today is the scope of the

8     profit withdrawal proceeding, and as Your Honor knows this

9     was set up as an omnibus proceeding to address the profit

10    withdrawal issue only, and based on Mr. Madoff's testimony

11    at his deposition in June that the Ponzi scheme began in

12    1992, the participating claimants have suggested that we

13    now, at this late date, include a new issue in the profit

14    withdrawal proceedings in addition to the actual profit

15    withdrawal issue.

16             And we have a couple of reasons why the start date

17    of issue should not be part of the profit withdrawal

18    proceeding.

19             Number one, from the time that this omnibus

20    proceeding was set up last year the proceeding was only

21    intended to cover the profit withdrawal issue.  Your Honor

22    has entered three scheduling orders, each of which have

23    contained the limitation that any other issues must be

24    addressed separately.  The most recent of those orders was

25    entered last July.

1            And I'd just like to be clear that the two issues

2     are different issues.

3            The profit withdrawal issue involves the trustee's

4     treatment of profit withdrawal transactions generally and

5     specifically as to the participating claimants.  The books

6     and records show that profit withdrawal transactions were

7     checks sent to customers consisting of actual dollars.  So

8     that's what the profit withdrawal issue is about.

9            The start date of the Ponzi issue is about when

10    Madoff began fabricating the trading at BLMIS.  And while

11    that issue might have some impact on the calculation of net

12    equity for some of the older accounts, it doesn't directly

13    overlap with the profit withdrawal issue.

14            THE COURT:  It also affects fictitious profits in

15    the avoidance claim actions.

16            MS. BROWN:  Yes, Your Honor.  That issue actually

17    cuts across both avoidance and claims, which is one of the

18    reasons why sort of shoehorning it into the narrow profit

19    withdrawal proceeding doesn't make a lot of sense.

20            And if I may just jump ahead, what I'd like to say

21    on that is that I would think that more people would like to

22    be heard other than just Mr. Blecker (ph) and the

23    participant claimants on this issue.

24            Now, as Your Honor knows, there's a motion pending

25    before you regarding the additional deposition of Mr. Madoff

1  on that specific issue.
2       So it seems to me that that issue, however it's
3  going to ultimately be litigated, is still at the process
4  point rather than any merits stage of that litigation.
5       So to insert it into the profit withdrawal
6  proceeding, which has been progressing well, Your Honor.  We
7  are on a current schedule to have the profit withdrawal
8  proceeding trial ready by November 7th.  So to inject a new
9  proceeding that really hasn't been set up yet, it's not
10 clear who's participating, and it's not clear what the
11 parameters of the start date issue litigation will be, is
12 only going to serve to delay the profit withdrawal
13 proceeding, which currently is a narrow issue, it involves
14 the people that have elected to participate in that issue
15 that have that issue present in their accounts or in the
16 calculation of their net equity, and it doesn't include any
17 other issues.
18      So my view would be that if we were to include
19 that issue you may have intervention motions and other types
20 of people wanting to participate in the profit withdrawal
21 proceeding on that specific start date issue that don't have
22 anything to do with the profit withdrawal proceeding, which
23 currently is very narrow.
24      And then if I may just make a couple of more quick
25 points.

1            The notion that this -- the start date of the
2    fraud is a new issue is false.  Mr. Madoff in his plea
3    allocution in 2009 testified that the fraud began in the
4    early 1990s.  Mr. DiPascali in 2012 allocuted that he,
5    quote/unquote, realized BLMIS was a fraud in the late '80s
6    or the early '90s, and both Ms. Chapman's (ph) firm and
7    Mr. Kirby who have access to our proof of insolvency and
8    proof of the fraud expert, Bruce Dibensky (ph), they've had
9    access to his report for years.
10           So to the extent they wanted to raise this issue,
11   they could have proposed that when we first began setting up
12   the profit withdrawal issue.  This is not a new issue, and
13   they could have suggested that at the time.  They did not do
14   so.
15           And then the last point, Your Honor, is that Mr.
16   -- the explanation that we've been given for why this issue
17   should be a part of profit withdrawal is that Mr. Blackberry
18   (ph) should have his claim determination resolved at once.
19           Mr. Blackberry has been on notice that the profit
20   withdrawal proceeding involves only the profit withdrawal
21   issue from the very beginning of this proceeding, and as
22   Your Honor knows, Mr. Blackberry is involved in a couple of
23   omnibus proceedings, including inner account transfers and
24   the profit withdrawal proceeding.
25           So until those issues are resolved his claim

