**Baker & Hostetler LLP**

45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Seanna R. Brown
Nicholas J. Cremona
Jorian L. Rose
Amy E. Vanderwal
Stephanie A. Ackerman

Hearing Date:  September 28, 2016
Hearing Time:  10:00 AM (EST)
Objection Deadline:  September 6, 2016

*Attorneys for Irving H. Picard, Trustee for the*
*Substantively Consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities LLC*
*and the Estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (SMB) |
| Plaintiff-Applicant, | SIPA Liquidation |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |

**TRUSTEE'S MOTION AND MEMORANDUM OF LAW TO AFFIRM HIS
DETERMINATIONS DENYING CLAIMS OF CLAIMANTS HOLDING INTERESTS IN
CHALEK ASSOCIATES LLC, CHAITMAN/SCHWEBEL LLC, FGLS EQUITY LLC,
LARSCO INVESTMENTS LLC AND KUNTZMAN FAMILY LLC**

# TABLE OF CONTENTS

<u>Page</u>

PRELIMINARY STATEMENT ........................................................................................ 1

BACKGROUND .......................................................................................................... 2

    A.    THE COMMENCEMENT OF THE SIPA PROCEEDING ................................. 2

    B.    THE LIMITED LIABILITY COMPANIES' STRUCTURE, BLMIS
        ACCOUNTS, AND CLAIMS ............................................................. 3

        1.    Chalek Associates LLC.......................................................... 4

        2.    Chaitman/Schwebel LLC ...................................................... 6

        3.    FGLS Equity LLC................................................................. 7

        4.    Larsco Investments LLC ....................................................... 9

        5.    Kuntzman Family LLC ....................................................... 10

    C.    THE BLMIS ACCOUNT RECORDS................................................ 13

    D.    THE CLAIMS........................................................................ 13

    E.    THE CUSTOMER DECISIONS ..................................................... 14

        1.    The Initial Feeder Fund Motion............................................ 14

        2.    The ERISA Motion ............................................................. 16

        3.    Other Customer Motions...................................................... 17

ARGUMENT.............................................................................................................. 19

CONCLUSION............................................................................................................ 26

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*In re Adler, Coleman Clearing Corp.*,
  216 B.R. 719 (Bankr. S.D.N.Y. 1998) ...................................................................20

*Aozora Bank Ltd. v. Sec. Inv'r Prot. Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*,
  480 B.R. 117 (S.D.N.Y. 2012) ............................................................................15

*Appleton v. First Nat'l Bank of Ohio*,
  62 F.3d 791 (6th Cir. 1995) ...............................................................................20

*In re Beacon Assocs. Litig.*,
  745 F. Supp. 2d 386 (S.D.N.Y. 2010) ...................................................................2

*In re Bernard L. Madoff Inv. Sec. LLC*,
  654 F.3d 229 (2d Cir. 2011) ..............................................................2, 16, 20, 22

*In re Klein, Maus & Shire, Inc.*,
  301 B.R. 408 (Bankr. S.D.N.Y. 2003) .................................................................26

*Kruse v. Sec. Inv'r Prot. Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*,
  708 F.3d 422 (2d Cir. 2013) ...................................................................... *passim*

*In re Lehman Bros. Inc.*,
  462 B.R. 53 (Bankr. S.D.N.Y. 2011) ...................................................................20

*In re Lehman Bros., Inc.*,
  791 F.3d 277 (2d Cir. 2015) ...............................................................................20

*Mishkin v. Siclari (In re Adler, Coleman Clearing Corp.)*,
  277 B.R. 520 (Bankr. S.D.N.Y. 2002) ..............................................................3, 26

*Sec. Inv'r Prot. Corp. v. 2427 Parent Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*,
  779 F.3d 74 (2d Cir. 2015) ............................................................................23, 24

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff Inv. Sec. LLC)*,
  454 B.R. 285 (Bankr. S.D.N.Y. 2011) ......................................................14, 15, 25

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff Inv. Sec. LLC)*,
  515 B.R. 161 (Bankr. S.D.N.Y. 2014) ..............................................17, 18, 22, 25

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Sec. Inv'r Prot. Corp. v. Jacqueline Green Rollover Account*,
Nos. 12 Civ. 1039 (DLC), 12 Civ. 1139 (DLC), 2012 WL 3042986 (S.D.N.Y.
July 25, 2012) ................................................................................................16, 17

*Sec. Inv'r Prot. Corp. v. Morgan, Kennedy & Co.*,
533 F.2d 1314 (2d Cir. 1976) .......................................................16, 21, 22, 24

*SEC v. Madoff*,
No. 1:08-cv-10791-LLS, 2008 WL 5197070 (S.D.N.Y. filed Dec. 11, 2008) ........................2

*Stafford v. Giddens (In re New Times Sec. Servs., Inc.)*,
463 F.3d 125 (2d Cir. 2006) .........................................................15, 20, 25

**Statutes**

15 U.S.C. § 78aaa *et seq.* .................................................................................1

15 U.S.C. § 78eee(a)(4) ...................................................................................2

15 U.S.C. § 78eee(b)(3) ...................................................................................2

15 U.S.C. § 78eee(b)(4) ...................................................................................2

15 U.S.C. § 78fff-1(a) .......................................................................................2

15 U.S.C. § 78fff-2(b) .....................................................................................21

15 U.S.C. § 78fff-3(a) .......................................................................................3

15 U.S.C. § 78*lll*(2) ............................................................................... *passim*

15 U.S.C. § 78*lll*(4) .........................................................................................3

15 U.S.C. § 78*lll*(11) ...................................................................................3, 23

Dodd-Frank Wall Street Reform and Consumer Protection Act. Pub. L. No. 111-
203, § 983(b), 124 Stat. 1931 (2010) ..........................................................20

N.J.S.A. 42:2C-4 ...........................................................................................22

N.Y. LTD. LIAB. CO. L. § 601 (McKinney 2016) ........................................22

**Rules**

FED. R. CIV. P. 36(a)(3) ............................................................................. *passim*

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

**Other Authorities**

1–12 *Collier on Bankruptcy* ¶ 12.12 (16th ed. 2012) ...................................................................16

Irving H. Picard, as trustee ("Trustee") for the substantively consolidated liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15 U.S.C. § 78aaa *et seq.* ("SIPA"),[1] and the chapter 7 estate of Bernard L. Madoff ("Madoff"), respectfully submits this combined motion and memorandum of law (the "Motion") to affirm the denial of twenty-two claims filed by claimants (the "Objecting Claimants") who objected to the Trustee's determinations and who held interests in one of the following BLMIS account holders: Chalek Associates LLC, Chaitman/Schwebel LLC, FGLS Equity LLC, Larsco Investments LLC, and Kuntzman Family LLC (collectively, the "Limited Liability Companies"). The Objecting Claimants are specifically identified in Exhibit 2 to the Declaration of Vineet Sehgal ("Sehgal Declaration") filed herewith. This Motion is based upon the law set forth below as well as the facts set forth in the accompanying Sehgal Declaration and the Declaration of Stephanie Ackerman ("Ackerman Declaration").

