**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan

Hearing Date: August 24, 2016
Hearing Time: 10:00 a.m. (EST)
Objections Due: August 19, 2016

*Attorneys for Irving H. Picard, Trustee*
*for the Substantively Consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities LLC*
*and the Estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, <br><br> Plaintiff-Applicant, <br><br> v. <br><br> BERNARD L. MADOFF INVESTMENT SECURITIES LLC, <br><br> Defendant. | Adv. Pro. No. 08-01789 (SMB) <br><br> SIPA LIQUIDATION <br><br> (Substantively Consolidated) |
| In re: <br><br> BERNARD L. MADOFF, <br><br> Debtor. | |

**TRUSTEE'S RESPONSE TO DEFENDANTS'**
**REQUESTS TO DEPOSE BERNARD L. MADOFF**

Irving H. Picard, trustee ("Trustee") for the substantively consolidated liquidation of

Bernard L. Madoff Investment Securities LLC ("BLMIS") and the estate of Bernard L. Madoff

("Madoff"), submits this response ("Response") to the requests filed by multiple defendants who

seek permission to take Bernard L. Madoff's deposition.  In support of his Response, the Trustee

states as follows:

## PRELIMINARY STATEMENT

Before the Court are requests (the "Requests") by defendants in 83 adversary

proceedings[1] ("Defendants") who seek permission to take Bernard L. Madoff's deposition.  For

the reasons set forth herein, the Trustee objects to the Requests[2] to the extent that: (i) discovery

had already closed in eight of the adversary proceedings prior to July 7, 2016; (ii) the amount of

the Defendants' two-year fictitious profit liability would not change in 80 of the adversary

proceedings regardless of whether Madoff's fraud began in January 1992, as opposed to an

earlier date; (iii) Defendants seek testimony not relevant to their claims and defenses at issue in

their adversary proceeding; and (iv) Defendants seek to elicit testimony with respect to the Profit

Withdrawal Litigation[3] or concerning Jeffry Picower and related entities (the "Picower Parties").

To the extent this Court permits a deposition to proceed and grants any requests by

Defendants to extend fact discovery in order to participate, any extension should be strictly

limited to the Madoff deposition only, and no supplemental or follow-up discovery should be

permitted, other than by the Trustee to address or rebut statements that Madoff may make at such

a deposition.

---

[1] These 83 adversary proceedings involve a total of 136 BLMIS accounts.

[2] The reference to "Requests" includes the motion filed by Chaitman LLP seeking permission to depose Madoff.

[3] The Trustee is currently litigating the meaning of "profit withdrawals" in BLMIS's book and records (the "Profit Withdrawal Litigation").  *See, e.g.*, Stipulation and Order on Schedule for Litigation of and Evidentiary Hearing On Profit Withdrawal Issue (Dkt. No. 13619).

Finally, in the event the Court authorizes a deposition of Madoff, the Defendants should be required to select lead counsel who will conduct the deposition for purposes of efficiency, to prevent duplication, and to prevent burden on the correctional facility.

## BACKGROUND

On July 7, 2016, certain Defendants represented by Chaitman LLP filed a motion (the "Chaitman Motion") seeking an order permitting the deposition of Madoff in connection with 64 "good faith" adversary proceedings (*see* Dkt. Nos. 13603–05), which the Trustee commenced against the respective Defendants in 2010 to recover the fictitious profits they received from BLMIS.[4]  The Chaitman Motion seeks to depose Madoff on issues related to BLMIS's business activities, with particular emphasis placed on any such activities occurring prior to January 1, 1992; "[t]he proportion and division of legitimate and illegitimate activities of Madoff's operations, including, *inter alia*, when Madoff began operating a 'Ponzi' scheme"; BLMIS's record-keeping protocols; and the specifics of each Defendant's relationship with Madoff.  Dkt. No. 13603-2 ¶¶ 4–6.  Shortly thereafter, on July 11, 2016, defendants in *Picard v. Zraick*, Adv. Pro. No. 10-05257, filed a letter with the Court seeking permission to make a motion for leave to depose Madoff, or to join the Chaitman Motion, on similar grounds (the "Zraick Request").  Dkt. No. 13617.

