**Baker & Hostetler LLP**

45 Rockefeller Plaza
New York, NY 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan

*Attorneys for Irving H. Picard, Trustee*
*for the Substantively Consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities LLC*
*and the estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | No. 08-01789 (SMB) |
| Plaintiff-Applicant, | |
| v. | SIPA LIQUIDATION |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | (Substantively Consolidated) |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | |
| Plaintiff, | Adv. Pro. No. 10-05421 (SMB) |
| v. | |
| FRANK J. AVELLINO, et al., | |
| Defendants. | |

**TRUSTEE'S MEMORANDUM OF LAW IN SUPPORT OF HIS**
**MOTION TO REARGUE THE COURT'S ORDER**
**GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ............................................................................1

PROCEDURAL HISTORY...............................................................................3

ARGUMENT .................................................................................................4

    I.     Standards Governing Motions to Reargue .................................................4

    II.    Under the Governing SIPA Provisions, the SIPA Debtor Is Madoff's
           SIPC Member Broker-Dealer Business Regardless of Its Form.............................5

    III.   The Court Overlooked the Effect of the *Nunc Pro Tunc* Substantive
           Consolidation Order.............................................................9

          A.    The *Nunc Pro Tunc* Substantive Consolidation Order Joined
                Madoff as a SIPA Debtor with BLMIS and Retroactively
                Authorized the SIPA Trustee to Recover Fraudulent Transfers
                of Customer Property Made by Both BLMIS and Madoff.........................9

          B.    The Court Did Not Give Effect to the Substantive Consolidation
                Order's Express Language Authorizing the SIPA Trustee to
                Pursue Fraudulent Transfers of Customer Property Made by
                Both BLMIS and Madoff........................................................12

    IV.   Reargument Is Warranted to Prevent the Inequitable Treatment of the
           Consolidated Estate's Customers...........................................15

CONCLUSION ..............................................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Anglo Am. Ins. Grp., P.L.C. v. CalFed Inc.*,
    940 F. Supp. 554 (S.D.N.Y. 1996) ............................................................................4

*Anwar v. Fairfield Greenwich Ltd.*,
    745 F. Supp. 2d 379 (S.D.N.Y. 2010) ........................................................................4

*In re Asia Global Crossing, Ltd.*,
    332 B.R. 520 (Bankr. S.D.N.Y. 2005) ........................................................................4

*In re Best Payphones, Inc.*,
    No. 01-15472 (SMB), 2007 WL 203980 (Bankr. S.D.N.Y. Jan. 24, 2007) .............4

*In re Bonham*,
    229 F.3d 750 (9th Cir. 2000) ...............................................................12, 13, 15, 16

*Calderon v. City of New York*,
    No. 14 Civ. 1082 (PAE), 2015 WL 6143711 (S.D.N.Y. Oct. 19, 2015) ..................4

*Enron Corp. v. J.P. Morgan Sec. Inc.* (*In re Enron Corp.*),
    356 B.R. 343 (Bankr. S.D.N.Y. 2006) ........................................................................4

*In re Owens Corning*,
    419 F.3d 195 (3d Cir. 2005) .....................................................................................10

*In re Parkway Calabasas Ltd.*,
    89 B.R. 832 (Bankr. C.D. Cal. 1988) .......................................................................10

*Picard v. Avellino et al.* (*In re Bernard L. Madoff Inv. Sec. LLC*),
    Adv. Pro. No. 10-05421, 2016 WL 4040799 (SMB) (Bankr. S.D.N.Y. July 21,
    2016) ................................................................................................................. *passim*

*Randall's Island Family Golf Ctrs. v. Acushnet Co.* (*In re Randall's Island Family
    Golf Ctrs., Inc.*), 290 B.R. 55 (Bankr. S.D.N.Y. 2003) ............................................4

*Sec. Inv'r Prot. Corp v. Barbour*,
    421 U.S. 412 (1975) ..................................................................................................15

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec., LLC*,
    522 B.R. 41 (Bankr. S.D.N.Y. 2014) .....................................................................6, 7

*Soviero v. Franklin Nat'l Bank of Long Island*,
    328 F.2d 446 (2d Cir.1964) .......................................................................................16

*U.S. Fid. & Guar. Co. v. Frosty Bites, Inc.*,
    350 F. Supp. 2d 508 (S.D.N.Y. 2004) ........................................................................4

**TABLE OF CONTENTS CONTINUED**

**Page**

**Statutes**

11 U.S.C. § 101 ............................................................................................................5

11 U.S.C. § 105(a) .......................................................................................................9

11 U.S.C. § 544(b) ....................................................................................................12

11 U.S.C. § 548 .........................................................................................................12

15 U.S.C. §§ 78aaa-*lll* .................................................................................................1

15 U.S.C. § 78ccc(a)(2) .......................................................................................5, 6, 7

15 U.S.C. § 78eee .............................................................................................5, 6, 8, 9

15 U.S.C. § 78fff-2(c)(3) ..................................................................................... *passim*

15 U.S.C. § 78fff(b) .....................................................................................................5

15 U.S.C. § 78*lll* ...................................................................................................5, 6, 7

