| | |
|---|---|
| **Baker & Hostetler LLP** | Hearing Date: September 28, 2016 at 10:00 a.m. |
| 45 Rockefeller Plaza | Objections Due: September 21, 2016 at 5:00 p.m. |
| New York, NY 10111 | |
| Telephone: (212) 589-4200 | |
| Facsimile: (212) 589-4201 | |
| David J. Sheehan | |
| Fernando A. Bohorquez, Jr. | |
| Keith R. Murphy | |
| David W. Rice | |

*Attorneys for Irving H. Picard, Trustee*
*for the Substantively Consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities LLC*
*and the Estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | |
| Plaintiff-Applicant, | |
| v. | Adv. Pro. No. 08-01789 (SMB) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | SIPA LIQUIDATION |
| Defendant. | (Substantively Consolidated) |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | |
| Plaintiff, | Adv. Pro. No. 10-04215 (SMB) |
| v. | |
| ANNETTE BONGIORNO and RUDY BONGIORNO, | |
| Defendants. | |

**MOTION FOR ENTRY OF AN ORDER PURSUANT TO SECTION 105(a) OF THE BANKRUPTCY CODE AND RULES 2002 AND 9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE APPROVING A SETTLEMENT AGREEMENT BY AND AMONG THE TRUSTEE, ANNETTE BONGIORNO AND RUDY BONGIORNO**

TO:   THE HONORABLE STUART M. BERNSTEIN
      UNITED STATES BANKRUPTCY JUDGE

Irving H. Picard (the "Trustee"), as trustee for the liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa-*lll* ("SIPA"), and the substantively consolidated Chapter 7 estate of Bernard L. Madoff ("Madoff," and together with BLMIS, collectively, the "Debtors"), by and through his undersigned counsel, submits this motion (the "Motion") seeking entry of an order (the "Approval Order"), pursuant to section 105(a) of the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq.* (the "Bankruptcy Code"), and Rules 2002 and 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), approving a settlement, the terms and conditions of which are set forth in an agreement (the "Agreement")[1] by and among the Trustee on the one hand, and Annette Bongiorno ("Ms. Bongiorno") and Rudy Bongiorno ("Mr. Bongiorno") (collectively, "Transferees"), on the other hand. In support of the Motion, the Trustee represents as follows:

**PRELIMINARY STATEMENT**

The Trustee commenced an action against the Transferees in Adversary Proceeding No. 10-04215 to recover allegedly avoidable transfers made by BLMIS to the Transferees regarding BLMIS Account Nos. 101825, 1A0040, 1B0048, 1B0049, 1B0050, 1B0216, and 1RU014 (collectively, the "BLMIS Accounts").

---

[1] The form of Agreement is attached hereto as Exhibit "A."

2

As a result of extensive settlement negotiations among the Parties, the Parties entered into the Agreement, which represents a good faith, complete settlement of all disputes raised in this adversary proceeding between the Trustee and the Defendants. Under the Agreement, the Transferees will pay the Trustee a total of $3,931,878 (the "Settlement Payment"). The Agreement will benefit the fund of customer property, as the Settlement Payment will increase the funds available for distribution to BLMIS customers with allowed claims.

The Trustee respectfully requests that the Court approve this settlement.

## BACKGROUND

*The Commencement of the BLMIS Liquidation Proceeding*

1.  On December 11, 2008 (the "Filing Date"),[2] the Securities and Exchange Commission (the "Commission") filed a complaint in the United States District Court for the Southern District of New York (the "District Court") against the Debtors (Case No. 08 CV 10791). In the complaint, the Commission alleged that the Debtors engaged in fraud through the investment adviser activities of BLMIS.

2.  On December 15, 2008, pursuant to section 78eee(a)(4)(A) of SIPA, the Commission consented to a combination of its own action with an application of the Securities Investor Protection Corporation ("SIPC"). Thereafter, pursuant to section 78eee(a)(3) of SIPA, SIPC filed an application in the District Court alleging, *inter alia*, that BLMIS was not able to meet its obligations to securities customers as they came due and, accordingly, its customers needed the protection afforded by SIPA.

---

[2] In this case, the Filing Date is the date on which the Commission commenced its suit against BLMIS, December 11, 2008, and a receiver was appointed for BLMIS. *See* section 78*lll*(7)(B) of SIPA.

