# EXHIBIT A

## SETTLEMENT AGREEMENT AND RELEASE

**THIS SETTLEMENT AGREEMENT AND RELEASE** (this "Agreement") is made and entered into as of June 14, 2016, by and between Irving H. Picard, in his capacity as the Trustee ("Trustee") for the liquidation proceedings under the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa, *et seq.* ("SIPA") of Bernard L. Madoff Investment Securities LLC ("BLMIS") and the substantively consolidated Chapter 7 case of Bernard L. Madoff ("Madoff" and, collectively, the "BLMIS Estate") pending before the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), on the one hand, and Annette Bongiorno ("Ms. Bongiorno") and Rudy Bongiorno ("Mr. Bongiorno") (collectively, "Transferees"), on the other hand.  Trustee and Transferees shall be hereinafter referred to individually as a "Party" and collectively as the "Parties."

## R E C I T A L S

**WHEREAS**, BLMIS and its predecessor were registered broker-dealers with the United States Securities and Exchange Commission (the "Commission") and members of the Securities Investor Protection Corporation ("SIPC");

**WHEREAS**, on December 11, 2008, the Commission filed a complaint in the United States District Court for the Southern District of New York (the "District Court") against BLMIS and Madoff.  On December 12, 2008, the District Court entered an order which, among other things, appointed Lee S. Richards, Esq. as receiver (the "Receiver") for the assets of BLMIS (No. 08-CV-10791(LSS));

**WHEREAS**, on December 15, 2008, pursuant to section 5(a)(4)(A) of SIPA, the Commission consented to a combination of its own action with the application of SIPC. Thereafter, SIPC filed an application in the District Court under section 5(a)(3) of SIPA alleging,

*inter alia*, that BLMIS was not able to meet its obligations to securities customers as they came

due and, accordingly, its customers needed the protections afforded by SIPA.  On December 15,

2008, the District Court granted the SIPC application and entered an order under SIPA, which, in

pertinent part, appointed Irving H. Picard as the trustee for the liquidation of the business of

BLMIS under section 5(b)(3) of SIPA, removed the Receiver as the receiver for BLMIS, and

removed the case to the Bankruptcy Court under section 5(b)(4) of SIPA, where it is currently

pending as Case No. 08-01789 (SMB) ("Liquidation Proceeding").  By Order dated June 9,

2009, the Chapter 7 estate of Madoff (the "Madoff Estate") was substantively consolidated with

the estate of BLMIS;

**WHEREAS**, pursuant to section 78fff-1(a) of SIPA, Trustee has the general powers of a

bankruptcy trustee in a case under Chapter 7 of the United States Bankruptcy Code, 11 U.S.C. §§

101, *et seq.* (the "Bankruptcy Code"), as well as the powers granted pursuant to SIPA.  Chapters

1, 3, 5 and subchapters I and II of Chapter 7 of the Bankruptcy Code apply to this SIPA

proceeding to the extent consistent with SIPA;

**WHEREAS**, under SIPA, Trustee is charged with the responsibility to marshal and

liquidate the assets of BLMIS for distribution to BLMIS customers and others in accordance

with SIPA in satisfaction of allowed claims, including through the recovery of avoidable

transfers such as preference payments and fraudulent transfers made by BLMIS;

**WHEREAS,** Trustee's claims against transferees who received avoidable transfers from

BLMIS arise under SIPA, including sections 78fff(b), 78fff-1(a) and 78fff-2(c)(3), sections

105(a), 541, 544, 547, 548, 550(a) and 551 of the Bankruptcy Code, the New York Debtor and

Creditor Law § 270 et seq. (McKinney 2001) and other applicable laws;

