## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | |
| Plaintiff-Applicant, | Adv. Pro. No. 08-1789 (SMB) |
| v. | SIPA LIQUIDATION |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | (Substantively Consolidated) |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC | Adv. Pro. No. 10-04995 (SMB) |
| Plaintiff, | |
| v. | |
| TRUST U/ART FOURTH O/W/O ISRAEL WILENITZ, | |
| EVELYN BEREZIN WILENITZ, individually, and as Trustee and Beneficiary of the Trust U/ART Fourth O/W/O Israel Wilenitz, and | |
| SARA SEIMS, as Trustee of the Trust U/ART Fourth O/W/O Israel Wilenitz, | |
| Defendants. | |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION (a) TO COMPEL DISCOVERY PURSUANT TO FED. R. CIV. P. 37, (b) FOR AN ORDER FINDING PLENARY WAIVER OF PRIVILEGE, AND (c) FOR AN ORDER BARRING THE TRUSTEE FROM USING AT TRIAL ANY EVIDENCE NOT PRODUCED DURING FACT DISCOVERY

**CHAITMAN LLP**
465 Park Avenue
New York, New York 10022
Phone and Fax: (888) 759-1114
Helen Davis Chaitman

Gregory M. Dexter
hchaitman@chaitmanllp.com
gdexter@chaitmanllp.com
*Attorneys for the Defendants*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................................................ iii

PRELIMINARY STATEMENT ....................................................................................... 1

STATEMENT OF FACTS AND PROCEDURAL POSTURE ...................................... 4

    I.    Defendants' Discovery Requests .......................................................... 4

THE LEGAL STANDARDS APPLICABLE TO DISCOVERY ................................... 6

    I.    Federal Rule of Civil Procedure 26 ..................................................... 6

    II.    Federal Rule of Civil Procedure 33 ..................................................... 7

    III.    Federal Rule of Civil Procedure 37 ..................................................... 7

    IV.    The Trustee's Duty to Report under the Securities Investor
    Protection Act ......................................................................................... 8

ARGUMENT ...................................................................................................................... 8

    I.    The Trustee's failure to produce a privilege log constitutes a
    plenary waiver of all privileges and work product ............................. 8

    II.    The Trustee cannot limit Defendants to micro discovery ................... 10

    III.    The Discovery Requests are not "premature" ..................................... 11

    IV.    Defendants are entitled to discovery to test the Trustee's claims
    and support their affirmative defenses ................................................. 14

        A.    The Court should compel discovery of Requests relating to
        BLMIS employees .............................................................. 15

        B.    The Court should compel discovery of Requests relating to
        errors in Madoff's books and records ................................ 16

        C.    The Court should compel discovery relating to deposits and
        withdrawals ......................................................................... 20

        D.    The Court should compel discovery of Requests relating to
        claims paid ........................................................................... 20

E.    The Court should compel discovery of Requests relating to the investment activities of Madoff's Investment Advisory customers ................................................................................. 23

F.    The Court should compel discovery relating to the Trustee's calculation of Net Equity ........................................................ 25

G.    The Court should compel discovery of the Requests relating to the Ponzi Scheme presumption ................................................. 26

V.    The Trustee should be barred from using at the time of trial any evidence not produced in discovery ................................................................... 27

CONCLUSION ................................................................................................................ 27

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Anderson v. Hodel*,
  899 F.2d 766 (9th Cir. 1990) ..............................................22

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ..............................................15

*In re Bernard L. Madoff Inv. Sec. LLC*,
  *458* B.R. 87 (Bankr. S.D.N.Y. 2011) ..............................................26

*In re Bernard L. Madoff Inv. Sec. LLC*,
  654 F.3d 229 (2d Cir. 2011) ..............................................22, 23

*In Re Bernard L. Madoff Investment Securities, LLC*,
  2016 WL 3892765 (S.D.N.Y. July 14, 2016) ..............................................11

*In re Chevron Corp.*,
  749 F. Supp. 2d 170 (S.D.N.Y.) ..............................................9

*Convolve, Inc. v. Compaq Computer Corp.*,
  223 F.R.D. 162 (S.D.N.Y. 2004) ..............................................12

*Finn v. Alliance Bank*,
  860 N.W.2d 638 (Minn. 2015) ..............................................26

*Harley v. Nesby*,
  2011 WL 6188718 (S.D.N.Y. Dec. 12, 2011) ..............................................27

*Hickman v. Taylor*,
  329 U.S. 495 (1947) ..............................................13

*Jackson v. Edwards*,
  2000 WL 782947 (S.D.N.Y. June 16, 2000) ..............................................8, 9, 11, 18

*Janvey v. The Golf Channel, Inc.*,
  2016 WL 1268188 (Tex. April 1, 2016) ..............................................26

*Kennedy v. Silas Mason Co.*,
  334 U.S. 249 (1948) ..............................................22

*Linde v. Arab Bank, PLC*,
  2012 WL 957970 (E.D.N.Y. Mar. 21, 2012) ..............................................13

*In re Lloyd Sec., Inc.*,
    183 B.R. 386 (E.D. Pa. 1995) ...............................................................15

*Mon Chong Loong Trading Co. v. Travelers Excess & Surplus Lines Co.*,
    2014 WL 5525237 (S.D.N.Y. Oct. 27, 2014) .....................................14

*Nat. Res. Def. Council, Inc. v. Fox*,
    1996 WL 497024 (S.D.N.Y. Aug. 30, 1996) ...............................19, 25

*Oppenheimer Fund, Inc. v. Sanders*,
    437 U.S. 340 (1978).................................................................................6

*Ortho Pharm. Corp. v. Cosprophar, Inc.*,
    828 F. Supp. 1114 (S.D.N.Y. 1993)......................................................17

*Phoenix Four, Inc. v. Strategic Res. Corp.*,
    2006 WL 1517583 (S.D.N.Y. June 2, 2006) ......................................19

*Rahman v. Smith & Wollensky Rest Group, Inc.*,
    2007 WL 1521117 (S.D.N.Y. May 24, 2007) .......................................9

*S.E.C. v. Yorkville Advisors, LLC*,
    300 F.R.D. 152 (S.D.N.Y. 2014) ............................................................9

*Saks Int'l, Inc. v. M/V Exp. Champion*,
    817 F.2d 1011 (2d Cir. 1987).................................................................17

*In re Savitt/Adler Litig.*,
    176 F.R.D. 44 (N.D.N.Y. 1997)............................................................18

*Strauss v. Credit Lyonnais, S.A*,
    242 F.R.D. 199 (E.D.N.Y. 2007) .........................................................13

*In re Sulfuric Acid Antitrust Litig.*,
    231 F.R.D. 351 (N.D. Ill. 2005).....................................................18, 19

*Trueman v. New York State Canal Corp.*,
    2010 WL 681341 (N.D.N.Y. Feb. 24, 2010) ........................................7

*In re Weatherford Int'l Sec. Litig.*,
    2013 WL 5788680 (S.D.N.Y. Oct. 28, 2013) .......................................7

**Statutes**

15 U.S.C. §§ 78*fff*-1(d)(3)....................................................................8, 15

## Other Authorities

Committee Note to 1970 Amendment of Rule 33(c) (predecessor to Rule 33(d)),
  48 F.R.D. 524-25 ................................................................................................................19

Fed. R. Civ. P. 1 ..........................................................................................................13, 14

Fed. R. Civ. P. 8 ................................................................................................................15

