**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>                              Plaintiff,<br><br>       v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>                              Defendant. | No. 08-01789 (SMB)<br><br>SIPA Liquidation<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>                              Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>                              Plaintiff,<br><br>       v.<br><br> LEGACY CAPITAL LTD.,<br><br>                              Defendant. | Adv. Pro. No. 10-05286 (SMB) |

**MEMORANDUM OF LAW IN SUPPORT OF TRUSTEE'S**
**<u>MOTION FOR JUDGMENT ON THE PLEADINGS</u>**

                                                **BAKER & HOSTETLER LLP**
                                                45 Rockefeller Plaza
                                                New York, New York 10111
                                                Telephone: (212) 589-4200
                                                Facsimile: (212) 589-4201

                                                *Attorneys for Irving H. Picard, Trustee for the*
                                                *Substantively Consolidated SIPA Liquidation*
                                                *of Bernard L. Madoff Investment Securities*
                                                *LLC and the Estate of Bernard L. Madoff*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................1

PROCEDURAL HISTORY..........................................................................................................2

ARGUMENT...................................................................................................................................3

    I.    APPLICABLE LEGAL STANDARD UNDER RULE 12(c)................................3

    II.    THE TRUSTEE HAS MADE OUT HIS PRIMA FACIE CASE AND THERE ARE NO MATERIAL FACTS IN DISPUTE ...........................................4

        A.    Legacy Admits that It Received Transfers from BLMIS within the Two Year Period...................................................................................................4

        B.    BLMIS Made the Transfers with the Actual Intent to Hinder, Delay and Defraud Its Creditors ................................................................5

    III.    LEGACY CAPITAL'S SOLE AFFIRMATIVE DEFENSE HAS ALREADY BEEN DECISIVELY ADDRESSED AND REJECTED..................10

CONCLUSION.............................................................................................................................11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Agric. Research & Tech. Grp.*,
   916 F.2d 528 (9th Cir. 1990) ..................................................................................................6

*In re Bayou Grp.*,
   396 B.R. 810 (Bankr. S.D.N.Y. 2008), *rev'd in part on other grounds*, 439
   B.R. 284 (S.D.N.Y. 2010)..................................................................................................6, 9

*Burns Int'l Sec. Servs., Inc. v. Int'l Union, United Plant Guard Workers of Am.*,
   47 F.3d 14 (2d Cir. 1994) .......................................................................................................3

*Christian Bros. High Sch. Endowment v. Bayou No Leverage Fund, LLC* (*In re
   Bayou Group, LLC*),
   439 B.R. 284 (S.D.N.Y. 2010)................................................................................................9

*D'Alessio v. N.Y. Stock Exch.*,
   258 F.3d 93 (2d Cir. 2001).....................................................................................................3

*Gowan v. Amaranth Advisors L.L.C. (In re Dreier LLP)*,
   2014 WL 47774 (Bankr. S.D.N.Y. Jan. 3, 2014)....................................................................6

*Gredd v. Bear, Stearns Sec. Corp. LLC (In re Manhattan Inv. Fund Ltd.)*,
   359 B.R. 510 (Bankr. S.D.N.Y. 2007), *rev'd in part on other grounds*, 397
   B.R. 1 (S.D.N.Y. 2007)..........................................................................................................9

*Gredd v. Bear, Stearns Sec. Corp. LLC (In re Manhattan Inv. Fund Ltd.)*,
   397 B.R. 1 (S.D.N.Y. 2007)....................................................................................................6

*Hirsch v. Arthur Andersen & Co.*,
   72 F.3d 1085 (2d Cir. 1995)...................................................................................................6

*Johnson v. Neilson (In re Slatkin)*,
   525 F.3d 805 (9th Cir. 2008) .................................................................................................6

*Kondaur Capital Corp. v. Cajuste*,
   849 F. Supp. 2d 363 (E.D.N.Y. 2012) ...................................................................................4

*L–7 Designs, Inc. v. Old Navy, LLC*,
   647 F.3d 419 (2d Cir. 2011)...................................................................................................3

*Lambert v. Credit Lyonnais (Suisse) S.A.*,
   No. 93 CIV. 6876 (LMM), 2001 WL 357316 (S.D.N.Y. Apr. 10, 2001)................................9

