# Exhibit C

**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, NY 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Email: dsheehan@bakerlaw.com
Nicholas J. Cremona
Email: ncremona@bakerlaw.com
Dean D. Hunt
Email: dhunt@bakerlaw.com

*Attorneys for Irving H. Picard, Trustee for the
Substantively Consolidated SIPA Liquidation of
Bernard L. Madoff Investment Securities LLC
and the Estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | No. 08-01789 (SMB) |
| Plaintiff-Applicant, | SIPA LIQUIDATION |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and Bernard L. Madoff, | Adv. Pro. No. 10-04717 (SMB) |
| Plaintiff, | |
| v. | |
| THE ESTATE OF WILLIAM DIAMOND; and LESLIE DIAMOND KAPLAN HODES, in her | |

capacity as Personal Representative of the Estate of
William Diamond,

---

## TRUSTEE'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS TO DEFENDANT THE ESTATE OF WILLIAM DIAMOND

PLEASE TAKE NOTICE that in accordance with Rules 26 and 34 of the Federal Rules of Civil Procedure (as amended on December 1, 2015) (the "Federal Rules"), made applicable to this adversary proceeding under the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and the applicable local rules of the United States District Court for the Southern District of New York and this Court (the "Local Rules"), Irving H. Picard, as trustee (the "Trustee") for the substantively consolidated liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa-78*lll* ("SIPA"), and the estate of Bernard L. Madoff, by and through the Trustee's counsel, Baker & Hostetler LLP, hereby demands that Defendant the Estate of William Diamond produce Documents responsive to the requests set forth herein and deliver the same to the office of Baker & Hostetler LLP, c/o Dean D. Hunt, 811 Main Street, Suite 1100, Houston, Texas 77002 within thirty three (33) days of service, on August 1, 2016.

### DEFINITIONS

1.      All definitions set forth in Local Rule 26.3, as adopted by Rule 7026 of the Bankruptcy Rules, apply to these Requests and are as follows:

**Communication**. The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

**Document**. The term "document" is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Fed. R. Civ. P. 34(a)(1)(A). A draft or non-identical copy is a separate document within the meaning of this term.

2

**Identify (with respect to documents).** When referring to documents, "to identify" means to give, to the extent known, the (i) type of document; (ii) general subject matter; (iii) date of the document; and (iv) author(s), addressee(s) and recipient(s). In the alternative, the responding party may produce the documents, together with identifying information sufficient to satisfy Fed. R. Civ. P. 33(d).

**Identify (with respect to persons).** When referring to a person, "to identify" means to give, to the extent known, the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment. Once a person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person.

**Parties.** The terms "plaintiff" and "defendant" as well as a party's full or abbreviated name or a pronoun referring to a party mean the party and, where applicable, its officers, directors, employees, partners, corporate parent, subsidiaries or affiliates. This definition is not intended to impose a discovery obligation on any person who is not a party to the litigation.

**Concerning.** The term "concerning" means relating to, referring to, describing, evidencing or constituting.

2.      "Account" or "Accounts" means BLMIS Account No. 1EM051, as set forth on Exhibit A to the Complaint.

3.      "Adversary Proceeding" means the civil action captioned *Irving H. Picard, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC v. Estate of William Diamond, et al.*, Adv. Pro. No. 10-04717 pending in the United States Bankruptcy Court for the Southern District of New York.

4.      "Applicable Period" means the period beginning January 1, 1993 through December 11, 2009.

5.      "BLMIS" means Bernard L. Madoff Investment Securities LLC, Madoff Securities International Ltd., Madoff Securities International LLC, Bernard L. Madoff, Ruth Madoff, and all affiliated Persons and entities, including, but not limited to, any officers, directors, agents, representatives, employees, partners, parent companies, subsidiaries,

predecessor or successor and related entities, and affiliates of the above specifically identified Persons and entities.

6.    "Decedent" means William Diamond in any capacity, and/or anyone acting on behalf of or for the benefit of William Diamond.

7.    "Defendant" means any of the following individuals or entities, singularly: the Estate of William Diamond and Leslie Diamond Kaplan Hodes, in her capacity as Personal Representative of the Estate of William Diamond.

8.    "Defendants" means collectively, the Estate of William Diamond and Leslie Diamond Kaplan Hodes, in her capacity as Personal Representative of the Estate of William Diamond.

9.    "Estate" means the Estate of William Diamond in any capacity, and/or anyone acting on behalf of or for the benefit of the Estate of William Diamond, including, but not limited to, any current or former personal representatives of the Estate of William Diamond.

10.    "Initial Transfer" means any and all Transfers made by BLMIS or any Person acting on behalf of BLMIS to You or to any Person or entity acting on Defendants' behalf between December 11, 2006 and December 11, 2008.

11.    "Subsequent Transfer" means any Transfer or Transfers of an Initial Transfer (as defined herein) conveyed from You to another Person or entity.

12.    "Transfer" shall conform to the meaning set forth under the Bankruptcy Code, 11 U.S.C. § 101(54): (a) the creation of a lien; (b) the retention of title as a security interest; (c) the foreclosure of a debtor's equity redemption; or (d) each mode, direct and indirect, absolute or conditional, voluntary or involuntary, of disposing of or departing with—(i) property; or (ii) an interest in property.

13.    "You," or "Your" means Decedent and/or the Estate of William Diamond in any capacity, and/or anyone acting on behalf of the Estate of William Diamond, including, but not limited to, Jeffrey Diamond, Leslie Diamond Kaplan Hodes and/or any current or former personal representatives of the Estate of William Diamond.

## INSTRUCTIONS

1.    All provisions and rules of construction set forth in Federal Rules 26 and 34 (as amended on December 1, 2015) and Local Rule 26.3, as adopted by Rule 7026 of the Bankruptcy Rules, apply to these Requests and are as follows:

**All/Any/Each.** The terms "all," "any," and "each" shall each be construed as encompassing any and all.

**And/Or.** The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

**Number.** The use of the singular form of any word includes the plural and vice versa.

2.    In accordance with Federal Rule 34(b)(2)(B) (amended December 1, 2015), object with specificity and state whether any responsive materials are being withheld on the basis of that objection.

3.    In accordance with Federal Rule 34(b)(2)(B) (amended December 1, 2015), the production must be completed either by March 22, 2016 or by another reasonable time specifically identified in the response. When it is necessary to make the production in stages, the response should specify the beginning and end dates of the production.

4.    If the Trustee is requesting Communications Concerning Documents in a Request, the Trustee will so state.

5.    Unless otherwise specified, produce Documents that were created, modified, or existing during the Applicable Period.

6.    If a request calls for Documents concerning a Transfer, Initial Transfer, redemption, or withdrawal from an account, such request includes, but is not limited to, Documents that reflect the account name and number for the account the funds were transferred from and to, method of transfer (*i.e.*, wire, check, etc.), date of, amount and the reason for the Transfer, Initial Transfer, redemption, or withdrawal.

7.    If any Document, or any part thereof, is not produced based on a claim of attorney-client privilege, work-product protection, or any other privilege, subject to an agreement otherwise, then in answer to such Request or part thereof, for each such Document, You must provide a log that:

>  Identifies the type, title and subject matter of the Document;

>  Identifies all authors, addressees, and recipients of the Document (including CCs and BCCs, with descriptive information about such Persons to assess the privilege asserted; and

>  Describes the legal privilege(s) and the factual basis for the claim.

For emails, the log should include log the last-in-time (or top) email in the chain, as well as the identities of any other authors, addressees, and recipients in the chain who are not in the top email.

8.    Do not redact Documents for any reason other than privilege. If Documents are produced with redactions, a log setting forth the information requested in Instruction No. 7 above must be provided.  The Trustee will accept Documents designated <u>not confidential</u> under the June 6, 2011 Litigation Protective Order with redactions for personally identifiable information, provided that you also produce an unredacted version of the Document designated confidential.

9.      Certain instructions for production of Documents are contained in Orders entered

by the Bankruptcy Court on September 17, 2013:  (I) Establishing Procedures for Third-Party

Data Rooms; and (II) Modifying the June 6, 2011 Litigation Protective Order.

Pursuant to those Orders, upon production, Producing Parties shall provide the following

information in a production cover letter, to the extent any of the following information is

applicable:

> (i) the Documents (listed in an Excel file Document-by-Document by Beginning Bates
> and Ending Bates for each Document) that are designated as confidential pursuant to the
> Litigation Protective Order;

> (ii) the Documents (listed in an Excel file Document-by-Document by Beginning Bates
> and Ending Bates for each Document) that are designated confidential pursuant to an
> Individual Confidentiality Standard, if applicable;

> (iii) the Documents (listed in an Excel file Document-by-Document by Beginning Bates
> and Ending Bates for each Document) that should be excluded from the Third-Party Data
> Rooms; and

> (iv) the designated representative authorized for that production to provide consent to the
> disclosure of confidential Documents requested or to object to the disclosure of
> confidential Documents.

Failure to provide such information in a production cover letter shall result in a waiver by the

Producing Parties of:

> (i) any confidential designations;

> (ii) any objections to inclusion of the Documents in the Third-Party Data Rooms; and/or

> (iii) notification that Documents have been requested for disclosure.  For the avoidance of
> doubt, notwithstanding Paragraph 13 of the Order Establishing Procedures for Third-
> Party Data Rooms and Paragraph L of the Order Modifying the June 6, 2011 Litigation
> Protective Order,

Paragraphs 7 and 14 of the Litigation Protective Order continue to govern with respect to:

> (i) inadvertent failure to designate confidential material as confidential or incorrect
> designations of confidential material (Paragraph 7 of the Litigation Protective Order); and

> (ii) inadvertent production or disclosure of any Document or other material otherwise
> protected by the attorney-client privilege, work-product protection or a joint

defense/common interest privilege (Paragraph 14 of the Litigation Protective Order).

## **FORMAT OF PRODUCTION**

1.      All Documents produced to the Trustee shall be provided in either native file ("native") or single-page 300 dpi-resolution group IV TIF format ("tiff") format as specified below, along with appropriately formatted industry-standard database load files, and accompanied by true and correct copies or representations of unaltered attendant metadata. Where Documents are produced in tiff format, each Document shall be produced along with a multi-page, Document-level searchable text file ("searchable text") as rendered by an industry-standard text extraction program in the case of electronic originals, or by an industry-standard Optical Character Recognition ("ocr") program in the case of scanned paper Documents. Searchable text of Documents shall not be produced as fielded data within the ".dat file" as described below.

2.      Database load files and production media structure:  Database load files shall consist of: (i) a comma-delimited values (".dat") file containing: production Document identifier information, data designed to preserve "parent and child" relationships within Document "families," reasonably accessible and properly preserved metadata (or bibliographic coding in the case of paper Documents), custodian or Document source information; and (ii) an Opticon (".opt") file to facilitate the loading of tiff images.  Load files should be provided in a root-level folder named "Data," images shall be provided within a root level "Images" folder containing reasonably structured subfolders, and searchable text files shall be provided in a single root-level "Text" folder.  If any of the Documents produced in response to these requests are designated as confidential pursuant to the Litigation Protective Order, in addition to marking the Documents with the brand "CONFIDENTIAL" or branding the media with the word "CONFIDENTIAL," also include a confidential field within the load file, with a "yes" or "no" indicating whether the

Document has been designated as confidential, as well as native file loading/linking information (where applicable).

3.    <u>Electronic Documents and data, generally</u>:  Documents and other responsive data or materials created, stored, or displayed on electronic or electro-magnetic media shall be produced in the order in which the Documents are or were stored in the ordinary course of business, including all reasonably accessible metadata, custodian or Document source information, and searchable text as to allow the Trustee, through a reasonable and modest effort, to fairly, accurately, and completely access, search, display, comprehend, and assess the Document's true and original content.

4.    <u>Emails and attachments, and other email account-related Documents</u>:    All Documents and accompanying metadata created and/or stored in the ordinary course of business within commercial, off-the-shelf email systems including but not limited to Microsoft Exchange™, Lotus Notes™, or Novell Groupwise™ shall be produced in tiff format, accompanying metadata, and searchable text files or, alternately, in a format that fairly, accurately, and completely represents each Document in such a manner as to make the Document(s) reasonably useable, manageable, and comprehendible by the Trustee.

5.    <u>Documents and data created or stored in or by structured electronic databases</u>: With the exclusion of email and email account-related Documents and data, all Documents and accompanying metadata created and/or stored in structured electronic databases or files shall be produced in a format that enables the Trustee to reasonably manage and import those Documents into a useable, coherent database.  Documents must be accompanied with reasonably detailed documentation explaining each Document's content and format, including but not limited to data

dictionaries and diagrams. Some acceptable formats, if and only if provided with definitive file(s), table(s), and field level schemas include:

    a.    XML format file(s);

    b.    Microsoft SQL database(s);

    c.    Access database(s); and/or

    d.    fixed or variable length ASCII delimited files.

6.    <u>Spreadsheets, multimedia, and non-standard file types</u>: All Documents generated or stored in software such as Microsoft Excel or other commercially available spreadsheet programs, as well as any multimedia files such as audio or video, shall be produced in their native format, along with an accompanying placeholder image in tiff format indicating a native file has been produced. A "Nativelink" entry shall be included in the .dat load file indicating the relative file path to each native file on the production media. To the extent the party has other file types that do not readily or easily and accurately convert to tiff and searchable text, the party may elect to produce those files in native format subject to the other requirements listed herein. Native files may be produced within a separate root-level folder structure on deliverable media entitled "Natives."

7.    <u>"Other" electronic Documents</u>: All other Documents and accompanying metadata and embedded data created or stored in unstructured files generated by commercially available software systems (excluding emails, structured electronic databases, spreadsheets, or multimedia) such as, but not limited to, word processing files (such as Microsoft Word), image files (such as Adobe .pdf files and other formats), and text files shall be produced in tiff and searchable text format in the order the files are or were stored in the ordinary course of business.

