```
 1  UNITED STATES BANKRUPTCY COURT
 2  SOUTHERN DISTRICT OF NEW YORK
 3  CASE NO. 08-01789-smb
 4  - - - - - - - - - - - - - - - - - - x
 5  SECURITIES INVESTOR PROTECTION
 6  CORPORATION
 7  v.
 8  BERNARD L. MADOFF INVESTMENT
 9  SECURITIES, LLC, et al,
10           Debtors.
11  - - - - - - - - - - - - - - - - - - x
12
13                       U.S. Bankruptcy Court
14                       One Bowling Green
15                       New York, New York
16
17                       September 7, 2016
18                       10:07 AM
19
20
21  B E F O R E :
22  HON. STUART M. BERNSTEIN
23  U.S. BANKRUPTCY JUDGE
24
25  ECRO:   Unidentified
```

1  Omnibus Interim Fee Applications
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

1   A P P E A R A N C E S :

2   BAKER & HOSTETLER, LLP

3        Attorneys for BLMIS, Trustee

4        45 Rockefeller Plaza

5        New York, NY  10111

6

7   BY:  NICHOLAS J. CREMONA, ESQ.

8        IRVING H. PICARD, ESQ.

9

10  SECURITIES INVESTOR PROTECTION CORPORATION

11       For SiPC

12       1667 K Street, N.W.

13       Suite 1000

14       Washington, DC  20006

15

16  BY:  KEVIN H. BELL, ESQ.

17

18  WINDELS MARX LANE & MITTENDORF, LLP

19       Attorneys for Irving Picard, Trustee

20       156 West 56th Street

21       New York, New York 10019

22

23  BY:  HOWARD L. SIMON, ESQ.

24

25

1           P R O C E E D I N G S

2           MR. CREMONA: Good morning, Your Honor.

3           THE COURT: Good morning.

4           MR. CREMONA: Nicholas Cremona on behalf of Baker

5   & Hostetler on behalf of the trustee.

6           Your Honor, we're here this morning because it's

7   the return date for the twenty-first interim fee application

8   by Baker & Hostetler for fees and expenses in connection

9   with the last interim period which was December 1, 2015

10  through March 31. We've also brought fee applications with

11  regard to all counsel who have worked with us throughout the

12  world on the case.

13          At the outset I would note that no objections to

14  the fee applications were filed with respect to any of them,

15  and I would also note that SiPC has approved all of the fee

16  applications here before Your Honor -- before you this

17  morning.

18          I know Your Honor is fully familiar with all the

19  recent developments that occurred during the compensation

20  period, and unless Your Honor has specific questions I would

21  just go forward with a brief description of the -- of recent

22  events and where we are and where we're headed.

23          THE COURT: All right.

24          MR. CREMONA: And I'll also defer to Mr. Bell who

25  will speak on behalf of SiPC.

```
 1            I'll start out, Your Honor, with the status of the
 2   good faith cases because I know you're familiar with a lot
 3   of activity that has gone on in the last year or so.
 4            As Your Honor is aware there were over 900 cases
 5   filed, 900 good faith cases filed at the outset of these
 6   cases.  The vast majority of those cases were sent back
 7   before Your Honor after Judge Rakoff issued his antecedent
 8   debt decision in December -- in October of 2013 and the
 9   cases began to move forward in early 2014.  Since that time
10   we have resolved the vast majority of them through
11   settlements and/or dismissals, and we are now down to about
12   358 cases as we sit here today.  We continue to work to
13   swiftly resolve those remaining cases as quickly as possible
14   through trial and/or summary judgment.
15            As Your Honor is aware during the compensation
16   period we completed the post-trial briefing in the Andrew
17   Cohen matter which I'm happy to report is now pending before
18   Judge Swain and moving forward.
19            With respect to the bad faith actions we, the
20   trustee, has approximately 116 of those bad faith, feeder
21   fund and/or subsequent transferee actions currently pending.
22   Many of those cases are involved in the extraterritoriality
23   proceeding in front of Your Honor.
24            With regard to claims objections we have
25   approximately 1,073 claims objections remaining as of August
```

