**Baker & Hostetler LLP**

45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Seanna R. Brown
Nicholas J. Cremona
Jorian L. Rose
Amy E. Vanderwal
Stephanie A. Ackerman

Hearing Date:  October 26, 2016
Hearing Time:  10:00 AM (EST)
Objection Deadline:  October 5, 2016

*Attorneys for Irving H. Picard, Trustee for the*
*Substantively Consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities LLC*
*and the Estate of Bernard L. Madoff*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (SMB) |
| Plaintiff-Applicant, | SIPA Liquidation |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |

**TRUSTEE'S MOTION AND MEMORANDUM OF LAW TO AFFIRM HIS
DETERMINATIONS DENYING CLAIMS OF CLAIMANTS HOLDING INTERESTS IN
AHT PARTNERS, PERGAMENT EQUITIES, LLC, SMT INVESTORS LLC,
GREENE/LEDERMAN, L.L.C., AND TURBO INVESTORS, LLC**

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................. 1

BACKGROUND ..................................................................................................... 2

    A.    THE COMMENCEMENT OF THE SIPA PROCEEDING ................................ 2

    B.    THE LIMITED LIABILITY COMPANIES' STRUCTURE, BLMIS
          ACCOUNTS, AND CLAIMS ...................................................................... 3

          1.    AHT Partners (a.k.a. AHT Associates, LLC) ............................. 4

          2.    Pergament Equities, LLC ......................................................... 5

          3.    SMT Investors LLC ................................................................. 7

          4.    Greene/Lederman, L.L.C. ........................................................ 8

          5.    Turbo Investors, LLC ............................................................ 10

    C.    THE BLMIS ACCOUNT RECORDS ........................................................ 12

    D.    THE CLAIMS ...................................................................................... 13

    E.    THE CUSTOMER DECISIONS .............................................................. 13

          1.    The Initial Feeder Fund Motion .............................................. 14

          2.    The ERISA Motion ................................................................ 15

          3.    Other Customer Motions ......................................................... 16

ARGUMENT ...................................................................................................... 18

CONCLUSION .................................................................................................... 25

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Adler, Coleman Clearing Corp.,*
  216 B.R. 719 (Bankr. S.D.N.Y. 1998) .......................................................................20

*Aozora Bank Ltd. v. Sec. Inv'r Prot. Corp. (In re Bernard L. Madoff Inv. Sec. LLC),*
  480 B.R. 117 (S.D.N.Y. 2012) .................................................................................14

*Appleton v. First Nat'l Bank of Ohio,*
  62 F.3d 791 (6th Cir. 1995) .....................................................................................20

*In re Beacon Assocs. Litig.,*
  745 F. Supp. 2d 386 (S.D.N.Y. 2010) .......................................................................2

*In re Bernard L. Madoff Inv. Sec. LLC,*
  654 F.3d 229 (2d Cir. 2011) .........................................................................2, 15, 20, 21

*JTB Enters., L.C. v. D & B Venture. L.C. (In re DeLuca),*
  194 B.R. 79 (Bankr. E.D.Va. 1996) ......................................................................8, 22

*In re Klein, Maus & Shire, Inc.,*
  301 B.R. 408 (Bankr. S.D.N.Y. 2003) .....................................................................25

*Kruse v. Sec. Inv'r Prot. Corp. (In re Bernard L. Madoff Inv. Sec. LLC),*
  708 F.3d 422 (2d Cir. 2013) .......................................................................... *passim*

*In re Lehman Bros. Inc.,*
  462 B.R. 53 (Bankr. S.D.N.Y. 2011) .......................................................................19

*In re Lehman Bros., Inc.,*
  791 F.3d 277 (2d Cir. 2015) .....................................................................................20

*Mishkin v. Siclari (In re Adler, Coleman Clearing Corp.),*
  277 B.R. 520 (Bankr. S.D.N.Y. 2002) ...................................................................3, 25

*Sec. Inv'r Prot. Corp. v. 2427 Parent Corp. (In re Bernard L. Madoff Inv. Sec. LLC),*
  779 F.3d 74 (2d Cir. 2015) ......................................................................................23

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff Inv. Sec. LLC),*
  454 B.R. 285 (Bankr. S.D.N.Y. 2011) ..................................................................14, 25

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff Inv. Sec. LLC),*
  515 B.R. 161 (Bankr. S.D.N.Y. 2014) ...............................................................17, 21, 25

## TABLE OF AUTHORITIES
### (continued)

Page(s)

*Sec. Inv'r Prot. Corp. v. Jacqueline Green Rollover Account*,
  Nos. 12 Civ. 1039 (DLC), 12 Civ. 1139 (DLC), 2012 WL 3042986 (S.D.N.Y.
  July 25, 2012)....................................................................................................16

*Sec. Inv'r Prot. Corp. v. Morgan, Kennedy & Co.*,
  533 F.2d 1314 (2d Cir. 1976)............................................................15, 20, 21, 24

*SEC v. Madoff*,
  No. 1:08-cv-10791-LLS, 2008 WL 5197070 (S.D.N.Y. filed Dec. 11, 2008) ........................2

*Stafford v. Giddens (In re New Times Sec. Servs., Inc.)*,
  463 F.3d 125 (2d Cir. 2006)..................................................................14, 20, 24

**Statutes**

15 U.S.C. § 78aaa *et seq.* .......................................................................................1

15 U.S.C. § 78eee(a)(4) .........................................................................................2

15 U.S.C. § 78eee(b)(3) .........................................................................................2

15 U.S.C. § 78eee(b)(4) .........................................................................................2

15 U.S.C. § 78fff-1(a) ...........................................................................................2

15 U.S.C. § 78fff-2(b) ..........................................................................................20

15 U.S.C. § 78fff-3(a) ...........................................................................................3

15 U.S.C. § 78*lll*(2)........................................................................................2, 3, 16, 19

15 U.S.C. § 78*lll*(4) ............................................................................................3

15 U.S.C. § 78*lll*(11) ........................................................................................3, 23

DEL. CODE ANN. tit. 6, § 18-701 (West 2016) ..............................................................22

Dodd-Frank Wall Street Reform and Consumer Protection Act. Pub. L. No. 111-
  203, § 983(b), 124 Stat. 1931 (2010) ...................................................................19

FLA. STAT. § 605.0110(2) (West 2016)......................................................................22

FLA. STAT. § 605.0110(4) (West 2016)......................................................................22

VA. CODE ANN. § 13.1–1021 ..................................................................................22

VA. CODE ANN. § 13.1-1021 ..................................................................................22

## TABLE OF AUTHORITIES
### (continued)

Page(s)

**Rules**

Fed. R. Civ. P. 36(a)(3) .......................................................................................... *passim*

**Other Authorities**

1–12 *Collier on Bankruptcy* ¶ 12.12 (16th ed. 2012) ..................................................15

Irving H. Picard, as trustee ("Trustee") for the substantively consolidated liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15 U.S.C. § 78aaa *et seq.* ("SIPA"),[1] and the chapter 7 estate of Bernard L. Madoff ("Madoff"), respectfully submits this combined motion and memorandum of law (the "Motion") to affirm the denial of twenty claims filed by claimants (the "Objecting Claimants") who objected to the Trustee's determinations and who held interests in one of the following BLMIS account holders: AHT Partners, Pergament Equities, LLC, SMT Investors LLC, Greene/Lederman, L.L.C., and Turbo Investors, LLC (collectively, the "Limited Liability Companies"). The Objecting Claimants are specifically identified in Exhibit 2 to the Declaration of Vineet Sehgal ("Sehgal Declaration") filed herewith. This Motion is based upon the law set forth below as well as the facts set forth in the accompanying Sehgal Declaration and the Declaration of Stephanie Ackerman ("Ackerman Declaration").

