1

G5CVMADA

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x
                                        16 CV 2792 (WHP)
IN RE:  BERNARD L. MADOFF                16 CV 2804 (WHP)
INVESTMENT SECURITIES LLC                16 CV 2806 (WHP)
                                        16 CV 2807 (WHP)
------------------------------x


                                        ORAL ARGUMENT


                                        New York, N.Y.
                                        May 12, 2016
                                        12:15 p.m.

Before:

                HON. WILLIAM H. PAULEY III,

                                        District Judge

                        APPEARANCES

CHAITMAN LLP
        Attorneys for Appellants
BY:  GREGORY M. DEXTER

BAKER & HOSTETLER
        Attorneys for Appellee Irving H. Picard
BY:  AMY E. VANDERWAL
        KEITH R. MURPHY
        ANAT MAYTAL

SECURITIES INVESTOR PROTECTION CORPORATION
        Attorneys for Appellee SIPC
BY:  KEVIN H. BELL

2

G5CVMADA

```
 1              (Case called)
 2              THE COURT:  This is oral argument on a motion for
 3    leave to appeal.
 4              Do you want to be heard, Mr. Dexter?
 5              MR. DEXTER:  Certainly, your Honor.
 6              THE COURT:  Why don't you take the podium, all right?
 7              MR. DEXTER:  Your Honor, on February 11, 2016,
 8    District Judge Daniels found that the factual record regarding
 9    the trustee's compensation structure was unsettled.  Naturally,
10    movants served discovery demands on the trustee to settle that
11    factual record.  Rather than permit discovery into the factual
12    record, what Judge Bernstein did was sua sponte enter a
13    protective order preventing movants from taking all discovery
14    into the trustee's compensation, even though the trustee's
15    compensation structure remains in this case as a viable
16    affirmative defense raised by movants; and even though it's
17    necessary for this Court or for Judge Daniels to allow an
18    interlocutory appeal; and even though really it's necessary for
19    any meaningful direct appeal.
20              THE COURT:  Let me ask you this:  If it's a pure
21    question of law, why does a factual record need to be
22    developed?
23              MR. DEXTER:  I think that sort of goes to what it is
24    that we're seeking leave to appeal.
25              If we were here today to seek leave to appeal the
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

G5CVMADA
1    trustee's entire compensation structure and not just the
2    question as to whether we are permitted to take discovery into
3    that, then I would agree that we wouldn't necessarily need the
4    factual information if we were just deciding it as a matter of
5    law.
6          But we are here today because we have been precluded
7    from obtaining that information.  The issue that we are
8    appealing today is whether we should be entitled to that
9    information so that at a later stage in this litigation we can
10   make the case that this affirmative defense that's still in the
11   case will result in dismissal.
12         Does that address your question?
13         THE COURT:  How does this appeal differ from other
14   proceedings where the bankruptcy court or the district court
15   either rejected due process challenges to the trustee's
16   compensation or expressed considerable skepticism about the
17   viability of such a claim?
18         MR. DEXTER:  Because what we have here is we have an
19   Article III judge indicating that we don't have a settled
20   factual record to make this appeal.  And then you have an
21   Article I judge that rather than permitting discovery so that
22   that record could be settled, prevents discovery entirely.
23         THE COURT:  Assuming for a moment that I granted leave
24   here, what's the remedy that you're seeking?
25         MR. DEXTER:  The remedy that we are seeking is that we
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

4

G5CVMADA
1   should be allowed to pursue discovery into this affirmative
2   defense.  The affirmative defenses in the case, the remedy that
3   we are seeking today is that your Honor enter an order that
4   compels the bankruptcy court to allow us discovery into this
5   affirmative defense.
