# EXHIBIT 25

UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---

AARON BLECKER

                Plaintiff,

-against-

IRVING H. PICARD, TRUSTEE
FOR LIQUIDATION OF THE BUSINESS
OF BERNARD L. MADOFF INVESTMENT
SECURITIES LLC

                Defendants.

**AFFIDAVIT OF**
**AARON BLECKER**

Bankruptcy Case
No. 08-1789
Claim #003907

**Hon. Burton R. Lifland**



STATE OF NEW YORK  )
                          : ss.:
COUNTY OF NASSAU  )

AARON BLECKER, being duly sworn deposes and says:

1.    On February 23, 2009 I submitted my claim to Irving H. Picard, Esq. for reimbursement for my losses in Bernard Madoff Investment Securities (BMIS). In the letter accompanying my claim form, (See Attachment A) I explained that I had established two accounts – one in my name, Aaron Blecker, and subsequently a second account jointly with my wife, Arthur and Sofie (sic) Blecker, investing hundreds of thousands of dollars in each. I also explained that in 2007 I was forced by Madoff to merge those accounts into one. Other than transfers within the system **I have never withdrawn any money from any Madoff account.**

2. Thus I filed three claims – one for the Aaron Blecker account, one for the Arthur and Sofie Blecker account, and in case the trustee refused to compensate me for each account and treated the two as one, contingently I submitted a claim for $500,000 for the one trust account established in 2007 established from the forced merger of the other two, which had grown to $2.6 million at the time of the discovery of Madoff's fraud. (See flow chart.)

3. Confident that SIPC would return at least my initial investment as I had never withdrawn any money, and hopeful that they would pay me quickly as I am 98 years old, I was surprised and distressed when by letter of October 19, 2009, Irving H. Picard denied my claim for the Aaron Blecker account on the ground that not only were no securities ever purchased for my account contrary to Madoff's statements over the years, but also that I had transferred $206,000 from my account, and also supposedly additionally withdrawn $261,633.94 – more than my initial investment. Further, the denial stated that I had "taken" $61,633.94 from other customers. The trustee attached a detailed list of "withdrawals" from my account, stating that they were "checks" issued to me. (Attachment B)

In short, my claim was denied because the trustee believed that more money had been withdrawn than deposited from the account they reference as 1B0022. Again, that is incorrect. **In fact I have never received any money from any Madoff account nor directed that any money be sent from any account to any third party.** Therefore my claim for restitution should be honored.



# Account Flowchart

Funding [1]:
1986: $50,000
1986: $50,000
1992: $100,000
Total: $200,000

Total Withdrawals:
$0

A. Blecker
Account # 1B0022
Est. 1986

Transfer $206,528.78 → Aaron Blecker, Account # 1B0156-3-0, Est. 1997

Transfer? → Arthur & Sofie Blecker, Account # 1B0157-3-0, Est. 1997

Funding: ?

Transfer in 2007: $753,107.40
Transfer in 2007: $1,480,131.54

Aaron Blecker Rev. Trust
Account # 1B0156-3-0
Est. 3/15/07

Value at last statement November 2008:
**$2,625,435.95**

(1) Per Trustee Statement

### 4. Factual Background.

The trustee's denial is based upon two assertions.

A. That $200,000 was invested in account 1B0022 and $206538.78 was transferred out of that account

B. That checks totaling $61,633.94 were paid out of that account on my behalf

As noted **I have never received directly or indirectly any money back.**

### A. Did I receive a payment of $206,538.75?

1. I now realize that part of confusion has resulted from changes in the account numbers. My original account, and the one for which the trustee has denied a claim is 1B0022. He is correct that there should be no money paid from that account as amounts in that account were transferred to two different accounts - one for me Aaron Blecker, and a separate joint account, presumably as per his records, established in 1997.

