SECURITIES INVESTOR PROTECTION
 CORPORATION
1667 K Street, N.W., Suite 1000
Washington, D.C. 20006
Telephone: (202) 371-8300
JOSEPHINE WANG
General Counsel
Email: jwang@sipc.org
KEVIN H. BELL
Senior Associate General Counsel for Dispute Resolution
Email: kbell@sipc.org

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>Plaintiff-Applicant,<br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>Defendant. | Adv. Pro. No. 08-01789 (SMB)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>Plaintiff,<br>v.<br><br>FRANK J. AVELLINO, et al.,<br><br>Defendants. | Adv. Pro. No. 10-05421 (SMB) |

**REPLY MEMORANDUM OF LAW OF THE
SECURITIES INVESTOR PROTECTION CORPORATION
IN SUPPORT OF THE TRUSTEE'S MOTION TO REARGUE THE
COURT'S ORDER GRANTING IN PART AND DENYING IN PART
<u>MOTION TO DISMISS</u>**

# TABLE OF CONTENTS

**PAGE**

REPLY ARGUMENT ..................................................................................................1

    I.    THE SOLE PROPRIETORSHIP AND THE LLC
         ARE ONE AND THE SAME SIPC MEMBER .......................................................1

    II.   SUBSTANTIVE CONSOLIDATION ENSURED
         MAXIMUM RECOVERY FOR CUSTOMERS ....................................................6

CONCLUSION...............................................................................................................8

# TABLE OF AUTHORITIES
## (cont.)

**CASES:**                                      **PAGE**

*Batterton v. Francis*, 432 U.S. 416 (1977) ................................................................................4

*Picard v. Avellino (In re Bernard L. Madoff Investment Securities LLC)*,
    2016 WL 4040799 (Bankr. S.D.N.Y.) ...............................................................................1, 2

*SEC v. Wick*, 360 F. Supp. 312 (N.D. Ill. 1973) ..........................................................................7

*Virgin Atlantic Airways v. Nat'l. Mediation Bd.*, 956 F.2d 1245 (2d Cir.),
    *cert. den.,* 506 U.S. 820 (1992).............................................................................................1

**STATUTES AND RULES:**

Securities Investor Protection Act, as amended, 15 U.S.C. §

78ccc(a)(2) ..................................................................................................................................2
78ccc(a)(2)(A)..............................................................................................................................6
78eee(a)(3) ...................................................................................................................................2
78fff-2(c)(3) .................................................................................................................................7
78lll(4)..........................................................................................................................................7

Securities Exchange Act of 1934, 15 U.S.C. §
78*o*(a) ..........................................................................................................................................2
78*o*(b) ......................................................................................................................................2, 6
78*o*(b)(1) ..................................................................................................................................3, 4
78*o*(b)(1)(B)................................................................................................................................3
78*o*-3 ...........................................................................................................................................3

Rules of the U.S. Securities and Exchange Commission, 17 C.F.R. §

240.15b1-1(b)..............................................................................................................................3
240.15b1-3 ..................................................................................................................................4
240.15b1-3(b)..............................................................................................................................4
240.15b6-1(a)..............................................................................................................................3
240.15b6-1(b)..............................................................................................................................3
249.501(a) ................................................................................................................................2, 3

**OTHER STATUTORY PROVISIONS**:

Pub. L. No. 91-598, 84 Stat. 1636 (1970) ..................................................................................6

# TABLE OF AUTHORITIES
## (cont.)

**RELEASES:** **PAGE**

*Broker-Dealer Registration and Reporting*,
    Exchange Act Release No. 34-31660, 58 Fed. Reg. 11 (Jan. 4, 1993)..................................3

The Securities Investor Protection Corporation ("SIPC") submits this reply in further support of the Trustee's Motion to Reargue the Court's Order Granting In Part and Denying In Part Motion to Dismiss (see Doc. No. 122) and in opposition to the Defendants' response thereto.[1]  Reconsideration of the underlying Memorandum Decision Granting In Part and Denying In Part Motion to Dismiss this case ("Decision")[2] is necessary in order to correct a clear error in the Decision.  *See Virgin Atlantic Airways v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir.) (need to correct clear error one major ground for reconsideration), *cert. den.,* 506 U.S. 820 (1992).

