# Exhibit 2

**CHAITMAN LLP**
Helen Davis Chaitman
hchaitman@chaitmanllp.com
465 Park Avenue
New York, New York 10022
Phone & Fax: 888-759-1114

*Attorneys for Defendant Doron Tavlin Trust U/A 2/4/91, Doron A. Tavlin, as Trustee of the Doron Tavlin Trust U/A 2/4/91*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>                   Plaintiff-Applicant,<br><br>     v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>                   Defendant. | Adv. Pro. No. 08-1789 (SMB)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>                   Debtor. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and Bernard L. Madoff<br><br>                   Plaintiff,<br><br>     v.<br><br>DORON TAVLIN TRUST U/A 2/4/91, DORON A. TAVLIN, as Trustee of the Doron Tavlin Trust U/A 2/4/91, and HARVEY KRAUSS, as Trustee of the Doron Tavlin Trust U/A 2/4/91,<br><br>                   Defendants. | Adv. Pro. No. 10-05312 (SMB) |

## RESPONSES AND OBJECTIONS OF DEFENDANT DORON TAVLIN TRUST U/A 2/4/91 TO TRUSTEE'S FIRST SET OF INTERROGATORIES

DORON TAVLIN TRUST U/A 2/4/91 ("Responding Party"), by and through its attorneys, and pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure and Rules 7026 and 7033 of the Federal Rules of Bankruptcy Procedure, and the Local Rules of this Court, hereby respond and objects to the First Set of Interrogatories (the "Requests") of trustee Irving H. Picard (the "Trustee") as follows:

## GENERAL OBJECTIONS

1.      Responding Party objects to each instruction, definition, and Request to the extent that it purports to impose any requirement or discovery obligation greater than or different from those under the Federal Rules of Civil Procedure and the applicable Rules and Orders of the Court.

2.      Responding Party objects to each instruction, definition, and Request to the extent it is vague, ambiguous, overly broad and unduly burdensome, or requests the production of documents that are not relevant to any parties' claims or defenses.

3.      Responding Party objects to the Requests to the extent they request disclosure of (i) legal theories, legal opinions, mental impressions or other information of Responding Party's counsel, (ii) any information protected by any privilege, including, without limitation, the attorney-client privilege or the privilege afforded to settlements or settlement negotiations, or (iii) any other available and valid grounds for withholding information or documents from production, including, without limitation, the attorney work product doctrine.  Nothing contained in these responses should be interpreted as a waiver of any such privilege or doctrine.

4.      Responding Party objects to the Requests to the extent they require production of documents not within the possession, custody, or control of the Responding Party.

5.      Responding Party objects to the Requests to the extent they call for legal conclusions.

6.      Responding Party objects to the Requests to the extent they seek disclosure of proprietary and/or confidential information.

7.      Responding Party objects to each definition, instruction, and Request as overbroad and unduly burdensome to the extent it seeks documents that are readily or more accessible to the Propounding Party from its own files or documents, which the Propounding Party previously produced to the Responding Party.

8.      Responding Party reserves all objections as to the competence, relevance, materiality, admissibility, or privileged status of any information provided in response to these Requests, unless the Responding Party specifically states otherwise.

9.      Responding Party's responses to the Requests are based upon information presently available.  Responding Parties have not completed discovery.  Accordingly, these responses are made without prejudice to Responding Party's right to present additional evidence based upon information subsequently obtained or evaluated.

10.     Responding Party expressly reserves the right to supplement, clarify, revise, or correct any responses and objections herein, and to assert additional objections or privileges, in one or more subsequent supplemental response(s).

11.     Responding Party's response to each of the Requests is made subject to these General Objections and limitations.  Responding Party sets them out here to avoid repeating them in response to each individual Request.  Responding Party's failure to specifically set forth an objection in response to a particular Request shall not be construed as a waiver of said objection.

12.    Responding Party objects to the Requests to the extent that they seek disclosure of information or production of documents which are outside of the "Applicable Period" or for a time period that has no relevance to the issues in the complaint and answer.

## RESPONSES AND OBJECTIONS

1.    Identify each Person who was involved in answering these discovery requests and explain each Person's role in answering these discovery requests.

**ANSWER:    Doron A. Tavlin as Trustee of the Doron Tavlin Trust U/A 2/4/91.**

2.    Identify the reasons for each Transfer.

**ANSWER:    Responding Party is unable to do so except to the extent that withdrawals were taken to pay applicable state and federal taxes on the reported short term capital gains in the Account.**

3.    Identify the reasons for each Subsequent Transfer.

**ANSWER:    Responding Party refuses to answer this interrogatory because it is improper and it is unethical for the Trustee to be seeking information necessary to frame a complaint against subsequent transferees.**

4.    Identify each deposit into the Account.

**ANSWER:    Responding Party is unable to do so.  To the extent that the Trustee has reliable third party documents proving a deposit or withdrawal (such as Madoff's bank records), Responding Party will acknowledge that deposit or withdrawal.  However, as the Trustee has admitted, Madoff's records are permeated with fraud and, therefore, they cannot be relied upon to prove any withdrawals.  Moreover, the Trustee has admitted he has no bank records prior to December 1998.  Hence, he has no competent evidence of any activity in the account prior to December 1998.**

5.      Identify each Person with knowledge of any Transfer, the circumstances under which each Person obtained such knowledge, and the substance of that Person's knowledge.

**ANSWER:   Harvey Krauss; Annette Bongiorno; Bernard L. Madoff and possibly other Madoff employees.   To the extent this interrogatory seeks information about subsequent transferees, the interrogatory is improper and it is unethical for the Trustee to be seeking this information in order to frame a complaint.**

6.      Identify: (a) each Person or entity that ever received funds withdrawn from the Account, whether directly or indirectly; (b) the amount of money that each such Person or entity received; and (c) the date(s) on which each Person or entity received such money.

**ANSWER:   Responding Party is unable to do so.   To the extent this interrogatory seeks information about subsequent transferees, the interrogatory is improper, seeks information which is irrelevant, and it is unethical for the Trustee to be seeking information necessary to frame a complaint against subsequent transferees.   Moreover, the information the Trustee seeks is irrelevant because his claim rests solely on one withdrawal dated January 26, 2007 in the amount of $489,272.   To the best of Responding Party's knowledge, that check was sent to Harvey Krauss, Trustee, who used it, in its entirety, to pay taxes to the Internal Revenue Service.   Responding Party never received any portion of that check.**

7.      Identify all Persons who benefited from any Transfer, including, but not limited to, Persons who received or enjoyed the benefit of anything paid for with any funds that were part of any Transfer, and describe how these Persons benefited.

