**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------X
SECURITIES INVESTOR PROTECTION          :
CORPORATION,                            :
              Plaintiff,            :
                             :
     – against –                     :
                             :    Adv. Pro. No. 08-01789 (SMB)
BERNARD L. MADOFF INVESTMENT            :    SIPA LIQUIDATION
SECURITIES LLC,                         :    (Substantively Consolidated)
              Defendant.           :
------------------------------------------------------------X
In re:                                  :
                             :
BERNARD L. MADOFF,                      :
                             :
              Debtor.              :
------------------------------------------------------------X
IRVING H. PICARD, Trustee for the Liquidation   :
of Bernard L. Madoff Investment Securities LLC, :
                             :
           Plaintiff,               :
                             :    Adv. Proc. No. 10-05421 (SMB)
     – against –                     :
                             :
FRANK J. AVELLINO, et al.               :
                             :
            Defendants.              :
------------------------------------------------------------X

### MEMORANDUM DECISION AND ORDER DENYING MOTION TO REARGUE

**A P P E A R A N C E S :**

BAKER & HOSTETLER LLP
45 Rockefeller Plaza
New York, NY 10111

     David J. Sheehan, Esq.
     Jimmy Fokas, Esq.
     Kathryn M. Zunno, Esq.
     Regina L. Griffin, Esq.
        Of Counsel

*Attorneys for Irving H. Picard, Trustee for*
*the Liquidation of Bernard L. Madoff*
*Investment Securities LLC and representative*
*of the Estate of Bernard L. Madoff*

SECURITIES INVESTOR PROTECTION
CORPORATION
1667 K. Street, N.W., Suite 1000
Washington, DC 20006

     Josephine Wang, Esq.
     Kevin H. Bell, Esq.
     Christopher H. Larosa, Esq.
         Of Counsel

*Attorneys for the Securities Investor*
*Protection Corporation*

HAILE, SHAW & PFAFFENBERGER LLP
660 U.S. Highway One, 3rd Fl.
North Palm Beach, FL 33408

     Gary A. Woodfield, Esq.
         Of Counsel

*Attorneys for Defendants*

**STUART M. BERNSTEIN**
**United States Bankruptcy Judge:**

     Irving H. Picard ("Mr. Picard" or the "SIPA Trustee") commenced this adversary

proceeding as trustee for the liquidation of Bernard L. Madoff Investment Securities LLC

("BLMIS") under the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa, *et seq.* ("SIPA"),

and as representative of the substantively consolidated estate of Bernard L. Madoff ("Mr.

Madoff") to avoid and recover transfers made to the defendants.  In *Picard v. Avellino* (*In re*

*BLMIS*), Adv. P. No. 10-05421 (SMB), 2016 WL 4040799 ("*Avellino*") (Bankr. S.D.N.Y. July

21, 2016), the Court denied most of the defendants' motion to dismiss but granted the branch of

the motion seeking dismissal of claims to avoid and recover fraudulent conveyances made by

Mr. Madoff personally prior to 2001.[1]  *Id.* at \*11-13.  The SIPA Trustee now seeks to re-argue

the dismissal of the pre-2001 claims,[2] the Securities Investor Protection Corporation ("SIPC")

supports the Motion[3] and the defendants oppose it.[4]  For the reasons that follow, the Motion is

denied.

## BACKGROUND

### A.    Introduction

I assume familiarity with the *Avellino* decision, and highlight only those facts relevant to

the Motion.  Prior to 2001, Mr. Madoff operated his broker-dealer business as a sole

proprietorship.  Effective January 1, 2001, Mr. Madoff organized a limited liability company (*i.e.*

BLMIS) to conduct that business.  He transferred his business assets and liabilities to BLMIS,

and became its sole member.

Ordinarily, a successor to a broker or dealer can rely on the predecessor's SEC

registration for a limited period but must eventually file an application for registration on Form

BD.  *See* 17 C.F.R. § 240.15b1-3(a).   If, however, the successor continues the predecessor's

---

[1]    The Court entered a corresponding order on August 5, 2016.  (*See* ECF Doc. # 117).

[2]    *See Trustee's Memorandum of Law In Support of His Motion to Reargue the Court's Order Granting In Part and Denying In Part Motion to Dismiss*, dated Aug. 19, 2016 ("Motion") (ECF Doc. # 125); *see also Trustee's Reply In Further Support of Motion to Reargue the Court's Order Granting In Part and Denying In Part Motion to Dismiss*, dated Oct. 3, 2016 ("Reply") (ECF Doc. # 134).

