**Baker & Hostetler LLP**

45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Nicholas J. Cremona
Jorian L. Rose
Amy E. Vanderwal
Stephanie A. Ackerman

Hearing Date:  November 30, 2016
Hearing Time:  10:00 AM (EST)
Objection Deadline:  November 9, 2016

*Attorneys for Irving H. Picard, Trustee for the*
*Substantively Consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities LLC*
*and the Estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (SMB) |
| Plaintiff-Applicant, | SIPA Liquidation |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |

**TRUSTEE'S MOTION AND MEMORANDUM OF LAW TO AFFIRM HIS
DETERMINATIONS DENYING CLAIMS OF CLAIMANTS HOLDING INTERESTS IN
M & H INVESTMENT GROUP L.P., PJFN INVESTORS LIMITED PARTNERSHIP,
KENN JORDAN ASSOCIATES, AND HARMONY PARTNERS, LTD.**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................................ 1

BACKGROUND ............................................................................................................... 2

    A.    THE COMMENCEMENT OF THE SIPA PROCEEDING ................................ 2

    B.    THE LIMITED PARTNERSHIPS' STRUCTURE, BLMIS ACCOUNTS,
        AND CLAIMS ................................................................................................. 3

        1.    M & H Investment Group, L.P. ................................................... 4

        2.    PJFN Investors Limited Partnership ........................................... 5

        3.    Kenn Jordan Associates ............................................................. 7

        4.    Harmony Partners, LTD............................................................. 9

    C.    THE BLMIS ACCOUNT RECORDS.............................................................. 11

    D.    THE CLAIMS .................................................................................................. 11

    E.    THE CUSTOMER DECISIONS ..................................................................... 12

        1.    The Initial Feeder Fund Motion................................................ 12

        2.    The ERISA Motion ................................................................... 14

        3.    Other Customer Motions............................................................ 14

ARGUMENT .................................................................................................................... 17

CONCLUSION.................................................................................................................. 23

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*In re Adler, Coleman Clearing Corp.,*
    216 B.R. 719 (Bankr. S.D.N.Y. 1998) .....................................................................18

*Aozora Bank Ltd. v. Sec. Inv'r Prot. Corp. (In re Bernard L. Madoff Inv. Sec. LLC),*
    480 B.R. 117 (S.D.N.Y. 2012) ....................................................................... 12, 13

*Appleton v. First Nat'l Bank of Ohio,*
    62 F.3d 791 (6th Cir. 1995) ......................................................................................18

*In re Beacon Assocs. Litig.,*
    745 F. Supp. 2d 386 (S.D.N.Y. 2010) ......................................................................2

*In re Bernard L. Madoff Inv. Sec. LLC,*
    654 F.3d 229 (2d Cir. 2011) ...............................................................2, 13, 18, 19

*In re Klein, Maus & Shire, Inc.,*
    301 B.R. 408 (Bankr. S.D.N.Y. 2003) ....................................................................23

*Kruse v. Sec. Inv'r Prot. Corp. (In re Bernard L. Madoff Inv. Sec. LLC),*
    708 F.3d 422 (2d Cir. 2013) ............................................................................ *passim*

*In re Lehman Bros. Inc.,*
    462 B.R. 53 (Bankr. S.D.N.Y. 2011) ......................................................................17

*In re Lehman Bros., Inc.,*
    791 F.3d 277 (2d Cir. 2015) ....................................................................................18

*Mishkin v. Siclari (In re Adler, Coleman Clearing Corp.),*
    277 B.R. 520 (Bankr. S.D.N.Y. 2002) ................................................................3, 23

*Sec. Inv'r Prot. Corp. v. 2427 Parent Corp. (In re Bernard L. Madoff Inv. Sec. LLC),*
    779 F.3d 74 (2d Cir. 2015) ......................................................................................21

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff Inv. Sec. LLC),*
    454 B.R. 285 (Bankr. S.D.N.Y. 2011) ...............................................................12, 23

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff Inv. Sec. LLC),*
    515 B.R. 161 (Bankr. S.D.N.Y. 2014) .........................................................15, 20, 23

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Sec. Inv'r Prot. Corp. v. Jacqueline Green Rollover Account,*
Nos. 12 Civ. 1039 (DLC), 12 Civ. 1139 (DLC), 2012 WL 3042986 (S.D.N.Y.
July 25, 2012)..................................................................................................14

*Sec. Inv'r Prot. Corp. v. Morgan, Kennedy & Co.,*
533 F.2d 1314 (2d Cir. 1976).............................................................13, 18, 19, 22

*SEC v. Madoff,*
No. 1:08-cv-10791-LLS, 2008 WL 5197070 (S.D.N.Y. filed Dec. 11, 2008) ........................2

*Stafford v. Giddens (In re New Times Sec. Servs., Inc.),*
463 F.3d 125 (2d Cir. 2006)..............................................................13, 18, 23

**Statutes**

15 U.S.C. § 78aaa *et seq.* ........................................................................1

15 U.S.C. § 78eee(a)(4) ..........................................................................2

15 U.S.C. § 78eee(b)(3) ..........................................................................2

15 U.S.C. § 78eee(b)(4) ..........................................................................2

15 U.S.C. § 78fff-1(a) ............................................................................2

15 U.S.C. § 78fff-2(b) ...........................................................................18

15 U.S.C. § 78fff-3(a) ............................................................................3

15 U.S.C. § 78*lll*(2)...............................................................2, 3, 14, 17

15 U.S.C. § 78*lll*(4) ..............................................................................3

15 U.S.C. § 78*lll*(11) .........................................................................3, 21

Del. Code Ann. tit. 6, § 17-701 ................................................................20

Dodd-Frank Wall Street Reform and Consumer Protection Act. Pub. L. No. 111-
203, § 983(b), 124 Stat. 1931 (2010) ..........................................................17

Fla. Stat. Ann. § 620.8501 ......................................................................20

Fla. Stat. Ann. § 605.0110(2) ...................................................................20

Fla. Stat. Ann. § 605.0110(4) ...................................................................20

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

**Rules**

Fed. R. Civ. P. 36(a)(3) ......................................................................................................... *passim*

**Other Authorities**

1–12 *Collier on Bankruptcy* ¶ 12.12 (16th ed. 2012) ..................................................................13

Irving H. Picard, as trustee ("Trustee") for the substantively consolidated liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15 U.S.C. § 78aaa *et seq.* ("SIPA"),[1] and the chapter 7 estate of Bernard L. Madoff ("Madoff"), respectfully submits this combined motion and memorandum of law (the "Motion") to affirm the denial of nine claims filed by claimants (the "Objecting Claimants") who objected to the Trustee's determinations and who held interests in one of the following BLMIS account holders: M & H Investment Group L.P. ("M & H"), PJFN Investors Limited Partnership ("PJFN"), Kenn Jordan Associates, and Harmony Partners, LTD. (collectively, the "Limited Partnerships").   The Objecting Claimants are specifically identified in Exhibit 2 to the Declaration of Vineet Sehgal ("Sehgal Declaration") filed herewith.  This Motion is based upon the law set forth below as well as the facts set forth in the accompanying Sehgal Declaration and the Declaration of Stephanie Ackerman ("Ackerman Declaration").

