**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>        Plaintiff,<br><br>  v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>        Defendant. | No. 08-01789 (SMB)<br><br>SIPA Liquidation<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>        Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>        Plaintiff,<br><br>  v.<br><br> LEGACY CAPITAL LTD.,<br><br>        Defendant. | Adv. Pro. No. 10-05286 (SMB) |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF TRUSTEE'S**
**MOTION FOR JUDGMENT ON THE PLEADINGS**

                   **BAKER & HOSTETLER LLP**
                   45 Rockefeller Plaza
                   New York, New York 10111
                   Telephone: (212) 589-4200
                   Facsimile: (212) 589-4201

                   *Attorneys for Irving H. Picard, Trustee for the*
                   *Substantively Consolidated SIPA Liquidation*
                   *of Bernard L. Madoff Investment Securities*
                   *LLC and the Estate of Bernard L. Madoff*

**TABLE OF CONTENTS**

**Page**

ARGUMENT ..................................................................................................................................1

    I.    LEGACY ADMITTED THE TWO-YEAR TRANSFERS .....................................1

    II.   LEGACY'S REFERENCE TO A REJECTED AMICUS BRIEF IS
          IRRELEVANT .........................................................................................................7

CONCLUSION ................................................................................................................................8

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anwar v. Fairfield Greenwich Ltd.*,
 728 F. Supp. 2d 372 (S.D.N.Y. 2010)...................................................................................5

*Diana Melton Trust v. Picard (In re Bernard L. Madoff Inv. Sec. LLC)*,
 No. 15 Civ. 1151 (PAE), 2016 WL 183492 (S.D.N.Y. Jan. 14, 2016)....................................6

*Donell v. Kowell*,
 533 F.3d 762 (9th Cir. 2008) .................................................................................................4

*Kule-Rubin v. Bahari Grp. Ltd.*,
 No. 11 Civ. 2424 (TPG), 2012 WL 691324 (S.D.N.Y. Mar. 5, 2012) ....................................1

*Picard v. Cohen*,
 550 B.R. 241 (Bankr. S.D.N.Y. 2016)....................................................................................7

*Picard v. Greiff*,
 476 B.R.715 (S.D.N.Y. 2012)........................................................................................1, 2, 4

*Scholes v. Lehmann*,
 56 F.3d 750 (7th Cir.1995), *cert. denied,* 516 U.S. 1028 (1995)..........................................4, 5

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
 499 B.R. 416 (S.D.N.Y. 2013).....................................................................................2, 4, 8

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
 522 B.R. 41 (Bankr. S.D.N.Y. 2014) .....................................................................................6

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff Inv. Sec. LLC)*,
 654 F.3d 229 (2d Cir. 2011), *cert. denied,* 133 S. Ct. 24 (2012) ..........................................4, 7

*Sender v. Buchanan (In re Hedged–Invs. Assocs., Inc.)*,
 84 F.3d 1286 (10th Cir. 1996) ...............................................................................................4

**Statutes**

11 U.S.C. § 544.................................................................................................................................2

11 U.S.C. § 548..............................................................................................................................2, 3

11 U.S.C. § 548(a)(1)(A) .................................................................................................................3

11 U.S.C. § 548(c) ...................................................................................................................4, 7, 8

11 U.S.C. § 550(a) ...........................................................................................................................2

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

11 U.S.C. § 550(a)(1) .................................................................................................................3

11 U.S.C. § 551 ..........................................................................................................................2

15 U.S.C. §§ 78aaa–*lll* ..............................................................................................................1

15 U.S.C. § 78fff-2(c)(3) .........................................................................................................2, 3

15 U.S.C. § 78*lll*(4) ...................................................................................................................2

N.Y. Debt. & Cred. Law §§ 273-279 .........................................................................................2

**Rules**

Fed. R. Bankr. P. 7012 ...............................................................................................................1

Fed. R. Civ. P. 8(b) ....................................................................................................................1

Fed. R. Civ. P. 12(c) ...............................................................................................................1, 8

N.Y. C.P.L.R. 203(g) .................................................................................................................2

N.Y. C.P.L.R. 213(8) .................................................................................................................2

**Other Authorities**

5 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 1261 (4th ed. 2008) ...................................................................................1

Irving H. Picard (the "Trustee"), as trustee for the substantively consolidated liquidation of the business of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act ("SIPA"), 15 U.S.C. §§ 78aaa–*lll*, and the estate of Bernard L. Madoff, by and through his undersigned counsel, respectfully submits this reply memorandum in support of his motion under Federal Rule of Civil Procedure 12(c), as incorporated by Federal Rule of Bankruptcy Procedure Rule 7012, for a judgment on the pleadings as to Count One of the Amended Complaint and in response to the opposition filed by defendant Legacy Capital Ltd. ("Legacy").

