**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
Irving H. Picard
Email: ipicard@bakerlaw.com
David J. Sheehan
Email: dsheehan@bakerlaw.com
Seanna R. Brown
Email: sbrown@bakerlaw.com
Heather R. Wlodek
Email: hwlodek@bakerlaw.com

*Attorneys for Irving H. Picard, Trustee for the*
*Substantively Consolidated SIPA Liquidation of*
*Bernard L. Madoff Investment Securities LLC*
*and the Estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, <br><br> Plaintiff-Applicant, <br><br> v. <br><br> BERNARD L. MADOFF INVESTMENT SECURITIES LLC, <br><br> Defendant. | Adv. Pro. No. 08-01789 (SMB) <br><br> SIPA Liquidation <br><br> (Substantively Consolidated) |
| In re: <br><br> BERNARD L. MADOFF, <br><br> Debtor. | |

**TRUSTEE'S SIXTEENTH INTERIM REPORT**
**FOR THE PERIOD APRIL 1, 2016 THROUGH SEPTEMBER 30, 2016**

# TABLE OF CONTENTS

**Page**

I.      EXECUTIVE SUMMARY ...................................................................................1

II.     BACKGROUND .................................................................................................3

III.    FINANCIAL CONDITION OF THE ESTATE ..................................................3

IV.     ADMINISTRATION OF THE ESTATE .............................................................4

      A.      Marshaling And Liquidating The Estate Assets .......................................4

V.      CLAIMS ADMINISTRATION ...........................................................................5

      A.      Claims Processing .....................................................................................5

            i.       Customer Claims .............................................................................5

            ii.      General Creditor Claims .................................................................6

            iii.     The Trustee Has Kept Customers Informed Of The Status
                    Of The Claims Process ....................................................................6

            iv.      The Hardship Program .....................................................................7

      B.      Objections To Claims Determinations ......................................................9

      C.      Settlements Of Customer Claims Disputes .............................................10

VI.     PROCEEDINGS RELATED TO THE INTERPRETATION OF SIPA ...........10

      A.      Net Equity Dispute ..................................................................................10

      B.      Time-Based Damages ..............................................................................13

      C.      "Customer" Definition .............................................................................15

      D.      Fact-Based Objections .............................................................................22

      E.      Inter-Account Transfers ..........................................................................22

      F.      Profit-Withdrawal Issue ..........................................................................25

VII.    RECOVERIES AND CONTINGENCIES .........................................................29

      A.      Recoveries Accomplished During Prior Report Periods .........................29

      B.      Recoveries Accomplished During This Report Period ...........................29

      C.      Earlier Settlements ..................................................................................30

VIII.   THE TRUSTEE'S ALLOCATION OF FUNDS AND  DISTRIBUTIONS
      TO CUSTOMERS ..............................................................................................30

      A.      The Customer Fund ..................................................................................30

      B.      The Trustee's Initial Allocation of Property to the Fund of Customer
            Property and Authorizing the First Interim Distribution to Customers ...............31

      C.      The Trustee's Second Allocation of Property to the Fund of Customer
            Property and Authorizing the Second Interim Distribution to Customers ...........32

# TABLE OF CONTENTS

(continued)

Page

D.    The Trustee's Third Allocation of Property to the Fund of Customer Property and Authorizing the Third Interim Distribution to Customers...............34

E.    The Trustee's Fourth Allocation of Property to the Fund of Customer Property and Authorizing the Fourth Interim Distribution to Customers............35

F.    The Trustee's Fifth Allocation of Property to the Fund of Customer Property and Authorizing the Fifth Interim Distribution to Customers...............36

G.    The Trustee's Sixth Allocation of Property to the Fund of Customer Property and Authorizing the Sixth Interim Distribution to Customers..............37

H.    The Trustee's Seventh Allocation of Property to the Fund of Customer Property and Authorizing the Seventh Interim Distribution to Customers ...........................................................................39

I.    The General Estate ...............................................................41

IX.    LITIGATION.............................................................................41

A.    The District Court—Motions to Withdraw the Reference, Motions to Dismiss and Related Appeals.............................................................41

    i.    Proceedings Relating to Motions to Withdraw .........................41

        (a)    The Administrative Order .................................................41

        (b)    Consolidated Briefing Orders .......................................42

        (c)    The 546(e) Appeal ..........................................................46

B.    Litigation in the Bankruptcy Court and Related Appeals......................47

        (a)    Resolution of Good Faith Avoidance Actions..............47

        (b)    Picard v. Andrew H. Cohen, Adv. Pro. No. 10-04311 .................48

        (c)    Extraterritoriality...........................................................51

    i.    Subsequent Transferee Actions....................................53

    ii.    Bad Faith/Feeder Fund Actions ....................................55

        (a)    The HSBC Action .........................................................55

        (b)    The Luxalpha Action ....................................................57

        (c)    Picard v. Avellino ........................................................61

        (d)    Picard v. Cohmad Sec. Corp. .....................................63

        (e)    Picard v. Kingate..........................................................65

        (f)    Picard v. J. Ezra Merkin...............................................69

        (g)    Picard v. Legacy Capital Limited ................................74

        (h)    Picard v. Magnify Inc. .................................................75

# TABLE OF CONTENTS
(continued)

**Page**

      (i)    Picard v. Andrew H. Madoff ........................................................ 77

      (j)    Picard v Rye/Tremont ................................................................ 79

      (k)    Picard v. Stanley Shapiro .......................................................... 80

      (l)    Picard v. ABN AMRO Bank N.A. .............................................. 81

      (m)    Picard v. ABN AMRO (Ireland) Ltd. (Fortis) ............................. 85

      (n)    Picard v. Nomura Int'l plc .......................................................... 89

      (o)    Picard v. BNP Paribas ............................................................... 93

      (p)    Picard v. Citibank ...................................................................... 94

      (q)    Picard v. Merrill Lynch .............................................................. 98

      (r)    Picard v. Richard M. Glantz ...................................................... 102

      (s)    Picard v. Fairfield Greenwich .................................................... 104

      (t)    Picard v. Square One ................................................................. 107

  C.    Injunction Proceedings .......................................................................... 110

      i.    Picard v. Marshall ..................................................................... 110

      ii.    Picard v. A&G Goldman Partnership ......................................... 113

X.    INTERNATIONAL INVESTIGATION AND LITIGATION ........................ 114

  A.    Austria ................................................................................................... 115

  B.    Bermuda ................................................................................................ 115

  C.    BVI ........................................................................................................ 115

  D.    England ................................................................................................. 116

  E.    Ireland .................................................................................................. 116

  F.    Israel ..................................................................................................... 116

  G.    Switzerland and Luxembourg ............................................................... 116

XI.    FEE APPLICATIONS AND RELATED APPEALS ................................... 116

  A.    Objections to Prior Fee Applications .................................................... 116

  B.    Twentieth Fee Application .................................................................... 117

  C.    Twenty-First Fee Application ............................................................... 117

XII.    CONCLUSION ......................................................................................... 118

TO THE HONORABLE STUART M. BERNSTEIN
UNITED STATES BANKRUPTCY JUDGE:

Irving H. Picard, Esq. (the "Trustee"), as Trustee for the substantively consolidated

liquidation proceeding of Bernard L. Madoff Investment Securities LLC ("BLMIS"), under the

Securities Investor Protection Act ("SIPA"),[1] 15 U.S.C. §§ 78aaa *et seq.*, and the estate of

Bernard L. Madoff ("Madoff," and together with BLMIS, each a "Debtor" and collectively, the

"Debtors"), respectfully submits his Sixteenth Interim Report (this "Report") pursuant to SIPA

§ 78fff-1(c) and this Court's Order on Application for an Entry of an Order Approving Form and

Manner of Publication and Mailing of Notices, Specifying Procedures For Filing, Determination,

and Adjudication of Claims; and Providing Other Relief entered on December 23, 2008 (the

"Claims Procedures Order") (ECF No. 12).[2]  Pursuant to the Claims Procedures Order, the

Trustee shall file additional interim reports every six (6) months.  This Report covers the period

between April 1, 2016 and September 30, 2016 (the "Report Period").

## I.    EXECUTIVE SUMMARY

1.    The Trustee has worked relentlessly for nearly eight years to recover customer

property and distribute it to BLMIS customers.  Through pre-litigation and other settlements, the

Trustee has successfully recovered or reached agreements to recover, more than $11.2 billion

through the Report Period—more than 63% of the currently estimated principal lost in the Ponzi

scheme by those who filed claims—for the benefit of all BLMIS customers with allowed

claims.[3]

---

[1] For convenience, subsequent references to SIPA will omit "15 U.S.C."

[2] All ECF references refer to pleadings filed in the main adversary proceeding pending before this Court, *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, Adv. No. 08-01789 (BRL) (Bankr. S.D.N.Y.), unless otherwise noted.

[3] Almost $20 billion of principal was lost in the Ponzi scheme in total.  Of the $20 billion, approximately $17.5 billion of principal was lost by those who filed claims.

2.     On June 15, 2016, this Court entered an Order Approving the Trustee's Seventh Allocation of Property to the Fund of Customer Property and Authorizing a Seventh Interim Distribution to Customers, in which the Trustee allocated approximately $271.333 million[4] to the Customer Fund.  On June 30, 2016, the Trustee distributed approximately $190.247 million on allowed claims relating to 972 accounts, or 1.305% of each customer's allowed claim, unless the claim was fully satisfied.  When combined with the approximately $685.279 million First Interim Distribution, the $4.978 billion Second Interim Distribution, the $696.277 million Third Interim Distribution, the $468.223 million Fourth Interim Distribution, the $403.409 million Fifth Interim Distribution, the $1.209 billion Sixth Interim Distribution, and $836.633 million in advances paid or committed to be paid by the Securities Investor Protection Corporation ("SIPC"),[5] the Trustee has distributed approximately $9.467 billion to BLMIS customers, with 1,297 BLMIS accounts fully satisfied.  The 1,297 fully satisfied accounts represent over 57% of accounts with allowed claims, demonstrating that the Trustee has made significant progress in returning customer property to BLMIS customers.  See discussion *infra* in Section VIII.

3.     The Trustee and his counsel (including, but not limited to, Baker & Hostetler LLP ("B&H"), Windels Marx Lane & Mittendorf, LLP ("Windels Marx"), and various special counsel retained by the Trustee ("Special Counsel") (collectively, "Counsel"), continued to litigate hundreds of individual cases before this Court, the United States District Court for the

---

[4]  The total amount allocated in the Seventh Allocation and Seventh Interim Distribution Motion was $247,012,857.10, which represented all recoveries subsequent to the Sixth Interim Distribution and through May 20, 2016.  Between the filing of that motion and the Seventh Interim Distribution date, an additional $24,320,579.12 was recovered and included in the numerator.

[5]  SIPC has advanced over $834.4 million to date to the Trustee to pay allowed claims.  The difference between the amount committed to pay by SIPC and the amount actually advanced to customers depends on whether the Trustee has received an executed assignment and release from the customer. Thus, the amount of SIPC advances requested by the Trustee and paid for allowed customer claims is less than the amount of SIPC advances committed by the Trustee.

Southern District of New York (the "District Court"), the United States Court of Appeals for the Second Circuit (the "Second Circuit"), the Supreme Court, and dozens of international courts.

4.     This Report is meant to provide an overview of the efforts of the Trustee and his team of professionals in unwinding the largest Ponzi scheme in history.  Billions of dollars and thousands of people and entities located across the world were involved in this fraud.  The Trustee continues to work diligently to coordinate the administration, investigation, and litigation to maximize efficiencies and reduce costs.

5.     All Interim Reports, along with a complete docket and substantial information about this liquidation proceeding, are located on the Trustee's website, www.madofftrustee.com (the "Trustee Website").

## II.     BACKGROUND

6.     The Trustee's prior interim reports, each of which is fully incorporated herein,[6] have detailed the circumstances surrounding the filing of this case and the events that have taken place during prior phases of this proceeding.

## III.     FINANCIAL CONDITION OF THE ESTATE

7.     No administration costs, including the compensation of the Trustee and his counsel, are being paid out of recoveries obtained by the Trustee for the benefit of BLMIS customers.  Rather, the fees and expenses of the Trustee, his counsel and consultants, and

---

[6] Prior reports cover the periods from December 11, 2008 to June 30, 2009 (the "First Interim Report") (ECF No. 314); July 1, 2009 to October 31, 2009 (the "Second Interim Report") (ECF No. 1011); November 1, 2009 to March 31, 2010 (the "Amended Third Interim Report") (ECF No. 2207); April 1, 2010 to September 30, 2010 (the "Fourth Interim Report") (ECF No. 3038); October 1, 2010 to March 31, 2011 (the "Fifth Interim Report") (ECF No. 4072); April 1, 2011 to September 30, 2011 (the "Sixth Interim Report") (ECF No. 4529); October 1, 2011 to March 31, 2012 (the "Seventh Interim Report") (ECF No. 4793); April 1, 2012 to September 30, 2012 (the "Eighth Interim Report") (ECF No. 5066); October 1, 2012 to March 31, 2013 (the "Ninth Interim Report") (ECF No. 5351); April 1, 2013 to September 30, 2013 (the "Tenth Interim Report") (ECF No. 5554); October 1, 2013 to March 31, 2014 (the "Eleventh Interim Report") (ECF No. 6466); April 1, 2014 to September 30, 2014 (the "Twelfth Interim Report") (ECF No. 8276); October 1, 2014 through March 31, 2015 (the "Thirteenth Interim Report") (ECF No. 9895); April 1, 2015 through September 30, 2015 (the "Fourteenth Interim Report") (ECF No. 11912) and October 1, 2015 through March 31, 2016 (the "Fifteenth Interim Report") (ECF No. 13184).

administrative costs incurred by the Trustee are paid from administrative advances from SIPC. These costs are chargeable to the general estate and have no impact on recoveries that the Trustee has obtained or will obtain. Thus, recoveries from litigation, settlements, and other means will be available in their entirety for the satisfaction of customer claims.

8.     A summary of the financial condition of the estate as of September 30, 2016 is provided in Exhibit A attached hereto.

9.     This summary reflects cash of $24,641,794.38, short term investments, money market deposit accounts, certificates of deposit and other minor investments of $364,543,038 and short-term United States Treasuries in the amount of $2,007,971,594. *See* Exhibit A, page 3, note (3) and page 5, notes (4) and (5).

10.     As detailed in Exhibit A, as of September 30, 2016, the Trustee requested and SIPC has advanced $2,224,345,203.02, of which $834,417,302.24 was used to pay allowed customer claims up to the maximum SIPA statutory limit of $500,000 per account,[7] and $1,389,927,900.78 was used for administrative expenses. *See* Exhibit A, page 1.

### IV.     ADMINISTRATION OF THE ESTATE

#### A.     Marshaling And Liquidating The Estate Assets

11.     The Trustee and his Counsel have worked diligently to investigate, examine, and evaluate the Debtor's activities, assets, rights, liabilities, customers, and other creditors. Thus far, the Trustee has been successful in recovering or entering into agreements to recover a significant amount of assets for the benefit of customers, totaling over $11.2 billion through September 30, 2016. For a more detailed discussion of prior recoveries, *see* Section V.B. of the

---

[7] The Trustee must receive an executed assignment and release from each customer before receiving and releasing an advance of funds from SIPC. Thus, the amount of SIPC advances requested by the Trustee and paid for allowed customer claims that have been determined is less than the amount of SIPC advances committed by the Trustee. *See supra* note 4.

First Interim Report; Section IV of the Second, Amended Third, and Fourth Interim Reports; Section VII of the Fifth Interim Report; Section IV of the Sixth Interim Report; and Section VII of the Seventh through Fifteenth Interim Reports.

12.    The Trustee has identified claims in at least eight shareholder class action suits that BLMIS filed before the Trustee's appointment arising out of its proprietary and market making desk's ownership of securities.  As of the Sixteenth Interim Report, the Trustee had received distributions from seven of these class action settlements totaling over $91,000.  The Trustee has not and will not receive any distributions from the eighth class action settlement.  In addition, the Trustee has identified claims that BLMIS may have in 190 other class action suits also arising out of its proprietary and market making activities.  The Trustee has filed proofs of claim in 124 of these cases and, based on a review of relevant records, has declined to pursue claims in 56 additional cases.  Subject to the completion of a review of relevant records, the Trustee intends to file claims in the remaining 10 cases.  As of September 30, 2016, the Trustee has recovered $1,727,390.42 from settlements relating to 59 of the 124 claims filed directly by the Trustee, of which $72.38 was recovered during the Report Period.

## V.    CLAIMS ADMINISTRATION

### A.    Claims Processing

#### i.    Customer Claims

13.    During the Report Period, the Trustee allowed $110,847.65 in customer claims. This brings the total amount of allowed claims as of September 30, 2016 to $15,080,002,679.40. The Trustee has paid or committed to pay $836,633,073.63 in cash advances from SIPC.  This is the largest commitment of SIPC funds of any SIPA liquidation proceeding and greatly exceeds the total aggregate payments made in all SIPA liquidations to date.

14.    As of September 30, 2016, there were 71 claims relating to 48 accounts that were "deemed determined," meaning the Trustee has instituted litigation against those accountholders and related parties.  The complaints filed by the Trustee in those litigations set forth the express grounds for disallowance of customer claims under § 502(d) of the Bankruptcy Code. Accordingly, such claims will not be allowed until the avoidance actions are resolved by settlement or otherwise and the judgments rendered against the claimants in the avoidance actions are satisfied.

### ii.    General Creditor Claims

15.    As of September 30, 2016, the Trustee had received 427 timely and 22 untimely filed secured and unsecured priority and non-priority general creditor claims totaling approximately $1.7 billion.  The claimants include vendors, taxing authorities, employees, and customers filing claims on non-customer proof of claim forms.  Of these 427 claims and $1.7 billion, the Trustee has received 94 general creditor claims and 49 broker-dealer claims totaling approximately $264.9 million.  At this time, the BLMIS estate has no funds from which to make distributions to priority/non-priority general creditors and/or broker dealers.

### iii.    The Trustee Has Kept Customers Informed Of The Status Of The Claims Process

16.    Throughout the liquidation proceeding, the Trustee has kept customers, interested parties, and the public informed of his efforts by maintaining the Trustee Website, a toll-free customer hotline, conducting a Bankruptcy Code § 341(a) meeting of creditors on February 20, 2009, and responding to the multitude of phone calls, e-mails, and letters received on a daily basis, from both claimants and their representatives.

17.    The Trustee Website allows the Trustee to share information with claimants, their representatives, and the general public regarding the ongoing recovery efforts and the overall

liquidation. In addition to court filings, media statements, and weekly information on claims determinations, the Trustee Website includes up-to-date information on the status of Customer Fund recoveries, an "Ask the Trustee" page where questions of interest are answered and updated, a letter from the Trustee's Chief Counsel on litigation matters, a detailed distribution page, an FAQs page, and a timeline of important events. The Trustee Website is monitored and updated on a daily basis.

18.     In addition, the Trustee Website allows claimants to e-mail their questions directly to the Trustee's professionals, who follow up with a return e-mail or telephone call to the claimants. As of September 30, 2016, the Trustee and his professionals had received and responded to more than 7,100 e-mails via the Trustee Website from BLMIS customers and their representatives.

19.     The toll-free customer hotline provides status updates on claims and responses to claimants' questions and concerns. As of September 30, 2016, the Trustee, B&H, and the Trustee's professionals had fielded more than 8,200 calls from claimants and their representatives.

20.     In sum, the Trustee and his team have endeavored to respond in a timely manner to every customer inquiry and ensure that customers are as informed as possible about various aspects of the BLMIS proceeding.

**iv.     The Hardship Program**

21.     At the commencement of claims administration, the Trustee established the Hardship Program to accelerate the determination of claims and the receipt of SIPC protection up to $500,000 for individual account holders who were dealing with hardship. An individual could qualify for the Hardship Program if he or she filed a claim and was unable to pay for necessary living or medical expenses, over 65 years old and forced to reenter the work force after

retirement, declaring personal bankruptcy, unable to pay for the care of dependents, or suffering from extreme financial hardship beyond the identified circumstances.

22.     As of December 11, 2010, the Trustee had received 394 Hardship Program applications.  The Trustee obtained advances from SIPC and issued 122 checks to hardship applicants with allowed claims.  The Trustee also worked in good faith with approved applicants to reconcile any disputed portions of their claims.  Of the 394 Hardship Program applications received prior to December 11, 2010, the Trustee assessed the information provided and, in the exercise of his discretion, decided not to commence avoidance actions against 249 hardship applicants.

23.     The Trustee expanded the Hardship Program into a second phase as he instituted avoidance actions.  While the law requires the Trustee to pursue avoidance actions to recover customer property, the Trustee has stated that he will not pursue avoidance actions against BLMIS accountholders suffering proven hardship.  In order to forego an avoidance action, the Trustee needed financial information about the accountholder.  Thus, the Trustee announced in November 2010 that the Hardship Program would focus on avoidance action defendants and requested that accountholders come forward to share information regarding their hardships. Through this program, the Trustee has worked with a substantial number of hardship applicants who were subject to avoidance actions to confirm their hardship status and forego the pursuit of an avoidance action.

24.     As of September 30, 2016, the Trustee had received 444 applications from avoidance action defendants relating to 291 adversary proceedings.  After reviewing the facts and circumstances presented in each application and, in many cases, requesting additional verifying information, the Trustee dismissed 259 Hardship Program applicants-defendants from

avoidance actions.  As of September 30, 2016, there were 41 applications still under review and

403 that were resolved because they were either withdrawn by the applicant, deemed withdrawn

for failure of the applicant to pursue the application, denied for lack of hardship or referred for

consideration of settlement.[8]  The Trustee has also extended the time for applicants to answer or

otherwise respond to avoidance action complaints while their Hardship Program applications are

pending.

25.    The Trustee established a Hardship Program Hotline with a telephone number and

electronic mail address.  A large number of potential applicants have been assisted by the Trustee

through the use of the Hotline, and the Trustee urges customers to continue using this resource

and the Hardship Program if they believe they qualify.  Further information and applications are

available on the Trustee Website.

**B.    <u>Objections To Claims Determinations</u>**

26.    As required by the Claims Procedures Order and described in each determination

letter sent by the Trustee ("Determination Letter"), BLMIS claimants have thirty days from the

date of a Determination Letter to object to the Trustee's determination of their claim.  Claimants

who disagree with the Trustee's determination of their claim must file with the Court a written

opposition setting forth the grounds of disagreement and provide the Trustee with the same.  A

hearing date will be obtained by the Trustee, and claimants will be notified of that date.  As of

September 30, 2016, 2,051 objections (which exclude withdrawn objections and include

duplicates, amendments, and supplements) have been filed with the Court.  These objections

relate to 3,633 unique claims and 977 accounts.  877 objections remained as of September 30,

2016.

---

[8] The hardship data reported herein has been updated to reflect a reconciliation undertaken by the Trustee that identified and eliminated instances of double-counting where a single hardship application was submitted on behalf of multiple defendants.

27.     The following objections, among others, have been asserted: Congress intended a broad interpretation of the term "customer" and the statute does not limit the definition to those who had a direct account with BLMIS, the Trustee should determine claims based upon the BLMIS November 30, 2008 statement as opposed to the court-approved cash in-cash out or "Net Investment Method," claimants should receive interest on deposited amounts, the Trustee must commence an adversary proceeding against each claimant in order to avoid paying gains on claimants' investments, claimants paid income taxes on distributions and their claims should be adjusted by adding all amounts they paid as income taxes on fictitious profits, each person with an interest in an account should be entitled to the SIPC advance despite sharing a single BLMIS account, and there is no legal basis for requiring the execution of a Assignment and Release prior to prompt payment of a SIPC advance.

28.     The Trustee has departed from past practice in SIPA proceedings and paid or committed to pay the undisputed portion of any disputed claim in order to expedite payment of SIPC protection to customers, while preserving their right to dispute the total amount of their claim.

**C.    Settlements Of Customer Claims Disputes**

29.     As of September 30, 2016, the Trustee had reached agreements relating to 885 accounts and with the IRS (which did not have a BLMIS account).  These litigation, pre-litigation, and avoidance action settlements allowed the Trustee to avoid the litigation costs that would have been necessary to obtain and collect judgments from these customers.

**VI.    PROCEEDINGS RELATED TO THE INTERPRETATION OF SIPA**

**A.    Net Equity Dispute**

30.     For purposes of determining each customer's Net Equity, as that term is defined under SIPA, the Trustee credited the amount of cash deposited by the customer into his BLMIS

10

account, less any amounts already withdrawn from that BLMIS customer account, also known as the Net Investment Method. Some claimants argued that the Trustee was required to allow customer claims in the amounts shown on the November 30, 2008 customer statements (the "Net Equity Dispute").

31.     This Court issued a decision on March 1, 2010 upholding the Trustee's Net Investment Method as the only interpretation consistent with the plain meaning and legislative history of the statute, controlling Second Circuit precedent, and considerations of equity and practicality. (ECF No. 2020); *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 424 B.R. 122 (Bankr. S.D.N.Y. 2010). This Court certified an immediate appeal to the Second Circuit (ECF No. 2467), which heard oral argument on March 3, 2011.

32.     On August 16, 2011, the Second Circuit affirmed this Court's decision and the Trustee's Net Investment Method, holding that it would have been "legal error" for the Trustee to discharge claims for securities under SIPA "upon the false premise that customers' securities positions are what the account statements purport them to be." *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d 229, 241 (2d Cir. 2011). Any calculation other than the Net Investment Method would "aggravate the injuries caused by Madoff's fraud." *Id*. at 235. Instead, the Net Investment Method prevents the "whim of the defrauder" from controlling the process of unwinding the fraud. *Id*.

33.     Under the Second Circuit's decision, the relative position of each BLMIS customer account must be calculated based on "unmanipulated withdrawals and deposits" from its opening date through December 2008. *Id*. at 238. If an account has a positive cash balance, that accountholder is owed money from the estate. As a corollary, if an account has a negative cash balance, the accountholder owes money to the estate. Both the recovery and distribution of

customer property in this case are centered on the principle that the Trustee cannot credit "impossible transactions." *Id*. at 241. If he did, then "those who had already withdrawn cash deriving from imaginary profits in excess of their initial investment would derive additional benefit at the expense of those customers who had not withdrawn funds before the fraud was exposed." *Id*. at 238.

34. First, the Second Circuit found, "in the context of this Ponzi scheme—the Net Investment Method is . . . more harmonious with provisions of the Bankruptcy Code that allow a trustee to avoid transfers made with the intent to defraud . . . and 'avoid[s] placing some claims unfairly ahead of others.'" *Id*. at 242 n.10 (quoting *Jackson v. Mishkin (In re Adler, Coleman Clearing Corp.)*, 263 B.R. 406, 463 (S.D.N.Y. 2001)). Thus, the Trustee is obligated to use the avoidance powers granted by SIPA and the Bankruptcy Code to prevent one class of customers—the "net winners" or those with avoidance liability—from having the benefit of Madoff's fictitious trades at the expense of the other class of customers—the "net losers," or those who have yet to recover their initial investment.

35. Next, the Second Circuit explained that "notwithstanding the BLMIS customer statements, there were no securities purchased and there were no proceeds from the money entrusted to Madoff for the purpose of making investments." *Id*. at 240. Therefore any "[c]alculations based on made-up values of fictional securities would be 'unworkable' and would create 'potential absurdities.'" *Id*. at 241 (quoting *In re New Times Sec. Serv., Inc.*, 371 F.3d 68, 88 (2d Cir. 2004)). Thus, the Second Circuit rejected reliance upon the BLMIS account statements, finding that, to do otherwise, "would have the absurd effect of treating fictitious and arbitrarily assigned paper profits as real and would give legal effect to Madoff's machinations." *Id*. at 235.

36.     On September 6, 2011, certain claimants filed a petition for panel rehearing, or, in the alternative, for rehearing *en banc*. *Sterling Equities Assoc. v. Picard*, Adv. No. 10-2378 (2d Cir.) (ECF Nos. 505, 537).   The panel that determined the appeal considered the request for panel rehearing, the active members of the Court considered the request for rehearing *en banc*, and on November 8, 2011, both denied the petition.  (ECF No. 551).

