**Baker & Hostetler LLP**

45 Rockefeller Plaza
New York, New York 10111
Telephone:    (212) 589-4200
Facsimile:    (212) 589-4201
David J. Sheehan
Email: dsheehan@bakerlaw.com
Tracy Cole
Email: tcole@bakerlaw.com
M. Elizabeth Howe
Email: bhowe@bakerlaw.com

*Attorneys for Irving H. Picard, Esq., Trustee
for the Substantively Consolidated SIPA
Liquidation of Bernard L. Madoff
Investment Securities LLC and
the estate of Bernard L. Madoff*

**Hearing Date:  November 22, 2016 at 10:00 a.m.**
**Objection Deadline:  November 14, 2016**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>    Debtor. | SIPA LIQUIDATION<br><br>No. 08-01789 (SMB)<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>    Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>ESTATE OF STANLEY CHAIS, *et al.*,<br><br>    Defendants. | Adv. Pro. No. 09-01172 (SMB) |

| | |
|---|---|
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>DOUGLAS HALL; STEVEN HEIMOFF; BOTTLEBRUSH INVESTMENTS, L.P.; LEGHORN INVESTMENTS LTD.; and KAMALA D. HARRIS, solely in her capacity as Attorney General for the State of California,<br><br>    Defendants. | Adv. Pro. No. 12-01001 (SMB) |

**NOTICE OF MOTION FOR ENTRY OF ORDER PURSUANT TO SECTION 105(a) OF THE BANKRUPTCY CODE AND RULES 2002 AND 9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE APPROVING AN AGREEMENT BY AND BETWEEN THE TRUSTEE AND THE ESTATE OF STANLEY CHAIS AND OTHER DEFENDANTS IN ADVERSARY PROCEEDING NO. 09-01172, AND FOR ENTRY OF AN ORDER AUTHORIZING THE TRUSTEE TO SIGN ON TO, ON A LIMITED BASIS, (1) AN AGREEMENT EXECUTED BETWEEN THE ESTATE OF STANLEY CHAIS AND OTHER DEFENDANTS IN ADVERSARY PROCEEDING NO. 09-01172 AND KAMALA D. HARRIS, SOLELY IN HER CAPACITY AS ATTORNEY GENERAL OF THE STATE OF CALIFORNIA, AND (2) AN AGREEMENT EXECUTED BETWEEN THE ESTATE OF STANLEY CHAIS AND OTHER DEFENDANTS IN ADVERSARY PROCEEDING NO. 09-01172 AND PLAINTIFFS IN PENDING ACTIONS IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA**

Irving H. Picard (the "Trustee"), as trustee for the substantively consolidated liquidation of Bernard L. Madoff Investment Securities LLC and the substantively consolidated Chapter 7 estate of Bernard L. Madoff, individually, by and through his undersigned counsel, will move as set forth in the annexed motion (the "Motion") before the Honorable Stuart M. Bernstein, United States Bankruptcy Judge, at the United States Bankruptcy Court, the Alexander Hamilton Customs House, One Bowling Green, New York, New York 10004, on November 22, 2016 at 10:00 a.m., or as soon thereafter as

counsel may be heard, seeking: (i) entry of an order, pursuant to section 105(a) of the United

States Bankruptcy Code, 11 U.S.C. §§ 101 et seq., and Rules 2002 and 9019 of the Federal

Rules of Bankruptcy Procedure, approving that certain agreement by and between the

Trustee on the one hand and the Settling Defendants identified in Exhibit A to the Motion on

the other hand; (ii) entry of an order, pursuant to section 105(a) of the United States

Bankruptcy Code, 11 U.S.C. §§ 101 et seq., and Rules 2002 and 9019 of the Federal Rules of

Bankruptcy Procedure, authorizing the Trustee to sign on to, on a limited basis, an

agreement executed between the Settling Defendants identified on Exhibit A to the Motion

and Kamala D. Harris, solely in her capacity as Attorney General of the State of California;

and (iii) entry of an order, pursuant to section 105(a) of the United States Bankruptcy Code,

11 U.S.C. §§ 101 et seq., and Rules 2002 and 9019 of the Federal Rules of Bankruptcy

Procedure, authorizing the Trustee to sign on to, on a limited basis, an agreement executed

between the Settling Defendants identified on Exhibit A to the Motion and plaintiffs in

pending actions in the Superior Court of the State of California as more particularly set forth

in the Motion annexed hereto.

PLEASE TAKE FURTHER NOTICE that written objections to the Motion must be

filed with the Clerk of the United States Bankruptcy Court, One Bowling Green, New York,

New York 10004 by no later than **5:00 p.m. on November 14, 2016** (with a courtesy copy

delivered to the Chambers of the Honorable Stuart M. Bernstein) and must be served upon

(a) Baker & Hostetler LLP, counsel for the Trustee, 45 Rockefeller Plaza, New York, New

York 10111, Attn: David J. Sheehan and Tracy Cole; (b) the Securities Investor Protection

Corporation, 1667 K Street, NW, Suite 1000, Washington, DC 20006-1620, Attn: Kevin

Bell; (c) Sills, Cummis, & Gross P.C., counsel for certain defendants, 101 Park Avenue,

28th Floor, New York, New York 10178, Attn: Andrew Sherman; (d) Milbank, Tweed, Hadley & McCloy LLP, counsel for certain defendants, 28 Liberty Street, New York, New York 10005, Attn: Dennis F. Dunne and Michael L. Hirschfeld; (e) Biernert, Miller & Katzman, counsel for certain defendants, 903 Calle Amancer, Suite 350, San Clemente, CA 92673, Attn: Steven Katzman; (f) Alexandra Robert Gordon, Deputy Attorney General, State of California Department of Justice, 455 Golden Gate Avenue, Ste. 11000, San Francisco, CA 94102-7002; (g) Milberg LLP, counsel for certain third party plaintiffs, One Pennsylvania Plaza, 50th Floor, New York, NY 10119, Attn: Barry A. Weprin; and (h) Weintraub Tobin Chediak Coleman Grodin Inc., counsel for certain third party plaintiffs, 10250 Constellation Blvd., Suite 2900, Los Angeles, CA 90067, Attn: Marvin Gelfand.  Any objections must specifically state the interest that the objecting party has in these proceedings and the specific basis of any objection to the Motion.

