# EXHIBIT C

# SETTLEMENT AGREEMENT
## (CAAG)

This SETTLEMENT AGREEMENT, dated as of  October 19, 2016 (together with the Exhibits attached hereto, this "Settlement Agreement"), is made by and among (a) the People of the State of California, by and through Attorney General Kamala D. Harris or her designated representative(s) (the "Attorney General"), (b) The Estate of Stanley Chais; Pamela Chais; Appleby Productions Ltd.; the now-defunct defined contribution plan formerly known as Appleby Productions Ltd. Defined Contribution Plan; the now-defunct money purchase plan formerly known as Appleby Productions Ltd. Money Purchase Plan; the now-defunct profit sharing plan formerly known as Appleby Productions Ltd. Profit Sharing Plan; Chais Investments, Ltd.; Chais 1991 Family Trust (now consisting of the Survivor's Trust under Chais 1991 Family Trust dated September 4, 1991 and the Marital Trust under Chais 1991 Family Trust dated September 4, 1991); and Chais Family Foundation (collectively, the "Stanley Chais Parties"); (c) Emily Chasalow; Mark Chais; William Chais; Michael Chasalow; Miri Chais, referred to in  the  Complaint in the below-defined Adversary Proceeding (the "Complaint") as Mirie Chais; Wrenn Chais; 1994 Trust for the Children of Stanley and Pamela Chais; 1996 Trust for the Children of Stanley and Pamela Chais, referred to in the Complaint as The 1996 Trust for the Children of Pamela Chais And Stanley Chais; BLMIS Account 1C1286, sued in the Complaint as The 1999 Trust for the Children of Stanley and Pamela Chais; 1999 Trust for the Grandchildren of Stanley and Pamela Chais; Emily Chais 1983 Trust; Emily Chais Trust No. 1, Emily Chais Trust No. 2, and Emily Chais Trust No. 3, referred to collectively in the Complaint as The Emily Chais Trust; Emily Chais Issue Trust No. 1 and Emily Chais Issue Trust No. 2, referred to collectively in the Complaint as The Emily Chais Issue Trust; Mark Hugh Chais Trust No. 1, Mark Hugh Chais Trust No. 2, and Mark Hugh Chais Trust No. 3, referred to collectively in the Complaint as The Mark Hugh Chais Trust; Mark Hugh Chais Issue Trust No. 1 and Mark Hugh Chais Issue Trust No. 2, referred to collectively in the Complaint as The Mark Hugh Chais Issue Trust; Mark Hugh 1983 Trust; William Frederick Chais Trust No. 1, William Frederick Chais Trust No. 2, and William Frederick Chais Trust No. 3, referred to collectively in the Complaint as The William Frederick Chais Trust; William Frederick Chais Issue Trust No. 1 and William Frederick Chais Issue Trust No. 2, referred to collectively in the Complaint as The William F. Chais Issue Trust; William Frederick Chais 1983 Trust; The William and Wrenn Chais 1994 Family Trust; Ari Chais 1999 Trust; Ari Chais Transferee Trust No. 1, referred to in the Complaint as The Ari Chais Transferee #1 Trust; Benjamin Paul Chasalow 1999 Trust; Benjamin Paul Chasalow Transferee Trust No. 1, referred to in the Complaint as The Benjamin Paul Chasalow Transferee #1 Trust; Chloe Frances Chais 1994 Trust, referred to in the Complaint as The Chloe Francis Chais 1994 Trust; Chloe Frances Chais Transferee Trust No. 1, referred to in the Complaint as The Chloe Francis Chais Transferee #1 Trust; Jonathan Wolf Chais 1996 Trust, referred to in the Complaint as The Jonathan Wolf Chais Trust; Jonathan Chais Transferee Trust No. 1, referred to in the Complaint as The Jonathan Chais Transferee #1 Trust; Justin Robert Chasalow 1999 Trust; Justin Robert Chasalow Transferee Trust No. 1, referred to in the Complaint as The Justin Robert Chasalow Transferee #1 Trust; Madeline Celia Chais 1992 Trust; Madeline Chais Transferee Trust No. 1, referred to in the Complaint as The Madeline Chais Transferee #1 Trust; Rachel Allison Chasalow 1999 Trust; Rachel Allison Chasalow Transferee Trust No. 1, referred to in the Complaint as The Rachel Allison Chasalow Transferee #1 Trust; Tali Chais 1997 Trust; Tali Chais Transferee Trust No. 1, referred to in the Complaint as The Tali Chais Transferee #1 Trust; Unicycle Trading Company; Unicycle Corp.,

individually and as the General Partner of Unicycle Trading Company; the now-defunct money purchase plan formerly known as Unicycle Corporation Money Purchase Plan; Onondaga, Inc., individually and as General Partner of Chais Investments Ltd.; the now-defunct money purchase plan formerly known as The Onondaga, Inc. Money Purchase Plan; the now-defunct defined benefit pension plan formerly known as The Onondaga, Inc. Defined Benefit Pension Plan; Chais Management, Inc., individually and as General Partner of Chais Management Ltd.; Chais Management Ltd.; and Chais Venture Holdings (collectively, the "Chais Related Parties" and together with the Stanley Chais Parties, the "Chais Parties") and, solely with respect to Sections 1, 2(a), 3(b) and (i), 5, 10-12, and 16-30 and otherwise subject to the express limitations more fully set forth in this Settlement Agreement, (d) Irving H. Picard, in his capacity as trustee (the "Trustee") under the Securities Investor Protection Act of 1970, 15 U.S.C. §§ 78aaa *et seq.*, as amended, for the liquidation of the business of Bernard L. Madoff Investment Securities LLC ("BLMIS") and the substantively consolidated Chapter 7 estate of Bernard L. Madoff ("Madoff") (each of the Attorney General and the Chais Parties a "Party" and collectively the "Parties" and the Trustee the "Limited Party").

RECITALS

A.    On December 11, 2008, Madoff was arrested by federal agents for criminal securities laws violations including securities fraud, investment adviser fraud, and mail and wire fraud.  At a plea hearing on March 12, 2009, in the case captioned *United States v. Madoff*, Case No. 09-CR-213(DC), Madoff pleaded guilty to an 11-count criminal information filed against him by the Office of the United States Attorney for the Southern District of New York and admitted that he "operated a Ponzi scheme through the investment advisory side of [BLMIS]" and engaged in fraud in the operation of BLMIS (the "Madoff Ponzi Scheme").

B.    Some or all of the Chais Parties were customers of BLMIS and maintained customer accounts with BLMIS.

C.    On December 15, 2008, the Trustee was appointed as the trustee for the liquidation of the business of BLMIS in a bankruptcy proceeding currently pending before the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), Case No. 08-01789 (SMB) (the "SIPA Proceeding"); the estate of BLMIS was substantively consolidated with the estate of Madoff (collectively, the "Estate") after an involuntary bankruptcy proceeding was also initiated against Madoff.  The Trustee thereafter commenced an adversary proceeding against the Chais Parties in the Bankruptcy Court under the caption *Picard v. Stanley Chais, et al.*, Adv. Pro. No. 09-01172 (SMB) (the "Adversary Proceeding").  In the Adversary Proceeding, the Trustee asserts the Chais Parties are liable to the Estate for certain withdrawals made by the Chais Parties from their customer accounts at BLMIS.

D.    On September 22, 2009, the Attorney General filed suit against Stanley Chais and Does 1 through 100, inclusive, in Los Angeles County Superior Court (the "California Court") alleging violations of California Corporations Code Section 25401, California Corporations Code Section 25235, California Business and Professions Code Section 17500 and California Business and Professions Code Section 17200, titled *The People of the State of California v. Stanley Chais, et al.*, Case No. BC422257 (the "CAAG Action").

E.      Following the filing of the Adversary Proceeding and the CAAG Action, on September 26, 2010, Stanley Chais passed away. The Estate of Stanley Chais was thereafter substituted as a defendant in the Adversary Proceeding and the CAAG Action.

F.      There are currently four private actions pending in the California Court against some or all of the Chais Parties seeking recovery of funds related to the Madoff Ponzi Scheme: *Bottlebrush Investments, LP v. The Lambeth Company, et al*., Case No. BC407967; *Leghorn Investments, Ltd. v. Brighton Investments, et al*., Case No. BC408661; *Heimoff v. Chais, et al., Case No. BC413821; and Hall v. Chais, et al*., Case No. BC413820 (collectively, the "California Private Actions").

G.      On January 4, 2012, the Trustee commenced in the Bankruptcy Court an adversary proceeding captioned *Picard v. Hall, et al.*, Adv. Pro. No. 12-01001 (SMB) (the "Injunction Adversary Proceeding") against plaintiffs in the CAAG Action and the California Private Actions, seeking to enjoin them from the prosecution of such actions.

H.      In the Injunction Adversary Proceeding, the Trustee asserts that the automatic stay pursuant to section 362 of the Bankruptcy Code, 11 U.S.C. § 101 *et seq.*, prevents the Attorney General, in part, from continuing to prosecute the CAAG Action. The Trustee further alleges that the assets which could be recovered through the CAAG Action are property of the Estate. The Attorney General disputes that section 362, or any other provision of the Bankruptcy Code, prevents the Attorney General from prosecuting the CAAG Action. The Attorney General asserts that regardless, the CAAG Action falls within the 362(b)(4) exception to the automatic stay and that the assets sought to be recovered by the CAAG Action are not property of the Estate. The Trustee disputes that assertion.

I.      In particular, based upon Stanley Chais' capacity as general partner of the California limited partnerships known as The Brighton Company, The Popham Company and The Lambeth Company (collectively, the "California Limited Partnerships"), the Trustee contends that all transfers from BLMIS to the California Limited Partnerships are avoidable and recoverable as property of the Estate and the assets of the Stanley Chais Parties are insufficient to satisfy the Trustee's claims for transfers of fictitious profit from BLMIS to the Stanley Chais Parties made within two years of the applicable filing date for the SIPA Proceeding. For this and other reasons, the Trustee contends that all assets of the Stanley Chais Parties are properly recoverable by the Trustee. The Attorney General disputes any preferential or priority right of the Trustee, superior to the right of the Attorney General, to recover the assets held by the Stanley Chais Parties.

J.      At the direction of the Bankruptcy Court, since August 2012, the Trustee, the Attorney General, the plaintiffs in the California Private Actions and the Chais Parties engaged in multiple mediation conferences and related mediation communications with the Hon. James L. Garrity, Jr., at that time retired from the United States Bankruptcy Court for the Southern District of New York, as mediator.

