# EXHIBIT D

## SETTLEMENT AGREEMENT
## (CALIFORNIA PRIVATE ACTIONS)

This SETTLEMENT AGREEMENT, dated as of October 19, 2016, is made by and among the following Parties and Limited Party (each as defined further in Section 1 below): (a) Plaintiffs Bottlebrush Investments, L.P., derivatively on behalf of The Lambeth Company; Leghorn Investments, Ltd., derivatively on behalf of The Brighton Company; Douglas Hall, as Co-Trustee of the Vivian Hall IRA, derivatively on behalf of both The Popham Company and one of its limited partners, Marloma Securities; and Steven Heimoff, as Trustee of the Steven Heimoff IRA, derivatively on behalf of both The Lambeth Company and one of its limited partners, Crescent Securities; (b) the Stanley Chais Defendants (as defined in Section 1 below); (c) the Chais Related Defendants (as defined in Section 1 below); and (d) solely with respect to Sections 1, 2, and 9 to 26 herein and otherwise subject to the express limitations more fully set forth in this Settlement Agreement, Irving H. Picard, in his capacity as trustee (the "Trustee") under the Securities Investor Protection Act of 1970, 15 U.S.C. §§ 78aaa *et seq.*, as amended, for the liquidation of the business of Bernard L. Madoff Investment Securities LLC ("BLMIS") and the substantively consolidated Chapter 7 estate of Bernard L. Madoff ("Madoff") (this "Settlement Agreement").  This Settlement Agreement is intended by the Parties to fully, finally and forever resolve, discharge and settle the Released Claims (as defined in Section 1 below), upon and subject to the terms and conditions herein.

## RECITALS

A.    BLMIS and its predecessor were registered broker-dealers and members of the Securities Investor Protection Corporation ("SIPC").

B.    On December 11, 2008, the Securities and Exchange Commission filed a complaint in the United States District Court for the Southern District of New York (the "District Court") against BLMIS and Madoff.  On December 12, 2008, the District Court entered an order that, among other things, appointed a receiver for the assets of BLMIS (No. 08-CV-10791 (LLS)).

C.    On December 11, 2008, Madoff was arrested by federal agents for criminal securities laws violations including securities fraud, investment adviser fraud, and mail and wire fraud.  At a plea hearing on March 12, 2009, in the case captioned *United States v. Madoff*, Case No. 09-CR-213 (DC), Madoff pleaded guilty to an 11-count criminal information filed against him by the Office of the United States Attorney for the District Court and admitted that he "operated a Ponzi scheme through the investment advisory side of [BLMIS]" and engaged in fraud in the operation of BLMIS (the "Madoff Ponzi Scheme").

D.    Some or all of the Stanley Chais Defendants and the Chais Related Defendants were customers of BLMIS and maintained customer accounts with BLMIS.

E.    On December 15, 2008, the Trustee was appointed as the trustee under the Securities Investor Protection Act of 1970, 15 U.S.C. §§ 78aaa *et seq.*, as amended, for the liquidation of the business of BLMIS in a bankruptcy proceeding currently pending before the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), Case No. 08-01789 (SMB) (the "SIPA Proceeding"); the estate of BLMIS was

substantively consolidated with the Madoff estate after an involuntary bankruptcy proceeding was also initiated against Madoff.  The Trustee thereafter commenced an adversary proceeding against the Stanley Chais Defendants and the Chais Related Defendants in the Bankruptcy Court under the caption *Picard v. Stanley Chais, et al.*, Adv. Pro. No. 09-01172 (SMB) (the "Adversary Proceeding").  In the Adversary Proceeding, the Trustee asserts the Stanley Chais Defendants and the Chais Related Defendants are liable to the BLMIS estate for certain withdrawals made by the Stanley Chais Defendants and the Chais Related Defendants from their respective customer accounts at BLMIS.

F.      Stanley Chais was the general partner of three California limited partnerships known as, respectively, The Brighton Company, The Popham Company and The Lambeth Company (the "California Limited Partnerships").

G.      On February 13, 2009, Plaintiff Bottlebrush Investments, LP ("Bottlebrush") filed an action against, among others, the Stanley Chais Defendants and the Chais Related Defendants in the Los Angeles County Superior Court (the "California Court") seeking recovery of funds allegedly lost in the Madoff Ponzi Scheme, and alleging, among other claims, breach of fiduciary duty, breach of contract, negligence, fraud, unjust enrichment and fraudulent conveyance, titled *Bottlebrush Investments, LP v. The Lambeth Company, et al.*, Case No. BC407967 (the "Bottlebrush Action").  The Bottlebrush Action asserts that Bottlebrush is a limited partner in The Lambeth Company and purports to bring claims derivatively on behalf of The Lambeth Company.

H.      On February 27, 2009, Plaintiff Leghorn Investments, Ltd. ("Leghorn") filed an action against, among others, the Stanley Chais Defendants and the Chais Related Defendants in California Court seeking recovery of funds allegedly lost in the Madoff Ponzi Scheme, and alleging claims for breach of fiduciary duty, breach of contract, negligence, fraud, unjust enrichment and fraudulent conveyance, titled *Leghorn Investments, Ltd. v. Brighton Investments, et al.*, Case No. BC408661 (the "Leghorn Action").  The Leghorn Action asserts that Leghorn is a limited partner in The Brighton Company and purports to bring claims derivatively on behalf of The Brighton Company.

I.      On May 13, 2009, Steven Heimoff ("Heimoff") as trustee for the Steven Heimoff IRA, filed an action against, among others, the Stanley Chais Defendants and the Chais Related Defendants in California Court seeking recovery of funds allegedly lost in the Madoff Ponzi Scheme, and alleging claims for breach of fiduciary duty, breach of contract, fraud, unjust enrichment and fraudulent conveyance, titled *Heimoff v. Chais, et al.*, Case No. BC413821 (the "Heimoff Action").  The Heimoff Action purports to bring claims derivatively on behalf of both The Popham Company and one of its limited partners, Marloma Securities, a California limited partnership.  Heimoff alleges that the Steven Heimoff IRA was a limited partner in Marloma Securities.

J.      On May 13, 2009, Plaintiff Douglas Hall ("Hall," and together with Bottlebrush, Leghorn and Heimoff, the "Plaintiffs"), as co-trustee for the Vivian Hall IRA, filed an action against, among others, the Stanley Chais Defendants and the Chais Related Defendants in California Court seeking recovery of funds allegedly lost in the Madoff Ponzi Scheme, and alleging claims for breach of fiduciary duty, breach of contract, fraud, unjust enrichment and fraudulent conveyance, titled *Hall v. Chais, et al.*, Case No. BC413820 (the "Hall Action" and

collectively with the Bottlebrush Action, the Leghorn Action, and the Heimoff Action, the "California Private Actions"). The Hall Action purports to bring claims derivatively on behalf of both The Lambeth Company and one of its limited partners, Crescent Securities, a California limited partnership. Hall alleges that the Vivian Hall IRA was a limited partner in Crescent Securities (together with Marloma Securities, the "Sub-Partnerships").

K.    On September 22, 2009, the People of the State of California, by and through Attorney General Kamala D. Harris or her designated representative(s) (the "Attorney General") filed an action against Stanley Chais and Does 1 through 100, inclusive, in the California Court alleging violations of California Corporations Code Section 25401, California Corporations Code Section 25235, California Business and Professions Code Section 17500 and California Business and Professions Code Section 17200 in connection with Stanley Chais' operation of the California Limited Partnerships, titled *The People of the State of California v. Stanley Chais, et al.*, Case No. BC422257 (the "CAAG Action," and together with the California Private Actions, the "California Actions").

L.    As part of discovery in the California Private Actions, the Plaintiffs took the deposition of Stanley Chais over nine days, from January to April 2010. Deposition testimony was also given by individual Plaintiffs Hall and Heimoff, and certain investors in the California Limited Partnerships. Further, the Plaintiffs, Stanley Chais Defendants, Chais Related Defendants, and other third parties also made substantial document productions as part of discovery in the California Private Actions.

M.    Stanley Chais died on September 26, 2010, and the Estate of Stanley Chais was thereafter substituted as a defendant in the Adversary Proceeding, the California Private Actions, and the CAAG Action.

N.    On January 4, 2012, the Trustee commenced in the Bankruptcy Court an adversary proceeding captioned *Picard v. Hall, et al.*, Adv. Pro. No. 12-01001 (SMB) against the plaintiffs in the California Actions, seeking to enjoin the plaintiffs from prosecuting the California Actions, pursuant to sections 362 and 105 of the Bankruptcy Code, 11 U.S.C. § 101 *et seq.*

O.    The Plaintiffs dispute that section 362 or any other provision of the Bankruptcy Code prevents the Plaintiffs from pursuing the California Private Actions. The Attorney General likewise disputes the Trustee's ability to enjoin prosecution of the CAAG Action.

P.    At the direction of the Bankruptcy Court, since August 2012, the Trustee, the Attorney General, the Plaintiffs, and the Stanley Chais Defendants and the Chais Related Defendants engaged in multiple mediation conferences and related mediation communications with the Hon. James L. Garrity, Jr., at that time retired from the Bankruptcy Court, as mediator.

Q.    As a result of these mediation conferences and related mediation communications, the Trustee and the Stanley Chais Defendants and the Chais Related Defendants have entered into the Trustee Settlement Agreement (as defined in Section 1 below), by which they seek to resolve the Adversary Proceeding. Also as a result of these mediation conferences and related mediation communications, the Attorney General, the Chais Related Defendants (who are named as defendants in the Adversary Proceeding and in the California Private Actions, but are not

named as defendants in the CAAG Action) and the Stanley Chais Defendants have entered into the AG Settlement Agreement (as defined in Section 1 below), by which they seek to resolve the CAAG Action.

R.      Pursuant to the Trustee Settlement Agreement, the Stanley Chais Defendants have agreed to turn over to the Trustee substantially all of their assets, and the Chais Related Defendants have agreed to pay to the Trustee an amount equal to their two-year transfers from their BLMIS accounts, as determined by the Trustee.

S.      Pursuant to the AG Settlement Agreement, a fund will be created for compensating the investors in the California Limited Partnerships (the "Restitution Fund"), to be funded by contributions by certain of the Defendants (as defined below in Section 1) in consideration for, *inter alia*, (i) the termination of the CAAG Action; (ii) the resolution of all disputes between the Trustee and the Attorney General relating to the assets of Stanley Chais and the Estate of Stanley Chais; and (iii) releases by Restitution Fund Claimants (as defined in the AG Settlement Agreement) in favor of the Defendants.

T.      Plaintiffs and Defendants wish to settle their disputes about the matters at issue in the California Private Actions without the expense, delay and uncertainty of continued litigation. The Stanley Chais Defendants and the Chais Related Defendants are entering into this Settlement Agreement to fully resolve these matters and without any concession of any wrongdoing, fault or liability on the part of any Stanley Chais Defendant, any Chais Related Defendant, Stanley Chais, or any other defendant in the Adversary Proceeding.  This Settlement Agreement is entered into contemporaneously with the AG Settlement Agreement, and the CPAS Effective Date (as defined in Section 2 below) is conditional upon the issuance of the CAAG Approval Order (as defined in Section 1 below) and the CAAG Approval Order becoming Final (as defined in Section 1 below).

U.      The maximum total payment that may be made by Defendants as set forth in, and pursuant to, the AG Settlement Agreement and this Settlement Agreement is a combined total of Twenty Million Two Hundred Thousand Dollars ($20,200,000).

V.      The Trustee's participation in and obligations under this Settlement Agreement are expressly limited to the provisions set forth in Sections 1, 2, and 9 to 26 herein.

## THE SETTLEMENT AGREEMENT

**NOW, THEREFORE, IT IS STIPULATED AND AGREED**, by and among Plaintiffs, as individuals and derivatively on behalf of the California Limited Partnerships and the Sub-Partnerships, the Stanley Chais Defendants, and the Chais Related Defendants, by and through their respective counsel of record, that, subject to final approval by the California Court and the Bankruptcy Court, in consideration of the foregoing, of the mutual covenants, promises and undertakings set forth herein, and for other good and valuable consideration, the mutual receipt and sufficiency of which are hereby acknowledged, the California Private Actions and the Released Claims shall be finally and fully compromised, settled and released, and the California Private Actions shall be dismissed with prejudice, upon and subject to the terms and conditions of this Settlement Agreement, as follows:

1.      <u>Definitions</u>.

As used in this Settlement Agreement, the following terms have the meanings specified in this Section and in the above Recitals:

(a)      "<u>Affiliate</u>" means, with respect to any person or entity:  (i) its respective predecessors, past, present, and future direct and indirect parents, owners, subsidiaries, affiliated or other related persons or entities of any kind (including but not limited to corporations, partnerships, trusts, and individuals), including the successors and assigns of any of the foregoing; (ii) all past, present and future employees, officers, managers, directors, agents, insurers, members, beneficiaries, trustees, attorneys, accountants, and representatives of any of the foregoing, in their official and individual capacities; and (iii) with respect to the Defendants only, all children or grandchildren of any Stanley Chais Defendant and of any Chais Related Defendant or any of the other foregoing persons.

(b)      "<u>AG Settlement Agreement</u>" means that certain Settlement Agreement dated as of October 19, 2016 made by and among the Attorney General and the Stanley Chais Defendants and the Chais Related Defendants and, as a limited party, the Trustee, providing for settlement of the CAAG Action and entered into contemporaneously herewith.

(c)      "<u>Attorneys' Fees Limit</u>" means Four Million Dollars ($4,000,000), constituting the maximum amount that counsel for Plaintiffs may seek as an award of attorneys' fees and expenses related to the California Private Actions.

(d)      "<u>Attorneys' Fees Motion</u>" means the motion to be filed by Plaintiffs' counsel seeking an award of attorneys' fees and expenses with respect to their prosecution and settlement of the California Private Actions, as provided under California Corporations Code § 15910.05 and other applicable California law, in an amount not to exceed the Attorneys' Fee Limit.

(e)      "<u>Attorneys' Fees Order</u>" means the order of the California Court or any applicable Other Court finally approving an award of attorneys' fees and expenses to Plaintiffs' counsel with respect to their prosecution and settlement of the California Private Actions.

(f)      "<u>Bankruptcy Court</u>" means the United States Bankruptcy Court for the Southern District of New York.

(g)      "<u>Business Day</u>" means any day other than Saturday, Sunday, or a day that is a legal holiday in Los Angeles, California.

(h)      "<u>CAAG Approval Order</u>" means an order by the Bankruptcy Court or any applicable Other Court pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure finally authorizing the Trustee to undertake the Trustee's limited obligations under the AG Settlement Agreement.

(i)      "<u>California Court</u>" means the Los Angeles County Superior Court, State of California.

(j)    "California Limited Partnerships" means Brighton Investments, the Popham Company and the Lambeth Company, all California limited partnerships for which Stanley Chais served as general partner.

(k)    "California Preliminary Approval Order" shall mean an order of the California Court or any applicable Other Court granting preliminary approval of this Settlement Agreement and the proposed form and method of providing notice to the Limited Partners.

(l)    "California Private Actions" shall mean the following four actions pending in the California Court against the Stanley Chais Defendants and the Chais Related Defendants, seeking recovery of funds related to the Madoff Ponzi Scheme:  *Bottlebrush Investments, LP v. The Lambeth Company, et al*., Case No. BC407967; *Leghorn Investments, Ltd. v. Brighton Investments, et al*., Case No. BC408661; *Heimoff v. Chais, et al*., Case No. BC413821; and *Hall v. Chais, et al*., Case No. BC413820.

(m)    "California Private Actions Approval Motion" means the motion to be filed by the Parties seeking an order granting preliminary approval of this Settlement Agreement as set forth in this Settlement Agreement and related documents and setting the date for hearing with respect to final approval of this Settlement Agreement.

(n)    "California Private Actions Approval Order" means the order by the California Court or any applicable Other Court finally approving this Settlement Agreement.

(o)    "CP Bankruptcy Approval Order" means the order by the Bankruptcy Court or any applicable Other Court pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure authorizing the Trustee to undertake the Trustee's limited obligations under this Settlement Agreement.

(p)    "Chais Related Defendants" means Emily Chasalow; Mark Chais; William Chais; Michael Chasalow;[1] Miri Chais, referred to in the  Complaint in the Adversary Proceeding (the "Complaint") as Mirie Chais;[2] Wrenn Chais; 1994 Trust for the Children of Stanley and Pamela Chais; 1996 Trust for the Children of Stanley and Pamela Chais, referred to in the Complaint as The 1996 Trust for the Children of Pamela Chais And Stanley Chais; BLMIS Account 1C1286, sued in the Complaint as The 1999 Trust for the Children of Stanley and Pamela Chais; 1999 Trust for the Grandchildren of Stanley and Pamela Chais; Emily Chais 1983 Trust; Emily Chais Trust No. 1, Emily Chais Trust No. 2, and Emily Chais Trust No. 3, referred to collectively in the Complaint as The Emily Chais Trust; Emily Chais Issue Trust No. 1 and Emily Chais Issue Trust No. 2, referred to collectively in the Complaint as The Emily Chais Issue Trust; Mark Hugh Chais Trust No. 1, Mark Hugh Chais Trust No. 2, and Mark Hugh Chais Trust No. 3, referred to collectively in the Complaint as The Mark Hugh Chais Trust; Mark Hugh Chais Issue Trust No. 1 and Mark Hugh Chais Issue Trust No. 2, referred to collectively in the Complaint as The Mark Hugh Chais Issue Trust; Mark Hugh Chais 1983 Trust; William

---

[1]  Michael Chasalow was dismissed as a defendant from the California Private Actions but is included in the definition of Chais Related Defendants for definitional convenience.

