**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee*
*for the Substantively Consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities LLC*
*and the Estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (SMB) |
| Plaintiff-Applicant, | SIPA Liquidation |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**TRUSTEE'S MOTION *IN LIMINE* NUMBER 2 TO**
**EXCLUDE CERTAIN TESTIMONY OF JOEL AND NORMAN BLUM**

**Table of Contents**

TABLE OF CONTENTS ........................................................................................................... ii

TABLE OF AUTHORITIES .................................................................................................... iii

PRELIMINARY STATEMENT ................................................................................................1

ARGUMENT ................................................................................................................................4

    I.    THE BLUMS' LACK OF PERSONAL KNOWLEDGE MAKES THEIR
TESTIMONY INADMISSIBLE AT THE EVIDENTIARY HEARING ...............4

        A.    The Blums Testified They Have No Personal, First-Hand Knowledge
of the Activity in Their Parents' BLMIS Accounts ....................................5

        B.    The Blums Concede They Lacked Any Knowledge of PW
Transactions Prior to Madoff's Arrest .........................................................7

    II.    LACKING ANY PERSONAL KNOWLEDGE, THE BLUMS CAN ONLY
OFFER INADMISSIBLE SPECULATION AS TO THEIR PARENTS'
RECEIPT OF PW TRANSACTIONS ......................................................................8

    III.    THE BLUMS' SPECULATION IS INADMISSIBLE CHARACTER
EVIDENCE AND FAILS TO AMOUNT TO ADMISSIBLE HABIT
EVIDENCE..................................................................................................................9

    IV.    EVEN IF RELEVANT OR OTHERWISE ADMISSIBLE, CERTAIN
PORTIONS OF THE BLUMS' TESTIMONY IS INADMISSIBLE AS
HEARSAY WITHOUT AN APPLICABLE EXCEPTION .................................11

CONCLUSION ..........................................................................................................................13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re 251 W. 121 Street, Inc.*,
  No. 03-14377, 2009 WL 5216961 (Bankr. S.D.N.Y. Dec. 30, 2009) ......................................11

*Bernstein v. Village of Wesley Hills*,
  95 F. Supp. 3d 547 (S.D.N.Y. Mar. 27, 2015)......................................................................12

*Brown v. Keane*,
  355 F.3d 82 (2d Cir. 2004)....................................................................................................12

*Bruce Lee Enterprises, LLC v. A.V.E.L.A., Inc.*,
  No. 10-cv-2333 (KMW), 2013 WL 822173 (S.D.N.Y. Mar. 6, 2013)....................................11

*Chamilia, LLC v. Pandora Jewelry, LLC*,
  No. 04-CV-6017 (KMK), 2007 WL 2781246 (S.D.N.Y. Sept. 24, 2007) ..............................12

*In re EnviroSolutions of New York, LLC*,
  476 B.R. 88 (Bankr. S.D.N.Y. 2012).......................................................................................8

*Helena Associates, LLC v. EFCO Corp.*,
  No. 06 CIV. 0861(PKL), 2008 WL 2117621 (S.D.N.Y. May 15, 2008) .................................9

*Hester v. BIC Corp.*,
  225 F.3d 178 (2d Cir. 2000)....................................................................................................9

*In re Hilton*,
  544 B.R. 1 (Bankr. N.D.N.Y. 2016) ........................................................................................4

*Levy v. Bessemer Trust Co., N.A.*,
  No. 97 CIV. 1785(JFK), 2000 WL 1300402 (S.D.N.Y. Sept. 14, 2000) .................................4

*In re Reserve Fund Securities & Derivative Litigation*,
  No. 09 CIV. 4346 (PGG), 2012 WL 12354234 (S.D.N.Y. Oct. 3, 2012)............................8, 9

*United States v. Al Kassar*,
  660 F.3d 108 (2d Cir. 2011)..................................................................................................11

*United States v. Cuti*,
  720 F.3d 453 (2d Cir. 2013)....................................................................................................4

*United States v. Dupree*,
  706 F.3d 131 (2d Cir. 2013)..................................................................................................11

*United States v. Garcia*,
   291 F.3d 127 (2d Cir. 2002)..................................................................................................4

*United States v. Hill*,
   No. 14-3872-CR, 2016 WL 4129228 (2d Cir. Aug. 3, 2016)..................................................10

*United States v. Tocco*,
   135 F.3d 116 (2d Cir. 1998)..................................................................................................4

*Village of Freeport v. Barrella*,
   814 F.3d 594 (2d Cir. 2016)..................................................................................................9

