**Baker & Hostetler LLP**

45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee for the*
*Substantively Consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities LLC*
*and the Estate of Bernard L. Madoff*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (SMB) |
| Plaintiff-Applicant, | SIPA Liquidation |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |

## MEMORANDUM OF LAW IN SUPPORT OF TRUSTEE'S MOTION *IN LIMINE* NUMBER 3 TO EXCLUDE DEPOSITION TESTIMONY OF AARON BLECKER

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................................1

FACTUAL BACKGROUND .......................................................................................................2

    I.     MR. BLECKER'S PARTICIPATION IN THE BLMIS LIQUIDATION
         PROCEEDING .............................................................................................2

    II.    DISCOVERY ADDUCED IN THE PROFIT WITHDRAWAL
         PROCEEDING REVEALED NUMEROUS AREAS FOR MR.
         BLECKER'S CROSS-EXAMINATION ..................................................8

         A.     Theory of PW Transactions ..........................................................8

         B.     Recollection & Account Documents ............................................9

         C.     BLMIS Account Balances ..........................................................10

         D.     Discrepancies about Documents .................................................10

ARGUMENT ..............................................................................................................................11

    I.     MR. BLECKER'S DEPOSITION TESTIMONY IS NOT RELEVANT
         TO THE OMNIBUS ISSUES OF PW.....................................................11

    II.    MR. BLECKER'S DEPOSITION TESTIMONY IS INADMISSIBLE AS
         TRIAL TESTIMONY UNDER FED. R. CIV. P. 32.............................12

         A.     Legal Standards..........................................................................12

         B.     Mr. Blecker's Testimony Does Not Meet the Standards Outlined in
              Fed. R. Civ. P. 32(a) Necessary to be Admitted at Trial ...........13

              1.     Mr. Blecker Must Affirmatively Demonstrate His
                   Unavailability Pursuant to Fed. R. Civ. P. 32(a)(3)(C) .................13

              2.     The Trustee Had No Reasonable Opportunity to Cross-
                   Examine Mr. Blecker ....................................................14

          C.     The Court Should Exercise its Discretion to Exclude Mr. Blecker's
              Deposition Because of Credibility Concerns ...............................16

    III.    PERMITTING A TRIAL DEPOSITION OF MR. BLECKER IS A
         REASONABLE ALTERNATIVE TO COMPELLING MR. BLECKER
         TO APPEAR LIVE AT TRIAL..............................................................19

CONCLUSION...........................................................................................................................21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Boca Investerings Partnership v. United States*,
   197 F.R.D. 18 (D.D.C. 2000) ........................................................................................13, 14

*Cury v. Philip Morris*,
   No. 93 Civ. 2395 (CSH), 1995 WL 594856 (S.D.N.Y. Oct. 6, 1995) ..............................14, 15

*Delgado v. Pawtucket Police Department*,
   668 F.3d 42 (1st Cir. 2012) ...........................................................................................13, 14

*Duttle v. Bandler & Kass*,
   127 F.R.D. 46 (S.D.N.Y. 1989) .............................................................................14, 15, 16, 19

*In re Emanuel*,
   406 B.R. 634 (Bankr. S.D.N.Y. 2009) ....................................................................................12

*Folio Impressions, Inc. v. Byer California*,
   937 F.2d 759 (2d Cir. 1991) ...................................................................................................11

*Garcia-Martinez v. City & County of Denver*,
   392 F. 3d 1187 (10th Cir. 2004) ............................................................................................13

*Hangarter v. Provident Life & Accident Insurance Co.*,
   373 F.3d 998 (9th Cir. 2004) .................................................................................................16

*In re Hilton*,
   544 B.R. 1 (Bankr. N.D.N.Y. 2016) .......................................................................................12

*Hoppe v. GD Searle & Co.*,
   779 F. Supp. 1413 (S.D.N.Y. 1991) ........................................................................................15

*Kingsway Financial Services, Inc. v. PricewaterhouseCoopers LLP*,
   No. 03 Civ. 5560 (RMB), 2008 WL 5423316 (S.D.N.Y. Dec. 31, 2008) ..............................20

*Ladenburg Thalmann & Co., Inc. v. Modern Continental Construction Holding
   Co.*,
   408 F. App'x 401 (2d Cir. 2010) ............................................................................................20

*Manley v. AmBase Corp.*,
   337 F.3d 237 (2d Cir. 2003) ...................................................................................................17

*RLS Associates, LLC v. United Bank of Kuwait PLC*,
   No. 01 Civ. 1290 (CSH), 2005 WL 578917 (S.D.N.Y. Mar. 11, 2005) ..................................20

*Skins & Leather Co. v. Twin City Leather Co.*,
   246 B.R. 743 (N.D.N.Y. 2000) .........................................................................................13, 16

# TABLE OF AUTHORITIES
## (continued)

Page(s)

*United States Fidelity & Guaranty Co. v. Brastrepo Oil Services Co.*,
No. 97 Civ. 6124 (JGK), 2000 WL 1886593 (S.D.N.Y. Dec. 29, 2000)................................13

*United States v. Al-Moayad*,
545 F.3d 139 (2d Cir. 2008)................................................................................14

*United States v. Cuti*,
720 F.3d 453 (2d Cir. 2013)................................................................................11

*United States v. Franklin*,
235 F. Supp. 338 (D.D.C. 1964)...........................................................................15

*United States v. IBM*,
90 F.R.D. 377 (S.D.N.Y. 1981) ...........................................................................12

*United States v. Tocco*,
135 F.3d 116 (2d Cir. 1998)................................................................................11

*Waterman Steamship v. Gay Cottons*,
414 F.2d 724 (9th Cir. 1969) ..............................................................................19

**Statutes**

15 U.S.C. § 78aaa *et seq.* ..................................................................................1

**Rules**

Fed. R. Bankr. P. 7032............................................................................................1

Fed. R. Bankr. P. 9014(c) ........................................................................................1

Fed. R. Civ. P. 32...........................................................................................*passim*

Fed. R. Civ. P. 43(a) ...........................................................................................12

Fed. R. Evid. 602 ...........................................................................................11, 19

Fed. R. Evid. 804(b)(1) ....................................................................................14, 15

**Other Authorities**

5 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* (Joseph
M. McLaughlin ed., 2d ed. 2008) .........................................................................14

Irving H. Picard, as trustee ("Trustee") for the substantively consolidated liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15 U.S.C. § 78aaa *et seq.*,[1] and the estate of Bernard L. Madoff ("Madoff"), respectfully submits this memorandum of law and the declaration of David J. Sheehan ("Sheehan Decl.") in support of the Trustee's motion *in limine* for entry of an order excluding the deposition testimony of Mr. Aaron Blecker ("Mr. Blecker"), or in the alternative, ordering a deposition *de bene esse* of Mr. Blecker in lieu of trial testimony at the evidentiary hearing on the Trustee's treatment of the profit withdrawal transactions ("PW Transactions").

