# Exhibit B1

## Relevant Deposition Excerpts for Annette Bongiorno

**CONFIDENTIAL**

Page 1

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

Adv. Pro. No. 08-01789(SMB)

SIPA Liquidation
(Substantially consolidated)

SECURITIES INVESTOR PROTECTION
CORPORATION,

    PLAINTIFF,

  -vs-

BERNARD L. MADOFF INVESTMENT
SECURITIES, LLC,
    DEFENDANT.
_____/

IN RE:
BERNARD L. MADOFF,

    DEBTOR.
_____/

CONFIDENTIAL

REALTIME DEPOSITION OF
ANNETTE BONGIORNO

Pages 1 through 270

Friday, July 8, 2016
8:34 a.m. to 3:15 p.m.

Federal Correctional Institution Coleman Medium
846 NE 54th Terrace
Sumterville, Florida 33521

Stenographically Reported By:
Elizabeth A. Speer, CRR, RMR, FPR,
Realtime Systems Administrator

Page 31

1  was determined before even a trade was done.  When
2  they -- how were they going to fund it.  Usually with a
3  check, or a wire transfer later on.  And did they want
4  their profits on the account reinvested or did they
5  want it sent to them.
6       Q.   Okay.
7       A.   So if the client said they wanted their
8  profits, that's when we would send out a profit check.
9       Q.   And this was done when they opened their
10 account.
11      A.   It was agreed upon between the customer and
12 my boss before the account was even opened.  Not that
13 it couldn't have changed.  I'm sorry, it could have
14 changed.  They could have changed their mind two,
15 three years later, but that was how it was agreed upon
16 opening the account.
17      Q.   Okay.  When you say your boss, you mean
18 Mr. Madoff.
19      A.   Mr. Madoff.
20      Q.   Okay.  And I want to stick right now with
21 just the time period of when the initial decision is
22 made about profits.  We can get to any changes that the
23 customer may have made later.
24      A.   Okay.
25      Q.   But just sticking right now with the initial

Page 32

1  election.
2      A.   Uh-huh.
3      Q.   So the customer would determine -- would the
4  customer determine whether they wanted their profits
5  sent or reinvested?
6      A.   I would say yes.  They had that choice.  In
7  some cases Mr. Madoff decided we're going to do that.
8      Q.   Okay.  And sticking with the -- sticking with
9  the customers who made that choice, how would they
10 communicate that to BLMIS, that choice?
11     A.   Well, I guess they would just discuss it with
12 him.  And then I would be given instructions.
13     Q.   When you say they would "discuss it with
14 him," you mean discuss it with Mr. Madoff?
15     A.   Yes.
16     Q.   And they would discuss it with him over the
17 phone?
18     A.   Or in person.  I think most of the customers
19 came up in the beginning to discuss their account with
20 him.
21     Q.   Uh-huh.  Did you have any discussions with
22 customers about the decision as to whether they would
23 reinvest or have their profits sent to them?
24     A.   Most of the time, no.  But sometimes I would
25 confirm with them.  I didn't always speak to a customer

```
 1   right away.  So --
 2        Q.   And you would -- how would you confirm with
 3   them?
 4        A.   Just over the phone.
 5        Q.   So let's stick with the examples where
 6   Mr. Madoff and the -- the decision was made between
 7   Mr. Madoff and the customer.
 8        A.   Uh-huh.
 9        Q.   What would happen after the customer and
10   Mr. Madoff communicated?  What would happen next?
11        A.   Well, he would give me the instructions, and
12   I would make note of it on an account page that I had.
13   Once we were automated, it would be on a page that went
14   to the keypunch operators, and it would be punched and
15   put into the computer.
16        Q.   Was there -- when an account was opened at
17   BLMIS, was there a default as to whether or not an
18   account was set up as a send account or a reinvest
19   account?
20        A.   A default?  You know, if he didn't remember,
21   he might have said to me call them up and ask them what
22   they wanted, you know.  Is that what you mean?
23        Q.   Yes.  I mean, was there -- without any
24   particular instruction, was there a way that accounts
25   were set up?  Sorry, that's not a very good -- strike
```

