| | |
|---|---|
| **BAKER & HOSTETLER LLP** | Hearing Date: November 30, 2016 at 10:00 a.m. |
| 45 Rockefeller Plaza | Objection Deadline: November 23, 2016 |
| New York, New York 10111 | |
| Telephone: (212) 589-4200 | |
| Facsimile: (212) 589-4201 | |
| David J. Sheehan | |
| Kathryn M. Zunno | |
| Esterina Giuliani | |

*Attorneys for Irving H. Picard, Esq., Trustee*
*for the Substantively Consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities LLC*
*and the Estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (SMB) |
| Plaintiff, | SIPA Liquidation |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | |
| Plaintiff, | Adv. Pro. No. 09-01305 (SMB) |
| v. | |
| COHMAD SECURITIES CORPORATION, *et al.*, | |
| Defendants. | |

**MOTION FOR ENTRY OF ORDER PURSUANT TO SECTION 105(a) OF THE BANKRUPTCY CODE AND RULES 2002 AND 9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE APPROVING A SETTLEMENT AGREEMENT BY AND BETWEEN THE TRUSTEE AND COHMAD SECURITIES CORPORATION, MARCIA B. COHN, INDIVIDUALLY AND IN HER CAPACITY AS CO-EXECUTOR OF THE ESTATE OF MAURICE COHN, AND MARILYN COHN, INDIVIDUALLY AND IN HER CAPACITY AS CO-EXECUTOR OF THE ESTATE OF MAURICE COHN**

TO:   THE HONORABLE STUART M. BERNSTEIN
      UNITED STATES BANKRUPTCY JUDGE:

Irving H. Picard (the "Trustee"), as trustee for the liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa-*lll* ("SIPA")[1] and the substantively consolidated Chapter 7 estate of Bernard L. Madoff ("Madoff," and together with BLMIS, the "Debtors"), by and through his undersigned counsel, submits this motion (the "Motion") seeking entry of an order, pursuant to § 105(a) of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq*. (the "Bankruptcy Code"), and Rules 2002 and 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), approving a settlement, the terms and conditions of which are set forth in the Release and Settlement Agreement (the "Agreement")[2] by and between the Trustee, on the one hand, and, on the other hand, Cohmad Securities Corporation ("Cohmad"), Marcia B. Cohn, individually and in her capacity as co-executor of the Estate of Maurice Cohn, and Marilyn Cohn, individually and in her capacity as co-executor of the Estate of Maurice Cohn (collectively, the "Cohmad Defendants," and together with the Trustee, the "Parties").[3]  In support of the Motion, the

---

[1] Further citations to SIPA will omit "15 U.S.C." and refer only to the relevant sections of SIPA.

[2] The form of the Agreement is attached hereto as Exhibit A.

[3] Maurice "Sonny" Cohn died in May 2015.  Marcia B. Cohn and Marilyn Cohn in their capacities as co-executors of the Estate of Maurice Cohn were substituted as defendants to replace Sonny Cohn (ECF No. 372).

2

Trustee respectfully represents as follows:

## PRELIMINARY STATEMENT

1. On June 22, 2009, the Trustee commenced an adversary proceeding against the Cohmad Defendants (and other defendants) to avoid and recover fraudulent transfers under various provisions of the Bankruptcy Code and the New York Debtor & Creditor Law (the "Adversary Proceeding"). The Trustee filed his First Amended Complaint on October 8, 2009, seeking to avoid and recover fraudulent transfers consisting of, among other things, (i) withdrawals the Cohmad Defendants made in connection with their BLMIS Investment Advisory ("IA") accounts (the "IA Transfers") and (ii) payments made directly or indirectly to the Cohmad Defendants from BLMIS and/or Madoff in connection with referring investors to BLMIS (the "Non-IA Transfers," and with the IA Transfers, the "Avoidable Transfers"). *See* First Amended Complaint, *Picard v. Cohmad Securities Corp.*, Adv. Pro. No. 09-01305 (Bankr. S.D.N.Y. Filed October 8, 2009), ECF No. 82.

