**EXHIBIT A**

**RELEASE AND SETTLEMENT AGREEMENT**

# RELEASE AND SETTLEMENT AGREEMENT

This Release and Settlement Agreement, dated as of November 3, 2016 ("Agreement"), is made by and between Irving H. Picard (the "Trustee"), as trustee for the liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15 U.S.C. §§ 78*aaa-lll* ("SIPA") and the substantively consolidated Chapter 7 case pending before the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") of Bernard L. Madoff ("Madoff"), on the one hand, and, on the other hand, Cohmad Securities Corporation ("Cohmad"), Marcia B. Cohn, individually and in her capacity as co-executor of the Estate of Maurice Cohn, and Marilyn Cohn, individually and in her capacity as co-executor of the Estate of Maurice Cohn (collectively, the "Cohmad Defendants").[1] The Trustee and the Cohmad Defendants shall be referred to herein as the "Parties," and each a "Party."

## BACKGROUND

A. BLMIS and its predecessors were registered broker-dealers and members of the Securities Investor Protection Corporation ("SIPC").

B. On December 11, 2008 (the "Filing Date"), the Securities and Exchange Commission filed a complaint in the United States District Court for the Southern District of New York (the "District Court") against BLMIS and Madoff.

C. On December 15, 2008, the District Court entered an order under SIPA, which, in pertinent part, appointed the Trustee for the liquidation of the business of BLMIS under section 5(b)(3) of SIPA and removed the case to the Bankruptcy Court under section 5(b)(4) of SIPA, where it is pending as Case No. 08-01789 (SMB) (the "SIPA Proceeding"). The Trustee is duly qualified to serve and act on behalf of the BLMIS estate (the "BLMIS Estate"). By Order dated June 9, 2009, the estate of Madoff was substantively consolidated with the BLMIS Estate.

D. Pursuant to section 78fff-1(a) of SIPA, the Trustee has the general powers of a bankruptcy trustee in a case under Chapter 7 of the United States Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code"), as well as the powers granted pursuant to SIPA. Chapters 1, 3, 5 and subchapters I and II of Chapter 7 of the Bankruptcy Code apply to this SIPA Proceeding to the extent consistent with SIPA.

E. Under SIPA, the Trustee is charged with the responsibility to marshal and liquidate the assets of BLMIS for distribution to BLMIS customers and others in accordance with SIPA in satisfaction of allowed claims, including through the recovery of avoidable transfers such as preference payments and fraudulent transfers made by BLMIS.

---

[1] Maurice "Sonny" Cohn died in May 2015. Marcia B. Cohn and Marilyn Cohn in their capacities as co-executors of the Estate of Maurice Cohn were substituted as defendants to replace Sonny Cohn (ECF No. 372).

F.  The Trustee's claims against transferees who received voidable transfers from BLMIS arise under SIPA, including sections 78fff(b), 78fff-1(a) and 78fff-2(c)(3) of SIPA, sections 105(a), 541, 544, 547, 548, 550(a), and 551 of the Bankruptcy Code, the New York Fraudulent Conveyance Act (New York Debtor and Creditor Law § 270 *et seq.* (McKinney 2001)) and other applicable laws.

G.  On June 22, 2009, the Trustee commenced an adversary proceeding against the Cohmad Defendants (and other defendants) to recover fraudulent transfers under various provisions of the Bankruptcy Code and the New York Debtor & Creditor Law (the "Adversary Proceeding"). The Trustee filed his First Amended Complaint ("FAC") on October 8, 2009, seeking to avoid and recover fraudulent transfers consisting of, among other things, (i) withdrawals the Cohmad Defendants made in connection with their BLMIS Investment Advisory ("IA") accounts (the "IA Transfers") and (ii) payments made directly or indirectly to the Cohmad Defendants from BLMIS and/or Madoff in connection with referring investors to BLMIS (the "Non-IA Transfers," with the IA Transfers, the "Avoidable Transfers"). All claims asserted against the Cohmad Defendants by the Trustee in the Adversary Proceeding are collectively referred to as the "Trustee's Claims."

