**Baker & Hostetler LLP**

45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Nicholas J. Cremona
Jorian L. Rose
Amy E. Vanderwal
Stephanie A. Ackerman

Hearing Date:  December 21, 2016
Hearing Time:  10:00 AM (EST)
Objection Deadline:  December 7, 2016

*Attorneys for Irving H. Picard, Trustee for the*
*Substantively Consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities LLC*
*and the Estate of Bernard L. Madoff*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (SMB) |
| Plaintiff-Applicant, | SIPA Liquidation |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |

### TRUSTEE'S MOTION AND MEMORANDUM OF LAW TO AFFIRM HIS DETERMINATIONS DENYING CLAIMS OF CLAIMANTS HOLDING INTERESTS IN SIENNA PARTNERSHIP, L.P., KATZ GROUP LIMITED PARTNERSHIP, AND FAIRFIELD PAGMA ASSOCIATES, L.P.

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................ 1

BACKGROUND ................................................................................ 2

    A.    THE COMMENCEMENT OF THE SIPA PROCEEDING ................................ 2

    B.    THE LIMITED PARTNERSHIPS' STRUCTURE, BLMIS ACCOUNTS, AND CLAIMS ................................................................ 3

        1.    Sienna Partnership, L.P. .......................................................... 4

        2.    Katz Group Limited Partnership ................................................ 6

        3.    Fairfield Pagma Associates, L.P. ............................................... 8

    C.    THE BLMIS ACCOUNT RECORDS ................................................ 10

    D.    THE CLAIMS ........................................................................ 11

    E.    THE CUSTOMER DECISIONS .................................................... 11

        1.    The Initial Feeder Fund Motion ............................................... 11

        2.    The ERISA Motion ............................................................... 13

        3.    Other Customer Motions ....................................................... 14

ARGUMENT ................................................................................ 16

CONCLUSION ............................................................................... 23

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*In re Adler, Coleman Clearing Corp.*,
   216 B.R. 719 (Bankr. S.D.N.Y. 1998) ..................................................................17

*Alley v. Clark*,
   71 F. Supp. 521 (E.D.N.Y. 1947) ......................................................................20

*Aozora Bank Ltd. v. Sec. Inv'r Prot. Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*,
   480 B.R. 117 (S.D.N.Y. 2012) ..........................................................................12

*Appleton v. First Nat'l Bank of Ohio*,
   62 F.3d 791 (6th Cir. 1995) ..............................................................................17

*In re Beacon Assocs. Litig.*,
   745 F. Supp. 2d 386 (S.D.N.Y. 2010) .................................................................2

*In re Bernard L. Madoff Inv. Sec. LLC*,
   654 F.3d 229 (2d Cir. 2011) ..................................................................... *passim*

*In re Klein, Maus & Shire, Inc.*,
   301 B.R. 408 (Bankr. S.D.N.Y. 2003) ..............................................................22

*Kruse v. Sec. Inv'r Prot. Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*,
   708 F.3d 422 (2d Cir. 2013) .................................................................... *passim*

*In re Lehman Bros. Inc.*,
   462 B.R. 53 (Bankr. S.D.N.Y. 2011) ................................................................17

*In re Lehman Bros., Inc.*,
   791 F.3d 277 (2d Cir. 2015) ..............................................................................18

*Mishkin v. Siclari (In re Adler, Coleman Clearing Corp.)*,
   277 B.R. 520 (Bankr. S.D.N.Y. 2002) ...........................................................3, 22

*Newburger, Loeb & Co. v. Gross*,
   563 F.2d 1057 (2d Cir. 1977) ............................................................................20

*Reiter v. Greenberg*,
   21 N.Y.2d 388 (N.Y. 1968) ..............................................................................20

*Sec. Inv'r Prot. Corp. v. 2427 Parent Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*,
   779 F.3d 74 (2d Cir. 2015) ................................................................................21

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L.
    Madoff Inv. Sec. LLC),*
    454 B.R. 285 (Bankr. S.D.N.Y. 2011) ..........................................................11, 12, 22

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L.
    Madoff Inv. Sec. LLC),*
    515 B.R. 161 (Bankr. S.D.N.Y. 2014) ....................................................14, 15, 19, 22

*Sec. Inv'r Prot. Corp. v. Jacqueline Green Rollover Account,*
    Nos. 12 Civ. 1039 (DLC), 12 Civ. 1139 (DLC), 2012 WL 3042986 (S.D.N.Y.
    July 25, 2012) ..........................................................................................................13, 14

*Sec. Inv'r Prot. Corp. v. Morgan, Kennedy & Co.,*
    533 F.2d 1314 (2d Cir. 1976)...............................................................13, 18, 19, 22

*SEC v. Madoff,*
    No. 1:08-cv-10791-LLS, 2008 WL 5197070 (S.D.N.Y. filed Dec. 11, 2008) ..........2

*Stafford v. Giddens (In re New Times Sec. Servs., Inc.),*
    463 F.3d 125 (2d Cir. 2006)...................................................................12, 17, 22

## Statutes

15 U.S.C. § 78aaa *et seq.* ......................................................................................1

15 U.S.C. § 78eee(a)(4) ..........................................................................................2

15 U.S.C. § 78eee(b)(3) ..........................................................................................2

15 U.S.C. § 78eee(b)(4) ..........................................................................................2

15 U.S.C. § 78fff-1(a) ..............................................................................................2

15 U.S.C. § 78fff-2(b) ............................................................................................18

15 U.S.C. § 78fff-3(a) ..............................................................................................3

15 U.S.C. § 78*lll*(2)............................................................................................ *passim*

15 U.S.C. § 78*lll*(4)..................................................................................................3

15 U.S.C. § 78*lll*(11)...........................................................................................3, 21

Cayman Is. Exempted Ltd. P'ship Law §14(1) .......................................................20

Cayman Is. Exempted Ltd. P'ship Law §16(1) .......................................................20

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

Dodd-Frank Wall Street Reform and Consumer Protection Act. Pub. L. No. 111-203, § 983(b), 124 Stat. 1931 (2010) ........................................................................................17

N.Y. P'ship Law § 121-701 ..........................................................................................................20

Wyo. Stat. Ann. § 17-21-203 ........................................................................................................19

**Rules**

Fed. R. Civ. P. 36(a)(3) ...................................................................................................5, 7, 10, 21

**Other Authorities**

1–12 *Collier on Bankruptcy* ¶ 12.12 (16th ed. 2012) ...................................................................13

Irving H. Picard, as trustee ("Trustee") for the substantively consolidated liquidation of

Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor

Protection Act, 15 U.S.C. § 78aaa *et seq.* ("SIPA"),[1] and the chapter 7 estate of Bernard L.

