Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
Irving H. Picard
Email: ipicard@bakerlaw.com
David J. Sheehan
Email: dsheehan@bakerlaw.com
Seanna R. Brown
Email: sbrown@bakerlaw.com
Heather R. Wlodek
Email: hwlodek@bakerlaw.com

Hearing Date: December 21, 2016
Hearing Time: 10:00 a.m. (EST)
Objection Deadline:  December 14, 2016
Time: 4:00 p.m. (EST)

*Attorneys for Irving H. Picard, Trustee for the*
*Substantively Consolidated SIPA Liquidation of*
*Bernard L. Madoff Investment Securities LLC*
*and the Estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. No. 08-01789 (SMB) |
| Plaintiff, | SIPA Liquidation |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |

**TWENTY-SECOND APPLICATION OF TRUSTEE AND BAKER & HOSTETLER LLP**
**FOR ALLOWANCE OF INTERIM COMPENSATION FOR SERVICES RENDERED**
**AND REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES INCURRED**
**<u>FROM APRIL 1, 2016 THROUGH JULY 31, 2016</u>**

# TABLE OF CONTENTS

**Page**

I.  PRELIMINARY STATEMENT ................................................................1

II.  BACKGROUND .............................................................................4

    A.  THE SIPA LIQUIDATION ...........................................................4

    B.  THE TRUSTEE, COUNSEL AND CONSULTANTS ............................5

    C.  PRIOR COMPENSATION ORDERS..............................................5

III.  SUMMARY OF SERVICES ................................................................7

    A.  HARDSHIP PROGRAM ...............................................................7

    B.  THE RECOVERY AND RETURN OF CUSTOMER PROPERTY ...................7

        a.  Recoveries Accomplished During The Compensation
           Period ......................................................................7

IV.  DETAILED DESCRIPTION OF SERVICES ...........................................8

    A.  MATTER 01 ..............................................................................9

        a.  Task Code 01: Trustee Investigation .....................................9

        b.  Task Code 02: Bankruptcy Court Litigation..............................10

        c.  Task Code 03: Feeder Funds.................................................15

        d.  Task Code 04: Asset Search and Sale ....................................15

        e.  Task Code 05: Internal Meetings with Staff.............................16

        f.  Task Code 07: Billing and Trustee Reports...............................16

        g.  Task Code 08: Case Administration ........................................16

        h.  Task Code 09: Banks .........................................................17

        i.  Task Code 10: Court Appearances .........................................18

        j.  Task Code 11: Press Inquiries and Responses ...........................18

        k.  Task Code 12: Document Review ...........................................18

        l.  Task Code 13: Depositions and Document Productions by
           the Trustee.................................................................18

        m.  Task Code 14: International..................................................19

        n.  Task Code 15: Charities......................................................19

## TABLE OF CONTENTS
(continued)

| | | Page |
|---|---|---|

| | o. | Task Code 19: Non-Bankruptcy Litigation | 20 |
| | p. | Task Code 20: Governmental Agencies | 20 |
| | q. | Task Code 21: Allocation | 20 |
| B. | | MATTER 03 – CHAIS | 22 |
| C. | | MATTER 04 – MERKIN | 22 |
| D. | | MATTER 05 – CUSTOMER CLAIMS | 24 |
| | a. | Customer Claims | 24 |
| | b. | General Creditor Claims | 25 |
| | c. | The Trustee Has Kept Customers Informed Of The Status Of The Claims Process | 25 |
| E. | | MATTER 07 – MADOFF FAMILY | 26 |
| F. | | MATTER 09 – FAIRFIELD GREENWICH | 31 |
| G. | | MATTER 11 – COHMAD SECURITIES CORPORATION | 36 |
| H. | | MATTER 12 – PICOWER | 37 |
| I. | | MATTER 13 – KINGATE | 39 |
| J. | | MATTER 21 – AVOIDANCE ACTION LITIGATION | 42 |
| | a. | District Court Proceedings | 43 |
| | b. | Resolution of Good Faith Avoidance Actions | 44 |
| | c. | Picard v. Andrew H. Cohen, Adv. Pro. No. 10-04311 | 45 |
| | d. | Interlocutory Appeal of The Trustee's Protective Order | 48 |
| | e. | Discovery Disputes Over Rule 45 Subpoenas | 49 |
| | f. | Extraterritoriality | 50 |
| K. | | MATTER 29 – RYE/TREMONT | 51 |
| L. | | MATTER 30 – HSBC | 53 |
| M. | | MATTER 32 – Luxalpha UBS/LIF | 53 |
| N. | | MATTER 33 – NOMURA INTERNATIONAL PLC | 58 |
| O. | | MATTER 34 – CITIBANK | 60 |

# TABLE OF CONTENTS
### (continued)

|  |  |  | **Page** |
|---|---|---|---|
| P. | MATTER 35 – NATIXIS | | 63 |
| Q. | MATTER 36 – MERRILL LYNCH | | 64 |
| R. | MATTER 37 – ABN AMRO | | 66 |
| S. | MATTER 38 – BANCO BILBAO | | 67 |
| T. | MATTER 39 – FORTIS | | 69 |
| U. | MATTER 40 – MEDICI/KOHN | | 71 |
| V. | MATTER 42 – EQUITY TRADING | | 72 |
| W. | MATTER 46 – GLANTZ | | 72 |
| X. | MATTER 48 – BONGIORNO | | 74 |
| Y. | MATTER 51 – CRUPI | | 74 |
| Z. | MATTER 53 – MAGNIFY | | 75 |
| AA. | MATTER 54 – MENDELOW | | 77 |
| BB. | MATTER 56 – LIPKIN | | 79 |
| CC. | MATTER 59 – STANLEY SHAPIRO | | 79 |
| DD. | MATTER 60 – AVELLINO | | 80 |
| EE. | MATTER 62 – SUBSEQUENT TRANSFERS | | 82 |
| FF. | MATTER 65 – LEGACY | | 84 |
| GG. | MATTER 71 – SQUARE ONE | | 85 |
| HH. | MATTER 73 – BNP PARIBAS | | 85 |
| V. | COMPENSATION REQUESTED | | 88 |
| VI. | REQUEST FOR INTERIM COMPENSATION SHOULD BE GRANTED | | 91 |
| VII. | CONCLUSION | | 93 |

TO THE HONORABLE STUART M. BERNSTEIN
UNITED STATES BANKRUPTCY JUDGE:

Baker & Hostetler LLP ("B&H"), as counsel to Irving H. Picard, Esq., trustee (the

"Trustee") for the substantively consolidated liquidation proceeding of Bernard L. Madoff

Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act ("SIPA"), 15

U.S.C. § 78aaa *et seq.*,[1] and the chapter 7 case of Bernard L. Madoff ("Madoff"), individually

(collectively, the "Debtor"), respectfully submits this twenty-second application (the

"Application") on behalf of the Trustee and itself for an order pursuant to § 78eee(b)(5) of SIPA,

§§ 330 and 331 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 2016(a) of

the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and the Order Pursuant to

§ 78eee(b)(5) of SIPA, sections 105, 330 and 331 of the Bankruptcy Code, Bankruptcy Rule

2016(a), and Local Bankruptcy Rule 2016-1 Establishing Procedures Governing Interim

Monthly Compensation of Trustee and Baker & Hostetler LLP, dated February 25, 2009 (ECF

No. 126), as amended on December 17, 2009 and June 1, 2011 (ECF Nos. 1078, 4125)

(collectively, the "Second Amended Compensation Order"), allowing and awarding (i) interim

compensation for services performed by the Trustee and B&H for the period commencing April

1, 2016 through and including July 31, 2016 (the "Compensation Period") and (ii)

reimbursement of the Trustee's and B&H's actual and necessary expenses incurred during the

Compensation Period, and in support thereof, respectfully represents as follows:

## I.    PRELIMINARY STATEMENT

1.    The work completed as counsel to the Trustee, during the Compensation Period

yielded significant results for BLMIS customers and the liquidation.  Through pre-litigation and

other settlements, which were approved by the Bankruptcy Court and/or the District Court, the

---

[1] References hereinafter to provisions of SIPA shall omit "15 U.S.C."

Trustee has successfully recovered, or reached agreements to recover, approximately $11.203 billion as of July 31, 2016—more than 63% of the $17.550 billion of principal estimated to have been lost in the Ponzi scheme by those who filed claims—for the benefit of all customers of BLMIS with an allowed claim.[2]

2.      The Trustee has made seven interim distributions of customer property to date. *See* discussion *infra* Section IV(A)(q). The Trustee has distributed approximately $9.467 billion to BLMIS customers through November 16, 2016, inclusive of catch-up distributions and SIPC advances in the amount of $836.633 million. *See* discussion *infra* Section IV(A)(q).

3.      No administration costs, including the compensation of the Trustee and his counsel, will be paid out of any recoveries obtained by the Trustee for the benefit of BLMIS customers. Because the percentage commission schedule for trustees found in § 326(a) of the Bankruptcy Code is not applicable in a SIPA liquidation, see § 78eee(b)(5)(C) of SIPA, no applications filed by the Trustee have or will ever include a fee request based on recoveries made by the Trustee for the benefit of BLMIS customers. Rather, all fees, expenses, and administrative costs incurred by the Trustee and his counsel including, but not limited to, B&H; various international special counsel retained by the Trustee (collectively referred to herein as "International Counsel"), including Browne Jacobson LLP ("Brown Jacobson"), Triay Stagnetto Neish Barristers & Solicitors ("Triay Stagnetto"), Williams Barristers & Attorneys ("Williams Barristers"); various special counsel to the Trustee (collectively referred to herein as "Counsel"), including Windels Marx Lane & Mittendorf, LLP ("Windels Marx"), Young Conaway Stargatt & Taylor, LLP ("Young Conaway"), and consultants, are paid out of administrative advances made by SIPC. As Judge Lifland affirmed: "Again, the emphasis is that these fees . . . are not

---

[2] The Trustee entered into settlements subsequent to the Compensation Period that will bring an additional $350.207 million into the Customer Fund. *See* discussion *infra* Section III(B).

coming from any of the victims, and they're not coming from the estate." Fifth Appl. Hr'g Tr. 32:15-17, Dec. 14, 2010.

4.      As the Trustee's and his counsels' fees and expenses are chargeable to the general estate and not to the fund of customer property (the "Customer Fund"), the payment of the same has absolutely no impact on the Trustee's current and future recoveries that have been and will be allocated to the Customer Fund for pro rata distribution to BLMIS customers whose claims have been allowed by the Trustee.

5.      In a liquidation proceeding such as this, where the general estate is insufficient to pay trustee and counsel compensation, SIPC plays a specific role with compensation and is required to advance funds to pay the costs of administration. *See* SIPA §§ 78eee(b)(5)(c) and 78fff-3(b)(2). SIPC has carefully reviewed this Application, as it has all other compensation applications, and has closely analyzed the time records and services rendered. Each month, SIPC, the Trustee, and B&H engage in extensive discussions regarding billings, and the Trustee and B&H make reductions where appropriate and finalize the amounts that appear herein. Thus, the requested fees and expenses in this Application include (i) fees at the Trustee's and B&H's hourly billable rates to which a public interest discount of 10% has been applied, and (ii) actual, necessary, and reasonable expenses incurred within the Compensation Period.

6.      During the hearing on the Eighth Interim Fee Application, Judge Lifland acknowledged the worldwide efforts of the Trustee and his counsel and approved the application:

> Well, having heard the description and being well aware of the worldwide activities started off by Bernie Madoff and the sequelae is left for everybody else to follow all the trails and the trails do lead almost everywhere in the world. It is clear under the circumstances that a Herculean effort to follow those trails has been involved both with counsel here in the United States and counsel overseas.

Eighth Appl. Hr'g Tr. 16, Mar. 15, 2012, ECF No. 4736.

7.      No single document can capture all of the tasks engaged in by the Trustee and

B&H since their appointment on December 15, 2008.  Hundreds of thousands of hours have been

expended in support of the Trustee's efforts to liquidate the estate, determine customer claims,

and advance the interests of all claimants by litigating and settling cases for the return of

customer property ("Customer Property").  Moreover, the Trustee has vigorously defended the

estate with respect to a number of litigations filed against it and against his protection of

Customer Property.  The following discussion and materials attached to this Application cover

the major categories of services for which allowance of compensation is sought.

8.      As Judge Lifland recognized, "[w]ith respect to the kinds of services that have

been rendered here, the amounts requested, this is by any stretch of the imagination one of the

largest, most complex sets of litigation that have come down the pike.  It's measured both in

quality and quantity in the thousands with deadlines that have come . . . and it is a big stretch for

any law firm or any organization to deal with."  Sixth Fee Appl. Hr'g Tr. 45:23-46:6, June 1,

2011.

## II.    BACKGROUND

### A.    THE SIPA LIQUIDATION

9.      The Trustee and B&H's prior interim fee applications, each of which is fully

incorporated herein,[3] have detailed the circumstances surrounding the filing of this case and the

events that have taken place during prior phases of this proceeding.

---

[3] Prior fee applications cover the periods from December 11, 2008 to May 31, 2009 (the "First Interim Fee
Application") (ECF No. 320, 321); June 1, 2009 to September 30, 2009 (the "Second Interim Fee Application")
(ECF No. 998, 1010); October 1, 2009 to January 31, 2010 (the "Third Interim Fee Application") (ECF No. 2188,
2189); February 1, 2010 to May 31, 2010 (the "Fourth Interim Fee Application") (ECF No. 2883); June 1, 2010 to
September 30, 2010 (the "Fifth Interim Fee Application") (ECF No. 3207); October 1, 2010 to January 31, 2011 (the
"Sixth Interim Fee Application") (ECF No. 4022); February 1, 2011 to May 31, 2011 (the "Seventh Interim Fee
Application") (ECF No. 4376); June 1, 2011 to September 30, 2011 (the "Eighth Interim Fee Application") (ECF
No. 4676); October 1, 2012 to January 31, 2012 (the "Ninth Interim Fee Application") ("ECF No. 4936); February
1, 2012 to June 30, 2012 (the "Tenth Interim Fee Application") (ECF No. 5097); July 1, 2012 to November 30, 2012

B.      **THE TRUSTEE, COUNSEL AND CONSULTANTS**

10.     The Trustee and B&H's prior interim fee applications have detailed the description of the Trustee's background and experience.

11.     In rendering professional services to the Trustee, B&H has utilized a legal team comprised of professionals with extensive experience in areas such as bankruptcy, securities, tax, corporate, and litigation, permitting the Trustee to conduct this liquidation efficiently.

12.     The Ponzi scheme perpetrated by Madoff through BLMIS was vast in scope, long in duration, and broad in its geographical reach. The Trustee, with the assistance of his counsel, has undertaken a comprehensive investigation of BLMIS, Madoff, and hundreds of related individuals and entities. To this end, the Trustee has engaged not only the services of counsel, but also those of forensic accountants and legal experts, including, but not limited to, AlixPartners LLP ("AlixPartners"), the Trustee's consultant and claims agent; FTI Consulting ("FTI"); and several investigative and industry consultants (collectively referred to herein as the "Consultants").

C.      **PRIOR COMPENSATION ORDERS**

13.     The Trustee and B&H filed applications for allowance of interim compensation for professional services rendered and reimbursement of actual and necessary expenses incurred in prior periods, and this Court approved those applications:

---

(the "Eleventh Interim Fee Application") (ECF No. 5333); December 1, 2012 to April 30, 2013 (the "Twelfth Interim Fee Application") (ECF No. 5490); and May 1, 2013 through July 31, 2013 (the "Thirteenth Interim Fee Application") (ECF No. 5566); August 1, 2013 through November 30, 2013 (the "Fourteenth Interim Fee Application") (ECF No. 5980); December 1, 2013 through March 31, 2014 (the "Fifteenth Interim Fee Application") (ECF No. 7470); April 1, 2014 through July 31, 2014 (the "Sixteenth Interim Fee Application") (ECF No. 8549); August 1, 2014 through November 30, 2014 (the "Seventeenth Interim Fee Application") (ECF No. 9583); December 1, 2014 through March 31, 2015 (the "Eighteenth Interim Fee Application") (ECF No. 10814); April 1, 2015 through July 31, 2015 (the "Nineteenth Interim Fee Application") (ECF No. 12089); August 1, 2015 through November 30, 2015 (the "Twentieth Interim Fee Application") (ECF No. 12958); and December 1, 2015 through March 31, 2016 (the "Twenty-First Interim Fee Application") (ECF No. 13751).

| Applications | Orders Entered[4] |
|---|---|
| First Application (ECF Nos. 320, 321) | August 6, 2009 (ECF No. 363); March 7, 2013 (ECF No. 5258) |
| Second Application (ECF Nos. 998, 1010) | December 17, 2009 (ECF No. 1078) |
| Third Application (ECF Nos. 2188, 2189) | May 6, 2010 (ECF No. 2251) |
| Fourth Application (ECF No. 2883) | September 14, 2010 (ECF No. 2981) |
| Fifth Application (ECF No. 3207) | December 14, 2010 (ECF No. 3474); March 7, 2013 (ECF No. 5258) |
| Sixth Application (ECF No. 4022) | June 1, 2011 (ECF No. 4125); March 7, 2013 (ECF No. 5258) |
| Seventh Application (ECF No. 4376) | October 19, 2011 (ECF No. 4471); March 7, 2013 (ECF No. 5258) |
| Eighth Application (ECF No. 4676) | January 2, 2013 (ECF No. 5181);[5] March 7, 2013 (ECF No. 5258) |
| Ninth Application (ECF No. 4936) | August 30, 2012 (ECF No. 5012); March 7, 2013 (ECF No. 5258) |
| Tenth Application (ECF No. 5097) | December 19, 2012 (ECF No. 5161); March 7, 2013 (ECF No. 5258) |
| Eleventh Application (ECF No. 5333) | June 5, 2013 (ECF No. 5383) |
| Twelfth Application (ECF No. 5490) | October 17, 2013 (ECF No. 5547) |
| Thirteenth Application (ECF No. 5566) | December 17, 2013 (ECF No. 5605) |
| Fourteenth Application (ECF No. 5980) | April 18, 2014 (ECF No. 6343) |
| Fifteenth Application (ECF No. 7470) | August 28, 2014 (ECF No. 7825) |
| Sixteenth Application (ECF No. 8549) | December 22, 2014 (ECF No. 8867) |
| Seventeenth Application (ECF No. 9583) | April 16, 2015 (ECF No. 9823) |
| Eighteenth Application (ECF No. 10814) | August 27, 2015 (ECF No. 11148) |
| Nineteenth Application (ECF No. 12089) | December 18, 2015 (ECF No. 12292) |
| Twentieth Application (ECF No. 12958) | April 28, 2016 (ECF No. 13180) |
| Twenty-First Application (ECF No. 13751) | September 8, 2016 (ECF No. 13990) |

---

[4] On March 7, 2013, this Court entered an Errata Order (ECF No. 5258) to correct errors in the First, Fifth, Sixth, Seventh, Eighth, Ninth, and Tenth orders approving prior applications for allowance of interim compensation that were filed by the Trustee, B&H, and certain of the Counsel and International Counsel retained by the Trustee. The Errata Order did not affect the amount of compensation payable to the Trustee, B&H, or any of the Trustee's Counsel and International Counsel other than, with respect to SCACreque, an additional $0.60 became due and owing to that firm.

[5] This order amends and supersedes this Court's March 19, 2012 order (ECF No. 4735), approving the Eighth Interim Fee Application.

### III.    SUMMARY OF SERVICES

14.    A SIPA proceeding contemplates, *inter alia*, the processing of customer claims, the orderly liquidation of the business of a broker-dealer, and the return of Customer Property to the failed brokerage's customers.  Accordingly, the Trustee's and B&H's services, which are summarized in greater detail below, are comprised of specific tasks that are critical to accomplishing those objectives.

#### A.    HARDSHIP PROGRAM

15.    As of July 31, 2016, the Trustee had received 441 applications from avoidance action defendants relating to 293 adversary proceedings and 611 defendants.  After reviewing the facts and circumstances presented in each application and, in many cases, requesting additional verifying information, the Trustee dismissed 258 Hardship Program applicants-defendants from avoidance actions.  As of July 31, 2016, there were 52 Hardship Program applicant-defendants still under review and 301 applicant-defendants were resolved because they were either withdrawn by the applicant, deemed withdrawn for failure of the applicant to pursue the application, denied for lack of hardship or referred for consideration of settlement.  The Trustee has also extended the time for applicants to answer or otherwise respond to avoidance action complaints while their Hardship Program applications are pending.  Hardship applications continue to be submitted.

#### B.    THE RECOVERY AND RETURN OF CUSTOMER PROPERTY

##### a.    Recoveries Accomplished During The Compensation Period

16.    Without the need for protracted litigation, during the Compensation Period, the Trustee settled 33 cases for $73,046,985.38.  As of July 31, 2016, the Trustee had successfully recovered approximately $11.203 billion.

17.     The Trustee entered into settlements subsequent to the Compensation Period that will bring an additional $350.207 million into the Customer Fund.

18.     The Trustee is also engaged in ongoing settlement negotiations with a number of parties that when completed, will result in additional recoveries for the benefit of customers without the delay and expense of protracted litigation.

19.     Through the end of the Compensation Period, the Trustee recovered $536,052,384.27 as a result of preferences and other settlements that were made pursuant to agreements subject to the net equity dispute.  The United States Supreme Court (the "Supreme Court") declined to review the net equity dispute.

