# EXHIBIT D

# BERNARD L. MADOFF INVESTMENT SECURITIES LLC

In Liquidation

## DECEMBER 11, 2008[1]

## NOTICE OF TRUSTEE'S DETERMINATION OF CLAIM

October 19, 2009

Aaron Blecker
50 Grist Mill Lane
Great Neck, New York 11023

Dear Mr. Blecker:

### PLEASE READ THIS NOTICE CAREFULLY.

The liquidation of the business of BERNARD L. MADOFF INVESTMENT SECURITIES LLC ("BLMIS") is being conducted by Irving H. Picard, Trustee under the Securities Investor Protection Act, 15 U.S.C. § 78aaa et seq. ("SIPA"), pursuant to an order entered on December 15, 2008 by the United States District Court for the Southern District of New York.

The Trustee has made the following determination regarding your claim on BLMIS Account No. 1B0022 designated as Claim Number 003907:

Your claim for securities is **DENIED**. No securities were ever purchased for your account.

Further, based on the Trustee's analysis, the amount of money you withdrew from your account at BLMIS (total of $261,633.94), as more fully set forth in Table 1 annexed hereto and made a part hereof, is greater than the amount that was deposited with BLMIS for the purchase of securities (total of $200,000.00). As noted, no securities were ever purchased by BLMIS for your account. Any and all profits reported to you by BLMIS on account statements were fictitious.

---

[1] Section 78lll(7)(B) of SIPA states that the filing date is "the date on which an application for a protective decree is filed under 78eee(a)(3)," except where the debtor is the subject of a proceeding pending before a United States court "in which a receiver, trustee, or liquidator for such debtor has been appointed and such proceeding was commenced before the date on which such application was filed, the term 'filing date' means the date on which such proceeding was commenced." Section 78lll(7)(B). Thus, even though the Application for a protective decree was filed on December 15, 2008, the Filing Date in this action is on December 11, 2008.

As reflected in Table 1, certain of the transfers into or out of your account have been adjusted. As part of the Trustee's analysis of accounts, the Trustee has assessed accounts based on a money in/money out analysis (i.e., has the investor deposited more or less than he or she withdrew from BLMIS). This analysis allows the Trustee to determine which part of an account's balance is originally invested principal and which part is fictitious gains that were fabricated by BLMIS. A customer's allowed claim is based on the amount of principal in the customer's account.

Whenever a customer requested a transfer from one account to another, the Trustee analyzed whether the transferor account had principal in the account at the time of the transfer. The available principal in the account was transferred to and credited in the transferee account. Thus, the reason that the adjusted amount of transferred deposits or withdrawals in Table 1 is less than the purported transfer amount is that the transferor account did not have sufficient principal available to effectuate the full transfer. The difference between the purported transfer amount and the adjusted transfer amount is the amount of fictitious gain that was transferred to or from your account. Under the money in/money out analysis, the Trustee does not give credit for fictitious gains in settling your allowed claim.

Since there were no profits to use either to purchase securities or to pay you any money beyond the amount that was deposited into your BLMIS account, the amount of money you received in excess of the deposits in your account ($61,633.94) was taken from other customers and given to you. Accordingly, because you have withdrawn more than was deposited into your account, you do not have a positive "net equity" in your account and you are not entitled to an allowed claim in the BLMIS liquidation proceeding. Therefore, your claim is **DENIED** in its entirety.

Should a final and unappealable court order determine that the Trustee is incorrect in his interpretation of "net equity" and its corresponding application to the determination of customer claims, the Trustee will be bound by that order and will apply it retroactively to all previously determined customer claims in accordance with the Court's order. Nothing in this Notice of Trustee's Determination of Claim shall be construed as a waiver of any rights or claims held by you in having your customer claim re-determined in accordance with any such Court order.

Nothing in this Notice of Trustee's Determination of Claim shall be construed as a waiver of any rights or claims held by the Trustee against you.

