# EXHIBIT O

Page 1

1    UNITED STATES BANKRUPTCY COURT

2    SOUTHERN DISTRICT OF NEW YORK

3    Case No. 08-99000-smb

4    - - - - - - - - - - - - - - - - - - - - - - - - - - x

5    In the Matter of:

6    BERNARD L. MADOFF,

7                    Debtor.

8    - - - - - - - - - - - - - - - - - - - - - - - - - - x

9    Adv. Case No. 09-01503-smb

10   - - - - - - - - - - - - - - - - - - - - - - - - - - x

11   IRVING H. PICARD, Trustee for the Liquidation of Bernard L.

12   Madoff Investment Securities LLC,

13                    Plaintiff,

14            v.

15   MADOFF et al,

16                    Defendants.

17   - - - - - - - - - - - - - - - - - - - - - - - - - - x

18   Adv. Case No. 08-01789-smb

19   - - - - - - - - - - - - - - - - - - - - - - - - - - x

20   SECURITIES INVESTOR PROTECTION CORPORATION

21                    Plaintiff,

22            v.

23   BERNARD L. MADOFF INVESTMENT SECURITIES, LLC et al,

24                    Defendants.

25   - - - - - - - - - - - - - - - - - - - - - - - - - - x



Page 2

1    Adv. Case No. 10-04891-smb

2    - - - - - - - - - - - - - - - - - - - - - - - - - - - x

3    IRVING H. PICARD, Trustee for the Liquidation of Bernard L.

4    Madoff Investment Securities LLC,

5                    Plaintiff,

6           v.

7    THE ROBERT AUERBACH REVOCABLE TRUST, THE JOYCE C. AUERBACH

8    REVOCABLE TRUST, ROBERT AUERBACH, individually, and

9    JOYCE C. AUERBACH, individually, as Trustee of the Robert

10   Auerbach Revocable Trust, and as Trustee of the Joyce C.

11   Auerbach Revocable Trust,

12                   Defendants.

13   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

14   Adv. Case No. 10-04918-smb

15   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

16   IRVING H. PICARD, Trustee for the Liquidation of Bernard L.

17   Madoff Investment Securities LLC,

18                   Plaintiff,

19          v.

20   Ellen Bernfeld,

21                   Defendant.

22   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

23

24

25



Page 3

1    - - - - - - - - - - - - - - - - - - - - - - - - - - x

2    Adv. Case No. 10-04283-smb

3    - - - - - - - - - - - - - - - - - - - - - - - - - - x

4    IRVING H. PICARD, Trustee for the Liquidation of Bernard L.

5    Madoff Investment Securities LLC,

6                    Plaintiff,

7            v.

8    STEVEN MENDELOW et al,

9                    Defendants.

10   - - - - - - - - - - - - - - - - - - - - - - - - - - x

11                   U.S. Bankruptcy Court

12                   One Bowling Green

13                   New York, NY  10004

14                   February 24, 2016

15                   10:16 AM

16

17

18

19

20

21

22

23   B E F O R E :

24   HON STUART M. BERNSTEIN

25   U.S. BANKRUPTCY JUDGE

Page 4

1    Hearing re:  Chambers Conference, Adv. Case No. 09-01503-smb

2

3    Hearing re:  Motion to Allow Customer Claim of Aaron

4    Blecker, Adv. Case No. 08-01789-smb

5

6    Hearing re:  Trustees Motion and Memorandum to Affirm His

7    Determinations Denying Claims of Claimants Holding Interests

8    in Black River Associates LP, MOT Family Investors, LP,

9    Rothschild Family Partnership, and Ostrin Family

10   Partnership, Adv. Case No. 08-01789-smb

11

12   Hearing re:  Final Pre-Trial Conference, Adv. Case No. 10-

13   04891-smb

14

15   Hearing re:  Discovery Conference Pursuant to Local Bankr.

16   R. 7007-1(b), Adv. Case No. 10-04918 (also applies to Adv.

17   P. Nos. 10-5143 & 10-4841)

18

19   Hearing re:  Trustee's Motion for Leave to Amend, Adv. Case

20   No. 10-04283-smb

21

22   Hearing re:  Discovery conference pursuant to Local Rule

23   Bankruptcy 7007-1(b), Adv. Case No. 10-04283-smb

24

25   Transcribed by:  Sonya Ledanski Hyde

1    A P P E A R A N C E S :

2

3    CHAITMAN LLP

4         Attorney for Blecker

5         465 Park Avenue

6         New York, NY 10022

7

8    BY:   HELEN DAVIS CHAITMAN, ESQ.

9

10   BAKER HOSTETLER

11        Attorney for the Trustee

12        45 Rockefeller Plaza

13        New York, NY 10111

14

15   BY:   SEANNA BROWN

16        GEORGE KLIDONAS

17        NICHOLAS J. CREMONA

18        DEAN D. HUNT

19        FARRELL A. HOCHMUTH

20        JONATHAN B. NEW

21        ROBERTSON D. BECKERLEGGE

22

23

24

25

1    SECURITIES INVESTOR PROTECTION CORPORATION

2         1667 K Street, N.W., Suite 1000

3         Washington, DC 20006

4

5    BY:  KEVIN H. BELL

6

7    PRYOR CASHMAN LLP

8         Attorney for Patrice M. Auld, et al, (indiscernible)

9         Defendants

10        7 Times Square

11        New York, NY 10036

12

13   BY:  RICHARD LEVY, JR.

14

15   FOLKENFLIK & MCGERITY LLP

16        Attorney for Auerbach Trust, et al

17        1500 Broadway

18        New York, NY 10036

19

20   BY:  MAX FOLKENFLIK

21

22

23

24

25

1   WEDEEN & KAVANAGH

2        Attorney for 4041, 4981, 8514

3        41 Union Square West, Suite 325

4        New York, NY 10010

5

6   BY:  TIMOTHY WEDEEN, ESQ.

7

8   AKIN SOLBAKKEN LLP

9        Attorney for Mendelow et al

10        750 Lexington Avenue, 25th Floor

11        New York, NY 10022

12

13   BY:  ALEX REISEN

14        STANLEY ARKIN

15

16

17

18

19

20

21

22

23

24

25

1                    P R O C E E D I N G S

2           THE COURT:  Go ahead.

3           MS. CHAITMAN:  Good morning, Your Honor.  Helen

4    Davis Chairman on behalf of Aaron Blecker.  Mr. Blecker is

5    104 years old and he has been waiting since 2009 for the

6    trustee to fulfill his statutory obligation to pay SIPC

7    insurance.

8           We know from Bernard Madoff's declaration what we

9    know from basic common sense, an investment advisor does not

10   send a customer a check unless the customer asks for the

11   check and does so in writing.  Mr. Madoff attests to the

12   fact that he kept all such records and indeed the trustee

13   has such records and has produced letters from customers

14   asking for profit withdrawals --

15          THE COURT:  Can I ask you a question?  Are you

16   asking for a hearing or are you asking for determination

17   today that he's entitled to payment of his claim.

18          MS. CHAITMAN:  I think that there's no factual

19   dispute in the record.  There is not a single issue in

20   dispute because, number one, while the trustee says that Mr.

21   Madoff is not credible, he hasn't put in an affidavit from -

22   -

23          THE COURT:  But Mr. Madoff's affidavit, even by a

24   creditor is hearsay.  How can I grant a motion like that on

25   a hearsay affidavit?

Page 9

1          MS. CHAITMAN:  Mr. Picard has letters that

2    customers have written asking for withdrawals.  There is no

3    evidence that Mr. Blecker ever asked for a withdrawal.  You

4    have to --

5          THE COURT:  Can I ask you a question?  One thing I

6    can't figure out the trustee has raised.  He testified at

7    his deposition, which I read, that he never took any money

8    out of this account because it was such a great investment.

9    He leaves the money in there for between I think 15 and 5

10   years depending on -- and then at the end of the day he

11   pulls out $206,000.  He could have gotten more in a savings

12   account at today's rates.

13         MS. CHAITMAN:  Well, it's very interesting, Your

14   Honor, because when the trustee raised that issue I then

15   happened to look at the latest expert report that the

16   trustee has submitted on the assumption that he loses and

17   that Your Honor holds that the profit withdrawals, that

18   there's no documentary evidence for such as Blecker have to

19   be paid.

20         And in that report, the trustee's expert

21   calculates that the amount due to Mr. Blecker on this very

22   account is $558,868.

23         THE COURT:  I thought on this account, the 22

24   account everything was transferred out.

25         MS. CHAITMAN:  No, it's BO56.  But they were all -

Page 10

1    - they were transferred between them.

2           THE COURT:  So the expert says that he's entitled

3    to $586,000?

4           MS. CHAITMAN:  $558,868.  So that I think explains

5    the whole thing.  Now, we don't have access to those

6    records.  But the things that are not in dispute, Your

7    Honor, and they won't be in dispute, there is not a single

8    piece of paper in the trustee's possession which indicates

9    that Mr. Blecker ever requested a withdrawal.

10           THE COURT:  I understand that.  But according to

11   the expert, trustee's expert report, if you went back 10

12   years -- and I realize Mr. Blecker's so-called profit

13   withdrawals were before then, the expert has been able to

14   correlate nearly 100% that every profit withdrawal was

15   documented by other evidence that indicates that it was

16   actually in some sort of withdrawal distribution.

17           And I guess the trustee is asking me to

18   extrapolate those findings back to the beginning when maybe

19   the records aren't that good or maybe there are no records,

20   I don't know, or maybe the records -- there were records

21   that were lost and say that every time you see profit

22   withdrawal it's a withdrawal.  Why is it that some evidence

23   creates an issue effect?

24           MS. CHAITMAN:  It's not evidence and I'll tell you

25   why.  If you look at that same expert report, what the

1    expert said was if I take the period only from before

2    December 1998 when there was a different trading strategy,

3    this phenomenon of Check AT&T $1314.03, that phenomenon

4    stopped in 1998.  There were no profit withdrawals of that

5    kind.

6           What the trustee's expert did was say, well, we

7    have different kinds of withdrawals.  Yes, if a customer

8    writes a letter and says please send me $10,000 a month,

9    those correlated to checks to the customer.  But in the

10   period prior to 1998 before they had the bank records, that

11   very trustee said all I can do is confirm 50%.  With respect

12   to Blecker I can't confirm a single one.  And of that 50%,

13   Your Honor, the report has this many charts for each

14   account.

15           THE COURT:  Counsel is showing me about six

16   inches.

17           MS. CHAITMAN:  Oh, sorry.  Thank you.  And of

18   that, three and a half inches is normally (indiscernible).

19   So of the pre-1998 profit withdrawals, more than half of

20   them are Madoff's co-conspirator with whom Madoff was

21   exchanging billions of dollars on a daily basis.  So

22   ultimately, there's essentially no evidence that the trustee

23   has and this -- as I -- you know, from the cases I cited,

24   Your Honor, you don't establish a fact through a statistical

25   analysis because we all know, and it's proven by what

1   happened here just as Your Honor misunderstood the report,

2   the statistician who's paid to do something can play with

3   numbers and come up with everything.

4            THE COURT:  (indiscernible) expert witness.

5            MS. CHAITMAN:  I agree with you.  We don't need an

6   expert witness.  This is not a question of expert testimony.

7   Mr. Blecker was deposed.  The trustee had every opportunity

8   to challenge him.  He was 102 at the time he was deposed.

9   The trustee couldn't shake him.  We have no evidence

10   whatsoever.

11           We have the fact that right after this trading

12   strategy -- God knows what it was -- there was never a

13   withdrawal by Mr. Blecker even though he was aging.  So all

14   of the evidence that can ever be adduced proves that he

15   never took out any money and the trustee can't -- there's

16   nothing in SIPC which allows a trustee to deny to someone

17   where the evidence and the books and records prove that the

18   customer never took a withdrawal.

19           THE COURT:  Thank you.

20           MS. BROWN:  Your Honor, Seanna Brown on behalf of

21   the trustee.  Your Honor, I think Ms. Chaitman's argument

22   demonstrates why this court should adhere to the profit

23   withdrawal schedule that ordered last June.

24           She's arguing the merits of our expert reports and

25   what factual disputes exist.  And the court should evaluate

Page 13

1    those arguments on the basis of a full record, which is

2    precisely what the profit withdrawals order.

3              THE COURT:  Can I ask a question?

4              MS. BROWN:  Yes.

5              THE COURT:  You're going through this exercise of

6    getting experts.  Has anyone taken the deposition of a

7    person who worked the Madoff Securities and might know what

8    these profit withdrawals mean?

9              MS. BROWN:  We have not taken any depositions.  We

10   have evaluated the books and records of Madoff, including

11   the house -- excuse me, the BLMIS manual that relates to the

12   computer system through which these transactions were

13   recorded.  And that brings me to one point I do want to

14   emphasize.

15             THE COURT:  What does it show you about profit

16   withdrawals?

17             MS. BROWN:  So in that manual which is referenced

18   in both our brief and in the expert reports, it talks about

19   profit withdrawals, cash withdrawals and other types of

20   debits and credits and that are in the system.  And profit

21   withdrawals and cash withdrawals are both recorded as

22   debits, which is consistent with what's reflected on the

23   customer statements because these transactions,

24   contemporaneously, not after the fact, are treated as

25   deductions to the customer's reported equity balance at the

Page 14

1    time.

2          And that's one of the arguments we'd like to make

3    at our full hearing -- and I'm happy to say it now -- but

4    none of these -- all of these --

5          THE COURT:  Why don't you tell me why there's a

6    factual issue why this can't be decided on the evidence

7    that's been produced by Mr. Blecker.

8          MS. BROWN:  Okay, so there's several things.  For

9    one --

10         THE COURT:  I mean, it's sort of been presented as

11   a motion for summary judgment even though it isn't.

12         MS. BROWN:  Sure.  So Ms. Chaitman just referenced

13   that Mr. Blecker was entitled to a certain amount.  There is

14   no facts on the record as to what that amount is and we

15   should be allowed to develop those facts on a fuller record.

16         The other thing I want to point out is she point

17   to the fact that there's nothing SIPA that permits the

18   trustee to do this and that's not true.  Under 78fff-IIb,

19   net equity claims are only paid if they're ascertainable

20   from the books and records of the debtor.  We have, you

21   know, a 30-year, 30 to 40-year fraud here and we have

22   voluminous records.

23         So what our experts did, the trustee hired

24   forensic accounting experts to assist him in reconstructing

25   the books and records.  Once they were complete doing their

1   analysis and their forensic accounting work, they reached

2   their opinion which we want to present to you as part of the

3   profit withdrawal litigation and on the basis of those

4   opinions the trustee met his statutory obligations to

5   determine net equity in a certain manner.

6           It's up to the court to determine whether that

7   manner is consistent with SIPA and how that calculation

8   should be applied in any one case.  But that -- those issues

9   should be developed only on a full record after the court

10  has heard all of the evidence and argument and not on a one-

11  off claims motion with no support.

12          THE COURT:  But the evidence is that as to Mr.

13  Blecker, there's no backup to support the argument that the

14  PW (indiscernible).

15          MS. BROWN:  We disagree with that.  We disagree

16  with that for several reasons.

17          THE COURT:  What's the evidence other than the

18  extrapolation other than the expert findings to the pre-1998

19  period?

20          MS. BROWN:  Well, we think that evidence is

21  sufficient and we think that we should be entitled to

22  present the full record.

23          THE COURT:  I understand that part.

24          MS. BROWN:  But in addition to that, MR. Blecker

25  received contemporaneous statements.  The customer

Page 16

1    statements are reliable for the purposes of the cash-in and

2    cash-out transactions, including the profit withdrawal

3    transactions.  Mr. Blecker -- so as Your Honor pointed out

4    earlier today, Mr. Blecker invested $200,000.  Eleven years

5    later, the only amount that he had to transfer was $206,000

6    according to this statement.  That's all in the books and

7    records of the debtor.

8              There's no explanation from Mr. Blecker as to

9    where --

10             THE COURT:  There were no fictitious profits in

11   that account?

12             MS. BROWN:  There were fictitious profits that

13   were withdrawn and then some portion of that fictitious

14   profits was transferred to the other account.  So I think

15   there are -- we also have several documents that are year-

16   end BLMIS documents.  And what those documents show is that

17   the profit withdrawal transactions were reductions to his

18   net equity.

19             We also will rely upon the House 17 manual that I

20   referenced earlier, which is another record of the debtor.

21   And I'd like to point out that Mr. Blecker is also relying

22   upon the statements for purposes of his deposits.  He

23   doesn't -- you know, no one has records that go back 30

24   years for purposes of their deposits.  And the trustee is

25   relying on the cash transactions of those statements to

1    determine net equity, which is precisely what all of the

2    customers do for purposes of establishing their deposits.

3              Your Honor, if I may, I'd like to make one other

4    point with regard to Blecker.

5              THE COURT:  Go ahead.

6              MS. BROWN:  It's not on this particular issue, so

7    do you have any other questions about today?

8              THE COURT:  No.

9              MS. BROWN:  Okay.  So the last point I want to

10   make today that even if the court was inclined to go forward

11   on Mr. Blecker's claim today, he filed a claim of motion

12   with regard to account 1B0022.  The last transaction in that

13   account is an inner account transfer to account number

14   1B0156.

15             As Your Honor is aware Engelmayer recently

16   affirmed this court's opinion on the inter account transfer

17   issue.  And just last week Mr. Blecker filed a notice of

18   appeal to the 2nd Circuit on that issue.  So even if the

19   court was to hear Mr. Blecker's claim dispute today, there

20   can be no final order that can issue because that -- Mr.

21   Blecker's claim is involving an appear to the 2nd Circuit.

22             THE COURT:  I thought that there was no inter

23   account transfer into this 22 account, right?

24             MS. BROWN:  There is -- not.  There is --

25             THE COURT:  It's a cash deposit and I thought your

1    argument was even if he had money in the account it was

2    transferred out to an inter account transfer.

3              MS. BROWN:  It was.  So the value of this --

4              THE COURT: -- under any set of circumstances.

5              MS. BROWN:  That's correct.

6              THE COURT:  Yeah, I understand that.

7              MS. BROWN:  I suppose of the inter account

8    transfer decision were to come down a different way from the

9    2nd Circuit --

10             THE COURT:  But it wouldn't matter because there

11   was never an inter account transfer into this account.

12   Right?

13             MS. BROWN:  There was not one into B22.

14             THE COURT:  You agree that this account was funded

15   with cash.

16             MS. BROWN:  We do agree with that.

17             THE COURT:  Okay, so there was never an inter

18   account transfer and then he transferred out whatever he

19   had.

20             MS. BROWN: So you're right.  So the value of this

21   account is zero under any calculation.

22             THE COURT:  -- transferred $206,000 or $260,000

23   depending on --

24             MS. BROWN:  You're right.

25             THE COURT:  Right, all right.

Page 19

1          MS. BROWN:  Thank you, Your Honor.

2          THE COURT:  All right.  Let me hear from SIPC and

3    then I'll hear from you, Ms. Chaitman.

4          MR. BELL:  Your Honor, there are two orders that

5    pertain here.  One is the claims procedure order with regard

6    to Mr. Blecker's claim that was entered on December 23,

7    2008.  And there is the order --

8          THE COURT:  Is that the one that requires the

9    trustee (indiscernible) request to hearing?

10         MR. BELL:  Well, it requires the trustee to make

11   determinations as to claims and then set a hearing.

12         THE COURT:  Right, as opposed to properly request

13   a hearing.

14         MR. BELL:  Exactly.

15         THE COURT:  Okay.

16         MR. BELL:  But I'll address that in a minute.  And

17   the second order is this court's order on June 25th, okay.

18         THE COURT:  Yeah, nobody's mentioned that one.

19         MR. BELL:  So let's address the first one first,

20   promptly.  Well, in this case we're dealing with customer

21   claims and we're dealing with certain issues like net

22   equity, time-based damages and inter account transfers that

23   have all been heard before this court and appeals have been

24   taken by numerous customers and I would imagine at some

25   points in time Mr. Blecker was in those because I still

Page 20

1    don't have an answer to the question I asked this court four

2    weeks ago from Ms. Chaitman who she represents on the

3    customer objections.  So I can't address that clearly to the

4    court.

5            But clearly we have situations here where you rely

6    on what the customer submits.  Last night at 5:18 I received

7    a copy of Mr. Blecker's answers to the requests for

8    admission and he admitted he got the statements, including

9    the statement where we have the purported profit withdrawal.

10           And as this court knows from the briefings that

11   have been filed by the trustee and SIPC in July and again in

12   January, those statements are under New York law 10-day

13   objection period and there is no objection contemporaneously

14   found by that.

15           THE COURT:  So what does that mean with respect to

16   all the fictitious profits in the statements?

17           MR. BELL:  It means the person has accepted it at

18   contemporaneous on that time, not when he's 102 or 104 but

19   back in the day which is back in the last century, so he's

20   probably 88.  You know, I'm not going to talk about his

21   capacity but clearly we have an issue that's much more

22   complex.

23           This court set a procedure where we are almost

24   finished discover in less than three weeks.  We have on the

25   14th of April a brief due from the other side and on the 5th

Page 21

1    of May a brief due from us.  I think the trustee and SIPC

2    are amenable to moving that schedule up if that would help

3    and then you would have a full record.

4              THE COURT:  I think it's going to have to be an

5    evidentiary hearing in this.  This isn't going to be

6    resolved on the papers.  I'm going to have to hear the

7    experts.

8              MR. BELL:  Exactly.

9              THE COURT:  The other side's going to be entitled

10   to cross examine the experts.  We need to think about some

11   sort of an omnibus procedure which would be a trial rather

12   than papers.

13             MR. BELL:  And that's what we wrote in our

14   response to Ms. Chaitman's motion.  This is a complex issue

15   where it goes through a whole bunch of people.  Back in the

16   day when this thing started, there were over 600 and

17   something potential customers.  We're down to 53 or 54 as

18   the counsel have looked at this and we have narrowed the

19   issue for this court.  Who knows what we will have when we

20   get to the hearing date?

21             So I do think and I have total sympathy of every

22   victim of Bernie Madoff, particularly this 104-year-old man

23   but the rule of law has to pertain here, Your Honor, with

24   regard to this and we should stick to the procedures that

25   this court has set in both of those orders.  Thank you, Your

Page 22

1    Honor.

2              THE COURT:  Thank you.

3              MS. CHAITMAN:  Judge, I know how thorough you are.

4    I just ask you to do one thing before you rule.  Look at the

5    statements that Mr. Blecker received.

6              THE COURT:  And I was reminded of something, Ms.

7    Chaitman.  The motion was brought with respect to the 22

8    account and everybody has to agree that there's nothing in

9    that account.

10             MS. CHAITMAN:  No.  Can I just finish on this

11   other part, first?

12             THE COURT:  Go ahead.  I'm sorry.

13             MS. CHAITMAN:  Okay.  I just -- if you'll forgive

14   me.  Mr. Blecker received the statements.  Of course we

15   never denied he received the statements.  I want you to look

16   at the statement.  There are samples of them in the records.

17   It says whatever the company is, Check AT&T.

18             THE COURT:  Does it say Check AT&T?

19             MS. CHAITMAN:  It says Check and then the name of

20   a company, right?  It doesn't say check to customer, check

21   Aaron Blecker.  It says Check AT&T.  Now, when there are

22   withdrawals to the customer it says check to the customer.

23             THE COURT:  Is your theory that that's a

24   fictitious entry?

25             MS. CHAITMAN:  No -- well, who knows?

1          THE COURT:  But that's the point.  In other words,

2     he gets the statement.  He sees a debit.

3          MS. CHAITMAN:  And he also sees that he has a

4     purchase into his account.  Yes, there's a debit --

5          THE COURT:  But that's why I'm asking you whether

6     you're saying that's a fictitious entry or not.

7          MS. CHAITMAN:  There was a purchase into his

8     account of AT&T stock.  Now, whether the stock was actually

9     purchased, I have no idea.  But the point is it wasn't a

10    debit, which showed a payment to him.  It was a debit which

11    showed that stock was purchased for his account.

12         THE COURT:  Well, we don't know what it is.  We

13    don't know what it is.

14         MS. CHAITMAN:  But the point is in every one of

15    those statement, if you look through either that statement

16    or the next one, you see there's an addition of stock in the

17    name of the purported payee of the check.

18         THE COURT:  But I looked at one of them and the

19    check, the PW was I think 12 days after the stock was

20    purchased.  That seems like a long time.  Why would the

21    check be issued to the company at that time?

22         MS. CHAITMAN:  Judge, if the trustee hasn't gotten

23    one fact witness who actually was involved with this -- the

24    point is, Your Honor, there is nothing in the factual record

25    which suggests that this check was paid to Aaron Blecker.

Page 24

1    And, indeed, when I first got involved in representing Mr.

2    Blecker I said to the trustee give me the fronts and backs

3    of these checks.  How could Mr. Blecker have cashed a check

4    made out to AT&T?  And that was the time at which the time

5    disclosed that he didn't have the bank records.

6            If it was a check to Mr. Blecker it would have

7    said check to customer.

8            THE COURT:  Okay, now come back to my question.

9    He was seeking an allowance of the customer claim with

10   respect to the 22 account.  That's what the motion is

11   seeking.

12           MS. CHAITMAN:  Right.

13           THE COURT:  And whatever else happened, all of

14   that money was transferred to another account, so that

15   account has to be zero under any set of circumstances,

16   doesn't it?

17           MS. CHAITMAN:  Well, no, because if in fact --

18   well, I don't -- all right, so I guess what you're saying is

19   that I should have moved with respect to the other account.

20           THE COURT:  Well, what I'm saying is you moved

21   with respect to the 22 account and even if you're right on

22   everything else, all of that money was transferred, so the

23   trustee is well within his rights to deny any -- or SIPC's

24   within its rights not to insure that account.

25           MS. CHAITMAN:  You know what, Judge?  The man is

Page 25

1    104 years old.

