**EXHIBIT BB**

```
 1  UNITED STATES BANKRUPTCY COURT

 2  SOUTHERN DISTRICT OF NEW YORK

 3  - - - - - - - - - - - - - - - - - - - - - - - -x

 4  In the Matter of:

 5

 6  SECURITIES INVESTOR PROTECTION CORP,  Adv. No. 08-01789 (SMB)

 7          Plaintiff,

 8      v.

 9  BERNARD L. MADOFF INVESTMENT SEC.,

10          Defendant.

11  - - - - - - - - - - - - - - - - - - - - - - - -x

12  IRVING H. PICARD, TRUSTEE FOR THE LIQUIDATION

13  OF B,                                Adv. No. 10-04215 (SMB)

14          Plaintiff,

15      v.

16  BONGIORNO, ET AL.,

17          Defendants.

18  - - - - - - - - - - - - - - - - - - - - - - - -x

19  IRVING H. PICARD, TRUSTEE FOR THE LIQUIDATION

20  OF B,                                Adv. No. 10-04538 (SMB)

21          Plaintiff,

22      v.

23  JAMES B. PINTO REVOCABLE TRUST,

24          Defendant.

25  - - - - - - - - - - - - - - - - - - - - - - - -x
```

```
 1
 2                    U.S. Bankruptcy Court
 3                    One Bowling Green
 4                    New York, NY 10004
 5
 6                    September 28, 2016
 7                    10:02 AM
 8
 9    B E F O R E :
10    HON STUART M. BERNSTEIN
11    U.S. BANKRUPTCY JUDGE
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 3

1    Hearing re: Discover conference re motions to compel of
2    defendants represented by Chaitman LLP
3
4    Hearing re: Motion to affirm trustee's determination
5    denying claims of claimants holding interests in Chalek
6    Associates LLC, Chaitman/Schwebel LLC, FGLS Equity LLC,
7    Larsco Investments LLC and Kuntzman Family LLC
8
9    Hearing re: Motion to approve settlement among trustee,
10   Annette Bongiorno, and Rudy Bongiorno pursuant to Federal
11   Bankruptcy Rule 9019
12
13   Hearing re: conference re discovery
14
15
16
17
18
19
20
21
22
23
24
25   Transcribed by: Jamie Gallagher

```
                                                    Page 4
 1   A P P E A R A N C E S :
 2   BAKER HOSTETLER LLP
 3        Attorney for the Trustee
 4        45 Rockefeller Plaza
 5        New York, NY 10111
 6
 7   BY:  EDWARD J. JACOBS, ESQ.
 8        FERNANDO A. BOHORQUEZ, JR., ESQ.
 9        STEPHANIE A. ACKERMAN, ESQ.
10
11   BAKER HOSTETLER LLP
12        Attorney for the Trustee
13        811 Main Street
14        Suite 1100
15        Houston, TX 77002
16
17   BY:  MARIE L. CARLISLE, ESQ.
18        DEAN D. HUNT, ESQ.
19
20   CHAITMAN LLP
21        Attorney for the Moving Parties
22        465 Park Avenue
23        New York, NY 10022
24
25   BY:  HELEN DAVIS CHAITMAN, ESQ.
```

Page 5

1  MARVIN C. INGBER, ATTORNEY AT LAW
2      Attorney for Pinto
3      6705 Apache Road
4      Edina, MN 55439
5
6  BY:   MARVIN C. INGBER, ESQ. (TELEPHONIC)
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

1      MR. BOHORQUEZ:  Thank you, Your Honor.

2      THE COURT:  Next is Pinto.

3      MR. HUNT:  Good morning, Your Honor.  Dean Hunt

4  for the trustee.  I believe defense counsel was going to be

5  appearing by phone today.

6      THE COURT:  Okay.  Is Mr. Ingber on the phone?

7      MR. INGBER:  Yes, Your Honor.  I'm appearing on

8  behalf of defendants James Pinto and (indiscernible).

9      THE COURT:  Mr. Ingber, if you're on a speaker,

10  would you take it off because it's very hard to hear you and

11  just speak into the receiver.

12      MR. INGBER:  No, I'm not on a speaker phone, I'm

13  on a handheld phone.

14      THE COURT:  All right.  We'll do the best we can.

15  Go ahead.

16      MR. HUNT:  Your Honor, this is the third time

17  we've come to the Court on this issue.  This is a Rule

18  7071(b) request to file a motion to compel and set that for

19  the October 26th, omnibus proceeding.  We'd also like to get

20  the Court's instruction and guidance on the discovery that

21  the defendants need to answer.

