**Baker & Hostetler LLP**

45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee*
*for the Substantively Consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities LLC*
*and the Estate of Bernard L. Madoff*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (SMB) |
| Plaintiff-Applicant, | SIPA Liquidation |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF TRUSTEE'S MOTION *IN LIMINE* NUMBER 2 TO EXCLUDE CERTAIN TESTIMONY OF JOEL AND NORMAN BLUM

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................... ii

TABLE OF AUTHORITIES ........................................................................................... iii

PRELIMINARY STATEMENT .........................................................................................1

ARGUMENT ......................................................................................................................4

      I.     THE BLUMS LACK THE REQUISITE PERSONAL KNOWLEDGE
            REQUIRED BY FEDERAL RULES OF EVIDENCE 602 AND 701 ..................4

            A.     The Blums Lack the Personal Knowledge Required to be Competent
                   Witnesses Under Rule 602 ........................................................................4

            B.     The Blums' Testimony Concerning Their Parents' BLMIS Accounts
                   Amounts to Improper Lay Opinion Under Rule 701 ...................................6

      II.    THE BLUMS' TESTIMONY CONCERNING THEIR FATHER'S
            FINANCIAL TRAITS IS INADMISSIBLE UNDER FEDERAL RULES OF
            EVIDENCE 404 AND 406 ................................................................................9

      III.   EVEN IF RELEVANT OR OTHERWISE ADMISSIBLE, CERTAIN
            PORTIONS OF THE BLUMS' DEPOSITION TESTIMONY ARE BASED
            ON INADMISSIBLE HEARSAY WITHOUT AN APPLICABLE
            EXCEPTION ....................................................................................................12

            A.     Under Federal Rule of Evidence 801, the Blums' Testimony
                   Concerning Their Parents' BLMIS Accounts is Inadmissible Hearsay
                   Offered to Prove that Their Parents Did Not Receive PW Transactions ...12

            B.     The Blums' Hearsay Testimony Is Not Saved by Federal Rule of
                   Evidence 803(3)'s Then-Existing State of Mind Exception ......................14

            C.     The Blums' Testimony Concerning Their Parents' BLMIS Accounts
                   is not Admissible under Federal Rule of Evidence 807's Residual
                   Exception .................................................................................................15

CONCLUSION..................................................................................................................17

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re 251 W. 121 Street, Inc.*,
  No. 03-14377, 2009 WL 5216961 (Bankr. S.D.N.Y. Dec. 30, 2009) .................................9, 10

*Bank of China, N.Y. Branch v. NBM LLC*,
  359 F.3d 171 (2d Cir. 2004)........................................................................................................8

*BanxCorp v. Costco Wholesale Corp.*,
  978 F. Supp. 2d 280 (S.D.N.Y. 2013)......................................................................................16

*Batoh v. McNeil-PPC, Inc.*,
  167 F. Supp. 3d 296 (D. Conn. 2016).................................................................................15, 16

*Bell v. Constr. & Gen. Bldg. Laborers' Local 79*,
  No. 04-cv-6520, 2011 WL 3796355 (S.D.N.Y. 2011) .............................................................14

*Bruce Lee Enters., LLC v. A.V.E.L.A., Inc.*,
  No. 10-cv-2333, 2013 WL 822173 (S.D.N.Y. Mar. 6, 2013)...................................................12

*Cameron Indus., Inc. v. Mothers Work, Inc.*,
  No. 06-cv-1999, 2007 WL 1649856 (S.D.N.Y. June 6, 2007) .................................................15

*In re EnviroSolutions of N.Y., LLC*,
  476 B.R. 88 (Bankr. S.D.N.Y. 2012)..........................................................................................7

*Folio Impressions, Inc. v. Byer California*,
  937 F.2d 759 (2d Cir. 1991).........................................................................................................5

*Gupta v. Att'y Gen.*,
  No. 12-cv-5637, 2014 WL 1116730 (S.D.N.Y. 2014) .............................................................15

*Hester v. BIC Corp.*,
  225 F.3d 178 (2d Cir. 2000).........................................................................................................7

*Levy v. Bessemer Trust Co., N.A.*,
  No. 97-cv-1785, 2000 WL 1300402 (S.D.N.Y. Sept. 14, 2000) ...............................................5

*Lightfoot v. Union Carbide Corp.*,
  110 F.3d 898 (2d Cir. 1997).........................................................................................................8

*Magnoni v. Smith & Laquercia, LLP*,
  701 F. Supp. 2d 497 (S.D.N.Y. 2010).......................................................................................16

*New World Solutions, Inc. v. NameMedia Inc.*,
    150 F. Supp. 3d 287 (S.D.N.Y. 2015)..................................................................4

*Robertson v. Trs. of Columbia Univ. in N.Y.C.*,
    No. 08-cv-1913, 2009 WL 3425647 (S.D.N.Y. Oct. 20, 2009)..............................5

*SEC v. Espuelas*,
    905 F. Supp. 2d 507 (S.D.N.Y. 2012)..................................................................7

*Estate of Sheppard ex rel. Sheppard v. Sec'y of Dep't of Health & Human Servs.*,
    No. 04-112V, 2007 WL 5160383 (Ct. Cl. Aug. 7, 2007) .....................................16

