**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan

*Attorneys for Irving H. Picard, Trustee for the
Substantively Consolidated SIPA Liquidation of
Bernard L. Madoff Investment Securities LLC
and Bernard L. Madoff*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, <br><br> Plaintiff-Applicant, <br><br> v. <br><br> BERNARD L. MADOFF INVESTMENT SECURITIES LLC, <br><br> Defendant. | Adv. Pro. No. 08-01789 (SMB) <br><br> SIPA Liquidation <br><br> (Substantively Consolidated) |
| In re: <br><br> BERNARD L. MADOFF, <br><br> Debtor. | |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF TRUSTEE'S
MOTION _IN LIMINE_ NUMBER 4 TO EXCLUDE THE TRUSTEE AS A WITNESS**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................1

ARGUMENT ........................................................................................................................3

    I.    Misstatements and Speculation about the Trustee ...................................................3

    II.    Participating Claimants Intend to Call the Trustee for Purposes of Harassment........................................................................................................5

    III.    The Trustee's Testimony Would Be Irrelevant, Protected by Privilege and Work Product Doctrine, and Cumulative..................................................................9

        A.    The Trustee's Testimony is Not Relevant to the Topics Identified by the Participating Claimants ..........................................................................9

        B.    The Trustee's Communications With Counsel Are Privileged and Protected Work Product..........................................................................12

        C.    The Trustee's Testimony Would Be Unnecessary Because It Is Cumulative..................................................................................................13

CONCLUSION...................................................................................................................16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Bay Vista of Virginia, Inc.*,
  428 B.R. 197 (Bankr. E.D. Va. 2010) ................................................................... 11

*In re Belmonte*,
  524 B.R. 17 (Bankr. E.D.N.Y. 2015) ..................................................................... 8

*In re Bernard L. Madoff Inv. Sec. LLC*,
  654 F.3d 229 (2d Cir. 2011), *reh'g and reh'g en banc den.* (2d Cir. Nov. 08,
  2011), *cert. dismissed*, 132 S. Ct. 2712 (2012), *cert. den.*, 133 S. Ct. 24, 133 S.
  Ct. 25 (2012) ......................................................................................................... 7

*In re Bernard L. Madoff Inv. Sec. LLC*,
  779 F.3d 74 (2d Cir. 2015), *cert. denied sub nom. Peshkin v. Picard*, 136 S.
  Ct. 218 (2015) ....................................................................................................... 7

*In re Bonham*,
  251 B.R. 113 (Bankr. D. Alaska 2000) ................................................................ 11

*Condit v. Dunne*,
  225 F.R.D. 100 (S.D.N.Y. 2004) .......................................................................... 9

*Dery v. Rosenberg (In re Rosenberg)*,
  291 B.R. 704 (Bankr. E.D. Mich. 2002) ............................................................... 8

*In re Donald Sheldon & Co., Inc.*,
  153 B.R. 661 (Bankr. S.D.N.Y. 1993) .................................................................. 6

*Francois v. Mazer*,
  No. 09- cv-3275, 2012 WL 12549430 (S.D.N.Y. May 14, 2012) ......................... 13

*Galaxy Assocs. v. Sheffield Corp. (In re Galaxy Assocs.)*,
  118 B.R. 8 (Bankr. D. Conn. 1990) ...................................................................... 7

*George v. Celotex Corp.*,
  914 F.2d 26 (2d Cir.1990)..................................................................................... 9

*Goldberg v. Nat'l Life Ins. Co. of Vermont*,
  774 F.2d 559 (2d Cir. 1985)................................................................................. 15

*Highland Capital Mgmt., L.P. v. Schneider*,
  551 F. Supp. 2d 173 (S.D.N.Y. 2008) ................................................................. 14

ii

*Int'l Minerals & Resources, S.A. v. Pappas*,
96 F.3d 586 (2d Cir. 1996)....................................................................................8

*In re Kantor*,
No. 84-30402, 1986 WL 28904 (Bankr. S.D.N.Y. Oct. 1, 1986) ...........................11

*Kusch v. Mishkin (In re Adler, Coleman Clearing Corp.)*,
Nos. 95-08203, 95-924A, 1998 WL 551972 (Bankr. S.D.N.Y. Aug. 24, 1998) ......7

*Litton Systems, Inc. v. AT&T Co.*,
700 F.2d 785 (2d Cir. 1983)................................................................................15

*Malarkey v. Texaco, Inc.*,
983 F.2d 1204 (2d Cir. 1993)..............................................................................10

*Mishkin v. Ensminger (In re Adler, Coleman Clearing Corp.)*,
No. 95-08203, 1998 WL 160039 (Bankr. S.D.N.Y. Apr. 3, 1998).........................11

*In re New Times Sec. Servs., Inc.*,
463 F.3d 125 (2d Cir. 2006)................................................................................10

*In re NWFX, Inc.*,
267 B.R. 118 (Bankr. W.D. Ark. 2001) ...............................................................12

