**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

SECURITIES INVESTOR PROTECTION

CORPORATION,

       Plaintiff-Applicant,

    v.

BERNARD L. MADOFF INVESTMENT
SECURITIES LLC,

       Defendant.

In re:

BERNARD L. MADOFF,

       Debtor.

Adv. Pro. No. 08-1789 (SMB)

SIPA LIQUIDATION

(Substantively Consolidated)

---

**PARTICIPATING CLAIMANTS' REPLY MEMORANDUM OF LAW IN FURTHER
SUPPORT OF MOTION TO STRIKE THE PROPOSED EXPERT TESTIMONY OF
LISA M. COLLURA AND MATTHEW B. GREENBLATT**

               **CHAITMAN LLP**
               465 Park Avenue
               New York, New York 10022
               Phone and Fax: (888) 759-1114
               Helen Davis Chaitman
               Gregory M. Dexter
               hchaitman@chaitmanllp.com
               gdexter@chaitmanllp.com

               *Attorneys for Participating Claimants*

{00026457 1 }

# TABLE OF CONTENTS

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................... 1

STATEMENT OF FACTS ........................................................................................................ 2

PROCEDURAL HISTORY OF THE PROFIT WITHDRAWAL LITIGATION ..................... 2

ARGUMENT .............................................................................................................................. 3

    I.    The Trustee admits that the Expert Reports cannot establish that a particular claimant ever received a PW check ........................................................ 3

    II.   The Expert Reports are inadmissible to establish ultimate issues of fact ........................ 6

    III.  The Trustee does not even attempt to address severe deficiencies with the Expert Reports ................................................................................................. 7

CONCLUSION ........................................................................................................................... 8

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Campbell v. Bd. of Ed.*,
   310 F. Supp. 94 (E.D.N.Y. 1970) ...................................................................................7

*Ege v. Yukins*,
   380 F. Supp.2d 852 (E.D. Mich. 2005), *aff'd in part, rev'd in part*, 485 F. 3d
   364 (6th Cir. 2007) ..........................................................................................................6

*Engelmayer Inter-Account Transfer Decision*, 2016 WL 183492 (S.D.N.Y. Jan.
   14, 2016) .........................................................................................................................5

*Hollander v. American Cyanamid Co.*,
   172 F.3d 192 (2d Cir. 1999), *abrogated on other grounds by Schnabel v.
   Abramson*, 232 F.3d 83 (2d Cir. 2000) ..........................................................................6

*LinkCo, Inc. v. Fujitsu, Ltd.*,
   2002 WL 1585551 (S.D.N.Y. July 16, 2002) ................................................................7

*Net Equity Decision*, 654 F.3d 229 (2d Cir. 2011) ..................................................................4

*People v. Collins*,
   438 P.2d 33 (Cal. 1968) ..................................................................................................6

*People v. Risley*,
   214 N.Y. 75 (1915) .........................................................................................................6

*Presser v. Key Food Stores Co-op, Inc.*,
   24 IER Cases 1596, 2006 WL 2086346 (E.D.N.Y. July 25, 2006) *aff'd* 316
   Fed. Appx. 9 (2d Cir. 2009) ............................................................................................6

*Time-Based Damages Decision*, 779 F.3d 74 (2d Cir. 2015) .................................................5

*United States v. Shonubi*,
   103 F.3d 1085 (2d Cir. 1997) .........................................................................................6

**Statutes**

15 U.S.C. §§ 78fff-2(b) ............................................................................................................4

Participating Claimants, as set forth on Exhibit A to the notice of motion to strike the Expert Reports of Lisa M. Collura and Matthew B. Greenblatt (the "Motion") (ECF No. 14364), through their attorneys, Chaitman LLP, respectfully submit this reply memorandum in further support of the Motion.

**PRELIMINARY STATEMENT**

This proceeding was established after Aaron Blecker objected to the Trustee's rejection of his claim. Blecker swore that he had never taken a withdrawal from any of his Madoff accounts. The Trustee acknowledged that Blecker had not received a withdrawal after 1992; but the Trustee determined that Blecker and his wife had received PW checks in the period prior to 1992. Thus, this proceeding was designed to resolve the factual question of whether the Bleckers, and other customers who were required to opt into this proceeding, received the PW checks that the Trustee had already determined they did. Those customers who did not opt in were bound by the Trustee's previous determination and those customers have not participated in this proceeding at all.

