**CHAITMAN LLP**
Helen Davis Chaitman
Gregory M. Dexter
465 Park Avenue
New York, New York 10022
Phone & Fax: 888-759-1114
hchaitman@chaitmanllp.com
gdexter@chaitmanllp.com

*Attorneys for Defendants Doron Tavlin Trust U/A*
*2/4/91, and Doron A. Tavlin*

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>        Plaintiff-Applicant,<br><br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>        Defendant. | Adv. Pro. No. 08-1789 (SMB)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>        Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>        Plaintiff,<br><br>v.<br><br>DORON TAVLIN TRUST U/A 2/4/91, and DORON A. TAVLIN, as Trustee and Beneficiary of the Doron Tavlin Trust U/A 2/4/91,<br><br>        Defendants. | Adv. Pro. No. 10-05312 (SMB)<br><br>**<u>JURY TRIAL DEMANDED</u>** |

## ANSWER TO FIRST AMENDED COMPLAINT
## AND AFFIRMATIVE DEFENSES

Doron Tavlin Trust U/A 2/4/91 and Doron A. Tavlin, as Trustee and Beneficiary of the

Doron Tavlin Trust U/A 2/4/91, by and through their undersigned counsel, as and for their

Answer to the First Amended Complaint filed by Irving H. Picard ("Plaintiff" or the "Trustee")),

as trustee for the liquidation of the business of Bernard L. Madoff Investment Securities LLC

("BLMIS") under the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa, *et seq.* ("SIPA"),[1]

state as follows:

Pursuant to the Order Granting in Part and Denying in Part Defendants' Motions to

Dismiss entered in this proceeding on July 16, 2015 [ECF No. 43], the Court dismissed all

counts other than those seeking to avoid and recover initial transfers pursuant to sections

548(a)(1)(A), and 551 of the Bankruptcy Code. The Court dismissed without prejudice counts

seeking to recover subsequent transfers from subsequent transferee defendants pursuant to

section 550(a) of the Bankruptcy Code, applicable provision of SIPA including section 78fff-

2(c)(3) and New York Debtor Creditor Law. The amended complaint fails to state a claim

against Tavlin as Beneficiary and violates Judge Bernstein's dismissal order.

### NATURE OF PROCEEDING

1.      This adversary proceeding arises from the massive Ponzi scheme perpetrated

by Madoff. Over the course of the scheme, there were more than 8,000 client accounts at

BLMIS. In early December 2008, BLMIS generated client account statements for its

approximately 4,900 open client accounts. When added together, these statements purport to

show that clients of BLMIS had approximately $65 billion invested with BLMIS. In reality,

BLMIS had assets on hand worth a small fraction of that amount. On March 12, 2009,

---

[1] For convenience, future reference to SIPA will not include "15 U.S.C."

Madoff admitted to the fraudulent scheme and pled guilty to 11 felony counts, and was sentenced on June 29, 2009, to 150 years in prison.

**ANSWER:    Defendants lack knowledge or information sufficient to form a belief as to the truth of Paragraph 1 but specifically note that the Plaintiff has materially misrepresented some of the facts relating to Madoff's fraud.**

2.    The Tavlin Trust and Doron Tavlin (the "Defendants") were beneficiaries of this Ponzi scheme.  The Trustee's investigation has revealed that between December 11, 2006 and December 11, 2008, Defendants benefitted from a transfer from BLMIS in the sum of $489,272, representing fictitious profits, meaning that Defendants withdrew more than was invested in Defendant Tavlin Trust's BLMIS account.  *See* Exhibit B.  This action seeks to recover the fictitious profit from Defendants so that this customer property can be equitably distributed among all of the victims of BLMIS.  The Trustee seeks avoidance of the Two Year Transfer (as defined below) as it constitutes nothing more than other people's money.

**ANSWER:    Defendants deny the allegations of Paragraph 2.**

## JURISDICTION AND VENUE

3.    This is an adversary proceeding commenced in this Court, in which the main underlying SIPA proceeding, No. 08-01789 (SMB) (the "SIPA Proceeding"), is pending. The SIPA Proceeding was originally brought in the United States District Court for the Southern District of New York as *Securities Exchange Commission v. Bernard L. Madoff Investment Securities LLC et al.*, No. 08 CV 10791 (the "District Court Proceeding") and has been referred to this Court.  This Court has jurisdiction over this adversary proceeding under 28 U.S.C. § 1334(b) and (e)(1) and SIPA §§ 78eee(b)(2)(A) and (b)(4).

**ANSWER:    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 3.**

4.      This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A), (H), and (O). The Trustee consents to the entry of final orders or judgment by this Court if it is determined that consent of the parities is required for this Court to enter final orders or judgment consistent with Article III of the U.S. Constitution.

