**WINDELS MARX LANE & MITTENDORF, LLP**
156 West 56th Street
New York, New York 10019
Tel: (212) 237-1000
Fax: (212) 262-1215
Howard L. Simon
Kim M. Longo
John J. Tepedino

*Special Counsel for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (SMB) |
| Plaintiff-Applicant, | SIPA LIQUIDATION |
| v. | |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | (Substantively Consolidated) |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | Adv. Pro. No. 10-04354 (SMB) |
| Plaintiff, | |
| v. | |
| FITERMAN INVESTMENT FUND; VERDEWAY INVESTMENT PARTNERS LLC; STEVEN FITERMAN, individually, and in his capacity as General Partner of FITERMAN INVESTMENT FUND; SUSAN | |

FITERMAN, individually, and in her capacity as General Partner of FITERMAN INVESTMENT FUND,

Defendants.

## AMENDED COMPLAINT

Irving H. Picard (the "Trustee"), as trustee for the liquidation of the business of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa, et seq. ("SIPA"), and the substantively consolidated estate of Bernard L. Madoff individually ("Madoff" and together with BLMIS, "Debtors"), by and through his undersigned counsel, for his amended complaint (the "Amended Complaint") against Fiterman Investment Fund ("Fiterman Fund"), Verdeway Investment Partners LLC ("Verdeway"), Steven Fiterman, individually and in his capacity as a general partner of Fiterman Fund, and Susan Fiterman, individually and in her capacity as a general partner of Fiterman Fund (collectively, "Defendants"), states as follows:

## NATURE OF PROCEEDING

1. This adversary proceeding arises from the massive Ponzi scheme perpetrated by Madoff. Over the course of the scheme, there were more than 8,000 client accounts at BLMIS. In early December 2008, BLMIS generated client account statements for its approximately 4,900 open client accounts. When added together, these statements purport to show that clients of BLMIS had approximately $65 billion invested with BLMIS. In reality, BLMIS had assets on hand worth a small fraction of that amount. On March 12, 2009, Madoff admitted to the fraudulent scheme and pled guilty to 11 felony counts, and was sentenced on June 29, 2009 to 150 years in prison.

2.  Defendants were beneficiaries of this Ponzi scheme. The Trustee's investigation has revealed that since December 11, 2006, Defendants received $6,250,000 in fictitious profits from BLMIS as follows: (i) Fiterman Fund received $2,000,000 (the "Fiterman Fund Initial Transfers"); and (ii) Verdeway received $4,250,000 (the "Verdeway Initial Transfers"). The Trustee's investigation has revealed that the entire amount of the Fiterman Fund Initial Transfers and the Verdeway Initial Transfers represents fictitious profits from the Ponzi scheme. Accordingly, the Trustee seeks avoidance of the Fiterman Fund Initial Transfers and the Verdeway Initial Transfers as they constitute nothing more than other people's money.

3.  Steven Fiterman and Susan Fiterman, as general partners of Fiterman Fund, are personally liable for the Fiterman Fund Initial Transfers.

4.  In addition, Steven Fiterman and Susan Fiterman, in their individual capacities, (the "Subsequent Transferee Defendants") jointly received subsequent transfers of the Fiterman Fund Initial Transfers and the Verdeway Initial Transfers. The Trustee seeks recovery of these subsequent transfers.

## JURISDICTION AND VENUE

5.  This is an adversary proceeding commenced in this Court, in which the main underlying SIPA proceeding, No. 08-01789 (SMB) (the "SIPA Proceeding"), is pending. The SIPA Proceeding was originally brought in the United States District Court for the Southern District of New York as *Securities Exchange Commission v. Bernard L. Madoff Investment Securities LLC et al.*, No. 08 CV 10791 (the "District Court Proceeding") and has been referred to this Court. This Court has jurisdiction over this adversary proceeding under 28 U.S.C. § 1334(b) and (e)(1), and 15 U.S.C. §§ 78eee(b)(2)(A) and (b)(4).

