EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>      Plaintiff-Applicant<br><br>  -against-<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>      Defendant. | Adv. Pro. No. 08-01789 (SMB)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>      Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>      Plaintiff,<br><br>  -against-<br><br>JO ANN CRUPI and JUDITH BOWEN,<br><br>      Defendants. | Adv. Pro. No. 10-04216 (SMB) |

## DISCOVERY ARBITRATOR'S DECISION AND ORDER

I have been asked to consider the applicability of the crime-fraud exception to certain subpoenaed documents withheld from production by a third party on attorney-client privilege grounds. For the reasons set forth below, I conclude that there is probable cause to believe that the crime-fraud exception may apply. An in camera inspection of the documents therefore is warranted.

I.   Factual and Procedural Background

Plaintiff Irving H. Picard is the trustee ("Trustee") for the SIPA liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") and the substantively consolidated estate of Mr. Madoff. (ECF No. 1 ("Compl.") at 1).

Defendant Jo Ann Crupi was employed by BLMIS for approximately twenty-five years. (Id. ¶ 2). By the time that BLMIS cratered, Ms. Crupi's duties included making a daily report to Mr. Madoff concerning the status of the BLMIS bank account used for customer deposits and disbursements ("Account"). (Id. ¶ 3).

The Trustee contends, and Ms. Crupi denies, that she became aware that BLMIS was going to collapse several weeks before Mr. Madoff's Ponzi scheme was exposed. (Id. ¶ 6; ECF No. 25 ("Ans.") ¶ 6). More specifically, the Trustee's complaint in this adversary proceeding alleges that Ms. Crupi's report to Mr. Madoff on November 25, 2008, approximately two weeks before the scheme unraveled on December 11, 2008, showed that the total amount of the unfulfilled redemption requests from BLMIS

2

investors was three times greater than the funds that BLMIS had on hand in the Account. (Compl. ¶¶ 6, 21).

By November 25, 2008, Ms. Crupi and her life partner, co-defendant Judith Bowen (together, the "Defendants"), were in the midst of purchasing a beach house in Mantoloking, New Jersey, for $2,225,000. The contract of sale for that transaction, signed by the Defendants on May 31, 2008, lists both of them as the purchasers. (See letter from the Trustee to the Discovery Arbitrator, dated Nov. 11, 2016 ("Nov. 11 Letter"), Ex. B). The contract provides for an earnest money deposit of $5,000 and a further deposit of $480,000 within ten days. (Id.). It appears, however, that Ms. Crupi caused a total of $2,710,000 to be transferred from the Account to Guston & Guston, the law firm representing the Defendants in connection with the house purchase.[1] (See id. Ex. A). The largest such transfer was a $2,225,000 transfer to Guston & Guston on October 16, 2008. (See id. at 1). According to the Trustee, these transfers were made from the Account without any indication that they were to be treated as withdrawals from the Defendants' individual investment advisory accounts at BLMIS. (Compl. ¶ 5). Nevertheless, Guston & Guston evidently returned a $480,000 overage to BLMIS with a notation that the Defendants were the intended beneficiaries of the transfer. (See Nov. 11 Letter at 3). The Trustee contends that these transfers were fraudulent in the absence of any showing that the monies initially transferred from the Account came from the

---

[1] The complaint in this adversary proceeding originally also named Guston & Guston and one of its partners as defendants. By Stipulation and Order dated December 8, 2011, the claims against these defendants were dismissed without prejudice. (See ECF No. 22).

3

Defendants' investment advisory accounts or were intended to compensate Ms. Crupi for her work at BLMIS. (Id. at 2).

In keeping with the original contract of sale, a Use and Occupancy Agreement dated November 3, 2008, identified both of the Defendants as the buyers of the Mantoloking house.[2] When the transaction eventually closed in early January 2009, however, only Ms. Bowen was listed on the deed. (See Compl. ¶ 53(k); Ans. ¶ 53(k)).

On March 24, 2014, Ms. Crupi was convicted of numerous criminal charges related to her work at BLMIS, and she later was sentenced to a six-year term of imprisonment.[3] (See United States v. Crupi, 10 Cr. 228 (LTS), ECF No. 1243). The judgment entered against Ms. Crupi provided for her to forfeit more than $30 billion to the United States. (Id.). Subsequently, the Defendants entered into an amended consent preliminary forfeiture order in which they agreed to forfeit the proceeds of the sale of the Mantoloking house to the United States as a substitute res. (Id. ECF No. 1318). The Trustee consequently has not recovered any of the proceeds of the sale for defrauded investors.

