UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------X
In re:                                        :
                                              :      SIPA LIQUIDATION
BERNARD L. MADOFF INVESTMENT                  :
SECURITIES LLC,                               :      Adv. Pro. No. 08-01789 (SMB)
                                              :
                        Debtor.               :
------------------------------------------------------X
IRVING H. PICARD, Trustee for the             :
Liquidation of Bernard L. Madoff Investment   :
Securities LLC,                               :      Adv. Pro. No. 09-01364 (SMB)
                                              :
                        Plaintiff,            :
                                              :
        – against –                           :
                                              :
HSBC BANK PLC, et al.,                        :
                                              :
                        Defendants.           :
------------------------------------------------------X

## MEMORANDUM DECISION GRANTING HSBC
## DEFENDANTS' MOTION TO DISMISS CROSS-CLAIMS

**A P P E A R A N C E S :**

CLEARY GOTTLIEB STEEN & HAMILTON LLP
*Attorneys for HSBC Defendants*
One Liberty Plaza
New York, NY 10006

      Thomas J. Moloney, Esq.
      David E. Brodsky, Esq.
      Joaquin N. Terceño, Esq.
      Carolyn Chu, Esq.
      Shira A. Kaufman, Esq.
         Of Counsel

DUFFY AMEDEO LLP
*Attorneys for Alpha Prime Fund Limited and Senator Fund SPC*
275 Seventh Avenue, 7th Floor
New York, NY 10001

Todd E. Duffy, Esq.
Douglas A. Amedeo, Esq.
        Of Counsel

**STUART M. BERNSTEIN**
**United States Bankruptcy Judge:**

Irving H. Picard (the "Trustee"), as trustee of the liquidation of Bernard L.

Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection

Act of 1970 ("SIPA"), 15 U.S.C. §§ 78aaa, *et seq.*, brought this adversary proceeding to

avoid and recover initial transfers made to numerous feeder funds, including Alpha

Prime Fund Limited ("Alpha") and Senator Fund SPC ("Senator," and with Alpha, the

"Funds"), and subsequent transfers made to, *inter alia*, the HSBC Securities Services

(Bermuda) Limited ("HSSB"), HSBC Institutional Trust Services (Bermuda) Limited

("HITSB"), HSBC Bank Bermuda Limited ("HBB"), HSBC Securities Services

(Luxembourg) S.A. ("HSSL"), and HSBC Bank plc ("HSBC Bank," and together with

HSSB, HITSB, HBB, and HSSL, the "HSBC Defendants").[1]  The Funds asserted

numerous cross-claims against the HSBC Defendants sounding in fraud, negligence and

gross negligence, breach of contract, breach of fiduciary duty, violations of Luxembourg

law and aiding and abetting for, among other things, failing to properly monitor and

manage the Funds' investments in BLMIS, and in particular, appointing BLMIS as a

sub-custodian of their investments with BLMIS.

---

[1]    The cross-claims against two of the original HSBC Defendants, Bank of Bermuda Limited ("BOB")
and Bank of Bermuda (Luxembourg) S.A. ("BOBL") have been dismissed.  (*See Stipulation and Order (1)
Dismissing Certain HSBC Cross-Claim Defendants without Prejudice and (2) Extending Remaining
HSBC Defendants' Time to Respond to Cross-Claims*, dated Sept. 12, 2011, at ¶ 1 (ECF Doc. # 130).)
Documents filed in this adversary proceeding are referenced as "ECF Doc. # ___."

The HSBC Defendants have moved to dismiss the Funds' cross-claims on numerous grounds. (*The HSBC Defendants' Motion to Dismiss the Amended Cross-Claims of Alpha Prime Fund Limited and Senator Fund SPC*, dated Feb. 17, 2015 ("*HSBC Motion*") (ECF Doc. # 369).) For the reasons that follow, the *HSBC Motion* is granted based upon the lack of subject matter jurisdiction and the Court's determination not to exercise supplemental jurisdiction.

## BACKGROUND

### A.    The Funds' Relationship with the HSBC Defendants

The Funds were BLMIS feeder funds. (*Answer, Affirmative Defenses and Amended Cross-Claim of Alpha Prime Fund Limited and Senator Fund SPC*, dated Dec. 8, 2014 ("*Cross-Claim*"), at ¶¶ 9, 17, 62 (ECF Doc. # 347).)[2] Alpha was formed under the laws of Bermuda on March 12, 2003. (*Id.* at ¶ 19.) On that date, Alpha entered into two agreements that bear directly on its cross-claims. First, it entered into a Custodian Agreement with BOB (the "Alpha Custodian Agreement") for the purposes, *inter alia*, of holding and safeguarding Alpha's cash and securities.[3] The parties' addresses were listed as being in Hamilton, Bermuda, (Alpha Custodian Agreement at § 19), the agreement was governed by Bermuda law, (*id.* at § 27), and the parties submitted to the non-exclusive jurisdiction of the Bermuda courts to resolve any disputes relating to its

---

[2]    The *Cross-Claim* begins on page 69 of the answer where the numbering of the paragraphs restarts. The paragraph references are those corresponding to the *Cross-Claim*.

[3]    A copy of the Alpha Custodian Agreement is annexed as Exhibit 4 to the *Attorney Declaration of Thomas J. Moloney in Support of HSBC Defendants' Motion to Dismiss*, dated Feb. 17, 2015 ("*Moloney Declaration*") (ECF Doc. # 368).

terms. (*Id.*) BOB was authorized to appoint sub-custodians as it thought necessary to perform its duties, but with certain exceptions, remained responsible for any acts or omissions of the sub-custodian. (*Id.* at § 15(B).) Simultaneously with the execution of the Alpha Custodian Agreement, BOB entered into a sub-custodian agreement with HSSL.[4] (*Cross-Claim* at ¶ 28.)

Second, Alpha entered into an Administration and Registrar Agreement with Management International (Bermuda) Limited ("Alpha Administration Agreement" and together with the Alpha Custodian Agreement, the "Alpha Agreements"). (*See Moloney Declaration*, Ex. 5.)[5] The Administrator could delegate its "functions, powers, discretions, privileges and duties . . . to such person, firm or company on such terms and conditions as are agreed between the Administrator and the Company." (*Id.* at § 8(b).) The Alpha Administration Agreement was governed by Bermuda law, and the parties submitted to the non-exclusive jurisdiction of the Bermuda courts to resolve any disputes relating to its terms. (*Id.* at § 20.) As in the case of the Alpha Custodian Agreement, the parties listed their addresses as being in Bermuda. (Alpha Administration Agreement § 14.) Simultaneously with the execution of the Alpha

---

[4]     This allegation is contradicted by other allegations and appears to be incorrect. BOB was acquired by HSBC Holdings plc in February 2004. (*Cross-Claim* at ¶ 4.) Prior to then, the sub-custodian duties were performed by its wholly-owned subsidiary, BOBL. (*See id.* at ¶ 3.) It was BOBL that entered into a sub-custodian agreement with BLMIS in September 2004, which it thereafter "transferred to HSSL" in May 2005. (*Id.* at ¶ 32.)

[5]     The *Cross-Claim* alleges that Management International (Bermuda) Limited was acting as agent for BOB. (*Cross-Claim* at ¶ 29.) Judging from the Novation Agreements discussed in the succeeding text, this appears to be the case.

