**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (SMB) |
| Plaintiff-Applicant, | SIPA Liquidation |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |

**AFFIDAVIT OF VINEET SEHGAL IN SUPPORT OF THE TRUSTEE'S MOTION FOR AN ORDER APPROVING THE EIGHTH ALLOCATION OF PROPERTY TO THE FUND OF CUSTOMER PROPERTY AND AUTHORIZING EIGHTH INTERIM DISTRIBUTION TO CUSTOMERS**

CITY OF WASHINGTON    )
                     ) ss:
DISTRICT OF COLUMBIA )

Vineet Sehgal, being duly sworn, deposes and says:

1.  I am a Managing Director at AlixPartners LLP ("AlixPartners"). I make this affidavit to transmit to the Court information relevant to the motion by Irving H. Picard, trustee (the "Trustee") for the liquidation of the business of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa *et seq.* ("SIPA"),[1] and the substantively consolidated estate of Bernard L. Madoff ("Madoff") (collectively, "Debtor"), for an Order Approving the Trustee's Eighth Allocation of Property to

---

[1] For convenience, subsequent references to sections of the Act shall follow the form: "SIPA § __."

1

the Fund of Customer Property and Authorizing Eighth Interim Distribution to Customers (the "Motion").

2. AlixPartners has served as the Trustee's Claims Agent and as the accountant for the BLMIS estate since December of 2008 pursuant to SIPA § 78fff-1(a)(1). As the Claims Agent, AlixPartners was responsible for both mailing the notice of the liquidation and claim forms to potential claimants and causing the notice of the liquidation to be published. AlixPartners has also been responsible for processing all claims submitted to the Trustee and assisting the Trustee in reviewing each customer claim filed to determine whether the asserted claim amount agrees with the "net equity" for that account. In addition, as the accountants for the BLMIS estate, AlixPartners has assisted and continues to assist the Trustee in accounting for the assets of the BLMIS estate, including the cash and cash equivalents available to the Trustee.

3. I have been actively involved in the liquidation of BLMIS and the claims process since December 2008 and have personal knowledge of the matters set forth herein.

### The Claims Process

4. To date, the Trustee has received 16,519 customer claims. To date, the Trustee has determined 16,459 of those claims. The Trustee has allowed 2,608 claims and committed to pay approximately $839.631 million in funds advanced to him by SIPC. To date, the allowed claims total approximately $15.086 billion. The Trustee denied 13,432 claims, including 10,732 claims purporting to be customer claims but were in fact claims filed on behalf of third parties or indirect investors. Twelve other claims were filed that asserted no claim. Another 407 claims have been withdrawn.

5. Sixty claims (relating to 42 accounts)[2] are currently categorized as "deemed determined," meaning that the Trustee has instituted litigation against those claimants.

6. To date, the Trustee has received 427 timely and 22 untimely filed secured priority and unsecured non-priority general creditor claims totaling approximately $1.7 billion. The claimants include vendors, taxing authorities, employees, and customers filing claims on non-customer proof of claim forms. Of these 449 claims, 94 are general creditor claims and 49 are broker-dealer claims, which together total approximately $265 million of the $1.7 billion.

7. 2,043 docketed objections have been filed to the Trustee's claims determinations relating to 3,621 claims, which will be noticed for hearing as necessary. These 2,043 objections relate to 968 BLMIS accounts. 1,210 of the 2,043 docketed objections have been fully resolved. 833 objections are still subject to court review.

---

[2] This includes two net winner accounts (3 claims) that will not be eligible to participate in the Trustee's interim distributions.

