

1   UNITED STATES BANKRUPTCY COURT

2   SOUTHERN DISTRICT OF NEW YORK

3   Case No. 08-99000-smb

4   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

5   In the Matter of:

6

7   ADMINISTRATIVE CASE RE: 08-1789 (SECURITIES INVEST...),

8   BERNARD L. MADOFF INVESTMENT SECURITIES LLC,

9

10            Debtor.

11   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

12   Adv. Case No. 08-01789-smb

13   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

14   SECURITIES INVESTOR PROTECTION CORPORATION,

15                Plaintiff,

16          v.

17   BERNARD L. MADOFF INVESTMENT SECURITIES LLC,

18                Defendants.

19   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

20

21

22

23

24

25

Page 2

1   Adv. Case No. 10-05312-smb

2   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

3   IRVING H. PICARD, TRUSTEE FOR THE LIQUIDATION OF BERNARD L.

4   MADOFF,

5                   Plaintiff,

6           v.

7   DORON TAVLIN TRUST U/A 2/4/91, et al.

8                   Defendants.

9   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

10

11                   U.S. Bankruptcy Court

12                   One Bowling Green

13                   New York, NY  10004

14

15                   December 6, 2016

16                   10:08 AM

17

18

19

20

21   B E F O R E :

22   HON STUART M. BERNSTEIN

23   U.S. BANKRUPTCY JUDGE

24

25   ECRO:  UNKNOWN

Page 3

1    Hearing re:  Discovery Conference re Various Letters on

2    Profit Withdrawal Proceeding

3

4    Hearing re:  Pre-Summary Judgment Motion Conference Pursuant

5    to Local Bankr. R. 7056-1

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Sonya Ledanski Hyde

Page 4

1    A P P E A R A N C E S :

2

3    BAKER HOSTETLER

4         Attorney for the Trustee

5         45 Rockefeller Plaza

6         New York, NY 10111

7

8    BY:  EDWARD J. JACOBS

9         NICHOLAS J. CREMONA

10

11   CHAITMAN LLP

12        Attorney for

13        465 Park Avenue

14        New York, NY 10022

15

16   BY:  HELEN DAVIS CHAITMAN, ESQ.

17

18   DENTONS US LLP

19        Attorney for Madoff Defendants

20        1221 Avenue of the Americas

21        New York, NY 10020

22

23   BY:  CAROLE NEVILLE

24

25

Page 5

1    MCDERMOTT WILL & EMERY LLP

2          Attorney for Sage Associates, Sage Realty, Malcolm Sage

3          Mountain Sage, Ark Sage Partner

4          340 Madison Avenue

5          New York, NY 10173

6

7    BY:  ANDREW B. KRATENSTEIN

8

9    ALSO PRESENT TELEPHONICALLY:

10

11   KEVIN H. BELL

12   PATRICK MOHAN

13   DAVID J. SHEEHAN

14

15

16

17

18

19

20

21

22

23

24

25

Page 6

1                    P R O C E E D I N G S

2              THE COURT:  Madoff.  Good morning.

3              MR. JACOBS:  Good morning.

4              MR. KRATENSTEIN:  Good morning, Your Honor.

5    Andrew Kratenstein, McDermott Will & Emery on behalf of the

6    Sage Defendants.

7              THE COURT:  Okay.  Go ahead.

8              MR. KRATENSTEIN:  Your Honor, during discovery in

9    our adversary proceedings, we asked for production of all

10   Madoff or BLMIS related statements, deposition transcripts,

11   what have you.  And in their objections, the Trustee said

12   you can't have the profit withdrawal deposition transcripts

13   because of Your Honor's order which contained a restriction

14   on the use, as you know, in anything but the profit

15   withdrawal proceedings.

16             My understanding, although I haven't been involved

17   in those proceedings, is that that restriction was put in at

18   the request of the Picower defendants.  That's my

19   understanding, I don't have firsthand knowledge of that.

20             THE COURT:  Well, I do, but go ahead.

21             MR. KRATENSTEIN:  All right.  So we've got the --

22   rather than to bring that to Your Honor at the time, I just

23   got the transcripts elsewhere because they weren't

24   confidential.  So I got them and I read them.

