**Baker & Hostetler LLP**

45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Nicholas J. Cremona
Jorian L. Rose
Amy E. Vanderwal
Stephanie A. Ackerman

*Attorneys for Irving H. Picard, Trustee for the*
*Substantively Consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities LLC*
*and the Estate of Bernard L. Madoff*

Hearing Date:  February 22, 2017
Hearing Time:  10:00 AM (EST)
Objection Deadline:  February 1, 2017

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>     Plaintiff-Applicant,<br><br>  v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>     Defendant. | Adv. Pro. No. 08-01789 (SMB)<br><br>SIPA Liquidation<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>     Debtor. | |

**TRUSTEE'S MOTION AND MEMORANDUM OF LAW TO AFFIRM HIS DETERMINATIONS DENYING CLAIMS OF CLAIMANTS HOLDING INTERESTS IN JUDY L. KAUFMAN ET AL. TENANCY IN COMMON, RICHARD B. FELDER AND DEBORAH FELDER TENANCY IN COMMON, AND KEITH SCHAFFER, JEFFREY SCHAFFER, CARLA R. HIRSCHHORN TENANCY IN COMMON**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ............................................................................... 1

BACKGROUND ................................................................................................. 2

    A.    THE COMMENCEMENT OF THE SIPA PROCEEDING ................................ 2

    B.    THE STRUCTURE OF THE TENANCIES IN COMMON, BLMIS
        ACCOUNTS, AND CLAIMS ............................................................... 3

        1.    Kaufman Tenancy In Common................................................ 4

        2.    Felder Tenancy In Common ..................................................... 6

        3.    Schaffer and Hirschhorn Tenancy In Common ......................... 7

    C.    THE BLMIS ACCOUNT RECORDS.................................................. 9

    D.    THE CLAIMS.................................................................................. 9

    E.    THE CUSTOMER DECISIONS ....................................................... 10

    F.    THE SIPC SERIES 100 RULES AND RELATED DECISIONS...................... 11

ARGUMENT ................................................................................................... 13

CONCLUSION ................................................................................................ 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Adler, Coleman Clearing Corp.*,
    204 B.R. 99 (Bankr. S.D.N.Y. 1997) ............................................................................. 13, 14

*In re Beacon Assocs. Litig.*,
    745 F. Supp. 2d 386 (S.D.N.Y. 2010) .............................................................................. 2

*In re Bernard L. Madoff Inv. Sec. LLC*,
    454 B.R. 285 (Bankr. S.D.N.Y. 2011) ............................................................................. 17

*In re Bernard L. Madoff Inv. Sec. LLC*,
    515 B.R. 161 (Bankr. S.D.N.Y. 2014) ............................................................................. 17

*In re Bernard L. Madoff Inv. Sec. LLC*,
    654 F.3d 229 (2d Cir. 2011) ............................................................................................ 2, 10

*In re Inv'rs Center, Inc.*,
    129 B.R. 339 (Bankr. E.D.N.Y. 1991) ............................................................................ 11

*In re Klein, Maus & Shire, Inc.*,
    301 B.R. 408 (Bankr. S.D.N.Y. 2003) ............................................................................. 17

*Kruse v. Sec. Inv'r Prot. Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*,
    708 F.3d 422 (2d Cir. 2013) ................................................................................... *passim*

*Mishkin v. Ensminger (In re Adler Coleman Clearing Co.)*,
    218 B.R. 689 (Bankr. S.D.N.Y. 1998) ............................................................................. 11

*Mishkin v. Siclari (In re Adler, Coleman Clearing Corp.)*,
    277 B.R. 520 (Bankr. S.D.N.Y. 2002) ............................................................................. 3, 17

*Sec. Inv'r Prot. Corp. v. Morgan, Kennedy & Co.*,
    533 F.2d 1314 (2d Cir. 1976) ................................................................................. *passim*

*SEC v. Madoff*,
    No. 1:08-cv-10791-LLS, 2008 WL 5197070 (S.D.N.Y. filed Dec. 11, 2008) ........................ 2

*Stafford v. Giddens (In re New Times Sec. Servs., Inc.)*,
    463 F.3d 125 (2d Cir. 2006) ............................................................................................ 16

**Statutes**

15 U.S.C. § 78aaa *et seq.* ........................................................................................................ 1

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

15 U.S.C. § 78eee(a)(4) ...................................................................................................2

15 U.S.C. § 78eee(b)(3) ...................................................................................................2

15 U.S.C. § 78eee(b)(4) ...................................................................................................2

15 U.S.C. § 78fff-1(a) ......................................................................................................3

15 U.S.C. § 78fff-3(a) ......................................................................................................3

15 U.S.C. § 78*lll*(2) ................................................................................................2, 3, 13

15 U.S.C. § 78*lll*(4) .......................................................................................................3

15 U.S.C. § 78*lll*(11) .....................................................................................................3

**Rules**

FED. R. CIV. P. 36(a)(3).........................................................................................7, 8, 15

**Other Authorities**

17 C.F.R. § 300.100(b) ..................................................................................................11

17 C.F.R. § 300.105(a)..............................................................................................12, 14

17 C.F.R. § 300.105(b) .............................................................................................12, 14

17 C.F.R. § 300.105(d) .............................................................................................12, 14

