# EXHIBIT D

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>       Plaintiff,<br><br>       v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br><br>       Defendant. | Adv. Pro. No. 08-01789 (SMB)<br><br>SIPA Liquidation<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>       Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>       Plaintiff,<br><br>       v.<br><br>FAIRFIELD SENTRY LIMITED, et al.,<br><br>       Defendants. | Adv. Pro. No. 09-01239 (SMB) |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>       Plaintiff,<br><br>       v.<br><br>SAFEHAND INVESTMENTS, et al.,<br><br>       Defendants. | Adv. Pro. No. 12-01701 (SMB) |

| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | Adv. Pro. No. 12-01702 (SMB) |
| --- | --- |
| Plaintiff, | |
| v. | |
| BARRENECHE, INC., et al., | |
| Defendants. | |

**FG FOREIGN DEFENDANTS' SUPPLEMENTAL REPLY MEMORANDUM
OF LAW IN FURTHER SUPPORT OF THEIR MOTION TO
DISMISS BASED ON EXTRATERRITORIALITY**

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT .................................................................................1

ARGUMENT ..........................................................................................................5

I.  THE TRUSTEE'S PLEADINGS AND STIPULATION ESTABLISH THAT
    THE TRANSFERORS AND TRANSFEREES WERE FOREIGN AND DO
    NOT MEET HIS BURDEN OF PLEADING SPECIFIC FACTS
    SUGGESTING DOMESTIC TRANSFERS ..................................................5

    A.  The Trustee Concedes That The FG Foreign Defendants And The Other
        Transferors Were Foreign And Their Operations Had A Foreign Focus ...............5

    B.  The Trustee's Conclusory Allegation That FGG Was A *De Facto*
        Partnership Or Partnership By Estoppel Is Irrelevant, Belied By His Own
        More Specific Pleadings, And In Any Event Not Adequately Pled .......................7

        1.  The Trustee's Allegation Is Irrelevant ........................................................7

        2.  The Trustee's Allegation Is Belied By His Specific Pleadings .................8

        3.  The Trustee Has Not Adequately Pled A Partnership ................................9

II. THE CLAIMS SEEKING TO AVOID THE TRANSFERS AT ISSUE HERE
    SHOULD BE DISMISSED WITH RESPECT TO EACH FG FOREIGN
    DEFENDANT ........................................................................................12

    A.  The Entity FG Foreign Defendants And Other Entity Transferors ......................13

    B.  The Individual FG Foreign Defendants ..............................................................28

        The Trustee's Motion to Amend to Substitute the False Allegation Regarding the
        Piedrahitas' Residence Also Should Be Denied on Grounds of Bad Faith and
        Dilatory Motive .................................................................................33

CONCLUSION ........................................................................................38

# TABLE OF AUTHORITIES

**Cases**

*Am. Renaissance Lines, Inc. v. Saxis S.S. Co.*,
  502 F.2d 674 (2d Cir. 1974) .......................................................................................8

*Bear, Stearns Sec. Corp. v. Gredd (In re Manhattan Inv. Fund Ltd.)*,
  397 B.R. 1 (S.D.N.Y. 2007) .......................................................................................4

*Ben Hashem v. Al Sahyif*,
  [2009] 1 FLR 115, [2008] EWHC 2380 (Eng. High Ct. Fam. Div. Sept. 22, 2008) ................22

*Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*,
  369 F.3d 212 (2d Cir. 2004) .....................................................................................32

*Chambers v. Time Warner, Inc.*,
  282 F.3d 147 (2d Cir. 2002) .......................................................................................3

*Crawford v. Franklin Credit Mgmt. Corp.*,
  No. 08 CIV. 6293, 2011 WL 1118584 (S.D.N.Y. Mar. 23, 2011) ............................................13

*Cromer Fin. Ltd. v. Berger*,
  137 F. Supp. 2d 452 (S.D.N.Y. 2001) .............................................................................12

*Danjaq, S.A. v. Pathe Commc'ns Corp.*,
  979 F.2d 772 (9th Cir. 1992) .....................................................................................19

*DeJesus v. Sears, Roebuck & Co.*,
  87 F.3d 65 (2d Cir. 1996) .........................................................................................8

*Electronic Switching Indus. v. Faradyne Elec. Corp.*,
  833 F.2d 418 (2d Cir. 1987) .................................................................................21, 25

*First Am. Corp. v. Price Waterhouse LLP*,
  988 F. Supp. 353 (S.D.N.Y. 1997) ................................................................................11

*Forman v. Davis*,
  371 U.S. 178 (1962) ...............................................................................................33

*Forte v. BNP Paribas*,
  No. 14-CV-8556, 2015 WL 3604317 (S.D.N.Y. June 8, 2015) .................................................20

*Gaied v. N.Y. State Tax Appeals Tribunal*,
  22 N.Y.3d 592 (2014) .........................................................................................30, 36

*Genger v. Genger*,
  121 A.D.3d 270 (1st Dep't 2014) .........................................................................22, 23, 25, 27

*Gouveia v. Cahillane (In re Cahillane)*,
    408 B.R. 175 (Bankr. N.D. Ind. 2009)...................................................................................4

*Harris v. Mills*, 572 F.3d 66 (2d Cir. 2009)..................................................................................10

*Hartford Accident & Indemnity Co. v. Oles*,
    274 N.Y.S. 349 (N.Y. Sup. Ct. 1934)....................................................................................11

*Hertz Corp. v. Friend*,
    559 U.S. 77 (2010)..................................................................................................................20

*Hirsch v. Arthur Anderson & Co.*,
    72 F.3d 1085 (2d Cir. 1995)...................................................................................5, 24, 27, 32

*In re Currency Conversion Fee Antitrust Litig.*,
    265 F. Supp. 2d 385 (S.D.N.Y. 2003)...............................................................21, 23, 24, 26

*Jazini v. Nissan Motor Co.*,
    148 F.3d 181 (2d Cir. 1998)...................................................................................................19

*Kidz Cloz, Inc. v. Officially for Kids, Inc.*,
    320 F. Supp. 2d 164 (S.D.N.Y. 2004)...................................................................................10

*Kosower v. Gutowitz*,
    No. 00 Civ. 9011, 2001 WL 1488440 (S.D.N.Y. Nov. 21, 2001) ..........................................10

*La Piel, Inc. v. Richina Leather Indus. Co.*,
    No. 10-CV-1050, 2013 WL 1315125 (E.D.N.Y. Mar. 29, 2013)......................................17, 20

*Lismore v. Societe Generale Energy Corp.*,
    No. 11 Civ. 6705, 2012 WL 3577833 (S.D.N.Y. Aug. 17, 2012) ...........................................32

*Manuchar Steel Hong Kong Ltd. v. Star Pacific Line Pte Ltd.*,
    [2014] 4 SLR 832, [2014] SGHC 181 (Sing. High Ct. Sept. 23, 2014) ...................................23

*Mills v. Everest Reins. Co.*,
    410 F. Supp. 2d 243 (S.D.N.Y. 2006)......................................................................................4

*N. Am. Knitting Mills, Inc. v. Int'l Women's Apparel, Inc.*,
    No. 99 Civ. 4643, 2000 WL 1290608 (S.D.N.Y. Sept. 12, 2000) ...........................................12

*Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. BP Amoco P.L.C.*,
    No. 03 CIV. 0200, 2003 WL 1618534 (S.D.N.Y. Mar. 27, 2003) ...........................................20

*Pergament v. Yerushalmi (In re Yerushalmi)*,
    487 B.R. 98 (Bankr. E.D.N.Y. 2012)...............................................................22, 23, 25, 27

*Perry v. NYSARC, Inc.*
    424 Fed. Appx. 23 (2d Cir. 2011) ...........................................................................................32

iii

*Picard v. Merkin (In re BLMIS)*,
   515 B.R. 117 (Bankr. S.D.N.Y. 2014) ............................................................... 3

*Pinnacle Consultants, Ltd. v. Leucadia Nat. Corp.*,
   101 F.3d 900 (2d Cir. 1996) ............................................................................ 19

*Prest v. Petrodel Res. Ltd.*
   [2013] 3 WLR 1, [2013] UKSC 34 (U.K. Sup. Ct. June 12, 2013) .......................... 22

*Salahuddin v. Jones*,
   992 F.2d 447 (2d Cir. 1993) ........................................................................... 34

*Sherwood Invs. Overseas Ltd. v. Royal Bank of Scotland N.V.*
   *(In re Sherwood Invs. Overseas Ltd., Inc.)*,
   No. 6:10-ap-00158, 2015 WL 4486470 (M.D. Fl. July 22, 2015) ..................... 17, 20

*SIPC v. BLMIS (In re Madoff Sec.)*,
   513 B.R. 222 (S.D.N.Y. 2014) ................................................................. passim

*SIPC v. BLMIS (In re Madoff Sec.)*,
   No. 12 MC 115, 2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013) ............................ 3

*Sitchenko v. DiResta*,
   512 F. Supp. 758 (E.D.N.Y. 1981) .................................................................. 11

*Stayton v. Am. Express Co.*,
   604 F.3d 758 (2d Cir. 2010) ............................................................................ 3

*TNS Holdings, Inc. v. MKI Sec. Corp.*,
   92 N.Y.2d 335 (1998) ................................................................................... 25

*Torrico v. Int'l Bus. Machs. Corp.*,
   213 F. Supp. 2d 390 (S.D.N.Y. 2002) ............................................................. 31

*United States v. Richardson*,
   469 F.2d 349 (10th Cir. 1972) ....................................................................... 11

*Walker Int'l Holdings Ltd. v. Olearius Ltd.*,
   [2003] CILR 457 (Cayman Is. Grand Ct. Oct. 14, 2003) .................................... 22

**Statutes**

11 U.S.C. § 550 ................................................................................................ 1

N.Y. P'ship Law § 27 ....................................................................................... 11

**Rules**

Fed. R. Bankr. Pro. 7015 ................................................................................. 33

**Other Authorities**

15A N.Y. Jur. 2d Business Relationships § 1576...........................................................................10

## PRELIMINARY STATEMENT

This Supplemental Reply Memorandum is submitted on behalf of 15 entity and
individual defendants (the "FG Foreign Defendants") related to the Fairfield Greenwich Group
("FGG") that received presumptively foreign to foreign transfers which Plaintiff Irving H.
Picard, the Trustee ("Trustee") for Bernard L. Madoff Investment Securities LLC ("BLMIS")
seeks, pursuant to section 550(a)(2) of the Bankruptcy Code, 11 U.S.C. § 550(a)(2), to avoid and
recover.  For the reasons set forth below, the Trustee's claims seeking to avoid and recover these
foreign to foreign transfers should be dismissed with prejudice, and the Trustee's application to
amend his pleadings to seek to bolster his defense to this motion should be denied as futile.[1]

Each of the FG Foreign Defendants (who constitute all of the transferees and some of the
transferors of the transfers at issue), and each of the other transferors whose transfers are at issue,
is conceded by the Trustee to be either an entity organized under the laws of a foreign
jurisdiction or an individual that is a citizen of a foreign country, except for four U.S. citizens

---

[1]     The claims for which dismissal is sought here are set forth in three separate complaints,
specifically, the Trustee's (a) Amended Complaint, dated July 20, 2010, in *Picard v. Fairfield
Sentry Limited*, Adv. Pro. No. 09-01239 (ECF No. 23) (the "AC"), (b) First Amended
Complaint, dated May 31, 2013, in *Picard v. Safehand Investments*, Adv. Pro. No. 12-01701
(ECF No. 13) (the "*Safehand* FAC"), and (c) Complaint, dated June 6, 2012, in *Picard v.
Barreneche Inc.*, Adv. Pro. No. 12-01702 (ECF No. 1) (the "*Barreneche* Compl.").  As explained
in the Consolidated Reply Memorandum (as defined *infra* note 3), the Trustee makes no effort to
defend the operative complaints.  The Trustee instead seeks to amend his pleadings in each of
these complaints, and has proffered additional allegations against the FG Foreign Defendants in
his (a) Proffered Second Amended Complaint, dated June 26, 2015, Adv. Pro. No. 09-01239
(ECF No. 187) (the "PSAC"); (b) Proffered Allegations Pertaining to the Extraterritoriality Issue
as to Defendants Safehand Investments, Strongback Holdings Corporation, and PF Trustees
Limited in its Capacity as Trustee of RD Trust, dated June 26, 2015, Adv. Pro. No. 12-01701
(ECF No. 62) (the "*Safehand* Prof.); and (c) Proffered Allegations Pertaining to the
Extraterritoriality Issue as to Defendants Dove Hill Trust and FG Investors Ltd., dated June 26,
2015, Adv. Pro. No. 12-01702 (ECF No. 61) (the "*Barreneche* Prof." and, collectively with the
PSAC and *Safehand* Prof., the "Proffered Allegations").

and one dual U.S./Brazilian citizen whom the Trustee indicates in his pleadings resided abroad

for all or part of the relevant periods.[2]

As an initial matter, the FG Foreign Defendants adopt in full the arguments set forth in

the consolidated opening and reply memoranda submitted in support of the transferee

defendants' motion to dismiss based on extraterritoriality (respectively, the "Consolidated

Opening Memorandum" and the "Consolidated Reply Memorandum").[3]  The FG Foreign

---

[2]     Attached hereto as Exhibit A is a chart showing, for each FG Foreign Defendant, the foreign entities that made the transfers to them at issue on this motion.  The "FG Foreign Defendants" are Fairfield Greenwich (Bermuda) Limited ("FG Bermuda"), Fairfield Greenwich Limited ("FG Limited"), FG Investors Ltd. ("FG Investors"), Dove Hill Trust, Safehand Investments ("Safehand"), Strongback Holdings Corporation ("Strongback"), PF Trustees Limited ("PF Trustees") in its capacity as trustee of RD Trust, Gordon McKenzie, Amit Vijayvergiya, Andres Piedrahita, Corina Piedrahita, Richard Landsberger, Harold Greisman, Andrew Smith, and Philip Toub.  The four FG Foreign Defendants who are U.S. citizens that resided abroad for all or part of the relevant two and six year periods are Harold Greisman, Richard Landsberger, Andrew Smith, and Philip Toub.  A fifth, Corina Piedrahita, holds dual Brazilian and U.S. citizenship and resided abroad for all of the relevant periods.  The six foreign transferors that are not FG Foreign Defendants are Fairfield Sentry Limited ("Sentry"), Fairfield Sigma Limited ("Sigma"), Fairfield Lambda Limited ("Lambda"), FIF Advanced Limited ("FIFA"), Fairfield Greenwich (U.K.) Limited ("Fairfield-UK"), and Fairfield Investment Fund Limited ("FIFL").  FIFL is also a foreign to foreign transferee, and has submitted a separate supplemental reply memorandum.  The FG Foreign Defendants adopt the arguments in FIFL's reply memorandum to the extent relevant to them.  There are numerous other FGG-related individuals and entities that are defendants in the above-captioned actions that are not seeking dismissal of the Trustee's claims against them in this motion.

