Baker&Hostetler LLP

811 Main Street
Suite 1100
Houston, TX 77002-6111

T 713.751.1600
F 713.751.1717
www.bakerlaw.com

January 23, 2017

Dean D. Hunt
direct dial: 713.646.1346
dhunt@bakerlaw.com

**Via ECF and First Class Mail**
Honorable Stuart M. Bernstein
United States Bankruptcy Court
Southern District of New York
One Bowling Green, Room 723
New York, New York 10004

Re:   Adv. Pro. No. 10-04417 (SMB); *Irving H. Picard, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC v. The Lustig Family 1990 Trust, et al.;* In the United States Bankruptcy Court for the Southern District of New York.

Adv. Pro. No. 10-04554 (SMB); *Irving H. Picard, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC v. David Ivan Lustig;* In the United States Bankruptcy Court for the Southern District of New York.

Dear Judge Bernstein:

We write to respond to Defendants' The Lustig Family Trust and David Ivan Lustig's ("Defendants") January 6, 2017 letter regarding the Trustee's responses to Defendants' First Sets of Interrogatories and Document Requests in the above listed Adversary Proceedings ("Adversary Proceedings").[1]  We requested, but Defendants refused, to refer this dispute to the Court-appointed discovery arbitrator, Judge Maas.

The discovery sought should be denied in its entirety because it is all third party material that is outside the scope of relevance pursuant to Federal Rule of Civil Procedure 26(b)(1) ("Parties may obtain discovery regarding any non-privileged matter that is <u>relevant</u> to any party's claim or defense") (emphasis added).  Although Defendants have not identified any specific Interrogatories or Document Requests, they generally allege that the Trustee's responses to discovery demands related to their defenses involving unrelated third party investment vehicles are deficient.  The Trustee has rightfully refused to review and produce certain third party materials obtained in connection with unrelated litigation that Defendants speculate may evidence monies indirectly invested in BLMIS through a series of third party

---

[1] *See* Trustee's Responses and Objections to Defendants' First Sets of Interrogatories, attached hereto as Exs. C and D and Trustee's Responses and Objections to Defendants' First Sets of Document Requests, attached hereto as Exs. E and F.

*Atlanta    Chicago    Cincinnati    Cleveland    Columbus    Costa Mesa    Denver*
*Houston    Los Angeles    New York    Orlando    Philadelphia    Seattle    Washington, DC*

investment vehicles including Lakeview Investment L.P. ("Lakeview"), which were allegedly lost as a result of Madoff's fraud.[2] Lakeview, the investment vehicle through which Defendants allegedly reinvested in BLMIS, was formed by Richard Glantz. Mr. Glantz is also represented by Mr. Signorelli, counsel for Defendants in another adversary proceeding brought against him by the Trustee. If anyone has access to Lakeview's records, it is Mr. Signorelli through his client, Mr. Glantz.

Even if these allegations are true, they cannot support any legally viable defense to the Trustee's claims. The Defendants request credit or equitable setoff against the amount sought by the Trustee in a matter that would directly contradict the Bankruptcy Code ("Code") and is not supported elsewhere in the law.

It is important to note that Defendants, whose entire defense is based on records and testimony from third parties, have not propounded any third party discovery under Federal Rule of Civil Procedure Rule 45.[3] Instead, Defendants seek to shift the burden onto the Trustee to review thousands of documents received in response to numerous subpoenas and/or document requests, in multiple unrelated adversary proceedings involving unrelated issues and concerning transactions to which BLMIS was not a party. Because the defenses are meritless and contradict the Code and numerous decisions of this Court (as more fully set forth below), this burden cannot be justified pursuant to Federal Rule of Civil Procedure 26 and Section 4(G) of the Litigation Procedures Order [ECF No. 3141] ("LPO").

**Discovery into the Defenses is Outside the Scope of Relevance**

Defenses based on Defendants' contention that the Trustee cannot or should not recover against them because they withdrew their money from and then purportedly reinvested it through third parties that were investing in BLMIS, after which it was allegedly lost, have no support in the law.