1   determination is going to have to wait the resolution of
2   those issue anyhow.
3           THE COURT:  Thank you.
4           MS. BROWN:  Thank you, Your Honor.
5           MR. KIRBY:  Good morning, Your Honor.
6           THE COURT:  Good morning.
7           MR. KIRBY:  Richard Kirby, Baker & McKenzie, on
8   behalf of Joel and Norman Blum and the Pearlman (ph) estate.
9           Your Honor, I've been before you on a number of
10  occasions, although the issue of the extension called this
11  profit withdrawal schedule that the parties agreed to back
12  in the summer of last year.
13          I also objected to the employee testimony and
14  continuing this process that has now finally expired with
15  the deposition of Annette (indiscernible).
16          THE COURT:  Would you keep your voice up?
17          MR. KIRBY:  Yes, I'm sorry.
18          THE COURT:  Okay.
19          MR. KIRBY:  And so where we are at this point is
20  the employees, to summarize it in a very brief way, the
21  employees have all testified that Mr. Madoff was the person
22  who was the point person who authorized withdrawals, if
23  there were to be withdrawals, and that's why Mr. Madoff's
24  testimony turned out to be very important as to what exactly
25  he said.

1            And the issue of when the fraud started is in a

2    sense important, and it has become important because of the

3    simple fact that if those transactions were legitimate

4    transactions that the clients were entitled to the profits

5    of those transactions and the whole trustee theory falls

6    apart as to the payment of those profits, those would have

7    been legitimate transactions.

8            THE COURT:  (Indiscernible) those paid before 1992

9    or whatever the start date is.

10           MR. KIRBY:  Right.  Right.  Whatever the start

11   date is.

12           So from our client's particular perspective it is

13   somewhat of a red hair, because our clients said they never

14   got them anyway, but we don't need to get there and resolve

15   the issue if those profits were legitimately paid out --

16           THE COURT:  When was the last profit withdrawal,

17   quote/unquote, with respect to your clients?

18           MR. KIRBY:  Well there a lot in the early '80s,

19   from the mid-'80s on.

20           THE COURT:  Any after 1992?

21           MR. KIRBY:  Maybe a few.

22           THE COURT:  So the issue has to be resolved --

23           MR. KIRBY:  Right.

24           THE COURT:  -- anyway.

25           MR. KIRBY:  And so it seems to us that the issue

1  has been injected into the proceedings by the direct

2  proceeding that we said we should (indiscernible), and

3  therefore unless the trustee is prepared to just stipulate

4  that all transactions before 1992 should just be deemed

5  legitimate transactions they can avoid the issue that way.

6  But absent that --

7           THE COURT:  So it's a separate issue then.

8           MR. KIRBY:  It could be a separate issue as to

9  those transactions that were before 1992.

10          The facts as they've developed have now injected

11  the issue, and I don't see how you can curtail that.  But we

12  have a brief schedule where their brief is due tomorrow, and

13  I'm very loathed for lots of reasons to extend that.  I mean

14  they haven't asked to extend it.  They're certainly prepared

15  to address the facts.  And so I see no reason why -- we were

16  asked to stipulate to the -- that that issue wasn't

17  injected.  I never injected that issue into the proceeding,

18  the evidence did.