## PRELIMINARY STATEMENT

The Objecting Claimants seek customer status in this SIPA proceeding, despite the fact that they did not have accounts in their names and had no direct financial relationship with BLMIS. Instead, they invested in the Limited Liability Companies, each of which had a BLMIS account, invested member assets with BLMIS, and filed its own claim with the Trustee.[2] The case is governed by the Second Circuit decision *Kruse v. Sec. Inv'r Prot. Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*, 708 F.3d 422 (2d Cir. 2013) and the many related decisions in this SIPA proceeding, referenced in Section E *infra*, involving the question of who is a "customer" under

---

[1] For convenience, subsequent references to sections of the Securities Investor Protection Act shall be denoted simply as "SIPA § __."

[2] The Limited Liability Companies have been grouped together in this Motion because the Trustee believes that they represent the remaining New York and New Jersey Limited Liability Company BLMIS account holders for which a number of members also claim "customer" status.

SIPA. The current Motion seeks to apply these decisions to the Objecting Claimants through entry of an order affirming the Trustee's denial of their claims as listed in Exhibit 2 to the Declaration of Vineet Sehgal, disallowing their claims, and overruling the related claims objections on the grounds that Claimants are not "customers" as such term is used at SIPA § 78*lll*(2).[3]

**BACKGROUND**

A.   **THE COMMENCEMENT OF THE SIPA PROCEEDING**

The basic facts of the BLMIS fraud are widely known and have been recounted in numerous decisions. *See, e.g.*, *In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d 229, 231-34 (2d Cir. 2011); *In re Beacon Assocs. Litig.*, 745 F. Supp. 2d 386, 393–94 (S.D.N.Y. 2010). On December 11, 2008, the Securities and Exchange Commission ("SEC") filed a complaint in the District Court against Madoff and BLMIS, captioned *SEC v. Madoff*, No. 1:08-cv-10791-LLS, 2008 WL 5197070 (S.D.N.Y. filed Dec. 11, 2008), alleging fraud through the investment advisor activities of BLMIS. The SEC consented to the consolidation of its case with an application of the Securities Investor Protection Corporation ("SIPC"). Thereafter, SIPC filed an application under SIPA § 78eee(a)(4) alleging that because of its insolvency, BLMIS customers needed SIPA protection. The District Court appointed the Trustee under SIPA § 78eee(b)(3) and removed the proceeding to this Court under SIPA § 78eee(b)(4).

Under SIPA, the Trustee is responsible, among other things, for recovering and distributing customer property to a broker's customers, assessing claims, and liquidating other assets of the firm for the benefit of the estate and its creditors. A SIPA trustee has the general powers of a bankruptcy trustee, in addition to the powers granted by SIPA. SIPA § 78fff-1(a).

---

[3] The Trustee reserves all other bases for objections to the claims that are the subject of the Motion.

The statutory framework for the satisfaction of customer claims in a SIPA liquidation proceeding provides that "customers," as defined in SIPA § 78*lll*(2), share pro rata in "customer property," defined in SIPA § 78*lll*(4), to the extent of their "net equity," defined in SIPA § 78*lll*(11). For each customer with a valid net equity claim, if the customer's share of customer property does not make him or her whole, SIPC advances funds to the SIPA trustee up to the amount of the customer's net equity, not to exceed $500,000 (the amount applicable to this case). SIPA § 78fff-3(a). It is the customer's burden to demonstrate he or she is entitled to customer status. *Mishkin v. Siclari (In re Adler, Coleman Clearing Corp.)*, 277 B.R. 520, 557 (Bankr. S.D.N.Y. 2002) ("[I]t is well-established in the Second Circuit that a claimant bears the burden of proving that he or she is a 'customer' under SIPA.").

On December 23, 2008, this Court entered a Claims Procedures Order. *See* ECF No. 12. Pursuant to that order, the Trustee determines claims eligible for customer protection under SIPA, claimants may object to the Trustee's determination of a claim by filing an objection in this Court, after which the Trustee requests a hearing date for the objection and notifies the objecting claimant thereof. *Id.*

## B.   THE LIMITED LIABILITY COMPANIES' STRUCTURE, BLMIS ACCOUNTS, AND CLAIMS

The Objecting Claimants invested in one or more of the Limited Liability Companies. Ten (10) claims were filed by Objecting Claimants relating to Chalek Associates LLC; one (1) claim was filed by an Objecting Claimant relating to Chaitman/Schwebel LLC; two (2) claims were filed by Objecting Claimants relating to FGLS Equity LLC; four (4) claims were filed by Objecting Claimants relating to Larsco Investments LLC; and five (5) claims were filed by Objecting Claimants relating to Kuntzman Family LLC. *See* Sehgal Decl., ¶ 6-8, Exs. 1-2. The claims of the Limited Liability Companies themselves are not at issue in this Motion. However,

the Motion seeks to overrule only that portion of the Kuntzman Family and Chalek Associates' objections insofar as they seek customer status for the Objecting Claimants.[4]

### 1.    **Chalek Associates LLC**

BLMIS Account number 1C1229 was opened on or around January 7, 1997 in the name of Chalek Associates LLC. Sehgal Decl., Ex.4 AMF00214088-090.    The account opening documents were signed by Morton J. Chalek as Managing Member. *Id.* at AMF00214087–090. According to correspondence from Morton Chalek to BLMIS, he served as Managing Partner of Chalek Associates, LLC and alone conducted all business with BLMIS on behalf of Chalek Associates, LLC.    *Id.* at AMF00214083.    He indicated further in a January 2, 1997 letter, that BLMIS was not authorized to "refund any part of the principal without written authorization" from Morton Chalek.    *Id.* at AMF00214082.

Chalek Associates, LLC was formed as a New York Limited Liability Company on December 26, 1996.[5]    *See also* Sehgal Decl., Ex. 4,  AMF00214083.    All account details were provided by Morton Chalek, including the Limited Liability Company's address.    Sehgal Decl., Ex. 4, AMF00214083.    Based on his 2008 K-1 submitted with his customer claim, Morton Chalek is the "General Partner or LLC Member-Manager."    Sehgal Decl., Ex. 5, MWPTAP00543866.    All correspondence with BLMIS, including all withdrawal requests and deposit submissions on behalf of Chalek Associates LLC was sent by Morton Chalek as Managing Member.    *See generally* Sehgal Decl., Ex. 4.    The only mention of the Chalek Objecting Claimants in the customer file is a letter from Morton Chalek to BLMIS identifying

---

[4] *See* ECF Nos. 002881, 00702.  The Chalek Associates and Kuntzman Family LLC's claims 002044, and 000898 are not at issue in the Motion.

[5] A search of the New York State Division of Corporations returned the filing date for Chalek Associates as December 26, 1996.    *See* Entity Information, NEW YORK DEPARTMENT OF STATE, DIVISION OF CORP., http://www.dos.ny.gov/corps/bus_entity_search.html (last visited Aug. 15, 2016).

them as "partners who will be involved in [Chalek Associates LLC]." Sehgal Decl., Ex. 4, AMF00214083. In the same letter, Morton Chalek notified BLMIS that "all transaction[s] will be conducted by [him] personally on behalf of all the other partners" including all additions or withdrawals, and authorizing Mitchel Chalek or Sonna Schupak to make those transactions only in his absence. *Id.* Despite this authority, the BLMIS books and records contain only correspondence between Morton Chalek and BLMIS on behalf of Chalek Associates LLC.