In connection with responding to both the Chaitman Motion and the Zraick Request, the Trustee requested that the Court adjourn the return date on the Chaitman Motion in order to permit the Trustee to respond collectively to the Chaitman Motion, the Zraick Request, and any other similar requests the Trustee had reason to believe would be forthcoming, in a coordinated and consolidated fashion.  Dkt. No. 13634.  Following a Court hearing on July 20, 2016 (the "July 20 Hearing"), and consistent with instructions received from the Court, the Trustee filed a

---

[4] Chaitman LLP previously deposed Madoff in connection with the Profit Withdrawal Litigation.

Notice To Defendants Establishing Deadline to File Requests to Depose Bernard L. Madoff

(Dkt. No. 13786) (the "Trustee's Notice"), which, *inter alia*, informed all defendants in "good

faith" cases[5] that: (i) the deadline for all "good faith" defendants to file and serve a Notice of

Request to Depose Bernard L. Madoff was August 5, 2016; (ii) the deadline to file and serve any

opposition to any such timely filed notices is August 19, 2016; and (iii) the Court would hold a

hearing on August 24, 2016 to determine whether a deposition should be authorized and, if so,

what the parameters of the deposition would be.  The Trustee's Notice advised that any

defendants submitting Requests should identify the proposed areas of inquiry for the deposition

and their relevance to the respective adversary proceeding(s).

In response to the Trustee's Notice, the Defendants in nineteen adversary proceedings

filed and served Notices of Request to Depose Madoff by the August 5, 2016 deadline.[6]  In

general, the Requests seek to depose Madoff on issues similar to those requested by the

Defendants represented by Chaitman LLP, with an emphasis placed on BLMIS's purported

trading operations prior to January 1, 1992.[7]  The scope of the areas of inquiry that the

Defendants identified can be summarized as follows:

- The trading activities of Madoff's market making and proprietary trading units

  during the period prior to January 1, 1992;

---

[5] "Good faith" cases are those adversary proceedings seeking the avoidance and recovery of two-year transfers and subsequent transfers in which the Trustee has not alleged any knowledge and/or lack of good faith of the defendant(s).  *See* Trustee's Notice, Dkt. No. 13786.

[6] *See* Exhibit A attached hereto (identifying the total of 83 adversary proceedings implicated by the Chaitman Motion and the timely filed Notices of Request to Depose Madoff).

[7] Defendants represented by Dentons US LLP (the "Dentons Defendants") contend they "have no information regarding the early operations of Madoff Securities except what the Trustee's consultants describe."  ECF No. 13825 ¶ 3 (Notice of Request by Dentons Defendants).  To the contrary, as he does in all matters, the Trustee provided the Dentons Defendants with direct access to over 4 million documents (just under 16.5 million pages) in E-Data Room 1 relating to BLMIS operations.  The documents in E-Data Room 1 include regulatory disclosures, documents received from regulatory bodies about BLMIS, financial statements and BLMIS bank records, BLMIS customer monthly account statements, records of transfers of money to, from, and within BLMIS, other BLMIS internal records, and certain public documents like plea allocutions by Madoff and BLMIS employees.  There is no indication that Carole Neville or any other counsel for the Dentons Defendants has ever logged on to E-Data Room 1.

- The trading activities for Madoff's investment advisory customers prior to January 1, 1992;

- The number of employees, profitability, and revenue-generating activities of each Madoff business unit in the period prior to January 1, 1992;

- The proportion and division of legitimate and illegitimate activities of Madoff's operations, including, *inter alia*, when Madoff began operating a "Ponzi" scheme;

- The record-keeping procedures of each unit of Madoff's operations; and

- Questions specific to each Defendant's relationship with Madoff and/or BLMIS, including account-specific inquiries.