15 U.S.C. § 78o(b) ....................................................................................................5, 6

**Rules and Regulations**

17 C.F.R. § 240.15b1-3 ............................................................................................7, 8

Fed. R. Civ. P. 59(e) ...................................................................................................4

Local Bankr. R. 9023-1 ............................................................................................1, 4

Local Rule 6.3 of the S.D.N.Y ....................................................................................4

Irving H. Picard (the "Trustee" or "SIPA Trustee"), as trustee for the substantively

consolidated liquidation of the business of Bernard L. Madoff Investment Securities LLC

("BLMIS") and the estate of Bernard L. Madoff ("Madoff"), under the Securities Investor

Protection Act ("SIPA"),[1] 15 U.S.C. §§ 78aaa-*lll*, by and through his undersigned counsel,

respectfully moves this Court in accordance with the Stipulation and Order dated August 18,

2016 (ECF No. 122), and submits this Memorandum of Law in Support of his Motion to Reargue

the Court's Order Granting in Part and Denying in Part Motion to Dismiss pursuant to Local

Bankruptcy Rule 9023-1(a) ("Motion to Reargue").

## PRELIMINARY STATEMENT

The Trustee respectfully submits that the Court overlooked controlling law and material

facts when concluding that the SIPA Trustee cannot recover fraudulent transfers of customer

property made to defendants in this adversary proceeding prior to January 1, 2001, when Madoff

perpetrated his Ponzi scheme through his broker-dealer business nominally organized in the form

of a sole proprietorship.

First, although SIPA governs in this liquidation proceeding, the Court applied

Bankruptcy Code concepts regarding "debtors" to determine that the District Court's protective

decree commencing this SIPA liquidation proceeding named BLMIS, the limited liability

company, as the only SIPA debtor and did not include Madoff's business when it was organized

as a sole proprietorship.  Under the express provisions of SIPA, however, the "debtor" in this

SIPA liquidation proceeding is defined solely by the broker-dealer "member" of the Securities

Investor Protection Corporation ("SIPC"); the form of that "member's" business is irrelevant.

Because Madoff's broker-dealer business was always the *same continuous* registered broker-

---

[1] References to SIPA sections hereinafter shall replace "15 U.S.C." with "SIPA."

dealer member of SIPC, the "debtor" in this SIPA liquidation proceeding includes Madoff's business *both* when it was organized as a sole proprietorship and when it was organized as a limited liability company.  Accordingly, the SIPA Trustee has the express authority under SIPA § 78fff-2(c)(3) to recover customer property fraudulently transferred by that SIPC member.

Second, even if the Court continues to find that the "debtor" named in the District Court's original protective decree does not include Madoff's business when it was organized as a sole proprietorship, the Court overlooked the *nunc pro tunc* effect and express language of this Court's Substantive Consolidation Order.[2]  That Order, in effect, retroactively merged Madoff as a debtor into the confines of this SIPA liquidation proceeding, and gave the SIPA Trustee the express authority—under SIPA and the Substantive Consolidation Order—to recover fraudulent transfers of customer property made by both conjoined debtors: BLMIS and Madoff.

Further, contrary to the express language of the Substantive Consolidation Order, the Court treated the consolidated estate of BLMIS and Madoff as two distinct estates and confined the authority of the SIPA Trustee and the Chapter 7 Trustee to their original estates.  But under the express language of the Substantive Consolidation Order, the SIPA Trustee is authorized to recover fraudulent transfers of customer property made by both debtors, BLMIS *and* Madoff.

Finally, granting the Motion to Reargue prevents the manifest injustice that would otherwise result.  As set forth below, the effect of the Court's decision limits the amount of customer property available to those customers who have not yet recovered the full amount of their net equity losses.  Further, it results in disparate treatment of the consolidated estate's customers, and gives legitimacy to the very corporate forms that the Court previously found

---

[2] Consent Order Substantively Consolidating the Estate of Bernard L. Madoff into the SIPA Proceeding of Bernard L. Madoff Investment Securities LLC, *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec., LLC*, No. 08-01789 (SMB) (Bankr. S.D.N.Y. June 10, 2009), ECF No. 252 (the "Substantive Consolidation Order").

Madoff abused and disregarded in order to further his Ponzi scheme. These results are contrary to the very purpose of substantive consolidation, which is to promote fairness to all customers, and the overarching aim of SIPA, which is to protect customers.

## PROCEDURAL HISTORY

On January 28, 2015, numerous defendants in the above-referenced adversary proceeding filed a motion (Defs.' Mot. Dismiss, ECF Nos. 88, 89, 90) to dismiss (the "Motion to Dismiss") all claims asserted against them in the Amended Complaint, filed on November, 24, 2014 (Am. Compl., ECF No. 86). The motion was fully briefed on June 22, 2015. (Defs.' Reply Mem. Supp. Mot. Dismiss, ECF No. 101).

On July 29, 2015, the Court conducted a hearing on the Motion to Dismiss at which time the Court requested that the parties submit supplemental memoranda on the issue of whether the Trustee may recover fraudulent transfers made by BLMIS prior to its change in corporate form in 2001 from a sole proprietorship to a limited liability company. (Hr'g Tr., ECF No. 106). On August 12, 2015, the Trustee, SIPC, and certain defendants filed letters to the Court on the issue. (ECF Nos. 102, 103 and 104, respectively).