4. On that date, the District Court entered the Protective Decree, to which BLMIS consented, which, in pertinent part:

(i) appointed the Trustee for the liquidation of the business of BLMIS pursuant to section 78eee(b)(3) of SIPA;

(ii) appointed Baker & Hostetler LLP as counsel to the Trustee pursuant to section 78eee(b)(3) of SIPA; and

(iii) removed the case to this Court pursuant to section 78eee(b)(4) of SIPA.

5. On April 13, 2009, an involuntary bankruptcy petition was filed against Madoff. On June 9, 2009, this Court entered an order substantively consolidating Madoff's Chapter 7 estate with the BLMIS SIPA proceeding (the "BLMIS Estate").

***The Trustee's Claims Against the Transferees***

6. On November 12, 2010, the Trustee commenced an adversary proceeding in the Bankruptcy Court against Transferees in an action captioned *Irving H. Picard, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC v. Annette Bongiorno and Rudy Bongiorno*, Adv. Pro. No. 10-04215 (SMB) (the "Adversary Proceeding").

7. In the Adversary Proceeding, the Trustee sought to avoid and recover avoidable transfers from BLMIS to the BLMIS Accounts under sections 105(a), 544, 548(a), 550(a) and 551 of the Bankruptcy Code, SIPA § 78fff-2(c)(3), the New York Fraudulent Conveyance Act (New York Debtor and Creditor Law ("NY DCL") §§ 273–279), N.Y. C.P.L.R. 203(g) and 213(8), and other applicable laws.

8. The Trustee has alleged that the Transferees are liable to the BLMIS Estate for the receipt of avoidable and recoverable transfers in the aggregate amount of Twenty-Two Million, Nine Hundred Nine Thousand, Eight Hundred Sixty-Eight United States Dollars ($22,909,868) over the lifetime of their BLMIS accounts and Ms. Bongiorno's employment with BLMIS, and

during the two year period the Trustee alleged avoidable and recoverable transfers in the aggregate amount of Four Million, Nine Hundred Forty-One Thousand, Five Hundred Twenty-One United States Dollars ($4,941,521), at least Three Million, Nine Hundred Thirty-Nine Thousand, Seven Hundred Sixty-Four United States Dollars ($3,939,764) in the form of withdrawals from Transferees' BLMIS accounts, at least Nine Hundred Ninety Thousand, Eighty-Eight United States Dollars ($990,088) in the form of salary and bonus payments made by BLMIS to Ms. Bongiorno, and at least Eleven Thousand, Six Hundred Sixty-Nine United States Dollars ($11,669) in the form of credit card charges (collectively, the "Avoidable Transfers").

9. Transferees did not file customer claims in connection with the BLMIS Accounts.

10. Transferees have disputed any liability to the BLMIS Estate for the Avoidable Transfers.

*The Forfeiture Money Judgment*

11. On July 29, 2013, Ms. Bongiorno, among others, was charged in a thirty-three-count Superseding Indictment, S10 10 CR. 228 (LTS) (the "Indictment"), with conspiracy to defraud Madoff Securities investment advisory clients, securities fraud, falsifying records of a broker dealer, falsifying records of an investment adviser, and tax evasion.

12. The Indictment included a forfeiture allegation, seeking forfeiture to the United States of all property, real and personal, that constitutes or is derived, directly or indirectly, from proceeds traceable to the commission of the offenses charged in the Indictment, including, but not limited to, a sum of money representing the amount of proceeds obtained as a result of the said offenses, to wit, approximately $170 billion, and all property traceable thereto, for which the defendants are jointly and severally liable.

13. On March 24, 2014, the jury returned a guilty verdict against Ms. Bongiorno as to the charges in the Indictment.

14. On December 9, 2014, the Honorable Laura Taylor Swain entered a Preliminary Order of Forfeiture as to Specific Property/Money Judgment (the "First Preliminary Order"), ordering a forfeiture money judgment against Ms. Bongiorno in the amount of $155,158,703,200 in United States currency, representing proceeds traceable to the commission of the offenses charged in the Indictment, and the forfeiture of certain assets of Ms. Bongiorno which were found to constitute or be derived from proceeds traceable to the commission of the offenses charged in the Indictment, provided such assets were acquired on or after January 1, 1992 with funds transferred by Madoff Securities or for the benefit of Ms. Bongiorno on or after January 1, 1992 (the "Forfeitable Property"). Ms. Bongiorno was also sentenced to a prison term of six years.