**WHEREAS**, pursuant to an order of the Bankruptcy Court, dated December 23, 2008

(the "Claims Procedures Order", Case No. 08-01789 (SMB),[1] ECF No. 12), Trustee is authorized to enter into settlements with claimants in connection with any claims upon which there is a disagreement, provided that Trustee obtains the approval of SIPC.  Pursuant to the Claims Procedures Order, no further order of the Bankruptcy Court is necessary as long as any obligations incurred by the BLMIS Estate under the settlements are ascertainable from the books and records of BLMIS or are otherwise established to the satisfaction of Trustee;

**WHEREAS**, on November 12, 2010, Trustee commenced an adversary proceeding in the Bankruptcy Court against Transferees in an action captioned *Irving H. Picard, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC v. Annette Bongiorno and Rudy Bongiorno*, Adv. Pro. No. 10-04215 (SMB) (the "Adversary Proceeding");

**WHEREAS**, Trustee alleges that Transferees are liable to the BLMIS Estate for the receipt of avoidable and recoverable transfers in the aggregate amount of Twenty-Two Million, Nine Hundred Nine Thousand, Eight Hundred Sixty-Eight United States Dollars ($22,909,868), consisting of at least Eighteen Million, Nine Hundred Thirty-One Thousand, Four Hundred Twenty-Five United States Dollars ($18,931,425) in the form of withdrawals from Transferees' BLMIS accounts, at least Three Million, Nine Hundred Thirty-One Thousand, Eight Hundred Seventy-Eight United States Dollars ($3,931,878) in the form of salary and bonus payments made by BLMIS to Ms. Bongiorno, and at least Forty-Five Thousand, Five Hundred Sixty-Five United States Dollars ($45,565) in the form of credit card charges (collectively, the "Life-to-Date Transfers");

**WHEREAS**, Trustee alleges that Transferees are liable to the BLMIS Estate for the receipt of avoidable and recoverable transfers during the six year period, at a minimum, in the

---

[1] All ECF numbers referenced herein are applicable to Case No. 08-01789 (SMB), unless otherwise stated.

aggregate amount of Eleven Million, One Hundred Ninety-Six Thousand, Eight Hundred Twenty-Six United States Dollars ($11,196,826), at least Nine Million, Three Hundred Thirty-Seven Thousand, Six Hundred Eighty-Two United States Dollars ($9,337,682) in the form of withdrawals from Transferees' BLMIS accounts, at least One Million, Eight Hundred Twenty-Three Thousand, Two Hundred Twenty-Eight United States Dollars ($1,823,228) in the form of salary and bonus payments made by BLMIS to Ms. Bongiorno, and at least Thirty-Five Thousand, Nine Hundred Sixteen United States Dollars ($35,916) in the form of credit card charges (collectively, the "Six-Year Transfers");

WHEREAS, Trustee alleges that Transferees are liable to the BLMIS Estate for the receipt of avoidable and recoverable transfers during the two year period, at a minimum, in the aggregate amount of Four Million, Nine Hundred Forty-One Thousand, Five Hundred Twenty-One United States Dollars ($4,941,521), at least Three Million, Nine Hundred Thirty-Nine Thousand, Seven Hundred Sixty-Four United States Dollars ($3,939,764) in the form of withdrawals from Transferees' BLMIS accounts, at least Nine Hundred Ninety Thousand, Eighty-Eight United States Dollars ($990,088) in the form of salary and bonus payments made by BLMIS to Ms. Bongiorno, and at least Eleven Thousand, Six Hundred Sixty-Nine United States Dollars ($11,669) in the form of credit card charges (collectively, the "Two-Year Transfers," together with the Life-to-Date Transfers and the Six-Year Transfers, the "Avoidable Transfers");

WHEREAS, Transferees did not file claims in connection with BLMIS Account Nos. 101825, 1A0040, 1B0048, 1B0049, 1B0050, 1B0216, and 1RU014 (collectively, the "BLMIS Accounts");

**WHEREAS**, on July 29, 2013, Ms. Bongiorno, among others, was charged in a thirty-three-count Superseding Indictment, S10 10 CR. 228 (LTS) (the "Indictment"), with conspiracy to defraud Madoff Securities investment advisory clients, securities fraud, falsifying records of a broker dealer, falsifying records of an investment adviser, and tax evasion.