Fed. R. Civ. P. 12(f) ........................................................................................................14

Fed. R. Civ. P. 26 ...............................................................................................3, 6, 22, 23

Fed. R. Civ. P. 26(a) ..................................................................................................13, 27

Fed. R. Civ. P. 26(b)(1) ......................................................................................................6

Fed. R. Civ. P. 26(b)(5) .................................................................................................8, 9

Fed. R. Civ. P. 26(b)(6) ......................................................................................................7

Fed. R. Civ. P. 33 ...........................................................................................................6, 7

Fed. R. Civ. P. 33(a)(2) ......................................................................................................7

Fed. R. Civ. P. 33(b)(1) ......................................................................................................7

Fed. R. Civ. P. 33(b)(3) ....................................................................................................25

Fed. R. Civ. P. 33(d) ................................................................................................. *passim*

Fed. R. Civ. P. 33(d)(1) ...................................................................................16, 17, 20

Fed. R. Civ. P. 37 ...........................................................................................................6, 7

Fed. R.Civ. P. 37(a) ............................................................................................................7

Fed. R. Civ. P. 37(c)(1) ...............................................................................................13, 27

Fed. R. Evid. 402 ..............................................................................................................17

Fed. R. Evid. 803(6) .............................................................................................2, 11, 17

Fed. R. Evid. 803(6)(A)-(D) ............................................................................................11

Fed. R. Evid. 803(6)(E) ....................................................................................................11

Local Bankruptcy Rule 7033-1(b) ....................................................................................12

Local Bankruptcy Rule 7033-1(c) ....................................................................................12

Local Rule 26.2(c) ...................................................................................................9

Local Rule 33.3 ......................................................................................................20

Local Rule 33.3(c) ................................................................................................12

Wright & Miller, Federal Practice and Procedure § 2178 (3d ed.)...........................................17, 19

Trust U/Art Fourth O/W/O Israel Wilenitz, Evelyn Berezin Wilenitz, individually, and as Trustee and Beneficiary of the Trust U/ART Fourth O/W/O Israel Wilenitz, and Sara Seims, as Trustee of the Trust U/ART Fourth O/W/O Israel Wilenitz ("Defendants") respectfully submit this memorandum of law in support of their motion for an order compelling the Trustee to respond to Defendants' discovery requests, for an order finding plenary waiver of privilege and work product, and for an order barring the Trustee from using evidence not specifically produced during fact discovery at trial in cases where fact discovery is now closed (the "Motion").

## PRELIMINARY STATEMENT

The Trustee's responses to Defendants' Discovery Requests provide virtually none of the information or documents requested. The Trustee's reference to his e-data dump of approximately 16.5 million pages of documents in his "E-Data Room 1" is not an acceptable response to Defendants' Discovery Requests under the Federal Rules of Civil Procedure or this jurisdiction's Local Rules. But the Trustee's noncompliance with well-established discovery rules does not end there. The Trustee also denies discovery into relevant information by referring Defendants to E-Data Room 1 – even when the responsive documents are not contained there. The Trustee's stonewalling of discovery involves precisely the sort of tactics that the 2015 Amendments to the Federal Rules of Civil Procedure were designed to address. Deficiencies in the Trustee's Responses abound, and numerous issues must be addressed here.

For example, the Trustee objects to various Discovery Requests on the basis of privilege, yet he has not produced a privilege log. *See infra* Argument, Section I. In fact, the Trustee has gone so far as to flatly indicate in his Responses that he "will not log" privileged documents. We are unaware of any rule of law that absolves a SIPA Trustee from discovery obligations under the Federal Rules of Civil Procedure or Local Rules. By his conduct, the Trustee has waived any privileges and work product protection and must produce all responsive documents.

The Trustee objects to Defendants' Requests on insupportable grounds. For example, the Trustee argues that no Defendant can take discovery into Madoff's bookkeeping practices generally because this subject matter does not relate to any one Defendant's specific case. *See infra* Argument, Section II. This position represents the Trustee's transparent attempt to deny legitimate challenges to his use of the business records exception to the hearsay rule, Fed. R. Evid. 803(6), to introduce the records of the largest Ponzi scheme in history *– for their truth.* Defendants have an absolute right to challenge the reliability of Madoff's records, upon which the Trustee chooses to rely, and such manipulative use of the discovery process violates the Defendants' right to due process of law. Similar attempts by the Trustee to fracture this litigation and insulate himself from challenges that apply to all avoidance actions have been rejected by District Judge Pauley in other clawback matters and should be rejected here.

The Trustee makes the nonsensical objection that certain Discovery Requests are "premature" because they somehow invade the province of expert discovery or are "contention interrogatories" not permitted at this time by Local Rules, but this is incorrect. *See infra* Argument, Section III. By doing so, the Trustee is deliberately preventing Defendants from developing fact discovery even though Defendants are seeking *facts*, not expert opinions. While the Trustee is improperly relying on expert testimony because he lacks factual evidence, this does not give the Trustee grounds for deferring fact discovery. Moreover, the Trustee's position ignores the plain terms of the Avoidance Procedures Order (the "APO"), which permits substantive interrogatories to be served during fact discovery. The Trustee's objections here are just another attempt to hinder the fundamental purpose of discovery under the Federal Rules: to exchange information as inexpensively and freely as possible.

The Trustee objects to any request that would require the Trustee to do more than simply direct Defendants to the E-Data Room 1, arguing that the requests are not "proportional" to the needs of these cases. *See infra* Argument, Section IV.  In 2015, Rule 26 of the Federal Rules of Civil Procedure was amended to explicitly add, as a factor in the proportionality calculus, the parties' relative access to the requested documents.  Obviously the Trustee has exclusive access to the great mass of Madoff documents.  However, under the Federal Rules of Civil Procedure that does not allow the Trustee to block the Defendants' discovery.  On the contrary, the Trustee is simply trying to gain an undue advantage over Defendants.  This is the paradigm of a David v. Goliath case.  The Trustee and his law firm have been paid well over $1 billion in legal fees.  The Trustee often shows up in court with several attorneys who simply observe the argument made by only one of them.  And he plays every game in the book.  He is mercilessly pursuing innocent victims of Madoff's crimes, to whom he owes a fiduciary duty.  The least he could do is adhere to his discovery obligations under the Federal Rules of Civil Procedure so that, if he does prevail, he has at least done so in accordance with the law.

The Trustee's direction to search E-Data Room 1 is a perfect example.  The E-Data Room 1 is set up in such a way that Defendants cannot download documents at all.  Defendants have to make a written request to the Trustee for copies of documents and then wait up to a month to receive them.  The Trustee exercises such extensive control over E-Data Room 1 that he is apparently monitoring Defendants' activities there.  Far from being ashamed of his unprofessional practices, the Trustee brags about them. (*See* ECF No. 13902 at 3, n. 7) ("[T]here is no indication that Carole Neville or any other counsel for the Dentons Defendants has ever logged onto E- Data Room 1.").  Moreover, the text is not extracted in many of the documents, meaning keyword searches do not yield predictable or complete results.