*McHale v. Boulder Capital LLC (In re The 1031 Tax Grp., LLC)*,
   439 B.R. 47 (Bankr. S.D.N.Y. 2010)..................................................................................5, 6

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Picard v. Chais (In re Bernard L. Madoff Inv. Sec., LLC)*,
  445 B.R. 206 (Bankr. S.D.N.Y. 2011) ...................................................................................6

*Picard v. Cohen*,
  2016 WL 1695296 (Bankr. S.D.N.Y. Apr. 25, 2016) ......................................................10, 11

*Picard v. Cohmad Sec. Corp.*,
  454 B.R. 317 (Bankr. S.D.N.Y. 2011) ...................................................................................6

*Picard v. Katz*,
  462 B.R. 447 (S.D.N.Y. 2011) ...............................................................................................8

*Picard v. Legacy Capital Ltd. (In re Bernard L. Madoff Investment Securities LLC)*,
  548 B.R. 13 (Bankr. S.D.N.Y. Mar. 14, 2016), ECF No. 134 ..........................................1, 2

*Picard v. Marilyn Bernfeld Trust*,
  Adv. Pro. No. 10-05143 (SMB) (Bankr. S.D.N.Y. Oct. 28, 2015) ........................................1

*Picard v. Mendelow*,
  Adv. Pro. No. 10-04283 (SMB) (Bankr. S.D.N.Y. Oct. 28, 2015) ........................................1

*Purgess v. Sharrock*,
  33 F.3d 134 (2d Cir.1994) ......................................................................................................9

*Scholes v. Lehmann*,
  56 F.3d 750 (7th Cir. 1995) ...................................................................................................6

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*,
  987 F. Supp. 2d 309 (S.D.N.Y. 2013) .................................................................................10

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff)*,
  531 B.R. 439 (Bankr. S.D.N.Y. 2015) .................................................................................10

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff Inv. Sec. LLC)*,
  424 B.R. 122 (Bankr. S.D.N.Y. 2010) ...................................................................................5

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*,
  476 B.R. 715 (S.D.N.Y. 2012) (*"Greiff"*); *In re Bernard L. Madoff Inv. Sec.*,
  654 F.3d 229 (2d Cir. 2011) .............................................................................................5, 10

*Sec. Inv'r Prot. Corp. v. Old Naples Sec., Inc. (In re Old Naples Sec., Inc.)*,
  343 B.R. 310 (Bankr. M.D. Fla. 2006) ..................................................................................5

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
  499 B.R. 416 (S.D.N.Y. 2013), *certification for interlocutory appeal denied*,
  987 F. Supp. 2d 309 (S.D.N.Y. 2013) ................................................................. 3, 10

*Sellers v. M.C. Floor Crafters, Inc.*,
  842 F.2d 639 (2d Cir. 1988) ....................................................................................... 3

*Sheppard v. Beerman*,
  18 F.3d 147 (2d Cir. 1994) ......................................................................................... 3

*United States v. DiPascali*,
  No. 09-CR-764 (RJS) (S.D.N.Y. Aug. 11, 2009) ....................................................... 8

*United States v. Kugel*,
  No. 10-CR-228 (LTS) (S.D.N.Y. Nov. 21, 2011) ...................................................... 8

*United States v. Madoff*,
  No. 09-CR-213 (DC) (S.D.N.Y. Mar. 12, 2009) ........................................................ 7

*In re Vivendi Universal, S.A., Sec. Litig.*,
  842 F. Supp 2d 522 (S.D.N.Y. 2012) ......................................................................... 3

**Statutes**

11 U.S.C. § 548(a)(1) ........................................................................................................ 5

11 U.S.C. § 548(a)(1)(A) ......................................................................................... 4, 6, 10

11 U.S.C. § 548(c) ........................................................................................... 2, 3, 10, 11

11 U.S.C. § 548(d)(2) ............................................................................................. 2, 3, 10

15 U.S.C. §§ 78aaa–*lll* .................................................................................................... 1

15 U.S.C. § 78fff-2(c)(3) .................................................................................................. 5