8.    <u>Paper Documents</u>: Documents originally created or stored on paper shall be

produced in tiff format. Relationships between Documents shall be identified within the .dat file utilizing Document identifier numbers to express parent Document/child attachment boundaries, folder boundaries, and other groupings. In addition, the searchable text of each Document shall be provided as a multi-page text file as provided for by these requests.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

1.    Documents and Communications between Decedent and/or any other Person regarding the Account and/or Decedent's investments with BLMIS.

2.    Documents, Communications, and/or filings with or to taxing authorities Concerning the Defendants.

3.    Decedent's entire probate file.

4.    Decedent's Last Will and Testament, including any drafts, codicils, or prior versions.

5.    Documents Concerning BLMIS's return on investments.

6.    Documents Concerning any meetings that Decedent and/or anyone acting on William Diamond's behalf attended with a representative of BLMIS or anyone purporting to act on BLMIS's behalf.

7.    Documents Concerning the Account.

8.    Documents Concerning Any Transfers.

9.    Documents Concerning any Subsequent Transfers.

10.    Documents Concerning any deposits into the Account.

11.    Documents Concerning any money that Decedent and/or the Estate received from the Account.

12.    Documents Concerning any knowledge or involvement with the Account by J.T. Shulman & Company, P.C., and/or any other accountants or auditors for Decedent and/or the

Estate, including, but not limited to, Documents Concerning the Account which were created for or by, or that were sent to or received from, any accountants or auditors for Decedent and/or the Estate.

13.    Documents Concerning how Decedent and/or the Estate used, spent, disbursed, distributed, or transferred all or any portion of any withdrawal from the Account.

14.    Documents Concerning any bank accounts and/or brokerage accounts, used by William Diamond during the Applicable Period, that received Transfers from the Account or were used to make deposits into the Account, including, but not limited to, JPMorgan Chase Bank or Chemical Bank, including, but not limited to, Documents reflecting account numbers, account holders and signatories, monthly statements, incoming and outgoing wire transfer records, copies of checks deposited or drawn on any account, correspondence, and account maintenance documents including account opening documents and account closing documents relating to such Transfer or deposit.

15.    Documents You contend support any denials of fact or affirmative defenses asserted in Your Answer to the Complaint.

16.    Documents You contend support the sixth affirmative defense in Your Answer to the Complaint in which You contend that the "Trustee omitted significant deposits and additions to principal necessary to correctly value the accounts."

17.    Documents You contend support the seventh affirmative defense in Your Answer to the Complaint in which You contend that the "if the Trustee had not improperly disallowed profitable trades initially allocated to Defendants and had the Trustee given Defendants credit for the profitable trades that Madoff and BLMIS wrongfully allocated and retained for itself, Defendants would have a positive net equity in their Account."

18.    Documents associated with, but not limited to, pay-on-death accounts, transfer-on-death account, securities accounts, jointly-held (with any other Person) accounts, and/or in-trust-for accounts, into which money or other assets in which Decedent had an interest that were transferred following Decedent's death.

19.    A copy of any state and/or federal tax filings, including, but not limited to, estate tax returns, income tax returns, and/or gift tax returns, related to Decedent and/or the Estate.

20.    Documents Concerning any inventory and/or accounting of the Estate.

21.    Documents Concerning any interest Decedent held in property, whether real or personal, tangible or intangible, either outright or through a beneficial interest in a trust, at Decedent's death.

22.    Documents Concerning all real property transactions occurring after December 2008, in which Decedent and/or the Estate participated, either directly or indirectly, as a seller or buyer.

23.    Documents Concerning the Account or this Adversary Proceeding that have been produced to the Estate or any of its current or former personal representatives by any Person or entity.

Dated:   June 27, 2016

Of Counsel:

**BAKER & HOSTETLER LLP**
811 Main, Suite 1100
Houston, Texas 77002-6111
Telephone: (713)751-1600
Facsimile: (713)751-1717
Dean D. Hunt
Email: dhunt@bakerlaw.com

/s/ Nicholas J. Cremona
David J. Sheehan
Email:  dsheehan@bakerlaw.com
Nicholas J. Cremona
Email: ncremona@bakerlaw.com
**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee for the*
*Substantively Consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities*
*LLC and the Estate of Bernard L. Madoff*

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing was served this 27th day of June, 2016 by electronic mail and First class mail upon the following:

Jeffrey L. Bernfeld
Bernfeld, DeMatteo & Bernfeld, LLP
600 Third Avenue, 18th Floor
New York, NY 10016
Email: jeffreybernfeld@bernfeld-dematteo.com

*Dean D. Hunt w/p(m)*

*Attorneys for Irving H. Picard, Trustee for
the Substantively Consolidated SIPA
Liquidation of Bernard L. Madoff
Investment Securities LLC and the Estate of
Bernard L. Madoff*

**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, NY 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Email: dsheehan@bakerlaw.com
Nicholas J. Cremona
Email: ncremona@bakerlaw.com
Dean D. Hunt
Email: dhunt@bakerlaw.com

*Attorneys for Irving H. Picard, Trustee for the*
*Substantively Consolidated SIPA Liquidation of*
*Bernard L. Madoff Investment Securities LLC*
*and the Estate of Bernard L. Madoff*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | No. 08-01789 (SMB) |
| Plaintiff-Applicant, | SIPA LIQUIDATION |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and Bernard L. Madoff, | Adv. Pro. No. 10-04717 (SMB) |
| Plaintiff, | |
| v. | |
| THE ESTATE OF WILLIAM DIAMOND; and LESLIE DIAMOND KAPLAN HODES, in her | |

capacity as Personal Representative of the Estate of
William Diamond,

## TRUSTEE'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS TO DEFENDANT LESLIE DIAMOND KAPLAN HODES

PLEASE TAKE NOTICE that in accordance with Rules 26 and 34 of the Federal Rules of Civil Procedure (as amended on December 1, 2015) (the "Federal Rules"), made applicable to this adversary proceeding under the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and the applicable local rules of the United States District Court for the Southern District of New York and this Court (the "Local Rules"), Irving H. Picard, as trustee (the "Trustee") for the substantively consolidated liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa-78*lll* ("SIPA"), and the estate of Bernard L. Madoff, by and through the Trustee's counsel, Baker & Hostetler LLP, hereby demands that Defendant Leslie Diamond Kaplan Hodes produce Documents responsive to the requests set forth herein and deliver the same to the office of Baker & Hostetler LLP, c/o Dean D. Hunt, 811 Main Street, Suite 1100, Houston, Texas 77002 within thirty three (33) days of service, on August 1, 2016.

### DEFINITIONS

1.     All definitions set forth in Local Rule 26.3, as adopted by Rule 7026 of the Bankruptcy Rules, apply to these Requests and are as follows:

**Communication**. The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

**Document**. The term "document" is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Fed. R. Civ. P. 34(a)(1)(A). A draft or non-identical copy is a separate document within the meaning of this term.

**Identify (with respect to documents)**. When referring to documents, "to identify" means to give, to the extent known, the (i) type of document; (ii) general subject matter; (iii) date of the document; and (iv) author(s), addressee(s) and recipient(s). In the alternative, the responding party may produce the documents, together with identifying information sufficient to satisfy Fed. R. Civ. P. 33(d).

**Identify (with respect to persons)**. When referring to a person, "to identify" means to give, to the extent known, the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment. Once a person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person.

**Parties**. The terms "plaintiff" and "defendant" as well as a party's full or abbreviated name or a pronoun referring to a party mean the party and, where applicable, its officers, directors, employees, partners, corporate parent, subsidiaries or affiliates. This definition is not intended to impose a discovery obligation on any person who is not a party to the litigation.

**Concerning.** The term "concerning" means relating to, referring to, describing, evidencing or constituting.

2.      "Account" or "Accounts" means BLMIS Account No. 1EM051, as set forth on Exhibit A to the Complaint.

3.      "Adversary Proceeding" means the civil action captioned *Irving H. Picard, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC v. Estate of William Diamond, et al.*, Adv. Pro. No. 10-04717 pending in the United States Bankruptcy Court for the Southern District of New York.

4.      "Applicable Period" means the period beginning January 1, 1993 through December 11, 2009.

5.      "BLMIS" means Bernard L. Madoff Investment Securities LLC, Madoff Securities International Ltd., Madoff Securities International LLC, Bernard L. Madoff, Ruth Madoff, and all affiliated Persons and entities, including, but not limited to, any officers, directors, agents, representatives, employees, partners, parent companies, subsidiaries,

3

predecessor or successor and related entities, and affiliates of the above specifically identified Persons and entities.

6.    "Decedent" means William Diamond in any capacity, and/or anyone acting on behalf of or for the benefit of William Diamond.

7.    "Defendant" means any of the following individuals or entities, singularly: the Estate of William Diamond and Leslie Diamond Kaplan Hodes, in her capacity as Personal Representative of the Estate of William Diamond.

8.    "Defendants" means collectively, the Estate of William Diamond and Leslie Diamond Kaplan Hodes, in her capacity as Personal Representative of the Estate of William Diamond.

9.    "Estate" means the Estate of William Diamond in any capacity, and/or anyone acting on behalf of or for the benefit of the Estate of William Diamond, including, but not limited to, any current or former personal representatives of the Estate of William Diamond.

10.    "Initial Transfer" means any and all Transfers made by BLMIS or any Person acting on behalf of BLMIS to You or to any Person or entity acting on Defendants' behalf between December 11, 2006 and December 11, 2008.

11.    "Subsequent Transfer" means any Transfer or Transfers of an Initial Transfer (as defined herein) conveyed from You to another Person or entity.

12.    "Transfer" shall conform to the meaning set forth under the Bankruptcy Code, 11 U.S.C. § 101(54): (a) the creation of a lien; (b) the retention of title as a security interest; (c) the foreclosure of a debtor's equity redemption; or (d) each mode, direct and indirect, absolute or conditional, voluntary or involuntary, of disposing of or departing with—(i) property; or (ii) an interest in property.

13.   "You" or "Your" means Leslie Diamond Kaplan Hodes, in her capacity as Personal Representative of the Estate of William Diamond, and/or anyone acting on Leslie Diamond Kaplan Hodes's behalf.

## INSTRUCTIONS

1.   All provisions and rules of construction set forth in Federal Rules 26 and 34 (as amended on December 1, 2015) and Local Rule 26.3, as adopted by Rule 7026 of the Bankruptcy Rules, apply to these Requests and are as follows:

**All/Any/Each.** The terms "all," "any," and "each" shall each be construed as encompassing any and all.

**And/Or.** The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

**Number**. The use of the singular form of any word includes the plural and vice versa.

2.   In accordance with Federal Rule 34(b)(2)(B) (amended December 1, 2015), object with specificity and state whether any responsive materials are being withheld on the basis of that objection.

3.   In accordance with Federal Rule 34(b)(2)(B) (amended December 1, 2015), the production must be completed either by March 22, 2016 or by another reasonable time specifically identified in the response. When it is necessary to make the production in stages, the response should specify the beginning and end dates of the production.

4.   If the Trustee is requesting Communications Concerning Documents in a Request, the Trustee will so state.

5.   Unless otherwise specified, produce Documents that were created, modified, or existing during the Applicable Period.

6.    If a request calls for Documents concerning a Transfer, Initial Transfer, redemption, or withdrawal from an account, such request includes, but is not limited to, Documents that reflect the account name and number for the account the funds were transferred from and to, method of transfer (*i.e.*, wire, check, etc.), date of, amount and the reason for the Transfer, Initial Transfer, redemption, or withdrawal.

7.    If any Document, or any part thereof, is not produced based on a claim of attorney-client privilege, work-product protection, or any other privilege, subject to an agreement otherwise, then in answer to such Request or part thereof, for each such Document, You must provide a log that:

> Identifies the type, title and subject matter of the Document;

> Identifies all authors, addressees, and recipients of the Document (including CCs and BCCs, with descriptive information about such Persons to assess the privilege asserted; and

> Describes the legal privilege(s) and the factual basis for the claim.

For emails, the log should include log the last-in-time (or top) email in the chain, as well as the identities of any other authors, addressees, and recipients in the chain who are not in the top email.

8.    Do not redact Documents for any reason other than privilege. If Documents are produced with redactions, a log setting forth the information requested in Instruction No. 7 above must be provided.  The Trustee will accept Documents designated <u>not confidential</u> under the June 6, 2011 Litigation Protective Order with redactions for personally identifiable information, provided that you also produce an unredacted version of the Document designated confidential.

9.      Certain instructions for production of Documents are contained in Orders entered by the Bankruptcy Court on September 17, 2013:   (I) Establishing Procedures for Third-Party Data Rooms; and (II) Modifying the June 6, 2011 Litigation Protective Order.

Pursuant to those Orders, upon production, Producing Parties shall provide the following information in a production cover letter, to the extent any of the following information is applicable:

(i) the Documents (listed in an Excel file Document-by-Document by Beginning Bates and Ending Bates for each Document) that are designated as confidential pursuant to the Litigation Protective Order;

(ii) the Documents (listed in an Excel file Document-by-Document by Beginning Bates and Ending Bates for each Document) that are designated confidential pursuant to an Individual Confidentiality Standard, if applicable;

(iii) the Documents (listed in an Excel file Document-by-Document by Beginning Bates and Ending Bates for each Document) that should be excluded from the Third-Party Data Rooms; and

(iv) the designated representative authorized for that production to provide consent to the disclosure of confidential Documents requested or to object to the disclosure of confidential Documents.

Failure to provide such information in a production cover letter shall result in a waiver by the Producing Parties of:

(i) any confidential designations;

(ii) any objections to inclusion of the Documents in the Third-Party Data Rooms; and/or

(iii) notification that Documents have been requested for disclosure.  For the avoidance of doubt, notwithstanding Paragraph 13 of the Order Establishing Procedures for Third-Party Data Rooms and Paragraph L of the Order Modifying the June 6, 2011 Litigation Protective Order,

Paragraphs 7 and 14 of the Litigation Protective Order continue to govern with respect to:

(i) inadvertent failure to designate confidential material as confidential or incorrect designations of confidential material (Paragraph 7 of the Litigation Protective Order); and

(ii) inadvertent production or disclosure of any Document or other material otherwise protected by the attorney-client privilege, work-product protection or a joint

defense/common interest privilege (Paragraph 14 of the Litigation Protective Order).