1    31.  In January this Court entered an order on the trustee's
2    sixth and seventh omnibus motions that resolved objections
3    related to 149 claims.  Earlier in the year the trustee
4    filed a motion to resolve objections related to 17 indirect
5    claims which the Court also granted.
6         Moving onto settlements with -- we have --
7    continue to make a tremendous amount of progress in reaching
8    agreements in the case.  During the compensation period the
9    trustee settled 71 cases for approximately $212 million.
10   We've also entered into settlements after March 31st outside
11   the compensation period that will bring an additional
12   approximately $90 million into the customer fund.  We're
13   involved and we continue to be involved in negotiations that
14   are ongoing with respect to a number of parties that we hope
15   to resolve in the near future.
16        Moving onto the interim distributions which I
17   think are important and certainly worth noting.  During the
18   compensation period the trustee made his sixth interim
19   distribution of customer property which commenced on
20   December 4th.  The trustee distributed $1.193 billion or
21   8.262 percent of each customer's claim.  After distribution
22   the initial distribution and the additional 15.4 million of
23   payments were made bringing the total sixth interim
24   distribution amount to 1.209 billion through August 31.
25        Also worth noting the trustee made his seventh

1   interim distribution which again occurred outside the

2   compensation period on June 30, 2016.  But certainly worth

3   noting here today the trustee distributed another 190

4   million -- approximately 190.2 million or 1.305 percent on

5   each customer claim.

6           So as of August 31 in total the trustee has

7   distributed approximately 9.467 billion to BLMIS customers

8   which includes SiPC advances in the amount of 836.6 million

9   and that represents 58.369 percent of each allowed customer

10  claim.

11          Unless Your Honor has any questions on that I

12  would move on to the foreign fee applications.  And as Your

13  -- as I know Your Honor is very well aware, we have a number

14  of international firms that are special counsel to the

15  trustee.  I'm going to focus on the four most significant

16  firms.

17          The first I'll start with Brown Jacobson which is

18  our principal foreign counsel.  They have the most time of

19  any of the firms, working over 2,300 hours on behalf of the

20  trustee.  During the compensation period Brown was active in

21  the Viscia (ph) matter, primarily in connection with settle

22  -- the -- finalizing the settlement as well as appearing

23  before a hearing -- before the Privy Council in London on

24  the underlying dispute.  And as Your Honor is aware

25  settlement was reached and Brown Jacobson were instrumental

1    to that settlement and they continue to work with Baker &

2    Hostetler and advise the trustee in connection with various

3    matters abroad and specifically on issues of English law.

4            The next firm is the Seroker Agmon (ph) firm which

5    is the trustee's Israeli counsel and they spent

6    approximately 1,900 on the trustee's behalf during the

7    compensation period.  They have researched, analyzed and

8    advised the trustee in connection with Israeli law,

9    specifically during the compensation period they filed two

10   complaints and prepared exhibits related to avoidance

11   actions that the trustee has brought in Israel seeking to

12   recover transfers received from the magnified defendants.

13           One clarification for the record that I wanted to

14   alert the Court to.  There was an error in the Seroker fee

15   application in the second line of paragraph 14.  It

16   incorrectly stated that Seroker's out of pocket expenses

17   were $29,647.02.  The correct amount that should have been

18   referenced in that sentence was $25,344.88 because that was

19   prior to applying a 17 percent value added tax.  So,

20   ultimately, the amounts are correct because the $29,647.02

21   amount is the correct amount.  So none of the amounts in the

22   application have changed.  We just wanted to point that out

23   for the record.

24           The next firm is the Williams Baristers which are

25   the trustee's Bermuda counsel.  They spent approximately 500

1  hours on behalf of the trustee in the compensation period.

2  They have focused on issues of Bermuda law and procedure.

3           In addition, they've monitored proceedings in the

4  Supreme Court of Bermuda involving several Madoff-related

5  entities, specifically monitoring a third party action filed

6  by the Kingate Funds against KML and several other related

7  defendants, including Seretti (ph) and Grosso (ph) and Fimm

8  (ph) who are defendants in the trustee's Kingate adversary

9  proceeding as I'm -- I know Your Honor is very familiar

10 with.  And it is important for them to be actively involved

11 in the Bermuda action because we're not other -- it's not

12 otherwise public and we're not otherwise apprised of the

13 situation unless we're there in person.