## PRELIMINARY STATEMENT

The Objecting Claimants seek customer status in this SIPA proceeding, despite the fact that they did not have accounts in their names and had no direct financial relationship with BLMIS. Instead, they invested in the Limited Liability Companies, each of which had a BLMIS account, invested member assets with BLMIS, and filed its own claim with the Trustee.[2] The case is governed by the Second Circuit decision *Kruse v. Sec. Inv'r Prot. Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*, 708 F.3d 422 (2d Cir. 2013) and the many related decisions in this SIPA proceeding, referenced in Section E *infra*, involving the question of who is a "customer" under

---

[1] For convenience, subsequent references to sections of the Securities Investor Protection Act shall be denoted simply as "SIPA § __."

[2] The Limited Liability Companies have been grouped together in this Motion because the Trustee believes that they represent the remaining Limited Liability Company BLMIS account holders for which a number of members also claim "customer" status.

SIPA.  The current Motion seeks to apply these decisions to the Objecting Claimants through

entry of an order affirming the Trustee's denial of their claims as listed in Exhibit 2 to the

Declaration of Vineet Sehgal, disallowing their claims, and overruling the related claims

objections on the grounds that Claimants are not "customers" as such term is used at SIPA §

78*lll*(2). [3]

## BACKGROUND

### A.    THE COMMENCEMENT OF THE SIPA PROCEEDING

The basic facts of the BLMIS fraud are widely known and have been recounted in

numerous decisions.  *See, e.g.*, *In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d 229, 231-34 (2d

Cir. 2011); *In re Beacon Assocs. Litig.*, 745 F. Supp. 2d 386, 393–94 (S.D.N.Y. 2010).   On

December 11, 2008, the Securities and Exchange Commission ("SEC") filed a complaint in the

District Court against Madoff and BLMIS, captioned *SEC v. Madoff*, No. 1:08-cv-10791-LLS,

2008 WL 5197070 (S.D.N.Y. filed Dec. 11, 2008), alleging fraud through the investment advisor

activities of BLMIS.  The SEC consented to the consolidation of its case with an application of

the Securities Investor Protection Corporation ("SIPC").  Thereafter, SIPC filed an application

under SIPA § 78eee(a)(4) alleging that because of its insolvency, BLMIS customers needed

SIPA protection.  The District Court appointed the Trustee under SIPA § 78eee(b)(3) and

removed the proceeding to this Court under SIPA § 78eee(b)(4).

Under SIPA, the Trustee is responsible, among other things, for recovering and

distributing customer property to a broker's customers, assessing claims, and liquidating other

assets of the firm for the benefit of the estate and its creditors.  A SIPA trustee has the general

powers of a bankruptcy trustee, in addition to the powers granted by SIPA.  SIPA § 78fff-1(a).

---

[3] The Trustee reserves all other bases for objections to the claims that are the subject of the Motion.

The statutory framework for the satisfaction of customer claims in a SIPA liquidation proceeding provides that "customers," as defined in SIPA § 78*lll*(2), share pro rata in "customer property," defined in SIPA § 78*lll*(4), to the extent of their "net equity," defined in SIPA § 78*lll*(11). For each customer with a valid net equity claim, if the customer's share of customer property does not make him or her whole, SIPC advances funds to the SIPA trustee up to the amount of the customer's net equity, not to exceed $500,000 (the amount applicable to this case). SIPA § 78fff-3(a). It is the customer's burden to demonstrate he or she is entitled to customer status. *Mishkin v. Siclari (In re Adler, Coleman Clearing Corp.)*, 277 B.R. 520, 557 (Bankr. S.D.N.Y. 2002) ("[I]t is well-established in the Second Circuit that a claimant bears the burden of proving that he or she is a 'customer' under SIPA.").

On December 23, 2008, this Court entered a Claims Procedures Order. *See* ECF No. 12. Pursuant to that order, the Trustee determines claims eligible for customer protection under SIPA, claimants may object to the Trustee's determination of a claim by filing an objection in this Court, after which the Trustee requests a hearing date for the objection and notifies the objecting claimant thereof. *Id.*

## B. THE LIMITED LIABILITY COMPANIES' STRUCTURE, BLMIS ACCOUNTS, AND CLAIMS

The Objecting Claimants invested in one or more of the Limited Liability Companies. One (1) claim was filed by an Objecting Claimant relating to AHT Partners; two (2) claims were filed by Objecting Claimants relating to Pergament Equities, LLC; seven (7) claims were filed by Objecting Claimants relating to SMT Investors LLC; nine (9) claims were filed by Objecting Claimants relating to Greene/Lederman, L.L.C.; and one (1) claim was filed by an Objecting Claimant relating to Turbo Investors, LLC. *See* Sehgal Decl. ¶¶ 10-11, Exs. 1-2. The claims of the Limited Liability Companies themselves are not at issue in this Motion.

### 1.  AHT Partners (a.k.a. AHT Associates, LLC)

BLMIS Account number 1A0001 was opened on or around November 15, 1991 in the name of AHT Partners.  Sehgal Decl., Ex. 4, AMF00143884-86.  According to AHT Associates, LLC's direct claim, AHT Partners was formed as a partnership in 1991 in order to invest with BLMIS.  Sehgal Decl. Ex. 5, MWPTAP00088586.  Then, on January 1, 1998, AHT Associates, LLC, was formed as a Virginia Limited Liability Company in order to "supersed[e] and cancel[]" AHT Partners.[4] *Id.*

The account opening documents were signed by Allan R. Hurwitz as Managing Partner of AHT Partners.[5]  Sehgal Decl., Ex.4, AMF00143884-92.  Mr. Hurwitz also signed a BLMIS Partnership Account Agreement identifying himself, Irving Greenspan, and Gerald G. Thompson as the AHT Partners' general partners.  *Id.* at AMF00143892.  The Partnership Account Agreement also indicated that all BLMIS communications should be sent to "AHT Partners c/o Allan R. Hurwitz."  *Id.*  All requests for withdrawals were sent to BLMIS from "Allan R. Hurwitz, General Partner" on his letterhead and with his signature. *See, e.g.*, *Id.* at AMF00143807.  Likewise, all deposits into the AHT Partners BLMIS account were sent to BLMIS by Allan R. Hurwitz. *See, e.g.*, *id.* at AMF00143808.[6]  BLMIS books and records related to 1A0001 contain no references to the objecting claimants, nor do the records identify the investors in AHT Associates, LLC.  *See generally* Sehgal Decl. Ex. 4.

---

[4] COMMONWEALTH OF VIRGINIA STATE CORP. COMM'N, "AHT Associates, LLC" Search Results, https://sccefile.scc.virginia.gov/Business/S024971 (last searched Sept. 9, 2016).

[5] A second, unrelated, BLMIS Account, 1A0116, was also held in the name of AHT Partners.  In two instances, letters requesting withdrawals from 1A0116 were mistakenly filed in 1A0001's customer file.  Sehgal Decl. Ex.4, AMF00143825, 831.  BLMIS Account 1A0116 is not the subject of the Motion.