6           THE COURT:  Isn't that then effectively forcing the
7   bankruptcy judge to withdraw the protective order?
8           MR. DEXTER:  Yes, your Honor.
9           Just for context here, the reason, it seems to me, why
10  this protective order was entered was because Judge Bernstein
11  in the June 2nd, 2015 omnibus decision didn't dismiss the
12  complaints on the basis of due process because movants made a
13  12(b)(6) motion to dismiss.  Judge Bernstein said, You know
14  what?  At this point the due process violation isn't enough to
15  dismiss the complaint.
16          So on that basis alone, now what's happening is Judge
17  Bernstein has conflated or he's really manipulated a denial of
18  a 12(b)(6) motion to dismiss into a sua sponte granting of a
19  protective order that prevents discovery into an affirmative
20  defense that remains in the case; and that at any time in the
21  case once the factual information is obtained can be asserted
22  and a motion for summary judgment can be made, it can be raised
23  at trial.  Just because at the 12(b)(6) stage it didn't result
24  in dismissal of the complaint doesn't mean that we can't take
25  discovery into it.
                SOUTHERN DISTRICT REPORTERS, P.C.
                      (212) 805-0300

5

G5CVMADA

 1              THE COURT:  Can you point me to any case in which a
 2   court found that a private SIPA trustee was a state actor?
 3              MR. DEXTER:  We can find cases that acknowledge that
 4   SIPC is a quasi-governmental agency; and yes, this is disputed;
 5   and yes, it's not entirely clear.  That is part of the reason
 6   why we are here.
 7              Can we find cases that say that when a prosecutor has
 8   an interest in the result of the adjudication, if he has a
 9   financial interest, that that's a violation of due process?
10   Yes.
11              Can we find cases that went to the U.S. Supreme Court
12   that said if a magistrate gets paid $5 for every warrant he
13   issues, so that he is issuing warrants when he doesn't have
14   probable cause even though he's not the final judge in the
15   case?  Yes.
16              Should we on appeal be permitted to make these
17   arguments when there is substantial dispute?  We think so.
18              THE COURT:  In this case, didn't Bankruptcy Judge
19   Lifland rule back in 2010 that the trustee was not a state
20   actor?
21              MR. DEXTER:  I'm not sure, your Honor.  Which case
22   might that be, if you happen to have the citation?  I don't
23   think I'm familiar with that case.
24              THE COURT:  It's in the papers.
25              Quite frankly, counsel, during an oral argument the

6

G5CVMADA
1    questions only flow in one direction, okay, from the bench to
2    the podium.
3                MR. DEXTER:  Understood, your Honor.
4                THE COURT:  I'm not here to answer your questions.
5                MR. DEXTER:  Understood.
6                I don't know the answer to that.  If he did, it must
7    have been at the 12(b)(6) --
8                THE COURT:  Well, how about Judge Scheindlin's ruling
9    that due process challenges were resolved by the bankruptcy
10   court's disinterestedness hearing?  Are you familiar with that
11   decision by Judge Scheindlin in the context of the Madoff
12   bankruptcy?
13               MR. DEXTER:  No, I'm not familiar with that ruling.
14               The reason why that may have been found is because at
15   the disinterestedness hearing, the trustee at that point didn't
16   reveal what the compensation structure was.  So if you have a
17   hearing and all the facts are not on the record, that doesn't
18   satisfy due process.
19               THE COURT:  But you have to be a state actor, don't
20   you --
21               MR. DEXTER:  Yes.
22               THE COURT:  -- in order to have a due process claim?
23               MR. DEXTER:  Yes.  And SIPC is created by Congress;
24   it's under the oversight of the SEC; it's -- I mean there are
25   at least eight characteristics, maybe even more --
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

7

G5CVMADA
 1            THE COURT:  But let's talk about the SIPA trustee.
 2    The SIPA trustee acts as a representative of the liquidated
 3    estate, right?  Not the government.
 4            MR. DEXTER:  Right.  But it's appointed by a