2. As the following chart shows, I established an account 1B0022 in 1986 and augmented my investment in 1992. Then in 1997 two separate accounts were established with different numbers. (Athur and Aaron are the same person) By 2007, as one of the accounts had less than one million dollars, I was forced by Madoff to merge those accounts into one. Other than transfers within the system **I have never withdrawn any money from any Madoff account.**

B. What happened to the $61,633 allegedly paid out of account 1B0022 on my behalf?

The trustee's records show checks totaling that amount paid out to public companies. These are public companies with which I have never had a relationship and to which I never authorized payments. Therefore, I have to assume that these were entries that were part of the larger fraud and cover-up.

Recently I did find statements from 1995 (but not other years). These monthly statements did note entries for the checks in question. (see Attachment C for March, 1995) These statements had many complex entries and I focused on the summary valuations, thinking they were all part of the normal investment process for securities being purchased and sold. Since I never suspected fraud, it did not occur to me that they could be false entrees.

C. Procedure going forward

The trustee's records are probably better than mine. I do not know exactly how much I invested in Madoff over the years which grew to $2.6 million by November 2008. I would appreciate help in tracing all of this. Perhaps the Trustee is denying my claim for account B-0022 because he intends to accept my claims for reimbursement on the successor accounts. If so, he has not so indicated.

**So this is to formally request a hearing.** But in advance of that, I hope the Court orders the Trustee to use its access to the records to help clarify the flow of funds from all of the accounts, and to verify that there are no records showing requests on my part

Affadavit of Aaron Blecker in opposition to SIPC denial of Madoff claim                                    Page 4

for the money allegedly paid to various corporations.

I would very much appreciate the Court's help in quickly recovering at least my actual investment up to $500,000 per account.

*[signature]*
AARON BLECKER

Sworn to before me this
16th day of November, 2009

*[signature]*
Notary Public

YVONNE DUMMETTE
Notary Public, State of New York
No. 01DU6169927
Qualified in Queens County
Commission Expires July 02, 2011

---

Affadavit of Aaron Blecker in opposition to SIPC denial of Madoff claim          Page 5

February 23, 2009

Dear Mr. Picard –

    Like so many other victims, I have lost most of my life savings by directly investing with Bernard Madoff (although I may be the oldest at nearly 98). For many years, until early 2007 I had two accounts – one, Arthur and Sophie Blecker (misspelled Sofie on the account), and another Aaron Blecker. (I go by both names. See enclosed account statements.) The accounts were under different names, opened at separate times to serve separate purposes. I personally submitted separate schedules each year for each account, detailing every stock transaction. (I have some of that paperwork still in cartons and could supply it.) Sometime early in 2007, someone from Madoff told me they would no longer handle accounts under $1million dollars. They had accommodated me for years, because Bill Alpern, the brother of Bernard Madoff's father in law, was a dear friend. In May 2007 when they forced me to merge them, as the submitted statements show, Aaron Blecker – 1-B0156-3-0 – had $753,107.40. The other, Arthur Blecker & Sofie Blecker –1-B0157-3-0 – had $1,480,131.54 (see attached statement.) I am filing a SIPA claim for each.

    Forced to combine them, turning 95, we were setting up trusts for peace of mind and satisfaction at knowing that my decades of hard work as a solo practitioner would ensure that our children and their children struggled less than I, and the little ones' college education was assured. So, as Madoff demanded, I combined the two accounts into one, under the new name Aaron Blecker Rev Trust U/A/D 3/15/07. (See June 30, 2007 statement.) On December 11, 2008, when the fraud was announced, the account as of November 30, 2008 had approximately 2.6 million dollars. (see attached statement.)

    Thus I am filing separate claims for $500,000 protection each for Aaron Blecker, and Arthur Blecker and Sofie Blecker. If you reject these separate claims for separate accounts I had in 2007 and was compelled by Madoff to abandon, of course I am filing in the alternative for SIPA protection for Aaron Blecker Revised Trust which had $2.6 million as of Dec. 11, 2008.