## REPLY ARGUMENT

### I. THE SOLE PROPRIETORSHIP AND THE LLC ARE ONE AND THE SAME SIPC MEMBER

SIPC respectfully submits that the Decision fails to give proper weight to the operation of the broker-dealer at all times under a single brokerage registration, irrespective of any change in the name or structure of the firm.  Instead, the Decision focuses on Bernard L. Madoff Investment Securities LLC ("BLMIS") succeeding to the business of the Madoff sole proprietorship, and on that basis, concludes that BLMIS and the sole proprietorship were two distinct entities and effectively, two separate broker-dealers.   2016 WL 4040799, at *11, n.14.  This is error and misapprehends who the SIPC member in this case, and therefore, the debtor, is under the Securities Investor Protection Act, 15 U.S.C. § 78aaa *et seq*. ("SIPA").

---

[1]  Defendants' Memorandum of Law In Oppos[i]tion to the Trustee's Motion to Reargue the Court's Order Granting In Part and Denying In Part Motion to Dismiss, filed on September 19, 2016 (Doc. No. 129).  Unless otherwise indicated, Document Numbers referenced herein are to filings in Adversary Proceeding No. 10-05421.

[2]  *Picard v. Avellino (In re Bernard L. Madoff Investment Securities LLC)*, 2016 WL 4040799 (Bankr. S.D.N.Y.).

In the Decision, the Court correctly observes that the debtor in a SIPA proceeding is "a member of SIPC with respect to whom an application for a protective decree has been filed under section 78eee(a)(3) of [SIPA]." [3] 2016 WL at 4040799 *11. The Court also is correct that the SIPA application for a protective decree, filed in the District Court for this district, and giving rise to the commencement of this SIPA liquidation proceeding, identified BLMIS as the defendant, and did not mention its predecessor, the Madoff sole proprietorship. *Id*. The Court, however, is incorrect in its conclusion that the SIPA application for a customer protective decree related only to BLMIS, and not to the sole proprietorship as well. In fact, the SIPA application applied to the single broker-dealer which, at various times, had different names, but at all times was *the* registered broker-dealer under a single registration with the Securities and Exchange Commission ("SEC" or "Commission"). This means that whether the firm operated as Bernard Lawrence Madoff, or d/b/a Bernard L. Madoff, or Bernard L. Madoff Investment Securities LLC, as it did at various times since 1960, it still was one registered broker-dealer and in 1970, upon the enactment of SIPA, one SIPC member.

SIPC membership is contingent on registration of the broker-dealer with the SEC. Under SIPA section 78ccc(a)(2), with some narrow exceptions, SIPC members are all broker-dealers registered with the SEC under 15 U.S.C. section 78*o*(b). It is unlawful for most broker-dealers to operate as broker-dealers unless registered with the Commission, *see* 15 U.S.C. section 78*o*(a), and section 78*o*(b) prescribes the means by which broker-dealers become registered. Under section 78*o*(b), to become registered, the broker-dealer must file an application for registration with the SEC. The application is prepared on SEC Form BD (the uniform form for broker-dealer registration), *see* 17 C.F.R. section 249.501(a). A completed and signed copy of the form, in

---

[3] References to provisions of SIPA shall omit "15 U.S.C.".

2

most cases, is filed through the Central Registration Depository ("CRD") which is operated by the Financial Industry Regulatory Authority, Inc. ("FINRA"). *See* 17 C.F.R. § 240.15b1-1(b).

The CRD "is a computerized filing and data processing system … that maintains registration information regarding NASD [now FINRA] member firms and their registered personnel for access by state regulators, certain self-regulatory organizations …, and the Commission." *Broker-Dealer Registration and Reporting*, Exchange Act Release No. 34-31660, 58 Fed. Reg. 11 (Jan. 4, 1993).[4] Once an application is filed, FINRA enters the information into the CRD and then electronically forwards it to the Commission for review. *Id*. The Commission generally has 45 days within which to grant the application or to institute proceedings to determine whether the application should be denied. 15 U.S.C. § 78*o*(b)(1). In the case at hand, the broker-dealer application of the Madoff sole proprietorship became effective on January 19, 1960, and was assigned SEC file no. 8-08132.[5]

A firm that ceases to do business as a broker-dealer withdraws from registration with the Commission by filing an SEC BDW form (the uniform request form for broker-dealer withdrawal) through the CRD. *See* 17 C.F.R. § 249.501a and 17 C.F.R. § 240.15b6-1(a). The BDW generally is effective sixty days after filing. *See* 17 C.F.R. § 240.15b6-1(b).

If the analysis in the Decision was correct, and there were two broker-dealers, then BLMIS, as the successor firm, would have filed a BD application and the Madoff sole proprietorship would have filed a BDW form to terminate its registration. That did not happen.

---

[4] Every registered broker-dealer also must be a member of a registered securities association. 15 U.S.C. § 78*o*(b)(1)(B). FINRA is the only national securities association registered with the SEC under 15 U.S.C. section 78*o*-3.