**ANSWER:   Withdrawals from the Account benefited the taxing authorities.   To the extent the Trustee seeks information about subsequent transferees, it is unethical for**

him to do so and the information is irrelevant to any of the issues in the case. **Moreover, the information the Trustee seeks is irrelevant because his claim rests solely on one withdrawal dated January 26, 2007 in the amount of $489,272. As the Trustee knows, that check was sent to Snow Becker Krauss P.C. and deposited into the firm's escrow account for the payment of taxes to the Internal Revenue Service.**

8.    To the extent not already provided in Your responses to the preceding Interrogatories, state how You used any money from the Transfers.

**ANSWER:    See answer to # 6.**

9.    Identify any and all banks and/or financial institutions where You hold or have held accounts during the Applicable Period, and for each account, give the account number, the date the account was opened, and the date the account was closed.

**ANSWER:    Harvey Krauss managed the Account and handled all banking transactions for the Account. The only bank record that has any relevance to this case is the check from BLMIS to Snow Becker Krauss P.C. dated January 26, 2007 in the amount of $489,272. The Trustee has this check. Responding Party was informed that Snow Becker Krauss P.C. paid those funds over to the Internal Revenue Service.**

10.    Identify any Persons to whom You paid any management fees, performance fees, or any other fees in connection with the Account. For each Person so identified, Identify the amount of such fees paid on a monthly basis, setting forth separately the amount attributable to each type of fee.

**ANSWER:    Harvey Krauss.**

11.     Identify all current and former beneficiaries of the Trust. For each Person so identified, Identify the date range during which such Person was a beneficiary, and the dates and amount of any Transfers received by such Person.

**ANSWER:    Responding Party refuses to answer this interrogatory because it seeks discovery to frame a complaint against subsequent transferees and is improper.**

12.     Identify any Person with whom You have had a conversation about BLMIS and/or Bernard L. Madoff, state when that conversation took place, and describe the substance of the conversation(s).

**ANSWER:    Responding Party was a personal friend of Madoff and had numerous conversations with him over the years concerning personal matters.**

13.     Identify any perceived or actual discrepancies in the Account or on the Account statements, including but not limited to perceived or actual discrepancies in the amount or number of shares in the Account.

**ANSWER:    Responding Party does not recall but the Account was handled by Harvey Krauss.**

14.     Identify any instance when You communicated to BLMIS any disagreement with respect to the accuracy of the deposits reflected on the customer statements.

**ANSWER:    See answer to # 13.**

15.     Identify any instance when You communicated to BLMIS any disagreement with respect to the accuracy of the withdrawals reflected on the customer statements.

**ANSWER:    See answer to # 13.**

16.     Identify any cash payments made by BLMIS or Madoff to Defendants or any of them.

**ANSWER:    Responding Party knows of no cash payments.**

17.    Identify all instances where the Account statements were delivered late or were never delivered.

**ANSWER:    See answer to # 13.**

18.    Identify all instances in which BLMIS or Madoff made any promises or guarantees that the Account would receive a minimum or specific rate of return.

**ANSWER:    That never happened.**

19.    Identify all instances in which You told BLMIS or Madoff what the rate of return or the balance for the Account should be.

**ANSWER:    See answer # 18.**

20.    Identify all instances in which BLMIS or Madoff sought Your approval of or sign-off on the rate of return or balance for the Account.

**ANSWER:    See answer to # 18.**

21.    Identify any and all refunds from the Internal Revenue Services for the payment of taxes on perceived gains in the Account and for each such refund identify who received the refund, when it was received, and how it was used.

**ANSWER:    No taxes are being claimed as an offset for the period from 2003 – 2007.  Hence, any tax refund in 2009 is irrelevant.**

22.    For each denial of a material allegation and each affirmative defense in Your answer to the Complaint:

a.    state all facts upon which You base the denial or affirmative defense;

b.    state the names, addresses, and telephone numbers of all Persons who have knowledge of those facts; and

c.      Identify all Documents and other tangible things that support Your denial or affirmative defense, and state the name, address, and telephone number of the Person who has each Document.

**ANSWER:  Most of the affirmative defenses are based on legal arguments. However:**

**(a)      The defense concerning payment of capital gains taxes is based upon Responding Party's testimony as to the payment of taxes at the applicable tax rates for each year of the Account and the reported income as reflected in Madoff's statements which are in the Trustee's possession.**

**(b)      The defense concerning Madoff not being a Ponzi scheme is based upon the non-investment advisory activities of Madoff as reflected in documents in the Trustee's possession and upon the testimony of Bernard L. Madoff and various employees (yet to be identified) who worked in the propriety trading and market-making operations.**

**(c)      The defense concerning the denial of the Trustee's determination of "net equity" is based, in part, upon the Trustee's dishonest treatment of profit withdrawals and his lack of any documentary evidence pre-dating December 1998.**

**(d)      The defense concerning the Trustee's due process violations is based upon the Trustee's compensation structure with Baker & Hostetler, LLP which the Trustee is obligated to disclose.**

**(e)      The defense concerning the "value" bestowed on Madoff by Defendants is based, in part, upon expert testimony that Defendants intend to develop.**

(f)     The defense concerning inter-account transfers is based upon the Trustee's improper application of his net investment method to transactions that occurred prior to 1992.

October 3, 2016

**CHAITMAN LLP**
By: /s/ *Helen Davis Chaitman*
465 Park Avenue
New York, New York 10022
Phone & Fax: 888-759-1114
hchaitman@chaitmanllp.com

*Attorneys for Defendant Doron Tavlin Trust U/A 2/4/91, Doron A. Tavlin, as Trustee of the Doron Tavlin Trust U/A 2/4/91*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | | No. 08-1789 (SMB) |
| | Plaintiff-Applicant, | SIPA LIQUIDATION |
| v. | | (Substantively |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | | Consolidated) |
| | Defendant. | |

| | | |
|---|---|---|
| In re: | | |
| BERNARD L. MADOFF, | | |
| | Debtor. | |

| | | |
|---|---|---|
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and Bernard L. Madoff, | | Adv. Pro. No. 10-05312 (SMB) |
| | Plaintiff, | |
| v. | | VERIFICATION |
| DORON TAVLIN TRUST U/A 2/4/91, DORON A. TAVLIN, as Trustee of the Doron Tavlin Trust U/A 2/4/91, and HARVEY KRAUSS, as Trustee of the Doron Tavlin Trust U/A/ 2/4/91, | | |
| | Defendants. | |

I, DORON A. TAVLIN, declare pursuant to 28 U.S.C. § 1746, that I have read the foregoing interrogatory answers and that the responses contained therein are true and correct to the best of my knowledge, information and belief. I understand that if any of these responses is found to be willfully false, I am subject to punishment.