[3]    *See Memorandum of Law of the Securities Investor Protection Corporation In Support of the Trustee's Motion to Reargue the Court's Order Granting In Part and Denying In Part Motion to Dismiss*, dated Aug. 19, 2016 ("SIPC Brief") (ECF Doc. # 123); *see also Reply Memorandum of Law of the Securities Investor Protection Corporation In Support of the Trustee's Motion to Reargue the Court's Order Granting In Part and Denying In Part Motion to Dismiss*, dated Oct. 3, 2016 ("SIPC Reply") (ECF Doc. # 131).

[4]    *See Defendants' Memorandum of Law In Opposition to the Trustee's Motion to Reargue the Court's Order Granting In Part and Denying In Part Motion to Dismiss*, dated Sept. 19, 2016 ("Defendants Brief") (ECF Doc. # 129).

business and the sole change is the form of the business, the successor may amend the

predecessor's registration on Form BD to reflect the changes, and the amendment "shall be

deemed an application for registration filed by the predecessor and adopted by the successor."

*Id.* § 240.15b1-3(b).  Following the latter route, BLMIS filed an amended Form BD on January

12, 2001, (*Declaration of Kevin H. Bell,* dated June 6, 2014 Ex. B (ECF Case No. 08–01789

Doc. # 6928)), and thereafter operated using Mr. Madoff's SEC registration, including his

registration number.

BLMIS continued to operate until December 11, 2008 (the "Filing Date") when Mr.

Madoff was arrested by federal agents for criminal violations of federal securities law.  He later

admitted to operating a Ponzi scheme through the investment advisory side of BLMIS.  Upon an

application by SIPC, the District Court entered an order on December 15, 2008, that appointed

Mr. Picard as the SIPA Trustee to liquidate BLMIS and removed the liquidation to this Court

("Protective Order").[5]  The Protective Order identified the Defendant as "Bernard L. Madoff

Investment Securities LLC," and did not mention Mr. Madoff or his sole proprietorship.

Creditors of Mr. Madoff subsequently filed an involuntary bankruptcy petition against

him on April 13, 2009.[6]  The Court directed the appointment of an interim trustee pursuant to 11

U.S.C. § 303(g),[7] the U.S. Trustee appointed Alan Nisselson ("Mr. Nisselson" or the "Chapter 7

---

[5]        A copy of the Protective Order is docketed at ECF Doc. # 1 in adversary proceeding no. 08-01789.

[6]        ECF Case No. 09-11893 Doc. # 1.

[7]        ECF Case No. 09-11893 Doc. # 10.

Trustee"),[8] the Court entered an order for relief under chapter 7 of the Bankruptcy Code on May

7, 2009,[9] and Mr. Nisselson continued to serve as trustee.

The SIPA Trustee then moved to substantively consolidate the SIPA estate with the estate

of Mr. Madoff.[10]  On July 9, 2009, the Court entered an order agreed to among Mr. Picard, Mr.

Nisselson and SIPC that substantively consolidated the two estates (the "Consolidation

Order").[11]  The substantive consolidation was not complete; under paragraph 4, Mr. Nisselson

retained his authority to bring avoidance actions on behalf of Mr. Madoff's estate subject to

consultation with the SIPA Trustee:

> Notwithstanding the substantive consolidation of the Madoff estate into
> the BLMIS SIPA Proceeding, the Chapter 7 Trustee [Mr. Nisselson] shall remain
> Chapter 7 trustee of the Madoff estate and shall continue to have all powers,
> rights, claims and interests of a Chapter 7 trustee to bring claims under Chapters 5
> and 7 of the Bankruptcy Code in consultation with the SIPA Trustee and SIPC.
> Further, all powers, rights, claims and interests of the Madoff estate are expressly
> preserved, including without limitation all Chapter 5 and Chapter 7 powers,
> rights, claims and/or interests.

(Consolidation Order ¶ 4.)

The Consolidation Order conferred certain rights upon Mr. Picard with respect to the

Madoff estate that were limited, however, by paragraph 4:

> The SIPA Trustee shall continue to have the duties and powers of the
> SIPA Trustee and, in addition, he shall have all duties and powers of a Chapter 7
> trustee for the Madoff estate *other than those set forth in paragraph 4 hereof*.