## PRELIMINARY STATEMENT

The Objecting Claimants seek customer status in this SIPA proceeding, despite the fact that they did not have accounts in their names and had no direct financial relationship with BLMIS.   Instead, they invested in the Limited Partnerships, each of which had a BLMIS account, invested the partnership's assets with BLMIS, and filed its own claim with the Trustee.[2] The case is governed by the Second Circuit decision *Kruse v. Sec. Inv'r Prot. Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*, 708 F.3d 422 (2d Cir. 2013) and the many related decisions in this SIPA proceeding, referenced in Section E *infra*, involving the question of who is a

---

[1] For convenience, subsequent references to sections of the Securities Investor Protection Act shall be denoted simply as "SIPA § __."

[2] The Limited Partnerships have been grouped together in this Motion because the Trustee believes that they represent the remaining Delaware and Florida Limited Partnership BLMIS account holders for which a number of limited partners also claim "customer" status.

"customer" under SIPA. The current Motion seeks to apply these decisions to the Objecting
Claimants through entry of an order affirming the Trustee's denial of their claims as listed in
Exhibit 2 to the Declaration of Vineet Sehgal, disallowing their claims, and overruling the related
claims objections on the grounds that Claimants are not "customers" as such term is used at
SIPA § 78*lll*(2).[3]

## BACKGROUND

### A.    THE COMMENCEMENT OF THE SIPA PROCEEDING

The basic facts of the BLMIS fraud are widely known and have been recounted in
numerous decisions. *See, e.g.*, *In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d 229, 231-34 (2d
Cir. 2011); *In re Beacon Assocs. Litig.*, 745 F. Supp. 2d 386, 393–94 (S.D.N.Y. 2010). On
December 11, 2008, the Securities and Exchange Commission ("SEC") filed a complaint in the
District Court against Madoff and BLMIS, captioned *SEC v. Madoff*, No. 1:08-cv-10791-LLS,
2008 WL 5197070 (S.D.N.Y. filed Dec. 11, 2008), alleging fraud through the investment advisor
activities of BLMIS. The SEC consented to the consolidation of its case with an application of
the Securities Investor Protection Corporation ("SIPC"). Thereafter, SIPC filed an application
under SIPA § 78eee(a)(4) alleging that because of its insolvency, BLMIS customers needed
SIPA protection. The District Court appointed the Trustee under SIPA § 78eee(b)(3) and
removed the proceeding to this Court under SIPA § 78eee(b)(4).

Under SIPA, the Trustee is responsible, among other things, for recovering and
distributing customer property to a broker's customers, assessing claims, and liquidating other
assets of the firm for the benefit of the estate and its creditors. A SIPA trustee has the general
powers of a bankruptcy trustee, in addition to the powers granted by SIPA. SIPA § 78fff-1(a).

---

[3] The Trustee reserves all other bases to affirm his denial of the claims that are the subject of the Motion.

The statutory framework for the satisfaction of customer claims in a SIPA liquidation proceeding provides that "customers," as defined in SIPA § 78*lll*(2), share pro rata in "customer property," defined in SIPA § 78*lll*(4), to the extent of their "net equity," defined in SIPA § 78*lll*(11).  For each customer with a valid net equity claim, if the customer's share of customer property does not make him or her whole, SIPC advances funds to the SIPA trustee up to the amount of the customer's net equity, not to exceed $500,000 (the amount applicable to this case).  SIPA § 78fff-3(a).  It is the customer's burden to demonstrate he or she is entitled to customer status.  *Mishkin v. Siclari (In re Adler, Coleman Clearing Corp.)*, 277 B.R. 520, 557 (Bankr. S.D.N.Y. 2002) ("[I]t is well-established in the Second Circuit that a claimant bears the burden of proving that he or she is a 'customer' under SIPA.").

On December 23, 2008, this Court entered a Claims Procedures Order.  *See* ECF No. 12. Pursuant to that order, the Trustee determines claims eligible for customer protection under SIPA, claimants may object to the Trustee's determination of a claim by filing an objection in this Court, after which the Trustee requests a hearing date for the objection and notifies the objecting claimant thereof.  *Id.*

**B.     THE LIMITED PARTNERSHIPS' STRUCTURE, BLMIS ACCOUNTS, AND CLAIMS**

The Objecting Claimants invested in one or more of the Limited Partnerships.  Two (2) claims were filed by Objecting Claimants relating to M & H; three (3) claims were filed by Objecting Claimants relating to PJFN; one (1) claim was filed by an Objecting Claimant relating to Kenn Jordan Associates; and three (3) claims were filed by Objecting Claimants relating to Harmony Partners LTD.  *See* Sehgal Decl. ¶¶ 9-12, Exs. 1-3.  The claims of the Limited Partnerships themselves are not at issue in this Motion.

### 1.    <u>M & H Investment Group, L.P.</u>

BLMIS Account number 1CM815 was opened on or around July 21, 2003 in the name of "M & H Investment Group L.P."  Sehgal Decl., Ex. 4, AMF00275614-9.  M & H was a Delaware Limited Partnership, registered with the State of Delaware on June 25, 2003.  Sehgal Decl., Ex. 5, MWPTAP00089526-9.  The BLMIS account opening documents were all signed by Robert Merson as president of Merson, Inc., the general partner of M & H.  Sehgal Decl., Ex.4, AMF00275614-9.    Mr. Merson also signed a BLMIS Partnership Account Agreement identifying himself, as the president of Merson, Inc., as the only individual authorized to act on behalf of M & H.  *Id.* at AMF00275620.  The Partnership Account Agreement also indicated that all BLMIS communications should be sent to "M & H Investment Group, L.P. c/o Robert Merson." *Id.*

From June 2003 to March 2006, all requests for withdrawals were sent to BLMIS by Robert Merson on M & H Investment Group L.P. letterhead.  *See* Sehgal Decl. Ex. 4, AMF00275596-612.  In March 2006, Robert Merson notified BLMIS that the general partner of M & H had been changed from "Merson, Inc." to "M & H, Inc." *Id.*, AMF00275595.  As part of that transition, Robert Merson named Jon Fullerton and LaVada Randquist as the new account representatives and requested new account forms to effect the change.  *See id.*, AMF00275592. From that point forward, all requests for withdrawals were sent to BLMIS by both Jon Fullerton and LaVada Randquist, or by Jon Fullerton alone.  *See id.*, AMF00275571-93.