## ARGUMENT

### I. LEGACY ADMITTED THE TWO-YEAR TRANSFERS

Legacy opposes the Trustee's motion by arguing the Trustee must still prove the amount of fictitious profits Legacy received. The law is the opposite. Legacy admitted the amounts it deposited into its BLMIS account as principal and the amounts it withdrew. (Ans. ¶ 142, 144.) Legacy's admissions relieve the Trustee of his burden of proof on these points. *See, e.g.*, *Kule-Rubin v. Bahari Grp. Ltd.*, No. 11 Civ. 2424 (TPG), 2012 WL 691324, at *3 (S.D.N.Y. Mar. 5, 2012) ("plaintiff is entitled to judgment on the pleadings where the defendant's answer fails to deny the elements constituting a cause of action"); 5 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 1261 (4th ed. 2008) (only contested issues require proof to be established); Fed. R. Civ. P. 8(b).

In *Picard v. Greiff*, the United States District Court for the Southern District of New York adopted a two-step approach—the "Net Investment Method"—for determining the amount of transfers subject to the Trustee's avoidance powers:

> First, amounts transferred by [BLMIS] to a given defendant at any time are netted against the amount invested by that defendant in [BLMIS] at any time. Second, if the amount transferred to the

defendant exceeds the amount invested, the Trustee may recover these net profits from that defendant to the extent that such monies were transferred to that defendant in the two years prior to [BLMIS's] filing for bankruptcy.

476 B.R.715, 729 (S.D.N.Y. 2012); *see also Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 499 B.R. 416, 426 (S.D.N.Y. 2013) ("*Antecedent Debt Decision*") (confirming that the Net Investment Method is the proper approach in determining avoidable transfers).  Thus, the Trustee must plead and prove the "amount transferred [by BLMIS] to [a] defendant exceeds the amount invested" in order to avoid and recover the excess as fictitious or "net" profits.  *Greiff*, 476 B.R. at 729.

In his Amended Complaint, the Trustee alleged both the amounts Legacy invested with BLMIS, and the amounts BLMIS transferred to or for the benefit of Legacy within two years of the Filing Date.  Legacy admitted those allegations:

Trustee's Complaint:

> 142.  Prior to the Filing Date, BLMIS transferred at least $213,180,068 from the Legacy Capital Account (the "Initial Transfers")—$126,180,068 to Legacy Capital and $87,000,000 to BNP Paribas for the benefit of Legacy Capital . . . .  Of this amount, $86,505,850 comprised fictitious profits supposedly earned in the Legacy Capital Account and approximately $126,674,218 constituted the return of principal. The Transfers are Customer Property within the meaning of 15 U.S.C. § 78*lll*(4). The Transfers are avoidable and recoverable under sections 544, 548, 550(a), and 551 of the Bankruptcy Code, applicable provisions of SIPA, particularly section 78fff-2(c)(3), applicable provisions of N.Y. C.P.L.R. 203(g) and 213(8); and N.Y. Debt. & Cred. Law sections 273-279.

Legacy's Answer:

> 142. . . . . Legacy admits that, prior to the Filing Date, BLMIS transferred $213,180,068 from the Legacy Capital Account – $126,180,068 to Legacy and $87,000,000 to BNP Paribas. Legacy further admits that $126,674,218 of the $213,180,068 that BLMIS transferred from the Legacy Capital Account constituted the return of principal. Legacy states that the remainder of paragraph 142 of

2

the Amended Complaint contains legal conclusions to which no responsive pleading is required.

Trustee's Complaint:

144. During the two years prior to the Filing Date, BLMIS made transfers from the Legacy Capital Account in the amount of $174,000,000. This included $87,000,000 transferred directly to Legacy Capital and $87,000,000 transferred to BNP Paribas for the benefit of Legacy Capital (the "Two-Year Transfers"). Each of the Two-Year Transfers is avoidable under Bankruptcy Code section 548, and applicable provisions of SIPA, particularly section 78fff-2(c)(3). Each of the Two-Year Transfers is recoverable under section 550(a)(1) of the Bankruptcy Code, and applicable provisions of SIPA, particularly section 78fff-2(c)(3).

Legacy's Answer:

144. Legacy admits that, during the two years prior to the Filing Date, BLMIS made transfers from the Legacy Capital Account in the amount of $174,000,000, and further admits that such amount included $87,000,000 transferred directly to Legacy Capital and $87,000,000 transferred to BNP Paribas. Legacy further states that the remainder of paragraph 144 of the Amended Complaint contains legal conclusions to which no responsive pleading is required.

To support the aggregate deposits and withdrawals in paragraphs 142 and 144, the Trustee's Amended Complaint also details the specific transfers in Exhibit A to the Amended Complaint. (Am. Compl. ¶ 146, Ex. A.)