37.     Three petitions for certiorari were filed with the Supreme Court.   On June 25, 2012, the Supreme Court denied certiorari in two of the petitions. *Ryan v. Picard*, 133 S. Ct. 24 (2012); *Velvel v. Picard*, 133 S. Ct. 25 (2012).   Certiorari was also dismissed with respect to one appeal.  *Sterling Equities Assoc. v. Picard*, 132 S. Ct. 2712 (2012).

## B.    <u>Time-Based Damages</u>

38.     Following the Supreme Court decision denying certiorari regarding the Net Investment Method, the Trustee filed a motion seeking the affirmance of his calculations of net equity, and denying certain claimants' request for "time-based damages."   (ECF Nos. 5038, 5039).   The Trustee took the position that customers were not entitled to an inflation-based adjustment to their allowed customer claims.

39.     Over the objections of hundreds of parties, the Court granted the Trustee's motion, finding that claimants were not entitled to time-based damages as part of their net equity claims against the fund of customer property (the "Time-Based Damages Decision").   (ECF No. 5463).

40.     Thereafter, the parties submitted a letter requesting that the Court certify a direct appeal of the Time-Based Damages Decision to the Second Circuit under 28 U.S.C. § 158(d)(2). (ECF No. 5488).   On September 24, 2013, the Court certified the Time-Based Damages Decision for a direct appeal to the Second Circuit, (ECF No. 5514), which was accepted on January 22,

2014. *In re Bernard L. Madoff Inv. Sec. LLC*, No. 14-97(L) (2d Cir. Jan. 22, 2014). Oral argument took place on October 14, 2014.

41.     On February 20, 2015, the Second Circuit affirmed the Bankruptcy Court's decision, holding that "SIPA's scheme disallows an inflation adjustment as a matter of law" and that the SEC was not owed *Skidmore* or *Chevron* deference. *See In re Bernard L. Madoff Inv. Sec. LLC*, 779 F.3d 74, 80, 82 (2d Cir. 2015) ("*Net Equity Decision*"). The Court also held that "an interest adjustment to customer net equity claims is impermissible under SIPA's scheme." *Id.* at 83.

42.     Under the Second Circuit's decision, a customer's net equity claim, calculated in accordance with the *Net Equity Decision*, will not be adjusted for inflation or interest. The Second Circuit explained that "an inflation adjustment goes beyond the scope of SIPA's intended protections and is inconsistent with SIPA's statutory framework." *Id.* at 79. Nor does SIPA provide for compensation related to any opportunity cost of the use of such money during the pendency of the liquidation proceedings. *Id.* at 80. While SIPA operates to "facilitate the proportional distribution of customer property actually held by the broker," *Id.* at 81, "the Act . . . restores investors to what their position would have been in the absence of liquidation." *Id.* at 79. For similar reasons, the Second Circuit rejected the request of one claimant who sought an adjustment for interest, in addition to inflation. *Id.* at 83.

43.     Certain claimants urged the Court to apply deference to the SEC's view, which supported their position that customer claims were deserving of an inflation-based adjustment. While the SEC clarified that it did not seek deference at all, but if it were, it would have been *Skidmore*, a more fluid level of deference than the kind sought by the claimants. Nevertheless, the Second Circuit held that no deference was owed to the SEC's views in this case. *Id.* at 82.

44.     The claimants did not file a petition for rehearing in the Second Circuit.   A petition for a writ of certiorari in the Supreme Court was filed on July 20, 2015.   On July 23, 2015 and July 24, 2015, the Trustee and SIPC waived their rights to respond to the petition.   On August 21, 2015, a brief was filed in support of the petition by other BLMIS customers.   On September 9, 2015, the petition was distributed to the Justices for a conference on September 28, 2015.  On October 5, 2015, the Supreme Court declined to review the petition.

**C.      "Customer" Definition**

45.     The Trustee's position consistently has been that only those claimants who maintained an account at BLMIS constitute "customers" of BLMIS, as defined in § 78*lll*(2) of SIPA.  Where it appeared that claimants did not have an account in their names at BLMIS ("Claimants Without An Account"), the Trustee denied their claims for securities and/or a credit balance on the ground that they were not customers of BLMIS under SIPA.

46.     On June 11, 2010, the Trustee filed a Motion For An Order To Affirm Trustee's Determinations Denying Claims of Claimants Without BLMIS Accounts in Their Names, Namely, Investors in Feeder Funds.  (ECF Nos. 2410–2413, 2416).  The motion addressed only those claimants whose claims emanated from their direct or indirect investments in sixteen so-called feeder funds that, in turn, had accounts with and invested directly with BLMIS.

47.     This Court held a hearing on October 19, 2010.  On June 28, 2011, this Court issued a Memorandum Decision and Order affirming the Trustee's denial of these claims.  (ECF Nos. 3018, 4193, 4209); *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 454 B.R. 285 (Bankr. S.D.N.Y. 2011).

48.     This Court found that, in light of the plain language of SIPA and relevant case law, the investor-claimants did not qualify as "customers" under SIPA.  This Court found that the objecting claimants invested in, not through, the feeder funds, and had no individual accounts

15

at BLMIS. It was the feeder funds who entrusted their monies with BLMIS for the purpose of trading or investing in securities—the touchstone of "customer" status—whereas the objecting claimants purchased ownership interests in the feeder funds. This Court held that, absent a direct broker-dealer relationship with BLMIS, the objecting claimants sought a definition of "customer" that stretched the term beyond its limits.

49.     Judge Lifland put it succinctly: the objecting-claimants who invested in sixteen feeder funds did not qualify as "customers" because they "had no securities accounts at BLMIS, were not known to BLMIS, lacked privity and any financial relationship with BLMIS, lacked property interests in any Feeder Fund account assets at BLMIS, entrusted no cash or securities to BLMIS, had no investment discretion over Feeder Fund assets invested with BLMIS, received no account statements or other communications from BLMIS and had no transactions reflected on the books and records of BLMIS . . . ." *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 454 B.R. at 290.

50.     Twenty-seven notices of appeal were filed and assigned to United States District Judge Denise L. Cote. *See Aozora Bank Ltd. v. Sec. Investor Prot. Corp.*, No. 11-cv-05683 (DLC) (S.D.N.Y.). On January 4, 2012, Judge Cote affirmed the June 28, 2011 order of this Court. *See Aozora Bank Ltd. v. Sec. Investor Prot. Corp.*, 480 B.R. 117 (S.D.N.Y. 2012). In that decision, Judge Cote determined in light of SIPA, the "most natural reading of the 'customer' definition excludes persons like the appellants who invest in separate third-party corporate entities like their feeder funds that in turn invest their assets with the debtor." *Id.* at 123. Thus, the District Court held that the feeder funds were the BLMIS customers and the appellants were precluded from seeking separate recoveries as additional SIPA claimants. *Id.* at 129–30.

51.    On January 6, 2012, four appeals were taken from Judge Cote's order to the Second Circuit.  *See Bricklayers and Allied Craftsman Local 2 Annuity Fund v. Sec. Investor Prot. Corp., Irving H. Picard*, No. 12-410 (2d Cir. Jan. 31, 2012); *Rosamilia v. Sec. Investor Prot. Corp., Irving H. Picard*, No. 12-437 (2d Cir. Feb. 2, 2012); *Kruse v. Sec. Investor Prot. Corp., Irving H. Picard*, No. 12-483 (2d Cir. Feb. 6, 2012); *Upstate N.Y. Bakery Drivers and Indus. Pension Fund v. Sec. Investor Prot. Corp., Irving H. Picard*, No. 12-529 (2d Cir. Feb. 3, 2012).  On February 22, 2013, the Second Circuit affirmed the decisions of the District Court and the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").  *See Kruse v. Sec. Investor Prot. Corp., Irving H. Picard,* 708 F.3d 422 (2d Cir. 2013).

52.    On another matter involving the interpretation of the "customer" definition, on October 5, 2011, the Trustee moved before this Court for an order establishing a briefing schedule and hearing to affirm his determination that ERISA did not alter his denial of "customer" status to certain claimants.  (ECF No. 4432).  This Court entered a scheduling order on November 8, 2011.  (ECF No. 4507).

53.    On November 14, 2011, the Trustee filed his Motion For An Order Affirming Trustee's Determinations Denying Claims Over ERISA-Related Objections.  (ECF No. 4521) (the "ERISA Motion").  On or around January 17, 2012, approximately eighteen opposition briefs to the ERISA Motion were filed on behalf of various ERISA claimants.  (ECF Nos. 4625–4628, 4631–4633, 4635, 4637–4643, 4652–4654).  On March 2, 2012, the Trustee filed his Memorandum in Support of the Trustee's Motion For An Order Affirming Trustee's Determinations Denying Claims Over ERISA-Related Objections.  (ECF No. 4703).  On April 2, 2012, five replies to the ERISA Motion were filed on behalf of various ERISA claimants.  (ECF

Nos. 4746, 4748, 4750, 4755, 4756).  The Trustee's sur-reply was filed on April 20, 2012.  (ECF

No. 4781).

54.     During the pendency of the above briefing, certain ERISA claimants also filed

motions to withdraw the reference on the ERISA Motion from this Court to the District Court.

*See Sec. Investor Prot. Corp. v. Jacqueline Green Rollover Account*, No. 12-cv-01039-DLC

(S.D.N.Y. Aug. 6, 2012) (filed on behalf of J. X. Reynolds & Co. Deferred Profit Sharing Plan,

Jacqueline Green Rollover Account and Wayne D. Green Rollover Account); *Sec. Investor Prot.

Corp. v. I.B.E.W. Local 241 Pension Fund*, No. 12-cv-01139-DLC (S.D.N.Y. Aug. 6, 2012)

(filed on behalf of thirty-seven ERISA plan claimants).  On February 28, 2012 and March 1,

2012, these motions were accepted as related to the appeals decided by Judge Cote in *Aozora

Bank*, 480 B.R. 117 (S.D.N.Y. 2012), discussed above, and were re-assigned to Her Honor.

Judge Cote withdrew the reference on April 20, 2012.  *Jacqueline Green Rollover Account*, No.

12-cv-01039-DLC (S.D.N.Y.), ECF No. 7.

55.     On July 25, 2012, the District Court granted the Trustee's ERISA Motion.  *See Id*.

(ECF No. 29).  The District Court found that the ERISA claimants were not "customers" under

SIPA because they did not deposit money with BLMIS for the purchase of securities and did not

own the assets of the ERISA plans that were deposited with BLMIS.  *Id*.  No appeal was taken

from this opinion and order.

56.     On June 27, 2013, the Trustee filed the Trustee's Second Motion to Affirm

Trustee's Determinations Denying Claims of Claimants Who Invested in Certain Feeder Funds

and Did Not Have BLMIS Accounts in Their Names.  (ECF Nos. 5396, 5397, 5398, 5399, 5438,

5439, collectively, the "Second Feeder Fund Motion").  On August 21, 2013, the Court issued

the Second Feeder Fund Decision.  (ECF No. 5450).  That decision reaffirmed that "the burden is

on the claimant to establish he is a 'customer' entitled to SIPA protection, and such a showing is

not easily met." *Id*. at 4 (quoting 454 BR at 294). Also, the Court determined that the claimants

"failed to [meet their burden] because they lack any indicia of a 'customer' relationship with

BLMIS." In particular, "they had no securities accounts at BLMIS, were not known to BLMIS,

lacked privity and any financial relationship with BLMIS, lacked property interest in any feeder

fund account assets at BLMIS, entrusted no cash or securities to BLMIS, had no investment

discretion over feeder fund assets invested with BLMIS, received no account statements or other

communications from BLMIS and had no transactions reflected on the books and records at

BLMIS." *Id*. at p. 4. The Second Feeder Fund Decision was not appealed.

57.     On April 30, 2014, the Trustee filed a motion to affirm his determinations

denying claims of claimants who invested in certain ERISA plans. (ECF Nos. 6489, 6491,

6492). In an opinion rendered on August 22, 2014, the Court determined that the claimants were

not "customers" of BLMIS within the meaning of SIPA. (ECF No. 7761).

58.     On December 12, 2014, the Trustee filed his Motion and Memorandum To Affirm

His Determinations Denying Claims of Claimants Holding Interests in S&P or P&S Associates,

General Partnerships (the "S&P Motion"). (ECF No. 8734). The S&P Motion was filed to

resolve objections to the Trustee's denial of 158 claims that were filed by parties who were either

partners in, or investors in those partners in, P&S or S&P Associates.[9] The Trustee allowed the

claims of S&P and P&S to the extent of their respective net equity, because each held a BLMIS

account in its name. S&P and P&S have been receiving interim distributions on their claims.

59.     The P&S/S&P Claimants objected to the Trustee's S&P Motion on January 26,

2015 (ECF No. 9185). They argued that SIPA should be construed broadly to include the S&P

---

[9] *See* S&P Motion at 2, n. 3 (citing Declaration of Vineet Sehgal, ECF No. 8734), identifying and describing the objections to the Trustee's determinations of claims at issue in the S&P / P&S Proceeding).

and P&S partners/investors. *Id.* at 3-4. The Claimants also argued that under Florida partnership law, "a partner is an owner of the partnership. . . . [and] a partner owns a specific interest in all partnership assets." *Id.* at 6.

60. On February 25, 2015, the Bankruptcy Court issued an oral ruling granting the Trustee's S&P Motion. *See* Hr'g Tr. 27:19 – 35:25 (ECF No. 9506). The Court explained that "the objecting partners have failed to sustain their burden of proof" because "[t]hey did not entrust any cash or securities with BLMIS." Rather, "[t]hey invested with partnerships who, in turn, invested with BLMIS." As a result, "even if BLMIS knew or surmised that the partnerships' BLMIS accounts were funded with partners' contributions, there is no evidence that BLMIS maintained records identifying the partners or even knew who they were, and the fact remains that the partners did not entrust anything to BLMIS . . . ." *Id.* at 30:16-31:6. On March 10, 2015 the Bankruptcy Court entered an Order approving the Trustee's Motion to Affirm His Determinations Denying Claims of Claimants Holding Interests in S & P or P & S Associates, General Partnerships. (ECF No. 9450). No appeal was taken from the order.

61. Since the S&P Decision, the Trustee has filed twelve similar motions to affirm his customer claim determinations with respect to indirect investors, eleven of which have been granted by this Court.[10] No timely objections were received.

_____

[10]*See* Order Approving Trustee's Motion To Affirm His Determinations Denying Claims of Claimants Holding Interests In Peerstate Equity Fund, L.P. (ECF No. 9883) (Apr. 27, 2015); Order Approving Trustee's Motion And To Affirm His Determinations Denying Claims Of Claimants Holding Interests In The Lazarus-Schy Family Partnership, The Schy Family Partnership, Or The Lazarus Investment Group, (ECF No. 10010) (May 18, 2015); Order Approving Trustee's Motion To Affirm His Determinations Denying Claims Of Claimants Holding Interests In Epic Ventures, LLC (ECF No. 10267) (June 25, 2015); Order Approving Trustee's Motion To Affirm His Determinations Denying Claims Of Claimants Holding Interests in Partners Investment Co., Northeast Investment Club, And Martin R. Harnick & Steven P. Norton, Partners (ECF No. 10894) (July 29, 2015); Order Approving Trustee's Motion To Affirm His Determinations Denying Claims Of Claimants Holding Interests In The Whitman Partnership, The Lucky Company, The Petito Investment Group, And The Harwood Family Partnership (ECF No. 11145) (August 26, 2015); Order Approving Trustee's Motion To Affirm His Determinations Denying Claims Of Claimants Holding Interests In 1973 Masters Vacation Fund, Bull Market Fund, And Strattham Partners (ECF No. 11920) (Oct. 29, 2015); Order Approving Trustee's Motion To Affirm His Determinations Denying Claims Of Claimants Holding Interests In Black River Associates LP, MOT Family Investors, LP, Rothschild Family

62.    Only two claimants since the P&S/S&P Claimants have objected to the Trustee's motion to affirm his treatment of their claim.  On September 29, 2015, George G. and Linda G. Pallis filed a timely objection to the Trustee's Motion to Affirm His Determinations Denying Claims Of Claimants Holding Interests In 1973 Masters Vacation Fund, Bull Market Fund, And Strattham Partners. (ECF No. 11920).

63.    The Pallises relied upon three checks made payable to Bernard L. Madoff for investment in the 1973 Masters Vacation Fund BLMIS account as evidence of their customer status.  This Court found that despite the existence of those checks, the Pallises were situated no differently than any of the other indirect claimants because despite being made payable to Madoff, they were sent to the "agent of the fund" and were ultimately credited to the fund's BLMIS account.  *See* Transcript of Hearing regarding Trustee's Motion and Memorandum to Affirm His Determinations Denying Claims of Claimants' Holding Interests in 1973 Masters Vacation Fund, Bull Market Fund, and Strattham Partners, 12:18-25 (Oct. 28, 2015).  This Court overruled the Pallises' objection and granted the Trustee's Motion because the evidence showed that the Pallises "didn't have an account with . . . BLMIS, had no connection, received no correspondence or direct communications" from BLMIS and thus "fail[ed] to demonstrate that they were customers" of BLMIS.  *Id.* at 13:1-8.

---

Partnership, and Ostrin Family Partnership (ECF No. 12757) (Mar. 3, 2016); Order Approving Trustee's Motion to Affirm His Determinations Denying Claims of Claimants Holding Interests In The Article Third Trust, Palmer Family Trust, Maggie Faustin, Estate of Theodore Schwartz, And Miller Trust Partnership (ECF No. 13172) (Apr. 26, 2016); Order Approving Trustee's Motion To Affirm His Determinations Denying Claims Of Claimants Holding Interests in William M. Pressman, Inc., William Pressman, Inc. Rollover Account, and AGL Life Assurance Company (ECF No. 13466) (June 7, 2016); Order Approving Trustee's Motion and Memorandum To Affirm His Determinations Denying Claims of Claimants Holding Interests in Palko Associates, Gloria Jaffe Investment Partnership, and the Miller Partnership (ECF No. 13780) (July 22, 2016); Order Approving Trustee's Motion And Memorandum of Law To Affirm His Determinations Denying Claims of Claimants Holding Interests In Chalek Associates LLC, Chaitman/Schwebel LLC, FGLS Equity LLC, Larsco Investments LLC, and Kuntzman Family LLC (ECF No. 14225) (Oct. 4, 2016).  The twelfth motion for an Order Approving Trustee's Motion to Affirm His Determinations Denying Claims Of Claimants Holding Interests In AHT Partners, Pergament Equities, LLC, SMT Investors LLC, Greene/Lederman, L.L.C., And Turbo Investors, LLC was filed on September 15, 2016 with a hearing date of October 26, 2016.  (ECF No. 14065).

### D.    Fact-Based Objections

64.    As part of his ongoing efforts to resolve pending objections, counsel for the Trustee has continued investigating and analyzing objections of claimants to the Trustee's determination of their claims.  During this extensive review of the facts unique to each claimant, the Trustee has identified circumstances that require resolution by the Bankruptcy Court. As such, during the period covered by the Trustee's Sixteenth Interim Report, counsel for the Trustee and counsel for claimant Brian Ross entered into a stipulation setting dates for the litigation of Mr. Ross's claim (ECF No. 13048) (April 6, 2016).  This Court approved and entered the Stipulated Scheduling Order on May 4, 2016 (ECF No. 13215).

65.    Since that time, the Trustee and counsel for Mr. Ross have exchanged discovery related to his claim and objection, asserting that he is entitled to customer status based on his deposits into a BLMIS account held in the name of his father, Allen Ross.  On August 24, 2016, this Court entered a Stipulation and Order Modifying the Scheduling Order Concerning the Determination of the Brian Ross Claim (ECF No. 13921) to extend fact discovery in order to allow the parties sufficient time to identify possible witnesses.

### E.    Inter-Account Transfers

66.    The Trustee has maintained, and the Second Circuit affirmed, that the "cash-in, cash-out" methodology is appropriate for calculating a customer's net equity in this case.  The *Net Equity Decision*, however, did not expressly address the treatment of transfers between BLMIS accounts, which the Trustee refers to as "Inter-Account Transfers."  Many customers maintained more than one BLMIS account, and transferred funds between such accounts.  Other customers transferred funds to the accounts of other BLMIS customers.

67.    On March 27, 2014, the Bankruptcy Court entered an order setting a schedule to file briefs and argue the merits of the Trustee's Motion For An Order To Affirm the Trustee's

Determination of Customer Claims Regarding Transfers between BLMIS Accounts (the "IAT Motion"). *See* ECF No. 6049. On March 31, 2014, the Trustee filed the IAT Motion, which explained that, for Inter-Account Transfers, in which no new funds entered BLMIS, the Trustee reduced the balance of the transferor account to the extent actual principal was available, and then credited the transferee account in the corresponding amount of actual principal transferred. (ECF No. 6084). If the transferor account did not have any principal available at the time of the transfer, then $0 was credited to the transferee account. *Id.* at 3. SIPC filed a brief in support of the Trustee's motion on March 31, 2014. (ECF No. 6079).

68.     Fifteen objections were filed in response to the IAT Motion. These objecting parties argued that the inter-account method violates the statute of limitations for pursuing fraudulent transfers under section 548(a)(1)(A) of the Bankruptcy Code; generates arbitrary results; improperly combines accounts and violates federal securities laws; violates public policy; and violates ERISA. They also argued that the Bankruptcy Court lacks constitutional authority to render final judgments and that a transferee's net equity claim should not be affected by withdrawals made by other beneficiaries in a shared account.

69.     On December 8, 2014, the Bankruptcy Court entered its Memorandum Decision Affirming Application of the Trustee's Inter-Account Method to the Determination of Transfers Between BLMIS Accounts. ECF No. 8680; *see Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff)*, 522 B.R. 41 (Bankr. S.D.N.Y. 2014). The Bankruptcy Court affirmed the Trustee's method for calculating a customer's net equity when inter-account transfers were made to or from that account. Judge Bernstein explained that if he adopted the objecting parties' arguments, "computing the balance in the transferor's account bloated by fictitious profits increases the transferee's claim to the customer property pool allocable to all

23

Madoff victims by artificially increasing the transferee's net equity. This result aggravates the injury to those net losers who did not receive transfers of fictitious profits by diminishing the amount available for distribution from the limited pool of customer property." *Id.* at 53. The order memorializing Judge Bernstein's written decision was entered on December 22, 2014. (ECF No. 8857).

70.    Five notices of appeal were filed by: (i) Diana Melton Trust, Dated 12/05/05 (ECF No. 8843); (ii) Edward Zraick Jr., Nancy Zraick, Patricia DeLuca and Karen M. Rich (ECF No. 8911); (iii) Michael Most (ECF No. 8913); (iv) claimants represented by Becker & Poliakoff (ECF No. 8916); and (v) Elliot G. Sagor (ECF No. 8917). (Case Nos. 15-cv-1151; 15-cv-1195; 15-cv-1223; 15-cv-1236; 15-cv-1263). The appellants filed three briefs on April 27, 2015 (ECF No. 12 (Case No. 15-cv-1151); ECF No. 12 (Case No. 15-cv-1223) and ECF No. 13 (Case No. 15-cv-1263), respectively). The Trustee's opposition was filed on May 27, 2015. (ECF No. 21). SIPC filed its opposition brief on May 27, 2015 (ECF No. 20). An amicus brief was filed on May 4, 2015 (ECF No. 13), and replies were filed on June 25, 2015 (ECF No. 24). On September 17, 2015, oral argument was held before Judge Engelmayer.

71.    On January 14, 2016, Judge Engelmayer issued his opinion and order affirming this Court's Order approving the use of the Inter-Account Transfer Method. Judge Engelmayer held that the Inter-Account Transfer Method "properly applies the Second Circuit's *Net Equity Decision* and is not otherwise prohibited by law;" in fact, he found that "the method is superior as a matter of law, and not 'clearly inferior,'" to the alternatives proposed by the appellants. *In re BLMIS*, 15 Civ. 1151(PAE), 2016 WL 183492 *1, at *26 (S.D.N.Y. Jan. 14, 2016) (citing *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d at 238 n.7).

72.     On February 11 and 12, 2016, three appeals were taken from Judge Engelmayer's order to the Second Circuit by (i) Elliot G. Sagor (Docket 16-413, ECF No. 1); (ii) Edward A. Zraick, Jr., Nancy Zraick, Patricia DeLuca, and Karen M. Rich (Docket 16-420, ECF No. 1); and (iii) claimants represented by Chaitman LLP (Docket 16-423, ECF No. 1).   The Trustee subsequently moved to consolidate the three appeals and set a common briefing schedule on March 18, 2016; that motion was granted on March 23, 2016.  *See Sagor v. Picard*, 16-413, ECF No. 34; *Zraick et al. v. Picard*, 16-420, ECF No. 34; *Blecker et al. v. Picard*, 16-423, ECF No. 39.

73.     The appellants filed three opening briefs on May 23, 2016.  (ECF Nos. 134, 140 and 141).  The Trustee's opposition was filed on August 22, 2016 (ECF No. 166).  SIPC's opposition brief was filed on August 23, 2016 (ECF No. 170).  An amicus brief was filed on May 31, 2016 (ECF No. 155), and replies were filed on September 29 and 30, 2016 (ECF Nos. 184, 186 and 187).  Oral argument before the Second Circuit is currently scheduled for the week of January 9, 2017.

## F.     **Profit-Withdrawal Issue**

74.     In a declaration related to the Inter-Account Transfer matter, one customer raised an issue with respect to certain withdrawals that were reflected on his BLMIS customer account statements.  *See* Declaration of Aaron Blecker, In Opposition to the Trustee's Motion to Affirm The Application of The Net Investment Method to the Determination of Customer Transfers Between BLMIS Accounts (ECF No. 6761).  Several other customers objected to the Trustee's denial of their net equity claims for similar reasons.  These customers dispute whether they actually received funds that appear to be identified on BLMIS customer account statements as "PW", or "Profit Withdrawals."

75.     Upon further review and analysis, the Trustee discovered that several hundred accounts contained "PW" Transactions.  In light of the number of potentially impacted accounts, the Trustee sought to institute an omnibus proceeding to resolve the question of whether the Trustee's treatment of "PW" transactions as cash withdrawals for the purposes of a customer's net equity calculation is proper.  *See* Motion for Order Establishing Schedule For Limited Discovery & Briefing On Profit Withdrawal Issue (ECF No. 9357).  Following discussions with various counsel, the Trustee withdrew his Motion and filed an Amended Motion for Order Establishing Schedule for Limited Discovery and Briefing on Profit Withdrawal Issue (ECF No. 10017) ("Profit Withdrawal Scheduling Order").  The Court granted the Amended Motion on June 25, 2015 (ECF No. 10266).

76.     On July 14, 2015, the Trustee filed his motion and memorandum of law on the Profit Withdrawal Issue, along with the supporting declarations.   (ECF Nos. 10660-10664).  SIPC filed its supporting memorandum on July 14, 2015 (ECF No. 10650).  The Trustee and Participating Claimants exchanged written discovery in accordance with the Profit Withdrawal Scheduling Order, including service of supplemental expert reports.

77.     On December 28, 2015, counsel for Aaron Blecker filed a Motion for an Order Compelling the Trustee to Allow Aaron Blecker's SIPC Claim ("Motion to Compel") despite his involvement in the Profit Withdrawal litigation. (ECF No. 12319).  The Trustee opposed the Motion to Compel on the grounds that Mr. Blecker's claims were at the center of both the Profit Withdrawal litigation and the Inter-Account Transfer appeal before the District Court.  (ECF No. 12432, Jan. 13, 2016).  SIPC filed its memorandum in support of the Trustee's opposition on January 14, 2016 (ECF No. 12438).  Mr. Blecker filed his reply on February 10, 2016, ECF No. 12628, and a hearing was held before this Court on February 24, 2016 at which time Mr.

Blecker's Motion to Compel was denied. This Court denied the motion because (1) Mr. Blecker agreed to participate in the omnibus Profit Withdrawal Litigation proceedings and he could not now litigate around those procedures; (2) any decision on the issues raised in his Motion to Compel would impact the omnibus profit withdrawal litigation; and (3) issues of facts remain that would only be resolved through an evidentiary hearing. *See* Hearing Transcript Regarding Motion to Allow Customer Claim of Aaron Blecker, 28:22 -30:4 (Feb. 24, 2016).