Dated:  New York, New York
       October 28, 2016

**BAKER & HOSTETLER LLP**

By: */s/ Tracy Cole*
    David J. Sheehan
    Email: dsheehan@bakerlaw.com
    Tracy Cole
    Email: tcole@bakerlaw.com
    M. Elizabeth Howe
    Email: bhowe@bakerlaw.com
    45 Rockefeller Plaza
    New York, New York 10111
    Telephone: (212) 589-4200
    Facsimile: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 estate of Bernard L. Madoff*

**Baker & Hostetler LLP**

45 Rockefeller Plaza

New York, New York 10111

Telephone:    (212) 589-4200

Facsimile:    (212) 589-4201

David J. Sheehan

Email: dsheehan@bakerlaw.com

Tracy Cole

Email: tcole@bakerlaw.com

M. Elizabeth Howe

Email: bhowe@bakerlaw.com

**Hearing Date:  November 22, 2016 at 10:00 a.m.**

**Objection Deadline:  November 14, 2016**

*Attorneys for Irving H. Picard, Esq., Trustee*
*for the Substantively Consolidated SIPA*
*Liquidation of Bernard L. Madoff*
*Investment Securities LLC and*
*the estate of Bernard L. Madoff*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>   Debtor. | SIPA LIQUIDATION<br><br>No. 08-01789 (SMB)<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>   Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>   Plaintiff,<br><br>   v.<br><br>ESTATE OF STANLEY CHAIS, *et al.*,<br><br>   Defendants. | Adv. Pro. No. 09-01172 (SMB) |

| | |
|---|---|
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>       Plaintiff,<br><br>       v.<br><br>DOUGLAS HALL; STEVEN HEIMOFF; BOTTLEBRUSH INVESTMENTS, L.P.; LEGHORN INVESTMENTS LTD.; and KAMALA D. HARRIS, solely in her capacity as Attorney General for the State of California,<br><br>       Defendants. | Adv. Pro. No. 12-01001 (SMB) |

**MOTION FOR ENTRY OF ORDER PURSUANT TO SECTION 105(a) OF THE BANKRUPTCY CODE AND RULES 2002 AND 9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE APPROVING AN AGREEMENT BY AND BETWEEN THE TRUSTEE AND THE ESTATE OF STANLEY CHAIS AND OTHER DEFENDANTS IN ADVERSARY PROCEEDING NO. 09-01172, AND FOR ENTRY OF AN ORDER AUTHORIZING THE TRUSTEE TO SIGN ON TO ON A LIMITED BASIS (1) AN AGREEMENT EXECUTED BETWEEN THE ESTATE OF STANLEY CHAIS AND OTHER DEFENDANTS IN ADVERSARY PROCEEDING NO. 09-01172 AND KAMALA D. HARRIS, SOLELY IN HER CAPACITY AS ATTORNEY GENERAL OF THE STATE OF CALIFORNIA; AND (2) AN AGREEMENT EXECUTED BETWEEN THE ESTATE OF STANLEY CHAIS AND OTHER DEFENDANTS IN ADVERSARY PROCEEDING NO. 09-01172 AND PLAINTIFFS IN PENDING ACTIONS IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA**

TO:    THE HONORABLE STUART M. BERNSTEIN
       UNITED STATES BANKRUPTCY JUDGE:

       Irving H. Picard (the "Trustee"), as trustee for the substantively consolidated

liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") and the

substantively consolidated Chapter 7 estate of Bernard L. Madoff ("Madoff," and together

with BLMIS, collectively, the "Debtors"), by and through his undersigned counsel, submits

this motion (the "Motion") seeking: (i) entry of an order (the "TSA Approval Order"),

pursuant to section 105(a) of the United States Bankruptcy Code, 11 U.S.C. §§ 101 et seq. (the

"Bankruptcy Code"), and Rules 2002 and 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), approving an agreement (the "Trustee Settlement Agreement"), a copy of which is annexed hereto as Exhibit B, by and between the Trustee on the one hand and the Defendants identified in Exhibit A[1] on the other hand;  (ii) entry of an order (the "CAAG Approval Order"), pursuant to section 105(a) of the Bankruptcy Code and Bankruptcy Rules 2002 and 9019, authorizing the Trustee to sign on to, on a limited basis, an agreement (the "AG Settlement Agreement"), a copy of which is annexed hereto as Exhibit C, executed between the Defendants identified in Exhibit A on the one hand and Kamala D. Harris, solely in her capacity as Attorney General of the State of California ("Attorney General") on the other hand; and (iii) entry of an order (the "CP Bankruptcy Approval Order"), pursuant to section 105(a) of the United States Bankruptcy Code, 11 U.S.C. §§ 101 et seq., and Rules 2002 and 9019 of the Federal Rules of Bankruptcy Procedure, authorizing the Trustee to sign on to, on a limited basis, an agreement (the "CP Settlement Agreement"), a copy of which is annexed hereto as Exhibit D, executed between the Defendants identified on Exhibit A to the Motion and plaintiffs (the "California Plaintiffs") in pending actions in the Superior Court of the State of California (the Trustee Settlement Agreement, AG Settlement Agreement, and CP Settlement Agreement shall herein be collectively referred to as the "Settlement"), and, in support thereof, the Trustee respectfully represents as follows:

---

[1] As fully set forth in Exhibit A, certain of the Defendants shall be referred to herein as the "Stanley Chais Defendants" and others as the "Chais Related Defendants."  The Stanley Chais Defendants and Chais Related Defendants shall be referred to collectively as the "Settling Defendants."