K.      Simultaneously with the execution of this Settlement Agreement, the Trustee and the Chais Parties plan to enter into a certain settlement agreement to settle the Adversary Proceeding (the "Trustee Settlement Agreement").

3

L.    Pursuant to the Trustee Settlement Agreement, the Stanley Chais Parties are paying and turning over to the Trustee substantially all of their assets.

M.    Through the mediation process, the Trustee, the Attorney General and the Chais Parties negotiated terms by which, notwithstanding the aforementioned payment and turnover of assets by the Stanley Chais Parties to the Trustee, funding would be made available to provide payments in settlement of the CAAG Action.

N.    The mediation resulted in the resolution of the CAAG Action by, among other things, creating a fund for compensating the investors in the California Limited Partnerships, to be funded by contributions by certain of the Chais Parties in consideration for, *inter alia*, (i) as to the Stanley Chais Parties, the termination of the CAAG Action; (ii) the termination of all disputes between the Trustee and the Attorney General relating to the assets of the Chais Parties; and (iii) releases by Restitution Fund Claimants (hereinafter defined) in favor of the Chais Parties.

O.    The Chais Related Parties are not defendants in the CAAG Action and deny any liability to any investor in the California Limited Partnerships, but are contributing to the Restitution Fund (as defined herein) through cash payments and claim assignments to effectuate a global resolution of the Adversary Proceeding, the California Private Actions and the CAAG Action upon the terms and conditions set forth herein and in the separate settlement agreements relating to the Adversary Proceeding and the California Private Actions.

P.    The Attorney General takes no position with regard to any other settlements or agreements that may be entered into by any other Party or Parties to which the Attorney General is not a part.

Q.    The Attorney General takes no position with regard to Section 5 of this Settlement Agreement, which relates only to the rights and obligations of the Trustee and the Chais Parties.

R.    The Trustee's participation in and obligations under this Settlement Agreement are expressly limited to the provisions set forth in Sections 1, 2(a), 3(b) and (i), 5, 10-12, and 16-30 herein.

S.    The Parties wish to settle their disputes about the matters described above with respect to the CAAG Action without the expense, delay and uncertainty of continued litigation. The Chais Parties are entering into this Settlement Agreement to fully resolve these matters and without any concession of any wrongdoing, fault or liability on the part of any Chais Party.

T.    Simultaneously with the execution of this Settlement Agreement, the Chais Parties plan to enter into a separate settlement with the plaintiffs in the California Private Actions (the "California Plaintiffs"), upon terms set forth in a separate settlement agreement by and among Chais Parties, the California Plaintiffs, and, in limited part, the Trustee (the "CP Settlement Agreement").

**NOW, THEREFORE**, in consideration of the foregoing, of the mutual covenants, promises and undertakings set forth herein, and for other good and valuable consideration, the

4

mutual receipt and sufficiency of which are hereby acknowledged, the Parties and the Limited Party agree:

1.    <u>Effective Date</u>.

(a)    Upon the execution hereof, this Settlement Agreement shall be binding on the Parties and, where applicable, on the Trustee to the maximum extent permitted under applicable law; <u>provided, however</u>, that the Parties' and the Trustee's obligations hereunder to consummate the settlement provided for herein are subject to, and conditioned upon, the occurrence of each of the following: (i) the issuance of an Order (the "<u>TSA Approval Order</u>") by the Bankruptcy Court or an appellate court of competent jurisdiction ("<u>Other Court</u>") approving the Trustee Settlement Agreement pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure; (ii) the issuance of an order (the "<u>CAAG Approval Order</u>") by the Bankruptcy Court or Other Court pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure authorizing the Trustee to undertake the Trustee's limited obligations under this Settlement Agreement; (iii) the TSA Approval Order becoming Final; (iv) the CAAG Approval Order becoming Final and (v) the receipt by the Trustee, at closing under the Trustee Settlement Agreement, of all funds payable by the Chais Parties to the Trustee in accordance with the provisions of the Trustee Settlement Agreement and the assignment to the Trustee of the Customer Claims (as defined in Section 5 of the Trustee Settlement Agreement) (the "<u>TSA Closing</u>").  The closing under this Settlement Agreement shall occur simultaneously with the TSA Closing within five (5) Business Days after the TSA Approval Order becomes final and unappealable (the "<u>CAAG Closing</u>").  For purposes hereof, an order or judgment of the Bankruptcy Court, any Other Court or any other adjudicative body shall be deemed "<u>Final</u>" when any such order has not been stayed, and as to which the time to appeal or to move for reargument, certiorari or rehearing has expired and no appeal, or motion for reargument or rehearing is then pending.

2.    <u>Monetary Payment to Attorney General</u>.

(a)    At the CAAG Closing (which shall occur simultaneously with the TSA Closing), the Attorney General shall receive Fifteen Million Dollars ($15,000,000) (the "<u>Restitution Fund</u>"), funded as follows:  (i) with the consent of the Trustee as set forth in Sections 2(d) and 14(a) of the Trustee Settlement Agreement, Twelve Million Five Hundred Thousand Dollars ($12,500,000) shall be funded by the Stanley Chais Parties from the cash assets in the SCD Controlled Accounts (as defined in the Trustee Settlement Agreement), and (ii) Two Million Five Hundred Thousand Dollars ($2,500,000) shall be funded by the Chais Related Parties.  The Trustee shall take all necessary steps to enable the disbursement of funds consistent with this Section 2(a)(i) hereof, which disbursement shall be made simultaneously with the TSA Closing.  The date on which the Attorney General receives such payments is herein referred to as the "<u>Funding Date</u>".

(b)    Disbursements from the Restitution Fund shall be made by the Attorney General in accordance with the terms of this Settlement Agreement and solely for the following purposes: (i) to pay the costs of administration of the Restitution Fund; (ii) to make settlement payments on account of Eligible Restitution Fund Claims (hereinafter defined); and (iii) to make settlement payments to the Attorney General on account of investigative fees and costs asserted by the Attorney General in the CAAG Action.

5

(c)    In the event that any sums are to be paid to the Restitution Fund as a result of any disposition of any or all of the California Private Actions (whether by reason of any settlement agreement providing for the settlement of such California Private Actions or otherwise), the Attorney General hereby agrees to accept such sums in the Restitution Fund and to administer and distribute such sums as a part of the Restitution Fund pursuant to the provisions of this Settlement Agreement.

3.    Administration of Restitution Fund Claims.

(a)    The Restitution Fund shall be administered by a third party administrator (the "Restitution Administrator") who shall be selected and retained by the Attorney General and who shall administer restitution according to this Settlement Agreement.  The terms and conditions governing the administration of the Restitution Fund by the Restitution Administrator shall be in accordance with a Memorandum of Understanding between the Restitution Administrator and the Attorney General (the "Memorandum of Understanding") and shall be subject to the terms of this Agreement.  The payment for services rendered by the Restitution Administrator shall be paid entirely and solely from the Restitution Fund and in accordance with the Memorandum of Understanding, provided that any such payments shall be reasonable and consistent with the payments for comparable work for comparable funds.

(b)    In connection with the administration of restitution under this Settlement Agreement, the Restitution Administrator shall not be liable to the Parties or the Trustee, or any party asserting a claim on behalf of any of the Parties or the Trustee, except for direct damages that are a direct result of the Restitution Administrator's gross negligence, bad faith, self-dealing or intentional misconduct.  The Restitution Administrator's aggregate liability, whether in tort, contract, or otherwise, is limited to the total amount of fees paid to the Restitution Administrator for services provided under this Settlement Agreement.

(c)    The Restitution Administrator shall notify potential Eligible Restitution Fund Claimants regarding the establishment of the Restitution Fund, the procedures for submitting a Restitution Fund Claim (hereinafter defined), the Restitution Fund Bar Date (hereinafter defined), the requirements and the criteria for determining who qualifies as a Net Loss Claimant and a Nominal Loss Claimant (as such terms are hereinafter defined), which notification shall include a good faith estimate of a range of potential recoveries by potential Net Loss Claimants and potential Nominal Loss Claimants from the Restitution Fund and disclosure that actual recoveries may be less than the lowest amount included in such good faith estimate.  Such notification shall also include notice that if any amount from the Restitution Fund is paid to any Restitution Fund Claimant (hereinafter defined) or, upon such Restitution Fund Claimant's instructions, to any person or entity acting on behalf or in the interest of such Restitution Fund Claimant, then such Restitution Fund Claimant shall be deemed to have granted the Release set forth in Exhibit A hereto, whether or not he, she or it has actually signed such a Release.

(d)    Subject to, and consistent with, the conditions and provisions set forth in this Agreement, the Attorney General shall direct the Restitution Administrator: (i) to determine the procedures to provide notice to potential Eligible Restitution Fund Claimants; (ii) to determine the specific format of, and procedure for submission of, the claim document(s) necessary to effectuate this Agreement (including any supporting documentation required by the

Attorney General) to be submitted by persons or entities making claims for payment from the Restitution Fund (those persons or entities who make such a submission being herein referred to as "Restitution Fund Claimants" and such submissions being herein referred to as "Restitution Fund Claims"); (iii) to manage the submission and review of all such claim document(s) necessary to effectuate this Settlement Agreement; (iv) to determine, in accordance with the requirements and the criteria set forth in this Agreement, who qualifies as an Eligible Restitution Fund Claimant, a Net Loss Claimant and a Nominal Loss Claimant, as well as calculating Net Losses incurred by Net Loss Claimants and Nominal Losses incurred by Nominal Loss Claimants; and (v) to make payments from the Restitution Fund to Net Loss Claimants and Nominal Loss Claimants in accordance with the provisions of Section 4 hereof.

(e)     The Attorney General shall establish a bar date with respect to the submission of Restitution Fund Claims, which date (the "Restitution Claim Bar Date") shall not be earlier than 180 days after the CAAG Closing.

(f)     The Restitution Administrator shall provide quarterly reports to the Attorney General, counsel to the Stanley Chais Parties and counsel to the Chais Related Parties regarding the submission of Restitution Fund Claims, allowance or disallowance thereof in accordance with the procedures set forth in this Settlement Agreement, and payments from the Restitution Fund.  Commencing on 60 days after the CAAG Closing, and thereafter on a quarterly basis, the Restitution Administrator shall also provide the Attorney General, counsel to the Stanley Chais Parties and counsel to the Chais Related Parties copies of each executed Release described in Section 7 of this Settlement Agreement.