[2]  Miri Chais was dismissed as a defendant from the California Private Actions but is included in the definition of Chais Related Defendants for definitional convenience.

Frederick Chais Trust No. 1, William Frederick Chais Trust No. 2, and William Frederick Chais Trust No. 3, referred to collectively in the Complaint as The William Frederick Chais Trust; William Frederick Chais Issue Trust No. 1 and William Frederick Chais Issue Trust No. 2, referred to collectively in the Complaint as The William F. Chais Issue Trust; William Frederick Chais 1983 Trust; The William and Wrenn Chais 1994 Family Trust; Ari Chais 1999 Trust; Ari Chais Transferee Trust No. 1, referred to in the Complaint as The Ari Chais Transferee #1 Trust; Benjamin Paul Chasalow 1999 Trust; Benjamin Paul Chasalow Transferee Trust No. 1, referred to in the Complaint as The Benjamin Paul Chasalow Transferee #1 Trust; Chloe Frances Chais 1994 Trust, referred to in the Complaint as The Chloe Francis Chais 1994 Trust; Chloe Frances Chais Transferee Trust No. 1, referred to in the Complaint as The Chloe Francis Chais Transferee #1 Trust; Jonathan Wolf Chais 1996 Trust, referred to in the Complaint as The Jonathan Wolf Chais Trust; Jonathan Chais Transferee Trust No. 1, referred to in the Complaint as The Jonathan Chais Transferee #1 Trust; Justin Robert Chasalow 1999 Trust; Justin Robert Chasalow Transferee Trust No. 1, referred to in the Complaint as The Justin Robert Chasalow Transferee #1 Trust; Madeline Celia Chais 1992 Trust; Madeline Chais Transferee Trust No. 1, referred to in the Complaint as The Madeline Chais Transferee #1 Trust; Rachel Allison Chasalow 1999 Trust; Rachel Allison Chasalow Transferee Trust No. 1, referred to in the Complaint as The Rachel Allison Chasalow Transferee #1 Trust; Tali Chais 1997 Trust; Tali Chais Transferee Trust No. 1, referred to in the Complaint as The Tali Chais Transferee #1 Trust; Unicycle Trading Company; Unicycle Corp., individually and as the General Partner of Unicycle Trading Company; the now-defunct money purchase plan formerly known as Unicycle Corporation Money Purchase Plan; Onondaga, Inc., individually and as General Partner of Chais Investments Ltd.; the now-defunct money purchase plan formerly known as The Onondaga, Inc. Money Purchase Plan; the now-defunct defined benefit pension plan formerly known as The Onondaga, Inc. Defined Benefit Pension Plan; Chais Management, Inc., individually and as General Partner of Chais Management Ltd.; Chais Management Ltd.; and Chais Venture Holdings.

(q)    "Chais Releasee" means any of the Defendants, each Affiliate thereof, Michael Chasalow, Wrenn Chais, Miri Chais and Frank Mantovani (and each Affiliate of the foregoing individuals).

(r)    "CPAS Escrow Account" means an account which shall be established by the Defendants and the Trustee at the closing of the Trustee Settlement Agreement to hold the aggregate sum of Five Million Two Hundred Thousand Dollars ($5,200,000) consistent with the terms of the Trustee Settlement Agreement and this Settlement Agreement.  The CPAS Escrow Account shall be held by the Stanley Chais Defendants' counsel acting as an escrow agent.  The Parties acknowledge and agree that counsel's acting as an escrow agent with respect to a CPAS Escrow Account shall not be deemed to limit or otherwise impair in any way such counsel's representation of the Stanley Chais Defendants.

(s)    "Defendants" means the Stanley Chais Defendants and the Chais Related Defendants.

(t)    "Defendants Released Claims" means those claims released under Section 8 below.

(u)    "Dollars" means United States dollars.

(v)    "Execution Date" means the date on which this Settlement Agreement is executed by the Parties and the Limited Party.

(w)    "Final" means any order or judgment of the California Court or any applicable Other Court that has not been stayed, and as to which (i) the time to appeal or to move for reargument, certiorari or rehearing has expired and (ii) no appeal or motion for reargument or rehearing is then pending.

(x)    "Limited Partners" means the limited partners of the California Limited Partnerships and the partners of the Sub-Partnerships.

(y)    "Limited Party" means the Trustee.

(z)    "Notice of Settlement" means the Notice of Proposed Settlement of Derivative Actions and of Settlement Hearing, substantially in the form of Exhibit 1, which shall be presented to the California Court for approval in conjunction with the California Private Actions Approval Motion.

(aa)    "Other Court" means any court that hereafter properly has and exercises direct appellate jurisdiction over the underlying litigation in the Adversary Proceeding, CAAG Action or any of the California Private Actions.

(bb)    "Party" means each of the Stanley Chais Defendants, the Chais Related Defendants, and Plaintiffs, derivatively on behalf of the California Limited Partnerships or the Sub-Partnerships and individually.

(cc)    "Parties" means collectively, the Stanley Chais Defendants, the Chais Related Defendants, and Plaintiffs, derivatively on behalf of the California Limited Partnerships or the Sub-Partnerships.

(dd)    "Plaintiffs" means each of the named plaintiffs in the California Private Actions, the California Limited Partnerships, any limited partners thereof, including Sub-Partnerships, and any direct or indirect investors in the Sub-Partnerships.

(ee)    "Plaintiffs Released Claims" means those claims released under Section 7(a) below.

(ff)    "Plaintiffs Released Claims Against Trustee" means those claims released under Section 9(a) below.

(gg)    "Released Claims" shall mean, collectively, the Plaintiffs Released Claims, the Defendants Released Claims, the Trustee Released Claims and the Plaintiffs Released Claims Against Trustee.

(hh)    "Relevant Third Party Releasee" shall mean any third party (other than any Chais Releasee) that has asserted or could assert any claim against any of the Chais Releasees, whether pursuant to any direct claim, any cross claim, any derivative claim or otherwise, including any claim for indemnification, and each Affiliate thereof.

(ii)    "Restitution Fund" means the fund created to compensate investors in the California Limited Partnerships as contemplated and administered under the terms of the AG Settlement Agreement, which fund includes amounts to be contributed pursuant to this Settlement Agreement.

(jj)    "Settlement Hearing" means any hearing before the California Court or any applicable Other Court to determine whether this Settlement Agreement should be approved as fair, reasonable, adequate and in the best interests of the California Limited Partnerships and the Sub-Partnerships.

(kk)    "Stanley Chais Defendants" means the Estate of Stanley Chais; Pamela Chais; Appleby Productions Ltd.; the now-defunct defined contribution plan formerly known as Appleby Productions Ltd. Defined Contribution Plan; the now-defunct money purchase plan formerly known as Appleby Productions Ltd. Money Purchase Plan; the now-defunct profit sharing plan formerly known as Appleby Productions Ltd. Profit Sharing Plan; Chais Investments, Ltd.; Chais 1991 Family Trust (now consisting of the Survivor's Trust under Chais 1991 Family Trust dated September 4, 1991 and the Marital Trust under Chais 1991 Family Trust dated September 4, 1991); and Chais Family Foundation.

(ll)    "Sub-Partnerships" means Crescent Securities and Marloma Securities.

(mm)    "Trustee Released Claims" means those claims released under Section 9(b) below.

(nn)    "Trustee Settlement Agreement" means that certain Settlement Agreement dated as of October 19, 2016 made by and among the Trustee, the Stanley Chais Defendants and the Chais Related Defendants, providing for, *inter alia*, a settlement of the Adversary Proceeding.

(oo)    "TSA Approval Order" means an order by the Bankruptcy Court or any applicable Other Court finally approving the Trustee Settlement Agreement pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure.

2.    Effective Date.

Upon the Execution Date, this Settlement Agreement shall be binding on the Parties to the maximum extent permitted under applicable law; provided, however, that the Parties' obligations hereunder to consummate the settlement provided for herein are subject to, and conditioned upon, the occurrence of each of the following:  (i) the issuance of the California Private Actions Approval Order approving this Settlement Agreement including, without limitation, the granting of the relief set forth in Sections 3(c) and 3(d) of this Settlement Agreement, and the California Private Actions Approval Order becoming Final; (ii) the issuance of the CP Bankruptcy Approval Order and the CP Bankruptcy Approval Order becoming Final; (iii) the issuance of the TSA Approval Order and the TSA Approval Order becoming Final; and (iv) the issuance of the CAAG Approval Order, the CAAG Approval Order becoming Final and the funding of Fifteen Million Dollars ($15,000,000) into the Restitution Fund pursuant to Section 2(a) of the AG Settlement Agreement (the first date as of which all the events set forth in

the foregoing clauses (i) through (iv) shall have occurred being referred to herein as the "CPAS Effective Date").

      3.      Submission and Application to the California Court.

      (a)      As soon as practicable following the hearing seeking approval of the CP Bankruptcy Approval Order, but no later than within fifteen (15) Business Days after the entry of the CP Bankruptcy Approval Order, the Parties shall file the California Private Actions Approval Motion with the California Court seeking the entry of the California Preliminary Approval Order, which shall:

      (i)      Approve the Notice of Settlement submitted by the Parties, substantially in the form attached hereto as Exhibit 1;

      (ii)      Approve the Parties' proposed method of disseminating the Notice of Settlement to the Limited Partners, as set forth in Section 6 herein;

      (iii)      Set a date for a final Settlement Hearing before the California Court to determine whether the Settlement Agreement should be approved as fair, reasonable, adequate and in the best interests of the California Limited Partnerships and the Sub-Partnerships;

      (iv)      Provide for the entry of the California Private Actions Approval Order, substantially in the form attached hereto as Exhibit 2, based on the California Court's determination at or after the Settlement Hearing, that the Settlement Agreement should be approved as fair, reasonable, adequate and in the best interests of the California Limited Partnerships and Sub-Partnerships.

      (b)      In conjunction with the California Private Actions Approval Motion, counsel for Plaintiffs may file an Attorneys' Fees Motion seeking an award of attorneys' fees and expenses, under California Corporations Code § 15910.05 and other applicable California law, in an amount not to exceed the Attorneys' Fees Limit.

      (c)      As a part of the California Private Actions Approval Motion, the Parties shall obtain the judicial dissolution, winddown and termination of existence for all purposes of the California Limited Partnerships in accordance with California law and the order for such relief shall be included in the California Private Actions Approval Order. The California Private Actions Approval Order shall provide (i) for the winddown and termination of the California Limited Partnerships without any further act or conduct by any party including, without limitation, the filing of a State of California Secretary of State Limited Partnership Certificate of Cancellation, or, (ii) at the election of the Defendants, designate Jeffrey Golden, Esq. of Lobel Weiland Golden Friedman LLP as the person authorized to wrap up the affairs of each of the California Limited Partnerships (the "Designee"), subject to terms and conditions set forth therein, and, in connection therewith, will direct the Designee to file immediately with the Secretary of State of the State of California (the "Secretary"), for each of the California Limited Partnerships, Form LP-2 ("Amendment to Certificate of Limited Partnership") indicating Designee's appointment as such in Item 7(b) of the Form LP-2, and (iii) that, subject to the provisions of Section 11(b), any person or entity in possession of any books or records of the

California Limited Partnerships shall maintain all of such books and/or records until the earlier to occur of (*x*) the date on which the process that is contemplated and to be administered under the terms of the AG Settlement Agreement, through which the investors in the California Limited Partnerships are to be compensated, is complete, and (*y*) the date which is two years after entry of the California Private Actions Approval Order, after which any person or entity then in possession of such books and/or records may maintain or destroy any or all of such books and/or records in their sole and absolute discretion without any liability to any third party arising from their exercise of such discretion.  In the event of the election by the Defendants under clause (ii) above, the California Private Actions Approval Order will further direct Designee to file for each of the California Limited Partnerships, promptly after the filing of its respective Form LP-2, a Form LP-4/7 ("Limited Partnership Certificate of Cancellation").  The California Private Actions Approval Order shall contain findings by the California Court that the filing of the Forms LP-4/7 is proper under California law and that (i) each of the California Limited Partnerships has no assets or other property to distribute, and (ii) with the settlement of the Adversary Proceeding and the California Private Actions, and the dismissal in connection therewith of the counterclaims asserted by the California Limited Partnerships, (*x*) each of the California Limited Partnerships will not be a party to any known civil, criminal or administrative action or proceeding, and (*y*) the California Limited Partnerships will have no known debts or obligations.  The Designee shall be paid a retainer fee of Twenty-Five Thousand Dollars ($25,000) to be funded by the SCD Retainer Balance (as defined in the Trustee Settlement Agreement).

(d)    As a part of the California Private Actions Approval Motion, the Parties shall obtain the injunctive relief in the form set forth in Section 7(b) hereof and such injunctive relief shall be included in the California Private Actions Approval Order.

4.    Monetary Payments.  Within ten (10) Business Days after the occurrence of the CPAS Effective Date, the Defendants shall cause a payment to be made from the CPAS Escrow Account to the Restitution Fund pursuant to this Settlement Agreement in an amount equal to the sum of One Million Two Hundred Thousand Dollars ($1,200,000) less the amounts, if any, that may be awarded by the California Court for incentive awards to each of the following individual plaintiffs who may apply for incentive awards, as compensation for their efforts in prosecuting the California Private Actions and for their reasonable expenses, payable of up to an aggregate maximum amount of One Hundred Thousand Dollars ($100,000), and no more than Twenty-Five Thousand Dollars ($25,000) to any one individual:  Douglas Hall, Steven Heimoff, Pearl Gardner, and Robert Glusman.  Pursuant to the AG Settlement Agreement, the Attorney General has agreed to accept in the Restitution Fund the sum of Fifteen Million Dollars ($15,000,000) to be paid to the Restitution Fund pursuant to the AG Settlement Agreement plus the sums to be paid to the Restitution Fund pursuant to the foregoing sentence (up to One Million Two Hundred Thousand Dollars ($1,200,000)) and pursuant to Section 5 hereof (to the extent applicable), and to administer and distribute such sums as a part of the Restitution Fund pursuant to the provisions of the AG Settlement Agreement.

5.     Plaintiffs' Counsel's Attorneys' Fees.

(a)    Upon issuance of a Final Attorneys' Fees Order, the Defendants, within ten (10) Business Days, shall cause disbursements of Four Million Dollars ($4,000,000) to be made from the CPAS Escrow Account to Plaintiffs' counsel, unless a lesser amount is awarded by the California Court under the Attorneys' Fees Order (in which event such lesser amount shall

be disbursed from the CPAS Escrow Account to Plaintiffs' counsel), but under no circumstances shall the amount paid to Plaintiffs' counsel exceed the Attorneys' Fees Limit. In the event that a lesser amount is awarded by the California Court under the Attorneys' Fees Order, the difference between the amount awarded and Four Million Dollars ($4,000,000) shall be paid from the CPAS Escrow Account to the Restitution Fund.

(b)     Any order or proceeding relating the Attorneys' Fees Motion, any disallowance of all or a portion of Plaintiffs' counsel's request for attorneys' fees, or any appeal from any order relating thereto or reversal or modification thereof, shall not operate to terminate or cancel this Settlement Agreement or its terms, including the releases in Sections 7(a), 8 and 9, or affect or delay the finality of the California Private Actions Approval Order or the CP Bankruptcy Approval Order. The Parties hereto agree that the California Court or any applicable Other Court may enter the California Private Actions Approval Order but reserve for subsequent determination, on a schedule to be set by the California Court or any applicable Other Court, the amount of the attorneys' fee and expense award to Plaintiffs' counsel.

6.     <u>Notice to California Limited Partnerships and Sub-Partnerships.</u>

(a)     Plaintiffs shall assume the administrative responsibility for providing the Notice of Settlement to the Limited Partners and the partners of any partnership (in addition to the Sub-Partnerships) that was a limited partner of the California Limited Partnerships. The Notice of Settlement shall request that any partnership that was a limited partner of any of the California Limited Partnerships forward a copy of the Notice of Settlement to its partners at their last known addresses.

(b)     Upon preliminary approval of the Settlement Agreement, Plaintiffs shall (i) cause a copy of the Notice of Settlement to be mailed to the Limited Partners by first-class mail, postage prepaid, to the last known address of the Limited Partners, and to be mailed to the partners of any partnership (in addition to the Sub-Partnerships) that was a limited partner of the California Limited Partnerships, to the extent that such partners' identities and their last known addresses are identified; (ii) issue a press release attaching the Notice of Settlement; and (iii) post the Notice of Settlement and this Settlement Agreement on Plaintiffs' counsel's websites. Plaintiffs' obligations under clause (i) of this Section 6(b) shall be deemed fully satisfied under this Settlement Agreement when Plaintiffs have caused a copy of the Notice of Settlement to be mailed to the persons and entities for whom last known addresses are included in the LP Contact Information (as defined in Section 6(c), below). Costs for mailing copies of the Notice of Settlement, as set forth in clause (i) of this Section 6(b), and for issuing a press release attaching the Notice of Settlement, as set forth in clause (ii) of this Section 6(b), shall be borne by Plaintiffs.

(c)     The Stanley Chais Defendants shall take reasonable steps to provide Plaintiffs' counsel the names and last known addresses of persons and entities listed as limited partners of the California Limited Partnerships as reflected on the California Limited Partnership records reasonably available to the Stanley Chais Defendants ("<u>LP Contact Information</u>"). If such LP Contact Information also contains names and/or addresses of persons and entities listed as partners of the Sub-Partnerships, that information also will be provided to Plaintiffs' counsel.

7.    <u>Release by the Plaintiffs</u>.