**Statutes**

Securities Investor Protection Act, 15 U.S.C. § 78aaa *et seq.* .........................................................1

**Rules**

Fed. R. Evid. 404 ......................................................................................................................3, 10

Fed. R. Evid. 406 ......................................................................................................................3, 11

Fed. R. Evid. 602 ........................................................................................................................3, 4

Fed. R. Evid. 801 ......................................................................................................................3, 12

Fed. R. Evid. 802 ...........................................................................................................................3

**Other Authorities**

*Handbook of Federal Evidence* § 602:1 .......................................................................................12

Mueller & Kirkpatrick, *Federal Evidence* § 4:38 (4th ed. 2016) ..................................................10

Irving H. Picard, as trustee ("Trustee") for the substantively consolidated liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15 U.S.C. § 78aaa *et seq.*,[1] and the estate of Bernard L. Madoff ("Madoff"), respectfully submits this memorandum of law and the declaration of David J. Sheehan ("Sheehan Decl.") in support of the Trustee's motion *in limine* for entry of an order excluding certain testimony by Joel and Norman Blum (the "Motion") at the evidentiary hearing on the Trustee's treatment of profit withdrawal transactions ("PW Transactions").

## PRELIMINARY STATEMENT

Despite lacking personal knowledge, Participating Claimants[2] Joel and Norman Blum (individually, "Joel" and "Norman," collectively the "Blums"), either live or by deposition designation, intend to offer testimony concerning the PW Transactions in the BLMIS accounts of their late parents, Dr. Morris Blum ("Morris") and Mrs. Roslyn ("Roslyn") Blum. As such, if the Blums testify live at the evidentiary hearing, the Trustee requests an order prohibiting testimony that is based on a lack of personal knowledge, speculation, inadmissible character evidence, or hearsay. If the Blums testify by deposition designation, the Trustee requests the Court strike certain portions of the Blums' depositions on the same evidentiary grounds.[3]

The Blums are associated with more than ten BLMIS accounts held in their own names and in the names of their parents.[4] The accounts through which the Blums are Participating

---

[1] Subsequent references to sections of the Securities Investor Protection Act shall be denoted as "SIPA § __."

[2] The Blums are "Participating Claimants" as that term is defined in the Order Establishing Schedule for Limited Discovery and Briefing on Profit Withdrawal Issue ¶ 5, *SIPC v. BLMIS (In re BLMIS)*, No. 08-01789 (SMB) (Bankr. S.D.N.Y. June 25, 2015), ECF No. 10266. All "ECF" references in this memorandum refer to the case captioned *SIPC v. BLMIS (In re Madoff)*, No. 08-01789 (SMB) (Bankr. S.D.N.Y.), unless otherwise stated herein.

[3] Decl. of David J. Sheehan in Supp. of Trustee's Mots. *in Limine* Numbers 1–4 ("Sheehan Decl.") (Oct. 28, 2016), Ex. 3 (Chart Providing Basis for Excluding Certain Deposition Testimony by the Blums, Oct. 28, 2016).

[4] *See* Ms. Lisa M. Collura Supplemental PW Rpt., Attach. B, August 12, 2016, ECF No. 13868-4 (identifying participating and related direct Blum Accounts). The Blums received PWs in the following BLMIS accounts:

1

Claimants in this proceeding did not have any PW Transactions.[5] Instead, the 322 PW Transactions they dispute occurred between July 27, 1982 and July 8, 1997 in four other accounts held in their names or the names of their parents that are Related Direct Accounts.[6]

On February 25, 2015, the Trustee filed the Motion for Order Establishing Schedule for Limited Discovery & Briefing on Profit Withdrawal Issue. *SIPC v. BLMIS (In re Madoff)*, No. 08-01789 (SMB) (Bankr. S.D.N.Y. Feb. 25, 2015), ECF No. 9357. In connection with this proceeding, the Blums submitted declarations averring that neither they, nor their parents, received or cashed any checks associated with the 322 PW Transactions occurring in the participating accounts.[7] These declarations, which the Blums initially relied upon exclusively, set forth averments pertaining largely to the accounts in the name of their parents—all of which were managed by Morris including those held in Roslyn's name. Likewise, at their depositions, most of the Blums testimony[8] concerned the PW Transactions in their parents' BLMIS accounts.[9]

The Blums admitted during their depositions that they had no knowledge of any relevant activity in their parents' BLMIS accounts during the period during which their parents received checks from the PW Transactions, including their receipt of checks, communications with BLMIS employees, or how their parents requested their accounts be maintained at BLMIS. Nor

---

1B0031 (Joel Blum Kerry Blum); 1B0033 (Dr. Morris Blum); 1B0034 (Norman J. Blum); 1B0036 (Estate of Roslyn Blum); and 1B0115 (Roslyn Blum Remainder Trust).