## PRELIMINARY STATEMENT

In pre-trial disclosures, Mr. Blecker indicated that he intends to offer his testimony by deposition designation at the profit withdrawal evidentiary hearing.[2]  Mr. Blecker is within the jurisdiction of this Court—he is a party in this matter and resides within 100 miles of the courthouse.  While Federal Rule of Civil Procedure 32(a)(4)[3] ("Fed. R. Civ. P.") provides for the use of deposition designations in lieu of live testimony by a person subject to the Court's jurisdiction in limited circumstances, the requisite showing of unavailability has not been made here.  Therefore, Mr. Blecker's deposition testimony cannot be utilized.

Moreover, the admission of Mr. Blecker's deposition testimony—as it currently stands— is improper.  Mr. Blecker's deposition was taken nearly a full year before the commencement of the omnibus proceeding concerning PW Transactions and before any discovery on profit withdrawals.[4]  Upon notice of the deposition, the Trustee requested a one week adjournment to

---

[1] Subsequent references to sections of the Securities Investor Protection Act shall be denoted as "SIPA § __."

[2] Sheehan Decl., Ex. 6 (Participating Claimants' Prehearing Disclosures, Sept. 30, 2016 ("Blecker Prehearing Disclosures")).

[3] Made applicable here through Federal Rules of Bankruptcy Procedure 7032, 9014(c).

[4] *See* Order Establishing Schedule for Limited Discovery and Briefing on Profit Withdrawal Issue, *SIPC v. BLMIS (In re Madoff)*, No. 08-01789 (SMB) (Bankr. S.D.N.Y. June 25, 2015), ECF No. 10266 ("Profit Withdrawal

permit production of documents prior to the deposition. Counsel for Mr. Blecker denied the request. The Trustee did not meaningfully cross-examine Mr. Blecker at that deposition and specifically reserved his rights to do so at a later date. When the Trustee timely sought Mr. Blecker's testimony, this Court denied such relief because it found that Mr. Blecker's testimony would be outside the scope of the omnibus proceeding on the treatment of PW Transactions.[5]

Participating Claimants now seek to introduce Mr. Blecker's deposition testimony at the forthcoming evidentiary hearing. To the extent that Mr. Blecker is seeking to introduce his testimony on the omnibus issue regarding profit withdrawals, it should be excluded because it is not relevant to the omnibus issues and because he was not cross-examined. To the extent that Mr. Blecker's testimony is being offered in support of his own claims objection, rather than on the omnibus issues at the evidentiary hearing, it should be excluded unless the Trustee is permitted to conduct a limited examination of Mr. Blecker prior to the admission of any testimonial evidence.

## FACTUAL BACKGROUND

### I.    MR. BLECKER'S PARTICIPATION IN THE BLMIS LIQUIDATION PROCEEDING

Mr. Blecker timely filed three customer claims with respect to his BLMIS Account Nos. 1B0022, 1B0156, and 1B0157.[6] He did not file a claim for Account No. 1B0023. The Trustee denied Mr. Blecker's customer claims because the accounts had no net equity in that they were either negative on a cash-in/cash out basis or were "net zeros" due to attempted inter-account

---

Scheduling Order"). All "ECF" references in this memorandum refer to the case captioned *SIPC v. BLMIS (In re Madoff)*, No. 08-01789 (SMB) (Bankr. S.D.N.Y.), unless otherwise stated herein.

[5] Hr'g re: Disc. Conference re Dep. of Aaron Blecker for Profit Withdrawal Proceeding, July 8, 2016, ECF No. 13621 ("July 2016 Hr'g Tr.").

[6] *See* Decl. of Helen Davis Chaitman, Sept. 23, 2016, ECF No. 14162 ("Chaitman Decl."); Chaitman Decl. Exs. 22, 49, ECF Nos. 14162-24 ("Customer Claim Acct. Nos. 1B0022 & 1B0156"), 14162-51 ("Customer Claim Acct. No. 1B0157").

transfers of fictitious profit.[7]  Mr. Blecker filed objections to the Trustee's determinations with

the Court on a *pro se* basis, asserting that he never withdrew any money from his BLMIS

Accounts.[8]

While Mr. Blecker's objections were pending, the Trustee litigated on an omnibus basis

various issues related to his methodology for calculating each BLMIS customer's net equity,

including the inter-account transfer issue.  Over 400 claimants participated in the omnibus

proceeding on inter-account transfers,[9] including Mr. Blecker.[10]  During that litigation, and after

retaining counsel, Mr. Blecker submitted a declaration that PW Transactions were improperly

treated as a reduction to the net equity in his accounts.[11]  During argument on June 19, 2014, the

Court suggested that Mr. Blecker's testimony be preserved by deposition because of his

advanced age.[12]

Mr. Blecker served a deposition notice and document demands on the Trustee's counsel

on June 20, 2014, noticing his deposition for July 1, 2014.[13]  Because the parties had not yet

exchanged document productions, the Trustee asked for a one week adjournment of the

---

[7] *See* Chaitman Decl. Exs. 26–27, ECF Nos. 14162-28, 14162-29; Aff. of Aaron Blecker in Opp'n to SIPA Denial of Madoff Claim Attach. B, Nov. 18, 2009, ECF No. 961 ("Blecker's Objection Claim No. 3907").