Page 34

```
 1   that.
 2            Did --
 3       A.   So you mean if I didn't know, what would I
 4   do?  How would I write it down?
 5       Q.   Yes.
 6       A.   I probably wouldn't.  I would have to ask
 7   somebody.
 8       Q.   And who you would ask?
 9       A.   I would ask my boss, first of all.  And he
10   would either remember or he would tell me to call them.
11   You know, a lot of this was just all done verbally.  I
12   don't think there was a form for that in the beginning.
13   I don't think there was ever a form for that.
14       Q.   And a "form for that," what are you referring
15   to?
16       A.   Meaning the customer wouldn't have a form to
17   fill out that said send it or not.  I don't remember
18   there ever being a form like that.  It was all, you
19   know, just by communication, by -- verbally.
20       Q.   And all -- the election that you described
21   was made when the account was opened.
22       A.   Yes.
23       Q.   Okay.
24       A.   Can I add something?
25       Q.   Yes.
```

Page 69

1    Q.   And based on your review of this document,
2    was the account set up that way?
3    A.   Yes.
4    Q.   So this form, the account is, you know -- I
5    think what you've described so far is that the customer
6    would in some ways speak with Bernie or somehow open
7    the account and then this form would be filled out.
8    A.   That's right.
9    Q.   And then what would happen next?  During the
10   time period where it was automated, what would happen
11   after this form was filled out?
12   A.   Well, Bernie would tell us when we could
13   start trading.  We'd also send out these papers, the
14   other papers that are in here.  We'd send out trading
15   authorizations and trading agreements, option
16   agreements, whatever pertains to the account.
17         Once we got all the paperwork back, we
18   would -- he would tell us that, you know, we could
19   start trading for them.  But I'm noticing here there's
20   a note.
21   Q.   Okay.
22   A.   That's my note.  This person did not send
23   back a tax ID form.
24   Q.   Okay.
25   A.   And when I spoke to Bernie, Bernie said that

Page 267

1                    CERTIFICATE OF OATH
2
3    THE STATE OF FLORIDA )
4    COUNTY OF SUMTER )
5
6
7
8
9    I, the undersigned authority, certify that
10   ANN BONGIORNO personally appeared before me and was
11   duly sworn on the 8th day of JULY, 2016.
12
13
14   Signed this 11th day of JULY, 2016.
15
16
17   _____
     ELIZABETH A. SPEER
18   Notary Public - State of Florida
     My Commission No. FF 928093
19   My Commission Expires: 11/28/19
20
21
22
23
24
25

**CONFIDENTIAL**

Page 268

1                    CERTIFICATE OF REPORTER

2    THE STATE OF FLORIDA )

3    COUNTY OF SUMTER )

4

5         I, ELIZABETH A. SPEER, CRR, RMR, FPR, RSA, certify that

6    I was authorized to and did stenographically report the

7    deposition of ANNETTE BONGIORNO, pages 5 through 266; that a

8    review of the transcript was requested; and that the

9    transcript is a true and complete record of my stenographic

10   notes.

11        I further certify that I am not a relative, employee,

12   attorney, or counsel of any of the parties, nor am I a

13   relative or employee of any of the parties' attorney or

14   counsel connected with the action, nor am I financially

15   interested in the action.