2. Besides the Cohmad Defendants, the Adversary Proceeding is currently pending against Milton S. Cohn,[4] Alvin J. Delaire, Jr., the Estate of Stanley Merwin Berman A/K/A Stanley M. Berman, Jonathan Greenberg, Morton Kurzrok, Linda Schoenheimer McCurdy, Richard Spring, Jane M. Delaire A/K/A Jane Delaire Hackett, Carole Delaire, Edward H Kohlschreiber, Edward H Kohlschreiber Sr Rev Mgt Trust, Joyce Berman, S & J Partnership, the Estate of Janet Jaffin, Milton Cooper in his capacity as Trustee of the Janet Jaffin Dispositive Trust and as co-executor of the Estate of Janet Jaffin, Matthew Greenberg, as co-executor of the Estate of Janet Jaffin, Lois Levine as co-Executor of the Estate of Janet Jaffin, the Spring Family

---

[4] Milton S. Cohn died in August 2015. Marcia B. Cohn and Sherry Gaines in their capacities as co-executors of the Estate of Milton S. Cohn were substituted as defendants to replace Milton S. Cohn (ECF No. 372).

3

Trust, the Jeanne T. Spring Trust, and Elizabeth M. Moody (the "Remaining Defendants"). The Trustee continues to pursue his claims against these defendants and the claims against these defendants are not being dismissed or released under the Agreement.

3. In the Adversary Proceeding, the Trustee alleged, among other things, that the Cohmad Defendants knew of fraud at BLMIS.

4. In connection with the IA Transfers to Maurice "Sonny" Cohn, Marcia Cohn, and Marilyn Cohn (collectively, the "Cohn Family Defendants"), the Trustee sought lifetime transfers aggregating Twenty-Seven Million Six Hundred Eighty Thousand Seven Hundred Sixty-Five United States Dollars ($27,680,765).

5. In connection with the Non-IA Transfers to Sonny Cohn, the Trustee sought lifetime transfers aggregating approximately Thirty-Seven Million Six Hundred Sixty-Seven Thousand Twenty-Four United States Dollars ($37,667,024).

6. In connection with the Non-IA Transfers to Marcia Cohn, the Trustee sought lifetime transfers aggregating approximately One Million Seven Hundred Eighty-Five Thousand Five Hundred Seventy United States Dollars ($1,785,570).

7. In the Adversary Proceeding, the Trustee also alleged that Cohmad itself received initial transfers from BLMIS for referring investors into the Ponzi scheme totaling over Ninety-Eight Million United States Dollars ($98,000,000), the vast majority of which was subsequently transferred to certain of Cohmad's registered representatives, many of whom are still defendants in this action (the "Remaining Subsequent Transferee Defendants").[5] As Cohmad is insolvent

---

[5] The Cohmad registered representatives who are defendants in the Adversary Proceeding that received these subsequent transfers include: Marcia Cohn, Stanley M. Berman, Alvin J. Delaire, Jr., Jonathan Greenberg, Morton Kurzrok, Linda Schoenheimer McCurdy, and Richard Spring. The Remaining Subsequent Transferee Defendants include all of the foregoing except Marcia Cohn, who is a part of this settlement.

4

and non-operational, the Trustee will continue to pursue his claims to recover such transfers made to the Remaining Subsequent Transferee Defendants.

8. The Cohmad Defendants deny the factual and legal validity of the Trustee's claims and maintain that they had no knowledge or awareness of any fraud at BLMIS, Madoff's crimes or reason to believe that he was operating a Ponzi scheme.