H.  Besides the Cohmad Defendants, the Adversary Proceeding is currently pending against Milton S. Cohn,[2] Alvin J. Delaire, Jr., the Estate of Stanley Merwin Berman A/K/A Stanley M. Berman, Jonathan Greenberg, Morton Kurzrok, Linda Schoenheimer McCurdy, Richard Spring, Jane M. Delaire A/K/A Jane Delaire Hackett, Carole Delaire, Edward H Kohlschreiber, Edward H Kohlschreiber Sr Rev Mgt Trust, Joyce Berman, S & J Partnership, the Estate of Janet Jaffin, Milton Cooper in his capacity as Trustee of the Janet Jaffin Dispositive Trust and as co-executor of the Estate of Janet Jaffin, Matthew Greenberg, as co-executor of the Estate of Janet Jaffin, Lois Levine as co-executor of the Estate of Janet Jaffin, the Spring Family Trust, the Jeanne T. Spring Trust, and Elizabeth M. Moody (the "Remaining Defendants"). The Trustee continues to pursue his claims against these defendants and the claims against these defendants are not being dismissed or released under this Agreement.

I.  In the Adversary Proceeding, the Trustee alleges that the Cohmad Defendants knew about fraud at BLMIS. The Trustee also alleges that Maurice "Sonny" Cohn and Madoff, his friend and former neighbor, founded Cohmad in February 1985. The Trustee further alleges that a significant amount of Cohmad's business was comprised of fees paid by BLMIS to Cohmad for referring investors to BLMIS.

---

[2] Milton S. Cohn died in August 2015. Marcia B. Cohn and Sherry Gaines in their capacities as co-executors of the Estate of Milton S. Cohn were substituted as defendants to replace Milton S. Cohn (ECF No. 372).

2

J. The Cohmad Defendants deny the factual and legal validity of the Trustee's claims and maintain that they had no knowledge or awareness of any fraud at BLMIS, Madoff's crimes or reason to believe that he was operating a Ponzi scheme.

K. **The IA Transfers**. In the Adversary Proceeding, the Trustee alleges that Sonny Cohn, Marcia Cohn, and Marilyn Cohn (collectively, the "Cohn Family Defendants") received avoidable transfers from BLMIS in connection with BLMIS IA Account Nos. 1C1069, 1C1311, 1C1228, 1C1342, 1C1296, and 1CM640 (the "BLMIS IA Accounts") in the aggregate amount of Twenty-Seven Million Six Hundred Eighty Thousand Seven Hundred Sixty-Five United States Dollars ($27,680,765) (collectively, the "BLMIS IA Account Transfers"). Of the BLMIS IA Account Transfers, the Cohn Family Defendants received Two Million Nine Hundred Sixty-Six Thousand One Hundred Ten United States Dollars ($2,966,110) within two years prior to the Filing Date, and Twelve Million Three Hundred Twenty-Five Thousand and Ninety United States Dollars ($12,325,090) within six years prior to the Filing Date.

L. The Trustee also alleges that Cohmad received avoidable transfers from BLMIS more than six years prior to the Filing Date in connection with BLMIS IA Account No. 1C1067 in the aggregate amount of One Hundred Twenty-Five Thousand Four United States Dollars ($125,004).

M. **The Non-IA Transfers**. Between 1996 and 2008, Cohmad received initial transfers from BLMIS for referring investors to BLMIS totaling approximately Ninety-Eight Million Four Hundred Forty-Eight Thousand Six Hundred Seventy-Eight United States Dollars ($98,448,678), the vast majority of which was subsequently transferred to certain of Cohmad's registered representatives, many of whom are still defendants in this action (the "Remaining Subsequent Transferee Defendants").[3] As Cohmad is insolvent and non-operational, the Trustee will continue to pursue his claims to recover such transfers made to the Remaining Subsequent Transferee Defendants.