Madoff ("Madoff"), respectfully submits this combined motion and memorandum of law (the

"Motion") to affirm the denial of eighteen claims filed by claimants (the "Objecting Claimants")

who objected to the Trustee's determinations and who were partners in one of the following

BLMIS account holders: Sienna Partnership, L.P., Katz Group Limited Partnership, and Fairfield

Pagma Associates, L.P. (collectively, the "Limited Partnerships").  The Objecting Claimants are

specifically identified in Exhibit 2 to the Declaration of Vineet Sehgal ("Sehgal Declaration")

filed herewith.  This Motion is based upon the law set forth below as well as the facts set forth in

the accompanying Sehgal Declaration and the Declaration of Stephanie Ackerman ("Ackerman

Declaration").

## PRELIMINARY STATEMENT

The Objecting Claimants seek customer status in this SIPA proceeding, despite the fact

that they did not have accounts in their names and had no direct financial relationship with

BLMIS.  Instead, they invested in the Limited Partnerships, each of which had a BLMIS

account, invested the partnership's assets with BLMIS, and filed its own claim with the Trustee.[2]

The case is governed by the Second Circuit decision *Kruse v. Sec. Inv'r Prot. Corp. (In re*

*Bernard L. Madoff Inv. Sec. LLC)*, 708 F.3d 422 (2d Cir. 2013) and the many related decisions in

this SIPA proceeding, referenced in Section E *infra*, involving the question of who is a

---

[1] For convenience, subsequent references to sections of the Securities Investor Protection Act shall be denoted simply as "SIPA § __."

[2] The Limited Partnerships have been grouped together in this Motion because they represent the remaining New York, Wyoming, and Grand Cayman Limited Partnership BLMIS account holders for which a number of limited partners also claim "customer" status.

"customer" under SIPA.  The current Motion seeks to apply these decisions to the Objecting

Claimants through entry of an order affirming the Trustee's denial of their claims as listed in

Exhibit 2 to the Declaration of Vineet Sehgal, disallowing their claims, and overruling the related

claims objections on the grounds that Claimants are not "customers" as such term is used at

SIPA § 78*lll*(2).[3]

## BACKGROUND

### A.    THE COMMENCEMENT OF THE SIPA PROCEEDING

The basic facts of the BLMIS fraud are widely known and have been recounted in

numerous decisions.  *See, e.g.*, *In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d 229, 231-34 (2d

Cir. 2011); *In re Beacon Assocs. Litig.*, 745 F. Supp. 2d 386, 393–94 (S.D.N.Y. 2010).   On

December 11, 2008, the Securities and Exchange Commission ("SEC") filed a complaint in the

District Court against Madoff and BLMIS, captioned *SEC v. Madoff*, No. 1:08-cv-10791-LLS,

2008 WL 5197070 (S.D.N.Y. filed Dec. 11, 2008), alleging fraud through the investment advisor

activities of BLMIS.  The SEC consented to the consolidation of its case with an application of

the Securities Investor Protection Corporation ("SIPC").  Thereafter, SIPC filed an application

under SIPA § 78eee(a)(4) alleging that because of its insolvency, BLMIS customers needed

SIPA protection.  The District Court appointed the Trustee under SIPA § 78eee(b)(3) and

removed the proceeding to this Court under SIPA § 78eee(b)(4).

Under SIPA, the Trustee is responsible, among other things, for recovering and

distributing customer property to a broker's customers, assessing claims, and liquidating other

assets of the firm for the benefit of the estate and its creditors.  A SIPA trustee has the general

powers of a bankruptcy trustee, in addition to the powers granted by SIPA.  SIPA § 78fff-1(a).

---

[3] The Trustee reserves all other bases to affirm his denial of the claims that are the subject of the Motion.

The statutory framework for the satisfaction of customer claims in a SIPA liquidation proceeding provides that "customers," as defined in SIPA § 78*lll*(2), share pro rata in "customer property," defined in SIPA § 78*lll*(4), to the extent of their "net equity," defined in SIPA § 78*lll*(11).  For each customer with a valid net equity claim, if the customer's share of customer property does not make him or her whole, SIPC advances funds to the SIPA trustee up to the amount of the customer's net equity, not to exceed $500,000 (the amount applicable to this case).  SIPA § 78fff-3(a).  It is the customer's burden to demonstrate he or she is entitled to customer status. *Mishkin v. Siclari (In re Adler, Coleman Clearing Corp.)*, 277 B.R. 520, 557 (Bankr. S.D.N.Y. 2002) ("[I]t is well-established in the Second Circuit that a claimant bears the burden of proving that he or she is a 'customer' under SIPA.").

On December 23, 2008, this Court entered a Claims Procedures Order.  *See* ECF No. 12. Pursuant to that order, the Trustee determines claims eligible for customer protection under SIPA, claimants may object to the Trustee's determination of a claim by filing an objection in this Court, after which the Trustee requests a hearing date for the objection and notifies the objecting claimant thereof.  *Id.*

## B.    THE LIMITED PARTNERSHIPS' STRUCTURE, BLMIS ACCOUNTS, AND CLAIMS

The Objecting Claimants invested in one of the three Limited Partnerships, submitted eighteen (18) claims, and filed ten (10) related objections to the Trustee's denials of those claims.  Nine (9) claims were submitted by Objecting Claimants relating to the Sienna Partnership, L.P. ("Sienna Partnership, L.P. Objecting Claimants") who filed eight (8) objections to the Trustee's denial of their claims; eight (8) claims were submitted by Objecting Claimants relating to the Katz Group Limited Partnership ("Katz Group Limited Partnership Objecting Claimants") who filed one (1) objection to the Trustee's denial of their claims; and one (1) claim

was submitted by an Objecting Claimant relating to Fairfield Pagma Associates, L.P ("Fairfield

Pagma Associates, L.P. Objecting Claimants") who filed one (1) objection to the Trustee's denial

of his claim.   *See* Sehgal Decl. ¶¶ 9-12, Exs. 1-3.   The claims of the Limited Partnerships

themselves are not at issue in this Motion.

### 1.    Sienna Partnership, L.P.

BLMIS Account number 1FR041 was opened on or around June 9, 1998 in the name of

Sienna Partnership, L.P.  Sehgal Decl., Ex. 4, AMF00074631.  The BLMIS account opening

documents, including the BLMIS Customer Agreement, BLMIS Trading Authorization, and

BLMIS Option Agreement were each signed by Henry Shum on behalf of the general partner of

Sienna Partnership, L.P., "Shum Partners (Cayman)."  *See* Sehgal Decl. Ex.4, AMF00074621-6.