## IV.     DETAILED DESCRIPTION OF SERVICES

20.     Given the unprecedented fraud perpetrated by Madoff, the issues presented by this liquidation are complex, discovery is wide-ranging, and the litigation that has ensued is hotly contested.  All of this requires an enormous effort by the Trustee and his counsel for the benefit of the victims.  The following is a more detailed synopsis of the significant services rendered by the Trustee and B&H during the Compensation Period, organized according to internal B&H matter numbers and task codes.

21.     Matter Number 01 is the general matter number used for tasks by the Trustee and B&H.  Task numbers for Matter Number 01 have been assigned for specific categories of work to permit a more detailed analysis of the fees incurred.

22.     Matter Numbers 03-73 (with the exception of Matter Number 05, which relates to customer claims) relate to litigation brought by the Trustee and B&H against various individuals, feeder funds, and entities.  In each of these matters, the Trustee and B&H attorneys perform several functions, including the following tasks: conduct legal research, draft internal memoranda, engage in internal meetings regarding investigation and litigation strategy, and

8

engage in discussions with counsel for defendant(s).  Rather than repeat these tasks, the description of each matter will be limited to matter-specific tasks and case activity that occurred during the Compensation Period.

**A.    MATTER 01**

23.    This matter categorizes time spent by the Trustee and B&H and encompasses the below enumerated tasks.

**a.    Task Code 01: Trustee Investigation**

24.    This category relates to time spent with respect to the investigation into BLMIS, Madoff, and various assets.

25.    The Trustee is seeking the return of billions of dollars to the estate of BLMIS for distribution to customers in accordance with SIPA.  In carrying out his investigation into the many layers of complex financial transactions engaged in by Madoff and those who worked for him, the Trustee has issued hundreds of subpoenas, analyzed the myriad of documentation received, and conducted numerous follow-up activities to enforce the Trustee's rights to the return of Customer Property.

26.    During the Compensation Period, the Trustee and B&H attorneys initiated, participated in, and monitored international proceedings involving BLMIS.  B&H attorneys continued the investigation of banks, feeder funds, auditors, insiders, Madoff's friends and family members, former BLMIS employees, and other Madoff-related parties.

27.    B&H attorneys discussed and conferenced with SIPC, Windels Marx, Young Conaway, and International Counsel regarding investigation and litigation strategy, prepared requests for discovery, negotiated other discovery-related issues with adversaries, and organized and reviewed documents received in response to third-party inquiries and subpoenas.

b.    **Task Code 02: Bankruptcy Court Litigation**

28.    This category relates to time spent conducting legal research, drafting, and filing various pleadings and motions in the main bankruptcy proceeding that affect the hundreds of adversary proceedings filed by the Trustee.

29.    During the Compensation Period, B&H attorneys focused on various administrative tasks relating to the pending litigations.  They continued to develop overall case strategies applicable to the pending litigations and researched various legal issues related to those litigations including developments in Ponzi law, fraudulent transfer law, bankruptcy matters, privilege, evidence, and rules regarding experts and expert testimony.

30.    During the Compensation Period, B&H attorneys addressed pending lawsuits related to enjoining third party lawsuits that the Trustee has argued are subject to permanent injunctions that were previously approved by the Bankruptcy Court.  The Bankruptcy Court took under advisement a motion to dismiss the Trustee's lawsuit that seeks to enjoin third party lawsuits in February 2015.  The Bankruptcy Court issued a decision on February 17, 2016 granting the Trustee's application to enjoin the lawsuits.  *See Picard v. A&G Goldman P'ship*, Adv. Pro. No. 14-02407 (SMB) (Bankr. S.D.N.Y.) (ECF No. 42).  The decision was appealed to the District Court on March 21, 2016.  *See A&G Goldman P'ship v. Picard,* No. 16-CV-2058 (S.D.N.Y.).  Appellants filed their opening brief on May 20, 2016, ECF Nos. 26, 29.  B&H attorneys and counsel for the Picower parties filed reply briefs on June 24, 2016, ECF Nos. 31, 32.  Appellants' reply brief was filed on July 14, 2016, ECF No. 43, and a decision is pending.

31.    The Second Circuit dismissed an appeal seeking reversal of the District Court's decision affirming the Bankruptcy Court's ruling that the current lawsuit violated the permanent injunction of the Bankruptcy Court.  *See Fox v. Picard*, Case Nos. 15-1886, 15-1869 (2d Cir. Sept 25, 2015).  On August 29, 2015, a putative class of plaintiffs filed a complaint in the

Bankruptcy Court seeking a declaratory judgment that a proposed third amended complaint to be filed in the Southern District of Florida does not violate the automatic stay or the permanent injunction of the Bankruptcy Court, as related to Jeffry Picower and related entities. *See Marshall v. Capital Growth Company, et al.*, No. 15-01293 (SMB) (Bankr. S.D.N.Y. Aug. 29, 2015). B&H attorneys prepared the Trustee's opposition brief, which was filed on December 18, 2015, ECF No. 25, and the plaintiffs filed their reply brief on January 14, 2016, ECF No. 30. Also during the Compensation Period, B&H attorneys appeared at the related hearing before Judge Bernstein on February 18, 2016.

32.     On December 5, 2014, this Court issued an opinion and order affirming the Trustee's treatment of inter-account transfers as that method relates to application of the net investment method to calculation of a customer's net equity claims. *In re Bernard L. Madoff*, 522 B.R. 41 (Bankr. S.D.N.Y. 2014). In February 2015, five separate appeals were filed in the District Court, challenging the Bankruptcy Court's order affirming the Trustee's treatment of inter-account transfers as that method relates to application of the net investment method to calculation of a customer's net equity claims. (Case Nos. 15-cv-01151; 15-cv-01195; 15-cv-01223; 15-cv-01236; 15-cv-01263 (S.D.N.Y.)). Oral argument was held before the Honorable Paul A. Engelmayer on September 17, 2015. The District Court affirmed the Bankruptcy Court's decision on January 14, 2016 and entered its final order and judgment on January 28, 2016. *Diana Melton Trust, Dated 12/05/05 v. Picard (In re Bernard L. Madoff Inv. Sec. LLC)*, 115 Civ. 1151(PAE), 2016 WL 183492*1 (S.D.N.Y. Jan. 14, 2016), *appeal docketed*, No. 16-413 (2d Cir. Feb. 16, 2016).

33.     On February 11 and 12, 2016, three appeals were taken from Judge Engelmayer's order to the Second Circuit. *Blecker v. Picard*, No. 15-cv-01236 (S.D.N.Y. Feb. 12, 2016), ECF

11

No. 45; *Zraick v. Picard*, No. 15-cv-1195 (S.D.N.Y. Feb. 12, 2016), ECF No. 34; *Sagor v. Picard*, No. 15-cv-1263 (S.D.N.Y. Feb. 12, 2016), ECF No. 41.  The Trustee subsequently moved to consolidate the three appeals and set a common briefing schedule on March 18, 2016; that motion was granted on March 23, 2016. *See Sagor v. Picard*, 16-413, ECF No. 34; *Zraick et al. v. Picard*, 16-420, ECF No. 34; *Blecker et al. v. Picard*, 16-423, ECF No. 39.

34.    The appellants filed three opening briefs on May 23, 2016. (ECF Nos. 134, 140 and 141).  B&H attorneys filed the Trustee's opposition on August 22, 2016 (ECF No. 166).  SIPC's opposition brief was filed on August 23, 2016 (ECF No. 170).  And, an amicus brief was filed on May 31, 2016 (ECF No. 155).  Replies were filed on September 29 and 30, 2016 (ECF Nos. 184, 186 and 187). Oral argument before the Second Circuit is currently scheduled for the week of January 9, 2017.

35.    While the inter-account transfer matter was being litigated in the Bankruptcy Court, one customer raised an issue with respect to certain withdrawals that were reflected on his BLMIS customer account statements.  *See* Declaration of Aaron Blecker, In Opposition to the Trustee's Motion to Affirm The Application of The Net Investment Method to the Determination of Customer Transfers Between BLMIS Accounts (ECF No. 6761).  Upon further review and analysis, the Trustee discovered that several hundred accounts contained the notation "PW."  In light of the large number of impacted accounts, the Trustee sought to institute an omnibus proceeding to resolve the question of whether the Trustee's treatment of "PW" transactions as cash withdrawals for the purposes of a customer's net equity calculation is proper.  *See* Amended Motion for Order Establishing Schedule For Limited Discovery & Briefing On Profit Withdrawal Issue (ECF No. 10017).  On June 25, 2015, the Bankruptcy Court entered a scheduling order which sets forth various deadlines for briefing and discovery related to the

12

Profit Withdrawal issue. *See* Order Establishing Schedule for Limited Discovery and Briefing on Profit Withdrawal Issue (ECF No. 10266). Pursuant to that scheduling order, B&H attorneys produced documents and addressed discovery-related matters with those claimants who elected to participate in the Profit Withdrawal litigation.

36.    On December 28, 2015, Aaron Blecker—an active litigant in both the Profit Withdrawal litigation and the inter-account transfer appeal, *see supra*—filed a Motion to Compel the Trustee to Allow His SIPC Claim with an accompanying Declaration of Bernard L. Madoff (ECF No. 12319). The Trustee opposed the Blecker Motion to Compel on the grounds that it was an attempt to contravene both the Profit Withdrawal litigation schedule and the Claims Procedure Order (ECF No. 12), which sets forth the procedures for determination and adjudication of claims in this SIPA liquidation. (*See* ECF No. 12432). The Bankruptcy Court heard arguments on the Blecker Motion to Compel on February 24, 2016 and denied the motion as outside the procedures for resolving the Profit Withdrawal transactions and premature in light of the questions of fact still surrounding Mr. Blecker's accounts and claims.

37.    Following the February 24, 2016 hearing, counsel for Aaron Blecker and several participating claimants moved for an Order Authorizing the Deposition of Bernard L. Madoff (ECF No. 12799, 12800). The Trustee opposed this motion on March 16, 2016, on the grounds that the deposition would be of limited probative value as evidenced by Mr. Madoff's Declaration filed in support of the Blecker Motion to Compel. Alternatively, were the deposition to be allowed, the Trustee requested that Mr. Madoff's testimony be limited to issues related to Profit Withdrawal transactions only (ECF No. 12892). After hearing arguments on March 23, 2016, this Court granted the Customers' motion to depose Mr. Madoff but with specific instructions limiting his testimony to the Profit Withdrawal litigation. (ECF No. 13060). Mr.

Madoff's deposition was taken by counsel for Aaron Blecker on June 15, 2016 with counsel for

the Trustee in attendance for purposes of cross-examination.

38.    In response to questions raised by this Court during the February 24, 2016

hearing, the Trustee moved for an Order Amending the Schedule of the Litigation of the Profit

Withdrawal Issue to allow time for the depositions of former BLMIS employees who may have

knowledge of the Profit Withdrawal transactions. (ECF No. 12865).    On March 29, 2016,

participating claimants Norman and Joel Blum filed an Opposition to the Trustee's Motion to

Amend the Schedule of Litigation of the Profit Withdrawal Issue (ECF No. 12997).   The Blums

argued that the Trustee failed to set forth good cause showing how the depositions of former

employees were likely to provide clarification of the Profit Withdrawal transactions.   On April 5,

2016, the Bankruptcy Court granted the Trustee's Motion to Amend the Scheduling Order for the

Profit Withdrawal litigation.   *See* Hearing Transcript Regarding Trustee's Motion to Extend

Discovery Deadline in Profit Withdrawal Proceeding, 14:25-15:1 (Apr. 5, 2016).

39.    During the Compensation Period, counsel for the Trustee deposed several former

BLMIS employees regarding their work with profit withdrawal transactions at BLMIS.   On May

11 and 13, 2016, counsel for the Trustee also deposed Participating Claimants Drs. Norman and

Joel Blum, respectively.   Also during the Compensation Period, on July 12, 2016, this Court

entered the Stipulation And Order On Schedule For Litigation Of And Evidentiary Hearing On

Profit Withdrawal Issue (ECF No. 13619), as agreed to by the parties, and modifying the April 5,

2016 amended scheduling order.   Pursuant to the updated scheduling order, the Trustee filed his

Supplemental Memorandum Of Law In Support Of Trustee's Motion Affirming Treatment of

Profit Withdrawal Transactions (ECF No. 13876) and SIPC filed its Supplemental Memorandum

In Support Of the Trustee's Motion (ECF No. 13872) on August 12, 2016.   Participating

Claimants subsequently filed two opposition briefs on September 23, 2016 (ECF Nos. 14161 and 14168).

40.      On December 10, 2014, the Bankruptcy Court issued the Order Concerning Further Proceedings on Extraterritoriality Motion and Trustee's Omnibus Motion for Leave to Replead and for Limited Discovery.  The opposing parties filed their brief on December 31, 2014.  The Trustee's main brief, proffered allegations, amended complaints, and individual briefs for the 91 cases implicated in the extraterritoriality proceedings were completed by June 30, 2015.  On September 30, 2015, parties to those 91 cases filed their reply briefs.  The Bankruptcy Court heard oral argument on December 16, 2015, and the matter remains under submission.

### c.      Task Code 03: Feeder Funds

41.      This categorizes time spent by the Trustee and his counsel pursuing avoidance and recovery actions against entities which maintained accounts at BLMIS and had their own investors.  The Trustee and his counsel continue to identify, investigate, and monitor feeder funds in the United States and abroad and prosecute actions against such feeder funds for the recovery of Customer Property.  Separate matter numbers have been assigned to individual feeder funds sued by the Trustee.

### d.      Task Code 04: Asset Search and Sale

42.      This category relates to time spent with respect to the discovery, recovery, and liquidation of various assets for the benefit of the estate.

43.      During the Compensation Period, the Trustee and B&H attorneys conducted due diligence in connection with the liquidation of assets held by Madoff Family, LLC; conducted due diligence in connection with certain interests of Madoff Energy LLC, Madoff Brokerage and Trading Technology LLC, Madoff Technologies LLC and their affiliates; continued to value the intellectual property interest in Primex, evaluated corporate governance issues, strategized as to

its sale, worked with consultants to assist in the valuation and marketing of certain intellectual property of Primex and continued to prosecute Primex patent applications in the U.S. and Canada.

44.    During the Compensation Period, the Trustee continued to recover funds from securities that BLMIS purchased and sold prior to December 11, 2008 in connection with its proprietary trading operations.

### e.    Task Code 05: Internal Meetings with Staff

45.    This category relates to time spent by the Trustee and B&H attorneys in internal meetings regarding the liquidation proceeding, investigation and litigation strategy, as well as training sessions for attorneys and paraprofessionals.  Internal meetings and discussions have ensured the effective use of time spent on this matter and avoided duplicative efforts.

### f.    Task Code 07: Billing and Trustee Reports

46.    This category relates to time spent by the Trustee, B&H attorneys, and paraprofessionals reviewing the monthly B&H billing statements prior to submitting the statements to SIPC to ensure that time was properly billed, correcting any errors in time entries, writing off certain time and expenses as agreed to by B&H, preparing fee applications, responding to motions for leave to appeal fee orders, preparing Trustee reports, and other related tasks.

### g.    Task Code 08: Case Administration

47.    This category relates to time spent assisting the efficient administration of the case.

48.    The Trustee filed several motions before this Court that govern the treatment of and procedures related to the efficient litigation of these actions.  These procedures ensure compliance with the Bankruptcy Code and SIPA, as well as consistency and transparency.

49.     On October 20, 2011, the Trustee and B&H moved for an Order Establishing Noticing Procedures in order to streamline the procedural aspects of service in the main proceeding and all related adversary proceedings.  (ECF No. 4469).  This Court entered the Order on December 5, 2011.  (ECF No. 4560).

50.     On October 28, 2011, this Court entered an Order Granting Supplemental Authority To Stipulate To Extensions Of Time To Respond And Adjourn Pre-Trial Conferences to March 16, 2012.  (ECF No. 4483).  On January 30, 2012, a supplemental Order was entered granting authority to extend time to respond to the complaint and adjourn the pre-trial conferences through September 14, 2012.  (ECF No. 4483).  On December 11, 2013, a supplemental Order was entered granting authority to extend time to respond to the complaint and adjourn the pre-trial conferences through July 18, 2014.  (ECF No. 5358).  On June 19, 2014, a supplemental Order was entered granting authority to extend time to respond to the complaint and adjourn the pre-trial conferences through January 16, 2015.  (ECF No. 7037).  On December 15, 2014, a supplemental Order was entered granting authority to extend time to respond to the complaint and adjourn the pre-trial conferences through July 17, 2015.  (ECF No. 8762).  On December 23, 2015, a supplemental Order was entered granting authority to extend time to respond to the complaint and adjourn the pre-trial conferences through July 15, 2016. (ECF No. 12312). On July 7, 2016, a supplemental Order was entered granting authority to extend time to respond to the complaint and adjourn the pre-trial conferences through December 23, 2016.  (ECF No. 13601).

### h.     Task Code 09: Banks

51.     Primarily as a result of international and domestic feeder fund investigations, the Trustee commenced investigations of numerous banks and other financial institutions involved with BLMIS.  Time categorized under this task code relates to the investigation of target banks

17

and the roles played by the banks in the Ponzi scheme, the preparation of letters of inquiry and subpoenas, the review of responses to letters and subpoenas received from such banks and other third parties, and the preparation of pleadings relating to claims that will be brought against such banks.  Separate matter numbers have been assigned to banks sued by the Trustee.

### i.    Task Code 10: Court Appearances[6]

52.    This category relates to time spent by the Trustee and B&H attorneys making court appearances in this Court, other federal courts within the Second Circuit, and various courts abroad.

### j.    Task Code 11: Press Inquiries and Responses

53.    This category relates to time spent by the Trustee, B&H attorneys, and paraprofessionals in responding to press inquiries, preparing and issuing press releases, and preparing for and holding press conferences relating to BLMIS, Madoff, customer claims, and the recovery of funds.

### k.    Task Code 12: Document Review

54.    This category relates to time spent by the Trustee and B&H attorneys reviewing documents received from parties and third parties in response to the hundreds of letters and subpoenas issued by the Trustee, as well as other discovery-related tasks that cross multiple cases.

### l.    Task Code 13: Depositions and Document Productions by the Trustee

55.    This category generally relates to time spent by the Trustee and B&H attorneys conducting discovery that touches upon more than one matter and responding to discovery propounded to the Trustee by various third parties and defendants in avoidance actions.

---

[6] Many attorneys making court appearances bill their time for appearances to either Task Code 02–Bankruptcy Court Litigation or to the matter number that relates to that specific litigation, rather than to Task Code 10.

m.    **Task Code 14: International**

56.    The fraud Madoff perpetrated through BLMIS has many international implications involving foreign individuals, feeder funds, and international banking institutions. The Trustee is actively investigating and seeking to recover assets for the BLMIS estate in many different jurisdictions, including Austria, the Bahamas, Bermuda, the British Virgin Islands ("BVI"), Canada, the Cayman Islands, England, France, Gibraltar, Guernsey, Ireland, Israel, Liechtenstein, Luxembourg, Spain, and Switzerland. These investigations utilize a combination of voluntary requests for information and the use of the Trustee's subpoena power.

57.    This category relates to the ongoing investigation, the preparation and service of subpoenas against entities in many jurisdictions, service of process, and communication with International Counsel regarding the utilization of local laws to obtain necessary discovery and pursue recovery of customer property in foreign jurisdictions. The investigation is made challenging by the broad array of bank secrecy statutes and other foreign legislation designed to limit discovery.

58.    In addition, time categorized by this task code relates to the participation in and monitoring of various BLMIS-related third-party actions brought in Europe and the Caribbean, as well as discussions with International Counsel on strategic and jurisprudential matters that involve multiple actions against more than one defendant.

n.    **Task Code 15: Charities**

59.    This category relates to reviewing financial documents and conducting due diligence of charitable accounts held at BLMIS, corresponding and meeting with the representatives of these charities to obtain further information concerning transfers from their BLMIS accounts and discussing settlement and resolution of issues.

o.    **Task Code 19: Non-Bankruptcy Litigation**

60.    This matter categorizes time spent by the Trustee and B&H attorneys on non-bankruptcy litigation.

p.    **Task Code 20: Governmental Agencies**

61.    This matter categorizes time spent by the Trustee and B&H attorneys responding to requests for information by the United States Attorney's Office for the Southern District of New York, the Internal Revenue Service, various congressional representatives, and other government agencies.

q.    **Task Code 21: Allocation**

62.    This matter categorizes time spent by the Trustee and B&H attorneys coordinating the distribution of Customer Property.

63.    The ultimate purpose of marshaling the Customer Fund is to distribute those monies, as SIPA directs, to BLMIS customers with allowed claims.

64.    The Trustee filed seven motions seeking entry of an order approving allocations of property to the Customer Fund and authorizing pro rata interim distributions of Customer Property, and this Court entered orders approving those motions:

| No. of Distribution | Date of Distribution | Amount Allocated | Amount Distributed through the Compensation Period[7] | Percentage Distributed | ECF No. for Motion | ECF No. for Order |
|---|---|---|---|---|---|---|
| 1 | 10/05/2011 | $2.618 billion | $685.279 million | 4.602% | 4048 | 4217 |
| 2 | 09/19/2012 | $5.501 billion | $4.978 billion | 33.556% | 4930 | 4997 |
| 3 | 03/29/2013 | $1.198 billion | $696.277 million | 4.721% | 5230 | 5271 |

| No. of Distribution | Date of Distribution | Amount Allocated | Amount Distributed through the Compensation Period[7] | Percentage Distributed | ECF No. for Motion | ECF No. for Order |
|---|---|---|---|---|---|---|
| 4 | 05/05/2014 | $477.504 million | $468.223 million | 3.180% | 6024 | 6340 |
| 5 | 02/06/2015 | $756.538 million[8] | $403.409 million | 2.743% | 8860 | 9014 |
| 6 | 12/4/15 | $345.472 million[9] | $1.209 billion | 8.262% | 9807 and 11834 | 12066 |
| 7 | 6/30/16 | $271.333 million[10] | $190.247 million | 1.305% | 13405 | 13512 |

65. During the Compensation Period, the Trustee distributed approximately $190.247 million, or 1.305% of each BLMIS allowed clam through the completion of the Seventh Interim Distribution, unless the claim had been fully satisfied. This represents a significant milestone in this litigation, with 1,297 BLMIS accounts fully satisfied.[11] The 1,297 fully satisfied accounts represent more than 57% of accounts with allowed claims. The Trustee had distributed approximately $9.467 billion to BLMIS customers through November 16, 2016, or 58.369% of each BLMIS allowed customer claim.