**PLEASE TAKE NOTICE:** If you disagree with this determination and desire a hearing before Bankruptcy Judge Burton R. Lifland, you **MUST** file your written opposition, setting forth the grounds for your disagreement, referencing Bankruptcy Case No. 08-1789 (BRL) and attaching copies of any documents in support of your position, with the United States Bankruptcy Court and the Trustee within **THIRTY DAYS** after October 19, 2009, the date on which the Trustee mailed this notice.

**PLEASE TAKE FURTHER NOTICE:** If you do not properly and timely file a written opposition, the Trustee's determination with respect to your claim will be deemed confirmed by the Court and binding on you.

2

**PLEASE TAKE FURTHER NOTICE:** If you properly and timely file a written opposition, a hearing date for this controversy will be obtained by the Trustee and you will be notified of that hearing date. Your failure to appear personally or through counsel at such hearing will result in the Trustee's determination with respect to your claim being confirmed by the Court and binding on you.

**PLEASE TAKE FURTHER NOTICE:** You must mail your opposition, if any, in accordance with the above procedure, to each of the following addresses:

> Clerk of the United States Bankruptcy Court for
> the Southern District of New York
> One Bowling Green
> New York, New York 10004

> and

> Irving H. Picard, Trustee
> c/o Baker & Hostetler LLP
> 45 Rockefeller Plaza
> New York, New York 10111

_____
Irving H. Picard

Trustee for the Liquidation of the Business of
Bernard L. Madoff Investment Securities LLC

3

| DATE | TRANSACTION DESCRIPTION | AMOUNT | ADJUSTED AMOUNT |
|---|---|---|---|
| 9/22/1986 | CHECK | $50,000.00 | $50,000.00 |
| 9/24/1986 | CHECK | $50,000.00 | $50,000.00 |
| 12/16/1992 | CHECK | $100,000.00 | $100,000.00 |
| **Total Deposits:** | | $200,000.00 | $200,000.00 |

| DATE | TRANSACTION DESCRIPTION | AMOUNT | ADJUSTED AMOUNT |
|---|---|---|---|
| 11/24/1986 | CHECK TRW | ($2,806.51) | ($2,806.51) |
| 2/5/1987 | CHECK HOLIDAY CORP | ($4,002.50) | ($4,002.50) |
| 4/7/1987 | CHECK ANHEUSER BUSCH | ($4,248.04) | ($4,248.04) |
| 6/10/1987 | CHECK TRANSCO CO | ($3,744.78) | ($3,744.78) |
| 8/21/1987 | CHECK AGS COMPUTERS | ($3,976.71) | ($3,976.71) |
| 10/26/1987 | CHECK GROLIER | ($4,197.55) | ($4,197.55) |
| 1/26/1988 | CHECK BRISTOL MYERS | ($3,737.56) | ($3,737.56) |
| 3/30/1988 | CHECK ADVANCED SYSTEMS | ($3,998.88) | ($3,998.88) |
| 5/25/1988 | CHECK INTERCO | ($4,244.88) | ($4,244.88) |
| 8/8/1988 | CHECK AMFAC | ($3,751.97) | ($3,751.97) |
| 10/12/1988 | CHECK COMPAQ COMPUTERS | ($3,967.83) | ($3,967.83) |
| 12/5/1988 | CHECK PNC FINL | ($3,166.93) | ($3,166.93) |
| 2/3/1989 | CHECK GENERAL CINEMA | ($3,686.89) | ($3,686.89) |
| 4/11/1989 | CHECK PHELPS | ($3,993.35) | ($3,993.35) |
| 6/20/1989 | CHECK DURR FILLAUER MED | ($4,205.41) | ($4,205.41) |
| 8/18/1989 | CHECK INLAND | ($3,753.39) | ($3,753.39) |
| 10/20/1989 | CHECK AMERICAN MAIZE | ($3,990.11) | ($3,990.11) |
| 12/13/1989 | CHECK FOR ?? | ($5,187.29) | ($5,187.29) |
| 2/16/1990 | CHECK WESTINGHOUSE | ($3,682.26) | ($3,682.26) |
| 4/20/1990 | CHECK SEAGULL | ($4,001.00) | ($4,001.00) |
| 6/25/1990 | CHECK SUN MICROSYSTEMS | ($4,228.00) | ($4,228.00) |
| 8/28/1990 | CHECK IMMUNEX | ($3,728.16) | ($3,728.16) |
| 11/5/1990 | CHECK AMERICAN FILM | ($4,003.50) | ($4,003.50) |
| 12/27/1990 | CHECK PFIZER | ($3,168.16) | ($3,168.16) |
| 3/7/1991 | CHECK MEDCO | ($3,742.71) | ($3,742.71) |
| 5/13/1991 | CHECK XOMA | ($3,495.60) | ($3,495.60) |
| 7/11/1991 | CHECK HEALTH SOUTH | ($3,230.02) | ($3,230.02) |
| 7/17/1991 | CXL CHECK 07/11/91 | $3,230.02 | $3,230.02 |
| 7/17/1991 | CHECK HEALTH SOUTH | ($3,230.02) | ($3,230.02) |
| 7/22/1991 | CHECK LIBERTY NATL | ($360.82) | ($360.82) |
| 9/5/1991 | CHECK THERMO | ($2,992.58) | ($2,992.58) |
| 11/13/1991 | CHECK CHAMBERS | ($3,474.14) | ($3,474.14) |