2            THE COURT:  I understand that.

3            MS. CHAITMAN:  The case is -- but it's not a

4    question of being sympathetic.  The statute requires that

5    claims be paid promptly and, you know, what --

6            THE COURT:  Let me ask you a question.  It's a

7    question I've had in my mind.  And this may be the

8    difference between fraudulent transfer actions and these

9    claims determinations.  The statute says that the claim has

10   to be satisfied to the books and records of the trustee.

11           If the trustee makes a reasonable determination

12   based on this expert's reports that PW is an actual debit to

13   the account -- can I look behind that?  The question then is

14   the determination reasonable as opposed to, you know, what

15   the evidence supports at the trial?

16           MS. CHAITMAN:  We don't dispute that it's a debit

17   to the account but it's a debit to the account because there

18   was money purportedly paid to the company that issued the

19   stock.  It was a purchase of securities for the account.

20           THE COURT:  Well, but if it's a debit to the

21   account why doesn't it reduce the balance of the account?

22           MS. CHAITMAN:  Because these were fictitious.

23           THE COURT:  That's what I'm asking you, whether it

24   was an actual payment or not.

25           MS. CHAITMAN:  The trustee is claiming that the

1    money went to the customer.  It did not go to the customer,

2    so we have to conclude then that it was fictitious.  Judge,

3    we're speculating on --

4              THE COURT:  What about the fact that he only pulls

5    $206,000 out of this account after 15 years, you know, and

6    he testified that he never pulled money out because he

7    thought it was such a great investment?

8              MS. CHAITMAN:  I have no way of certifying the

9    records.  As the trustee's own expert has said, these

10   records are riddled with fraud.  We now have the trustee

11   saying that the amount that Mr. Blecker should be paid to

12   the successor account for the profit withdrawals and, in

13   fact there were profit withdrawals from that account but the

14   expert says the number is $558,868.

15             So the thing is, Judge, it's not --

16             THE COURT:  So you should move with respect to or

17   seek payment with payment to the accounts that their own

18   expert says have a certain balance, unless you disagree with

19   facts.

20             MS. CHAITMAN:  I have no basis to disagree with it

21   but the point is, Judge, I can -- yes, I can make that

22   motion.

23             THE COURT:  Or just ask them.  Say your expert

24   says he's owed this much money, so pay him.

25             MS. CHAITMAN:  No, because what the expert says is

Page 27

1    if the court accepts that when there's no evidence in

2    Madoff's records, when there's no letter from the customer,

3    there's nothing, which suggests -- and that's the case with

4    Mr. Blecker.  The trustee has zero evidence in Mr. Blecker's

5    records that he ever received that money.

6            Judge, I could make that motion or you could

7    orally amend my motion to accept it.  You know, the man is

8    104 years old.  We're nine years since this money should

9    have been paid.

10           THE COURT:  Can I ask you a question?  You

11   mentioned -- and I understand he's 104 years old.  When this

12   issue first arose, the trustee initially made a motion and

13   you objected.  The trustee withdraws that motion.  Then the

14   trustee doesn't and makes another motion, you don't object

15   and you write a letter subsequently after the order is

16   entered saying, yeah, we want to continue to litigate this

17   PW issue.  Why didn't you object?  You know, he was 103

18   then.  Why didn't you object and say, look, this is too long

19   at this time?

20           MS. CHAITMAN:  Perhaps I should have.  I didn't

21   think that the court would entertain an objection to the

22   whole procedure that the trustee was proposing.

23           THE COURT:  Well, so why didn't you make the

24   objection in the first place, cause them to withdraw the

25   motion?

1              MS. CHAITMAN:  Well, this doesn't just involve Mr.

2      Blecker, Your Honor.  There are scores of --

3              THE COURT:  No, but your original objecting memo -

4      - and I read that yesterday also -- was mostly about Mr.

5      Blecker and he is 104 years.

6              MS. CHAITMAN:  Yes, because he was my client.

7              THE COURT:  You have a lot of clients.

8              MS. CHAITMAN:  I did.  But this is the only one

9      with whom I was dealing with this issue at that time.  I was

10     not aware of how --

11             THE COURT:  I don't understand why you just didn't

12     object and say, you know, this is my client.  It's his main

13     issue and we just can't wait.

14             MS. CHAITMAN:  But Judge, I'm here before you now.

15     The trustee has had every opportunity to take discovery.

16             THE COURT:  But there's a scheduling.  My point is

17     there's a schedule which was approved following the hearing

18     which you had notice and you didn't object.  And the

19     schedule is still running.

20             MS. CHAITMAN:  There's nothing that an expert

21     could say that would change the facts, Judge.

22             THE COURT:  I don't know.  All right.  Look, I'm

23     going to deny your motion.  First of all, two preliminary

24     points.  You made the motion with respect to account 22 and

25     as I stated on the record, even if you're right about

Page 29

1    everything else, all of the money was transferred out of

2    account 22 into another account, so that's a zero account

3    and under any set of circumstances, Mr. Blecker's not

4    entitled to anything with respect to that account.

5            Secondly, as I have indicated, you agreed to a

6    procedure, or at least you didn't object to a procedure

7    although you objected to a similar procedure beforehand.

8    And we're following that particular procedure.

9            This is one of those omnibus issues.  It doesn't

10   just affect you.  If it only affected you we wouldn't have

11   had the procedure.  We just would have had the trial.  And

12   the procedure has to run its course.

13           With respect to the procedure, this is not the

14   kind of thing that's going to be decided on paper, so you

15   ought to stop and think about an omnibus type of hearing

16   where we can hear the experts testify, see them cross

17   examined and hear counter experts.

18           As I mentioned, I have this issue about if the

19   trustee makes a determination based on the existing books

20   and records with the aid of the expert and that

21   determination is reasonable, doesn't matter if it's not

22   right.  And again, SIPA may be different from a

23   (indiscernible) transfer action in that respect.

24           But getting to the merits, I'm looking at this

25   really as a motion to summary judgment as opposed to a, what

1    essentially you're asking for, judgment on your claim.  I

2    think there are issues of fact.  There are issues of fact

3    relating to the expert reports.  I haven't seen the counter

4    expert reports.

5              I have a question about the credibility of Mr.

6    Blecker's statement that he thought this was a great

7    investment, yet after 15 years he pulls out $206,000 which

8    suggests, you know, the kind of interest rate you'd get

9    today on a checking account.

10             He's getting these statements every month that are

11   showing debits or whenever these profit withdrawals occur

12   and he doesn't say anything.  I don't know what those are.

13   With respect to Mr. Madoff's declaration, I look forward to

14   hearing his testimony on the phone.  His declaration doesn't

15   say what these profit withdrawals are and I would think that

16   some of you would just want to take the deposition of

17   somebody who knew what they were.  That may be easier said

18   than done but it seems to me that's the best evidence of

19   what they are.

20             And for those reasons, I will deny your motion.

21   You can submit an order.  Yes.

22             MS. CHAITMAN:  Your Honor, two points.

23             THE COURT:  Is this a motion for an argument?

24             MS. CHAITMAN:  No, no, it isn't.

25             THE COURT:  Okay.

Page 31

1         MS. CHAITMAN:  It isn't.  Just two points.  We

2    would like to seek an order from the court -- and I will be

3    filing a motion -- to depose Mr. Madoff.

4         THE COURT:  Why don't you just get it in his

5    affidavit?

6         MS. CHAITMAN:  I'm sorry?

7         THE COURT:  You got an affidavit from him.

8         MS. CHAITMAN:  Right.  But you said you're going

9    to require testimony.

10         THE COURT:  Well, I am going to require testimony.

11    It's obviously an issue regarding the extrapolation of the

12    findings of the expert to earlier periods.  There's an issue

13    with the expert report, I suppose.  But it sounds to me like

14    the 10-year period between 1998 to 2008 the expert has

15    concluded that there's almost a one-to-one correlation

16    between the profit withdrawals and actual withdrawals.

17         And your issue is really whether that should be

18    fact (indiscernible) because we don't have that correlation.

19    And in particular, you have a client -- there's no records

20    for your client, client has no recollection of withdrawing

21    any money.  But I said, you know, the trustee is asking me

22    basically to determine on the expert reports on an omnibus

23    basis that this is what PW means all periods and that just

24    sounds like a factual issue.

25         MS. CHAITMAN:  It is a factual issue.  We're going

Page 32

1    to move to strike the expert reports, Your Honor.  We'd like

2    to set a schedule to do that because I don't believe the law

3    permits -- we've cited both 2nd Circuit law and New York

4    State law and from other circuits and even a Supreme Court

5    case -- that you can't have expert testimony to establish a

6    specific fact like this.

7          So we want to move to strike those expert reports,

8    number one.  And number two, Mr. (indiscernible) is dead.

9    The only person who has personal knowledge of these entries

10   is Mr. Madoff and we would like to take his deposition so

11   that the --

12         THE COURT:  Well, I'm not going to say you can or

13   you can't but was he actually keeping these records or --

14         MS. CHAITMAN:  He was directing who -- I mean, I

15   have to assume that he was directing the records and he

16   certainly was knowledgeable enough to submit that

17   declaration.  So we'd like to submit papers to take his

18   deposition and we'd like to set up a schedule because we

19   will be moving to strike the expert reports.  We have not --

20         THE COURT:  But this is a SIPA case.  Can't the

21   trustee in a SIPA case hire an expert to help them

22   understand the books and records.  You know, he's a trustee.

23   He inherits all this stuff.  And he doesn't know what it

24   means.  How does he find out what it means?

25         MS. CHAITMAN:  I'd like to brief the issue, Your

Page 33

1    Honor, because I don't think that this is --

2         THE COURT:  I mean, I'm not going to tell you you

3    can't make that motion.

4         MS. CHAITMAN:  You want me to just file a motion

5    or do you want to set a schedule or how would you like to do

6    that?

7         THE COURT:  Well, why don't you -- and you don't

8    want to wait until the procedure is done?

9         MS. CHAITMAN:  Well, the trustee's expert reports

10   are produced.  We are not putting in any expert reports

11   because I don't believe they're admissible or relevant and

12   I'd like to move to strike the trustee's expert reports.

13        THE COURT:  As I said, I'm not going to tell you

14   you can't move to strike the expert reports.  But it would

15   be in connection with the entire omnibus procedure.

16        MS. CHAITMAN:  Yes, yes.

17        THE COURT:  All right.

18        MS. CHAITMAN:  Shall I just do that?

19        THE COURT: (indiscernible).  Yes.

20        MS. BROWN:  It may make sense while you're even

21   discussing today is an omnibus proceeding to have a trial to

22   incorporate these types of motions into an actual procedure.

23        THE COURT:  Well, but it will shortcut -- what

24   you're saying is it will shortcut the trial if I strike the

25   expert report.  Then it's going to be -- you know, it's

1    going to be a creditor on creditor basis of claims.

2           MS. BROWN:  Right.  But I think we should be able

3    to complete the briefing on all the issues.

4           THE COURT:  What's the briefing going to tell me?

5    At the end of the day it's a question of whether I credit

6    the expert, isn't it?

7           MS. BROWN:  Well, we think that's what should be

8    developed at trial?

9           THE COURT:  What issue are you briefing?

10          MS. BROWN:  What issue are we briefing?

11          THE COURT:  Yes.

12          MS. BROWN:  We are going to brief any additional

13   issues that were raised in discovery and I think we need to

14   address this additional legal issue that you've raised today

15   which is whether or not the court can look behind the

16   trustee's determination, if that determination is

17   reasonable.

18          THE COURT:  Well, rather than look behind, is that

19   the sole test?

20          MS. BROWN:  Okay.

21          THE COURT:  You can make your motion.

22          MS. CHAITMAN:  Okay.  Thank you.

23          THE COURT:  I think it'll shortcut the proceeding.

24   The motion is granted.  I have my question that I would

25   grant such a motion.

```
 1                    MS. CHAITMAN:  I know.  I have an uphill battle,

 2      but.

 3                    THE COURT:  But go ahead and make your motion.

 4                    MS. CHAITMAN:  Okay, great.

 5                    THE COURT:  All right.  Thank you.

 6                    MR. BELL:  Thank you, Your Honor.

 7                    THE COURT:  You can submit an order denying it for

 8      the reasons stating it on the record without setting forth

 9      the reasons since we'll have a transcript.  And you can

10      identify the clients you represent, Ms. Chaitman?

11                    MS. CHAITMAN:  I can.  Oh, you mean all the

12      clients.

13                    THE COURT:  Yeah.

14                    MS. CHAITMAN:  Okay.  There are a great number of

15      them --

16                    THE COURT:  I understand that.

17                    MS. CHAITMAN:  Did you want me to write --

18                    THE COURT:  Didn't you discuss that a conference,

19      you were supposed to do that?

20                    MS. CHAITMAN:  No, I did.  There's a chart.  It's

21      annexed to all my papers.

22                    THE COURT:  Yeah, but things have changed.

23                    MS. CHAITMAN:  No, but this list has been -- do

24      you want me to file it with the court?

25                    THE COURT:  Why don't you just tell them?  They
```

Page 36

1    want to know who you represent.

2              MS. CHAITMAN:  But they have it.

3              THE COURT:  So give it to them again.

4              MS. CHAITMAN:  Okay.

5              THE COURT:  All right?  It would take less time

6    than it took setting up this conversation.

7              MS. CHAITMAN:  Okay.  Thank you.

8              THE COURT:  All right.  Thank you.  The next

9    motion is the motion to affirm the trustee's determination

10   denying customer status to a group of investors and I guess

11   four or five different partnerships.  I received the

12   certificate of no objection.  Is there anyone here today who

13   wants to object to relief sought by the trustee?  All right.

14   The motion will be granted.  I've reviewed the papers.  It

15   looks like many similar cases involved investors in an

16   entity then turned invested in BLMIS.

17             In those cases, the customers admit through

18   (indiscernible) sponsored a request for admissions that they

19   weren't customers and I'll affirm the trustee's

20   determination.  You can submit an order.  Thank you.

21             MAN:  Thank you, Your Honor.

22             THE COURT:  Auerbach.

23             MR. HUNT:  Your Honor, Dean Hunt for the trustee.

24   This case has completed discovery.  Expert reports have been

25   completed.  We've mediated the case.  That was unsuccessful

Page 37

1    and the case is ready for trial.

2           THE COURT:  Okay.  So I need a pretrial order.

3           MR. HUNT:  Okay, Your Honor.  Your Honor, with

4    respect to that, we believe that we will submit the

5    majority, if the court permits, the majority of our direct

6    testimony by declaration.  We have discussed that with

7    defense counsel.

8           THE COURT:  Well, I'd like to know what are the

9    disputed issues of fact, for instance in (indiscernible),

10   everything was stipulated to and the trial lasted ten

11   minutes.  And that was an effective way of doing it.

12          MR. HUNT:  Yeah, we think we're pretty close to

13   that here on our side.

14          THE COURT:  That's really what I'm looking for.

15   So I'm not sure I want a pretrial order.  If you want to

16   submit -- you may not even need testimony is what I'm saying

17   depending on what the stipulation of fact says.  But I don't

18   have a problem with you submitting your direct testimony,

19   either side, I suppose.  And you can get an affidavit or a

20   declaration.

21          MR. HUNT:  I think that's something that will be

22   happening and I think all our exhibits -- excuse me, our

23   exhibits will probably be admitted, be pre-admitted by

24   agreement.

25          THE COURT:  Is there a dispute regarding the

Page 38

1    deposits and withdrawals?

2              MR. HUNT:  We don't believe there is.

3              THE COURT:  Who represents the defense?  Is there

4    a dispute?  I mean, you've looked at what the trustee --

5              MR. FOLKENFLIK:  There are no disputes on deposits

6    and withdrawals.

7              THE COURT:  So are there any disputed issues of

8    fact.

9              MR. FOLKENFLIK:  Let me try and --

10             THE COURT:  Would you just identify yourself?

11             MR. FOLKENFLIK:  Yes, Your Honor.  Good morning.

12   I'm Max Folkenflik, Folkenflik & McGerity, counsel for the

13   Auerbach trust and Robert Auerbach, currently deceased, the

14   state of Robert Auerbach and Joyce Auerbach.  We had a meet

15   and confer session.  There were a number of issues.

16   Obviously my client has a relatively small amount at issue,

17   $570,000.

18             So we have tried -- I think I discussed this case

19   with Your Honor a couple years ago.  We've tried to --

20             THE COURT:  Not with me a couple years ago, but

21   okay.

22             MR. FOLKENFLIK:  I believe there was a conference

23   --

24             THE COURT:  Well, maybe yes.

25             MR. FOLKENFLIK:  Where Your Honor said we've got

Page 39

1    to get these cases moving toward trial and here we are two

2    years later.

3          THE COURT:  I suppose that's progress, Mr.

4    Folkenflik.

5          MR. FOLKENFLIK:  I'm not sure, but somewhat.  But

6    there are a couple issues that I did want to raise, first as

7    to disputed issues of fact.  I think there is no disputed

8    issue of fact that but for the interpretation of the

9    interaction between SIPA and the bankruptcy code that Your

10    Honor has adopted and Judge (indiscernible) had adopted, my

11    client would have a claim against BLMIS and the Bernard

12    Madoff estate that exceeds the amount of the claw back

13    that's being sought.

14          And the reason I -- and I asked counsel for the

15    trustee to stipulate to that because as a matter of law my

16    clients opened their account with $2 million in --

17          THE COURT:  Why didn't you just file the claim

18    against the general estate?

19          MR. FOLKENFLIK:  Pardon me?

20          THE COURT:  Have you filed a claim against the

21    general estate?

22          MR. FOLKENFLIK:  We filed -- I don't recall

23    whether we filed a claim against the general estate at this

24    point.  We may have.  But the point is that if there is such

25    a claim against the general estate exceeding the amount of

1    the claw back and the 2nd Circuit disagrees with Your

2    Honor's interpretation on the antecedent debt issue and

3    Judge (indiscernible)'s interpretation, then my client would

4    have the --

5              THE COURT:  In other words, just a 2nd Circuit

6    summary order which indicated -- which seemed to adopt the

7    view that you don't -- there's no value given for fictitious

8    profits.

9              MR. FOLKENFLIK:  That's not -- well, that's not

10   precisely the way I'd frame the issue.  I would --

11             THE COURT:  Well, there are two issues.  There's

12   the SIPA issue with the estate within the estate.  But then

13   there's the more general issue that if you get fictitious

14   profits you can't get consideration for fictitious profits,

15   the value.

16             MR. FOLKENFLIK:  Well, Your Honor, it's not a

17   question of fictitious profits.

18             THE COURT:  But that sounds like a legal issue.

19             MR. FOLKENFLIK:  It's a legal issue.

20             THE COURT:  Right.

21             MR. FOLKENFLIK:  But I want to preserve the legal

22   issue by addressing the factual issue of my client's claim

23   against the Madoff estate and I'm --

24             THE COURT:  But weren't you part of the withdrawn

25   proceedings?

1            MR. FOLKENFLIK:  I was.

2            THE COURT:  So you preserve the issue.

3            MR. FOLKENFLIK:  Well, not at -- so we have to

4    address it at trial.

5            THE COURT:  I'm not going to reconsider the

6    thought for the --

7            MR. FOLKENFLIK:  I'm not asking Your Honor for

8    that.

9            THE COURT:  So what is the factual issue?

10           MR. FOLKENFLIK:  The factual issue I'm asking we

11   would have to demonstrate with facts or risk having

12   collateral to stop --

13           THE COURT:  Well, if you have that last monthly

14   statement, it's going to show a balance, I assume, right?

15           MR. FOLKENFLIK:  Yes, it is.

16           THE COURT:  And your argument is that under

17   Article 8 UCC you have a claim for that amount, right?

18           MR. FOLKENFLIK:  That's one of the claims.  An

19   alternate claim is a claim for fraud in 1999 and with

20   interest starting at 9% per year as a matter of statutory

21   right.  So we have --

22           THE COURT:  It's only on a judgment though.

23           MR. FOLKENFLIK:  Pardon me?

24           THE COURT:  It's only on a judgment, right?

25           MR. FOLKENFLIK:  It's pre-judgment interest,

1    that's right, from the date of the trial.

2           THE COURT:  Are you looking for a judgment?

3           MR. FOLKENFLIK:  Pardon me?

4           THE COURT:  Are you looking for a judgment?

5           MR. FOLKENFLIK:  I'm looking to be able to avoid

6    the claw back by asserting -- and the 2nd Circuit agrees --

7    by asserting that the amount that's being sought is less

8    than the amount of my client's claim against Madoff.

9           THE COURT:  You mean you're going to try to --

10          MR. FOLKENFLIK:  Pardon me?

11          THE COURT:  You want to try a fraud claim against

12   Madoff within the context of the suit?

13          MR. FOLKENFLIK:  Not at all.  I just want to

14   stipulate to the facts that I think the fraud claim's

15   established by the trustee's arguments and by the trustee's

16   proof and by the trustee's complaint.  I think that the

17   issue is how much, what's my client's claim using the world

18   claim as it's used in the Bankruptcy Act.

19          And I think an antecedent debt is based on the

20   merit of the claim.  Your Honor's decision, Judge Rakoff's

21   decision to cut to the chase, says there's a conflict

22   between these two federal statutes.  In order to read them

23   together in a way that's most sensible, you have to say that

24   the antecedent debt in the Ponzi scheme case cannot be the

25   amount of the claim for fraud or otherwise.  It's not a

Page 43

1   matter of just the statement value, which it could be.  As

2   counsel for the trustee pointed out, they send a statement,

3   ten days later it's bonding on both parties as a matter of

4   law.

5          And when I watched argument on the net equity case

6   in the 2nd Circuit, then Chief Judge Jacobs clearly said I

7   think all of the customers had claims against

8   (indiscernible) for the full amount of the statement value

9   and Judge (indiscernible) nodded her head, yes.

10          So I think --

11          THE COURT:  You may be right but I'm not so sure

12   that the statement courts have interpreted it that way in

13   insurance cases?

14          MR. FOLKENFLIK:  Pardon me?  But right now we're

15   talking as a matter of federal law.

16          THE COURT:  So what is --

17          MR. FOLKENFLIK:  I just want to establish the

18   amount of the claim and not the legal consequence of the

19   existence of the amount of the claim but that the amount of

20   the claim exceeds the $570,000 --

21          THE COURT:  So essentially you want to try to

22   settle it.

23          MR. FOLKENFLIK:  Pardon me?

24          THE COURT:  You want to try to settle the claim.

25          MR. FOLKENFLIK:  That's one way of looking at it.

1      I wouldn't quite describe it that way.

2              THE COURT:  But isn't the response that that is

3      irrelevant to the purposes of this trial?

4              MR. FOLKENFLIK:  If the 2nd Circuit disagrees with

5      Your Honor, no.  And if the 2nd Circuit agrees with Your

6      Honor, yes.  I just want to be able to tee up the issue for

7      the 2nd Circuit.

8              THE COURT:  I understand.  Let me just hear a

9      response to that.

10             MR. FOLKENFLIK:  Okay, because I have a few more

11     issues to raise.

12             MR. HUNT:  I agree with what you said, Your Honor.

13     That's not really relevant to this case.

14             THE COURT:  But it does create a record.  In other

15     words, at the end of the day he'll make an offer of proof

16     and we'll either litigate it or not litigate it because --

17             MR. HUNT:  Yeah, whatever facts he wants to raise

18     at trail, if they're admissible in trial --

19             THE COURT:  It sounds like we're going to be

20     litigating a fraud case, also.

21             MR. FOLKENFLIK:  Well, Your Honor, I think we

22     could stipulate to it because I don't think it's disputable.

23     But I don't know.  That sounds like it is.  The amounts are

24     disputable.  The legal consequences aren't.  There should be

25     no trial under those circumstances because there isn't a

Page 45

1    factual dispute.

2              THE COURT:  It sounds like there's a factual

3    dispute though as to the amount of your damages, even if

4    you're right on the fraud and I agree, you know, they say

5    your client was defrauded by BLMIS and Madoff but there's a

6    dispute other than I guess it's UCC Article 8 issues as to

7    the amount.

8              MR. FOLKENFLIK:  There's also no dispute also the

9    entitlement to prejudgment interest at 9% from 1999.

10             THE COURT:  I know.

11             MR. FOLKENFLIK:  Pardon me?

12             THE COURT:  I know because I'm not going to enter

13   a judgment on your claim?

14             MR. FOLKENFLIK:  Pardon me?

15             THE COURT:  I'm not going to enter a judgment on

16   your claim.

17             MR. FOLKENFLIK:  It's not post judgment interest,

18   Your Honor.  It's prejudgment interest.  So if I litigated

19   in the --

20             THE COURT:  But in order to get prejudgment

21   interest you have to get a judgment, don't you?  Isn't there

22   a recent (indiscernible) case on that by Judge --

23             MR. HUNT:  That's going to depend on whether --

24             THE COURT:  Yeah, I'm not so sure you're entitled

25   to prejudgment interest.  Go ahead.

Page 46

1           MR. HUNT:  Okay.  The bottom line is I'd like to

2      tee up the issue and have a factual record and I don't think

3      there should be as much resistance as there is.  But we are

4      where we are.  There's a second question that during our

5      meet and confer session a week ago I asked why are we trying

6      this case at all in this court.

7           THE COURT:  Because he says you owe them money, at

8      the risk of being --

9           MR. FOLKENFLIK:  But as I said, but in this court,

10     because respectfully as I understand the (indiscernible)

11     rulings by Your Honor, you're going to report and recommend

12     to the district court and I am not aware of an Article 1

13     judge having a trial without consent and then reporting and

14     recommending on the factual findings at the trial.  I think

15     if there is to be a trial it should be held in district

16     court.

17          THE COURT:  Really?  You're not familiar with

18     procedure in this court, then.

19          MR. FOLKENFLIK:  I may be deficient.

20          THE COURT:  And maybe you impliedly consented to

21     my trying the case during the final judgment.  That's

22     another issue I guess.