22      There are really three issues which have been laid

23  out in great detail in our three separate letters.  The

24  first being an issue that has been litigated now for over

25  seven months involving the defendants' unwillingness to

1  answer discovery for the life of the account.  They actually

2  -- one of the first times in my career I've actually seen a

3  footnote in a request for admission saying that they're

4  limiting their answers to the last two years of the account

5  and they will not respond --

6        THE COURT:  I guess it's an implied relevancy.

7        MR. HUNT:  Apparently.  But of course, under the

8  net equity calculation, we have a right to discovery on all

9  of those issues.  And second is an issue that's been ongoing

10 now for at least three months involving a purported forensic

11 analysis that the defendants have engaged accountants to do.

12 They reported that to us for the first time on June 24th

13 after they had already told us they were going to answer all

14 of the discovery.  The accountants have now been working on

15 that for at least three months.

16        In June, they told us that they'd worked nearly

17 all day on these things and they were going to get it to us

18 as quickly as they could.  Last week Mr. Ingber advised that

19 they needed another 30 to 45 days for their forensic

20 accountant to do whatever he was or she was doing.

21        THE COURT:  Have you asked for any forensic

22 accounting materials?

23        MR. HUNT:  No, we just asked for simple

24 interrogatories and for documents.  And the documents that

25 apparently the forensic accountants are looking at have not

Page 30

1  been produced.
2        The third issue is an issue that's been ongoing
3  now for at least five months where we have been advised that
4  there are documents available to be produced, but they have
5  not been produced.
6        In particular, there are documents that are held
7  by the trustee for these trusts of Mr. Sidney Kaplan (ph),
8  who has confirmed that he has fairly voluminous records that
9  are right on point. Most recently we were advised that
10 those could not be produced because there wasn't enough
11 money in opposing counsel's trust account to justify him
12 spending the time to review the documents because he wasn't
13 sure he was going to get paid.
14       Those documents are clearly relevant and we'd ask
15 the Court's guidance to defense counsel to go ahead and get
16 those produced to us.
17       THE COURT: Mr. Ingber?
18       MR. INGBER: Yes, Your Honor.
19       THE COURT: Let's start with the refusal to
20 answer, I guess, say the request for admissions --
21       MR. HUNT: And interrogatories.
22       THE COURT: Or the -- or as to the life of the
23 account.
24       MR. INGBER: By way of background if I could, Your
25 Honor. I am an estate planner not a litigator. Mr. Hunt

Page 31

1  has been dealing directly with the litigator in this case
2  who has been terminated, Robert McClay (ph).
3          THE COURT: Well, it's still -- he's still counsel
4  of record, isn't he?
5          MR. INGBER: We have terminated him.
6          THE COURT: Well, he's still counsel of record.
7  You didn't terminate -- whether or not you think you
8  terminated him, unless there's a Court order allowing him to
9  withdraw, he's still counsel of record.
10         MR. INGBER: Yes. I understand that, Your Honor.
11         THE COURT: Let's get back to the objection -- the
12 implied objection, I guess, that transactions that occurred
13 more than two years before the filing date are irrelevant.
14 I assume that's the basis for the refusal to answer?
15         MR. INGBER: I really have no idea, Your Honor.
16         THE COURT: All right. Well, let's -- and so the
17 objection is overruled. You have to answer that because
18 it's relevant to a determination of fictitious profits. So
19 even though deposits and withdrawals occurred 50 years
20 before the filing date, they're relevant.
21         MR. INGBER: I understand, Your Honor. I have no
22 idea why Mr. McClay put that answer in that way. He's been
23 dealing with Mr. Hunt and two of his partners in the Houston
24 office. It was Mr. Hunt's letter of September 7th that made
25 the clients and myself aware of the extent of the

Page 32

1  delinquency of the response to the trustee's discovery
2  request. And we have retained other counsel to replace
3  Mr. McClay. The issue becomes, and I can address the other
4  two issues, the forensic accounting and the Sidney Kaplan
5  issue.
6          Their forensic accounting was a proposal by
7  Mr. McClay that hopefully had shown, as I understand it,
8  that the withdrawals during the last two years, 2006 to
9  2008, were spent on expenses and costs and were not
10 transferred to third parties for lack of full and adequate
11 consideration. The --
12          THE COURT: There are subsequent transfer claims
13 in these cases?