*United States v. Al Kassar*,
    582 F. Supp. 2d 498 (S.D.N.Y. 2008), *aff'd*, 660 F.3d 108 (2d Cir. 2011) .............9

*United States v. Barsoum*,
    763 F.3d 1321 (11th Cir. 2014) ........................................................................13

*United States v. Cuti*,
    720 F.3d 453 (2d Cir. 2013)......................................................................4, 5, 6

*United States v. Dupree*,
    706 F.3d 131 (2d Cir. 2013)..............................................................................12

*United States v. Hill*,
    No. 14-cr-3872, 2016 WL 4129228 (2d Cir. Aug. 3, 2016) ...................................9

*United States v. Kaplan*,
    490 F.3d 110 (2d Cir. 2007)................................................................................7

*United States v. Rea*,
    958 F.2d 1206 (2d Cir. 1992)..............................................................................6

*United States v. U.S. Gypsum Co.*,
    333 U.S. 364 (1948)..........................................................................................16

*United States v. West*,
    670 F.2d 675 (7th Cir. 1982), *overruled in part by United States v. Green*, 258
    F.3d 683 (7th Cir. 2001) ...................................................................................10

*Vill. of Freeport v. Barrella*,
    814 F.3d 594 (2d Cir. 2016)................................................................................7

*Weil v. Seltzer*,
    873 F.2d 1453 (D.C. Cir. 1989) .........................................................................11

**Statutes**

Securities Investor Protection Act, 15 U.S.C. § 78aaa *et seq.* ........................................1

**Rules**

Fed. R. Bankr. P. 9017 ................................................................................................................1

Fed. R. Civ. P. 32 ......................................................................................................................15

Fed. R. Evid. 404 ......................................................................................................................3, 9

Fed. R. Evid. 406 ..............................................................................................................3, 9, 10, 11

Fed. R. Evid. 602 ..............................................................................................................2, 4, 5, 6

Fed. R. Evid. 701 .................................................................................................................. *passim*

Fed. R. Evid. 702 ......................................................................................................................6

Fed. R. Evid. 801 ......................................................................................................................3, 12

Fed. R. Evid. 802 ......................................................................................................................3

Fed. R. Evid. 803 ..............................................................................................................4, 12, 14, 15

Fed. R. Evid. 804 ......................................................................................................................15

Fed. R. Evid. 807 ..............................................................................................................4, 12, 15, 16

**Other Authorities**

1 *McCormick on Evidence* § 195 ..............................................................................................10

Irving H. Picard, as trustee ("Trustee") for the substantively consolidated liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15 U.S.C. § 78aaa *et seq.*,[1] and the chapter 7 estate of Bernard L. Madoff ("Madoff"), respectfully submits this reply memorandum of law in further support of the Trustee's motion *in limine* for entry of an order excluding certain testimony by Joel and Norman Blum (the "Motion")[2] at the evidentiary hearing on the Trustee's treatment of profit withdrawal transactions ("PW Transactions").

## PRELIMINARY STATEMENT

The Trustee's Motion seeks only to exclude the testimony of Participating Claimants[3] Joel and Norman Blum (individually, "Joel" and "Norman," and collectively, the "Blums") concerning PW Transactions occurring in the BLMIS accounts held and maintained by their late parents, Dr. Morris Blum ("Morris") and Mrs. Roslyn Blum ("Roslyn").[4] This testimony should be excluded because it fails to satisfy the criteria for admissibility under the Federal Rules of Evidence, namely: (i) the witness has personal knowledge about the matters to which he is testifying; (ii) the evidence is relevant; and (iii) the evidence is not subject to a rule of exclusion.[5]

---

[1] Subsequent references to sections of the Securities Investor Protection Act shall be denoted as "SIPA § __."

[2] Memorandum of Law in Support of Trustee's Motion *in Limine* Number 2 to Exclude Certain Testimony of Joel and Norman Blum at 5 (Oct. 28, 2016), ECF No. 14355. All "ECF" references in this memorandum refer to the case captioned *SIPC v. BLMIS (In re Madoff)*, No. 08-01789 (SMB) (Bankr. S.D.N.Y.), unless otherwise stated herein.

[3] The Blums are "Participating Claimants" as that term is defined in the Order Establishing Schedule for Limited Discovery and Briefing on Profit Withdrawal Issue ¶ 5 (June 25, 2015), ECF No. 10266.

[4] If the Blums testify live at the evidentiary hearing, the Trustee's Motion requests an order prohibiting testimony that is based on a lack of personal knowledge, speculation, inadmissible character evidence, or hearsay. If the Blums testify by deposition designation, the Trustee's Motion requests the Court strike certain portions of the Blums' depositions on the same evidentiary grounds. *See* Decl. of David J. Sheehan in Supp. of Trustee's Mots. *in Limine* Numbers 1–4 ("Sheehan Decl."), Ex. 3 (Chart Providing Basis for Excluding Certain Deposition Testimony by the Blums) (Oct. 28, 2016), ECF No. 14359-3.

[5] The Federal Rules of Evidence are made applicable here through Federal Rule of Bankruptcy Procedure 9017.