*In re Petters Co., Inc.*,
506 B.R. 784 (Bankr. D. Minn. 2013) ..................................................................11

*In re Primeline Sec. Corp.*,
295 F.3d 1100 (10th Cir. 2002) ..........................................................................10

*In re Quigley Co., Inc.*,
2009 WL 9034027 ..............................................................................................12

*In re Quigley Co., Inc.*,
500 B.R. 347 (Bankr. S.D.N.Y. 2013) ..................................................................11

*R.B. Ventures v. Shane*,
91-cv-5678, 2000 WL 520615 (S.D.N.Y. May 1, 2000) ..........................................8

*Redington v. United Mizrahi Bank, Ltd. (In re Weis Sec., Inc.)*,
416 F. Supp. 861 (S.D.N.Y. 1976) .........................................................................6

*In re Residential Capital, LLC*,
536 B.R. 132 (Bankr. S.D.N.Y. 2015)...................................................................10

*In re Sieber*,
489 B.R. 531 (Bankr. D. Md. 2013) .....................................................................11

iii

*Sprint/United Mgt. Co. v. Mendelsohn*,
    552 U.S. 379 (2008)..........................................................................................10, 13

*In re Truong*,
    Nos. 07-12194, 07-10696, 2008 WL 1776227 (Bankr. S.D.N.Y. Apr. 14,
    2008) .............................................................................................................9

*United States v. Abel*,
    469 U. S. 45 (1984).........................................................................................13

*United States v. Clark*,
    613 F.2d 391, 407 (2d. Cir. 1979)....................................................................8

*United States v. Herron*,
    No. 10-cr-0615, 2014 WL 1894313 (E.D.N.Y. May 12, 2014)........................13

*United States v. Sellers*,
    566 F.2d 884, 886 (4th Cir. 1977) ...................................................................15

*Whiteway v. FedEx Kinkos Office & Print Servs.*,
    No. 05-2320, 2007 WL 1456046 (N.D. Cal. May 17, 2007)............................15

*Williams v. Cnty. of Orange*,
    03 CIV. 5182, 2005 WL 6001507 (S.D.N.Y. Dec. 13, 2005) ..........................14

*Yeager v. United States*,
    557 U.S. 110 (2009)........................................................................................8, 10

**Statutes**

11 U.S.C. § 101 *et seq.*..........................................................................................1

15 U.S.C. § 78aaa *et seq.* .......................................................................................1

15 U.S.C. § 78fff-1(d)(3) .......................................................................................3

15 U.S.C. § 78fff-2(c)(3) .......................................................................................7

15 U.S.C. § 78hhh (1978) ......................................................................................6

**Rules**

Fed. R. Bankr. P. 9017 ...........................................................................................1

Fed. R. Civ. P. 16 ...................................................................................................9

Fed. R. Evid. 401 ........................................................................................... *passim*

Fed. R. Evid. 402 ...................................................................................................1

iv

Fed. R. Evid. 403 ............................................................................................................... *passim*

Fed. R. Evid. 611 ....................................................................................................................7, 9

Fed. R. Evid. 611(a) ..................................................................................................................8

**Other Authorities**

17 C.F.R. § 300.503 .................................................................................................................7

*Federal Practice & Procedure*, Wright & Miller .........................................................................15

Irving H. Picard, as trustee ("Trustee") for the substantively consolidated liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15 U.S.C. § 78aaa *et seq.* ("SIPA"),[1] and the chapter 7 estate of Bernard L. Madoff ("Madoff"), respectfully submits this reply memorandum of law in further support of the Trustee's memorandum of law in support of his motion *in limine* for entry of an order pursuant to, *inter alia*, section 105(a) of the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq.*, and Rules 401, 402, and 403 of the Federal Rules of Evidence,[2] excluding the Trustee as a witness (the "Motion")[3] at the evidentiary hearing on the Trustee's treatment of profit withdrawal transactions ("PW Transactions").

## PRELIMINARY STATEMENT

Participating Claimants[4] seek to call the Trustee as a witness to distract the Court from the narrow issue to be determined at the evidentiary hearing—the meaning and treatment of PW Transactions based on BLMIS books and records. The Trustee's experts, Ms. Lisa Collura and Mr. Matthew Greenblatt ("Experts"), completed extensive analyses of BLIMIS books and records, reviewed the voluminous documents and information relevant to PW Transactions, reconciled PW Transactions with all available bank records, opined that the PW Transactions are debits to the respective accounts based on their analyses, and calculated the net equity of the Participating Claimants' accounts based on that classification. Based on this information, the

---

[1] Subsequent references to sections of the Securities Investor Protection Act shall be denoted as "SIPA § __."

[2] The Federal Rules of Evidence are made applicable here through Federal Rule of Bankruptcy Procedure 9017.

[3] Memorandum of Law in Support of Trustee's Motion *in Limine* Number 4 to Exclude the Trustee as a Witness (Oct. 28, 2016), ECF No. 14357.