Now that the Trustee recognizes he has no proof that the Bleckers received PW checks, he is trying to change the purpose of this proceeding. The Trustee argues that the purpose of all of the depositions that have been taken was not to resolve factual questions pertaining to the accounts held by customers who have opted into this proceeding, but instead to determine whether he is entitled to what is essentially an advisory opinion from this Court that he was correct – as a matter of law – in treating PW Entries as debits from the accounts of all customers, including both: (a) the customers who acknowledged that they received PW checks and did not participate in this proceeding; and (b) those who opted into this proceeding because they denied receiving PW checks.

The Trustee attempts to do this by marshalling evidence pertaining to the accounts of customers who are **not** before the Court. And, because he lacks evidence that Participating

{00026457 1}                                                    1

Claimants ever received the PW checks, remarkably, he seeks to introduce Expert Reports that he admits "do not offer[] opinions on the statistical probability that a particular claimant received a PW check." (ECF No. 14485, Trustee's Op. Mem. at 38). This is unprecedented and improper.

As Blecker has argued since before this proceeding commenced, and as fully demonstrated in the memoranda of law filed by the Blums, a litigant cannot rely on expert testimony to prove facts. (*See, e.g.*, ECF No. 9507). Now that that Trustee realizes that he cannot overcome this challenge, he tries to re-frame this proceeding. But the Expert Reports are inadmissible to prove that any Participating Claimant received a PW check. And that is the only issue before the Court.

## STATEMENT OF FACTS

Participating Claimants incorporate by reference the facts and legal arguments set forth in their memorandum of law in support of the Motion. (ECF Nos. 14364, 14365).

## PROCEDURAL HISTORY OF THE PROFIT WITHDRAWAL LITIGATION

During the inter-account transfer omnibus proceeding, Blecker argued that he never received PW checks and they should not reduce his net equity. (ECF No. 6719). The Trustee responded that "if there is a *factual issue*, it is the Trustee's position that it should be determined pursuant to a separate proceeding. To the extent that Blecker is objecting to the Trustee's determination regarding whether *the particular transactions in his accounts should be treated as withdrawals*, this question does not affect whether the Trustee's [inter-account] transfer *methodology* is correct." (ECF No. 6926 at 7) (Emphasis added). Thus, this proceeding was carved out of the inter-account omnibus proceeding to resolve the *factual* issue of whether Participating Claimants ever received the *particular PW checks with which the Trustee has charged their accounts.*

In February 2015, the Trustee filed his original Motion to establish this proceeding. (ECF No. 9357). There were numerous objections to the Trustee's proposal. In May 2015, the Trustee

filed his Amended Motion. (ECF No. 10017). This proceeding was established by Order of this Court and is limited to non-clawback customers who opted in. (ECF No. 10266). Thus, the Trustee's determination as to the treatment of PW entries in the accounts of those non-clawback customers who have **not** opted in is settled. This proceeding was designed to address the fact questions relating only to those customers who have opted in.

## ARGUMENT

Participating Claimants have joined the motion *in limine* filed by Norman and Joel Blum, through their attorneys (ECF No. 14361), and incorporate by reference the legal arguments submitted by the Blums in support of their motion. Participating Claimants submit this reply memorandum only to point out the disingenuous and problematic nature of the Trustee's argument regarding the purpose of this proceeding and to address the Trustee's failure in his opposition to address specific examples of deficiencies with the Expert Reports that render them inadmissible.

> I. **The Trustee admits that the Expert Reports cannot establish that a particular claimant ever received a PW check**

The Trustee concedes that the Expert Reports cannot establish that Participating Claimants ever received a PW check. In rebuttal to Participating Claimants' argument that the Trustee is attempting to establish facts through expert testimony, the Trustee admits that ***"the Experts are not offering opinions on the statistical probability that a particular claimant received a PW check or offering conclusions of law."*** (Trustee's Op. Mem. at 38). (Emphasis added). While such opinions would be inadmissible, the Trustee's concession means that the Expert Reports are also irrelevant.

If the Experts cannot tie their findings to any particular account, then their reports are worthless to prove the PW transactions in any Participating Claimant's account. Nevertheless, the Trustee adheres to the argument that "[a]n analysis of all the available books and records supports

{00026457 1}                                                                  3

*only* the conclusion that PW Transactions were withdrawals from *all* customer accounts for which they appeared on Customer Statements." (*Id.* at 40) (Emphasis added). Having failed in his essential purpose, the Trustee tries to salvage the situation by arguing that the purpose of this proceeding is to obtain a determination of whether he is entitled to treat *all* PW Entries on *all* customer statements as debits – as a matter of law.

The Trustee seems to have forgotten that he is operating under a carefully structured statute. SIPA requires that the Trustee's claim determinations be based upon the books and records of the debtor. 15 U.S.C. §§ 78fff-2(b). Where, as here, the Trustee's own Experts admit that there is not a single document suggesting that the Participating Claimants received PW checks, there is no basis for the Trustee to charge Participating Claimants with the withdrawals.