**ANSWER:      Defendants deny the allegations of Paragraph 4.  Pursuant to Local Rule 9027-2, Defendants do not consent to the entry of final orders or judgment by the Bankruptcy Court.**

5.      Venue in this judicial district is proper under 28 U.S.C. § 1409.

**ANSWER:      Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 5.**

6.      This adversary proceeding is brought pursuant to 15 U.S.C. §§ 78fff(b) and 78fff-2(c)(3), 11 U.S.C. §§ 105(a), 544, 548(a), 550(a), and 551, and other applicable law.

**ANSWER:      Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 6.**

## DEFENDANTS

7.      Defendant Tavlin Trust is an Irrevocable Trust that was formed under the laws of the State of New York, with an address in Minneapolis, Minnesota. Defendant Tavlin Trust holds a BLMIS account (the "Account") in the name "Doron Tavlin Trust Doron A. Tavlin and Harvey Krauss Esq Trustees," with the Account address reported in Minneapolis, Minnesota.

**ANSWER:      Defendants admit the allegations of Paragraph 7.**

8.      Upon information and belief, Defendant Doron A. Tavlin, in his capacity as trustee for and beneficiary of, respectively, the Tavlin Trust, maintains his residence in Minneapolis, Minnesota.

**ANSWER:**   **Defendants admit allegations of Paragraph 8.**

## BACKGROUND, THE TRUSTEE, AND STANDING

9.      On December 11, 2008 (the "Filing Date"), Madoff was arrested by federal agents for criminal violations of federal securities law, including securities fraud, investment adviser fraud, and mail and wire fraud.   Contemporaneously, the Securities and Exchange Commission ("SEC") filed a complaint in the District Court which commenced the District Court Proceeding.

**ANSWER:**   **Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 9.**

10.      On December 15, 2008, under SIPA § 78eee(a)(4)(A), the SEC consented to combining its action with an application by the Securities Investor Protection Corporation ("SIPC").   Thereafter, under SIPA § 78eee(a)(4)(B), SIPC filed an application in the District Court alleging, among other things, that BLMIS could not meet its obligations to securities customers as they came due and its customers needed the protections afforded by SIPA.

**ANSWER:**   **Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 10**

11.      Also on December 15, 2008, Judge Stanton granted SIPC's application and entered an order pursuant to SIPA, which, in pertinent part:

    a.      appointed the Trustee for the liquidation of the business of BLMIS pursuant to SIPA § 78eee(b)(3);

    b.      appointed Baker & Hostetler LLP as counsel to the Trustee pursuant to SIPA § 78eee(b)(3); and

    c.      removed the case to this Court pursuant to SIPA § 78eee(b)(4).

**ANSWER:    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 11.**

12.    By orders dated December 23, 2008, and February 4, 2009, respectively, this Court approved the Trustee's bond and found that the Trustee was a disinterested person. Accordingly, the Trustee is duly qualified to serve and act on behalf of the estate.  On April 13, 2009, an involuntary bankruptcy petition was filed against Madoff, and on June 9, 2009, this Court substantively consolidated the chapter 7 estate of Madoff into the SIPA Proceeding.

**ANSWER:    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 12.**

13.    At a plea hearing on March 12, 2009, in the case captioned United States v. Madoff, Case No. 09-CR-213(DC), Madoff pleaded guilty to an 11-count criminal information filed against him by the United States Attorney's Office for the Southern District of New York.  At the Plea Hearing, Madoff admitted that he "operated a Ponzi scheme through the investment advisory side of [BLMIS]."

**ANSWER:    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 13 except that Madoff specifically pled to operating a fraud beginning in the early 1990s and solely with respect to the split strike conversion strategy.**

14.    At a plea hearing on August 11, 2009, in the case captioned United States v. DiPascali, Case No. 09-CR-764 (RJS), Frank DiPascali, a former BLMIS employee, pleaded guilty to a ten-count criminal information charging him with participating in and conspiring to perpetuate the Ponzi scheme.  DiPascali admitted that no purchases or

sales of securities took place in connection with BLMIS customer accounts and that the Ponzi scheme had been ongoing at BLMIS since at least the 1980s.

**ANSWER:**   **Defendants deny the allegations of Paragraph 14.  Plaintiff has misrepresented DiPascali's plea.  What DiPascali pled to was a fraud beginning in the early 1990s or the late 1980s.**

15.   At a plea hearing on November 21, 2011, in the case captioned United States v. Kugel, Case No. 10-CR-228 (LTS), David Kugel, a former BLMIS trader and manager, pleaded guilty to a six-count criminal information charging him with securities fraud, falsifying the records of BLMIS, conspiracy, and bank fraud.  Kugel admitted to helping create false, backdated trades in BLMIS customer accounts beginning in the early 1970s.