6.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (H) and (O). The Trustee consents to the entry of final orders or judgment by this Court if it is determined that

- 3 -

consent of the parties is required for this Court to enter final orders or judgment consistent with Article III of the U.S. Constitution.

7.  Venue in this district is proper under 28 U.S.C. § 1409.

8.  This adversary proceeding is brought under sections 78fff(b) and 78fff-2(c)(3) of SIPA, sections 105(a), 548(a), 550(a) and 551 of title 11 of the United States Code (the "Bankruptcy Code"), and other applicable law.

## **DEFENDANTS**

9.  Defendant Fiterman Fund is a general partnership that was formed under the laws of the State of Minnesota and holds a BLMIS account in the name, "Fiterman Investment Fund" (Account No. 1F0085), with the account address reported as Ground Development, 7575 Golden Valley Road, Suite 250, Golden Valley, MN 55427. The general partners of Fiterman Fund are Steven Fiterman and Susan Fiterman.

10. Defendant Verdeway is a limited liability company that was formed under the laws of the State of Florida. Its principal place of business is located in Naples, Florida. Verdeway holds a BLMIS account in the name, "Verdeway Investment Partners LLC" (Account No. 1V0019), with the account address reported as Golden Valley, Minnesota. Steven Fiterman is the manager of Verdeway.

11. Defendant and Subsequent Transferee Defendant Steven Fiterman is the son of the late Miles Q. Fiterman ("Fiterman"), a long-time Madoff investor, and maintains residences in Naples, Florida and Minneapolis, Minnesota. Steven Fiterman is a general partner of Fiterman Fund and the manager of Verdeway. Steven Fiterman is named in this action individually, as well as in his capacity as a general partner of Fiterman Fund.

12. Defendant and Subsequent Transferee Defendant Susan Fiterman is Steven Fiterman's wife and Fiterman's daughter-in-law. Susan Fiterman maintains residences in Naples, Florida and Minneapolis, Minnesota. Susan Fiterman is a general partner of Fiterman Fund and is named in this action individually, as well as in her capacity as a general partner of Fiterman Fund.

## BACKGROUND, THE TRUSTEE AND STANDING

13. On December 11, 2008 (the "Filing Date"), Madoff was arrested by federal agents for criminal violations of federal securities laws, including securities fraud, investment adviser fraud, and mail and wire fraud. Contemporaneously, the Securities and Exchange Commission ("SEC") commenced the District Court Proceeding.

14. On December 15, 2008, under SIPA § 78eee(a)(4)(A), the SEC consented to combining its action with an application by the Securities Investor Protection Corporation ("SIPC"). Thereafter, under SIPA § 78eee(a)(4)(B), SIPC filed an application in the District Court alleging, among other things, that BLMIS could not meet its obligations to securities customers as they came due and its customers needed the protections afforded by SIPA.

15. Also on December 15, 2008, Judge Stanton granted SIPC's application and entered an order pursuant to SIPA, which, in pertinent part:

    a. appointed the Trustee for the liquidation of the business of BLMIS pursuant to SIPA § 78eee(b)(3);

    b. appointed Baker & Hostetler LLP as counsel to the Trustee pursuant to SIPA § 78eee(b)(3); and

    c. removed the case to this Court pursuant to SIPA § 78eee(b)(4).

- 5 -

16. By orders dated December 23, 2008 and February 4, 2009, respectively, this Court approved the Trustee's bond and found that the Trustee was a disinterested person. Accordingly, the Trustee is duly qualified to serve and act on behalf of the estate.

17. On April 13, 2009, an involuntary bankruptcy petition was filed against Madoff, and on June 9, 2009, this Court substantively consolidated the chapter 7 estate of Madoff into the SIPA Proceeding.

18. On July 16, 2009, this Court entered an order granting the Trustee's motion to retain Windels Marx Lane & Mittendorf, LLP as special counsel on behalf of the consolidated estate, nunc pro tunc as of June 9, 2009.