On December 21, 2015, the Trustee subpoenaed the books and records of Guston & Guston relating to the purchase of the Mantoloking house, including any documents and communications concerning the deposit or transfer of funds. (See letter

---

[2] The Use and Occupancy Agreement enabled the Defendants to use the Mantoloking house prior to the actual closing.

[3] The Defendants contend that none of these convictions established Ms. Crupi's knowledge of the Ponzi scheme. (See letter from Eric R. Breslin, Esq., to the Discovery Arbitrator, dated Nov. 18, 2016 ("Nov. 18 Letter"), at 1).

4

from the Trustee to the Hon. Stuart M. Bernstein, dated Sept, 13, 2016 ("Sept. 13 Letter"), Ex. B) It appears that certain of the requested documents were produced, but Guston & Guston claimed on behalf of the Defendants that more than one hundred emails were shielded from disclosure by the attorney-client privilege. (See id. Ex. C). After Guston & Guston advanced that privilege claim, the Trustee wrote to Judge Bernstein to request a conference regarding a potential motion to compel production of the documents. (See Sept. 13 Letter). In that letter, the Trustee maintained that the documents withheld by Guston & Guston had to be produced because they fall within the crime-fraud exception to privilege claims. (Id.).

Following my appointment as a Discovery Arbitrator on October 4, 2016, the parties agreed to submit their dispute concerning the Guston & Guston documents to me for resolution. I, in turn, held a telephone conference with counsel for the Trustee, the Defendants, and Guston & Guston on October 17, 2016. Thereafter, the Trustee submitted a letter-brief on November 11, 2016, and the Defendants responded with a letter-brief of their own on November 18, 2016. The issue consequently is ripe for resolution.

II.   Discussion

The crime-fraud exception enables a requesting party to secure documents that would otherwise be protected from disclosure by the attorney-client privilege or work product doctrine. See In re Grand Jury Subpoena dated Apr. 15, 1983, 731 F.2d 1032, 1036 (2d Cir. 1984) (" It is well-established that communications that otherwise would be protected by the attorney-client privilege or the attorney work product privilege

5

are not protected if they relate to client communications in furtherance of contemplated or ongoing criminal or fraudulent conduct."). Here, of course, the Defendants are asserting solely an attorney-client privilege claim. (See Nov. 18 Letter).

Because the complaint asserts claims arising under both federal and state law, the parties' dispute must be resolved through the application of federal common law. Fitzpatrick v. Am. Intern. Grp., Inc., 272 F.R.D. 100, 104 (S.D.N.Y. 2010) (citing von Bulow v. von Bulow, 811 F.2d 136, 141 (2d Cir. 1987)). Accordingly, to invoke the crime-fraud exception, the Trustee must show that the privileged communications were made "in furtherance of contemplated or ongoing criminal or fraudulent conduct." In re Grand Jury Subpoena, 731 F.2d at 1036; accord United States v. Jacobs, 117 F.3d 82, 87 (2d Cir. 1997). In deciding whether the communications meet the "in furtherance" standard, it is the intent of the client, not the client's attorney, that controls. In re Omnicom Grp. Inc. Secs. Litig., 233 F.R.D. 400, 404 (S.D.N.Y. 2006). Moreover, it is not enough that the communications relate to past criminal conduct because even criminals are entitled to seek legal advice concerning their past misdeeds without fear that their discussions with counsel will be disclosed to third parties. See Duttle v. Bandler & Kass, 127 F.R.D. 46, 53 (S.D.N.Y. 1989) ("[W]hen fraudulent or criminal conduct is no longer ongoing, communications related to legitimate attempts to provide legal defense to the alleged perpetrators are immune from discovery[.]").

In his letter, the Trustee argues that the Defendants were communicating with Guston & Guston in furtherance of a scheme to conceal or dispose of certain proceeds of the Madoff fraud by means of fraudulent transfers. (See Nov. 11 Letter at 7-

6

8 & n.5.) The Defendants respond that the decision to take title to the Mantoloking house in Ms. Bowen's name merely recognized the fact that they could not marry lawfully in any state in 2008 and needed a mechanism to ensure that Ms. Bowen, a "stay-at-home mother caring for [their] two small children," would have a "small piece of the security usually afforded a wife in a 'traditional' marriage," if Ms. Crupi, the "family breadwinner," were to die. (Nov. 18 Letter at 3.)