Administration Agreement, BOB entered into a sub-administration agreement with HSSL. (*Cross-Claim* at ¶ 30.)[6]

By separate Novation Agreements dated Jan. 2, 2007, HITSB replaced BOB as the Custodian,[7] and HSSB replaced BOB as Administrator. (*See Fischer Declaration*, Ex. B.) The new Custodian and Administrator were also Bermuda entities. On or about September 8, 2004, and allegedly without Alpha's knowledge or consent, BOBL, the sub-custodian, entered into a sub-sub-custody agreement with BLMIS (the "BLMIS Sub-Custody Agreement"). (*Cross-Claim* at ¶ 32.)

Senator was formed under the laws of the Cayman Islands in July 2006. (*Cross-Claim* at ¶ 62.) On August 4, 2006, Senator and HSSL entered into a Custodian Agreement, (the "Senator Custodian Agreement") (*Moloney Declaration*, Ex. 2), and an Administration Agreement (the "Senator Administration Agreement" (*id.*, Ex. 3), and together with the Senator Custodian Agreement, the "Senator Agreements"). The custodial and administrative duties were substantially the same as those under the Alpha Agreements with one significant exception. The Senator Agreements were governed by Luxembourg law, and the parties agreed that "the courts of Luxembourg will have exclusive jurisdiction to resolve any disputes relating to the terms of this Agreement." (Senator Custodian Agreement at § 35; Senator Administration Agreement at § 26.) The *Cross-Claim* further alleges that Senator also became a party to or

---

[6]       For the reasons discussed in an earlier footnote, this is incorrect. BOB entered into a sub-administration agreement with BOBL, the predecessor to HSSL.

[7]       A copy of the Novation Agreement is annexed as Exhibit A to the *Declaration of Peter Fischer in Support of Response and Opposition of Alpha Prime Fund Limited and Senator Fund SPC to the HSBC Defendants' Motion to Dismiss the Amended Cross-Claims*, dated Apr. 8, 2015 (ECF Doc. # 381) ("*Fischer Declaration*").

beneficiary of the BLMIS Sub-Custody Agreement, (*Cross-Claim* at ¶ 34), without

Senator's knowledge or consent. (*Id.* at ¶ 101.)

With BOB and BOBL out of the picture after their acquisition by HSBC, the

following table reflects the relationships between the Funds and the HSBC Defendants:

|  | **Alpha** | **Senator** |
|---|---|---|
| **Administrator** | HSSB | HSSL |
| **Sub-Administrator** | HSSL | None |
| **Custodian** | HITSB | HSSL |
| **Sub-Custodian** | HSSL | BLMIS |
| **Sub-Sub-Custodian** | BLMIS | None |

Notably, Alpha had no direct contractual relationship with HSSL, and Senator had a

direct contractual relationship only with HSSL.

In addition, Alpha and HSBC Bank, a U.K. bank located in London, entered into a

foreign exchange facility, an overdraft facility and a currency swap agreement secured

by a pledge of the securities in Alpha's BLMIS account. (*Fischer Declaration* at ¶ 17 &

Ex. E.)  These agreements were governed by the laws of England and Wales, and the

parties irrevocably submitted to the non-exclusive jurisdiction of the courts of England

and Wales.  Senator implies that it was a party to similar agreements. (*See id.* at ¶ 17.)

Finally, "[i]n August 2007, the HSBC Defendants commenced a leverage program

enabling potential investors to invest with Senator.  Throughout August 2007 and

September 2007 investors invested in Senator using this leverage program, thereby

making HSBC Bank an investor in Senator. "The HSBC Defendants used this as additional comfort argument, asserting essentially that it had 'skin in the game'." (*Cross-Claim* at ¶ 63.)

## B.    The Trustee's Action

The Trustee commenced this adversary proceeding by filing a complaint on July 15, 2009, (ECF Doc. # 1), and he thereafter filed an amended complaint on December 5, 2010. (*See* "*Amended Complaint,*" dated Dec. 5, 2010 (ECF Doc. # 170).) His "short and plain statement" of his claims runs on for 564 paragraphs and 182 pages. The claims fall into two categories. First, the Trustee seeks to avoid and recover over $2 billion on account of fraudulent and preferential initial transfers made to various feeder funds by BLMIS, (*id.* at Counts 1, 3-9) and subsequent transfers made by the feeder funds to the HSBC Defendants in the form of fees.[8] (*Id.* at 2, 13-19.) Alpha and Senator are among the initial transferees named in the *Amended Complaint,* and the Trustee alleges that they received the following approximate amount of initial transfers within six years, two years and ninety days of the BLMIS filing date, December 11, 2008:[9]

|         | 6 Yr. Transfers | 2 Yr. Transfers | 90 Day Transfers |
|---------|------------------|------------------|-------------------|
| Alpha   | $ 85.8 million (¶ 334) | $ 78.2 million (¶ 323) | $ 49 million (¶ 344) |
| Senator | $ 95.4 million (¶ 336) | $ 95.4 million (¶ 325) | $ 95.2 million (¶ 346) |

---

[8]    There are additional HSBC entities joined as defendants in the *Amended Complaint,* (*see* ¶¶ 95, 97, 102-07), but they are not the subject of the Funds' cross-claims or the *HSBC Motion.* Unless otherwise stated, the HSBC Defendants referred to in this opinion are limited to the defendants on the cross-claims.

[9]    The relevant paragraphs of the *Amended Complaint* are noted parenthetically in the table.

7

All of these transfers involved the return of principal; neither Alpha nor Senator received fictitious profits, and they are net losers among BLMIS' investors.

The *Amended Complaint* did not identify any subsequent transfers, and instead, alleged upon information and belief that the HSBC Defendants and others "received subsequent transfers of the avoidable transfers referenced above." (*Amended Complaint* at ¶ 352.) However, the Trustee amplified this claim in a proposed *Second Amended Complaint*, dated June 26, 2015 ("*Proposed SAC*") (ECF Doc. # 399) proffered in connection with the HSBC Defendants' motion to dismiss based on extraterritoriality and comity. The Trustee alleged that Alpha transferred the aggregate approximate amount of $1,090,669 to HBB, HSSB, HITSB and/or HSSL, in monthly fees for the services they rendered as Alpha's custodian, administrator, registrar, sub-custodian, sub-administrator, sub-registrar, and payment bank from March 2003 to December 2008. (*Proposed SAC* at 384(b)(i).) The Court dismissed these subsequent transfer claims. *SIPC v. BLMIS* (*In re BLMIS*), Adv. Pro. No. 08-01789 (SMB), slip op. at 60-61 (Bankr. S.D.N.Y. Nov. 21, 2016). The *Proposed SAC* did not identify any subsequent transfers made by Senator to any of the HSBC Defendants. Accordingly, there are no pending subsequent transfer claims against the HSBC Defendants emanating from original transfers by BLMIS to either Fund.

Second, the *Amended Complaint* alleged "Common Law Claims" against the HSBC Defendants and others for unjust enrichment, aiding and abetting breach of fiduciary duty and aiding and abetting fraud, with damages exceeding $6.6 billion. (*Id.* at Counts 20-24). The Trustee asserted, in this regard, that the HSBC Defendants "enabled Madoff's Ponzi scheme by encouraging investment into an international

8

network of feeder funds" and "aided, enabled, and sustained the massive Ponzi scheme

masterminded by Madoff in order to reap an extraordinary financial windfall."

(*Amended Complaint* at ¶ 1.)  However, the Second Circuit concluded that the Trustee

lacked standing to assert the Common Law Claims and similar claims asserted in other

proceedings.  *Picard v. JPMorgan Chase & Co.* (*In re BLMIS*), 721 F.3d 54, 58 (2d Cir.