## Recoveries by the Trustee

8. The Trustee previously filed seven motions seeking entry of an order approving allocations of property to the fund of customer property (the "Customer Fund") and authorizing pro rata interim distributions of Customer Property, and this Court entered orders approving those motions:

| No. of Distribution | Date of Distribution | Amount Allocated | Amount Distributed | Percentage Distributed | ECF No. for Motion | ECF No. for Order |
|---|---|---|---|---|---|---|
| 1 | 10/05/2011 | $2.618 billion | $685.498 million | 4.602% | 4048 | 4217 |
| 2 | 09/19/2012 | $5.501 billion | $4.980 billion | 33.556% | 4930 | 4997 |
| 3 | 03/29/2013 | $1.198 billion | $696.491 million | 4.721% | 5230 | 5271 |
| 4 | 05/05/2014 | $477.504 million | $468.362 million | 3.180% | 6024 | 6340 |
| 5 | 02/06/2015 | $756.538 million[3] | $403.529 million | 2.743% | 8860 | 9014 |
| 6 | 12/04/2015 | $345.472 million[4] | $1.209 billion[5] | 8.262% | 9807 and 11834 | 12066 |
| 7 | 06/30/2016 | $247.013 million | $190.263 million | 1.305% | 13405 | 13512 |

9. The amounts previously distributed as outlined in each of the First through Seventh Allocation Motions change as additional accounts are determined. Below is a summary of the amounts allocated and distributed:

---

[3] The total amount allocated in the Fifth Allocation Motion was $704,395,951.58. Between the filing of that motion and the Fifth Interim Distribution date, an additional $52,142,279.87 was recovered and included in the numerator.

[4] This represents the amount allocated to the Customer Fund in the Supplemental Sixth Allocation and Sixth Interim Distribution Motion filed on October 20, 2015. The original Sixth Allocation and Sixth Interim Motion filed on April 15, 2015 did not allocate any additional recoveries to the Customer Fund; the Trustee simply re-allocated $1,448,717,625.26 of funds that had previously been allocated to the Customer Fund for the Time-Based Damages reserve.

[5] The amount distributed for the Sixth Interim Distribution is greater than the amount allocated due to the fact that the previously allocated Time-Based Damages Reserve was utilized in addition to new recoveries received subsequent to the Fifth Interim Distribution.

4

| No. | Amount Allocated | Reserve From Previous Allocations[6] | Amount Available for Distribution | Allocation for Allowed Claims[7] | Allocation for Deemed Determined Claims[8] | SIPC Subrogation | Other Reserves[9] |
|---|---|---|---|---|---|---|---|
| 1 | $2.618 billion | N/A | $2.618 billion | $685.498 million | $152.223 million | $8.746 million | $1.772 billion |
| 2 | $5.501 billion | $1.772 billion | $7.273 billion | $4.980 billion | $1.110 billion | $82.268 million | $1.101 billion |
| 3 | $1.198 billion | $1.101 billion | $2.299 billion | $696.491 million | $156.160 million | $15.705 million | $1.430 billion |
| 4 | $477.504 million | $1.430 billion | $1.908 billion | $468.362 million | $105.187 million | $11.363 million | $1.323 billion |
| 5 | $756.538 million[10] | $1.323 billion | $2.080 billion | $403.529 million | $90.732 million | $10.272 million | $1.575 billion |
| 6 | $345.472 million[11] | $1.575 billion | $1.921 billion | $1.209 billion | $273.287 million | $37.216 million | $400.885 million |
| 7 | $247.013 million | $400.885 million | $647.898 million | $190.263 million | $43.166 million | $6.605 million | $407.863 million |

10.     The Trustee has recovered approximately $342,321,897.89 since the Seventh Allocation and Seventh Interim Distribution as a result of preference settlements, litigation and pre-litigation settlements, interest income, and other miscellaneous recoveries.[12] Therefore, the Trustee seeks approval to allocate the full amount of these recoveries to the Customer Fund.

11.     The most significant settlement that was reached since the Seventh Allocation Motion was the Chais adversary proceeding, discussed below.