25             And when I read them I read things in them that

1   were relevant to my client's defenses.  I read that Bernard

2   Madoff testified, consistent with his plea allocution, that

3   the fraud began in 1992 and was limited to the so-called

4   split-strike strategy.  I read -- and that's important to my

5   clients because my clients had two separate accounts, one of

6   which was a, what we call, directed trading account, in

7   which they actually directed Mr. Madoff on what to do, and

8   then the other account was a convertible bond arbitrage

9   trading account in which Mr. Madoff also testified that the

10  convertible bond arbitrage trading was real.  So that was

11  important to me, obviously, and my clients.

12          And then I read Annette Bongiorno's deposition

13  transcript in which she said she remembered the Sage's

14  accounts and that they held real securities and substance.

15  That was important, obviously, to my clients also.

16          So I then went to the Trustee's counsel and I

17  said, in substance, look, I don't want to have to go and re-

18  depose Annette Bongiorno to get her to restate what she

19  already said in this deposition and go to federal -- go the

20  federal penitentiary, set up a whole protocol, we'll go

21  through what we went through with Mr. Madoff.  I'm happy to

22  just use this testimony, if you'll allow it.  Will you

23  stipulate?  And I'd also like you to agree we can stipulate

24  to Mr. Madoff's testimony so that Ms. Chaitman, who's going

25  to -- is sitting here and is going to, as you know, lead,

Page 8

1    won't have to re-ask all of these questions.  And they came

2    back and said, sorry, no.  The judge's order says you can't

3    use it, you can't use it.  And so that's why we're here.

4              THE COURT:  Do you disagree that that's what the

5    order said?

6              MR. KRATENSTEIN:  I do not.

7              THE COURT:  Okay.

8              MR. KRATENSTEIN:  The order says it.

9              THE COURT:  So what relief are you seeking?

10             MR. KRATENSTEIN:  The relief, I guess, is a

11   modification of the order to the extent that we think we

12   should be able to use the transcripts in this proceeding for

13   a few reasons.  First, there's no real prejudice to anybody.

14             THE COURT:  But the questions weren't subject to

15   cross examination.

16             MR. KRATENSTEIN:  Well, that could be cured in a

17   couple of ways.  First, with respect to Mr. Madoff, as

18   everybody knows, that depositions coming up soon.  So if the

19   Trustee wants to ask whatever it wants to ask of Mr. Madoff,

20   it's free to do so at that deposition.  If he says something

21   inconsistent with the testimony that he gave before, what

22   have you, people should be allowed to use it to impeach him,

23   to refresh his recollection, what have you.

24             Mrs. Bongiorno's a slightly -- so they'll have a

25   full opportunity, with respect to Mr. Madoff to ask him what

Page 9

1    --

2              THE COURT:  Well, wouldn't you also?

3              MR. KRATENSTEIN:  Yes.

4              THE COURT:  Okay.

5              MR. KRATENSTEIN:  So it should be fair game for

6    all; we're not suggesting otherwise.

7              But to suggest that the profit withdrawal

8    testimony never occurred, or we can't use it or refer to it,

9    we think that that goes too far.

10             Second, with respect to Ms. Bongiorno, the Trustee

11   has said, well, let's hold this all in abeyance; we may have

12   an omnibus deposition of Ms. Bongiorno as well.  To which

13   our response is, okay, you're of course free to do that and

14   of course if you want to have us all go to Florida to depose

15   Ms. Bongiorno in jail, I guess we'll have to go.

16   But you should tell us that now, you should tell us that

17   soon because the clock is running.  I'm happy to just use

18   your transcript if you'll agree.  But if you don't, we'll go

19   down and you'll have the same opportunity everybody would

20   that would happen with Mr. Madoff's testimony.

21             So our position is relatively simple.  If -- these

22   transcripts should be used.  We shouldn't have to have

23   another Bongiorno deposition, unless the Trustee wants one.

24   And if the Trustee wants one, the Trustee can have one but

25   they should tell us soon.  If they don't, we should be able

Page 10

1    to use the transcript.  And if they do, we should be able to

2    use the transcript and that deposition for -- if she

3    testifies inconsistently with it.  To say we can't use it at

4    all, that it's -- it just didn't happen, they didn't testify

5    to this under oath, we think goes too far and would be

6    unfair.  So those are our positions, Your Honor.