20 Am. Jur. 2d Cotenancy and Joint Ownership § 31 .................................................13

20 Am. Jur. 2d Cotenancy and Joint Ownership § 35 .................................................13

20 Am. Jur. 2d Cotenancy and Joint Ownership § 36 .................................................13

Irving H. Picard, as trustee ("Trustee") for the substantively consolidated liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15 U.S.C. § 78aaa *et seq.* ("SIPA"),[1] and the chapter 7 estate of Bernard L. Madoff ("Madoff"), respectfully submits this combined motion and memorandum of law (the "Motion") to affirm the denial of eight claims filed by claimants (the "Objecting Claimants") who objected to the Trustee's determinations and who were cotenants of one of the following BLMIS account holders: the Judy L. Kaufman et al. Tenancy in Common (the "Kaufman Tenancy In Common"); the Richard B. Felder and Deborah Felder Tenancy in Common (the "Felder Tenancy In Common"); and the Keith Schaffer, Jeffrey Schaffer, Carla R. Hirschhorn Tenancy in Common (the "Schaffer and Hirschhorn Tenancy In Common") (collectively, the "Tenancies In Common"). The Objecting Claimants are specifically identified in Exhibit 2 to the Declaration of Vineet Sehgal ("Sehgal Declaration") filed herewith. This Motion is based upon the law set forth below as well as the facts set forth in the accompanying Sehgal Declaration and the Declaration of Stephanie Ackerman ("Ackerman Declaration").

## PRELIMINARY STATEMENT

The Objecting Claimants seek separate customer status in this SIPA proceeding apart from the customer status of each of the Tenancies In Common listed above, based on their asserted interest in one of the three Tenancies In Common. The Objecting Claimants were cotenants in one of the three Tenancies in Common but did not have individual accounts in their own names, and therefore, they are not entitled to separate customer status under SIPA. The current Motion seeks to apply the Second Circuit decisions *Kruse v. Sec. Inv'r Prot. Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*, 708 F.3d 422 (2d Cir. 2013), and *Sec. Inv'r Prot. Corp. v.*

---

[1] For convenience, subsequent references to sections of the Securities Investor Protection Act shall be denoted simply as "SIPA § __."

*Morgan, Kennedy & Co.*, 533 F.2d 1314 (2d Cir. 1976), as well as the SIPC Series 100 Rules addressing the question of who is a "customer" under SIPA, to the Objecting Claimants through entry of an order affirming the Trustee's denial of their claims as listed in Exhibit 2 to the Declaration of Vineet Sehgal, disallowing their claims, and overruling the related claims objections on the grounds that Claimants are not "customers" as such term is used at SIPA § 78*lll*(2).[2]

## BACKGROUND

### A.    THE COMMENCEMENT OF THE SIPA PROCEEDING

The basic facts of the BLMIS fraud are widely known and have been recounted in numerous decisions. *See, e.g.*, *In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d 229, 231-4 (2d Cir. 2011); *In re Beacon Assocs. Litig.*, 745 F. Supp. 2d 386, 393–94 (S.D.N.Y. 2010).   On December 11, 2008, the Securities and Exchange Commission ("SEC") filed a complaint in the District Court against Madoff and BLMIS, captioned *SEC v. Madoff*, No. 1:08-cv-10791-LLS, 2008 WL 5197070 (S.D.N.Y. filed Dec. 11, 2008), alleging fraud through the investment advisor activities of BLMIS.   The SEC consented to the consolidation of its case with an application of the Securities Investor Protection Corporation ("SIPC").   Thereafter, SIPC filed an application under SIPA § 78eee(a)(4) alleging that because of its insolvency, BLMIS customers needed SIPA protection.   The District Court appointed the Trustee under SIPA § 78eee(b)(3) and removed the proceeding to this Court under SIPA § 78eee(b)(4).

Under SIPA, the Trustee is responsible, among other things, for recovering and distributing customer property to the fullest extent possible to a broker's customers, assessing claims, and liquidating other assets of the firm for the benefit of the estate and its creditors,

---

[2] The Trustee reserves all other bases to affirm his denial of such claims.

including claimants to the customer fund.   A SIPA trustee has the general powers of a bankruptcy trustee, in addition to the powers granted by SIPA.  SIPA § 78fff-1(a).  The statutory framework for the satisfaction of customer claims in a SIPA liquidation proceeding provides that "customers," as defined in SIPA § 78*lll*(2), share pro rata in "customer property,"  SIPA § 78*lll*(4), to the extent of their "net equity," as defined in SIPA § 78*lll*(11).   For each customer with a valid net equity claim, if the customer's share of customer property does not make him or her whole, SIPC advances funds to the SIPA trustee up to the amount of the customer's net equity, not to exceed $500,000 (the amount applicable to this case).  SIPA § 78fff-3(a).  It is the customer's burden to demonstrate he or she is entitled to customer status.  *Mishkin v. Siclari (In re Adler, Coleman Clearing Corp.)*, 277 B.R. 520, 557 (Bankr. S.D.N.Y. 2002) ("[I]t is well-established in the Second Circuit that a claimant bears the burden of proving that he or she is a 'customer' under SIPA.").