[3]     Specifically, the "Consolidated Opening Memorandum" is the Consolidated Supplemental Memorandum of Law in Support of the Transferee Defendants' Motion to Dismiss Based on Extraterritoriality, dated December 31, 2014, Adv. Pro. No. 08-01789 (ECF No. 8903), Adv. Prod. No. 09-01239 (ECF No. 174), Adv. Pro. No. 12-01701 (ECF No. 50), Adv. Pro. No. 12-01702 (ECF No. 50); and the "Consolidated Reply Memorandum" is the Reply Consolidated Supplemental Memorandum of Law in Support of the Transferee Defendants' Motion to Dismiss Based on Extraterritoriality, dated September 30, 2015, Adv. Pro. No. 08-01789 (ECF No. 11542), Adv. Prod. No. 09-01239 (ECF No. 192), Adv. Pro. No. 12-01701 (ECF No. 66), Adv. Pro. No. 12-01702 (ECF No. 65).

2

Defendants submit that the relevant counts in the Trustee's complaints against them should be dismissed with respect to the transfers at issue on the grounds set forth in those submissions.[4]

To the extent the Court wishes to go beyond the arguments in the Consolidated Opening and Reply Memoranda, the instant memorandum sets forth further reasons, based on the Trustee's own pleadings and documents incorporated in those pleadings, why the relevant counts against the FG Foreign Defendants should be dismissed as to the transfers at issue on this motion.[5]

The fundamental basis for the arguments here and in the Consolidated Opening and Reply Memoranda is the District Court's order dated July 7, 2014 (the "District Court Order"), which held that section 550(a)(2) does not apply extraterritorially to subsequent transfers made by a foreign transferor to a foreign transferee outside of the United States. *SIPC v. BLMIS (In re Madoff Sec.)*, 513 B.R. 222, 232 (S.D.N.Y. 2014). The District Court Order provides with respect to such foreign to foreign transfers:

---

[4]     The specific counts to be dismissed with respect to the transfers at issue are set forth *infra* note 51. The FG Foreign Defendants reserve the right to argue at a later time that other transfers also are barred by extraterritoriality because they were preceded by a foreign to foreign transfer earlier in the transfer chain. *See Picard v. Merkin (In re BLMIS)*, 515 B.R. 117, 149 (Bankr. S.D.N.Y. 2014) (Bernstein, J.) (prior transfer in the chain must be voidable for the Trustee to have the power to avoid and recover subsequent transfer); s*ee also SIPC v. BLMIS (In re Madoff Sec.)*, No. 12 MC 115, 2013 WL 1609154, at *7 (S.D.N.Y. Apr. 15, 2013) (Rakoff, J.) (subsequent transferees may raise a defense applicable to transfers earlier in the chain). Those transfers were not specifically addressed in the District Court Order forming the basis for the present motion.

[5]     It is proper to consider on this motion to dismiss material attached as an exhibit to a Trustee complaint or incorporated by reference in a Trustee complaint. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (for purposes of a motion to dismiss, "the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference" (internal quotation marks and citation omitted)); *Stayton v. Am. Express Co.*, 604 F.3d 758, 763, 763 n.2, 776-77 (2d Cir. 2010) (affirming dismissal of complaint in part because a Wall Street Journal article attached to the complaint, and thus expressly deemed by the appellate court as subject to consideration on the motion to dismiss, suggested an inference contrary to plaintiffs' allegations).

> "[I]t is the Trustee's obligation to allege facts giving rise to the plausible inference that the transfer occurred within the United States. . . . [T]o the extent that the Trustee's complaints allege that both the transferor and the transferee reside outside of the United States, there is no plausible inference that the transfer occurred domestically. Therefore, unless the Trustee can put forth specific facts suggesting a domestic transfer, his recovery actions seeking foreign transfers should be dismissed.

*Id.* at 232 n.4 (internal quotation marks and citation omitted).

As pled by the Trustee in his operative complaints and/or his Proffered Allegations against, *inter alia*, the FG Foreign Defendants, the transferor and transferee of the alleged subsequent transfers at issue on this motion are entities organized abroad, individuals who are citizens of foreign countries and also resided abroad in the relevant period, or individuals who resided abroad during the relevant period. Consequently, under the plain language of the District Court Order, the transfers at issue here are presumptively foreign, and the Trustee's claims seeking to avoid and recover the transfers must be dismissed unless the Trustee meets his burden "to put forth specific facts suggesting a domestic transfer."

The Trustee has utterly failed to do so. The Trustee has the burden of pleading specific facts suggesting a domestic transfer with respect to *each* alleged transfer he seeks to recover. *See, e.g.*, *Gouveia v. Cahillane (In re Cahillane)*, 408 B.R. 175, 202 (Bankr. N.D. Ind. 2009) ("[E]ach separate transfer . . . is a discrete act which must be separately analyzed."); *Bear, Stearns Sec. Corp. v. Gredd (In re Manhattan Inv. Fund Ltd.)*, 397 B.R. 1, 4 n.1 (S.D.N.Y. 2007) ("[T]he transfers placed into these separate accounts occurred for different reasons and are subject to differing analyses."); *Mills v. Everest Reins. Co.*, 410 F. Supp. 2d 243, 254 (S.D.N.Y. 2006) ("New York Debtor and Creditor Law requires examination of every conveyance made." (internal quotation marks and citation omitted)). Not only has the Trustee not attempted to meet

that burden, as set forth below, the Trustee's specific pleadings support the presumption that the

transfers were foreign, not domestic.

Point I below addresses matters relevant to all of the FG Foreign Defendants.  Point II

marshals the material in the Trustee's pleadings and incorporated documents which further

supports dismissal of the Trustee's claims against each FG Foreign Defendant.

## ARGUMENT

I.  **THE TRUSTEE'S PLEADINGS AND STIPULATION ESTABLISH THAT THE
    TRANSFERORS AND TRANSFEREES WERE FOREIGN AND DO NOT MEET
    HIS BURDEN OF PLEADING SPECIFIC FACTS SUGGESTING DOMESTIC
    TRANSFERS**

For purposes of this motion, the Trustee seeks to obscure the extraterritorial nature of the

transferees, the transferors and the transfers themselves by ignoring the separate corporate

existence of the entities and by alleging in conclusory fashion in his PSAC that FGG was a "*de

facto* partnership" "headquartered in New York."  But this allegation is irrelevant to this motion

because it does not change or address the dispositive facts—that the specific transferors,

transferees and transfers themselves were foreign.  It also should not be credited by the Court

because it is contradicted by more specific statements elsewhere in the Trustee's pleadings and

documents incorporated therein.  *See, e.g.*, *Hirsch v. Arthur Anderson & Co.*, 72 F.3d 1085, 1092

(2d Cir. 1995) ("General, conclusory allegations need not be credited, however, when they are

belied by more specific allegations of the complaint.").  And even if the Trustee's partnership

allegations were relevant, the Trustee does not plead the requisites of a *de facto* partnership or

partnership by estoppel.

### A.  The Trustee Concedes That The FG Foreign Defendants And The Other
####     Transferors Were Foreign And Their Operations Had A Foreign Focus

The Trustee's allegations in his pleadings, the documents incorporated in those pleadings,

and the Trustee's stipulation on this motion establish that the FG Foreign Defendants were

foreign. Consequently, the transfers between them, or to them from other foreign transferors

such as Sentry (a foreign fund as found by Judge Rakoff), were presumptively extraterritorial.

With respect to the FG Foreign Defendants, the Trustee alleges and stipulates:

- FG Bermuda was organized under the laws of Bermuda. AC ¶ 121; PSAC ¶¶ 54, 271; Ex. A to Scheduling Order (ECF No. 8800-1) ("Sched. Ex. A"), at 3.[6]

- FG Limited, FG Investors, Safehand, Strongback, and RD Trust (as well as its trustee, PF Trustees) were organized under the laws of the Cayman Islands. AC ¶ 136; PSAC ¶¶ 254, 447; *Barrenche* Prof. ¶ 9; *Safehand* FAC ¶¶ 59, 65, 69; *Safehand* Prof. ¶¶ 16, 21, 25; Sched. Ex. A, at 3; Ex. B to Scheduling Order (ECF No. 8800-2) ("Sched. Ex. B"), at 10-11.

- Dove Hill Trust was organized and had its trustee in Singapore. *Barreneche* Prof. ¶ 22; Sched. Ex. B, at 10.

- Gordon McKenzie, Amit Vijayvergiya and Andres Piedrahita are citizens respectively of Canada, Canada and Colombia/United Kingdom. PSAC ¶¶ 313, 332, 341; *Safehand* Prof. ¶ 9; Sched. Ex. A, at 3.[7]

With respect to the six transferors at issue here that are not FG Foreign Defendants, the Trustee

alleges and stipulates that:

- Sentry, Sigma, Lambda, FIFL and FIFA were organized under the laws of the British Virgin Islands. AC ¶¶ 32, 51, 56, 79, 103; PSAC ¶¶ 226, 238, 250; Sched. Ex. A, at 3.

- Fairfield-UK was organized under the laws of England and Wales. AC ¶ 178; PSAC ¶ 298; Sched. Ex. A, at 3.

---

[6]     The "Scheduling Order" is this Court's Order Concerning Further Proceedings on Extraterritoriality Motion and Trustee's Omnibus Motion for Leave to Replead and for Limited Discovery, dated December 10, 2014, Adv. Pro. No. 08-01789 (ECF No. 8800).

[7]     The other FG Foreign Defendants are either U.S. citizens or hold dual U.S./Brazil citizenship, but the Trustee's pleadings and material incorporated therein establish that they resided abroad for some or all of the relevant periods, and so for those times are foreign for purposes of extraterritoriality analysis under the District Court Order. 513 B.R. at 232 n.4 ("[T]o the extent that the Trustee's complaints allege that both the transferor and the transferee *reside outside of the United States*, there is no plausible inference that the transfer occurred domestically." (emphasis added)); *see* discussion in Point II *infra*.

Given the foreign status of all of the transferees and transferors at issue here, the District

Court Order provides that the transfers to the FG Foreign Defendants are presumptively

extraterritorial unless the Trustee pleads specific facts suggesting the transfers were domestic.

The Trustee has done the opposite. His attempt through conclusory statements to confine the FG

Foreign Defendants' activity to New York is belied by his specific allegations that the FG

Foreign Defendants operated in offices located abroad—including offices in Bermuda, London,

Madrid, Lugano, Rio de Janeiro, and Rotterdam. PSAC ¶ 59. The Trustee further concedes that

the FGG-related entities and individuals managed and marketed primarily foreign investment

funds, most notably Sentry, the originator of the majority of transfers at issue on this motion,

which was a fund organized abroad, sold only to non-U.S. taxpayers, and serviced by, among

other foreign providers, a foreign investment manager, a foreign administrator, and a foreign

auditor. *See infra* at Point II.A.1.