For example, Defendants' Eighth and Ninth Affirmative Defenses ask the Court to use its equitable powers to dismiss the Trustee's claims or grant an "equitable credit" under 11 U.S.C. § 105(a). While Section 105(a) authorizes a bankruptcy court to make orders in furtherance of the provisions of the Bankruptcy Code, the "statute does not authorize the bankruptcy courts to create substantive rights that are otherwise unavailable under applicable law, or constitute a roving commission to do equity."[4] Defendants' offsetting claims do just that. To the extent Defendants have claims, they are against the entities in which Defendants subsequently invested, not against the debtor's estate. More specifically, taking Defendants' allegations as true, Defendants withdrew money from BLMIS and transferred it to Lakeview, which may have invested the money through other investment vehicles that may or may not have invested money in BLMIS. Applying Section 105(a) to

---

[2] *See* Defendants' Answers, Eighth through Twelfth Affirmative Defenses, attached hereto as Exs. A and B.
[3] The Trustee has served four third party subpoenas. The results have been produced to Defendants.
[4] *Chiasson v. J. Louis Matherne and Assocs.* (*In re Oxford Mgmt., Inc.*), 4 F.3d 1329, 1333-1334 (5th Cir. 1994) (quoting *United States v. Sutton*, 786 F.2d at 1308); *see also, e.g.*, *In re Plaza de Diego Shopping Ctr., Inc.*, 911 F.2d 820, 824 (1st Cir. 1990).

grant Defendants equitable credit would require a much more expansive reading of the Section than is supported by the law.

Such a reading would also directly contradict the rulings of this Court. Under the Securities Investor Protection Act, 15 U.S.C. § 78aaa *et seq.* ("SIPA"), the Trustee is responsible for distributing customer property to the fullest extent possible to a broker's customers. The statutory framework for the satisfaction of customer claims in a SIPA liquidation proceeding provides that "customers," as defined in SIPA § 78*lll*(2), share pro rata in "customer property." SIPA § 78*lll*(4). It is the customer's burden to demonstrate he or she is entitled to customer status.[5] This Court has granted fifteen motions by the Trustee to affirm his determinations that claimants who invested in a BLMIS accountholder are not customers under SIPA.[6] Defendants withdrew money from BLMIS. Defendants allege they invested that money in Lakeview, which in turn allegedly invested in non-feeder funds investment vehicles of the Tremont Capital Group and Wailea, which in turn may or may not have invested in the Luxembourg/Senator Fund. Under this Court's prior decisions, therefore, Defendants are not customers under SIPA, and do not have valid customer claims. As a result, Defendants have, at best, an indirect claim against the BLMIS estate because any claims Defendants have do not qualify as claims for customer property, and Defendants cannot offset any losses they may have suffered against their liability in this Adversary Proceeding.

Defendants' Tenth Affirmative Defense asserts that the Trustee is violating the single satisfaction rule by attempting to recover money that Defendants had allegedly returned to the BLMIS estate. Again, Defendants do not have offsetting claims against the BLMIS estate. Just like any other investors, any claims they have are against the entities in which

---

[5] *Mishkin v. Siclari (In re Adler, Coleman Clearing Corp.)*, 277 B.R. 520, 557 (Bankr. S.D.N.Y. 2002).

[6] See Order Approving Trustee's Motion To Affirm His Determinations Denying Claims of Claimants Holding Interests In: S&P or P&S Associates, General Partnerships, ECF No. 9450 (Mar. 10, 2015); Peerstate Equity Fund, L.P., ECF No. 9883 (Apr. 27, 2015); The Lazarus-Schy Family Partnership, The Schy Family Partnership, Or The Lazarus Investment Group, ECF No. 10010 (May 18, 2015); Epic Ventures, LLC, ECF No. 10267 (June 25, 2015); Partners Investment Co., Northeast Investment Club, And Martin R. Hamick & Steven P. Norton, Partners, ECF No. 10894 (July 29, 2015); The Whitman Partnership, The Lucky Company, The Petito Investment Group, And The Harwood Family Partnership, ECF No. 11145 (Aug. 26, 2015); 1973 Masters Vacation Fund, Bull Market Fund, And Strattham Partners, ECF No. 11920 (Oct. 29, 2015); Black River Associates LP, MOT Family Investors, LP, Rothschild Family Partnership, and Ostrin Family Partnership, ECF No. 12757 (Mar. 3, 2016); The Article Third Trust, Palmer Family Trust, Maggie Faustin, Estate of Theodore Schwartz, and Miller Trust Partnership, ECF No. 13172 (Apr. 26, 2016); William M. Pressman, Inc., William Pressman, Inc. Rollover Account, and AGL Life Assurance Company, ECF No. 13466 (June 7, 2016); Palko Associates, Gloria Jaffe Investment Partnership, and the Miller Partnership, ECF No. 13780 (July 22, 2016); Chalek Associates LLC, Chaitman/Schwebel LLC, FGLS Equity LLC, Larsco Investments LLC, and Kuntzman Family LLC, ECF No. 14225 (Oct. 4, 2016); AHT Partners, Pergament Equities, LLC, SMT Investors LLC, Greene/Lederman, L.L.C., And Turbo Investors, LLC, ECF No. 14346 (Oct. 27, 2016); M&H Investment Group L.P., PJFN Investors Limited Partnership, Kenn Jordan Associates and Harmony Partners, Ltd., ECF No. 14537 (Dec. 1, 2016); and Sienna Partnership, L.P., Katz Group Limited Partnership, and Fairfield Pagma Associates, L.P., ECF No. 14774 (Dec. 22, 2016).