19          THE COURT:  Which --

20          MR. KIRBY:  The 1992 start date issue.

21          THE COURT:  Well but that's what Madoff allocuted

22  to and it's always been an issue in the case.  It's been

23  raised in Bloomberg's proceedings, we haven't dealt with it

24  because it's ultimately --

25          MR. KIRBY:  Right.

```
 1              THE COURT:  -- you know, it's a factual issue and
 2   we've been trying to deal with legal issues.
 3              MR. KIRBY:  But it only really becomes ripe when
 4   the trustee is trying to present evidence of transactions
 5   that preceded 1992 for most of the cases it's an
 6   irrelevancy.
 7              THE COURT:  I mean it sounds to me like you're
 8   saying it's a threshold issue, but it's been around for a
 9   long time.
10              MR. KIRBY:  Understood it's been around, but the
11   key point is, is that this profit withdrawal injects
12   questions about very old transactions that they have been --
13              THE COURT:  Are you prepared to stipulate that
14   every profit withdrawal notation after the Ponzi scheme
15   started, whenever that is, is an actual withdrawal of money?
16              MR. KIRBY:  Am I prepared to stipulate?
17              THE COURT:  Yeah.
18              MR. KIRBY:  After '92 no.
19              THE COURT:  Okay.
20              MR. KIRBY:  Because my clients say that they never
21   got them anyway.
22              THE COURT:  Okay.  But then, you know, we got to
23   try the issues anyway.
24              MR. KIRBY:  I agree, it needs to be tried.
25              THE COURT:  All right.  Let me --
```

```
 1              MR. KIRBY:  That's our position.
 2              THE COURT:  Anything else, Mr. Dexter?  Do you
 3    have anything to add?
 4              MR. DEXTER:  Good morning, Your Honor.  Greg
 5    Dexter, Chaitman LLP.
 6              I join in Mr. Kirby's argument and objections, and
 7    solely we just want to put those on the record for our
 8    client, Aaron Blackheart (ph), who is now 105 years old and
 9    who's been waiting to have his claim paid for over 6 years.
10              We believe that having all of these issues
11    resolved at once will allow the determination of net equity
12    to be resolved all at once.
13              THE COURT:  So why didn't you raise it when the
14    profit withdrawal issue was first teed up and the
15    proceedings were limited to that issue?  He was -- you know,
16    he was obviously an old man then also.
17              MR. DEXTER:  Well we've been trying to get him
18    paid as quickly as we can.
19              THE COURT:  I know, but there are a lot of these
20    issues that have to be resolved.
21              MR. DEXTER:  Well it's a determination of net
22    equity, and this is one of the most important aspects of
23    determining net equity.  You could almost think that it's
24    implied.  Any issue that would determine net equity would be
25    relevant to determining (indiscernible).
```

1                  THE COURT:  Thank you.

2                  All right, look, I'm not going to introduce the

3       notion of when the Ponzi scheme began into the net equity --

4       into the profit withdrawal proceedings.

5                  It is a very important issue and I recognize it

6       and it's intertwined with other issues relating the inner

7       account transfers, profit withdrawal, and everything else

8       that occurred before 1992 and affects the calculation of

9       either net equity of fictitious profits, but they're

10      separate issues.  And more important, everybody is involved

11      in that issue, whether you're a defendant in an adversary

12      proceeding or you're a claimant asserting a claim for net

13      equity.

14                 I have relatively few parties in the profit

15      withdrawal proceedings, and at this point I'm not inclined

16      to bring in an entire group of new parties to litigate in a

17      combined proceeding an issue that may not even concern them.

18                 My understanding was that you were going to tee up

19      the profit withdrawal -- oh, not the profit withdrawal --

20      when the Ponzi scheme began in some other way.

21                 It sounds to me, Mr. Kirby, like you're saying it

22      can be decided as a matter of law at this point.