The Chalek Associates LLC Objecting Claimants failed to respond to the Trustee's discovery requests. By failing to respond to the requests for admissions, the Chalek Associates LLC Objecting Claimants admitted (among other things) that they did not have an account in their name at BLMIS, never deposited cash or securities with BLMIS, did not receive investment statements, correspondence or tax statements from BLMIS, did not have any control, investment discretion or decision-making power over any investments at BLMIS, and that their only relationship to BLMIS existed by way of their relationship to the Limited Liability Company. *See generally* Ackerman Decl. ¶¶ 20-22, Ex. 6; *see also* FED. R. CIV. P. 36(a)(3).

Chalek Associates LLC filed a customer claim for the entire account. The Trustee denied the claim in its entirety because, based on the Trustee's analysis, the amount of money that Chalek Associates LLC withdrew from the account was greater than the amount that was deposited, making the account a "net winner." Thus, a determination letter was sent to Chalek Associates LLC denying its customer claim.[6]

---

[6] As stated above, the Motion does not seek to disallow the claim of the account holder, Chalek Associates LLC, or seek to overrule the objection to the denial of that claim in full (the "Chalek Associates Objection"). ECF No. 002881. However, the Chalek Associates Objection was also filed on behalf of Objecting Claimants as members of the LLC. This motion seeks to overrule only that portion of the Chalek Associates Objection that seeks customer status for the Objecting Claimants. The remainder of the objection will be addressed in a future motion.

2.    **Chaitman/Schwebel LLC**

BLMIS account number 1CM921 was opened on or around February 10, 2005 in the name of Chaitman/Schwebel LLC. Sehgal Decl. Ex. 16, AMF00278806. Each of the account opening documents was signed by Helen Davis Chaitman as managing member of "Schwebel Chaitman LLC,"[7] including the Customer Agreement, Option Agreement, and Partnership Agreement. *See id.* Based on the available books and records, Ms. Chaitman was the sole point of contact with BLMIS on behalf of the account holder for all matters. *Id.* at AMF00278811.

According to its member agreement, Chaitman/Schwebel LLC was a two-member New Jersey Limited Liability Company, with the members identified as Helen Davis Chaitman and Stephen M. Schwebel formed for the sole purpose of investing in BLMIS. *Id.* at AMF00278810. According to the Limited Liability Company Agreement ("the Agreement"), Chaitman/Schwebel LLC maintained its own, separate bank account; each partner had his/her own capital account; and members could make withdrawals only with appropriate notice to the other partner. *Id.* at AMF00278810 – 812.

On August 30, 2013, the Trustee served discovery requests on Ms. Chaitman, the sole Chaitman/Schwebel Objecting Claimant, regarding her indirect claim. The deadline for response was October 4, 2013. No responses have been received. By failing to respond to the requests for admissions, the Chaitman/Schwebel Objecting Claimant admitted (among other things) that she did not have an account in her name at BLMIS, never deposited cash or securities with BLMIS on her own behalf, did not receive investment statements, correspondence or tax statements from

---

[7] The BLMIS account opening documents identify the account holder as "Chaitman/Schwebel LLC." The entity's name pursuant to the Limited Liability Company agreement is "Schwebel/Chaitman LLC." Sehgal Decl. ¶ 28, Ex. 16, AMF00278810. Additionally, according to the New Jersey Division of Revenue and Enterprise Services website, the business name is "Schwebel and Chaitman Limited Liability Company." Business Name Search, STATE OF NEW JERSEY, DIVISION OF REVENUE AND ENTERPRISE SERVICES, https://www.njportal.com/DOR/BusinessNameSearch/Search/BusinessName (last visited Aug. 4, 2016). For ease of reference, the Motion refers to the account holder for BLMIS Account 1CM921 as "Chaitman/Schwebel LLC."

BLMIS in her name, did not have any individual control, investment discretion or decision-making power over any investments at BLMIS, and that her only relationship to BLMIS existed by way of their relationship to the Limited Liability Company.  *See generally* Ackerman Decl. ¶¶ 17-19, Ex. 5; *see also* FED. R. CIV. P. 36(a)(3). A total of three customer claims were filed with the Trustee related to BLMIS Account 1CM921. Sehgal Decl., ¶¶ 13, 29-30, Exs. 17, 18.

Each of the two members filed a customer claim on their own behalf; each claim was denied by Trustee.  Sehgal Decl., ¶¶ 29-30, Exs. 17, 18.  Ms. Chaitman filed an objection to the Trustee's Determination, which is the subject of the Motion.  *Id.* ¶ 11, Ex. 2.  In addition, Chaitman/Schwebel filed a claim for account 1CM921.  The Trustee allowed the claim in the amount of $2,000,000 and a determination letter was sent to Chaitman/Schwebel LLC on April 21, 2009 allowing its claim.[8]

### 3.    FGLS Equity LLC

BLMIS Account number 1F0178 was opened in the name of FGLS LLC on or around October 31, 2002 by Steven Mendelow as Manager.  Sehgal Decl., Ex. 20, AMF00178464 – 473. In May 2003, Mr. Mendelow notified BLMIS that the LLC's name was changed from FGLS LLC to FGLS Equity LLC.  *Id.* at AMF00178461.  All correspondence with BLMIS was to or from Steven Mendelow on behalf of FGLS and was written on FGLS Equity LLC, or Konigsberg Wolf & Co. PC letterhead, *Id.* at AMF00178448 – 449, or Mr. Mendelow's personal letterhead. *Id.* at AMF00178451, 452.  All withdrawals were requested by Mr. Mendelow and were made payable to FGLS Equity LLC and sent to the address of record for FGLS Equity LLC.  *See generally id.*  Likewise, all deposits into BLMIS Account 1F0178 were made by Mr. Mendelow on behalf of FGLS Equity LLC. *Id.*

---

[8] After Chaitman/Schwebel LLC's claim was allowed by the Trustee in April 2009, the Limited Liability Company sold the claim, effective August 15, 2011.

FGLS Equity LLC is a New York Limited Liability Company registered on March 4, 2003. Sehgal Decl., Ex. 21, MWPTAP01176042. Under Article V of the Operating Agreement of FGLS Equity LLC, Steven and Nancy Mendelow are to serve as Operating Managers of FGLS and manage FGLS's activities. *Id.* at MWPTAP01176052. Further, pursuant to Section 5.4, the "conduct of [FGLS's] business shall be controlled and conducted solely and exclusively by the Operating Managers." *Id.* at MWPTAP01176053. The Mendelows' powers as Operating Managers of FGLS included the authority to open accounts, make deposits, and to "invest all capital with Bernard L. Madoff Investments, except such sums that are to be retained in a checking account," *id.*, and to determine additional distributions of cash flow. *Id.* at MWPTAP01176055.

Discovery requests were sent to Mr. Donald Schupak as representative for Objecting Claimants Schupak Profit Sharing Plan and Schupak Group Defined Benefit Plan on April 19, 2014. Mr. Schupak responded on behalf of both entities. The Objecting Claimants admitted (among other things) that they did not have an account in their name at BLMIS, never deposited cash or securities with BLMIS, did not receive investment statements, correspondence or tax statements from BLMIS, did not have any control, investment discretion or decision-making power over any investments at BLMIS, and that their only relationship to BLMIS existed by way of their relationship to the Limited Liability Company. *See generally* Ackerman Decl. ¶ 10, Ex. 1; *see also* FED. R. CIV. P. 36(a)(3). Further, the Objecting Claimants confirmed that all funds were sent to FGLS care of Steven Mendelow and not directly to BLMIS. In order to withdraw funds from BLMIS, a request was sent to Steven Mendelow, not directly to BLMIS. Ackerman Decl., Ex. 1, MCMDR_00000346; MCMDP_000006657. Objecting Claimants denied that the property acquired by the accountholder, including assets at BLMIS, were owned by and in the

8

name of the accountholder, but did not provide specific evidence to the contrary. *Id.* at MCMDR_00000342.