While the focus of many Defendants is on Madoff's representation that the Ponzi scheme began in 1992,[8] the allocutions of other former employees of BLMIS, among other evidence, establish that the fraud began far earlier. For example, at a plea hearing on November 21, 2011, in the case captioned *United States v. Kugel*, Case No. 10-CR-228 (LTS), David Kugel, a former BLMIS trader and manager, pleaded guilty to a six-count criminal information charging him with securities fraud, falsifying the records of BLMIS, conspiracy, and bank fraud. Kugel at his plea hearing testified under oath that the fraud at BLMIS began in the early 1970s:

> Specifically, beginning the early '70s, until the collapse of BLMIS in December 2008, I helped create fake, backdated trades. I provided historical trade information . . . first to Annette Bongiorno, and later to Joanne Crupi, and others which enabled them to create fake trades that, when included on the account statements and trade confirmations of Investment Advisory clients, gave the appearance of profitable trading when in fact no trading had actually occurred.[9]

---

[8] Counsel appear to be referring to a statement by Madoff in the Profit Withdrawal Litigation that the fraud began in January 1992. In addition, at a plea hearing on March 12, 2009, in the case captioned *United States v. Madoff*, Case No. 09-CR-213(DC), Madoff pleaded guilty to an 11-count criminal information filed against him by the United States Attorney for the Southern District of New York. At the plea hearing, Madoff admitted he "operated a Ponzi scheme through the investment advisory side of [BLMIS]." Madoff claimed that "[t]o the best of my recollection, my fraud began in the early 1990s." *Id.* at 25.

[9] *United States v. David Kugel*, 10 Cr. 228 (LTS), 1:11-cv-03605-JSR Doc 89-7, filed January 26, 2012 at 32.

4

Another BLMIS employee, Irwin Lipkin, pled guilty to charges brought by the U.S.

Attorney that beginning in the mid-1970s, he falsified the books and records of BLMIS.

Specifically, Lipkin acknowledged that on a monthly basis he changed BLMIS's profit and loss

numbers at the direction of Madoff, and as a result BLMIS's financial records were false and

misleading. *See U.S. v. Lipkin*, No. 1:10-cr-00228-LTS (S.D.N.Y. Mar. 17, 2010), ECF No. 281

¶¶ 15–17.

## ARGUMENT

### I.   THE REQUESTS DO NOT SATISFY RULES 26 AND 30 AND SHOULD BE DENIED OR LIMITED

Federal Rule of Civil Procedure 30 requires leave of court to depose an incarcerated

deponent.  FED. R. CIV. P. 30(a)(2)(B) (requiring leave of court "if the deponent is confined in

prison.").  While such leave must be granted to the extent consistent with the Federal Rules, Rule

26(b)(2) states that the court must limit the frequency or extent of discovery otherwise allowed

by these Rules if it determines that "(i) the discovery sought is unreasonably cumulative or

duplicative or can be obtained from some other source . . . ; (ii) the party seeking the discovery

has had ample opportunity to obtain the information by discovery in the action; or (iii) the

proposed discovery is outside the scope permitted by Rule 26(b)(1)."  FED. R. CIV. P.

26(b)(2)(C)(i)–(iii).

#### A.   The Requests Should be Denied In Cases Where Fact Discovery Was Previously Closed

The Requests should be denied with respect to any adversary proceeding where fact

discovery was closed as of July 7, 2016—the date of the Chaitman Motion—based on the

applicable case management orders, as well as the Court's comments on the record at the July 20

Hearing.[10]

Under Federal Rule 16(b)(4), a court may modify a scheduling order upon a showing of

"good cause with the judge's consent."  FED. R. CIV. P. 16(b)(4).  "[W]ith respect to the Rule

16(b) standard, 'good cause' depends on the diligence of the moving party."  *Kassner v. 2nd*

*Avenue Delicatessen Inc.*, 496 F.3d 229, 243 (2d Cir. 2007) (quoting *Parker v. Columbia*

*Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000)); *see also Ritchie Risk-Linked Strategies*

*Trading (Ireland), Ltd. v. Coventry First LLC*, 282 F.R.D. 76, 79 (S.D.N.Y. 2012) ("The Rule

16(b)(4) 'good cause' inquiry is primarily focused upon the diligence of the movant in

attempting to comply with the existing scheduling order and the reasons advanced as justifying

that order's amendment."); *Compania Embotelladora Del Pacifico, S.A. v. Pepsi Cola Co.*, 607

F. Supp. 2d 600, 602 (S.D.N.Y. 2009) (refusing to alter scheduling order where party had

knowledge of facts and circumstances in the case for several years and could have made motion

within the specified time period).