The Court entered its Memorandum Decision Granting in Part and Denying in Part the Motion to Dismiss on July 21, 2016, finding (among other things) that "all avoidance and related liability claims arising from initial transfers that occurred prior to January 1, 2001, including subsequent transfer and general partner claims, are dismissed, and the motion is otherwise denied." *Picard v. Avellino* (*In re Bernard L. Madoff Inv. Sec. LLC*), Adv. Pro. No. 10-05421, 2016 WL 4040799 (SMB), at *1 (Bankr. S.D.N.Y. July 21, 2016) (the "July 21 Decision"). The Court entered its Order on August 5, 2016, which incorporates the July 21 Decision (Mot. Dismiss Order, ECF No. 117) (the "August 5 Order")).

3

## ARGUMENT

### I.    Standards Governing Motions to Reargue

Local Bankruptcy Rule 9023-1 governs motions to reargue or reconsider prior orders.[3]  A movant must show that the "court overlooked controlling decisions or factual matters 'that might materially have influenced its earlier decision.'"  *In re Asia Global Crossing, Ltd.*, 332 B.R. 520, 524 (Bankr. S.D.N.Y. 2005) (Bernstein, J.) (quoting *Anglo Am. Ins. Grp., P.L.C. v. CalFed Inc.*, 940 F. Supp. 554, 557 (S.D.N.Y. 1996)); *see Calderon v. City of New York*, No. 14 Civ. 1082 (PAE), 2015 WL 6143711, at *4 (S.D.N.Y. Oct. 19, 2015) (granting motion for reconsideration where the court overlooked controlling law and allegations in the complaint); *In re Best Payphones, Inc.*, No. 01-15472 (SMB), 2007 WL 203980, at *7-8 (Bankr. S.D.N.Y. Jan. 24, 2007) (Bernstein, J.) (granting in part motion for reconsideration and partially modifying order); *U.S. Fid. & Guar. Co. v. Frosty Bites, Inc.*, 350 F. Supp. 2d 508, 512 (S.D.N.Y. 2004) (granting motion for reconsideration and vacating prior order where the court overlooked controlling law).

Alternately, "the movant must demonstrate the need to correct a clear error or prevent manifest injustice."  *In re Asia Global Crossing*, 332 B.R. at 524 (citation omitted); *see Anwar v. Fairfield Greenwich Ltd.*, 745 F. Supp. 2d 379, 382-84 (S.D.N.Y. 2010) (granting motion for reconsideration to "prevent manifest injustice").  "[M]anifest injustice" exists where there is "some presence of unfairness as a result of courts' original rulings."  *Enron Corp. v. J.P. Morgan Sec. Inc. (In re Enron Corp.)*, 356 B.R. 343, 363 (Bankr. S.D.N.Y. 2006).

---

[3] Motions for reconsideration under Local Bankruptcy Rule 9023-1 impose the same standard as motions to reconsider under Local Rule 6.3 of the S.D.N.Y. and motions to alter or modify judgments under Federal Rule of Civil Procedure 59(e).  *See, e.g.*, *Randall's Island Family Golf Ctrs. v. Acushnet Co. (In re Randall's Island Family Golf Ctrs., Inc.)*, 290 B.R. 55, 61 n.4 (Bankr. S.D.N.Y. 2003) (Bernstein, J.).

## II.    Under the Governing SIPA Provisions, the SIPA Debtor Is Madoff's SIPC Member Broker-Dealer Business Regardless of Its Form

Under SIPA, the broker-dealer business member of SIPC determines the debtor in this SIPA liquidation proceeding, not the corporate form of that business.  The Trustee respectfully submits that the Court applied Bankruptcy Code concepts regarding "debtors" instead of applying the express provisions of SIPA, which govern here.[4]  In doing so, the Court erroneously concluded that the SIPA Trustee was only authorized to pursue customer property fraudulently transferred by Madoff's business after January 1, 2001, because "[t]he SIPA *debtor* was BLMIS, the limited liability company, and not Madoff's sole proprietorship, an entity that had no legal existence separate from Madoff."  July 21 Decision, 2016 WL 4040799, at *11 (emphasis added).

The SIPA provisions concerning "debtors" unlike those of the Bankruptcy Code, are not concerned with what particular business form the broker-dealer member may have had at any particular time.[5]  SIPA §§ 78*lll*(5), 78ccc(a)(2)(A).  Under SIPA, it is the broker-dealer member of SIPC that is the "debtor."  *Id*.  And the "debtor" in a SIPA liquidation proceeding is "a *member of SIPC* with respect to whom an application for a protective decree has been filed under section 78eee(a)(3) of this title."[6]  SIPA § 78*lll*(5) (emphasis added); (*see* Fokas Ltr. at 2-3, Aug. 12, 2015 (the "Trustee's Letter"), ECF No. 102 (citing SIPA §§ 78*lll*(5), 78ccc(a)(2)(A)).  Furthermore, a "'protective decree' means a decree, issued by a court upon application of SIPC

---

[4] In SIPA liquidation proceedings such as this, SIPA governs and the provisions of the Bankruptcy Code control only "[t]o the extent consistent with the provisions of" SIPA.  SIPA § 78fff(b).