*The Amended Consent Forfeiture Order and Global Settlement*

15. Subsequent to the entry of the First Preliminary Order, the Office of the United States Attorney for the Southern District of New York (the "Government"), Transferees, and Trustee negotiated and entered into an Amended Consent Preliminary Order of Forfeiture as to Specific Property/Money Judgment (the "Amended Consent Forfeiture Order"), attached hereto as Exhibit D.

16. On June 14, 2016, the District Court entered the Amended Consent Forfeiture Order.

17. Pursuant to the Amended Consent Forfeiture Order, a money judgment in the amount of $155,158,703,200 in United States currency (the "Money Judgment") was entered

6

against Ms. Bongiorno, for which she is jointly and severally liable as to any forfeiture money judgment entered against her criminal codefendants.

18. Pursuant to the Amended Consent Forfeiture Order, Transferees consented to the forfeiture of certain assets (collectively, the "Specific Property") set forth in Amended Consent Forfeiture Order at pages 11-12, including funds held in the name of Mr. Bongiorno at E*Trade Financial Corp. (the "E*Trade Account") and Sun Trust Bank (the "Sun Trust Account") (collectively, the "Recovered Stocks") to go toward satisfaction of the Money Judgment.

19. In light of the Money Judgment and the Government's claims to Transferees' remaining assets, the Trustee and Transferees also entered into the Amended Consent Forfeiture Order to resolve claims asserted by the Trustee in the Bankruptcy Court Adversary Proceeding against the Transferees (the "Global Settlement").

20. As part of the Global Settlement, the Government has agreed to transfer to the Trustee shares of stock with a total value of Three Million, Nine Hundred Thirty One Thousand, Eight Hundred Seventy Eight United States Dollars ($3,931,878) from the E*Trade Account (the "Trustee Recovered Assets"). Pursuant to the Amended Consent Forfeiture Order, the Trustee has agreed to accept the Trustee Recovered Assets to resolve his claims against Transferees in this Adversary Proceeding to recover the Avoidable Transfers and to resolve any claims the Trustee could have asserted against the Government in any ancillary proceeding regarding the property of the Transferees.

21. Pursuant to the Amended Consent Forfeiture Order, Transferees have relinquished any claim to the Specific Property and the Trustee Recovered Assets and have agreed that they will not contest the judicial forfeiture of such property under the U.S. forfeiture laws or assist a third party in doing so; the Government has relinquished any claims to the Trustee Recovered

7

Stocks and has agreed not to seek the forfeiture of the same; and the Trustee has relinquished any claims to assets forfeited by Transferees under the Amended Consent Forfeiture Order other than the Trustee Recovered Assets.

## **SETTLEMENT DISCUSSIONS AND THE TRUSTEE'S INVESTIGATION**

22. The Parties, through their respective counsel, have engaged in extensive settlement discussions aimed at resolving the Trustee's claims. These discussions followed earlier discussions which were not successful in resolving the Trustee's claims.

23. Prior to entering into the Global Settlement and executing the Agreement, the Trustee conducted a comprehensive investigation of the funds that Transferees received from BLMIS. This investigation included, but was not limited to: the review and analysis of the BLMIS-related transactional histories as reflected in the BLMIS account statements of Transferees; correspondence and other records and documents available to the Trustee; and a substantial review of records and documents submitted by Transferees in connection with the BLMIS Criminal Trial.

24. After a review of the relevant records and a thorough and deliberate consideration of the uncertainty and risks inherent in all litigation, the Trustee, in the exercise of his business judgment, has determined that it is appropriate to reach a resolution rather than to continue the litigation.

25. Consistent with the Amended Consent Forfeiture Order, on June 14, 2016, the Parties executed the proposed Agreement attached as Exhibit A.