**WHEREAS**, the Indictment included a forfeiture allegation, seeking forfeiture to the United States of all property, real and personal, that constitutes or is derived, directly or indirectly, from proceeds traceable to the commission of the offenses charged in the Indictment, including, but not limited to, a sum of money representing the amount of proceeds obtained as a result of the said offenses, to wit, approximately $170 billion, and all property traceable thereto, for which the defendants are jointly and severally liable;

**WHEREAS**, on March 24, 2014, the jury returned a guilty verdict against Ms. Bongiorno as to the above-referenced charges of the Indictment;

**WHEREAS**, on December 9, 2014, the Honorable Laura Taylor Swain entered a Preliminary Order of Forfeiture as to Specific Property/Money Judgment (the "First Preliminary Order"), ordering a forfeiture money judgment against Ms. Bongiorno in the amount of $155,158,703,200 in United States currency, representing the proceeds obtained as a result of the offenses charged in the Indictment; and the forfeiture of certain assets of Ms. Bongiorno which were found to constitute or be derived from proceeds traceable to the commission of the offenses charged in the Indictment, provided such assets were acquired on or after January 1, 1992 with funds transferred by Madoff Securities or for the benefit of Ms. Bongiorno on or after January 1, 1992 (the "Forfeitable Property");

**WHEREAS**, the Office of the United States Attorney for the Southern District of New York (the "Government"), Transferees, and Trustee entered into an Amended Consent

Preliminary Order of Forfeiture as to Specific Property/Money Judgment (the "Consent Forfeiture Order"), dated June 14, 2016, attached hereto as Exhibit A;

**WHEREAS**, the Trustee and Transferees entered into the Consent Forfeiture Order to resolve claims asserted by the Trustee in the Bankruptcy Court Adversary Proceeding against the Transferees (the "Global Settlement");

**WHEREAS**, pursuant to the Consent Forfeiture Order, a money judgment in the amount of $155,158,703,200 in United States currency (the "Money Judgment") was entered against Ms. Bongiorno, for which she is jointly and severally liable as to any forfeiture money judgment entered against her criminal codefendants;

**WHEREAS**, pursuant to the Consent Forfeiture Order, Transferees consented to the forfeiture of certain assets (collectively, the "Specific Property") set forth in Exhibit A hereto at pages 11-12, including funds held in the name of Mr. Bongiorno at E*Trade Financial Corp. (the "E*Trade Account") and Sun Trust Bank (the "Sun Trust Account") (collectively, the "Recovered Stocks") to go toward satisfaction of the Money Judgment;

**WHEREAS**, within fourteen (14) days of entry of the Consent Forfeiture Order, the Government has agreed to transfer to the Trustee shares of stock with a total value of Three Million, Nine Hundred Thirty One Thousand, Eight Hundred Seventy Eight United States Dollars ($3,931,878) from the E*Trade Account (the "Trustee Recovered Assets");

**WHEREAS**, pursuant to the Consent Forfeiture Order, the Trustee has agreed to accept the Trustee Recovered Assets to resolve his claims against Transferees in this Adversary Proceeding to recover the Avoidable Transfers and to resolve any claims the Trustee could have asserted against the Government in any ancillary proceeding regarding the property of the Transferees;

6

**WHEREAS**, pursuant to the Consent Forfeiture Order, Transferees relinquished any claim to the Specific Property and the Trustee Recovered Assets and agreed that they will not contest the judicial forfeiture of such property under the U.S. forfeiture laws or assist a third party in doing so;

**WHEREAS**, pursuant to the Consent Forfeiture Order, the Government relinquished any claims to the Trustee Recovered Stocks and agreed not to seek the forfeiture of the same;