Similarly improper, rather than answering interrogatories, the Trustee attempts to rely on Federal Rule of Civil Procedure Rule 33(d), which permits responding to interrogatories by producing business records if certain exceptions are met – **but only** if those exceptions are met. *See infra* Argument, Section IV.B. The Trustee's reliance on Rule 33(d) fails for numerous reasons, including the fact that the Trustee has not, in most cases, identified the purportedly responsive documents within the E-Data Room 1 with any sort of specificity as required by Fed. R. Civ. P. 33(d). It is reflective of the Trustee's general cruelty towards the Defendants that he argues that they should have to wade through the morass of the E-Data Room 1, without even a reference to Bates numbers, yet, with his unlimited budget and army of attorneys, he does not have to respond to Defendants' 18 Discovery Requests. Surely, this is not what the drafters of the Federal Rules of Civil Procedure had in mind when imposing a proportionality standard on discovery.

## STATEMENT OF FACTS AND PROCEDURAL POSTURE

### I.    Defendants' Discovery Requests

On March 8, 2016, the Defendants in *Picard v. Wilenitz et al.*, Adv. Pro. No. 10-04995 served their First Set of Document Requests and Interrogatories on the Trustee. (See Chaitman Decl., Exh. A). The Trustee refused to meaningfully respond to the *Wilenitz* Requests. (*See generally* Chaitman Decl., Exh. B).

After a failed meet-and-confer, on April 6, 2016, the Trustee wrote to the Court requesting permission to file a motion for a protective order with respect to the *Wilenitz* Requests. (*See* Adv. Pro. No. 10-04995, ECF No. 63). The Court held a hearing on May 17, 2016, and the Court authorized *Wilenitz* to file a motion to compel.

On June 21, 2016, Chaitman LLP served discovery requests to the Trustee on behalf of numerous defendants represented by Chaitman LLP. (*See* Chaitman Decl., Exh. C). The

Discovery Requests are substantially similar to the *Wilenitz* Requests and consist of 18 narrowly tailored requests that go to core issues in the cases. The Requests seek discovery relating to: the names, contact information, duties, and other information about employees of BLMIS (Exh. C., Nos. 1, 13, 17); the accuracy of the books and records of BLMIS (Nos. 2, 3, 5); customer withdrawals from BLMIS (No. 4); the composition of claims paid during the liquidation (Nos. 6-9); the trading activities of Madoff's investment advisory business and other factual information relevant to the use of the "Ponzi scheme presumption" in this case, as well as other information relevant to the debtor-creditor relationship between BLMIS and Defendants (Nos. 11-12, 15-18); and the Trustee's calculation of Defendants' net equity (No. 14).

All of these Requests fall within the topics that are expressly deemed discoverable under the APO. (*See* Chaitman Cert., Exh. E). Specifically, the APO contemplates discovery relating to: "(a) the calculation of net equity for the defendant's BLMIS account; (b) the financial condition of BLMIS; (c) the activities of BLMIS, including both fraudulent conduct, including the Ponzi scheme, and legitimate operations; (d) the defendant's account documents and customer correspondence and interactions with BLMIS, its records of BLMIS; (e) the internal records of BLMIS; (f) transfers of money by and among BLMIS . . . ." (*See id.* at No. 4.G.).

On August 5, 2016, the Trustee served his responses to the Discovery Requests. These responses are a textbook example of evasive discovery responses that are abusive of the discovery process. The Responses contain a host of inappropriate objections and evidence the Trustee's determination to prevent Defendants from fairly defending themselves in these cases. The Trustee maintains, for example, that he can withhold documents on the basis of unidentified privileges yet not produce a privilege log. Specifically, with respect to materials *prepared or received Post-December 11, 2008*, the Trustee asserts that he "will not produce or log Documents prepared and/or

received by him, his counsel, his professionals and/or other agents from or on after December 11, 2008 that are . . . protected by the attorney work product doctrine, the attorney-client privilege, and/or any other applicable privileges or protections . . . ." (Exh. D. at 5-6). By this response, the Trustee has waived all such privileges and work product protection.

## THE LEGAL STANDARDS APPLICABLE TO DISCOVERY

Federal Rule of Civil Procedure 26 governs the scope of discovery, Rule 33 governs interrogatories, and Rule 37 governs motion to compel discovery.

### I.        Federal Rule of Civil Procedure 26

Federal Rule of Civil Procedure 26(b)(1) outlines the scope of discovery as follows:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the burden or expenses of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). "Relevance . . . is construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351 (1978).

In 2015, Federal Rule of Civil Procedure 26 was amended to explicitly require that consideration be given to the parties' relative access to information as a component of proportionality. *See* Advisory Committee Notes to the 2015 Amendments to Fed. R. Civ. P. 26. Here, the Trustee – who owes a fiduciary duty to each Defendant – has wielded his vast wealth and resources to block discovery on virtually every issue.

## II.    Federal Rule of Civil Procedure 33

"An interrogatory may relate to any matter that may be inquired into under Rule 26(b)(6)."

Fed. R. Civ. P. 33(a)(2).   "An interrogatory is not objectionable merely because it asks for an

opinion or contention that relates to fact or the applicable of law to fact . . . ."  Fed. R. Civ. P.

33(a)(2).  "There are many purposes for interrogatories but the general aims are to expeditiously

narrow the scope of litigation, reduce the element of surprise, serve as admissions for trial, and in

a significant matter avoid unnecessary discovery and minimize the expense."  *Trueman v. New

York State Canal Corp.,* 2010 WL 681341, at *2 (N.D.N.Y. Feb. 24, 2010) (footnote omitted).

Rule 33(b)(1) requires that "[e]ach interrogatory be answered separately and fully."  Fed.

R. Civ. P. 33(b)(1).  "Answers to interrogatories that incorporate other documents by reference are

strongly disfavored."  *Trueman*, 2010 WL 681341, at *3.  "Reference to depositions, other answers

to the interrogatories, other document production, the complaint itself, or any other documents are

improper and thus unresponsive."  *Id.*   In some circumstances, a party may respond to

interrogatories by producing business records, but only if certain requirements are met.  *See* Fed.

R. Civ. P. 33(d) (outlining requirements).

## III.    Federal Rule of Civil Procedure 37

Federal Rule of Civil Procedure 37 provides that "on notice to other parties and all affected

persons, a party may move for an order compelling disclosure or discovery."  Fed. R.Civ. P. 37(a).

"Parties objecting to discovery must offer evidence showing 'specifically how, despite the broad

and liberal construction afforded the federal discovery rules, [an] interrogatory is not relevant or

how each question is overly broad, burdensome, or oppressive.'"  *In re Weatherford Int'l Sec.

Litig.*, 2013 WL 5788680, at *2 (S.D.N.Y. Oct. 28, 2013) (alteration in original) (citing cases).

"Supporting evidence can be provided in the form of affidavits, privilege logs, and other

documents 'revealing the nature of the burden.'"  *Id.* (citation omitted).  But conclusory objections

are insufficient to resist discovery.  *See Jackson v. Edwards*, 2000 WL 782947, at *3 (S.D.N.Y.

June 16, 2000).

### IV.    The Trustee's Duty to Report under the Securities Investor Protection Act

Thus, in addition to his obligations under the Federal Rules of Civil Procedure, the Trustee

bears a greater obligation of full disclosure to the Defendants because they are defrauded customers

of the Debtor and are entitled to be fully informed of how Madoff operated.  *See, e.g.*, 15 U.S.C.

§§ 78*fff*-1(d)(3) (a SIPA trustee shall "report to the court any facts ascertained by the Trustee with

respect to fraud, misconduct, mismanagement, and irregularities" of the debtor).  Because the facts

do not support the actions the Trustee has taken in this case, the Trustee has deliberately withheld

and concealed material facts about Madoff's operations.