New York Debtor & Creditor Law .................................................................................. 2

**Rules**

Fed. R. Bankr. P. 7012 ..................................................................................................... 1

Fed. R. Civ. P. 12(b)(6) .................................................................................................... 3

Fed. R. Civ. P. 12(c) ................................................................................................ 1, 3, 11

Fed. R. Evid. 201 ............................................................................................................. 6

# TABLE OF AUTHORITIES
**(continued)**

**Page(s)**

Fed. R. Evid. 803(22) ............................................................................................................6

Fed. R. Evid. 807 ...................................................................................................................6

Irving H. Picard (the "Trustee"), as trustee for the substantively consolidated liquidation of the business of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act ("SIPA"), 15 U.S.C. §§ 78aaa–lll, and the estate of Bernard L. Madoff, by and through his undersigned counsel, respectfully submits this memorandum of law in support of his motion under Federal Rule of Civil Procedure 12(c), as incorporated by Rule 7012 of the Federal Rules of Bankruptcy Procedure, for a judgment on the pleadings as to Count One, the sole remaining count, of the Amended Complaint.

## PRELIMINARY STATEMENT

This Court's March 14, 2016 decision and subsequent order limited the Trustee's action to the avoidance and recovery of fictitious profits BLMIS transferred to or for the benefit of defendant Legacy Capital Ltd. ("Legacy"). *Picard v. Legacy Capital Ltd. (In re Bernard L. Madoff Investment Securities LLC)*, 548 B.R. 13, 35 (Bankr. S.D.N.Y. Mar. 14, 2016), ECF No. 134 (the "*Legacy Decision*"); Order, ECF No. 137 (Apr. 12, 2016). The *Legacy Decision* renders this a "strict liability case[] unless the law changes." Tr. of Oral Argument at 114:10-11, *Picard v. Marilyn Bernfeld Trust*, Adv. Pro. No. 10-05143 (SMB) (Bankr. S.D.N.Y. Oct. 28, 2015), ECF No. 20; *see also* Tr. of Oral Argument at 100:19, *Picard v. Mendelow*, Adv. Pro. No. 10-04283 (SMB) (Bankr. S.D.N.Y. Oct. 28, 2015), ECF No. 85 (fictitious profit count is "almost a strict liability count"). Accordingly, because Legacy has neither disputed a material issue of fact as set forth in the Trustee's amended complaint nor raised a single defense that could preclude the Trustee's recovery of fictitious profits transferred to Legacy, the Trustee is entitled to judgment on the pleadings.

## PROCEDURAL HISTORY

On December 6, 2010, the Trustee commenced this adversary proceeding (the "Adversary Proceeding") against Legacy, Khronos LLC ("Khronos"), and other related defendants seeking to avoid and recover certain transfers from BLMIS to or for the benefit of Legacy under Bankruptcy Code sections 548, 550, and 551 and the New York Debtor & Creditor Law. (ECF No. 1.) Motion practice related to the withdrawal of the reference and consolidated briefing before the District Court ensued, until, on July 30, 2014, the Adversary Proceeding was returned to the Bankruptcy Court. (ECF No. 78.)

On July 2, 2015, the Trustee filed an amended complaint against only Legacy and Khronos (the "Amended Complaint"). (ECF No. 112.) The Amended Complaint sought to (i) avoid $213,180,068 in transfers to or for the benefit of Legacy, of which $86,505,850 comprised fictitious profits (the "Transfers") transferred in the two years prior to December 11, 2008 (the "Filing Date"), and (ii) recover approximately $6,601,079 in subsequent transfers from Khronos. (Am. Compl. ¶¶ 142, 144, 151.) On July 30, 2015, Legacy and Khronos moved to dismiss the Amended Complaint. (ECF Nos. 115-20.) The matter was fully briefed by September 18, 2015, and heard by this Court on October 28, 2015. On March 14, 2016, this Court issued a decision granting Legacy's and Khronos's motions. *Legacy Decision* at 35. On April 12, 2016, this Court entered an order dismissing (i) the Amended Complaint against Khronos with prejudice; (ii) Counts Two through Seven of the Amended Complaint against Legacy without prejudice; and (iii) Count One of the Amended Complaint without prejudice, except to the extent it sought to avoid and recover fictitious profits transferred to or for the benefit of Legacy on or after December 11, 2006. (ECF No. 137.)