## FORMAT OF PRODUCTION

1.     All Documents produced to the Trustee shall be provided in either native file ("native") or single-page 300 dpi-resolution group IV TIF format ("tiff") format as specified below, along with appropriately formatted industry-standard database load files, and accompanied by true and correct copies or representations of unaltered attendant metadata. Where Documents are produced in tiff format, each Document shall be produced along with a multi-page, Document-level searchable text file ("searchable text") as rendered by an industry-standard text extraction program in the case of electronic originals, or by an industry-standard Optical Character Recognition ("ocr") program in the case of scanned paper Documents. Searchable text of Documents shall not be produced as fielded data within the ".dat file" as described below.

2.     Database load files and production media structure:  Database load files shall consist of: (i) a comma-delimited values (".dat") file containing: production Document identifier information, data designed to preserve "parent and child" relationships within Document "families," reasonably accessible and properly preserved metadata (or bibliographic coding in the case of paper Documents), custodian or Document source information; and (ii) an Opticon (".opt") file to facilitate the loading of tiff images.  Load files should be provided in a root-level folder named "Data," images shall be provided within a root level "Images" folder containing reasonably structured subfolders, and searchable text files shall be provided in a single root-level "Text" folder.  If any of the Documents produced in response to these requests are designated as confidential pursuant to the Litigation Protective Order, in addition to marking the Documents with the brand "CONFIDENTIAL" or branding the media with the word "CONFIDENTIAL," also include a confidential field within the load file, with a "yes" or "no" indicating whether the

Document has been designated as confidential, as well as native file loading/linking information (where applicable).

3.    <u>Electronic Documents and data, generally</u>:  Documents and other responsive data or materials created, stored, or displayed on electronic or electro-magnetic media shall be produced in the order in which the Documents are or were stored in the ordinary course of business, including all reasonably accessible metadata, custodian or Document source information, and searchable text as to allow the Trustee, through a reasonable and modest effort, to fairly, accurately, and completely access, search, display, comprehend, and assess the Document's true and original content.

4.    <u>Emails and attachments, and other email account-related Documents</u>:  All Documents and accompanying metadata created and/or stored in the ordinary course of business within commercial, off-the-shelf email systems including but not limited to Microsoft Exchange™, Lotus Notes™, or Novell Groupwise™ shall be produced in tiff format, accompanying metadata, and searchable text files or, alternately, in a format that fairly, accurately, and completely represents each Document in such a manner as to make the Document(s) reasonably useable, manageable, and comprehendible by the Trustee.

5.    <u>Documents and data created or stored in or by structured electronic databases</u>: With the exclusion of email and email account-related Documents and data, all Documents and accompanying metadata created and/or stored in structured electronic databases or files shall be produced in a format that enables the Trustee to reasonably manage and import those Documents into a useable, coherent database.  Documents must be accompanied with reasonably detailed documentation explaining each Document's content and format, including but not limited to data

dictionaries and diagrams. Some acceptable formats, if and only if provided with definitive file(s), table(s), and field level schemas include:

    a.     XML format file(s);

    b.     Microsoft SQL database(s);

    c.     Access database(s); and/or

    d.     fixed or variable length ASCII delimited files.

6.    <u>Spreadsheets, multimedia, and non-standard file types</u>: All Documents generated or stored in software such as Microsoft Excel or other commercially available spreadsheet programs, as well as any multimedia files such as audio or video, shall be produced in their native format, along with an accompanying placeholder image in tiff format indicating a native file has been produced. A "Nativelink" entry shall be included in the .dat load file indicating the relative file path to each native file on the production media. To the extent the party has other file types that do not readily or easily and accurately convert to tiff and searchable text, the party may elect to produce those files in native format subject to the other requirements listed herein. Native files may be produced within a separate root-level folder structure on deliverable media entitled "Natives."

7.    <u>"Other" electronic Documents</u>: All other Documents and accompanying metadata and embedded data created or stored in unstructured files generated by commercially available software systems (excluding emails, structured electronic databases, spreadsheets, or multimedia) such as, but not limited to, word processing files (such as Microsoft Word), image files (such as Adobe .pdf files and other formats), and text files shall be produced in tiff and searchable text format in the order the files are or were stored in the ordinary course of business.

8.    <u>Paper Documents</u>: Documents originally created or stored on paper shall be

produced in tiff format. Relationships between Documents shall be identified within the .dat file

utilizing Document identifier numbers to express parent Document/child attachment boundaries,

folder boundaries, and other groupings. In addition, the searchable text of each Document shall

be provided as a multi-page text file as provided for by these requests.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

1.    Documents and Communications between Decedent and/or any other Person

regarding the Account and/or William Diamond's investments with BLMIS.

2.    Documents, Communications, and/or filings with or to taxing authorities

Concerning the Defendants.

3.    Documents Concerning BLMIS's return on investments.

4.    Documents Concerning any meetings that Decedent and/or anyone acting on

Decedent's behalf attended with a representative of BLMIS or anyone purporting to act on

BLMIS's behalf.

5.    Documents Concerning the Account.

6.    Documents Concerning Any Transfers.

7.    Documents Concerning any Subsequent Transfers.

8.    Documents Concerning any deposits into the Account.

9.    Documents Concerning any money that Decedent and/or the Estate received from

the Account.

10.    Documents Concerning any knowledge or involvement with the Account by J.T.

Shulman & Company, P.C., and/or any other accountants or auditors for Decedent and/or the

Estate, including, but not limited to, all Documents Concerning the Account which were created

for or by, or that were sent to or received from, any accountants or auditors for Decedent and/or

the Estate.

11.    Documents Concerning how Decedent and/or the Estate used, spent, disbursed, distributed, or transferred all or any portion of any withdrawal from the Account.

12.    Documents Concerning any bank accounts and/or brokerage accounts, used by Decedent during the Applicable Period, that received Transfers from the Account or were used to make deposits into the Account, including, but not limited to, JPMorgan Chase Bank or Chemical Bank, including, but not limited to, Documents reflecting account numbers, account holders and signatories, monthly statements, incoming and outgoing wire transfer records, copies of checks deposited or drawn on any account, correspondence, and account maintenance documents including account opening documents and account closing documents relating to such Transfer or deposit.

13.    Documents You and/or the Estate contend support any denials of fact or affirmative defenses asserted in Your Answer to the Complaint.

14.    Documents You and/or the Estate contend support the sixth affirmative defense in Your Answer to the Complaint in which You contend that the "Trustee omitted significant deposits and additions to principal necessary to correctly value the accounts."

15.    Documents You and/or the Estate contend support the seventh affirmative defense in Your Answer to the Complaint in which You contend that the "if the Trustee had not improperly disallowed profitable trades initially allocated to Defendants and had the Trustee given Defendants credit for the profitable trades that Madoff and BLMIS wrongfully allocated and retained for itself, Defendants would have a positive net equity in their Account."

16.    Documents associated with, but not limited to, pay-on-death accounts, transfer-on-death account, securities accounts, jointly-held (with any other Person) accounts, and/or in-

trust-for accounts, into which money or other assets in which Decedent had an interest that were transferred following Decedent's death.

17.    A copy of any state and/or federal tax filings, including, but not limited to, estate tax returns, income tax returns, and/or gift tax returns, related to Decedent and/or the Estate.

18.    Documents Concerning any inventory and/or accounting of the Estate.

19.    Documents Concerning any interest Decedent held in property, whether real or personal, tangible or intangible, either outright or through a beneficial interest in a trust, at Decedent's death.

20.    Documents Concerning all real property transactions occurring after December 2008, in which Decedent and/or the Estate participated, either directly or indirectly, as a seller or buyer.

21.    Documents Concerning the Account or this Adversary Proceeding that have been produced to You or the Estate by any Person or entity.

22.    Documents You identified, reviewed, prepared, or consulted in responding to discovery in this Adversary Proceeding.

Dated:   June 27, 2016

Of Counsel:

**BAKER & HOSTETLER LLP**
811 Main, Suite 1100
Houston, Texas 77002-6111
Telephone: (713)751-1600
Facsimile: (713)751-1717
Dean D. Hunt
Email: dhunt@bakerlaw.com

/s/ Nicholas J. Cremona
David J. Sheehan
Email:  dsheehan@bakerlaw.com
Nicholas J. Cremona
Email:  ncremona@bakerlaw.com
**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee for the*
*Substantively Consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities*
*LLC and the Estate of Bernard L. Madoff*

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing was served this 27th day of June, 2016 by electronic mail and First class mail upon the following:

Jeffrey L. Bernfeld
Bernfeld, DeMatteo & Bernfeld, LLP
600 Third Avenue, 18th Floor
New York, NY 10016
Email: jeffreybernfeld@bernfeld-dematteo.com

*Attorneys for Irving H. Picard, Trustee for*
*the Substantively Consolidated SIPA*
*Liquidation of Bernard L. Madoff*
*Investment Securities LLC and the Estate of*
*Bernard L. Madoff*

**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, NY 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Email: dsheehan@bakerlaw.com
Nicholas J. Cremona
Email: ncremona@bakerlaw.com
Dean D. Hunt
Email: dhunt@bakerlaw.com

*Attorneys for Irving H. Picard, Trustee for the*
*Substantively Consolidated SIPA Liquidation of*
*Bernard L. Madoff Investment Securities LLC*
*and the Estate of Bernard L. Madoff*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | No. 08-01789 (SMB) |
| Plaintiff-Applicant, | SIPA LIQUIDATION |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and Bernard L. Madoff, | Adv. Pro. No. 10-04916 (SMB) |
| Plaintiff, | |
| v. | |
| SUSAN ANDELMAN, | |

Defendant.

## TRUSTEE'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS TO DEFENDANT SUSAN ANDELMAN

PLEASE TAKE NOTICE that in accordance with Rules 26 and 34 of the Federal Rules of Civil Procedure (as amended on December 1, 2015) (the "Federal Rules"), made applicable to this adversary proceeding under the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and the applicable local rules of the United States District Court for the Southern District of New York and this Court (the "Local Rules"), Irving H. Picard (the "Trustee"), as trustee for the substantively consolidated liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa-78*lll* ("SIPA"), and the estate of Bernard L. Madoff, by and through the Trustee's counsel, Baker & Hostetler LLP, hereby demands that Defendant Susan Andelman produce Documents responsive to the requests set forth herein and deliver the same to the office of Baker & Hostetler LLP, c/o Dean D. Hunt, 811 Main Street, Suite 1100, Houston, Texas 77002 within thirty three (33) days of service, on August 8, 2016.

### DEFINITIONS

1.    All definitions set forth in Local Rule 26.3, as adopted by Rule 7026 of the Bankruptcy Rules, apply to these Requests and are as follows:

**Communication**. The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

**Document**. The term "document" is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Fed. R. Civ. P. 34(a)(1)(A). A draft or non-identical copy is a separate document within the meaning of this term.

**Identify (with respect to documents)**. When referring to documents, "to identify" means to give, to the extent known, the (i) type of document; (ii) general subject matter; (iii) date of the document; and (iv) author(s), addressee(s) and recipient(s). In the

2

alternative, the responding party may produce the documents, together with identifying information sufficient to satisfy Fed. R. Civ. P. 33(d).

**Identify (with respect to persons).** When referring to a person, "to identify" means to give, to the extent known, the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment. Once a person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person.

**Parties.** The terms "plaintiff" and "defendant" as well as a party's full or abbreviated name or a pronoun referring to a party mean the party and, where applicable, its officers, directors, employees, partners, corporate parent, subsidiaries or affiliates. This definition is not intended to impose a discovery obligation on any person who is not a party to the litigation.

**Concerning.** The term "concerning" means relating to, referring to, describing, evidencing or constituting.

2.      "Account" means BLMIS Account No. 1ZA112, as set forth in Exhibit A to the Complaint.

3.      "Adversary Proceeding" means the civil action captioned *Irving H. Picard, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC v. Susan Andelman*, Adv. Pro. No. 10-04916 (SMB), pending in the United States Bankruptcy Court for the Southern District of New York.

4.      "Applicable Period" means the period beginning January 1, 1992 through December 31, 2009.

5.      "BLMIS" means Bernard L. Madoff Investment Securities LLC, Madoff Securities International Ltd., Madoff Securities International LLC, Bernard L. Madoff, Ruth Madoff, and all affiliated Persons and entities, including, but not limited to, any officers, directors, agents, representatives, employees, partners, parent companies, subsidiaries, predecessor or successor and related entities, and affiliates of the above specifically identified Persons and entities.

6.      "Defendant" means Susan Andelman.

7.      "Initial Transfer" means any and all Transfers made by BLMIS or any Person acting on behalf of BLMIS to Susan Andelman or to any Person or entity acting on Susan Andelman's behalf between December 11, 2006 and December 11, 2008.

8.      "Subsequent Transfer" means any Transfer or Transfers of an Initial Transfer (as defined herein) conveyed by Susan Andelman to another Person or entity.

9.      "Transfer" shall conform to the meaning set forth under the Bankruptcy Code, 11 U.S.C. § 101(54): (a) the creation of a lien; (b) the retention of title as a security interest; (c) the foreclosure of a debtor's equity redemption; or (d) each mode, direct and indirect, absolute or conditional, voluntary or involuntary, of disposing of or departing with—(i) property; or (ii) an interest in property.

10.    "You" or "Your" means Susan Andelman, and/or anyone acting on behalf of or for the benefit of Susan Andelman.

## INSTRUCTIONS

1.    All provisions and rules of construction set forth in Federal Rules 26 and 34 (as amended on December 1, 2015) and Local Rule 26.3, as adopted by Rule 7026-1 of the Bankruptcy Rules, apply to these Requests and are as follows:

**All/Any/Each.** The terms "all," "any," and "each" shall each be construed as encompassing any and all.

**And/Or.** The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

**Number.** The use of the singular form of any word includes the plural and vice versa.

2.    In accordance with Federal Rule 34(b)(2)(B) (amended December 1, 2015), object with specificity and state whether any responsive materials are being withheld on the basis of that objection.