14          The next firm is the Treay Stagnetto Nisch (ph)

15 firm and that's the trustee's Gibraltar counsel.  They spent

16 approximately 350 hours on behalf of the trustee during the

17 compensation period advising the trustee on various issues

18 of Gibraltar law and representing the trustee before the

19 courts of Gibraltar and assisting in drafting and filing

20 related pleadings.

21          They also were instrumental in assisting the

22 trustee with settlement negotiations related to the

23 mediation proceedings in the Viscia action as well as the

24 preparation for and attendance at the hearing before Privy

25 Council, again, with the focus on Gibraltar law.

1                I would also point out, Your Honor, that these fee
2    applications request approval of a portion of the holdbacks
3    that were held back from the prior compensation periods
4    which is just one nuance with respect to this interim
5    period.  And last -- and I would mention that our conflicts
6    counsel, my colleague, Howard Simon, is here on behalf of
7    Windels Marx.  Windels Marx and Young Conaway have done an
8    excellent job on behalf of the trustee and been instrumental
9    in assisting us in all of the progress that we made during
10   the period.  And Mr. Simon is here to address their fee
11   application in more detail.
12               So unless Your Honor has questions in light of the
13   submissions that were made, and the fact that no objections
14   were filed, and the fact that SiPC has supported the fee
15   request I respectfully request that an order be entered
16   approving the fee applications.
17               THE COURT:  Thank you.
18               MR. CREMONA:  Thank you, Your Honor.
19               THE COURT:  Does anyone else want to be heard?
20               MR. SIMON:  Good morning, Your Honor.  Howard
21   Simon from Windels Marx.
22               Your Honor, I would just like to place a
23   correction on the record.  We made an error in the
24   calculation, not of the interim compensation, but of the
25   current balance of the Windels Marx holdback and which, in

Page 11

1  turn, lead to an overstatement, a slight overstatement of
2  the amount that we are seeking to release from the holdback.
3         That -- those errors were brought to the attention
4  of SiPC and the -- both the overstated amounts and the
5  correct amounts are set forth in paragraph 4 of SiPC's
6  recommendation for the approval of Windels' fees and they
7  refer to the error at paragraph -- at page 18, footnote 2 of
8  the Windels application.
9         And just to get the correct information on the
10 record the holdback as stated in the application was
11 $3,901,814.82.  That was overstated by slightly over
12 $33,000.  The correct amount of the holdback as of March
13 31st, 2016 is $368,060.60.  And as to the amount that
14 Windels is seeking to have released, the overstated amount
15 was $1,287,598.89 and the corrected amount is $1,276,460, an
16 amount lower by slightly over $11,000.  And we would
17 respectfully request that our fee application be deemed so
18 amended and that the release we are requesting be the
19 corrected app.
20         THE COURT:  Thank you.
21         MR. SIMON:  Thank you.
22         THE COURT:  Anyone else?  Mr. Bell, you can stay
23 seated if you -- Mr. Bell, you can stay seated if you wish.
24         MR. BELL:  No, Your Honor.  Thank you, Your Honor.
25 Good morning.  Kevin Bell on behalf of the Securities

1   Investor Protection Corporation.

2          Today is day 2,828 of the Madoff liquidation

3   proceeding and as you see from Baker's application it's the

4   twenty-first application covering through month 86 of their

5   invoices and SiPC is here to support having reviewed every

6   page, every entry on every page of every one of these fee

7   applications over that period of time and made suggestions

8   to all the firms.  And as Mr. Simon noted, our

9   recommendation contains the corrected amount as to the

10  holdback as to Windels.  We were on top of that --

11          THE COURT:  Can I ask does SiPC have any --

12          MR. BELL:  -- right away.

13          THE COURT:  -- objection to the payment of the

14  holdback?

15          MR. BELL:  No, Your Honor.  No.  We support the

16  payment of the holdback because this is a significant amount

17  as we set forth in our recommendation for all of them.  And

18  it's uniform now.  Last year we did it in two stages.  We

19  did it in the hearing in -- at this time and then again in

20  December, and to make everybody's life easier, including the

21  Court's, we tried to make it uniform and did the holdback

22  once this year because it does get complicated as you see

23  with the potential errors that could occur and the error

24  that did occur.