[6] Some letters relate to AHT Partners and another Allan R. Hurwitz Account, LWT Associates, LLC, 1W0070, but all were signed by Allan R. Hurwitz. *See, e.g.*, *id.*, AMF00143814.

The AHT Associates, LLC Objecting Claimant failed to respond to the Trustee's discovery requests. By failing to respond to the requests for admissions, the Objecting Claimant admitted (among other things) that she did not have an account in her name at BLMIS, never deposited or withdrew cash or securities with or from BLMIS, did not receive investment statements, correspondence or tax statements from BLMIS, did not have any control, investment discretion or decision-making power over any investments at BLMIS, and that their only relationship to BLMIS existed by way of their relationship to the Limited Liability Company. *See generally* Ackerman Decl. ¶¶ 12-14, Ex. 3; *see also* FED. R. CIV. P. 36(a)(3).

AHT Associates, LLC filed a claim for its account. The Trustee allowed the claim in the amount of $5,464,163.96 and a determination letter was sent to AHT Associates, LLC on May 15, 2013 allowing its claim.[7]

## 2.    Pergament Equities, LLC

BLMIS account number 1CM580 was opened on or around April 29, 1999 in the name of Pergament Equities, LLC. Sehgal Decl. Ex. 8, AMF00267107. The account opening documents were signed by Robert Pergament individually or with Lois Pergament, including the BLMIS Customer Agreement, BLMIS Option Agreement, and the BLMIS Partnership Agreement. *See id.*, AMF00267104, 106-108, 110, 113. All requests for withdrawals and further communication with BLMIS, however, were by and with Robert Pergament only. *Id.*, AMF00267086, 88-98.

The Operating Agreement for Pergament Equities, LLC dated March 24, 1999, and located in the records of BLMIS, identified only two members of Pergament Equities, LLC— Robert Pergament and Lois Pergament, each as 50% owners. *Id.*, AMF00267115-138 at 138. The stated purpose of Pergament Equities, LLC is to make whatever investments the Managing

---

[7] The AHT Associates, LLC claim was previously deemed determined pending the outcome of litigation.

Member shall determine to be in the company's best interest.  Sehgal Decl. Ex. 8, Section 3.1, AMF00267121.  Article One of the Operating Agreement identifies Robert Pergament as the Managing Member.  *Id.*, AMF00267119.  And, under the Operating Agreement, the Managing Member has the authority to make all business decisions regarding where and when the Limited Liability Company will do business.  *Id.*  In addition, the Operating Agreement defines "Property" as "all real, personal and mixed properties, cash, assets, interests and rights of any type owned by the Company" and that "[a]ll assets acquired with Company funds or in exchange for Property" shall be the Company's Property.  *Id.*, AMF00267120.[8]

The Trustee served discovery on the Pergament Equities, LLC Objecting Claimants and no responses were received. Ackerman Decl. ¶¶ 15-17, Ex. 4.  By failing to respond, the Pergament Equities, LLC Objecting Claimants admit, among other things, that they did not have an account in their names at BLMIS, never deposited cash or securities with BLMIS, did not receive investment statements, correspondence or tax statements from BLMIS, did not have any control, investment discretion or decision-making power over any investments at BLMIS, and that its only relationship to BLMIS existed by way of its relationship to the Limited Liability Company.  *See generally id.*; *see also* FED. R. CIV. P. 36(a)(3).

Pergament Equities, LLC filed a claim for its account.  The Trustee denied the claim because based on the Trustee's analysis, the amount of money that Pergament Equities, LLC withdrew from the account was greater than the amount that was deposited, making the account a "net winner."  Thus, a determination letter was sent to Pergament Equities, LLC denying its

---

[8] The Objecting Claimants also produced segments of an unexecuted Amended and Restated Operating Agreement of Pergament Equities, LLC, dated April 1, 1999.  Sehgal Decl. Ex. 9, MWPTAP00551085-121, Ex. 10, MWPTAP00551136-70.  Despite some terminology differences, the role of the manager and other substantive directives remain unchanged in the April 1, 1999 version.

customer claim. Pergament Equities, LLC did not file an objection to the Trustee's
determination of its claim.

### 3.    SMT Investors LLC

BLMIS Account number 1CM827 was opened in the name of SMT Investors LLC on or
around September 19, 2003.[9]  Sehgal Decl., Ex. 12, AMF00275884-890.  All BLMIS account
opening documents were signed by Lary S. Wolf as Manager of SMT Investors LLC and all
communications with BLMIS were by David R. Greenbaum or Lary S. Wolf as Managers.  *See
id.*, AMF00275866-69, 870-72.   Likewise, all withdrawal requests were written on SMT
Investors LLC letterhead and were made by David R. Greenbaum, *Id.*, AMF00275866-68, 870-
72, 75-76, 78, or Lary S. Wolf.  *Id.*, AMF00275869, 73.  In all instances, the withdrawals were
made payable to SMT Investors LLC and sent to the address of record for SMT Investors LLC.
*See generally* Sehgal Decl. Ex. 12.  None of the SMT Investors LLC Objecting Claimants were
identified in the books and records of BLMIS.

SMT Investors LLC was registered as a Delaware Limited Liability Company on
December 27, 2001.  *Id.* at AMF00275892-893.  Under Article II of the Limited Liability
Company Agreement of SMT Investors LLC, management authority for SMT Investors LLC
was vested solely in the Manager, Lary S. Wolf, David R. Greenbaum and Arnold Hodas.
Sehgal Decl. ¶26, Ex. 13, MWPTAP01136514.  Decisions were to be made by a majority vote of
the Managers, and any one of the Manager's signatures was sufficient to bind the company.  *Id.*
The Manager's powers included, but were not limited to, controlling the investment strategy and
policy; purchasing and selling securities on behalf of the company; acquiring and selling real or

---

[9] The BLMIS account opening documents list SMT Investors LLC as the account name and Bernard H. Mendik Co.
LLC as the address for the account.  *See* Sehgal Decl., Ex. 12, AMF0027894.  For ease of reference and in keeping
with the registration information, the Motion refers to the accountholder as SMT Investors LLC.

personal property of the company; and any and all things necessary to achieve the purpose of the

company. *Id.*, MWPTAP01136515-19. Additionally, under section 2.7 of Article II, the

agreement specifically restricts the authority of the non-manager members by stating that

"Members shall have no right to vote or otherwise participate in any Company decision or to . . .

conduct or control . . . the Company's business." *Id.*, MWPTAP01136530.

On August 15, 2013, the Trustee served discovery requests on Mr. Lary S. Wolf on

behalf of the SMT Investors LLC Objecting Claimants. No responses were received. By failing

to respond, the SMT Investors LLC Objecting Claimants admit, among other things, that they

did not have an account in their name at BLMIS, never deposited cash or securities with BLMIS,

did not receive investment statements, correspondence or tax statements from BLMIS, did not

have any control, investment discretion or decision-making power over any investments at

BLMIS, and that their only relationship to BLMIS existed by way of their relationships to the

Limited Liability Company. *See generally* Ackerman Decl. ¶ 8; *see also* FED. R. CIV. P.

36(a)(3).

SMT Investors LLC filed a claim for its account.[10] The Trustee allowed the claim in the

amount of $5,742,997.27 and a determination letter was sent to SMT Investors LLC on June 23,

2009 allowing its claim.