 5    quasi-governmental agency, which is SIPA.  SIPA appoints the
 6    trustee.
 7            THE COURT:  But the trustee doesn't represent SIPA.
 8    In fact, the trustee's interests could be adverse to SIPA,
 9    couldn't they?
10            MR. DEXTER:  In theory they could be.
11            THE COURT:  Isn't that why the trustee and SIPA are
12    separately represented in this case?
13            MR. DEXTER:  I would think, yeah.  I mean I would
14    think that is -- it's certainly possible in theory.  It hasn't
15    happened.  The trustee in this case is appointed by SIPA.  He
16    takes positions that reduce the payouts that SIPA has to make.
17    And so far there hasn't been any disagreement that we've seen.
18            THE COURT:  All right.  Look, let me just turn for a
19    moment to the underlying merits of your claim.
20            Suppose that Irving Picard only brought one avoidance
21    action against one defendant, and Mr. Picard did all the legal
22    work himself.  If those fees were reasonable, he'd be entitled
23    to 100 percent of those fees, right?
24            MR. DEXTER:  As a trustee or as the attorney?
25            THE COURT:  As the trustee and acting as his own
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

G5CVMADA
1   attorney.
2           MR. DEXTER:  If you brought only one avoidance --
3           THE COURT:  It's a hypothetical.
4           Let's just say it's Irving Picard P.C., it's not Baker
5   Hostetler.  And Mr. Picard has a case, he brings a single
6   avoidance action against a single defendant and he does all the
7   work himself.  If he did all the work himself, wouldn't he be
8   entitled to whatever his fee was as a trustee?  And then he'd
9   be entitled to be compensated for his hours as an attorney,
10  wouldn't he?
11          MR. DEXTER:  Yes.
12          THE COURT:  He'd basically get 100 percent of the
13  fees, right, in that hypothetical?
14          MR. DEXTER:  Under that example, yes.
15          THE COURT:  So what I'm trying to then understand is
16  how is that situation different from a more complex case like
17  this one where in order to bring avoidance actions he employs
18  other attorneys to whom he has to delegate duties?
19          MR. DEXTER:  Because the point is when you look at the
20  type of litigations that he's bringing and when you see that
21  most of them have no merit and he's doing that because he has a
22  financial interest in the litigation regardless of the merits,
23  whether it's 100 percent of the fee or whether it's 15 percent
24  or 20 percent, it doesn't matter because the fact is he's
25  getting a fee, and that fee creates a perverse incentive for

9

G5CVMADA

1    him to bring meritless litigation, and that is what creates the
2    due process violation.
3           Just for context here, the trustee, when he began this
4    litigation, said he was going to recover $100 billion.  The
5    majority of those claims have already lost based on
6    long-standing doctrines that really were not in dispute that
7    were denied at the district court, denied at the Second
8    Circuit, certiorari was denied at the Supreme Court, all while
9    the trustee is making legal fees on these arguments.  And now
10   the trustee is basically chasing $2 billion against innocent
11   customers and that's pretty much it.
12          All the while the trustee is making tons of money in
13   legal fees.  And that's the whole point, is he's pursuing
14   meritless litigations because there's no checks and balances on
15   whether the success of these litigations justifies the fee.  He
16   gets paid no matter what.
17          THE COURT:  While that all may be true, and it may
18   raise some issues that need to be considered in the bankruptcy
19   court, how does that turn Mr. Picard into a state actor denying
20   due process?
21          MR. DEXTER:  Because he's appointed by what is
22   arguably a quasi-governmental entity.  He is, quote, the
23   decision-maker of that entity, as stated by the SEC and as
24   stated by SIPA itself.  And as the decision-maker for a
25   quasi-governmental agency, he's acting under authority of state

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

G5CVMADA
1   law.
2           THE COURT:  All right.  Anything else?