    I hope you will agree that both original accounts are legally protected. But if you do reject that claim, would you please inform me quickly and act quickly on my indisputable claim re the later trust account. I never withdrew a penny. My wife Sophie died this past October – my consolation has been that she was spared this financial shock that mocks assurances I proudly gave my children, who invested their own money: "Don't worry, there's always Madoff."

    Hoping to be informed of my status and reimbursed quickly, I am


Aaron Blecker

Nov 2 2009

Re: Bankruptcy Case # 08-1789 (BRL)
Claim # 003-907

Gentlemen!   Attention Judge Burton R. Lifland

My wife and I were among the early investors in MADOFF Securities. We had confidence in him and looked forward to what we thought would be a good return. For that reason, we left our investment with him and did not withdraw any funds. Unfortunately it turned out to be a drastic Mistake.

So you see why we were so surprised to receive your letter stating that we had made out checks withdrawing our investment. In all the 30 years we were with Madoff, each month we received a statement showing the stocks purchased and sold. Never in all that time did any statement show any withdrawals. These checks must have been for members of the Madoff Family or Friends.

If it would be possible to obtain these checks, and note the endorsements, and see whose account was credited.

We notice that most of the checks were made out to corporations. If these checks were for purchase of stocks; what happened to the stocks? If they were for my account, then the stocks should have been

My account was not eliminated,
My equity — not to eliminate it.

It has been stated that many of the purchases and sales were fictitious. ~~If that were so, would they have credited my~~ ~~account for 4 Million dollars?~~ I was not a relative of the Madoff's! Many of the credits were my investments. Based on average returns of 8 or 10 %, I had to have made substantial investments in my account.

I am 98 years of age.
It is tragic that at my age, I have to be concerned that I would have enough funds, for the years remaining to me.

Thank you
Arthur Aaron Blecker
50 Grist Mill Lane
Great Neck NY 11023

Tel - 516 466 0095
S.S. - 088 01 8745

STATE OF NEW YORK ) 
                 ) SS:
COUNTY OF NASSAU )

SWORN TO BEFORE ME THIS
10 DAY OF NOVEMBER 2010

AMY M. GRANDY
Notary Public, State of New York
No. 01GR6024304
Qualified in Suffolk County
Commission Expires March 7, 20_10_

BERNARD L. MADOFF INVESTMENT SECURITIES LLC

In Liquidation

DECEMBER 11, 2008[1]

NOTICE OF TRUSTEE'S DETERMINATION OF CLAIM

October 19, 2009

Aaron Blecker
50 Grist Mill Lane
Great Neck, New York 11023

Dear Mr. Blecker:

**PLEASE READ THIS NOTICE CAREFULLY.**

The liquidation of the business of BERNARD L. MADOFF INVESTMENT SECURITIES LLC ("BLMIS") is being conducted by Irving H. Picard, Trustee under the Securities Investor Protection Act, 15 U.S.C. § 78aaa et seq. ("SIPA"), pursuant to an order entered on December 15, 2008 by the United States District Court for the Southern District of New York.

The Trustee has made the following determination regarding your claim on BLMIS Account No. 1B0022 designated as Claim Number 003907:

Your claim for securities is **DENIED**. No securities were ever purchased for your account.

Further, based on the Trustee's analysis, the amount of money you withdrew from your account at BLMIS (total of $261,633.94), as more fully set forth in Table 1 annexed hereto and made a part hereof, is greater than the amount that was deposited with BLMIS for the purchase of securities (total of $200,000.00). As noted, no securities were ever purchased by BLMIS for your account. Any and all profits reported to you by BLMIS on account statements were fictitious.

---

[1] Section 78*lll*(7)(B) of SIPA states that the filing date is "the date on which an application for a protective decree is filed under 78eee(a)(3)," except where the debtor is the subject of a proceeding pending before a United States court "in which a receiver, trustee, or liquidator for such debtor has been appointed and such proceeding was commenced before the date on which such application was filed, the term 'filing date' means the date on which such proceeding was commenced." Section 78*lll*(7)(B). Thus, even though the Application for a protective decree was filed on December 15, 2008, the Filing Date in this action is on December 11, 2008.