[5] *See* Exhibit A to Declaration of Kevin H. Bell In Support of the Reply Memorandum of Law of the Securities Investor Protection Corporation In Support of the Trustee's Determinations Regarding Inter-Account Transfers, filed on June 6, 2014, in Case No. 08-01789-smb (Doc. No. 6928). The Declaration is referred to hereinafter as "June 2014 Bell Decl."

Instead, the firm's registration was governed by the exception in SEC Rule 15b1-3(b), 17 C.F.R. § 240.15b1-3(b), which allows a successor firm to continue in business under the registration of its predecessor. SEC Rule 15b1-3 provides as follows:

> (a)    In the event that a broker or dealer succeeds to and continues the business of a broker or dealer registered pursuant to section 15(b) of the Act, the registration of the predecessor shall be deemed to remain effective as the registration of the successor if the successor, within 30 days after such succession, files an application for registration on Form BD, and the predecessor files a notice of withdrawal from registration on Form BDW; *Provided, however,* That the registration of the predecessor broker or dealer will cease to be effective as the registration of the successor broker or dealer 45 days after the application for registration on Form BD is filed by such successor.
>
> (b)    Notwithstanding paragraph (a) of this section, if a broker or dealer succeeds to and continues the business of a registered predecessor broker or dealer, and the succession is based solely on a change in the predecessor's date or state of incorporation, form of organization, or composition of a partnership, the successor may, within 30 days after the succession, amend the registration of the predecessor broker or dealer on Form BD to reflect these changes. This amendment shall be deemed an application for registration filed by the predecessor and adopted by the successor.

SEC Rules enacted pursuant to statutory authority and that implement the statute, as here, *see* 15 U.S.C. section 78*o*(b)(1), have the force and effect of law. *Batterton v. Francis*, 432 U.S. 416, 425 n.9 (1977).

Under SEC Rule 15b1-3(b), the amended application for registration substituting BLMIS for the sole proprietorship was deemed an application filed by the sole proprietorship and adopted by the successor. Significantly, although the amended application actually was filed by BLMIS, it was deemed filed by the Madoff sole proprietorship as if BLMIS and the sole proprietorship were one. The predecessor brokerage did not withdraw from registration, and the successor brokerage did not file a new application for registration. Although under a different

name, the brokerage operation continued undisturbed, with no impact on customers and their assets on deposit.  As the amended application provided, in pertinent part:

> EFFECTIVE JANUARY 1, 2001, PREDECESSOR [Madoff] WILL TRANSFER TO SUCCESSOR [BLMIS] ALL OF PREDECESSOR'S ASSETS AND LIABILITIES, RELATED TO PREDECESSOR'S BUSINESS.  THE TRANSFER WILL NOT RESULT IN ANY CHANGE IN OWNERSHIP OR CONTROL.

June 2014 Bell Decl., Ex. B at p. 11 of 16.  The same brokerage, whether named Bernard L. Madoff or BLMIS, was responsible for safekeeping customers' cash and securities.

For SIPA purposes, because SIPC membership tracks SEC registration, the SIPC member was the registered broker-dealer which subsumed the Madoff firm under its different names and forms of ownership.  When SIPC filed its application for a customer protective decree, it did not need to list all of the names under which the brokerage had done business.  The SIPC member was the broker-dealer that was registered with the SEC.  No new brokerage was created by the amended application deemed filed by the sole proprietorship.  Notwithstanding the name change, the brokerage continued uninterrupted as one entity since its initial registration as a broker-dealer in 1960.

The registration and membership records of the SEC, FINRA, and SIPC bear out this conclusion.  The Attestation executed on behalf of the SEC states that the

> Commission's records reflect that a registration statement on Form BD, application as a broker-dealer, was received in this Commission under the name of Bernard L. Madoff (later known as Bernard L. Madoff Investment Securities LLC), File No. 008-08132, pursuant to the provisions of the Securities Exchange Act of 1934, and said registration was declared effective on January 19, 1960.

Exhibit A to June 2014 Bell Declaration.  The CRD records of FINRA show the effective date of SEC registration of *BLMIS* as a broker-dealer as January 19, 1960, even though the

5

registration amendment from the Madoff sole proprietorship to BLMIS did not occur until January 1, 2001.  *See* Certification of a FINRA Business Record.[6]  Similarly, the SIPC Membership Management System which is a computerized database of all SIPC members, shows the SEC Effective Date of registration of BLMIS as January 19, 1960, and the SIPC effective Date of membership of BLMIS as December 30, 1970, which was the date of enactment of SIPA.[7]  *See* Exhibit A to Declaration of Linda M. Siemers. [8]  Notably, BLMIS, as a single member LLC, did not come into existence until on or about December 4, 2000,[9] and yet, the pertinent official records point to it being a registered broker-dealer as of some 40 years earlier.  If the analysis in the Decision was correct, BLMIS would have been a registered broker-dealer and SIPC member only as of January 1, 2001, and not as of January 19, 1960.