10/3____, 2016

_____
Doron A. Tavlin

{N0047184 }                                    1

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and accurate copy of the foregoing was served this 6th day of October, 2016 by electronic mail and the 7th day of October, 2016 by USPS first class mail upon the following:

Baker & Hostetler LLP
45 Rockefeller Plaza
New York, NY 10011
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Email: dsheehan@bakerlaw.com
Nicholas J. Cremona
Email: ncremona@bakerlaw.com
Heather J. McDonald
Email: hmcdonald@bakerlaw.com

*Attorneys for Irving H. Picard, Trustee for the
Substantively Consolidated SIPA Liquidation
of Bernard L. Madoff Investment Securities
LLC and the Estate of Bernard L. Madoff*

**CHAITMAN LLP**
By: /s/ *Helen Davis Chaitman*
465 Park Avenue
New York, New York 10022
Phone & Fax: 888-759-1114
hchaitman@chaitmanllp.com

*Attorneys for Defendant Doron
Tavlin Trust U/A 2/4/91, Doron A.
Tavlin, as Trustee of the Doron
Tavlin Trust U/A 2/4/91*

**CHAITMAN LLP**
Helen Davis Chaitman
hchaitman@chaitmanllp.com
465 Park Avenue
New York, New York 10022
Phone & Fax: 888-759-1114

*Attorneys for Defendant Doron Tavlin Trust U/A 2/4/91, Doron A. Tavlin, as Trustee of the Doron Tavlin Trust U/A 2/4/91*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>                               Plaintiff-Applicant,<br><br>      v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>                               Defendant. | Adv. Pro. No. 08-1789 (SMB)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>                               Debtor. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and Bernard L. Madoff<br><br>                               Plaintiff,<br><br>      v.<br><br>DORON TAVLIN TRUST U/A 2/4/91, DORON A. TAVLIN, as Trustee of the Doron Tavlin Trust U/A 2/4/91, and HARVEY KRAUSS as Trustee of the Doron Tavlin Trust U/A 2/4/91,<br><br>                               Defendant(s). | Adv. Pro. No. 10-05312 (SMB) |

### RESPONSES AND OBJECTIONS OF DEFENDANT DORON TAVLIN TRUST U/A 2/4/91 TO TRUSTEE'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS

DORON TAVLIN TRUST U/A 2/4/91 ("Responding Party"), by and through its attorneys, and pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure and Rules 7026 and 7034 of the Federal Rules of Bankruptcy Procedure, and the Local Rules of this Court, hereby responds and objects to the First Set of Requests for Production of Documents and Things (the "Requests") of trustee Irving H. Picard (the "Trustee") as follows:

### GENERAL OBJECTIONS

1.      Responding Party objects to each instruction, definition, and Request to the extent that it purports to impose any requirement or discovery obligation greater than or different from those under the Federal Rules of Civil Procedure and the applicable Rules and Orders of the Court.

2.      Responding Party objects to each instruction, definition, and Request to the extent it is vague, ambiguous, overly broad and unduly burdensome, or requests the production of documents that are not relevant to any parties' claims or defenses.

3.      Responding Party objects to the Requests to the extent they request disclosure of (i) legal theories, legal opinions, mental impressions or other information of Responding Parties' counsel, (ii) any information protected by any privilege, including, without limitation, the attorney-client privilege or the privilege afforded to settlements or settlement negotiations, or (iii) any other available and valid grounds for withholding information or documents from production, including, without limitation, the attorney work product doctrine. Nothing contained in these responses should be interpreted as a waiver of any such privilege or doctrine.

4.      Responding Party objects to the Requests to the extent they require production of documents not within the possession, custody, or control of the Responding Party.

5.      Responding Party objects to the Requests to the extent they call for legal conclusions.

6.      Responding Party objects to the Requests to the extent they seek disclosure of proprietary and/or confidential information.

7.      Responding Party objects to each definition, instruction, and Request as overbroad and unduly burdensome to the extent it seeks documents that are readily or more accessible to the Propounding Party from its own files or documents, which the Propounding Party previously produced to the Responding Party.

8.      Responding Party reserves all objections as to the competence, relevance, materiality, admissibility, or privileged status of any information provided in response to these Requests, unless the Responding Party specifically states otherwise.

9.      Responding Party's responses to the Requests are based upon information presently available.   Responding Party has not completed discovery.   Accordingly, these responses are made without prejudice to Responding Party's right to present additional evidence based upon information subsequently obtained or evaluated.

10.      Responding Party expressly reserves the right to supplement, clarify, revise, or correct any responses and objections herein, and to assert additional objections or privileges, in one or more subsequent supplemental response(s).

11.      Responding Party's response to each of the Requests is made subject to these General Objections and limitations.   Responding Party sets them out here to avoid repeating them in response to each individual Request.   Responding Party's failure to specifically set forth an objection in response to a particular Request shall not be construed as a waiver of said objection.

12.     Responding Party objects to the Requests to the extent that they seek disclosure of information or production of documents which are outside of the "Applicable Period" or for a time period that has no relevance to the issues in the complaint and answer.

## RESPONSES AND OBJECTIONS

1.     Monthly Account statements.

**Response:     The Trustee is suing to recover only one withdrawal dated January 26, 2007 in the amount of $489,272.  The check from BLMIS for that amount was paid to Snow Becker & Krauss P.C. and deposited into the firm's escrow account.  To the best of Responding Party's knowledge, Snow Becker & Krauss P.C. sent a check in that same amount to the Internal Revenue Service.  Responding Party will attempt to obtain and produce a copy of the check to the Internal Revenue Service.  No other documents relating to the Account are relevant.**

2.     All Communications between Defendants, or any of them, and BLMIS or Madoff Concerning the Account, including Transfers to and from the Account.

**Response:     See response to # 1.**

3.     Bank and/or brokerage account records, for the period between and including December 11, 2006 and December 31, 2009, for any accounts that received Initial Transfers, including monthly statements, cancelled checks, and incoming/outgoing wire transfer records.

**Response:     See response to # 1.**

4.     Documents and Communications sufficient to identify any Subsequent Transfer, in whole or in part, of any Initial Transfer and/or Subsequent Transfer from the Account, including the amount, date and recipient of any Subsequent Transfer.

**Response:**   **The Trustee has no right to any such document and it is improper and unethical for him to ask for them in order to seek information to frame a complaint against subsequent transferees.**

5.   Documents sufficient to identify any money, property, and/or anything else of value provided by Defendants, or any of them, to BLMIS and/or Madoff in exchange for any Initial Transfer.

**Response:**   **See response to #1.**

6.   Documents sufficient to identify any money, property, services, and/or anything else of value provided by any Person or entity to Defendants, or any of them, in exchange for any Subsequent Transfer.