---

[8]     ECF Case No. 09-11893 Doc. # 13.

[9]     ECF Case No. 09-11893 Doc. # 21.

[10]    ECF Case No. 09-11893 Doc. ## 17, 18, 19.

[11]    ECF Case No. 09-11893 Doc. # 28.

(Consolidation Order ¶ 6 (emphasis added).)

Finally, paragraph 7 acknowledged the powers of Mr. Picard as SIPA Trustee:

All powers, rights, claims and interests of the SIPA Trustee and the BLMIS estate are expressly preserved, including without limitation all Chapter 5 and Chapter 7 powers, rights, claims and/or interests, and the SIPA Trustee is authorized to pursue claims on behalf of the consolidated estate as the representative of and fiduciary for the BLMIS SIPA Proceeding and as subrogee and assignee of creditors' claims for, among other things, the avoidance and recovery of transferred property.

(Consolidation Order ¶ 7.)

## B.    This Adversary Proceeding

The SIPA Trustee commenced this adversary proceeding against Frank Avellino and numerous other defendants on December 10, 2010, seeking, *inter alia*, to avoid and recover pre-Filing Date fraudulent transfers, and filed an amended complaint on November 24, 2014 (the "Amended Complaint").  (ECF Doc. # 86.)  The defendants moved to dismiss the Amended Complaint arguing, among other things, that the SIPA Trustee could not avoid and recover pre-2001 transfers made by Mr. Madoff while he was operating his business as a sole proprietorship. After further briefing on this precise point, the Court agreed and dismissed the pre-2001 claims. It concluded that (i) the debtor in the SIPA liquidation was BLMIS and not Mr. Madoff individually, (ii) the SIPA Trustee, as trustee of BLMIS, could recover transfers of customer property under SIPA but the Chapter 7 Trustee could not, and (iii) the Consolidation Order did not empower the Chapter 7 Trustee to exercise the powers of the SIPA Trustee.  *Avellino*, 2016 WL 4040799, at *11-12.

The Motion challenges the Court's conclusions and asserts that they result in manifest injustice.  The Motion boils down to three arguments.  First, the Court "overlooked" that the

6

Protective Order also covered Mr. Madoff personally because BLMIS and Mr. Madoff used the same SEC registration number.  (Motion at 7.)  Second, and in the alternative, the Court "overlooked" that the Consolidation Order retroactively modified the District Court's Protective Order, and "conjoined Madoff as a SIPA debtor in this SIPA liquidation proceeding, and retroactively gave the SIPA Trustee the authority to recover customer property fraudulently conveyed by *both* BLMIS and Madoff," including the pre-2001 transfers.  (Motion at 9 (emphasis in original; footnote omitted).)  Third, reargument will prevent "manifest injustice" by avoiding the disparate treatment of the customers of the two estates (pre-January 1, 2001 transferees can keep the transfers, but post-January 1, 2001 transferees cannot) and by increasing the amount available to pay net equity claims.  (Motion at 15-16.)

## DISCUSSION

Rule 9023-1 of the Local Rules of the Bankruptcy Court for the Southern District of New York ("Local Bankruptcy Rule 9023-1") governs the Motion and provides that a reargument "motion shall set forth concisely the matters or controlling decisions which counsel believes the Court has not considered."  The standards governing a motion to alter or amend a judgment pursuant to Rule 59(e) of the Federal Rules of Civil Procedure apply to a motion for reargument under Local Bankruptcy Rule 9023-1.  *3939 WPR Funding LLC v. Campbell* (*In re Campbell*), 539 B.R. 66, 75 (S.D.N.Y. 2015) (citation omitted); *Family Golf Ctrs., Inc. v. Acushnet Co.* (*In re Randall's Island Family Golf Ctrs., Inc.*), 290 B.R. 55, 61 n. 4 (Bankr. S.D.N.Y. 2003).  The movant must show that the court overlooked controlling decisions or factual matters that might materially have influenced its earlier decision.  Alternatively, the movant must demonstrate the need to correct a clear error or prevent manifest injustice.  *Perez v. Progenic Pharm., Inc.*, 46 F. Supp. 3d 310, 314 (S.D.N.Y. 2014); *accord In re Asia Global Crossing, Ltd.*, 332 B.R. 520, 524