Also included in the customer file for BLMIS Account 1CM815 was the "Agreement of Limited Partnership of M & H Investment Group, L.P." dated June 25, 2003 and signed by Robert M. Merson ("M & H Agreement").  *Id.*, AMF00275623-41.  Schedule A to the M & H Agreement identified the general and limited partners of M & H as Merson, Inc. and Robert M.

Merson, respectively. *Id.*, AMF00275642. None of the M & H Objecting Claimants were identified as limited partners in the M & H Agreement or in the BLMIS customer files.

The Trustee served discovery requests on the M & H Objecting Claimants; neither responded. By failing to respond to the requests for admissions, the M & H Objecting Claimants admitted (among other things) that they did not have an account in their names at BLMIS, never deposited or withdrew cash or securities with or from BLMIS, did not receive investment statements, correspondence or tax statements from BLMIS, did not have any control, investment discretion or decision-making power over any investments at BLMIS, and that their only relationship to BLMIS existed by way of their relationship to the Limited Partnership. *See generally* Ackerman Decl. ¶¶ 13-18, 19-30 , Exs. 2-11; *see also* FED. R. CIV. P. 36(a)(3).

M & H filed a claim for its account. The Trustee allowed the claim in the amount of $1,808,400 and a determination letter stating the claim's allowance was sent to M & H on October 2, 2009. No objection was filed.

## 2. PJFN Investors Limited Partnership

BLMIS account number 1ZA081 was opened on or around November 27, 1992 in the name of Gilbert R. Fisch and Marcia V. Fisch. Sehgal Decl. Ex. 9, AMF00004062. The account opening documents, including the BLMIS Customer Agreement, BLMIS Option Agreement, and the BLMIS Partnership Agreement, were signed by Gilbert Fisch individually or jointly with Marcia Fisch. *Id.*, AMF00004064-72.

Later, by letter dated December 29, 2003, Gilbert Fisch requested that the name on 1ZA081 be changed to "P.J.F.N. Investors Limited Partnership" effective January 1, 2004. *Id.*, AMF00003981. PJFN was registered as a Limited Partnership with the State of Florida on November 19, 2003. *Id.*, AMF00003983-4. Included with the request to change the accountholder's name was a "Certificate of Limited Partnership" identifying Gilbert and Marcia

Fisch as General Partners. *Id.*, AMF00003985.  The BLMIS customer file for 1ZA081 also contained a copy of the "PJFN Investors Limited Partnership Agreement of Partnership," signed only by Gilbert and Marcia Fisch as the general partners.   *Id.*, AMF00003990-4010.  Furthermore, Article VI of the PJFN Investors Limited Partnership Agreement limits the power to act on behalf of PJFN to general partners: "The overall management and control of the business and affairs of the Partnership shall be vested in the General Partners, acting with the Consent of the General Partners."  *Id.*, AMF00003998.

The Trustee served discovery on the PJFN Objecting Claimants and two of the three Objecting Claimants responded.  Ackerman Decl. ¶¶ 10, 13-14, 24-25, Exs. 2-3, 5-6, 9.  By failing to respond, the remaining Objecting Claimant admitted, among other things, that he did not have an account in his name at BLMIS, never deposited cash or securities with BLMIS, did not receive investment statements, correspondence or tax statements from BLMIS, did not have any control, investment discretion or decision-making power over any investments at BLMIS, and that his only relationship to BLMIS existed by way of its relationship to the Limited Partnership.  *See generally id.*; *see also* FED. R. CIV. P. 36(a)(3).

Documents produced by PJFN Objecting Claimants Michael and Sudeshna Fisch and Paul and Deborah Fisch are unpersuasive.  In support of their arguments for customer status, the Objecting Claimants produced evidence of their status as Limited Partners of PJFN, including an unsigned PJFN Partnership Agreement, Ackerman Decl. Ex. 5, MCMDP_00000053-72, and an Amendment to Partnership Agreement signed only by Gilbert and Marcia Fisch as General Partners dated July 5, 2007.  *Id.*, MCMDP_00000074.  In addition, the Responding Objecting Claimants produced Tax Forms K-1 for 2005 to 2007 identifying Michael and Paul Fisch as Limited Partners. *Id.* MCMDP_00000104-9; MCMDP_000000313-321.

6

The PJFN Responding Objecting Claimants produced checks made payable by them to Gilbert Fisch, most of which make no reference to BLMIS. Ackerman Decl. Ex. 5, MCMDP_00000088-90, 111, 114. In addition, their productions include checks made payable by PJFN to BLMIS, *id.* MCMDP_00000571-4, thus confirming that it was the Partnership, and not the individual Limited Partners who entrusted assets to BLMIS.

PJFN filed a claim for its account. The Trustee denied the claim because based on the Trustee's analysis, the amount of money that PJFN Investors Limited Partnership withdrew from the account was greater than the amount that was deposited, making the account a "net winner." Thus, a determination letter was sent to PJFN denying its customer claim and PJFN Investors Limited Partnership subsequently filed an objection to the Trustee's determination of its claim, ECF No. 927.[4]  PJFN's objection was overruled by this Court's Order Granting Trustee's Seventh Omnibus Motion to Disallow Claims and Overrule Objections of Claimants Who Have No Net Equity, dated January 26, 2016 (ECF No. 12518). No appeal was filed from this Court's Order.

### 3.    <u>Kenn Jordan Associates</u>

On or around February 10, 1993, BLMIS Account number 1ZA879 was opened in the name of "Kenneth Jordan No. 3." Sehgal Decl. Ex. 14, AMF00022587-596. All BLMIS account opening documents, including the Option Agreement and Trading Authorization were signed by Kenneth Jordan at that time. *Id.*, AMF00022588-96. Until April 1, 1998, all communications with BLMIS on behalf of Kenneth Jordan No. 3 were from either Kenneth Jordan or Frank Avellino as Mr. Jordan's representative. *Id.*, AMF00022565-85. By letter dated April 1, 1998, the Account name was changed by Kenneth Jordan to "Kenn Jordan Associates."

---

[4] The PJFN claim is not the subject of this Motion.

*Id.*, AMF00022564.  By that same letter, Mr. Jordan notified BLMIS that "Frank Avellino is a partner in the Kenn Jordan Associates account and has full authority to transact any and all business regarding this account."  *Id.*   From that point forward, all communications with BLMIS on behalf of Kenn Jordan Associates were sent by Frank Avellino on either his personal letterhead or "Kenn Jordan Associates" letterhead. *See id.* AMF0022539-64.