Legacy ignores these admissions and their significance. Legacy argues it "has not admitted that the $86,505,850 in transfers . . . do indeed constitute fictitious profits and are avoidable under section 548(a)(1)(A)." (Legacy's Opp. at 5.) Legacy further argues that "the Trustee expects this Court and Legacy to simply trust the assertion that $86,505,850 of the funds received by Legacy consist of fictitious profits and that the remainder constitutes principal." (*Id.* at 6.) The Trustee has no such expectation. Rather, the Trustee is merely subtracting the amount of principal Legacy admitted to depositing with BLMIS ($126,674,218) from the amount of total

3

transfers Legacy admitted to receiving from BLMIS ($213,180,068) to conclude Legacy received $86,505,850 in fictitious profits. The law dictates that the difference between a BLMIS investor's withdrawals and deposits constitutes fictitious profits, or customer property that is avoidable by the Trustee. *See Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff Inv. Sec. LLC)*, 654 F.3d 229, 233 (2d Cir. 2011) ("*Net Equity Decision*"), *cert. denied,* 133 S. Ct. 24 (2012) (approving the Net Investment Method to calculate net equity by "crediting the amount of cash deposited by the customer into his or her BLMIS account, less any amounts withdrawn from it."); *Antecedent Debt Decision*, 499 B.R. at 424 ("only a defendant's investment of principal may count as 'value' with respect to the customer property estate for purposes of section 548(c)"); *Greiff,* 476 B.R. at 725 ("those transfers from [BLMIS] to defendants that exceeded the return of defendants' principal, *i.e.,* that constituted profits, were not 'for value.'. . . [T]he transfers must be assessed on the basis of what they really were; and they really were artificial transfers designed to further the fraud, rather than any true return on investments"); *see also Donell v. Kowell,* 533 F.3d 762, 771–72 (9th Cir. 2008) ("Amounts transferred by the Ponzi scheme perpetrator to the investor are netted against the initial amounts invested by that individual. If the net is positive, the receiver has established liability . . . ."); *Scholes v. Lehmann,* 56 F.3d 750, 757 (7th Cir.1995), *cert. denied*, 516 U.S. 1028 (1995); *Sender v. Buchanan (In re Hedged–Invs. Assocs., Inc.*), 84 F.3d 1286, 1290 (10th Cir. 1996)).

     Legacy speculates that there is a possibility—which Legacy admits is remote—that the proceeds of real transactions at BLMIS made their way into Legacy's BLMIS account, whether

4

through commingling, real trades in the early 1990s,[1] or from Madoff's market making business. (Legacy's Opp. at 10.) This is irrelevant. Each BLMIS customer is only entitled to its net equity: if the net equity is positive, the BLMIS customer's claim is allowed, provided a claim was filed; if the net equity is negative, the Trustee can avoid and recover the amount of the negative balance, provided the withdrawals are within the applicable statute of limitations. Crediting to Legacy even one dollar more than its principal would upset the balance of the entire BLMIS liquidation. Furthermore, whether or not Madoff made any profit on Legacy's principal does not change the fact that this is a Ponzi scheme, and those ostensible profits would have been used to pay another investor. In *Scholes v. Lehmann*, 56 F.3d 750, 757–58 (7th Cir. 1995), the Seventh Circuit dismissed a similar argument raised by a Ponzi scheme investor:

> It is no answer that some or for that matter all of Phillips's profit may have come from "legitimate" trades made by the corporations. They were not legitimate. The money used for the trades came from investors gulled by fraudulent representations. Phillips was one of those investors, and it may seem "only fair" that he should be entitled to the profits on trades made with his money. That would be true as between him and [Ponzi scheme perpetrator] or [his] corporations. It is not true as between him and either the creditors of or the other investors in the corporations. He should not be permitted to benefit from a fraud at their expense merely because he was not himself to blame for the fraud. All he is being asked to do is to return the net profits of his investment . . . .

*Id.* The same is true here. As a matter of law, the Net Investment Method applies, and the Trustee may avoid the $86,505,850 in net profits Legacy admittedly received.

Legacy also raises an issue concerning inter-account transfers between certain predecessor accounts and Legacy's BLMIS account. Legacy argues:

---

[1] Legacy cites *Anwar v. Fairfield Greenwich Ltd.*, 728 F. Supp. 2d 372, 389 (S.D.N.Y. 2010) for the proposition that the last legitimate securities trade Madoff made was in 1995. However, that citation is taken from an allegation in the *Anwar* class action plaintiffs' second amended complaint and has no evidentiary value.

5

> Exhibit A to the Amended Complaint shows two transfers from the Non-Legacy Predecessor Accounts funding the Legacy Capital Account on October 2, 2000 in the aggregate amount of $71,755,874. However, the Trustee only gives Legacy "credit" for "transfers of principal in" in the aggregate amount of $48,674,219, a discrepancy of over $23 million. The Trustee does not explain in the Amended Complaint or the Motion how he calculated the alleged principal amounts.