78.    During the February 24, 2016 hearing, this Court also granted counsel for Mr. Blecker leave to file a Motion for an Order Authorizing the Deposition of Bernard L. Madoff ("Motion to Depose Madoff") and raised the possibility that the Trustee may also want to depose former BLMIS employees with knowledge of the Profit Withdrawal Transactions. As a result, on March 9, 2016, counsel for Mr. Blecker filed the Motion to Depose Madoff. (ECF Nos. 12799, 12800). The Trustee opposed the Motion to Depose Madoff on the grounds that his testimony would be unreliable and that counsel for the customers was likely to use the deposition as an opportunity to seek information related to other pending litigation. The Trustee requested that the motion be denied or in the alternative, that all questions be limited to the Profit Withdrawal Issue.[11] (ECF No. 12892). A hearing was held on the Motion to Depose Madoff on March 23, 2016, and this Court granted the Motion to Depose Madoff with the requested limitations including that the deposition transcript remain sealed pending review by all interested parties and redaction if necessary. Transcript of Hearing Regarding Motion to take Deposition

---

[11] The Trustee was joined by the Capital Growth Company, Decisions Incorporated, Favorite Funds, JA Primary Limited Partnership, JA Special Limited Partnership, JAB Partnership, JEMW Partnership, JF Partnership, JFM Investment Companies, JLN Partnership, JMP Limited Partnership, Jeffry M. Picower Special Company, Jeffry M. Picower, P.C., The Picower Foundation, The Picower Institute of Medical Research, The Trust f/b/o Gabrielle H. Picower, Barbara Picower, individually, and as Executor of the Estate of Jeffry M. Picower, and as Trustee for the Picower Foundation and for the Trust f/b/o Gabrielle H. Picower (the "Picower Parties") in opposing the Motion for an Order Authorizing the Deposition of Bernard L. Madoff on the grounds that Ms. Chaitman planned to use the deposition to question Mr. Madoff on information related to the late Jeffry Picower. *See* ECF No. 12893.

of Bernard L. Madoff, 85:14-22 (Mar. 23, 2016); *see also* Order Authorizing the Deposition of

Bernard L. Madoff With Certain Limitations, ECF No. 13060.

79.    To allow time for the depositions of Mr. Madoff and former BLMIS employees

before the end of discovery, the Trustee filed a Motion for an Order Amending Schedule of

Litigation of Profit Withdrawal Issue on March 14, 2016.  Through that motion, the Trustee

requested a 90-day extension of all remaining deadlines, including the close of discovery.  (ECF

No. 12865).  Arguments were heard by this Court on April 5, 2016, at which time the Motion to

Amend the Scheduling Order was approved.  *See* Hearing Transcript Regarding Trustee's

Motion to Extend Discovery Deadline in Profit Withdrawal Proceeding, 14:25-15:1 (Apr. 5,

2016).

80.    During the period covered by the Trustee's Sixteenth Interim Report, and prior to

close of fact discovery, counsel for the Trustee deposed several former BLMIS employees

regarding their work with profit withdrawal transactions at BLMIS.  These former employees

provided testimony as to their knowledge of the treatment and management of Profit Withdrawal

Transactions at BLMIS.  On May 11 and 13, 2016, counsel for the Trustee also deposed

Participating Claimants Drs. Norman and Joel Blum, respectively.  Counsel for Participating

Claimant Aaron Blecker deposed Mr. Madoff on June 15, 2016, and counsel for the Trustee

attended for purposes of cross-examination.

81.    On July 12, 2016, this Court entered the Stipulation And Order On Schedule For

Litigation Of And Evidentiary Hearing On Profit Withdrawal Issue (ECF No. 13619), as agreed

to by the parties, and modifying the April 5, 2016 amended scheduling order.  The July 12, 2016

order set forth deadlines for supplemental briefing, exchanged proposed trial exhibits, and

motions in limine.  Pursuant to the updated scheduling order, the Trustee filed his Supplemental

Memorandum Of Law In Support Of Trustee's Motion Affirming Treatment of Profit Withdrawal Transactions (ECF No. 13876) and SIPC filed its Supplemental Memorandum In Support Of the Trustee's Motion (ECF No. 13872) on August 12, 2016. Participating Claimants subsequently filed two opposition briefs on September 23, 2016 (ECF Nos. 14161 and 14168).

82.    On September 30, 2016, the Trustee and Participating Claimants exchanged proposed trial exhibits, designated deposition testimony, and disclosed draft witness lists.

## VII.    RECOVERIES AND CONTINGENCIES

### A.    Recoveries Accomplished During Prior Report Periods

83.    In the Sixth through Fifteenth Interim Reports, the Trustee reviewed the significant settlements entered into during those periods and prior report periods. Prior to this Report Period, the Trustee had recovered or reached agreements to recover approximately $11.1 billion for the benefit of BLMIS customers. *See* Trustee's Sixth Interim Report ¶¶ 52–63 (ECF No. 4529); Trustee's Seventh Interim Report ¶¶ 56–62 (ECF No. 4793); Trustee's Eighth Interim Report ¶¶ 57–61 (ECF No. 5066); Trustee's Ninth Interim Report ¶¶ 59 – 61 (ECF No. 5351); Trustee's Tenth Interim Report ¶¶ 61-62 (ECF No. 5554); Trustee's Eleventh Interim Report ¶¶ 61-62 (ECF No. 6466); Trustee's Twelfth Interim Report ¶¶ 63-64 (ECF No. 8276); Trustee's Thirteenth Interim Report ¶¶ 72-76 (ECF No. 9895); Trustee's Fourteenth Interim Report ¶¶ 73-76 (ECF No. 11912); and Trustee's Fifteenth Interim Report ¶¶ 79-80 (ECF No. 13184).

### B.    Recoveries Accomplished During This Report Period

84.    During the Report Period, the Trustee settled 53 cases. Additionally, the Trustee received settlement recoveries of $95,136,266.69, bringing the amount the Trustee has successfully recovered to over $11.2 billion.

85.    On September 28, 2016, this Court approved a settlement between the Trustee and Annette and Rudy Bongiorno. *Picard v. Annette Bongiorno, et al.,* Adv. Pro. No. 10-04215.

(ECF No. 46). Under the settlement, the defendants will pay approximately $3,931,878 to the Trustee.

## C.    Earlier Settlements

86.    In the Twelfth Interim Report, the Trustee reported on the Fairfield, JPMorgan Chase and Tremont settlements.  *See* Trustee's Twelfth Interim Report ¶¶ 173-182, 202-214, 311-319 (ECF No. 8276). In the Thirteenth Interim Report, the Trustee reported on the Blumenfeld, Herald Fund, Senator Fund and Herald (Lux) SICAV settlements.  *See* Trustee's Thirteenth Interim Report ¶¶ 73-76 (ECF No. 9895).  In the Fourteenth Interim Report, the Trustee reported on the Gabriel Capital, Plaza Investments and Defender settlements.  *See* Trustee's Fourteenth Interim Report ¶¶ 74-76 (ECF No. 11912).  In the Fifteenth Interim Report, the Trustee reported on the Vizcaya Partners settlement.  ¶¶ 264-72 (ECF No. 13184).

87.    Through the end of the Report Period, the Trustee recovered $536,092,384.27 as a result of other settlements that were made pursuant to agreements subject to the Net Equity Dispute.

## VIII.   THE TRUSTEE'S ALLOCATION OF FUNDS AND DISTRIBUTIONS TO CUSTOMERS

## A.    The Customer Fund

88.    In order to protect customers of an insolvent broker-dealer such as BLMIS, Congress established a statutory framework pursuant to which customers of a debtor in a SIPA liquidation are entitled to preferential treatment in the distribution of assets from the debtor's estate.  The mechanism by which customers receive preferred treatment is through the creation of a Customer Fund, as defined in SIPA § 78*lll*(4), which is distinct from a debtor's general estate.  Customers holding allowable claims are entitled to share in the Customer Fund based on

each customer's net equity as of the filing date, to the exclusion of general creditors. SIPA § 78fff-2(c).

89.    In order to make interim distributions from the Customer Fund, the Trustee must determine or be able to sufficiently estimate: (a) the total value of customer property available for distribution (including reserves for disputed recoveries), and (b) the total net equity of all allowed claims (including reserves for disputed claims). Each element of the equation—the customer property numerator and the net equity claims denominator—is inherently complex in a liquidation of this magnitude.

90.    There are many unresolved issues in this liquidation proceeding that require the maintenance of substantial reserves. Nonetheless, the liquidation proceeding progressed to a stage at which it was possible for the Trustee, on an interim basis, to determine: (a) the allocation of property to the Customer Fund, or the "numerator" (taking reserves into account), (b) the amount of allowable net equity claims, or the "denominator" (also taking reserves into account), and (c) the calculation of each customer's minimum ratable share of the Customer Fund.

**B.    The Trustee's Initial Allocation of Property to the Fund of Customer Property and Authorizing the First Interim Distribution to Customers**

91.    On May 4, 2011, the Trustee moved for an initial allocation and pro rata interim distribution of the Customer Fund to customers whose claims had not been fully satisfied because their net equity claims as of the Filing Date exceeded the statutory SIPA protection limit of $500,000 (respectively, the "First Allocation" and "First Interim Distribution"). (ECF No. 4048). This motion was unopposed, and the Court entered the Order Approving the Trustee's Initial Allocation of Property to the Fund of Customer Property and Authorizing An Interim Distribution to Customers on July 12, 2011. (ECF No. 4217).

92.     On October 5, 2011, the Trustee distributed $311.854 million, or 4.602% of each
BLMIS customer's allowed claim, unless the claim had been fully satisfied.  Subsequent to
October 5, 2011, an additional $373.426 million was distributed as catch-up payments, bringing
the total First Interim Distribution amount to $685.279 million through the end of the Report
Period.  The First Interim Distribution was made to 1,352 BLMIS accounts, of which 39
payments went to claimants who qualified for hardship status under the Trustee's Hardship
Program whose claims had not been fully satisfied previously.

93.     The First Allocation and First Interim Distribution were initial and interim in
nature because the Trustee anticipated recovering additional assets through litigation and
settlements, and resolving the issues on appeal that require reserves.

## C.     The Trustee's Second Allocation of Property to the Fund of Customer Property and Authorizing the Second Interim Distribution to Customers

94.     During the year after the Trustee made the First Interim Distribution, the Trustee
recovered significant additional assets through litigation and settlements, as well as the
resolution of issues on appeal that required reserves.

95.     In particular, the Supreme Court resolved the Net Equity Dispute on June 25,
2012, and the Trustee received the Picower settlement funds after the final order of forfeiture
became final and non-appealable on July 16, 2012.

96.     Thus, the Trustee was prepared to make a second significant distribution to
BLMIS customers in an amount as great as $3.019 billion, or 41.826% of each customer's
allowed claim, unless the claim had been fully satisfied.  However, in order to maintain adequate
reserves for the Time-Based Damages Issue, the Trustee was unable to distribute the entire
$3.019 billion.

97.    On July 26, 2012, the Trustee filed a motion seeking entry of an order approving the second allocation of property to the Customer Fund and authorizing the second interim distribution to customers whose claims have not been fully satisfied because their net equity claims as of the Filing Date exceeded the statutory SIPA protection limit of $500,000 (respectively, the "Second Allocation" and "Second Interim Distribution").  (ECF No. 4930).

98.    In connection with the Second Interim Distribution, the Trustee proposed holding in reserve an amount sufficient for the Trustee to pay Time-Based Damages assuming an interest rate of three percent (the "3% Reserve") or, in the alternative, nine percent (the "9% Reserve"). Four objections were made to the Trustee's motion, seeking the imposition of the 9% Reserve. (ECF Nos. 4965, 4966, 4971, 4976).

99.    On August 22, 2012, this Court held a hearing and entered an Order Approving the Trustee's Second Allocation of Property to the Fund of Customer Property and Authorizing a Second Interim Distribution to Customers, with a 3% Reserve.  (ECF No. 4997).

100.    Thus, on September 19, 2012, the Trustee distributed $2.479 billion, or 33.556% of each BLMIS customer's allowed claim, unless the claim had been fully satisfied.  Subsequent to September 19, 2012, an additional $2.499 billion was distributed as catch-up payments, bringing the total Second Interim Distribution amount to $4.978 billion through the end of the Report Period.  The Second Interim Distribution was made to 1,338 BLMIS accounts, of which 39 payments went to claimants who qualified for hardship status under the Trustee's Hardship Program whose claims had not been fully satisfied previously.

**D.    The Trustee's Third Allocation of Property to the Fund of Customer Property and Authorizing the Third Interim Distribution to Customers**

101.    During the months after the Second Interim Distribution, the Trustee recovered significant additional assets thorough litigation and settlements, particularly the Tremont settlement.  See discussion *infra* Section IX(B)(ii)(j).

102.    On February 13, 2013, the Trustee filed a motion seeking entry of an order approving the third allocation of property to the Customer Fund and authorizing the third interim distribution to customers whose claims have not been fully satisfied because their net equity claims as of the Filing Date exceeded the statutory SIPA protection limit of $500,000 (respectively, the "Third Allocation" and "Third Interim Distribution").  (ECF No. 5230).

103.    In connection with the Third Interim Distribution, the Trustee proposed holding reserves in connection with the Levy settlement appeal, the Internal Revenue Service (the "IRS") settlement and net loser accounts currently in litigation.  *Id.*

104.    On March 13, 2013, this Court held a hearing and entered an Order Approving the Trustee's Third Allocation of Property to the Fund of Customer Property and Authorizing a Third Interim Distribution to Customers.  (ECF No. 5271).

105.    Thus, on March 29, 2013, the Trustee distributed $506.227 million, or 4.721% of each BLMIS customer's allowed claim, unless the claim had been fully satisfied.  Subsequent to March 29, 2013, an additional $190.05 million was distributed as catch-up payments, bringing the total Third Interim Distribution amount to $696.277 million through the end of the Report Period.  The Third Interim Distribution was made to 1,149 BLMIS accounts, of which 26 payments went to claimants who qualified for hardship status under the Trustee's Hardship Program whose claims had not been fully satisfied previously.

**E.    The Trustee's Fourth Allocation of Property to the Fund of Customer Property and Authorizing the Fourth Interim Distribution to Customers**

106.    During the year after the Trustee made the Third Interim Distribution, the Trustee recovered significant additional assets through litigation and settlements, particularly the JPMorgan settlement.

107.    On March 25, 2014, the Trustee filed a motion seeking entry of an order approving the fourth allocation of property to the Customer Fund and authorizing the fourth interim distribution to customers whose claims have not been fully satisfied because their net equity claims as of the Filing Date exceeded the statutory SIPA protection limit of $500,000 (respectively, the "Fourth Allocation" and "Fourth Interim Distribution").  (ECF No. 6024).

108.    In connection with the Fourth Interim Distribution, the Trustee proposed holding reserves in connection with non-preference related settlement payments for accounts with net equity clauses, as well as certain other settlements.  *Id.*

109.    On April 18, 2014, this Court entered an Order Approving the Trustee's Fourth Allocation of Property to the Fund of Customer Property and Authorizing a Fourth Interim Distribution to Customers**.**  (ECF No. 6340).

110.    Thus, on May 5, 2014, the Trustee distributed $351.632 million, or 3.180% of each BLMIS customer's allowed claim, unless the claim had been fully satisfied.  Subsequent to May 5, 2014, an additional $116.591 million was distributed as catch-up payments, bringing the total Fourth Interim Distribution amount to $468.223 million through the end of the Report Period.  The Fourth Interim Distribution was made to 1,117 BLMIS accounts, of which 25 payments went to claimants who qualified for hardship status under the Trustee's Hardship Program whose claims had not been fully satisfied previously.

F.      **The Trustee's Fifth Allocation of Property to the Fund of Customer Property and Authorizing the Fifth Interim Distribution to Customers**

111.    During the months after the Trustee made the Fourth Interim Distribution, the Trustee recovered significant additional assets through litigation and settlements, particularly with the Blumenfeld defendants (*Picard v. Edward Blumenfeld, et al.,* Adv. Pro. No. 10-04730 (Bankr. S.D.N.Y.) (SMB) (ECF No. 45)), Herald Fund SPC and Primeo Fund (*Picard v. HSBC Bank PLC, et al.*, Adv. Pro. No. 09-01364 (Bankr. S.D.N.Y.) (SMB) (ECF No. 349)), and Senator Fund SPC *(Picard v. HSBC Bank PLC, et al.*, Adv. Pro. No. 09-01364 (Bankr. S.D.N.Y.) (SMB) (ECF No. 350)).

112.    On December 22, 2014, the Trustee filed a motion seeking entry of an order approving the fifth allocation of property to the Customer Fund and authorizing the fifth interim distribution to customers whose claims have not been fully satisfied because their net equity claims as of the Filing Date exceeded the statutory SIPA protection limit of $500,000 (respectively, the "Fifth Allocation" and "Fifth Interim Distribution").  (ECF No. 8860).

113.    In connection with the Fifth Interim Distribution, the Trustee proposed holding reserves in connection with non-preference related settlement payments for accounts with net equity clauses, as well as certain other settlements.  *Id.*

114.    On January 15, 2015, this Court entered an Order Approving the Trustee's Fifth Allocation of Property to the Fund of Customer Property and Authorizing a Fifth Interim Distribution to Customers.  (ECF No. 9014).

115.    On February 6, 2015, the Trustee distributed $355.761 million, or 2.743% of each BLMIS customer's allowed claim, unless the claim had been fully satisfied.  Upon completion of the Fifth Interim Distribution, approximately 52% of the allowed customer claims were satisfied. Subsequent to February 6, 2015, an additional $47.647 million was distributed as catch-up

payments, bringing the total Fifth Interim Distribution amount to $403.409 million through the end of the Report Period. The Fifth Interim Distribution was made to 1,096 BLMIS accounts, of which 23 payments went to claimants who qualified for hardship status under the Trustee's Hardship Program whose claims had not been fully satisfied previously.

G.    **The Trustee's Sixth Allocation of Property to the Fund of Customer Property and Authorizing the Sixth Interim Distribution to Customers**

116.    In its order approving the Second Allocation Motion (ECF No. 4997), the Court required the Trustee to maintain the 3% Reserve for the Time-Based Damages Dispute. Under the terms of Judge Lifland's order requiring the 3% Reserve, the Trustee set a Time-Based Damages reserve and allocated such reserve to the Customer Fund as part of the total amount allocated to the Customer Fund in the Second through Fifth Allocations and Interim Distributions.

117.    On April 15, 2015, the Trustee filed a motion seeking entry of an order approving the sixth allocation of property to the Customer Fund and authorizing the sixth interim distribution to customers whose claims have not been fully satisfied because their net equity claims as of the Filing Date exceeded the statutory SIPA protection limit of $500,000 (respectively, the "Sixth Allocation" and "Sixth Interim Distribution"). (ECF No. 9807). In the Sixth Allocation and Sixth Interim Distribution Motion, the Trustee sought approval to release the bulk of the Time-Based Damages reserve and distribute such funds under the terms set forth therein. These funds became available for distribution following the decision of the Second Circuit on the "time-based damages" issue. *In Re Bernard L. Madoff Inv. Sec. LLC,* 779 F.3d 74 (2d Cir. Feb. 20, 2015) (the "Time-Based Damages Decision").

118.    The Trustee could not distribute these funds until the time limit to file a petition for certiorari with the Supreme Court expired with no petition being filed or a final, non-appealable order was entered on the Time-Based Damages Decision.

119.    At the time the Trustee filed the Sixth Allocation Motion, no petitions for certiorari had been filed on the Time-Based Damages Decision.  The time period to file a petition for certiorari was due to expire on May 21, 2015.  The hearing date on the Sixth Allocation Motion was set for May 29, 2015, which would permit the hearing to go forward if no petitions for certiorari were filed by that date.  The Trustee indicated in the Sixth Allocation Motion that the hearing may not be able to go forward if a petition for certiorari was filed.

120.    A group of claimants represented by Helen Davis Chaitman, Esq. moved for an extension of time within which to file a petition for certiorari with the Supreme Court.  The Supreme Court granted that request on April 28, 2015, extending the time to file a petition for certiorari to July 20, 2015.  *Marsha Peshkin v. Irving H. Picard, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,* No. 14A1099 (2015).

121.    Following the extension of time to file the petition for a writ of certiorari, the Trustee filed a notice of adjournment of the hearing on the Sixth Allocation Motion, adjourning the hearing from May 28, 2015 to July 29, 2015.  The purpose of the adjournment was to allow the extended time period within which to file a petition for certiorari to expire.  If no petition was filed, the Trustee would seek the Court's approval to allocate and distribute funds from the fund of customer property, as outlined in the Trustee's Sixth Allocation Motion.

122.    On July 20, 2015, the group of claimants represented by Helen Davis Chaitman filed a petition for a writ of certiorari with the Supreme Court.  Accordingly, the hearing on the

Trustee's Sixth Allocation Motion was adjourned *sine die*, pending the determination of the petition for a writ of certiorari by the Supreme Court.

123.    On October 5, 2015, the Supreme Court denied the petition for certiorari, paving the way for the Trustee to request authorization from the Court to make a sixth distribution to customers of more than $1.18 billion—up to 8.186% of each customer's allowed claim amount. On October 20, 2015, the Trustee filed a Notice of Hearing and Supplemental Filing in Further Support of the Trustee's Motion for an Order Approving Sixth Allocation of Property to the Fund of Customer Property and Authorizing Sixth Interim Distribution to Customers (ECF No. 11834) and an Affidavit of Vineet Sehgal in support.  (ECF No. 11835).  On November 18, 2015, this Court entered an Order Approving the Trustee's Sixth Allocation of Property to the Fund of Customer Property and Authorizing a Sixth Interim Distribution to Customers.  (ECF No. 12066).

124.    On December 4, 2015, the Trustee distributed $1.193 billion, or 8.262% of each BLMIS customer's allowed claim, unless the claim had been fully satisfied.  Upon completion of the Sixth Interim Distribution, approximately 56% of the allowed customer claims were satisfied. Subsequent to December 4, 2015, an additional $15.447 million was distributed as catch-up payments, bringing the total Sixth Interim Distribution amount to $1.209 billion through the end of the Report Period.  The Sixth Interim Distribution was made to 1,075 BLMIS accounts, of which 20 payments went to claimants who qualified for hardship status under the Trustee's Hardship Program whose claims had not been fully satisfied previously.

**H.    The Trustee's Seventh Allocation of Property to the Fund of Customer Property and Authorizing the Seventh Interim Distribution to Customers**

125.    During the months after the Trustee made the Sixth Interim Distribution, the Trustee recovered significant additional assets through litigation and settlements, particularly

with the Thybo defendants (*Picard v. Thybo Asset Mgmt. Ltd.*, Adv. No. 09-01365 (SMB) (Bankr. S.D.N.Y. Feb. 10, 2011) (ECF No. 96) and Vizcaya Partners Limited, Bank J. Safra Sarasin (Gibraltar) Ltd., Bank J. Safra (Gibraltar) Ltd., Asphalia Fund, Ltd., Zeus Partners Limited, Banque J. Safra Sarasin (Suisse) SA, Banque Jacob Safra (Suisse) SA, and Pictet et Cie (*Picard v. Vizcaya Partners Limited, et al.,* Adv. Pro. No. 09-01154 (ECF No. 129); *Picard v. Banque J. Safra (Suisse) SA,* Adv. Pro. No. 11-01725 (ECF No. 73); *Picard v. Pictet et Cie,* Adv. Pro. No. 11-01724 (ECF No. 90)).

126.    On May 26, 2016, the Trustee filed a motion seeking entry of an order approving the seventh allocation of property to the Customer Fund and authorizing the seventh interim distribution to customers whose claims have not been fully satisfied because their net equity claims as of the Filing Date exceeded the statutory SIPA protection limit of $500,000 (respectively, the "Seventh Allocation" and "Seventh Interim Distribution").  (ECF No. 13405).

127.    In connection with the Seventh Interim Distribution, the Trustee proposed holding reserves in connection with non-preference related settlement payments for accounts with net equity clauses, as well as certain other settlements.  *Id.*

128.    On June 15, 2016, this Court entered an Order Approving the Trustee's Seventh Allocation of Property to the Fund of Customer Property and Authorizing a Seventh Interim Distribution to Customers.  (ECF No. 13512).

129.    Thus, on June 30, 2016, the Trustee distributed $190.247 million, or 1.305% of each BLMIS customer's allowed claim, unless the claim had been fully satisfied. Upon completion of the Seventh Interim Distribution, over 57% of the allowed customer claims were satisfied.  The Seventh Interim Distribution was made to 972 BLMIS accounts, of which 15

payments went to claimants who qualified for hardship status under the Trustee's Hardship Program whose claims had not been fully satisfied previously.

## I.    The General Estate

130.    If the Trustee is able to fully satisfy the net equity claims of the BLMIS customers, any funds remaining will be allocated to the general estate and distributed in the order of priority established in Bankruptcy Code § 726 and SIPA § 78fff(e).

131.    All BLMIS customers who filed claims—whether their net equity customer claims were allowed or denied—are deemed to be general creditors of the BLMIS estate.  The Trustee is working diligently on behalf of all creditors and will seek to satisfy all creditor claims.

## IX.    LITIGATION

132.    Other major developments have occurred during the Report Period in the Trustee's avoidance actions and bank/feeder fund litigations.  This Report does not discuss each of them in detail but instead summarizes those matters with the most activity during the Report Period.

## A.    The District Court—Motions to Withdraw the Reference, Motions to Dismiss and Related Appeals

133.    Upon the motions of hundreds of defendants, the District Court withdrew the reference in numerous cases and heard numerous motions to dismiss. A total of 485 motions to withdraw and 424 joinders were filed, altogether implicating a total of 807 adversary proceedings.  The District Court returned all proceedings to the Bankruptcy Court.

### i.    Proceedings Relating to Motions to Withdraw

#### (a)    The Administrative Order

134.    On March 5, 2012, this Court entered the Administrative Order which stated: "[i]n the interest of administrative efficiency, this Court has been informed by Judge Rakoff, and

hereby notifies all parties to the Adversary Proceedings, that the District Court will automatically regard untimely any motion to withdraw . . . if such motion is not filed on or before April 2, 2012." *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, Adv. No. 08-01789 (ECF No. 4707).

135.    On July 10, 2014, the District Court issued an order directing counsel to parties with individual issues not addressed by the Court's decisions in the consolidated withdrawals to inform the Court by letter by July 18, 2014. *See In re Madoff Sec.,* No. 12 MC 00115 (JSR) (S.D.N.Y. July 10, 2014), ECF No. 552. The District Court received several such letters and addressed the issues they raised in separate orders. On August 4, 2014, the District Court deemed any remaining motions to withdraw the reference to be denied, referred all the adversary proceedings to be returned to the Bankruptcy Court, and directed the closure of all civil cases seeking to withdraw the reference related to the Madoff matter. *See In re Madoff Sec.,* No. 12 MC 00115 (JSR) (S.D.N.Y. Aug. 4, 2014), ECF No. 557.