## PRELIMINARY STATEMENT

1.      The Settlement results in the payment of approximately $262 million to the fund of Customer Property for distribution by the Trustee to the victims of Madoff's crimes. Through this Settlement, the Trustee is obtaining all of the assets remaining in the Estate of Stanley Chais, substantially all of the assets of Pamela Chais and recovering all alleged fictitious profit transfers received by the Chais Related Defendants in the two years prior to the Filing Date, totaling approximately $232 million in cash payments and an estimated $30 million in other assets.   The Trustee Settlement Agreement with the Settling Defendants represents a good faith, complete, and total compromise as to any and all claims the Trustee has asserted or could have asserted in his action against the Settling Defendants.   The Trustee Settlement Agreement will greatly benefit the victims of the Madoff Ponzi scheme and the Trustee respectfully requests that the Court approve it.

2.      The Trustee also seeks authorization to sign on to the AG Settlement Agreement and CP Settlement Agreement on a limited basis.   The AG Settlement Agreement was executed by the Settling Defendants and the Attorney General simultaneously with the Trustee Settlement Agreement.   Through the AG Settlement Agreement, the Settling Defendants have fully settled any and all claims the Attorney General has asserted or could have asserted against them.   The CP Settlement Agreement was executed simultaneously with the Trustee Settlement Agreement and the AG Settlement Agreement and is subject to approval by the Superior Court of the State of California. Upon such approval, the Settling Defendants will have fully and finally settled any and all claims the California Plaintiffs have asserted or could have asserted against the Settling Defendants. The Trustee's limited participation in the AG Settlement Agreement and CP Settlement

4

Agreement will obviate the need for the Trustee's continued prosecution of his request for a stay of certain proceedings instituted by the Attorney General in the State of California. The Trustee respectfully asks this Court to authorize the Trustee to sign on to the AG Settlement Agreement and the CP Settlement Agreement on the limited basis described therein.

## BACKGROUND

3.      On December 11, 2008 (the "Filing Date"),[2] the Securities and Exchange Commission ("SEC") filed a complaint in the United States District Court for the Southern District of New York (the "District Court") against the Debtors (Case No. 08 CV 10791). The complaint alleged that the Debtors engaged in fraud through investment advisor activities of BLMIS.

4.      On December 15, 2008, pursuant to section 78eee(a)(4)(A) of SIPA, the SEC consented to a combination of its own action with an application of the Securities Investor Protection Corporation ("SIPC"). Thereafter, pursuant to section 78eee(a)(3) of SIPA, SIPC filed an application in the District Court alleging, *inter alia*, that BLMIS was not able to meet its obligations to securities customers as they came due and, accordingly, its customers needed the protection afforded by SIPA.

5.      On that date, the District Court entered the Protective Decree, to which BLMIS consented, which, in pertinent part:

(i)      removed the receiver and appointed the Trustee for the liquidation of the business of BLMIS pursuant to section 78eee(b)(3) of SIPA;

---

[2]   In this case, the Filing Date is December 11, 2008, the date on which the Securities and Exchange Commission commenced its suit against BLMIS, which resulted in the appointment of a receiver for the firm. *See* Section 78*lll*(7)(B) of SIPA.

(ii)    appointed Baker & Hostetler LLP as counsel to the Trustee pursuant to section 78eee(b)(3) of SIPA; and

(iii)   removed the case to this Court pursuant to section 78eee(b)(4) of SIPA.

6.      At a plea hearing (the "Plea Hearing") on March 12, 2009 in the criminal action filed against him by the United States Attorney's Office for the Southern District of New York, Madoff pled guilty to an 11-count criminal information, which counts included securities fraud, money laundering, theft and embezzlement.  At the Plea Hearing, Madoff admitted that he "operated a Ponzi scheme through the investment advisory side of [BLMIS]."  (Plea Hr'g Tr. at 23:14-17.)  On June 29, 2009, Madoff was sentenced to a term of imprisonment of 150 years.

7.      On April 13, 2009, an involuntary bankruptcy petition was filed against Madoff.  On June 9, 2009, this Court entered an order substantively consolidating the Chapter 7 estate of Madoff into the BLMIS SIPA proceeding.

**THE TRUSTEE'S CLAIMS AGAINST THE SETTLING DEFENDANTS**

8.      Stanley Chais ("Chais") was one of BLMIS's earliest investors.  The Trustee asserts that, since at least the 1970s, Chais, his family and family trusts, their related entities, and three investment partnerships formed by Chais as General Partner (the "California Partnerships") opened more than 60 accounts with BLMIS (the "Subject BLMIS Accounts"), from which approximately $1.32 billion in alleged fictitious profits and principal was withdrawn collectively.  Chais and his family members have maintained at all times that they were not aware of the fraudulent nature of Madoff's activities or the allegedly fictitious nature of the profits distributed by BLMIS.

6

9.      On May 1, 2009, the Trustee filed an adversary proceeding (the "Avoidance Action") in this Court against Chais, his family members, and entities related to Chais.[3]  In the Avoidance Action, the Trustee sought to avoid and recover the approximately $1.32 billion in BLMIS transfers which the Trustee alleges were made directly or indirectly to the Settling Defendants and the California Partnerships over the lifetime of their BLMIS accounts.[4]  Chais, his family members and entities related to Chais denied the material allegations of the Trustee's complaint in the Avoidance Action.  Subsequent to the filing of the Avoidance Action, on September 10, 2010, Chais died, and the Estate of Stanley Chais (the "Chais Estate") was substituted in his place as a defendant in the Avoidance Action.

10.     The Settling Defendants consist of the Chais Estate and a number of his family members, as well as investment funds, trusts, companies, and other entities associated with Chais, including the Chais Related Defendants.  The Trustee asserts that, of the more than $1.3 billion in transfers received by the Settling Defendants and the California Partnerships collectively from their BLMIS accounts during the period from 1995 through 2008, including approximately $995 million received by the California Partnership Accounts, approximately $1.05 billion consisted of alleged fictitious profits from the Ponzi scheme.  The Trustee asserts that approximately $804 million was withdrawn from the Subject BLMIS Accounts (including more than $574  million withdrawn from the California Partnership Accounts) within the six years prior to the Filing Date, more than $793 million

_____

[3] Defendant Albert Angel was dismissed without prejudice on November 4, 2009.  *Picard v. Estate of Stanley Chais, et al.*, Adv. Pro. No. 09-01172 (ECF 34).
[4] The BLMIS accounts held by the California Partnerships will be referred to herein as the "California Partnership Accounts"; all other BLMIS accounts at issue in the Avoidance Action will be referred to as the "Chais Family BLMIS Accounts." A full list of the Chais Family BLMIS Accounts is included within Exhibit A to the Trustee Settlement Agreement.