(g)     As used herein:  "Eligible Restitution Fund Claimant" means a Restitution Fund Claimant who (i) was an investor in any entity that, directly or indirectly (but without allowing any duplicative recovery in relation to any tier of investors), held limited partnership interests in one or more of the California Limited Partnerships; (ii) submits its, his or her Restitution Fund Claim to the Restitution Administrator on or before the Restitution Claim Bar Date in accordance with the noticed procedures set forth in this Settlement Agreement; and (iii) submits its, his or her Release (hereinafter defined) to the Restitution Administrator on or before the Restitution Claim Bar Date, even though certain provisions of such Release will not be effective until such Restitution Fund Claimant receives payment from the Restitution Fund; excluded from the definition of "Eligible Restitution Fund Claimant" are the Chais Parties.  "Net Loss Claimant" means an Eligible Restitution Fund Claimant who incurred a Net Loss in relation to his, her or its investment(s) in such California Limited Partnerships as calculated by the Restitution Administrator in accordance with this Settlement Agreement; "Nominal Loss Claimant" means an Eligible Restitution Fund Claimant who is not a Net Loss Claimant but who realized a Nominal Loss; "Net Loss" means, with respect to a Restitution Fund Claimant, the amount by which the aggregate of all investments made by such Restitution Fund Claimant to the California Limited Partnerships exceeds the aggregate amount of distributions received by such Restitution Fund Claimant on account thereof as calculated by the Restitution Administrator in accordance with this Settlement Agreement; and "Nominal Loss" means, with respect to a Restitution Fund Claimant, the sum of such Restitution Fund Claimant's interests in the California Limited Partnerships' account balances with BLMIS as of December 11, 2008.

(h)     The Chais Parties' agreement to allow disbursements from the Restitution Fund to Nominal Loss Claimants is not, and shall not be construed as, a concession by any Chais Party that a Nominal Loss constitutes an actual loss.

(i)     In connection with the administration of the Restitution Fund, in response to reasonable requests by the Attorney General or the Restitution Administrator for information or documents concerning investments in the California Limited Partnerships, the Trustee shall not unreasonably refuse to provide such information or documents consistent with the provisions of the Litigation Protective Order  in the SIPA Proceeding.  *See* Litigation Protective Order, *In re Bernard L. Madoff Inv. Sec. LLC*, Adv. Pro. No. 10-01789 (BRL) (Bankr. S.D.N.Y.) entered June 6, 2011) [ECF No. 4137].  The Trustee shall have no liability arising from the production of documents or information to the Attorney General or the Restitution Administrator pursuant to the terms of this section.

4.    Payment of Restitution Fund Claims.

The funds in the Restitution Fund shall be distributed in accordance with the following descending order of priority (to the extent the Restitution Fund is sufficient to provide for such distribution):

(i)     first, reasonable costs of administration of the Restitution Fund shall be paid to the Restitution Administrator in an amount not to exceed Seven Hundred Fifty Thousand Dollars ($750,000);

(ii)     next, payments to Net Loss Claimants on account of Net Losses incurred by them, which shall be made on a *pro rata* basis in relation to the aggregate amount of Net Losses incurred by all Net Loss Claimants, as calculated by the Restitution Administrator in accordance with the provisions of Section 3, provided that the aggregate amount of payments made pursuant to this clause (ii) shall be equal to the lesser of (x) the aggregate amount of Net Losses incurred by Net Loss Claimants and (y) the sum of Eleven Million Dollars ($11,000,000) plus any amount paid to the Restitution Fund pursuant to the terms of the CP Settlement Agreement;

(iii)     next, after satisfaction of those Net Losses incurred by Net Loss Claimants that are to be satisfied pursuant to the foregoing clause (4 (ii)), payments shall be paid to Nominal Loss Claimants on account of Nominal Losses realized by them, which shall be made on a *pro rata* basis in relation to the aggregate amount of Nominal Losses incurred by all Nominal Loss Claimants, as calculated by the Restitution Administrator in accordance with the provisions of Section 3, provided that the aggregate amount of payments made pursuant to this clause (4 (iii)) shall be equal to the lesser of (x) the aggregate amount of Nominal Losses incurred by Nominal Loss Claimants and (y) Three Million Two Hundred Fifty Thousand Dollars ($3,250,000) plus any amount paid to the Restitution Fund pursuant to the terms of the CP Settlement Agreement that is not paid to Net Loss Claimants pursuant to the preceding section 4(ii) of this Settlement Agreement; further, the Restitution Administrator shall have reasonable discretion to distribute in the interest of justice up to One Hundred Thousand Dollars ($100,000), in the aggregate, to any Eligible Restitution Fund Claimants, provided that any

unused portion of such funds shall be distributed to Nominal Loss Claimants pursuant to this clause 4(iii); and

(iv)    next, payment shall be made out of the remaining amount in the Restitution Fund, if any, to the Attorney General on account of investigative fees and costs asserted by the Attorney General in the CAAG Action.

5.    Assignment of Customer Claims to Trustee.  At the TSA Closing, the Chais Related Parties shall assign all rights and title to Customer Claims identified in Section 5 of the Trustee Settlement Agreement to the Trustee.  The Chais Parties agree and acknowledge that the assignment of such Customer Claims in conjunction with the other consideration provided for herein by the Chais Related Parties, shall satisfy any and all financial debts, claims and obligations that any of the Chais Related Parties might have or might have had, to any of the Stanley Chais Parties.

6.    [Intentionally Omitted].

7.    Releases and Stay of Actions by Restitution Fund Claimants.  As a condition to a Restitution Fund Claim being eligible for consideration for payment from the Restitution Fund, and as a condition to any payment on account of a Restitution Fund Claim, a Restitution Fund Claimant shall have executed and delivered to the Restitution Administrator, on or before the Restitution Claim Bar Date, a release in the form annexed hereto as Exhibit A (each a "Release").  No Restitution Fund Claim shall be eligible for consideration and no payment shall be made from the Restitution Fund to any Restitution Fund Claimant unless the Restitution Administrator shall have received both a signed Release from such Restitution Fund Claimant and the Restitution Fund Claimant's Restitution Fund Claim application form on or before the Restitution Claim Bar Date.  The foregoing notwithstanding, the notice and application procedures distributed by the Restitution Administrator to the Restitution Fund Claimants shall provide that if any amount from the Restitution Fund is paid to any Restitution Fund Claimant or, upon such Restitution Fund Claimant's instructions, to any person or entity acting on behalf or in the interest of such Restitution Fund Claimant, then such Restitution Fund Claimant shall be deemed to have granted the Release set forth in Exhibit A hereto, whether or not he, she or it has actually signed such a Release.  The notice and application procedures distributed by the Restitution Administrator to the Restitution Fund Claimants shall also make clear that the Restitution Fund Claimant must execute the Release and that the claim document(s) themselves, as submitted by the Restitution Fund Claimant, must contain an acknowledgement of same by such Restitution Fund Claimant.  Upon the submission of a Restitution Fund Claim, each Restitution Fund Claimant shall agree to refrain from engaging in any Restricted RFC Action (as defined in the Release) following the submission of the Restitution Fund Claim by such Restitution Fund Claimant, unless and until such time, if ever, that such Restitution Fund Claimant receives delivery of written notice from the Restitution Administrator to such Restitution Fund Claimant stating that such Restitution Fund Claimant is not eligible to receive a payment from the Restitution Fund, provided that such written notice is not withdrawn or overturned and is not followed by any payment from the Restitution Fund to or for the benefit of such Restitution Fund Claimant.  The foregoing agreement shall be set forth in the Restitution Fund Claim application form together with an acknowledgement that such agreement constitutes

a term of the Restitution Fund Claim that shall be enforceable by each Chais Party and that each Chais Party shall have the right to injunctive relief to enforce same.

   8.     **Release by the Attorney General.**

      (a)     <u>Release by the Attorney General</u>.  Simultaneously with the receipt by the Attorney General of the full payments payable to the Attorney General pursuant to Section 2(a) hereof, and without any further writing or other action of any kind or nature, in consideration of the covenants and agreements in this Settlement Agreement and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Attorney General hereby fully, finally and forever, unconditionally and irrevocably releases, acquits and discharges each "Chais Releasee" (as defined below) from any and all claims, suits, demands, damages, restitution, penalties, fines, actions and other causes of action of whatever kind, whether at law or in equity, whether known or unknown, matured, contingent or inchoate, now existing or arising in the future, that the Attorney General has brought or could have brought against any one or more of the Chais Releasees in the CAAG Action that arise out of or in connection with, or relate to, the California Limited Partnerships, BLMIS, the Madoff Ponzi Scheme, or Stanley Chais, except for any and all claims and rights (and the enforcement thereof) of the Attorney General, and any obligation of the Chais Parties, provided for in this Settlement Agreement (the "<u>CAAG Released Claims</u>").  The term "<u>Chais Releasee</u>" shall mean each Chais Party and each Affiliate thereof.  The term "<u>Affiliate</u>" shall mean, with respect to any person or entity:  (i) its respective predecessors, past, present, and future direct and indirect parents, owners, subsidiaries, affiliated or other related persons or entities of any kind (including but not limited to corporations, partnerships, trusts, and individuals), including the successors and assigns of any of the foregoing; (ii) all past, present and future employees, officers, managers, directors, agents, insurers, members, beneficiaries, trustees, attorneys, accountants, and representatives of any of the foregoing, in their official and individual capacities; and (iii) insofar as it has been or could be alleged that he or she (x) was a transferee of assets, directly or indirectly, from Stanley Chais or any of the Chais Parties, or (y) was involved in any activity which is the subject of the CAAG Released Claims, all children or grandchildren of any Chais Party or any of the other foregoing persons that is an individual.  Each Chais Releasee that is not a party to this Settlement Agreement is a third party beneficiary of this Settlement Agreement and has the full right to enforce the release provided in this Section 8 to such Chais Releasee by the Attorney General as fully as if he, she or it was a party to this Settlement Agreement.

   9.     **Release by the Chais Parties.**

      (a)     Simultaneously with the receipt by the Attorney General of the payments payable to the Attorney General pursuant to Section 2(a) hereof, and without any further writing or other action of any kind or nature, in consideration of the covenants and agreements in this Settlement Agreement and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged:

         (i)     Each Chais Party hereby, fully, finally and forever, unconditionally and irrevocably, releases, acquits and discharges the Attorney General from any and all claims, suits, demands, damages, restitution, penalties, fines, actions and other causes of action of whatever kind, whether at law or in equity, whether known or unknown, matured, contingent or

inchoate, now existing or arising in the future, that such Chais Party has or may have and that in any way arise out of or in connection with or relate to the California Limited Partnerships, BLMIS, the Madoff Ponzi Scheme and/or any other matters involving Stanley Chais (including, without limitation, the claims asserted or that could have been asserted against the Attorney General in the CAAG Action), except for (x) any and all claims and rights (and the enforcement thereof) of the Chais Parties, and any obligations of the Attorney General, provided for in this Settlement Agreement and (y) any and all claims and rights (and the enforcement thereof) of the Chais Parties against the Attorney General for defamation arising or occurring after the date of execution hereof (after giving effect to such exceptions, the "Chais Parties Released Claims").