(a)    <u>Release by the Plaintiffs</u>.  Effective as of the CPAS Effective Date, and without any further writing or other action of any kind or nature, in consideration of the covenants and agreements in this Settlement Agreement and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Plaintiffs, the California Limited Partnerships and the Limited Partners, each individually, and derivatively on behalf of the California Limited Partnerships and the Sub-Partnerships, and on behalf of each of the Limited Partners and the partners of any other partnership that was a limited partner of the California Limited Partnerships, their agents, insurers, attorneys, and related entities, assigns, other representatives of any kind or nature, and their predecessors and successors in interest (the "<u>Plaintiff Group Members</u>"), hereby fully, finally and forever, unconditionally and irrevocably release, acquit and discharge each Chais Releasee and each Relevant Third Party Releasee from any and all actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, judgments, claims, and any other right to obtain any type of monetary damages (including punitive damages), expenses, attorneys' and other fees, rescission, restitution or any other remedies of whatever kind at law or in equity, in contract, in tort, arising under any source whatsoever, including claims in equity or under any federal, state, common, or foreign statute, regulation, rule or common law, whether in a civil, administrative, arbitral, or other judicial or non-judicial proceeding, asserted or unasserted, known or unknown, matured, contingent, threatened, or inchoate, whether or not concealed or hidden, now existing or arising in the future, that the Plaintiff Group Members have or may have, whether individual, class, derivative, representative, legal, equitable, or any other type or in any other capacity, and that in any way arise out of or in connection with or relate to the California Limited Partnerships, the Sub-Partnerships, BLMIS, the Madoff Ponzi Scheme and/or any other matters involving Stanley Chais (including, without limitation, the claims asserted or that could have been asserted against any one or more of the Chais Releasees in the CAAG Action and/or California Private Actions or any such class action or derivative action), except for any claim by the Plaintiff Group Members: (i) filed with the "Madoff Victim Fund" being administered by Richard C. Breeden pursuant to his appointment as Special Master for the U.S. Department of Justice, or (ii) to enforce the rights of the Plaintiff Group Members under the terms of the Restitution Fund (collectively, the "<u>Plaintiffs Released Claims</u>").  Each Chais Releasee that is not a party to this Settlement Agreement is a third party beneficiary of this Settlement Agreement and has the full right to enforce the release, covenant not to sue and injunction provided in Section 7(b) to such Chais Releasee by the Plaintiff Group Members as fully as if he, she, or it was a party to this Settlement Agreement.

(b)    <u>Covenant Not To Sue and Injunction</u>.  Effective as of the CPAS Effective Date, the Plaintiff Group Members hereby agree that they shall not take, and are hereby permanently stayed, restrained and enjoined from taking, any of the following actions at law or in equity in connection with any Plaintiffs Released Claims, whether directly, derivatively or in any other manner:  (i) commencing, conducting or continuing in any manner any action or proceeding of any kind (including any action or proceeding in a judicial, arbitral, administrative or other forum, whether domestic or foreign) against any Chais Releasee or any Relevant Third Party Releasee, any direct or indirect successor in interest to any Chais Releasee or any Relevant Third Party Releasee, or any immediate or mediate, direct or indirect transferee of any Chais Releasee or any Relevant Third Party Releasee, or against the property of any of the foregoing; (ii) enforcing, levying, attaching (including pre-judgment attachment), collecting or otherwise

recovering, by any manner or means, any judgment, award or decree against any Chais Releasee or any Relevant Third Party Releasee, any direct or indirect successor in interest to any Chais Releasee or any Relevant Third Party Releasee, or any immediate or mediate, direct or indirect transferee of any Chais Releasee or any Relevant Third Party Releasee, or against the property of any of the foregoing; (iii) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any lien against any Chais Releasee or any Relevant Third Party Releasee, any direct or indirect successor in interest to any Chais Releasee or any Relevant Third Party Releasee, or any immediate or mediate, direct or indirect transferee of any Chais Releasee, or against the property of any of the foregoing; or (iv) asserting any setoff, right of subrogation or recoupment of any kind, directly or indirectly, against any Chais Releasee or any Relevant Third Party Releasee, any direct or indirect successor in interest to any Chais Releasee or any Relevant Third Party Releasee, or any immediate or mediate, direct or indirect transferee of any Chais Releasee or any Relevant Third Party Releasee.  The Plaintiffs Released Claims do not include any claim by the Plaintiff Group Members:  (i) filed with the "Madoff Victim Fund" being administered by Richard C. Breeden pursuant to his appointment as Special Master for the U.S. Department of Justice, or (ii) to enforce the rights of the Plaintiff Group Members under the terms of the Restitution Fund.  Notwithstanding that the provisions in this Subsection 7(b) shall not be effective until the CPAS Effective Date, the Plaintiff Group Members shall take no action whatsoever on or after the Execution Date that would be a violation of this Subsection 7(b) if it were to occur after the CPAS Effective Date, unless an event resulting in a Rejection Date (as that term is defined in Section 13 below) occurs.

8.    <u>Release by the Defendants</u>.  Effective as of the CPAS Effective Date, and without any further writing or other action of any kind or nature, in consideration of the covenants and agreements in this Settlement Agreement and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, each Defendant hereby, fully, finally and forever, unconditionally and irrevocably, releases, acquits and discharges those Plaintiff Group Members, and only those Plaintiff Group Members, who are bound by and do not challenge, at any point in time, the releases, covenant not to sue and injunction contained in Section 7 hereof, from any and all actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, damages, judgments, claims and any other right to obtain any type of monetary damages (including punitive damages), expenses, attorneys' and other fees, rescission, restitution or any other remedies of whatever kind at law or in equity, in contract, in tort, arising under any source whatsoever, including claims in equity or under any federal, state, common, or foreign statute, regulation, rule or common law, whether in a civil, administrative, arbitral, or other judicial or non-judicial proceeding, asserted or unasserted, known or unknown, matured, contingent, threatened, or inchoate, whether or not concealed or hidden, now existing or arising in the future, that such Defendant has or may have and that in any way arise out of or in connection with or relate to the California Limited Partnerships, including, without limitation, any and all claims or cross-claims brought on behalf of any of the California Limited Partnerships, including The Popham Company and The Lambeth Company, by any party, the Sub-Partnerships, including, without limitation, any and all claims or cross-claims brought on behalf of Marloma Securities and/or Crescent Securities or any other limited partner of the California Limited Partnerships by any party, BLMIS, the Madoff Ponzi Scheme, and/or any other matters involving Stanley Chais (including, without limitation, the claims asserted or that could have been asserted against the Plaintiffs in the California Private Actions), except for any and all claims and rights (and the

enforcement thereof) of the Defendants, and any obligations of the Plaintiffs, provided for in this Settlement Agreement or with respect to the Restitution Fund (the "Defendants Released Claims"). The Defendants Released Claims (whether presently owned or hereafter acquired) expressly exclude any release, acquittal or discharge of any Plaintiff Group Member who, at any point in time, asserts in any judicial or non-judicial proceeding that he, she or it is not bound by, or challenges in any manner, the releases, covenant not to sue or injunction contained in Section 7 hereof (each such Plaintiff Group Member a "Dissenting PGM"), and the running or expiration of any statute of limitations or repose that could be interposed to bar the assertion of any Defendants Released Claims against a Dissenting PGM shall be deemed to have been tolled, so as to permit the assertion of such Defendants Released Claims against the Dissenting PGM.

9.      Releases between the Trustee and the Plaintiffs.

(a)      Release by the Plaintiffs of the Trustee.  Effective of the CPAS Effective Date, and without any further writing or other action of any kind or nature, in consideration of the covenants and agreements in this Settlement Agreement and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Plaintiff Group Members fully, finally and forever, unconditionally and irrevocably, release, acquit and discharge the Trustee, personally, and in his capacity as Trustee, BLMIS and the estates of BLMIS and Madoff, and SIPC, from any and all actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, damages, judgments, claims and any other right to obtain any type of monetary damages (including punitive damages), expenses, attorneys' and other fees, rescission, restitution or any other remedies of whatever kind at law or in equity, in contract, in tort, arising under any source whatsoever, including claims in equity or under any federal, state, common, or foreign statute, regulation, rule or common law, whether in a civil, administrative, arbitral, or other judicial or non-judicial proceeding, asserted or unasserted, known or unknown, matured, contingent, threatened, or inchoate, whether or not concealed or hidden, now existing or arising in the future, that in any way arise out of or in connection with or relate to the California Limited Partnerships, the Sub-Partnerships, BLMIS, the Madoff Ponzi Scheme and/or any other matters involving Stanley Chais, except for any and all claims and rights (and the enforcement thereof) of the Plaintiffs, and any obligations of the Trustee, provided for in this Settlement Agreement (the "Plaintiffs Released Claims Against Trustee").

(b)      Release by the Trustee of the Plaintiffs.  Effective as of the CPAS Effective Date, and without any further writing or other action of any kind or nature, in consideration of the covenants and agreements in this Settlement Agreement and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Trustee, on behalf of himself, BLMIS and the estates of BLMIS and Madoff, hereby, fully, finally and forever, unconditionally and irrevocably, releases, acquits and discharges those Plaintiff Group Members who are bound by the releases contained in Section 9(a) hereof, from any and all actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, damages, judgments, claims and any other right to obtain any type of monetary damages (including punitive damages), expenses, attorneys' and other fees, rescission, restitution or any other remedies of whatever kind at law or in equity, in contract, in tort, arising under any source whatsoever, including claims in equity or under any federal, state, common, or foreign statute, regulation, rule or common law, whether in a civil, administrative, arbitral, or other judicial or non-judicial proceeding, asserted or

unasserted, known or unknown, matured, contingent, threatened, or inchoate, whether or not
concealed or hidden, now existing or arising in the future, that in any way arise out of or in
connection with or relate to the California Limited Partnerships, the Sub-Partnerships, Stanley
Chais and/or any accounts at BLMIS held or administered by Stanley Chais or the California
Limited Partnerships, except for any and all claims and rights (and the enforcement thereof) of
the Trustee, and any obligations of the Plaintiffs, provided for in this Settlement Agreement (the
"Trustee Released Claims).  The Trustee Released Claims expressly exclude any release,
acquittal or discharge of the California Limited Partnerships with respect to the avoidance of
transfers pursuant to 11 U.S.C. §§ 547 or 548 to be used as a defense, offset or counterclaim by
the Trustee or any Defendants against any Dissenting PGM who, at any point in time, asserts in
any judicial or non-judicial proceeding that he, she or it is not bound by, or challenges in any
manner, the releases, covenant not to sue or injunction contained in Section 7 hereof, and the
running or expiration of any statute of limitations or repose that could be interposed to bar the
assertion of any Defendants Released Claims against a Dissenting PGM shall be deemed to have
been tolled, so as to permit the assertion of such Defendants Released Claims against the
Dissenting PGM.

10.     Unknown Claims.  The Released Claims contemplated by this Settlement
Agreement extend to claims that the Plaintiffs, the California Limited Partnerships, the Limited
Partners, the Defendants or the Trustee do not know or suspect to exist in its, his or her favor at
the time of giving its, his or her release in this Settlement Agreement that if known by it, him or
her, might have affected its, his or her settlement and release in this Settlement Agreement.  With
respect to any and all Released Claims in Sections 7(a), 8 and 9 of this Settlement Agreement,
the Plaintiffs, the California Limited Partnerships, the Limited Partners, the Defendants and the
Trustee expressly waive, or are deemed to have waived, the provisions, rights and benefits of
California Civil Code section 1542 (to the extent it applies herein), which provides:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE
CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER
FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF
KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS
OR HER SETTLEMENT WITH THE DEBTOR.

Solely with respect to their respective Released Claims, the Plaintiffs, the California Limited
Partnerships, the Limited Partners, the Defendants and the Trustee expressly waive, and shall be
deemed to have waived, any and all provisions, rights and benefits conferred by any law of any
state or territory of the United States, or principle of common law or foreign law, that is similar,
comparable or equivalent in effect to California Civil Code section 1542.  The Plaintiffs, the
California Limited Partnerships, the Limited Partners, the Defendants and the Trustee may
hereafter discover facts in addition to or different from those that any of them now knows or
believes to be true with respect to the subject matter of the Released Claims, but the Plaintiffs,
the California Limited Partnerships, the Limited Partners, the Defendants and the Trustee shall
expressly have and shall be deemed to have fully, finally and forever settled and released any
and all Released Claims, known or unknown, suspected or unsuspected, contingent or
noncontingent, whether or not concealed or hidden, that now exist or heretofore have existed,
upon any theory of law or equity now existing or coming into existence in the future, including
conduct that is negligent, reckless, intentional, with or without malice, or a breach of any duty,
law or rule, without regard to the subsequent discovery or existence or such different or

additional facts.  The Plaintiffs, the California Limited Partnerships, the Limited Partners, the Defendants and the Trustee acknowledge and shall be deemed to have acknowledged that the foregoing waiver was separately bargained for and a key element of the settlement of which this release is a part.  The Plaintiffs, the California Limited Partnerships, the Limited Partners, the Defendants and the Trustee agree not to directly or indirectly assert any claim, or commence, continue, institute or cause to be commenced any claim or proceeding, based upon any matter purported to be released hereby.

11.    <u>Cooperation; Further Assurances</u>.

(a)    The Parties and the Limited Party shall provide cooperation, and execute any document or instrument, reasonably requested by any of them after the date of this Settlement Agreement to effectuate the intent of this Settlement Agreement.  Without limiting the foregoing, (a) the Defendants will not oppose the issuance of the Attorneys' Fees Approval Order, (b) the Plaintiffs will not oppose and will support the issuance of the TSA Approval Order and the CAAG Approval Order, and (c) except as provided in Section 6, no Party shall have an obligation to search for documents or information.  The California Private Actions Motion and the California Private Actions Approval Order shall be in form and substance acceptable to the Defendants and the Plaintiffs and consistent with the terms of this Settlement Agreement.  The Plaintiffs will provide reasonable assistance and cooperation, to the extent necessary, in connection with the dissolution, winddown and termination of the California Limited Partnerships.

(b)    Notwithstanding anything to the contrary contained in this Settlement Agreement, (i) each of the Defendants and their respective attorneys, accountants, agents and representatives shall be deemed to have fully complied with any and all obligations to maintain documents, as provided for in clause (iii) of Section 3(c) of this Settlement Agreement, by (x) turning over to the Designee books or records of the California Limited Partnerships in his, her or its possession located after a reasonable search therefor or (y) delivering to the Designee a certification that he, she or it has conducted a reasonable search of documents in his, her or its possession and has not located books or records of the California Limited Partnerships (in either case, a "Records Turnover"), and (ii) any of the Defendants and any of their respective attorneys, accountants, agents and representatives who has effected a Records Turnover shall be excused thereafter from any obligation to maintain any books and/or records, or search for any information, of or in any way relating to the California Limited Partnerships and shall have no liability to any third party in connection therewith.

12.    <u>Basis for Injunctions</u>.  This Settlement Agreement and any order approving same may be pleaded as a full and complete defense against, and may be used as an independent basis for an injunction against, any claim or proceeding instituted or maintained against any person or entity released hereunder to the extent such claim or proceeding conflicts with any release provided in this Settlement Agreement.

13.    <u>Termination; Failure to Obtain a Final Non-Appealable Order</u>.  If for any reason the California Court or the Bankruptcy Court rejects, or any applicable Other Court invalidates, this Settlement Agreement pursuant to an order that becomes Final (the date on which such order becomes Final being herein referred to as the "<u>Rejection Date</u>") then this Settlement Agreement shall automatically terminate as of the Rejection Date.  Upon the Rejection Date, the funds held

in the CPAS Escrow Account shall be treated as follows: (i) Two Million Six Hundred Thousand Dollars ($2,600,000) shall be promptly returned to the Chais Related Defendants (in proportion to the amount funded by each Chais Related Defendant) and (ii) the remaining Two Million Six Hundred Thousand Dollars ($2,600,000) shall be disbursed in accordance with Section 14(b) of the Trustee Settlement Agreement.

14.    <u>Confidentiality Obligations</u>.  The Parties' and the Limited Party's confidentiality obligations under any existing agreements between and among the Parties and/or the Limited Party shall remain in full force and effect.

15.    <u>Non-Disparagement and No Admission</u>.  The Stanley Chais Defendants, the Chais Related Defendants, each of the named Plaintiffs in the California Private Actions, the California Limited Partnerships, the Sub-Partnerships, and the Limited Party agree not to disparage or otherwise impugn the character of any other Party or Limited Party or Stanley Chais.  The Stanley Chais Defendants, the Chais Related Defendants and the California Limited Partnerships do not admit any liability and further expressly deny any participation or complicity of Stanley Chais or any Stanley Chais Defendant, Chais Related Defendant or California Limited Partnership in, or knowledge of Stanley Chais or any Stanley Chais Defendant, Chais Related Defendant or California Limited Partnership of, the Madoff Ponzi Scheme.  Nothing in this Section 15 shall preclude any Party or the Limited Party from making truthful factual statements in connection with the Trustee's duties and obligations with respect to the estates of BLMIS and Madoff.

16.    <u>Entire Agreement</u>.  This Settlement Agreement constitutes the entire agreement and understanding between and among the Parties and the Limited Party and supersedes all prior agreements, representations and understandings concerning the subject matter hereof (other than the Trustee Settlement Agreement and the AG Settlement Agreement).

17.    <u>Amendments, Waiver</u>.  This Settlement Agreement may not be waived, amended or modified in any way except in a writing signed by all the Parties and the Limited Party or their authorized representatives.  No waiver of any provision of this Agreement shall be deemed to constitute a waiver of any other provision hereof, whether or not similar, nor shall such waiver constitute a continuing waiver.