[5] The three participating accounts are Accounts 1B0190, 1B0201, and 1B0251. Certain of the Blums' own accounts, 1C1001 and 1B0034, did have PW Transactions but they did not file claims for those accounts.

[6] These accounts are 1B0033 (Dr. Morris Blum), 1B0034 (Norman J. Blum), 1B0036 (Estate of Roslyn Blum), and 1B0115 (Roslyn Blum Remainder Trust).

[7] Decl. of Norman J. Blum, M.D., March 30, 2016, ECF No. 13003-7 ("N. Blum Decl."); Decl. of Joel A. Blum, M.D., March 30, 2016, ECF No. 13003-6 ("J. Blum Decl.").

[8] *See* Sheehan Decl., Ex. 4 (Tr. of Norman Blum, M.D. Dep., May 13, 2016 ("N. Blum Tr.")); Sheehan Decl., Ex. 5 (Tr. of Joel Alan Blum, M.D. Dep., May 16, 2016 ("J. Blum Tr.")).

[9] While Norman is also challenging PW Transactions in one of his own BLMIS accounts, such testimony is suspect given his admission that he did not know what a PW was until after 2008. *See* N. Blum Tr. 17:3–11. Joel is not challenging any PW Transactions received in his own BLMIS accounts.

2

were the Blums involved in their parents general financial affairs, banking practices, or decision making about the BLMIS accounts at issue in this proceeding. Lacking personal knowledge, the remainder of the Blums' averments and testimony is predicated on speculation and uncorroborated assertions of how their father would have managed his BLMIS accounts.

The Blums' testimony regarding transactions in their parents' BLMIS accounts violates the Federal Rules of Evidence ("Fed. R. Evid.").[10] Fed. R. Evid. 602 requires that a witness may testify only if the witness has personal knowledge of the matter. Fed. R. Evid. 801 and 802 prohibit the admission of out of court statements intended to prove the truth of the matter asserted. And Rules 404 and 406 prohibit inadmissible speculation as character or habit evidence. The Blums' testimony as to their parents' BLMIS accounts fails in each respect and should be excluded.

In the alternative, because the Blums' trial tactics complicate this otherwise straightforward motion *in limine*, the Trustee seeks an order striking the portions of the Blums' deposition testimony on the same evidentiary grounds. The Blums' pretrial disclosures identify that both Joel and Norman would testify either "live, by deposition, or by declaration, subject to the court rules regarding same."[11] Upon receipt of the Blums' pretrial disclosures, Trustee's counsel requested clarification regarding whether the Blums intended to testify live at trial or through reliance on the deposition designations submitted in the disclosures. Opposing counsel responded, "We should plan on designating their depositions for use at trial, but we reserve the right to call them instead."[12]

---

[10] Made applicable here through Fed. R. Bankr. P. 9017.

[11] Sheehan Decl., Ex. 1 (Prehearing Disclosures for Participating Claimants Joel and Norman Blum, Sept. 30, 2016).

[12] Sheehan Decl., Ex. 2 (Email dated October 4, 2016 from Richard Kirby to Seanna Brown and Laura Clinton regarding testimony of expert witness Thomas Respess).

3

If the Blums testify live at the evidentiary hearing, the Trustee requests an order prohibiting inadmissible testimony concerning their parents' BLMIS accounts, financial affairs, and the PW Transactions that occurred in their parents' BLMIS accounts. If the Blums testify by deposition designation, the Trustee requests the Court strike the inadmissible portions of the Blums' depositions identified on Exhibit 3 to the Sheehan Decl.[13]

## ARGUMENT

### I. THE BLUMS' LACK OF PERSONAL KNOWLEDGE MAKES THEIR TESTIMONY INADMISSIBLE AT THE EVIDENTIARY HEARING

It is well-settled that "the proponent of *any* evidence . . . must establish a proper foundation for the evidence before a court may admit it." *United States v. Garcia*, 291 F.3d 127, 140 (2d Cir. 2002) (emphasis in original). A witness may not testify to a matter unless there is evidence sufficient to support a finding that he or she has personal knowledge of the matter. Fed. R. Evid. 602; *United States v. Cuti*, 720 F.3d 453, 457 (2d Cir. 2013).[14] Restated, Fed. R. Evid. 602 excludes testimony concerning matters the witness did not observe nor had no opportunity to observe. *In re Hilton*, 544 B.R. 1, 7–8 (Bankr. N.D.N.Y. 2016). The test for personal knowledge is "whether a reasonable trier of fact could believe the witness had personal knowledge." *United States v. Tocco*, 135 F.3d 116, 128 (2d Cir. 1998) (citations omitted).