[8] *See* Blecker Objection Claim No. 3907; Statement of Aaron Blecker in Opp'n to Trustee's Denial of Claim, June 6, 2010, ECF No. 2383; Letter of Aaron Blecker, Oct. 22, 2010, ECF No. 3072.

[9] *See* Mot. for Order Scheduling Hr'g on Trustee's Mot. Affirming Application of Net Investment Method to Determination of Customer Transfers Between BLMIS Accounts, Feb. 24, 2014, ECF No. 5728; Scheduling Order to establish hearing and briefing schedule on inter-account transfers, Mar. 27, 2014, ECF No. 6049; Trustee's Mot. Affirming Application of Net Investment Method to Determination of Customer Transfers Between BLMIS Accounts, Mar. 31, 2014, ECF No. 6084.

[10] *See* Customers' Mem. of Law in Opp. to the Trustee's Method for Valuing Inter-Account Transfers, May 16, 2014, ECF No. 6708 ("Customers' Mem. of Law").

[11] *See* Decl. in Opp. to the Trustee's Mot. to Affirm Application Of the Net Investment Method to the Determination of Customer Transfers Between BLMIS Accounts, May 16, 2014, ECF No. 6719 ("Blecker Decl."); *see also* Customers' Mem. of Law.

[12] Hearing Re: Inter-Account Transfers – Trustee's Mot. Affirming Application of Net Investment Method to Inter-Account Transfers at 33:2-16, June 20, 2014, ECF No. 7249 ("June 2014 Hr'g Tr.").

[13] *See* Sheehan Decl., Ex. 7 (Notice of Dep. of Aaron Blecker from Helen Chaitman, June 20, 2014).

deposition.[14]  Mr. Blecker's counsel refused and stated that the deposition must go forward on

July 1, 2014.[15]  On June 30, 2014, the day before the deposition, the Trustee served a deposition

notice on Mr. Blecker for August 7, 2014 and document requests.[16]

Mr. Blecker's counsel deposed him at his home on July 1, 2014, less than two weeks

after the Court suggested the deposition.  The deposition lasted for thirteen minutes.[17]  Mr.

Blecker's counsel questioned him on the narrow issues of whether he or his wife requested or

received withdrawals from BLMIS, whether he had bank records, and regarding the tax

payments Mr. Blecker allegedly made in connection with his BLMIS accounts.[18]  Mr. Blecker

was not questioned about his understanding of what "PW" meant on his BLMIS statements or

whether he contemporaneously identified PW Transactions.[19]  Although the Trustee's counsel

attended this deposition, given the short notice of the deposition and in light of an outstanding

document request and deposition notice, the Trustee reserved the right to question Mr. Blecker at

a later date once the documents were produced.[20]

On July 31, 2014, Mr. Blecker's counsel asked that the "continued deposition" of Mr.

Blecker noticed by the Trustee for August 7 be moved to a later date.[21]  The Trustee still had not

received any documents from Mr. Blecker and decided to adjourn the deposition to a later date.

In response to the July 31st email of Mr. Blecker's counsel, the Trustee informed Mr. Blecker's

---

[14] *See* Sheehan Decl., Ex. 8 (Email from H. Chaitman to S. Brown regarding adjournment of Blecker deposition, June 24, 2014).

[15] *Id.*

[16] *See* Sheehan Decl., Exs. 9 (Trustee's Notice of Dep. of Aaron Blecker, June 30, 2014), 10 (Trustee's Req. for Produc. of Docs. to Aaron Blecker, June 30 2014).

[17] *See* Sheehan Decl., Ex. 11 (Tr. of Aaron Blecker Dep., July 1, 2014 ("Blecker Tr.")).

[18] *See generally id.*

[19] *Id.*

[20] *Id.* at 13:8–14:5.

[21] *See* Sheehan Decl., Ex. 12 (Email chain between B. Cheema and H. Chaitman regarding date for continued deposition of Mr. Blecker, July 31–Aug. 1, 2014 ("Aug. 1, 2014 Emails between H. Chaitman and B. Cheema")).

counsel on the same date that he had determined not to proceed with the deposition "at this time."[22]

Mr. Blecker served responses and objections to the document request on August 14, 2014.[23] Mr. Blecker stated that the only responsive documents he possessed were "sporadic monthly statements and annual statements for the period from 1988-2008."[24] Mr. Blecker did not produce any documents until September 19, 2014, more than ten weeks after Mr. Blecker's deposition occurred.[25] His production consisted of certain BLMIS documents concerning his accounts, including thousands of pages of customer statements, trade confirmations and portfolio management reports ("2014 Document Production"). The majority of the customer statements in the 2014 Document Production included handwritten calculations of his investment return information, where he included the PW Transactions in his calculations, where applicable.

During late 2014 and early 2015, the Trustee continued to analyze the profit withdrawal issue. Based on the number of profit withdrawals reflected on the BLMIS customer statements, the Trustee filed a motion to implement an orderly and inclusive process that would permit all affected accountholders to participate in litigation of the profit withdrawal issue.[26] On June 25, 2015, this Court entered a scheduling order, which set forth deadlines for fact and expert discovery and briefing of the profit withdrawal issue,[27] as amended on April 5, 2016.[28]

---

[22] *Id.*

[23] *See* Sheehan Decl., Ex. 13 (Blecker Objections and Responses to Trustee's Req. for Docs., Aug. 14, 2014 ("Blecker's Aug. 2014 Responses")).

[24] *Id.*

[25] *See* Sheehan Decl., Ex. 14 (Email chain between L. Blanco to B. Cheema regarding production of documents, Aug. 28-Sept. 19, 2014).

[26] *See* Trustee's Mot. for Order Establishing Schedule for Limited Disc. & Briefing on Profit Withdrawal Issue, Feb. 25, 2015, ECF No. 9357. However, the Trustee's initial motion was subsequently withdrawn and amended. *See* Notice of Withdrawal of Mot., May 19, 2015, ECF No. 10016; Amended Mot. For Order Establishing Schedule For Limited Disc. & Briefing on Profit Withdrawal Issue, May 19, 2015, ECF No. 10017.