16

17              DATED this 11th day of July, 2016.

18

19

20         _____
           ELIZABETH A. SPEER
21         Certified Realtime Reporter
           Registered Merit Reporter
22         Florida Professional Reporter
           Realtime Systems Administrator
23

24

25

**SIPC v BLMIS-CONFIDENTIAL**              **Bongiorno 7/8/2016**
**CONFIDENTIAL**

Page 269

```
 1   July 11, 2016
 2   ANNETTE BONGIORNO
     c/o Roland G. Riopelle, Esq.
 3   Sercarz & Riopelle, LLP
     810 Seventh Avenue, Suite 620
 4   New York, New York 10009
 5   IN RE:  SIPC v BLMIS
     CASE NO.:  08-01789(SMB)
 6
     Please take notice that on the 8th day of JULY, 2016,
 7   you gave your deposition in the above cause.  At that
     time you did not waive your signature.
 8
     The above-addressed attorney has ordered a copy of this
 9   transcript and will make arrangements with you to read
     their copy.  Please execute the Errata Sheet, which can
10   be found at the back of the transcript, and have it
     returned to us for distribution to all parties.
11
     If you do not read and sign the deposition within 30
12   days, the original, which has already been forwarded to
     the ordering attorney, may be filed with the Clerk of
13   the Court.
14   If you wish to waive your signature now, please sign
     your name in the blank at the bottom of this letter and
15   return it to the address listed below.
16   Very truly yours,
17
     ELIZABETH A. SPEER, CRR, RMR, FPR, RSA
18   Phipps Reporting, Inc.
     1551 Forum Place
19   Building 200, Suite E
     West Palm Beach, Florida 33401
20
     I do hereby waive my signature.
21
22   _____
     ANNETTE BONGIORNO
23
24
25
```

**BENDISH REPORTING**
**877.404.2193**

**SIPC v BLMIS-CONFIDENTIAL**          **Bongiorno 7/8/2016**
                    **CONFIDENTIAL**

Page 270

1                        ERRATA SHEET
          DO NOT WRITE ON TRANSCRIPT - ENTER CHANGES HERE
2                      IN RE: SIPC v BLMIS
                   ADV. PRO. NO. 08-01789(SMB)
3   WITNESS: ANNETTE BONGIORNO         TAKEN:  07/08/2016

4
    PAGE     LINE      CHANGE            REASON FOR CHANGE
5   _____

6   _____

7   _____

8   _____

9   _____

10  _____

11  _____

12  _____

13  _____

14  _____

15  _____

16  _____

17  _____

18  _____

19  _____

20  _____

21  _____

22       Under penalties of perjury, I declare that I have read
    the foregoing document and that the facts stated in it are
23  true.

24  _____      _____
    Date                 ANNETTE BONGIORNO
25

**BENDISH REPORTING**
**877.404.2193**

08-01789-cgm    Doc 14361-3    Filed 10/28/16    Entered 10/28/16 21:17:04    Exhibit B1
to Laura Clinton Declaration    Pg 12 of 12
SIPC v BLMIS-CONFIDENTIAL                           Bongiorno 7/8/2016
                    CONFIDENTIAL

Page 271

**A**

**a.m**
1:20 5:2 83:2,2 142:9
**Aaron**
2:9 51:15 52:21 90:11
  95:5,25 101:2 117:16
  118:11 158:21 214:15
  214:16,17 243:10
  245:8 264:2,6
**AB**
223:12 226:4
**abbreviated**
67:12
**Abe**
152:23
**ability**
9:11 175:6 236:15
**able**
256:14
**above-addressed**
269:8
**absolute**
165:6
**Absolutely**
40:3,16 208:14
**account**
3:18,20,24 4:2 29:1
  30:15 31:4,10,12,16
  32:19 33:12,16,18,18
  33:19 34:21 35:1,9,20
  35:25 36:1,2,10,10,20
  36:20 37:1,2,20,21,23
  37:24 38:14,19,20
  42:12 44:13 45:18
  49:23,24 52:1,2,12
  53:18 54:20 55:21,22
  57:8,11,15,18 59:4,20
  62:2,4,11,22 64:20,22
  64:23 65:4 66:4 67:11
  68:23 69:2,4,7,16
  71:10 72:3,8 73:9,10
  73:24 74:9,22 79:12
  81:6,6,8 87:6,7,12,13