9. Following extensive good faith negotiations, the Parties were able to reach a consensual resolution in the Adversary Proceeding. The Parties entered into the Agreement, which represents a complete settlement of all disputes as detailed in the Agreement between the Trustee and the Cohmad Defendants raised in the Adversary Proceeding, and the customer claim Marcia Cohn submitted in connection with her BLMIS IA Account No. 1C1295.

10. By the Agreement, the Trustee will recover Thirty-Two Million One Hundred Thousand United States Dollars ($32,100,000) (the "Settlement Payment") collectively from the Cohn Family Defendants (including Sonny Cohn's estate), inclusive of interest. As part of the Agreement, Marcia Cohn is assigning her customer claim to the Trustee, which will be deemed allowed.

11. The Trustee's settlement with the Cohmad Defendants will obtain significant, direct monetary benefit for the estate and customers of BLMIS. The Trustee therefore respectfully requests that the Court approve this settlement.

## BACKGROUND

### *The Commencement of the BLMIS Liquidation Proceeding*

12.     On the Filing Date,[6] the Securities and Exchange Commission (the "SEC") filed a complaint in the United States District Court for the Southern District of New York (the "District Court") against the Debtors (Case No. 08 CV 10791). The complaint alleged that the Debtors engaged in fraud through investment advisor activities of BLMIS.

13.     On December 15, 2008, pursuant to § 78eee(a)(4)(A) of SIPA, the SEC consented to a combination of its own action with an application of the Securities Investor Protection Corporation ("SIPC"). Thereafter, pursuant to § 78eee(a)(3) of SIPA, SIPC filed an application in the District Court alleging, *inter alia*, that BLMIS was not able to meet its obligations to securities customers as they came due and, accordingly, its customers needed the protection afforded by SIPA.

14.     On that date, the District Court entered the Protective Decree, to which BLMIS consented, which, in pertinent part:

> (i) removed the receiver and appointed the Trustee for the liquidation of the business of BLMIS pursuant to section 78eee(b)(3) of SIPA;
> (ii) appointed Baker & Hostetler LLP as counsel to the Trustee pursuant to section 78eee(b)(3) of SIPA; and
> (iii) removed the case to this Court pursuant to section 78eee(b)(4) of SIPA, where it is pending as Case No. 08-01789 (SMB) (the "SIPA Proceeding").

15.     At a plea hearing on March 12, 2009 (the "Plea Hearing") in the criminal action filed against him by the United States Attorney's Office for the Southern District of New York,

---

[6] In this case, the Filing Date is the date on which the Securities and Exchange Commission commenced its suit against BLMIS, December 11, 2008, which resulted in the appointment of a receiver for the firm. *See* § 78*lll*(7)(B) of SIPA.

6

Madoff pled guilty to an eleven-count criminal information, which counts included securities fraud, money laundering, theft and embezzlement. At the Plea Hearing, Madoff admitted that he "operated a Ponzi scheme through the investment advisory side of [BLMIS]." Plea Hr'g Tr. at 23:14-17. On June 29, 2009, Madoff was sentenced to a term of imprisonment of 150 years.

16. On April 13, 2009, an involuntary bankruptcy petition was filed against Madoff. On June 9, 2009, this Court entered an order substantively consolidating the Chapter 7 estate of Madoff into the BLMIS SIPA Proceeding.

### *The Transfers*

#### *The IA Transfers*

17. The Trustee alleged that the Cohn Family Defendants received avoidable transfers from BLMIS in connection with BLMIS IA Account Nos. 1C1069, 1C1311, 1C1228, 1C1342, 1C1296, and 1CM640 (the "BLMIS IA Accounts") over the lifetime of these accounts in the aggregate amount of Twenty-Seven Million Six Hundred Eighty Thousand Seven Hundred Sixty-Five United States Dollars ($27,680,765) (collectively, the "BLMIS IA Account Transfers").

18. Cohmad also received avoidable transfers from BLMIS in connection with BLMIS IA Account No. 1C1067 in the aggregate amount of One Hundred Twenty-Five Thousand Four United States Dollars ($125,004) more than six years prior to the Filing Date.