N. In connection with referring investors to BLMIS, the Trustee also alleges that: (i) Sonny Cohn received avoidable transfers from BLMIS in the aggregate amount of approximately Thirty-Seven Million Six Hundred Sixty-Seven Thousand Twenty-Four United States Dollars ($37,667,024) from 1986 through 2008, and (ii) Marcia Cohn received avoidable transfers directly or indirectly from BLMIS (including indirectly from Cohmad) of approximately One Million Seven Hundred Eighty-Five Thousand Five Hundred Seventy United States Dollars ($1,785,570) from 1993 through 2008 (subsections (i) and (ii) collectively, the "Referral Fee Transfers"). Of the Referral Fee Transfers, Sonny Cohn and Marcia Cohn received Four Million

---

[3] The Cohmad registered representatives who are defendants in the Adversary Proceeding that received these subsequent transfers include: Marcia Cohn, Stanley M. Berman, Alvin J. Delaire, Jr., Jonathan Greenberg, Morton Kurzrok, Linda Schoenheimer McCurdy, and Richard Spring. The Remaining Subsequent Transferee Defendants include all of the foregoing except Marcia Cohn, who is a part of this settlement.

3

Three Hundred Twenty-One Thousand Eight Hundred Thirty-Five United States Dollars ($4,321,835) within two years prior to the Filing Date, and Thirteen Million Three Hundred Forty-Two Thousand One Hundred Ninety-Eight United States Dollars ($13,342,198) within six years prior to the Filing Date.

O. **Marcia Cohn's Customer Claim**. Marcia Cohn filed a customer claim, which was designated as Claim No. 002799 (the "Customer Claim") in connection with BLMIS Account No. 1C1295, with a net equity of Sixty-Five Thousand Two Hundred Eight United States Dollars and Forty-Two Cents ($65,208.42). Marcia Cohn is assigning her customer claim to the Trustee, which will be deemed allowed.

**NOW, THEREFORE**, it is hereby **AGREED** by and between the Parties to the Agreement, for the good and valuable consideration set forth herein, the adequacy and sufficiency of which is recognized for all purposes, that:

## AGREEMENT

1. Payment to the Trustee. Within thirty (30) days of the Bankruptcy Court's approval of this Agreement in the SIPA Proceeding by an order that is no longer subject to appeal, review, or rehearing as set forth in paragraph 8 below, the Estate of Maurice Cohn and Marilyn Cohn shall pay or cause to be paid to the Trustee Thirty-Two Million One Hundred Thousand United States Dollars ($32,100,000) (the "Settlement Payment") and Marcia Cohn will assign her Customer Claim to the Trustee (as detailed in paragraph 2 below) in full and final settlement and satisfaction solely of the Trustee's Claims that the Trustee or the BLMIS Estate has against the Cohmad Defendants, inclusive of interest, but specifically excluding the Trustee's claims against the Remaining Defendants (including the Remaining Subsequent Transferee Defendants). The Settlement Payment shall be made by: (i) wire transfer of immediately available funds to the Trustee's account (the Trustee will provide appropriate wire instructions), or (ii) bank or cashier's check made payable to "Irving H. Picard, Trustee for the liquidation of Bernard L. Madoff Investment Securities LLC," provided that satisfaction of the Trustee's obligations hereunder shall be conditioned on the collection of such funds by the Trustee.

2. Allowance and Assignment of the Customer Claim. Upon the Bankruptcy Court's approval of this Agreement in the SIPA Proceeding by an order that is no longer subject to appeal, review, or rehearing as set forth in paragraph 8 below, the Customer Claim shall be deemed conclusively allowed pursuant to section 502 of the Bankruptcy Code and 15 U.S.C. § 78*lll*(11), equal in priority to other allowed customer claims against the BLMIS Estate, in the amount of Sixty-Five Thousand Two Hundred Eight United States Dollars and Forty-Two Cents ($65,208.42) (the "Allowed Claim"), and Marcia Cohn unconditionally and irrevocably assigns, endorses and transfers to the Trustee the Allowed Claim.

3. Cooperation. The Cohmad Defendants agree to respond and produce documents responsive to all discovery requests from the Trustee in the Adversary Proceeding in accordance with the Federal Rules of Civil Procedure and all applicable rules for discovery on a party by a party, to make themselves available for depositions that will be held in Florida, and to make themselves available for trial with any reasonable travel expenses to be paid for by the Trustee. The Cohmad Defendants further agree to provide a declaration that all documents produced by

4

the Cohmad Defendants to the Trustee in this Adversary Proceeding are: (1) authentic under Federal Rule of Evidence 901; and (2) with the exception of emails that are purely personal, records of regularly conducted activity under Federal Rules of Evidence 803(6). Further, to the extent they are able to authenticate such documents after making a good faith effort, the Cohmad Defendants agree to provide a declaration that the following documents are authentic and records of regularly conducted activity under Federal Rules of Evidence 901 and 803(6), respectively: (1) documents Bates stamped CESTDB00000001—CESTDB01789994; and (2) the Cohmad Cash Database, as described in the Trustee's November 18, 2014 letter. The Trustee reserves the right to request that the Cohmad Defendants also provide a declaration that any documents referenced in this paragraph that are not records of regularly conducted activity qualify as other hearsay exceptions under applicable Federal Rules of Evidence.