In the BLMIS account-opening documents, Henry Shum identified Sienna Partnership, L.P. as a

Cayman Islands Limited Partnership and provided a Certificate of Foreign Status at that time.

*Id.* AMF00074580-1.  A search of the Cayman Islands partnership registration database confirms

that Sienna Partnership, L.P. was a registered exempt limited partnership.[4]

Henry Shum also signed the BLMIS Partnership Account Agreement identifying Shum

Partners (Cayman) as the general partner of Sienna Partnership, L.P. and Mr. Shum as the

individual authorized to act on behalf of the accountholder.[5]  *Id.* at AMF00074627.  The BLMIS

Partnership  Account  Agreement  also  directed  BLMIS  to  send  all  account-related

communications to Sienna Partnership, L.P.  *Id.*  Neither a partnership agreement nor a listing of

---

[4] A search of the Grand Cayman General Registry via its online entity search confirmed the existence of a Cayman Islands' Limited Partnership by the name of Sienna Partnership, L.P.  *See* GENERAL REGISTRY, CAYMAN ISLANDS, https://online.ciregistry.gov.ky/cos/faces/home?_adf.ctrl-state=ul7dkzfca_14 (last visited November 2, 2016).

[5] Documents accompanying Sienna Partnership L.P.'s direct claim indicate that the general partner changed to Greenfield Partners, Inc. at some time later.  Sehgal Decl. Ex. 5, MWPTAP00514858.

Sienna Partnership, L.P. partners was included in the BLMIS files, as such, none of the Sienna Partnership, L.P. Objecting Claimants were identified in the BLMIS books and records.

Initially, all requests for withdrawals and deposits were sent to BLMIS by Henry Shum on Henry Shum letterhead.  Sehgal Decl. Ex. 4, AMF00074614-9.  Beginning in 2001, all subsequent requests for withdrawals and deposits were sent by Henry Shum on Sienna Partnership, L.P. letterhead.  *See id.*, AMF00074584-612.  Throughout the life of the account, virtually all withdrawals were sent to the Sienna Partnership L.P. address or wired directly to the Sienna Partnership L.P. bank account by BLMIS.[6]  All business on behalf of Sienna Partnership, L.P. was conducted with BLMIS by Henry Shum as representative of the general partner, Shum Partners (Cayman).

The Trustee served discovery requests on the Sienna Partnership, L.P. Objecting Claimants through their counsel.  No response was received.  By failing to respond to the requests for admissions, the Sienna Partnership, L.P. Objecting Claimants admitted (among other things) that they did not have an account in their names at BLMIS, never deposited or withdrew cash or securities with or from BLMIS, did not receive investment statements, correspondence or tax statements from BLMIS, did not have any control, investment discretion or decision-making power over any investments at BLMIS, and that their only relationship to BLMIS existed by way of their relationship to the Limited Partnership.  *See generally* Ackerman Decl. ¶¶ 5, 10, 16, 18, Exs. 1-3; *see also* FED. R. CIV. P. 36(a)(3).

Sienna Partnership, L.P. filed a claim for its account.  The Trustee allowed the claim in the amount of $81,304.24 and a determination letter was sent to Sienna Partnership, L.P. on

---

[6] On October 27, 1999, Henry Shum requested that $70,000 be wired to an escrow account on behalf of Sienna Partnership, L.P.  Sehgal Decl. Ex. 4, AMF00074615.

December 8, 2009.[7]    Thereafter, Sienna Partnership, L.P. filed an objection to the Trustee's

determination of its claim. (ECF No. 1073).[8]    Following this Court's approval of the Trustee's

settlement with the Internal Revenue Service on December 21, 2011, the Trustee issued a second

revised determination letter to Sienna Partnership, L.P. crediting its portion of withheld income

taxes.    The April 13, 2012 determination letter increased Sienna Partnership, L.P.'s allowed

claim to $312,051.36.    Sienna Partnership, L.P.'s objection was overruled by this Court's Order

On Trustee's Sixth Omnibus Motion to Overrule Objections of Claimants Who Invested More

Than They Withdrew, dated January 26, 2016 (ECF No. 12517).    No appeal was filed from this

Court's Order.

### 2.    Katz Group Limited Partnership

On or around November 25, 1997, Aron B. Katz, president of KFI, Inc., signed the

BLMIS account-opening documents for BLMIS account 1K0143, held in the name of Katz

Group Limited Partnership.    *See* Sehgal Decl. Ex. 16, AMF00121602-18.    Mr. Katz signed each

of the BLMIS account documents including the BLMIS Trading Authorization, Option

Agreement and Customer Agreement as president of KFI, Inc., the general partner of Katz Group

Limited Partnership.    *Id.* AMF00121616-1618.    All requests for withdrawals and deposits into

the Katz Group Limited Partnership's account were submitted by Aron B. Katz as president of

the general partner of Katz Group Limited Partnership.    *See id.* AMF00121573-97.    With the

exception of Aron B. Katz in his capacity as representative of the general partner, none of the

---

[7] The Trustee initially denied Sienna Partnership, L.P.'s claim because based on the Trustee's analysis, the amount of money that Sienna Partnership, L.P. withdrew from the account was greater than the amount that was deposited, making the account a "net winner" and a determination letter indicating such was sent on October 19, 2009. Counsel for Sienna Partnership, L.P. then notified the Trustee that a December 8, 2008 withdrawal was never cashed by the Partnership.    As a result, the Trustee allowed the claim and issued a revised determination letter.

[8] The Sienna Partnership, L.P. claim is not the subject of this Motion.

Katz Group Limited Partnership Objecting Claimants were identified in the BLMIS books and records related to Katz Group Limited Partnership.

Although no partnership agreement was found in the BLMIS books and records, and one was not submitted by the Katz Group Limited Partnership Objecting Claimants, a search of the Wyoming Secretary of State website confirmed that the Katz Group Limited Partnership was registered as a Wyoming limited partnership. Ackerman Decl. ¶20, Ex. 4. The Katz Group Limited Partnership was registered with the state of Wyoming in October 1997 and was administratively dissolved in 2010. *Id.*

The Trustee served discovery requests on Mr. Martin Katz on behalf of the Katz Group Limited Partnership Objecting Claimants. No response was received. By failing to respond to the requests for admissions, the Katz Group Limited Partnership Objecting Claimants admitted (among other things) that they did not have an account in their names at BLMIS, never deposited or withdrew cash or securities with or from BLMIS, did not receive investment statements, correspondence or tax statements from BLMIS, did not have any control, investment discretion or decision-making power over any investments at BLMIS, and that their only relationship to BLMIS existed by way of their relationship to the Katz Group Limited Partnership. *See generally* Ackerman Decl. ¶¶ 15-16, Ex. 2; *see also* FED. R. CIV. P. 36(a)(3).