---

[8] The total amount allocated in the Fifth Allocation and Fifth Interim Distribution Motion was $704,395,951.58. Between the filing of that motion and the Fifth Interim Distribution date, an additional $52,142,279.87 was recovered and included in the numerator.

[9] This represents the amount allocated to the Customer Fund in the Supplemental Sixth Allocation and Sixth Interim Distribution Motion filed on October 20, 2015. The original Sixth Allocation and Sixth Interim Distribution Motion filed on April 15, 2015 did not allocate any additional recoveries to the Customer Fund; the Trustee simply re-allocated $1,448,717,625.26 of funds that had previously been allocated to the Customer Fund for the Time-Based Damages Reserve.

[10] The total amount allocated in the Seventh Allocation and Seventh Interim Distribution Motion was $247,012,857.10, which represented all recoveries subsequent to the Sixth Interim Distribution and through May 20, 2016. Between the filing of that motion and the Seventh Interim Distribution date, an additional $24,320,579.12 was recovered and included in the numerator.

[11] Any customer with an allowed claim of $1,200,024.90 has been fully satisfied.

B.    **MATTER 03 – CHAIS**

66.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against the Estate of Stanley Chais, Pamela Chais, and a number of related individuals and entities (collectively, the "Chais Defendants") seeking the return of more than $1.1 billion under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable laws, for preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Chais Defendants.  *Picard v. Estate of Chais, et. al.*, Adv. No. 09-01172 (SMB) (Bankr. S.D.N.Y.).

67.    During the Compensation Period, B&H attorneys participated in discussions to resolve the case following the conclusion of the mediation ordered by this Court on July 18, 2012 in *Picard v. Chais et al.* and the related action to enforce the automatic stay and enjoin certain state court third party actions brought by investors of Stanley Chais and the California Attorney General.  As part of these discussions, B&H attorneys prepared a motion under Federal Rule of Bankruptcy Procedure 9019 for court approval of a global compromise reached with the Chais Defendants, the California Attorney General, and the other parties to the California third party actions, which was ultimately filed on October 28, 2016.  (ECF No. 14351).

C.    **MATTER 04 – MERKIN**

68.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against sophisticated money manager and Madoff associate J. Ezra Merkin ("Merkin"), Gabriel Capital Corporation ("GCC"), and Merkin's funds Ascot Partners, L.P. ("Ascot Partners") and Ascot Fund Limited ("Ascot Fund," collectively, the "Merkin Defendants").  The Trustee alleges that Merkin knew or was willfully blind to the fact that Madoff's investment advisory business was predicated on fraud.  The current operative complaint seeks the return of nearly $560 million under SIPA, the Bankruptcy Code, the New

York Fraudulent Conveyance Act, and other applicable law for preferences and fraudulent conveyances in connection with certain transfers of property by BLMIS to or for the benefit of the Merkin Defendants. *Picard v. J. Ezra Merkin, et al.*, Adv. No. 09-01182 (SMB) (Bankr. S.D.N.Y.).

69.     On August 10, 2015, B&H attorneys filed a motion to withdraw the reference to the Bankruptcy Court.   (ECF Nos. 271-273; *Picard v. Merkin*, No. 15-cv-06269 (LTS)). Ultimately, the Trustee withdrew this motion after he and the Merkin Defendants entered a stipulation on September 1, 2015, which was so ordered by the Bankruptcy Court on September 2, 2015.  Under the stipulation, all parties in the action consented to: (a) the entry of final orders and judgments by the Bankruptcy Court on all claims in this adversary proceeding; (b) waiving their right to a jury trial; and (c) agreeing to a bench trial before the Bankruptcy Court on all claims in this proceeding.  (ECF Nos. 278-279; *Picard v. Merkin*, No. 15-cv-06269 (LTS), ECF No. 10).  The terms of the agreement with the Merkin Defendants as to a trial by the Bankruptcy Court were also incorporated into an order that was entered by the District Court agreeing to the withdrawal of the motion to withdraw the reference.  (ECF Nos. 11-12; *Picard v. Merkin*, No. 15-cv-06269 (LTS)).

70.     On August 14, 2015, the Merkin Defendants filed letters with the Bankruptcy Court, pursuant to Federal Rule of Bankruptcy Procedure 7056-(1)(a), requesting a pre-motion conference with the Court regarding their intention to file a summary judgment motion to dismiss all of the Trustee's remaining claims.  (ECF Nos. 275-276).  The Court granted the Merkin Defendants' motion to file a motion for summary judgment at a conference on August 18, 2015.  (ECF. 281).  On October 7, 2015, the Merkin Defendants filed their summary judgment motion, (ECF Nos. 283-287), and on November 30, 2015, the Trustee filed his

opposition to the motion. (ECF Nos. 289-302). On December 23, 2015, the Merkin Defendants filed their reply in support of their motion for summary judgment. (ECF Nos. 306-310). On June 1, 2016, the Court heard oral argument on the Merkin Defendants' respective motions for summary judgment. (ECF Nos. 315, 318, 322).

71.      On July 12, 2016, the Trustee and the Merkin Defendants entered into a Fifteenth Amended Case Management Plan. (ECF No. 324). The plan provides that pretrial briefing and disclosures will be agreed upon by the parties at the time this Court issues a decision on the remaining defendants' motions for summary judgment. The final pre-trial conference and the commencement of trial will be held on a date and time scheduled by the Court.

72.      During the Compensation Period, B&H attorneys prepared for oral argument on the motions for summary judgment and continued to strategize, prepare, and complete various tasks in anticipation of a potential trial.

### D.      MATTER 05 – CUSTOMER CLAIMS

#### a.      Customer Claims

73.      During the Compensation Period, the Trustee allowed $110,847.64 in customer claims, bringing the total amount of allowed claims as of July 31, 2016 to $15,080,002,679.40. As of July 31, 2016, the Trustee has paid or committed to pay $836,633,073.63 in cash advances from SIPC. This is the largest commitment of SIPC funds of any SIPA liquidation proceeding and greatly exceeds the total aggregate payments made in all other SIPA liquidations to date.

74.      As of July 31, 2016, 71 claims relating to 48 accounts were "deemed determined," meaning that the Trustee has instituted litigation against those account holders and related parties. The complaints filed by the Trustee in those litigations set forth the express grounds for disallowance of customer claims under § 502(d) of the Bankruptcy Code. Accordingly, such

claims will not be allowed until the avoidance actions are resolved by settlement or otherwise and the judgments rendered against the claimants in the avoidance actions are satisfied.

### b.    General Creditor Claims

75.    As of July 31, 2016, the Trustee had received 427 timely and 22 untimely filed secured and unsecured priority and non-priority general creditor claims totaling approximately $1.7 billion.  The claimants include vendors, taxing authorities, employees, and customers filing claims on non-customer proof of claim forms.  Of these 449 claims and $1.7 billion, the Trustee has received 94 general creditor claims and 49 broker-dealer claims totaling approximately $265 million.  At this time, the BLMIS general estate has no funds from which to make distributions to priority/non-priority general creditors and/or broker dealers.

### c.    The Trustee Has Kept Customers Informed Of The Status Of The Claims Process

76.    Throughout the liquidation proceeding, the Trustee has kept customers, interested parties, and the public informed of his efforts by maintaining the Trustee Website (www.madofftrustee.com), a toll-free customer hotline, conducting a Bankruptcy Code § 341(a) meeting of creditors on February 20, 2009, and responding to the multitude of phone calls, e-mails, and letters received on a daily basis, both from claimants and their representatives.

77.    The Trustee Website includes features that allow the Trustee to share information with claimants, their representatives, and the general public with regard to the ongoing recovery efforts and the overall liquidation. In addition to containing the Trustee's court filings, media statements, and weekly information on claims determinations, the Trustee Website includes up-to-date information on the status of Customer Fund recoveries, an "Ask the Trustee" page where questions of interest are answered and updated, a letter from the Chief Counsel to the SIPA

Trustee on litigation matters, a detailed distribution page, an FAQs page, and a timeline of important events. The Trustee Website is monitored and updated on a daily basis.

78.     In addition, the Trustee Website allows claimants to e-mail their questions directly to the Trustee's professionals, who follow up with a return e-mail or telephone call to the claimants. As of July 31, 2016, the Trustee and his professionals had received and responded to more than 7,100 e-mails from BLMIS customers and their representatives via the Trustee Website.

79.     The toll-free customer hotline provides status updates on claims and responses to claimants' questions and concerns. As of July 31, 2016, the Trustee, B&H, and the Trustee's professionals had fielded more than 8,200 hotline calls from claimants and their representatives.

80.     The Trustee and his team have endeavored to respond in a timely manner to every customer inquiry and ensure that the customers are as informed as possible about various aspects of the BLMIS proceeding.

81.     The Trustee and B&H attorneys continued the Trustee's Hardship Program, reviewed hardship applications, and communicated regularly with SIPC and AlixPartners regarding the review and determination of hardship applicants, the customer claims review process, the customer claims database, reconciliation of investment advisory accounts and other matters of interest in determining claims.

82.     The Trustee and B&H attorneys reviewed customer accounts and communicated with customers or their representatives regarding possible settlements related to those accounts.

E.    **MATTER 07 – MADOFF FAMILY**

83.     This matter categorizes time spent by the Trustee and B&H attorneys pursuing numerous avoidance actions against members of the Madoff family.

26

84.    On October 2, 2009, the Trustee filed a complaint against Peter Madoff, the late

Andrew Madoff, the late Mark Madoff, and Shana Madoff (collectively, the "Family

Defendants") asserting claims for preferences, fraudulent transfers, fraudulent conveyances, and

damages in connection with certain transfers of property by BLMIS to or for the benefit of the

Family Defendants.  *Picard v. Peter B. Madoff*, Adv. No. 09-01503 (SMB) (Bankr. S.D.N.Y.),

ECF No. 1.  On March 15, 2010, each of the Family Defendants separately moved this Court to

dismiss the Trustee's complaint.  (ECF Nos. 13–19).  On September 22, 2011, this Court denied

in part and granted in part the motions to dismiss.  (ECF No. 55).  Defendant Andrew Madoff,

individually, and as Executor of the Estate of Mark D. Madoff, filed a motion for leave to seek

interlocutory review of this Court's September 22, 2011 decision.  (ECF No. 56).  Following

briefing and oral argument, the District Court denied that motion on December 22, 2011.  (ECF

No. 74).

85.    In accordance with this Court's September 22, 2011 decision, on November 7,

2011, the Trustee filed an amended complaint against the Family Defendants, identifying

additional transfers and seeking the return of over $225 million under SIPA, the Bankruptcy

Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences,

fraudulent transfers, fraudulent conveyances, and damages in connection with certain transfers of

property by BLMIS to or for the benefit of the Family Defendants.  *Picard v. Peter B. Madoff*,

Adv. No. 09-01503 (SMB) (Bankr. S.D.N.Y.), (ECF No. 64).  Shana Madoff, Peter Madoff, and

Andrew Madoff, both on his own behalf and as Executor of the Estate of Mark D. Madoff, each

answered the amended complaint on January 17, 2012.  (ECF Nos. 78, 79, 80).

86.    On December 23, 2011, the Trustee filed a motion seeking leave to file a second

amended complaint, adding additional claims and defendants to the action against the Family

Defendants. (ECF No. 71). On April 4, 2012, following briefing and oral argument, this Court issued a written opinion denying in part and granting in part the Trustee's motion. (ECF No. 106). On May 4, 2012, the Trustee filed a second amended complaint against the Family Defendants and named as additional defendants Mark Madoff's widow, Stephanie Mack, and Andrew Madoff's wife, Deborah Madoff. (ECF No. 113). The Trustee also named Mark Madoff's ex-wife, Susan Elkin, as a subsequent transferee defendant. Defendants Andrew Madoff, the Estate of Mark D. Madoff, Shana Madoff, and Susan Elkin answered the second amended complaint on July 2, 2012. (ECF Nos. 124–126). Susan Elkin was voluntarily dismissed with prejudice pursuant to stipulation by the parties on March 26, 2014. (ECF No. 177).

87.    On April 2, 2012, Stephanie Mack and Deborah Madoff moved to withdraw the reference from this Court. (ECF Nos. 101, 104). The Trustee subsequently adjourned the time for Stephanie Mack and Deborah Madoff to respond to the second amended complaint. (ECF Nos. 128, 134, 139, 141, 149, 152, 154, 157, 159, 165, 167). On December 6, 2013, the District Court ruled that the Trustee was barred from pursuing common law claims against Stephanie Mack and Deborah Madoff because they do not fall within the insider exception to the *in pari delicto* doctrine, and returned the cases to the Bankruptcy Court. Deborah Madoff was voluntarily dismissed with prejudice pursuant to stipulation by the parties on June 27, 2014. (ECF No. 183). Stephanie Mack was voluntarily dismissed with prejudice by the Trustee on April 6, 2015. (ECF No. 211).

88.    On June 29, 2012, Peter Madoff pleaded guilty to a two-count indictment and consented to the entry of a forfeiture order for $143.1 billion. Under the Preliminary Forfeiture Order, Peter Madoff and his wife, Marion Madoff, forfeited substantially all of their assets to the

United States.  Subsequently, on February 6, 2013, Peter Madoff was dismissed from this action

in connection with the entry of a consent judgment in the amount of $90,390,500.00.  (ECF No.

145).  On February 7, 2013, the Trustee dismissed a separate adversary proceeding against

Marion Madoff through a notice of voluntary dismissal with prejudice.  *Picard v. Marion*

*Madoff*, Adv. No. 10-04310 (SMB) (Bankr. S.D.N.Y.), (ECF No. 17).

89.    In connection with Peter Madoff's plea agreement, his daughter, defendant Shana

Madoff, also forfeited to the United States substantially all of her assets that were the subject of

the Trustee's claims against her.  Subsequently, on March 18, 2013, the Trustee dismissed the

case against Shana Madoff with prejudice.  (ECF No. 148).

90.    On July 15, 2014, the Trustee filed a motion seeking leave to file a third amended

complaint, adding additional support for existing claims and eliminating allegations against

defendants that had been dismissed.  (ECF No. 184).  Andrew Madoff, both on his own behalf

and as Executor of the Estate of Mark D. Madoff, opposed the Trustee's motion on August 12,

2014 (the "Opposition").  (ECF No. 191).  The Trustee filed a reply to the Opposition on April 6,

2016 (ECF No. 235), the Estates of Andrew and Mark Madoff filed a sur-reply on April 29, 2016

(ECF No. 250), and a hearing on the motion is scheduled before this Court on December 21,

2016.  (ECF No. 266).  Following the death of Andrew Madoff on September 3, 2014, the parties

stipulated to an extension of the deadline to substitute the Estate of Andrew Madoff, Martin

Flumenbaum as Executor of the Estate of Andrew Madoff, and David Blumenfeld as the

Successor Executor of the Estate of Mark Madoff.  (ECF No. 227).  The Trustee moved to

substitute David Blumenfeld as Executor of the Estate of Mark Madoff on April 7, 2016 (ECF

No. 239) and to substitute Flumenbaum as Executor of the Estate of Andrew Madoff on May 6,

2016.  (ECF No. 253).  A hearing on the Trustee's Motions to Substitute is scheduled for

December 21, 2016. (ECF Nos. 267, 268.) The parties appeared before the Court for a settlement conference on February 24, 2016. (ECF No. 228).

91.    The Trustee commenced two adversary proceedings against members of the late Andrew Madoff and the late Mark Madoff's families to recover fraudulent conveyances made by Bernard and Ruth Madoff. *Picard v. Stephanie S. Mack*, Adv. No. 10-05328 (SMB) (Bankr. S.D.N.Y.); *Picard v. Deborah Madoff*, Adv. No. 10-05332 (SMB) (Bankr. S.D.N.Y.). Amended complaints were filed in these actions on February 7, 2012. *Picard v. Mack*, Adv. No. 10-05328, (ECF No. 23); *Picard v. Deborah Madoff*, Adv. No. 10-05332, (ECF No. 13). All defendants in both actions answered on March 23, 2012. *Picard v. Mack*, Adv. No. 10-05328, (ECF No. 30); *Picard v. Deborah Madoff*, Adv. No. 10-05332, (ECF No. 20). On March 26, 2014, the parties filed a stipulation for voluntary dismissal of Susan Elkin, Daniel G. Madoff and K.D.M. with prejudice. *Picard v. Mack*, Adv. No. 10-05328, (ECF No. 56). On April 6, 2015, the parties filed a stipulation for voluntary dismissal of the entire action and all other remaining defendants with prejudice. *Picard v. Mack*, Adv. No. 10-05328, (ECF No. 73).

92.    Deborah Madoff moved to withdraw the reference from this Court on April 2, 2012. *Picard v. Deborah Madoff*, Adv. No. 10-05332, (ECF No. 22). On October 28, 2013, the District Court ordered that the proceeding be returned to the District Court. *Picard v. Deborah Madoff*, Adv. No. 12-02751, (ECF No. 8). On June 27, 2014, the parties filed a stipulation for voluntary dismissal of the action with prejudice. (ECF No. 54).

93.    The Trustee commenced two adversary proceedings against foundations created by and named for the late Andrew and Mark Madoff and their spouses: *Picard v. Mark & Stephanie Madoff Found.*, Adv. No. 10-05325 (SMB) (Bankr. S.D.N.Y.) and *Picard v. Deborah & Andrew Madoff Found.*, Adv. No. 10-05330 (SMB) (Bankr. S.D.N.Y.). The defendants in

these cases answered on January 17, 2012, and March 23, 2012, respectively.  *Picard v. Mark & Stephanie Madoff Found.*, Adv. No. 10-05325, (ECF No. 10); *Picard v. Deborah & Andrew Madoff Found.*, Adv. No. 10-05330, (ECF No. 10).   These proceedings were voluntarily dismissed without prejudice by stipulation of the parties and order of this Court on February 4, 2014.  *Picard v. Mark & Stephanie Madoff Found.*, Adv. No. 10-05325, (ECF No. 38); *Picard v. Deborah & Andrew Madoff Found.*, Adv. No. 10-05330, (ECF No. 42).

94.    The Trustee commenced various adversary proceedings against Madoff's relatives beyond his immediate family to recover preferences and fraudulent conveyances.   The two remaining cases styled *Picard v. Wiener Family Ltd. P'ship*, Adv. No. 10-04323 (Bankr. S.D.N.Y.) and *Picard v. Wiener*, Adv. No. 10-04293 (Bankr. S.D.N.Y.) were voluntarily dismissed with prejudice by stipulation of the parties and order of this Court on September 16, 2016.  *Picard v. Wiener Family Ltd. P'ship*, Adv. No. 10-04323, (ECF No. 52); *Picard v. Wiener*, Adv. No. 10-04293, (ECF No. 47).

## F.    <u>MATTER 09 – FAIRFIELD GREENWICH</u>

95.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance and recovery actions against Fairfield Sentry Ltd. ("Sentry"), Fairfield Sigma Ltd. ("Sigma), Fairfield Lambda Ltd. ("Lambda") (collectively, the "Fairfield Funds"), Greenwich Sentry, L.P. ("Greenwich Sentry"), Greenwich Sentry Partners, L.P. ("Greenwich Sentry Partners", and together with Greenwich Sentry, the "Greenwich Funds"), and other defendants seeking the return of approximately $3.5 billion under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Fairfield Funds and the Greenwich Funds.  *Picard v. Fairfield Sentry Ltd. (In Liquidation)*, Adv. No. 09-01239 (SMB) (Bankr. S.D.N.Y. May 18, 2009).   This matter also

categorizes time spent by the Trustee and B&H attorneys pursuing avoidance and recovery actions, as well as damages claims against other Fairfield Greenwich Group related entities and individuals, including the founding partners and other management officials.

96.     On June 7, 2011, this Court conditionally approved a settlement agreement between the Trustee and the Joint Liquidators for the Fairfield Funds (the "Joint Liquidators"), (ECF No. 95).  On July 13, 2011, this Court entered consent judgments between the Trustee and Lambda in the amount of $52.9 million (ECF No. 108), Sentry in the amount of $3.054 billion (ECF No. 109), and Sigma in the amount of $752.3 million (ECF No. 110).

97.     As part of the Fairfield Funds settlement, Sentry agreed to permanently reduce its net equity claim from approximately $960 million to $230 million.  Additionally, the Joint Liquidators agreed to make a $70 million payment to the Customer Fund.  The Joint Liquidators also agreed to assign to the Trustee all of the Fairfield Funds' claims against the Fairfield Greenwich Group management companies, officers, and partners, and the Trustee retained his own claims against the management defendants.  Further, the Trustee and the Joint Liquidators agreed to share future recoveries in varying amounts, depending on the nature of the claims.