4

| Date | Description | Amount 1 | Amount 2 |
|---|---|---|---|
| 12/27/1991 | CHECK PHL CORP | ($2,451.50) | ($2,451.50) |
| 3/5/1992 | CHECK LIEBERT | ($3,969.02) | ($3,969.02) |
| 4/28/1992 | CHECK FLEET NORSTAR | ($2,606.03) | ($2,606.03) |
| 6/16/1992 | CHECK PEP BOYS | ($2,627.74) | ($2,627.74) |
| 8/21/1992 | CHECK HOME DEPOT | ($3,929.33) | ($3,929.33) |
| 10/6/1992 | CHECK TIME WARNER | ($2,629.25) | ($2,629.25) |
| 11/12/1992 | CHECK AL LABS | ($1,097.03) | ($1,097.03) |
| 1/6/1993 | CHECK STATE STREET | ($2,678.07) | ($2,678.07) |
| 2/18/1993 | CHECK AMERICAN BRANDS | ($4,378.59) | ($4,378.59) |
| 3/17/1993 | CHECK MBNA | ($3,753.00) | ($3,753.00) |
| 5/20/1993 | CHECK DSC COMM | ($7,999.38) | ($7,999.38) |
| 6/28/1993 | CHECK SOUTHWESTERN BELL | ($3,511.00) | ($3,511.00) |
| 8/23/1993 | CHECK ANADARKO | ($6,554.68) | ($6,554.68) |
| 9/28/1993 | CHECK ENRON | ($3,251.37) | ($3,251.37) |
| 11/4/1993 | CHECK SNAPPLE | ($3,505.00) | ($3,505.00) |
| 12/14/1993 | CHECK HUFFY | ($5,634.06) | ($5,634.06) |
| 2/8/1994 | CHECK AMERITECH | ($2,504.50) | ($2,504.50) |
| 4/15/1994 | CHECK COMCAST | ($7,019.53) | ($7,019.53) |
| 5/19/1994 | CHECK AUTOZONE | ($1,250.12) | ($1,250.12) |
| 6/22/1994 | CHECK GEN ELECTRIC | ($2,256.12) | ($2,256.12) |
| 8/11/1994 | CHECK GEN MOTORS | ($4,904.17) | ($4,904.17) |
| 9/19/1994 | CHECK CATERPILLAR | ($2,012.50) | ($2,012.50) |
| 11/14/1994 | CHECK HUDSON FOODS | ($4,134.50) | ($4,134.50) |
| 12/14/1994 | CHECK AUTO DESK | ($2,264.00) | ($2,264.00) |
| 2/7/1995 | CHECK PACIFIC | ($2,517.75) | ($2,517.75) |
| 3/14/1995 | CHECK ALUMINUM | ($2,784.00) | ($2,784.00) |
| 5/15/1995 | CHECK HOME DEPOT | ($7,062.51) | ($7,062.51) |
| 6/16/1995 | CHECK MICRON | ($1,265.00) | ($1,265.00) |
| 7/27/1995 | CHECK KULICKE & SOFFA | ($5,678.84) | ($5,678.84) |
| 9/13/1995 | CHECK TEXAS INSTRUMENT | ($1,768.75) | ($1,768.75) |
| 10/18/1995 | CHECK SAFEGUARD | ($2,280.63) | ($2,280.63) |
| 11/15/1995 | CHECK APPLIED MATERIALS | ($2,535.00) | ($2,535.00) |
| 1/4/1996 | CHECK DEERE & CO | ($1,018.62) | ($1,018.62) |
| 2/14/1996 | CHECK FED NAT'L MORTGAGE | ($2,794.50) | ($2,794.50) |
| 4/4/1996 | CHECK GEN MOTORS CORP | ($4,585.67) | ($4,585.67) |
| 5/23/1996 | CHECK CENTOCOR | ($3,808.16) | ($3,808.16) |
| 6/26/1996 | CHECK COCA COLA | ($3,822.75) | ($3,822.75) |
| 7/30/1996 | CHECK CHRYSLER CORP | ($1,788.00) | ($1,788.00) |
| 9/5/1996 | CHECK SAFEGUARD | ($3,838.25) | ($3,838.25) |
| 10/7/1996 | CHECK HERSHEY FOODS | ($257.87) | ($257.87) |
| 10/16/1996 | CHECK JONES APPAREL | ($2,293.75) | ($2,293.75) |
| 11/12/1996 | CHECK NEWBRIDGE NETWORKS | ($2,818.62) | ($2,818.62) |
| 12/17/1996 | CHECK FIRST USA | ($2,301.25) | ($2,301.25) |
| 2/19/1997 | CHECK DEAN WITTER | ($4,092.50) | ($4,092.50) |
| 3/26/1997 | CHECK NATIONS BANK | ($2,310.50) | ($2,310.50) |
| 4/24/1997 | TRANS TO 1B015630 | ($206,528.75) | $0.00 |
| 4/29/1997 | CHECK PHILIP MORRIS | ($2,323.00) | ($2,323.00) |