23          MR. FOLKENFLIK:  I don't believe I impliedly

24     consent.  We went through the --

25          THE COURT:  If you think somebody else should try

1   this case, don't make that argument to me.  Make a motion to

2   redraw the reference.  What else?

3           MR. FOLKENFLIK:  Okay.  And then there is an issue

4   of subsequent transferees.  The case has been started and

5   proceeded right to this -- asserting my clients are

6   subsequent transferees, which they are.  There was a

7   trusting between them and Mr. Madoff.

8           During our meet and confer session, Mr. Hunt said

9   he was going to make a trial motion to amend to assert that

10  my clients are initial transferees.  And when I raised that

11  this morning he said he's not doing it at this time.  I'd

12  like to clarify that issue.

13          THE COURT:  That's the benefit of the pretrial

14  order.  We know exactly what everybody is claiming.  I'm not

15  sure that if you concede that you're a subsequent transferee

16  what the difference is unless you think you can assert a

17  defense as a subsequent transferee but you can't assert an

18  initial transferee and I don't know if this is a

19  (indiscernible) since the initial transferee and subsequent

20  transferee are obviously related.

21          MR. FOLKENFLIK:  Yes.  The initial transferee was

22  a revocable trust.  I understand the issues that are raised

23  by that.  But there's a matter of burden of proof and burden

24  of persuasion and order of proof in terms of the defenses

25  which are the same but the defenses -- there's more burden

1   on the trustee.

2            THE COURT:  All right.  Well, you can deal with

3   that in pretrial order because at that point you'll have to

4   know if the trustee intends to assert.

5            MR. FOLKENFLIK:  Okay.  And the other thing is,

6   Your Honor, I had just advised my client I would try and

7   persuade Your Honor to defer our case to later in the queue

8   so that this issue on which her case turns might be tried

9   before the 2nd Circuit without her having to go to the

10  expense of proceeding with a trial.

11           THE COURT:  Couldn't everybody make the same

12  argument?

13           MR. FOLKENFLIK:  I think everybody could.  I think

14  it's more compelling argument when you've got a small

15  amount.  We have Mr. Levy here who is making the exact

16  opposite argument.  He's saying please let me into this case

17  because we want to have the case tried.

18           THE COURT:  Yeah.  He's made that argument before.

19           MR. FOLKENFLIK:  He has made that argument before.

20  So, Your Honor, the issue is, yes, everybody could say let

21  me go last and when there are 500 cases and they're being

22  tried currently at the rate of one per year, going last

23  seems to be quite a victor.  But that's not the issue here.

24           The issue is why is the trustee selecting the

25  small dollar cases and picking them off first?  And I think

Page 49

1   what happens --

2              THE COURT:  Why do you think he's doing it?

3              MR. FOLKENFLIK:  I think he's doing it to put an

4   appropriate pressure on the defendants in the small dollar

5   cases to settle rather than to extend the amount of legal

6   fees involved.  And by doing so he's causing them to forfeit

7   the right to have a dispositive issue heard by the 2nd

8   Circuit.

9              THE COURT:  You know, you're telling me aside from

10  the amount that your clients damages, that there are no

11  disputed issues of fact.  All you have to do is enter into a

12  comprehensive pretrial order and then it's a legal argument.

13             MR. FOLKENFLIK:  And that's right.

14             THE COURT:  Most of the legal issues have been

15  resolved.  So then you ask me to certify the question to the

16  2nd Circuit and you go up to the 2nd Circuit.

17             MR. FOLKENFLIK:  If Your Honor would consider that

18  procedure, we would --

19             THE COURT:  It's provided for in the statute.

20             MR. FOLKENFLIK:  I'm just trying to get to the

21  point where my client doesn't give up rights and doesn't end

22  up spending so much money in legal fees in the process of

23  preserving rights that the game isn't worth the

24  (indiscernible).

25             THE COURT:  I got it.  All right.

1              MR. HUNT:  Just to recap, I think we're ready for

2      trial.

3              THE COURT:  Well, I need the pretrial order as has

4      been made abundantly clear by this lengthy extended draft of

5      the pretrial order by Mr. Folkenflik.

6              MR. HUNT:  Two, three weeks, something like that?

7      We would like to try to set a date for trial, too.

8              THE COURT:  Let's work -- let's do it this way.

9      When are you going to send a pretrial order?

10             MR. HUNT:  Three weeks from today.

11             THE COURT:  So what day is that?  Why don't we

12     make it April, okay?  I'm sorry, February, I missed a month.

13     It's about the middle of March. It's more than three weeks.

14     Let's say Friday, March 18th.  Okay?  You'll send them.  How

15     much time, Mr. Folkenflik, do you need to turn it around?

16             MR. FOLKENFLIK:  I think three weeks as well, Your

17     Honor.

18             THE COURT:  All right.  So what does that take us

19     to?  That's the 39th of March, which is April 8th?  April

20     8th.  Schedule another conference and I'll fix the trial

21     date at the next conference.  April 14th.  Plaintiff can use

22     numbers for the exhibits.  Defendant can use letters.  Yes,

23     Mr. Levy.

24             MR. LEVY:  Good morning, Your Honor.  Richard Levy

25     at Pryor Cashman for various customers.  This does raise the

Page 51

1    question.  Yes, we did ask you previously to be admitted in

2    the (indiscernible - Cullen) case to intervene.

3              THE COURT:  It's sub judice.

4              MR. LEVY:  Pardon me?

5              THE COURT:  It's sub judice.

6              MR. LEVY:  It's sub judice?  We have the exact

7    same issues in almost the exact posture of this case

8    although we are here earlier than we were in (indiscernible

9    - Cullen).

10             THE COURT:  Well, the issues, I don't know what

11   the issues are until I see the pretrial order.  As I said

12   with respect to (indiscernible - Cullen), I'm not going to

13   hear you on issues that the party doesn't intend to raise.

14             MR. LEVY:  Understood, Your Honor.

15             THE COURT:  I may not hear you readily but I'm

16   certainly not going to hear you on issues that the parties

17   aren't raising.  So I don't know what the issues are.

18             MR. LEVY:  Then may I suggest, Your Honor, we'll

19   remain vigilant as to what's happening in the procedure.  We

20   may well be back here to ask you for permission to appear.

21             THE COURT:  I'm sure you will be.

22             MR. LEVY:  Thank you, Your Honor.

23             THE COURT:  All right.  Thank you.

24             MR. FOLKENFLIK:  Thank you, Your Honor.

25             THE COURT:  Thanks.  See you April 14th.  The

Page 52

1     discovery conference in Bernfeld.  Yes.

2              WOMAN:  Good morning, Your Honor.  Counsel did

3     appear.  The clerk had asked me if counsel is here and at

4     the time he wasn't but he is here now.

5              THE COURT:  Did you give your appearance to the

6     reporter?

7              MR. WEDEEN:  Not yet, Judge.

8              THE COURT:  Why don't you do that?

9              MR. WEDEEN:  Good morning, Timothy Wedeen, W-E-D-

10    E-E-N.  Judge, I'm here on three cases, all the same issue.

11             THE COURT:  Okay.

12             MR. WEDEEN:  Just for the record it's

13    (indiscernible) number 4841, 4918 and 8514.

14             THE COURT:  Go ahead.

15             MS. HOCHMOTH:  Good morning, Your Honor.  My name

16    is Farrell Hochmoth here on behalf of the trustee.  As

17    counsel said, I'm here on three cases (indiscernible), Alan

18    Bernfeld and Marilyn Bernfeld.  I am here today to ask the

19    court's permission to file a motion for sanctions pursuant

20    to Federal Rule of Civil Procedure 37b2A and C.

21             The trustee served discovery in each of these

22    three cases last July.  When defendants did not respond to

23    that discovery, the court held a conference at the end of

24    October where he ordered the defendants to respond to the

25    discovery.  Orders were submitted to the court and signed

1   requiring the defendants to respond to the discovery by

2   December 1st.  December 2nd, we did not receive the

3   discovery.  I followed up with counsel and then eventually

4   filed another letter on December 11th.

5              THE COURT:  Go ahead.

6              MS. HOCHMOTH:  Thank you, Your Honor.  On December

7   11th requesting a conference so that the trustee could seek

8   permission to file a motion for sanctions.  That letter was

9   originally set for a conference t the end of January.

10  Before the hearing, counsel contacted me telling me that he

11  had health issues necessitating an adjournment of the

12  conference, which we did agree to, to today.

13             I never gave counsel any indication that I would

14  permit any additional time to respond to discovery.  In

15  fact, Your Honor has required him to respond to all the

16  discovery by December 1st.  We have received no responses in

17  this case to date.

18             I would like to point out the discovery responses

19  are now six months overdue.  There is no excuse for why

20  counsel has not provided responses.  Counsel admits that the

21  illness that he was diagnosed with didn't occur until

22  January which provides no excuse for not responding from

23  August through now.  Also, counsel said he's working on a

24  reduce schedule, but in my mind, that would still permit

25  counsel and defendants to respond to your orders from

1    December 1st.

2              THE COURT:  Okay.

3              MR. WEDEEN:  Your Honor, I agree that we are in

4    fault.  I would like to correct Ms. Hochmoth, actually, that

5    I had some health issues which I have recovered from that

6    were not insignificant.

7              My clients have provided me responses.  I was

8    wondering if Your Honor could enter almost a conditional

9    order.  Just we could have another three weeks more,

10   thinking somewhere around there, Judge, I will be able to

11   file responses in (indiscernible) and it should be self-

12   enforcing.  I may not --

13             THE COURT:  And self-enforcing means what?  To

14   consent to the entry of judgment if you don't provide full

15   responses?

16             MR. WEDEEN:  Yes.  The delay, Judge --

17             THE COURT:  Sounds like it could be a shortcut.

18             MR. WEDEEN:  Well, Judge, at this juncture, Your

19   Honor, the delay really is on me.  I mean, I don't belabor

20   my medical conditions to the court but --

21             MS. HOCHMOTH:  Okay.  Your Honor, we would request

22   that if you did consider that that you -- we would also then

23   seek permission to file a motion to seek our attorneys fees

24   in having to come down here.

25             THE COURT:  You know what?  Why don't you make

Page 55

1   your motion?  This has gone on long enough.  You may be

2   entitled to attorneys fees.  You may be entitled to other

3   sanctions, including the striking of the entry of judgment.

4   But there is a conclusion.  Why don't you make the motion?

5   This has gone on a long time and I think this is the third

6   conference I've had on this case about this matter.

7          MS. HOCHMOTH:  Thank you.

8          MR. WEDEEN:  Second, Judge.

9          THE COURT:  Second.  You go ahead and make your

10   motion.

11          MR. WEDEEN:  And we'll return on the 18th for the

12   motions, Your Honor?

13          THE COURT:  Why don't you see if you can work it

14   out on a reasonably short schedule, otherwise just make the

15   motion and get a return date for --

16          MS. HOCHMOTH:  Yes, Your Honor.  Thank you very

17   much.

18          THE COURT:  Okay.  Take a five minute break before

19   we do Mendelow.  That's the last one I have.

20          (break)

21          THE COURT:  Mendelow.

22          MR. NEW:  Good morning, Your Honor.  Jonathan New

23   for the trustee.  The trustee is seeking leave to amend the

24   complaint in this adversary proceeding for the first time

25   and in the very early stages of discovery.  As the proposed

Page 56

1    amendment will not be futile, will not prejudice the

2    defendants and there has been no undue delay, the court

3    should grant leave to amend under the liberal pleading

4    standards of Rule 15.

5           The Safe Harbor does not protect individuals like

6    Mr. Mendelow who did not have a legitimate expectation that

7    BLMIS was actually trading securities in his accounts on his

8    behalf.

9           As the proposed amended complaint alleges, Mr.

10   Mendelow opened his accounts only after first receiving a

11   promise from Mr. Madoff that he would receive special

12   financial benefits which took the form of a guaranteed

13   return of at least 17% on certain accounts, not a consistent

14   returned but a guaranteed return, and that he would also get

15   extra value added to the accounts every year in a

16   predetermined amount.  And that was effectuated through the

17   entry of fictitious transactions on his account statements.

18           THE COURT:  Well, what's wrong with an agreement

19   where he's going to be compensated for referring customers

20   and Madoff says, look, you know, I guarantee 17%?  If your

21   accounts don't earn that, I'll make up the difference?

22           MR. NEW:  Well, Your Honor, first of all, I don't

23   think it was -- I think there are two separate issues there.

24   There's the issue of whether a guaranteed return in and of

25   itself presents somebody with actual knowledge that the

1    account is not trading --

2              THE COURT:  It seems to be relying heavily on that

3    is to support an inference of actual knowledge.

4              MR. NEW:  I think that's one of our arguments,

5    Your Honor.  I think we have several.  With regard to the

6    guaranteed return, again, it's not that Mr. Madoff would

7    make it up to him.  There's no evidence that when he didn't

8    get 17% return Mr. Madoff added extra securities to his

9    account or extra cash to his account.  It was a guaranteed

10   return that Mr. Mendelow referred to --

11             THE COURT:  Well, doesn't that happen every

12   December, though?

13             MR. NEW:  The guaranteed return, Your Honor, was

14   sort of an annual return that as Mr. (indiscernible)

15   testified and as we allege in our complaint, come December

16   BLMIS would be able to determine whether or not through the

17   fictitious trades they entered up to, then, they actually

18   achieved the 17% return and if they hadn't in December they

19   would then raise the 17%.

20             On top of that, there was the extra P&L which was

21   in a fixed amount which was then entered in December through

22   these fictitious (indiscernible) transactions into the

23   accounts as directed by Mr. Mendelow in the amounts directed

24   by Mr. Mendelow.

25             THE COURT:  That was for the customers that he

Page 58

1   referred.

2          MR. NEW:  Well, Your Honor, I don't --

3          THE COURT:  Is that supposedly how it was computed

4   or what it was based on?

5          MR. NEW:  Well, the basis for the calculation,

6   Your Honor, is based on Telfran customers that were returned

7   to BLMIS directly after Telfran was shut down.  But we would

8   take issue with characterizing it as a referral fee, Your

9   Honor, because Mr. Mendelow as alleged in the complaint did

10  introduce other customers to Mr. Madoff over the years.

11  There was no referral fee connection with those customers.

12          As the accounts decreased over time and customers

13  withdrew their cash, there was no adjustment to the referral

14  fee.  This was not a referral fee, Your Honor.  This was, as

15  we allege in the complain, this was an effort to make up for

16  the profits that Mr. Mendelow previously received through

17  the Telfran arrangement with and he was now being guaranteed

18  a set amount of money every year in perpetuity in his

19  accounts and that was not being accomplished through cash

20  contributions into his accounts, through a check sent to

21  him, through securities deposited to his accounts.  It was

22  being accomplished through fictitious transactions.

23          THE COURT:  Okay.  So what are the allegations in

24  the complaint, the proposed complaint that say that he knew

25  that he was being raised to 17% or plus his fee

Page 59

1    (indiscernible) fictitious transactions?  As opposed to

2    that's what BLMIS did.

3            MR. NEW:  Yes, Your Honor.  I think it's in a

4    number of locations and I think, obviously, Your Honor, we

5    allege that he knew that in several locations.  But there

6    are facts --

7            THE COURT:  But that's conclusory.

8            MR. NEW:  Yes, Your Honor.  And that's why I'm

9    going to, Your Honor, if I may, explain certain facts that

10   show how he knew and why he knew.

11           First, as we allege, he contacted Mr.

12   (indiscernible - D) every December and he said to Mr.

13   (indiscernible - D) something to the effect of on that thing

14   that you do, I want, you know, for example -- the example we

15   give in the complaint is, you know, $115 million in my

16   accounts and $115 million in my wife's account.  So he knows

17   Mr. (indiscernible - D) is engaging in a process in December

18   that yields a predetermined amount and he tells him what he

19   wants and where he wants it.

20           In addition to that, it's clear from his own

21   handwritten calculations, the calculations that he provided

22   to help Mr. (indiscernible - D) work out the mechanics of

23   the extra P&L that these extra bonuses to the value of his

24   account were not cash contributions because he didn't denote

25   them as contributions.  They weren't securities

Page 60

1    contributions.  They were something else.  They were what he

2    called the vig or a fee.

3           And the only way that they can be accomplished in

4    his account, the only way to raise the balances of his

5    account, if it wasn't cash, if it wasn't through securities,

6    is through the purported return on securities already in the

7    account.

8           THE COURT:  But how did he know that the return

9    wasn't based on an actual securities transaction?  In other

10   words, where do you allege that in the complaint of facts?

11          MR. NEW:  Your Honor, in terms of like the

12   securities transactions were fictitious as opposed to real?

13          THE COURT:  Well, he knew the additional amount,

14   whatever you call it, was being generated by fictitious

15   trades.  BLMIS we assume knew it but where are the facts

16   that say that he knew it?

17          MR. NEW:  Well, Your Honor, the facts that he knew

18   it are, again, that he directed the specific amount and the

19   accounts into which it could be made.  That is not something

20   that is possible through a real securities transaction.  You

21   can't say I want securities transactions in my account that

22   yield $115 million and then get that $115 million on every

23   year after year.

24          THE COURT:  He never said -- as I understand it,

25   you're not alleging that he told (indiscernible - D) or

Page 61

1    someone engage in these fictitious transactions and this is

2    how I want you to allocate it.  He's simply saying I'm

3    entitled to, you know, $200,000.  I want $100,000 in my

4    account and I want $100,000 in my wife's account.

5              MR. NEW:  What we specifically allege, Your Honor,

6    is that he said to Mr. (indiscernible - D) something to the

7    effect of on that thing you do I want X amount for me and X

8    amount for my wife.  So he told him the amount.  He told him

9    how to allocate it and he referred to that thing that you

10   do.

11             The other thing that I would point out, Your

12   Honor, is that when he was directing Mr. (indiscernible - D)

13   which accounts to put it into for most of the period of time

14   covered by the complaint, it was his IRA.  And as we've

15   alleged in the complaint, it is not possible to make a

16   securities contribution to an IRA account.  The cash

17   contributions would have exceeded the limits.

18             In order for him to have achieved that, it must

19   have been done through transactions that delivered the exact

20   amount on demand during the time period that he asked for

21   it.  He also received all of the account statements.  We

22   have allegations that there were handwritten notations

23   showing that he reviewed the account statements and on the

24   account statements for December for those IRA accounts,

25   there were only, for many of those years, only transactions

Page 62

1    showing these option transactions.  Those are the only

2    security transactions had occurred in the accounts in

3    December that could yield the exact amount that he asked

4    for.

5            I would also point out, Your Honor, that we have

6    one example in the complaint where the transaction that he

7    asked for was backdated.  There is a specific example where

8    he calls Mr. (indiscernible - D).  We only know the phone

9    records, Your Honor.  We don't know what he said but we do

10   know that generally he said to the effect of on that thing

11   you do give me X amount.  He calls Mr. (indiscernible - D)

12   directly.  He follows it up with a letter, with a number as

13   to what he wants in the accounts that wants it in and on the

14   December account statement there is a transaction that

15   occurs before he first calls Mr. (indiscernible - D).

16           So just as in -- Your Honor, I think every case

17   stands on its own but I think that that is comparable to

18   some of the allegations that were against Robert Jaffe in

19   the Cohmad case where the allegation that -- one of the

20   allegations that Judge Rakoff focused on was an instance in

21   which he sent a letter in to Madoff to BLMIS, said I want a

22   loss of X amount.  The allegation in the complaint then said

23   Madoff executed that; BLMIS executed that through a

24   backdated trade that yielded approximately the amount that

25   Mr. Jaffe asked for.

Page 63

1         And that was one of the facts that Judge Rakoff

2    found was sufficient to establish that Mr. Jaffe, at least

3    at the pleading stage, had actual knowledge because, again,

4    Your Honor, the standard here -- and I know Your Honor is

5    very familiar with the standard -- but at this stage, the

6    standard is that he had actual -- that the defendants have

7    actual knowledge that there were no securities transactions

8    going on at least in their accounts or at least some of the

9    transactions were not actual securities transactions.

10         Now, as we go forward or we move into discovery,

11   obviously there will be disputes and we can take discovery

12   on the broader issue but at least at the pleading stage we

13   have satisfied that standard here both in terms of the

14   guaranteed return, the manner in which the extra P&L was

15   paid, the fact that Mr. Mendelow knew about that, the fact

16   that he directed BLMIS on a yearly basis how much to pay him

17   and where to pay it, the fact that it was always

18   accomplished through backdated -- not backdated,  Your

19   Honor.  Sometimes they backdated but always accomplished

20   these fictitious (indiscernible) transactions.

21         And on top of that, Your Honor, he's coordinating

22   with Mr. (indiscernible - D).  From a macro level, Your

23   Honor, we'd also point out the fact that if you look at the

24   way that he treated these accounts, the way that he

25   characterized his returns, he did not treat it as if it was

Page 64

1   a securities trading account.  He referred to his return in

2   terms like interest and --

3           THE COURT:  I read all that.  So what?  What does

4   that mean?

5           MR. NEW:  Well, Your Honor, it goes back to the

6   very basics for the Safe Harbor.  The Safe Harbor is to

7   protect investors who have a legitimate expectation that

8   there's securities trading going on in their accounts.

9           If somebody signs a securities contract with BLMIS

10  as Mr. Mendelow did here, but at the very time that he signs

11  it he knows, you know what, it doesn't matter what he trades

12  in my accounts because he's giving me a fixed return as if

13  it's a loan.  He's giving me an extra amount.  The

14  securities transactions are irrelevant.

15          Well, we would argue, Your Honor, that that shows

16  that he does not have a legitimate expectation like an

17  innocent investor would that BLMIS was actually trading

18  securities in those accounts.  But he believes that Madoff

19  is just giving him money year after year in a preset amount.

20          He's giving him value that he then has the

21  opportunity and ability to withdraw and turn into cash,

22  which is exactly what he did here.  He and his family

23  withdrew over $11 million more than they ever put into their

24  accounts and this spanned the course of 15 years.

25          In fact, if you look at the IRA accounts, there's

1    some statistics we have in the complaint, Your Honor, where

2    after the initial transfer into BLMIS -- those accounts were

3    originally with A&B and he transferred them over to BLMIS --

4    they put in almost no money and they lived off the

5    fictitious profits.

6            Again, that's something that is consistent with

7    somebody who doesn't believe there's actually trading going

8    on, that Madoff is just giving him value in his accounts,

9    which he can then withdraw and use for his own purposes.

10           It would emphasize again, Your Honor, that at this

11   stage it is the pleading stage.  We would be entitled to all

12   plausible inferences in our favor, that we believe that

13   there's more than enough in this complaint based on the

14   facts that we have added to the complaint, in addition to

15   the facts that were originally in the original complaint to

16   raise the inference that Mr. Mendelow had actually knowledge

17   that there was no securities transactions going on in his

18   accounts.

19           THE COURT:  At his deposition to remove 2004 exam,

20   I understand he took the 5th.  But what's the most direct

21   question he was asked regarding his knowledge that there

22   were no securities being traded in his account or that the

23   December true-ups for lack of a better phrase did not result

24   from actual trading?

25           MR. NEW:  Your Honor, as we allege, he took the

Page 66

1    5th over 300 times.

2              THE COURT:  Yeah, but --

3              MR. NEW:  I know you don't have the specific --

4              THE COURT:  I'm curious whether -- you're asking

5    me to draw an inference and that's why I'm asking you

6    whether he was ever asked a question did you know,

7    basically, that there were no securities being traded in

8    your account or some such (indiscernible)?

9              MR. NEW:  Well, we did ask, Your Honor, that for

10   example -- and this is on Page 81 of the transcript --

11   wouldn't you agree that it's impossible to have a guaranteed

12   consistent rate of return on investments in the stock

13   market?  He took the 5th on that.  Isn't it true -- and this

14   is on Page 82 to 83 of the transcript -- and, Your Honor, we

15   could always provide a copy of the transcript to the court.

16   It is referenced in the complaint and so it is incorporated

17   by reference.  We did not want to burden the court with a

18   lengthy transcript but we're happy to submit it if it would

19   help the court.

20              On Pages 82 to 83, the question was asked, "Mr.

21   Mendelow, isn't it true that you knew that fictitious option

22   transactions were added to your BLMIS accounts in order to

23   falsely meet the guaranteed rate of return that Mr. Madoff

24   had promised you?"  Answer, "I take the 5th," which is --

25   and there are others along those lines.  "Isn't it true," --

Page 67

1    this is on Page 85, "Isn't it true that fictitious option

2    trades were added to your BLMIS accounts in order to provide

3    you with the amount of the finder's fee?" "I take the 5th."

4              THE COURT:  Okay.

5              MR. NEW:  He was directly asked that, Your Honor.

6    He was also directly asked about his relationship with Mr.

7    Madoff whether he had personal contact with Mr. Madoff,

8    whether he met him, spoke to him on the phone, whether he

9    visited BLMIS' offices, whether he went to the 17th floor,

10   all the things that the defendant now takes issue with us

11   not specifying in the amended complaint he took the 5th on.

12             And Your Honor, apparently from the motion papers

13   here, it sounds as if Mr. Mendelow will sit for a deposition

14   if this case moves forward.  So perhaps we'll be able to ask

15   him those questions directly.  There will be a full

16   evidentiary record as to whether or not he had knowledge

17   that these transactions were fictitious.

18             If there's a factual dispute, we can take it to

19   trial and that's really what we're asking for at this stage,

20   Your Honor, is the opportunity to continue on with this

21   case, to proceed to discovery.  And defendant's obviously

22   have their theory of the case.  They have their view of the

23   facts.

24             At this stage, the trustee is entitled to have the

25   allegations in the complaint treated as correct and true and

Page 68

1    afterwards we can move on to discovery and have our factual

2    dispute.

3            THE COURT:  Another question, part of your case

4    against the daughters is based on imputation --

5            MR. NEW:  Yes, Your Honor.

6            THE COURT: -- of his knowledge.  What facts do you

7    allege to support imputation?  I see general allegations

8    that he controlled the accounts but I didn't see any

9    specific allegations regarding actual transactions of the

10   accounts.