14          MR. HUNT: No, sir.
15          THE COURT: Well, that may be. I understand that
16 but -- and that's an issue maybe for trial, but you still
17 have to produce the materials. The trustee doesn't have to
18 wait until you complete your forensic accounting and prepare
19 your defense. He's got his own case to --
20          MR. INGBER: No, that I understand now. What we
21 have received -- I talked -- when we terminated Mr. McClay,
22 even though I know officially not relieved of Court, I
23 started talking with the accountants. And they told me they
24 had gotten some materials from the defendants, but going
25 back 6 to 8 years, 8 to 10 years, they have gotten very

Veritext Legal Solutions
212-267-6868    www.veritext.com    516-608-2400

Page 33

1  little from them. So they are unable -- they need actual
2  cancelled checks. What they did receive were bank
3  statements, savings account statements, checking account
4  statements, but no indication of the underlying cancelled
5  checks or the credit card (indiscernible).
6      So they're not going to be able to render an
7  opinion or render any kind of forensic accounting report as
8  I understand it, that there are no -- or there were no
9  subsequent transfers. So they're not going to -- they can't
10 do anything.
11     THE COURT: That's not an issue for discovery.
12 You have the information and documents that were requested.
13 You haven't explained to me why they're not being produced.
14 So isn't it appropriate simply to enter an order that they
15 have to be produced by a specific deadline?
16     MR. INGBER: That's fine, Your Honor.
17     THE COURT: Okay. When are you going to produce
18 them?
19     MR. INGBER: I need to retain the replacement
20 counsel.
21     THE COURT: I'm not -- no, they're still. No, no,
22 no. This has been going on a long time and the trustee
23 doesn't have to be (indiscernible) in a dispute between the
24 client and former counsel or counsel of record. So what I'm
25 going to do is I'll give you 30 days, until the end of

Page 34

1  October, to produce all the documents and answer the
2  interrogatories to the extent you haven't done so --
3          MR. HUNT: And request for admissions.
4          THE COURT: And request for admissions. That's
5  (indiscernible), the request for admissions. Failing which,
6  the trustee is going to move to strike your answer and enter
7  a judgment and that may be how this -- you know, this ends
8  unless you do what you're required to do. Do you understand
9  that?
10         MR. INGBER: It will put an undue time imposition
11 upon whoever replacement counsel is. I do have replacement
12 counsel. He's got to become familiar with the case.
13 Ultimately, I believe, Your Honor, where defendants are
14 unable to make any payments. So the question is do we use
15 fees that would be paid to retain counsel to put in answers
16 or use that money to end up making a settlement with the
17 defendant -- with the trustee.
18         THE COURT: You know, he's talked about settlement
19 with the trustee. I know the trustee -- if you can convince
20 the trustee that they have no money and no judgment would be
21 collectable, it's more likely than not that it might be
22 settled if you could find the appropriate price. But this
23 is a discovery dispute. I'm going to direct you to turn
24 over the documents and answer the request for admissions by,
25 let's say, October 30 -- October 28th, which is a Friday and

08-01789-cgm    Doc 14567-29    Filed 12/06/16    Entered 12/06/16 19:04:36    Exhibit BB
                                        Pg 14 of 15

Page 35

1   you can submit an order.
2            MR. HUNT: So just to be clear on the order, it
3   would be for both the interrogatories and request for
4   admissions would deal with that. Yes, sir.
5            THE COURT: All discovery. This has been
6   outstanding for months. And as far as I'm concerned, if you
7   don't have the information to give to your forensic
8   accountant, that's immaterial to the trustee's requests.
9            MR. HUNT: Thank you, Your Honor. Appreciate your
10  time.
11           MR. INGBER: Understood, Your Honor.
12           THE COURT: All right. And you might tell
13  Mr. McClay that he's still in the case.
14           MR. INGBER: I will remind him of the case, of the
15  fact.
16           THE COURT: All right.
17           MR. INGBER: It's not going to do me much good
18  reminding him, though. Thank you, Your Honor.
19           THE COURT: Okay.
20           MR. INGBER: Mr. Hunt, I'll talk to you when you
21  get back to Houston.
22           MR. HUNT: Thank you.
23           THE COURT: Okay, thank you.
24           MR. INGBER: Okay, thanks. Bye bye.
25           THE COURT: I have nothing else. Is that right?

212-267-6868                Veritext Legal Solutions
                              www.veritext.com                516-608-2400

Page 36

1           UNIDENTIFIED SPEAKER:  I think that's correct,
2     Your Honor.
3           THE COURT:  Okay, thank you.
4     (Chorus of thank you)
5     (Whereupon these proceedings were concluded at 10:37
6     AM)