Rather than address their inability to meet these requirements, the Blums' memorandum in opposition ("Opposition")[6] misconstrues the Trustee's Motion and the testimony it seeks to exclude, and mischaracterizes the law regarding personal knowledge, lay witness testimony, character and habit evidence, and hearsay.

First, the Blums lack the necessary personal knowledge about their parents' BLMIS accounts and related PW Transactions to serve as qualified witnesses under Rules 602 and 701. Under Rule 602, a witness may testify to a matter only if evidence sufficient to support a finding that the witness has personal knowledge of the matter is introduced.  In their declarations[7] and deposition testimony,[8] the Blums aver that neither they, nor their parents, received or cashed any checks associated with the 322 PW Transactions occurring in the relevant participating accounts.[9]  However, the Blums admit they have no personal knowledge regarding activity in their parents' BLMIS accounts during the relevant period in which their parents received PW Transactions—July 27, 1982 through July 8, 1997.[10]

Second, the Blums' testimony concerning their parents' BLMIS accounts is not relevant. Rule 701 limits testimony from lay witnesses to only those opinions and inferences that are, among other things, helpful to determining a fact in issue.  Here, the Blums' testimony regarding their parents' general investment strategy and estate planning goals is irrelevant to the

---

[6] The Blums' Memorandum of Law in Opposition to the Trustee's Motion *in Limine* to Exclude Certain of Their Testimony (Nov. 11, 2016), ECF No. 14484.

[7] *See* Amended Declaration of Richard A. Kirby in Support of Blums' Objection to Trustee's Proposed Scheduling Order Changes for Profit Withdrawal Motion ("Kirby Amended Decl."), Ex. F (Decl. of Joel A. Blum, M.D. ("J. Blum Decl.")) (Mar. 30, 2016), ECF No. 13003-6; Kirby Amended Decl., Ex. G (Decl. of Norman J. Blum, M.D. ("N. Blum Decl.")) (Mar. 30, 2016), ECF No. 13003-7.

[8] *See* Sheehan Decl., Ex. 4 (Tr. of Norman Blum, M.D. Dep. dated May 13, 2016 ("N. Blum Tr.")) (Oct. 28, 2016), ECF No. 14359-4; Sheehan Decl., Ex. 5 (Tr. of Joel Alan Blum, M.D. Dep. dated May 16, 2016 ("J. Blum Tr.")) (Oct. 28, 2016), ECF No. 14359-5.

[9] *See* Motion at 1–2, nn.4–6, 9 (description of Blums' participating accounts and Related Direct Accounts held in their names or the names of their late parents).

[10] *See, e.g.*, N. Blum Tr. 68:3–5, 81:23–82:4, 82:21–25; J. Blum Tr. 51:13–16, 52:7–12, 53:18–21, 80:22–24.

fundamental issue before the Court, whether PW Transactions are properly treated as debits for purposes of calculating net equity and, to the extent the evidentiary hearing also involves individual claim determinations, whether the Participating Claimants—here, for accounts maintained by Morris and Roslyn—received PW checks.

The Blums' testimony concerning their father's financial plans and tactics is also inadmissible character evidence that does not amount to admissible habit evidence. Rule 404 makes character evidence inadmissible to prove that on a particular occasion a person acted in accordance with a character trait. The Blums' testimony concerning their father's financial traits is offered for this precise reason—to prove that because Morris tended to act prudently in his financial affairs he would not have requested, received, or cashed PW checks. Rule 404 bars such testimony as inadmissible character evidence.

Additionally, to be admissible habit evidence under Rule 406, the proponent must show that a person reacts to a particular type of situation with a specific type of conduct. The Blums do not have personal knowledge of their father's prior behavior consistent with habit evidence. They never observed how their father handled money—let alone funds from BLMIS—during the relevant period. Further, the only basis the Blums can offer for why their father would have disavowed PW checks are sweeping assertions as to what they *imagine* their father would or would not do in managing his financial affairs. This is not evidence of an automatic, involuntary response consistent with habitual behavior.

Third, portions of the Blums' testimony are inadmissible hearsay under Rules 801 and 802.[11] The Blums' testimony concerning their parents' BLMIS accounts—which lacks personal knowledge and is simply speculation—is being offered to prove that their parents did not receive

---

[11] Sheehan Decl., Ex. 3.

or cash PW checks.  This testimony is classic hearsay without an applicable hearsay exception.

Rule 803(3) does not permit the Blums to introduce extrajudicial statements to prove facts

remembered or believed concerning their parents' receipt of PW Transactions.  Likewise,

Rule 807 does not allow the Blums to introduce testimony based on hearsay that is unnecessary,

unreliable, and contains minimal probative value.

## ARGUMENT

The Blums' testimony concerning their parents' BLMIS accounts does not meet the

necessary predicates for the admissibility of testimony under the Federal Rules of Evidence

because the testimony is: (i) not based on personal knowledge; (ii) not relevant; and (iii) subject

to exclusion.  *See New World Solutions, Inc. v. NameMedia Inc.*, 150 F. Supp. 3d 287, 315

(S.D.N.Y. 2015).

## I.  THE BLUMS LACK THE REQUISITE PERSONAL KNOWLEDGE REQUIRED BY FEDERAL RULES OF EVIDENCE 602 AND 701

Any testimony by the Blums must be based on personal knowledge under both Rule 602

and 701.  Furthermore, Rule 701(a) also requires that a lay witness's testimony be "rationally

based" on this personal knowledge *and* helpful to the fact-finder in determining a fact in issue.