[4] Mr. Blecker and the other Participating Claimants represented by Chaitman LLP filed the sole opposition to the Motion. The Blums did not file a separate opposition and did not join in Mr. Blecker's opposition. However, the Blums reserved the right in their pre-trial disclosures to call any witness identified by another party, inclusive of the Trustee. To the extent that this reservation could be construed as the Blums' identification of the Trustee as a witness, the Motion and this Court's ruling thereon should be equally applicable to them.

Trustee—through counsel—has consistently taken the position that the PW Transactions are debits.

In order to argue that the Trustee's testimony would be relevant, Participating Claimants speculate that the Trustee acted "for a grossly improper reason" in denying the Participating Claimants' customer claims as to PW Transactions. Participating Claimants further ask the Court to base its decision on unfounded suppositions and a baseless hypothetical ("[l]et us assume," "[l]et us further assume," "[i]n other words, let us assume," and "if those are the facts")[5] that the Trustee denied their claims without a factual basis in order to enrich the Securities Investor Protection Corporation ("SIPC"), notwithstanding the extensive analyses and opinions of the Trustee's Experts. The Participating Claimants finally argue that they should not be compelled to disclose their trial strategy, but the Court should nevertheless require the Trustee to testify on irrelevant topics based on their unfounded accusations of improper conduct. Speculation and fiction, however, are not grounds to permit examination of the Trustee at an evidentiary hearing where the Trustee's testimony is not relevant to the meaning of PW Transactions or to the Court's review of the Trustee's determination of the customer claims at issue. Further, such testimony would be protected by attorney-client privilege or the work product doctrine, and would be duplicative of the Experts' testimony.

Indeed, Ms. Collura's and Mr. Greenblatt's testimony will offer this Court the most efficient, relevant, and probative evidence of the Trustee's claims determinations. Yet, the Participating Claimants continue to seek the Trustee's testimony at the evidentiary hearing to pursue lines of questioning on the Trustee's motivations, alleged cost-savings to SIPC, and

---

[5] Participating Claimants' Memorandum of Law in Opposition to the Trustee's Motion *in Limine* Number 4 to Bar the Participating Claimants from Calling the Trustee as a Witness ("Opposition") at 1–2 (Nov. 18, 2016), ECF No. 14476.

purported improper conduct.  These topics, and the questions related thereto, are irrelevant to the meaning of the PW Transactions.  But, as set forth in the Trustee's Motion, these topics are the very same topics upon which the Participating Claimants previously attacked and maligned the Trustee.[6]  This harassment should not be countenanced, particularly where it bears no import on the narrow issue before this Court.  Accordingly, the Trustee respectfully requests an order *in limine* excluding him as a witness at the evidentiary hearing on the PW Transactions.

## ARGUMENT

### I.    Misstatements and Speculation about the Trustee

In their Opposition, Participating Claimants consistently misstate the law and facts in an attempt to show the Trustee's testimony is somehow relevant or probative at the evidentiary hearing.  Each of these misstatements is belied by the evidence in this proceeding and, in any event, does not support their request to harass the Trustee on issues not relevant to PW Transactions.

Participating Claimants attempt to connect the Trustee's general duty to report to the Court on the status of the liquidation to the purported deficiencies in his Experts' reports, arguing that the Trustee failed to properly report to the Court on the fraud because Ms. Collura's report did not identify any documentations relating to Mr. Blecker's PW Transactions.[7]  This argument not only misconstrues the Trustee's reporting requirements, but misrepresents the  Experts' reports.  Section 78fff-1(d)(3) of SIPA requires a SIPA trustee, like a chapter 7 or 11 trustee, to investigate the cause of the demise of the debtor and identify to the court any causes of action available to the estate, which (i) has no relevance to the PW Transactions before this Court, and

---

[6] Motion at 10–14.

[7] Opposition at 3–4.

(ii) provides no basis to obtain the Trustee's testimony. And, while Ms. Collura's report states that there was no third-party documentation relating to Mr. Blecker's PW Transactions, the Participating Claimants fail to acknowledge the voluminous documentation and evidence of the PW Transactions in BLMIS books and records which support the treatment of such transactions as debits.[8] In any event, any purported inadequacies in the Experts' disclosures are within the specific knowledge of the Experts and not the Trustee. If the Participating Claimants believed such purported inadequacies existed, they had ample opportunity to depose the Experts on those very issues but strategically decided not to. Now, they will have wait to cross-examine the Experts at the evidentiary hearing.