Determining whether a Participating Claimant ever received a particular PW Check is a factual question that cannot be resolved by reliance on legal "methods," despite the Trustee's argument to the contrary. (ECF No. 13876 at 50) (Emphasis added). The Trustee argues that this proposition was established because the Second Circuit held, based upon factual representations made by the Trustee which now appear to have been incorrect – *i.e.,* that the Trustee had reliable evidence of deposits and withdrawals – that the Net Investment Method was superior to alternative legal methods for determining Net Equity. (*See id.* at 51) (citing *Net Equity Decision*, 654 F.3d 229, 241 (2d Cir. 2011)).[1]

The Trustee similarly points to the *Time-Based Damages Decision*, 779 F.3d 74, 78 (2d Cir. 2015), and the Engelmayer *Inter-Account Transfer Decision*, 2016 WL 183492, at *4

---

[1] The Trustee argues that, "if not upheld as a matter of law, the *method* selected by the Trustee is entitled to deference if it is 'not clearly inferior' to other possible methods under consideration." (Trustee's Supplemental PW Brief, ECF No. 13876 at 51) (Emphasis added). Again, whether a Participating Claimant ever received a PW check is not a "method."

{00026457 1}    4

(S.D.N.Y. Jan. 14, 2016), as further examples of cases where his *methods* of determining net equity were upheld as a matter of law. (ECF No. 13876 at 50). From this proposition, the Trustee argues that he can prove factual issues – as a matter of law – because he has done so in those previous proceedings and "PW Transactions are merely a subset of transactions within this overall methodology for determining deposits and withdrawals." (ECF No. 13876 at 53). On the Trustee's theory, he can determine claims while ignoring the debtor's books and records.

There is nothing in SIPA which allows the Trustee to disallow claims based upon a desired legal theory. The Trustee is bound by evidence; not by a desire to save SIPC money.

And, of course, the Trustee knows what he is arguing is absurd. He acknowledged that, under the claims allowance process: "Because the Trustee's methodology for determining net equity is correct (whether upheld as a matter of law or discretion), the burden shifts to the Participating Claimants to show that the Trustee's net equity determination is nonetheless wrong. To do so, they must offer sufficient evidence contradicting the debtor's books and records such that the Trustee's reliance on those records is, *as to them*, improper and unreasonable." (ECF No. 13876 at 3) (Emphasis added). Here, Blecker has done so with his sworn testimony that he never received a PW check. It is now incumbent upon the Trustee to introduce "rebuttal **evidence** to counter any of the claimants['] assertions that they did not receive PW Transactions." (Trustee's Op. Mem. at 24) (Emphasis added). He is unable to do so.

If the Trustee is entitled to determine claims based, not upon evidence but rather upon a desired result, then it is unclear why he sought so desperately to have another opportunity to depose Blecker. After discovery had closed, the Trustee sought to depose Blecker a second time and even had David Sheehan come to Court to argue the motion. When the Court denied that request, Mr. Sheehan slammed his chair into the counsel table. Thereafter, the Trustee filed a motion *in limine*

currently pending before the Court seeking to bar introduction of Blecker's testimony or requesting, alternatively, a *de bene esse* deposition. (ECF Nos. 14358, 14356). If it is really the case that the purpose of this proceeding is not to resolve factual questions, then it is unclear why the Trustee continues to seek testimony from a man who is 105 years old, has waited seven years to have his claim paid, and is in fragile health. (*See* ECF Nos. 14476, 14477).

## II.     The Expert Reports are inadmissible to establish ultimate issues of fact

After inventing a new purpose for this proceeding, the Trustee argues that he is not even seeking to admit the Expert Reports to establish that each Participating Claimant actually received the PW checks. The Trustee all but concedes that the Expert Reports can do no more than offer abstract generalizations about the treatment of accounts held by customers who are *not* participants to this proceeding.