**ANSWER:**   **Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 15.**

16.   On March 24, 2014, Daniel Bonventre, Annette Bongiorno, Jo Ann Crupi, George Perez, and Jerome O'Hara were convicted of fraud and other crimes in connection with their participation in the Ponzi scheme as employees of BLMIS's investment advisory business ("IA Business").

**ANSWER:**   **Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 16.**

17.   As the Trustee appointed under SIPA, the Trustee is charged with assessing claims, recovering and distributing customer property to BLMIS's customers holding allowed customer claims, and liquidating any remaining BLMIS assets for the benefit of the estate and its creditors.  The Trustee is using his authority under SIPA and

the Bankruptcy Code to avoid and recover payouts of fictitious profits and/or other transfer made by the Debtors to customers and others to the detriment of defrauded, innocent customers whose money was consumed by the Ponzi scheme. Absent this and other recovery actions, the Trustee will be unable to satisfy the claims described in subparagraphs (A) through (D) of SIPA § 78fff-2(c)(1).

**ANSWER: Defendants deny the allegations of Paragraph 17.**

18.    Pursuant to SIPA § 78fff-1(a), the Trustee has the general powers of a bankruptcy trustee in a case under the Bankruptcy Code in addition to the powers granted by SIPA pursuant to SIPA § 78fff(b). Chapters 1, 3, 5 and subchapters I and II of chapter 7 of the Bankruptcy Code apply to this proceeding to the extent consistent with SIPA pursuant to SIPA § 78fff(b).

**ANSWER:    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 18.**

19.    The Trustee has standing to bring the avoidance and recovery claims under SIPA § 78fff-1(a) and applicable provisions of the Bankruptcy Code, including 11 U.S.C. §§ 323(b), 544, and 704(a)(1), because the Trustee has the power and authority to avoid and recover a transfer under Bankruptcy Code sections 544, 547, 548, 550(a), and 551, and SIPA §§ 78fff-1(a) and 78fff-2(c)(3).

**ANSWER:    The Defendants deny the allegations of Paragraph 19.**

**THE PONZI SCHEME**

20.    Madoff founded BLMIS in or about 1960 as a sole proprietorship. On January 1, 2001, Madoff continued BLMIS as a sole member limited liability company under the laws of the State of New York. BLMIS's ownership and control did not change since its formation in 1960. During that time, BLMIS had been continually

registered with the SEC, and remained a SIPC member since its formation in late 1970. For most of its existence, BLMIS operated from its principal place of business at 885 Third Avenue, New York, New York.  Madoff, as founder, sole owner, chairman, and chief executive officer, operated BLMIS with several family members and other employees, including DiPascali and David Kugel, who pleaded guilty to helping Madoff carry out the fraudulent scheme.

**ANSWER:    Defendants deny the allegations of Paragraph 20 because the Trustee has deliberately misrepresented the nature and extent of Madoff's fraud.  Moreover, as the Trustee knows, BLMIS was not formed until 2001 and he has no power to recover transfers that pre-date the formation of BLMIS.**

21.    Beginning in the 1990s, Madoff outwardly ascribed the consistent investment success of BLMIS's IA Business to the "split-strike conversion" ("SSC") investment strategy.  Madoff claimed his strategy would produce steady returns without the volatility in the stock market or other high return investment strategies.  Madoff generally indicated that investors' funds would be invested in a basket of common stocks within the Standard & Poor's 100 Index ("S&P 100 Index"), which is a collection of the 100 largest publicly traded companies, as determined by Standard & Poor's Index Committee.  The basket of stocks was designed to correlate to the movement of the S&P 100 Index.  The second part of the SSC strategy involved purporting to sell call options and buy put options on the S&P 100 Index; this is commonly referred to as a "collar." Madoff purported to purchase and sell option contracts to control the downside risk of price changes in the basket of stocks correlated to the performance of the S&P 100 Index. All options relating to the companies within the S&P 100 Index, including options based

upon the S&P 100 Index itself, clear through the Options Clearing Corporation ("OCC"). The OCC has no records showing that BLMIS's IA Business cleared any trades in any exchange-listed options.

**ANSWER:     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 21 except that the Trustee has deliberately misrepresented the facts concerning Madoff's fraud.**

22.     BLMIS commingled all of the funds received from IA Business investors in a single BLMIS account maintained at JPMorgan Chase Bank.

**ANSWER:     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 22.**

23.     Because Madoff claimed that he would carefully time purchases and sales to maximize value, customer funds would intermittently be out of the market. During those times, Madoff claimed that the funds were invested in U.S. Treasury securities ("Treasury Bills") or mutual funds invested in Treasury Bills. There is no record of BLMIS clearing a single purchase or sale of securities in connection with the SSC strategy at the Depository Trust & Clearing Corporation, the clearing house for such transactions, or any other trading platform on which BLMIS could have traded securities. There are no other BLMIS records that demonstrate that BLMIS traded securities using the SSC strategy.