19. At a plea hearing on March 12, 2009, in the case captioned *United States v. Madoff*, Case No. 09-CR-213(DC), Madoff pleaded guilty to an 11-count criminal information filed against him by the United States Attorney for the Southern District of New York. At the plea hearing, Madoff admitted he "operated a Ponzi scheme through the investment advisory side of [BLMIS]."

20. At a plea hearing on August 11, 2009, in the case captioned *United States v. DiPascali*, Case No. 09-CR-764 (RJS), Frank DiPascali, a former BLMIS employee, pleaded guilty to a ten-count criminal information charging him with participating in and conspiring to perpetuate the Ponzi scheme. DiPascali admitted that no purchases or sales of securities took place in connection with BLMIS customer accounts and that the Ponzi scheme had been ongoing at BLMIS since at least the 1980s.

21. At a plea hearing on November 21, 2011, in the case captioned *United States v. Kugel*, Case No. 10-CR-228 (LTS), David Kugel, a former BLMIS trader and manager, pleaded guilty to a six-count criminal information charging him with securities fraud, falsifying the

records of BLMIS, conspiracy, and bank fraud. Kugel admitted to helping create false, backdated trades in BLMIS customer accounts beginning in the early 1970s.

22. On March 24, 2014, Daniel Bonventre, Annette Bongiorno, Jo Ann Crupi, George Perez, and Jerome O'Hara were convicted of fraud and other crimes in connection with their participation in the Ponzi scheme as employees of BLMIS's investment advisory business ("IA Business").

23. As the Trustee appointed under SIPA, the Trustee is charged with assessing claims, recovering and distributing customer property to BLMIS's customers holding allowed customer claims, and liquidating any remaining BLMIS assets for the benefit of the estate and its creditors. The Trustee is using his authority under SIPA and the Bankruptcy Code to avoid and recover payouts of fictitious profits and/or other transfers made by the Debtors to customers and others to the detriment of defrauded, innocent customers whose money was consumed by the Ponzi scheme. Absent this and other recovery actions, the Trustee will be unable to satisfy the claims described in subparagraphs (A) through (D) of SIPA § 78fff-2(c)(1).

24. Pursuant to SIPA § 78fff-1(a), the Trustee has the general powers of a bankruptcy trustee in a case under the Bankruptcy Code in addition to the powers granted by SIPA pursuant to SIPA § 78fff(b). Chapters 1, 3, 5 and subchapters I and II of chapter 7 of the Bankruptcy Code apply to this proceeding to the extent consistent with SIPA pursuant to SIPA § 78fff(b).

25. The Trustee has standing to bring the avoidance and recovery claims under SIPA § 78fff-1(a) and applicable provisions of the Bankruptcy Code, including 11 U.S.C. §§ 323(b) and 704(a)(1), because the Trustee has the power and authority to avoid and recover transfers under Bankruptcy Code sections 548, 550(a), and 551, and SIPA §§ 78fff-1(a) and 78fff-2(c)(3).

## **THE PONZI SCHEME**

26.     Madoff founded BLMIS in or about 1960 as a sole proprietorship. On January 1, 2001, Madoff continued BLMIS as a sole member limited liability company under the laws of the State of New York, with BLMIS assuming the liabilities of the former sole proprietorship. BLMIS's ownership and control did not change since its formation in 1960. From its formation, BLMIS was continually registered with the SEC, and remained a SIPC member since its formation in late 1970. For most of its existence, BLMIS operated from its principal place of business at 885 Third Avenue, New York, New York. Madoff, as founder, sole owner, chairman, and chief executive officer, operated BLMIS with several family members and other employees, including DiPascali and David Kugel, who pleaded guilty to helping Madoff carry out the fraudulent scheme.