Faced with this justification, the Trustee bears the burden of establishing that there is "probable cause to believe that a fraud or crime was committed and that the withheld communications were in furtherance of the crime or fraud." Omnicom Grp., 233 F.R.D. at 404 (quoting Jacobs, 117 F.3d at 87); accord In re Roe, 168 F.3d 69, 70 (2d Cir. 1999) ("Roe II"). As the Defendants correctly observe, the Trustee cannot do so simply by showing that the Defendants communicated with their counsel while they were engaged in criminal activity. (Nov. 18 Letter at 2) (citing In re Grand Jury Subpoenas Duces Tecum, 798 F.2d 32, 34 (2d Cir. 1986)). Rather, there must be a showing that "a prudent person [would] have a reasonable basis to suspect the perpetration or attempted perpetration of a crime or fraud and that the communications were in furtherance thereof." In re Grand Jury Subpoena, 731 F.2d at 1039. If that threshold is met, the requesting party may be able to secure in camera review of the withheld materials to determine whether the privilege applies and, if so, whether the requesting party is entitled to invoke the crime-fraud exception. See Jacobs, 117 F.3d at 87. Whether to undertake such a review, however, is a matter of discretion. Id.

7

Here, although the Defendants deny that Ms. Crupi was aware of the impending collapse of BLMIS or made any transfers as a result, (Ans. ¶ 6), at least three factors augur in favor of a probable cause finding. First, there is the temporal proximity between Ms. Crupi's undisputed knowledge that BLMIS's financial position was poor and the Defendants' decision to purchase the Mantoloking house solely in Ms. Bowen's name, rather than jointly as originally planned. Second, if the ostensible reason for the change was to ensure that Ms. Bowen would own the property upon Ms. Crupi's death, that presumably could have been readily accomplished by taking title as joint tenants with rights of survivorship. See Gauger v. Gauger, 376 A.2d 523, 542 (Sup. Ct. 1977) ("[U]pon creation of a joint tenancy, a joint tenant acquires a right of survivorship and, when the cotenant dies, the survivor is seized of the fee to the entire property by virtue of the original grant."). The decision to remove Ms. Crupi from the equation after Mr. Madoff's Ponzi scheme came to light and shortly before the purchase was completed therefore suggests that the Defendants had another goal in mind. Finally, there is the fact that Ms. Crupi initially transferred to Guston & Guston substantially more money than was necessary to complete the transaction. Simply put, that is not the way that someone typically would go about the purchase of a house.

Taken together, these factors provide an ample basis for a prudent person to have a reasonable suspicion that the change in plans, and the Defendants' communications with Guston & Guston concerning that change, were in furtherance of ongoing criminal activity. It therefore seems prudent to examine the contested

8

documents in camera to determine whether the withheld communications are, indeed, privileged and, if so, whether the crime-fraud exception applies.

The Defendants advance three reasons why I should not proceed in this manner, none of which has merit. First, they maintain that the Trustee must be engaged in an improper fishing expedition because all of the facts related to the house purchase and the way it was financed are essentially undisputed. Relatedly, because those facts are known, they argue that the Trustee cannot show that any of their privileged communications with Guston & Guston "facilitated the removal of [the house] from the Trustee's reach." (Nov. 18 Letter at 2-3, 4). They surmise that the real motivation for the Trustee's application is consequently his desire to find some evidence of Ms. Bowen's complicity in the BLMIS fraud. (Id. At 4). While that might be an added benefit of any further discovery to which the Trustee may be entitled under the crime-fraud exception, the fact that the production of the Defendants' communications might also serve that undisclosed purpose does not belie the Trustee's potential entitlement to them if there is reason to believe that they were in furtherance of a scheme to defraud. As noted previously, the abrupt change in the manner in which title to the property was taken warrants that inference.