2013), *cert. denied*, 134 S. Ct. 2895 (2014).

## C.    The Funds' Cross-Claims

The Funds answered the *Amended Complaint* on May 27, 2011 and amended

their answer on December 8, 2014.  The latter pleading included twelve cross-claims.  It

did not allege a basis for subject matter jurisdiction, *see* FED. R. CIV. P. 8(a)(1), or

whether the cross-claims were core or non-core, and if non-core, whether the Funds

consented to the entry of a final judgment by the Court.  *See* FED. R. BANKR. P. 7008.

The following table summarizes the twelve causes of action that comprise the *Cross-*

*Claim*:

| C/A | Title of Cause of Action | Substance of Cause of Action |
|---|---|---|
| 1 | Fraud (¶¶ 73-83) | The HSBC Defendants misrepresented that they would supervise each sub-custodian periodically to confirm that they were discharging their obligations and protect the Funds' assets. |
| 2 | Fraudulent Concealment (¶¶ 84-97) | The HSBC Defendants failed to disclose the true facts learned from their due diligence and KPMG reports which identified and made them aware of the red flags surrounding Madoff and BLMIS. |
| 3 | Negligent Misrepresentation (¶¶ 98-109) | The Sub-Custody Agreement created a fiduciary relationship between the HSBC Defendants and Alpha and Senator, and the HSBC Defendants continually represented that they were conducting due diligence, and despite the red flags, they falsely represented that their due diligence revealed nothing of concern. |

9

| 4 | Breach of Fiduciary Duty (¶¶ 110-27) | Alpha and Senator entrusted assets to the HSBC Defendants, remained invested in BLMIS and lost over $30 million through the Foreign Exchange Facility in reliance upon their superior knowledge and paid them substantial sums, but the HSBC Defendants breached their fiduciary duty by failing to monitor and oversee their investments with BLMIS, including the making of misrepresentations and omissions relating to the safety of their BLMIS investments. |
|---|---|---|
| 5. | Breach of Contract (¶¶ 128-43) | The HSBC Defendants breached their contractual obligations, including failing to monitor BLMIS and its trading activities, failing to give notice prior to delegating custodial functions to BLMIS, and failing to supervise BLMIS' performance of custodial obligations once delegated. |
| 6 | Gross Negligence (¶¶ 144-50) | The HSBC Defendants relied on or failed to investigate information, negligently failed to oversee and monitor whether BLMIS held Alpha's and a Senator's assets and negligently relied on information provided by Madoff notwithstanding the red flags, his consolidated role as investment manager, custodian and execution agent and the manifest incorrectness of the information he supplied. |
| 7 | Negligence (¶¶ 151-56) | Same as the Sixth Cause of Action |
| 8 | Unjust Enrichment (¶¶ 157-61) | The HSBC Defendants received substantial fees for purported custody and oversight of Alpha and Senator's assets as a result of which they remained invested in BLMIS and lost over $30 million through the Foreign Exchange Facility. |
| 9 | Breach of Luxembourg Law (¶¶ 162-68) | HSSL's appointment of BLMIS as sub-custodian created a conflict of interest in violation of Luxembourg statutory law. |
| 10 | Breach of Custodian Agreements/Failure to Comply with CIS Regulations (¶¶ 169-73) | HSSL breached the Custodian Agreements and the CIS Regulations by failing to monitor BLMIS' trading, discover the various trading red flags or ask for confirmation of deposits with BLMIS and by failing to disclose the risks of BLMIS' simultaneous roles as broker-dealer/manager and custodian of Alpha's and Senator's assets. |
| 11 | Aiding and Abetting Fraud (¶¶ 174-77) | HSBC Bank aided and abetted the HSBC Defendants' fraud by utilizing KPMG and the KPMG reports to enable the HSBC Defendants to misrepresent the adequacy of the safeguards at BLMIS and the legitimacy of its operations. |

10

| 12 | Aiding and Abetting Breach of Fiduciary Duty (¶¶ 178-82) | The HSBC Defendants' aided and abetted BLMIS' breach of fiduciary duty by failing to inform Alpha and Senator of the breaches of fiduciary duty by BLMIS and by assuring that BLMIS was adequately safeguarding the assets of Alpha and Senator. |

### D.    The Funds' Foreign Actions

Prior to asserting the cross-claims, Alpha had sued HSSL in the Luxembourg District Court on October 20, 2009 for breach of contract and negligence in the appointment of BLMIS as sub-custodian of Alpha's assets ("Alpha Luxembourg Action").  (*See Declaration of François Kremer In Support of HSBC Defendants' Motion to Dismiss the Amended Cross-Claims of Cross-Claimants Alpha Prime Fund Limited and Senator Fund SPC*, dated Feb. 17, 2015 at ¶ 5 ("*Kremer Declaration*").) [10] Both parties have filed written submissions on the merits, and the matter is currently stayed.  (*Id.*)[11]

Senator also commenced an action against HSSL on December 4, 2014 in the Luxembourg District Court seeking restitution of its securities or, alternatively, money damages.  ("Senator Luxembourg Action").  (*Id.* at ¶ 6.)  Senator filed another action in Luxembourg on April 30, 2015 seeking the same damages against HSBC Bank.  (*See Supplemental Declaration of François Kremer In Support of HSBC Defendants' Motion*

---

[10]    A copy of the *Kremer Declaration* is attached to the *Moloney Declaration* as Ex. 1.

[11]    Counsel for the HSBC Defendants submitted a letter, dated Nov. 21, 2016 (ECF Doc. # 434) advising the Court of a filing made by Alpha in the Alpha Luxembourg Action which moved the proceeding "closer to trial posture."  (*Id.* at 1.)  Counsel for Alpha replied by letter, dated Nov. 22, 2016 (ECF Doc. # 435) stating that Alpha's submission was simply a "mandatory procedural step under Luxembourg law needed to maintain the *status quo.*"  (*Id.* at 1 (emphasis in original).)

*to Dismiss the Amended Cross-Claims of Cross-Claimants Alpha Prime Fund Limited and Senator Fund SPC*, dated May 8, 2015 at ¶ 11 ("*Kremer Supp. Declaration*").) [12]

Finally, Alpha filed a Writ of Execution on November 30, 2015 against the HSBC Defendants in Bermuda in order to preserve the Bermuda statute of limitations. According to the Funds, Alpha had until November 30, 2016 to file a full complaint in Bermuda. (*See Funds Opposition* (defined below) at 1 n. 2.)

**E.    Senator's Settlement With the Trustee**

In late 2014, the Trustee reached a settlement with Senator. (*Motion for Entry of Order Pursuant to Section 105(a) of the Bankruptcy Code and Rules 2002 and 9019 of the Federal Rules of Bankruptcy Procedure Approving a Settlement Agreement by and Between the Trustee and Senator Fund SPC*, dated Nov. 18, 2014 ("*Senator Settlement Motion*") (*See* ECF Doc. # 339).) Among other things, Senator received an allowed customer claim of $238,753,482, agreed to pay the Trustee $95 million from the catch-up distributions it was entitled to receive and agreed to share with the Trustee 50% of the proceeds from any judgment it obtained through its cross-claims, the Senator Luxembourg Action, and any other claims Senator brought against the HSBC Defendants or related entities. (*Settlement Agreement* at ¶¶ 1, 2, 9.)[13] Upon the closing, Senator and the Trustee would exchange mutual releases, (*id.* at ¶¶ 3, 4), and within five days of the closing, the parties would submit a stipulation dismissing the Trustee's

---

[12]    A copy of the *Kremer Supp. Declaration* is attached as Ex. 6 to the *Supplemental Attorney Declaration of Thomas J. Moloney In Support of HSBC Defendants' Motion to Dismiss*, dated May 8, 2015 (ECF Doc. # 387).