12.     On November 18, 2016, this Court approved an approximately $269 million settlement between the Trustee and the Estate of Stanley Chais, et al. *Picard v. Estate of Chais,*

---

[6] Reserve from Previous Allocations represents amounts that were reserved in prior allocations.
[7] Allocation for Allowed Claims represents the amount allocated for claims that have been allowed.
[8] Allocation for Deemed Determined Claims represents amounts allocated and reserved for claims that are currently in litigation with the Trustee.
[9] Other Reserves represents all funds that are reserved for various issues.
[10] The total amount allocated in the Fifth Allocation Motion was $704,395,951.58. Between the filing of that motion and the Fifth Interim Distribution date, an additional $52,142,279.87 was recovered and included in the numerator.
[11] This represents the amount allocated to the Customer Fund in the Supplemental Sixth Allocation and Sixth Interim Distribution Motion filed on October 20, 2015. The original Sixth Allocation and Sixth Interim Motion filed on April 15, 2015 did not allocate any additional recoveries to the Customer Fund; the Trustee simply re-allocated $1,448,717,625.26 of funds that had previously been allocated to the Customer Fund for the Time-Based Damages reserve.

5

*et. al.*, Adv. No. 09-01172 (SMB) (Bankr. S.D.N.Y.) (ECF No. 157). Under the settlement, certain of the *Chais* defendants agreed to pay the Trustee approximately $234 million in cash payments and an estimated $30 million in other assets, including hedge fund and private equity investments, amounting to substantially all of the assets of Stanley Chais' estate and his widow and to the total alleged fictitious profit transfers received in the two years prior to the Filing Date by other settling defendants affiliated with Mr. Chais. The Court also approved the Trustee's limited participation in two separate settlements between certain *Picard v. Chais* defendants and various third party plaintiffs who brought claims in the State of California related to investment partnerships formed by Stanley Chais that were invested with BLMIS; the terms of those settlements include the creation of a restitution fund administered by the Attorney General for the State of California to restore funds to Mr. Chais' investors.

13. As reflected in the table in Paragraph 9, the amount reserved through the Seventh Interim Distribution is $407,863,413.24. This previously reserved amount, plus the $342,321,897.89 that the Trustee seeks to allocate in this Motion, constitutes the total amount available for distribution. Therefore, the total amount available for the Seventh Interim Distribution will be $750,185,311.13. Of this amount, $232,130,120.42 must be held in reserve for the non-preference related settlement payments for accounts with net equity clauses, as well as certain other settlements, leaving a total of $518,055,190.71 available for distribution.

14. The Trustee will maintain a general reserve of $200,000,000.00. Thus, the amount available for the Eighth Interim Distribution will be $318,055,190.71.

15. The table below summarizes this calculation.

---

[12] This $342,321,897.89 includes partial December 2016 recoveries in the amount of $234,287,366.57.

6

| Category | Amount |
|---|---|
| **SIPC 17 Receipts (November 30, 2016)** | $11,251,979,233.24 |
| **Chais Settlement** | $234,287,366.57 |
| **Total Recoveries** | **$11,486,266,599.81** |
| | |
| First Through Seventh Interim Distribution Deductions | |
|    Allowed Accounts | $8,633,198,161.31 |
|    Reserved For Deemed Determined Accounts | $1,930,708,402.06 |
|    SIPC Subrogation | $172,174,725.31 |
| | |
| **Amount Available for Eighth Interim Distribution** | **$750,185,311.13** |
| | |
| Current Reserves | |
|    General Reserve | $200,000,000.00 |
|    Settlements containing the net equity clause, as well as certain others settlements | $232,130,120.42 |
| | |
| **Amount Available for Eighth Interim Distribution After Reserves** | **$318,055,190.72** |

16.   Of the $318,055,190.71 numerator, $251,590,477.57 will be distributed as part of the Eighth Interim Distribution to allowed accounts, and SIPC subrogation for allowed accounts in the amount of $9,220,274.21[13] will be released to SIPC. For deemed determined accounts, $57,191,228.68 will be reserved.