7            THE COURT:  Okay.  Thank you.

8            MR. JACOBS:  Good morning, Your Honor.  This is

9    Edward Jacobs on behalf of the Trustee.  I think, as you are

10   aware, the Trustee, historically, had never intended to rely

11   upon the testimony of Mr. Madoff with respect to his proof

12   of fraud.  That can of worms, so to speak, was opened in the

13   profit withdrawal hearing when we heard from Mr. Madoff on

14   the issue of profit withdrawal.  And as the Court noted,

15   there was an order strictly limiting the subject of that

16   deposition to the profit withdrawal issue.

17           Ms. Chaitman's questions during the course of that

18   deposition went beyond the scope of the Court allow of the

19   deposition.  There was testimony provided on the start date

20   of fraud.  Subsequently the same thing happened in the

21   deposition of Ms. Bongiorno, which was also subject to the -

22   - Your Honor's strict limitation that the subject matter be

23   limited to profit withdrawal only.

24           In the case of Ms. Bongiorno, her testimony -- she

25   did provide some specific testimony about the Sage

Page 11

1    defendants, but it's lacking foundation, there's no context,

2    it's vague and ambiguous.  There's no -- there was

3    absolutely no cross examination because the Trustee was

4    prohibited, by court order.

5                THE COURT:  But the argument is you can go back

6    and ask them the questions now.

7                MR. JACOBS:  That's right, and that's also true of

8    Mr. Madoff --

9                THE COURT:  Right.

10               MR. JACOBS:  -- and all three defense counsel who

11   are sitting here today and are participating in that

12   deposition which is set to occur on December 20th.

13               So to make a long story short, Your Honor, once

14   that -- once Mr. Madoff made those statements about the

15   start date of the fraud, Ms. Chaitman brought that to the

16   Court's attention.  And notwithstanding the fact that

17   there's absolutely no evidence to -- in existence that the

18   Defendants have provided or that we've been able to find in

19   our records that support his contentions, the Court did

20   allow a second --

21               THE COURT:  Well, you have his allocution and his

22   testimony.

23               MR. JACOBS:  That's correct.  But he -- that is

24   correct, Your Honor.

25               THE COURT:  Why would he lie about it?

1          MR. JACOBS:  I don't wish to speculate as to why

2    Mr. Madoff would lie, although we do know for a fact that he

3    did lie --

4          THE COURT:  No, I mean --

5          MR. JACOBS:  -- about a great many things.

6          THE COURT:  -- about this, though.  You know, what

7    difference does it make?

8          MR. JACOBS:  The -- I'm not sure, Your Honor, I'm

9    purely speculating, but he may have been saying that to

10   protect certain of his family members who were involved in

11   the business and engaged in the proprietary trading function

12   of the --

13         THE COURT:  Who?  His sons?

14         MR. JACOBS:  Yes, Your Honor.

15         THE COURT:  His brother's in jail, his sons are

16   dead, who's he protecting?

17         MR. JACOBS:  Again, Your Honor, I'm purely

18   speculating, I don't pretend to know what's in Mr. Madoff's

19   mind.  But he had a number of family members and employees

20   working for him for whom he may have felt a need to shield

21   or protect from criminal liability at some point in time.

22   And that's -- beyond that, Your Honor, I just -- I wouldn't

23   wish to comment.

24         So in any event, all three of the Defendants will

25   be participating in Mr. Madoff's deposition on the 20th.

Page 13

1    That specifically is about the start date of the fraud, so

2    they're free to ask any questions they may have.  We will be

3    free and unencumbered in conducting our cross examination

4    and as I think Your Honor knows, at a recent hearing about

5    that deposition we specifically told the Court that we

6    reserved our rights to request additional follow up

7    depositions after Mr. Madoff gives his testimony, because

8    yes, we may want to, at that juncture, re-depose Ms.

9    Bongiorno but we wish to reserve the right to make that

10   decision until we have the benefit of Mr. Madoff's testimony

11   because now that there will be a full on examination on

12   these issues, we're not exactly sure what he may say.

13          So we do expect that there'll be an additional

14   deposition of Ms. Bongiorno at some place and time and that

15   will be the appropriate place for the Defendants to examine

16   Ms. Bongiorno as to her memory as to any of their specific

17   clients.