On December 23, 2008, this Court entered a Claims Procedures Order.  *See* ECF No. 12. Pursuant to that order, the Trustee determines claims eligible for customer protection under SIPA, and claimants may object to the Trustee's determination of a claim by filing an objection with this Court within a certain time period, after which the Trustee requests a hearing date for the objection and notifies the objecting claimant thereof.  *Id.*

## B.    THE STRUCTURE OF THE TENANCIES IN COMMON, BLMIS ACCOUNTS, AND CLAIMS

The Objecting Claimants purportedly contributed funds to one of three (3) BLMIS accounts, submitted eight (8) claims, and filed five (5) related objections to the Trustee's denials of those claims.  Two (2) claims were submitted by Objecting Claimants relating to the Kaufman Tenancy in Common who also filed two (2) objections to the Trustee's denial of their claims ("Kaufman Objecting Claimants"); three (3) claims were submitted by Objecting Claimants

3

relating to the Felder Tenancy in Common who also filed one (1) objection to the Trustee's denial of their claims ("Felder Objecting Claimants"); and three (3) claims were submitted by Objecting Claimants relating to the Schaffer and Hirschhorn Tenancy in Common who also filed two (2) objections to the Trustee's denial of their claims ("Schaffer and Hirschhorn Objecting Claimants"). *See* Sehgal Decl. ¶¶ 9-12, Exs. 1-3. The claims of the Tenancies in Common, the Trustee's determinations thereof, and any objections filed as to those determinations are not at issue in this Motion.

### 1.    Kaufman Tenancy In Common

BLMIS Account 1CM100 ("Account 1CM100") was opened in 1993 in the name of "Dr. Judy L. Kaufman" and Dr. Kaufman, alone, signed all opening documents including the BLMIS Option Agreement, Customer Agreement, and Trading Authorization. Sehgal Decl. Ex. 4, AMF00243782-88. On December 15, 1994, Dr. Judy L. Kaufman wrote to BLMIS requesting that the name on Account 1CM100 be changed to "Judy L. Kaufman Family–Tenants in Common" and identified the additional cotenants as Lisa D. Kaufman and Neal S. Kaufman. Sehgal Decl. Ex. 4, AMF00243774, 6. Also included in the customer file is a form, signed by Judy L. Kaufman, Lisa D. Kaufman, and Neal S. Kaufman, confirming the formation of the account as a tenancy in common. Sehgal Decl. Ex. 4, AMF00243775.

On December 26, 2003, Dr. Judy L. Kaufman again requested that Account 1CM100's name be changed, this time to include a fourth member identified as the Robert & Rebecca Epstein TR Robert & Rebecca Epstein Living Trust (the "Epstein Living Trust"), as an additional cotenant. Sehgal Decl. Ex. 4, AMF00243767. Then, on July 1, 2008, Dr. Kaufman requested that Account 1CM100's name be updated to add a fifth member, Daniel C. Epstein, to the Account as a cotenant. Sehgal Decl. Ex. 4, AMF00243752. As a result of these additions, Account 1CM100's name was changed to "Judy L. Kaufman et al. Tenants In Common."

Over the life of Account 1CM100, deposits were made primarily by Judy L. Kaufman, and occasionally her husband, Stephen Z. Kaufman, M.D., as well as Neal S. Kaufman and Lisa D. Kava (fka Lisa Kaufman). Sehgal Decl., Ex. 4, AMF00243768-71, AMF00243777. Dr. Judy L. Kaufman, however, made all withdrawal requests until October, 2005, at which time she authorized Neal S. Kaufman and Lisa D. Kava to request withdrawals on behalf of the Kaufman Tenancy In Common. Neither of the Kaufman Objecting Claimants—Daniel C. Epstein, and the Epstein Living Trust—were authorized to conduct business on behalf of Account 1CM100 and neither interacted with BLMIS. Furthermore, at all times, Dr. Judy L. Kaufman's social security number was associated with Account 1CM100 and all correspondence and withdrawals were sent to her home address. Sehgal Decl. Ex. 4, AMF00243752, AMF00243767, AMF00243774.

The Trustee served discovery on the Kaufman Objecting Claimants and both responded. Through their responses, Daniel C. Epstein and the Epstein Living Trust confirmed that they did not transact any business with BLMIS on behalf of Account 1CM100, did not correspond with BLMIS on behalf of Account 1CM100, and that the deposits they made to Account 1CM100 were via checks made payable to BLMIS but delivered to "Judy and Steve Kaufman" instead of to BLMIS. Ackerman Decl. Ex. 5, MCMDR_00000336; Ackerman Decl. Ex. 6, MCMDR_00000413. Furthermore, each of the Kaufman Objecting Claimants admitted that they had no control over investment decisions for Account 1CM100 and that Account 1CM100 was not held in either of their names. *Id.*

Judy L. Kaufman filed a customer claim on behalf of the Kaufman Tenancy In Common as account holder of BLMIS Account 1CM100. The Trustee denied that claim because, based on the Trustee's analysis, the amount of money that the Kaufman Tenancy In Common withdrew from Account 1CM100 was greater than the amount that was deposited, making the account

holder a "net winner." Thus, a determination letter was sent to the Kaufman Tenancy In Common denying its customer claim. An objection to the Trustee's determination was timely filed on December 21, 2009.[3]