**B.      The Trustee's Conclusory Allegation That FGG Was A *De Facto* Partnership Or Partnership By Estoppel Is Irrelevant, Belied By His Own More Specific Pleadings, And In Any Event Not Adequately Pled**

**1.      The Trustee's Allegation Is Irrelevant**

As a threshold matter, the Trustee's allegation that FGG was a *de facto* partnership or

partnership by estoppel headquartered in New York is irrelevant to this motion. FGG is not a

defendant to the action—as set forth below, the Trustee has conceded that FGG is a marketing

name for a group of affiliated companies—and the Trustee does not allege any transfers to or

from FGG. *See* PSAC ¶ 441 (listing subsequent transfers at issue). Also, any "FGG *de facto*

partnership," even assuming for purposes of this motion that it was "headquartered in New

York" (a dubious assumption[8]), would not be relevant to this Court's extraterritoriality analysis,

---

[8]      The Trustee's pleadings allege that the alleged "*de facto* partnership" included several
"foreign corporations," PSAC ¶ 34, and that its scope was international, with most of its offices

which must be conducted on a defendant-by-defendant and transfer-by-transfer basis.  It is well established that affiliated legal entities, including those with shared ownership or management, are entitled to a strong presumption of separateness, which the Trustee's thin allegations cannot overcome.  *See Am. Renaissance Lines, Inc. v. Saxis S.S. Co.*, 502 F.2d 674, 677 (2d Cir. 1974) ("[A] corporation . . . is entitled to a presumption of separateness from a sister corporation . . . even if both are owned and controlled by the same individuals."); *DeJesus v. Sears, Roebuck & Co.*, 87 F.3d 65, 70 (2d Cir. 1996) (discussing the "presumption of separateness afforded to related corporations").[9]

### 2.    The Trustee's Allegation Is Belied By His Specific Pleadings

Even if the Trustee's conclusory partnership allegation was relevant, it is belied by his own more specific pleadings.  The Trustee concedes that the "Fairfield Greenwich Group" or "FGG" was a marketing name for a group of separate legal entities that were located and operated around the world and, collectively, had an overwhelmingly foreign focus.  *See* AC ¶ 21 ("FGG is a trade name used to refer to a number of affiliated entities"); PSAC ¶ 1.  FGG was "just a trade name rather than a legal partnership."  PSAC ¶ 58.[10]  The Trustee also admits that

---

outside of the United States, *see* PSAC ¶ 59 (in addition to a New York office, "FGG . . . maintained offices around the world – in Greenwich, Miami, Bermuda, London, Madrid, Lugano, Rio de Janeiro, and Rotterdam").

[9]    Notably, the Trustee does not allege any failure to adhere to corporate formalities such as a failure to maintain corporate bylaws, failure to maintain a board of directors, commingling of funds, or other factors that courts typically find in those rare instances when they are willing to disregard an entity's separate legal status.

[10]    As demonstrated by the documents attached as exhibits to the AC, language in marketing materials and other external documents concerning "FGG" also consistently disclosed the "Fairfield Greenwich Group" to be "the marketing name for the securities and investment advisory businesses of Fairfield Greenwich Limited and its subsidiaries worldwide."  Baldwin Ex. 1 (AC Ex. 58), at 3.  All references to "Baldwin Ex." herein are to exhibits accompanying the Declaration of Jeffrey E. Baldwin in Support of FG Foreign Defendants' Motion to Dismiss Based on Extraterritoriality, dated September 30, 2015.

those whom he now labels "FGG partners" were, in fact, shareholders of specific legal entities—
*i.e.*, FG Limited and FG Bermuda—and that the transfers he now characterizes (without pleading
any factual support) as "partnership" distributions were in fact shareholder distributions made
pursuant to a Shareholder and Voting Agreement. *See, e.g.*, PSAC ¶¶ 255 ("[O]n January 1,
2002, FG Limited's shareholders executed a Shareholder and Voting Agreement."), 360 ("As a
shareholder of FG Limited, Toub received quarterly . . . distributions."). Notably, the FG
Limited Shareholder and Voting Agreement entered January 1, 2002, which is incorporated by
reference into the PSAC at, *e.g.*, ¶ 255, expressly states: "No Partnership: This Agreement shall
not constitute a partnership or joint venture among the parties or under state, local or foreign
law." Baldwin Ex. 2, at § 12.4.

### 3.    The Trustee Has Not Adequately Pled A Partnership

The Trustee also has failed to plead the elements of a *de facto* partnership or partnership
by estoppel. As a preliminary matter, the Trustee does not state any group recognizable or
identifiable as a partnership, alleging in his PSAC that the "partners" were an array of
"individual persons; U.S. corporations; foreign corporations; and investment vehicles." PSAC ¶
34. The Trustee fails to identify specifically who all of the alleged "partners" were, instead
alleging, essentially, that any entity or individual related in some way to FGG was a "partner" in
a vast "*de facto* partnership." *See, e.g.*, PSAC ¶ 422 ("FGG as a whole was a *de facto*
partnership with each Feeder Fund, FGG Affiliate, and FGG Individual serving as its agent and
partner."). Notably, the allegations in the Trustee's earlier (still operative) complaint are far
different. There, he alleges that "FGG" and/or the "Defendants" had a "*de facto* partnership"
with Bernard Madoff (*see, e.g.*, AC ¶ 335), an allegation he has now abandoned to make way for
his new and incoherent "*de facto* partnership" allegations designed to fit his current needs.

Apart from failing to define the alleged partnership in a coherent way, the Trustee fails to plead the elements of a *de facto* partnership.  The elements of a *de facto* partnership are that the partners:  (a) shared profits and losses, (b) jointly controlled the management of the business, (c) contributed property, financial resources, effort, skill or knowledge, and (d) intended to partners.  *Kidz Cloz, Inc. v. Officially for Kids, Inc.*, 320 F. Supp. 2d 164, 171 (S.D.N.Y. 2004).  The Trustee does not allege any of these elements:

- The Trustee does not allege how any purported "FGG partners" other than the shareholders of FG Limited and FG Bermuda ever shared in any profits and/or losses. 15A N.Y. Jur. 2d Business Relationships § 1576 ("[A]n agreement to share both profits and losses strongly supports the existence of a partnership, and, conversely, the absence of such an agreement strongly negates it." (internal footnotes omitted)).

- The Trustee does not attempt to plead facts establishing joint control and management of "FGG's" business by its various "partners."  Instead, he pleads just the opposite: that "FGG was owned and controlled by the [*sic*] FG Limited."  PSAC ¶ 415.

- The Trustee's conclusory allegation that the "Defendants each contributed property, financial sources, effort, skill, or knowledge to FGG's business," PSAC ¶¶ 413, 424, cannot be credited on this motion because it simply recites a boilerplate element of the claim without alleging any factual support.  *See Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (in deciding a motion to dismiss, courts should not credit a complaint's threadbare recitals of the elements of a cause of action).

- The Trustee does not plead that the "partners" of an "FGG *de facto* partnership" intended to be in a partnership together.  The Trustee's reference to documents that use the word "partner," *see* PSAC ¶ 421, 425-26, is insufficient to allege the requisite intent because (a) the use of the words "partner" or "partnership" does not create a partnership, *see, e.g.*, *Kosower v. Gutowitz*, No. 00 Civ. 9011, 2001 WL 1488440, at *6 (S.D.N.Y. Nov. 21, 2001) ("[C]alling an organization a partnership does not make it one." (internal quotation marks and citation omitted)); and (b) that word appears only colloquially in marketing materials to refer to the persons who received shareholder distributions from FG Limited,[11] all of whom explicitly expressed their intent to *not* be "partners" in a "partnership."  *See* Baldwin Ex. 2 (FG Limited Shareholder and Voting Agreement), at

---

[11]     *See* Baldwin Ex. 3 (Fairfield Greenwich Group, the Firm and its Capabilities, dated September 2008 (the "Sept. 2008 FGG Brochure"), incorporated by reference into the PSAC at ¶¶ 425-26), at 19-27 (listing as "Partners" the persons whom the Trustee alleges received, directly or indirectly, shareholder distributions from FG Limited).  The Trustee fails to allege the existence of any document in which, for example, Sentry or FG Bermuda is described as an FGG "partner."

§ 12.4 ("No Partnership: This Agreement shall not constitute a partnership or joint venture among the parties or under state, local or foreign law.").[12]

The Trustee also fails to satisfy the rigorous standard for pleading a partnership by estoppel, which requires the Trustee to allege with specificity that the defendants held themselves out as a partnership and that BLMIS (in whose shoes the Trustee stands) reasonably relied on those representations to its detriment.[13]   N.Y. P'ship Law § 27(1); *see also First Am. Corp. v. Price Waterhouse LLP*, 988 F. Supp. 353, 358 (S.D.N.Y. 1997) ("[W]ithout the requisite showing of direct reliance to its detriment on . . . representations of partnership, [plaintiff] cannot establish that worldwide partnership."). The Trustee has not pled either a representation (much less a knowing representation) made to BLMIS that "FGG" was a "partnership," or any actual reliance

---

[12]     The Trustee alleges that FG Limited was taxed as a partnership under United States tax law.  PSAC ¶¶ 257, 420.  This allegation does not bear on the issue here, which concerns the Trustee's separate and far broader allegation that an array of companies and individuals associated with FGG constituted a different partnership.  In any event, as the Trustee himself alleges, FG Limited was organized as a "limited liability company under the laws of the Cayman Islands," not as a partnership.  PSAC ¶ 254.  A business entity, when eligible, can elect to be taxed by the United States government as either a "partnership" or a "corporation."  *See* Internal Revenue Service Form 8832, *available at* http://www.irs.gov/pub/irs-pdf/f8832.pdf.  This election does not change FG Limited's corporate status, and partnership joint and several liability does not attach to the shareholders of a company merely because that company elects to be taxed as a "partnership."  *See United States v. Richardson*, 469 F.2d 349, 351-52 (10th Cir. 1972) (business entity's election as to how it will be taxed under the Internal Revenue Code does not change its corporate status).  Consequently, FG Limited being taxed as a "partnership" does not remotely suggest an intent by its shareholders to be in a partnership together.  To the contrary, in executing the FG Limited Shareholder and Voting Agreement, "[e]ach Shareholder acknowledge[d] that [FG Limited] shall be treated as a partnership for United States federal and state income tax purposes" while expressly stating their intent that the "Agreement shall not constitute a partnership . . . among the parties."  *See* Baldwin Ex. 2 (FG Limited Shareholder and Voting Agreement), at §§ 5.12(b), 12.4.

[13]     The doctrine of partnership by estoppel is to be "strictly guarded," and its application depends upon a plaintiff meeting its burden of showing actual reliance on knowing misrepresentations.  *Sitchenko v. DiResta*, 512 F. Supp. 758, 762 (E.D.N.Y. 1981); *see also Hartford Accident & Indemnity Co. v. Oles*, 274 N.Y.S. 349, 353 (N.Y. Sup. Ct. 1934) (courts are "disposed to consider the rule [of estoppel] a harsh one" that can be invoked only when "the party is attempting to do that what casuists would decide to be a wrong; something which is against good conscience and honest dealing" because "estoppels are odious" (internal quotation marks omitted)).

by BLMIS on such a representation.  Courts have consistently dismissed estoppel claims where, as here, the plaintiff fails to allege reliance on specific representations.  *See, e.g.*, *Cromer Fin. Ltd. v. Berger*, 137 F. Supp. 2d 452, 488 (S.D.N.Y. 2001).

Having failed adequately to plead a *de facto* partnership or partnership by estoppel, even if the existence of a partnership were relevant, which it is not, the Trustee cannot rely on those allegations to attempt to bolster his claim that either the transferors or the transferees at issue here were domestic or that the transfers themselves were domestic.  *See N. Am. Knitting Mills, Inc. v. Int'l Women's Apparel, Inc.*, No. 99 Civ. 4643, 2000 WL 1290608, at *2 (S.D.N.Y. Sept. 12, 2000) (failure to plead "facts that would establish the elements of a partnership" is a fatal defect).

## II.    THE CLAIMS SEEKING TO AVOID THE TRANSFERS AT ISSUE HERE SHOULD BE DISMISSED WITH RESPECT TO EACH FG FOREIGN DEFENDANT

Under the District Court Order, if the Trustee concedes or alleges that both the transferor and the transferee are foreign, "there is no plausible inference that the transfer occurred domestically" unless the Trustee pleads "specific facts suggesting a domestic transfer."  513 B.R. at 232 n.4.  Under that Order, a transferor or transferee is foreign if they "reside outside of the United States" at the time of the relevant transfer.  *Id.*  As set forth in Point I.A. *supra* and below, the Trustee's pleadings and documents incorporated therein allege, with respect to each of the FG Foreign Defendants, that the transferor and transferee of each of the alleged transfers at issue were corporate entities organized abroad and/or individuals residing abroad and, thus, were foreign transferors and foreign transferees triggering the presumption that the transfers were extraterritorial.  Further set forth below is a discussion for each FG Foreign Defendant showing that the Trustee has not overcome the presumption by meeting his burden of pleading specific facts suggesting the transfers to that FG Foreign Defendant were domestic.

12

## A.      The Entity FG Foreign Defendants And Other Entity Transferors

Under the District Court Order, a legal entity "reside[s] outside of the United States"—

and, thus, is a foreign transferor or foreign transferee—if that entity was organized under the

laws of a foreign jurisdiction at the time of the relevant transfer.  *See* 513 B.R at 225, 227

(concluding that Sentry and Herald International (Cayman) Limited are foreign transferors on the

basis of their incorporation abroad); *see also* Consolidated Opening Mem. 12; Consolidated

Reply Mem. 20-23.

### 1.      Sentry

The District Court unequivocally concluded that because Sentry was incorporated in the

British Virgin Islands ("BVI"), Sentry is a foreign entity and, thus, a foreign transferor.  513 B.R

at 225, 227.