they invested, not against the debtor's estate. In fact, Defendants admit that they have already recovered at least $792,654 from Lakeview, which is the proper channel for recovery of any money reinvested and lost. As such, it is Defendants who are attempting to violate the single satisfaction rule by recovering against Lakeview *and* seeking dismissal of the Trustee's claims.

Defendants' Eleventh Affirmative Defense seeks an offset or credit under the theory of recoupment, but, a "recoupment" is an offset based upon a "claim for relief arising from the *same transaction* as the plaintiff's claim or cause of action, strictly for the purpose of abatement or reduction of such claims."[7] Here, Defendants' recoupment claims do not arise out of the same contract or series of transactions. Defendants claim they withdrew money from their individual BLMIS accounts and subsequently entered a separate and distinct transaction and contract with a third party investment vehicle, Lakeview.

Defendants' Twelfth Affirmative Defense seeks set-off under 11 U.S.C. § 553, which recognizes and preserves the right to setoff afforded outside of bankruptcy, stating, "[T]his title does not affect any right of a creditor to offset *a mutual debt* owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case…"[8] "The concept of 'mutual debts' contained in section 553 of the Code generally requires that 'the debts must be in the same right and between the same parties, standing in the same capacity.'"[9] Here, Defendants arguably have a pre-petition claim against a *non BLMIS investment entity* and seek to set off that claim against their liability to the *Trustee* as transferees of fraudulent conveyances. Mutuality is lacking because the liabilities owed are not between the same parties. Even if Defendants had a direct claim against the BLMIS *estate*, which they do not, mutuality would still be lacking because the liability of Defendants to the *Trustee* as transferees of fraudulent conveyances does not constitute a pre-petition debt owed to the debtor; rather it is a debt owed to the *Trustee*.[10] Moreover, "it is well established that a party will be unable to assert a setoff where that party is being sued for fraudulent transfers."[11]

None of these defenses have merit. All discovery sought in connection with them is outside the scope of relevance articulated in Rule 26 and the LPO. FED. R. CIV. P. 26(b)(1).

---

[7] *Styler v. Jean Bob Inc.* (*In re Concept Clubs, Inc.*), 154 B.R. 581, 586 n.3 (D. Utah 1993) (emphasis in original) (*citing* Lawrence P. King, 4 Collier on Bankruptcy ¶ 553.03, at 553–15 (15th ed. 1993)). Recoupment in bankruptcy is only allowed "within a single contract or transaction or a single set of transactions." *New York State Elec. and Gas Corp. v. McMahon* (*In re McMahon*), 129 F.3d 93, 96 (2nd Cir. 1997).

[8] 11 U.S.C. § 553(a) (emphasis added).

[9] *In re Drexel Burnham Lambert Group, Inc.*, 113 B.R. 830, 847 (Bankr. S.D.N.Y. 1990).

[10] *In re Singh*, 2010 WL 2853749, *5 (Bankr. E.D.N.Y. July 20, 2010) (Craig, Ch. J.) (citing *Irving Trust Co. v. Frimitt*, 1 F.Supp. 16, 17 (S.D.N.Y. 1932) ("These counterclaims are for moneys said to have been owing by the bankrupts for services rendered. The claim asserted by the trustee against the defendants being for fraudulent transfers, the case is not one of mutual debts or credits.... The liability of the defendants to the trustee is not a 'debt'…")).