23                 MR. KIRBY:  I'm not sure I understand what you're

24      saying.  If you want to decide that assume for 1992 that all

25      transactions before that would be -- and that's the only way

```
 1    I think you can --
 2             THE COURT:  Well I'm not assuming anything.  What
 3    I'm asking you is a different question.  Are you saying that
 4    I could decide as a matter of law that the Ponzi scheme
 5    started at some point in 1992?
 6             MR. KIRBY:  If you assume for purposes of that you
 7    can avoid the question of when it started.
 8             THE COURT:  Well I'm not going to assume it
 9    though, because that's an issue in the case.  I'm asking you
10    are you prepared to make me make that determination as a
11    matter of law based upon the evidence?
12             MR. KIRBY:  From my perspective if you accept that
13    the -- for -- simply for this purpose -- I can only speak
14    for my clients, I'm not speaking for anybody else -- that it
15    started in 1992 then you can resolve the issues about profit
16    withdrawal without deciding that issue for anything else.
17             THE COURT:  But what would I do?  That makes no
18    sense.
19             MR. KIRBY:  Well it does, because you can decide
20    the issue by resolving it in favor of all payments were
21    legitimate up before 1992.
22             THE COURT:  I think, you know, they're separate
23    issues that involve different parties, and I'm not going to
24    combine them at this point.
25             MR. KIRBY:  Well then what are our clients
```

1    supposed to do with respect to issues of earlier

2    transactions?

3              THE COURT:  How many omnibus proceedings have we

4    had?  I don't know if you were here but there was a

5    contemplation that there would be discovery on the issue of

6    when the Ponzi scheme began.  It was talked about that, I

7    don't remember.  But it's obviously an issue in the case,

8    it's obviously an omnibus issue --

9              MR. KIRBY:  I agree.

10             THE COURT:  -- in the case.  So you've been able

11   to come up with procedures for resolving these omnibus

12   issues in the past, and this is no different.

13             MR. KIRBY:  I agree, but what your -- what's

14   before you now in these profit withdrawals is how to treat

15   the earlier transactions that took place before 1992.

16             There -- that issue is -- you are able to resolve

17   that by just making an assumption.

18             THE COURT:  But it's not limited to things -- all

19   of the profit withdrawals didn't occur before 1992, and I

20   have to decide the issue anyway.  So it's not more work or

21   different -- it's not a different issue.  I realize that the

22   records may be better, quote/unquote, in the later years,

23   but it's the same issue.

24             Look, I don't want to argue with you anymore.  I

25   think you should figure out or work on a way to deal with

```
 1   the Ponzi scheme began on an omnibus basis, because it
 2   affects every case.
 3            MR. KIRBY:  And I am fine with that.  Where does
 4   that leave the profit withdrawal proceedings?
 5            THE COURT:  it's going forward in accordance with
 6   the schedule.
 7            MR. KIRBY:  I'm still mystified about what we're
 8   supposed to do with before 1992 transactions.  Are we
 9   assuming that they took place or if we don't --
10            THE COURT:  The only issue I'm deciding is what
11   profit withdrawal means in the context of the records.
12            MR. KIRBY:  Okay.  I think I understand.
13            THE COURT:  That's what's being deciding, that's
14   the issue that's teed up.
15            MR. KIRBY:  All right.  Thank you.
16            THE COURT:  I'm not deciding that those profit
17   withdrawals were fraudulent transfers or anything like that,
18   I'm just deciding what the --
19            MR. KIRBY:  Okay.
20            THE COURT:  -- entries mean, to the extent I can
21   decide it based upon what I hear.
22            MR. KIRBY:  Right.
23            THE COURT:  All right?  Thank you.
24            MS. BROWN:  Thank you, Your Honor.
25        (Whereupon these proceedings were concluded at 10:39
```

1  AM)
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Page 19

1        C E R T I F I C A T I O N

2

3    I, Dawn South, certify that the foregoing transcript is a

4    true and accurate record of the proceedings.

5    *Dawn South*   Digitally signed by Dawn South
              DN: cn=Dawn South, o, ou,
              email=digital1@veritext.com, c=US
6    _____
              Date: 2016.08.12 13:59:24 -04'00'

7    Dawn South

8    AAERT Certified Electronic Transcriber CET**D-408

9

10

11

12   Date:   August 12, 2016

13

14

15

16

17

18

19

20

21

22   Veritext Legal Solutions

23   330 Old Country Road

24   Suite 300

25   Mineola, NY 11501