FGLS Equity LLC filed a claim for the entire account. The Trustee allowed the claim in the amount of $3,450,000 and a determination letter was sent to FGLS Equity LLC on October 7, 2015 allowing its claim.[9]

### 4.    Larsco Investments LLC

BLMIS Account number 1L0328 was opened in November 2008 in the name of Larsco Investments, LLC a New Jersey Domestic Limited Liability Company. Sehgal Decl., Ex. 25, MWPTAP00409014–015. The Certificate of Formation indicates that Larsco Investments, LLC was formed on August 4, 2008 and identifies Scott M. Sosnick and Lawrence Bell as the Members/Managers of the LLC and dictates that the "LLC shall be run by members." *Id.* at MWPTAP00409014.

On August 15, 2013, the Trustee served discovery on Mr. William Krame on behalf of the Larsco Objecting Claimants and no response has been received. By failing to respond to the requests for admissions, the Objecting Claimants admitted (among other things) that they did not have an account in their name at BLMIS, never deposited cash or securities with BLMIS, did not receive investment statements, correspondence or tax statements from BLMIS, did not have any control, investment discretion or decision-making power over any investments at BLMIS, and that their only relationship to BLMIS existed by way of their relationship to the partnership. *See generally* Ackerman Decl. ¶¶ 23-25, Ex. 7; *see also* Fed. R. Civ. P. 36(a)(3).

Objecting Claimants also conceded their lack of customer status in their objections. Specifically, each objecting claimant states that "no direct relationship existed between the

---

[9] The FGLS Equity LLC claim was previously deemed determined pending the outcome of litigation.

[Objecting Claimant] and BLMIS, nor did we have any advance knowledge as to where the funds invested with Larsco would ultimately be invested." *See* ECF Nos. 3100, 3102-3104. In addition, attached to each indirect claim is a 2008 Tax Form K-1 identifying each of the Objecting Claimants as partners in "Scolar Investments LLC." Sehgal Decl. ¶¶ 38-41, Exs. 26-29. None of the Larsco Objecting Claimants provided documents regarding their investment in Larsco.

No documents related to Larsco Investments LLC or the BLMIS account held by Larsco were identified in the books and records of BLMIS and those provided by the objecting claimants provide no connection between their investment in "Scolar Investments LLC" and BLMIS.[10]

Larsco Investments LLC filed a customer claim for account 1L0328. The Trustee allowed the claim in the amount of $3,624,495.36 and a determination letter was sent to Larsco Investments LLC on June 7, 2010 allowing its claim.[11]

**5.    Kuntzman Family LLC**

BLMIS Account 1ZA539 was originally opened in the name of Irving and Faye Kuntzman on or around January 25, 1993. Sehgal Decl., Ex. 31, AMF00016151-159. On May 16, 1994, the Kuntzman's wrote to BLMIS requesting that account 1ZA539 be renamed "Kuntzman Family Partners, L.P." *Id.* at AMF00016146. As a result of this request, a Partnership Account Agreement was signed on or around May 24, 1994 by Jacqueline Green as General Partner, identifying Irving Kuntzman and Faye Kuntzman as additional partners. *Id.* at AMF00016136. All written communications with BLMIS on behalf of the Kuntzman Family

---

[10] No customer file was located for BLMIS Account No. 1L0328 in the books and records. This is likely because 1L0328 was opened in November 2008, shortly before the fraud was revealed.

[11] After Larsco Investments LLC's claim was allowed by the Trustee in June 2010, the Limited Liability Company sold the claim, effective May 10, 2013.

Partners L.P., including withdrawal requests, were between BLMIS and Jacqueline Green, the General Partner. *See generally id.*, AMF00015883–6135. On June 30, 2004, Kuntzman Family Partners L.P. merged with Kuntzman Family LLC, a New Jersey limited liability company. *Id.* at AMF00015948-953. As a result of the merger, the account's name was again changed, this time to Kuntzman Family LLC, with Ms. Green remaining the primary point of contact and sole decision-maker with BLMIS on behalf of the account.[12]  *See* AMF00015883-947. None of the other objecting claimants are identified in the BLMIS books and records as members or partners of the Kuntzman Family LLC.

The Trustee served discovery on all Kuntzman Family LLC Objecting Claimants; only Objecting Claimant Judith Gattegno responded. Ackerman Decl. ¶¶ 12-13, Ex. 2. Among the documents produced were checks made payable to Bernard L. Madoff from Ms. Gattegno's personal bank account. Ackerman Decl., Ex. 3, MCMDP_00010521–524. However, all correspondence with BLMIS produced by Ms. Gattegno was from Ms. Jacqueline Green on behalf of the Kuntzman Family LLC. Ackerman Decl., Ex. 3, MCMDP_00010516, 518, 526, 528. Also produced by Ms. Gattegno is the Kuntzman Family LLC Operating Agreement. Ackerman Decl., Ex. 3, MCMDP_00010511-514. The Operating Agreement, signed by all objecting claimants, appoints Wayne D. and Jacqueline Green as the "co-Managers" who are empowered to manage "the business and affairs" of the Company and must approve all capital withdrawals by any member. Ackerman Decl., Ex. 3, MCMDP_00010512.

Ms. Gattegno's responses to discovery confirm the role played by Ms. Green. In her responses, Ms. Gattegno admits that she never had an account in her name at BLMIS, and did not receive correspondence from or communicate with BLMIS directly. Ackerman Decl. Ex. 2,

---

[12] Mr. Wayne Green was added as a signatory to the account, but appears in the customer file on only two occasions. Sehgal Decl., Ex. 31, AMF00015925; AMF00015947.

MCMDR_00000386. Notably, she concedes that her requests for withdrawals from BLMIS were sent to Ms. Green, who forwarded them on to BLMIS, and then provided her with a check from Kuntzman LLC once funds were received from BLMIS.  *Id.* at MCMDR_00000384-385, 387.

By failing to respond, all other Kuntzman Family LLC Objecting Claimants admit, among other things, that they did not have an account in their name at BLMIS, never deposited cash or securities with BLMIS, did not receive investment statements, correspondence or tax statements from BLMIS, did not have any control, investment discretion or decision-making power over any investments at BLMIS, and that their only relationship to BLMIS existed by way of their relationship to the Limited Liability Company.  *See generally* Ackerman Decl. ¶¶ 11, 13; *see also* FED. R. CIV. P. 36(a)(3).