In the eight adversary proceedings where fact discovery had already closed as of July 7,

2016, Defendants cannot make a credible showing of good cause.[11]  Such Defendants long had

the opportunity to pursue this same discovery, and have no basis to reopen fact discovery simply

because other Defendants are now seeking Madoff's deposition.  This is particularly true given

that their Requests are not based upon any new or recently discovered information.  In fact,

during his criminal allocution in March 2009, Madoff made the assertion that the fraud did not

---

[10] At the July 20 Hearing, the Court suggested that to the extent that a deposition of Madoff is permitted, it would not permit defendants whose fact-discovery deadlines had closed prior to July 7, 2016, to participate in that deposition. *See* Tr. 7/20/2016 at 32:3–9 ("THE COURT: . . . [I]f the discovery—fact discovery has run in any of these cases, before Mr. Rich sent his letter saying I want to take his deposition—and I don't remember what Ms. Chaitman wrote or made a motion that—whatever that date is.  So those people whose discovery deadline expired, I'm not going to extend it for them.").

[11] *See* Exhibit B attached hereto (identifying adversary proceedings where fact discovery had closed prior to July 7, 2016).

begin until the early 1990s. Nor do any of the other proposed deposition topics—which

generally target BLMIS's books and records, BLMIS's purported trading activity, and account-

specific issues—raise any new issues that would justify reopening fact discovery. Reopening

fact discovery in these cases would only prejudice and further delay the Trustee's recovery

efforts.

Moreover, to the extent this Court grants the Requests with respect to those adversary

proceedings where fact discovery is set to close during the pendency of this deposition request,

other than a deposition of Madoff, no additional fact discovery should be permitted outside of the

discovery cutoff set forth in the applicable case management orders. It would be prejudicial to

the Trustee if Defendants were permitted to delay until the very end of their fact discovery

periods to only then initiate the logistically complicated process of deposing an incarcerated

individual, and then use that testimony as a basis to take any follow-up discovery that would

require extending the fact-discovery period. Under these circumstances, the Court should extend

discovery only for the limited and specific purpose of deposing Madoff. In the event that a

deposition is granted, however, the Trustee should be permitted to take additional discovery to

the extent necessary to rebut any statements made by Madoff in connection with the Requests.

**B.    Requests Relating to the Start Date of the Ponzi Scheme are Relevant in Only Three Adversary Proceedings**

Counsel for multiple Defendants argues that "if, as Madoff has asserted, the fraud began

in 1992, then the Trustee is bound by the statement balances of each defendant through January

31, 1991."[12] However, even if Madoff's statement that the Ponzi scheme began in 1992 was

credible—which it is not—the only cases where Defendants' two-year fictitious profits liability

---

[12] *See* Dkt. No. 13605 at 7 (Chaitman Motion). The Trustee assumes the reference to January 31, 1991 is a mistake and that counsel means December 31, 1991. Regardless, this position is without merit because there is extensive evidence of fraud, lack of trading and falsification of records for many years prior to 1992, including admissions by convicted former BLMIS employees.

7

would be impacted are: (i) *Gertrude E. Alpern Revocable Trust, et al.*, (ii) *Denis M. Castelli*, and (iii) *The Estate of Doris Igoin, et al. See* Declaration of Matthew B. Greenblatt, dated August 19, 2016, filed simultaneously herewith ("Greenblatt Declaration"). For the remaining 80 adversary proceedings, the two-year fictitious profits liability would not be impacted, because, among other reasons, (i) many of the accounts at issue in those proceedings were opened post-January 1, 1992 and such accounts did not receive any inter-account transfers from pre-1992 accounts, or (ii) even if, for purposes of argument, the BLMIS accounts in the remaining adversary proceedings were granted additional principal as a result of a January 1, 1992 start date, the withdrawals in those accounts far exceeded any principal in those accounts, and therefore the two-year fictitious profits number is not impacted. *See* Greenblatt Declaration.