[5] SIPA's express provisions concerning liquidation proceedings of a "debtor" are very different from the Bankruptcy Code's provisions, which expressly define a "debtor" to be a person or a particular business form.  *See* Bankruptcy Code, 11 U.S.C § 101(13), (41), which provides that a *person* who may be a debtor includes individuals, partnerships or corporations.

[6] SIPC "members" are defined under SIPA as all "persons registered as brokers or dealers under section 78o(b) of this title . . . ."  SIPA § 78ccc(a)(2).  "The term 'persons registered as brokers or dealers' includes any person who is a member of a national securities exchange other than a government securities dealer . . . ."  SIPA § 78*lll*(12).

under section 78eee(a)(3) of this title, that the customers of a *member* of SIPC are in need of the

protection provided under this chapter." SIPA § 78*lll*(13) (emphasis added). Also, when a court

issues a protective decree, it "shall forthwith appoint, as trustee for the liquidation of the *business*

of the debtor and as attorney for the trustee, such persons as SIPC, in its sole discretion,

specifies." SIPA § 78eee(b)(3) (emphasis added).

Here, the SIPC *member* that is the debtor in this proceeding is Madoff's business—be it

the sole proprietorship or BLMIS. BLMIS was at all relevant times only one registered broker-

dealer "member" of SIPC[7] and the business always had the *same* SEC Registrant Number 8-

8132.[8] It was this "member" for which SIPC filed an application for a protective decree. In

2001, when Madoff changed the form of his business through which he perpetrated his Ponzi

scheme, he simply *amended* the broker-dealer registration form with the SEC, changing the

name but continuing with the *same* broker-dealer number and the *same* SIPC member status—

rather than terminating his registration with the SEC and with SIPC, and applying as a new

---

[7] The Court previously explained:

> Madoff has always been a member of SIPC, and the incorporation of BLMIS as a limited
> liability company continued his business without change. As of January 19, 1960,
> Bernard L. Madoff, a sole proprietorship, later known as BLMIS, was registered as a
> broker-dealer with the SEC. (*See Bell Declaration*, Ex. A.) On December 30, 1970, when
> SIPA was enacted, he automatically became a member of SIPC. *See* SIPA §
> 78ccc(a)(2)(A) (stating that all brokers or dealers registered under 15 U.S.C. § 78o(b) are
> required to be SIPC members). The Form BD–Amendment filed on January 12, 2001,
> stated that "[e]ffective January 1, 2001, predecessor will transfer to successor all of
> predecessor's assets and liabilities related to the predecessor's business. The transfer will
> not result in any change in ownership or control." (*Bell Declaration*, Ex. B at 9–10.) In
> addition, the amendment checked a "yes" box in answer to a question asking whether the
> applicant is "succeeding to the business of a currently registered broker-dealer." (*Bell
> Declaration*, Ex. B at 5.) Thus, nothing has changed since 1960 except for the business
> form that Madoff used to conduct his Ponzi scheme.

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec., LLC* (Inter-Account Transfer Decision), 522 B.R. 41, 60
(Bankr. S.D.N.Y. 2014) (alteration in original).

[8] July 21 Decision, 2016 WL 4040799, at *11 n.14 ("BLMIS succeeded to all of the assets and liabilities of
Madoff's predecessor broker-dealer business, *see* Inter-Account Transfer Decision, 522 B.R. at 60, as well as its
SEC registration number.").

broker dealer registrant.[9]  Notably, the amended broker-dealer form filed by Madoff affirmed to the SEC that there will be no "change in ownership or control" of the broker-dealer, and the legal status of the "applicant" is a "sole proprietorship"—confirming again that Madoff's broker-dealer business, whether organized as a limited liability company or a sole proprietorship, is one and the same.  (Declaration of Kevin H. Bell ("Bell Declaration"), Exs. A & B, *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec., LLC*, No. 08-01789 (SMB) (Bankr. S.D.N.Y. June 6, 2014), ECF No. 6928).[10]

While the Court did recognize that "Madoff has always been a member of SIPC, and the incorporation of BLMIS as a limited liability company continued his business without change,"[11] it is respectfully submitted that the Court overlooked the significance of the *continuous* broker-dealer registration of Madoff's business under the governing express provisions of SIPA as the sole determinant of identifying the "debtor" in these proceedings—and whether the Trustee is authorized to pursue customer property transferred by that debtor pursuant to § 78fff-2(c)(3).[12]

---

[9] *See* 17 C.F.R. § 240.15b1-3 (2016) (registration of successor to registered broker or dealer).

[10] Moreover, the amended registration form filed on BLMIS's behalf with the SEC noted that "Bernard L. Madoff [the individual] is a member of the Cincinnati Stock Exchange and is a designated market-maker on that exchange, engaged in inter-dealer market making activities."  Bell Declaration, Ex. B, at 10. As such, even after the broker-dealer business was renamed as BLMIS in 2001, Madoff himself remained "a member of a national securities exchange other than a government securities broker" and thus was a "person[]registered as [a] broker[] or dealer[]" and therefore a member of SIPC. SIPA §§ 78*lll*(12), 78ccc(a)(2).