## OVERVIEW OF THE AGREEMENT

26. The principal terms and conditions of the Agreement are generally as follows (as stated above, the Agreement is attached as <u>Exhibit A</u> and should be reviewed for a complete account of its terms):[3]

(a) As set forth in the Agreement, the Trustee has agreed, in satisfaction of the BLMIS Estate's claims against Transferees, to accept payment by the Government of the Trustee Recovered Assets in the amount of Three Million, Nine Hundred Thirty One Thousand, Eight Hundred Seventy Eight United States Dollars ($3,931,878), pursuant to the terms of the Amended Consent Forfeiture Order.

(b) In accordance with the Amended Consent Forfeiture Order, the Government has agreed to transfer the Trustee Recovered Assets from the Recovered Stocks in the E*Trade Account to the custody of the Trustee. Transferees authorized the transfer to the Trustee of the Trustee Recovered Assets and agreed such transfer will be made for the benefit of the Trustee.

(c) Pursuant to the Agreement, Ms. Bongiorno agrees to cooperate with Trustee and SIPC in connection with any efforts to recover Customer Property. Ms. Bongiorno's cooperation shall include making herself reasonably available to assist in the Trustee's ongoing investigation of the BLMIS fraud and, among other things, to provide truthful and complete testimony by declaration, at deposition, or at trial. For example, Ms. Bongiorno recently participated in a deposition to provide testimony regarding profit withdrawal transactions at BLMIS. During the period of Ms. Bongiorno's incarceration, her counsel shall assist as necessary to make Ms. Bongiorno reasonably available to the Trustee and SIPC, and the Trustee will reimburse Ms. Bongiorno for reasonable expenses related thereto. If Ms. Bongiorno fails to cooperate, the

---

[3] Terms not otherwise defined hall have the meaning ascribed to them in the Agreement.

Agreement shall operate as a tolling agreement which allows Trustee to re-assert any and all of the avoidance claims asserted against Ms. Bongiorno in the Adversary Proceeding, within one (1) year of the date of such failure to cooperate, and Ms. Bongiorno waives any statute of limitations defense in connection with such re-asserted claims. Ms. Bongiorno's obligation to cooperate shall terminate upon the date the Liquidation Proceeding is closed pursuant to section 350 of the Bankruptcy Code or as otherwise provided by a final, non-appealable order closing the Liquidation Proceeding.

(d) The Trustee will release, acquit, and absolutely discharge the Defendants on the specific terms set forth in the Agreement.

(e) The Defendants will release, acquit, and absolutely discharge the Trustee and BLMIS and its consolidated estate on the specific terms set forth in the Agreement.

(f) As soon as practicable after this Court's approval of the Agreement, counsel for Trustee and counsel for Transferees shall respectively execute, and Trustee shall subsequently file, a Stipulation of Dismissal dismissing the Adversary Proceeding with prejudice and without costs to either Trustee or Transferees.

## RELIEF REQUESTED

27. By this Motion, the Trustee respectfully requests that the Court enter an order substantially in the form of the proposed Order attached as <u>Exhibit B</u> approving the Agreement.

## LEGAL BASIS

28. Bankruptcy Rule 9019(a) states, in pertinent part, that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Courts have held that in order to approve a settlement or compromise under Bankruptcy Rule 9019(a), a bankruptcy court should find that the compromise proposed is fair and equitable, reasonable, and

in the best interests of a debtor's estate. *In re Ionosphere Clubs, Inc.*, 156 BR 414, 426 (S.D.N.Y. 1993), *aff'd*, 17 F.3d 600 (2d Cir. 1994) (citing *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968)).

29. The Second Circuit has stated that a bankruptcy court, in determining whether to approve a compromise, should not decide the numerous questions of law and fact raised by the compromise, but rather should "canvass the issues and see whether the settlement 'fall[s] below the lowest point in the range of reasonableness.'" *Liu v. Silverman (In re Liu)*, No. 98-5027, 1998 U.S. App. LEXIS 31698, at *3 (2d Cir. Dec. 18, 1998) (quoting *In re W.T. Grant Co.*, 699 F.2d 599, 608 (2d Cir. 1983)); *see also Masonic Hall & Asylum Fund v. Official Comm. Of Unsecured Creditors (In re Refco, Inc.)*, No. 05-6006, 2006 U.S. Dist. LEXIS 85691, at *21-22 (S.D.N.Y. Nov. 16, 2006); *In re Ionosphere Clubs*, 156 B.R. at 426. The "court need not conduct a 'mini-trial' to determine the merits of the underlying litigation." *In re Purified Down Prods. Corp.*, 150 B.R. 519, 522 (S.D.N.Y. 1993).