**WHEREAS**, pursuant to the Consent Forfeiture Order, the Trustee relinquished any claims to assets forfeited by Transferees under the Consent Forfeiture Order other than the Trustee Recovered Assets;

**WHEREAS**, the Parties desire to settle any and all claims and disputes the Parties may have against each other with respect to BLMIS, the BLMIS Accounts, and the Avoidable Transfers without the expense, delay and uncertainty of litigation;

**WHEREAS**, as soon as practicable after submission of the Consent Forfeiture Order to the District Court for approval, the Parties have agreed to seek approval of this Agreement, incorporating the terms of the Consent Forfeiture Order, by the Bankruptcy Court;

**WHEREAS**, approval of this Agreement shall be contingent upon the entry by the District Court of the Consent Forfeiture Order and approval of this Agreement by the Bankruptcy Court.

## DEFINITION

The following definition shall apply to and constitute part of this Agreement and all schedules, exhibits and annexes hereto:

"Unknown Claims" shall mean any Released Claims (as defined in Section 4 herein), that Transferees do not know or suspect to exist in their favor at the time of giving the release in this

Agreement that if known by them, might have affected their settlement and release in this Agreement.  With respect to any and all Released Claims, Transferees shall expressly waive or be deemed to have waived, the provisions, rights and benefits of California Civil Code section 1542 (to the extent it applies herein), which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

Transferees expressly waive, and shall be deemed to have waived, any and all provisions, rights and benefits conferred by any law of any state or territory of the United States, or principle of common law or foreign law, that is similar, comparable or equivalent in effect to California Civil Code section 1542.  Transferees may hereafter discover facts in addition to or different from those that they now know or believe to be true with respect to the subject matter of the Released Claims, but Transferees shall expressly have and shall be deemed to have fully, finally and forever settled and released any and all Released Claims, known or unknown, suspected or unsuspected, contingent or noncontingent, whether or not concealed or hidden, that now exist or heretofore have existed, upon any theory of law or equity now existing or coming into existence in the future, including conduct that is negligent, reckless, intentional, with or without malice, or a breach of any duty, law or rule, without regard to the subsequent discovery or existence or such different or additional facts.  Transferees acknowledge and shall be deemed to have acknowledged that the foregoing waiver was separately bargained for and a key element of the settlement of which this release is a part.

**NOW THEREFORE**, for the good and valuable consideration set forth herein, the adequacy and sufficiency of which is recognized for all purposes, the Parties agree as follows:

1.    <u>Payment of Trustee Recovered Assets to Trustee under the Global Settlement</u>.

(a)    In consideration for the covenants and agreements set forth in this Agreement and for other good and valuable consideration (including, without limitation, the release set forth in <u>Section 4</u>), the receipt and sufficiency of which is hereby acknowledged for purposes of this settlement only, the Trustee has agreed, in satisfaction of the Estate's claims against Transferees, to accept payment by the Government of the Trustee Recovered Assets in the amount of Three Million, Nine Hundred Thirty One Thousand, Eight Hundred Seventy Eight  United States Dollars ($3,931,878), pursuant to the terms of the Consent Forfeiture Order.

(b)    For the purpose of effecting the Consent Forfeiture Order, the Government has agreed to transfer the Trustee Recovered Assets from the Recovered Stocks in the E*Trade Account to the custody of the Trustee within fourteen (14) days of entry of the Consent Forfeiture Order;

(c)    Transferees have authorized the transfer to the Trustee of the Trustee Recovered Assets and have agreed such transfer will be made for the benefit of the Trustee.

2.    <u>Cooperation of Ms. Bongiorno</u>.