## ARGUMENT

### I.    The Trustee's failure to produce a privilege log constitutes a plenary waiver of all privileges and work product

The Trustee objects to numerous discovery requests by asserting that he "will not produce

**or log** Documents prepared by and/or received by him, his counsel, his professionals and/or other

agents from on or after December 11, 2008" that he asserts to be privileged.  (*See* Exh. D at 5-6;

*id.*, Responses to Nos. 1, 5, 11, 12) (emphasis added).  This constitutes a waiver of the privilege.

The Federal Rules and this jurisdiction's Local Rules clearly require a privilege log to be produced

by a party withholding documents on the basis of privilege or work product.  Federal Rule of Civil

Procedure 26(b)(5) could not be any more clear:

> When a party withholds information otherwise discoverable by
> claiming that the information is privileged or subject to protection
> as trial preparation material, the party *must*: (i) expressly make the
> claim; and (ii) describe the nature of the documents,
> communications, or tangible things not produced or disclosed – and
> do so in a manner that, without revealing information itself
> privileged or protected, will enable other parties to assess the claim.

Fed. R. Civ. P. 26(b)(5) (emphasis added); *accord* Local Rule 26.2(c).

Defendants are not required to take the Trustee's privilege assertions on blind faith. Nor are they required to forfeit their opportunity to challenge the Trustee's privilege designations. *See* Local Rules 26.2(c) (outlining requirements for a valid privilege log). Defendants have a right to meaningfully challenge the Trustee's privilege designations, particularly because it is highly likely the Trustee is improperly withholding non-privileged information and documents.

The remedy for the Trustee's action is a plenary waiver. *Rahman v. Smith & Wollensky Rest Group, Inc.*, 2007 WL 1521117, at *3 (S.D.N.Y. May 24, 2007) ("It is well established that failure to provide a privilege log in a timely manner may result in waiver of objections on the basis of privilege.") (citing cases); *S.E.C. v. Yorkville Advisors, LLC*, 300 F.R.D. 152, 167 (S.D.N.Y. 2014) ("[T]he SEC's unjustified failure to serve indices of privileged documents in a timely and proper manner operates as a waiver of any applicable privilege.") (citing cases); *Jackson v. Edwards,* 2000 WL 782947, at *3 (S.D.N.Y. June 16, 2000) ("[D]fendants have not submitted any affidavits or other materials of evidentiary weight establishing the elements of any privilege. Thus, even if any applicable privilege had not been waived, defendants have failed to establish properly the existence of a privilege."); *see also In re Chevron Corp.*, 749 F. Supp. 2d 170, 185 (S.D.N.Y.) ("[T]his Court again holds – on the law, on the facts, and in the exercise of discretion – that each and every privilege claim with respect to the documents sought by the subpoenas has been waived."), *aff'd sub nom. Lago Agrio Plaintiffs v. Chevron Corp.*, 409 F. App'x 393 (2d Cir. 2010). This Court should order a plenary waiver here. Any other result would effectively tell the Trustee he "can flout the Court's Rules and incur no sanction other than an Order directing compliance with the rules." *Yorkville Advisors, LLC*, 300 F.R.D. 152, 168 (S.D.N.Y. 2014) (ordering plenary waiver against the Securities and Exchange Commission).

## II.    The Trustee cannot limit Defendants to micro discovery

In breach of both his fiduciary duty as a SIPA Trustee and his duty as a litigant, the Trustee has engaged in a campaign to make discovery as difficult and expensive as possible for Defendants. Examples abound.  To take just one, since the issues on which Defendants seek discovery are common to all of the Defendants' cases, Defendants' counsel proposed that one set of discovery requests be used in all clawback cases.  The Trustee objected, thereby forcing the Defendants to incur the expense of litigating the same issues in close to 100 cases.  Concomitantly, of course, the Trustee then was able to bill for the repetitive legal work of his army of minions.

In *Wilenitz*, for example, the Trustee argued that Wilenitz should only be permitted to see documents that relate to the *Wilenitz* accounts.  (*See* Exh. B., Response to No. 8) ("The information called for by this Interrogatory has no bearing on whether the Trustee may avoid and recover the avoidable transfers in the *Wilenitz* case.  For this reason, the Trustee will not respond to this Interrogatory and Document Request.").  In objecting to Defendants' Requests, the Trustee continues to maintain that he need not respond to requests that "call[] for information relating to claimants other than Defendants."  (*See* Exh. D, Response to No. 6).

Yet, the issues in all cases are the same and there is no basis in law for this objection.  The Trustee apparently believes that he is entitled, not only to the advantage of having an unlimited budget to fund the army of lawyers he has employed to obtain judgments against financially and emotionally devastated individuals, he also believes he is entitled to play every litigation game in the book to make it virtually impossible for Defendants to mount a meaningful defense.

Every single Defendant is entitled to discovery concerning the reliability of Madoff's records unless the Trustee wants to concede that the business records – which his own expert

opined are "permeated with fraud" – are inadmissible for any purpose.[1]  It should now be obvious

to everyone that the Trustee has protested Defendants' request to consolidate discovery because

he does not want any Defendant to be able to gain the macro viewpoint necessary to establish that

Madoff's records are inadmissible for any purpose.  *See* Fed. R. Evid. 803(6).  The Trustee cannot

make a prima facie showing that Madoff's records meet the business records exception, nor can

he sustain a challenge to their reliability.  *See* Fed. R. Evid. 803(6)(A)-(D); Fed. R. Evid. 803(6)(E)

(business records exception inapplicable if their opponent shows "that the source of information

or the method or circumstance of preparation indicate a lack of trustworthiness").

The Trustee will undoubtedly argue that he is entitled to pick and choose which parts of

Madoff's records he wants to rely upon.  But the Court cannot fairly consider that argument if it

has deprived the Defendants of full discovery as to the Trustee's knowledge of the reliability of

**all** the records.  Similarly, to the extent the Trustee suggests that Wilenitz or any other Defendant

does not have standing to challenge the Trustee's actions generally, a similar argument has been

recently rejected by District Judge William H. Pauley, III.  *See* Opinion & Order, *In Re Bernard*

*L. Madoff Investment Securities, LLC*, 2016 WL 3892765 (S.D.N.Y. July 14, 2016)  ("If the SIPA

Trustee's actions were invalidated because of his compensation arrangement, that would have a

financial impact on all defendants in the avoidance actions.  Accordingly all Appellants have a

sufficient financial interest to assert standing.").

### III.    The Discovery Requests are not "premature"

The Trustee argues that certain of Defendants' Requests are "premature."  (*See, e.g.* Exh.

D, Responses to Nos. 5, 11, 12, 14-16) ("[T]he Trustee objects to the extent this Interrogatory

---

[1] August 20, 2013 Report of Bruce G. Dubinsky at 156 ("[F]raud permeated BLMIS to the extent that the company's books and records could not be relied upon by a hypothetical buyer."); *id.* at 12 and 32, 155 ("Fraud permeated BLMIS").

prematurely seeks to have the Trustee disclose expert materials well in advance of the deadline for

disclosure of this information . . . .").  The Trustee buttresses this objection by also asserting that

certain questions are "contention interrogatories," which are premature under Local Rule 33.3(c)

according to the Trustee.  The Trustee conveniently ignores the APO which displaces the Court's

local rules and specifically permits substantive interrogatories during fact discovery.  (*See* Exh. E

at No. 4.I) ("Notwithstanding Local Bankruptcy Rule 7033-1(b), the parties are permitted to serve

substantive interrogatories at any time prior to the date which is 90 days prior to the completion of

fact discovery.").