On May 16, 2016, Legacy, the sole remaining defendant in the Adversary Proceeding, filed its answer to the Amended Complaint (the "Answer"). (ECF No. 139.) Legacy admits to

receiving the Transfers (Ans. ¶¶ 2, 142, 144) and asserts only one affirmative defense, in which it

> preserves the right to asserts that it is entitled to pre-judgment interest on [it]s state and federal law claims, including tort claims for rescission, and that such pre-judgment interest would constitute an antecedent debt serving as value under 11 U.S.C. § 548(c) & (d)(2) in the event that the opinion of the United States District Court for the Southern District of New York in *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 499 B.R. 416 (S.D.N.Y. 2013), *certification for interlocutory appeal denied*, 987 F. Supp. 2d 309 (S.D.N.Y. 2013), is modified, vacated, reversed or overruled.

## ARGUMENT

### I.    APPLICABLE LEGAL STANDARD UNDER RULE 12(c)

The Federal Rules of Civil Procedure permit a party to move for judgment on the pleadings any time after the pleadings are closed. Fed. R. Civ. P. 12(c). "Judgment on the pleadings is appropriate where material facts are undisputed and where a judgment on the merits is possible merely by considering the contents of the pleadings." *Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 642 (2d Cir. 1988). The standard for deciding a Rule 12(c) motion mirrors that of a Rule 12(b)(6) motion in that the court must "accept the allegations contained in the complaint as true, and draw all reasonable inferences in favor of the non-movant." *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir. 1994); *D'Alessio v. N.Y. Stock Exch.*, 258 F.3d 93, 99 (2d Cir. 2001); *In re Vivendi Universal, S.A., Sec. Litig.*, 842 F. Supp 2d 522, 526 (S.D.N.Y. 2012).

"On a 12(c) motion, the court considers the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case." *L–7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011). A court should dispose of the claims on the pleadings "if, from the pleadings, the moving party is entitled to judgment as a matter of law." *Burns Int'l Sec. Servs., Inc. v. Int'l Union, United Plant Guard Workers of Am.*, 47 F.3d 14, 16 (2d Cir. 1994).

3

A plaintiff is entitled to judgment on the pleadings "if, with all reasonable inferences drawn in favor of the [defendant], the [defendant] has failed to allege facts that would give rise to a plausible claim or a plausible defense." *Kondaur Capital Corp. v. Cajuste*, 849 F. Supp. 2d 363, 366 (E.D.N.Y. 2012) (granting plaintiff's judgment on the pleadings where, as here, defendant did not allege any facts or assert any plausible defense in his answer that, if proven, would defeat plaintiff's claim). Because no element of the Trustee's *prima facie* case is in dispute, and the only defense Legacy asserts is contingent on the reversal of governing case law, the Trustee is entitled to judgment on the pleadings.

## II. THE TRUSTEE HAS MADE OUT HIS PRIMA FACIE CASE AND THERE ARE NO MATERIAL FACTS IN DISPUTE

Bankruptcy Code section 548(a)(1)(A) authorizes the Trustee to avoid "any ***transfer*** . . . of an ***interest of the debtor in property*** . . . that was made or incurred on or ***within 2 years before the date of the filing*** of the petition, if the debtor voluntarily or involuntarily . . . made such transfer . . . with ***actual intent to hinder, delay, or defraud*** any entity to which the debtor was or became, on or after the date that such transfer was made . . . indebted. 11 U.S.C. § 548(a)(1)(A) (emphasis added).

### A. Legacy Admits that It Received Transfers from BLMIS within the Two Year Period

Legacy admits that it, or BNP Paribas for its benefit, received the Transfers within two years of the Filing Date. Specifically, in its Answer, "Legacy admits that, prior to the Filing Date, BLMIS transferred $213,180,068 from the Legacy Capital Account – $126,180,068 to Legacy and $87,000,000 to BNP Paribas" (Ans. ¶¶ 2, 142); "Legacy further admits that $126,674,218 of the $213,180,068 that BLMIS transferred from the Legacy Capital Account constituted the return of principal (Ans. ¶ 142); and "Legacy admits that, during the two years prior to the Filing Date, BLMIS made transfers from the Legacy Capital Account in the amount

4

Pg 11 of 17

of $174,000,000, and further admits that such amount included $87,000,000 transferred directly to Legacy Capital and $87,000,000 transferred to BNP Paribas." (Ans. ¶ 144.)