3.    In accordance with Federal Rule 34(b)(2)(B) (amended December 1, 2015), the production must be completed either by August 8, 2016 or by another reasonable time specifically identified in the response. When it is necessary to make the production in stages, the response should specify the beginning and end dates of the production.

4.    If the Trustee is requesting Communications Concerning Documents in a Request, the Trustee will so state.

5.    Unless otherwise specified, produce Documents that were created, modified, or existing during the Applicable Period.

6.    If a request calls for Documents concerning a Transfer, Initial Transfer, redemption, or withdrawal from an account, such request includes, but is not limited to, Documents that reflect the account name and number for the account the funds were transferred from and to, method of transfer (*i.e.*, wire, check, etc.), date of, amount and the reason for the Transfer, Initial Transfer, redemption, or withdrawal.

7.    If any Document, or any part thereof, is not produced based on a claim of attorney-client privilege, work-product protection, or any other privilege, subject to an agreement otherwise, then in answer to such Request or part thereof, for each such Document, You must provide a log that:

Identifies the type, title and subject matter of the Document;

Identifies all authors, addressees, and recipients of the Document (including CCs

and BCCs, with descriptive information about such Persons to assess the

privilege asserted; and

Describes the legal privilege(s) and the factual basis for the claim.

For emails, the log should include log the last-in-time (or top) email in the chain, as well as the identities of any other authors, addressees, and recipients in the chain who are not in the top email.

8.    Do not redact Documents for any reason other than privilege. If Documents are produced with redactions, a log setting forth the information requested in Instruction No. 7 above must be provided. The Trustee will accept Documents designated not confidential under the June 6, 2011 Litigation Protective Order with redactions for personally identifiable information, provided that you also produce an unredacted version of the Document designated confidential.

9.    Certain instructions for production of Documents are contained in Orders entered by the Bankruptcy Court on September 17, 2013: (I) Establishing Procedures for Third-Party Data Rooms; and (II) Modifying the June 6, 2011 Litigation Protective Order.

Pursuant to those Orders, upon production, Producing Parties shall provide the following information in a production cover letter, to the extent any of the following information is applicable:

(i) the Documents (listed in an Excel file Document-by-Document by Beginning Bates and Ending Bates for each Document) that are designated as confidential pursuant to the Litigation Protective Order;

(ii) the Documents (listed in an Excel file Document-by-Document by Beginning Bates and Ending Bates for each Document) that are designated confidential pursuant to an Individual Confidentiality Standard, if applicable;

(iii) the Documents (listed in an Excel file Document-by-Document by Beginning Bates and Ending Bates for each Document) that should be excluded from the Third-Party Data Rooms; and

(iv) the designated representative authorized for that production to provide consent to the disclosure of confidential Documents requested or to object to the disclosure of confidential Documents.

Failure to provide such information in a production cover letter shall result in a waiver by the Producing Parties of:

(i) any confidential designations;

(ii) any objections to inclusion of the Documents in the Third-Party Data Rooms; and/or

(iii) notification that Documents have been requested for disclosure. For the avoidance of doubt, notwithstanding Paragraph 13 of the Order Establishing Procedures for Third-Party Data Rooms and Paragraph L of the Order Modifying the June 6, 2011 Litigation Protective Order,

Paragraphs 7 and 14 of the Litigation Protective Order continue to govern with respect to:

(i) inadvertent failure to designate confidential material as confidential or incorrect designations of confidential material (Paragraph 7 of the Litigation Protective Order); and

(ii) inadvertent production or disclosure of any Document or other material otherwise

protected by the attorney-client privilege, work-product protection or a joint defense/common interest privilege (Paragraph 14 of the Litigation Protective Order).

## FORMAT OF PRODUCTION

1.    All Documents produced to the Trustee shall be provided in either native file ("native") or single-page 300 dpi-resolution group IV TIF format ("tiff") format as specified below, along with appropriately formatted industry-standard database load files, and accompanied by true and correct copies or representations of unaltered attendant metadata. Where Documents are produced in tiff format, each Document shall be produced along with a multi-page, Document-level searchable text file ("searchable text") as rendered by an industry-standard text extraction program in the case of electronic originals, or by an industry-standard Optical Character Recognition ("ocr") program in the case of scanned paper Documents. Searchable text of Documents shall not be produced as fielded data within the ".dat file" as described below.

2.    Database load files and production media structure:  Database load files shall consist of: (i) a comma-delimited values (".dat") file containing: production Document identifier information, data designed to preserve "parent and child" relationships within Document "families," reasonably accessible and properly preserved metadata (or bibliographic coding in the case of paper Documents), custodian or Document source information; and (ii) an Opticon (".opt") file to facilitate the loading of tiff images.  Load files should be provided in a root-level folder named "Data," images shall be provided within a root level "Images" folder containing reasonably structured subfolders, and searchable text files shall be provided in a single root-level "Text" folder.  If any of the Documents produced in response to these requests are designated as confidential pursuant to the Litigation Protective Order, in addition to marking the Documents with the brand "CONFIDENTIAL" or branding the media with the word "CONFIDENTIAL," also include a confidential field within the load file, with a "yes" or "no" indicating whether the Document has been designated as confidential, as well as native file loading/linking information (where applicable).

3.    Electronic Documents and data, generally:  Documents and other responsive data or materials created, stored, or displayed on electronic or electro-magnetic media shall be produced in the order in which the Documents are or were stored in the ordinary course of business, including all reasonably accessible metadata, custodian or Document source information, and searchable text as to allow the Trustee, through a reasonable and modest effort, to fairly, accurately, and completely access, search, display, comprehend, and assess the Document's true and original content.

4.    Emails and attachments, and other email account-related Documents:  All Documents and accompanying metadata created and/or stored in the ordinary course of business within commercial, off-the-shelf email systems including but not limited to Microsoft Exchange™, Lotus Notes™, or Novell Groupwise™ shall be produced in tiff format, accompanying metadata, and searchable text files or, alternately, in a format that fairly, accurately, and completely represents each Document in such a manner as to make the Document(s) reasonably useable, manageable, and comprehendible by the Trustee.

5.    Documents and data created or stored in or by structured electronic databases:  With the exclusion of email and email account-related Documents and data, all Documents and accompanying metadata created and/or stored in structured electronic databases or files shall be

produced in a format that enables the Trustee to reasonably manage and import those Documents into a useable, coherent database. Documents must be accompanied with reasonably detailed documentation explaining each Document's content and format, including but not limited to data dictionaries and diagrams. Some acceptable formats, if and only if provided with definitive file(s), table(s), and field level schemas include:

    a.    XML format file(s);

    b.    Microsoft SQL database(s);

    c.    Access database(s); and/or

    d.    fixed or variable length ASCII delimited files.

6.    Spreadsheets, multimedia, and non-standard file types: All Documents generated or stored in software such as Microsoft Excel or other commercially available spreadsheet programs, as well as any multimedia files such as audio or video, shall be produced in their native format, along with an accompanying placeholder image in tiff format indicating a native file has been produced. A "Nativelink" entry shall be included in the .dat load file indicating the relative file path to each native file on the production media. To the extent the party has other file types that do not readily or easily and accurately convert to tiff and searchable text, the party may elect to produce those files in native format subject to the other requirements listed herein. Native files may be produced within a separate root-level folder structure on deliverable media entitled "Natives."

7.    "Other" electronic Documents: All other Documents and accompanying metadata and embedded data created or stored in unstructured files generated by commercially available software systems (excluding emails, structured electronic databases, spreadsheets, or multimedia) such as, but not limited to, word processing files (such as Microsoft Word), image files (such as Adobe .pdf files and other formats), and text files shall be produced in tiff and searchable text format in the order the files are or were stored in the ordinary course of business.

8.    Paper Documents: Documents originally created or stored on paper shall be produced in tiff format. Relationships between Documents shall be identified within the .dat file utilizing Document identifier numbers to express parent Document/child attachment boundaries, folder boundaries, and other groupings. In addition, the searchable text of each Document shall be provided as a multi-page text file as provided for by these requests.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

1.    Monthly Account statements.

2.    Communications between You and BLMIS Concerning the Account, including Transfers to and from the Account.

3.    Your bank and/or brokerage account records, including, but not limited to, those from Shawmut Bank n/k/a Bank of America, Framingham Trust Company n/k/a Bank of America, Fidelity Trust Reserve n/k/a Wells Fargo Bank, and TD Bank, for the period between

and including December 11, 2006 and December 31, 2009, for any accounts that received Initial

Transfers, including monthly statements, cancelled checks, and incoming/outgoing wire transfer

records.

4.      Documents and Communications sufficient to identify any Subsequent Transfer,

in whole or in part, of any Initial Transfer from the Account, including the amount, date, and

recipient of any Subsequent Transfer.

5.      Documents sufficient to identify any money, property, and/or anything else of

value provided by You to BLMIS in exchange for any Initial Transfer.

6.      Documents sufficient to identify any money, property, and/or anything else of

value provided by any Person or entity to You in exchange for any Subsequent Transfer.

7.      Documents You contend support any denials of fact or affirmative defenses

asserted in Your answer to the Complaint.

8.      Documents You intend to rely upon in connection with the defense of the claims

asserted in the Complaint.

9.      Documents Concerning the Account or this Action that you have received from

any other Person or entity, whether received by You in response to a subpoena or otherwise.

10.     Documents sufficient to Identify any refund(s) requested or received by You of

any state or federal taxes paid in connection with the Account.

11.     Documents You contend support the sixth affirmative defense in Your Answer to

the Complaint in which You contend that the "Trustee omitted significant deposits and additions

to principal necessary to correctly value the accounts."

12.     Documents You contend support the seventh affirmative defense in Your Answer

to the Complaint in which You contend that the "if the Trustee had not improperly disallowed

profitable trades initially allocated to Defendant and had the Trustee given Defendant credit given Defendants' credit for the profitable trades that Madoff and BLMIS wrongfully allocated and retained for itself, Defendant would have a positive net equity in her Account."

13.      Documents Concerning the Account that are maintained by any Person or entity including, but not limited to, You, Steven Andelman, Stephanie Andelman, Shawmut Bank n/k/a Bank of America, Fidelity Trust Reserve n/k/a Wells Fargo Bank, Framingham Trust Company n/k/a Bank of America, or any other Person or entity that may have discoverable information concerning the Accounts or this Adversary Proceeding.

14.      Documents You identified, reviewed, prepared, or consulted in responding to discovery in this Adversary Proceeding.

Dated:   July 5, 2016

Of Counsel:

**BAKER & HOSTETLER LLP**
811 Main, Suite 1100
Houston, Texas 77002-6111
Telephone: (713)751-1600
Facsimile: (713)751-1717
Dean D. Hunt
Email: dhunt@bakerlaw.com

By: /s/ *Nicholas Cremona*
**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: 212.589.4200
Facsimile: 212.589.4201
David J. Sheehan
Email: dsheehan@bakerlaw.com
Nicholas Cremona
Email: ncremona@bakerlaw.com

*Attorneys for Irving H. Picard, Trustee for the*
*Substantively Consolidated SIPA Liquidation of*
*Bernard L. Madoff Investment Securities LLC*
*and the Estate of Bernard L. Madoff*

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing was served this 5th day of July, 2016 by electronic mail and First class mail upon the following:

Jeffrey L. Bernfeld
Bernfeld, DeMatteo & Bernfeld, LLP
600 Third Avenue, 15th Floor
New York, NY 10016
Email: jeffreybernfeld@bernfeld-dematteo.com

*Attorneys for Irving H. Picard, Trustee for
the Substantively Consolidated SIPA
Liquidation of Bernard L. Madoff
Investment Securities LLC and the Estate of
Bernard L. Madoff*

**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, NY 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Email: dsheehan@bakerlaw.com
Nicholas J. Cremona
Email: ncremona@bakerlaw.com
Dean D. Hunt
Email: dhunt@bakerlaw.com

*Attorneys for Irving H. Picard, Trustee for the*
*Substantively Consolidated SIPA Liquidation of*
*Bernard L. Madoff Investment Securities LLC*
*and the Estate of Bernard L. Madoff*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | No. 08-01789 (SMB) |
| Plaintiff-Applicant, | SIPA LIQUIDATION |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and Bernard L. Madoff, | Adv. Pro. No. 10-04884 (SMB) |
| Plaintiff, | |
| v. | |
| STEVEN ANDELMAN, | |

Defendant. |

## TRUSTEE'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS TO DEFENDANT STEVEN ANDELMAN

PLEASE TAKE NOTICE that in accordance with Rules 26 and 34 of the Federal Rules of Civil Procedure (as amended on December 1, 2015) (the "Federal Rules"), made applicable to this adversary proceeding under the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and the applicable local rules of the United States District Court for the Southern District of New York and this Court (the "Local Rules"), Irving H. Picard, as trustee (the "Trustee") for the substantively consolidated liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa-78*lll* ("SIPA"), and the estate of Bernard L. Madoff, by and through the Trustee's counsel, Baker & Hostetler LLP, hereby demands that Defendant Steven Andelman produce Documents responsive to the requests set forth herein and deliver the same to the office of Baker & Hostetler LLP, c/o Dean D. Hunt, 811 Main Street, Suite 1100, Houston, Texas 77002 within thirty three (33) days of service, on August 8, 2016.

### DEFINITIONS

1.      All definitions set forth in Local Rule 26.3, as adopted by Rule 7026 of the Bankruptcy Rules, apply to these Requests and are as follows:

**Communication**. The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

**Document**. The term "document" is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Fed. R. Civ. P. 34(a)(1)(A). A draft or non-identical copy is a separate document within the meaning of this term.

**Identify (with respect to documents)**. When referring to documents, "to identify" means to give, to the extent known, the (i) type of document; (ii) general subject matter;

2

(iii) date of the document; and (iv) author(s), addressee(s) and recipient(s). In the alternative, the responding party may produce the documents, together with identifying information sufficient to satisfy Fed. R. Civ. P. 33(d).