25          So -- well, you know, the standard as the Court

1   well knows and as articulated over these 21 fee hearings is
2   78eeeb5a and b5c where this is a case where this Court has
3   commented previously about reasonable expectation.  SiPC had
4   -- relies on the trustee and to its best knowledge we accept
5   the trustee's statement at paragraph -- at page 86 of his --
6   of the trustee's and Baker's application that there's no
7   reasonable expectation of recoupment of the monies that SiPC
8   advances and the general estate is not sufficient and,
9   therefore, SiPC shall, according to the statute, advance
10  funds to pay this.  And, therefore, we're extremely
11  meticulous in the review of all of these entries.
12              I would note for the Court's benefit at paragraph
13  6 of the SiPC recommendation on Baker & Hostetler there has
14  been an adjustment of 13.7 percent off the rates usually
15  charged by Baker which includes the ten percent across the
16  board plus other adjustments caused by conversations that we
17  have had with Baker over these months.
18              We would note that in paragraph 3 of the
19  recommendation with regard to Windels Marx the adjustment is
20  15.8 percent.  Similar adjustments have occurred on other
21  counsel that we have before we signed the recommendation.
22              So because of the responsibility congress has put
23  on us on fees here (indiscernible) is really a case where I
24  would say we're not going to get around to a general estate
25  and SiPC has to advance the money.  And the responsibility

1  congress has put on us we feel very comfortable in all these

2  recommendations on the interim fee as well as on reducing

3  the holdback by one-third, which we have pretty much told

4  counsel is a once a year occurrence as we go forward.  We

5  are approaching the eighth anniversary of filing this

6  liquidation proceeding.  Hopefully one of these days I'll be

7  here on final fees, maybe.

8           THE COURT:  Hopefully.  Hopefully I will, too.

9           MR. BELL:  I just don't see that in the

10 foreseeable future.  As the Court knows we have -- are hotly

11 contested on a number of matters.  We continue to monitor

12 the trustee's success rate in settling these matters.  And

13 as Mr. Cremona says we're down to less than 500 pieces of

14 litigation from 1,000 that were filed in the time period

15 before the end of 2010.

16          The trustee is -- and I am hopeful to appear

17 before the Court in the very near future with significant

18 other settlements that we expect to be filed very shortly

19 which will continue the progress of getting money back to

20 customers.  As Mr. Cremona talked we're at 58.369 percent.

21 We hopefully later this year will be able to come with an

22 allocation with these potential settlements of breaking 60

23 cents on the dollar back to the victims who have allowable

24 claims so that -- and we note for the Court as we see

25 anybody who had a claim, one-million, $160,000 an allowed

1   amount has been fully paid --

2           THE COURT:  Thank you.

3           MR. BELL:  -- including what SiPC advances.  So

4   thank you, Your Honor.  We would ask the Court to enter the

5   order approving all these fees.

6           Thank you, Your Honor.

7           THE COURT:  Is there anyone else who wants to be

8   heard?

9           The record should reflect there's no response.

10          In light of SiPC's recommendation and the fact

11  that the customer estate is insolvent I'll approve the

12  requests including the recommendations relating to the

13  holdbacks.  You can submit an order.

14          Thank you.

15      (A chorus of thank you)

16      (Proceedings concluded at 10:24 a.m.)

17

18

19

20

21

22

23

24

25

1                           I N D E X

2

3                          R U L I N G S

4

5    IDENTIFICATION                                          PAGE

6    Omnibus Interim Fee Applications                          15

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                        CERTIFICATE

 2

 3        I, Sherri L. Breach, certify that the foregoing

 4   transcript is a true and accurate record of the proceedings.

 5
     Sherri L Breach
 6   Digitally signed by Sherri L Breach
     DN: cn=Sherri L Breach, o, ou,
     email=digital1@veritext.com,
     c=US
 7   Date: 2016.09.08 11:32:39 -04'00'
     _____

 8   Sherri L. Breach

 9   AAERT Certified Electronic Reporter & Transcriber CERT*D-397

10

11

12   DATE:   September 7, 2016

13

14

15

16

17

18

19

20

21

22   Veritext Legal Solutions

23   330 Old Country Road

24   Suite 300

25   Mineola, NY 11501
```