### 4.    Greene/Lederman, L.L.C.

BLMIS Account number 1G0322 was opened on or around July 10, 2000 in the name of

Greene/Lederman, L.L.C., a Florida Limited Liability Company.[11]    Sehgal Decl., Ex. 22,

AMF00186947-55. Each of the account opening documents was signed by Richard S. Greene on

---

[10] SMT Investors LLC filed two identical claims designated as 003139 and 015843. *See* Sehgal Decl. Ex. 1.

[11] FL. DEP'T OF STATE DIV. OF CORPS. "Greene/Lederman, L.L.C." Search Results,
http://search.sunbiz.org/Inquiry/CorporationSearch/SearchResults?inquiryType=EntityName&searchNameOrder=G
REENELEDERMAN&searchTerm=Greene%2FLederman (last visited Sept. 12, 2016).

behalf of Greene/Lederman, L.L.C. *Id.* In addition, the BLMIS Partnership Account Agreement identifies and is signed by four members of Green/Lederman, LLC: Richard S. Greene, Edythe P. Greene, Bruce Lederman, and Robert E. Greene. *Id., AMF00186955.* According to this agreement, BLMIS was "instructed to direct all notices or communications . . . for the Partnership in connection with the Partnership account" to Richard S. Greene. *Id.*

All requests for withdrawals and submission of deposits on behalf of Greene/Lederman, L.L.C. were sent by Richard S. Greene. All withdrawals were made payable to Greene/Lederman, L.L.C. *See generally id.* None of the Greene/Lederman, L.L.C. Objecting Claimants are identified in the books and records of BLMIS. As evidenced by supporting documentation attached to the Greene/Lederman, L.L.C. claim, all member withdrawals from the Greene/Lederman, L.L.C. Account were sent from the Greene/Lederman, L.L.C. bank account and not from BLMIS. Sehgal Decl. Ex. 23, MWPTAP00086427. Further, the "Regulations of Greene/Lederman, L.L.C." as entered into on August 1, 2000 identify the purpose of Greene/Lederman, L.L.C. as being to invest with BLMIS. *Id.*, MWPTAP00086386-96. The Regulations identify Richard S. Greene as the Managing Member, and in that role, he was charged with managing the business and affairs of Greene/Lederman, L.L.C. *Id.*, MWPTAP00086394 (Article VII). The Regulations simultaneously limit the powers of members. *Id.*, MWPTAP00086393 (Article VI).

On August 15, 2013, the Trustee served discovery on counsel for the Greene/Lederman, L.L.C. Objecting Claimants. No response was received. By failing to respond to the requests for admissions, the Greene/Lederman, L.L.C. Objecting Claimants admitted (among other things) that they did not have an account in their name at BLMIS, never deposited cash or securities with BLMIS, did not receive investment statements, correspondence or tax statements from BLMIS,

9

did not have any control, investment discretion or decision-making power over any investments at BLMIS, and that their only relationship to BLMIS existed by way of their relationship to the partnership. *See generally* Ackerman Decl. ¶ 8, Ex. 2; *see also* FED. R. CIV. P. 36(a)(3).

Greene/Lederman, L.L.C. filed a customer claim for account 1G0322. The Trustee allowed the claim in the amount of $7,733,852.03 and a determination letter was sent on June 10, 2010 allowing its claim.[12]

### 5. Turbo Investors, LLC

BLMIS Account 1T0052 was opened in the name of Turbo Investors, LLC on or around November 20, 2001. Sehgal Decl., Ex. 34, AMF00226495-501. Turbo Investors, LLC is a Delaware Limited Liability Company, formed in Delaware on November 5, 2001.[13] Included in the BLMIS account opening documents is a November 20, 2001 Corporate Resolution signed by the officers of Turbo Investors, LLC on November 20, 2001 authorizing the opening of account 1T0052. *Id.*, AMF00226495. The Corporate Resolution identifies three officers of Turbo Investors, LLC as being authorized to act on its behalf, Richard L. Tuch as its president, Harvey Karofsky as its vice-president, and Robert Gopen as its treasurer. *Id.* In addition, the Corporate Resolution identifies Donna Foster as secretary of the Limited Liability Company. *Id.* All of the remaining BLMIS opening documents were signed by Richard Tuch. *Id.*, AMF00226494, 496-501.

All requests for withdrawals or submissions of deposits to BLMIS on behalf of Turbo Investors, LLC were on Turbo Investors letterhead and sent "c/o Richard Tuch" at the Venture

---

[12] After Greene/Lederman, L.L.C.'s claim was allowed by the Trustee in June 2010 the Limited Liability Company sold the claim, effective December 15, 2010.

[13] A search of Delaware-registered Limited Liability Companies confirmed that Turbo Investors, LLC was incorporated on November 5, 2001. *See* DELAWARE DEP'T OF STATE: DIV. OF CORPS., General Information Name Search, https://icis.corp.delaware.gov/Ecorp/EntitySearch/NameSearch.aspx (last searched Sept. 12, 2016); *see also* Sehgal Decl. Ex. 35, MWPTAP00437294.

Management Consultants, LLC address.  *See id.*, AMF00226440-88.  The majority of these requests were signed by either Richard Tuch and Donna Foster, *see, e.g.*, *id.* at AMF00226453, or Richard Tuch alone, *see, e.g.*, *id.* at AMF00226483, 86, 87, 88.  The remaining requests were signed by Harry Karofsky with either Richard Tuch or Donna Foster.  *Id.* at AMF00226481, 484.

The Turbo Investors, LLC Objecting Claimant was not identified in the BLMIS books and records as a member of Turbo Investors, LLC.[14]  In fact, the BLMIS books and records contain no details of the formation of Turbo Investors, LLC, any of its members, or their ownership interests.[15]  In its objection, the Turbo Investors, LLC Objecting Claimant admits that its only connection to BLMIS is through its relationship with "an entity formed solely for the purpose of investing in Bernard Madoff."  ECF No. 3247 at 1.

The Trustee served discovery on the Turbo Investors, LLC Objecting Claimant and no response was received.  Ackerman Decl. ¶¶ 18-20, Ex. 5.  By failing to respond, the Turbo Investors, LLC Objecting Claimant admits, among other things, that it did not have an account in its name at BLMIS, never deposited cash or securities with BLMIS, did not receive investment statements, correspondence or tax statements from BLMIS, did not have any control, investment discretion or decision-making power over any investments at BLMIS, and that its only relationship to BLMIS existed by way of its relationship to the Limited Liability Company.  *See generally id.*, Ex. 5; *see also* FED. R. CIV. P. 36(a)(3).

Turbo Investors, LLC did not file a customer claim for its account.

---

[14] The Turbo Investors, LLC Objecting Claimant is the "David Gopen Foundation c/o Robert Gopen, Trustee." Sehgal Decl. Ex. 35, MWPTAP00437288.  Although Robert Gopen is identified as Treasurer for Turbo Investors, LLC in the Turbo Investors, LLC customer file, neither his role as Trustee for the David Gopen Foundation, nor the Foundation itself are identified in the customer file.  Sehgal Decl. Ex. 34, AMF00226495.

[15] The Objecting Claimant attached excerpts of an un-executed and un-dated "Amended and Restated Limited Liability Company Agreement of Turbo Investors, LLC" to its customer claim and objection to the Trustee's Determination of Claim as support for its position that Turbo Investors, LLC was created solely for the purpose of investing in BLMIS. Sehgal Decl. Ex. 35, MWPTAP00437294-96; MWPTAP01096442-44.