3           MR. DEXTER:  Your Honor, I don't think it's a merits
4   question here today.  Obviously your Honor would like to get to
5   the merits because that, of course, influences his decision.
6   But what's happening here is that we have a viable defense in
7   this case.  We're entitled to the factual record to support
8   this defense.
9           Judge Daniels indicated in February that we need the
10  factual record to support this defense.  Judge Daniels is an
11  Article III judge.  Judge Bernstein is an Article I judge.  And
12  rather than permit us to take discovery so that we could settle
13  that factual record, he sua sponte, without even providing an
14  opportunity for the issue to be briefed, entered a protective
15  order that prohibits discovery into the issue entirely.  And
16  that's a very clean and easy question that this Court can
17  resolve very quickly without any further briefing in this
18  Court.
19          Nothing else, your Honor.  Thank you.
20          THE COURT:  Under your argument, wouldn't it
21  invalidate the way that every bankruptcy trustee is
22  compensated?
23          MR. DEXTER:  No, because there are different
24  provisions with the Bankruptcy Code as with SIPA.  And the
25  Bankruptcy Code has checks and balances that SIPA doesn't.  A

11

G5CVMADA

1   SIPA trustee's fees are essentially insulated from review in
2   the bankruptcy court.  As long as SIPA agrees with those fees,
3   then there's such a high level of deference that the court has
4   to give, that the court effectively has no meaningful review of
5   the fees.
6           Your Honor, just because something hasn't been
7   challenged before or just because maybe it's been 10, 20, 30
8   years for a major constitutional change to occur, that doesn't
9   mean it's not right.  And that happens all the time in law, as
10  your Honor would be aware.
11          THE COURT:  All right.  Thank you, Mr. Dexter.
12          MR. DEXTER:  Thank you, your Honor.
13          MS. VANDERWAL:  Good afternoon, your Honor.
14          I would like to take a step back for a moment to
15  emphasize that what this motion is about is a run-of-the-mill
16  discovery order entered by the bankruptcy judge who oversees
17  the day-to-day facts of this case and has for years and is
18  familiar with it in the notes.  In this district interlocutory
19  review of discovery orders are strongly disfavored.
20          THE COURT:  All right.  But what does the trustee
21  think this Court should do with Judge Daniels' decision that
22  basically instructed the movants that they needed a factual
23  record?
24          MS. VANDERWAL:  We disagree with the characterization
25  of Judge Daniels' order that Mr. Dexter put forward.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

12

G5CVMADA

1          What Judge Daniels did was consider the factors under
2     1292 and found that there was no basis for interlocutory review
3     of the motion to dismiss.  He did observe, as other courts
4     have, that there are no facts supporting these baseless
5     allegations; but it was in no way a direction to go and take
6     additional discovery.
7          Your Honor, as Judge Daniels found, the standard for
8     interlocutory review can simply not be met here.  There's no
9     controlling issue of law; there is a dispute over discovery.
10    There is no substantial ground for a difference of opinion.
11    And certainly the most important factor to stress here is that
12    any decision on this discovery order will not speed things
13    along in the bankruptcy court.  We still have all of the
14    trustee's fraudulent conveyance claims that have to be
15    prosecuted in their entirety, there's more discovery, there's
16    trial.  This will not speed the process along; all it will
17    serve to do is slow down the litigation and clog up the courts,
18    your Honor.
19          In terms of the underlying due process argument, as
20    several courts have now determined, the trustee is not a state
21    actor.  The trustee is appointed after a finding he was
22    disinterested by the district court; he is not a decision-maker
23    for SIPA.  Like any other trustee, yes, he decides which
24    adversary proceedings to bring, but he doesn't then adjudicate
25    those adversary proceedings; that is done by a judge.