As reflected in Table 1, certain of the transfers into or out of your account have been adjusted. As part of the Trustee's analysis of accounts, the Trustee has assessed accounts based on a money in/money out analysis (i.e., has the investor deposited more or less than he or she withdrew from BLMIS). This analysis allows the Trustee to determine which part of an account's balance is originally invested principal and which part is fictitious gains that were fabricated by BLMIS. A customer's allowed claim is based on the amount of principal in the customer's account.

Whenever a customer requested a transfer from one account to another, the Trustee analyzed whether the transferor account had principal in the account at the time of the transfer. The available principal in the account was transferred to and credited in the transferee account. Thus, the reason that the adjusted amount of transferred deposits or withdrawals in Table 1 is less than the purported transfer amount is that the transferor account did not have sufficient principal available to effectuate the full transfer. The difference between the purported transfer amount and the adjusted transfer amount is the amount of fictitious gain that was transferred to or from your account. Under the money in/money out analysis, the Trustee does not give credit for fictitious gains in settling your allowed claim.

Since there were no profits to use either to purchase securities or to pay you any money beyond the amount that was deposited into your BLMIS account, the amount of money you received in excess of the deposits in your account ($61,633.94) was taken from other customers and given to you. Accordingly, because you have withdrawn more than was deposited into your account, you do not have a positive "net equity" in your account and you are not entitled to an allowed claim in the BLMIS liquidation proceeding. Therefore, your claim is **DENIED** in its entirety.

Should a final and unappealable court order determine that the Trustee is incorrect in his interpretation of "net equity" and its corresponding application to the determination of customer claims, the Trustee will be bound by that order and will apply it retroactively to all previously determined customer claims in accordance with the Court's order. Nothing in this Notice of Trustee's Determination of Claim shall be construed as a waiver of any rights or claims held by you in having your customer claim re-determined in accordance with any such Court order.

Nothing in this Notice of Trustee's Determination of Claim shall be construed as a waiver of any rights or claims held by the Trustee against you.

**PLEASE TAKE NOTICE:** If you disagree with this determination and desire a hearing before Bankruptcy Judge Burton R. Lifland, you **MUST** file your written opposition, setting forth the grounds for your disagreement, referencing Bankruptcy Case No. 08-1789 (BRL) and attaching copies of any documents in support of your position, with the United States Bankruptcy Court **and** the Trustee within **THIRTY DAYS** after October 19, 2009, the date on which the Trustee mailed this notice.

**PLEASE TAKE FURTHER NOTICE:** If you do not properly and timely file a written opposition, the Trustee's determination with respect to your claim will be deemed confirmed by the Court and binding on you.

2

**PLEASE TAKE FURTHER NOTICE:** If you properly and timely file a written opposition, a hearing date for this controversy will be obtained by the Trustee and you will be notified of that hearing date. Your failure to appear personally or through counsel at such hearing will result in the Trustee's determination with respect to your claim being confirmed by the Court and binding on you.

**PLEASE TAKE FURTHER NOTICE:** You must mail your opposition, if any, in accordance with the above procedure, to each of the following addresses:

> Clerk of the United States Bankruptcy Court for
> the Southern District of New York
> One Bowling Green
> New York, New York 10004
>
> and
>
> Irving H. Picard, Trustee
> c/o Baker & Hostetler LLP
> 45 Rockefeller Plaza
> New York, New York 10111

_____
Irving H. Picard

Trustee for the Liquidation of the Business of
Bernard L. Madoff Investment Securities LLC

*James May*

## Table 1 - 

### DEPOSITS

| DATE | TRANSACTION DESCRIPTION | AMOUNT | ADJUSTED AMOUNT |
|---|---|---|---|
| 9/22/1986 | CHECK | $50,000.00 | $50,000.00 |
| 9/24/1986 | CHECK | $50,000.00 | $50,000.00 |
| 12/16/1992 | CHECK | $100,000.00 | $100,000.00 |
| **Total Deposits:** | | $200,000.00 | $200,000.00 |