## II.  SUBSTANTIVE CONSOLIDATION ENSURED MAXIMUM RECOVERY FOR CUSTOMERS

In the absence of a termination of registration based on a change in brokerage firms, the change in structure of a brokerage should not be conflated with creation of a new brokerage and a new SIPC member.  The structure of the brokerage does not govern SIPC membership.  As provided under SIPA section 78ccc(a)(2)(A), registration under 15 U.S.C. section 78*o*(b) is the key to who the SIPC member is, and, if the member is placed in liquidation, who the debtor is.

---

[6]  The Certification of a FINRA Business Record and its attachment are Exhibit A to the Declaration of Kevin H. Bell, dated October 3, 2016.  The Declaration is referred to hereinafter as "Oct. 2016 Bell Decl."

[7]  SIPA, Pub. L. No. 91-598, 84 Stat. 1636 (1970)

[8]  The Declaration of Linda M. Siemers and the attachment thereto are Exhibit B to the Oct. 2016 Bell Decl.

[9]  *See* Affidavit of Michael Slattery, Jr. In Support of Joint Motion of Trustee and Securities Investor Protection Corporation for an Order Substantively Consolidating the Estate of Bernard L. Madoff With the SIPA Proceeding of Bernard L. Madoff Investment Securities LLC, filed on May 5, 2009 in Adv. Pro. No. 08-1789 (BRL) (Doc. No. 197) at 2, ¶6.

The registered broker-dealer in this case was BLMIS and all of its predecessors under the same brokerage registration. It was error for the Court to single out a different name of the firm and to treat the operation of that firm as a separate broker-dealer.

The fact that at one time, the brokerage was a sole proprietorship and later became an LLC, is irrelevant to the Trustee's obligation and ability to recover customer property. All forms of organization of SIPC member broker-dealers have been liquidated under SIPA, including sole proprietorships. *See, e.g., SEC v. Wick*, 360 F. Supp. 312 (N.D. Ill. 1973). There is no partial liquidation of a SIPC member firm. SIPC could not cause the liquidation of BLMIS one day, and on a separate occasion, cause the liquidation of the sole proprietorship. The liquidation of BLMIS necessarily entailed the liquidation of any predecessor that was the same brokerage registrant. Consequently, as the Trustee for the registered broker-dealer and therefore, SIPC member, the Trustee was obligated to collect customer property held by the debtor/registered broker-dealer. Because customer property includes unlawfully converted property under SIPA section 78*lll*(4), the Trustee was free to pursue the recovery of such property if a deficiency in customer property existed and if the property had been transferred by the debtor/brokerage registrant, in a void or voidable transfer. SIPA § 78fff-2(c)(3).

The SIPA trustee has paid claims in this liquidation proceeding based upon deposits with the debtor prior to 2001. The substantive consolidation of the Bernard L. Madoff and BLMIS estates in this case is meaningless if the customers of BLMIS, while it functioned under a different name, are allowed to share in customer property but the property of theirs that was transferred by the brokerage -- because the transfers were made by the brokerage under an earlier name -- is not subject to recovery.

7

Upon entry of the consolidation order, it was envisioned that the SIPA trustee and the Chapter 7 trustee would work cooperatively to carry out their respective roles and duties: the SIPA trustee would pursue recovery of customer property while the Chapter 7 trustee primarily would pursue recovery of non-customer property, including in particular, transfers made by Bernard Madoff, in a personal capacity, at the very least, after January 1, 2001. In approving consolidation, the clear intention of this Court was to maximize the recovery of property for the benefit of customers and creditors. The Court should not change course now.

## CONCLUSION

For the foregoing additional reasons, the motion of the Trustee with respect to the Order granting, in part, and denying in part, the motion to dismiss should be granted.

Respectfully submitted,

/s/ Josephine Wang
JOSEPHINE WANG
General Counsel

KEVIN H. BELL
Senior Associate General Counsel
 For Dispute Resolution

SECURITIES INVESTOR
 PROTECTION CORPORATION
1667 K Street N.W., Suite 1000
Washington, D.C. 20006
Telephone: (202) 371-8300
Facsimile: (202) 371-6728
E-mail: jwang@sipc.org
E-mail: kbell@sipc.org

Date: October 3, 2016
Washington, D. C.