**Response:**   **The Trustee has no right to any such document and it is improper and unethical for him to ask for them in order to seek information to frame a complaint against subsequent transferees.**

7.   Documents sufficient to identify any money, property, services, and/or anything else of value provided by Harvey Krauss to Defendants, or any of them, in exchange for any Initial Transfer, Subsequent Transfer, or Transfer to Harvey Krauss for the benefit of Defendants, or any of them.

**Response:**   **See responses to ## 1 and 4.**

8.   Trust instruments, including any amendments, for Doron Tavlin Trust U/A 2/4/1991.

**Response:**   **Any such documents are irrelevant to the issues in the case and will not be produced.**

9.    Documents related to any perceived discrepancies in the Account or on the Account statements, including but not limited to perceived discrepancies in the amount of shares in the Account.

**Response:    Harvey Krauss would have such documents.**

10.    Documents related to the receipt of cash payments by Defendants, or any of them, from BLMIS or Madoff.

**Response:    There are no such documents.**

11.    Documents related to Defendants' knowledge of the transfer of cash payments by BLMIS or Madoff to any other Person or entity.

**Response:    See response to # 10.**

12.    Communications between Defendants, or any of them, and Harvey Krauss related to the Account, BLMIS or Madoff.

**Response:    Except for the documents referred to in response # 1, such documents have no relevance to any of the issues in the case.**

13.    Communications between Defendants related to the Account, BLMIS or Madoff.

**Response:    See response to # 12.**

14.    Communications between Harvey Krauss and BLMIS or Madoff related to Defendants (or any of them) or the Account.

**Response:    See response to # 12.**

15.    Documents analyzing or summarizing the Account, any activity in the Account, or any Account statements.

**Response:    See response to # 12.**

16.    Documents Concerning financial and/or tax analyses of the Account.

**Response:**    **Such documents have no relevance to any of the issues in the case.**

17.    Documents Concerning untimely or late delivery of Account statements.

**Response:**    **Harvey Krauss may have such documents; Responding Party does not.**

18.    Documents Concerning BLMIS's failure to deliver Account statements to any Defendant.

**Response:**    **See response to # 17.**

19.    Documents Concerning any guarantee or promise from, or representation by, BLMIS or Madoff that the Account would receive a minimum rate of return or a specific rate of return.

**Response:**    **There are no such documents.**

20.    Documents showing that the Account received a minimum or specific rate of return.

**Response:**    **There are no such documents.**

21.    Documents Concerning any control or authority Defendants, or any of them, had over the balance in the Account.

**Response:**    **Harvey Krauss controlled the Account and would have any responsive documents, if any exist.**

22.    Documents Concerning any approval of the balance of funds in the Account sought by BLMIS or Madoff from Defendants, or any of them.

**Response:**    **There are no such documents.**

23.    Documents Concerning the rate of return for the Account.

**Response:    There are no such documents.**

24.    Documents Concerning any taxes paid to the Internal Revenue Service on perceived gains in the Account.

**Response:    Responding Party shall use its best efforts to obtain and produce documents proving that Snow Becker & Krauss P.C. sent a check to the Internal Revenue Service in 2007 for $489,272 – the precise sum for which the Trustee is suing.**

25.    Documents Concerning any refunds received from the Internal Revenue Service for the payment of taxes on perceived gains in the Account.

**Response:    No taxes are being claimed as an offset for the period from 2003 – 2007.  Hence, any tax refund in 2009 is irrelevant.**

26.    Documents Concerning the use of any refunds received from the Internal Revenue Service for the payment of taxes on perceived gains in the Account.

**Response:    Any such documents are irrelevant to the issues in the case and will not be produced.**

27.    Documents Concerning the transfer to any other person or entity of any refunds or portion of refunds received from the Internal Revenue Service for the payment of taxes on perceived gains in the Account.

**Response:    The Trustee has no right to any such document and it is improper and unethical for him to ask for them in order to seek information to frame a complaint against subsequent transferees.**

28.    Documents Defendants contend to support any denials of fact or affirmative defenses asserted in Defendant's answer to the Complaint.

**Response:    Any such documents shall be produced.**

29.      Documents Defendants intend to rely upon in connection with the defense of the claims asserted in the Complaint.

**Response:    Any such documents shall be produced.**

30.      Documents Defendants identified, reviewed, prepared, or consulted in responding to discovery in this matter.

**Response:    There are no such documents.**

October 3, 2016

**CHAITMAN LLP**
By:  */s/ Helen Davis Chaitman*
465 Park Avenue
New York, New York 10022
Phone & Fax: 888-759-1114
hchaitman@chaitmanllp.com

*Attorneys for Defendant Doron Tavlin Trust
U/A 2/4/91, Doron A. Tavlin, as Trustee of
the Doron Tavlin Trust U/A 2/4/91*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and accurate copy of the foregoing was served this 6th day of October, 2016 by electronic mail and the 7th day of October, 2016 by USPS first class mail upon the following:

Baker & Hostetler LLP
45 Rockefeller Plaza
New York, NY 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Email: dsheehan@bakerlaw.com
Keith Murphy
Email: kmurphy@bakerlaw.com
Nicholas J. Cremona
Email: ncremona@bakerlaw.com
Heather J. McDonald
Email: hmcdonald@bakerlaw.com

*Attorneys for Irving H. Picard, Trustee for the*
*Substantively Consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities*
*LLC and the Estate of Bernard L. Madoff*

**CHAITMAN LLP**
By: */s/ Helen Davis Chaitman*
465 Park Avenue
New York, New York 10022
Phone & Fax: 888-759-1114
hchaitman@chaitmanllp.com

*Attorneys for Defendant Doron*
*Tavlin Trust U/A 2/4/91, Doron A.*
*Tavlin, as Trustee of the Doron*
*Tavlin Trust U/A 2/4/91*

**CHAITMAN LLP**
Helen Davis Chaitman
hchaitman@chaitmanllp.com
465 Park Avenue
New York, New York 10022
Phone & Fax: 888-759-1114

*Attorneys for Defendant Doron Tavlin Trust U/A 2/4/91, Doron A. Tavlin, as Trustee of the Doron Tavlin Trust U/A 2/4/91*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>                              Plaintiff-Applicant,<br><br>           v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>                              Defendant. | Adv. Pro. No. 08-1789 (SMB)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>                              Debtor. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and Bernard L. Madoff<br><br>                              Plaintiff,<br><br>           v.<br><br>DORON TAVLIN TRUST U/A 2/4/91, DORON A. TAVLIN, as Trustee of the Doron Tavlin Trust U/A 2/4/91, and HARVEY KRAUSS, as Trustee of the Doron Tavlin Trust U/A 2/4/91,<br><br>                              Defendants. | Adv. Pro. No. 10-05312 (SMB) |