(Bankr. S.D.N.Y. 2005). "These criteria are strictly construed against the moving party so as to

avoid repetitive arguments on issues that have been considered fully by the court," *Griffin Indus.,*

*Inc. v. Petrojam, Ltd.*, 72 F. Supp. 2d 365, 368 (S.D.N.Y. 1999); *accord Liberty Media Corp. v.*

*Vivendi Universal, S.A.*, 861 F. Supp. 2d 262, 265 (S.D.N.Y. 2012), and a motion for reargument

is not an opportunity to present the case under new theories, secure a rehearing on the merits, or

otherwise take a "second bite at the apple." *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d

Cir. 1998); *see also Vivendi Universal*, 861 F. Supp. 2d at 265 ("A motion for reconsideration is

not an opportunity for making new arguments that could have been previously advanced, nor is it

a substitute for appeal.") (citations and quotation marks omitted).

## A.    Identity of the SIPA Debtor

The argument that the Protective Order covered Mr. Madoff as well as BLMIS was

considered and rejected in *Avellino*.  Following oral argument of the motion to dismiss, the Court

asked for letter briefs directed to the question of whether the SIPA Trustee could recover the pre-

2001 transfers.  In a letter dated August 12, 2015 from Jimmy Fokas to the Court (the "*Fokas*

*Letter*") (ECF Doc. # 102), the SIPA Trustee made the identical arguments he makes here, to wit,

that the definition of "debtor" under SIPA and BLMIS' use of Mr. Madoff's SEC registration

number supported the conclusion that the Protective Order also covered Mr. Madoff.  (*Fokas*

*Letter* at 2-4.)

The Court rejected the argument.  It considered the definition of "debtor" under SIPA,

parsed the language of the Protective Order and concluded that it covered BLMIS but did not

cover Mr. Madoff.  *Avellino*, 2016 WL 4040799, at *11.  While Mr. Madoff and BLMIS were

both SIPC members and used the same SEC registration number, "[t]he 'debtor' in a SIPA

8

liquidation proceeding is 'a member of SIPC with respect to whom an application for a protective decree has been filed under section 78eee(a)(3) of this title.'" *Avellino*, 2016 WL 4040799, at *11 (quoting SIPA § 78*lll*(5)). The SIPA proceeding was brought against BLMIS, not Mr. Madoff, and BLMIS, not Mr. Madoff, was the "debtor" as defined in SIPA. *Id.* The SIPA Trustee's underlying argument, that a SIPA protective order covers separate legal entities that used the same SEC registration number, lacks support.

In addition, the positions taken by the SIPA Trustee and SIPC are at odds with the positions they successfully took in their joint motion to consolidate the BLMIS and Madoff estates. (*Memorandum of Law In Support of Joint Motion for Entry of Order Substantively Consolidating the Estate of Bernard L. Madoff into the SIPA Proceeding of Bernard L. Madoff Investment Securities LLC*, dated May 5, 2009 (ECF Case No. 09-11893 Doc. # 18).) They never argued that Mr. Madoff's estate was already covered by the Protective Order, that the two estates had already been consolidated by the Protective Order or that Mr. Picard was already serving as the Madoff trustee (notwithstanding Mr. Nisselson's prior appointment). Any of those arguments would have rendered the Consolidation Order unnecessary. Instead, they argued that the two parallel proceedings were wasteful and unnecessarily costly, and that the two estates should be substantively consolidated because it was impossible to unravel and separate Mr. Madoff from BLMIS.

### B.    Effect of the Consolidation Order

The Court also considered and rejected the same arguments that the SIPA Trustee now makes regarding the effect of the Consolidation Order. The *Fokas Letter* argued that the Consolidation Order merged the two estates and authorized the SIPA Trustee "to recover

transfers made by BLMIS as a sole proprietorship." (*Fokas Letter* at 4.)  It relied on paragraph

7, quoted *supra*, which purportedly authorized the SIPA Trustee to assert SIPA avoiding powers

against the pre-2001 transfers made by Mr. Madoff.  (*Id.* at 5.)  The Court concluded that

notwithstanding paragraphs 6 and 7, paragraph 4, also quoted *supra*, reserved to Mr. Madoff's

trustee the more limited powers exercisable by a chapter 7 trustee.  *Avellino*, 2016 WL

40400799, at *12.