The April 1, 1998 letter also enclosed a "Business Certificate for Partners" stating that Jordan and Avellino "are conducting or transacting business as members of a partnership under the name of Kenn Jordan Associates" in Fort Lauderdale, Florida.  *Id.*, AMF00022565.  The Certificate also identifies Jordan and Avellino as the only partners in Kenn Jordan Associates. *Id.*  The Kenn Jordan Objecting Claimant is not identified as a partner in Kenn Jordan Associates in the "Business Certificate for Partners," and does not appear in the BLMIS books and records related to 1ZA879.[5]

The Trustee served discovery requests on the Kenn Jordan Associates Objecting Claimant; no response was received.  By failing to respond to the requests for admissions, the Kenn Jordan Associates Objecting Claimant admitted (among other things) that she did not have an account in her name at BLMIS, never deposited or withdrew cash or securities with or from BLMIS, did not receive investment statements, correspondence or tax statements from BLMIS, did not have any control, investment discretion or decision-making power over any investments at BLMIS, and that her only relationship to BLMIS existed by way of her relationship to Kenn

---

[5] A search of the Florida Department of State yielded no registration for Kenn Jordan Associates. However, documentation provided by the Kenn Jordan Associates Objecting Claimant identifies the entity as both a limited and general partnership.  *Compare* ECF No. 3633 at 4 (correspondence identifying Frank Avellino as Managing General Partner) *with* Sehgal Decl. Ex. 16, MWPTAP00370443 (IRS Schedule K-1 identifying Kenn Jordan Associates as a general partnership).  As explained in footnote 13 below, the outcome of this Motion remains the same in either case.

Jordan Associates.  *See generally* Ackerman Decl. ¶¶ 26-7, Ex. 10; *see also* FED. R. CIV. P. 36(a)(3).

Kenn Jordan Associates filed a claim for its account.  Determination of the claim is pending the outcome of ongoing litigation brought by the Trustee before this Court.[6]

### 4.    **Harmony Partners, LTD.**

BLMIS Account 1ZB015 was opened on or around February 2, 1993 in the name of Harmony Partners, LTD.  Sehgal Decl. Ex. 18, AMF00027555.  All BLMIS account-opening documents were signed by Harold Altman as General Partner.  *Id.* AMF00027554-563.  Specifically, the BLMIS Partnership Agreement was signed by Harold Altman and identified the general partners of Harmony Partners, LTD. as Harmony Services, Inc. and Harold Altman. *Id.*, AMF00027563.  Also included in the BLMIS books and records was a February 8, 1993 BLMIS "Corporate Resolution" signed by Harold Altman, Lawrence I. Altman, and Barry S. Altman granting each the authority to act on behalf of Harmony Partners with respect to the BLMIS account. *Id.*, AMF00027562.

Virtually all requests for withdrawals from the opening of the account through October 2004 were signed by Harold Altman as General Partner of Harmony.[7]  In July 2003, Harold Altman sent a letter to BLMIS granting L. Mark Freedman III "complete access to the Harmony Partners LTD. Account . . . including but not limited to additions, withdrawals, and all other pertinent information."  *Id.*, AMF00027522.[8]  As such, starting in October 2004, all

---

[6] *See Picard v. Avellino, et. al*, Adv. No. 10-05421(SMB) (Bankr. S.D.N.Y. July 21, 2016).

[7] One withdrawal request, also on Harmony Partners, LTD. letterhead was submitted by each of Barry S. Altman, Sehgal Decl. Ex. 18, AMF0002754, and Lawrence I. Altman,  *id.*, AMF00027548.  Both withdrawals were to be sent to Harmony Partners LTD.'s address.

[8] A similar instrument granted Erika L. Altman, Esq. full access to the account as of May 28, 2002.  Sehgal Decl. Ex. 18, AMF00027524.  Ms. Altman does not appear elsewhere in the customer file.

communications with BLMIS were signed by L. Mark Freedman III as Chief Executive Officer. *Id.*, AMF00027514-520. All withdrawal requests were written on Harmony Partners LTD letterhead and were to be made payable to Harmony Partners. *Id.*, AMF00027521

The Trustee served discovery on all Harmony Partners, LTD. Objecting Claimants. By and through his counsel, Objecting Claimant Frank C. Leonard responded. The remaining Harmony Partners, LTD. Objecting Claimant failed to respond. By failing to respond to the requests for admissions, she admitted (among other things) that she did not have an account in her name at BLMIS, never deposited cash or securities with BLMIS, did not receive investment statements, correspondence or tax statements from BLMIS, did not have any control, investment discretion or decision-making power over any investments at BLMIS, and that her only relationship to BLMIS existed by way of her relationship to the partnership. *See generally* Ackerman Decl. ¶ 7, 28-9, Exs. 1, 11; *see also* FED. R. CIV. P. 36(a)(3).

Despite denying the Trustee's Requests for Admissions, Mr. Leonard's supporting documentation does not support his claim to customer status. Specifically, he produced the Harmony Partners Limited Partnership identifying Harold Altman as the representative of the General Partner—Harmony Services, Inc.—and as having all management responsibilities. Ackerman Decl. Ex. 7, MCMDP_00000126-40. He also confirmed that his relationship was with Harmony Partners LTD., not BLMIS through the production of checks made payable, by him, to Harmony Partners LTD. *Id.* MCMDP_00000199-201.

Harmony Partners, LTD. filed a customer claim for account 1ZB015. The Trustee allowed the claim in the amount of $8,599,159.92 and a determination letter was sent on March 23, 2010 allowing its claim. No objection was filed by Harmony Partners, LTD.

## C.    THE BLMIS ACCOUNT RECORDS

The Limited Partnerships each maintained an account in its own name (the "Accounts," and each, an "Account") with BLMIS.  The Objecting Claimants did not.  Sehgal Decl., ¶ 36, Exs. 1-3.  The books and records of BLMIS reflect money deposited or withdrawn by and on behalf of the Limited Partnerships, and not by the Objecting Claimants individually.  *See* Sehgal Decl., ¶¶ 17, 22, 27, 31, Exs. 4, 9, 14, 18.

Because the Limited Partnerships each maintained an Account at BLMIS, and made deposits into and withdrawals from that Account, the books and records of BLMIS reflect the amounts owing and owed by the BLMIS estate for each particular Account.  The books and records of BLMIS do not, in contrast, reflect deposits or withdrawals directly to or from BLMIS by the individual Objecting Claimants with regard to any Limited Partnerships' BLMIS Account.  They also do not show what amounts individual Objecting Claimants invested in, or withdrew from, the Limited Partnerships.  *See id*.  It was each Limited Partnership that had the right to demand, on behalf of the Limited Partnership, return of the property entrusted to BLMIS for its Account, and each Limited Partnership that is accordingly entitled to a customer claim to the extent of its net equity.

## D.    THE CLAIMS

The claims at issue in this Motion involve only interests in the Limited Partnerships.  The Objecting Claimants, the nine (9) claims filed by them, and the eleven (11) objections to determination of those claims, are specifically identified in Exhibits 2 and 3 to the Sehgal Declaration.  Sehgal Decl. ¶¶ 9-13, Exs. 1-3.  The Trustee denied their claims because they lacked BLMIS accounts and, thus were not customers of BLMIS.  Sehgal Decl. ¶ 11.  This Motion addresses all objections to the determination of the specified claims by Objecting Claimants who are identified on Exhibit 2 of the Sehgal Declaration.