This argument is a red herring.

First, Legacy admitted that "$126,674,218 of the $213,180,068 that BLMIS transferred from the Legacy Capital Account constituted the return of principal." (Ans. ¶ 142.) The $126,674,218 is comprised of Legacy's principal deposits of $78,000,000 plus the $48,674,218 of principal transferred to the account from the predecessor accounts. Thus, Legacy's admission already accounts for the fact that only $48,674,218 of the $71,755,874 transferred from the predecessor accounts was principal. Second, the Trustee's inter-account transfer methodology of crediting to a transferee account only the principal balance in a transferor account has been endorsed by multiple courts. *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 522 B.R. 41, 62 (Bankr. S.D.N.Y. 2014); *Diana Melton Trust v. Picard (In re Bernard L. Madoff Inv. Sec. LLC)*, No. 15 Civ. 1151 (PAE), 2016 WL 183492, at *9-10 (S.D.N.Y. Jan. 14, 2016). Finally, the transfers that comprise the $48,674,218 credit to the Legacy account were disclosed as part of the Trustee's original December 6, 2010 complaint. (Compl. Ex. B, ECF No 1.)

Fact discovery in this case ends on November 21, 2016, less than four weeks from today, and less than three weeks from the date this motion will be heard. On June 21, 2016, the Trustee responded to Legacy's request for documents concerning fictitious profits, stating the Trustee will produce those documents to Legacy if and when counsel executes the undertaking to be bound by the litigation protective order. To date, Legacy's counsel has not executed the undertaking. Thus, in addition to Legacy's arguments lacking any legal merit, its eleventh-hour

6

argument that it suddenly requires discovery from the Trustee is not credible and is belied by its own conduct.

## II. LEGACY'S REFERENCE TO A REJECTED AMICUS BRIEF IS IRRELEVANT

Legacy claims that after filing its Answer on May 16, 2016, it learned that there may be a "meritorious basis" for asserting section 548(c) value defenses based on the arguments raised in an amicus brief filed in the District Court by certain defendants in other adversary proceedings (the "Intervenors"). (*See* Legacy's Br. at 12, citing Amici Brief, *Picard v. Cohen,* No. 16 Civ. 05513 (LTS) (S.D.N.Y. July 12, 2016), ECF Nos. 6, 10-12.)

As an initial matter, this amicus brief was originally filed in the main proceeding (without permission of this Court) five months *before* Legacy's Answer was due. *See* Memorandum of Law (Provisional) of Intervenor-Customers on Value Defense Issues, *In re Madoff Sec.*, Adv. Pro. No. 08-01789 (SMB) (Bankr. S.D.N.Y. Dec. 9, 2015), ECF No. 12224. Furthermore, this Court denied the Intervenors' motion to intervene, or alternatively, to participate as *amicus curiae*, ruling the Intervenors did not raise any new arguments that were not previously rejected, and "hearing them again w[ould] not add value to the disposition of the antecedent debt/value defense in this Court." *Picard v. Cohen,* 550 B.R. 241, 255 (Bankr. S.D.N.Y. 2016).

Earlier this month, the District Court also denied the Intervenors' motion for leave to file the amicus brief for the same reason as the Bankruptcy Court; "allowing [Intervenors'] participation in this proceeding would . . . add no new perspective not already available from the parties." *Picard v. Cohen,* No. 16 Civ. 05513 (LTS) (S.D.N.Y. Oct. 7, 2016), ECF No. 23. The amicus brief is irrelevant here.

Legacy's speculation that there could be additional defenses is fatuous: Legacy raised no viable defenses here, and it has articulated no grounds which could support additional defenses.

7

Equally meritless is Legacy's "preservation" of a section 548(c) defense in the event the *Antecedent Debt Decision* is reversed. Legacy acknowledges it currently has no such defense, and it fails to identify a legal theory on which it could prevail.

## CONCLUSION

In light of the foregoing, the Trustee respectfully requests that this Court grant his motion under Fed. R. Civ. P. 12(c) for judgment on the pleadings.

Dated: New York, New York
      October 25, 2016

Respectfully submitted,

BAKER & HOSTETLER LLP

By:   *s/Oren J. Warshavsky*
     David J. Sheehan
     dsheehan@bakerlaw.com
     Oren J. Warshavsky
     owarshavsky@bakerlaw.com
     45 Rockefeller Plaza, 14th Floor
     New York, NY 10111
     Telephone: 212.589.4200
     Facsimile: 212.589.4201

*Attorneys for Irving H. Picard,*
*Trustee for the Substantively Consolidated*
*SIPA Liquidation of Bernard L. Madoff*
*Investment Securities LLC and the Estate of*
*Bernard L. Madoff*