### (b)    Consolidated Briefing Orders

136.    In April 2012, the District Court instituted a protocol for then-pending motions to withdraw, which consolidated briefing on common issues raised in the motions to withdraw (the "Common Briefing"). The common issues included:

- whether the Supreme Court's decision in *Stern v. Marshall* (the "Stern Issue") precluded the Bankruptcy Court from entering final judgment on the Trustee's claims and therefore mandated withdrawal of the reference to Bankruptcy Court. 131 S. Ct. 2594 (2011); *see* Order, *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, No. 12 MC 0115 (JSR) (S.D.N.Y. Apr. 13, 2012), ECF No. 4;

- whether the Trustee's claims against certain defendants should be dismissed in light of the defendants' affirmative defense of antecedent debt (the "Antecedent Debt Issue"). *See* Order, No. 12 MC 0115 (JSR) (S.D.N.Y. May 16, 2012), ECF No. 107;

- whether standing issues (the "Standing Issue") bar the Trustee's common law claims against certain defendants by virtue of the doctrine of *in pari delicto* and/or

the Securities Litigation Uniform Standards Act of 1998 ("SLUSA"), as well as whether the Trustee is entitled to accept assignments or assert the "insider exception" to *in pari delicto*. *See* Order, No. 12 MC 0115 (JSR) (S.D.N.Y. May 15, 2012), ECF No. 114;

- whether § 546(e) of the Bankruptcy Code precludes the Trustee's claims against certain defendants against whom the Trustee has alleged knew or should have known that Madoff was running a Ponzi scheme (the "Bad Faith § 546(e) Issue"). *See* Order, No. 12 MC 0115 (JSR) (S.D.N.Y. May 15, 2012), ECF No. 119;

- whether the Trustee is entitled to employ § 502(d) of the Bankruptcy Code against defendants accused of receiving avoidable transfers (the "§ 502(d) Issue"). *See* Order, No. 12 MC 0115 (JSR) (S.D.N.Y. June 1, 2012), ECF No. 155;

- whether the Supreme Court's ruling in *Morrison v. National Australia Bank Ltd.*, as applied to SIPA or the Bankruptcy Code, bars the Trustee's claims against certain defendants (the "Extraterritoriality Issue"). 130 S. Ct. 2869 (2010); *see* Order, No. 12 MC 0115 (JSR) (S.D.N.Y. June 6, 2012), ECF No. 167; and

- whether SIPA or the securities laws alter the standards for determining good faith under either §§ 548(c) or 550(b) of the Bankruptcy Code (the "Good Faith Standard Issue"). *See* Order, No. 12 MC 0115 (JSR) (S.D.N.Y. June 23, 2012), ECF No. 197.

137.    The Stern Issue was raised by hundreds of defendants. Judge Rakoff heard oral argument on June 18, 2012 and issued a decision on January 4, 2013 (the "Stern Opinion and Order"), ruling that the Bankruptcy Court could not issue a final decision on certain of the Trustee's fraudulent transfer claims. Opinion and Order (ECF No. 427), 460 B.R. 46 (Bankr. S.D.N.Y. 2013). The Stern Opinion and Order indicates that the Bankruptcy Court may be able to render rulings where a defendant filed a claim. *Id.* at 19. In the Stern Opinion and Order, Judge Rakoff found that even in those cases where no claim was filed, the Bankruptcy Court could issue a report and recommendation, and referred the Trustee's cases back to the Bankruptcy Court subject to the other pending rulings. *Id.*

138.    The Antecedent Debt Issue was also raised by hundreds of defendants, who filed their motion on June 25, 2012. (ECF No. 196). Oral argument was held by Judge Rakoff on August 25, 2012. Judge Rakoff issued a decision on October 15, 2013 (the "Antecedent Debt

Opinion and Order"), ruling that the Trustee's avoidance claims against certain defendants should not be dismissed and stating that "[the] pre-reach-back-period inter-account transfers of amounts exceeding principal in the account of the sender continue to be fictitious profits, not principal, in the account of the recipient, and therefore do not constitute antecedent debt for the recipient of the funds." *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, No. 12 MC 115 (JSR), 2013 WL 5651285, at *11 (S.D.N.Y. Oct. 15, 2013).

139.    The Standing Issue was raised by various defendants, who filed two sets of moving papers on August 3, 2012.  (ECF Nos. 269, 270, 271).  Judge Rakoff heard oral argument on October 15, 2012 and issued a decision on December 5, 2013 (the "Standing Opinion and Order"), finding that the Trustee "has standing to bring claims on behalf of Madoff Securities' customers to the extent, but only to the extent, that the customers validly assigned their claims to the Trustee.  However, the Court also finds that the Trustee's pursuit of these assigned claims, to the extent that he brings the claims of more than fifty assignors, constitutes a covered class action for purposes of SLUSA."  Opinion and Order (ECF No. 509), 987 F. Supp.2d 309 (S.D.N.Y. 2013).

140.    The Bad Faith § 546(e) Issue was raised by various defendants, who filed two sets of moving papers on July 27, 2012.  (ECF Nos. 259–261).  Judge Rakoff heard oral argument on November 26, 2012 and issued a "bottom line" ruling on February 12, 2013, indicating that under certain circumstances, the Trustee's complaints should not be dismissed at the pleading stage solely on the basis of defendants' invocation of § 546(e) of the Bankruptcy Code.  (ECF No. 439).  On April 15, 2013, Judge Rakoff issued a decision (the "Bad Faith § 546(e) Opinion and Order"), setting forth the basis for his ruling, and indicated that the Trustee's claims are not precluded under § 546(e) of the Bankruptcy Code in cases where the Trustee "sufficiently alleges

that the transferee from whom [the Trustee] seeks to recover a fraudulent transfer knew of [BLMIS's] fraud, that transferee cannot claim the protection of Section 546(e)'s safe harbor." Opinion and Order (ECF No. 460), 491 B.R. 27 (S.D.N.Y. 2013).

141.    Various defendants raised the § 502(d) Issue and joined in moving papers filed on July 13, 2012.  (ECF Nos. 231–33).  Judge Rakoff heard oral argument on October 9, 2012 and issued a "bottom line" ruling on February 12, 2013, indicating that the Trustee may invoke section 502(d) of the Bankruptcy Code.  (ECF No. 439).  Judge Rakoff issued a decision on June 30, 2014 (the "§ 502(d) Opinion and Order"), explaining the reasons for that decision and directing further proceedings related thereto to be returned to the Bankruptcy Court.  Opinion and Order (ECF No. 549), 513 B.R. 437 (S.D.N.Y. 2014).

142.    The Extraterritoriality Issue was joined by various defendants, who filed moving papers on July 3, 2012.  (ECF Nos. 234-36).  Judge Rakoff held oral argument on September 21, 2012.  On July 6, 2014, Judge Rakoff issued a decision (the "Extraterritoriality Opinion and Order") indicating that certain of the Trustee's claims were barred under *Morrison*, and stated that "section 550(a) does not apply extraterritorially to allow for the recovery of subsequent transfers received abroad by a foreign transferee from a foreign transferor," and directing further proceedings related thereto to be returned to the Bankruptcy Court.  Opinion and Order (ECF No. 551), 513 B.R. 222 (S.D.N.Y. 2014).

143.    The Good Faith Standard Issue was raised by various defendants, who filed two main sets of moving papers on July 20, 2012.  (ECF Nos. 242, 243).  Judge Rakoff heard oral argument on October 12, 2012 and issued a decision on April 27, 2014 (the "Good Faith Standard Opinion and Order"), ruling that "in the context of this litigation and with respect to both section 548(c) and section 550(b)(1), "good faith" means that the transferee neither had

actual knowledge of the Madoff Securities fraud nor willfully blinded himself to circumstances indicating a high probability of such fraud."  With respect to the issue of which party bears the burden of pleading a defendant's good faith or lack thereof, Judge Rakoff further ruled that "a defendant may succeed on a motion to dismiss by showing that the complaint does not plausibly allege that that defendant did not act in good faith."  Opinion and Order (ECF No. 524), 516 B.R. 18 (S.D.N.Y. 2014).

144.    Following the entry of the Good Faith Standard Opinion and Order and the Extraterritoriality Opinion and Order, the Trustee filed an omnibus motion for expedited discovery related to the good faith issue and for leave to replead regarding the issues of good faith and extraterritoriality, which affected over 86 adversary proceedings (the "Omnibus Motion").  (ECF No. 7827).  On September 17, 2014, the Bankruptcy Court held a conference to discuss further proceedings to be conducted pursuant to the Extraterritoriality Opinion and Order and the Omnibus Motion.  The Bankruptcy Court directed the parties to confer and devise an efficient procedure and briefing schedule.  The Omnibus Motion is being held in abeyance pending the Bankruptcy Court's resolution of issues relating to extraterritoriality.

(c)    **The 546(e) Appeal**

145.    On April 27, 2012 the District Court entered an order dismissing certain claims in 78 adversary proceedings.  *See Picard v. Greiff*, Adv. No. 11-03775 (BRL) (Bankr. S.D.N.Y.); *Picard v. Blumenthal*, Adv. No. 11-04293 (BRL) (Bankr. S.D.N.Y.); *Picard v. Goldman*, Adv. No. 11-04959 (BRL) (Bankr. S.D.N.Y.); and *Picard v. Hein*, Adv. No. 11-04936 (BRL) (Bankr. S.D.N.Y.).  *See* Order, No. 12 MC 0115 (JSR) (S.D.N.Y. April 30, 2012), ECF No. 57.  These claims included preferences under § 547 of the Bankruptcy Code, constructive fraudulent transfers under § 548(a)(l)(B) of the Bankruptcy Code, and actual and constructive fraudulent transfers or fraudulent conveyances under provisions of the New York Debtor & Creditor Law

incorporated by § 544(b) of the Bankruptcy Code (the "Dismissed Claims"). The Dismissed Claims did not include those claims proceeding under § 548(a)(l)(A) and § 550(a) of the Bankruptcy Code.

146.    On April 30, 2012, the District Court entered an Opinion and Order explaining the reasons for its decision. *See Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 476 B.R. 715 (S.D.N.Y. 2012). On May 15, 2012, the District Court entered a Supplemental Opinion and Order to make explicit that § 546(e) of the Bankruptcy Code applies to the Trustee's claims for avoidance and recovery of preferential transfers under § 547 of the Bankruptcy Code. *See* Supplemental Opinion and Order, No. 12 MC 0115 (JSR) (ECF No. 101).

147.    On June 21, 2012, the Trustee and SIPC each filed notices of appeal in the Second Circuit from these orders.

148.    The Second Circuit held argument on March 5, 2014. On December 8, 2014, the Second Circuit affirmed the District Court's decision finding that section 546(e) of the Bankruptcy Code bars the Dismissed Claims.

149.    On March 17, 2015, the Trustee and SIPC filed separate petitions for a writ of certiorari with the Supreme Court seeking to reverse the Second Circuit's December 8, 2014 opinion.

150.    On June 22, 2015, the U.S. Supreme Court denied the two petitions for certiorari filed by the Trustee and SIPC.

**B.    Litigation in the Bankruptcy Court and Related Appeals**

        **(a)    Resolution of Good Faith Avoidance Actions**

151.    At the beginning of the Report Period, there were 450 active good faith avoidance actions. 65 were closed during the Report Period, leaving a total of 385 open good faith avoidance actions by the end of the Report Period. In certain avoidance actions, the Trustee

entered into several mediations and considered hardship applications and where appropriate, agreed to dismiss certain defendants from the actions.  During the Report Period, two actions were dismissed pursuant to approved hardship applications and eight were dismissed due to findings of no liability.  In addition, the Trustee's professionals engaged in settlement negotiations, which led to 55 cases entering into documented settlements during the Report Period.

**(b)    Picard v. Andrew H. Cohen, Adv. Pro. No. 10-04311**

152.    On October 14, 2015, the Bankruptcy Court conducted a trial on the merits of the Trustee's avoidance action in the *Picard v. Andrew H. Cohen* matter seeking to avoid and recover $1,143,461 in fraudulent transfers under Sections 548(a)(1)(A) and 550(a)(1) of the Bankruptcy Code.  *See Picard v. Andrew H. Cohen,* Adv. Pro. No. 10-04311 (SMB).  After the close of trial, the Trustee and Mr. Cohen submitted their respective Proposed Findings of Fact and Conclusions of Law.  (*Id.*, ECF Nos. 71, 74, 79).  Thereafter, on April 25, 2016, the Bankruptcy Court issued its Findings of Fact and Conclusions of Law.  *See* Post-Trial Proposed Findings of Fact and Conclusions of Law, *Picard v. Cohen,* Adv. Pro. No. 10-04311 (SMB), 2016 WL 1695296 (Bankr. S.D.N.Y. April 25, 2016) (ECF No. 90).  *Picard v. Andrew H. Cohen,* Adv. Pro. No. 10-04311 (SMB), 2016 WL 1695296 (Bankr. S.D.N.Y. April 25, 2016).

153.    On May 31, 2016, Mr. Cohen filed his objections under Rule 9033 of the Federal Rules of Bankruptcy Procedure (previously defined as "Cohen Objections"), and on June 30, 2016, the Trustee filed his response to the Cohen Objections.  (*Id.,* ECF Nos. 120, 127).  The Findings of Fact and Conclusions of Law were then deemed fully submitted and transferred to District Court Judge Laura Taylor Swain for her review and determination.  No decision has been issued to date.

154.     Separately, on July 12, 2016, Loeb & Loeb LLP, Baker & McKenzie LLP, Milberg LLP, Dentons US LLP, and Pryor Cashman LLP (the "Intervenor-Customers") on behalf of certain defendants in adversary proceedings, moved for leave to file an *amicus curiae* brief ("Amicus Brief") (ECF Nos. 6, 10-12) in support of the Cohen Objections.

155.     On July 26, 2016, the Trustee filed his opposition brief (ECF No. 14), and on August 1, 2016, the Intervenors-Customers filed their reply brief in further support of their motion for leave to file the Amicus Brief.  (ECF No. 21).  On October 7, 2016, Judge Swain denied the Intervenors-Customers' motion.  (ECF No. 23).

156.     On October 9, 2015, the Intervenors-Customers moved to intervene in the *Cohen* matter, as of right or by permission, or alternatively, to participate as *amicus curiae* (the "Motion to Intervene").  (Adv. Pro. No. 10-04311 (SMB), ECF No. 61).  On October 29, 2015, the Trustee opposed the Motion to Intervene, and on November 11, 2015, the Intervenors-Customers filed their reply brief.  (*Id.,* ECF Nos. 65, 69).

157.     On April 25, 2016, the Bankruptcy Court issued a decision denying the Motion to Intervene.  *See Picard v. Cohen,* 550 B.R. 241 (Bankr. S.D.N.Y. April 25, 2016).  *Picard v. Andrew H. Cohen*, Adv. Pro. No. 10-04311 (SMB), 2016 WL 1695296 (Bankr. S.D.N.Y. April 25, 2016).  Subsequently, on April 28, 2016, the Bankruptcy Court entered an Order Denying Motion To Intervene Or To Participate As *Amicus Curiae*, from which the Intervenors-Customers moved to appeal on May 9, 2016.  (*Id.,* ECF No. 63).

158.     The Intervenors-Customers filed their appeal papers on July 7, 2016 (*Id.,* No. 16 Civ. 04462 (LAP) (ECF No. 13), to which the Trustee responded on August 8, 2016 (*Id.* ECF No. 22), and the Intervenors-Customers filed their reply on August 22, 2016.  (*Id.,* ECF No. 23). The appeal is now fully briefed and pending before District Court Judge Loretta A. Preska.

159.    In another effort to sidestep the Bankruptcy Court's *Intervention Decision*, on May 9, 2016, the Intervenor-Customers filed a "Proposed Intervenors' Objections to Proposed Ruling Denying Motion to Intervene Or Participate As *Amicus Curiae*" ("Objections to Proposed Ruling") purportedly under Rule 9033(b) of the Bankruptcy Rules.  (*Id.,* ECF No. 98-99).  They asserted therein that the Bankruptcy Court lacked constitutional authority to enter a final order denying the Motion to Intervene under Bankruptcy Rule 7024.  (*Id.,* ECF No. 98).

160.    On May 13, 2016, the Trustee filed an application for an order to show cause and a motion to expunge the Objections to Proposed Ruling from the record, given that the Intervenor-Customers were denied intervention in the Cohen Proceeding.  (*Id.,* ECF No. 102).  On May 17, 2016, the Intervenor-Customers opposed the Trustee's motion to expunge.  (ECF No. 107).

161.    The Bankruptcy Court granted the Trustee's order to show cause (ECF No. 104).  In a subsequent order on May 20, 2016, the Bankruptcy Court ruled that the Intervenor-Customers' proper path was to pursue their appeal in the District Court, and the deadline for the Trustee to respond to the Objections to the Proposed Ruling was adjourned *sine die* pending any further direction by the District Court, before Judge Preska.  (ECF No. 110).

162.    Despite the Bankruptcy Court's rulings, counsel for Mr. Cohen and counsel for the Intervenor-Customers continued their efforts to insert the Intervenor-Customers into the *Cohen* matter.  In connection with the District Court's review of the Findings of Fact and Conclusions of Law in the *Cohen* matter, on July 12, 2016, Mr. Cohen filed a Statement of Relatedness, claiming that the District Court's review is related to the Intervenor-Customers' current appeal.  (Case No. 16 Civ. 05513, ECF No. 5).  On July 15, 2016, the Trustee filed a

letter objecting to the Statement of Relatedness on the ground that the matters are not related under the Court's Rules for the Division of Business Among District Judges. (*Id.,* ECF No. 7).

163.   On July 19, 2016, counsel for Mr. Cohen responded by filing a motion to withdraw as counsel of record (the "Withdrawal Motion"), and on the very next day, the Intervenor-Customers filed a letter stating that the Withdrawal Motion highlights that "whether or not the cases are formally designated as related matters, the disposition of the Cohen Proceeding and Intervention Appeal should be coordinated so that the Intervention Appeal is decided first." (*Id.,* ECF Nos. 8-9).  The Trustee did not oppose the Withdrawal Motion, in part because Mr. Cohen's counsel represented that they had performed all of the legal tasks necessary to allow the District Court to rule on the Findings of Fact and Conclusions of Law.  (*Id.*, ECF No. 22).

**(c)**    **Extraterritoriality**

164.   On July 6, 2014, the District Court issued the Extraterritoriality Opinion and Order.  *Securities Inv. Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC*, 513 B.R. 222 (S.D.N.Y. 2014).  *See* discussion *supra* Section IX(A)(i)(b).

165.   On August 22, 2014, a number of subsequent transferee defendants, as well as other defendants, requested a conference with this Court to discuss procedures for motions to dismiss based on the Extraterritoriality Opinion and Order.  (ECF No. 7766).

166.   On August 28, 2014, the Trustee filed the Omnibus Motion for Leave to Replead Pursuant to Federal Rule of Civil Procedure 15(a) and Court Order Authorizing Limited Discovery Pursuant to Federal Rule of Civil Procedure 26(d)(1) (the "Omnibus Motion") (ECF No. 7826).

167.   On September 17, 2014, this Court held a conference to discuss the extraterritoriality motion to dismiss procedures, which included discussions regarding the

51

Omnibus Motion. During the conference, this Court ordered the parties to confer and submit a report or recommendation prior to the next omnibus hearing scheduled for October 22, 2014. The parties submitted an order to the Court for procedures governing defendants' motions to dismiss and the Trustee's motion for expedited discovery.

168.    On November 19, 2014, this Court held a hearing regarding two objections that were filed in response to the order the parties had submitted to the Court. Following the hearing, the parties submitted a modified order, which was entered by this Court on December 18, 2014.

169.    On December 10, 2014, this Court issued the Order Concerning Further Proceedings on Extraterritoriality Motion and Trustee's Omnibus Motion for Leave to Replead and for Limited Discovery (the "ET Scheduling Order").

170.    On December 31, 2014, the defendants filed a supplemental memorandum of law in support of their extraterritoriality motion to dismiss (the "Consolidated Motion to Dismiss"). Beginning on June 25, 2015 through June 29, 2015, the Trustee filed his responses to the defendants' supplemental memorandum of law in support of their extraterritoriality motion to dismiss, as well as addenda in all applicable adversary proceedings.

171.    On September 30, 2015, the defendants filed their supplemental reply memorandum in support of their extraterritoriality motion to dismiss and addenda in most applicable adversary actions. This Court held a hearing on the motions to dismiss based on extraterritoriality on December 16, 2015. The motion is *sub judice*.

172.    The Omnibus Motion is currently in abeyance under the ET Scheduling Order pending this Court's ruling on the extraterritoriality issues.

173.    Numerous defendants are involved in the extraterritoriality proceedings, including but not limited to defendants in the following actions: *Picard v. ABN AMRO Bank N.A.*, Adv.

Pro. No. 10-05354 (SMB) (Bankr. S.D.N.Y.); *Picard v. ABN AMRO (Ireland) Ltd. (In re Bernard L. Madoff)*, Adv. Pro. No. 10-05355 (Bankr. S.D.N.Y. filed Dec. 8, 2010) (SMB); *Picard v. BNP Paribas Arbitrage, SNC*, Adv. No. 11-02796 (SMB) (Bankr. S.D.N.Y. 2011); *Picard v. BNP Paribas S.A.*, Adv. No. 12-01576 (SMB) (Bankr. S.D.N.Y. 2011); *Picard v. Legacy Capital Ltd.*, Adv. No. 10-05286 (SMB) (Bankr. S.D.N.Y. 2010); *Picard v. Oreades SICAV*, Adv. No. 10-05120 (SMB) (Bank. S.D.N.Y. 2010); *Picard v. Equity Trading Portfolio Ltd.,* Adv. No. 10-04457 (SMB) (Bank. S.D.N.Y. 2010); *Picard v. Citibank*, Adv. No. 10-05345 (SMB) (Bankr. S.D.N.Y.); *Picard v. Fairfield Sentry Ltd. (In Liquidation)*, Adv. No. 09-01239 (SMB) (Bankr. S.D.N.Y. May 18, 2009); *Picard v. RD Trust*, Adv. No. 12-01701 (SMB) (Bankr. S.D.N.Y.); *Picard v. Barrenche Inc*., Adv. No. 12-01702 (SMB) (Bankr. S.D.N.Y.); and *Picard v. Natixis*, Adv. No. 10-05353 (SMB) (Bankr. S.D.N.Y.).

### i.    Subsequent Transferee Actions

173.    To date, the Trustee has brought a total of 82 adversary proceedings seeking recovery of just over $7.2 billion in subsequent transfers from 150 defendants who redeemed money from Fairfield Sentry Limited, Fairfield Sigma Limited, Fairfield Lambda Limited, Harley International (Cayman) Ltd., Kingate Global Fund Ltd., and Kingate Euro Fund Ltd.  The Trustee has completed service of process in all but one adversary proceeding, for which the Trustee is currently in the process of effectuating international service of process on the remaining two defendants.

174.    The subsequent transferee defendants filed motions to withdraw the reference, which were granted by Judge Rakoff and resulted in Common Briefing by the Trustee and the defendants.  Among the issues affecting the subsequent transfer cases are the Extraterritoriality Issue, the Bad Faith § 546(e) Issue, the avoidance of initial transfers through the settlement with

Fairfield Sentry, Greenwich Sentry, Greenwich Sentry Partners, and various Tremont funds under Bankruptcy Code § 550, application of SLUSA, and the Trustee's standing to assert claims assigned to him. The District Court issued its rulings on all of the issues affecting subsequent transferee cases and remanded the cases to this Court for further findings based on the legal standards set forth in the District Court's decisions.

175.    Two subsequent transferee defendants filed motions to dismiss in the Bankruptcy Court. Briefing on one motion has not yet been completed. In the second motion, *Picard v. Bureau of Labor Insurance*, the defendant sought to dismiss based on the Foreign Sovereign Immunities Act, lack of personal jurisdiction, improper extraterritorial application of SIPA and the Bankruptcy Code, the failure to avoid the initial transfers to Fairfield Sentry through the Fairfield Sentry settlement, and the statute of limitations under Bankruptcy Code § 550. Adv. No. 11-02732 (BRL) (Bankr. S.D.N.Y.), ECF No. 8–10. On October 11, 2012, the Bankruptcy Court denied the motion to dismiss on all grounds. (ECF No. 51). On April 9, 2015, the Bureau of Labor Insurance filled a motion for judgment on the pleadings. On June 9, 2015, the Trustee filed his memorandum in opposition to the motion for judgment on the pleadings. On July 22, 2015, the Bureau of Labor Insurance filed its reply memorandum in support of its motion for judgment on the pleadings. On July 29, 2015, this Court held a hearing on the Bureau of Labor Insurance's motion for judgment on the pleadings. The matter is *sub judice.*

176.    As of September 30, 2016, the response dates to the Trustee's subsequent transfer adversary proceedings have been extended while the parties await this Court's rulings on the defendants' extraterritoriality motions to dismiss and the Omnibus Motion. *See* discussion *supra* Section IX(B)(c).

ii.    **Bad Faith/Feeder Fund Actions**

177.    The Trustee has approximately 41 bad faith and feeder fund actions still pending as of the end of the Report Period.  A few will be highlighted below.

(a)    **The HSBC Action**

178.    On July 15, 2009, the Trustee commenced an adversary proceeding against a handful of HSBC entities and international feeder funds in the financial services industry that transferred funds to and from BLMIS.  *Picard v. HSBC Bank plc*, Adv. No. 09-01364 (BRL) (Bankr. S.D.N.Y.) (the "HSBC Action").  After further investigation, the Trustee filed an amended complaint on December 5, 2010, expanding the pool of defendants to thirteen HSBC entities and forty-eight individuals and entities, and alleging that over 33% of all monies invested in Madoff's Ponzi scheme were funneled by and through these defendants into BLMIS.  (ECF No. 35).

179.    The thirteen HSBC-related defendants and, separately, UniCredit S.p.A. and Pioneer Alternative Investment Management Limited, moved to withdraw the reference.  On April 14, 2011, United States District Judge Jed S. Rakoff ("Judge Rakoff") withdrew the reference to consider the Trustee's standing to assert common law claims.  *Picard v. HSBC Bank plc*, No. 11 Civ. 00836 (JSR) (S.D.N.Y.), ECF Nos. 20, 23.

180.    On May 3, 2011, the same defendants filed motions to dismiss.  *Picard v. HSBC Bank plc*, No. 11 Civ. 00836 (ECF Nos. 24–27).  The Trustee and SIPC opposed the motions.  (ECF Nos. 32–36).  On July 28, 2011, the District Court dismissed the Trustee's common law claims, holding that the Trustee lacked standing, under any theory, to assert them.  *Picard v. HSBC Bank plc*, 454 B.R. 25, 37–38 (S.D.N.Y. 2011).  The District Court returned the remainder of the HSBC Action to this Court for further proceedings.  *Id.* at 38.

181.    On December 15, 2011, the Trustee appealed the District Court's decision to the Second Circuit.  *See Picard v. HSBC Bank PLC*, No. 11-5175 (2d Cir. 2011); *Picard v. HSBC Bank PLC*, No. 11-5207 (2d Cir. 2011).  Oral argument was held on November 21, 2012.  On June 20, 2013, the Second Circuit affirmed the decision of the District Court.  (ECF No. 163).

182.    On October 9, 2013, the Trustee filed a petition for a writ of certiorari with the Supreme Court.  *See Picard v. J.P. Morgan Chase & Co.*, *pet. for cert. filed*, (U.S. Oct. 9, 2013) No. 13-448.  The Supreme Court denied the petition.

183.    The District Court returned several of the Trustee's bankruptcy claims to this Court; however, various defendants in the HSBC Action moved to withdraw the reference from this Court and those motions have been granted, at least in part, by the District Court.  These defendants participated in a variety of motions before the District Court on Common Briefing, including the Bad Faith § 546(e) Issue, the § 502(d) Issue, the Extraterritoriality Issue, and the Good Faith Standard Issue.  The District Court's disposition of these Common Briefing issues is discussed *supra* in Section IX(A)(i)(b).  The HSBC Action has been returned to the Bankruptcy Court.

184.    Following the entry of the Extraterritoriality Opinion and Order, the Trustee filed the Omnibus Motion.  ECF No. 7827.  *See* discussion *supra* Section IX(B)(c).  Following a request by certain defendants, on September 17, 2014, the Bankruptcy Court held a conference to discuss further proceedings to be conducted pursuant to the Extraterritoriality Opinion and Order and the Omnibus Motion.  The Court directed the parties to confer and devise an efficient procedure and briefing schedule.  The Omnibus Motion is being held in abeyance pending the Bankruptcy Court's ruling on the extraterritoriality issues.

185.    The Trustee had been engaged in mediation with Primeo Fund (In Official Liquidation) and Herald Fund SPC (In Official Liquidation).    The mediation commenced in April 2014.    The mediation resulted in a settlement whereby Herald and Primeo paid the Trustee $496,844,288, and Herald received an allowed claim of $1,639,896,943.