7

of which consisted of alleged fictitious profits from the Ponzi scheme; of this amount approximately $377 million was withdrawn (including more than $301 million from the California Partnership Accounts) within the two years prior to the Filing Date, more than $375 million of which consisted of alleged fictitious profits from the Ponzi scheme; and, of that amount, approximately $46 million was withdrawn (including more than $45 million from the California Partnership Accounts) within 90 days prior to the Filing Date, all of which consisted of alleged fictitious profits from the Ponzi scheme.

11.    The Trustee's Complaint asserts claims against the Settling Defendants including, but not limited to, claims under Sections 542, 544(b), 547, 548, 550 and 551 of the Bankruptcy Code, SIPA § 78fff-2(c)(3), and Sections 270 to 279 of the New York Debtor and Creditor Law for direct or indirect transfers within the applicable statutory period (collectively, the "Avoiding Power Claims").

12.    The Settling Defendants dispute the legal and factual bases of the Trustee's claims against them, including the Avoiding Power Claims and have asserted certain defenses to the Trustee's claims.  The Settling Defendants assert their withdrawals from BLMIS were made in good faith and for value and, thus, are not avoidable.  In addition, the Settling Defendants assert that the United States Court of Appeals for the Second Circuit's decision with respect to the application of Bankruptcy Code section 546(e) in these cases, as well as the District Court's decision preceding it, limit the claims the Trustee can bring against them to actual fraudulent conveyances made within two years prior to the Filing Date.  Finally, the Chais Estate asserts that it would challenge the imputation to it of certain transfers from BLMIS to the California Partnerships.

13.    Prior to July 2, 2009, the bar date for filing claims, certain of the Settling

Defendants filed customer claims with the Trustee, as identified in Exhibit B to the Trustee Settlement Agreement.  The Trustee denied all claims filed by the Settling Defendants in relation to BLMIS accounts that were "net winners" of the Ponzi scheme according to the Trustee's Net Investment Method.  Ten customer claims filed by the Settling Defendants in relation to five accounts that were determined to be "net losers" of the fraud according to the Trustee's Net Investment Method (the "Customer Claims") were set aside pending resolution of the litigation against the Settling Defendants.

14.    On November 12, 2009, certain of the Chais Related Defendants filed a motion to dismiss ten of the eleven counts in the Trustee's complaint in the Avoidance Action under Bankruptcy Rule 7012(b) for failure to state a claim upon which relief could be granted.[5]  On February 24, 2010, this Court granted the Chais Related Defendants' motion to dismiss in part, dismissing count 1 of the complaint seeking turnover and accounting related to the Chais Related Defendants' BLMIS withdrawals, and denied the motion as to all of the remaining counts.

15.    On July 18, 2012, following a Chambers conference and hearing, the Court directed the parties to the Avoidance Action and the parties to the Injunction Action (as

---

[5] On September 22, 2009, Chais Related Defendant Michael Chasalow separately moved to dismiss the Trustee's complaint under Bankruptcy Rule 7012(b) for failure to state a claim upon which relief can be granted.  *Picard v. Estate of Stanley Chais, et al.*, Adv. Pro. No. 09-01172 (ECF 11).  In order to resolve Mr. Chasalow's motion to dismiss, Mr. Chasalow and the Trustee entered a stipulation so ordered on January 13, 2011.  In that stipulation Mr. Chasalow agreed that the Trustee would have leave to amend his complaint to make further factual allegations against Mr. Chasalow, provided that the Trustee's amended complaint did not allege additional causes of action.  *Id*. (ECF 89).  The date by which the Trustee may file his amended complaint pursuant to the stipulation has been extended several times by mutual consent of the parties; the current deadline to file the amended complaint is November 10, 2016.  *Id*. (ECF 151).  On November 9, 2009, Chais Related Defendant Miri Chais additionally moved to dismiss under Bankruptcy Rule 7012(b) for lack of personal jurisdiction.  Miri Chais' motion was denied on November 30, 2010.  *Id*. (ECF 87).  Additionally, the Chais Related Defendants and the Stanley Chais Defendants each filed motions to withdraw the bankruptcy reference.  *Id*.  (ECF 118, 119).  The reference was partially withdrawn and has since been returned to this Court.

hereinafter defined) to participate in mediation; the Court appointed (former and now) Bankruptcy Judge James L. Garrity Jr. as mediator. At the time of the order directing mediation, the Trustee had a pending request before this Court seeking authorization to file a partial motion for summary judgment on the Trustee's claims seeking avoidance and recovery of the transfers received by all defendants (including the Settling Defendants) within two years of the Filing Date. That request had been opposed by the Settling Defendants.

## THE TRUSTEE'S INJUNCTION ACTION

16.     Several actions ("California Actions") have also been filed in the State of California against Chais, the Chais Estate, and certain other defendants in the Avoidance Action based on alleged losses sustained by investors in the California Partnerships as a result of the Madoff Ponzi scheme and Chais' alleged conduct with respect to the California Partnerships. The California Actions currently pending in the Superior Court of the State of California are:  *Bottlebrush Investments, LP v. The Lambeth Company, et al.*, Case No. BC407967; *Leghorn Investments, Ltd. v. Brighton Investments, et al.*, Case No. BC408661; *Heimoff v. Chais, et al., Case No. BC413821; Hall v. Chais, et al.*, Case No. BC413820 (collectively, the "California Private Actions"); and *The People of the State of California v. Chais, et al.*, Case No. BC422257 (the "CAAG Action").