(ii)    Each Stanley Chais Party hereby, fully, finally and forever, unconditionally and irrevocably, releases, acquits and discharges each Chais Related Party from any and all claims, suits, demands, damages, restitution, penalties, fines, actions and other causes of action of whatever kind, whether at law or in equity, whether known or unknown, matured, contingent or inchoate, now existing or arising in the future, that such Stanley Chais Party has or may have and that in any way arise out of or in connection with or relate to the California Limited Partnerships, BLMIS, the Madoff Ponzi Scheme and/or any other matters involving Stanley Chais, except for any and all claims and rights (and the enforcement thereof) of the Stanley Chais Parties, and any obligations of the Chais Related Parties, provided for in this Settlement Agreement (after giving effect to such exceptions, the "Stanley Chais Parties Released Claims").

(b)    Notwithstanding anything to the contrary herein, the Chais Parties Released Claims do not include any and all actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, damages, judgments, claims and any other right to obtain any type of monetary damages (including punitive damages), expenses, attorneys' and other fees, rescission, restitution or any other remedies of whatever kind at law or in equity, in contract, in tort, arising under any source whatsoever, including claims in equity or under any federal, state, common, or foreign statute, regulation, rule or common law, whether in a civil, administrative, arbitral, or other judicial or non-judicial proceeding, asserted or unasserted, known or unknown, matured, contingent, threatened, or inchoate, whether or not concealed or hidden, now existing or arising in the future that any of the Chais Parties had, have or may assert in the future against (i) the Restitution Fund Claimants; (ii) the California Limited Partnerships; and/or (iii) any direct or indirect investor in any of the California Limited Partnerships (collectively, the "Chais Parties Preserved Claims"). All of the Chais Parties' Preserved Claims are expressly reserved and preserved and shall not be affected by this Agreement.

10.    Releases between the Trustee and the Attorney General:

(a)    Release by the Attorney General of the Trustee and SIPC.  Simultaneously with the receipt by the Attorney General of the payments payable to the Attorney General pursuant to Section 2(a) hereof, and without any further writing or other action of any kind or nature, in consideration of the covenants and agreements in this Settlement Agreement and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Attorney General releases and discharges the Securities Investor Protection Corporation ("SIPC") and the Trustee, personally, and in his capacity as Trustee, and his

beneficiaries, agents, and representatives, solely in their capacity as such, BLMIS and the estates of BLMIS and Madoff, from any and all claims, suits, demands, damages, restitution, penalties, fines, actions, and other causes of action that the Attorney General could have brought that any way arise out of or in connection with, or relate to the offer and sale of securities by Stanley Chais, except for any and all claims and rights (and the enforcement thereof) of the Attorney General, including criminal law and tax claims, and any obligation of the Trustee, provided for in this Settlement Agreement (after giving effect to such exceptions, the "CAAG Released Claims Against Trustee").

(b)    Release by the Trustee of the Attorney General.  Simultaneously with the receipt by the Attorney General of the payments payable to the Attorney General pursuant to Section 2(a) hereof, without any further writing or other action of any kind or nature, in consideration of the covenants and agreements in this Settlement Agreement and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Trustee, on behalf of himself, BLMIS and the estates of BLMIS and Madoff, releases and discharges the Attorney General and her beneficiaries, agents, and representatives, solely in their capacity as such, from any and all actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, damages, judgments, and claims whatsoever, asserted or unasserted, known or unknown, now existing or arising in the future (collectively, the "Trustee Released Claims"), except for any and all claims and rights (and the enforcement thereof) of the Trustee and obligations of the Attorney General arising under this Settlement Agreement or the related escrow agreements.  For the avoidance of doubt, the Trustee is authorized to and does release any claims that could have been brought by SIPC in connection with BLMIS and its liquidation to the extent such claims have been subrogated to the Trustee.  The Trustee and the Attorney General expressly agree this release shall not affect or encompass (x) any claims by the Trustee against any party other than the Attorney General or (y) any rights to enforce the LP Judgment (as defined in the Trustee Settlement Agreement).

11.    The term "Released Claims" shall mean, collectively, the CAAG Released Claims, the CAAG Released Claims Against Trustee, the Chais Parties Released Claims, the Stanley Chais Parties Released Claims, and the Trustee Released Claims.

12.    Unknown Claims.  Unknown Claims shall mean any Released Claim, as defined herein, that the Attorney General, the Trustee, or the Chais Parties do not know or suspect to exist in its, his or her favor at the time of giving its, his or her release in this Settlement Agreement that if known by it, him or her, might have affected its, his or her settlement and release in this Settlement Agreement.  With respect to any and all Released Claims in Sections 8, 9 and 10 of this Settlement Agreement, the Attorney General, the Trustee and the Chais Parties expressly waive, or are deemed to have waived, the provisions, rights and benefits of California Civil Code section 1542 (to the extent it applies herein), which provides:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

Solely with respect to their respective Released Claims, the Attorney General, the Trustee and the Chais Parties expressly waive, and shall be deemed to have waived, any and all provisions, rights and benefits conferred by any law of any state or territory of the United States, or principle of common law or foreign law, that is similar, comparable or equivalent in effect to California Civil Code section 1542.  The Attorney General, the Trustee and the Chais Parties may hereafter discover facts in addition to or different from those that any of them now knows or believes to be true with respect to the subject matter of the Released Claims, but the Attorney General, the Trustee and the Chais Parties shall expressly have and shall be deemed to have fully, finally and forever settled and released any and all Released Claims, known or unknown, suspected or unsuspected, contingent or noncontingent, whether or not concealed or hidden, that now exist or heretofore have existed, upon any theory of law or equity now existing or coming into existence in the future, including conduct that is negligent, reckless, intentional, with or without malice, or a breach of any duty, law or rule, without regard to the subsequent discovery or existence or such different or additional facts.  The Attorney General, the Trustee and the Chais Parties acknowledge and shall be deemed to have acknowledged that the foregoing waiver was separately bargained for and a key element of the settlement of which this release is a part.  The Attorney General, the Trustee and the Chais Parties agree not to directly or indirectly assert any claim, or commence, continue, institute or cause to be commenced any claim or proceeding, based upon any matter purported to be released hereby.

13.    Cooperation; Further Assurances.  The Parties shall provide cooperation, and execute any document or instrument, reasonably requested by any of them after the date of this Settlement Agreement, to effectuate the intent of this Settlement Agreement.  Without limiting the foregoing, the Attorney General will support the issuance of the CAAG Approval Order and will not take any action intended to prejudice the Stanley Chais Parties and Chais Related Parties in enforcing the release provisions set forth in the Releases delivered (and/or deemed granted) pursuant to Section 7 of this Settlement Agreement.

14.    Basis for Injunctions.  This Settlement Agreement and any order approving same may be pleaded as a full and complete defense against, and may be used as an independent basis for an injunction against, any claim or proceeding instituted or maintained against any person or entity released hereunder to the extent such claim or proceeding conflicts with any release provided in this Settlement Agreement.

15.    Notice of Settlement; Dismissal.  Upon execution of this Settlement Agreement, the Parties shall provide notice to the California Court that there exists a settlement in principle, the terms of which are intended to resolve the CAAG Action, subject to Bankruptcy Court approval of a motion brought by the Trustee under Bankruptcy Rule 9019.  Promptly upon receipt by the Attorney General of the payment payable to the Attorney General pursuant to Section 2(a) hereof, the Attorney General shall file with the California Court a dismissal with prejudice of the CAAG Action.  Except as set forth in this Settlement Agreement, parties to that Action shall bear their own fees and costs.

16.    Null and Void; Failure to Obtain a Final Non-Appealable Order.  If for any reason the Bankruptcy Court or any Other Court rejects the Trustee Settlement Agreement pursuant to a final and non-appealable order, or if for any reason the Bankruptcy Court, any Other Court or any other adjudicative body rejects this Settlement Agreement pursuant to an order that becomes

13

Final (the date on which either such order becomes Final being herein referred to as the "Rejection Date"), then this Settlement Agreement shall automatically be null and void as of the Rejection Date. In addition, if the Attorney General does not receive full payment at the CAAG Closing in accordance with the terms of Section 2(a) hereof, then the Attorney General may unilaterally declare this Settlement Agreement null and void by providing a written notice to that effect to the other parties hereto so long as the Attorney General has first provided the other parties hereto with written notice of the failure to receive payment after such payment is due and given such parties at least thirty (30) Business Days to cure and further provided that the Attorney General returns any and all payments that it has received pursuant to this Settlement Agreement.

17.    Business Days. For purposes of this Settlement Agreement, the term "Business Days" shall mean any day other than Saturday, Sunday, or a day that is a legal holiday in Sacramento, California.

18.    Confidentiality Obligations. The Parties' and the Trustee's confidentiality obligations under any existing agreements between and among the Parties and/or the Trustee shall remain in full force and effect.

19.    No Admission. The Chais Parties and the California Limited Partnerships do not admit any liability and further expressly deny any participation or complicity of Stanley Chais or any Chais Party or California Limited Partnership in, or knowledge of Stanley Chais or any Chais Party or California Limited Partnership of, the Madoff Ponzi Scheme.

20.    Entire Agreement. This Settlement Agreement, together with the Trustee Settlement Agreement, constitute the entire agreement and understanding between and among the Parties and the Trustee and supersedes all prior agreements, representations and understandings concerning the subject matter hereof (other than the Trustee Settlement Agreement).

21.    Amendments, Waiver. This Settlement Agreement may not be waived, amended or modified in any way except in a writing signed by all the Parties and the Limited Party. No waiver of any provision of this Agreement shall be deemed to constitute a waiver of any other provision hereof, whether or not similar, nor shall such waiver constitute a continuing waiver.

22.    Assignability. No Party or Limited Party hereto may assign their rights under this Settlement Agreement to a third party without the prior written consent of each of the other Parties and Limited Parties hereto, provided, however that the Trustee may assign his rights and delegate his duties under this Settlement Agreement to any successor Trustee appointed by the Bankruptcy Court, including SIPC.