18.    <u>Assignability</u>.  No Party or Limited Party hereto may assign their rights under this Settlement Agreement to a third party without the prior written consent of each of the other Parties and Limited Party hereto or their authorized representatives, provided, however that the Trustee may assign his rights and delegate his duties under this Settlement Agreement to any successor Trustee appointed by the Bankruptcy Court, including SIPC.

19.    <u>Successors Bound</u>.  This Settlement Agreement shall be binding upon and inure to the benefit of each of the Parties and Limited Party and their successors and permitted assigns.

20.    <u>Applicable Law</u>.  This Settlement Agreement shall be construed and enforced in accordance with the laws of the State of California, without regard to the principle of conflict of laws.  Each Party and the Limited Party hereby waives on behalf of itself and its successors and assigns any and all rights to argue that the choice of California law provisions is or has become unreasonable in any legal proceeding.

21.   <u>Exclusive Jurisdiction</u>.  Except to the extent the Bankruptcy Court cannot or declines to retain jurisdiction, the Parties and Limited Party agree and shall request that all orders entered in connection with this Settlement Agreement provide that the Bankruptcy Court shall retain and have non-exclusive jurisdiction over any action to enforce this Settlement Agreement, or any provision thereof, and the Parties and Limited Party hereby consent to and submit to the jurisdiction of the Bankruptcy Court for any such action.  The Parties and Limited Party agree that, in the event the Bankruptcy Court cannot or declines to retain or exercise jurisdiction, no Party or Limited Party shall bring, institute, prosecute or maintain any action to enforce, modify, terminate, void, or interpret this Settlement Agreement, or any provision thereof, in any court other than the California Court.  In any action commenced in another court by a third-party to enforce, modify, terminate, void or interpret this Settlement Agreement, the Parties and Limited Party agree to seek to stay such action and transfer the action first to the Bankruptcy Court; provided, however, in the event the Bankruptcy Court cannot or declines to retain or exercise jurisdiction, the Parties and the Limited Party agree to seek transfer to the California Court.

22.   <u>Captions and Rules of Construction</u>.  The captions in this Settlement Agreement are inserted only as a matter of convenience and for reference and do not define, limit or describe the scope of this Settlement Agreement or the scope or content of any of its provisions.  Any reference in this Settlement Agreement to a paragraph or section is to a paragraph or section of this Settlement Agreement, unless otherwise noted.  The words "<u>hereby</u>," "<u>herein</u>," "<u>hereto</u>," "<u>hereof</u>," "<u>hereunder</u>," and similar words refer to this Settlement Agreement in its entirety and not merely to the Section where any such words appear.  "<u>Includes</u>," "<u>including</u>" and similar words are not limiting.  The Parties and the Limited Party acknowledge that this Settlement Agreement was jointly drafted after negotiations by counsel and the Parties and the Limited Party therefore agree that no provision of this Settlement Agreement may be construed against any Party or the Limited Party as having been drafted by that Party or Limited Party.

23.   <u>Counterparts; Electronic Copy of Signatures</u>.  This Settlement Agreement may be executed and delivered in any number of counterparts, each of which so executed and delivered shall be deemed to be an original and all of which shall constitute one and the same document.  The Parties and Limited Party may evidence their execution of this Settlement Agreement by delivery to the other Parties and Limited Party of scanned or faxed copies of their signatures, with the same effect as the delivery of an original signature.  The Parties and the Limited Party stipulate that counterparts, facsimile, or duplicate originals of this Settlement Agreement or any portion thereof shall be admissible in any judicial proceeding to the same extent that the original would be admissible for all purposes including but not limited to meeting the requirements of California Code of Civil Procedure § 664.6.

24.   <u>Severability</u>.  In the event that any term or provision of this Agreement is found in a Final judgment or order of a court of competent jurisdiction to be invalid or unenforceable, the entire Agreement shall be invalid and unenforceable (except this Section 24), unless and to the extent that all Parties and Limited Party agree otherwise in writing.

25.   <u>Survival</u>.  The provisions of this Settlement Agreement shall survive the consummation of the transactions contemplated hereby.

26.   <u>Notices</u>.  Any notices under this Settlement Agreement shall be in writing, shall be effective when received and may be delivered only by hand, or by overnight delivery service

or by electronic transmission if such overnight delivery or electronic transmission is confirmed via email, to:

If to the Plaintiffs, c/o:

Marvin Gelfand, Esq.                          Barry Weprin, Esq.
Weintraub Tobin Chediak Coleman Grodin, Inc.  Milberg LLP
10250 Constellation Blvd., Suite 2900         One Pennsylvania Plaza, 50th Floor
Los Angeles, California 90067                 New York, NY 10019
F: (310) 550-7191                             F.: (212) 868-1229
mgelfand@weintraub.com                        bweprin@milberg.com

                                              Milberg LLP
                                              2850 Ocean Park Blvd. Suite 300
                                              Santa Monica, CA 90405
                                              F.: (212) 868-1229

If to the Stanley Chais Defendants, c/o:

Dennis F. Dunne, Esq.
Michael L. Hirschfeld, Esq.
Milbank, Tweed, Hadley & McCloy LLP
28 Liberty Street
New York, NY 10005
F:  (212) 530-5219
ddunne@milbank.com
mhirschfeld@milbank.com

If to the Chais Related Defendants, c/o:

Andrew H. Sherman, Esq.                       Steven J. Katzman, Esq.
Boris M. Mankovetskiy, Esq.                   Biernert, Miller & Katzman
Sills Cummis & Gross P.C.                      903 Calle Amancer, Suite 350
One Riverfront Plaza                          San Clemente, CA 92673
Newark, NJ 07102                              F:  (949-369-3700
F:  (973) 643-6500                            skatzman@bmkattorneys.com
asherman@sillscummis.com
bmankovetskiy@sillscummis.com

If to the Trustee, c/o:

David J. Sheehan, Esq.
Tracy Cole, Esq.
45 Rockefeller Plaza, 14th Floor
New York, NY 10111
F:  (212) 589-4201
dsheehan@bakerlaw.com
tcole@bakerlaw.com

[Signature pages follow]

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be executed as of the date first above written.

LEGHORN INVESTMENTS, LTD.
By: Robert Glusman, General Partner

BOTTLEBRUSH INVESTMENTS, L.P.
By: Pearl Gardner, President of Bottlebrush
Financial, Inc., General Partner

STEVEN HEIMOFF

DOUGLAS HALL

THE ESTATE OF STANLEY CHAIS
By: Pamela Chais, Executrix

PAMELA CHAIS

APPLEBY PRODUCTIONS LTD.
By: Pamela Chais, President

APPLEBY PRODUCTIONS LTD.
DEFINED CONTRIBUTION PLAN
By: Michael L. Hirschfeld, Esq., counsel of
record in the California Private Actions

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be executed as of the date first above written.

LEGHORN INVESTMENTS, LTD.
By: Robert Glusman, General Partner

BOTTLEBRUSH INVESTMENTS, L.P.
By: Pearl Gardner, President of Bottlebrush
Financial, Inc., General Partner

STEVEN HEIMOFF

DOUGLAS HALL

THE ESTATE OF STANLEY CHAIS
By: Pamela Chais, Executrix

PAMELA CHAIS

APPLEBY PRODUCTIONS LTD.
By: Pamela Chais, President

APPLEBY PRODUCTIONS LTD.
DEFINED CONTRIBUTION PLAN
By: Michael L. Hirschfeld, Esq., counsel of
record in the California Private Actions

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be executed as of the date first above written.

LEGHORN INVESTMENTS, LTD.
By: Robert Glusman, General Partner


BOTTLEBRUSH INVESTMENTS, L.P.
By: Pearl Gardner, President of Bottlebrush
Financial, Inc., General Partner


STEVEN HEIMOFF


DOUGLAS HAFT


THE ESTATE OF STANLEY CHAIS
By: Pamela Chais, Executrix


PAMELA CHAIS


APPLEBY PRODUCTIONS LTD.
By: Pamela Chais, President


APPLEBY PRODUCTIONS LTD.
DEFINED CONTRIBUTION PLAN
By: Michael L. Hirschfeld, Esq., counsel of
record in the California Private Actions


Page 22

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be executed as of the date first above written.


LEGHORN INVESTMENTS, LTD.
By: Robert Glusman, General Partner


BOTTLEBRUSH INVESTMENTS, L.P.
By: Pearl Gardner, President of Bottlebrush
Financial, Inc., General Partner

STEVEN HEIMOFF


DOUGLAS HALL


THE ESTATE OF STANLEY CHAIS
By: Pamela Chais, Executrix


PAMELA CHAIS


APPLEBY PRODUCTIONS LTD.
By: Pamela Chais, President


APPLEBY PRODUCTIONS LTD.
DEFINED CONTRIBUTION PLAN
By: Michael L. Hirschfeld, Esq., counsel of
record in the California Private Actions

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be executed as of the date first above written.

LEGHORN INVESTMENTS, LTD.
By: Robert Glusman, General Partner

BOTTLEBRUSH INVESTMENTS, L.P.
By: Pearl Gardner, President of Bottlebrush
Financial, Inc., General Partner

STEVEN HEIMOFF

DOUGLAS HALL

THE ESTATE OF STANLEY CHAIS
By: Pamela Chais, Executrix

PAMELA CHAIS

APPLEBY PRODUCTIONS LTD.
By: Pamela Chais, President

APPLEBY PRODUCTIONS LTD.
DEFINED CONTRIBUTION PLAN
By: Michael L. Hirschfeld, Esq., counsel of
record in the California Private Actions

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be executed as of the date first above written.

_____
LEGHORN INVESTMENTS, LTD.
By: Robert Glusman, General Partner


_____
BOTTLEBRUSH INVESTMENTS, L.P.
By: Pearl Gardner, President of Bottlebrush
Financial, Inc., General Partner


_____
STEVEN HEIMOFF


_____
DOUGLAS HALL


_____
THE ESTATE OF STANLEY CHAIS
By: Pamela Chais, Executrix


_____
PAMELA CHAIS


_____
APPLEBY PRODUCTIONS LTD.
By: Pamela Chais, President


_____
APPLEBY PRODUCTIONS LTD.
DEFINED CONTRIBUTION PLAN
By: Michael L. Hirschfeld, Esq., counsel of
record in the California Private Actions

APPLEBY PRODUCTIONS LTD.
MONEY PURCHASE PLAN
By: Michael L. Hirschfeld, Esq., counsel of
record in the California Private Actions

APPLEBY PRODUCTIONS LTD. PROFIT
SHARING PLAN
By: Michael L. Hirschfeld, Esq., counsel of
record in the California Private Actions

CHAIS INVESTMENTS, LTD.
By: William Chais, President, Onondaga,
Inc., its General Partner

CHAIS 1991 FAMILY TRUST (NOW
CONSISTING OF THE SURVIVOR'S
TRUST UNDER CHAIS 1991 FAMILY
TRUST DATED SEPTEMBER 4, 1991
AND THE MARITAL TRUST UNDER
CHAIS 1991 FAMILY TRUST DATED
SEPTEMBER 4, 1991)
By: Pamela Chais, Trustee

CHAIS FAMILY FOUNDATION
By: Pamela Chais, President

EMILY CHASALOW

MARK CHAIS

WILLIAM CHAIS

APPLEBY PRODUCTIONS LTD.
MONEY PURCHASE PLAN
By: Michael L. Hirschfeld, Esq., counsel of
record in the California Private Actions

APPLEBY PRODUCTIONS LTD. PROFIT
SHARING PLAN
By: Michael L. Hirschfeld, Esq., counsel of
record in the California Private Actions

CHAIS INVESTMENTS, LTD.
By: William Chais, President, Onondaga,
Inc., its General Partner

CHAIS 1991 FAMILY TRUST (NOW
CONSISTING OF THE SURVIVOR'S
TRUST UNDER CHAIS 1991 FAMILY
TRUST DATED SEPTEMBER 4, 1991
AND THE MARITAL TRUST UNDER
CHAIS 1991 FAMILY TRUST DATED
SEPTEMBER 4, 1991)
By: Pamela Chais, Trustee

CHAIS FAMILY FOUNDATION
By: Pamela Chais, President

EMILY CHASALOW

MARK CHAIS

WILLIAM CHAIS

APPLEBY PRODUCTIONS LTD.
MONEY PURCHASE PLAN
By: Michael L. Hirschfeld, Esq., counsel of
record in the California Private Actions


APPLEBY PRODUCTIONS LTD. PROFIT
SHARING PLAN
By: Michael L. Hirschfeld, Esq., counsel of
record in the California Private Actions


CHAIS INVESTMENTS, LTD.
By: William Chais, President, Onondaga,
Inc., its General Partner

CHAIS 1991 FAMILY TRUST (NOW
CONSISTING OF THE SURVIVOR'S
TRUST UNDER CHAIS 1991 FAMILY
TRUST DATED SEPTEMBER 4, 1991
AND THE MARITAL TRUST UNDER
CHAIS 1991 FAMILY TRUST DATED
SEPTEMBER 4, 1991)
By: Pamela Chais, Trustee

CHAIS FAMILY FOUNDATION
By: Pamela Chais, President

EMILY CHASALOW


MARK CHAIS


WILLIAM CHAIS

APPLEBY PRODUCTIONS LTD.
MONEY PURCHASE PLAN
By: Michael L. Hirschfeld, Esq., counsel of
record in the California Private Actions


APPLEBY PRODUCTIONS LTD. PROFIT
SHARING PLAN
By: Michael L. Hirschfeld, Esq., counsel of
record in the California Private Actions


CHAIS INVESTMENTS, LTD.
By: William Chais, President, Onondaga,
Inc., its General Partner


CHAIS 1991 FAMILY TRUST (NOW
CONSISTING OF THE SURVIVOR'S
TRUST UNDER CHAIS 1991 FAMILY
TRUST DATED SEPTEMBER 4, 1991
AND THE MARITAL TRUST UNDER
CHAIS 1991 FAMILY TRUST DATED
SEPTEMBER 4, 1991)
By: Pamela Chais, Trustee


CHAIS FAMILY FOUNDATION
By: Pamela Chais, President


EMILY CHASALOW


MARK CHAIS


WILLIAM CHAIS

Page 23

APPLEBY PRODUCTIONS LTD.
MONEY PURCHASE PLAN
By: Michael L. Hirschfeld, Esq., counsel of
record in the California Private Actions

APPLEBY PRODUCTIONS LTD. PROFIT
SHARING PLAN
By: Michael L. Hirschfeld, Esq., counsel of
record in the California Private Actions

CHAIS INVESTMENTS, LTD.
By: William Chais, President, Onondaga,
Inc., its General Partner

CHAIS 1991 FAMILY TRUST (NOW
CONSISTING OF THE SURVIVOR'S
TRUST UNDER CHAIS 1991 FAMILY
TRUST DATED SEPTEMBER 4, 1991
AND THE MARITAL TRUST UNDER
CHAIS 1991 FAMILY TRUST DATED
SEPTEMBER 4, 1991)
By: Pamela Chais, Trustee

CHAIS FAMILY FOUNDATION
By: Pamela Chais, President

EMILY CHASALOW

MARK CHAIS

WILLIAM CHAIS

_____

MICHAEL CHASALOW


_____

MIRI CHAIS


_____

WRENN CHAIS


_____

1994 TRUST FOR THE CHILDREN OF
STANLEY AND PAMELA CHAIS
By: William Chais, Trustee


_____

1996 TRUST FOR THE CHILDREN OF
STANLEY AND PAMELA CHAIS
By: William Chais, Trustee


_____

BLMIS ACCOUNT 1C1286, SUED
HEREIN AS 1999 TRUST FOR THE
CHILDREN OF STANLEY AND
PAMELA CHAIS
By: Steven J. Katzman, Esq., counsel of
record in the California Private Actions


_____

1999 TRUST FOR THE
GRANDCHILDREN OF STANLEY AND
PAMELA CHAIS
By: William Chais, Trustee


_____

EMILY CHAIS 1983 TRUST
By: Emily Chasalow, Trustee

MICHAEL CHASALOW
_____

MIRI CHAIS
_____


WRENN CHAIS
_____


1994 TRUST FOR THE CHILDREN OF
STANLEY AND PAMELA CHAIS
By: William Chais, Trustee


1996 TRUST FOR THE CHILDREN OF
STANLEY AND PAMELA CHAIS
By: William Chais, Trustee


BLMIS ACCOUNT 1C1286, SUED
HEREIN AS 1999 TRUST FOR THE
CHILDREN OF STANLEY AND
PAMELA CHAIS
By: Steven J. Katzman, Esq., counsel of
record in the California Private Actions


1999 TRUST FOR THE
GRANDCHILDREN OF STANLEY AND
PAMELA CHAIS
By: William Chais, Trustee


EMILY CHAIS 1983 TRUST
By: Emily Chasalow, Trustee

_____

MICHAEL CHASALOW


_____

MIRI CHAIS


_____

WRENN CHAIS


_____

1994 TRUST FOR THE CHILDREN OF
STANLEY AND PAMELA CHAIS
By: William Chais, Trustee


_____

1996 TRUST FOR THE CHILDREN OF
STANLEY AND PAMELA CHAIS
By: William Chais, Trustee


_____

BLMIS ACCOUNT 1C1286, SUED
HEREIN AS 1999 TRUST FOR THE
CHILDREN OF STANLEY AND
PAMELA CHAIS
By: Steven J. Katzman, Esq., counsel of
record in the California Private Actions