Where deposition testimony establishes that a witness lacks the personal knowledge required by Fed. R. Evid. 602 and would simply be testifying about what he or she heard from others, the witness should be excluded from testifying at trial. *Levy v. Bessemer Trust Co., N.A.*, No. 97 CIV. 1785(JFK), 2000 WL 1300402, at *1 (S.D.N.Y. Sept. 14, 2000).

---

[13] *See* Sheehan Decl., Ex. 3 (Chart Providing Basis for Excluding Certain Deposition Testimony by the Blums, Oct. 28, 2016).

[14] The Advisory Committee Notes to Fed. R. Evid. 602 also make clear that witnesses are barred from "testifying to the subject matter of [a] hearsay statement, as he has no personal knowledge of it."

4

As shown below, the Blums admit they lack any personal, first-hand knowledge of the PW Transactions.

### A. The Blums Testified They Have No Personal, First-Hand Knowledge of the Activity in Their Parents' BLMIS Accounts

The sole basis for the Blums' assertion that their parents did not receive PWs is the sweeping claim that they were "fully familiar"[15] with the details of their parents' BLMIS accounts and the purpose of those investments—but this is simply not true. The Blums each confirmed that they do not have personal, first-hand knowledge of the PW Transactions in their parents' BLMIS accounts.

At his deposition, Joel acknowledged that he had no personal knowledge of checks received in his parents' BLMIS accounts and never discussed receipt of checks with his father. "Q. Do you know if your father received checks from BLMIS in connection with his investments? A. <u>I don't know</u>."[16] When asked if he ever discussed receiving BLMIS checks with his father, Joel answered: "<u>I don't recall discussing that</u>."[17]

Similarly, Norman testified that their father "<u>never talked to me about [profit] withdrawals, nor did my brother</u>. None of us were aware of the significance of profit withdrawals."[18] When asked whether he knew "for a fact that he [Morris] never received disbursements?" he conceded that ". . . <u>no, I do not know it for a fact</u>."[19] Norman also admitted he could not prove whether his father received profit withdrawal checks: "<u>Can I prove it? No</u>."[20]

---

[15] J. Blum Decl. ¶ 4; N. Blum Decl. ¶ 5.

[16] J. Blum Tr. 51:13–16, 53:18–21 (emphasis added).

[17] J. Blum Tr. 80:22–24 (emphasis added).

[18] N. Blum Tr. 82:23–25 (emphasis added); *see also* N. Blum Tr. 88:14–16 ("A. <u>No</u>. He didn't tell me one way or the other [about a requested BLMIS distribution].") (emphasis added).

[19] N. Blum Tr. 68:3–5 (emphasis added).

[20] N. Blum Tr. 83:12–13 (emphasis added).

The Blums also testified that during the time period that their parents received the PW Transactions— July 27, 1982 and July 8, 1997—they did not assist with their parents' BLMIS accounts or financial affairs. Joel testified that he never really played a role in managing his father's investments.[21] Norman testified that he didn't assist his father until after 2000—three years after the last PW Transaction at issue.[22]

Joel and Norman further conceded in their depositions that they had no personal knowledge regarding their parents' BLMIS accounts or personal banking activities.

Joel did not receive account statements for any BLMIS accounts other than those in his name.[23] Likewise, Norman testified he did not review his parents' BLMIS account statements.[24]

As to distributions from their parents' BLMIS accounts, Joel testified that he did not know whether his father requested distributions[25] or received checks from BLMIS in connection with his investments.[26] He also stated that he was unaware of any records showing his parents received or cashed PW checks.[27] Similarly, Norman testified that he could not recall any discussions with his father about BLMIS withdrawals.[28]

---

[21] J. Blum Tr. 52:7–12 ("Q. Did there come a time when you played a role in the management of your father's investments? A. Not really. I would advise him on stocks, but I can't say that that played a role.").

[22] N. Blum Tr. 82:2–4 ("I didn't assist him -- I didn't assist him in 1997. As I said before, he was totally independent. After 2000."); *see also* N. Blum Tr. 52:4–5 ("My father [] had his mind together till the day he died.").

[23] *See, e.g.*, J. Blum Tr. 26:10–13 ("Q. Did you ever receive account statements for any accounts other than the two [accounts in Joel's name] that we've discussed? A. <u>No, not that I recall</u>.") (emphasis added).