[27] *See* Profit Withdrawal Scheduling Order.

[28] Order Amending Schedule of Litigation of Profit Withdrawal Issue, April 5, 2016, ECF No. 13038.

Accordingly, from July 2015 through July 2016, the parties conducted fact and expert discovery under the scheduling orders entered by this Court. The Trustee produced to Mr. Blecker both fact and expert discovery. In addition to the documents produced to Mr. Blecker in the inter-account litigation, the Trustee produced thousands of documents to Mr. Blecker and other Participating Claimants represented by his counsel in the profit withdrawal proceeding in response to their requests for documents dated July 28, 2015 and April 6, 2016. The Trustee also issued reports from his expert witnesses, Ms. Lisa Collura and Mr. Matthew Greenblatt, concerning the PW Transactions on July 14, 2015, followed by supplemental reports by both experts issued on December 17, 2015, and one additional supplemental report by Mr. Greenblatt issued on June 3, 2016. These reports show the experts' analyses supporting the Trustee's overall treatment of PW Transactions across all BLMIS accounts, and in addition, provide specific information and support regarding the Trustee's treatment of the PW Transactions in Mr. Blecker's accounts.[29]

Under the Profit Withdrawal Scheduling Order, the Trustee served document requests on Mr. Blecker on October 7, 2015 requesting documents relating to Mr. Blecker's BLMIS accounts.[30] On November 2, 2015, Mr. Blecker's counsel informed the Trustee that no responsive documents existed.[31] In May 2016, the Trustee served a second set of document requests to Mr. Blecker requesting certain tax schedules he had previously offered to supply in

---

[29] *See* Expert Report of Lisa M. Collura, July 14, 2015, ECF No. 10664-1; Expert Report of Matthew B. Greenblatt Methodology for the Principal Balance Calculation, July 14, 2015, ECF No. 10663-1-1; Expert Report of Matthew B. Greenblatt Analysis of the Profit Withdrawal Transactions, July 14, 2015, ECF No. 10663-2-2; Supp. Expert Report of Lisa M. Collura, Dec. 17, 2015, ECF No. 13868-2; Supp. Expert Report of Matthew B. Greenblatt, Aug. 12, 2016, ECF No. 13869-1; Second Supp. Expert Report of Matthew B. Greenblatt, Aug. 12, 2016, ECF Nos. 13869-7, 13869-11 ("Greenblatt Second Supp. Rpt.").

[30] Sheehan Decl., Ex. 15 (Trustee's First Set of Reqs. for Produc. of Docs. to Claimants, Oct. 7, 2015 ("Trustee's Oct. 2015 RFP")); *see* Profit Withdrawal Scheduling Order ¶ 6 (ordering Participating Claimants to produce to Trustee all documents relating to the PW Transactions, including BLMIS customer statements).

[31] *See* Sheehan Decl., Ex. 16 (Letter from H. Chaitman to N. Shields concerning responsive documents related to the PW Transactions, Nov. 2, 2015 ("Nov. 2015 Chaitman Letter")).

his customer claim in 2009,[32] which had also been referenced in his deposition.[33]   Through

counsel, Mr. Blecker stated that the only tax documents retained by Mr. Blecker were his tax

returns from 2008 and 2009 and refused to produce any documents in response to the Trustee's

requests.[34]

Discovery revealed that Mr. Blecker intended to rely solely upon his testimony, rather

than any documentary or expert evidence, to support his claims objection that he did not receive

PW Transactions.   Accordingly, the Trustee sought to re-notice Mr. Blecker's deposition—

previously noticed and adjourned without a date—prior to the close of discovery in the profit

withdrawal litigation.   After Mr. Blecker's counsel refused to produce him, this Court held a

hearing on the dispute and ruled that the Trustee was not entitled to take Mr. Blecker's

deposition because such testimony was outside the scope of the omnibus proceeding on the

treatment of PW Transactions.[35]   The Court stated that the Trustee may be entitled to obtain Mr.

Blecker's testimony as it relates to his individual claim determination:

> The inquiry I suggested was more into the general question of what
> [P]W meant.  *Obviously, I guess you're free to take discovery into
> every individual case in which someone has asserted a claim that
> the trustee is determined to disallow* . . . But the discovery we were
> talking about was not individual discovery.  But I'm not aware of a
> discovery deadline vis-à-vis claims determination.[36]

---

[32] *See* Customer Claim Acct. Nos. 1B0022 & 1B0156 at 16 ("I personally submitted separate schedules each year
for each account, detailing every stock transaction.  (I have some of that paperwork still in cartons and could supply
it.)").

[33] *See* Blecker Tr. 7:22–8:9 ("All the profits that Madoff earned for me I reported it in my tax return showing I – I
made up a schedule of transactions, stocks bought and sold and showing profit from the stocks plus the reporting
dividend income that I received on those securities and that was reported each year").

[34] Sheehan Decl., Ex. 17. (Responses and Objections of Claimant Aaron Blecker to Trustee's Second Set of Reqs.
for Produc. of Docs., June 23, 2016 ("Blecker's June 2016 Responses")).

[35] July 2016 Hr'g Tr.

[36] *Id*. at 6:8–15 (emphasis added).

At the same hearing, the Court indicated that it was not going to hear testimony at the

forthcoming evidentiary hearing regarding individual claim determinations:

> [The testimony of Mr. Blecker] really goes to his individual claim
> determination. There is this kind of larger issue of what PW
> means, without regard, necessarily to any particular claimant, and I
> am not going to hear testimony at that hearing, claimants coming
> up and saying, "I didn't get anything." I'll hear that, I guess, when
> the time comes for the claim determination.[37]

On September 30, 2016, Mr. Blecker indicated in his pre-trial disclosures that he intended

to offer his testimony at the PW evidentiary hearing by deposition designation.[38]

## II.    DISCOVERY ADDUCED IN THE PROFIT WITHDRAWAL PROCEEDING REVEALED NUMEROUS AREAS FOR MR. BLECKER'S CROSS-EXAMINATION

Taken together, Mr. Blecker's claims, claims objections, document productions,

deposition testimony, and other discovery in the profit withdrawal litigation present numerous

inconsistencies best addressed through cross-examination. If the Court is inclined to permit Mr.