87:15,16,24 88:3,4,10
88:11,13,19,22 89:2
89:12,13,14,20,21,24
90:3,4,6,9,12 93:25
94:11 95:17,23 99:13
99:20 100:4,7,10,15
100:15 101:3,19
102:5 103:20 104:6,7
104:8,10,17 105:21
105:23 106:3,6,7,17
106:17,19,19 107:24
108:8,11 109:6 110:6
111:16,23 112:16
113:9 114:17,21,24
115:8,17 116:13
117:15 118:3,10,12
118:15,16 119:7,14
119:18 120:5,18,19
120:20 121:1,7,9
122:1,7 123:19
125:23 126:19 127:25
128:2,3 132:20,20,21
133:7 135:7 137:5
138:20 139:14,15,22
141:24 142:1,16
145:13,22 146:3,7,16
146:17,19 147:9,11
147:18 148:20 149:3
149:12 155:8,10,11
156:12,16 161:4,19
161:20 162:8 168:15
168:18,21 169:13
171:10,14,20 172:6
172:22 173:3,14,16
173:17,17,24 175:25
176:6,7,16,20 177:1
177:11,11,14 183:23
184:1,3,3,16,22 190:3
190:3 193:5,10
194:15,17 195:5,12
196:4 203:22 204:17
208:12 212:25 214:8
214:9 218:19,19,22

221:3,4,5 222:4,5,6,6
222:7,11,13,15,16
226:16 227:1,5,8,8,21
228:1,3,3,4,6,7,17
231:13 232:3,5 240:5
240:5 242:9,12,15,16
242:20 243:4,9,11
244:2,5,9,11,18 245:2
245:6 246:10,20
247:2,6,7,8,19,25
248:22 249:23 252:10
252:14,15,16 253:23
253:24,24 254:1,5,8
254:20 255:8,9,10,11
255:16,20,25 256:10
263:8,11,13,16,17,21
264:2,5,7,9,11,18,19
265:7,10,12,14,21,24
265:24 266:7,8,10,13
266:14,14,18
**account's**
99:15
**accounts**
16:17,19,25 17:2,4,6,9
  17:11,13 20:21 21:17
  21:21 23:12,23 29:11
  29:13 30:24 33:24
  41:1,8 42:24 48:9
  49:20 53:11 54:18,19
  54:19,21,22,24 55:5,9
  55:14 56:9,10,21 57:2
  58:25 60:7,14,22,23
  60:25 61:4,14,18,21
  63:12 72:11 88:24
  89:5 90:2,3 110:22
  111:8 119:11,23,24
  131:11 132:7,8,9
  135:9,10 137:16
  138:1,17 148:7,7
  150:3 151:1,12,16
  152:13,24,25 153:7
  156:15,16,18,19,21
  156:22,23 160:13

161:7,12,13,17,23
162:12,18 163:2,5,6,7
163:16,21 164:1
166:1 169:21 171:18
176:19 181:5 183:13
183:17 184:6 185:2
189:12 192:18 194:12
195:17 201:17,24
202:2,4 203:25
204:11 205:3 214:5,6
228:8 238:24 240:7,8
240:13 243:21 246:9
248:2,19,23 250:13
250:14,15,22 251:15
251:16 252:4,5,5,9,12
252:17,21 253:1,12
253:13,14,22 258:4
264:21
**accurate**
143:6,9 205:10,11
  206:20 228:15
**accurately**
9:19
**acknowledged**
8:3
**action**
268:14,15
**actual**
142:1 160:22 161:4
  167:23 203:10 205:4
  253:10 254:6 264:23
**add**
34:24 76:11 85:18
  125:11 173:6 204:12
  204:24,24 247:24
**added**
125:11
**addition**
48:3 138:8,10,19
**additional**
6:18 48:6 180:1
**additions**
112:5