#### *The Non-IA Transfers*

19. The Trustee alleged that, between 1996 and 2008, Cohmad received initial transfers from BLMIS for referring investors to BLMIS totaling approximately Ninety-Eight Million Four Hundred Forty-Eight Thousand Six Hundred Seventy-Eight United States Dollars ($98,448,678), the vast majority of which was subsequently transferred to the Remaining

7

Subsequent Transferee Defendants. As Cohmad is insolvent and non-operational, the Trustee will continue to pursue his claims to recover these transfers made to the Remaining Subsequent Transferee Defendants.

20. Further, in connection with referring investors to BLMIS: (i) Sonny Cohn received avoidable transfers from BLMIS in the aggregate amount of approximately Thirty-Seven Million Six Hundred Sixty-Seven Thousand Twenty-Four United States Dollars ($37,667,024) from 1986 through 2008; and (ii) Marcia Cohn received avoidable transfers directly or indirectly from BLMIS (including indirectly from Cohmad) of approximately One Million Seven Hundred Eighty-Five Thousand Five Hundred Seventy United States Dollars ($1,785,570) from 1993 through 2008.

21. The following chart details the Avoidable Transfers that the Trustee alleged the Cohn Family Defendants received:

**IA AND NON-IA TRANSFERS RECEIVED BY THE COHN FAMILY DEFENDANTS[7]**

| **Transfers** | **Two-Year Period** | **Six-Year Period** | **Life to Date** |
|---|---|---|---|
| *IA Transfers* | | | |
| Fictitious Profits | $ 2,966,110 | $11,958,743 | $26,457,829 |
| Principal | $          0 | $    366,347 | $ 1,222,936 |
| Total | $ 2,966,110 | $12,325,090 | $27,680,765 |
| *Non-IA Transfers* | | | |
| Sonny Cohn | $ 4,000,000 | $12,164,048 | $37,667,024 |
| Marcia Cohn | $   321,835 | $ 1,178,150 | $ 1,785,570 |
| Total | $ 4,321,835 | $13,342,198 | $39,452,594 |
| **Overall Total IA and Non IA Transfers** | $ 7,287,945 | $25,667,288 | $67,133,359 |

---

[7] This chart does not include the IA and Non-IA Transfers that the Trustee alleged Cohmad received (as further detailed in ¶¶ 18 and 19 herein) because, as explained in ¶ 19 *supra*, Cohmad is insolvent and non-operational, and the Trustee will continue to pursue the vast majority of these transfers from the Remaining Subsequent Transferee Defendants.

8

*Marcia Cohn's Customer Claim*

22. Marcia Cohn filed a customer claim, which was designated as Claim No. 002799 (the "Customer Claim") in connection with BLMIS IA Account No. 1C1295. The net equity of the Customer Claim is Sixty-Five Thousand Two Hundred Eight United States Dollars and Forty-Two Cents ($65,208.42). In connection with the Agreement, the Customer Claim shall be deemed conclusively allowed pursuant to section 502 of the Bankruptcy Code and 15 U.S.C. § 78*lll*(11), and Marcia Cohn is assigning the Customer Claim to the Trustee for the benefit of the estate.

## SETTLEMENT DISCUSSIONS AND THE TRUSTEE'S INVESTIGATION

23. The Parties, through their counsel, engaged in extensive good faith discussions and negotiations aimed at resolving the Trustee's claims and the Customer Claim. The Trustee has conducted a comprehensive investigation of the Avoidable Transfers that the Cohmad Defendants received directly and indirectly from Madoff and/or BLMIS. As part of his investigation, the Trustee, among other things: (i) reviewed hundreds of thousands of BLMIS, Cohmad, and defendant-produced documents; (ii) reviewed and analyzed BLMIS-related transactional histories as reflected in the BLMIS account statements, correspondence and other records and documents available to the Trustee; and (iii) conducted a substantial review of third-party records and documents.