      4.    <u>Release by the Trustee</u>. In consideration for the covenants and agreements in this Agreement and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, and in light of Cohmad's insolvency, and except with respect to the obligations, rights, and considerations arising under this Agreement, upon the Effective Date (defined below in paragraph 8), the Trustee on behalf of himself, BLMIS, and its consolidated estates, shall release, acquit, and forever discharge the Cohmad Defendants, and their successors and/or assigns (collectively, the "<u>Released Parties</u>"), from any and all past, present, or future claims or causes of action (including any suit, petition, demand, or other claim in law, equity, or arbitration) and from any and all allegations of liability or damages (including any allegation of duties, debts, reckonings, contracts, controversies, agreements, promises, damages, responsibilities, covenants, or accounts), of whatever kind, nature, or description, direct or indirect, in law, equity, or arbitration, absolute or contingent, in tort, contract, statutory liability, or otherwise, based on strict liability, negligence, gross negligence, fraud, breach of fiduciary duty, or otherwise (including attorneys' fees, costs, interest or disbursements), known or unknown (including the Unknown Claims defined below in paragraph 6), existing as of the Effective Date that are, have been, could have been, or might in the future be asserted by the Trustee on behalf of BLMIS, Madoff and/or the consolidated BLMIS/Madoff estate, against the Released Parties based on, arising out of, or in any way related to BLMIS, Madoff, the Avoidable Transfers and the Customer Claim. It is expressly agreed and understood by the Trustee and the Cohmad Defendants that the Released Parties do not include any defendant named in this Adversary Proceeding, other than the Cohmad Defendants, in the original complaint (ECF No. 1) or the FAC (ECF No. 82); or any defendant named in any other adversary proceeding brought by the Trustee in connection with the SIPA Proceeding. For the avoidance of doubt, it is expressly agreed that this release shall not and does not release any of the Trustee's claims against the Remaining Defendants (including the Remaining Subsequent Transferee Defendants), even though some of the transfers to the Remaining Subsequent Transferee Defendants were initially transferred from BLMIS to Cohmad, which claims the Trustee continues to pursue. It is also expressly agreed and understood by the Trustee and the Cohmad Defendants that, notwithstanding the foregoing release contained in this paragraph, the Released Parties are not released from liability for any transfers that they may receive after the date of this Agreement that constitute subsequent transfers of transfers made by BLMIS that are avoidable and recoverable under SIPA, including SIPA sections 78fff(b), 78fff-1(a), and 78fff-2(c)(3), sections 105(a), 541, 544, 547, 548, 550(a), and 551 of the Bankruptcy Code, and the New York Debtor and Creditor Law § 270 *et seq.* (McKinney 2001).

5

5.  <u>Release by the Cohmad Defendants</u>.  In consideration for the covenants and agreements in this Agreement and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, except with respect to the obligations, rights, and considerations arising under this Agreement, upon the Effective Date (defined below in paragraph 8), the Cohmad Defendants shall release, acquit, and forever discharge the Trustee and all his agents, representatives, attorneys, employees, and professionals, and BLMIS and its consolidated estate, including their successors and/or assigns, from any and all past, present, or future claims or causes of action (including any suit, petition, demand, or other claim in law, equity, or arbitration) and from any and all allegations of liability or damages (including any allegation of duties, debts, reckonings, contracts, controversies, agreements, promises, damages, responsibilities, covenants, or accounts), of whatever kind, nature, or description, direct or indirect, in law, equity or arbitration, absolute or contingent, in tort, contract, statutory liability, or otherwise, based on strict liability, negligence, gross negligence, fraud, breach of fiduciary duty, or otherwise (including attorneys' fees, costs, interest, or disbursements), known or unknown (including the Unknown Claims defined below in paragraph 6), existing as of the Effective Date that are, have been, could have been, or might in the future be asserted by the Cohmad Defendants based on, arising out of, or in any way related to BLMIS, Madoff, the Avoidable Transfers, and the Customer Claim.