The Katz Group Limited Partnership filed a claim for its account. The Trustee denied the claim because based on the Trustee's analysis, the amount of money that Katz Group Limited Partnership withdrew from the account was greater than the amount that was deposited, making the account a "net winner." Thus, a determination letter was sent to Katz Group Limited Partnership denying its customer claim. No objection was filed.

### 3.    Fairfield Pagma Associates, L.P.

BLMIS Account 1ZA994 was opened in the name of Fairfield Pagma Associates, L.P. around March 1993.  Sehgal Decl. Ex. 26, AMF00026865.  All of the account-opening documents were signed by Marjorie Kleinman on behalf of Fairfield Pagma Associates, L.P., including the BLMIS Tax Form, Trading Authorization, Option Agreement, and BLMIS Customer Agreement.  *Id.* AMF00026866–7, AMF00026871–6.  The BLMIS Partnership Account Agreement identifies both Seymour Kleinman and Marjorie Kleinman as the General Partners of "Fairfield Pagma Associates, LTD" and authorizes them to open and manage the BLMIS account.  *Id.* AMF00026868.  In addition, the BLMIS Partnership Account Agreement identifies Seymour Kleinman as the individual to whom all "notices or communications" on behalf of the account were to be directed by BLMIS.  *Id.* AMF00026868.  Thereafter, all requests for withdrawals and submission of deposits were signed by Seymour Kleinman in his capacity as general partner.  *See id.* AMF00026838, 840, 841-843.

The Limited Partnership Agreement of Fairfield Pagma Associates, L.P. (the "Fairfield Pagma Associates, L.P. Agreement") created on January 8, 1993 and as amended on March 31, 2002 confirms that Marjorie Kleinman and Seymour Kleinman were to serve as the general partners of Fairfield Pagma Associates, L.P. and manage all partnership activities.  Sehgal Decl. Ex. 28, MWPTAP00383264.  According to paragraph 2 of the Fairfield Pagma Associates, L.P. Agreement, the sole purpose of Fairfield Pagma Associates, L.P. was to invest in a single brokerage account with BLMIS to be established by the general partners.  *Id.* MWPTAP00383265.  According to the Fairfield Pagma Associates, L.P. Agreement, Fairfield Pagma Associates, L.P.'s principal place of business was in White Plains, NY, *Id.*

8

MWPTAP00383265 ¶3, and all activities were governed by the laws of the State of New York.

*Id.* MWPTAP00383269, ¶19.[9]

Under the Fairfield Pagma Associates, L.P. Agreement, it was the general partners who

set the "terms and conditions" for a limited partner to make a withdrawal of capital. *Id.*

MWPTAP00383266, ¶7. Furthermore, "[a]ll management responsibilities for the Partnership . . .

vested in the General Partners" and all such decisions were "binding and conclusive on all of the

Partners." *Id.* ¶8. In accordance with the Fairfield Pagma Associates, L.P. Agreement, the books

and records of BLMIS are devoid of any correspondence with the Fairfield Pagma Objecting

Claimant or any of the other limited partners and all communications were with the general

partners. The only reference in the BLMIS books and records to the limited partners is an

undated, unsigned listing of limited partners, including the Fairfield Pagma Objecting Claimant.

Sehgal Decl. Ex. 26, AMF00026869. However, the list does not include any information

regarding the individual limited partners' rights to the partnership assets or how much each

limited partner invested. *Id.* AMF00026869-70.

The Trustee served discovery requests on the Fairfield Pagma Associates, L.P. Objecting

Claimant. No response was received. By failing to respond to the requests for admissions, the

Fairfield Pagma Associates, L.P. Objecting Claimant admitted (among other things) that he did

not have an account in his name at BLMIS, never deposited or withdrew cash or securities with

or from BLMIS, did not receive investment statements, correspondence or tax statements from

BLMIS, did not have any control, investment discretion or decision-making power over any

investments at BLMIS, and that his only relationship to BLMIS existed by way of his

---

[9] A search of the New York State Division of Corporations confirmed that Fairfield Pagma Associates, L.P. was registered as limited partnership on February 8, 1993. *See Entity Information*, NEW YORK DEPARTMENT OF STATE, DIV. OF CORP., http://www.dos.ny.gov/corps/bus_entity_search.html (last visited Nov. 3, 2016).

relationship to Fairfield Pagma Associates, L.P. *See generally* Ackerman Decl. ¶¶ 17-18, Ex. 3; *see also* FED. R. CIV. P. 36(a)(3).

Fairfield Pagma Associates, L.P. filed a claim for its account. The Trustee denied the claim because based on the Trustee's analysis, the amount of money that Fairfield Pagma Associates, L.P. withdrew from the account was greater than the amount that was deposited, making the account a "net winner." Thus, a determination letter was sent to Fairfield Pagma Associates, L.P. denying its customer claim. Fairfield Pagma Associates, L.P. did not file an objection to the Trustee's determination of its claim.

## C.    <u>THE BLMIS ACCOUNT RECORDS</u>

The Limited Partnerships each maintained an account in its own name (the "Accounts," and each, an "Account") with BLMIS. The Objecting Claimants did not. Sehgal Decl., ¶43, Ex. 1. The books and records of BLMIS reflect money deposited or withdrawn by and on behalf of the Limited Partnerships, and not by the Objecting Claimants individually. *See* Sehgal Decl., ¶¶ 17, 29, 39, Exs. 4, 16, 26.

Because the Limited Partnerships each maintained an Account at BLMIS, and made deposits into and withdrawals from that Account, the books and records of BLMIS reflect the amounts owing and owed by the BLMIS estate for each particular Account. The books and records of BLMIS do not, in contrast, reflect deposits or withdrawals directly to or from BLMIS by the individual Objecting Claimants with regard to any Limited Partnerships' BLMIS Account. They also do not show what amounts individual Objecting Claimants invested in, or withdrew from, the Limited Partnerships. *See id.* It was each general partner that had the right to demand, on behalf of the Limited Partnership, return of the property entrusted to BLMIS for its Account, and each Limited Partnership that is accordingly entitled to a customer claim to the extent of its net equity.

### D.    THE CLAIMS

The claims at issue in this Motion involve only interests in the Limited Partnerships. The Objecting Claimants, the eighteen (18) claims filed by them, and the ten (10) objections to determination of those claims, are specifically identified in Exhibits 2 and 3 to the Sehgal Declaration. Sehgal Decl. ¶¶ 9-13, Exs. 1-3. The Trustee denied their claims because they lacked BLMIS accounts and, thus were not customers of BLMIS. Sehgal Decl. ¶ 11. This Motion addresses all objections to the determination of the specified claims by Objecting Claimants who are identified on Exhibit 2 of the Sehgal Declaration.