98.     On July 7, 2011, this Court approved a settlement between the Trustee and the Greenwich Funds, wherein this Court entered judgment against Greenwich Sentry in an amount over $206 million and against Greenwich Sentry Partners in an amount over $5.9 million. *Picard v. Fairfield Sentry*, Adv. No. 09-01239 (SMB) (Bankr. S.D.N.Y.), (ECF No. 107).  In the settlement, the Greenwich Funds agreed to permanently reduce their net equity claim from approximately $143 million to approximately $37 million, for a combined reduction of over $105.9 million.  Additionally, the Greenwich Funds assigned to the Trustee all of their claims

against Fairfield Greenwich Group management and agreed to share with the Trustee any recoveries they receive against service providers.

99.    On April 2, 2012, the remaining defendants in the *Fairfield Sentry* action filed motions to withdraw the reference on a number of issues that later became subject to Common Briefing and hearings before Judge Rakoff of the District Court. *See* discussion *infra* Section IV(J). The Trustee briefed and presented argument at the hearings on these issues before the District Court. As of July 31, 2014, the District Court had issued decisions on all issues subject to Common Briefing and remanded the cases to this Court for further findings based on the legal standards set forth in the District Court's decisions. *See* discussion *infra* Section IV(J).

100.    On June 6, 2012, the Trustee filed additional recovery actions against entities or persons related to Fairfield Greenwich Group employees or partners entitled *Picard v. RD Trust*, Adv. No. 12-01701 (SMB) (Bankr. S.D.N.Y.), *Picard v. Barrenche Inc.*, Adv. No. 12-01702 (SMB) (Bankr. S.D.N.Y.), and *Picard v. Alix Toub*, Adv. No. 12-01703 (SMB) (Bankr. S.D.N.Y.). The parties in the *Toub* action have entered into a stipulated stay as permitted by this Court. None of the defendants in the three actions have yet responded to the Trustee's complaints.

101.    On November 6, 2012 in the District Court, in a putative class action filed by former Fairfield Funds investors against several Fairfield Greenwich Group partners and management officials, the plaintiffs and the Fairfield Greenwich Group related defendants filed a motion seeking preliminary approval of a settlement. *Anwar v. Fairfield Greenwich Ltd.*, No. 09 Civ. 118 (VM)(FM) (S.D.N.Y.), ECF No. 997. On November 29, 2012, the Trustee filed an application seeking an injunction against the implementation of the settlement. *See Picard v. Fairfield Greenwich Ltd.*, Adv. No. 12-02047 (SMB) (Bankr. S.D.N.Y.), ECF No. 2. On

December 21, 2012, the defendants filed a motion to withdraw the reference to the Bankruptcy Court. (ECF No. 11). On February 6, 2013, the District Court granted the defendants' motion to withdraw the reference to the Bankruptcy Court, *Picard v. Fairfield Greenwich Ltd.*, 12 Civ. 9408 (VM) (S.D.N.Y.), (ECF No. 30). On March 20, 2013, the District Court denied the Trustee's application seeking an injunction against the implementation of the *Anwar* settlement. (ECF No. 59). On April 8, 2013, the Trustee filed a notice of appeal from the District Court's denial of the Trustee's application for an injunction against the implementation of the *Anwar* settlement. (ECF No. 61).

102.    On February 26, 2013, the Trustee filed a letter requesting a pre-motion conference on a motion to intervene in the *Anwar* action. (ECF No. 1054). On March 8, 2013, the District Court deemed the pre-motion conference letter to be a motion to intervene and denied the Trustee's request. (ECF No. 1071). On April 8, 2013, the Trustee filed a notice of appeal from the order denying his request to intervene in the *Anwar* action. (ECF. No. 1106).

103.    Briefing on both appeals of the *Anwar* decisions was completed on June 7, 2013. Oral argument on the appeals occurred on October 10, 2013. On August 8, 2014, the Second Circuit issued its decision affirming the District Court's decisions.

104.    On January 8, 2014, in the case entitled *In re: Fairfield Sentry Limited*, No. 11 Civ. 5905 (AT) (S.D.N.Y.), the Court granted a motion to withdraw the reference in an appeal in the Fairfield Sentry Chapter 15 proceedings regarding the Fairfield Sentry Liquidator's ability to assign claims to the Trustee. On January 28, 2014, the Trustee requested a pre-motion conference for a motion to intervene in the matter. On January 30, 2014, the District Court denied the Trustee's request for a pre-motion conference and instead set a briefing schedule for the filing of the motion to intervene. The Trustee submitted his motion to intervene on February

28, 2014.  Morning Mist Holdings and Migual Lomeli filed opposition papers on March 14, 2014.  The Trustee filed a reply in support of the motion to intervene on March 21, 2014.  On July 31, 2014, the District Court granted the Trustee's motion to intervene and set a briefing schedule on the issue regarding the Fairfield Sentry Liquidator's ability to assign claims to the Trustee.  Following the filing of the Trustee's brief, on September 30, 2014, the District Court dismissed the Complaint.  The time for filing an appeal of the District Court's decision has expired without any appeal being filed.

105.    A number of defendants in other proceedings, along with some of the Fairfield management defendants, filed motions to dismiss which were subject to Common Briefing in the District Court following motions to withdraw the reference to this Court.  All of the Common Briefing decisions have been issued by the District Court.  *See* discussion *infra* Section IV(J).  The District Court remanded to this Court several of the proceedings which had been subject to Common Briefing, including the *Fairfield* action.

106.    Some of the *Fairfield* action defendants joined other defendants in the motion to dismiss on extraterritoriality grounds, which had been subject to Common Briefing.  The defendants filed a supplemental memorandum in support of the extraterritoriality motion to dismiss on December 31, 2014.   The Trustee filed his response to the supplemental memorandum on June 26, 2015, which included an addendum specific to the *Fairfield* defendants and a proffered Second Amended Complaint.  The defendants' reply memorandum was filed on September 30, 2015.  This Court held a hearing on the extraterritoriality motion to dismiss on December 16, 2015.  The motion is *sub judice*.

107.    As part of the briefing on the extraterritoriality motion to dismiss, the Trustee sought the de-designation as confidential of certain documents produced by the *Fairfield*

defendants.  Pursuant to a stipulation entered by the Trustee and the *Fairfield* defendants the Trustee submitted the documents to an arbitrator, who ruled the documents were not confidential.  On June 22, 2015, the Trustee submitted a letter to this Court seeking the confirmation of the arbitrator's decision.  On July 15, 2015, this Court entered an order deeming the Trustee's letter to be a motion and granted the Trustee's request to confirm the arbitrator's decision holding the documents not to be confidential.

108.    Pursuant to this Court's order scheduling the extraterritoriality motion to dismiss, the response date to the Trustee's complaint will be set based on the court's ruling on the extraterritoriality motion to dismiss.

109.    On June 22, 2016, as part of the previously approved settlement between the Trustee and the Fairfield Funds, the Fairfield Funds Joint Liquidators filed a motion in this Court in *In re Fairfield Sentry Limited et al.,* Case No. 10-13164 seeking the approval of the assignment of claims against Fairfield Greenwich Group entities and related persons to the Trustee pursuant to Bankruptcy Code section 363. (ECF. 805). On July 5, 2016 the Trustee filed a response to the motion. (ECF 810). On July 5, 2016, Morning Mist Holdings and Miguel Lomeli filed an objection to the motion. (ECF 809). On July 12, 2016, the Court held a hearing on the motion. The matter remains *sub judice*.

### G.    MATTER 11 – COHMAD SECURITIES CORPORATION

110.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Cohmad Securities Corporation, its principals, certain employees of Cohmad, and their family members who held BLMIS IA Accounts (collectively, the "Cohmad Defendants") seeking the return of over $245 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent conveyances, disallowance of any claims filed against the estate by the Cohmad Defendants, and damages in

connection with certain transfers of property by BLMIS to or for the benefit of the Cohmad Defendants.  *Picard v. Cohmad Sec. Corp.*, Adv. No. 09-01305 (SMB) (Bankr. S.D.N.Y.).

111.    During the Compensation Period, B&H attorneys continued to move forward with developing the case and discovery, which has included discovery with defendants, as well as third parties.

112.    During the Compensation Period, B&H attorneys also participated in settlement discussions with certain defendants.  As a result of these discussions, B&H attorneys prepared a motion under Federal Rule of Bankruptcy Procedure 9019 for court approval of a settlement with certain defendants, including Cohmad Securities Corporation, and Marcia Cohn and Marilyn Cohn, in their individual capacities and as co-executors of the Estate of Maurice Cohn, which was ultimately filed on November 4, 2016.  (ECF No. 14388).

### H.    MATTER 12 – PICOWER

113.    This matter categorizes time spent by the Trustee and B&H attorneys in connection with the Trustee's litigation and settlement with Jeffry M. Picower ("Picower") and Barbara Picower, both individually and as trustees for various foundations, and related entities (collectively, the "Picower Defendants").  The Trustee's lawsuit sought recovery of nearly $7 billion under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Picower Defendants.  *Picard v. Picower*, Adv. No. 09-01197 (SMB) (Bankr. S.D.N.Y.).

114.    On January 13, 2011, this Court entered an Order (the "Picower Settlement Order") approving the $5 billion settlement between the Trustee and the Estate of Jeffry M. Picower et al.  (ECF No. 43).  BLMIS claimants Adele Fox ("Fox") and Susanne Stone Marshall ("Marshall"), who brought actions against the Picower Defendants in Florida, appealed the

37

Picower Settlement Order. (ECF Nos. 45, 49). On March 26, 2012, United States District Judge

John G. Koeltl issued an Opinion and Order affirming this Court's Picower Settlement Order and

permanently enjoining certain duplicative or derivative actions against the Picower Defendants.

*Fox v. Picard*, 848 F. Supp. 2d 469 (S.D.N.Y. 2012). Thereafter, counsel for Fox and Marshall

again filed notices of appeal, this time to the Second Circuit. *See In re Bernard L. Madoff Inv.*

*Sec., LLC*, No. 10-Civ-4652 (JGK) (S.D.N.Y.), ECF No. 47; *Marshall v. Picard (In re Bernard*

*L. Madoff Inv. Sec., LLC*), 11-Civ-1298 (JGK) (S.D.N.Y.), ECF No. 19; *Fox v. Picard (In re*

*Bernard L. Madoff)*, 11-Civ-1328 (JGK) (S.D.N.Y.), ECF No. 17). Oral argument was heard on

December 6, 2012 and the Second Circuit affirmed the District Court's decision on January 13,

2014. *See In re Bernard L. Madoff Inv. Sec., LLC*, 12-1645bk (2d Cir. 2014), ECF No. 164.

115. A forfeiture action against the estate of Jeffry M. Picower resulted in the

additional recovery of more than $2.2 billion to the United States Government (the "Picower

Forfeiture"), which is intertwined with the Trustee's Picower settlement. *See United States v.*

*$7,206,157,717 On Deposit at JPMorgan Chase, NA in the Account Numbers Set Forth on*

*Schedule A*, No. 10 Civ. 09398 (TPG) (S.D.N.Y.). On May 23 and 24, 2011, United States

District Judge Thomas P. Griesa entered a final order of forfeiture in favor of the United States.

(ECF Nos. 16, 17). The Second Circuit dismissed an appeal of Judge Griesa's order, and on

June 8, 2012, a final order of forfeiture was issued. *See United States v. $7,206,157,717 On*

*Deposit at JPMorgan Chase, NA in the Account Numbers Set Forth on Schedule A*, No. 11-2898

(2d Cir. June 8, 2012), ECF No. 85.

116. Because the time to appeal the final order of forfeiture expired, the settlement

amount of $5 billion was transferred to the BLMIS estate and the Customer Fund. Part of the

proceeds from the Picower settlement has been distributed to customers, and the balance will be

distributed in due course.  As discussed above, B&H attorneys are also currently proceeding with litigation to enjoin third-party actions that the Trustee has argued are subject to the permanent injunction issued in connection with the Trustee's settlement with the Picower Defendants.

## I.    MATTER 13 – KINGATE

117.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing avoidance and recovery under SIPA, the Bankruptcy Code, New York Debtor and Creditor Law and other applicable law of approximately $926 million in initial transfers BLMIS made to Kingate Global Fund, Ltd. ("Kingate Global") and Kingate Euro Fund, Ltd. ("Kingate Euro," together with Kingate Global, the "Kingate Funds") in the proceeding captioned as *Picard v. Federico Ceretti*, Adv. No. 09-01161 (BRL) (Bankr. S.D.N.Y.) (the "Kingate Matter").  The Kingate Funds are in liquidation proceedings in the BVI and Bermuda under the auspices of court-appointed joint liquidators.  Each of the Kingate Funds filed a customer claim in the SIPA proceedings, the total combined amount of which is approximately $800 million.  The Trustee seeks to equitably subordinate the Kingate Funds' customer claims.  Until the Kingate Matter is resolved, the customer claims are temporarily disallowed under section 502(d) of the Bankruptcy Code.

118.    From the initial transfers made to the Kingate Funds, the Trustee seeks the recovery of more than $370 million in purported management fees the Kingate Funds subsequently transferred to Kingate Management Limited ("Kingate Management"), as manager of the Kingate Funds in the proceeding.  Those transfers also include more than $297 million that Kingate Management paid out of its management fees as purported dividends to its shareholders, which are two trusts that benefit defendants Ceretti and Grosso, and their respective families.

119.    All 16 subsequent transferee defendants in the Kingate Matter, including Kingate Management (collectively, the "Non-Fund Defendants"), are parties to the extraterritoriality

proceedings pending before this Court and are subject to the Extraterritoriality Scheduling Order, as modified by the Stipulations and Orders entered on January 14, 2015, ECF No. 8990; February 24, 2015, ECF No. 9350; and March 31, 2015, ECF No. 9720. *See* discussion *infra* Section IV(J)(e).

120.    With a focus on moving the proceeding along and being unable to obtain production of all relevant documents due to various obstacles outside of the Trustee's control, on April 15, 2016, the Trustee filed a motion to compel all defendants named in the Trustee's Fourth Amended Complaint ("FAC") to produce documents to, and participate in discovery with, the Trustee ("Motion to Compel") ECF No. 252.  The Motion to Compel was supported by the Trustee's Memorandum of Law, ECF No. 253, and the Declaration of Anthony M. Gruppuso and numerous exhibits. ECF No. 254.

121.    The Motion to Compel was opposed in five separate opposition briefs and supporting papers filed by defendants, ECF Nos. 258-265, to which the Trustee replied on May 31, 2016, supported by a Reply Declaration of Anthony M. Gruppuso with exhibits.  ECF No. 272-273.

122.    On June 9, 2016, the Court conducted oral argument on the Motion to Compel, and reserved decision.

123.    During the Compensation Period, the Trustee and his counsel proceeded with discovery as far as was practicable in light of the pending Motion to Compel.  The Trustee and the Kingate Funds, through their respective counsel, conferred on search terms and resolved technical difficulties with the digital productions and mutual uncontested document productions on April 25, 2016 and May 17, 2016.

124.    On May 16, 2016, the Kingate Funds made available to the Trustee approximately 200 boxes of hard copy documents that had been produced to the Joint Liquidators for the Kingate Funds by Citi Hedge Fund Services Limited.  These documents were warehoused in Bermuda in a facility that hampered their review.  It was necessary, therefore, to transport the documents to a location where their review was possible.  The Trustee undertook the expense, with the Kingate Funds' consent, to have these documents brought to New York City for scanning by a mutually acceptable outside vendor with expertise in such matters, including quality control.  That scanning project continued through July 16, 2016.

125.    On May 27, 2016, the Kingate Funds served the Trustee with their first set of interrogatories, to which the Trustee responded on July 11, 2016.  On June 30, 2016, the Trustee served the Kingate Funds with a first set of interrogatories.

126.    During the Compensation Period, the Trustee's counsel commenced discovery against non-parties who are potential witnesses at trial on the FAC, including Eric Lazear, the former head of Operational Due Diligence for FIM (USA).  The Trustee's counsel met telephonically with Mr. Lazear's counsel on June 6, 2016.  The Trustee has identified other third-parties who are based both in the United States and in locations abroad from whom discovery is considered vital.  In that regard, the Trustee's counsel has devoted time to preparing detailed requests for documents and information, following the protocols for obtaining disclosure under Letters Rogatory and the Hague Convention applicable to foreign-based third parties.

127.    The Trustee has expanded the number of attorneys on the team, who are dedicated to reviewing the approximately 500,000 documents that have been produced to the Trustee by the Kingate Funds, all of which are relevant.  Through that process to date, the Trustee's counsel has identified numerous additional documents that support the allegations in the FAC.

41

128.     During the Compensation Period, B&H attorneys continued to prepare for trial in the Kingate Matter, including working with experts and consultants to be trial ready when the time comes.

129.     The Trustee's legal team includes the advice and counsel of the Trustee's foreign solicitors and barristers in the United Kingdom, Bermuda and the BVI, some of whom participate by telephone in the team's weekly meetings.

130.     The Trustee also monitors the class action proceedings in *In re Kingate Mgmt. Ltd. Litig.*, No. 09-cv-05386-DAB, following the Second Circuit's decision in *In re Kingate Mgmt. Ltd. Litig.*, 784 F.3d 128 (2d Cir. 2015).  The class action plaintiffs were investors in the Kingate Funds and asserted claims arising from Madoff's fraud against Kingate Management Limited, Tremont (Bermuda) Limited, Tremont Group Holdings, Inc., FIM Advisers LLP, FIM Limited, FIM (USA) Incorporated, Federico Ceretti, Carlo Grosso, Graham H. Cook, John E. Epps, Sandra Manzke, Charles D. Sebah, Keith R. Bish, Christopher Wetherhill, Michael G. Tannenbaum, Citi Hedge Fund Services Ltd., and PricewaterhouseCoopers Bermuda.  During the Compensation Period, certain parties to that action filed supporting and opposing briefs to the joint motion to dismiss the Second Amended Consolidated Class Action Complaint (U.S.D.C. 09-cv-05386 Doc. Nos. 196-205).

**J.     MATTER 21 – AVOIDANCE ACTION LITIGATION**

131.     This matter categorizes time spent litigating the hundreds of avoidance actions filed by the Trustee, coordinating service of process, preparing preservation letters and discovery requests and reviewing produced documents, communicating formally and informally with counsel for various defendants, reviewing Hardship Program applications, drafting extensions of time to respond to various complaints and adjournments of pre-trial conferences, conducting settlement negotiations and settling with various defendants, engaging in mediation with certain

defendants, developing legal strategies and witnesses that will be relevant to all actions, implementing internal processes to track and manage the avoidance actions, and researching various issues relating to and raised in such avoidance actions.

### a.    District Court Proceedings

132.    In April 2012, the District Court instituted a new briefing protocol for pending motions to withdraw the reference, facilitating consolidated briefing on common issues raised in the motions to withdraw ("Common Briefing").  The District Court has issued rulings on all of the Common Briefing issues as follows:

- *Stern v. Marshall Issue.*  See Order, No. 12 MC 115 (JSR) (S.D.N.Y. April 13, 2012), (ECF No. 4); Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.), 490 B.R. 46 (S.D.N.Y. 2013);

- *Antecedent Debt Issue.*  See Order, No. 12 MC 115 (JSR) (S.D.N.Y. May 15, 2012), (ECF No. 107); *In re Madoff Sec.,* 499 B.R. 416 (S.D.N.Y. 2013); *In re Madoff Sec.,* No. 499 B.R. 416 (S.D.N.Y. 2013);

- *Section 546(e) Issue.  See* Order, No. 12 MC 115 (JSR) (S.D.N.Y. May 16, 2012), (ECF No. 119); Order, No. 12 MC 115 (JSR) (S.D.N.Y. Feb. 12, 2013), (ECF No. 439); *In re Madoff Sec.,* No. 12 MC 115 (JSR), 2013 WL 1609154 (S.D.N.Y. April 15, 2013);

- *Section 550(a) Issue.  See* Order, No. 12 MC 115 (JSR) (S.D.N.Y. Aug. 22, 2012), (ECF No. 314); Order, No. 12 MC 115 (JSR) (S.D.N.Y. Dec. 12, 2012); *In re Madoff Sec.,* No. 12 MC 115 (JSR), 501 B.R. 26 (S.D.N.Y. 2013); *In re Madoff Sec.,* No. 12-MC-0115 (JSR), 2014 WL 465360 (S.D.N.Y. Jan. 14, 2014);

- *Standing and SLUSA Issue.  See* Order, No. 12 MC 115 (JSR) (S.D.N.Y. May 16, 2012), (ECF No. 114); *In re Madoff Sec.,* 987 F.Supp.2d 311 (S.D.N.Y. 2013);

- *Good Faith Standard Under Either 11 U.S.C. § 548(c) or 11 U.S.C. § 550(b) Issue.  See* Order, No. 12 MC 115 (JSR) (S.D.N.Y. June 25, 2012), (ECF No. 197); *In re Madoff Sec.,* No. 12-MC-0115 (JSR), 2014 WL 1651952 (S.D.N.Y. April 27, 2014);

- *Section 502(d) Issue.  See* Order, No. 12 MC 115 (JSR) (S.D.N.Y. June 1, 2012), ECF No. 155; Order, No. 12 MC 115 (JSR) (S.D.N.Y. Feb. 12, 2013), (ECF No. 435); *In re Madoff Sec.,* 513 B.R. 437 (S.D.N.Y. 2013); and

- *Extraterritoriality Issue. See* Order, No. 12 MC 115 (JSR) (S.D.N.Y. June 6, 2012), (ECF No. 167); *In re Madoff Sec.,* 513 B.R. 222 (S.D.N.Y. 2014).