5

| | | | |
|---|---|---|---|
| **Total Withdrawals:** | | ($468,162.69) | ($261,633.94) |
| | | | |
| **Total deposits less withdrawals:** | | ($268,162.69) | ($61,633.94) |

February 23, 2009

Dear Mr. Picard –

   Like so many other victims, I have lost most of my life savings by directly investing with Bernard Madoff (although I may be the oldest at nearly 98). For many years, until early 2007 I had two accounts – one, Arthur and Sophie Blecker (misspelled Sofie on the account), and another Aaron Blecker. (I go by both names. See enclosed account statements.) The accounts were under different names, opened at separate times to serve separate purposes. I personally submitted separate schedules each year for each account, detailing every stock transaction. (I have some of that paperwork still in cartons and could supply it.) Sometime early in 2007, someone from Madoff told me they would no longer handle accounts under $1million dollars. They had accommodated me for years, because Bill Alpern, the brother of Bernard Madoff's father in law, was a dear friend. In May 2007 when they forced me to merge them, as the submitted statements show, Aaron Blecker – 1-B0156-3-0 – had $753,107.40. The other, Arthur Blecker & Sofie Blecker –1-B0157-3-0 – had $1,480,131.54 (see attached statement.) I am filing a SIPA claim for each.

   Forced to combine them, turning 95, we were setting up trusts for peace of mind and satisfaction at knowing that my decades of hard work as a solo practitioner would ensure that our children and their children struggled less than I, and the little ones' college education was assured. So, as Madoff demanded, I combined the two accounts into one, under the new name Aaron Blecker Rev Trust U/A/D 3/15/07. (See June 30, 2007 statement.) On December 11, 2008, when the fraud was announced, the account as of November 30, 2008 had approximately 2.6 million dollars. (see attached statement.)

   Thus I am filing separate claims for $500,000 protection each for Aaron Blecker, and Arthur Blecker and Sofie Blecker. If you reject these separate claims for separate accounts I had in 2007 and was compelled by Madoff to abandon, of course I am filing in the alternative for SIPA protection for Aaron Blecker Revised Trust which had $2.6 million as of Dec. 11, 2008.