11           MR. NEW:  Yes, Your Honor.  With regard to Cara

12   Mendelow, on Paragraph 19, the proposed amended complaint

13   alleges that Mendelow opened Cara's account for her with a

14   check that was drawn on the C&P Associate's bank account.

15   And he signed that check.  Now, it also alleges that he

16   directed -- and this is in Paragraph 175 -- that he directed

17   contributions and withdrawals into the account or from the

18   account.

19           THE COURT:  Didn't I reject similar allegations in

20   Shapiro (indiscernible)?

21           MR. NEW:  I don't believe you did, Your Honor.

22   You know, I'd have to go back and check Shapiro, but I

23   believe that at this stage it's sufficient to say that at a

24   fact, he directed contributions and withdrawals and he

25   communicated with BLMIS on her behalf.

Page 69

1            It's not a conclusory allegation that he managed

2      the accounts.  It's actually saying that he directed

3      withdrawals, he directed deposits.

4            THE COURT:  Did he get the statements.  He alleged

5      that he got the statements to those accounts?

6            MR. NEW:  Your Honor, I don't believe that we do

7      allege he got the statements.  I'm not sure that we know at

8      this stage to be honest with you, Your Honor.

9            THE COURT:  I mean, there's a lot of things you

10     don't know but through discovery you still have to put in a

11     complaint.

12            MR. NEW:  We're doing the best we can, Your Honor,

13     based on the facts as we knew them at the time.

14            THE COURT:  Okay.  Was Mendelow asked any of those

15     questions at the Rule 2004 exam in (indiscernible)?

16            MR. NEW:  In terms of his daughters, Your Honor?

17            THE COURT:  Yes.

18            MR. NEW:  Your Honor, I'd have to review the

19     transcript.  I'm not prepared at this time to have the

20     answer of whether he was or he wasn't.

21            THE COURT:  Thank you.

22            MR. NEW:  Your Honor.

23            MR. ARKIN:  Good morning, Your Honor.

24            THE COURT:  Good morning.

25            MR. ARKIN:  I'm Stanley Arkin and together with my

Page 70

1    collages Alex Reisen.  We're here to address the court.  I

2    am willing to have Mr. Reisen argue the case mainly but I'd

3    like to make a couple of very brief general observations

4    with Your Honor's indulgence.

5              THE COURT:  Sure.

6              MR. ARKIN:  Which I'll refer to on the record.

7    There is this argument which my friend, Mr. New and company,

8    makes.  Somehow my firm, we were responsible for some

9    terrible scheme to delay the progress of this case for some

10   several years and that's our fault somehow that so much time

11   went by during which, of course, Mr. (indiscernible - d), a

12   key witness, died.

13             And somehow that should be held against us in

14   respect to this motion.  We never talk about the fact.  We

15   don't hear a thing about the fact.  And by the way, I'd say

16   they look well-fed, well-worked.

17             THE COURT:  So does everybody in this courtroom.

18             MR. ARKIN:  Absolutely.  Well, it's America in a

19   bankruptcy court.  But these people have one of the most

20   extraordinary primary lucrative cases in America for several

21   years and the reason so much time went by I might suggest is

22   not because we were hiding or we were somehow camouflaging

23   ourselves.  We were right there always available for

24   communication.

25             And the reason is that they were busy and they had

Page 71

1    bigger fish to fry, bigger people to go after and we were

2    just, if you will, one of the smaller cases, not who we are.

3    And it should not be held against us in any way that we as a

4    defendant didn't energize the progress of this case.

5              THE COURT:  I don't understand them to be saying

6    that.  It's in response to your argument that there's been

7    undue delay.  They argue that there's been delay on your

8    side, also, and that's part of the reason.

9              MR. ARKIN:  I'd like to point to is they could

10   (indiscernible) at any time and the reason they didn't is

11   really because they have nothing else to do.  That's my

12   point.

13             The second thing I should say -- again, it's just

14   an anecdotal observation -- is that, sure, the issue is

15   actual knowledge, which both in this jurisdiction here, in

16   the criminal law, in any of our major (indiscernible), it's

17   a very difficult concept. Actual knowledge would mean Mr.

18   Mendelow knew -- to use their language in their brief --

19   that there was a house of cards, a complete fraud, Ponzi

20   scheme.

21             Nobody remarks upon the notion or the fact that

22   this very smart accountant, our client, Mr. Steven Mendelow,

23   left a whole lot of money on the table.  If he believed this

24   was a house of cards which could blow up, turn into flames

25   at no time at all as it was based on nothing but fraud, why

Page 72

1    would he have left his money there?

2              I think there should be some inference there in

3    our favor.  In any event, Mr. Reisen, will (indiscernible).

4    Thank you for your indulgence.

5              THE COURT:  Mr. Reisen will rise.  Thank you very

6    much.

7              MR. ARKIN:  Thank you.

8              MR. REISEN:  Good morning, Your Honor.

9              THE COURT:  Good morning.

10             MR. REISEN:  Alex Reisen for defendants.  I'd very

11   much like to address the specific points Mr. New has raised

12   but so why don't we just jump into that and then I'll sort

13   of step back?

14             I guess I'm most concerned about the 5th amendment

15   argument right now.  I just -- none of those -- first of

16   all, I believe he took a total blanket 5th amendment on all

17   of this stuff.

18             THE COURT:  Well my understanding is you have to

19   be asked the question.

20             MR. REISEN:  Understood, understood.  But yes, to

21   all of them.  It wasn't like -- so also we know in Jaffe you

22   may draw an inference.  If so, it's weak.  Anyone could be

23   drawing --

24             THE COURT:  But for the purposes of -- it really

25   comes down to for the purposes of a motion to dismiss, if

Page 73

1   he's asked the $64,000 question did you know and he says I

2   take the 5th, why can't I draw the inference at least for

3   pleading purposes and maybe for trial purposes that he did?

4           MR. REISEN:  Well, I think because you're allowed

5   to take the 5th and I think he's worried about waiver among

6   other things.  If he says no to this, well, what else can

7   you answer about it?  So I mean, I really don't think

8   there's any precedent.

9           The trustee doesn't -- first of all, none of those

10  are in the proposed amended complaint.  None of it is in

11  their briefing.  We're totally caught off guard.

12          THE COURT:  Well, they do allege that he took the

13  5th and I think I can look at that transcript.

14          MR. REISEN:  Okay.  Fair enough.

15          THE COURT:  And they rely on it for that matter.

16          MR. REISEN:  Fair enough.  So let's also talk

17  about Mr. New's first statement was legitimate expectations.

18  It doesn't protect -- that's actually not the standard.  We

19  knew Merkin knew that there was a high degree of

20  probability.

21          THE COURT:  Let me stop you on that.

22          MR. REISEN:  Sure.

23          THE COURT:  There is a difference between

24  receiving high returns ever year even when the market is

25  going down and being told before you put your first dollar

Page 74

1     in really don't worry you're going to make 17%. That's a

2     distinction that you have to draw.

3              MR. REISEN:  Fair enough.  Okay.  So let's --

4     their claim --

5              THE COURT:  I don't think Merkin has anything to

6     do with this case.  It's more of a Shapiro type case.  It's

7     not a typical red flag case.  It's a case where the argument

8     is he actually participated or conspired with BLMIS

9     management to create these fictitious profits.

10              MR. REISEN:  We actually don't agree that there's

11     any factual allegations of any such thing.  I think it's

12     only inquiry notice and it's all speculation.

13              Let's go back to Twombly.  Twombly says non -- you

14     cannot draw non-speculative inferences, not just plausible.

15     But this is all pure speculation based on inquiry notice.

16     Even if Mendelow saw these specific trades, saw this, then

17     took the next step and realized, oh, this is a red flag,

18     even -- neither of those two things are alleged.  Even then,

19     there would be a dozen different things one would assume

20     rather than no securities trades.

21              THE COURT:  So how do they allege actual knowledge

22     if every fact they allege simply puts them on inquiry

23     notice?

24              MR. REISEN:  Well, we can talk about some of the

25     times that you do, but there's -- but it's among the

1    specific facts you must plead a strong inference, specific

2    facts that are with particularity that draw a plausible non-

3    speculative inference.

4            And, so yes, obviously it would be great if you

5    say I knew it but there -- also, all of this stuff is pure

6    inquiry notice.  We can go through the different facts that

7    are alleged and I'll tell you why it's pure speculation and

8    pure inquiry notice and does not draw that non-speculative

9    inference.

10           Let's go straight to the guaranteed returns

11   because that seems to be an issue.  Their claim is that

12   could never be done in a real securities market.

13           Now, first of all, of course, the assumption is,

14   yes, like you said, like we talked about last time, you can

15   just, as he's got a huge, you know, stable -- he's the

16   biggest market maker of (indiscernible) allocates when he

17   trades the same way he does with the extra P&L.  But there's

18   --

19           THE COURT:  Slow down.

20           MR. REISEN:  Sure, sure.

21           THE COURT:  Go ahead.

22           MR. REISEN:  So there's also another way that you

23   can do it and a very simple example.  You know, Mendelow

24   bears the risk.  He's got multibillion dollar bank rolls.

25   He sells options for $1000 that a one in a thousand event

Page 76

1    occurs.  He sells, you know, 432 of them.  If the long shot

2    comes in, Madoff pays it off.  He just bears the risk.

3    That's the exactly the way.  There's an infinite numbers of

4    ways you can "guarantee" returns.

5            So if you had said that -- or he could just -- you

6    could just guarantee something.  Everyone guarantees things

7    and, you know, if -- maybe he'll have just -- it would be

8    wrong and he'll just default.

9            But the bottom line is it's not a non-speculative

10   inference if you're told you'll get a guaranteed return that

11   all of a sudden you have actual knowledge.  That is such a

12   high bar of such a narrow fact you believe that there is no

13   securities trading.

14           The SEC, everyone who had thought it back in '92,

15   guaranteed returns, it's on the TV special, guaranteed

16   returns.

17           THE COURT:  Where is that in the complaint?  I'm

18   looking at the complaint.  It sounds like you're going

19   outside the complaint.

20           MR. REISEN:  Sure.  Well, let's talk about just is

21   it a non-speculative -- and this was in the original

22   complaint, by the way.

23           THE COURT:  Well, for instance, and that's why I

24   asked Mr. New what allegations were in the complaint.  And

25   the substance of what he says, what the complaint says is

Page 77

1   every December Mendelow computed what he needed to get to

2   his number.  He would contact (indiscernible - D).  He would

3   say this is what I need.  This is what I'm entitled to.

4   This is how I want you to divide it up and then magically

5   that number would show up in the December statements as

6   options transactions, profits from option transactions.

7          Why doesn't that tell them these are not

8   legitimate trades?  They're just constructed in order to

9   give me what I'm --

10          MR. REISEN:  It might be.

11          THE COURT:  So why isn't that a reasonable

12  inference?

13          MR. REISEN:  It's not alleged that he ever looked

14  at any of these statements.  It's alleged that -- it doesn't

15  even contemplate.  First of all, it's only alleged that he

16  did this twice.

17          Second of all, he just -- he knows his absolute

18  balance.  He doesn't even need to look at one single

19  transaction.  He knows his balance times 17% and he knows

20  his --

21          THE COURT:  This is a guy who looks at everything,

22  at least the way that it's alleged.  He's marking up

23  documents.  He's communicating.  He's obviously looking

24  beforehand at his statements in order to be sure in terms of

25  what he's entitled to.  So you don't think he's looking at

1    it afterwards to see that he'd gotten what he's asked for.

2         MR. REISEN:  Well, let's look at actually what's

3    written there.  There's only two calculations and the actual

4    scan.  There's two things.  It says 17% times the absolute

5    amount, all you have to look at is the balance.  He never

6    necessarily even saw any of -- whether it was option

7    transactions.

8         THE COURT:  Isn't it reasonable to infer that he

9    looked at the statements given the meticulousness with which

10   he examined them in order to be sure that he got what he was

11   entitled to?

12        MR. REISEN:  That is not a non-speculative

13   inference to say that because he, Mendelow, who is alleged

14   to be a diligent worker, that he looked at the balances,

15   looked at everything, cross checked it against things and

16   came to actual knowledge.

17        THE COURT:  -- that he looked at these statements,

18   would you say that's a conclusory allegation?

19        MR. REISEN:  But all -- remember, they made with

20   particularity, they cannot allege that he looked at any

21   particular transactions.  What they allege is that he looked

22   at the statements.  They're very careful.  If they could

23   allege that he looked at a particular transaction, if there

24   was any evidence ever over 20 years that he ever looked at

25   one, they would say it.

1           All he said is that he reviewed his overall

2    transactions.  The only thing he needed to do was look at

3    the balances and that could easily -- and clearly the

4    inference is that he allocates the amount of that Bernie

5    Madoff bears the risk.

6           Now, remember, it's not is it plausible to say

7    Mendelow maybe had some suspicion but never -- this is

8    really a continuum.  We've got the actual receipt of the red

9    flag (indiscernible) something that's -- then there's actual

10   looking at it. Then there's actual that there's some

11   suspicion. Then there's Merkin.  There's high risk.  But

12   then there's high degree of certainty that no securities

13   traded.

14          To come to that conclusion, I mean -- I just want

15   to step back for a second.  I feel like we lose the forest

16   for the trees.  My wife is ex-securities attorney.  She now

17   works for a nonprofit.  She said --

18          THE COURT:  I think you're going outside the

19   record.

20          MR. REISEN:  Understood.  Fair enough.  That is

21   definitely not put in the complaint.  But the idea is -- and

22   she said, well, you know, what is the standard?  I said

23   actual knowledge that no securities were traded.  She said,

24   well, how can you do it?  Everyone's jaw dropped.  That's

25   not supposed to be possible.  That is not a non-speculative

1    inference that Mendelow concluded with a high degree of

2    certainty.

3           He might have had some suspicions but that's not

4    the standard.  A high degree of certainty, not that there's

5    some --

6           THE COURT:  Are you citing her as a source, like

7    (indiscernible) or is this --

8           MR. REISEN:  Well, I'll tell you --

9           THE COURT:  I mean, I appreciate her views.  But -

10   -

11          MR. REISEN:  Okay.  I'll tell you why because when

12   you look at a complaint and a judge loses all of his context

13   and -- is what is it?  That's sort of the standard of

14   Twomby, right?  That you --is this a plausible inference?

15   Not that he had some suspicion or that it looked like there

16   was something wrong, but a high degree of certainty that

17   there were no securities traded, not some securities traded

18   or there was something fraudulent or even actual knowledge

19   that there was crimes going on.  That's not enough.

20          That there was this totally unprecedented, every

21   institution failed, it's unthinkable.  And to have a high

22   degree of certainty of that?  No way.  So let's talk about

23   some of the other -- so the IRA.

24          So they say -- first of all, again, not allege

25   that he ever looked at any of these cash balances.  We're

Page 81

1    just talking about inquiry knowledge.  But even if he did,

2    their reasoning is totally contradictory.

3              First, you need to hold two contradictory facts in

4    your head, first that Mendelow and Madoff are such law

5    abiding citizens that they would never allow -- the tax regs

6    of allowing cash contributions or margin trading or

7    securities additions.  And at the same time they're the

8    biggest master criminals in the world.  They all know it and

9    they all participated in it.

10             So why -- of course the inference is if he had

11   ever seen it, which is not alleged, he would just assume,

12   yeah, he's trading on margin.  He's not supposed to be doing

13   it.  So, you know, it's just -- that is not a non-

14   speculative inference to draw from, from the IRAs.

15             So and of course the one backdated transaction

16   which they can find out of the millions, he's not allowed --

17   he's not alleged to have ever seen it, so it's an inquiry

18   knowledge.  But second of all, the way this was allocated,

19   it was always some certain.  So (indiscernible - d) would

20   have known exactly the amount and the trades would have

21   happened already.  The only question is where to allocate

22   it.

23             Now, I want to be very clear.  Mendelow calculated

24   it twice right at the beginning.  He did a very simple

25   calculation, a percentage times a total amount plus a

Page 82

1    percentage of the referred customers.  So that's all he did,

2    twice.  And he said that he wasn't constantly going through

3    -- and then the only other thing he calls in December, he

4    says I want my $432 million put here and here.  He's not

5    alleged to have ever seen how it's done.  All he needs to

6    look at is the balance.  It's not even a necessary step to

7    look at any particular trade.

8            That is not a non-speculative inference to draw

9    that.  Because he did that, he said pay my referral fees and

10   of course they're referral fees, by the way.  It's Madoff --

11   it's based on a percent of the amount given back.  Madoff

12   wants to incentivize him to get some more money in.  Of

13   course it's a referral fee. It's not some secret way to get

14   fictitious profits.

15           So we can certainly go back to all the particular

16   allegations here for futility and there's lots more to talk

17   about.  But I also would like to talk about the undue delay

18   and the prejudice.  I understand it's a liberal standard.

19   It's not usually granted.  This is (indiscernible)

20   quintessential case for both undue delay and prejudice.

21           First, undue delay.  It's been six year since the

22   claim, five years since (indiscernible - c).  When

23   (indiscernible - c) came out, they knew unless they can

24   allege actual knowledge, every claim is dismissed except for

25   claim one.

1              You asked me last time, well, why weren't we

2      allowed to wait, too?  The key distinction besides it being

3      their burden is that we had no idea that this was even an

4      option, that it was even possible.  We thought it was

5      privileged.  We didn't know the possibility of amending.

6              THE COURT:  -- possible.

7              MR. REISEN:  We thought the choice was if

8      (indiscernible - c) is affirmed, all the claims get

9      dismissed.  This complaint that we were facing was a pure

10     inquiry notice.  There was no even a single conclusory

11     allegation about anything having to do with no actual

12     securities trade or anything like that.

13             So we didn't know that we're waiting to see if

14     they were to amend the complaint and we were consenting to

15     allow them wait and see what they would allege about

16     subjective -- we never knew it.  And that's proven by even

17     after -- okay so Fishman is affirmed in December.  January

18     they do their case management order.  They say we're not

19     going to amend.

20             February we have a conference.  I say none of your

21     claims are viable.  We're going to move for judgment on the

22     fees unless we can come to a settlement, we reach a

23     settlement on this.  It doesn't seem like there's -- don't

24     even mention any possibility of amending any new

25     allegations.  Now, (indiscernible - d) is still alive at

Page 84

1    that point.

2           And then in May we have a meet and confer.  We

3    say, well, how is it possible, even plausible, non-frivolous

4    for you to allege anything not actual knowledge?  They

5    refused to -- "we will not engage in a discussion about the

6    facts of the law."

7           Then in June, it's the Supreme Court denies cert,

8    the purported reason absolutely no possibility.  They still

9    don't amend, give us any notice.  The first time we hear

10   about it is in the opposition in August of 2015.  And even

11   in December they will not tell us what possible allegations

12   are out there.

13          The standard is it has to be a -- it is their

14   burden to not delay when they have the facts once they know

15   of the pleading deficiencies.  We're telling them.  We're

16   saying, what is it?  They won't even engage with us about

17   telling the -- so that's undue delay.

18          Now prejudice, I mean, (indiscernible - d), he

19   threw everyone under the bridge.

20          THE COURT:  But it sounds like it hurts the

21   trustee's case more than your case.  (indiscernible - d) was

22   the guy who was going to put Mendelow in a room with him,

23   literally, not figuratively.  And now the only person who's

24   a witness to anything is Mr. Mendelow, right?

25          MR. REISEN:  Yeah.  It's not our obligation.  The

Page 85

1    trustee's --

2              THE COURT:  How is the trustee going to prove his

3    case?

4              MR. REISEN:  We want (indiscernible - d) as our

5    affirmative case?  (indiscernible - d), probably we want to

6    say to him, isn't it true that the prosecutors said you need

7    to tell us everything about everyone who had actual

8    knowledge or else you're going to lose your deal?  Yes.  Did

9    you tell everyone, even people that you cared way more about

10   than Mendelow?  Yes.  Did Mendelow know?  No.

11             Would you have lost everything if you had lied and

12   you know that Mendelow knew and you didn't say Mendelow --

13   all of this stuff.  What did you understand on that thing

14   you do, which of course means the real -- you know, on that

15   thing where you pay me referral fees -- what did that mean?

16   We know that you --

17             THE COURT:  But can't Mendelow testify to all

18   that?

19             MR. REISEN:  He can but he's biased against

20   himself.  (indiscernible - d) is biased the other way.  It's

21   additional key evidence.

22             THE COURT:  But even if he's biased, if they have

23   the burden of proof who are they going to call to prove the

24   facts in their complaint, now that Mr. (indiscernible - d)

25   is dead?

1        MR. REISEN:  Well, it's not just that.  Obviously

2    that's not the only factor.  If that was the only factor at

3    issue, Mendelow says no and they don't have this other

4    stuff, then maybe.  But we need (indiscernible - d).

5    (indiscernible - d) can win the case for us.  He would tell

6    us I have all the -- I knew who knew.  These are all the

7    reasons.  I knew everything.  I did everything to hide it.

8            This is how I hid it from Mendelow.

9        THE COURT:  That sounds pretty speculative.  Any

10   evidence that he would testify to that?

11       MR. REISEN:  Sure.  I mean, yes.  If you looked to

12   -- well, firs to fall, like I said, of course he totally

13   opens his books, you know, his mind of everything he knows

14   to the prosecutor.  He says nothing about Mendelow knowing

15   anything.  He says about how he was successful in hiding it

16   from people.  He would have -- I'm sure but if you look at

17   the testimony and --

18           THE COURT:  How do you know what he said to the

19   prosecutor?

20           MR. REISEN:  Well --

21           THE COURT:  He had a transcript of his testimony

22   at trial.  How do you know what he said to the prosecutor?

23           MR. REISEN:  We know what he would say because we

24   know Mendelow didn't know.  We're entitled --

25           THE COURT:  I don't know what he said.

1          MR. REISEN:  Yes, but we're entitled to not be

2     prejudiced to have that opportunity.  If they undue delay

3     without excuse and we're prejudiced, we need that

4     opportunity to ask him, to say, look, (indiscernible - d),

5     tell me all the reasons why you know that Mendelow didn't

6     know.

7          THE COURT:  So why didn't you take his deposition

8     when --

9          MR. REISEN:  Because we had no notice that they

10    would ever make such a -- what we view as a frivolous

11    allegation.  We were even, again, saying how are you going

12    to make your case?  Now, they never we're going to

13    (indiscernible) actual knowledge, that we're going to talk

14    about (indiscernible - d).  We're going to -- we had no --

15    you know, we don't -- we can't just burn fees.  We can't

16    just also prove that Mendelow's (indiscernible) a blank

17    check of $1 billion.

18          But, I mean, why didn't we take (indiscernible -

19    d)'s deposition?  We had no notice that that was even going

20    to be necessary.  We found out after he was dead.  Of course

21    we would do it now.  But he was dead.

22          We were telling them please explain to us.  It's

23    our understanding that this is -- the case is over.  See

24    what our understanding was going up to (indiscernible - c)

25    was not that they would amend once (indiscernible - c) was

1    affirmed but that once (indiscernible - c) was affirmed by

2    the complaint that we're seeing we would settle or it would

3    just be the first case.

4          We had no idea an amendment was a possible to

5    plead actual knowledge.  We thought that that would be

6    frivolous, unethical.  So we can't assume that they will do

7    something that we view objectively as an unethical matter

8    and start billing our client for taking depositions of

9    people about a possibility.  So that's that.

10         So let's go back a little bit to the futility.

11         THE COURT:  Why don't you wrap it up?  You've

12   shown --

13         MR. REISEN:  Sure, fair enough.  Let me think if

14   there's important stuff?  Well, let's think about Jaffe,

15   too, because that was mentioned.

16         Now, this same allegations against Jaffe without

17   the amended complaint in Cohman 1 was made and it didn't

18   even raise the inference of recklessness, the fact that he

19   would call back and say --

20         THE COURT:  The motion was denied in Cohman 2.

21         MR. REISEN:  Cohman 2.  Now, let's distinguish

22   Cohman 2.  First of all, it shows that -- so Mendelow,

23   again, no evidence of subjectivity of him saying go do a

24   backdated trade.  Go execute -- he just says pay me my

25   referral fees and however you do it.

Page 89

1          And now Jaffe "executes" a backdated trade.  He

2     says go give me some long-term gains in my account which

3     necessarily means it's his account, which necessarily means

4     he's committing tax fraud.  Also the perfect control is that

5     those allegations were not made against the other Cohman

6     defendants.  So that actually necessarily had no weight on

7     the Jaffe decision because the other defendants didn't have

8     that.

9          THE COURT:  The backdating (indiscernible) had no

10    weight in the Cohman 2?  That was the basis of deciding the

11    actual knowledge.

12         MR. REISEN:  Well, I guess I'm saying that the --

13    well, I thought Cohman 2 had other defendants and that was a

14    delay against --

15         THE COURT:  Yeah, the defendants were in -- they

16    were Madoff's partners and they had a separate set of books

17    and records in Madoff's case.

18         MR. REISEN:  Fair enough.  I guess not that it had

19    no weight but not necessary weight.

20         THE COURT:  I think it was the ratio

21    (indiscernible) decision.

22         MR. REISEN:  Okay.  Well, let's be very clear

23    about there was no allegation of any knowledge of backdating

24    on Mendelow, that the fact is is that, first of all, there's

25    no allegation that he ever saw this backdated trade, that he

Page 90

1    ever directed it, ever had knowledge of it.  It's pure

2    inquiry notice.

3            Also, even if he did see it, there's no necessary

4    -- certainly, no non-speculative inference that you get to a

5    high degree of certainty of no securities traded that you

6    would have had to have backdated.

7            Again, he knows the exact figure that you're going

8    to have to give Mendelow.  The only thin Mendelow does is

9    say where he wants it.  There was only twice where he

10   calculated the fees.  It was just a pure percentage times an

11   amount.  No necessary -- then again, after that, all he did

12   was call and say, look, (indiscernible), which accounts?