The Blums' testimony fails to meet either requirement, and should thus be excluded.

### A.  The Blums Lack the Personal Knowledge Required to be Competent Witnesses Under Rule 602

It is well-settled that a witness may not testify to a matter unless there is evidence

sufficient to support a finding that he or she has personal knowledge of the matter.  Fed. R. Evid.

602;[12] *United States v. Cuti*, 720 F.3d 453, 457 (2d Cir. 2013).  The test for whether a witness

may testify about a particular matter is whether a reasonable trier of fact could believe the

---

[12] The Advisory Committee Notes to Rule 602 also make clear that witnesses are barred from "testifying to the subject matter of [a] hearsay statement, as he has no personal knowledge of it."

witness had personal knowledge of that matter. *See Folio Impressions, Inc. v. Byer California*, 937 F.2d 759, 763 (2d Cir. 1991); *Robertson v. Trs. of Columbia Univ. in N.Y.C.*, No. 08-cv-1913, 2009 WL 3425647, at *7 (S.D.N.Y. Oct. 20, 2009) (plaintiff's testimony about purported conversations between defendant and third party concerning plaintiffs claim was not admissible because plaintiff lacked personal knowledge of those conversations). Where deposition testimony establishes that a witness lacks the personal knowledge required by Rule 602 and would only testify about what he or she heard from others, the witness should be excluded from testifying at trial. *Levy v. Bessemer Trust Co., N.A.*, No. 97-cv-1785, 2000 WL 1300402, at *1 (S.D.N.Y. Sept. 14, 2000).

Despite assertions that they were "fully familiar"[13] with the details of their parents' BLMIS accounts, the Blums testified that they: (i) never discussed PW Transactions with their father;[14] (ii) did not assist their parents with their BLMIS accounts or personal finances during the period in which their parents received PW checks—July 27, 1982 through July 8, 1997;[15] (iii) did not know of PW Transactions occurring in their own or their parents' BLMIS accounts until after Madoff's arrest;[16] and (iv) were not aware of, or party to, communications between their parents and BLMIS employees.[17]

The Blums assert that Rule 602's personal knowledge requirement "may consist of what the witness thinks he knows from personal perception."[18] *Cuti*, 720 F.3d at 458–59. However,

---

[13] J. Blum Decl. ¶ 4; N. Blum Decl. ¶ 5.

[14] *See* Motion at 5 & nn.16–20.

[15] *See id*. at 6. Joel testified that he never played much of a role in managing his father's investments. Norman admitted that he didn't assist his father until after 2000—three years after the last PW Transaction at issue. *Id*.

[16] *See id.* at 7–8. Joel became aware of PW Transactions only "way after" Madoff's arrest. Norman's knowledge of PW Transactions did not come until "more recently," and in connection with the Trustee's avoidance actions against Norman. *Id.*

[17] *See, e.g.*, J. Blum Tr. 51:20–23; N. Blum Tr. 79:8–12, 87:11–17.

[18] Opposition at 7.

in *Cuti*, the testimony at issue was from an accountant in response to hypothetical questions as to what the accounting treatment of certain fraudulent transactions would have been absent the fraud. *Id.* at 455. Unlike the Blums' testimony as to whether their parents received PW Transactions, in *Cuti*, "the witnesses were not testifying to the existence of facts, but simply acknowledging that knowledge of such facts, already admitted into evidence, would have caused them to alter their accounting treatment." *Id.* at 459. The Blums fail to acknowledge that they did not observe or participate in their parents' finances or BLMIS accounts until after the PW Transactions occurred. As such, the Blums lack the requisite personal knowledge required by Rule 602 and should not be allowed to provide speculative, self-serving testimony regarding their parents' PW Transactions.[19]

### B. The Blums' Testimony Concerning Their Parents' BLMIS Accounts Amounts to Improper Lay Opinion Under Rule 701

The Blums erroneously argue that their speculation and uncorroborated assertions are also admissible lay witness testimony under Rule 701. Rule 701 imposes three express prerequisites for admissibility of lay witness opinions: (i) the opinion must be rationally based on the witness's own perceptions; (ii) it is to be allowed only if the court concludes that it will be helpful to assist the trier of fact to understand the evidence or to determine a fact in issue; and (iii) it cannot be based on scientific, technical, or other specialized knowledge within the scope of Rule 702. *See* Fed. R. Evid. 701; *see also United States v. Rea*, 958 F.2d 1206, 1215 (2d Cir. 1992). The Blums' proffered testimony as to their parents' accounts fails to satisfy the first two criteria.

---

[19] Motion at 5–8.