Participating Claimants also incorrectly suggest that the Experts were hired in 2014[9] and therefore cannot offer opinions as to claims determinations made in 2009. As indicated in their reports, shortly after Madoff's arrest in December 2008, both Experts were engaged as part of FTI Consulting, Inc.'s team to analyze, among other things, the financial affairs of BLMIS and to assist the Trustee with the liquidation of BLMIS. Through this engagement, they were tasked with creating chronological listings of all cash and principal transactions, including cash deposit and withdrawal transactions, for every BLMIS customer account and reconciling these transactions to available bank records. These chronological listings provided the foundation to calculate every BLMIS account holder's principal balance on a daily basis for all dates during

---

[8] *See, e.g.*, Principal Balance Calculation Report dated November 15, 2012, Decl. of Matthew B. Greenblatt Ex. 1 (July 14, 2015), ECF No. 10663-1 ("Greenblatt Principal Balance Rpt."); Analysis of the Profit Withdrawal Transactions, Decl. of Matthew B. Greenblatt Ex. 2 (July 14, 2015), ECF No. 10663-2; Supplemental Analysis of the Profit Withdrawal Transactions dated December 17, 2015, Second Decl. of Matthew B. Greenblatt Ex. 1 (Aug. 12, 2016), ECF No. 13869-1; Second Supplemental Analysis of the Profit Withdrawal Transactions dated June 3, 2016, Second Decl. of Matthew B. Greenblatt Ex. 2 (Aug. 12, 2016), ECF No. 13869-7; Proof of Transfers to Certain BLMIS Customers with "Profit Withdrawals," Decl. of Lisa M. Collura Ex. 1 (July 14, 2015), ECF No. 10664-1; Proof of Transfers to Certain BLMIS Customers with "Profit Withdrawals" dated December 17, 2015, Decl. of Lisa M. Collura Ex. 1 (Aug. 12, 2016), ECF No. 13868-2.

[9] Opposition at 5.

the period from April 1, 1981 through December 11, 2008.[10]  Accordingly, the Experts possess

sufficient knowledge to offer opinions on the claims of the Participating Claimants.

## II.    Participating Claimants Intend to Call the Trustee for Purposes of Harassment

As candidly set forth in their Opposition, Participating Claimants seek the Trustee's

testimony for the sole purpose of harassing him about his fees and his purportedly subjective

determination of their claims in order to save money for SIPC.[11]  Participating Claimants state

that they "have no intent to harass the Trustee or to seek testimony relating to the Trustee's

compensation."[12]  Yet, their assertion contradicts the arguments in the remainder of the

Opposition; most notably, they posit: "given the Trustee's fiduciary duties, given his

unprecedented compensation, and given the vast devastation he has caused to innocent victims of

Madoff's fraud under the guise of functioning as a trustee under SIPA, there is a compelling

need for his testimony."[13]

The Trustee's Motion sets forth at length the history of the Participating Claimants'

counsel's meritless arguments over the last seven years regarding the Trustee's compensation in

this SIPA liquidation proceeding.  Counsel has been unsuccessful at every turn, and this attempt

should be no different.[14]  Participating Claimants' counsel's continued focus on the Trustee's

compensation—even though fees in this proceeding are paid by SIPC and not out of the fund of

---

[10] *See* Greenblatt Principal Balance Rpt. at 1–2.

[11]  Compare Opposition at 8 ("Participating Claimants have no intent to harass the Trustee . . . . We simply seek the truth . . . .") to Opposition at 1–2 ("[L]et us assume that the Trustee denied the SIPC claims of the Participating Claimants for a grossly improper reason . . . . Surely, if those are the facts, the record should encompass them.").

[12] Opposition at 8.

[13] Opposition at 5.

[14] Motion at 10–14.

customer property—confirms that harassment is the sole purpose of this repeated argument.[15] The Court would learn no probative information from examination of the Trustee regarding his fees and compensation. These topics are not relevant in any respect to the narrow issue before this Court—the proper treatment of PW Transactions based on BLMIS books and records—and should be excluded.

Lacking a legitimate legal basis, the Participating Claimants further seek to harass the Trustee by invoking the Trustee's fiduciary duty and arguing this duty mandates that he testify. But, the Trustee's fiduciary duty does not require him to testify to matters regarding which he has no non-privileged, first-hand knowledge. Nor does the duty invite an investigation into the Trustee himself by the Participating Claimants in a proceeding intended to determine the legal question presented by the PW Transactions. *Cf. In re Donald Sheldon & Co., Inc.*, 153 B.R. 661, 668 (Bankr. S.D.N.Y. 1993) (holding that SIPC has the responsibility to oversee the Trustee).