The Trustee does not refute Participating Claimants' argument that it is inappropriate for the Trustee to use the Expert Reports to establish ultimate issues of fact. *See People v. Risley*, 214 N.Y. 75, 84-87 (1915) (even if probability is 1 in 4 billion, inappropriate to use probability to establish fact); *Hollander v. American Cyanamid Co.*, 172 F.3d 192 (2d Cir. 1999), *abrogated on other grounds by Schnabel v. Abramson*, 232 F.3d 83 (2d Cir. 2000); *People v. Collins*, 438 P.2d 33, 41 (Cal. 1968) (improper to convict defendant by reliance on evidence that there was 1 in 12 million chance that defendants were innocent because the courts are distorted where there is a "trial by mathematics"); *Ege v. Yukins*, 380 F. Supp.2d 852, 876-77 (E.D. Mich. 2005) (listing cases and granting writ of habeas corpus where conviction was based upon statistical evidence), *aff'd in part, rev'd in part*, 485 F. 3d 364 (6th Cir. 2007); *United States v. Shonubi,* 103 F.3d 1085 (2d Cir. 1997) (statistical evidence cannot be used to estimate quantities); *Presser v. Key Food Stores Co-op, Inc.*, 24 IER Cases 1596, 2006 WL 2086346, at *19 (E.D.N.Y. July 25, 2006) (use of statistical evidence to prove age discrimination was "demonstrably unsound"), *aff'd* 316 Fed. Appx. 9 (2d

Cir. 2009); *Campbell v. Bd. of Ed.*, 310 F. Supp. 94, 105 (E.D.N.Y. 1970) ("computations offered at the trial were . . . not based upon any model demonstrably reflective of a real situation"); *LinkCo, Inc. v. Fujitsu, Ltd.*, 2002 WL 1585551, at * 2 (S.D.N.Y. July 16, 2002) (Scheindlin, J.) (expert report must be excluded where it does "no more than counsel . . . will do in argument, i.e., propound a particular interpretation" based on a review of documents over which the expert has only secondhand knowledge) (citation omitted).

As evidenced by overwhelming authority, the Expert Reports are plainly inadmissible to prove that a specific claimant received a specific PW check. The Trustee does not refute these authorities but instead merely counters that they are "pre-*Daubert*" or involve "state law." (Trustee's Op. Mem. at 38). But that point is irrelevant. Neither *Daubert* nor state law altered the requirement that the Trustee counter an objecting creditor's evidence with **proof**.

### III. The Trustee does not even attempt to address severe deficiencies with the Expert Reports

Participating Claimants have pointed out numerous deficiencies with the Expert Reports that render them inadmissible under the Federal Rules of Evidence. The Trustee does not even attempt to seriously address these deficiencies. He cannot.

The Trustee has no qualms about his Experts manipulating data when it suits his purposes such as, for example, by including Norman Levy's PW transactions which constitute 65% of the PW transactions in the only period relevant to the Participating Claimants. Although Levy was Madoff's long-standing co-conspirator, the Trustee argues that "there is no basis to exclude PW Transactions based simply on the identity of a particular accountholder." (Trustee's Op. Mem. at 22). It should be self-evident, particularly for a fiduciary, that if generalizations made by the Experts are based on data that is overwhelmingly derived from the accounts of a primary Madoff co-conspirator, then those generalizations cannot be fairly said to apply to innocent customers like

{00026457 1}                              7

Blecker.  The Trustee assures the Court that "the Experts will . . . testify that there was no reason to exclude the transactions in the Levy account." (*Id.* at 33).  If the Experts will so testify, this, alone, is sufficient reason to bar the admission of their Reports.

The Trustee fails to address numerous other deficiencies with the Expert Reports.  For example, the Trustee does not seriously dispute that the Expert Reports fail to distinguish between time periods or between "sub codes" within the PW Transaction Population.  (*See id.* at 32-34).  With respect to the errors in the Expert Reports, rather than refuting those errors, the Trustee simply argues that they can be addressed during cross-examination. (*See id.* at 37).  In response to examples of data manipulation, the Trustee simply responds that the Experts can manipulate data "based on their professional judgment." (*Id.* at 35).  When Participating Claimants explain that the Experts impermissibly speculate in the absence of evidence, the Trustee responds that the Experts can make "assumptions and inferences [on matters] . . . within their expertise." (*Id.* at 34).

When it comes to claims of bias, the Trustee does not explain how the Experts' results or methods demonstrate a lack of bias.  Instead, the Trustee merely assures the Court that his experts have disclosed their rates and they are not being paid a contingency fee. (*See id.* at 33).  The question has never been whether the Experts' compensation complies with minimal ethical rules, but whether the Expert Reports are admissible under the Federal Rules of Evidence.  They are not.

## CONCLUSION

The Export Reports should be excluded in their entirety.

December 9, 2016  **CHAITMAN LLP**

By: */s/ Helen Davis Chaitman*
Helen Davis Chaitman
Gregory M. Dexter
465 Park Avenue
New York, New York 10022
Phone and Fax: (888) 759-1114
hchaitman@chaitmanllp.com
gdexter@chaitmanllp.com

*Attorneys for Participating Claimants*

{00026457 1}  9