**ANSWER:     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 23.**

24.     At their plea hearings, Madoff and DiPascali admitted that BLMIS purchased none of the securities listed on the IA Business customers' fraudulent statements.

**ANSWER:     Denied.  At their plea hearings, both Madoff and DiPascali swore that the fraud began in the early 1990s or, in DiPascali's case, in the late 1980s or early 1990s.**

25.     Madoff operated the IA Business as a Ponzi scheme.  The money received from IA Business customers was used primarily to make distributions to, or payments for, other customers.  The falsified trades reflected in monthly account statements made it appear that the IA Business accounts included substantial gains on customers' principal investments.  The Ponzi scheme collapsed in December 2008, when the requests for redemptions overwhelmed the flow of new investments with BLMIS's IA Business.

**ANSWER:     Defendants deny the allegations of Paragraph 25.**

26.     Since at least 1983, BLMIS financial reports filed with the SEC fraudulently omitted the existence of the billions of dollars of customer funds held by BLMIS.

**ANSWER:     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 26.**

27.     BLMIS did not register as an investment adviser with the SEC until August 2006.  At that time, BLMIS filed with the SEC a Form ADV (Uniform Application for Investment Adviser Registration) representing, among other things, that BLMIS had 23 customer accounts and assets under management of $11.7 billion.  Thereafter, BLMIS filed a Form ADV annually with the SEC, the latest of which was filed in January 2008.  It represented that BLMIS had 23 customer accounts with assets under management of $17.1 billion.  In fact, at that time BLMIS had over 4,900 active customer accounts with a purported value of approximately $68 billion under management.

**ANSWER:     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 27.**

28.     Contrary to standard practice in the investment advisory industry, BLMIS did not charge the IA Business customers a fee for investment advisory services.  Madoff knew others that solicited investors for BLMIS, or, directly or indirectly, funded customer accounts, charged hundreds of millions of dollars for investment advisory services attributed to BLMIS.  Instead of investment advisory fees, BLMIS purported to accept commissions for the purported trades, as reflected in the fraudulent IA Business customer statements.

**ANSWER:     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 28.**

29.     BLMIS's auditor was Friehling & Horowitz, CPA, P.C. ("Friehling & Horowitz"), a three-person accounting firm in Rockland County, New York.  Of the three employees at the firm, one employee was an administrative assistant and one was a semi-retired accountant living in Florida.  On or about November 3, 2009, David Friehling, the sole proprietor of Friehling & Horowitz, pleaded guilty to filing false audit reports for BLMIS and filing false tax returns for Madoff and others.

**ANSWER:     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 29.**

30.     At all relevant times, BLMIS was insolvent because (i) its assets were worth less than the value of its liabilities; (ii) it could not meet its obligations as they came due; and (iii) at the time of the transfer alleged herein, BLMIS was left with insufficient capital.

**ANSWER:     Defendants deny the allegations of Paragraph 30.**

## THE TRANSFER

31.     According to BLMIS's records, the Account (No. 1T0004) was maintained with BLMIS, as set forth on Exhibit A.  Upon information and belief, for the Account, a Customer Agreement and a Trading Authorization Limited to Purchases and Sales of Securities

(collectively, the "Account Agreements") were executed and delivered to BLMIS at BLMIS's headquarters at 885 Third Avenue, New York, New York.

**ANSWER:    Defendants lack knowledge with respect to the allegations of Paragraph 31.**

32.    The Account Agreements were to be performed in New York, New York through securities trading activities that would take place in New York, New York.  The Account was held in New York, New York, and Defendants sent funds to BLMIS and/or to BLMIS's account at JPMorgan Chase & Co., Account #xxxxxxxxxxx1703 (the "BLMIS Bank Account") in New York, New York for application to the Account and the purported conducting of trading activities.  Between the date the Account was opened and the Filing Date, Defendants made deposits to BLMIS through checks and/or wire transfers into the BLMIS Bank Account and/or received inter-account transfers from other BLMIS accounts.

**ANSWER:    Defendants deny the allegations of Paragraph 32 to the extent that BLMIS was not formed until 2001 and otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 32.**

33.    During the two years prior to the Filing Date, BLMIS made a transfer (the "Two Year Transfer") for the benefit of Defendants totaling at least $489,272 in fictitious profits from the Ponzi scheme.  The Two Year Transfer for the benefit of Defendants constitutes non-existent profits supposedly earned in the Account, but, in reality, they were other people's money.  The Two Year Transfer was made for the benefit of Defendants and is set forth in Columns 10 and 11 on Exhibit B annexed hereto.