27.     Beginning in the 1990s, Madoff outwardly ascribed the consistent investment success of BLMIS's IA Business to the "split-strike conversion" ("SSC") investment strategy. Madoff claimed his strategy would produce steady returns without the volatility in the stock market or other high return investment strategies. Madoff generally indicated that investors' funds would be invested in a basket of common stocks within the Standard & Poor's 100 Index ("S&P 100 Index"), which is a collection of the 100 largest publicly traded companies, as determined by Standard & Poor's Index Committee. The basket of stocks was designed to correlate to the movement of the S&P 100 Index. The second part of the SSC strategy involved purporting to sell call options and buy put options on the S&P 100 Index; this is commonly referred to as a "collar." Madoff purported to purchase and sell option contracts to control the downside risk of price changes in the basket of stocks correlated to the performance of the S&P 100 Index. All options relating to the companies within the S&P 100 Index, including options based upon the S&P 100 Index itself, clear through the Options Clearing Corporation ("OCC").

The OCC has no records showing that BLMIS's IA Business cleared any trades in any exchange-listed options.

28. BLMIS commingled all of the funds received from IA Business investors in a single BLMIS account maintained at JPMorgan Chase Bank.

29. Because Madoff claimed that he would carefully time purchases and sales to maximize value, customer funds would intermittently be out of the market. During those times, Madoff claimed that the funds were invested in U.S. Treasury securities ("Treasury Bills") or mutual funds invested in Treasury Bills. There is no record of BLMIS clearing a single purchase or sale of securities in connection with the SSC strategy at the Depository Trust & Clearing Corporation, the clearing house for such transactions, or any other trading platform on which BLMIS could have traded securities. There are no other BLMIS records that demonstrate that BLMIS traded securities using the SSC strategy.

30. At their plea hearings, Madoff and DiPascali admitted that BLMIS purchased none of the securities listed on the IA Business customers' fraudulent statements.

31. Madoff operated the IA Business as a Ponzi scheme. The money received from IA Business customers was used primarily to make distributions to, or payments for, other customers. The falsified trades reflected in monthly account statements made it appear that the IA Business accounts included substantial gains on customers' principal investments. The Ponzi scheme collapsed in December 2008, when the requests for redemptions overwhelmed the flow of new investments with BLMIS's IA Business.

32. Beginning no later than 1983, BLMIS financial reports filed with the SEC fraudulently omitted the existence of the billions of dollars of customer funds held by BLMIS in its IA Business accounts.

33. BLMIS did not register as an investment adviser with the SEC prior to August 2006, when following an investigation, the SEC forced BLMIS to register. At that time, BLMIS filed with the SEC a Form ADV (Uniform Application for Investment Adviser Registration) representing, among other things, that BLMIS had 23 customer accounts and assets under management of $11.7 billion. Thereafter, BLMIS filed a Form ADV annually with the SEC, the latest of which was filed in January 2008. It represented that BLMIS had 23 customer accounts with assets under management of $17.1 billion. In fact, at that time BLMIS had over 4,900 active customer accounts with a purported value of approximately $68 billion under management.

34. Contrary to standard practice in the investment advisory industry, BLMIS did not charge the IA Business customers a fee for investment advisory services. Madoff knew others that solicited investors for BLMIS, or, directly or indirectly, funded customer accounts, charged hundreds of millions of dollars for investment advisory services attributed to BLMIS. Instead of investment advisory fees, BLMIS purported to accept commissions for the purported trades, as reflected in the fraudulent IA Business customer statements.

35. BLMIS's auditor was Friehling & Horowitz, CPA, P.C. ("Friehling & Horowitz"), a three-person accounting firm in Rockland County, New York. Of the three employees at the firm, one employee was an administrative assistant and one was a semi-retired accountant living in Florida. On or about November 3, 2009, David Friehling, the sole proprietor of Friehling & Horowitz, pleaded guilty to filing false audit reports for BLMIS and filing false tax returns for Madoff and others. BLMIS's available SEC Form X-17A-5 included copies of these fictitious annual audited financial statements prepared by Friehling & Horowitz.