The Defendants also argue that the Trustee's attempt to invade their attorney-client privilege should be rejected because the Trustee failed to "make a particularized application, providing 'evidence that *each* challenged communication was made *in furtherance of* the crime or fraud[.]'" (Id. at 4-5 (quoting In re 650 Fifth Avenue, No. 08 Civ. 10934 (KBF), 2013 WL 3863866, at *2 (S.D.N.Y. 2013)) (emphasis

9

and alteration in original). Here, however, that would impose an impossible burden since each of the withheld emails is described on the Guston & Guston privilege log only as a document "reflect[ing] communications seeking advice regarding real estate transaction." (Sept. 13 Letter Ex. C). The absence of any further detail means that the Trustee cannot be more targeted in his request. Furthermore, even though many of the emails evidently predate the Defendants' decision not to purchase the house jointly, those communications may reveal the thinking that led to that change in their plans.

Finally, the Defendants note that there is an open question in this Circuit as to the rights of an innocent joint holder of the privilege. (See Nov. 18 Letter at 5 (citing In re Roe, 68 F.3d 38, 41 (2d Cir. 1995) ("Roe I"); Roe II, 168 F.3d at 71). Analogizing their situation to circumstances involving a joint defense agreement, the Defendants argue that the privilege cannot be waived if Ms. Bowen is innocent of any wrongdoing. (Id. (collecting cases)). In Roe I, the Second Circuit noted that it did not have to reach "the very difficult issue of whether the crime-fraud exception applies where one of two joint privilege-holders is innocent" because the case had to be remanded so that the trial court could conduct a review of each contested document utilizing the proper test. 68 F.3d at 41. The Court later held in Roe II that, contrary to the district court's renewed conclusion, the documents were not subject to the crime-fraud exception, thereby again obviating the need to address the applicability of the crime-fraud exception to an innocent joint privilege-holder. 168 F.3d at 71. The Defendants concede that the issue thus remains one of "first impression in the Second Circuit." (Nov. 18 Letter at 5). As in Roe I and Rose II, there is no need to reach this issue in this proceeding, unless my in camera

10

review reveals that there are communications between the Defendants and Guston & Guston that fall within the crime-fraud exception. I therefore respectfully decline to address the question until I have made a determination as to whether the contested communications (a) are privileged and (b) were made in furtherance of a crime or fraud.

III.  Conclusion

For the foregoing reasons, the Trustee's letter application is granted to the extent that I will examine the contested documents in camera. The Defendants therefore are directed to have Guston & Guston send me all of the emails identified on their privilege log by December 15, 2016.[4]

SO ORDERED.

Dated:   New York, New York
         December 7, 2016

/s/
_____
FRANK MAAS
Discovery Arbitrator

Copies to Counsel via ECF

---

[4] The documents should be sent to me c/o JAMS, Inc., 620 Eighth Avenue, 34th Floor, New York, New York 10018.

# SERVICE LIST

| | | | |
|---|---|---|---|
| **Case Name:** | In re: Bernard L. Madoff Investment Securities, LLC. et al. | **Hear Type:** | Court Reference |
| **Reference #:** | 1425022252 | **Case Type:** | Business/Commercial |
| **Panelist:** | Maas, Frank , | | |

**Karin Scholz Jenson**
Baker Hostetler LLP
45 Rockefeller Plaza          Trustee
New York, NY  10111         Phone: 212-589-4200
                             Fax: 212-589-4201
kjenson@bakerlaw.com
  **Party Represented:**
  Irving H. Picard, Esq., TRUSTEE

**Yuliya Iskhakova**
Baker Hostetler LLP
45 Rockefeller Plaza          Trustee
New York, NY  10111         Phone: 212-589-4200
                             Fax: 212-589-4201
yiskhakova@bakerlaw.com
  **Party Represented:**
  Irving H. Picard, Esq., TRUSTEE

**Edward Jacobs**
Baker Hostetler LLP
45 Rockefeller Plaza          Trustee
New York, NY  10111         Phone: 212-589-4200
                             Fax: 212-589-4201
ejacobs@bakerlaw.com
  **Party Represented:**
  Irving H. Picard, Esq., TRUSTEE

**Dean D. Hunt**
Baker Hostetler
811 Main St.
Suite 1100                    Trustee
Houston, TX  77002-6111     Phone: 713-751-1600
                             Fax: 713-751-1717
dhunt@bakerlaw.com
  **Party Represented:**
  Irving H. Picard, Esq., TRUSTEE