[13]    A copy of the *Settlement Agreement* is annexed to the *Senator Settlement Motion* as Exhibit A.

claims against Senator with prejudice.  (*Id.* at ¶ 6.)  The Court approved the settlement

on December 17, 2014, (*Order Pursuant to Section 105(a) of the Bankruptcy Code and

Rules 2002 and 9019 of the Federal Rules of Bankruptcy Procedure Approving a

Settlement Agreement by and Between the Trustee and Senator Fund SPC*, dated Dec.

17, 2014 (ECF Doc. # 350)), and the stipulation of dismissal on January 23, 2015.

(*Stipulation and Order for Voluntary Dismissal with Prejudice as To Senator Fund

SPC*, dated Jan. 23, 2015 (ECF Doc. # 364).)

### F.      The HSBC Defendants' Motion to Dismiss the *Cross-Claim*

The *HSBC Motion* seeks to dismiss the *Cross-Claim* on several grounds.  First,

the Court lacks "related to" jurisdiction and should not exercise supplemental

jurisdiction, (*id.* at 8-14), and in the case of Senator, should enforce the Senator

Agreements pursuant to which the parties submitted to the exclusive jurisdiction of the

Luxembourg courts to resolve any disputes relating to the Senator Agreements.  (*Id.* at

15-18.)  Second, the Court should defer to pending suits in Luxembourg brought by

Alpha and Senator under principles of comity, (*id.* at 18-22), and *forum non conveniens*.

(*Id.* at 22-31.)  Third, the Funds failed to make a *prima facie* showing that the Court has

personal jurisdiction.  (*Id.* at 31-40.)

The Funds opposed the *HSBC Motion*.  (*See Memorandum of Law in Response

and Objection to [sic] Cross-Claim Plaintiffs Alpha Fund Limited and Senator Fund

SPC to the HSBC Defendants' Motion to Dismiss the Amended Cross-Claims*, dated Apr.

8, 2015 ("*Funds Opposition*") (ECF Doc. # 379).)  According to the Funds, the Court has

"related to" jurisdiction over the *Cross-Claim* because the same allegations are directly

relevant to the Funds' "good faith" defense under 11 U.S.C. § 548(c) to the two-year

13

fraudulent transfer claims and the equitable subordination claim (defined by the Funds as the "Funds' Defenses"). (*Id.* at 13.) Alternatively, the Funds argue that the Court may exercise supplemental jurisdiction because the cross-claims "substantially overlap" with the Trustee's claims. (*Id.* at 18-23.) Next, the Funds assert that the *forum non conveniens* factors weighed in favor of adjudicating the *Cross-Claim* in this Court. (*Id.* at 23-35.) Finally, the Funds argue that the HSBC Defendants had sufficient contacts with the United States to confer specific personal jurisdiction over them. (*Id.* at 35-40.)

The HSBC Defendants replied in further support of the *HSBC Motion* reiterating their arguments for dismissal. (*See Reply Memorandum of Law in Further Support of the HSBC Defendants' Motion to Dismiss the Amended Cross-Claims of Alpha Prime Fund Limited and Senator Fund SPC*, dated May 8, 2015 ("*HSBC Reply*") (ECF Doc. # 388).) Following oral argument, the parties submitted several letters to the Court supplementing their arguments. (*See* ECF Doc. ## 395, 401, 422, 423, 430, 431, 434, 435.)

## DISCUSSION

When considering a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure, made applicable to adversary proceedings pursuant to Rule 7012(b) of the Federal Rule of Bankruptcy Procedure, the court must accept as true material factual allegations in the complaint but need not draw inferences favorable to the plaintiff. *J.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004), *cert. denied*, 544 U.S. 968 (2005); *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998). A court may consider materials outside the pleadings to resolve jurisdictional disputes, but cannot rely on conclusory or

14

hearsay evidence. *J.S.*, 386 F.3d at 110; *Zappia Middle E. Constr. Co. Ltd. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000). The party asserting jurisdiction bears the burden of proof. *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994).

The Funds assert that the Court may exercise "related to" jurisdiction over the *Cross-Claim* pursuant to 11 U.S.C. § 1334(b) or, alternatively, supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).

## A.    "Related to" Jurisdiction

Title 28, § 1334(b) grants the district court, *inter alia*, original but non-exclusive jurisdiction over all civil proceedings related to cases under title 11.[14] "Related to" or non-core proceedings are those whose outcome might have a "conceivable effect" on the estate. *Publicker Indus. Inc. v. United States* (*In re Cuyahoga Equip. Corp.*), 980 F.2d 110, 114 (2d Cir.1992); *Pacor, Inc. v. Higgins* (*In re Pacor, Inc.*), 743 F.2d 984, 994 (3d Cir.1984); *overruled in part on other grounds by Things Remembered, Inc. v. Petrarca*, 516 U.S. 124, 124–25 (1995). "An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." *Pacor*, 743 F.2d at 994; *accord Celotex Corp. v. Edwards*, 514 U.S. 300, 308 n. 6 (1995); *Parmalat Capital Fin. Ltd. v. Bank of Am. Corp.*, 639 F.3d 572,

---

[14]    Title 28, § 157 authorizes the district court to refer its bankruptcy jurisdiction to the bankruptcy court, and the United States District Court for the Southern District of New York has referred its bankruptcy jurisdiction to this Court. *Order*, No. M 10-450 (S.D.N.Y. July 10, 1984), as amended by *Amended Standing Order of Reference*, No. M 10-468, 12 Misc. 00032 (S.D.N.Y. Jan. 31, 2012). In addition, as discussed in the next footnote, SIPA includes a separate grant of jurisdiction.

579 (2d Cir. 2011).[15]  The Funds argue that the cross-claims are "related to" to the
BLMIS SIPA liquidation because the allegations supporting the cross-claims are the
same as those supporting the Funds' Defenses, and the adjudication of the cross-claims
"will effectively decide the Funds' defenses against the Trustee . . . ." (*Funds Opposition*
at 15.)