### The Net Investment Method Denominator

17.   The Trustee's Net Investment Method Denominator is the allowed amount of all accounts that have an allowed claim plus the net cash balance for all accounts into which more funds were deposited than withdrawn for which a claim has been filed, but not yet allowed. As of December 14, 2016, the Trustee's Net Investment Method denominator is $18,393,464,489.04. This number is subject to change as additional accounts are determined.

---

[13] An additional $21,020.69 of SIPC subrogation associated with the Eighth Interim Distribution for accounts that have not returned the necessary paperwork required to receive their SIPC advance will be held in reserve.

7

### Interim Calculation of *Pro Rata* Share
### Distribution of Customer Fund

18.  As set forth above, the total amount available for the Eighth Interim Distribution will be $750,185,311.13.  Of that amount, $318,055,190.71 is available for distribution (the "Net Customer Fund").  The difference between those amounts—$432,130,120.42—represents the general reserve and reserves related to the net equity clause, as well as certain other settlements.

19.  The Denominator is $18,393,464,489.04.  To determine the percentage of each allowed customer net equity claim that can be satisfied from the Customer Fund, the Net Customer Fund is divided by the Denominator, resulting in the following percentage:

$$\frac{\$318{,}055{,}190.71 \text{ (Net Customer Fund)}}{\$18{,}393{,}464{,}489.04 \text{ (Denominator)}} = 1.729\%$$

20.  A total of 953 accounts will receive a distribution of approximately 1.729% of their net equity claims, unless the account becomes fully satisfied.  Of these 953 accounts (relating to 1,110 claims), 31 accounts (relating to 42 claims) will become fully satisfied, bringing the total of fully satisfied account holders to 1,333 (all accounts with a net equity of up to $1,253,018.77).  922 accounts will remain partially satisfied and will be entitled to participate in future distributions.

21.  An additional 40 accounts[14] (relating to 57 claims) that are currently "deemed determined" could receive a distribution if and when the status of their claims moves from "deemed determined" to allowed.  Twenty-one of the 40 accounts would be fully satisfied by the SIPC advance.  The remaining 19 accounts would receive both a SIPC advance and a distribution in accordance with the Trustee's Motion and his earlier distribution motions.  Two of the remaining 19 accounts would be fully satisfied by the First through Eighth Interim Distributions.

---

[14] This does not include two net winner accounts (3 claims) that will not be eligible to participate in the Trustee's interim distributions.

22. Upon approval of the Motion, each customer's ratable share of the Net Customer Fund should be no less than 60.098% of the customer's net equity claim, which includes the proposed 1.729% customers will receive upon the approval of the Eighth Allocation and Eighth Interim Distribution, the 4.602% customers received subject to the First Allocation and First Interim Distribution, the 33.556% customers received subject to the Second Allocation and Second Interim Distribution, the 4.721% customers received subject to the Third Allocation and Third Interim Distribution, the 3.180% customers received subject to the Fourth Allocation and Fourth Interim Distribution, the 2.743% customers received subject to the Fifth Allocation and Fifth Interim Distribution, the 8.262% customers received subject to the Sixth Allocation and Sixth Interim Distribution, and the 1.305% customers received subject to the Seventh Allocation and Seventh Interim Distribution.[15]

By: */s/ Vineet Sehgal*
Vineet Sehgal

City of Washington
District of Columbia

Subscribed and sworn to me (or affirmed) before me, Joan Sadler, Notary Public, on this 14th day of December, 2016 by Vineet Sehgal, proved to me on the basis of satisfactory evidence to be the person who appeared before me.

WITNESS my hand and official seal.

*/s/ Joan Sadler*
Joan Sadler, Notary Public
Qualified in District of Columbia
*Commission Expires: October 31, 2017*

---

[15] Each customer's ratable share may be less than 60.098% for those BLMIS accounts that are fully satisfied.