18          And as a legal issue, Your Honor, I would point

19   out that under the prior proceeding rule, it's Federal Rule

20   of Civil Procedure 32(a)(8), a prior deposition is only

21   allowed for use in a current litigation where the opponent

22   had the same motivation to cross examine.  And here that

23   absolutely cannot be the case, because as you know there was

24   a court order prohibiting us from cross examining that

25   particular testimony that went outside the bounds of the

Page 14

1     subject matter of the deposition on that day.  Thank you,

2     Your Honor.

3                    THE COURT:  I think we're --

4                    MS. NEVILLE:  Your Honor, may I be heard?

5                    THE COURT:  Very, very briefly.

6                    MS. NEVILLE:  Okay.  First of all, Carole Neville

7     from Dentons.  The issue here is not only the start date,

8     it's also the issue of the arbitrage account versus split-

9     strike conversion.  I have five clients who were in that and

10    when they were transferred to split-strike conversion the

11    Trustee discounted all of the prior amounts.

12                   It seems to me Madoff testified no fewer than five

13    times that the fraud was limited to the split-strike

14    conversion.  Ms. Brown sat there, she did ask questions, she

15    asked questions about every issue that was raised.  She

16    didn't restrict it only to profit withdrawal.  And so what

17    the Trustee is trying to do by withholding that transcript,

18    is to perpetuate a fiction that all of the Madoff accounts

19    were treated in the exact same way.

20                   At some point Your Honor can weigh whether Bernie

21    Madoff's testimony versus Mr. Dubinsky's expert report

22    carries more weight, but the transcript was only sealed to

23    protect the Picowers.  None of us knew that Bernie Madoff

24    had testified that the arbitrage accounts were really

25    traded.  So I don't understand why the Trustee is taking

Page 15

1    such an effort to perpetuate a fiction to rest a couple a

2    hundred thousand dollars from some innocent investors.  I

3    think that transcript should be made available for all

4    purposes, as it normally would have been.

5            THE COURT:  All right. The orders that I entered

6    in connection with both the Madoff and the Bongiorno

7    depositions were quite clear.  Questions shouldn't have been

8    answered, and the transcripts can only be used in connection

9    with the profit withdrawal issue.

10           If you -- obviously the issue of when the fraud

11   began, which is an important issue that's going to be the

12   subject of a separate deposition -- and the orders specific

13   limit the depositions because of where they're being taking,

14   how many people can be in the room and how much time they

15   can -- that can be allotted to the deposition.  So I'm not

16   going to permit the use of this transcript for anything

17   other than the profit withdrawal issue.

18           If the difference between a arbitrage account and

19   a strict-strike account is relevant to that particular

20   issue, well then it can be used for that purpose, but it's

21   limited to profit withdrawal, that's all.

22           MR. JACOBS:  Thank you, Your Honor.

23           THE COURT:  Okay.  Ms. Chaitman?

24           MS. CHAITMAN:  Helen Davis Chaitman of Chaitman,

25   LLP.

1          Your Honor, I had written to the Court asking for

2     permission to file a motion for summary judgment in the case

3     involving Doron Tavlin Trust.  And the issue in this case is

4     a kind of interesting one, and that is where a withdrawal

5     was taken within the last two years and it was not paid to

6     the accountholder, it was paid to the accountholder's law

7     firm.

8               THE COURT:  Why was it paid to the law firm?

9               MS. CHAITMAN:  Because the law firm managed this

10    account completely for --

11              THE COURT:  What --

12              MS. CHAITMAN:  -- whatever reason.

13              THE COURT:  -- did the law firm do with the money,

14    though?

15              MS. CHAITMAN:  They paid it to the Internal

16    Revenue Service.

17              THE COURT:  To the benefit of the Trust, right?

18              MS. CHAITMAN:  For the benefit of the Trust.

19              THE COURT:  So why isn't that a transfer for the

20    benefit of the Trust?

21              MS. CHAITMAN:  Because it was a transfer of -- it

22    was a payment to the Internal Revenue Service of taxes on

23    fictitious profits.  None of that money went to the Trust,

24    it was paid to the IRS.

25              THE COURT:  Yeah, but it doesn't have to.  It's --

Page 17

1    if it's paid for the benefit of the Trust; isn't that the

2    law?

3              MS. CHAITMAN:  Well, that's what the statute says,

4    but here it wasn't --

5              THE COURT:  Well, that's what we're applying, you

6    know?

7              MS. CHAITMAN:  No, I -- believe me Judge, I'm

8    aware of that.

9              THE COURT:  Okay.

10             MS. CHAITMAN:  But the fact is that the tax was

11   paid because Madoff fictitiously alleged that there were

12   profits on the account in that amount.  So what happened

13   here is the money was simply paid because Madoff reported

14   profits which did not exist.