### 2. Felder Tenancy In Common

BLMIS Account 1ZA249 ("Account 1ZA249") was opened on December 12, 1992 in the name of Richard B. Felder and Deborah Felder Tenants In Common. Sehgal Decl. Ex. 7, AMF00006687, 9. Richard Felder signed the BLMIS account opening documents including the Customer Agreement, Trading Authorization, and Option Agreement. Sehgal Decl. Ex. 7, AMF00006689-98. The cover letter signed by Richard Felder at the time Account 1ZA249 was opened directs BLMIS to establish Account 1ZA249 as a tenancy in common and states that the funds in Account 1ZA249 are owned by him, Deborah Felder, Jeffrey D. Felder, and Jonathan Felder as tenants in common. Sehgal Decl. Ex. 7, AMF00006684-5. This is the only reference to two of the three Felder Objecting Claimants, Jeffrey D. and Jonathan Felder, in the BLMIS books and records. The third Felder Objecting Claimant—The Richard and Deborah Felder Foundation—is not referenced in the customer file for Account 1ZA249 at all. None of the Felder Objecting Claimants were authorized to conduct business on behalf of Account 1ZA249. Account 1ZA249 was managed by Richard Felder at all times; all deposits were sent to BLMIS by letter from Richard Felder and withdrawal requests were signed by both Deborah and Richard Felder. *See, e.g.*, Sehgal Decl. Ex. 7, AMF00006667-0.

The Trustee served discovery requests on Jeffrey D. Felder as the attorney for the three Felder Objecting Claimants. *See* Ackerman Decl. ¶ 11. No response was received. By failing to respond to the requests for admissions, the Felder Objecting Claimants admitted (among other

---

[3] BLMIS Account 1CM100 is also a subject account in an ongoing adversary proceeding filed by the Trustee. *Picard v. Epstein et al.*, Adv. No. 10-04527 (SMB).

things) that they did not have an account in their names at BLMIS, never deposited or withdrew cash or securities with or from BLMIS, did not receive investment statements, correspondence or tax statements from BLMIS, did not have any control, investment discretion or decision-making power over any investments at BLMIS, and that their only relationship to BLMIS existed by way of their relationship to the Felder Tenancy In Common. *See generally* Ackerman Decl. ¶¶ 5, 10, 11-16, Exs. 1-6; *see also* FED. R. CIV. P. 36(a)(3).

Richard and Deborah Felder filed a customer claim on behalf of the Felder Tenancy In Common. The Trustee issued a determination letter which allowed the claim in the amount of $3,768,727.94. To allow for the conclusion of discussions between the Trustee and the account holder, the Trustee extended the objection period and an objection to the Trustee's determination was filed on February 19, 2011.[4]

### 3.    Schaffer and Hirschhorn Tenancy In Common

BLMIS Account 1ZA339 ("Account 1ZA339") was opened in December 1992 in the name of Lawrence and Elaine Schaffer as Joint Tenants with Rights of Survivorship. Sehgal Decl. Ex. 11, AMF00011230-1. Account 1ZA339's opening forms were signed by Lawrence Schaffer or Lawrence and Elaine Schaffer. Sehgal Decl. Ex. 11, AMF00011233-42. All withdrawal requests were signed by both Lawrence and Elaine Schaffer through October 1999 at which time Elaine Schaffer was removed from Account 1ZA339 at Lawrence Schaffer's request. Sehgal Decl. Ex. 11, AMF00011216.

---

[4] The Motion does not seek to disallow the claim of the account holder, Richard B. Felder and Deborah Felder Tenants In Common, or seek to overrule the related objection to the determination of that claim (the "Felder TIC Objection"). ECF No. 3865. However, the Felder TIC Objection was also filed on behalf of the three Felder Objecting Claimants. The Motion seeks to overrule only that portion of the Felder TIC Objection that seeks customer status for the Felder Objecting Claimants. The remainder of the Felder TIC Objection will be resolved through a future motion.

In November 2001, Lawrence Schaffer requested that Account 1ZA339 be changed to be held in name of Keith Schaffer, Jeffrey Schaffer and Carla R. Hirschhorn Tenants In Common. Sehgal Decl. Ex. 11, AMF00011191-2.  At that time, Keith Schaffer, Jeffrey Schaffer and Carla R. Hirschhorn each signed a BLMIS Tenants In Common account form which indicated that each held a 33.3% interest in Account 1ZA339.  *Id.*  All subsequent withdrawals through March 2007 were requested from BLMIS by Keith Schaffer.  Sehgal Decl. Ex. 11, AMF00011177-87. After March 2007, all requests for withdrawals from Account 1ZA339 were signed by all three Schaffer and Hirschhorn Objecting Claimants— Keith Schaffer, Jeffrey Schaffer and Carla R. Hirschhorn.  Sehgal Decl. Ex. 11, AMF00011172, 75-6.

The Trustee served discovery requests on the three Schaffer and Hirschhorn Objecting Claimants.  No response was received.  By failing to respond to the requests for admissions, the Schaffer and Hirschhorn Objecting Claimants admitted (among other things) that they did not have an account in their own names at BLMIS, never deposited cash or securities with or BLMIS for an account their individual names, did not receive investment statements, correspondence or tax statements from BLMIS in their individual names, did not have any control, investment discretion or decision-making power over any investments at BLMIS, and that their only relationship to BLMIS existed by way of their relationship to the Schaffer and Hirschhorn Tenancy In Common.  *See generally* Ackerman Decl. ¶¶ 5, 10, 11-16, Exs. 1-6; *see also* Fed. R. Civ. P. 36(a)(3).