While acknowledging in his pleadings that Sentry is incorporated in the BVI, *see, e.g.*,

PSAC ¶ 197, the Trustee attempts to evade the District Court's conclusion that Sentry is a

foreign entity with a flurry of allegations regarding contacts with the United States.  The

Trustee's efforts are unavailing.  As the Consolidated Opening and Reply Memoranda explain,

Sentry's incorporation in the BVI conclusively establishes its status as a foreign transferor under

the District Court Order, and various other fundamental aspects of Sentry—all alleged by the

Trustee in his complaints or established through documents incorporated by reference into the

complaints—further solidify that foreign status.  These include, among others: (a) Sentry is

currently in liquidation in the BVI, AC ¶ 22; PSAC ¶ 197; [14] (b) Sentry's accounts were held at

---

[14]      The Trustee's allegation in his PSAC that Sentry and Sigma are in liquidation
proceedings in both the BVI "and the United States," PSAC ¶¶ 197, 226, is misleading because
the U.S. proceedings are simply ancillary to the main liquidation proceedings in the BVI.  *See*
Bench Mem. & Order Granting Chapter 15 Pets. of Sentry, Sigma and Lambda for Recognition
of Foreign Proceedings, *In re Fairfield Sentry Limited*, No. 10-13164 (Bankr. S.D.N.Y. June 22,
2010) (ECF No. 47).  This fact is subject to judicial notice.  *See, e.g.*, *Crawford v. Franklin*

Citco Bank Nederland, N.V. Dublin Branch, PSAC ¶¶ 42, 203; (c) investors in Sentry were

limited to non-U.S. taxpayers, PSAC ¶ 46; (d) the only exchange on which the Sentry shares

were listed was the Irish Stock Exchange;[15] (e) the overall management responsibility for Sentry

rested with a Board of Directors, two-thirds of which was comprised of foreign individuals;[16]

and (f) Sentry's service providers were primarily foreign entities, including its investment

manager, placement agent, administrator, auditor, and custodian.[17]

     2.    <u>Sigma, Lambda, FIFL, and FIFA</u>

As alleged by the Trustee, Sigma and Lambda were offshore funds that invested 100% of

their assets into Sentry.  PSAC ¶ 224.  FIFL and FIFA were offshore fund-of-funds that partially

invested their assets in Sentry.  PSAC ¶ 238, 250.  As with Sentry, all four funds (*i.e.*, Sigma,

---

*Credit Mgmt. Corp.*, No. 08 CIV. 6293, 2011 WL 1118584, at *4 n.4 (S.D.N.Y. Mar. 23, 2011) *aff'd in part, vacated in part, remanded*, 758 F.3d 473 (2d Cir. 2014) ("[T]he Court takes judicial notice of New York state court and S.D.N.Y. Bankruptcy Court filings cited as records 'capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.'").

[15]    *See, e.g.*, Baldwin Ex. 4 (Private Placement Memorandum for Sentry, dated as of Aug. 14, 2006, and incorporated by reference into the PSAC at, *e.g.*, ¶ 208) (the "2006 Sentry PPM"), at 3.

[16]    The Trustee conspicuously makes no reference to the existence and composition of Sentry's Board of Directors during the relevant time period, probably because the composition of the Board is counter to the Trustee's allegation—peppered throughout his PSAC in conclusory fashion—that Sentry was "controlled" or "operated" by "FGG New York Personnel."  *See, e.g.*, PSAC ¶¶ 198-99.  As detailed in the 2006 Sentry PPM, Sentry's Board of Directors had "overall management responsibility for the Fund" and two of the Board's three members—directors Jan R. Naess and Peter P. Schmid—were foreign.  *See* Baldwin Ex. 4 (2006 Sentry PPM), at 6-7.

[17]    For example, Sentry's investment manager was FG Limited until July 2003, at which point FG Bermuda became its investment manager.  PSAC ¶ 275.  FG Limited also served as Sentry's placement agent.  PSAC ¶ 260.  See *infra* at Points II.A.3 and II.A.4 for discussion of the foreign status of FG Bermuda and FG Limited.  Sentry's administrator was Citco Fund Services (Europe) B.V. in the Netherlands, and Sentry's custodian was Citco Global Custody N.V in the Netherlands with the relevant bank accounts at Citco Bank Nederland, N.V. Dublin Branch in Ireland.  PSAC ¶ 42; Baldwin Ex. 1 (AC Ex. 58), at 15-16.  Sentry's auditor was PricewaterhouseCoopers in the Netherlands and, then, PricewaterhouseCoopers in Canada. Baldwin Ex. 5 (AC Ex. 45), at 4; Baldwin Ex. 1 (AC Ex. 58), at 16.

Lambda, FIFL and FIFA) were incorporated in the BVI with their registered offices in the BVI. AC ¶¶ 32, 51, 56, 79, 103; PSAC ¶¶ 226, 238, 250.  Like Sentry, Sigma and Lambda are currently in liquidation in the BVI.  PSAC ¶ 226.[18]

The allegation that these four funds were organized abroad conclusively establishes their presumptive status as foreign transferors or transferees.  Fundamental aspects of Sigma, Lambda and FIFL as pled by the Trustee or incorporated in his pleadings further reflect their foreign status,[19] including, among others: (a) the funds' accounts were located abroad;[20] (b) the funds' investors were limited to non-U.S. investors or non-U.S. taxpayers;[21] (c) the overall management responsibility for the funds was held by their respective Boards of Directors, which featured foreign members;[22] and (d) the funds' service providers were primarily foreign entities,

---

[18]     As discussed *supra* note 14, the Trustee's PSAC is misleading with respect to its allegation regarding the location of Sigma's liquidation.  The only Sigma liquidation proceeding in the U.S. is ancillary to the main proceeding in the BVI.  As the District Court Order recognized with respect to Sentry's liquidation in the BVI, the foreign liquidation proceedings of Sigma and Lambda raise serious international comity concerns as, in the present context, the BVI has a greater interest in applying its laws than the United States does.  *See* 513 B.R. at 232 ("These foreign jurisdictions have their own rules concerning on what bases the recipient of a transfer from a debtor should be required to disgorge it . . . The Trustee is seeking to use SIPA to reach around such foreign liquidations . . . .").

[19]     Virtually nothing is pled regarding non-defendant FIFA other than its foreign place of organization and foreign registered office.

[20]     As alleged by the Trustee, Sigma, Lambda and FIFL all maintained bank accounts at Citco Dublin Branch, while FIFL also maintained a bank account at Union Bancaire Privee in Geneva.  PSAC ¶¶ 229, 238.

[21]     *See, e.g.*, Baldwin Ex. 6 (Private Placement Memorandum for Sigma, dated as of Feb. 16, 2006, and incorporated by reference into the PSAC at, *e.g.*, ¶ 232) (the "2006 Sigma PPM"), at 10-11; Baldwin Ex. 7 (Private Placement Memorandum for Lambda, dated as of Oct. 1, 2004, and incorporated by reference into the PSAC at, *e.g.*, ¶ 232) (the "2004 Lambda PPM"), at 10; Baldwin Ex. 8 (Private Placement Memorandum for FIFL, dated as of Mar. 2008, and incorporated by reference into the PSAC at ¶ 240) (the "2008 FIFL PPM"), at 43.

[22]     Sigma's and Lambda's Boards of Directors had the same membership as Sentry's Board, discussed *supra* note 16.  *See* Baldwin Ex. 6 (2006 Sigma PPM), at 4-5; Baldwin Ex. 7 (2004 Lambda PPM), at 4-5.  FIFL's Board of Directors included Inter Caribbean Services Ltd. Baldwin Ex. 8 (2008 FIFL PPM), at 15-16.

including, as applicable, their investment managers, placement agents, administrators, auditors, and custodians.[23]

### 3. FG Bermuda

The Trustee acknowledges in his pleadings that FG Bermuda was incorporated in Bermuda. AC ¶ 121; PSAC ¶¶ 54, 271. As such, under the District Court Order, FG Bermuda presumptively was a foreign transferor and foreign transferee. *See* Consolidated Opening Mem. 12; Consolidated Reply Mem. 20-23.

Far from meeting his burden of pleading facts suggesting transfers to or from FG Bermuda were domestic, the Trustee adds allegations suggesting those transfers were foreign. These include: (a) FG Bermuda's "principal place of business" was Bermuda, AC ¶ 121; (b) FG Bermuda's mailing address was in Bermuda, AC ¶ 121; (c) FG Bermuda leased office space in Bermuda, PSAC ¶ 272; (d) FG Bermuda had at least nine employees in Bermuda, PSAC ¶ 274; (e) a Bermuda citizen served on FG Bermuda's original board of directors, PSAC ¶ 271; and (f) FG Bermuda's bank account was in Bermuda, PSAC ¶ 272. *See also* Baldwin Ex. 5 (AC Ex. 45), at 3 (Sentry brochure listing Bermuda address, phone number and fax number for FG Bermuda); Baldwin Ex. 1 (AC Ex. 58), at 12 (same).

---

[23]    For example, FG Limited served as the investment manager for Sigma and Lambda until July 2003, at which point FG Bermuda became their investment manager. PSAC ¶ 275. FG Limited served as the placement agent for Sigma, Lambda and FIFL. PSAC ¶ 260. See *infra* at Points II.A.3 and II.A.4 for discussion of the foreign status of FG Bermuda and FG Limited. The administrator for Sigma, Lambda and FIFL was Citco Fund Services (Europe) B.V. in the Netherlands, and the custodian for Sigma, Lambda and FIFL was Citco Global Custody N.V in the Netherlands, with the relevant bank accounts at Citco Bank Nederland, N.V. Dublin Branch in Ireland. PSAC ¶¶ 229, 238, 241; Baldwin Ex. 6 (2006 Sigma PPM), at v-vi; Baldwin Ex. 7 (2004 Lambda PPM), at iv-v; Baldwin Ex. 8 (2008 FIFL PPM), at vi-vii. According to the PPMs for these funds, the auditor for Sigma, Lambda and FIFL was PricewaterhouseCoopers in the Netherlands. Baldwin Ex. 6 (2006 Sigma PPM), at v; Baldwin Ex. 7 (2004 Lambda PPM), at iv; Baldwin Ex. 8 (2008 FIFL PPM), at vii.

In an attempt to obscure FG Bermuda's foreign status, the Trustee alleges—in typical
conclusory fashion—that "FGG New York Personnel" "controlled all of FG Bermuda's
operations."  Trustee's FG Oppo. 14 (citing PSAC ¶ 274).[24]  But this allegation is beside the
point.  *See Sherwood Invs. Overseas Ltd. v. Royal Bank of Scotland N.V. (In re Sherwood Invs.
Overseas Ltd., Inc.)*, No. 6:10-ap-00158, 2015 WL 4486470, at *19-20 (M.D. Fl. July 22, 2015)
(recovery of transfers for which debtor was transferor would be an impermissible extraterritorial
application of the Bankruptcy Code even though the debtor's business was "directed" from
Florida by the debtor's principal).  Even if true, the nationality or location of entities or persons
above FG Bermuda in the corporate chain to whom FG Bermuda employees reported does not
change or affect the nationality or location of FG Bermuda itself.  *Cf. La Piel, Inc. v. Richina
Leather Indus. Co.*, No. 10-CV-1050, 2013 WL 1315125, at *9 (E.D.N.Y. Mar. 29, 2013)
(oversight by parent over the affairs of its subsidiary is insufficient to confer court with
jurisdiction over the subsidiary).  And the Trustee does not plead facts or even suggest that the
corporate form of FG Bermuda can be disregarded.

### 4.     FG Limited

The Trustee acknowledges in his pleadings that, throughout the relevant period, FG
Limited was incorporated in the Cayman Islands (with its mailing address also in the Cayman
Islands).  AC ¶ 136; PSAC ¶¶ 254, 447.[25]  Consequently, under the District Court Order, FG
Limited presumptively was a foreign transferor and foreign transferee.  *See Consolidated
Opening Mem. 12; Consolidated Reply Mem. 20-23.

---

[24]     "Trustee's FG Oppo." refers to the Trustee's Supplemental Memorandum of Law in
Opposition to the Fairfield Defendants' Motions to Dismiss Based on Extraterritoriality and in
Further Support of Trustee's Motion for Leave to Amend Complaints, dated June 26, 2015, Adv.
Pro. No. 09-01239 (ECF 186).

[25]     FG Limited's registered office was in the Cayman Islands, at the same address as the
mailing address alleged by the Trustee.  Baldwin Ex. 8 (2008 FIFL PPM), at vi.