[11] *In re O.P.M. Leasing Servs., Inc.*, 35 B.R. 854, 868 (Bankr. S.D.N.Y. 1983) (citing *Bennett v. Rodman & English, Inc.*, 2 F. Supp. 355, 358 (E.D.N.Y. 1932).

Certainly the burden of requiring the Trustee to scour records obtained in other ligation looking for documents related to defenses that are tenuous at best is not proportional to any benefit that could come from that effort – particularly, as discussed below, since Defendants have made no effort to obtain the information from its source.

**To the Extent the Court Permits any Further Discovery, Defendants Should Seek it Directly from Third Parties**

The Trustee objected to Defendants' Interrogatories seeking information regarding transactions between and among Lakeview, Wailea, Senator, Senator Fund and HSBC Bank (as these terms are defined in Defendants' Interrogatories), and/or related entities to which BLMIS was not a party, including investments and swap transactions.[12] Any knowledge the Trustee may have gained regarding such transactions or investments is a result of privileged attorney work-product to which Defendants are not entitled. In addition, Interrogatories concerning the Trustee's allegations in litigation unrelated to these cases is outside the scope of relevance. FED. R. CIV. P. 26(b)(1).

To the extent Defendants wish to conduct their own investigation of these third party entities, they should do so at their own cost and subject to the confidentiality or other objections to the discovery sought from the actual parties to whom the information belongs. The Trustee objected to Defendants' Document Requests on the basis that the requested documents are more appropriately sought from other sources, including Lakeview, HSBC Bank, ABN/RBS Bank, AA Bank (as these terms are defined in Defendants' Document Requests), Tremont Capital Group, or other entities.[13] While the Trustee may have received documents from certain of these entities in proceedings unrelated to this litigation, the issues and parties were different. The parties in those matters certainly did not contemplate or consider the Lustig Adversary Proceedings during discovery. Further, the Trustee should not have to cull through these greater productions in an attempt to determine what is responsive when the third parties can do so themselves with greater efficiency and control over their own documents.

It is more convenient, more thorough, and less burdensome for Defendants to seek such information and documents directly from the entities identified above. FED. R. CIV. P. 26(b)(2)(C)(i). Defendants had a business relationship with those entities, purportedly investing in them with funds withdrawn from Defendants' BLMIS Accounts, and Lakeview and Defendants retained the same counsel to represent them.

Finally, any documents or information received by the Trustee from third parties in unrelated litigation is subject to strict confidentiality agreements reached after considerable negotiation. Under the Order Establishing Procedures for Third Party Data Rooms [08-01789, Doc. No. 5475] ("Order"), documents produced by third parties are maintained in a

---

[12] *See* Trustee's Responses and Objections to Defendants' First Sets of Interrogatories, attached hereto as Exs. C and D.

[13] *See* Trustee's Responses and Objections to Defendants' First Sets of Document Requests, attached hereto as Exs. E and F.

Third Party Data Room. Because the Adversary Proceedings are Avoidance Actions for which a Notice of Applicability was filed, as defined in the Order, neither Defendants nor their counsel are permitted to review documents in the Third Party Data Room. Order at Section 5. Instead, if ordered to produce the documents, Trustee's counsel would be required to review the documents in the Third Party Data Room, identify any potentially relevant documents, and then seek an exemption from the third party that produced the documents to the Trustee to reproduce them to Defendants, which necessitates an explanation to the producing party why the documents are relevant in this, unrelated, litigation. Furthermore, the producing party retains the discretion whether to allow the Trustee to produce the documents to Defendants. To shift this extraordinary burden of review on the Trustee when Defendants have not even attempted to seek discovery from the third parties should not be allowed.

A Court may properly deny discovery into matters that relate to invalid claims or defenses.[14] Courts may issue protective orders limiting the scope of discovery when the information sought is not relevant to the issues in the action and the discovery would create undue burden and expense.[15]

We look forward to discussing this matter with you on January 25.

    Sincerely,

    /s/ Dean D. Hunt

    Dean D. Hunt

cc *via* ECF and email:
Richard E. Signorelli (richardsignorelli@gmail.com)
Bryan Ha (bhanyc@gmail.com)
Law Office of Richard E. Signorelli
799 Broadway, Suite 539
New York, NY 10003

---

[14] *In re Candor Diamond Corp.*, 26 B.R. 847, 849 (Bankr. S.D.N.Y. 1983).
[15] *Id.*