Kuntzman Familly LLC filed a customer claim for the entire account.  The Trustee denied the claim in its entirety because, based on the Trustee's analysis, the amount of money that Kuntzman Family LLC withdrew from the account was greater than the amount that was deposited, making the account a "net winner."  Thus, a determination letter was sent to Kuntzman Family LLC denying its customer claim.[13]

\*          \*          \*          \*          \*          \*

As discussed *infra*, under New York and New Jersey law, the Limited Liability Companies are treated as entities that own their own property.  Each had a BLMIS account in its name according to the books and records of BLMIS and entrusted its property to BLMIS for the

---

[13] As stated above, the Motion does not seek to disallow the claim of the account holder, Kuntzman Family LLC, or seek to overrule the objection to the denial of that claim (the "Kuntzman Family Objection"). ECF No. 0702. However, the Kuntzman Family Objection was also filed on behalf of Objecting Claimants Irrevocable Trust F/B/O Jennifer Gattegno, Irrevocable Trust F/B/O Ethan Siegel, Judith Gattegno, Wayne Green, and Jacqueline Green as members of the LLC.  This motion seeks to overrule only that portion of the Kuntzman Family Objection that seeks customer status for those Objecting Claimants. The remainder of the objection will be addressed in a future motion.

purposes of purchasing securities.  None of the Limited Liability Companies was a bank, broker,

or dealer.  Each of the Limited Liability Companies filed its own claim with the Trustee.

## C.    THE BLMIS ACCOUNT RECORDS

The Limited Liability Companies each maintained an account in its own name (the

"Accounts," and each, an "Account") with BLMIS.  The Objecting Claimants did not.  Sehgal

Decl., ¶ 50, Exs. 1-3.  The books and records of BLMIS reflect money deposited or withdrawn

by and on behalf of the Limited Liability Companies, and not by the Objecting Claimants

individually.  *See* Sehgal Decl., ¶¶  16, 28, 32, 43, Exs. 4, 16, 20, 31; *see also* ¶ 37, Ex.  25.  All

of the Objecting Claimants admit that BLMIS sent Account statements and related

communications to the Limited Liability Companies, not the Objecting Claimants.

Because the Limited Liability Companies each maintained an Account at BLMIS, and

made deposits into and withdrawals from that Account, the books and records of BLMIS reflect

the amounts owing and owed by the BLMIS estate for that Account.  The books and records of

BLMIS do not, in contrast, reflect deposits or withdrawals directly to or from BLMIS by the

individual Objecting Claimants with regard to any Limited Liability Companies' BLMIS

Account.  They also do not show what amounts individual Objecting Claimants invested in, or

withdrew from, the Limited Liability Companies.  *See id.*  It was each Limited Liability

Company that had the right to demand, on behalf of the Limited Liability Company, return of the

property entrusted to BLMIS for its Account, and each Limited Liability Company that is

accordingly entitled to a customer claim to the extent of its net equity.

## D.    THE CLAIMS

The claims at issue in this Motion involve interests in the Limited Liability Companies.

Sehgal Decl. ¶¶ 9-12, Exs. 1-3.  The Objecting Claimants, the twenty-two (22) claims filed by

them, and the objections to determination of those claims, are specifically identified in Exhibits 2

and 3 to the Sehgal Declaration.  The Trustee denied their claims because they lacked BLMIS

accounts and were not customers of BLMIS.  Sehgal Decl. ¶ 11.  Collectively, the Objecting

Claimants filed ten (10) docketed objections to the Trustee's determination of their claims.

Sehgal Decl. ¶¶ 9-12, Exs. 1-3.[14]  This Motion addresses all objections to the determination of

the specified claims by Objecting Claimants who are identified on Exhibit 2 of the Sehgal

Declaration.

Since receiving the ten (10) docketed objections to the claims determinations, the Trustee

served discovery requests on each of the Objecting Claimants seeking to determine their basis for

claiming customer status, and inquiring into deposits, payments, communications, account

openings, and their relationship with the account holder.  Only three of the twenty-two Objecting

Claimants responded.  *See* Ackerman Decl. ¶¶ 5, 10, 12.

## E.    THE CUSTOMER DECISIONS

There have been fourteen prior decisions in this proceeding dealing with whether

investors in BLMIS accountholders could be treated as "customers" under SIPA; all of the

decisions said they could not.

### 1.    The Initial Feeder Fund Motion

The Trustee's first motion regarding the definition of "customer" under SIPA was the

Trustee's Motion To Affirm Trustee's Determinations Denying Claims of Claimants Without

BLMIS Accounts In Their Names, Namely, Investors in Feeder Funds, filed on June 11, 2010,

ECF No. 2416 (the "Initial Feeder Fund Motion").  On June 28, 2011, this Court issued its

memorandum decision and order affirming the Trustee's denial of the claims.  *Sec. Inv'r Prot.*

---

[14] As explained *supra*, this Motion seeks to also resolve that portion of the Chalek Associates and Kuntzman
Family's Objections insofar as they seek customer status for the Chalek Associates and Kuntzman Objecting
Claimants.

*Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff Inv. Sec. LLC)*, 454 B.R. 285 (Bankr. S.D.N.Y. 2011), *aff'd sub nom. Aozora Bank Ltd. v. Sec. Inv'r Prot. Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*, 480 B.R. 117 (S.D.N.Y. 2012), *aff'd sub nom. Kruse v. Sec. Inv'r Prot. Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*, 708 F.3d 422 (2d Cir. 2013).

The Court found that, in light of the plain language of SIPA and relevant case law, the claimants in the Initial Feeder Fund Motion did not qualify as "customers" under SIPA. *In re Bernard L. Madoff Inv. Sec. LLC*, 454 B.R. at 290. The Court held that the claimants invested in, not through, those feeder funds, and had no individual accounts at BLMIS. *Id.* at 297. It was the feeder funds that entrusted their monies with BLMIS for the purpose of trading or investing in securities—the touchstone of "customer" status—whereas the claimants purchased interests in the feeder funds. *Id.* at 299. The Court held that absent a direct relationship with BLMIS, the claimants sought a definition of "customer" that stretched the term beyond its limits. *Id.* at 302.

After the District Court affirmed, *Aozora Bank Ltd.*, 480 B.R. 117 (S.D.N.Y. 2012), the claimants appealed to the Second Circuit, which also affirmed. The Second Circuit confirmed that "[j]udicial interpretations of 'customer' status support a narrow interpretation of the SIPA's provisions." *Kruse*, 708 F.3d at 426 (quoting *Stafford v. Giddens (In re New Times Sec. Servs., Inc.)*, 463 F.3d 125, 127 (2d Cir. 2006) (explaining that "the critical aspect of the 'customer' definition" was "the entrustment of cash or securities to the broker-dealer for the purposes of trading securities.")). The claimants failed to meet this fundamental requirement because the money sent to BLMIS belonged to the accountholders, not to the individual claimants, and the individual claimants therefore failed to establish that they had entrusted cash or securities to BLMIS. *Kruse*, 708 F.3d at 426–27. The Second Circuit also found that the individual claimants did not exhibit other indicia of customer status in their dealings (or lack of dealings)

with BLMIS, including that they did not exert any control over the accounts at issue and that they were not reflected in BLMIS records.  *Id.*

The Second Circuit held that the interests "sold by the Feeder Funds to investors . . . did not confer an ownership interest in money that the Feeder Funds ultimately invested in BLMIS." *Id.* at 427.  Thus, "regardless of their intent, appellants never entrusted *their* cash or securities to BLMIS and, thus, fail to satisfy this 'critical aspect of the "customer" definition.'"  *Id.* (quoting *In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d at 236 (internal quotation marks omitted)); *see Sec. Inv'r Prot. Corp. v. Morgan, Kennedy & Co.*, 533 F.2d 1314, 1318 (2d Cir. 1976) ("*Morgan Kennedy*"); *see also Kruse*, 708 F.3d at 427-28  ("[A] claimant will not be entitled to customer protection under SIPA unless the debtor actually receives the claimant's cash or securities; the debtor must actually have come into possession or control.") (citing 1–12 *Collier on Bankruptcy* ¶ 12.12 (16th ed. 2012)).