Based on the foregoing, the Requests relating to pre-1992 activity at BLMIS should be denied for all but the three adversary proceedings identified above, because they seek information not relevant to the claims or defenses in their adversary proceedings in contravention of Federal Rule of Civil Procedure 26(b)(1).[13]

### C.   If a Deposition is Authorized, Requests Concerning Madoff's Relationship with Any of the Defendants Are Irrelevant and Should be Denied

Similarly irrelevant is any testimony from Madoff concerning his relationship with any of the Defendants. As discussed above, the Trustee does not allege any bad faith on the part of Defendants, and the Trustee is only seeking to recover fictitious profits, not principal. Because a Defendant's state of mind is not at issue in these "strict liability" adversary proceedings, Madoff's relationship with Defendants is not a relevant inquiry and Requests relating thereto should be denied.

---

[13] Federal Rule of Civil Procedure 26(b)(1) provides in part that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." FED. R. CIV. P. 26(b)(1).

## II.    IF A DEPOSITION IS AUTHORIZED, IT SHOULD BE LIMITED TO THE SPECIFIC TOPICS AND PROCEDURES APPROVED BY THE COURT

To the extent the Court permits a deposition of Madoff to proceed, the Court should limit the areas of inquiry and establish specific protocols designed to ensure that the deposition proceeds in an efficient, orderly, and coordinated fashion.

First, the Trustee seeks to ensure that a deposition is not improperly used as a vehicle to elicit testimony from Madoff for use in other proceedings, or with respect to topics outside the scope of any approved Requests.  In addition to the Trustee's general interest in conducting this deposition in an efficient and orderly manner on Court-approved subjects, the Trustee seeks to ensure that issues relating to the Profit Withdrawal Litigation or the Picower Parties, for example, are not the subject of further questions at this time.  This Court previously issued an order limiting Madoff's deposition to specified topics authorized by the Court, and the Trustee submits that a similar order should be entered here.[14]

Second, as discussed at the July 20 Hearing, the Trustee submits that any Defendants permitted to depose Mr. Madoff should be required to select lead counsel to represent their collective interests at the deposition.  The Court has recognized the Trustee's concerns that permitting multiple counsel to attend the deposition would create a logistical burden for all parties involved—including the correctional facility—and would also risk making the deposition more chaotic than productive.  Rather, the Court and the parties to any deposition can establish a procedure to make the transcript available after a review period.

---

[14] *See* Dkt. No. 13060 (Order Authorizing The Deposition Of Bernard L. Madoff With Certain Limitations).

## CONCLUSION

The Trustee respectfully requests that the Court deny, or limit, the Requests as set forth above.  In the alternative, if the Requests are granted, the Trustee respectfully requests that this Court order that: (i) Madoff shall receive an instruction that the scope of his testimony shall be limited to the topics approved by the Court; (ii) any questioning shall be limited to the topics approved by the Court; (iii) the transcript from the deposition shall not be used or disclosed in any manner until reviewed and, if necessary, redactions are made to improper questions, including questions or testimony about topics not approved by the Court; (iv) use of the deposition transcript shall be limited to the specific topics approved by the Court and shall be used only in those proceedings where the Court authorizes the deposition under these procedures; and (v) lead counsel for the Defendants permitted to depose Madoff be selected to represent the Defendants' collective interests.  Additionally, should the Court grant the Requests, the Trustee reserves his right to attend the deposition and cross-examine Madoff, and requests that he be able to take any subsequent discovery necessary to rebut the testimony of Madoff.

Dated: New York, New York
       August 19, 2016

Respectfully submitted,


BAKER & HOSTETLER LLP


By:   */s/ Keith R. Murphy*
     David J. Sheehan
     Email:  dsheehan@bakerlaw.com
     Keith R. Murphy
     kmurphy@bakerlaw.com
     Regina Griffin
     Email:  rgriffin@bakerlaw.com
     Stacey A. Bell
     Email:  sbell@bakerlaw.com
     Melissa L. Kosack
     Email:  mkosack@bakerlaw.com
     45 Rockefeller Plaza
     14th Floor
     New York, NY 10111
     Telephone: (212) 589-4200
     Facsimile: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee for the SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Substantively Consolidated and the Estate of Bernard L. Madoff*

11