[11] Inter-Account Transfer Decision, 522 B.R at 60.

[12] SIPA § 78fff-2(c)(3), states in relevant part:

> Whenever customer property is not sufficient to pay in full the claims set forth in subparagraphs (A) through (D) of paragraph (1), *the trustee may recover any property transferred by the debtor [that is, the broker-dealer registered member of SIPC]* which, except for such transfer, would have been customer property if and to the extent that such transfer is voidable or void under the provisions of title 11.  Such recovered property shall be treated as customer property . . . .

(emphasis added).

Moreover, the protective decree entered by the District Court specifically appointed Mr.

Picard as the SIPA Trustee over the "business" of BLMIS:

> Ordered that pursuant to 15 U.S.C. §78eee(b)(3), Irving H. Picard, Esquire is appointed trustee for the liquidation of the *business of the Defendant* with all the duties and powers of a trustee as prescribed in SIPA . . . ."

(*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec., LLC,* No. 08-civ-10791 (LLS) (S.D.N.Y.

Dec. 15, 2008), at ¶ II, ECF No. 4 ("Protective Decree") (emphasis added)).  The "business" of

BLMIS to which the SIPA Trustee was appointed as fiduciary includes the broker-dealer

business Madoff continuously operated—including its customers, assets, liabilities to customers,

*etc.*—in whatever form or name it may have taken.  For the same reasons noted above, the

"business" of BLMIS remained the same even after Madoff changed the form/name of the

broker-dealer in 2001, as Madoff represented to the SEC there was no change in ownership or

control of the business, and that it was succeeding to all assets and liabilities incurred by the

broker-dealer under its former name.  (*See* Trustee's Letter at 3; Bell Declaration, Exs. A & B;

*see also* 17 C.F.R. § 240.15b1-3).

Finally, nothing in SIPA's provisions require that a protective decree identify every name

and/or form of organization under which the broker-dealer member of SIPC formerly operated in

order to be considered as part of the *debtor* over which the Court and the SIPA Trustee have

jurisdiction and authority to liquidate.[13]

---

[13] In the July 21 Decision, the Court stated "SIPC filed an application for a protective decree against 'Bernard L. Madoff Investment Securities LLC,' and the District Court's order identifies the Defendant as 'Bernard L. Madoff Investment Securities LLC.'  The predecessor business, which was not a defendant or even mentioned in the District Court's Order, was conducted in the name of Bernard L. Madoff."  2016 WL 4040799, at *11 (citation omitted).

### III.    The Court Overlooked the Effect of the *Nunc Pro Tunc* Substantive Consolidation Order

To the extent that the Court continues to find that BLMIS, as the SIPA "debtor," does not include Madoff's business when organized as a sole proprietorship, the Trustee respectfully submits that the Court overlooked material aspects of the Court's Substantive Consolidation Order.  As set forth below, the express language and *nunc pro tunc* effect of the Substantive Consolidation Order conjoined Madoff as a SIPA debtor in this SIPA liquidation proceeding,[14] and retroactively gave the SIPA Trustee the authority to recover customer property fraudulently conveyed by *both* BLMIS and Madoff, the latter of which includes the pre-2001 fraudulent conveyances by Madoff as a sole-proprietor.

> A.    *The Nunc Pro Tunc Substantive Consolidation Order Joined Madoff as a SIPA Debtor with BLMIS and Retroactively Authorized the SIPA Trustee to Recover Fraudulent Transfers of Customer Property Made by Both BLMIS and Madoff*

The Substantive Consolidation Order entered by the Court on June 10, 2009, specifically directed that Madoff as a debtor was being consolidated with BLMIS in this SIPA liquidation proceeding, and that both debtors' estates were to be administered pursuant to SIPA:

> 3.   Pursuant to section 105(a) of the Bankruptcy Code, *the Madoff estate is substantively consolidated into the BLMIS SIPA Proceeding and the BLMIS estate*, and all assets and liabilities of the Madoff estate shall be deemed consolidated into the BLMIS SIPA Proceeding and the BLMIS estate, *which shall be administered in accordance with SIPA* and the Bankruptcy Code under the jurisdiction of this Court.

---

[14] The original Protective Decree granted by the District Court that commenced this SIPA liquidation proceeding also directed that the case be removed to this Court pursuant to SIPA § 78eee(b)(4) (Protective Decree ¶ IX).  As a result, this Court has "all of the jurisdiction, powers, and duties conferred by" SIPA on the District Court.  SIPA § 78eee(b)(4).

(Substantive Consolidation Order ¶ 3) (emphasis added).[15]  Notably, the Court granted

substantive consolidation, determining that treating the two debtors as one was "appropriate

*based upon the unity of interest between Madoff and BLMIS*, the transfer and commingling of

assets and the intertwined affairs generally between the two entities . . . [and because] the affairs

of Madoff and BLMIS are so entangled that they cannot practically be separated."  (Substantive

Consolidation Order ¶¶ L & M) (emphasis added).  Put another way, the Substantive

Consolidation Order effectively merged the two debtors, BLMIS and Madoff, in this SIPA

liquidation proceeding.[16]  (Trustee's Letter at 10).