30. In deciding whether a particular compromise falls within the "range of reasonableness," courts consider the following factors:

    a. the probability of success in the litigation;
    b. the difficulties associated with collection;
    c. the complexity of the litigation, and the attendant expense, inconvenience, and delay; and
    d. the paramount interests of the creditor (or in this case, customers).

*In re Refco, Inc.*, 2006 U.S. Dist. LEXIS 85691 at *22; *Nellis v. Shugrue*, 165 B.R. 115, 122 (S.D.N.Y. 1994) (citing *In re Drexel Burnham Lambert Grp.*, 960 F.2d 285, 292 (2d Cir. 1992), *cert. denied*, 506 U.S. 1088 (1993)).

31. The bankruptcy court may credit and consider the opinions of the trustee or debtor and their counsel in determining whether a settlement is fair and equitable. *See In re Purified*

11

*Down Prods*., 150 B.R. at 522; *In re Drexel Burnham Lambert Grp.,* 134 B.R. at 505.  Even though the court has discretion to approve settlements and must independently evaluate the reasonableness of the settlement, *In re Rosenberg*, 419 B.R. 532,536 (Bankr. E.D.N.Y. 2009), the business judgment of the trustee and his counsel should be considered in determining whether a settlement is fair and equitable.  *In re Chemtura Corp.*, 439 B.R. 561, 594 (Bankr. S.D.N.Y. 2010).  The competency and experience of counsel supporting the settlement may also be considered.  *Nellis*, 165 B.R. at 122.  Finally, the court should be mindful of the principle that "the law favors compromise."  *In re Drexel Burnham Lambert Grp.*, 134 B.R. at 505 (quoting *In re Blair*, 538 F.2d 849, 851 (9th Cir. 1976)).

32. The Agreement furthers the interests of BLMIS customers by recovering approximately all two-year BLMIS Account fraudulent transfers to Transferees in the amount of $3,931,878.  The Agreement also resolves all claims between the Parties and avoids the cost and delay of what could otherwise be lengthy and contentious litigation.  Further, the Agreement provides for Ms. Bongiorno's cooperation with the Trustee's ongoing investigation and recovery efforts. (Affidavit of the Trustee in Support of the Motion (the "Picard Affidavit")).  A true and accurate copy of the Picard Affidavit is attached as Exhibit C.

## CONCLUSION

33. In sum, the Trustee submits that the Agreement should be approved to avoid lengthy, burdensome, and expensive litigation and because it represents a fair and reasonable compromise of the Trustee's claims.   Because the Agreement is well within the "range of reasonableness" and confers a benefit on the BLMIS Estate, the Trustee respectfully requests that the Court enter an Order approving the Agreement.

## **NOTICE**

34.    In accordance with Bankruptcy Rules 2002 and 9019, notice of this Motion has been given to (a) SIPC; (b) Roland Riopelle, Sercarz & Riopelle, LLP, 810 Seventh Avenue, Suite 620, New York, NY 10019; and (c) James Druker, Kase & Druker, 1325 Franklin Avenue, Suite 225, Garden City, NY 11530.  Notice of this Motion will also be provided via email and/or U.S. Mail to all persons who have filed notices of appearance in the BLMIS proceeding and to all defendants in this adversary proceeding pursuant to the Order Establishing Notice Procedures and Limiting Notice, ECF No. 4560.  The Trustee submits that no other or further notice is required.

**WHEREFORE**, the Trustee respectfully requests entry of an Order substantially in the form of Exhibit B granting the relief requested in the Motion.

Dated: August 24, 2016
       New York, New York

Respectfully submitted,

By:   */s/ Fernando A. Bohorquez, Jr.*
**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Email:  dsheehan@bakerlaw.com
Fernando A. Bohorquez, Jr.
Email: fbohorquez@bakerlaw.com
Keith R. Murphy
Email: kmurphy@bakerlaw.com
David W. Rice
Email: drice@bakerlaw.com

*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Estate of Bernard L. Madoff*

13