(a)    Ms. Bongiorno agrees to cooperate with Trustee and SIPC in connection with any efforts to recover Customer Property[2] from the principals or agents of BLMIS, the customers of BLMIS or anyone else.  Ms. Bongiorno's cooperation shall include making herself reasonably available to Trustee, his counsel, and his agents to assist in the Trustee's ongoing investigation of

---

[2] "Customer Property" shall have the same meaning as that provided under section 78lll(4) of SIPA: "cash and securities (except customer name securities delivered to the customer) at any time received, acquired, or held by or for the account of a debtor from or for the securities accounts of a customer, and the proceeds of any such property

(continued . . .)

the BLMIS fraud and, among other things, to provide truthful and complete testimony by declaration, at deposition, or at trial.

(b)    During the period of Ms. Bongiorno's incarceration, her counsel shall assist as necessary to make Ms. Bongiorno reasonably available to the Trustee and SIPC to assist in the Trustee's ongoing investigation.

(c)    If Trustee and/or SIPC request Ms. Bongiorno to travel in connection with her cooperation in any pending or future proceeding to recover Customer Property, Trustee shall reimburse Ms. Bongiorno for reasonable expenses.

(d)    Notwithstanding the release contained in <u>Section 3</u> below, in the event that Ms. Bongiorno fails to cooperate as required in this section, this Agreement shall operate as, and is, a tolling agreement which allows Trustee to re-assert any and all of the avoidance claims which Trustee asserted against Ms. Bongiorno in the Adversary Proceeding, within one (1) year of the date of such failure to cooperate notwithstanding section 546(a) of the Bankruptcy Code, and Ms. Bongiorno hereby waives, and agrees not to have the benefit of, any statute of limitations defense in connection with such re-asserted claims.

(e)    Ms. Bongiorno's obligation to cooperate, as provided in <u>Section 2(a)</u>, shall terminate upon the date the Liquidation Proceeding is closed pursuant to section 350 of the Bankruptcy Code or as otherwise provided by a final, non-appealable order closing the Liquidation Proceeding.

3.    <u>Release by Trustee</u>.

(a)    In consideration for the covenants and agreements set forth in this Agreement and for other good and valuable consideration, the receipt and sufficiency of which are hereby

---

transferred by the debtor, including property unlawfully converted."

acknowledged, except with respect to any rights arising under this Agreement, Trustee hereby

releases, remises and forever discharges only Transferees from any and all past, present or future

claims or causes of action (including any suit, petition, demand, or other claim in law, equity or

arbitration) and from any and all allegations of liability or damages (including any allegation of

duties, debts, reckonings, contracts, controversies, agreements, promises, damages,

responsibilities, covenants, or accounts) of whatever kind, nature or description, direct or

indirect, in law, equity or arbitration, absolute or contingent, in tort, contract, statutory liability or

otherwise, based on strict liability, negligence, gross negligence, fraud, breach of fiduciary duty

or otherwise (including attorneys' fees, costs or disbursements) known or unknown, that are,

have been, could have been, or might in the future be, asserted by the Trustee on behalf of

BLMIS, Madoff, and/or the consolidated BLMIS/Madoff estate, against Transferees based on,

arising out of, or relating in any way to the BLMIS Accounts or the Avoidable Transfers.

    (b)    <u>Other Limitations on Release</u>

    (i)    Trustee releases only Transferees pursuant to the terms of this Agreement

and does not release any others including, but not limited to immediate, mediate or subsequent

transferees of the Avoidable Transfers.

    (ii)    The foregoing release in Section 3(a) is made by Trustee exclusively in his

capacity as trustee for the Liquidation Proceeding and the substantively consolidated Chapter 7

case of Bernard L. Madoff, and shall not constitute a release by any other party in any other

capacity.

    (c)    Notwithstanding the foregoing release contained in <u>Section 3(a)</u>, Transferees are

not released from liability for any subsequent transfers of transfers initially made by BLMIS

and/or Madoff that Transferees may have received and that are not specified herein or that they

11

may receive after the date of this Agreement which are recoverable under SIPA, including SIPA sections 78fff(b), 78fff-1(a), and 78fff-2(c)(3), sections 105(a), 541, 544, 548, 550(a), and 551 of the Bankruptcy Code, the New York Debtor and Creditor Law § 270 et seq. (McKinney 2001) and other applicable laws.