But the Trustee refuses to answer "contention interrogatories' even in those cases where

fact discovery is closed.  *See* Local Bankruptcy Rule 7033-1(c) ("Unless the Court orders

otherwise, at the conclusion of each party's discovery, and prior to the discovery cut-off date,

interrogatories seeking the claims and contentions of the opposing party may be served."); *accord*

Local Rule 33.3(c). Thus, apparently in the Trustee's view, he should never have to respond to

contention interrogatories.  This is not the law. *Convolve, Inc. v. Compaq Computer Corp.*, 223

F.R.D. 162, 173 (S.D.N.Y. 2004) ("Convolve is fully capable of answering the interrogatories on

the basis of the discovery it has obtained.  To the extent that its answers are conditional and will

require supplementation based on additional information, so be it.").

In rejecting an argument similar to the Trustee's, one court wrote:

> One of the defendant's general objections to the interrogatories is
> that they are premature because they were served prior to the
> completion of expert discovery. . . .  Although the timing of
> contention interrogatories is often a matter of dispute, the argument
> that they are premature typically is made when such interrogatories
> are served early in the discovery process. That is not the case here.
> Discovery has been ongoing for years, and is nearing completion, at
> least on the claims that will be tried first. To the extent that the
> defendant is unable to respond fully because expert discovery may

> shed further light on matters, interrogatory responses may always be
> supplemented.

*Linde v. Arab Bank, PLC*, 2012 WL 957970, at *1 (E.D.N.Y. Mar. 21, 2012) (internal citations

omitted).

The Trustee makes the additional argument that certain Discovery Requests are

"premature" because they somehow invade the province of expert discovery. However, the

Trustee has an obligation to disclose the facts upon which he is relying. *See* Fed. R. Civ. P. 37(c)(1)

("If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the

party is not allowed to use that information or witness to supply evidence on a motion, at a hearing,

or at a trial . . ."); *Strauss v. Credit Lyonnais, S.A,*, 242 F.R.D. 199, 232 (E.D.N.Y. 2007) (parties

must disclose facts that serve as the basis for expert opinions); see *also Hickman v. Taylor,* 329

U.S. 495, 504  (1947) ("A party clearly cannot refuse to answer interrogatories on the ground that

the information sought is solely within the knowledge of his attorney."). It may be that the Trustee

is relying on expert discovery because he lacks factual evidence supporting his claims, but this

certainly is no basis for deferring his obligations to Defendants during fact discovery.

The purpose of discovery is to exchange relevant information as inexpensively and openly

as possible. As stated by the Supreme Court, "[m]utual knowledge of all the relevant facts gathered

by both parties is essential to proper litigation." *Id.* at 507. If, as the Trustee suggests, Defendants

must wait for an expert deposition to test the Trustee's claims and support their affirmative

defenses, this will increase all parties' litigation costs and needlessly delay resolution of these

matters. Also, it will prevent the Defendants from taking fact discovery because they will not

know the Trustee's position until fact discovery is closed.

Such a result is impermissible under any reading of the Federal Rules. *See* Fed. R. Civ. P.

1 (the Federal Rules of Civil Procedure "should be construed, and administered, *and employed by*

*the Court and the Parties* to secure the just, speedy, and inexpensive determination of every action

and proceeding") (emphasis added to reflect 2015 revisions).    Tactics like the Trustee's are

precisely what the 2015 Amendments to the Rules of Civil Procedure are designed to address.

Advisory Committee Notes to 2015 Amendments to Fed. R. Civ. P. 1 ("[D]iscussions of ways to

improve the administration of civil justice regularly include pleas to discourage . . . abuse of

procedural tools that increase cost and result in delay.").

### IV.    Defendants are entitled to discovery to test the Trustee's claims and support their affirmative defenses

The majority of the Discovery Requests go to negating the Trustee's prima facie case or

supporting the Defendants' affirmative defenses.    Defendants have a right to take discovery to

develop the factual record necessary to support their defenses.    *See, e.g.*, *Mon Chong Loong*

*Trading Co. v. Travelers Excess & Surplus Lines Co.*, 2014 WL 5525237, at *3 (S.D.N.Y. Oct.

27, 2014) ("As long as the defense is in the case – and plaintiffs do not purport to seek relief under

Fed. R. Civ. P. 12(f), which authorizes a motion to strike affirmative defenses – the defendant is

entitled to seek relevant discovery in support of that defense.").

Indeed, the Trustee himself recently took this position, with success, in a separate adversary

proceeding.    (*See* Trustee's Brief, *Saren-Lawrence*, Adv. Pro. No. 10-04898, ECF No. 83 at 21)

("[I]t would be improper for Defendants to maintain the defense but at the same time, deny the

Trustee basic discovery concerning its factual underpinnings . . . .").    As this Court knows, the

Trustee has engaged in a campaign to subpoena bank and other financial records which he doesn't

need to prove his case, [2] solely in order to obtain the evidence to frame a complaint against, *inter*

---

[2] (*See* May 17, 2016 Transcript at 16:19-20, attached as Exh. F) ("MR. JACOBS: But in any event, our position is that the bank records have limited utility."); (*See* July 6, 2016 Transcript at 19:9-11, attached as Exh. G) ("MR. JACOBS: Well, Your Honor, from our perspective we don't – legally our position is we don't need the bank records to prove any aspect of our case.").

*alia*, subsequent transferees.  If the Trustee is permitted to take such discovery, in clear violation

of Supreme Court precedent, *see, e.g.*, *Ashcroft v. Iqbal,* 556 U.S. 662, 687 (2009) (if a party's

complaint  is deficient under Rule 8, then that party is "not entitled to discovery, cabined or

otherwise"), then surely Defendants should be permitted to take discovery going to their defenses.

A.  The Court should compel discovery of Requests relating to BLMIS employees

Defendants' Discovery Requests 1, 13, and 17 relate to BLMIS' employees and items

within their knowledge.  Discovery of these Requests should be compelled.  For example,

Discovery Request 1 states as follows:

> Request 1:  List the name and address of every former BLMIS employee with
> whom you spoke about the meaning of entries on the customer statements and state
> the substance of what you questioned each person about and what that person told
> you.  Produce all documents you reviewed with each such employee and all
> documents indicating what each person said.

The Trustee objects to this Request on the ground that it seeks investigatory work product.

(*See* Exh. D., Response to No. 1); (*see also* Exh. F at 29:23-30:13).  As discussed *supra,* the failure

to produce a privilege log waives this objection.

Moreover, Defendants are entitled to this information from a SIPA trustee.  15 U.S.C. §§

78*fff*–1(d)(3);  *see also In re Lloyd Sec., Inc.,* 183 B.R. 386, 395 (E.D. Pa. 1995), *aff'd*, 75 F.3d

853 (3d Cir. 1996) ("Indeed, as the customers themselves argue, the very purpose of a SIPA

proceeding is to benefit customers.").  Unfortunately, in this case, the Trustee has not fulfilled this

fundamental obligation, except to the extent that the information advances his personal goals.  If

the Trustee has obtained information proving, or suggesting, that the positions he has taken are not

factually supportable, this information is obviously relevant and the Trustee has an obligation to

disclose it.