Under SIPA § 78fff-2(c)(3), BLMIS is deemed to have an interest in the property transferred to or for the benefit of Legacy. *See* 15 U.S.C. § 78fff-2(c)(3) ("For purposes of such recovery [through a trustee's avoidance action], the property so transferred shall be deemed to have been the property of the debtor and, if such transfer was made to a customer or for his benefit, such customer shall be deemed to have been a creditor, the laws of any State to the contrary notwithstanding."); *McHale v. Boulder Capital LLC (In re The 1031 Tax Grp., LLC)*, 439 B.R. 47, 70 (Bankr. S.D.N.Y. 2010) (finding that, in a Ponzi scheme, money reflected in bank account statements "in the name of a debtor is presumed to be property of the bankruptcy estate" for purposes of 11 U.S.C. § 548(a)(1)); *Sec. Inv'r Prot. Corp. v. Old Naples Sec., Inc.* (*In re Old Naples Sec., Inc.*), 343 B.R. 310, 319 (Bankr. M.D. Fla. 2006). Accordingly, it is undisputed that BLMIS made the Transfers to Legacy or for Legacy's benefit within two years of the Filing Date.

**B.    BLMIS Made the Transfers with the Actual Intent to Hinder, Delay and Defraud Its Creditors**

There is no genuine dispute that BLMIS was engaged in a Ponzi scheme. The existence of the scheme has been recognized by numerous courts, including this Court, the District Court, and the Second Circuit. *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC* (*In re Bernard L. Madoff Inv. Sec. LLC*), 424 B.R. 122, 125–32 (Bankr. S.D.N.Y. 2010); *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, (*In re Madoff Sec.*),, 476 B.R. 715, 717-18 (S.D.N.Y. 2012) ("*Greiff*"); *In re Bernard L. Madoff Inv. Sec.*, 654 F.3d 229, 231-32 (2d Cir. 2011) (the "*Net Equity Decision*").

5

Where, as here, the debtor operated a Ponzi scheme, fraudulent intent on the part of the transferor is presumed as a matter of law. *See, e.g.*, *Picard v. Cohmad Sec. Corp.,* 454 B.R. 317, 330 (Bankr. S.D.N.Y. 2011) ("[T]he fraudulent intent on the part of the debtor/transferor . . . is established as a matter of law by virtue of the 'Ponzi scheme presumption'"); *In re The 1031 Tax Grp.*, 439 B.R. at 72 ("If the Ponzi scheme presumption applies, actual intent for purposes of section 548(a)(1)(A) is established 'as a matter of law.'"); *see also In re Agric. Research & Tech. Grp.*, 916 F.2d 528, 535 (9th Cir. 1990) ("[T]he debtor's actual intent to hinder, delay or defraud its creditors may be inferred from the mere existence of a Ponzi scheme"). This Court has found that "[t]he breadth and notoriety of the Madoff Ponzi scheme leave no basis for disputing the application of the Ponzi scheme presumption to the facts of this case, particularly in light of Madoff's criminal admission." *Picard v. Chais (In re Bernard L. Madoff Inv. Sec., LLC)*, 445 B.R. 206, 221 (Bankr. S.D.N.Y. 2011); *Gredd v. Bear, Stearns Sec. Corp. LLC (In re Manhattan Inv. Fund Ltd.)*, 397 B.R. 1, 12 (S.D.N.Y. 2007) (relying on transferor's criminal guilty plea to establish the existence of a Ponzi scheme). The allocutions of Madoff and his co-conspirators Frank DiPascali and David Kugel,[1] leave no doubt about BLMIS's intent to defraud creditors. Madoff explained:

---

[1] A plea allocution is properly subject to judicial notice under Federal Rule of Evidence 201. *See, e.g.*, *Scholes v. Lehmann*, 56 F.3d 750, 762 (7th Cir. 1995) (district court properly took notice of plea agreement of Ponzi scheme operator in subsequent civil action against other parties); *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1095 (2d Cir. 1995) (taking judicial notice of fraudsters' guilty pleas in subsequent civil action by bankruptcy trustee). While there should be no evidentiary objections to the plea allocutions, the Trustee notes that plea agreements of Ponzi scheme perpetrators are admissible under Federal Rules of Evidence 803(22) and 807 and routinely admitted by courts in subsequent civil actions. *See, e.g.*, *Scholes*, 56 F.3d at 762; *Gowan v. Amaranth Advisors L.L.C. (In re Dreier LLP)*, Adv. Pro. Nos. 10-03493 (SMB), 10-05447 (SMB), 2014 WL 47774, at *11 (Bankr. S.D.N.Y. Jan. 3, 2014) (plea allocution of Ponzi scheme perpetrator admissible as evidence of fraudulent intent); *In re Bayou Grp.*, 396 B.R. 810, 835 (Bankr. S.D.N.Y. 2008), *rev'd in part on other grounds*, 439 B.R. 284, 304 (S.D.N.Y. 2010) ("Courts have consistently found that criminal proceeding admissions of a fraudulent scheme to defraud investors made in guilty pleas and plea allocutions are admissible as evidence of 'actual intent' to defraud creditors."); *Gredd*, 397 B.R. at 12 ("the criminal information to which [principal of a hedge fund] pled guilty" was "ample support in the record [to establish the] characterization" of a Ponzi scheme in subsequent proceeding); *Johnson v. Neilson (In*

6

> [F]or many years up until my arrest on December 11, 2008, I operated a Ponzi scheme through the investment advisory side of my business, Bernard L. Madoff Securities LLC . . . .
>
> . . . .
>
> The essence of my scheme was that I represented to clients and prospective clients who wished to open investment advisory and individual trading accounts with me that I would invest their money in shares of common stock, options, and other securities of large well-known corporations, and upon request, would return to them their profits and principal. Those representations were false for many years up and until I was arrested on December 11, 2008, I never invested these funds in the securities, as I had promised. Instead, those funds were deposited in a bank account at Chase Manhattan Bank. When clients wished to receive the profits they believed they had earned with me or to redeem their principal, I used the money in the Chase Manhattan bank account that belonged to them or other clients to pay the requested funds. The victims of my scheme included individuals, charitable organizations, trusts, pension funds, and hedge funds.
>
> . . . .
>
> To further cover up the fact that I had not executed trades on behalf of my investment advisory clients, I knowingly caused false trading confirmations and client account statements that reflected the bogus transactions and positions to be created and sent to clients purportedly involved in the split strike conversion strategy, as well as other individual clients I defrauded who believed they had invested in securities through me.

Plea Allocution of Bernard L. Madoff, *United States v. Madoff*, No. 09-CR-213 (DC) (S.D.N.Y. Mar. 12, 2009), attached as Exhibit 1 to the Declaration of Oren J. Warshavsky in Support of the Trustee's Motion for Judgment on the Pleadings ("Warshavsky Decl."). DiPascali provided similar testimony:

> From at least the early 1990s through December of 2008, there was one simple fact that Bernie Madoff knew, that I knew, and that other people knew but that we never told the clients nor did we tell the regulators like the SEC. No purchases of sales of securities were actually taking place in their accounts. It was all fake. It was all fictitious. It was wrong and I knew it was wrong at the time, sir.
>
> . . . .

---

*re Slatkin)*, 525 F.3d 805, 811-12 (9th Cir. 2008) (criminal plea agreements admissible to establish existence of Ponzi scheme and wrongdoer's fraudulent intent).