**Identify (with respect to persons)**. When referring to a person, "to identify" means to give, to the extent known, the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment. Once a person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person.

**Parties**. The terms "plaintiff" and "defendant" as well as a party's full or abbreviated name or a pronoun referring to a party mean the party and, where applicable, its officers, directors, employees, partners, corporate parent, subsidiaries or affiliates. This definition is not intended to impose a discovery obligation on any person who is not a party to the litigation.

**Concerning**. The term "concerning" means relating to, referring to, describing, evidencing or constituting.

2.    "Account" or "Accounts" means BLMIS Account Nos. 1A0102 and 1ZA111, as set forth in Exhibit A to the Complaint.

3.    "Adversary Proceeding" means the civil action captioned *Irving H. Picard, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC v. Steven Andelman*, Adv. Pro. No. 10-04884 pending in the United States Bankruptcy Court for the Southern District of New York.

4.    "Applicable Period" means the period beginning January 1993 through December 31, 2009.

5.    "BLMIS" means Bernard L. Madoff Investment Securities LLC, Madoff Securities International Ltd., Madoff Securities International LLC, Bernard L. Madoff, Ruth Madoff, and all affiliated Persons and entities, including, but not limited to, any officers, directors, agents, representatives, employees, partners, parent companies, subsidiaries, predecessor or successor and related entities, and affiliates of the above specifically identified Persons and entities.

3

6.    "Defendant" means Steven Andelman.

7.    "Initial Transfer" means any and all Transfers made by BLMIS or any Person acting on behalf of BLMIS to You, Susan Andelman and/or Stephanie Andelman or to any Person or entity acting on Defendants' behalf between December 11, 2006 and December 11, 2008.

8.    "Subsequent Transfer" means any Transfer or Transfers of an Initial Transfer (as defined herein) conveyed from You, Susan Andelman and/or Stephanie Andelman to another Person or entity.

9.    "Transfer" shall conform to the meaning set forth under the Bankruptcy Code, 11 U.S.C. § 101(54): (a) the creation of a lien; (b) the retention of title as a security interest; (c) the foreclosure of a debtor's equity redemption; or (d) each mode, direct and indirect, absolute or conditional, voluntary or involuntary, of disposing of or departing with—(i) property; or (ii) an interest in property.

10.    "You" or "Your" means Steven Andelman, and/or anyone acting on behalf of or for the benefit of Steven Andelman


## INSTRUCTIONS

1.    All provisions and rules of construction set forth in Federal Rules 26 and 34 (as amended on December 1, 2015) and Local Rule 26.3, as adopted by Rule 7026 of the Bankruptcy Rules, apply to these Requests and are as follows:

**All/Any/Each.** The terms "all," "any," and "each" shall each be construed as encompassing any and all.

**And/Or.** The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

4

**Number**. The use of the singular form of any word includes the plural and vice versa.

2.      In accordance with Federal Rule 34(b)(2)(B) (amended December 1, 2015), object with specificity and state whether any responsive materials are being withheld on the basis of that objection.

3.      In accordance with Federal Rule 34(b)(2)(B) (amended December 1, 2015), the production must be completed either by August 8, 2016 or by another reasonable time specifically identified in the response. When it is necessary to make the production in stages, the response should specify the beginning and end dates of the production.

4.      If the Trustee is requesting Communications Concerning Documents in a Request, the Trustee will so state.

5.      Unless otherwise specified, produce Documents that were created, modified, or existing during the Applicable Period.

6.      If a request calls for Documents concerning a Transfer, Initial Transfer, redemption, or withdrawal from an account, such request includes, but is not limited to, Documents that reflect the account name and number for the account the funds were transferred from and to, method of transfer (*i.e.*, wire, check, etc.), date of, amount and the reason for the Transfer, Initial Transfer, redemption, or withdrawal.

7.      If any Document, or any part thereof, is not produced based on a claim of attorney-client privilege, work-product protection, or any other privilege, subject to an agreement otherwise, then in answer to such Request or part thereof, for each such Document, You must provide a log that:

Identifies the type, title and subject matter of the Document;

Identifies all authors, addressees, and recipients of the Document (including CCs

and BCCs, with descriptive information about such Persons to assess the

privilege asserted; and

Describes the legal privilege(s) and the factual basis for the claim.

For emails, the log should include log the last-in-time (or top) email in the chain, as well as the

identities of any other authors, addressees, and recipients in the chain who are not in the top

email.

8.    Do not redact Documents for any reason other than privilege. If Documents are

produced with redactions, a log setting forth the information requested in Instruction No. 7 above

must be provided.  The Trustee will accept Documents designated <u>not confidential</u> under the

June 6, 2011 Litigation Protective Order with redactions for personally identifiable information,

provided that you also produce an unredacted version of the Document designated confidential.

9.    Certain instructions for production of Documents are contained in Orders entered

by the Bankruptcy Court on September 17, 2013:  (I) Establishing Procedures for Third-Party

Data Rooms; and (II) Modifying the June 6, 2011 Litigation Protective Order.

Pursuant to those Orders, upon production, Producing Parties shall provide the following

information in a production cover letter, to the extent any of the following information is

applicable:

(i) the Documents (listed in an Excel file Document-by-Document by Beginning Bates
and Ending Bates for each Document) that are designated as confidential pursuant to the
Litigation Protective Order;

(ii) the Documents (listed in an Excel file Document-by-Document by Beginning Bates
and Ending Bates for each Document) that are designated confidential pursuant to an
Individual Confidentiality Standard, if applicable;

(iii) the Documents (listed in an Excel file Document-by-Document by Beginning Bates
and Ending Bates for each Document) that should be excluded from the Third-Party Data
Rooms; and

(iv) the designated representative authorized for that production to provide consent to the disclosure of confidential Documents requested or to object to the disclosure of confidential Documents.

Failure to provide such information in a production cover letter shall result in a waiver by the

Producing Parties of:

(i) any confidential designations;

(ii) any objections to inclusion of the Documents in the Third-Party Data Rooms; and/or

(iii) notification that Documents have been requested for disclosure. For the avoidance of doubt, notwithstanding Paragraph 13 of the Order Establishing Procedures for Third-Party Data Rooms and Paragraph L of the Order Modifying the June 6, 2011 Litigation Protective Order,

Paragraphs 7 and 14 of the Litigation Protective Order continue to govern with respect to:

(i) inadvertent failure to designate confidential material as confidential or incorrect designations of confidential material (Paragraph 7 of the Litigation Protective Order); and

(ii) inadvertent production or disclosure of any Document or other material otherwise protected by the attorney-client privilege, work-product protection or a joint defense/common interest privilege (Paragraph 14 of the Litigation Protective Order).

## **FORMAT OF PRODUCTION**

1.    All Documents produced to the Trustee shall be provided in either native file ("native") or single-page 300 dpi-resolution group IV TIF format ("tiff") format as specified below, along with appropriately formatted industry-standard database load files, and accompanied by true and correct copies or representations of unaltered attendant metadata. Where Documents are produced in tiff format, each Document shall be produced along with a multi-page, Document-level searchable text file ("searchable text") as rendered by an industry-standard text extraction program in the case of electronic originals, or by an industry-standard Optical Character Recognition ("ocr") program in the case of scanned paper Documents. Searchable text of Documents shall not be produced as fielded data within the ".dat file" as described below.

2.    <u>Database load files and production media structure</u>:  Database load files shall

consist of: (i) a comma-delimited values (".dat") file containing: production Document identifier

information, data designed to preserve "parent and child" relationships within Document

"families," reasonably accessible and properly preserved metadata (or bibliographic coding in

the case of paper Documents), custodian or Document source information; and (ii) an Opticon

(".opt") file to facilitate the loading of tiff images.  Load files should be provided in a root-level

folder named "Data," images shall be provided within a root level "Images" folder containing

reasonably structured subfolders, and searchable text files shall be provided in a single root-level

"Text" folder.  If any of the Documents produced in response to these requests are designated as

confidential pursuant to the Litigation Protective Order, in addition to marking the Documents

with the brand "CONFIDENTIAL" or branding the media with the word "CONFIDENTIAL,"

also include a confidential field within the load file, with a "yes" or "no" indicating whether the

Document has been designated as confidential, as well as native file loading/linking information

(where applicable).

3.    <u>Electronic Documents and data, generally</u>:  Documents and other responsive data

or materials created, stored, or displayed on electronic or electro-magnetic media shall be

produced in the order in which the Documents are or were stored in the ordinary course of

business, including all reasonably accessible metadata, custodian or Document source

information, and searchable text as to allow the Trustee, through a reasonable and modest effort,

to fairly, accurately, and completely access, search, display, comprehend, and assess the

Document's true and original content.

4.    <u>Emails and attachments, and other email account-related Documents</u>:    All

Documents and accompanying metadata created and/or stored in the ordinary course of business

8

within commercial, off-the-shelf email systems including but not limited to Microsoft Exchange™, Lotus Notes™, or Novell Groupwise™ shall be produced in tiff format, accompanying metadata, and searchable text files or, alternately, in a format that fairly, accurately, and completely represents each Document in such a manner as to make the Document(s) reasonably useable, manageable, and comprehendible by the Trustee.

5.    <u>Documents and data created or stored in or by structured electronic databases</u>: With the exclusion of email and email account-related Documents and data, all Documents and accompanying metadata created and/or stored in structured electronic databases or files shall be produced in a format that enables the Trustee to reasonably manage and import those Documents into a useable, coherent database. Documents must be accompanied with reasonably detailed documentation explaining each Document's content and format, including but not limited to data dictionaries and diagrams. Some acceptable formats, if and only if provided with definitive file(s), table(s), and field level schemas include:

      a.      XML format file(s);

      b.      Microsoft SQL database(s);

      c.      Access database(s); and/or

      d.      fixed or variable length ASCII delimited files.

6.    <u>Spreadsheets, multimedia, and non-standard file types</u>: All Documents generated or stored in software such as Microsoft Excel or other commercially available spreadsheet programs, as well as any multimedia files such as audio or video, shall be produced in their native format, along with an accompanying placeholder image in tiff format indicating a native file has been produced. A "Nativelink" entry shall be included in the .dat load file indicating the relative file path to each native file on the production media. To the extent the party has other

file types that do not readily or easily and accurately convert to tiff and searchable text, the party may elect to produce those files in native format subject to the other requirements listed herein. Native files may be produced within a separate root-level folder structure on deliverable media entitled "Natives."

7.    "Other" electronic Documents: All other Documents and accompanying metadata and embedded data created or stored in unstructured files generated by commercially available software systems (excluding emails, structured electronic databases, spreadsheets, or multimedia) such as, but not limited to, word processing files (such as Microsoft Word), image files (such as Adobe .pdf files and other formats), and text files shall be produced in tiff and searchable text format in the order the files are or were stored in the ordinary course of business.

8.    Paper Documents: Documents originally created or stored on paper shall be produced in tiff format. Relationships between Documents shall be identified within the .dat file utilizing Document identifier numbers to express parent Document/child attachment boundaries, folder boundaries, and other groupings. In addition, the searchable text of each Document shall be provided as a multi-page text file as provided for by these requests.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

1.    Documents concerning the Accounts.

2.    Documents concerning Initial Transfers.

3.    Documents concerning Subsequent Transfers.

4.    Documents concerning deposits into the Accounts.

5.    Documents concerning withdrawals from the Accounts.

6.    Documents concerning money You, Susan Andelman and/or Stephanie Andelman received from the Accounts, whether directly or indirectly.

7.    Monthly Account statements.

8.     Your bank and/or brokerage account records, including, but not limited to, those from Shawmut Bank n/k/a Bank of America, Framingham Trust Company n/k/a Bank of America, Fidelity Trust Reserve n/k/a Wells Fargo Bank, and TD Bank, for the period between and including December 11, 2006 and December 31, 2009, for any accounts that received Initial Transfers, including monthly statements, cancelled checks, and incoming/outgoing wire transfer records.

9.     Documents reflecting Transfers to You from BLMIS after the Account was transferred from Susan Andelman to Steven and Stephanie Andelman J/T WROS.

10.     Documents sufficient to identify any refund(s) requested or received by You, Susan Andelman and/or Stephanie Andelman of any state or federal taxes paid in connection with the Accounts.

11.     Documents You contend support the sixth affirmative defense in Your Answer to the Complaint in which You contend that the "Trustee omitted significant deposits and additions to principal necessary to correctly value the accounts."

12.     Documents You contend support the seventh affirmative defense in Your Answer to the Complaint in which You contend that the "if the Trustee had not improperly disallowed profitable trades initially allocated to Defendant and had the Trustee given Defendant credit for the profitable trades that Madoff and BLMIS wrongfully allocated and retained for itself, Defendant would have a positive net equity in his Account."

13.     Documents Concerning the Accounts or this Adversary Proceeding that You have received from any other Person or entity, whether received by You in response to a subpoena or otherwise.

14.    Documents Concerning the Account that are maintained by any Person or entity including, but not limited to, You, Susan Andelman, Stephanie Andelman, Shawmut Bank n/k/a Bank of America, Fidelity Trust Reserve n/k/a Wells Fargo Bank, Framingham Trust Company n/k/a Bank of America, or any other Person or entity that may have discoverable information concerning the Accounts or this Adversary Proceeding.

15.    Documents Defendant intends to rely upon in connection with the defense of the claims asserted in the Complaint.

16.    Documents Defendants identified, reviewed, prepared, or consulted in responding to discovery in this Adversary Proceeding.