\*          \*          \*          \*          \*          \*

As discussed *infra*, under Virginia, Delaware and Florida law, the Limited Liability Companies are treated as entities that own their own property.  Each had a BLMIS account in its name according to the books and records of BLMIS and entrusted its property to BLMIS for the purposes of purchasing securities.  None of the Limited Liability Companies was a bank, broker, or dealer.  And, with the exception of Turbo Investors, LLC, each of the Limited Liability Companies filed its own claim with the Trustee.

## C.    THE BLMIS ACCOUNT RECORDS

The Limited Liability Companies each maintained an account in its own name (the "Accounts," and each, an "Account") with BLMIS.  The Objecting Claimants did not.  Sehgal Decl., ¶ 51, Exs. 1-3.  The books and records of BLMIS reflect money deposited or withdrawn by and on behalf of the Limited Liability Companies, and not by the Objecting Claimants individually.  *See* Sehgal Decl., ¶¶ 17, 21, 25, 35, 47, Exs. 4, 8, 12, 22, 34.  By failing to respond to discovery, all of the Objecting Claimants admit that BLMIS sent Account statements and related communications to the Limited Liability Companies, not the Objecting Claimants.

Because the Limited Liability Companies each maintained an Account at BLMIS, and made deposits into and withdrawals from that Account, the books and records of BLMIS reflect the amounts owing and owed by the BLMIS estate for that Account.  The books and records of BLMIS do not, in contrast, reflect deposits or withdrawals directly to or from BLMIS by the individual Objecting Claimants with regard to any Limited Liability Companies' BLMIS Account.  They also do not show what amounts individual Objecting Claimants invested in, or withdrew from, the Limited Liability Companies.  *See id.*  It was each Limited Liability Company that had the right to demand, on behalf of the Limited Liability Company, return of the

property entrusted to BLMIS for its Account, and each Limited Liability Company that is accordingly entitled to a customer claim to the extent of its net equity.

## D.    THE CLAIMS

The claims at issue in this Motion involve interests in the Limited Liability Companies. Sehgal Decl. ¶¶ 8-12, Exs. 1-3.  The Objecting Claimants, the twenty (20) claims filed by them, and the objections to determination of those claims, are specifically identified in Exhibits 2 and 3 to the Sehgal Declaration.  The Trustee denied their claims because they lacked BLMIS accounts and, thus were not customers of BLMIS.  Sehgal Decl. ¶ 11.  Collectively, the Objecting Claimants filed sixteen (16) docketed objections to the Trustee's determination of their claims. Sehgal Decl. ¶¶ 8-12, Exs. 1-3.  This Motion addresses all objections to the determination of the specified claims by Objecting Claimants who are identified on Exhibit 2 of the Sehgal Declaration.

Since receiving the sixteen (16) docketed objections to the claims determinations, the Trustee served discovery requests on each of the Objecting Claimants seeking to determine their basis for claiming customer status, and inquiring into deposits, payments, communications, account openings, and their relationship with the account holder.  None of the Objecting Claimants responded.  *See* Ackerman Decl. ¶¶ 8, 14, 17, 20.

## E.    THE CUSTOMER DECISIONS

There have been fourteen prior decisions in this proceeding dealing with whether investors in BLMIS accountholders could be treated as "customers" under SIPA; all of the decisions said they could not.[16]

---

[16] One other customer motion is presently scheduled for hearing on September 28, 2016.  *See* Trustee's Motion And Memorandum of Law To Affirm His Determinations Denying Claims Of Claimants Holding Interests In Chalek Associates LLC, Chaitman/Schwebel LLC, FGLS Equity LLC, Larsco Investments LLC, and Kuntzman Family LLC. (ECF No. 13885).  At this writing, the deadline for objections has passed and no objections have been filed. *See* Certificate Of No Objection To Trustee's Motion And Memorandum To Affirm His Determinations Denying

1.    **The Initial Feeder Fund Motion**

The Trustee's first motion regarding the definition of "customer" under SIPA was the Trustee's Motion To Affirm Trustee's Determinations Denying Claims of Claimants Without BLMIS Accounts In Their Names, Namely, Investors in Feeder Funds, filed on June 11, 2010, ECF No. 2416 (the "Initial Feeder Fund Motion").   On June 28, 2011, this Court issued its memorandum decision and order affirming the Trustee's denial of the claims.   *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff Inv. Sec. LLC)*, 454 B.R. 285 (Bankr. S.D.N.Y. 2011), *aff'd sub nom. Aozora Bank Ltd. v. Sec. Inv'r Prot. Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*, 480 B.R. 117 (S.D.N.Y. 2012), *aff'd sub nom. Kruse v. Sec. Inv'r Prot. Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*, 708 F.3d 422 (2d Cir. 2013).

The Court found that, in light of the plain language of SIPA and relevant case law, the claimants in the Initial Feeder Fund Motion did not qualify as "customers" under SIPA.   *In re Bernard L. Madoff Inv. Sec. LLC*, 454 B.R. at 290.   The Court held that the claimants invested in, not through, those feeder funds, and had no individual accounts at BLMIS.   *Id.* at 297.   It was the feeder funds that entrusted their monies with BLMIS for the purpose of trading or investing in securities—the touchstone of "customer" status—whereas the claimants purchased interests in the feeder funds.   *Id.* at 299.   The Court held that absent a direct relationship with BLMIS, the claimants sought a definition of "customer" that stretched the term beyond its limits.   *Id.* at 302.

After the District Court affirmed, *Aozora Bank Ltd.*, 480 B.R. 117 (S.D.N.Y. 2012), the claimants appealed to the Second Circuit, which also affirmed.   The Second Circuit confirmed that "[j]udicial interpretations of 'customer' status support a narrow interpretation of the SIPA's provisions."   *Kruse*, 708 F.3d at 426 (quoting *Stafford v. Giddens (In re New Times Sec. Servs.,*

---

Claims Of Claimants Holding Interests In Chalek Associates LLC, Chaitman/Schwebel LLC, FGLS Equity LLC, Larsco Investments LLC And Kuntzman Family LLC, filed Sept. 12, 2016 (ECF No. 14002).

*Inc.)*, 463 F.3d 125, 127 (2d Cir. 2006) (explaining that "the critical aspect of the 'customer'

definition" was "the entrustment of cash or securities to the broker-dealer for the purposes of

trading securities.")).   The claimants failed to meet this fundamental requirement because the

money sent to BLMIS belonged to the accountholders, not to the individual claimants, and the

individual claimants therefore failed to establish that they had entrusted cash or securities to

BLMIS.   *Kruse*, 708 F.3d at 426–27.   The Second Circuit also found that the individual

claimants did not exhibit other indicia of customer status in their dealings (or lack of dealings)

with BLMIS, including that they did not exert any control over the accounts at issue and that

they were not reflected in BLMIS records.   *Id.*

      The Second Circuit held that the interests "sold by the Feeder Funds to investors . . . did

not confer an ownership interest in money that the Feeder Funds ultimately invested in BLMIS."