13

G5CVMADA

 1          THE COURT:  The trustee seems to want to have it both
 2  ways, doesn't he?  The movants here refer to a discovery
 3  response in which the trustee says he has a quasi-governmental
 4  law enforcement function and, therefore, he's entitled to the
 5  governmental investigatory privilege.  How can he invoke being
 6  a state actor for discovery purposes and not a state actor for
 7  purposes of this challenge?
 8          MS. VANDERWAL:  Your Honor, that was one statement in
 9  a discovery request in 2011 that --
10          THE COURT:  But it was the trustee's statement, right,
11  made by your law firm, right?
12          MS. VANDERWAL:  Yes, your Honor.
13          THE COURT:  Shouldn't that be the currency of the
14  realm?
15          MS. VANDERWAL:  No, your Honor.
16          THE COURT:  So which statements should I accept for
17  all time from the trustee, the ones they make now on this
18  motion to resist discovery?
19          MS. VANDERWAL:  I think, your Honor, with the
20  exception of that one statement, the trustee's position has
21  been consistent; and that position is consistent with case law.
22  There is no case that says that a SIPA trustee is a state actor
23  and there is good reason for that.
24          THE COURT:  Did the bankruptcy court ever rule on
25  whether the trustee has the investigatory privilege?

G5CVMADA

 1           MS. VANDERWAL:   I don't believe the bankruptcy court
 2    ever ruled on that, no.
 3           I would like to also touch on the somewhat
 4    inflammatory comments made by Mr. Dexter regarding the actions
 5    brought by the trustee and the purposes for those actions.
 6           The trustee is an officer of the Court and has a
 7    fiduciary duty that he takes extremely seriously.   Any
 8    suggestion that he is doing anything than acting in the best
 9    interest of the estate is frankly offensive.
10           To date, the trustee has recovered $11.1 billion,
11    which is more than 63 percent of the estimated principal lost.
12    He has made six interim distributions to creditors, totaling
13    approximately $9.28 billion.   During the years of delay caused
14    by the many withdrawals of reference and other delays in this
15    case, despite that, the trustee has resolved over 600 adversary
16    proceedings and hundreds of claims objections.
17           The trustee, as I said, takes his duty as an officer
18    of the Court very seriously; and I don't believe at the
19    beginning of the case anyone would have anticipated the results
20    that had been achieved.   So to make any suggestion that he is
21    incentivized to bring actions for his own personal gain is
22    simply untrue.
23           THE COURT:   How much money has the trustee and Baker
24    Hostetler received in connection with their work on the Madoff
25    matters?

G5CVMADA
```
 1              MS. VANDERWAL:  I don't have the exact fee numbers
 2   with me.  I believe the fees are in the neighborhood of $700
 3   million.
 4              THE COURT:  Essentially what is the big secret with
 5   the trustee's compensation arrangement?
 6              MS. VANDERWAL:  Your Honor, I don't believe it's a big
 7   secret.  It's an arrangement that the trustee has with his
 8   firm.  It's personal information.  The specific details sought
 9   in these interrogatories are intrusive; and as Judge Bernstein
10   found, they are intrusive and they are not relevant to the
11   adversary proceeding.
12              THE COURT:  Apart from whatever fees Mr. Picard
13   receives in connection with the fees earned by his law firm,
14   does he separately receive fees as trustee?
15              MS. VANDERWAL:  I am not sure of that, your Honor.
16              I assume he receives fees as a partner of Baker
17   Hostetler, if that's what you're asking; and then separately as
18   serving as trustee, but I'm not sure.
19              THE COURT:  All right.
20              MS. VANDERWAL:  In any event, subject to any further
21   questions, I would just like to reiterate that discovery in
22   this case will not move anything along; it will not expedite
23   any decisions in the bankruptcy court and, therefore, the 1292
24   factors simply cannot be satisfied and we request that the
25   motion be denied.  Thank you.
```

G5CVMADA