### WITHDRAWALS

| DATE | TRANSACTION DESCRIPTION | AMOUNT | ADJUSTED AMOUNT |
|---|---|---|---|
| 11/24/1986 | CHECK TRW | ($2,806.51) | ($2,806.51) |
| 2/5/1987 | CHECK HOLIDAY CORP | ($4,002.50) | ($4,002.50) |
| 4/7/1987 | CHECK ANHEUSER BUSCH | ($4,248.04) | ($4,248.04) |
| 6/10/1987 | CHECK TRANSCO CO | ($3,744.78) | ($3,744.78) |
| 8/21/1987 | CHECK AGS COMPUTERS | ($3,976.71) | ($3,976.71) |
| 10/26/1987 | CHECK GROLIER | ($4,197.55) | ($4,197.55) |
| 1/26/1988 | CHECK BRISTOL MYERS | ($3,737.56) | ($3,737.56) |
| 3/30/1988 | CHECK ADVANCED SYSTEMS | ($3,998.88) | ($3,998.88) |
| 5/25/1988 | CHECK INTERCO | ($4,244.88) | ($4,244.88) |
| 8/8/1988 | CHECK AMFAC | ($3,751.97) | ($3,751.97) |
| 10/12/1988 | CHECK COMPAQ COMPUTERS | ($3,967.83) | ($3,967.83) |
| 12/5/1988 | CHECK PNC FINL | ($3,166.93) | ($3,166.93) |
| 2/3/1989 | CHECK GENERAL CINEMA | ($3,686.89) | ($3,686.89) |
| 4/11/1989 | CHECK PHELPS | ($3,993.35) | ($3,993.35) |
| 6/20/1989 | CHECK DURR FILLAUER MED | ($4,205.41) | ($4,205.41) |
| 8/18/1989 | CHECK INLAND | ($3,753.39) | ($3,753.39) |
| 10/20/1989 | CHECK AMERICAN MAIZE | ($3,990.11) | ($3,990.11) |
| 12/13/1989 | CHECK FOR ?? | ($5,187.29) | ($5,187.29) |
| 2/16/1990 | CHECK WESTINGHOUSE | ($3,682.26) | ($3,682.26) |
| 4/20/1990 | CHECK SEAGULL | ($4,001.00) | ($4,001.00) |
| 6/25/1990 | CHECK SUN MICROSYSTEMS | ($4,228.00) | ($4,228.00) |
| 8/28/1990 | CHECK IMMUNEX | ($3,728.16) | ($3,728.16) |
| 11/5/1990 | CHECK AMERICAN FILM | ($4,003.50) | ($4,003.50) |
| 12/27/1990 | CHECK PFIZER | ($3,168.16) | ($3,168.16) |
| 3/7/1991 | CHECK MEDCO | ($3,742.71) | ($3,742.71) |
| 5/13/1991 | CHECK XOMA | ($3,495.60) | ($3,495.60) |
| 7/11/1991 | CHECK HEALTH SOUTH | ($3,230.02) | ($3,230.02) |
| 7/17/1991 | CXL CHECK 07/11/91 | $3,230.02 | $3,230.02 |
| 7/17/1991 | CHECK HEALTH SOUTH | ($3,230.02) | ($3,230.02) |
| 7/22/1991 | CHECK LIBERTY NATL | ($360.82) | ($360.82) |
| 9/5/1991 | CHECK THERMO | ($2,992.58) | ($2,992.58) |
| 11/13/1991 | CHECK CHAMBERS | ($3,474.14) | ($3,474.14) |

| Total Withdrawals: | | ($468,162.69) | ($261,633.94) |
|---|---|---|---|
| Total deposits less withdrawals: | | ($268,162.69) | ($61,633.94) |

6