## RESPONSES AND OBJECTIONS OF DEFENDANT DORON A. TAVLIN AS TRUSTEE OF THE DORON TAVLIN TRUST U/A 2/4/91 TO TRUSTEE'S FIRST SET OF INTERROGATORIES

DORON A. TAVLIN as Trustee of the Doron Tavlin Trust U/A 2/4/91 ("Responding Party"), by and through his attorneys, and pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure and Rules 7026 and 7033 of the Federal Rules of Bankruptcy Procedure, and the Local Rules of this Court, hereby responds and objects to the First Set of Interrogatories (the "Requests") of trustee Irving H. Picard (the "Trustee") as follows:

## GENERAL OBJECTIONS

1.      Responding Party objects to each instruction, definition, and Request to the extent that it purports to impose any requirement or discovery obligation greater than or different from those under the Federal Rules of Civil Procedure and the applicable Rules and Orders of the Court.

2.      Responding Party objects to each instruction, definition, and Request to the extent it is vague, ambiguous, overly broad and unduly burdensome, or requests the production of documents that are not relevant to any parties' claims or defenses.

3.      Responding Party objects to the Requests to the extent they request disclosure of (i) legal theories, legal opinions, mental impressions or other information of Responding Parties' counsel, (ii) any information protected by any privilege, including, without limitation, the attorney-client privilege or the privilege afforded to settlements or settlement negotiations, or (iii) any other available and valid grounds for withholding information or documents from production, including, without limitation, the attorney work product doctrine.  Nothing contained in these responses should be interpreted as a waiver of any such privilege or doctrine.

4.      Responding Party objects to the Requests to the extent they require production of documents not within the possession, custody, or control of the Responding Party.

5.       Responding Party objects to the Requests to the extent they call for legal conclusions.

6.       Responding Party objects to the Requests to the extent they seek disclosure of proprietary and/or confidential information.

7.       Responding Party objects to each definition, instruction, and Request as overbroad and unduly burdensome to the extent it seeks documents that are readily or more accessible to the Propounding Party from its own files or documents, which the Propounding Party previously produced to the Responding Party.

8.       Responding Party reserves all objections as to the competence, relevance, materiality, admissibility, or privileged status of any information provided in response to these Requests, unless the Responding Party specifically states otherwise.

9.       Responding Party's responses to the Requests are based upon information presently available.   Responding Party has not completed discovery.   Accordingly, these responses are made without prejudice to Responding Party's right to present additional evidence based upon information subsequently obtained or evaluated.

10.       Responding Party expressly reserves the right to supplement, clarify, revise, or correct any responses and objections herein, and to assert additional objections or privileges, in one or more subsequent supplemental response(s).

11.       Responding Party's response to each of the Requests is made subject to these General Objections and limitations.   Responding Party sets them out here to avoid repeating them in response to each individual Request.   Responding Party's failure to specifically set forth an objection in response to a particular Request shall not be construed as a waiver of said objection.

12.     Responding Party objects to the Requests to the extent that they seek disclosure of information or production of documents which are outside of the "Applicable Period," or for a time period that has no relevance to the issues in the complaint and answer.

## RESPONSES AND OBJECTIONS

1.     Identify each Person who was involved in answering these discovery requests and explain each Person's role in answering these discovery requests.

**ANSWER:    Doron A. Tavlin.**

2.     Identify the reasons for each Transfer.

**ANSWER:    Responding Party is unable to do so except to the extent that withdrawals were taken to pay applicable state and federal taxes on the reported short term capital gains in the Account.**

3.     Identify the reasons for each Subsequent Transfer.

**ANSWER:    Responding Party refuses to answer this interrogatory because it is improper and it is unethical for the Trustee to be seeking information necessary to frame a complaint against subsequent transferees.**

4.     Identify each deposit into the Account.

**ANSWER:    Responding Party is unable to do so.  To the extent that the Trustee has reliable third party documents proving a deposit or withdrawal (such as Madoff's bank records), Responding Party will acknowledge that deposit or withdrawal.  However, as the Trustee has admitted, Madoff's records are permeated with fraud and, therefore, they cannot be relied upon to prove any withdrawals.  Moreover, the Trustee has admitted he has no bank records prior to December 1998.  Hence, he has no competent evidence of any activity in the account prior to December 1998.**

5.      Identify each Person with knowledge of any Transfer, the circumstances under which each Person obtained such knowledge, and the substance of that Person's knowledge.

**ANSWER:    Harvey Krauss; Annette Bongiorno; Bernard L. Madoff and possibly other Madoff employees.    To the extent this interrogatory seeks information about subsequent transferees, the interrogatory is improper and it is unethical for the Trustee to be seeking this information in order to frame a complaint.**

6.      Identify: (a) each Person or entity that ever received funds withdrawn from the Account, whether directly or indirectly; (b) the amount of money that each such Person or entity received; and (c) the date(s) on which each Person or entity received such money.

**ANSWER:    Responding Party is unable to do so.    To the extent this interrogatory seeks information about subsequent transferees, the interrogatory is improper, seeks information which is irrelevant, and it is unethical for the Trustee to be seeking information necessary to frame a complaint against subsequent transferees.    Moreover, the information the Trustee seeks is irrelevant because his claim rests solely on one withdrawal dated January 26, 2007 in the amount of $489,272.    To the best of Responding Party's knowledge, that check was sent to Harvey Krauss, Trustee, who used it, in its entirety, to pay taxes to the Internal Revenue Service.    Responding Party never received any portion of that check.**

7.      Identify all Persons who benefited from any Transfer, including, but not limited to, Persons who received or enjoyed the benefit of anything paid for with any funds that were part of any Transfer, and describe how these Persons benefited.

**ANSWER:    Withdrawals from the Account benefited the taxing authorities.    To the extent the Trustee seeks information about subsequent transferees, it is unethical for**

**him to do so and the information is irrelevant to any of the issues in the case.  Moreover,**

**the information the Trustee seeks is irrelevant because his claim rests solely on one**

**withdrawal dated January 26, 2007, in the amount of $489,272.  To the best of Responding**

**Party's knowledge, that check was sent to Harvey Krauss who used it, in its entirety, to pay**

**taxes to the Internal Revenue Service.**

8.      Identify each Initial Transfer and each Subsequent Transfer You received or from which You benefitted.

**ANSWER:    See answer to #6.**

9.      With respect to any Transfer or Subsequent Transfer included in Your responses to the preceding Interrogatories, state how much money from the Account You received or from which you benefitted, Identify when and why You received such money, and Identify the Person or entity who gave You the money.