       The Trustee's selective reading of the Consolidation Order, which he repeats in the

Motion, leads to absurd results and renders other provisions superfluous. According to the SIPA

Trustee, paragraph 7 granted him the Madoff trustee's power to pursue avoidance claims, but

paragraph 4 expressly reserved to Mr. Madoff's trustee "all powers, rights, claims and interests

of a Chapter 7 trustee to bring claims under Chapters 5 and 7 of the Bankruptcy Code in

consultation with the SIPA Trustee and SIPC."  The SIPA Trustee's interpretation of the

Consolidation Order would require him to consult with himself before bringing any avoidance

claims that belonged to Mr. Madoff's estate.  Furthermore, he ignores the limitation in paragraph

6, quoted *supra*, that granted the SIPA Trustee the additional "duties and powers of a Chapter 7

trustee for the Madoff estate," except as set forth in paragraph 4.[12]  To give effect to all of the

provisions of the Consolidation Order, I read paragraph 7 simply to authorize the SIPA Trustee

to pursue his SIPA claims and his claims as subrogee and assignee of creditors on behalf of the

---

[12]     The SIPA Trustee's principal authority, *Alexander v. Compton* (*In re Bonham*), 229 F.3d 750 (9th Cir. 2000) is distinguishable for this reason.  There, the court permitted the individual debtor's chapter 7 trustee to substantively consolidate the debtor's estate with two closely-held non-debtor corporations that the debtor used to perpetrate a Ponzi scheme.  The purpose of the substantive consolidation order was to allow the trustee to avoid and recover transfers by the corporations for the benefit of creditors of the debtor and the corporations.  *Id.* at 768.  The Court of Appeals recognized that a bankruptcy court may order less than complete substantive consolidation including the preservation of avoidance claims by formerly separate estates.  *Id.* at 769.  This is precisely what paragraph 4 of the Consolidation Order did.

consolidated estates, with any recovery inuring to the benefit of the customer creditors of both estates.

The Motion does provide information that corrects an error in *Avellino*, but the corrected information adds further support to the Court's earlier conclusion. The Amended Complaint implied that Mr. Picard was also the trustee of Mr. Madoff's estate. He alleged that he was bringing the claims "as trustee for the liquidation of the business of Bernard L. Madoff Investment Securities, LLC ('BLMIS'), under the Securities Investor Protection Act ('SIPA'), 15 U.S.C. §§ 78aaa, *et seq*., and the substantively consolidated estate of Bernard L. Madoff." (Amended Complaint at 1.) The Court assumed that Mr. Picard had replaced Mr. Nisselson as trustee of the Madoff estate, *Avellino*, 2016 WL 4040799, at *12 n. 16, and was exercising the authority granted to Mr. Madoff's trustee under paragraph 4 of the Consolidation Order. Mr. Picard now states that Mr. Nisselson is still the trustee of Mr. Madoff's estate. (Motion at 14.) Consequently, Mr. Picard has no authority to assert any chapter 5 avoidance claims belonging to Mr. Madoff's estate; those claims can only be asserted by Mr. Nisselson.[13]

Finally, even if Mr. Picard acquired the right to prosecute Mr. Nisselson's chapter 5 avoidance claims under the Consolidation Order, as the Court believed, his authority was limited to Mr. Nisselson's powers as Mr. Madoff's trustee. Mr. Nisselson lacked the power to avoid transfers of customer property that never belonged to Mr. Madoff, *see Avellino*, 2016 WL 4040799, at *12, and Mr. Picard could only pursue the claims that Mr. Nisselson could have pursued.

---

[13]    The introduction to this decision described Mr. Picard as the representative of Mr. Madoff's estate. That description was purely for convenience and did not connote his authority.

The SIPA Trustee now contends that Mr. Madoff's trustee could also have avoided transfers of customer property by Mr. Madoff under Bankruptcy Code § 749,[14] and if necessary, the Court should grant him leave to amend to add Mr. Nisselson as a plaintiff.  (Reply at 6-7.) Although the *Fokas Letter* alluded to adding the Chapter 7 Trustee as a plaintiff in a footnote, (*see Fokas Letter* at 6 n. 6), it did not mention Bankruptcy Code § 749, and furthermore, arguments made in footnotes are not "adequately raised."  *United States v. Restrepo*, 986 F.2d 1462, 1463 (2d Cir.), *cert. denied*, 510 U.S. 843 (1993); *accord Ashmore v. CGI Grp. Inc.*, 138 F. Supp. 3d 329, 333 n. 1 (S.D.N.Y. 2015).  Similarly, the Motion never mentioned Bankruptcy Code § 749 or leave to amend; these arguments were raised for the first time in the Reply. "Arguments may not be made for the first time in a reply brief," Knipe *v. Skinner*, 999 F.2d 708, 711 (2d Cir. 1993); *accord Riverkeeper, Inc. v. Collins*, 359 F.3d 156, 166 n. 11 (2d Cir. 2004), and the Court declines to consider them.