Since receiving the eleven (11) docketed objections to the claims determinations, the Trustee served discovery requests on each of the Objecting Claimants seeking to determine their basis for claiming customer status, and inquiring into deposits, payments, communications, account openings, and their relationship with the account holder. As noted above, three of the Objecting Claimants responded. *See* Ackerman Decl. ¶¶ 13-18.

## E.    THE CUSTOMER DECISIONS

There have been fifteen prior decisions in this proceeding dealing with whether investors in BLMIS accountholders could be treated as "customers" under SIPA when those investors did not themselves have individual accounts with BLMIS; all of the decisions said they could not.

### 1.    The Initial Feeder Fund Motion

The Trustee's first motion regarding the definition of "customer" under SIPA was the Trustee's Motion To Affirm Trustee's Determinations Denying Claims of Claimants Without BLMIS Accounts In Their Names, Namely, Investors in Feeder Funds, filed on June 11, 2010, ECF No. 2416 (the "Initial Feeder Fund Motion"). On June 28, 2011, this Court issued its memorandum decision and order affirming the Trustee's denial of the claims. *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff Inv. Sec. LLC)*, 454 B.R. 285 (Bankr. S.D.N.Y. 2011), *aff'd sub nom. Aozora Bank Ltd. v. Sec. Inv'r Prot. Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*, 480 B.R. 117 (S.D.N.Y. 2012), *aff'd sub nom. Kruse v. Sec. Inv'r Prot. Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*, 708 F.3d 422 (2d Cir. 2013).

The Court found that, in light of the plain language of SIPA and relevant case law, the claimants in the Initial Feeder Fund Motion did not qualify as "customers" under SIPA. *In re Bernard L. Madoff Inv. Sec. LLC*, 454 B.R. at 290. The Court held that the claimants invested in, not through, those feeder funds, and had no individual accounts at BLMIS. *Id.* at 297. It was the feeder funds that entrusted their monies with BLMIS for the purpose of trading or investing in

securities—the touchstone of "customer" status—whereas the claimants purchased interests in the feeder funds. *Id*. at 299. The Court held that absent a direct relationship with BLMIS, the claimants sought a definition of "customer" that stretched the term beyond its limits. *Id.* at 302.

After the District Court affirmed, *Aozora Bank Ltd.*, 480 B.R. 117 (S.D.N.Y. 2012), the claimants appealed to the Second Circuit, which also affirmed. The Second Circuit confirmed that "[j]udicial interpretations of 'customer' status support a narrow interpretation of the SIPA's provisions." *Kruse*, 708 F.3d at 426 (quoting *Stafford v. Giddens (In re New Times Sec. Servs., Inc.)*, 463 F.3d 125, 127 (2d Cir. 2006) (explaining that "the critical aspect of the 'customer' definition" was "the entrustment of cash or securities to the broker-dealer for the purposes of trading securities.")). The claimants failed to meet this fundamental requirement because the money sent to BLMIS belonged to the accountholders, not to the individual claimants, and the individual claimants therefore failed to establish that they had entrusted cash or securities to BLMIS. *Kruse*, 708 F.3d at 426–27. The Second Circuit also found that the individual claimants did not exhibit other indicia of customer status in their dealings (or lack of dealings) with BLMIS, including that they did not exert any control over the accounts at issue and that they were not reflected in BLMIS records. *Id.*

The Second Circuit held that the interests "sold by the Feeder Funds to investors . . . did not confer an ownership interest in money that the Feeder Funds ultimately invested in BLMIS." *Id.* at 427. Thus, "regardless of their intent, appellants never entrusted *their* cash or securities to BLMIS and, thus, fail to satisfy this 'critical aspect of the "customer" definition.'" *Id.* (quoting *In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d at 236 (internal quotation marks omitted)); *see Sec. Inv'r Prot. Corp. v. Morgan, Kennedy & Co.*, 533 F.2d 1314, 1318 (2d Cir. 1976) ("*Morgan Kennedy*"); *see also Kruse*, 708 F.3d at 427-28 ("[A] claimant will not be entitled to customer

13

protection under SIPA unless the debtor actually receives the claimant's cash or securities; the debtor must actually have come into possession or control.") (citing 1–12 *Collier on Bankruptcy* ¶ 12.12 (16th ed. 2012)).

### 2.    The ERISA Motion

While the appeals of the Feeder Fund Decision were pending, the Trustee also filed a motion to address arguments that were raised by claimants without BLMIS accounts who were benefit plans or benefit plan participants and who sought to use the Employee Retirement Income Security Act ("ERISA") as a basis for determining their customer status.[9]  *See* ECF No. 4521.  The District Court withdrew the reference and granted the motion.

The District Court noted that the first two of the three ways to qualify as a "customer" under SIPA § 78*lll*(2), "presume that a customer must have a securities account with the debtor," and that the ERISA claimants also did not qualify under the third method of having "deposited cash with the debtor for the purpose of purchasing securities."  *Sec. Inv'r Prot. Corp. v. Jacqueline Green Rollover Account*, Nos. 12 Civ. 1039 (DLC), 12 Civ. 1139 (DLC), 2012 WL 3042986, at *4 (S.D.N.Y. July 25, 2012) (quoting SIPA § 78*lll*(2)).  That was so because none of the claimants "owned any cash deposited with BLMIS.  Rather, . . . in each case this cash was owned by the third-party entity in which the claimant invested, and which had a BLMIS account in its name." *Id.* at *5.  The District Court also rejected arguments that fiduciary responsibilities could suffice to create a "customer" relationship.  *Id.* at *12.

### 3.    Other Customer Motions

Additional SIPA "customer" motions followed, each of which was determined in favor of the Trustee.  On August 21, 2013, the Bankruptcy Court issued its Bench Memorandum Granting

---

[9] Prior to the hearing on the Initial Feeder Fund Motion, the Court had removed from the scope of the motion the question of whether ERISA affects "customer" status under SIPA.