186.    The Trustee had been engaged in mediation with Senator Fund.    The mediation commenced in March 2014, which resulted in a $95 million settlement between the Trustee and Senator Fund.    Under the settlement, Senator Fund received an allowed claim in the amount of $238,753,482 and a catch-up distribution in the amount of $116,516,474.29.    Senator Fund paid $95 million by assigning to the Trustee: (i) the funds to be advanced by SIPC in the amount of $500,000 under Senator Fund's allowed customer claim, and (ii) $94.5 million of the $116,516,474.29 catch-up distribution owed to Senator Fund under its allowed customer claim.

### (b)    The Luxalpha Action

187.    On December 10, 2014, the Court entered the ET Scheduling Order.    *See* discussion *supra* Section IX(B)(c).    The ET Scheduling Order provided certain deadlines for the parties to file their respective submissions in connection with the Extraterritoriality Issue and the Omnibus Motion.

188.    On December 31, 2014, the transferee defendants listed in Exhibits A and B to the ET Scheduling Order (the "Defendants Group")—including the moving Access Defendants[12] in the Luxalpha Proceeding (defined below), M&B Capital Advisors Sociedad de Valores, S.A. in the LIF Proceeding, Reliance Management (Gibraltar) Ltd. in the LIF Proceeding (defined

---

[12] The moving Access Defendants consist of Access International Advisors Ltd., Access Management Luxembourg SA (f/k/a Access International Advisors (Luxembourg) SA), Access Partners SA, Patrick Littaye, and Pierre Delandmeter.

below), and the UBS Defendants[13] in the Luxalpha and LIF Proceedings—filed their Consolidated Motion to Dismiss in connection with their Omnibus Motion regarding the Extraterritoriality Issue. *Picard v. UBS AG*, Adv. Pro. No. 10-4285 (SMB) (Bankr. S.D.N.Y.) (the "Luxalpha Proceeding"); *Picard v. UBS AG*, Adv. Pro. No. 10-05311 (SMB) (Bankr. S.D.N.Y.) (the "LIF Proceeding"). *See* discussion *supra* Section IX(B)(c).

189.    On June 26, 2015, the Trustee filed submissions opposing moving defendants' Consolidated Motion to Dismiss regarding the Extraterritoriality Issue in the Luxalpha and LIF Proceedings.   These submissions included a proffered Second Amended Complaint in the Luxalpha Proceeding, and a proffered Amended Complaint in the LIF Proceeding.

190.    On September 30, 2015, the moving Access Defendants in the Luxalpha Proceeding, M&B Capital Advisors Sociedad de Valores, S.A. in the LIF Proceeding, and the UBS Defendants in the Luxalpha and LIF Proceedings filed reply papers in further support of their Consolidated Motion to Dismiss regarding the Extraterritoriality Issue.

191.    In preparing the amended complaints and submissions on the Extraterritoriality Issue across numerous cases—including the Luxalpha and LIF Proceedings—the Trustee relied upon and references many documents that were designated confidential by the various parties who produced such documents (the "Producing Parties").

192.    The Trustee completed meet-and-confer discussions regarding confidentiality issues with counsel for relevant Producing Parties, including the UBS Defendants and Reliance International Research LLC.   Such meet and confers resulted in the de-designation of several documents, but outstanding issues remained with several Producing Parties.

---

[13] The UBS Defendants consist of UBS AG, UBS (Luxembourg) SA, UBS Fund Services Luxembourg SA, and UBS Third Party Management SA.

193.    As a result, the Trustee had entered into arbitration proceedings with the UBS

Defendants and Reliance International Research LLC.  On June 12, 2015, an arbitrator issued a

decision resolving the confidentiality status of certain documents produced by Reliance

International LLC and relied upon by the Trustee in preparation of the amended complaints and

submissions on the Extraterritoriality Issue.  On June 23, 2015, another arbitrator issued a

decision resolving the confidentiality status of certain documents prepared by the UBS

Defendants and relied upon by the Trustee in preparation of the amended complaints and

submissions on the Extraterritoriality Issue.

194.    The Trustee continued to identify additional documents improperly designated as

confidential by certain producing parties for purposes of seeking de-designation from

confidential treatment of these documents, and engaged in additional meet and confers for

further resolution of confidentiality issues.

195.    The Trustee also continued to research and investigate the law and facts at issue in

the Luxalpha and LIF proceedings, including further analyses of the transfers and assessment of

related legal proceedings in both domestic and foreign jurisdictions.  In addition, the Trustee

prepared generally for anticipated discovery in the proceedings, which involved preparation of

discovery requests and proposed case management plans, the scheduling and parameters of

which were discussed with all defendants at a conference under Rule 26(f) of the Federal Rules

of Civil Procedure ("Rule 26(f)" Conference).

196.    In preparation for the joint Rule 26(f) Conference, the Trustee had created a

presentation to explain the procedures for the Trustee's discovery process and protocols, with an

explanation of how the Trustee produces relevant documents through an electronic data room.

The Trustee also continued to research legal issues and conduct fact investigations on matters related to both actions.

197.    On April 4, 2016, the Trustee and the defendants in the LIF Proceeding and the Luxalpha Proceeding, which the parties had agreed should be coordinated for scheduling purposes, participated in a Rule 26(f) conference to discuss, among other things, a schedule for discovery.  At the Rule 26(f) conference and in additional efforts to meet and confer, the parties disputed the appropriate timing of the commencement of discovery under the Federal Rules or otherwise

198.    The Trustee asserted that the Federal Rules permit the immediate commencement of discovery in the proceedings and that further delay of discovery would result in the loss of evidence relevant to the events underlying the Trustee's claims in the proceedings and would unduly prejudice his ability to prosecute those claims.  In connection with the Rule 26(f) conference, the Trustee served requests for the production of documents under Rule 34 of the Federal Rules of Civil Procedure.

199.    The defendants objected to the commencement of discovery under the Federal Rules or otherwise, asserting that certain pending motions, including the Extraterritoriality Motion, the Trustee's motion for leave to amend his complaints, and the defendants' motions to dismiss for lack of personal jurisdiction and *forum non conveniens*, and anticipated motions to dismiss on other grounds (the "Anticipated Motions") will affect the identity of the parties and the scope of discovery in the proceedings, making the commencement of discovery premature at this time and proposed that, in an effort to make progress while the parties awaited the Court's decision on the Extraterritoriality Motion, (a) the parties move forward with briefing on the Anticipated Motions, or (b) in the alternative, the parties be permitted to pursue document

discovery overseas by letters of request pursuant to the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters (the "Hague Convention").

200.    Unable to resolve their dispute concerning the appropriate time for the commencement of discovery, counsel for the Trustee and certain parties appeared before the Honorable Stuart M. Bernstein on April 27, 2016 for a status conference.  Having considered the parties' positions at the April 27 status conference, Judge Bernstein permitted the Parties to commence document discovery through the Hague Convention.

(c)    **Picard v. Avellino**

201.    On December 10, 2010, the Trustee commenced an avoidance action against Avellino & Bienes, Frank J. Avellino, Michael S. Bienes, Nancy C. Avellino, Dianne K. Bienes, Thomas G. Avellino, and numerous other trusts and entities (collectively, the "A&B Defendants") seeking the return of over $904 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent conveyances in connection with certain transfers of property by BLMIS to or for the benefit of the A&B Defendants.  *Picard v. Frank J. Avellino*, Adv. No. 10-05421 (SMB) (Bankr. S.D.N.Y.) (the "A&B Action").

202.    On June 6, 2011, certain A&B Defendants moved to dismiss the complaint in the Bankruptcy Court.  *A&B Action* (ECF Nos. 23-27).  In addition, on June 7, 2011, certain A&B Defendants moved to withdraw the reference to the Bankruptcy Court.  *Id.* (ECF Nos. 28–30); *see also Picard v. Avellino*, No. 11-cv-03882 (JSR) (S.D.N.Y.) (the "A&B Withdrawal Action").

203.    The motion to withdraw the reference was fully briefed in the District Court, and oral argument was held on October 18, 2011.  On February 29, 2012, the District Court issued a Memorandum Order withdrawing the reference on certain issues of law raised by the A&B Defendants and other defendants named in separate adversary proceedings commenced by the

Trustee.  *A&B Withdrawal Action* (ECF No. 20).  As a result of the District Court's order, during

the period of May 2012 through October 2012, the Trustee and the A&B Defendants joined in

consolidated briefing and oral arguments on the withdrawn issues of law.  *See A&B Withdrawal*

*Action* (ECF Nos. 21–23).

204.    Following the disposition of the Common Briefing issues, the Trustee and the

A&B Defendants filed a coordinated briefing schedule on August 7, 2014.  *A&B Action* (ECF

No. 81).  Per the schedule, on September 24, 2014, certain A&B Defendants filed a Renewed

Motion to Dismiss, incorporating their previous June 6, 2011 pleading.  *A&B Action* (ECF Nos.

82-84).  On November 24, 2014, the Trustee filed an amendment to the original complaint (the

"A&B Amended Complaint") in response to the Renewed Motion to Dismiss.  *A&B Action* (ECF

No. 86).  The Trustee and the A&B Defendants conferred and filed an amended coordinated

briefing schedule on January 14, 2015.  *A&B Action* (ECF No. 87).  Under the schedule, certain

A&B Defendants filed a Motion to Dismiss the A&B Amended Complaint on January 28, 2015.

*A&B Action* (ECF Nos. 88-89).

205.    The Trustee and A&B Defendants again conferred and filed an amended

coordinated briefing schedule on April 7, 2015.  *A&B Action* (ECF No. 91).  Under the schedule,

the Trustee's time to respond to the Motion to Dismiss the A&B Amended Complaint was up to

and including May 21, 2015.  Consequently, the A&B Defendants had up to and including June

22, 2015 to file a reply, and oral argument was scheduled for and held on July 29, 2015.  At oral

argument, Judge Bernstein requested supplemental briefs by the Trustee and the A&B

Defendants on issues raised in the Motion to Dismiss briefing, which were filed on August 12,

2015.  *A&B Action* (ECF Nos. 102, 104).

206.    On July 21, 2016, Judge Bernstein issued his memorandum decision and order
(collectively, "July 21 Decision and Order"), granting in part and denying in part the Motion to
Dismiss.  *A&B Action* (ECF Nos. 116, 117).  In the July 21 Decision and Order, Judge Bernstein
held that, due to changes in the corporate form at BLMIS, the Trustee was legally incapable of
recovering fraudulent transfers made prior to January 1, 2001.  *A&B Action* (ECF Nos. 116,
117).

207.    Consequently, on August 19, 2016, the Trustee filed a Motion to Reargue
("Motion to Reargue") this specific aspect of the July 21 Decision and Order.  *A&B Action* (ECF
No. 125).  SIPC filed a Memorandum in Support on August 19, 2016 (ECF No. 123).  The A&B
Defendants opposed the Trustee's Motion to Reargue and filed their opposition papers on
September 19, 2016. *A&B Action* (ECF No. 129).  The Trustee replied to their opposition on
October 3, 2016.  *A&B Action* (ECF No. 134).  Both parties await the Bankruptcy Court's
decision on the matter.  Separate from the Motion to Reargue briefing, a pre-trial conference
concerning general case management is currently scheduled before Judge Bernstein for
November 30, 2016. *A&B Action* (ECF No. 130).

208.    In addition to the Trustee's analysis of the July 21 Decision and Order and work
on the Motion to Reargue briefing, the Trustee continued to prepare for discovery, conduct
document review and perform overall case management during the Report Period.

### (d)      Picard v. Cohmad Sec. Corp.

209.    On June 22, 2009, the Trustee commenced an adversary proceeding against
Madoff insiders Cohmad Securities Corporation ("Cohmad"), Maurice ("Sonny") J. Cohn
("Sonny Cohn"), Marcia B. Cohn, and several other defendants (collectively, the "Cohmad
Defendants") seeking the return of over $245 million under SIPA, the Bankruptcy Code, the
New York Fraudulent Conveyance Act, and other applicable law for fraudulent conveyances,

disallowance of any claims filed against the estate by the Cohmad Defendants, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Cohmad Defendants. *Picard v. Cohmad Sec. Corp.*, Adv. No. 09-01305 (BRL) (Bankr. S.D.N.Y.).

210.    The complaint seeks to avoid and recover the fictitious profits withdrawn by the Cohmad Defendants and the return of commissions and fees transferred directly from BLMIS to Sonny Cohn and Cohmad.  On October 8, 2009, the Trustee filed an amended complaint. (ECF No. 82).   The Cohmad Defendants filed numerous motions to dismiss, which the Trustee opposed. (ECF No. 135).

211.    On August 1, 2011, this Court issued its Memorandum Decision and Order Denying Defendants' Motions to Dismiss Trustee's Complaint.  (ECF No. 209).  This Court found that the Trustee had adequately pleaded that the transfers received by the Cohmad Defendants in excess of their principal were not transferred for reasonably equivalent value, and Cohmad and Sonny Cohn lacked good faith in receiving commissions from Madoff. *Picard v. Cohmad Sec. Corp.*, 454 B.R. 317, 332–34 (Bankr. S.D.N.Y. 2011).

212.    Certain of the Cohmad Defendants filed a motion for leave to appeal. *See Picard v. Cohmad Sec. Corp.*, No. 11 MC 00337 (TPG) (S.D.N.Y.), ECF Nos. 212–13.  The Cohmad Defendants' appeal was denied by Judge Griesa on November 14, 2012.

213.    In March and April 2012, the Cohmad Defendants moved to withdraw the reference from this Court. *Picard v. Cohmad*, 12-cv-02676 (JSR) (S.D.N.Y.), ECF No. 1.  The Cohmad Defendants have also participated in Common Briefing as to the Bad Faith § 546(e) Issue and the Good Faith Standard Issue. *See* discussion *supra* Section (IX)(A)(i)(b).  The District Court rendered a decision on the Bad Faith § 546(e) Issue, which indicated that the Trustee adequately pleaded a case against the Cohmad Defendants so that the Cohmad

Defendants are not entitled to dismiss the Trustee's complaint at the pleading stage on the basis of Bankruptcy Code Section 546(e).

214.    Meanwhile, the parties have engaged in discovery.  The Trustee has served discovery on all parties and third parties, and discovery is ongoing.

215.    On April 25, 2016, a Second Amended Case Management Plan was so ordered by the Court extending the date that discovery closes to December 30, 2016.

216.    On July 6, 2016, the Court issued an order substituting as defendants the Estates of Maurice Cohn and Milton Cohn (and their executors) in place of defendants Sonny Cohn and Milton Cohn, who died in May and August 2015, respectively.

### (e)    Picard v. Kingate

217.    On March 17, 2014, the Trustee filed and served a fourth amended complaint under SIPA, the Bankruptcy Code, New York Debtor and Creditor Law and other applicable law against Kingate Global Fund, Ltd. and Kingate Euro Fund, Ltd. and numerous other defendants in the adversary proceeding captioned as *Picard v. Federico Ceretti*, Adv. No. 09-01161 (SMB) (Bankr. S.D.N.Y.), ECF No. 100 (the "Fourth Amended Complaint").

218.    On April 15, 2016, following several discovery-related conferences before this Court, the Trustee filed a motion to compel ("Motion to Compel") (ECF No. 252-267) the Kingate Funds to produce all documents they had obtained through discovery in an action the Funds were litigating in the Bermuda Supreme Court on grounds other than fraudulent conveyance ("Bermuda Action").  The Funds named as defendants in the Bermuda Action are substantially the same defendants[14] named in the Trustee's Fourth Amended Complaint,[15] which

---

[14] The defendants named by the Kingate Funds in the Bermuda Action and also named by the Trustee in the Avoidance Action are Kingate Management Limited ("KML"), FIM Advisers LLP and FIM Limited (together, the "FIM Entities"), and First Peninsula Trustees Limited, Port of Hercules Trustees Limited, Alpine Trustees Limited,

asserts claims under SIPA, the Bankruptcy Code, New York Debtor and Creditor Law, and other applicable law.  According to the Kingate Funds' counsel, the Funds obtained approximately 94,000 unique documents in the Bermuda Action, which are all relevant and indeed critical to discovering the extent of the defendants' actual knowledge of Madoff's fraud in connection with BLMIS's Investment Advisory business.  The Motion to Compel also sought to have the Court order the non-Fund defendants in the Trustee's Avoidance Action to participate in discovery under the Federal Rules of Civil Procedure.   Contemporaneously, the Trustee served the non-Fund defendants with requests for the production of documents that they produced in Bermuda to the Kingate Funds.

219.    On May 20, 2016, defendants opposed the Motion to Compel in five separate opposition briefs on the principal ground that there is an implicit stay of discovery in effect until the Court decides the defendants' motions to dismiss on extraterritoriality issues, which is pending before this Court.  Defendants further argued that if a stay is not currently in effect, the Court should *sua sponte* impose one, even though the defendants had not filed a cross-motion for such relief.  Finally, the defendants argued that if they are not dismissed on extraterritorial grounds, they intend to seek dismissal on the ground that the Court lacks personal jurisdiction over them.  The contested Motion to Compel was fully briefed on May 31, 2016, and on June 9, 2016, the Court heard oral argument from counsel for all parties to the Avoidance Action (ECF No. 277).  The Court reserved decision.

220.    Meanwhile, during the Report Period, the Trustee and the Kingate Funds continued to work through their other discovery-related issues in accordance with the Case

---

The Ashby Trust, Ashby Holding Services Limited, Ashby Investment Services Limited, El Prela Trust, El Prela Group Holding Services Limited, and El Prela Trading Investments Limited.

[15] *Picard v. Federico Ceretti*, Adv. No. 09-01161 (SMB) (Bankr. S.D.N.Y.), (the "Avoidance Action") [ECF No. 100].

Management Plan so ordered by the Court on October 26, 2015 ("CMP") (ECF No. 227).  As recently as September 12, 2016, counsel for the Kingate Funds and the Trustee met and conferred to discuss various issues raised by the Trustee's responses to the Kingate Funds' interrogatories and the Funds' compliance with the Trustee's discovery requests.  The Trustee and the Kingate Funds are still in the document phase of discovery, which must be completed before the parties can effectively begin to take depositions.  The progress on discovery during the relevant period is summarized below.

221.    On May 19, 2016, the Kingate Funds produced to the Trustee over 200 boxes of hard copy documents that the Funds had obtained from Citi Hedge Fund Services Limited.  These documents were collected by the Kingate Funds following commencement of the Funds' liquidation proceedings, and were among various documents voluntarily produced to the Funds from their service providers and other agents, including KML, Citi Hedge, the Funds' directors, HSBC Bank, and Tremont, a co-manager of Kingate Flobal Fund for a decade ("Voluntary Production").  The Trustee physically retrieved these documents through an overnight carrier service from Bermuda, where they were maintained, and transported them to New York, where they were scanned into an electronic database by an outside vendor retained by the Trustee.  The scanning resulted in approximately 250,000 documents added to the over 200,000 documents that were previously produced to the Trustee as part of the Voluntary Production.  At the Kingate Funds' request, after scanning, the Trustee returned the boxes of documents to the Kingate Funds' agent in London.

222.    On June 30, 2016 the Trustee served the Kingate Funds with the Trustee's First Set of Interrogatories.  The Kingate Funds responded to those interrogatories on August 1, 2016.

223.    On July 11, 2016, the Trustee responded to the Kingate Funds' First Set of Interrogatories.

224.    On April 27, 2016, the Trustee served Eric Lazear, the former head of Operational Due Diligence for FIM (USA), the U.S. arm of the FIM Entities until it was dissolved following Madoff's confession, with a subpoena duces tecum. On June 6, 2016, Mr. Lazear's counsel and the Trustee's counsel participated in a telephonic meet and confer. The parties thereafter exchanged correspondence and conferred further, with the result that on August 4, 2016, Mr. Lazear produced certain documents to the Trustee.

225.    On June 1, 2016, the Trustee served Michael G. Tannenbaum, and his law firm, Tannenbaum, Helpern, Syracust & Hirschtritt (collectively, the "Tannenbaums") with a subpoena duces tecum. The Trustee received a response from the Tannenbaums' counsel on July 11, 2016, invoking privilege and raising other issues. Mr. Tannenbaum served as both a director of KML, at the same time that he served as lead counsel to the Kingate Funds and Tremont Group Holdings Inc. ("Tremont"), the co-manager with KML for Kingate Global Fund. Issues concerning what documents are not privileged due to Mr. Tannenbaum's role as director will have to be addressed by counsel for the Tannenbaums and the Trustee.

226.    On June 7, 2016, the Trustee served a subpoena duces tecum on Tremont through its counsel, Skadden, Arps, Slate, Meagher & Flom. Counsel for Tremont responded on August 8, 2016, and the parties met and conferred on August 24, 2016, and worked through acceptable search terms that would be highly likely to yield relevant documents to the Kingate proceeding in Tremont's possession, custody, or control.

227.    The Trustee's counsel is preparing subpoenas for other third party, potential witnesses who are located in the U.S., and several document requests for foreign-based third

parties who, based upon their role in the Kingate Funds' business with Madoff and BLMIS, are potential top priority witnesses in the Avoidance Action. These document requests will have to be prepared and served in accordance with applicable foreign law by letters rogatory or under the auspices of the Hague Convention.

228. Throughout the Report Period, the Trustee and his counsel have continued to collaborate with the Trustee's foreign counsel, as necessary, on matters involving foreign law, and the Trustee's consultants regarding the Kingate Funds' flow of cash into and withdrawals from BLMIS.

### (f)    Picard v. J. Ezra Merkin

229. On May 7, 2009, the Trustee commenced an adversary proceeding against sophisticated money manager and Madoff associate J. Ezra Merkin ("Merkin"); the investment management company he solely owned, Gabriel Capital Corporation ("GCC"); and his funds, Gabriel Capital, L.P. ("Gabriel Capital"), Ariel Fund Ltd. ("Ariel Fund"), and Ascot Partners, L.P. ("Ascot Partners") (collectively, the "Merkin Defendants"[16]). (ECF. No. 1). The Trustee alleged that Merkin knew or should have known that Madoff's investment advisory business ("IA Business") was predicated on fraud. Among other things, the Trustee sought the return of nearly $560 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law, for preferential and fraudulent transfers that were made by BLMIS to or for the benefit of the Merkin Defendants. *Picard v. J. Ezra Merkin*, Adv. No. 09-01182 (BRL) (Bankr. S.D.N.Y.) (ECF No. 1-2). On August 6, 2009, the Trustee filed an amended complaint. (ECF No. 10).

---

[16] Ascot Fund Ltd. was added as a defendant on August 30, 2014 and will be included in the definition of "Merkin Defendants" for all events after this date.

230.    On August 30, 2013, the Trustee filed the third amended complaint (the "Third

Amended Complaint"), which alleges that the Merkin Defendants had knowledge of, or were

willfully blind to, the fraud at BLMIS consistent with the District Court's recent decisions. (ECF

No. 212).  The Third Amended Complaint also asserted subsequent transfer claims against Ascot

Fund Ltd. ("Ascot Fund"), a Cayman fund controlled by Merkin.

231.    On October 11, 2013, the Receivers, Merkin and GCC filed motions to dismiss

the Third Amended Complaint.  (ECF Nos. 160, 166, 168).  On November 15, 2013, the Trustee

filed a consolidated opposition brief in response to these motions to dismiss.  (ECF No. 173).  On

December 20, 2013, the Receivers and Merkin and GCC filed briefs in further support of their

motions to dismiss.  (ECF Nos. 185-188).

232.    The Trustee entered into a stipulation with Ascot Fund extending its time to

move, answer, or otherwise respond to the Third Amended Complaint.  (ECF Nos. 159, 171).

Ascot Fund ultimately filed a motion to dismiss the Third Amended Complaint on December 20,

2013.  (ECF Nos. 182-183).  On December 23, 2013, the Trustee and Ascot Fund entered into a

stipulation which clarified the subsequent transfer counts of the Third Amended Complaint

against Ascot Fund.  (ECF No. 189).  The Trustee filed his opposition to the Ascot Fund motion

to dismiss on January 31, 2014.  (ECF Nos. 198-199).

233.    On April 30, 2014, this Court heard oral arguments on the motions to dismiss.

(ECF No. 210).  Thereafter, on August 12, 2014, this Court entered its Decision Granting in Part

and Denying in Part Defendants' Motion to Dismiss.  (ECF No. 212).  The Court found that the

Third Amended Complaint "adequately pleads willful blindness" and that the Trustee may thus

still pursue avoiding and recovering all of the intentional fraudulent transfers that he brought

under section 548(a)(1)(A) of the Bankruptcy Code.  The Court also found that the Trustee did

not sufficiently plead that the Merkin Defendants had "actual knowledge" of Madoff's fraud.  As

a result, the Court held that section 546(e) of the Bankruptcy Code limits the Trustee's avoidance

counts to those asserted under section 548(a)(1)(A), and dismissed the Trustee's counts for

preferential transfers, constructive fraudulent transfers, and fraudulent transfers under New York

Debtor & Creditor Law.  The Court also dismissed the Third Amended Complaint's counts of

disallowance and equitable disallowance on bases unrelated to actual knowledge.

234.    On January 30, 2015, fact discovery concluded, except for limited matters agreed

upon by the parties.  (ECF No. 264).

235.    On February 5, 2015, Ariel Fund and Gabriel Capital, Ascot Partners and Ascot

Fund, and Merkin and GCC filed their respective answers to the Third Amended Complaint.

(ECF Nos. 259-261).

236.    On March 20, 2015, the Trustee, Merkin, and GCC served expert reports pursuant

to Rule 26(a)(2) of the Federal Rules of Civil Procedure.  (ECF No. 264).  On May 15, 2015, the

Trustee and the Merkin Defendants served rebuttal expert reports.  (ECF No. 264).  Expert

discovery concluded on July 17, 2015.  (ECF No. 264).

237.    On May 29, 2015, the Trustee filed a Motion For Entry of Order Pursuant to

Section 105(a) of the Bankruptcy Code and Rules 2002 and 9019 of the Federal Rules of

Bankruptcy Procedure Approving A Settlement Agreement Between the Trustee, Gabriel

Capital, L.P. Ariel Fund LTD., and Bart M. Schwartz as the Appointed Receiver of Gabriel

Capital, L.P. and Ariel Fund Ltd (the "Settlement Motion").  (ECF Nos. 266-267).  On June 22,

2015, the Trustee filed a Certificate of No Objection as to the Settlement Motion, representing

that there had been no objection, responsive pleading, or request for a hearing with respect to the

Settlement Motion by the deadline for filing objections and requesting that the order be entered

without a hearing.  (ECF No. 268).  On June 23, 2015, this Court entered an Order granting the Settlement Motion and approving the settlement agreement between the Trustee, Gabriel Capital, Ariel Fund, and the Ariel/Gabriel Receiver.  (ECF No. 270).  On September 8, 2015, the Trustee, Gabriel Capital, and Ariel Fund entered into a stipulation dismissing Gabriel Capital and Ariel Fund from the action with prejudice.  (ECF No. 282).

238.    On August 10, 2015, the Trustee filed a motion to withdraw the reference to the Bankruptcy Court.  (ECF Nos. 271-273); *see also Picard v. Merkin*, No. 15-cv-06269 (the "Trustee's Withdrawal Motion").

239.    On August 11, 2015, Merkin, GCC, Ascot Partners and Ascot Fund filed respective letters to this Court requesting a pre-motion conference regarding the defendants' intention to file a motion for summary judgment of all the Trustee's remaining claims.  (ECF Nos. 275-276).  On August 21, 2015, this Court permitted the remaining defendants to file motions for summary judgment.  (ECF No. 281).

240.    On August 24, 2015, the remaining defendants filed an opposition to the Trustee's Withdrawal Motion.  *Trustee Withdrawal Motion* (ECF Nos. 5-6).

241.    On September 3, 2015, the Trustee withdrew his Withdrawal Motion, as all parties to the action stipulated and consented to: (a) entry of final orders and judgments by the Bankruptcy Court on all claims in this adversary proceeding; (b) waiver of their right to a jury trial; and (c) a bench trial before the Bankruptcy Court on all claims in this proceeding.  *Trustee Withdrawal Motion* (ECF No. 10).  On September 17, 2015, the parties had a conference before the District Court where it confirmed the parties' consent to try the case to final judgment before the Bankruptcy Court.  (ECF Nos. 278-280); *Trustee Withdrawal Motion* (ECF Nos. 11-12).