17.     With the exception of the CAAG Action, each of the California Actions is a derivative action brought by investors in the California Partnerships. The plaintiffs in the four California Private Actions (as previously defined, the "California Plaintiffs") and the Attorney General allege that Chais misled investors in the California Partnerships into believing that he was actively managing their money and making independent investment

decisions on their behalf when, in reality, Chais passed all or virtually all of the investors'
pooled funds on to Madoff and BLMIS.

18.     The Attorney General commenced the CAAG Action in the California
Superior Court on or about September 22, 2009, against Chais (for whom Pamela Chais, as
personal representative and executor of the Chais Estate, was substituted as a defendant) and
Does 1 through 100, inclusive, on behalf of investors in the California Partnerships.  The
Attorney General seeks restitution, disgorgement and civil penalties on behalf of the
California Partnerships' investors, and costs.  The Attorney General also sought an
injunction prohibiting Chais from engaging in the conduct alleged in the CAAG Action to
violate California state securities and business law.  The Chais Related Defendants are not
defendants in the CAAG Action and deny any liability to any investor in the California
Partnerships, but have represented to the Trustee that they are contributing to the Restitution
Fund (as defined herein) through cash payments and claim assignments to effectuate a
global resolution of the Trustee's Avoidance Action, the California Private Actions and the
CAAG Action upon the terms and conditions set forth in the applicable settlement
agreements.

19.     On January 4, 2012, the Trustee filed an adversary proceeding complaint
accompanied by an application pursuant to sections 362(a) and 105(a) of the Bankruptcy
Code, and SIPA §§ 78eee(a)(3) and 78eee(b)(2)(B) (the "Injunction Action") to:  (i) enforce
the District Court's December 15, 2008 stay order and related orders (the "Stay Orders") and
the automatic stay in the BLMIS SIPA proceeding; (ii) declare that the California Actions,
including the CAAG Action, violate the Stay Orders and the automatic stay and are void *ab
initio* as against the defendants in the Avoidance Action; and (iii) preliminarily enjoin the

California Plaintiffs and the Attorney General from litigating the California Actions or any other actions against any of the defendants in the Avoidance Action pending the resolution of the Avoidance Action.

20.     As alleged by the Trustee in the Injunction Action, the recoveries sought in the California Actions are duplicative in substantial part of the recoveries sought by the Trustee in the Avoidance Action, and the Settling Defendants lack sufficient assets to satisfy a judgment in the Trustee's favor in the Avoidance Action (the Stanley Chais Defendants lack sufficient assets to satisfy a judgment even in the amount of the Trustee's two-year avoidance claims, which the Trustee computes by, among other things, imputing to Chais the value of the two-year transfers to the California Partnerships), and thus any judgment obtained by the California Plaintiffs or the Attorney General in the California Actions would necessarily diminish the Trustee's ability to recover from the defendants in the Avoidance Action for the benefit of the Fund of Customer Property.

21.     The Trustee's proposed injunction in the Injunction Action would have barred the California Plaintiffs and the Attorney General from pursuing claims against and recovering from the defendants in the Avoidance Action until resolution of the Avoidance Action in order to protect the Trustee's ability to recover to benefit the Fund of Customer Property.  The California Plaintiffs and the Attorney General opposed the Trustee's request for injunctive relief and otherwise challenged the positions asserted by the Trustee in the Injunction Action.  As noted above, on July 18, 2012, the Injunction Action and the Avoidance Action were referred to joint mediation.  The mediator's final report, which noted that a full settlement had not yet been reached, was filed on February 11, 2015.  *See Picard v. Estate of Stanley Chais, et al.*, Adv. Pro. No. 09-01172 (ECF 142).

12

## SETTLEMENT DISCUSSIONS AND TRUSTEE'S INVESTIGATION

22.    At various times following the Trustee's filing of the Avoidance Action, the Settling Defendants, through their respective counsel, engaged in good faith discussions with the Trustee aimed at resolving the Trustee's claims.    Although promoting the participants' understanding of their respective positions, those discussions did not produce an agreement.    Starting in July 2012, at the direction of the Court, the Trustee, the Settling Defendants, the Attorney General, and the California Plaintiffs engaged in multiple mediation conferences under the direction of Bankruptcy Judge James L. Garrity, Jr., who at that time was retired from the Court.    While the Settling Defendants informed the Trustee, the California Plaintiffs, and the Attorney General that they disputed any liability to the Trustee, the California Plaintiffs, or to the Attorney General, their good faith negotiations yielded the Settlement.    The Settlement is the result of negotiations and mediation conferences over nearly four years, including a number of face-to-face meetings among counsel, multiple substantive teleconferences, multiple exchanges of numbers and drafts between and among the parties to the Settlement, and clarifying developments in the applicable case law.

23.    The Trustee has conducted a comprehensive investigation of the Settling Defendants' direct and indirect investments with BLMIS.    The Settling Defendants have cooperated with the Trustee and facilitated the investigation by providing information the Trustee has requested.    In addition to the above, the Trustee and the Attorney General have cooperated in an investigation and analysis, consistent with the Trustee's "net equity" methodology, of the investments made by the investors in the California Partnerships to assist in determining the extent of the individual harms, if any, to these investors for the

purposes of the formation and administration of a fund in excess of $15 million (the "Restitution Fund") supervised by the Attorney General for the administration and payment of claims made by third party investors of the California Partnerships, including the California Plaintiffs.

24.     After a review of the relevant records and a thorough and deliberate consideration of the uncertainty and risks inherent in all litigation, the Trustee, in the exercise of his business judgment, has determined that it is appropriate to reach a business resolution in this matter rather than proceed to further litigation.

## CONTRIBUTION TO THE CUSTOMER PROPERTY ESTATE

25.     The Settlement resolves any and all claims the Trustee has or could have asserted against the Settling Defendants, including but not limited to claims to avoid direct and indirect transfers to the Settling Defendants made by BLMIS during the 90-day, two-year, and six-year periods prior to the Filing Date, claims to avoid direct and indirect transfers to the Settling Defendants by BLMIS over the life of the Chais Family BLMIS Accounts, and all other claims the Trustee has brought against the Settling Defendants.