23.    Successors Bound. This Settlement Agreement shall be binding upon and inure to the benefit of each of the Parties and Limited Party and their successors and permitted assigns.

24.    Applicable Law. This Settlement Agreement shall be construed and enforced in accordance with the laws of the State of California, without regard to the principle of conflict of laws. Each Party and the Limited Party hereby waives on behalf of itself and its successors and

assigns any and all rights to argue that the choice of California law provisions is or has become unreasonable in any legal proceeding.

25.    <u>Exclusive Jurisdiction</u>.  Except to the extent the Bankruptcy Court cannot or declines to retain jurisdiction, the Parties and the Trustee agree and shall request that all orders entered in connection with this Settlement Agreement provide that the Bankruptcy Court shall retain and have non-exclusive jurisdiction over any action to enforce this Settlement Agreement, or any provision thereof, and the Parties and the Trustee hereby consent to and submit to the jurisdiction of the Bankruptcy Court for any such action.  The Parties and the Trustee agree that, in the event the Bankruptcy Court cannot or declines to retain or exercise jurisdiction, no Party or Limited Party shall bring, institute, prosecute or maintain any action to enforce, modify, terminate, void, or interpret this Settlement Agreement, or any provision thereof, in any court other than the California Court.  In any action commenced in another court by a third-party to enforce, modify, terminate, void or interpret this Settlement Agreement, the Parties and the Trustee agree to seek to stay such action and transfer the action first to the Bankruptcy Court; provided, however, in the event the Bankruptcy Court cannot or declines to retain or exercise jurisdiction, the Parties and the Trustee agree to seek transfer to the California Court.

26.    <u>Captions and Rules of Construction</u>.  The captions in this Settlement Agreement are inserted only as a matter of convenience and for reference and do not define, limit or describe the scope of this Settlement Agreement or the scope or content of any of its provisions.  Any reference in this Settlement Agreement to a paragraph or section is to a paragraph or section of this Settlement Agreement, unless otherwise noted.  The words "<u>hereby,</u>" "<u>herein,</u>" "<u>hereto,</u>" "<u>hereof,</u>" "<u>hereunder,</u>" and similar words refer to this Settlement Agreement in its entirety and not merely to the Section where any such words appear.  "<u>Includes,</u>" "<u>including</u>" and similar words are not limiting.  The Parties acknowledge that this Settlement Agreement was jointly drafted after negotiations by counsel and the Parties and the Trustee therefore agree that no provision of this Settlement Agreement may be construed against any Party or Limited Party as having been drafted by that Party or Limited Party.

27.    <u>Counterparts; Electronic Copy of Signatures</u>.  The individuals signing below represent that they have been authorized by the parties they represent to sign this Settlement Agreement.  This Settlement Agreement may be executed and delivered in any number of counterparts, each of which so executed and delivered shall be deemed to be an original and all of which shall constitute one and the same document.  The Parties and the Trustee may evidence their execution of this Settlement Agreement by delivery to the other Parties and Limited Party of scanned or faxed copies of their signatures, with the same effect as the delivery of an original signature.  The Parties and Limited Party stipulate that counterparts, facsimile, or duplicate originals of this Settlement Agreement or any portion thereof shall be admissible in any judicial proceeding to the same extent that the original would be admissible for all purposes including but not limited to meeting the requirements of California Code of Civil Procedure § 664.6.

28.    <u>Severability</u>.  In the event that any term or provision of this Agreement is found in a Final judgment or order of a court of competent jurisdiction to be invalid or unenforceable, the entire Agreement shall be invalid and unenforceable (except this Section 28), unless and to the extent that all Parties and the Limited Party agree otherwise in writing.

29.    Survival.  The provisions of this Settlement Agreement shall survive the consummation of the transactions contemplated hereby.

30.    Notices.  Any notices under this Settlement Agreement shall be in writing, shall be effective when received and may be delivered only by hand, or by overnight delivery service or by electronic transmission if such overnight delivery or electronic transmission is confirmed via email, to:

If to the Attorney General:
Alexandra Robert Gordon, Esq.
Michael Elisofon, Esq.
455 Golden Gate Ave., Suite 11000
San Francisco, CA 94102
F: (415) 703-1234
alexandra.robertgordon@doj.ca.gov
michael.elisofon@doj.ca.gov

If to the Trustee, c/o:
David J. Sheehan, Esq.
Tracy Cole, Esq.
45 Rockefeller Plaza, 14th Floor
New York, NY 10111
F:  (212) 589-4201
dsheehan@bakerlaw.com
tcole@bakerlaw.com

If to the Stanley Chais Parties, c/o:
Dennis F. Dunne, Esq.
Michael L. Hirschfeld, Esq.
Milbank, Tweed, Hadley & McCloy LLP
28 Liberty Street
New York, NY 10005
F:  (212) 530-5219
ddunne@milbank.com
mhirschfeld@milbank.com

If to the Chais Related Parties, c/o:
Andrew H. Sherman, Esq.
Boris M. Mankovetskiy, Esq.
Sills Cummis & Gross P.C.
One Riverfront Plaza
Newark, NJ 07102
F:  (973) 643-6500
asherman@sillscummis.com
bmankovetskiy@sillscummis.com

Steven J. Katzman, Esq.
Biernert, Miller & Katzman
903 Calle Amancer, Suite 350
San Clemente, CA 92673
F:  (949-369-3700
skatzman@bmkattorneys.com

[Signature pages follow]

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be executed as of the date first above written.

CALIFORNIA ATTORNEY GENERAL'S OFFICE
By: Alexandra Robert Gordon, Deputy Attorney General and counsel of record for Plaintiff in the CAAG Action

_(signature)_

THE ESTATE OF STANLEY CHAIS
By: Pamela Chais, Executrix

_(signature)_

PAMELA CHAIS

_(signature)_

APPLEBY PRODUCTIONS LTD.
By: Pamela Chais, President

---

APPLEBY PRODUCTIONS LTD.
DEFINED CONTRIBUTION PLAN
By: Michael L. Hirschfeld, Esq., counsel of
record in the CAAG Action

---

APPLEBY PRODUCTIONS LTD.
MONEY PURCHASE PLAN
By: Michael L. Hirschfeld, Esq., counsel of
record in the CAAG Action

---

APPLEBY PRODUCTIONS LTD. PROFIT
SHARING PLAN
By: Michael L. Hirschfeld, Esq., counsel of
record in the CAAG Action

---

CHAIS INVESTMENTS, LTD.
By: William Chais, President, Onondaga,
Inc., its General Partner

18

_____
THE ESTATE OF STANLEY CHAIS
By: Pamela Chais, Executrix


_____
PAMELA CHAIS


_____
APPLEBY PRODUCTIONS LTD.
By: Pamela Chais, President

_____
APPLEBY PRODUCTIONS LTD.
DEFINED CONTRIBUTION PLAN
By: Michael L. Hirschfeld, Esq., counsel of
record in the CAAG Action

_____
APPLEBY PRODUCTIONS LTD.
MONEY PURCHASE PLAN
By: Michael L. Hirschfeld, Esq., counsel of
record in the CAAG Action

_____
APPLEBY PRODUCTIONS LTD. PROFIT
SHARING PLAN
By: Michael L. Hirschfeld, Esq., counsel of
record in the CAAG Action


_____
CHAIS INVESTMENTS, LTD.
By: William Chais, President, Onondaga,
Inc., its General Partner


18

THE ESTATE OF STANLEY CHAIS
By: Pamela Chais, Executrix

PAMELA CHAIS

APPLEBY PRODUCTIONS LTD.
By: Pamela Chais, President

APPLEBY PRODUCTIONS LTD.
DEFINED CONTRIBUTION PLAN
By: Michael L. Hirschfeld, Esq., counsel of
record in the CAAG Action

APPLEBY PRODUCTIONS LTD.
MONEY PURCHASE PLAN
By: Michael L. Hirschfeld, Esq., counsel of
record in the CAAG Action

APPLEBY PRODUCTIONS LTD. PROFIT
SHARING PLAN
By: Michael L. Hirschfeld, Esq., counsel of
record in the CAAG Action

CHAIS INVESTMENTS, LTD.
By: William Chais, President, Onondaga,
Inc., its General Partner

18

_(signature)_

CHAIS 1991 FAMILY TRUST (NOW
CONSISTING OF THE SURVIVOR'S
TRUST UNDER CHAIS 1991 FAMILY
TRUST DATED SEPTEMBER 4, 1991
AND THE MARITAL TRUST UNDER
CHAIS 1991 FAMILY TRUST DATED
SEPTEMBER 4, 1991)
By: Pamela Chais, Trustee

_(signature)_

CHAIS FAMILY FOUNDATION
By: Pamela Chais, President

_(signature)_

EMILY CHASALOW

_____

MARK CHAIS

_____

WILLIAM CHAIS

_(signature)_

MICHAEL CHASALOW

_____

MIRI CHAIS

_____

WRENN CHAIS

_____

1994 TRUST FOR THE CHILDREN OF
STANLEY AND PAMELA CHAIS
By: William Chais, Trustee

19

CHAIS 1991 FAMILY TRUST (NOW
CONSISTING OF THE SURVIVOR'S
TRUST UNDER CHAIS 1991 FAMILY
TRUST DATED SEPTEMBER 4, 1991
AND THE MARITAL TRUST UNDER
CHAIS 1991 FAMILY TRUST DATED
SEPTEMBER 4, 1991)
By: Pamela Chais, Trustee


CHAIS FAMILY FOUNDATION
By: Pamela Chais, President


EMILY CHASALOW


MARK CHAIS


WILLIAM CHAIS


MICHAEL CHASALOW


MIRI CHAIS


WRENN CHAIS


1994 TRUST FOR THE CHILDREN OF
STANLEY AND PAMELA CHAIS
By: William Chais, Trustee

19

_____

CHAIS 1991 FAMILY TRUST (NOW
CONSISTING OF THE SURVIVOR'S
TRUST UNDER CHAIS 1991 FAMILY
TRUST DATED SEPTEMBER 4, 1991
AND THE MARITAL TRUST UNDER
CHAIS 1991 FAMILY TRUST DATED
SEPTEMBER 4, 1991)
By: Pamela Chais, Trustee