_____

1999 TRUST FOR THE
GRANDCHILDREN OF STANLEY AND
PAMELA CHAIS
By: William Chais, Trustee


_____

EMILY CHAIS 1983 TRUST
By: Emily Chasalow, Trustee


Page 24

_____

MICHAEL CHASALOW


_____

MIRI CHAIS


_____

WRENN CHAIS


_____

1994 TRUST FOR THE CHILDREN OF
STANLEY AND PAMELA CHAIS
By: William Chais, Trustee


_____

1996 TRUST FOR THE CHILDREN OF
STANLEY AND PAMELA CHAIS
By: William Chais, Trustee


_____

BLMIS ACCOUNT 1C1286, SUED
HEREIN AS 1999 TRUST FOR THE
CHILDREN OF STANLEY AND
PAMELA CHAIS
By: Steven J. Katzman, Esq., counsel of
record in the California Private Actions


_____

1999 TRUST FOR THE
GRANDCHILDREN OF STANLEY AND
PAMELA CHAIS
By: William Chais, Trustee


_____

EMILY CHAIS 1983 TRUST
By: Emily Chasalow, Trustee

_____
EMILY CHAIS TRUST NO. 1
By: Emily Chasalow, Trustee

_____
EMILY CHAIS TRUST NO. 2
By: Emily Chasalow, Trustee

_____
EMILY CHAIS TRUST NO. 3
By: Emily Chasalow, Trustee

_____
EMILY CHAIS ISSUE TRUST NO. 1
By: Emily Chasalow, Trustee

_____
EMILY CHAIS ISSUE TRUST NO. 2
By: Emily Chasalow, Trustee

_____
MARK HUGH CHAIS TRUST NO. 1
By: Mark Chais, Trustee

_____
MARK HUGH CHAIS TRUST NO. 2
By: Mark Chais, Trustee

_____
MARK HUGH CHAIS TRUST NO. 3
By: Mark Chais, Trustee

_____
MARK HUGH CHAIS ISSUE TRUST
NO. 1
By: Mark Chais, Trustee

_____

EMILY CHAIS TRUST NO. 1
By: Emily Chasalow, Trustee


_____

EMILY CHAIS TRUST NO. 2
By: Emily Chasalow, Trustee


_____

EMILY CHAIS TRUST NO. 3
By: Emily Chasalow, Trustee


_____

EMILY CHAIS ISSUE TRUST NO. 1
By: Emily Chasalow, Trustee


_____

EMILY CHAIS ISSUE TRUST NO. 2
By: Emily Chasalow, Trustee

_____

MARK HUGH CHAIS TRUST NO. 1
By: Mark Chais, Trustee

_____

MARK HUGH CHAIS TRUST NO. 2
By: Mark Chais, Trustee

_____

MARK HUGH CHAIS TRUST NO. 3
By: Mark Chais, Trustee

_____

MARK HUGH CHAIS ISSUE TRUST
NO. 1
By: Mark Chais, Trustee

_____

MARK HUGH CHAIS ISSUE TRUST
NO. 2
By: Mark Chais, Trustee

_____

MARK HUGH CHAIS 1983 TRUST
By: Mark Chais, Trustee

_____

WILLIAM FREDERICK CHAIS TRUST
NO. 1
By: William Chais, Trustee

_____

WILLIAM FREDERICK CHAIS TRUST
NO. 2
By: William Chais, Trustee

_____

WILLIAM FREDERICK CHAIS TRUST
NO. 3
By: William Chais, Trustee

_____

WILLIAM FREDERICK CHAIS ISSUE
TRUST NO. 1
By: William Chais, Trustee

_____

WILLIAM FREDERICK CHAIS ISSUE
TRUST NO. 2
By: William Chais, Trustee

_____

WILLIAM FREDERICK CHAIS 1983
TRUST
By: William Chais, Trustee

MARK HUGH CHAIS ISSUE TRUST
NO. 2
By: Mark Chais, Trustee

MARK HUGH CHAIS 1983 TRUST
By: Mark Chais, Trustee

WILLIAM FREDERICK CHAIS TRUST
NO. 1
By: William Chais, Trustee

WILLIAM FREDERICK CHAIS TRUST
NO. 2
By: William Chais, Trustee

WILLIAM FREDERICK CHAIS TRUST
NO. 3
By: William Chais, Trustee

WILLIAM FREDERICK CHAIS ISSUE
TRUST NO. 1
By: William Chais, Trustee

WILLIAM FREDERICK CHAIS ISSUE
TRUST NO. 2
By: William Chais, Trustee

WILLIAM FREDERICK CHAIS 1983
TRUST
By: William Chais, Trustee

Page 26

_____
THE WILLIAM AND WRENN CHAIS
1994 FAMILY TRUST
By: William Chais, Trustee


_____
ARI CHAIS 1999 TRUST
By: Mark Chais, Trustee


_____
ARI CHAIS TRANSFEREE TRUST NO. 1
By: Mark Chais, Trustee


_____
BENJAMIN PAUL CHASALOW 1999
TRUST
By: Emily Chasalow, Trustee


_____
BENJAMIN PAUL CHASALOW
TRANSFEREE TRUST NO. 1
By: Emily Chasalow, Trustee

_____
CHLOE FRANCES CHAIS 1994 TRUST
By: William Chais, Trustee

_____
CHLOE FRANCES CHAIS TRANSFEREE
TRUST NO. 1
By: William Chais, Trustee

_____
JONATHAN WOLF CHAIS 1996 TRUST
By: William Chais, Trustee


Page 27

THE WILLIAM AND WRENN CHAIS
1994 FAMILY TRUST
By: William Chais, Trustee

_____

ARI CHAIS 1999 TRUST
By: Mark Chais, Trustee

_____

ARI CHAIS TRANSFEREE TRUST NO. 1
By: Mark Chais, Trustee

_____

BENJAMIN PAUL CHASALOW 1999
TRUST
By: Emily Chasalow, Trustee

_____

BENJAMIN PAUL CHASALOW
TRANSFEREE TRUST NO. 1
By: Emily Chasalow, Trustee

_____

CHLOE FRANCES CHAIS 1994 TRUST
By: William Chais, Trustee

_____

CHLOE FRANCES CHAIS TRANSFEREE
TRUST NO. 1
By: William Chais, Trustee

_____

JONATHAN WOLF CHAIS 1996 TRUST
By: William Chais, Trustee

THE WILLIAM AND WRENN CHAIS
1994 FAMILY TRUST
By: William Chais, Trustee


ARI CHAIS 1999 TRUST
By: Mark Chais, Trustee


ARI CHAIS TRANSFEREE TRUST NO. 1
By: Mark Chais, Trustee

*Emily Chasalow*

BENJAMIN PAUL CHASALOW 1999
TRUST
By: Emily Chasalow, Trustee

*Emily Chasalow*

BENJAMIN PAUL CHASALOW
TRANSFEREE TRUST NO. 1
By: Emily Chasalow, Trustee


CHLOE FRANCES CHAIS 1994 TRUST
By: William Chais, Trustee


CHLOE FRANCES CHAIS TRANSFEREE
TRUST NO. 1
By: William Chais, Trustee


JONATHAN WOLF CHAIS 1996 TRUST
By: William Chais, Trustee

_____

JONATHAN CHAIS TRANSFEREE
TRUST NO. 1
By: William Chais, Trustee


_____

JUSTIN ROBERT CHASALOW 1999
TRUST
By: Emily Chasalow, Trustee


_____

JUSTIN ROBERT CHASALOW
TRANSFEREE TRUST NO. 1
By: Emily Chasalow, Trustee

_____

MADELINE CELIA CHAIS 1992 TRUST
By: William Chais, Trustee

_____

MADELINE CHAIS TRANSFEREE
TRUST NO. 1
By: William Chais, Trustee


_____

RACHEL ALLISON CHASALOW 1999
TRUST
By: Emily Chasalow, Trustee


_____

RACHEL ALLISON CHASALOW
TRANSFEREE TRUST NO. 1
By: Emily Chasalow, Trustee


_____

TALI CHAIS 1997 TRUST
By: Mark Chais, Trustee


Page 28

JONATHAN CHAIS TRANSFEREE
TRUST NO. 1
By: William Chais, Trustee


JUSTIN ROBERT CHASALOW 1999
TRUST
By: Emily Chasalow, Trustee


JUSTIN ROBERT CHASALOW
TRANSFEREE TRUST NO. 1
By: Emily Chasalow, Trustee


MADELINE CELIA CHAIS 1992 TRUST
By: William Chais, Trustee


MADELINE CHAIS TRANSFEREE
TRUST NO. 1
By: William Chais, Trustee


RACHEL ALLISON CHASALOW 1999
TRUST
By: Emily Chasalow, Trustee


RACHEL ALLISON CHASALOW
TRANSFEREE TRUST NO. 1
By: Emily Chasalow, Trustee


TALI CHAIS 1997 TRUST
By: Mark Chais, Trustee

_____

JONATHAN CHAIS TRANSFEREE
TRUST NO. 1
By: William Chais, Trustee


_____

JUSTIN ROBERT CHASALOW 1999
TRUST
By: Emily Chasalow, Trustee


_____

JUSTIN ROBERT CHASALOW
TRANSFEREE TRUST NO. 1
By: Emily Chasalow, Trustee


_____

MADELINE CELIA CHAIS 1992 TRUST
By: William Chais, Trustee


_____

MADELINE CHAIS TRANSFEREE
TRUST NO. 1
By: William Chais, Trustee


_____

RACHEL ALLISON CHASALOW 1999
TRUST
By: Emily Chasalow, Trustee


_____

RACHEL ALLISON CHASALOW
TRANSFEREE TRUST NO. 1
By: Emily Chasalow, Trustee


_____

TALI CHAIS 1997 TRUST
By: Mark Chais, Trustee

_(signature)_

TALI CHAIS TRANSFEREE TRUST
NO. 1
By: Mark Chais, Trustee

_(signature)_

UNICYCLE TRADING COMPANY
By: Mark Chais, President of Unicycle
Corp., its General Partner

_(signature)_

UNICYCLE CORP.
By: Mark Chais, President


UNICYCLE CORPORATION MONEY
PURCHASE PLAN
By: Steven J. Katzman, Esq., counsel of
record in the California Private Actions


ONONDAGA, INC.
By: William Chais, President


THE ONONDAGA, INC. MONEY
PURCHASE PLAN
By: Steven J. Katzman, Esq., counsel of
record in the California Private Actions


THE ONONDAGA, INC. DEFINED
BENEFIT PENSION PLAN
By: Steven J. Katzman, Esq., counsel of
record in the California Private Actions


CHAIS MANAGEMENT, INC.
By: William Chais, President

Page 29

TALI CHAIS TRANSFEREE TRUST
NO. 1
By: Mark Chais, Trustee


UNICYCLE TRADING COMPANY
By: Mark Chais, President of Unicycle
Corp., its General Partner


UNICYCLE CORP.
By: Mark Chais, President


UNICYCLE CORPORATION MONEY
PURCHASE PLAN
By: Steven J. Katzman, Esq., counsel of
record in the California Private Actions


ONONDAGA, INC.
By: William Chais, President


THE ONONDAGA, INC. MONEY
PURCHASE PLAN
By: Steven J. Katzman, Esq., counsel of
record in the California Private Actions


THE ONONDAGA, INC. DEFINED
BENEFIT PENSION PLAN
By: Steven J. Katzman, Esq., counsel of
record in the California Private Actions


CHAIS MANAGEMENT, INC.
By: William Chais, President

TALI CHAIS TRANSFEREE TRUST
NO. 1
By: Mark Chais, Trustee


UNICYCLE TRADING COMPANY
By: Mark Chais, President of Unicycle
Corp., its General Partner


UNICYCLE CORP.
By: Mark Chais, President


UNICYCLE CORPORATION MONEY
PURCHASE PLAN
By: Steven J. Katzman, Esq., counsel of
record in the California Private Actions


ONONDAGA, INC.
By: William Chais, President


THE ONONDAGA, INC. MONEY
PURCHASE PLAN
By: Steven J. Katzman, Esq., counsel of
record in the California Private Actions


THE ONONDAGA, INC. DEFINED
BENEFIT PENSION PLAN
By: Steven J. Katzman, Esq., counsel of
record in the California Private Actions


CHAIS MANAGEMENT, INC.
By: William Chais, President

CHAIS MANAGEMENT LTD.
By: William Chais, President, Chais
Management, Inc., its General Partner

CHAIS VENTURE HOLDINGS
By: William Chais, President

IN WITNESS WHEREOF, the Trustee hereby signs onto and agrees to be bound by
Sections 1, 2, 9 - 26, as of the date first above written.

IRVING H. PICARD, Trustee for the
liquidation proceedings of Bernard L.
Madoff Investment Securities LLC and the
substantively consolidated Chapter 7 estate
of Bernard L. Madoff

CHAIS MANAGEMENT LTD.
By: William Chais, President, Chais
Management, Inc., its General Partner


CHAIS VENTURE HOLDINGS
By: William Chais, President


IN WITNESS WHEREOF, the Trustee hereby signs onto and agrees to be bound by
Sections 1, 2, 9 - 26, as of the date first above written.


IRVING H. PICARD, Trustee for the
liquidation proceedings of Bernard L.
Madoff Investment Securities LLC and the
substantively consolidated Chapter 7 estate
of Bernard L. Madoff

## EXHIBIT 1

1  WEINTRAUB TOBIN CHEDIAK COLEMAN
   GRODIN LAW CORPORATION
2  Marvin Gelfand (SBN 53586)
   mgelfand@weintraub.com
3  10250 Constellation Blvd., Suite 2900
   Los Angeles, California 90067
4  Telephone: (310) 858-7888
   Fax:        (310) 550-7191
5
   *Attorneys for Plaintiff and Cross Defendant*
6  *Bottlebrush Investments, L.P. and Leghorn*
   *Investments, Ltd.*
7
   MILBERG LLP                              SEEGER WEISS LLP
8  2850 Ocean Park Blvd. Suite 300          STEPHEN A. WEISS (*pro hac vice*)
   Santa Monica, CA 90405                   sweiss@seegerweiss.com
9  Telephone: (213) 617-1200               CHRISTOPHER M. VAN de KIEFT (*pro hac vice*)
   Fax:        (212) 868-1229               cvandekieft@seegerweiss.com
10                                          One William Street
                                            New York, NY 10004
11                                          Telephone: (212) 584-0700
                                            Fax:        (212) 584-0799
12 MILBERG LLP
   BARRY WEPRIN (*pro hac vice*)
13 bweprin@milberg.com
   JOSHUA KELLER (*pro hac vice*)
14 jkeller@milberg.com
   One Pennsylvania Plaza, 50th Floor
15 New York, NY 10119
   Telephone: (212) 594-5300
16 Fax:        (212) 868-1229

17 [Additional Counsel on Signature Page]

18 *Attorneys for Plaintiffs Douglas Hall and Steven Heimoff*

19
              SUPERIOR COURT OF THE STATE OF CALIFORNIA
20
              COUNTY OF LOS ANGELES, CENTRAL DISTRICT
21

| 22 | BOTTLEBRUSH INVESTMENTS, L.P., a California limited partnership, | CASE No. BC 407967 |
|---|---|---|
| 23 | Plaintiff, | Assigned for All Purposes to the Honorable Elizabeth Allen White, Department 48 |
| 24 | v. | |
| 25 | THE LAMBETH COMPANY, a California limited partnership, et al., | **NOTICE OF PROPOSED SETTLEMENT OF DERIVATIVE ACTIONS AND OF SETTLEMENT HEARING** |
| 26 | Defendants. | |
| 27 | | |
| 28 | **CONSOLIDATED WITH:** | CASE NO.: BC 408661 |

1  LEGHORN INVESTMENTS, LTD., a
   California limited partnership,

2                                              [Related to Case Nos. BC 409548,
                                               BC 413821, BC 413820 BC 422257 and
3              Plaintiff,                       BC 456932]

4          v.

   BRIGHTON INVESTMENTS, LTD., a
5  California limited partnership, et al,

6              Defendants.

7
   AND RELATED CROSS-ACTIONS
8

9

10 DOUGLAS HALL, as Co-Trustee of the         ) Lead Case No.  BC413820
   VIVIAN H. HALL IRA and Derivatively on     ) Consolidated with: BC413821
11 Behalf of CRESCENT SECURITIES,             )
                                              ) [Related to Case Nos. BC404557, BC404557,
12             Plaintiff,                      ) BC407721, BC407967, BC408661, BC409658,
                                              ) BC422257 and BC422258]
13         vs.                                 )

14 PAMELA CHAIS as executor of the estate of  )
   STANLEY CHAIS, et al.                       )
15                     Defendants,             )

16         and                                 )

17 THE POPHAM COMPANY,                        )

18         First Nominal Defendant,            )

19         and                                 )

20 MARLOMA SECURITIES,                        )

21         Second Nominal Defendant.           )

22         **AND**                             )

23 STEVEN HEIMOFF, as Trustee of the          )
   STEVEN HEIMOFF IRA and Derivatively on     )
24 behalf of MARLOMA SECURITIES,              )

25             Plaintiff,                      )

26         vs.                                 )

27 PAMELA CHAIS as executor of the estate of  )
   STANLEY CHAIS, et al,                       )
28



1       Defendants,          )

2       and          )

3 THE POPHAM COMPANY,   )

4       First Nominal Defendant,  )

5       and         )

6 MARLOMA SECURITIES,    )

7       Second Nominal Defendant.  )

8                    )

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

**NOTICE OF PENDENCY AND PROPOSED SETTLEMENT OF DERIVATIVE LITIGATION**

3

TO:   ALL PARTNERS OF THE LAMBETH COMPANY; THE POPHAM COMPANY; AND BRIGHTON INVESTMENTS (THE "CALIFORNIA LIMITED PARTNERSHIPS") AND ALL PARTNERS OF MARLOMA SECURITIES AND CRESCENT SECURITIES (THE "SUB-PARTNERSHIPS"), AND ALL PARTNERS OF ANY PARTNERSHIP (IN ADDITION TO THE SUB-PARTNERSHIPS) THAT WAS A LIMITED PARTNER OF THE CALIFORNIA LIMITED PARTNERSHIPS.