[24] *See, e.g.*, N. Blum Tr. 53:19–22 ("Q. And when you were assisting your father with his Madoff accounts, did you review the customer statements that he received for his accounts? A. <u>I do not recall</u>.") (emphasis added).

[25] *See, e.g.*, J. Blum Tr. 59:2–5 ("Q. Do you have any recollection that your father had requested distribution from certain of his BLMIS accounts? A. <u>I do not</u>.") (emphasis added).

[26] *See, e.g.*, J. Blum Tr. 51:13–16 ("Q. Do you know if your father received checks from BLMIS in connection with his investments? A. <u>I don't know</u>.") (emphasis added).

[27] *See, e.g.*, J. Blum Tr. 74:9–17 ("Q. [In your declaration], it says: "I am aware of no records of these [profit withdrawal] checks being cashed/received by my family." . . . . A. That's what I was referring to, yes.").

[28] *See, e.g.*, N. Blum Tr. 79:13–16 ("Q. And did you discuss with your father what withdrawals he was taking from BLMIS? A. <u>I cannot tell you specifically what we talked about or did not</u>.") (emphasis added).

6

As to BLMIS account information, Joel testified that he was unsure why his father opened a BLMIS account,[29] or who his father communicated with at BLMIS.[30] Likewise, Norman had "no idea" whether his father communicated with BLMIS personnel.[31]

As to their father's banking information, Joel testified he did not receive or review his father's bank account statements at any point[32] and was only aware of a single checking account maintained by his father.[33] Joel added that he never assisted his father with cashing checks.[34] Norman testified he never balanced his father's checking account[35] or assisted him with deposits.[36]

### B. The Blums Concede They Lacked Any Knowledge of PW Transactions Prior to Madoff's Arrest

The Blums admit they had no knowledge of the PW Transactions occurring in their own or their parents' BLMIS accounts until after Madoff's arrest. It was only "way after" Madoff's

---

[29] *See, e.g.*, J. Blum Tr. 50:16–22 ("Q. Do you know for what purpose [your father's BLMIS] account was opened? . . . A. <u>Not really</u>. I don't know what exactly he had in mind.") (emphasis added).

[30] *See, e.g.*, J. Blum Tr. 51:20–23 ("Q. . . . Do you have an understanding of who he communicated with at BLMIS with respect to the investments? A. <u>No</u>.") (emphasis added).

[31] *See, e.g.*, N. Blum Tr. 79:8–12, 87:11–16 ("Q. Did your father speak with anyone at BLMIS on a regular basis? A. I cannot tell you that for sure. <u>I don't know</u>. I think probably not too often, you know. He probably had some contact. I don't know when, though." Norman added: "Q. . . . Did your father call BLMIS? A. <u>No idea</u>. Q. Do you know if your father sent letters regularly to BLMIS? A. <u>I have no idea either</u>.") (emphasis added).

[32] *See, e.g.*, J. Blum Tr. 66:2–10 ("Q. Did you ever receive any bank statements on behalf of your father? A. I did not. Q. Did you ever review any bank statements that your father had? A. Not that I recall. Q. Do you currently have any copies of your father's bank statements? A. No. I wish I did.").

[33] *See, e.g.*, J. Blum Tr. 65:20–21, 65:24–66:1 ("So I know he had a checking account. Aside from that, I don't know about any other bank accounts.").

[34] *See, e.g.*, J. Blum Tr. 80:8–12 ("Q. . . . Did you assist your father with getting checks cashed at any point? A. No.").

[35] *See, e.g.*, N. Blum Tr. 75:16–19 ("Q. Did you balance his checking account for him -- A. No. Q. -- at any point? A. <u>He did it all himself</u>.") (emphasis added).

[36] *See, e.g.*, N. Blum Tr. 74:7–19 ("Q. Dr. Blum, you mentioned helping your father with his banking, specifically the deposits. A. No. He did his own deposits, I think, as I recall. Q. You mentioned that later in life – earlier, you testified that later in his life, you would always take a look at the deposits. A. I would look at them, yes. Q. Did you ever make the deposits to the bank? A. Not to my recollection. He did it all himself. There were not very many deposits to make. He maybe did it once, maybe three times a year. He didn't make many deposits.").