Blecker's testimony at trial, it should not solely be through the current deposition designations.

### A.    Theory of PW Transactions

Mr. Blecker has maintained since 2009 that he never received any withdrawals from his

BLMIS accounts.[39] He has advanced several different theories attempting to explain his

understanding of why PW Transactions were then debited from his BLMIS accounts. In his

claims objections and related filings, Mr. Blecker stated that profit withdrawal checks could have

been for Madoff family and friends or could have been paid to public companies as "part of the

larger fraud and cover up."[40] In connection with the inter-account transfer litigation, Mr. Blecker

---

[37] *Id.* at 6:8–9.

[38] *See* Blecker Prehearing Disclosures.

[39] *See* Blecker Tr. 6:9–19.

[40] Blecker Objection Claim No. 3907 at 4.

filed a declaration stating that the PW checks appearing on his statements were "checks written to numerous Fortune 500 companies represent[ing] the purchase of securities in my account because, in fact, my statements showed that I owned the securities of these various companies."[41]  No evidence in the case provides support for Mr. Blecker's theories, and the only "evidence" for his different versions of events comes from his own unchallenged assertions.

### B.    Recollection & Account Documents

Mr. Blecker has provided an account regarding PW Transactions that is inconsistent with the transactions that appeared on his customer statements between twenty and thirty-five years ago.  Mr. Blecker initially claimed in 2009 that he reviewed his statements, but added that the BLMIS customer statements were too complex for him to focus on individual entries:

> These monthly statements did note entries for the checks in question . . . These statements had many complex entries and I focused on the summary valuations, thinking they were all part of the normal investment process for securities being purchased and sold.[42]

He testified similarly during his deposition.[43]

But Mr. Blecker's own customer statements show that the PW Transactions were each debited from his accounts.  Customer statements produced by Mr. Blecker after his deposition contain handwritten notations calculating Mr. Blecker's investment gains.  These notations include the PW Transactions into the amount of his investment return for the relevant time period—effectively treating the PW Transactions as debits from the profits in the account.

---

[41] Blecker Decl. ¶¶ 9–10, ECF No. 6715.

[42] Blecker Objection Claim No. 3907 at 4.

[43] *See* Blecker Tr. at 13:8–14:12 ("I checked the statements to make sure that whatever securities they charged with, that was on their statement and the profits I couldn't correct.  They gave me the prices and then that was it.").

### C.    BLMIS Account Balances

If Mr. Blecker never received profit withdrawals, then his BLMIS accounts should have grown over time to reflect fictitious gains accumulating in his accounts.  At his deposition, Mr. Blecker testified that his BLMIS investments showed that profits "kept accumulating" in his accounts stating:

> [I]f I had withdrawn money, why would Madoff keep crediting my account and adding to my investment?  If I had no money there, he wouldn't have bothered with me.  *In the meantime after all the years he kept increasing my investment, showed a profit return on my investment and that's why it kept accumulating.*[44]

In reality, Mr. Blecker's account statements show his account balances effectively stayed flat from their inception until 1997 when he closed the accounts, for example, his investments in Account 1B0022 gained only a few thousand dollars over more than ten years.[45]  The flat account balances were due to debits from the PW Transactions and the absence of "reinvestment" of those profits.

### D.    Discrepancies about Documents

Mr. Blecker clearly had documents responsive to the Trustee's document requests and relevant to PW transactions.  Prior to the profit withdrawal issue, Mr. Blecker produced documents to support his claims, including customer statements with handwritten notations accounting for the profit withdrawal debits to the accounts.  However, once this matter was commenced, Mr. Blecker represented in discovery that he had no documents responsive to the Trustee's discovery demands or relevant to PW transactions.[46]  Further, Mr. Blecker's 2014

---

[44]  Blecker Tr. 9:12–21 (emphasis added); *see also* Blecker Tr. 7:3–21, 13:15–14:12 (referring to his contemporaneous review of BLMIS account statements); Blecker Objection Claim No. 3907 at 4.

[45]  *See* Greenblatt Second Suppl. Rpt. Sect. VI; Exs. 11–12.

[46]  *Compare* Blecker Objection Claim No. 3907 at 4 ("Recently I did find statements from 1995…These monthly statements did note entries for the checks in question") *with* Nov. 2015 Chaitman Letter; *see also* Blecker's Aug. 2014 Responses.  Mr. Blecker also failed to produce tax schedules regarding his BLMIS statements after referring to

Objections and Responses stated that he had BLMIS account documents dating back to 1988, but the 2014 Document Production included BLMIS customer account statements, trade confirmations, and portfolio management reports from 1995 to 2008.[47]  No explanation was provided as to why earlier BLMIS account documents from 1988 to 1994 were not produced. Because the 2014 Document Production occurred months after Mr. Blecker's initial deposition, the Trustee never had the opportunity to question Mr. Blecker about his documents or any of the other inconsistencies between his statements and his production.

## ARGUMENT

### I.    MR. BLECKER'S DEPOSITION TESTIMONY IS NOT RELEVANT TO THE OMNIBUS ISSUES OF PW

As this Court has recognized, Blecker's testimony is not relevant to the omnibus issue of what "PW" reflects on the customer statements.  At both the June 2014 hearing and the July 2016 hearing, the Court stated that Mr. Blecker's testimony was intended for his "individual determination[ ] of the account"—not the broader meaning of "PW."[48]  No evidence has been introduced to demonstrate that Mr. Blecker has any personal knowledge regarding the meaning of "PW"; indeed, he was not even questioned on this topic at his deposition.[49]  Thus, the broader profit withdrawal issue is not a topic about which Mr. Blecker could testify because he lacks personal knowledge on this issue.  *See* Federal Rule of Evidence 602 ("Fed. R. Evid.") ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter"); *United States v. Cuti*, 720 F.3d 453, 457 (2d Cir. 2013); *United States v. Tocco*, 135 F.3d 116, 128 (2d Cir. 1998) (quoting *Folio Impressions,*

---

these schedules in his customer claims and 2014 deposition.  *See* Blecker Tr. 7:22–8:9; Customer Claim Acct. Nos. 1B0022 & 1B0156 at 16; Blecker's June 2016 Responses.