24. After reviewing the relevant records and documents, considering the relevant facts and complex legal issues, and thoroughly and deliberately considering the uncertainty and risks inherent in all litigation, the Trustee, in the exercise of his business judgment, has determined that it is appropriate to reach a consensual resolution for the Parties rather than to continue the litigation.

25. On November 3, 2016, the Trustee and the Cohmad Defendants executed the Agreement wherein they agreed to settle the matters at issue in the Adversary Proceeding on the terms summarized below. The Agreement resolves any and all disputes arising out of the Avoidable Transfers.

## OVERVIEW OF THE AGREEMENT

26. The principal terms and conditions of the Agreement are generally as follows:[8]

- The Estate of Maurice Cohn and Marilyn Cohn will pay or cause to be paid Thirty-Two Million One Hundred Thousand United States Dollars ($32,100,000) to the Trustee, inclusive of interest, for the benefit of the fund of customer property within thirty (30) days of the Bankruptcy Court's approval of the Agreement by an order that is no longer subject to appeal, review, or rehearing;

- Marcia Cohn will assign to the Trustee the Customer Claim, which shall be deemed allowed;

- The Cohmad Defendants will release, acquit, and forever discharge the Trustee and all his agents and BLMIS and its consolidated estate on the specific terms set forth in the Agreement; and

- The Trustee will release, acquit, and forever discharge the Cohmad Defendants on the specific terms set forth in the Agreement.

## RELIEF REQUESTED

27. By this Motion, the Trustee respectfully requests that the Court enter an order

---

[8] The Agreement is attached as Exhibit A and may be reviewed for a complete account of its terms.

10

substantially in the form of the proposed Order attached hereto as Exhibit B approving the Agreement.

## LEGAL BASIS

28.     Bankruptcy Rule 9019(a) provides, in pertinent part, that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Courts have held that in order to approve a settlement or compromise under Bankruptcy Rule 9019(a), a bankruptcy court should find that the compromise proposed is fair and equitable, reasonable, and in the best interests of a debtor's estate. *In re Ionosphere Clubs, Inc.*, 156 B.R. 414, 426 (S.D.N.Y. 1993), *aff'd*, 17 F.3d 600 (2d Cir. 1994) (citing *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968)).

29.     The Second Circuit has stated that a bankruptcy court, in determining whether to approve a compromise, should not decide the numerous questions of law and fact raised by the compromise, but rather should "canvass the issues and see whether the settlement 'fall[s] below the lowest point in the range of reasonableness.'" *Liu v. Silverman (In re Liu)*, 1998 U.S. App. LEXIS 31698, at *3 (2d Cir. Dec. 18, 1998) (quoting *In re W.T. Grant Co.*, 699 F.2d 599, 608 (2d Cir. 1983)); *see Masonic Hall & Asylum Fund v. Official Comm. of Unsecured Creditors (In re Refco, Inc.)*, 2006 U.S. Dist. LEXIS 85691, at *21-22 (S.D.N.Y. Nov. 16, 2006); *In re Ionosphere Clubs*, 156 B.R. at 426. "[T]he court need not conduct a 'mini-trial' to determine the merits of the underlying litigation." *In re Purified Down Prods. Corp.*, 150 B.R. 519, 522 (S.D.N.Y. 1993).

30.     In deciding whether a particular compromise falls within the "range of reasonableness," courts consider the following factors:

       (i)     the probability of success in the litigation;
      (ii)    the difficulties associated with collection;

    (iii)    the complexity of the litigation, and the attendant expense, inconvenience, and delay; and

    (iv)    the paramount interests of the creditors (or in this case, customers).

*In re Refco, Inc.*, 2006 U.S. Dist. LEXIS 85691, at *22; *Nellis v. Shugrue*, 165 B.R. 115, 122 (S.D.N.Y. 1994) (citing *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 292 (2d Cir. 1992), *cert. dismissed*, 506 U.S. 1088 (1993)).