6.  <u>Unknown Claims</u>.  Unknown Claims shall mean any released claims pursuant to paragraphs 4 and 5 of the Agreement ("<u>Released Claims</u>") that the Parties do not know or suspect to exist in their favor at the time of giving the release in this Agreement that if known by them, might have affected their settlement and release in this Agreement.  With respect to any and all released claims in paragraphs 4 and 5 of this Agreement, the Parties shall expressly waive or be deemed to have waived, the provisions, rights, and benefits of California Civil Code section 1542 (to the extent it applies herein), which provides:

> <u>A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR.</u>

The Parties expressly waive, and shall be deemed to have waived, any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, or principle of common law or foreign law, that is similar, comparable, or equivalent in effect to California Civil Code section 1542.  The Trustee and/or the Cohmad Defendants may hereafter discover facts in addition to or different from those that they now know or believe to be true with respect to the subject matter of the Released Claims, but the Parties shall expressly have and be deemed to have fully, finally, and forever settled and released any and all Released Claims, known or unknown, suspected or unsuspected, contingent or noncontingent, whether or not concealed or hidden, that now exist or heretofore have existed, upon any theory of law or equity now existing or coming into existence in the future, including conduct that is negligent, reckless, intentional, with or without malice, or a breach of any duty, law, or rule, without regard to the subsequent discovery or existence of such different or additional facts.  The Parties acknowledge and shall be deemed to have acknowledged that the foregoing waiver was separately bargained for and a

6

key element of the settlement of which this release is a part.

7. <u>Dismissal of the Cohmad Defendants from the Adversary Proceeding</u>. As soon as practicable after the Effective Date (defined in paragraph 8) which includes collection of the Settlement Payment, the Trustee will file a Notice of Dismissal dismissing the Cohmad Defendants from the Adversary Proceeding, with prejudice.

8. <u>Court Approval; Effective Date; Termination</u>. This Agreement is subject to, and shall become effective and binding on the Parties upon, the Bankruptcy Court's approval of this Agreement in the SIPA Proceeding by an order that is no longer subject to appeal, review, or rehearing, collection of the Settlement Payment and the assignment of Marcia Cohn's Customer Claim to the Trustee ("<u>Effective Date</u>"). The Trustee shall use his reasonable efforts to obtain approval of the Agreement in the SIPA Proceeding as promptly as practicable after the date of this Agreement. If this Agreement has not become effective as provided in this paragraph within 360 days after the date of this Agreement (or within such additional time as mutually agreed upon by the Parties), then (a) this Agreement (other than this paragraph) shall terminate and be void; (b) all of the statements, concessions, consents, and agreements contained in the Agreement (other than this paragraph) shall be void; and (c) neither the Trustee nor the Cohmad Defendants may use or rely on any such statement, concession, consent, or agreement in any public statement or litigation involving the SIPA Proceeding, or any case or proceeding relating to BLMIS, or Madoff.

9. <u>The Cohmad Defendants' and the Trustee's Authority</u>. The Cohmad Defendants represent and warrant to the Trustee that, as of the date hereof, each of them has the full power, authority, and legal right to execute and deliver, and to perform their respective obligations under this Agreement and have taken all necessary action to authorize the execution, delivery, and performance of their respective obligations under this Agreement. The Trustee represents and warrants to the Cohmad Defendants that, as of the date hereof, and subject to the approval of the Bankruptcy Court as set forth in paragraph 8 above, he has the full power, authority, and legal right to execute and deliver, and to perform his obligations under this Agreement and has taken all necessary action to authorize the execution, delivery, and performance of his respective obligations under this Agreement.