Since receiving the ten (10) docketed objections to the claims determinations, the Trustee served discovery requests on each of the Objecting Claimants seeking to determine their basis for claiming customer status, and inquiring into deposits, payments, communications, account openings, and their relationship with the account holder. None of the Objecting Claimants responded. *See* Ackerman Decl. ¶¶ 5, 9.

### E.    THE CUSTOMER DECISIONS

There have been sixteen prior decisions in this proceeding dealing with whether investors in BLMIS accountholders could be treated as "customers" under SIPA when those investors did not themselves have individual accounts with BLMIS; all of the decisions said they could not.

#### 1.    The Initial Feeder Fund Motion

The Trustee's first motion regarding the definition of "customer" under SIPA was the Trustee's Motion To Affirm Trustee's Determinations Denying Claims of Claimants Without BLMIS Accounts In Their Names, Namely, Investors in Feeder Funds, filed on June 11, 2010, ECF No. 2416 (the "Initial Feeder Fund Motion"). On June 28, 2011, this Court issued its memorandum decision and order affirming the Trustee's denial of the claims. *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff Inv. Sec. LLC)*, 454 B.R. 285

(Bankr. S.D.N.Y. 2011), *aff'd sub nom. Aozora Bank Ltd. v. Sec. Inv'r Prot. Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*, 480 B.R. 117 (S.D.N.Y. 2012), *aff'd sub nom. Kruse v. Sec. Inv'r Prot. Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*, 708 F.3d 422 (2d Cir. 2013).

The Court found that, in light of the plain language of SIPA and relevant case law, the claimants in the Initial Feeder Fund Motion did not qualify as "customers" under SIPA. *In re Bernard L. Madoff Inv. Sec. LLC*, 454 B.R. at 290. The Court held that the claimants invested in, not through, those feeder funds, and had no individual accounts at BLMIS. *Id.* at 297. It was the feeder funds that entrusted their monies with BLMIS for the purpose of trading or investing in securities—the touchstone of "customer" status—whereas the claimants purchased interests in the feeder funds. *Id.* at 299. The Court held that absent a direct relationship with BLMIS, the claimants sought a definition of "customer" that stretched the term beyond its limits. *Id.* at 302.

After the District Court affirmed, *Aozora Bank Ltd.*, 480 B.R. 117 (S.D.N.Y. 2012), the claimants appealed to the Second Circuit, which also affirmed. The Second Circuit confirmed that "[j]udicial interpretations of 'customer' status support a narrow interpretation of the SIPA's provisions." *Kruse*, 708 F.3d at 426 (quoting *Stafford v. Giddens (In re New Times Sec. Servs., Inc.)*, 463 F.3d 125, 127 (2d Cir. 2006) (explaining that "the critical aspect of the 'customer' definition" was "the entrustment of cash or securities to the broker-dealer for the purposes of trading securities.")). The claimants failed to meet this fundamental requirement because the money sent to BLMIS belonged to the accountholders, not to the individual claimants, and the individual claimants therefore failed to establish that they had entrusted cash or securities to BLMIS. *Kruse*, 708 F.3d at 426–27. The Second Circuit also found that the individual claimants did not exhibit other indicia of customer status in their dealings (or lack of dealings)

with BLMIS, including that they did not exert any control over the accounts at issue and that they were not reflected in BLMIS records. *Id.*

The Second Circuit held that the interests "sold by the Feeder Funds to investors . . . did not confer an ownership interest in money that the Feeder Funds ultimately invested in BLMIS." *Id.* at 427. Thus, "regardless of their intent, appellants never entrusted *their* cash or securities to BLMIS and, thus, fail to satisfy this 'critical aspect of the "customer" definition.'" *Id.* (quoting *In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d at 236 (internal quotation marks omitted)); *see Sec. Inv'r Prot. Corp. v. Morgan, Kennedy & Co.*, 533 F.2d 1314, 1318 (2d Cir. 1976) ("*Morgan Kennedy*"); *see also Kruse*, 708 F.3d at 427-28 ("[A] claimant will not be entitled to customer protection under SIPA unless the debtor actually receives the claimant's cash or securities; the debtor must actually have come into possession or control.") (citing 1–12 *Collier on Bankruptcy* ¶ 12.12 (16th ed. 2012)).

### 2.    The ERISA Motion

While the appeals of the Feeder Fund Decision were pending, the Trustee also filed a motion to address arguments that were raised by claimants without BLMIS accounts who were benefit plans or benefit plan participants and who sought to use the Employee Retirement Income Security Act ("ERISA") as a basis for determining their customer status.[10] *See* ECF No. 4521. The District Court withdrew the reference and granted the motion.

The District Court noted that the first two of the three ways to qualify as a "customer" under SIPA § 78*lll*(2), "presume that a customer must have a securities account with the debtor," and that the ERISA claimants also did not qualify under the third method of having "deposited cash with the debtor for the purpose of purchasing securities." *Sec. Inv'r Prot. Corp. v.*

---

[10] Prior to the hearing on the Initial Feeder Fund Motion, the Court had removed from the scope of the motion the question of whether ERISA affects "customer" status under SIPA.

*Jacqueline Green Rollover Account*, Nos. 12 Civ. 1039 (DLC), 12 Civ. 1139 (DLC), 2012 WL
3042986, at *4 (S.D.N.Y. July 25, 2012) (quoting SIPA § 78*lll*(2)).  That was so because none of
the claimants "owned any cash deposited with BLMIS.  Rather, . . . in each case this cash was
owned by the third-party entity in which the claimant invested, and which had a BLMIS account
in its name." *Id.* at *5.  The District Court also rejected arguments that fiduciary responsibilities
could suffice to create a "customer" relationship.  *Id.* at *12.

> **3.**    **Other Customer Motions**

Additional SIPA "customer" motions followed, each of which was determined in favor of
the Trustee.  On August 21, 2013, the Bankruptcy Court issued its Bench Memorandum Granting
Trustee's Second Motion to Affirm Trustee's Determinations Denying Claims of Claimants Who
Invested in Certain Feeder Funds and Did Not Have BLMIS Accounts in Their Names.  *See* ECF
No. 5450 ("the Second Feeder Fund Decision").  Noting that prior decisions established that the
burden is on the claimant to establish that he is a "customer" entitled to SIPA protection, and that
such showing is not easily met, this Court concluded that the claimants had failed to establish
their "customer" status.  The Bankruptcy Court noted that "they had no securities accounts at
BLMIS, were not known to BLMIS, lacked privity and any financial relationship with BLMIS."
Second Feeder Fund Decision at 4. They further "lacked property interest in any feeder fund
account assets at BLMIS, entrusted no cash or securities to BLMIS, had no investment discretion
over feeder fund assets invested with BLMIS, received no accounts statements or other
communications from BLMIS and had no transactions reflected on the books and records at
BLMIS." *Id.*

On August 22, 2014, this Court issued its Memorandum Decision Granting Motion To
Affirm Trustee's Determinations Denying Claims Of Claimants Who Invested In Certain ERISA
Plans.  *See generally Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L.*

*Madoff Inv. Sec. LLC*), 515 B.R. 161 (Bankr. S.D.N.Y. 2014) ("ERISA Claimant Decision").