133.    On April 27, 2014, the District Court issued the "Good Faith Standard Opinion and Order," ruling that "in the context of this litigation and with respect to both section 548(c) and section 550(b)(1), "good faith" means that the transferee neither had actual knowledge of the Madoff Securities fraud nor willfully blinded himself to circumstances indicating a high probability of such fraud." With respect to the issue of which party bears the burden of pleading a defendant's good faith or lack thereof, Judge Rakoff further ruled that "a defendant may succeed on a motion to dismiss by showing that the complaint does not plausibly allege that that defendant did not act in good faith." Good Faith Standard Opinion and Order (ECF No. 524).

134.    On July 6, 2014, Judge Rakoff issued the "Extraterritoriality Opinion and Order," indicating that certain of the Trustee's claims were barred under *Morrison*. It stated that "section 550(a) does not apply extraterritorially to allow for the recovery of subsequent transfers received abroad by a foreign transferee from a foreign transferor," and directed further proceedings related thereto be returned to the Bankruptcy Court. Extraterritoriality Opinion and Order (ECF No. 551), 513 B.R. 222 (S.D.N.Y. 2014).

### b.    Resolution of Good Faith Avoidance Actions

135.    At the beginning of the Compensation Period, there were 406 active good faith avoidance actions. 39 were closed during the Compensation Period, leaving a total of 367 active good faith avoidance actions by the end of the Compensation Period. In certain avoidance actions, the Trustee entered into several mediations and considered hardship applications and where appropriate, agreed to dismiss certain defendants from the actions. During the Compensation Period, four actions were dismissed pursuant to approved hardship applications and seven were dismissed due to findings of no liability. In addition, the Trustee's professionals

engaged in settlement negotiations, which led to 28 cases entering into documented settlements during the Compensation Period.

### c. Picard v. Andrew H. Cohen, Adv. Pro. No. 10-04311

136.    On October 14, 2015, the Bankruptcy Court conducted a trial on the merits of the Trustee's avoidance action in the *Picard v. Andrew H. Cohen* matter seeking to avoid and recover $1,143,461 in fraudulent transfers under Sections 548(a)(1)(A) and 550(a)(1) of the Bankruptcy Code. *See Picard v. Andrew H. Cohen,* Adv. Pro. No. 10-04311 (SMB).  After the close of trial, the Trustee and Mr. Cohen submitted their respective Proposed Findings of Fact and Conclusions of Law.  (*Id.*, ECF Nos. 71, 74, 79).  Thereafter, on April 25, 2016, the Bankruptcy Court issued its Findings of Fact and Conclusions of Law.  *See* Post-Trial Proposed Findings of Fact and Conclusions of Law, *Picard v. Cohen,* Adv. Pro. No. 10-04311 (SMB), 2016 WL 1695296 (Bankr. S.D.N.Y. April 25, 2016) (ECF No. 90).

137.    On May 31, 2016, Mr. Cohen filed his objections under Rule 9033 of the Federal Rules of Bankruptcy Procedure (previously defined as "Cohen Objections"), and on June 30, 2016, the Trustee filed his response to the Cohen Objections.  (*Id.,* ECF Nos. 120, 127).  The Findings of Fact and Conclusions of Law were then deemed fully submitted and transferred to District Court Judge Laura Taylor Swain for her review and determination.  No decision has yet been issued.

138.    Separately, on July 12, 2016, Loeb & Loeb LLP, Baker & McKenzie LLP, Milberg LLP, Dentons US LLP, and Pryor Cashman LLP (the "Intervenor-Customers") on behalf of certain defendants in adversary proceedings, moved for leave to file an *amicus curiae* brief ("Amicus Brief") (ECF Nos. 6, 10-12) in support of the Cohen Objections.

139.    On July 26, 2016, the Trustee filed his opposition brief (ECF No. 14), and on August 1, 2016, the Intervenors-Customers filed their reply brief in further support of their

motion for leave to file the Amicus Brief. (ECF No. 21). On October 7, 2016, Judge Swain denied the Intervenors-Customers' motion. (ECF No. 23).

140.    On October 9, 2015, the Intervenors-Customers moved to intervene in the *Cohen* matter, as of right or by permission, or alternatively, to participate as *amicus curiae* (the "Motion to Intervene"). (Adv. Pro. No. 10-04311 (SMB), ECF No. 61). On October 29, 2015, the Trustee opposed the Motion to Intervene, and on November 11, 2015, the Intervenors-Customers filed their reply brief. (*Id.,* ECF Nos. 65, 69).

141.    On April 25, 2016, the Bankruptcy Court issued a decision denying the Motion to Intervene. *See Picard v. Cohen,* 550 B.R. 241 (Bankr. S.D.N.Y. April 25, 2016). Subsequently, on April 28, 2016, the Bankruptcy Court entered an Order Denying Motion To Intervene Or To Participate As *Amicus Curiae*, from which the Intervenors-Customers move to appeal on May 9, 2016. (*Id.,* ECF No. 63).

142.    The Intervenors-Customers filed their appeal papers on July 7, 2016 (*Id.,* No. 16 Civ. 04462 (LAP) (ECF No. 13), to which the Trustee responded on August 8, 2016 (*Id.* ECF No. 22), and the Intervenors-Customers filed their reply on August 22, 2016. (*Id.,* ECF No. 23). The appeal is now fully briefed and pending before District Court Judge Loretta A. Preska.

143.    In another effort to sidestep the Bankruptcy Court's *Intervention Decision*, on May 9, 2016, the Intervenor-Customers filed a "Proposed Intervenors' Objections to Proposed Ruling Denying Motion to Intervene Or Participate As *Amicus Curiae*" ("Objections to Proposed Ruling") purportedly under Rule 9033(b) of the Bankruptcy Rules. (*Id.,* ECF No. 98-99). They asserted therein that the Bankruptcy Court lacked constitutional authority to enter a final order denying the Motion to Intervene under Bankruptcy Rule 7024. (*Id.,* ECF No. 98).

144.    On May 13, 2016, the Trustee filed an application for an order to show cause and a motion to expunge the Objections to Proposed Ruling from the record, given that the Intervenor-Customers were denied intervention in the Cohen Proceeding.  (*Id.,* ECF No. 102). On May 17, 2016, the Intervenor-Customers opposed the Trustee's motion to expunge.  (ECF No. 107).

145.    The Bankruptcy Court granted the Trustee's order to show cause (ECF No. 104), and in a subsequent order on May 20, 2016, the Bankruptcy Court ruled that the Intervenor-Customers' proper path was to pursue their appeal in the District Court and the deadline for the Trustee to respond to the Objections to the Proposed Ruling was adjourned *sin die* pending any further direction by the District Court, before Judge Preska.  (ECF No. 110).

146.    Despite the Bankruptcy Court's rulings, counsel for Mr. Cohen and counsel for the Intervenor-Customers continued their efforts to insert the Intervenor-Customers into the *Cohen* matter.  In connection with the District Court's review of the Findings of Fact and Conclusions of Law in the *Cohen* matter, on July 12, 2016, Mr. Cohen filed a Statement of Relatedness, claiming that the District Court's review is related to the Intervenor-Customers' current appeal.  (Case No. 16 Civ. 05513, ECF No. 5).  On July 15, 2016, the Trustee filed a letter objecting to the Statement of Relatedness on the ground that the matters are not related under the Court's Rules for the Division of Business Among District Judges.  (*Id.,* ECF No. 7).

147.    On July 19, 2016, counsel for Mr. Cohen responded by filing a motion to withdraw as counsel of record (the "Withdrawal Motion"), and on the very next day, the Intervenor-Customers filed a letter stating that the Withdrawal Motion highlights that "whether or not the cases are formally designated as related matters, the disposition of the Cohen Proceeding and Intervention Appeal should be coordinated so that the Intervention Appeal is

decided first." (*Id.*, ECF Nos. 8-9). The Trustee did not oppose the Withdrawal Motion, in part because Mr. Cohen's counsel represented that they had performed all of the legal tasks necessary to allow the District Court to rule on the Findings of Fact and Conclusions of Law. (*Id.*, ECF No. 22).

### d.    Interlocutory Appeal of The Trustee's Protective Order

148.    On February 29, 2016, the Trustee sought a protective order prohibiting defendants in three adversary proceedings from pursuing any discovery that implicated the compensation or fees of the Trustee and his counsel. *See e.g., Picard v. Dusek,* Adv. Pro. No. 10-04644 (SMB), ECF No. 44, *Picard v. Carol Nelson,* Adv. Pro. No. 10-04658 (SMB), ECF No. 50, and *Picard v. Carol Nelson, et al.,* Adv. Pro. No. 10-04377 (SMB), ECF No. 48.

149.    On March 17, 2016, the Court entered an order stating that the defendants in the three adversary proceedings were "prohibited from serving or pursuing any discovery that implicates relating to the compensation, fees, or payments that the Trustee receives from his law firm, or any agreements or arrangements relating thereto." *See* Order Implementing Court's March 17, 2016 Bench Ruling Granting Protective Order, Adv. Pro. No. 08-01789 (SMB) (Bankr. S.D.N.Y. March 18, 2016), ECF No. 12912 ("March 17 Order").

150.    On March 31, 2016, on behalf of defendants RAR Entrepreneurial Fund, Ltd., Russell Oasis, Carol Nelson, individually and as joint tenant, Stanley Nelson, individually and as joint tenant, and Russell L. Dusek, Chaitman filed a notice of motion for leave to appeal the March 17 Order, along with her motion and memorandum of law in support. *See* No. 08-01789 (SMB) (Bankr. S.D.N.Y. March 30, 2016), ECF No. 13009-12. The Motion for Leave was assigned to District Court Judge William H. Pauley. *See* Civil Cover Sheet, No. 16 Civ. 02792 (WHP), ECF No. 4.

151.   The Trustee and SIPC each filed their opposition briefs on April 14, 2016.  *See* No. 16 Civ. 02792 (S.D.N.Y. April 22, 2016), ECF Nos. 8-9.  Chaitman's Reply Brief was filed on April 21, 2016.  *See id.,* ECF No. 7.  Oral arguments were held on May 17, 2016.  On July 14, 2016, Judge Pauley denied Chaitman's motion for leave to appeal the March 17 Order.  *See id.,* ECF No. 22.

**e.   Discovery Disputes Over Rule 45 Subpoenas**

152.   During the course of discovery, the Trustee served third-party Rule 45 subpoenas on banks in certain good faith avoidance actions to obtain disclosure of information relating to deposits and withdrawals during the three-year period beginning two years before the filing date and ending on December 31, 2009.

153.   On December 30, 2015, December 31, 2015, and January 1, 2016, on behalf of at least one defendant, Helen Saren-Lawrence, Chaitman filed letters with the Court, seeking to limit the scope of the Rule 45 subpoenas and to require the Trustee's counsel to arrange for all Rule 45-related document productions to be first served on Chaitman for redaction of all personal and confidential information.  *See Picard v. Helen Saren-Lawrence*, Adv. Pro. No. 10-04898 (SMB), ECF Nos. 36, 38, 40, 46.  The Trustee filed letters in opposition, noting that Chaitman directly interfered with the Rule 45 subpoenas served by the Trustee and that the Trustee had concerns that Chaitman was not taking reasonable steps to preserve documents relevant to the adversary proceeding.  *See id.*, ECF Nos. 37, 39, 44, 45.

154.   On January 27, 2016, by chambers conference, the Trustee represented that he had and would serve Rule 45 subpoenas because of concerns of spoliation of evidence, but agreed that he would not seek to compel compliance with Rule 45 subpoenas by certain banks until 30 days after he served requests for admissions or proposed stipulations of fact on the

defendants.  Chaitman also agreed she would not directly contact any of the subpoenaed banks served Rule 45 subpoenas.

155.    On February 25, 2016, on behalf of defendants in 11 adversary proceedings, including Helen Saren-Lawrence, Chaitman filed motions to dismiss pursuant to Fed. R. Civ. P. 37(b) and 41(b), joint cross-motions to quash the Rule 45 subpoenas, and motions to move the Court to enter a protective order barring the Trustee from compelling discovery of the personal bank records of the defendants in the 11 adversary proceedings.  *See e.g.*, Adv. Pro. No. 10-04898 (SMB), ECF Nos. 63-65.  On March 23, 2016, the Court denied Chaitman's motions.  *See* Order Implementing The Court's March 23, 2016 Bench Ruling ("Discovery Order"), Adv. Pro. No. 10-04898 (SMB), ECF No. 92.

156.    On April 15, 2016, Chaitman, on behalf of Helen Saren-Lawrence and James Lawrence, filed the Motion for Leave to appeal the Discovery Order, under 28 U.S.C. § 158(a) and Federal Rule of Bankruptcy Procedure 8004, and to request a stay pending appeal.  *See* Adv. Pro. No. 10-04898 (SMB), ECF No. 98; No. 16-cv-03006 (ALC), ECF No. 1-4.

157.    On May 5, 2016, the Trustee filed his opposition to the Motion for Leave to appeal the Discovery Order, and on May 9, 2016, Chaitman filed her Reply Brief in further support of the Motion for Leave to appeal.  *See* No. 16-cv-03006 (ALC), ECF No. 6, 10.  The Motion for Leave was assigned to District Court Judge Andrew L. Carter.  *See* Civil Cover Sheet, No. 16 Civ. 03006 (ALC), ECF No. 5.  No decision has been issued to date.

## f.    **Extraterritoriality**

158.    On December 10, 2014, the Bankruptcy Court issued the Order Concerning Further Proceedings on Extraterritoriality Motion and Trustee's Omnibus Motion for Leave to Replead and for Limited Discovery (the "Extraterritoriality Scheduling Order").

159.    On December 31, 2014, the defendants filed their supplemental memorandum in support of their extraterritoriality motion to dismiss.  On June 26-30, 2015, the Trustee filed a principal brief in response to the supplemental memorandum in support of the extraterritoriality motion to dismiss, as well as addenda and proffered amended complaints or allegations specific to the moving defendants.  The defendants filed reply memoranda on September 30, 2015. This Court held a hearing on the motion on December 16, 2015.  The motion is *sub judice*.

K.    **MATTER 29 – RYE/TREMONT**

160.    This matter categorizes time spent by the Trustee and B&H attorneys following the settled avoidance action filed on December 7, 2010, against Tremont Group Holdings, Inc., Tremont Partners, Inc., Tremont (Bermuda) Ltd., Rye Select Broad Market Fund, and numerous related investment funds, entities and individuals (collectively, the "Tremont Funds") in which the Trustee sought the return of approximately $2.1 billion under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences and fraudulent conveyances in connection with certain transfers of property by BLMIS (the "Tremont Litigation").  *Picard v. Tremont Group Holdings, Inc.*, Adv. No. 10-05310 (SMB) (Bankr. S.D.N.Y. Dec. 7, 2010).

161.    After the court filing, the parties entered into substantive settlement negotiations, which resulted in a significant settlement approved by the Court on September 22, 2011.  The settlement between the Trustee, the Tremont Funds and the former chief executive of Tremont Group Holdings, Inc. resulted in the cash payment amount of $1.025 billion.  *Picard v. Tremont Group Holdings, Inc.*, Adv. No. 10-05310 (SMB) (Bankr. S.D.N.Y. Dec. 7, 2010), (ECF No. 38).  This is the largest cash settlement to date in any case brought by the Trustee against any feeder or investment fund.

162.    Two objections to the settlement agreement were filed by non-BLMIS customers, both of which were overruled by this Court.  There were two non-settling defendants at the time, Sandra Manzke ("Manzke") and Rye Select Broad Market XL Portfolio Limited ("XL Portfolio"). As more fully discussed below, pursuant to the settlement, Tremont delivered $1.025 billion into an escrow account, which was placed into the Customer Fund, and the Trustee allowed certain customer claims related to Tremont in the approximate amount of $2.9 billion.

163.    Certain objectors filed an appeal of the Tremont settlement on October 18, 2011. *See Picard v. Tremont Group Holdings, Inc.*, No. 11-7330 (GBD) (Bankr. S.D.N.Y. Oct. 18, 2011).  On June 27, 2012, United States District Judge George B. Daniels granted the Trustee's motion to dismiss the appeal, and judgment was entered on June 28, 2012.  (ECF Nos. 35, 36).

164.    On July 27, 2012, an appeal of the judgment was filed with the Second Circuit. (ECF No. 37).  Prior to submitting any briefing, however, the parties submitted a joint stipulation of dismissal, and the appeal was dismissed on October 25, 2012.  (ECF No. 39).  Accordingly, Tremont delivered $1.025 billion into an escrow account on November 6, 2012, and the settlement payment was released from escrow to the Trustee on February 8, 2013.  Thereupon, the Trustee allowed certain customer claims related to Tremont.

165.    On February 10, 2012, defendant XL Portfolio settled with the Trustee in connection with the Tremont Litigation, as well as two other actions commenced on December 8, 2010, by the Trustee against XL Portfolio and other defendants.  These other actions are captioned *Picard v. ABN AMRO Bank, N.V. et al.*, Adv. No. 10-05354 (SMB) (Bankr. S.D.N.Y. Dec. 8, 2010) and *Picard v. ABN AMRO (Ireland) Ltd., et al.*, Adv. No. 10-05355 (SMB) (Bankr. S.D.N.Y. Dec. 8, 2010).

166.    On September 17, 2013, the remaining defendant in the Tremont Litigation,
Manzke, who was also a defendant in the captioned action, *Picard v. Maxam Absolute Return
Fund Ltd., et al*., Adv. No. 10-05342 (Bankr. S.D.N.Y. Dec. 8, 2010), settled both actions against
her.  After the *Maxam* settlement, Manzke was dismissed from the Tremont Litigation, and that
case closed.

167.    During the Compensation Period, B&H attorneys continued to prepare for
litigation in this action.

### L.    MATTER 30 – HSBC

168.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing
claims against HSBC Bank plc, HSBC Securities Services (Luxembourg) S.A., eleven other
HSBC entities (collectively, the "HSBC Defendants"), as well as affiliated feeder funds
including Thema International Ltd., Thema Wise Investments Ltd., Lagoon Investment, Geo
Currencies Ltd., and Alpha Prime Fund, as well as management companies affiliated with those
funds, seeking the return of approximately $1.6 billion under SIPA, the Bankruptcy Code, the
New York Fraudulent Conveyance Act, and other applicable law for preferences and fraudulent
conveyances.  *Picard v. HSBC Bank plc*, Adv. No. 09-01364 (SMB) (Bankr. S.D.N.Y. Nov. 30,
2012).

169.    The Trustee, with the Court's approval, settled his claims against Herald Fund
SpC, Herald (Lux) SICAV, Primeo Fund and Senator Fund, which resulted in over $600 million
in consideration to the Estate.  (ECF Nos. 338, 339, 349, 350, 352, 363).

### M.    MATTER 32 – LUXALPHA UBS/LIF

170.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing
bankruptcy claims against UBS AG, UBS (Luxembourg) SA, UBS Fund Services (Luxembourg)
SA, and numerous other entities and individuals (collectively, the "Luxalpha Defendants")

seeking the return of approximately $1.1 billion under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Luxalpha Defendants (the "Luxalpha Action"). *Picard v. UBS AG*, Adv. No. 10-04285 (SMB) (Bankr. S.D.N.Y. Oct. 22, 2012).

171.    This matter also incorporates time spent by the Trustee and B&H attorneys pursuing the avoidance action against Luxembourg Investment Fund, UBS entities, and other defendants (the "LIF Defendants") seeking the return of approximately $555 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent conveyances and damages in connection with certain transfers of property by BLMIS (the "LIF Action"). *Picard v. UBS AG*, Adv. No. 10-05311 (SMB) (Bankr. S.D.N.Y. Oct. 22, 2012).

172.    On December 19, 2012, the Trustee participated in a hearing in this Court regarding the motions to dismiss the amended complaint filed by a number of the Luxalpha Defendants and the LIF Defendants for lack of personal jurisdiction and *forum non conveniens*. At the hearing, the Court directed the parties to meet and confer on the issues in dispute with the goal of narrowing the issues before the Court.    The Trustee has narrowed the number of defendants and parties in dispute.    The meet-and-confer process in the Luxalpha Action and the LIF Action is now complete, with certain motions to dismiss for lack of personal jurisdiction and/or *forum non conveniens* pending before the Court.

173.    On July 6, 2014, the District Court issued the Extraterritoriality Opinion and Order regarding the effect of the Supreme Court's decision in *Morrison v. Nat'l Australia Bank Ltd.*, 130 S. Ct. 2869 (2010) on subsequent transfers received by certain defendants ("Transferee

Defendants"). *See* discussion *supra* Section IV(J)(a). The Trustee and his counsel analyzed the decision and its implications in anticipation of additional motions to dismiss to be filed by certain defendants in the Luxalpha Action and the LIF Action.

174.    On August 28, 2014, the Trustee filed a motion seeking leave to replead and an order authorizing limited discovery (the "Trustee's Motion") (ECF Nos. 7826, 7827 and 7828). The Trustee's Motion seeks leave to replead in certain adversary proceedings, including Luxalpha and LIF.

175.    On December 10, 2014, the Bankruptcy Court entered the Extraterritoriality Scheduling Order, ECF No. 8800. *See* discussion *supra* Section IV(J)(f). Pursuant to the Extraterritoriality Scheduling Order, on December 31, 2014, the Transferee Defendants filed a Consolidated Supplemental Memorandum of Law in Support of the Transferee Defendants' Motion to Dismiss Based on Extraterritoriality in the main SIPA proceeding, Adv. No. 08-1789-SMB. The Extraterritoriality Scheduling Order, as modified by the Stipulations and Orders entered on January 14, 2015, ECF No. 8990; February 24, 2015, ECF No. 9350; and March 31, 2015, ECF No. 9720, set June 30, 2015 as the Trustee's deadline to submit his opposition to the Transferee Defendants' motion to dismiss based on extraterritoriality. *See* discussion *supra* Section IV(J)(f).