   I hope you will agree that both original accounts are legally protected. But if you do reject that claim, would you please inform me quickly and act quickly on my indisputable claim re the later trust account. I never withdrew a penny. My wife Sophie died this past October – my consolation has been that she was spared this financial shock that mocks assurances I proudly gave my children, who invested their own money: "Don't worry, there's always Madoff."

   Hoping to be informed of my status and reimbursed quickly, I am


   Aaron Blecker

# CUSTOMER CLAIM

Claim Number _____

Date Received _____

## BERNARD L. MADOFF INVESTMENT SECURITIES LLC

In Liquidation

## DECEMBER 11, 2008

Irving H. Picard, Esq.
Trustee for Bernard L. Madoff Investment Securities LLC
Claims Processing Center
2100 McKinney Ave., Suite 800
Dallas, TX 75201

Provide your office and home telephone no.

~~OFFICE~~ Home: 516- 466 0095

~~HOME~~: _____

Account Number: 1B0022
AARON BLECKER
50 GRIST MILL LANE
GREAT NECK, NY 11023

Taxpayer I.D. Number (Social Security No.)
_____

(If incorrect, please change)

**NOTE:** BEFORE COMPLETING THIS CLAIM FORM, BE SURE TO READ CAREFULLY THE ACCOMPANYING INSTRUCTION SHEET. A SEPARATE CLAIM FORM SHOULD BE FILED FOR EACH ACCOUNT AND, TO RECEIVE THE FULL PROTECTION AFFORDED UNDER SIPA, ALL CUSTOMER CLAIMS MUST BE RECEIVED BY THE TRUSTEE ON OR BEFORE March 4, 2009. CLAIMS RECEIVED AFTER THAT DATE, BUT ON OR BEFORE July 2, 2009, WILL BE SUBJECT TO DELAYED PROCESSING AND TO BEING SATISFIED ON TERMS LESS FAVORABLE TO THE CLAIMANT. PLEASE SEND YOUR CLAIM FORM BY CERTIFIED MAIL - RETURN RECEIPT REQUESTED.

*******************************************************************

1. Claim for money balances as of **December 11, 2008**:
   a. The Broker owes me a Credit (Cr.) Balance of      $_____
   b. I owe the Broker a Debit (Dr.) Balance of         $_____

502180406                                     1

    c.    If you wish to repay the Debit Balance,

please insert the amount you wish to repay and

attach a check payable to "Irving H. Picard, Esq.,

Trustee for Bernard L. Madoff Investment Securities LLC."

If you wish to make a payment, **it must be enclosed**

with this claim form.    $ _NONE_

    d.    If balance is zero, insert "None."

2.    Claim for securities as of **December 11, 2008**:

**PLEASE DO NOT CLAIM ANY SECURITIES YOU HAVE IN YOUR POSSESSION.**

|   | YES | NO |
|---|---|---|
| a. The Broker owes me securities | Yes |   |
| b. I owe the Broker securities |   | No |

c.    If yes to either, please list below:

| Date of Transaction (trade date) | Name of Security | The Broker Owes Me (Long) | I Owe the Broker (Short) |
|---|---|---|---|
|   | See Statement attached |   |   |
|   | 5/31/07 - See Letter | 753,107.40 |   |
|   | of never withdrew |   |   |
|   | any funds |   |   |

**Proper documentation can speed the review, allowance and satisfaction of your claim and shorten the time required to deliver your securities and cash to you. Please enclose, if possible, copies of your last account statement and purchase or sale confirmations and checks which relate to the securities or cash you claim, and any other documentation, such as correspondence, which you believe will be of assistance in processing your claim. In particular, you should provide all documentation (such as cancelled checks, receipts from the Debtor, proof of wire transfers, etc.) of your deposits of cash or securities with the Debtor from as far back as you have documentation. You should also provide all documentation or**

**information regarding any withdrawals you have ever made or payments received from the Debtor.**

Please explain any differences between the securities or cash claimed and the cash balance and securities positions on your last account statement. If, at any time, you complained in writing about the handling of your account to any person or entity or regulatory authority, and the complaint relates to the cash and/or securities that you are now seeking, please be sure to provide with your claim copies of the complaint and all related correspondence, as well as copies of any replies that you received.