13   This one and that one.  That's all.  There was no necessary

14   looking at any particular transactions.  And, indeed, that

15   is not -- they are no able to non-frivolously allege that.

16           All they can say is that he looked at his account

17   statements because that's the only thing that's shown by

18   both those PDFs and by the necessary calculations that he

19   did the total times the percentage.  Nothing having to do

20   with the subjectivity, nothing even close to the

21   relationship like in Shapiro or Cohman where they're

22   (indiscernible) hundreds of times.

23           Mendelow never went to BLMIS.  He never met him.

24   Maybe spoke to him once.  They say that he contacted him.  I

25   don't know whether that was an email, was a letter.  That's

Page 91

1   the most.  He didn't talk to anyone, Madoff or anyone about

2   the inner workings of BLMIS.

3          So if the court has any other questions, I'll just

4   leave it at that.

5          THE COURT:  Okay.  Thank you.

6          MR. NEW:  Your Honor, I'll be very brief.  First,

7   I just want to point out that with regard to the issue of

8   Mr. (indiscernible - d) and some of the timing of when they

9   were on notice, you know, as we point out in our reply

10  brief, Mr. (indiscernible - d) was identified in the

11  original complaint as a participant in the fraud.  That was

12  at Complaint Paragraph 32.

13         Mr. Mendelow was specifically asked about his

14  interactions with Mr. (indiscernible - d) at his rule 2004

15  deposition.  And Mr. (indiscernible - d)'s trial testimony

16  he specifically mentioned Mr. Mendelow as a person who

17  received a double benefit.

18         And also, Your Honor, as Mr. Reisen mentioned

19  briefly, there was a case management order that the parties

20  agreed on in this case in January.  It wasn't something we

21  submitted.  We both stipulated to it.

22         We exchanged initial disclosures in the end of

23  January 2015 and one of the potential witnesses for the

24  trustee identified in those initial disclosure was Mr.

25  (indiscernible - d), so and that was several months before

Page 92

1     he passed away.

2          But, again, they have had notice of Mr.

3     (indiscernible - d) relevance to this case for quite some

4     time, so that really is a red herring here.

5          Quickly on some of the other points, Your Honor, I

6     would point out that, you know, when it comes to the issue

7     of how he was being compensated with this extra P&L and what

8     he knew, a lot of what Mr. Reisen just stated here was

9     theory, speculation, alternative facts, as Your Honor

10    pointed out, that are not in the complaint.

11         Obviously they can pursue those theories, they can

12    try to develop those facts in discovery but the complaint as

13    it stands right now makes it very clear how Mr. Mendelow

14    received this extra P&L.  It was through these fictitious

15    option transactions.  There were no allegations that -- and

16    I'm not aware of any facts that suggest that Mr. Madoff or

17    BLMIS had some other pool of securities that they somehow

18    allocated into his account.  There's nothing in the

19    complaint that supports that.

20         And I would point out, Your Honor, that what the

21    complaint does say very clearly is that on the account

22    statements and in Mr. Mendelow's own handwritten

23    calculations, there were no securities that were contributed

24    to his account.  So it's simply not the fact based on the

25    allegations in the complaint which need to be accepted as

Page 93

1    true at this point, that Mr. Mendelow could have believed

2    that he was getting securities transferred into his account

3    that were coming from some other source because there's no

4    evidence that that actually happened either on his account

5    statements or in his own calculations.

6           In any event, the question before the court at

7    this time is whether this is a plausible inference that Mr.

8    Mendelow knew that these were fictitious option transactions

9    in his accounts, not whether it's the only plausible

10   interest, not whether it's the most plausible inference, but

11   whether or not the facts alleged and the inferences to be

12   drawn from them raised a plausible claim for relief.

13   Discovery can sort out the rest of it.

14          With regard to the IRA, Your Honor, I don't think

15   that Mr. Reisen quite understands what the argument is here.

16   I assume that the court does.

17          The argument is not that there were margin trades

18   in the account.  It's not that he should have looked at the

19   statements and seen that there were margin trades in the

20   account.  The argument is is that he specifically directed

21   that he be getting extra value in his IRA accounts in a

22   preset amount, that that was accomplished through fictitious

23   option transactions and that was the only way that it could

24   have been accomplished, through gains on transactions.

25          Mr. Mendelow is a sophisticated accountant; he's a

Page 94

1    sophisticated financial professional.  The allegations in

2    the claim are sufficient to show that he knew that he was

3    being compensated at his direction, at his request in

4    transactions in that account.

5              And finally, with regard to Jaffe, Your Honor, I

6    don't want to beat a dead horse, but --

7              THE COURT:  But you will.

8              MR. NEW:  Yeah, I will, just very briefly just to

9    provide citations to the court in case the court doesn't

10   have it.

11             In the actual Cohman decision, 2013 US District

12   Lexis 56042 at 38 to 39, the allegations that were relied

13   upon by Judge Rakoff are that Jaffe request to Madoff

14   Securities "a long-term gain of approximately $600,000 for

15   one of the accounts he controlled in response to which

16   Madoff Securities executed a sale of Etna stock on the day

17   before the request."  That's the sum total of the

18   allegations and that's comparable to what we've alleged here

19   with regards to that one backdated trade.

20             Unless Your Honor has any further questions about

21   the amendment, I would just like to briefly raise the

22   housekeeping matter that's also on the calendar for today.

23             THE COURT:  Go ahead.

24             MR. NEW:  You know, the parties have discussed

25   this prior to court today and I believe that we've agreed on

Page 95

1    a stipulation that we'll submit to the court this afternoon

2    which will ask the court to so-order the stipulation that

3    the case management -- the dates in the case management

4    order are being held in abeyance pending the court's

5    determination on this motion and the defendant's motion and

6    that upon determination by the court on those motions the

7    parties will agree upon new dates to be proposed to the

8    course in an amended case management order.

9              THE COURT:  All right.

10             MR. REISEN:  If I may just address what he said.

11             THE COURT:  No.  I'll reserve decision.  But what

12   I would like is a copy of the 2004 transcript and those

13   questions and answers you want me to read.

14             MR. NEW:  Yes, Your Honor.  We will do so.

15             THE COURT:  And you can tell me any questions and

16   answers you want me to read also, Mr. Reisen.  Thank you

17   very much.

18             MR. NEW:  Thank you, Your Honor.

19             THE COURT:  Thank you.

20             (Whereupon these proceedings were concluded at

21   12:07 PM)

22

23

24

25

Page 96

1                  C E R T I F I C A T I O N

2

3      I, Sonya Ledanski Hyde, certified that the foregoing

4      transcript is a true and accurate record of the proceedings.

5

6      Sonya

       Ledanski Hyde

Digitally signed by Sonya Ledanski
Hyde
DN: cn=Sonya Ledanski Hyde, o, ou,
email=digital1@veritext.com, c=US
Date: 2016.03.03 14:00:06 -05'00'

7

8      Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20     Veritext Legal Solutions

21     330 Old Country Road

22     Suite 300

23     Mineola, NY 11501

24

25     Date:  February 25, 2016

| **&** | **1500**  6:17 | **325**  7:3 | **83**  66:14,20 |
|---|---|---|---|

**&**  4:17 6:15 7:1
38:12

**0**

**04891**  4:13
**08-01789**  1:18 4:4
4:10
**08-99000**  1:3
**09-01503**  1:9 4:1

**1**

**1**  46:12 87:17 88:17
**10**  4:12 10:11 20:12
31:14
**10,000**  11:8
**10-04283**  3:2 4:20
4:23
**10-04891**  2:1
**10-04918**  2:14 4:16
**10-4841**  4:17
**10-5143**  4:17
**100**  10:14
**100,000**  61:3,4
**1000**  6:2 75:25
**10004**  3:13
**10010**  7:4
**10022**  5:6 7:11
**10036**  6:11,18
**10111**  5:13
**102**  12:8 20:18
**103**  27:17
**104**  8:5 20:18 21:22
25:1 27:8,11 28:5
**10:16**  3:15
**11**  64:23
**115**  59:15,16 60:22
60:22
**11501**  96:23
**11th**  53:4,7
**12**  23:19
**12:07**  95:21
**1314.03**  11:3
**14th**  20:25 50:21
51:25
**15**  9:9 26:5 30:7
56:4 64:24

**1500**  6:17
**1667**  6:2
**17**  16:19 56:13,20
57:8,18,19 58:25
74:1 77:19 78:4
**175**  68:16
**17th**  67:9
**18th**  50:14 55:11
**19**  68:12
**1998**  11:2,4,10,19
15:18 31:14
**1999**  41:19 45:9
**1b0022**  17:12
**1b0156**  17:14
**1st**  53:2,16 54:1

**2**

**2**  39:16 88:20,21,22
89:10,13
**20**  78:24
**200,000**  16:4 61:3
**20006**  6:3
**2004**  65:19 69:15
91:14 95:12
**2008**  19:7 31:14
**2009**  8:5
**2013**  94:11
**2015**  84:10 91:23
**2016**  3:14 96:25
**206,000**  9:11 16:5
18:22 26:5 30:7
**22**  9:23 17:23 22:7
24:10,21 28:24 29:2
**23**  19:6
**24**  3:14
**25**  96:25
**25th**  7:10 19:17
**260,000**  18:22
**2nd**  17:18,21 18:9
32:3 40:1,5 42:6
43:6 44:4,5,7 48:9
49:7,16,16 53:2

**3**

**30**  14:21,21 16:23
**300**  66:1 96:22
**32**  91:12

**325**  7:3
**330**  96:21
**37b2a**  52:20
**38**  94:12
**39**  94:12
**39th**  50:19

**4**

**40**  14:21
**4041**  7:2
**41**  7:3
**432**  76:1 82:4
**45**  5:12
**465**  5:5
**4841**  52:13
**4918**  52:13
**4981**  7:2

**5**

**5**  9:9
**50**  11:11,12
**500**  48:21
**53**  21:17
**54**  21:17
**558,868**  9:22 10:4
26:14
**56042**  94:12
**570,000**  38:17 43:20
**586,000**  10:3
**5:18**  20:6
**5th**  20:25 65:20
66:1,13,24 67:3,11
72:14,16 73:2,5,13

**6**

**600**  21:16
**600,000**  94:14
**64,000**  73:1

**7**

**7**  6:10
**7007-1**  4:16,23
**750**  7:10
**78fff**  14:18

**8**

**8**  41:17 45:6
**81**  66:10
**82**  66:14,20

**83**  66:14,20
**85**  67:1
**8514**  7:2 52:13
**88**  20:20
**8th**  50:19,20

**9**

**9**  41:20 45:9

**a**

**a&b**  65:3
**aaron**  4:3 8:4 22:21
23:25
**abeyance**  95:4
**abiding**  81:5
**ability**  64:21
**able**  10:13 34:2
42:5 44:6 54:10
57:16 67:14 90:15
**absolute**  77:17 78:4
**absolutely**  70:18
84:8
**abundantly**  50:4
**accept**  27:7
**accepted**  20:17
92:25
**accepts**  27:1
**access**  10:5
**accomplished**  58:19
58:22 60:3 63:18,19
93:22,24
**account**  9:8,12,22
9:23,24 11:14 16:11
16:14 17:12,13,13
17:13,16,23,23 18:1
18:2,7,11,11,14,18
18:21 19:22 22:8,9
23:4,8,11 24:10,14
24:15,19,21,24
25:13,17,17,19,21
25:21 26:5,12,13
28:24 29:2,2,2,4
30:9 39:16 56:17
57:1,9,9 59:16,24
60:4,5,7,21 61:4,4
61:16,21,23,24
62:14 64:1 65:22
66:8 68:13,14,17,18

89:2,3 90:16 92:18
92:21,24 93:2,4,18
93:20 94:4
**accountant** 71:22
93:25
**accounting** 14:24
15:1
**accounts** 26:17 56:7
56:10,13,15,21
57:23 58:12,19,20
58:21 59:16 60:19
61:13,24 62:2,13
63:8,24 64:8,12,18
64:24,25 65:2,8,18
66:22 67:2 68:8,10
69:2,5 90:12 93:9
93:21 94:15
**accurate** 96:4
**achieved** 57:18
61:18
**act** 42:18
**action** 29:23
**actions** 25:8
**actual** 25:12,24
31:16 33:22 56:25
57:3 60:9 63:3,6,7,9
65:24 68:9 71:15,17
74:21 76:11 78:3,16
79:8,9,10,23 80:18
82:24 83:11 84:4
85:7 87:13 88:5
89:11 94:11
**added** 56:15 57:8
65:14 66:22 67:2
**addition** 15:24
23:16 59:20 65:14
**additional** 34:12,14
53:14 60:13 85:21
**additions** 81:7
**address** 19:16,19
20:3 34:14 41:4
70:1 72:11 95:10
**addressing** 40:22
**adduced** 12:14
**adhere** 12:22
**adjournment** 53:11

**adjustment** 58:13
**admissible** 33:11
44:18
**admission** 20:8
**admissions** 36:18
**admit** 36:17
**admits** 53:20
**admitted** 20:8
37:23,23 51:1
**adopt** 40:6
**adopted** 39:10,10
**adv** 1:9,18 2:1,14
3:2 4:1,4,10,12,16
4:16,19,23
**adversary** 55:24
**advised** 48:6
**advisor** 8:9
**affect** 29:10
**affidavit** 8:21,23,25
31:5,7 37:19
**affirm** 4:6 36:9,19
**affirmative** 85:5
**affirmed** 17:16 83:8
83:17 88:1,1
**afternoon** 95:1
**aging** 12:13
**ago** 20:2 38:19,20
46:5
**agree** 12:5 18:14,16
22:8 44:12 45:4
53:12 54:3 66:11
74:10 95:7
**agreed** 29:5 91:20
94:25
**agreement** 37:24
56:18
**agrees** 42:6 44:5
**ahead** 8:2 17:5
22:12 35:3 45:25
52:14 53:5 55:9
75:21 94:23
**aid** 29:20
**akin** 7:8
**al** 1:15,23 3:8 6:8
6:16 7:9
**alan** 52:17

**alex** 7:13 70:1 72:10
**alive** 83:25
**allegation** 62:19,22
69:1 78:18 83:11
87:11 89:23,25
**allegations** 58:23
61:22 62:18,20
67:25 68:7,9,19
74:11 76:24 82:16
83:25 84:11 88:16
89:5 92:15,25 94:1
94:12,18
**allege** 57:15 58:15
59:5,11 60:10 61:5
65:25 68:7 69:7
73:12 74:21,22
78:20,21,23 80:24
82:24 83:15 84:4
90:15
**alleged** 58:9 61:15
69:4 74:18 75:7
77:13,14,15,22
78:13 81:11,17 82:5
93:11 94:18
**alleges** 56:9 68:13
68:15
**alleging** 60:25
**allocate** 61:2,9
81:21
**allocated** 81:18
92:18
**allocates** 75:16 79:4
**allow** 4:3 81:5
83:15
**allowance** 24:9
**allowed** 14:15 73:4
81:16 83:2
**allowing** 81:6
**allows** 12:16
**alternate** 41:19
**alternative** 92:9
**amenable** 21:2
**amend** 4:19 27:7
47:9 55:23 56:3
83:14,19 84:9 87:25
**amended** 56:9
67:11 68:12 73:10

88:17 95:8
**amending** 83:5,24
**amendment** 56:1
72:14,16 88:4 94:21
**america** 70:18,20
**amount** 9:21 14:13
14:14 16:5 26:11
38:16 39:12,25
41:17 42:7,8,25
43:8,18,19,19 45:3
45:7 48:15 49:5,10
56:16 57:21 58:18
59:18 60:13,18 61:7
61:8,8,20 62:3,11
62:22,24 64:13,19
67:3 78:5 79:4
81:20,25 82:11
90:11 93:22
**amounts** 44:23
57:23
**analysis** 11:25 15:1
**anecdotal** 71:14
**annexed** 35:21
**annual** 57:14
**answer** 20:1 66:24
69:20 73:7
**answers** 20:7 95:13
95:16
**antecedent** 40:2
42:19,24
**apparently** 67:12
**appeal** 17:18
**appeals** 19:23
**appear** 17:21 51:20
52:3
**appearance** 52:5
**applied** 15:8
**applies** 4:16
**appreciate** 80:9
**appropriate** 49:4
**approved** 28:17
**approximately**
62:24 94:14
**april** 20:25 50:12
50:19,19,21 51:25
**aren't** 10:19 44:24
51:17

**argue** 64:15 70:2 71:7

**arguing** 12:24

**argument** 12:21 15:10,13 18:1 30:23 41:16 43:5 47:1 48:12,14,16,18,19 49:12 70:7 71:6 72:15 74:7 93:15,17 93:20

**arguments** 13:1 14:2 42:15 57:4

**arkin** 7:14 69:23,25 69:25 70:6,18 71:9 72:7

**arose** 27:12

**arrangement** 58:17

**article** 41:17 45:6 46:12

**ascertainable** 14:19

**aside** 49:9

**asked** 9:3 20:1 39:14 46:5 52:3 61:20 62:3,7,25 65:21 66:6,20 67:5 67:6 69:14 72:19 73:1 76:24 78:1 83:1 91:13

**asking** 8:14,16,16 9:2 10:17 23:5 25:23 30:1 31:21 41:7,10 66:4,5 67:19

**asks** 8:10

**assert** 47:9,16,17 48:4

**asserting** 42:6,7 47:5

**assist** 14:24

**associates** 4:8

**associate's** 68:14

**assume** 32:15 41:14 60:15 74:19 81:11 88:6 93:16

**assumption** 9:16 75:13

**at&t** 11:3 22:17,18 22:21 23:8 24:4

**attests** 8:11

**attorney** 5:4,11 6:8 6:16 7:2,9 79:16

**attorneys** 54:23 55:2

**auerbach** 2:7,7,8,9 2:10,11 6:16 36:22 38:13,13,14,14

**august** 53:23 84:10

**auld** 6:8

**available** 70:23

**avenue** 5:5 7:10

**avoid** 42:5

**aware** 17:15 28:10 46:12 92:16

### b

**b** 3:23 4:16,23 5:20

**b22** 18:13

**back** 10:11,18 16:23 20:19,19 21:15 24:8 39:12 40:1 42:6 51:20 64:5 68:22 72:13 74:13 76:14 79:15 82:11,15 88:10,19

**backdated** 62:7,24 63:18,18,19 81:15 88:24 89:1,25 90:6 94:19

**backdating** 89:9,23

**backs** 24:2

**backup** 15:13

**baker** 5:10

**balance** 13:25 25:21 26:18 41:14 77:18 77:19 78:5 82:6

**balances** 60:4 78:14 79:3 80:25

**bank** 11:10 24:5 68:14 75:24

**bankr** 4:15

**bankruptcy** 1:1 3:11,25 4:23 39:9 42:18 70:19

**bar** 76:12

**based** 19:22 25:12 29:19 42:19 58:4,6 60:9 65:13 68:4 69:13 71:25 74:15 82:11 92:24

**basic** 8:9

**basically** 31:22 66:7

**basics** 64:6

**basis** 11:21 13:1 15:3 26:20 31:23 34:1 58:5 63:16 89:10

**battle** 35:1

**bears** 75:24 76:2 79:5

**beat** 94:6

**beckerlegge** 5:21

**beginning** 10:18 81:24

**behalf** 8:4 12:20 52:16 56:8 68:25

**belabor** 54:19

**believe** 32:2 33:11 37:4 38:2,22 46:23 65:7,12 68:21,23 69:6 72:16 76:12 94:25

**believed** 71:23 93:1

**believes** 64:18

**bell** 6:5 19:4,10,14 19:16,19 20:17 21:8 21:13 35:6

**benefit** 47:13 91:17

**benefits** 56:12

**bernard** 1:6,11,23 2:3,16 3:4 8:8 39:11

**bernfeld** 2:20 52:1 52:18,18

**bernie** 21:22 79:4

**bernstein** 3:24

**best** 30:18 69:12

**better** 65:23

**biased** 85:19,20,22

**bigger** 71:1,1

**biggest** 75:16 81:8

**billing** 88:8

**billion** 87:17

**billions** 11:21

**bit** 88:10

**black** 4:8

**blank** 87:16

**blanket** 72:16

**blecker** 4:4 5:4 8:4 8:4 9:3,18,21 10:9 11:12 12:7,13 14:7 14:13 15:13,24 16:3 16:4,8,21 17:4,17 19:25 22:5,14,21 23:25 24:2,3,6 26:11 27:4 28:2,5

**blecker's** 10:12 17:11,19,21 19:6 20:7 27:4 29:3 30:6

**blmis** 13:11 16:16 36:16 39:11 45:5 56:7 57:16 58:7 59:2 60:15 62:21,23 63:16 64:9,17 65:2 65:3 66:22 67:2 68:25 74:8 90:23 91:2 92:17

**blmis'** 67:9

**blow** 71:24

**bo56** 9:25

**bonding** 43:3

**bonuses** 59:23

**books** 12:17 13:10 14:20,25 16:6 25:10 29:19 32:22 86:13 89:16

**bottom** 46:1 76:9

**bowling** 3:12

**break** 55:18,20

**bridge** 84:19

**brief** 13:18 20:25 21:1 32:25 34:12 70:3 71:18 91:6,10

**briefing** 34:3,4,9,10 73:11

**briefings** 20:10

**briefly**  91:19 94:8
  94:21
**brings**  13:13
**broader**  63:12
**broadway**  6:17
**brought**  22:7
**brown**  5:15 12:20
  12:20 13:4,9,17
  14:8,12 15:15,20,24
  16:12 17:6,9,24
  18:3,5,7,13,16,20
  18:24 19:1 33:20
  34:2,7,10,12,20
**bunch**  21:15
**burden**  47:23,23,25
  66:17 83:3 84:14
  85:23
**burn**  87:15
**busy**  70:25

**c**

**c**  2:7,9,10 5:1 8:1
  52:20 82:22,23 83:8
  87:24,25 88:1 96:1
  96:1
**c&p**  68:14
**calculated**  81:23
  90:10
**calculates**  9:21
**calculation**  15:7
  18:21 58:5 81:25
**calculations**  59:21
  59:21 78:3 90:18
  92:23 93:5
**calendar**  94:22
**call**  60:14 85:23
  88:19 90:12
**called**  10:12 60:2
**calls**  62:8,11,15
  82:3
**camouflaging**  70:22
**can't**  9:6 11:12
  12:15 14:6 20:3
  28:13 32:5,13,20
  33:3,14 40:14 47:17
  60:21 73:2 85:17
  87:15,15 88:6

**capacity**  20:21
**cara**  68:11
**cara's**  68:13
**cards**  71:19,24
**cared**  85:9
**careful**  78:22
**case**  1:3,9,18 2:1,14
  3:2 4:1,4,10,12,16
  4:19,23 15:8 19:20
  25:3 27:3 32:5,20
  32:21 36:24,25 37:1
  38:18 42:24 43:5
  44:13,20 45:22 46:6
  46:21 47:1,4 48:7,8
  48:16,17 51:2,7
  53:17 55:6 62:16,19
  67:14,21,22 68:3
  70:2,9 71:4 74:6,6,7
  74:7 82:20 83:18
  84:21,21 85:3,5
  86:5 87:12,23 88:3
  89:17 91:19,20 92:3
  94:9 95:3,3,8
**cases**  11:23 36:15
  36:17 39:1 43:13
  48:21,25 49:5 52:10
  52:17,22 70:20 71:2
**cash**  13:19,21 16:1
  16:2,25 17:25 18:15
  57:9 58:13,19 59:24
  60:5 61:16 64:21
  80:25 81:6
**cashed**  24:3
**cashman**  6:7 50:25
**caught**  73:11
**cause**  27:24
**causing**  49:6
**century**  20:19
**cert**  84:7
**certain**  14:13 15:5
  19:21 26:18 56:13
  59:9 81:19
**certainly**  32:16
  51:16 82:15 90:4
**certainty**  79:12
  80:2,4,16,22 90:5

**certificate**  36:12
**certified**  96:3
**certify**  49:15
**certifying**  26:8
**chairman**  8:4
**chaitman**  5:3,8 8:3
  8:18 9:1,13,25 10:4
  10:24 11:17 12:5
  14:12 19:3 20:2
  22:3,7,10,13,19,25
  23:3,7,14,22 24:12
  24:17,25 25:3,16,22
  25:25 26:8,20,25
  27:20 28:1,6,8,14
  28:20 30:22,24 31:1
  31:6,8,25 32:14,25
  33:4,9,16,18 34:22
  35:1,4,10,11,14,17
  35:20,23 36:2,4,7
**chaitman's**  12:21
  21:14
**challenge**  12:8
**chambers**  4:1
**change**  28:21
**changed**  35:22
**characterized**  63:25
**characterizing**  58:8
**chart**  35:20
**charts**  11:13
**chase**  42:21
**check**  8:10,11 11:3
  22:17,18,19,20,20
  22:21,22 23:17,19
  23:21,25 24:3,6,7
  58:20 68:14,15,22
  87:17
**checked**  78:15
**checking**  30:9
**checks**  11:9 24:3
**chief**  43:6
**choice**  83:7
**circuit**  17:18,21
  18:9 32:3 40:1,5
  42:6 43:6 44:4,5,7
  48:9 49:8,16,16
**circuits**  32:4