1.  *The Blums' Speculation Concerning Their Parents' BLMIS Accounts and PW Transactions is Not Rationally Based on Their Own Perceptions*

Under Rule 701, "[t]he rational basis requirement 'is the familiar requirement of first-hand knowledge or observation.'"  *United States v. Kaplan*, 490 F.3d 110, 118 (2d Cir. 2007) (citation omitted).   Lay witness testimony must be rationally based on a witness's own perceptions and not speculation.  *See Hester v. BIC Corp.*, 225 F.3d 178, 185 (2d Cir. 2000) (stating "naked speculation" regarding another person's motivation is barred as improper lay opinion testimony); *Vill. of Freeport v. Barrella*, 814 F.3d 594, 611–12 (2d Cir. 2016) (holding witnesses may testify regarding their own observations but they may not opine as to others' motives); *In re EnviroSolutions of N.Y., LLC*, 476 B.R. 88, 106 (Bankr. S.D.N.Y. 2012) (a claimant or witness without personal knowledge is unlikely to offer admissible testimony). Where the foundational basis for lay opinion testimony is "extremely vague" and lacks corroborating evidence, a court may exclude that testimony.  *Kaplan*, 490 F.3d at 119–21; *see also SEC v. Espuelas*, 905 F. Supp. 2d 507, 520 (S.D.N.Y. 2012) (Rule 701's requirements not met when court cannot assess whether proffered opinion is rationally based on witness's own perceptions).

Here, the Blums are not competent under Rule 701 to offer opinions about their parents' BLMIS accounts or PW Transactions occurring therein.   As discussed above, the Blums admittedly did not participate or manage their parents' BLMIS accounts during the relevant period and, in fact, had no knowledge of the PW Transactions in their parents' BLMIS account. Yet, they seek to offer testimony on what they *imagine* their father would or would not do in managing his financial affairs.[20]  This is pure speculation, not lay opinion testimony grounded in personal knowledge as required by Rule 701.

---

[20] Motion at 9.

7

### 2. *The Blums' Speculative Beliefs as to Their Father's Management of His Accounts Will Not Assist the Fact-Finder*

The second fundamental admissibility requirement for a lay opinion is that the proposed testimony assists the fact-finder. A lay opinion is not helpful if the fact-finder will be in as good a position as the witness to draw the inference. *Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 912 (2d Cir. 1997) (analyzing lay opinion as not helpful because it would merely tell the jury what result to reach); *see also Bank of China, N.Y. Branch v. NBM LLC*, 359 F.3d 171, 181 (2d Cir. 2004) (holding admission of certain fact testimony was erroneous because it was not based entirely on witness's perceptions).

Here, the Opposition overstates the Blums' deposition testimony concerning the role they played in their father's finances, and such testimony offers improper lay opinion on the fundamental issue in this omnibus proceeding. Specifically, the Blums argue that proceeds from the PW Transactions were not disbursed in an "orderly fashion," and, thus, if PW checks were sent to their father then he would have likely disavowed them.[21] To support their arguments, the Blums offer only their own after-the-fact assessment of the PW Transactions, claiming that they "make no sense"[22] and that their father would not have chosen a course of action which would have included accepting and cashing the PW checks.[23] Yet, the Blums do not offer any documentation of their father's decisions or any evidence that their father disavowed the PW checks. Other than the Blums' speculation about what their father did—which they admittedly

---

[21] J. Blum Tr. 77:20–78:2 ("I just can't imagine that [my father] would have done it that way . . . . [H]e would have wanted to know that it [BLMIS withdrawals] was coming in an orderly fashion.").

[22] N. Blum Decl. ¶ 9 ("Further, this makes no sense given the way our family managed their accounts."); J. Blum Decl. ¶ 8 (same).

[23] J. Blum Tr. 74:24–75:11 ("*To me*, having these huge amount [sic] of profit withdrawal checks, it was just not -- it was chaotic to do something like that. It's just -- I can't imagine that my father would ever have chosen that as a course of action to just have checks coming in all the time. *So it didn't make any sense to me*. You know, when I first became aware of this, I certainly -- and he never mentioned anything like that, you know, when he was talking to me about establishing an account. *And I think he would because that's a piece of work to manage that many checks.*" (emphasis added)).

did not know—there is no evidence to sustain their statements. Such self-interested and foundationally deficient statements will not assist this Court in determining whether PW Transactions are properly categorized as debits, or even whether Morris and Roslyn Blum received PW checks.

> 3. *The Blums' Testimony Concerning Their Parents' BLMIS Accounts is Not Based on Scientific, Technical, or Other Specialized Knowledge*

As to the third prerequisite, the parties do not dispute that the Blums' proffered testimony is not in an area that is scientific, technical, or otherwise requires specialized knowledge. Having failed to satisfy the first two prerequisites, however, Rule 701 is inapplicable and the Blums' testimony on how they imagine their father would have managed his accounts is inadmissible.

## II.    THE BLUMS' TESTIMONY CONCERNING THEIR FATHER'S FINANCIAL TRAITS IS INADMISSIBLE UNDER FEDERAL RULES OF EVIDENCE 404 AND 406

The Blums' testimony concerning their father's financial plans, tactics, and traits is inadmissible character evidence and does not amount to admissible habit evidence. Under Rules 404 and 406, such testimony must be excluded.