The Participating Claimants also infer that the Trustee's fiduciary duty to all customers to be "honest and fair" dictates a different result for the Participating Claimants—a determination that the PW Transactions in their accounts were not debits despite cash movements to the contrary.[16] This simplistic view of fiduciary duties misses the point and nevertheless does not render the Trustee's testimony relevant in this evidentiary proceeding. Customer claim determinations impact the BLMIS estate as a whole—to the extent that the net equity of some

---

[15] In 1978, Congress mandated that SIPC pay administrative expenses in no asset cases. *See* Securities Investor Protection Act, ch. 2b-1, 92 Stat. 265 (1978) (codified as amended at 15 U.S.C. § 78fff-3 (1978)); Securities Investor Protection Act Amendments: Hearing on H.R. 8331 Before the Subcomm. on Sec. of the S. Comm. on Banking, Hous., and Urban Affairs, 95th Cong. 48–49 (1978) ("Mr. Focht: Mr. Chairman, that authority which would be granted to SIPC would be limited to those cases where there was no reasonable expectation that there would be sufficient assets in the general estate from which to pay any reasonable allowances which were granted by the court."). This amendment to SIPC was motivated in part by the *Weis Securities* case, which allocated a portion of administrative expenses to customers through the "single and separate fund." *Redington v. United Mizrahi Bank, Ltd. (In re Weis Sec., Inc.)*, 416 F. Supp. 861, 864 (S.D.N.Y. 1976).

[16] Opposition at 1, 3–5.

customers may increase, the net equity of another customer may decrease. *See In re Bernard L.*

*Madoff Inv. Sec. LLC,* 654 F.3d 229, 235, 240 (2d Cir. 2011), *reh'g and reh'g en banc den.*

(2d Cir. Nov. 08, 2011), *cert. dismissed*, 132 S. Ct. 2712 (2012), *cert. den.*, 133 S. Ct. 24, 133 S.

Ct. 25 (2012) (the "*Net Equity Decision*"). This increase or decrease in one customer's net equity

and not another does not render a particular determination a breach of fiduciary duty. *See Kusch*

*v. Mishkin (In re Adler, Coleman Clearing Corp.)*, Nos. 95-08203, 95-924A, 1998 WL 551972,

at *17 (Bankr. S.D.N.Y. Aug. 24, 1998) ("[B]y the express terms of the statute and applicable

law and rules, the trustee's duty to the SIPA estate as a whole clearly prevails over the interests

of any single customer.") (citing 15 U.S.C. § 78fff-2(c)(3) and 17 C.F.R. § 300.503). Rather,

like many of the other decisions in the case, such as the *Net Equity Decision* or the decision on

time-based damages, determinations are made to benefit BLMIS customers as a whole. *See Net*

*Equity Decision* at 235, 240; *In re Bernard L. Madoff Inv. Sec. LLC*, 779 F.3d 74, 81 (2d Cir.

2015), *cert. denied sub nom. Peshkin v. Picard*, 136 S. Ct. 218 (2015).

The Participating Claimants argue that the proper method to avoid harassment is not to

exclude the Trustee as a witness but instead for the Court to control the mode and manner of

questioning the Trustee under Rule 611.[17] This assertion is incorrect. Rule 611, which permits a

court to limit testimony that would harass a witness, works in conjunction with Rules 401 and

403, which permit the Court to exclude testimony that lacks probative value, is a waste of the

court's time, is cumulative of other testimony to be offered, or intended to elicit testimony

outside the scope of the proceedings. *Galaxy Assocs. v. Sheffield Corp. (In re Galaxy Assocs.),*

118 B.R. 8, 10 (Bankr. D. Conn. 1990) ("Rule 403 recognizes the court's power to exclude

evidence which consumes more time than its probative value justifies and Rule 611(a) mandates

---

[17] Opposition at 8.

that the court control the presentation of evidence in a way that avoids the needless consumption of time.") (internal quotation marks omitted); *see also United States v. Clark*, 613 F.2d 391, 407 (2d. Cir. 1979) (upholding the trial court's exclusion of a question during cross-examination because Rule 611(a) permits the trial court discretion to "make the interrogation and presentation effective for the ascertainment of the truth and to avoid needless consumption of time").

Indeed, if the only potential testimony of a witness is either irrelevant, cumulative, or harassing, and therefore lacks any other legitimate purpose, a court may exclude the testimony altogether. *See, e.g.*, *Yeager v. United States*, 557 U.S. 110, 121–22 (2009) (explaining that evidence is not relevant if it fails to make a fact more or less probable); *Int'l Minerals & Resources, S.A. v. Pappas*, 96 F.3d 586, 596 (2d Cir. 1996) ("A district judge has discretion to exclude evidence if it is cumulative of evidence already in the record."); *cf. R.B. Ventures v. Shane,* 91-cv-5678, 2000 WL 520615, at *3 (S.D.N.Y. May 1, 2000) (excluding testimony that provides "no legitimate assistance"). As discussed below, the Trustee's testimony here would be exactly that—not relevant to the meaning of PW Transactions and the claim determinations and cumulative of his Experts, who have firsthand knowledge and are better suited to testify as to their extensive analyses. Under the circumstances, the Trustee should be protected from harassment by the Participating Claimants. *See In re Belmonte*, 524 B.R. 17, 31 (Bankr. E.D.N.Y. 2015) (holding that a motion for removal of the trustee constituted harassment and justified sanctions against the moving party); *Dery v. Rosenberg (In re Rosenberg)*, 291 B.R. 704, 709 (Bankr. E.D. Mich. 2002) (requiring a "defendant [to] first pursue other avenues of discovery before resorting to deposition" of a bankruptcy trustee because "trustees should be protected from undue harassment"); *see also In re Truong*, Nos. 07-12194, 07-10696, 2008 WL

1776227, at *4 (Bankr. S.D.N.Y. Apr. 14, 2008) (recounting the history of vexatious litigation

against the trustee in that case).