**ANSWER:    Defendants deny the allegations of paragraph 33.  The Two Year Transfer represented a check for payment of federal taxes purportedly due from the Trust based upon the fictitious profits reported by Madoff.  The check was requested by Krauss as Trustee to satisfy an obligation that Krauss believed was due to the Internal Revenue Service.  In fact, there were no profits in the account and no tax was actually due.  The Defendants, thus, did not benefit from the withdrawal.**

34.    In or about January 2007, Defendants requested BLMIS issue a check from the Account in the sum of $489,272 to the law firm of Snow Becker Krauss P.C. ("Snow Becker").

**ANSWER:    Defendants deny the allegations of paragraph 35.  The request was made by Snow Becker without the knowledge of the Defendants.**

35.    Mr. Krauss, a named partner of Snow Becker, is also a trustee of Defendant Tavlin Trust.

**ANSWER:    Defendants deny the allegations of paragraph 35 but admit that, at the time he requested a check in the amount of $489,272, Mr. Krauss was a Trustee of the Tavlin Trust.**

36.    On or about January 26, 2007, consistent with Defendants' request and authorization, BLMIS issued Check Number 182322 in the sum of $489,272 to Snow Becker, which funds were deposited into Snow Becker's escrow account on or about January 29, 2007.  The Two Year Transfer constituted non-existent profits supposedly earned in the Account.  See Exhibit B, Columns 10 and 11.

**ANSWER:    Defendants admit that the check was issued to Snow Becker and deposited into Snow Becker's escrow account.  They deny that the funds represent non-**

existent profits because the Account existed before the fraud began and it received

transfers of funds from other Madoff accounts which existed before the fraud began.

37.     The memo line on the $489,272 check from BLMIS to Snow Becker reflected

the account number for the Account, "1-T0004-3".

**ANSWER:    Defendants admit the allegations of paragraph 37.**

38.     Defendants authorized and directed Snow Becker to issue a payment in the sum

of $489,272, the exact amount of the Two Year Transfer, to the United States Treasury to

satisfy the tax obligations of the Tavlin Trust and/or Doron Tavlin.

**ANSWER:    Defendants deny the allegations of paragraph 38.  Harvey Krauss, as**

**Trustee, authorized and directed the issuance of the check and the payment of the check to**

**the United States Treasury.**

39.     On or about February 1, 2007, upon Defendants' authorization, and consistent

with Defendants' direction, Snow Becker issued Check Number 2940 from its escrow account,

made payable to the United States Treasury, in the sum of $489,272 (the "Treasury Check").

**ANSWER:    Defendants deny the allegations of paragraph 39 and refer to their**

**answer to paragraph 38.**

40.     The top left-hand corner of the Treasury Check indicates the account to which

the Treasury Check relates and, in handwriting, states "Doron A. Tavlin", "Trust", and a Tax

Identification Number ending in x7963.

**ANSWER:    Defendants deny the allegations of paragraph 40 and refer to the**

**document for what it states.**

41.     The signatory on the Treasury Check was Harvey Krauss.

**ANSWER:    Defendants admit the allegations of paragraph 41.**

42.    The Treasury Check was negotiated by the United States Treasury on or about February 9, 2007 to satisfy Defendants' tax obligations in connection with the Account.

**ANSWER:    Defendants admit the allegations of paragraph 42.**

43.    The Two Year Transfer is avoidable and recoverable under sections 548(a), 550(a)(1), and 551 of the Bankruptcy Code and applicable provisions of SIPA, particularly SIPA section 78fff-2(c)(3), in the sum of at least $489,272. *See* Exhibit B, Column 10.

**ANSWER:    Defendants deny the allegations of paragraph 43.**

## CUSTOMER CLAIM

44.    On or about January 13, 2009, Defendant Tavlin Trust filed the Customer Claim with the Trustee.

**ANSWER:    Defendants admit the allegations of Paragraph 44.**

45.    On or about August 5, 2010, the Trustee issued a Notice of Trustee's Determination of Claim to Defendants (the "Determination") with respect to the Customer Claim.  See Exhibit C.

**ANSWER:    Defendants admit the allegations of Paragraph 45.**

46.    On or about August 27, 2010, Defendant Tavlin Trust filed an objection to the Determination with the Court (the "Claim Objection").

**ANSWER:    Defendants admit the allegations of Paragraph 46.**

47.    On December 23, 2008, this Court entered an Order on Application for Entry of an Order Approving Form and Manner of Publication and Mailing of Notices, Specifying Procedures for Filing, Determination and Adjudication of Claims, and Providing Other Relief ("Claims Procedures Order"; Docket No. 12).  The Claims Procedures Order includes a process for determination and allowance of claims under which the Trustee has been operating.  The Trustee intends to resolve the Customer Claim and the Claim Objection through a separate

hearing as contemplated by the Claims Procedures Order.