36. At all relevant times, BLMIS was insolvent because (i) its assets were worth less than the value of its liabilities; (ii) it could not meet its obligations as they came due; and (iii) at the time of the transfers alleged herein, BLMIS was left with insufficient capital.

## THE TRANSFERS

37. According to BLMIS's records, Account Nos. 1F0085 and 1V0019 were maintained with BLMIS, as set forth in the attached Exhibit A (the "Accounts"). Upon information and belief, for each Account, a Customer Agreement, an Option Agreement, and/or a Trading Authorization Limited to Purchases and Sales of Securities and Options (collectively, the "Account Agreements") were executed and delivered to BLMIS at BLMIS's headquarters at 885 Third Avenue, New York, New York.

38. The Account Agreements were to be performed in New York, New York through securities trading activities that would take place in New York, New York. The Accounts were held in New York, New York, and Fiterman and/or one or more Defendants sent funds to BLMIS and/or to BLMIS's account at JPMorgan Chase & Co., Account #xxxxxxxxxxx1703 (the "BLMIS Bank Account") in New York, New York for application to the Accounts and the purported conducting of trading activities. Between the dates the Accounts were opened and the Filing Date, one or more Defendants made deposits to BLMIS through checks and/or wire transfers into the BLMIS Bank Account and/or the Accounts received inter-account transfers from other BLMIS accounts.

39. During the two years prior to the Filing Date, BLMIS made transfers of fictitious profits to Defendants in the following amounts: $2,000,000 to Fiterman Fund in connection with Account No. 1F0085 (as defined above, the "Fiterman Fund Initial Transfers") and $4,250,000 to Verdeway in connection with Account No. 1V0019 (as defined above, the "Verdeway Initial Transfers"), for a total amount of $6,250,000. The Fiterman Fund Initial Transfers and the

Verdeway Initial Transfers constitute non-existent profits supposedly earned in the Accounts, but, in reality, they were other people's money. The Fiterman Fund Initial Transfers and the Verdeway Initial Transfers are set forth in Column 9 of Exhibit B attached hereto. The Fiterman Fund Initial Transfers and the Verdeway Initial Transfers are avoidable and recoverable under sections 548(a), 550(a)(1) and 551 of the Bankruptcy Code and applicable provisions of SIPA, particularly SIPA section 78fff-2(c)(3).

40.     All $6,250,000 in initial transfers to Fiterman Fund and Verdeway was subsequently transferred jointly to the Subsequent Transferee Defendants (the "Subsequent Transfers"). Charts setting forth the dates on which the Subsequent Transfers occurred and the amounts received by Steven Fiterman and Susan Fiterman are attached hereto as Exhibit C and Exhibit D.

41.     The Subsequent Transfers being sought by the Trustee, or the value thereof, are recoverable from the Subsequent Transferee Defendants pursuant to § 550(a) of the Bankruptcy Code.

42.     The Trustee's discovery and investigation are ongoing, and the Trustee reserves the right to: (i) supplement the information regarding the Fiterman Fund Initial Transfers, Verdeway Initial Transfers, Subsequent Transfers, and any additional transfers; and (ii) seek avoidance and recovery of such transfers.

43.     To the extent that any of the avoidance and/or recovery counts may be inconsistent with each other, they are to be treated as being pled in the alternative.

## **GENERAL PARTNER LIABILITY**

44.     As set forth above, Steven Fiterman and Susan Fiterman are general partners of Fiterman Fund.

- 12 -

45. Pursuant to Section 323A.0306 of the Minnesota Uniform Partnership Act of 1994, Minn. Stat. § 323A.0306 (2016), Steven Fiterman and Susan Fiterman are personally liable, jointly and severally, as a matter of state law for the debts and obligations of Fiterman Fund, including the Fiterman Fund Initial Transfers.

## CUSTOMER CLAIMS

46. On or about February 23, 2009, Verdeway filed a customer claim with the Trustee which the Trustee has designated as Claim No. 003109 (the "Customer Claim").