**Nicholas J. Cremona**
Baker Hostetler LLP
45 Rockefeller Plaza          Trustee
New York, NY  10111         Phone: 212-589-4200
                             Fax: 212-589-4201
ncremona@bakerlaw.com
  **Party Represented:**
  Irving H. Picard, Esq., TRUSTEE

**Terry M. Brennan**
Baker Hostetler LLP
127 Public Square
Suite 2000                    Trustee
Cleveland, OH  44114-1214   Phone: 216-621-0200
                             Fax: 216-696-0740
tbrennan@bakerlaw.com
  **Party Represented:**
  Irving H. Picard, Esq., TRUSTEE

**Breaden M. Douthett**
Baker Hostetler LLP
127 Public Square
Suite 2000                    Trustee
Cleveland, OH  44114-1214   Phone: 216-621-0200
                             Fax: 216-696-0740
bdouthett@bakerlaw.com
  **Party Represented:**
  Irving H. Picard, Esq., TRUSTEE

**Edward Jacobs**
Baker Hostetler LLP
45 Rockefeller Plaza          Trustee
New York, NY  10111         Phone: 212-589-4200
                             Fax: 212-589-4201
ejacobs@bakerlaw.com
  **Party Represented:**
  Irving H. Picard, Esq., TRUSTEE

*12/7/2016*

**Eric R. Breslin**
Duane Morris LLP
744 Broad St.
Suite 1200
Newark, NJ  07102-3889
erbreslin@duanemorris.com

Defendant
Phone: 973-424-2000
Fax: 973-424-2001

**Party Represented:**

Jo Ann Crupi

**Melissa S. Geller**
Duane Morris LLP
744 Broad St.
Suite 1200
Newark, NJ  07102-3889
MSGeller@duanemorris.com

Defendant
Phone: 973-424-2000
Fax: 973-424-2001

**Party Represented:**

Jo Ann Crupi

## PROOF OF SERVICE BY EMAIL & U.S. MAIL

Re: In re: Bernard L. Madoff Investment Securities, LLC. et al.
Reference No. 1425022252

I, Kristen Maccubbin, not a party to the within action, hereby declare that on December 07, 2016, I served the attached Crupi Order and Decision on the parties in the within action by Email and by depositing true copies thereof enclosed in sealed envelopes with postage thereon fully prepaid, in the United States Mail, at New York, NEW YORK, addressed as follows:

Karin Scholz Jenson Esq.
Ms. Yuliya Iskhakova
Edward Jacobs Esq.
Baker Hostetler LLP
45 Rockefeller Plaza
New York, NY   10111
Phone: 212-589-4200
kjenson@bakerlaw.com
yiskhakova@bakerlaw.com
ejacobs@bakerlaw.com
   Parties Represented:
   Crupi Case
   Good Faith Case
   Irving H. Picard, Esq., TRUSTEE

Mr. Nicholas J. Cremona
Baker Hostetler LLP
45 Rockefeller Plaza
New York, NY   10111
Phone: 212-589-4200
ncremona@bakerlaw.com
   Parties Represented:
   Good Faith Case
   Irving H. Picard, Esq., TRUSTEE

Eric R. Breslin Esq.
Ms. Melissa S. Geller
Duane Morris LLP
744 Broad St.

Mr. Dean D. Hunt
Baker Hostetler
811 Main St.
Suite 1100
Houston, TX   77002-6111
Phone: 713-751-1600
dhunt@bakerlaw.com
   Parties Represented:
   Good Faith Case
   Irving H, Picard, Esq., TRUSTEE

Terry M. Brennan Esq.
Mr. Breaden M. Douthett
Baker Hostetler LLP
127 Public Square
Suite 2000
Cleveland, OH   44114-1214
Phone: 216-621-0200
tbrennan@bakerlaw.com
bdouthett@bakerlaw.com
   Parties Represented:
   Crupi Case
   Irving H. Picard, Esq., TRUSTEE

Suite 1200
Newark, NJ 07102-3889
Phone: 973-424-2000
erbreslin@duanemorris.com
MSGeller@duanemorris.com
   Parties Represented:
   Crupi Case
   Jo Ann Crupi
   Judith G. Bowen

I declare under penalty of perjury the foregoing to be true and correct. Executed at New York, NEW YORK on December 07, 2016.

_____
Kristen Maccubbin
kmaccubbin@jamsadr.com