I disagree; the outcome of the cross-claims will not have any conceivable effect on
the BLMIS estate, and will not alter the BLMIS estate's "rights, liabilities, options, or
freedom of action (either positively or negatively)."  The Trustee is suing the Funds, or is
at least still suing Alpha, to recover initial fraudulent transfers and equitably
subordinate its SIPA customer claims.  He also sued the HSBC Defendants to recover
subsequent transfers but those claims have been dismissed.  Alpha and Senator, on the
other hand, are suing the HSBC Defendants for breach of contract, breach of fiduciary
duty, negligence, gross negligence, violations of Luxembourg law, aiding and abetting
and fraud based on the loss of their investments and the fees they paid.  Their claims

---

[15]      SIPA provides that bankruptcy courts will conduct liquidation proceedings, 15 U.S.C. §
78eee(b)(4), and the jurisdiction of bankruptcy courts in SIPA proceedings is akin to its jurisdiction of
cases under title 11.  *See* 15 U.S.C. § 78eee(b)(2)(A) (A SIPA court "(i) shall have exclusive jurisdiction of
such debtor and its property wherever located . . .; (ii) shall have exclusive jurisdiction of any suit against
the trustee with respect to a liquidation proceeding; and (iii) except as inconsistent with [SIPA], shall have
the jurisdiction, powers and duties conferred upon a court of the United States having jurisdiction over
cases under title 11, together with such other jurisdiction, powers, and duties as are prescribed by this
chapter."); *accord SIPC v. Cheshier & Fuller, L.L.P.* (*In re Sunpoint Sec., Inc.*), 262 B.R. 384, 392-95
(Bankr. E.D. Tex. 2001) (Bankruptcy Court may exercise "related to" jurisdiction under 15 U.S.C. §
78eee(b)(2)(A)(iii) over state law claims sounding in negligence, negligent misrepresentation, breach of
contract, and breach of warranty).  I therefore reject the HSBC Defendants' argument that this Court may
not exercise jurisdiction over "related to" proceedings in SIPA cases.  (*See HSBC Motion* at 9-10; *HSBC
Reply* at 3 n. 2.)

exist independent of the Trustee's claims and win or lose, the outcome of the *Cross-Claim* litigation will not affect the SIPA estate.

While there is some factual overlap regarding the issues of Alpha's knowledge of Madoff's fraud and the HSBC Defendants' performance of their duties as alleged in the *Cross-Claim*, overlapping facts are relevant to supplemental jurisdiction, discussed below, but do not create "related to" bankruptcy jurisdiction. *Pacor*, 743 F.2d at 994 ("[T]he mere fact that there may be common issues of fact between a civil proceeding and a controversy involving the bankruptcy estate does not bring the matter within the scope" of related to jurisdiction.). Moreover, the Funds admit that the outcome of the cross-claims will not bind the Trustee under *res judicata*. (*Funds Opposition* at 15.) The lack of any preclusive effect on the BLMIS estate's claims further demonstrates that the claims between third-parties are not "related to" the BLMIS liquidation. *Pacor*, 743 F.2d at 995 (noting that the bankruptcy estate was not affected by the third party action between Pacor and Higgins because the debtor would not be precluded from relitigating any issue in response to a claim asserted by Pacor against the estate).

Senator's settlement, and its agreement to split the proceeds of Senator's actions against the HSBC Defendants, also do not support its assertion of "related to" jurisdiction. It is "hornbook law . . . taught to first-year law students" that "the jurisdiction of a court depends on the state of things at the time of the action brought," *Grupo Dataflux v. Atlas Global Grp., L.P.*, 541 U.S. 567, 570-71 (2004) (quoting *Mollan v. Torrance,* 9 Wheat. 537, 539 (1824)), although a plaintiff may be able to cure a jurisdictional defect other than lack of diversity by filing an amended pleading which then becomes the operative pleading for jurisdictional purposes. *Northstar Fin.*

17

*Advisors Inc. v. Schwab Invs.,* 779 F.3d 1036, 1043–48 (9th Cir.) (discussing use of supplemental pleading after post-complaint assignment to cure defect in standing), *cert. denied*, 136 S. Ct. 240 (2015).  Senator (and Alpha) filed the *Cross-Claim* – the operative pleading – on December 8, 2014, but the Court did not approve the settlement until December 17, 2014, and the assignment of the proceeds did not become effective until the closing sometime thereafter.  Accordingly, the BLMIS estate lacked any interest in the Senator cross-claims when they were asserted, and the post-filing assignment did not cure the jurisdictional defect.[16]

Senator's principal authority, *Savage & Assocs., P.C. v. Mandl* (*In re Teligent, Inc.*), 459 B.R. 190 (Bankr. S.D.N.Y. 2011), is distinguishable.  There, a litigation trustee (Savage) had entered into a post-judgment settlement agreement with Mandl, the judgment-debtor, following a mediation.  The settlement, which was approved by the Court, required Mandl to bring a malpractice action against his former lawyers, and pay 50% of the net recovery to the Teligent estate (the "Proceeds Assignment").  Mandl commenced the action in the District of Columbia, and the D.C. defendant asserted an

---

[16]    Nor does the order approving the settlement with Senator supply a basis to exercise jurisdiction over Senator's cross-claims.  The order provided that "this Court shall retain jurisdiction to hear and determine all matters arising from or related to this Order."  The cross-claims did not arise from the order, and while they arguably "related to" the order in the broadest sense, the order could not confer subject matter jurisdiction over cross-claims that did not fall within the Court's "related to" jurisdiction granted under title 28.  *Binder v. Price Waterhouse & Co., LLP* (*In re Resorts Int'l, Inc.*), 372 F.3d 154, 161 (3d Cir. 2004) ("Retention of jurisdiction provisions will be given effect, assuming there is bankruptcy court jurisdiction.  But neither the bankruptcy court nor the parties can write their own jurisdictional ticket."); *accord Omega Corp. v. United States* (*In re Omega Corp.*), 173 B.R. 830, 834 (Bankr. D. Conn. 1994) ("Even where the plan provides for a broad retention of jurisdiction, 'a bankruptcy court obviously cannot expand its subject matter jurisdiction beyond the jurisdiction grant provided in 28 U.S.C. § 1334.'") (quoting *United States Lines, Inc. v. Am. S.S. Owners Mut. Prot. and Indem. Ass'n Inc.* (*In re United States Lines, Inc.*), 169 B.R. 804, 816 (Bankr. S.D.N.Y. 1994)).

18

affirmative defense that the Proceeds Assignment was unlawful.  It also demanded the blanket production of all mediation materials.  *Id.* at 193-94.

Savage, who was not a party to the D.C. action, moved in this Court to block the production and prevent the D.C. defendant from challenging the Proceeds Assignment. She argued that the mediation materials were confidential under orders of this Court, and the D.C. defendant was collaterally estopped from attacking the validity of the Proceeds Assignment because it had received notice of the application to approve her settlement with Mandl and had failed to object.  The Court concluded that the D.C. defendant was not collaterally estopped from challenging the validity of the Proceeds Assignment in the D.C. litigation, but had failed to sustain its burden of showing that he was entitled to a blanket lifting of the confidentiality provisions of the Court's mediation order.  The D.C. defendant was nevertheless free to argue before the D.C. court that a specific communication was not covered by the confidentiality provisions or that the communication should nevertheless be disclosed pursuant to applicable law.  The District Court and Court of Appeals affirmed.  *Id.* at 194.

Following the Second Circuit's affirmance, the D.C. defendant again sought all the mediation materials during discovery in the D.C. lawsuit.  Savage thereupon moved in this Court for certain injunctive relief the effect of which would have required the D.C. defendant to seek any mediation materials in this Court.  In addition, she contended that this Court had *exclusive* jurisdiction to determine the validity of the Proceeds Assignment, an affirmative defense in the D.C. action.  *Id.* at 194-95.

The Court rejected the jurisdictional argument.  No one contested that the Court had "related to" jurisdiction to decide the validity of the Proceeds Assignment because the estate had a 50% interest in any recovery, but it did not have *exclusive* jurisdiction. The D.C. court had concurrent jurisdiction to determine the D.C. defendant's affirmative defense, and the Court deferred to the D.C. court.  *Id.* at 195-98.  Importantly, the jurisdictional question concerned the Court's power to determine the validity of the Proceeds Assignment, a component of a settlement that it had approved, and the Teligent estate acquired its interest in the proceeds before Savage invoked this Court's jurisdiction to decide its validity and prevent the D.C. court from doing so.