15             THE COURT:  Well, that's a different issue.  I

16   thought, though, that there was tax relief for that --

17   granted by the IRS.

18             MS. CHAITMAN:  Well, there was.  There was

19   ultimately a revenue procedure ruling, Revenue Procedure

20   Rule 2009-20, which was enacted by the Internal Revenue

21   Service which allowed a refund of taxes paid on fictitious

22   profits.  However, that's an intervening cause.  I don't

23   believe that under 548 the Trustee's entitled to recover

24   money that was paid to the Internal Revenue Service based on

25   a fraudulent statement issued by Madoff.  And the fact that

Page 18

1     it was ultimately refunded was an act of the Internal

2     Revenue Service.

3            THE COURT:  But you're willing to concede, for the

4     purposes of your motion, that whatever money was withdrawn,

5     or this -- I guess it was one withdrawal we're talking

6     about?

7            MS. CHAITMAN:  It was one check.

8            THE COURT:  That check was withdrawn for the

9     purpose of allowing the Trust, the accountholder, to pay a

10    tax which at the time was due?

11           MS. CHAITMAN:  Yes.

12           THE COURT:  Let me hear from the Trustee.

13           MR. CREMONA:  Good morning, Your Honor.  Nicholas

14    Cremona of Baker Hostetler, also on behalf of the Trustee.

15    In the first instance, Your Honor, we thank you for hearing

16    us on a non-Madoff omnibus date.

17           Your Honor, we're here on Ms. Chaitman's request

18    for permission to file a summary judgment.  We respectfully

19    request that that request be denied for a number of reasons.

20           In the first instance, the request is entirely

21    premature under the existing case management order.  The

22    discovery doesn't end until March and August, respectively,

23    of next year.

24           THE COURT:  Well, what's the -- in other words, it

25    doesn't have to resolve the entire case, but what's the

Page 19

1    issue of fact?

2            MR. CREMONA:  Well, I -- that's my next point,

3    Your Honor.  I believe there are several material issues of

4    fact.

5            THE COURT:  What?

6            MR. CREMONA:  As demonstrated by Ms. Chaitman's

7    letter, there was a check issued from BLMIS on the

8    (indiscernible) account to Snow Becker & Krauss.  It's

9    unclear, based on the correspondence to the Court and the

10   checks, what the intentions of the parties were.

11           THE COURT:  She's saying, though, she's conceding

12   that the check was for the purpose of paying the Trust's

13   taxes, which is what it was used for.

14           MR. CREMONA:  Right.  It's always unclear to us

15   what -- who authorized that.  I mean, it was paid by the

16   Snow Becker & Krauss IOLA account.

17           THE COURT:  But she's not saying it was

18   unauthorize -- you're not saying it's unauthorized?

19           MS. CHAITMAN:  No, of course not.

20           THE COURT:  It's good.

21           MS. CHAITMAN:  This is the law firm retained --

22           THE COURT:  Right.

23           MS. CHAITMAN:  -- by accountholders.

24           THE COURT:  Right.  I don't under --

25           MR. CREMONA:  Fair enough.

Page 20

```
1              THE COURT:  -- I know that there are factual
2    issues in these cases.  But as I understand Ms. Chaitman's
3    argument, she's saying the rest of it doesn't matter because
4    the money was used to pay a tax which shouldn't have been
5    due.
6              MR. CREMONA:  Fair enough, Your Honor.  I'll skip
7    to the point that I think --
8              THE COURT:  That just sounds like a legal issue.
9              MR. CREMONA:  -- I think the issue --
10             THE COURT:  I mean I can read 550(a) also.
11             MR. CREMONA:  Right.  I think the issue you
12   raised, though, is the most important one in that the issue
13   -- the motion is going to be moot because this is clear
14   based on the admissions in the letter and the documents
15   provided, that this is clearly for the benefit of transfer.
16   Ms. --
17             THE COURT:  So you're telling me I shouldn't let
18   her make the motion because you're going to (indiscernible)?
19             MR. CREMONA:  I'm saying, Your Honor, I'm sorry,
20   I'm saying that we intend to move to amend the complaint,
21   based on this newly discovered evidence and documents that
22   we just got through discovery in August.  And I think the
23   amendment of that complaint to plead the for to benefit of
24   transfer, that has clearly been admitted now, will moot this
25   motion.  And rather than have a premature motion for summary
```