A customer claim was filed by Keith Schaffer, Jeffrey Schaffer, and Carla R. Hirschhorn as Tenants In Common in which they assert that they are each entitled to one third of Account 1ZA339's net equity.  The Trustee denied the claim because based on the Trustee's analysis, the amount of money that the Schaffer and Hirschhorn Tenancy In Common withdrew from Account

1ZA339 was greater than the amount that was deposited, making the account holder a "net winner." Thus, a determination letter was sent to the Schaffer and Hirschhorn Tenancy In Common denying its customer claim. An objection to the Trustee's determination was timely filed on March 23, 2010.[5]

## C.    THE BLMIS ACCOUNT RECORDS

Each account was held in the name of one of the Tenancies in Common (the "Accounts," and each, an "Account") with BLMIS. Sehgal Decl., ¶¶ 6, 27, Ex. 1. The books and records of BLMIS reflect money deposited or withdrawn on behalf of the Accounts, and not attributed to any of the Objecting Claimants individually. *See* Sehgal Decl., ¶¶ 16, 19, 23, 27, Exs. 4, 7, 11.

Because the Accounts at BLMIS were maintained as tenancies in common, the books and records of BLMIS reflect the amounts owing and owed by the BLMIS estate for each Account. The books and records of BLMIS do not, in contrast, reflect all deposits or withdrawals directly to or from BLMIS by any of the individual Objecting Claimants with regard to the BLMIS Accounts. They also do not show what amounts any of the individual Objecting Claimants contributed to, or withdrew from, the Tenancies In Common accounts. *See id*.

## D.    THE CLAIMS

The claims at issue in this Motion involve only the purported interests held by the Objecting Claimants who are claiming interests in one of the three Tenancies In Common and not the interests of the three Tenancies In Common themselves. The Objecting Claimants, the eight (8) claims filed by them, and the five (5) objections to the determination of those claims, are specifically identified in Exhibits 2 and 3 to the Sehgal Declaration. Sehgal Decl. ¶¶ 9-13,

---

[5] A second objection was filed on behalf of the account holder, the Schaffer and Hirschhorn Tenancy In Common, as well as the individual Schaffer and Hirschhorn Objecting Claimants (the "Schaffer and Hirschhorn TIC Objection"). ECF No. 3189. The Motion seeks to overrule only that portion of the Schaffer and Hirschhorn TIC Objection that seeks customer status for the Schaffer and Hirschhorn Objecting Claimants. The remainder of the objection will be resolved through a future motion.

Exs. 1-3. The Trustee denied these eight (8) claims because the Objecting Claimants lacked individual BLMIS accounts in their names and, thus were not customers of BLMIS. Sehgal Decl. ¶11. This Motion addresses all objections to the determination of the specified claims by the Objecting Claimants identified on Exhibit 2 of the Sehgal Declaration.

Since receiving the five (5) docketed objections to the claims determinations, the Trustee served discovery requests on each of the Objecting Claimants seeking to determine their basis for claiming customer status, and inquiring into deposits, payments, communications, account openings, and their relationship with the account holder. As noted above, only the two Kaufman Objecting Claimants responded. *See supra* Section B(1); *see also* Ackerman Decl. ¶¶ 5, 15-18, Exs. 5-8.

E.    **THE CUSTOMER DECISIONS**

In *Kruse v. Sec. Inv'r Prot. Corp.*, the Second Circuit found that investors who bought interests in a limited partnership that in turn invested partnership funds via the partnership's own BLMIS account "never entrusted *their* cash or securities to BLMIS and, thus, fail to satisfy this "critical aspect of the 'customer' definition" regardless of their intent. 708 F.3d at 427 (quoting *In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d at 236). The Second Circuit confirmed that "[j]udicial interpretations of 'customer' status support a narrow interpretation of the SIPA's provisions." *Kruse*, 708 F.3d at 426 (citations omitted). Because the money sent to BLMIS belonged to the accountholders, not to the individual claimants, the claimants in *Kruse* failed to meet this fundamental requirement of entrustment of their own cash or securities to BLMIS. *Kruse*, 708 F.3d at 426–7.

The Second Circuit also found that the individual claimants did not exhibit other indicia of customer status in their dealings (or lack of dealings) with BLMIS. *Id.* Indicia of customer status include: (i) a direct financial relationship with BLMIS; (ii) a property interest in the funds

10

invested directly with BLMIS; (iii) securities accounts with BLMIS; (iv) control over the account holders' investments with BLMIS; and (v) identification of the alleged customer in BLMIS's books and records. *Id.* (citing *Morgan, Kennedy & Co.*, 533 F.2d at 1318). Thus, without entrustment of assets to BLMIS and evidence of any of the indicia of customer status, the Second Circuit held that the objecting claimants failed to sustain their burden of proving that they are customers of BLMIS. Since *Kruse*, this Court has granted fifteen motions by the Trustee to affirm his determinations that claimants who invested in a BLMIS accountholder are not customers under SIPA.[6]

## F.    THE SIPC SERIES 100 RULES AND RELATED DECISIONS

SIPC's Series 100 Rules set forth the circumstances under which "accounts held by a customer in different capacities" will be treated as separate customers of the debtor. 17 C.F.R. § 300.100(b) (2014). SIPC's Rules are controlling because the SEC promulgated the Rules and as result, they "have the force and effect of law." *Mishkin v. Ensminger (In re Adler Coleman Clearing Co.)*, 218 B.R. 689, 699 (Bankr. S.D.N.Y. 1998); *In re Inv'rs Center, Inc.*, 129 B.R. 339, 348 (Bankr. E.D.N.Y. 1991) ("SIPC's rules will have the force and effect of law.").