The Trustee does not meet his burden of pleading specific facts suggesting transfers to or from FG Limited nevertheless were domestic.  The Trustee's allegation that, while organized abroad, FG Limited had its principal place of business in the United States does not change FG Limited's foreign status.  As detailed in the District Court Order and the Consolidated Reply Memorandum, the focus of extraterritoriality analysis is the location of the transfers themselves, and a transfer to or from an entity with its principal operations in the United States is not inherently domestic.  *See* Consolidated Reply Mem. 20-23.  Similar allegations by the Trustee with respect to Sentry were rejected by the District Court, which found Sentry to be foreign for extraterritoriality purposes even though the Trustee alleged that its principal place of business was New York.  *See id.*

Even if FG Limited's principal place of business were relevant, the Trustee has not adequately pled that FG Limited's principal place of business was in the United States.  The Trustee's allegation is predicated on his conclusory statement that FG Limited was "the head of" a vast "FGG *de facto* partnership" that was "headquartered in New York."  *See, e.g.*, PSAC ¶¶ 257, 415.  As set forth in Point I.B.1 *supra*, where an alleged partnership was located is irrelevant to where FG Limited was located, the Trustee's partnership allegations are negated by his more specific allegations showing no such partnership, and the Trustee has failed to plead the elements of a "*de facto* partnership."  For all these reasons, the Trustee cannot rely on the existence of any alleged partnership to support his extraterritoriality argument with respect to FG Limited.  Without it, the Trustee's allegations regarding FG Limited are nothing more than a

claim that it was the foreign parent company in an ordinary corporate organizational structure

that included foreign and domestic subsidiaries.[26]

The Trustee does not plead facts alleging that FG Limited predominately conducted its

business activities in the United States rather than abroad.  To the contrary, the only business

activities that FG Limited itself is alleged to have engaged in after 2003 were activities directed

abroad, specifically serving as the placement agent for Sentry, Sigma, Lambda, FIFL and FIFA,

all of which were foreign investment funds offered solely to non-U.S. investors or non-U.S.

taxpayers.  PSAC ¶¶ 260-63; *see* discussion *supra* at Points II.A.1II.A.2.  While the Trustee

alleges that FG Limited had some subsidiaries that were domestic, the place of organization and

activities of those subsidiaries are not relevant to the analysis of whether FG Limited itself is

foreign.  *See, e.g.*, *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 184 (2d Cir. 1998) (the presence of

a parent's subsidiary in a jurisdiction does not establish the parent's presence in the jurisdiction);

*Danjaq, S.A. v. Pathe Commc'ns Corp.*, 979 F.2d 772, 775 (9th Cir. 1992) ("Absent a showing

that the subsidiary is merely an alter ego of its parent corporation, there is no justification for

ignoring the separate corporate structures and looking to the subsidiary's activities to determine

the parent's principal place of business.").[27]

---

[26]  Specifically, as the Trustee alleges, FG Limited "owned 100%" of various entities including FG Bermuda, Fairfield-UK, Fairfield Greenwich Advisors LLC ("FG Advisors") and Fairfield Heathcliff Capital LLC ("FG Heathcliff").  PSAC ¶ 257.  As discussed *supra* at Point II.A.3 and *infra* at Point II.A.5, FG Bermuda and Fairfield-UK were foreign corporations that operated in offices and with employees based abroad.

[27]  Other allegations by the Trustee do not change the analysis.  While the Trustee points out that FG Limited had no employees in the Cayman Islands, that allegation is meaningless because, as the Trustee admits, FG Limited had no employees anywhere, including in the United States.  PSAC ¶ 258 ("FG Limited never had employees").  The Trustee alleges that FG Limited was registered to do business in the State of New York and was taxed in the United States, PSAC ¶¶ 257-58, but neither allegation is remotely determinative of FG Limited's principal place of business.  *See, e.g.*, *Pinnacle Consultants, Ltd. v. Leucadia Nat. Corp.*, 101 F.3d 900, 907 (2d Cir. 1996) (corporation that filed its income tax returns in one jurisdiction had its principal place

5.  <u>Fairfield-UK</u>

As alleged by the Trustee, Fairfield-UK was incorporated in England and Wales (with its registered office at an address in England).  AC ¶ 178; PSAC ¶ 298.  Consequently, Fairfield-UK is presumptively a foreign transferor and transferee under the District Court Order.  *See* Consolidated Opening Mem. 12; Consolidated Reply Mem. 20-23.

Again, the Trustee does not meet his burden of pleading facts suggesting the transfers from Fairfield-UK nevertheless were domestic.  To the contrary, the Trustee alleges that Fairfield-UK maintained a staff in London.  AC ¶ 178; PSAC ¶¶ 298-99.  The Trustee's conclusory allegation that Fairfield-UK was "effectively managed from FGG's New York headquarters" is beside the point.  *See Sherwood Invs. Overseas Ltd.*, 2015 WL 4486470, at *19-20.  Even if true, the nationality or location of entities or persons above Fairfield-UK in the corporate chain does not change or affect the nationality or location of Fairfield-UK itself.  *Cf. La Piel*, 2013 WL 1315125, at *9.  And the Trustee does not plead facts or even suggest that the corporate form of Fairfield-UK can be disregarded.

---

of business elsewhere); *Forte v. BNP Paribas*, No. 14-CV-8556, 2015 WL 3604317, at *5 (S.D.N.Y. June 8, 2015) (allegations that companies were registered to do business in New York were "insufficient to establish the citizenship of these corporate entities").  The Trustee's allegation that FG Limited "listed its principal executive office" as in New York also does not establish that FG Limited's principal place of business was in New York.  *See, e.g.*, *Hertz Corp. v. Friend*, 559 U.S. 77, 97 (2010) (the mere filing of a form listing a corporation's "principal executive offices" as being in a location is not, without more, sufficient to establish that location to be the corporation's principal place of business); *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. BP Amoco P.L.C.*, No. 03 CIV. 0200, 2003 WL 1618534, at *2 (S.D.N.Y. Mar. 27, 2003) ("Even if [the corporation's] principal executive offices were still located in New York, however, a corporation's headquarters and policy-making apparatus do not necessarily constitute its principal place of business, since the operative inquiry is where the corporation actually does its business with the public.").

6.    FG Investors

The Trustee alleges FG Investors is a company organized in the Cayman Islands.
*Barrenche* Prof. ¶ 9.  As such, it is presumptively a foreign transferor or transferee under the
District Court order.

The Trustee does not meet his burden of pleading facts suggesting that the transfers to or
from FG Investors nevertheless were domestic.  To the contrary, the pleadings suggest the
transfers were foreign.  The Trustee pleads that FG Investors received shareholder
communications at an address in Grand Cayman, and that its bank account was listed as being
located abroad in the island of Jersey.  *Barreneche* Compl. ¶ 87.  In addition, FG Investors is
alleged to be wholly-owned by FG Trust, which, according to a chart in the Trustee's PSAC, is a
Cayman trust.  *Barreneche* Prof. ¶ 12; PSAC ¶ 256.[28]

The Trustee's sole pleading addressing why transfers to or from FG Investors should be
considered domestic are the conclusory allegations that FG Investors, FG Trust, and "the Harry
Demetriou and Family trust" were "controlled" by Charles Murphy "from New York."
*Barreneche* Prof. ¶ 8.  Without conceding that there is any truth to the allegations that Mr.
Murphy controlled these entities, the allegations are beside the point because they do not change
or even address FG Investors' status as a foreign corporation or its location.  Conclusory
allegations of control also cannot serve as a basis for disregarding the separateness of a company
or a trust from Mr. Murphy.  *See, e.g.*, *In re Currency Conversion Fee Antitrust Litig.*, 265 F.
Supp. 2d 385, 426 (S.D.N.Y. 2003) (conclusory allegations of "dominion and control" cannot
suffice to state a claim based on veil-piercing or alter-ego liability); *Electronic Switching Indus.*

---

[28]    The Trustee alleges that FG Trust was, in turn, wholly owned by the Harry Demetriou
and Family trust.  *Barreneche* Prof. ¶ 12.  The Trustee does not include any allegations regarding
the location of "the Harry Demetriou and Family trust."

*v. Faradyne Elec. Corp.*, 833 F.2d 418, 424 (2d Cir. 1987) (corporate veil could not be pierced because "[e]ven assuming . . . that plaintiff showed complete control and domination . . . plaintiff failed to allege . . . that this control and domination was used to commit wrong, fraud, or the breach of a legal duty, or a dishonest and unjust act"); *Pergament v. Yerushalmi (In re Yerushalmi)*, 487 B.R. 98, 109-10 (Bankr. E.D.N.Y. 2012) (assuming New York law permits an estate planning trust to be pierced, it would require a showing of both "complete domination" over the trust and that the trust was used to commit a fraud or wrong); *Genger v. Genger*, 121 A.D.3d 270, 280 (1st Dep't 2014) (there is "no authority" for "disregard[ing] the form of a trust when the trust was not formed for an illegal purpose and there is the requisite separation between beneficiary and trustee").[29]

### 7.   Dove Hill Trust

The Trustee stipulates and alleges that Dove Hill Trust is a trust organized under the laws of Singapore whose trustee is located in Singapore.  Sched. Ex. B, at 10; *Barreneche* Compl. ¶ 76 ("Asiaciti Trust Singapore Pte Ltd. acted as Defendant [Dove Hill Trust's] trustee and maintained its location at 163 Penang Road, #02-01 Winsland House II, Singapore, 238463."). Consequently, Dove Hill Trust presumptively is a foreign transferor or transferee.

---

[29]    The principles are the same under Cayman Islands law as well as English law, to which the courts of the Cayman Islands look for guidance.  *See Walker Int'l Holdings Ltd. v. Olearius Ltd.*, [2003] CILR 457, 471-75 (Cayman Is. Grand Ct. Oct. 14, 2003) (Baldwin Ex. 16) (the close supervisory relationship between the Republic of Congo and a legal entity was not sufficient to declare the entity to be a sham or façade, or to regard the legal entity as the "alter ego" of the Republic of Congo); *see also Prest v. Petrodel Res. Ltd.*, [2013] 3 WLR 1, 20-21, [2013] UKSC 34 (U.K. Sup. Ct. June 12, 2013) (Baldwin Ex. 17) (principle of piercing the corporate veil is a "limited one;" veil may be pierced only where the separate legal personality of the company was used to evade the law or to frustrate its enforcement); *Ben Hashem v. Al Sahyif*, [2009] 1 FLR 115, 154-55, [2008] EWHC 2380 (Fam.) (Eng. High Ct. Fam. Div. Sept. 22, 2008) (Baldwin Ex. 18) (concluding that "ownership and control of a company are not of themselves sufficient to justify piercing the corporate veil," and "the corporate veil can be pierced only if there is some impropriety . . . linked to the use of the company structure to avoid or conceal liability").

The Trustee does not meet his burden of pleading specific facts that suggest the transfers to Dove Hill Trust nevertheless were domestic. The only pleading by which the Trustee seeks to meet that burden is his conclusory allegation that, despite its having a trustee, Dove Hill Trust was nonetheless "controlled" by Yanko Della Schiava. *Barreneche* Prof. ¶ 22. The location of a person alleged to "control" a trust is not relevant to the location of the trust, and a conclusory allegation of control cannot serve as a basis for disregarding the separate legal status of a trust. *See, e.g.*, *Currency Conversion*, 265 F. Supp. 2d at 426; *Pergament*, 487 B.R. at 109-10; *Genger*, 121 A.D.3d at 279.[30] Even if Mr. Della Schiava's location were relevant, the Trustee does not allege that Mr. Della Schiava "controlled" Dove Hill Trust from the United States, that Mr. Della Schiava ever resided in the United States, or that he was a United States citizen. To the contrary, documents attached to the Trustee's AC and allegations by the Trustee in a related proceeding indicate that Mr. Della Schiava resided in Italy.[31] Accordingly, the pleadings suggest the transfers to or from Dove Hill Trust were foreign, not domestic.

---

[30]    The principles are the same under Singapore law. *Cf. Manuchar Steel Hong Kong Ltd. v. Star Pacific Line Pte Ltd.*, [2014] 4 SLR 832, 850, [2014] SGHC 181 (Sing. High Ct. Sept. 23, 2014) (Baldwin Ex. 19) ("Plainly, the law eschews disregard of the separate corporate legal personality of a company except in exceptional circumstances, and only where there has been some form of abuse. Respect for the separate corporate legal personality of a company . . . is sacrosanct in nearly every other circumstance.").

[31]    *See* Baldwin Ex. 9 (AC Ex. 23) (2009 Vanity Fair article stating "Yanko Della Schiava, 44, an Italian . . . sold F.G.G. in Northern Italy and southern Switzerland" and that Mr. Della Schiava and his family "live in Milan"); Baldwin Exs. 10-11 (AC Exs. 51, 68) (emails from Mr. Della Schiava with signature blocks reading: "Yanko Della Schiava / Director Italy & Ticino / Fairfield Greenwich SA / Fairfield Greenwich Group / Via Carlo Maderno 6 / CH-6900 Lugano"); Compl., *Picard v. Toub*, Adv. Pro. No. 12-01703, June 6, 2012 (ECF No. 1), at ¶¶ 75-76 (alleging that defendant Lisina della Schiava is married to Yanko della Schiava and that "Lisina della Schiava is a resident of Italy" and "maintains a residence at Via Bramante 8, Milan Italy 20154").

8. <u>Safehand</u>

The Trustee alleges that Safehand is a Cayman Islands corporation with its registered

address in Grand Cayman.  *Safehand* FAC ¶ 59; *Safehand* Prof. ¶ 16.[32]  Accordingly, under the

District Court Order, Safehand is presumptively a foreign transferor or transferee.

The Trustee has not met his burden of pleading specific facts suggesting that the transfers

to Safehand nevertheless were domestic.  He attempts to do so by pleading that Safehand served

as an "alter ego" for Andres Piedrahita.  But while the Trustee alleges in conclusory fashion that

Mr. Piedrahita "lived" in the United States and worked "primarily" in the United States,

*Safehand* Prof. ¶ 6, the specific facts in the Trustee's pleadings and incorporated material

establish that Mr. Piedrahita has resided in London and Madrid since 1997.  *See* discussion *infra*

at Point II.B.3.  Conclusory allegations cannot be credited when belied by specific facts in the

Trustee's own pleadings.  *See, e.g.*, *Hirsch*, 72 F.3d at 1092.  Given his residence in the U.K. and

Spain, it must be presumed that any alleged control exercised by Mr. Piedrahita over Safehand

was exercised abroad.