### 2.      The ERISA Motion

While the appeals of the Feeder Fund Decision were pending, the Trustee also filed a motion to address arguments that were raised by claimants without BLMIS accounts who were benefit plans or benefit plan participants and who sought to use the Employee Retirement Income Security Act ("ERISA") as a basis for determining their customer status.[15]  *See* ECF No. 4521.  The District Court withdrew the reference and granted the motion.

The District Court noted that the first two of the three ways to qualify as a "customer" under SIPA § 78*lll*(2), "presume that a customer must have a securities account with the debtor," and that the ERISA claimants also did not qualify under the third method of having "deposited cash with the debtor for the purpose of purchasing securities."  *Sec. Inv'r Prot. Corp. v.*

---

[15] Prior to the hearing on the Initial Feeder Fund Motion, the Court had removed from the scope of the motion the question of whether ERISA affects "customer" status under SIPA.

*Jacqueline Green Rollover Account*, Nos. 12 Civ. 1039 (DLC), 12 Civ. 1139 (DLC), 2012 WL

3042986, at *4 (S.D.N.Y. July 25, 2012) (quoting SIPA § 78*lll*(2)).  That was so because none of

the claimants "owned any cash deposited with BLMIS.  Rather, . . . in each case this cash was

owned by the third-party entity in which the claimant invested, and which had a BLMIS account

in its name." *Id.* at *5.  The District Court also rejected arguments that fiduciary responsibilities

could suffice to create a "customer" relationship.  *Id.* at *12.

> ### 3.    Other Customer Motions

Additional SIPA "customer" motions followed, each of which was determined in favor of

the Trustee.  On August 21, 2013, the Bankruptcy Court issued its Bench Memorandum Granting

Trustee's Second Motion to Affirm Trustee's Determinations Denying Claims of Claimants Who

Invested in Certain Feeder Funds and Did Not Have BLMIS Accounts in Their Names.  *See* ECF

No. 5450 ("the Second Feeder Fund Decision").  Noting that prior decisions established that the

burden is on the claimant to establish that he is a "customer" entitled to SIPA protection, and that

such showing is not easily met, this Court concluded that the claimants had failed to establish

their "customer" status.  The Bankruptcy Court noted that "they had no securities accounts at

BLMIS, were not known to BLMIS, lacked privity and any financial relationship with BLMIS."

Second Feeder Fund Decision at 4. They further "lacked property interest in any feeder fund

account assets at BLMIS, entrusted no cash or securities to BLMIS, had no investment discretion

over feeder fund assets invested with BLMIS, received no accounts statements or other

communications from BLMIS and had no transactions reflected on the books and records at

BLMIS." *Id.*

On August 22, 2014, this Court issued its Memorandum Decision Granting Motion To

Affirm Trustee's Determinations Denying Claims Of Claimants Who Invested In Certain ERISA

Plans.  *See generally Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L.*

17

*Madoff Inv. Sec. LLC*), 515 B.R. 161 (Bankr. S.D.N.Y. 2014) ("ERISA Claimant Decision").

Again holding that the burden is on the claimant to establish that he is a customer, this Court

concluded that a claimant who wished to qualify as a person who has deposited cash with the

debtor for the purposes of purchasing securities must show that she entrusted her "own assets

directly through an account maintained in her own name rather than indirectly through a fund

that then entrusted the fund's assets through an account maintained in the fund's name." *Id.* at

168 (internal citations omitted).  This Court further noted that "not every victim of a broker-

dealer's fraud is a 'customer,'" and that even the fact that a claimant exercised some control over

her own investments in the fund or the fund's investments in BLMIS was not sufficient to meet

"the narrow definition of customer under SIPA." *Id.* at 166, 168.

On February 25, 2015, this Court read into the record a decision granting the Trustee's

Motion And Memorandum To Affirm His Determinations Denying Claims Of Claimants

Holding Interests In S&P or P&S Associates, General Partnerships ("S&P Decision").  This

Court explained that the indicia of customer status are: (i) a direct financial relationship with

BLMIS; (ii) a property interest in the funds invested directly with BLMIS; (iii) securities

accounts with BLMIS; (iv) control over the account holders' investments with BLMIS; and (v)

identification of the alleged customer in BLMIS's books and records.  Ackerman Decl. Ex. 9 at

30, ECF No. 8734.  The Court held that the objecting partners failed to sustain their burden of

proving that they are customers of BLMIS and an order granting the Trustee's motion was

entered.  *Id.* at 36; *see also* ECF No. 9450.  Since the S&P Decision, there have been ten motions

to affirm the Trustee's determinations, each of which was granted by the Court ("Customer

Opinions").[16]

---

[16] *See* Order Approving Trustee's Motion To Affirm His Determinations Denying Claims of Claimants Holding
Interests In Peerstate Equity Fund, L.P., ECF No. 9883 (Apr. 27, 2015); Order Approving Trustee's Motion And To

## ARGUMENT

To be a "customer" under SIPA, an investor must have "a claim on account of securities received, acquired, or held by the debtor in the ordinary course of its business as a broker or dealer from or for the securities accounts of such person," including "any person who has deposited cash with the debtor for the purpose of purchasing securities." SIPA § 78*lll*(2).[17]

---

Affirm His Determinations Denying Claims Of Claimants Holding Interests In The Lazarus-Schy Family Partnership, The Schy Family Partnership, Or The Lazarus Investment Group, ECF No. 10010 (May 18, 2015); Order Approving Trustee's Motion To Affirm His Determinations Denying Claims Of Claimants Holding Interests In Epic Ventures, LLC, ECF No. 10267 (June 25, 2015); Order Approving Trustee's Motion To Affirm His Determinations Denying Claims Of Claimants Holding Interests Partners Investment Co., Northeast Investment Club, And Martin R. Harnick & Steven P. Norton, Partners, ECF No. 10894 (July 29, 2015); Order Approving Trustee's Motion To Affirm His Determinations Denying Claims Of Claimants Holding Interests The Whitman Partnership, The Lucky Company, The Petito Investment Group, And The Harwood Family Partnership, ECF No. 11145 (Aug. 26, 2015); Order Approving Trustee's Motion To Affirm His Determinations Denying Claims Of Claimants Holding Interests 1973 Masters Vacation Fund, Bull Market Fund, And Strattham Partners, ECF No. 11920 (Oct. 29, 2015); Order Approving Trustee's Motion To Affirm His Determinations Denying Claims Of Claimants Holding Interests in Black River Associates LP, MOT Family Investors, LP, Rothschild Family Partnership, and Ostrin Family Partnership, ECF No. 12757 (Mar. 3, 2016); Order Approving Trustee's Motion To Affirm His Determinations Denying Claims Of Claimants Holding Interests in the Article Third Trust, Palmer Family Trust, Maggie Faustin, Estate of Theodore Schwartz, and Miller Trust Partnership, ECF No. 13172 (Apr. 26, 2016); Order Approving Trustee's Motion To Affirm His Determinations Denying Claims Of Claimants Holding Interests in William M. Pressman, Inc., William Pressman, Inc. Rollover Account, and AGL Life Assurance Company, ECF No. 13466 (June 7, 2016); and Order Approving Trustee's Motion and Memorandum To Affirm His Determinations Denying Claims Of Claimants Holding Interests in Palko Associates, Gloria Jaffe Investment Partnership, and the Miller Partnership, ECF No. 13780 (July 22, 2016).