Other provisions of the Substantive Consolidation Order confirm that Madoff was being

joined with BLMIS as a SIPA debtor.  For example, the Order directs that all further documents

relating to Madoff's individual debtor estate would no longer be filed in the Chapter 7 case, but

would now be filed in this SIPA liquidation proceeding.  (Substantive Consolidation Order ¶ 9).

The Substantive Consolidation Order further directed that for all future docket entries a new

caption be used that identifies *both* BLMIS and Madoff in this SIPA liquidation proceeding.

(Substantive Consolidation Order ¶ 10).  Significantly, the new caption removed the reference

---

[15] The very name of the Substantive Consolidation Order itself shows that the Court was merging Madoff as a debtor into the BLMIS SIPA liquidation proceeding:  "Consent Order Substantively Consolidating the Estate of Bernard L. Madoff into the SIPA Proceeding of Bernard L. Madoff Investment Securities LLC."

[16] *In re Owens Corning*, 419 F.3d 195, 205-06 (3d Cir. 2005) ("The result [of substantive consolidation] . . . is that claims of creditors against *separate debtors morph* to claims against the consolidated survivor.") (emphasis added) (citations omitted); *In re Parkway Calabasas Ltd.*, 89 B.R. 832, 836–37 (Bankr. C.D. Cal. 1988), *subsequently aff'd sub nom. In re Parkway Calabasas, Ltd.*, 949 F.2d 1058 (9th Cir. 1991) ("*In place of two or more debtors*, each with its own estate and body of creditors, *substantive consolidation substitutes a single debtor*, a single estate with a common fund of assets, and a single body of creditors.") (emphasis added).

that Madoff was a "Chapter 7" debtor and eliminated the case number for Madoff's Chapter 7

case.[17]

Most importantly, the Substantive Consolidation Order by its terms was *nunc pro tunc* to

the beginning of the liquidation proceeding.[18]  (Substantive Consolidation Order 14).  While the

Court found that the SIPA debtor specifically named as a defendant in the original Protective

Decree was BLMIS,[19] the *nunc pro tunc* granting of the Substantive Consolidation Order in

effect retroactively modified the Protective Decree to join Madoff as a defendant-debtor in this

SIPA liquidation proceeding going back to December 11, 2008 for all purposes.  As such, per the

Substantive Consolidation Order, both BLMIS and Madoff are SIPA debtors within the confines

of this SIPA liquidation and their estates are to be administered pursuant to SIPA.  In other

---

[17] When Madoff's individual chapter 7 bankruptcy proceeding was commenced, the caption read:

---------------------------------------------

| | | |
|---|---|---|
| IN RE BERNARD L. MADOFF, | : | Chapter 7 |
| | : | |
| Debtor. | : | No. 09-11893 (BRL) |

---------------------------------------------

But subsequently, pursuant to paragraph 10 of the Substantive Consolidation Order, the Court directed that the caption of the substantively consolidated estates shall be as follows:

-------------------------------------------------------

| | | |
|---|---|---|
| SECURITIES INVESTOR PROTECTION | : | |
| CORPORATION, | : | |
| Plaintiff-Applicant, | : | Adv. Pro. No. 08-01789 (BRL) |
| v. | : | |
| Bernard L. Madoff Investment | : | SIPA Liquidation |
| Securities LLC, | : | |
| Defendant. | : | (Substantively Consolidated) |

-------------------------------------------------------

| | | |
|---|---|---|
| IN RE BERNARD L. MADOFF, | : | |
| | : | |
| Debtor. | : | |

-------------------------------------------------------

[18] "The relief granted pursuant to this Order and the consolidation provided for herein shall be *nunc pro tunc* for all purposes to December 11, 2008."  Substantive Consolidation Order ¶ 14.

[19] July 21 Decision, 2016 WL 4040799, at *11-*13.

11

words, the SIPA Trustee is the "appointed trustee to liquidate the business of [both Defendants-debtors, BLMIS and Madoff] with all the duties and powers of a trustee as prescribed in SIPA."[20]

Accordingly, pursuant to SIPA § 78fff-2(c)(3), the SIPA Trustee is authorized to recover customer property fraudulently transferred by the conjoined SIPA debtors in this SIPA liquidation proceeding—BLMIS and Madoff, which includes the customer property fraudulently transferred prior to January 1, 2001, by Madoff as a sole proprietor.

> B.  *The Court Did Not Give Effect to the Substantive Consolidation Order's Express Language Authorizing the SIPA Trustee to Pursue Fraudulent Transfers of Customer Property Made by Both BLMIS and Madoff*

The Trustee respectfully submits that the Court erred when it found that, notwithstanding substantive consolidation, the two debtors—BLMIS and Madoff—and their estates remained distinct and separate, and each trustee's powers were confined to his "own" respective estate. July 21 Decision, 2016 WL 4040799, at *12. To the contrary, the Substantive Consolidation Order expressly gives the SIPA Trustee the authority to recover fraudulent transfers of customer property made by both BLMIS and Madoff.