4.    <u>Release by Transferees</u>.    Transferees, on behalf of themselves and their executors, administrators, heirs and assigns, hereby release, remise, and forever discharge: (a) Trustee; (b) all of Trustee's attorneys, professionals, agents and consultants; and (c) Madoff and BLMIS and its consolidated estate, from any and all claims or causes of action (including any suit, petition, demand, or other claim in law, equity or arbitration) and from any and all allegations of liability or damages (including any allegation of duties, debts, reckonings, contracts, controversies, agreements, promises, damages, responsibilities, covenants, or accounts) of whatever kind, nature or description, direct or indirect, in law, equity or arbitration, absolute or contingent, in tort, contract, statutory liability or otherwise, based on strict liability, negligence, gross negligence, fraud, breach of fiduciary duty or otherwise (including attorneys' fees, costs or disbursements) known or unknown (including Unknown Claims), now existing or arising in the future, arising out of or in any way related to BLMIS, Madoff, the Madoff Estate, BLMIS Accounts, or the Avoidable Transfers (the "<u>Released Claims</u>").

5.    <u>Dismissal of Adversary Proceeding</u>.    As soon as practicable after the Effective Date, counsel for Trustee and counsel for Transferees shall respectively execute, and Trustee shall subsequently file, a Stipulation of Dismissal dismissing the Adversary Proceeding with prejudice and without costs to either Trustee or Transferees.

6.    <u>Court Approval; Effective Date; Termination</u>.    This Agreement is subject to, and shall become effective and binding on the Parties upon, the District Court's entry of the Consent

Forfeiture Order and the Bankruptcy Court's approval of this Agreement in the SIPA Proceeding

by an order that is no longer subject to appeal, review, or rehearing ("Effective Date").  The

Trustee shall use his reasonable efforts to obtain approval of the Agreement in the SIPA

Proceeding as promptly as practicable after the date of this Agreement.  If this Agreement has

not become effective as provided in this paragraph within 90 days after the date of this

Agreement (or within such additional time as mutually agreed upon by the Parties), then (a) this

Agreement (other than this paragraph) shall terminate and be void; (b) all of the statements,

concessions, consents, and agreements contained in the Agreement (other than this paragraph)

shall be void; and (c) neither the Trustee nor the Defendants may use or rely on any such

statement, concession, consent, or agreement in any public statement or litigation involving the

SIPA Proceeding, or any case or proceeding relating to BLMIS, or Madoff.

7.    Representations and Warranties of Trustee.  Subject to the approval of the Bankruptcy

Court, Trustee hereby represents and warrants to Transferees that he has the full power, authority

and legal right to execute and deliver this Agreement and to perform his obligations hereunder.

8.    Representations and Warranties by Transferees

(a)    Transferees hereby represent and warrant to Trustee that: (i) he or she has the full

power, authority, legal right and capacity to execute and deliver this Agreement and to perform

his or her obligations hereunder; (ii) this Agreement has been duly executed and delivered by

each Transferee and constitutes the valid and binding agreement of each Transferee, enforceable

against each Transferee in accordance with its terms; (iii) in executing this Agreement, each

Transferee has done so with the full knowledge of any and all rights that each Transferee may

have with respect to the controversies herein compromised, and each Transferee has received or

has had the opportunity to obtain independent legal advice from his or her attorneys with regard

to the facts relating to said controversies and with respect to the rights arising out of said facts; and (iv) no other person or entity, other than those specifically identified herein, has any interest in the matters that each Transferee releases herein, and each Transferee has not assigned or transferred or purported to assign or transfer to any such third person or party all or any portion of the matters that each Transferee releases herein.