Similarly, discovery should be compelled with respect to Request 17 which states:

Request 17:  Provide the number of employees who worked in each of the trading areas set forth in interrogatory # 17 for each year of Madoff's operations and produce the documents on which you base your responses.

The Trustee has not provided this information for the time periods requested.  If the information is contained among the 16.5 million pages in the E-Data Room 1, the Trustee should produce those pages specifically to the Defendants.

      B.   The Court should compel discovery of Requests relating to errors in Madoff's books and records

Requests 2, 3, and 5 seek information testing the veracity of Madoff's books and records, which Requests are as follows:

Request 2:  With respect to Madoff's and BLMIS' books and records, list every single factual error you found in those books and records, including, without limitation, inconsistencies between the deposits and withdrawals shown on the customer statements and the cancelled checks and copies of cancelled checks in the Trustee's possession.

Request 3:  List every single factual error asserted by any Madoff or BLMIS customer in their statements and produce all documents relating to such error.

Request 5:  If you contend that Madoff's and BLMIS' customer statements were not 'permeated with fraud' with respect to the deposits and withdrawals, produce all reports and documents on which you base that contention.

The Trustee raises a series of objections to these Requests, none of which is legitimate. (*See* Exh. D, Responses to No. 2 and 3) (objecting on grounds of vagueness, relevance, proportionality, improper service, fact discovery being closed).  The Trustee then proceeds to respond to these Requests by stating "customer statements and cancelled checks are included in the Trustee's Initial Disclosure Documents and are located in E-Data Room 1." (*Id.*).  The Trustee states that, "pursuant to Federal Rule 33(d)(1), Defendants may determine the response to this request for Defendants by comparing the customer statements with the checks and that the burden of ascertaining the information is substantially the same for either party." (*Id.*, Response to No.

2).  This is not a proper response and it does not satisfy Fed. R. Civ. P. 33(d)(1).  If, for example,

there are inaccuracies with respect to deposits and withdrawals in the accounts of other defendants,

that fact goes to the reliability of the records overall.  There is no basis for allowing the Trustee to

conceal this information while, at the same time, allowing the Trustee to rely upon those portions

of the books and records that advance his position.  To do is to allow the Trustee to prevail by

concealing material information.

      The "principal precondition to admission of documents as business records pursuant to

Fed. R. Evid. 803(6) is that the records have sufficient indicia of trustworthiness to be considered

reliable."  *See Saks Int'l, Inc. v. M/V Exp. Champion,* 817 F.2d 1011, 1013 (2d Cir. 1987); *see also*

*Ortho Pharm. Corp. v. Cosprophar, Inc.*, 828 F. Supp. 1114, 1119 (S.D.N.Y. 1993), *aff'd*, 32 F.3d

690 (2d Cir. 1994) ("The hallmark of documents admitted under the business records exception is

that they are trustworthy and reliable.").  Defendants obviously are entitled to discovery

concerning the reliability of Madoff's records – even if the truth hurts the Trustee's position.

      Remarkably, the Trustee also argues that the information sought is not relevant.  If that is

the case, then the Trustee should be barred from relying upon any of Madoff's books and records,

for any purpose.  *See* Fed. R. Evid.  402 ("Irrelevant evidence is not admissible.").

      To avoid disclosing the errors of which he is aware in Madoff's records of customer

deposits and withdrawals, the Trustee again tries to use Federal Rule of Civil Procedure 33(d).

However, to rely on Rule 33(d), a party "must affirm that the information sought by the

interrogatory in fact is available in the specified records. . . . [B]y invoking Rule 33(d) the

responding party represents that the information is in the designated records."  *See* Wright &

Miller, Federal Practice and Procedure § 2178 (3d ed.) ("Wright & Miller").  Thus, by relying on

Rule 33(d), the Trustee is implicitly affirming that the Madoff records within his possession

contain errors, but yet he continues to maintain that that "cash activity reflected in the BLMIS customer statements is accurate and not fraudulent." (Exh. D, Response to No. 5). These positions are irreconcilable.

The Trustee's promise that he will "supplement" his Responses with documents relied on by his experts (*see, e.g.*, Exh. D, Response to No. 5) is similarly inappropriate and non-responsive. *See In re Savitt/Adler Litig.*, 176 F.R.D. 44, 50 (N.D.N.Y. 1997) (improper to respond to interrogatories with reference to third-party expert reports because those are not business records of the responding party). To the extent the Trustee can answer any Discovery Requests now, he should do so or be forever barred from relying on Madoff's records.

The Trustee's objections and responses are a smokescreen for the simple fact that the E-Data Room 1 does not contain the information responsive to these Requests. The Trustee and his counsel know what mistakes – as to deposits and withdrawals – have come to their attention. They have an obligation to disclose those mistakes if they intend to seek admission of Madoff's records to prove deposits and withdrawals.

While we are certain that the evidence proving errors in Madoff's records are not in the E-Data Room 1, even if such evidence is there, the Trustee has an obligation to produce that evidence. *See, e.g.*, *In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. 351, 366 (N.D. Ill. 2005)("Added to that is the familiarity of defense counsel, who have already undertaken at least one review of the documents. Consequently, the defense will be more easily able to locate the answers in the documents than would plaintiffs.").

Moreover, the Trustee has not made the showing required to excuse his failure to respond on grounds of burden. *See Jackson v. Edwards*, 2000 WL 782947, at *3 (S.D.N.Y. June 16, 2000) ("To the extent defendants assert burden, they have submitted no affidavits or other material of

evidentiary weight describing the volume of materials that would have to be reviewed for responsive materials, nor is there any evidence concerning the amount of time required to review this material. Their conclusory assertion of burdensomeness is entitled to no weight whatsoever.").

With respect to another requirement of Rule 33(d) – that the Trustee actually identify the responsive documents – the Trustee has obviously failed to identify where in E-Data Room 1 Defendants might find evidence of the errors in Madoff's records with respect to deposits and withdrawals. To rely on Rule 33(d), "[t]he specification of documents to be produced shall be in sufficient detail to permit the interrogating party to locate and identify the records and to ascertain the answer as readily as could the party from whom the discovery is sought." *Nat. Res. Def. Council, Inc. v. Fox*, 1996 WL 497024, at *4 (S.D.N.Y. Aug. 30, 1996) (citation omitted). Rule 33(d) "'does not allow a respondent to foist a mass of records on his interrogator when their deciphering is feasible only for one familiar with the records.'" *Id.* (citation omitted); *see also In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. at 366. ("[T]he reference to records must be sufficiently detailed to allow the interrogating party to locate and identify them.")

Indeed, the Trustee's response is precisely the sort of response that the drafters of Rule 33(d) recognized as abusive and explicitly designated as improper. *See* Committee Note to 1970 Amendment of Rule 33(c) (predecessor to Rule 33(d)), 48 F.R.D. 524-25 ("The interrogating party is protected against abusive use of this provision through the requirement that the burden of ascertaining the answer be substantially the same for both sides. A respondent may not impose on an interrogating party a mass of records as to which research is feasible only for one familiar with the records."); *see also* Wright & Miller, § 2178 (noting same).