7

> From our office in Manhattan at Bernie Madoff's direction, and together with others, I represented to hundreds, if not thousands, of clients that security trades were being placed in their accounts when in fact no trades were taking place at all.
>
> . . . .
>
> Most of the time the clients' money just simply went into a bank account in New York that Bernie Madoff controlled. Between the early '90s and December '08 at Bernie Madoff's direction, and together with others, I did [the] follow[ing] things: On a regular basis I told clients over the phones and using wires that transactions on national securities exchanges were taking place in their account when I knew that no such transactions were indeed taking place. I also took steps to conceal from clients, from the SEC, and from auditors the fact that no actual security trades were taking place and to perpetuate the illusion that they actually were. On a regular basis I used hindsight to file historical prices on stocks then I used those prices to post purchase of sales to customer accounts as if they had been executed in realtime. On a regular basis I added fictitious trade data to account statements of certain clients to reflect the specific rate of earn return that Bernie Madoff had directed for that client.
>
> . . . .
>
> I knew no trades were happening. I knew I was participating in a fraudulent scheme. I knew what was happening was criminal and I did it anyway.

Plea Allocution of Frank DiPascali, Jr., *United States v. DiPascali*, No. 09-CR-764 (RJS) (S.D.N.Y. Aug. 11, 2009), attached as Exhibit 2 to the Warshavsky Decl. David Kugel confessed to helping Madoff execute his Ponzi scheme as early as the 1970s.

> Specifically, beginning the early '70s, until the collapse of BLMIS in December 2008, I helped create fake, backdated trades. I provided historical trade information -- sorry --first to Annette Bongiorno, and later to Joanne Crupi, and others which enabled them to create fake trades that, when included on the account statements and trade confirmations of Investment Advisory clients, gave the appearance of profitable trading when in fact no trading had actually occurred.

Plea Allocution of David L. Kugel, *United States v. Kugel*, No. 10-CR-228 (LTS) (S.D.N.Y. Nov. 21, 2011), attached as Exhibit 3 to the Warshavsky Decl. In light of these allocutions, "it is patent" that all of BLMIS's transfers "were made with actual intent to defraud present and future creditors." *Picard v. Katz*, 462 B.R. 447, 453 n.5 (S.D.N.Y. 2011).

8

In his Amended Complaint, the Trustee made detailed allegations about the existence of a Ponzi scheme at BLMIS. (Am. Compl. ¶¶ 19-28.) The Trustee's Amended Complaint cites to Madoff's and DiPascali's plea allocutions, as well as the allocution of former BLMIS employee David Kugel and the convictions of various former BLMIS employees who also helped perpetrate the fraud. (Am. Compl. ¶¶ 12-15.) In its Answer, Legacy does not deny that BLMIS was a Ponzi scheme. Rather Legacy "[d]enies having knowledge or information sufficient to form a belief as to the truth of the allegations . . . ." (Ans. ¶¶ 19-28.) Despite asserting its lack of knowledge with respect to the Ponzi scheme, Legacy has previously acknowledged it: "We all now know that the Madoff fraud was a Ponzi scheme."[2] (Reply Br. in Support of Motion to Dismiss the Amended Complaint at 16, ECF No. 126.) There is no ground on which Legacy could (or would) challenge this fact.

In a Ponzi scheme, the Trustee need not prove that the debtor intended to defraud a particular creditor, but rather he must only establish that the transfers made to the transferee were "in furtherance" of a fraudulent scheme. *See, e.g.*, *Christian Bros. High Sch. Endowment v. Bayou No Leverage Fund, LLC* (*In re Bayou Group, LLC*), 439 B.R. 284, 294, 304 (S.D.N.Y. 2010). "Every payment made by the debtor to keep the scheme on-going was made with the actual intent to hinder, delay or defraud creditors, primarily the new investors." *Gredd v. Bear, Stearns Sec. Corp. LLC (In re Manhattan Inv. Fund Ltd.)*, 359 B.R. 510, 518 (Bankr. S.D.N.Y. 2007), *rev'd in part on other grounds*, 397 B.R. 1 (S.D.N.Y. 2007) (internal citation omitted). Thus, every redemption payment "*in and of itself* constituted an intentional misrepresentation of fact" of the investor's rights to their falsely inflated account statement and "an integral and essential part" of the fraud. *In re Bayou Grp.*, 396 B.R. at 843.