Dated:  July 5, 2016

Of Counsel:

**BAKER & HOSTETLER LLP**
811 Main, Suite 1100
Houston, Texas 77002-6111
Telephone: (713)751-1600
Facsimile: (713)751-1717
Dean D. Hunt
Email: dhunt@bakerlaw.com

By: /s/ *Nicholas Cremona*
**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: 212.589.4200
Facsimile: 212.589.4201
David J. Sheehan
Email: dsheehan@bakerlaw.com
Nicholas Cremona
Email: ncremona@bakerlaw.com

*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Estate of Bernard L. Madoff*

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing was served this 5th day of July, 2016 by electronic mail and First class mail upon the following:

Jeffrey L. Bernfeld
Bernfeld, DeMatteo & Bernfeld, LLP
600 Third Avenue, 15th Floor
New York, NY 10016
Email: jeffreybernfeld@bernfeld-dematteo.com

*Attorneys for Irving H. Picard, Trustee for
the Substantively Consolidated SIPA
Liquidation of Bernard L. Madoff
Investment Securities LLC and the Estate of
Bernard L. Madoff*

**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, NY 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Email: dsheehan@bakerlaw.com
Nicholas J. Cremona
Email: ncremona@bakerlaw.com
Dean D. Hunt
Email: dhunt@bakerlaw.com

*Attorneys for Irving H. Picard, Trustee for the*
*Substantively Consolidated SIPA Liquidation of*
*Bernard L. Madoff Investment Securities LLC*
*and the Estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | No. 08-01789 (SMB) |
| Plaintiff-Applicant, | SIPA LIQUIDATION |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and Bernard L. Madoff, | Adv. Pro. No. 10-05094 (SMB) |
| Plaintiff, | |
| v. | |
| THE ESTATE OF CAROLYN MILLER, THE CAROLYN MILLER REVOCABLE TRUST, | |

LAURIE ROSEN RIEMER, individually and in her capacities as Personal Representative of THE ESTATE OF CAROLYN MILLER and trustee of THE CAROLYN MILLER REVOCABLE TRUST, THE ESTATE OF LEONARD MILLER, ROBERT D. MILLER, in his capacity as Co-Personal Representative of THE ESTATE OF LEONARD MILLER, CORRINE M. COTT, in her capacity as Co-Personal Representative of THE ESTATE OF LEONARD MILLER, and JOANNE GAYLE ROSEN, in her capacities as Personal Representative of THE ESTATE OF CAROLYN MILLER and trustee of THE CAROLYN MILLER REVOCABLE TRUST,

Defendants.

## TRUSTEE'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS TO DEFENDANT THE ESTATE OF LEONARD MILLER

PLEASE TAKE NOTICE that in accordance with Rules 26 and 34 of the Federal Rules of Civil Procedure (as amended on December 1, 2015) (the "Federal Rules"), made applicable to this adversary proceeding under the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and the applicable local rules of the United States District Court for the Southern District of New York and this Court (the "Local Rules"), Irving H. Picard, as trustee (the "Trustee") for the substantively consolidated liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa-78*lll* ("SIPA"), and the estate of Bernard L. Madoff, by and through the Trustee's counsel, Baker & Hostetler LLP, hereby demands that Defendant the Estate of Leonard Miller produce Documents responsive to the requests set forth herein ("Request" or "Requests") and deliver the same to the office of Baker & Hostetler LLP, c/o Dean D. Hunt, 811 Main Street, Suite 1100, Houston, Texas 77002 within thirty three (33) days of service, on August 15, 2016.

## DEFINITIONS

1.    All definitions set forth in Local Rule 26.3, as adopted by Rule 7026 of the

Bankruptcy Rules, apply to these Requests and are as follows:

**Communication**. The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

**Document**. The term "document" is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Fed. R. Civ. P. 34(a)(1)(A). A draft or non-identical copy is a separate document within the meaning of this term.

**Identify (with respect to documents)**. When referring to documents, "to identify" means to give, to the extent known, the (i) type of document; (ii) general subject matter; (iii) date of the document; and (iv) author(s), addressee(s) and recipient(s). In the alternative, the responding party may produce the documents, together with identifying information sufficient to satisfy Fed. R. Civ. P. 33(d).

**Identify (with respect to persons)**. When referring to a person, "to identify" means to give, to the extent known, the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment. Once a person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person.

**Parties**. The terms "plaintiff" and "defendant" as well as a party's full or abbreviated name or a pronoun referring to a party mean the party and, where applicable, its officers, directors, employees, partners, corporate parent, subsidiaries or affiliates. This definition is not intended to impose a discovery obligation on any person who is not a party to the litigation.

**Concerning.** The term "concerning" means relating to, referring to, describing, evidencing or constituting.

2.    "Account" or "Accounts" means BLMIS Account No. 1M0176, as set forth on

Exhibit A to the Complaint and/or any other BLMIS account in which any Defendant had any

interest in any capacity, whether individually or as a fiduciary and whether directly or indirectly.

3.    "Adversary Proceeding" means the civil action captioned *Irving H. Picard,*

*Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC v. Estate of Carolyn*

*Miller, et al.*, Adv. Pro. No. 10-05094 pending in the United States Bankruptcy Court for the Southern District of New York.

4.    "Applicable Period" means the period beginning January 1, 2002 through December 31, 2009.

5.    "BLMIS" means Bernard L. Madoff Investment Securities LLC, Madoff Securities International Ltd., Madoff Securities International LLC, Bernard L. Madoff, Ruth Madoff, and all affiliated Persons and entities, including, but not limited to, any officers, directors, agents, representatives, employees, partners, parent companies, subsidiaries, predecessor or successor and related entities, and affiliates of the above specifically identified Persons and entities.

6.    "Decedent" means Leonard Miller in any capacity, and/or anyone acting on behalf of or for the benefit of Leonard Miller.

7.    "Defendant" means any of the following individuals or entities, singularly: the Estate of Leonard Miller and Robert D. Miller and Corrine M. Cott, in their capacities as Personal Representatives of the Estate of Leonard Miller, the Estate of Carolyn Miller, Laurie Rosen Riemer and Joanne Gayle Rosen, in their capacities as Personal Representatives of the Estate of Carolyn Miller, and the Carolyn Miller Revocable Trust.

8.    "Defendants" means collectively, the Estate of Leonard Miller, Robert D. Miller and Corrine M. Cott, in their capacities as Personal Representatives of the Estate of Leonard Miller, the Estate of Carolyn Miller, Laurie Rosen Riemer and Joanne Gayle Rosen, in their capacities as Personal Representatives of the Estate of Carolyn Miller, and the Carolyn Miller Revocable Trust.

9.      "Estate," "You," or "Your" means the Estate of Leonard Miller in any capacity, and/or anyone acting on behalf of or for the benefit of the Estate of Leonard Miller, including, but not limited to, any current or former personal representatives of the Estate of Leonard Miller, including, but not limited to, Robert D. Miller and Corrine M. Cott and/or any current or former personal representatives of the Estate of Leonard Miller.

10.     "Initial Transfer" means any and all Transfers made by BLMIS or any Person acting on behalf of BLMIS to You or to any Person or entity acting on Decedent's behalf between December 11, 2006 and December 11, 2008.

11.     "Subsequent Transfer" means any Transfer or Transfers of an Initial Transfer (as defined herein) conveyed from You to another Person or entity.

12.     "Transfer" shall conform to the meaning set forth under the Bankruptcy Code, 11 U.S.C. § 101(54): (a) the creation of a lien; (b) the retention of title as a security interest; (c) the foreclosure of a debtor's equity redemption; or (d) each mode, direct and indirect, absolute or conditional, voluntary or involuntary, of disposing of or departing with—(i) property; or (ii) an interest in property.

## INSTRUCTIONS

1.      All provisions and rules of construction set forth in Federal Rules 26 and 34 (as amended on December 1, 2015) and Local Rule 26.3, as adopted by Rule 7026 of the Bankruptcy Rules, apply to these Requests and are as follows:

**All/Any/Each.** The terms "all," "any," and "each" shall each be construed as encompassing any and all.

**And/Or.** The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

**Number.** The use of the singular form of any word includes the plural and vice versa.

2.  In accordance with Federal Rule 34(b)(2)(B) (amended December 1, 2015), object with specificity and state whether any responsive materials are being withheld on the basis of that objection.

3.  In accordance with Federal Rule 34(b)(2)(B) (amended December 1, 2015), the production must be completed either by August 15, 2016 or by another reasonable time specifically identified in the response. When it is necessary to make the production in stages, the response should specify the beginning and end dates of the production.

4.  If the Trustee is requesting Communications Concerning Documents in a Request, the Trustee will so state.

5.  Unless otherwise specified, produce Documents that were created, modified, or existing during the Applicable Period.

6.  If a request calls for Documents concerning a Transfer, Initial Transfer, redemption, or withdrawal from an account, such request includes, but is not limited to, Documents that reflect the account name and number for the account the funds were transferred from and to, method of transfer (*i.e.*, wire, check, etc.), date of, amount and the reason for the Transfer, Initial Transfer, redemption, or withdrawal.

7.  If any Document, or any part thereof, is not produced based on a claim of attorney-client privilege, work-product protection, or any other privilege, subject to an agreement otherwise, then in answer to such Request or part thereof, for each such Document, You must provide a log that:

Identifies the type, title and subject matter of the Document;

Identifies all authors, addressees, and recipients of the Document (including CCs and BCCs, with descriptive information about such Persons to assess the privilege asserted; and

Describes the legal privilege(s) and the factual basis for the claim.

For emails, the log should include log the last-in-time (or top) email in the chain, as well as the identities of any other authors, addressees, and recipients in the chain who are not in the top email.

8.      Do not redact Documents for any reason other than privilege. If Documents are produced with redactions, a log setting forth the information requested in Instruction No. 7 above must be provided.  The Trustee will accept Documents designated <u>not confidential</u> under the June 6, 2011 Litigation Protective Order with redactions for personally identifiable information, provided that you also produce an unredacted version of the Document designated confidential.

9.      Certain instructions for production of Documents are contained in Orders entered by the Bankruptcy Court on September 17, 2013:  (I) Establishing Procedures for Third-Party Data Rooms; and (II) Modifying the June 6, 2011 Litigation Protective Order.

Pursuant to those Orders, upon production, Producing Parties shall provide the following information in a production cover letter, to the extent any of the following information is applicable:

(i) the Documents (listed in an Excel file Document-by-Document by Beginning Bates and Ending Bates for each Document) that are designated as confidential pursuant to the Litigation Protective Order;

(ii) the Documents (listed in an Excel file Document-by-Document by Beginning Bates and Ending Bates for each Document) that are designated confidential pursuant to an Individual Confidentiality Standard, if applicable;

(iii) the Documents (listed in an Excel file Document-by-Document by Beginning Bates and Ending Bates for each Document) that should be excluded from the Third-Party Data Rooms; and

(iv) the designated representative authorized for that production to provide consent to the disclosure of confidential Documents requested or to object to the disclosure of confidential Documents.

Failure to provide such information in a production cover letter shall result in a waiver by the Producing Parties of:

(i) any confidential designations;

(ii) any objections to inclusion of the Documents in the Third-Party Data Rooms; and/or

(iii) notification that Documents have been requested for disclosure. For the avoidance of doubt, notwithstanding Paragraph 13 of the Order Establishing Procedures for Third-Party Data Rooms and Paragraph L of the Order Modifying the June 6, 2011 Litigation Protective Order,

Paragraphs 7 and 14 of the Litigation Protective Order continue to govern with respect to:

(i) inadvertent failure to designate confidential material as confidential or incorrect designations of confidential material (Paragraph 7 of the Litigation Protective Order); and

(ii) inadvertent production or disclosure of any Document or other material otherwise protected by the attorney-client privilege, work-product protection or a joint defense/common interest privilege (Paragraph 14 of the Litigation Protective Order).

## FORMAT OF PRODUCTION

1.      All Documents produced to the Trustee shall be provided in either native file ("native") or single-page 300 dpi-resolution group IV TIF format ("tiff") format as specified below, along with appropriately formatted industry-standard database load files, and accompanied by true and correct copies or representations of unaltered attendant metadata. Where Documents are produced in tiff format, each Document shall be produced along with a multi-page, Document-level searchable text file ("searchable text") as rendered by an industry-standard text extraction program in the case of electronic originals, or by an industry-standard Optical Character Recognition ("ocr") program in the case of scanned paper Documents. Searchable text of Documents shall not be produced as fielded data within the ".dat file" as described below.

2.    <u>Database load files and production media structure</u>:  Database load files shall consist of: (i) a comma-delimited values ("dat") file containing: production Document identifier information, data designed to preserve "parent and child" relationships within Document "families," reasonably accessible and properly preserved metadata (or bibliographic coding in the case of paper Documents), custodian or Document source information; and (ii) an Opticon ("opt") file to facilitate the loading of tiff images.  Load files should be provided in a root-level folder named "Data," images shall be provided within a root level "Images" folder containing reasonably structured subfolders, and searchable text files shall be provided in a single root-level "Text" folder.  If any of the Documents produced in response to these requests are designated as confidential pursuant to the Litigation Protective Order, in addition to marking the Documents with the brand "CONFIDENTIAL" or branding the media with the word "CONFIDENTIAL," also include a confidential field within the load file, with a "yes" or "no" indicating whether the Document has been designated as confidential, as well as native file loading/linking information (where applicable).

3.    <u>Electronic Documents and data, generally</u>:  Documents and other responsive data or materials created, stored, or displayed on electronic or electro-magnetic media shall be produced in the order in which the Documents are or were stored in the ordinary course of business, including all reasonably accessible metadata, custodian or Document source information, and searchable text as to allow the Trustee, through a reasonable and modest effort, to fairly, accurately, and completely access, search, display, comprehend, and assess the Document's true and original content.

4.    <u>Emails and attachments, and other email account-related Documents</u>:    All Documents and accompanying metadata created and/or stored in the ordinary course of business

within commercial, off-the-shelf email systems including but not limited to Microsoft Exchange™, Lotus Notes™, or Novell Groupwise™ shall be produced in tiff format, accompanying metadata, and searchable text files or, alternately, in a format that fairly, accurately, and completely represents each Document in such a manner as to make the Document(s) reasonably useable, manageable, and comprehendible by the Trustee.