*Id.* at 427.   Thus, "regardless of their intent, appellants never entrusted *their* cash or securities to

BLMIS and, thus, fail to satisfy this 'critical aspect of the "customer" definition.'"   *Id.* (quoting

*In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d at 236 (internal quotation marks omitted)); *see*

*Sec. Inv'r Prot. Corp. v. Morgan, Kennedy & Co.*, 533 F.2d 1314, 1318 (2d Cir. 1976) ("*Morgan*

*Kennedy*"); *see also Kruse*, 708 F.3d at 427-28   ("[A] claimant will not be entitled to customer

protection under SIPA unless the debtor actually receives the claimant's cash or securities; the

debtor must actually have come into possession or control.") (citing 1–12 *Collier on Bankruptcy*

¶ 12.12 (16th ed. 2012)).

      **2.**    **The ERISA Motion**

      While the appeals of the Feeder Fund Decision were pending, the Trustee also filed a

motion to address arguments that were raised by claimants without BLMIS accounts who were

benefit plans or benefit plan participants and who sought to use the Employee Retirement

Income Security Act ("ERISA") as a basis for determining their customer status.[17]  *See* ECF No.

4521.  The District Court withdrew the reference and granted the motion.

The District Court noted that the first two of the three ways to qualify as a "customer"

under SIPA § 78*lll*(2), "presume that a customer must have a securities account with the debtor,"

and that the ERISA claimants also did not qualify under the third method of having "deposited

cash with the debtor for the purpose of purchasing securities."  *Sec. Inv'r Prot. Corp. v.*

*Jacqueline Green Rollover Account*, Nos. 12 Civ. 1039 (DLC), 12 Civ. 1139 (DLC), 2012 WL

3042986, at *4 (S.D.N.Y. July 25, 2012) (quoting SIPA § 78*lll*(2)).  That was so because none of

the claimants "owned any cash deposited with BLMIS.  Rather, . . . in each case this cash was

owned by the third-party entity in which the claimant invested, and which had a BLMIS account

in its name." *Id.* at *5.  The District Court also rejected arguments that fiduciary responsibilities

could suffice to create a "customer" relationship.  *Id.* at *12.

### 3.    <u>Other Customer Motions</u>

Additional SIPA "customer" motions followed, each of which was determined in favor of

the Trustee.  On August 21, 2013, the Bankruptcy Court issued its Bench Memorandum Granting

Trustee's Second Motion to Affirm Trustee's Determinations Denying Claims of Claimants Who

Invested in Certain Feeder Funds and Did Not Have BLMIS Accounts in Their Names.  *See* ECF

No. 5450 ("the Second Feeder Fund Decision").  Noting that prior decisions established that the

burden is on the claimant to establish that he is a "customer" entitled to SIPA protection, and that

such showing is not easily met, this Court concluded that the claimants had failed to establish

their "customer" status.  The Bankruptcy Court noted that "they had no securities accounts at

BLMIS, were not known to BLMIS, lacked privity and any financial relationship with BLMIS."

---

[17] Prior to the hearing on the Initial Feeder Fund Motion, the Court had removed from the scope of the motion the question of whether ERISA affects "customer" status under SIPA.

Second Feeder Fund Decision at 4. They further "lacked property interest in any feeder fund account assets at BLMIS, entrusted no cash or securities to BLMIS, had no investment discretion over feeder fund assets invested with BLMIS, received no accounts statements or other communications from BLMIS and had no transactions reflected on the books and records at BLMIS." *Id.*

On August 22, 2014, this Court issued its Memorandum Decision Granting Motion To Affirm Trustee's Determinations Denying Claims Of Claimants Who Invested In Certain ERISA Plans. *See generally Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff Inv. Sec. LLC)*, 515 B.R. 161 (Bankr. S.D.N.Y. 2014) ("ERISA Claimant Decision"). Again holding that the burden is on the claimant to establish that he is a customer, this Court concluded that a claimant who wished to qualify as a person who has deposited cash with the debtor for the purposes of purchasing securities must show that she entrusted her "own assets directly through an account maintained in her own name rather than indirectly through a fund that then entrusted the fund's assets through an account maintained in the fund's name." *Id.* at 168 (internal citations omitted). This Court further noted that "not every victim of a broker-dealer's fraud is a 'customer,'" and that even the fact that a claimant exercised some control over her own investments in the fund or the fund's investments in BLMIS was not sufficient to meet "the narrow definition of customer under SIPA." *Id.* at 166, 168.

On February 25, 2015, this Court read into the record a decision granting the Trustee's Motion And Memorandum To Affirm His Determinations Denying Claims Of Claimants Holding Interests In S&P or P&S Associates, General Partnerships. Ackerman Decl. Ex. 6 at 30, ECF No. 9506 ("*S&P Decision*"). This Court explained that the indicia of customer status are: (i) a direct financial relationship with BLMIS; (ii) a property interest in the funds invested

directly with BLMIS; (iii) securities accounts with BLMIS; (iv) control over the account holders'
investments with BLMIS; and (v) identification of the alleged customer in BLMIS's books and
records.    The Court held that the objecting partners failed to sustain their burden of proving that
they are customers of BLMIS and an order granting the Trustee's motion was entered. *Id.* at 36;
*see also* ECF No. 9450.  Since the *S&P Decision*, there have been eleven motions to affirm the
Trustee's determinations,[18] each of which was granted by the Court ("Customer Opinions").[19]

## ARGUMENT

To be a "customer" under SIPA, an investor must have "a claim on account of securities
received, acquired, or held by the debtor in the ordinary course of its business as a broker or
dealer from or for the securities accounts of such person," including "any person who has

---

[18] One other customer motion is presently scheduled for hearing on September 28, 2016.  *See* Trustee's Motion And Memorandum of Law To Affirm His Determinations Denying Claims Of Claimants Holding Interests In Chalek Associates LLC, Chaitman/Schwebel LLC, FGLS Equity LLC, Larsco Investments LLC, and Kuntzman Family LLC. (ECF No. 13885); *see supra* note 16.

[19] *See* Order Approving Trustee's Motion To Affirm His Determinations Denying Claims of Claimants Holding Interests In Peerstate Equity Fund, L.P., ECF No. 9883 (Apr. 27, 2015); Order Approving Trustee's Motion And To Affirm His Determinations Denying Claims Of Claimants Holding Interests In The Lazarus-Schy Family Partnership, The Schy Family Partnership, Or The Lazarus Investment Group, ECF No. 10010 (May 18, 2015); Order Approving Trustee's Motion To Affirm His Determinations Denying Claims Of Claimants Holding Interests In Epic Ventures, LLC, ECF No. 10267 (June 25, 2015); Order Approving Trustee's Motion To Affirm His Determinations Denying Claims Of Claimants Holding Interests Partners Investment Co., Northeast Investment Club, And Martin R. Harnick & Steven P. Norton, Partners, ECF No. 10894 (July 29, 2015); Order Approving Trustee's Motion To Affirm His Determinations Denying Claims Of Claimants Holding Interests The Whitman Partnership, The Lucky Company, The Petito Investment Group, And The Harwood Family Partnership, ECF No. 11145 (Aug. 26, 2015); Order Approving Trustee's Motion To Affirm His Determinations Denying Claims Of Claimants Holding Interests 1973 Masters Vacation Fund, Bull Market Fund, And Strattham Partners, ECF No. 11920 (Oct. 29, 2015); Order Approving Trustee's Motion To Affirm His Determinations Denying Claims Of Claimants Holding Interests in Black River Associates LP, MOT Family Investors, LP, Rothschild Family Partnership, and Ostrin Family Partnership, ECF No. 12757 (Mar. 3, 2016); Order Approving Trustee's Motion To Affirm His Determinations Denying Claims Of Claimants Holding Interests in the Article Third Trust, Palmer Family Trust, Maggie Faustin, Estate of Theodore Schwartz, and Miller Trust Partnership, ECF No. 13172 (Apr. 26, 2016); Order Approving Trustee's Motion To Affirm His Determinations Denying Claims Of Claimants Holding Interests in William M. Pressman, Inc., William Pressman, Inc. Rollover Account, and AGL Life Assurance Company, ECF No. 13466 (June 7, 2016); and Order Approving Trustee's Motion and Memorandum To Affirm His Determinations Denying Claims Of Claimants Holding Interests in Palko Associates, Gloria Jaffe Investment Partnership, and the Miller Partnership, ECF No. 13780 (July 22, 2016).