```
 1              THE COURT:  All right.  Thank you, Ms. Vanderwal.
 2         Mr. Bell.
 3              MR. BELL:  Thank you, your Honor.  Good afternoon.
 4         Kevin Bell for the Securities Investor Protection
 5    Corporation.
 6              If I could open by reading the statute, because I
 7    think the statute is quite clear at 15 United States Code
 8    78ccc(a)(1), where it says:  SIPC shall be a nonprofit
 9    corporation and shall have succession until dissolved by an act
10    of Congress.
11              And in subparagraph capital B:  Be subject to and have
12    all the powers conferred upon a nonprofit corporation by the
13    District of Columbia Nonprofit Corporation Act.
14              That would be the first section.
15              The second section -- and Mr. Dexter wasn't able to
16    answer that question.
17              The second question, I think, your Honor, that we need
18    to look at, that gets into the compensation provisions.  There
19    have been 20 fee applications in this case where the trustee
20    either individually has filed an application or since August of
21    2011 jointly with Baker & Hostetler that have been reviewed by
22    the Securities Investor Protection Corporation on notice and
23    hearing to the bankruptcy court.  SIPC has filed a
24    recommendation after extremely thorough review of each and
25    every page of those fee applications or of those invoices.
```

G5CVMADA
1   After hearing objections by Ms. Chaitman of the Chaitman LLP
2   firm, with each of her prior three firms, the Court has entered
3   an order.  There have been a number of motions for leave to
4   appeal to this Court regarding those compensation applications,
5   all of which have been denied except for one that's somewhere
6   in limbo.
7           So clearly the statute has procedures and it does give
8   SIPC in cases where there are no assets.  And Bernie Madoff
9   being -- or the BMIS liquidation proceeding being the largest
10  financial fraud in American history, as it's been called by the
11  Circuit in a number of decisions before the Circuit, is a case
12  of premiere importance to the corporation and how we go forward
13  with it.
14          I can guarantee to the Court that all matters
15  regarding fees are given the highest priority.  I have reviewed
16  each and every one of the invoices and each and every entry and
17  have had conversations with the trustee and his counsel.  There
18  have been reductions in the neighborhood of 13 percent or
19  thereabouts on those applications.  Last month the Court
20  considered 20 applications and SIPC commented on all 20 of
21  those.  I reviewed and the general counsel followed up with me
22  in reviewing, so the application is very thorough.  The statute
23  anticipates that.
24          Congress changed the statute on May 25th, 1978 to put
25  the burden on the Securities Investor Corporation to pay the

G5CVMADA
1    bill.  Where we had a case where there was no possibility that
2    the generalist state could pay it, not one penny of the monies,
3    the $11.1 billion or hopefully the 17.5 when the trustee gets
4    to 100 percent, not one penny will be paid out of any funds
5    that belong to customers that the trustee is seeking to recover
6    from Mr. Dexter's client, fictitious profits, as the Circuit
7    has decided in the Net Equity decision.
8              THE COURT:  Just to clarify for a second, the funds
9    that are used to compensate the SIPC trustee and Baker
10   Hostetler come from SIPC?
11             MR. BELL:  They come from the SIPC fund, which
12   Congress in 1970, December 30th, 1970, put the burden on the
13   members of SIPC who are registered broker-dealers with the
14   Securities and Exchange Commission under 15b of the 1934 Act.
15             THE COURT:  So in that way, the SIPC trustee is very
16   different from a bankruptcy trustee who would look to the
17   estate itself for compensation?
18             MR. BELL:  Yes, your Honor.  That's the uniqueness of
19   this case.  Because the trustee has this ability to pursue
20   these actions, I believe -- and I think the corporation
21   believes -- he has been enabled to continue to go after people
22   that have other people's money, like Mr. Dexter's clients, who
23   received other people's principal beyond their principal,
24   namely, fictitious profits, and they can bring that essentially
25   to your money that's strict liability, as Judge Bernstein has

G5CVMADA

1  ruled in the order Mr. Dexter talked about, and bring that
2  money back into the customer property fund, as Congress
3  contemplated a long time ago.  All 330-plus liquidation
4  proceedings that have been held under the Securities Investor
5  Protection Act have acted similarly, all trustees, whether it
6  is SIPC that has to foot the bill or the money comes
7  miraculously out of a trustee having a general estate.
8          SIPC is on the hook for everything; it is advanced to
9  pay administrative expenses.  The last application had the
10 compensation to the trustee and Baker Hostetler at about $770
11 million, which was the question you asked.  And then there's a
12 ten percent holdback pending the conclusion of the liquidation
13 proceeding which is an incentive to help the trustee get the
14 money we hope he gets.  But that has happened by 20 court
15 orders after the process I described.  Ms. Chaitman has not
16 filed a motion for leave to appeal on the compensation order
17 since the sixth application that was granted by Judge Lifland.
18          Your Honor, I would like to point out -- you had asked
19 a question of Mr. Dexter.  I would refer to -- I'll put my