**ANSWER:    See answer to #6.**

10.      To the extent not already provided in Your responses to the preceding Interrogatories, state how You used any money from the Transfers and/or Subsequent Transfers You received or from which You benefitted.

**ANSWER:    See answer to #6.**

11.      Identify any and all banks and/or financial institutions where You hold or have held accounts during the Applicable Period, and for each account, give the account number, the date the account was opened, and the date the account was closed.

**ANSWER:    Harvey Krauss managed the Account and handled all banking**

**transactions for the Account.  The only bank record that has any relevance to this case is**

**the check from BLMIS to Snow Becker & Krauss P.C. dated January 26, 2007 in the**

**amount of $489,272. The Trustee has this check. Responding Party was informed that Snow Becker& Krauss paid those funds over to the Internal Revenue Service.**

12.    Identify any Persons to whom You paid any management fees, performance fees, or any other fees in connection with the Account. For each Person so identified, Identify the amount of such fees paid on a monthly basis, setting forth separately the amount attributable to each type of fee.

**ANSWER:    Harvey Krauss.**

13.    Describe Your relationship to Doron Tavlin Trust U/A 2/4/1991, including how You are related to or know Doron Tavlin Trust U/A 2/4/1991, including any fiduciary, managerial, ownership and/or other relationship.

**ANSWER:    Responding Party is the Trustee, along with Harvey Krauss, of Doron Tavlin Trust U/A 2/4/1991.**

14.    Describe Your relationship to Omega Asset Management, LLC, including how You are related to or know Omega Asset Management, LLC, including any fiduciary, managerial, ownership and/or other relationship.

**ANSWER:    Omega Asset Management, LLC was 100% owned by Responding Party.**

15.    Identify any Person with whom You have had a conversation about BLMIS and/or Bernard L. Madoff, state when that conversation took place, and describe the substance of the conversation(s).

**ANSWER:    Responding Party was a personal friend of Madoff and had numerous conversations with him over the years concerning personal matters.**

16.     Identify any perceived or actual discrepancies in the Account or on the Account statements, including but not limited to perceived or actual discrepancies in the amount or number of shares in the Account.

**ANSWER:     Responding Party does not recall but the Account was handled by Harvey Krauss.**

17.     Identify any instance when You communicated to BLMIS any disagreement with respect to the accuracy of the deposits reflected on the customer statements.

**ANSWER:     Responding Party does not recall but the Account was handled by Harvey Krauss.**

18.     Identify any instance when You communicated to BLMIS any disagreement with respect to the accuracy of the withdrawals reflected on the customer statements.

**ANSWER:     Responding Party does not recall but the Account was handled by Harvey Krauss.**

19.     Identify any cash payments made by BLMIS or Madoff to Defendants or any of them.

**ANSWER:     Responding Party knows of no such cash payments.**

20.     Identify all instances where the Account statements were delivered late or were never delivered.

**ANSWER:     Responding Party does not recall; the Account was handled by Harvey Krauss.**

21.     Identify all instances in which BLMIS or Madoff made any promises or guarantees that the Account would receive a minimum or specific rate of return.

**ANSWER:     That never happened.**

22.     Identify all instances in which You told BLMIS or Madoff what the rate of return or the balance for the Account should be.

**ANSWER:     That never happened.**

23.     Identify all instances in which BLMIS or Madoff sought Your approval of or sign-off on the rate of return or balance for the Account.

**ANSWER:     That never happened.**

24.     For each denial of a material allegation and each affirmative defense in Your answer to the Complaint:

a.     state all facts upon which You base the denial or affirmative defense;

b.     state the names, addresses, and telephone numbers of all Persons who have knowledge of those facts; and

c.     Identify all Documents and other tangible things that support Your denial or affirmative defense, and state the name, address, and telephone number of the Person who has each Document.

**ANSWER:     Most of the affirmative defenses are based on legal arguments. However:**

**(a)     The defense concerning payment of capital gains taxes is based upon Responding Party's testimony as to the payment of taxes at the applicable tax rates for each year of the Account and the reported income as reflected in Madoff's statements which are in the Trustee's possession.**

**(b)     The defense concerning Madoff not being a Ponzi scheme is based upon the non-investment advisory activities of Madoff as reflected in documents in the Trustee's**

possession and upon the testimony of Bernard L. Madoff and various employees (yet to be identified) who worked in the propriety trading and market-making operations.

The defense concerning the denial of the Trustee's determination of "net equity" is based, in part, upon the Trustee's dishonest treatment of profit withdrawals and his lack of any documentary evidence pre-dating December 1998.

(c)     The defense concerning the Trustee's due process violations is based upon the Trustee's compensation structure with Baker & Hostetler, LLP which the Trustee is obligated to disclose.

(d)     The defense concerning the "value" bestowed on Madoff by Defendants is based, in part, upon expert testimony that Defendants intend to develop.

(e)     The defense concerning inter-account transfers is based upon the Trustee's improper application of his net investment method to transactions that occurred prior to 1992.

October 3, 2016

CHAITMAN LLP
By: /s/ Helen Davis Chaitman
465 Park Avenue
New York, New York 10022
Phone & Fax: 888-759-1114
hchaitman@chaitmanllp.com

*Attorneys for Defendant Doron Tavlin Trust U/A 2/4/91, Doron A. Tavlin, as Trustee of the Doron Tavlin Trust U/A 2/4/91*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | | No. 08-1789 (SMB) |
| | Plaintiff-Applicant, | SIPA LIQUIDATION |
| v. | | (Substantively |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | | Consolidated) |
| | Defendant. | |

| | | |
|---|---|---|
| In re: | | |
| BERNARD L. MADOFF, | | |
| | Debtor. | |

| | | |
|---|---|---|
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and Bernard L. Madoff, | | Adv. Pro. No. 10-05312 (SMB) |
| | Plaintiff, | |
| v. | | VERIFICATION |
| DORON TAVLIN TRUST U/A 2/4/91, DORON A. TAVLIN, as Trustee of the Doron Tavlin Trust U/A 2/4/91, and HARVEY KRAUSS, as Trustee of the Doron Tavlin Trust U/A/ 2/4/91, | | |
| | Defendants. | |

I, DORON A. TAVLIN, declare pursuant to 28 U.S.C. § 1746, that I have read the foregoing interrogatory answers and that the responses contained therein are true and correct to the best of my knowledge, information and belief. I understand that if any of these responses is found to be willfully false, I am subject to punishment.