In short, the Court did not overlook any of the arguments made in the current Motion relating to the scope of the Protective Order or the Consolidation Order.[15]

---

[14]    11 U.S.C. § 749(a) provides that

> [A]ny transfer of property that, but for such transfer, would have been customer property, may be avoided by the trustee, and such property shall be treated as customer property, if and to the extent that the trustee avoids such transfer under section 544 . . . [or] 548.  For the purpose of such sections, the property so transferred shall be deemed to have been property of the debtor and, if such transfer was made to a customer or for a customer's benefit such customer shall be deemed, for purposes of this section, to have been a creditor.

[15]    I note in this regard that the *Fokas Letter* never contended that the Consolidation Order "effectively modified," the Protective Order to sweep in Mr. Madoff's estate, an argument advanced in the Motion.  (Motion at 11.)  I could not have overlooked an argument that was never made.  Furthermore, even if this Court could have modified the Protective Order, *see* SIPA § 78eee(b)(4), the Consolidation Order only referred to the Protective Order in the historical introduction, and did not state or imply that it was converting Madoff's chapter 7 estate to a SIPA liquidation.  In fact, it expressly provided that Mr. Nisselson would retain his ordinary bankruptcy trustee avoiding powers.

12

C.    **Manifest Injustice**

The SIPA Trustee's last point argues that I must grant the Motion to prevent manifest injustice, *viz.*, to avoid disparate treatment and increase the amount available for distribution to the creditors of the customer property estate.  (Motion at 15; *accord* SIPC Brief at 6-7.)  The defendants maintain that the SIPA Trustee did not raise this argument in the *Fokas Letter*, and hence, cannot raise it on reargument.  Although they are correct, manifest injustice should be avoided at all costs, and I will consider the argument.

The "manifest injustice" standard is a catch-all basis for relief that is often coupled with another ground for reconsideration.  12 JAMES WM. MOORE, ET AL., MOORE'S FEDERAL PRACTICE ¶ 59.30[5][a][v] (3d ed. 2016).  This Court has previously explained that "a finding of manifest injustice in a civil matter requires the presence of either some unfair advantage taken by an opposing party or clear inequity warranting relief."  *Enron Corp. v. J.P. Morgan Sec. Inc.* (*In re Enron Corp.*), 356 B.R. 343, 363 (Bankr. S.D.N.Y. 2006).  Here, the SIPA Trustee has failed to support his request for reargument on any of the recognized grounds.  The Court did not overlook any argument, the SIPA Trustee has not identified any clear factual or legal error or pointed to an intervening change in law.  Nor has he argued that the defendants took unfair advantage in this litigation.

Instead, he appears to assert that the Court's dismissal of the pre-2001 claims resulted in a clear inequity.  However, the disparate treatment involving pre-January 1, 2001 and post-January 1, 2001 transferees  arises from the statutory differences between the power of a SIPA trustee and an ordinary bankruptcy trustee, and the fact that the consolidated estates involve two legally distinct transferors and two trustees but only one SIPA debtor.  Moreover, the

Consolidation Order ensures manifest justice; net losers who invested either with Mr. Madoff or

BLMIS will share equally in the consolidated estates.  The SIPA Trustee's remaining argument,

that the amount available for distribution to net losers will be reduced, is a function of the

unambiguous language in SIPA, the Bankruptcy Code and the Consolidation Order.  While one

purpose of SIPA is to protect investors from a broker's insolvency, *In re BLMIS*, 654 F.3d 229,

239 (2d Cir. 2011), *cert. denied*, 132 S. Ct. 2712 (2012), this does not give license to ignore the

plain meaning of statutes and orders and interpret them in a manner to reach a result that is

perceived to be equitable.

        Accordingly, the Motion is denied.

        So ordered.

Dated: New York, New York
        October 18, 2016


                                        /s/ *Stuart M. Bernstein*
                                        STUART M. BERNSTEIN
                                        United States Bankruptcy Judge


14