Trustee's Second Motion to Affirm Trustee's Determinations Denying Claims of Claimants Who Invested in Certain Feeder Funds and Did Not Have BLMIS Accounts in Their Names.  *See* ECF No. 5450 ("the Second Feeder Fund Decision").  Noting that prior decisions established that the burden is on the claimant to establish that he is a "customer" entitled to SIPA protection, and that such showing is not easily met, this Court concluded that the claimants had failed to establish their "customer" status.  The Bankruptcy Court noted that "they had no securities accounts at BLMIS, were not known to BLMIS, lacked privity and any financial relationship with BLMIS." Second Feeder Fund Decision at 4. They further "lacked property interest in any feeder fund account assets at BLMIS, entrusted no cash or securities to BLMIS, had no investment discretion over feeder fund assets invested with BLMIS, received no accounts statements or other communications from BLMIS and had no transactions reflected on the books and records at BLMIS." *Id.*

On August 22, 2014, this Court issued its Memorandum Decision Granting Motion To Affirm Trustee's Determinations Denying Claims Of Claimants Who Invested In Certain ERISA Plans. *See generally Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff Inv. Sec. LLC)*, 515 B.R. 161 (Bankr. S.D.N.Y. 2014) ("ERISA Claimant Decision"). Again holding that the burden is on the claimant to establish that he is a customer, this Court concluded that a claimant who wished to qualify as a person who has deposited cash with the debtor for the purposes of purchasing securities must show that she entrusted her "own assets directly through an account maintained in her own name rather than indirectly through a fund that then entrusted the fund's assets through an account maintained in the fund's name." *Id.* at 168 (internal citations omitted).  This Court further noted that "not every victim of a broker-dealer's fraud is a 'customer,'" and that even the fact that a claimant exercised some control over

her own investments in the fund or the fund's investments in BLMIS was not sufficient to meet "the narrow definition of customer under SIPA." *Id.* at 166, 168.

On February 25, 2015, this Court read into the record a decision granting the Trustee's Motion And Memorandum To Affirm His Determinations Denying Claims Of Claimants Holding Interests In S&P or P&S Associates, General Partnerships. ECF No. 9506 at 30 ("*S&P Decision*"). This Court explained that the indicia of customer status are: (i) a direct financial relationship with BLMIS; (ii) a property interest in the funds invested directly with BLMIS; (iii) securities accounts with BLMIS; (iv) control over the account holders' investments with BLMIS; and (v) identification of the alleged customer in BLMIS's books and records. The Court held that the objecting partners failed to sustain their burden of proving that they are customers of BLMIS and an order granting the Trustee's motion was entered. *Id.* at 36; *see also* ECF No. 9450. Since the *S&P Decision*, there have been eleven motions to affirm the Trustee's determinations,[10] each of which was granted by the Court ("Customer Opinions").[11]

---

[10] One other customer motion is presently scheduled for hearing on October 26, 2016. *See* Trustee's Motion And Memorandum of Law To Affirm His Determinations Denying Claims Of Claimants Holding Interests In AHT Partners, Pergament Equities, LLC, SMT Investors LLC, Greene/Lederman, L.L.C., And Turbo Investors, LLC. (ECF No. 14065). At this writing, the deadline for objections has passed and no objections have been filed. *See* Certificate Of No Objection To Trustee's Motion And Memorandum To Affirm His Determinations Denying Claims Of Claimants Holding Interests In AHT Partners, Pergament Equities, LLC, SMT Investors LLC, Greene/Lederman, L.L.C., And Turbo Investors, LLC, filed Oct. 12, 2016, ECF No. 14265.

[11] *See* Order Approving Trustee's Motion To Affirm His Determinations Denying Claims of Claimants Holding Interests In Peerstate Equity Fund, L.P., ECF No. 9883 (Apr. 27, 2015); Order Approving Trustee's Motion And To Affirm His Determinations Denying Claims Of Claimants Holding Interests In The Lazarus-Schy Family Partnership, The Schy Family Partnership, Or The Lazarus Investment Group, ECF No. 10010 (May 18, 2015); Order Approving Trustee's Motion To Affirm His Determinations Denying Claims Of Claimants Holding Interests In Epic Ventures, LLC, ECF No. 10267 (June 25, 2015); Order Approving Trustee's Motion To Affirm His Determinations Denying Claims Of Claimants Holding Interests Partners Investment Co., Northeast Investment Club, And Martin R. Harnick & Steven P. Norton, Partners, ECF No. 10894 (July 29, 2015); Order Approving Trustee's Motion To Affirm His Determinations Denying Claims Of Claimants Holding Interests The Whitman Partnership, The Lucky Company, The Petito Investment Group, And The Harwood Family Partnership, ECF No. 11145 (Aug. 26, 2015); Order Approving Trustee's Motion To Affirm His Determinations Denying Claims Of Claimants Holding Interests 1973 Masters Vacation Fund, Bull Market Fund, And Strattham Partners, ECF No. 11920 (Oct. 29, 2015); Order Approving Trustee's Motion To Affirm His Determinations Denying Claims Of Claimants Holding Interests in Black River Associates LP, MOT Family Investors, LP, Rothschild Family Partnership, and Ostrin Family Partnership, ECF No. 12757 (Mar. 3, 2016); Order Approving Trustee's Motion To

## ARGUMENT

To be a "customer" under SIPA, an investor must have "a claim on account of securities received, acquired, or held by the debtor in the ordinary course of its business as a broker or dealer from or for the securities accounts of such person," including "any person who has deposited cash with the debtor for the purpose of purchasing securities." SIPA § 78*lll*(2).[12]

---

Affirm His Determinations Denying Claims Of Claimants Holding Interests in the Article Third Trust, Palmer Family Trust, Maggie Faustin, Estate of Theodore Schwartz, and Miller Trust Partnership, ECF No. 13172 (Apr. 26, 2016); Order Approving Trustee's Motion To Affirm His Determinations Denying Claims Of Claimants Holding Interests in William M. Pressman, Inc., William Pressman, Inc. Rollover Account, and AGL Life Assurance Company, ECF No. 13466 (June 7, 2016); Order Approving Trustee's Motion and Memorandum To Affirm His Determinations Denying Claims Of Claimants Holding Interests in Palko Associates, Gloria Jaffe Investment Partnership, and the Miller Partnership, ECF No. 13780 (July 22, 2016); and Order Approving Trustee's Motion And Memorandum of Law To Affirm His Determinations Denying Claims Of Claimants Holding Interests In Chalek Associates LLC, Chaitman/Schwebel LLC, FGLS Equity LLC, Larsco Investments LLC, and Kuntzman Family LLC, ECF No. 14225 (Oct. 4, 2016).

[12] The definition applicable to this SIPA proceeding is:

    (2) Customer

        (A) In General

        The term "customer" of a debtor means any person (including any person with whom the debtor deals as principal or agent) who has a claim on account of securities received, acquired, or held by the debtor in the ordinary course of its business as a broker or dealer from or for the securities accounts of such person for safekeeping, with a view to sale, to cover consummated sales, pursuant to purchases, as collateral security, or for purposes of effecting transfer.

        (B) Included persons

        The term "customer" includes—

            (i) any person who has deposited cash with the debtor for the purpose of purchasing securities; [and]

            (iii) any person who has a claim against the debtor arising out of sales or conversions of such securities, [but does not include—]

        (C) Excluded persons

        The term "customer" does not include any person, to the extent that—

            (i) the claim of such  person arises out of transactions with a foreign subsidiary of a member of SIPC; or

            (ii) such person has a claim for cash or securities which by contract, agreement, or understanding, or by operation of law, is part of the capital of the debtor, or is subordinated to the claims of any or all creditors of the debtor, notwithstanding  that some ground exists for declaring such contract, agreement, or understanding void or voidable in a suit between the claimant and the debtor.