242.    On October 7, 2015, the remaining defendants filed their respective motions for summary judgment.  (ECF Nos. 283-287).  The Trustee filed his opposition on November 25, 2015.  (ECF Nos. 289-302).  The remaining defendants filed their respective replies in support of their motions on December 23, 2015.  (ECF Nos. 306-310).

243.    On June 1, 2016, this Court heard oral argument on the remaining defendants' motions for summary judgment.  (ECF Nos. 315, 318, 322).

244.    On July 12, 2016, the Trustee and the remaining defendants entered into a Fifteenth Amended Case Management Plan.  (ECF No. 324).  The plan provides that pretrial briefing and disclosures will be agreed upon by the parties at the time this Court issues a decision on the remaining defendants' motions for summary judgment.  The final pre-trial conference and the commencement of trial will be held on a date and time scheduled by the Court.

245.    During the Report Period, the Trustee and remaining defendants entered mediation.  On August 22, 2016, the Trustee and remaining defendants had an in-person mediation session, with the Honorable Robert E. Gerber, a retired judge of this Court, serving as mediator.  (ECF No. 325).  After the August 22, 2016 in-person mediation session, Judge Gerber then had a number of telephone conversations with both sides, which continued through September 2, 2016.  (ECF No. 325).  On September 6, 2016, Judge Gerber filed his Mediator's Final Report, which informed the Court that the mediation was unsuccessful.  (ECF No. 325).

246.    During the Report Period, the Trustee prepared for and participated in oral argument on the remaining defendants' motions for summary judgment (ECF Nos. 315, 318, 322), prepared for and participated in mediation (ECF No. 325), and prepared for a potential trial before this Court.

(g)    **Picard v. Legacy Capital Limited**

247.    On December 6, 2010, the Trustee commenced an action against Legacy Capital Ltd., Isaac Jimmy Mayer, Rafael Mayer, Khronos LLC, Khronos Capital Research LLC,  HCH Management Co., Montpellier Resources Ltd., BNP Paribas Securities Corp., Inversiones Coque S.A., Aurora Resources Ltd., and Olympus Assets LDC (collectively, the "Legacy Capital Defendants") seeking the return of over $218 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Legacy Capital Defendants.  *Picard v. Legacy Capital Ltd.*, Adv. No. 10-05286 (BRL) (Bankr. S.D.N.Y. 2010).

248.    On July 2, 2015, B&H attorneys, on behalf of the Trustee, filed and served a First Amended Complaint ("Amended Complaint") in connection with this adversary proceeding. The Trustee's Amended Complaint named Khronos LLC and Legacy Capital Ltd. as the remaining defendants.   On July 30, 2015, Defendants Khronos LLC and Legacy Capital Ltd. filed motions to dismiss the Amended Complaint under Federal Rule of Bankruptcy Procedure 7012(b) and Federal Rule of Civil Procedure 12(b)(6).  The Trustee responded to the motions to dismiss, and on October 28, 2015, the Trustee participated in oral argument before Judge Bernstein concerning Khronos LLC's and Legacy Capital Ltd.'s motions to dismiss the Trustee's complaint.

249.    On March 14, 2016, Judge Bernstein ruled on the defendants' pending motions to dismiss the Trustee's Amended Complaint, dismissing all of the Trustee's claims excluding his claim to recover fictitious profits transferred from BLMIS to or for the benefit of Legacy Capital Ltd.  The Trustee worked with Legacy Capital Ltd. and Khronos LLC on a proposed joint order

entering Judge Bernstein's decision. The parties met and conferred concerning the defendant's disputed contention that Judge Bernstein's dismissals were granted with prejudice.

250.    During the Report Period, B&H attorneys, on behalf of the Trustee, participated in oral argument before Judge Bernstein concerning Khronos LLC's and Legacy Capital Ltd.'s contention that Judge Bernstein's dismissals were with prejudice.  At a chambers hearing before Judge Bernstein, it was decided that the claims were dismissed without prejudice.  The Trustee subsequently entered into an agreement with Khronos LLC whereby claims were dismissed against this defendant only with prejudice in exchange for a representation regarding the nature of certain transfers.  On April 12, 2016, Judge Bernstein entered an order in connection with the motions to dismiss.

251.    On May 16, 2016, Legacy Capital Ltd. filed its answer to the Trustee's Amended Complaint (the "Answer").  On September 7, 2016, the Trustee filed a motion for judgment on the pleadings in light of the admissions set forth in Legacy Capital Ltd.'s Answer.  Oral argument in connection with the Trustee's motion for judgment on the pleadings is scheduled for November 3, 2016.

252.    During the Report Period the Trustee continued to develop his case against Defendant Legacy Capital Ltd., and served Rule 45 subpoenas on third parties related to the claims in the Trustee's Amended Complaint.  Furthermore, B&H attorneys, on behalf of the Trustee, have proceeded with written discovery with Legacy Capital Ltd. in accordance with the Case Management Order.

###    (h)    Picard v. Magnify Inc.

253.    On December 6, 2010, the Trustee commenced an action against Magnify, Inc. and several related companies holding BLMIS accounts, individuals acting on behalf of these accounts, and several other recipients of transfers from these accounts (collectively, the

"Magnify Defendants") seeking the return of more than $154 million under SIPA §§ 78fff(b) and 78fff-2(c)(3), §§ 105(a), 542, 544, 547, 548(a), and 551 of the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable laws for preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Magnify Defendants. *Picard v. Magnify Inc.*, Adv. No. 10-05279 (BRL) (Bankr. S.D.N.Y.). On September 21, 2011, the Trustee filed an amended complaint in the action. (ECF No. 39).

254. On April 2, 2012, defendants Robert H. Book and R.H. Book LLC moved to withdraw the reference to the District Court on several grounds. *See Picard v. Magnify, Inc.*, No. 12-cv-02482 (JSR) (S.D.N.Y.). These defendants have since resolved the Trustee's claims and have been dismissed from the action.

255. Defendant Kurt Brunner moved to dismiss the Trustee's complaint for lack of personal jurisdiction on September 1, 2011, and supplemented this motion with regard to allegations in the amended complaint on November 3, 2011. *Picard v. Magnify*, Adv. No. 10-05279 (BRL) (ECF Nos. 32, 48). On June 14, 2012, this Court held a hearing on Mr. Brunner's motion to dismiss for lack of personal jurisdiction. This Court denied the motion and ordered jurisdictional discovery over Mr. Brunner related to "the degree to which Brunner controlled and profited from [defendants] Magnify, Premero and Strand" and entered an order to this effect on June 15, 2012. (ECF No. 97). Determination of personal jurisdiction over Mr. Brunner was stayed pending resolution of a motion to dismiss for lack of personal jurisdiction and *forum non conveniens* filed in *Picard v. Estate (Succession) of Doris Igoin*, Adv. No. 10-04336 (BRL) (Bankr. S.D.N.Y.), a pending avoidance action against defendants who have ties to the late founder of several of the Magnify Defendants.

256.    Mr. Brunner subsequently resolved the Trustee's claims and was dismissed from the *Magnify* action without prejudice on February 5, 2015.  The *Igoin* defendants' motion was denied on February 13, 2015.

257.    On September 21, 2015, the Trustee voluntarily dismissed Defendant Special Situations Cayman Fund, L.P., from the action with prejudice.

258.    On December 10, 2015, the parties entered into an amended case management plan.  Pursuant to this plan, the Trustee received and reviewed documents served in response to written discovery requests to several of the Magnify Defendants, corresponded with counsel for the Magnify Defendants regarding deficiencies in discovery responses and the production of additional documents, conferred with counsel for the Magnify Defendants regarding contemplated depositions in the United States and Israel, and continued to seek documents through letters of request pursuant to the Hague Convention to certain third parties who may possess relevant information.

259.    In addition, in December 2015, the Trustee filed two separate actions in Israel under Israeli law.  In connection with these actions, the Trustee worked with Israeli counsel to respond to statements of defense and motions, and draft and serve initial disclosures and discovery requests.

### (i)    Picard v. Andrew H. Madoff

260.    On October 2, 2009, the Trustee commenced an adversary proceeding against Peter Madoff, Andrew Madoff, Shana Madoff, and the late Mark Madoff (the "Family Defendants") seeking the return of approximately $198 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent transfers, fraudulent conveyances and damages for breach of fiduciary duty, negligence, unjust enrichment, constructive trust, and accounting in connection with certain transfers of property by

BLMIS to or for the benefit of the Family Defendants.  *Picard v. Andrew H. Madoff*, Adv. No. 09-01503 (BRL) (Bankr. S.D.N.Y.).[17]  On March 15, 2010, the Family Defendants filed a motion to dismiss the complaint.  (ECF Nos. 13–19).  The Trustee opposed the motion.  (ECF No. 25).

261.    The Trustee filed a Motion for Leave to File a Third Amended Complaint on July 15, 2014.  (ECF No. 184).  In his proposed Third Amended Complaint, the Trustee sought to remove all dismissed defendants and the factual allegations and claims asserted against them in the Second Amended Complaint.  (ECF No. 185).  The Trustee also sought to address altered legal standards and pleading burdens in light of District Court decisions rendered after the Second Amended Complaint was filed.  (*Id.*).

262.    Andrew Madoff, individually and as Executor of the Estate of Mark Madoff, opposed the motion.  (ECF No. 191, 192).  A hearing on the Trustee's Motion for Leave to Amend is scheduled for December 21, 2016.  (ECF No. 266).  Following the death of Andrew Madoff on September 3, 2014, the parties stipulated to an extension of the deadline to substitute the Estate of Andrew Madoff, Martin Flumenbaum as Executor of the Estate of Andrew Madoff, and David Blumenfeld as the Successor Executor of the Estate of Mark Madoff to April 8, 2016. (ECF No. 227).  The Trustee filed a Motion to Substitute David Blumenfeld as the Successor Executor of the Estate of Mark Madoff on April 7, 2016, and on April 8, 2016, the parties stipulated to the extension of the deadline to substitute Andrew Flumenbaum as Executor of the Estate of Andrew Madoff to May 6, 2016.  (ECF No. 242.)  The Trustee filed a Motion to Substitute Andrew Madoff as Executor of the Estate of Andrew Madoff on May 6, 2016.  (ECF

---

[17] The case formerly was styled as *Picard v. Peter B. Madoff*, Adv. No. 09-01503.  The caption was revised following the Trustee's consent judgment against Peter Madoff and dismissal with prejudice of Shana Madoff, as discussed herein.

No. 253.)   A hearing on the Trustee's Motions to Substitute is scheduled for December 21, 2016.  (ECF Nos. 267, 268.)

### (j)   Picard v Rye/Tremont

263.   On December 7, 2010, the Trustee commenced an action against Tremont Group Holdings, Inc., Tremont Partners, Inc., Tremont (Bermuda) Ltd., Rye Select Broad Market Fund, and numerous other entities and individuals (collectively, the "Tremont Funds") in which the Trustee sought the return of approximately $2.1 billion under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences and fraudulent conveyances in connection with certain transfers of property by BLMIS to or for the benefit of the Tremont Funds (the "Tremont Litigation").  *Picard v. Tremont Group Holdings, Inc.*, Adv. No. 10-05310 (SMB) (Bankr. S.D.N.Y.).

264.   After the court filing, the parties entered into substantive settlement negotiations. On September 22, 2011, this Court approved a settlement between the Trustee and more than a dozen domestic and foreign investment funds, their affiliates, and a former chief executive associated with Tremont Group Holdings, Inc. (collectively, "Tremont") in the amount of $1.025 billion.  *Picard v. Tremont Group Holdings, Inc.*, Adv. No. 10-05310 (SMB) (Bankr. S.D.N.Y.), (ECF No. 38).  (There were two non-settling defendants at the time, Sandra Manzke ("Manzke") and Rye Select Broad Market XL Portfolio Limited ("XL Portfolio")).

265.   Pursuant to the settlement, Tremont delivered $1.025 billion into an escrow account, which was placed into the Customer Fund, and the Trustee allowed certain customer claims related to Tremont in the approximate amount of $2.9 billion.  Two objections to the settlement agreement were filed by non-BLMIS customers, both of which were overruled by this Court.  This Court entered an Order Granting Trustee's Motion for Entry of Order Approving Agreement.  (ECF No. 38).

266.    Pursuant to the Tremont settlement, Tremont delivered $1.025 billion into an escrow account on November 6, 2012.  The settlement payment was released from the escrow account to the Trustee on February 8, 2013.  Accordingly, the Trustee allowed certain customer claims related to Tremont.

267.    On February 10, 2012, XL Portfolio settled with the Trustee in connection with the Tremont Litigation, as well as two other actions commenced on December 8, 2010 by the Trustee against XL Portfolio and other defendants.  These other actions are captioned *Picard v. ABN AMRO Bank, N.V. et al.,* Adv. No. 10-05354 (SMB) (Bankr. S.D.N.Y. Dec. 8, 2010) and *Picard v. ABN AMRO (Ireland) Ltd., et al,* Adv. No. 10-05355 (SMB) (Bankr. S.D.N.Y. Dec. 8, 2010).

268.    On September 17, 2013, the remaining defendant in the Tremont Litigation, Manzke, who was also a defendant in the captioned action, *Picard v. Maxam Absolute Return Fund Ltd., et al.,* Adv. No. 10-05342 (Bankr. S.D.N.Y. Dec. 8, 2010), settled and had approved the latter action.  Upon the Maxam settlement, Manzke was dismissed from the Tremont Litigation, and that case closed.

269.    Subsequent to the dismissal of the Maxam and Tremont cases, strategy and investigation for proposed actions and amended proceedings against subsequent transferees has continued.  This includes work related to issues concerning extraterritoriality of some of the proposed defendants, and analysis consistent with various recent court rulings.

(k)    **Picard v. Stanley Shapiro**

270.    On December 9, 2010, the Trustee commenced an action against Stanley Shapiro, Renee Shapiro, David Shapiro, Rachel Shapiro, Leslie Shapiro Citron, Kenneth Citron, and numerous trusts (collectively, the "Shapiro Defendants") seeking the return of over $54 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other

80

applicable law for fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Shapiro Defendants.  *See Picard v. Shapiro*, Adv. No. 10-05383 (BRL) (Bankr. S.D.N.Y.).

271.    In early 2014, the Trustee filed a second amended complaint against the Shapiro Defendants.  The Shapiro Defendants moved to dismiss the second amended complaint on several grounds including, but not limited to, that they could avail themselves of the safe harbor protection under Section 546(e) of the Bankruptcy Code.  In late 2015, the Bankruptcy Court issued a written decision in which it granted in part and denied in part the Shapiro Defendants' motion.

272.    During the Report Period, the Trustee commenced discovery with the Shapiro Defendants, including propounding requests for admissions and seeking stipulations from certain of the Shapiro Defendants.  Also during the Report Period, the Trustee continued to develop his case against the same.

### (l)    Picard v. ABN AMRO Bank N.A.

273.    On December 8, 2010, the Trustee commenced an action against ABN AMRO Bank N.A. (presently known as The Royal Bank of Scotland N.V.) (the "ABN/RBS"), ABN AMRO Incorporated ("ABNI"), Rye Select Broad Market XL Fund, LP, and Rye Select Broad Market XL Portfolio Limited Ltd.  *Picard v. ABN AMRO Bank N.A.*, Adv. Pro. No. 10-05354 (BRL) (Bankr. S.D.N.Y.) (the "ABN/RBS Action").

274.    On September 30, 2011, ABN/RBS and ABNI moved for withdrawal of the reference.  *Picard v. ABN AMRO Bank N.A.*, No. 11 Civ. 6878 (JSR) (S.D.N.Y.), ECF Nos. 1-3.  On January 11, 2012, the Trustee and SIPC opposed the motion.  *Id.*, ECF Nos. 12-14.  On January 27, 2012, ABN/RBS and ABNI filed reply papers.  *Id.*, ECF No. 15.  The District Court

granted the motion on May 15, 2012, allowing ABN/RBS and ABNI to move to dismiss as to the issues of 550(a) and 546(g). *Id.*, ECF No. 21.

275.    On July 18, 2012, ABN/RBS and ABNI filed a motion to dismiss the Trustee's complaint, claiming the safe harbor of Bankruptcy Code section 546(g) bars the Trustee's subsequent transferee claims. *Id.*, ECF Nos. 29-31.  On August 14, 2012, the Trustee filed an amended complaint naming only ABN/RBS and Rye Select Broad Market XL Fund, LP as defendants. *Id.*, ECF No. 32.  On September 5, 2012, ABN/RBS filed a motion to dismiss the Trustee's amended complaint, again claiming the safe harbor of Bankruptcy Code section 546(g) bars the Trustee's subsequent transferee claims. *Id.*, ECF Nos. 33-35.  On September 25, 2012, the Trustee and SIPC opposed the motion. *Id.*, ECF Nos. 36-37.  On October 5, 2012, ABN/RBS filed reply papers. *Id.*, ECF No. 38.  On March 14, 2013, the District Court issued an order partially denying and partially granting the 546(g) motion, and stating that an opinion providing the reason for the ruling would follow. *Id.*, ECF No. 39.  On April 15, 2013, the District Court issued its decision concerning Bankruptcy Code section 546(e). *Id.*, ECF No. 40.

276.    On February 27, 2013, the Trustee voluntarily dismissed Rye Select Broad Market XL Fund, L.P. with prejudice. *Picard v. ABN AMRO Bank N.A.*, Adv. Pro. No. 10-05354 (BRL) (Bankr. S.D.N.Y.), ECF No. 56.

277.    On April 27, 2014, the District Court issued the Good Faith Standard Opinion and Order, upon which ABN/RBS and other defendants had moved to withdraw the reference. *Securities Inv. Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC*, 2014 WL 1651952 (S.D.N.Y. Apr. 27, 2014).  See discussion *supra* Section IX(A)(i)(b).

278.    On July 6, 2014, the District Court issued the Extraterritoriality Opinion and Order. *Securities Inv. Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC*, 513 B.R. 222 (S.D.N.Y.

2014).   See discussion *supra* Section IX(A)(i)(b).   Through the Extraterritoriality Opinion and

Order, the ABN/RBS Action was remanded back to the Bankruptcy Court.   *Picard v. ABN*

*AMRO Bank N.A.*, Adv. Pro. No. 10-05354 (SMB) (Bankr. S.D.N.Y.), ECF No. 67.

279.   Following the entry of the Extraterritoriality Opinion and Order, the Trustee filed

the Omnibus Motion for Leave to Replead Pursuant to Federal Rule of Civil Procedure 15(a) and

Court Order Authorizing Limited Discovery Pursuant to Federal Rule of Civil Procedure

26(d)(1) (the "Omnibus Motion").   *Id.*, ECF No. 69.   See discussion *supra* Section IX(B)(c).

Following a request by certain defendants, on September 17, 2014, the Bankruptcy Court held a

conference to discuss further proceedings to be conducted pursuant to the Extraterritoriality

Opinion and Order and the Omnibus Motion.   The Bankruptcy Court directed the parties to

confer and devise an efficient procedure and briefing schedule.

280.   On October 2, 2014, the Trustee filed a letter advising that the Trustee and

counsel representing the defendants in this and other actions are working together to prepare a

mutually acceptable agreed order that will set forth a proposed process and briefing schedule.

*Id.*, ECF No. 73.

281.   On October 23, 2014, the Trustee filed a proposed order setting forth a proposed

process and briefing schedule.   *Id.*, ECF No. 78.   Following limited objections by certain

defendants, on November 19, 2014, the Bankruptcy Court held a conference to discuss the

proposed process and briefing schedule.

282.   On December 10, 2014, the Bankruptcy Court entered an Order Concerning

Further Proceedings on Extraterritoriality Motion and Trustee's Omnibus Motion for Leave to

Replead and for Limited Discovery (the "ET Scheduling Order").   *Id.*, ECF No. 89.   See

discussion *supra* Section IX(B)(c).

283.    On December 31, 2014, Defendants filed the Consolidated Supplemental Memorandum of Law in Support of the Transferee Defendants' Motion to Dismiss Based on Extraterritoriality seeking to dismiss the claims listed in Exhibits A and B to the ET Scheduling Order (the "Consolidated Motion to Dismiss"). *Id.*, ECF No. 90. See discussion *supra* Section IX(B)(c).

284.    On January 13, 2015 and February 24, 2015, the Court so ordered two stipulations modifying the ET Scheduling Order and certain deadlines for the parties to file their respective submissions in connection with the Extraterritoriality Opinion and Order and the Omnibus Motion.

285.    On March 4, 2015, the Trustee filed a Letter Regarding Confidentiality Designations Affecting The Trustee's Extraterritoriality Submission. *Id.*, ECF No. 93. The Bankruptcy Court held an informal conference on the confidentiality issues on March 18, 2015.

286.    On April 1, 2015, the Court entered a Third Stipulation and Order Modifying the Order Concerning Further Proceedings on Extraterritoriality Motion and Trustee's Omnibus Motion for Leave to Replead and for Limited Discovery (the "Third Stipulation"). *Securities Inv. Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC*, Adv. Pro. No. 08-1789 (Bankr. S.D.N.Y.) (SMB), ECF No. 9720. The Trustee's papers in opposition to the Extraterritoriality Opinion and Order and the Consolidated Motion to Dismiss, and in further support of the Omnibus Motion, were due to be filed under the Third Stipulation with the Court on June 30, 2015.

287.    On June 27, 2015, the Trustee filed the Memorandum of Law in Opposition to the Transferee Defendants' Motion to Dismiss Based on Extraterritoriality and in Further Support of Trustee's Motion for Leave to Amend Complaints, the Addendum to the Trustee's Oppositions on the Extraterritoriality Issue for ABN AMRO Bank N.V. (Presently Known as the Royal Bank

of Scotland, N.V.), and the Proffered Allegations Pertaining to the Extraterritoriality Issue as to

ABN AMRO Bank N.V. (Presently Known as the Royal Bank of Scotland, N.V.). *Id.*, ECF Nos.

56-58.

288.    On September 30, 2015, Defendants filed the Reply Consolidated Memorandum

of Law in Support of Transferee Defendants' Motion to Dismiss Based on Extraterritoriality and

the Supplemental Memorandum of Law in Support of ABN AMRO N.V.'s Motion to Dismiss

Based on Extraterritoriality. *Id.*, ECF Nos. 62-63.

289.    On December 16, 2015, the Bankruptcy Court heard oral argument on Transferee

Defendants' Motion to Dismiss Based on Extraterritoriality. *Id.*, ECF No. 107. The motion is

*sub judice*.

290.    Pursuant to the ET Scheduling Order, the Omnibus Motion is being held in

abeyance pending the Bankruptcy Court's ruling on the extraterritoriality issues. *Id.*, ECF No.

89.

### (m)    Picard v. ABN AMRO (Ireland) Ltd. (Fortis)

291.    On December 8, 2010, the Trustee commenced an action against ABN AMRO

Bank (Ireland) Ltd. (f/k/a Fortis Prime Solutions Bank (Ireland) Limited), ABN Custodial

Services (Ireland) Ltd. (f/k/a Fortis Prime Solutions Custodial Services (Ireland) Ltd.)

(collectively the "ABN (Ireland) Defendants"), Rye Select Broad Market XL Fund, LP, Rye

Select Broad Market XL Portfolio Limited. *Picard v. ABN AMRO (Ireland) Ltd. (In re Bernard

L. Madoff)*, Adv. Pro. No. 10-05355 (Bankr. S.D.N.Y. filed Dec. 8, 2010) (SMB) (the "ABN

(Ireland) Action").

292.    On September 30, 2011, the ABN AMRO Defendants moved for withdrawal of

the reference. *Picard v. ABN AMRO (Ireland) Ltd.,* No. 11 Civ. 6877 (JSR) (S.D.N.Y.), ECF

No. 1-3. On January 11, 2012, the Trustee opposed the motion to withdraw the reference. (ECF

Nos. 13-14).  On January 27, 2012, the ABN AMRO Defendants filed reply papers.  (ECF Nos. 15-16).  The District Court granted the motion on May 15, 2012, allowing the ABN (Ireland) Defendants to move to dismiss as to the issue of Bankruptcy Code section 546(g).  (ECF No. 22).  The ABN (Ireland) Defendants participated in Common Briefing on the Stern Issue, the Extraterritoriality Issue, the Bad Faith § 546(e) Issue, the Good Faith Standard Issue, and the Antecedent Debt Issue.  *Picard v. ABN AMRO (Ireland) Ltd.,* No. 11 Civ. 6877 (S.D.N.Y.) (JSR), ECF No. 22.  The District Court has rendered decisions on all of these Common Briefing issues, which are discussed *supra* Section IX(A)(i)(b).

293.    On June 13, 2012, the ABN (Ireland) Defendants filed a motion to dismiss the Trustee's complaint, claiming the safe harbor of Bankruptcy Code section 546(g) bars the Trustee's subsequent transferee claims.  (ECF Nos. 27–29).

294.    On November 29, 2012, the District Court heard oral argument on the ABN (Ireland) Defendants' motion to dismiss, as well as two other motions raising Bankruptcy Code section 546(g) (the "546(g) Motions").  On February 15, 2013, the District Court issued a bottom line order partially denying and partially granting the 546(g) Motions (ECF No. 41).  On December 26, 2013, the District Court issued its opinion concerning the 546(g) Motions, confirming and explaining the February 15, 2013 bottom line order.  (ECF No. 43).

295.    Prior to that, on April 15, 2013, the District Court issued the Bad Faith § 546(e) Opinion and Order.  (ECF No. 42).  See discussion *supra* Section IX(A)(i)(b).

296.    On February 27, 2013, the Trustee voluntarily dismissed Rye Select Broad Market XL Fund, L.P. with prejudice.  *Picard v. ABN AMRO (Ireland) Ltd.*, Adv. Pro. No. 10-05355 (SMB) (Bankr. S.D.N.Y.), ECF No. 50.

297.    On April 27, 2014, the District Court issued the Good Faith Standard Opinion and Order, upon which certain of the ABN (Ireland) Defendants and other defendants had moved to withdraw the reference. *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 2014 WL 1651952 (S.D.N.Y. Apr. 27, 2014).  See discussion *supra* Section IX(A)(i)(b).

298.    In July 2014, the District Court issued the Extraterritoriality Opinion and Order. *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 513 B.R. 222 (S.D.N.Y. 2014).  *See* discussion *supra* Section IX(A)(i)(b).  Through the Extraterritoriality Opinion and Order, the ABN (Ireland) Action was remanded back to the Bankruptcy Court. *Picard v. ABN AMRO (Ireland) Ltd.*, Adv. Pro. No. 10-05355 (Bankr. S.D.N.Y.) (SMB), ECF No. 63.

299.    Following the entry of the Extraterritoriality Opinion and Order, the Trustee filed the Omnibus Motion. *Id.*, ECF No. 65.  See discussion *supra* Section IX(b)(c).  Following a request by certain defendants, on September 17, 2014, the Bankruptcy Court held a conference to discuss further proceedings to be conducted pursuant to the Extraterritoriality Opinion and Order and the Omnibus Motion.  The Court directed the parties to confer and devise an efficient procedure and briefing schedule.

300.    On October 2, 2014, the Trustee filed a letter advising that the Trustee and counsel representing the defendants in this and other actions were working together to prepare a mutually acceptable agreed order that will set forth a proposed process and briefing schedule. *Id.*, ECF No. 69.

301.    On October 23, 2014, the Trustee filed a proposed order setting forth a proposed process and briefing schedule. *Id.*, ECF No. 74.  Following limited objections by certain defendants, on November 19, 2014, the Bankruptcy Court held a conference to discuss the proposed process and briefing schedule.

302.    On December 10, 2014, the Bankruptcy Court entered the ET Scheduling Order. *Id.*, ECF No. 85.  *See* discussion *supra* Section IX(B)(c).

303.    On December 31, 2014, Defendants filed the Consolidated Motion to Dismiss. *Id.*, ECF No. 86.  *See* discussion *supra* Section IX(B)(c).