26.     This Settlement will return to BLMIS's consolidated estate, for distribution to qualifying BLMIS customers, a total of approximately $260 million, including $232 million in cash payments and an estimated $30 million in other assets[6] from the Settling Defendants. Significantly, the Estate of Stanley Chais and his widow, Pamela Chais, will contribute substantially all of their remaining assets in payment of the Settlement. In addition, the Chais Related Defendants' contribution to the Settlement will include the full amount that

---

[6] This figure does not include assets, possession of which will be transferrable to the Trustee upon the death of Pamela Chais under the Trustee Settlement Agreement, which include virtually all personal property owned by Pamela Chais and her condominium.

the Chais Related Defendants withdrew from BLMIS in the two years before the Filing

Date.

## THE AGREEMENTS

27.    The principal terms and conditions of the Trustee Settlement Agreement, a

copy of which is attached hereto as Exhibit B, are as follows[7]:

- Within five (5) Business Days of the TSA Approval Order becoming final and unappealable, there will be a Closing at which the Stanley Chais Defendants shall pay or transfer their cash assets identified in the Trustee Settlement Agreement to the Trustee for the benefit of the Fund of Customer Property.  In addition, the Stanley Chais Defendants shall transfer to the Trustee certain alternative investments maintained by the Stanley Chais Defendants to be liquidated for the benefit of the Fund of Customer Property.

- At Closing, Pamela Chais shall transfer all of her real, tangible, and personal property to the Trustee, subject to limited exceptions for exempt assets and to which she will retain a life estate therein, which she will maintain and insure at her own cost during her lifetime.

- Upon Mrs. Chais' death, the life estate shall terminate and possession of her real, tangible and personal property transferred pursuant to the Grant Deed with Reserved Life Estate and Bill of Sale and General Assignment attached as Exhibit D and E to the Trustee Settlement Agreement in which Mrs. Chais retained a life estate shall revert to the Trustee for the benefit of the Fund of Customer Property; except that certain family members shall be allowed to select up to $75,000 worth of certain personal property with a sentimental value that will be transferred to them.

- At Closing, the Chais Related Defendants shall pay or transfer approximately $38.7 million in cash assets to the Trustee. Additionally, Chais Investments, Ltd. will transfer to the Trustee all of its liquid assets (with the exception of any liquid assets necessary to meet future capital calls on non-liquid investments) and will use reasonable efforts to liquidate, in a manner intended to maximize value, all of its non-liquid assets and transfer to the Trustee.

---

[7] Capitalized words not otherwise defined in this section shall have the meaning ascribed to them in the Trustee Settlement Agreement.  In the event of any inconsistency between the summary of terms provided in this section and the terms of the Trustee Settlement Agreement, the Trustee Settlement Agreement shall prevail.

- At Closing the Trustee will allow the Customer Claims in the combined amount of $4,877,810 in the same manner as claims are calculated and allowed for any "net loser" customers of BLMIS. Upon allowance of these Customer Claims, the Chais Related Defendants will assign the Customer Claims to the Trustee.

- The Trustee will use his reasonable best efforts to obtain a final, non-appealable permanent injunction in favor of the Defendants enjoining the continued prosecution of any claims released by the Trustee as part of the Trustee Settlement Agreement and any claim that is duplicative or derivative of any such claim.

- If, within one (1) year after the Restitution Claim Bar Date (as defined in the AG Settlement Agreement), subject to extension, the Defendants make a written request upon the conditions agreed by the Defendants and the Trustee, the Trustee shall, within sixty (60) days after receiving such request, seek leave to move for partial summary judgment against the California Partnerships in the Avoidance Action with respect to preferences and avoidance of two year transfers and assign any judgments it may obtain to the Chais Related Defendants.

- The Trustee will release, acquit, and absolutely discharge the Settling Defendants on the specific terms set forth in the Trustee Settlement Agreement. The release will become effective upon the Trustee's actual receipt of the cash payment and other assets, as set forth in the Trustee Settlement Agreement.

- The Settling Defendants will release, acquit, and absolutely discharge the Trustee and all his agents and BLMIS and its consolidated estate on the specific terms set forth in the Trustee Settlement Agreement. The release will become effective upon the Trustee's actual receipt of the cash payment and assets at Closing, as set forth in the Trustee Settlement Agreement.

- The Settling Defendants agree that they are subject to the jurisdiction of this Court for the purpose of the SIPA Proceeding and the Trustee's Avoidance Claims.

28.    The Trustee's limited obligations under the AG Settlement Agreement, a copy of which is attached hereto as Exhibit C, are generally as follows[8]:

---

[8] Capitalized words not otherwise defined in this section shall have the meaning ascribed to them in the AG Settlement Agreement. In the event of any inconsistency between the summary of terms provided in this section and the terms of the AG Settlement Agreement, the AG Settlement Agreement shall prevail.

- At Closing, the Chais Related Defendants will assign the Customer Claims to the Trustee. The Trustee anticipates that this assignment will result in an additional recovery to the estate of approximately $4.8 million. In exchange for the assignment of the Customer Claims, the Trustee will forbear from receiving $5 million of the settlement payments due to be paid by the Settling Defendants under the terms of the Trustee Settlement Agreement. At Closing, the $5 million shall be transferred by the Stanley Chais Defendants to the Attorney General for contribution to the Restitution Fund.

- At Closing, $7.5 million of the settlement payments due to be paid by the Settling Defendants under the terms of the Trustee Settlement Agreement shall instead be transferred by the Stanley Chais Defendants to the Attorney General for contribution to the Restitution Fund, for the benefit of the claimants to the Restitution Fund.