_____

CHAIS FAMILY FOUNDATION
By: Pamela Chais, President


_____

EMILY CHASALOW


_____

MARK CHAIS


_____

WILLIAM CHAIS


_____

MICHAEL CHASALOW


_____

MIRI CHAIS


_____

WRENN CHAIS


_____

1994 TRUST FOR THE CHILDREN OF
STANLEY AND PAMELA CHAIS
By: William Chais, Trustee


19

_____

1996 TRUST FOR THE CHILDREN OF
STANLEY AND PAMELA CHAIS
By: William Chais, Trustee


_____

BLMIS ACCOUNT 1C1286, SUED
HEREIN AS 1999 TRUST FOR THE
CHILDREN OF STANLEY AND
PAMELA CHAIS
By: Steven J. Katzman, Esq., counsel of
record in the CAAG Action

_____

1999 TRUST FOR THE
GRANDCHILDREN OF STANLEY AND
PAMELA CHAIS
By: William Chais, Trustee


_____

EMILY CHAIS 1983 TRUST
By: Emily Chasalow, Trustee


_____

EMILY CHAIS TRUST NO. 1
By: Emily Chasalow, Trustee


_____

EMILY CHAIS TRUST NO. 2
By: Emily Chasalow, Trustee


_____

EMILY CHAIS TRUST NO. 3
By: Emily Chasalow, Trustee


_____

EMILY CHAIS ISSUE TRUST NO. 1
By: Emily Chasalow, Trustee

20

1996 TRUST FOR THE CHILDREN OF
STANLEY AND PAMELA CHAIS
By: William Chais, Trustee

BLMIS ACCOUNT 1C1286, SUED
HEREIN AS 1999 TRUST FOR THE
CHILDREN OF STANLEY AND
PAMELA CHAIS
By: Steven J. Katzman, Esq., counsel of
record in the CAAG Action

1999 TRUST FOR THE
GRANDCHILDREN OF STANLEY AND
PAMELA CHAIS
By: William Chais, Trustee

EMILY CHAIS 1983 TRUST
By: Emily Chasalow, Trustee

EMILY CHAIS TRUST NO. 1
By: Emily Chasalow, Trustee

EMILY CHAIS TRUST NO. 2
By: Emily Chasalow, Trustee

EMILY CHAIS TRUST NO. 3
By: Emily Chasalow, Trustee

EMILY CHAIS ISSUE TRUST NO. 1
By: Emily Chasalow, Trustee

20

1996 TRUST FOR THE CHILDREN OF
STANLEY AND PAMELA CHAIS
By: William Chais, Trustee


BLMIS ACCOUNT 1C1286, SUED
HEREIN AS 1999 TRUST FOR THE
CHILDREN OF STANLEY AND
PAMELA CHAIS
By: Steven J. Katzman, Esq., counsel of
record in the CAAG Action


1999 TRUST FOR THE
GRANDCHILDREN OF STANLEY AND
PAMELA CHAIS
By: William Chais, Trustee


EMILY CHAIS 1983 TRUST
By: Emily Chasalow, Trustee


EMILY CHAIS TRUST NO. 1
By: Emily Chasalow, Trustee


EMILY CHAIS TRUST NO. 2
By: Emily Chasalow, Trustee


EMILY CHAIS TRUST NO. 3
By: Emily Chasalow, Trustee


EMILY CHAIS ISSUE TRUST NO. 1
By: Emily Chasalow, Trustee


20

_Emily Chasalow_ (signature)

EMILY CHAIS ISSUE TRUST NO. 2
By: Emily Chasalow, Trustee

MARK HUGH CHAIS TRUST NO. 1
By: Mark Chais, Trustee

MARK HUGH CHAIS TRUST NO. 2
By: Mark Chais, Trustee

MARK HUGH CHAIS TRUST NO. 3
By: Mark Chais, Trustee

MARK HUGH CHAIS ISSUE TRUST
NO. 1
By: Mark Chais, Trustee

MARK HUGH CHAIS ISSUE TRUST
NO. 2
By: Mark Chais, Trustee

MARK HUGH CHAIS 1983 TRUST
By: Mark Chais, Trustee

WILLIAM FREDERICK CHAIS TRUST
NO. 1
By: William Chais, Trustee

21

EMILY CHAIS ISSUE TRUST NO. 2
By: Emily Chasalow, Trustee

MARK HUGH CHAIS TRUST NO. 1
By: Mark Chais, Trustee

MARK HUGH CHAIS TRUST NO. 2
By: Mark Chais, Trustee

MARK HUGH CHAIS TRUST NO. 3
By: Mark Chais, Trustee

MARK HUGH CHAIS ISSUE TRUST
NO. 1
By: Mark Chais, Trustee

MARK HUGH CHAIS ISSUE TRUST
NO. 2
By: Mark Chais, Trustee

MARK HUGH CHAIS 1983 TRUST
By: Mark Chais, Trustee

WILLIAM FREDERICK CHAIS TRUST
NO. 1
By: William Chais, Trustee

_____
EMILY CHAIS ISSUE TRUST NO. 2
By: Emily Chasalow, Trustee


_____
MARK HUGH CHAIS TRUST NO. 1
By: Mark Chais, Trustee


_____
MARK HUGH CHAIS TRUST NO. 2
By: Mark Chais, Trustee


_____
MARK HUGH CHAIS TRUST NO. 3
By: Mark Chais, Trustee


_____
MARK HUGH CHAIS ISSUE TRUST
NO. 1
By: Mark Chais, Trustee


_____
MARK HUGH CHAIS ISSUE TRUST
NO. 2
By: Mark Chais, Trustee


_____
MARK HUGH CHAIS 1983 TRUST
By: Mark Chais, Trustee

_____
WILLIAM FREDERICK CHAIS TRUST
NO. 1
By: William Chais, Trustee

21

WILLIAM FREDERICK CHAIS TRUST
NO. 2
By: William Chais, Trustee

WILLIAM FREDERICK CHAIS TRUST
NO. 3
By: William Chais, Trustee

WILLIAM FREDERICK CHAIS ISSUE
TRUST NO. 1
By: William Chais, Trustee

WILLIAM FREDERICK CHAIS ISSUE
TRUST NO. 2
By: William Chais, Trustee

WILLIAM FREDERICK CHAIS 1983
TRUST
By: William Chais, Trustee

THE WILLIAM AND WRENN CHAIS
1994 FAMILY TRUST
By: William Chais, Trustee

ARI CHAIS 1999 TRUST
By: Mark Chais, Trustee

ARI CHAIS TRANSFEREE TRUST NO. 1
By: Mark Chais, Trustee

---

WILLIAM FREDERICK CHAIS TRUST
NO. 2
By: William Chais, Trustee

---

WILLIAM FREDERICK CHAIS TRUST
NO. 3
By: William Chais, Trustee

---

WILLIAM FREDERICK CHAIS ISSUE
TRUST NO. 1
By: William Chais, Trustee

---

WILLIAM FREDERICK CHAIS ISSUE
TRUST NO. 2
By: William Chais, Trustee

---

WILLIAM FREDERICK CHAIS 1983
TRUST
By: William Chais, Trustee

---

THE WILLIAM AND WRENN CHAIS
1994 FAMILY TRUST
By: William Chais, Trustee

---

ARI CHAIS 1999 TRUST
By: Mark Chais, Trustee

---

ARI CHAIS TRANSFEREE TRUST NO. 1
By: Mark Chais, Trustee

22

_____

BENJAMIN PAUL CHASALOW 1999
TRUST
By: Emily Chasalow, Trustee

_____

BENJAMIN PAUL CHASALOW
TRANSFEREE TRUST NO. 1
By: Emily Chasalow, Trustee

_____

CHLOE FRANCES CHAIS 1994 TRUST
By: William Chais, Trustee

_____

CHLOE FRANCES CHAIS TRANSFEREE
TRUST NO. 1
By: William Chais, Trustee

_____

JONATHAN WOLF CHAIS 1996 TRUST
By: William Chais, Trustee

_____

JONATHAN CHAIS TRANSFEREE
TRUST NO. 1
By: William Chais, Trustee

_____

JUSTIN ROBERT CHASALOW 1999
TRUST
By: Emily Chasalow, Trustee

_____

JUSTIN ROBERT CHASALOW
TRANSFEREE TRUST NO. 1
By: Emily Chasalow, Trustee

23

BENJAMIN PAUL CHASALOW 1999
TRUST
By: Emily Chasalow, Trustee

BENJAMIN PAUL CHASALOW
TRANSFEREE TRUST NO. 1
By: Emily Chasalow, Trustee

CHLOE FRANCES CHAIS 1994 TRUST
By: William Chais, Trustee

CHLOE FRANCES CHAIS TRANSFEREE
TRUST NO. 1
By: William Chais, Trustee

JONATHAN WOLF CHAIS 1996 TRUST
By: William Chais, Trustee

JONATHAN CHAIS TRANSFEREE
TRUST NO. 1
By: William Chais, Trustee

JUSTIN ROBERT CHASALOW 1999
TRUST
By: Emily Chasalow, Trustee

JUSTIN ROBERT CHASALOW
TRANSFEREE TRUST NO. 1
By: Emily Chasalow, Trustee

23

_____
MADELINE CELIA CHAIS 1992 TRUST
By: William Chais, Trustee

_____
MADELINE CHAIS TRANSFEREE
TRUST NO. 1
By: William Chais, Trustee

_____
RACHEL ALLISON CHASALOW 1999
TRUST
By: Emily Chasalow, Trustee

_____
RACHEL ALLISON CHASALOW
TRANSFEREE TRUST NO. 1
By: Emily Chasalow, Trustee

_____
TALI CHAIS 1997 TRUST
By: Mark Chais, Trustee

_____
TALI CHAIS TRANSFEREE TRUST
NO. 1
By: Mark Chais, Trustee

_____
UNICYCLE TRADING COMPANY
By: Mark Chais, President of Unicycle
Corp., its General Partner

_____
UNICYCLE CORP.
By: Mark Chais, President

24

_____
MADELINE CELIA CHAIS 1992 TRUST
By: William Chais, Trustee


_____
MADELINE CHAIS TRANSFEREE
TRUST NO. 1
By: William Chais, Trustee


*Emily Chasalow* _____
RACHEL ALLISON CHASALOW 1999
TRUST
By: Emily Chasalow, Trustee


*Emily Chasalow* _____
RACHEL ALLISON CHASALOW
TRANSFEREE TRUST NO. 1
By: Emily Chasalow, Trustee