4

5

6

7

**THIS NOTICE RELATES TO A PROPOSED SETTLEMENT OF FOUR DERIVATIVE ACTIONS AND CLAIMS ASSERTED THEREIN.   LIMITED PARTNERS OF THE CALIFORNIA LIMITED PARTNERSHIPS, PARTNERS OF THE SUB-PARTNERSHIPS, AND PARTNERS OF ANY PARTNERSHIP (IN ADDITION TO THE SUB-PARTNERSHIPS) THAT WAS A LIMITED PARTNER OF THE CALIFORNIA LIMITED PARTNERSHIPS ARE ENTITLED TO OBJECT, IF THEY DESIRE, TO THE SETTLEMENT OF THE DERIVATIVE CLAIMS AS DESCRIBED HEREIN.    IF THE COURT APPROVES THE DERIVATIVE SETTLEMENT, YOU WILL BE BARRED FROM CONTESTING THE FAIRNESS, REASONABLENESS OR ADEQUACY OF THE PROPOSED SETTLEMENT, AND FROM PURSUING THE SETTLED DERIVATIVE CLAIMS.**

8

9

10

11

12

13

14

**ALL PARTNERSHIPS THAT WERE LIMITED PARTNERS OF ANY OF THE CALIFORNIA LIMITED PARTNERSHIPS ARE HEREBY REQUESTED TO FORWARD A COPY OF THIS NOTICE TO THEIR PARTNERS AT THEIR LAST KNOWN ADDRESSES.**

15

16

17

**PLEASE READ THIS NOTICE CAREFULLY AND IN ITS ENTIRETY.
YOUR RIGHTS WILL BE AFFECTED BY THIS LITIGATION AND SETTLEMENT.**

18

19

20

1.       The purpose of this Notice is to inform you about:  (i) the pendency of the above-captioned lawsuits (the "Litigation" or "Plaintiffs' Actions"), which were brought derivatively by Plaintiffs Leghorn Investments, Ltd. ("Leghorn") on behalf of Brighton Investments; Bottlebrush Investments, LP ("Bottlebrush") on behalf of the Lambeth Company;  Steven Heimoff as Trustee of the Steven Heimoff IRA ("Heimoff") on behalf of both the Popham Company and Marloma Securities, a limited partnership formed for the sole purpose of investing in the Popham Company; and Douglas Hall as co-trustee for the Vivian Hall IRA ("Hall") on behalf of the Lambeth Company and Crescent Securities,[1] a limited partnership formed for the sole purpose of investing in the Lambeth Company ("Plaintiffs") in the Superior Court of California, County of Los Angeles (the "Court"); (ii) a proposed settlement of Plaintiffs' Actions (the "Settlement"), subject to Court approval, as provided in a Settlement Agreement (the "Agreement") that was

21

22

23

24

25

26

----

27

[1]  Marloma Securities and Crescent Securities are the "Sub-Partnerships."

28

filed with the Court and is available for review at _____; and (iii) the hearing that the Court will hold on _____, 2016 to determine whether to approve the Settlement ("Settlement Hearing"), to consider Plaintiffs' counsels'[2] application for an award of attorneys' fees and for reimbursement of litigation expenses incurred in the prosecution of Plaintiffs' Actions, and application for incentive awards for Douglas Hall, Steven Heimoff, Pearl Gardner, President of Bottlebrush Financial, Inc., general partner of Bottlebrush, and Robert Glusman, general partner of Leghorn (the "Individual Plaintiffs").[3]

2.    The Agreement was entered into as of October 19, 2016, by and among the following: (a) Plaintiffs; (b) the Stanley Chais Defendants;[4] (c) the Chais Related Defendants;[5]

---

[2]  Milberg LLP is counsel to Hall and Heimoff and Weintraub Tobin Chediak Coleman Grodin, Inc. is counsel to Bottlebrush and Leghorn.

[3]  All capitalized terms not otherwise defined in this Notice shall have the meaning provided in the Agreement.

[4]  The Stanley Chais Defendants are the Estate of Stanley Chais; Pamela Chais; Appleby Productions Ltd.; the now-defunct defined contribution plan formerly known as Appleby Productions Ltd. Defined Contribution Plan; the now-defunct money purchase plan formerly known as Appleby Productions Ltd. Money Purchase Plan; the now-defunct profit sharing plan formerly known as Appleby Productions Ltd. Profit Sharing Plan; Chais Investments, Ltd.; Chais 1991 Family Trust (now consisting of the Survivor's Trust under Chais 1991 Family Trust dated September 4, 1991 and the Marital Trust under Chais 1991 Family Trust dated September 4, 1991); and Chais Family Foundation.

[5]  The Chais Related Defendants are Emily Chasalow; Mark Chais; William Chais; Michael Chasalow (who was dismissed as a defendant from the Plaintiffs' Actions but is included in the definition of Chais Related Defendants for definitional convenience); Miri Chais, referred to in the complaint in the Trustee's Action (defined below, in Paragraph 9) (the "Trustee Complaint") as Mirie Chais (who was dismissed as a defendant from the Plaintiffs' Actions but is included in the definition of Chais Related Defendants for definitional convenience); Wrenn Chais; 1994 Trust for the Children of Stanley and Pamela Chais; 1996 Trust for the Children of Stanley and Pamela Chais, referred to in the Trustee Complaint as The 1996 Trust for the Children of Pamela Chais And Stanley Chais; BLMIS Account 1C1286, sued in the Trustee Complaint as The 1999 Trust for the Children of Stanley and Pamela Chais; 1999 Trust for the Grandchildren of Stanley and Pamela Chais; Emily Chais 1983 Trust; Emily Chais Trust No. 1, Emily Chais Trust No. 2, and Emily Chais Trust No. 3, referred to collectively in the Trustee Complaint as The Emily Chais Trust; Emily Chais Issue Trust No. 1 and Emily Chais Issue Trust No. 2, referred to collectively in the Trustee Complaint as The Emily Chais Issue Trust; Mark Hugh Chais Trust No. 1, Mark Hugh Chais Trust No. 2, and Mark Hugh Chais Trust No. 3, referred to collectively in the Trustee Complaint as The Mark Hugh Chais Trust; Mark Hugh Chais Issue Trust No. 1 and Mark Hugh Chais Issue Trust No. 2, referred to collectively in the Trustee Complaint as The Mark Hugh Chais Issue Trust; Mark Hugh Chais 1983 Trust; William Frederick Chais Trust No. 1, William Frederick Chais Trust No. 2, and William Frederick Chais Trust No. 3, referred to collectively in the Trustee Complaint as The William Frederick Chais Trust; William Frederick Chais Issue Trust No. 1 and William Frederick Chais Issue Trust No. 2, referred to collectively in the Trustee Complaint as The William F. Chais Issue Trust; William Frederick Chais 1983 Trust; The William and Wrenn Chais 1994 Family Trust; Ari Chais 1999 Trust; Ari Chais Transferee Trust No. 1, referred to in the Trustee Complaint as The Ari Chais Transferee #1 Trust; Benjamin Paul Chasalow 1999 Trust; Benjamin Paul Chasalow Transferee Trust No. 1, referred to in the Trustee Complaint as The Benjamin Paul Chasalow Transferee #1 Trust; Chloe Frances Chais 1994 Trust, referred to in the Trustee Complaint as The Chloe Francis Chais 1994 Trust; Chloe Frances Chais Transferee Trust No. 1, referred to in the Trustee Complaint as The Chloe Francis Chais Transferee #1 Trust; Jonathan Wolf Chais 1996 Trust, referred to in the Trustee Complaint as The Jonathan Wolf Chais Trust; Jonathan Chais Transferee Trust No. 1, referred to in the Trustee Complaint as The Jonathan Chais Transferee #1 Trust; Justin Robert Chasalow 1999 Trust; Justin Robert Chasalow Transferee Trust No. 1, referred to in the Trustee Complaint as The Justin Robert Chasalow Transferee #1 Trust; Madeline Celia Chais 1992 Trust; Madeline Chais Transferee Trust No. 1, referred to in the Trustee Complaint as The Madeline Chais Transferee #1 Trust; Rachel Allison Chasalow 1999 Trust; Rachel Allison Chasalow Transferee Trust No. 1, referred to in the Trustee Complaint as The Rachel Allison Chasalow Transferee #1 Trust; Tali Chais 1997 Trust; Tali Chais Transferee Trust No. 1, referred to in the Trustee Complaint as The Tali

---

NOTICE OF PROPOSED SETTLEMENT OF
DERIVATIVE ACTIONS AND OF SETTLEMENT
HEARING
Case No. _____

(collectively, the "Parties" or "Settling Parties"); and (d) subject to the express limitations more fully set forth in the Agreement, Irving H. Picard, in his capacity as trustee (the "Trustee") under the Securities Investor Protection Act of 1970 ("SIPA"), 15 U.S.C. §§ 78aaa *et seq.*, as amended, for the liquidation of the business of Bernard L. Madoff Investment Securities LLC ("BLMIS") and the substantively consolidated Chapter 7 estate of Bernard L. Madoff ("Madoff"), subject to the approval of the Court.[6]

3.    The following description of the Litigation and Settlement does not constitute findings of the Court.  It is based on statements of the Plaintiffs and/or Defendants and should not be understood as an expression of any opinion of the Court as to the merits of any of the claims or defenses raised by any of the Parties.  The Court has not yet approved the Settlement.

**WHAT IS THE PURPOSE OF THIS NOTICE?**

4.    The purpose of this Notice is to explain the Litigation, the terms of the Settlement, and how the Settlement affects your legal rights, as a partner of the California Limited Partnership(s) and/or partner of the Sub-Partnership(s) (collectively, the "Limited Partners") and/or partner of any partnership (in addition to the Sub-Partnerships) that was a limited partner of the California Limited Partnerships.

5.    In a derivative action, one or more people and/or entities who are current partners of a partnership sue on behalf of and for the benefit of the partnership, seeking to enforce the partnership's legal rights.

6.    As described more fully below, you have the right to object to the Settlement, the application by Plaintiffs' counsel for an award of attorneys' fees and reimbursement of expenses, and the application for incentive awards for the Individual Plaintiffs.  You have the right to appear and be heard at the Settlement Hearing, which will be held on _____, 2016, at __:__ _.m., before the Honorable Elizabeth A. White, at the Superior Court of California, 5th Floor, Stanley Mosk Courthouse, 111 North Hill Street, Dept. 48, Los Angeles, CA 90012.  At the Settlement Hearing, the Court will determine whether:

a.    The Settlement should be approved;

b.    Plaintiffs' Actions and all claims, including any counterclaims, asserted by or against any of the Settling Parties therewith, should be dismissed with prejudice as set forth in the Agreement;

c.    Plaintiffs' counsels' request for an award of attorneys' fees and reimbursement of expenses should be approved by the Court; and

---

Chais Transferee #1 Trust; Unicycle Trading Company; Unicycle Corp., individually and as the General Partner of Unicycle Trading Company; the now-defunct money purchase plan formerly known as Unicycle Corporation Money Purchase Plan; Onondaga, Inc., individually and as General Partner of Chais Investments Ltd.; the now-defunct money purchase plan formerly known as The Onondaga, Inc. Money Purchase Plan; the now-defunct defined benefit pension plan formerly known as The Onondaga, Inc. Defined Benefit Pension Plan; Chais Management, Inc., individually and as General Partner of Chais Management Ltd.; Chais Management Ltd.; and Chais Venture Holdings.

[6]  Collectively, the Stanley Chais Defendants and the Chais Related Defendants are the "Defendants".

---

   d. Plaintiffs' counsels' request for an incentive award for the Individual Plaintiffs should be approved by the Court.

## WHAT ARE THESE CASES ABOUT?

  7. In 2009, the Plaintiffs filed separate derivative actions against Chais,[7] among others, seeking recovery of funds lost as a result of Madoff Ponzi scheme, and alleging, among other things, breach of fiduciary duty, breach of contract, negligence, fraud, unjust enrichment and fraudulent conveyance.

  8. In 2009, the California Attorney General (the "CAAG") filed suit against Chais for alleged wrongful conduct arising from Chais's investments in the Madoff Ponzi scheme, *The People of the State of California v. Chais, et al.*, Case No. BC422257 (the "CAAG Action"). Like with the Plaintiffs' Actions, the CAAG Action seeks to recover from the Estate of Stanley Chais the fees Chais was paid by investors in the California Limited Partnerships and seeks from Chais the full restitution of the principal investments made into the California Limited Partnerships. Although the CAAG Action sought administrative relief unavailable in the Plaintiffs' Actions, unlike the Plaintiffs' Actions, however, the CAAG Action does not seek to recover profits from the investments in the California Limited Partnerships and the Sub-Partnerships. Furthermore, the CAAG Action names only a single specific defendant, the Estate of Stanley Chais. The Plaintiffs' Actions, on the other hand, name numerous individuals and entities, in addition to the Chais Estate, such as the Chais Related Defendants. The Plaintiffs' Actions, therefore, seek to recover assets due to Chais's alleged wrongful conduct from more individuals and entities than the CAAG Action.

  9. The Trustee, in 2009, prior to the filing of the Plaintiffs' Actions, in connection with the BLMIS liquidation proceeding pending in the Bankruptcy Court for the Southern District of New York, filed an action in the same court against Defendants, *Picard v. Stanley Chais, et al.*, Adv. Pro. No. 09-1172 (SMB), (the "Trustee Action") seeking to recover alleged fraudulent transfers to the Defendants. The Plaintiffs' Actions substantially overlap with the Trustee Action in both the claims and named defendants, but unlike the CAAG Action, seeks recovery from the Chais Related Defendants.

  10. The Defendants have denied the claims asserted against them, disclaim any liability or damages, and deny that they or Chais engaged in any wrongdoing or violation of law of any kind whatsoever. Accordingly, the Settlement may not be construed as an admission of the Defendants' or Chais' wrongdoing, nor construed or deemed to be evidence of or an admission or concession on the part of any Defendant or with respect to Chais regarding the merits of any claim, nor of any infirmity in the defenses that the Defendants or Chais have, or could have, asserted in this Litigation. Likewise, the Settlement shall in no event be construed or deemed to be evidence of or an admission or concession on the part of any Plaintiffs of any infirmity in the claims that Plaintiffs have, or could have, asserted.

  11. Since Plaintiffs' Actions were filed in 2009, the parties to the Litigation have engaged in extensive discovery and motion practice before the Court. Collectively, the parties produced many thousands of pages of documents during the course of the Litigation. In

---

[7] Plaintiffs also filed amended complaints which, after Chais passed away, named, among other defendants, Pamela Chais as executor of the Estate of Stanley Chais (the "Chais Estate").

addition, Plaintiffs took and defended numerous depositions, including Chais's deposition taken over the course of nine sessions in January, March, and April 2010. Chais passed away in the fall of 2010. The Estate of Stanley Chais was thereafter substituted as a defendant in the Adversary Proceeding, the Plaintiffs' Actions, the CAAG Action, and the Trustee Action.

12. During the Litigation, certain of the Defendants, including all of the Chais Related Defendants, argued in demurrers filed with the Court, that certain claims brought by the Plaintiffs should be dismissed because those claims are barred by the automatic stay imposed by the United States Bankruptcy Code and belong to the Trustee. Plaintiffs opposed this argument. Initially, the Court granted the demurrers, with leave to amend the complaints. Amended complaints were then filed, and additional demurrers were filed challenging the amended complaints.

13. On January 4, 2012, prior to the Court ruling on the demurrers to the amended complaints, the Trustee filed an adversary proceeding in the Bankruptcy Court for the Southern District of New York against Plaintiffs and the CAAG, seeking to enjoin them from continuing to litigate the actions they filed in this Court, on the ground that the automatic stay applied to or should be extended to both the Plaintiffs' Actions and the CAAG Action (the "Injunctive Adversary Proceeding"). In addition to filing the Injunctive Adversary Proceeding, the Trustee filed an application with the Bankruptcy Court (the "Application") seeking an order to enforce the automatic stay and immediately preclude both the Plaintiffs' Actions and the CAAG Action from going forward.

14. Numerous briefs were filed in connection with the Trustee's Application, and a hearing was set for July 2012 for argument on the Trustee's Application. At that hearing, the Bankruptcy Court, rather than rule on the Trustee's Application, referred the matter to mediation. Since August 2012, the Trustee, the CAAG, the Plaintiffs, the Stanley Chais Defendants and the Chais Related Defendants engaged in multiple mediation conferences and related mediation communications with the Hon. James L. Garrity, Jr., at that time retired from the United States Bankruptcy Court for the Southern District of New York, as mediator.

15. During and after these communications, the Plaintiffs engaged in discussions and negotiations regarding a resolution of Plaintiffs' Actions and the Trustee's Injunctive Adversary Proceeding against Plaintiffs. These negotiations led to the Agreement, which will resolve all claims made in connection with the Plaintiffs' Actions and the Trustee's Injunctive Adversary Proceeding against Plaintiffs. The negotiations also resolved the Trustee Action (the "Trustee Agreement"), the CAAG Action, and the Trustee's Injunctive Adversary Proceeding against the CAAG (the "CAAG Agreement").[8]

16. Pursuant to the Trustee Agreement, the Stanley Chais Defendants have agreed to turn over to the Trustee substantially all of their assets, and the Chais Related Defendants have agreed to pay to the Trustee an amount equal to their two-year transfers from their BLMIS accounts, as determined by the Trustee.[9]

---

[8] The CAAG Settlement Agreement can be obtained at www.weintraub.com and www.milberg.com.