7

arrest that Joel became aware of the PW Transactions, including the general meaning of "PW."[37] Likewise, Norman's knowledge of the PW Transactions—for both his parents' BLMIS accounts and his own—did not come until "more recently,"[38] and in connection with the Trustee's avoidance actions against Norman. To the extent the Blums' testimony is being offered on the omnibus issue of what "PW" means, it is not relevant and should be excluded.[39]

The record is devoid of any evidence that the Blums had personal knowledge of their parents' BLMIS accounts and PW Transactions. Because their testimony lacks the necessary foundation, the Court should grant the Trustee's Motion and exclude the Blums' testimony, whether offered live or by deposition designation, about the PW Transactions to which they have no first-hand knowledge.

## II.  LACKING ANY PERSONAL KNOWLEDGE, THE BLUMS CAN ONLY OFFER INADMISSIBLE SPECULATION AS TO THEIR PARENTS' RECEIPT OF PW TRANSACTIONS

Throughout their depositions, and without personal knowledge, the Blums were only able to offer speculation about their parents' BLMIS accounts. When a witnesses' testimony is based upon speculation and not personal knowledge then the testimony must be excluded. *See In re EnviroSolutions of New York, LLC*, 476 B.R. 88, 106 (Bankr. S.D.N.Y. 2012) (it "is unlikely that the Claimants or their witnesses have personal knowledge"); *In re Reserve Fund Securities & Derivative Litigation,* No. 09 CIV. 4346 (PGG), 2012 WL 12354234, at *3 (S.D.N.Y. Oct. 3,

---

[37] *See, e.g.*, J. Blum Tr. 30:16–23 ("Q. Do you remember if it was before or after December 11, 2008? A. Oh, yeah. It was after. It was way after. (Laugh). Q. Do you think it was within the last few years? A. Yeah, it's within the last few years.") (emphasis added); *see also* J. Blum Tr. 29:17–23, 30:10–12 ("Q. Do you have an understanding of what profit withdrawal is in connection with BLMIS? A. I don't. Q. Have you heard the term 'profit withdrawal' as it applies to BLMIS? A. I'm now aware of it, yeah.") (emphasis added).

[38] N. Blum Tr. 17:3–11 ("Q. So in reviewing your customer statements, between 1986 and 2008, did you ever see the PW transactions on your customer statements? A. I became aware of it more recently. I never noticed it before. Q. Okay. When did you know -- when did you become aware of it? A. When the situation arose over the last couple of years. I was not even aware of it.") (emphasis added).

[39] *See* Mot. *in Limine* Number 3 to Exclude Blecker Testimony.

8

2012) ("It is also unlikely that these witnesses will be permitted to testify about the motivation for their colleagues' purchase of Fund shares."); *Hester v. BIC Corp.*, 225 F.3d 178, 185 (2d Cir. 2000) (stating "naked speculation" regarding the motivation of another person is barred lay opinion testimony); *Village of Freeport v. Barrella*, 814 F.3d 594, 611–12 (2d Cir. 2016) (finding witnesses may testify regarding their own observations but they may not opine as to the motives of others).[40]

The basis of the Blums' testimony is purely speculative—what they *imagine* their father would or would not do in managing his financial affairs—and not based on any first-hand knowledge. To explain why he thought his father did not receive or cash PW checks, Joel testified: "I just can't imagine that he would have done it that way . . . . [] I just can't imagine that knowing him that he would have done this. I'm certainly not aware of him ever having done this."[41] Norman stated that "as far as I'm concerned . . . [h]e would never take -- have done things like that."[42]

Given that the Blums rely entirely on speculation, they are not competent to testify about their parents' BLMIS accounts or activity occurring therein.

### III. THE BLUMS' SPECULATION IS INADMISSIBLE CHARACTER EVIDENCE AND FAILS TO AMOUNT TO ADMISSIBLE HABIT EVIDENCE

Fed. R. Evid. 404 prohibits the Blums from introducing circumstantial evidence of their parents' general financial characteristics to prove that on any specific occasion they "would not"

---

[40] *C.f. Helena Associates, LLC v. EFCO Corp.*, No. 06 CIV. 0861(PKL), 2008 WL 2117621, at *6 (S.D.N.Y. May 15, 2008) (allowing lay witnesses to testify about their observations as long as their testimony is based upon first-hand knowledge of the project and letting the trier of fact determine the weight to afford the lay witness' testimony).

[41] *See, e.g.*, J. Blum Tr. 74:9–75:11, 77:20–78:7 ("A. It's I just can't imagine that he would have done it that way, and had he done it that way -- I mean, I just can't imagine that he would have done it that way. I mean, he would have wanted to have an orderly – you know, if he was going to receive money, he would have wanted to know that it was coming in an orderly fashion. To do small checks like this, to keep track of it, I just can't imagine that knowing him that he would have done this. I'm certainly not aware of him ever having done this.") (emphasis added).