[47] Blecker's Aug. 2014 Responses.

[48] *See* June 2014 Hr'g Tr. 33:4–8; July 2016 Hr'g Tr. 8–9.

[49] *See generally* Blecker Tr.

*Inc. v. Byer California*, 937 F.2d 759, 764 (2d Cir. 1991)); *see also In re Hilton*, 544 B.R. 1, 7–8

(Bankr. N.D.N.Y. 2016) ("[T]estimony by affiants without personal knowledge should be

stricken").    To the extent Mr. Blecker's testimony that he did not receive profit withdrawal

checks is being offered for the omnibus issue of what "PW" means, it is not relevant and should

be excluded.

## II.    MR. BLECKER'S DEPOSITION TESTIMONY IS INADMISSIBLE AS TRIAL TESTIMONY UNDER FED. R. CIV. P. 32

### A.    Legal Standards

Although live testimony in open court is the preferred method of testimony, the Federal

Rules of Civil Procedure provide for deposition testimony to be admitted at trial in certain

limited instances in lieu of trial testimony.  *See* Fed. R. Civ. P. 32(a)(4)(E) (stating "due regard"

should be given "to the importance of live testimony in open court . . . ."); *see also United States*

*v. IBM*, 90 F.R.D. 377, 381 (S.D.N.Y. 1981) ("There is a strong preference for live testimony,

long recognized by the courts, as it provides the trier of fact the opportunity to observe the

demeanor of the witness"); *In re Emanuel*, 406 B.R. 634, 636 (Bankr. S.D.N.Y. 2009)

(Bernstein, J.) ("The importance of presenting live testimony in court cannot be forgotten.  The

very ceremony of trial and the presence of the factfinder may exert a powerful force for

truthtelling") (quoting Fed. R. Civ. P. 43(a) Advisory Committee's note to 1996 amendment)).

Fed. R. Civ. P. 32 provides that a party seeking to enter deposition testimony absent

agreement or stipulation of the parties must meet three conditions for admissibility at trial:

> (1) The party whom the deposition was offered against must have been present or represented at the taking of the deposition, or had reasonable notice;
>
> (2) The deposition's use would be admissible under the Federal Rules of Evidence if the deponent were present and testifying; and

(3) The deposition witness is currently unavailable, including due to death, age, illness, or infirmity.

*See* Fed. R. Civ. P. 32(a); *see also United States Fidelity & Guaranty Co. v. Brastrepo Oil Services Co.*, No. 97 Civ. 6124 (JGK), 2000 WL 1886593, at *2 (S.D.N.Y. Dec. 29, 2000) ("The party seeking to make use of depositions under Rule 32(a) . . . bears the burden of establishing that the requirements of the Rule have been met").

There has been no motion or showing by his counsel that Mr. Blecker is not available for the evidentiary hearing. Even if such a showing is made, this Court retains discretion to exclude deposition testimony, particularly where credibility is at issue. *See Skins & Leather Co. v. Twin City Leather Co.*, 246 B.R. 743, 747–48 (N.D.N.Y. 2000). This Court also has discretion to explore alternative options to testifying live before admitting deposition testimony for an unavailable witness, such as contemporaneous video testimony or a deposition *de bene esse* to preserve trial testimony. *See Garcia-Martinez v. City & County of Denver*, 392 F. 3d 1187, 1193 (10th Cir. 2004).

### B.    Mr. Blecker's Testimony Does Not Meet the Standards Outlined in Fed. R. Civ. P. 32(a) Necessary to be Admitted at Trial

#### 1.    Mr. Blecker Must Affirmatively Demonstrate His Unavailability Pursuant to Fed. R. Civ. P. 32(a)(4)(C)

Mr. Blecker has not made an affirmative showing under Fed. R. Civ. P. 32 that he is unavailable to appear at trial. The party seeking to use deposition testimony at trial bears the burden of establishing that the age or infirmity of a witness bars the witness from presenting live testimony. *See Delgado v. Pawtucket Police Department*, 668 F.3d 42, 49 (1st Cir. 2012); *Boca Investerings Partnership v. United States*, 197 F.R.D. 18, 20 (D.D.C. 2000) ("Surely a party cannot just cite a witness's age as a justification for nonattendance; the party must explain *why* in the circumstances the witness's age prevents that witness from attending or testifying"). Simply

asserting age or infirmity alone is insufficient to substitute deposition testimony for trial testimony. *Delgado*, 668 F.3d at 49; *see also Boca Investerings Partnership*, 197 F.R.D. at 19–20. While Mr. Blecker may be unavailable due to his advanced age, his counsel must do more than cite his age to show that he is unable to appear.[50]

### 2.   The Trustee Had No Reasonable Opportunity to Cross-Examine Mr. Blecker

Although the Trustee was present at Mr. Blecker's 2014 deposition, he was unable to meaningfully cross-examine him at that time in light of the pending document requests to which Mr. Blecker had not yet responded. The Trustee is entitled to a proper cross-examination, one of the fundamental "devices for ensuring the accuracy" of witness testimony. *United States v. Al-Moayad*, 545 F.3d 139, 169 (2d Cir. 2008) (alterations omitted) (quoting 5 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 802.02[3] (Joseph M. McLaughlin ed., 2d ed. 2008) ("*Weinstein's Federal Evidence*")). Cross-examination "clarifies the witness's perception, memory, and narration. It can expose gaps, contradictions, and inaccuracies in his or her testimony, as well as flaws in observation or comprehension." *Weinstein's Federal Evidence* § 802.02[2][c] (16th ed. 2013). Determining the strength of a witness's memory is a common subject for cross-examination, and particular latitude is afforded to cross-examining witnesses advanced in age "since extremes of age are known to affect the accuracy of a person's recollections." *Id.* at § 607.05[2]. Courts permit wide latitude to cross-examine a witness regarding capacity even in a non-jury trial, particularly concerning memory. *Id.*

A reviewing court must assess whether the opposing party had a reasonable opportunity to cross-examine the witness. The mere presence of a party at a deposition is not enough. *See Duttle v. Bandler & Kass*, 127 F.R.D. 46, 49 (S.D.N.Y. 1989); *see also Cury v. Philip Morris*,

---

[50] To date, the Trustee has not been made aware of any health issues affecting Mr. Blecker, but the Trustee can make any necessary accommodations.