31. The bankruptcy court may credit and consider the opinions of the trustee or debtor and their counsel in determining whether a settlement is fair and equitable. *See In re Purified Down Prods.*, 150 B.R. at 522; *In re Drexel Burnham Lambert Grp. Inc.*, 134 B.R. 499, 505 (Bankr. S.D.N.Y. 1991). Even though the Court has discretion to approve settlements and must independently evaluate the reasonableness of the settlement, *In re Rosenberg*, 419 B.R. 532, 536 (Bankr. E.D.N.Y. 2009), the business judgment of the trustee and his counsel should be considered in determining whether a settlement is fair and equitable, *In re Chemtura Corp.*, 439 B.R. 561, 594 (Bankr. S.D.N.Y 2010). The competency and experience of counsel supporting the settlement may also be considered. *Nellis*, 165 B.R. at 122. Finally, the court should be mindful of the principle that "the law favors compromise." *In re Drexel Burnham Lambert Grp.*, 134 B.R. at 505 (quoting *In re Blair*, 538 F.2d 849, 851 (9th Cir. 1976)).

32. The Agreement falls well above the lowest point in the range of reasonableness. The Agreement furthers the interest of BLMIS customers by recovering transfers of customer property from the Cohmad Defendants. In addition, the Agreement resolves all claims between the Parties (including the Customer Claim) and avoids the cost and delay of what could otherwise be lengthy and contentious litigation. *See* Affidavit of the Trustee in Support of the Motion (the "Picard Affidavit"). A true and accurate copy of the Picard Affidavit is attached as Exhibit C.

## CONCLUSION

33. In sum, the Trustee believes that the terms of the Agreement fall well above the lowest point in the range of reasonableness. The Agreement will bring an additional Thirty-Two Million One Hundred Thousand United States Dollars ($32,100,000) to the fund of customer property and resolves all potential claims against the Cohmad Defendants relating to the Avoidable Transfers. It also avoids litigation that may be lengthy, burdensome, risky, and expensive. The Trustee further believes that the Agreement represents a fair and reasonable compromise of the Trustee's claims that greatly benefits the estate and the customers of BLMIS. Because the Agreement is well within the range of reasonableness and confers a substantial benefit on the estate, the Trustee respectfully requests that the Court enter an Order approving the Agreement.

## NOTICE

34. In accordance with Bankruptcy Rules 2002 and 9019, notice of this Motion has been given to (i) SIPC; (ii) the SEC; (iii) the Internal Revenue Service; (iv) the United States Attorney for the Southern District of New York; (v) Vinson & Elkins LLP, attn: Clifford Thau and Marisa Antos-Fallon, 666 Fifth Avenue, 26th Floor, New York, New York 10103-0040; and (vi) Richards Kibbe & Orbe LLP, attn: Steven Paradise, 200 Liberty Street, New York, New York 10281. Notice of this Motion will also be provided via email and/or U.S. Mail to all persons who have filed notices of appearance in the BLMIS proceeding and to all defendants in the Adversary Proceeding pursuant to the Order Establishing Notice Procedures and Limiting Notice (ECF No. 4560). The Trustee submits that no other or further notice is required.

35.     WHEREFORE, the Trustee respectfully requests entry of an Order substantially in the form of Exhibit B granting the relief requested in the Motion.

Respectfully submitted,

Dated:  November 4, 2016
        New York, New York

**BAKER & HOSTETLER LLP**

By: */s/ David J. Sheehan*
David J. Sheehan
Email: dsheehan@bakerlaw.com
Kathryn M. Zunno
Email: kzunno@bakerlaw.com
Esterina Giuliani
Email: egiuliani@bakerlaw.com

45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

*Attorneys for Irving H. Picard, Esq., Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Estate of Bernard L. Madoff*