10. <u>Additional Representations and Warranties by the Cohmad Defendants</u>. To induce the Trustee to enter into this Agreement, the Cohmad Defendants represent and warrant, to the best of each of their knowledge, information and belief, that: (1) other than the Avoidable Transfers as referenced in the Adversary Proceeding, the Released Parties have not received any material amount of money, funds, loans, transfers, or assets from Madoff, BLMIS or any other company or entity owned or controlled by Madoff or BLMIS; (2) the Released Parties are not immediate, mediate or subsequent transferees of any material funds or material property originating from Madoff or BLMIS to an initial transferee, other than the funds or property set forth in the FAC filed in the Adversary Proceeding; and (3) the Cohmad Defendants are not aware of any potential claims against the Released Parties by Madoff, BLMIS or any other company or entity owned or controlled by Madoff or BLMIS other than the claims in the FAC filed in the Adversary Proceeding.

11. <u>Further Assurances</u>. The Parties shall execute and deliver any document or

7

instrument reasonably requested by any of them after the date of this Agreement to effectuate the intent of this Agreement.

12. <u>Entire Agreement</u>. This Agreement constitutes the entire agreement and understanding between and among the Parties and supersedes all prior agreements, representations, and understandings concerning the subject matter hereof.

13. <u>No Admission</u>. This Agreement and all negotiations, statements, and proceedings in connection therewith are not, will not be argued to be, and will not be deemed to be a presumption, concession, or admission by any Party of any fault, liability, or wrongdoing whatsoever. Specifically, but without limitation, the Cohmad Defendants expressly deny that they had any knowledge of the fraud at BLMIS or received any transfers asserted in the FAC with actual knowledge of, or with willful blindness to, facts suggesting fraud at BLMIS or otherwise in bad faith. This Agreement further may not be offered or received in evidence or otherwise referred to in any civil, criminal, or administrative action or proceeding as evidence of any fault, liability, or wrongdoing whatsoever. The Trustee and the Cohmad Defendants have chosen to settle this matter for the purposes of avoiding the uncertainty, time and expense in connection with further litigation.

14. <u>Amendments, Waiver</u>. This Agreement may not be terminated, amended, or modified in any way except in a writing signed by all of the Parties. No waiver of any provision of this Agreement shall be deemed to constitute a waiver of any other provision hereof, whether or not similar, nor shall such waiver constitute a continuing waiver.

15. <u>Assignability</u>. No Party hereto may assign its rights under this Agreement without the prior written consent of each of the other Parties hereto, except that nothing in this Agreement shall prevent the Cohmad Defendants' ability to assign to the Trustee under this Agreement the Customer Claim pursuant to the Bankruptcy Court's November 10, 2010 Order Establishing Procedures for the Assignment of Allowed Claims.

16. <u>Successors Bound</u>. This Agreement shall be binding upon and inure to the benefit of each of the Parties and their successors and permitted assigns.

17. <u>No Third Party Beneficiary</u>. The Parties do not intend to confer any benefit by or under this Agreement upon any person or entity other than the Parties hereto and their respective successors and permitted assigns.

18. <u>Applicable Law</u>. This Agreement shall be construed and enforced in accordance with the laws of the State of New York, without regard to its conflict of laws provisions.

19. <u>Exclusive Jurisdiction</u>. The Parties agree that the Bankruptcy Court shall have exclusive jurisdiction over any and all disputes between or among the Parties, whether in law or equity, arising out of or relating to this Agreement, or any provision thereof, and the Parties hereby consent to and submit to the jurisdiction of the Bankruptcy Court for any such action. In the event the BLMIS proceeding is closed by a final decree and not reopened, the Parties agree that any dispute arising out of this Agreement, or any provision thereof, may be brought in the District Court or the Supreme Court of New York in New York County.

20. <u>Captions and Rules of Construction</u>.  The captions in this Agreement are inserted only as a matter of convenience and for reference and do not define, limit, or describe the scope of this Agreement or the scope or content of any of its provisions.  Any reference in this Agreement to a paragraph is to a paragraph of this Agreement.  "Includes" and "including" are not limiting.

21. <u>Counterparts, Electronic Copy of Signatures</u>.  This Agreement may be executed and delivered in any number of counterparts, each of which so executed and delivered shall be deemed to be an original and all of which shall constitute one and the same document.  The Parties may evidence their execution of this Agreement by delivery to the other Parties of scanned or faxed copies of their signatures with the same effect as the delivery of an original signature.