Again holding that the burden is on the claimant to establish that he is a customer, this Court

concluded that a claimant who wished to qualify as a person who has deposited cash with the

debtor for the purposes of purchasing securities must show that she entrusted her "own assets

directly through an account maintained in her own name rather than indirectly through a fund

that then entrusted the fund's assets through an account maintained in the fund's name." *Id.* at

168 (internal citations omitted).  This Court further noted that "not every victim of a broker-

dealer's fraud is a 'customer,'" and that even the fact that a claimant exercised some control over

her own investments in the fund or the fund's investments in BLMIS was not sufficient to meet

"the narrow definition of customer under SIPA." *Id.* at 166, 168.

On February 25, 2015, this Court read into the record a decision granting the Trustee's

Motion And Memorandum To Affirm His Determinations Denying Claims Of Claimants

Holding Interests In S&P or P&S Associates, General Partnerships.  ECF No. 9506 at 30 ("*S&P*

*Decision*").  This Court explained that the indicia of customer status are: (i) a direct financial

relationship with BLMIS; (ii) a property interest in the funds invested directly with BLMIS; (iii)

securities accounts with BLMIS; (iv) control over the account holders' investments with BLMIS;

and (v) identification of the alleged customer in BLMIS's books and records.  The Court held

that the objecting partners failed to sustain their burden of proving that they are customers of

BLMIS and an order granting the Trustee's motion was entered.  *Id.* at 36; *see also* ECF No.

9450.

15

Since the *S&P Decision*, there have been twelve motions to affirm the Trustee's

determinations,[11] each of which was granted by the Court ("Customer Opinions").[12]

## **ARGUMENT**

To be a "customer" under SIPA, an investor must have "a claim on account of securities

received, acquired, or held by the debtor in the ordinary course of its business as a broker or

dealer from or for the securities accounts of such person," including "any person who has

deposited cash with the debtor for the purpose of purchasing securities." SIPA § 78*lll*(2).[13]

---

[11] One other customer motion is presently scheduled for hearing on November 30, 2016. *See* Trustee's Motion and Memorandum to Affirm his Determinations Denying Claims of Claimants Holding an Interest in M&H Investment Group L.P., PJFN Investors Limited Partnership, Kenn Jordan Associates and Harmony Partners, Ltd. (ECF No. 14296). The deadline for objections is November 9, 2016 and as of this writing, no objection has been filed.

[12] *See* Order Approving Trustee's Motion To Affirm His Determinations Denying Claims of Claimants Holding Interests In Peerstate Equity Fund, L.P., ECF No. 9883 (Apr. 27, 2015); Order Approving Trustee's Motion And To Affirm His Determinations Denying Claims Of Claimants Holding Interests In The Lazarus-Schy Family Partnership, The Schy Family Partnership, Or The Lazarus Investment Group, ECF No. 10010 (May 18, 2015); Order Approving Trustee's Motion To Affirm His Determinations Denying Claims Of Claimants Holding Interests In Epic Ventures, LLC, ECF No. 10267 (June 25, 2015); Order Approving Trustee's Motion To Affirm His Determinations Denying Claims Of Claimants Holding Interests Partners Investment Co., Northeast Investment Club, And Martin R. Harnick & Steven P. Norton, Partners, ECF No. 10894 (July 29, 2015); Order Approving Trustee's Motion To Affirm His Determinations Denying Claims Of Claimants Holding Interests The Whitman Partnership, The Lucky Company, The Petito Investment Group, And The Harwood Family Partnership, ECF No. 11145 (Aug. 26, 2015); Order Approving Trustee's Motion To Affirm His Determinations Denying Claims Of Claimants Holding Interests 1973 Masters Vacation Fund, Bull Market Fund, And Strattham Partners, ECF No. 11920 (Oct. 29, 2015); Order Approving Trustee's Motion To Affirm His Determinations Denying Claims Of Claimants Holding Interests in Black River Associates LP, MOT Family Investors, LP, Rothschild Family Partnership, and Ostrin Family Partnership, ECF No. 12757 (Mar. 3, 2016); Order Approving Trustee's Motion To Affirm His Determinations Denying Claims Of Claimants Holding Interests in the Article Third Trust, Palmer Family Trust, Maggie Faustin, Estate of Theodore Schwartz, and Miller Trust Partnership, ECF No. 13172 (Apr. 26, 2016); Order Approving Trustee's Motion To Affirm His Determinations Denying Claims Of Claimants Holding Interests in William M. Pressman, Inc., William Pressman, Inc. Rollover Account, and AGL Life Assurance Company, ECF No. 13466 (June 7, 2016); Order Approving Trustee's Motion and Memorandum To Affirm His Determinations Denying Claims Of Claimants Holding Interests in Palko Associates, Gloria Jaffe Investment Partnership, and the Miller Partnership, ECF No. 13780 (July 22, 2016); and Order Approving Trustee's Motion And Memorandum of Law To Affirm His Determinations Denying Claims Of Claimants Holding Interests In Chalek Associates LLC, Chaitman/Schwebel LLC, FGLS Equity LLC, Larsco Investments LLC, and Kuntzman Family LLC, ECF No. 14225 (Oct. 4, 2016); Order Approving Trustee's Motion And Memorandum of Law To Affirm His Determinations Denying Claims Of Claimants Holding Interests In AHT Partners, Pergament Equities, LLC, SMT Investors LLC, Greene/Lederman, L.L.C., And Turbo Investors, LLC, ECF No. 14346 (Oct. 27, 2016).

[13] The definition applicable to this SIPA proceeding is:

    (2) Customer

        (A) In General

Thus, to be a "customer" an investor must have entrusted cash or securities to the debtor for the

purpose of trading or investing in securities.  In *Kruse*, the Second Circuit found that investors

who bought interests in a limited partnership that invested partnership funds via the partnership's

own BLMIS account "never entrusted *their* cash or securities to BLMIS and, thus, fail to satisfy

this 'critical aspect of the "customer" definition'" regardless of their intent.  708 F.3d at 427

(quoting *In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d at 236).  Similarly, the Second Circuit

in *In re New Times Securities Services* held that "[t]he critical aspect of the 'customer' definition

is the entrustment of cash or securities to the broker-dealer for the purposes of trading

securities."  463 F.3d at 128 (quoting *Appleton v. First Nat'l Bank of Ohio*, 62 F.3d 791, 801 (6th

Cir. 1995));  *see also In re Adler, Coleman Clearing Corp.*, 216 B.R. 719, 724-25 (Bankr.