176.    On June 26, 2015, B&H attorneys submitted briefs in opposition to the moving defendants' motions to dismiss based on extraterritoriality. B&H attorneys also submitted a proffered second amended complaint in the Luxalpha Action and a proffered amended complaint in the LIF Action. On September 30, 2015, the moving defendants filed their reply brief in further support of their motion to dismiss based on extraterritoriality.

164.    B&H attorneys had also participated in meet and confers with counsel for certain producing parties, including UBS AG, UBS (Luxembourg) SA and Reliance International Research LLC, to discuss documents that were identified as "Confidential" when produced to the Trustee.  The Trustee's ability to rely on such documents/information in preparing his proposed amended complaints or proffered allegations pertaining to the extraterritoriality issue and the Trustee's Motion was in dispute.  Through the meet and confer process, B&H attorneys and attorneys for several producing parties were able to resolve the confidentiality issues regarding several, but not all, relevant documents.  The Trustee thereafter entered into arbitration with several producing parties, for the purpose of resolving the remaining confidentiality issues, which resulted in the de-designation of the majority of the documents at issue, including all of documents at issue that were produced by UBS AG, UBS (Luxembourg) SA and Reliance International Research LLC.

165.    B&H attorneys prepared and served all defendants in both the Luxalpha Action and the LIF Action with requests for the production of documents under Rule 26.  B&H attorneys prepared proposed case management orders and prepared for a joint Rule 26(f) conference, held on April 4, 2016, with all defendants across both actions.  In preparation for the joint Rule 26(f) conference, B&H attorneys created a presentation to explain the procedures for the Trustee's discovery process and protocols, with an explanation of how the Trustee produces relevant documents through an electronic data room.  B&H attorneys also continued to research legal issues and conduct fact investigations on matters related to both actions.

166.    During the Compensation Period, on April 4, 2016, the Trustee and the defendants in the LIF Action and the Luxalpha Action, which the parties had agreed should be coordinated for scheduling purposes, participated in a Rule 26(f) conference to discuss, among

other things, a schedule for discovery. At the Rule 26(f) conference and in additional efforts to meet and confer, the parties disputed the appropriate timing of the commencement of discovery under the Federal Rules or otherwise.

167.    B&H attorneys asserted that the Federal Rules permit the immediate commencement of discovery in the actions. The defendants objected to the commencement of discovery under the Federal Rules or otherwise.

168.    Unable to resolve their dispute concerning the appropriate time for the commencement of discovery, B&H attorneys and counsel for certain parties appeared before the Honorable Stuart M. Bernstein, U.S.B.J. on April 27, 2016 for a status conference. At the conference, B&H attorneys asserted that the further delay of discovery would result in the loss of evidence relevant to the events underlying the Trustee's claims in the proceedings and would unduly prejudice his ability to prosecute those claims and, in connection with the Rule 26(f) conference, served requests for the production of documents under Rule 34 of the Federal Rules of Civil Procedure. The defendants asserted that certain pending motions, including the Extraterritoriality Motion, the Trustee's motion for leave to amend his complaints, and the defendants' motions to dismiss for lack of personal jurisdiction and *forum non conveniens*, and anticipated motions to dismiss on other grounds (the "Anticipated Motions") will affect the identity of the parties and the scope of discovery in the proceedings, making the commencement of discovery premature at this time and proposed that, in an effort to make progress while the parties awaited the Court's decision on the Extraterritoriality Motion, (a) the parties move forward with briefing on the Anticipated Motions, or (b) in the alternative, the parties be permitted to pursue document discovery overseas by letters of request pursuant to the Hague

Convention on the Taking of Evidence Abroad in Civil or Commercial Matters (the "Hague Convention").

169.    Having considered the parties' positions at the April 27 status conference, Judge Bernstein permitted the parties to commence document discovery through the Hague Convention. Therefore, B&H attorneys prepared drafts of such Hague requests to initiate international discovery efforts and continued their investigation of the facts of the case.

## N.    **MATTER 33 – NOMURA INTERNATIONAL PLC**

177.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Nomura International plc ("Nomura") seeking the return of approximately $35 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of Nomura (the "Nomura Action"). *Picard v. Nomura Int'l plc*, Adv. No. 10-05348 (SMB) (Bankr. S.D.N.Y. Dec. 8, 2010).

178.    By orders issued by the District Court during the Spring and Summer of 2012, the District Court included Nomura's motion to withdraw the reference in Common Briefing and oral argument.

179.    Prior to the Compensation Period, B&H attorneys, on behalf of the Trustee, reached agreements with Nomura to extend Nomura's time to respond to the amended complaint while awaiting determinations from the District Court with respect to Common Briefing. *Picard v. Nomura Int'l plc*, Adv. No. 10-05348 (SMB) (Bankr. S.D.N.Y.), (ECF Nos. 55, 56, 58, 65, 74). Prior to and during the Compensation Period, B&H attorneys, on behalf of the Trustee, reached agreements with Nomura to adjourn the pre-trial conference. *Picard v. Nomura Int'l plc*, Adv. No. 10-05348 (SMB) (Bankr. S.D.N.Y.), (ECF Nos. 81, 93).

180.    Prior to the Compensation Period, the District Court issued the Extraterritoriality Opinion and Order and the Good Faith Standard Opinion and Order, and remanded the Nomura proceeding back to the Bankruptcy Court for further proceedings consistent with its opinions. (ECF No. 57).  *See* discussion *supra* Section IV(J)(a).

181.    Prior to the Compensation Period, B&H attorneys, on behalf of the Trustee, presented to the Court, and the Court so ordered, that the transferee defendants, including Nomura, submit a consolidated memorandum of law in support of dismissal based on the extraterritoriality issue.   The Court so ordered that the Trustee and SIPC file a consolidated memorandum of law opposing the motion to dismiss and seeking leave to amend the complaints, and an additional five page addendum opposing the motion to dismiss specific to the transferee defendants, including Nomura.  *Picard v. Nomura Int'l plc*, Adv. No. 10-05348 (SMB) (Bankr. S.D.N.Y.), (ECF No. 79).

182.    Prior to the Compensation Period, B&H attorneys, on behalf of the Trustee, drafted and filed with the Court the five page addendum opposing the motion to dismiss specific to Nomura and proffered allegations pertaining to the extraterritoriality issue as to Nomura. *Picard v. Nomura Int'l plc*, Adv. No. 10-05348 (SMB) (Bankr. S.D.N.Y.), (ECF Nos. 90, 91).

183.    Prior to the Compensation Period, B&H attorneys, on behalf of the Trustee, reviewed the transferee defendants' supplemental memorandum of law and the Nomura defendants' supplemental memorandum of law. *Picard v. Nomura Int'l plc*, Adv. No. 10-05348 (SMB) (Bankr. S.D.N.Y.), (ECF Nos. 95, 96).   B&H attorneys reviewed and analyzed the District Court's opinions as they relate to the Nomura Action and continued to prepare for litigation in light of the District Court's opinions.

184.    During the Compensation Period, B&H attorneys, on behalf of the Trustee, reached an agreement with Nomura to adjourn the pre-trial conference while awaiting a determination from the Bankruptcy Court with respect to the extraterritoriality issue and continued to prepare for litigation. *Picard v. Nomura Int'l plc*, Adv. No. 10-05348 (SMB) (Bankr. S.D.N.Y. April 15, 2016), (ECF No. 101).

## O.    MATTER 34 – CITIBANK

185.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Citibank, N.A., Citibank North America, Inc., and Citigroup Global Markets Ltd. (collectively, "Citibank") seeking the return of approximately $430 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences and fraudulent transfers in connection with certain transfers of property by BLMIS to or for the benefit of Citibank (the "Citibank Action"). *Picard v. Citibank*, Adv. No. 10-05345 (SMB) (Bankr. S.D.N.Y. Dec. 8, 2010).

186.    Prior to the Compensation Period, the District Court issued an opinion granting Citibank's motion to dismiss in part, holding that the section 546(g) safe harbor protects certain redemption payments but not collateral payments from recovery to the extent they cannot be avoided under section 548(a)(1)(A). *Picard v. Citibank*, Case No. 11-cv-07825 (JSR) (S.D.N.Y. Dec. 26, 2013), (ECF No. 37).

187.    Prior to the Compensation Period, the District Court issued the Extraterritoriality Opinion and Order and the Good Faith Standard Opinion and Order, and remanded the Citibank Action, among others, to the Bankruptcy Court for further proceedings consistent with its opinions. *See* discussion *supra* Section IV(J)(a).

188.    Prior to the Compensation Period, the Trustee filed his Memorandum of Law in Support of Omnibus Motion for Leave to Replead Pursuant to Fed. R. Civ. P. 15(a) and Court

Order Authorizing Limited Discovery Pursuant to Fed. R. Civ. P. 26(d)(1) ("Omnibus Motion"). *Picard v. Citibank*, Adv. No. 10-05345, (ECF No. 72). Following a request by certain defendants, on September 17, 2014, the Bankruptcy Court held a conference to discuss further proceedings to be conducted pursuant to the Extraterritoriality Opinion and Order and the Omnibus Motion. The Bankruptcy Court directed the parties to confer and devise an efficient procedure and briefing schedule.

189. Prior to the Compensation Period, on October 2, 2014, the Trustee filed a letter advising that the Trustee and counsel representing the defendants in this and other actions are working together to prepare a mutually acceptable agreed order that will set forth a proposed process and briefing schedule. On October 23, 2014, the Trustee filed a proposed order setting forth a proposed process and briefing schedule. *Picard v. Citibank*, Adv. No. 10-05345, (ECF Nos. 75 and 80). Following limited objections by certain defendants, on November 19, 2014, the Bankruptcy Court held a conference to discuss the proposed process and briefing schedule.

190. Prior to the Compensation Period, on December 10, 2014, the Bankruptcy Court entered an Order Concerning Further Proceedings on Extraterritoriality Motion and Trustee's Omnibus Motion for Leave to Replead and for Limited Discovery (the "Extraterritoriality Scheduling Order"). *See* discussion *supra* Section IV(J)(f). On December 31, 2014, defendants filed the Consolidated Supplemental Memorandum of Law in Support of the Transferee Defendants' Motion to Dismiss Based on Extraterritoriality seeking to dismiss the claims listed in Exhibits A and B to the Extraterritoriality Scheduling Order (the "Consolidated Motion to Dismiss"). *See* discussion *supra* Section IV(J)(f).

191. Prior to the Compensation Period, on January 13, 2015 and February 24, 2015, the Court so ordered two stipulations modifying the Extraterritoriality Scheduling Order and

certain deadlines for the parties to file their respective submissions in connection with the Extraterritoriality Opinion and Order and the Omnibus Motion. *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec., LLC*, Adv. Pro. No. 08-1789 (Bankr. S.D.N.Y.) (SMB), (ECF Nos. 8990 and 9350). On March 4, 2015, the Trustee filed a Letter Regarding Confidentiality Designations Affecting the Trustee's Extraterritoriality Submission. The Bankruptcy Court held an informal conference on the confidentiality issues on March 18, 2015. *See* discussion *supra* Section IV(J).

192. Prior to the Compensation Period, on April 1, 2015, the Court entered a Third Stipulation and Order Modifying the Order Concerning Further Proceedings on Extraterritoriality Motion and Trustee's Omnibus Motion for Leave to Replead and for Limited Discovery (the "Third Stipulation"). *Securities Inv. Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC*, Adv. Pro. No. 08-1789 (Bankr. S.D.N.Y.) (SMB), (ECF No. 9720). The Trustee's papers in opposition to the Extraterritoriality Opinion and Order and the Consolidated Motion to Dismiss, and in further support of the Omnibus Motion, were filed under the Third Stipulation with the Court on June 30, 2015. On September 30, 2015, Defendants filed replies to the Trustee's papers.

193. Prior to the Compensation Period, pursuant to the Extraterritoriality Scheduling Order, the hearing date on the extraterritoriality briefing was set by the Court, and took place on December 16, 2015. *See* discussion *supra* Section (IV)(J)(f).

194. The Omnibus Motion with regard to Citibank is currently in abeyance under the Extraterritoriality Scheduling Order pending the Bankruptcy Court's ruling on the extraterritoriality issues.

195. During the Compensation Period, B&H attorneys, on behalf of the Trustee, entered into stipulations with counsel for Citibank and prepared for further litigation while awaiting determination from the Bankruptcy Court on the extraterritoriality issues and the

Omnibus Motion. *Picard v. Citibank*, Adv. No. 10-05345 (SMB) (Bankr. S.D.N.Y. May 11, 2016 and July 22, 2016), (ECF Nos. 98 and 99).

### P.      MATTER 35 – NATIXIS

196.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Natixis, Natixis Corporate & Investment Bank (f/k/a Ixis Corporate & Investment Bank), Natixis Financial Products, Inc., Bloom Asset Holdings Fund, and Tensyr Ltd. (collectively, the "Natixis Defendants") seeking the return of approximately $430 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent transfers and fraudulent conveyances in connection with certain transfers of property by BLMIS to or for the benefit of the Natixis Defendants (the "Natixis Action"). *Picard v. Natixis*, Adv. No. 10-05353 (SMB) (Bankr. S.D.N.Y. Dec. 8, 2010).

197.    By orders issued by the District Court, during the Spring and Summer of 2012, the District Court included the Natixis Defendants' motion to withdraw the reference in Common Briefing and oral argument.

198.    Prior to the Compensation Period, the District Court issued the Extraterritoriality Opinion and Order and the Good Faith Standard Opinion and Order, and remanded the Natixis Action back to the Bankruptcy Court for further proceedings consistent with its opinions. (ECF No. 65). *See* discussion *supra* Section IV(J)(a). B&H attorneys, on behalf of the Trustee, also presented to the Court, and the Court so ordered, that the transferee defendants, including the Natixis Defendants, submit a consolidated memorandum of law in support of dismissal based on the extraterritoriality issue. The Court so ordered that the Trustee and SIPC file a consolidated memorandum of law opposing the motion to dismiss and seeking leave to amend the complaints,

as well as an additional addendum opposing the motion to dismiss specific to the transferee defendants, including the Natixis Defendants.

199.    Prior to the Compensation Period, B&H attorneys, on behalf of the Trustee, drafted and filed the consolidated memorandum of law opposing the motion to dismiss and seeking leave to amend the complaints (ECF No. 100), the addendum opposing the motion to dismiss specific to the Natixis Defendants (ECF No. 101), and proffered allegations pertaining to the extraterritoriality issue as to the Natixis Defendants. (ECF No. 102). The Natixis Defendants filed replies to the Trustee's extraterritoriality papers on September 30, 2015. (ECF Nos. 105-06, and 109).

200.    Prior to the Compensation Period, B&H attorneys prepared for and presented oral argument at the December 16, 2015 hearing on the transferee defendants' motion to dismiss based on extraterritoriality and the Trustee's omnibus motion for leave to replead. *See id.*, (ECF Nos. 113–114). *See* discussion *supra* Section (IV)(J)(f).

201.    During the Compensation Period and while awaiting a decision from the Court on these issues, B&H attorneys, on behalf of the Trustee, entered into a stipulation with counsel for Natixis and Tensyr, *Picard v. Natixis*, Adv. No. 10-05353 (SMB) (Bankr. S.D.N.Y. Sept. 20, 2016) (ECF No. 120), and continued to prepare for litigation.

## Q.    MATTER 36 – MERRILL LYNCH

202.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Merrill Lynch International ("MLI") seeking the return of at least $16 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences and fraudulent transfers in connection with certain transfers of property by BLMIS to or for the benefit of MLI (the "MLI Action"). *Picard v. Merrill Lynch Int'l*, Adv. No. 10-05346 (SMB) (Bankr. S.D.N.Y. Dec. 8, 2010).

203.    Prior to the Compensation Period, the District Court issued the Extraterritoriality Opinion and Order and the Good Faith Standard Opinion and Order, and remanded the MLI Action, among others, to the Bankruptcy Court for further proceedings consistent with its opinions.  *See* discussion *supra* Section IV(J)(a).  In response to the Extraterritoriality Opinion and Order, B&H attorneys, on behalf of the Trustee, prepared a Notice of Presentment of Order with coordinating defendants' counsel for the Bankruptcy Court to hear and decide issues concerning Common Briefing on the extraterritoriality issue.  (ECF Nos. 62, 64, 67, 71, 75).

204.    Prior to the Compensation Period, the Court so ordered a stipulation permitting the defendants, including MLI, to submit a consolidated memorandum of law in support of dismissal of the Trustee's complaints based on the extraterritoriality issue.  The Court also permitted the Trustee and SIPC to file a consolidated memorandum of law opposing the defendants' consolidated motion to dismiss and seeking leave to amend the complaints.  As part of that stipulated order, the Trustee and SIPC were permitted to file additional addendums opposing the motions to dismiss specific to each defendant, including as to MLI.

205.    Prior to the Compensation Period, B&H attorneys, on behalf of the Trustee, drafted and filed the consolidated memorandum of law opposing the defendants' motion to dismiss and seeking leave to amend the complaints. (ECF No. 87).  In addition, B&H attorneys drafted and filed certain addendums opposing the defendants' motion to dismiss specific to MLI (ECF No. 88), and proffered allegations for an amended complaint pertaining to the extraterritoriality issue as to MLI.  (ECF No. 89).

206.    During the Compensation Period, B&H attorneys, on behalf of the Trustee, reviewed the transferee defendants' supplemental memorandum of law and MLI's supplemental memorandum of law. (ECF Nos. 92, 93).

65

207.    During the Compensation Period, B&H attorneys, on behalf of the Trustee, entered into stipulations with counsel to MLI and prepared for further litigation while awaiting determination from the Bankruptcy Court on the Extraterritoriality Issue and the Omnibus Motion. (ECF Nos. 96, 100).

### R.    MATTER 37 – ABN AMRO

208.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against ABN AMRO Bank N.V. (presently known as The Royal Bank of Scotland, N.V.) ("ABN/RBS") seeking the return of approximately $237 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences and fraudulent transfers in connection with certain transfers of property by BLMIS to or for the benefit of ABN/RBS (the "ABN/RBS Action"). *Picard v. ABN AMRO Bank, N.A.* (presently known as The Royal Bank of Scotland, N.V.), Adv. No. 10-05354 (SMB) (Bankr. S.D.N.Y. Dec. 8, 2010).

209.    Prior to the Compensation Period, ABN/RBS filed a motion to withdraw the reference, which was granted by Judge Rakoff and resulted in Common Briefing before the District Court.

210.    In addition, prior to the Compensation Period, on February 27, 2013, the Trustee voluntarily dismissed Rye Select Broad Market XL Fund, L.P. with prejudice. *Picard v. ABN AMRO Bank N.A.*, Adv. No. 10-05354 (SMB) (Bankr. S.D.N.Y.), (ECF No. 56).

211.    Prior to the Compensation Period, the District Court issued the Extraterritoriality Opinion and Order and the Good Faith Standard Opinion and Order, and remanded the ABN/RBS Action back to the Bankruptcy Court for further proceedings consistent with these decisions. *See* discussion *supra* Section IV(J)(a).

212.    Prior to the Compensation Period, the Trustee and B&H attorneys entered into stipulations with counsel for ABN/RBS extending ABN/RBS's time to respond to the Trustee's amended complaint.

213.    Prior to the Compensation Period, B&H attorneys, on behalf of the Trustee, researched and drafted an omnibus motion seeking the Court's leave to replead and authorization for limited discovery pursuant to the Extraterritoriality Opinion and Order and the Good Faith Standard Opinion and Order.  (ECF Nos. 69, 70, 71, 72).  B&H attorneys also reviewed and analyzed documents to support the Trustee's filings concerning extraterritoriality, and drafted and filed proffered allegations and a memorandum related thereto.  (ECF Nos. 99, 100, 101).

214.    Prior to the Compensation Period, B&H attorneys reviewed and analyzed the transferee defendants' supplemental memorandum of law and ABN/RBS's supplemental memorandum of law concerning extraterritoriality.  (ECF. Nos. 105, 106).

215.    Prior to the Compensation Period, B&H attorneys prepared for and presented oral argument at the December 16, 2015 hearing on the transferee defendants' motion to dismiss based on extraterritoriality and the Trustee's omnibus motion for leave to replead.  *See id.*, (ECF Nos. 107-108).  *See* discussion *supra* Section (IV)(J)(f).

216.    During the Compensation Period, while awaiting a decision from the Court on these issues, B&H attorneys have filed and served a notice of adjournment of the pre-trial conference and continued to prepare for litigation.  *Id.*, (ECF Nos. 111-112).

S.    **MATTER 38 – BANCO BILBAO**

217.    This matter categorizes time spent by the Trustee and B&H attorneys, on behalf of the Trustee, pursuing the avoidance action against Banco Bilbao Vizcaya Argentaria, S.A. ("BBVA") seeking the return of at least $45 million under SIPA, the Bankruptcy Code, and the New York Fraudulent Conveyance Act in connection with a transfer of property by BLMIS to or

for the benefit of BBVA. *Picard v. Banco Bilbao Vizcaya Argentaria*, S.A., Adv. No. 10-05351 (SMB) (Bankr. S.D.N.Y.) ("BBVA Action").