**PLEASE CHECK THE APPROPRIATE ANSWER FOR ITEMS 3 THROUGH 9.**

NOTE:   IF "YES" IS MARKED ON ANY ITEM, PROVIDE A DETAILED EXPLANATION ON A SIGNED ATTACHMENT. IF SUFFICIENT DETAILS ARE NOT PROVIDED, THIS CLAIM FORM WILL BE RETURNED FOR YOUR COMPLETION.

|   |   | YES | NO |
|---|---|---|---|
| 3. | Has there been any change in your account since December 11, 2008? If so, please explain. |   | No |
| 4. | Are you or were you a director, officer, partner, shareholder, lender to or capital contributor of the broker? |   | No |
| 5. | Are or were you a person who, directly or indirectly and through agreement or otherwise, exercised or had the power to exercise a controlling influence over the management or policies of the broker? |   | No |
| 6. | Are you related to, or do you have any business venture with, any of the persons specified in "4" above, or any employee or other person associated in any way with the broker? If so, give name(s) |   | No |
| 7. | Is this claim being filed by or on behalf of a broker or dealer or a bank? If so, provide documentation with respect to each public customer on whose behalf you are claiming. |   | No |
| 8. | Have you ever given any discretionary authority to any person to execute securities transactions with or through the broker on your behalf? Give names, addresses and phone numbers. |   | No |

502180406                                      3

9. Have you or any member of your family ever filed a claim under the Securities Investor Protection Act of 1970? If so, give name of that broker. _____ No

Please list the full name and address of anyone assisting you in the preparation of this claim form: My Son Robert Blecker 15 Bayberry Ridge, Roslyn NY 11576.

If you cannot compute the amount of your claim, you may file an estimated claim. In that case, please indicate your claim is an estimated claim.

**IT IS A VIOLATION OF FEDERAL LAW TO FILE A FRAUDULENT CLAIM. CONVICTION CAN RESULT IN A FINE OF NOT MORE THAN $50,000 OR IMPRISONMENT FOR NOT MORE THAN FIVE YEARS OR BOTH.**

**THE FOREGOING CLAIM IS TRUE AND ACCURATE TO THE BEST OF MY INFORMATION AND BELIEF.**

Date _July 2, 2009_   Signature _Aaron Blecker_

Date _____   Signature _____

(If ownership of the account is shared, all must sign above. Give each owner's name, address, phone number, and extent of ownership on a signed separate sheet. If other than a personal account, e.g., corporate, trustee, custodian, etc., also state your capacity and authority. Please supply the trust agreement or other proof of authority.)

This customer claim form must be completed and mailed promptly, together with supporting documentation, etc. to:

Irving H. Picard, Esq.,
Trustee for Bernard L. Madoff Investment Securities LLC
Claims Processing Center
2100 McKinney Ave., Suite 800
Dallas, TX 75201

502180406                                    4



FedEx Kinkos
800 Northern Boulevard
Great Neck, NY 11021
516-829-7390 (P)
516-829-7399 (F)

1/3/09

My wife & I were among the early investors in Bernard Madoff Securities. We had confidence in him & looked forward to what we thought would be a good return. That is why we left our investments with him — did not withdraw any funds. That is why we are surprised when we received your letter which said we made our checks to

[illegible] our investment
We received a statement
each month showing the stocks
he had purchased & sold. Never
in all that time did any statement
show withdrawal of checks

These checks must have
been [crossed out] for family members of
the Madoff family but not mine.
Would it be possible to check
with the Payees of these checks
& ask which account was
credited? For whose accounts
were these payments made?

All statements showed
the balance in my account
— my equity which was
Substantial — no money was
withdrawn to reduce my
investment

I am 98 years of
age. It is tragic that at
my age I have to be concerned
that I would have enough funds
to live on      Aaron Blecker