**certificate**  36:12
**circumstances**  18:4
  24:15 29:3 44:25
**citations**  94:9
**cited**  11:23 32:3
**citing**  80:6
**citizens**  81:5
**civil**  52:20
**claim**  4:3 8:17
  17:11,11,19,21 19:6
  24:9 25:9 30:1
  39:11,17,20,23,25
  40:22 41:17,19,19
  42:8,11,17,18,20,25
  43:18,19,20,24
  45:13,16 74:4 75:11
  82:22,24,25 93:12
  94:2
**claimants**  4:7
**claiming**  25:25
  47:14
**claims**  4:7 14:19
  15:11 19:5,11,21
  25:5,9 34:1 41:18
  43:7 83:8,21
**claim's**  42:14
**clarify**  47:12
**claw**  39:12 40:1
  42:6
**clear**  50:4 59:20
  81:23 89:22 92:13
**clearly**  20:3,5,21
  43:6 79:3 92:21
**clerk**  52:3
**client**  28:6,12 31:19
  31:20,20 38:16
  39:11 40:3 45:5
  48:6 49:21 71:22
  88:8
**clients**  28:7 35:10
  35:12 39:16 47:5,10
  49:10 54:7
**client's**  40:22 42:8
  42:17
**close**  37:12 90:20
**code**  39:9
**cohmad**  62:19

cohman  88:17,20
88:21,22 89:5,10,13
90:21 94:11
collages  70:1
collateral  41:12
come  12:3 18:8 24:8
54:24 57:15 79:14
83:22
comes  72:25 76:2
92:6
coming  93:3
committing  89:4
common  8:9
communicated
68:25
communicating
77:23
communication
70:24
company  22:17,20
23:21 25:18 70:7
comparable  62:17
94:18
compelling  48:14
compensated  56:19
92:7 94:3
complain  58:15
complaint  42:16
55:24 56:9 57:15
58:9,24,24 59:15
60:10 61:14,15 62:6
62:22 65:1,13,14,15
66:16 67:11,25
68:12 69:11 73:10
76:17,18,19,22,24
76:25 79:21 80:12
83:9,14 85:24 88:2
88:17 91:11,12
92:10,12,19,21,25
complete  14:25
34:3 71:19
completed  36:24,25
complex  20:22
21:14
comprehensive
49:12

computed  58:3 77:1
computer  13:12
concede  47:15
concept  71:17
concerned  72:14
conclude  26:2
concluded  31:15
80:1 95:20
conclusion  55:4
79:14
conclusory  59:7
69:1 78:18 83:10
conditional  54:8
conditions  54:20
confer  38:15 46:5
47:8 84:2
conference  4:1,12
4:15,22 35:18 38:22
50:20,21 52:1,23
53:7,9,12 55:6
83:20
confirm  11:11,12
conflict  42:21
connection  33:15
58:11
consent  46:13,24
54:14
consented  46:20
consenting  83:14
consequence  43:18
consequences  44:24
consider  49:17
54:22
consideration  40:14
consistent  13:22
15:7 56:13 65:6
66:12
conspirator  11:20
conspired  74:8
constantly  82:2
constructed  77:8
contact  67:7 77:2
contacted  53:10
59:11 90:24
contemplate  77:15
contemporaneous
15:25 20:18

contemporaneously
13:24 20:13
context  42:12 80:12
continue  27:16
67:20
continuum  79:8
contract  64:9
contradictory  81:2
81:3
contributed  92:23
contribution  61:16
contributions  58:20
59:24,25 60:1 61:17
68:17,24 81:6
control  89:4
controlled  68:8
94:15
conversation  36:6
coordinating  63:21
copy  20:7 66:15
95:12
corporation  1:20
6:1
correct  18:5 54:4
67:25
correlate  10:14
correlated  11:9
correlation  31:15
31:18
couldn't  12:9 48:11
counsel  11:15 21:18
37:7 38:12 39:14
43:2 52:2,3,17 53:3
53:10,13,20,20,23
53:25
counter  29:17 30:3
country  96:21
couple  38:19,20
39:6 70:3
course  22:14 29:12
64:24 70:11 75:13
81:10,15 82:10,13
85:14 86:12 87:20
95:8
court  1:1 3:11 8:2
8:15,23 9:5,23 10:2
10:10 11:15 12:4,19

12:22,25 13:3,5,15
14:5,10 15:6,9,12
15:17,23 16:10 17:5
17:8,10,19,22,25
18:4,6,10,14,17,22
18:25 19:2,8,12,15
19:18,23 20:1,4,10
20:15,23 21:4,9,19
21:25 22:2,6,12,18
22:23 23:1,5,12,18
24:8,13,20 25:2,6
25:20,23 26:4,16,23
27:1,10,21,23 28:3
28:7,11,16,22 30:23
30:25 31:2,4,7,10
32:4,12,20 33:2,7
33:13,17,19,23 34:4
34:9,11,15,18,21,23
35:3,5,7,13,16,18
35:22,24,25 36:3,5
36:8,22 37:2,5,8,14
37:25 38:3,7,10,20
38:24 39:3,17,20
40:5,11,18,20,24
41:2,5,9,13,16,22
41:24 42:2,4,9,11
43:11,16,21,24 44:2
44:8,14,19 45:2,10
45:12,15,20,24 46:6
46:7,9,12,16,17,18
46:20,25 47:13 48:2
48:11,18 49:2,9,14
49:19,25 50:3,8,11
50:18 51:3,5,10,15
51:21,23,25 52:5,8
52:11,14,23,25 53:5
54:2,13,17,20,25
55:9,13,18,21 56:2
56:18 57:2,11,25
58:3,23 59:7 60:8
60:13,24 64:3 65:19
66:2,4,15,17,19
67:4 68:3,6,19 69:4
69:9,14,17,21,24
70:1,5,17,19 71:5
72:5,9,18,24 73:12
73:15,21,23 74:5,21

75:19,21 76:17,23
77:11,21 78:8,17
79:18 80:6,9 83:6
84:7,20 85:2,17,22
86:9,18,21,25 87:7
88:11,20 89:9,15,20
91:3,5 93:6,16 94:7
94:9,9,23,25 95:1,2
95:6,9,11,15,19
**courtroom** 70:17
**courts** 43:12
**court's** 17:16 19:17
52:19 95:4
**covered** 61:14
**create** 44:14 74:9
**creates** 10:23
**credibility** 30:5
**credible** 8:21
**credit** 34:5
**creditor** 8:24 34:1,1
**credits** 13:20
**cremona** 5:17
**crimes** 80:19
**criminal** 71:16
**criminals** 81:8
**cross** 21:10 29:16
78:15
**cullen** 51:2,9,12
**curious** 66:4
**currently** 38:13
48:22
**customer** 4:3 8:10
8:10 11:7,9 12:18
13:23 15:25 19:20
20:3,6 22:20,22,22
24:7,9 26:1,1 27:2
36:10
**customers** 8:13 9:2
17:2 19:24 21:17
36:17,19 43:7 50:25
56:19 57:25 58:6,10
58:11,12 82:1
**customer's** 13:25
**cut** 42:21

**d**

**d** 5:18,21 8:1 52:9
59:12,13,17,22
60:25 61:6,12 62:8
62:11,15 63:22
70:11 77:2 81:19
83:25 84:18,21 85:4
85:5,20,24 86:4,5
87:4,14,19 91:8,10
91:14,15,25 92:3
**daily** 11:21
**damages** 19:22 45:3
49:10
**date** 21:20 42:1
50:7,21 53:17 55:15
96:25
**dates** 95:3,7
**daughters** 68:4
69:16
**davis** 5:8 8:4
**day** 9:10 20:12,19
21:16 34:5 44:15
50:11 94:16
**days** 23:19 43:3
**dc** 6:3
**dead** 32:8 85:25
87:20,21 94:6
**deal** 48:2 85:8
**dealing** 19:20,21
28:9
**dean** 5:18 36:23
**debit** 23:2,4,10,10
25:12,16,17,20
**debits** 13:20,22
30:11
**debt** 40:2 42:19,24
**debtor** 1:7 14:20
16:7,20
**deceased** 38:13
**december** 11:2 19:6
53:2,2,4,6,16 54:1
57:12,15,18,21
59:12,17 61:24 62:3
62:14 65:23 77:1,5
82:3 83:17 84:11
**decided** 14:6 29:14

**deciding** 89:10
**decision** 18:8 42:20
42:21 89:7,21 94:11
95:11
**declaration** 8:8
30:13,14 32:17 37:6
37:20
**decreased** 58:12
**deductions** 13:25
**default** 76:8
**defendant** 2:21
50:22 67:10 71:4
**defendants** 1:16,24
2:12 3:9 6:9 49:4
52:22,24 53:1,25
56:2 63:6 72:10
89:6,7,13,15
**defendant's** 67:21
95:5
**defense** 37:7 38:3
47:17
**defenses** 47:24,25
**defer** 48:7
**deficiencies** 84:15
**deficient** 46:19
**definitely** 79:21
**defrauded** 45:5
**degree** 73:19 79:12
80:1,4,16,22 90:5
**delay** 54:16,19 56:2
70:9 71:7,7 82:17
82:20,21 84:14,17
87:2 89:14
**delivered** 61:19
**demand** 61:20
**demonstrate** 41:11
**demonstrates** 12:22
**denied** 22:15 88:20
**denies** 84:7
**denote** 59:24
**deny** 12:16 24:23
28:23 30:20
**denying** 4:7 35:7
36:10
**depend** 45:23
**depending** 9:10
18:23 37:17

**depose** 31:3
**deposed** 12:7,8
**deposit** 17:25
**deposited** 58:21
**deposition** 9:7 13:6
30:16 32:10,18
65:19 67:13 87:7,19
91:15
**depositions** 13:9
88:8
**deposits** 16:22,24
17:2 38:1,5 69:3
**describe** 44:1
**determination** 8:16
25:11,14 29:19,21
34:16,16 36:9,20
95:5,6
**determinations** 4:7
19:11 25:9
**determine** 15:5,6
17:1 31:22 57:16
**develop** 14:15 92:12
**developed** 15:9 34:8
**diagnosed** 53:21
**didn't** 24:5 27:17
27:18,20,23 28:11
28:18 29:6 35:18
39:17 53:21 57:7
59:24 68:8,19 71:4
71:10 83:5,13 85:12
86:24 87:5,7,18
88:17 89:7 91:1
**died** 70:12
**difference** 25:8
47:16 56:21 73:23
**different** 11:2,7
18:8 29:22 36:11
74:19 75:6
**difficult** 71:17
**diligent** 78:14
**direct** 37:5,18 65:20
**directed** 57:23,23
60:18 63:16 68:16
68:16,24 69:2,3
90:1 93:20
**directing** 32:14,15
61:12

**direction** 94:3
**directly** 58:7 62:12
  67:5,6,15
**disagree** 15:15,15
  26:18,20
**disagrees** 40:1 44:4
**disclosed** 24:5
**disclosure** 91:24
**disclosures** 91:22
**discover** 20:24
**discovery** 4:15,22
  28:15 34:13 36:24
  52:1,21,23,25 53:1
  53:3,14,16,18 55:25
  63:10,11 67:21 68:1
  69:10 92:12 93:13
**discuss** 35:18
**discussed** 37:6
  38:18 94:24
**discussing** 33:21
**discussion** 84:5
**dismiss** 72:25
**dismissed** 82:24
  83:9
**dispositive** 49:7
**disputable** 44:22,24
**dispute** 8:19,20
  10:6,7 17:19 25:16
  37:25 38:4 45:1,3,6
  45:8 67:18 68:2
**disputed** 37:9 38:7
  39:7,7 49:11
**disputes** 12:25 38:5
  63:11
**distinction** 74:2
  83:2
**distinguish** 88:21
**distribution** 10:16
**district** 1:2 46:12
  46:15 94:11
**divide** 77:4
**documentary** 9:18
**documented** 10:15
**documents** 16:15
  16:16,16 77:23
**doesn't** 16:23 22:20
  24:16 25:21 27:14

28:1 29:9,21 30:12
  30:14 32:23 49:21
  49:21 51:13 57:11
  64:11 65:7 73:9,18
  77:7,14,18 83:23
  94:9
**doing** 14:25 37:11
  47:11 49:2,3,6
  69:12 81:12
**dollar** 48:25 49:4
  73:25 75:24
**dollars** 11:21
**don't** 10:5,20 11:24
  12:5 14:5 20:1
  23:12,13 24:18
  25:16 27:14 28:11
  28:22 30:12 31:4,18
  32:2 33:1,7,7,11
  35:25 37:17 38:2
  39:22 40:7 44:22,23
  45:21 46:2,23 47:1
  47:18 50:11 51:10
  51:17 52:8 54:14,19
  54:25 55:4,13 56:21
  56:22 58:2 62:9
  66:3 68:21 69:6,10
  70:15 71:5 72:12
  73:7 74:1,5,10
  77:25 83:23 84:9
  86:3,25 87:15 88:11
  90:25 93:14 94:6
**double** 91:17
**dozen** 74:19
**draft** 50:4
**draw** 66:5 72:22
  73:2 74:2,14 75:2,8
  81:14 82:8
**drawing** 72:23
**drawn** 68:14 93:12
**dropped** 79:24
**due** 9:21 20:25 21:1

---
e
---
**e** 3:23,23 5:1,1 8:1,1
  52:9,10,10 96:1
**earlier** 16:4,20
  31:12 51:8

**early** 55:25
**earn** 56:21
**easier** 30:17
**easily** 79:3
**effect** 10:23 59:13
  61:7 62:10
**effective** 37:11
**effectuated** 56:16
**effort** 58:15
**either** 23:15 37:19
  44:16 93:4
**eleven** 16:4
**ellen** 2:20
**email** 90:25
**emphasize** 13:14
  65:10
**energize** 71:4
**enforcing** 54:12,13
**engage** 61:1 84:5,16
**engaging** 59:17
**engelmayer** 17:15
**enter** 45:12,15
  49:11 54:8
**entered** 19:6 27:16
  57:17,21
**entertain** 27:21
**entire** 33:15
**entitled** 8:17 10:2
  14:13 15:21 21:9
  29:4 45:24 55:2,2
  61:3 65:11 67:24
  77:3,25 78:11 86:24
  87:1
**entitlement** 45:9
**entity** 36:16
**entries** 32:9
**entry** 22:24 23:6
  54:14 55:3 56:17
**equity** 13:25 14:19
  15:5 16:18 17:1
  19:22 43:5
**esq** 5:8 7:6
**essentially** 11:22
  30:1 43:21
**establish** 11:24 32:5
  43:17 63:2

**established** 42:15
**establishing** 17:2
**estate** 39:12,18,21
  39:23,25 40:12,12
  40:23
**et** 1:15,23 3:8 6:8
  6:16 7:9
**etna** 94:16
**evaluate** 12:25
**evaluated** 13:10
**event** 72:3 75:25
  93:6
**eventually** 53:3
**everybody** 22:8
  47:14 48:11,13,20
  70:17
**everyone's** 79:24
**evidence** 9:3,18
  10:15,22,24 11:22
  12:9,14,17 14:6
  15:10,12,17,20
  25:15 27:1,4 30:18
  57:7 78:24 85:21
  86:10 88:23 93:4
**evidentiary** 21:5
  67:16
**ex** 79:16
**exact** 48:15 51:6,7
  61:19 62:3 90:7
**exactly** 19:14 21:8
  47:14 64:22 76:3
  81:20
**exam** 65:19 69:15
**examine** 21:10
**examined** 29:17
  78:10
**example** 59:14,14
  62:6,7 66:10 75:23
**exceeded** 61:17
**exceeding** 39:25
**exceeds** 39:12 43:20
**exchanged** 91:22
**exchanging** 11:21
**excuse** 13:11 37:22
  53:19,22 87:3
**execute** 88:24

**executed**  62:23,23
94:16
**executes**  89:1
**exercise**  13:5
**exhibits**  37:22,23
50:22
**exist**  12:25
**existence**  43:19
**existing**  29:19
**expectation**  56:6
64:7,16
**expectations**  73:17
**expense**  48:10
**expert**  9:15,20 10:2
10:11,11,13,25 11:1
11:6 12:4,6,6,24
13:18 15:18 26:9,14
26:18,23,25 28:20
29:20 30:3,4 31:12
31:13,14,22 32:1,5
32:7,19,21 33:9,10
33:12,14,25 34:6
36:24
**experts**  13:6 14:23
14:24 21:7,10 29:16
29:17
**expert's**  25:12
**explain**  59:9 87:22
**explains**  10:4
**explanation**  16:8
**extend**  49:5
**extended**  50:4
**extra**  56:15 57:8,9
57:20 59:23,23
63:14 64:13 75:17
92:7,14 93:21
**extraordinary**
70:20
**extrapolate**  10:18
**extrapolation**  15:18
31:11

**f**

**f**  3:23 96:1
**facing**  83:9
**fact**  8:12 11:24
12:11 13:24 14:17
23:23 24:17 26:4,13

30:2,2 31:18 32:6
37:9,17 38:8 39:7,8
49:11 53:15 63:15
63:15,17,23 64:25
68:24 70:14,15
71:21 74:22 76:12
88:18 89:24 92:24
**factor**  86:2,2
**facts**  14:14,15 26:19
28:21 41:11 42:14
44:17 59:6,9 60:10
60:15,17 63:1 65:14
65:15 67:23 68:6
69:13 75:1,2,6 81:3
84:6,14 85:24 92:9
92:12,16 93:11
**factual**  8:18 12:25
14:6 23:24 31:24,25
40:22 41:9,10 45:1
45:2 46:2,14 67:18
68:1 74:11
**failed**  80:21
**fair**  73:14,16 74:3
79:20 88:13 89:18
**fall**  86:12
**falsely**  66:23
**familiar**  46:17 63:5
**family**  4:8,9,9 64:22
**farrell**  5:19 52:16
**fault**  54:4 70:10
**favor**  65:12 72:3
**february**  3:14 50:12
83:20 96:25
**fed**  70:16
**federal**  42:22 43:15
52:20
**fee**  58:8,11,14,14,25
60:2 67:3 82:13
**feel**  79:15
**fees**  49:6,22 54:23
55:2 82:9,10 83:22
85:15 87:15 88:25
90:10
**fictitious**  16:10,12
16:13 20:16 22:24
23:6 25:22 26:2
40:7,13,14,17 56:17

57:17,22 58:22 59:1
60:12,14 61:1 63:20
65:5 66:21 67:1,17
74:9 82:14 92:14
93:8,22
**figuratively**  84:23
**figure**  9:6 90:7
**file**  33:4 35:24
39:17 52:19 53:8
54:11,23
**filed**  17:11,17 20:11
39:20,22,23 53:4
**filing**  31:3
**final**  4:12 17:20
46:21
**finally**  94:5
**financial**  56:12 94:1
**find**  32:24 81:16
**finder's**  67:3
**findings**  10:18
15:18 31:12 46:14
**finish**  22:10
**finished**  20:24
**firm**  70:8
**firs**  86:12
**first**  19:19,19 22:11
24:1 27:12,24 28:23
39:6 48:25 55:24
56:10,22 59:11
62:15 72:15 73:9,17
73:25 75:13 77:15
80:24 81:3,4 82:21
84:9 88:3,22 89:24
91:6
**fish**  71:1
**fishman**  83:17
**five**  36:11 55:18
82:22
**fix**  50:20
**fixed**  57:21 64:12
**flag**  74:7,17 79:9
**flames**  71:24
**floor**  7:10 67:9
**focused**  62:20
**folkenflik**  6:15,20
38:5,9,11,12,12,22
38:25 39:4,5,19,22

40:9,16,19,21 41:1
41:3,7,10,15,18,23
41:25 42:3,5,10,13
43:14,17,23,25 44:4
44:10,21 45:8,11,14
45:17 46:9,19,23
47:3,21 48:5,13,19
49:3,13,17,20 50:5
50:15,16 51:24
**followed**  53:3
**following**  28:17
29:8
**follows**  62:12
**foregoing**  96:3
**forensic**  14:24 15:1
**forest**  79:15
**forfeit**  49:6
**forgive**  22:13
**form**  56:12
**forth**  35:8
**forward**  17:10
30:13 63:10 67:14
**found**  20:14 63:2
87:20
**four**  20:1 36:11
**frame**  40:10
**fraud**  14:21 26:10
41:19 42:11,14,25
44:20 45:4 71:19,25
89:4 91:11
**fraudulent**  25:8
80:18
**friday**  50:14
**friend**  70:7
**frivolous**  84:3 87:10
88:6
**frivolously**  90:15
**fronts**  24:2
**fry**  71:1
**fulfill**  8:6
**full**  13:1 14:3 15:9
15:22 21:3 43:8
54:14 67:15
**fuller**  14:15
**funded**  18:14
**further**  94:20

**futile** 56:1
**futility** 82:16 88:10

**g**

**g** 8:1
**gain** 94:14
**gains** 89:2 93:24
**game** 49:23
**general** 39:18,21,23
39:25 40:13 68:7
70:3
**generally** 62:10
**generated** 60:14
**george** 5:16
**getting** 13:6 29:24
30:10 93:2,21
**give** 24:2 36:3 49:21
52:5 59:15 62:11
77:9 84:9 89:2 90:8
**given** 40:7 78:9
82:11
**giving** 64:12,13,19
64:20 65:8
**go** 8:2 16:23 17:5,10
22:12 26:1 35:3
45:25 48:9,21 49:16
52:14 53:5 55:9
63:10 68:22 71:1
74:13 75:6,10,21
82:15 88:10,23,24
89:2 94:23
**god** 12:12
**goes** 21:15 64:5
**going** 13:5 20:20
21:4,5,6,9 28:23
29:14 31:8,10,25
32:12 33:2,13,25
34:1,4,12 41:5,14
42:9 44:19 45:12,15
45:23 46:11 47:9
48:22 50:9 51:12,16
56:19 59:9 63:8
64:8 65:7,17 73:25
74:1 76:18 79:18
80:19 82:2 83:19,21
84:22 85:2,8,23
87:11,12,13,14,19
87:24 90:7

**good** 8:3 10:19
38:11 50:24 52:2,9
52:15 55:22 69:23
69:24 72:8,9
**gotten** 9:11 23:22
78:1
**grant** 8:24 34:25
56:3
**granted** 34:24
36:14 82:19
**great** 9:8 26:7 30:6
35:4,14 75:4
**green** 3:12
**group** 36:10
**guarantee** 56:20
76:4,6
**guaranteed** 56:12
56:14,24 57:6,9,13
58:17 63:14 66:11
66:23 75:10 76:10
76:15,15
**guarantees** 76:6
**guard** 73:11
**guess** 10:17 24:18
36:10 45:6 46:22
72:14 89:12,18
**guy** 77:21 84:22

**h**

**h** 1:11 2:3,16 3:4
6:5
**hadn't** 57:18
**half** 11:18,19
**handwritten** 59:21
61:22 92:22
**happen** 57:11
**happened** 9:15 12:1
24:13 81:21 93:4
**happening** 37:22
51:19
**happens** 49:1
**happy** 14:3 66:18
**harbor** 56:5 64:6,6
**hasn't** 8:21 23:22
**haven't** 30:3
**head** 43:9 81:4
**health** 53:11 54:5

**hear** 17:19 19:2,3
21:6 29:16,17 44:8
51:13,15,16 70:15
84:9
**heard** 15:10 19:23
49:7
**hearing** 4:1,3,6,12
4:15,19,22 8:16
14:3 19:9,11,13
21:5,20 28:17 29:15
30:14 53:10
**hearsay** 8:24,25
**heavily** 57:2
**held** 46:15 52:23
70:13 71:3 95:4
**helen** 5:8 8:3
**help** 21:2 32:21
59:22 66:19
**herring** 92:4
**he'd** 78:1
**he'll** 44:15 76:7,8
**he's** 8:17 10:2 20:18
20:19 26:24 27:11
30:10 32:22 47:11
48:16,18 49:2,3,6
53:23 56:19 61:2
63:21 64:12,13,20
73:1,5 75:15,15,24
77:22,23,23,25,25
78:1 81:12,12,16,17
82:4 85:19,22 89:4
93:25
**hid** 86:8
**hide** 86:7
**hiding** 70:22 86:15
**high** 73:19,24 76:12
79:11,12 80:1,4,16
80:21 90:5
**hire** 32:21
**hired** 14:23
**hochmoth** 52:15,16
53:6 54:4,21 55:7
55:16
**hochmuth** 5:19
**hold** 81:3
**holding** 4:7

**holds** 9:17
**hon** 3:24
**honest** 69:8
**honor** 8:3 9:14,17
10:7 11:13,24 12:1
12:20,21 16:3 17:3
17:15 19:1,4 21:23
22:1 23:24 28:2
30:22 32:1 33:1
35:6 36:21,23 37:3
37:3 38:11,19,25
39:10 40:16 41:7
44:5,6,12,21 45:18
46:11 48:6,7,20
49:17 50:17,24
51:14,18,22,24 52:2
52:15 53:6,15 54:3
54:8,19,21 55:12,16
55:22 56:22 57:5,13
58:2,6,9,14 59:3,4,8
59:9 60:11,17 61:5
61:12 62:5,9,16
63:4,4,19,21,23
64:5,15 65:1,10,25
66:9,14 67:5,12,20
68:5,11,21 69:6,8
69:12,16,18,22,23
72:8 91:6,18 92:5,9
92:20 93:14 94:5,20
95:14,18
**honor's** 40:2 42:20
70:4
**horse** 94:6
**hostetler** 5:10
**house** 13:11 16:19
71:19,24
**housekeeping** 94:22
**huge** 75:15
**hundreds** 90:22
**hunt** 5:18 36:23,23
37:3,12,21 38:2
44:12,17 45:23 46:1
47:8 50:1,6,10
**hurts** 84:20
**hyde** 4:25 96:3,8

**i**

**idea** 23:9 79:21
83:3 88:4
**identified** 91:10,24
**identify** 35:10 38:10
**iib** 14:18
**illness** 53:21
**imagine** 19:24
**impliedly** 46:20,23
**important** 88:14
**impossible** 66:11
**imputation** 68:4,7
**incentivize** 82:12
**inches** 11:16,18
**inclined** 17:10
**including** 13:10
16:2 20:8 55:3
**incorporate** 33:22
**incorporated** 66:16
**indicated** 29:5 40:6
**indicates** 10:8,15
**indication** 53:13
**indiscernible** 6:8
11:18 12:4 15:14
19:9 29:23 31:18
32:8 33:19 36:18
37:9 39:10 40:3
43:8,9 45:22 46:10
47:19 49:24 51:2,8
51:12 52:13,17
54:11 57:14,22 59:1
59:12,13,17,22
60:25 61:6,12 62:8
62:11,15 63:20,22
66:8 68:20 69:15
70:11 71:10,16 72:3
75:16 77:2 79:9
80:7 81:19 82:19,22
82:23 83:8,25 84:18
84:21 85:4,5,20,24
86:4,5 87:4,13,14
87:16,18,24,25 88:1
89:9,21 90:12,22
91:8,10,14,15,25
92:3
**individually** 2:8,9