Rule 404 provides "[p]ropensity evidence is not admissible to prove that on a particular occasion a defendant acted in accordance with a character trait." *United States v. Hill*, No. 14-cr-3872, 2016 WL 4129228, at *2 (2d Cir. Aug. 3, 2016). Further, under Rule 406, evidence of a "person's habit . . . may be admitted to prove that on a particular occasion the person . . . acted in accordance with the habit," but the proponent must show a "person's regular practice of meeting a particular kind of situation with a specific type of conduct." *United States v. Al Kassar*, 582 F. Supp. 2d 498, 501 (S.D.N.Y. 2008) (evidence of sporadic, often unrelated acts over many years is not the frequent, semi-automatic conduct required of admissible habit evidence), *aff'd*, 660 F.3d 108 (2d Cir. 2011); *see also In re 251 W. 121 Street, Inc.*, No. 03-14377, 2009 WL

5216961, at *2 n.4 (Bankr. S.D.N.Y. Dec. 30, 2009) (noting its earlier exclusion of evidence where no pattern of the subject behavior was established).

Here, the Blums' argument that their father's approach to financial planning is not a character trait fails.  The Blums principally rely on an inapplicable Seventh Circuit character evidence case involving expert testimony, which "is excepted from the opinion evidence rule." *See United States v. West*, 670 F.2d 675, 682 (7th Cir. 1982), *overruled in part by United States v. Green*, 258 F.3d 683 (7th Cir. 2001).  As the Blums note, the *West* court cites *McCormick on Evidence* for the proposition that character evidence refers to a disposition, such as "honesty, temperance, or peacefulness."  *Id.* (quoting 1 *McCormick on Evidence* § 195 (Mosteller, 7th ed.)).  What they fail to disclose, however, is that *McCormick on Evidence* specifically provides that a tendency to act prudently in business is a disposition encompassed in character evidence. 1 *McCormick on Evidence* § 195 ("If we speak of a character for care, we think of the person's tendency to act prudently in all the varying situations of life—in business, at home, in handling automobiles and in walking across the street.").  The Blums are not experts and are offering inadmissible character evidence—namely their father did not receive PW checks because he tended to act prudently in his financial affairs—and thus, their speculative, opinion testimony should be excluded.

The Blums' testimony concerning their father's financial traits also fails to establish the necessary habitual routine required by Rule 406.  The Blums offer broad assertions as to what they *imagine* their father would or would not do in managing his financial affairs.[24]  They also offer that if he had been sent a PW check, he would have disavowed it.[25]  Regardless of the speculative nature of this testimony, this evidence does not demonstrate the regular practice

---

[24] *See* Motion at 9–11.

[25] *See* N. Blum Tr. 83:10–18.

required by Rule 406.  The Blums' belief that their father would have disavowed a PW check is not the automatic, involuntary response required to qualify as consistent with habitual behavior. Rather, habitual behavior requires intelligence and forethought—conscious awareness of the PW check, the significance of the check, and the refusal of the check after determining that profit distributions from the account were unwanted.  Testimony regarding the required forethought and intelligence is lacking here.

The Blums further argue that their testimony regarding their father's "conservative investment strategy" should be admitted as evidence of habit under Rule 406 because "it is more likely than not that Morris saved in these particular instances."[26]  In an unpersuasive attempt to support this proposition, the Opposition generally cites the D.C. Circuit's discussion of habit evidence under Rule 406 in *Weil v. Seltzer*, 873 F.2d 1453, 1460 (D.C. Cir. 1989).  However, the facts in *Weil* undermine the Blums' argument and support the Trustee's contention that the Blums' beliefs as to their father's general financial disposition do not amount to habit evidence. In *Weil*, the D.C. Circuit ruled that the district court abused its discretion by admitting testimony under Rule 406 from former patients testifying about their doctor's "habit" of prescribing a certain type of medication for allergies.  *Id*.  Notably, the court held that the testifying patients had never observed the doctor with another patient and therefore could not establish a habit of treating every patient with allergies with the same medication.  *Id*. at 1460–61.  As the court observed, "one of the concerns over the reliability of habit testimony is that the conduct at issue may not have occurred with sufficient regularity making it more probable than not that it would be carried out in every instance."  *Id*. at 1460.

---

[26] Opposition at 21–22.

Here, the Blums testified that their father had many investments within his "conservative investment strategy." However, the Blums admitted that they did not observe or assist their father with his specific investment in BLMIS during the time of PW Transactions, and therefore are unable to establish that Morris had a habit of treating all his investments in the same manner.

## III.    EVEN IF RELEVANT OR OTHERWISE ADMISSIBLE, CERTAIN PORTIONS OF THE BLUMS' DEPOSITION TESTIMONY ARE BASED ON INADMISSIBLE HEARSAY WITHOUT AN APPLICABLE EXCEPTION

Specified portions of the Blums' testimony should be excluded as inadmissible hearsay evidence and do not qualify as an exception under either Rule 803(3) or 807.[27]  Such testimony relies on extrajudicial statements made by one brother to the other,[28] or general conversations with their father.[29]

### A.    Under Federal Rule of Evidence 801, the Blums' Testimony Concerning Their Parents' BLMIS Accounts is Inadmissible Hearsay Offered to Prove that Their Parents Did Not Receive PW Transactions

Hearsay is a declarant's out of court statement "offer[ed] in evidence to prove the truth of the matter asserted in the statement."  Fed. R. Evid. 801(c); *United States v. Dupree*, 706 F.3d 131, 136 (2d Cir. 2013).  Classic hearsay statements that are offered for their truth should be excluded.  *See, e.g.*, *Bruce Lee Enters., LLC v. A.V.E.L.A., Inc.*, No. 10-cv-2333, 2013 WL 822173, at *8 (S.D.N.Y. Mar. 6, 2013).