### III.    The Trustee's Testimony Would Be Irrelevant, Protected by Privilege and Work Product Doctrine, and Cumulative

The Participating Claimants state that they "intend to call the Trustee to testify on at least

the following issues: (a) his factual basis in 2009 for denying the claims of the Participating

Claimants; (b) the factual investigation he made as to the appropriate treatment of PW entries;

and (c) whether the Trustee's determinations are justified."[18]   The Trustee's testimony on these

topics is irrelevant, protected by attorney-client privilege, and/or cumulative.

### A.    The Trustee's Testimony is Not Relevant to the Topics Identified by the Participating Claimants

The purpose of the Federal Rules of Evidence and pre-trial disclosures is to permit the

fact finder, the Court here, to consider reliable and relevant evidence and to have evidence

presented in an orderly manner.  *See* Fed. R. Evid. 401, 403, 611; Fed. R. Civ. P. 16.  Trial is not

a mechanism to inquire as to specious theories, motives, or conspiracies.  Nor should the Court

permit harassment of a witness on issues that are outside the scope of his personal knowledge,

privileged or otherwise protected, or outside the scope of the issues to be determined in this

proceeding.

Relevance, while a broad concept in discovery, is not unlimited. *Condit v. Dunne*, 225

F.R.D. 100, 105 (S.D.N.Y. 2004).  The assessment of the relevance of evidence for the purpose

of its admission or exclusion at trial is committed to the sound discretion of the court. *See, e.g.*,

*George v. Celotex Corp.*, 914 F.2d 26, 28 (2d Cir.1990).  Appeals courts have upheld trial

courts' determinations to exclude evidence based on relevance.  *See Sprint/United Mgt. Co. v.*

---

[18] Opposition at 3.

*Mendelsohn*, 552 U.S. 379, 387 (2008) (finding that the Second Circuit inappropriately conducted its own balancing test to determine whether evidence was relevant, and stating that the district court should have made that determination); *Yeager*, 557 U.S. at 121–22 (finding that a hung jury count was not relevant to the issue preclusion analysis under a Rule 401 standard because it failed to make any fact more or less probable); *Malarkey v. Texaco, Inc.*, 983 F.2d 1204, 1211 (2d Cir. 1993) (holding that the trial court did not err by excluding background evidence).

The Trustee's reasoning is not relevant to the Court's consideration of whether the claims determinations were justified. A claimant is required to meet his burden of proof that he is a customer as to each transaction and as to each deposit of cash. *See, e.g.*, *In re New Times Sec. Servs., Inc.*, 463 F.3d 125, 130 (2d Cir. 2006) ("[C]ustomer status in the course of some dealings with a broker will not confer that status upon other dealings, no matter how intimately related, unless those other dealings also fall within the ambit of the statute." (internal citations omitted)). On rebuttal, a trustee can present evidence as to how the claim was calculated. To the extent that a court must ascertain whether a trustee's determination was reasonable, a trustee's state of mind or subjective reasoning is not relevant as an objective reasonableness standard—consistent with other reasonableness standards applied in bankruptcy—would be applied. *See, e.g.*, *id.* at 129 (upholding denial of claims against a debtor who conducted a Ponzi scheme without looking to the trustee's state of mind); *In re Primeline Sec. Corp.*, 295 F.3d 1100, 1106 (10th Cir. 2002) (analyzing claim determinations against a debtor who conducted a Ponzi scheme without looking to the trustee's state of mind); *cf. In re Residential Capital, LLC,* 536 B.R. 132, 146 (Bankr. S.D.N.Y. 2015) ("Courts apply an objective test to determine whether a settlement is reasonable and prudent."); *In re Quigley Co., Inc.*, 500 B.R. 347, 357 (Bankr. S.D.N.Y. 2013) (applying an

objective reasonableness standard in the prudence of legal services); *In re Kantor*, No. 84-30402, 1986 WL 28904, at *11 (Bankr. S.D.N.Y. Oct. 1, 1986) (applying an objective reasonableness standard for a creditor relying on a false financial statement).