**ANSWER:    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 47.**

48.    The Trustee's discovery and investigation is ongoing, and the Trustee reserves the right to: (i) supplement the information on the Two Year Transfer and any additional transfer; and (ii) seek avoidance and recovery of such transfer.

**ANSWER:    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 48.**

49.    To the extent that any of the avoidance and/or recovery counts may be inconsistent with each other, they are to be treated as being pled in the alternative.

**ANSWER:    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 49.**

<u>**COUNT ONE**</u>
<u>**FRAUDULENT TRANSFER – 11 U.S.C. §§ 105(a), 548(a)(1)(A), 550(a), 551**</u>
<u>**AND 15 U.S.C. § 78fff-2(c)(3)**</u>

50.    To the extent applicable, the Trustee incorporates by reference the allegations contained in the previous paragraphs of this First Amended Complaint as if fully rewritten herein.

**ANSWER:    Defendants repeat the answers heretofore stated.**

51.    The Two Year Transfer was made on or within two years before the Filing Date.

**ANSWER:    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 51.**

52.    The Two Year Transfer constituted a transfer of an interest of BLMIS in property within the meaning of section 101(54) of the Bankruptcy Code and pursuant to SIPA section 78fff-2(c)(3).

**ANSWER:     Defendants deny the allegations of Paragraph 52.**

53.     The Two Year Transfer was made by BLMIS with the actual intent to hinder, delay, or defraud some or all of BLMIS' then existing and/or future creditors.

**ANSWER:     Defendants deny the allegations of Paragraph 53.**

54.     The Two Year Transfer constituted a fraudulent transfer avoidable by the Trustee pursuant to section 548(a)(1)(A) of the Bankruptcy Code and recoverable from Defendants pursuant to section 550(a) of the Bankruptcy Code and section 78fff-2(c)(3) of SIPA.

**ANSWER:     Defendants deny the allegations of Paragraph 54.**

55.     The Two Year Transfer was executed by BLMIS to Snow Becker at the direction, and with the authorization, of Defendants.

**ANSWER:     Defendants deny the allegations of Paragraph 55.**

56.     The memo line on the check from BLMIS to Snow Becker stated the Tavlin Trust Account Number, "1-T0004-3".

**ANSWER:     Defendants deny the allegations of Paragraph 56 and refer to the document for what it states.**

57.     The funds that were the subject of the Two Year Transfer were deposited into the Snow Becker escrow account on behalf of Defendants.

**ANSWER:     Defendants admit the allegations of Paragraph 57.**

58.     Upon information and belief, Snow Becker was a "mere conduit" through which the funds flowed.

**ANSWER:     Defendants deny the allegations of Paragraph 58.**

59.     Defendants exercised dominion and control over the funds by authorizing and directing Snow Becker to issue the Treasury Check.

**ANSWER:    Defendants deny the allegations of Paragraph 59.**

60.    Defendants are the entities for whose benefit the Two Year Transfer was made.

**ANSWER:    Defendants deny the allegations of Paragraph 60.  The transfer was made at the request of Krauss, who was then a Trustee of the Tavlin Trust, and who sought to satisfy an obligation he believed he had to pay taxes on the fictitious profits reported in the Account.**

61.    The Two Year Transfer benefitted Defendants because the funds satisfied Defendants' tax obligations to the Internal Revenue Service.

**ANSWER:    Defendants deny the allegations of Paragraph 61.  While, at the time, Krauss and the IRS believed $489,272 in taxes was due to the IRS, it was later determined that there was no tax obligation because the profits reported to the IRS were fictitious.**

62.    As a result of the foregoing, pursuant to sections 105(a), 548(a)(1)(A), 550(a), and 551 of the Bankruptcy Code and section 78fff-2(c)(3) of SIPA, the Trustee is entitled to a judgment against Defendants: (a) avoiding and preserving the Two Year Transfer; (b) directing that the Two Year Transfer be set aside; (c) recovering the Two Year Transfer, or the value thereof, from Defendants for the benefit of the BLMIS estate; and (d) awarding any other relief the Court deems just and appropriate.

**ANSWER:    Defendants deny the allegations of Paragraph 62.**

## AFFIRMATIVE DEFENSES

1.    The Complaint fails to state a claim upon which relief can be granted.

2.    The transfers from BLMIS or Madoff to Defendants made prior to two years from the Filing Date are shielded from avoidance under the safe harbor provision of section 546(e) of the Bankruptcy Code.

3.      Defendants gave, and BLMIS or Madoff received, reasonably equivalent value in exchange for the transfers alleged in the Complaint.

4.      Defendants took the transfers alleged in the Complaint for value and in good faith on account of a valid antecedent debt as contemplated by 11 U.S.C. Section 548(c).