47. On or about September 28, 2010, the Trustee issued a Notice of Trustee's Determination of Claim to Verdeway (the "Determination") with respect to the Customer Claim. A copy of the Determination is attached hereto as Exhibit E.

48. Verdeway did not file an objection to the Determination with the Court.

49. On December 23, 2008, this Court entered an Order on Application for Entry of an Order Approving Form and Manner of Publication and Mailing of Notices, Specifying Procedures for Filing, Determination and Adjudication of Claims, and Providing Other Relief ("Claims Procedures Order"; Docket No. 12). The Claims Procedures Order includes a process for determination and allowance of claims under which the Trustee has been operating. The Trustee intends to resolve the Customer Claim and any related objections to the Trustee's determination of such claim through a separate hearing as contemplated by the Claims Procedures Order.

## COUNT ONE
## FRAUDULENT TRANSFER – 11 U.S.C. §§ 105(a), 548(a)(1)(A), 550(a) AND 551

50. To the extent applicable, the Trustee incorporates by reference the allegations contained in the previous paragraphs of this Amended Complaint as if fully rewritten herein.

51. Each of the Fiterman Fund Initial Transfers and the Verdeway Initial Transfers was made on or within two years before the Filing Date.

52. Each of the Fiterman Fund Initial Transfers and the Verdeway Initial Transfers constituted a transfer of an interest of BLMIS in property within the meaning of section 101(54) of the Bankruptcy Code and pursuant to section 78fff-2(c)(3) of SIPA.

53. Each of the Fiterman Fund Initial Transfers and the Verdeway Initial Transfers was made by BLMIS with the actual intent to hinder, delay or defraud some or all of BLMIS's then existing and/or future creditors.

54. Each of the Fiterman Fund Initial Transfers and the Verdeway Initial Transfers constitutes a fraudulent transfer avoidable by the Trustee pursuant to section 548(a)(1)(A) of the Bankruptcy Code and recoverable pursuant to section 550(a) of the Bankruptcy Code and section 78fff-2(c)(3) of SIPA.

55. As a result of the foregoing, pursuant to sections 105(a), 548(a)(1)(A), 550(a), and 551 of the Bankruptcy Code and section 78fff-2(c)(3) of SIPA, the Trustee is entitled to a judgment: (a) avoiding and preserving the Fiterman Fund Initial Transfers and Verdeway Initial Transfers; (b) directing that the Fiterman Fund Initial Transfers and the Verdeway Initial Transfers be set aside; (c) recovering the Fiterman Fund Initial Transfers, or the value thereof, from Defendant Fiterman Fund for the benefit of the BLMIS estate; (d) recovering the Verdeway Initial Transfers, or the value thereof, from Defendant Verdeway for the benefit of the BLMIS estate; and (e) awarding any other relief the Court deems just and appropriate.

## COUNT TWO
## RECOVERY OF SUBSEQUENT TRANSFERS – 11 U.S.C. §§ 105(a) AND 550(a)

56. To the extent applicable, the Trustee incorporates by reference the allegations contained in the previous paragraphs of this Amended Complaint as if fully rewritten herein.

57. Each of the Subsequent Transfers is recoverable from the Subsequent Transferee Defendants under section 550(a) of the Bankruptcy Code and section 78fff-2(c)(3) of SIPA.

58. The Subsequent Transferee Defendants are immediate or mediate transferees of the Subsequent Transfers from Fiterman Fund and Verdeway.

59. As a result of the foregoing, pursuant to sections 105(a) and 550(a) of the Bankruptcy Code and section 78fff-2(c)(3) of SIPA, the Trustee is entitled to a judgment: (a) recovering the Subsequent Transfers, or the value thereof, from the Subsequent Transferee Defendants for the benefit of the BLMIS estate; and (b) awarding any other relief the Court deems just and appropriate.

## COUNT THREE
## GENERAL PARTNER LIABILITY

60. To the extent applicable, the Trustee incorporates by reference the allegations contained in the previous paragraphs of this Amended Complaint as if fully rewritten herein.