The Teligent decision cited *Balzotti v. RAD Invs.*, 273 B.R. 327 (D.N.H. 2002) in support of its conclusion that the assignment gave the Court "related to" jurisdiction, and Senator also relies on that case.  There, the members of a chapter 11 debtor that owned real estate found a purchaser for their interests and the real estate, but the buyer defaulted.  The bankruptcy court appointed a chapter 11 trustee, the members assigned the first $200,000 of any recovery on their breach of contract claim to the trustee, and the trustee and the members commenced an adversary proceeding against the buyers. The trustee joined as a plaintiff only on the breach of contract claim.  *Id.* at 329-30.

The bankruptcy court dismissed the adversary proceeding for lack of subject matter jurisdiction, but the district court reversed.  It ruled that the assignment of the proceeds gave the bankruptcy estate a sufficient stake in the outcome to bring the plaintiffs' claims within the bankruptcy court's "related to" jurisdiction, and rejected the argument that the assignment was an improper or collusive attempt to invoke the bankruptcy court's jurisdiction in violation of 28 U.S.C. § 1359.  *Id.* at 331.  As in

*Teligent*, the assignment occurred before the bankruptcy court's jurisdiction was invoked by the filing of the adversary proceeding.

Accordingly, the Court concludes that it lacks "related to" jurisdiction over the *Cross-Claim*.

## B.    Supplemental Jurisdiction

Alternatively, the Funds argue that the Court may exercise supplemental jurisdiction over the cross-claims.  Pursuant to 28 U.S.C. § 1367(a), "in any civil action of which the district courts have original jurisdiction, district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."[17]  Claims are "part of the same case or controversy" when they "derive from a common nucleus of operative fact," *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 335 (2d Cir. 2006) (quoting *Promisel v. First Am. Artificial Flowers Inc.*, 943 F.2d 251, 254 (2d Cir. 1991)), and "are such that [the claimant] would ordinarily be expected to try them all in one judicial proceeding...." *Semi-Tech Litig. LLC v. Bankers Trust Co.*, 234 F. Supp. 2d 297, 300 (S.D.N.Y. 2002) (quoting *Promisel*, 943 F.2d at 254).[18]

---

[17]    The Second Circuit has ruled that bankruptcy courts may exercise supplemental jurisdiction.  *See Klein v. Civale & Trovato, Inc.* (*In re Lionel Corp.*), 29 F.3d 88, 92 (2d Cir. 1994).

[18]    Curiously, the Funds answer denied the Court's subject matter jurisdiction over the Trustee's claims, (*compare Amended Complaint* at ¶ 25 *with Answer* at ¶ 25), but now argue that the Court has supplemental jurisdiction based on its original jurisdiction over the Trustee's claims.

A court that has supplemental jurisdiction may nevertheless decline in its

discretion to exercise it.  Section 1367(c) states:

> The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if--
>
> (1)  the claim raises a novel or complex issue of State law,
>
> (2)  the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3)  the district court has dismissed all claims over which it has original jurisdiction, or
>
> (4)  in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

The Funds argue that the facts underlying the cross-claims substantially overlap

with the Funds' Defenses to the Trustee's two-year fraudulent transfer and equitable

subordination claims.[19]  (*Funds Opposition* at 18-19.)  In the context of the two-year

fraudulent transfer claims, the question is whether the Funds wilfully blinded

themselves, and therefore, did not act in good faith within the meaning of 11 U.S.C. §

548(c) when they received the two-year transfers.[20]  *See SIPC V. BLMIS* (*In re BLMIS*),

516 B.R. 18, 21 (S.D.N.Y. 2014) (lack of good faith requires a showing of willful

blindness).  "Willful blindness" involves two elements, (1) belief that there is a high

probability that a fact exists, and (2) deliberate actions to avoid learning of that fact.

*Global–Tech Appliances, Inc. v. SEB S. A.,* 563 U.S. 754, 769 (2011).  Likewise, the

Trustee may "potentially subordinate [the Funds' claims against BLMIS] by proving that

---

[19]      The Funds do not contend that the cross-claims overlap with the Trustee's six-year fraudulent transfer claims despite the fact that the Trustee must demonstrate that the Funds had actual knowledge that BLMIS was not trading securities to recover the transfers made during years three through six.  *See SIPC v. BLMIS* (*In re BLMIS*), No. 12 mc 115 (JSR), 2013 WL 1609154, at *4 (S.D.N.Y. Apr. 15, 2013).

[20]      The entirety of the transfers the Trustee sought to avoid and recover from the Funds and the subsequent transferees related to the withdrawal of principal.  Thus, the Funds gave value for the transfers within the meaning of 11 U.S.C. § 548(c).

the [Funds] invested with [BLMIS] with knowledge, or in reckless disregard, of its fraud." *Picard v. Katz*, 462 B.R. 447, 456 (S.D.N.Y. 2011); *accord Picard v. Merkin* (*In re BLMIS*), 515 B.R. 117, 158 (Bankr. S.D.N.Y. 2014). I refer to these generally as knowledge issues. The overlapping knowledge issues in the Funds' Defenses and their cross-claims are whether the HSBC Defendants informed the Funds that BLMIS was a Ponzi scheme, and possibly, whether the HSBC Defendants acquired knowledge they did not pass on that might be imputable to the Funds.

The Court concludes that it lacked supplemental jurisdiction over the cross-claims at the time they were asserted because the Trustee's claims and the cross-claims do not arise out of the same nucleus of facts. *Semi-Tech* illustrates why. There, the plaintiff's predecessor, *Semi-Tech*, issued certain notes pursuant to an indenture. The plaintiff sued the indenture trustee for breach of fiduciary duty, and violation of the Trust Indenture Act (the "TIA"), the former auditors for fraud, negligent misrepresentation and malpractice, and certain former officers and directors of Semi–Tech for breach of fiduciary duty, negligence, fraud and conspiracy to commit fraud. 234 F. Supp. 2d at 298. As summarized by District Judge Kaplan:

> The complaint alleges a long series of transactions commencing in late 1995 and continuing into 1999 by which, plaintiff claims, Semi–Tech acted dishonestly and/or imprudently and breached its obligations under the indenture. It charges that [the indenture trustee] breached its obligations to the note holders under the indenture and the TIA and its fiduciary duties by failing to protect adequately the note holders against these wrongs and by accepting deficient certificates from Semi–Tech officers that purported to affirm compliance with various requirements under the indenture agreement.

*Id.* at 299 (footnote omitted).

Three outside directors residing in Canada moved to dismiss on several grounds including lack of subject matter jurisdiction. The District Court rejected the plaintiff's contention that the claims against the movants were supported by supplemental jurisdiction. After explaining the applicable standard for the exercise of supplemental jurisdiction, *id.* at 300, the District Court contrasted the issues relating to the TIA claim, over which it had original jurisdiction, and the claims against the movants. The TIA claim was "exceedingly narrow," alleging that the indenture trustee failed to examine various officers' and auditors' certificates, accepted deficient certificates and failed to warn the noteholders of the defaults. The TIA claim would be resolved by comparing the certificates that were provided with the requirements of the TIA. *Id.* The claims against the movants were much broader. Their resolution went to the "substance and fairness of the allegedly dishonest or imprudent Semi–Tech transactions, the states of mind and conduct of the directors, and other such issues that are irrelevant, or virtually so, to the TIA claim against [the indenture trustee]." *Id.*

Here, the claims are raised by different parties, and like *Semi-Tech*, require different proof. The Trustee's claims against the Funds (and the HSBC Defendants) are based on the damage to the customer property estate resulting from the money that the Funds withdrew from BLMIS; the Funds' claims against the HSBC Defendants are primarily based on the damages they suffered because they left the rest of their money in. The issues that must be decided to resolve the Trustee's fraudulent transfer and equitable subordination claims are relatively narrow and straightforward: (1) did the Funds receive the transfers, which is easily proved through BLMIS' bank records if there is a dispute, and (2) did the Funds know that BLMIS was a Ponzi scheme.