Page 21

```
 1    judgment, the parties should, on a full record, be allowed

 2    to amend the complaint, to plead the FBO transfer, which

 3    candidly was not previously pled, because we didn't -- we

 4    were not within -- we didn't have the information to plead

 5    it as such.  Now as you recognize, there -- it's clearly an

 6    FBO transfer, it's clearly the law under Judge Gerber's In

 7    Re: Ames case.  It doesn't matter whether or not the funds

 8    went to the Tavlin Trust, if they went directly to Snow

 9    Becker Krauss who then transferred them to the IRS and they

10    never had dominion and control, it's clearly an FBO

11    transfer.  We'd like the opportunity to amend the complaint

12    to --

13              THE COURT:  Let me ask you.

14              MR. CREMONA:  -- fully plead that.  And by the

15    way, Your Honor --

16              THE COURT:  Let me --

17              MR. CREMONA:  -- if I just may, we prepared an

18    amended complaint on that basis based on what we discovered.

19    We provided it to Ms. Chaitman, she did not answer our

20    request as to whether she would consent to the amendment of

21    the complaint.

22              THE COURT:  Do you have any objection to the

23    amendment of the complaint?

24              MS. CHAITMAN:  I think I'm entitled -- whether we

25    amend the complaint or not, I think I'm entitled to --
```

Page 22

1          THE COURT:  Well, we can save time.  If it's

2    deemed amended to alleged FBO transfer, then you can make

3    the motion.

4          MS. CHAITMAN:  Thank you.  I --

5          THE COURT:  All right.  Your complaint is deemed

6    amended to allege recovery of the 558 based on an FBO

7    transfer and the only issue is a legal issue of whether the

8    payment, the authorized payment by the manager of the Trust

9    account to satisfy a tax obligation of the Trust, is a

10   payment for the benefit of the Trust.

11         MS. CHAITMAN:  Which is recoverable under 558.

12         THE COURT:  Which is recoverable under 558.  It

13   sounds like a straight legal issue to me.

14         MR. CREMONA:  I agree, Your Honor.

15         THE COURT:  Now, if you see the 7056 statement and

16   some other stuff pops up, then you can, you know, put in a

17   counter statement and presumably, if it's a material issue

18   motion to deny.

19         MR. CREMONA:  Your Honor, again, we wanted to

20   clear -- a clean record on which to proceed.  I think the --

21   we would also amend the complaint and we prepared them, I'm

22   happy to hand them up to you --

23         THE COURT:  This is not --

24         MR. CREMONA:  -- to make --

25         THE COURT:  -- resolving the whole issue.  If she

Page 23

1   loses the motion the case goes forward.  That's all.  It's a

2   straight legal issue that's being carved out.

3          MR. CREMONA:  What would be -- what would remain

4   if we  -- if the motion --

5          THE COURT:  Well, I don't know.  I don't know.

6   There's still -- I don't know if this is one of these cases

7   where the start date of fraud makes a difference or there

8   are any other issues.  Nobody's stopping you from making

9   motions for summary judgment --

10          MR. CREMONA:  I --

11          THE COURT:  -- on these cases.

12          MR. CREMONA:  Um hmm.

13          THE COURT:  They seem fairly straightforward,

14   unless, you know, there's a dispute in terms of what was

15   deposited and what came out.  And then, you know, I guess we

16   can deal with it at that point.

17          All right.  So you can make your motion but the

18   amendment -- the complaint is deemed to be amendment to

19   allege an FBO payment and also that the payments were

20   authorized by the Trust.  Right?

21          MS. CHAITMAN:  Thank you, Judge.

22          MR. CREMONA:  Thank you, Your Honor.

23          (Whereupon these proceedings were concluded at

24   10:27 AM)

25

Page 24

1      C E R T I F I C A T I O N

2

3         I, Sonya Ledanski Hyde, certified that the foregoing

4      transcript is a true and accurate record of the proceedings.

5

6      Sonya
       Ledanski Hyde

       Digitally signed by Sonya Ledanski
       Hyde
       DN: cn=Sonya Ledanski Hyde, o, ou,
       email=digital1@veritext.com, c=US
       Date: 2016.12.07 15:39:21 -05'00'

7

8      Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20     Veritext Legal Solutions

21     330 Old Country Road

22     Suite 300

23     Mineola, NY 11501

24

25     Date:  December 7, 2016