---

[6] *See* Order Approving Trustee's Motion To Affirm His Determinations Denying Claims of Claimants Holding Interests In: S&P or P&S Associates, General Partnerships, ECF No. 9450 (Mar. 10, 2015); Peerstate Equity Fund, L.P., ECF No. 9883 (Apr. 27, 2015); The Lazarus-Schy Family Partnership, The Schy Family Partnership, Or The Lazarus Investment Group, ECF No. 10010 (May 18, 2015); Epic Ventures, LLC, ECF No. 10267 (June 25, 2015); Partners Investment Co., Northeast Investment Club, And Martin R. Harnick & Steven P. Norton, Partners, ECF No. 10894 (July 29, 2015); The Whitman Partnership, The Lucky Company, The Petito Investment Group, And The Harwood Family Partnership, ECF No. 11145 (Aug. 26, 2015); 1973 Masters Vacation Fund, Bull Market Fund, And Strattham Partners, ECF No. 11920 (Oct. 29, 2015); Black River Associates LP, MOT Family Investors, LP, Rothschild Family Partnership, and Ostrin Family Partnership, ECF No. 12757 (Mar. 3, 2016); The Article Third Trust, Palmer Family Trust, Maggie Faustin, Estate of Theodore Schwartz, and Miller Trust Partnership, ECF No. 13172 (Apr. 26, 2016); William M. Pressman, Inc., William Pressman, Inc. Rollover Account, and AGL Life Assurance Company, ECF No. 13466 (June 7, 2016); Palko Associates, Gloria Jaffe Investment Partnership, and the Miller Partnership, ECF No. 13780 (July 22, 2016); Chalek Associates LLC, Chaitman/Schwebel LLC, FGLS Equity LLC, Larsco Investments LLC, and Kuntzman Family LLC, ECF No. 14225 (Oct. 4, 2016); AHT Partners, Pergament Equities, LLC, SMT Investors LLC, Greene/Lederman, L.L.C., And Turbo Investors, LLC, ECF No. 14346 (Oct. 27, 2016); M&H Investment Group L.P., PJFN Investors Limited Partnership, Kenn Jordan Associates and Harmony Partners, Ltd., ECF No. 14537 (Dec. 1, 2016); and Sienna Partnership, L.P., Katz Group Limited Partnership, and Fairfield Pagma Associates, L.P., ECF No. 14774 (Dec. 22, 2016).

An account held by a tenancy in common will be treated as held by a single customer under SIPC Rule 105 for purposes of SIPA if it is a "qualifying joint account." 17 C.F.R. §§ 300.105(a),(b).  SIPC Rule 105 provides for two types of qualifying joint accounts. 17 C.F.R. §§ 300.105(a),(d). SIPC Rule 105(a) provides for a qualifying joint account if all joint account holders "possess[] authority to act" on behalf of the entire account.  17 C.F.R. §§ 300.105(a). SIPC Rule 105(d) provides for a qualifying joint account where *less* than all joint account holders are authorized to act on behalf of the account.  17 C.F.R. §§ 300.105(d).  If any cotenant of the tenancy in common lacks the authority to act on behalf of the entire account, the result is that the tenancy in common will be considered either an individual account or a "qualifying joint account of the co-owner or co-owners" who do "have[] the exclusive power to act." 17 C.F.R. § 300.105(d).  Whether an account is a qualifying joint account under SIPC Rule 105(a) or 105(d), SIPA will treat the tenancy in common as the customer, and not the individual cotenants.

In *Morgan Kennedy*, the Second Circuit relied upon SIPC Rule 105 when considering the customer status of a joint account in the context of profit-sharing trustees.  "Rule 105 . . . provides that where co-owners of a qualifying joint account also hold other accounts in different capacities, the joint account will be treated as belonging to a 'separate customer';. . . and the co-owners will be required to divide the single award in proportion to their ownership interests in the account." 533 F.2d at 1320.  The court further clarified that "under SIPA, separate coverage for accounts held in different capacities is not to be confused with individual coverage for each individual owning some portion of, or interest in, the particular account."  *Id*.  Relying on *Morgan Kennedy* and the SIPC Rules, this Court subsequently held that "[j]oint account holders constitute a single 'customer' under SIPA" and the "joint account holders *share any payments on the account of a valid customer claim in proportion to their ownership interests in the account*."

*In re Adler, Coleman Clearing Corp.*, 204 B.R. 99, 106 (Bankr. S.D.N.Y. 1997) (emphasis added).