Even if the Trustee's conclusory allegations regarding Mr. Piedrahita's residence

somehow could be credited over the contradictory specific facts incorporated in his pleadings,

which they cannot, the Trustee has not remotely pled sufficient facts for this Court to disregard

Safehand's corporate identity and treat it as Mr. Piedrahita's "alter ego."[33]  *See, e.g.*, *Currency*

*Conversion*, 265 F. Supp. 2d at 426.  The Trustee alleges Mr. Piedrahita to be "the sole

---

[32]    The Trustee's statement in his supplemental memorandum of law, in a section purporting
to discuss "Safehand's Location," that Mr. Piedrahita submitted tax forms to the U.S.
government regarding Safehand is both (a) irrelevant to determining Safehand's location, and (b)
misleading, as the Trustee's proffered allegations clarify that the alleged tax form identified
Safehand as a "*foreign* eligible entity."  *Safehand* Prof. ¶ 17 (emphasis added).

[33]    Safehand was a shareholder of FG Limited and, later, FG Bermuda and, as the Trustee
acknowledges, it was Safehand (not Andres Piedrahita) that executed the FG Limited
Shareholder and Voting Agreement.  *Safehand* Prof. ¶ 19.

shareholder of Safehand" while, in the very same set of proffered allegations, contradictorily alleges that RD Trust is "the sole owner of Safehand." *Safehand* Prof. ¶¶ 17, 28. It thus appears that the Trustee is treating Mr. Piedrahita and RD Trust as one in the same. However, as discussed below, Mr. Piedrahita and RD Trust are not one in the same, and, as with Safehand, the Trustee has not come close to pleading sufficient facts for this Court to disregard RD Trust's separate legal status. *See, e.g.*, *Pergament*, 487 B.R. at 109-10; *Genger*, 121 A.D.3d at 279.

Even if Mr. Piedrahita (not RD Trust) were the sole shareholder of Safehand, that alleged fact alone is not sufficient grounds for this Court to disregard Safehand's separate corporate identity and treat it as Mr. Piedrahita's "alter ego." *See, e.g.*, *Electronic Switching Indus.*, 833 F.2d at 424; *TNS Holdings, Inc. v. MKI Sec. Corp.*, 92 N.Y.2d 335, 339 (1998) (evidence of domination would not suffice without an additional showing that it led to fraud or malfeasance).[34]

### 9. Strongback

The Trustee alleges that, during the relevant period, Strongback was a corporation formed under the laws of the Cayman Islands. *Safehand* FAC ¶ 65; *Safehand* Prof. ¶ 21.[35] Accordingly, under the District Court Order, Stongback is presumptively a foreign transferor or transferee.

The Trustee does not meet his burden of pleading specific facts that suggest the transfers to or from Strongback nevertheless were domestic. As with Safehand, the sole pleading by which the Trustee alleges that those transfers were domestic is an allegation that Strongback served as an "alter ego" for Andres Piedrahita, whom the Trustee alleges in conclusory fashion

---

[34]     The principles are the same under Cayman Islands law. *See supra* note 29.

[35]     The Trustee further alleges that Strongback was deregistered in December 2011 and reregistered as Strongback Holdings Limited with the Malta Registry of Companies. *Safehand* FAC ¶ 65; *Safehand* Prof. ¶ 21. While not relevant to the time periods at issue, the "reregistered" Strongback is also a foreign entity as alleged by the Trustee.

lived and worked in the United States at all relevant times.  For all the reasons discussed above

with respect to Safehand, that allegation does not overcome the presumption that the transfers to

and from Strongback were foreign.[36]

> 10.    PF Trustees in its Capacity as Trustee of RD Trust

The Trustee alleges that RD Trust was created under the laws of the Cayman Islands.

*Safehand* FAC ¶ 69; *Safehand* Prof. ¶ 25.  He also alleges that RD Trust's trustee has, throughout

its existence, been organized under the laws of a foreign jurisdiction.  Specifically, the Trustee

alleges that First Island Trustees (Guernsey) Limited served as the trustee of RD Trustee from

April 2, 2002 to November 25, 2003, at which point PF Trustees began to serve as trustee.

*Safehand* FAC ¶¶ 69-70; *Safehand* Prof. ¶¶ 25-26.  He alleges PF Trustees is a Cayman Islands

company with a registered office in Grand Cayman.  *Safehand* FAC ¶ 71; *Safehand* Prof. ¶ 26.

Accordingly, under the District Court Order, PF Trustees is presumptively a foreign transferor or

transferee.

---

[36]     The Trustee's vague allegation that "[n]umerous FGG documents" refer to Strongback and Andres Piedrahita "interchangeably" (*Safehand* Prof. ¶ 22) cannot be credited because (a) it is conclusory, unsupported by citation to any identified document or specific fact, and (b) it is clearly insufficient grounds to disregard Strongback's corporate status.  *See, e.g.*, *Currency Conversion*, 265 F. Supp. 2d at 426.  The Trustee's allegation that transfers to Strongback were "deposited in Strongback's New York account at Wachovia Bank N.A." (*Safehand* Prof. ¶ 22) also is insufficient to meet his burden.  The Trustee's similar but more specific allegation with respect to Safehand is that it had a "correspondent" (*i.e.*, intermediary) account in New York at Wachovia Bank N.A.  The District Court Order is clear that use of correspondent accounts is insufficient to render a transaction domestic.  513 B.R. at 228 n.1.  In any event, the only transfers to Strongback alleged by the Trustee are alleged transfers from certain "domestic FGG funds" and from FG Advisors.  *Safehand* Prof. ¶ 23.  None of those alleged transfers, as currently pled, are at issue in the present motion to dismiss.  The Trustee, however, is likely confused because, as a foreign investor, Strongback invested only in foreign funds (even where the strategy featured both a domestic fund and a foreign fund).  To the extent the Trustee's pleadings are read to allege transfers to Strongback from foreign funds (*i.e.*, funds organized abroad), those transfers are extraterritorial for the reasons set forth in this section.

The Trustee does not meet his burden of pleading specific facts that suggest the transfers to or from PF Trustees were domestic.  As with Safehand and Strongback, the sole pleading by which the Trustee alleges that those transfers were domestic is a conclusory allegation that RD Trust served as an "alter ego" for Andres Piedrahita.  The Trustee alleges that Mr. Piedrahita had control over RD Trust (a) "as settlor," (b) by "reserv[ing] the power . . . to direct the trust regarding the retention or disposal of any assets and the trust's investment policy,"[37] and (c) by "retain[ing] the right to revoke the trust at any time."  *Safehand* Prof. ¶ 27.  Assuming (for purposes of this motion only) that these allegations are true,[38] they are not adequate grounds to disregard RD Trust's status as a distinct legal entity with its own trustee.  *See, e.g.*, *Pergament*, 487 B.R. at 109-10; *Genger*, 121 A.D.3d at 279.[39]

Moreover, even if RD Trust could somehow be treated as Mr. Piedrahita's "alter ego" and this Court were to credit the Trustee's allegation that Mr. Piedrahita controlled the trust, the Trustee's allegations that such alleged control would have been exercised by Mr. Piedrahita from the United States cannot be credited.  The Trustee has not credibly alleged that Mr. Piedrahita resided in United States after 1997, *see infra* at Point II.B.3, and RD Trust was not even "settled by" Mr. Piedrahita until years later, in 2002, *Safehand* Prof. ¶ 25.

---

[37]    The allegation that Mr. Piedrahita "controlled" RD Trust's investments and assets should not be credited by this Court because it is inconsistent with the Trustee's own specific allegations, two sentences later, that it was the trust's trustee, not Mr. Piedrahita, who was "required" to invest the trust's assets and that it was the trust's "committee of the protector," not Mr. Piedrahita, that "directed" asset distributions to the trust's beneficiaries. *Safehand* Prof. ¶ 27. *See, e.g.*, *Hirsch*, 72 F.3d at 1092.

[38]    While, for purposes of this motion to dismiss only, these allegations are not challenged, allegations (b) and (c) are false, as will be seen if this motion is not granted and the case proceeds to the summary judgment phase.

[39]    The principles are the same under Cayman Islands law. *See supra* note 29.

### B.    The Individual FG Foreign Defendants

Under the District Court Order, all of the individual FG Foreign Defendants whose nationalities are foreign presumptively engaged in foreign transactions, and the Trustee bears the burden of pleading specific facts suggesting that the transfers to them nevertheless were domestic.  As set forth below, he has not done so, and to the contrary pleads facts further suggesting that the transfers were foreign.

Also under the District Court Order, regardless of nationality, a person is a foreign transferee or foreign transferor if that person "reside[d] outside of the United States" when the transfer occurred.  513 B.R. at 232 n.4.  The Trustee's pleadings and material incorporated therein indicate that each of the FG Foreign Defendants who are individuals resided abroad during all or a portion of the two and six-year periods preceding the commencement of BLMIS's liquidation.  Accordingly, for this reason as well, all are foreign transferees or foreign transferors with respect to the alleged transfers that occurred while they resided abroad.[40]

#### 1.    Gordon McKenzie

The Trustee alleges that Gordon McKenzie resided in Bermuda at all relevant times, was employed by FG Bermuda, and is a Canadian citizen.  PSAC ¶ 341.  The Trustee does not allege

---

[40]    In the Trustee's Memorandum of Law in Opposition to the Transferee Defendants' Motion to Dismiss Based on Extraterritoriality and in Further Support of Trustee's Motion for Leave to Amend Complaints, dated June 26, 2015, Adv. Pro. No. 08-01789 (ECF No. 10287) (the "Trustee's Consolidated Oppo."), the Trustee argues that the position that a person's foreign residence is determinative of foreign status as inconsistent with the position that foreign citizenship is determinative of foreign status.  Trustee's Consolidated Oppo. 21.  There is no inconsistency.  Citizenship is highly indicative of where a person resides, as a person's country of citizenship and country of residence are usually the same.  Thus, if the Trustee alleges that a person is a foreign citizen and fails to allege facts sufficient to suggest the transfers to or from that person nevertheless were domestic, the allegation of foreign citizenship is determinative of the person's foreign status for purposes of extraterritoriality analysis.  However, where, as he does in his PSAC, the Trustee specifically alleges that a person resided abroad at the time of the alleged transfers, that allegation establishes that the person was a presumptive foreign transferor or foreign transferee and the person's nationality becomes irrelevant.

that Mr. McKenzie ever resided in the United States.  Given these pleadings, and the absence of

specific pled facts that suggest the transfers to Mr. McKenzie from foreign transferors were

domestic, the presumption that those transfers were foreign is not overcome, and the relevant

claims against Mr. McKenzie should be dismissed.

### 2.  Amit Vijayergiya

The Trustee alleges that Amit Vijayvergiya resided in Bermuda at all relevant times, was

employed by FG Bermuda, served as "head of the Bermuda office," and is a Canadian citizen.

PSAC ¶ 273, 330, 332.[41]  The Trustee does not allege that Mr. Vijayvergiya ever resided in the

United States.  Given these pleadings, and the absence of specific pled facts that suggest the

transfers to Mr. Vigayvergiya from foreign transferors were domestic, the presumption that those

transfers were foreign is not overcome, and the relevant claims against him should be dismissed.

### 3.  Andres Piedrahita

As previously noted above, the Trustee alleges in conclusory fashion that Andres

Piedrahita resided in the United States "[a]t all relevant times."  PSAC ¶ 314.  This threadbare

allegation is contradicted by specific statements in documents that the Trustee has attached to or

incorporated by reference in his pleadings.  As set forth in these documents, Mr. Piedrahita

moved to London in 1997 to establish the office for Fairfield-UK.  *See* Baldwin Ex. 13 (AC Ex.

24); Baldwin Ex. 5 (AC Ex. 45); Baldwin Ex. 1 (AC Ex. 58).[42]  While in London, Mr. Piedrahita

---

[41]     Additionally, Mr. Vijayverigya's employment offer letter, attached as Exhibit 25 to the
AC (*see* Baldwin Ex. 12), concerns Mr. Vijayvergiya's "employment with Fairfield Greenwich
(Bermuda) Ltd." and states "[y]ou will be employed as Risk Manager in our office located in
Hamilton, Bermuda."

[42]     Specifically, Baldwin Exhibits 5 and 1, which are Sentry brochures, state at pages 8 and
2, respectively: "In 1997 the firm was merged with Littlestone Associates of New York City.
Following the merger, Littlestone's principal, Andres Piedrahita, established a London office for
the UK subsidiary . . . ."  Baldwin Exhibit 13, a Wall Street Journal article, states: "[Mr.
Piedrahita] merged Littlestone with Fairfield Greenwich in 1997.  Shortly after, he moved to

and his wife, Corina Piedrahita, resided at a home in London's "Chester Square." *See* Baldwin

Ex. 13 (AC Ex. 24); Baldwin Ex. 2 (FG Limited Shareholder and Voting Agreement), at C-1

(listing Mrs. Piedrahita's address as "63 Chester Square, London SW1W 9EA, UK").

    Mr. and Mrs. Piedrahita then moved to Madrid in 2003, after which Mr. and Mrs.

Piedrahita resided in a home in Puerta de Hierro and, according to a 2009 news article attached

as an exhibit to the Trustee's complaint, Mr. Piedrahita "commuted between Madrid and

London."  Baldwin Ex. 13 (AC Ex. 24); *see also* Baldwin Ex. 9 (AC Ex. 23) ("In 2003, [the

Piedrahitas] moved from . . . London's Chester Square to a house in Madrid[.]"); Baldwin Ex. 1

(AC Ex. 58) (2007 brochure stating that Mr. Piedrahita "is currently responsible for FGG's

European and Latin America activities and *is based in London and Madrid*" (emphasis added));

*Barreneche* Compl.¶ 122 (address of record for FG Limited shareholder notices includes "Corina

Piedrahita, CalleSomontes, 9, Puerta de Hierro, 28035 Madrid Spain"); Baldwin Ex. 3 (Sept.