[17] The definition applicable to this SIPA proceeding is:

   (2) Customer

      (A) In General

      The term "customer" of a debtor means any person (including any person with whom the debtor deals as principal or agent) who has a claim on account of securities received, acquired, or held by the debtor in the ordinary course of its business as a broker or dealer from or for the securities accounts of such person for safekeeping, with a view to sale, to cover consummated sales, pursuant to purchases, as collateral security, or for purposes of effecting transfer.

      (B) Included persons

      The term "customer" includes—

         (i) any person who has deposited cash with the debtor for the purpose of purchasing securities; [and]

         (iii) any person who has a claim against the debtor arising out of sales or conversions of such securities, [but does not include—]

Thus, to be a "customer" an investor must have entrusted cash or securities with the debtor for the purpose of trading or investing in securities. In *Kruse*, the Second Circuit found that investors who bought interests in a limited partnership that invested partnership funds via the partnership's own BLMIS account "never entrusted *their* cash or securities to BLMIS and, thus, fail to satisfy this 'critical aspect of the "customer" definition'" regardless of their intent. 708 F.3d at 427 (quoting *In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d at 236). Similarly, the Second Circuit in *In re New Times Securities Services* held that "[t]he critical aspect of the 'customer' definition is the entrustment of cash or securities to the broker-dealer for the purposes of trading securities." 463 F.3d at 128 (quoting *Appleton v. First Nat'l Bank of Ohio*, 62 F.3d 791, 801 (6th Cir. 1995)); *see also In re Adler, Coleman Clearing Corp.*, 216 B.R. 719, 724-25 (Bankr. S.D.N.Y. 1998) ("The term [customer] refers to those who entrust cash or securities to broker-dealers for the purpose of trading and investing in the securities market."). The Second Circuit recently further upheld this principle in *In re Lehman Bros., Inc.*, 791 F.3d 277 (2d Cir. 2015), concluding that the "critical aspect of the 'customer' definition is the entrustment of cash or securities to the broker-dealer for the purposes of trading securities." *Id.* at 282 (quoting *In re*

---

(C) Excluded persons

The term "customer" does not include any person, to the extent that—

(i) the claim of such person arises out of transactions with a foreign subsidiary of a member of SIPC; or

(ii) such person has a claim for cash or securities which by contract, agreement, or understanding, or by operation of law, is part of the capital of the debtor, or is subordinated to the claims of any or all creditors of the debtor, notwithstanding that some ground exists for declaring such contract, agreement, or understanding void or voidable in a suit between the claimant and the debtor.

SIPA § 78*lll*(2). After the start of this case, the "customer" definition was slightly reorganized and amended in a manner irrelevant to the present issues by the Dodd-Frank Wall Street Reform and Consumer Protection Act. Pub. L. No. 111-203, § 983(b), 124 Stat. 1931 (2010); *see In re Lehman Bros. Inc.*, 462 B.R. 53, 61 n.9 (Bankr. S.D.N.Y. 2011).

*Bernard L. Madoff Inv. Secs. LLC*, 654 F.3d at 236).  The Trustee is responsible for discharging obligations of the debtor to customers with such claims "insofar as such obligations are ascertainable from the books and records of the debtor or are otherwise established to the satisfaction of the trustee."  SIPA § 78fff-2(b).

The Objecting Claimants' investments in the Limited Liability Companies do not meet the requirements for "customer" status outlined in the seminal Second Circuit decision *Morgan Kennedy*, 533 F.2d at 1318, and reaffirmed in *Kruse*, 708 F.3d at 427.  In *Morgan Kennedy*, the Second Circuit rejected the argument that the beneficial owners of the account holder were the "customers" under SIPA, citing the facts that: (1) title to the trust assets was held by the account holder, not the beneficiaries; (2) the securities account with the debtor was in the name of the account holder, not the beneficiaries; (3) the account holder had the exclusive power to entrust the assets to the debtor; (4) the beneficiaries were unknown to the broker; and (5) the beneficiaries had no legal capacity in which they could deal with the debtor.  533 F.2d at 1318.

The Objecting Claimants' circumstances are little different than those of the claimants in *Morgan Kennedy*, and do not exhibit the hallmarks of customer status discussed in this Court's *S&P* decision.  Hr'g. Transcript, *S&P Decision*, at 30, Ackerman Decl. Ex. 9.  The Objecting Claimants entrusted their money to the Limited Liability Companies, not to BLMIS.  The Objecting Claimants lacked a direct financial relationship with BLMIS on their own behalf.  The money entrusted to BLMIS was the property of the Limited Liability Companies, not the Objecting Claimants.  The BLMIS Accounts were in the names of the Limited Liability Companies, not in the individual names of Objecting Claimants.

The individual financial interests of Objecting Claimants in each account were not identified in BLMIS' books and records.  The corporate representatives who dealt with BLMIS

21

were like the trustees who acted for the trust account in *Morgan Kennedy*, and were no more customers in their individual capacity than the trustees were. *Morgan Kennedy*, 533 F.2d at 1318, 1320-21 (notwithstanding that the trust account was in the name of the trustees, "[a]ny suggestion that each of the three Trustees has a separate customer claim against the debtor is untenable" because the Trustees together managed the trust, "which was the true customer of the broker-dealer"; similarly, noting that under the SIPA Rules, individual coverage for multiple people who each own some portion of, or interest in, an account is "explicitly forbidden").

Only the Limited Liability Companies, not the Objecting Claimants, entrusted their cash or securities to BLMIS, and the Objecting Claimants thus fail to satisfy this "critical aspect of the 'customer' definition." *Kruse*, 708 F.3d at 426-27 (citing *In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d at 236); *accord ERISA Claimant Decision*, 515 B.R. at 169. Whether the Objecting Claimants intended the Limited Liability Companies to invest with BLMIS is irrelevant under SIPA. *See Kruse*, 708 F.3d at 426-27; *ERISA Claimant Decision*, 515 B.R. at 169-70.

The funds that the Objecting Claimants contributed to the Limited Liability Companies, and anything that the Limited Liability Companies purchased with those funds, belong to the relevant Limited Liability Company and not to any individual Objecting Claimant. Pursuant to the state laws governing the Limited Liability Companies, company property belongs to the entity alone and not to the individual members. *See* N.Y. LTD. LIAB. CO. L. § 601 (McKinney 2016) ("A member has no interest in specific property of the limited liability company"); N.J.S.A. 42:2C-4 ( "A limited liability company is an entity distinct from its members."). Like the objecting claimants dealt with by prior Customer Opinions, the Objecting Claimants do not individually own the assets that the Limited Liability Companies invested with BLMIS. Instead, the assets are collectively owned by the Limited Liability Companies themselves.

It was the Limited Liability Companies, not the Objecting Claimants, which entrusted assets to BLMIS for the purpose of purchasing securities. Each Limited Liability Company, through its management, had the right to direct the investment of those assets on behalf of the Limited Liability Company, and to withdraw property from its Account on behalf of the Limited Liability Company. Each Limited Liability Company and not the Objecting Claimants, was the customer for its respective Account under SIPA.