Substantive consolidation is a broad equitable remedy that does not just merge assets and liabilities of related debtors; it can be tailored in many ways to the particular needs of the case,

---

[20] *See* Protective Decree ¶ II; *In re Bonham*, 229 F.3d 750, 767–68 (9th Cir. 2000) (holding that *nunc pro tunc* consolidation of non-debtor entities into individual chapter 7 debtor's estate for the express purpose of retroactively extending chapter 7 trustee's appointment and authority over non-debtor corporations in order to pursue fraudulent conveyances made by those entities which were mere instrumentalities of the individual debtor was entirely proper). On appeal, the Ninth Circuit concluded that "[t]he bankruptcy court did not err in substantively consolidating the estates, nor in doing so *nunc pro tunc*" and found that:

> [N]*unc pro tunc* consolidation will make it possible for Compton to pursue avoidance actions under §§ 544(b) and 548, benefitting the creditors of Bonham, WPI and APFC. Without consolidation, claimants who have received no payments from WPI and APFC will recover no funds invested in either of those entities. In short, substantive consolidation will allow a truly equitable distribution of assets by treating the corporate shells as a single economic unit.

*In re Bonham*, 229 F.3d at 763, 768.

including preserving avoidance claims of the formerly separate estates.  *In re Bonham*, 229 F.3d 750, 769 (9th Cir. 2000).  Here, that is precisely what the express language of the Substantive Consolidation Order does—it preserves the trustees' avoidance powers and provides that the SIPA Trustee is the party authorized to pursue fraudulent transfers of customer property that were made by *both* debtors—BLMIS and Madoff.  Specifically, paragraph 7 of the Substantive Consolidation Order provides that upon consolidation of Madoff and BLMIS:

> 7.  All powers, rights, claims and interests of the SIPA Trustee and the BLMIS estate are expressly preserved, including without limitation all Chapter 5 and Chapter 7 powers, rights, claims and/or interests, ***and the SIPA Trustee is authorized to pursue claims on behalf of the consolidated estate as the representative of and fiduciary for the BLMIS SIPA Proceeding*** and as subrogee and assignee of creditors' claims *for, among other things, the avoidance and recovery of transferred property.*

(Substantive Consolidation Order ¶ 7) (emphasis added).[21]

The context in which the motion for substantive consolidation was made and granted is telling.  Specifically, the Court granted substantive consolidation "to ensure the equitable treatment of all creditors of both estates" and based on its findings that the business form through which Madoff perpetrated his Ponzi scheme on his customers—whether as a sole proprietorship or a limited liability company—was in effect a mere instrumentality of Madoff himself.  (Substantive Consolidation Order ¶¶ L & M).  As such, the parties and the Court anticipated that there was the potential for overlapping claims to recover fraudulent transfers that were made by BLMIS and Madoff, and thus paragraph 7 of the Substantive Consolidation Order ensured that

---

[21] Paragraph 6 of the Substantive Consolidation Order recognizes that the SIPA Trustee could have chapter 7 trustee powers related to Madoff's estate under certain circumstances. This is further proof that the Substantive Consolidation Order did not maintain the estates of BLMIS and Madoff as separate and distinct.

13

the SIPA Trustee has the express authority to pursue such claims on behalf of *both* consolidated

debtors in this SIPA liquidation.[22]

While the Court found "[n]otwithstanding the substantive consolidation, each trustee

remained trustee of his respective estate with the powers and duties that attended his office," and

"[i]t appears that Mr. Picard [the SIPA Trustee] succeeded Mr. Nisselson [the Chapter 7 Trustee]

as the trustee of Madoff's individual estate,"[23] neither is true.  Mr. Nisselson remains as Chapter

7 Trustee. [24]  And the provisions in the Substantive Consolidation Order cited to by the Court

that preserved the Chapter 7 Trustee's avoidance powers[25] were not included to maintain any

separation between the two debtors, or to limit the SIPA Trustee's powers to the BLMIS estate

and the Chapter 7 Trustee's powers to the Chapter 7 estate.  Rather, they were necessary because

---

[22] As the Court correctly pointed out, SIPA § 78fff–2(c)(3) creates a statutory "legal fiction that confers standing on a SIPA trustee by treating customer property as though it were 'property of the debtor' in an ordinary liquidation." July 21 Decision, 2016 WL 4040799, at *12 (citations omitted).  To the extent the Court determines the debtor in the original Protective Decree did not include Madoff as a sole proprietor, once Madoff's estate was consolidated *nunc pro tunc* into this SIPA liquidation proceeding, the SIPA Trustee has standing to recover transfers of customer property made by Madoff individually.

[23] July 21 Decision, 2016 WL 4040799, at *12 n.16.

[24] The Chapter 7 Trustee remains in this SIPA proceeding and has not been succeeded by Mr. Picard.  Substantive Consolidation Order ¶ 4 ("the Chapter 7 Trustee shall remain Chapter 7 trustee of the Madoff estate. . . .").