(b)    Transferees represent and warrant, to the best of his or her knowledge, information and belief, that: (1) other than the Transfers as referenced on the schedules attached as Exhibit B to the Complaint filed in the Adversary Proceeding and – with respect to Ms. Bongiorno, the salary, bonuses, commissions, employment benefits, and other forms of compensation which she received in connection with her employment at BLMIS (the "Employment Compensation") – he or she has not received any other money, funds, loans, transfers, assets, financial assistance or financial accommodation from Madoff, BLMIS or any other company or entity owned or controlled by Madoff or BLMIS; (2) he or she is not an immediate, mediate or subsequent transferee of any transfers initially made by BLMIS and/or Madoff, other than as set forth in schedules attached as Exhibit B to the Complaint filed in the Adversary Proceeding and the Employment Compensation; and (3) he or she is not aware of any other potential claims against him or her by Madoff, BLMIS or any other company or entity owned or controlled by Madoff or BLMIS.

9.    Termination of Agreements with BLMIS.    Any and all prior agreements between Transferees, or either Transferee, on the one hand, and BLMIS and/or Madoff on the other hand, are hereby terminated as of the date of this Agreement.

14

10.     <u>Further Assurances</u>.  Each Party shall execute and deliver any document or instrument reasonably requested by the other Party after the date of this Agreement to effectuate the intent of this Agreement.

11.     <u>Amendment; Waiver</u>.  This Agreement may not be terminated, amended or modified in any way except by written instrument signed by all Parties.  No waiver of any provision of this Agreement shall be deemed to constitute a waiver of any other provision hereof, whether or not similar, nor shall such waiver constitute a continuing waiver.

12.     <u>Assignment</u>.  This Agreement may not be assigned by either Party without the prior written consent of the other Party.

13.     <u>Successors</u>.  This Agreement shall be binding upon and inure to the benefit of each Party and its respective successors and permitted assigns.

14.     <u>Negotiated Agreement</u>.  This Agreement has been fully negotiated by the Parties.  Each Party acknowledges and agrees that this Agreement has been drafted jointly, and the rule that ambiguities in an agreement or contract may be construed against the drafter shall not apply in the construction or interpretation of this Agreement.

15.     <u>Counterparts; Electronic Copy of Signatures</u>.  This Agreement may be executed and delivered in any number of counterparts, each of which so executed and delivered shall be deemed to be an original and all of which shall constitute one and the same document.  Each Party may evidence its execution of this Agreement by delivery to the other Party of scanned or faxed copies of its signature, with the same effect as the delivery of an original signature.

16.     <u>Governing Law</u>.  This Agreement and any claim related directly or indirectly to this Agreement shall be governed by and construed in accordance with the laws of the State of New York (without regard to the principles of conflicts of law thereof), the Bankruptcy Code and

SIPA.  Each Party hereby waives on behalf of itself and its successors and assigns any and all

right to argue that the choice of New York law provision is or has become unreasonable in any

legal proceeding.

17.     JURISDICTION; WAIVER OF JURY TRIAL.

(a)     THE BANKRUPTCY COURT SHALL HAVE EXCLUSIVE JURISDICTION

OVER ANY AND ALL DISPUTES BETWEEN OR AMONG THE PARTIES, WHETHER IN

LAW OR EQUITY, ARISING OUT OF OR RELATING TO THIS AGREEMENT.  IN THE

EVENT THE BLMIS PROCEEDING IS CLOSED BY A FINAL DECREE AND NOT

REOPENED, THE PARTIES AGREE THAT ANY DISPUTE ARISING OUT OF THIS

AGREEMENT MAY BE BROUGHT IN THE UNITED STATES DISTRICT COURT FOR

THE SOUTHERN DISTRICT OF NEW YORK OR THE SUPREME COURT OF THE STATE

OF NEW YORK IN NEW YORK COUNTY.

(b)     EACH PARTY HEREBY IRREVOCABLY WAIVES, TO THE FULLEST

EXTENT PERMITTED BY APPLICABLE LAW, ANY AND ALL RIGHT TO TRIAL BY

JURY IN ANY LEGAL PROCEEDING ARISING OUT OF OR RELATED TO THIS

AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY.