Ordinarily, a party relying on Rule 33(d) would supply Bates numbers of the documents that it is relying on to answer the interrogatory. *See, e.g.*, *Phoenix Four, Inc. v. Strategic Res.*

*Corp.*, 2006 WL 1517583, at *3 (S.D.N.Y. June 2, 2006) ("Phoenix shall specify, for each of the

assets listed in answer to Interrogatory No. 12, the documents from which the answers to

Interrogatory No. 13 may be derived."); *see also* Local Rule 33.3 (in responding to interrogatories,

party must identify location of responsive documents).  The Trustee's failure to do so proves that

the E-Data Room 1 does not contain the documents responsive to these discovery demands.

C.    <u>The Court should compel discovery relating to deposits and withdrawals</u>

Request number 4 states as follows:

<u>Request 4</u>:  List every single 'PW' entry on a customer statement where there is no
documentary evidence that the customer requested to receive profit withdrawals
and produce documents relating thereto.

The Trustee objects that this Request as outside the scope of relevance.  This is wrong.

Every Defendant whose statements show PW is entitled to this evidence because it goes to the

calculation of Defendants' net equity.

The Trustee also relies on Rule 33(d)(1) to argue "Defendants may determine the response

to this request by reviewing the Initial Disclosure Documents."  (Exh. D, Response to No. 4).  It

is unclear what documents the Trustee is referring to and thus for the reasons stated *supra*, this

response necessarily fails.  To the extent the Trustee points to the 2,727 page document produced

by his expert Lisa Collura, (ECF No. 10664, Exh. 7), this is not responsive because the Collura

report deals only with non-clawback customers.  Accordingly, the Trustee's assertion that this is

responsive is disingenuous and false.

D.    <u>The Court should compel discovery of Requests relating to claims paid</u>

Requests 6-9 ask the Trustee to supply information relating to claims paid and the

demographics of those claimants.  These Requests are as follows:

<u>Request 6</u>:  As of the date you respond to these interrogatories, list every customer
whose allowed claim has not been paid in full and state the amount of that

customer's allowed claim and the amount that customer has received to date. Produce all documents from which you derived your answer. If you take the position that you cannot reveal the names of the account holders, list the accounts by account number and indicate whether the account is (a) an individual; (b) a hedge fund; (c) a family investment fund; (d) an IRA account; or some other category.

<u>Request 7</u>: With respect to your most recent distribution to allowed claimants, how much did you distribute in total and how much did you distribute to each allowed claimant. Produce all documents evidencing the distribution schedule including a list of the amount paid to each claimant, showing the name of each claimaint. If you take the position that you cannot reveal the names of the account holders, list the accounts by account number and indicate whether the account is (a) an individual; (b) a hedge fund; (c) a family investment fund; (d) an IRA account; or some other category.

<u>Request 8</u>: List the name of every customer who sold an allowed claim to a claims purchaser, the amount paid to the customer by the claims purchaser, the allowed amount of the claim, and the date of the purchase. Produce all documents from which you derived your answer.

<u>Request 9</u>: List every claims purchaser to whom you have made payment and state the amount, to date, that you have paid each claims purchaser.

The Trustee objects to these Requests primarily on the grounds of relevance and proportionality. The objections are improper because the Requests seek relevant information concerning the "equitable" nature of the Trustee's conduct. *See* Trustee's Brief in Support of Use of Net Investment Method, No. 10-2378 at 54 (2d Cir., filed September 20, 2010) ("[A] net investment approach is the most equitable means to allocate limited resources among equally deserving victims."). The Defendants are entitled to test the "equitable" nature of the Trustee's efforts. And certainly the Second Circuit, which will ultimately review this issue, is entitled to know precisely who the beneficiaries are of the Trustee's merciless campaign. (We suspect the vast majority of the Trustee's recent distributions go to claims speculators.) As stated by the Second Circuit in affirming the Trustee's selection of the Net Investment Method, "[d]iffering fact patterns will inevitably call for differing approaches to ascertaining the fairest method for

approximating 'net equity,' as defined by SIPA". *See In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d 229, 235 (2d Cir. 2011) (the *"Net Equity Decision"*); s*ee also id.* at 24 ("In any event, SIPA covers potentially a multitude of situations; no one size fits all.").

The Madoff liquidation, and the Trustee's selection of the Net Investment Method, are matters of public importance and thus good judicial administration requires allowing Defendants the opportunity to develop the factual record here. *Kennedy v. Silas Mason Co.*, 334 U.S. 249, 257 (1948) (considering it a part of "good judicial administration" to decide highly important issues of public interest only on fully developed factual records); *see also Anderson v. Hodel*, 899 F.2d 766, 770 (9th Cir. 1990) (citing *Kennedy* and various court of appeals decisions to stand for the proposition that important or complex questions should not be decided on an unsettled factual record).

For similar reasons, the Trustee's proportionality argument must be rejected here. Federal Rule of Civil Procedure 26 was amended in 2015 to make explicit that the parties' relative access to information – so-called "information asymmetry" – is an express component of proportionality. *See* Advisory Committee Notes to 2015 Amendments to Fed. R. Civ. P. 26 (noting that relative access to information was not previously a component of proportionality). As stated by the Committee,

> One party – often an individual plaintiff – may have very little discoverable information. The other party may have vast amounts of information, including information that can be readily retrieved and information that is more difficult to retrieve. In practice these circumstances often mean that the burden of responding to discovery lies heavier on the party who has more information, and properly so.

Advisory Committee Notes to 2015 Amendments to Fed. R. Civ. P. 26.

Moreover, the Committee has made clear in recent amendments that greater discovery is warranted in cases where there is great "'significance of the substantive issues, as measured in

philosophic, social, or institutional terms' . . . . [Or where the litigation] seeks to vindicate vitally

important personal or public values." *See id.* (citation omitted). This is such a case. And, of

course, the parties' relative resources are still a consideration for Rule 26. As of the Trustee's

latest request for interim reimbursement, his papers indicated that he has literally hundreds of

lawyers working on this case on a daily basis. (*See* ECF No. 13715-2).

> E.  The Court should compel discovery of Requests relating to the investment activities
>     of Madoff's Investment Advisory customers

Requests 11 and 12 seek information that goes to the securities investment activities of

Madoff's Investment Advisory business. These Requests are as follows:

> Request 11: For each year of Madoff's operation, state all facts on which you base
> your position that Madoff did not purchase securities for his investment advisory
> customers and produce the documents on which you base your position.

> Request 12: With respect to your answer to Interrogatory No. 11, list all individuals
> with whom you spoke concerning this issues, explaining the specific facts each
> such person provided and produce all documents obtained from each such person.

The Trustee opposes these Requests for various reasons. The Trustee's privilege objection,

as discussed *supra* has been waived by his failure to produce a privilege log. To the extent the

Trustee objects to these Requests on the basis that they prematurely seek expert information, this

has already been refuted *supra*, but this is also a mischaracterization of these Requests. Defendants

are seeking *facts*, not expert conclusions. As recognized by the *Net Equity Decision*, it has always

been taken as a fact that at BLMIS, there "were no securities purchased and there were no proceeds

from the money entrusted to Madoff for the purpose of making investments." *Net Equity Decision*,

654 F.3d at 240. Obviously the *Net Equity Decision* was entered in a factual vacuum based solely

upon the Trustee's representations to the Court that Madoff's records were "permeated with

fraud." If the factual representations that the Trustee made to the Second Circuit were false,

Defendants are entitled to prove that; and they are entitled to prove that through the Trustee's own records.