---

[2] "A court can appropriately treat statements in briefs as binding judicial admissions." *Purgess v. Sharrock*, 33 F.3d 134, 144 (2d Cir.1994) (internal citation omitted); *Lambert v. Credit Lyonnais (Suisse) S.A.*, No. 93 CIV. 6876 (LMM), 2001 WL 357316, at *2 (S.D.N.Y. Apr. 10, 2001).

9

There is no dispute that BLMIS made all transfers to Legacy, much like to other customers and creditors, with the actual intent to defraud, as required under section 548(a)(1)(A) of the Bankruptcy Code. Legacy has alleged that it was defrauded by Madoff. For example, in its motion to withdraw the reference, Legacy remarked that it was an "innocent investor[] that can only fairly be considered [a] victim of what is now acknowledged to be one of the biggest frauds in U.S. history." (Br. in support of Motion to Withdraw the Reference at 1, ECF No. 35.)[3] Therefore, the "actual intent to . . . defraud" element of section 548(a)(1)(A) has been met.

Accordingly, the Trustee has made out his *prima facie* case with respect to the avoidance of BLMIS's transfer of $86,505,850 of fictitious profits.

### III.   LEGACY CAPITAL'S SOLE AFFIRMATIVE DEFENSE HAS ALREADY BEEN DECISIVELY ADDRESSED AND REJECTED

Legacy asserts only one affirmative defense—that it is entitled to prejudgment interest on unnamed state and federal law claims, which would constitute an antecedent debt, and therefore the fictitious profits were received for "value" under 11 U.S.C. §§ 548(c) and (d)(2). This Court and the District Court have already rejected this defense at least *five* times.[4] Even Legacy acknowledges the defense's weakness by confirming that it is powerless unless the District Court's consolidated ruling in the *Antecedent Debt Decision*, is reversed.[5]

As this Court recently concluded in *Cohen*, it is a bedrock principle of fraudulent transfer law that in a case involving a Ponzi scheme "[n]et winners cannot argue that the payment of

---

[3] Also, in its motion to dismiss the Amended Complaint, Legacy argued that it "is not special," but "just another BLMIS victim that was deceived into believing that such a highly regulated and well regarded lion of Wall Street could not possibly be engaged in an undetected fraud on such a massive scale." (Reply Br. in Support of Motion to Dismiss the Amended Complaint at 8, ECFNo. 126.)

[4] *Picard v. Cohen*, Adv. Pro. No. 10-04311 (SMB), 2016 WL 1695296, at *5-14 (Bankr. S.D.N.Y. Apr. 25, 2016); *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff)*, 531 B.R. 439, 462-66 (Bankr. S.D.N.Y. 2015); *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*, 987 F. Supp. 2d 309, 311 (S.D.N.Y. 2013); *Antecedent Debt Decision*, 499 B.R. at 421-25; *Greiff*, 476 B.R. at 725-27.

[5] In fact, if the Court were to countenance Legacy's affirmative defense, no judgment could ever issue in any case where there was a ruling subject to appeal.

10

fictitious profits satisfied and antecedent debt or obligation and provided value within the meaning of Bankruptcy Code § 548(c)." *Cohen*, 2016 WL 1695296, at *11.  Legacy offers no reason for this Court to alter this conclusion or any of its other previous rulings.

## **CONCLUSION**

This "strict liability" case, in which the defendant admitted to receiving the Transfers, and asserted no meritorious defense that could preclude the Trustee's recovery, warrants a judgment on the pleadings.  Accordingly, the Trustee respectfully requests that this Court grant his motion under Fed. R. Civ. P. 12(c) for judgment on the pleadings.

Dated: New York, New York  
       September 7, 2016

Respectfully submitted,

BAKER & HOSTETLER LLP

By:  *s/Oren J. Warshavsky*  
     David J. Sheehan  
     dsheehan@bakerlaw.com  
     Oren J. Warshavsky  
     owarshavsky@bakerlaw.com

45 Rockefeller Plaza, 14th Floor  
New York, NY  10111  
Telephone:   212.589.4200  
Facsimile:    212.589.4201

*Attorneys for Irving H. Picard,*  
*Trustee for the Substantively Consolidated*  
*SIPA Liquidation of Bernard L. Madoff*  
*Investment Securities LLC and the Estate of*  
*Bernard L. Madoff*