     5.    <u>Documents and data created or stored in or by structured electronic databases</u>: With the exclusion of email and email account-related Documents and data, all Documents and accompanying metadata created and/or stored in structured electronic databases or files shall be produced in a format that enables the Trustee to reasonably manage and import those Documents into a useable, coherent database. Documents must be accompanied with reasonably detailed documentation explaining each Document's content and format, including but not limited to data dictionaries and diagrams. Some acceptable formats, if and only if provided with definitive file(s), table(s), and field level schemas include:

       a.    XML format file(s);

       b.    Microsoft SQL database(s);

       c.    Access database(s); and/or

       d.    fixed or variable length ASCII delimited files.

     6.    <u>Spreadsheets, multimedia, and non-standard file types</u>: All Documents generated or stored in software such as Microsoft Excel or other commercially available spreadsheet programs, as well as any multimedia files such as audio or video, shall be produced in their native format, along with an accompanying placeholder image in tiff format indicating a native file has been produced. A "Nativelink" entry shall be included in the .dat load file indicating the relative file path to each native file on the production media. To the extent the party has other

file types that do not readily or easily and accurately convert to tiff and searchable text, the party may elect to produce those files in native format subject to the other requirements listed herein. Native files may be produced within a separate root-level folder structure on deliverable media entitled "Natives."

7.    "Other" electronic Documents:  All other Documents and accompanying metadata and embedded data created or stored in unstructured files generated by commercially available software systems (excluding emails, structured electronic databases, spreadsheets, or multimedia) such as, but not limited to, word processing files (such as Microsoft Word), image files (such as Adobe .pdf files and other formats), and text files shall be produced in tiff and searchable text format in the order the files are or were stored in the ordinary course of business.

8.    Paper Documents:  Documents originally created or stored on paper shall be produced in tiff format.  Relationships between Documents shall be identified within the .dat file utilizing Document identifier numbers to express parent Document/child attachment boundaries, folder boundaries, and other groupings.  In addition, the searchable text of each Document shall be provided as a multi-page text file as provided for by these requests.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

1.    Documents and Communications between Decedent, the Estate, and/or any other Person regarding the Account and/or Decedent's investments with BLMIS.

2.    Documents, Communications, and/or filings with or to taxing authorities Concerning the Defendants.

3.    Decedent's entire probate file, including any inventory of assets.

4.    Decedent's Last Will and Testament, including any drafts, codicils, or prior versions.

5.    Documents Concerning BLMIS's return on investments.

6.      Documents Concerning any meetings that Decedent, the Estate, and/or anyone acting on Decedent or the Estate's behalf attended with a representative of BLMIS or anyone purporting to act on BLMIS's behalf.

7.      Documents Concerning the Account.

8.      Documents Concerning Any Transfers.

9.      Documents Concerning any Subsequent Transfers.

10.     Documents Concerning any deposits into the Account.

11.     Documents Concerning any money that Decedent and/or the Estate received from the Account.

12.     Documents Concerning any pre-nuptial agreement between Decedent and Carolyn Miller.

13.     Documents Concerning any knowledge or involvement with the Account by any accountants or auditors for Decedent and/or the Estate, including, but not limited to, Documents Concerning the Account which were created for or by, or that were sent to or received from, any accountants or auditors for Decedent and/or the Estate.

14.     Documents Concerning how Decedent and/or the Estate used, spent, disbursed, distributed, or transferred all or any portion of any withdrawal from the Account.

15.     Documents Concerning any bank accounts and/or brokerage accounts, used by Decedent or the Estate during the Applicable Period, that received Transfers from the Account or were used to make deposits into the Account, including, but not limited to, Documents reflecting account numbers, account holders and signatories, monthly statements, incoming and outgoing wire transfer records, copies of checks deposited or drawn on any account, correspondence, and

account maintenance documents including account opening documents and account closing documents relating to such Transfer or deposit.

16.    Documents supporting any denials of fact or affirmative defenses asserted in Your Answer to the Complaint.

17.    Documents supporting the sixth affirmative defense in Your Answer to the Complaint in which You contend that the "Trustee omitted significant deposits and additions to principal necessary to correctly value the accounts."

18.    Documents supporting the seventh affirmative defense in Your Answer to the Complaint in which You contend that the "if the Trustee had not improperly disallowed profitable trades initially allocated to Defendants and had the Trustee given Defendants credit for the profitable trades that Madoff and BLMIS wrongfully allocated and retained for itself, Defendants would have a positive net equity in their Account."

19.    Documents associated with, but not limited to, pay-on-death accounts, transfer-on-death account, securities accounts, jointly-held (with any other Person) accounts, and/or in-trust-for accounts, into which money or other assets in which Decedent had an interest that were transferred following Decedent's death.

20.    A copy of any state and/or federal tax filings, including, but not limited to, estate tax returns, income tax returns, and/or gift tax returns, related to Decedent and/or the Estate.

21.    Documents Concerning any inventory and/or accounting of the Estate, including IRS Form 706.

22.    Documents Concerning any interest Decedent held in property, whether real or personal, tangible or intangible, either outright or through a beneficial interest in a trust, at Decedent's death.

23.    Documents Concerning all real property transactions occurring after December 2008, in which the Estate of Leonard Miller and/or the Estate of Carolyn Miller participated, either directly or indirectly, as a seller or buyer, including, but not limited to the home located at 23 Indian Creek Island Road, Indian Creek Village, Florida 33154.

24.    Documents Concerning any refund of any state or federal taxes paid in connection with the Account.

25.    Documents Concerning the Account or this Adversary Proceeding that have been produced to the Estate or any of its current or former personal representatives by any Person or entity.

26.    Documents Concerning the Account or this Adversary Proceeding that have been produced to the Estate or any of its current or former personal representatives by any Person or entity.

27.    Documents Concerning the Account or this Adversary Proceeding received from any Person or entity, whether received by the Estate in response to a subpoena or otherwise.

28.    Documents the Estate intends to rely upon in connection with the defense of the claims asserted in the Complaint.

29.    Documents identified, reviewed, prepared, or consulted in responding to discovery in this Adversary Proceeding.

Dated:   July 11, 2016

Of Counsel:

**BAKER & HOSTETLER LLP**
811 Main, Suite 1100
Houston, Texas 77002-6111
Telephone: (713)751-1600
Facsimile: (713)751-1717
Dean D. Hunt
Email: dhunt@bakerlaw.com

/s/ *Nicholas Cremona*
David J. Sheehan
Email:  dsheehan@bakerlaw.com
Nicholas J. Cremona
Email:  ncremona@bakerlaw.com
**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee for the*
*Substantively Consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities*
*LLC and the Estate of Bernard L. Madoff*

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and accurate copy of the foregoing was served this 11th day of July, 2016 by electronic mail and First class mail upon the following:

Jeffrey L. Bernfeld
Bernfeld, DeMatteo & Bernfeld, LLP
600 Third Avenue, 18th Floor
New York, NY 10016
Email: jeffreybernfeld@bernfeld-dematteo.com

*Attorneys for Irving H. Picard, Trustee for
the Substantively Consolidated SIPA
Liquidation of Bernard L. Madoff
Investment Securities LLC and the Estate of
Bernard L. Madoff*

**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, NY 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Email: dsheehan@bakerlaw.com
Nicholas J. Cremona
Email: ncremona@bakerlaw.com
Dean D. Hunt
Email: dhunt@bakerlaw.com

*Attorneys for Irving H. Picard, Trustee for the*
*Substantively Consolidated SIPA Liquidation of*
*Bernard L. Madoff Investment Securities LLC*
*and the Estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | No. 08-01789 (SMB) |
| Plaintiff-Applicant, | SIPA LIQUIDATION |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and Bernard L. Madoff, | Adv. Pro. No. 10-05094 (SMB) |
| Plaintiff, | |
| v. | |
| THE ESTATE OF CAROLYN MILLER, THE CAROLYN MILLER REVOCABLE TRUST, | |

LAURIE ROSEN RIEMER, individually and in her capacities as Personal Representative of THE ESTATE OF CAROLYN MILLER and trustee of THE CAROLYN MILLER REVOCABLE TRUST, THE ESTATE OF LEONARD MILLER, ROBERT D. MILLER, in his capacity as Co-Personal Representative of THE ESTATE OF LEONARD MILLER, CORRINE M. COTT, in her capacity as Co-Personal Representative of THE ESTATE OF LEONARD MILLER, and JOANNE GAYLE ROSEN, in her capacities as Personal Representative of THE ESTATE OF CAROLYN MILLER and trustee of THE CAROLYN MILLER REVOCABLE TRUST,

Defendants.

## TRUSTEE'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS TO DEFENDANT THE ESTATE OF CAROLYN MILLER

PLEASE TAKE NOTICE that in accordance with Rules 26 and 34 of the Federal Rules of Civil Procedure (as amended on December 1, 2015) (the "Federal Rules"), made applicable to this adversary proceeding under the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and the applicable local rules of the United States District Court for the Southern District of New York and this Court (the "Local Rules"), Irving H. Picard, as trustee (the "Trustee") for the substantively consolidated liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa-78*lll* ("SIPA"), and the estate of Bernard L. Madoff, by and through the Trustee's counsel, Baker & Hostetler LLP, hereby demands that Defendant the Estate of Carolyn Miller produce Documents responsive to the requests set forth herein ("Request" or "Requests") and deliver the same to the office of Baker & Hostetler LLP, c/o Dean D. Hunt, 811 Main Street, Suite 1100, Houston, Texas 77002 within thirty three (33) days of service, on August 15, 2016.

2

## DEFINITIONS

1.    All definitions set forth in Local Rule 26.3, as adopted by Rule 7026 of the

Bankruptcy Rules, apply to these Requests and are as follows:

**Communication**. The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

**Document**. The term "document" is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Fed. R. Civ. P. 34(a)(1)(A). A draft or non-identical copy is a separate document within the meaning of this term.

**Identify (with respect to documents)**. When referring to documents, "to identify" means to give, to the extent known, the (i) type of document; (ii) general subject matter; (iii) date of the document; and (iv) author(s), addressee(s) and recipient(s). In the alternative, the responding party may produce the documents, together with identifying information sufficient to satisfy Fed. R. Civ. P. 33(d).

**Identify (with respect to persons)**. When referring to a person, "to identify" means to give, to the extent known, the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment. Once a person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person.

**Parties**. The terms "plaintiff" and "defendant" as well as a party's full or abbreviated name or a pronoun referring to a party mean the party and, where applicable, its officers, directors, employees, partners, corporate parent, subsidiaries or affiliates. This definition is not intended to impose a discovery obligation on any person who is not a party to the litigation.

**Concerning.** The term "concerning" means relating to, referring to, describing, evidencing or constituting.

2.    "Account" or "Accounts" means BLMIS Account No. 1M0176, as set forth on

Exhibit A to the Complaint and/or any other BLMIS account in which any Defendant had any

interest in any capacity, whether individually or as a fiduciary and whether directly or indirectly.

3.    "Adversary Proceeding" means the civil action captioned *Irving H. Picard,*

*Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC v. Estate of Carolyn*

*Miller, et al.*, Adv. Pro. No. 10-05094 pending in the United States Bankruptcy Court for the Southern District of New York.

4.      "Applicable Period" means the period beginning January 1, 2002 through December 31, 2009.

5.      "BLMIS" means Bernard L. Madoff Investment Securities LLC, Madoff Securities International Ltd., Madoff Securities International LLC, Bernard L. Madoff, Ruth Madoff, and all affiliated Persons and entities, including, but not limited to, any officers, directors, agents, representatives, employees, partners, parent companies, subsidiaries, predecessor or successor and related entities, and affiliates of the above specifically identified Persons and entities.

6.      "Decedent" means Carolyn Miller in any capacity, and/or anyone acting on behalf of or for the benefit of Carolyn Miller.

7.      "Defendant" means any of the following individuals or entities, singularly: the Estate of Carolyn Miller, Laurie Rosen Riemer and Joanne Gayle Rosen, in their capacities as Personal Representatives of the Estate of Carolyn Miller, the Estate of Leonard Miller and Robert D. Miller and Corrine M. Cott, in their capacities as Personal Representatives of the Estate of Leonard Miller, and the Carolyn Miller Revocable Trust.

8.      "Defendants" means collectively, the Estate of Carolyn Miller and Laurie Rosen Riemer and Joanne Gayle Rosen, in their capacities as Personal Representatives of the Estate of Carolyn Miller, the Estate of Leonard Miller and Robert D. Miller and Corrine M. Cott, in their capacities as Personal Representatives of the Estate of Leonard Miller, and the Carolyn Miller Revocable Trust.

9.      "Estate," "You," or "Your" means the Estate of Carolyn Miller in any capacity, and/or anyone acting on behalf of or for the benefit of the Estate of Carolyn Miller, including, but not limited to, any current or former personal representatives of the Estate of Carolyn Miller, including, but not limited to, Laurie Rosen Riemer, Joanne Gayle Rosen and/or any current or former personal representatives of the Estate of Carolyn Miller.

10.      "Initial Transfer" means any and all Transfers made by BLMIS or any Person acting on behalf of BLMIS to You or to any Person or entity acting on Decedent's behalf between December 11, 2006 and December 11, 2008.

11.      "Subsequent Transfer" means any Transfer or Transfers of an Initial Transfer (as defined herein) conveyed from You to another Person or entity.

12.      "Transfer" shall conform to the meaning set forth under the Bankruptcy Code, 11 U.S.C. § 101(54): (a) the creation of a lien; (b) the retention of title as a security interest; (c) the foreclosure of a debtor's equity redemption; or (d) each mode, direct and indirect, absolute or conditional, voluntary or involuntary, of disposing of or departing with—(i) property; or (ii) an interest in property.

13.      "Trust" means the Carolyn Miller Revocable Trust and anyone acting on behalf of the Carolyn Miller Revocable Trust, including, but not limited to, Laurie Rosen Riemer, Joanne Gayle Rosen and/or any current and former trustees and/or any predecessors- or successors-in-interest.