deposited cash with the debtor for the purpose of purchasing securities." SIPA § 78*lll*(2).[20]

Thus, to be a "customer" an investor must have entrusted cash or securities to the debtor for the

purpose of trading or investing in securities.  In *Kruse*, the Second Circuit found that investors

who bought interests in a limited partnership that invested partnership funds via the partnership's

own BLMIS account "never entrusted *their* cash or securities to BLMIS and, thus, fail to satisfy

this 'critical aspect of the "customer" definition'" regardless of their intent.  708 F.3d at 427

(quoting *In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d at 236).  Similarly, the Second Circuit

in *In re New Times Securities Services* held that "[t]he critical aspect of the 'customer' definition

is the entrustment of cash or securities to the broker-dealer for the purposes of trading

---

[20] The definition applicable to this SIPA proceeding is:

> (2) Customer
>
>> (A) In General
>>
>> The term "customer" of a debtor means any person (including any person with whom the debtor deals as principal or agent) who has a claim on account of securities received, acquired, or held by the debtor in the ordinary course of its business as a broker or dealer from or for the securities accounts of such person for safekeeping, with a view to sale, to cover consummated sales, pursuant to purchases, as collateral security, or for purposes of effecting transfer.
>>
>> (B) Included persons
>>
>> The term "customer" includes—
>>
>>> (i) any person who has deposited cash with the debtor for the purpose of purchasing securities; [and]
>>>
>>> (iii) any person who has a claim against the debtor arising out of sales or conversions of such securities, [but does not include—]
>>
>> (C) Excluded persons
>>
>> The term "customer" does not include any person, to the extent that—
>>
>>> (i) the claim of such  person arises out of transactions with a foreign subsidiary of a member of SIPC; or
>>>
>>> (ii) such person has a claim for cash or securities which by contract, agreement, or understanding, or by operation of law, is part of the capital of the debtor, or is subordinated to the claims of any or all creditors of the debtor, notwithstanding  that some ground exists for declaring such contract, agreement, or understanding void or voidable in a suit between the claimant and the debtor.

SIPA § 78*lll*(2).  After the start of this case, the "customer" definition was slightly reorganized and amended in a manner irrelevant to the present issues by the Dodd-Frank Wall Street Reform and Consumer Protection Act. Pub. L. No. 111-203, § 983(b), 124 Stat. 1931 (2010); *see In re Lehman Bros. Inc.*, 462 B.R. 53, 61 n.9 (Bankr. S.D.N.Y. 2011).

securities." 463 F.3d at 128 (quoting *Appleton v. First Nat'l Bank of Ohio*, 62 F.3d 791, 801 (6th Cir. 1995)); *see also In re Adler, Coleman Clearing Corp.*, 216 B.R. 719, 724-25 (Bankr. S.D.N.Y. 1998) ("The term [customer] refers to those who entrust cash or securities to broker-dealers for the purpose of trading and investing in the securities market."). The Second Circuit recently further upheld this principle in *In re Lehman Bros., Inc.*, 791 F.3d 277 (2d Cir. 2015), concluding that the "critical aspect of the 'customer' definition is the entrustment of cash or securities to the broker-dealer for the purposes of trading securities." *Id.* at 282 (quoting *In re Bernard L. Madoff Inv. Secs. LLC*, 654 F.3d at 236). The Trustee is responsible for discharging obligations of the debtor to customers with such claims "insofar as such obligations are ascertainable from the books and records of the debtor or are otherwise established to the satisfaction of the trustee." SIPA § 78fff-2(b).

The Objecting Claimants' investments in the Limited Liability Companies do not meet the requirements for "customer" status outlined in the seminal Second Circuit decision *Morgan Kennedy*, 533 F.2d at 1318, and reaffirmed in *Kruse*, 708 F.3d at 427. In *Morgan Kennedy*, the Second Circuit rejected the argument that the beneficial owners of the account holder were the "customers" under SIPA, citing the facts that: (1) title to the trust assets was held by the account holder, not the beneficiaries; (2) the securities account with the debtor was in the name of the account holder, not the beneficiaries; (3) the account holder had the exclusive power to entrust the assets to the debtor; (4) the beneficiaries were unknown to the broker; and (5) the beneficiaries had no legal capacity in which they could deal with the debtor. 533 F.2d at 1318.

The Objecting Claimants' circumstances are little different than those of the claimants in *Morgan Kennedy*, and do not exhibit the hallmarks of customer status discussed in this Court's *S&P Decision*. *S&P Decision* at 30. The Objecting Claimants entrusted their money to the

20

Limited Liability Companies, not to BLMIS.  The Objecting Claimants lacked a direct financial

relationship with BLMIS on their own behalf.  The money entrusted to BLMIS was the property

of the Limited Liability Companies, not the Objecting Claimants.  The BLMIS Accounts were in

the names of the Limited Liability Companies, not in the individual names of Objecting

Claimants.

The individual financial interests of Objecting Claimants in each account were not

identified in BLMIS' books and records.  The corporate representatives who dealt with BLMIS

were like the trustees who acted for the trust account in *Morgan Kennedy*, and were no more

customers in their individual capacity than the trustees were.  *Morgan Kennedy*, 533 F.2d at

1318, 1320-21 (notwithstanding that the trust account was in the name of the trustees, "[a]ny

suggestion that each of the three Trustees has a separate customer claim against the debtor is

untenable" because the Trustees together managed the trust, "which was the true customer of the

broker-dealer"; similarly, noting that under the SIPA Rules, individual coverage for multiple

people who each own some portion of, or interest in, an account is "explicitly forbidden").

Only the Limited Liability Companies, not the Objecting Claimants, entrusted their cash

or securities to BLMIS, and the Objecting Claimants thus fail to satisfy this "critical aspect of the

'customer' definition." *Kruse*, 708 F.3d at 426-27 (citing *In re Bernard L. Madoff Inv. Sec. LLC*,

654 F.3d at 236); *accord ERISA Claimant Decision*, 515 B.R. at 169.  Whether the Objecting

Claimants intended the Limited Liability Companies to invest with BLMIS is irrelevant under

SIPA.  *See Kruse*, 708 F.3d at 426-27; *ERISA Claimant Decision*, 515 B.R. at 169-70.