20 glasses on.  I would refer to Judge Scheindlin's order which
21 was cited in our SIPC brief, which is at 2010 Westlaw
22 326743260074.  Judge Scheindlin, as the Court knows, loves a
23 lot of footnotes; and there are 69 footnotes in that four-page
24 opinion.  At Footnote 27, she cites the case you asked about,
25 Judge Lifland's order, which is at 2010 Westlaw 185102.  The

G5CVMADA

1   interest thing in Judge Scheindlin's order is that it was a due
2   process argument by Ms. Chaitman at one of her prior law firms
3   where it was about compensation.  And Judge Scheindlin's order
4   is quite clear:  There was no due process violation.
5           It's a similar argument Ms. Chaitman raised in the
6   District of New Jersey 30 years ago in a case called Bevill,
7   Bresler & Schulman.  Unfortunately, I can't remember the exact
8   cite, but it's been a repetitive argument with regard to having
9   a disagreement with the way Congress set up the structure of
10  the SIPA liquidation proceeding.
11          I've read you the law.  The law is quite clear.
12  Congress intended this.  It has worked well.
13          THE WITNESS:  Is the trustee a government actor?  No.
14  And SIPC didn't appoint the trustee, as the Oxford case in this
15  Circuit stated; and I think Judge Scheindlin has it in her
16  opinion.  Judge McMahon didn't like the way the SIPA statute
17  was set up in 1972; the Circuit had a different opinion and
18  said SIPC designates the trustee.  And after notice and
19  hearing -- which occurred in this case broadly on January 2nd,
20  I think every publication in the United States and the world
21  had the notice, and there had been stories in the two weeks
22  before.  We're on day 2,710 of this liquidation proceeding and
23  it has been radioactive electric since the filing date of
24  December 11, 2008.
25          Clearly we are well-known.  There was great publicity

G5CVMADA
 1    and nobody showed up in February of 2009 for the hearing on
 2    disinterestedness.  I was present.  Trustee's papers were filed
 3    on January 2nd, 2009, placed on the docket.  Nobody objected.
 4    Judge Lifland had that hearing and we've had repeated attacks
 5    on the trustee's disinterestedness throughout the case.
 6            Your Honor, in our papers, SIPC has cited to one of
 7    Ms. Chaitman's exhibits.  It was our statement to Congress
 8    1,096 days ago to the subcommittee on what compensation is
 9    about and the question that is material here:  What percentage
10    does the trustee get?
11            It's not relevant to what is going on.  Congress has
12    not responded to us and asked us further questions in 1,096
13    days.  It will be those months tomorrow is the 13th of
14    September 2013.  We cite that.  That is the position this
15    corporation has done with regard to this specific issue.
16            Because Congressman Garrett at Ms. Chaitman's
17    assistance asked the question.  And we responded publicly.  And
18    that's been publicly listed and I thank Ms. Chaitman for
19    reminding me so we can give it to the Court in full text and
20    you can read it here.
21            Your Honor, are there any questions you have --
22            THE COURT:  I think I have your arguments.
23            MR. BELL:  Thank you very much, your Honor.
24            THE COURT:  Mr. Dexter, anything further?
25            MR. DEXTER:  Yes, your Honor.
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

G5CVMADA

1              We've discussed the merits here in quite some detail.
2       The merits are not necessary to decide this motion.
3  What's necessary is the U.S.C. 1292 legal standard.  That
4  standard really lends itself to a very easy opinion for this
5  Court to grant leave to appeal or to even enter an order today
6  requiring the bankruptcy court to allow us to take the
7  discovery that we need to support our affirmative defenses.
8              The controlling question of law is whether, of course,
9  defendants are entitled to take discovery that Judge Daniels,
10  an Article III judge, told them they needed to settle a factual
11  record and to support an affirmative defense that is still in
12  this case.  It's controlling because it has a widespread impact
13  on many cases which, under the established case law, is enough
14  for a controlling question of law.
15             As to the second prong, substantial ground for
16  difference of opinion, it's quite clear that Judge Bernstein's
17  opinion was wrong.  His decision preventing discovery was wrong
18  because that defense remains in the case.  And under this
19  Circuit, you only need to plead your affirmative defense; you
20  don't have to satisfy the Twombly and Iqbal standard; you can
21  raise that affirmative defense, you're entitled to take
22  discovery into that defense, especially when you have an
23  Article III judge telling you that.
24             As for the last prong, whether it materially advanced
25  the ultimate determination of the litigation, again, this goes

G5CVMADA

1   back to the fact that there are hundreds of these adversary
2   proceedings.  This discovery is necessary to take discovery on
3   this defense, this constitutional defense that remains in this
4   case.  As your Honor said, quite honestly, what's the big
5   secret?
6           Movant should be entitled to this discovery.
7           Thank you, your Honor.
8           THE COURT:  All right.
9           Counsel, thank you for your arguments.
10          Decision reserved.
11          Have a good afternoon.
12                          *   *   *
13
14
15
16
17
18
19
20
21
22
23
24
25