10/3 , 2016

Doron A. Tavlin

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and accurate copy of the foregoing was served this 6th day of October, 2016 by electronic mail and the 7th day of October, 2016 by USPS first class mail upon the following:

Baker & Hostetler LLP
45 Rockefeller Plaza
New York, NY 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Email: dsheehan@bakerlaw.com
Nicholas J. Cremona
Email: ncremona@bakerlaw.com
Heather J. McDonald
Email: hmcdonald@bakerlaw.com

*Attorneys for Irving H. Picard, Trustee for the*
*Substantively Consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities*
*LLC and the Estate of Bernard L. Madoff*

**CHAITMAN LLP**
By: /s/ *Helen Davis Chaitman*
465 Park Avenue
New York, New York 10022
Phone & Fax: 888-759-1114
hchaitman@chaitmanllp.com

*Attorneys for Defendant Doron*
*Tavlin Trust U/A 2/4/91, Doron A.*
*Tavlin, as Trustee of the Doron*
*Tavlin Trust U/A 2/4/91*

**CHAITMAN LLP**
Helen Davis Chaitman
hchaitman@chaitmanllp.com
465 Park Avenue
New York, New York 10022
Phone & Fax: 888-759-1114

*Attorneys for Defendants Doron Tavlin Trust U/A 2/4/91, Doron A. Tavlin, as Trustee of the Doron Tavlin Trust U/A 2/4/91*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, <div align="right">Plaintiff-Applicant,</div> v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC, <div align="right">Defendant.</div> | Adv. Pro. No. 08-1789 (SMB)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF, <div align="right">Debtor.</div> | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and Bernard L. Madoff <div align="right">Plaintiff,</div> v.<br><br>DORON TAVLIN TRUST U/A 2/4/91, DORON A. TAVLIN, as Trustee of the Doron Tavlin Trust U/A 2/4/91, and HARVEY KRAUSS as Trustee of the Doron Tavlin Trust U/A 2/4/91 <div align="right">Defendant(s).</div> | Adv. Pro. No. 10-05312 (SMB) |

{00024131 1 }

## <u>RESPONSES AND OBJECTIONS OF DEFENDANT DORON A. TAVLIN TO TRUSTEE'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS</u>

DORON A. TAVLIN as Trustee of the Doron A. Tavlin Trust ("Responding Party"), by and through his attorneys, and pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure and Rules 7026 and 7034 of the Federal Rules of Bankruptcy Procedure, and the Local Rules of this Court, hereby responds and objects to the First Set of Requests for Production of Documents and Things (the "Requests") of trustee Irving H. Picard (the "Trustee") as follows:

## <u>GENERAL OBJECTIONS</u>

1.      Responding Party objects to each instruction, definition, and Request to the extent that it purports to impose any requirement or discovery obligation greater than or different from those under the Federal Rules of Civil Procedure and the applicable Rules and Orders of the Court.

2.      Responding Party objects to each instruction, definition, and Request to the extent it is vague, ambiguous, overly broad and unduly burdensome, or requests the production of documents that are not relevant to any parties' claims or defenses.

3.      Responding Party objects to the Requests to the extent they request disclosure of (i) legal theories, legal opinions, mental impressions or other information of Responding Parties' counsel, (ii) any information protected by any privilege, including, without limitation, the attorney-client privilege or the privilege afforded to settlements or settlement negotiations, or (iii) any other available and valid grounds for withholding information or documents from production, including, without limitation, the attorney work product doctrine. Nothing contained in these responses should be interpreted as a waiver of any such privilege or doctrine.

{00024131 1 }                                  2

4.    Responding Party objects to the Requests to the extent they require production of documents not within the possession, custody, or control of the Responding Party.

5.    Responding Party objects to the Requests to the extent they call for legal conclusions.

6.    Responding Party objects to the Requests to the extent they seek disclosure of proprietary and/or confidential information.

7.    Responding Party objects to each definition, instruction, and Request as overbroad and unduly burdensome to the extent it seeks documents that are readily or more accessible to the Propounding Party from its own files or documents, which the Propounding Party previously produced to the Responding Party.

8.    Responding Party reserves all objections as to the competence, relevance, materiality, admissibility, or privileged status of any information provided in response to these Requests, unless the Responding Party specifically states otherwise.

9.    Responding Party's responses to the Requests are based upon information presently available.    Responding Party has not completed discovery.    Accordingly, these responses are made without prejudice to Responding Party's right to present additional evidence based upon information subsequently obtained or evaluated.

10.    Responding Party expressly reserves the right to supplement, clarify, revise, or correct any responses and objections herein, and to assert additional objections or privileges, in one or more subsequent supplemental response(s).

11.    Responding Party's response to each of the Requests is made subject to these General Objections and limitations.    Responding Party sets them out here to avoid repeating them in response to each individual Request.    Responding Party's failure to specifically set forth

an objection in response to a particular Request shall not be construed as a waiver of said objection.

12.     Responding Party objects to the Requests to the extent that they seek disclosure of information or production of documents which are outside of the "Applicable Period" or for a time period that has no relevance to the issues in the complaint and answer.

### RESPONSES AND OBJECTIONS

1.     Monthly Account statements.

**Response:     The Trustee is suing to recover only one withdrawal dated January 26, 2007 in the amount of $489,272.  The check from BLMIS for that amount was paid to Snow Becker & Krauss P.C. and deposited into the firm's escrow account.  To the best of Responding Party's knowledge, Snow Becker & Krauss P.C. sent a check in that same amount to the Internal Revenue Service.  Responding Party will attempt to obtain and produce a copy of the check to the Internal Revenue Service.  No other documents relating to the Account are relevant.**

2.     All Communications between Defendants, or any of them, and BLMIS or Madoff concerning the Account, including Transfers to and from the Account.

**Response:     See response to # 1.**

3.     Bank and/or brokerage account records, for the period between and including December 11, 2006 and December 31, 2009, for any accounts that received Initial Transfers, including monthly statements, cancelled checks, and incoming/outgoing wire transfer records.

**Response:     See response to # 1.**

4.      Documents and Communications sufficient to identify any Subsequent Transfer, in whole or in part, of any Initial Transfer and/or Subsequent Transfer from the Account, including the amount, date and recipient of any Subsequent Transfer.

**Response:      The Trustee has no right to any such document and it is improper and unethical for him to ask for them in order to seek information to frame a complaint against subsequent transferees.**

5.      Documents Concerning any money You received that You understood, believed or suspected came from the Account.

**Response:      See responses to ## 1 and 4.**

6.      Documents Concerning any real or personal property You received that You understood, believed or suspected was purchased with money that came from the Account.

**Response:      The Trustee is not entitled to any such document.**

7.      Documents Concerning any services You received that You understood, believed or suspected was purchased with money that came from the Account.