SIPA § 78*lll*(2).  After the start of this case, the "customer" definition was slightly reorganized and amended in a manner irrelevant to the present issues by the Dodd-Frank Wall Street Reform and Consumer Protection Act. Pub.

Thus, to be a "customer" an investor must have entrusted cash or securities to the debtor for the purpose of trading or investing in securities. In *Kruse*, the Second Circuit found that investors who bought interests in a limited partnership that invested partnership funds via the partnership's own BLMIS account "never entrusted *their* cash or securities to BLMIS and, thus, fail to satisfy this 'critical aspect of the "customer" definition'" regardless of their intent. 708 F.3d at 427 (quoting *In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d at 236). Similarly, the Second Circuit in *In re New Times Securities Services* held that "[t]he critical aspect of the 'customer' definition is the entrustment of cash or securities to the broker-dealer for the purposes of trading securities." 463 F.3d at 128 (quoting *Appleton v. First Nat'l Bank of Ohio*, 62 F.3d 791, 801 (6th Cir. 1995)); *see also In re Adler, Coleman Clearing Corp.*, 216 B.R. 719, 724-25 (Bankr. S.D.N.Y. 1998) ("The term [customer] refers to those who entrust cash or securities to broker-dealers for the purpose of trading and investing in the securities market."). The Second Circuit recently further upheld this principle in *In re Lehman Bros., Inc.*, 791 F.3d 277 (2d Cir. 2015), concluding that the "critical aspect of the 'customer' definition is the entrustment of cash or securities to the broker-dealer for the purposes of trading securities." *Id.* at 282 (quoting *In re Bernard L. Madoff Inv. Secs. LLC*, 654 F.3d at 236). The Trustee is responsible for discharging obligations of the debtor to customers with such claims "insofar as such obligations are ascertainable from the books and records of the debtor or are otherwise established to the satisfaction of the trustee." SIPA § 78fff-2(b).

The Objecting Claimants' investments in the Limited Partnerships do not meet the requirements for "customer" status outlined in the seminal Second Circuit decision *Morgan Kennedy*, 533 F.2d at 1318, and reaffirmed in *Kruse*, 708 F.3d at 427. In *Morgan Kennedy*, the

---

L. No. 111-203, § 983(b), 124 Stat. 1931 (2010); *see In re Lehman Bros. Inc.*, 462 B.R. 53, 61 n.9 (Bankr. S.D.N.Y. 2011).

Second Circuit rejected the argument that the beneficial owners of the account holder were the "customers" under SIPA, citing the facts that: (1) title to the trust assets was held by the account holder, not the beneficiaries; (2) the securities account with the debtor was in the name of the account holder, not the beneficiaries; (3) the account holder had the exclusive power to entrust the assets to the debtor; (4) the beneficiaries were unknown to the broker; and (5) the beneficiaries had no legal capacity in which they could deal with the debtor. 533 F.2d at 1318.

The Objecting Claimants' circumstances are little different than those of the claimants in *Morgan Kennedy*, and do not exhibit the hallmarks of customer status discussed in this Court's *S&P Decision*. *S&P Decision* at 30. The Objecting Claimants entrusted their money to the Limited Partnerships, not to BLMIS. The Objecting Claimants lacked a direct financial relationship with BLMIS on their own behalf. The money entrusted to BLMIS was the property of the Limited Partnerships, not the Objecting Claimants. The BLMIS Accounts were in the names of the Limited Partnerships, not in the individual names of Objecting Claimants.

The individual financial interests of Objecting Claimants in each account were not identified in BLMIS' books and records. The general partners who dealt with BLMIS were like the trustees who acted for the trust account in *Morgan Kennedy*, and were no more customers in their individual capacity than the trustees were. *Morgan Kennedy*, 533 F.2d at 1318, 1320-21 (notwithstanding that the trust account was in the name of the trustees, "[a]ny suggestion that each of the three Trustees has a separate customer claim against the debtor is untenable" because the Trustees together managed the trust, "which was the true customer of the broker-dealer"; similarly, noting that under the SIPA Rules, individual coverage for multiple people who each own some portion of, or interest in, an account is "explicitly forbidden").

Only the Limited Partnerships, not the Objecting Claimants, entrusted their cash or securities to BLMIS, and the Objecting Claimants thus fail to satisfy this "critical aspect of the 'customer' definition." *Kruse*, 708 F.3d at 426-27 (citing *In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d at 236); *accord ERISA Claimant Decision*, 515 B.R. at 169. Whether the Objecting Claimants intended the Limited Partnerships to invest with BLMIS is irrelevant under SIPA. *See Kruse*, 708 F.3d at 426-27; *ERISA Claimant Decision*, 515 B.R. at 169-70.

The funds that the Objecting Claimants contributed to the Limited Partnerships, and anything that the Limited Partnerships purchased with those funds, belonged to the relevant Limited Partnership and not to any individual Objecting Claimant. Under both Florida and Delaware Limited Partnership statutes, partnership property belongs to the partnership alone and not to the partners. FLA. STAT. ANN. § 605.0110(2) (West 2016) ("Property acquired with Limited Partnership funds is Limited Partnership property."); FLA. STAT. ANN. § 605.0110(4) (West 2016) ("A member of a Limited Partnership has no interest in any specific Limited Partnership property."); DEL. CODE ANN. tit. 6, § 17-701 (West 2016) ("A Limited Partnership interest is personal property. A member has no interest in specific Limited Partnership property."). These principles apply equally to limited and general partnerships in Florida.[13] Like the objecting claimants dealt with by prior Customer Opinions, the Objecting Claimants do not individually own the assets that the Limited Partnerships invested with BLMIS. Instead, the assets are collectively owned by the Limited Partnerships themselves.

It was the Limited Partnerships, not the Objecting Claimants, which entrusted assets to BLMIS for the purpose of purchasing securities. Each Limited Partnership, through its general

---

[13] To the extent that Kenn Jordan Associates can be considered a general partnership, the Objecting Claimant is likewise unable to claim ownership to the partnership's property under Florida law. Florida Statute provides, "Partnership property is owned by the partnership as an entity, not by the partners as co-owners. A partner has no interest that can be transferred . . . in specific partnership property." FLA. STAT. ANN. § 620.8501 (West 2016).

partners, had the right to direct the investment of those assets on behalf of the Limited Partnership, and to withdraw property from its Account on behalf of the Limited Partnership. Each Limited Partnership and not the Objecting Claimants, was the customer for its respective Account under SIPA.