304.    On January 13, 2015 and February 24, 2015, the Court so ordered two stipulations modifying the ET Scheduling Order and certain deadlines for the parties to file their respective submissions in connection with the Extraterritoriality Opinion and Order and the Omnibus Motion.

305.    On March 4, 2015, the Trustee filed a Letter Regarding Confidentiality Designations Affecting the Trustee's Extraterritoriality Submission.  *Id.*, ECF No. 89.  The Bankruptcy Court held an informal conference on the confidentiality issues on March 18, 2015.

306.    On April 1, 2015, the Court entered the Third Stipulation.  *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, Adv. Pro. No. 08-1789 (Bankr. S.D.N.Y.) (SMB), ECF No. 9720.  *See* discussion *supra* Section IX(B)(ii)(l).  The Trustee's papers in opposition to the Extraterritoriality Opinion and Order and the Consolidated Motion to Dismiss, and in further support of the Omnibus Motion, were due to be filed under the Third Stipulation with the Court on June 30, 2015.

307.    On June 27, 2015, the Trustee filed the Memorandum of Law in Opposition to the Transferee Defendants' Motion to Dismiss Based on Extraterritoriality and in Further Support of Trustee's Motion for Leave to Amend Complaints, the Addendum to the Trustee's Oppositions on the Extraterritoriality Issue for ABN AMRO (Ireland) Ltd. and ABN AMRO Custodial Services (Ireland) Ltd. and the Proffered Allegations Pertaining to the Extraterritoriality Issue as

to ABN AMRO (Ireland) Ltd. and ABN AMRO Custodial Services (Ireland) Ltd.  *Picard v. ABN AMRO (Ireland) Ltd.*, Adv. Pro. No. 10-05355 (Bankr. S.D.N.Y.) (SMB), ECF Nos. 95–97.

308.    On September 30, 2015, Defendants filed the Reply Consolidated Memorandum of Law in Support of Transferee Defendants' Motion to Dismiss Based on Extraterritoriality and the Supplemental Memorandum of Law in Support of Defendants' Motion to Dismiss Based on Extraterritoriality and in Reply to the Trustee's Motion for Leave to Amend Complaints, *Id.*, ECF Nos. 101–102.

309.    On December 16, 2015, Judge Bernstein heard the Motions to Dismiss Based on Extraterritoriality. *Id.*, ECF No. 104. The motion is *sub judice*.

310.    The Omnibus Motion is currently in abeyance under the ET Scheduling Order pending the Bankruptcy Court's ruling on the extraterritoriality issues.

(n)    **Picard v. Nomura Int'l plc**

311.    On December 8, 2010, the Trustee commenced an action against Nomura Bank International plc ("Nomura Bank International") seeking the return of approximately $35 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences and fraudulent conveyances in connection with certain transfers of property by BLMIS to or for the benefit of Nomura.  *Picard v. Nomura Int'l plc*, Adv. No. 10-05348 (SMB) (Bankr. S.D.N.Y. Dec. 8, 2010) (the "Nomura Action").

312.    On March 30, 2012, Nomura Bank International moved for withdrawal of the reference.  *Picard v. Nomura Bank Int'l plc*, Adv. Pro. No. 10-05348 (Bankr. S.D.N.Y.), ECF Nos. 20-21; and *Picard v. Nomura Bank Int'l plc*, No. 12 Civ. 2446 (JSR) (S.D.N.Y.), ECF Nos. 1-3. The Trustee and SIPC opposed the motion as part of Common Briefing on the Antecedent Debt Issue, the Bad Faith § 546(e) Issue, the Extraterritoriality Issue, the Good Faith Standard Issue, and the Stern Issue. See discussion *supra* Section IX(A)(i)(b).

313.    By orders issued by the District Court during the Spring and Summer of 2012, the District Court included Nomura Bank International's motion to withdraw the reference in Common Briefing and oral argument.

314.    On May 16, 2012, the District Court granted the motion to withdraw on the Antecedent Debt Issue, allowing Nomura Bank International, as part of Common Briefing, to move to dismiss.  On May 23, 2012, the District Court granted the motion to withdraw on the Bad Faith § 546(e) Issue, allowing Nomura Bank International, as part of Common Briefing, to move to dismiss.  On June 7, 2012, the District Court granted the motion to withdraw on the Extraterritoriality Issue, allowing Nomura Bank International, as part of Common Briefing, to move to dismiss.  On June 23, 2012, the District Court granted the motion to withdraw on the Good Faith Standard Issue, allowing Nomura Bank International, as part of Common Briefing, to move to dismiss.  On July 12, 2012, the District Court granted the motion to withdraw on the Stern Issue.  *Picard v. Nomura Bank Int'l plc*, No. 12-cv-02446 (S.D.N.Y.), ECF Nos. 8-12.  The District Court's disposition of these Common Briefing Issues is discussed *supra* in Section IX(A)(i)(b).

315.    On June 6, 2012, the Trustee filed an amended complaint adding Nomura International plc ("Nomura") as a defendant ("Nomura Amended Complaint").  *Picard v. Nomura Bank Int'l plc*, Adv. Pro. No. 10-05348 (SMB) (Bankr. S.D.N.Y.), ECF. No. 42. Nomura declined to file a motion to withdraw the reference on the issues listed above.

316.    On July 25, 2012, the Trustee, under Rule 21 of the Federal Rules of Civil Procedure made applicable to this proceeding through Rule 7021 of the Federal Rules of Bankruptcy Procedure, voluntarily dismissed Nomura Bank International without prejudice. *Picard v. Nomura Int'l plc*, Adv. No. 10-05348 (SMB) (Bankr. S.D.N.Y.), ECF No. 45.

317.    On April 27, 2014, the District Court issued the Good Faith Standard Opinion and Order, upon which Nomura and other defendants had moved to withdraw the reference. *Securities Inv. Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC*, 2014 WL 1651952 (S.D.N.Y. Apr. 27, 2014). *See* discussion *supra* Section IX(A)(i)(b).

318.    On July 7, 2014, the District Court issued the Extraterritoriality Opinion and Order. *Securities Inv. Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC*, 513 B.R. 222 (S.D.N.Y. 2014). *See* discussion *supra* Section IX(A)(i)(b). Through the Extraterritoriality Opinion and Order, the Nomura Action was remanded back to the Bankruptcy Court. *Picard v. Nomura Int'l plc*, Adv. Pro. No. 10-05348 (SMB) (Bankr. S.D.N.Y.), ECF No. 57.

319.    Following the entry of the Extraterritoriality Opinion and Order, the Trustee filed the Omnibus Motion. *Id.*, ECF No. 59. *See* discussion *supra* Section IX(B)(c). Following a request by certain defendants, on September 17, 2014, the Bankruptcy Court held a conference to discuss further proceedings to be conducted pursuant to the Extraterritoriality Opinion and Order and the Omnibus Motion. The Court directed the parties to confer and devise an efficient procedure and briefing schedule. *See* discussion *supra* Section IX(B)(c).

320.    On October 2, 2014, the Trustee filed a letter advising that the Trustee and counsel representing the defendants in this and other actions are working together to prepare a mutually acceptable agreed order that will set forth a proposed process and briefing schedule. *Id.*, ECF No. 63.

321.    On October 23, 2014, the Trustee filed a proposed order setting forth a proposed process and briefing schedule. *Id.*, ECF No. 68. Following limited objections by certain defendants, on November 19, 2014, the Bankruptcy Court held a conference to discuss the proposed process and briefing schedule.

322.    On December 10, 2014, the Bankruptcy Court entered the ET Scheduling Order. *Id.*, ECF No. 79.  *See* discussion *supra* Section IX(B)(c).

323.    On December 31, 2014, Defendants filed the Consolidated Motion to Dismiss. *Id.*, ECF No. 80.  *See* discussion *supra* Section IX(B)(c).

324.    On January 13, 2015 and February 24, 2015, the Court so ordered two stipulations modifying the ET Scheduling Order and certain deadlines for the parties to file their respective submissions in connection with the Extraterritoriality Opinion and Order and the Omnibus Motion.  *See* discussion *supra* Section IX(B)(c).

325.    On March 4, 2015, the Trustee filed a Letter Regarding Confidentiality Designations Affecting The Trustee's Extraterritoriality Submission.  *Id.*, ECF No. 83.  The Bankruptcy Court held an informal conference on the confidentiality issues on March 18, 2015.

326.    On April 1, 2015, the Court entered the Third Stipulation.  *Securities Inv. Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC*, Adv. Pro. No. 08-1789 (Bankr. S.D.N.Y.) (SMB), ECF No. 9720.  *See* discussion *supra* Section IX(B)(ii)(l).  The Trustee's papers in opposition to the Extraterritoriality Opinion and Order and the Consolidated Motion to Dismiss, and in further support of the Omnibus Motion, were due to be filed under the Third Stipulation with the Court on June 30, 2015.

327.    On June 26, 2015, the Trustee filed his Memorandum of Law in Opposition to the Transferee Defendants' Motion to Dismiss Based On Extraterritoriality and In Further Support of the Trustee's Motion for Leave to Amend Complaints, as well as Proffered Allegations Pertaining to the Extraterritoriality Issue as to Nomura International PLC and the Trustee's Supplemental Memorandum of Law In Opposition to Nomura's Motion to Dismiss Based on

Extraterritoriality and In Further Support of Trustee's Motion for Leave to Amend Complaints. *Picard v. Nomura Int'l plc*, Adv. No. 10-05348 (SMB) (Bankr. S.D.N.Y.), ECF Nos. 89-92.

328.    On September 30, 2015, Nomura filed its Supplemental Reply Memorandum of Law in Further Support of Its Motion to Dismiss Based on Extraterritoriality and in Opposition to the Trustee's Motion for Leave to Amend His Complaint. *Id.*, ECF Nos. 95, 96.

329.    Pursuant to paragraph 10 of the ET Scheduling Order, the hearing date on the Extraterritoriality briefing is to be set by the Court. *Id.*, ECF No. 79.

330.    On December 16, 2015, the Bankruptcy Court heard oral argument on Transferee Defendants' Motion to Dismiss Based on Extraterritoriality.  The motion is *sub judice*.

331.    Pursuant to the ET Scheduling Order, the Omnibus Motion is being held in abeyance pending the Bankruptcy Court's ruling on the extraterritoriality issues.

       (o)    **Picard v. BNP Paribas**

332.    The Trustee has brought a total of five adversary proceedings seeking the return of approximately $1 billion under SIPA, the Bankruptcy Code, and the New York Fraudulent Conveyance Act from BNP Paribas S.A. and its subsidiaries—BNP Paribas (Suisse) S.A., BNP Paribas Arbitrage SNC, BNP Paribas Bank & Trust Cayman Limited, BGL BNP Paribas Luxembourg S.A., BNP Paribas Securities Services—Succursale de Luxembourg, BNP Paribas Securities Services S.A., and BNP Paribas Securities Corp. (collectively, "BNP Paribas")—who redeemed money from feeder funds that invested with BLMIS.  *Picard v. BNP Paribas Arbitrage, SNC*, Adv. No. 11-02796 (BRL) (Bankr. S.D.N.Y. 2011); *Picard v. BNP Paribas S.A.*, Adv. No. 12-01576 (BRL) (Bankr. S.D.N.Y. 2011); *Picard v. Legacy Capital Ltd.*, Adv. No. 10-05286 (BRL) (Bankr. S.D.N.Y. 2010); *Picard v. Oreades SICAV*, Adv. No. 10-05120 (BRL) (Bank. S.D.N.Y. 2010); and *Picard v. Equity Trading Portfolio Ltd.*, Adv. No. 10-04457

(BRL) (Bank. S.D.N.Y. 2010) (collectively, the "BNP Paribas Proceedings").  The Trustee has completed service of process in each of the BNP Paribas Proceedings.

333.    BNP Paribas filed motions to withdraw the reference, which were granted by Judge Rakoff and resulted in consolidated subject matter briefing pending in the District Court. Among the Common Briefing issues affecting the BNP Paribas Proceedings are the Extraterritoriality Issue, the Bad Faith § 546(e) Issue, the Good Faith Standard Issue, and the avoidance of initial transfers through settlements with feeder funds that invested with BLMIS. The District Court has issued opinions on each of the withdrawn issues and remanded the BNP Paribas Proceedings back to the Bankruptcy Court for proceedings consistent with the District Court's opinions.

334.    On December 31, 2014, the defendants, including BNP Paribas, filed the Consolidated Motion to Dismiss on the Extraterritoriality Issue.  *See* discussion *supra* Section IX(B)(c).  As of September 30, 2015, the Consolidated Motion to Dismiss has been fully briefed and is *sub judice*.

335.    As of September 30, 2016, the response dates in the BNP Paribas Proceedings have been extended while the parties await this Court's ruling on the Consolidated Motion to Dismiss.

### (p)    **Picard v. Citibank**

336.    On December 8, 2010, the Trustee commenced an action against Citibank, N.A., Citibank North America, Inc., and Citigroup Global Markets Limited (collectively, "Citibank") seeking the return of approximately $425 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences and fraudulent transfers in connection with certain transfers of property by BLMIS to or for the benefit of

Citibank. *Picard v. Citibank*, Adv. No. 10-05345 (SMB) (Bankr. S.D.N.Y.) (the "Citibank Action").

337.    On November 2, 2011, Citibank moved for withdrawal of the reference. *Picard v. Citibank*, No. 11 Civ. 7825 (JSR) (S.D.N.Y.), ECF Nos. 1–3.    On March 2, 2012, the Trustee opposed the motion to withdraw the reference, and oral argument was held on May 1, 2012. (ECF Nos. 13–15).    On July 2, 2012, the District Court granted Citibank's motion, allowing Citibank to move to dismiss as to the issues of Bankruptcy Code sections 550(a) and 546(g), and directing Citibank to participate in Common Briefing as to the Bad Faith § 546(e) Issue and the Good Faith Standard Issue. *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 12 MC 0115 (JSR) (S.D.N.Y. July 3, 2012), ECF No. 214.    The District Court's disposition of these Common Briefing issues is discussed *supra* in Section IX(A)(i)(b).

338.    On August 15, 2012, Citibank filed a motion to dismiss, claiming that the safe harbor of Bankruptcy Code section 546(g) bars Trustee's subsequent transferee claims. *Picard v. Citibank*, No. 11 Civ. 7825 (ECF Nos. 25–28).    On November 29, 2012 the District Court held oral argument on Citibank's motion to dismiss jointly with two other motions raising the 546(g) issue.    On February 15, 2013, the District Court issued a bottom line order partially granting and partially denying the 546(g) motions, noting that a full opinion would follow. *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 12 MC 0115 (JSR) (ECF No. 451).    The court issued its full decision in an opinion and order on December 26, 2013. *Picard v. Citibank*, No. 11 Civ. 7825 (ECF No. 37).

339.    On October 5, 2012, Citibank filed a motion to dismiss based on § 550 of the Bankruptcy Code, asserting that the Trustee must first obtain a judgment of avoidance as to the initial transferees before pursuing recovery of subsequent transfers from Citibank. *Id.* (ECF No.

384.)  On December 12, 2012, Judge Rakoff issued a bottom line ruling denying defendants' motion to dismiss in its entirety.  (ECF No. 422).  The court issued its full decision in an opinion and order on October 30, 2013.  *Picard v. Citibank*, No. 11 Civ. 7825 (ECF No. 36).

340.    On April 27, 2014, Judge Rakoff issued the Good Faith Standard Opinion and Order, upon which Citibank and other defendants had moved to withdraw the reference.  *Securities Inv. Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC*, 2014 WL 1651952 (S.D.N.Y. Apr. 27, 2014). See discussion *supra* Section IX(A)(i)(b).  Through this decision, the Citibank Action was remanded back to the Bankruptcy Court.

341.    In July 2014, Judge Rakoff issued the Extraterritoriality Opinion and Order.  *Securities Inv. Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC*, 513 B.R. 222 (S.D.N.Y. 2014).  See discussion *supra* Section IX(A)(i)(b).

342.    Following the entry of the Extraterritoriality Opinion and Order, the Trustee filed the Omnibus Motion.  *Id.*, ECF No. 72.  *See* discussion *supra* Section IX(B)(c).  Following a request by certain defendants, on September 17, 2014, the Bankruptcy Court held a conference to discuss further proceedings to be conducted pursuant to the Extraterritoriality Opinion and Order and the Omnibus Motion. The Bankruptcy Court directed the parties to confer and devise an efficient procedure and briefing schedule.

343.    On October 2, 2014, the Trustee filed a letter advising that the Trustee and counsel representing the defendants in this and other actions are working together to prepare a mutually acceptable agreed order that will set forth a proposed process and briefing schedule.

344.    On October 23, 2014, the Trustee filed a proposed order setting forth a proposed process and briefing schedule.  Following limited objections by certain defendants, on November

19, 2014, the Bankruptcy Court held a conference to discuss the proposed process and briefing schedule.

345.    On December 10, 2014, the Bankruptcy Court entered the ET Scheduling Order. *See* discussion *supra* Section IX(B)(c).

346.    On December 31, 2014, Defendants filed the Consolidated Motion to Dismiss. *See* discussion *supra* Section IX(B)(c).

347.    On January 13, 2015 and February 24, 2015, the Court so ordered two stipulations modifying the ET Scheduling Order and certain deadlines for the parties to file their respective submissions in connection with the Extraterritoriality Opinion and Order and the Omnibus Motion. *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec., LLC*, Adv. Pro. No. 08-1789 (Bankr. S.D.N.Y.) (SMB), ECF. 8990, 9350.

348.    On March 4, 2015, the Trustee filed a Letter Regarding Confidentiality Designations Affecting the Trustees Extraterritoriality Submission.  The Bankruptcy Court held an informal conference on the confidentiality issues on March 18, 2015.

349.    On April 1, 2015, the Court entered the Third Stipulation.  *Securities Inv. Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC*, Adv. Pro. No. 08-1789 (Bankr. S.D.N.Y.) (SMB), ECF No. 9720.  *See* discussion *supra* Section IX(B)(ii)(l).  The Trustee's papers in opposition to the Extraterritoriality Opinion and Order and the Consolidated Motion to Dismiss, and in further support of the Omnibus Motion, were due to be filed under the Third Stipulation with the Court on June 30, 2015.

350.    On June 27, 2015, the Trustee filed the Memorandum of Law in Opposition to the Transferee Defendants' Motion to Dismiss Based on Extraterritoriality and in Further Support of Trustee's Motion for Leave to Amend Complaints.

351.    On September 30, 2015, Defendants filed the Reply Consolidated Memorandum of Law in Support of Transferee Defendants' Motion to Dismiss Based on Extraterritoriality.

352.    On December 16, 2015, the Bankruptcy Court heard oral argument on Transferee Defendants' Motion to Dismiss Based on Extraterritoriality.  The motion is *sub judice*.

353.    Pursuant to the ET Scheduling Order, the Omnibus Motion is being held in abeyance pending the Bankruptcy Court's ruling on the extraterritoriality issues.

### (q)    Picard v. Merrill Lynch

354.    On December 8, 2010, the Trustee commenced an action against Merrill Lynch International ("MLI") seeking the return of approximately $16 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences and fraudulent transfers in connection with certain transfers of property by BLMIS to or for the benefit of MLI.  *Picard v. Merrill Lynch Int'l*, Adv. No. 10-05346 (SMB) (Bankr. S.D.N.Y. Dec. 8, 2010) ("MLI Action").

355.    On November 22, 2011, the Trustee commenced an action against Merrill Lynch Bank (Suisse), S.A. ("MLBS") seeking the return of approximately $46 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences and fraudulent transfers in connection with certain transfers of property by BLMIS to or for the benefit of MLBS.  *Picard v. Merrill Lynch Bank (Suisse), S.A.*, Adv. No. 11-02910 (SMB) (Bankr. S.D.N.Y. Nov. 22, 2011) ("MLBS Action").

356.    On May 2, 2012, both MLI and MLBS moved for withdrawal of the reference. *Picard v. Merrill Lynch Int'l*, No. 12-cv-03486 (JSR) (S.D.N.Y.), (ECF Nos. 1–2; *Picard v. Merrill Lynch Bank (Suisse) S.A.*, No. 12-cv-03487 (JSR) (S.D.N.Y.), ECF Nos. 1–2.  MLI and MLBS participated in Common Briefing as to the Bad Faith § 546(e) Issue, the Extraterritoriality Issue, § 550(a), the Stern Issue, and the Good Faith Standard Issue.  Judge Rakoff has rendered

decisions on all of these Common Briefing issues, which is discussed *supra* in Section IX(A)(i)(b).

357.    On April 27, 2014, Judge Rakoff issued the Good Faith Standard Opinion and Order, upon which MLI, MLBS, and other defendants had moved to withdraw the reference. *Securities Inv. Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC*, 2014 WL 1651952 (S.D.N.Y. Apr. 27, 2014).  See discussion *supra* Section IX(A)(i)(b).

358.    In July 2014, Judge Rakoff issued the Extraterritoriality Opinion and Order. Through such order, the MLI and MLBS Actions were returned to the Bankruptcy Court.  *Picard v. Merrill Lynch Int'l*, Adv. No. 10-05346 (SMB) (Bankr. S.D.N.Y.), ECF No. 51; *Picard v. Merrill Lynch Bank (Suisse), S.A.*, Adv. No. 11-02910 (SMB) (Bankr. S.D.N.Y.), ECF No. 41.

359.    Following the entry of the Extraterritoriality Opinion and Order, the Trustee filed the Omnibus Motion.  *Picard v. Merrill Lynch Int'l*, Adv. No. 10-05346 (SMB) (Bankr. S.D.N.Y.), ECF No. 53; *Picard v. Merrill Lynch Bank (Suisse), S.A.*, Adv. No. 11-02910 (SMB) (Bankr. S.D.N.Y.), ECF No. 43.  See discussion *supra* Section IX(B)(c).  Following a request by certain defendants, on September 17, 2014, the Bankruptcy Court held a conference to discuss further proceedings to be conducted pursuant to the Extraterritoriality Opinion and Order and the Omnibus Motion.  The Court directed the parties to confer and devise an efficient procedure and briefing schedule.  The Omnibus Motion is being held in abeyance until the Bankruptcy Court rules on the extraterritoriality issues.

360.    On October 2, 2014, the Trustee filed a letter advising that the Trustee and counsel representing the defendants in this and other actions were working together to prepare a mutually acceptable agreed order that will set forth a proposed process and briefing schedule.

*Picard v. Merrill Lynch Int'l*, Adv. No. 10-05346 (SMB) (Bankr. S.D.N.Y.), ECF No. 57; *Picard v. Merrill Lynch Bank (Suisse), S.A.*, Adv. No. 11-02910 (SMB) (Bankr. S.D.N.Y.).

361.    On October 23, 2014, the Trustee filed a proposed order setting forth a proposed process and briefing schedule. *Picard v. Merrill Lynch Int'l*, Adv. No. 10-05346 (SMB) (Bankr. S.D.N.Y.), ECF No. 62; *Picard v. Merrill Lynch Bank (Suisse), S.A.*, Adv. No. 11-02910 (SMB) (Bankr. S.D.N.Y.), ECF No. 52.    Following limited objections by certain defendants, on November 19, 2014, the Bankruptcy Court held a conference to discuss the proposed process and briefing schedule.

362.    On January 13, 2015 and February 24, 2015, the Court so ordered two stipulations modifying the ET Scheduling Order and certain deadlines for the parties to file their respective submissions in connection with the Extraterritoriality Opinion and Order and the Omnibus Motion.

363.    On January 2, 2015, the Defendants filed a Supplemental Memorandum of Law in Support of the Transferee Defendants Motion to Dismiss Based on Extraterritoriality.    *Picard v. Merrill Lynch Int'l*, Adv. No. 10-05346 (SMB) (Bankr. S.D.N.Y.), ECF No. 78; *Picard v. Merrill Lynch Bank (Suisse), S.A.*, Adv. No. 11-02910 (SMB) (Bankr. S.D.N.Y.), ECF No. 63.

364.    On March 4, 2015, the Trustee filed a Letter Regarding Confidentiality Designations Affecting the Trustee's Extraterritoriality Submission.    *Picard v. Merrill Lynch Int'l*, Adv. No. 10-05346 (SMB) (Bankr. S.D.N.Y.), ECF No. 79; *Picard v. Merrill Lynch Bank (Suisse), S.A.*, Adv. No. 11-02910 (SMB) (Bankr. S.D.N.Y.), ECF No. 64.    The Bankruptcy Court held an informal conference on the confidentiality issues on March 18, 2015.

365.    On April 1, 2015, the Court entered the Third Stipulation.    *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, Adv. Pro. No. 08-1789 (Bankr. S.D.N.Y.) (SMB), ECF No.

9720.  *See* discussion *supra* Section IX(B)(ii)(l).  The Trustee's papers in opposition to the Extraterritoriality Opinion and Order and the Consolidated Motion to Dismiss, and in further support of the Omnibus Motion, were due to be filed under the Third Stipulation with the Court on June 30, 2015.

366.    On June 26 and 29, 2015, the Trustee filed the Memorandum of Law in Opposition to the Transferee Defendants' Motion to Dismiss Based on Extraterritoriality and in Further Support of Trustee's Motion for Leave to Amend Complaints, the Addendum to the Trustee's Oppositions on the Extraterritoriality Issue for Merrill Lynch International and Merrill Lynch Bank (Suisse) SA and the Proffered Allegations Pertaining to the Extraterritoriality Issue as to Merrill Lynch International and Merrill Lynch Bank (Suisse) SA.  *Picard v. Merrill Lynch Int'l*, Adv. No. 10-05346 (SMB) (Bankr. S.D.N.Y.), ECF Nos. 87-89; *Picard v. Merrill Lynch Bank (Suisse), S.A.*, Adv. No. 11-02910 (SMB) (Bankr. S.D.N.Y.), ECF Nos. 72-74.

367.    On September 30, 2015, Defendants filed the Reply Consolidated Memorandum of Law in Support of Transferee Defendants' Motion to Dismiss Based on Extraterritoriality and the Supplemental Memorandum of Law in Support of Defendants' Motion to Dismiss Based on Extraterritoriality and in Reply to the Trustee's Motion for Leave to Amend Complaints, *Picard v. Merrill Lynch Int'l*, Adv. No. 10-05346 (SMB) (Bankr. S.D.N.Y.), ECF No. 92; *Picard v. Merrill Lynch Bank (Suisse), S.A.*, Adv. No. 11-02910 (SMB) (Bankr. S.D.N.Y.), ECF No. 78.

368.    On December 16, 2015, Judge Bernstein heard the Motions to Dismiss Based on Extraterritoriality.   The motion is *sub judice*.

369.    The Omnibus Motion is currently in abeyance under the ET Scheduling Order pending the Bankruptcy Court's ruling on the extraterritoriality issues.

370.    Currently, response dates in the MLI and MLBS Actions have been extended while the parties await the Bankruptcy Court's rulings on various issues.

### (r)    **Picard v. Richard M. Glantz**

371.    On December 9, 2010, the Trustee commenced an adversary proceeding against Richard Glantz and several related individuals and entities (collectively, the "Glantz Defendants"), seeking the return of more than $113 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent transfers, fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Glantz Defendants. *Picard v. Richard M. Glantz*, Adv. No. 10-05394 (BRL) (Bankr. S.D.N.Y. Dec. 9, 2010).

372.    The Trustee alleges that Richard Glantz and his deceased father, Edward Glantz, created and managed entities that pooled many millions of dollars of investor funds to be funneled into BLMIS.  *See Picard v. Richard M. Glantz*, Adv. No. 10-05394 (BRL) (Bankr. S.D.N.Y.).  The Trustee further alleges that after Richard Glantz, Edward Glantz and entities they created and managed were permanently enjoined from future securities laws violations by the SEC, Richard Glantz and Edward Glantz arrived at a new arrangement with Madoff, which resulted in Richard Glantz and Edward Glantz receiving fraudulent side payments.  (ECF No. 1). In addition, Richard Glantz continued to funnel his own money, his family's money, and other people's money into BLMIS though new entities. *Id.*

373.    To date, the Trustee has dismissed or settled with twenty-one Glantz Defendants. Eighteen Glantz Defendants remain in this adversary proceeding.  (ECF Nos. 11, 13, 14, 20, 25, 31, 43, 44, 46, 49, 50, 51).