29.    The Trustee's limited obligations under the CP Settlement Agreement, a copy of which is attached hereto as Exhibit D, are generally as follows[9]:

- Upon approval of the CP Settlement Agreement by the Superior Court of the State of California and entry of a final non-appealable order approving the CP Settlement Agreement, the Trustee will forbear from receiving $2.6 million of the settlement payments due to be paid by the Settling Defendants under the terms of the Trustee Settlement Agreement, which shall have been transferred by the Stanley Chais Defendants to an escrow account held by the Stanley Chais Defendants' counsel acting as an escrow agent. Within ten (10) Business Days of the CPAS Effective Date, the $2.6 million shall be transferred to the Attorney General for contribution to the Restitution Fund or to the attorneys for the California Plaintiffs to the extent any amount is approved by the Superior Court of the State of California for payment of the California Plaintiffs' legal fees.

## **RELIEF REQUESTED**

30.    By this Motion, the Trustee respectfully requests that the Court enter an order substantially in the form of the proposed TSA Approval Order annexed hereto as Exhibit E approving the Trustee Settlement Agreement, an order substantially in the form of the

---

[9] Capitalized words not otherwise defined in this section shall have the meaning ascribed to them in the CP Settlement Agreement. In the event of any inconsistency between the summary of terms provided in this section and the terms of the CP Settlement Agreement, the CP Settlement Agreement shall prevail.

proposed CAAG Approval Order annexed hereto as Exhibit F, and an order substantially in

the form of the proposed CP Bankruptcy Approval Order annexed hereto as Exhibit G.

## **LEGAL BASIS**

31.     Bankruptcy Rule 9019(a) states, in pertinent part, that "[o]n motion by the

trustee and after notice and a hearing, the court may approve a compromise or settlement."

Courts have held that in order to approve a settlement or compromise under Bankruptcy

Rule 9019(a), a bankruptcy court should find that the compromise proposed is fair and

equitable, reasonable, and in the best interests of a debtor's estate.  *In re Ionosphere Clubs,*

*Inc.*, 156 BR 414, 426 (S.D.N.Y. 1993), *aff'd*, 17 F.3d 600 (2d Cir. 1994) (citing *Protective*

*Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424

(1968)).

32.     The Second Circuit has stated that a bankruptcy court, in determining

whether to approve a compromise, should not decide the numerous questions of law and fact

raised by the compromise, but rather should "canvass the issues and see whether the

settlement 'fall[s] below the lowest point in the range of reasonableness.'"  *Liu v. Silverman*

*(In re Liu)*, 1998 U.S. App. LEXIS 31698, at *3 (2d Cir. Dec. 18, 1998) (quoting *In re W.T.*

*Grant Co.*, 699 F.2d 599, 608 (2d Cir. 1983)); *see also Masonic Hall & Asylum Fund v.*

*Official Comm. Of Unsecured Creditors (In re Refco, Inc.)*, 2006 U.S. Dist. LEXIS 85691,

at *21-22 (S.D.N.Y. Nov. 16, 2006); *In re Ionosphere Clubs*, 156 B.R. at 426; *In re Purified*

*Down Prods. Corp.*, 150 B.R. 519, 522 (S.D.N.Y. 1993) ("[T]he court need not conduct a

'mini-trial' to determine the merits of the underlying litigation"); *In re Drexel Burnham*

*Lambert Group, Inc.*, 134 B.R. 499, 505 (Bankr. S.D.N.Y. 1991).

33.     In deciding whether a compromise falls within the "range of reasonableness,"

courts consider the following factors:

(i)      the probability of success in the litigation;

(ii)     the difficulties associated with collection;

(iii)    the complexity of the litigation, and the attendant expense, inconvenience, and delay; and

(iv)    the paramount interests of the creditors (or in this case, customers).

*In re Refco, Inc.,* 2006 U.S. Dist. LEXIS 85691 at *22; *Nellis v. Shugrue*, 165 B.R. 115, 122 (S.D.N.Y. 1994) (citing *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 292 (2d Cir. 1992), *cert. dismissed*, 506 U.S. 1088 (1993)).

34.    The bankruptcy court may credit and consider the opinions of the trustee or debtor and their counsel in determining whether a settlement is fair and equitable. *See In re Purified Down Prods.*, 150 B.R. at 522; *In re Drexel Burnham Lambert Group, Inc.*, 134 B.R. at 505. Even though the Court has discretion to approve settlements and must independently evaluate the reasonableness of the settlement, *In re Rosenberg*, 419 B.R. 532, 536 (Bankr. E.D.N.Y. 2009), the business judgment of the trustee and his counsel should be considered in determining whether a settlement is fair and equitable. The competency and experience of counsel supporting the settlement may also be considered. *Nellis*, 165 B.R. at 122. Finally, the court should be mindful of the principle that "the law favors compromise." *In re Drexel Burnham Lambert Group, Inc.*, 134 B.R. at 505 (quoting *In re Blair*, 538 F.2d 849, 851 (9th Cir. 1976)).

35.    The Trustee believes that the terms of the Settlement fall well above the lowest point in the range of reasonableness and, accordingly, the Settlement should be approved by this Court. The Settlement avoids the cost and delay of what could otherwise be lengthy and contentious litigation. (See Affidavit of the Trustee in Support of the Motion (the "Picard Affidavit"), a true and accurate copy of which is attached hereto as Exhibit H). The Settlement resolves the bulk of the claims at issue in the Avoidance Action and resolves

the claims against the Attorney General and the California Plaintiffs in the Injunction Action, and was reached after a full and fair mediation in which all parties to both Actions participated in good faith. The Settlement will resolve the Trustee's claims against the Settling Defendants in the Avoidance Action and the Trustee's claims against the Attorney General and the California Plaintiffs in the Injunction Action without the need to litigate further concerning the more than 60 BLMIS accounts at issue and without the need to obtain injunctive relief against the Attorney General and the California Plaintiffs.