_____
TALI CHAIS 1997 TRUST
By: Mark Chais, Trustee


_____
TALI CHAIS TRANSFEREE TRUST
NO. 1
By: Mark Chais, Trustee


_____
UNICYCLE TRADING COMPANY
By: Mark Chais, President of Unicycle
Corp., its General Partner


_____
UNICYCLE CORP.
By: Mark Chais, President


24

_____
MADELINE CELIA CHAIS 1992 TRUST
By: William Chais, Trustee


_____
MADELINE CHAIS TRANSFEREE
TRUST NO. 1
By: William Chais, Trustee


_____
RACHEL ALLISON CHASALOW 1999
TRUST
By: Emily Chasalow, Trustee


_____
RACHEL ALLISON CHASALOW
TRANSFEREE TRUST NO. 1
By: Emily Chasalow, Trustee

_____
TALI CHAIS 1997 TRUST
By: Mark Chais, Trustee

_____
TALI CHAIS TRANSFEREE TRUST
NO. 1
By: Mark Chais, Trustee

_____
UNICYCLE TRADING COMPANY
By: Mark Chais, President of Unicycle
Corp., its General Partner

_____
UNICYCLE CORP.
By: Mark Chais, President

24

_____

UNICYCLE CORPORATION MONEY
PURCHASE PLAN
By: Steven J. Katzman, Esq., counsel of
record in the CAAG Action


_____

ONONDAGA, INC.
By: William Chais, President

_____

THE ONONDAGA, INC. MONEY
PURCHASE PLAN
By: Steven J. Katzman, Esq., counsel of
record in the CAAG Action

_____

THE ONONDAGA, INC. DEFINED
BENEFIT PENSION PLAN
By: Steven J. Katzman, Esq., counsel of
record in the CAAG Action


_____

CHAIS MANAGEMENT, INC.
By: William Chais, President


_____

CHAIS MANAGEMENT LTD.
By: William Chais, President, Chais
Management, Inc., its General Partner


_____

CHAIS VENTURE HOLDINGS
By: William Chais, President

UNICYCLE CORPORATION MONEY
PURCHASE PLAN
By: Steven J. Katzman, Esq., counsel of
record in the CAAG Action

_____
ONONDAGA, INC.
By: William Chais, President


THE ONONDAGA, INC. MONEY
PURCHASE PLAN
By: Steven J. Katzman, Esq., counsel of
record in the CAAG Action


THE ONONDAGA, INC. DEFINED
BENEFIT PENSION PLAN
By: Steven J. Katzman, Esq., counsel of
record in the CAAG Action

_____
CHAIS MANAGEMENT, INC.
By: William Chais, President

_____
CHAIS MANAGEMENT LTD.
By: William Chais, President, Chais
Management, Inc., its General Partner

_____
CHAIS VENTURE HOLDINGS
By: William Chais, President

25

IN WITNESS WHEREOF, the Trustee hereby signs onto and agrees to be bound by
Sections 1, 2(a), 3(b) and (i), 5, 10-12, and 16-30, as of the date first above written.

_____

IRVING H. PICARD, Trustee for the
liquidation proceedings of Bernard L.
Madoff Investment Securities LLC and the
substantively consolidated Chapter 7 estate
of Bernard L. Madoff

**Exhibit A to**
**Settlement Agreement**

## FORM OF RELEASE

**[See Attached]**

## RELEASE

 This Release (this "Release") is made by the undersigned (the "Restitution Fund Claimant") for the benefit of each Chais Releasee and Relevant Third Party Releasee (as such terms are hereinafter defined).  This Release is executed and delivered by the Restitution Fund Claimant in connection with the submission by the Restitution Fund Claimant to the Attorney General (as defined below) of a Restitution Fund Claim (as defined in the Settlement Agreement dated as of October 19, 2016 (the "Settlement Agreement") among (a) the People of the State of California, by and through Attorney General Kamala D. Harris or her designated representative(s) (the "Attorney General"); (b) the Stanley Chais Parties (as hereinafter defined); (c) the Chais Related Parties (as hereinafter defined); and (d) Irving H. Picard, in his capacity as trustee (the "Trustee") under the Securities Investor Protection Act of 1970, 15 U.S.C. §§ 78aaa et seq., as amended, for the liquidation of the business of Bernard L. Madoff Investment Securities LLC ("BLMIS") and the substantively consolidated Chapter 7 estate of Bernard L. Madoff ("Madoff")).  Any capitalized term used herein, and not otherwise defined herein, shall have the meaning ascribed to such term in Exhibit 1 hereto.

 1. Release.  Subject to Paragraph 8 below, by virtue of submitting a Restitution Fund Claim to the Attorney General, and effective as of the Release Date (as hereinafter defined), and without any further writing or other action of any kind or nature, in consideration of any payment made by the Restitution Fund (as defined in and established under the Settlement Agreement) to the Restitution Fund Claimant and for other good and valuable consideration, the Restitution Fund Claimant hereby fully, finally and forever, unconditionally and irrevocably releases, acquits and discharges, and shall hereby be deemed to have fully, finally and forever, unconditionally and irrevocably released, acquitted and discharged, each "Chais Releasee" and each "Relevant Third Party Releasee" (as each of those respective terms is hereinafter defined) from any and all actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, judgments, direct claims, derivative claims and other claims, and any other right to obtain any type of monetary damages (including punitive damages), expenses, attorneys' and other fees, rescission, restitution, indemnification or any other remedies of whatever kind at law or in equity, in contract, in tort, arising under any source whatsoever, including claims in equity or under any federal, state, common, or foreign statute, regulation, rule or common law, whether in a civil, administrative, arbitral, or other judicial or non-judicial proceeding, asserted or unasserted, known or unknown, matured, contingent, threatened, or inchoate, whether or not concealed or hidden, now existing or arising in the future, including any currently pending or future purported or certified class action, and any right in or under any currently pending or future purported or certified derivative action, that in any way arise out of or in connection with or relate to the California Limited Partnerships (as hereinafter defined), BLMIS, the Madoff Ponzi Scheme (as defined in the Settlement Agreement) and/or any investment activity or other matters with which Stanley Chais was or is alleged to be associated in any way (including, without limitation, the claims asserted or that could have been asserted against any one or more of the Chais Releasees in the CAAG Action and/or California Private Actions (as such terms are hereinafter defined) or any such class action or derivative action), except for any claim by the Restitution Fund Claimant: (i) filed with the "Madoff Victim Fund" being administered by Richard C. Breeden

pursuant to his appointment as Special Master for the U.S. Department of Justice; (ii) to enforce the rights of the Restitution Fund Claimant under the terms of the Restitution Fund; and (iii) against any Relevant Third Party Releasee that does not relate in any way to the claims and potential claims against any Chais Releasees being released pursuant to this Release (collectively, the "Restitution Fund Claimant Released Claims").  The Restitution Fund Claimant hereby also acknowledges that any injunction issued by the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") with respect to any claim released pursuant to this Release shall be valid, binding and enforceable against the Restitution Fund Claimant.

2.    Unknown Claims.  Unknown Claims shall mean any Restitution Fund Claimant Released Claim, as defined herein, that the Restitution Fund Claimant does not know or suspect to exist in its, his or her favor at the time of giving the release described in Section 1 of this Release that if known by it, him or her might have affected its, his or her release as described in this Release.  With respect to any and all Restitution Fund Claimant Released Claims in Section 1 of this Release, the Restitution Fund Claimant hereby waives, and shall be deemed to have waived, the provisions, rights and benefits of California Civil Code section 1542 (to the extent it applies herein), which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

The Restitution Fund Claimant by virtue of submitting a Restitution Fund Claim and this Release to the Attorney General hereby waives, and shall hereby be deemed to have waived, any and all provisions, rights and benefits conferred by any law of any state or territory of the United States, or principle of common law or foreign law, that is similar, comparable or equivalent in effect to California Civil Code section 1542.  The Restitution Fund Claimant hereby acknowledges, in conjunction with waiving Unknown Claims, that he, she or it may thereafter discover facts in addition to or different from those that it, he or she now knows or believes to be true with respect to the subject matter of the Restitution Fund Claimant Released Claims, but the Restitution Fund Claimant shall expressly have and shall be deemed to have fully, finally and forever settled and released any and all Restitution Fund Claimant Released Claims, known or unknown, suspected or unsuspected, contingent or noncontingent, whether or not concealed or hidden, that now exist or heretofore have existed, upon any theory of law or equity now existing or coming into existence in the future, including conduct that is negligent, reckless, intentional, with or without malice, or a breach of any duty, law or rule, without regard to the subsequent discovery or existence or such different or additional facts.  The Restitution Fund Claimant hereby acknowledges that the foregoing waiver was separately bargained for and is a key element of the settlement of which the release is a part.  The Restitution Fund Claimant hereby agrees not to directly or indirectly assert any claim, or commence, continue, institute or cause to be commenced any claim or proceeding, based upon any matter purported to be released hereby.

3.    Covenant Not To Sue.  The Restitution Fund Claimant hereby also agrees, and shall be deemed to have agreed, that it, he or she shall not take, directly, derivatively or as a

2

member of any class (and shall be permanently stayed, restrained and enjoined from taking) any of the following actions at law or in equity, in connection with any Restitution Fund Claimant Released Claims (collectively, "Restricted RFC Actions"): (i) commencing, conducting or continuing in any manner any action or proceeding of any kind (including any action or proceeding in a judicial, arbitral, administrative or other forum, whether domestic or foreign) against any Chais Releasee or any Relevant Third Party Releasee, any direct or indirect successor in interest to any Chais Releasee or any Relevant Third Party Releasee, or any immediate or mediate, direct or indirect transferee of any Chais Releasee or any Relevant Third Party Releasee, or the property of any of the foregoing; (ii) enforcing, levying, attaching (including pre-judgment attachment), collecting or otherwise recovering, by any manner or means, any judgment, award or decree against any Chais Releasee or any Relevant Third Party Releasee, any direct or indirect successor in interest to any Chais Releasee, or any immediate or mediate, direct or indirect transferee of any Chais Releasee, or the property of any of the foregoing; (iii) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any lien against any Chais Releasee or any Relevant Third Party Releasee, any direct or indirect successor in interest to any Chais Releasee, or any immediate or mediate, direct or indirect transferee of any Chais Releasee or any Relevant Third Party Releasee, or the property of any of the foregoing; (iv) asserting any setoff, right of subrogation or recoupment of any kind, directly or indirectly, against any Chais Releasee or any Relevant Third Party Releasee, any direct or indirect successor in interest to any Chais Releasee or any Relevant Third Party Releasee, or any immediate or mediate, direct or indirect transferee of any Chais Releasee; or (v) supporting or participating in the commencement, conducting or continuation of any class action or derivative action that has been or could be instituted for any of the foregoing purposes.