[9] The Trustee Agreement can be obtained at www.weintraub.com and www.milberg.com.

NOTICE OF PROPOSED SETTLEMENT OF DERIVATIVE ACTIONS AND OF SETTLEMENT HEARING
Case No. _____

17.    Pursuant to the CAAG Agreement, a fund will be created for compensating the investors in the California Limited Partnerships, the Sub-Partnerships and/or any partnership (in addition to the Sub-Partnerships) that was a limited partner of the California Limited Partnerships (the "Restitution Fund"), in the amount of Fifteen Million Dollars ($15,000,000), to be funded in part through concessions by the Trustee and in part by contributions by certain of the Defendants in consideration for, *inter alia*, (i) the termination of the CAAG Action, (ii) resolution of all disputes between the Trustee and the Attorney General relating to the assets of Stanley Chais and the Estate of Stanley Chais; and (iii) releases by Restitution Fund Claimants (as defined in the CAAG Agreement) in favor of the Defendants and certain of their affiliates, agents and other related parties.

18.    On _____, the Bankruptcy Court entered an order approving and authorizing the Trustee (to the extent necessary) to enter into the Agreement, Trustee Agreement and CAAG Agreement.

19.    The Plaintiffs believe, based upon their investigation and discovery thus far, that the claims asserted in this Litigation have merit.  However, Plaintiffs and their counsel are mindful of the inherent problems of proof of, and possible defenses to, the allegations asserted in this Litigation, and recognize and acknowledge the expense and length of continued proceedings necessary to prosecute this Litigation through trial and through anticipated appeals.  Plaintiffs and their counsel also have taken into account the uncertain outcome and the risk of any litigation, especially in complex actions such as the derivative litigation of this type, as well as the difficulties and delays inherent in such litigation.  Under the circumstances, Plaintiffs and their counsel have concluded that the terms and conditions of the Settlement Agreement are fair, reasonable and adequate to the California Limited Partnerships and the Sub-Partnerships, and in their best interests, and have agreed to settle the claims raised in this Litigation pursuant to the terms and provisions of Agreement, after considering (i) the substantial benefits that the California Limited Partnerships and the Sub-Partnerships will receive from resolution of this Litigation on the terms set forth in the Agreement, including but not limited to releases by the Trustee for any potential clawback claims he may have against certain investors in the California Limited Partnerships and the Sub-Partnerships; (ii) the uncertainty that a trial on the merits could result in a judgment providing the California Limited Partnerships and/or the Sub-Partnerships with the same or substantially the same benefits; (iii) the attendant risks and uncertainty of continued litigation; and (iv) the desirability of permitting the Settlement to be consummated without delay as provided by the terms of the Agreement.

## WHAT ARE THE TERMS OF THE PROPOSED SETTLEMENT?

20.    The terms and conditions of the proposed Settlement are set forth in the Agreement.  This Agreement has been filed with the Court and is also available for viewing on www.weintraub.com and www.milberg.com.  The following is only a summary of the terms of the Agreement.

21.    The Restitution Fund will include Fifteen Million Dollars ($15,000,000) funded under the terms of the CAAG Agreement plus additional funds contributed pursuant to the Agreement in the Plaintiffs' Actions in the amount of Five Million, Two Hundred Thousand Dollars ($5,200,000) ("Settlement Proceeds") for a combined total of Twenty Million Two Hundred Thousand Dollars ($20,200,000), less any amounts, up to a maximum of One Hundred Thousand Dollars ($100,000), awarded by the Court for an incentive award to Plaintiffs and less

any amounts, up to a maximum of Four Million Dollars ($4,000,000), awarded by the Court to Plaintiffs' counsel for attorneys' fees and costs, as discussed below.

22. Disbursements from the Restitution Fund shall be made by the CAAG in accordance with the CAAG Agreement. **Those investors in the California Limited Partnerships, in the Sub-Partnerships and/or any partnership (in addition to the Sub-Partnerships) that was a limited partner in the California Limited Partnerships seeking to recover monies from the Restitution Fund must submit a claim in accordance with the procedures established by the CAAG Agreement.**

23. Those claimants who incurred a "Net Loss" or a "Nominal Loss" in relation to his, her or its investment(s) will be eligible to recover from the Restitution Fund. "Net Loss" means, with respect to a Restitution Fund Claimant, the amount by which the aggregate of all investments made by such Restitution Fund Claimant to the California Limited Partnerships, Sub-Partnerships and/or any partnership (in addition to the Sub-Partnerships) that was a limited partner of the California Limited Partnerships exceeds the aggregate amount of distributions received by such Restitution Fund Claimant on account thereof. "Nominal Loss" means, with respect to a Restitution Fund Claimant, the sum of such Restitution Fund Claimant's interests in the California Limited Partnerships' account balances with BLMIS as of December 11, 2008. The actual amounts that a Restitution Fund Claimant will actually receive will be determined in accordance with CAAG Agreement.

24. In addition, under the Agreement, Defendants and certain others included within the definition of Chais Releasees and Relevant Third Party Releasees will obtain injunctive relief in the form set forth in Section 7(b) of the Agreement, and there will be a judicial dissolution, winddown and termination of existence for all purposes of the California Limited Partnerships in accordance with California law.

25. In connection with the Court's approval of the Settlement, all claims asserted by or against any of the Plaintiffs, including claims against Defendants, each Affiliate thereof, will be dismissed with prejudice. **Additionally, the Plaintiff Group Members will release Defendants and certain others included within the definition of Chais Releasees and Relevant Third Party Releasees, covenant not to sue and be enjoined from pursuing any and all actions, causes of action, and any other right to obtain any type of damages or any other remedies of whatever kind, whether individual, class, derivative, representative, legal, equitable, or any other type or in any other capacity, and that in any way arise out of or in connection with the California Limited Partnerships, the Sub-Partnerships, BLMIS, the Madoff Ponzi scheme and/or any other matters involving Stanley Chais, subject to certain narrow exceptions.** The full scope of the releases and the persons and entities who are the subject of the releases are set forth in the Agreement, which is available at www.milberg.com and www.weintraub.com.

## WHAT MIGHT HAPPEN IF THERE WERE NO SETTLEMENT?

26. As a result of the Bankruptcy Court approving the Trustee Agreement, no assets of the Chais Estate are available to pay the claims in Plaintiffs' Actions. Claims against the remaining Defendants are much riskier than the claims against the Chais Estate. These Defendants have limited assets, and any recovery in the Plaintiffs' Actions could be rendered moot by the terms of the Trustee Agreement, separately reached with Defendants. Under that agreement, all assets of the Chais Estate go to the Trustee, and the Trustee can seek to obtain a judgment in the Bankruptcy Court against the California Limited Partnerships for withdrawals

NOTICE OF PROPOSED SETTLEMENT OF
DERIVATIVE ACTIONS AND OF SETTLEMENT
HEARING
Case No. _____

they made from BLMIS.  Although the specific amount of the Trustee's claim is not yet fully ascertained, it is anticipated that it could be in excess of $100 million and potentially more than $1 billion.  The Trustee can then assign that judgment to the Chais Related Defendants.  If the Plaintiffs then obtain a judgment against the Chais Related Defendants, the specific amount of Plaintiffs' claim, which similarly could be in excess of $100 million, will potentially be offset by the Trustee's judgment assigned to the Chais Related Defendants.  The Trustee Agreement also provides that the Trustee will use his reasonable best efforts to obtain a permanent injunction in favor of the Defendants enjoining the continued prosecution of any claims released by the Trustee and any claim that is duplicative or derivative of any such claim.  That injunction could significantly limit, if not preclude, much of the relief sought in the Litigation.

27.     Even if the Trustee Action and/or the Trustee Agreement do not moot Plaintiffs' ability to pursue Defendants, Plaintiffs will face other risks if there is no settlement.  As discussed above, Plaintiffs and Defendants have sharply diverging views of the factual and legal merits of the case and the applicable legal standards.  Under the applicable rules, the Court would determine whether, in light of the legal standards that apply to the Defendants' conduct, there are material factual disputes that should be decided by a jury.  Plaintiffs and their counsel recognize that the Court could adopt the Defendants' view of the applicable legal standards or otherwise decide that the discovered facts are insufficient to impose liability as a matter of law.

28.     It also is possible that the Court could agree with Plaintiffs and their respective counsel and the case could proceed to trial.  In that case, if Plaintiffs prevailed in whole at trial, the Defendants could be ordered to pay damages in an undetermined amount, which could exceed the amount agreed to in the Settlement and the above-referenced offset.  If, however, Defendants prevailed at trial, there would be no recovery or benefit. In addition, following a trial, lengthy appeals by the losing party would be likely.

29.     Additionally, the Trustee has claimed that distributions paid by Madoff through Chais to the California Limited Partnerships, Sub-Partnerships and individual investors during the two year period immediately prior to the commencement of bankruptcy proceedings are subject to a clawback proceeding by the Trustee.  The Trustee had advised that if the Plaintiffs pursue their actions, he will consider and most likely proceed with the clawback proceedings, which would further limit any potential recovery Plaintiffs could obtain from the Litigation.

## HOW WILL THE ATTORNEYS BE PAID? HOW WILL INCENTIVE AWARDS BE PAID?

30.     Plaintiffs' counsel shall apply for an award of attorneys' fees and reimbursement of expenses not to exceed Four Million Dollars ($4,000,000) and to be paid or caused to be paid by Defendants exclusively out of the Settlement Proceeds.

31.     In addition, Plaintiffs' counsel will apply to the Court for incentive awards payable by Defendants exclusively out of the Settlement Proceeds, of up to an aggregate maximum amount of One Hundred Thousand Dollars ($100,000), and no more than Twenty-five Thousand Dollars ($25,000) to any one of the Individual Plaintiffs as compensation for their efforts in prosecuting the Litigation and for their reasonable expenses.

32.     Plaintiffs' counsel will file their papers in support of final approval of the Settlement, their application for attorneys' fees and reimbursement of expenses, and their application for an incentive award for Individual Plaintiffs by no later than _____.  These papers will be posted on Plaintiffs' counsels' respective websites www.weintraub.com and www.milberg.com.

NOTICE OF PROPOSED SETTLEMENT OF
DERIVATIVE ACTIONS AND OF SETTLEMENT
HEARING
Case No. _____

33.     Although the Settlement is conditioned on Court approval, the Settlement is not conditioned on the Court awarding Plaintiffs' counsels' attorneys' fees, reimbursement of expenses or incentive awards for Individual Plaintiffs.

**WHEN AND WHERE WILL THE COURT RULE ON APPROVAL OF THE SETTLEMENT?  DO I HAVE TO COME TO THE HEARING?  MAY I SPEAK AT THE HEARING?**

34.     You may, if you wish to do so, comment to the Court on the Settlement, the application for an award of attorneys' fees and reimbursement of expenses, and/or the application for incentive awards for the Individual Plaintiffs.  If you do not wish to object in person to the Settlement, the application for attorneys' fees and reimbursement of expenses and/or incentive awards for the Individual Plaintiffs, you do not need to attend the Settlement Hearing.  You can object to the Settlement, the application for attorneys' fees and reimbursement of expenses, and/or the application for incentive for the Individual Plaintiffs without attending.

35.     Any Limited Partner and any partner in any partnership (in addition to the Sub-Partnerships) that was a partner in the California Limited Partnerships may object to the Settlement, Plaintiffs' counsels' request for an award of attorneys' fees and expenses, or the request for an incentive award for the Individual Plaintiffs.  Objections must be in writing, and must include (i) the objector's name, address and telephone number, along with a representation as to whether the objector intends to appear at the Settlement Hearing; (ii) proof that the objector is a Limited Partner or a partner in any partnership (in addition to the Sub-Partnerships) that was a partner in the California Limited Partnerships; (iii) proof that the person or entity submitting the objection has authority to submit the objection on behalf of the Limited Partner or the partner in any partnership (in addition to the Sub-Partnerships) that was a partner in the California Limited Partnerships, if not submitted directly by the Limited Partner or the partner in any partnership (in addition to the Sub-Partnerships) that was a partner in the California Limited Partnerships; (iv) a statement of the objections to any matters before the Court, the grounds therefore or the reasons for the objector's desiring to appear and be heard, as well as all documents or writings the objector desires the Court to consider; and (v) if the objector has indicated that he, she or it intends to appear at the Settlement Hearing, the identities of any witnesses the objector may call to testify and any exhibits the objector intends to introduce into evidence at the Settlement Hearing.  **You must file your objection with the Clerk's Office at the address set forth below on or before _____, 2016**.  You must also serve the papers (by hand, first class mail, or express service) on Plaintiffs' counsel and Defendants' counsel at the addresses set forth below so that the papers are *received* by such counsel on or before _____, 2016.

36.     If you fail to object in the manner and within the time prescribed above you shall be deemed to have waive your right to object (including the right to appeal) and shall forever be barred, in this proceeding or in any other proceeding, from raising such objection(s).

37.     The Settlement Hearing will be held on _____, 2016, at _:__ _.m., before the Honorable Elizabeth A. White, at the Superior Court of California, 5th Floor, Stanley Mosk Courthouse, 111 North Hill Street, Dept. 48, Los Angeles, CA 90012.  The Court reserves the right to approve the Settlement or the application for attorneys' fees and expenses at or after the Settlement Hearing without further notice to any Limited Partner or any partner in any partnership (in addition to the Sub-Partnerships) that was a partner in the California Limited Partnerships.

NOTICE OF PROPOSED SETTLEMENT OF
DERIVATIVE ACTIONS AND OF SETTLEMENT
HEARING
Case No. _____

38.   The Settlement Hearing may be adjourned by the Court without further written notice to you.  If you intend to attend the Settlement Hearing, you should confirm the date and time with Plaintiffs' counsel.

| Clerk's Office | Plaintiffs'  counsel |
|---|---|
| SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF LOS ANGELES<br>Clerk of the Court<br>Stanley Mosk Courthouse<br>111 North Hill Street<br>Los Angeles, CA 90012 | Marvin Gelfand, Esq.<br>Weintraub Tobin Chediak Coleman Grodin, Inc.<br>10250 Constellation Blvd., Suite 2900<br>Los Angeles, California  90067<br><br>and<br><br>Barry Weprin, Esq.<br>Milberg LLP<br>One Pennsylvania Plaza, 50th Floor<br>New York, NY 10019<br><br>Milberg LLP<br>2850 Ocean Park Blvd. Suite 300<br>Santa Monica, CA 90405 |
| **Counsel for the Stanley Chais Defendants** | **Counsel for the Chais Related Defendants** |
| Dennis F. Dunne, Esq.<br>Michael L. Hirschfeld, Esq.<br>Milbank, Tweed, Hadley & McCloy LLP<br>28 Liberty Street<br>New York, NY 10005<br><br>and<br><br>Jerry L. Marks<br>Milbank, Tweed, Hadley & McCloy LLP<br>2029 Century Park East, 33rd Floor<br>Los Angeles, CA 90067 | Andrew H. Sherman, Esq.<br>Sills Cummis & Gross P.C.<br>One Riverfront Plaza<br>Newark, NJ 07102<br><br>and<br><br>Steven J. Katzman, Esq.<br>Biernert, Miller & Katzman<br>903 Calle Amancer, Suite 350<br>San Clemente, CA 92673 |

## CAN I SEE THE COURT FILE?  WHOM SHOULD I CONTACT IF I HAVE QUESTIONS?

39.   This Notice contains only a summary of the terms of the Agreement.   More detailed information about the Litigation is available at either of Plaintiffs' counsels' respective firm websites:  www.weintraub.com and www.milberg.com, including, among other documents, the complaints, the Agreement, the Trustee Agreement and the CAAG Agreement.  You or your attorney may examine the Court files for the Litigation (*Heimoff v. Chais, et al.,* Case No. BC413821*; Hall v. Chais, et al*., Case No. BC413820; *Bottlebrush Investments, LP v. The Lambeth Company, et al.,* Case No. BC407967; *Leghorn Investments, Ltd. v. Brighton Investments, et al.,* Case No. BC408661) during regular business hours at the Superior Court of California, County of Los Angeles.  Questions about the Settlement or about this Notice in general should be directed to:

NOTICE OF PROPOSED SETTLEMENT OF DERIVATIVE ACTIONS AND OF SETTLEMENT HEARING
Case No. _____

Marvin Gelfand, Esq.
Weintraub Tobin Chediak Coleman Grodin, Inc.
10250 Constellation Blvd., Suite 2900
Los Angeles, California  90067
P: (310) 858-7888
F: (310) 550-7191
mgelfand@weintraub.com

or

Barry A. Weprin, Esq.
MILBERG LLP
One Pennsylvania Plaza
New York, NY 10119-0165
(800) 320-5081
ContactUs@milberg.com

MILBERG LLP
2850 Ocean Park Blvd. Suite 300
Santa Monica, CA 90405

**Plaintiffs' counsel**

**DO NOT CALL OR WRITE THE COURT OR THE OFFICE OF THE CLERK OF
COURT REGARDING THIS NOTICE.**

Dated: _____, 2016

By Order of the Clerk of the Court
Superior Court of California
County of Los Angeles

- 11 -

NOTICE OF PROPOSED SETTLEMENT OF
DERIVATIVE ACTIONS AND OF SETTLEMENT
HEARING
Case No. _____

**EXHIBIT 2**

1  WEINTRAUB TOBIN CHEDIAK COLEMAN
   GRODIN LAW CORPORATION
2  Marvin Gelfand (SBN 53586)
   *mgelfand@weintraub.com*
3  10250 Constellation Blvd., Suite 2900
   Los Angeles, California  90067
4  Telephone:   (310) 858-7888
   Fax:           (310) 550-7191
5
   *Attorneys for Plaintiff and Cross Defendant*
6  *Bottlebrush Investments, L.P. and Leghorn*
   *Investments, Ltd.*
7
   MILBERG LLP                              SEEGER WEISS LLP
8  2850 Ocean Park Blvd. Suite 300          STEPHEN A. WEISS (*pro hac vice*)
   Santa Monica, CA 90405                   sweiss@seegerweiss.com
9  Telephone: (213) 617-1200                CHRISTOPHER M. VAN de KIEFT (*pro hac vice*)
   Fax:           (212) 868-1229            cvandekieft@seegerweiss.com
10                                          One William Street
                                            New York, NY 10004
11                                          Telephone:  (212) 584-0700
                                            Fax:           (212) 584-0799
12
   MILBERG LLP
13 BARRY WEPRIN (*pro hac vice*)
   bweprin@milberg.com
14 JOSHUA KELLER (*pro hac vice*)
   jkeller@milberg.com
15 One Pennsylvania Plaza, 50th Floor
   New York, NY 10119
16 Telephone: (212) 594-5300
   Fax:           (212) 868-1229
17
   [Additional Counsel on Signature Page]
18
   *Attorneys for Plaintiffs Douglas Hall and Steven Heimoff*
19

20          SUPERIOR COURT OF THE STATE OF CALIFORNIA

21            COUNTY OF LOS ANGELES, CENTRAL DISTRICT

22
   BOTTLEBRUSH INVESTMENTS, L.P.,          CASE No. BC 407967
23 a California limited partnership,
                                           Assigned for All Purposes to the Honorable
24              Plaintiff,                  Elizabeth Allen White, Department 48

25         v.