[42] N. Blum Tr. 83:12–15.

9

have cashed PW checks. Under Fed. R. Evid. 404, "[p]ropensity evidence is not admissible to prove that on a particular occasion a defendant acted in accordance with a character trait." *United States v. Hill*, No. 14-3872-CR, 2016 WL 4129228, at *2 (2d Cir. Aug. 3, 2016). Fed. R. Evid. 404 embodies a "blanket rule" preventing civil litigants from "prov[ing] specific acts in support of the broad proposition that they show what kind of person [] the defendant is, and that accordingly [] the defendant did or did not do one thing or another that bears on the case." Mueller & Kirkpatrick, *Federal Evidence* § 4:38 (4th ed. 2016).

Joel and Norman both testified that they did not know and could not prove whether their parents received PW checks.[43] Joel claims his father did not receive or cash any PW checks because "[s]uch a scenario is entirely implausible given how he managed his financial affairs."[44] And that "knowing [my father] that's not the way he would have done things" because "it just didn't seem like him."[45] Norman similarly claims his parents did not cash PW checks because "They don't do it that way. They're not like that."[46] Norman's basis for saying this is that "I strongly -- I know my father. He would never take -- have done things like that. I just know him."[47] However, all of this is pure speculation about their father's character, inadmissible under the Federal Rules of Evidence.

While evidence of a "person's habit . . . may be admitted to prove that on a particular occasion the person . . . acted in accordance with the habit," the Blums' testimony vaguely

---

[43] J. Blum Tr. 51:13–16, 80:22–24; N. Blum Tr. 68:3–5, 79:13–16, 82:23–24, 83:12–13.

[44] J. Blum Decl. ¶ 9.

[45] J. Blum Tr. 79:1–2, 4–5.

[46] N. Blum Tr. 84:3–4; *see also* N. Blum Tr. 83:12–84:4 ("A. . . . He just didn't take that kind of withdrawal, <u>as far as I'm concerned</u>. <u>Can I prove it</u>? <u>No</u>. But I strongly -- I know my father. He <u>would never</u> take -- <u>have done things like that</u>. <u>I just know him</u>. Those little checks, things like that, he doesn't do things like that from Madoff at all. He <u>would have never</u> accepted it. On a monthly basis, he just <u>wouldn't have</u> done it, for him and my mom. Q. Why wouldn't he have done it? A. Because he doesn't do things like that. The only distributions <u>he would</u> take is even -- smooth, even money, and that he needed. $2,953; $11,290, not done. Just doesn't do it, nor my mother, either. Just <u>would not have</u> been done.") (emphasis added).

[47] N. Blum Tr. 83:13–15.

10

explaining their parents' general disposition in financial affairs falls short of the requisite standard. Fed. R. Evid. 406. Proponents must show a "person's regular practice of meeting a particular kind of situation with a specific type of conduct." *United States v. Al Kassar*, 660 F.3d 108, 123 (2d Cir. 2011)); *see also In re 251 W. 121 Street, Inc.*, No. 03-14377, 2009 WL 5216961, at *2 n.4 (Bankr. S.D.N.Y. Dec. 30, 2009) (noting trial ruling that evidence was excluded because there was no foundation of a pattern of engaging in the subject behavior).

The Blums' blanket assertions here do not establish the necessary habitual routine required under Fed. R. Evid. 406. Instead, Joel stated generally that his father managed his finances in an "orderly fashion."[48] Norman added that his parents were "not like that"[49] and his father dealt with only "smooth, even money."[50] Then, as to the ultimate issue in this proceeding, Norman conceded that he could not "prove" whether his father cashed the proceeds from a PW Transaction.[51] This is not the evidence of regularity or specificity required of admissible habit evidence.

IV. **EVEN IF RELEVANT OR OTHERWISE ADMISSIBLE, CERTAIN PORTIONS OF THE BLUMS' TESTIMONY ARE INADMISSIBLE AS HEARSAY WITHOUT AN APPLICABLE EXCEPTION**

Certain portions of the Blums' testimony are inadmissible hearsay and must be excluded.[52] Hearsay is a declarant's out of court statement "offer[ed] in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c); *United States v. Dupree*, 706 F.3d 131, 136 (2d Cir. 2013). Classic hearsay statements that are offered for their truth should be excluded. *See, e.g.*, *Bruce Lee Enterprises, LLC v. A.V.E.L.A., Inc.*, No. 10-cv-2333 (KMW),

---

[48] J. Blum Tr. 65:12–19, 73:3–74:3.