No. 93 Civ. 2395 (CSH), 1995 WL 594856, at *1 (S.D.N.Y. Oct. 6, 1995) (assessing opportunity

to cross-examine under evidentiary rule analogous to Fed. R. Civ. P. 32, Fed. R. Evid. 804(b)(1),

"[t]his opportunity cannot be an empty formality; it must be 'full, substantial and meaningful in

view of the realities of the situation'") (quoting *United States v. Franklin*, 235 F. Supp. 338, 341

(D.D.C. 1964)); *see also Hoppe v. GD Searle & Co.*, 779 F. Supp. 1413, 1417–18 (S.D.N.Y.

1991) (denying admission of deposition testimony under corollary Fed. R. Evid. 804(b)(1)

because opposing party lacked "similar motive and opportunity to cross-examine" witnesses at

deposition in earlier, related proceeding due, in part, to  new impeachment evidence obtained

against witnesses since initial testimony).

In determining whether an opportunity to cross-examine is "reasonable" the court must

"weigh the prejudice suffered by the objecting party if the deposition is admitted against that

suffered by the party offering the deposition if it is excluded."  *Duttle*, 127 F.R.D. at 49

(S.D.N.Y. 1989).

The substance of Mr. Blecker's deposition in July 2014 makes clear that it was never

intended to encompass the Trustee's opportunity to cross-examine Mr. Blecker, but was simply a

cursory preservation deposition.[51]  Indeed, at the time of the deposition, the parties had not yet

exchanged documents and the information relevant to Mr. Blecker's cross-examination—

including expert analyses about his accounts—was only produced in the months and years after

the deposition took place.  The Trustee's presence at Mr. Blecker's 2014 deposition was forced

by Mr. Blecker's counsel's rejection of a one week adjournment request; it did not provide an

adequate opportunity for cross-examination of Mr. Blecker on the PW Transactions in his

accounts or his understanding of PW Transactions.  *See Cury*, 1995 WL 594856, at *1; *see also*

---

[51] Both parties considered Mr. Blecker's initial deposition to lack the opportunity for cross-examination, since Mr. Blecker's counsel acknowledged at the time that the Trustee's scheduled deposition in August 2014 was a "continued deposition." *See* Aug. 1, 2014 Emails between H. Chaitman and B. Cheema.

*Hangarter v. Provident Life & Accident Insurance Co.*, 373 F.3d 998, 1019 (9th Cir. 2004) (discussing whether party had "ample opportunity to cross-examine" witness pursuant to Rule 32 and corollary evidentiary rule, Fed. R. Evid. 804(b)(1)).  Indeed, Mr. Blecker's counsel's refusal to adjourn the deposition until after documents had been exchanged only further undermined the fundamental right to cross-examination.  Under the circumstances, the Trustee properly reserved his rights to question Mr. Blecker at a later date,[52] and served a deposition notice for August 7, 2014.[53]  The Trustee adjourned the continued deposition without a date while documents were being produced and the omnibus proceeding was being commenced.  Once discovery had been exchanged between the parties in the confines of the profit withdrawal litigation, the Trustee sought to re-notice Mr. Blecker's deposition but was not permitted to do so.

Fundamental fairness dictates that the Trustee have an adequate opportunity to cross-examine Mr. Blecker.  As the Trustee would be prejudiced if Mr. Blecker's deposition was entered in lieu of his trial testimony, Mr. Blecker should be presented as a live witness or alternative options explored in order to afford the Trustee the opportunity for cross-examination. *See Duttle*, 127 F.R.D. at 49.

### C. The Court Should Exercise its Discretion to Exclude Mr. Blecker's Deposition Because of Credibility Concerns

Even if Mr. Blecker establishes that he is unavailable under Fed. R. Civ. P. 32, the Court should exercise its discretion and exclude Mr. Blecker's deposition testimony as it currently stands due to credibility issues that have arisen since the deposition.  *See Skins & Leather Co.*, 246 B.R. at 747–48 (upholding bankruptcy court decision not to permit deposition's use at trial pursuant to Fed. R. Civ. P. 32 where credibility of deponent's testimony was of particular

---

[52] *See* Blecker Tr. 13:8-14:5.
[53] *See* Aug. 1, 2014 Emails between H. Chaitman and B. Cheema.

concern); *see also Manley v. AmBase Corp.*, 337 F.3d 237, 247 (2d Cir. 2003) (affirming trial court decision to exclude certain deposition testimony from trial).

Certain contemporaneous documents bear on the credibility of Mr. Blecker's thirteen minutes of unchallenged deposition testimony in 2014. Discovery in the profit withdrawal proceeding illuminated inconsistencies between Mr. Blecker's deposition testimony and documentary evidence. *See supra* Factual Background, Part II. For example, Mr. Blecker testified that his account balances went up over time, but his account balance in fact stayed effectively flat during the period of time that his account statements showed PW Transactions.

In fact, this Court has raised concerns with Mr. Blecker's credibility on precisely this issue:

> *I have a question about the credibility of Blecker's statement that he thought this was a great investment*, yet after 15 years he pulls out $206,000 which suggests, you know, the kind of interest rate you'd get today on a checking account. He's getting these statements every month that are showing debits or whenever these profit withdrawals occur and he doesn't say anything. I don't know what those are.[54]

> \*      \*      \*

> I mentioned the last time that there are things about [Mr. Blecker's deposition] testimony that [strain] a little credibility, or credulity…[55]

In addition to the credibility concerns noted by the Court, other inconsistencies exist between Mr. Blecker's statements regarding what documents he retained and those documents he produced to the Trustee. For example, Mr. Blecker has stated in this litigation that he had in his possession certain BLMIS account documents from 1988 to 2008.[56] At another point, he said he

---

[54] Hr'g re: Mot. to Allow Customer Claim of Aaron Blecker at 30:5–12, Feb. 24, 2016, ECF No. 12885 ("Feb. 2016 Hr'g Tr.") (emphasis added).