22. <u>Negotiated Agreement</u>.  This Agreement has been fully negotiated by the Parties.  Each Party acknowledges and agrees that this Agreement has been drafted jointly, and the rule that ambiguities in an agreement or contract may be construed against the drafter shall not apply in the construction or interpretation of this Agreement.

23. <u>Confidentiality Agreement</u>.  The Parties agree that (i) all discussions and negotiations in furtherance of settlement shall be and shall remain confidential, and (ii) neither Party will disclose the substance of any such discussions or negotiations with any person or entity not a party to this Agreement or not a party to those discussions or negotiations (including any defendant in the Adversary Proceeding).

24. <u>Notices</u>. Any notices under this Agreement shall be in writing, shall be effective when received and may be delivered only by hand, by overnight delivery service, by fax, or by electronic transmission to:

If to the Trustee:

Irving H. Picard
Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111
Email: ipicard@bakerlaw.com

with copies to:

Kathryn M. Zunno
Email: kzunno@bakerlaw.com
Esterina Giuliani
Email: egiuliani@bakerlaw.com
Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

If to Cohmad Securities Corporation, Marcia B. Cohn, individually and in her capacity as co-executor of the Estate of Maurice Cohn, and Marilyn Cohn, individually and in her capacity as co-executor of the Estate of Maurice Cohn:

Steven Paradise
Richards Kibbe & Orbe, LLP
200 Liberty Street
New York, New York 10281-1003
Telephone: (212) 530-1800
Facsimile: (212) 530-1801
Email: sparadise@rkollp.com

with copies to:

Clifford Thau
Email: cthau@velaw.com
Marisa Antos-Fallon
Email: mantosfallon@velaw.com
Vinson & Elkins LLP
666 Fifth Avenue, 26th Floor
New York, New York 10103
Telephone: (212) 237-0016
Facsimile: (917) 849-533

10

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be executed as of the date first above written.

**TRUSTEE**

IRVING H. PICARD, THE TRUSTEE FOR THE LIQUIDATION PROCEEDINGS OF BERNARD L. MADOFF INVESTMENT SECURITIES LLC AND THE SUBSTANTIVELY CONSOLIDATED BANKRUPTCY CASE OF BERNARD L. MADOFF

By: _____
Irving H. Picard, Trustee

Sworn to and subscribed before me this 4 day of November, 2016

_____
Notary Public

Gracemary Curbelo
Notary Public, State of New York
No. 01CU6288700, Qualified in Westchester County
Certificate filed in New York County
Commission Expires 9/9/17

11

**COHMAD SECURITIES CORPORATION**

By: _____
Name: Marcia B. Cohn
Title: President

Subscribed before me
this 3 day of NOV, 2016

_____
Notary Public

ROSALIE BUCCELLATO
NOTARY PUBLIC, STATE OF NEW YORK
NO. 01BU6067387
QUALIFIED IN NASSAU COUNTY
MY COMMISSION EXPIRES DEC. 10, 20 17

12

                                                **MARCIA B. COHN**
                                                **INDIVIDUALLY AND IN HER**
                                                **CAPACITY AS CO-EXECUTOR OF**
                                                **THE ESTATE OF MAURICE**
                                                **COHN**

By: _____[signature]_____
        Marcia B. Cohn

Subscribed before me
this 3 day of NOV, 2016

_____[signature]_____
Notary Public

ROSALIE BUCCELLATO
NOTARY PUBLIC, STATE OF NEW YORK
NO. 01BU6067387
QUALIFIED IN NASSAU COUNTY
MY COMMISSION EXPIRES DEC. 10, 20 17

13

**MARILYN COHN INDIVIDUALLY AND IN HER CAPACITY AS CO-EXECUTOR OF THE ESTATE OF MAURICE COHN**

By: *Marilyn Cohn* (signature)
Marilyn Cohn

Subscribed before me
this 3 day of NW, 2016

*Rosalie Buccellato* (signature)
Notary Public

ROSALIE BUCCELLATO
NOTARY PUBLIC, STATE OF NEW YORK
NO. 01BU6067387
QUALIFIED IN NASSAU COUNTY
MY COMMISSION EXPIRES DEC. 10, 20 17