S.D.N.Y. 1998) ("The term [customer] refers to those who entrust cash or securities to broker-

---

> The term "customer" of a debtor means any person (including any person with whom the debtor deals as principal or agent) who has a claim on account of securities received, acquired, or held by the debtor in the ordinary course of its business as a broker or dealer from or for the securities accounts of such person for safekeeping, with a view to sale, to cover consummated sales, pursuant to purchases, as collateral security, or for purposes of effecting transfer.
>
> (B) Included persons
>
> The term "customer" includes—
>
> > (i) any person who has deposited cash with the debtor for the purpose of purchasing securities; [and]
> >
> > (iii) any person who has a claim against the debtor arising out of sales or conversions of such securities, [but does not include—]
>
> (C) Excluded persons
>
> The term "customer" does not include any person, to the extent that—
>
> > (i) the claim of such  person arises out of transactions with a foreign subsidiary of a member of SIPC; or
> >
> > (ii) such person has a claim for cash or securities which by contract, agreement, or understanding, or by operation of law, is part of the capital of the debtor, or is subordinated to the claims of any or all creditors of the debtor, notwithstanding  that some ground exists for declaring such contract, agreement, or understanding void or voidable in a suit between the claimant and the debtor.

SIPA § 78*lll*(2).  After the start of this case, the "customer" definition was slightly reorganized and amended in a manner irrelevant to the present issues by the Dodd-Frank Wall Street Reform and Consumer Protection Act. Pub. L. No. 111-203, § 983(b), 124 Stat. 1931 (2010); *see In re Lehman Bros. Inc.*, 462 B.R. 53, 61 n.9 (Bankr. S.D.N.Y. 2011).

dealers for the purpose of trading and investing in the securities market."). The Second Circuit recently further upheld this principle in *In re Lehman Bros., Inc.*, 791 F.3d 277 (2d Cir. 2015), concluding that the "critical aspect of the 'customer' definition is the entrustment of cash or securities to the broker-dealer for the purposes of trading securities." *Id.* at 282 (quoting *In re Bernard L. Madoff Inv. Secs. LLC*, 654 F.3d at 236). The Trustee is responsible for discharging obligations of the debtor to customers with such claims "insofar as such obligations are ascertainable from the books and records of the debtor or are otherwise established to the satisfaction of the trustee." SIPA § 78fff-2(b).

The Objecting Claimants' investments in the Limited Partnerships do not meet the requirements for "customer" status outlined in the seminal Second Circuit decision *Morgan Kennedy*, 533 F.2d at 1318, and reaffirmed in *Kruse*, 708 F.3d at 427. In *Morgan Kennedy*, the Second Circuit rejected the argument that the beneficial owners of the account holder were the "customers" under SIPA, citing the facts that: (1) title to the trust assets was held by the account holder, not the beneficiaries; (2) the securities account with the debtor was in the name of the account holder, not the beneficiaries; (3) the account holder had the exclusive power to entrust the assets to the debtor; (4) the beneficiaries were unknown to the broker; and (5) the beneficiaries had no legal capacity in which they could deal with the debtor. 533 F.2d at 1318.

The Objecting Claimants' circumstances are little different than those of the claimants in *Morgan Kennedy*, and do not exhibit the hallmarks of customer status discussed in this Court's *S&P Decision*. *S&P Decision* at 30. The Objecting Claimants entrusted their money to the Limited Partnerships, not to BLMIS. The Objecting Claimants lacked a direct financial relationship with BLMIS on their own behalf. The money entrusted to BLMIS was the property

of the Limited Partnerships, not the Objecting Claimants. The BLMIS Accounts were in the names of the Limited Partnerships, not in the individual names of Objecting Claimants.

The individual financial interests of Objecting Claimants in each account were not identified in BLMIS' books and records. The general partners who dealt with BLMIS were like the trustees who acted for the trust account in *Morgan Kennedy*, and were no more customers in their individual capacity than the trustees were. *Morgan Kennedy*, 533 F.2d at 1318, 1320-21 (notwithstanding that the trust account was in the name of the trustees, "[a]ny suggestion that each of the three Trustees has a separate customer claim against the debtor is untenable" because the Trustees together managed the trust, "which was the true customer of the broker-dealer"; similarly, noting that under the SIPA Rules, individual coverage for multiple people who each own some portion of, or interest in, an account is "explicitly forbidden").

Only the Limited Partnerships, not the Objecting Claimants, entrusted their cash or securities to BLMIS, and the Objecting Claimants thus fail to satisfy this "critical aspect of the 'customer' definition." *Kruse*, 708 F.3d at 426-27 (citing *In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d at 236); *accord ERISA Claimant Decision*, 515 B.R. at 169. Whether the Objecting Claimants intended the Limited Partnerships to invest with BLMIS is irrelevant under SIPA. *See Kruse*, 708 F.3d at 426-27; *ERISA Claimant Decision*, 515 B.R. at 169-70.

The funds that the Objecting Claimants contributed to the Limited Partnerships, and anything that the Limited Partnerships purchased with those funds, belonged to the relevant Limited Partnership and not to any individual Objecting Claimant. Under both Wyoming and New York Limited Partnership statutes, partnership property belongs to the partnership alone and not to the individual partners. WYO. STAT. ANN. § 17-21-203 (West 2016) ("Property transferred to or otherwise acquired by a partnership is property of the partnership and not of the

partners individually."); N.Y. P'SHIP LAW § 121-701 (McKinney 2016) ("An interest in a limited partnership is personal property and a partner has no interest in specific partnership property.").[14] Under Cayman Island partnership laws, the general partner(s) are empowered to hold property and assets on behalf of the partnership. CAYMAN IS. EXEMPTED LTD. P'SHIP LAW §16(1) ("Any rights or property of every description of the exempted limited partnership . . . shall be held or deemed to be held by the general partner . . . upon trust as an asset of the exempted limited partnership in accordance with the terms of the partnership agreement."). The limited partners are similarly unable to control the partnership's management. CAYMAN IS. EXEMPTED LTD. P'SHIP LAW §14(1) ("A limited partner shall not take part in the conduct of the business of an exempted limited partnership in its capacity as a limited partner.") Thus, under Wyoming, New York, and Cayman Island law and like the objecting claimants dealt with by prior Customer Opinions, the Objecting Claimants do not individually own the assets that the Limited Partnerships invested with BLMIS. Instead, the assets are collectively owned by the Limited Partnerships themselves or through their general partners.