218.    Prior to the Compensation Period, BBVA filed a motion to withdraw the reference, which was granted by Judge Rakoff and resulted in Common Briefing pending in the District Court. *Picard v. Banco Bilbao Vizcaya Argentaria, S.A.*, Adv. No. 11 Civ. 07100 (JSR) (S.D.N.Y.), (ECF Nos. 1–3). BBVA's motion to withdraw the reference included arguments about extraterritoriality and the good faith standard.

219.    Prior to the Compensation Period, the District Court issued the Extraterritoriality Opinion and Order and the Good Faith Standard Opinion and Order, and remanded the BBVA Action back to the Bankruptcy Court for further proceedings consistent with its opinions. BBVA Action, (ECF No. 75); *see* discussion *supra* Section IV(J)(a).

220.    Prior to the Compensation Period, B&H attorneys drafted, filed, served, and argued an omnibus motion seeking the Bankruptcy Court's leave to replead and authorization for limited discovery pursuant to the Extraterritoriality Opinion and Order and the Good Faith Standard Opinion and Order. BBVA Action, (ECF Nos. 77–79). B&H attorneys also drafted, filed, and served a notice of presentment of order concerning further proceedings on extraterritoriality motion and Trustee's omnibus motion for leave to replead and for limited discovery and opportunity for hearing. *Id.*, (ECF Nos. 94, 95). The Bankruptcy Court entered the Extraterritoriality Scheduling Order on December 11, 2014. *Id.*, (ECF No. 96); *see* discussion *supra* Section IV(J)(f). Pursuant to the Extraterritoriality Scheduling Order, BBVA filed a consolidated supplemental memorandum of law in support of the transferee defendants' motion to dismiss based on extraterritoriality. *Id.*, (ECF No. 97).

221.    Prior to the Compensation Period, pursuant to the Extraterritoriality Scheduling Order and stipulations modifying certain deadlines therein, B&H attorneys drafted and filed the Trustee's memorandum of law in opposition to the transferee defendants' motion to dismiss based on extraterritoriality and in further support of his motion for leave to amend complaints, the Trustee's supplemental memorandum of law in opposition to BBVA's motion to dismiss based on extraterritoriality and in further support of the Trustee's motion for leave to amend complaints, and the Trustee's proffered allegations pertaining to the extraterritoriality issue as to BBVA. *Id.*, (ECF Nos. 108–110).  BBVA thereafter filed a supplemental reply memorandum of law in further support of its motion to dismiss based on extraterritoriality and in opposition to the Trustee's motion for leave to amend complaints. *Id.*, (ECF Nos. 113–114).  B&H attorneys prepared for and presented oral argument at the December 16, 2015 hearing on the transferee defendants' motion to dismiss based on extraterritoriality and the Trustee's omnibus motion for leave to replead. *Id.*, (ECF Nos. 115–116).  *See* discussion *supra* Section (IV)(J)(f).

222.    During the Compensation Period, while awaiting a decision from the Court on these issues, B&H attorneys have filed and serviced notices of adjournment of the pre-trial conference and continued to prepare for litigation. *Id.*, (ECF Nos. 122-125).

## T.    **MATTER 39 – FORTIS**

223.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against ABN AMRO Bank (Ireland) Ltd. (f/k/a Fortis Prime Fund Solutions Bank (Ireland) Ltd.), ABN AMRO Custodial Services (Ireland) Ltd. (f/k/a Fortis Prime Fund Solutions Custodial Services (Ireland) Ltd.) (collectively, the "Fortis Defendants"), Rye Select Broad Market XL Fund, LP, and Rye Select Broad Market XL Portfolio Ltd. seeking the return of approximately $747 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences and fraudulent conveyances in

connection with certain transfers of property by BLMIS to or for the benefit of the Fortis

Defendants (the "Fortis Action"). *Picard v. ABN AMRO Retained Custodial Services (Ireland)*

*Ltd.*, Adv. No. 10-05355 (SMB) (Bankr. S.D.N.Y. Dec. 8, 2010).

224.     On February 27, 2013, the Trustee voluntarily dismissed Rye Select Broad

Market XL Fund, L.P. with prejudice. *Picard v. ABN AMRO Retained Custodial Services*

*(Ireland) Ltd.*, Adv. No. 10-05355 (SMB) (Bankr. S.D.N.Y. Dec. 8, 2010), (ECF No. 50).

225.     By orders issued by the District Court during the Spring and Summer of 2012, the

District Court included the Fortis Defendants' motion to withdraw the reference in Common

Briefing and oral argument.  Prior to and during the Compensation Period, B&H attorneys, on

behalf of the Trustee, reached agreements with the Fortis Defendants to extend the Trustee's

time to respond to motions to dismiss the complaint while awaiting determinations from the

District Court with respect to Common Briefing. *Picard v. ABN AMRO Retained Custodial*

*Services (Ireland) Ltd.*, Adv. No. 10-05355 (SMB) (Bankr. S.D.N.Y.), (ECF No. 62, 64. 71, 82).

226.     Prior to the Compensation Period, the District Court issued the Extraterritoriality

Opinion and Order and the Good Faith Standard Opinion and Order, and remanded the Fortis

Action back to the Bankruptcy Court for further proceedings consistent with its opinions. *See*

discussion *supra* Section IV(J)(a).

227.     Prior to the Compensation Period, B&H attorneys, on behalf of the Trustee,

presented to the Court, and the Court so ordered, that the transferee defendants, including the

Fortis Defendants, submit a consolidated memorandum of law in support of dismissal based on

the extraterritoriality issue.  The Court so ordered that the Trustee and SIPC file a consolidated

memorandum of law opposing the motion to dismiss and seeking leave to amend the complaints,

as well as an additional addendum opposing the motion to dismiss specific to the transferee defendants, including the Fortis Defendants.  (ECF Nos. 83, 85).

228.    Prior to the Compensation Period, B&H attorneys, on behalf of the Trustee, drafted and filed the Trustee's memorandum of law in opposition to the transferee defendants' motion to dismiss based on extraterritoriality and in further support of his motion for leave to amend complaints, the Trustee's supplemental memorandum of law in opposition to Fortis's motion to dismiss based on extraterritoriality and in further support of the trustee's motion for leave to amend complaints, and the Trustee's proffered allegations pertaining to the extraterritoriality issue as to the Fortis Defendants.

229.    Prior to the Compensation Period, B&H attorneys reviewed the transferee defendants' supplemental memorandum of law and the Fortis Defendants' supplemental memorandum of law. (ECF No. 101, 102).

230.    Prior to the Compensation Period, B&H attorneys prepared for and presented oral argument at the December 16, 2015 hearing on the transferee defendants' motion to dismiss based on extraterritoriality and the Trustee's omnibus motion for leave to replead.  *See id.*, (ECF Nos. 104-105).  *See* discussion *supra* Section (IV)(J)(f).

231.    During the Compensation Period, while awaiting a decision from the Court on these issues, B&H attorneys have filed and served notices of adjournment of the pre-trial conference and continued to prepare for litigation.  *Id.*, (ECF Nos. 110-113).

U.    **MATTER 40 – MEDICI/KOHN**

232.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing claims against Sonja Kohn, Infovaleur, Inc., and Tecno Development & Research Ltd. (collectively, the "Kohn Defendants") seeking the return of approximately $35 million under SIPA, under the Bankruptcy Code and New York state law.  *Picard v. Kohn, et al.*, Adv. Pro.

71

No. 10-05411 (SMB) (Bankr. S.D.N.Y. Dec. 10, 2010).  On November 26, 2014, prior to the Compensation Period, the Trustee filed a motion to amend the complaint.  *Picard v. Kohn*, Adv. Pro. No. 10-05411 (SMB) (Bankr. S.D.N.Y. 2010) (ECF No. 282).  This motion is currently pending.

233.    During the Compensation Period, B&H attorneys, on behalf of the Trustee, entered into a stipulation with counsel for the Kohn Defendants to extend their time to respond to the Trustee's motion to seek leave to amend the complaint in this action.  *Picard v. Kohn*, Adv. Pro. No. 10-05411 (SMB) (Bankr. S.D.N.Y. 2010) (ECF No. 305).

## V.    MATTER 42 – EQUITY TRADING

234.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Equity Trading Portfolio Limited, Equity Trading Fund Ltd., and BNP Paribas Arbitrage, SNC (collectively, the "Equity Trading Defendants") seeking the return of approximately $16 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent transfers, fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Equity Trading Defendants.  *Picard v. Equity Trading Portfolio Limited*, Adv. No. 10-04457 (SMB) (Bankr. S.D.N.Y. Dec. 1, 2010), (ECF No. 2).

235.    The Equity Trading Defendants filed motions, or joinders to the motions, in the District Court to withdraw the reference from this Court.  (ECF Nos. 16, 21).  The District Court included the motions in its orders for Common Briefing and oral argument.

236.    During the Compensation Period, B&H attorneys prepared for continued litigation in this action.  The pre-trial conference is scheduled for December 21, 2016.  (ECF No. 99)

## W.    MATTER 46 – GLANTZ

237.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Richard M. Glantz and numerous other individuals, trusts and entities (collectively, the "Glantz Defendants"), seeking the return of more than $113 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent transfers and fraudulent conveyances in connection with certain transfers of property by BLMIS to or for the benefit of the Glantz Defendants. *Picard v. Richard M. Glantz*, Adv. No. 10-05394 (SMB) (Bankr. S.D.N.Y. Dec. 9, 2010).

238.    Following the filing of the complaint, certain defendants were dismissed based on hardship, settlement or other reasons.  On February 1, 2012, the remaining defendants filed a motion to dismiss.  (ECF Nos. 26–30).  The parties subsequently entered into stipulations extending the Trustee's time to amend the complaint in response to the motion to dismiss.  On March 31, 2012, the defendants filed a motion to withdraw the reference in the District Court. *Picard v. Glantz*, No. 12 Civ. 02778 (JSR) (S.D.N.Y. July 12, 2012), (ECF Nos. 1–3).  Judge Rakoff partially granted the motion to withdraw the reference to address certain issues related to the majority of the avoidance actions brought by the Trustee (ECF Nos. 10–12).

239.    On January 9, 2015, the Trustee filed an amended complaint (ECF No. 62), and the parties thereafter entered into stipulations extending the defendants' time to file a motion to dismiss the amended complaint.  On May 1, 2015, the defendants moved to dismiss the amended complaint.  (ECF No. 68).  On August 14, 2015, the Trustee filed his opposition to the defendants' motion to dismiss.  (ECF No. 75).  On October 9, 2015, the defendants filed their reply papers.  (ECF No. 79).  Pursuant to stipulations subsequently entered into by the parties, the hearing on the motion to dismiss is currently scheduled for November 30, 2016.  (ECF No. 85).

## X.   **MATTER 48 – BONGIORNO**

240.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Annette Bongiorno and Rudy Bongiorno (together, the "Bongiorno Defendants") seeking the return of approximately $22 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Bongiorno Defendants. *Picard v. Annette Bongiorno, et al.*, Adv. Pro. No. 10-04215 (Bankr. S.D.N.Y.) (BRL).

241.    The action was stayed for several years because of the pending criminal case against Annette Bongiorno. *See United States v. O'Hara et al.*, 10 Cr. 228 (S.D.N.Y.) (LTS). During the Compensation Period, B&H attorneys engaged in settlement negotiations with counsel for the Bongiorno Defendants. A settlement agreement was finalized between the parties and subsequently approved by the Court on September 29, 2016. This adversary proceeding was dismissed on October 28, 2016.

## Y.   **MATTER 51 – CRUPI**

242.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Jo Ann Crupi, a former BLMIS employee, and Judith Bowen, (collectively, the "Crupi Defendants") seeking the return of over $8.7 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent transfers, fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Crupi Defendants. *Picard v. Jo Ann Crupi*, Adv. No. 10-04216 (SMB) (Bankr. S.D.N.Y.).

243.    Jo Ann Crupi was charged in a thirty-three count indictment by the United States Attorney's Office, asserting among other things, that she conspired to defraud BLMIS

74

investment advisory clients, conspired to commit securities fraud and to falsify books and records, committed securities fraud, falsified the records of BLMIS, committed tax evasion and committed bank fraud. *USA v. O'Hara, et al.*, Case No. 10-cr-00228 (LTS). On or about March 24, 2014, following a lengthy jury trial, Ms. Crupi was found guilty on several counts of the indictment. On December 23, 2014, the District Court entered the Judgment in a Criminal Case pursuant to which Ms. Crupi was sentenced to six years imprisonment, plus four years of supervised release. A money judgment in the approximate amount of $33,950,967,159.26 was entered against Ms. Crupi. On April 8, 2015, the District Court entered the Amended Consent Preliminary Order of Forfeiture as to Specific Property/Money Judgment (Case No. 10-cr-00228 (LTS), ECF No. 1318), pursuant to which Ms. Crupi and Ms. Bowen forfeited certain assets and retained certain other assets.

244. The Trustee is pursuing litigation against Ms. Crupi and Ms. Bowen. During the Compensation Period, the Trustee engaged in discovery, including conferring with opposing counsel regarding inadequate responses to the Trustee's discovery.

## Z.    MATTER 53 – MAGNIFY

237. This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Magnify Inc., Premero Investments Ltd., Strand International Investments Ltd., The Yeshaya Horowitz Association, Yair Green and Express Enterprises Inc., seeking the return of over $154 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent transfers, fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the defendants. *Picard v. Magnify Inc., et.al*, Adv. No. 10-05279 (SMB) (Bankr. S.D.N.Y. Dec. 6, 2010).

238.    During the Compensation Period, B&H attorneys continued to pursue discovery against Magnify Inc., Premero Investments Ltd., Strand International Investments Ltd., The Yeshaya Horowitz Association, Yair Green, and Express Enterprises Inc. (collectively, the "Magnify Defendants").  As part of the ongoing discovery process, B&H attorneys conferred with  counsel for the Magnify Defendants to obtain documents relating to bank accounts held by the Magnify Defendants in Israel, conferred and corresponded with counsel for the Magnify Defendants regarding ongoing discovery disputes, prepared and served counsel for the Magnify Defendants with a supplemental production of documents responsive to the claims and defenses in the case, and continued to review documents from BLMIS's records for responsiveness.

239.    B&H also continued to prosecute its request for documents from a third party bank via a letter of request under The Hague Evidence Convention in Switzerland.  The Magnify Defendants had objected to the production by the bank, and the matter was under consideration by the Swiss Court.  On February 19, 2016, the Swiss Court issued a decision on the merits in the Trustee's favor.  The Magnify Defendants appealed the decision, and the Trustee, in conjunction with his special counsel in Switzerland, filed a response on April 1, 2016.  The Swiss court issued a decision on June 20, 2016, remanding the matter to the lower court but with language that was favorable to the Trustee.

240.    During the Compensation Period, B&H attorneys also collaborated with the Trustee's special counsel in Israel, Soroker Agmon, to pursue two actions in Israel against certain persons and entities who received funds transferred from the Magnify Defendants that originated from BLMIS.  These proceedings were filed in the District Court of Jerusalem, Israel in December 2015.  During the Compensation Period, B&H attorneys reviewed, analyzed and responded to various Statements of Defense filed by defendants in those actions.  B&H attorneys

also reviewed, analyzed and responded to other motions filed by the defendants, including a motion to require the Trustee to deposit with the Israeli court a guarantee for costs and a motion to consolidate the two actions. The Trustee also reviewed and analyzed certain documents produced by the Magnify Defendants as they may pertain to the Israeli actions, and began preparing written discovery.

241.    In addition to the *Picard v. Magnify* action, this matter also encompasses time spent by the Trustee and B&H attorneys pursuing the avoidance action against the Estate (Succession) of Doris Igoin, Laurence Apfelbaum, and Emilie Apfelbaum (collectively, the "Apfelbaum Defendants"), who have ties to the late founder of several of the Magnify Defendants, seeking the return of over $152 million under SIPA, the Bankruptcy Code, and other applicable law for fraudulent transfers and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Apfelbaum Defendants. *Picard v. Estate (Succession) of Doris Igoin*, Adv. No. 10-04336 (SMB) (Bankr. S.D.N.Y. Nov. 30, 2010).

242.    During the Compensation Period, B&H attorneys conferred with counsel for the Apfelbaum Defendants to agree on an early mediation. The parties filed a Notice of Mediation Referral on April 7, 2016 and a Notice of Mediator Selection on April 21, 2016. B&H attorneys then prepared a mediation statement and developed strategy for the mediation, the first round of which took place on July 19, 2016. In addition, during the Compensation Period, B&H attorneys, working through conflicts counsel, served a Rule 45 subpoena on a bank seeking documents regarding bank accounts held by the Apfelbaum Defendants, and reviewed and analyzed documents received in response thereto.

### AA.    **MATTER 54 – MENDELOW**

243.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Steven B. Mendelow, Nancy Mendelow, Cara Mendelow, Pamela

(Mendelow) Christian, C&P Associates, Ltd., and C&P Associates, Inc. (collectively, the "Mendelow Defendants") seeking the return of over $20 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent transfers, fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Mendelow Defendants. *Picard v. Steven B. Mendelow*, Adv. No. 10-04283 (SMB) (Bankr. S.D.N.Y. Nov. 23, 2010).

244.    The Mendelow Defendants moved to withdraw the reference, which was granted in part. *Picard v. Mendelow*, No. 11 Civ. 07680 (JSR) (S.D.N.Y. Oct. 28, 2011), (ECF No. 14). The matter was returned to the Bankruptcy Court on August 1, 2014. *Picard v. Mendelow*, No. 11-cv-07680 (JSR)(S.D.N.Y. August 4, 2014), (Dkt. No. 19).

245.    On November 14, 2015, the Mendelow Defendants answered the Complaint. On January 23, 2015, the Trustee entered into a Case Management Order with the Mendelow Defendants. On May 14, 2015, B&H attorneys served written discovery requests on the Mendelow Defendants.

246.    The Mendelow Defendants filed a Motion for Judgment on the Pleadings on May 14, 2015. B&H attorneys drafted the Trustee's Opposition to Defendants' Motion for Judgment on the Pleadings, which was filed on August 6, 2015.

247.    On October 28, 2015, the Trustee participated in an argument before Judge Bernstein on the Defendants' Motion for Judgment on the Pleadings. At that time, Judge Bernstein suggested that the Trustee file an amended complaint.

248.    The Trustee entered into a briefing schedule for the Trustee's Motion for Leave to Amend with the Defendants. The Trustee filed his Motion for Leave to Amend, along with a Proposed Amended Complaint, on December 30, 2015.

249.    On February 1, 2016, the Defendants filed their Opposition to the Motion for Leave to File an Amended Complaint.  On February 15, 2016, the Trustee filed his Reply Memorandum of Law in Further Support of the Trustee's Motion to File an Amended Complaint.

243.    On February 24, 2016, the Trustee participated in an argument before Judge Bernstein on the Defendants' Motion for Leave to File an Amended Complaint.

244.    Steven Mendelow died on June 7, 2016.  B&H attorneys searched for and located the relevant probate file.

245.    The team communicated with opposing counsel and drafted a stipulation to amend the caption to reflect Mendelow's death.

### BB.    MATTER 56 – LIPKIN

246.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Irwin Lipkin, Carole Lipkin, Eric Lipkin, Erika Lipkin, Marc Lipkin, Russell Lipkin, Karen Yokomizo Lipkin, and other individuals (collectively, the "Lipkin Defendants") seeking the return of approximately $9 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent transfers, fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Lipkin Defendants.  *Picard v. Irwin Lipkin*, Adv. No. 10-04218 (SMB) (Bankr. S.D.N.Y.)

247.    During the Compensation Period, the Trustee prepared for continued litigation in this action and worked toward a resolution.

### CC.    MATTER 59 – STANLEY SHAPIRO

248.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Stanley Shapiro, Renee Shapiro, S&R Investment Co., David Shapiro,

Rachel Shapiro, Leslie Shapiro Citron, Kenneth Citron, and numerous trusts (collectively, the "Shapiro Defendants") seeking the return of over $54 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Shapiro Defendants. *Picard v. Shapiro*, Adv. No. 10-05383 (SMB) (Bankr. S.D.N.Y. Dec. 9, 2010).

249.    Prior to the Compensation Period, B&H attorneys prepared and filed the second amended complaint against the Shapiro Defendants, the Shapiro Defendants moved the Bankruptcy Court to dismiss the second amended complaint on numerous grounds, the Trustee opposed the motion, and the Bankruptcy Court held oral argument on the motion on March 5, 2015.  On November 25, 2015, the Bankruptcy Court issued a written decision granting in part and denying in part the Shapiro Defendants' motion to dismiss.

250.    During the Compensation Period, B&H attorneys commenced discovery with the Shapiro Defendants, including propounding requests for admission and seeking certain stipulations from the Shapiro Defendants.  Also during the Compensation Period, B&H attorneys continued to further develop the Trustee's case against the Shapiro Defendants.

### DD.    MATTER 60 – AVELLINO

251.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Avellino & Bienes, Frank J. Avellino, Michael S. Bienes, Nancy C. Avellino, Dianne K. Bienes, Thomas G. Avellino, and numerous other trusts and entities (collectively, the "A&B Defendants") seeking the return of over $904 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent transfers, fraudulent conveyances and damages in connection with certain

transfers of property by BLMIS to or for the benefit of the A&B Defendants. *Picard v. Avellino*, Adv. No. 10-05421 (SMB) (Bankr. S.D.N.Y. Dec. 10, 2010).