**individuals** 56:5
**indulgence** 70:4
72:4
**infer** 78:8
**inference** 57:3
65:16 66:5 72:2,22
73:2 75:1,3,9 76:10
77:12 78:13 79:4
80:1,14 81:10,14
82:8 88:18 90:4
93:7,10
**inferences** 65:12
74:14 93:11
**infinite** 76:3
**inherits** 32:23
**initial** 47:10,18,19
47:21 65:2 91:22,24
**initially** 27:12
**inner** 17:13 91:2
**innocent** 64:17
**inquiry** 74:12,15,22
75:6,8 81:1,17
83:10 90:2
**insignificant** 54:6
**instance** 37:9 62:20
76:23
**institution** 80:21
**insurance** 8:7 43:13
**insure** 24:24
**intend** 51:13
**intends** 48:4
**inter** 17:16,22 18:2
18:7,11,17 19:22
**interaction** 39:9
**interactions** 91:14
**interest** 30:8 41:20
41:25 45:9,17,18,21
45:25 64:2 93:10
**interesting** 9:13
**interests** 4:7
**interpretation** 39:8
40:2,3
**interpreted** 43:12
**intervene** 51:2
**introduce** 58:10
**invested** 16:4 36:16

**investment** 1:12,23
2:4,17 3:5 8:9 9:8
26:7 30:7
**investments** 66:12
**investor** 1:20 6:1
64:17
**investors** 4:8 36:10
36:15 64:7
**involve** 28:1
**involved** 23:23 24:1
36:15 49:6
**involving** 17:21
**ira** 61:14,16,24
64:25 80:23 93:14
93:21
**iras** 81:14
**irrelevant** 44:3
64:14
**irving** 1:11 2:3,16
3:4
**isn't** 14:11 21:5
30:24 31:1 34:6
44:2,25 45:21 49:23
66:13,21,25 67:1
77:11 78:8 85:6
**issue** 8:19 9:14
10:23 14:6 17:6,17
17:18,20 20:21
21:14,19 27:12,17
28:9,13 29:18 31:11
31:12,17,24,25
32:25 34:9,10,14
38:16 39:8 40:2,10
40:12,13,18,19,22
40:22 41:2,9,10
42:17 44:6 46:2,22
47:3,12 48:8,20,23
48:24 49:7 52:10
56:24 58:8 63:12
67:10 71:14 75:11
86:3 91:7 92:6
**issued** 23:21 25:18
**issues** 15:8 19:21
29:9 30:2,2 34:3,13
37:9 38:7,15 39:6,7
40:11 44:11 45:6
47:22 49:11,14 51:7

51:10,11,13,16,17
53:11 54:5 56:23
**it'll** 34:23
**it's** 9:13,25 10:22
10:24 11:25 14:10
15:6 17:6,25 21:4
25:3,6,16,17,20
26:15 28:12 29:21
31:11 33:25,25 34:5
35:20 40:16,19
41:14,22,24,25
42:18,25 43:3 44:22
45:6,17,18 48:14
49:12,19 50:13,13
51:3,5,6 52:12 57:6
59:3,20 64:13 66:11
68:23 69:1,2 70:18
71:6,13,16 72:22
74:6,6,7,11,12,25
75:7 76:9,15 77:13
77:14,15,22 79:6
80:21 81:13,17 82:5
82:6,10,11,13,13,18
82:19,21 84:7,25
85:20 86:1 87:22
89:3 90:1 92:24
93:9,10,18
**i'd** 16:21 17:3 32:25
33:12 37:8 40:10
46:1 47:11 68:22
69:18 70:2,15 71:9
72:10
**i'll** 10:24 19:3,16
36:19 50:20 56:21
70:6 72:12 75:7
80:8,11 91:3,6
95:11
**i'm** 14:3 20:20 21:6
22:12 23:5 24:20
25:23 28:14,22
29:24 31:6 32:12
33:2,13 37:14,15,16
38:12 39:5 40:23
41:5,7,10 42:5
43:11 45:12,15,24
47:14 49:20 50:12
51:12,15,21 52:10

52:17 59:8 61:2
66:4,5 69:7,19,25
72:14 76:17 77:3,9
86:16 89:12 92:16
**i've** 25:7 36:14 55:6

**j**

**j** 5:17
**jacobs** 43:6
**jaffe** 62:18,25 63:2
72:21 88:14,16 89:1
89:7 94:5,13
**january** 20:12 53:9
53:22 83:17 91:20
91:23
**jaw** 79:24
**jonathan** 5:20
55:22
**joyce** 2:7,9,10 38:14
**jr** 6:13
**judge** 3:25 22:3
23:22 24:25 26:2,15
26:21 27:6 28:14,21
39:10 40:3 42:20
43:6,9 45:22 46:13
52:7,10 54:10,16,18
55:8 62:20 63:1
80:12 94:13
**judgment** 14:11
29:25 30:1 41:22,24
41:25 42:2,4 45:13
45:15,17,21 46:21
54:14 55:3 83:21
**judice** 51:3,5,6
**july** 20:11 52:22
**jump** 72:12
**juncture** 54:18
**june** 12:23 19:17
84:7
**jurisdiction** 71:15

**k**

**k** 6:2
**kavanagh** 7:1
**keeping** 32:13
**kept** 8:12
**kevin** 6:5

**key** 70:12 83:2
85:21
**kind** 11:5 29:14
30:8
**kinds** 11:7
**klidonas** 5:16
**knew** 30:17 58:24
59:5,10,10 60:13,15
60:16,17 63:15
66:21 69:13 71:18
73:19,19 75:5 82:23
83:16 85:12 86:6,6
86:7 92:8 93:8 94:2
**know** 8:8,9 10:20
11:23,25 13:7 14:21
16:23 20:20 22:3
23:12,13 24:25 25:5
25:14 26:5 27:7,17
28:12,22 30:8,12
31:21 32:22,23
33:25 35:1 36:1
37:8 44:23 45:4,10
45:12 47:14,18 48:4
49:9 51:10,17 54:25
56:20 59:14,15 60:8
61:3 62:8,9,10 63:4
64:11 66:3,6 68:22
69:7,10 72:21 73:1
75:15,23 76:1,7
79:22 81:8,13 83:5
83:13 84:14 85:10
85:12,14,16 86:13
86:18,22,23,24,24
86:25 87:5,6,15
90:25 91:9 92:6
94:24
**knowing** 86:14
**knowledge** 32:9
56:25 57:3 63:3,7
65:16,21 67:16 68:6
71:15,17 74:21
76:11 78:16 79:23
80:18 81:1,18 82:24
84:4 85:8 87:13
88:5 89:11,23 90:1
**knowledgeable**
32:16

**known** 81:20
**knows** 12:12 20:10
21:19 22:25 59:16
64:11 77:17,19,19
86:13 90:7

**l**

**l** 1:6,11,23 2:3,16
3:4
**lack** 65:23
**language** 71:18
**lasted** 37:10
**latest** 9:15
**law** 20:12 21:23
32:2,3,4 39:15 43:4
43:15 71:16 81:4
84:6
**leave** 4:19 55:23
56:3 91:4
**leaves** 9:9
**ledanski** 4:25 96:3
96:8
**left** 71:23 72:1
**legal** 34:14 40:18,19
40:21 43:18 44:24
49:5,12,14,22 96:20
**legitimate** 56:6 64:7
64:16 73:17 77:8
**lengthy** 50:4 66:18
**letter** 11:8 27:2,15
53:4,8 62:12,21
90:25
**letters** 8:13 9:1
50:22
**let's** 19:19 50:8,8,14
73:16 74:3,13 75:10
76:20 78:2 80:22
88:10,14,21 89:22
**level** 63:22
**levy** 6:13 48:15
50:23,24,24 51:4,6
51:14,18,22
**lexington** 7:10
**lexis** 94:12
**liberal** 56:3 82:18
**lied** 85:11
**limits** 61:17

**line** 46:1 76:9
**lines** 66:25
**liquidation** 1:11 2:3
2:16 3:4
**list** 35:23
**literally** 84:23
**litigate** 27:16 44:16
44:16
**litigated** 45:18
**litigating** 44:20
**litigation** 15:3
**little** 88:10
**lived** 65:4
**llc** 1:12,23 2:4,17
3:5
**llp** 5:3 6:7,15 7:8
**loan** 64:13
**local** 4:15,22
**locations** 59:4,5
**long** 23:20 27:18
55:1,5 76:1 89:2
94:14
**look** 9:15 10:25
22:4,15 23:15 25:13
27:18 28:22 30:13
34:15,18 56:20
63:23 64:25 70:16
73:13 77:18 78:2,5
79:2 80:12 82:6,7
86:16 87:4 90:12
**looked** 21:18 23:18
38:4 77:13 78:9,14
78:15,17,20,21,23
78:24 80:15,25
86:11 90:16 93:18
**looking** 29:24 37:14
42:2,4,5 43:25
76:18 77:23,25
79:10 90:14
**looks** 36:15 77:21
**lose** 79:15 85:8
**loses** 9:16 80:12
**loss** 62:22
**lost** 10:21 85:11
**lot** 28:7 69:9 71:23
92:8

**lots** 82:16
**lp** 4:8,8
**lucrative** 70:20

**m**

**m** 3:24 6:8
**macro** 63:22
**madoff** 1:6,12,15,23
2:4,17 3:5 8:11,21
11:20 13:7,10 21:22
31:3 32:10 39:12
40:23 42:8,12 45:5
47:7 56:11,20 57:6
57:8 58:10 62:21,23
64:18 65:8 66:23
67:7,7 76:2 79:5
81:4 82:10,11 91:1
92:16 94:13,16
**madoff's** 8:8,23
11:20 27:2 30:13
89:16,17
**magically** 77:4
**main** 28:12
**major** 71:16
**majority** 37:5,5
**maker** 75:16
**making** 48:15
**man** 21:22 24:25
27:7 36:21
**managed** 69:1
**management** 74:9
83:18 91:19 95:3,3
95:8
**manner** 15:5,7
63:14
**manual** 13:11,17
16:19
**march** 50:13,14,19
**margin** 81:6,12
93:17,19
**marilyn** 52:18
**market** 66:13 73:24
75:12,16
**marking** 77:22
**master** 81:8
**matter** 1:5 18:10
29:21 39:15 41:20
43:1,3,15 47:23

55:6 64:11 73:15
88:7 94:22
**max** 6:20 38:12
**mcgerity** 6:15 38:12
**mean** 13:8 14:10
20:15 32:14 33:2
35:11 38:4 42:9
54:19 64:4 69:9
71:17 73:7 79:14
80:9 84:18 85:15
86:11 87:18
**means** 20:17 31:23
32:24,24 54:13
85:14 89:3,3
**mechanics** 59:22
**mediated** 36:25
**medical** 54:20
**meet** 38:14 46:5
47:8 66:23 84:2
**memo** 28:3
**memorandum** 4:6
**mendelow** 3:8 7:9
55:19,21 56:6,10
57:10,23,24 58:9,16
63:15 64:10 65:16
66:21 67:13 68:12
68:13 69:14 71:18
71:22 74:16 75:23
77:1 78:13 79:7
80:1 81:4,23 84:22
84:24 85:10,10,12
85:12,17 86:3,8,14
86:24 87:5 88:22
89:24 90:8,8,23
91:13,16 92:13 93:1
93:8,25
**mendelow's** 87:16
92:22
**mention** 83:24
**mentioned** 19:18
27:11 29:18 88:15
91:16,18
**merit** 42:20
**merits** 12:24 29:24
**merkin** 73:19 74:5
79:11

**met** 15:4 67:8 90:23
**meticulousness**
78:9
**middle** 50:13
**million** 39:16 59:15
59:16 60:22,22
64:23 82:4
**millions** 81:16
**mind** 25:7 53:24
86:13
**mineola** 96:23
**minute** 19:16 55:18
**minutes** 37:11
**missed** 50:12
**misunderstood**
12:1
**money** 9:7,9 12:15
18:1 24:14,22 25:18
26:1,6,24 27:5,8
29:1 31:21 46:7
49:22 58:18 64:19
65:4 71:23 72:1
82:12
**month** 11:8 30:10
50:12
**monthly** 41:13
**months** 53:19 91:25
**morning** 8:3 38:11
47:11 50:24 52:2,9
52:15 55:22 69:23
69:24 72:8,9
**mot** 4:8
**motion** 4:3,6,19
8:24 14:11 15:11
17:11 21:14 22:7
24:10 26:22 27:6,7
27:12,13,14,25
28:23,24 29:25
30:20,23 31:3 33:3
33:4 34:21,24,25
35:3 36:9,9,14 47:1
47:9 52:19 53:8
54:23 55:1,4,10,15
67:12 70:14 72:25
88:20 95:5,5
**motions** 33:22
55:12 95:6

**move** 26:16 32:1,7
33:12,14 63:10 68:1
83:21
**moved** 24:19,20
**moves** 67:14
**moving** 21:2 32:19
39:1
**multibillion** 75:24

**n**

**n** 5:1 8:1 52:10 96:1
**n.w.** 6:2
**name** 22:19 23:17
52:15
**narrow** 76:12
**narrowed** 21:18
**nearly** 10:14
**necessarily** 78:6
89:3,3,6
**necessary** 82:6
87:20 89:19 90:3,11
90:13,18
**necessitating** 53:11
**need** 12:5 21:10
34:13 37:2,16 50:3
50:15 77:3,18 81:3
85:6 86:4 87:3
92:25
**needed** 77:1 79:2
**needs** 82:5
**neither** 74:18
**net** 14:19 15:5
16:18 17:1 19:21
43:5
**never** 9:7 12:12,15
12:18 18:11,17
22:15 26:6 53:13
60:24 70:14 75:12
78:5 79:7 81:5
83:16 87:12 90:23
90:23
**new** 1:2 3:13 5:6,13
5:20 6:11,18 7:4,11
20:12 32:3 55:22,22
56:22 57:4,13 58:2
58:5 59:3,8 60:11
60:17 61:5 64:5
65:25 66:3,9 67:5

68:5,11,21 69:6,12
69:16,18,22 70:7
72:11 76:24 83:24
91:6 94:8,24 95:7
95:14,18
**new's** 73:17
**nicholas** 5:17
**night** 20:6
**nine** 27:8
**nobody's** 19:18
**nodded** 43:9
**non** 74:13,14 75:2,8
76:9,21 78:12 79:25
81:13 82:8 84:3
90:4,15
**nonprofit** 79:17
**normally** 11:18
**nos** 4:17
**notations** 61:22
**notice** 17:17 28:18
74:12,15,23 75:6,8
83:10 84:9 87:9,19
90:2 91:9 92:2
**notion** 71:21
**number** 8:20 17:13
26:14 32:8,8 35:14
38:15 52:13 59:4
62:12 77:2,5
**numbers** 12:3 50:22
76:3
**numerous** 19:24
**ny** 3:13 5:6,13 6:11
6:18 7:4,11 96:23

**o**

**o** 3:23 8:1 96:1
**object** 27:14,17,18
28:12,18 29:6 36:13
**objected** 27:13 29:7
**objecting** 28:3
**objection** 20:13,13
27:21,24 36:12
**objections** 20:3
**objectively** 88:7
**obligation** 8:6 84:25
**obligations** 15:4
**observation** 71:14

**observations** 70:3
**obviously** 31:11
38:16 47:20 59:4
63:11 67:21 75:4
77:23 86:1 92:11
**occur** 30:11 53:21
**occurred** 62:2
**occurs** 62:15 76:1
**october** 52:24
**offer** 44:15
**offices** 67:9
**oh** 11:17 35:11
74:17
**okay** 14:8 17:9
18:17 19:15,17
22:13 24:8 30:25
34:20,22 35:4,14
36:4,7 37:2,3 38:21
44:10 46:1 47:3
48:5 50:12,14 52:11
54:2,21 55:18 58:23
67:4 69:14 73:14
74:3 80:11 83:17
89:22 91:5
**old** 8:5 21:22 25:1
27:8,11 96:21
**omnibus** 21:11 29:9
29:15 31:22 33:15
33:21
**once** 14:25 84:14
87:25 88:1 90:24
**opened** 39:16 56:10
68:13
**opens** 86:13
**opinion** 15:2 17:16
**opinions** 15:4
**opportunity** 12:7
28:15 64:21 67:20
87:2,4
**opposed** 19:12
25:14 29:25 59:1
60:12
**opposite** 48:16
**opposition** 84:10
**option** 62:1 66:21
67:1 77:6 78:6 83:4
92:15 93:8,23

**options** 75:25 77:6
**orally** 27:7
**order** 13:2 17:20
19:5,7,17,17 27:15
30:21 31:2 35:7
36:20 37:2,15 40:6
42:22 45:20 47:14
47:24 48:3 49:12
50:3,5,9 51:11 54:9
61:18 66:22 67:2
77:8,24 78:10 83:18
91:19 95:2,4,8
**ordered** 12:23
52:24
**orders** 19:4 21:25
52:25 53:25
**original** 28:3 65:15
76:21 91:11
**originally** 53:9 65:3
65:15
**ostrin** 4:9
**ought** 29:15
**outside** 76:19 79:18
**overall** 79:1
**overdue** 53:19
**owe** 46:7
**owed** 26:24

**p**

**p** 4:17 5:1,1 8:1
**p&l** 57:20 59:23
63:14 75:17 92:7,14
**page** 66:10,14 67:1
**pages** 66:20
**paid** 9:19 12:2
14:19 23:25 25:5,18
26:11 27:9 63:15
**paper** 10:8 29:14
**papers** 21:6,12
32:17 35:21 36:14
67:12
**paragraph** 68:12,16
91:12
**pardon** 39:19 41:23
42:3,10 43:14,23
45:11,14 51:4
**park** 5:5

**part** 15:2,23 22:11
40:24 68:3 71:8
**participant** 91:11
**participated** 74:2
81:9
**particular** 17:6
29:8 31:19 78:21,23
82:7,15 90:14
**particularity** 75:2
78:20
**particularly** 21:22
**parties** 43:3 51:16
91:19 94:24 95:7
**partners** 89:16
**partnership** 4:9,10
**partnerships** 36:11
**party** 51:13
**passed** 92:1
**patrice** 6:8
**pay** 8:6 26:24 63:16
63:17 82:9 85:15
88:24
**payee** 23:17
**payment** 8:17 23:10
25:24 26:17,17
**pays** 76:2
**pdfs** 90:18
**pending** 95:4
**people** 21:15 70:19
71:1 85:9 86:16
88:9
**percent** 82:11
**percentage** 81:25
82:1 90:10,19
**perfect** 89:4
**period** 11:1,10
15:19 20:13 31:14
61:13,20
**periods** 31:12,23
**permission** 51:20
52:19 53:8 54:23
**permit** 53:14,24
**permits** 14:17 32:3
37:5
**perpetuity** 58:18
**person** 13:7 20:17
32:9 84:23 91:16

**personal** 32:9 67:7
**persuade** 48:7
**persuasion** 47:24
**pertain** 19:5 21:23
**phenomenon** 11:3,3
**phone** 30:14 62:8
  67:8
**phrase** 65:23
**picard** 1:11 2:3,16
  3:4 9:1
**picking** 48:25
**piece** 10:8
**place** 27:24
**plaintiff** 1:13,21 2:5
  2:18 3:6 50:21
**plausible** 65:12
  74:14 75:2 79:6
  80:14 84:3 93:7,9
  93:10,12
**play** 12:2
**plaza** 5:12
**plead** 75:1 88:5
**pleading** 56:3 63:3
  63:12 65:11 73:3
  84:15
**please** 11:8 48:16
  87:22
**plus** 58:25 81:25
**pm** 95:21
**point** 13:13 14:16
  14:16 16:21 17:4,9
  23:1,9,14,24 26:21
  28:16 39:24,24 48:3
  49:21 53:18 61:11
  62:5 63:23 71:9,12
  84:1 91:7,9 92:6,20
  93:1
**pointed** 16:3 43:2
  92:10
**points** 19:25 28:24
  30:22 31:1 72:11
  92:5
**ponzi** 42:24 71:19
**pool** 92:17
**portion** 16:13
**possession** 10:8

**possibility** 83:5,24
  84:8 88:9
**possible** 60:20
  61:15 79:25 83:4,6
  84:3,11 88:4
**post** 45:17
**posture** 51:7
**potential** 21:17
  91:23
**pre** 4:12 11:19
  15:18 37:23 41:25
**precedent** 73:8
**precisely** 13:2 17:1
  40:10
**predetermined**
  56:16 59:18
**prejudgment** 45:9
  45:18,20,25
**prejudice** 56:1
  82:18,20 84:18
**prejudiced** 87:2,3
**preliminary** 28:23
**prepared** 69:19
**present** 15:2,22
**presented** 14:10
**presents** 56:25
**preserve** 40:21 41:2
**preserving** 49:23
**preset** 64:19 93:22
**pressure** 49:4
**pretrial** 37:2,15
  47:13 48:3 49:12
  50:3,5,9 51:11
**pretty** 37:12 86:9
**previously** 51:1
  58:16
**primary** 70:20
**prior** 11:10 94:25
**privileged** 83:5
**probability** 73:20
**probably** 20:20
  37:23 85:5
**problem** 37:18
**procedure** 19:5
  20:23 21:11 27:22
  29:6,6,7,8,11,12,13
  33:8,15,22 46:18

49:18 51:19 52:20
**procedures** 21:24
**proceed** 67:21
**proceeded** 47:5
**proceeding** 33:21
  34:23 48:10 55:24
**proceedings** 40:25
  95:20 96:4
**process** 49:22 59:17
**produced** 8:13 14:7
  33:10
**professional** 94:1
**profit** 8:14 9:17
  10:12,14,21 11:4,19
  12:22 13:2,8,15,19
  13:20 15:3 16:2,17
  20:9 26:12,13 30:11
  30:15 31:16
**profits** 16:10,12,14
  20:16 40:8,14,14,17
  58:16 65:5 74:9
  77:6 82:14
**progress** 39:3 70:9
  71:4
**promise** 56:11
**promised** 66:24
**promptly** 19:20
  25:5
**proof** 42:16 44:15
  47:23,24 85:23
**properly** 19:12
**proposed** 55:25
  56:9 58:24 68:12
  73:10 95:7
**proposing** 27:22
**prosecutor** 86:14
  86:19,22
**prosecutors** 85:6
**protect** 56:5 64:7
  73:18
**protection** 1:20 6:1
**prove** 12:17 85:2,23
  87:16
**proven** 11:25 83:16
**proves** 12:14
**provide** 54:14 66:15
  67:2 94:9

**provided** 49:19
  53:20 54:7 59:21
**provides** 53:22
**pryor** 6:7 50:25
**pulled** 26:6
**pulls** 9:11 26:4 30:7
**purchase** 23:4,7
  25:19
**purchased** 23:9,11
  23:20
**pure** 74:15 75:5,7,8
  83:9 90:1,10
**purported** 20:9
  23:17 60:6 84:8
**purportedly** 25:18
**purposes** 16:1,22
  16:24 17:2 44:3
  65:9 72:24,25 73:3
  73:3
**pursuant** 4:15,22
  52:19
**pursue** 92:11
**put** 8:21 49:3 61:13
  64:23 65:4 69:10
  73:25 79:21 82:4
  84:22
**puts** 74:22
**putting** 33:10
**pw** 15:14 23:19
  25:12 27:17 31:23

**q**

**question** 8:15 9:5
  12:6 13:3 20:1 24:8
  25:4,6,7,13 27:10
  30:5 34:5,24 40:17
  46:4 49:15 51:1
  65:21 66:6,20 68:3
  72:19 73:1 81:21
  93:6
**questions** 17:7
  67:15 69:15 91:3
  94:20 95:13,15
**queue** 48:7
**quickly** 92:5
**quintessential**
  82:20

**quite** 44:1 48:23
  92:3 93:15

**r**

**r** 3:23 4:16 5:1 8:1
  96:1
**raise** 39:6 44:11,17
  50:25 51:13 57:19
  60:4 65:16 88:18
  94:21
**raised** 9:6,14 34:13
  34:14 47:10,22
  58:25 72:11 93:12
**raising** 51:17
**rakoff** 62:20 63:1
  94:13
**rakoff's** 42:20
**rate** 30:8 48:22
  66:12,23
**rates** 9:12
**ratio** 89:20
**reach** 83:22
**reached** 15:1
**read** 9:7 28:4 42:22
  64:3 95:13,16
**readily** 51:15
**ready** 37:1 50:1
**real** 60:12,20 75:12
  85:14
**realize** 10:12
**realized** 74:17
**really** 29:25 31:17
  37:14 44:13 46:17
  54:19 67:19 71:11
  72:24 73:7 74:1
  79:8 92:4
**reason** 39:14 70:21
  70:25 71:8,10 84:8
**reasonable** 25:11
  25:14 29:21 34:17
  77:11 78:8
**reasonably** 55:14
**reasoning** 81:2
**reasons** 15:16 30:20
  35:8,9 86:7 87:5
**recall** 39:22
**recap** 50:1