Here, the Blums offer testimony that is devoid of the personal knowledge, certainty, or reliability that would otherwise permit hearsay on the basis of an exception.  For example, Joel offers hearsay testimony predicated on further hearsay statements to support his argument that his parents did not receive PW checks: "[m]y brother [Norman], who spent a lot of time with him

---

[27] Sheehan Decl., Ex. 3 (Chart Providing Basis for Excluding Certain Deposition Testimony by the Blums) (Oct. 28, 2106).

[28] *See, e.g.*, J. Blum Tr. 78:8–10.

[29] *See, e.g.*, N. Blum Tr. 81:9–12.

[Morris] is, you know, said it never happened. So I can't believe it."[30]  Similarly, Norman seeks admission of general testimony that simply repeats general statements purportedly made by his father as evidence that his parents did not cash PW checks.[31]

There is also no merit to the Blums' arguments that their testimony is being offered to show that a statement was made or had a certain effect on them—as opposed to testimony offered to prove the truth of the matter asserted.  The Blums cite an Eleventh Circuit decision to support the proposition that they may testify about their perceptions "where that perception is informed by conversation."[32]  *United States v. Barsoum*, 763 F.3d 1321 (11th Cir. 2014). However, in *Barsoum*, the court allowed a co-conspirator to testify about his involvement with the criminal defendant and the existence of conversations between the two but not specific statements.  *Id.* at 1339.  Here, Norman and Joel admit that they weren't involved in their parents' financial affairs during the time period their parents received PW Transactions.  Thus, anything the Blums testify about with regard to the PW Transactions was not perceived or observed, it was relayed directly from Morris in an out-of-court statement.  The Blums are simply making a veiled attempt to admit unreliable, extrajudicial statements to support their assertion that their parents did not receive PW checks.  Moreover, the effects of those statements on the Blums are not relevant to this proceeding.  The fundamental issue is how Morris managed his and Roslyn's accounts, not how the Blums felt about how they imagined Morris managed the accounts.

---

[30] J. Blum Tr. 78:8–10.  Moreover, when asked about his familiarity with his brother's BLMIS account, Joel responded that "then I heard -- I don't know the details of this -- that my brother had a retirement account, I believe, with -- with BLM[IS]."  J. Blum Tr. 64:17–24.

[31] N. Blum Tr. 81:9–12.  Norman stated: "He talked to me. He talked to -- anything he does, he would always talk to me about it, but he didn't tell me anything about changes in Madoff. He talked to me about everything. He was very open about everything."  *Id.*

[32] Opposition at 11.

### B. The Blums' Hearsay Testimony Is Not Saved by Federal Rule of Evidence 803(3)'s Then-Existing State of Mind Exception

Rule 803(3) provides an exception to the hearsay rule for "[a] statement of the declarant's then-existing state of mind (such as motive, intent, or plan) . . . *but not including a statement of memory or belief to prove the fact remembered or believed* unless it relates to the validity or terms of the declarant's will."   Fed. R. Evid. 803(3) (emphasis added).   "The exclusion of 'statements of memory or belief to prove the fact remembered or believed' is necessary to avoid the virtual destruction of the hearsay rule which would otherwise result from allowing state of mind, provable by a hearsay statement, to serve as the basis for an inference of the happening of the event which produced the state of mind."   Fed. R. Evid. 803(3) advisory committee's note; *see also Bell v. Constr. & Gen. Bldg. Laborers' Local 79*, No. 04-cv-6520, 2011 WL 3796355, at *3 (S.D.N.Y. 2011) (holding testimony regarding a witness's memory of a meeting to be inadmissible because it was introduced to prove the memory).   Similar to the temporal requirement for personal knowledge in Rule 701, Rule 803(3) also requires that the statement be contemporaneous to the event sought to be proved.   *Id.*   Thus to be admitted under this rule, "the statement must face forward, rather than backward."   *Bell*, 2011 WL 3796355, at *3 (citations and internal quotation marks omitted).

Here, the Blums' testimony concerning their parents' BLMIS accounts and related PW Transactions is the definition of backward-facing speculation.   The proffered testimony is that *if* their father had received a PW check, then he would have disavowed it.   This is a classic hindsight prognostication intended to guise after-the-fact speculation as evidence of Morris' then-existing state of mind.   There is no direct or circumstantial evidence that suggests Morris made any statements concurrent in time, during the time period relevant to the PW Transactions in his account, or that Morris intended to disavow PW checks when received.   And, the Blums—

who admittedly had very few conversations with their father about his BLMIS accounts, were not active in the management of his BLMIS accounts, did not discuss PW Transactions with their father, and did not recognize PW Transactions in any of their parents' or their own BLMIS accounts until after Madoff's arrest—cannot offer such testimony. This is not admissible state of mind testimony under Rule 803(3)'s hearsay exception.