Avoiding this point, Participating Claimants point out that trustees testify routinely in bankruptcy matters.  While, as a general matter, bankruptcy trustees may testify in certain matters when their testimony is germane, trustees may also proffer their experts to testify when appropriate.  *See, e.g.*, *Mishkin v. Ensminger (In re Adler, Coleman Clearing Corp.)*, No. 95-08203, 1998 WL 160039, at *1–2, 5, 8 (Bankr. S.D.N.Y. Apr. 3, 1998) (holding that the trustee's expert, whom the trustee retained to assist him in reconstructing a SIPA debtor's books and records, was a proper expert witness); *In re Petters Co., Inc.*, 506 B.R. 784, 804–05 (Bankr. D. Minn. 2013) (finding a CPA with certification in financial forensics and experience with reconstructing books and records qualified to opine on extent of commingling of debtors' funds); *In re Bonham*, 251 B.R. 113, 132 (Bankr. D. Alaska 2000) (holding that the Trustee's witness was qualified to testify and that the Trustee had proved the existence of a Ponzi scheme).[19]  The cases cited by Participating Claimants do not advocate that the trustee is the only person who must testify.  Rather, in those cases, the trustees testified to matters on which they had personal knowledge and where their testimony was germane to the issue being decided.  *See, e.g.*, *In re Sieber*, 489 B.R. 531, 539 (Bankr. D. Md. 2013) (explaining that the trustee testified as to the assets of the estate in a discharge action); *In re Bay Vista of Virginia, Inc.*, 428 B.R. 197, 210–11 (Bankr. E.D. Va. 2010) (explaining the trustee's testimony about his involvement in the case, which was relevant to the fraudulent transfer action against the debtor's law firm); *In re NWFX,*

---

[19] *Cf.* Hr'g Tr. on Motion to Allow Customer Claim of Aaron Blecker at 32 (Feb. 24, 2016), ECF No. 12885 (THE COURT: "Can't the trustee in a SIPA case hire an expert to help them understand the books and records. You know, he's a trustee. He inherits all this stuff. And he doesn't know what it means. How does he find out what it means?").

*Inc.*, 267 B.R. 118 (Bankr. W.D. Ark. 2001) (noting that the trustee testified as to his actions in the bankruptcy to defend against an objection to his motion for a final decree).

The liquidation of BLMIS in this SIPA proceeding presents the situation where the testimony of the Trustee's forensic professionals—the Experts—are most germane to the meaning of the PW Transactions and the claims determinations.  The debtor, BLMIS, committed a massive fraud that spanned decades.  The magnitude of the fraud required the Trustee to hire professionals to assist him in analyzing the books and records of the debtor.  The Experts are the individuals who possess first hand knowledge of BLMIS books and records, their analyses, the basis for their opinions regarding PW Transactions, and the determination of net equity in the respective accounts.  The testimony of the Experts, not the Trustee, will aid this Court in its determination of the PW Transactions.

### B.    The Trustee's Communications With Counsel Are Privileged and Protected Work Product

The Trustee's understanding of the BLMIS books and records derives from the analyses conducted by the Experts, who will testify at the evidentiary hearing.[20]  Outside of the Experts' analyses, the Trustee's discussions with counsel regarding claims determinations are protected by the attorney-client privilege and work product doctrine, both of which limit or negate the amount of non-privileged information that the Trustee can testify to in Court.[21] *See, e.g., In re Quigley Co., Inc.*, 2009 WL 9034027, at *2 (holding that in a bankruptcy proceeding, questions of privilege are governed by federal common law rules of privilege).  Participating Claimants fail to address this argument.

---

[20] For more discussion about the relevance of the books and records and the Trustee's ability to rely on the books and records for cash deposits and withdrawals, see the Trustee's Memorandum of Law in Opposition to Participating Claimants' Motions *in Limine* at 38–43, (Nov. 18, 2016), ECF No. 14485.

[21] *See* Motion at 5 n.3.

Rather, in their Opposition, Participating Claimants argue that they do not need to disclose their intended questioning,[22] yet hold resolute that the Trustee's testimony will provide clarity on their areas of inquiry. Since the inception of this proceeding, the Trustee, through counsel and his Experts, has advanced the very same argument regarding PW Transactions: PW Transactions are debits to the respective BLMIS account. The Trustee can provide no unprivileged or unprotected testimony to elucidate his determination of the PW Transactions beyond that of the analyses and opinions proffered by his Experts.

### C.    The Trustee's Testimony Would Be Unnecessary Because It Is Cumulative

Participating Claimants make multiple spurious legal arguments in an attempt to discredit the cumulative effect of the Experts' and Trustee's testimony. These legal arguments lack legal merit or factual foundation. Here, because the unprivileged and unprotected testimony of the Trustee would be cumulative to that of his Experts, this Court has broad discretion to exclude testimony from the Trustee. *See Sprint/United Management Co.*, 552 U.S. at 384 ("'Assessing the probative value of [the proffered evidence], and weighing any factors counseling against admissibility is a matter first for the district court's sound judgment under Rules 401 and 403 . . . '") (*quoting United States v. Abel*, 469 U. S. 45, 54 (1984)).