5.      The Complaint violates Rules 8(a)(2) and 9(b) of the Federal Rules of Civil Procedure, *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).

6.      The Trustee lacks standing, in whole or in part, to bring the claims asserted because he lacks Article III injury.

7.      The Trustee's prosecution of these claims is a denial of Defendants' rights to due process of law because the Trustee is a quasi-governmental officer and he has an economic interest in each litigation because he receives at least 15% of all legal fees paid to Baker & Hostetler LLP.

8.      The claims are not ripe because they do not meet the conditions of section 78fff-2(c)(3) of SIPA. The Trustee has not established that there is a shortfall in customer property.

9.      The transfers are not avoidable and/or recoverable because the funds at issue were not property of the bankruptcy estate in which BLMIS or Madoff had a legal interest. *See In re Enron*, 2002 WL 32772482 (Bankr. S.D.N.Y. 2002)

10.     The Complaint fails to state a claim on which relief can be granted because it fails to properly plead the elements required for the avoidance of BLMIS' or Madoff's obligations. Absent an action to avoid BLMIS' or Madoff's obligations to pay what is owed to the customer under applicable state law, the transfers were all made on account of antecedent debt.  To the

extent the Trustee will attempt to plead the avoidance of obligations, he is not authorized under governing statutes to pursue such avoidance claims.

11.    The payments received by the Defendants were taken without actual fraudulent intent and for fair consideration, as provided by section 278(2) of the New York Debtor and Creditor Law. They are thus not avoidable or recoverable as against the Defendants under sections 544 and 550 of the Bankruptcy Code or sections 272 through 276 of the New York Debtor and Creditor Law.

12.    The payments received by the Defendants were taken for fair consideration and without knowledge of the fraud, as provided by section 278(1) of the New York Debtor and Creditor Law.  They are thus not avoidable or recoverable as against the Defendants under Sections 544 and 550 of the Bankruptcy Code or sections 272 through 276 of the New York Debtor and Creditor Law.

13.    The Trustee's claims are barred by his own breach of fiduciary duty.

14.    The Trustee's claims are barred in whole or part by applicable statutes of limitations.

15.    The Trustee's calculation of Defendants' liability violates the Defendants' due process rights.

16.    The Defendants are entitled to setoff, recoupment, and/or equitable adjustment because each year Defendants were required to pay taxes on the fictitious profits" reported on, among other things, IRS Form 1099 and other information reported by BLMIS or Madoff to the Internal Revenue Service, state and/or local governmental taxing authorities.

17.     The Internal Revenue Service was a co-obligor of Defendants, with whom the Trustee settled all claims without the consent of Defendants, thereby discharging Defendants of any liability.

18.     Each claim for recovery of a fraudulent transfer is subject to setoff or equitable adjustment because the Defendants received such transfer in good faith, without knowledge of the alleged fraud, and in payment of an antecedent debt, in whole or in part, on account of obligations owed by BLMIS or Madoff for, *inter alia*, (a) amounts contractually due to customers under New York law for the balances shown on prior customer account statements and related documents; (b) rescission remedies, including damages and interest for fraud and misrepresentation pursuant to federal and state law; (c) the time value of money; (d) unjust enrichment; (e) damages for breach of fiduciary duty; and/or (f) money had and received.

19.     The Defendants are entitled to full credit for any purported account balance at the beginning of the statute of limitations period.

20.     The Trustee has fraudulently calculated Defendants' liability by charging Defendants with withdrawals that the Trustee has no proof were taken.

21.     The Trustee's claims are barred by estoppel, waiver, or laches.

22.     The Trustee's claims are barred by the doctrine of *in pari delicto* and other related equitable defenses.

23.     The Trustee relies upon a Ponzi scheme presumption which does not exist under the Bankruptcy Code.

24.     Madoff and/or BLMIS was not a Ponzi scheme at all relevant times.

25.     The Trustee's claims are barred, in whole or part, because BLMIS or Madoff was not insolvent at the time of each of the transfers allegedly received by the Defendants and BLMIS or Madoff did not become insolvent as a result of such transfers.

26.     The Trustee's claims are barred in whole or part because they depend upon calculations that improperly attempt to avoid transfers that occurred outside the statutory reach back periods for the avoidance of transfers.

27.     The Trustee's claims are barred in whole or part for failure to properly credit inter-account transfers, profit withdrawals, and other adjustments.

28.     The Trustee's claims are barred in whole or part for failure to properly account for the time value of money through an interest adjustment to principal deposits.

29.     The Complaint fails to state a claim on which relief can be granted because it fails to sufficiently trace the funds at issue from BLMIS or Madoff to the Defendants.