61. At all times relevant to the Fiterman Fund Initial Transfers, Steven Fiterman and Susan Fiterman were general partners of Fiterman Fund.

62. As a result of the foregoing, pursuant to applicable state law, Steven Fiterman and Susan Fiterman are jointly and severally liable for all debts and obligations of Fiterman Fund, and the Trustee is entitled to a judgment against Steven Fiterman and Susan Fiterman recovering the Fiterman Fund Initial Transfers described herein, or the value thereof, for the benefit of the BLMIS estate.

WHEREFORE, the Trustee respectfully requests that this Court enter judgment in favor of the Trustee as follows:

i. On the First Claim for Relief, pursuant to sections 105(a), 548(a)(1)(A), 550(a) and 551 of the Bankruptcy Code and section 78fff-2(c)(3) of SIPA, judgment: (a) avoiding and

- 15 -

preserving the Fiterman Fund Initial Transfers and Verdeway Initial Transfers; (b) directing that the Fiterman Fund Initial Transfers and the Verdeway Initial Transfers be set aside; (c) recovering the Fiterman Fund Initial Transfers, or the value thereof, from Defendant Fiterman Fund for the benefit of the BLMIS estate; (d) recovering the Verdeway Initial Transfers, or the value thereof, from Defendant Verdeway for the benefit of the BLMIS estate; and (e) awarding any other relief the Court deems just and appropriate;

      ii.    On the Second Claim for Relief, pursuant to sections 105(a) and 550(a) of the Bankruptcy Code and section 78fff-2(c)(3) of SIPA, judgment: (a) recovering the Subsequent Transfers, or the value thereof, from the Subsequent Transferee Defendants for the benefit of the BLMIS estate; and (b) awarding any other relief the Court deems just and appropriate;

      iii.    On the Third Claim for Relief, pursuant to applicable state law, judgment that Steven Fiterman and Susan Fiterman are jointly and severally liable for all debts and obligations of Fiterman Fund, and recovering the Fiterman Fund Initial Transfers, or the value thereof, from Steven Fiterman and Susan Fiterman for the benefit of the BLMIS estate;

      iv.    On all Claims for Relief for which the Fiterman Fund is liable, that the Court enter judgment for that same relief against Steve Fiterman and Susan Fiterman as general partners of the Fiterman Fund;

      v.    On all Claims for Relief, impressing all Defendants' property, or the proceeds, product and offspring of such property, with an equitable lien and/or a constructive trust in favor of the Trustee for the benefit of the estate, to the extent that the Fiterman Fund Initial Transfers, the Verdeway Initial Transfers or the Subsequent Transfers were used, in whole or in part, to purchase, improve and/or maintain such property;

  vi. On all Claims for Relief, establishing a constructive trust over the Fiterman Fund Initial Transfers, the Verdeway Initial Transfers and the Subsequent Transfers and their proceeds, product and offspring in favor of the Trustee for the benefit of the estate;

  vii. On all Claims for Relief, pursuant to federal common law and/or N.Y. CPLR 5001 and 5004, as applicable, awarding the Trustee prejudgment interest from the date on which the Fiterman Fund Initial Transfers and the Verdeway Initial Transfers were received;

  viii. On all Claims for Relief, awarding the Trustee all applicable interest, costs, and disbursements in this proceeding; and

  ix. Granting the Trustee such other, further, and different relief as the Court deems just, proper and equitable.

Dated: New York, New York  
   December 12, 2016

By: /s/ Howard L. Simon  
Howard L. Simon (hsimon@windelsmarx.com)  
Kim M. Longo (klongo@windelsmarx.com)  
John J. Tepedino (jtepedino@windelsmarx.com)  
Windels Marx Lane & Mittendorf LLP  
156 West 56th Street  
New York, New York 10019  
Tel: (212) 237-1000  
Fax: (212) 262-1215  

*Special Counsel for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Estate of Bernard L. Madoff*