24

The issues raised by the cross-claims require different and far more extensive proof. The Funds assert that the HSBC Defendants failed to adequately investigate and monitor the Fund's investments and BLMIS' role as sub-custodian, made misrepresentations, failed to warn the Funds and "were, or should have been, well aware of the fraud surrounding BLMIS." (*Cross-Claim* at ¶ 52.) Although there is some overlap between the Funds' knowledge and the HSBC Defendants' activities, the Trustee's claims do not require the Court to decide whether the HSBC Defendants "should have known" BLMIS was a Ponzi scheme or whether they committed the numerous acts of malfeasance and nonfeasance alleged in the *Cross-Claim*.

Moreover, the parties' various agreements raise a host of other issues that would bear upon the HSBC Defendants' liability on the cross-claims but have nothing to do with the Trustee's claims. For example, each Custodian and Administration Agreement limits the HSBC contract party's liability to acts involving fraud, gross negligence or willful default, (Senator Custodian Agreement at § 15.7; Senator Administration Agreement at § 8.2), and in Alpha's case, dishonesty as well. (Alpha Custodian Agreement at § 15(G); Alpha Administration Agreement at § 9(B).) In adjudicating the cross-claims, the Court might have to distinguish between mere negligence and gross negligence. That distinction, however, is immaterial to the claims asserted by the Trustee. If the HSBC Defendants did not learn that BLMIS was a Ponzi scheme, it doesn't matter if they did their jobs poorly or not at all.

Finally, both Administration Agreements state that the Administrator may provide similar services to other entities, and will not "be deemed to be affected with notice of or to be under a duty to disclose to the Company . . . any fact or thing which

may come to the knowledge of the Administrator . . . in the course of so doing or in any manner whatever otherwise than in the course of carrying out the duties . . . hereunder." (Senator Administration Agreement at § 7(d); Alpha Administration Agreement at § 8(d).)  The *Cross-Claim* alleges that HSSL knew or recklessly failed to know that BLMIS could not have executed trades at the listed prices because HSSL administered up to ten other funds where BLMIS acted as broker.  (*Cross-Claim* at ¶ 44.)  If HSSL learned BLMIS was not actually trading securities in the course of performing administration duties for one of these other funds, it would not have been required under the Administration Agreements (assuming it had any duty to Alpha under the Alpha Administration Agreement) to disclose that information to either of the Funds. Accordingly, the Court lacks supplemental jurisdiction over the *Cross-Claim*.

But even if the Court could exercise supplemental jurisdiction, it would decline in its discretion to do so.  The decision not to exercise supplemental jurisdiction over the Senator cross-claims is an obvious one.  The Court has dismissed all of Trustee's initial transfer claims against Senator by agreement of the parties, and all of the subsequent transfer claims against the HSBC Defendants although the Trustee never identified any such claims involving initial transfers to Senator.  Accordingly, all of the claims relating to the Senator transfers over which the Court had original jurisdiction have been dismissed.  *See* 28 U.S.C. § 1367(c)(3).  In addition, with the dismissal of the Senator-related claims brought by the Trustee, the Senator cross-claims are the only remaining claims involving Senator, and plainly predominate.  *See* 28 U.S.C. § 1367(c)(2).

Furthermore, Senator and HSSL submitted to the exclusive jurisdiction of the Luxembourg courts under the Senator Agreements to resolve any disputes relating to

their terms.  As a consequence, any disputes relating to the terms of the Senator

Agreements were improperly venued in this Court.[21]  *See Phillips v. Audio Active Ltd.*,

494 F.3d 378, 383-84 (2d Cir. 2007).  Senator asserts that the mandatory forum

selection clause should not be enforced because HSSL engaged in fraud and

overreaching.  It contends that it delegated its custodian duties to BLMIS without

Senator's knowledge or authorization, and had Senator known that HSSL would not be

performing any of the duties under the Senator Custodian Agreement it would never

have signed the contract.  (*Funds Opposition* at 29.)

The argument ignores the express terms of the Senator Custodian Agreement.

HSSL was permitted to delegate all of its duties to a sub-custodian and authorize the

sub-custodian to delegate all of its duties to a sub-sub-custodian.  (Senator Custodian

Agreement at § 15.2) ("In performing its duties hereunder the Custodian may at the

expense of the Segregated Portfolio appoint such Correspondents as may be necessary to

perform *in whole* or in part any of the duties and discretions of the Custodian (including

in such appointment the powers of sub-delegation)." (emphasis added).)[22]  The only

limitation was that HSSL remained responsible for any acts or omissions of the sub-

custodian.  (*Id.*)

Finally, Senator also commenced actions against HSSL in the Luxembourg

District Court seeking restitution of its securities or, alternatively, money damages, and

---

[21]     The HSBC Defendants read the submission to jurisdiction broadly while Senator reads it
narrowly.  The scope of the clause presents a question of Luxembourg law.  Nevertheless, it is obvious that
many of the disputed issues, including the scope of HSSL's duties and the limitations on its liability, relate
to the Senator Agreements.

[22]     The term "Correspondents" includes "sub-custodians."  (Senator Custodian Agreement at § 1.1.)

has filed a second action in Luxembourg against HSBC Bank seeking the same damages.

As discussed immediately below, the cross-claims involve novel and complex issues of

foreign law that are best decided by the foreign courts before whom similar claims are

currently pending.

The Trustee's fraudulent transfer and equitable subordination claims remain

pending against Alpha although the subsequent transfer claims against the HSBC

Defendants have been dismissed.  Nevertheless, the Court declines to exercise

supplemental jurisdiction over Alpha's cross-claims for many of the same reasons as the

Senator cross-claims.  A court may decline to exercise supplemental jurisdiction under §

1367(c)(1) over a claim that raises complex issues of foreign law.  *Carpenter Co. v. BASF

SE* (*In re Urethane Antitrust Litig.*)*,* 683 F. Supp. 2d 1214, 1221 (D. Kan. 2010)

(declining to exercise supplemental jurisdiction over complex, novel developing area of

European antitrust law); *Empagran, S.A. v. F. Hoffman-La Roche Ltd.*, 453 F. Supp. 2d

1, 9-13 (D.D.C. 2006) (same); *Mars Inc. v. Nippon Conlux Kabushiki-Kaisha*, 825 F.

Supp. 73, 76 (D. Del. 1993) (declining to exercise supplemental jurisdiction over claim of

infringement of Japanese patent because "the principles embodied in [28 U.S.C. §

1367(c)(1)] are implicated by complex issues of foreign as well as state law"), *aff'd*,  24

F.3d 1368 (Fed. Cir. 1994).