## ARGUMENT

To be a "customer" under SIPA, an investor must have "a claim on account of securities received, acquired, or held by the debtor in the ordinary course of its business as a broker or dealer from or for the securities accounts of such person," including "any person who has deposited cash with the debtor for the purpose of purchasing securities." SIPA § 78*lll*(2). Thus, to be a "customer," an investor must have entrusted cash or securities to the debtor for the purpose of trading or investing in securities.

Unlike the objecting claimants in *Kruse*, who invested in a vehicle that in turn invested in BLMIS, the Objecting Claimants claim customer status because each contributed to a tenancy in common as cotenants. Unlike a partnership or other investment vehicle, a "tenancy in common is a form of ownership in which each cotenant owns a separate fractional share of undivided property." 20 Am. Jur. 2d Cotenancy and Joint Ownership § 31 (2016). There are no local governmental registration requirements for the formation of a tenancy in common, and it is enough that the accounts were expressly designated with BLMIS as tenancies in common. *See id.* at §§ 35, 36 ("An owner's conveyance to himself and another expressly as tenants in common results in [a tenancy in common]."). But the Objecting Claimants' ownership interests in the tenancy's underlying assets do not translate to each Objecting Claimant having individual customer status under SIPA. Rather, tenancies in common "are separate 'customers' under [SIPA] § 78*lll*(2)" and collectively the "[j]oint account holders constitute a single 'customer' under SIPA." *Adler*, 204 B.R. at 105-6. The joint account holders then share any payments on account of a valid customer claim in proportion to their individual ownership interests in the account. *Id.* (citing *Morgan Kennedy* 533 F.2d at 1320).

As tenancies in common, each of the Accounts are qualifying joint accounts under SIPC

Rule 105.   Under 105(a), all cotenants must have the authority to act on behalf of the entire

account in order for the account to be a qualifying joint account of all cotenants.   17 C.F.R. §

300.105(a).   If any cotenants lack that authority, the account is a qualifying joint account *only* as

to the co-tenants who do possess such authority.   17 C.F.R. § 300.105(d).   Based on the

information available to the Trustee, it appears that the three Tenancies In Common in this

Motion are qualifying joint accounts under SIPC Rule 105(a)[7] or 105(d).[8]   As qualifying joint

accounts, each Tenancy In Common is a "separate customer" of BLMIS pursuant to SIPC Rule

105(b) and SIPA.   *Adler*, 204 B.R. at 105.   Thus the "the joint account holders [for each

Account] constitute a single 'customer' under SIPA [78*lll*(2)]."   *Id.* at 105-6.   As a result, the

Objecting Claimants are not individual customers under SIPA and may only share ratably in any

valid customer claim attributable to the particular Tenancy In Common.   *See id.*; *Morgan*

*Kennedy*, 533 F.2d at 1320.

Furthermore, the Objecting Claimants do not meet the requirements for customer status

as outlined in *Morgan Kennedy*, 533 F.2d at 1318, and reaffirmed in *Kruse*, 708 F.3d at 427.   In

*Morgan Kennedy*, the Second Circuit rejected the argument that the beneficial owners of the

account holder were the "customers" under SIPA, citing the facts that: (1) title to the trust assets

was held by the account holder, not the beneficiaries; (2) the securities account with the debtor

---

[7] The Schaffer and Hirschhorn Tenancy In Common is a qualifying joint account pursuant to SIPC Rule 105(a) because each of the cotenants—Keith Schaffer, Jeffrey Schaffer and Carla R. Hischhorn—possess authority to act on behalf of the entire account as evidenced by the BLMIS books and records.  *See supra* Section B(3).

[8] Under SIPC Rule 105(d), unless all cotenants possess authority to act on behalf of the entire account, the account is a qualifying joint account *only* as to the co-tenants who do possess such authority.  As such, the Kaufman Tenancy In Common is a qualifying joint account as to Judy L. Kaufman, Lisa Kava and Neal S. Kaufman but not as to the Kaufman Objecting Claimants—Daniel C. Epstein and the Epstein Living Trust.  *See supra* Section B(1).  Similarly, the Felder Tenancy In Common is a qualifying joint account as to Richard and Deborah Felder, but not the Felder Objecting Claimants—Jeffrey D. Felder, Jonathan Felder, and The Richard and Deborah Felder Foundation.  *See supra* Section B(2).

was in the name of the account holder, not the beneficiaries; (3) the account holder had the exclusive power to entrust the assets to the debtor; (4) the beneficiaries were unknown to the broker; and (5) the beneficiaries had no legal capacity in which they could deal with the debtor. 533 F.2d at 1318.

Each of the Objecting Claimants was served with requests for admissions, interrogatories, and requests for production. Only the two Kaufman Objecting Claimants responded. By failing to respond to the requests for admissions, the remaining Objecting Claimants admitted them. FED. R. CIV. P. 36(a)(3). These admissions show that Objecting Claimants lack individual relationships with BLMIS that fit the *Morgan Kennedy* criteria and that their claims of "customer" status are unsupported. In fact, the non-respondents, as well as the two Kaufman Objecting Claimants, admitted that: (i) the relevant Account was not titled in their name;[9] (ii) that they never received investment statements or tax statements in their names from BLMIS;[10] (iii) that they never paid cash directly to BLMIS for credit to an account in their names;[11] (iv) never deposited securities directly with BLMIS;[12] (v) that their only relationship to BLMIS existed by way of their relationship to the Account holder;[13] and (vi) that they did not have any control, investment discretion or decision-making power over any investment assets at BLMIS.[14] In addition, the Felder and Kaufman Objecting Claimants also admitted that they never withdrew

---

[9] Ackerman Decl., Exs. 1-6, ¶ 1.