2008 FGG Brochure), at 24 ("Corina Piedrahita . . . *is based in Madrid*." (emphasis added)).[43]

    While the Trustee admits (as he must) that Mr. Piedrahita "was affiliated with FGG's

offices in London and Madrid," he attempts to downplay that fact by vaguely alleging that such

affiliation was only "at limited times."  PSAC ¶ 318.  Conspicuously, the Trustee fails to allege

---

London to . . . Chester square."  The main support pled by the Trustee for his allegation that Mr.
Piedrahita resided in the United States is a vague allegation that Mr. Piedrahita "maintained
multiple residences in the [*sic*] New York, Connecticut, and Florida with his wife, Corina Noel
Piedrahita."  Trustee's FG Oppo. 19; PSAC ¶ 314.  Notably, the Trustee is careful to not
specifically allege that Mr. Piedrahita (or Mrs. Piedrahita) resided in New York, Connecticut or
Florida at any point in time during the relevant periods.  Instead—in vague pleading—the
Trustee alleges only that Mr. and Mrs. Piedrahita "maintained residences" in those states.
However, as the Trustee's own allegations provide, Mr. Piedrahita owned "homes around the
world," AC ¶ 214, and a person does not reside in a location simply because he or she maintains
real property at that location.  *See, e.g.*, *Gaied v. N.Y.  State Tax Appeals Tribunal*, 22 N.Y.3d
592, 594 (2014) (ownership of a dwelling in the state does not make a person a resident of New
York absent a basis to conclude that the dwelling was actually utilized as the person's residence).

[43]    The Trustee further admits that there were affiliated offices in London and Madrid.
PSAC ¶ 59 ("FGG . . . maintained offices . . . in . . . London [and] Madrid").

any of those specific time periods—presumably because the time period Mr. Piedriahita was "affiliated" with the London office and then the Madrid office spans the entirety of the two and six year periods relevant to this motion. Similarly, in his supplemental memorandum of law, the Trustee alleges that Mr. Piedrahita "performed his work for FGG, including his work marketing the Feeder Funds, in New York, London, and Madrid" but, again, conspicuously fails to allege either the time periods for which Mr. Piedrahita performed his work in London and Madrid or any specific time period he supposedly worked in New York. Trustee's FG Oppo. 19.[44]

Other admissions and omissions in the Trustee's PSAC are equally revealing. For example, the Trustee alleges that "Mr. Piedrahita resided in the United States for *the majority* of his adult life"—conceding that he resided outside the United States for a portion of his adult life—yet noticeably fails to identify when. PSAC ¶ 313 (emphasis added). The Trustee's allegations also contain significant detail on Mr. Piedrahita's post-college and pre-1997 employment history in New York, and account for virtually every year before 1997. Then, conspicuously, starting in 1997—the year documents incorporated in his pleadings establish that Mr. Piedrahita moved to London to establish the Fairfield-UK office—the Trustee's allegations cease to provide any detail on where Mr. Piedrahita lived and worked. PSAC ¶ 313-15.[45]

---

[44]     The Trustee alleges that Mr. Piedrahita "always maintained an office" in New York, even when he was affiliated with the London office and Madrid office. PSAC ¶ 318. Even if it were true, this allegation would provide no support for the allegation that Mr. Piedrahita resided in the United States at the relevant times as a person does not reside in a location simply because a company may maintain an office for him there. *Cf. Torrico v. Int'l Bus. Machs. Corp.*, 213 F. Supp. 2d 390, 403 (S.D.N.Y. 2002) (the "one or more particular locations where employment *duties* may have been performed" is not determinative of whether a person was employed in United States rather than a foreign country (emphasis in original)).

[45]     The Trustee's claim that Mr. Piedrahita resided in the United States at all relevant times is further undermined by a significant fact admitted by the Trustee in his proffered allegations in one of the above-captioned proceedings. In the PSAC, the Trustee alleges that Mr. Piedrahita is a citizen only of the Republic of Colombia. PSAC ¶ 313. However, in his proffered allegations in *Picard v. Safehand*, the Trustee admits that Mr. Piedrahita is "a citizen of the Republic of

In the face of the contradictory, concrete facts set forth in the documents attached to or incorporated by reference in the Trustee's pleadings, the Court should not credit the Trustee's brazen allegation that "at all relevant times" Mr. Piedrahita "resided in the United States" (Trustee's FG Oppo. 19; PSAC ¶ 314). *Perry v. NYSARC, Inc.*, 424 Fed. Appx. 23, 25 (2d Cir. 2011) (describing exception to rule that court must accept as true factual assertions in a complaint when the assertions "are contradicted by the complaint itself, by documents upon which the pleadings rely, or by facts of which this court may take judicial notice"); *see also, e.g., Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 222 (2d Cir. 2004) (discrediting allegation "belied" by documents attached to the complaint); *Hirsch*, 72 F.3d at 1092; *Lismore v. Societe Generale Energy Corp.*, No. 11 Civ. 6705, 2012 WL 3577833, at *4-5 (S.D.N.Y. Aug. 17, 2012) (not crediting conclusory assertion "directly contradicted by more specific averments in the Complaint and exhibits attached thereto").[46]

The concrete facts incorporated in the Trustee's pleadings establish that at all relevant times Andres Piedrahita resided and worked in London, then Madrid. The Trustee also concedes that Mr. Piedrahita is a citizen of Colombia and the U.K. PSAC ¶ 313; *Safehand* Prof. ¶ 9. Having pled no facts plausibly suggesting that, nevertheless, the transfers to Mr. Piedrahita from

---

Colombia *and the United Kingdom*." *Safehand* Prof. ¶ 9 (emphasis added). Significantly, the Trustee's narrative of Mr. Piedrahita's adult life as recounted in the Trustee's PSAC alleges no window of time prior to 1997 in which Mr. Piedrahita could have resided in the United Kingdom and obtained citizenship there. That is, of course, because Mr. Piedrahita resided in the United Kingdom starting in 1997 and ultimately obtained citizenship there on the basis of permanent residence.

[46]     The Trustee's belated effort through conclusory pleading to evade the consequences of the residence abroad of Mr. and Mrs. Piedrahita is perhaps related to the circumstance that the dollar amount of alleged transfers to Mr. Piedrahita, or entities alleged to have been "controlled" by him, exceed the combined dollar amount of the alleged transfers to all the other individual FG Foreign Defendants.

foreign transferors were domestic, the presumption is not overcome that those transfers to him were foreign and the relevant claims against Mr. Piedrahita should be dismissed.

**The Trustee's Motion to Amend to Substitute the False Allegation Regarding the Piedrahitas' Residence Also Should Be Denied on Grounds of Bad Faith and Dilatory Motive**

As the Trustee is well aware, the fact that Mr. and Mrs. Piedrahita resided abroad at the time of the alleged transfers gives rise to the presumption that those transfers are extraterritorial.  In a transparent effort to avoid dismissal of the relevant claims as to the Piedrahitas, the Trustee has included in his proffered amended pleadings a new and conclusory allegation—contrary to his prior admissions and the documents attached to or incorporated in the Trustee's own pleadings—that the Piedrahitas resided in the United States during the entirety of the relevant period.  The Trustee's application to amend his pleadings to withdraw his prior admissions in favor of a new allegation that he knows is false should be denied. *See, e.g.*, *Forman v. Davis*, 371 U.S. 178, 182 (1962) (bad faith or dilatory motive on the part of the movant are grounds for denying a motion to amend a complaint under Fed. R. Civ. Pro. 15); Fed. R. Bankr. Pro. 7015 ("Rule 15 F.R.Civ.P. applies in adversary proceedings.").  If the Trustee nevertheless persists in his desperate strategy to save his claims by including this false allegation, Mr. and Mrs. Piedrahita reserve all of their rights, including the right to bring a motion for sanctions.

4.  Corina Piedrahita

The Trustee pleads that Corina Piedrahita is a dual citizen of the United States and Brazil and is the wife of Andres Piedrahita. PSAC ¶¶ 314, 392.  As with her husband, the Trustee alleges that, "at all relevant times," Mrs. Piedrahita "resided in the United States" and "maintained residences" in New York, Connecticut and Florida.  PSAC ¶ 392.  However, like the allegations about her husband, the Trustee's allegations regarding where Mrs. Piedrahita resided

33

are conclusory and contradicted by the specific facts incorporated in the Trustee's pleadings, which establish that starting in 1997 Mrs. Piedrahita resided with her husband in London, then Madrid. *See* discussion regarding Andres Piedrahita *supra* at Point II.B.3.[47]

As with Mr. Piedrahita, the Court should credit the concrete facts establishing that Mrs. Piedrahita resided abroad in the relevant period. Given the absence of any specific facts pled suggesting that the transfers to her from foreign transferors were nevertheless domestic, the presumption that those transfers were foreign is not overcome, and the relevant claims against Mrs. Piedrahita should be dismissed. And also for the reasons set forth with respect to Mr. Piedrahita, the Trustee's application to amend his pleadings to substitute the allegations regarding Mrs. Piedrahita's residence abroad in favor of a false allegation that she resided in the United States should be denied.

### 5. Richard Landsberger

The Trustee alleges that Richard Landsberger, although a United States citizen, resided in the United Kingdom between 2002 and 2008, the entirety of the relevant period. PSAC ¶ 347. The Trustee also admits that Mr. Landsberger was "affiliated with FGG's London office." PSAC ¶ 348; *see also* Baldwin Ex. 14 (AC Ex. 48) (Nov. 24, 2003 email from Mr. Landsberger identifying Mr. Landsberger's work address as in London, United Kingdom). The Trustee does

---

[47]     The Trustee also admits in his supplemental memorandum of law that Mrs. Piedrahita worked in the United Kingdom. Trustee's FG Oppo. 29 ("[W]hen she was working with the U.K. office . . . ."). Contradictory claims in his motion papers that Mrs. Piedrahita worked in the U.S. during the relevant period are completely without support in his pleadings. Neither the paragraphs of the PSAC cited as support by the Trustee, nor any other paragraphs of the PSAC, allege that Mrs. Piedrahita worked in the United States "at all relevant times" or that she ever worked in the New York office. *See* PSAC ¶¶ 392, 393. The only allegation in the PSAC regarding Mrs. Piedrahita's work location ignores the relevant period entirely, alleging that she "worked primarily in FGG's Greenwich, Connecticut office" "*[f]rom 1996 to 2000*," which is before the relevant time period. PSAC ¶ 393. *See Salahuddin v. Jones*, 992 F.2d 447, 449 (2d Cir. 1993) (affirming the dismissal of a claim based on "wholly conclusory and inconsistent allegations").

not allege that Mr. Landsberger resided in the United States at any point in the relevant period. In the absence of any pled facts suggesting that, despite Mr. Landsberger's foreign residence, the transfers to him from foreign transferors were domestic, the presumption that those transfers to Mr. Landsberger were foreign is not overcome and the relevant claims against him should be dismissed.

### 6. Harold Greisman

The Trustee alleges that Harold Greisman, although a United States citizen, resided in London for a portion of 2008. PSAC ¶ 380. The Trustee further alleges that Mr. Greisman was affiliated with the office in London during that period of time (as well as the New York office). Trustee's FG Oppo. 25. In the absence of pled facts suggesting that, despite Mr. Greissman's foreign residence, the transfers to him from foreign transferors were domestic in the period that he resided in London, the presumption is not overcome that those transfers to him were extraterritorial in that period. Under the terms of the District Court Order, the relevant claims regarding those transfers to him in that period should be dismissed.

### 7. Andrew Smith

The Trustee alleges that, although a United States citizen, Andrew Smith resided in London in 2003 and 2004. PSAC ¶ 370.[48] The Trustee further alleges that in connection with his residency in London, Mr. Smith worked at an office in London in 2003 and 2004. PSAC ¶ 373.

In the absence of pled facts suggesting that, despite Mr. Smith's foreign residence, the transfers to him from foreign transferors were domestic in the period that he resided in London,

---

[48]   The Trustee further admits in his supplemental memorandum of law that "Smith joined FGG in 2003 as a member of the London office." Trustee's FG Oppo. 26-27.

the presumption is not overcome that those transfers to him were extraterritorial in that period.[49]

Under the terms of the District Court Order, the relevant claims regarding those transfers to him

in that period should be dismissed.

8.     Philip Toub

The Trustee alleges that Philip Toub, although a United States citizen, resided in Rio de

Janeiro, Brazil from at least 2001 to 2004.  PSAC ¶ 354.  Further supporting foreign residency,

the Trustee alleges that, during that period of time, Mr. Toub worked at an office in Rio de

Janeiro.  PSAC ¶ 357.

As with similar allegations made with respect to Mr. and Mrs. Piedrahita, the Trustee

tries to downplay where Mr. Toub resided in 2001 to 2004 through a conclusory and

misleadingly incomplete allegation that "[a]t all pertinent times, Toub maintained one or more

residences in New York and/or Connecticut."  PSAC ¶ 356.  Notably, the Trustee does not allege

that Mr. Toub actually lived in those residences in the 2001 to 2004 time period, and so does not

undercut his admission in the PSAC (¶ 354) that Mr. Toub actually resided in Brazil at that time.