Because BLMIS did not perform a custodial function on behalf of the individual Objecting Claimants, the Objecting Claimants have neither "customer" claims nor individual net equity. The purpose of SIPA, a statute intended to deal with broker insolvency, is "to expedite the return of customer property" by "protecting the *custody* function of brokers," according to a Second Circuit decision that declined to permit interest or time-based damages for customer claims under SIPA. *Sec. Inv'r Prot. Corp. v. 2427 Parent Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*, 779 F.3d 74, 80 (2d Cir. 2015). Customers share in the fund of customer property ratably, according to each customer's "net equity." *Id*. at 77, 81. The definition of net equity is limited by the fundamental SIPA design "to return customer property to customers," *id.* at 77, whether in cash or in actual securities. *Id*. at 80.[18]

The Second Circuit stated in *2427 Parent Corp.*, "[w]e . . . previously concluded that in [the BLMIS] case net equity . . . should be determined based on customers' actual deposits and withdrawals. These deposits, net withdrawals, constitute customer property here." *Id.* at 81 (citations omitted). The books and records of BLMIS show that Objecting Claimants made no

---

[18] The definition of "net equity" at SIPA § 78*lll*(11) begins, "The term 'net equity' means the dollar amount of the account or accounts of a customer, to be determined by—

> (A) Calculating the sum which would have been owed by the debtor to such customer if the debtor had liquidated . . . on the filing date—(i) all securities positions of such customer . . . ."

individual deposits into or withdrawals from BLMIS on their own behalf, and those who interacted with BLMIS as to the Accounts did so solely on the Limited Liability Company's behalf. Sehgal Decl., Exs. ¶¶ 16, 28, 32, 43, Exs. 4, 16, 20, 31; *see also* ¶ 37, Ex. 25. The Objecting Claimants accordingly have no net equity and are not "customers" within the meaning of SIPA.

Each of the Objecting Claimants was served with requests for admission, interrogatories, and requests for production. The two FGLS Equity LLC Objecting Claimants and one of the Kuntzman Family Objecting Claimants responded. None of the Chalek Associates LLC, Chaitman/Schwebel LLC, or Larsco Investments LLC Objecting Claimants responded to discovery. Those Objecting Claimants who failed to respond to the requests for admission, admitted them. FED. R. CIV. P. 36(a)(3). These admissions show that Objecting Claimants lack any relationship with BLMIS that fits the *Morgan Kennedy* criteria and that their claims of "customer" status are baseless. They admitted that: (i) the relevant Account was not titled in their name;[19] (ii) that they never received investment statements or tax statements in their names from BLMIS;[20] (iii) that they never paid cash directly to BLMIS for credit to an account in their names;[21] (iv) never deposited securities directly with BLMIS;[22] (v) that they never directly withdrew or received funds from BLMIS;[23] (vi) that their only relationship to BLMIS existed by way of their relationship to the Account holder;[24] (vii) that they never entered into any contracts

---

[19] Ackerman Decl., Exs. 1, 2, 5, 6, 7, ¶ 1.

[20] Ackerman Decl., Ex. 5, ¶ 5; Ackerman Decl., Exs. 1, 2, 6, 7, ¶ 8.

[21] Ackerman Decl., Ex. 5, ¶ 11; Ackerman Decl., Exs. 1, 2, 6, 7, ¶ 5.

[22] Ackerman Decl., Ex. 5, ¶ 3; Ackerman Decl., Exs. 1, 2, 6, 7, ¶ 4.

[23] Ackerman Decl., Ex. 5, ¶ 4; Ackerman Decl., Exs. 1, 2, 6, 7, ¶ 6.

[24] Ackerman Decl., Ex. 5, ¶ 8; Ackerman Decl., Exs. 1, 2, 6, 7, ¶ 11.

in their names with BLMIS;[25] and (viii) that they did not have any control, investment discretion or decision-making power over any investment assets at BLMIS.[26]

Responses received from Objecting Claimants related to Kuntzman Family LLC and FGLS Equity LLC are similarly unpersuasive. None of the responding Objecting Claimants provided evidence of a direct relationship with BLMIS. In both cases, the responding Objecting Claimants admitted that their communications were with the Managing Member and not with BLMIS. When Ms. Gattegno "wanted to withdraw funds, she so informed Jacqueline Green [the General Partner] who would inform Madoff" and she would then "receive a check from Kuntzman Family LLC after it received withdrawals from Madoff."[27] Likewise, the FGLS responding Objecting Claimants sent their requests for withdrawals to Steven Mendelow on behalf of FGLS, and did not receive communications from BLMIS related to the FGLS account.[28]

As the Second Circuit has explained, "[j]udicial interpretations of 'customer' status support a narrow interpretation of the SIPA's provisions." *Kruse*, 708 F.3d at 426 (quoting *In re New Times Sec. Servs., Inc.*, 463 F.3d at 127). Customer status under SIPA is narrowly construed and is the burden of the claimant to establish. *See ERISA Claimant Decision*, 515 B.R. at 166; *In re Bernard L. Madoff Inv. Sec. LLC*, 454 B.R. at 294 (citing *In re Klein, Maus & Shire, Inc.*, 301 B.R. 408, 418 (Bankr. S.D.N.Y. 2003)) ("The burden is on the claimant to establish he is a 'customer' entitled to SIPA protection, and such a showing 'is not easily met.'"); *see also Mishkin v. Siclari (In re Adler, Coleman Clearing Corp.)*, 277 B.R. at 557 (Bankr. S.D.N.Y.

---

[25] Ackerman Decl., Ex. 5, ¶ 7; Ackerman Decl., Exs. 1, 2, 6, 7, ¶ 10.

[26] Ackerman Decl., Ex. 5, ¶ 9; Ackerman Decl., Exs. 1, 2, 6, 7, ¶ 12.

[27] Ackerman Decl. Ex. 2, MCMDR_00000384-385.

[28] Ackerman Decl. Ex. 1, MCMDR_00000342, 346.

2002) ("[I]it is well-established in the Second Circuit that a claimant bears the burden of proving that he or she is a 'customer' under SIPA."). The Objecting Claimants have not met this burden. Thus, under Second Circuit precedent, the Objecting Claimants are not SIPA customers.

## CONCLUSION

For all of the foregoing reasons, the Court should affirm the Trustee's determination denying the claims of the twenty-two Objecting Claimants, overrule their objections, overrule the portion of the Kuntzman Family and Chalek Associates' objections related to the customer status of its partners, disallow the Objecting Claimants' claims, and grant such other and further relief as the Court deems just and proper.

Dated: New York, New York
      August 16, 2016

Respectfully submitted,

*/s/ David J. Sheehan*

David J. Sheehan
Email: dsheehan@bakerlaw.com
Seanna R. Brown
Email: sbrown@bakerlaw.com
Nicholas J. Cremona
Email: ncremona@bakerlaw.com
Jorian L. Rose
Email: jrose@bakerlaw.com
Amy E. Vanderwal
Email: avanderwal@bakerlaw.com
Stephanie A. Ackerman
Email: sackerman@bakerlaw.com
**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, New York  10111
Tel: (212) 589-4200
Fax: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee for the
Substantively Consolidated SIPA Liquidation
of Bernard L. Madoff Investment Securities LLC
and the Estate of Bernard L. Madoff*