[25] Paragraphs 4 and 6 of the Substantive Consolidation Order provide:

4.  Notwithstanding the substantive consolidation of the Madoff estate into the BLMIS SIPA Proceeding, the Chapter 7 Trustee shall remain Chapter 7 trustee of the Madoff estate and shall continue to have all powers, rights, claims and interests of a Chapter 7 trustee to bring claims under Chapters 5 and 7 of the Bankruptcy Code in consultation with the SIPA Trustee and SIPC.  Further all powers, rights, claims and interests of the Madoff estate are expressly preserved, including without limitation all Chapter 5 and Chapter 7 powers, rights, claims and/or interests.

*** 

6.  *The SIPA Trustee* shall continue to have the duties and powers of the SIPA Trustee and, in addition, he *shall have all duties and powers of a Chapter 7 trustee for the Madoff estate other than those set forth in paragraph 4* hereof.

(emphasis added).

without them, the substantive consolidation of two debtors' estates could have extinguished both trustees' avoidance powers altogether.[26]

For the foregoing reasons, the Trustee respectfully requests that the Court reconsider its decision and find that Mr. Picard is the authorized SIPA Trustee for the liquidation of the business of both BLMIS and Madoff with the express authority under SIPA § 78fff-2(c)(3) to recover customer property fraudulently conveyed by both debtors, including the customer property fraudulent conveyed by Madoff prior to 2001 when his business was organized as a sole proprietorship.

## IV.    Reargument Is Warranted to Prevent the Inequitable Treatment of the Consolidated Estate's Customers

Finally, granting the Motion to Reargue prevents the manifest injustice that would otherwise result.  As set forth below, limiting the SIPA Trustee's ability to recover fraudulent transfers Madoff made as a sole proprietor will result in the disparate treatment of the consolidated estate's customers, which is directly contrary to the overarching aim of SIPA and the purpose of substantive consolidation.

SIPA's aim is to protect customers and return their customer property in the event of a SIPC-member's insolvency.[27]  Because of the nature of Madoff's Ponzi scheme, customer claims in this SIPA liquidation proceeding will only be satisfied to the extent the customer property fraudulently conveyed by Madoff can be recovered.  Reducing the amount of recoverable fraudulently conveyed customer property limits SIPA's protection of customer claimants who

---

[26] *In re Bonham*, 229 F.3d at 768–69 ("Absent express preservation of the trustee's avoidance power, an order of substantive consolidation would ordinarily eliminate that power.")

[27] *Sec. Inv'r Prot. Corp v. Barbour*, 421 U.S. 412, 421 (1975) ("Congress' primary purpose in enacting the SIPA and creating the SIPC was, of course, the protection of investors.").

have not yet recovered their full net equity losses. Such an unfair result is due to the mere happenstance of if, and particularly when, Madoff nominally changed his business form.

Similarly, foreclosing the SIPA Trustee from recovering the fraudulent transfers made by Madoff as a sole proprietor leads to disparate treatment of customers, which is contrary to the purpose of substantive consolidation: "fairness to all creditors." *In re Bonham*, 229 F.3d at 765 (citations omitted). Customers who are "net losers" may never recover all of their losses but, at the same time, customers who received fraudulent transfers from Madoff *before* 2001 while he was organized as a sole proprietor will keep those transfers, even if they are "net winners" of fictitious profits—and *even if* they have actual knowledge of fraud at BLMIS.

Respectfully, these unfair results give credence to corporate forms that this Court—in granting substantive consolidation—previously found Madoff himself had abused and utterly disregarded in order to perpetrate the massive fraud against his customers.[28] (Substantive Consolidation Order ¶¶ L & M). Moreover, Madoff's nominal change in corporate form should not—and does not—foreclose the Trustee's authority to avoid fraudulent transfers under SIPA. Whether the change in the corporate form was planned or fortuitous, the transfers of customer property made by Madoff's broker-dealer business when it was in the form of a sole proprietorship were no less fraudulent than the transfers he made when the broker-dealer business was organized as a limited liability company.

---

[28] *Soviero v. Franklin Nat'l Bank of Long Island*, 328 F.2d 446, 448-49 (2d Cir.1964) (approving substantive consolidation of non-debtor assets into debtors' estate, where non-debtors "were but instrumentalities of the bankrupt with no separate existence of their own" and "there existed a unity of interest and ownership common to all corporations," finding that "to adhere to the separate corporate entities theory would result in an injustice to the bankrupt's creditors").

16

## CONCLUSION

For the reasons set forth above, the Trustee respectfully requests that the Court grant the

Trustee's Motion to Reargue.


Date:  August 19, 2016
       New York, New York

By: */s/ David J. Sheehan*

**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Email: dsheehan@bakerlaw.com
Jimmy Fokas
Email: jfokas@bakerlaw.com
Kathryn M. Zunno
Email: kzunno@bakerlaw.com
Regina L. Griffin
Email: rgriffin@bakerlaw.com
Esterina Giuliani
Email: egiuliani@bakerlaw.com


*Attorneys for Irving H. Picard, Trustee for the
Substantively Consolidated SIPA Liquidation
of Bernard L. Madoff Investment Securities
LLC and the estate of Bernard L. Madoff*