18.     Expenses.  Each Party shall bear its respective expenses relating to or arising out of this

Agreement, including, but not limited to, fees for attorneys, accountants and other advisors.

19.     Notices.  All notices, requests, demands, consents and communications necessary or

required under this Agreement shall be in writing and shall be delivered by hand or sent by

registered or certified mail, return receipt requested, by overnight mail with confirmation, by

facsimile (receipt confirmed) or by electronic means (receipt confirmed), in each case addressed

and copied as set forth on the applicable signature page hereto.  A Party may change its address

for receiving notice by giving notice of a new address in the manner provided herein.  All such notices, requests, demands, consents and other communications shall be deemed to have been duly given or sent two (2) days following the date on which mailed, or on the date on which delivered by courier or by hand or by facsimile or electronic transmission (receipt confirmed), as the case may be, and addressed as aforesaid.

20.    No Third Party Beneficiaries.  The Parties do not intend to confer any benefit by or under this Agreement upon any person or entity other than the Parties hereto and their respective successors and permitted assigns.

21.    Captions and Rules of Construction.  The captions in this Agreement are inserted only as a matter of convenience and for reference and do not define, limit or describe the scope of this Agreement or the scope or content of any of its provisions.  Any reference in this Agreement to a section is to a section of this Agreement.  "Including" is not intended to be a limiting term.

**[Signature pages follow]**

**IN WITNESS WHEREOF**, each Party has caused this Agreement to be duly executed
and delivered as of the date set forth above.

**TRUSTEE**

**IRVING H. PICARD, THE TRUSTEE FOR THE
LIQUIDATION PROCEEDINGS OF BERNARD L.
MADOFF INVESTMENT SECURITIES LLC AND
THE SUBSTANTIVELY CONSOLIDATED
BANKRUPTCY CASE OF BERNARD L. MADOFF**

Address:
Irving H. Picard
c/o Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111
Facsimile: (212) 589-4201

By: _____
      **IRVING PICARD, TRUSTEE**

With copies to:
Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111
Attention:  Fernando A. Bohorquez, Jr.
Facsimile: (212) 589-4201

Sworn and subscribed before me this
5ᵗʰ day of July, 2016.

_____
Notary Public

[TRUSTEE SIGNATURE PAGE TO SETTLEMENT AGREEMENT]

SONYA M. GRAHAM
Notary Public, State of New York
No. 01GR6133214
Qualified in Westchester County
Commission Expires: 9/12/20__

**TRANSFEREE**

Address:                                        **ANNETTE BONGIORNO**
Annette Bongiorno
Federal Correction Institution
Coleman Medium
846 NE 54th Terrace
Sumterville, FL 33521

With copies to:
Roland Riopelle, Esq.
Sercarz & Riopelle, LLP
810 Seventh Avenue, Suite 620
New York, NY 10019

Sworn and subscribed before me this
7th day of June, 2016. July, 2016

Notary Public

ROLAND G. RIOPELLE
Notary Public, State of New York
No.02RI6115684
Qualified in New York County
Commission Expires Sept. 20, 2016

[TRANSFEREE SIGNATURE PAGE TO SETTLEMENT AGREEMENT]

**TRANSFEREE**

Address:
Rudy Bongiorno
[INSERT ADDRESS]
[INSERT ADDRESS]

         **RUDY BONGIORNO**

With copies to:
James Druker, Esq.
Kase & Druker
1325 Franklin Avenue, Suite 225
Garden City, NY 11530

Sworn and subscribed before me this
15TH day of June, 2016.

Notary Public

        JAMES O. DRUKER
    NOTARY PUBLIC, State of New York
        No. 02DR5070488
    Qualified in Westchester County
  Commission Expires Dec. 23, 2017

[TRANSFEREE SIGNATURE PAGE TO SETTLEMENT AGREEMENT]