The Trustee argues that Defendants have not "articulated whether, or a specific reason as to why, they contend that BLMIS was not a fraudulent enterprise during the relevant time period." (Exh. D, Response to No. 11).   Defendants have no obligation to do so, but if they did, then Madoff's testimony would be a good place to start.  Madoff's deposition testimony in the profit withdrawal litigation directly contradicts the Trustee's contention that no securities were ever purchased for investment advisory customers.  (*See* Transcript of June 15, 2016 Deposition of Bernard Madoff, attached as Exh. H, at 47:3-9, 50:23-51:3).   And Frank DiPascali, whose credibility was vouched for by the government, claimed that the fraud in the Investment Advisory business started in the late 1980s or early 1990s.

Madoff testified that the market making and investment advisory parts of the business operated together and bought and sold securities between each other.  (*See id.* at 46:3-9) ("When you're talking about doing transactions in the '80s, it was . . . you have to understand we were one firm.  There was no . . . separation between the investment advisory. . . and the market-making side in the beginning."); (*id.* at  47:3-9) ("[T]he convertible securities transactions were all bought and sold.  They were not paper transactions . . . as opposed to the split-strike transactions, which in the '90s became just paper transactions, where we were actually short.").  Madoff could not be more clear that "all of the arbitrage transactions . . . were actual purchases and sales of securities. . . . It was an actual transaction, where money changed hands."  (*Id.* at 50:23-51:3).

Thus, Defendants are entitled to know the facts upon which the Trustee asserts otherwise. It is simply not appropriate for the Trustee to "refer[] Defendants to E-Data Room 1, which was created to provide Defendants access to the documents upon which the Trustee selectively will

rely to establish that the investment advisory business unit did not purchase any securities." *See*

*Nat. Res. Def. Council, Inc. v. Fox*, 1996 WL 497024, at *4 (S.D.N.Y. Aug. 30, 1996) (citation

omitted) (to rely on Rule 33(d), "[t]he specification of documents to be produced shall be in

sufficient detail to permit the interrogating party to locate and identify the records and to ascertain

the answer as readily as could the party from whom the discovery is sought."). Defendants are

entitled to the facts and compliance with these Request should be compelled.

      F.  The Court should compel discovery relating to the Trustee's calculation of Net Equity

Request 14 is as follows:

<u>Request 14:</u>  Explain the basis on which you determined that the Defendants have no net equity and produce the front and back of each [check] deposit[ed] into and withdraw[n] from the Account and from any account which transferred funds into the Defendants' account.

This Discovery Request is relevant to testing the Trustee's calculations of Defendants' net

equity and, thus, their exposure in these cases. The Court has already indicated that Defendants

are entitled to "inquire into how . . . [the Trustee] computed the net equity in a particular account."

(*See* Exh. F at 53:8-14).  Nonetheless, the Trustee argues that it is not "proportional" for him to

produce the backs and fronts of every check deposited and withdrawn from Defendants' accounts.

(Exh. D, Response No. 14).  This answer is evasive and therefore violates the Federal Rules.  *See*

Fed. R. Civ. P. 33(b)(3) (each interrogatory must be answered "fully").  The Trustee has no checks

prior to December 1998.  Thus, the Trustee's burden of production is substantially reduced.  The

Trustee should be required to produce the checks that he has and, if he does not have them for

certain years or for certain accounts, he should be required to state so.  If he cannot prove his case,

surely Defendants are entitled to learn that in discovery.

G. <u>The Court should compel discovery of the Requests relating to the Ponzi Scheme
presumption</u>

Requests 15, 16, and 18 all relate to the timing and scope of BLMIS' trading activities.

The purpose of these Requests is to test the Trustee's reliance on the Ponzi scheme presumption.

Defendants have asserted affirmative defenses challenging the Trustee's characterization of

Madoff's operations as a Ponzi scheme and thus discovery to support this affirmative defense is

appropriate.

Requests testing the Ponzi scheme presumption are as follows:

<u>Request 15:</u> Explain how you intend to establish that Madoff was insolvent in each
year from 1960 – 2000 and produce all documents on which you will rely to
establish insolvency for each of those years.

<u>Request 16:</u> Provide the gross trading volume by both number of shares traded and
total dollar volume for each year of Madoff's operation, broken down by (a)
investment advisory business (b) proprietary trading business; and (c) market
making business. Produce documents on which you base your responses.

<u>Request 18</u>: For each security listed on the Defendants' account statements for
each year from 1982 on, set forth the number of shares of the listed companies'
stock that BLMIS held at that time; and, if the stock was specified as belonging to
a particular customer, specify the customer and the number of shares shown on
BLMIS' records are being owned by that customer. Produce the documents on
which you base your responses.

Under the judicially-imposed Ponzi scheme presumption, bankruptcy trustees have been

permitted to recover payments made to innocent people who dealt with Ponzi schemers. *See, e.g.*,

*In re Bernard L. Madoff Inv. Sec. LLC, 458* B.R. 87, 104 (Bankr. S.D.N.Y. 2011). *But see Janvey*

*v. The Golf Channel, Inc.,* 2016 WL 1268188, at *2 (Tex. April 1, 2016); *Finn v. Alliance Bank*,

860 N.W.2d 638, 647 (Minn. 2015).

If the Ponzi Scheme presumption is inapplicable in these cases, then they will all be

dismissed. Accordingly, discovery into any factual issues relating to the legitimate and illegitimate

activities of Madoff, to establish whether the Ponzi scheme presumption is appropriate, is highly relevant in should not be limited in any way.

## V.    The Trustee should be barred from using at the time of trial any evidence not produced in discovery

The Trustee has failed to respond to Defendants' Requests during fact discovery. It is well established that "a failure to produce a document in discovery that is not protected by a privilege or the work-product doctrine ordinarily results in a prohibition against that document being used at trial or in connection with any motion." *Harley v. Nesby*, 2011 WL 6188718, at *4 (S.D.N.Y. Dec. 12, 2011); Fed. R. Civ. P. 37(c)(1) ("If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial . . ."). Stated simply, the Trustee cannot "hold its evidence in secret and then disclose it for the first time at trial." *Harley*, 2011 WL 6188718, at *4. The Trustee's failure to respond to the Discovery Requests has resulted in his waiver of using any information sought in the Discovery Requests at the time of trial. An appropriate order should be entered in all adversary proceedings where fact discovery has closed so indicating.

## CONCLUSION

This Court should permit Defendants the opportunity to conduct the discovery they seek.

Dated: New York, New York
      August 29, 2016

**CHAITMAN LLP**

By:   _/s/ Helen Davis Chaitman_
       Helen Davis Chaitman
       Gregory M. Dexter
       465 Park Avenue
       New York, New York 10022
       Phone & Fax: (888)-759-1114
       hchaitman@chaitmanllp.com
       gdexter@chaitmanllp.com

       _Attorneys for the Defendants_

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on August 29, 2016, I caused a true and correct copy of the foregoing

document to be served upon the parties in this action who receive electronic service through

CM/ECF and by electronic mail upon:

**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: 212.589.4200
Facsimile: 212.589.4201
David J. Sheehan
Email: dsheehan@bakerlaw.com

*Attorneys for Irving H. Picard, Trustee for the*
*Substantively Consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities*
*LLC and the Estate of Bernard L. Madoff*

**CHAITMAN LLP**
By: /s/ Helen Davis Chaitman
465 Park Avenue
New York, NY 10022
Phone & Fax: 888-759-1114
hchaitman@chaitmanllp.com
*Attorneys for Defendants*