## INSTRUCTIONS

1.      All provisions and rules of construction set forth in Federal Rules 26 and 34 (as amended on December 1, 2015) and Local Rule 26.3, as adopted by Rule 7026-1 of the Bankruptcy Rules, apply to these Requests and are as follows:

5

**All/Any/Each.** The terms "all," "any," and "each" shall each be construed as encompassing any and all.

**And/Or.** The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

**Number**. The use of the singular form of any word includes the plural and vice versa.

2.      In accordance with Federal Rule 34(b)(2)(B) (amended December 1, 2015), object with specificity and state whether any responsive materials are being withheld on the basis of that objection.

3.      In accordance with Federal Rule 34(b)(2)(B) (amended December 1, 2015), the production must be completed either by August 15, 2016 or by another reasonable time specifically identified in the response.  When it is necessary to make the production in stages, the response should specify the beginning and end dates of the production.

4.      If the Trustee is requesting Communications Concerning Documents in a Request, the Trustee will so state.

5.      Unless otherwise specified, produce Documents that were created, modified, or existing during the Applicable Period.

6.      If a request calls for Documents concerning a Transfer, Initial Transfer, redemption, or withdrawal from an account, such request includes, but is not limited to, Documents that reflect the account name and number for the account the funds were transferred from and to, method of transfer (*i.e.*, wire, check, etc.), date of, amount and the reason for the Transfer, Initial Transfer, redemption, or withdrawal.

7.      If any Document, or any part thereof, is not produced based on a claim of attorney-client privilege, work-product protection, or any other privilege, subject to an agreement

otherwise, then in answer to such Request or part thereof, for each such Document, You must provide a log that:

> Identifies the type, title and subject matter of the Document;

> Identifies all authors, addressees, and recipients of the Document (including CCs and BCCs, with descriptive information about such Persons to assess the privilege asserted; and

> Describes the legal privilege(s) and the factual basis for the claim.

For emails, the log should include log the last-in-time (or top) email in the chain, as well as the identities of any other authors, addressees, and recipients in the chain who are not in the top email.

      8.    Do not redact Documents for any reason other than privilege. If Documents are produced with redactions, a log setting forth the information requested in Instruction No. 7 above must be provided.  The Trustee will accept Documents designated <u>not confidential</u> under the June 6, 2011 Litigation Protective Order with redactions for personally identifiable information, provided that you also produce an unredacted version of the Document designated confidential.

      9.    Certain instructions for production of Documents are contained in Orders entered by the Bankruptcy Court on September 17, 2013:  (I) Establishing Procedures for Third-Party Data Rooms; and (II) Modifying the June 6, 2011 Litigation Protective Order.

Pursuant to those Orders, upon production, Producing Parties shall provide the following information in a production cover letter, to the extent any of the following information is applicable:

> (i) the Documents (listed in an Excel file Document-by-Document by Beginning Bates and Ending Bates for each Document) that are designated as confidential pursuant to the Litigation Protective Order;

> (ii) the Documents (listed in an Excel file Document-by-Document by Beginning Bates

and Ending Bates for each Document) that are designated confidential pursuant to an Individual Confidentiality Standard, if applicable;

(iii) the Documents (listed in an Excel file Document-by-Document by Beginning Bates and Ending Bates for each Document) that should be excluded from the Third-Party Data Rooms; and

(iv) the designated representative authorized for that production to provide consent to the disclosure of confidential Documents requested or to object to the disclosure of confidential Documents.

Failure to provide such information in a production cover letter shall result in a waiver by the

Producing Parties of:

(i) any confidential designations;

(ii) any objections to inclusion of the Documents in the Third-Party Data Rooms; and/or

(iii) notification that Documents have been requested for disclosure. For the avoidance of doubt, notwithstanding Paragraph 13 of the Order Establishing Procedures for Third-Party Data Rooms and Paragraph L of the Order Modifying the June 6, 2011 Litigation Protective Order,

Paragraphs 7 and 14 of the Litigation Protective Order continue to govern with respect to:

(i) inadvertent failure to designate confidential material as confidential or incorrect designations of confidential material (Paragraph 7 of the Litigation Protective Order); and

(ii) inadvertent production or disclosure of any Document or other material otherwise protected by the attorney-client privilege, work-product protection or a joint defense/common interest privilege (Paragraph 14 of the Litigation Protective Order).

## **FORMAT OF PRODUCTION**

1.    All Documents produced to the Trustee shall be provided in either native file ("native") or single-page 300 dpi-resolution group IV TIF format ("tiff") format as specified below, along with appropriately formatted industry-standard database load files, and accompanied by true and correct copies or representations of unaltered attendant metadata. Where Documents are produced in tiff format, each Document shall be produced along with a multi-page, Document-level searchable text file ("searchable text") as rendered by an industry-standard text extraction program in the case of electronic originals, or by an industry-standard

Optical Character Recognition ("ocr") program in the case of scanned paper Documents. Searchable text of Documents shall not be produced as fielded data within the ".dat file" as described below.

　　　　2.　　<u>Database load files and production media structure</u>:　Database load files shall consist of: (i) a comma-delimited values (".dat") file containing: production Document identifier information, data designed to preserve "parent and child" relationships within Document "families," reasonably accessible and properly preserved metadata (or bibliographic coding in the case of paper Documents), custodian or Document source information; and (ii) an Opticon (".opt") file to facilitate the loading of tiff images.　Load files should be provided in a root-level folder named "Data," images shall be provided within a root level "Images" folder containing reasonably structured subfolders, and searchable text files shall be provided in a single root-level "Text" folder.　If any of the Documents produced in response to these requests are designated as confidential pursuant to the Litigation Protective Order, in addition to marking the Documents with the brand "CONFIDENTIAL" or branding the media with the word "CONFIDENTIAL," also include a confidential field within the load file, with a "yes" or "no" indicating whether the Document has been designated as confidential, as well as native file loading/linking information (where applicable).

　　　　3.　　<u>Electronic Documents and data, generally</u>:　Documents and other responsive data or materials created, stored, or displayed on electronic or electro-magnetic media shall be produced in the order in which the Documents are or were stored in the ordinary course of business, including all reasonably accessible metadata, custodian or Document source information, and searchable text as to allow the Trustee, through a reasonable and modest effort,

to fairly, accurately, and completely access, search, display, comprehend, and assess the Document's true and original content.

4.    <u>Emails and attachments, and other email account-related Documents</u>:    All Documents and accompanying metadata created and/or stored in the ordinary course of business within commercial, off-the-shelf email systems including but not limited to Microsoft Exchange™, Lotus Notes™, or Novell Groupwise™ shall be produced in tiff format, accompanying metadata, and searchable text files or, alternately, in a format that fairly, accurately, and completely represents each Document in such a manner as to make the Document(s) reasonably useable, manageable, and comprehendible by the Trustee.

5.    <u>Documents and data created or stored in or by structured electronic databases</u>: With the exclusion of email and email account-related Documents and data, all Documents and accompanying metadata created and/or stored in structured electronic databases or files shall be produced in a format that enables the Trustee to reasonably manage and import those Documents into a useable, coherent database.  Documents must be accompanied with reasonably detailed documentation explaining each Document's content and format, including but not limited to data dictionaries and diagrams.  Some acceptable formats, if and only if provided with definitive file(s), table(s), and field level schemas include:

      a.    XML format file(s);

      b.    Microsoft SQL database(s);

      c.    Access database(s); and/or

      d.    fixed or variable length ASCII delimited files.

6.    <u>Spreadsheets, multimedia, and non-standard file types</u>: All Documents generated or stored in software such as Microsoft Excel or other commercially available spreadsheet

programs, as well as any multimedia files such as audio or video, shall be produced in their native format, along with an accompanying placeholder image in tiff format indicating a native file has been produced. A "Nativelink" entry shall be included in the .dat load file indicating the relative file path to each native file on the production media. To the extent the party has other file types that do not readily or easily and accurately convert to tiff and searchable text, the party may elect to produce those files in native format subject to the other requirements listed herein. Native files may be produced within a separate root-level folder structure on deliverable media entitled "Natives."

7.    "Other" electronic Documents:  All other Documents and accompanying metadata and embedded data created or stored in unstructured files generated by commercially available software systems (excluding emails, structured electronic databases, spreadsheets, or multimedia) such as, but not limited to, word processing files (such as Microsoft Word), image files (such as Adobe .pdf files and other formats), and text files shall be produced in tiff and searchable text format in the order the files are or were stored in the ordinary course of business.

8.    Paper Documents:  Documents originally created or stored on paper shall be produced in tiff format. Relationships between Documents shall be identified within the .dat file utilizing Document identifier numbers to express parent Document/child attachment boundaries, folder boundaries, and other groupings. In addition, the searchable text of each Document shall be provided as a multi-page text file as provided for by these requests.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

1.    Documents and Communications between Decedent, the Estate, and/or any other Person regarding the Account and/or Decedent's investments with BLMIS.

2.    Documents, Communications, and/or filings with or to taxing authorities Concerning the Defendants.

3.    Decedent's entire probate file, including any inventory of assets.

4.    Decedent's Last Will and Testament, including any drafts, codicils, or prior versions.

5.    Documents Concerning BLMIS's return on investments.

6.    Documents Concerning any meetings that Decedent, the Estate, and/or anyone acting on Decedent or the Estate's behalf attended with a representative of BLMIS or anyone purporting to act on BLMIS's behalf.

7.    Documents Concerning the Account.

8.    Documents Concerning Any Transfers.

9.    Documents Concerning any Subsequent Transfers.

10.    Documents Concerning any deposits into the Account.

11.    Documents Concerning any money that Decedent and/or the Estate received from the Account.

12.    Documents Concerning any pre-nuptial agreement between Decedent and Leonard Miller.

13.    Documents Concerning any knowledge or involvement with the Account by any accountants or auditors, including, but not limited to Lundy and Schacter, P.A., n/k/a Lundy, Shacter Schulman & Kaplan, P.A., for Decedent and/or the Estate, including, but not limited to, Documents Concerning the Account which were created for or by, or that were sent to or received from, any accountants or auditors for Decedent and/or the Estate.

14.    Documents Concerning how Decedent and/or the Estate used, spent, disbursed, distributed, or transferred all or any portion of any withdrawal from the Account.

15.     Documents Concerning any bank accounts and/or brokerage accounts, used by Decedent or the Estate during the Applicable Period, that received Transfers from the Account or were used to make deposits into the Account, including, but not limited to, Banco Sabadell f/k/a Mellon United National Bank, including, but not limited to, Documents reflecting account numbers, account holders and signatories, monthly statements, incoming and outgoing wire transfer records, copies of checks deposited or drawn on any account, correspondence, and account maintenance documents including account opening documents and account closing documents relating to such Transfer or deposit.

16.     Documents You contend support any denials of fact or affirmative defenses asserted in Your Answer to the Complaint.

17.     Documents You contend support the sixth affirmative defense in Your Answer to the Complaint in which You contend that the "Trustee omitted significant deposits and additions to principal necessary to correctly value the accounts."

18.     Documents You contend support the seventh affirmative defense in Your Answer to the Complaint in which You contend that the "if the Trustee had not improperly disallowed profitable trades initially allocated to Defendants and had the Trustee given Defendants credit for the profitable trades that Madoff and BLMIS wrongfully allocated and retained for itself, Defendants would have a positive net equity in their Account."

19.     Documents associated with, but not limited to, pay-on-death accounts, transfer-on-death account, securities accounts, jointly-held (with any other Person) accounts, and/or in-trust-for accounts, into which money or other assets in which Decedent had an interest that were transferred following Decedent's death.

20.    A copy of any state and/or federal tax filings, including, but not limited to, estate tax returns, income tax returns, and/or gift tax returns, related to Decedent and/or the Estate.

21.    Documents Concerning any inventory and/or accounting of the Estate, including IRS Form 706.

22.    Documents Concerning any interest Decedent held in property, whether real or personal, tangible or intangible, either outright or through a beneficial interest in a trust, at Decedent's death.

23.    Documents Concerning all real property transactions occurring after December 2008, in which Decedent and/or the Estate participated, either directly or indirectly, as a seller or buyer, including, but not limited to the home located at 23 Indian Creek Island Road, Indian Creek Village, Florida 33154.

24.    Documents Concerning any refund of any state or federal taxes paid in connection with the Account.

25.    Documents Concerning the Account or this Adversary Proceeding that have been produced to the Estate or any of its current or former personal representatives by any Person or entity.

26.    Trust instruments relating to the Trust, including any amendments thereto.

27.    Documents sufficient to show all former and current trustees of the Trust.

28.    Documents sufficient to show all former and current beneficiaries under the Trust.

29.    Documents, including, but not limited to, books and records, reflecting the Trust's account and any distributions made to any Person or entity.

30.     Documents Concerning the Account or this Adversary Proceeding that have been produced to the Estate or any of its current or former personal representatives by any Person or entity.

31.     Documents Concerning the Account or this Adversary Proceeding received from any Person or entity, whether received by the Estate in response to a subpoena or otherwise.

32.     Documents the Estate intends to rely upon in connection with the defense of the claims asserted in the Complaint.

33.     Documents identified, reviewed, prepared, or consulted in responding to discovery in this Adversary Proceeding.

Dated:   July 11, 2016

Of Counsel:

**BAKER & HOSTETLER LLP**
811 Main, Suite 1100
Houston, Texas 77002-6111
Telephone: (713)751-1600
Facsimile: (713)751-1717
Dean D. Hunt
Email: dhunt@bakerlaw.com

/s/ *Nicholas Cremona*
David J. Sheehan
Email: dsheehan@bakerlaw.com
Nicholas J. Cremona
Email: ncremona@bakerlaw.com
**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee for the*
*Substantively Consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities*
*LLC and the Estate of Bernard L. Madoff*

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing was served this 11th day of July, 2016 by electronic mail and First class mail upon the following:

Jeffrey L. Bernfeld
Bernfeld, DeMatteo & Bernfeld, LLP
600 Third Avenue, 15th Floor
New York, NY 10016
Email: jeffreybernfeld@bernfeld-dematteo.com

*Dean D. Hunt w/p/m*

*Attorneys for Irving H. Picard, Trustee for
the Substantively Consolidated SIPA
Liquidation of Bernard L. Madoff
Investment Securities LLC and the Estate of
Bernard L. Madoff*