The funds that the Objecting Claimants contributed to the Limited Liability Companies,

and anything that the Limited Liability Companies purchased with those funds, belong to the

relevant Limited Liability Company and not to any individual Objecting Claimant.  Pursuant to

21

the state laws governing the Limited Liability Companies, company property belongs to the entity alone and not to the individual members. FLA. STAT. § 605.0110(2) (West 2016) ("Property acquired with limited liability company funds is limited liability company property."); FLA. STAT. § 605.0110(4) (West 2016) ("A member of a limited liability company has no interest in any specific limited liability company property."); DEL. CODE ANN. tit. 6, § 18-701 (West 2016) ("A limited liability company interest is personal property. A member has no interest in specific limited liability company property."); VA. CODE ANN. § 13.1-1021 ("Any estate or interest in property may be acquired in the name of the limited liability company, and title to any estate or interest so acquired vests in the limited liability company."); *see also JTB Enters., L.C. v. D & B Venture. L.C. (In re DeLuca)*, 194 B.R. 79, 88 (Bankr. E.D.Va. 1996) (citing VA. CODE ANN. § 13.1–1021) (holding "members have no direct interest in the [Virginia Limited Liability Company's] property."). Like the objecting claimants dealt with by prior Customer Opinions, the Objecting Claimants do not individually own the assets that the Limited Liability Companies invested with BLMIS. Instead, the assets are collectively owned by the Limited Liability Companies themselves.

It was the Limited Liability Companies, not the Objecting Claimants, which entrusted assets to BLMIS for the purpose of purchasing securities. Each Limited Liability Company, through its management, had the right to direct the investment of those assets on behalf of the Limited Liability Company, and to withdraw property from its Account on behalf of the Limited Liability Company. Each Limited Liability Company and not the Objecting Claimants, was the customer for its respective Account under SIPA.

Because BLMIS did not perform a custodial function on behalf of the individual Objecting Claimants, the Objecting Claimants have neither "customer" claims nor individual net

equity.  The purpose of SIPA, a statute intended to deal with broker insolvency, is "to expedite

the return of customer property" by "protecting the *custody* function of brokers," according to a

Second Circuit decision that declined to permit interest or time-based damages for customer

claims under SIPA.  *Sec. Inv'r Prot. Corp. v. 2427 Parent Corp. (In re Bernard L. Madoff Inv.*

*Sec. LLC)*, 779 F.3d 74, 80 (2d Cir. 2015).  Customers share in the fund of customer property

ratably, according to each customer's "net equity." *Id.* at 77, 81.  The definition of net equity is

limited by the fundamental SIPA design "to return customer property to customers," *id.* at 77,

whether in cash or in actual securities.  *Id.* at 80.[21]

        The Second Circuit stated in *2427 Parent Corp.*, "[w]e . . . previously concluded that in

[the BLMIS] case net equity . . . should be determined based on customers' actual deposits and

withdrawals.  These deposits, net withdrawals, constitute customer property here." *Id.* at 81

(citations omitted).  The books and records of BLMIS show that Objecting Claimants made no

individual deposits into or withdrawals from BLMIS on their own behalf, and those who

interacted with BLMIS as to the Accounts did so solely on the Limited Liability Company's

behalf.  Sehgal Decl. ¶¶ 17, 21, 25, 35, 47, Exs. 4, 8, 12, 22, 34.  The Objecting Claimants

accordingly have no net equity and are not "customers" within the meaning of SIPA.

        Each of the Objecting Claimants was served with requests for admission, interrogatories,

and requests for production.  None of the Objecting Claimants responded to discovery.  By

failing to respond to the requests for admission, all of the Objecting Claimants admitted them.

FED. R. CIV. P. 36(a)(3).  These admissions show that Objecting Claimants lack any relationship

---

[21] The definition of "net equity" at SIPA § 78*lll*(11) begins, "The term 'net equity' means the dollar amount of the
account or accounts of a customer, to be determined by—

        (A) Calculating the sum which would have been owed by the debtor to such customer if the debtor had
              liquidated . . . on the filing date—(i) all securities positions of such customer . . . ."

with BLMIS that fits the *Morgan Kennedy* criteria and that their claims of "customer" status are baseless. They admitted that: (i) the relevant Account was not titled in their name;[22] (ii) that they never received investment statements or tax statements in their names from BLMIS;[23] (iii) that they never paid cash directly to BLMIS for credit to an account in their names;[24] (iv) never deposited securities directly with BLMIS;[25] (v) that they never directly withdrew or received funds directly from BLMIS;[26] (vi) that their only relationship to BLMIS existed by way of their relationship to the Account holder;[27] (vii) that they never entered into any contracts in their names with BLMIS;[28] and (viii) that they did not have any control, investment discretion or decision-making power over any investment assets at BLMIS.[29]

As the Second Circuit has explained, "[j]udicial interpretations of 'customer' status support a narrow interpretation of the SIPA's provisions." *Kruse*, 708 F.3d at 426 (quoting *In re New Times Sec. Servs., Inc.*, 463 F.3d at 127). Customer status under SIPA is narrowly construed and is the burden of the claimant to establish. *See ERISA Claimant Decision*, 515 B.R. at 166; *In re Bernard L. Madoff Inv. Sec. LLC*, 454 B.R. at 294 (citing *In re Klein, Maus & Shire, Inc.*, 301 B.R. 408, 418 (Bankr. S.D.N.Y. 2003)) ("The burden is on the claimant to establish he is a 'customer' entitled to SIPA protection, and such a showing 'is not easily met.'"); *see also Mishkin v. Siclari (In re Adler, Coleman Clearing Corp.)*, 277 B.R. at 557 (Bankr. S.D.N.Y. 2002) ("[I]it is well-established in the Second Circuit that a claimant bears the burden of proving

---

[22] Ackerman Decl., Exs. 1-5, ¶ 1.

[23] Ackerman Decl., Exs. 1-5, ¶¶ 8, 9.

[24] Ackerman Decl., Ex. 3, 4, 5, ¶ 5; Ackerman Decl., Exs. 1, 2, ¶ 4.

[25] Ackerman Decl., Ex. 3, 4, 5, ¶ 4; Ackerman Decl., Exs. 1, 2, ¶ 5.

[26] Ackerman Decl., Exs. 1-5, ¶¶ 6, 7.

[27] Ackerman Decl., Exs. 1-5, ¶ 11.

[28] Ackerman Decl., Exs. 1-5, ¶ 10.

[29] Ackerman Decl., Exs. 1-5, ¶ 12.

that he or she is a 'customer' under SIPA."). The Objecting Claimants have not met this burden.

Thus, under Second Circuit precedent, the Objecting Claimants are not SIPA customers.

## CONCLUSION

For all of the foregoing reasons, the Court should affirm the Trustee's determination

denying the claims of the twenty Objecting Claimants, overrule the Objecting Claimants'

objections, disallow their claims, and grant such other and further relief as the Court deems just

and proper.

Dated: New York, New York
      September 15, 2016

<div style="margin-left: 40%">

Respectfully submitted,

/s/ David J. Sheehan
_____
David J. Sheehan
Email: dsheehan@bakerlaw.com
Seanna R. Brown
Email: sbrown@bakerlaw.com
Nicholas J. Cremona
Email: ncremona@bakerlaw.com
Jorian L. Rose
Email: jrose@bakerlaw.com
Amy E. Vanderwal
Email: avanderwal@bakerlaw.com
Stephanie A. Ackerman
Email: sackerman@bakerlaw.com
**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, New York  10111
Tel: (212) 589-4200
Fax: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee for the
Substantively Consolidated SIPA Liquidation
of Bernard L. Madoff Investment Securities LLC
and the Estate of Bernard L. Madoff*

</div>