**Response:      The Trustee is not entitled to any such document.**

8.      Documents sufficient to identify any money, property and/or anything else of value provided by Defendants, or any of them, to BLMIS and/or Madoff in exchange for any Initial Transfer.

**Response:      There are no such documents.**

9.      Documents sufficient to identify any money, property, services, and/or anything else of value provided by any Person or entity to Defendants, or any of them, in exchange for any Subsequent Transfer.

**Response:      See response to #4.**

10. Documents sufficient to identify any money, property, services, and/or anything else of value provided by Harvey Krauss to Defendants, or any of them, in exchange for any Initial Transfer, Subsequent Transfer, or Transfer to Harvey Krauss for the benefit of Defendants, or any of them.

**Response:      See responses to ## 1 and 4.**

11. Documents and communications concerning the formation of Omega Asset Management, LLC.

**Response:      Any such documents are irrelevant to the issues in the case and will not be produced.**

12. The articles of incorporation, memoranda of association, articles of association, by-laws, limited or general partnership agreements, limited liability company agreements, trust agreements, and/or other Documents Concerning the governance of Omega Asset Management, LLC.

**Response:      See response to #11.**

13. Documents Concerning the dissolution of Omega Asset Management, LLC.

**Response:      See response to #11.**

14. Trust instruments, including any amendments, for Doron Tavlin Trust U/A 2/4/1991.

**Response:      See response to #11.**

15. Documents related to any perceived discrepancies in the Account or on the Account statements, including but not limited to perceived discrepancies in the amount of shares in the Account.

**Response:      Harvey Krauss would have such documents.**

16.     Documents related to the receipt of cash payments by Defendants, or any of them, from BLMIS or Madoff.

**Response:       There are no such documents.**

17.     Documents related to Defendants' knowledge of the transfer of cash payments by BLMIS or Madoff to any other Person or entity.

**Response:       There are no such documents.**

18.     Communications between Defendants, or any of them, and Harvey Krauss related to the Account, BLMIS, or Madoff.

**Response:       Except for the documents referred to in answer # 1, such documents have no relevance to any of the issues in the case.**

19.     Communications between Defendants related to the Account, BLMIS or Madoff.

**Response:       See response to # 18.**

20.     Communications between Harvey Krauss and BLMIS or Madoff related to Defendants (or any of them) or the Account.

**Response:       See response to # 18.**

21.     Documents analyzing or summarizing the Account, any activity in the Account, or any Account statements.

**Response:       See response to # 18.**

22.     Documents Concerning financial and/or tax analyses of the Account.

**Response:       Such documents have no relevance to any of the issues in the case.**

23.     Documents Concerning untimely or late delivery of Account statements.

**Response:       See response to # 22.**

24.     Documents Concerning BLMIS's failure to deliver Account statements to any Defendant.

**Response:        Responding Party has no such documents.**

25.     Documents Concerning any guarantee or promise from, or representation by, BLMIS or Madoff that the Account would receive a minimum rate of return or a specific rate of return.

**Response:        There are no such documents.**

26.     Documents showing that the Account received a minimum or specific rate of return.

**Response:        There are no such documents.**

27.     Documents Concerning any control or authority Defendants, or any of them, had over the balance in the Account.

**Response:        Harvey Krauss controlled the Account and would have any responsive documents, if any exist.**

28.     Documents Concerning any approval of the balance of funds in the Account sought by BLMIS or Madoff from Defendants, or any of them.

**Response:        Responding Party knows of no such documents.**

29.     Documents Concerning the rate of return for the Account.

**Response:        Any such documents have no relevance to any of the issues in the case.**

30.     Documents Concerning any taxes paid to the Internal Revenue Service on perceived gains in the Account.

**Response:       Responding Party shall use his best efforts to obtain and produce documents proving that Snow Becker & Krauss P.C. sent a check to the Internal Revenue Service in 2007 for $489,272 – the precise sum for which the Trustee is suing.**

31.      Documents Concerning any refunds received from the Internal Revenue Service for the payment of taxes on perceived gains in the Account.

**Response:       No taxes are being claimed as an offset for the period from 2003 – 2007.  Hence, any tax refund in 2009 is irrelevant.**

32.      Documents Concerning the use of any refunds received from the Internal Revenue Service for the payment of taxes on perceived gains in the Account.

**Response:       Any such documents are irrelevant to the issues in the case and will not be produced.**

33.       Documents Concerning the transfer to any other person or entity of any refunds or portion of refunds received from the Internal Revenue Service for the payment of taxes on perceived gains in the Account.

**Response:       The Trustee has no right to any such document and it is improper and unethical for him to ask for them in order to seek information to frame a complaint against subsequent transferees.**

34.       Documents Defendants contend   support   any   denials   of fact   or affirmative defenses asserted in Defendants' answer to the Complaint.

**Response:       Any such documents shall be produced.**

35.      Documents Defendants intend to rely upon in connection with the defense of the claims asserted in the Complaint.

**Response:       Any such documents shall be produced.**

36.    Documents Defendants identified, reviewed, prepared, or consulted in responding

to discovery in this matter.

**Response:**    **There are no such documents.**

October 3, 2016

> **CHAITMAN LLP**
> By: _/s/ Helen Davis Chaitman_
> 465 Park Avenue
> New York, New York 10022
> Phone & Fax: 888-759-1114
> hchaitman@chaitmanllp.com
>
> _Attorneys for Defendant Doron Tavlin Trust_
> _U/A 2/4/91, Doron A. Tavlin, as Trustee of_
> _the Doron Tavlin Trust U/A 2/4/91_

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and accurate copy of the foregoing was served this 6th day of October, 2016 by electronic mail and the 7th day of October, 2016 by USPS first class mail upon the following:

Baker & Hostetler LLP
45 Rockefeller Plaza
New York, NY 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Email: dsheehan@bakerlaw.com
Keith Murphy
Email: kmurphy@bakerlaw.com
Nicholas J. Cremona
Email: ncremona@bakerlaw.com
Heather J. McDonald
Email: hmcdonald@bakerlaw.com

*Attorneys for Irving H. Picard, Trustee for the
Substantively Consolidated SIPA Liquidation
of Bernard L. Madoff Investment Securities
LLC and the Estate of Bernard L. Madoff*

                                        **CHAITMAN LLP**
                                        By: /s/ *Helen Davis Chaitman*
                                        465 Park Avenue
                                        New York, New York 10022
                                        Phone & Fax: 888-759-1114
                                        hchaitman@chaitmanllp.com

                                        *Attorneys for Defendant Doron
                                        Tavlin Trust U/A 2/4/91, Doron A.
                                        Tavlin, as Trustee of the Doron
                                        Tavlin Trust U/A 2/4/91*

{00024131 1 }                          11