Because BLMIS did not perform a custodial function on behalf of the individual Objecting Claimants, the Objecting Claimants have neither "customer" claims nor individual net equity. The purpose of SIPA, a statute intended to deal with broker insolvency, is "to expedite the return of customer property" by "protecting the *custody* function of brokers." *Sec. Inv'r Prot. Corp. v. 2427 Parent Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*, 779 F.3d 74, 80 (2d Cir. 2015) (finding impermissible the application of interest or time-based damages to customer claims under SIPA). Customers share in the fund of customer property ratably, according to each customer's "net equity." *Id.* at 77, 81. The definition of net equity is limited by the fundamental SIPA design "to return customer property to customers," *id.* at 77, whether in cash or in actual securities. *Id.* at 80.[14]

The Second Circuit stated in *2427 Parent Corp.*, "[w]e . . . previously concluded that in [the BLMIS] case net equity . . . should be determined based on customers' actual deposits and withdrawals. These deposits, net withdrawals, constitute customer property here." *Id.* at 81 (citations omitted). The books and records of BLMIS show that Objecting Claimants made no individual deposits into or withdrawals from BLMIS on their own behalf, and most do not appear

---

[14] The definition of "net equity" at SIPA § 78*lll*(11) begins, "The term 'net equity' means the dollar amount of the account or accounts of a customer, to be determined by—

(A) Calculating the sum which would have been owed by the debtor to such customer if the debtor had liquidated . . . on the filing date—(i) all securities positions of such customer . . . ."

in the books and records at all.  Sehgal Decl. ¶¶ 17, 22, 27, 31, Exs. 4, 9, 14, 18.  The Objecting

Claimants accordingly have no net equity and are not "customers" within the meaning of SIPA.

Each of the Objecting Claimants was served with requests for admission, interrogatories,

and requests for production.  One of the Harmony Partners LTD Objecting Claimants and two of

the three PJFN Objecting Claimants responded.   None of the M & H Objecting Claimants

responded, and similarly, neither did the Kenn Jordan Associates Objecting Claimant.   Those

Objecting Claimants who failed to respond to the requests for admissions, admitted them.  FED.

R. CIV. P. 36(a)(3).  These admissions show that Objecting Claimants lack any relationship with

BLMIS that fits the *Morgan Kennedy* criteria and that their claims of "customer" status are

baseless.  They admitted that: (i) the relevant Account was not titled in their name;[15] (ii) that

they never received investment statements or tax statements in their names from BLMIS;[16] (iii)

that they never paid cash directly to BLMIS for credit to an account in their names;[17] (iv) never

deposited securities directly with BLMIS;[18] (v) that they never directly withdrew or received

funds directly from BLMIS;[19] (vi) that their only relationship to BLMIS existed by way of their

relationship to the Account holder;[20] (vii) that they never entered into any contracts in their

names with BLMIS;[21] and (viii) that they did not have any control, investment discretion or

decision-making power over any investment assets at BLMIS.[22]

---

[15] Ackerman Decl., Exs. 2-4, 8-11, ¶ 1.

[16] Ackerman Decl., Exs. 2, 4, 8-11, ¶¶ 8, 9; Ackerman Decl., Ex. 3, ¶¶ 9, 10.

[17] Ackerman Decl., Exs. 2, 4, 8, 9, 11, ¶ 5; Ackerman Decl., Ex. 3, ¶ 6; Ackerman Decl., Ex. 10, ¶ 4.

[18] Ackerman Decl., Exs. 2-4, 8, 9, 11, ¶ 4; Ackerman Decl., Ex. 10, ¶ 5.

[19] Ackerman Decl., Ex. 2, 4, 8-11, ¶ 6; Ackerman Decl., Ex. 3, ¶ 7.

[20] Ackerman Decl., Exs. 2, 4, 8-11, ¶ 11; Ackerman Decl., Ex. 3, ¶ 12.

[21] Ackerman Decl., Exs. 2, 4, 8-11, ¶ 10; Ackerman Decl., Ex. 3, ¶ 11.

[22] Ackerman Decl., Exs. 2, 4, 8-11, ¶ 12; Ackerman Decl., Ex. 3, ¶ 13.

Additionally, responses and documents received from the three responding Objecting Claimants are unpersuasive. None of the responding Objecting Claimants provided evidence of a direct relationship with BLMIS. Responding Objecting Claimants provided checks made payable to the Limited Partnership, not BLMIS,[23] and Limited Partnership Agreements that identify the general partners as the individuals authorized to manage the Limited Partnership's investment with BLMIS and other business matters.[24] As the Second Circuit has explained, "[j]udicial interpretations of 'customer' status support a narrow interpretation of the SIPA's provisions." *Kruse*, 708 F.3d at 426 (quoting *In re New Times Sec. Servs., Inc.*, 463 F.3d at 127). Customer status under SIPA is narrowly construed and is the burden of the claimant to establish. *See ERISA Claimant Decision*, 515 B.R. at 166; *In re Bernard L. Madoff Inv. Sec. LLC*, 454 B.R. at 294 (citing *In re Klein, Maus & Shire, Inc.*, 301 B.R. 408, 418 (Bankr. S.D.N.Y. 2003)) ("The burden is on the claimant to establish he is a 'customer' entitled to SIPA protection, and such a showing 'is not easily met.'"); *see also Mishkin v. Siclari (In re Adler, Coleman Clearing Corp.)*, 277 B.R. at 557 (Bankr. S.D.N.Y. 2002) ("[I]it is well-established in the Second Circuit that a claimant bears the burden of proving that he or she is a 'customer' under SIPA."). The Objecting Claimants have not met this burden. Thus, under Second Circuit precedent, the Objecting Claimants are not SIPA customers.

*Intentionally Left Blank*

---

[23] Ackerman Decl. Ex. 5, MCMDP_00000088.

[24] *See, e.g.*, Ackerman Decl. Ex. 7, MCMDP_00000127 (production of Harmony Partners Limited Partnership Agreement Amendment identifying Harold Altman as Managing Partner); Ackerman Decl. Ex. 5, MCMDP_00000074 (PJFN agreement identifying Gilbert and Marcia Fisch as general partners).

## CONCLUSION

For all of the foregoing reasons, the Trustee respectfully requests that the Court affirm the Trustee's determination denying the Objecting Claimants' nine claims, overrule the Objecting Claimants' eleven objections, disallow their claims, and grant such other and further relief as the Court deems just and proper.

Dated: New York, New York
        October 20, 2016

Respectfully submitted,

*/s/ David J. Sheehan*
David J. Sheehan
Email: dsheehan@bakerlaw.com
Nicholas J. Cremona
Email: ncremona@bakerlaw.com
Jorian L. Rose
Email: jrose@bakerlaw.com
Amy E. Vanderwal
Email: avanderwal@bakerlaw.com
Stephanie A. Ackerman
Email: sackerman@bakerlaw.com
**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, New York  10111
Tel: (212) 589-4200
Fax: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee for the*
*Substantively Consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities LLC*
*and the Estate of Bernard L. Madoff*