374.    On February 1, 2012, the then-remaining Glantz Defendants moved in this Court to dismiss the complaint.  The Trustee and counsel for the Glantz Defendants subsequently

entered into a scheduling stipulation, which was so ordered by the Court on April 2, 2012, providing new dates for the Trustee to amend the complaint and for the remaining Glantz Defendants to supplement their motion to dismiss or file a new one.

375.    Prior to entry of that scheduling stipulation, on March 31, 2012, the remaining Glantz Defendants filed a motion to withdraw the reference.  (ECF No. 34).  On April 11, 2012, the motion to withdraw the reference was referred to Judge Rakoff.  *See Picard v. Glantz*, No. 12-cv-02778 (JSR) (S.D.N.Y.), ECF Nos. 1–3.  On May 15, May 16, June 1 and June 25, 2012, the District Court entered orders withdrawing the reference, in part, for the limited purpose of hearing and determining certain Common Briefing issues.  (ECF Nos. 7, 9, 10, 11).

376.    The Trustee and the remaining Glantz Defendants entered into subsequent stipulations extending the Trustee's time to amend the complaint and the remaining Glantz Defendants' time to either supplement their motion to dismiss or file a new motion to dismiss. Pursuant to the last of these stipulations, which was so ordered by this Court on November 14, 2014, the Trustee filed an amended complaint on January 9, 2015.  *Picard v. Glantz*, Adv. No. 10-05394 (SMB) (ECF Nos. 61, 62).

377.    The Trustee and the remaining Glantz Defendants entered into subsequent stipulations extending the remaining Glantz Defendants' time to either supplement their motion to dismiss or file a new motion to dismiss.  Pursuant to the last of these stipulations, which was so ordered by this Court on March 31, 2015, the remaining Glantz Defendants filed a new motion to dismiss on May 1, 2015.  *Picard v. Glantz*, Adv. No. 10-05394 (SMB) (ECF Nos. 68-71).

378.    The Trustee and the remaining Glantz Defendants entered into a subsequent stipulation extending the Trustee's time to file answering papers to the motion to dismiss.

Pursuant to this stipulation, which was so ordered by this Court on June 3, 2015, the Trustee filed answering papers to the motion to dismiss on August 14, 2015, and the remaining Glantz Defendants filed reply papers in support of the motion to dismiss on October 9, 2015. *Picard v. Glantz*, Adv. No. 10-05394 (SMB) (ECF No. 75, 79).

379.    The Trustee and the remaining Glantz Defendants entered into subsequent stipulations adjourning the hearing on the motion to dismiss. Pursuant to the last of these stipulations, which was so ordered by this Court on September 9, 2016, the hearing on the motion to dismiss is scheduled for November 30, 2016.

### (s)    Picard v. Fairfield Greenwich

380.    On May 18, 2009, the Trustee commenced an action against Fairfield Sentry Ltd. ("Sentry"), Fairfield Sigma Ltd. ("Sigma), Fairfield Lambda Ltd. ("Lambda") (collectively, the "Fairfield Funds"), Greenwich Sentry, L.P. ("Greenwich Sentry"), Greenwich Sentry Partners, L.P. ("Greenwich Sentry Partners", and together with Greenwich Sentry, the "Greenwich Funds"), and other defendants seeking the return of approximately $3.5 billion under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Fairfield Funds and the Greenwich Funds. *Picard v. Fairfield Sentry Ltd. (In Liquidation)*, Adv. No. 09-01239 (BRL) (Bankr. S.D.N.Y. May 18, 2009).

381.    On June 7, 2011, this Court conditionally approved a settlement agreement between the Trustee and the Joint Liquidators for the Fairfield Funds (the "Joint Liquidators"). (ECF No. 95). On July 13, 2011, this Court entered consent judgments between the Trustee and Lambda in the amount of $52.9 million (ECF No. 108), Sentry in the amount of $3.054 billion (ECF No. 109), and Sigma in the amount of $752.3 million (ECF No. 110).

382.    As part of the Fairfield Funds settlement, Sentry agreed to permanently reduce its net equity claim from approximately $960 million to $230 million.   Additionally, the Joint Liquidators agreed to make a $70 million payment to the Customer Fund.  The Joint Liquidators also agreed to assign to the Trustee all of the Fairfield Funds' claims against the Fairfield Greenwich Group management companies, officers, and partners, and the Trustee retained his own claims against the management defendants.  Further, the Trustee and the Joint Liquidators agreed to share future recoveries in varying amounts, depending on the nature of the claims.

383.    On July 7, 2011, this Court approved a settlement between the Trustee and the Greenwich Funds, wherein this Court entered judgment against Greenwich Sentry in an amount over $206 million and against Greenwich Sentry Partners in an amount over $5.9 million. *Picard v. Fairfield Sentry*, Adv. No. 09-01239 (BRL) (Bankr. S.D.N.Y.), ECF No. 107.  In the settlement, the Greenwich Funds agreed to permanently reduce their net equity claim from approximately $143 million to approximately $37 million, for a combined reduction of over $105.9 million.  Additionally, the Greenwich Funds assigned to the Trustee all of their claims against Fairfield Greenwich Group management and agreed to share with the Trustee any recoveries they receive against service providers.

384.    On April 2, 2012, the remaining defendants in the Fairfield Sentry action filed motions to withdraw the reference on a number of issues that later became subject to Common Briefing and hearings before Judge Rakoff of the District Court.  The Trustee briefed and presented argument at the hearings on these issues before the District Court.  The District Court has issued its opinions providing guidance to this Court and remanded the cases for further findings applying the standards set forth in the District Court's opinions.

385.    On June 6, 2012, the Trustee filed additional recovery actions against entities or persons related to Fairfield Greenwich Group employees or partners entitled *Picard v. RD Trust*, Adv. No. 12-01701 (BRL) (Bankr. S.D.N.Y.), Picard v. Barrenche Inc., Adv. No. 12-01702 (BRL) (Bankr. S.D.N.Y.), and *Picard v. Alix Toub*, Adv. No. 12-01703 (BRL) (Bankr. S.D.N.Y.).  The parties in the *Toub* action have entered into a stipulated stay as permitted by this Court.  None of the defendants in the three actions have responded yet to the Trustee's complaints.

386.    On November 6, 2012 in the District Court, in a putative class action filed by former Fairfield Funds investors against several Fairfield Greenwich Group partners and management officials, the plaintiffs and the Fairfield Greenwich Group related defendants filed a motion seeking preliminary approval of a settlement.  *Anwar v. Fairfield Greenwich Ltd.*, No. 09 Civ. 118 (S.D.N.Y.), ECF No. 997.  On November 29, 2012, the Trustee filed an application seeking an injunction against the implementation of the settlement.  *See Picard v. Fairfield Greenwich Ltd.*, Adv. No. 12-02047 (BRL) (Bankr. S.D.N.Y.), ECF No. 2.  On December 21, 2012, the defendants filed a motion to withdraw the reference to the Bankruptcy Court.  (ECF No. 11).  On February 6, 2013, the District Court granted the defendants' motion to withdraw the reference to the Bankruptcy Court, *Picard v. Fairfield Greenwich Ltd.*, 12 Civ. 9408 (VM) (S.D.N.Y.), ECF No. 30.  On March 20, 2013, the District Court denied the Trustee's application seeking an injunction against the implementation of the *Anwar* settlement.  (ECF No. 59).  On April 8, 2013, the Trustee filed a notice of appeal from the District Court's denial of the Trustee's application for an injunction against the implementation of the *Anwar* settlement.  (ECF No. 61).

387.    On February 26, 2013, the Trustee filed a letter requesting a pre-motion conference on a motion to intervene in the *Anwar* action.  (ECF No. 1054).  On March 8, 2013, the District Court deemed the pre-motion conference letter to be a motion to intervene and denied the Trustee's request.  (ECF No. 1071).  On April 8, 2013, the Trustee filed a notice of appeal from the order denying his request to intervene in the *Anwar* action.  (ECF. No. 1106).

388.    Briefing on both appeals of the *Anwar* decisions was completed on June 7, 2013.  Oral argument on the appeals occurred on October 10, 2013.  On August 8, 2014, the Second Circuit denied the Trustee's request for an injunction.  (ECF No. 181).

389.    As of September 30, 2016, the response date to the Trustee's complaints has been extended while awaiting this Court's rulings on motions to dismiss based on application of the District Court's rulings on extraterritoriality.

390.    On June 20, 2016, the Joint Liquidators filed a motion with this Court in the Fairfield Funds Chapter 15 proceedings to approve the assignment of the Fairfield Funds' claims against certain management individuals and entities as included in the settlement between the Trustee and the Joint Liquidators that was previously approved by this Court.  *In re Fairfield sentry Limited, et al.,* Case No 10-13164 (SMB). (ECF No. 805).  On July 5, 2016, the Trustee filed a memorandum in support of the motion. (ECF No. 810).  On July 5, 2016, two Fairfield Fund investors filed an objection to the motion (ECF No. 809).  On July 12, 2016, this Court held a hearing on the Joint Liquidators' motion.  As of September 30, 2016, the matter remains *sub judice*.

### (t)      **Picard v. Square One**

391.    On November 29, 2010, the Trustee commenced an action against Square One Fund Ltd., Luc D. Estenne, Square Asset Management Ltd., Partners Advisers S.A., Circle Partners, and Kathryn R. Siggins (collectively, the "Square One Defendants") seeking the return

of approximately $26.2 million under SIPA, the Bankruptcy Code, and the New York Debtor and Creditor Law in connection with certain transfers of property by BLMIS to or for the benefit of the Square One Defendants. *Picard v. Square One Fund, Ltd., et al.*, Adv. Pro. No. 10-04330 (SMB) (Bankr. S.D.N.Y. Nov. 29, 2010).

392.    On March 30, 2012, all Square One Defendants except for Circle Partners moved to withdraw the reference.  ECF No. 36.  On April 2, 2012, Circle Partners moved to withdraw the reference.  ECF No. 37.

393.    On July 30, 2014, the motions to withdraw the reference were returned to the Bankruptcy Court.  ECF No. 68; *see also* Adv. Pro. No. 08-01789, ECF No. 7546.

394.    On August 28, 2014, the Trustee filed the Omnibus Motion.  Adv. Pro. No. 10-04330, ECF No. 70.  *See* discussion *supra* Section IX(B)(c).  Following a request by certain defendants, on September 17, 2014, the Bankruptcy Court held a conference to discuss further proceedings to be conducted pursuant to the Extraterritoriality Opinion and Order and the Omnibus Motion. The Bankruptcy Court directed the parties to confer and devise an efficient procedure and briefing schedule.

395.    On October 2, 2014, the Trustee filed a letter advising that the Trustee and counsel representing the defendants in this and other actions are working together to prepare a mutually acceptable agreed order that will set forth a proposed process and briefing schedule.

396.    On October 23, 2014, the Trustee filed a proposed order setting forth a proposed process and briefing schedule.  Following limited objections by certain defendants, on November 19, 2014, the Bankruptcy Court held a conference to discuss the proposed process and briefing schedule.

397.    On December 10, 2014, the Bankruptcy Court entered the ET Scheduling Order. *See* discussion *supra* Section IX(B)(c).

398.    On January 13, 2015 and February 24, 2015, the Court so ordered two stipulations modifying the ET Scheduling Order and certain deadlines for the parties to file their respective submissions in connection with the Extraterritoriality Opinion and Order and the Omnibus Motion. *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec., LLC*, Adv. Pro. No. 08-1789 (Bankr. S.D.N.Y.) (SMB), ECF. 8990, 9350.

399.    On April 1, 2015, the Court entered the Third Stipulation.  *Securities Inv. Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC*, Adv. Pro. No. 08-1789 (Bankr. S.D.N.Y.) (SMB), ECF No. 9720.  *See* discussion *supra* Section IX(B)(ii)(l).  The Trustee's papers in opposition to the Extraterritoriality Opinion and Order and the Consolidated Motion to Dismiss, and in further support of the Omnibus Motion, were due to be filed under the Third Stipulation with the Court on June 30, 2015.

400.    On June 16, 2015, the Court entered the Stipulation And Order For Dismissal of Defendants Partners Advisers S.A., Circle Partners, Luc D. Estenne, Square Asset Management Ltd., and Kathryn R. Siggins.  ECF No. 102.

401.    On June 27, 2015, the Trustee filed the Memorandum of Law in Opposition to the Transferee Defendants' Motion to Dismiss Based on Extraterritoriality and in Further Support of Trustee's Motion for Leave to Amend Complaints.

402.    On September 30, 2015, Defendants filed the Reply Consolidated Memorandum of Law in Support of Transferee Defendants' Motion to Dismiss Based on Extraterritoriality.

403.    On December 16, 2015, the Bankruptcy Court heard oral argument on Transferee Defendants' Motion to Dismiss Based on Extraterritoriality.  The motion is *sub judice*.

404.     Pursuant to the ET Scheduling Order, the Omnibus Motion is being held in abeyance pending the Bankruptcy Court's ruling on the extraterritoriality issues.

## C.     Injunction Proceedings

405.     The Trustee commenced numerous injunction actions seeking to enjoin third party lawsuits brought against defendants who also have been named as defendants in the Trustee's avoidance actions.  Through these proceedings, the Trustee has sought to enforce the automatic stay established by § 362 of the Bankruptcy Code and related District Court stays, and/or to enjoin third party actions under § 105 of the Bankruptcy Code in order to facilitate the orderly administration of the BLMIS liquidation, and to preserve assets from which the Trustee may recover for the benefit of all BLMIS customers.  During the Report Period, there have been developments in the Bankruptcy Court and the District Court with respect to these proceedings.

### i.     Picard v. Marshall

406.     The Trustee was previously successful in enjoining Adele Fox and other plaintiffs (the "Fox Plaintiffs") from pursuing putative class actions they had brought in 2010 against the Picower estate and related entities (the "Picower Parties") in view of the Trustee's settlement with the Picower Parties and the permanent injunction ("Permanent Injunction") issued as part of the settlement, precluding claims that duplicate or derive from claims the Trustee brought or could have brought against the Picower Parties.  This Court's decision barring the Fox Plaintiffs' suits was affirmed by the District Court and Second Circuit.  *Picard v. Fox*, 429 B.R. 423 (Bankr. S.D.N.Y. 2010), *aff'd, Fox v. Picard*, 848 F. Supp. 2d 469 (S.D.N.Y. 2012), *aff'd, In re Marshall*, 740 F.3d 81 (2d Cir. 2014).

407.     On February 5, 2014, shortly after the Second Circuit's affirmance, the Fox Plaintiffs brought a motion in Florida District Court to bring a second amended complaint against the Picower Parties as "control persons" of BLMIS under the federal securities laws.  The

Trustee successfully enjoined the Fox Plaintiffs from proceeding with their new proposed class action in violation of the automatic stay and Permanent Injunction. *See Picard v. Marshall*, 511 B.R. 375 (Bankr. S.D.N.Y. 2014). In the same action, the Trustee also successfully enjoined another set of plaintiffs (the "Goldman Plaintiffs") from bringing a putative class action against the Picower Parties, as discussed further below. On May 11, 2015, the Court's decision and order was affirmed by the District Court. *Picard v. Marshall*, 531 B.R. 345, 350 (S.D.N.Y. 2015) (Koeltl, J.).

408.    Meanwhile, shortly after appealing this Court's decision in *Fox II* to the District Court, the Fox Plaintiffs moved in this Court for a deposition of Bernard Madoff and others under Federal Rule of Bankruptcy Procedure 2004 and, with respect to Bernard Madoff's deposition, under Federal Rule of Civil Procedure 27(a) and (b). On October 30, 2014, this Court denied the motion in full except it found that it lacked jurisdiction to rule on the request for Bernard Madoff's deposition under Rule 27(a). *Picard v. Marshall*, No. 14-01840, 2014 WL 5486279 (Bankr. S.D.N.Y. Oct. 30, 2014).

409.    The Fox Plaintiffs subsequently brought a Rule 27(a) petition for a deposition of Bernard Madoff in Delaware District Court, which declined to rule on the petition and transferred the case to the District Court. *In re Marshall*, No. 15-MC-01, 2014 WL 849302 (D. Del. Feb. 25, 2015). The Fox Plaintiffs unsuccessfully petitioned the Third Circuit to vacate the transfer order. *In re Marshall*, No. 15-1590 (3d Cir. 2015).

410.    On May 11, 2015, the District Court denied the Rule 27 petition after hearing oral argument jointly with argument on the *Fox II* appeal. *Marshall v. Madoff*, 15-MC-56, 2015 WL 2183939 (S.D.N.Y. May 11, 2015). The District Court held that the Fox Plaintiffs appeared to

be bringing the petition for the improper purpose of crafting a third amended complaint and failed to show any urgent need for the deposition. *Id.* at 3.

411.    The Fox Plaintiffs appealed this decision to the Second Circuit, which consolidated the appeal with the appeal of the District Court's decision on the *Fox II* injunction. The Second Circuit dismissed the appeals on September 25, 2015 after the Fox Plaintiffs abandoned the appeals.  (Order, *Marshall v. Capital Growth Co. et al.*, 15-1869 (lead), ECF No. 70 (2d Cir. Sept. 25, 2015).)

412.    On August 29, 2015, while the appeals to the Second Circuit were still pending, the Fox Plaintiffs brought a declaratory judgment action and motion seeking to file a third amended complaint against the Picower Parties ("*Fox III*").  The Fox Plaintiffs again alleged that the Picower Parties were control persons of BLMIS and incorporated testimony from a recently disclosed deposition of Bernard Madoff.  In support of their claim, the Fox Plaintiffs also introduced on reply a declaration from Bernard Madoff in an unrelated case, which made references to Mr. Picower.  The Fox Plaintiffs also stated in their papers that they intended to seek Bernard Madoff's deposition.  The Trustee and Picower Parties objected to the Fox Plaintiffs' motion on the ground that the *Fox III* complaint was, like the predecessor complaints, duplicative and derivative of the Trustee's complaint, and further objected to the inclusion of Bernard Madoff's declaration in this action.  On February 11, 2016, this Court heard oral argument and the parties are awaiting a decision.

413.    Counsel for the Fox Plaintiffs then moved in this Court on March 9, 2016 in an unrelated matter for the deposition of Bernard Madoff.  The Trustee and Picower Parties objected to the motion in part on the ground that counsel would improperly seek testimony concerning Mr. Picower, which was irrelevant to the matter.  On March 23, 2016, this Court

issued a bench ruling allowing counsel to depose Mr. Madoff, but prohibited any reference to Mr. Picower during the deposition.

      **ii.**    **Picard v. A&G Goldman Partnership**

    414.    In December 2011, A & G Goldman Partnership and Pamela Goldman (as defined above, the "Goldman Plaintiffs") moved before this Court to lift the automatic stay so that they could file putative securities class actions against the Picower Parties. *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC,* No. 08-01789 (SMB) (S.D.N.Y. Dec. 13, 2011), ECF No. 4581. On June 20, 2012, this Court issued an order denying the Goldman Plaintiffs' motion as duplicative and derivative of the Trustee's settled claims and thus in violation of the Permanent Injunction as well as the automatic stay. *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 477 B.R. 351, 352–53 (Bankr. S.D.N.Y. 2012).

    415.    The Goldman Plaintiffs appealed to the District Court. *See A & G Goldman P'ship v. Picard*, No. 12-cv-06109 (RJS) (S.D.N.Y. Aug. 10, 2012). On September 30, 2013, after oral argument, the District Court issued a decision affirming the Bankruptcy Court's decision and order. *A & G Goldman P'ship v. Picard*, No. 12 Civ. 6109 (RJS), 2013 WL 5511027 (S.D.N.Y. Sept. 30, 2013). The Goldman Plaintiffs did not further appeal the District Court's decision.

    416.    On January 6, 2014, the Goldman Plaintiffs filed a new action in the District Court for the Southern District of Florida, seeking to file a new complaint against the Picower Parties. On March 11, 2014, the Trustee successfully sought injunctive relief against both the Goldman Plaintiffs and the Fox Plaintiffs, as discussed above. The Goldman Plaintiffs appealed the decision and order, but subsequently withdrew their appeal.

    417.    On August 28, 2014, the Goldman Plaintiffs brought a new action against the Picower Parties in the United States District Court for the Southern District of Florida, again

seeking to allege securities law claims against the Picower Parties. On November 17, 2014, the

Trustee brought an adversary proceeding in this Court to enforce the Permanent Injunction

against the Goldman Plaintiffs. The Picower Parties also brought a motion to enforce the

Permanent Injunction against the Goldman Plaintiffs and the two actions were consolidated.

418. On February 17, 2016, this Court granted the Trustee's and Picower Parties'

motions. *See Picard v. A&G Goldman P'ship,* 14-02407, 2016 WL 625076 (Bankr. S.D.N.Y.

Feb. 17, 2016). The Court held that the Goldman Plaintiffs sought to recover for conduct that

was incidental to withdrawals that formed the basis of the Trustee's claims and for injuries that

were identical to those suffered by customers generally. *Id.* at *11. The Court thus held that the

Goldman Plaintiffs' claims were, like the earlier iterations of the claims, derivative of the claims

the Trustee had settled, and were thus enjoined by the Permanent Injunction. *Id.* The Goldman

Plaintiffs appealed the decision to the District Court. The appeal has been fully briefed and the

parties are awaiting a hearing date. *See A & G Goldman P'ship v. Capital Growth Co.,* 16-cv-

2065-GHW (S.D.N.Y. 2016), ECF Nos. 29, 31, 32 and 43.

## X.    INTERNATIONAL INVESTIGATION AND LITIGATION

419. The Trustee's international investigation and recovery of BLMIS estate assets

involves, among other things: (i) identifying the location and movement of estate assets abroad,

(ii) becoming involved in litigation brought by third parties in foreign courts, by appearance or

otherwise, to prevent the dissipation of funds properly belonging to the estate, (iii) bringing

actions before United States and foreign courts and government agencies to recover customer

property for the benefit of the customers and creditors of the BLMIS estate, and (iv) retaining

international counsel to assist the Trustee in these efforts, when necessary. More than seventy of

the actions filed in this Court involve international defendants, and the Trustee is involved in

actions and investigations in several jurisdictions, including Austria, Bermuda, Israel, and the United Kingdom, among others.

420.    The following summarizes key litigation involving foreign defendants in the Bankruptcy Court and in foreign courts.

## A.    **Austria**

421.    The Trustee has actively investigated certain banks, institutions, and individuals located in this jurisdiction.  The HSBC Action, discussed *supra*, names several Austrian and Italian defendants, including Sonja Kohn, Bank Austria, and UniCredit S.p.A.

## B.    **Bermuda**

422.    The Trustee is actively investigating various BLMIS-related entities, their officers and directors, and transfers of funds to and through Bermuda.  In addition, in December 2010, the Trustee filed protective actions in Bermuda against several HSBC-related entities in order to preserve the Trustee's ability to bring causes of action in that jurisdiction.  The Trustee also continues to actively monitor third party legal proceedings taking place in Bermuda that involve several BLMIS-related entities.

## C.    **BVI**

423.    The Trustee has discovered and is actively investigating the involvement of no fewer than twenty BVI-based feeder funds that funneled money into the Ponzi scheme.  In particular, the Trustee has investigated and filed active complaints in the Bankruptcy Court against several BVI-based defendants, including Kingate Global Fund, Ltd., Kingate Euro Fund, Ltd., Hermes International Fund Limited, Lagoon Investment Limited, Thema Fund Ltd, Thema Wise Investments Ltd., Lagoon Investment Trust, and Equity Trading Portfolio.

D.      **England**

424.    The Trustee currently has protective claims pending in England against Kingate-related individuals and entities and against HSBC and related entities.

E.      **Ireland**

425.    Ireland-based Thema International Fund plc and Landmark Fund are defendants in two separate avoidance actions.  The Trustee has continued to investigate these and other Ireland-based funds, related third-party litigation and related entities.

F.      **Israel**

426.    The Trustee is pursuing an avoidance and recovery claim against certain Israeli defendants who received fictitious profits from BLMIS.  In addition, in 2015, the Trustee filed two separate actions in Israel under Israeli law.  See discussion *supra* in Section IX(B)(ii)(h).

G.      **Switzerland and Luxembourg**

427.    In 2010, the Trustee filed two lawsuits in this Court against Switzerland-based UBS AG and other UBS-and HSBC related entities based in Luxembourg and various feeder funds, management companies, and individuals, discussed above.  The Trustee also continues to monitor certain BLMIS-related third party actions currently pending in these jurisdictions.

## XI.      FEE APPLICATIONS AND RELATED APPEALS

A.      **Objections to Prior Fee Applications**

428.    Objections were filed to six of the seventeen fee applications submitted by the Trustee and B&H.  Discussions of the objections to the first through sixth fee applications, and related motions for leave to appeal the Court's orders granting the Trustee's and B&H's fee applications and overruling those objections, are discussed more fully in the Trustee's Amended Third Interim Report ¶¶ 186–90 (ECF No. 2207); the Trustee's Fourth Interim Report ¶¶ 163–66 (ECF No. 3083); the Trustee's Fifth Interim Report ¶¶ 134–43 (ECF No. 4072); and the

Trustee's Sixth Interim Report ¶¶ 131–42 (ECF No. 4529).  No decision has been entered on the motion for leave to appeal the Second Interim Fee Order, No. M47-b (DAB) (S.D.N.Y.).  The motion for leave to appeal the Sixth Interim Fee Order was withdrawn on September 10, 2014. *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, Case No. 11 MC 00265(PGG) (S.D.N.Y.), ECF No. 9.

**B.      Twentieth Fee Application**

429.    On March 23, 2016, the Trustee and his counsel filed the Twentieth Application for Interim Compensation for Services Rendered and Reimbursement of Actual and Necessary Expenses incurred from August 1, 2015 through and including November 30, 2015 with the Bankruptcy Court.  (ECF No. 12958).  Special counsel and international special counsel also filed applications for Interim Professional Compensation.  (ECF Nos. 12959-12975).  At the hearing on April 27, 2016, the Trustee, his counsel, and SIPC were heard and provided a description of the services rendered and the reasons for which the compensation sought in the Twentieth Interim Fee Application was reasonable.   This Court subsequently entered the Twentieth Interim Fee Order approving the Twentieth Interim Fee Applications.  (ECF No. 13180).

**C.      Twenty-First Fee Application**

430.    On March 23, 2016, the Trustee and his counsel filed the Twenty-First Application for Interim Compensation for Services Rendered and Reimbursement of Actual and Necessary Expenses incurred from December 1, 2015 through and including March 31, 2016 with the Bankruptcy Court.  (ECF No. 12958 ).  Special counsel and international special counsel also filed applications for Interim Professional Compensation.  (ECF Nos. 12959-12975).  At the hearing on September 7, 2016, the Trustee, his counsel, and SIPC were heard and provided a description of the services rendered and the reasons for which the compensation sought in the

Twenty-First Interim Fee Application was reasonable. This Court subsequently entered the

Twenty-First Interim Fee Order approving the Twenty-First Interim Fee Applications. (ECF No.

13990).

## XII.    CONCLUSION

The foregoing report represents a summary of the status of this proceeding and the

material events that have occurred through September 30, 2016, unless otherwise indicated. This

Report will be supplemented and updated with further interim reports.


Dated:  New York, New York
        October 27, 2016

Respectfully submitted,

**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Email: dsheehan@bakerlaw.com
Seanna R. Brown
Email: sbrown@bakerlaw.com
Heather R. Wlodek
Email: hwlodek@bakerlaw.com

*Attorneys for Irving H. Picard, Trustee for the*
*Substantively Consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities*
*LLC and the Estate of Bernard L. Madoff*

*/s/ Irving H. Picard*
_____
Irving H. Picard
**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
Email: ipicard@bakerlaw.com

*Trustee for the Substantively Consolidated*
*SIPA Liquidation of Bernard L. Madoff*
*Investment Securities LLC and the Estate of*
*Bernard L. Madoff*