36. The Settlement will permit the Trustee to collect and distribute essentially the same amount he would have obtained as a judgment had he moved forward with and been entirely successful on his proposed motion for partial summary judgment on his two-year Avoidance Claims prior to engaging in mediation. And the Settlement allows the Trustee to do so without having to grapple with various collection issues the Trustee otherwise would have faced, and without the potential diminution, in the case of the Stanley Chais Defendants, of recoverable assets by reason of litigation costs and expenses. Given the current state of the law regarding the Trustee's ability to sustain avoidance claims, the Trustee made the decision to settle for the amount currently recoverable rather than continuing litigation where his efforts to collect additional funds would prove challenging unless there was an intervening reversal by the Supreme Court applicable to the Trustee's claims beyond the two-year period.

37. Further, although the Trustee has alleged facts in the context of the Avoidance Action that he asserts obviate the application of section 546(e), that allegation is disputed by the Settling Defendants. The rulings by the District Court and evidentiary issues associated with such allegations, compounded by those created by Chais' death, create

uncertainty as to additional recovery under these theories.  While the Trustee is confident that he would have prevailed, the litigation risk in this particular matter is heightened by the nature of the relationship between Chais and BLMIS.

38.    The transfers at issue extend over many decades and are disbursed over dozens of accounts, which are held in the names of various trusts, partnerships, corporations, and other entities, including a charitable foundation, some of which are located abroad and all of which have differing abilities to satisfy any potential judgment.  Had the Trustee continued litigation against the Settling Defendants and successfully imposed liability on them, collection would likely involve the pursuit of subsequent transferees in various countries.  Litigation could conceivably continue for many additional years and could result in a recovery of potentially less than the amount payable under the terms of the Settlement, which includes recovery of the two-year fictitious profit transfers received by the Chais Related Defendants, regardless of each individual defendant's ability to pay, and includes substantially all of the assets of the Stanley Chais Defendants.  This Settlement allows the Trustee to avoid the complications associated with litigating against and collecting judgments from numerous Chais-related BLMIS accountholders and the individual defendants behind each Chais-related entity, and permits a swift recovery that the Trustee deems to be in the best interest of the Estate.

39.    The Trustee's narrow obligations under the AG Settlement Agreement and CP Settlement Agreement will obviate the need for further injunction proceedings with respect to the California Actions, saving the time and expense of litigating further injunction proceedings against the Attorney General and the California Plaintiffs where there is risk that, absent an injunction, the Attorney General or the California Plaintiffs may be awarded

damages from the Settling Defendants' funds that otherwise would be recoverable for the Fund of Customer Property. The Trustee's obligations under the AG Settlement Agreement and CP Settlement Agreement also permit the Settling Defendants to resolve the allegations made by the investors in the California Partnerships and diminish the likelihood of challenge to or appeal of the TSA Approval Order by third parties based on the allegations in the California Actions. Because the Settlement will fully resolve both the Injunction Action and the Avoidance Action, the Settlement will greatly reduce the time and cost necessary for further litigation. Thus, the Settlement also will allow distribution of recovered funds from the Fund of Customer Property far sooner than any recovery after continued litigation.

40.    Thus, the Settlement greatly furthers the interests of BLMIS customers by adding an estimated $262 million to the Fund of Customer Property, and results in the Trustee recovering all of the withdrawals made by the Chais Related Defendants from BLMIS within the two years prior to the Filing Date, and obtaining virtually all of the assets in the Estate of Stanley Chais or held by his widow, Pamela Chais, without the delay and expense of further litigation and the attendant uncertainty.

## CONCLUSION

41.    In sum, the Trustee submits that the Trustee Settlement Agreement should be approved:  (a) to avoid any further litigation that may be lengthy, burdensome, uncertain, and expensive; (b) to obtain all of the assets of the Estate of Stanley Chais and virtually all of the assets of his widow, Pamela Chais; (c) to recover all alleged fictitious profit withdrawals made by the Chais Related Defendants within the two-year period prior to the Filing Date; and (d) because it represents a fair and reasonable compromise that will greatly benefit the estate and the customers of BLMIS.  Because the Trustee Settlement Agreement

is well within the "range of reasonableness" and confers a substantial benefit on the estate, the Trustee respectfully requests that the Court enter the TSA Approval Order approving the Trustee Settlement Agreement. Additionally, to resolve the California Actions without significant diminution of the Settling Defendants' assets available for the recovery for the Fund of Customer Property and to benefit investors in the California Partnerships who do not have claims against the Fund of Customer Property, the Trustee requests authorization to sign onto the AG Settlement Agreement and CP Settlement Agreement on a limited basis and undertake the narrow obligations attributable to the Trustee thereunder.

**NOTICE**

42. In accordance with Bankruptcy Rules 2002 and 9019, notice of this Motion has been given to (i) SIPC; (ii) the SEC; (iii) the Internal Revenue Service; (iv) the United States Attorney for the Southern District of New York; (v) Sills, Cummis, & Gross P.C., counsel for certain defendants; (vi) Milbank, Tweed, Hadley & McCloy LLP, counsel for certain defendants; (vii) Biernert, Miller & Katzman, counsel for certain defendants; (viii) Alexandra Robert Gordon, Deputy Attorney General, State of California Department of Justice; (ix) Milberg LLP, attorneys for certain third party plaintiffs; and (x) Weintraub Tobin Chediak Coleman Grodin Inc., counsel for certain third party plaintiffs. Notice of this Motion also will be provided via email and/or U.S. Mail to all persons who have filed notices of appearance in the BLMIS proceeding and to all defendants in this Adversary Proceeding pursuant to the Order Establishing Notice Procedures (ECF No. 4560). The Trustee submits that no other or further notice is required.

WHEREFORE, the Trustee respectfully requests entry of Orders substantially in the form of Exhibits E, F and G granting the relief requested in the Motion.

Dated:  New York, New York
          October 28, 2016

Respectfully submitted,

*/s/ Tracy Cole*
David J. Sheehan
Email: dsheehan@bakerlaw.com
Tracy Cole
Email: tcole@bakerlaw.com
M. Elizabeth Howe
Email: bhowe@bakerlaw.com
Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

*Attorneys for Irving H. Picard,*
*Trustee for the SIPA Liquidation of Bernard L.*
*Madoff Investment Securities LLC and the*
*Chapter 7 estate of Bernard L. Madoff*