4.    Basis for Injunctions.  This Release and any order approving same may be pleaded as a full and complete defense against, and may be used as an independent basis for an injunction against, any claim or proceeding instituted or maintained against any person or entity released hereunder to the extent such claim or proceeding conflicts with any release provided in this Release.

5.    Assignment of Interests.  The Restitution Fund Claimant (i) hereby assigns to the Chais Related Parties all of the Restitution Fund Claimant's right, title and interest in and to any and all amounts that are or may become payable, directly or indirectly, to the Restitution Fund Claimant by or on behalf of any of the California Limited Partnerships and (ii) hereby agrees to (A) hold in trust for, and to promptly remit to counsel for the Chais Related Parties, any and all such amounts received by the Restitution Fund Claimant and (B) refrain from waiving, compromising or otherwise impairing any such right, title or interest.

6.    Applicable Law.  This Release shall be construed and enforced in accordance with the laws of the State of California, without regard to the principle of conflict of laws.  The Restitution Fund Claimant hereby waives on behalf of himself, herself or itself and his, her or its successors and assigns any and all rights to argue that the choice of California law provisions is or has become unreasonable in any legal proceeding.

7.    Other Provisions.  The Restitution Fund Claimant may evidence his, her or its execution of this Release by delivery to the Attorney General of scanned or faxed copies of his, her or its signatures, with the same effect as the delivery of an original signature.  The

3

Restitution Fund Claimant stipulates that facsimile or duplicate originals of this Release or any portion thereof shall be admissible in any judicial proceeding to the same extent that the original would be admissible for all purposes including but not limited to meeting the requirements of California Code of Civil Procedure § 664.6.  If the Restitution Fund Claimant has a living spouse, such spouse must also sign below.

       8.    <u>Termination of Release</u>.  This Release shall be null and void if the undersigned Restitution Fund Claimant receives delivery of written notice from the Attorney General to such Restitution Fund Claimant stating that such Restitution Fund Claimant is not eligible to receive a payment from the Restitution Fund, and such written notice is not withdrawn or overturned or followed by any payment from the Restitution Fund to or for the benefit of the undersigned.

       IN WITNESS WHEREOF, the undersigned has executed this Release as of the date set forth below.


_____          _____          _____
Restitution Fund                 Restitution Fund Claimant's Signature           Date
Claimant's Name                  (and Title if such Claimant is an Entity)


_____          _____          _____
Restitution Fund                 Restitution Fund Claimant's Spouse's            Date
Claimant's Spouse's              Signature, if applicable
Name

**Exhibit 1 to Release**

**CERTAIN DEFINED TERMS**

"Affiliate" shall mean, with respect to any person or entity: (i) its respective predecessors, past, present, and future direct and indirect parents, owners, subsidiaries, affiliated or other related persons or entities of any kind (including but not limited to corporations, partnerships, trusts, and individuals), including the successors and assigns of any of the foregoing; (ii) all past, present and future employees, officers, managers, directors, agents, insurers, members, beneficiaries, trustees, attorneys, accountants, and representatives of any of the foregoing, in their official and individual capacities; and (iii) insofar as it has been or could be alleged that he or she (x) was a transferee of assets, directly or indirectly, from Stanley Chais or any of the Chais Parties, or (y) was involved in any activity which is the subject of the CAAG Released Claims, all children or grandchildren of any Chais Party or any of the other foregoing persons that is an individual.

"CAAG Action" shall mean the lawsuit filed by the Attorney General against Stanley Chais and Does 1 through 100, inclusive, in the California Court alleging violations of California Corporations Code Section 25401, California Corporations Code Section 25235, California Business and Professions Code Section 17500 and California Business and Professions Code Section 17200, titled *The People of the State of California v. Stanley Chais, et al*., Case No. BC422257.

"California Court" shall mean the Los Angeles County Superior Court, State of California.

"California Limited Partnerships" shall mean the California limited partnerships known as The Brighton Company, The Popham Company and The Lambeth Company.

"California Private Actions" shall mean the following four actions pending in the California Court against some or all of the Chais Parties seeking recovery of funds related to the Madoff Ponzi Scheme: *Bottlebrush Investments, LP v. The Lambeth Company, et al*., Case No. BC407967; *Leghorn Investments, Ltd. v. Brighton Investments, et al*., Case No. BC408661; *Heimoff v. Chais, et al*., Case No. BC413821; and *Hall v. Chais, et al*., Case No. BC413820.

"Chais Parties" shall mean, collectively, the Stanley Chais Parties and the Chais Related Parties.

"Chais Related Parties" shall mean Emily Chasalow; Mark Chais; William Chais; Michael Chasalow; Miri Chais, referred to in the Complaint in *Picard v. Estate of Stanley Chais, et al.*, No. 09-01172 (SMB) (Bankr. S.D.N.Y. 2009) (the "Complaint") as Mirie Chais; Wrenn Chais; 1994 Trust for the Children of Stanley and Pamela Chais; 1996 Trust for the Children of Stanley and Pamela Chais, referred to in the Complaint as The 1996 Trust for the Children of Pamela Chais And Stanley Chais; BLMIS Account 1C1286, sued in the Complaint as The 1999 Trust for the Children of Stanley and Pamela Chais; 1999 Trust for the Grandchildren of Stanley and Pamela Chais; Emily Chais 1983 Trust; Emily Chais Trust No. 1, Emily Chais Trust No. 2, and Emily Chais Trust No. 3, referred to collectively in the Complaint as The Emily Chais Trust; Emily Chais Issue Trust No. 1 and Emily Chais Issue Trust No. 2, referred to collectively in the Complaint as The Emily Chais Issue Trust; Mark Hugh Chais Trust No. 1, Mark Hugh Chais Trust No. 2, and Mark Hugh Chais Trust No. 3, referred to collectively in the Complaint as The Mark Hugh Chais Trust; Mark Hugh Chais Issue Trust No. 1 and Mark Hugh Chais Issue Trust

Exhibit 1- Page 1

No. 2, referred to collectively in the Complaint as The Mark Hugh Chais Issue Trust; Mark Hugh Chais 1983 Trust; William Frederick Chais Trust No. 1, William Frederick Chais Trust No. 2, and William Frederick Chais Trust No. 3, referred to collectively in the Complaint as The William Frederick Chais Trust; William Frederick Chais Issue Trust No. 1 and William Frederick Chais Issue Trust No. 2, referred to collectively in the Complaint as The William F. Chais Issue Trust; William Frederick Chais 1983 Trust; The William and Wrenn Chais 1994 Family Trust; Ari Chais 1999 Trust; Ari Chais Transferee Trust No. 1, referred to in the Complaint as The Ari Chais Transferee #1 Trust; Benjamin Paul Chasalow 1999 Trust; Benjamin Paul Chasalow Transferee Trust No. 1, referred to in the Complaint as The Benjamin Paul Chasalow Transferee #1 Trust; Chloe Frances Chais 1994 Trust, referred to in the Complaint as The Chloe Francis Chais 1994 Trust; Chloe Frances Chais Transferee Trust No. 1, referred to in the Complaint as The Chloe Francis Chais Transferee #1 Trust; Jonathan Wolf Chais 1996 Trust, referred to in the Complaint as The Jonathan Wolf Chais Trust; Jonathan Chais Transferee Trust No. 1, referred to in the Complaint as The Jonathan Chais Transferee #1 Trust; Justin Robert Chasalow 1999 Trust; Justin Robert Chasalow Transferee Trust No. 1, referred to in the Complaint as The Justin Robert Chasalow Transferee #1 Trust; Madeline Celia Chais 1992 Trust; Madeline Chais Transferee Trust No. 1, referred to in the Complaint as The Madeline Chais Transferee #1 Trust; Rachel Allison Chasalow 1999 Trust; Rachel Allison Chasalow Transferee Trust No. 1, referred to in the Complaint as The Rachel Allison Chasalow Transferee #1 Trust; Tali Chais 1997 Trust; Tali Chais Transferee Trust No. 1, referred to in the Complaint as The Tali Chais Transferee #1 Trust; Unicycle Trading Company; Unicycle Corp., individually and as the General Partner of Unicycle Trading Company; the now-defunct money purchase plan formerly known as Unicycle Corporation Money Purchase Plan; Onondaga, Inc., individually and as General Partner of Chais Investments Ltd.; the now-defunct money purchase plan formerly known as The Onondaga, Inc. Money Purchase Plan; the now-defunct defined benefit pension plan formerly known as The Onondaga, Inc. Defined Benefit Pension Plan; Chais Management, Inc., individually and as General Partner of Chais Management Ltd.; Chais Management Ltd.; and Chais Venture Holdings.

"Chais Releasee" shall mean each Chais Party and each Affiliate thereof.

"Relevant Third Party Releasee" shall mean any third party (other than any Chais Releasee) that has asserted or could assert any claim against any of the Chais Releasees, whether pursuant to any direct claim, any cross claim, any derivative claim or otherwise, including any claim for indemnification, and each Affiliate thereof.

"Release Date" shall mean, as to each Restitution Fund Claimant, the date on which such Restitution Fund Claimant submits in writing its, his or her Restitution Fund Claim to the Attorney General; provided, that such person's release hereunder shall be deemed subject to its, his or her receipt of payment from the Restitution Fund or, in the event that multiple payments from the Restitution Fund are made to such Restitution Fund Claimant, such person's receipt of the first such payment that is made to such Restitution Fund Claimant. Each Chais Releasee that is not a party to the Settlement Agreement is a third party beneficiary of the Settlement Agreement and has the full right to enforce the release and covenant not to sue provided in the Settlement Agreement to such Chais Releasee by any Restitution Fund Claimant as fully as if he, she or it was a party to the Settlement Agreement.

Exhibit 1- Page 2

"<u>Stanley Chais Parties</u>" shall mean The Estate of Stanley Chais; Pamela Chais; Appleby Productions Ltd.; the now-defunct defined contribution plan formerly known as Appleby Productions Ltd. Defined Contribution Plan; the now-defunct money purchase plan formerly known as Appleby Productions Ltd. Money Purchase Plan; the now-defunct profit sharing plan formerly known as Appleby Productions Ltd. Profit Sharing Plan; Chais Investments, Ltd.; Chais 1991 Family Trust (now consisting of the Survivor's Trust under Chais 1991 Family Trust dated September 4, 1991 and the Marital Trust under Chais 1991 Family Trust dated September 4, 1991); and Chais Family Foundation.

Exhibit 1- Page 3