26 THE LAMBETH COMPANY, a                  **[PROPOSED] FINAL SETTLEMENT**
   California limited partnership, et al., **APPROVAL ORDER AND FINAL**
27                                         **JUDGMENT**
                Defendants.
28                                         CASE NO.: BC 408661

1 **CONSOLIDATED WITH:**

2 LEGHORN INVESTMENTS, LTD., a
California limited partnership,

[Related to Case Nos. BC 409548,
BC 413821, BC 413820 BC 422257 and
BC 456932]

3                    Plaintiff,

4          v.

5 BRIGHTON INVESTMENTS, LTD., a
6 California limited partnership, et al,

7                    Defendants.

8 AND RELATED CROSS-ACTIONS

9

10

11 DOUGLAS HALL, as Co-Trustee of the
VIVIAN H. HALL IRA and Derivatively on
Behalf of CRESCENT SECURITIES,

Lead Case No.  BC413820
Consolidated with: BC413821

12                    Plaintiff,

[Related to Case Nos. BC404557, BC404557,
BC407721, BC407967, BC408661, BC409658,
BC422257 and BC422258]

13          vs.

14 PAMELA CHAIS as executor of the estate of
15 STANLEY CHAIS, et al.
                    Defendants,

16          and

17 THE POPHAM COMPANY,

18          First Nominal Defendant,

19          and

20 MARLOMA SECURITIES,

21          Second Nominal Defendant.

22

23          **AND**

24 STEVEN HEIMOFF, as Trustee of the
25 STEVEN HEIMOFF IRA and Derivatively on
behalf of MARLOMA SECURITIES,

26                    Plaintiff,

27          vs.

28 PAMELA CHAIS as executor of the estate of

STANLEY CHAIS, et al,                                    )
                                                        )
      Defendants,                                    )
                                                        )
      and                                            )
                                                        )
THE POPHAM COMPANY,                                      )
                                                        )
      First Nominal Defendant,                       )
                                                        )
      and                                            )
                                                        )
MARLOMA SECURITIES,                                     )
                                                        )
      Second Nominal Defendant.                      )
                                                        )
                                                        )
                                                        )

1    On _____, 2016, the Court entered an Order granting

2    preliminary approval of the Parties' settlement agreement dated October 19, 2016 (the "CA

3    Settlement Agreement") and the proposed form and method of providing notice of settlement

4    (the "Notice of Settlement") to the Limited Partners[1] of the California Limited Partnerships

5    and Sub-Partnerships, and the partners of any partnership (in addition to the Sub-Partnerships)

6    that was a limited partner of the California Limited Partnerships, whose rights are affected by

7    the above-captioned consolidated cases and the Settlement Agreement (the "California

8    Preliminary Approval Order").  The California Preliminary Approval Order also set a date for

9    a final Settlement Hearing before the Court to determine whether the CA Settlement

10   Agreement should be approved as fair, reasonable, adequate and in the best interests of the

11   California Limited Partnerships and the Sub-Partnerships.  On _____,

12   2016, pursuant to California Rules of Court, rule 3.1382 and in accordance with the CA

13   Settlement Agreement, Plaintiffs filed a motion for (i) final approval of the proposed

14   settlement of the California Private Actions (the "Final Approval Motion"), (ii) the judicial

15   dissolution, winddown and termination of existence for all purposes of the California Limited

16   Partnerships in accordance with California law, and (iii) the dismissal with prejudice of the

17   California Private Actions.  Contemporaneously with the Final Approval Motion, Plaintiffs

18   filed (i) a motion seeking an award of attorneys' fees and expenses to Plaintiffs' counsel (the

19   "Attorneys' Fees Motion"), and (ii) an application for incentive awards to Individual Plaintiffs

20   Douglas Hall, Steven Heimoff, Pearl Gardner, and Robert Glusman for their efforts in

21   prosecuting, and expenses incurred in connection with, the California Private Actions (the

22   "Incentive Award Application").

23   Upon consideration of the Final Approval Motion, the Attorneys' Fees Motion, and

24   the Incentive Award Application, and memoranda in support thereof [, the objections to the

25   CA Settlement Agreement submitted by _____,] and the presentations

26   _____

27   [1] Unless expressly defined in this Order and Final Judgment, all capitalized terms shall have the meanings assigned
to them in the CA Settlement Agreement and incorporated herein by reference.

28

_____

- 1 -    [PROPOSED] FINAL SETTLEMENT APPROVAL
ORDER AND FINAL JUDGMENT
Case No. _____

at the Settlement Hearing held before this Court on _____, IT IS

HEREBY ORDERED, ADJUDGED, AND DECREED:

1.  The Court hereby enters this ORDER AND FINAL JUDGMENT (the "California

    Private Actions Approval Order") as set forth herein and pursuant to the terms and

    conditions of the CA Settlement Agreement attached as Exhibit ___ to the Final

    Approval Motion, which are incorporated by reference.

2.  This Court has jurisdiction over the subject matter of the California Private Actions

    and the Parties thereto.

3.  For the reasons stated by the Court on the record at the Settlement Hearing [AND/OR

    set forth in the Memorandum Opinion and Order Granting the Final Approval Motion

    issued on _____], the Final Approval Motion is GRANTED.

    After considering, among other things, (i) the substantial discovery conducted by the

    Plaintiffs' counsel, which allows Plaintiffs' counsel and the Court to act on an

    informed basis, (ii) the difficult substantive issues presented by Plaintiffs' claims,

    (iii) the complexity, likely long duration, and substantial risks associated with the

    prosecution of the Plaintiffs' claims to finality, (iv) the finite resources available for

    settlement and the substantial competing claims on those resources asserted by other

    persons, including the Securities Investor Protection Corporation and the Attorney

    General of the State of California, (v) the protracted and hard-fought settlement

    process initiated at the direction of the United States Bankruptcy Court for the

    Southern District of New York, (vi) the experience and skill of Plaintiffs' counsel in

    similar litigation, and (vii) the absence of substantial opposition among the Limited

    Partners or the partners of any partnership (in addition to the Sub-Partnerships) that

    was a limited partner of the California Limited Partnerships, the Court finds that the

    CA Settlement Agreement is fair, reasonable, adequate, and in the best interests of

    Plaintiffs, the California Limited Partnerships, and the Sub-Partnerships, and all direct

    and indirect limited partners of the California Limited Partnerships, the Sub-

Partnerships, and any partnership (in addition to the Sub-Partnerships) that was a limited partner of the California Limited Partnerships.

4. All objections to the CA Settlement Agreement are overruled.

5. The Attorney Fees Motion and the Incentive Award Application are also GRANTED. Plaintiffs' counsel shall be awarded $_____ for attorneys' fees and reimbursement of litigation expenses incurred in the prosecution of the California Private Actions. Individual Plaintiffs Douglas Hall, Steven Heimoff, Pearl Gardner, and Robert Glusman shall be awarded incentive payments in the amount of $_____ per person as compensation for their efforts in prosecuting the California Private Actions and for their reasonable expenses.

6. The California Private Actions and all claims, including any counterclaims, asserted by or against any of the Settling Parties therein, are hereby dismissed with prejudice as set forth in the CA Settlement Agreement.

7. For the reasons provided in the California Preliminary Approval Order, the Court finds that the form, content, and manner of giving notice of the CA Settlement Agreement constituted the best notice practicable under the circumstances and constituted valid, due, and sufficient notice to the Limited Partners and the partners of any partnership (in addition to the Sub-Partnerships) that was a limited partner of the California Limited Partnerships. The Notice of Settlement fully complied with the requirements of California Code of Civil Procedure section 382, California Rules of Court, rule 3.1385, the United States and California Constitutions, and any other applicable law.

8. The California Limited Partnerships shall be judicially dissolved and terminated of existence for all purposes in accordance with California law without any further act or conduct by any party including, without limitation, the filing of a State of California Secretary of State Limited Partnership Certificate of Cancellation. [OR: Pursuant to Section 3(c) of the CA Settlement Agreement, Jeffrey I. Golden, Esq. of Lobel Weiland Golden Friedman LLP is hereby designated as the person authorized to wrap up the affairs of each of the California Limited Partnerships (the "Designee"). In connection

therewith, the Designee is directed to file immediately with the Secretary of State of the State of California (the "Secretary"), for each of the California Limited Partnerships, Form LP-2 ("Amendment to Certificate of Limited Partnership") indicating Designee's appointment as such in Item 7(b) of the Form LP-2.  Promptly after the filing of Form LP-2 for each of the California Limited Partnerships, the Designee is further directed to file for each of the California Limited Partnerships a Form LP-4/7 ("Limited Partnership Certificate of Cancellation").  The Court further finds that the filing of the Forms LP-4/7 is proper under California law and that (i) each of the California Limited Partnerships has no assets or other property to distribute, and (ii) with the settlement of the Adversary Proceeding[2] and the California Private Actions, and the dismissal in connection therewith of the counterclaims asserted by the California Limited Partnerships, each of the California Limited Partnerships will not be a party to any known civil, criminal or administrative action or proceeding, and the California Limited Partnerships will have no known debts or obligations.  The Designee shall be paid a retainer fee of Twenty-Five Thousand Dollars ($25,000) for winddown services provided under the CA Settlement Agreement.  In connection with performing the winddown services, the Designee shall not be liable to the Parties or the Trustee, or any party asserting a claim on behalf of any of the Parties or the Trustee, except for direct damages that are a direct result of the Designee's gross negligence, bad faith, self-dealing or intentional misconduct.  The Designee's aggregate liability, whether in tort, contract, or otherwise, shall be limited to the total amount of fees paid to the Designee.]

9.    Any person or entity in possession of any books or records of the California Limited Partnerships is required to maintain all of such books and/or records until the earlier to occur of (x) the date on which the process that is contemplated and to be administered

---

[2] The Adversary Proceeding is a proceeding commenced by the Bankruptcy Trustee against the Stanley Chais Defendants and the Chais Related Defendants in the United States Bankruptcy Court for the Southern District of New York under the caption *Picard v. Stanley Chais, et al.*, Adv. Pro. No. 09-01172 (SMB).

under the terms of the AG Settlement Agreement, through which the investors in the California Limited Partnerships are to be compensated, is complete, and (*y*) the date which is two years after entry of this Order, after which any person or entity then in possession of such books and/or records may maintain or destroy any or all of such books and/or records in their sole and absolute discretion without any liability to any third party arising from their exercise of such discretion.  Notwithstanding the foregoing provisions of this Paragraph 9, any of the Defendants and any of their respective attorneys, accountants, agents and representatives who has effected a Records Turnover shall be excused thereafter from any obligation to maintain any books and/or records or search for any information of or in any way relating to the California Limited Partnerships and shall have no liability to any third party in connection therewith.

10. Upon the occurrence of the California Private Actions Settlement Effective Date (the "CPAS Effective Date"), as defined in Section 2 of the CA Settlement Agreement, consistent with the provisions of the CA Settlement Agreement governing the timing for performance, the parties are directed to perform their respective obligations under the CA Settlement Agreement, in accordance with its terms (including, but not limited to, the provisions governing monetary payments in Section 4 of the CA Settlement Agreement) and consistent with all additional parameters set forth in this California Private Actions Approval Order and any other subsequent orders of the Court.

11. The Court finds that the scope of the release provisions set forth in Sections 7, 8, and 9 of the Settlement Agreement is valid and appropriate under the terms of the CA Settlement Agreement.  Accordingly, upon the CPAS Effective Date, the Plaintiffs, on behalf of all Plaintiff Group Members, the Defendants, and the Trustee shall be deemed to have fully, finally, and forever released, relinquished, and discharged the Released Claims against the Released Parties, as these terms are defined in the CA Settlement Agreement and on the conditions set forth in the CA Settlement Agreement.

12. As of the CPAS Effective Date, the Plaintiff Group Members (as defined in Section 7(a) of the Settlement Agreement) are hereby permanently stayed, restrained and enjoined

- 5 -    [PROPOSED] FINAL SETTLEMENT APPROVAL
ORDER AND FINAL JUDGMENT
Case No. _____

from taking, any of the following actions at law or in equity in connection with any

Plaintiffs Released Claims, whether directly, derivatively or in any other manner:  (i)

commencing, conducting or continuing in any manner any action or proceeding of any

kind (including any action or proceeding in a judicial, arbitral, administrative or other

forum, whether domestic or foreign) against any Chais Releasee or any Relevant Third

Party Releasee, any direct or indirect successor in interest to any Chais Releasee or any

Relevant Third Party Releasee, or any immediate or mediate, direct or indirect transferee

of any Chais Releasee or any Relevant Third Party Releasee, or against the property of

any of the foregoing; (ii) enforcing, levying, attaching (including pre-judgment

attachment), collecting or otherwise recovering, by any manner or means, any judgment,

award or decree against any Chais Releasee or any Relevant Third Party Releasee, any

direct or indirect successor in interest to any Chais Releasee or any Relevant Third Party

Releasee, or any immediate or mediate, direct or indirect transferee of any Chais

Releasee or any Relevant Third Party Releasee, or against the property of any of the

foregoing; (iii) creating, perfecting or otherwise enforcing in any manner, directly or

indirectly, any lien against any Chais Releasee or any Relevant Third Party Releasee, any

direct or indirect successor in interest to any Chais Releasee or any Relevant Third Party

Releasee, or any immediate or mediate, direct or indirect transferee of any Chais

Releasee, or against the property of any of the foregoing; or (iv) asserting any setoff,

right of subrogation or recoupment of any kind, directly or indirectly, against any Chais

Releasee or any Relevant Third Party Releasee, any direct or indirect successor in interest

to any Chais Releasee or any Relevant Third Party Releasee, or any immediate or

mediate, direct or indirect transferee of any Chais Releasee or any Relevant Third Party

Releasee.  The Plaintiffs' Released Claims do not include any claim by the Plaintiff

Group Members:  (i) filed with the "Madoff Victim Fund" being administered by Richard

C. Breeden pursuant to his appointment as Special Master for the U.S. Department of

Justice, or (ii) to enforce the rights of the Plaintiff Group Members under the terms of the

Restitution Fund.  Notwithstanding that the provisions in this paragraph 10 shall not be

effective until the CPAS Effective Date, the Plaintiff Group Members shall take no action whatsoever on or after the Execution Date that would be a violation of this paragraph 10 and corresponding Subsection 7(b) of the Settlement Agreement if it were to occur after the CPAS Effective Date, unless an event resulting in a Rejection Date (as that term is defined in the Settlement Agreement) occurs.

13. A copy of this California Private Actions Approval Order shall be posted on Plaintiffs' counsels' respective firm websites: www.weintraub.com and www.milberg.com within 5 business days of the service of this Order and Final Judgment and shall remain posted there for a period of at least 180 days after the CPAS Effective Date.

14. Except to the extent the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") cannot or declines to retain jurisdiction, the Bankruptcy Court shall retain and have non-exclusive jurisdiction over any action to enforce the CA Settlement Agreement, or any provision thereof. In the event the Bankruptcy Court cannot or declines to retain or exercise jurisdiction, no Party or Limited Party shall bring, institute, prosecute or maintain any action to enforce, modify, terminate, void, or interpret the CA Settlement Agreement, or any provision thereof, in any court other than this Court. In any action commenced in another court by a third party to enforce, modify, terminate, void or interpret the CA Settlement Agreement, the Parties and Limited Party shall seek to stay such action and transfer the action first to the Bankruptcy Court; provided, however, in the event the Bankruptcy Court cannot or declines to retain or exercise jurisdiction, the Parties and the Limited Party shall seek transfer to this Court.

IT IS SO ORDERED AND ADJUDGED.

Dated: _____

_____
Hon. Elizabeth A. White

- 7 -    [PROPOSED] FINAL SETTLEMENT APPROVAL
ORDER AND FINAL JUDGMENT
Case No. _____