[49] N. Blum Tr. 84:4.

[50] N. Blum Tr. 83:22.

[51] N. Blum Tr. 83:12–13.

[52] Sheehan Decl., Ex. 3 (Chart Providing Basis for Excluding Certain Deposition Testimony by the Blums, Oct. 28, 2016).

2013 WL 822173, at *8 (S.D.N.Y. Mar. 6, 2013) (striking a paragraph from a declaration that discussed conversations the declarant had with a third party); *Bernstein v. Village of Wesley Hills*, 95 F. Supp. 3d 547, 559–60 (S.D.N.Y. Mar. 27, 2015) (striking part of a declaration referencing a third party who stated that he heard yet another individual say something, because it was offered for the truth that the statements were made); *Chamilia, LLC v. Pandora Jewelry, LLC*, No. 04-CV-6017 (KMK), 2007 WL 2781246, at *17 n.14 (S.D.N.Y. Sept. 24, 2007) (witness could not present evidence about why someone else did not make purchase because "[s]uch evidence is hearsay and inadmissible").

The inadmissibility of hearsay is closely linked to the requirement of personal knowledge. When a statement is hearsay, the declarant must be shown to have personal knowledge as to the matter related before a hearsay exception will yield its admissibility. *Handbook of Federal Evidence* § 602:1. A factual assertion "based on conjecture and surmise, to which the declarant would not be allowed to testify if called to the witness box, does not become admissible under an exception to the hearsay rule . . . ." *Brown v. Keane*, 355 F.3d 82, 90 (2d Cir. 2004).

Here, Joel offers inadmissible hearsay testimony. In arguing that his parents did not receive PW checks, Joel—who did not assist with his father's financial affairs "until the last four to five years of his life"[53] and never really played a role in managing his investments[54]—testified that "[m]y brother [Norman], who spent a lot of time with him [Morris] is, you know, said it

---

[53] J. Blum Tr. 72:25–73:2.
[54] J. Blum Tr. 52:7–12.

never happened. So I can't believe it."[55] This is hearsay upon hearsay, neither of which is admissible through Joel.

Similarly, Norman's testimony on their father's purported receipt or non-receipt of profit withdrawal checks is inadmissible hearsay.[56] Norman relied on general conversations with his father as the basis for his argument that his parents did not cash profit withdrawal checks: "He talked to me. He talked to -- anything he does, he would always talk to me about it, but he didn't tell me anything about changes in Madoff. He talked to me about everything. He was very open about everything."[57] Norman provided no other basis for his knowledge on the PW transactions. This is not the personal knowledge, certainty, or reliability that would otherwise permit hearsay testimony.

Accordingly, the Court should strike the identified portions of the Blums' testimony and prohibit any live testimony at the evidentiary hearing relying on extrajudicial statements to prove whether his parents received or deposited PW checks.

## **CONCLUSION**

For all of the foregoing reasons, the Trustee respectfully requests that the Court grant this Motion, strike inadmissible portions of the Blums' deposition testimony, and enter an order prohibiting the Blums from providing live testimony concerning their parents' BLMIS accounts, finances, and the PW Transactions that occurred in their parents' BLMIS accounts.

---

[55] J. Blum Tr. 72:25–73:2, 78:8–10. Moreover, when asked about his familiarity with his brother's BLMIS account, Joel responded that "then I heard -- I don't know the details of this -- that my brother had a retirement account, I believe, with -- with BLM[IS]." J. Blum Tr. 64:17–24.

[56] N. Blum Tr. 81:11.

[57] N. Blum Tr. 81:9–12.

13

Dated: October 28, 2016                    Respectfully submitted,
      New York, New York

                                               BAKER & HOSTETLER LLP

                                               By:  /s/ *David J. Sheehan*
                                                   **Baker & Hostetler LLP**
                                                   45 Rockefeller Plaza
                                                 New York, New York 10111
                                                 Telephone: (212) 589-4200
                                                 Facsimile: (212) 589-4201
                                                 David J. Sheehan
                                                 Email: dsheehan@bakerlaw.com
                                                 Seanna R. Brown
                                                 Email: sbrown@bakerlaw.com
                                                 Amy Vanderwal
                                                 Email: avanderwal@bakerlaw.com

                                               *Attorneys for Irving H. Picard, Trustee for the*
                                               *substantively consolidated SIPA Liquidation of*
                                               *Bernard L. Madoff Investment Securities LLC*
                                               *and the Estate of Bernard L. Madoff*