[55] July 2016 Hr'g Tr. 10:5–8.

[56] Blecker's June 2014 Responses.

only had BLMIS account statements from 1995.[57]    And then he said he had no responsive documents whatsoever, including customer statements.[58]   Inconsistencies like these bear on Mr. Blecker's credibility and are relevant areas for cross-examination with respect to Mr. Blecker's claims determination.

Despite Mr. Blecker's testimony that he never took any withdrawals from BLMIS, Mr. Blecker's document production—produced after his deposition in 2014—contains BLMIS account statements with PW Transactions and handwritten notations that tabulate his investment returns.  The handwritten notations include the "PW" amounts into the amount of his investment return for the relevant time period—effectively treating the PW entries as debits from the profits in the account.

Finally, Mr. Blecker's deposition testimony that the PW Transactions on his customer statements were checks sent to companies to purchase securities for his accounts is also contrary to the facts developed during discovery in the profit withdrawal litigation.   Documents and analyses showed that the PW Transactions appear on BLMIS customer statements after the securities at issue have already been sold, an issue addressed by multiple BLMIS employee witnesses during their depositions and the Trustee's expert witness, Mr. Greenblatt.

The Trustee should have the opportunity to question Mr. Blecker about these inconsistencies, and the Court should have the benefit of a complete record in the context of determining Mr. Blecker's claim. The issues on which the Trustee wishes to take deposition testimony are material, arose after Mr. Blecker's 2014 deposition, and are necessary to assessing Mr. Blecker's credibility.   Without cross-examination, the Trustee will be prejudiced by the admission of Mr. Blecker's testimony in the claims proceeding and will be unable to fully

---

[57] Blecker Objection Claim No. 3907 at 4.
[58] *See* Nov. 2015 Chaitman Letter; Profit Withdrawal Scheduling Order ¶ 6.

present his case concerning Mr. Blecker's claims determinations. *See Duttle*, 127 F.R.D. at 49-50; *see also Waterman Steamship v. Gay Cottons*, 414 F.2d 724 (9th Cir. 1969) (determining whether deposition testimony lacking cross-examination was admissible at trial by assessing whether cross-examination would have materially helped the party opposing entry of the deposition).

## III. PERMITTING A TRIAL DEPOSITION OF MR. BLECKER IS A REASONABLE ALTERNATIVE TO COMPELLING MR. BLECKER TO APPEAR LIVE AT TRIAL

Whether being offered on the omnibus issue or on his individual claims objection, the Trustee is entitled to cross-examine Mr. Blecker prior to admitting the deposition transcript at the evidentiary hearing. As to the omnibus issue, admitting his deposition would violate both Fed. R. Evid. 602's requirement of personal knowledge and Fed. R. Civ. P. 32's requirements to establish admissibility of a deposition as trial testimony. Nor should it be permitted in this Court's discretion given the credibility concerns discussed above. Even in his individual claims proceeding, consistent with this Court's statements, Mr. Blecker's deposition testimony cannot be admitted without permitting the Trustee the reasonable opportunity for cross-examination under Fed. R. Civ. P. 32.[59] Thus, upon a showing by counsel that Mr. Blecker is not available, the Trustee would be amenable to conducting a trial deposition of Mr. Blecker prior to the evidentiary hearing and admitting both deposition transcripts, subject to admissibility objections. As has always been his position, the Trustee is willing to accommodate Mr. Blecker for the deposition at a time and place convenient for him.

The advantage of a trial deposition at this stage is that it permits both parties the opportunity to show Mr. Blecker those documents made available in the course of discovery that

---

[59] *See* July 2016 Hr'g Tr. 6:8–15 (regarding Trustee's right to question Mr. Blecker regarding his individual claims determinations).

were not produced at the time of his initial deposition in 2014.  Courts have permitted *de bene esse* depositions in similar circumstances, where a witness is anticipated to be unavailable at trial and certain issues needed to be addressed by the witness in advance of trial. *See Ladenburg Thalmann & Co., Inc. v. Modern Continental Construction Holding Co.*, 408 F. App'x 401 (2d Cir. 2010); *RLS Associates, LLC v. United Bank of Kuwait PLC*, No. 01 Civ. 1290 (CSH), 2005 WL 578917, at *7 (S.D.N.Y. Mar. 11, 2005) (permitting deposition *de bene esse* where it was clear that the deposition was to preserve testimony and there was no need for the defendants to take a deposition of their own witness during the discovery period"); *see also Kingsway Financial Services, Inc. v. PricewaterhouseCoopers LLP*, No. 03 Civ. 5560 (RMB), 2008 WL 5423316, at *2 (S.D.N.Y. Dec. 31, 2008) (addressing parties' ability to take *de bene esse* depositions once the discovery period has closed).

Permitting a trial deposition allows the parties to accommodate Mr. Blecker's schedule and any potential restrictions on his availability while comporting with the Federal Rules of Evidence and Civil Procedure.

## CONCLUSION

For all the foregoing reasons, the Trustee respectfully requests that the Court exclude Mr.

Blecker's July 1, 2014 deposition testimony or, in the alternative, authorize the Trustee to take

Mr. Blecker's *de bene esse* deposition.

Dated: October 28, 2016      Respectfully submitted,
   New York, New York

            BAKER & HOSTETLER LLP


            By:  /s/ David J. Sheehan
              **Baker & Hostetler LLP**
              45 Rockefeller Plaza
              New York, New York 10111
              Telephone: (212) 589-4200
              Facsimile: (212) 589-4201
              David J. Sheehan
              Email: dsheehan@bakerlaw.com
              Seanna R. Brown
              Email: sbrown@bakerlaw.com
              Amy E. Vanderwal
              Email: avanderwal@bakerlaw.com

              *Attorneys for Irving H. Picard, Trustee for the*
              *substantively consolidated SIPA Liquidation of*
              *Bernard L. Madoff Investment Securities LLC*
              *and the Estate of Bernard L. Madoff*