It was the Limited Partnerships, directly or through their general partners, and not the Objecting Claimants, which entrusted assets to BLMIS for the purpose of purchasing securities. Each Limited Partnership, through its general partners, had the right to direct the investment of those assets on behalf of the Limited Partnership, and to withdraw property from its Account on behalf of the Limited Partnership. Each Limited Partnership and not the Objecting Claimants, was the customer for its respective Account under SIPA.

---

[14] *See also Alley v. Clark*, 71 F. Supp. 521, 526 (E.D.N.Y. 1947) ("[A] limited partner has no property right in the partnership assets."); *Newburger, Loeb & Co. v. Gross*, 563 F.2d 1057, 1076 (2d Cir. 1977) (explaining that limited partners have no property right in the partnership assets); *Reiter v. Greenberg*, 21 N.Y.2d 388, 391 (N.Y. 1968) ("An interest in a limited partnership—even a partnership that deals solely in real estate—is personalty not realty.").

Because BLMIS did not perform a custodial function on behalf of the individual Objecting Claimants, the Objecting Claimants have neither "customer" claims nor individual net equity. The purpose of SIPA, a statute intended to deal with broker insolvency, is "to expedite the return of customer property" by "protecting the *custody* function of brokers." *Sec. Inv'r Prot. Corp. v. 2427 Parent Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*, 779 F.3d 74, 80 (2d Cir. 2015) (finding impermissible the application of interest or time-based damages to customer claims under SIPA). Customers share in the fund of customer property ratably, according to each customer's "net equity." *Id*. at 77, 81. The definition of net equity is limited by the fundamental SIPA design "to return customer property to customers," *id.* at 77, whether in cash or in actual securities. *Id*. at 80.[15]

The Second Circuit stated in *2427 Parent Corp.*, "[w]e . . . previously concluded that in [the BLMIS] case net equity . . . should be determined based on customers' actual deposits and withdrawals. These deposits, net withdrawals, constitute customer property here." *Id.* at 81 (citations omitted). The books and records of BLMIS show that Objecting Claimants made no individual deposits into or withdrawals from BLMIS on their own behalf, and most do not appear in the books and records at all. Sehgal Decl. ¶¶ 17, 29, 39, Exs. 4, 16, 26. The Objecting Claimants accordingly have no net equity and are not "customers" within the meaning of SIPA.

Each of the Objecting Claimants was served with requests for admission, interrogatories, and requests for production. None of the Objecting Claimants responded. By failing to respond to the requests for admissions, the Objecting Claimants admitted them. FED. R. CIV. P. 36(a)(3).

---

[15] The definition of "net equity" at SIPA § 78*lll*(11) begins, "The term 'net equity' means the dollar amount of the account or accounts of a customer, to be determined by—

(A) Calculating the sum which would have been owed by the debtor to such customer if the debtor had liquidated . . . on the filing date—(i) all securities positions of such customer . . . ."

These admissions show that Objecting Claimants lack any relationship with BLMIS that fits the *Morgan Kennedy* criteria and that their claims of "customer" status are baseless. They admitted that: (i) the relevant Account was not titled in their name;[16] (ii) that they never received investment statements or tax statements in their names from BLMIS;[17] (iii) that they never paid cash directly to BLMIS for credit to an account in their names;[18] (iv) never deposited securities directly with BLMIS;[19] (v) that they never directly withdrew or received funds directly from BLMIS;[20] (vi) that their only relationship to BLMIS existed by way of their relationship to the Account holder;[21] (vii) that they never entered into any contracts in their names with BLMIS;[22] and (viii) that they did not have any control, investment discretion or decision-making power over any investment assets at BLMIS.[23]

As the Second Circuit has explained, "[j]udicial interpretations of 'customer' status support a narrow interpretation of the SIPA's provisions." *Kruse*, 708 F.3d at 426 (quoting *In re New Times Sec. Servs., Inc.*, 463 F.3d at 127). Customer status under SIPA is narrowly construed and is the burden of the claimant to establish. *See ERISA Claimant Decision*, 515 B.R. at 166; *In re Bernard L. Madoff Inv. Sec. LLC*, 454 B.R. at 294 (citing *In re Klein, Maus & Shire, Inc.*, 301 B.R. 408, 418 (Bankr. S.D.N.Y. 2003)) ("The burden is on the claimant to establish he is a 'customer' entitled to SIPA protection, and such a showing 'is not easily met.'"); *see also Mishkin v. Siclari (In re Adler, Coleman Clearing Corp.)*, 277 B.R. at 557 (Bankr. S.D.N.Y.

---

[16] Ackerman Decl., Exs. 1-3, ¶ 1.

[17] Ackerman Decl., Exs. 1-3, ¶¶ 8, 9.

[18] Ackerman Decl., Exs. 2, 3, ¶ 5; Ackerman Decl., Ex. 1, ¶ 4.

[19] Ackerman Decl., Exs. 2, 3, ¶ 4; Ackerman Decl., Ex. 1, ¶ 5.

[20] Ackerman Decl., Ex. 1-3, ¶¶ 6, 7.

[21] Ackerman Decl., Exs. 1-3, ¶ 11.

[22] Ackerman Decl., Exs. 1-3, ¶ 10.

[23] Ackerman Decl., Exs. 1-3, ¶ 12.

2002) ("[I]it is well-established in the Second Circuit that a claimant bears the burden of proving that he or she is a 'customer' under SIPA."). The Objecting Claimants have not met this burden. Thus, under Second Circuit precedent, the Objecting Claimants are not SIPA customers.

## CONCLUSION

For all of the foregoing reasons, the Trustee respectfully requests that the Court affirm the Trustee's determination denying the Objecting Claimants' eighteen claims, overrule the Objecting Claimants' ten objections, disallow their claims, and grant such other and further relief as the Court deems just and proper.

Dated: New York, New York
November 9, 2016

Respectfully submitted,

/s/ David J. Sheehan
David J. Sheehan
Email: dsheehan@bakerlaw.com
Nicholas J. Cremona
Email: ncremona@bakerlaw.com
Jorian L. Rose
Email: jrose@bakerlaw.com
Amy E. Vanderwal
Email: avanderwal@bakerlaw.com
Stephanie A. Ackerman
Email: sackerman@bakerlaw.com
**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, New York  10111
Tel: (212) 589-4200
Fax: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee for the*
*Substantively Consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities LLC*
*and the Estate of Bernard L. Madoff*