252. On June 6, 2011, certain of the A&B Defendants moved to dismiss the complaint in this Court. (ECF No. 23). That same day, certain A&B Defendants moved to withdraw the reference. *Picard v. Avellino*, No. 11-03882 (JSR) (S.D.N.Y. June 7, 2011), (ECF Nos. 1–3). The motion to withdraw the reference was fully briefed in the District Court, and oral argument was held on October 18, 2011. The reference to this Court was withdrawn on several issues on February 29, 2012. (ECF No. 20). The Trustee and the A&B Defendants participated in Common Briefing before the District Court on the issues withdrawn.

253. In July 2014, after all withdrawn issues had been decided, the parties negotiated a schedule for the briefing of pending or renewed motions to dismiss. On September 24, 2014, the A&B Defendants filed a supplemental motion to dismiss, renewing their arguments from their 2011 motion. (ECF Nos. 82-85). The Trustee responded by filing an amended complaint on November 24, 2014. (ECF No. 86).

254. On January 28, 2015, the A&B Defendants filed a renewed motion to dismiss the amended complaint. (ECF No. 88-90). On May 21, 2015, the Trustee filed an opposition to the motion to dismiss. (ECF No. 99). On June 22, 2015, the A&B Defendants filed a reply in support of the motion to dismiss. (ECF No. 101). Oral argument was held on July 29, 2015. At oral argument, the Court requested supplemental briefing from the parties on certain additional issues. The supplemental briefs were filed on August 12, 2015. (ECF No. 102-104). On July 21, 2016, Judge Bernstein issued his memorandum decision and order, granting in part and denying in part the motion to dismiss. (ECF Nos. 116, 117). In his decision, Judge Bernstein held that, due to changes in the corporate form at BLMIS, the Trustee was legally incapable of

recovering fraudulent transfers made prior to January 1, 2001. (ECF No. 116). Consequently, on August 19, 2016, the Trustee filed a motion to reargue this specific aspect of the decision. (ECF No. 125). The A&B Defendants opposed the Trustee's motion to reargue and filed their opposition papers on September 19, 2016. (ECF No. 129). The Trustee replied to their opposition on October 3, 2016. (ECF No. 134). The Bankruptcy Court denied the motion to reargue on October 18, 2016. (ECF No. 136).

255. In addition to the Trustee's analysis of the Court's July decision and corresponding work on the motion to reargue briefing, B&H attorneys continued to prepare for discovery, conduct document review, and perform overall case assessment during the Compensation Period.

## EE.    MATTER 62 – SUBSEQUENT TRANSFERS

256. This matter categorizes time spent by the Trustee and B&H attorneys pursuing recovery actions against entities that received subsequent transfers of Customer Property from BLMIS.

257. Prior to the Compensation Period, the Trustee briefed and presented argument at hearings before the District Court on issues raised by subsequent transfer defendants, as well as other defendants, that were subject to Common Briefing and hearings. As of July 31, 2014, the District Court issued all of its decisions on the issues subject to Common Briefing and remanded the cases to this Court for further findings based on the legal standards set forth in the District Court's decisions. See discussion *supra* Section IV(J)(a).

258. As part of its Common Briefing decisions, the District Court remanded the cases in which subsequent transfer defendants filed an extraterritoriality motion to dismiss. On August 22, 2014, the subsequent transfer defendants wrote this Court asking for a conference to discuss further proceedings on the extraterritoriality motion to dismiss. On August 28, 2014,

the Trustee filed a motion to replead and requested limited discovery based on the Common Briefing decisions issued by the District Court. On October 17, 2014, this Court held a conference with the parties regarding the defendants' request as to further proceedings on the extraterritoriality motion to dismiss and the Trustee's motion to replead and for limited discovery. During the conference, this Court requested the parties to submit a proposed order governing the requests.

259.    On October 23, 2014, the parties filed a proposed scheduling order to govern the further proceedings on the defendants' extraterritoriality motion to dismiss and the Trustee's request for leave to replead and for limited discovery. Two defendants filed objections to the proposed order. On November 12, 2014, the Trustee filed a response to the objections to the proposed scheduling order. On November 19, 2014, this Court held a hearing on the two objections, as well as a request for clarification by a third defendant. Following the hearing, this Court requested the parties to file a revised scheduling order. This Court issued revised scheduling orders on December 10, 2014, February 24, 2015, and March 31, 2015.

260.    On December 31, 2014, the defendants filed their supplemental memorandum in support of their extraterritoriality motion to dismiss. On June 26-30, 2015, the Trustee filed a principal brief in response to the supplemental memorandum in support of the extraterritoriality motion to dismiss, as well as addenda and proffered amended complaints or allegations specific to the moving defendants. The defendants filed reply memoranda on September 30, 2015. This Court held a hearing on the motion on December 16, 2015. The motion is *sub judice*. *See* discussion *supra* Section IV(J)(f).

261.    As part of the extraterritoriality briefing, the Trustee sought the de-designation as confidential of numerous documents produced by the defendants. Some of the defendants

voluntarily de-designated the documents while others required arbitration and at least one hearing with this Court.

262.    The Trustee's investigation is ongoing, and additional recovery actions against other subsequent transferees likely will be filed in the future.

FF.    **MATTER 65 – LEGACY**

263.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Legacy Capital Ltd. and Khronos LLC, (collectively, the "Legacy Defendants") seeking the return of over $218 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Legacy Capital Defendants.  *Picard v. Legacy Capital Ltd.*, Adv. No. 10-05286 (SMB) (Bankr. S.D.N.Y. Dec. 6, 2010).

264.    During the Compensation Period, B&H attorneys prepared for continued litigation in this action.  In support of this effort, B&H attorneys continued to identify relevant witnesses in the United States and abroad and procured information regarding the Legacy Defendants and relevant third party witnesses identified in the Legacy Defendants' initial disclosures.

265.    On March 14, 2016, Judge Bernstein ruled on the defendants' pending motions to dismiss the Trustee's Amended Complaint, dismissing all of the Trustee's claims excluding his claim to recover fictitious profits transferred from BLMIS to or for the benefit of Legacy Capital Ltd.  The Trustee worked with Legacy Capital Ltd. and Khronos LLC on a proposed joint order entering Judge Bernstein's decision. The parties met and conferred concerning the defendant's disputed contention that Judge Bernstein's dismissals were granted with prejudice.

266.    During the Compensation Period, B&H attorneys, on behalf of the Trustee, participated in oral argument before Judge Bernstein concerning Khronos LLC's and Legacy

Capital Ltd.'s contention that Judge Bernstein's dismissals were with prejudice.  At a chambers hearing before Judge Bernstein, it was decided that the claims were dismissed without prejudice. The Trustee subsequently entered into an agreement with Khronos LLC whereby claims were dismissed against this defendant only with prejudice in exchange for a representation regarding the nature of certain transfers.   On April 12, 2016, Judge Bernstein entered an order in connection with the motions to dismiss.

267.    On May 16, 2016, Legacy Capital Ltd. filed its answer to the Trustee's Amended Complaint (the "Answer").   During the Compensation Period, and based upon defendant's Answer, the Trustee and his counsel researched and contemplated the filing of a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).

268.    During the Compensation Period, the Trustee continued to develop his case against Defendant Legacy Capital Ltd., and served Rule 45 subpoenas on third parties related to the claims in the Trustee's Amended Complaint.  Furthermore, B&H attorneys, on behalf of the Trustee, have proceeded with written discovery with Legacy Capital Ltd. in accordance with the Case Management Order, and have negotiated the production of documents to be served from third parties.

### GG.    MATTER 71 – SQUARE ONE

269.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance and recovery action against Square One Fund Ltd. ("Square One") seeking the return of approximately $25.8 million under SIPA, the Bankruptcy Code, and the New York Debtor and Creditor Law, in connection with certain transfers of property by BLMIS to or for the benefit of Square One Fund Ltd.  *Picard v. Square One Fund Ltd.*, Adv. Pro. No. 10-04330 (SMB) (Bankr. S.D.N.Y. Nov. 29, 2010).

270.    Prior to the Compensation Period, on August 28, 2014, the Trustee filed an omnibus motion for leave to replead and for an order authorizing limited discovery in certain adversary proceedings, including the adversary proceeding against Square One.  (ECF No. 71). This motion is currently in abeyance pending the Bankruptcy Court's ruling on the motion to dismiss based on extraterritoriality grounds, submitted by defendants in other adversary proceedings.

271.    During the Compensation Period, B&H attorneys, on behalf of the Trustee, entered into a stipulation with counsel for Square One to extend Square One's time to answer, move, or otherwise respond to the Trustee's complaint and prepared for further litigation while awaiting determination from the Bankruptcy Court on the omnibus motion.  *Picard v. Square One Fund Ltd.*, Adv. Pro. No. 10-04330 (SMB) (Bankr. S.D.N.Y. 2010) (ECF No. 113).

272.    Also during the Compensation Period, B&H attorneys filed and serviced notices of adjournment of the pre-trial conference.  *Picard v. Square One Fund Ltd.*, Adv. Pro. No. 10-04330 (SMB) (Bankr. S.D.N.Y. 2010) (ECF Nos. 114 and 115).

## HH.    MATTER 73 – BNP PARIBAS

273.    This matter categorizes time spent by the Trustee and B&H attorneys in five adversary proceedings seeking the return of approximately $1 billion under SIPA, the Bankruptcy Code, and the New York Fraudulent Conveyance Act from BNP Paribas S.A. and its subsidiaries— BNP Paribas S.A., BNP Paribas Arbitrage SNC, BNP Paribas Bank & Trust (Cayman) Limited, BNP Paribas Securities Services, BNP Paribas (Suisse) S.A., and BGL BNP Paribas Luxembourg S.A., and BNP Paribas Securities Corp. (collectively, the "BNP Paribas Defendants")—who redeemed money from feeder funds that invested with BLMIS.  *Picard v. BNP Paribas Arbitrage, SNC*, Adv. No. 11-02796 (SMB) (Bankr. S.D.N.Y. Nov. 3, 2011); *Picard v. BNP Paribas S.A.,* Adv. No. 12-01576 (SMB) (Bankr. S.D.N.Y. May 4, 2012); *Picard*

*v. Legacy Capital Ltd.,* Adv. No. 10-05286 (SMB) (Bankr. S.D.N.Y. Dec. 6, 2010); *Picard v. Oreades SICAV,* Adv. No. 10-05120 (SMB) (Bank. S.D.N.Y. Dec. 2, 2010); and *Picard v. Equity Trading Portfolio Ltd.,* Adv. No. 10-04457 (SMB) (Bank. S.D.N.Y. Dec. 1, 2010) (collectively, the "BNP Paribas Proceedings").

274.    Prior to the Compensation Period, the BNP Paribas Defendants filed motions to withdraw the reference, which were granted by Judge Rakoff and resulted in Common Briefing in the District Court. The BNP Paribas Defendants' motion to withdraw the reference included arguments about extraterritoriality and the good faith standard. As part of Common Briefing, the District Court issued the Extraterritoriality Opinion and Order and the Good Faith Standard Opinion and Order, and remanded the BNP Paribas Proceedings back to the Bankruptcy Court for further proceedings consistent with its opinions. *See* discussion *supra* Section IV(J)(a).

275.    Prior to the Compensation Period, under the Extraterritoriality Scheduling Order and stipulations modifying certain deadlines therein, B&H attorneys, on behalf of the Trustee, drafted and filed: (1) the Trustee's memorandum of law in opposition to the BNP Paribas Defendants' motion to dismiss based on extraterritoriality and in further support of his motion for leave to amend complaints, (2) the Trustee's supplemental memorandum of law in opposition to the BNP Paribas Defendants' motion to dismiss based on extraterritoriality and in further support of the trustee's motion for leave to amend complaints, and (3) the Trustee's proffered allegations pertaining to the extraterritoriality issue as to the BNP Paribas Defendants.

276.    During the Compensation Period, B&H attorneys, on behalf of the Trustee, reviewed the District Court's and the Bankruptcy Court's opinions as they relate to the BNP Paribas Proceedings and other Madoff-related litigation pending before the Bankruptcy Court. In addition, B&H attorneys continued to prepare for discovery and trial.

## V.    COMPENSATION REQUESTED

277.    This Application has been prepared in accordance with the Amended Guidelines for Fees and Disbursements of Professionals in Southern District of New York Bankruptcy Cases adopted by the Court on April 19, 1995 (the "Local Guidelines") and the Second Amended Compensation Order.    Pursuant to the Local Guidelines, the declaration of David J. Sheehan, Esq., regarding compliance with the same is attached hereto as Exhibit A.

278.    The Trustee, and B&H, as counsel to the Trustee, expended 82,419.20 hours in the rendition of professional and paraprofessional services during the Compensation Period, resulting in an average hourly discounted rate of $410.97 for fees incurred.[12]    The blended attorney rate is $489.86.

279.    Prior to filing this Application, in accordance with the Second Amended Compensation Order, the Trustee, and B&H, as counsel to the Trustee, provided to SIPC: (i) monthly fee statements setting forth the Trustee's and B&H's fees for services rendered and expenses incurred during the Compensation Period, and (ii) a draft of this Application.    In connection with the four monthly statements, the Trustee and B&H voluntarily adjusted their fees by writing off $1,130,621.70 (not including the 10% public interest discount, as discussed below), and wrote off expenses customarily charged to other clients in the amount of $302,031.01.

280.    At SIPC's request, the Trustee's and B&H's fees in this case reflect a 10% public interest discount from their standard rates.    This discount has resulted in an additional voluntary reduction during the Compensation Period of $3,763,503.62.    The requested fees are reasonable

---

[12] In order to streamline the invoices and related fee applications, as of June 1, 2011, the invoice amounts reflect combined amounts for the Trustee and B&H.

based on the customary compensation charged by comparably skilled practitioners in comparable bankruptcy and non-bankruptcy cases in a competitive national legal market.

281.    Pursuant to the Second Amended Compensation Order, on May 19, 2016, the Trustee, and B&H, as counsel to the Trustee, provided SIPC with their statements of fees and expenses incurred in connection with this case regarding the period from April 1, 2016 through April 30, 2016 (the "April Fee Statement").    The April Fee Statement reflected fees of $9,065,156.30 and expenses of $55,195.52.  SIPC's staff requested certain adjustments and made suggestions, which were adopted by the Trustee and B&H.  After such adjustments, the April Fee Statement reflected fees of $8,158,640.67 and expenses of $54,042.56.  After subtracting the Court-ordered 10% holdback, SIPC advanced $7,342,776.60 for services rendered and $54,042.56 for expenses incurred by the Trustee and B&H.

282.    Pursuant to the Second Amended Compensation Order, on June 20, 2016, the Trustee, and B&H, as counsel to the Trustee, provided SIPC with their statements of fees and expenses incurred in connection with this case regarding the period from May 1, 2016 through May 31, 2016 (the "May Fee Statement").    The May Fee Statement reflected fees of $9,733,398.00 and expenses of $68,579.47.  SIPC's staff requested certain adjustments and made suggestions, which were adopted by the Trustee and B&H.  After such adjustments, the May Fee Statement reflected fees of $8,760,058.20 and expenses of $68,534.28.  After subtracting the Court-ordered 10% holdback, SIPC advanced $7,884,052.38 for services rendered and $68,534.28 for expenses incurred by the Trustee and B&H.

283.    Pursuant to the Second Amended Compensation Order, on July 20, 2016, the Trustee, and B&H, as counsel to the Trustee, provided SIPC with their statements of fees and expenses incurred in connection with this case regarding the period from June 1, 2016 through

June 30, 2016 (the "June Fee Statement"). The June Fee Statement reflected fees of $9,869,682.80 and expenses of $52,232.17. SIPC's staff requested certain adjustments and made suggestions, which were adopted by the Trustee and B&H. After such adjustments, the June Fee Statement reflected fees of $8,882,714.52 and expenses of $51,900.27. After subtracting the Court-ordered 10% holdback, SIPC advanced $7,994,443.07 for services rendered and $51,900.27 for expenses incurred by the Trustee and B&H.

284. Pursuant to the Second Amended Compensation Order, on August 18, 2016, the Trustee, and B&H, as counsel to the Trustee, provided SIPC with their statements of fees and expenses incurred in connection with this case regarding the period from July 1, 2016 through July 31, 2016 (the "July Fee Statement"). The July Fee Statement reflected fees of $8,966,799.10 and expenses of $136,956.29. SIPC's staff requested certain adjustments and made suggestions, which were adopted by the Trustee and B&H. After such adjustments, the July Fee Statement reflected fees of $8,070,119.19 and expenses of $136,422.47. After subtracting the Court-ordered 10% holdback, SIPC advanced $7,263,107.27 for services rendered and $136,422.47 for expenses incurred by the Trustee and B&H.

285. Exhibit B annexed hereto is a schedule of the B&H professionals, including the Trustee, and B&H paraprofessionals who have provided services for the Trustee during the Compensation Period, the capacity in which each individual is employed by B&H, the year in which each attorney was licensed to practice law, the hourly billing rate charged by B&H for services provided by each individual, the aggregate number of hours billed by each individual, and the total compensation requested for each individual, prior to the 10% discount.

286. Exhibit C annexed hereto is a summary of compensation by work task code and matter number for total number of hours expended and total fees for services rendered by B&H

professionals and paraprofessionals.  The 10% discount is taken off the total cumulative amount billed, as reflected on Exhibit C.

287.    Exhibit D annexed hereto provides a schedule of the expenses for which reimbursement is requested by B&H.

288.    There is no agreement or understanding among the Trustee, B&H, and any other person, other than members of B&H, for sharing of compensation to be received for services rendered in this case.  No agreement or understanding prohibited by 18 U.S.C. § 155 has been made or will be made by the Trustee or B&H.

289.    To the extent that time or disbursement charges for services rendered or disbursements incurred relate to the Compensation Period, but were not classified or processed prior to the preparation of this Application, the Trustee and B&H reserve the right to request additional compensation for such services and reimbursement of such expenses in a future application.

## VI.    REQUEST FOR INTERIM COMPENSATION SHOULD BE GRANTED

290.    Section 78eee(b)(5)(A) of SIPA provides in pertinent part that, upon appropriate application and after a hearing, "[t]he court shall grant reasonable compensation for services rendered and reimbursement for proper costs and expenses incurred . . . by a trustee, and by the attorney for such a trustee . . . ."  Section 78eee(b)(5)(C) of SIPA specifically establishes SIPC's role in connection with applications for compensation and the consideration the Court should give to SIPC's recommendation concerning fees.  That section provides as follows:

> In any case in which such allowances are to be paid by SIPC without reasonable expectation of recoupment thereof as provided in this chapter and there is no difference between the amounts requested and the amounts recommended by SIPC, the court shall award the amounts recommended by SIPC.  In determining the amount of allowances in all other cases, the court shall give due consideration to the nature, extent, and value of the services rendered, and shall place considerable reliance on the recommendation of SIPC.

SIPA § 78eee(b)(5)(C).

291.    To the extent the general estate is insufficient to pay such allowances as an expense of administration, § 78eee(b)(5)(E) of SIPA requires SIPC to advance the funds necessary to pay the compensation of the Trustee and B&H.  *See* SIPA § 78fff-3(b)(2).

292.    While the Trustee has recovered, or entered into agreements to recover, approximately $11.203 billion as of July 31, 2016, a significant portion of these funds must be held in reserve pending final resolution of several appeals and disputes.

293.    Accordingly, the Trustee has determined that, at this time, he has no reasonable expectation that the general estate will be sufficient to make a distribution to general creditors or pay administrative expenses.  The Trustee has been advised by SIPC that it concurs in this belief. Any fees and expenses allowed by this Court will be paid from advances by SIPC without any reasonable expectation by SIPC of recoupment thereof.

294.    Therefore, with respect to this Application, the Trustee, and B&H, as counsel to the Trustee, request that consistent with § 78eee(b)(5)(C) of SIPA, the Court "shall award the amounts recommended by SIPC."  See *In re Bell & Beckwith*, 112 B.R. 876 (Bankr. N.D. Ohio 1990).  SIPC will file its recommendation to the Court with respect to this Application prior to the hearing scheduled to be held on December 21, 2016.

295.    The Trustee, and B&H, as counsel to the Trustee, submit that the request for interim allowance of compensation and expenses made by this Application is reasonable and complies with the provisions of the Bankruptcy Code governing applications for compensation and reimbursement of expenses, pursuant to § 78eee(b)(5) of SIPA.

VII.    **CONCLUSION**

The Trustee, and B&H, as counsel to the Trustee, respectfully submit that the services rendered during the Compensation Period and accomplishments to date merit the approval of the fees and disbursements requested herein, and respectfully requests that the Court enter Orders as follows: (i) allowing and awarding $33,871,532.58 (of which $30,484,379.32 is to be paid currently and $3,387,153.26 is to be held back through the conclusion of the liquidation period or until further order of the Court) as an interim payment for professional services rendered by the Trustee and B&H during the Compensation Period, and $310,899.58 as reimbursement of the actual and necessary costs and expenses incurred by the Trustee and B&H in connection with the rendition of such services; and (ii) granting such other and further relief as the Court may deem just and proper.

Dated: New York, New York
        November 18, 2016

Respectfully submitted,

**BAKER & HOSTETLER LLP**

By:  _s/ David J. Sheehan_
     Baker & Hostetler LLP
     45 Rockefeller Plaza
     New York, New York 10111
     Telephone: (212) 589-4200
     Facsimile: (212) 589-4201
     Irving H. Picard
     Email: ipicard@bakerlaw.com
     David J. Sheehan
     Email: dsheehan@bakerlaw.com
     Seanna R. Brown
     Email: sbrown@bakerlaw.com
     Heather R. Wlodek
     Email: hwlodek@bakerlaw.com

*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Estate of Bernard L. Madoff*