**receipt** 79:8
**receive** 53:2 56:11
**received** 15:25 20:6
  22:5,14,15 27:5
  36:11 53:16 58:16
  61:21 91:17 92:14
**receiving** 56:10
  73:24
**recklessness** 88:18
**recollection** 31:20
**recommend** 46:11
**recommending**
  46:14
**reconsider** 41:5
**reconstructing**
  14:24
**record** 8:19 13:1
  14:14,15 15:9,22
  16:20 21:3 23:24
  28:25 35:8 44:14
  46:2 52:12 67:16
  70:6 79:19 96:4
**recorded** 13:13,21
**records** 8:12,13
  10:6,19,19,20,20
  11:10 12:17 13:10
  14:20,22,25 16:7,23
  22:16 24:5 25:10
  26:9,10 27:2,5
  29:20 31:19 32:13
  32:15,22 62:9 89:17
**recovered** 54:5
**red** 74:7,17 79:8
  92:4
**redraw** 47:2
**reduce** 25:21 53:24
**reductions** 16:17
**refer** 70:6
**reference** 47:2
  66:17
**referenced** 13:17
  14:12 16:20 66:16
**referral** 58:8,11,13
  58:14 82:9,10,13
  85:15 88:25
**referred** 57:10 58:1
  61:9 64:1 82:1

**referring** 56:19
**reflected** 13:22
**refused** 84:5
**regard** 17:4,12 19:5
  21:24 57:5 68:11
  91:7 93:14 94:5
**regarding** 31:11
  37:25 65:21 68:9
**regards** 94:19
**regs** 81:5
**reisen** 7:13 70:1,2
  72:3,5,8,10,10,20
  73:4,14,16,22 74:3
  74:10,24 75:20,22
  76:20 77:10,13 78:2
  78:12,19 79:20 80:8
  80:11 83:7 84:25
  85:4,19 86:1,11,20
  86:23 87:1,9 88:13
  88:21 89:12,18,22
  91:18 92:8 93:15
  95:10,16
**reject** 68:19
**related** 47:20
**relates** 13:11
**relating** 30:3
**relationship** 67:6
  90:21
**relatively** 38:16
**relevance** 92:3
**relevant** 33:11
  44:13
**reliable** 16:1
**relied** 94:12
**relief** 36:13 93:12
**rely** 16:19 20:5
  73:15
**relying** 16:21,25
  57:2
**remain** 51:19
**remarks** 71:21
**remember** 78:19
  79:6
**reminded** 22:6
**remove** 65:19
**reply** 91:9

**report** 9:15,20
  10:11,25 11:13 12:1
  31:13 33:25 46:11
**reported** 13:25
**reporter** 52:6
**reporting** 46:13
**reports** 12:24 13:18
  25:12 30:3,4 31:22
  32:1,7,19 33:9,10
  33:12,14 36:24
**represent** 35:10
  36:1
**representing** 24:1
**represents** 20:2
  38:3
**request** 19:9,12
  36:18 54:21 94:3,13
  94:17
**requested** 10:9
**requesting** 53:7
**requests** 20:7
**require** 31:9,10
**required** 53:15
**requires** 19:8,10
  25:4
**requiring** 53:1
**reserve** 95:11
**resistance** 46:3
**resolved** 21:6 49:15
**respect** 11:11 20:15
  22:7 24:10,19,21
  26:16 28:24 29:4,13
  29:23 30:13 37:4
  51:12 70:14
**respectfully** 46:10
**respond** 52:22,24
  53:1,14,15,25
**responding** 53:22
**response** 21:14 44:2
  44:9 71:6 94:15
**responses** 53:16,18
  53:20 54:7,11,15
**responsible** 70:8
**rest** 93:13
**result** 65:23
**return** 55:11,15
  56:13,14,24 57:6,8

57:10,13,14,18 60:6
60:8 63:14 64:1,12
66:12,23 76:10
**returned**  56:14 58:6
**returns**  63:25 73:24
75:10 76:4,15,16
**review**  69:18
**reviewed**  36:14
61:23 79:1
**revocable**  2:7,8,10
2:11 47:22
**richard**  6:13 50:24
**riddled**  26:10
**right**  12:11 17:23
18:12,20,24,25,25
19:2,12 22:20 24:12
24:18,21 28:22,25
29:22 31:8 33:17
34:2 35:5 36:5,8,13
40:20 41:14,17,21
41:24 42:1 43:11,14
45:4 47:5 48:2 49:7
49:13,25 50:18
51:23 70:23 72:15
80:14 81:24 84:24
92:13 95:9
**rights**  24:23,24
49:21,23
**rise**  72:5
**risk**  41:11 46:8
75:24 76:2 79:5,11
**river**  4:8
**road**  96:21
**robert**  2:7,8,9 38:13
38:14 62:18
**robertson**  5:21
**rockefeller**  5:12
**rolls**  75:24
**room**  84:22
**rothschild**  4:9
**rule**  4:22 21:23 22:4
52:20 56:4 69:15
91:14
**rulings**  46:11
**run**  29:12
**running**  28:19

**s**

**s**  5:1 8:1
**safe**  56:5 64:6,6
**sale**  94:16
**samples**  22:16
**sanctions**  52:19
53:8 55:3
**satisfied**  25:10
63:13
**savings**  9:11
**saw**  74:16,16 78:6
89:25
**saying**  23:6 24:18
24:20 26:11 27:16
33:24 37:16 48:16
61:2 69:2 71:5
84:16 87:11 88:23
89:12
**says**  8:20 10:2 11:8
22:17,19,21,22 25:9
26:14,18,24,25
37:17 42:21 46:7
56:20 73:1,6 74:13
76:25,25 78:4 82:4
86:3,14,15 88:24
89:2
**scan**  78:4
**schedule**  12:23 21:2
28:17,19 32:2,18
33:5 50:20 53:24
55:14
**scheduling**  28:16
**scheme**  42:24 70:9
71:20
**scores**  28:2
**seanna**  5:15 12:20
**sec**  76:14
**second**  19:17 46:4
55:8,9 71:13 77:17
79:15 81:18
**secondly**  29:5
**secret**  82:13
**securities**  1:12,20
1:23 2:4,17 3:5 6:1
13:7 25:19 56:7
57:8 58:21 59:25
60:5,6,9,12,20,21

61:16 63:7,9 64:1,8
64:9,14,18 65:17,22
66:7 74:20 75:12
76:13 79:12,16,23
80:17,17 81:7 83:12
90:5 92:17,23 93:2
94:14,16
**security**  62:2
**see**  10:21 23:16
29:16 51:11,25
55:13 68:7,8 78:1
83:13,15 87:23 90:3
**seeing**  88:2
**seek**  26:17 31:2
53:7 54:23,23
**seeking**  24:9,11
55:23
**seen**  30:3 81:11,17
82:5 93:19
**sees**  23:2,3
**selecting**  48:24
**self**  54:11,13
**sells**  75:25 76:1
**send**  8:10 11:8 43:2
50:9,14
**sense**  8:9 33:20
**sensible**  42:23
**sent**  58:20 62:21
**separate**  56:23
89:16
**served**  52:21
**session**  38:15 46:5
47:8
**set**  18:4 19:11 20:23
21:25 24:15 29:3
32:2,18 33:5 50:7
53:9 58:18 89:16
**setting**  35:8 36:6
**settle**  43:22,24 49:5
88:2
**settlement**  83:22,23
**shake**  12:9
**shapiro**  68:20,22
74:6 90:21
**she's**  12:24
**short**  55:14

**shortcut**  33:23,24
34:23 54:17
**shot**  76:1
**show**  13:15 16:16
41:14 59:10 77:5
94:2
**showed**  23:10,11
**showing**  11:15
30:11 61:23 62:1
**shown**  88:12 90:17
**shows**  64:15 88:22
**shut**  58:7
**side**  20:25 37:13,19
71:8
**side's**  21:9
**signed**  52:25 68:15
**signs**  64:9,10
**similar**  29:7 36:15
68:19
**simple**  75:23 81:24
**simply**  61:2 74:22
92:24
**single**  8:19 10:7
11:12 77:18 83:10
**sipa**  14:17 15:7
29:22 32:20,21 39:9
40:12
**sipc**  8:6 12:16 19:2
20:11 21:1
**sipc's**  24:23
**sit**  67:13
**situations**  20:5
**six**  11:15 53:19
82:21
**slow**  75:19
**small**  38:16 48:14
48:25 49:4
**smaller**  71:2
**smart**  71:22
**smb**  1:3,9,18 2:1,14
3:2 4:1,4,10,13,20
4:23
**solbakken**  7:8
**sole**  34:19
**solutions**  96:20
**somebody**  30:17
46:25 56:25 64:9

65:7
somewhat 39:5
sonya 4:25 96:3,8
sophisticated 93:25
94:1
sorry 11:17 22:12
31:6 50:12
sort 10:16 14:10
21:11 57:14 72:12
80:13 93:13
sought 36:13 39:13
42:7
sounds 31:13,24
40:18 44:19,23 45:2
54:17 67:13 76:18
84:20 86:9
source 80:6 93:3
southern 1:2
spanned 64:24
special 56:11 76:15
specific 32:6 60:18
62:7 66:3 68:9
72:11 74:16 75:1,1
specifically 61:5
91:13,16 93:20
specifying 67:11
speculating 26:3
speculation 74:12
74:15 75:7 92:9
speculative 74:14
75:3,8 76:9,21
78:12 79:25 81:14
82:8 86:9 90:4
spending 49:22
spoke 67:8 90:24
sponsored 36:18
square 6:10 7:3
stable 75:15
stage 63:3,5,12
65:11,11 67:19,24
68:23 69:8
stages 55:25
standard 63:4,5,6
63:13 73:18 79:22
80:4,13 82:18 84:13
standards 56:4

stands 62:17 92:13
stanley 7:14 69:25
start 88:8
started 21:16 47:4
starting 41:20
state 32:4 38:14
stated 28:25 92:8
statement 16:6 20:9
22:16 23:2,15,15
30:6 41:14 43:1,2,8
43:12 62:14 73:17
statements 13:23
15:25 16:1,22,25
20:8,12,16 22:5,14
22:15 30:10 56:17
61:21,23,24 69:4,5
69:7 77:5,14,24
78:9,17,22 90:17
92:22 93:5,19
states 1:1
stating 35:8
statistical 11:24
statistician 12:2
statistics 65:1
status 36:10
statute 25:4,9 49:19
statutes 42:22
statutory 8:6 15:4
41:20
step 72:13 74:17
79:15 82:6
steven 3:8 71:22
stick 21:24
stipulate 39:15
42:14 44:22
stipulated 37:10
91:21
stipulation 37:17
95:1,2
stock 23:8,8,11,16
23:19 25:19 66:12
94:16
stop 29:15 41:12
73:21
stopped 11:4
straight 75:10

strategy 11:2 12:12
street 6:2
strike 32:1,7,19
33:12,14,24
striking 55:3
strong 75:1
stuart 3:24
stuff 32:23 72:17
75:5 85:13 86:4
88:14
sub 51:3,5,6
subjective 83:16
subjectivity 88:23
90:20
submit 30:21 32:16
32:17 35:7 36:20
37:4,16 66:18 95:1
submits 20:6
submitted 9:16
52:25 91:21
submitting 37:18
subsequent 47:4,6
47:15,17,19
subsequently 27:15
substance 76:25
successful 86:15
successor 26:12
sudden 76:11
sufficient 15:21
63:2 68:23 94:2
suggest 51:18 70:21
92:16
suggests 23:25 27:3
30:8
suit 42:12
suite 6:2 7:3 96:22
sum 94:17
summary 14:11
29:25 40:6
support 15:11,13
57:3 68:7
supports 25:15
92:19
suppose 18:7 31:13
37:19 39:3
supposed 35:19
79:25 81:12

supposedly 58:3
supreme 32:4 84:7
sure 14:12 37:15
39:5 43:11 45:24
47:15 51:21 69:7
70:5 71:14 73:22
75:20,20 76:20
77:24 78:10 86:11
86:16 88:13
suspicion 79:7,11
80:15
suspicions 80:3
sympathetic 25:4
sympathy 21:21
system 13:12,20

t

t 53:9 96:1,1
table 71:23
take 11:1 28:15
30:16 32:10,17 36:5
50:18 55:18 58:8
63:11 66:24 67:3,18
73:2,5 87:7,18
taken 13:6,9 19:24
takes 67:10
talk 20:20 70:14
73:16 74:24 76:20
80:22 82:16,17
87:13 91:1
talked 75:14
talking 43:15 81:1
talks 13:18
tax 81:5 89:4
tee 44:6 46:2
telfran 58:6,7,17
tell 10:24 14:5 33:2
33:13 34:4 35:25
75:7 77:7 80:8,11
84:11 85:7,9 86:5
87:5 95:15
telling 49:9 53:10
84:15,17 87:22
tells 59:18
ten 37:10 43:3
term 89:2 94:14
terms 47:24 60:11
63:13 64:2 69:16

**77:**24
**terrible**  70:9
**test**  34:19
**testified**  9:6 26:6
  57:15
**testify**  29:16 85:17
  86:10
**testimony**  12:6
  30:14 31:9,10 32:5
  37:6,16,18 86:17,21
  91:15
**thank**  11:17 12:19
  19:1 21:25 22:2
  34:22 35:5,6 36:7,8
  36:20,21 51:22,23
  51:24 53:6 55:7,16
  69:21 72:4,5,7 91:5
  95:16,18,19
**thanks**  51:25
**that's**  14:2,7,18
  16:6 18:5 20:21
  21:13 22:23 23:1,5
  23:6 24:10 25:23
  27:3 29:2,14 30:18
  34:7 37:14,21 39:3
  39:13 40:9,9 41:18
  42:1,7,23 43:25
  44:13 45:23 46:21
  47:13 48:23 49:13
  50:19 55:19 57:4
  59:2,7,8 65:6 66:5
  67:19 70:10 71:8,11
  73:18 74:1 76:3,23
  78:18 79:9,24 80:3
  80:13,19 82:1 83:16
  84:17 86:2 88:9
  90:13,17,17,25
  94:17,18,22
**theories**  92:11
**theory**  22:23 67:22
  92:9
**there's**  8:18 9:18
  11:22 12:15 14:5,8
  14:17 15:13 16:8
  22:8 23:4,16 27:1,2
  27:3 28:16,17,20
  31:12,15,19 35:20

40:7,11,13 42:21
45:2,5,8 46:4 47:23
47:25 56:24 57:7
64:8,25 65:7,13
67:18 69:9 71:6,7
73:8 74:10,25 75:17
75:22 76:3 78:3,4
79:9,10,10,11,11,12
80:4 82:16 83:23
88:14 89:24 90:3
92:18 93:3
**they're**  14:19 33:11
  44:18 48:21 77:8
  78:22 81:7 82:10
  90:21
**thin**  90:8
**thing**  9:5 10:5 14:16
  21:16 22:4 26:15
  29:14 48:5 59:13
  61:7,9,11 62:10
  70:15 71:13 74:11
  79:2 82:3 85:13,15
  90:17
**things**  10:6 14:8
  35:22 67:10 69:9
  73:6 74:18,19 76:6
  78:4,15
**think**  8:18 9:9 10:4
  12:21 15:20,21
  16:14 21:1,4,10,21
  23:19 27:21 29:15
  30:2,15 33:1 34:2,7
  34:13,23 37:12,21
  37:22 38:18 39:7
  42:14,16,19 43:7,10
  44:21,22 46:2,14,25
  47:16 48:13,13,25
  49:2,3 50:1,16 55:5
  56:23,23 57:4,5
  59:3,4 62:16,17
  72:2 73:4,5,7,13
  74:5,11 77:25 79:18
  88:13,14 89:20
  93:14
**thinking**  54:10
**third**  55:5

**thorough**  22:3
**thought**  9:23 17:22
  17:25 26:7 30:6
  41:6 76:14 83:4,7
  88:5 89:13
**thousand**  75:25
**three**  11:18 20:24
  50:6,10,13,16 52:10
  52:17,22 54:9
**threw**  84:19
**time**  10:21 12:8
  14:1 19:22,25 20:18
  23:20,21 24:4,4
  27:19 28:9 36:5
  47:11 50:15 52:4
  53:14 55:5,24 58:12
  61:13,20 64:10
  69:13,19 70:10,21
  71:10,25 75:14 81:7
  83:1 84:9 92:4 93:7
**times**  6:10 66:1
  74:25 77:19 78:4
  81:25 90:10,19,22
**timing**  91:8
**timothy**  7:6 52:9
**today**  8:17 16:4
  17:7,10,11,19 30:9
  33:21 34:14 36:12
  50:10 52:18 53:12
  94:22,25
**today's**  9:12
**told**  60:25 61:8,8
  73:25 76:10
**top**  57:20 63:21
**total**  21:21 72:16
  81:25 90:19 94:17
**totally**  73:11 80:20
  81:2 86:12
**trade**  62:24 82:7
  83:12 88:24 89:1,25
  94:19
**traded**  65:22 66:7
  79:13,23 80:17,17
  90:5
**trades**  57:17 60:15
  64:11 67:2 74:16,20
  75:17 77:8 81:20

93:17,19
**trading**  11:2 12:11
  56:7 57:1 64:1,8,17
  65:7,24 76:13 81:6
  81:12
**trail**  44:18
**transaction**  17:12
  60:9,20 62:6,14
  77:19 78:23 81:15
**transactions**  13:12
  13:23 16:2,3,17,25
  56:17 57:22 58:22
  59:1 60:12,21 61:1
  61:19,25 62:1,2
  63:7,9,9,20 64:14
  65:17 66:22 67:17
  68:9 77:6,6 78:7,21
  79:2 90:14 92:15
  93:8,23,24 94:4
**transcribed**  4:25
**transcript**  35:9
  66:10,14,15,18
  69:19 73:13 86:21
  95:12 96:4
**transfer**  16:5 17:13
  17:16,23 18:2,8,11
  18:18 25:8 29:23
  65:2
**transferee**  47:15,17
  47:18,19,20,21
**transferees**  47:4,6
  47:10
**transferred**  9:24
  10:1 16:14 18:2,18
  18:22 24:14,22 29:1
  65:3 93:2
**transfers**  19:22
**treat**  63:25
**treated**  13:24 63:24
  67:25
**trees**  79:16
**trial**  4:12 21:11
  25:15 29:11 33:21
  33:24 34:8 37:1,10
  39:1 41:4 42:1 44:3
  44:18,25 46:13,14
  46:15 47:9 48:10

50:2,7,20 67:19
73:3 86:22 91:15
**tried**  38:18,19 48:8
48:17,22
**true**  14:18 65:23
66:13,21,25 67:1,25
85:6 93:1 96:4
**trust**  2:7,8,10,11
6:16 38:13 47:22
**trustee**  1:11 2:3,9
2:10,16 3:4 5:11
8:6,12,20 9:6,14,16
10:17 11:11,22 12:7
12:9,15,16,21 14:18
14:23 15:4 16:24
19:9,10 20:11 21:1
23:22 24:2,23 25:10
25:11,25 26:10 27:4
27:12,13,14,22
28:15 29:19 31:21
32:21,22 36:13,23
38:4 39:15 43:2
48:1,4,24 52:16,21
53:7 55:23,23 67:24
73:9 85:2 91:24
**trustee's**  4:19
**trustees**  4:6
**trustee's**  9:20 10:8
10:11 11:6 26:9
33:9,12 34:16 36:9
36:19 42:15,15,16
84:21 85:1
**trusting**  47:7
**try**  38:9 42:9,11
43:21,24 46:25 48:6
50:7 92:12
**trying**  46:5,21
49:20
**turn**  50:15 64:21
71:24
**turned**  36:16
**turns**  48:8
**tv**  76:15
**twice**  77:16 81:24
82:2 90:9
**two**  19:4 28:23
30:22 31:1 32:8

39:1 40:11 42:22
50:6 56:23 74:18
78:3,4 81:3
**twombly**  74:13,13
**twomby**  80:14
**type**  29:15 74:6
**types**  13:19 33:22
**typical**  74:7

**u**

**u.s.**  3:11,25
**ucc**  41:17 45:6
**ultimately**  11:22
**understand**  10:10
15:23 18:6 25:2
27:11 28:11 32:22
35:16 44:8 46:10
47:22 60:24 65:20
71:5 82:18 85:13
**understanding**
72:18 87:23,24
**understands**  93:15
**understood**  51:14
72:20,20 79:20
**undue**  56:2 71:7
82:17,20,21 84:17
87:2
**unethical**  88:6,7
**union**  7:3
**united**  1:1
**unprecedented**
80:20
**unsuccessful**  36:25
**unthinkable**  80:21
**uphill**  35:1
**ups**  65:23
**use**  50:21,22 65:9
71:18
**usually**  82:19

**v**

**v**  1:14,22 2:6,19 3:7
**value**  18:3,20 40:7
40:15 43:1,8 56:15
59:23 64:20 65:8
93:21
**various**  50:25

**veritext**  96:20
**viable**  83:21
**victim**  21:22
**victor**  48:23
**view**  40:7 67:22
87:10 88:7
**views**  80:9
**vig**  60:2
**vigilant**  51:19
**visited**  67:9
**voluminous**  14:22

**w**

**w**  52:9
**wait**  28:13 33:8
83:2,15
**waiting**  8:5 83:13
**waiver**  73:5
**want**  13:13 14:16
15:2 17:9 22:15
27:16 30:16 32:7
33:4,5,8 35:17,24
36:1 37:15,15 39:6
40:21 42:11,13
43:17,21,24 44:6
48:17 59:14 60:21
61:2,3,4,7 62:21
66:17 77:4 79:14
81:23 82:4 85:4,5
91:7 94:6 95:13,16
**wants**  36:13 44:17
59:19,19 62:13,13
82:12 90:9
**washington**  6:3
**wasn't**  23:9 52:4
60:5,5,9 69:20
72:21 82:2 91:20
**watched**  43:5
**way**  18:8 26:8 37:11
40:10 42:23 43:12
43:25 44:1 50:8
60:3,4 63:24,24
70:15 71:3 75:17,22
76:3,22 77:22 80:22
81:18 82:10,13 85:9
85:20 93:23
**ways**  76:4

**weak**  72:22
**wedeen**  7:1,6 52:7,9
52:9,12 54:3,16,18
55:8,11
**week**  17:17 46:5
**weeks**  20:2,24 50:6
50:10,13,16 54:9
**weight**  89:6,10,19
89:19
**went**  10:11 26:1
46:24 67:9 70:11,21
90:23
**weren't**  36:19 40:24
59:25 83:1
**west**  7:3
**we'd**  14:2 32:1,17
32:18 63:23
**we'll**  35:9 44:16
51:18 55:11 67:14
95:1
**we're**  19:20,21
21:17 26:3 27:8
29:8 31:25 37:12
43:14 44:19 50:1
66:18 67:19 69:12
70:1 73:11 80:25
83:13,18,21 84:15
84:15 86:24 87:1,3
87:12,13,14 88:2
**we've**  32:3 36:25
38:19,25 61:14 79:8
94:18,25
**whatsoever**  12:10
**what's**  13:22 15:17
34:4 42:17 51:19
56:18 65:20 78:2
**who's**  12:2 84:23
**wife**  61:8 79:16
**wife's**  59:16 61:4
**willing**  70:2
**win**  86:5
**withdraw**  27:24
64:21 65:9
**withdrawal**  9:3
10:9,14,16,22,22
12:13,18,23 15:3
16:2,17 20:9

[withdrawals - 's]                                                            Page 20

| withdrawals | y | , |
|---|---|---|
| **withdrawals**  8:14 | **yeah**  18:6 19:18 | **'92**  76:14 |
| 9:2,17 10:13 11:4,7 | 27:16 35:13,22 | **'s**  40:3 87:19 91:15 |
| 11:19 13:2,8,16,19 | 37:12 44:17 45:24 | |
| 13:19,21,21 22:22 | 48:18 66:2 81:12 | |
| 26:12,13 30:11,15 | 84:25 89:15 94:8 | |
| 31:16,16 38:1,6 | **year**  14:21,21 16:15 | |
| 68:17,24 69:3 | 21:22 31:14 41:20 | |

**withdrawals**  8:14
9:2,17 10:13 11:4,7
11:19 13:2,8,16,19
13:19,21,21 22:22
26:12,13 30:11,15
31:16,16 38:1,6
68:17,24 69:3
**withdrawing**  31:20
**withdrawn**  16:13
40:24
**withdraws**  27:13
**withdrew**  58:13
64:23
**witness**  12:4,6
23:23 70:12 84:24
**witnesses**  91:23
**woman**  52:2
**wondering**  54:8
**won't**  10:7 84:16
**words**  23:1 40:5
44:15 60:10
**work**  15:1 50:8
55:13 59:22
**worked**  13:7 70:16
**worker**  78:14
**working**  53:23
**workings**  91:2
**works**  79:17
**world**  42:17 81:8
**worried**  73:5
**worry**  74:1
**worth**  49:23
**wouldn't**  18:10
29:10 44:1 66:11
**wrap**  88:11
**write**  27:15 35:17
**writes**  11:8
**writing**  8:11
**written**  9:2 78:3
**wrong**  56:18 76:8
80:16
**wrote**  21:13

**x**

**x**  1:4,8,10,17,19,25
2:2,13,15,22 3:1,3
3:10 61:7,7 62:11
62:22

**yeah**  18:6 19:18
27:16 35:13,22
37:12 44:17 45:24
48:18 66:2 81:12
84:25 89:15 94:8
**year**  14:21,21 16:15
21:22 31:14 41:20
48:22 56:15 58:18
60:23,23 64:19,19
73:24 82:21
**yearly**  63:16
**years**  8:5 9:10
10:12 16:4,24 25:1
26:5 27:8,8,11 28:5
30:7 38:19,20 39:2
58:10 61:25 64:24
70:10,21 78:24
82:22
**yesterday**  28:4
**yield**  60:22 62:3
**yielded**  62:24
**yields**  59:18
**york**  1:2 3:13 5:6,13
6:11,18 7:4,11
20:12 32:3
**you'd**  30:8
**you'll**  22:13 48:3
50:14 76:10
**you're**  13:5 18:20
18:24 23:6 24:18,21
28:25 30:1 31:8
33:20,24 42:9 45:4
45:24 46:11,17
47:15 49:9 60:25
66:4 73:4 74:1
76:10,18 79:18 85:8
90:7
**you've**  34:14 38:4
48:14 88:11

**z**

**zero**  18:21 24:15
27:4 29:2

**'92**  76:14
**'s**  40:3 87:19 91:15