### C. The Blums' Testimony Concerning Their Parents' BLMIS Accounts is not Admissible under Federal Rule of Evidence 807's Residual Exception

The residual exception permits the admission of hearsay if: (i) the statement has equivalent circumstantial guarantees of trustworthiness as statements under Rules 803 and 804; (ii) the statement is offered as evidence of a material fact; (iii) the statement is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts; and (iv) admitting the statement will best serve the purposes of these rules and the interests of justice.[33]  Fed. R. Evid. 807(a).  To determine whether proffered testimony carries these guarantees, "a district court must assess its 'ability to minimize some of the four classic hearsay dangers': the risks of insincerity, faulty perception, faulty memory, and faulty narration." *Gupta v. Att'y Gen.*, No. 12-cv-5637, 2014 WL 1116730, at *8 (S.D.N.Y. 2014) (quoting *Schering Corp. v. Pfizer, Inc.*, 189 F. 3d 218, 233 (2d Cir. 1999)).

Here, the Blums' proffered testimony does not reach the level of trustworthiness and relevance required under Rule 807.  In *Batoh v. McNeil-PPC, Inc.*, the court questioned the trustworthiness of deposition testimony from the deceased's mother and brother stating that the

---

[33] A party seeking to admit testimony under Rule 807 must also provide the opposing party with adequate notice.  In arguing that they provided sufficient notice, a fact with which the Trustee does not disagree, the Blums erroneously claim that the Trustee should have objected to the relevant responses as hearsay at the Blums' depositions. However, all objections during a deposition are expressly preserved except for form objections.  The failure to object on grounds other than form objections does not waive a party's right to assert that the testimony is inadmissible on evidentiary grounds.  *See* Fed. R. Civ. P. 32(b), 32(d)(3); *see also Cameron Indus., Inc. v. Mothers Work, Inc.*, No. 06-cv-1999, 2007 WL 1649856, at *4 (S.D.N.Y. June 6, 2007) (stating that, at a deposition, "all objections to the admissibility of the testimony elicited are preserved except objections 'which might be obviated, removed, or cured if promptly presented'").

deceased made statements to them explaining that he would have been more careful when taking medicine if the bottle had the appropriate label. 167 F. Supp. 3d 296, 311–12 (D. Conn. 2016). The court found that the hearsay statements did not satisfy Rule 807 because: (i) they lacked circumstantial guarantees of trustworthiness when both witnesses could not describe the place and time as well as context of these conversations; and (ii) the witnesses suggested the statements were made around the time the deceased was contemplating litigation. *Id.* at 311–13.

Likewise here, the Blums are seeking to introduce self-serving testimony made after the relevance of the PW Transactions arose and only after litigation commenced. Such testimony lacks the reliability or credibility required by Rule 807. *Magnoni v. Smith & Laquercia, LLP*, 701 F. Supp. 2d 497, 499 (S.D.N.Y. 2010) ("self-interest creates such a powerful incentive to shade the truth that it is unusual for an interested witness to be totally candid") (internal quotations and citation omitted). Where a party's own self-serving oral testimony conflicts with ample documentary evidence—as it does here—it should be afforded even less weight. *Estate of Sheppard ex rel. Sheppard v. Sec'y of Dep't of Health & Human Servs.*, No. 04-112V, 2007 WL 5160383, at *10 (Ct. Cl. Aug. 7, 2007); *see United States v. U.S. Gypsum Co.*, 333 U.S. 364, 396 (1948) ("Where such testimony is in conflict with contemporaneous documents we can give it little weight . . . ."); *see also BanxCorp v. Costco Wholesale Corp.*, 978 F. Supp. 2d 280, 299 (S.D.N.Y. 2013) ("[W]here the uncontroverted record clearly supports a particular finding, then plaintiff's own self-serving declaration to the contrary is insufficient, under the circumstances, to raise a triable issue of fact" (citation, alterations, and internal quotation marks omitted)).

Further, the Blums' testimony concerning their parents' BLMIS accounts is not more probative than other evidence that they could obtain through reasonable efforts. General statements about their father's financial plans are not more probative than his BLMIS account

16

statements, letters requesting PW checks, and other documentation. Due to the lack of trustworthiness and probative value, allowing the Blums to admit their speculation based on hearsay will not best serve the purposes of the Federal Rules of Evidence and the interests of justice.

## **CONCLUSION**

For all of the foregoing reasons, the Trustee respectfully requests that the Court grant this Motion, strike inadmissible portions of the Blums' deposition testimony, and enter an order prohibiting the Blums from providing live testimony concerning their parents' BLMIS accounts, finances, and the PW Transactions that occurred in their parents' BLMIS accounts.

Dated: December 9, 2016                 Respectfully submitted,
      New York, New York

                                       BAKER & HOSTETLER LLP

                               By: */s/ David J. Sheehan*
                                       **Baker & Hostetler LLP**
                                       45 Rockefeller Plaza
                                       New York, New York 10111
                                       Telephone: (212) 589-4200
                                       Facsimile: (212) 589-4201
                                       David J. Sheehan
                                       Email: dsheehan@bakerlaw.com
                                       Seanna R. Brown
                                       Email: sbrown@bakerlaw.com
                                       Amy Vanderwal
                                       Email: avanderwal@bakerlaw.com

                                       *Attorneys for Irving H. Picard, Trustee for the*
                                       *substantively consolidated SIPA Liquidation of*
                                       *Bernard L. Madoff Investment Securities LLC*
                                       *and the Estate of Bernard L. Madoff*