Participating Claimants, without citation, contend that a court can only exclude evidence as cumulative if cumulative evidence has already been admitted.[23] This assertion belies the

---

[22] Participating Claimants suggest that the Trustee's motion *in limine* is merely a vehicle to secure a pre-trial proffer of evidence. Opposition at 6. While it is true that the Participating Claimants need not make a full proffer prior to the evidentiary hearing, they must provide sufficient information in order for the Court to make its ruling on the Trustee's motion. *See United States v. Herron*, No. 10-cr-0615, 2014 WL 1894313, at *4 (E.D.N.Y. May 12, 2014) ("[T]he court also concludes that the Government has provided a sufficient proffer of the evidence it intends to present at trial to enable the court to render decision. Defendant does not cite any authority that requires the Government to provide a full proffer of its intended evidence for the purpose of the instant motion in limine."); *see also Francois v. Mazer*, No. 09-cv-3275, 2012 WL 12549430, at *1 (S.D.N.Y. May 14, 2012).

[23] Opposition at 7.

13

purpose of a motion *in limine*, which is intended to allow a court to rule on evidentiary issues before trial. Courts routinely exclude evidence in advance of trial that is cumulative of evidence that will be proffered. *Highland Capital Mgmt., L.P. v. Schneider,* 551 F. Supp. 2d 173, 184 (S.D.N.Y. 2008) (prohibiting in advance of trial the testimony of seven witnesses providing the same testimony as needlessly cumulative and a waste of the court's time based on the proffer of the experts' testimony); *Williams v. Cnty. of Orange*, 03 CIV. 5182, 2005 WL 6001507, at *6 (S.D.N.Y. Dec. 13, 2005) (barring trial testimony designed to buttress testimony of principal expert witness in advance of trial because testimony was cumulative under Fed. R. Evid. 403 of the proffered testimony of other witnesses).

Here, the Experts' proffered testimony will cover the topics that the Participating Claimants have raised: the basis in 2009 for denying the claims of the Participating Claimants and the analyses made as to the appropriate treatment of PW Transactions. The issue of whether the Trustee's determinations are correct is a question for this Court to review based on an objective standard, without consideration of the Trustee's intent or state of mind. *See supra* Section III.A. The Participating Claimants pursue the Trustee's examination at trial to posit the same line of questioning—the very definition of cumulative evidence under Rule 403.

Similarly unpersuasive, Participating Claimants suggest that evidence can only be cumulative if it is offered by the same party.[24] Again, the Participating Claimants offer no support for their proffer of law. Wright & Miller, *Federal Practice & Procedure*, cited by the Participating Claimants, does not state that courts prohibit the exclusion of cumulative evidence when it is offered by adverse parties and offers citation to cases permitting exclusion of evidence. *See* § 5223 n.36 (2d ed. Supp. 2016) (*citing Litton Systems, Inc. v. AT&T Co.*, 700

---

[24] *Id.* at 5–6.

F.2d 785, 817 (2d Cir. 1983) (upholding trial court's exclusion of evidence)).  None of the other cases cited by Participating Claimants stand for the proposition that Rule 403 cannot be used to exclude cumulative evidence if that evidence is offered by an adverse party.  *See Whiteway v. FedEx Kinkos Office & Print Servs.*, No. 05-2320, 2007 WL 1456046, at *3 (N.D. Cal. May 17, 2007) (refusing to exclude testimony of proposed class members in putative class action on job related tasks in order to establish employment exemption); *Goldberg v. Nat'l Life Ins. Co. of Vermont*, 774 F.2d 559, 565 (2d Cir. 1985) (affirming trial court ruling under Rule 403 to exclude testimony because of undue delay); *United States v. Sellers*, 566 F.2d 884, 886 (4th Cir. 1977) (holding that trial court, when allowing one expert to testify, should have permitted opposing expert testimony on surveillance photographs; no comment on cumulative testimony).

The Trustee's motion does not seek to deny the Participating Claimants the opportunity to prove their case on the meaning of the PW Transactions.[25] The Trustee intends to offer the testimony of the Experts on the very topics the Participating Claimants contend are at issue: the basis for deterimining the claims of the Participating Claimants and the analyses regarding the treatment of PW Transactions.  Participating Claimants are free to cross-examine the Experts, who have firsthand knowledge of the books and records of BLMIS, on their analyses and their opinions on PW Transactions and the determinations of the Participating Claimants' customer claims.

---

[25] *Id.* at 8.

15

## CONCLUSION

The Trustee respectfully requests that the Court enter an Order *in limine* excluding the

Trustee as a witness at the evidentiary hearing, and grant such other and further relief to the

Trustee as the Court deems proper.

Dated:  December 9, 2016
      New York, New York

Respectfully submitted,

 /s/ David J. Sheehan
David J. Sheehan
**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, New York  10111
Tel: (212) 589-4200
Fax: (212) 589-4201
Email: dsheehan@bakerlaw.com
Seanna R. Brown
Email:  sbrown@bakerlaw.com
Amy E. Vanderwal
Email: avanderwal@bakerlaw.com

*Attorneys for Irving H. Picard, Trustee*
*for the Substantively Consolidated SIPA*
*Liquidation of Bernard L. Madoff Investment*
*Securities LLC and the Estate of Bernard L.*
*Madoff*