30.     Recovery of attorneys' fees from the Defendants is not permissible under sections 544 and 550 of the Bankruptcy Code and section 276-a of the New York Debtor and Creditor Law because such fees are not a "transfer" or "conveyance" under applicable law.

31.      Even if the Trustee is entitled to the return of some or all of the transfers, he is not entitled to interest from the date of each alleged transfer.

32.     The claims are barred in whole or part by *res judicata*, collateral estoppel, and/or issue preclusion.

33.     The Complaint is barred, in whole or in part, because the Trustee has failed to plead all of the elements of fraudulent transfer under sections 548(a)(1)(A) and 548(a)(1)(B) of the Bankruptcy Code with sufficient particularity and factual support.

34.     The Complaint is barred, in whole or in part, because the Trustee has failed to plead all of the elements of fraudulent transfer under section 544 of the Bankruptcy Code and sections 273, 274, 275, 276, 276-a, 278 and/or 279 of the New York Debtor and Creditor Law with sufficient particularity and factual support.

35.     BLMIS or Madoff purchased securities with the Defendants' money, even if those securities were not allocated on BLMIS' or Madoff's records to the Defendants' account.

36.     The Trustee's claims violate the New York State policy of finality in financial transactions.

37.     The withdrawals that the Trustee seeks to recover were legally compelled under State and federal securities laws.

38.     Customers are entitled to 9% interest from the date of deposit under New York law and under the Securities Exchange Act.

39.     Customers are entitled to full-dollar credit for funds transferred into their accounts.

40.     The Trustee's calculation of claims going back beyond the statute of limitations period violates the due process clause of the Fifth Amendment of the United States Constitution and violates the New York State Constitution.

41.     The Trustee lacks standing because BLMIS was not formed until 2001 and the orders of the District Court and the Bankruptcy Court did not give the Trustee authority to recover fraudulent transfers of Bernard Madoff.

42.     There can be no liability of any recipient of funds who, as a matter of law or contract, was required to transfer any portion of the funds to a third party.

43.    The Defendants cannot be liable for withdrawals that Defendants were legally compelled to transfer to state and federal taxing authorities.

44.    The Trustee's claims are barred by any applicable statute of repose.

45.    Defendants are entitled to full-dollar credit for all deposits made within the reach back period.

46.    The Trustee's claims are barred in whole or part for failure to properly credit Defendants with all of Defendants' deposits.

47.    The Trustee's claims are barred because the 2007 withdrawal to pay taxes to the IRS was based upon Madoff's false representation that the account had earned substantial profits. But for that false representation, no withdrawal would have been made.

48.    The Trustee's claims are barred because he has discounted all profits in the account, and in the transferor accounts, for the period before Madoff's fraud began.

49.    Defendants are not liable as transferees under 11 U.S.C. Section 550.

Defendants assert the foregoing affirmative defenses and reserve the right to amend this Answer to assert other and further defenses when and if, in the course of the investigation, discovery, or preparation for trial it becomes appropriate. By designating these matters as "defenses," Defendants do not relieve the Trustee of proving under the appropriate standard of proof all elements of any claim alleged. Defendants do not undertake any burdens that properly rest upon the Trustee, and do not suggest either that the Trustee does not bear the burden of proof as to such matters or that such matters are not elements that he must establish in order to make out a *prima facie* case against Defendants.

Defendants further adopt and incorporate by reference any and all other defenses asserted or to be asserted by any other defendant or party-in-interest to the extent that Defendants are similarly situated and may properly assert such defense.

WHEREFORE, Defendants respectfully request that the Complaint be dismissed as against Defendants, and that costs be awarded against the Trustee.

Dated:    December 12, 2016           **CHAITMAN LLP**
          New York, New York

                                By:    */s/ Helen Davis Chaitman*_____

                                       Helen Davis Chaitman
                                       Gregory M. Dexter
                                       465 Park Avenue
                                       New York, New York 10022
                                       Phone & Fax: 888-759-1114
                                       hchaitman@chaitmanllp.com
                                       gdexter@chaitmanllp.com

                                       *Attorneys for Defendants Doron Tavlin Trust*
                                       *U/A 2/4/91, and Doron A. Tavlin*

## <u>CERTIFICATE OF SERVICE</u>

I, Helen Davis Chaitman, hereby certify that I caused a true and correct copy of the foregoing document to be served upon the parties in this action who receive electronic service through CM/ECF and via email upon:

Nicholas Cremona (ncremona@bakerlaw.co)
Michael A. Sabella (msabella@baker.aw.com)
Baker & Hostetler LLP
45 Rockefeller Plaza
New York, NY 10111-0100

I certify under penalty of perjury that the foregoing is true and correct.

Dated:    December 12, 2016, 2016
New York, New York

*/s/ Helen Davis Chaitman*