The foreign law issues in this case may not seem complex at first glance, but they

are.  Only three HSBC Defendants contracted directly with Alpha:  HITSB (which

replaced Bank of Bermuda as the Custodian), HSSB (which replaced Bank of Bermuda

as the Administrator) and HSBC Bank, which entered into the foreign exchange facility,

overdraft facility and currency swap agreement.  Each of the HSBC contract parties is a

foreign entity, and their agreements with Alpha are governed by Bermuda law in the case of the Alpha Agreements or the laws of England and Wales in the case of the HSBC Bank agreements.

Alpha has nonetheless asserted contract-based claims against all of the HSBC Defendants, including HSSL.  As a result of the novations, Alpha contracted directly with HITSB and HSSB.  Alpha had no direct contractual relationship with HSSL. While HITSB and HSSB may be vicariously liable for HSSL's misdeeds under the Alpha Custodian Agreement and the Alpha Administration Agreement, respectively, it is not clear why HSSL is also liable to Alpha for breach of contract.  Alpha has sued HSSL in Luxembourg, and has obtained a Writ of Execution against the HSBC Defendants in Bermuda.  The Bermuda and Luxembourg courts are in better positions to determine if Alpha can assert direct claims against HSSL and the other HSBC Defendants for the Custodian's or the Administrator's breach of contract, whether HSSL violated Luxembourg law, and whether the HSBC Defendants can invoke the limitations on liability in the Alpha Agreements.

The non-contract claims also present difficult questions of foreign law.  Alpha has asserted claims for breach of fiduciary duty, negligence, gross negligence and fraud.  It has also asserted claims for aiding and abetting fraud and aiding and abetting breach of fiduciary duty.  These claims are primarily based on or derive from the same allegations as the breach of contract claims; the HSBC Defendants failed to conduct due diligence, failed to monitor Alpha's investments with BLMIS, improperly retained BLMIS as sub-custodian and failed to warn Alpha about the red flags indicating that Madoff was a fraud.  The separate existence of any fiduciary or other non-contractual duties, the

aiding and abetting the breaches of those duties and the availability of the contract

defenses to the non-contract claims must be determined under foreign law.

But the unspoken issue of foreign law hinted at by Alpha (and Senator) is the

notion of joint and several liability. With the exception of claims based on violations of

Luxembourg law and aiding and abetting fraud, the *Cross-Claim* lumps all of the HSBC

Defendants together and implies that each is liable for the acts of every other HSBC

Defendant. HSBC Bank is the clearest example. HSBC Bank did not provide any

custodial or administration services to Alpha. It provided banking services. Yet Alpha

asserts that HSBC Bank along with the other HSBC Defendants is liable based on the

breach of contract, breach of fiduciary duty, tort and other claims arising from the

failure to investigate BLMIS or monitor trades, hiring BLMIS as a sub-custodian,

misrepresenting the safety of Alpha's BLMIS investments or warning Alpha that BLMIS

was a fraud. Specifically, the *Cross-Claim* alleges that "the HSBC Defendants [including

HSBC Bank] delegated their responsibilities as custodians of Alpha Prime's and Senator

Fund's funds to Madoff and BLMIS without assuring and performing the proper

supervision they claimed to perform," (*Cross-Claim* at ¶ 1), "intentionally concealed

from Alpha Prime and Senator Fund all the troubling information that their unique

access to Madoff and BLMIS provided, access based upon their foundational and much

trumpeted role in organizing and administering numerous Madoff investment 'feeder

funds' by which they directed billions of dollars into the coffers of BLMIS and earned

millions of dollars in fees," (*id.*), "fraudulently and repeatedly represented to Alpha

Prime and Senator Fund that they were properly supervising BLMIS on multiple fronts,"

(*id.* at ¶ 2), and "crafted an elaborate electronic database accessible through the internet

30

which they fed with various statistics on Madoff operations, creating the impression of constant actual trading activity being conducted by BLMIS on behalf of Alpha Prime and Senator, with the watchful supervision and control of that activity by the HSBC Defendants." (*Id.*) The *Cross-Claim* further asserts that the "HSBC Defendants knowingly, intentionally and improperly failed to disclose the BLMIS Sub-Custody Agreements and the New Customer Agreements to Alpha Prime or Senator Fund prior to entering into these agreements," (*id.* at ¶ 37), and although "the HSBC Defendants delegated their responsibilities under the Custodian Agreement, the HSBC Defendants remained 'responsible to [Alpha Prime and Senator Fund] for any acts or omissions of any ... person howsoever appointed as if such acts or omissions were those of the Custodian.' Therefore, despite this delegation, the HSBC Defendants remained contractually liable for the actions or inactions of BLMIS." (*Id.* at ¶ 38.)

These allegations highlight the Funds unstated assumption that alter ego, conspiracy or some other joint liability theory applies under the governing foreign law. The notion of joint liability may or may not exist under Bermuda and/or Luxembourg law, but even if it does, the elements of the claim may differ from domestic law. Given the numerous and difficult issues of foreign law raised by the cross-claims, the Court declines to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c)(1).

In addition, I decline to exercise supplemental jurisdiction because the cross-claims substantially predominate over the issues raised by the Trustee's claims. *See* 28 U.S.C. § 1367(c)(2). "Where the state claims 'constitute the real body of a case' to which federal claims are 'an appendage,' declining jurisdiction under this provision is appropriate to prevent a situation wherein 'permitting litigation of all claims in the

district court can accurately be described as allowing a federal tail to wag what is in substance a state dog.'" *City of New Rochelle v. Town of Mamaroneck*, 111 F. Supp. 2d 353, 371 (S.D.N.Y. 2000) (quoting *State of New York v. Phillip Morris Inc.,* No. 97 Civ. 794 (LMM), 1998 WL 2574, at *2 (Jan. 5, 1998 S.D.N.Y. 1998) (in turn quoting *Borough of W. Mifflin v. Lancaster,* 45 F.3d 780, 789 (3d Cir. 1995))). The same reasons that support the conclusion that the Court lacks supplemental jurisdiction also lead to the corollary that the issues raised by the *Cross-Claim* predominate. *See, e.g., Semi-Tech*, 234 F. Supp. 2d at 301 (The Court would decline to exercise supplemental jurisdiction, even if it had it, because "[t]he factual and legal questions unique to the common law claims against the moving defendants simply overwhelm any questions common to the TIA claims against [the indenture trustee].") (footnote omitted).

As discussed, the Trustee's initial transfer claims are relatively straightforward. The various knowledge tests in the Trustee's direct case are subjective; the question is what Alpha subjectively knew and not what it should have known. Even if the HSBC Defendants' knowledge can be imputed to Alpha, the question is the same: what did the HSBC Defendants subjectively know? Whether the HSBC Defendants *should have been aware* of BLMIS fraud, (*see Cross-Claim* at ¶ 52), is not relevant nor is their failure to conduct due diligence of BLMIS or monitor Alpha's investments. These breaches of duty, whether contractual, tortious or statutory, will overwhelm the issues that the Court must decide to resolve the Trustee's initial transfer claims.

Accordingly, the Court concludes that it lacks subject matter jurisdiction over the *Cross-Claim* under 28 U.S.C. § 1334 or supplemental jurisdiction under 28 U.S.C. § 1367(a), but to the extent that supplemental jurisdiction exists, the Court declines in its

discretion to exercise it.  In light of this conclusion, the Court does not reach the other

grounds for dismissal urged by the HSBC Defendants.  Settle order on notice.


Dated:  New York, New York
        December 14, 2016


                                        /s/ *Stuart M. Bernstein*
                                        STUART M. BERNSTEIN
                                        United States Bankruptcy Judge