[10] Ackerman Decl., Ex. 1, ¶¶ 8, 9; Exs. 2-4, ¶¶ 5,6; Exs. 5-6, ¶¶ 8,9.

[11] Ackerman Decl., Exs. 1-4, ¶ 4; Exs. 5-6, ¶ 5.

[12] Ackerman Decl., Ex. 1, ¶ 6; Exs. 2-4, ¶ 3; Exs. 5-6, ¶ 4.

[13] Ackerman Decl. Ex. 1, ¶ 13; Exs. 5-6, ¶ 12. Although the Schaffer and Hirschhorn Objecting Claimants admitted their lack of control by virtue of their failure to respond, Ackerman Decl. Exs. 2-4, ¶ 8, as discussed above, each was, in fact, authorized to act on behalf of the Account. Sehgal Decl. Ex. 11, AMF00011191.

[14] Ackerman Decl. Ex. 1, ¶ 13; Exs. 2-4, ¶ 8; Exs. 5-6, ¶ 12.

or received funds directly from BLMIS,[15] and that they never entered into any contracts in their names with BLMIS.[16]   The Schaffer and Hirshhorn Objecting Claimants' discovery requests omitted these requests for admissions because, as the sole cotenants, they entered into a Tenancy In Common agreement with BLMIS[17] and received withdrawals from BLMIS in the name of the Schaffer and Hirshhorn Tenancy In Common made payable to the Schaffer and Hirshhorn Tenancy In Common.[18]   While this distinguishes the Schaffer and Hirschhorn Objecting Claimants from the Felder and Kaufman Objecting Claimants, it is insufficient to establish their individual customer status.

The Kaufman Objecting Claimants' responses and productions were also unpersuasive. Although the Kaufman Objecting Claimants did produce to the Trustee checks made payable to BLMIS from the accounts of Daniel C. Epstein and the Epstein Living Trust, they admit that these checks were not sent to BLMIS but rather to "Judy and Steve Kaufman." And, the Kaufman Objecting Claimants "believe[d] they [Judy and Steve Kaufman] sent these checks directly to BLMIS," but admit they never made a payment of cash directly to BLMIS. Ackerman Decl. Ex. 6, MCMDR_00000413.   As such, the Kaufman Objecting Claimant's relationships were with Judy and Stephen Kaufman, not BLMIS.

As the Second Circuit has explained, "[j]udicial interpretations of 'customer' status support a narrow interpretation of the SIPA's provisions." *Kruse*, 708 F.3d at 426 (quoting *Stafford v. Giddens (In re New Times Sec. Servs., Inc.)*, 463 F.3d 125, 127 (2d Cir. 2006)).   Thus, customer status under SIPA is narrowly construed and is the burden of the claimant to establish.

---

[15] Ackerman Decl., Ex. 1, ¶ 7; Exs. 5-6, ¶ 6.

[16] Ackerman Decl., Ex. 1, ¶ 11; Exs. 5-6, ¶ 10.

[17] Sehgal Decl. Ex. 11, AMF00011191.

[18] Sehgal Decl. Ex. 11, AMF00011175-6.

*See In re Bernard L. Madoff Inv. Sec. LLC*, 515 B.R. 161, 166 (Bankr. S.D.N.Y. 2014); *In re Bernard L. Madoff Inv. Sec. LLC*, 454 B.R. 285, 294 (Bankr. S.D.N.Y. 2011) (citing *In re Klein, Maus & Shire, Inc.*, 301 B.R. 408, 418 (Bankr. S.D.N.Y. 2003)) ("The burden is on the claimant to establish he is a 'customer' entitled to SIPA protection, and such a showing 'is not easily met.'"); *see also Adler*, 277 B.R. at 557 ("[I]it is well-established in the Second Circuit that a claimant bears the burden of proving that he or she is a 'customer' under SIPA."). The Objecting Claimants have not met this burden. Thus, under Second Circuit precedent and the SIPC Series 100 Rules the Objecting Claimants are not SIPA customers.

## CONCLUSION

For all of the foregoing reasons, the Trustee respectfully requests that the Court affirm the Trustee's determinations denying the Objecting Claimants' eight claims, overrule the Objecting Claimants' five objections, disallow their claims, and grant such other and further relief as the Court deems just and proper.

Dated: New York, New York
      January 13, 2017

Respectfully submitted,

*/s/ David J. Sheehan*
David J. Sheehan
Email: dsheehan@bakerlaw.com
Nicholas J. Cremona
Email: ncremona@bakerlaw.com
Jorian L. Rose
Email: jrose@bakerlaw.com
Amy E. Vanderwal
Email: avanderwal@bakerlaw.com
Stephanie A. Ackerman
Email: sackerman@bakerlaw.com
**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, New York 10111
Tel: (212) 589-4200
Fax: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Estate of Bernard L. Madoff*