*See, e.g.*, *Gaied*, 22 N.Y.3d at 594.  The Trustee omits from this list the residence that Mr. Toub

lived in while residing in Brazil from 2001 to 2004.  But information incorporated into the PSAC

supplies that address.  *See* Baldwin Ex. 2 (FG Limited Shareholder and Voting Agreement), at C-

---

[49]     The only effort by the Trustee to plead a fact contrary to Mr. Smith having resided abroad for a period is an allegation in his PSAC that Mr. Smith represented to regulatory officials that he worked in New York even during 2003 and 2004.  But the stated basis for this allegation is information allegedly reported to FINRA by Mr. Smith that "from March 2003 through April 2009 he was employed by in [*sic*] New York Fairfield Heathcliff Capital, LLC."  PSAC ¶ 374.  The FINRA BrokerCheck Report for Mr. Smith, incorporated by reference into the PSAC, shows that Mr. Smith reported only his "Employer Location" as New York; the document does not purport to report on the location of Mr. Smith himself.  Baldwin Ex. 15, at 4.  The Trustee's own allegations also indicate that Mr. Smith was employed by Fairfield-UK (a foreign corporation, *see infra* at Point II.A.5) during the period he resided in London.  Indeed, the Trustee is seeking in this very action to recover as subsequent transfers alleged salary and bonus payments from Fairfield-UK to Mr. Smith during that period.  Trustee's FG Oppo. 27; PSAC Ex. 27.

1 (listing Mr. Toub's address as "Avenida del Fim Moreira, 316, Leblon, Rio de Janeiro,
Brazil"); *see also* Baldwin Ex. 9 (AC Ex. 23) (2009 Vanity Fair article stating "[Walter] Noel put
[Philip Toub] to work selling Fairfield Greenwich mostly in Brazil, where the Toubs moved
before returning recently to Greenwich with their four children.").

In the absence of pled facts suggesting that, despite Mr. Toub's foreign residence, the
transfers to him from foreign transferors were domestic in the period that he resided in Brazil,
the presumption is not overcome that those transfers to him were extraterritorial in that period.[50]
Under the terms of the District Court Order, the relevant claims regarding those transfers to him
in that period should be dismissed.

---

[50]     The only effort by the Trustee to plead a fact contrary to Mr. Toub having resided abroad
for a period is the allegation in his PSAC that during the time Mr. Toub worked in Rio de Janeiro
he "represented he worked for FGG in New York or Connecticut."  As with the similar
allegation with respect to Mr. Smith, the stated basis for this allegation is information allegedly
reported to FINRA by Mr. Toub that "from January 1997 through April 2009 he was employed
by 'Fairfield Greenwich Group', which he reported had an 'Employer Location' of Greenwich,
Connecticut."  PSAC ¶ 358.  This allegation should be given no weight because, among other
reasons, according to the Trustee's own description, Mr. Toub is alleged to have reported only on
his employer's location, not his own location.

## CONCLUSION

The Court should (i) dismiss with prejudice all of the Trustee's claims to avoid and recover all transfers to the FG Foreign Defendants at issue on this motion to dismiss;[51] and (ii) deny as futile the Trustee's application to amend his pleadings to avoid dismissal on grounds of extraterritoriality.

---

[51]    The counts of the operative complaints subject to this motion were agreed to by the Trustee in the Exhibits to the Scheduling Order.  Specifically, Counts 4, 7, 10, 13, 16, 19, 22, and 25 of the AC must be dismissed as they relate to any alleged transfers, reflected on the attached Exhibit A, between foreign transferors and FG Bermuda, FG Limited, Gordon McKenzie, Amit Vijayvergiya, Andres Piedrahita, Corina Piedrahita, Richard Landsberger, Harold Greisman, Andrew Smith, or Philip Toub.  The sole Count in the *Safehand* FAC must be dismissed as it relates to any alleged transfers, reflected on the attached Exhibit A, between foreign transferors and Safehand, Strongback, or PF Trustees in its capacity as trustee for RD Trust.  Similarly, the sole Count in the *Barreneche* Compl. must be dismissed as it relates to any alleged transfers, reflected on the attached Exhibit A, between foreign transferors and FG Investors or Dove Hill Trust.

Dated: September 30, 2015  
    New York, New York

Respectfully submitted,

SIMPSON THACHER & BARTLETT LLP

By: /s/ Mark G. Cunha  
    Mark G. Cunha  
    Peter E. Kazanoff  
    Jeffrey E. Baldwin

425 Lexington Avenue  
New York, New York 10017-3954  
Telephone: (212) 455-2000  
Facsimile: (212) 455-2502  
mcunha@stblaw.com  
pkazanoff@stblaw.com  
jbaldwin@stblaw.com

*Counsel to Defendants Fairfield Greenwich (Bermuda) Limited, Fairfield Greenwich Limited, FG Investors Ltd., Dove Hill Trust, Gordon McKenzie, Amit Vijayvergiya, Corina Piedrahita, Richard Landsberger, Harold Greisman, Andrew Smith, and Philip Toub*

DECHERT LLP

By: /s/ Andrew J. Levander  
    Andrew J. Levander  
    Neil A. Steiner

1095 Avenue of the Americas  
New York, New York 10036  
Telephone: (212) 698-3500  
Facsimile: (212) 698-3599  
andrew.levander@dechert.com  
neil.steiner@dechert.com

*Counsel to Defendant Andres Piedrahita*

MORRISON & FOERSTER LLP

By: /s/ Carl H. Loewenson, Jr.  
    Carl H. Loewenson, Jr.  
    Kiersten A. Fletcher

250 West 55th Street  
New York, New York 10019-9601  
Telephone: (212) 468-8128  
Facsimile: (212) 468-7900  
cloewenson@mofo.com  
kfletcher@mofo.com

*Counsel to Defendants SafeHand Investments, Strongback Holdings Corporation, and PF Trustees Limited in its capacity as trustee of RD Trust*

## EXHIBIT A

### ALLEGED TRANSFERS TO THE FG FOREIGN DEFENDANTS
### AT ISSUE ON THE MOTION TO DISMISS

The parenthetical following each legal entity's name identifies the jurisdiction of organization and the parenthetical following each natural person's name identifies that person's citizenship, as agreed to by the Trustee in the Exhibits to the Order Concerning Further Proceedings on Extraterritoriality Motion and Trustee's Omnibus Motion for Leave to Replead and for Limited Discovery, dated December 10, 2014, Adv. Pro. No. 08-01789 (ECF No. 8800) (the "Scheduling Order").

Except where detailed in a footnote, the alleged transfers are as reflected in Exhibit 2-A to the Trustee's Memorandum of Law in Opposition to the Transferee Defendants' Motion to Dismiss Based on Extraterritoriality and in Further Support of Trustee's Motion for Leave to Amend Complaints, dated June 26, 2015, Adv. Pro. No. 08-01789 (ECF No. 10287) (the "Trustee's Consol. Oppo.").

| Foreign Transferor(s)[1] | FG Foreign Defendant Transferee |
|---|---|
| *Fairfield Sentry Limited (BVI)*<br>*Fairfield Sigma Limited (BVI)*<br>*Fairfield Lambda Limited (BVI)*<br>Fairfield Greenwich Limited (Cayman Islands) | Fairfield Greenwich (Bermuda) Limited (Bermuda) |
| *Fairfield Sentry Limited (BVI)*<br>*Fairfield Sigma Limited (BVI)*<br>*Fairfield Lambda Limited (BVI)*<br>Fairfield Investment Fund Limited (BVI)[2]<br>*FIF Advanced Limited (BVI)*<br>Fairfield Greenwich (Bermuda) Limited (Bermuda)<br>*Fairfield Greenwich (U.K.) Limited (U.K.)* | Fairfield Greenwich Limited (Cayman Islands) |
| Fairfield Greenwich (Bermuda) Limited (Bermuda)<br>Fairfield Greenwich Limited (Cayman Islands) | FG Investors Ltd. (Cayman Islands) |
| *Fairfield Sentry Limited (BVI)*<br>Fairfield Greenwich Limited (Cayman Islands) | Dove Hill Trust (Singapore) |
| Fairfield Greenwich (Bermuda) Limited (Bermuda)<br>Fairfield Greenwich Limited (Cayman Islands) | Safehand Investments (Cayman Islands) |
|  | Strongback Holdings Corporation (Malta)[3] |
| Fairfield Greenwich (Bermuda) Limited (Bermuda)[4]<br>Fairfield Greenwich Limited (Cayman Islands) | PF Trustees Limited in its capacity as trustee of RD Trust (Cayman Islands) |

---

[1] Foreign transferors in *italics* are not defendants to any of the Trustee's recovery actions.

[2] While not reflected on Exhibit 2-A to the Trustee's Consol. Oppo., the Trustee's pleadings otherwise allege transfers from Fairfield Investment Fund Limited to Fairfield Greenwich Limited. *See, e.g.*, Trustee's Supplemental. Mem. of Law in Opp. to Fairfield Defs. Mots. to Dismiss Based on Extraterritoriality and in Further Supp. of Trustee's Mot. for Leave to Amend Compls. at 12, Adv. Pro. No. 09-01239, June 26, 2012 (ECF No. 186).

[3] While "Malta" is listed as Strongback Holdings Corporation's jurisdiction of organization on Exhibit B to the Scheduling Order, the Trustee's pleadings clarify that, during the relevant time periods, Strongback Holdings Corporation was organized under the laws of the Cayman Islands. *See* Proffered Allegs. Pertaining to Extraterritoriality Issue as to Defs. Safehand Investments, Strongback Holdings Corporation, and PF Trustees Limited in its Capacity as Trustee of RD Trust at ¶ 21, Adv. Pro. No. 12-01701, June 26, 2015 (ECF No. 62) (the "*Safehand* Prof. Allegs.").

[4] While Fairfield Greenwich Limited and Fairfield Greenwich (Bermuda) Limited are identified as transferors to PF Trustees Limited on Exhibit 2-A to the Trustee's Consol. Oppo., the Trustee's pleadings clarify that the Trustee is not alleging any transfers from those entities to PF Trustees Limited. Rather, the Trustee is alleging that RD Trust is

| Foreign Transferor(s) | FG Foreign Defendant Transferee |
|---|---|
| Fairfield Investment Fund Limited (BVI)<br>Fairfield Greenwich (Bermuda) Limited (Bermuda) | Gordon McKenzie (Canada); all alleged transfers occurred when the specific Trustee pleadings concede Mr. McKenzie resided in Bermuda. |
| *Fairfield Sentry Limited (BVI)*<br>Fairfield Greenwich (Bermuda) Limited (Bermuda)<br>Fairfield Greenwich Limited (Cayman Islands) | Amit Vijayvergiya (Canada); all alleged transfers occurred when the specific Trustee pleadings concede Mr. Vijayvergiya resided in Bermuda. |
| Fairfield Greenwich (Bermuda) Limited (Bermuda)<br>Fairfield Greenwich Limited (Cayman Islands)<br>*Fairfield Greenwich (U.K.) Limited (U.K.)* | Andres Piedrahita (Colombia); all alleged transfers occurred when the specific Trustee pleadings concede Mr. Piedrahita resided in the U.K. or Spain. |
| Fairfield Greenwich (Bermuda) Limited (Bermuda)<br>Fairfield Greenwich Limited (Cayman Islands)<br>*Fairfield Greenwich (U.K.) Limited (U.K.)* | Corina Piedrahita (Brazil and U.S.); all alleged transfers occurred when the specific Trustee pleadings concede Mrs. Piedrahita resided in the U.K. or Spain. |
| *FIF Advanced Limited (BVI)*<br>Fairfield Greenwich (Bermuda) Limited (Bermuda)<br>Fairfield Greenwich Limited (Cayman Islands)<br>*Fairfield Greenwich (U.K.) Limited (U.K.)* | Richard Landsberger (U.S.); all alleged transfers occurred when the specific Trustee pleadings concede Mr. Landsberger resided in the U.K. |
| *FIF Advanced Limited (BVI)*<br>Fairfield Greenwich (Bermuda) Limited (Bermuda)<br>Fairfield Greenwich Limited (Cayman Islands) | Harold Greisman (U.S.), as concerns those alleged transfers that occurred when the specific Trustee pleadings concede Mr. Greisman resided in the U.K. |
| Fairfield Greenwich (Bermuda) Limited (Bermuda)<br>Fairfield Greenwich Limited (Cayman Islands)<br>*Fairfield Greenwich (U.K.) Limited (U.K.)* | Andrew Smith (U.S.), as concerns those alleged transfers that occurred when the specific Trustee pleadings concede Mr. Smith resided in the U.K. |
| Fairfield Greenwich (Bermuda) Limited  (Bermuda)<br>Fairfield Greenwich Limited (Cayman Islands) | Philip Toub (U.S.), as concerns those alleged transfers that occurred when the specific Trustee pleadings concede Mr. Toub resided in Brazil. |

the owner of Safehand Investments and, thus, PF Trustees Limited in its capacity as trustee of RD Trust "owns and is in possession of all transfers that were received by Safehand." *See Safehand* Prof. Allegs. at ¶ 28.  Therefore, Exhibit 2-A to the Trustee's Consol. Oppo., if alleging any transfers at all to PF Trustees Limited, should list the transferor as Safehand Investments, a company incorporated in the Cayman Islands.